UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

...............................................................x

*In re Terrorist Attacks on September 11, 2001*          03 MDL 1570 (GBD) (SN)

...............................................................x


**MEMORANDUM OF LAW OF NON-PARTY THE
FEDERAL BUREAU OF INVESTIGATION IN PARTIAL OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF
CERTAIN INFORMATION IN THE 2012 FBI SUMMARY REPORT**


GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2709/2678/2769
*Attorney for Federal Bureau of Investigation*

SARAH S. NORMAND
JEANNETTE A. VARGAS
ANDREW E. KRAUSE
Assistant U.S. Attorneys
 —*Of Counsel*—

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ON THE 2012 SUMMARY REPORT ................................................................ 2

ARGUMENT ...................................................................................................................... 5

I.     The FBI Has Preserved and Properly Invoked All Applicable Privileges ............. 6

II.    The Remaining Information Plaintiffs Seek from the 2012 Summary
Report Is Privileged and Protected from Disclosure ............................................... 10

    A.    The Classified Information Plaintiffs Seek from the 2012
Summary Report Is Protected by the State Secrets Privilege
and the National Security Act .................................................................... 10

        1.    The Government Has Properly Invoked the State
Secrets Privilege ............................................................................ 13

        2.    The Information Subject to the Attorney General's Assertion
of the State Secrets Privilege Is Also Protected by the
National Security Act ..................................................................... 17

    B.    The Information Plaintiffs Seek from the 2012 Summary Report Is
Protected from Disclosure by the Law Enforcement Privilege ................. 19

        1.    The FBI Has Established the Applicability of the Law
Enforcement Privilege .................................................................... 19

        2.    The Likely Harms from Disclosure Outweigh Any
Litigation Need for the Information ............................................... 21

    C.    Discrete Classified Information Is Also Protected by the Work
Product Doctrine and the Deliberative Process Privilege .......................... 23

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

*Cases*                                                                                                                 *Pages*

*Aguilar v. ICE,*
   259 F.R.D. 51 (S.D.N.Y. 2009)..................................................................................... 10

*Auto. Club of New York, Inc. v. Port Auth. of New York & New Jersey,*
   No. 11 Civ. 6746 (RKE) (HBP), 2014 WL 2518959 (S.D.N.Y. June 4, 2014) ....................... 24

*Borchers v. Comm'l Union Assurance Co.,*
   874 F. Supp. 78 (S.D.N.Y. 1995).................................................................................. 21

*Brennan Ctr. for Justice at New York Univ. School of Law v. DOJ,*
   697 F.3d 184 (2d Cir. 2012)........................................................................................ 24

*Broward Bulldog, Inc. v. DOJ,*
   No. 16-61289-CIV, 2017 WL 746410 (S.D. Fla. Feb. 27, 2017) ..................................... *passim*

*City of New York v. FedEx Ground Package Sys., Inc.,*
   No. 13 Civ. 9173 (ER), 2017 WL 4155410 (S.D.N.Y. Sept. 19, 2017)................................. 20

*Cullen v. Margiotta,*
   811 F.2d 698 (2d Cir. 1987)........................................................................................ 20

*Del Socorro Quintero Perez v. United States,*
   No. 13-cv-1417-WQH-BGS, 2016 WL 499025 (S.D. Cal. Feb. 9, 2016) .......................... 9, 10

*Dellwood Farms, Inc. v. Cargill, Inc.,*
   128 F.3d 1122 (7th Cir. 1997)..................................................................................... 21

*DGM Investments, Inc. v. New York Futures Exchange, Inc.,*
   224 F.R.D. 133 (S.D.N.Y. 2004) ................................................................................. 21

*DiBacco v. U.S. Army,*
   795 F.3d 178 (D.C. Cir. 2015) .................................................................................... 18

*Doe v. CIA,*
   576 F.3d 95 (2d Cir. 2009)..................................................................................... 11, 12

*Edmonds v. U.S. Dep't of Justice,*
   405 F. Supp. 2d 23 (D.D.C. 2005) ................................................................................ 7

*Ellsberg v. Mitchell,*
   709 F.2d 51 (D.C. Cir. 1983) ............................................................................... 8, 11, 12

*El-Masri v. United States*,
    479 F.3d 296 (4th Cir. 2007)......................................................................... 10, 12, 17

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*,
    978 F. Supp. 2d 267 (S.D.N.Y. 2013) ........................................................................ 8

*Floyd v. City of New York*,
    739 F. Supp. 2d 376 (S.D.N.Y. 2010)................................................................. 21, 22

*Goodloe v. City of New York*,
    136 F. Supp. 3d 283 (E.D.N.Y. 2015)...................................................................... 23

*Graham v. Mukasey*,
    247 F.R.D. 205 (D.D.C. 2008) .................................................................................. 7

*Halkin v. Helms*,
    690 F.2d 977 (D.C. Cir. 1982) ........................................................................ *passim*

*In re City of New York*,
    607 F.3d 923 (2d Cir. 2010)............................................................................. *passim*

*In re Dep't of Investigation of the City of New York*,
    856 F.2d 481 (2d Cir. 1988) ................................................................................... 19

*In re Sealed Case*,
    121 F.3d 729 (D.C. Cir. 1997) ................................................................................. 8

*In re Sealed Case*,
    856 F.2d 268 (D.C. Cir. 1988) ......................................................................... 10, 19

*In re United States*,
    872 F.2d 472 (D.C. Cir. 1989) ................................................................................ 10

*Kelly v. City of San Jose*,
    114 F.R.D. 653 (N.D. Cal. 1987) .............................................................................. 9

*Kronisch v. United States*,
    No. 83 Civ. 2458, 1994 WL 524992 (S.D.N.Y. Sept. 27, 1994) ................................. 11, 12, 18

*Kronisch v. United States*,
    150 F.3d 112 (2d Cir. 1998) ................................................................................... 18

*Landry v. F.D.I.C.*,
    204 F.3d 1125 (D.C. Cir. 2000) .............................................................................. 19

*Micillo v. Liddle & Robinson LLP*,
    15 Civ. 6141 (JMF), 2016 WL 2997507 (S.D.N.Y. May 23, 2016) ......................... 21

*Mohamed v. Jeppesen Dataplan, Inc.*,
    614 F.3d 1070 (9th Cir. 2010) ................................................................... 8

*Northrop Corp. v. McDonnell Douglas Corp.*,
    751 F.2d 395 (D.C. Cir. 1984) .................................................................. 12

*S.E.C. v. Downe*,
    No. 92 Civ. 4092 (PKL), 1994 WL 23141 (S.D.N.Y. Jan. 27, 1994).......... 8

*Solis v. New China Buffet No. 8, Inc.*,
    No. 5:10-CV-78 (CAR), 2011 WL 2610296 (M.D. Ga. July 1, 2011) ......... 8

*Stinson v. City of New York*,
    304 F.R.D. 432 (S.D.N.Y. 2015) .............................................................. 24

*Tilden v. Tenet*,
    140 F. Supp. 2d 623 (E.D. Va. 2000).......................................................11

*United States v. Mount Sinai Hosp.*,
    185 F. Supp. 3d 383 (S.D.N.Y. 2016)....................................................... 24

*United States v. Painting Known as 'Le Marche,'*
    No. 06 Civ. 12994 (RJS)(KNF), 2008 WL 2600659 (S.D.N.Y. June 25, 2008) ...... 9

*United States v. Reynolds*,
    345 U.S. 1 (1953) ..................................................... 10, 11, 12, 17

*United States v. Sixty-one Thousand Nine Hundred Dollars and No Cents*,
    No. 10 Civ. 1866 (BMC), 2010 WL 4689442 (E.D.N.Y. Nov. 10, 2010)............... 9

*Zuckerbraun v. Gen. Dynamics Corp.*,
    935 F.2d 544 (2d Cir. 1991) ............................................. 10, 11, 12, 17

**Statutes**

5 U.S.C. § 552(b) ........................................................................................ 2

5 U.S.C. § 552(b)(7)(A) .............................................................................. 21

50 U.S.C. § 3024(i)(1) ................................................................................ 17

*Rules*

Fed. R. Civ. P. 26(b)(3)................................................................................................. 23

Fed. R. Civ. P. 26(b)(3)(A)............................................................................................ 23

Fed. R. Civ. P. 26(b)(3)(B)............................................................................................ 23

Fed. R. Civ. P. 45(d)(2)(B)............................................................................................. 6

*Regulations*

28 C.F.R. § 16.26(a)(2)................................................................................................... 6

28 C.F.R. § 16.26(b)(1)................................................................................................... 6

28 C.F.R. § 16.26(b)(3)................................................................................................... 6

28 C.F.R. § 16.26(b)(4)................................................................................................... 6

28 C.F.R. § 16.26(b)(5)................................................................................................... 6

28 C.F.R. §§ 16.21-16.29................................................................................................ 3

## PRELIMINARY STATEMENT

The Department of Justice ("DOJ") and its component, the Federal Bureau of Investigation ("FBI") (collectively, the "Government"), respectfully submit this memorandum of law in partial opposition to the motion of the Plaintiffs Executive Committees ("PECs") to compel disclosure of certain information contained in an FBI report dated October 5, 2012 (the "2012 Summary Report").  In both their court filings and at prior court conferences, the PECs have made clear that the primary information they seek from this document is the name of the third "main subject" of the FBI's investigation, who is described as having "tasked Omar al-Bayoumi and Fahad al-Thumairy with assisting the hijackers."  In light of the exceptional nature of this case, the FBI has determined to exercise its discretion, pursuant to section 3.1(d) of Executive Order 13,526, to declassify the name of the third main subject in the public interest and to release that name to counsel for the parties under the FBI Protective Order.

The remaining information that has been redacted from the 2012 Summary Report remains classified and/or privileged and protected from disclosure.  The Attorney General of the United States, after actual and personal consideration, has asserted the state secrets privilege to protect the classified information sought from the report.  The public declarations submitted by Attorney General William P. Barr ("Barr Decl.") and the Assistant Director of the FBI's Counterterrorism Division, Michael C. McGarrity ("McGarrity Decl.")—and a detailed classified declaration lodged for the Court's *ex parte*, *in camera* review ("Classified McGarrity Decl.")—establish a reasonable danger that release of the classified information sought from the 2012 Summary Report would risk significant harm to national security.  The information is therefore protected from disclosure by the state secrets privilege, as well as other privileges.  The limited unclassified information sought from the report is also highly sensitive and protected by the law

enforcement privilege.  For these reasons, the remaining aspects of the motion to compel should be denied.

## BACKGROUND ON THE 2012 SUMMARY REPORT

The 2012 Summary Report was prepared to provide an update on an FBI investigation that has been described as the "Subfile Investigation."  McGarrity Decl. ¶ 4.  The FBI opened a subfile within the PENTTBOM investigation—the FBI's initial investigation of the 9/11 attacks—to sharpen the focus on allegations that the circle of 9/11 conspirators may be broader than reported in the *9/11 Commission Report*, published in 2004.  *Id.* ¶¶ 4 n.2, 14.  Both the PENTTBOM investigation and the Subfile Investigation remain open.  *Id.* ¶ 14.  In its current form, the Subfile Investigation is focused on individuals who provided or may have provided substantial assistance to 9/11 hijackers Nawaf al-Hazmi or Khalid al-Mihdhar.  *Id.*  The FBI has publicly disclosed that Omar al-Bayoumi and Fahad al-Thumairy are subjects of the Subfile Investigation.  *Id.* ¶¶ 14 & n.6, 17.

In 2016, the FBI produced a redacted version of the 2012 Summary Report in response to a request under the Freedom of Information Act ("FOIA").  Supplemental Declaration of Sarah S. Normand dated Sept. 12, 2019 ("Supp. Normand Decl."), ¶ 4 & Exh. J; McGarrity Decl. ¶ 14 n.6.  The FBI withheld certain information in the report pursuant to various FOIA exemptions, *see* 5 U.S.C. § 552(b), including information that was currently and properly classified; information protected by Section 102A(i)(1) of the National Security Act of 1947; privileged information; various categories of law enforcement information; and information that implicated personal privacy interests.  Supp. Normand Decl., Exh. J.  The district court supervising the FOIA litigation upheld all of the FBI's redactions to the 2012 Summary Report, with the exception of certain information redacted solely on privacy grounds.  *Broward Bulldog, Inc. v.*

2

*DOJ*, No. 16-61289-CIV, 2017 WL 746410, at *16-18 (S.D. Fla. Feb. 27, 2017), *appeals pending*, Nos. 17-13787, 17-14264 (11th Cir.).

On April 10, 2018, the PECs served on the FBI a subpoena and a request pursuant to the DOJ's *Touhy* regulations, 28 C.F.R. §§ 16.21-16.29, in which they sought, among other things, an unredacted copy of the 2012 Summary Report.  Declaration of Sarah S. Normand, dated June 21, 2019 ("Normand Decl."), Exh. A.  By letter dated May 2, 2018, the FBI provided an interim response to the *Touhy* request and served formal objections to the subpoena.  *Id.*, Exh. B.

During numerous meet-and-confer discussions, the PECs have emphasized that, of the voluminous documents they had requested, they placed particular importance on the release of a name that had been redacted from the 2012 Summary Report.  Specifically, plaintiffs sought the identity of the third "main subject" of the Subfile Investigation, whose name had been redacted from this sentence of the document:  "There is evidence that [REDACTED] and tasked al-Thumairy and al-Bayoumi with assisting the hijackers."  The PECs have characterized this "discrete" piece of information as "critical to the litigation."

The FBI agreed to conduct a line-by-line review of the 2012 Summary Report to determine whether any information contained therein, although properly classified and/or privileged, could nonetheless be disclosed in the litigation.  This review included consideration of whether any information could be declassified and released in the public interest and in the exercise of discretion pursuant to section 3.1(d) of Executive Order 13,526.  Declaration of Duel W. Valentine, dated June 21, 2019, ¶ 8.  The FBI determined that the information redacted from the document (including the name of the third main subject) was properly classified or otherwise

privileged, although certain information that had been redacted from the FOIA-produced version of the document was released to the parties pursuant to the FBI Protective Order.[1]

Upon further consideration, and in consultation with the Attorney General, the FBI has exercised its discretion, under section 3.1(d) of Executive Order 13,526, to declassify limited information in the 2012 Summary Report, specifically, the name of the third main subject of investigation. The September 11 terrorist attacks were the most lethal in our nation's history, and the FBI has long been committed to providing the families of the victims with transparency regarding its investigation of the events of that tragic day, consistent with maintaining the national security and the FBI's overriding goal of preventing future terrorist attacks. Thus, under the exceptional circumstances of this case, the name of the third main subject has been declassified and is being released to counsel pursuant to the FBI Protective Order. McGarrity Decl. ¶ 14; *see* Supp. Normand Decl., Exh. K.[2]

As for the remaining classified information sought from the 2012 Summary Report, after actual and personal consideration, the Attorney General has asserted the state secrets privilege to

---

[1] Specifically, on May 1, 2019, at the request of the PECs, the FBI produced an interim version of the 2012 Summary Report to counsel pursuant to the FBI Protective Order. Supp. Normand Decl. ¶ 5. The interim version lifted certain redactions that had been applied to the FOIA-produced version of the report. *Id.* The FBI produced a revised version of the report on July 12, 2019, which lifted one redaction, *id.* ¶ 6, and on August 30, 2019, after receiving authorization from a foreign government, the FBI produced a further revised version, which lifted an additional redaction, *id.* ¶ 7.

[2] In releasing this individual's name, and in the interest of ensuring that neither plaintiffs nor the public are misled by inaccurate or incomplete phrasing in what was meant to be an internal FBI document, the FBI wishes to make clear that this declassification decision should not be taken as an affirmation or confirmation of the statements in the 2012 Summary Report about that individual. McGarrity Decl. ¶ 22. The FBI also notes that, in retrospect, it would have been more appropriate to phrase the last sentence in the report and the statements about the individual at the top of the last page as an investigative theory being pursued by the FBI and not as objective statements of fact. *Id.*

protect the information from disclosure.  Barr Decl. ¶¶ 3-4; McGarrity Decl. ¶¶ 15-37.  The information subject to the Attorney General's assertion of the state secrets privilege is also protected by the law enforcement privilege, and a small amount of that information is additionally protected by the work product doctrine and the deliberative process privilege. McGarrity Decl. ¶¶ 38, 41-43.  The FBI has also asserted the law enforcement privilege to protect limited unclassified information in the report.  *Id.* ¶¶ 39-40.[3]

## ARGUMENT

As set forth in the FBI's initial response to the PECs' motion to compel, this Court should review the FBI's response to the PECs' subpoena under the "arbitrary and capricious" standard of review provided by the Administrative Procedure Act ("APA").  *See* FBI Memorandum of Law in Opposition to Motion to Compel, filed under seal on June 21, 2019 ("Initial FBI Opp.") at 11-12.  The FBI has now produced the primary information that the plaintiffs seek from the 2012 Summary Report.  The Government's declarations establish that the remaining information is privileged from disclosure.  Accordingly, the FBI's claims of privilege should be upheld whether the Court applies the standards applicable to the APA or Rule 45 of the Federal Rules of Civil Procedure.

---

[3] Not all of the remaining information withheld from the 2012 Summary Report remains at issue in this case. On May 22, 2019, the PECs identified the specific redactions in the report that they intended to challenge.  Supp. Normand Decl. ¶ 9; Memorandum of Law in Support of Plaintiffs' Initial Motion to Compel, filed under seal on May 31, 2019 ("Pl. Br.") at 7; *see* Declaration of Sean P. Carter dated May 31, 2019 ("Carter Decl."), Exh. 10.  The PECs subsequently advised that they are not seeking the following information from the 2012 Summary Report:  (1) the classified name of the FBI's investigation, (2) internal file numbers, (3) the names/identifiers of the field office squad conducting the investigation and the headquarters unit overseeing the investigation, and (4) the names and telephone numbers of the field office and headquarters points of contact.  Supp. Normand Decl. ¶ 10.  Accordingly, the FBI does not address these categories of information here.

**I.**    **The FBI Has Preserved and Properly Invoked All Applicable Privileges**

As an initial matter, plaintiffs are incorrect in asserting that the FBI has never invoked any privileges in objecting to the production of the 2012 Summary Report.  *See, e.g.*, Pl. Br. at 16, 17, 21.  In its May 2, 2018 letter, the FBI responded to the *Touhy* request and served formal objections to the subpoena in accordance with Rule 45(d)(2)(B).  Normand Decl., Exh. B.  The FBI specifically objected to the subpoena on the grounds that the 2012 Summary Report "includes classified and statutorily protected information," including information protected from disclosure by the National Security Act, as amended.  *Id.* at 9, 10; *see also* 28 C.F.R. § 16.26(b)(1), (3) (prohibiting disclosure of classified and statutorily protected information in response to a *Touhy* request).  The FBI further objected to the subpoena on the grounds that "the 2012 FBI Summary Report includes information protected by the deliberative process and law enforcement privileges."  Normand Decl., Exh. B at 8; *see also* 28 C.F.R. §§ 16.26(a)(2), 16.26(b)(4)-(5).  The letter noted that the redactions in the report had been upheld in FOIA litigation, precisely because the document includes classified, statutorily protected and privileged information.  Normand Decl., Exh. B at 8-10.

In addition, the FBI applied redaction codes that describe the various categories of information that have been withheld from the 2012 Summary Report.  *See* Carter Decl., Exh. 10; Supp. Normand Decl. ¶ 8 & Exh. K (key describing each FBI redaction code).  These codes allowed plaintiffs to see which specific redactions relate to information that, *inter alia*, is classified, is protected from disclosure by the National Security Act, would reveal the identity of a confidential informant, was obtained from a foreign government, or is subject to the deliberative process or work product privileges.  The codes put the PECs on notice of the

privileges the FBI was asserting with regard to the information in the document.  *See Graham v. Mukasey*, 247 F.R.D. 205, 206 (D.D.C. 2008).

The only privilege that is being asserted now that was not identified in the redaction codes is the state secrets privilege, which can only be asserted on behalf of the DOJ or a DOJ component by the Attorney General after actual personal consideration.  *See infra* at 11.  But the PECs were aware of the possibility that the state secrets privilege would be asserted, as Government counsel explained at the May 13, 2019 status conference that the DOJ would have to undertake a formal review process in order to assert that privilege.  Normand Decl., Exh. I at 23-25, 35.  Indeed, the bifurcated briefing schedule proposed by the parties, and endorsed by the Court, was designed to permit this process to take place with regard to the 2012 Summary Report.  *See id.* at 34-37; ECF No. 4524.

The FBI's formal objections to the subpoena, the redaction codes applied to the 2012 Summary Report, the statements of Government counsel at the May 13 court conference, and a prior court decision that discussed multiple bases for withholding information from the report, *see Broward Bulldog,* 2017 WL 746410, at **16-18, have provided plaintiffs with more than adequate notice of the nature of the FBI's claims of privilege.[4]

The PECs incorrectly suggest that the FBI was required to submit an affidavit in support of its privilege assertions at the time it served its privilege log, Pl. Br. at 16-17 & n.3, but nothing

---

[4] That the FBI has asserted additional bases for withholding information in the 2012 Summary Report that were not asserted in the FOIA litigation, including the state secrets privilege, Pl. Br. at 19-20, is immaterial.  In a FOIA case, there is no need (nor would it be practical) to assert the state secrets privilege if the information at issue is properly classified (as it is here), because such information is already exempt from disclosure under FOIA exemption 1.  *See Edmonds v. U.S. Dep't of Justice*, 405 F. Supp. 2d 23, 32 n.5 (D.D.C. 2005); *see also Halkin v. Helms*, 690 F.2d 977, 995-96 (D.C. Cir. 1982).  The FBI asserted FOIA exemptions as necessary to protect the classified and privileged information in the report.  *Broward Bulldog,* 2017 WL 746410, at **16-18 (upholding FBI's assertions of FOIA exemptions 1, 3, 5, and 7(A), (D) & (E)).

in Rule 45 or Local Rule 26.2 imposes such a requirement.  Numerous courts have held that the federal government is not obligated to submit a declaration in support of a claim of executive privilege in advance of a motion to compel.  *See, e.g.*, *In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997) (Rule 45 requires only that federal government object to subpoena and state claim of privilege; formal invocation of executive privilege only necessary upon filing of motion to compel); *Solis v. New China Buffet No. 8, Inc.*, No. 5:10-CV-78 (CAR), 2011 WL 2610296, at *2 (M.D. Ga. July 1, 2011); *S.E.C. v. Downe*, No. 92 Civ. 4092 (PKL), 1994 WL 23141, at *5 (S.D.N.Y. Jan. 27, 1994); *cf. Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1081-82 (9th Cir. 2010) (en banc) (noting that state secrets privilege can be asserted in a range of procedural contexts); *Ellsberg v. Mitchell*, 709 F.2d 51, 52 (D.C. Cir. 1983) (sustaining state secrets privilege asserted in opposition to motion to compel discovery).  As Judge Cote has observed, "requiring a high-level agency official to provide a certification justifying the invocation of privilege with respect to [all] documents [on a privilege log], before any document is specifically challenged, would constitute a tremendous resource strain on [the agency].  The . . . contention that such a procedure is required is incongruent with the real-world practicalities of agency governance."  *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 978 F. Supp. 2d 267, 278-79 (S.D.N.Y. 2013) (declaration asserting executive privilege by head of agency is only required in response to motion to compel).  The PECs' argument is also inconsistent with the Court's scheduling order, which specifically provides that "if the FBI is going to submit any affidavits or declarations in support of assertions of privilege (state secrets or otherwise) or any other grounds to withhold information from the 2012 Summary Report, those shall be submitted with the FBI's opposition by August 30, 2019."  ECF No. 4524; *see also* ECF Nos. 4987, 5091 (extending deadline on consent).

In making their argument, the PECs rely on a line of cases from district courts in California, which adopt a specific procedure for the assertion of the "official information" privilege in federal civil rights actions where local law enforcement agencies or officers are defendants. *See Kelly v. City of San Jose*, 114 F.R.D. 653, 670 (N.D. Cal. 1987) (cited in Pl. Br. at 16 n.3). The "official information" privilege has not been asserted by the FBI, however, and thus the procedures governing its invocation are inapplicable here. *See, e.g.*, *Del Socorro Quintero Perez v. United States*, No. 13-cv-1417-WQH-BGS, 2016 WL 499025, at *3 (S.D. Cal. Feb. 9, 2016) (noting that protocols applicable to assertion of "official information" privilege do not apply to assertion of other executive privileges). Furthermore, the FBI is not a party to this case, and procedures designed specifically for local law enforcement agency defendants do not govern the federal government's invocation of executive privilege. *Kelly*, 114 F.R.D. at 658-60.

Although Magistrate Judge Fox in *United States v. Painting Known as 'Le Marche*,' No. 06 Civ. 12994 (RJS)(KNF), 2008 WL 2600659, at *3 (S.D.N.Y. June 25, 2008), relied upon this inapposite caselaw in holding that the United States had not adequately supported a claim of law enforcement privilege, in that case the Government had failed to submit a declaration after the discovery dispute was raised with the Court. *Id.* (noting that "no affidavits have been submitted to the Court and no affidavits appear to have been served on Davis . . . at any [] time"). In contrast, the FBI has submitted declarations to this Court that set forth the bases for its invocations of privilege. To the extent the *Le Marche* decision suggests in *dicta* that the Government should have submitted a declaration at the time it prepared its privilege log, courts have rejected that *dicta* as contrary to established practice in the Second Circuit. *See United States v. Sixty-one Thousand Nine Hundred Dollars and No Cents*, No. 10 Civ. 1866 (BMC), 2010 WL 4689442, at *3 (E.D.N.Y. Nov. 10, 2010) (rejecting reasoning of *Le Marche* on the

ground that Local Rule 26.2 does not require submission of a declaration at the time the claim of

privilege is made); *Aguilar v. ICE*, 259 F.R.D. 51, 58 (S.D.N.Y. 2009) (same).[5]

## II.   The Remaining Information Plaintiffs Seek from the 2012 Summary Report Is Privileged and Protected from Disclosure

The primary information that plaintiffs seek from the 2012 Summary Report—and the

only information the PECs address with specificity in their motion to compel—has now been

declassified and is being released to counsel pursuant to the FBI Protective Order.  The

remaining information that plaintiffs seek from the report, however, remains privileged and

protected from disclosure.

### A.   The Classified Information Plaintiffs Seek from the 2012 Summary Report Is Protected by the State Secrets Privilege and the National Security Act

"The state secrets privilege is a common law evidentiary rule that allows the government

to withhold information from discovery when disclosure would be inimical to national security."

*Zuckerbraun v. Gen. Dynamics Corp.*, 935 F.2d 544, 546 (2d Cir. 1991); *see also United States*

*v. Reynolds*, 345 U.S. 1, 6-7 (1953) (state secrets privilege "is well established in the law of

evidence").  As a manifestation of the President's Article II powers to conduct foreign affairs and

provide for the national defense, the state secrets privilege is "protected by constitutional

principles of separation of powers."  *In re United States*, 872 F.2d 472, 482 (D.C. Cir. 1989); *see*

*also El-Masri v. United States*, 479 F.3d 296, 303-04 (4th Cir. 2007) ("Although the state secrets

privilege was developed at common law, it performs a function of constitutional significance,

because it allows the executive branch to protect information whose secrecy is necessary to its

military and foreign-affairs responsibilities.").  "The various harms, against which protection is

---

[5] In any event, a failure to timely assert an executive privilege does not result in waiver of the privilege.  *See, e.g.*, *In re Sealed Case*, 856 F.2d 268, 272 n.3 (D.C. Cir. 1988); *see also Del Socorro*, 2016 WL 499025, at *3.

sought by invocation of the privilege, include impairment of the nation's defense capabilities, disclosure of intelligence-gathering methods or capabilities, and disruption of diplomatic relations with foreign governments." *Ellsberg*, 709 F.2d at 57 (footnotes omitted).

The elements of a state secrets assertion were set forth in the seminal *Reynolds* case. 345 U.S. at 7-8. The United States may invoke the privilege by making a "[1] formal claim of privilege, [2] lodged by the head of the department which has control over the matter, after [3] actual personal consideration by that officer." *Id.* (footnotes omitted); *Zuckerbraun*, 935 F.2d at 546 ("The privilege must be claimed by the head of the department with control over the matter in question after personal consideration by that officer."); *accord Doe v. CIA*, 576 F.3d 95, 102, 104 (2d Cir. 2009). An assertion of the privilege thus represents a policy decision made at the highest level of the agency concerned that disclosure of the information at issue would be harmful to national security. *Halkin*, 690 F.2d at 996.

Once the state secrets privilege is formally asserted, "the scope of judicial review is quite narrow." *Kronisch v. United States*, No. 83 Civ. 2458, 1994 WL 524992, at *10 (S.D.N.Y. Sept. 27, 1994) (Buchwald, M.J.), *report and recommendation adopted*, 1995 WL 303625 (S.D.N.Y. May 18, 1995) (Wood, J.), *aff'd*, 150 F.3d 112 (2d Cir. 1998); *see also Tilden v. Tenet*, 140 F. Supp. 2d 623, 626 (E.D. Va. 2000) ("Once the privilege is invoked, the role of the court is a limited one."). The court's inquiry is whether, "from all the circumstances of the case, . . . there is a reasonable danger that compulsion of the evidence will expose military [or other] matters which, in the interest of national security, should not be divulged." *Reynolds*, 345 U.S. at 10; *see also Zuckerbraun*, 935 F.2d at 546-47 (in determining the validity of the privilege, the district court must "satisf[y] itself that there is a reasonable danger that disclosure of the particular facts in litigation will jeopardize national security"). The court may review classified submissions *ex*

11

*parte* and *in camera* to determine whether the state secrets privilege has been properly invoked. *See Doe*, 576 F.3d at 105-06.  In evaluating an assertion of the state secrets privilege, "the court must accord the 'utmost deference' to the executive's determination" of the potential harms to national security.  *Zuckerbraun*, 935 F.2d at 547 (citation omitted).[6]

　　While a party's litigation need for particular information may be relevant in determining "how far the court should probe in satisfying itself that the occasion for invoking the privilege is appropriate," *Reynolds*, 345 U.S. at 11; *see also Kronisch*, 1994 WL 524992, at *11, "even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that [state] secrets are at stake," *Reynolds*, 345 U.S. at 11; *Zuckerbraun*, 935 F.2d at 547.  Thus, in evaluating an invocation of the state secrets privilege, courts do not balance the interests of the United States in protecting its secrets against the interests of a litigant in obtaining a remedy for an injury.  That balance has already been struck in favor of protection of state secrets.  *See Reynolds*, 345 U.S. at 10-11; *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 399 (D.C. Cir. 1984) (state secrets privilege "cannot be compromised by any showing of need on the part of the party seeking the information"; "a party's need for the information is not a factor in considering whether the privilege will apply"); *accord El-Masri*, 479 F.3d at 306; *Ellsberg*, 709 F.2d at 57; *Halkin*, 690 F.2d at 990.

---

[6] The PECs urge the Court to review the 2012 Summary Report *in camera*, Pl. Br. at 25, but "the trial court may not 'automatically' require the government to produce the material for which secrecy is claimed, . . . even for perusal of the judge in chambers."  *Doe*, 576 F.3d at 104; *see also* Initial FBI Opp. at 24-25.  Rather, where the court is satisfied, based on the Government's declarations, that there is a "reasonable danger" that disclosure would harm national security, "the occasion for the privilege is appropriate, and the court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers."  *Reynolds*, 345 U.S. at 9-10.

### 1.   The Government Has Properly Invoked the State Secrets Privilege

The Government has satisfied the procedural and substantive requirements for assertion of the state secrets privilege.  A formal claim of privilege has been asserted by the Attorney General, the head of the DOJ, based upon his personal consideration of the matter.  Barr Decl. ¶¶ 3-4.  The Government's classified and unclassified declarations amply establish "a reasonable danger" that disclosure of the remaining information sought from the 2012 Summary Report could reasonably be expected to cause significant damage to national security.

The Attorney General has asserted the state secrets privilege over four overlapping categories of classified information in the 2012 Summary Report:

- *Subject information*, including information which would indicate that a particular individual is or was the subject of a national security investigation, unless the identity of the subject has been made public or has been declassified under proper authority.  This category of information includes information that could tend to confirm or deny whether a particular individual is, was, or was not the subject of a national security investigation.

- *Reasons for investigation and results*, including information which would reveal the reasons a particular individual is or was the subject of a national security investigation and information obtained as a result of that investigation.  This category of information includes information that could tend to reveal the predicate for an FBI national security investigation regarding a particular person, information obtained during the course of such an investigation, and the status and results of the investigation.

- *Sources and methods*, including information which would reveal sensitive sources and methods used in a national security investigation.  This category includes information that could tend to reveal particular sources and methods or techniques, and classified policies and procedures, the FBI used in a national security investigation with respect to a specific individual, including information relating to court-ordered searches or surveillance, confidential human sources or other investigative or operational sources and methods the FBI may use in a national security investigation regarding a particular person, the reasons such methods were used, the status of the use of such sources and methods, and results derived from such methods.

- *Foreign government information and information sharing and cooperation with foreign partners*, including information received from a foreign government with the understanding that it and the nature of the information sharing and cooperation between the FBI and foreign partners in a national security investigation will remain confidential.

Barr Decl. ¶ 3; McGarrity Decl. ¶¶ 15, 17, 25, 29, 33.  The specific information that falls within these categories, and that is subject to the Attorney General's assertion of the state secrets privilege, is described in detail in the Classified McGarrity Declaration, submitted for the Court's review *ex parte* and *in camera*.  Barr Decl. ¶ 4.

The Attorney General has determined, after actual and personal consideration, that disclosure of these categories of information reasonably could be expected to cause significant harm to the national security.  *Id.*  First, the Attorney General concurs with the determination of the FBI that disclosure of the identities of unacknowledged subjects of FBI national security investigations reasonably could be expected to cause significant harm to the national security:

> As the FBI has explained, such disclosure would alert those subjects to the FBI's interest in them and could reasonably be expected to cause them to destroy evidence, attempt to influence witnesses, or take steps to alter their conduct so as to avoid detection of their future activities.  In addition, as the FBI has explained, disclosure would also alert associates of the subjects to the fact that the FBI may be aware of their associations with the subjects, causing them to take similar steps to avoid scrutiny.

Barr Decl. ¶ 5; *see also* McGarrity Decl. ¶¶ 18-21, 24.  Disclosure of subject information "could also enable subjects to ascertain the identities of confidential human sources . . . or other sources of intelligence, putting those sources at risk."  McGarrity Decl. ¶ 18.  The Classified McGarrity Declaration discusses the particular harms that can reasonably be expected to flow from disclosure of the specific subject information withheld from the 2012 Summary Report.

Second, the Attorney General agrees with the judgment of the FBI that disclosure of the reasons for and results of an FBI national security investigation—whether the initial predicate for opening an investigation, information gained during the investigation, or the status or results of

the investigation—could also reasonably be expected to cause significant harm to national

security.  Barr Decl. ¶ 6; McGarrity Decl. ¶¶ 26, 28.  The Attorney General explains:

> As the FBI has determined, disclosure of this information could reveal a range
> of sensitive national security information.  In addition to revealing what the FBI
> knows and what the FBI deems important to a national security investigation,
> disclosure of such information would alert current and future subjects to which
> activities are likely to cause the FBI to focus its attention and result in the
> opening of an investigation, thereby providing valuable insight to those intent on
> terrorism and other criminal activity on how individuals can avoid detection.
> Disclosure of the reasons for and results of an FBI national security
> investigation may also alert subjects and others of the sources of that
> information, thus revealing sensitive sources and methods including the
> existence of confidential human sources reporting on the subject.

Barr Decl. ¶ 6.  The Classified McGarrity Declaration provides additional explanation why

disclosure of the reasons for and results of an FBI national security investigation can reasonably

be expected to harm national security.

Third, the Attorney General agrees with the FBI that disclosure of information that would

tend to reveal sensitive sources and methods used in a national security investigation could

likewise reasonably be expected to cause significant harm to the national security.  Barr Decl. ¶

7; McGarrity Decl. ¶¶ 30, 32.  This aspect of the privilege assertion includes information that

would tend to reveal whether court-ordered searches or surveillance, confidential human sources,

or other investigative or operational sources and methods were used in a national security

investigation of a particular person, the reasons for and status of the use of such sources and

methods, and the results derived from such methods.  Barr Decl. ¶ 7.  Protecting FBI sources and

methods for investigating and countering potential national security threats is of the utmost

significance because revelation of this vital information would allow adversaries to deploy

countermeasures or escape detection.  *Id.*; McGarrity Decl. ¶ 30.  Disclosure of sensitive sources

and methods would also risk compromising the use of those sources and methods in the future,

and potentially risk harm to individuals, including confidential human sources.  McGarrity Decl. ¶ 30.  Additional information regarding the specific harms that can reasonably be expected to result from disclosure of information in this category is provided in the Classified McGarrity Declaration.

Fourth, the Attorney General agrees with the FBI's judgment about the significant harm to national security that would be caused by the disclosure of information and other assistance supplied to the United States by foreign government partners in connection with national security investigations.  Barr Decl. ¶ 8; McGarrity Decl. ¶¶ 34-35, 37.  The FBI's ability to carry out its responsibilities to conduct national security investigations often depends on the cooperation of foreign government officials, foreign intelligence services, or foreign security services.  Barr Decl. ¶ 8.  The Attorney General agrees with the FBI's conclusion that maintaining the confidentiality of foreign government information and information sharing and cooperation of foreign partners is critical to sustaining ongoing, productive cooperation with friendly foreign nations in the field of counterterrorism.  *Id.*  In addition, disclosure of a country's cooperation with the FBI could reasonably be expected to cause significant harm to the national security because it would enable terrorists to avoid or employ countermeasures in countries that share information with the United States.  *Id.*  The Classified McGarrity Declaration further describes the harms that can reasonably be expected to result from disclosure of the specific foreign government information and assistance reflected in the 2012 Summary Report.[7]

---

[7] As the Attorney General attests, the requirements of DOJ's 2009 guidance for assertion of the state secrets privilege and defense of the privilege in litigation have been met in this case.  Barr Decl. ¶ 10.  In addition to establishing detailed review procedures within the DOJ, that guidance requires that any assertion of the privilege (1) be necessary to protect against a risk of significant harm to national security, (2) be narrowly tailored, and (3) not be made to (i) conceal violations of the law, inefficiency, or administrative error; (ii) prevent embarrassment to a person, organization, or agency of the United States Government; (iii) restrain competition; or (iv)

The PECs note that many years have passed since the events of September 11, 2001, Pl. Br. 1, 24, but as Assistant Director McGarrity explains,

> the mere passage of time does not cause the FBI to cease its efforts to bring criminals to justice. This is the case with respect to common criminals, but it is especially the case with respect to terrorists and terrorist organizations. The investigations in those cases are aimed not only at eventual prosecution of the individuals who carried out the attacks but of those involved in planning, coordinating, or providing material support or resources used in preparation for or carrying out the attacks. As the 9/11 attacks were the deadliest terrorist attacks in U.S. history and required substantial planning, coordination and support, the FBI expects to continue the investigation over the long term with the goal of bringing criminal charges against all individuals responsible for the attacks.

McGarrity Decl. ¶ 23. The Government's declarations amply establish a "reasonable danger" that disclosure of the information in the four categories described above would be detrimental to national security. *See Reynolds*, 345 U.S. at 9-10. This determination is entitled to the "utmost deference." *Zuckerbraun*, 935 F.2d at 547 (citation and internal quotation marks omitted); *see also El-Masri*, 479 F.3d at 305 (deference is appropriate "not only for constitutional reasons," but because "the Executive and the intelligence agencies under his control occupy a position superior to that of the courts in evaluating the consequences of a release of sensitive information"). The Court accordingly should uphold the Attorney General's assertion of the state secrets privilege.

### 2. The Information Subject to the Attorney General's Assertion of the State Secrets Privilege Is Also Protected by the National Security Act

Section 102A(i)(1) of the National Security Act, as amended, provides that "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). This statutory authority to protect intelligence

---

prevent or delay the release of information the release of which would not reasonably be expected to cause significant harm to national security. *Id.* & Exh. 1.

sources and methods has been delegated to the FBI. McGarrity Decl. ¶ 4 n.1; *see DiBacco v. U.S. Army*, 795 F.3d 178, 197-99 (D.C. Cir. 2015) (recognizing that the Director of National Intelligence has delegated authority under this provision to the members of the Intelligence Community).

Numerous courts have held that information that falls within the scope of the National Security Act's prohibition on unauthorized disclosure of intelligence sources and methods is privileged from disclosure in civil discovery. *See Kronisch*, 1994 WL 524992, at *8 (citing cases).[8] As set forth in the declaration of Assistant Director McGarrity, the four categories of information encompassed by the Attorney General's assertion of the state secrets privilege would also reveal intelligence sources and methods within the meaning of the National Security Act. McGarrity Decl. ¶ 11 n.3. The FBI accordingly asserts the National Security Act as an additional protection from disclosure of the information that is the subject of the state secrets privilege assertion. *Id.* ¶¶ 4 n.1, 11 n.3; *see also Broward Bulldog,* 2017 WL 746410, at *16 (holding that classified information in 2012 Summary Report is also protected from disclosure under the National Security Act and FOIA exemption 3).[9]

---

[8] Plaintiffs' argument that Section 102A(i)(1) "establishes only a withholding statute governing the general treatment of intelligence sources and methods, and not a statutory privilege providing grounds for withholding such information in response to a subpoena" in civil discovery, Pl. Br. at 24, was explicitly rejected in *Kronisch*. *See* 1994 WL 524992, at *8 (addressing predecessor to Section 102A(i)(1)). Notably, the privilege rulings in *Kronisch*, including those "on the basis of the statutory privileges established by the National Security Act of 1947," were affirmed by the Second Circuit. 150 F.3d at 120 n.3. The D.C. Circuit cases cited by the PECs, Pl. Br. at 24 n.8, did not involve statutes that charged an agency with protecting sensitive national security information from unauthorized disclosure, but instead involved statutory restrictions on an agency's ability affirmatively to disclose or publish information.

[9] The name that has been declassified is also protected by the National Security Act, but its limited disclosure has been authorized in this case pursuant to the FBI Protective Order. McGarrity Decl. ¶ 11 n.3.

### B. The Information Plaintiffs Seek from the 2012 Summary Report Is Protected from Disclosure by the Law Enforcement Privilege

The FBI has also properly invoked the law enforcement privilege to protect the classified and unclassified information that plaintiffs seek from the 2012 Summary Report.  This privilege protects "information pertaining to 'law enforcement techniques and procedures,' information that would undermine 'the confidentiality of sources,' information that would endanger 'witness and law enforcement personnel or the privacy of individuals involved in an investigation,' and information that would 'otherwise interfere with an investigation.'"  *In re City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) (quoting *In re Dep't of Investigation of the City of New York*, 856 F.2d 481, 483-84 (2d Cir. 1988)) (alterations omitted).  To meet the burden to establish the applicability of the privilege, "(1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege." *In re Sealed Case*, 856 F.2d at 271.

### 1. The FBI Has Established the Applicability of the Law Enforcement Privilege

To establish the applicability of the law enforcement privilege, the FBI has submitted classified and unclassified declarations from Assistant Director McGarrity, who oversees the FBI's Counterterrorism Division and who based his assertion of the privilege upon personal review of the 2012 Summary Report.  McGarrity Decl. ¶¶ 3, 9, 38-40; *see, e.g.*, *Landry v. F.D.I.C.*, 204 F.3d 1125, 1135-36 (D.C. Cir. 2000) (head of relevant division or office within an agency is of sufficient rank to invoke the law enforcement privilege (citing cases)).  The declarations explain in detail the information over which the privilege is claimed, how that

information falls within the scope of the privilege, and the specific harms that would result from disclosure.

Assistant Director McGarrity explains that the classified information in the 2012 Summary Report encompassed by the Attorney General's assertion of the state secrets privilege is also encompassed by the FBI's assertion of the law enforcement privilege, as the FBI's counterterrorism and national security investigations also have a law enforcement purpose. McGarrity Decl. ¶ 38. Disclosure of information about unacknowledged subjects of those investigations, the reasons for and results of the FBI's investigations, the sources and methods used in the investigations, information regarding cooperation and information sharing with the FBI's foreign partners, and information received confidentially from those foreign partners, would seriously undermine the FBI's investigations and the ability of the FBI to carry out other investigations that rely upon the confidentiality of information, sources and methods, and its foreign partners. *Id.* The FBI's assertion of the law enforcement privilege also encompasses limited unclassified information in the 2012 Summary Report consisting of specific law enforcement methods and techniques used in the FBI's Subfile Investigation, the FBI's assessment of certain evidence gathered in the investigation, and information that would indirectly tend to reveal confidential cooperation from a foreign government. *Id.* ¶ 39. The unclassified information subject to the law enforcement privilege is detailed in the Classified McGarrity Declaration. *Id.* ¶ 40.[10]

---

[10] The PECs argue that the FBI cannot meet its burden of establishing the applicability of the law enforcement privilege by using redaction codes, Pl. Br. at 16-17 & n.3, but the FBI has not relied solely on redaction codes; it has submitted detailed declarations that describe the precise nature of the information withheld and the harms that would result from disclosure. Thus, cases in which the party asserting the law enforcement privilege relied on an entry in a privilege log that described an entire document as reflecting "law enforcement techniques and procedures," without any additional description or evidentiary support, *City of New York v. FedEx Ground Package Sys., Inc.*, No. 13 Civ. 9173 (ER), 2017 WL 4155410, at *4 (S.D.N.Y. Sept. 19, 2017),

These categories of law enforcement information fall well within the scope of the privilege.  *See, e.g.*, *In re City of New York*, 607 F.3d at 944 (field reports detailing NYPD undercover operations); *Cullen v. Margiotta*, 811 F.2d 698, 715-16 (2d Cir. 1987) (statements by confidential informants); *Floyd v. City of New York*, 739 F. Supp. 2d 376, 383 (S.D.N.Y. 2010) (potential targets of investigation); *Borchers v. Comm'l Union Assurance Co.*, 874 F. Supp. 78, 80-81 (S.D.N.Y. 1995) (testimony and documents concerning ongoing arson investigation); *see also Broward Bulldog,* 2017 WL 746410, at **17-18 (upholding FBI's assertion of FOIA law enforcement exemptions, 5 U.S.C. § 552(b)(7)(A), (D) & (E), with regard to information in 2012 Summary Report).  The PECs' argument that the 2012 Summary Report is not subject to the law enforcement privilege because "it is unclear whether the subfile investigation remains as 'active' as the FBI has suggested," Pl. Br. at 21, is unavailing.  An investigation "need not be ongoing for the law enforcement privilege to apply as the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed to the public." *In re City of New York*, 607 F.3d at 944 (citations and quotation marks omitted).  In any event, the FBI's declarations make clear that the investigation is still open and active.  McGarrity Decl. ¶ 14.

### 2.  The Likely Harms from Disclosure Outweigh Any Litigation Need for the Information

"Once a court has determined that the law enforcement privilege applies, . . . 'there [is] a pretty strong presumption against lifting the privilege.'"  *In re City of New York*, 607 F.3d at 945 (quoting *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997)).  To rebut

---

or withheld a non-criminal investigative file on the grounds that it "involved some of the same facts" as a later criminal investigation, without any further elaboration or description of the documents in the file, *Micillo v. Liddle & Robinson LLP*, 15 Civ. 6141 (JMF), 2016 WL 2997507, at *4 (S.D.N.Y. May 23, 2016), are inapposite.

that presumption, the party seeking disclosure must show, among other things, that there is a "compelling need" for the information. *Id.* Apart from the name that has now been declassified and released to counsel pursuant to the FBI Protective Order, the PECs have not attempted to show a need for the information in the 2012 Summary Report. *See DGM Investments, Inc. v. New York Futures Exchange, Inc.*, 224 F.R.D. 133, 142 (S.D.N.Y. 2004) (showing of compelling need must be directed to "limited and specific information"). Moreover, "demonstrating a compelling need does not automatically entitle a litigant to privileged information. Rather, disclosure is required only if that compelling need outweighs the public interest in nondisclosure." *In re City of New York*, 607 F.3d at 945. This balancing test is "multi-factored, non-mechanical, and circumstance-specific." *Floyd*, 739 F. Supp. 2d at 381. In performing this balancing test, the "sensitivity of the information in question" is one of the most significant factors, as the greater the sensitivity, the "greater the protection." *Id.*

Here, the FBI has established that the information in question is of the highest sensitivity. Most of the information that is subject to the FBI's assertion of the law enforcement privilege is classified and subject to the Attorney General's assertion of the state secrets privilege. The FBI has shown that its disclosure would seriously undermine the FBI's counterterrorism and national security investigations and the ability of the FBI to effectively carry out other investigations which rely upon the confidentiality of the information, sources, methods and foreign partner information sharing and cooperation at issue. McGarrity Decl. ¶ 38. The limited information that is unclassified could reasonably be expected to interfere with the Subfile Investigation and harm the FBI's relationship with a foreign partner that cooperated with the FBI on a confidential basis. *Id.* ¶ 39; *see also Broward Bulldog*, 2017 WL 746410, at \*\*17-18; *compare Floyd*, 739 F. Supp. 2d at 384-85 (documents had "low sensitivity" because they did "not involve secret

operations" and did not "implicate such vital concerns as terrorism").  In light of these serious

harms, the balancing test favors nondisclosure even if the PECs could show a compelling need

for the information.  *See Goodloe v. City of New York*, 136 F. Supp. 3d 283, 301 (E.D.N.Y.

2015) (upholding claim of privilege where, although "plaintiff's compelling need [wa]s strong,"

revelation of a confidential informant's identity would "compromise the CI's confidentiality and

safety").  Plaintiffs' argument that there can be no harm from disclosure of sensitive law

enforcement information if the documents are produced subject to the terms of the existing

protective order, Pl. Br. at 21, was rejected by the Second Circuit in *In re City of New York*, 607

F.3d at 936-37.

### C.  Discrete Classified Information Is Also Protected by the Work Product Doctrine and the Deliberative Process Privilege

A small amount of classified information that is subject to the Attorney General's

assertion of the state secrets privilege is also protected by the work product doctrine and the

deliberative process privilege.

The information at issue—consisting of a brief discussion of specific contemplated

investigative steps and legal strategy with regard to a particular individual, McGarrity Decl.

¶ 42—is core work product, protected from disclosure under Federal Rule of Civil Procedure

26(b)(3).  The information was "prepared in anticipation of litigation" by "a party or its

representative," namely, agents of the FBI working in consultation with prosecutors.  Fed. R.

Civ. P. 26(b)(3)(A); *see* Supp. Normand Decl., Exh. K at FBI001142 (referring to "Meeting with

AUSA" and "DOJ attorney").  The PECs have not argued that they have any substantial need for

this information, but even if they had, the information would still be protected from disclosure

because it reflects the "mental impressions" and "legal theories" of the agents and prosecutors.

Fed. R. Civ. P. 26(b)(3)(B) (court "must protect against disclosure of the mental impressions,

conclusions, opinions, or legal theories of a party's attorney or other representative concerning

the litigation"); *see also United States v. Mount Sinai Hosp.*, 185 F. Supp. 3d 383, 390 (S.D.N.Y.

2016) ("Documents or portions of documents that qualify as 'opinion work product' are 'entitled

to virtually absolute protection.'" (citation omitted)).

The information is also protected by the deliberative process privilege, which protects

internal agency documents that are "(1) predecisional, *i.e.*, prepared in order to assist an agency

decisionmaker in arriving at his decision, and (2) deliberative, *i.e.*, actually . . . related to the

process by which policies are formulated." *Brennan Ctr. for Justice at New York Univ. School of

Law v. DOJ*, 697 F.3d 184, 194 (2d Cir. 2012).  The discussion of specific contemplated

investigative steps and legal strategy with regard to a particular individual, prior to any final

investigative or prosecutorial decision, is both predecisional and deliberative.  McGarrity Decl.

¶ 42.[11]  Disclosure of confidential deliberations between and among agents and prosecutors

could reasonably be expected to harm the quality of agency decisionmaking regarding how best

to investigate and prosecute crime.  *Id.*; *see Stinson v. City of New York*, 304 F.R.D. 432, 435

(S.D.N.Y. 2015) ("Courts afford considerable deference to the judgment of the agency, since the

agency is in the best position to know how to prevent injuring the quality of agency

decisionmaking.").  And again, the PECs have not identified any substantial need for the

information that would be sufficient to overcome the deliberative process privilege.  Information

about the particular steps and strategy the FBI and prosecutors considered with regard to a

---

[11] The deliberative process privilege must be invoked "by the head of the governmental agency which has control over the information to be protected, after personal review of the documents in question," or "by a subordinate designee of high authority."  *Auto. Club of New York, Inc. v. Port Auth. of New York & New Jersey*, No. 11 Civ. 6746 (RKE) (HBP), 2014 WL 2518959, at *4 (S.D.N.Y. June 4, 2014).  Assistant Director McGarrity is authorized to assert this privilege on behalf of the FBI.  McGarrity Decl. ¶ 3.

particular individual is neither relevant nor important to the PECs' claims, and there is no

material public interest in disclosure of this information.  *See Stinson*, 304 F.R.D. at 436 (noting

factors considered in determining whether party has shown sufficient need for deliberative

materials).  To the contrary, the public interest favors non-disclosure of confidential deliberations

between and among FBI agents and prosecutors regarding how best to investigate and potentially

prosecute crime.

## CONCLUSION

In the exceptional circumstances of this case, and pursuant to its authority under section

3.1(d) of Executive Order 13,526, the FBI has exercised its discretion to declassify the primary

information that plaintiffs seek from the 2012 Summary Report—the name of the third main

subject of the FBI's investigation—and to release that information to counsel under the FBI

Protective Order.  The remaining information sought from the report is privileged and protected

from disclosure, and the Court should therefore deny the PECs' motion to compel disclosure of

that information.

Dated:        September 12, 2019
              New York, New York

                              Respectfully submitted,

                              GEOFFREY S. BERMAN
                              United States Attorney for the
                              Southern District of New York

                    By:   */s/ Sarah S. Normand*
                              SARAH S. NORMAND
                              JEANNETTE A. VARGAS
                              ANDREW E. KRAUSE
                              Assistant United States Attorneys
                              86 Chambers Street, 3rd Floor
                              New York, New York 10007
                              Telephone: (212) 637-2709/2678/2769