UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
:
:
In Re Terrorist Attacks on September 11, 2001      :      03 MDL 1570 (GBD)(SN)
:
:
------------------------------------------------------------x

## PUBLIC DECLARATION OF MICHAEL C. MCGARRITY
## FEDERAL BUREAU OF INVESTIGATION

I, Michael C. McGarrity, hereby state and declare as follows, pursuant to 28 U.S.C. § 1746:

1. I am the Assistant Director, Counterterrorism Division, Federal Bureau of Investigation ("FBI"), United States Department of Justice ("DOJ"). I am responsible for, among other things, directing the conduct of FBI counterterrorism investigations.

2. In my capacity as Assistant Director of the FBI's Counterterrorism Division, I have been delegated original classification authority by the Attorney General of the United States. *See* Executive Order ("EO") 13526, Section 1.3(c). As a result, and pursuant to all applicable Executive Orders, I am responsible for the protection of classified information, including the sources, methods, and techniques used by the FBI in the collection of such information. Thus, I have been authorized, pursuant to the responsibilities and obligations as defined in Executive Orders and through the delegation from the Attorney General, to execute declarations and other affidavits in order to protect such classified information.

3. In my capacity as Assistant Director, I have also been delegated authority by the Director

of the FBI to execute declarations and other affidavits asserting the law enforcement privilege where, for example, disclosure of information could cause harm to an investigation or investigative interest of the FBI, could impair the effectiveness of an investigative technique, method, or procedure of the FBI, or could tend to reveal a confidential source of information. As Assistant Director, I am also authorized to execute declarations and other affidavits asserting the attorney work product privilege and the deliberative process privilege.

## I. **PURPOSE OF THIS DECLARATION**

4. I submit this declaration in support of the Attorney General's assertion of the state secrets privilege and to support the FBI's assertion of other privileges[1] in response to Plaintiffs' motion to compel the production of certain information contained in an October 5, 2012 FBI report (the "2012 Report"). The 2012 Report provides an update on an FBI investigation into individuals who provided or may have provided substantial assistance to 9/11 hijackers Nawaf al-Hazmi ("Hazmi") and Khalid al-Mihdhar ("Mihdhar").[2] The FBI has produced a redacted version of the 2012 Report.

5. As set forth further below, it is my judgment that disclosure of the information subject to the Attorney General's privilege assertion described herein reasonably could be expected to cause significant harm to national security. I will also submit a classified *ex parte in camera* declaration in support of the Attorney General's assertion of the state secrets privilege and in

---

[1] In addition, the FBI asserts the protections of Section 102A(i)(1) of the National Security Act of 1947, as amended by the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 3024(i)(1), which provides that the Director of National Intelligence (DNI) "shall protect from unauthorized disclosure intelligence sources and methods." The FBI has been delegated authority by the DNI to assert the protections of the National Security Act.

[2] The publicly released report of the 9/11 Review Commission dated March 2015 (found at https://www.fbi.gov/file-repository/final-9-11-review-commission-report-unclassified.pdf/view) notes at page 101 the opening of a "subfile" within the PENTTBOM investigation, which is the primary investigation into the 9/11 attacks, in order to "sharpen the focus on the lingering allegations that the circle of 9/11 conspirators may be wider." The 9/11 Review Commission report also refers at page 103 to the continuing work of "the subfile team." For purposes of the unclassified paragraphs of this declaration, I will use the term "Subfile Investigation" when referring to the subject matter of the 2012 Report.

2

support of the FBI's assertion of other privileges. In this public declaration, I describe as best as I am able to do in unclassified terms, the information subject to Plaintiffs' motion and the reasons why its disclosure reasonably could be expected to cause significant harm to national security and the FBI's law enforcement mission.

6. Through the exercise of my official duties, I have been advised of this civil action in which Plaintiffs, who are victims and families of victims of the 9/11 terrorist attacks or entities that sustained damage or losses, allege that Defendants provided material support to Osama bin Laden and to the Al Qa'ida terrorist organization. I have been advised that with regard to Defendant the Kingdom of Saudi Arabia, Plaintiffs allege that its agents and employees directly and knowingly assisted the hijackers and plotters who carried out the attacks. I worked in Six World Trade Center leading up to the 9/11 terrorist attacks and fully appreciate the gravity of the claims in this lawsuit. Since 9/11, I have also dedicated most of my career and daily life to preventing terrorist attacks.

7. I am further aware that the Court authorized Plaintiffs to conduct limited and targeted jurisdictional discovery on the issue of whether and to what extent Saudi nationals Fahad al-Thumairy ("Thumairy") and Omar al-Bayoumi ("Bayoumi") and their agents took actions in 2000, at the direction of more senior Saudi officials, to provide assistance to Hazmi, Mihdhar, and other 9/11 hijackers, and that Plaintiffs thereafter served a *Touhy* request and subpoena on the FBI seeking the 2012 Report and a wide range of other documents. I am also aware that the FBI provided Plaintiffs a redacted version of the 2012 Report with certain information withheld on the basis that disclosure would harm national security and law enforcement interests. Finally, I am aware that on May 31, 2019, Plaintiffs moved to compel the FBI to provide them with certain information withheld in the 2012 Report.

8. As the official charged with directing and overseeing the FBI programs responsible for conducting counterterrorism investigations, I have concluded that unauthorized disclosure of the information subject to the Attorney General's state secrets privilege assertion described herein would reveal, among other things, highly sensitive intelligence, sources, methods, techniques, and procedures and reasonably could be expected to cause significant harm to the national security of the United States.

9. The matters stated herein are based on my personal knowledge, my background, training, and experience related to national security matters, my review and consideration of documents and information available to me in my official capacity, including the 2012 Report, my judgment as Assistant Director, and information furnished to me by employees of the FBI and DOJ. I have reached my conclusions in accordance therewith.

10. Specifically, this declaration addresses the significant harm to the national security interests and law enforcement interests that could reasonably expected to result from the disclosure of the information redacted from the 2012 Report that is the subject of Plaintiffs' motion to compel.

11. In particular, the Attorney General's assertion of the state secrets privilege encompasses the following categories of information implicated by Plaintiffs' motion to compel: (A) the identity of subjects of national security investigations; (B) reasons for the investigations and results of the investigations; (C) sensitive sources and methods used in national security investigations; and (D) foreign government information and information sharing and cooperation with foreign partners. The FBI's assertion of the law enforcement privilege and the protections of the National Security Act also encompasses these categories of

information.[3]

## II. THE FBI'S ROLES AND RESPONSIBILITIES

12. The FBI's mission is to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners. In order to defend the country from a range of national security and major crime threats, the FBI uses an intelligence-driven and threat-focused approach, combining its investigative and intelligence operations to be more analytical and preventative, more aware of emerging threats, and better able to stop them before they turn into crimes, including acts of terrorism.

13. The FBI's top priority is protecting the United States from terrorist attacks. Working closely with its partners, including our most trusted foreign partners who rely upon the FBI to protect their confidential information and maintain the confidentiality of their cooperation[4], the FBI uses its investigative and intelligence capabilities to neutralize terrorist cells and operatives in the United States, to help dismantle extremist networks worldwide, and to cut off financing and other forms of support provided by terrorist sympathizers. In carrying out the FBI's paramount mission of securing the nation from terrorism, criminal prosecution is

---

[3] The FBI asserts the protections of the National Security Act over national security "sources and methods" information to the extent authorized by law. I am advised that as interpreted by courts, the phrase "intelligence sources and methods" in the National Security Act would encompass all four categories of information encompassed by the Attorney General's assertion of the state secrets privilege. I have concluded that all four categories meet the National Security Act's definition of "intelligence sources and methods", and the discussion herein concerning the reasons for the Attorney General's assertion of the privilege applies equally to the FBI's assertion of the protections of the National Security Act. Although the Attorney General's assertion of the state secrets privilege does not encompass the name of the third main subject referenced at the top of page 4 of the 2012 Report or the name of the individual in the last sentence of the 2012 Report, that name will be released pursuant to the FBI Protective Order. As the release of that name is limited and non-public, the FBI asserts the protections of the National Security Act over that name.

[4] At ¶¶ 33-36, *infra*, I explain the chilling effect on the FBI's ability to obtain intelligence from its trusted foreign partners if the FBI is unable to protect this confidential information and cooperation.

only one of several means that the FBI uses to protect national security.

### III. BACKGROUND ON THE SUBFILE INVESTIGATION

14. The FBI's initial investigation into the 9/11 attacks was named PENTTBOM, and that investigation remains open. The FBI later opened a subfile within PENTTBOM to sharpen the focus on the lingering allegations that the circle of 9/11 conspirators may be wider than reported in the 9/11 Commission Report. In its current form, the FBI's Subfile Investigation[5] is focused on individuals who provided or may have provided substantial assistance to Hamzi and Mihdhar during their time in California prior to the attacks. That Thumairy and Bayoumi are among the subjects of this open investigation has been previously disclosed.[6] In response to the motion to compel, and in light of the extraordinary nature of this litigation and the unique circumstances of this investigation, the FBI is exercising, in the public interest, its discretion under Section 3.1(d) of EO 13526 in this exceptional case to declassify and release in the 2012 Report the identity of the third main subject, whose name had been properly classified. As a result, a revised copy of the 2012 Report is being produced subject to the FBI Protective Order in this matter.

### IV. INFORMATION SUBJECT TO THE STATE SECRETS PRIVILEGE AND THE HARM TO NATIONAL SECURITY FROM DISCLOSURE

15. The Attorney General's assertion of the state secrets privilege covers certain national security information within the following four general categories:

    A. **Subject Identification**: The Attorney General's privilege assertion

---

[5] The assigned title of the investigation has not been disclosed and remains classified.
[6] The FBI's interest in Thumairy and Bayoumi was publicly disclosed in the Final Report of the National Commission on Terrorist Attacks Upon the United States ("the 9/11 Commission Report") published in 2004. The 9/11 Review Commission report issued in March 2015, which discussed the Subfile Investigation and referenced the 2012 Report, identified Thumairy and Bayoumi as "key individuals." Subsequently, in response to a Freedom of Information Act request, the FBI released a redacted version of the 2012 Report which states that Thumairy and Bayoumi are main subjects of the investigation.

encompasses information which would indicate that a particular individual is or was the subject of a national security investigation, unless the identity of the subject has been made public or has been declassified under proper authority. This category of information includes information that could tend to confirm or deny whether a particular individual is, was, or was not the subject of a national security investigation.

B. **Reasons for Investigation and Results**: The Attorney General's privilege assertion encompasses information which would reveal the reasons a particular individual is or was the subject of a national security investigation and information obtained as a result of that investigation.

C. **Sources and Methods**: The Attorney General's privilege assertion encompasses information which would reveal sensitive sources and methods used in a national security investigation.

D. **Foreign Government Information and Information Sharing and Cooperation with Foreign Partners**: The Attorney General's privilege assertion encompasses information received from a foreign government with the understanding that it and the nature of the information sharing and cooperation between the FBI and foreign partners in a national security investigation will remain confidential.

16. I describe the information contained in each of the categories more fully below, together with the significant harm to national security that reasonably would be expected to occur upon disclosure of the national security information in those categories. As will be noted, some of the information in the 2012 Report encompassed by the Attorney General's privilege assertion falls into two or more of these four categories.

## A. SUBJECT IDENTIFICATION

17. The first category of information encompassed by the Attorney General's assertion of the state secrets privilege is information which would indicate that a particular individual is or was the subject of a national security investigation, unless the identity of the subject has been made public or has been declassified under proper authority. In light of previous official releases of information by the FBI and the 9/11 Commission, the Attorney General's privilege assertion does not encompass the identities of acknowledged subjects Bayoumi and Thumairy. In addition, as noted above, the Attorney General's privilege assertion in this case does not encompass the identity of the third main subject as it has been declassified and will be disclosed pursuant to the Protective Order. In unclassified terms, this category includes information that could tend to confirm or deny whether a particular individual is, was, or was not the subject of an FBI national security investigation. This type of information may include the name of an individual, and reporting on an individual which indicates they are or were the subject of an investigation. Protection of this information is critical to the FBI's national security efforts.

18. Disclosure that particular individuals are the subjects of open national security investigations obviously would alert the subjects to the fact of the FBI's current interest in them. Such knowledge would cause significant harm to FBI national security investigations, as subjects could reasonably be expected to destroy evidence, attempt to influence witnesses, or take steps to alter their conduct so as to avoid detection of their activities. In these circumstances, disclosure of the fact that they are subjects could significantly hinder the FBI in gathering further intelligence on their activities or determining their whereabouts. In addition, knowledge that they are under investigation might enable subjects to anticipate the

activities of the FBI. Such knowledge would also alert associates of the subjects to the fact that the FBI may be aware of their associations with the subjects, causing them to take similar steps to avoid scrutiny. Disclosure could also enable subjects to ascertain the identities of confidential human sources ("CHSs") or other sources of intelligence, putting those sources at risk.

19. Disclosure that an individual is not a subject of a national security investigation also reasonably could be expected to cause significant harm to national security. Individuals or terrorist groups could manipulate the system to discover whether they or their members are subject to investigation. Disclosure that some persons are not subject to investigation, while the status of others is not confirmed, would inherently reveal that concerns remain as to particular persons. Also, if individuals desire to commit terrorist acts, notification that they are not under investigation would inform them that they can move without detection. Indeed, confirmation that an individual is not under investigation could provide an incentive to those so inclined to commit a terrorist act before becoming subject to investigative interest.

20. Similarly, even where an investigation has been closed, disclosing that an individual formerly was the subject of a classified national security investigation reasonably could be expected to cause significant harm to national security. Disclosure that an individual has been, but is no longer, under investigation might induce that subject to evaluate previous conduct and interactions to determine what information the Government might have obtained about them. As noted, to the extent that the individual's terrorism-related intentions were not previously detected and the individual later decided to undertake terrorist activity, knowing one was no longer the subject of investigative interest might embolden that person to operate confident that there is no threat of detection. In addition, the fact that investigations are

closed typically does not indicate that subjects have been "cleared" of wrongdoing. Closed cases often are reopened based on new information.

21. In the classified version of my declaration I describe, in classified terms, the portions of the 2012 Report which, if disclosed, would reveal the identity of a subject of a national security investigation.

22. I am aware that Plaintiffs have placed great importance on disclosure of the name redacted from the last sentence of the 2012 Report which reads in the publicly-released version as follows: "There is evidence that [redacted] and tasked al-Thumairy and al-Bayoumi with assisting the hijackers." Plaintiffs have also placed great importance on the name of the third subject identified at the top of the last page of the 2012 Report. This name will now be released under the terms of the FBI Protective Order, so that the Court can determine its relevance to the pending litigation. In the interest of ensuring that neither the plaintiffs nor the public are misled by inaccurate or incomplete phrasing in what was meant to be an internal FBI document, the FBI wishes to make clear that this declassification decision should not be taken as an affirmation or confirmation of the statements in the 2012 Report about that individual. In retrospect, it would have been more appropriate to phrase the last sentence in the 2012 Report and the statements about the individual at the top of the last page as an investigative theory being pursued by the FBI and not as objective statements of fact.

23. I also am advised that Plaintiffs contend that, because of the passage of time, no harm to the national security could result from disclosure of the contents of the Subfile Investigation. To the extent Plaintiffs are contending that the passage of time warrants disclosure of all subjects of national security investigations identified in the 2012 Report, I would point out that the mere passage of time does not cause the FBI to cease its efforts to bring criminals to

justice. This is the case with respect to common criminals, but it is especially the case with respect to terrorists and terrorist organizations. The investigations in those cases are aimed not only at eventual prosecution of the individuals who carried out the attacks but of those involved in planning, coordinating, or providing material support or resources used in preparation for or carrying out the attacks. As the 9/11 attacks were the deadliest terrorist attacks in U.S. history and required substantial planning, coordination, and support, the FBI expects to continue the investigation over the long term with the goal of bringing criminal charges against all individuals responsible for the attacks.

24. Thus, disclosure of the identity of these subjects of national security investigations could reasonably be expected to cause significant damage to the national security.

## B. REASONS FOR INVESTIGATION AND RESULTS

25. The second category of information encompassed by the Attorney General's assertion of the state secrets privilege is information that could tend to reveal the predicate for an FBI national security investigation regarding a particular person, information obtained during the course of such an investigation, and the status and results of the investigation. This would include information (if any) the FBI obtained from the U.S. Intelligence Community related to the reasons for any investigation, and information regarding subjects of investigation that could tend to reveal the predicate for, information obtained in, or results of a national security investigation.

26. In unclassified terms, disclosure of this information would reveal a range of sensitive national security investigative information. Obviously, disclosure of this information would reveal what the FBI knows or does not know and what the FBI deems important to a national security investigation. Disclosure of such information would alert current and future subjects

to those activities which are likely to arouse suspicion and result in the opening of an investigation, thus providing valuable insight to those intent on terrorism and other criminal activity on how individuals can avoid detection. Disclosure of such information may also alert subjects and others to the sources of that information, thus revealing sensitive sources and methods including the existence of CHS reporting on that subject.

27. In the classified version of my declaration I describe, in classified terms, the portions of the 2012 Report which, if disclosed, would reveal the reasons for and results of a national security investigation.

28. Thus, disclosure of these reasons for and results of national security investigations could reasonably be expected to cause significant damage to the national security.

### C. SOURCES AND METHODS

29. The third category of information encompassed by the Attorney General's assertion of state secrets privilege is information which would reveal sensitive sources and methods used in a national security investigation. This category includes information that could tend to reveal particular sources and methods or techniques, and classified policies and procedures, the FBI used in a national security investigation with respect to a specific individual. This would include information related to court-ordered searches or surveillance, CHSs, and other investigative or operational sources and methods the FBI may use in a national security investigation regarding a particular person, the reasons such sources and methods were used, the status of the use of such sources and methods, and results derived from such sources and methods.

30. The disclosure of information in this category reasonably could be expected to cause significant harm to national security. The disclosure of sources and methods would reveal not

only the identities of particular subjects but the steps taken by the FBI in national security investigations. Protecting FBI sources and methods for investigating or countering potential national security threats is of the utmost significance because the FBI's top priorities are to protect the United States from terrorist attacks and foreign counterintelligence operations. The disclosure of sources and methods would assist adversaries by revealing how the FBI goes about these vital tasks. It would also allow adversaries to exploit this information to deploy countermeasures or escape detection, thereby interfering with the FBI's mission. Disclosure of sensitive sources and methods would also risk compromising the use of those sources and methods in the future, and potentially risk harm to individuals, including CHSs.

31. In the classified version of my declaration I describe, in classified terms, the portions of the 2012 Report which, if disclosed, would reveal sensitive sources and methods used in national security investigations.

32. In sum, disclosure of these sensitive sources and methods could reasonably be expected to cause significant damage to the national security.

## D. FOREIGN GOVERNMENT INFORMATION AND INFORMATION PERTAINING TO INFORMATION SHARING AND COOPERATION WITH FOREIGN PARTNERS

33. The last category of information encompassed by the Attorney General's assertion of the state secrets privilege is information received from a foreign government with the understanding that it and the nature of the FBI's information sharing and cooperation with foreign partners in a national security investigation will remain confidential.

34. In unclassified terms, disclosure of classified information reflecting assistance supplied to the United States by foreign government counterparts in connection with national security

investigations would cause significant harm to national security. The FBI's ability to carry out its responsibility to conduct national security investigations and collect foreign intelligence often depends on the cooperation of foreign government officials, foreign intelligence services, or foreign security services. Through a series of international agreements, Memoranda of Understanding, Mutual Legal Assistance Treaties, Letters Rogatory, and other voluntary and compulsory agreements, as well as professional relationships between the U.S. Government and foreign governments, the FBI receives and retains law enforcement and intelligence information from participating countries which the FBI uses in the course of its investigations.

35. Maintaining the confidentiality of foreign government information is critical to sustaining ongoing, productive cooperation with friendly foreign nations in the field of counterterrorism. The release of official Government documents that reveal the nature of the confidential assistance provided to the FBI in connection with the Subfile Investigation would compromise established confidentiality agreements, and thereby, reasonably could be expected to strain relations between the United States and the foreign government(s). That release also could have a chilling effect on the free flow of vital information to U.S. intelligence and law enforcement agencies. In addition, disclosure of a country's cooperation with the FBI could reasonably be expected to cause significant harm to national security because it would enable terrorists to avoid or employ countermeasures in countries that share information with the United States.

36. In the classified version of my declaration I describe, in classified terms, the portions of the 2012 Report which, if disclosed, would reveal sensitive foreign government information.

37. In sum, disclosure of information received confidentially from a foreign government and

documents reflecting information sharing and cooperation with foreign partners in a national security investigation could reasonably be expected to cause significant damage to the national security.

### V. INFORMATION SUBJECT TO THE LAW ENFORCEMENT PRIVILEGE

38. The information described above which is encompassed by the Attorney General's assertion of the state secrets privilege is, for the same reasons, encompassed by the FBI's assertion of the law enforcement privilege. As previously explained, the counterterrorism and other national security investigations undertaken by the FBI have a law enforcement purpose, and disclosure of information regarding the identity of subjects of those investigations, the reasons for and results of those investigations, the sources and methods used in those investigations, information regarding cooperation and information sharing with foreign partners, or information received confidentially from foreign partners, would seriously undermine those investigations and the ability of the FBI to effectively carry out other investigations which rely upon the confidentiality of such information, sources, and methods, and foreign partner information sharing and cooperation.

39. In addition to the information encompassed by the Attorney General's assertion of privilege, the 2012 Report contains unclassified information not encompassed by the Attorney General's privilege assertion which nevertheless should be protected under the law enforcement privilege. In unclassified and unprivileged terms, this information consists of specific law enforcement methods and techniques used in the FBI's Subfile Investigation, the FBI's assessment of certain evidence gathered in the investigation, and information which would indirectly tend to reveal confidential cooperation from a foreign government. Disclosure of this information could reasonably be expected to interfere with the Subfile

Investigation and could reveal the foreign government's confidential cooperation, causing the harms discussed in ¶¶ 33-36, *supra*.

40. In the classified version of my declaration I describe, in classified and privileged terms, the unclassified information subject to the FBI's assertion of the law enforcement privilege.

## VI. INFORMATION SUBJECT TO THE DELIBERATIVE PROCESS AND ATTORNEY WORK PRODUCT PRIVILEGES

41. I understand that the deliberative process privilege extends to deliberative documents created prior to a final agency decision, and that this privilege exists, among other reasons, to protect the give-and-take of the consultative process within government agencies and to encourage full and candid discussions among agency personnel in the course of agency decision-making. I further understand that the attorney work product privilege extends to documents prepared in anticipation of litigation, and includes (but is not limited to) documents reflecting mental processes of an attorney.

42. Certain classified information in the 2012 Report that is encompassed by the Attorney General's assertion of privilege is also protected by the deliberative process and work product privileges. In unclassified and unprivileged terms, this information consists of a discussion of specific contemplated investigative steps and legal strategy with regard to a particular individual, prior to any final investigative or prosecutorial decision. This information is both predecisional and deliberative, and prepared in anticipation of litigation. Disclosure of such confidential deliberations could reasonably be expected to harm the quality of agency decisionmaking regarding how best to investigate and prosecute crime.

43. In the classified version of my declaration I describe, in classified and privileged terms, the portions of the 2012 Report subject to the FBI's assertion of the deliberative process and

work product privileges.

## VII. REDACTION OF MARGIN MARKINGS

44. Finally, in the left and right margins of the 2012 Report, the FBI redacted the classification markings which were added to the document by the Classification Unit of the FBI's Information Management Division during the review of the document in response to the subpoena. Because the Classification Unit only determines the classification level of information (either Top Secret, Secret, Confidential, or Unclassified) and adds the corresponding markings in the margins (for example, "(S)" for Secret), its margin markings do not meet the current Intelligence Community classification marking requirements or the protocol for Non-Intelligence Community markings. For example, the Intelligence Community requires that dissemination controls, such as "NF" for "NOFORN" be included with portion markings, and that unclassified but law enforcement sensitive information be marked as "U//LES". Thus, redaction of these newly added margin markings avoids confusion over the nature of the redacted information.

## VIII. CONCLUSION

45. Accordingly, based upon my personal consideration of the matter, I have concluded that disclosure of the national security information described herein as subject to the Attorney General's assertion of the state secrets privilege reasonably could be expected to cause significant harm to the national security. I have also concluded that this information is protected from disclosure under the National Security Act and that disclosure of this information, as well as certain unclassified information in the 2012 Report, could reasonably be expected to cause significant harm to the FBI's ability to effectively carry out its law enforcement mission. Finally, I have concluded that certain information in the 2012 Report is

appropriately subject to the deliberative process privilege and the attorney work product privilege.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of September 2019.

_____
Michael C. McGarrity
Assistant Director
Federal Bureau of Investigation