# DEPARTMENT OF JUSTICE

# FEDERAL BUREAU OF INVESTIGATION

IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001

CIVIL ACTION NO. MDL 03-1570(S.D.N.Y)



REVISED 2012 REPORT

EXCISED COPY

## DELETION CODES

A.     INFORMATION WHICH IS PROPERLY CLASSIFIED PURSUANT TO EXECUTIVE
       ORDER, THE DISCLOSURE OF WHICH COULD REASONABLY BE EXPECTED TO
       CAUSE DAMAGE TO THE NATIONAL SECURITY OR THE CONDUCT OF THE
       GOVERNMENT'S INTERNATIONAL RELATIONS.

B.     INFORMATION, THE DISCLOSURE OF WHICH WOULD TEND TO REVEAL THE
       IDENTITY OF AN INFORMANT.

C.     INFORMATION OBTAINED FROM A FOREIGN GOVERNMENT OR INTERNATIONAL
       ORGANIZATION WHERE THERE IS AN AGREEMENT OR UNDERSTANDING THAT
       THE INFORMATION RECEIVED WILL BE TREATED CONFIDENTIALLY.

F.     ADMINISTRATIVELY DESIGNATED FBI FILE NUMBERS, WHICH REPRESENT
       INDIVIDUALS OR MATTERS WHICH ARE NOT THE SUBJECT OF THIS FILE.

G.     THE LAW ENFORCEMENT PRIVILEGE - THE DISCLOSURE OF THIS INFORMATION
       COULD CAUSE HARM TO, IMPEDE, IMPAIR, OR HINDER AN INVESTIGATION AND/OR
       AN INVESTIGATIVE INTEREST OF THE FBI.

I.     INFORMATION, THE DISCLOSURE OF WHICH WOULD DIVULGE OPINIONS,
       RECOMMENDATIONS, AND ADVICE GENERATED IN THE DECISION-MAKING
       PROCESS OF THE GOVERNMENT.

J-1.   SECTION 102(I)(1) OF THE NATIONAL SECURITY ACT OF 1947, AS AMENDED BY THE
       INTELLIGENCE REFORM AND TERRORISM PREVENTION ACT OF 2004, 50 U.S.C §
       3024(I)(1).

L.     INFORMATION OR MATERIAL PROTECTED UNDER THE WORK PRODUCT
       DOCTRINE.

P-1    INFORMATION, THE DISCLOSURE OF WHICH WOULD BE AN UNWARRANTED
       INVASION OF PERSONAL PRIVACY.

S.     PERSONAL IDENTIFYING INFORMATION RELATED TO LAW ENFORCEMENT
       PERSONNEL AND THEIR FAMILY MEMBERS, THE DISCLOSURE OF WHICH IS
       ROUTINELY GUARDED FOR SECURITY REASONS.

CLASSIFIED BY: NSICG (S)
REASON: 1.4 (C)
DECLASSIFY ON: 12-31-2037
DATE: 04-25-2019

Case 1:03-md-01570-GBD-SN   Document 5144-2   Filed 09/12/19   Page 3 of 6

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

SECRET//ORCON//NOFORN

(A), (F), (G), (J-1)

(A), (F), (G), (J-1)

Field Office POCs

(P-1), (S)

Headquarter POC

(P-1), (S)



(G)

(A), (G), (J-1)

**Updates and Initiatives (as of 5 October 2012):**

- (U//FOUO) 24 September 2012 - Meeting with AUSA (P-1) and DOJ attorney (P-1) at NYO Chelsea. At the request of (G) AUSA (P-1) will explore potential charges for including providing material support to the 9/11 hijackers, as well as lesser crimes, which investigators could present at a future interview with (G)

- (G) 10 September 2012 - (G) has assisted Legat Copenhagen in providing information to

(A), (C), (G), (J-1)

(A), (G), (C), (J-1)

Legat Copenhagen
advised on 10 September 2012 that (G), (P-1), (A), (C), (J-1) Upon resolution of the claim
and its likely rejection, (G) will coordinate with SDNY (G), (P-1), (H), (A), (C), (J-1)

(G), (A), (P-1), (C), (H), (J-1)

- (U) were sentenced on 24 September, 2012, in the Southern District of California to five years' probation and a $2,500 fine, each.

(G), (P-1), (I)

SECRET//ORCON//NOFORN

SUBJECT TO FBI PROTECTIVE ORDER

FBI001142

SECRET//ORCON//NOFORN

- (U//FOUO) ▮▮▮▮▮▮▮ was arrested in Tampa, Florida on 15 May 2012 for Treasury Check Fraud by the U.S. Attorney's Office for the Eastern District of Virginia. ▮▮▮▮▮▮▮

  along with additional people of interest (A), (G), (J-1) ▮▮▮ On 17 September 2012, ▮▮▮ was proffered in Tampa, Florida. During the proffer, ▮▮▮ echoed previous statement he had made, denying any knowledge of the hijackers' terrorist affiliation and providing no additional details of use to investigators. ▮▮▮ seemed optimistic about the charges he was facing. (G) investigators anticipate future proffer sessions with ▮▮▮ on the (A), (G), (J-1) national security issues. During the week of 28 September 2012, (G), (P-1) proffered a second time. There was no National Security related information disclosed during the second proffer.

- (S) In August 2012, (G) sent a lead to JTTF Los Angeles seeking confirmation of two possible current addresses for ▮▮▮ individual who was known to have extremist views, and was identified as having met with Omar al Bayoumi in private on the same day as Bayoumi's alleged "chance" first meeting with 9/11 hijackers Nawaf al Hazmi and Khalid al Mihdhar. FBI Los Angeles confirmed ▮▮▮ current residence. (G) s planning to approach ▮▮▮ for an interview of his role aiding Bayoumi in facilitating the hijacker's arrival and settlement in California, for which ▮▮▮ has never provided adequate explanation. (G) will conduct the interview with a GJS, should it be necessary to serve on ▮▮▮ to obtain a statement.

- (U//FOUO) (F), (A), (J-1) an individual who, similarly to ▮▮▮ facilitated the day-to-day life of 9/11 hijackers Hazmi and Mihdhar during their time in San Diego, has been identified by FBI San Diego as living in ▮▮▮ is reported to be very concerned about his presence on U.S. no-fly lists. (G) in conjunction with the San Diego office, will address seeking an interview of ▮▮▮

- (S//NF) In June, 2012, NYO investigators, along with AUSA (P-1) ▮▮▮ and HQ analysts, traveled to London, UK, to exploit evidence seized in 2001 in New Scotland Yard's searches of Omar al Bayoumi's residences and offices. ▮▮▮

  ▮▮▮ (G) is undertaking the translation of these documents, to (A), (F), (G), (J-1) determine relevancy ▮▮▮

  (G)

  (G)

- (A), (G), (B), (P-1), (J-1)

**Details on Mohdar Abdullah and his connection** (A), (G), (J-1)

(A), (G), (I), (L), (J-1)

9/11 hijackers Nawaf al-Hazmi and Khalid

SECRET//ORCON//NOFORN

SUBJECT TO FBI PROTECTIVE ORDER            FBI001143REVISED

~~SECRET//ORCON//NOFORN~~

al-Mihdhar.
(A), (F), (G), (J-1)          and currently     (G)        The immediate goal of
(A), (G), (I), (L), (J-1)

(A), (G), (I), (L), (J-1)

(S) Mohdar played a key role facilitating the daily lives and assisting future Flight 77 hijackers Nawaf al-Hazmi and Khalid al-Mihdhar. Shortly after February 4, 2000, al-Bayoumi tasked Mohdar to assist al-Hazmi and al-Mihdhar, _____ of Anwar Aulaqi and they may spent time together with the hijackers. After September 11, 2001 Mohdar was investigated by the FBI for assisting the hijackers. On September 19, 2001 he was arrested by FBI San Diego on charges of immigration fraud for his claim of being a Somali asylee (Mohdar is Yemeni). Mohdar pled guilty to the immigration charges and was deported to Yemen in 2004.

(U) While Mohdar was detained in an immigration facility he bragged to two fellow inmates that he assisted the hijackers. The FBI and the SDNY have debriefed these individuals. Both are cooperative, but there is some prosecutorial concern about their value as witnesses.

(U//FS)
(G), (P-1), (A), (C), (J-1)

(A), (G), (C), (J-1)          In a January, 2012 meeting with FBI NYO.
(A), (C), (G), (J-1)
The FBI has also provided
(A), (G), (J-1) with relevant derogatory information on Mohdar via a DIDO, including details of Mohdar's false U.S. asylum claim.

(U) Recent investigation revealed strong indications that prior to September 11, 2001

(U)

Synopsis of
(A), (G), (J-1)

(A), (G), (J-1) is an investigation into individuals known to have provided substantial assistance to 9/11 hijackers Nawaf al-Hazmi and Khalid al-Mihdhar during their time in California, prior to the attacks. (A), (G), (J-1) main subjects include Fahad al-Thumairy,

~~SECRET//ORCON//NOFORN~~

SUBJECT TO FBI PROTECTIVE ORDER                    FBI001144

~~SECRET//ORCON//NOFORN~~

Omar Ahmed al-Bayoumi, ▆▆▆▆▆▆▆▆ These subjects provided (or directed others to provide) the hijackers with assistance in daily activities, including procuring living quarters, financial assistance, and assistance in obtaining flight lessons and driver's licenses. **(A), (G), (J-1)** **(A), (G), (J-1)** ▆▆▆ seeks to prove these subjects provided such assistance with the knowledge that al-Hazmi and al-Mihdhar were here to commit an act of terrorism.

X̶ (//NF) Fahad al-Thumairy was the Imam at the King Fahad Mosque near Los Angeles, California when al-Hazmi and al-Mihdhar first arrived in the United States. Al-Thumairy immediately assigned an individual to take care of them during their time in the Los Angeles area.

X̶ (//NF) Omar al-Bayoumi was living in San Diego on a student visa, despite not attending classes, and receiving a salary from the Kingdom of Saudi Arabia for job duties he never performed. Shortly after arriving in Los Angeles, the two hijackers had an allegedly accidental meeting with al-Bayoumi, who claims to have been in Los Angeles on personal business. At this meeting, al-Bayoumi advised the hijackers to relocate to San Diego, which they did. Once in San Diego, al-Bayoumi assisted the hijackers with a place to live, opening a bank account, and also assigned two individuals to care for them, one of whom was Mohdar Abdullah.

**(A), (G), (J-1), (P-1)**

X̶ (//NF) ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ contact with al-Thumairy and al-Bayoumi while the hijackers were in the Los Angeles and San Diego areas. There is evidence that ▆▆▆▆ **(A), (G), (J-1)** **(A), (G), (J-1)** and tasked al-Thumairy and al-Bayoumi with assisting the hijackers.