USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/30/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

03-MDL-01570 (GBD)(SN)

**OPINION & ORDER**

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

The Havlish Plaintiffs request that the Court create a common benefit fund and authorize disbursements therefrom. The motion is GRANTED in part.[1]

## BACKGROUND

On December 22, 2011, the Honorable George B. Daniels entered a default judgment (the "Original Default Judgment") on behalf of the Havlish Plaintiffs against, *inter alia*, the Islamic Republic of Iran ("Iran"). ECF No. 2516. The Havlish Plaintiffs were subsequently awarded damages in excess of $6 billion. ECF No. 2623.

On August 31, 2015, relying on the evidence presented by the Havlish Plaintiffs, Judge Daniels entered default judgments against Iran on behalf of the Plaintiffs in the Ashton, Federal Insurance, and O'Neill actions. ECF Nos. 3020–22. Similar judgments were issued to the Burnett Plaintiffs on January 31, 2017, and to other groups of Plaintiffs thereafter. See, e.g., 18-CV-5306, ECF No. 66 (granting final judgment on liability in favor of the DeRubbio Plaintiffs). The

---

[1] The Court issues this decision as an Opinion and Order. See In re Zyprexa Prods. Liab. Litig., 594 F.3d 113, 117–18 (2d Cir. 2010) (finding that an order establishing a three-percent set-aside for a common benefit fund did not "give, or aid in giving, [any] substantive relief" sought in the lawsuit) (internal alterations omitted). To the extent Judge Daniels concludes that the motion falls within the excepted motions in 28 U.S.C. § 636(b)(1)(A), this decision should be interpreted as a Report and Recommendation.

Court has issued numerous partial final judgments in these cases, awarding damages to some but not all the identified Plaintiffs. See, e.g., ECF No. 5101. In addition, Plaintiffs in other actions against Iran are also taking steps to obtain damages awards: some have obtained a certificate of default but not yet moved for final judgment, while others are still in the process of completing service pursuant to § 1608 of the Foreign Sovereign Immunities Act ("FSIA"). These Plaintiffs — that is, any Plaintiff with a claim against Iran who is not part of the Havlish action — are collectively referred to as the "Responding Plaintiffs" or "Respondents."[2]

Both the Havlish Plaintiffs and the Responding Plaintiffs have faced significant challenges enforcing their judgments against Iran. In 2015, however, Congress passed legislation to create the United States Victims of State Sponsored Terrorism Fund (the "VSSTF" or the "Fund"). The VSSTF "provide[s] compensation to a specific group of international terrorism victims harmed by state-sponsored terrorism." See http://www.usvsst.com/faq.php, FAQ § 1.1 ("VSSTF FAQ"). The Department of Justice, which operates the Fund, has authorized two rounds of payments thus far, and it anticipates making a third distribution in 2020. See id., § 4.24. Notably, many (but not all) of the Plaintiffs with final judgments against Iran are eligible to receive compensation through the VSSTF. See ECF No. 5018, at 1.

Here, the Havlish Plaintiffs seek an order requiring Respondents to compensate Havlish counsel for the time spent developing and presenting evidence that led to the Original Default Judgment. ECF No. 4290 ("Pl's Br."), at 5. The Respondents, largely through the Plaintiffs' Executive Committees ("PECs"), opposed the motion. ECF No. 4407 ("RP's Br."). The Havlish Plaintiffs filed a reply on March 1, 2019. ECF No. 4430 (Pl's Reply Br.").

---

[2] Plaintiffs in the Hoglan and Ray actions, who are represented by common attorneys as the Havlish Plaintiffs, are also excluded from the "Responding Plaintiffs." See Pl's Br., at 6–7 n.3.

Specifically, the Havlish Plaintiffs seek an order:

1. directing the Respondents to set aside 12% of any amounts collected on the Respondents' judgments by any means;

2. directing counsel for the Respondents to deposit such amounts into a "common benefit fund" to be established and maintained by lead counsel for the Havlish Plaintiffs;

3. to the extent the deposited funds were derived from payments to Respondents by the VSSTF, directing the distribution of such funds to the Havlish attorneys as reimbursement of costs associated with the benefit bestowed upon Respondents; and

4. to the extent the deposited funds were derived from judgment collection sources other than the VSSTF, directing that distribution of such funds to the Havlish attorneys, or to other attorneys, or returned to the Responding Plaintiffs and their counsel who made the deposit, in whole or in part, be subject to the Court's future consideration.

Pl's Br., at 5–6.

Respondents contend that the fee application can be denied on three separate grounds. RP's Br., at 1. These arguments are unavailing, and for the reasons stated below, are rejected. Nevertheless, because the Havlish Plaintiffs did not provide adequate documentation for the time and expense incurred in obtaining the Original Default Judgment — and because the Respondents have not had an opportunity to review that documentation — the Court cannot determine the size of the common benefit fee at this time.

## LEGAL STANDARD

In large multi-district litigations ("MDLs"), courts often establish a fund to compensate attorneys for the "work performed for the common benefit of all plaintiffs and their counsel." See Duke Law Center for Judicial Studies, Standards and Best Practices for Large and Mass-Tort MDLs 66 (2014). These funds — referred to as "common benefit funds" — ensure that "persons who obtain benefits of a lawsuit without contributing to defraying its costs" are not unjustly enriched at the successful litigant's expense. Id.

3

An MDL court's power to create a common benefit fund derives, at least in part, from its inherent managerial authority. District courts have broad discretion to coordinate and administer multi-district litigation. In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig., 953 F.2d 162, 165 (4th Cir. 1992). This includes the ability to, among other things, "combine procedures, appoint lead counsel, . . . [and] manage discovery." Id. Thus, "it is not open to serious question that a federal court . . . may designate . . . [a] set of attorneys to handle pre-trial activity on aspects of the case where the interests of all co-parties coincide." In re Air Crash Disaster at Florida Everglades, 549 F.2d 1006, 1014 (5th Cir. 1977).

This authority would be illusory if it was dependent upon lead counsel performing their assigned duties without any additional compensation. In re Vioxx Prods. Liab. Litig., 760 F. Supp. 2d 640, 648 (E.D. La. 2010) (citations omitted). A necessary corollary to appointing lead counsel is therefore the power "to assure that these attorneys receive reasonable compensation for their work." In re Zyprexa Liab. Litig., 467 F. Supp. 2d 256, 265 (E.D.N.Y. 2006) (citing In re Linerboard Antitrust Litig., 292 F. Supp. 2d 644, 653 (E.D. Pa. 2003)). To exercise this power, courts may create a common benefit fund derived from "a fixed percentage of fees earned by individual attorneys who benefited from the work performed." Id. at 266 (citing Smiley v. Sincoff, 958 F.2d 498, 500–01 (2d Cir. 1992)); accord In re Air Crash Disaster, 549 F.2d at 1016 ("We hold that the district court had the power to direct that the Committee . . . be compensated and that requiring the payment come from other attorneys was permissible.").

Moreover, in addition to its managerial authority, a court's inherent powers of equity can also justify the creation of a common benefit fund. Under the "American Rule," the prevailing litigant must generally look to his own client for payment of attorney's fees. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). In the exercise of their equitable

powers, however, federal courts have created exceptions to this rule when the interests of justice so require. Hall v. Cole, 412 U.S. 1, 4–5 (1973).

Under the "common benefit" exception, an award of attorney's fees is appropriate where: (1) the plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class; and (2) the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionally among them. See Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. Pelella, 350 F.3d 73, 80 (2d Cir. 2003) (citing Mills v. Electric Auto-Lite Co., 396 U.S. 375, 393–94 (1970)). Thus, in order to obtain common benefit fees, an attorney "must confer a substantial benefit to members of an ascertainable class," and the court "must ensure that the costs are proportionately spread among that class." In re Diet Drugs, 582 F.3d 524, 546 (3d Cir. 2009).

The purpose of the common benefit exception is to distribute the cost of litigation evenly among those who benefited. Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc., 54 F.3d 69, 72 (2d Cir. 1995) (citing Hall, 412 U.S. at 15). In managing multi-district litigations, courts rely on this doctrine to assess attorney's fees in favor of attorneys who render legal services in favor of all MDL plaintiffs. In re Vioxx Products, 760 F. Supp. 2d at 647–48 (collecting cases).

## DISCUSSION

Respondents contend that the Court should refuse to create a common benefit fund for three reasons: (1) the motion is premature; (2) Havlish counsel did not create a "common fund" for the benefit of other Plaintiffs; and (3) the efforts of Havlish counsel to obtain the Original Default Judgment were not authorized by the PECs and therefore do not constitute "common benefit work." RP's Br., at 2. The Court addresses these issues in turn.

**I.       The Motion Is No Longer Premature**

This is not the first time the Havlish Plaintiffs have requested a common benefit fund. On August 2, 2016, Judge Daniels denied their original fee application without prejudice to renewal. ECF No. 3322. He concluded, based on a report and recommendation from Magistrate Judge Frank Maas, that the motion was premature. Id. at 1–2. Given the intervening developments regarding the VSSTF, the Court concludes that the renewed motion is largely ripe for review.

Judge Maas determined that it was premature to create a common benefit fund for two reasons. First, the court had no basis to evaluate "the extent of the work that the Respondents [would] undertake to recover damages from Iran." ECF No. 3309, at 4. This information was critical to the court's analysis, as the Respondents' enforcement efforts could "substantially diminish the basis for creating a common benefit fund." Id. at 5.

This uncertainty, at least for most of the Responding Plaintiffs, no longer exists. Respondents did not have to litigate an enforcement action, domesticate their judgments overseas, or search for Iranian assets subject to collection. Rather, they received compensation by filing an application with the VSSTF. This process does not seem particularly onerous, see VSSTF FAQ, § 1.4, and Respondents do not claim otherwise. As a result, the amount of effort that Respondents might exert to enforce their judgments is no longer a reason to deny a request for a common benefit fund.

Second, Judge Maas emphasized that the "quantum of damages to be collected from Iran has yet to be determined." ECF No. 3309, at 5. This concern is also no longer applicable. The VSSTF notified claimants who were authorized to receive second-round payments in December 2018, and it began issuing awards on a rolling basis in January 2019. See VSSTF FAQ, §§ 4.24–25. Accordingly, the Responding Plaintiffs know the exact amount of compensation they have

received on their judgments against Iran. Although Respondents' total recovery will grow as the Fund makes additional payments, the initial distributions have been large enough that an interim award of attorney's fees is appropriate.[3] See Mass-Tort MDLs, at 70 ("In lengthy and complex cases, the [court] may choose to establish a fund to make interim reimbursement payments to plaintiffs' counsel.").

Respondents emphasize that claims against numerous Defendants have yet to be resolved. RP's Br., at 12. As a result, Respondents contend, the Court cannot determine the total amount that Plaintiffs might recover, or whether the Respondents' efforts in pursuing those claims will eclipse those of the Havlish counsel in obtaining a default judgment against Iran. Id. This argument is unpersuasive. Judge Maas was concerned with the uncertainty regarding the claims against Iran, not with that of the multi-district litigation as a whole. See ECF No. 3309, at 4–5. Moreover, although courts usually defer setting the common benefit fee until the MDL is resolved, that determination can be made earlier if individual cases begin to settle. Mass-Tort MDLs, 81. Given the unique situation raised by the VSSTF — and given the real concern that the remaining litigation will continue for at least several years — a common benefit fund applicable solely to claims against Iran is appropriate.

Nevertheless, portions of the fee application remain premature. Commercial plaintiffs, such as the Federal Insurance Plaintiffs, as well as Respondents who received compensation from previous victims' funds, are ineligible for the VSSTF. See RP's Br., at 12–13. The Court can only speculate as to: (1) the amount of effort these Respondents will expend to enforce their final judgments; and (2) the sums, if any, that will be recovered. Even Respondents who are eligible for the Fund may choose to pursue other, more time-intensive enforcement efforts. For

---

[3] To date, the Fund has paid approximately $2.1 billion to all eligible claimants. This includes individuals who are eligible to receive an award but are not plaintiffs in this litigation.

7

this reason, only Respondents who have received a payment from the VSSTF are required to contribute to the common benefit fund. To the extent the Havlish Plaintiffs seek an order directing Respondents outside of this category to contribute to a common fund, their request is DENIED without prejudice to renewal.

## II.     The Havlish Plaintiffs Need Not Have Created A "Common Fund"

Respondents argue that the Court's equitable powers do not provide a basis to award attorney's fees to the Havlish Plaintiffs. RP's Br., at 14. This is so, Respondents claim, because Havlish counsel did not play a role in the creation or protection of a "common fund" in which all parties hold an interest. Id. at 15. This position is untenable as a matter of law.

Respondents rely on the Supreme Court's "common fund" cases. Under this precedent, a "lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). Whatever the scope of the common fund doctrine, it does not define the limits of a court's equitable powers to award attorney's fees. To the contrary, its underlying rationale has been extended to create a related but broader concept, the "common *benefit*" doctrine. In re Diet Drugs, 582 F.3d at 546 n.44; Rodonich, 52 F.3d at 32 n.2.

As discussed above, under the common benefit doctrine, an award of attorney's fees is appropriate where: (1) the plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class; and (2) the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionally among them. Hall, 412 U.S. at 5 (citing Mills, 396 U.S. at 394–95). There is no requirement that the party seeking fees "must actually bring money into the court." Mills, 396 U.S. at 392. Indeed, the fact that a suit "may never produce[] a monetary recovery" does not preclude a fee award. Id. The

Supreme Court has therefore foreclosed any argument that the Havlish Plaintiffs must create a common fund to recover equitable attorney's fees.

**III.   The Havlish Plaintiffs Performed Common Benefit Work**

According to Respondents, a district court can use its inherent managerial authority to reimburse common benefit work only if it was "undertaken or approved by the Court-appointed Plaintiff leadership team." RP's Br., at 20. Respondents argue that Havlish counsel did not have the PECs' approval to pursue the Original Default Judgment. Id. at 19. As a result, under Respondents' view, the Havlish attorneys cannot be compensated for the expenses they incurred litigating claims against Iran.

The Court does not believe its managerial authority is so curtailed. To be sure, the Court *could have* ordered that common benefit work would be compensated only if it was approved by the PECs. See In re Mirena IUD Prods. Liab. Litig., No. 13-MDL-02434 (CS) (LMS) (N.D. Ohio July 10, 2013), ECF No. 207 ("Counsel are forewarned that no application for approval to incur common benefit fees . . . will be considered . . . unless counsel have first obtained approval from Lead Counsel."). But no such restriction is included in the any of the Court's Case Management Orders. See ECF Nos. 16, 247–48. Moreover, courts regularly award common benefit fees to non-leadership attorneys. See, e.g., In re Zyprexa, 467 F. Supp. 2d at 266; In re Genetically Modified Rice Litig., No. 06-MDL-1811, 2010 WL 716190, at *7 (E.D. Mo. Feb. 24, 2010). These cases, which do not seem to require approval of the executive committees, support a broader interpretation of the Court's managerial authority than offered by Respondents.

On certain facts, the Court agrees that a group of attorneys who repeatedly ignored the PECs' directions could lose the right to participate in a common benefit fund. See ECF No. 248 (awarding the PECs authority to direct and manage pretrial proceedings). But the Court is not

convinced that this is such a case. The Havlish Plaintiffs have two representatives on the PECs and therefore are in a position to pursue relief that could (and now has) benefited Plaintiffs as a whole. The evidence does not suggest that the Havlish Plaintiffs were "rouge actors;" rather, for reasons unknown to the Court, it seems that Havlish counsel and the remainder of the PECs simply understood that the former was pursuing claims against Iran, while the latter was focusing on other Defendants. Although this arrangement is not ideal, there is no evidence of any significant disruption or malfeasance. Indeed, the only time the PECs raised an issue with the Court, Judge Daniels permitted the Havlish Plaintiffs to move forward with their motion for default judgment. See ECF No. 4289, Exhibit C. To the extent the lack of coordination may have resulted in some duplicative work, any resulting inefficiencies are better addressed with reductions to the common benefit fee, not a complete bar from recovery.

In sum, Havlish counsel performed a substantial amount of work that benefited all Plaintiffs and allowed them to receive compensation from the VSSTF. The Court views these circumstances as exceptional and unlikely to reoccur in this litigation.

### IV.     Creating a Common Benefit Fund is Appropriate

For nearly a decade, the Havlish Plaintiffs expended significant time and expense pursuing a default judgment against Iran. Their work included: (1) overseas travel; (2) sworn videotaped testimonies of four Iranian witnesses, including the first president of Iran; and (3) ten expert affidavits in the fields of terrorism, intelligence, criminal investigation, and the structural aspects of the Iranian government. See Pl's Br., at 10–12. The Havlish attorneys compiled this information into a formal motion for default judgment, submitting three memorandum of law and nearly 100 exhibits. Id. at 10. After conducting an evidentiary hearing, Judge Daniels adopted the

proposed findings of fact and conclusions of law and entered a final judgment as to liability. See ECF Nos. 2515–16.

Respondents almost exclusively relied on the Havlish evidence when they pursued their own default judgments years' later. See, e.g., ECF No. 2970 (Ashton); ECF No. 3000 (O'Neill). Indeed, both the Ashton and O'Neill Plaintiffs requested that the Court use "the evidence . . . previously received and analyzed" in Havlish. ECF No. 2970, at 21; ECF No. 3000, at 2. Judge Daniels obliged, entering default judgments based on the "evidence submitted by [the Havlish] Plaintiffs." ECF Nos. 3021 & 3022.

In these circumstances, creating a common benefit fund to compensate the Havlish attorneys is appropriate. Requiring Respondents' counsel to pay a percentage of their fees into a common fund spreads the costs of the litigation onto the class of individuals that benefited from their expenditure. Moreover, doing so promotes the Court's ability to manage the litigation by compensating attorneys who perform significant legal services in favor of all Plaintiffs. As a result, both the Court's equitable powers and its inherent managerial authority provide a basis to create the common benefit fund.

At this time, however, the Court cannot determine the size of the common benefit fee. While the amount recovered by the Responding Plaintiffs is a knowable fact, that information was not presented to the Court. The Havlish Plaintiffs contend that the Respondents received approximately $700 million from the VSSTF in January 2019. Pl's Br., at 18. Although not without reason, this position amounts to mere speculation. The Court will not set a common benefit fee without knowing the amount that the Respondents' have actually recovered.

More significantly, the Havlish Plaintiffs failed to provide adequate proof of their time and expenses.[4] In his report and recommendation, Judge Maas emphasized that neither party had submitted contemporaneous time records documenting the hours they spent obtaining default judgments against Iran, "despite the fact that courts often rely on such information in determining the common benefit fee." ECF No. 3309, at 6 (citing Manual for Complex Litigation 191 (4th ed. 2004)). A lack of time records is particularly problematic when the requested fee is excessive, which may be the case here. As Respondents point out, there are concerns that the work performed by the Havlish attorneys was unnecessary, duplicative, and otherwise available from public sources.[5] RP's Br., at 20. After just two years of litigation, for example, the Havlish Plaintiffs had expended "approximately 10,000 attorney hours and in excess of a half million dollars" in pursuit of their claims. ECF No. 3273, Exhibit B, at 6 (status letter to Judge Casey from the Havlish Plaintiffs).

The Court makes no judgment as to whether any of these hours were reasonably expended. Nevertheless, given that a fee applicant's lodestar is often used to cross-check the reasonableness of the percentage fee award, the Havlish Plaintiffs must come forward with additional evidence before the Court can assess a common benefit fee.

## CONCLUSION

The motion to create a common benefit fund is GRANTED, but the request for a 12% set-aside is DENIED without prejudice to renewal. The parties are directed to meet-and-confer

---

[4] The Havlish Plaintiffs reference an affidavit submitted in connection with their September 2012 motion for damages. Pl's Reply. Br., at 9. The declarant states that the Havlish attorneys incurred nearly $2 million in expenses and explains how much of that amount was incurred by each law firm within the Havlish consortium. 03-CV-9848, ECF No. 301, Exhibit M. The expenses are not justified in any meaningful way, and there is no reference at all to attorney hours. Id.

[5] Respondents contend that the time they spent litigating claims against other Defendants "would have to be considered in evaluating any fee request." RP's Br., at 21. The Court disagrees. Because no other Defendant has settled or been found liable, any consideration of the work performed would be premature.

regarding: (1) the need, if any, for limited discovery, see Mass-Tort MDLs, at 83; (2) the kinds of documents that constitute reasonable proof of the Havlish Plaintiffs' time and expenses, but would not impose an undue burden to produce and review; and (3) the propriety of reserving decision on the size of the common benefit fee until Respondents are notified of the amounts they will recover through the VSSTF's third-round of payments.

The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 4289 & 4291.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   September 30, 2019
         New York, New York

\*          \*          \*

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of

those objections for purposes of appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).