# EXHIBIT K

```
         J9NVTERC

 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    IN RE:  TERRORIST ATTACKS ON
              SEPTEMBER 11, 2001,              03 MD 1570 (GBD)(SN)
 4

 5    ------------------------------x

 6                                              TELEPHONE CONFERENCE

 7
                                                New York, N.Y.
 8                                              September 23, 2019
                                                10:06 a.m.
 9
      Before:
10
                          HON. SARAH NETBURN,
11
                                                Magistrate Judge
12
                                APPEARANCES
13
      ANDERSON KILL
14         Attorneys for Plaintiffs
      BY:  JERRY S. GOLDMAN
15         -AND-
      MOTLEY RICE
16    BY:  JOHN M. EUBANKS
           ROBERT T. HAEFELE
17         -AND-
      KREINDLER & KREINDLER
18    BY:  MEGAN W. BENETT
           -AND-
19    JOHN F. SCHUTTY

20    JONES DAY
           Attorneys for Defendant Dubai Islamic Bank
21    BY:  STEVEN T. COTTREAU

22    KELLOGG HANSEN TODD FIGEL & FREDERICK
           Attorneys for Defendant Kingdom of Saudi Arabia
23    BY:  GREGORY G. RAPAWY

24

25
```

1         (In chambers)
2         THE COURT:  Good morning.  This is Judge Netburn.
3         UNIDENTIFIED SPEAKER:  Good morning.
4         UNIDENTIFIED SPEAKER:  Good morning.
5         UNIDENTIFIED SPEAKER:  Good morning, your Honor.
6         THE COURT:  Wonderful.  Thank you, everybody.
7         So just a reminder of the rules.  I'm here with my law
8  clerk and a court reporter.  What I'm going to do is ask those
9  lawyers who plan on speaking to state their appearance for the
10 record.  I heard when I logged on that there are 21 people on
11 this call.  I don't think everyone is going to be speaking; so
12 if you're not intending to speak, please don't state your
13 appearance.  If afterwards you realize there's something you
14 want to say, you can just state your appearance at that time.
15         In addition, I'm going to request that before anyone
16 speaks, that you state your name again so that the court
17 reporter can attribute your statements to the appropriate
18 person.
19         So let me begin with a little roll call.
20         Who is on the phone for the O'Neill plaintiffs?
21         MR. GOLDMAN:  Jerry Goldman.
22         THE COURT:  Thank you.
23         And who is on the phone for the Ashton claimants?
24         MS. BENETT:  That's Megan Benett, your Honor.
25         THE COURT:  Thank you.

1           And for the Burnett plaintiffs?

2           MR. EUBANKS:  You have John Eubanks and Robert
3    Haefele.

4           THE COURT:  Thank you.

5           Anyone else that's representing a plaintiff who
6    anticipates speaking?  Terrific.

7           And who is on the line for the defendants?

8           MR. RAPAWY:  Gregory Rapawy for Saudi Arabia, your
9    Honor.  And I think I have Mr. Kabat's consent to address any
10   matters that need to be addressed for defendants.

11          THE COURT:  Thank you.

12          Okay.  The purpose of this call is primarily to speak
13   with Mr. Goldman about his letter that was filed on September
14   6th.  The concern that I have is with respect to claimants
15   obtaining judgments against Iran who have not appeared as
16   plaintiffs in this case.  And I understand from Mr. Goldman's
17   letter and from his motions that he's filed recently that it's
18   his belief that those claimants can obtain judgments even
19   though they are not plaintiffs, they are not parties in the
20   case, through the estates.  And I'm not sure that's a legally
21   proper position, and so I wanted to give Mr. Goldman an
22   opportunity to discuss that with me.

23          I also would like you, Mr. Goldman, to explain in more
24   detail to me why you believe that your clients are not
25   authorized to utilize the amendment procedure that we adopted

J9NVTERC

1     to streamline this process.
2             So, Mr. Goldman, let me ask you to answer some of
3     those questions.
4             MR. GOLDMAN:  Thank you, your Honor.
5             With regard to the amendment process, it was our
6     reading of the Court's orders that the amendment process would
7     only apply to those cases which were then pending, which would
8     have been Ashton and Burnett, and also Havlish and, I believe,
9     Hoglan.
10            As your Honor recalls, the O'Neills only had one
11    plaintiff regarding Iran, unlike what we did with regard to the
12    banks and the charities and the kingdoms with the putative
13    class actions.  With regard to Iran, it was a plaintiff case.
14            You then instructed us, if we were going to add
15    additional plaintiffs, to do them in those groups of 100.  But
16    when your Honor revised the order, it did not include O'Neill
17    in the amendment process, and we had to go through with the
18    other manner.
19            Now, from the beginning we had named our plaintiffs on
20    these new cases to include the estates of personal
21    representatives and the family members and the like, drawing on
22    that case law in the D.C. Circuit which allowed that to bring
23    in and assert claims for other family members.  And that is how
24    we did it.  And we disclosed that in each of the memorandum of
25    law which we filed in support of the motion.

1       THE COURT:  Mr. Goldman, approximately how many
2  claimants do you represent that have obtained judgments that
3  are not parties in any action?
4       MR. GOLDMAN:  Twenty.
5       THE COURT:  Twenty.
6       To your knowledge, are there other claimants for whom
7  you might seek judgments who are not parties in any action?
8       MR. GOLDMAN:  Not at this time, your Honor.  There are
9  other potential claimants out there, but they would not be -- I
10 would not use this particular mechanism for them.
11      THE COURT:  Okay.
12      I have the order that established the short form
13 complaints with me.  We tried to be as clear as possible, and
14 maybe we weren't.  This case will serve as a civil procedure
15 exercise for first-year law students going forward.
16      But I don't think that the procedure cannot be
17 utilized by your clients, though I want to look over it again
18 to be clear.  But I'm also not convinced that your clients can
19 proceed without being a party to the action.
20      I'm familiar with the D.C. district court decisions
21 that you're referring to; I've read them.  I would say that the
22 earlier cases that seem to permit claimants to obtain judgments
23 do so without a whole lot of analysis; and that more recently,
24 the same judge denied claimants from obtaining judgments in the
25 same posture, also without a whole lot of analysis.  So I'm not

1   sure that what's happening in the D.C. district court is
2   particularly helpful.  And to the extent it is, the more recent
3   cases do not permit claimants to obtain judgments if they are
4   not a party.
5           In my experience, the types of claims that your
6   clients are bringing are personal and, therefore, they do need
7   to be a party in an action.  And so I think we need to come up
8   with some sort of streamlined way of getting your clients into
9   cases.
10          I'm open to even doing so *nunc pro tunc* to the date of
11  the judgment for Iran.  And I'll pause for a minute and say I
12  recognize that the other defendants are represented here.  And
13  my concern is really as to Iran, and the other defendants can
14  make whatever application they think is appropriate at whatever
15  time they think is appropriate.
16          But with respect to Iran, who is obviously a
17  defaulting defendant, I do think the Court has an obligation to
18  make sure that people who are obtaining judgments with captions
19  need to be a party to that case.  I'm not familiar with any
20  legal theory that would allow claimants who are obtaining
21  judgments for their own individual claims, rather than as
22  beneficiaries of an estate, can proceed.
23          MR. GOLDMAN:  Your Honor, without waiving, we are
24  prepared to make a motion *nunc pro tunc* and have it filed by
25  tomorrow.

1      THE COURT:  Okay.  I think that that is the cleanest
2 way to proceed.  And I don't mean to cause a fire drill.  So if
3 you would like more than 24 hours to do so, I think -- I won't
4 set a deadline, I would do it as soon as you can.  I don't
5 think there's a fire drill at this point.
6      MR. GOLDMAN:  The second-year associate who is sitting
7 across from me in our conference room nodded her head
8 vigorously.
9      THE COURT:  All right.  Well, I like to take care of
10 all lawyers, including second-year associates.
11      Okay.  I think that that resolves the issues that I
12 wanted to discuss today.
13      Does anyone want to be heard on any other matter?
14      Okay.
15      MR. COTTREAU:  Your Honor, this is Steve Cottreau for
16 Dubai Islamic Bank.  I just wanted to bring one quick matter to
17 your attention.
18      As you may know, last week the plaintiffs filed for a
19 short extension of, I think, five days from the deadline so
20 that a couple of depositions could be taken by November 5th and
21 6th.  We are still working out with plaintiffs whether those
22 depositions can, in fact, happen in one day; they may be in a
23 foreign language and there may be some significant
24 cross-examination in those depositions.
25      And so I would just ask your Honor to consider, if

1  she's going to grant an extension to the deadlines, that you
2  grant it to November 8th, which would be the end of that first
3  week in November; so that if depositions ran longer than one
4  day, we would have a chance to complete them by the deadline
5  that you set.
6            THE COURT:  Okay.  That's fine.  I'll grant it till
7  November 8th.
8            MR. COTTREAU:  Thank you, your Honor.
9            THE COURT:  Anything further from anyone?
10           MR. HAEFELE:  Your Honor, this is Robert Haefele.
11           THE COURT:  Yes, Mr. Haefele.
12           MR. HAEFELE:  I'm just adding to what Mr. Cottreau
13  said.
14           I think one of the concerns that I'm not hearing
15  addressed is that I understand that these are depositions of
16  detainees or prisoners at Supermax.  The government has had
17  some say into how those depositions are to occur.
18           Mr. Cottreau is indicating that he may want two days
19  of depositions; but I think the government has indicated a time
20  limit for each of the detainees or each of the prisoners.
21  That's something your Honor should probably take into account
22  as well.
23           THE COURT:  Okay.  Well, I'm happy to grant the relief
24  until November 8th.  And obviously if the government is making
25  it difficult for that to be achieved, you can come back to me.

1           MR. HAEFELE:  Thank you.

2           MR. COTTREAU:  Your Honor, this is Steve Cottreau for
3    Dubai Islamic Bank.

4           Just to add, we're happy if the government sets a time
5    limit we can live with.  Then we would just want the time to be
6    split equally between plaintiffs and defendants.

7           THE COURT:  Okay.  I imagine you all can work that
8    out; and if not, you can submit something to me in writing.

9           MR. COTTREAU:  Thank you.

10          MR. SCHUTTY:  Your Honor, this is John Schutty
11   representing the Dickey plaintiffs.

12          May I make one request?  I represent only nuclear
13   families.  I've elected not to represent in-laws, that is,
14   parents and siblings.  And from the default judgments which I
15   have been following very carefully, many people appear to be
16   added after the statute of limitations, ostensibly because
17   their family member is covered by other plaintiffs.

18          And anticipating that there may be a day down the
19   future where in-laws contest money paid to families for a
20   decedent, are people being added after the statutory period
21   claiming they are members of an estate, when, in fact, they are
22   not, under New York law?

23          THE COURT:  I don't think this is something I can
24   answer on the fly.  I think the issue of statute of
25   limitations -- for one, it varies, depending on the defendant

1    and the nature of the claim.  So there's some lack of clarity
2    about when the statute runs.  And I guess I'm not really
3    prepared to give you any guidance on any application that may
4    come at some later date, to the extent there is an unfortunate
5    battle between family members.
6            MR. SCHUTTY:  My concern is that the default judgments
7    may be entered on behalf of people who are not proper parties
8    to a lawsuit and have not timely filed actions.  And the Court
9    may be entering default judgments on behalf of these parties
10   who will later contest awards against my clients, for example,
11   parents and siblings, and after the statute of limitations.
12           THE COURT:  What are you --
13           MR. GOLDMAN:  Your Honor, this is Jerry --
14           THE COURT:  Sorry, Mr. Goldman.  I'm in the middle of
15   a conversation with Mr. Schutty right now.
16           Mr. Schutty, what relief are you seeking right now?
17           MR. SCHUTTY:  I'm just concerned that the Court is
18   being asked to rubber stamp default judgments without proof
19   that the claims have been filed in a timely manner on behalf of
20   each individual family member.
21           If you're not within the estate of a decedent under
22   applicable state law, other family members can toll the statute
23   of limitations for you.  And there have been numerous filings
24   in the last few months where it's unclear that these people
25   were added to the lawsuits in a timely manner.

1              THE COURT:  I think your concern is legitimate.  I'm
2     just not sure what relief you're seeking right now.
3              MR. SCHUTTY:  Well, if I was a defendant, I would
4     surely be upset if people were added to the lawsuit without a
5     timely claim being asserted by individuals.  At worst, we may
6     be establishing a pattern of allowing default judgments that
7     are improper.  That's really my point.
8              In the filings to date, I have not seen the attorneys
9     or the claimants establishing that they have filed during the
10    statutory period, which, from what I understand, has expired
11    for each of the defendants, including Iran.
12             THE COURT:  I'm not sure that that's correct.  And I'm
13    also not sure that the Court has authority to *sua sponte* raise
14    statute of limitations defenses.  There is some split authority
15    on that particular issue.  I certainly don't think that the
16    default judgment posture carries an enormous amount of weight
17    in more contested actions.  So I guess I would leave it at
18    that.
19             MR. SCHUTTY:  I understand, your Honor.
20             I wanted to preserve our objection in the event there
21    are in-laws who claim that they had filed timely claims down
22    the road.  And simply because they have a default judgment
23    doesn't mean the claim is timely, that's all.  I want to
24    preserve my objection.
25             THE COURT:  Understood.  It's preserved.

1           Anything further?

2           Mr. Goldman, did you want to say something?

3           MR. GOLDMAN:  Yes, your Honor.

4           On that specific point, your Honor's requirements in
5  her order indicated that we had to have permission by the
6  personal representative in order to file these claims.  And as
7  I indicated in my declarations, in each and every case we had
8  that consent.

9           THE COURT:  Thank you.

10          Anything further?

11          MR. RAPAWY:  Your Honor, this is Gregory Rapawy for
12 Saudi Arabia.  Very briefly.  I don't want to prolong this.

13          Obviously our intent in joining was to preserve the
14 rights of actively represented defendants with regard to any
15 limitation issues that may be present here.  I understand your
16 Honor to have basically set that as -- those are preserved.  So
17 we will assert them when and as necessary.

18          THE COURT:  Yes.  And I think that's the message in
19 Mr. Kabat's September 10th letter as well.

20          So those objections are preserved.

21          MR. RAPAWY:  Yes, your Honor.  Thank you.

22          THE COURT:  Okay.  Thank you very much, everybody.

23          UNIDENTIFIED SPEAKER:  Thank you, your Honor.

24                          *   *   *

25