

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street, 3rd floor*
*New York, New York 10007*

May 2, 2018

<u>**By Electronic Mail**</u>
MDL 1570 Plaintiffs' Executive Committees
Attn: Sean P. Carter
Cozen O'Connor
One Liberty Place
1650 Market Street
Suite 2800
Philadelphia, PA  19103

      Re: *In re Terrorist Attacks*, 03 MDL 1570 (GBD) (SN)
         Interim Response to *Touhy* Request for Documents and
         Objections to Subpoena

Dear Mr. Carter:

  This letter provides an interim response to the request of the MDL 1570 Plaintiffs' Executive Committees (the "PECs") dated April 6, 2018 ("Request"), seeking production of records and electronically stored information ("ESI") from the Federal Bureau of Investigation ("FBI") in connection with the above-referenced multidistrict litigation, pursuant to 28 C.F.R. §§ 16.21-16.29.  In accordance with Fed. R. Civ. P. 45(d)(2)(B), this letter also sets forth the FBI's objections to the subpoena you served on the FBI on April 10, 2018 ("Subpoena"), seeking the same records and information.  As discussed below, we request that you narrow the Request and Subpoena to records pertaining to the specific allegations on which Judge Daniels and Magistrate Judge Netburn have permitted limited and targeted jurisdictional discovery.  To the extent you seek records or information beyond those categories, we request additional information to allow this Office to evaluate your Request.

  The Request and Subpoena seek ten categories of records and information from the FBI:

  (1) Any and all records referring or relating to Omar al Bayoumi, Fahad al Thumairy, Mohdhar Abdullah, Omar Abdi Mohamed, Khalid Sowailem, the King Fahd Mosque, or the Western Somali Relief Agency;

*In re Terrorist Attacks*, 03 MDL 1570
Interim Response to Touhy Request to FBI
Page 2

(2) Any and all PENTTBOM records referring or relating to Omar al Bayoumi, Fahad al Thumairy, Mohdhar Abdullah, Omar Abdi Mohamed, Khalid Sowailem, the King Fahd Mosque, or the Western Somali Relief Agency;

(3) Any and all communication records (including but not limited to phone, email, and fax) and financial and banking records of Khalid al Mihdhar, Nawaf al Hazmi and Anwar al Aulaqi (prior to and on September 11, 2001);

(4) Any and all records referring or relating to the work and investigation of the PENTTBOM subfile team, as referenced on pp. 101-103 of The 9/11 Review Commission Report, attached as Exhibit A to your request;

(5) The 2012 FBI Summary Report referenced at footnote 330 of The 9/11 Review Commission Report;

(6) Any and all records referring or relating to any person(s) referenced in the 2012 FBI Summary Report as "subjects" of the investigation described in that report;

(7) Any and all records referring or relating to the person(s) "who tasked al-Thumairy and al-Bayoumi with assisting the hijackers," according to the 2012 FBI Summary Report;

(8) The Joint FBI-CIA Intelligence report assessing the nature and extent of Saudi government support for terrorism, prepared and submitted in accordance with the Intelligence Authorization Act for FY 2004, Classified Annex S. 1025/S. Report 108-44[1];

(9) The September 1, 2005 letter from Robert Mueller and Porter Goss to Senator Pat Roberts, enclosing the FBI-CIA Intelligence Report assessing the nature and extent of Saudi government support for terrorism, prepared in accordance with the Intelligence Authorization Act for FY 2004, Classified Annex S. 1025/S. Report 108-44[2]; and

(10) The November 2004 U.S. Department of Justice, Office of Inspector General ("OIG") report titled "A Review of the FBI's Handling of Intelligence Information Related to the September 11 Attacks (November 2004)," the unclassified version of which was attached to your request as Exhibit E.[3]

DOJ, like all federal agencies, is empowered to determine whether to provide records or testimony in matters, such as this one, in which the government is not a party.

---

[1] By email dated April 24, 2018, you provided the executive summary of this report in redacted form, and clarified that your request seeks an unredacted version of the executive summary, along with the full report.
[2] By email dated April 24, 2018, you provided a redacted version of this letter and clarified that your request seeks an unredacted version of the letter.
[3] By email dated April 24, 2018, you clarified that you are seeking the full, classified OIG report, as referenced in the Note preceding the table of contents in Exhibit E. You indicated that you are "most interested in sections of the report discussing Fahad al Thumairy, Omar al Bayoumi, sources of support for Nawaf al Hazmi and Khalid al Mihdhar, Saudi government support for al Qaeda, and related topics."

*In re Terrorist Attacks*, 03 MDL 1570
Interim Response to Touhy Request to FBI
Page 3

*See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951); *Boron Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989); *In re Sept. 11 Litig.*, 621 F. Supp. 2d 131, 144 (S.D.N.Y. 2009). The procedural and substantive requirements governing DOJ's determination are set forth in the agency's so-called "Touhy" regulations. Because the FBI is a component of DOJ, *see* http://www.justice.gov/agencies/index-org.html, your request for records is governed by DOJ's Touhy regulations. *See* 28 C.F.R. §§ 16.21-16.29.

DOJ's Touhy regulations prohibit agency employees from producing documents or information, even in response to a subpoena, without prior approval of the responsible Department official. *See* 28 C.F.R. § 16.22(a). With regard to your request, because the Subpoena was issued from the U.S. District Court for the Southern District of New York, the responsible DOJ official is Geoffrey S. Berman, the United States Attorney for the Southern District of New York. *See* 28 C.F.R. §§ 16.22(b), 16.24.

DOJ's Touhy Regulations identify several factors that the responsible DOJ official must consider in deciding whether to authorize disclosures in response to a request or subpoena. Those factors are discussed in turn below.

1. *Relevance of the Requested Documents and Information and Whether Disclosure Is Appropriate Under the Rules of Procedure Governing the Case*

"In deciding whether to make disclosures in response to a demand, Department officials and attorneys should consider . . . [w]hether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose." 28 C.F.R. § 16.26(a)(1).

   a. *Relevance and Proportionality*

Among other things, a party seeking records from DOJ employees must provide a summary of the information sought and its relevance to the proceeding. *See* 28 C.F.R. § 16.22(d).

The Request states that the requested documents and information "are highly relevant to the litigation," because they concern (1) matters relevant to the jurisdictional issue addressed in the MDL court's March 28 order," and (2) matters of broader relevance to the pending civil claims of the 9/11 plaintiffs, including for example the hijackers' activities within the United States preceding the 9/11 attacks.

First, to the extent the Request seeks records relevant to "the jurisdictional issue addressed in the MDL court's March 28 order" (ECF No. 3946 (the "March 28 Order")), it is not clear that Judge Daniels contemplated third-party discovery on that issue. Judge Daniels ruled:

*In re Terrorist Attacks*, 03 MDL 1570
Interim Response to Touhy Request to FBI
Page 4

> Plaintiffs have . . . articulated a reasonable basis for Saudi Arabia to be held responsible for the conduct of its agents, Thumairy and Bayoumi, as well as those whom they appointed as subagents. Since, however, the nature and scope of the agency is somewhat unclear in this case, and the party in the best position to shed light on that inquiry is Saudi Arabia, Plaintiffs shall be permitted to conduct limited and targeted jurisdictional discovery critical to answering that question, *i.e.*, whether and to what extent Thumairy, Bayoumi, and their agents took actions in 2000, at the direction of more senior Saudi officials, to provide assistance to Hazmi, Mihdhar, and other 9/11 hijackers.

March 28 Order at 23. Rather than authorizing wide-ranging third-party discovery, the Court authorized "limited and targeted jurisdictional discovery" on a discrete issue from Saudi Arabia, "the party in the best position to shed light on that inquiry."

Second, if the Court permits third-party discovery, the Request appears to extend beyond the "limited and targeted jurisdictional discovery" on the discrete issue contemplated by the March 28 Order, namely, "whether and to what extent Thumairy, Bayoumi, and their agents took actions in 2000, at the direction of more senior Saudi officials, to provide assistance to Hazmi, Mihdhar, and other 9/11 hijackers." Interpreting the March 28 Order, Magistrate Judge Netburn observed that

> Judge Daniels did limit the scope of discovery. Your burden right now is not to find out whether Saudi Arabia is complicit in the 9/11 attacks. Your burden right now is to find out whether or not these two individuals [Thumairy and Bayoumi] acted as agents for the government in support of the terrorist attacks. The search for the truth is always what we say litigation is about, but in this instance we are focusing on a narrow area.

Apr. 12, 2018 Tr. at 20.

Magistrate Judge Netburn further stated that she had identified "nine topics that Judge Daniels relied upon as allegations that the plaintiffs pointed to," and she "intend[s] to cabin you to those areas":

> So, if you serve discovery on the kingdom that it opposes that seeks information that does not appear in Judge Daniels' decision and seems to me to be part of your effort in search for truth but not something you alleged in your complaint, I am going to deny that discovery.

*In re Terrorist Attacks*, 03 MDL 1570
Interim Response to Touhy Request to FBI
Page 5

*Id.* at 20-21. The Magistrate Judge instructed that "all discovery that you are seeking needs to be tethered to one of those allegations that Judge Daniels relied upon and is allowing you to pursue." *Id.* (citing pages 19-23 of March 28 Order). To facilitate this, the Magistrate Judge suggested that the PECs identify why each discovery demand, or group of demands, is "specific to [a] particular allegation" on which Judge Daniels relied. *Id.* at 22 ("That will help the parties, and ultimately the Court if necessary, to decide whether the discovery that you are seeking truly is tailored toward a particular allegation that you need to prove or is beyond the scope.").

Any discovery request to a non-party such as the FBI should be similarly specific in its explanation of the relevance of each request. The following records or categories of records appear to extend beyond the allegations identified by Judge Daniels and Magistrate Judge Netburn:

- "Any and all records referring or relating to" Omar al Bayoumi, Fahad al Thumairy, Mohdhar Abdullah, Omar Abdi Mohamed,[4] Khalid Sowailem, the King Fahd Mosque, and the Western Somali Relief Agency (items 1-2), to the extent they do not pertain to the activities of Thumairy and Bayoumi alleged in your complaint and relied upon by Judge Daniels;
- "Any and all communication records . . . and financial and banking records of Khalid al Mihdhar, Nawaf al Hazmi, and Anwar al Aulaqi (prior to and on September 11, 2001)" (item 3), to the extent they do not pertain to the activities of Thumairy and Bayoumi alleged in your complaint and relied upon by Judge Daniels;
- "Any and all records referring or relating to the work and investigation of the PENTTBOM subfile team" (item 4), to the extent they do not pertain to the activities of Thumairy and Bayoumi alleged in your complaint and relied upon by Judge Daniels;
- Unreleased portions of the 2012 FBI Summary Report, and records relating to that report (items 5-6), to the extent they do not pertain to the activities of Thumairy and Bayoumi alleged in your complaint and relied upon by Judge Daniels; and
- Unreleased portions of the Joint FBI-CIA Intelligence report and associated September 1, 2005 letter (items 8-9) and the OIG report (item 10), to the extent they do not pertain to the activities of Thumairy and Bayoumi alleged in your complaint and relied upon by Judge Daniels.

---

[4] Judge Daniels rejected plaintiffs' request to take jurisdictional discovery with respect to Omar Abdi Mohamed, whom plaintiffs alleged "established a charity organization in San Diego called the Western Somali Relief Agency . . . to serve as a fundraising front for al Qaida." March 28 Order at 28, 30-31.

*In re Terrorist Attacks*, 03 MDL 1570
Interim Response to Touhy Request to FBI
Page 6

With regard to the items that refer to Thumairy or Bayoumi, it would also be helpful if you could identify how the records you seek are "specific to [a] particular allegation" on which Judge Daniels relied in the March 28 Order. Apr. 12, 2018 Tr. at 22.

Third, to the extent the Request seeks records "of broader relevance to the pending civil claims of the 9/11 plaintiffs," we cannot evaluate the Request because it does not identify those claims, explain how each request is relevant to such claims, or identify the applicable court orders governing discovery with regard to such claims. It is not clear why the PECs would require documents or information from the FBI regarding the "hijackers' activities within the United States preceding the 9/11 attacks," which have already been documented in detail in The 9/11 Commission Report published in 2004 (*see, e.g.*, Chapter 7 of that report). *See In re Sept. 11 Litig.*, 621 F. Supp. 2d at 165 (holding that "[s]pecific portions of The 9/11 Report may be admissible under [Fed. R. Evid.] 803(8)(C), particularly as bases for an agreed narrative of the history, context, and chronology of events," and "[t]he chronology provided in The 9/11 Report is admissible under Rule 803(8)(C)").

For these reasons, the FBI objects to the Request and Subpoena to the extent it seeks records and information that are not relevant or proportional to the needs of the case, and that exceed the limited scope of discovery authorized in the March 2018 Order. *See* 28 C.F.R. § 16.26(a)(1); Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 45(d)(3)(A)(iv); *cf. People of State of Cal. v. Reyes*, 816 F. Supp. 619, 622 (E.D. Cal. 1992) (statement that testimony sought was "necessary to help prove the innocence of defendant" not specific enough to comply with 28 C.F.R. § 16.23(c)).

    b. *Undue Burden*

The Request as currently framed would impose an undue burden on the FBI, which is not a party to the litigation. *See Agility Public Warehousing Co., K.S.C.P. v. U.S. DOD,* 246 F. Supp. 3d 34, 48 (D.D.C. 2017) (government entitled to consider burden requested discovery would place on agency).

Several of the requests (items 1-2, 6-7) are extremely broad, seeking "[a]ny and all records relating or referring to" certain individuals (items 1-2, 6-7), "[a]ny and all communication records (including but not limited to phone, email and fax) and financial and banking records" of three individuals (item 3), and "[a]ny and all records referring or relating to" an entire investigation and the work of the "subfile team" (item 4).[5] We request that you narrow these categories substantially. Moreover, to the extent the

---

[5] According to the 9/11 Review Commission report, "[t]he subfile team began its review of several individuals of interest in 2007," and the Commission recommended in 2015 that the FBI continue the investigation. 9/11 Review Comm'n Report at 102.

*In re Terrorist Attacks*, 03 MDL 1570
Interim Response to Touhy Request to FBI
Page 7

Request seeks documents that "relate" to such individuals or investigation, but do not "refer" to them, the Request is vague and ambiguous, and it would be difficult and unduly burdensome to identify responsive records. Once responsive records are identified, they would need to be reviewed individually to identify classified, privileged, or otherwise protected information, as discussed below.

In addition, four of the requests (items 5, 8-10) explicitly seek disclosure of classified records or portions of records, as discussed below. To the extent the PECs seek a review of these records to determine whether portions can be declassified, that is a painstaking and time-consuming process, particularly if the records are lengthy. The Request (including but not limited to items 8-10) also calls for documents that originated in whole or in part with other government agencies or components, requiring the FBI to coordinate its response with those other agencies or components. In addition, the Request and Subpoena are unreasonable and unduly burdensome to the extent they seek emails or other ESI aside from official file documents.

The Request and Subpoena also seek information from the FBI, a non-party, that may be available from other sources, including from the Kingdom of Saudi Arabia and other parties to the litigation; other non-parties from whom the PECs seek discovery (potentially including Thumairy and Bayoumi), and publicly available information such as The 9/11 Commission Report and The 9/11 Review Commission Report. Fed. R. Civ. P. 45(d)(3)(A)(iv).

It should be noted that given the volume of material currently requested, even if disclosure were authorized, there is no reasonable possibility that records could be disclosed by May 17, 2018, the return date set forth in the Subpoena, or even by the dates contemplated by Magistrate Judge Netburn for the close of jurisdictional discovery with regard to the claims against the Kingdom of Saudi Arabia. Apr. 12, 2018 Tr. at 27 (suggesting a discovery deadline of "between mid October [2018] and the end of January [2019]"). For this additional reason, we encourage plaintiffs to substantially narrow the Request.

For all these reasons, the FBI objects to the Request and Subpoena as overbroad, vague, ambiguous, and unduly burdensome. 28 C.F.R. § 16.26(a)(1); Fed. R. Civ. P. 45(d)(3)(A)(iv).

2. *Whether Disclosure Is Appropriate Under the Relevant Substantive Law Concerning Privilege*

"In deciding whether to make disclosures pursuant to a demand, Department officials and attorneys [also] should consider . . . [w]hether such disclosure is appropriate

under the relevant substantive law concerning privilege." 28 C.F.R. § 16.26(a)(2). The Request as currently framed seeks disclosure of privileged information.

For example, the 2012 FBI Summary Report includes information protected by the deliberative process and law enforcement privileges, as the district court recently found in *Broward Bulldog v. FBI*, No. 16-61289, 2017 WL 746410, at *17 (S.D. Fla. Feb. 27, 2017) (upholding redaction under FOIA Exemption 5 and deliberative process privilege), *appeal pending*, Nos. 17-13787, 17-14264 (11th Cir.); *id.* at *17-18 (upholding redactions under Exemption 7(D) (confidential source), Exemption 7(E) (law enforcement techniques and procedures), and Exemption 7(A) (law enforcement records the disclosure of which could reasonably be expected to interfere with enforcement proceedings)); *see also In re City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) (law enforcement privilege protects "information pertaining to law enforcement techniques and procedures, information that would undermine the confidentiality of sources, information that would endanger witness and law enforcement personnel or the privacy of individuals involved in an investigation, and information that would otherwise interfere with an investigation" (citation, internal quotation marks and alterations omitted)). The Request also seeks the entire investigatory file relating to the subfile team's investigation, which is likely to contain a significant amount of information protected by the law enforcement privilege. That file may also contain information protected from disclosure by the deliberative process privilege. *See* 9/11 Review Comm'n Report at 103 (noting that "there is ongoing internal debate within the FBI between the original PENTTBOM team and the subfile team regarding the potential significance of [the new evidence developed by the subfile team]," and recognizing "the importance of strong internal engagement between the PENTTBOM and the subfile teams").

The FBI objects to the Request to the extent it seeks privileged documents or information, including but not limited to documents or information protected by the attorney-client, deliberative process, work product, law enforcement, and informant privileges. 28 C.F.R. § 16.26(a)(2); Fed. R. Civ. P. 45(d)(3)(A)(iii). Due to the breadth of the Request, it would be unduly burdensome for the FBI to identify all the privileges that may apply to specific information in the requested documents. The FBI reserves the right to assert any and all privileges that may be applicable.

3. *Protected Information Under the Touhy Regulations*

DOJ's Touhy regulations provide that "disclosure will not be made by any Department official" if it would reveal certain categories of protected information set forth in 28 C.F.R. § 16.26(b), including classified information; information that would reveal a confidential source or informant; investigatory records the disclosure of which would interfere with enforcement proceedings or disclose investigatory techniques and

procedures and thereby impair their effectiveness; and information the disclosure of which would violate a statute, rule of procedure or specific regulation. The Request implicates several categories of protected information.

    a. *Classified Information*

The Touhy regulations provide that "disclosure will not be made" in response to a subpoena or other request if it "would reveal classified information, unless appropriately declassified by an originating authority." 28 C.F.R. § 16.26(b)(3). The Request as currently framed seeks disclosure of classified records and information.

Items 4-7 of the Request concern the 2012 FBI Summary Report, a redacted version of which is attached to the Request as Exhibit D. The information redacted from the report includes classified and statutorily protected information, the withholding of which was recently upheld by the district court in *Broward Bulldog*, 2017 WL 746410, at *16 (Exemption 1 and 3 rulings). Items 8-9 of the Request seek a classified Joint FBI-CIA Intelligence report, as well as classified portions of the September 1, 2005 letter from Robert Mueller and Porter Goss to Senator Pat Roberts and the executive summary of the report. Item 10 of the Request seeks the full OIG report, which according to the Note is classified at the Top Secret/SCI level. The records sought in items 1-3 also contain classified information.

The Request states that "disclosure of the requested documents and ESI . . . [w]ill not necessitate classified information to be revealed, either because the information sought is not classified, should not have been classified, or no longer warrants classification." The Request provides no basis for this statement, and the court in *Broward Bulldog* recently upheld the FBI's withholding of classified information from the 2012 FBI Summary Report.

Accordingly, the FBI objects to the Request and Subpoena to the extent they call for disclosure of classified information. 28 C.F.R. § 16.26(b)(3).

    b. *Confidential Sources and Investigatory Records*

The Touhy regulations also provide that "disclosure will not be made" if it would reveal (a) "a confidential source or informant, unless the investigative agency and the source or informant have no objection," or (b) "investigatory records compiled for law enforcement purposes, [disclosure of which] would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." 28 C.F.R. § 16.26(b)(4)-(5). The Request also implicates information in these categories.

*In re Terrorist Attacks*, 03 MDL 1570
Interim Response to Touhy Request to FBI
Page 10

The district court in *Broward Bulldog* upheld the FBI's withholding from the 2012 FBI Summary Report of information relating to a confidential source, namely information provided to the FBI by a foreign source under implied and/or express assurances of confidentiality, *see* 2017 WL 746410, at *17 (Exemption 7(D) ruling), information that would reveal investigatory techniques and procedures that could reasonably be expected to risk circumvention of the law, *id.* (Exemption 7(E) ruling), and information compiled for law enforcement purposes the disclosure of which could reasonably be expected to interfere with enforcement proceedings, *id.* at *17-18 (Exemption 7(A) ruling). Other investigatory records sought in the Request—which seeks the entire investigatory file of the subfile investigation—likewise contain protected information concerning confidential sources and law enforcement techniques and procedures.

Accordingly, the FBI objects to the Request and Subpoena to the extent they call for disclosure of protected information concerning confidential sources or investigatory records the disclosure of which would interfere with enforcement proceedings and/or reveal investigative techniques and procedures the effectiveness of which would thereby be impaired. 28 C.F.R. § 16.26(b)(4)-(5); *see also* 28 C.F.R. § 16.26(a)(2) (addressing disclosure of privileged information, including information protected by the law enforcement privilege); Fed. R. Civ. P. 45(d)(3)(A)(iii).

   c.  *Information Protected by Statute, Rule of Procedure or Specific Regulation*

The Touhy regulations also provide that "disclosure will not be made" where it would violate a statute, a rule of procedure, or a specific regulation. 28 C.F.R. § 16.26(b)(1)-(2). The Request implicates protected information in these categories as well.

For example, the National Security Act of 1947, as amended, 50 U.S.C. § 3001 *et seq.*, protects information pertaining to intelligence sources and methods. Because the Request seeks records concerning national security investigations conducted by the FBI, those records will include information related to intelligence sources and methods protected by National Security Act. The 2012 FBI Summary Report contains such information, as the district court in *Broward Bulldog* held. *See* 2017 WL 746410, at *16.

In addition, to the extent you are requesting documents about an individual, as that term is defined in the Privacy Act, 5 U.S.C. § 552a(a)(2), the FBI cannot provide you with such documents absent an appropriate written waiver under § 552a(b), or other information showing that the records you seek can be produced under the provisions of the Privacy Act.

*In re Terrorist Attacks*, 03 MDL 1570
Interim Response to Touhy Request to FBI
Page 11

      Accordingly, the FBI objects to the Request and Subpoena to the extent they seek records or information the disclosure of which would violate a statute, including but not limited to the National Security Act, the Privacy Act, the income tax laws, 26 U.S.C. §§ 6103, 7213, and the Bank Secrecy Act, 12 U.S.C. § 3401 *et seq.*; a rule of procedure, including but not limited to the grand jury secrecy rule, Fed. R. Crim. P. 6(e); or a specific regulation. Due to the breadth of the Request, it would be unduly burdensome for the FBI to identify all the statutes, rules or regulations that may apply to specific information in the requested documents. The FBI reserves the right to assert any and all statutes, rules or regulations that may be applicable.

      d.  *Other Objections*

      The considerations set forth in 28 C.F.R. § 16.26 are not exhaustive. *See* 28 C.F.R. § 16.26(b) ("*Among the demands* in response to which disclosure will not be made by any Department official are those demands with respect to which any of the following factors exist . . . ." (emphasis added)).

      In addition to the objections outlined above, the FBI objects to the instructions included with the Subpoena to the extent they exceed the authority provided in Rule 45. For example, the instructions improperly purport to require the FBI to provide a privilege log and improperly purport to limit redactions to those based on common law.

      Due to the breadth of the Request, it would be unduly burdensome for the FBI to identify all the objections that may apply to specific information in the requested documents. The FBI reserves the right to assert any and all objections that may be applicable.

*Conclusion*

      For the reasons set forth above, we request that you narrow the Request and Subpoena to records pertaining to the specific allegations on which Judge Daniels and Magistrate Judge Netburn have permitted limited and targeted jurisdictional discovery, and explain how the particular records or groups of records requested relate to the specific allegations on which Judge Daniels relied in the March 28 Order, and why the PECs cannot obtain equivalent information from the Kingdom of Saudi Arabia or other sources. To the extent you seek records or information beyond the specific areas of discovery authorized by Judge Daniels and Magistrate Judge Netburn, we request that you provide additional information to allow this Office to evaluate the relevance of each requested record or category of records. In particular, we request information explaining how the particular records or groups of records requested are relevant to other specific pending claims in the litigation, why the requested discovery is appropriate under the applicable court orders governing such claims, and why the PECs cannot obtain

*In re Terrorist Attacks*, 03 MDL 1570
Interim Response to Touhy Request to FBI
Page 12

equivalent information from other sources.  Finally, we request that the PECs consider other ways in which they could significantly narrow the scope and breadth of the Request, which as currently framed would impose an undue burden on FBI for the reasons described above and would require a long period of time to process.

      Should you provide the required information, this Office will review it in light of the Touhy regulations and make a determination as to the propriety of the requested release of records and information.  To be clear, this is not a final decision on the Request.  We note that the Touhy regulations are not intended to, and do not, create any right or benefit, substantive or procedural, against the United States.  The FBI reserves its rights under 28 C.F.R. §§ 16.21-16.29, and your compliance with the regulations may not obligate the FBI to release the records or information you seek.

      Please feel free to contact us if you have any questions concerning this matter.

      Very truly yours,

      GEOFFREY S. BERMAN
      United States Attorney for the
      Southern District of New York

By:   */s/ Sarah S. Normand*
      SARAH S. NORMAND
      JEANNETTE VARGAS
      Assistant United States Attorneys
      86 Chambers Street, 3rd Floor
      New York, New York 10007
      Tel.  (212) 637-2709/2678
      Fax  (212) 637-2730
      sarah.normand@usdoj.gov
      jeannette.vargas@usdoj.gov

cc:   Robert T. Haefele, Motley Rice LLC
      James P. Kreindler, Kreindler & Kreindler
      Jerry S. Goldman, Anderson Kill, P.C.