## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

May 25, 2018

Geoffrey S. Berman, U.S. Attorney
Sarah S. Normand, Assistant U.S. Attorney
Jeanette Vargas, Assistant U.S. Attorney
Office of the United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007

     RE:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Geoffrey, Sarah and Jeanette:

     We write to meet and confer concerning the May 2, 2018 letter ("Interim Response") from the U.S. Department of Justice ("DOJ") to the document and ESI request and subpoena to the Federal Bureau of Investigation ("FBI"), from the MDL 1570 Plaintiffs' Executive Committees (the "PEC") dated April 6, 2018 ("the Subpoena").

     We disagree that the Subpoena seeks irrelevant or otherwise non-discoverable information.  However, in an effort to address the issues you raise, we request that you provide us with clarification as to the asserted applicability of certain statutes and privileges that you have identified.  Additionally, as detailed herein, we have identified certain aspects of the Subpoena that we can clarify and/or that we are amenable to narrowing in an effort to resolve some of the objections advanced, in order to avoid unnecessary motion practice.

     There are a number of issues for which we seek clarification from you as well.  In particular, the DOJ has not indicated if the FBI will be producing any documents whatsoever in response to the Subpoena, or when it anticipates that the FBI will begin producing responsive documents, whether on a rolling basis or otherwise.  In certain cases, we see no reason why the FBI could not respond immediately to certain aspects of the Subpoena, at least on a partial basis.  For example, we believe the FBI should immediately produce a copy of the 2012 FBI Summary Report with the redactions based on FOIA exemptions b6 and b7C (which already were deemed improper by the district court in the underlying FOIA litigation) removed, while a review of the

Office of the United States Attorney
May 25, 2018
Page 2
_____

other redactions in this key document is conducted on an expedited basis.  In addition, the DOJ
has not indicated when the FBI will be providing a privilege log as required by Rule 45(e)(2)(A).

### 1.      Objections Based on Failure to Comply with Touhy Regulations

The Subpoena complies with the DOJ's *Touhy* regulations set forth in 28 C.F.R. § 16.21-
16.29.  Specifically, 28 C.F.R. § 16.22(d) provides "*when information other than oral testimony
is sought by a demand, the responsible US Attorney shall request a summary of the information
sought and its relevance to the proceeding*."  The Subpoena complies with 28 C.F.R. § 16.22(d)
by providing the required summary as well as the relevancy of the requested information.  The
DOJ acknowledges as such on page three of the Interim Response when it cites 28 C.F.R. §
16.22(d) for the proposition that "*[a]mong other things a party seeking records from DOJ
employees must provide a summary of the information sought and its relevance to the
proceeding*."  The Interim Response does not articulate what "other things" the PEC is required
to provide and the DOJ's *Touhy* regulations do not list any other requirements.  Accordingly, the
PEC has complied with the DOJ's Touhy regulations.

### 2.      Relevancy, Proportionality and Undue Burden

The DOJ objects to the Subpoena based on relevancy, proportionality and undue burden
(May 2, 2018 Ltr. at 3-7).  The permissible scope of discovery is "any non-privileged matter that
is relevant to any party's claim or defense and proportional to the needs of the case, considering
the importance of the issues at stake in the action, the amount in controversy, the party's access
to relevant information, the party's resources, the importance of the discovery in resolving the
issues, and whether the burden or expense of the proposed discovery outweighs its likely
benefit."  Rule 26(b)(1).  Proportionality and relevance are co-joined concepts, meaning the
greater the relevance of the information at issue the less likely discovery will be found to be
disproportionate.  *Homeward Residential, Inc. v. Sand Canyon Corp.*, 2017 WL 4676806,
(S.D.N.Y. 2017).  While the party seeking discovery has the initial burden of establishing that
the discovery is relevant to a claim or a defense, the party resisting discovery has the burden of
establishing that the production of the requested documents would be disproportionate or unduly
burdensome.  *Maron v. City of New York,* 2016 U.S. Dist. Lexis 165536 (S.D.N.Y. 2016) (party
resisting discovery must show to the court's satisfaction that requiring the production of
documents would be disproportionate or unduly burdensome).

To allay the DOJ's concerns regarding relevancy, we have indicated the relevance of
each specific request in the attached Exhibit "A," as well as aspects of the Subpoena that we are
willing to narrow in order to avoid motion practice.  Nevertheless, we take this opportunity to
address the main thrust of the DOJ's relevancy arguments, including the notions that the March
28, 2018 Memorandum Decision and Order addressing discovery *of Saudi Arabia* in some way
excluded third party discovery, or that discovery *of the FBI* is cabined to nine specific topics
discussed in that Order.

The DOJ's interpretation of the March 28 Order and Judge Netburn's rulings are
incorrect.  To the contrary, Judge Netburn specifically rejected Saudi Arabia's attempts to

preclude discovery from the FBI when she stated "I do not know that [Saudi Arabia] has standing to object to your efforts to uncover discovery from the FBI." (April 12, 2018 Conference, at p. 23, lines 11-13). To the extent Judge Netburn had any concerns about discovery directed to the FBI, they related to timing and not to relevancy. (April 12, 2018 Conference, at p. 23, lines 13-18). Furthermore, Judge Netburn expressly limited her cabining of discovery to discovery served on the Kingdom when she stated "I do intend to cabin you to those areas. So, if you serve discovery on the Kingdom…." (April 12, 2018 Conference, at p. 21, lines 5-11).

Rule 26(b)(1) permits discovery relevant to "*any party's claim or defense*." Any narrowing of discovery by the Court applies strictly to Saudi Arabia as a foreign sovereign claiming immunity under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq.* The FSIA provides jurisdictional defenses and related protections that are unique to foreign sovereigns. *Em Ltd. v. Republic of Argentina,* 695 F.3d 201, 210 (2d Cir. 2008) (sovereign immunity protects a sovereign from the expense, intrusiveness and hassle of discovery). These unique protections do not extend to the FBI. Indeed, the DOJ's relevancy objections are antithetical to Second Circuit FSIA precedent that encourages discovery from third parties as an alternative to burdening foreign sovereigns.

Given the above and Judge Netburn's actual statements concerning discovery to the FBI, we believe both the interests of the 9/11 families and survivors and of the FBI would be better served if the FBI withdrew its relevancy objections based on any claim that the discussion in the March 28 Order in any way eliminated long settled rights enshrined in the Federal Rules to obtain discovery from the FBI in accordance with Fed. R. Civ. P. 26(b)(1) and Fed. R. Civ. P. 45.

The FBI also asserts proportionality objections in general, yet fails to articulate why the requested discovery is disproportionate under Rule 26(b)(1) or would impose an undue burden under Rule 45, as the FBI is required to do as the party resisting discovery. In any case, we believe any claim of disproportionality or undue burden unsustainable, for the following reasons.

First, of the ten categories of documents at issue in the Subpoena, four seek specific individual documents that can be readily located and reviewed with minimal burden. Another seeks documents located within a specific subfile investigation, discussed in the 2015 Report of the 9/11 Review Commission. The review and production of these discrete documents and collections of documents would impose no apparent undue burden on the FBI, and the FBI has made no attempt to establish any objection on that basis.

Second, the DOJ has been monitoring *In re Terrorists Attacks* since its inception and is fully aware of the importance of the issues at stake, the amounts in controversy, and the importance of the requested discovery in resolving the issues involved in the litigation. The September 11th attacks were a seminal moment in U.S. and world history. Therefore, it is not

Office of the United States Attorney
May 25, 2018
Page 4
_____

grandstanding to say that this litigation is uniquely important and complex.[1]  Indeed, Congress enacted the Justice Against Sponsors of Terrorism Act ("JASTA"), overwhelmingly overriding a Presidential veto, to provide plaintiffs *in this case* and those like them "with the broadest possible basis … to seek relief against … foreign countries … that have provided support, directly or indirectly" to terrorist organizations, JASTA § 2(b), and, in particular, to "allow the victims of 9/11 to pursue some small measure of justice by giving them a legal avenue" against "foreign sponsors of terrorism." *Cong. Record*, at S2846 (May 17, 2016) (Sen. Schumer).  The FBI's "proportionality" objections to the Subpoena are manifestly unsustainable in the face of Congress' clear pronouncements concerning the importance of this litigation, and actions to amend longstanding law to ensure that it could proceed.

Next, the FBI's undue burden objections are unsubstantiated and conclusory.  To establish undue burden, a party resisting discovery must provide credible evidence to substantiate its objections by doing more than simply atoning that the discovery requests are burdensome.  Rather, the objecting party must clarify and explain its objections and provide support thereof.  *See Arias-Zeballos v. Tan,* 2007 U.S. Dist. Lexis 40245, 4 (S.D.N.Y. 2007).  The Interim Response asserts boilerplate undue burden objections without the required support.  We ask the FBI either to withdraw its undue burden objections or provide support for those objections.

The FBI also objects on undue burden grounds to production of the items in response to Request No. 5, 8-10 based on the process of seeking declassification of any information in the responsive records.  We respectfully disagree – a classification review in and of itself can never establish undue burden.

For all of the foregoing reasons, we request that the DOJ withdraw the FBI's proportionality and undue burden objections.

### 3.    Objections Based on Touhy Regulations, FOIA Exemptions and Statutes

The *Touhy* regulations cited in the Interim Response are DOJ internal housekeeping regulations that "do not confer a separate privilege upon the government, nor create a legal basis to withhold information pursuant to a federal subpoena." *In re Motion to Compel Compliance with Subpoena Directed To The Dep't of Veteran Affairs,* 257 F.R.D. 12, 15 (D.D.C. 2009).  As such, the *Touhy* regulations cited in the Interim Response do not provide a separate basis for any procedural or substantive objections to the Subpoena.

_____
[1] In this regard, it also is worth noting that the National Commission on Terrorist Attacks Upon the United States ("9/11 Commission") expressed its expectation that records provided to the Commission by the FBI and other federal agencies would be declassified, to the maximum extent possible, *by January 2, 2009*.  This mandate reflected the 9/11 Commission's recognition that a full and transparent accounting of the circumstances surrounding the September 11th attacks was a matter of our national interest, and would serve our national security.  It is more than unsettling for the FBI and DOJ to assert, nearly seventeen years after the attacks, that it cannot allocate resources to undertake work that already should have been done, and years ago at that, to ensure that the Court has access to critical evidence necessary to evaluate its jurisdiction in this important litigation.

Office of the United States Attorney
May 25, 2018
Page 5
_____

 While it is not exactly clear from the Interim Response, it appears that the DOJ objects to the Subpoena based on the classified information, confidential sources, and investigative records exemptions under FOIA.  (May 2, 2018 Ltr. at pp. 8-10).  We recognize that the DOJ's *Touhy* regulations and the FOIA exceptions provide certain authority for the FBI's systematic classification and protection of certain information when the information is sought pursuant to FOIA.  *See* 5 U.S.C. § 552(b)(1)(3).  However, FOIA exemptions are inapplicable in the context of civil discovery because documents exempt from FOIA disclosure "are not automatically privileged in civil discovery."  *Kamakana v. City and County of Honolulu,* 447 F.3d 1172, 1185 (9th Cir. 2006); *Freidman v. Bache Halsey Stewart Shields, Inc.*, 738 F.2d 1336, 1344 (D.C. Cir. 1984).  *See also Robert v DOJ,* 439 Fed. Appx. 32, 34 (noting difference between FOIA and civil discovery).  Therefore, the DOJ is obligated to produce responsive documents unless the DOJ establishes that such documents are protected from disclosure pursuant to an applicable common-law privilege.  We request that the FBI withdraw its objections based upon the aforementioned FOIA exemptions or provide us with authority establishing that the FOIA exemptions are a basis to preclude or limit the DOJ's response to a subpoena.

### A.  The Classified Information Privilege

 The FBI objects to the production of many of the requested documents based on national security.  As set forth above, FOIA exemptions do not provide a proper basis for an objection to a Rule 45 subpoena.  Rather, to the extent that DOJ wishes to object based on national security, the DOJ has an option – it can avail itself of the state secret privilege.  *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 404 (D.C. Cir. 1984).  The state secret privilege requires the DOJ to assert (1) a formal claim of privilege; (2) lodged by the head of the department who has control over the matter; (3) after personal consideration by that officer. *United States v. Reynolds*, 345 U.S. 1 (1953).  To the extent the FBI intends to invoke the state secrets privilege for any documents in issue, we would ask how it intends to proceed in that regard.

### B.  The Deliberative Process, Confidential Informant and Law Enforcement Objections

 The FBI identifies the deliberate process, confidential informant, and law enforcement privileges as privileges that may apply to certain information sought by the Subpoena.  (May 2 Ltr. at p.9-10).  The FBI, as the party invoking these privileges, has the burden of establishing their existence.  *Dinler v. City of New York,* 607 F.3d 923, 944 (2d Cir. 2010); *DGM Invs. Inc. v. N.Y. Futures Exchs., Inc.,* 224 F.R.D. 133, 139 (S.D.N.Y. 2004).

 Each privilege must be substantiated to shield disclosure of information, something the FBI has not done yet.  For example, to invoke the confidential informant privilege, the government must show that the information withheld is a communication that would tend to reveal the identity of persons who furnish information to law enforcement officials.  *Roviaro v. United States,* 353 U.S. 53 (1957).  By way of further example, to invoke the law enforcement privilege three requirements must be met:  "(1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion that the

Office of the United States Attorney
May 25, 2018
Page 6
_____

privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified with an explanation why it properly falls within the scope of the privilege." *DGM Invs.*, 244 F.R.D. at 193 (quoting *In Re Sealed Case,* 856 F.2d 268, 271 (D.C. Cir. 1988)).

"It is axiomatic that the burden is on the party claiming the protection of a privilege to establish those facts that are essential elements of the privileged relationship and that the burden is not discharged by mere conclusory or *ipse dixit* assertions." *Micillo v. Liddle & Robinson, LLP,* 2016 U.S. Dist. Lexis 67247 (S.D.N.Y. 2016) (party seeking protection of investigatory law/enforcement privilege waived the privilege by failing to provide a timely privilege log with sufficient affidavits and other support showing how the requested information fell within the privilege).

Moreover, these privileges are qualified and not absolute. *Dinler,* 607 F.3d at 945 (law enforcement privilege); *Citizens Union of New York v AG of New York*, 269 F. Supp. 3d 124, 158 (S.D.N.Y. 2017) (deliberate process privilege). Since these privileges are not absolute, we are entitled to an opportunity to explain why the need for requested information overcomes any such invoked privilege. In Exhibit "A", we have detailed why the documents sought by the Subpoena are directly relevant to the claims at issue in this action.

Please advise as soon as possible which, if any, of the privileges the FBI is going to formally invoke and provide the required support for each privilege so that we may determine if the privilege is applicable and/or whether the need for the information overcomes the FBI's desire to shield the information for discovery.

### C. The Privacy Act and Bank Secrecy Act Objections

The FBI objects to the Subpoena based on the Privacy Act, 5 U.S.C. § 552a and the Bank Secrecy Act, 12 U.S.C. § 3401 *et seq.* Please clarify how these statutes are applicable to this case as neither appear to afford the FBI the right to withhold otherwise discoverable information.

The Privacy Act prohibits government agencies from disclosing records that any agency maintains within a "system of records." 5 U.S.C. § 552a, i.e., a group of records from which information can be retrieved by the name of an individual or some other identifying feature. 5 U.S.C. § 552a(5). The Privacy Act contains a specific exclusion for release of materials pursuant to a court order of a court of common jurisdiction. 5 U.S.C. § 552a(b)(11); *United States v. W.R. Grace,* 455 F. Supp. 2d 1140, 1147 (D. Mont. 2006) (Privacy Act did not obligate the government to withhold documents responsive to the Court's discovery order). To the extent that the information requested in the Subpoena falls within the scope of the Privacy Act, the information can be and must be disclosed in circumstances such as this – where a valid subpoena exists.

Office of the United States Attorney
May 25, 2018
Page 7
_____

     **4.**    **Conclusion**

       For the reasons discussed above, we believe the 9/11 plaintiffs have complied with all aspects of the DOJ's Touhy regulations, and that the discovery sought through the Subpoena is relevant and proportionate to the matters in issue in the litigation.  Further, we do not believe the FBI has presented valid grounds for resisting the Subpoena, and that the FBI should commence efforts to comply with the Subpoena promptly.  As a first step, we would reiterate our request that the FBI produce a copy of the 2012 Summary Report with all privacy redactions removed as soon as possible.

       We would, of course, be amenable to meeting in person to discuss these matters, in the hopes of bridging any areas of dispute and finding a compromise that serves the interests of the 9/11 families and survivors and the United States government.  We see no reason why those interests should not be aligned in these circumstances, and thus believe a compromise solution should be reachable.

Respectfully,

COZEN O'CONNOR

  */s/ Sean P. Carter*_____
Sean P. Carter, Esquire
1650 Market Street, Suite 2800
Philadelphia, PA 19103

MDL 1570 Plaintiffs' Exec. Committee for
Commercial Claims

KREINDLER & KREINDLER

  */s/ Andrew J. Maloney*_____
Andrew J. Maloney, Esquire
750 Third Avenue, 32nd Floor
New York, NY 10017

MDL 1570 Plaintiffs' Exec. Committee for
Personal Injury and Death Claims

MOTLEY RICE

  */s/ Robert T. Haefele*_____
Robert T. Haefele, Esquire
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464

MDL 1570 Plaintiffs' Exec. Committee for
Personal Injury and Death Claims

cc:    Members of the Plaintiffs' Executive Committees (via Email)

LEGAL\33878951\1

*In Re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN)

## EXHIBIT A

| Subpoena Categories | Relevancy of the Documents | 9/11 Plaintiffs' Proposals Regarding Modification of the Subpoena |
|---|---|---|
| (1) Any and all records referring or relating to Omar al Bayoumi, Fahad al Thumairy, Mohdhar Abdullah, Omar Abdi Mohamed, Khalid Sowailem, the King Fahd Mosque, or the Western Somali Relief Agency; | The reasoning of the Court's decision denying Saudi Arabia's motions to dismiss centered on plaintiffs' allegations concerning Omar al Bayoumi, Fahad al Thumairy, Mohdhar Abdullah, and Khalid al Sowailem. In addition, the decision also specifically noted Thumairy's role at the King Fahd Mosque as relevant to Thumairy's roles for the Saudi government. Further, the 9/11 Commission concluded that 9/11 hijackers Nawaf al Hazmi and Khalid al Mihdhar spent time at the King Fahd Mosque during their critical first days in the United States.

The United States government's investigation of Omar Abdi Mohammed found evidence that Thumairy was performing an undisclosed portfolio of work on behalf of the Saudi government in the United States, and that Thumairy was supervising and directing a number of subagents, including Omar Abdi Mohammed, in those undisclosed capacities. FBI records relating to Omar Abdi Mohammed are thus | The 9/11 plaintiffs would be willing to narrow this request to Omar al Bayoumi, Fahad al Thumairy, Khalid Sowailem, Omar Abdi Mohammed, and the King Fahad Mosque, provided that the FBI will commit to conduct a search and produce documents responsive to category four in accordance with Fed. R. Civ. P. 45.

The 9/11 plaintiffs are confident that FBI records relating to those four individuals and one entity have already been collected and are readily identifiable and retrievable. |

1

| | relevant to the inquiries concerning the existence, nature, and scope of Thumairy's agency on behalf of the Saudi government, and the identity of subagents he may have enlisted to assist the hijackers.<br><br>The Western Somali Relief Agency is an entity FBI investigated for terrorist connections in the aftermath of the September 11th attacks. | |
|---|---|---|
| (2) Any and all PENTTBOM records referring or relating to Omar al Bayoumi, Fahad al Thumairy, Mohdhar Abdullah, Omar Abdi Mohamed, Khalid Sowailem, the King Fahd Mosque, or the Western Somali Relief Agency; | *See* above. | The 9/11 plaintiffs would be willing to eliminate this category of documents, provided that the FBI will commit to conduct a search and produce documents responsive to category one, as modified under the proposal above, and category four, in accordance with Fed. R. Civ. P. 45. |
| (3) Any and all communication records (including but not limited to phone, email, and fax) and financial and banking records of Khalid al Mihdhar, Nawaf al Hazmi and Anwar al Aulaqi (prior to and on September 11, 2001); | The Court specifically referenced plaintiffs' allegations that Thumairy and Bayoumi provided support to al Mihdhar, and al Hazmi, including through subagents like Aulaqi, a "covert recruiter for al Qaeda," Decision at 21. | The 9/11 plaintiffs believe this category is appropriate as presently framed. |
| (4) Any and all records referring or relating to the work and investigation of the PENTTBOM subfile team, as referenced on pp. 101-103 of The 9/11 Review Commission | The subfile investigation is a subfile created within the FBI's broader 9/11 investigation focusing on individuals who are known to have provided substantial assistance" to 9/11 hijackers | The 9/11 plaintiffs believe this category is appropriate as presently framed. |

| | | |
|---|---|---|
| Report, attached as Exhibit A to your request; | Nawaf al Hazmi and Khalid al Mihdhar.  The three subjects of that investigation are Fahad al Thumairy, Khalid al Mihdhar, and the as-yet unidentified individual who "tasked" them to assist the hijackers.  The investigation has identified various subagents whom Thumairy and Bayoumi enlisted to assist the hijackers.  An additional focus of the inquiry centers on the roles Thumairy and Bayoumi were performing for the Saudi government while in the United States.<br><br>The subfile investigation focuses on the precise persons, activities, transactions, and relationships discussed in the Court's decision, and is of obvious relevance. | |
| (5) The 2012 FBI Summary Report referenced at footnote 330 of The 9/11 Review Commission Report; | This is a key report prepared by the PENTTBOM subfile team referenced above summarizing their investigation of Thumairy, Bayoumi and other Saudi government individuals. | The 9/11 plaintiffs believe this category is appropriate as presently framed. |
| (6) Any and all records referring or relating to any person(s) referenced in the 2012 FBI Summary Report as "subjects" of the investigation described in that report; | *See* above statements as to categories four and five. | The 9/11 plaintiffs believe this category is appropriate as presently framed. |

| | | |
|---|---|---|
| (7) Any and all records referring or relating to the person(s) "who tasked al-Thumairy and al-Bayoumi with assisting the hijackers," according to the 2012 FBI Summary Report; | *See* above statements as to categories four and five. | The 9/11 plaintiffs believe this category is appropriate as presently framed. |
| (8) The Joint FBI-CIA Intelligence report assessing the nature and extent of Saudi government support for terrorism, prepared and submitted in accordance with the Intelligence Authorization Act for FY 2004, Classified Annex S. 1025/S. Report 108-44; | *See* statements above and in relation to category 8 below. | The 9/11 plaintiffs would be willing to discuss a potential narrowing of this category to particularly relevant aspects of the report, and would ask the FBI to provide a table of contents or similar description of the subjects and sections of the report to assist them that effort. |
| (9) The September 1, 2005 letter[1] from Robert Mueller and Porter Goss to Senator Pat Roberts, enclosing the FBI-CIA Intelligence Report assessing the nature and extent of Saudi government support for terrorism, prepared in accordance with the Intelligence Authorization Act for FY 2004, Classified Annex S. 1025/S. Report 108-44; and | The Kingdom of Saudi Arabia filed a redacted version of this document in support of its motion to dismiss on immunity grounds, arguing, among other things, that it refuted the 9/11 plaintiffs' theories of non-immunity relating to the activities of Thumairy, Bayoumi, and others. Counsel for the Kingdom cited this document again in support of arguments offered by the Kingdom in relation to jurisdictional discovery proceedings during a hearing on May 24, 2018. The document, and the full report it summarizes, is thus of obvious relevance to the | The 9/11 plaintiffs believe this category is appropriate as presently framed. |

---

[1] As used in the Subpoena and here, the "letter" includes the Executive Summary that accompanied the cover letter. The Executive Summary appears to have been identified as page 2 of the letter.

| | jurisdictional discovery proceedings that are ongoing, and more broadly to both a "claim" and "defense" in the litigation as to the Kingdom. In addition, the letter and related report are relevant to the 9/11 plaintiffs' claims against alleged non-governmental organizations such as the International Islamic Relief Organization ("IIRO"), Muslim World League ("MWL"), Al Haramain Islamic Foundation, World Assembly of Muslim Youth ("WAMY"), and individual defendants associated with those entities. | |
|---|---|---|
| (10) The November 2004 U.S. Department of Justice, Office of Inspector General ("OIG") report titled "A Review of the FBI's Handling of Intelligence Information Related to the September 11 Attacks (November 2004)," the unclassified version of which was attached to your request as Exhibit E. | This report addresses evidence and findings relating to the investigations concerning the potential involvement of Omar al Bayoumi, Fahad al Thumairy, and related actors in the 9/11 attacks. | To the extent the FBI is agreeable to the other compromise proposals outlined above, the 9/11 plaintiffs would be willing to limit their request for the OIG report to portions of the report that pertain to Thumairy and Bayoumi; the Saudi government persons who were superior to them; their subagents; and, any of the 9/11 hijackers. |

LEGAL\36372689\1

5