J5DJTERC                        Teleconference

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   IN RE:  TERRORIST ATTACKS ON            03 MD 01570 GBD SN
    SEPTEMBER 11, 2001
4

5   ------------------------------x

6

7

8                                           May 13, 2019
                                            11:00 a.m.
9

10

11

12  Before:

13                      HON. SARAH NETBURN,

14                                      U.S. Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

J5DJTERC                    Teleconference

1              (Teleconference in Open Court)

2              THE COURT:  Good morning, everybody.  Please be

3    seated.

4              (Case called)

5              THE COURT:  I believe we have Mr. Kry from MoLoLamken

6    on the phone.  Is that correct?

7              MR. KRY:  Yes, your Honor.

8              THE COURT:  Welcome.  Welcome to all of the people who

9    are here in the gallery.  I am always happy to have you in the

10   courthouse and the courtroom, so welcome.

11             The purpose of today's conference is one of

12   scheduling.  So I have a letter from April 16th that was

13   updating me on the status of the FBI production, and I believe

14   that the FBI and the plaintiffs' executive committee have

15   differing views how we should proceed.  I understand from this

16   letter that the plaintiffs' executive committee intends to file

17   one or more motions in connection with Department of Justice's

18   production.

19             Mr. Pounian, you will be taking the heat on this?

20             MR. POUNIAN:  Yes, your Honor, at this point.  Mr.

21             Carter is also going to have some things to say.

22             THE COURT:  Make sure the microphone is close enough

23   so everyone in the room can hear.

24             MR. POUNIAN:  We asked for this hearing because we

25   reached an impasse for the first time with the FBI regarding

J5DJTERC                    Teleconference

four witnesses that we requested documents regarding four Saudi

government employees who had ties to al-Bayoumi and al-Thumairy

in Southern California in the Year 2000.

We must bring this motion to compel with regard to

those four Saudi government employees as to whom we requested

documents, but there is also another question, your Honor, that

has been raised that seems to be percolating in the case now.

There is a serious question that we have as to whether the FBI

intends to produce any documents regarding the Saudi government

employees who worked with al-Bayoumi and al-Thumairy to provide

assistance to the 911 hijackers.

I wanted to raise with your Honor the various issues

that we see that are now coming to the fore in the case because

we reached a point where there are potential impasses that are

about to happen, and we need to hear from the FBI regarding

those.  We feel like there has been a lot of delay in the case,

delay in terms of a response on certain key issues in the case,

first and foremost of which is the 2012 FBI report.

If I may, your Honor, if I could pass this up to the

court?

THE COURT:  This is the report that was referenced

when we appeared together and there was a question whether it

was going to be produced in an unredacted form?

MR. POUNIAN:  That's correct, your Honor.  It is on

the third tab, the tab of this group of documents.  Your

J5DJTERC                         Teleconference

 1   Honor's familiar with this report.  We had discussed it before,

 2   and if we go to the third tab, there is a document, it is a

 3   four-page document, and on the third page is a synopsis of the

 4   subfile investigation, your Honor.  The name of that subfile

 5   investigation is blank.  It is classified, and on this page it

 6   refers to that subfile investigation name three times.

 7          We're not interested in the name, your Honor, but we

 8   are interested in the particular information regarding this

 9   investigation, and it says the main subjects of this

10   investigation, which is any individuals known to have provided

11   substantial assistance to the hijackers.  The name of the

12   individuals is al-Thumairy, al-Bayoumi, who your Honor is

13   already familiar with, and a third and possibly fourth person,

14   so there is a third man there that is listed that is the

15   subject of our discovery.  We have been asking for over a year

16   for an unredacted copy of this report.

17          On the final page of the document and in the very

18   final paragraph, it has the information regarding this third

19   man as to whom the information is still being withheld from

20   production.

21          It says that this third person had some contacts with

22   al-Bayoumi, and also there is evidence that this person tasked

23   al-Thumairy to meet with assisting the hijackers.  We believe,

24   your Honor, this third person is a Saudi government official,

25   superior to al-Thumairy and al-Bayoumi, and we have been asking

J5DJTERC                         Teleconference

1   for this document for over a year, as I said.

2          THE COURT:  May I stop you for a second.  You said,

3   "We're not interested in the name."  What name is it you're not

4   interested in?

5          MR. POUNIAN:  The name of the investigation.  They

6   classified, on Page 3 it says synopsis of -- blank.  That is

7   the name of whatever the FBI has assigned to this particular

8   investigation of Saudi government officials who provided

9   assistance to the hijackers.  That is the code name, but we are

10  not asking for the code name.  We're asking for the

11  information.

12         THE COURT:  Thank you.

13         MR. POUNIAN:  In the final paragraph I said we have

14  got the new copy of this document just a week ago from the FBI.

15  They produced an interim version of this to us, and in the

16  interim version there are essentially no changes from the

17  document that is before your Honor right now.

18         They have made on this final page, on the final key

19  page which provides the information regarding this third man,

20  there is no additional information that has been provided by

21  the FBI.

22         Now they have told us that this is an interim decision

23  that they've made and that they're waiting to make a final

24  decision, but the things they're citing that they need to make

25  a final decision on are approvals from a foreign government,

J5DJTERC                          Teleconference

1    and the only things that require approval in this document from

2    a foreign government have nothing to do with the final page of

3    the document.  There are no approvals necessary.  We know from

4    the codes on this document there are no approvals necessary

5    from a foreign government to release any of this information.

6            The decision is solely the decision of the FBI's, and

7    they have had over a year to make the decision, and we're still

8    waiting for that decision, and if the decision is no, we're not

9    going to release the information, we want to know that as soon

10   as possible so we can file a motion on this in addition to

11   those four other employees that I mentioned, your Honor, as to

12   whom they will not release any documents.

13           If I could turn, your Honor, to those four employees,

14   they were all Ministry of Islamic Affairs officials who worked,

15   who were in California and worked, one of whom was a superior

16   to al-Thumairy, three of whom worked under al-Thumairy and all

17   four of them had specific ties to al-Bayoumi during the key

18   period of time in late 1999 and 2000.

19           One of them was a superior of al-Thumairy named

20   al-Jraithen, who your Honor has heard about.  He is the

21   gentleman who checked into a hotel with al-Bayoumi.  He met up

22   with al-Bayoumi and checked into a hotel in December 1999,

23   three weeks before the hijackers arrived, and that was a hotel

24   a block away from the King Fahad Mosque where al-Thumairy

25   installed by Saudi Arabia as the Imam.

J5DJTERC                      Teleconference

1        We are interested in getting the documents the FBI has

2   as to al-Jraithen.  There are two other gentlemen part of this

3   group of four.  There is Al-Sudairy, who your Honor has already

4   heard about before, and they worked under al-Thumairy and they

5   also had moved to San Diego during the time of the relevant

6   events where they were assisted by al-Bayoumi and they moved

7   into the same rooming house that the hijackers lived in in San

8   Diego.

9        So we have requested this information.  The FBI has

10  completely refused to produce any documents regarding the four

11  individuals.  Your Honor, there are other questions that we

12  have in addition to these four.  We have asked for documents

13  regarding two officials at the embassy.  One is Ahmed

14  al-Jarrah, and the other is Kalib al-Sowailem, and we have

15  questions.  We have not seen any documents.  They don't seem to

16  have any objection as to those two officials, who both had

17  contacts with al-Thumairy and al-Bayoumi.  We haven't heard any

18  objection yet.

19       However, we haven't seen any of the key documents that

20  we would expect to find from the FBI in this case and we're

21  waiting.  So we need to know are they going to produce those

22  documents regarding government officials?

23       In addition, there are other documents.  This is an

24  investigation.  The code name investigation is about Saudi

25  government officials, about al-Thumairy and this third man.

J5DJTERC                    Teleconference

1   This is a 1912 document.  There are documents from each year

2   after that, not exactly like this document, but they're reports

3   that are prepared.  There are trip reports and other

4   analytic-type documents that are ordinarily prepared by the FBI

5   in an investigation such as this.  None of them have yet been

6   provided, and we don't even know whether they're in the

7   pipeline coming out from the FBI, whether they're reviewing

8   them.

9            So we need to make a motion about this, need a

10  straight answer from the FBI on the to 2012 report, whether

11  they'll going to release it or not, the final page, the key

12  information, and what is going on with the other embassy

13  employees and what is also going on with these other analytic

14  documents, other reports that the FBI is holding.  That is the

15  basic point, your Honor.  Thank you.

16           THE COURT:  Thank you.

17           MR. CARTER:  Just a few points.

18           Mr. Pounian has given you a lot of the specifics of

19  where we are now.  I certainly want to take a step back because

20  I think this is dropped in the court's lap without a whole lot

21  of context.  The background of this, the original FBI

22  investigation was the Pentagon Twin Towers bombing

23  investigation.  Within the course of that investigation, the

24  FBI began in the first instance looking at al-Bayoumi

25  al-Thumairy and others.

J5DJTERC                    Teleconference

1          Now, we would expect, based on normal FBI procedures,

2     that sub-files would have been created within the Penttbom

3     Investigation for subjects such as al-Bayoumi and al-Thumairy.

4     Fast forward to 2007.  The FBI opened a special subfile

5     investigation to focus on whether or not the circle of

6     conspirators who provided support to Alzamari and al-Thumairy,

7     the hijackers, may have been broader than originally suspected.

8          We know about the subfile investigation, or first

9     learned about it from a report called the 911 Review Commission

10     Report that was issued in 2015.  It explains specifically that

11     this was an investigation focused on the circle of conspirators

12     who helped Alzamari in New York, and it identifies a number of

13     people who are of high relevance to that investigation,

14     specifically al-Bayoumi, al-Thumairy and others.

15          And to the point that Mr. Pounian just made in

16     describing why Mr. al-Bayoumi is significant in the context of

17     the subfile investigation, it specifically notes he assisted

18     Alzamari as well as al-Sadham and al-Sudairy during respective

19     times in San Diego.  From this report -- and you have this at

20     Tab 2, your Honor -- from this report we know that al-Sadham

21     and al-Sudairy are relevant actors within the context of this

22     subfile investigation based on their engagements with

23     al-Bayoumi.

24          The 911 Review Commission Report, in turn, included a

25     footnote referencing the 2012 summary report that your Honor

J5DJTERC                    Teleconference

1    has before you, and at that time all we knew about the summary

2    report was that it included a specific quote that al-Thumairy

3    had immediately assigned a person to take care of Alzamari and

4    al-Sudairy when they arrived in the United States, which was a

5    significant data point, advancement of the investigation now

6    having al-Thumairy identified in that way.

7          The 2012 summary report was then, your Honor, released

8    in 2016 in redacted form in response to a Touhy FOIA request

9    from a journalist.  It then included the details Mr. Pounian

10   has described of both al-Bayoumi, al-Thumairy and video who

11   tasked the hijackers are known to have provided substantial

12   assistance.

13         That all leads us and led up to the issuance of the

14   five plaintiffs of the subpoena.  We issued the subpoena within

15   a handful of days within the court's March 28, 2018 decision.

16   The subpoena included 10 demands.  Four of those demands were

17   for specifically identified documents, individual documents.

18   One was the 2012 summary report.  Six of the remaining demands

19   sought categories of documents, mostly documents from either

20   the Penttbom file, the subfile or other FBI investigative files

21   relating to al-Bayoumi, al-Thumairy, the King Fahad Mosque

22   where the hijackers received the assistance, al-Sowailem and a

23   few other folks.

24         In response, the FBI told us that this is far too

25   broad, we could never possibly respond to this, and we entered

J5DJTERC                    Teleconference

1    into a series of negotiations where we attempted to modify the

2    subpoena down.  All of the modifications we offered were

3    essentially unsatisfactory to the FBI and Department of

4    Justice.  What the FBI instead proposed, they would engage in a

5    search for a subset of core documents relevant to the inquiry

6    described in Pages 18 to 23 of the Court's March 28, 2018

7    decision.

8           We had considerable apprehension about that at the

9    time till last summer when we were last discussing it because

10   it is murky to us what exactly was happening.  We don't know

11   the criteria they are using to conduct the searches.  We are

12   not entirely clear what repositories are being searched.  We

13   are not really clear on the criteria that are being used to

14   assess whether or not documents are relevant to the inquiry and

15   the court's decision.  We don't believe our discovery on the

16   FBI is limited to the scope of discovery authorized of the

17   kingdom under the Foreign Sovereign Immunities Act, a very

18   different consideration.

19          We reached an impasse with regard to some specific

20   documents and people that we know of we asked the FBI for.  We

21   likely also are going to be seeking some clarification about a

22   few other issues.

23          One, we need some clarity about the methodology that

24   the FBI is using to conduct these searches so we can understand

25   a little bit better what it is using for search terms, how it

J5DJTERC                    Teleconference

1     is going about identifying documents they produce so us, so

2     they have some capacity to challenge any deficiencies in

3     methodologies being employed.

4          We need to know whether or not all of the relevant

5     records related to al-Bayoumi, al-Thumairy and other principals

6     were migrated over from the original Penttbom file to the

7     subfile.  We understand the FBI is looking essentially in the

8     subfile.  If a lot of stuff was left behind in the Penttbom

9     investigation, there is potential highly relevant information

10    is being excluded.

11         We know need to know where the FBI stands in this

12    process with some particularity.  They have identified an

13    approach that they were willing to undertake.  We just need to

14    know are searches still ongoing?  How many documents are still

15    slated for review?  And we need to have some sense of a

16    timeline for the FBI to complete its process because at the

17    end, the likelihood is that we're going to have some

18    disagreements potentially about objections.  The FBI has

19    asserted as basis for withholding documents, and we need to get

20    to a point in the process to litigate those as well.

21         We have the specific issues we reached impasse on now,

22    and also in the backdrop we have some of these questions about

23    methodology, timeline on those related issues we need to get

24    before the court.  Thank your Honor.

25         THE COURT:  Thank you, Mr. Carter.

1        MS. NORMAND:  Good morning, your Honor.

2        I think I would also like to start by stepping back a

3   bit, and I appreciate that counsel pointed the court to the

4   subpoena itself.  It did seek basically 10 categories of

5   records, one of which was any and all records referring or

6   related to the work and investigation of the subfile team.

7        So while they did seek some specific records, they

8   sought an extraordinarily broad amount of records.  As we had

9   indicated to the court and to the plaintiffs previously, the

10  subfile investigation is one that involves multiple subjects

11  and over a thousand serials, which is a term used to describe a

12  file which may, in turn, contain attachments.  So we're talking

13  about an extraordinarily broad request.

14        As counsel also indicated, the investigation is a

15  classified investigation.  Not only the name of the

16  investigation, but many of the subjects and the FBI's

17  activities in relation to that investigation are classified.

18  This really is an extraordinary request, that it is not an

19  ordinary civil discovery demand.

20        In response to the subpoena in May, we identified in a

21  lengthy document our objections to the subpoena and to the

22  Touhy request and provided an interim response.  We did have

23  some discussions in which we asked for plaintiffs to

24  significantly narrow their request.  They largely declined to

25  narrow the request, and so what the FBI proceeded to do was to

1  identify a subset of records that the FBI believed to be

2  potentially relevant to the narrow issues on which the court

3  has authorized limited jurisdictional discovery of the Kingdom.

4       Those core records, as we sometimes call them,

5  included the 2012 report, it included portions of other

6  identified reports in the subpoena that pertain to al-Bayoumi

7  and al-Thumairy.  It identified, it included various interview

8  reports, other kinds of records of a more analytical nature,

9  all of which were tied to the specific questions on which the

10 court had authorized limited jurisdictional discovery, and we

11 have been clear about that to the plaintiffs throughout.

12      The United States Attorney asked the FBI to conduct a

13 privileged and declassification review of those four records,

14 which has been ongoing since the fall.  We have a team of

15 individuals from FBI headquarters as well as field personnel,

16 assisted by the U.S. Attorney's Office, that has been reviewing

17 documents line-by-line.

18      Most if not all of the records are classified records,

19 and so the materials that have been produced have had to be

20 reviewed line-by-line and produced through a process that

21 requires multiple layers of review to ultimately sign off by

22 through the declassification review procedures of the FBI.

23      We have now produced four tranches of records.  The

24 first began in I believe it was November, and the most recent

25 tranche of records was produced on May 1st.  So far we have

J5DJTERC                     Teleconference

1   produced 364 pages of records in redacted form.  We withheld --

2   we, the FBI -- has withheld eight records in full.  We provided

3   a privilege log with regard to the records that are withheld in

4   full, and the records that have been produced in redacted form

5   are coded with an accompanying heat that identifies the basis

6   for the redactions.

7          As for timing, we expect at least two further tranches

8   of records.  It may be more than two, but there are essentially

9   two categories of records that remain to be processed.  The

10   first is the remaining of the core records.  Those include

11   certain evidentiary materials that the plaintiffs have sought.

12   They include portions of a joint intelligence report, an OIG

13   report, the portions of those reports that pertain to the

14   matters on which the court has authorized jurisdictional

15   discovery and some other records of a more analytical nature.

16          We don't have a firm time-frame to finish production,

17   but the FBI is going to do its best to complete review of those

18   records within 60 days.  That is our firm goal.  Sometimes

19   things come up that make it more difficult to do that.  We have

20   learned that throughout this process.

21          I should add that some of the records involve equities

22   of other government agencies or foreign governments where

23   coordination is required for those outside of the FBI, and that

24   can take time.  That said, the FBI is really hoping to complete

25   its review of the core records, the subset of records, within

J5DJTERC                        Teleconference

1    60 days.

2            The second category of records remain to be processed

3    are banking and phone records.  With the court's permission, I

4    am going to let Ms. Vargas address that category of records and

5    our plan for those.

6            MS. VARGAS:  Good morning, your Honor.

7            Plaintiffs have also requested, as Ms. Normand alluded

8    to, phone and banking records for certain individuals.  We are

9    close to the end of our collection process for those records.

10   To date, we have gathered approximately 2500 pages of

11   responsive phone and banking records which we believe represent

12   the bulk of the records.  We are still conducting some limited

13   supplemental searches in a few locations, but once we have done

14   that, then our search will at that point be complete.

15           It appears that many of these records have been

16   obtained by grand jury subpoena, which raises some

17   complications.  Because these are grand jury records, they're

18   subject to the protections of Rule 6(e), and so we're unable to

19   turn those records over without obtaining a Rule 6(e) court

20   order.

21           Rule 6(e) requires that a petition for such an order

22   be filed in the court that originally issued the grand jury

23   subpoena.  Because these records were obtained many years ago,

24   it has proven to be a little tricky to determine which courts

25   issued which subpoenas for which records.  We have been doing

1    that analysis, and we have located at least three jurisdictions

2    that have issued grand jury subpoenas with respect to these

3    relevant records, and we are attempting to determine if there

4    are other subpoenas issued, and we hope we will be able to

5    identify all such subpoenas, although ultimately we may not be

6    able to do so.

7          THE COURT:  Would it be satisfactory, once you have

8    exhausted your efforts, to get a blanket order from me to

9    protect the FBI in the process more broadly?

10         MS. VARGAS:  Yes, your Honor, that is our plan for

11   those records, for which we can't link a particular subpoena to

12   a particular set of records.  Then we would hope we could come

13   to your Honor with those records and obtain a Rule 6(e) order

14   even if it's perhaps not exactly the procedure envisioned by

15   Rule 6(e) itself, but at this point that may be the only option

16   available.

17         With respect to the courts that we are are able to

18   identify the issuing jurisdiction, our current plan, if your

19   Honor approves, is to submit motions to transfer the venue of

20   those petitions to this Court pursuant -- and there is a

21   provision in Rule 6 that provides for that, it is Rule

22   6(e)(3)(G).

23         For example, if a grand jury subpoena was issued in

24   the Southern District of California, we can file a petition and

25   a motion to transfer that petition to this Court, since the

1    records are sought for use in this judicial proceeding, and

2    that court can then transfer the petition here for your Honor

3    to issue the relevant Rule 6(e) order.

4        We assume at that point the PECs could support such a

5    motion and file papers in support of why those documents were

6    needed with respect to this litigation, which is a showing

7    obviously the FBI is not in the best position and the

8    plaintiffs are better.

9        THE COURT:  Is that the most expeditious way to file a

10   motion for a transfer of the issue and then have this Court

11   rule on the merits rather than just file a motion in the first

12   instance in the issuing court?

13       MS. VARGAS:  This is what their Rule 6(e) procedures

14   envision.  There is a provision in Rule 6(e) that allows for a

15   court to authorize disclosure if the records are needed in aid

16   of a judicial proceeding, but there is a subpart that says if

17   the judicial proceeding is in another jurisdiction, in another

18   court, the court shall transfer the petition to the court which

19   has the judicial proceeding.

20       I think there are provisions that allow for the

21   originating court to have perhaps an advisory opinion if

22   needed, if there were some issues with the confidentiality that

23   one court wanted to advise the other court, but that is the

24   procedure that is set forth in the rules.  That is why we were

25   contemplating proceeding in that fashion.

1          THE COURT:  Thank you.  Ms. Vargas, how quickly, if

2     you identified at least three of the core issues, can we get

3     those motions to transfer up and running?

4          MS. VARGAS:  Yes, your Honor, we are working on that

5     now, and so we hope to have motion papers fairly shortly, but

6     we are working on that in the short term.

7          THE COURT:  They say beauty is in the eye of the

8     beholder.  What is your, "fairly shortly"?

9          MS. VARGAS:  In the next two weeks we hope to have

10    papers filed.

11         THE COURT:  Yes, Ms. Normand.

12         MS. NORMAND:  I would like to return to some of the

13    specific matters that Mr. Pounian raised.

14         I guess, first of all, I would begin with the four

15    individuals or perhaps five individuals he has identified.  I

16    think it is important to make the point that three of those

17    individuals, as we understand them, Mr. al-Jraithen, Mr.

18    al-Sadham and Mr. al-Sudairy, are individuals as to whom this

19    Court has ruled are not a proper subject of jurisdictional

20    discovery.  That was the basis for the FBI's position and is

21    the basis for the FBI's position that further searches for

22    documents related to those individuals are not warranted.

23         From the efficiency's response to the subpoena to the

24    request, we have made it clear that the court's limitations on

25    jurisdictional discovery have guided the FBI's searches, and in

J5DJTERC                    Teleconference

1    our view it is not proper to ask the FBI or any government

2    agency to search more broadly than the limits of jurisdictional

3    discovery authorized by Judge Daniels and this Court, and that

4    is the basis for the FBI's position that it would not conduct

5    additional searches beyond the core records that it gathered

6    last summer for those individuals.

7          As to the other two, search of those two individuals

8    we understand are among those individuals as to whom the court

9    has permitted discovery or at least there is no dispute as to

10   that, and records concerning those individuals were part of the

11   FBI's search, so the FBI has searched for records concerning

12   those individuals.  I will add, I believe the FBI has produced

13   at least one record that refers to one of those individuals,

14   although I don't want to go into detail in court because the

15   documents themselves are subject to a protective order.

16         So that is the government's position, that the scope

17   of discovery from the FBI which, of course, the United States

18   is a sovereign as well, in addition to the foreign sovereigns

19   and the state sovereigns, of course, but that discovery of the

20   FBI should not be broader than discovery of the Kingdom itself.

21         The other piece is the 2012 summary report.  As Mr.

22   Pounian indicated, the FBI, at plaintiffs' request, has

23   produced an interim version of that document.  It has not yet

24   made a final determination as to the document in part because

25   there is information in the document that has to be coordinated

J5DJTERC                    Teleconference

1   with a foreign government.  Therefore, we don't believe

2   litigation is appropriate at this time with regard to that

3   document, but I would add, Mr. Pounian pointed you to the last

4   page of the document, and I believe the version he has

5   identified is the version that was produced under FOIA.

6           If you look, your Honor, there are codes on this

7   document that reflect the FOIA markings in the litigation per

8   the FOIA matter.  They refer to B-1 and B-3.  Now I am looking

9   at Page 3 and 4 of this document, and you'll see there are

10  redactions there, B-1 and B-3, on both pages.  I believe these

11  are redactions Mr. Pounian has pointed out to the court.  Those

12  redactions were litigated in a Freedom of Information Act

13  litigation that followed this FOIA request, and the court in

14  that case upheld the classification and the withholding of that

15  information as properly and currently -- as well as protected

16  from disclosure by the National Security Act, which is a

17  separate statutory protection in addition to classification.

18          That District Court decision is reported at 2017

19  WestLaw 746410, a 2017 decision from the Southern District of

20  Florida.  There is currently an appeal pending on various

21  issues in that case, including I believe this document before

22  the 11th Circuit.

23          This is information that another court has previously

24  determined to be properly classified as protected from

25  disclosure by statute.  The FBI, nevertheless, reviewed this

J5DJTERC                    Teleconference

1    document and at least at this time has determined the

2    information is not being declassified.  However, I will add

3    that there are additional documents remaining in the last group

4    of core records that pertain to issues that overlap with the

5    2012 report, and our view is that the FBI should be permitted

6    to complete its review of those records, and then to the extent

7    that there is going to be litigation over withholdings

8    potentially to include this information in the 2012 report,

9    that it will be most efficient and most appropriate to wait

10   until the FBI has issued a final determination both as to the

11   2012 report and as to other documents, including the later

12   documents that remain to be reviewed, as I said, the FBI is

13   going to do its best to complete that review within 60 days.

14        Obviously, if there are roadblocks along the way, we

15   can advise the court, but that is the schedule that we envision

16   and we will try our best to articulate.

17        THE COURT:  I think everybody is eager to get these

18   issues resolved, everybody in the courtroom.

19        Why would it not be efficient to work on parallel

20   tracks and so that the plaintiffs' executive committee can file

21   their motion?  That will be on the assumption that they're not

22   going to be doing anything else.  That will give the FBI the

23   benefit of their thinking as well why those documents are

24   necessary.  We can schedule a briefing so that their brief is

25   filed before your 60-day deadline, I'll call it, to produce

J5DJTERC                    Teleconference

1    your final tranche of documents.

2              And then you'll have the opportunity to make a final

3    decision as to what you're producing, and to the extent you're

4    not producing all or some of the documents, you will then file

5    your opposition to the motion.  It seems to me rather than wait

6    60 days, then have you say we're not producing everything, and

7    then set a schedule for the PECs, I would rather have them

8    working on this now, under the assumption they have all they're

9    going to get and maybe some of the issues will be mooted by

10   your conduct, but otherwise we'll move forward.

11             MS. NORMAND:  I would say two reasons, your Honor:

12             First of all, we haven't yet had any opportunity to

13   meet-and-confer with the plaintiffs regarding -- they haven't

14   met and conferred with us regarding specific withholdings.  We

15   obviously understand they're interested in this information

16   from the 2012 report, and certainly we understand why they're

17   interested in that, but as to any other documents that they are

18   interested in, we have not yet had those meet-and-confer

19   sessions.  We don't know which documents they intend to

20   challenge the withholding of, which redactions they're

21   concerned with.  These are things ordinarily parties would

22   meet-and-confer about before motion practice is filed.

23             Number two, the FBI needs to complete its review, and

24   if the plaintiffs make a motion to compel, we understand that

25   the plaintiffs take the position that the United States would

J5DJTERC                      Teleconference

1    need to assert the State Secrets Privilege in order to withhold

2    these documents in litigation.  We don't necessarily agree with

3    that position.  We believe that Touhy regulations and the

4    existing privileges and protections permit the government to

5    withhold the materials pursuant to Touhy regulations.

6             However, if ultimately the government needs to go

7    through that state secrets process, that is a lengthy process.

8    As the court may be aware, the State Secrets Privilege can only

9    be asserted by the head of the agency, which in this case would

10   be the Attorney General is the head of the Department of

11   Justice, of which the FBI is a component.

12            The privilege can only be asserted upon personal

13   consideration by the head of the agency of the documents or

14   information in question.  There are procedures in place at the

15   Department of Justice that require, before the Attorney General

16   is to review a state secrets assertion, for a committee to

17   review and sign off on it.

18            Those procedures need to be followed in order to

19   assert the State Secrets Privilege in response to any motion to

20   compel, and those procedures should only be invoked once and

21   not piecemeal.  The Attorney General should have an opportunity

22   to review all of the records that are potentially implicated

23   before making a final determination as to any privilege

24   assertion rather than doing it piecemeal.

25            The FBI will not have completed its review until 60

J5DJTERC                        Teleconference

1    days.  That's certainly our goal.  We wouldn't be in a position

2    to trigger the State Secrets process with regard to entirety of

3    the records until that review is completed.  For those reasons,

4    we think it makes sense to put off a motion to compel until the

5    FBI has completed its process.

6           That said, I do think that there are issues that are

7    probably ripe for the court's consideration now.  We believe,

8    for example, that the issues regarding the three individuals

9    who are mentioned, Mr. al-Jraithen and al-Sadham, Mr.

10   al-Sudairy, those are questions of the scope of discovery that

11   has been authorized by the court and its application to the

12   FBI.  There the parties have reached an impasse, and to the

13   extent the plaintiffs PEC wish the FBI to conduct additional

14   searches, and the FBI has declined to do that given the court's

15   prior rulings on those individuals, those are issues that we

16   think make sense to brief now.

17          THE COURT:  Thank you.  Yes, Mr. Pounian.

18          MR. POUNIAN:  Your Honor, I believe we got an answer.

19   I figured we would piece through that.  I think they're not

20   going to produce the final page of the 2012 report.  If that is

21   correct, your Honor, we should bring a motion to compel the

22   production of the final page of the 2012 report.

23          THE COURT:  I thought I heard her say they were still

24   undergoing that review.  It may ultimately be they're not going

25   to --

J5DJTERC                    Teleconference

1              MR. POUNIAN:  They're undergoing a review because

2       they're getting approvals from a foreign government.

3              THE COURT:  Correct.

4              MR. POUNIAN:  The codes from the document that relate

5       to a foreign government don't have anything to do with the

6       final page of the document, and I may have -- I think I heard,

7       perhaps we could get an answer right now, are they going to

8       produce the final page unredacted of the 2012 report?  That is

9       the question.

10             MS. NORMAND:  Your Honor, that information has not

11      been declassified as of now.  However, the report has not yet

12      been finally reviewed by the FBI, and so I am not in a position

13      to say the final determination has been made as to any portion

14      of the report that has not been released.

15             THE COURT:  Can you answer whether or not the last

16      paragraph on Page 4 of the report, whether or not that, the

17      current status of that that you're awaiting a final, a final

18      decision by the FBI or whether or not you are awaiting a

19      decision by a foreign government?

20             MS. NORMAND:  That portion is not related to the

21      foreign government coordination I discussed earlier.  The

22      document as a whole has only been released in interim form at

23      plaintiffs' request.  Among other things, we are waiting for

24      coordination of the foreign government.

25             THE COURT:  But just because the foreign government

J5DJTERC                        Teleconference

1    hypothetically would say we are fine with you releasing

2    everything, that would not answer the question whether or not

3    you will release the last paragraph, is what Mr. Pounian is

4    most --

5              MS. NORMAND:  That's right, that's right.

6              THE COURT:  Is it fair to say that you are not

7    intending to release that final paragraph or that it is still

8    an issue for consideration?

9              MS. NORMAND:  Your Honor, I cannot say today that a

10   final determination has been made as to that, and the reason

11   is, as I mentioned earlier, there are additional materials that

12   require approval, documents that overlap some of this

13   information, and so I expect that a final determination will be

14   made as to not only this document, but those other materials at

15   the same time.  I am not in a position to say that a final

16   determination has been made even as to the last page of the

17   document.  That said, I want to be clear, there has been no

18   decision to declassify that information at this time.

19             It may very well be ultimately the information is not

20   produced.  I don't want to be unclear about that.  I am not in

21   a position to tell the court or the plaintiffs that a final

22   determination has been made as to the document.

23             THE COURT:  Is it your understanding -- what you just

24   said to me -- part of the determination whether or not to

25   declassify this report will be informed by decisions about

J5DJTERC                    Teleconference

1    other documents that are in the final tranche?

2              MS. NORMAND:  I believe that is a fair

3    characterization, your Honor, because there are documents in

4    the final tranche that overlap reasonably some of the same

5    issues as this one.

6              THE COURT:  Thank you.

7              MR. POUNIAN:  Your Honor --

8              THE COURT:  You have as much clarity as we can get.

9              MR. POUNIAN:  -- I have to note we asked specifically

10   for this document over a year ago.  I believe at the first

11   conference with your Honor last May, Mr. Carter spoke about

12   this report.  There has been discussions about it for a year,

13   and yet we are now here with an interim version of it and still

14   wanting more detail on an issue that is critical and key and

15   goes right to the heart of the jurisdictional discovery in the

16   case.  I don't think we're getting a straight answer at this

17   point, your Honor, but I'll move on to the next issue.

18             Last September after the subpoena, we gave the FBI a

19   list of eight witnesses, eight Saudi government employees as to

20   whom we wanted them to zero in and produce discovery.  We gave

21   them certain facts regarding those witnesses, and they started

22   doing that process.  They had two tranches in which they

23   provided some information, and then we learned just last month

24   that as to three of the people, we would get nothing.  We hear

25   now it is because of your Honor's ruling last November

1  regarding discovery with regard to the Kingdom.

2          Now, the question is, is there relevant information in

3  the FBI files relevant to this case?  The plaintiffs don't have

4  the information.  We are seeking discovery from the FBI.  The

5  FBI investigated all these individuals.  Each one of them has

6  ties to al-Thumairy and al-Bayoumi in California at the key

7  time of the key events.  Two of them stayed in the same rooming

8  house with the hijackers.

9          So we believe it is critical to get this discovery,

10  and I understand there is a prior ruling of this Court with

11  regard to the Kingdom that we may seek to reconsider with your

12  Honor, but we need the information from the FBI in part to do

13  that.  We don't have any other source of the information other

14  than from the FBI.

15          There is no reason for them to be holding back on a

16  subpoena from the plaintiffs in this case if they have the

17  information and it is relevant to the process here.  I can't

18  tell you what is in the files there, but I know that the FBI

19  investigated each one of these three people, al-Souailem and

20  al-Sudairy because they had ties at the critical time.

21  Al-Jraithen came from Saudi Arabia to visit with al-Bayoumi and

22  with al-Thumairy and I believe to make the arrangements for the

23  hijackers to arrive three weeks later in California.

24          I believe it is critical information, and if they have

25  documents about it, we ask them to be produced via a protective

1    order to protect the information.  I don't understand what

2    prejudice there is to the FBI at this point.

3         Also with regard to the documents in this case, Ms.

4    Normand said they're all classified.  From what we understand,

5    any document that mentions the name of the code name of the

6    operation is classified automatically.  It could be a document

7    about a routine interview of a witness at a hotel.  Every

8    document that mentions the code name of the operation is

9    classified automatically.  Every document in this subfile

10   investigation of Saudi government officials is necessarily

11   classified simply because of that one title on the top of the

12   document that has the name of the operation on it.

13        Now, the government says they produced 364 pages to

14   date, and it has been over a year, your Honor.  The production

15   started, it was delayed and it started in November.  We are

16   aware from our own research that the government routinely

17   produces in other litigation 500 pages a month up to 10,000

18   pages a month they can process, the FBI can process in response

19   to other litigation.  In the Hillary Clinton email litigation,

20   they produced 500 pages a month, the same for the David

21   Petraeus litigation.

22        Other cases, up to 10,000 per month when there has

23   been a court order imposing that.  We still don't know what is

24   in the pipeline, your Honor, and that is what Mr. Carter

25   pointed out earlier that gives us pause because we don't know

J5DJTERC                      Teleconference

1    exactly what they're going to produce, what they plan, what is

2    on the list.

3            So we have a lot of uncertainty and we're trying to

4    nail down as many things as we can because we don't want the

5    process to keep going and get rolled over into a situation

6    where we are left several months from now and there is a lot of

7    pressure to get things wrapped up when we don't yet have the

8    information and we have got to go to the Attorney General of

9    the United States to have him review documents.  We would like

10   to get that done now.

11           THE COURT:  It seems to me there are at least two ways

12   to proceed.  One way would be to have a short briefing schedule

13   on the question of these three individuals and potentially on

14   the 2012 report.  I understand the government hasn't made a

15   final determination, but we can proceed on the assumption that

16   its final determination is the same as its interim

17   determination and seek a ruling on that.

18           Or I think we can do "and/or," we can brief all of the

19   issues in an entire motion to compel.  I am talking and

20   thinking at the same time.  I guess based on what you just said

21   to me, my proposed schedule that I threw out to Ms. Normand

22   probably doesn't work for you.

23           What I had suggested was you file your motion in 45

24   days, and that will give the government an opportunity to both

25   complete its final tranche and to get the benefit of your

authorities on some of the legal questions, and then they can

respond to the motion.  Some issues might be mooted by the

production and otherwise they'll just respond to the motion.

I guess the question for you, notwithstanding your

desire to move as quickly as possible, which I share, is does

it make sense for you to file your full motion to compel until

you've received the final production, and if the final

production isn't coming for 60 days, then would you rather have

this preliminary motion on these individuals and potentially

the 2012 report and then set a deadline for production and then

turn around for your motion to compel?

MR. POUNIAN:  A preliminary motion makes the most

sense, your Honor, because if we bring a broad motion to compel

now, we're going to be dealing with things we don't know, we

are not going to know the range of the production until it is

over, so I think there is going to have to be a motion at the

end of the production in any event if it is not satisfactory

because we don't know, we don't know what documents are in the

pipeline.

With regard to these individuals and with regard to

the 2012 report, I think we can file a motion, if that's your

Honor's decision?

MR. CARTER:  Could I add one thing?

I think Mr. Pounian is right, and I think it largely

aligns with what Ms. Normand said.  There are a range of

J5DJTERC                    Teleconference

1    objections that the FBI has indicated may be invoked with

2    regard to documents.  One is relevancy, which is the basis, as

3    we understand it, for declining to respond to these three

4    individuals.  There are potential objections based on

5    invocation of the Law Enforcement Privilege, the burden, and I

6    don't think that we necessarily will have all the architecture

7    around this to address these issues until we get towards the

8    end of the process.

9           What I would believe would be the best course is for

10   us to focus on the specific areas in the past.  We may seek

11   leave to address the core methodology issue.  One of the

12   reasons we can't file an omnibus motion is we don't understand

13   how they're going about deciding what is a core document that

14   is going to be incorporated into the searches.  So I think if

15   we focused on those issues, we will advance the process

16   considerably.

17          THE COURT:  How quickly can you file a motion with

18   respect to the three individuals and the report?

19          (Off-the-record discussion)

20          MR. CARTER:  I am trying to figure out when we have

21   agreed to be out of the country or a number of us out of the

22   country on depositions.  I think right about 30 days from now a

23   number of us will be out of the country.

24          THE COURT:  Send a letter to us in the next two days.

25          MR. CARTER:  In the 30, 45 days range when we would be

1    ready from then, your Honor?

2             THE COURT:  Okay.  I will take my leave from you on

3    that.  I expected you to say more like 10 days from now is what

4    I expected you were going to say, so maybe that is not

5    possible, but I think you should be working on these motions

6    now.  Who knows what is going to be produced in the final

7    tranche, but you have some sense, I think.  You may not be

8    getting everything you want.

9             So we are going to do this in two phases, but I think

10   you're a team of lawyers.  People should be working on these

11   motions now so that once the second tranche has been produced

12   and the parties have had an efficient meet-and-confer on that,

13   you can get that motion filed within a matter of weeks as

14   opposed to a matter of months.  I think that should be

15   everybody's goal here.

16            So why don't we do the following:  If you all can

17   meet-and-confer in the next 24 hours and get me a letter in the

18   next day or two with a proposed schedule for the first motion

19   to compel, which is going to be with respect to the three

20   individuals and the 2012 report, and you all should discuss a

21   briefing schedule.  Again my thinking is it should be something

22   like a couple of weeks, a couple of weeks to oppose, and a few

23   days to file any reply, but I'll let you all try and work

24   out -- the summer is coming.

25            MS. NORMAND:  Your Honor, we have no objection,

1    obviously, to the plaintiffs filing on their schedule and the

2    court's schedule, but the government would, if the court is

3    anticipating the government would be potentially serving the

4    State Secrets Privilege in response to the motion to compel the

5    2012 report, that would require significant procedural work for

6    the Department of Justice.

7              It would be difficult and it would really be

8    impossible for us to respond on that two week time-frame if

9    that is what the court is envisioning.  We can certainly

10   respond more quickly on the scope questions that the plaintiffs

11   have raised here with regard to the three individuals.

12             THE COURT:  Can we do the following, because it sounds

13   like a States Secrets issue may be hung up in the larger

14   tranche and will need to be addressed then.  Again I am talking

15   and thinking at the same time, which is never a great idea, but

16   can we hold off on the State Secrets argument, I can rule on

17   the other argument, and then if there is a States Secrets

18   objection, we can deal with that on a later today.  It may be

19   they're not entitled to those documents for the reasons I

20   stated, the government is not required to produce them.

21             Is there any efficiency to that?

22             MR. CARTER:  Your Honor, information would be provided

23   to us in the context of the State Secrets assertion that would

24   inform our arguments in response to other positions, that would

25   be affidavits coming in that context that provide a certain

1    level of procedural protection that might inform the overall

2    arguments.

3            We do have some concern about segregating the State

4    Secrets from the other argument.  One of the difficulties and

5    frustrations after we served the subpoenaed in April of last

6    year, we emphasized the 2012 report was the highest order of

7    priority in this process.

8            When we were before your Honor last year in October,

9    we were told that it was expected that it would be processed to

10   whatever determination in the second tranche before the end of

11   the year.  It has slipped repeatedly, and mostly what we have

12   heard is there is a policy determination that needs to be made

13   with regard to that document.  That has been true for a year,

14   and it has also been true to the related documents that

15   concerns the same issues.

16           We would like to get to the point and have the

17   government go through its process to assert whatever grounds it

18   intends to invoke to withhold the document.  We think that this

19   issue needs to be elevated up to the ultimate decision-maker

20   sooner rather than later.

21           THE COURT:  All right.  If you can't agree on the

22   process, send me your competing proposals with respect to these

23   four areas of discovery in that first motion to compel, and

24   I'll issue a ruling.  I will wait and see whether you all can

25   work out a proposed schedule.  I would rather not wait.

1          MR. POUNIAN:  May I add one more thing.

2          I had a chance to talk with co-counsel, and I think

3     three weeks would be sufficient for us to file the motion.

4          THE COURT:  Okay.  Let me give you guys an opportunity

5     to speak outside with the government and see if you can come up

6     with a schedule that works for everybody, but I think if we can

7     do it in three weeks, that will be certainly my preference.

8          MS. NORMAND:  I ask for clarification.  You referred

9     to four areas of discovery.  Are you referring to the three

10    individuals and the 2012 report?

11         THE COURT:  I am.  I am going to order that the

12    government produce that final tranche within 60 days from

13    today.  Hopefully, a court order will urge you.  I agree the

14    plaintiffs' executive committee that we need to move that

15    process further along.

16         So today is May 13th, so that production will be due

17    on Friday, July 12th.  Hopefully that will also help you all in

18    your effort with respect to the second motion that is

19    anticipated.  So the plaintiffs' executive committee, to the

20    extent the government feels there has not been adequate

21    meet-and-confer with respect to the other documents that you're

22    seeking, this is also an opportunity to have that conversation

23    as well.  It seems you have been speaking, and maybe not with

24    specificity to the government's liking, so you can engage in

25    that process and I'll appreciate that as well.

J5DJTERC                         Teleconference

1            Anything further?

2            MR. CARTER:  No, your Honor.

3            THE COURT:  For the public who is here, I want to

4    point this out to you.  Behind you is a portrait of Louis

5    Freeh, who has served in many roles.  He was a District Judge

6    in this Courthouse and this was his courtroom.

7            He was also the Director of the FBI during that period

8    of time, and so he no longer serves in either capacity.  He is

9    a private citizen now doing legal work, but he was an FBI agent

10   and the Director of the FBI and a District Judge, and he was

11   also a former Assistant United States Attorney.

12           I was speaking with somebody about today's conference

13   just generally, and they pointed this out to me and noted that,

14   or told me the story that when Mr. Freeh was a young Assistant

15   United States Attorney, his first trial was in this courtroom.

16   The first person who testified was an FBI agent, it was in this

17   courtroom, and this was his courtroom when he was a District

18   Judge.

19           So he sat at the lawyers' table, he sat at the Judge's

20   Bench, and he sat in the witness box, wherever it is, all in

21   this courtroom.  I thought it was appropriate, though it was

22   just coincidental we are having today's conference to talk

23   about FBI's productions in a courtroom where Mr. Freeh spent a

24   lot of his professional career.

25           So I thought I would share all of that with you

J5DJTERC                          Teleconference

1   because this courthouse has amazing history, and I hope you

2   take advantage of some of the public flyers and other spaces.

3   I know on the 5th floor there is a lot of information you can

4   learn a little bit more about the courthouse, but I thought I

5   would mention it because I was staring at Mr. Freeh and he was

6   staring at me, through that portrait.  I thought you would

7   appreciate that story.  With that, I will get a letter from the

8   parties in the next 24 to 48 hours and we'll get scheduled

9   going for this.  Thank you.

10              (Court adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25