**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN)<br>ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977 (GBD)(SN)
*Bauer et al. v. al Qaeda Islamic Army, et al.*, 02-cv-7236 (GBD)(SN)
*Ashton et al. v. Kingdom of Saudi Arabia*, 17-cv-2003 (GBD)(SN)

**DECLARATION IN OPPOSITION TO THE OCTOBER 10, 2019**
**LETTER SUBMITTED BY THE RYAN AND MAHER PLAINTIFFS**

Dorothea M. Capone, Esq., hereby states under penalty of perjury that:

1.      It is with professional regret and personal sadness that I am compelled to submit

this Declaration in Opposition to the bold lies, falsehoods, misrepresentations and fabricated

accusations made by Patricia Ryan and Kathryn Maher ("the Ryan and Maher plaintiffs") in the

October 10, 2019 unsworn letter submitted by them to this Court (ECF No. 5202) in response to

the Court's October 3, 2019 Order (ECF No. 5186) directing them to provide the basis for their

opposition to the entry of a charging lien for Baumeister & Samuels.  This self-serving letter,

which includes no acknowledgement that the statements of the Ryan and Maher plaintiffs were

truthful or made under the penalty of perjury, appears to be submitted to this Court as "evidence"

that the Baumeister & Samuels attorneys "committed multiple acts of improper conduct" over

the course of an almost 18-year attorney/client relationship.   In truth, this particularly vile and

repugnant letter is simply the latest in a long line of accusations and assertions made by the Ryan

and Maher plaintiffs over the last year after they learned that other immediate family members of

their late husbands would receive additional money from the U.S. Victims of State Sponsored

Terrorism Fund ("USVSST Fund") in a second distribution and they would not.   For almost a

year now, they have directed their anger and bitterness about their inability to collect additional

money at the Baumeister & Samuels attorneys and staff.   With this letter, the Ryan and Maher

plaintiffs have gone well beyond the bounds of professional decency in choosing to threaten and

tarnish the remarkable and extraordinary reputations of the lawyers who have worked tirelessly

and advocated zealously on their behalf for over 17 years with little or no compensation simply

because they disagree with, and reject, the legal opinions we have provided to them related to the

USVSST Fund and their late husband's immediate family members' ability to recover

payments.[1]

      2.      As demonstrated below, the Ryan and Maher's accusations that the Baumeister &

Samuels attorneys committed even a **single** act of impropriety or misconduct – much less

"multiple acts" are baseless, unjustified and vindictive lies, and it is respectfully requested that

this Court dismiss them out of hand.

---

[1] As noted by this Court in its October 3, 2019 Order, and as was set forth in more detail
by the Second Circuit, poor client relations, differences of opinion or personality conflicts
between a client and his or her attorney are insufficient bases to bar an attorney from recovering
unpaid legal fees from an award in a client's favor.  *See Garcia v. Teitler*, 443 F3d 202, 212 (2d
Cir. 2006).   Of significance to the issues before this Court now as it evaluates the Ryan and
Maher plaintiffs' unproven, irrational and false allegations of impropriety and misconduct, the
Court can find guidance in what Judge Schofield noted in *Kovach v. City University of New
York*, No. 13-CV-7198 (LGS), 2015 WL 3540798, at *6 (S.D.N.Y., June 4, 2015) when she
stated that "… **without objective facts demonstrating that the strategic choices made … fell
below those which could be characterized as an exercise of professional judgment, the
discharge is not for cause**".  *Id.* (emphasis added) *citing Milner v. City of New York,* No. 10
Civ. 9384, 2012 WL 3138110, at *11 (S.D.N.Y. Aug. 2, 2012), *report and recommendation
adopted* 2012 WL 6097111 (S.D.N.Y. Dec. 10, 2012)*.

3.      In the first part of this Declaration, I will lay out the uncontested facts of Baumeister & Samuels' representation of the Ryan and Maher plaintiffs.   In the second part, I will address several of their lies, misrepresentations, falsehoods and fabrications.

### UNCONTESTED FACTS

4.      Baumeister & Samuels was retained by Patricia Ryan on June 26, 2002, and by Kathryn Maher on April 22, 2002.   Each of them was appointed to serve as the Executrix of their late husband's estates by the New Jersey Surrogate Court for Mercer County.   The terms of their retainer agreements with Baumeister & Samuels (which are identical to those executed by the personal representatives of each of the estates represented by the firm) provides for them to pay the firm 10% of any sum recovered from the September 11th Victims Compensation Fund of 2001[2] ("VCF"), and 15% of any sum recovered in litigation.

5.      As this Court is undoubtedly aware, in the days following the 9/11 terror attacks, Congress enacted the Air Transportation Safety and System Stabilization Act[3] which included a provision that established the VCF, an administrative program set up by the U.S. government to provide some compensation after deducting for collateral offset to individuals who were financially dependent upon the victims of the attacks as an alternative to litigation against the air carriers and security companies involved in the attacks.   The Act included a specific provision under which a claimant to the VCF was required to waive his or her right to file a civil action in any federal or state court for damages sustained as a result of the terrorist-related aircraft crashes of September 11, 2001.   As part of our representation of the Ryan and Maher plaintiffs (and indeed all of our clients), the firm engaged in a detailed, individualized analysis of each victim's

---

[2] 49 U.S.C. 40101, *et seq.*
[3] Pub. L. 107–42, 115 Stat. 230 (49 U.S.C. 40101 note).

earnings, occupation and future prospects working with experts to value the economic losses

sustained by each family.   This work involved gathering and digesting all relevant demographic

and occupational documents and tax filings, meeting with representatives from the various firms

whose employees were lost, as well as meeting with, and guiding the families through the

intricacies of the process.   While undertaking this effort on behalf of each individual family –

including the Ryan and Maher plaintiffs – the firm filed and served Notices of Claim with the

Port Authority of New York and New Jersey within the applicable statutory time frames to

preserve potential litigation claims.   Wrongful death actions were filed and served against the

airlines and security companies in the Southern District of New York by each of the personal

representatives to pursue wrongful death damages on behalf of every individual who may have a

claim under the applicable law.   After several months of analysis and legal research, and while

simultaneously meeting on many occasions with the VCF Special Master Kenneth Feinberg

(who would go on to serve as the original Special Master for the USVSST Fund), the firm met

and conferred with each of the personal representatives it was retained to serve – including the

Ryan and Maher plaintiffs – to present each of them with the pros and cons of both options **so**

**they could decide whether to continue to pursue claims in litigation or waive them and seek**

**compensation from the VCF.   Most of the firm's clients, and indeed the overwhelming**

**majority of the families of the 9/11 victims**, chose to dismiss their wrongful death lawsuits and

submit an application to the VCF.   **The parents and siblings of married victims were not**

**eligible to receive compensation from the VCF**.

6.     At the conclusion of several weeks of discussions and following their thoughtful

consideration, Patricia Ryan and Kathryn Maher each instructed Baumeister & Samuels to

withdraw their civil lawsuits and submit applications to the VCF.   The firm prepared and

submitted these applications with all required documentation before eventually meeting with the

Special Master and members of his staff – sometimes on multiple occasions – to discuss each

application and to advocate each family's individual situation.   At the conclusion of this

negotiated process, the firm was successful in securing some of the highest awards made by the

VCF for the Ryan and Maher plaintiffs in the amount of millions of dollars even after deductions

were made for their individual collateral offsets.[4]   After instructing the firm to accept the award

made by the VCF, Patricia Ryan requested that the firm reduce its retainer from 10% to 5%.

**Without hesitation and as a sign of our commitment to her, we agreed to her request and**

**voluntarily reduced our fee**.   Since the VCF award to Kathryn Maher and her children was

smaller in size due to the high value of the family's collateral offsets, **the firm voluntarily**

**waived its <u>entire</u> fee so that the total award could be distributed to the Maher plaintiffs**.

      7.     While the firm was engaged in the extensive individualized evaluations for each

of its clients to help prepare them to make an election to the VCF or to continue to pursue

litigation, we were approached by a group of attorneys we had previously worked with to discuss

the possibility of pursuing claims against state sponsors of terrorism and other defendants who

contributed to and/or facilitated the 9/11 terror attacks.   This request was based upon the firm's

reputation and expertise in the field of terrorism litigation after successfully recovering $2.7

billion dollars on behalf of the families of the victims of the Pan Am 103 bombing over

Lockerbie, Scotland.   Although the facts and associations differed significantly between the two

terror events, we undertook months of meetings and extensive legal research into the then current

state of the law and the possibility of success of such an undertaking.   Uncertain as to the legal

---

[4] Since the exact amounts of the VCF awards are kept confidential, the amounts of the awards made to the Ryan and Maher plaintiffs will be provided to the Court under seal should it wish to have this information disclosed as part of its evaluative process.

outcome of filing claims against the Kingdom of Saudi Arabia ("KSA") who was not designated

as a state-sponsor of terrorism, the clear belief that the Republic of Iran ("Iran") would never

enter an appearance in a U.S. court to litigate claims made against it, and the unsettled state of

the law in the terrorism field, the firm nevertheless felt a moral obligation to its clients, despite

the fact that there was practically no likelihood of financial success, and it filed an action in the

Southern District of New York on September 10, 2002 on behalf of the families of the decedents

it represented, including the Ryan and Maher plaintiffs, entitled *Bauer v. Al Qaeda Islamic Army,*

*et al.* (Civ.02-7236).   Shortly thereafter, we met and collaborated with other plaintiffs' counsel

from the Kreindler & Kreindler and Speiser Krause law firms, and the *Bauer* case was

consolidated into the *Ashton* action which had been filed by the Kreindler firm.   A Case

Management Order was entered by the Court in the consolidated action on June 16, 2004

appointing several individuals to serve on the Plaintiffs Executive Committee (ECF No. 248-2).

Both myself and Michel Baumeister were appointed by the Court to serve on the PEC for

Personal Injury and Death Claims, and we continue to serve in that capacity today.   As Your

Honor knows, litigation against various terror defendants has been proceeding in the Southern

District of New York for more than 17 years.   Throughout the pendency of this long, protracted

and unprecedented litigation, Baumeister & Samuels has devoted thousands of attorney hours

and expended hundreds of thousands of dollars – all without any expectation of recovering these

resources, but because we are morally committed to the overwhelming number of our clients

who – unlike the Ryan and Maher plaintiffs – support, trust and believe in us and our committed

dedication to the search for justice for their loved ones.   At no time over these 17 years have we

ever requested any funds from our clients to support this effort as we have carried the financial

burden ourselves.

8.      As part of the legal strategy and litigation tactics of the plaintiffs' attorneys

involved in the *Ashton* group, a decision was made several years ago to focus our efforts

primarily on pursuing the families' claims against the KSA.[5]   Although this effort has, and

continues to, consume a great deal of the attorneys' efforts, we nevertheless undertook to perfect

our clients' claims against the predictably defaulted Iran – including those of the Ryan and

Maher plaintiffs – and to engage in discovery with numerous other non-sovereign defendants.[6]

9.      To that effort, an Order securing a liability judgment against Iran was sought on

behalf of the *Ashton* plaintiffs and entered by this Court on August 30, 2015 (ECF No. 3014),

and the Court also entered judgments for the conscious pain and suffering endured by each of the

*Ashton* plaintiffs' victims prior to their deaths, together with awards for punitive damages and an

award for pre-judgment interest for the *Ashton* plaintiffs on March 8, 2016 (ECF No. 3226).

10.      During the pendency of the 9/11 terror litigation, other cases were brought against

state-sponsors of terrorism by families of victims who were killed and by individuals seriously

injured in terrorism attacks perpetrated outside of the U.S.   Many of these cases were filed in the

federal district court for the District of Columbia, and many name Iran as a state-sponsor of

terrorism involved in the planning or facilitation of these attacks.   As was the case in the 9/11

---

[5] Congress enacted the Justice Against Sponsors of Terrorism Act ("JASTA")(Pub. L. 114-222, 18 U.S.C. 233 on September 28, 2016, providing the families of the 9/11 victims with the legal basis to seek damages from the KSA.   The PEC is now engaged in extensive jurisdictional discovery against the KSA that has involved the review of thousands of pages of documents produced in Arabic.   Depositions began this summer in Los Angeles with additional depositions scheduled over the next few months.   In addition, the PEC is engaged in a protracted and difficult dispute with the FBI and the Department of Justice ("DOJ") over the production of relevant documents related to the 9/11 terror investigations.   At the present time, the parties are actively briefing this issue before this Court.

[6] Several depositions have taken place with non-sovereign defendants over the last several months primarily in Europe.

case, Iran has generally failed to enter an appearance in these cases, resulting in the entry of hundreds, if not thousands, of default judgments against it.   In late 2015, Congress created the USVSST Fund, known formally as the Justice for United States Victims of State Sponsored Terrorism Act[7] as another government operated administrative vehicle through which individuals holding judgments against a state-sponsor of terrorism – such as Iran – may be able to finally receive some financial compensation for their claims.[8]

11.      In early 2016, we had the first of many conversations with Kenneth Feinberg in his role as Special Master for the USVSST Fund.   Having worked extensively with Mr. Feinberg many years earlier when he served as the VCF Special Master, we reached out to him to discuss the Fund and the statute that enacted it.   **Recognizing that the language of the statute which created the Fund clearly and unambiguously excluded the payment of money to anyone who had received an award or award determination from the VCF, we nevertheless advocated repeatedly to Special Master Feinberg that such a prohibition was detrimental to the spouses and children of the victims since other immediate family members of the victims – including parents and siblings would be able to receive payments from the Fund.**   In addition, we stressed to him that families that elected to litigate their claims against the air carrier and security companies had similarly never received an award from the VCF which would permit them to receive compensation from the USVSST Fund.   Over and over, and for months that stretched into the Fall of 2016, Special Master Feinberg advised us that

---

[7] 34 U.S.C. 20144.

[8] The USVSST Fund was created by Congress, in large measure, as a result of the demands of these non-9/11 judgment holders, many of whom had been waiting to satisfy their claims for decades.   In 2016 there was no information available as to the amount of money that would be deposited into the USVSST Fund which could be used to make payments to judgment holders or as to the pro rata calculations that would be used to determine the amount of the payments eventually made in the first round in early 2017.

"his hands were tied" since Congress created the USVSST Fund and only Congress could change the language or eliminate the prohibition.   Both he and his staff, and representatives from the DOJ who were tasked with processing claims submitted to the USVSST Fund with the assistance of a third-party private vendor, repeatedly pointed us back to the statute's prohibitory language, the Regulations promulgated to operate the Fund, and the Frequently Asked Questions section of the USVSST Fund's website found at www.usvsstfund.com **all of which stated emphatically that an individual who received an award from the VCF or the James Zadroga Health and Compensation Act of 2019 (also known as "VCF2") could not receive a payment from the USVSST Fund**.[9]

12.     In the Spring of 2016, we contacted each of the personal representatives represented by our firm – including the Ryan and Maher plaintiffs – to discuss the USVSST Fund and to advise them since they and their children had received awards from the VCF, they could not receive a payment from the USVSST Fund.   We also advised them that they alone, acting in their capacity as the personal representative of their late husband's estate, had the legal power to petition the Court to enter default judgments for solatium damages for themselves, their children and their late husbands' parents and siblings.   We also advised them that should they fail to seek a grant of solatium damages from the Court, they could be criticized, challenged or sued by their late husbands' parents and siblings for failing to act to protect their interests.   Over the next several months and continuing into late Fall 2016, we continued to discuss these issues with many of our clients, including the Ryan and Maher plaintiffs who expressed frustration over what they perceived to be the exclusion of themselves and their children from recovering payments from this Fund.   Beginning then and continuing until we were notified by the Ryan

---

[9] *See* http://www.usvsst.com/faq.php.

9

and Maher Plaintiffs that they wished to replace our firm as counsel in early April 2019, we repeatedly stressed to them that the only way to eliminate this statutory prohibition would be through political action by the victims' families.   By the end of October 2016, each of the personal representatives represented by the firm – including the Ryan and Maher plaintiffs – instructed us to file a motion seeking awards for solatium damages for themselves, their children, and their late husband's surviving parents and siblings. This Court issued an Order granting this relief to the Ryan and Maher plaintiffs and their late husbands' surviving parents and siblings on October 31, 2016 (ECF No. 3387).

      13.    While other law firms representing families of the 9/11 victims believed that the statute's plain language cut off any possibility for an individual who had received an award from the VCF to collect additional money from the USVSST Fund and declined to submit applications to the Fund on their behalf in the Fall of 2016, Baumeister & Samuels nevertheless went ahead and began the complicated process of working with representatives from the USVSST Fund to file and thereafter perfect applications on behalf of each of its VCF awardees – including the Ryan and Maher plaintiffs.   This process involved the submission of a number of demographic documents that many families no longer possessed so we were required to obtain them from outside sources including state birth and death registries, securing estate documents from independent counsel, and providing notice as required by the Fund to family members of each claimant as part of an estate.[10]   **By letters dated November 28, 2016, the USVSST Fund notified the Ryan and Maher plaintiffs that their claims were eligible under the terms of the Fund but that no payment would be made to them.**   In February 2017, the Fund released

---

[10] Patricia Ryan and Katherine Maher's children were named in the Wills prepared by their late grandparents and they share in the payments made to their grandparents' estates by the USVSST Fund.

a statement on its website stating that it would make its first round of payments in the amount of approximately 13.67% of an individual's eligible judgment.

14.     On December 11, 2018, the USVSST Fund released a statement that it would make second round payments in early 2019 of another approximately 4.2% of an individual's eligible judgment.   This information about a second round of payments triggered an explosion of anger on the part of a small group of 9/11 widows – including Patricia Ryan and Kathryn Maher – who became even more angered and embittered that their late husband's parents and siblings were receiving more money.   Beginning with a distressing message sent by Ms. Ryan in the days before Christmas last year while we were attending memorial services at Arlington Cemetery to honor the 30th anniversary of the Pan Am 103 bombing and continuing for months until we received an email from her on April 2, 2019 discharging the firm, we have repeatedly and exhaustively explained to her that the anger directed towards us is misplaced since as we originally told her in late October 2016, it is Congress that has the power to change the language that prohibits her and her children from collecting money from the USVSST Fund.[11]   In email after email over several months, Ms. Ryan attacked and chastised the firm and its attorneys for not having "done the best" for the Ryan and Maher plaintiffs, even though we went to extraordinary lengths in 2016 to advocate before the Special Master on behalf of them and all of the 9/11 spouses and children who are excluded from receiving additional money from the USVSST Fund, even though we undertook the burden of securing and serving default judgments on behalf of them and all of the spouses and children represented by the firm knowing they

---

[11] Kathryn Maher sent a similar email discharging Baumeister & Samuels as attorneys for the Maher plaintiffs on April 3, 2019.   But for a few telephone conversations many months ago, Ms. Maher has declined to communicate with the firm either through emails or by phone and has, instead, relied on the false accusations and innuendos fired at the firm by Ms. Ryan.

would not receive any payments from the USVSST Fund, and even though we filed, perfected and processed applications with the USVSST Fund on behalf of the spouses and children knowing they would not receive any money.   The attorneys and staff at Baumeister & Samuels worked 20 hour days for months leading up to the final submission date to the USVSSF Fund in early December 2016 for consideration in the first round of payments to protect the interests of the VCF award recipients represented by the firm – including the Ryan and Maher plaintiffs – knowing it would result in no compensation to the firm.   Time and time again we advised Ms. Ryan that should she and Ms. Maher wish to challenge the language and terms of the USVSST Fund, such an action was outside of the firm's expertise so they would need to hire specialty counsel familiar with the intricacies of the Administrative Procedure Act, and that we would be happy to assist and provide information to that attorney.   Not satisfied with this answer, Ms. Ryan continued to demand that Baumeister & Samuels pay for the services of outside counsel to represent her and other 9/11 family members in litigation against the Special Master and the USVSST Fund.   We advised Ms. Ryan that this was beyond the scope of our relationship with her and declined her demands.[12]   Although we tried to speak on the phone with both Ms. Ryan and Ms. Maher on several occasions, each of our requests for a call were either cancelled by Ms. Ryan at the last minute, or our requests were simply ignored.

15.     By mid-March 2019, it became clear that the Ryan and Maher plaintiffs had lost all trust and confidence in the firm, and that no advice, recommendation or legal counsel provided by the firm would be acceptable to them.   After months of trying to rehabilitate that trust and confidence, Michel Baumeister, reluctantly, and with great personal regret, wrote an

---

[12] As of this date, no lawsuit has been filed and no legislative action has been taken by Congress to change the language of the USVSST Fund.

email to the Ryan and Maher plaintiffs on March 20, 2019 suggesting that they may wish to retain other counsel to represent them.   A copy of this email is attached as Exhibit "1".   A similar email from Mr. Baumeister was sent to the Ryan and Maher plaintiffs on March 22, 2019.   This email was attached as an exhibit to my initial Declaration submitted to this Court on September 20, 2019 (ECF No. 5169-1).

16.      As can be seen from the above recitation of uncontested facts relating to the representation of the Ryan and Maher plaintiffs, there are simply **no** circumstances in which these individuals can be heard to claim that their rights have been jeopardized by the actions of Baumeister & Samuels.   To the contrary, we have consistently acted in a professional manner despite the onslaught of damaging accusations and assertions thrust at us by the Ryan and Maher plaintiffs.   We have gone above and beyond what any other lawyer or firm did, or would have done, under the circumstances to protect the interests and claims of the Ryan and Maher plaintiffs in the event Congress should elect to modify the language of the Fund and provide them with payments from the USVSST Fund.   **In short, there is not a single, truthful suggestion that Baumeister & Samuels engaged in any act of impropriety or misconduct**.

### THE RYAN AND MAHER PLAINTIFFS LIES, FALSEHOODS, FABRICATIONS AND MISREPRESENTATIONS

17.      I am personally appalled and disgusted by the accusations contained in the Ryan and Maher plaintiffs' October 10, 2019 letter, and I am loathed to burden this Court further with the need to identify and challenge some their statements.   Nevertheless, my duty of honesty and candor to the Court requires me to identify their most egregious lies, falsehoods, fabrications and misstatements and to shine a light on their actual motivation which is to destroy the USVSST Fund if they are not included in future payments.

18.     In the third paragraph of their October 10, 2019 letter, the Ryan and Maher plaintiffs charge, **without any shred of evidence**, that Baumeister & Samuels "solicited" them for representation through the auspices of a support group put together in the aftermath of the 9/11 terror attacks by prior clients of the firm.   This bold lie is both shocking and vicious.   **Our firm has never, ever solicited any client in its entire existence which began in 1989**.   The firm is highly respected in its field of expertise, and has been remarkably successful in securing billions of dollars in recoveries for its clients since its inception through its zealous advocacy. The firm only accepts representation of clients offered to it by counsel or by individuals with whom it has a long relationship.   Not only do the Ryan and Maher plaintiffs malign our firm with such a blatant falsehood, but they also insult and degrade the efforts of wonderful, caring people who opened their hearts to them in the aftermath of the 9/11 tragedy with an offer to listen and support them and other families of the victims.   The Ryan and Maher plaintiffs bring shame and disgrace upon themselves for this baseless, thoughtless and mean-spirited lie.

19.     In the 4th paragraph of their letter, the Ryan and Maher plaintiffs allege that Baumeister & Samuels exerted "undue pressure" on them to enter the VCF.   As set forth above, **the firm exerted zero pressure on them or any of its clients**.   **Each client, including the Ryan and Maher plaintiffs, made the choice whether to pursue compensation through the VCF or continue to litigate in the cases filed on their behalf against the air carriers and security companies**.   The Ryan and Maher plaintiffs were presented with the pros and cons of each option and after careful consideration, each of them expressed extreme reluctance to wait out a delay of several years to potentially receive compensation from the air carriers and security companies or to endure the risk that the law would fail to extend a legal duty to their loved ones who perished inside the World Trade Towers.   Instead, they each elected to submit applications

to the VCF.   Adding to their anger and underlying their charge that the firm exerted undue pressure on them, is that the fact that the Ryan and Maher plaintiffs now know that the families who chose to litigate have received two rounds of payments from the USVSST Fund while they have received none.   Their statement that they "relented to pressure" exerted on them by our firm is an inane distraction meant to brush away their responsibilities for their own decisions. Their accusation that the firm "simply did not want to put in the time and effort that it would take to sue the airlines and delay their fees" is idiotic and makes no sense.   The firm represented several families of the 9/11 victims who chose to litigate and saw them through this process to its conclusion.

20.    The accusations contained in Paragraphs 5 and 6 of the Ryan and Maher plaintiffs' letter have been soundly shut down through the firm's brief recitation of its efforts over the last 17 years so I will not dignify them with a further response here.

21.    It is important, however, to take issue with the allegations made by the Ryan and Maher plaintiffs in Paragraph 7 of their letter in which they attempt to redirect some of their anger towards Kenneth Feinberg in his role as Special Master of the USVSST Fund.   Mr. Feinberg did not "interpret" the language of the Fund that excludes the Ryan and Maher plaintiffs from receiving money.   This is yet another falsehood and fabrication.   Mr. Feinberg can, and likely has, repeatedly addressed such improper assertions directed towards him by many other disgruntled and embittered 9/11 widows who are angry that their late husbands' parents and siblings continue to receive money from the USVSST Fund while they cannot.   As he expressed to us on numerous occasions, Mr. Feinberg had nothing to "interpret" – the language of the statute, the Regulations and the responses to Frequently Asked Questions published on the website for the USVSST Fund make it abundantly clear that Congress did not intend for

individuals who had received money from the government through the VCF to receive any additional money from the USVSST Fund.

22.      The lies and falsehoods continue in Paragraph 8 of the Ryan and Maher plaintiffs October 10, 2019 letter when they yet again charge Baumeister & Samuels with solicitating for employment – but this time the allegation is that we solicited the "extended-family members" as clients.   As was previously made abundantly clear, **Baumeister & Samuels has never, and will never, solicit any individual to become its client**.   The Ryan and Maher plaintiffs also attempt to denigrate the nature of the relationships held between their late husbands and their parents and siblings by labeling them as "extended".   The law on solatium damages is clear and unequivocal despite the best wishes of the angry Ryan and Maher plaintiffs – parents and siblings are described under the law as **immediate** family members of the victims.   The grief and emotional pain they have suffered since losing their sons and brothers is both real and recognizable under the applicable law.   For the Ryan and Maher plaintiffs to insinuate otherwise is another example of the nasty and vile hatred they feel towards others who have received some financial recognition of their pain through payments from the USVSST Fund.

23.      In that same paragraph, the Ryan and Maher plaintiffs accuse the firm of having a conflict of interest for processing claims with the USVSST Fund on behalf of their late husband's parents and siblings.   This is an outrageous falsehood as there is no such conflict, although I am sure the Ryan and Maher plaintiffs wish there was.   The firm did not create a pot of money and then choose to distribute it to individuals other than the Ryan and Maher plaintiffs. The firm has no power over the amount of money deposited into the USVSST Fund, nor did it calculate the payments to be made out of the Fund.   Again, this venomous charge is simply an angry cry-out through which the Ryan and Maher plaintiffs protest the payment of money to

anyone other than themselves and possibly their children.   The firm did not create the law, and does not have the power to undo the law – that power belongs exclusively to Congress as we advised both the Ryan and Maher plaintiffs over and over and over.

24.     It is important to correct yet another complete falsehood contained in Paragraph 9 of the Ryan and Maher plaintiffs' letter in which they accuse the firm of engaging in a "fire drill signing up clients".   The Ryan and Maher plaintiffs are incorrect when they state that "their husbands' respective estates recovered from [the] VCF".   Although the claims with the VCF were submitted by the personal representatives of each decedent's estate, **the awards made by the VCF were individual awards made to the spouses and children of the victims**.   **This is a deliberate attempt by the Ryan and Maher plaintiffs to confuse and distract the Court.** They previously tried to push this same argument, which is essentially that they were not recipients of VCF awards and it was actually their husbands' estates who were the recipients, in discussions with counsel who specialize in APA litigation.   When these specialists were advised by the attorneys who secured the VCF awards that the widows and their children were the actual VCF awardees, these specialists declined to bring a legal challenge against the Fund.

25.     This same paragraph also suggests that the firm committed misconduct because it failed to appeal the Special Master's decision which found their claims eligible under the USVSST Fund.   Upon receiving the written notices that the claims submitted by VCF award recipients would not receive payment from the USVSST Fund, we immediately contacted representatives from the Fund and were specifically advised that no appeal could be filed because there were no grounds upon which to file such an appeal.   The language of the statute prohibiting payments to be made by the USVSST Fund to anyone who receive a payment from the VCF is not an appealable ground – it is a statutory condition.

26.     Finally, in the same ninth Paragraph of their letter, the Ryan and Maher plaintiffs allege that the actions of Baumeister & Samuels in submitting applications for their late husband's parents and siblings which were paid by the USVSST Fund are somehow at the heart of "obvious detrimental family situations".   This is yet another baseless, and deeply disturbing lie.   The strained relations between the Ryan and Maher plaintiffs and their late husband's parents and siblings stems from their own desire to obtain more money.   There is no doubt that had the Ryan and Maher plaintiffs received payments from the USVSST Fund based upon the efforts made by Baumeister & Samuels to protect them, there would be no need for them to project their dissatisfaction and vitriol in our direction.   **If the language is ever changed by Congress to allow the Ryan and Maher Plaintiffs to recover money from the USVSST Fund, it will be due <u>solely</u> to the efforts made by Baumeister & Samuels in obtaining eligibility letters from the Fund for them**.

27.     In Paragraph 10 of the Ryan and Maher plaintiffs' letter they suggest that Baumeister & Samuels "abandoned" them.   As set forth above, there is **yet again not a single shred of evidence** that the firm did anything of the kind.   Instead, we continued to endure the wrath of the Ryan and Maher plaintiffs by communicating with them and repeatedly offering to speak or meet with them to address their misguided and misdirected anger.   In the end, the Ryan and Maher plaintiffs simply rejected our advice and recommendations because it did not suit their personal vendettas.

28.     Although their October 10, 2019 letter contains many more outright lies, falsehoods, misrepresentations and fabrications, I believe it is now clear to the Court that the allegations and assertions hurled by the Ryan and Maher plaintiffs are merely empty claims grounded upon baseless assertions by disappointed and disgruntled individuals.   Sadly, each of

these allegations and assertions is beyond the dignity of this Court.   No one can predict whether there will ever be a financial resolution to the 9/11 terror litigation.   Nor can anyone reliably predict whether Congress will relent and modify the language of the USVSST Fund to permit the payment of claims to individuals who received VCF awards, or whether a legal challenge – if one is filed – will be successful such that the Ryan and Maher plaintiffs will ever receive additional money from the deaths of their husbands and fathers.

29.     The issue raised by the firm in asserting a charging lien as part of the motion to substitute counsel is not one based upon money or financial gain.   It is based upon principle. The attorneys, paralegals and support personnel who make up Baumeister & Samuels have worked tirelessly, diligently and **selflessly** on behalf of the Ryan and Maher plaintiffs for more than 17 years in the same manner as we have on behalf of the other 48 estates and almost 300 individual family members of the victims murdered in the September 11, 2001 terror attacks who have placed their trust and confidence in our firm.   **No other client represented by Baumeister & Samuels has ever sought to attack the firm for the legal advice it has provided to them**. Every spouse and child represented by our firm who received a payment from the VCF is as equally prohibited from receiving payments from the USVSST Fund as the Ryan and Maher plaintiffs.   While each of these individuals may be unhappy or disappointed by this prohibition, none has chosen to publicly criticize or blame the firm for the statutory language enacted by Congress.

30.     Should the Court see through the unsworn, biased, baseless and scandalous accusations proffered by the Ryan and Maher plaintiffs and enter a charging lien to Baumeister & Samuels in an amount to be determined later, the firm will donate the full amount of any money recovered from the Ryan and Maher plaintiffs' claims to the National September 11

Memorial Museum, an exceptionally worthy charity that we have supported over the years since

we have no wish to profit from or revisit the firm's destroyed relationship with these individuals.

Dated: October 18, 2019

Dorothea M. Capone, Esq.
BAUMEISTER & SAMUELS, P.C.
140 Broadway, 46th Floor
New York, New York 10005
Phone: (212) 363-1200
Facsimile: (212) 363-1346
Email: tcapone@baumeisterlaw.com