UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977 (GBD)(SN)

SO ORDERED:

*/s/ George B. Daniels/*

George B. Daniels, U.S.D.J.

Dated: OCT 25 2019

### The *Ashton XIII* Wrongful Death Plaintiffs' Motion for Final Judgments

For the reasons set forth below, and the statements contained in the declaration of James P. Kreindler, Esq. ("Kreindler Declaration") and accompanying exhibits, the *Ashton* plaintiffs, by and through their counsel Kreindler & Kreindler LLP, respectfully move this Court to issue final judgments against the Islamic Republic of Iran ("Iran") and award solatium damages for the losses suffered by certain non-immediate family members of victims killed in the September 11, 2001 terrorist attacks in the amounts set forth herein; and award prejudgment interest on those damages as set forth below in the amount of 4.96% per year, compounded annually.

This motion is made on behalf of the *Ashton* claimants listed in Exhibit A to the Kreindler Declaration ("*Ashton XIII* Plaintiffs") in light of this Court's previous orders granting permission to allow remaining *Ashton* plaintiffs to move for this relief. *See e.g.* 03-md-1570 (S.D.N.Y.) (GBD) (FM), ECF No. 3300, Filed 06/16/2016; 03-md-1570 (S.D.N.Y.) (GBD) (SN), ECF No. 4170, Filed 08/13/2018. The solatium claimants for whom relief is presently sought have the functional equivalent of an "immediate family member" relationship to decedents who died in the September 11, 2001 terrorist attacks, and the intimate nature of their emotional connection with their lost loved ones and the anguish and grief they have suffered as a result of the attacks is detailed in the declarations included as Exhibit B to the Kreindler Declaration. Because these claimants' relationships to their loved ones were functionally equivalent to the biological relationships that

1

this Court has previously found formed the basis of damages awards, the *Ashton XIII* Plaintiffs should be awarded solatium damages under the Foreign Sovereign Immunities Act.

As the awards set forth in the attached proposed order represent the only direct recovery against Iran on behalf of the *Ashton XIII* Plaintiffs listed in Exhibit A to the Kreindler Declaration, any award issued to those individuals will constitute final awards and judgments against the Islamic Republic of Iran for the *Ashton XIII* Plaintiffs.

## I.   Procedural Background

Based on evidence and arguments submitted by various plaintiffs in this consolidated multi-district litigation arising out of the September 11, 2001 terror attacks, this Court previously issued a default judgment on liability against Iran to all *Ashton* plaintiffs for claims arising out of the deaths of the plaintiffs' decedents (the "*Ashton* plaintiffs"). *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), Doc. No. 3008, Filed 08/26/2015. Thereafter, the *Ashton* plaintiffs moved for partial summary judgment for the conscious pain and suffering that their decedents suffered before death, which this Court granted, and certain *Ashton* plaintiffs moved for default judgments on economic damages suffered as a result of their decedents' wrongful deaths as well. This Court granted those motions. *See, e.g.,* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), Doc. Nos. 3229, Filed 03/09/2016 (adopting December 28, 2015 Report and Recommendation awarding damages for conscious pain and suffering) and 3356, Filed 10/11/2016 (awarding damages for economic loss).

In addition, certain *Ashton* plaintiffs previously moved for solatium damages suffered by those family members non-immediate family members who were the "functional equivalent" of immediate family members who were eligible to recover under the terrorism exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A ("FSIA.") *See* 03-md-1570 (02-cv-6977)

2

ECF Nos. 3295, Filed 06/08/2016 (Motion for Final Judgment for *Ashton I* claimants including claims for solatium damages); 3356, Filed 10/11/2016 (Motion for Final Judgment for *Ashton II* claimants including claims for solatium damages); 3686, Filed 8/16/2017 (Motion for Final Judgment for *Ashton III* claimants solely for solatium damages); 3977, Filed 4/24/2018 (Motion for Final Judgment for *Ashton IV* claimants solely for solatium damages); 4058, Filed 07/19/2018 (Motion for Final Judgment for *Ashton V* claimants, the "functional equivalent" of immediate family members, solely for solatium damages); 4100, Filed 8/14/2018 (Motion for Final Judgment for *Ashton VI* claimants solely for solatium damages); 4120, Filed 8/23/2018 (Motion for Final Judgment for *Ashton VII* claimants solely for solatium damages); 4149, Filed 9/6/2018 (Motion for Final Judgment for *Ashton VIII* claimants solely for solatium damages); 4158, Filed 9/12/2018 (Motion for Final Judgment for *Betru (Ashton IX)* claimants solely for solatium damages); 4478, Filed 4/05/2019 (Motion for Final Judgment for *Ashton X* claimants solely for solatium damages), and 4601, filed 6/26/2019 (Motion for Final Judgment for *Ashton XI* claimants solely for solatium damages). This Court granted these motions, finding that an award to the immediate family members of each decedent was proper and that prejudgment interest on the solatium loss amounts was warranted. *See* 03-md-1570 (02-cv- 6977) (S.D.N.Y.) (GBD) (SN), ECF Nos. 3300, Entered 06/16/16; 3387, Entered 10/31/2016; 3706, Entered 8/17/2017; 3979, Entered 4/25/2018; 4106, Entered 8/16/2018; 4127, Entered 8/28/2018; 4152, Entered 9/7/2018; 4173 (granting in part and denying in part motion for "functional equivalent" of immediate family members), Entered 09/13/2018; 4170, Entered 09/13/2018; and 4497, Entered 04/29/2019.[1]

---

[1] A decision on the Motion for Final Judgment for *Betru II (Ashton XI)* claimants, which involved claims made by non-immediate family members, is still pending, and a Motion for Final Judgment for *Ashton XII* claimants, all of whom are immediate family members of September 11, 2001 victims, is being filed contemporaneous with the instant motion.

3

As to the availability of solatium damages to non-immediate family members, this Court has previously addressed the criteria necessary to establish that a claimant and a decedent had the "functional equivalent" of an immediate family member relationship. See 03-md-1570 (S.D.N.Y.) (11-cv-7550) (GBD) (SN), ECF No. 3363, Filed 10/14/16. The test established by the Court considers several factors, including long-term residence or cohabitation of the decedent and the claimant, the guardian or custodian-like role between the decedent and the claimant and the absence of the biological relative from the claimant's or decedent's life. *See id.*, pp. 10 – 12.

On the issue of prejudgment interest, a December 28, 2015 Report and Recommendation, adopted by this Court, concluded that to the extent the *Ashton* wrongful death plaintiffs' claims arose out of injuries in New York State the rate of prejudgment interest was 9 percent per annum from September 11, 2001 until the date judgment was entered and to the extent the injuries arose elsewhere 4.96 percent interest per annum compounded annually was appropriate. *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), ECF No. 3175, Filed 12/28/2015, pp. 1 – 2. A subsequent Report and Recommendation issued on October 12, 2016, also adopted by this Court, however, concluded that the rate of prejudgment interest of 4.96 percent for all pain and suffering and solatium claims was more appropriate. *See* 03-md-1570(11 cv 7750) (S.D.N.Y. (GBD) (SN), ECF Nos. 3358, Filed 10/14/2016; 3383, Filed 10/31/2016. Accordingly, the *Ashton I – X* plaintiffs were awarded prejudgment interest at the rate of 4.96 percent per annum.

For the reasons below as well as those set forth in the prior motions for summary judgment on liability and prior motions for judgment for solatium damages made on behalf of other *Ashton* wrongful death plaintiffs, the *Ashton XIII* Plaintiffs listed in Exhibit A to the Kreindler Declaration now move this Court to grant the proposed Order, attached to the Kreindler Declaration as Exhibit C, awarding them compensatory damages for their solatium losses in a manner consistent with

4

Magistrate Judge Netburn's October 14, 2016 Report and Recommendation, and directing that pre-judgment interest be assessed at 4.96 percent per annum, which is the rate that this Court previously approved in connection with the *Ashton I – X* plaintiffs' motions for final judgments on solatium damages. All *Ashton* plaintiffs also ask for permission to continue to submit applications in subsequent stages on behalf of those claimants not included in the attached exhibit.

## II. Damages

Under 28 U.S.C. § 1605A ("Section 1605A"), which applies to the claims against Iran, damages are available under the federal law and include money damages "for personal injury or death." *See* 28 U.S.C. § 1605A(a)(1) and (c)(4). The damages available to plaintiffs in a Section 1605A action include "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c)(4). That is, the "estates of those who [died] can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." *Valore v. Islamic Republic of Iran*, 700 F.Supp.2d 52, 83 (D.D.C. 2010). Plaintiffs who are considered "family members" for purposes of the statute are therefore entitled to compensation under Section 1605A for the solatium losses suffered as a result of the wrongful death of each of their decedents.

### A. Solatium Damages

Section 1605A specifically provides for solatium damages. Under that provision, family members of the decedents may recover for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort." *Dammarell v. Islamic Republic of Iran*, 281 F.Supp. 2d 105, 196 (D.D.C. 2003), *vacated on other grounds*, 404 F.Supp. 2d 261 (D.D.C. 2005). Other courts have previously noted that "[a]cts of terrorism are by their very

5

definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009). Given that, in FSIA cases solatium claims have been treated as comparable to claims for intentional infliction of emotional distress, in which the immediate family members of the decedent are treated as direct victims. *See, e.g. Salazar v. Islamic Republic of Iran,* 370 F. Supp. 2d 105, 115 n.12 (D.D.C. 2005)("[c]ourts have uniformly held that a terrorist attack—by its nature—is directed not only at the victims but also at the victims' families."); *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (treating solatium claim as "'indistinguishable' from the claim of intentional infliction of emotional distress.") (quoting *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001)).

Accordingly, this Court has previously awarded solatium damages to "immediate family members" who, though not physically present at the site of the terrorist attacks, were nevertheless intended victims of the terrorist activities. *See e.g.* 03-md-1570 (11-cv-07550) (S.D.N.Y.) (GBD) (SN) ECF Nos. 3358, Filed 10/12/2016; 3300 Filed 06/16/16. It has also previously awarded solatium damages to those individuals who had the "functional equivalent" of an immediate family member relationship with a victim killed in the September 11, 2001 terrorist attacks. *See e.g.* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (SN) ECF No. 4173, Filed 03/13/18.

### i. Nature of Relationship – "Functional Equivalent" of Immediate Family Members

In identifying those family members eligible to make a claim for solatium damages, this Court previously determined that spouses, parents, children and siblings who survived a 9/11 decedent were entitled to recover for their losses, and set forth a framework for other family relationships that fell outside of those four categories. *See* 03-md01570 (S.D.N.Y.) (GBD) (SN), Doc. No. 3363, Entered 10/14/2016.

6

The October 14, 2016 Report and Recommendation recommended that in addition to those individuals who are considered traditional "family members," damages could also be awarded to non-immediate family members who met certain criteria establishing that she or he had the "functional equivalent" of an immediate family member relationship with the September 11, 2001 decedent. These categories of non-immediate family members included fiancées and domestic partners, step-relatives, aunts, uncles, nieces, nephews and cousins. *Id.*

In that report, three factors were identified as especially relevant to the determination of whether a close non-immediate family member was the "functional equivalent" of a traditional immediate family member. Those factors are: 1) long-term residence or co-habitation in the decedent's household; 2) whether the non-immediate family member ever played a guardian or custodian-like role in the decedent's life or vice versa; and 3) whether the biological family member whose role the "functional equivalent" individual played was absent from the family life (*i.e.* did the non-immediate family member step in to play a "functionally equivalent" role because of the death or long-term absence of the biological family member). *Id.*, pp. 10-12. In weighing these different factors, the Court stated it would consider whether the non-immediate family member supported the decedent financially and emotionally, or vice versa, and whether the decedent and claimant shared in typical family activities like doing homework, eating dinner and vacationing together. *Id.* In previous cases, the Court relied on the statements from the claimant about the nature and quality of the relationship with decedents. *Id.*, pp. 17-28.

The information in the declarations of the individuals for whom solatium damages are sought in this motion (submitted as Exhibit B to the Kreindler Declaration) confirms that all claimants listed in Exhibit A to the Kreindler Declaration had the "functional equivalent" of a biological relationship and they are therefore entitled to an award for solatium damages.

7

ii.  **Quantum of Damages**

To fashion a solatium award adequately compensating the surviving family members in the litigation against Iran, this Court previously looked to the analysis undertaken by District Court Judge Royce Lamberth in the case of *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006). There, Judge Lamberth concluded that solatium damages should be awarded to each spouse of a deceased victim in the amount of $8 million, to each parent in the amount of $5 million, and to each sibling in the amount of $2.5 million. *Id.*[2]

Magistrate Judge Frank Maas previously recognized that the immediate family members of those killed in the September 11 terrorist attacks suffered and continue to suffer "profound agony and grief and, "[w]orse yet, … are faced with frequent reminders of the events of that day. *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (SN), Doc. No. 2618, Entered 07/30/12, pp. 10 – 12. Given the "extraordinarily tragic circumstances surrounding the September 11th attacks, and their indelible impact on the lives of the victims' families," Magistrate Judge Maas in his Report and Recommendation concluded that an upward departure from the *Heiser* framework was appropriate and recommended solatium damages in the following amounts:

| Relationship to Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

---

[2] This formula may be adjusted upward or downward when circumstances warrant. *See, e.g., Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 156 (D.D.C. 2011); *Valore*, 700 F. Supp. 2d at 85.

Subsequently, Magistrate Judge Maas and then Magistrate Judge Sarah Netburn issued orders awarding solatium damages in the amounts set forth above to various groups of plaintiffs.

The losses claimed in this motion are legally and factually comparable to those suffered by the *Ashton I-X* claimants, and the other claimants involved in this litigation. Each of the deaths in this case were sudden and unexpected and were the result of the terrorism defendants' extreme acts of malice. The decedents were civilians whose deaths were intended to create an environment of fear and terror. The claimants here were not attenuated victims – they had intimate relationships with the decedents and were directly and irrevocably harmed by the terrorist acts and consequences. Many of the claimants can visit no private cemetery plot or gravestone to visit their loved ones but are instead resigned to never have the closure that might otherwise be expected. The presumptive amount of solatium damages previously adopted by the District Court in the other *Ashton* cases as well as the other claimants involved in this litigation should apply equally to the *Ashton XIII* claimants with deviations based on the previously established criteria for non-immediate family members as noted below.

The relationships between the decedent and the *Ashton XIII* Plaintiffs are set forth in the declarations submitted as Exhibit B to the Kreindler Declaration. As attested to in those declarations, all of the *Ashton XIII* Plaintiffs have the sort of intimate relationships previously recognized as qualifying for solatium damages; all of the *Ashton XIII* Plaintiffs survived the deaths of their loved ones on September 11, 2001; and all of the *Ashton XIII* Plaintiffs have verified under penalty of perjury the nature of the relationships with their loved ones.

Based on the representations in those statements attached as Exhibit B to the Kreindler Declaration and summarized below, the *Ashton XIII* Plaintiffs respectfully request that this Court

9

issue a final judgment ordering payment of solatium damages to the *Ashton XIII* Plaintiffs in the amounts set forth below.

### *a. Claimant Alexandria Catalano, granddaughter of 9/11 Harry Taback.*
**Presumptive Award: $8.5 million**
**Requested Award: $4.25 million**

Alexandria Catalano was the granddaughter of Harry Taback, who was murdered on September 11, 2001. From the time she was born, in 1996, Alexandria regularly spent a few nights each week with Harry Taback and her grandmother. Then, in 1997, Alexandria and her mother and father moved in with her grandparents and aunts. They all lived together until the time of Harry's death.

Harry was a supportive and constantly present parental-type figure in Alexandria's life. Harry and Alexandria ate meals together, took vacations together and played games together. They traveled to Florida and Disney World together. After Harry's wife died in 2000, his relationship with Alexandria deepened even further. Harry attended Alexandria's dance recitals and sports practices; he was the "official" photographer for Alexandria's nascent sports teams.

Though Alexandria had both a mother and father in her life, Harry acted as a third parent who was a constant and loving presence in Alexandria's life from the time of her birth until the time of Harry's death.

Based on Alexandria's at the time that Harry began functioning as an additional parent to her and their extremely close relationship, Alexandria should be awarded half of the solatium damages that would otherwise be awarded to the biological and or adopted children of September 11, 2001 victims, notwithstanding that she had both of her biological parents involved in her life as well.

### b. *Claimant Mariano D'Alessandro, nephew of 9/11 Victim Rocco Nino Gargano.*
**Presumptive Award: $8.5 million**
**Requested Award: $8.5 million**

Claimant Mariano D'Alessandro was only six years old when his biological father was incarcerated. When that happened, Mariano's uncle Rocco Nino Gargano moved in with Mariano and his mother. Upon his arrival in the D'Alessandro household, Rocco immediately took on a paternal role with Mariano. Rocco provided financial and emotional support to Mariano. He would, for example, take Mariano on vacations; enrolled Mariano in sports teams; attended school functions; and provided materially for Mariano and Mariano's mother. Rocco was in all senses a father to Mariano from the time Mariano was six years old until Rocco's untimely death on September 11, 2001.

Rocco's death on September 11, 2001 caused Mariano particular grief, as he had already lost one father. Rocco was lost, angry, distraught and depressed – just as a teenage boy would be expected to feel had he lost his biological father in the terrorist attacks. Based on Mariano's age at the time that Rocco moved into his household, his unique circumstances and the close nature of the relationship between Rocco and Mariano, Mariano D'Alessandro should be awarded the full solatium damages award of $8.5 million otherwise awarded to the biological or adopted children of September 11, 2001 victims.

### c. *Claimant James Della Bella, stepson of 9/11 Victim Rocco Andrea Della Bella.*
**Presumptive Award: $8.5 million**
**Requested Award: $8.5 million**

Claimant James Della Bella was born out of wedlock following an extramarital relationship that his father had with another woman, after his father had been married for ten years to Andrea Della Bella. Within six months of his birth, it became evident that James's biological mother could not care for him. Andrea and James's father promptly brought James into their household and for

11

the next seventeen years, James believed that Andrea was his biological mother. Andrea welcomed James into the home immediately and even though James's father drifted in and out of his life and home, Andrea was a constant, supportive and loving parent to James. It was Andrea who would enroll James in school; it was Andrea who supported the family financially; it was Andrea who was the emotional center of James's life. While the family was temporarily homeless and living out of a van, Andrea would wake up each day, wash off in a public restroom and go to work to provide for James. When James wavered academically, Andrea kept him on course, encouraging him to attend college. The grief James experienced after Andrea's death on September 11, 2001 was further compounded by his father's death not long thereafter. While James ultimately – when he was seventeen years old – learned that Andrea was not his biological mother, she was and remains the most important person in his life.

Based on the fact that Andrea Della Bella was for all intents and purposes James's mother from the time he was six months old until her death on September 11, 2001, and given that he had no relationship with his biological mother, James Della Bella should be awarded the full solatium damages award of $8.5 million otherwise awarded to the biological or adopted children of September 11, 2001 victims.

### d. Claimant Aaron Pagan, nephew of 9/11 Victim Angela Rosario.
**Presumptive Award: $8.5 million**
**Requested Award: $8.5 million**

Angela Rosario was part of claimant Aaron Pagan's life from the day he was born. Angela, Aaron's mother and Aaron's grandmother lived together in the same household from the time Aaron was born until September 11, 2001, when Angela was killed. Aaron's biological father did not have a role in his life. Angela was Aaron's godmother and helped support him financially. Angela would pick Aaron up from school, would help him with his homework and would take him

to the playground and to movies. The two vacationed together to upstate New York and to Puerto Rico. At the time of her death, Angela was still living in Aaron's household.

Based on the fact that Angela Rosario functioned in a parental role with Aaron Pagan from the time he was born until the time of Angela's death, that Aaron's biological father was not part of their household and the close nature of the relationship between the two, Aaron Pagan should be awarded the full solatium damages award of $8.5 million otherwise awarded to the biological or adopted children of September 11, 2001 victims.

### e. Claimant Julian Perez, nephew of 9/11 Victim Marlyn Carmen Garcia.
**Presumptive Award: $8.5 million**
**Requested Award: $8.5 million**

Claimant Julian Perez was born to a man who did not want to be involved in Julian's life and a woman who was not capable of taking on the care of a new infant. Soon after Julian's birth, his mother's sister Marlyn Carmen Garcia began to care for him. Though Marlyn was only 12 years old when Julian was born, she would watch him in the afternoons after she was done with school and soon thereafter began to care for him overnight at his grandparents' home, where Marlyn lived. By the time he was seven years old, Julian was effectively living with Marlyn at his grandparents' house. Marlyn would prepare his meals and put him to bed. After Marlyn was in high school and working afterschool jobs, she would use her earnings to buy Julian clothing, toys and food. Marlyn taught Julian how to ride a bike. Once Julian was in school, Marlyn would supervise his homework and help with his extracurricular activities. Marlyn read to Julian every night. She brought Julian to church and instilled in him a sense of spirituality and social justice. Though Marlyn was accepted to Syracuse University after high school, she opted to attend college locally in order to stay with Julian and her parents.

By 2000, Marlyn was claiming Julian as a dependent on her income tax returns. Shortly before she was killed in the September 11, 2001 terrorist attacks, Marlyn spoke with Julian's

biological mother about formalizing her adoption of him, which Julian's mother was willing to consider. Marlyn's death was a crushing blow to Julian, who had no relationship with his biological father and a strained relationship with his biological mother.

Based on the fact that Marlyn Carmen Garcia was effectively a parent to Julian from the time of his birth until the time of her death, that Julian's biological father was not a part of his life and his biological mother was not regularly a part of his life, and the close nature of the relationship between Marlyn and Julian, Julian Perez should be awarded the full solatium damages award of $8.5 million otherwise awarded to the biological or adopted children of September 11, 2001 victims.

### f. Claimant Jason Schoenholtz, stepbrother of 9/11 Victim Alexander Steinman.[3]
**Presumptive Award: $4.25 million**
**Requested Award: $2.125 million**

Claimant Jason Schoenholtz was the stepbrother of September 11, 2001 victim Alexander Steinman. Jason and Alex had both lost parents and Jason's mother and Alex's father began dating in 1982, when Jason was seven years old and Alex was thirteen years old. Their parents married the following year and the two families officially began cohabitating. For most of his life, Jason looked up to Alex as an older brother, who would mentor him in sports, school and work. Even after Alex left for school, he would return home in the summers and live with the Schoenholtz / Steinman family. Even Alex's girlfriend (who went on to become Alex's wife) lived with the family for a time. After Alex was working in finance, he would invite Jason to shadow him in the office – which had a powerful impact on Jason, who now works for the same company that Alex

---

[3] This Court previously granted a final judgment to Jason Schoenholtz's biological sister Jessica in connection with their stepbrother Alexander Steinman's death of $2.125 million. *See* 03-md-1570, ECF 4173, Filed 09/13/2018, at 12.

was working for at the time of his death. Alex's death on September 11, 2001 was especially difficult for Jason, as he had already unexpectedly lost his mother when he was a young child.

Given Jason's tender age at the time Alex came into his life, the closeness of their relationship and the prior award this Court issued to Jason's biological sister, Jason Schoenholtz should be awarded partial solatium damages award of $2.125 million, which is half of what is presumptively awarded to the biological or adopted siblings of September 11, 2001 victims.

### g. Claimant Terence Smith, stepson of 9/11 Victim William Ward Haynes.
**Presumptive Award: $8.5 million**
**Requested Award: $8.5 million**

In 1992, when claimant Terence Smith was 2 ½ years old, his mother became romantically involved with William Ward Haynes. From that time until William's death on September 11, 2001, William was a daily presence in Terence's life. William and Terence's mother moved in together in 1993, when Terence was just over three years old. Terence's biological father was infrequently present and William filled the void that Terence's absent biological father left. William supported Terence financially and also provided Terence with unconditional love and emotional support. William would help Terence with homework, attended parent teacher conferences, went to back-to-school nights and showed up at school performances. He would attend Terence's sports games, driving Terence to and from practices and games and even coaching Terence's little league and hockey teams for years. After William's death on September 11, 2001, Terence felt afraid, abandoned and lost. Terence had lost the person who had therefore been a constant source of support, the person who helped Terence navigate friendships, school, dating, sports, college and his career.

Based on the fact that William Ward Haynes was effectively a father to Terence Smith from the time Terence was a toddler until William's death nearly twenty years later, and given that Terence had little relationship with his biological father, as well as the close nature of the

15

relationship between William and Terence, Terence Smith should be awarded the full solatium damages award of $8.5 million otherwise awarded to the biological or adopted children of September 11, 2001 victims.

### B. Prejudgment Interest

As in prior applications, the *Ashton XIII* Plaintiffs ask that this Court direct that prejudgment interest of 4.96% on the solatium awards running from September 11, 2001 until the date of judgment to the extent that their injuries arose in New York be assessed, as was done previously in the prior *Ashton* applications, as well as for other plaintiffs in this consolidated litigation.

### III. Conclusion

For all of the reasons herein, as well as those in the previous submissions of the *Ashton* plaintiffs and other plaintiffs, the *Ashton XIII* Plaintiffs respectfully request that this Court grant the proposed order attached to the Kreindler Declaration as Exhibit C and (1) award them solatium damages as set forth in the attached Exhibit A, (2) direct that prejudgment interest of 4.96% on the solatium awards running from September 11, 2001 until the date of judgment be assessed; and (3) permit remaining *Ashton* claimants to submit motions for final judgment in future stages.

Dated: New York, New York
       July 31, 2019

Respectfully submitted,

KREINDLER & KREINDLER LLP

BY:   /s/ James P. Kreindler
James P. Kreindler, Esq.
Andrew J. Maloney III, Esq.
750 Third Avenue, 32nd Floor
New York, New York 10017
Tel: (212) 687-8181
*Attorneys for Ashton Plaintiffs*