KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
————
(202) 326-7900
FACSIMILE:
(202) 326-7999

October 28, 2019

*Via ECF*

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

Re:     *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

Defendant Kingdom of Saudi Arabia ("Saudi Arabia") moves for a scheduling order to govern the remainder of jurisdictional discovery and address related matters such as the number and location of depositions.  When the issue of the number of the deponents was last raised in the February hearing on Plaintiffs' motion to compel and Saudi Arabia's motion on the scope of supplemental discovery, the Court indicated that it would set a schedule at a future time.  *See* ECF No. 4456, at 90:23-24.  Now that those motions have been resolved and Saudi Arabia has completed its document production, *see* ECF No. 5200, Saudi Arabia respectfully submits that it is time to address the issue of deposition limits and to set a schedule for the conclusion of fact discovery and renewed motions to dismiss.

    1.     **Fact Depositions.**  The Court should permit each side to notice no more than 10 fact depositions of witnesses related primarily to Plaintiffs' claims against Saudi Arabia.  Third-party depositions, including those already taken by Plaintiffs, should count against the deposition limit.[1]  Depositions of witnesses from whom the opposing party secures written declarations

_____

[1] Courts applying the 10-deposition presumptive limit under Federal Rule of Civil Procedure 30(a)(2)(A)(i) routinely count third-party depositions.  *See, e.g.*, *Johnson v. Riverhead Cent. Sch. Dist.*, 2016 WL 4507002, at *10 (E.D.N.Y. Aug. 26, 2016) (counting depositions of "four non-party witnesses" among depositions in excess of 10); *Francois v. Mazer*, 2010 WL 4006507, at *2 (S.D.N.Y. Oct. 6, 2010) (denying without prejudice a "request [for] leave to depose an additional eleven non-party witnesses pursuant to Rule 30(a)(2)(A)"); *see also* Fed. R. Civ. P. 30 advisory committee's note to 1993 amendments (explaining that the limit "assure[s]

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
October 28, 2019
Page 2

should not count against this limit so that each party is able to use a full 10 depositions in support of its *prima facie* case.  Consistent with Rule 30(a)(2)(A)(ii), each witness should be deposed only once.  A party may cross-notice a witness's deposition; if cross-noticed, a deposition should count against the cross-noticing party's 10-deposition limit.

Judge Daniels has authorized only "limited and targeted jurisdictional discovery" on the specific issue of "whether and to what extent Thumairy, Bayoumi, and their agents took actions in 2000, at the direction of more senior Saudi officials, to provide assistance to Hazmi, Mihdhar, and other 9/11 hijackers."  ECF No. 3946, at 23.  Ten fact depositions is the presumptive limit under the Federal Rules for a case in full merits discovery, *see* Fed. R. Civ. P. 30(a)(2)(A)(i), and is more than sufficient for the parties to adequately explore the circumscribed jurisdictional facts.

Thus far, Plaintiffs have deposed two non-party witnesses – both associated with the King Fahad Mosque in Los Angeles – in connection with their case against Saudi Arabia.  Plaintiffs have also subpoenaed one other non-party witness and obtained letters of request for another.  That leaves Plaintiffs at least six more witnesses, which would allow for depositions of Omar Al Bayoumi, Fahad Al Thumairy, and four more of Plaintiffs' choice, in addition to any witnesses from whom Saudi Arabia submits written declarations.[2]

Saudi Arabia further requests that the Court order that any additional fact depositions occur between November 4, 2019, and February 1, 2020.  The November 4 start date[3] is one month after Saudi Arabia completed its supplemental document production in this case, *see* ECF No. 5200, which is a reasonable time for Plaintiffs to translate and review 589 documents.  A three-month period is sufficient to complete 10 depositions and would allow Saudi Arabia to file renewed motions to dismiss early next year, *see infra* § 6, slightly more than two years after Judge Daniels authorized limited jurisdictional discovery.

In meet-and-confer discussions, Plaintiffs have contended that an end date for depositions should not be set until the Court has finally resolved not only their current motions for reconsideration and objections in connection with their motion to compel, but also their pending motion to compel against the FBI and any future motions they may file against Saudi Arabia or the FBI.  Those contentions are not sufficient reason to delay a schedule.  Plaintiffs will not cease to assert – certainly not in any reasonable amount of time – that more documents or

---

judicial review . . . before any side will be allowed to take more than ten depositions in a case without agreement of the other parties").

[2] Saudi Arabia does not waive, and expressly reserves, any right to oppose the deposition of any particular individual on any available basis.

[3] Saudi Arabia originally proposed this schedule to Plaintiffs in an email on October 11, 2019.  This letter is being filed two weeks later, one week before the proposed schedule start date, because Plaintiffs were unavailable to meet and confer until earlier today.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
October 28, 2019
Page 3

testimony must somewhere exist to support their allegations.  Nor will Plaintiffs concede in any reasonable amount of time that there has been sufficient motions practice.  For example, Exhibit 7 to their most recent motion (filed under seal on October 24, but the part we quote is clearly not confidential) indicates that they have told the United States they intend "to bring (at a minimum) three more motions," of which the October 24 motion is presumably only the first.  A defined schedule is the only way to ensure that discovery concludes within a reasonable period.

Plaintiffs have asserted that they need more than 10 depositions, although they have not yet said how many they want.[4]  Instead, they have pointed to the fact that the deposition protocol authorized 75 depositions against other defendants in this MDL.  That deposition limit applied to cases against four corporate or charity defendants in merits discovery (Dubai Islamic Bank, MWL, IIRO, and WAMY), seven individual defendants in merits discovery (Yassin Kadi, five former charity officials, and Wa'el Jelaidan), and one corporate defendant in jurisdictional discovery (Dallah Avco).  Thus, 75 depositions is an average of 6.25 per defendant.  Also, Plaintiffs have used only a small fraction of those depositions.  Since the protocol was established in January 2018, they have taken 16 depositions of witnesses related to merits or jurisdictional defendants other than Saudi Arabia.  Two depositions remain on the calendar, for a total of 18 – fewer than two per defendant.  Ten depositions related to Saudi Arabia, if Plaintiffs use them all, would be more than they have taken against any other defendant.[5]

Plaintiffs have also proposed that, instead of setting a schedule, the Court set monthly case management conferences to ensure that discovery moves forward.  The Court of course has discretion to set conferences as it finds helpful.  Without a schedule to measure the parties' progress, however, we do not see what good monthly conferences would do; and, with a schedule, we do not see what monthly conferences would add.  To the extent Plaintiffs wish to raise disputes with the Court, they can do so in the ordinary course.

    **2.      Disclosure of Written Declarations.**  The Court should direct all parties to disclose the names of any fact witness from whom a party will submit a declaration (other than declarations solely to authenticate or provide foundation for documents) by November 15, 2019, and to produce any such declaration by the earlier of (a) two weeks before the witness's deposition or (b) four weeks before the last day for depositions.  Such a requirement will give all

---

[4] Plaintiffs have also contended that no numerical limit on depositions should be set before depositions begin, because earlier depositions may provide grounds to argue for more depositions later.  Speculation that later-discovered evidence may justify additional discovery does not counsel against setting limits at the outset.  Rather, any such evidence would be a basis to seek leave for additional depositions based on a showing of good cause.

[5] Details supporting the numbers of depositions set forth above are provided in an Addendum.  If anything, those numbers exaggerate the discovery Plaintiffs have taken against other defendants, because they have used several depositions to pursue, in whole or in large part, lines of questioning directed at Saudi Arabia.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
October 28, 2019
Page 4

parties a reasonable chance to cross-examine any witness on whose testimony another party will affirmatively rely. As noted above, the 10-deposition limit should not include any witness from whom the opposing party obtains a written declaration. Plaintiffs have indicated that they do not oppose such disclosures in principle, but do not agree to a November 15 disclosure date.

3. **No Experts.** The Court should direct that expert testimony or discovery will not be part of jurisdictional discovery in this case because expert testimony is not relevant to the limited, targeted issues that Judge Daniels authorized. Saudi Arabia has already set forth in previous submissions its position that expert discovery is not appropriate because the purported expert declarations that Plaintiffs seek to submit merely argue the evidence on issues the Court will resolve as finder of jurisdictional fact. *See* ECF No. 4566, at 6-7. Further, those declarations have been addressed solely to Plaintiffs' speculative allegations that Al Bayoumi or others were covert agents for Saudi Arabia – allegations on which Judge Daniels did not rely in authorizing jurisdictional discovery, *see* ECF No. 3946, at 19-24, and that therefore are not within the scope of authorized discovery.

The Court indicated this past June that it considered Saudi Arabia's request to preclude expert testimony "premature," and so denied that request "without prejudice to renewal." ECF No. 4582, ¶ 6. Saudi Arabia respectfully submits that, with written discovery complete, it is appropriate to set a schedule for deposition discovery, which requires determining whether expert depositions will occur. If the Court would find further briefing on this issue helpful, it would be most efficient for the parties to submit briefs while fact discovery is ongoing.

Plaintiffs have contended that the issue of expert discovery should be briefed only after fact discovery. But Plaintiffs have already filed multiple expert affidavits. *See, e.g.*, ECF Nos. 3783-6, 3783-7; Suppl. Aff. of M. Rochford (filed under seal Jan. 8, 2019). The parties (and the Court) know which experts Plaintiffs want to use, to what facts those experts will speak, and why or why not those experts will be helpful to the Court in resolving the limited factual disputes remaining after Judge Daniels' March 2018 order. Adding another briefing cycle after the end of fact discovery and before any potential expert discovery can begin will only create further delay.

4. **Location of Depositions.** The Court should make clear that there is no requirement that current or former employees of Saudi Arabia be deposed in the United States or Western Europe. Although the MDL deposition protocol establishes such an expectation for non-sovereign defendants, *see* ECF No. 3894, ¶ 31, Saudi Arabia was not involved in the negotiation or establishment of that protocol and, as the Court has indicated, is not bound by that protocol. *See* ECF No. 3964, at 13:18-14:3. Saudi Arabia respectfully objects to any procedure that would confer on private plaintiffs' counsel the authority to require Saudi Arabia to compel current and former employees of its government, as well as other Saudi nationals, to travel outside its borders. Such a procedure would not give "due respect" to Saudi Arabia's "sovereign interest[s] . . . [as] a foreign state." *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987). It is also particularly inappropriate as to former employees, who are not within the control of Saudi Arabia or the subpoena jurisdiction of

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
October 28, 2019
Page 5

the Court, and who have the right to decline to appear.  *See*, *e.g.*, *Dubai Islamic Bank v. Citibank, N.A.*, 2002 WL 1159699, at *2 (S.D.N.Y. May 31, 2002).

There is no impediment barring Plaintiffs from traveling to Saudi Arabia to conduct depositions.  Holders of a United States passport may now obtain an eVisa online.  *See* https://visa.visitsaudi.com.  Plaintiffs have contended that they are unwilling to travel to Saudi Arabia and that they view the Court's previous rulings as giving them a right to demand in-person depositions outside Saudi Arabia.  Saudi Arabia is prepared to work with Plaintiffs in a good-faith effort to find mutually acceptable locations or to conduct depositions by video-conference, but does not believe a categorical presumption as established in the MDL protocol is appropriate for these jurisdictional-discovery depositions.

**5.     No Further Written Discovery.**  The Court should reaffirm that no further written jurisdictional discovery will be permitted unless authorized by the Court for good cause shown.  The Court's original order on written discovery contemplated that Saudi Arabia would complete responses to such discovery by July 31, 2018.  *See* ECF No. 4009.  Any "disputes with respect to any documents that have been withheld and any disputes with respect to the appropriate scope of any further jurisdictional discovery" were to be presented to the Court by September 21, 2018.  *Id*.  That deadline was later twice extended at Plaintiffs' request to November 30, 2018.  *See* ECF No. 4115; ECF No. 4237, at 41:16-42:5.

Reaffirmation that written discovery is closed is necessary because Plaintiffs recently served (without seeking leave) a second round of supplemental written discovery requests.  Saudi Arabia has advised Plaintiffs that it intends to oppose those new requests both as untimely and for substantive reasons set forth in a separate sealed filing.  That dispute aside, the Court should make clear that written discovery is closed and it is time for fact-witness depositions.

**6.     Renewed Motions To Dismiss.**  The Court should direct that, 45 days after the close of discovery, Plaintiffs file with the Court proposed findings of fact, supported by all evidence that is part of their *prima facie* case in opposing Saudi Arabia's motion to dismiss.  *See* ECF No. 4015, at 39:9-17 (Court's suggestion that Plaintiffs submit "some version" of "findings of fact *à la* Rule 56.1" with "supporting documents" at the close of discovery).

Saudi Arabia's renewed motion to dismiss, including proposed findings of fact, responses to Plaintiffs' proposed findings of fact, and all evidence on which Saudi Arabia intends to rely as part of its *prima facie* case in moving to dismiss, should be due 45 days after Plaintiffs' proposed findings of fact.  Plaintiffs' opposition and responses to Saudi Arabia's proposed findings of fact should then be due 30 days later, and Saudi Arabia's reply in support of its motion 30 days after that.  Evidence on opposition or on reply should be limited to reasonable rebuttal and should exclude matters that should have been raised as part of a *prima facie* case.

Saudi Arabia is submitting a proposed scheduling order incorporating the above points together with this letter.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
October 28, 2019
Page 6

Respectfully submitted,

*/s/ Michael K. Kellogg*

Michael K. Kellogg
*Counsel for the Kingdom of Saudi Arabia*

Enclosures

cc:     The Honorable George B. Daniels (via facsimile)
        All MDL Counsel of Record (via ECF)

**ADDENDUM**

Since January 2018, Plaintiffs have taken or are currently scheduled to take the following 18 depositions.  The defendant or defendants with whom each deposition is associated is listed in parentheses.  Depositions of four non-party witnesses (Al Khalil, Kaldirim, Alzamari, and Abdullah) related to jurisdictional discovery against Saudi Arabia are excluded from this list.

1.    Yassin Abdullah Kadi (Kadi) – July 10, 2018

2.    Abdullah Al Turki (MWL, Al Turki) – September 14-15, 2018

3.    Abdullah Al Obaid (MWL, Al Obaid) – September 17-18, 2018

4.    Jabir Khalifa (Dallah Avco) – September 20, 2018

5.    Saad Al Obaidi (IIRO) – January 21, 2019

6.    Riaz Khan (Dallah Avco) – January 23, 2019

7.    Dallah Avco 30(b)(6) representative – January 24, 2019

8.    Adnan Basha (IIRO, Basha) – February 20-21, 2019

9.    Fahad Al Harbi (MWL, IIRO) – March 26-27, 2019

10.   Abdulrauf Khalaf Al Sharman (MWL) – June 20-21, 2019

11.   Abdelhadi Daguit (MWL, IIRO) – June 27-28, 2019

12.   Rahmatullah Nazir Khan Gari (MWL, IIRO) – July 21-22, 2019

13.   Abdul Wahab Noorwali (WAMY) – July 23-24, 2019

14.   Alan Fine (Dubai Islamic Bank) – October 4, 2019

15.   WAMY 30(b)(6) representatives – October 21-23, 2019

16.   Saleh Al Wohaibi (WAMY) – October 23, 2019

17.   Ibrahim Anwar (WAMY) – November 7-8, 2019

18.   Wa'el Jelaidan (Jelaidan) – November 11-13, 2019

Plaintiffs have also sought depositions of current or former employees of the CIA, State Department, Treasury Department, and 9/11 Commission, but none is currently scheduled, and the United States has declined to permit some or all of those depositions pursuant to applicable agency regulations.  None of the depositions Plaintiffs have sought of individuals in federal custody has gone forward; neither has the deposition of the individual alleged to be in the federal Witness Security Program.