UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
....................................................................x

*In re Terrorist Attacks on September 11, 2001*      03 MDL 1570 (GBD) (SN)

....................................................................x


**SURREPLY MEMORANDUM OF LAW OF NON-PARTY THE
FEDERAL BUREAU OF INVESTIGATION IN PARTIAL OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF
CERTAIN INFORMATION IN THE 2012 FBI SUMMARY REPORT**


GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2709/2678/2769
*Attorney for Federal Bureau of Investigation*

SARAH S. NORMAND
JEANNETTE A. VARGAS
ANDREW E. KRAUSE
Assistant U.S. Attorneys
 *—Of Counsel—*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .......................................................................................................................... 1

    I.       The Attorney General Properly Invoked the State Secrets Privilege ...................... 1

    II.      The State Secrets Privilege Applies to the Information at Issue ............................ 2

    III.     The FBI Properly Invoked the National Security Act ............................................ 8

    IV.     The FBI Properly Invoked the Law Enforcement Privilege ................................. 10

# TABLE OF AUTHORITIES

*Cases*

*ACLU v. U.S. Dep't of Def.*,
  628 F.3d 612 (D.C. Cir. 2011) .................................................................................................. 7

*ACLU v. U.S. Dep't of Justice*,
  265 F. Supp. 2d 20 (D.D.C. 2003) ............................................................................................ 7

*Agee v. CIA*,
  524 F. Supp. 1290 (D.D.C. 1981) ............................................................................................. 7

*Al-Haramain Islamic Foundation, Inc. v. Bush*,
  507 F.3d 1190 (9th Cir. 2007) ............................................................................................. 2, 3

*Amnesty Int'l USA v. CIA*,
  728 F. Supp. 2d 479 (S.D.N.Y. 2010) ................................................................................... 7, 9

*Assassination Archives & Research Ctr. v. C.I.A.*,
  334 F.3d 55 (D.C. Cir. 2003) .................................................................................................... 9

*Bareford v. Gen. Dynamics Corp.*,
  973 F.2d 1138 (5th Cir. 1992) .................................................................................................. 2

*Broward Bulldog, Inc. v. U.S. Dep't of Justice*,
  No. 16-61289-CIV, 2017 WL 746410 (S.D. Fla. Feb. 27, 2017) ............................................... 9

*Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice*,
  331 F.3d 918 (D.C. Cir. 2003) .................................................................................................. 6

*CREW v. U.S. Dep't of Justice*,
  160 F. Supp. 3d 226 (D.D.C. 2016) .......................................................................................... 5

*DiBacco v. U.S. Army*,
  795 F.3d 178 (D.C. Cir. 2015) .................................................................................................. 9

*Edmonds v. U.S. Dep't of Justice*,
  323 F. Supp. 2d 65 (D.D.C. 2004) ............................................................................................ 2

*Elec. Privacy Info. Ctr. v. Dep't of Justice*,
  296 F. Supp. 3d 109 (D.D.C. 2017) .......................................................................................... 9

*Ellsberg v. Mitchell*,
   709 F.2d 51 (D.C. Cir. 1983) ................................................................................................ 4, 5

*Estate of Landers v. Leavitt*,
   545 F.3d 98 (2d Cir. 2008) ...................................................................................................... 8

*Fazaga v. FBI*,
   884 F. Supp. 2d 1022 (C.D. Cal. 2012) ................................................................................... 4

*Fitzgibbon v. CIA*,
   911 F.2d 755 (D.C. Cir. 1990) ................................................................................................ 5

*Halkin v. Helms*,
   690 F.2d 977 (D.C. Cir. 1982) ............................................................................................ 6, 8

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010) .................................................................................................................... 3

*Ibrahim v. Dep't of Homeland Sec.*,
   No. C 06-00545 WHA, 2013 WL 4549941 (N.D. Cal. Aug. 23, 2013) .................................. 4

*In re City of New York*,
   607 F.3d 923 (2d Cir. 2010) .................................................................................................. 10

*In re Sealed Case*,
   494 F.3d 139 (D.C. Cir. 2007) ................................................................................................ 4

*Kinoy v. Mitchell*,
   67 F.R.D. 1 (S.D.N.Y. 1975) ............................................................................................... 4, 5

*Krikorian v. Dep't of State*,
   984 F.2d 461 (D.C. Cir. 1993) ................................................................................................ 9

*Kronisch v. United States*,
   150 F.3d 112 (2d Cir. 1998) .................................................................................................... 8

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009) ................................................................................................ 9

*Mohamed v. Holder*,
   No. 1:11-cv-50 (AJT/MSN), 2015 WL 4394958 (E.D. Va. July 16, 2015) ............................ 2

*Mohamed v. Jeppesen Dataplan, Inc.*,
   614 F.3d 1070 (9th Cir. 2010) ............................................................................................ 4, 5

*Molerio v. FBI*,
   749 F.2d 815 (D.C. Cir. 1984) ........................................................................................... 2

*Mosier v. CIA*,
   No. 2:13-CV-00744-MCE, 2013 WL 6198197 (E.D. Cal. Nov. 27, 2013) ............................... 9

*National Lawyers Guild v. Attorney General*,
   96 F.R.D. 390 (S.D.N.Y. 1982) ....................................................................................... 4, 5

*New York Times Co. v. U.S. Dep't of Justice*,
   No. 14 Civ. 03776 (AT) (SN), 2016 WL 5946711 (S.D.N.Y. Aug. 18, 2016) ........................ 7

*New York Times Co. v. FBI*,
   297 F. Supp. 3d 435 (S.D.N.Y. 2017) ................................................................................ 8

*Poulsen v. Dep't of Def.*,
   373 F. Supp. 3d 1249 (N.D. Cal. 2019) ............................................................................. 7

*Restis v. American Coalition Against Nuclear Iran, Inc.*,
   No. 13 Civ. 5032 (ER), 2015 WL 1344479 (S.D.N.Y. Mar. 23, 2015) ................................... 3

*United States Postal Serv. v. Gregory*,
   534 U.S. 1 (2001) ............................................................................................................ 8

*United States v. Abu-Jihaad*,
   630 F.3d 102 (2d Cir. 2010) .......................................................................................... 5, 6

*United States v. Aref*,
   533 F.3d 72 (2d Cir. 2008) ............................................................................................... 6

*United States v. Duggan*,
   743 F.2d 59 (2d Cir. 1984) ............................................................................................... 6

*United States v. Reynolds*,
   345 U.S. 1 (1953) ................................................................................................... 1, 2, 5, 6

*Zuckerbraun v. Gen. Dynamics Corp.*,
   935 F.2d 544 (2d Cir. 1991) ...................................................................................... 2, 3, 5

The Department of Justice and its component, the FBI, respectfully submit this surreply memorandum of law in further opposition to the motion of the PECs to compel disclosure of certain information contained in the 2012 Summary Report. The United States recognizes the extraordinary nature of this case, and it does not invoke the state secrets privilege lightly. The decision to assert the privilege was a considered decision made by the Attorney General of the United States only after he personally considered the specific information at issue and the potential harms to national security that would result from the disclosure of that information.

The FBI has made every attempt to place as much information on the public record as possible to justify its invocation of the state secrets and other privileges. Given the nature of the information at issue, the FBI could not reveal more on the public record without risking the very harms that the privileges were designed to prevent. The Classified McGarrity Declaration, however, provides a thorough justification for the FBI's privilege assertions, including a detailed description of the withheld information and the specific harms that could result from the disclosure of that information. The submissions provide more than enough information to demonstrate that the invocation of privileges in this case was proper.

## ARGUMENT

### I. The Attorney General Properly Invoked the State Secrets Privilege

The PECs first contend that, because the Attorney General's unclassified declaration does not make the explicit representation that he has personally reviewed the 2012 Summary Report, the formal requirements for the assertion of the privilege have not been met. Reply Br. at 3-7. This argument is meritless. The Attorney General has affirmed that he personally considered the matter over which he has asserted privilege, which is what is required by *Reynolds*. *United States v. Reynolds*, 345 U.S. 1, 8 (1953). His sworn declaration is based upon such personal

consideration, including his personal review of the Classified McGarrity Declaration, which describes in detail the contents of the 2012 Summary Report, and quotes much of the information over which the privilege is asserted.  Barr Decl. ¶¶ 3-4.  Thus, the Attorney General did consider the contents of the 2012 Summary Report.[1]  This is clearly sufficient to satisfy the "personal consideration" requirement of *Reynolds.  See, e.g.*, *Mohamed v. Holder*, No. 1:11-cv-50 (AJT/MSN), 2015 WL 4394958, at *10 (E.D. Va. July 16, 2015) (holding that "personal consideration" requirement was satisfied by Attorney General's review of a classified declaration from an FBI official); *Edmonds v. U.S. Dep't of Justice*, 323 F. Supp. 2d 65, 73-76 (D.D.C. 2004) (same), *aff'd*, 161 F. App'x 6 (D.C. Cir. 2005) (affirming for "the reasons given in [the district] court's opinion"); *see also Bareford v. Gen. Dynamics Corp.*, 973 F.2d 1138, 1141-42 (5th Cir. 1992) (affirming invocation of state secrets privilege where agency head personally considered "the type of evidence necessary to this claim"); *Zuckerbraun v. Gen. Dynamics Corp.*, 935 F.2d 544, 547, 549-53 (2d Cir. 1991) (same); *Molerio v. FBI*, 749 F.2d 815, 821 (D.C. Cir. 1984) (personal examination of documents at issue could be done by the Attorney General "either personally or by proper delegation").

## II.     The State Secrets Privilege Applies to the Information at Issue

The public and classified McGarrity declarations, as well as the declaration submitted by the Attorney General, describe in detail how harm to national security reasonably could be expected to result from the disclosure of the specific information at issue in the 2012 Summary Report.  The PECs urge the Court to view these assertions of harm with a "skeptical eye," Reply Br. at 9, quoting *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1203 (9th Cir. 2007).

---

[1] Although Plaintiffs suggest that the Classified McGarrity Declaration might not have described the information at issue in sufficient detail, Reply Br. at 4-6, the Court will be able to review the Classified McGarrity Declaration for itself and see that this is not the case.

2

Yet there the Ninth Circuit meant simply that "[s]ufficient detail must be . . . provided for [the Court] to make a meaningful examination." *See id.* The Ninth Circuit acknowledged "the need to defer to the Executive on matters of foreign policy and national security" and concluded that it "surely cannot legitimately find [itself] second guessing the Executive in this arena." *Id.* Likewise, Second Circuit precedent mandates that this Court "accord the 'utmost deference'" to the Executive Branch's determination that disclosure of information would harm the national security. *Zuckerbraun*, 935 F.2d at 547; *accord Restis v. American Coalition Against Nuclear Iran, Inc.*, No. 13 Civ. 5032 (ER), 2015 WL 1344479, at *3 (S.D.N.Y. Mar. 23, 2015).

The PECs nonetheless make the astonishing argument that the FBI's investigation into individuals who potentially conspired with or provided material support to the Al Qa'eda terror cells that perpetrated the September 11 terrorist attacks does "not remotely concern matters that implicate a current national security threat." Reply Br. at 9. Their central premise—that because the September 11 attacks took place on U.S. soil they should be characterized as a purely "domestic" crime with no national security implications, Reply Br. at 7-11—is both factually and legally specious. The September 11 attacks can no more be considered a mere "domestic crime" than the attack on U.S. forces at Pearl Harbor by the Japanese military. The September 11 attacks were a coordinated attack against the nation, including an attack directed at the Pentagon, by a foreign terrorist organization. Indeed, they constituted the worst mass casualty attack perpetrated by a foreign terrorist organization in U.S. history – inarguably a matter related to the national security of the United States. *Cf. Holder v. Humanitarian Law Project*, 561 U.S. 1, 8-9 (2010) (statutory definition of foreign terrorist organizations); Executive Order 13,526 (defining national security information to "include information relating to defense against transnational terrorism"). A core mission of the FBI is to secure the United States from the ongoing threat

presented by foreign terrorist organizations, and investigations aimed at the activities of such organizations and those who conspire with or provide material support to them are primarily designed to combat that threat.  McGarrity Decl. ¶ 13.

Courts therefore have easily concluded that the state secrets privilege applies to information pertaining to FBI counterterrorism investigations.  *Ibrahim v. Dep't of Homeland Sec.*, No. C 06-00545 WHA, 2013 WL 4549941, at *4-*5 (N.D. Cal. Aug. 23, 2013) (upholding state secrets privilege "over information pertaining to 'subject identification,' 'reasons for investigation and results,' and 'sources and methods' used in counterterrorism operations"); *Fazaga v. FBI*, 884 F. Supp. 2d 1022, 1044 (C.D. Cal. 2012) (disclosure of counter-terrorism investigative subjects "would undoubtedly jeopardize national security"), *aff'd in part, rev'd in part on other grounds*, 916 F.3d 1202 (9th Cir. 2019) (rehearing petition pending).  Indeed, the PECs are unable to identify a single case that has held to the contrary.

These decisions are consistent with the overriding principle that the state secrets privilege applies generally to intelligence sources, methods, and activities, whether they be deployed in the counterterrorism context or otherwise.  *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1086 (9th Cir. 2010) (information "that would tend to reveal intelligence activities, sources, or methods" is material that "indisputably" falls within the scope of the privilege); *In re Sealed Case*, 494 F.3d 139, 152 (D.C. Cir. 2007) ("all discussion of intelligence sources, capabilities, and the like must be protected"); *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983) ("The various harms, against which protection is sought by invocation of the privilege, include . . . disclosure of intelligence-gathering methods or capabilities.").

The PECs' reliance on *Kinoy v. Mitchell*, 67 F.R.D. 1, 10-15 (S.D.N.Y. 1975), and *National Lawyers Guild v. Attorney General*, 96 F.R.D. 390, 402 (S.D.N.Y. 1982) ("*NLG*"),

4

Reply Br. at 7-8, is misplaced, as both cases support the Government's assertion of the state secrets privilege. *Kinoy* analyzed intelligence that was gathered to combat foreign threats to national security under the state secrets privilege, and intelligence gathered to protect against internal threats by domestic actors under the law enforcement investigative privilege. 67 F.R.D. at 10-11 & nn.17-18. *NLG* adopts a broad definition of what constitutes state secrets, holding that it covers, *inter alia*, foreign intelligence activities, covert intelligence sources, material that could disclose liaison relationships between the United States and foreign countries, and intelligence collection methods. 96 F.R.D. at 401. While *NLG* cites *Kinoy* for the proposition that the privilege does not extend to material relating to investigations of domestic threats, *id.* at 402, that discussion in both cases is inapplicable, as it is undisputed that the September 11 attacks were carried out by foreign actors.[2]

Moreover, Second Circuit case law makes clear that the privilege applies broadly to all information for which "'there is a reasonable danger that compulsion of evidence will expose . . . matters which, in the interest of national security, should not be divulged.'" *United States v. Abu-Jihaad*, 630 F.3d 102, 141 (2d Cir. 2010) (alterations in original; quoting *Reynolds*, 345 U.S. at 10); *see also Zuckerbraun*, 935 F.2d at 546-47 (in determining the validity of the privilege, the district court must "satisf[y] itself that there is a reasonable danger that disclosure of the particular facts in litigation will jeopardize national security"). The international

---

[2] To the extent that the PECs cite these cases for the proposition that intelligence activities that take place domestically cannot implicate national security concerns, this was not the holding of *Kinoy* or *NLG*. In any event, such an argument is foreclosed by the Supreme Court's subsequent decision in *CIA v. Sims*, which made clear that "all sources of intelligence information" are protected from disclosure, regardless of their provenance. 471 U.S. 159, 169 (1985); *see also Fitzgibbon v. CIA*, 911 F.2d 755, 764-65 (D.C. Cir. 1990) (holding that, after *Sims*, domestic intelligence sources are protected to the same extent as foreign sources); *accord CREW v. U.S. Dep't of Justice*, 160 F. Supp. 3d 226, 235-36 (D.D.C. 2016); *cf. Jeppesen*, 614 F.3d at 1086 (relying upon *Sims* in determining scope of state secrets privilege). Nor does *Ellsberg*, which likewise predates *Sims*, support such an argument. Plaintiffs falsely state that in *Ellsberg* "the Attorney General acknowledged that the state secrets privilege did not apply to 'domestic intelligence' surveillance." Reply Br. at 7 n.4. The United States took no such position; it simply did not assert the state secrets privilege with respect to the particular domestic wiretaps that were implicated in that case, and thus the issue was not before the court. 709 F.2d at 55 & n.11.

counterterrorism investigations that lie at the heart of the instant state secrets assertion plainly implicate national security concerns.

That the "[September 11] investigation concerns a heinous violation of federal law as well as a breach of this nation's security," *Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003), does not affect the viability of the state secrets privilege. Indeed, the Second Circuit has repeatedly affirmed that the state secrets privilege applies even in criminal prosecutions. *See, e.g.*, *Abu-Jihaad*, 630 F.3d at 141 (criminal prosecution against Navy officer who leaked classified information to jihadists); *United States v. Aref*, 533 F.3d 72, 76, 80 (2d Cir. 2008) (criminal prosecution for providing material support to a terrorist organization).[3]

The PECs' contention that the FBI's assertion of the law enforcement privilege over the information at issue demonstrates that the state secrets privilege does not apply, Reply Br. at 8 n.5, is meritless, as the two privileges are not mutually exclusive. *See Halkin v. Helms*, 690 F.2d 977, 994 n.59 (D.C. Cir. 1982) ("The fact that the informer's privilege might be applicable in addition to that for state secrets is irrelevant to the consideration of the latter privilege."). Indeed, it is not unusual for information pertaining to the national security to be relevant to law enforcement proceedings as well. *See United States v. Duggan*, 743 F.2d 59,78 (2d Cir. 1984) ("Congress recognized that in many cases the concerns of the government with respect to foreign intelligence will overlap those with respect to law enforcement").

Similarly unavailing is the PECs' argument that information describing criminal activity cannot be properly classified. Reply Br. at 11. There is no restriction on classifying information that pertains to criminal activities so long as it otherwise meets the substantive criteria for

---

[3] While in the criminal context the state secrets privilege must "under some circumstances [] 'give way . . . to a criminal defendant's right to present a meaningful defense,'" *Abu-Jihaad*, 630 F.3d at 141, in the civil context, the privilege is absolute and cannot be overcome by "even the most compelling necessity," *Reynolds*, 345 U.S. at 11.

6

classification. *See, e.g.*, *New York Times Co. v. U.S. Dep't of Justice*, No. 14 Civ. 03776 (AT) (SN), 2016 WL 5946711, at *11 (S.D.N.Y. Aug. 18, 2016) (information gathered pursuant to the President's Surveillance Program and used in counterterrorism investigations was properly classified even when investigations resulted in public criminal prosecutions); *ACLU v. U.S. Dep't of Justice*, 265 F. Supp. 2d 20, 32 (D.D.C. 2003) (orders approved under the FISA were properly classified, even if such surveillance was primarily conducted for law enforcement purposes).[4] Section 1.7(a)(1) of Executive Order 13,526, *see* Reply Br. at 11, is not to the contrary. Section 1.7(a)(1) prohibits the classification of information for the improper purpose of concealing violations of law. *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 509-10 (S.D.N.Y. 2010). It does not prohibit the classification of information that otherwise falls within the scope of the Executive Order that reveals or concerns violations of law. *Id.* at 504-05; *see also ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 622 (D.C. Cir. 2011) ("there is no legal support for the conclusion that illegal activities cannot produce classified documents"); *Agee v. CIA*, 524 F. Supp. 1290, 1292-94 (D.D.C. 1981).

The PECs' suggestion that the classification of the names of subjects in counterterrorism investigations is prohibited by the classification guidelines promulgated by the Director of National Intelligence ("DNI"), Reply Br. at 11; Second Youssef Decl. ¶ 45—a claim unsupported by citation to any provision of the guidelines themselves—is, quite simply, wrong. *Poulsen v. Dep't of Def.*, 373 F. Supp. 3d 1249, 1266, 1273 (N.D. Cal. 2019) (holding that DOJ could assert *Glomar* response to FOIA request to protect "the identity [of] any specific

---

[4] Lacking any legal authority that would support their arguments, the PECs again rely on the self-serving speculation of their retained expert, Bassem Youssef. Reply Br. at 11. Although Youssef claims no personal knowledge of the withheld information, he nonetheless offers his unsupported conjecture about whether it is properly classified. Second Supplemental Decl. of Bassem Youssef, dated Oct. 18, 2019 ("Second Youssef Decl."), ¶¶ 7-11. The Second Youssef Declaration should be stricken for the same reasons stated in the Government's prior papers.

7

individuals or organizations who are subjects of national security investigations," as this is "classified information"); *New York Times Co. v. FBI*, 297 F. Supp. 3d 435, 449 (S.D.N.Y. 2017) (identities of individuals of interest in counterterrorism investigation properly classified). The Classified McGarrity Declaration cites to the provisions of the governing classification guide that require classification here.[5]

Finally, the PECs speculate that the state secrets privilege is being asserted improperly to shield the FBI itself from potential embarrassment. Reply Br. at 1, 6-7, 11. But the Attorney General personally attested that this is not the case. *See* Barr Decl. ¶ 10. And there is no evidence that anything of an embarrassing nature to the FBI is even contained in the 2012 Summary Report. The PECs' unfounded accusations of improper motive are insufficient to overcome the FBI's assertion of privilege, particularly in light of the presumption of good faith that must be afforded to government officials. *United States Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001); *Estate of Landers v. Leavitt*, 545 F.3d 98, 113 (2d Cir. 2008).

### III.    The FBI Properly Invoked the National Security Act

The PECs' contentions regarding the FBI's invocation of the National Security Act ("NSA"), Reply Br. at 22-24, are similarly meritless. First, while the PECs take issue with the cases that have recognized that the NSA creates a privilege, one of those decisions, *Kronisch v. United States*, 150 F.3d 112, 120 n.3 (2d Cir. 1998), was rendered by the Second Circuit, which explicitly adopted the reasoning of Judge Buchwald's decision, found at 1994 WL 524992 (S.D.N.Y. Sept. 27, 1994). This Court is bound by that holding.

Second, the PECs wrongly contend that the NSA creates a qualified privilege that can be overcome upon a showing of need. "The privileges conferred by [the NSA] are absolute. The

---

[5] In any event, the state secrets privilege does not depend upon whether the information at issue is classified. *Halkin v. Helms*, 690 F.2d 977, 996 n.69 (D.C. Cir. 1982).

court need only determine whether the privileges are properly asserted, not whether a weighing of the equities favors one side or the other." *Kronisch*, 1994 WL 524992, at *7.

Third, the DNI was not prohibited from delegating the authority to protect sources and methods under the NSA to the FBI. As the D.C. Circuit explained at length in *DiBacco v. U.S. Army*, 795 F.3d 178, 197-99 (D.C. Cir. 2015), the NSA precludes the DNI from delegating his responsibility to *enact guidance* for the Intelligence Community to follow in protecting sources and methods. It does not preclude the DNI from delegating authority to protect sources and methods in individual cases to other members of the Intelligence Community. *Id.* The DNI has properly delegated such authority to the FBI. McGarrity Decl. ¶ 4 n.1; *see also Elec. Privacy Info. Ctr. v. Dep't of Justice*, 296 F. Supp. 3d 109, 121 (D.D.C. 2017).

Fourth, all four categories of information outlined in the declarations plainly fall within the broad protection of the NSA. *See Sims*, 471 U.S. at 169. For example, courts routinely hold that information regarding targets or other individuals of intelligence interest, *see, e.g.*, *Larson v. Dep't of State*, 565 F.3d 857, 866 (D.C. Cir. 2009); *Assassination Archives & Research Ctr. v. CIA.*, 334 F.3d 55, 58 (D.C. Cir. 2003); *Mosier v. CIA*, No. 2:13-cv-00744-MCE-KJN, 2013 WL 6198197, at *8 (E.D. Cal. Nov. 27, 2013), and foreign government information, *Krikorian v. Dep't of State*, 984 F.2d 461, 466 (D.C. Cir. 1993); *Amnesty Int'l*, 728 F. Supp. 2d at 503, are covered by the NSA. And most tellingly, the district court in *Broward Bulldog* has already found that information withheld from the 2012 Summary Report was covered by the NSA, *Broward Bulldog, Inc. v. U.S. Dep't of Justice*, No. 16-61289-CIV, 2017 WL 746410, at *16-18 (S.D. Fla. Feb. 27, 2017), a holding affirmed on appeal, 939 F.3d 1164, 1181-83 (11th Cir. 2019) (rehearing petition pending). Although the PECs suggest that the FBI somehow misled the district court in *Broward Bulldog* regarding the contents of the 2012 Summary Report, Reply Br.

at 23-24, they ignore that the court affirmed the FBI's invocation of the NSA only after reviewing the document *in camera*.

### IV.     The FBI Properly Invoked the Law Enforcement Privilege

The PECs incorrectly contend that the FBI's assertion of the law enforcement privilege is supported by a lone sentence in the public McGarrity declaration. Reply Br. at 13. The McGarrity Declaration makes clear that "the counterterrorism and other national security investigations undertaken by the FBI have a law enforcement purpose," and the detailed discussion set forth in paragraphs 17-37 of the declaration is equally applicable to the law enforcement privilege. McGarrity Decl. ¶ 38. The McGarrity Declaration also describes how the privilege assertion encompasses, *inter alia,* specific law enforcement methods and techniques used in the subfile investigation and the FBI's assessment of evidence. *Id.* ¶ 39.

Much of the PECs' brief is devoted to a discussion of whether the subfile investigation remains active. Reply Br. at 14-16. The Classified McGarrity Declaration describes its current status in more detail than could be provided in the public declaration, as well as the ways in which disclosure could cause concrete harms to that investigation. And whether the investigation is open or closed, the release of such information could harm the FBI's ability to conduct future investigations. *In re City of New York*, 607 F.3d 923, 944 (2d Cir. 2010).

Finally, the Classified McGarrity Declaration makes clear that certain of the information withheld from the 2012 Summary Report has no bearing on the jurisdictional discovery authorized by the Court. As to such information, the PECs cannot show compelling need.[6]

---

[6] With respect to the small amount of information for which the FBI has also asserted the work product and deliberative process privileges, contrary to the PECs' arguments, the FBI has demonstrated that this information is neither factual in nature nor a summary of past events, but rather reflects strategic discussions and contemplation of future investigative steps that fall well within the categories of both opinion work product and the deliberative process privilege. In any event, the PECs have made no attempt to show why they have a compelling need for information regarding the FBI's consultation with prosecutors regarding potential investigative steps or legal strategy.

10

Dated: November 1, 2019
New York, New York

                            Respectfully submitted,

                            GEOFFREY S. BERMAN
                            United States Attorney for the
                            Southern District of New York

By:   */s/ Jeannette A. Vargas*
        SARAH S. NORMAND
        JEANNETTE A. VARGAS
        ANDREW E. KRAUSE
        Assistant United States Attorneys

11