## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

November 22, 2019

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District Court for the S.D.N.Y.
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

Re:   *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

The Plaintiffs' Executive Committees (the "PECs") write to respond to Specially Designated Global Terrorist ("SDGT") defendant Wa'el Jelaidan's applications filed today, at ECF No. 5302 (Motion to Stay Order for Deposition), and at ECF No. 5301, filed late last night (Motion For Relief From Order). The PECs extend Mr. McMahon condolences on the sudden loss he has suffered and do not oppose the application at ECF No. 5302, provided that the Court agrees and Mr. Jelaidan's deposition is rescheduled in a timely manner, that Plaintiffs are afforded an opportunity to depose Mr. Jelaidan at a time, and in a place and manner, that does not prejudice Plaintiffs; and that all of the conditions previously imposed by the Court (in ECF Nos. 5199, 5258) remain in place. For reasons explained below, however, Plaintiffs do oppose the application at ECF No. 5301, which asks the Court to vacate portions of two orders setting conditions to which Mr. Jelaidan explicitly agreed (ECF No. 5255) and that the Court twice imposed (ECF Nos. 5199, 5258) as part of agreements necessary to conduct his deposition remotely (*see* ECF No. 5197) and again to reschedule his deposition from November 7-8 to November 25-26. (ECF No. 5255). **Because the reporter and videographer are due to depart for Jeddah tomorrow morning, we ask the Court to address these motion on an expedited basis.**

The issue Mr. McMahon raised in ECF No. 5301 became apparent this week when Plaintiffs sought simple confirmation from Mr. McMahon that Mr. Jelaidan would appear in compliance with the notice and Court's orders. Plaintiffs wanted reassurance that Mr. Jelaidan would comply before Plaintiffs committed significant resources and expended tens of thousands of dollars to move teams to Jeddah for the deposition. After initially attempting to deflect and evade the straightforward inquiries, at the eleventh hour, Mr. McMahon then sought to vacate the agreed-to conditions essential

The Honorable Sarah Netburn
November 22, 2019
Page 2

---

to ensuring an orderly proceeding of Mr. Jelaidan's remote deposition, unimpeded by counsel or other persons unfamiliar with U.S. civil proceedings, resistant to compliance with U.S. rules, and over whom the Court has no authority. For these and other reasons set out below, the PECs implore the Court not to vacate any part of the agreed-upon conditions but, instead, order Mr. Jelaidan to respond with assurances that he will appear for his deposition and comply with the Court's orders.

The Court's orders set specific, unambiguous requirements for Mr. Jelaidan's deposition, to which he agreed, and that are necessary due to his long history of non-compliance with the Court's orders, leading to the imposition of sanctions, and due to Mr. McMahon's efforts to reassign his obligations as counsel of record onto Saudi lawyers who are neither counsel of record, admitted to practice before this Court, nor otherwise accountable to this tribunal. Plaintiffs sought, Mr. Jelaidan agreed, and the Court granted, protections to require a lawyer accountable to the Court to take ownership of the discovery process and ensure that this problematic defendant would in fact appear and submit to an orderly deposition under the rules. Before agreeing to the risks and expenses of accommodating Mr. Jelaidan's request to conduct his deposition remotely, Plaintiffs demanded those conditions and Mr. Jelaidan agreed. No further inquiry or consideration was needed; Mr. Jelaidan was obligated to appear.

His eleventh-hour effort to renege on the agreed-upon conditions is one more example of precisely why those conditions are essential to an orderly completion of his deposition. In fact, even the parties' exchanges regarding his request to vacate one of the unambiguous conditions suggest that Mr. McMahon may not have given due (or any) consideration to the court-ordered conditions until Plaintiffs repeatedly asked him to confirm compliance with them over the last week. While this attitude towards the specific requirement of the Court's Order raised in the application last night is obviously problematic, the problem is much broader. It includes not only Mr. McMahon's unwillingness to fulfill his role in representing Mr. Jelaidan, but also Mr. Jelaidan's unwillingness to fulfill his obligations in discovery. It also includes concerns that deferring Mr. McMahon's representational obligations to foreign counsel completely unfamiliar with U.S. civil proceedings will result in the deposition devolving into a nullity to Plaintiffs' detriment.[1]

---

[1] Mr. McMahon suggests that, because Saudi lawyer Bassim Alim attended Georgetown law school, the Court should permit Mr. Alim to defend the witness instead of Mr. McMahon. Setting aside that the Court has already denied Mr. McMahon's request to be relieved from representing Mr. Jelaidan (ECF No. 4464), Mr. McMahon has acknowledged that Mr. Alim "does not represent Mr. Jelaidan in this MDL, is not a U.S. counsel authorized to practice before this Court, and has, therefore, not entered an appearance here." ECF No. 5255. Moreover, the PECs understand there to be good reasons to doubt that Mr. Alim will comply with the standards and rules of this U.S. Court. For example, as indicated in the PECs' October 30, 2015 correspondence to the Court (ECF No. 3095), Mr. Alim has previously offered conflicting representations for this Court's consideration regarding Mr. Jelaidan's ability to conduct business freely in Saudi Arabia. In a media interview, he asserted that Mr. Jelaidan lives a normal life, freely conducts business in Saudi Arabia, comfortably moves unrestricted throughout the country, and is "under the protection of the Kingdom." But in a letter filed for this Court's consideration, he represented that the sanctions imposed upon his client have had a chilling effect on Mr. Jelaidan's ability to communicate with, and procure documents from, government and banking entities, both within the Kingdom and abroad (*compare* ECF No. 3095 and 3095-3 *with* ECF No. 2702 at 41-42).

Other reasons also raised concerns among the PECs regarding Mr. Alim's involvement in the deposition proceedings, including that Mr. Alim also served as a director for defendant Muslim World League (Mr. Jelaidan also served as the director of the MWL's branch office in Pakistan), has been purportedly related to Osama bin Laden by

The Honorable Sarah Netburn
November 22, 2019
Page 3

---

      Mr. McMahon's request is all the more egregious given that he explicitly acknowledged the conditions and has been reminded on numerous occasions that the conditions will be applied at the deposition. Since the conditions were proposed in the PECs' October 7, 2019 letter and imposed in the Court's October 8, 2019 endorsement (ECF Nos. 5197, 5199), Mr. McMahon and Mr. Jelaidan's Saudi counsel were apprised repeatedly that the conditions would be applied. For example, the PECs exchanged emails with Mr. McMahon (and in some instances, at Mr. McMahon's suggestion, copied to Mr. Jelaidan's personal assistant) on October 7, 14, 18, 22, 31, and November 20 and 21, explicitly calling attention to the conditions. *See* collection of emails at Exh. 2. At least two emails involved explicit exchanges about the likelihood that local counsel from Jeddah would not be permitted to attend or defend the deposition. *See* emails of Oct. 7 and Oct. 15 at Exh. 3. On October 7, the PECs wrote to Mr. McMahon, stating "[You] suggest that Bassim Alim intends to defend the deposition and I am not certain whether that would be permitted." Mr. McMahon responded, stating: "is it not sufficient that i defend by telephone[?]" *Id.* Finally, the Deposition Notice, served on Mr. Jelaidan's counsel in November 13, 2019 (Exh. 1), again spelled out the conditions for the deposition, and attached the relevant court orders.

      Throughout the entire MDL, not only has Mr. Jelaidan demonstrated a willingness to ignore the Court's authority, but Mr. McMahon has also shown a reluctance to appropriately represent Mr. Jelaidan in the MDL, and legitimate concerns exist to prohibit the deposition being defended or attended by persons other than those authorized by the Court's orders. Mr. McMahon's eleventh hour effort to pass off the responsibility of defending Mr. Jelaidan in the deposition is merely a continuation of his rejected effort to be relieve from representing Mr. Jelaidan. But this Court previously addressed Mr. McMahon's application to be relieved from representing Mr. Jelaidan; Mr. Jelaidan opposed that and the Court denied that request. ECF Nos. 4464, 4031. Because Mr. McMahon, himself has elected and has proposed to defend the deposition remotely, he should follow through as proposed, or make plans to attend in person for any rescheduled date, and the Court should not countenance his last minute effort to diverge from the agreed-upon and ordered approach to the remote deposition.

      In sum, Plaintiffs do not oppose the application at ECF No. 5302, provided that the Court agrees and Mr. Jelaidan's deposition is rescheduled in a timely manner, that Plaintiffs are afforded an opportunity to depose Mr. Jelaidan at a time, and in a place and manner, that does not prejudice Plaintiffs; and that all of the conditions previously imposed by the Court (in ECF Nos. 5199, 5258) remain in place. For the reasons expressed herein, Plaintiffs do oppose the application at ECF 5301, and ask that Mr. Jelaidan be directed to offer, within three days, alternative dates for his deposition to proceed pursuant to the conditions previously imposed. Finally, Mr. Jelaidan and his counsel should be responsible for any costs incurred by the late changes.

      Respectfully submitted,

---

marriage, and was the registered agent for Taibah International, a defendant in this litigation that was defaulted by the Court for its failure to appear following service of process. The Bosnian branch office of Taibah International was designated as a SDGT entity on May 6, 2004 by the United States, in part because it was "a member of Ayadi Chafiq Bin Muhammad's network, who was designated by the Treasury Department on October 12, 2001." Mr. Jelaidan is alleged to have had a close relationship with Chafiq Ayadi for a number of years.

The Honorable Sarah Netburn
November 22, 2019
Page 4

_____

COZEN O'CONNOR

By: /s/ *Sean P. Carter*
    SEAN P. CARTER
    COZEN O'CONNOR
    One Liberty Place
    1650 Market Street, Suite 2800
    Philadelphia, Pennsylvania 19103
    Tel.: (215) 665-2105
    Email: scarter@cozen.com

*For the Plaintiffs' Exec. Committees*

KREINDLER & KREINDLER LLP

By: /s/ *Andrew J. Maloney*
    ANDREW J. MALONEY
    KREINDLER & KREINDLER LLP
    750 Third Avenue
    New York, New York 10017
    Tel.: 212-687-8181
    Email: amaloney@kreindler.com

*For the Plaintiffs' Exec. Committees*

MOTLEY RICE LLC

By: /s/ *Robert T. Haefele*
    ROBERT T. HAEFELE
    MOTLEY RICE LLC
    28 Bridgeside Boulevard
    Mount Pleasant, SC 29465
    Tel.: (843) 216-9184
    Email: rhaefele@motleyrice.com

*For the Plaintiffs' Exec. Committees*

cc:    The Honorable George B. Daniels, via ECF
       All Counsel of Record via ECF