IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | No. 03 MDL 1570 (GBD/SN) ECF Case |

This document relates to:
    *All Cases*

**Plaintiffs' Memorandum of Law in Opposition to
Defendant Wa'el Jelaidan's Rule 72 Objections to
Magistrate Judge Netburn's November 22, 2019 Text Only Order**

The Plaintiffs' Executive Committees ("Plaintiffs") respectfully submit this Memorandum in Opposition to the Rule 72 objection (ECF No. 5309) filed by Specially Designated Global Terrorist ("SDGT"), defendant Wa'el Jelaidan, objecting to Magistrate Judge Netburn's Text Only Order entered on the docket on November 22, 2019 ("Nov. 22 Order").[1]  In that Order, Magistrate Judge Netburn denied Jelaidan's November 21, 2019 motion (ECF No. 5301), where Jelaidan asked the Court to modify an order entered on November 1, 2019 (ECF No. 5258; "Nov. 1 Consent Order") at Jelaidan's request and with his consent (*see* ECF No. 5255, filed by Jelaidan on Oct. 31, 2019). Accordingly, the issue for the Court to address here is whether the magistrate judge abused her discretion in denying Jelaidan's request to modify the Nov. 1 Consent Order.  For the reasons explained here and in the Nov. 22 Order, Jelaidan's objections should be overruled.

Magistrate Judge Netburn did not abuse her discretion when, in her Nov. 22 Order, she denied Jelaidan's request to amend/correct the Nov. 1 Consent Order—an order the Court entered at Jelaidan's request and with his express consent.  As Judge Netburn explained, Jelaidan expressly agreed, on October 31, to the terms that he now seeks to modify.  Before his November 21, 2019 application, Jelaidan had never expressed any objection to the terms to which he had agreed three weeks earlier.  Moreover, when Jelaidan belatedly moved to amend the order, he offered no creditable explanation for failing to object to the terms in a timely manner.

---

[1] The Text Only Order, entered on the docket on November 22, 2019, at 4:42 pm, reads:

> ORDER denying [5301] Motion to Amend/Correct. On October 31, 2019, Jelaidan requested that the Court extend the deadline to complete his deposition. ECF No. 5255. As part of that request, Jelaidan expressly agreed that his deposition cannot be attended (either in person or via video link) by any person who is not... U.S. counsel in this MDL for Mr. Jelaidan (or that counsel's U.S. staff). *Id.*, at 2. On November 1, the Court granted Jelaidan's request and incorporated the parties' conditions into its Order. ECF No. 5258. Jelaidan asks the Court to amend the November 1 Order to allow his local counsel in Saudi Arabia to attend his deposition. This request is DENIED. Jelaidan will be represented during his deposition by U.S. counsel via teleconference. Given that Jelaidan already agreed that non-U.S. counsel cannot attend and given that Jelaidan does not explain why these concerns were not raised in his October 31 letter the Court sees no reason to reconsider its decision. Mr. Alim may attend the deposition only with Plaintiffs' consent. (HEREBY ORDERED by Magistrate Judge Sarah Netburn) (Text Only Order) (ras).

Jelaidan raises irrelevant and misleading points in his objections. For example, the outright absurdity of Jelaidan's objections is apparent from his query as to why Plaintiffs' counsel had not informed Jelaidan's counsel about conditions within an order to which Jelaidan had agreed (and requested). First, Plaintiffs owed Jelaidan no duty of the kind he suggests; that duty is one his counsel owes to him. Second, the unambiguous terms that Jelaidan contends that Plaintiffs were obliged to disclose to his lawyer were included in two separate orders—one on October 8, 2019 (ECF No. 5199) and another in the Nov. 1 Consent Order (ECF No. 5258). Based on Jelaidan's counsel's own reading of the plain text of the orders, he was (or ought to have been) on notice of those conditions. Third, the conditions about which Jelaidan complains, although negotiated with Plaintiffs as part of Jelaidan's requests to conduct his deposition remotely (see ECF No. 5197) and again to reschedule his deposition from November 7-8 to November 25-26 (ECF No. 5255), were items that Jelaidan *himself* included *in his own* October 31, 2019 filing (ECF No. 5255). Fourth, as indicated in Plaintiffs' opposition (at ECF No. 5304), Jelaidan was made aware of the conditions at least as early as October 7, 2019 (ECF No. 5304-2 at 2), and was reminded repeatedly no less than **nine times** between October 7 and November 21, 2019. *Id.* at 2-13. Finally, and perhaps most striking, although Plaintiffs dispute that they had *any* obligation to explain to Jelaidan's counsel the plain text of the Court's orders (and had no obligation to provide the multiple admonitions about needing to comply with conditions in the orders), Plaintiffs' counsel in fact *did* question—in October 7, 2019 and October 15, 2019 emails—Jelaidan's counsel's implications that Saudi counsel might play a role in the deposition. *See* ECF No. 5304-3 at 2, 3 ("The exchange below appears to suggest that Bassim Alim intends to defend the deposition and I am not certain whether that would be permitted" and "Is there a need for me to speak to Bassim directly as

opposed to speaking to you? I am unclear as to what role you understand Bassim to play in [Wa'el Jelaidan's] deposition").[2]

Though the District Court should overrule Jelaidan's objections for the reasons articulated in the Court's Nov. 22 Order, the Court should overrule the objections also because (for reasons explained in Plaintiffs' filing at ECF No. 5304, incorporated herein), the Court was correct to impose the conditions for Mr. Jelaidan's deposition. The conditions are necessary due to Jelaidan's long history of non-compliance with the Court's orders, resulting in extreme delay, and leading to the imposition of sanctions. *See, e.g.*, ECF Nos. 2789, 3073 (imposing sanctions on Jelaidan after finding that he had failed to meet even his most basic discovery obligations, resulting in extreme delay; had failed to comply with the Court's discovery orders, despite repeated warning; and acted in bad faith, ECF No. 2789 at 9-15 and 3073 at 3). The conditions are also essential due to Mr. McMahon's efforts to reassign his obligations as counsel of record onto Saudi lawyers who are not counsel of record, not admitted to practice before this Court, and not otherwise accountable to this tribunal. Plaintiffs sought, Mr. Jelaidan agreed, and the Court granted, protections to require a lawyer accountable to the Court to take ownership of the discovery process and ensure that this problematic defendant would in fact appear and submit to an orderly deposition under the rules. The very fact that Jelaidan's counsel relied exclusively on Saudi counsel to schedule the deposition and never shared the conditions imposed in the orders underscores that counsel was deferring his obligations. But before agreeing to

---

[2] Purporting to quote from the Court's order, Jelaidan's counsel argues that he understood Plaintiffs to have consented to allowing Jelaidan's Saudi counsel to attend the deposition because, he says, the Court's order provides that "no one will be allowed in the deposition room unless agreed by the PEC, which agreement will not be unreasonably withheld." ECF No. 5309 at 2. But no order, or even an email exchanged about the orders, says that. While there are very good reasons for imposing the conditions that the Court imposed, and while Plaintiffs have consistently acted reasonably and in good faith (indeed, going out of their way to call Jelaidan's counsel's attention repeatedly to the terms of the order), it is nonetheless just not true that the terms of any order stated that "agreement will not be unreasonably withheld."

3

the risks and expenses of accommodating Mr. Jelaidan's request to conduct his deposition remotely, Plaintiffs demanded those conditions and Mr. Jelaidan agreed.[3]

The day before Jelaidan's deposition was adjourned due to a death in his counsel's family, Jelaidan filed his last-minute application seeking to renege on the agreed-upon conditions. His long history of sanctioned conduct (*see, e.g.*, ECF Nos. 2789, 3073), along with his application to renege on agreed-to conditions, his objections, and the exhibit that accompanied the objection, all serve to underscore why the conditions the Court imposed on his deposition are essential to an orderly completion of his deposition. Jelaidan's entire approach to discovery, his deposition, the motions, and his objections suggest that his counsel gave little to no consideration to the court-ordered conditions until Plaintiffs repeatedly asked Jelaidan to confirm compliance with the conditions leading into the deposition. Even more so, the letter from Jelaidan attached to his objection,[4] underscores that Jelaidan continues to show little regard for his obligations, as a defendant subject to this Court's authority, to comply with this Court's orders and rules. On its face, Jelaidan confirms that, unless the Court revises its order to his liking, he will no longer "participate" or "cooperate with [the] court system in the United States," including refusing to comply with his obligation to testify at his own deposition. ECF No. 5309 at 8-9.

---

[3] Importantly, the Court has already indulged Jelaidan's reluctance to comply with the Court's deposition protocol, which set four presumptively acceptable locations for depositions—New York, London, Madrid, and Rome. The Protocol Order specifically provides that depositions need not occur in locations such as Saudi Arabia, or be conducted by remote means, absent Plaintiffs' consent. Jelaidan refused to appear in any of those locations, resulting in the Plaintiffs conceding and voluntarily agreeing to conduct a remote deposition, conditioned on Jelaidan agreeing to certain concessions, including those that he now disputes. To the extent that he declines to comply, the location of his deposition must revert to one of the four presumptive locations, or some other mutually acceptable location.

[4] Although Jelaidan's objection refers to the letter as a privileged document, Jelaidan waived the privilege even before he filed the letter on the court's public ECF. Jelaidan's own personal assistant copied multiple lawyers and staff working with the Plaintiffs' Executive Committees when he emailed the letter to Jelaidan's counsel, and Jelaidan specifically directed counsel to circulate the letter to the Court and all of the parties' counsel. ECF No. 5309 at 8-9. In addition, the letter addresses non-privileged email communication between Jelaidan and counsel for the Kingdom of Saudi Arabia, Andrew Shen.

The "number of reasons for [Jelaidan's Saudi counsel] to be present in the deposition" that Jelaidan offers for the first time in his November 26 objections, explain very little about why the Court should not have imposed the conditions to protect the processes and procedures of this Court's proceedings. Jelaidan's suggestions that "there could be local repercussions in Saudi Arabia, based on what Defendant [Wa'el Jelaidan] says" and that "attorneys for [Saudi Arabia] will be present and obviously have a right to question Defendant Jelaidan" are mere vague conjecture that explain nothing about why a lawyer not answerable to this Court is essential to the deposition proceedings.

Ultimately, though, the question for the Court here, on Jelaidan's Rule 72(a) objection, is whether the magistrate judge abused her discretion in denying Jelaidan's request to modify the Nov. 1 Consent Order. For the reasons explained here and in the Nov. 22 Order, the magistrate judge did not abuse her discretion and Jelaidan's objections should be overruled. Jelaidan offered no reason for asking, on the eve of his deposition, to alter the terms of an order that he was aware of, that he agreed to in exchange for a change in venue and a deposition adjournment, that he requested on October 31, 2019, and that the Court entered on November 1, 2019. His counsel had negotiated the terms and Mr. Jelaidan agreed to each of the conditions. Finally, under the circumstances, each of the conditions is well warranted.

Dated: December 2, 2019

    Respectfully submitted

    THE MDL 1570 PLAINTIFFS" EXECUTIVE COMMITTEES

| /s/ Robert T. Haefele | /s/ Sean P. Carter |
|---|---|
| Robert T. Haefele, Esq. | Sean P. Carter, Esq. |
| MOTLEY RICE LLC | COZEN O"CONNOR |
| 28 Bridgeside Boulevard | 1900 Market Street |
| Mount Pleasant, SC 29464 | Philadelphia, PA 19103-3508 |
| (843) 216-9000 | (215) 665-2105 |
| rhaefele@motleyrice.com | scarter@cozen.com |
| *For the Plaintiffs Exec. Committees* | *For the Plaintiffs Exec. Committees* |

/s/ Andrew J. Maloney III
Andrew J. Maloney III, Esq.
KREINDLER & KREINDLER LLP
750 Third Avenue
New York, NY 10017
(212) 687-8181
amaloney@kreindler.com

*For the Plaintiffs Exec. Committees*