JBF7MDLC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   IN RE:  TERRORIST ATTACKS
    ON SEPTEMBER 11, 2001                    03 MDL 1570
4
    ------------------------------x
5                                            New York, N.Y.
                                             October 4, 2019
6                                            11:00 a.m.

7   Before:

8                       HON. SARAH NETBURN

9                                            Magistrate Judge

10

11                  APPEARANCES (via telephone)

12  COZEN O'CONNOR
         Attorneys for Plaintiffs' Executive Committee
13  BY:  SEAN CARTER

14  MOTLEY RICE LLP
         Attorneys for Plaintiffs' Executive Committee
15  BY:  ROBERT HAEFELE
         JOHN EUBANKS
16

17  KREINDLER & KREINDLER LLP
         Attorneys for Plaintiffs' Executive Committee
18  BY:  ANDREW MALONEY

19  ANDERSON KILL PC
         Attorneys for Plaintiffs' Executive Committee
20  BY:  JERRY GOLDMAN

21  BERNABEI & WACHTEL PLLC
         Attorneys for Defendants' Executive Committee
22  BY:  ALAN KABAT

23  LAW FIRM OF OMAR T. MOHAMMEDI LLC
         Attorneys for Defendants' Executive Committee
24  BY:  OMAR MOHAMMEDI

25

JBF7MDLC

1   APPEARANCES (Continued)

2   JONES DAY
         Attorneys for Dubai Islamic Bank
3   BY:   STEVEN COTTREAU
         GABRIELLE PRITSKER

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JBF7MDLC

1          (In chambers)

2          THE COURT:  There is Judge Netburn.  Do we have

3    everyone now?  Thank you, Ms. Pritsker.

4          So, we are here with my law clerk and with a court

5    reporter.  I'm going to go over the game rules, which are that

6    I'm going to ask folks to state their appearance.  If you can

7    please only state your appearance if you anticipate speaking.

8    If you are on the line but you don't anticipate speaking, there

9    is no need for you to state your appearance.  If at some point

10   later in the conference you realize that you do need to speak,

11   you can state your appearance at that time.

12         Second, I just want to remind everybody that before

13   you speak it's important that you identify yourself so that

14   your statements can be attributed to the right person, and

15   please do that even if you're confident that we all recognize

16   your voice.  That way we can be assured to have a complete

17   transcript.

18         So let me ask whoever is on the line and anticipates

19   speaking on behalf of the Plaintiffs' Executive Committee to

20   state their appearance.

21         MR. CARTER:  Your Honor, Sean Carter on behalf of the

22   Plaintiffs' Executive Committee.

23         MR. HAEFELE:  Your Honor, Robert Haefele.  And I have

24   with me John Eubanks on behalf of the Plaintiffs' Executive

25   Committee.

JBF7MDLC

```
 1              THE COURT:  Thank you.  Anybody else from the PEC?
 2              MR. MALONEY:  Your Honor, Andrew Maloney from
 3     Kreindler.  I wasn't planning on speaking but I'm here.
 4              MR. GOLDMAN:  Jerry Goldman from Anderson Kill.
 5              THE COURT:  OK, thank you.  Again, if anyone plans on
 6     speaking that didn't state their appearance, they can do so at
 7     a later time.
 8              And Mr. Kabat, are you on the line for the Defendants'
 9     Executive Committee?  Who is here for the Defendants' Executive
10     Committee?
11              MR. KABAT:  Alan Kabat.
12              THE COURT:  Thank you.  Anybody else here from the
13     Defendants' Executive Committee?
14              MR. MOHAMMEDI:  Omar Mohammedi.  Good morning, your
15     Honor.
16              THE COURT:  Good morning.
17              MR. COTTREAU:  Your Honor, this is Steve Cottreau.
18     With me is Gabrielle Pritsker for Dubai Islamic Bank on the
19     defense side.
20              THE COURT:  Anybody else here on behalf of a
21     defendant?
22              OK.  I believe we have two items on our agenda today.
23     The first is to set a schedule for expert discovery in the
24     cases brought that are currently in merits discovery as well as
25     the individual defendants in jurisdictional discovery.  The
```

JBF7MDLC

1    second item on the agenda is to set a briefing schedule for

2    class certification in the O'Neil case.

3           So let's begin with expert discovery.  We have been

4    sort of talking about this issue over the last few months, but

5    I have not had clarity on precisely what sort of expert

6    discovery the parties are anticipating.

7           I see from the October 17 letter that at a minimum not

8    only are the plaintiffs anticipating having an affirmative

9    expert or experts, but that the defendants, in addition to

10   rebuttal reports, are contemplating affirmative reports on

11   their own.  So, let me begin by asking someone from the

12   plaintiffs side to tell me exactly what sort of expert reports

13   you are contemplating.

14           MR. CARTER:  Your Honor, this is Sean Carter.  We

15   obviously have about ten defendants or so who are actively on

16   some level participating in the discovery proceedings, and so

17   we anticipate that we're going to need experts to address the

18   conduct of those defendants as reflected in governmental and

19   other reports as well as in the discovery materials and

20   deposition testimony that's been provided by defendants, and

21   then experts also to place those in context with regard to the

22   development of the Al-Qaeda organization, how it used its

23   resources to build the infrastructure necessary to attack

24   America and how it deployed those resources to attack America

25   as well.

JBF7MDLC

1        There has also been a fair amount of financial

2    information provided, including accounting reports and audits

3    by certain of the defendants, so it may be necessary to have

4    some experts with particular expertise in those areas.

5        Our goal is to refine the population of experts as

6    much as possible and use a limited number of people.  There is

7    some bandwidth issues with doing that.  An individual expert

8    may be able to address multiple issues that we think we need to

9    make an expert proffer on, but that person is going to need

10   some time to get through all of those, which is sort of built

11   into the structure that we proposed.

12        THE COURT:  So what I think I heard from you are three

13   different types of reports:  One is a report about Al-Qaeda

14   from maybe a historian or someone with intelligence background;

15   the second category are potentially financial reports,

16   presumably some sort of accountant or CPA who might evaluate

17   the audits and the financial records from the various

18   organizations; and then, thirdly, experts -- I am assuming

19   again maybe historians or intelligence people -- who can talk

20   about each of these organizations and what their work is and

21   how that interfaces with your allegations.  Is that a fair

22   assessment?

23        MR. CARTER:  That's fair, your Honor.  There are, in

24   addition, some issues relating to particular conflicts or

25   developments that were occurring in various regions.  We're

JBF7MDLC

1   obviously dealing with a global enterprise, and many of the

2   defendants had global footprints that we have alleged were

3   involved, and there might be some context with regard to what

4   was going on in those particular regions and their relationship

5   to Al-Qaeda's agenda and in certain cases specifically to the

6   9/11 attacks that are relevant.  But I see that in the category

7   your Honor described as being sort of a broader understanding,

8   and it may be single person or it may be multiple.

9            THE COURT:  All right.  Let's put a pause there for a

10   moment.  Let me turn to the defendants.

11            In the October 17 letter there is an indication that

12   the defendants are anticipating their own affirmative experts

13   in addition to rebuttal experts.  Who are those affirmative

14   experts that you are contemplating?

15            Mr. Kabat, are you going to be speaking on this?

16            Is there anybody here on the line -- Mr. Mohammed or

17   Mr. Cottreau -- who is going to speak about the defendants'

18   experts?

19            MR. COTTREAU:  Your Honor, this is Steve Cottreau.

20   Possibly Mr. Kabat is having technical difficulties.  I'm happy

21   to speak to it.

22            I don't think we have made final decisions on our side

23   about experts, but certainly some of the topics that plaintiffs

24   are anticipating are topics that defendants are anticipating,

25   including Al-Qaeda-related experts; potentially for my client,

JBF7MDLC

1   which is a bank, banking-related experts; and also some of the

2   accounting issues are certainly things that we are looking at

3   on our side as well.

4          THE COURT:  Why would those not be submitted in the

5   form of a rebuttal report?

6          MR. COTTREAU:  Your Honor, I think it's very tough in

7   this situation to say that it would be rebuttal, because some

8   courts construe that very narrowly, and thus if we have an

9   opinion that strays too far -- our experts have an opinion that

10  strays too far from what plaintiffs' experts have said -- it

11  could be considered to be an affirmative opinion.  And also

12  we're just not sure what plaintiffs are going to be offering as

13  affirmative opinions to say that the opinions of our expert are

14  going to be fully considered to be rebuttal opinions.

15         THE COURT:  OK.  I'm very much disinclined to adopt

16  the schedule that's been proposed, in part because of this

17  staggered proposal where affirmative reports are filed on one

18  day and then thereafter additional affirmative reports are

19  filed.

20         I see that the parties at least are proposing that the

21  plaintiffs would have an opportunity for rebuttal reports of

22  those experts -- of the affirmative experts.  It seems to me

23  there must be an easier way to address your concern, including,

24  for example, that what would otherwise be identified as your

25  rebuttal report would include any additional information within

JBF7MDLC

1     the subject matter -- accounting, banking, whatever the subject

2     matter is -- and then, if necessary, the plaintiffs could have

3     a limited response to that additional information.

4              MR. COTTREAU:  Your Honor, this is Steve Cottreau.  I

5     think that's what we had anticipated, that plaintiffs would

6     disclose their expert opinions, that the defendants' all-in-one

7     opinion would disclose their expert opinions, and then

8     plaintiffs -- to the extent there was anything new in the

9     defense expert reports -- plaintiffs' experts would have a

10    chance to address that material.

11             So, I think that's what we had tried to capture with

12    this schedule, as opposed to, as you know, the other popular

13    way to do this is you have a simultaneous exchange of

14    affirmative reports and a simultaneous exchange of rebuttal

15    reports.

16             I think the point that the schedule that we propose

17    makes is that the defendants wouldn't then have to file two

18    sets of reports for their experts; their experts could do it

19    all with one report; and it's only on plaintiffs' side that you

20    would have two sets of reports.  So, I think the way we have

21    tried to address this schedule for experts cuts down on the

22    number of expert reports and actually makes this a bit simpler.

23             MR. CARTER:  Your Honor, this is Sean Carter again.  I

24    just wanted to note that during the conversation the PECs did

25    express their view that affirmative expert reports should

JBF7MDLC

1    normally be exchanged simultaneously, and that's our general

2    position.  We agreed to the staggering just for the sake of

3    reaching an agreement rather than having to brief the dispute

4    for the Court.

5          THE COURT:  So, look, there is no scenario in which

6    I'm adopting the schedule that you've proposed.  From what I

7    hear from the parties, the majority of the experts that you're

8    contemplating are experts with information probably that they

9    have by way of their own expertise, and only a limited amount

10   is probably by way of the discovery that you've collected over

11   these past years or months.  So, I'm not sure why we need to

12   have a schedule that puts us all the way to 13 months from

13   today in order to complete expert discovery.

14         On the one hand, I appreciate that this case is

15   obviously of extraordinary scope and that the nature of the

16   allegations are exceptional.  That said, the types of experts

17   that you are talking about do not strike me as particularly

18   exceptional, and I haven't heard anything yet to suggest that,

19   for instance, the plaintiffs need five months from today to

20   file an expert report.

21         I would imagine that these experts that you are

22   contemplating are people that you have been in touch with over

23   the last decade as you develop your theory of the case, and so

24   I haven't heard anything yet to hear a basis for the deadlines

25   that are proposed.

1              With respect to the scheduling, I would like to

2     shorten it, and if the best way to do it is to have any party

3     who is filing an affirmative reports to file it in the first

4     instance, and then thereafter to file any rebuttal report so

5     that the parties both have an opportunity to sort of clean up

6     or respond to anything new, that seems to me the most efficient

7     way to proceed rather than having a three-stage process.

8              MR. NASSAR:  Your Honor, this is Waleed Nassar on

9     behalf of the Muslim World League, the International Islamic

10     Relief Organization and the charity officials.  I think we're

11     in a bit of a different posture than Steve and maybe some of

12     the codefendants in that we have had approximately nine

13     depositions over the past year and a half that have kind of

14     made clear -- more clear what plaintiffs' theory of the case is

15     against our client in particular.

16              As you are aware, later this month Wael Jelaidan is

17     set to be deposed as well later in Saudi Arabia.  So, it

18     certainly has not been the case for our defendants where we

19     have known particularly which experts we would need to use over

20     the past decade or so.  A lot of that has been evolving over

21     the past few months.  That's not to say that the current

22     schedule that we are proposing is obviously necessary for our

23     clients, but we have had an evolving I think offense where a

24     lot of it has been subsequent to what has happened in the

25     recent depositions as well as what may or may not happen in the

JBF7MDLC

1    deposition later this month.

2            THE COURT:  OK, thank you.

3            MR. CARTER:  Your Honor, this is Sean Carter.  If I

4    can speak to the point your Honor raised about sort of the

5    nature of the expert reports and the relative complexity of it.

6            I think what Mr. Nassar just said is true for the

7    plaintiffs as well.  Without getting into any disagreements

8    that we've had along the way, plaintiffs' view is that many of

9    the documents that have been produced were in a disorderly

10   fashion and were very difficult to understand simply as

11   presented, and so the depositions have been relatively

12   significant in understanding a bit better the content and

13   context of the documents which number into the millions of

14   pages we have received from the defendants along the way.

15           So, we do have quite a bit of information that needs

16   to be fed into the experts, and we're dealing with ten

17   defendants.  There is some interrelationships among some of

18   them but they obviously have to be addressed on their own

19   relative merits.

20           And as I mentioned at the outset, one of the things

21   that we're hopeful being able to do is refine the number of

22   experts by using people who have qualifications to address as

23   many issues as is possible, but there is a bandwidth issue

24   there.  We are still in depositions.  We have one later this

25   week, and we have the Jelaidan deposition towards the end of

JBF7MDLC

1    November, and we're cognizant that experts are going to have

2    some time demands in other areas particularly at the end of the

3    year around the holidays.  But with all that said, we obviously

4    had in discussions suggested the notion of a simultaneous

5    exchange perhaps being more efficients, and we're fine with

6    that.

7                THE COURT:  I assume at least some of these experts

8    are known to you at this point.  Why are you not feeding them

9    documents on a real-time basis?

10               MR. CARTER:  Well, your Honor, we have been feeding

11   them some documents on a real time basis, but part of the issue

12   is that there was quite a lot of largely irrelevant material in

13   the documents, and we have had to go through a deposition

14   process in order to separate the wheat from the chaff in some

15   cases, and to narrow down sort of the particular transactions,

16   relationships that stand out, and that has been ongoing through

17   the deposition process including two weeks ago when we were in

18   Madrid.

19               So, we have been working through it, but we still

20   don't even have final deposition transcripts in some cases for

21   some of these people.  And again we're dealing with we're the

22   plaintiffs, we have the burden of proof, we have that burden

23   with regard to a group of ten defendants, so it's a relatively

24   expansive expert undertaking even if we try to refine it to as

25   few people as possible.

JBF7MDLC

1       THE COURT:  Do you think you could identify your

2   experts and the subject matter within 30 days from now?

3       MR. CARTER:  Without conferring with my cocounsel and

4   the PECs, I would probably be overstepping my bounds, your

5   Honor.  I just want to make sure.  There is some availability

6   issues, and there is a fair number of balls in the air there,

7   and again some of this has to do with the schedule itself, your

8   Honor, because there may be people who say, well, under the

9   timeline that you're suggesting I can't undertake that whole

10  group of issues; I can only take two of the five, so you're

11  going to have to find someone else.  So, there is a little bit

12  of that discussion ongoing on our side.

13      THE COURT:  OK, let me go back.

14      MR. SALERNO:  Your Honor, this is Peter Salerno for

15  defendant Yassin Kadi.  If I may interject on another

16  defendant's side here.

17      Unlike Mr. Nassar, we have no idea what the claims

18  against our client are.  The most recent claims are the 15 year

19  old ones and a bunch of complaints.  We have not been able to

20  develop a theory of a defense because we have no idea what the

21  theory of the case is.

22      There has been one deposition about our client, and it

23  was our client, so he did not inculpate himself.  So, we share

24  Mr. Cottreau's concern that right now we have no idea what an

25  affirmative expert on our side would look like, but that could

JBF7MDLC

1    certainly change when you see what the plaintiffs provide.  And

2    as Mr. Cottreau said, if the law that's going to be applied

3    here is that rebuttal is narrow, we might be in the same

4    position that Mr. Cottreau is concerned about.

5              THE COURT:  Thank you.

6              Mr. Cottreau, let me return back to you since you

7    began the conversation.  If we were to have a schedule where

8    the plaintiffs and defendants both produced whatever expert

9    reports they anticipated in the first instance but with an

10   opportunity to file a rebuttal report thereafter, what

11   prejudice do you think would flow to your client?

12             MR. COTTREAU:  Your Honor, I just thought the most

13   efficient way here on the defense side.  These tend to be very

14   expert intensive cases, Antiterrorism Act cases.  We took a

15   look at three cases in preparation for today's hearing -- Lin

16   v. Aerobank, which was in the Eastern District; Sokolow v. PLO,

17   which was before Judge Daniels; and Strauss v. Credit Lyonnais,

18   which was also in the Eastern District -- and during their

19   expert phases those were essentially all single-defendant

20   cases.  The two sides had somewhere between 20 and 32 experts

21   by our count of public documents, so even in a single-defendant

22   case these tends to be quite extensive in terms of the number

23   of experts.  Our hope is that we're in that range even though

24   we have a multiple-defendant case here.  But it tends to be a

25   very complicated affair in terms of the expert work, and so we

JBF7MDLC

1    thought the one great thing about the schedule that we proposed

2    at least in the sequencing was that at least from the defense

3    experts -- and we anticipate there could be more than a dozen

4    of those -- they would only need to file a single report that

5    contained both affirmative and rebuttal opinions, and we could

6    cut down substantially on the number of expert reports that

7    need to be reviewed in this case with the standard schedule, as

8    opposed to those experts having to file two reports,

9    affirmative and rebuttal, and we wind up with another dozen or

10   more expert reports in this case.

11           THE COURT:  OK.  All right, this was helpful.  I think

12   I'm going to take all the information that I have here and sit

13   on it for a little bit of time and issue an order.

14           I will give you these parting words, which are that

15   expert discovery is going to conclude far sooner than December

16   7, 2020.  So if you need to do anything when we hang up the

17   phone, you might want to call your experts.

18           I will try and be as respectful and reasonable as

19   possible, but a schedule that contemplates 13 months of expert

20   discovery is not something that I'm going to endorse.  I really

21   want to move this case forward as quickly as possible.  I know

22   that the parties do too.  The types of experts that you are all

23   contemplating from my perspective seem largely -- not

24   exclusively or entirely -- but largely experts who intend to

25   discuss topics that you are already familiar with, and so I

JBF7MDLC

1  don't see this as a typical case where you need to complete all

2  of fact discovery and get that over to your experts.  It seems

3  to me most of these experts, given their likely background,

4  could be developing their expert reports already and then

5  filling in information with the discovery that you've

6  collected.

7        So, I'm not inclined to give the parties the scope of

8  time that you're seeking here, but I will take everything that

9  you've said under advisement and will issue an order in the

10  next couple of days.

11        Let's move to the class action.  And I will invite at

12  this point anyone who doesn't need to be on the line to get

13  off.  I think that this is a smaller group of people.  I guess

14  before I do that, I will just see if anyone who would otherwise

15  get over the phone has anything else to add to today's

16  conference.  OK.  Hearing nothing, I will assume that the

17  topic, agenda item 1, is done.

18        So, the next question is with respect to the class

19  certification briefing.  And I have the October 15 letter from

20  Mr. Cottreau.  And, Mr. Goldberg, are you the plaintiff's

21  lawyer in this case?

22        MR. GOLDMAN:  Yes, your Honor.  Goldman.

23        THE COURT:  Goldman.  Excuse me.  I apologize.

24        All right.  So we have a proposed motion here to be

25  filed January 31.  Can I just get a little bit more clarity

JBF7MDLC

1   here on what this class action looks like?  I understand that

2   the defendants in this case are the various organizations and

3   the Dubai Islamic Bank as well as Mr. Kadi.  Is that correct?

4              MR. GOLDMAN:  That's correct, your Honor.  It is most

5   of the defendants who are in front of your Honor but not

6   completely all of them.  By and large most of the individual

7   jurisdictional defendants are not involved.

8              THE COURT:  OK.  Mr. Kadi is involved; is that

9   correct?

10             MR. GOLDMAN:  That is correct.  And you're right, your

11  Honor, Dubai Islamic Bank.

12             THE COURT:  And what is the class that you're seeking

13  to certify, just so I have a sense of what we're talking about

14  here?

15             MR. GOLDMAN:  The class is as defined in the original

16  pleadings last amended September 30, 2005.  We see no reason to

17  enlarge that class right now.  I would have to speak to my

18  cocounsel as to whether or not we can limit that class.  I

19  suspect for this piece of litigation we will limit it somewhat.

20  My guess is it will finally end up being about 700, 800

21  families.

22             THE COURT:  700 to 800 families.  And so these are

23  families who have a family member who was killed in the 9/11

24  attacks and against whom you are moving for these particular

25  defendants?

JBF7MDLC

1      MR. GOLDMAN:  That is correct.  It would consist of

2  the estates of those who were killed as well as the limited

3  categories of family members, spouses, children, siblings and

4  parents.

5      THE COURT:  And you said 700 to 800 families.  Who is

6  in and who is out?  There are obviously more than that many

7  families affected by the attacks.

8      MR. GOLDMAN:  That's correct.  I would have to speak

9  to my cocounsel from Motley primarily and Kreindler on that to

10  make the final determination, but the out would be those who

11  were in those particular actions.

12      THE COURT:  So families who are in other cases are not

13  going to be covered?

14      MR. GOLDMAN:  That is our inclination.  I have to

15  finalize that, your Honor.

16      THE COURT:  OK.  And I guess -- and so presumably

17  there are lots of family members who might be covered by this

18  class action who are currently represented by other lawyers,

19  and I presume that those family members will opt out of your

20  class action.  Is that your assumption as well?

21      MR. GOLDMAN:  I don't believe that there are very many

22  who are represented by other counsel.  Under that limited

23  definition, if I back out the Motley group, if I back out the

24  Kreindler group, there are very few.  Let's say I also back out

25  the Havlish group, and let's assume that there have been no

JBF7MDLC

```
1    other families, I think maybe 25 to 30 other personal reps are

2    in the case.  I'm also backing out, your Honor, the inhalation

3    cases.

4              THE COURT:  The what cases?

5              MR. GOLDMAN:  The injury cases, the people who were

6    injured or including those who passed away later on.

7              THE COURT:  Forgive me for asking this question, but

8    what purpose does your class action serve if all of these

9    categories of families are going to be excluded from your class

10   action?

11             MR. GOLDMAN:  Because we're including about 800

12   families.

13             THE COURT:  Who are not otherwise represented?

14             MR. GOLDMAN:  Correct.

15             THE COURT:  OK.  And on your class certification

16   motion, obviously you need to satisfy Rule 23.  Can you give me

17   a little preview of what this motion looks like?

18             MR. GOLDMAN:  The motions would look like a

19   description of the case, a description of the class, a

20   description of how the class representatives meet the Rule 23

21   standards, a description of how the case meets the Rule 23

22   standards, adequacy of class counsel, adequacy of class

23   representatives.  We had depositions last week of the three

24   named class representatives.

25             THE COURT:  OK.  Why do you need three months from
```

JBF7MDLC

1    today to file this motion?

2            MR. GOLDMAN:  There is somebody else on the line that

3    sometimes cuts in, so I can't a hundred percent hear what

4    you're saying, but if I thought I heard you, it's why we need

5    three months?

6            THE COURT:  Correct.

7            MR. GOLDMAN:  Part of it was dealing with the expert

8    piece.  Part of it was dealing with other parts of litigation

9    in this case, and then I didn't want to back it up so it was

10   due right at the end of the holidays.

11           THE COURT:  OK.  Do you think you could be prepared to

12   file it by let's say December 16, by the middle of December?

13   Would that be something you could do?

14           MR. GOLDMAN:  I think that would be rather difficult,

15   your Honor.  If your Honor has concerns about the time, I could

16   finish it two or three weeks earlier than say the middle of

17   January or sometime a little bit earlier in January.

18           THE COURT:  All right.  And, Mr. Cottreau, are you

19   going to be taking the lead, your firm, on the opposition to

20   this class motion?

21           MR. COTTREAU:  Yes, your Honor, I think for purposes

22   of this discussion we will take the lead.

23           THE COURT:  And so I have a similar question, which is

24   now that I have some sense of what this class action motion is

25   going to look like, it sounds like it will be limited on sort

JBF7MDLC

1    of liability issues, and I think more about the Rule 23

2    standards, which is typical obviously.  So, why do you need an

3    additional 60 days to respond?  I mean again I appreciate this

4    is 9/11, but this also looks like a classic class certification

5    motion which defendants typically respond to in 30 days.

6         MR. COTTREAU:  Your Honor, your understanding of

7    clarity that it's limited to liability issues is not our

8    understanding.  Our understanding is that plaintiffs in the

9    O'Neil case are still contemplating whether this will be as to

10   liability only or as to liability and damages as a class

11   action.  So, I would say that we have a lack of clarity about

12   exactly how the class is going to be formulated and for what

13   purposes it's going to be formulated.

14        We could certainly accelerate our time to respond.  I

15   would just ask for an extra couple of weeks off the 30 days

16   that you are proposing so we have time to consult with our

17   foreign clients and make a decision about opposition and also

18   to get on the same page with our codefendants on that issue,

19   but I think we could respond in 45 days.

20        THE COURT:  OK.

21        MR. GOLDMAN:  Your Honor, so it's clear, we're not

22   limited solely to the issue of liability and the discovery that

23   took place last week and the interrogatories earlier that dealt

24   both with damages and liability.

25        THE COURT:  And you intend to raise all of that in

JBF7MDLC

1     your motion?

2             MR. GOLDMAN:  Yes.

3             THE COURT:  OK.  I will take all of this under

4     advisement as well and get an order out on how to proceed.

5             OK.  Anything further?

6             MR. GOLDMAN:  No, your Honor.

7             THE COURT:  OK.  Thank you everybody.

8             MR. GOLDMAN:  Thank you, your Honor.

9             MR. COTTREAU:  Thank you, your Honor.

10             (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25