1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   In re Terrorist Attacks on              03 MD 1570 (GBD)(SN)
    September 11, 2001
4                                           Conference
    ------------------------------x
5                                           New York, N.Y.
                                            November 26, 2019
6                                           11:05 a.m.

7   Before:

8                       HON. SARAH NETBURN,

9                                       U.S. Magistrate Judge

10                      APPEARANCES

11  BAUMEISTER & SAMUELS, P.C.
         Attorneys for Plaintiffs
12  BY:  MICHEL F. BAUMEISTER
         DOROTHEA M. CAPONE
13       -and-
    McANDREW VUOTTO
14  BY:  JONATHAN P. VUOTTO
         ELIZABETH M. ANDES

15

16

17

18

19

20

21

22

23

24

25

```
 1              (Case called)
 2              MR. VUOTTO:  Good morning, your Honor, Jonathan Vuotto
 3    from McAndrew Vuotto on behalf of the Maher and Ryan
 4    plaintiffs.
 5              Your Honor, just so that you are aware, and for the
 6    record, here today with us, your Honor, we have Katherine
 7    Maher, Daniel Maher, Patricia Ryan, Colin Ryan and Kristen
 8    Ryan.
 9              THE COURT:  Thank you.  Welcome.
10              MS. ANDES:  Elizabeth Andes of McAndrew Vuotto, also
11    on behalf of the Maher and Ryan plaintiffs.
12              MR. BAUMEISTER:  Good morning, your Honor.  Mitch
13    Baumeister from Baumeister & Samuels.
14              THE COURT:  Thank you.
15              MS. CAPONE:  Good morning, your Honor, Dorothea
16    Capone.
17              THE COURT:  Thank you.
18              We are here to address, let's start it off as a
19    substitution of counsel issue which has ballooned into a much
20    larger collateral litigation as part of this larger MDL.
21              By my account, there are three matters that we need to
22    resolve.
23              The first is the motion for substitution of counsel,
24    which I believe has not been granted at this point.  And so I
25    think, technically speaking, Baumeister & Samuels still are
```

 1    counsel of record for these plaintiffs.

 2              Secondly, the issue with respect to how those

 3    plaintiffs, the Maher and Ryan plaintiffs, will be transferred

 4    into a new case represented by new counsel.

 5              And then the third issue is the lien.

 6              Obviously, the lien is the larger issue, and we have

 7    discussed whether or not there needs to be an evidentiary

 8    hearing on this dispute, whether discovery needs to be taken

 9    for this dispute to be resolved, exactly what that evidentiary

10    hearing would look like.

11              It seems to me, in the context of this litigation in

12    particular, all of that seems like an unnecessary process.

13    Obviously, the parties have the right to choose counsel that

14    they are comfortable with and the relationship with the

15    Baumeister firm has obviously deteriorated.  And so it seems to

16    me appropriate that that substitution should be granted and

17    that the plaintiff should be moved into a new case so that they

18    can be represented by new counsel.

19              With respect to the lien, it is my view that this is

20    really not something we should be fighting over.

21              I understand, correct me if I'm wrong, Mr. Baumeister,

22    your firm has agreed that any recovery as attorneys' fees would

23    be donated.  Is that your position?

24              MR. BAUMEISTER:  That's correct, your Honor.

25              THE COURT:  We have a situation where there is a

1   request for a charging lien and that any fees would go towards

2   a charity.  Are you requesting reimbursement for expenses or

3   are you suggesting that all of it would go towards whatever

4   charitable --

5          MR. BAUMEISTER:  This is really not about money,

6   Judge.  It's really all about the objection in the letter filed

7   by the plaintiffs.

8          THE COURT:  Understood.  If that is the case, I had a

9   settlement proposal that I wanted to throw out.  Maybe I will

10  mention that in the first instance, which is that we can

11  resolve this entire issue that a lien could be granted and the

12  lien would be in an amount of no more than 10 percent of any

13  recovery or $100,000, the $100,000 being the total cap.

14         And so in the scheme of these things I think that that

15  amount of money is, I think, relatively modest.  I could be

16  wrong.  Maybe I don't have a full appreciation of the types of

17  recoveries that the VSST fund has been issuing at this point,

18  but I personally would prefer to not have a full-blown

19  litigation over the relationship between clients and lawyers.

20  I recognize that it has broken down.  It doesn't seem to me to

21  be in anybody's interests to have a smear campaign at this

22  point, particularly in this case where the interests to the

23  families are so much higher than a spat with lawyers.

24         I am not seeking to undermine the legitimate views of

25  the plaintiffs, and they have obviously had a relationship

1    breakdown, but I don't see the value in having a multiday

2    litigation over this issue.

3          Maybe, Mr. Vuotto, I will ask you to begin.  What is

4    the way out of this morass?

5          MR. VUOTTO:  Thank you, your Honor.

6          Initially, we agree that it shouldn't proceed,

7    definitely not at this time.  I think that what we have got

8    here is a situation where Baumeister & Samuels asserted their

9    right to a lien.  My clients, your Honor, just for the limited

10   purpose of this dispute, initially said nothing at all about

11   the lien.  They did not bring it up.  It was hopeful that it

12   was not going to become an issue.  Baumeister & Samuels made it

13   an issue.

14         Your Honor asked for a letter explaining their basis

15   why the plaintiffs believe that there should be no lien here

16   and the plaintiffs gave that to you, your Honor.  Then

17   Baumeister & Samuels came back with a very abrasive letter,

18   very abrasive response that was highly offensive, which didn't

19   sit well and now here we are.

20         We don't think it's appropriate to proceed to an

21   evidentiary hearing over this, just like your Honor said.  It's

22   not appropriate.  If these clients, former clients of

23   Baumeister & Samuels, have claims against Baumeister & Samuels,

24   this is not the forum for those claims, your Honor.  This is

25   definitely not the forum.

1          If what Baumeister & Samuels is saying is that they

2    think that they have got a right to a lien, they should assert

3    that when there is some recovery, not now.  And just because we

4    have got allegations out there against them doesn't mean that

5    they can force us to bring claims here in this forum.  It's not

6    appropriate, your Honor.

7          If there is going to be claims made against the firm,

8    it should be done in a separate litigation.  It should not be

9    in this litigation.  And every party should have the full

10   rights, discovery, etc.  It's not appropriate here, your Honor.

11         THE COURT:  I personally have expended already a lot

12   of time on this issue.  I have engaged in the issue.  It's my

13   view, if we are going to have a fight over the lien issue, I

14   would rather have it now.  The question of how much is

15   something that we can wait until we have an amount so we can

16   see how much longer this litigation goes on so we can assess

17   what is an appropriate and fair amount.

18         But the up-or-down question, from a judicial

19   efficiency perspective, should be made now because I'm already

20   engaged in the issue, and I don't want to move on and then have

21   to reengage in this issue, whether it's two years from now,

22   five years from now, 10 years from now.

23         Plus, it's my understanding that the VSST, there are

24   likely to be some amendments, that those amendments may benefit

25   these plaintiffs.  They may get a recovery from that in the

1    near future, which means that the issue is not one to be

2    decided 10 years from now but likely to be decided within the

3    coming months.

4         MR. VUOTTO:  That's my understanding as well, your

5    Honor, that there should be some recovery within the next six

6    months or so.

7         Be that as it may, your Honor, if we are going to

8    proceed to a hearing now, what your Honor would be asking these

9    plaintiffs to do is essentially prove claims of misconduct

10   within this case.  If your Honor wants to do that, we think it

11   would be unfortunate because I think that we should be given

12   the right to full discovery.  We should be able to get

13   documents.  There were very many statements by Ms. Capone in

14   her declaration that we would need to explore, what they are

15   saying, what these plaintiffs are saying.

16        THE COURT:  What do your clients want?  Obviously,

17   they want you to represent them.  That's fine.  What more do

18   they want?

19        MR. VUOTTO:  Your Honor, here is what it really boils

20   down to.  They felt mistreated by Baumeister & Samuels.  They

21   felt like they weren't given information from them in a timely

22   manner.  They weren't kept advised of the litigation.  And they

23   felt like they didn't properly represent them with respect to

24   the fund.  They felt like they weren't advocating for them.

25        Back in 2016, when the fund was initially formed and

1   getting up to speed, Baumeister & Samuels, they didn't attempt

2   to get these particular clients, widows and children of

3   decedents, into the fund.  They said there is nothing we can

4   do.  I'm sorry.  The law says what it says and that was it.

5           Meanwhile, extended family members, in-laws, cousins,

6   etc., were getting into the fund on a basis that appears

7   completely improper, and yet the widows and children of the

8   decedents were excluded.  These clients were saying, please

9   help us.  Please advocate for us.  Please do something.  Hire

10  an EPA lawyer.  Go to lobby.  They were saying, no, we don't

11  think that's the right thing to do.

12          Our clients were being discouraged, actively

13  discouraged, from doing these things by Baumeister & Samuels.

14  They expected Baumeister & Samuels to do the things that now

15  the clients have done themselves since March, when Baumeister &

16  Samuels terminated the representation, just based upon the

17  questions that the Maher and Ryan plaintiffs were asking

18  Baumeister & Samuels.  Why didn't you do this?  Why were you

19  advocating for me?

20          Since that time, they themselves lobbied a bunch of

21  lay people, went to Congress, lobbied, and got the law changed.

22  The things that they expected their attorneys to help them

23  with, to at least assist them with, or at least not discourage

24  them from doing, that's what they have done and they have done

25  it themselves.

1          Baumeister & Samuels comes forward and says, we think

2     we are entitled to a lien for our work.  Well, it wasn't their

3     work that got these clients into the fund, your Honor.  We have

4     already said this.  I've discussed it with Mr. Baumeister and

5     Ms. Capone.  We recognize that they have done some work in the

6     case.  We recognize that they have done some work on the Saudi

7     Arabia matter.  And we are not denying that they have incurred

8     expenses and that they have done some work in those matters.

9          But with respect to Iran, we can't see that they have

10     done anything, and they certainly haven't done as much as the

11     clients themselves have done.  They did zero to get their

12     clients into this fund.  If there is going to be some

13     recoveries from this fund, our position is that Baumeister &

14     Samuels is entitled to zero.  I'm pretty sure, your Honor, that

15     we would be able to prove that.

16          Be that as it may, we don't want to have to prove the

17     misconduct claims in this litigation.  And if we do, I think

18     rather than bring it to a head here, your Honor, I think what

19     that's going to trigger is just a separate lawsuit filing.  I

20     don't think it's going to have the result of us just coming in

21     and having a quick hearing and then your Honor deciding up or

22     down.  I think it would trigger a bigger set of claims being

23     filed, your Honor, which I think is counter productive.  I

24     don't know why Baumeister & Samuels would even want to proceed

25     to a hearing.

 1          THE COURT:  I think their concern is that they feel

 2     like their reputation has been attacked, rightly or wrongly.

 3     They want to clear their name because they have defenses to all

 4     of the things that you have said.  I don't know why we can't

 5     just agree on sort of a walkaway, a withdrawal of the

 6     allegations, and not to have this full litigation, which is

 7     entirely collateral to this larger MDL.

 8          MR. VUOTTO:  We agree, your Honor.  We proposed to

 9     walk away before.  I don't want to get into settlement

10     discussions on the record, your Honor.  But these clients would

11     have been happy to walk away and not address this right now,

12     just reserve their rights.  If they feel they have got claims,

13     why should Baumeister & Samuels be able to force them to bring

14     them now?  There is a statute of limitations that applies to

15     these claims.  They are potential plaintiffs for these claims.

16     The defendants, the potential defendants, shouldn't be allowed

17     to force the potential plaintiffs into when they want to file

18     their claims.

19          THE COURT:  But this very issue is going to come up

20     potentially and likely in 2020.  So we are here, we are talking

21     about it.  I don't know when you want to wait until.  If the

22     fund is amended, as everybody anticipates that it will be, or

23     the statute for the fund is amended, hopefully your clients

24     will get a distribution, and now the issue is ripe.  I don't

25     know what we are waiting for.  We are not going to wait 15

1    years.

2         MR. VUOTTO:  Your Honor, we can certainly resolve the

3    quantum of lien with respect to any recoveries that are

4    obtained from the fund.  I think that that's probably something

5    that we could work out.  Your Honor, that's a very narrow

6    issue.

7         If there are recoveries from the fund, I think that

8    they will be in an amount that is not huge, whatever that

9    means, and I think that it can be very easily determined that

10   Baumeister & Samuels is owed nothing.  Basically, what they did

11   was, they submitted a judgment, your Honor.  They piggybacked

12   off the work of the Wiggins firm in obtaining the default

13   judgments, they filled out the judgments, they filled out

14   forms, and they submitted them to the fund.

15        THE COURT:  This case is enormous and there are lots

16   of lawyers who are taking advantage -- I don't mean that in a

17   pejorative way, but taking advantage of the work of other

18   lawyers.  That would be many of the lawyers in this case not

19   entitled to a fee.  I am not sure that's a position I'm

20   prepared to make in the context of this litigation, which is

21   essentially what you would be asking me to make.

22        MR. VUOTTO:  Your Honor, I think that we have to focus

23   on what's in front of us.  What's in front of us --

24        THE COURT:  You have to focus on what's in front of

25   you.  I have 300 member cases.

1          MR. VUOTTO:  Understood, your Honor.  But we have a

2    certain set of clients that are in this situation now, and we

3    have one law firm that's asserting their right to a lien.

4    There have been clients that have come and gone from other law

5    firms, your Honor, and I'm not aware of a situation arising

6    before.  Since this one has, I'm not saying that it won't

7    again.

8          But this is the situation that's in front of us, is

9    that there could be a recovery here.  Baumeister & Samuels is

10   asserting their right to a lien.  Our clients believe that

11   there should be no recovery on behalf of Baumeister & Samuels.

12   And to the extent that the recovery comes from the fund, there

13   certainly should be zero.

14         If that's the narrow issue that we are going to

15   litigate, that's one thing.  But having to litigate the

16   potential claims that the clients have against Baumeister &

17   Samuels on a broader scope, your Honor --

18         THE COURT:  I have no interest in having a malpractice

19   trial before me.

20         MR. VUOTTO:  Your Honor, we have no interest in

21   bringing it here.  To the extent we would want to bring that

22   claim, it should be done in a separate action, your Honor.

23   That's all that we are seeking, is to not have to be forced to

24   bring this malpractice claim before your Honor.  That's all we

25   are asking.  We don't want our hand to be forced because the

1       only thing that's going to result in is a separate filing.

2              THE COURT:  What does that mean?  Let's say in March

3       the VSST allocates more funds, and now the Baumeister firm is

4       going to say, OK, we believe that we are entitled to X percent

5       of that recovery, and so now we are going to be back in my

6       courtroom asking whether or not they should get anywhere from

7       zero to what they are seeking.  So we will have, presumably,

8       litigation over whether or not they are entitled to any of that

9       recovery.  Maybe that's not the entirety of any anticipated

10      malpractice litigation, but it's probably the heart of it, from

11      what you have said to me.  I don't know how else I would

12      resolve that quote/unquote that narrow issue but to resolve

13      essentially the larger issue.

14             MR. VUOTTO:  Your Honor, if it comes down to that,

15      there is going to be a separate lawsuit.  There is going to be

16      a malpractice filing against Baumeister & Samuels.  Then we are

17      going to have a parallel action.  That's what's going to

18      happen, your Honor.

19             THE COURT:  Why is that the only solution?  I guess

20      that's what I don't understand.  Why isn't a solution that to

21      avoid infecting this litigation with this collateral issue, why

22      can't the parties come up with some reasonable settlement,

23      without prejudice to making any claims at whatever date you

24      think is appropriate and to bring those claims and in whatever

25      form you think is appropriate?  Why isn't that the best

1    solution?

2         MR. VUOTTO:  Your Honor, I completely agree that is

3    the best solution and that is what we attempted to do.

4         THE COURT:  I think your settlement is a total

5    walkaway.

6         MR. VUOTTO:  It was a walkaway with everyone reserving

7    their rights, yes, your Honor.

8         THE COURT:  Let me hear from Mr. Baumeister.

9         MR. VUOTTO:  Thank you, your Honor.

10        MR. BAUMEISTER:  Good morning.

11        Let me just state right initially, Judge, there is

12   absolutely no malpractice that has ever been committed by this

13   firm over 17 years with these clients.  We have served them

14   well and that's at the heart of this.

15        I don't care about the money, as I've told the Court.

16   So whatever you say is an appropriate sum, I don't care if it's

17   two cents or 20 cents.  In fact, we feel that that's not at the

18   heart.

19        What's really at the heart here is if they consent to

20   the lien and they, by consenting, acknowledge there is no

21   misconduct or impropriety, it's over.  They can do whatever

22   they want down the line, however they feel.

23        Let me correct a couple of statements to begin with.

24   Let me put this in context.  We began this journey right after

25   9/11 by representing the Mahers and the Ryans.  And in that

1    litigation it took three years and multiple decisions by them

2    to come to a conclusion to go to the VCF.  As a result of that,

3    we got lovely notes from them saying what a great job we did.

4           Thereafter, we undertook the terrorist litigation,

5    which has been in front of you for 17 years.  So VCF1 is done.

6    The terrorist litigation has been ongoing.  They don't

7    understand we are part of a committee.  Lead counsel is Jim

8    Kreindler on the *Ashton* complaint.  We are part of the *Ashton*

9    complaint and we have been involved in these committee

10   activities, as you're aware of, but we have not taken a leading

11   role because we are part of a committee.  But we have expended

12   hundreds of thousands of dollars out of our pocket and hundreds

13   and hundreds of thousand dollars in attorney value time over 17

14   years to prosecute a terrorist case on behalf of these clients.

15   As the Court is well aware, that case could go on for quite a

16   bit longer.  In fact, the latest motion Steve argued in front

17   of you was concerning the FBI.

18          The last part was, and this is a statement that

19   Mr. Vuotto says, and I want to correct it on the record.  He

20   says, all of a sudden, the U.S. VSST came and we did nothing.

21   First off, Ken Feinberg handled a VCF1.  We had a longstanding

22   relationship, as both clients --

23          THE COURT:  Mr. Baumeister, can I ask you to just

24   address me.  I would prefer that you just address the Court.

25          MR. BAUMEISTER:  I'm sorry.

 1          THE COURT:  Thank you.

 2          MR. BAUMEISTER:  As a result of Ken Feinberg taking

 3   over the U.S. VSST, the first thing we did was contact him

 4   after we brought this action.

 5          No widow, no spouse, no child has recovered any dollar

 6   under the U.S. VSST first or second distribution.  Their

 7   clients were protected.  Our clients, the Ryans and the Mahers,

 8   were protected.  Nobody has gotten any money out of one or two.

 9   Why?  Because of the specific language.

10          We explained to the clients, as the special master

11   explained to the clients and many of the clients who they know,

12   the language of the statute was clear.  If you were a *Zadroga*

13   plaintiff and you took from one government fund or if you were

14   a VCF client -- and you say it in your opinion concerning the

15   *Havlish* motion, that there were two groups of people that could

16   not collect money under the plain language of the statute.  We

17   explained that to the clients.  We explained it to Ryan and

18   Maher over and over again.  They didn't like it.

19          But in the beginning, during the first distribution,

20   everybody thought, well, I doubt there will be much recovery

21   here.  And we have always kept the number of clients we

22   represent down to a bare minimum.  All we did is take the VCF

23   clients and stay with them.  Other law firms had multiple

24   clients out there.  We didn't do that.  We always prided

25   ourselves on having direct contact with our clients.

1          What we wound up doing there is, we went to each of

2     our clients and said, under the statute, Ken Feinberg has said,

3     my hands are tied.  The law is the law.  The only people who

4     can change the law to admit you into the fund, spouses and

5     children -- and I emphasize, not a single child or spouse got a

6     nickel from the first or second.

7          We protected their rights by doing the following.  We

8     argued with Ken Feinberg.  We said you got to change it.  He

9     said, my hands are tied.  I can't do it.  Tell your clients to

10    go to Congress.  Since a lot of money wasn't expected to be

11    obtained, many of the law firms, many of the clients, said, we

12    will just see, and then there was a distribution.

13         We, on the other hand, your Honor, on behalf of each

14    of our clients, contrary to what Mr. Vuotto just said to you,

15    filed -- even though Ken Feinberg told us they will get no

16    money, we said, we are going to file, Ken, and we want you to

17    really look at this and maybe do something.  We fought with the

18    Department of Justice, we fought with Ken Feinberg, and we

19    said, you have got to do something.  My hands are tied.  I

20    can't do it.  Tell your clients to go to Congress, and the

21    clients didn't do anything.

22         What we did, though, is we filed, nevertheless, on

23    behalf of the Ryans, the Mahers and every one of our clients.

24    So we took action to protect their rights in the first

25    distribution.  We got a letter back from the fund saying, you

1    know what, you have an eligible claim, Ryan and Mahers.  They

2    have an eligible claim as it sits here today.  But because you,

3    under the plain language of the statute, took VCF1, there is no

4    double dipping, and we will not give you any money.

5           So we protected their rights, went far beyond what

6    anyone else did, and we are told flat out, you can't get that

7    money, and they have the eligibility letter.  Indeed, I have

8    given it to both of them.  We took whatever action we had to

9    take.

10          And, consistently, when the second distribution came

11   up we said again to all of our clients, organize because if

12   there is one thing I have learned over the years dealing in

13   mass disaster litigation, politicians respond to family groups.

14   They don't respond to lawyers, necessarily.  And we told them,

15   I am not a political lobbyist.  One day in Vietnam, I

16   understood, I don't like political rhetoric.  I didn't become a

17   politician.  I'm not a political lobbyist.  I'm a trial lawyer.

18   You want to go do it, we said you want to hire an EPA lawyer,

19   hire them.  Go to Congress and get it changed.  Nobody did

20   anything until very recently, when the third distribution came

21   up.

22          As a result of that, we met every statute.  We

23   protected every right.  We filed every piece of paper necessary

24   to protect our clients.  And for them to claim that we

25   committed malpractice, Judge, the reason we are here is they do

 1    not want to consent to a lien because they think that means

 2    that they are admitting we did not commit misconduct or

 3    impropriety, and we didn't.

 4         The reason we want an evidentiary hearing -- and we

 5    don't want to burden the Court.  If you can figure out a way to

 6    get this done, we are happy.  We are happy to do that.  But we

 7    want to clear our reputation because we have already gotten

 8    calls from clients, from lawyers who have read this on the

 9    public record.  And our reputation has been damaged in the

10    community as a result of these unfounded allegations.  I am

11    fully willing to meet this in an evidentiary hearing and

12    cross-examine each of these witnesses myself.

13         THE COURT:  Would you be satisfied with a settlement

14    in which the plaintiffs withdrew their opposition to the lien,

15    withdrew their prior filings, and consented to a nominal

16    amount?  As you said, it's not about the money, so maybe it's a

17    nominal amount, but without prejudice to whatever other claims

18    that they may wish to bring.  We will just save that for a

19    rainy day.

20         MR. BAUMEISTER:  As long as they say, consent and a

21    short statement, withdraw it, correcting the record no

22    misconduct or impropriety has been undertaken.  Because there

23    are lawyers.  I want that on the public record.  That protects

24    my reputation, which has been damaged by these plaintiffs.

25         THE COURT:  I don't know that they are going to go

1    that far because it sounds like they want to preserve their

2    rights to potentially proceed the malpractice claim.  I don't

3    know that I am going to convince them today not to do that.

4         But it seems to me that if we can resolve the

5    threshold issue here before us, and then the plaintiffs can

6    evaluate whether or not it's really worth their energy and

7    time.  Obviously, you have good counsel, and you'll evaluate.

8    Malpractice claims are exceedingly hard to succeed on.  That's

9    not to say that successful malpractice claims are not brought.

10   To put it bluntly, lawyers write statutes and the malpractice

11   law is very protective of lawyers.  Maybe there is a claim

12   there.  I don't know.  But it's certainly a very high burden to

13   establish malpractice.

14        MR. BAUMEISTER:  If you can work out language that's

15   acceptable to me and to the clients, I'm happy to consider it

16   seriously.

17        I do want to say one other thing, if you don't mind.

18        THE COURT:  Let me just say one last thing about the

19   language, which is that I appreciate that you would like them

20   to put counter statements in.  One, I don't think they are

21   going to agree to do that.  Two, that just seems like gasoline

22   on the fire.  Why don't we just quietly walk away from this

23   issue rather than additional information.

24        To the extent you are worried about what your other

25   clients are saying, you can just say, truthfully, we have

1   resolved that dispute and they have withdrawn their opposition,

2   period.  You don't have to say that they decided that they love

3   you.

4          MR. BAUMEISTER:  Then I would say nothing about with

5   prejudice or without prejudice, just simply that we resolved

6   the issue.

7          MR. VUOTTO:  Without any statement about misconduct or

8   impropriety.

9          THE COURT:  Nothing.  Just that the parties have

10   agreed to withdraw their opposition.

11          MR. BAUMEISTER:  And they have consented to the

12   charging lien.

13          THE COURT:  Withdraw their opposition.  They consent

14   to the entry of a charging lien in the amount of, fill in the

15   blank.

16          MR. BAUMEISTER:  They have resolved the issue and they

17   withdraw the statements that are on the record now and we will

18   withdraw ours.  I don't want anyone else reading it because

19   it's scandalous.

20          THE COURT:  I don't know that we can strike it from

21   the record.

22          MR. BAUMEISTER:  Can we seal it?

23          THE COURT:  It's a pretty high standard for all of

24   that.

25          MR. BAUMEISTER:  I understand.

1          Judge, I'm grappling with the whole issue because you

2     can't imagine how many people have called me about this.

3     That's why I wanted an evidentiary hearing and cross-examine

4     them under oath.  That's why I wanted their statements under

5     oath because I want the whole concept of perjury to be out

6     there.  I will live with what the Court said.

7          But there is one thing I want to make as a tangent to

8     this, and I want it on the record, just to make sure.  No. 1,

9     given the Clarification Act, given the Clarification Act, as

10    the Court is well aware, we are coming up with the numbers of

11    the additional default judgments we have to file.  And even

12    though I am exercised about what has been said about us, I

13    still, as a lawyer, am concerned that their rights are

14    protected under the Clarification Act.

15         So I would consent today to a partial substitution

16    immediately -- their new lawyer is one of the *Havlish* lawyers

17    who has been taking cases, the *Havlish* firm -- having that

18    lawyer, Mr. Pantazis, immediately be substituted into the case

19    if we cannot resolve the language today.

20         And here is the important point.  These clients, Ryan

21    and Maher, have essentially the following claims.  And while we

22    say this is all as a result of a family group, let me tell you,

23    this was a hotly contested family group, because the Iranian

24    hostages were fighting with the 9/11 victims.  Many of the 9/11

25    families were at odds with each other because they felt they

1    were being bullied by a smaller group, the *Zadroga* people.

2    This was a political nightmare that they think I was going to

3    solve on an individual case?  Please.

4         Ultimately, what will happen is, they have the claim,

5    economic claims for the death of their husbands.  What the

6    problem is for them is the economic data is probably almost 17

7    or 18 years old.  As an example, Marsh Mac did a whole bunch of

8    reports under VCF1 that we used for Mr. Maher, and Mr. Ryan's

9    firm was wiped out in half, and they came up with some reports.

10   But we have a lot of economic data that we are searching to

11   find so that Mr. Pantazis can use that as a foundation for an

12   updated economic report.  That's claim 1.  I want it on the

13   record that I am not responsible for these, but we will get

14   these documents for them.

15        No. 2, they have the eligibility letters we filed,

16   Mr. Vuotto, protecting their rights in the first.  And under

17   the new procedures, the fund has 30 days to come out with new

18   procedures, and then 60 days after that they have to be filed.

19   They have to take their eligibility letters immediately when

20   new procedures come out because we have heard rumors that it

21   may require the early eligibility letters from 2016.  Those may

22   have to be turned into individual claim numbers referring back

23   to the original eligibility letter for damages for the spouse

24   and for the children.  That's the second claim that

25   Mr. Pantazis has to where.

1          The third claim, which we also did way back when, was

2     get a default judgment for the conscious pain and suffering of

3     the husbands for $2 million.  These were all part of our

4     original application submitted to VC1F.  They may not have it

5     in their file.  They may not be able to get it.  We are

6     searching it.  I can get it to them within 10 days.  I can get

7     it to the *Havlish* lawyer, Mr. Pantazis.

8          I say that simply to make sure they are protected,

9     notwithstanding all of the arguments we have had in this court

10    today.

11         MR. VUOTTO:  Your Honor, that was all very

12    interesting, and we appreciate that from Mr. Baumeister.  I

13    think what we need to do is talk about whether we are going to

14    establish the quantum of the lien, as your Honor had mentioned

15    earlier.  If not, if we are unable to do that, I think what we

16    need to do is set a schedule for how we are going to proceed.

17         Your Honor, are you giving us a little time to discuss

18    this before we give you an answer?  How would you like to

19    proceed, your Honor?

20         THE COURT:  In light of what Mr. Baumeister said and

21    making sure that the plaintiffs, who are the people we are most

22    concerned about, that their rights are not harmed in any way, I

23    am going to grant the motion for substitution of counsel today.

24    It will be without prejudice to the lien issue.  I am going to

25    grant that application today, and I am going to direct that the

 1    Baumeister firm turn over the files within 14 days of today.

 2            MR. BAUMEISTER:  The economic files that we spoke

 3    about?

 4            THE COURT:  The economic files.  If I say economic

 5    files, everyone will understand what we are referring to?

 6            MR. BAUMEISTER:  Yes.

 7            MR. VUOTTO:  Your Honor, is there some reason why

 8    Baumeister & Samuels can't turn over the entirety of their

 9    files for these clients?

10            THE COURT:  Because they have this issue that we still

11    need to resolve, which is why we are here in the first

12    instance.

13            Let's make sure that Mr. Pantazis gets the economic

14    files within 14 days of today so that he can proceed to protect

15    these clients' interests in connection with any new application

16    to the VSST fund.  That's the primary issue.

17            With respect to the amendment to the complaint, I

18    think that the best thing to do is for the parties to file a

19    stipulation that voluntarily withdraws these plaintiffs' claims

20    from the *Ashton* and *Bauer* claims.

21            And then I think probably what makes the most sense is

22    for plaintiffs' counsel, new counsel, to file a new member case

23    in connection with the *Havlish* case.  I think that's the

24    cleanest way to proceed.  A voluntary withdrawal from the

25    *Ashton* and *Bauer* claims and a filing of a new member case for

1    these plaintiffs that's associated with the *Havlish* case.

2           Then with respect to the lien I would like the parties

3    to discuss the following.  I think the way it would work would

4    be a stipulation withdrawing opposition to the lien, consenting

5    to the lien in the amount of X.  It can be whatever amount the

6    parties think is appropriate.  I had come to the table with a

7    concept of a percentage of the recovery or a dollar amount

8    that's capped so that the families know that in no

9    circumstances the amount will exceed whatever the dollar amount

10   is.  And maybe it can even state something like, all parties

11   withdraw their filings or claims.

12          I think to actually strike or file under seal these

13   documents, there needs to be a pretty high showing because

14   these are public records and, as I sit here right now, I don't

15   know that that showing would be met.

16          But in the interest of everybody, we can just withdraw

17   the claims and I think that way Mr. Baumeister can say to other

18   clients who are inquiring truthfully, that issue has been

19   resolved and we have all withdrawn our claims.  The same goes

20   for the plaintiffs with respect to the claims in the

21   submissions from the Baumeister firm.  All of that will be what

22   will be "withdrawn," even though, as a technical matter, it

23   will still be on the docket.  I think that is the best way to

24   resolve this.

25          Then the plaintiffs can be advised by counsel whether

1    or not they think it's worth it to pursue a separate litigation

2    with respect to malpractice.  If they feel motivated, you

3    should do that, if you think you have a claim.  I am not sure

4    it's the best use of your time.  But if you feel strongly,

5    maybe it is, and you should pursue whatever rights you have.

6         But I think we should wrap up the issue here in this

7    context, and I think a withdrawal of the objection to the lien,

8    a nominal amount on consent, and that all sides agree to

9    withdraw their prior statements in connection with this

10   application.  In my view, this would be entirely without

11   prejudice to whatever people want to do in whatever forum they

12   think is appropriate.  That's my recommendation.

13        I really think it's just a terrible idea.  I'm happy

14   to do it.  I'm a court.  My doors are always open.  I'm happy

15   to have a hearing.  I just think it's a terrible idea to start

16   having former lawyers cross-examine clients.  It's just not

17   what we should be doing.  This case is bigger than that.  I

18   think this is not the place that people should be putting their

19   energy.  That's obviously my opinion, and people should do what

20   they think is appropriate.

21        We will issue the order today with respect to the

22   substitution, and then I am going to direct that within 14 days

23   from today the parties, one, file a stipulation with respect to

24   how we are going to move these plaintiffs out of the *Ashton* and

25   *Bauer* cases and into a new case.  Like I said, I think the

1    answer to that is a voluntary withdrawal from those claims, and

2    then an agreement to file a new member case associated with the

3    *Havlish* case.

4         And then at that same date, on the 14th day, in

5    addition to filing the stipulation, I'd like a letter

6    submission with respect to this other lien issue, and I very

7    strongly encourage everybody to consider my proposal to resolve

8    this.

9         MR. BAUMEISTER:  If it is not resolved, could I ask

10   the Court's indulgence because the next 90 days for the Court,

11   unfortunately, and for us are going to be tremendously

12   stressful.  We are a small firm.  We have limited clients.  We

13   are still going to be up to our eyeballs in paperwork in

14   protecting claims.  If we have to go forward on a serious issue

15   on a lien, that we don't do it until at least 120 days to give

16   us the chance to get all of this done with the new fund, if you

17   don't mind.

18        THE COURT:  I think that's reasonable.

19        Any objections?

20        MR. VUOTTO:  No, your Honor.

21        THE COURT:  I hope we don't get there, but I'll keep

22   that in mind.

23        With that, I wish everybody a Happy Thanksgiving.  I

24   hope you spend it well.  We are adjourned.

25        (Adjourned)