UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

Civil Action No.
03 MDL 1570 (GBD) (SN)

------------------------------------------------------

This document relates to: *All Actions*

**THE *FEDERAL* PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR PROPOSAL CONCERNING THE ESTABLISHMENT AND ALLOCATION OF THE COMMON BENEFIT FUND AND FOR RECONSIDERATION OF THE COURT'S SEPTEMBER 30, 2019 COMMON BENEFIT FUND DECISION, OR, IN THE ALTERNATIVE, IN SUPPORT OF OBJECTIONS TO THE COURT'S SEPTEMBER 30, <u>2019 OPINION AND ORDER PURSUANT TO FED. R. CIV. P. 72</u>**

December 13, 2019

# TABLE OF CONTENTS

                                                                                                              **Page**

I. PRELIMINARY STATEMENT ............................................................................................. 1

II. STATEMENT OF FACTS ..................................................................................................... 3

    A. The Establishment of the PECs ................................................................................. 3

    B. Committee Members Have Undertaken Extensive Work and Expense to Guide and Manage the Litigation for all Plaintiffs ............................................................ 5

    C. The Defaults Against Iran and the Disbursements From the USVSST .......................... 6

III. LEGAL ARGUMENT ............................................................................................................ 8

    A. The Court's Managerial Powers Mandate That a Common Benefit Fund Be Established for the Benefit of All PEC Members ............................................................. 8

    B. Principals of Equity and Unjust Enrichment Require That Committee Members Benefit from the Common Benefit Fund in Proportion to Their Relative Contributions to the MDL as a Whole ............................................................. 10

IV. APPOINTMENT OF A SPECIAL MASTER TO ADMINISTER THE COMMON BENEFIT FUND IS APPROPRIATE .............................................................................. 13

V. CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*,
  549 F.2d 1006 (5th Cir. 1977) ..................................................................................................9

*In re Ethicon, Inc. Power Morcellator Prods. Liab. Litig.*,
  2016 U.S. Dist. LEXIS 54017 (D. Kan. Apr. 21, 2016) ............................................................9

*In re Genetically Modified Rice Litig.*,
  2010 U.S. Dist. LEXIS 19168 (E.D. Mo. Feb. 24, 2010) .........................................................9

*Goldberger v. Integrated Res.*,
  209 F.3d 43 (2d Cir. 2000) ......................................................................................................13

*In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*,
  2008 U.S. Dist. LEXIS 17535 (D. Minn. Mar. 7, 2008) ...........................................................9

*Smiley v. Sincoff*,
  958 F.2d 498 (2d Cir. 1992) ....................................................................................................11

*In re Terrorist Attacks on September 11, 2001*,
  295 F. Supp. 2d 1377 (J.P.M.L. 2003) ......................................................................................3

*Vincent v. Hughes Air West, Inc.*,
  557 F.2d 759 (9th Cir. 1977) ....................................................................................................8

*In re Vioxx Prods. Liab. Litig.*,
  802 F. Supp. 2d 740 (E.D. La. 2011) ......................................................................................10

*In re Zyprexa Prods. Liab. Litig.*,
  467 F. Supp. 2d 256 (E.D.N.Y. 2006) ......................................................................................9

*In re Zyprexa Prods. Liab. Litig.*,
  594 F.3d 113 (2d Cir. 2010) ..................................................................................................8, 9

**Statutes**

28 U.S.C. § 636 ..............................................................................................................................3

**Other Authorities**

Federal Rule of Civil Procedure 72 ................................................................................................3

Manuel for Complex Litigation, Fourth § 10.22 (2004) ................................................................8

MANUAL FOR COMPLEX LITIGATION, FOURTH § 14.121 (2004) .............................................11, 13

ABA Model Rules of Professional Conduct, Rule 1.3 ................................................................12

I. **PRELIMINARY STATEMENT**

On September 30, 2019, the Court issued an Opinion and Order granting, in part, the *Havlish* plaintiffs' request that the Court create a common benefit fund and authorize disbursements therefrom. *See* ECF No. 5180. Specifically, the Court held that it was appropriate to establish a common benefit fund at this time, given the significant recoveries flowing to plaintiffs in the multi-district litigation ("MDL") from the United States Victims of State Sponsored Terrorism Fund ("USVSST"), and resulting fees being realized by counsel for those plaintiffs. The Court's Opinion and Order did not, however, set the value of the common benefit fund or establish procedures and standards governing the operation of the fund and allocation of fund proceeds.[1]

Counsel for the *Federal* plaintiffs[2] submit this memorandum of law in support of their proposal concerning the procedures and standards that should govern the common benefit fund. As discussed below, the common benefit fund should serve to compensate the members of the Plaintiffs' Steering Committee, which operates through the two Executive Committees, for their relative investments in prosecuting this MDL as a whole, pursuant to factors courts traditionally apply in the MDL context. That is the appropriate approach under governing law and equitable principles, and the framework necessary to ensure that the common benefit fund in this case

---

[1] The Court's Opinion and Order directed the parties to meet and confer concerning issues relating to the common benefit fund. Those discussions were not productive, and as a result it is appropriate for the Court to establish procedures and criteria to govern the common benefit fund.

[2] As used herein, the term *Federal* consists of the plaintiffs in the following cases: *Federal Insurance, et al. v. Al Qaida, et al.*, Case No. 1:03-cv-06978; *Vigilant Insurance, et al. v. Kingdom of Saudi Arabia, et al.*, Case No. 1:03-cv-08591; *Pacific Employers Insurance Co., et al. v. Kingdom of Saudi Arabia, et al.*, Case No. 1:04-cv-07216; *Underwriting Members of Lloyd's Syndicate 2, et al. v. Al Rajhi Bank, et al.*, Case No. 1:16-cv-07853; *Underwriting Members of Lloyd's Syndicate 53, et al. v. Kingdom of Saudi Arabia, et al.*, Case No. 1:17-cv-02129; *Muenchener Rueckversicherungs Gesellschaft Aktiengesellschaft in Muenchen, et al. v. Kingdom of Saudi Arabia, et al.*, Case No. 1:17-cv-07914; and *Württembergische Versicherung AG v. Kingdom of Saudi Arabia*, Case No. 1:18-cv-12257.

advances critical case management interests in this litigation and MDL proceedings more generally.

The relative investments of time and costs by committee members in prosecuting this MDL for the benefit of all plaintiffs and complying with the case management obligations imposed on the committees by the Court are ascertainable, and generally consist of: (1) the reasonable value of all expenses incurred in relation to common benefit work performed to date; (2) a reasonable budget for future expenses; and (3) the fair value of the time invested by lawyers and support staff in performing common benefit work and fulfilling the duties imposed on the committees by the Court. Particularly in light of the recent amendments to the USVSST, it is clear that recoveries flowing from the USVSST, and the resulting fees, are more than sufficient to compensate the committee members for those investments and the associated risks the committee members assumed in prosecuting the MDL on behalf of all plaintiffs. Under these circumstances,[3] equity demands that a percentage of the USVSST recoveries be set aside from the attorneys' fees and used to compensate the committee members for their common benefit work and expenses in the MDL as a whole, in proportion to their relative investments and based on other relevant factors.

The *Federal* Plaintiffs recognize that the Court's September 30, 2019 Opinion and Order concluded that consideration of time and investments spent "litigating claims against" defendants other than Iran would be "premature" given that "no other Defendant has settled or been found liable." ECF No. 5180 at n. 5. The *Federal* Plaintiffs respectfully move for reconsideration of

---

[3] The *Federal* plaintiffs previously asserted that the creation of a common benefit fund was premature. ECF No. 4407. In consideration of the Court's September 30, 2019 Opinion and Order, and further developments, including the recent amendments to the USVSST, counsel for the *Federal* plaintiffs agree that the creation of a common benefit fund is timely.

that finding, and more generally seek reconsideration of the Court's Opinion and Order to the extent that it provides for the establishment of a common benefit fund solely for the "Iran" claims and solely benefiting *Havlish* counsel for their work on those claims.  For the reasons discussed below, governing law, equitable principles, the committee structure in this MDL, and public policy considerations relating to the effective management of complex MDL proceedings all indicate that the common benefit fund should serve to benefit the committees for the investments in the MDL as a whole.  Because the committees' prior filings were submitted in opposition to the creation of a common benefit fund, they did not meaningfully address how such a common benefit fund should operate and the factors that should govern disbursements from such a fund if it were established.  Reconsideration is therefore appropriate in these circumstances, and necessary to prevent a manifest injustice.[4]

## II.     STATEMENT OF FACTS

### A.     The Establishment of the PECs

In December 2003, the Judicial Panel on Multidistrict Litigation ordered that actions against defendants who allegedly promoted, financed, sponsored, or otherwise supported the terrorist attacks of September 11, 2001 be consolidated and transferred to the United States District Court for the Southern District of York, and assigned to the Honorable Richard C. Casey.  *See In re Terrorist Attacks on September 11, 2001,* 295 F. Supp. 2d 1377, 1378 (J.P.M.L. 2003).  The resulting multi-district litigation encompassed claims by thousands of individual wrongful death and personal injury claimants, as well as commercial claimants seeking recovery of several billion dollars in economic losses, against a range of defendants those plaintiffs

---

[4] In the event the motion for reconsideration is denied or the Court declines to entertain it, the *Federal* Plaintiffs request that this brief be treated as an Objection to the September 30, 2019 Opinion and Order pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.

wanted to hold accountable for the September 11th attacks.  The nature and scope of the MDL proceedings demanded that counsel take coordinated and simultaneous efforts on various fronts to facilitate the efficient conduct of the litigation.

To that end, Judge Casey established a committee structure from the outset of the litigation to address the anticipated complexities of the litigation *as a whole*, recognizing the difficult nature of the factual and legal issues, the full scope of the claims being advanced, and the nature and number of the defendants.  *See* Case Management Order ("CMO") #3, ECF No. 248.  Through the Court's managerial authority, it established a single Plaintiffs' General Steering Committee, operating through two Plaintiffs' Executive Committees, one comprised of attorneys representing the interests of wrongful death and personal injury claimants, and the other populated by counsel representing commercial plaintiffs.  *Id.* at ¶ 1.  Just as the JPMDL did not create an "Iran MDL," or a separate "non-Iran MDL," Judge Casey did not establish different committees responsible for focusing on the claims against distinct defendants.

The committees were instead created and charged with responsibility to guide the litigation as a whole, in furtherance of the Court's interest in managing a coordinated approach for pretrial proceedings involving common legal and factual issues on behalf of all plaintiffs.  *Id.* at ¶ 10 ("The Plaintiffs' Executive Committee shall conduct all pretrial proceedings involving common legal and factual issues, whether relating to liability or damages, on behalf of all plaintiffs.").  The Court imposed significant obligations on the committees for the benefit of all plaintiffs, which were critical to the Court's ability to effectively manage the proceedings.  The Court's Case Management Order directed the Co-Chairs of the PECs to "ensure that all plaintiffs act together where possible in an effort to avoid duplicative filings."  *Id.* at ¶ 9 ("The two Executive Committees shall coordinate and, wherever possible, submit joint discovery demands,

4

discovery responses, and other filings regarding all matters common to the Individual Actions."). The Court further recognized that the work necessary to represent the interests of the MDL plaintiffs and to advance the MDL would need to move forward on many different fronts simultaneously, and therefore directed the committees to "distribute all work assignments in such a manner as to promote the orderly and efficient conduct of this litigation, and [] avoid unnecessary duplication and unproductive effort." *Id.* at ¶ 12.

> B. Committee Members Have Undertaken Extensive Work and Expense to Guide and Manage the Litigation for all Plaintiffs

Pursuant to the duties and obligations assigned to the committees by the Court, counsel for the *Federal* plaintiffs and other committee members have undertaken extensive efforts for the benefit of all plaintiffs in the multi-district litigation. The docket reflects the daunting scope of those obligations, which were fulfilled by a subset of dedicated committee members. These efforts have encompassed (among other activities) the handling of hundreds of dispositive motions; multiple complex Second Circuit appeals involving dozens of defendants; three separate petitions for *certiorari* before the United States Supreme Court (two of which resulted in requests for the views of the United States); the prosecution of related claims in a forfeiture proceeding in federal court in Chicago seeking to attach frozen al Qaeda assets for the benefit of the 9/11 plaintiffs as a whole; an appeal in that related action to the Seventh Circuit producing a split panel decision; discovery proceedings that this Court described as labyrinthine and that involved the production of millions of pages of foreign language documents (all of which had to be translated, reviewed, and analyzed by both counsel and subject matter experts); countless hearings on motions to compel; global investigative efforts to develop evidence in support of the claims; depositions both in the United States and in several foreign countries; and third party discovery through subpoenas, Freedom of Information Act requests, and *Touhy* submissions.

The involved members of the committees also worked in earnest on a range of essential case management initiatives and obligations, such as negotiating case management procedures and protocols with the defendants and preparing related submissions to the Court; preparing agendas for discovery and case management conferences; developing procedures to harmonize pleadings in the MDL; and integrating new plaintiffs and claims into the MDL.  In addition, certain of the committee members worked diligently with Congress for seven years to enhance the legal rights and remedies available to the MDL plaintiffs, culminating in the enactment in 2016 of the Justice Against Sponsors of Terrorism Act ("JASTA").  In addition to the value of the attorney and support time that has been invested to accomplish all of that work, millions of dollars in out of pocket expenses have been invested for the benefit of all plaintiffs, which remain unreimbursed.

### C.   The Defaults Against Iran and the Disbursements From the USVSST

In 2010, the *Havlish* counsel moved forward with non-adversarial default judgment proceedings against Iran.  The pursuit of a liability default judgment against Iran was but one small component of the work the members of the committees were required to do to prosecute the claims of the MDL plaintiffs, and was undertaken while other committee members were attending to intensive demands in the MDL on other fronts.  While the coordination of the default efforts was less than ideal, the fact that *Havlish* counsel handled the default judgment while other members of the committees were focusing on other necessary work reflects the kind of division of assignments contemplated by CMO #3 to "promote the orderly and efficient conduct of this litigation, and [to] avoid unnecessary duplication and unproductive effort."  CMO #3 at ¶ 12.  Indeed, *Havlish* counsel were free to focus on the Iran default because other committee members were fulfilling other demanding obligations imposed on the committees under CMO #3 and the Court's further orders.

Thereafter, in 2015, Congress enacted the USVSST to provide compensation to certain individual terrorism plaintiffs holding judgments against a designated State Sponsor of Terrorism, such as Iran. Under the structure of the USVSST, recoveries are distributed to eligible claimants in tranches. To date, the USVSST has distributed recoveries to eligible claimants through two tranches. Counsel for the *Havlish* plaintiffs have estimated that those distributions have included hundreds of millions of dollars in compensation to plaintiffs in the MDL for claims that are part of this MDL, and the attorneys for those plaintiffs already have realized fees up to the statutory 25% limit applicable to those tranches. Available data indicates that approximately $550 million will be distributed to MDL plaintiffs in the third tranche, resulting in additional attorney fees of roughly $75 million in aggregate, based on the new 15% fee cap. Some of the attorneys reaping the benefits of these fees flowing from representation of MDL plaintiffs[5] have made significant investments in advancing the MDL, while others appear to have made little or essentially no contribution. In any case, it is undeniable that the burdens of handling the necessary work on behalf of those MDL plaintiffs, in order to prosecute the claims those plaintiffs have chosen to pursue, have been borne largely by members of the committees.

On November 21, 2019, Congress passed legislation that amends the USVSST and expands the scope of recovery available to judgment creditors of Iran. *See* Pub. Law No. 116-69. The key changes are: (1) the eligibility rules have been revised to permit participation of all 9/11 individual victims and family members, despite receipt of benefits from the original Victim Compensation Fund; (2) the fund has been extended from 2026 to 2030; (3) the percentage of

---

[5] Many of the MDL plaintiffs who will be receiving recoveries from the USVSST sued Iran only after the USVSST was created. Their counsel were able to leverage existing attorney-client relationships relating to the non-Iran MDL claims to now sue Iran, and thereby take advantage of the opportunity presented by the fund. The work involved in handling those non-Iran claims for more than 15 years before the fund was created was done by members of the committees.

monies from civil settlements and forfeitures related to IEEPA and TWEA violations has been increased from 50% to 75% to drive more money into the overall fund; and (4) the distributions will now be divided evenly between non-9/11 and 9/11 claimants, so half of the money deposited into the fund from now through its sunset in 2030 will be running in favor of 9/11 claimants. These amendments increase the likelihood that attorneys representing plaintiffs in the MDL will realize material and substantial fees disproportionate to their work and investments on behalf of their clients.  These changes also make clear that distributions from the USVSST will be more than sufficient to compensate the committee members for their contributions to the MDL as a whole, by setting aside a percentage of the recoveries from the resulting attorneys' fees for a common benefit fund.

III.   **LEGAL ARGUMENT**

    A.   **The Court's Managerial Powers Mandate That a Common Benefit Fund Be Established for the Benefit of All PEC Members**

In complex multi-district litigation proceedings like the present one, the court typically establishes procedures through "which one or more attorneys are selected and authorized to act on behalf of other counsel and their clients with respect to specified aspects of the litigation." MANUEL FOR COMPLEX LITIGATION, FOURTH § 10.22 (2004).  The attorneys who assume and fulfill the obligations required of such leadership committees play a vital role in assisting and enabling courts' management of complex MDL litigation.  *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 775 (9th Cir. 1977) (recognition that creation of lead counsel committee is to "insure the orderly disposition of the actions with the economy of time, money and effort for the court, counsel and the parties"); *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 130 (2d Cir. 2010) ("[T]he efficient handling of [MDL] cases demands a similar approach to case management [to class actions].  District courts typically appoint a lead counsel or plaintiffs' steering committee to

8

coordinate and conduct pretrial proceedings on behalf of all plaintiffs in order to avoid what otherwise might well become chaotic."); *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972,* 549 F.2d 1006, 1012 (5th Cir. 1977) (district courts have the inherent authority "to bring management power to bear upon massive and complex litigation to prevent [the litigation] from monopolizing the services of the court to the exclusion of other litigants").

"The desirability – indeed, the compelling need – to have pretrial proceedings managed or at least coordinated by lead counsel or a steering or executive committee demands the existence of a source of compensation for their efforts on behalf of all." *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 130 (2d Cir. 2010). Indeed, the court's power to manage complex litigation through the establishment of an executive or steering committee would be entirely "illusory if it [were] dependent upon lead counsel's performing the duties desired of them for no additional compensation." *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1016 (5th Cir. 1977). *See also In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256 (E.D.N.Y. 2006); *In re Ethicon, Inc. Power Morcellator Prods. Liab. Litig.,* 2016 U.S. Dist. LEXIS 54017 (D. Kan. Apr. 21, 2016) (creating a common benefit fund for benefit of the plaintiffs' steering committee); *In re Genetically Modified Rice Litig.*, 2010 U.S. Dist. LEXIS 19168 (E.D. Mo. Feb. 24, 2010) (recognizing managerial power to establish fund for benefit of leadership counsel); *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, 2008 U.S. Dist. LEXIS 17535, *20 (D. Minn. Mar. 7, 2008) ("As a corollary to this appointment [to the PEC], the court must be permitted to compensate fairly the attorneys who serve on such a committee") (citations omitted). And as recognized by this Court, creating a common benefit fund "promotes the Court's ability to manage the litigation by compensating attorneys who perform significant legal services in favor of all Plaintiffs." *See* ECF No. 5180 at 11.

9

Consistent with these principles, where claims that are part of an MDL produce substantial recoveries, a common benefit fund should be established to compensate the committee members who have assumed and fulfilled the responsibilities imposed on the committees by the Court, and who have shouldered the burden of prosecuting the claims for the plaintiffs as a whole. *In re Vioxx Prods. Liab. Litig.*, 802 F. Supp. 2d 740 (E.D. La. 2011) (establishing procedures to allocate attorneys' fees among common benefit attorneys based on submissions addressing relative contributions to the litigation). The allocation of benefits from such a common fund is determined based on counsel's relative contributions to the case as whole, and not solely dependent on the relationship between those efforts and the particular recoveries from which the fund is established. In fact, the Duke Law Center for Judicial Studies' *Guidelines and Best Practices for Large and Mass-Tort MDLs* recommend that the framework and factors governing the common benefit fund be established at the outset of the litigation, before it is possible to know which undertakings will result in a settlement, judgment, or recovery. *See* DUKE LAW CENTER FOR JUDICIAL STUDIES, *Guidelines and Best Practices for Large and Mass-Tort MDLs* (2d Edition 2018) at 65. This recommendation, and the factors that courts implementing it typically adopt at the outset of an MDL to govern a common benefit fund, further reinforce that a common benefit fund should be structured to benefit the committee members for their work on the MDL as a whole, and is not designed to narrowly and solely reward attorneys who happen to be assigned responsibility for work that contributes indirectly to a particular recovery or settlement.

    **B.    Principals of Equity and Unjust Enrichment Require That Committee Members Benefit from the Common Benefit Fund in Proportion to Their Relative Contributions to the MDL as a Whole**

Critical case management considerations and equitable principles underpin this conclusion and require this approach. Within the structure of a MDL, "[a] Committee depends

10

for it [sic] success on cooperation among its members and would function less effectively if its members were to compete with one another...." *Smiley v. Sincoff*, 958 F.2d 498, 502 (2d Cir. 1992). But a common benefit fund that fails to proportionally reward the committee members for their work and investments in the MDL as a whole, and instead rewards only certain committee members for limited efforts undertaken by or assigned to them, would undermine this essential cooperation. Under such a framework, committee members would shun essential but difficult work and instead compete to handle only aspects of the MDL that are perceived to have the potential to position them for a common benefit windfall. Meanwhile, committee members would have a perverse incentive to avoid essential administrative case management responsibilities, given the difficulty in establishing a clear nexus between such work and a particular settlement or recovery. The result would be the very "chaos" committee structures are designed to avoid, and courts attempting to manage MDL proceedings would bear the brunt of that chaos.

      The equitable principles of unjust enrichment and *quantum meruit* that also inform the common benefit fund jurisprudence align with these case management considerations, and further support the conclusion that the common benefit fund should operate to compensate the committee members for their relative investments in the MDL as a whole. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH § 14.121 (2004) (the concept of the common benefit fund is "grounded in the equitable powers of the courts under the doctrines of *quantum meruit* and unjust enrichment"). These equitable principles recognize the unique role MDL committee members fulfill in doing the work and making the investments that would otherwise fall to other counsel (to include other committee members) pursuant to the representations they agreed to undertake. To use this MDL as an example, many attorneys involved in this litigation agreed to

represent members of the 9/11 community in pursuing claims against a broad range of al Qaeda sponsors and supporters. Upon undertaking those representations, those attorneys assumed certain obligations to diligently represent their clients, to include the obligations to "take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor" and to act "with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." *See* American Bar Association Model Rules of Professional Conduct, Rule 1.3. Those obligations extended to the full spectrum of claims the plaintiffs were pursuing in the MDL.

In reality, however, attorneys in this MDL have relied upon members of the committees to fulfill and discharge those obligations, in whole or in part. Committee members have invested and continue to invest significant time and effort in prosecuting those claims, not to mention the millions of dollars in expenses that have been invested in support of same. The value of the time invested in performing that work, and related costs, represents the actual cost committee members have borne in shouldering the burdens of prosecuting common claims and issues in favor of plaintiffs in the MDL, and which otherwise would have been borne solely by counsel for those plaintiffs individually. As those counsel are now receiving fees for those representations, equity requires that the committee members who have done the work to fulfill and sustain those representations should be compensated, in proportion to the value of the burden they assumed. By establishing a common benefit fund for the benefit of all committee members based on their contributions to the MDL as a whole, the Court will merely be avoiding the unjust enrichment of counsel who are disproportionately benefitting from recoveries resulting from the MDL and providing *quantum meruit* compensation for members of the committees who have managed this MDL.

## IV. APPOINTMENT OF A SPECIAL MASTER TO ADMINISTER THE COMMON BENEFIT FUND IS APPROPRIATE

The *Federal* plaintiffs are cognizant of the degree to which this massive litigation is straining the resources of the Court, and aware of the scope of the work that remains to be done on a range of fronts. In light of these circumstances, counsel for the *Federal* plaintiffs respectfully submit that the most efficient procedure would be for the Court to appoint a special master to manage the common benefit fund process, in accordance with criteria established by the Court. Those criteria should mirror the factors traditionally used in determining the extent and allocation of common benefit funds in MDL matters, to include: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *See Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000). Based on the particular circumstances of this MDL, the common benefit fund analysis should also take into consideration the expenses invested in relation to discovery and common benefit work; the consistency, quantum, duration, and intensity of each attorney or firm's commitment to the litigation; the extent to which the committee member or firm performed a leadership role in the day-to-day litigation; the quality of the work performed; and the risk at the outset and during the course of the MDL of non-recovery.[6] *See* MANUAL FOR COMPLEX LITIGATION, FOURTH § 14.121 at 191-193 (explaining that factors governing common benefit fund award will vary and listing factors that may be relevant). The degree to which a committee member's work contributed to the realization of a recovery would of course be a relevant consideration as well, alongside the other relevant factors.

---

[6] For the Court's convenience, the *Federal* Plaintiffs are submitting a sample common benefit fund order from another MDL proceeding, in which these and other factors have been included in the common benefit fund analysis. *See* Declaration of J. Scott Tarbutton, Exhibit 1.

13

Based on the foregoing criteria and any others the Court deems appropriate, the special master would be charged with the responsibility for making recommendations concerning the appropriate value of the common benefit fund (considering the total value of the common benefit work undertaken by all committee members over the course of the MDL and total common benefit expenses incurred), and the equitable allocation of that common benefit fund among committee members (based on the relative value of their contributions towards the common benefit work and expenses, the quality of their work, and other factors identified above).  The special master would also be responsible for determining the most equitable approach for directing monies into the common benefit fund, taking into consideration the anticipated operation of the USVSST since its inception and through its anticipated closing in 2030.[7]  The special master's recommendations would then be submitted to the Court for review, approval, or modification.

To enable the special master[8] to discharge these functions, the Court should require the parties to provide the special master with relevant information necessary to make these determinations, under protocols that will protect against disclosure of that information to the defendants or other third parties.  It is anticipated that this information would include details concerning the extent of payments from the USVSST to MDL plaintiffs; the fees paid from those USVSST funds to MDL plaintiffs' attorneys; time records and other support for common benefit work relative to which committee members are seeking compensation; and documentation for

---

[7] Within this or any common benefit fund framework adopted by the Court, priority should be given to allocating funds to reimburse common benefit fund expenses incurred to date, and to establish an expense account for anticipated future common benefit expenses.  As it stands now, the committees continue to fund expenses of the litigation, a result that makes no sense given the availability of funds from the USVSST recoveries.

[8] To the extent he would be amenable to undertaking the role, former Magistrate Judge Frank Maas would be uniquely suited to serve as the common benefit fund special master, given his familiarity with the MDL and work that was undertaken by the committee members.  *See* https://www.jamsadr.com/maas/.

common benefit expenses for which reimbursement is being sought from the common benefit fund.

## V.     CONCLUSION

The case law governing the establishment, purpose, and operation of MDL common benefit funds; the history and circumstances of this particular case, including the committee structure adopted at the outset of the litigation and nature and scope of the work that has been undertaken by committee members; and practical considerations relating to the scope of the distributions from the USVSST and resulting attorney fees, all support the conclusion that the common benefit fund established pursuant to this Court's September 30, 2019 Opinion and Order should operate to compensate the committee members for their relative investments in the MDL as a whole.  Accordingly, counsel for the *Federal* Plaintiffs respectfully request that the Court endorse the proposed framework and procedures set forth above.

December 13, 2019                               Respectfully submitted,

                                                COZEN O'CONNOR

                                                By: __/s/ *Sean P. Carter*__
                                                Sean P. Carter, Esq.
                                                Stephen A. Cozen, Esq.
                                                J. Scott Tarbutton, Esq.
                                                One Liberty Place
                                                1650 Market Street, Suite 2800
                                                Philadelphia, PA 19103
                                                Tel: (215) 665-2000

                                                *Attorneys for the Federal Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of The *Federal* Plaintiffs' Memorandum of Law in Support of Their Proposal Concerning the Establishment and Allocation of the Common Benefit Fund and For Reconsideration of the Court's September 30, 2019 Common Benefit Fund Decision, or, in the Alternative, in Support of Objections to the Court's September 30, 2019 Opinion and Order Pursuant to Fed. R. Civ. P. 72, was filed electronically this 13th day of December 2019. Notice of this filing will be sent to all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system. Parties may access this filing through the Court's ECF system.

      /s/ J. Scott Tarbutton
J. Scott Tarbutton

LEGAL\44051271\1