UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE TERRORIST ATTACKS ON | : | 03 MDL 1570 (GBD) (SN) |
| SEPTEMBER 11, 2001 | : | |

_____

**This Document Relates To:**

*Ashton, et al. v. al Qaeda Islamic Army, et al.*, Case No. 02-CV-06977
*Burlingame, et al. v. bin Laden, et al.*, Case No. 02-CV-07230
*Bauer, et al. v. al Qaeda Islamic Army, et al.*, 02-CV-07236
*Havlish, et al. v. bin Laden, et al.*, Case No. 03-CV-09848
*O'Neill, Sr., et al. v. Republic of Iraq, et al.*, Case No. 04-CV-1076
*Burnett, Sr., et al., v. Islamic Republic of Iran*, Case No. 15-CV-9903

**MOTION FOR RECONSIDERATION AND/OR CLARIFICATION OF DECISION ESTABLISHING A COMMON BENEFIT FUND SOLELY IN FAVOR OF *HAVLISH* COUNSEL**

**DECEMBER 13, 2019**

# TABLE OF CONTENTS

I.      An Interim CBF Rewarding a Subset of "Common Benefit" Work at the Expense
        of Other Common Benefit Attorneys Is Wholly Unprecedented and Improper..............8

II.     *Havlish* Counsel Have Not Shown That They Need a Common Benefit Fee in
        Order to Obtain "Reasonable" Compensation for Their Work......................................11

III.    Any CBF Must be Open to the PECs, Who Have Undertaken Common-Benefit
        Work in this MDL, and Must Establish Clear Rules Governing Such Claims...............14

IV.     *Havlish* Counsel Has Waived any Interest in USVSST Fund Round One
        Recoveries...................................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006
(5th Cir. 1977) ...................................................................................................... 15

*In re Vioxx Prods. Liab. Litig.,* 760 F. Supp.2d 640 (E.D.La. 2010) ................................. 8, 9, 12

*Smiley v. Sincoff,* 958 F.2d 498 (2d Cir. 1992) ............................................................... 8

**Statutes**

Justice for United States Victims of State Sponsored Terrorism Act,
34 U.S.C. § 20144 (Dec. 18, 2015) ...................................................................... 6, 11

United States Victims of State Sponsored Terrorism Fund Clarification Act,
P.L. 116-69, Title VII (Nov. 21, 2019) ............................................................... 7, 13

**Other Authorities**

Duke Law Center for Judicial Studies, <u>Standards and Best Practices for Large and
Mass-Tort MDLs</u> (2014) ....................................................................................... 10, 11

Eldon E. Fallon, *Common Benefit Fees in Multidistrict Litigation,*
74 La. L. Rev. 371 (2014) ................................................................................... 8, 11

The Plaintiffs' Executive Committee for Wrongful Death and Personal Injury Plaintiffs as well as Plaintiffs in the above-named cases (the "Responding Plaintiffs") move for reconsideration and/or clarification of this Court's September 30, 2019 Decision ("Decision") granting, in part, a motion by counsel for the *Havlish* plaintiffs to create a common benefit fund ("CBF") drawing from the Responding Plaintiffs' recoveries from the United States Victims of State Sponsored Terrorism Fund ("USVSST Fund"). ECF No. 5180.[1]  Creation of a CBF mid-stream during an ongoing multi-district litigation ("MDL") to reward attorneys who focused their work on a single defendant (who did not appear in this litigation) at the cost of attorneys who continue to prosecute claims against other defendants in the same MDL would be unprecedented, unwarranted and wholly premature.  It is respectfully submitted that the Court overlooked the fact that no other MDL has ever carved out a CBF to benefit only one group of "common benefit" attorneys, at the expense of, and to be paid by another group of "common benefit" attorneys from recoveries obtained against one (defaulting) defendant when the litigation against other defendants is ongoing.  To correct this clear error and prevent manifest injustice, reconsideration of the Decision is necessary.

Unlike in a typical MDL with a CBF created at the outset of litigation that includes clear payment requirements (often involving an independent referee to audit time and expenses claimed), the contemplated CBF here would draw on the fees obtained by counsel for the Responding Plaintiffs, who are members of the Plaintiffs' Committee formed to prosecute the entire litigation, and who have themselves accounted for the vast majority of the common benefit legal work and expenses incurred in connection with this MDL.  That different Plaintiffs'

---

[1] Pursuant to orders granted by this Court, ECF Nos. 5201, 5272, and 5333, the deadline for seeking reconsideration of this ruling was extended to December 13, 2019, rendering this motion timely.

Committee member law firms focused their MDL efforts on different defendants is common in complex multi-district litigation, but it does not, and has never before, entitled a subgroup of "common benefit" counsel to sole access to a CBF.  To establish such a CBF for the exclusive benefit of a sub-group of attorneys would be contrary to decades of established common benefit fund practice in a variety of different multi-district litigations.  Indeed, it appears that no other MDL has ever established an interim CBF to transfer fees from one group of attorneys actively engaged in common-benefit work to another.  Rather, the purpose of MDL CBF awards is to avoid the "free rider" problem, in which passive attorneys representing MDL plaintiffs reap a windfall from the efforts of the attorneys carrying out common-benefit work on behalf of the entire MDL.[2]  That concern is simply not at issue with respect to the Responding Plaintiffs' counsel, who have been actively and vigorously involved in prosecuting claims in this MDL for over 17 years.  Responding Plaintiffs therefore ask this Court to reconsider the establishment of a CBF at this time.

Moreover, the purpose of a CBF in multi-district litigation is to ensure that the attorneys bearing the time and expense of litigating on behalf of all plaintiffs in the MDL receive "reasonable" compensation for their work.  This Court's Decision failed to take into consideration the compensation that *Havlish* counsel has already likely received for its work. *Havlish* counsel has, for example, engaged in independent enforcement efforts for the sole

---

[2] For purposes of this motion only, Responding Plaintiffs are not contesting this Court's determination that *Havlish* counsel were engaged in common-benefit work in their pursuit of a default judgment against Iran in the *Havlish* litigation, even though that effort was undertaken only on behalf of *Havlish* plaintiffs; the PECs had independently obtained the very information upon which *Havlish* relied in obtaining default liability and damages judgments; and the PECs endeavored to limit the expenditure of judicial resources by not re-litigating an issue against a defaulting defendant that another group of plaintiffs had already presented. Responding Plaintiffs reserve the right to challenge this determination before Judge Daniels or on appeal.

benefits of their clients, not the MDL as a whole, such as their actions to attach Iranian assets in the 650 Fifth Avenue litigation, which drove the timing of their original motion for a liability judgment and which benefited only *Havlish* counsel's plaintiffs, not the MDL as a whole. ECF No. 4407 at 9 – 10.  It appears that *Havlish* counsel are also pursuing judgment enforcement remedies in foreign jurisdictions—again, solely for the benefit of their individual clients.[3]  Given these efforts, it is possible, even likely, that *Havlish* counsel have already received more than "reasonable compensation" for their efforts in obtaining the default judgment against Iran and, indeed, have received full lodestar payment from these sources (and are likely to gain yet more fees when Round 3 payments from the USVSST Fund are distributed).  The Court must have full information about what recoveries and fees *Havlish* has collected solely for its clients – and not for the common benefit of all MDL participants – relating to its judgments against Iran before determining whether a CBF should be created.

In addition, to date—and despite repeated requests by the Responding Plaintiffs— *Havlish* counsel have been unwilling to disclose any records to support the time and expense they claim to have incurred in obtaining the default judgment against Iran, nor have they attempted to demonstrate that the time and expenses incurred were necessary to obtain that default judgment against a non-appearing defendant – the product of an uncontested hearing that lasted less than a day.  This intransigence is contrary to the clear directive of the Court's order and makes any determination of the reasonableness of the *Havlish* counsels' request for 12% of all recoveries– which is 50% more than what they requested in 2016, despite having done no

---

[3] *Havlish* counsel has not revealed the fees and expenses they have recovered and/or expect to recover from various sources, including the 650 Fifth Avenue litigation (which could include retainer agreements with fees more than double of what is allowable under the USVSST statute) or USVSST Fund payouts to their clients in the *Havlish* suit as well as in the *Hoglan* and *Ray* litigations, where they also serve as counsel.

further common benefit work, and which amounts to 80% of all attorneys' fees available under

the USVSST Clarification Act's cap on fees of 15% of recovery – impossible to assess.  While it

is difficult to imagine what reasonable common benefit work the *Havlish* attorneys did that

would entitle them to 80% of all attorneys' fees for recoveries from the USVSST Fund –

especially in light of the substantial efforts made by the Responding Plaintiffs in connection with

the prior USVSST Fund distributions as well as the changes formalized in the USVSST

Clarification Act – it is even more difficult to do so in the absence of any detailed information

from *Havlish* counsel about its actual work.[4]

Finally, if despite the foregoing the Court is still inclined to proceed with a CBF at this

time, drawn solely from USVSST Fund payments on judgments against Iran, the Court must

establish specific parameters for obtaining an award of fees from the CBF.  In particular, the

Court should rule that *all* common-benefit work in the MDL, not just work involving claims

against Iran, is potentially eligible for a CBF award; otherwise, the Court would be incentivizing

attorneys in an MDL to pursue the "low-hanging fruit" (*e.g.,* a default judgment against a non-

appearing defendant), and discouraging MDL attorneys from taking on the more difficult tasks

for which a favorable outcome is far less certain. Conversely, the Court should make clear that

*only* work done for the "common benefit" of all MDL plaintiffs is eligible for CBF compensation

– that is, no CBF fees should be available for preparing individual claim submissions to the

USVSST Fund or pursuing independent recoveries, such as the attachment of 650 Fifth Avenue

---

[4] In response to the Responding Plaintiffs' requests for time and expense records, only one
member of the *Havlish* group has represented that he kept any contemporaneous time records.
Another member of the *Havlish* group has suggested that all he did – day and night – for eight
years was to think about the suit against the Iranian defendants.

or elsewhere, solely on behalf of counsel's own clients.  Last, the Court should clarify whether the CBF contributions are to be paid only from the USVSST Fund's Second Round payments.

For each of these reasons, Responding Plaintiffs respectfully ask the Court to reconsider and/or clarify its prior ruling.

I.   **An Interim CBF Rewarding a Subset of "Common Benefit" Work at the Expense of Other Common Benefit Attorneys Is Wholly Unprecedented and Improper.**

There is a critical distinction between the use of a CBF in the classic "common fund" context, such as a class action, and in an MDL that this Court overlooked in its Decision.  As explained by the Honorable Eldon E. Fallon, who has written extensively on this topic, in the class action context, "the beneficiary of the common benefit work is the claimant; in MDLs the beneficiary is the primary attorney (the attorney who has the representation agreement with the claimant)."  Eldon E. Fallon, *Common Benefit Fees in Multidistrict Litigation,* 74 La. L. Rev. 371, 376 (2014).[5]

_____

[5] As Judge Fallon went on to explain, "For this reason, in MDLs, the common benefit fee is extracted from the fee of the primary attorney and not the claimant, as is the case with class actions. Thus in MDLs, the claimant does not pay the common benefit fee; the primary attorney who is the beneficiary of the common benefit work pays it." *Id.; see also In re Vioxx Prods. Liab. Litig.,* 760 F. Supp.2d 640, 653 (E.D.La. 2010) (Fallon, J.) ("the common benefit fee . . . will come from the attorneys, *most of whom have not done any common benefit work* but have received enormous benefit from it") (emphasis added); *Smiley v. Sincoff,* 958 F.2d 498, 500 (2d Cir. 1992) (affirming order providing that "any committee fee was to be paid by all attorneys on behalf of their clients. Plaintiffs were not to pay fees to the committee out of their own recoveries.").

It appears from the September 30 ruling that this Court may have misunderstood Responding Plaintiffs' point about this distinction. Responding Plaintiffs did not argue that there had to be a common fund in order for a CBF to be appropriate. Rather, Responding Plaintiffs argued that *Havlish* could not rely on the common fund authority as an independent basis for a CBF, since no common fund had been created by their work on the consolidated cases.

In the MDL context, therefore, the source of tension in a fee application is typically "between the attorneys who have done common benefit work and the primary attorneys who have not." *In re Vioxx Prods. Liab. Litig.,* 760 F. Supp.2d at 653. "[A]s between a common benefit attorney who expended considerable time, resources, and took significant economic risks to produce the fee, and the primary attorney who did not, it is appropriate and equitable that the former receive some economic recognition from the beneficiary of this work." *Id.*

The situation here, however, is entirely different. Even if awards from the USVSST Fund were, in part, the result of some work done by *Havlish* counsel, most of the attorneys from whom they seek compensation are not passive beneficiaries of this MDL. Rather, the vast majority of the plaintiffs who obtained default judgments against Iran following the *Havlish* judgment are represented by counsel who initiated the litigation against the sponsors of terrorism, including suits against Iran pre-dating those filed by the *Havlish* group, and who serve on the wrongful death and person injury PEC in this MDL. *See, e.g., Burnett Sr., et al. v. Al Baraka Investment et al.*, Case No. 02-cv-1616 (D.D.C.) (original complaint against sponsors of terrorism filed August 15, 2002 [ECF No. 1]); *Ashton, et al. v. al Qaeda Islamic Army, et al.*, Case No. 02-CV-06977 (original complaint against sponsors of terrorism filed September 10, 2002, including allegations against Iran [ECF No. 1-2]; amended complaint naming Iran as a defendant filed March 6, 2003 [ECF No. 11 at 59, 73 – 75, 124 – 130]).[6]  Indeed, many of the plaintiffs who have obtained awards from the USVSST Fund are represented by PEC-member counsel who have devoted substantial time and money to common-benefit work in this MDL – likely exponentially more

---

[6] Members of that PEC are the counsel of record for each of the cases that are the subjects of this motion (*Ashton, Burlingame, Bauer, O'Neill,* and *Burnett*).  As the docket and appearances before this Court reflect and as Case Management Order 3 provides (ECF No. 248), an enormous amount of the work for all plaintiffs in this MDL has been coordinated, managed and conducted by attorneys at firms on both of the PECs.

than have *Havlish* counsel in securing a default judgment. Thus, unlike in established MDL practice and procedure, what *Havlish* counsel are requesting from this Court is an award of fees *from* other common benefit lawyers who have likely spent more time, expended more resources, and incurred more risk than have *Havlish* counsel.  Under these specific circumstances, the establishment of a CBF solely to benefit *Havlish* counsel is neither "appropriate" nor "equitable."[7]

When ruling that "a common benefit fund applicable solely to claims against Iran is appropriate," ECF No. 5180 at 7, this Court found that courts can set a common benefit fee before an MDL is resolved "if individual cases begin to settle" and "may choose to establish a fund to make interim reimbursement payments to plaintiffs' counsel."  In support, this Court cited a single source – the Duke Law Center for Judicial Studies, Standards and Best Practices for Large and Mass-Tort MDLs at 70, 81 (2014).  In doing so, however, the Decision conflated and confused two separate points the Duke Center was making. The Center's discussion of "interim reimbursement payments" had nothing to do with settlement proceeds, but instead concerned general assessments from plaintiffs' counsel in order to "defray expenditures by lead counsel who 'front' the bulk of the costs and expenses of the litigation." *Id.* at 70. By contrast, the Center's separate discussion of the timing of a CBF noted that a court may want to make a "*determination of the assessment percentage . . .* when individual cases begin to settle," *id.* at 81 (emphasis added) (that is, when some plaintiffs' cases are resolved in full against all defendants), but it says nothing about awarding payments of attorneys' fees (let alone selective payments to

---

[7] Responding Plaintiffs take no position as to whether a more narrowly circumscribed CBF, drawn only from passive primary counsel not undertaking common-benefit work, might be appropriate.

only certain common benefit attorneys) out of that assessment.[8]  The Duke Report simply does

not provide support for the extraordinary remedy proposed by the Court—an interim fee award

to only one group of attorneys doing common-benefit work for their contributions to a litigation

that is ongoing at the expense of another group of common-benefit attorneys who are leading,

and expending significant resources in, that ongoing litigation.[9]

II.    *Havlish* **Counsel Have Not Shown That They Need a Common Benefit Fee in
Order to Obtain "Reasonable" Compensation for Their Work.**

It is a fundamental principle of CBF jurisprudence that attorneys who do common-benefit

work should be entitled to "reasonable" compensation for their efforts. Most often, such

"reasonable" compensation is established through contemporaneous time and expense records

for their work. Some courts employ a "lodestar" method to calculate a reasonable fee, by

multiplying documented hours by reasonable hourly rates for attorney work. Other courts, which

prefer to assess an across-the-board percentage assessment for a CBF on all recoveries,

nevertheless cross-check the reasonableness of that assessment against a rough lodestar fee

calculation. Fallon, *Common Benefit Fees in Multidistrict Litigation,* 74 La. L. Rev. at 381-84

(describing lodestar, percentage, and blended calculation methods). This Court endorsed this

---

[8] The purpose of setting the assessment percentage at or before the time of the earliest
settlements is to avoid the "claw-back" problem.  As one transferee judge cited in the report
observed, "failing to deduct a common benefit assessment from early-settled cases created a
'horrible' situation where the later settling plaintiffs had to either bear the whole burden or claw
back monies from the early-settling plaintiffs and their counsel." *Id.* at 71. This Court's ruling
threatens to create a similar problem: *Havlish* counsel seek to be paid for their Iran work now,
leaving Respondents' counsel to later seek to claw back money from *Havlish* counsel to
compensate Respondents' counsel for common benefit work done in the balance of the MDL.
[9] Further distinguishing this case from other MDLs is that *Havlish* counsel's work in obtaining
the default judgment did not result in any recovery for the "common benefit".  Rather, it was
only after Congressional action that the USVSST was created, thereby providing for a source of
recovery totally divorced from any work that *Havlish* counsel did. And, as mentioned, *Havlish*
counsel's own collection efforts inured solely to the benefit of their individual clients.

blended method in its ruling and instructed counsel for the *Havlish* Plaintiffs to "come forward with additional evidence before the Court can assess a common benefit fee." ECF No. 5180 at 12 (noting that "a fee applicant's lodestar is often used to cross-check the reasonableness of the percentage fee award").

To date, *Havlish* counsel have made no showing of what a reasonable fee would be. Immediately after this Court's Decision, Responding Plaintiffs asked for a meet-and-confer with *Havlish* counsel and asked them to document their time and expenses incurred in obtaining the default judgment against Iran. Yet, *Havlish* counsel have refused to provide Responding Plaintiffs with any documentation whatsoever. Even if *Havlish* counsel has contemporaneous time records and adequate expense records, which seems unlikely given their refusal to share any such information, their failure to provide these records suggests that any existing documentation will reflect substantially less time and expense than *Havlish* counsel currently claim. This failure alone should warrant reconsideration and denial of their request for the creation of a CBF.

Moreover, *Havlish* counsel likely have already recouped significant fees from the USVSST Fund awards to their clients and/or independent collection efforts undertaken solely for the benefit of *Havlish* counsel and their clients, not all MDL plaintiffs as a group. Given its historic roots in doctrines of equity and *quantum meruit*, *In re Vioxx Prods. Liab. Litig.,* 760 F. Supp.2d at 647, the goal of the common benefit doctrine is to ensure that counsel who do the common-benefit work and the primary counsel retained by the litigants both "receiv[e] fair compensation for their respective work," *Id.* at 653, with neither counsel receiving an unjust windfall.[10] This, however, is not what *Havlish* counsel are seeking. What *Havlish* counsel really

---

[10] Indeed, *Havlish* counsel's request for 12% of the gross recovery would undoubtedly result in their receiving an "unjust windfall" as such a fee award would result in *Havlish* counsel receiving approximately 80% of the attorneys' fee in the case of a 15% retainer agreement with

seek is to be paid a "royalty" in perpetuity from Responding Plaintiffs USVSST payments.  Such a result is entirely improper and would be unprecedented in any MDL litigation.

In any event, it will be impossible to assess "reasonable compensation" for their purported common benefit work without full information from *Havlish* counsel about the compensation they have already received to date, as well as any additional fees they reasonably anticipate receiving, such as from the third tranche of payouts from the USVSST Fund next year and their independent enforcement efforts.

The determination of what would be a fair allocation of fees is further complicated by the fact that *Havlish* counsel do not seek to draw common-benefit fees from the typically passive primary attorneys representing clients in an MDL, but rather from their fellow PEC members, who have themselves undertaken the bulk of the common-benefit work, and the bulk of the cost, in advancing this MDL. Responding Plaintiffs therefore ask this Court to clarify that it will defer considering the creation of a CBF unless and until it has been presented with a sufficient factual predicate to establish that it would be fair and reasonable to do so.

Specifically, before creating a CBF (let alone determining a reasonable contribution to it) the Court should first assess—through contemporaneous time and expense records—what the *Havlish* attorneys' documented common-benefit work is.  It should then look at all fee revenue and expense reimbursement that the *Havlish* attorneys have received to date or are likely to receive in the future. If the Court concludes that the *Havlish* attorneys have already been fairly compensated for obtaining a default judgment against a non-appearing defendant, there will be no need for a CBF.

---

the individual client.  In addition, as a result of the Clarification Act, attorneys' fees under the USVSST Fund are now capped at 15% of the recovery.

As a final matter, the timing of the *Havlish* group's motion for default judgment against Iran, to which some members of the PECs objected, was driven by self-serving interests that did not serve a common benefit.  In order to secure a judgment that would allow its clients – and its clients alone – to intervene in the litigation against the beneficial owners of 650 Fifth Avenue, *Havlish* counsel unilaterally proceeded with default proceedings, knowing that the PECs had independently obtained evidence against Iran intended for that same purpose.  But *Havlish* counsel did not share this plan with any other members of the MDL, and secured a place in the 650 Fifth matter for only its own clients, not to the benefit of all plaintiffs.

Not having adequately taken into consideration the compensation that *Havlish* counsel has already secured nor the self-interested nature of the work that *Havlish* counsel pursued, reconsideration of the Decision creating a common-benefit fund is warranted.

### III.    Any CBF Must be Open to the PECs, Who Have Undertaken Common-Benefit Work in this MDL, and Must Establish Clear Rules Governing Such Claims.

As discussed above, it would be unprecedented and improper to create an interim CBF drawn exclusively from recoveries derived from default judgments against Iran in this MDL. Nevertheless, if the Court remains determined to proceed with an interim CBF, it must set forth clear rules and guidelines for seeking fees from that fund.  Responding Plaintiffs here suggest three such rules that should be established.

First, even if the funds for the CBF are derived entirely from legal fees earned on recoveries relating to judgments against Iran, all counsel who have done common-benefit work in this MDL must be eligible to apply for common benefit fees.  Responding Plaintiffs know of no precedent or principle that would justify limiting fee awards to work undertaken in pursuit of judgments only against a single, defaulting defendant, and neither *Havlish* counsel nor the

Decision identified any.

The common-benefit doctrine exists to provide reasonable compensation to attorneys who voluntarily take on the costs and burdens of handling the common work of an MDL. An MDL court has inherent authority to appoint lead counsel and leadership committees and to structure the management of such complex litigation.  As the Fifth Circuit Court of Appeals declared in *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006 (5th Cir. 1977), this authority would be "illusory if it is dependent upon lead counsel's performing the duties desired of them for no additional compensation." *Id.* at 1016.

It would be contrary to the entire common-benefit doctrine were only those attorneys whose common-benefit efforts proved successful against a single (defaulting) defendant entitled to compensation.  If this were the case, there would be no incentive for counsel to take on the more difficult, and riskier, common-benefit assignments when only the common-benefit work that "paid off" resulted in compensation.  This MDL presents the perfect example.  The work of seeking justice for the victims of September 11 from <u>all</u> of those responsible, including but not limited to Iran, has been prolonged, difficult, and expensive.[11]  By contrast, the work involved in obtaining a default judgment against Iran, a defendant that never appeared in this litigation was relatively straightforward. The uncontested prove-up hearing lasted less than one day.  It would be contrary to the entire common-benefit doctrine – as well as an unprecedented decision without any legal support in common-benefit jurisprudence – to rule that only those attorneys who pursued the "low-hanging fruit" of a defaulting defendant in a multi-defendant case were entitled to compensation, while those who have engaged in the long, hard and expensive slog of pursuing

---

[11] The original *Burnett* complaint was filed on August 15, 2002, the original *Ashton* complaint was filed on September 4, 2002 and the original *O'Neill* complaint was filed on March 10, 2004.

contested recoveries against charities, individuals, banks and other sovereigns received none; and then to require those attorneys diligently working and expending resources against other defendants to pay attorneys' fees to that small sub-group of attorneys who obtained the default judgment.[12]

Second, and conversely, the Court should make clear that *only* common-benefit work is entitled to compensation from any CBF.  Based on conversations with *Havlish* counsel, it appears that *Havlish* counsel will be seeking fees to compensate them for their work in preparing claims on behalf of their clients for submission to the USVSST Fund, as well as for their other enforcement efforts—such as the attachment of the property at 650 Fifth Avenue and efforts to seize international assets—which would benefit solely their own clients. These efforts, though inuring to the benefit of the *Havlish* plaintiffs, are clearly not common-benefit work, *i.e.*, work undertaken for the benefit of *all* of the Plaintiffs in this MDL.

Finally, only common-benefit work that can be reasonably documented—through contemporaneous time and expense records or comparably reliable documentation—should be

---

[12] Even if this Court were to limit fees solely to work done in connection with claims against Iran, many Responding Plaintiffs' counsel, in addition to *Havlish* counsel, would be entitled to compensation, because they contributed significant common-benefit work that was ultimately utilized in the *Havlish* motion for default judgment.  For example, evidence uncovered and developed by Motley Rice's global investigation featured substantially in *Havlish*'s list of exhibits that accompanied their Memorandum of Law in Support of their Motion for Entry of Default Judgment. Specifically, Motley Rice was closely involved in the initial contact and development of expert Kenneth R. Timmerman, whose affidavit accounted for 138 pages of *Havlish*'s liability exhibits. Kenneth Timmerman, an American journalist, was first brought to the attention of *Havlish* after Motley Rice obtained a witness interrogation from Germany. The interrogation was conducted by the German Federal Bureau of Investigation in the criminal proceedings against Abdelghani Mzoudi, in which the Burnett Plaintiffs intervened to gain access to evidence.  Other expert witnesses on Iran like Patrick Clawson and Dietrich Snell were similarly developed by counsel for Responding Plaintiffs.

recoverable from any CBF. Especially in a case like this, where both the contributions to the CBF and the claims against it will come largely from firms vigorously engaged in common-benefit work on behalf of all of the Plaintiffs in this MDL, equity and fairness demand no less.

IV.    *Havlish* **Counsel Has Waived any Interest in USVSST Fund Round One Recoveries.**

On July 12, 2016, *Havlish* counsel's original motion for creation to a CBF, prior to any payments issues in the USVSST Fund, was denied as premature, but without prejudice to renew. ECF No. 3309 at 7. Two days later, the USVSST Fund Special Master published a notice in the Federal Register and the USVSST Fund began accepting applications. *See* USVSST Fund Important Dates, http://www.usvsst.com/important.php, last accessed December 13, 2019. USVSST Fund Round One payments were authorized on December 19, 2016 and payment notifications were made starting on February 10, 2017. *See id.* The Round One distribution payments were made to clients and fees distributed to counsel soon thereafter and the funds no longer exist. *Havlish* counsel did not renew their motion for creation of a CBF for nearly two years. *See Havlish* Plaintiffs' Renewed Motion, ECF No. 4289 (Filed December 19, 208). In their December 2018 motion, the *Havlish* Plaintiffs specifically asked for the following relief:

> Further, the Havlish Plaintiffs request that the Court authorize payments to Havlish attorneys of all sums placed into the common benefit fund by virtue of USVSST Fund distributions received by Responding Plaintiffs in 2019 and continuing through all future years of the USVSST Fund.

*Id.* at 2.

In their memorandum of law in support of the motion, *Havlish* counsel also refer to the relief requested being limited to 2019 and future distributions from the USVSST Fund. ECF No. 4290 at 2-3. They also describe January 1, 2019 as the statutory deadline for the Special Master to authorize second round payments from the USVSST Fund. *Id*. at 5. They further request that the Court authorize payments to the *Havlish* attorneys of all sums placed into the common

benefit fund by virtue of the distributions received by Responding Plaintiffs in 2019. *Id.* at 8. Additionally, they refer to the amount they believe the Responding Plaintiffs will receive from USVSST Fund payments in 2019. *Id.* at 18.

While it appears that this Court's Decision assumed in its analysis that what is being debated is fees to be paid to Respondents from the USVSST Fund Second Round of payments (*see* ECF No. 5180 at 6, 11), to the extent this matter is not clearly stated, the Responding Plaintiffs respectfully request clarification that the Decision concerns only those payments from the USVSST Fund in Round Two or later. Such a ruling is necessary, as *Havlish* counsel waived any claim to Round One payments by failing to timely renew its motion in 2016 or 2017, when the USVSST Fund publicized the authorization of and issuance of Round One payments.

## CONCLUSION

For the foregoing reasons, Responding Plaintiffs move the Court to reconsider and/or clarify its September 30, 2019 Decision in a manner consistent with the arguments set forth above.

December 13, 2019                                 Respectfully submitted,

                                                  MOTLEY RICE LLC

                                                  By: /s/_____
                                                      JODI WESTBROOK FLOWERS
                                                      DONALD A. MIGLIORI
                                                      ROBERT T. HAEFELE
                                                      MOTLEY RICE LLC
                                                      28 Bridgeside Boulevard
                                                      Mount Pleasant, SC 29465
                                                      Tel.: (843) 216-9184
                                                      Email: rhaefele@motleyrice.com

                                                  *For the Plaintiffs' Exec. Committee for Wrongful Death And Personal Injury Plaintiffs*

KREINDLER & KREINDLER LLP

By: /s/_____

    JAMES P. KREINDLER
    ANDREW J. MALONEY
    KREINDLER & KREINDLER LLP
    750 Third Avenue
    New York, New York 10017
    Tel.: 212-687-8181
    Email: amaloney@kreindler.com

*For the Plaintiffs' Exec. Committee for Wrongful
Death And Personal Injury Plaintiffs*

cc: The Honorable George B. Daniels, via ECF
All Counsel of Record via ECF