IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Case No. 1:03-md-01570-GBD-SN |
| *This document relates to:* | ORAL ARGUMENT REQUESTED |
| *The Underwriting Members of Lloyd's Syndicate 2, et al. v. Al Rajhi Bank, et al.*, No. 16-cv-7853; *Aguilar, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09663; *Addesso, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09937; *Hodges, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-00117; *Aiken, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-00450; *Charter Oak Fire Insurance Co., et al. v. Al Rajhi Bank, et al.*, No. 17-cv-02651; *Abarca, et al., v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03887; *Arrowood Indemnity Co., et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03908; *Abedhajajreh v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-06123; *Fraser, et al. v. Al Qaeda Islamic Army, et al.*, No. 17-cv-07317; *Muenchener Rueckversicherungs-Gesellschaft Aktiengesellschaft in Muenchen, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-07914; and *Abbate, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-08617. |  |

**MEMORANDUM OF LAW IN SUPPORT OF
AL RAJHI BANK'S MOTION FOR THE COURT TO
<u>DECIDE THE BANK'S PENDING RULE 12(b)(6) MOTION TO DISMISS</u>**

**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005

December 19, 2019                                                    *Counsel for Al Rajhi Bank*

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................2

I.    PRIOR TO PERMITTING JURISDICTIONAL DISCOVERY, THE COURT
SHOULD RULE ON AL RAJHI BANK'S PENDING RULE 12(b)(6) MOTION .......... 2

II.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST AL RAJHI BANK
UNDER THE ANTI-TERRORISM ACT ......................................................................... 3

      A.    Plaintiffs Fail To Allege Primary-Liability Claims Against The Bank
Under § 2333(a) ....................................................................................................5

      B.    Plaintiffs Fail To Allege Secondary-Liability Claims Against The Bank
Under § 2333(d)(2) ...............................................................................................8

      C.    The Second Circuit's Summary Order Does Not Preclude Dismissal For
Failure To State A Claim .....................................................................................11

CONCLUSION ...........................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................13

*Burrell v. United States*,
    467 F.3d 160 (2d Cir. 2006) ..................................................................................2

*Cain v. Twitter, Inc.*,
    No. 17-cv-2506, 2018 U.S. Dist. LEXIS 163457 (N.D. Cal. Sept. 24, 2018) ........11

*Crosby v. Twitter, Inc.*,
    921 F.3d 617 (6th Cir. 2019) ................................................................................11

*Fidelity Bank v. Avrutick*,
    740 F. Supp. 222 (S.D.N.Y. 1990) .......................................................................14

*Fields v. Twitter, Inc.*,
    881 F.3d 739 (9th Cir. 2018) ..................................................................................7

*Freeman v. HSBC Holdings PLC*,
    No. 14-cv-6601, 2019 U.S. Dist. LEXIS 162179 (E.D.N.Y. Sept. 16, 2019) ......5, 7

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) .............................................................8, 9, 10, 11

*Intellivision v. Microsoft Corp.*,
    784 F. Supp. 2d 356 (S.D.N.Y. 2011) ....................................................................4

*Kaplan v. Lebanese Canadian Bank*,
    No. 08-cv-7253, 2019 U.S. Dist. LEXIS 162505 (S.D.N.Y. Sept. 20, 2019) ........ *passim*

*Linde v. Arab Bank*,
    882 F.3d 314 (2d Cir. 2018) ........................................................................ *passim*

*Mastafa v. Australian Wheat Bd. Ltd.*,
    No. 07-cv-7955, 2008 U.S. Dist. LEXIS 73305 (S.D.N.Y. Sept. 25, 2008) ...........9

*O'Neill v. Al Rajhi Bank*,
    714 F.3d 118 (2d Cir. 2013) ..............................................................................3, 14

*O'Sullivan v. Deutsche Bank*,
    No. 17-cv-8709, 2019 U.S. Dist. LEXIS 53134 (S.D.N.Y. Mar. 28, 2019) ...............5, 7, 8, 11

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
    720 F.3d 490 (2d Cir. 2013)........................................................................3

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)....................................................................................4

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*,
    712 F.3d 705 (2d Cir. 2013)......................................................................15

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013)..........................................................................6

*Siegel v. HSBC N. Am. Holdings, Inc.*,
    933 F.3d 217 (2d Cir. 2019)......................................................................10

*Strauss v. Credit Lyonnais, S.A.*,
    379 F. Supp. 3d 148 (E.D.N.Y. 2019) ......................................................10

*Taamneh v. Twitter, Inc.*,
    343 F. Supp. 3d 904 (N.D. Cal. 2018) ......................................................10

*In re Terrorist Attacks on September 11, 2001* ("*Terrorist Attacks I*"),
    349 F. Supp. 2d 765 (2005) .........................................................5, 8, 9, 14

*In re Terrorist Attacks on September 11, 2001* ("*Terrorist Attacks V*"),
    740 F. Supp. 2d 494 (S.D.N.Y. 2010)........................................................3

*In re Terrorist Attacks on September 11, 2001*,
    295 F. Supp. 3d 416 (S.D.N.Y. 2018)................................................2, 6, 9

*In re Terrorist Attacks on September 11, 2001*,
    298 F. Supp. 3d 631 (S.D.N.Y. 2018)................................................12, 14

*United States v. Minicone*,
    994 F.2d 86 (2d Cir. 1993)..........................................................................2

*Weiss v. Nat'l Westminster Bank*,
    381 F. Supp. 3d 223 (E.D.N.Y. 2019) ...................................................8, 10

## STATUTES

18 U.S.C. § 2331 ........................................................................................1

18 U.S.C. § 2331(1)(A)...............................................................................8

18 U.S.C. § 2331(1)(B)............................................................................7, 8

18 U.S.C. § 2333 ........................................................................................6

18 U.S.C. § 2333(a) ...................................................................................................................3, 5

18 U.S.C. § 2333(d)(2) ............................................................................................................3, 8, 9

18 U.S.C.  2339B(a)(1) .................................................................................................................6

**RULES**

Fed. R. Civ. P. 12(b)(2)...................................................................................................................1

Fed. R. Civ. P. 12(b)(6)........................................................................................................ *passim*

Al Rajhi Bank filed its Motion to Dismiss Plaintiffs' Amended Complaint in August 2017, seeking dismissal under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim under the Anti-Terrorism Act ("ATA").  In its March 2018 decision, this Court dismissed the Amended Complaint for lack of personal jurisdiction and did not reach the Bank's motion under Rule 12(b)(6).  On appeal, the Second Circuit reversed the dismissal for lack of personal jurisdiction, to permit jurisdictional discovery, but did not reach the Bank's arguments on failure to state a claim.  *See* Summ. Order at 3-4, *In re Terrorist Attacks on September 11, 2001*, No. 18-1201(L) (2d Cir. Oct. 15, 2019), ECF No. 188.  This Court should decide Al Rajhi Bank's pending Rule 12(b)(6) motion now — prior to permitting jurisdictional discovery — and dismiss the Amended Complaint for failure to state a claim.

The Second Circuit based its decision to reverse this Court's denial of jurisdictional discovery on "allegations related to" Al Rajhi Bank's purported "specific intent," which appears in only one paragraph of the Amended Complaint.  Summ. Order at 4.  Yet the Bank's purported state of mind alone, even if adequately alleged (it is not), cannot make out an ATA claim. Plaintiffs' primary-liability claims (if not abandoned) fail regardless of any allegation of "specific intent" because the Amended Complaint's factual allegations still fail to plausibly show that the Bank's purported support for charities proximately caused Plaintiffs' injuries or constitutes an act of "international terrorism" under the ATA.  Any "specific intent" allegation also cannot save Plaintiffs' aiding-and-abetting claim because the alleged facts do not plausibly show that the Bank's purported financial services or donations to charities even reached Al Qaeda, let alone substantially assisted Al Qaeda in carrying out the heinous 9/11 attacks.  Plaintiffs' conspiracy claim (if not abandoned) also fails because the Amended Complaint fails to allege facts plausibly

showing that the Bank reached an agreement with Al Qaeda to commit acts of terrorism in the United States.

In any event, the Amended Complaint's attenuated allegation "related to" specific intent that apparently justified jurisdictional discovery is far from sufficient to plausibly show the mental state required for either primary liability, aiding and abetting, or conspiracy under the ATA.

Delaying consideration of Al Rajhi Bank's pending Rule 12(b)(6) motion risks unnecessarily expending years of effort and untold resources of the parties and the Court in jurisdictional discovery. Deciding the pending motion now, in contrast, involves only a short delay, minimal effort, and negligible cost. That tradeoff, and the fundamental fairness of deciding timely dispositive motions prior to discovery, compels resolution of the pending motion now.

## ARGUMENT

### I.   PRIOR TO PERMITTING JURISDICTIONAL DISCOVERY, THE COURT SHOULD RULE ON AL RAJHI BANK'S PENDING RULE 12(b)(6) MOTION

When this Court dismissed Plaintiffs' claims for lack of personal jurisdiction over Al Rajhi Bank, the Court "[did] not consider the alternative grounds for dismissal advanced by ARB and SGB under Rule 12(b)(6)." Mem. Decision & Order 4 n.5, ECF No. 3947 (*In re Terrorist Attacks on September 11, 2001*, 295 F. Supp. 3d 416, 421 n.5 (S.D.N.Y. 2018)). In its Summary Order dated October 15, 2019, the Second Circuit reversed this Court's denial of jurisdictional discovery but, like this Court, did not rule on the Bank's alternative Rule 12(b)(6) motion. Summ. Order at 3-4. This Court may decide that motion now. *See Burrell v. United States*, 467 F.3d 160, 165 (2d Cir. 2006) ("[I]f an issue was not part of the appellate decision, a trial court may consider the matter." (quoting *United States v. Minicone*, 994 F.2d 86, 89 (2d Cir. 1993))).

This Court should not delay consideration of the Bank's Rule 12(b)(6) motion until after jurisdictional discovery. As this Court previously stated in this multidistrict litigation:

> The resolution of a motion to dismiss for failure to state a claim is *not dependent* on matters disclosed during jurisdictional discovery. A Rule 12(b)(6) motion tests the sufficiency of the plaintiffs' pleadings. A defendant is not put to the onerous task of engaging in intrusive and expensive discovery in order to assist a plaintiff in the hopes of uncovering evidence of an actionable wrong, so as to justify the maintenance of the action.

*In re Terrorist Attacks on September 11, 2001* ("*Terrorist Attacks V*"), 740 F. Supp. 2d 494, 511 (S.D.N.Y. 2010) (emphasis added) (denying motion to strike renewed motions to dismiss under Rule 12(b)(6)). The Bank should not be subjected to potentially years of invasive and burdensome jurisdictional discovery before this Court determines whether such discovery would be futile because Plaintiffs' allegations are facially insufficient to state a claim against the Bank under the ATA. *See, e.g.*, *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 & n.6 (2d Cir. 2013) (affirming dismissal for failure to state a claim, stating "we need not reach" the issue of personal jurisdiction because, "[a]lthough we traditionally treat personal jurisdiction as a threshold question . . . that practice is prudential and does not reflect a restriction on the power of the courts" (citation omitted)).

## II.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST AL RAJHI BANK UNDER THE ANTI-TERRORISM ACT

In their Amended Complaint, Plaintiffs seek to hold Al Rajhi Bank civilly liable under § 2333(a) (Counts II-VII) and § 2333(d)(2) (Count I) of the ATA. After the Bank's 2017 Motion to Dismiss, however, Plaintiffs limited the scope of their claims to aiding and abetting under the ATA.

In their briefing to the Second Circuit, Plaintiffs attempted to avoid the conclusive effect of the Second Circuit's decision in *O'Neill v. Al Rajhi Bank*, 714 F.3d 118, 125 (2d Cir. 2013), which held that substantively identical allegations against Al Rajhi Bank failed to plausibly show proximate causation. Plaintiffs took the position that, while *O'Neill v. Al Rajhi Bank* addressed

"proximate cause for purposes of addressing a claim of primary liability under the ATA, . . . this case concerns claims of aiding and abetting liability under the ATA."  Reply Br. Pls.-Appellants at 7, *In re Terrorist Attacks on September 11, 2001*, No. 18-1201 (2d Cir. Jan. 18, 2019), ECF No. 162.  Having disclaimed their primary-liability claims and ignored their conspiracy claims in representing the scope of their suit while on appeal, Plaintiffs cannot now assert those claims here. *See Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."); *Intellivision v. Microsoft Corp.*, 784 F. Supp. 2d 356, 365 (S.D.N.Y. 2011) ("A court cannot ignore a party's opportunistic use of inconsistent representations when one allegation serves an argument at one stage of a case and the other serves an argument at a later stage.").

In any event, the Amended Complaint fails to state primary-liability or secondary-liability claims (whether aiding-and-abetting or conspiracy) under the ATA, as explained in detail in the Bank's 2017 Motion to Dismiss briefing, and as outlined below.  *See* Mem. Law Supp. Al Rajhi Bank's Mot. Dismiss 12-31, ECF No. 3703 ("Mem."); Reply Mem. Law Supp. Al Rajhi Bank's Mot. Dismiss 3-12, ECF No. 3869 ("Reply").

Notably, since the Bank filed its Motion to Dismiss in 2017, courts in this Circuit have consistently dismissed ATA claims asserted against banks for allegedly committing, conspiring to commit, or aiding and abetting acts of international terrorism:

- In March 2019, this Court dismissed primary- and secondary-liability ATA claims brought by U.S. military personnel against European banks that allegedly provided banking services to the Republic of Iran, which was alleged to have financed the

terror groups that injured plaintiffs.  *See O'Sullivan v. Deutsche Bank*, No. 17-cv-8709, 2019 U.S. Dist. LEXIS 53134 (S.D.N.Y. Mar. 28, 2019).

- ▪ In September 2019, this Court dismissed primary- and secondary-liability ATA claims brought by U.S. military personnel and others against European banks that provided banking services to the government of Iran and state-owned businesses in violation of Treasury Department sanctions, allegedly facilitating the financing of Hezbollah and other terror groups.  *See Freeman v. HSBC Holdings PLC*, No. 14-cv-6601, 2019 U.S. Dist. LEXIS 162179 (E.D.N.Y. Sept. 16, 2019).

- ▪ Also in September 2019, this Court dismissed primary- and secondary-liability ATA claims against a Lebanese bank alleged to have provided banking services directly to Hezbollah fronts.  *See Kaplan v. Lebanese Canadian Bank*, No. 08-cv-7253, 2019 U.S. Dist. LEXIS 162505 (S.D.N.Y. Sept. 20, 2019).

These recent decisions reinforce the Bank's arguments for dismissal of Plaintiffs' ATA claims and underscore the futility of pressing ahead with jurisdictional discovery.

**A.    Plaintiffs Fail To Allege Primary-Liability Claims Against The Bank Under § 2333(a)**

As detailed in the Bank's Motion to Dismiss, the Second Circuit's prior decision affirming dismissal of Al Rajhi Bank under Rule 12(b)(6) bars Plaintiffs' claims for primary liability here, including for reasons unrelated to the Bank's purported state of mind.  *See* Mem. 9-11; Reply 2. The Amended Complaint's allegations are substantively identical to those this Court previously dismissed in *In re Terrorist Attacks on September 11, 2001* ("*Terrorist Attacks I*"), 349 F. Supp. 2d 765, 826, 833 (2005), *aff'd sub nom.*, *O'Neill v. Al Rajhi Bank*, 714 F.3d 118, for failure to plead proximate causation.  These repeat allegations comprise:  (i) Al Rajhi Bank provided routine banking services to charity fronts for Al Qaeda and persons purportedly affiliated with Al Qaeda,

(ii) the Bank knowingly provided funding to those purported charity fronts, and (iii) Al Rajhi family members had ties to persons allegedly affiliated with Al Qaeda. *See In re Terrorist Attacks*, 295 F. Supp. 3d at 428; *id.* at 427 (acknowledging that "substantively similar allegations were previously considered by this Court and the Second Circuit"); Mem. 10-11 & Ex. 1. The Second Circuit's controlling decision in this multidistrict litigation thus requires dismissal of Plaintiffs' primary-liability claims for failure to plead proximate causation.

The Bank's Motion to Dismiss also shows that, even if examined anew, Plaintiffs' primary-liability claims fail because the Amended Complaint fails to allege:

(i)     that the Bank's purported financial services and donations to charities were a "but-for cause" of, "a substantial factor in the sequence of responsible causation" of, and "led directly" to Plaintiffs' injuries, such that their injuries were "reasonably foreseeable or anticipated as a natural consequence" of the Bank's purported conduct (Mem. 20-23 (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 91-92, 95 (2d Cir. 2013) (holding that Congress did not "intend[] to permit recovery under § 2333 on a showing of less than proximate cause")); Reply 7-9); or

(ii)    that the Bank knowingly provided such support to Al Qaeda (Mem. 14-19; Reply 3-7; *see e.g.*, 18 U.S.C. § 2339B(a)(1)); much less

(iii)   that the Bank's purported financial services and donations were "violent acts or acts dangerous to human life" (Mem. 23-24 (quoting 18 U.S.C. § 2331(1)(A)); Reply 9-10); or

(iv)    that the Bank provided such support with the objective intent to "intimidate," "coerce," or "influence" the U.S. population or government, as required to commit

a predicate act of international terrorism under the ATA (Mem. 27-28 (quoting 18 U.S.C. § 2331(1)(B))).

The ATA decisions since the Bank's Motion to Dismiss overwhelmingly confirm that dismissal is appropriate here for failure to allege proximate causation. *See Fields v. Twitter, Inc.*, 881 F.3d 739, 747, 749-50 (9th Cir. 2018) (dismissing primary-liability claims where Twitter's alleged provision of accounts and messaging services to ISIS — even if this "facilitated the organization's growth and ability to plan and execute terrorist acts" — had no "direct relationship with the [plaintiffs'] injuries"); *Kaplan*, 2019 U.S. Dist. LEXIS 162505, at *16-17 (dismissing primary-liability claims where "the causal link between Defendant's provision of financial services and Plaintiffs' injuries is too attenuated" in absence of "factual, non-conclusory allegations . . . . that Defendant provided money directly to Hizbollah to carry out the attacks [or] that any funds transferred through the [bank's accounts] were, in fact, sent to Hizbollah and then used by Hizbollah to perpetrate the rocket attacks"); *Freeman*, 2019 U.S. Dist. LEXIS 162179, at *54-55 (dismissing primary-liability claims where the defendant bank provided financial services to entities that allegedly had "some association" with Hezbollah but did not "solely exist for terrorist purposes," and plaintiffs did not allege that the bank "directly provided funds or services to a terrorist group" or that the attacks "were only possible due to Defendants' actions"); *O'Sullivan*, 2019 U.S. Dist. LEXIS 53134, at *26, *29-30 (dismissing primary-liability claims where "Defendants indirectly supported [terrorist] organizations by providing financial services to Iranian banks, airlines, shipping and oil companies with relationships to those organizations").

These recent ATA decisions also support dismissal here because Plaintiffs fail to allege that the Bank's purported financial services and donations constitute acts of "international terrorism" involving "violent acts or acts dangerous to human life" that appear intended to

"intimidate," "coerce" or "influence" a civilian population or government.   18 U.S.C.

§ 2331(1)(A), (B); *see Linde*, 882 F.3d at 326 (holding that "the provision of material support to a

terrorist organization does not invariably equate to an act of international terrorism" as defined by

the ATA, and requiring allegations that the defendant manifested "the apparent intent to intimidate

or influence"); *O'Sullivan*, 2019 U.S. Dist. LEXIS 53134, at *30-33 ("The Complaint does not

allege plausibly that the provision of banking services, which are not inherently violent or

dangerous, can be considered as acts dangerous to human life . . . ."); *Weiss*, 381 F. Supp. 3d at

235 ("Plaintiffs' assertions address Defendant's indirect contribution, through banking services,

to terrorist activities without establishing any nexus between the banking services and the terrorist

activities.  Plaintiffs offer no evidence that Defendant's banking services directly involved strong

physical force, or intense force, or vehement or passionate threats."); *Kaplan*, 2019 U.S. Dist.

LEXIS 162505, at *14 (explaining that "even assuming, *arguendo*, that Defendant was aware that

it was providing such services to Hizbollah affiliates and that doing so violated [U.S.] economic

sanctions," plaintiffs had not alleged that this conduct "involve[d] violence or endanger[ed] human

life' and . . . 'appear[ed] to be intended to intimidate or coerce a civilian population or to influence

or affect a government'").

### B.     Plaintiffs Fail To Allege Secondary-Liability Claims Against The Bank Under § 2333(d)(2)

This Court's prior dismissal of secondary-liability claims against Al Rajhi Bank bars

Plaintiffs' secondary-liability claims here.  *See* Mem. 11-12; Reply 1-3.  In 2005, this Court set

out the *Halberstam* standard as "explain[ing] liability . . . for aiding and abetting and conspiracy."

*Terrorist Attacks I*, 349 F. Supp. 2d at 798 & n.28, 800 (quoting *Halberstam v. Welch*, 705 F.2d

472, 477 (D.C. Cir. 1983) (stating that a "defendant must knowingly and substantially assist the

principal violation")*)*.  The Court dismissed aiding-and-abetting claims against Al Rajhi Bank for

failure to state a claim because "concerted action liability requires general knowledge of the primary actor's conduct," and "Plaintiffs do not offer facts to support their conclusions that Al Rajhi Bank had to know that Defendant charities . . . were supporting terrorism." *Terrorist Attacks I*, 349 F. Supp. 2d at 832-33.

The allegations in the Amended Complaint are not "new or materially different." *In re Terrorist Attacks*, 295 F. Supp. 3d at 428. And JASTA endorsed *Halberstam* as the "proper legal framework for how [aiding-and-abetting] liability should function." *Linde*, 882 F.3d at 329 (quoting 18 U.S.C. § 2333 Note, § 5). The Amended Complaint thus fails to state an aiding-and-abetting claim against the Bank under § 2333(d)(2) for the same reasons already expressed by this Court in 2005.

Even if examined anew under JASTA, the Amended Complaint fails to state a secondary-liability claim (whether aiding-and-abetting or conspiracy) against the Bank. *See* Mem. 13-19, 28-31; Reply 3-7, 10-12.

**Aiding and abetting.** As set forth in the Bank's 2017 Motion to Dismiss briefing, Plaintiffs' aiding-and-abetting claim fails because, regardless of the Bank's state of mind, the Amended Complaint does not allege facts plausibly showing that Al Rajhi Bank's purported financial services and donations to charities "substantial[ly] assist[ed]" Al Qaeda in committing the 9/11 attacks in the United States. 18 U.S.C. § 2333(d)(2); *see* Mem. 28-29; Reply 10-12. The Amended Complaint does not contain a single factual allegation of any material support provided by the Bank, whether donations or banking services, that is linked in any way whatsoever to the "commission" of the 9/11 attacks, much less that is a "substantial factor in causing" the attacks. *Mastafa v. Australian Wheat Bd. Ltd.*, No. 07-cv-7955, 2008 U.S. Dist. LEXIS 73305, at *16-17 (S.D.N.Y. Sept. 25, 2008); *see Linde*, 882 F.3d at 329 (holding that for aiding-and-abetting liability

"the defendant must knowingly and substantially assist the principal violation"); *see also Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 225 (2d Cir. 2019) (affirming dismissal of JASTA aiding-and-abetting claims for failure to allege that the defendant "substantially assisted [Al Qaeda in Iraq] in [terrorist] activities, specifically the November 9 Attacks" at issue); *Taamneh v. Twitter, Inc.*, 343 F. Supp. 3d 904, 916 (N.D. Cal. 2018) (explaining that "JASTA does not refer to assisting a foreign terrorist organization generally or such an organization's general course of conduct" but, rather, Congress "indicate[d] that the injury at issue must have arisen from '*an act* of international terrorism' and that the secondary tortfeasor assisted the principal tortfeasor in committing '*such an act* of international terrorism'" (citation omitted)).

    Plaintiffs' aiding-and-abetting claim also fails because, as demonstrated in the Bank's Motion to Dismiss, the Amended Complaint has not alleged facts plausibly showing that the Bank knew that any charity or other alleged customer supported Al Qaeda.  *See* Mem. 12-19; Reply 4-6, 10.  As the Second Circuit subsequently held in *Linde*, plaintiffs cannot state an aiding-and-abetting claim under JASTA by alleging that the defendant merely knew of the principal "organization's connection to terrorism."  *Linde*, 882 F.3d at 329-30 ("[A]iding and abetting an *act* of international terrorism requires more than the provision of material support to a designated terrorist *organization*.  Aiding and abetting requires the secondary actor to be 'aware' that, by assisting the principal, it is itself assuming a 'role' in terrorist activities." (quoting *Halberstam*, 705 F.3d at 477)); *see Weiss*, 381 F. Supp. 3d at 239 (holding that "[e]vidence that Defendant knowingly provided banking services to a terrorist organization, without more, is insufficient to satisfy JASTA's scienter requirement"); *Strauss v. Credit Lyonnais, S.A.*, 379 F. Supp. 3d 148, 164 (E.D.N.Y. 2019) (same); *Kaplan*, 2019 U.S. Dist. LEXIS 162505, at *20-23 (rejecting

"general awareness" allegations which "do not, on their own, equate to knowingly playing a role in terrorist activities").

**Conspiracy.** Plaintiffs have failed to state a claim for conspiracy because, as argued in the Bank's Motion to Dismiss and explained in subsequent decisions, the Amended Complaint does not allege that the Bank reached an *agreement* with Al Qaeda itself to participate in Al Qaeda's efforts to attack the United States. *See* Mem. 29-30; Reply 12; *O'Sullivan*, 2019 U.S. Dist. LEXIS 53134, at *35-36 (holding that plaintiffs must plausibly plead that defendants conspired with an FTO "to commit an act of international terrorism"); *Kaplan*, 2019 U.S. Dist. LEXIS 162505, at *18 (S.D.N.Y. Sep. 20, 2019) (recounting "the *Halberstam* framework" for conspiracy as requiring an "agreement between two or more persons . . . to participate in an unlawful act, or a lawful act in an unlawful manner"); *Cain v. Twitter, Inc.*, No. 17-cv-2506, 2018 U.S. Dist. LEXIS 163457, at *8-9 (N.D. Cal. Sept. 24, 2018) (dismissing JASTA conspiracy claim because "[n]othing in the [complaint] establishes an agreement, express or otherwise, between Twitter and ISIS *to commit terrorist attacks*" (emphasis added)); *see also Crosby*, 921 F.3d at 626-27 & n.6 ("Courts now routinely dismiss ATA claims when the plaintiffs fail to allege a direct link between the defendants and the individual perpetrator.").

### C.   The Second Circuit's Summary Order Does Not Preclude Dismissal For Failure To State A Claim

The Second Circuit's Summary Order did not address Al Rajhi Bank's Rule 12(b)(6) arguments.  As discussed above, no rule prevents this Court from considering those arguments now.  The Second Circuit's conclusions in its Summary Order also do not preclude this Court from granting the Bank's Motion to Dismiss under Rule 12(b)(6).  Plaintiffs' "allegations related to" the Bank's purported "specific intent" (Summ. Order at 4), even if sufficient to warrant jurisdictional discovery, are not sufficient to allege the Bank's state of mind for purposes of stating

a claim under the ATA.  *See Kaplan*, 2019 U.S. Dist. LEXIS 162505, at *25 & n.6 (concluding that the Second Circuit's findings, "in the context of the *jurisdictional* inquiry," about the defendant bank's purposeful and wrongful use of U.S. accounts, as well as aiding and abetting under customary international law, did not preclude defendant's Rule 12(b)(6) arguments and dismissing primary- and secondary-liability claims under the ATA for failure to state a claim). Even a legally sufficient allegation of specific intent cannot overcome the Amended Complaint's other deficiencies outlined above and described in the Bank's Motion to Dismiss.

The Second Circuit here, unlike in *Kaplan*, did not find Plaintiffs' allegations sufficient to establish personal jurisdiction, but concluded only that jurisdictional discovery was warranted because Plaintiffs' "inclusion of allegations related to Al Rajhi Bank's specific intent to further terrorism in the United States . . . distinguishes the present case from those in which we have not granted personal jurisdiction."  Summ. Order at 4.  The Panel did not point to any factual allegation in the Amended Complaint plausibly showing the Bank's specific intent.

In fact, the only reference to "specific intent" in the Amended Complaint appears in a single conclusory sentence within paragraph 175:

> The intimacy of Al Rajhi Bank's collaboration with al Qaeda's integrated charity arms in furtherance of al Qaeda's terrorist activities, and *the bank's specific intent that its services and funding on behalf of those charities would be used by al Qaeda to attack the United States, is illustrated by the relationships and course of dealings among Al Rajhi Bank, Suleiman al Rajhi, and the IIRO.*

Am. Compl. ¶ 175 (emphasis added).  Even when read along with the surrounding paragraphs, this allegation remains a conclusory assertion of "guilt-by-association" that cannot plausibly show any involvement in tortious conduct.  *In re Terrorist Attacks on September 11, 2001*, 298 F. Supp. 3d 631, 646-47 (S.D.N.Y. 2018).

*First*, the alleged facts regarding the purported "relationships and course of dealings" between Suleiman Al Rajhi and the IIRO do not plausibly show that Suleiman Al Rajhi knowingly "assum[ed] a 'role'" in Al Qaeda's activities (*Linde*, 882 F.3d at 329), much less that his alleged involvement with the IIRO was on behalf of the Bank, such that his state of mind may be imputed to the Bank. *See* Mem. 18-19. Plaintiffs first speculate that, "[b]y virtue of the leadership positions held by Al Rajhi Bank officials within the IIRO and Sanabel al Kheer, including most notably those held by Suleiman al Rajhi himself, those Al Rajhi Bank officials received express and repeated notifications" that "the IIRO and its affiliates" had supported Al Qaeda and "terrorist activities." Am. Compl. ¶¶ 180-81. The allegation that Suleiman Al Rajhi served on the "Executive Council" of the Saudi-based IIRO, which Plaintiffs do not (and cannot) allege was ever designated, does not plausibly show that he also had "relationships" with the foreign IIRO affiliates or regional official that allegedly had some involvement with Al Qaeda. Am. Compl. ¶ 180, Ex. A ¶¶ 37, 64. The Amended Complaint, moreover, fails to allege that Suleiman Al Rajhi served on the Executive Counsel of the IIRO at any relevant time leading up to the 9/11 attacks.

Plaintiffs make the further speculative leap that the *Bank* knew that the IIRO in Saudi Arabia purportedly used the Bank's routine banking services to assist Al Qaeda, and, furthermore, that the Bank *intended* that Al Qaeda would use the Bank's indirect support "to attack the United States." *Id.* ¶¶ 175, 182; *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level. . . .").

Crucially, the Amended Complaint does not allege facts plausibly showing that the IIRO, in Saudi Arabia or elsewhere, had *any* role in Al Qaeda's 9/11 attacks. *See* Am. Compl. ¶ 182, Ex. A ¶¶ 30-94; Mem. 14-18; Reply 4-5; *Linde*, 882 F.3d at 329-30 (requiring, for aiding and abetting, that defendant assumed a "'role' in terrorist activities"); *In re Terrorist Attacks*, 298 F.

Supp. 3d at 647 (holding that even if allegations suggested that the Saudi High Commission "generally supported al Qaeda's efforts, or had more than a fleeting association with the terrorist organization, they do not implicate the SHC's personal involvement, or that of any of its employees or agents, in any particular tortious act or acts that caused the 9/11 Attacks").

In any event, regardless of whether the Amended Complaint's factual allegations plausibly show that Suleiman Al Rajhi, "by virtue of" his purported connection to the IIRO, obtained knowledge at some relevant time that the IIRO supported Al Qaeda, the Amended Complaint does not allege that he obtained any such knowledge within the scope of his responsibilities to the Bank; therefore, any such purported knowledge cannot be imputed to the Bank. *See Terrorist Attacks I*, 349 F. Supp. 2d at 833; *Fidelity Bank v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990).

*Second*, any other alleged "relationships and course of dealings" between Al Rajhi Bank and the IIRO concern merely routine banking services. *See* Am. Compl. ¶¶ 173, 175, 178-79. Plaintiffs allege that Al Rajhi Bank "maintained numerous accounts for the IIRO," "work[ed] with the IIRO to solicit donations," "handled IIRO 'charitable' contributions," and "collected" and "deposit[ed]" donations to the IIRO's affiliate. Am. Comp. ¶¶ 178-79. As explained in the Bank's Motion to Dismiss, the Bank's alleged provision of routine banking services to the IIRO cannot support an inference either that the Bank provided substantial assistance to the 9/11 attackers or knowingly played a role in Al Qaeda's terrorism. *See* Mem. 16, 28; Reply 3-7, 10-11; *Terrorist Attacks I*, 349 F. Supp. 2d at 800-01; *Linde*, 882 F.3d at 329. Nor are allegations of routine banking services sufficient to plausibly show proximate causation. *See O'Neill v. Al Rajhi Bank*, 714 F.3d at 124 (holding that the Bank's provision of "routine banking services to organizations and individuals said to be affiliated with al Qaeda" did not proximately cause "the September 11, 2001 attacks or plaintiffs' injuries").

Whatever their relevance to justifying jurisdictional discovery, Plaintiffs' slim and attenuated factual allegations regarding purported relationships among Al Rajhi Bank, Suleiman Al Rajhi, and the IIRO are insufficient to state plausible ATA claims against the Bank.  *See Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 718 (2d Cir. 2013) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)); *id.* at 717 (requiring disregard of "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," and "'naked assertion[s]' devoid of 'further factual enhancement'" (quoting *Iqbal*, 556 U.S. at 678)).

## CONCLUSION

For the foregoing reasons, this Court should resolve the Bank's pending Motion to Dismiss prior to permitting jurisdictional discovery and should dismiss with prejudice Plaintiffs' claims against Al Rajhi Bank.

Dated:   December 19, 2019
       Washington, DC

Respectfully submitted,

**WHITE & CASE**

 /s/ *Christopher M. Curran*
Christopher M. Curran
Nicole Erb
Matthew S. Leddicotte (admitted *pro hac vice*)
Reuben J. Sequeira
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005
Telephone:     + 1 202 626 3600
Facsimile:      + 1 202 639 9355
ccurran@whitecase.com
nerb@whitecase.com
mleddicotte@whitecase.com
rsequeira@whitecase.com

*Counsel for Al Rajhi Bank*