UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN)<br><br>ECF Case |
| This document relates to:<br><br>*Ashton et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977 (GBD)(SN) and (member case *Burlingame v. Bin Laden, et al.,* 02-cv-7230 (GBD)(SN)) | 02-cv-6977 (GBD)(SN) and<br><br>02-cv-7230 (GBD)(SN)<br><br>ECF Case |

**The *Burlingame IX* Wrongful Death Plaintiffs' Motion for Partial Final Judgments**

For the reasons set forth below, and the statements contained in the declaration of Frank H. Granito III, Esq. ("Granito Declaration"), the *Burlingame* subset of *Ashton* plaintiffs[1] reflected on the annexed Exhibit A ("*Burlingame IX*" Plaintiffs)[2] by and through their counsel, Speiser Krause, PC, respectfully move this Court to award in the cases set forth in Exhibit A to the Granito Declaration solatium damages for the losses suffered by the stepchildren of the decedent Brian Magee in the same amounts previously awarded by this Court to other *Ashton* plaintiffs, including other *Burlingame* plaintiffs, in this consolidated multidistrict litigation against the Islamic Republic

---

[1] The *Burlingame* (02-cv-7230) and *Ashton* (02-cv-6977) matters were Ordered consolidated for liability purposes and mandated to proceed under the *Ashton, et al. v. al Qaeda Islamic Army, et al*. (hereinafter "Ashton") master docket number 02-cv-6977, with the filing of a consolidated master complaint, and attorney James Kreindler was appointed Liaison Counsel for the consolidated actions within the *Ashton* master complaint. See 02-cv- 6977, Doc. No. 15, Entered 11/19/2002. The *Burlingame* plaintiffs, including the 9/11 decedents named on Exhibit A, remain segregated within all consolidated *Ashton* filings and are identified therein according to their separate docket number and counsel. See, e.g., 02-cv-6977, Doc. No. 465, filed 03/30/2005.

[2] There have been eight prior motions by members of the *Burlingame* subset of plaintiffs seeking solatium and economic damages for the losses of their loved ones in the September 11th attacks. *See* 02-cv-7230, Doc. No. 15, Filed 04/27/2018 ("Burlingame I"), Doc. No. 18. Filed 05/25/2018 ("*Burlingame II*"), Doc. No. 28. Filed 08/06/2018 ("*Burlingame III*"),  Doc. No. 31. Filed 08/09/2018 ("*Burlingame IV*") Doc. No. 63 Filed 07/02/2019 ("*Burlingame V*"), Doc. No. 71 Filed 08/16/2019 ("*Burlingame VI*") and Doc. No. 85 Filed 12/20/2019 ("*Burlingame VIII*"). Recently, two motions were filed on behalf of the plaintiffs in *Dickey v. Republic of Iran*, 18-cv-11417, who also appear in the *Burlingame* caption.

1

of Iran ("Iran"); and award prejudgment interest on those damages as set forth below. This motion is made only on behalf of the *Burlingame* claimants listed in Exhibit A attached to the Granito Declaration ("*Burlingame IX* Plaintiffs"), in light of this Court's previous orders granting permission to allow remaining *Burlingame* plaintiffs to move for this relief. *See* 03-md-1570 (02-cv-7230) (S.D.N.Y.) (GBD) (SN), Doc. No. 17 Entered 04/30/18, Doc. No. 22 Entered 05/29/18, Doc No. 30 Entered 08/07/2018, Doc No. 42 Entered 09/12/18, Doc. No. 68 Entered 07/29/19 and Doc, No. 78 Entered 09/03/2019. Plaintiffs also seek permission for the *Burlingame* plaintiffs to submit applications for punitive damages, economic damages and/or solatium damages, in later stages, consistent with future orders of this Court and to the extent such awards have not previously been addressed.

## Procedural Background

Based on evidence and arguments submitted by various plaintiffs in this consolidated multi-district litigation arising out of the September 11, 2001 terror attacks, this Court previously issued a default judgment on liability against Iran to all *Ashton* plaintiffs for claims arising out of the deaths of the plaintiff's decedents (the "*Ashton* wrongful death plaintiffs"). *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), Doc. No. 3008, Entered 08/26/2015. Thereafter, all *Ashton* wrongful death plaintiffs (including all *Burlingame* plaintiffs) moved for partial summary judgment for the conscious pain and suffering that their decedents suffered before death, which this Court granted, and certain *Ashton* wrongful death plaintiffs (including one *Burlingame* plaintiff) moved for default judgments on economic damages as well. This Court granted those motions. *See, e.g.,* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), Doc. Nos. 3229, Entered 03/09/2016 (adopting December 28, 2015 Report and Recommendation awarding damages for conscious pain and suffering) and Docs. No. 3356, Entered 10/11/2016 (awarding damages for economic loss) and 4011, Entered 05/29/2018 (awarding damages for economic loss).

In addition, certain *Ashton* plaintiffs previously moved for solatium damages suffered by those family members eligible to recover such damages under 28 U.S.C. § 1605A. *See* 03-md-1570 (02-cv-6977), Doc. Nos. 3295, Entered 06/08/2016 (Motion for Final Judgment for *Ashton I* claimants including claims for solatium damages), 3356, Entered 10/11/2016 (Motion for Final Judgment for *Ashton II* claimants including claims for solatium damages) and 3686, Entered 08/16/2017 (Motion for Final Judgment for *Ashton III* claimants including claims for solatium damages); and *see also* 02-cv-7230, Doc. No. 15, Filed 04/27/2018 (Motion for Final Judgment for *Burlingame I* claimants including claims for solatium damages); Doc. No. 18, Filed 05/25/2018 (Motion for Final Judgment for *Burlingame II* claimants including claims for solatium damages); Doc No. 28, Filed 08/06/2018 (Motion for Final Judgment for *Burlingame III* claimants including claims for solatium damages), Doc. No. 31, Filed 08/09/2018 (Motion for Final Judgment for *Burlingame IV* claimants including claims for solatium damages in favor of stepparents and stepsiblings); Doc. No. 42, Filed 07/02/2019 (Motion for Final Judgment for *Burlingame V* claimants including claims for solatium damages); Doc. No. 71, Filed 08/16/2019 (Motion for Partial Final Judgment for *Burlingame VI* claimants including claims for solatium damages); and18-cv-08297(GBG)(SN) Doc. No. 25 Filed 08/16/2019 (motion for Partial Final Judgment in favor of *Betru IV* Plaintiffs including solatium damages for stepparent).

This Court granted these motions, finding that an award to the immediate family members of each decedent was proper and that prejudgment interest on the solatium loss amounts was warranted. *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (SN), Doc. Nos. 3300, Entered 06/16/16; 3387 Entered 10/31/2016 and 3706, Entered 8/17/2017; 02-cv-7230-GBD Doc. Nos. 17, Entered 04/30/18, 22, Entered 05/29/18, 30, Entered 08/07/18, 42, Entered 09/12/18, 43, entered 09/13/2018 (awarding solatium damages to stepparents and stepsiblings), 68, Entered 07/29/19 and 78, Entered 09/03/2019; and18-cv-08297(GBG)(SN) Doc. No. 29 Filed 9/13/2019.

On the issue of prejudgment interest, a December 28, 2015, Report and Recommendation

adopted by this Court concluded that to the extent the *Ashton* wrongful death plaintiffs' claims arose out of the injuries in New York State the rate of prejudgment interest was 9 percent per annum from September 11, 2001 until the date judgment was entered and to the extent the injuries arose elsewhere, 4.96 percent per interest per annum, compounded annually, was appropriate. *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), Doc. No. 3175, Entered 12/28/2015, pp. 1–2. A subsequent Report and Recommendation issued October 2016, also adopted by this Court, however, concluded that the rate of prejudgment interest of 4.96 percent for all pain and suffering and solatium claims was more appropriate. *See* 03-md-1570 (11-cv-7550). Accordingly, the *Ashton I – XII* plaintiffs, as well as the *Burlingame I – VI* plaintiffs, were all awarded prejudgment interest at the rate of 4.96 percent per annum.

For the reasons below as well as those set forth in the prior motions for summary judgment on liability and prior motions for judgment for solatium damages made on behalf of other *Ashton* wrongful death plaintiffs, including the *Burlingame I – VI* plaintiffs, the *Burlingame* plaintiffs listed in Exhibit A to the Granito Declaration ("*Burlingame IX* Plaintiffs") now move this Court to grant the attached proposed Order awarding them the same amount of compensatory damages for their solatium losses as awarded to other plaintiffs, including the *Ashton I – XII* plaintiffs as well as the *Burlingame I – VI* plaintiffs' prior motions for partial judgment on solatium damages. All *Burlingame* plaintiffs also ask for permission to continue to submit applications in subsequent stages for economic damages, punitive damages and/or for solatium damages on behalf of those claimants not included in the attached Exhibit (as have all prior *Ashton* plaintiffs moving for similar relief), should any other applications be warranted.

**I.      Damages**

Under 28 U.S.C. § 1605A ("Section 1605A"), which applies to the claims against Iran, damages available include money damages "for personal injury or death." *See* 28 U.S.C. § 1605

A(a)(1) and (c)(4). The damages available to plaintiffs in Section 1605A action include "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605 A(c)(4). That is, the "estates of those who [died] can recover economic losses stemming from wrongful death of the decedent, family members can recover solatium for their emotional injury, and all plaintiffs can recover punitive damages." *Valore v. Islamic Republic of Iran*, 700 F.Supp.2d 52, 83 (D.D.C. 2010). All *Burlingame* plaintiffs are therefore entitled to compensation under Section 1605A for the solatium and economic losses suffered as a result of the wrongful death of each of their decedents.

### A. Solatium Damages

Section 1605A specifically provides for solatium damages. Under that provision, family members of the decedents may recover for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort." *Dammarell v. Islamic Republic of Iran*, 281 F.Supp. 2d 105, 196 (D.D.C. 2003), *vacated on other grounds*, 404 F.Supp. 2d 261 (D.D.C. 2005). Other courts have previously noted that "[a]cts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran,* 667 F.Supp. 2d 8, 22 (D.D.C. 2009). Given that, in FSIA cases, solatium claims have been treated as comparable to claims for intentional infliction of emotional distress, in which the immediate family members of the decedents are treated as direct victims. *See, e.g. Salazar v. Islamic Republic of Iran*, 370 F.Supp. 2d 105, 115 n.12 (D.D.C. 2005)("[c]ourts have uniformly held that a terrorist attack – by its nature – is directed not only at the victims but also at the victims' families."); *Surette v. Islamic Republic of Iran*, 231 F.Supp. 2d 260, 267 n.5 (D.D.C. 2002) (treating solatium claim as "'indistinguishable' from the claim of intentional infliction of emotional distress.") (quoting *Wagner v. Islamic Republic of Iran*, 172 F.Supp. 2d 128, 135 n.11 (D.D.C. 2001)). Thus, this Court has previously awarded solatium damages to

5

"immediate family members" who, though not physically present at the site of the terrorist attacks, were nevertheless intended victims of the terrorist activities. *See In re Terrorist Attacks on Sept. 11, 2001,* No. 03-MDL-1570 (GBD)(FM) (S.D.N.Y. Oct. 12, 2016) (ECF No. 3358); *In re Terrorist Attacks on Sept. 11, 2001,* No. 03-MDL-1570 (GBD)(FM), 2015 WL 9468813 (S.D.N.Y. Dec 28, 2015) ("*Ashton* Report"); and *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MDL-1570 (GBD)(FM), 2012 WL 4711407 (S.D.N.Y. Oct 3, 2012).

In defining those family members eligible to make a claim for solatium damages, this Court previously determined that spouses, parents, children and siblings who survived the 9/11 decedent were entitled to recover for their losses and set forth a framework for other family relationships that fell outside of those four categories, "functional equivalents" of immediate family members such as step-relationships upon the satisfaction of certain criteria regarding the nature of their relationships. *See* 03-md-1570 (S.D.N.Y.) (GBD)(SN), Doc. No. 3363, Entered 10/14/2016. The four established categories of family relationships – spouses, parents, children and siblings – do not require any additional showing of the nature of the underlying relationship. Some "functional equivalents" of an immediate family members, such as stepparents, stepchildren and stepsiblings who appear on Exhibit A, may also be eligible to make a claim for solatium damages.

To fashion a solatium award adequately compensating the surviving family members in the litigation against Iran, this Court previously looked to the analysis undertaken by District Court Judge Royce Lamberth in the case of *Estate of Heiser v. Islamic Republic of Iran*, 466 F.Supp. 2d 229 (D.D.C. 2006). There, Judge Lamberth concluded that solatium damages should be awarded to each spouse of a deceased victim in the amount of $8 million, to each parent in the amount of $5 million, and to each sibling in the amount of $2.5 million. *Id.*[3]

---

[3] This formula may be adjusted upward or downward when circumstances warrant. *See, e.g., Estate of Bland v. Islamic Republic of Iran*, 831 F.Supp. 2d 150, 156 (D.D.C. 2011); *Valore*, 700 F. Supp. 2d at 85.

Magistrate Judge Frank Maas previously recognized that the immediate family members of those killed in the September 11th terrorist attacks suffered and continue to suffer "profound agony and grief and, "[w]orse yet, … are faced with frequent reminders of the events that day. *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD)(FM), Doc. No. 2618, Entered 07/30/12, pp. 10 – 12. Given the "extraordinarily tragic circumstances surrounding the September 11th attacks, and their indelible impact on the lives of the victims' families," Magistrate Judge Maas in his Report and Recommendation concluded that an upward departure was appropriate and recommended solatium damages in the following amounts:

| **Relationship to Decedent** | **Solatium Award** |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

Subsequently, Magistrate Judge Maas and Magistrate Judge Sarah Netburn issued Orders awarding solatium damages in the amounts set forth above to various groups of plaintiffs.

With respect to "functional equivalents" of immediate family members, and specifically stepchildren of those killed in the September 11th terrorist attacks, Magistrate Judge Netburn issued a Report and Recommendation which set forth the criteria for establishing eligibility for solatium damages, and the framework for calculating prorated amounts to which eligible stepchildren could be entitled. *See* 03-md-1570 (S.D.N.Y.) (GBD)(SN), Doc. No. 3363, Entered 10/14/2016.  In all cases involving stepchildren, as a threshold for establishing eligibility, the Court would require proof off cohabitation with the decedent or an otherwise close and longstanding relationship. Magistrate Judge Netburn further determined that once eligibility was established, stepchildren

who were in early childhood (roughly birth through age eight) when the decedent became part of their family could be deemed fully functional equivalent to biological children and therefore entitled to full solatium damages of $8,500,000. Stepchildren who had passed early childhood but were still living in the family home and undergoing secondary education (roughly ages 9 through 17) when the decedent became part of the family would be entitled to solatium damages reduced by one-half, or $4,250,000. Magistrate Judge Netburn has since issued orders awarding solatium damages in these amounts to other *Ashton* claimants establishing step-relationships.

The losses claimed in this motion are legally and factually comparable to those suffered by the *Ashton I – XII claimants*, as well as the *Burlingame I – VI* claimants, in this litigation. Each of the deaths in this case were sudden and unexpected and were the result of the terrorism defendants' extreme acts of malice. The decedents were civilians whose deaths were intended to create an environment of fear and terror. The claimants here were not attenuated victims but the immediate family members, or the functional equivalents, of the decedents and were directly and irrevocably harmed by the terrorist acts and consequences. Many family members can visit no private cemetery plot or gravestone to visit their loved ones but are instead resigned to never have the closure that might otherwise be expected after the death of an immediate family member. The amount of solatium damages previously adopted by the District Court in the other *Ashton* cases as well as the *Burlingame I – VI* claimants involved in this litigation should apply equally to the current *Burlingame IX* claimants.

The relationships between the decedent and the *Burlingame IX* Plaintiffs are set forth in the accompanying Granito Declaration and Exhibits B through D thereto. As described in the Granito Declaration, all of the *Burlingame IX* Plaintiffs in Exhibit A established the criteria necessary to qualify them for prorated solatium damages as set forth in Exhibit A. The presumptive amount of solatium damages previously adopted by the Court in the other *Ashton* cases, including

*Burlingame IV* and *Betru IV,* should apply equally to the *Burlingame IX* Plaintiffs with deviations based on the previously established criteria for non-immediate family as noted below.

The relationships between the decedent and the *Burlingame* Plaintiffs are set forth below and in more detail in the statements from the surviving family members submitted as Exhibits B through D to the Granito Declaration. All of the *Burlingame IX* Plaintiffs identified below have the sort of intimate relationships previously recognized as qualifying for solatium damages; and all of the *Burlingame* Plaintiffs in Exhibit A have verified under penalty of perjury the nature of the relationships with their deceased love ones. Based on the representations in those sworn statements attached as Exhibits B through D to the Granito Declaration and summarized below, the *Burlingame IX* Plaintiffs on Exhibit A respectfully request that this Court issues a final judgment ordering payment of solatium damages in the amounts set forth below:

1. ***Claimant Christopher Dowdell, Stepchild of Decedent Brian Magee*** 
   **Presumptive Award: $8.5 million** 
   **Requested Award: $4.25 million**

Decedent Brian Magee married claimant Christopher Dowdell's mother in 1983 after dating for two years. Mr. Dowdell resided with the decedent from the time he was 15 years old until the claimant moved out of the family home at 28 years old. Mr. Dowdell and his stepfather had an extremely close relationship. Because his biological father was not involved in his life, including failing to provide financial or emotional support, Mr. Dowdell considered the decedent to be his only father. Mr. Dowdell called the decedent "Dad" and the decedent treated Mr. Dowdell as his own son. The decedent did the things that a natural father would including fulfilling the claimant's financial, emotional and social needs, including paying the bills associated with their family home, school tuitions and other expenses. Enjoying custody of his stepsons, Brian supported Christopher and taught him what it meant to be a good man and father. Brian's absence has left a void in Mr. Dowdell's life and he continues to mourn the loss of his father to this day. Taking int account Mr.

Dowdell's age at the time Brian became part of the family as well as the support the decedent provided and the close relationship that they shared, under the Court's prior framework it is respectfully requested that Mr. Dowdell should be awarded $4.25 million, half the full solatium damages award otherwise awarded to the biological children of September 11, 2001 decedents.

2. *Claimant William Dowdell, Stepchild of Decedent Brian Magee*
   **Presumptive Award: $8.5 million**
   **Requested Award: $4.25 million**

Decedent Brian Magee became part of claimant William Dowdell's family when he was 13 years old. Decedent married Mr. Dowdell's mother on August 7, 1983, and lived with the claimant in the family home until claimant moved out at the age of 25. Mr. Dowdell did not have a relationship with his biological father, was not financially supported by his biological father and indeed considered decedent to be his only father. Decedent provided claimant with all of his financial, emotional and social needs, which included teaching him, guiding him and providing him with all the care and companionship that a nurturing father would and ensuring William was raised in a financially stable home and able to complete his education. Mr. Dowdell and the decedent shared a close father-son relationship until his death on September 11th. Claimant was devastated by the decedent's death on September 11th and continues to be deeply affected by the loss of his father. Due to Mr. Dowdell's age at the time Brian became part of the family, the financial support the decedent provided and the close relationship that they shared, under the Court's prior framework it is respectfully requested that Mr. Dowdell should be awarded $4.25 million, half of the full solatium damages award otherwise awarded to the biological or adopted children of September 11, 2001 decedents.

3. *Claimant Matthew Dowdell, Stepchild of Decedent Brian Magee*
   **Presumptive Award: $8.5 million**
   **Requested Award: $8.5 million**

Decedent Brian Magee became part of claimant Matthew Dowdell's family when he was

10

only 8 years old. Decedent married Mr. Dowdell's mother on August 7, 1983, and lived with claimant until he graduated college and moved out of his parents' home. Mr. Dowdell's mother and biological father were divorced when claimant was only 3 years old and claimant did not have a relationship with his biological father. Mr. Dowdell's biological father did not provide financial support for Mr. Dowdell or his brothers. Mr. Dowdell called the decedent "Dad" and regarded him as his only father. The decedent attended all of Mr. Dowdell's games, drove him to and from his practices, helped with homework and took care of the claimant financially, emotionally and socially. Mr. Dowdell has been devastated by the loss of his father and continues to mourn his loss to this day. Based on the tender age of Mr. Dowdell when decedent Brian Magee became part of the family and the intimate relationship they shared, it is respectfully requested that Mr. Dowdell should be awarded the full damages of $8.5 million otherwise awarded to the biological or adopted children of September 11, 2001 decedents.

**B. Prejudgment Interest**

Additionally, the *Burlingame IX* Plaintiffs ask that this Court direct that prejudgment interest of 4.96% on the solatium awards running from September 11, 2001 until the date of judgment to the extent that their injuries arose in New York be assessed, as was done previously in the *Ashton I-XII* cases, as well as for the *Burlingame I-VI* claimants in this consolidated litigation.

**C. Punitive Damages**

Previously, in connection with a motion for final judgment on behalf of other *Ashton* claimants, this Court asked that to expedite issuance of final judgments, they defer decision as to the appropriate quantum of punitive damages. *See* 03-md-1570 (S.D.N.Y.) (GBD)(SN), Doc. No. 3362, Entered 10/14/2016. The *Burlingame* Plaintiffs ask that this Court allow them to submit future applications for punitive damages consistent with any future rulings of this Court.

## II.     Conclusion

For all the reasons herein, as well as those set forth in the previous submissions of the *Ashton* plaintiffs and specifically *Burlingame I-VI* plaintiffs, the *Burlingame IX* plaintiffs set forth on Exhibit A respectfully request that this Court grant the proposed Order attached to the Granito Declaration as Exhibit E and (1) award solatium damages to immediate family members as set forth in the attached Exhibit A; (2) direct that prejudgment interest of 4.96% on the solatium awards running from September 11, 2001 until the date of judgment be assessed; and (3) permit *Burlingame* claimants to submit future applications for economic damages, punitive damages and/or solatium damages consistent with any future rulings of this Court and to the extent those awards have not been previously addressed.

Dated: Rye Brook, New York
      December 26, 2019

                Respectfully submitted,

                SPEISER KRAUSE, PC

                By: __/s/ Frank H. Granito____
                Frank H. Granito, III, Esq. (FG9760)
                Douglas A. Latto, Esq. (DL3649)
                Jeanne M. O'Grady, Esq. (JO3362)
                Speiser Krause, PC
                800 Westchester Avenue, Suite S-608
                Rye Brook, New York 10573
                Tel: (914) 220-5333
                Fax: (914) 220-5334
                f3g@speiserkrause.com
                dal@speiserkrause.com
                jog@speiserkrause.com