UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (FM)<br>ECF Case |
|---|---|

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977 (GBD)(SN)
*Bauer et al. v. al Qaeda Islamic Army, et al.*, 02-cv-7236 (GBD)(SN)

### ***Ashton/Bauer* Plaintiff Dayna Spordone's Motion for Partial Final Judgment**

For the reasons set forth below, the statements contained in the Declaration of Dorothea

M. Capone, Esq. ("Capone Declaration"), the Exhibits attached thereto, including the Affidavits

of Dayna Spordone and Laura Bustillo, and the Exhibits attached hereto, *Ashton/Bauer* Plaintiff

Dayna Spordone, by and through her counsel Baumeister & Samuels, P.C., respectfully moves

this Court for a final judgment against the Islamic Republic of Iran ("Iran") and an award of

solatium damages in the amount of $8.5 million dollars for the losses she suffered as a result of

the death of her stepfather, Milton Bustillo, who was killed in the September 11, 2001 terrorist

attacks,[1] together with an award of prejudgment interest on those damages in the amount of

4.96% per year, compounded annually in accordance with this Court's October 12, 2016 Report

and Recommendation.  *See,* 03-cm-1570 (S.D.N.Y.)(GBD)(SN), ECF No. 3358, *adopted by,*

ECF No. 3383, Filed 10/31/16.  This motion is submitted pursuant to the Court's previous orders

granting permission for *Ashton* Plaintiffs to move for awards for solatium and other damages in

the future*, see e.g.* ECF No. 3300, Filed 06/16/2016, and, most recently, the Court's December 6,

---

[1] By Stipulation and Order dated November 19, 2002, the claims of the *Bauer* Plaintiffs were consolidated for liability purposes into *Ashton v. al Qaeda Islamic Army, et al.,* civ. No. 02-cv-6977.  This instant motion is brought exclusively on behalf of *Bauer* Plaintiff Dayna Spordone, the stepdaughter of 9/11 victim Milton Bustillo.

2019 Order requiring the submission of motions by functionally equivalent immediate family members seeking solatium damage awards by January 3, 2020.  *See* ECF No. 5338.

In accordance with the guidelines established by this Court in a Report and Recommendation dated October 14, 2016 (ECF No. 3363, *adopted by,* ECF No. 3384 ("Havlish II")(clarified in a subsequent decision issued on August 8, 2017, ECF No. 3676, *adopted by,* ECF No. 3795 ("Hoglan IV")), Dayna Spordone qualifies as the functional equivalent of an immediate family member of a victim who perished in the September 11, 2001 terrorist attacks. Based upon the parental relationship and deep emotional connection she had with Milton Bustillo, Dayna Spordone is entitled to an award for solatium damages in the amount of $8.5 million dollars reflecting the anguish, grief and emotional pain she has suffered as a result of his horrific death in the World Trade Center attacks.  No request has been made for the relief sought herein on behalf of *Bauer* Plaintiff Dayna Spordone.

## I. Procedural Background

After reviewing evidence and arguments submitted by various plaintiffs in this consolidated multi-district litigation arising out of the September 11, 2001 terror attacks, this Court previously issued a default judgment on liability against Iran to all *Ashton* plaintiffs for claims arising out of the deaths of the plaintiffs' decedents.  *See* ECF No. 3008, Filed 08/26/2015.  Thereafter, the *Ashton* Plaintiffs moved for partial summary judgment for the conscious pain and suffering that their decedents suffered before death, which this Court granted, and many *Ashton* plaintiffs moved for, and received, default judgments on solatium and economic damages suffered as a result of their decedents' wrongful deaths as well.[2]

---

[2] *See,* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), ECF Nos. 3229, Filed 03/09/2016 (adopting December 28, 2015 Report and Recommendation awarding damages for conscious pain and suffering) and No. 3356, Filed 10/11/2016 (awarding damages for economic loss).  *See*

As to the availability of an award of solatium damages to "functionally equivalent" family members, this Court has addressed the criteria necessary to demonstrate that a claimant and a decedent shared what is the "functional equivalent" of an immediate family member relationship. *See* ECF No. 3363, Filed 10/14/16, at pp. 10-12. The test established by the Court considers several factors, including the long-term residence or cohabitation of the decedent and the claimant, the guardian or custodian-like role between the decedent and the claimant, and the absence of the biological relative from the claimant's or decedent's life. *Id.*

For the reasons below as well as those set forth in the prior motions for summary judgment on liability and prior motions for judgment for solatium damages made on behalf of other *Ashton* and *Bauer* wrongful death plaintiffs, *Bauer* Plaintiff Dayna Spordone respectfully requests that this Court grant the Proposed Order attached to the Capone Declaration as Exhibit D, awarding her compensatory damages for a child's solatium losses in a manner consistent with Magistrate Judge Netburn's October 14, 2016 Report and Recommendation (ECF No. 3363) which was approved and adopted by Judge Daniels on October 31, 2016 (ECF No. 3384), and directing that prejudgment interest be assessed against these damages at 4.96 percent per annum, compounded annually consistent with this Court's October 12, 2016 Report and

---

*also, e.g.,* ECF. No.3334, Filed 08/29/2016; ECF No. 3352, Filed 10/07/2016; ECF No. 3388, Filed 11/03/2016; ECF No. 3395, Filed 11/28/16; ECF No. 3397, Filed 11/29/2016; ECF No. 3400, Filed 11/30/2016; ECF No. 3404, Filed 12/02/2016; ECF No. 5043, Filed 09/03/2019. This Court granted these motions, finding that an award to the immediate family members of each decedent was proper and that prejudgment interest on the solatium loss amounts was warranted. *See also,* 03-md-1570 (S.D.N.Y.) (GBD) (SN), ECF Nos. 3295, Filed 06/08/2016; 3354, Filed 10/07/2016; 3388, Filed 11/03/2016; 3686, Filed 08/16/2017; 3977, Filed 04/24/2018; 4058, Filed 07/19/2018; 4100, Filed 08/14/18; 4120, Filed 8/23/2018; 4149, Filed 09/06/2018; 4158, Filed 09/12/2018; 4478, Filed 04/05/2019; 4716, Filed 7/31/2019; 4718, Filed 7/31/2019; 4890, Filed 08/19/2019; and 5134, Filed 9/11/2019.

Recommendation (ECF No. 3358) which was approved and adopted by Judge Daniels on October 31, 2016 (ECF No. 3383).

## II. Damages

Section 1605A of the Foreign Sovereign Immunities Act ("FSIA"), which applies to the claims filed the *Ashton* and *Bauer* Plaintiffs against Iran, creates an exception to sovereign immunity pursuant under which a U.S. citizen can sue a foreign state that is, or was, a state sponsor of terrorism, and any official, employee or agent of that foreign state, for acts of terrorism committed while acting within the scope of his or her office, employment or agency. The statute specifies that damages are available "for personal injury or death." *See* 28 U.S.C. § 1605A(a)(l) and (c)(4), and include "economic damages, solatium, pain and suffering, and punitive damages." *Id*. at (c)(4). Courts addressing the damages available under the statute have held that the "estates of those who [died] can recover economic losses stemming from the wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." *Valore v. Islamic Republic of Iran,* 700 F.Supp.2d 52, 83 (D.D.C. 2010).

### A. Solatium Damages

As set forth above, 28 U.S.C. 1605A specifically provides for an award of solatium damages. Under this provision, family members of a decedent may recover for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort." *Dammarell v. Islamic Republic of Iran,* 281 F.Supp. 2d 105, 196 (D.D.C. 2003), *vacated on other grounds,* 404 F.Supp. 2d 261 (D.D.C. 2005). Other courts have previously noted that "[a]cts of terrorism are by their very definition extreme and outrageous and intended

to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran,* 667 F. Supp. 2d 8, 22 (D.D.C. 2009). In cases brought under this exception to the FSIA, solatium claims have been treated as analogous to claims for intentional infliction of emotional distress, in which the immediate family members of the decedent are treated as direct victims. *See, e.g. Salazar v. Islamic Republic of Iran,* 370 F. Supp. 2d 105, 115 n.12 (D.D.C. 2005)("[c]ourts have uniformly held that a terrorist attack - by its nature - is directed not only at the victims but also at the victims' families."); *Surette v. Islamic Republic of Iran,* 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002)(treating solatium claim as "'indistinguishable' from the claim of intentional infliction of emotional distress.")(quoting *Wagner v. Islamic Republic of Iran,* 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001)).

When analyzing solatium damages in connection with the September 11, 2001 terror attacks, this Court has looked at the framework established by District Court Judge Royce C. Lamberth in *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp.2d 229 (D.D.C. 2006), where he awarded solatium damages to each spouse of a deceased victim in the amount of $8 million dollars, to each parent in the amount of $5 million dollars, and to each sibling in the amount of $2.5 million dollars. Since that decision, other courts have held that this formula may be adjusted upward or downward when circumstances warrant. *See, e.g., Estate of Bland v. Islamic Republic of Iran,* 831 F. Supp.2d 150, 156 (D.D.C. 2011); *Valore,* 700 F. Supp.2d at 85.

In his review of solatium claims for the families of some of the victims of the 9/11 terror attacks, Magistrate Judge Maas recognized that the decedents' immediate family members suffered, and continue to suffer, "profound agony and grief and, [w]orse yet, are faced with frequent reminders of the events of that day." *See* ECF No. 2618, Filed 7/30/12, at pp. 10-12. Magistrate Judge Maas noted in his July 30, 2012 Report and Recommendation that the

"extraordinarily tragic circumstances surrounding the September 11th attacks and their indelible impact on the lives of the victims' families", and concluded that an upward departure from Judge Lambert's framework in *Heiser* was appropriate. *Id.* In that Report, Magistrate Judge Maas recommended that solatium damages be awarded to the immediate family members of the victims of the September 11, 2001 terror attacks in the following amounts:

| Relationship to Decedent | Solatium Award |
| --- | --- |
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,500,000 |

*Id.,* p. 4. These amounts were adopted by the Court in its October 3, 2012 Order (*see* ECF No. 2623), and replicated in all subsequent judgments to immediate family members for solatium losses. The solatium losses suffered by *Bauer* Plaintiff Dayna Spordone are legally and factually comparable to those suffered by the natural children of the 9/11 victims in that the death of her stepfather, Milton Bustillo, was sudden and unexpected, and was the result of the defendant's extreme acts of malice. Like so many other families, Dayna Spordone has no private cemetery plot or gravestone to serve as a remembrance of Milton, and she cannot, and will not, ever experience a sense of closure that might otherwise be expected following the death of a family member.

> **i.     The Relationship Between Milton Bustillo and Dayna Spordone is the "Functional Equivalent" to that of a Biological Father and Daughter**

In addressing claims for non-immediate family members who have similarly sought awards for solatium losses, this Court issued a Report and Recommendation in which it reviewed

and analyzed prior district court opinions before creating a framework for the consideration of

familial relationships that fell outside of the four categories of immediate family members, to

wit, spouses, children, parents and siblings.  *See* ECF No. 3363, citing *Bettis v. Islamic Republic*

*of Iran*, 315 F.3d 325 (D.C. Cir. 2003)(rejecting solatium claims brought by nieces and nephews

of terror victim, but identifying exceptions to the "immediate family" requirement for individuals

who *resided in the same household* as the victim, or were *legal guardians* viewing them as the

"functional equivalents of immediate family members", *id.* at 337 (emphasis in original); *Estate*

*of Heiser*, 659 F. Supp.2d. at 29 (D.D.C. 2009)(two non-adoptive stepfathers who lived in

victim's immediate household while stepsons were minors and treated them as their own sons

financially, emotionally and socially were awarded solatium damages); *Valore,* 700 F. Supp.2d,

at 79 (D.D.C. 2010)(stepfather and stepbrother treated victims as a son and brother respectively

engaging in activities such as hunting and fishing awarded solatium damages), *adopted by* ECF

No. 3384.

       In her October 14, 2016 Report and Recommendation, Magistrate Judge Netburn

identified several factors to be considered in determining whether or not an individual qualifies

as a "functional equivalent" of an immediate family member.  *See* ECF No. 3363, at pp. 10-12.

       The first factor is whether the individual seeking an award of solatium damages

cohabitated in the decedent's household.  *Id.,* at 10-11, citing *Bettis,* 315 F.3d at 337; *Heiser,* 659

F. Supp.2d at 29; *Valore,* 700 F. Supp.2d at 79.  This factor is easily satisfied by *Bauer* Plaintiff

Dayna Spordone.  Dayna's mother, Laura Bustillo, met Milton at Cantor Fitzgerald 1996 holiday

party shortly after she began working at the firm.  At that time, Laura was a single mother to

then-3-year-old Dayna Spordone after her natural father, who was never physically present in her

life, waived all of his parental rights so he could terminate his child support obligations.  As set

forth in the accompanying Affidavit of Laura Bustillo attached as Exhibit C to the Capone

Declaration, Laura and Milton quickly fell in love, and spent all of their time together, both at

work and on the weekends.  A year after they first met, Milton moved into the apartment Laura

and Dayna shared while he continued to work at Cantor Fitzgerald's e-Speed division as a

Computer Operations Specialist.  He continuously lived with and was a father to Dayna until his

death on September 11, 2001.

The second factor for consideration, and as it concerns the specific request by *Bauer*

Plaintiff Dayna Spordone for an award of solatium damages, is whether in addition to

cohabitation, the decedent played a guardian or custodian-like role in the life of the non-

immediate family member.  *See* ECF No. 3363, at p. 11.  To aid it with this part of the analysis,

Magistrate Judge Netburn chose to follow the *Heiser* and *Valore* decisions both of which elected

not to view legal guardianship as dispositive, choosing instead to look at whether the stepparent

financially, emotionally and socially treated their stepchild as equivalent to a biological child. *Id*.

This three-prong second factor is also easily satisfied by looking at the relationship

between *Bauer* Plaintiff Dayna Spordone and Milton Bustillo.  As stated above and addressed by

Laura Bustillo in her accompanying Affidavit, Milton Bustillo began financially supporting

Dayna Spordone almost from the time he first met her mother when she was 3 years old, and he

continued to financially support her until he perished at the World Trade Center on September

11, 2001.  Milton provided sole financial support to both Laura and Dayna when a difficult and

challenging pregnancy that left Laura unable to work.  Laura's incapacity required Milton to

work overtime almost every night for many months before the couple and Dayna welcomed

Alessandra into their family on January 13, 2001.  Due to a number of developmental challenges

faced by their new daughter, Laura was unable to return to the work force following

Alessandra's birth, leaving Milton solely and permanently responsible for the family's financial support. Mr. Bustillo's financial support of Dayna was recognized by the September 11th Victim Compensation Fund which formally approved an award to her as his "Step-Daughter" on April 23, 2004. A copy of the letter from the VCF evidencing this award is attached hereto as Exhibit 1. Dayna's status as Milton's financially dependent stepchild was similarly recognized by the Social Security Administration, and the New York State Worker's Compensation Board, both of which made survivor benefit awards to Dayna following Milton's death. A copy of each of these awards are attached hereto as Exhibits 2 and 3, respectively.

The next two prongs of the second factor test are whether the stepparent emotionally and socially treated the stepchild as equivalent to a biological child. Milton Bustillo openly and naturally, and repeatedly, introduced Dayna to his large family, his friends, and everyone he met as his daughter. As explained by Laura Bustillo in her Affidavit, Dayna was welcomed and included in all of Milton's family events and activities. Laura and Dayna spent most weekends with Milton's family, and were present almost every Sunday for family dinner at Milton's mother's home. Dayna was the flower girl for the wedding of Milton's brother. Milton loved to cook and bake, and hoped to one day open a family pastry shop. He made sure that Dayna learned to make his specialty tarts and often told his family that one day she and he would work side-by-side in their business. He helped Dayna with her school work and instilled in her the importance of doing well in school. He accompanied her to the school's Father Daughter Valentine's Dance. When Laura's pregnancy with Alessandra confined her to bed, Milton served as Dayna's primary caregiver making sure she was up, dressed, fed and ready for school and caring for her when she came down with minor ailments. He made sure that Dayna attended

"big sister" classes at the local hospital before Alessandra was born, oftentimes taking her there himself.

Milton and Laura spoke often of his desire to formally adopt Dayna once they were able to set aside enough money for the legal proceeding.  In the summer of 2001, Milton and Laura located a home in Toms River, New Jersey and entered into a contract to purchase the home where they could raise both their daughters close to Milton's mother and extended family.  They formalized their legal relationship and deliberately chose to marry on August 12, 2001, Dayna's 7th birthday, electing to hold off on a large family celebration of their wedding and put the money towards the cost of Dayna's adoption proceeding.

The third and final factor for the Court to use in its determination as to whether a non-immediate family member is the "functional equivalent" of a spouse, child, parent or sibling of a victim and therefore entitled to an award for solatium damages is whether the biological family member in question was absent in the family life.  *See* ECF No. 3363, at p. 12.  As set forth above and in the Affidavit of Laura Spordone, Dayna's biological father was never physically present in her life and relinquished all of his parental rights so he could terminate his child support obligations.  Milton Bustillo was the only father Dayna Spordone has ever had, and she continues to mourn him and the loss of his presence in her life every single day.

ii.      **Quantum of Damages**

To fashion a solatium award adequately compensating the surviving family members in the litigation against Iran, this Court previously recognized that the immediate family members of those killed in the September 11th terrorist attacks suffered and continue to suffer "profound agony and grief and, [w]orse yet, ... are faced with frequent reminders of the events of that day." *See* ECF No. 2618, Filed 07/30/12 at p. 11, *adopted by,* ECF No. 2623, Filed 10/03/12.  The

agony, grief and emotional pain endured by *Bauer* Plaintiff Dayna Spordone is indistinguishable

than that of any natural child whose parent was murdered on September 11, 2001.  As set forth in

her Affidavit which accompanies this motion as Exhibit B to the Capone Declaration, the bright,

shining life that she and her mother and sister had begun to build with Milton was violently

destroyed that day as well.  Dayna would never have another father at her side as she grew up

and began to navigate life through elementary, middle and high school.  She has lost the man

who taught her to love to cook and appreciate jazz music.  Her mother has been devastated by

Milton's death, is actively depressed, and continues to actively weep and grieve for him daily.

Her sister is developmentally disabled and requires constant care.  Dayna has lost the physical

and strong emotional connection she had built with Milton's extended family that had been

woven into her life.  When the family gathers now, it is to collectively grieve for Milton so these

occasions are now times to dread instead of cherish.  When she was younger, Dayna went

through phases in which she injured herself as a way to express her anger, grief and longing for

Milton and what her family once had.  As her sister grew up and her challenges became more

severe, Dayna was often forced to physically hold her down to stop her tantrums and screaming,

and to restrain her from physically harming Laura.  To this day, Dayna bears both the physical

and emotional scars of the trauma left in the wake of her father's death.

In the Court's October 14, 2016 Report and Recommendation, ECF No. 3363, at p. 15, it

approved full solatium damage awards to stepchildren who satisfied its 3-factor test when the

stepparent became part of the stepchild's life between birth and eight years of age.  Since *Bauer*

Plaintiff Dayna Spordone has made such a showing in that Milton moved into the home she

shared with her mother when she was only four years old, and because her losses are legally and

factually comparable to those suffered by other children of the 9/11 victims, she respectfully

requests that the Court issue an award to her of $8.5 million dollars, together with prejudgment interests at a rate of 4.96% per annum, compounded annually.

## III. Conclusion

For all of the reasons herein, as well as those set forth in the previous submissions of the *Ashton* and other *Bauer* plaintiffs, Dayna Spordone respectfully requests that this Court grant the proposed order attached to the Capone Declaration as Exhibit D and (1) award her solatium damages in the amount of $8.5 million dollars as set forth in the attached Exhibit A to the Capone Declaration; and (2) direct that prejudgment interest of 4.96% on the solatium awards running from September 11, 2001 until the date of judgment be assessed.

Dated:  New York, New York
       December 27, 2019              Respectfully submitted,

                                              BAUMEISTER & SAMUELS, P.C.

                                              By:/s/Dorothea M. Capone
                                              Dorothea M. Capone, Esq.
                                              140 Broadway, 46th Floor
                                              New York, New York 10005
                                              Phone: (212) 363-1200

                                              ***Attorneys for Bauer Plaintiff Dayna Spordone***