UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |
| --- | --- |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN)

**The *Ashton XVI* Wrongful Death Plaintiffs' Motion for Final Judgments**

For the reasons set forth below, and the statements contained in the declaration of James

P. Kreindler, Esq. ("Kreindler Declaration") and accompanying exhibits, the *Ashton* plaintiffs, by

and through their counsel Kreindler & Kreindler LLP, respectfully move this Court to issue final

judgments against the Islamic Republic of Iran ("Iran") and award solatium damages for the losses

suffered by certain non-immediate family members of victims killed in the September 11, 2001

terrorist attacks in the amounts set forth herein; and award prejudgment interest on those damages

as set forth below in the amount of 4.96% per year, compounded annually.

This motion is made on behalf of the *Ashton* claimants listed in Exhibit A to the Kreindler

Declaration ("*Ashton XVI* Plaintiffs") in light of this Court's previous orders granting permission

to allow remaining *Ashton* plaintiffs to move for this relief. *See e.g.* 03-md-1570 (S.D.N.Y.) (GBD)

(FM), ECF No. 3300, Filed 06/16/2016; 03-md-1570 (S.D.N.Y.) (GBD) (SN), ECF No. 4170,

Filed 08/13/2018. The solatium claimants for whom relief is presently sought have the functional

equivalent of an "immediate family member" relationship to decedents who died in the September

11, 2001 terrorist attacks, and the intimate nature of their emotional connection with their lost

loved ones and the anguish and grief they have suffered as a result of the attacks is detailed in the

declarations included as Exhibit B to the Kreindler Declaration. Because these claimants'

relationships to their loved ones were functionally equivalent to the biological relationships that

1

this Court has previously found formed the basis of damages awards, the *Ashton XVI* Plaintiffs should be awarded solatium damages under the Foreign Sovereign Immunities Act.

As the awards set forth in the proposed Order filed herewith represent the only direct recovery against Iran on behalf of the *Ashton XVI* Plaintiffs listed in Exhibit A to the Kreindler Declaration, any award issued to those individuals will constitute final awards and judgments against the Islamic Republic of Iran for the *Ashton XVI* Plaintiffs.

## I.    Procedural Background

Based on evidence and arguments submitted by various plaintiffs in this consolidated multi-district litigation arising out of the September 11, 2001 terror attacks, this Court previously issued a default judgment on liability against Iran to all *Ashton* plaintiffs for claims arising out of the deaths of the plaintiffs' decedents (the "*Ashton* plaintiffs").  *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), Doc. No. 3008, Filed 08/26/2015.  Thereafter, the *Ashton* plaintiffs moved for partial summary judgment for the conscious pain and suffering that their decedents suffered before death, which this Court granted, and certain *Ashton* plaintiffs moved for default judgments on economic damages suffered as a result of their decedents' wrongful deaths as well. This Court granted those motions. *See, e.g.,* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), Doc. Nos. 3229, Filed 03/09/2016 (adopting December 28, 2015 Report and Recommendation awarding damages for conscious pain and suffering) and 3356, Filed 10/11/2016 (awarding damages for economic loss).

In addition, certain *Ashton* plaintiffs previously moved for solatium damages suffered by those family members non-immediate family members who were the "functional equivalent" of immediate family members who were eligible to recover under the terrorism exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A ("FSIA.") *See* 03-md-1570 (02-cv-6977)

ECF Nos. 3295, Filed 06/08/2016 (Motion for Final Judgment for *Ashton I* claimants including claims for solatium damages); 3356, Filed 10/11/2016 (Motion for Final Judgment for *Ashton II* claimants including claims for solatium damages); 3686, Filed 8/16/2017 (Motion for Final Judgment for *Ashton III* claimants solely for solatium damages); 3977, Filed 4/24/2018 (Motion for Final Judgment for *Ashton IV* claimants solely for solatium damages); 4058, Filed 07/19/2018 (Motion for Final Judgment for *Ashton V* claimants, the "functional equivalent" of immediate family members, solely for solatium damages); 4100, Filed 8/14/2018 (Motion for Final Judgment for *Ashton VI* claimants solely for solatium damages); 4120, Filed 8/23/2018 (Motion for Final Judgment for *Ashton VII* claimants solely for solatium damages); 4149, Filed 9/6/2018 (Motion for Final Judgment for *Ashton VIII* claimants solely for solatium damages); 4158, Filed 9/12/2018 (Motion for Final Judgment for *Betru (Ashton IX)* claimants solely for solatium damages); 4478, Filed 4/05/2019 (Motion for Final Judgment for *Ashton X* claimants solely for solatium damages); 4601, filed 6/26/2019 (Motion for Final Judgment for *Ashton XI* claimants solely for solatium damages); 4716, filed 07/31/1029 (Motion for Final Judgment for *Ashton XII* claimants solely for solatium damages); 4890, Filed 08/19/2019 (Motion for Final Judgment for *Ashton XII* claimants solely for solatium damages); 5094, Filed 09/06/2019 (Motion for Final Judgment for *Ashton XIII* claimants solely for solatium damages)[1]; and 5134, Filed 09/11/2019 (Motion for Final Judgment for *Ashton XIV* clamants solely for solatium damages).

This Court granted these motions, finding that an award to the immediate family members of each decedent was proper and that prejudgment interest on the solatium loss amounts was warranted. *See* 03-md-1570 (02-cv- 6977) (S.D.N.Y.) (GBD) (SN), ECF Nos. 3300, Entered

---

[1] Three different subgroups of *Ashton* plaintiffs were inadvertently captioned "*Ashton XIII*" – the 07/31/2019 *Ashton XIII* (ECF No. 4718 et seq.), the 08/19/2019 *Ashton XIII* (ECF No. 4891 et seq.) and the 09/06/2019 *Ashton XIII* (ECF No. 5094 et seq.)

06/16/16; 3387, Entered 10/31/2016; 3706, Entered 8/17/2017; 3979, Entered 4/25/2018; 4106, Entered 8/16/2018; 4127, Entered 8/28/2018; 4152, Entered 9/7/2018; 4173 (granting in part and denying in part motion for "functional equivalent" of immediate family members), Entered 09/13/2018; 4170, Entered 09/13/2018; 4497, Entered 04/29/2019; 4880, Entered August 15, 2019; 5101, Entered 09/09/2019; 5137, Entered 09/12/19; and 5387 (granting in part and denying in part motion for "functional equivalent" of immediate family members), Entered 12/19/2019.

As to the availability of solatium damages to non-immediate family members, this Court has previously addressed the criteria necessary to establish that a claimant and a decedent had the "functional equivalent" of an immediate family member relationship. See 03-md-1570 (S.D.N.Y.) (11-cv-7550) (GBD) (SN), ECF No. 3363, Filed 10/14/16.  The test established by the Court considers several factors, including long-term residence or cohabitation of the decedent and the claimant, the guardian or custodian-like role between the decedent and the claimant and the absence of the biological relative from the claimant's or decedent's life. *See id.*, pp. 10 – 12.

On the issue of prejudgment interest, a December 28, 2015 Report and Recommendation, adopted by this Court, concluded that to the extent the *Ashton* wrongful death plaintiffs' claims arose out of injuries in New York State the rate of prejudgment interest was 9 percent per annum from September 11, 2001 until the date judgment was entered and to the extent the injuries arose elsewhere 4.96 percent interest per annum compounded annually was appropriate.  *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), ECF No. 3175, Filed 12/28/2015, pp. 1 – 2.  A subsequent Report and Recommendation issued on October 12, 2016, also adopted by this Court, however, concluded that the rate of prejudgment interest of 4.96 percent for all pain and suffering and solatium claims was more appropriate. *See* 03-md-1570(11 cv 7750) (S.D.N.Y. (GBD) (SN),

4

ECF Nos. 3358, Filed 10/14/2016; 3383, Filed 10/31/2016.  Accordingly, the *Ashton I – XIII* plaintiffs were awarded prejudgment interest at the rate of 4.96 percent per annum.

For the reasons below as well as those set forth in the prior motions for summary judgment on liability and prior motions for judgment for solatium damages made on behalf of other *Ashton* wrongful death plaintiffs, the *Ashton XVI* Plaintiffs listed in Exhibit A to the Kreindler Declaration now move this Court to grant the proposed Order filed herewith, awarding them compensatory damages for their solatium losses in a manner consistent with Magistrate Judge Netburn's October 14, 2016 Report and Recommendation, and directing that pre-judgment interest be assessed at 4.96 percent per annum, which is the rate that this Court previously approved in connection with the *Ashton I – XV* plaintiffs' motions for final judgments on solatium damages.  All *Ashton* plaintiffs also ask for permission to continue to submit applications in subsequent stages on behalf of those claimants not included in the attached exhibit.

## II.    Damages

Under 28 U.S.C. § 1605A ("Section 1605A"), which applies to the claims against Iran, damages are available under the federal law and include money damages "for personal injury or death."  *See* 28 U.S.C. § 1605A(a)(1) and (c)(4).  The damages available to plaintiffs in a Section 1605A action include "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c)(4).  That is, the "estates of those who [died] can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages."  *Valore v. Islamic Republic of Iran*, 700 F.Supp.2d 52, 83 (D.D.C. 2010).  Plaintiffs who are considered "family members" for purposes of the statute are therefore entitled to compensation under Section 1605A for the solatium losses suffered as a result of the wrongful death of each of their decedents.

5

### A.  Solatium Damages

Section 1605A specifically provides for solatium damages.  Under that provision, family members of the decedents may recover for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort." *Dammarell v. Islamic Republic of Iran*, 281 F.Supp. 2d 105, 196 (D.D.C. 2003), *vacated on other grounds*, 404 F.Supp. 2d 261 (D.D.C. 2005).  Other courts have previously noted that "[a]cts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009).  Given that, in FSIA cases solatium claims have been treated as comparable to claims for intentional infliction of emotional distress, in which the immediate family members of the decedent are treated as direct victims.  *See, e.g. Salazar v. Islamic Republic of Iran,* 370 F. Supp. 2d 105, 115 n.12 (D.D.C. 2005) ("[c]ourts have uniformly held that a terrorist attack—by its nature—is directed not only at the victims but also at the victims' families."); *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (treating solatium claim as "'indistinguishable' from the claim of intentional infliction of emotional distress.") (quoting *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001)).

Accordingly, this Court has previously awarded solatium damages to "immediate family members" who, though not physically present at the site of the terrorist attacks, were nevertheless intended victims of the terrorist activities. *See e.g.* 03-md-1570 (11-cv-07550) (S.D.N.Y.) (GBD) (SN) ECF Nos. 3358, Filed 10/12/2016; 3300 Filed 06/16/16.  It has also previously awarded solatium damages to those individuals who had the "functional equivalent" of an immediate family

member relationship with a victim killed in the September 11, 2001 terrorist attacks. *See e.g.* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (SN) ECF No. 4173, Filed 03/13/18.

### i. Nature of Relationship – "Functional Equivalent" of Immediate Family Members

In identifying those family members eligible to make a claim for solatium damages, this Court previously determined that spouses, parents, children and siblings who survived a 9/11 decedent were entitled to recover for their losses, and set forth a framework for other family relationships that fell outside of those four categories. *See* 03-md01570 (S.D.N.Y.) (GBD) (SN), Doc. No. 3363, Entered 10/14/2016.

The October 14, 2016 Report and Recommendation recommended that in addition to those individuals who are considered traditional "family members," damages could also be awarded to non-immediate family members who met certain criteria establishing that she or he had the "functional equivalent" of an immediate family member relationship with the September 11, 2001 decedent. These categories of non-immediate family members included fiancées and domestic partners, step-relatives, aunts, uncles, nieces, nephews and cousins. *Id.*

In that report, three factors were identified as especially relevant to the determination of whether a close non-immediate family member was the "functional equivalent" of a traditional immediate family member. Those factors are: 1) long-term residence or co-habitation in the decedent's household; 2) whether the non-immediate family member ever played a guardian or custodian-like role in the decedent's life or vice versa; and 3) whether the biological family member whose role the "functional equivalent" individual played was absent from the family life (*i.e.* did the non-immediate family member step in to play a "functionally equivalent" role because of the death or long-term absence of the biological family member). *Id.*, pp. 10-12. In weighing these different factors, the Court stated it would consider whether the non-immediate family

member supported the decedent financially and emotionally, or vice versa, and whether the decedent and claimant shared in typical family activities like doing homework, eating dinner and vacationing together. *Id.*  In previous cases, the Court relied on the statements from the claimant about the nature and quality of the relationship with decedents. *Id.*, pp. 17-28.

The information in the declarations of the individuals for whom solatium damages are sought in this motion (submitted as Exhibit B to the Kreindler Declaration) confirms that all claimants listed in Exhibit A to the Kreindler Declaration had the "functional equivalent" of a biological relationship and they are therefore entitled to an award for solatium damages.

**ii.      Quantum of Damages**

To fashion a solatium award adequately compensating the surviving family members in the litigation against Iran, this Court previously looked to the analysis undertaken by District Court Judge Royce Lamberth in the case of *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006).  There, Judge Lamberth concluded that solatium damages should be awarded to each spouse of a deceased victim in the amount of $8 million, to each parent in the amount of $5 million, and to each sibling in the amount of $2.5 million.  *Id.*[2]

Magistrate Judge Frank Maas previously recognized that the immediate family members of those killed in the September 11 terrorist attacks suffered and continue to suffer "profound agony and grief and, "[w]orse yet, … are faced with frequent reminders of the events of that day. *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (SN), Doc. No. 2618, Entered 07/30/12, pp. 10 – 12.  Given the "extraordinarily tragic circumstances surrounding the September 11th attacks, and their indelible impact on the lives of the victims' families," Magistrate Judge Maas in his Report

---

[2] This formula may be adjusted upward or downward when circumstances warrant.  *See, e.g., Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 156 (D.D.C. 2011); *Valore*, 700 F. Supp. 2d at 85.

and Recommendation concluded that an upward departure from the *Heiser* framework was appropriate and recommended solatium damages in the following amounts:

| Relationship to Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

Subsequently, Magistrate Judge Maas and then Magistrate Judge Sarah Netburn issued orders awarding solatium damages in the amounts set forth above to various groups of plaintiffs.

The losses claimed in this motion are legally and factually comparable to those suffered by the *Ashton I-XV* claimants, and the other claimants involved in this litigation. Each of the deaths in this case were sudden and unexpected and were the result of the terrorism defendants' extreme acts of malice. The decedents were civilians whose deaths were intended to create an environment of fear and terror. The claimants here were not attenuated victims – they had intimate relationships with the decedents and were directly and irrevocably harmed by the terrorist acts and consequences. Many of the claimants can visit no private cemetery plot or gravestone to visit their loved ones but are instead resigned to never have the closure that might otherwise be expected. The presumptive amount of solatium damages previously adopted by the District Court in the other *Ashton* cases as well as the other claimants involved in this litigation should apply equally to the *Ashton XVI* claimants with deviations based on the previously established criteria for non-immediate family members as noted below.

The relationships between the decedent and the *Ashton XVI* Plaintiffs are set forth in the declarations submitted as Exhibit B to the Kreindler Declaration.  As attested to in those declarations, all of the *Ashton XVI* Plaintiffs have the sort of intimate relationships previously recognized as qualifying for solatium damages; all of the *Ashton XVI* Plaintiffs survived the deaths of their loved ones on September 11, 2001; and all of the *Ashton XVI* Plaintiffs have verified under penalty of perjury the nature of the relationships with their loved ones.

Based on the representations in those statements attached as Exhibit B to the Kreindler Declaration and summarized below, the *Ashton XVI* Plaintiffs respectfully request that this Court issue a final judgment ordering payment of solatium damages to the *Ashton XVI* Plaintiffs in the amounts set forth below.

      **a.**   ***Claimant Justin Sivin, Stepson of 9/11 Victim Joel Miller.***
              **Presumptive Award: $8.5 million**
              **Requested Award: $4.25 million**

Claimant Justin Sivin's first memory of his stepfather Joel Miller dates to his bar mitzvah, which Joel attended with Justin's mother, even lighting a candle together on Justin's bar mitzvah cake.  Justin's parents had separated when he was around eleven years old and from the time he was thirteen or so, Joel was a regular presence in his life.  Joel then stepped in and took over the role of Justin's biological father when, a few months after Justin's bar mitzvah, his biological father died unexpectedly of a heart attack.  Around the same time, Justin's mother and Joel became engaged and, within two years, were married.  Justin, his brother Maxwell, their mother and Joel all lived together until Joel's death, when Justin was 21 years old.

Joel Miller was the only father-figure that Justin had from the time that he was 13-years old.  Joel was always present in Justin's life, even attending Justin's father's funeral.  Joel would take Justin to school, attended all of Justin's Saturday football games (which his mother could not

attend because she worked on Saturdays and went to every one of Joel's high school choir recitals. Joel helped Justin pack up for and dropped him off at college.

Justin's mother and Joel treated Justin, his brother Maxwell and Joel's biological son equally in every way. They changed their wills to treat all three boys as equals and took the same approach to raising them. As far as Joel was concerned, he had three sons.

Joel Miller's murder on September 11, 2001 devastated Justin and the rest of the family. The void created by Joel's death has never been filled and Justin and his brothers are reminded in obvious and subtle ways – a missing grandfather at a holiday table, another birthday gone by – of Joel's death.

Under this Court's previously established criteria, given Justin's age at the time that Joel Miller became a part of his family and the close nature of the relationship between Joel and Justin, Justin Sivin should be awarded half of the $8.5 million presumptive solatium damages award for children of the victims murdered on September 11, 2001, which is $4.25 million.

> **b.** *Claimant Maxwell Sivin, stepson of 9/11 Victim Joel Miller.*
> **Presumptive Award: $8.5 million**
> **Requested Award: $4.25 million**

Claimant Maxwell Sivin was around fifteen-years old when he first met Joel Miller. At that time, Maxwell's mother had separated from his father and his mother was already in a relationship with Joel. Soon after that, Maxwell's biological father died and Joel became the only father-figure in Maxwell's life. Maxwell's mother and Joel married and Maxwell, his biological brother Justin and their mother moved in with Joel.

Joel guided Maxwell through high school, then college and, ultimately, law school. Joel was the one who made sure that Maxwell had an appropriate suit for law school interviews. Maxwell lived with Joel until the time of Joel's death, when Maxwell was about twenty-two-years old. Joel treated Maxwell and his biological brother Justin the same as he did his biological son –

all three of the boys were his children.  Maxwell recalls feeling that he was one of Joel's own.

Joel's life was intertwined with everyone else in the household.  They celebrated holidays together,

vacationed together in the Catskills, regularly ate family meals together and, though Joel was not

especially athletic himself, they all watched sports together on television.  Joel attended every track

and field meet that Maxwell had in high school.  It was Joel who accompanied Max to his first day

of law school.

When Joel was killed on September 11, 2001, his family was devastated.  For Maxwell and

his biological brother, Justin, the loss was especially poignant, as they had already lost one father

and now had lost another.  They are reminded constantly of Joel's absence, part of mass tragedy

from which they cannot escape.  Maxwell worries about his mother, now aging alone, and feels

the pain of knowing his children will never know a grandfather.  Maxwell's son's Hebrew name

is named after Joel.

Under this Court's previously established criteria, given Maxwell's age at the time that

Joel Miller became a part of his family and the close nature of the relationship between Joel and

Maxwell, Maxwell Sivin should be awarded half of the $8.5 million presumptive solatium

damages award for children of the victims murdered on September 11, 2001, which is $4.25

million.

> ### c.  *Claimant Donald Scauso, stepson of Dennis Scauso.*
> **Presumptive Award: $8.5 million**
> **Requested Award: $8.5 million**

Claimant Donald Scauso's biological father was absent from his life from the time Donald

was about three months old.  When Donald was three years old, his mother married New York

City firefighter Dennis Scauso and thereafter Donald took Dennis's last name.  Donald, his sisters

and his mother all lived together from the time that Donald was three years old until September

11, 1002.

Dennis Scauso raised Donald and his biological full-sister Darcie with the same compassion and commitment that he did the children he and Dennis's mother had together.[3] Dennis supported Donald and the rest of the family completely – not just financially but emotionally as well.  Dennis would help with homework, took on family projects (like building a treehouse from an old, recovered spiral staircase and building a brick patio for their house) and ate dinner with the kids every night.  They all took family vacations together.

Dennis Scauso was for all intents and purposes the only father that Donald Scauso had ever known.  Dennis's death on September 11, 2001 left a huge void in Donald's life, and found himself acting out, rebelling and getting into trouble for years after Dennis' was murdered.  Given Donald's age at the time that Dennis took on the role of father in his life, and the absence of Donald's biological father in his life, Donald should be awarded the full value of solatium damages issued to a child.

### B.  Prejudgment Interest

As in prior applications, the *Ashton XVI* Plaintiffs ask that this Court direct that prejudgment interest of 4.96% on the solatium awards running from September 11, 2001 until the date of judgment to the extent that their injuries arose in New York be assessed, as was done previously in the prior *Ashton* applications, as well as for other plaintiffs in this consolidated litigation.

---

[3] This Court previously granted a final judgment to Donald's biological full-sister Darcie in connection with their stepfather Dennis Scauso's death of the full solatium damages of $8.5 million to which a child of a 9/11 murder victim is entitled. *See* 03-md-1570, ECF No. 4173, Filed 09/13/2018, at 10.

### III.   Conclusion

For all of the reasons herein, as well as those in the previous submissions of the *Ashton* plaintiffs and other plaintiffs, the *Ashton XVI* Plaintiffs respectfully request that this Court grant the proposed Order filed herewith and (1) award them solatium damages as set forth in the attached Exhibit A, (2) direct that prejudgment interest of 4.96% on the solatium awards running from September 11, 2001 until the date of judgment be assessed; and (3) permit remaining *Ashton* claimants to submit motions for final judgment in future stages.

Dated: New York, New York
     January 3, 2020

Respectfully submitted,

KREINDLER & KREINDLER LLP

BY:   /s/ James P. Kreindler
James P. Kreindler, Esq.
Andrew J. Maloney III, Esq.
750 Third Avenue, 32nd Floor
New York, New York 10017
Tel: (212) 687-8181
*Attorneys for Ashton Plaintiffs*