UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN)<br>ECF Case |
| This document relates to:<br><br>*Ashton et al. v. al Qaeda Islamic Army*, et al., (and member case *Betru, et al. v. Islamic Republic of Iran*) | 02-cv-6977 (GBD)(SN) *Ashton*<br><br>18-cv-8297 (GBD)(SN) *Betru*<br><br>ECF Case |

### DECLARATION OF JEANNE M. O'GRADY
### IN SUPPORT OF MOTION FOR PARTIAL FINAL JUDGMENTS

JEANNE M. O'GRADY, Esq., hereby states under penalty of perjury that:

1. I am an attorney representing the *Betru V* Plaintiffs in the above-captioned litigation and I submit this Declaration in support of the motion for final judgment on behalf of the Estates set forth on the attached Exhibit A. I submit this Declaration in support of this motion for final judgment on behalf of only the individual Plaintiffs identified in Exhibit A attached hereto, and for permission to allow any remaining *Betru* plaintiffs to move for the same relief in separate stages.

2. The sources of information and the basis for belief in the statements contained herein are my representation of the *Betru V* Plaintiffs listed in Exhibit A in connection with the September 11th terror attacks, my firm's files, conversations with the family member of the deceased Plaintiffs and decedent's colleagues, as well as other court records relating to the multi-district litigation to which the *Betru V* Plaintiffs are parties. Any matters about which I lack personal knowledge are asserted herein upon information and belief.

3. Claims brought on behalf of the decedents listed in Exhibit A were part of the original *Betru* complaint, styled *Betru, et al. v. Islamic Republic of Iran*, filed on September 12, 2018, and bearing civil action number 18-cv-8297. Since these plaintiffs remain segregated in the

consolidated *Ashton* filings under their original civil action number and thus can easily be identified, plaintiffs appearing under the *Betru* civil action number 18-cv-8297 are being collectively referred to as "*Betru* plaintiffs." The *Betru* plaintiffs listed in Exhibit A are the fifth group of *Betru* plaintiffs to move for relief on the issue of damages and are therefore referred to as the *Betru V* plaintiffs.

4. Julian T. Cooper died in the September 11th terrorist attacks at the Pentagon. He is survived by his wife, Melinda Cooper, and their daughter, Julianah Cooper. At the time of his death, Mr. Cooper was a Senior Computer Analyst at Northrup Grumman and a Naval Reservist. Northrop Grumman was and is one of the leading civilian contractors engaged by the United States Government. In his position with Northrup Grumman, Mr. Cooper provided support to the Department of Defense's Global Command and Control System in the framework of computer software management, including installations, procedures and troubleshooting.

5. At the time of his death, Mr. Cooper, 39 years of age, was a successful and well-respected senior analyst within the Department of Defense's civilian contractor community. Upon information and belief, based upon his earnings at the time of his death and the employment prospects that existed for an individual with Mr. Cooper's education and military and civilian experience in the field of technology, at the time of his death, Mr. Cooper had the expectation of a significant earnings in the civilian sector and could further anticipate a military pension from the U.S. Navy upon his retirement.

6. Steven E. Furman died in the September 11th attacks at the World Trade Center. He is survived by his wife, Chava Furman, and their four children, Nisan, Sara Rachel, Naomi and Menashe. At the time of his death, Mr. Furman was an extremely intelligent and talented options trader with Tradespark, a division of Cantor Fitzgerald. Prior to joining Cantor Fitzgerald, a mere four months before his death, Mr. Furman had worked for 13 years on the New York Mercantile

Exchange, where he specialized in electric and natural gas contracts. Mr. Furman held a bachelor's degree in mathematics from the State University of New York, after having achieved a near-perfect score on his SATs.

7. At the time of his death, Mr. Furman, two days shy of his 41st birthday, had been brought to Cantor Fitzgerald to expand the options book of Tradespark, utilizing his vast experience with the Mercantile Exchange and major clients in the energy field. At the time of his death, Mr. Furman had the expectation of a significant increase in earnings from that which he had earned with the Mercantile Exchange. His prospects for financial success at Cantor Fitzgerald were great and, indeed, were the primary reason he had joined the firm.

8. In connection with the filing of claims to the September 11th Victim Compensation Fund on behalf of the decedents listed on Exhibit A, the personal representatives of the decedents' estates obtained information and materials relevant to the calculation of economic loss attributable to their decedents' wrongful death as of the time their claims were submitted to the Victim Compensation Fund. That information has been provided to Gary Crakes, Ph.D, of Maher, Crakes and Associates, Economic Consultants. Dr. Crakes took the information that was obtained relevant to economic loss and prepared an expert report calculating the present value of the economic damages. Those reports, which set forth Dr. Crakes' methodology, are attached hereto as Exhibits B and C. Attached to each report is Dr. Crakes' curriculum vitae.

9. The economic loss figures set forth in the table attached as Exhibit A represent the present value (based on the calculations attached in Exhibit B-C) of the estimated economic losses suffered as a result of the wrongful deaths of plaintiffs' decedents.

10. We have been retained individually by the personal representatives of the decedents listed in Exhibit A to pursue recovery for their economic and noneconomic losses arising

out of the deaths of their loved ones on September 11, 2001. We have verified via written documentation and/or interviews that all of the plaintiffs listed in Exhibit A perished in the September 11th terrorist attacks and have not recovered for their economic or conscious pain and suffering damages previously. We have further confirmed that they do not have any prior judgment or pending motion before this Court for compensation arising out of the September 11th attacks.

11. In prior orders, the Court has established $2,000,000 as the appropriate amount for the pre-death conscious pain and suffering of the decedents killed in the terror attacks of September 11, 2001. *See, e.g.,* See 03-md-1570 (02-cv-06977) (S.D.N.Y.) (GBD) (FM), Doc. No. 3226, Entered 03/08/2016. The decedents' conscious pain and suffering amounts set forth on Exhibit A are the figures determined appropriate in the Court's prior orders.

12. Previously, in connection with a motion for final judgment on behalf of other *Ashton* claimants, this Court asked that to expedite issuance of final judgments, they defer decision as to the appropriate quantum of punitive damages and present a proposed order with a rate of prejudgment interest of 4.96 per annum, compounded annually. *See* 03-md-1570 (S.D.N.Y.) (GBD)(SN), Doc. No. 3362, Entered 10/14/2016. The form of the proposed order submitted herewith therefore conforms to the Court's prior orders.

13. Accordingly, filed herewith is a proposed final judgment conforming with the Court's previous orders. Exhibit A contains an economic loss figure supplied by the expert reports attached as Exhibits B and C and the solatium damages reflect the amounts previously awarded to relatives of those killed on September 11, 2001.

14. Accordingly, I respectfully request that this Court grant the proposed order submitted herewith.

Dated: January 7, 2020
       Rye Brook, New York

/s/ Jeanne M. O'Grady
JEANNE M. O'GRADY (JO3362)