UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

In Re:

      TERRORIST ATTACKS ON
      SEPTEMBER 11, 2001

----------------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: ___1/10/2020___

03-MDL-1570 (GBD)(SN)

**REPORT AND
RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:

      Thomas Burnett, Sr., et al. v. The Islamic Republic of Iran, et al., 15-cv-9903 (GBD)(SN)

      On January 31, 2017, the Honorable George B. Daniels granted the Burnett/Iran Plaintiffs

an Order of Judgment by default against the Islamic Republic of Iran. See Order of Judgment,

ECF No. 3443. The Court has issued numerous orders addressing the Burnett/Iran Plaintiffs'

requests for damages. Here, pursuant to § 1605A of the Foreign Sovereign Immunities Act,

plaintiffs seek an award of solatium damages on behalf of thirty-one non-immediate family

members of victims of the terrorist attacks on September 11, 2001. ECF No. 5028. Plaintiffs'

motion should be GRANTED in part and DENIED in part.

## DISCUSSION

      The Court assumes the parties' familiarity with the extensive rulings related to this multi-

district litigation. As relevant here, on October 14, 2016, the Court detailed a framework to

evaluate damages requests by non-immediate family members of the victims of the September

11 attacks. ECF No. 3363, adopted by, ECF No. 3384 ("Hoglan II"). The Court clarified this

framework in a subsequent decision issued on August 8, 2017. ECF No. 3676, adopted by, ECF

No. 3795 ("Hoglan IV"). This motion asks the Court to apply the legal principles set forth in

Hoglan IV and award solatium damages to thirty-one "functional equivalents" of immediate family members. In addition, in keeping with the Court's prior rulings, plaintiffs seek 4.96 percent per annum from September 11, 2001, until the date of judgment, and permission to file applications for any remaining Burnett/Iran Plaintiffs at a later date.

## THE BURNETT/IRAN X PLAINTIFFS' CLAIMS

Consistent with the framework set forth in Hoglan IV, the Court analyzes each plaintiff's claim for solatium damages individually using the objective criteria set forth therein. See generally Hoglan IV.

### A.  Deborah L. Barrett

Deborah L. Barrett was the fiancé of 9/11 decedent Brian Cummins. At the time of his death, Brian and Deborah were engaged to be married to each other for approximately ten months. ECF No. 5030, Deborah L. Barrett Decl. ¶ 3. Brian and Deborah had been cohabiting for approximately three years, beginning sometime in 1999. Id. ¶ 4. During their time cohabiting together, Brian and Deborah comingled their assets and shared all expenses and household responsibilities. Id. ¶ 5. Brian and Deborah had contracted to buy a house together in Highlands, New Jersey, the closing on which was to take place two days after 9/11. Id. ¶ 9. Brian and Deborah had been eager to start a family together, and had begun counseling with a parish priest in preparation for their intended marriage in the Tower Hill Catholic Church in Red Bank, New Jersey. Id. ¶ 3. Because of Brian and Deborah's long-term relationship and nearly three years of cohabitation, as well as their mutual financial dependence and formal engagement, the Court recommends that Deborah L. Barrett be awarded $12,500,000 in solatium damages, the full amount paid to the unmarried domestic partners of 9/11 victims.

### B.  Theresa Bevilacqua

Theresa Bevilacqua is the stepdaughter of 9/11 decedent Stephen F. Masi. From the time

Theresa was eight months old until she left home at the age of 21, Theresa lived with her mother

and her stepfather, Stephen F. Masi. ECF No. 5030, Theresa Bevilacqua Decl. ¶ 4. Theresa's

mother began dating Stephen when Theresa was eight months old, and Theresa's mother married

Stephen in September 1981. Id. ¶ 3. Theresa has never known the identity of or met her

biological father. Id. ¶ 5. Theresa treated Stephen as her father. Id. ¶ 6. Stephen regularly helped

Theresa with her homework as she was growing up and provided moral guidance. Id. ¶¶ 11, 17

(numbering error in original). As Theresa approached 16, Stephen taught her how to drive a car.

Id. ¶ 13. Stephen supported Theresa financially until she was 21 and left the family home, and he

continued to provide her with financial support whenever she needed it. Id. ¶ 10. Because

Stephen F. Masi continuously lived with and parented Theresa Bevilacqua for almost her entire

childhood and into her adult life, the Court recommends that Theresa be awarded $8,500,000 in

solatium damages, the full amount paid to the biological or adopted children of 9/11 victims.

### C.  Susann Carol Brady

Susann Carol Brady was the fiancé of 9/11 decedent Gavin Cushny. At the time of

Gavin's death, Gavin had been living with Susann as husband and wife for approximately two

years. ECF No. 5030, Susann Carol Brady Decl. ¶ 3. Their relationship began approximately

four years before Gavin's death. Id. At the time of Gavin's death, Susann and Gavin had been

engaged to be married, their wedding ceremony scheduled to take place on October 26, 2001, in

Scotland. Id. ¶ 4. Gavin bought an engagement bracelet as well as a diamond ring for Susann less

than a year before he died, and Susann had purchased a wedding dress to wear at their wedding.

Id. ¶ 5. At the time of Gavin's death, Susann and Gavin had been looking for a new home to

purchase together to move into upon return from their wedding ceremony. Id. ¶ 10. Susann and Gavin had been engaged in family planning and had been exploring pregnancy options. Id. ¶ 12. Susann and Gavin depended on each other for financial, spiritual, and emotional support. Id. ¶ 14. Because of Susann and Gavin's long-term relationship and two years of cohabitation, as well as their joint financial planning and formal engagement, the Court recommends that Susann Carol Brady be awarded $12,500,000 in solatium damages, the full amount paid to the unmarried domestic partners of 9/11 victims.

### D. Rebecca Chang

Rebecca Chang is the stepdaughter of 9/11 decedent Salvatore "Sal" Fiumefreddo. Rebecca was six years old when her mother met Sal, and when Rebecca began spending a lot of time with him. ECF No. 5030 Rebecca Chang Decl. ¶ 4. Rebecca's mother and Sal got married on September 29, 2000, and Rebecca, Sal, and Rebecca's mother began living together as a family at that time. Id. ¶ 5. Sal made Rebecca breakfast and lunch, and Sal always made sure that Rebecca had done all her homework, often helping her complete it. Id. ¶ 6. From the day Rebecca was introduced to him until the day he died, Sal was the father figure in Rebecca's life on a daily basis. Id. ¶ 9. At the time of Sal's death, Rebecca was seven years old. Id. ¶ 3.

The Court is constrained to conclude that Rebecca and Sal did not meet the continuous cohabitation requirement before his death that the Court set out in Hoglan IV. In that opinion, the Court held that any step-relative receiving solatium damages must demonstrate that they continuously cohabited with the decedent for a significant period of time before the date the claimant turned eighteen and attained the age of majority. This period of time is presumptively at least two years. Hoglan IV, at 13. In the present case, Rebecca was six years old when her mother met Sal, and was only seven years old at the time of Sal's death. While the Court

recognizes the close father-daughter relationship that Sal and Rebecca established during their time together, this period of time was less than the two years that the Court has set out as its benchmark to determine continuous cohabitation. Accordingly, the Court recommends that Rebecca Chang's request for solatium damages be DENIED.

### E.  Douglas C. Cleary

Douglas C. Cleary was the fiancé of 9/11 decedent Elizabeth C. Logler. At the time of her death, Elizabeth and Douglas had been cohabiting for approximately five years, and had been romantically involved for approximately seven years. ECF No. 5030, Douglas C. Cleary Decl. ¶ 3. During their approximate five years of cohabitation, Elizabeth and Douglas shared all living expenses. Id. ¶ 4. Elizabeth paid the mortgage on their shared Manhattan co-op, and Douglas paid the monthly maintenance fee on the co-op. Id. Elizabeth and Douglas had been engaged to be married for approximately two years at the time of her death on September 11, 2001. Id. ¶ 6. Their wedding date was to have been December 30, 2001. Id. Because of Elizabeth and Douglas's long-term relationship and extensive five-year cohabitation, as well as their mutual financial dependence and formal engagement, the Court recommends that Douglas be awarded $12,500,000 in solatium damages, the full amount paid to the unmarried domestic partners of 9/11 victims.

### F.  Cheryl D. Cooper

Cheryl D. Cooper was the domestic partner of 9/11 decedent Donald A. Foreman. At the time of his death, Donald and Cheryl had been living together as husband and wife for 16 years, and had been in an exclusive relationship for approximately 19 years. ECF No. 5030, Cheryl D. Cooper Decl. ¶ 3. At the time of his death, Donald and Cheryl lived with Cheryl's two daughters in a home that Donald and Cheryl had purchased together. Id. ¶ 4. Donald and Cheryl depended

on each other for financial, spiritual, and emotional support, and had intended to be married by the end of 2001. Id. ¶¶ 10, 8. Despite the fact that Cheryl and Donald were not formally engaged, they were in a long-term relationship with extensive cohabitation and mutual financial dependence, as indicated by the home they had purchased together. Accordingly, the Court recommends that Cheryl D. Cooper be awarded $12,500,000 in solatium damages, the full amount paid to the unmarried domestic partners of 9/11 victims.

### G.  Mary Coughlin

Mary Coughlin was the domestic partner of 9/11 decedent Kevin W. Donnelly. At the time of his death, Kevin and Mary had lived together as husband and wife for six years, and had been romantically involved with each other for over twelve years. ECF No. 5030, Mary Coughlin Decl. ¶ 3. During the time they resided together, Kevin and Mary shared all their living expenses. Id. ¶ 4. They financially depended on each other throughout their six years of cohabitation. Id. ¶ 14. Exactly one year before 9/11, Kevin purchased a diamond ring as a symbol of his love for Mary and his commitment to their relationship. Id. ¶ 7. Prior to Kevin's death, Kevin and Mary held themselves out to family and friends as husband and wife. Id. ¶ 15. Despite the fact that Kevin and Mary were not formally engaged, they were in a long-term twelve-year relationship with extensive cohabitation and mutual financial dependence. Accordingly, the Court recommends that Mary Coughlin be awarded $12,500,000 in solatium damages, the full amount paid to the unmarried domestic partners of 9/11 victims.

### H.  Margaret E. Cruz

Margaret E. Cruz was the domestic partner of 9/11 decedent Patricia McAneney. At the time of Patricia's death, Margaret and Patricia had been cohabiting for a total of approximately 16 years. ECF No. 5030, Margaret E. Cruz Decl. ¶ 3. Margaret and Patricia were together as life

partners in the role of spouse in each other's life until such time as marriage would have been legal and permitted in New York. Id. ¶ 4. Margaret and Patricia shared all household expenses and responsibilities equally. Id. ¶ 9. Margaret and Patricia lived for each other every day, cooking together, vacationing together, and living in every way as a married couple. Id. ¶ 5. Margaret and Patricia named each other as beneficiaries on their respective life insurance policies as well as their respective investment accounts. Id. ¶¶ 6, 7. Despite the fact that Margaret and Patricia were not formally engaged, they were in a long-term relationship with extensive cohabitation and mutual financial dependence. Accordingly, the Court recommends that Margaret E. Cruz be awarded $12,500,000 in solatium damages, the full amount paid to the unmarried domestic partners of 9/11 victims.

## I. John Cuccinello

John Cuccinello is the stepchild of 9/11 decedent William J. McGovern. After John's mother and father divorced when John was four or five years old, John never again resided with his biological father and never developed a father/son relationship with him. ECF No. 5030, John Cuccinello Decl. ¶ 3. In 1987, when John was eight years old, his mother married William and William became John's stepfather. Id. ¶ 4. John and his mother moved into William's condominium while their new house was being built, and in 1988, John, William, and John's mother moved into their new house together. Id. From that time on, William did all the things a father should do for his child, feeding John, providing him with financial support, disciplining him, and mentoring him. Id. ¶ 5. William taught John how to play sports and how to drive a car. Id. ¶¶ 9, 11. William also paid the half of John's tuition that John's biological father did not pay. Id. ¶ 12. Because William J. McGovern continuously lived with and parented John Cuccinello

from the age of eight, the Court recommends that John be awarded $8,500,000 in solatium damages, the full amount paid to the biological or adopted children of 9/11 victims.

### J.  William G. Dietrich

William G. Dietrich was the fiancé of 9/11 decedent Karen Lynn Seymour. At the time of her death, Karen and William had been living together as husband and wife for approximately eleven years. ECF No. 5030, William G. Dietrich Decl. ¶ 3. Before her death, Karen and William had agreed to be married to each other. Id. ¶ 5. At the time of her death, Karen was wearing an engagement ring and a wedding band that William had given to her. Id. ¶ 6. Karen and William had comingled all their assets, including their bank savings account. Id. ¶ 8. Karen and William depended on each other for financial, spiritual, and emotional support, and had two children together. Id. ¶¶ 11, 7. Because of Karen and William's long-term relationship, which produced two children, and their extensive cohabitation, mutual financial dependence and formal engagement, the Court recommends that William G. Dietrich be awarded $12,500,000 in solatium damages, the full amount paid to the unmarried domestic partners of 9/11 victims.

### K.  Robert Giallombardo

Robert Giallombardo is the stepfather of 9/11 decedent Paul Richard Salvio. Paul's mother marred Robert in 1976, when Paul was two years old. ECF No. 5030, Robert Giallombardo Decl. ¶ 3. Paul, his mother, and Robert continuously resided in their family home together for 25 years, from the time Paul was two years old until the day he died. Id. ¶ 4. Paul never knew his biological father, who played no role in Paul's life. Id. ¶ 6. Robert helped pay for Paul's schooling, and treated Paul no differently than the three children that Robert and Paul's mother had together. Id. ¶ 7, 8. Robert always referred to Paul as his son, and Paul always referred to Robert as his father. Id. ¶ 10. Because Robert Giallombardo continuously lived with

and parented Paul Richard Salvio from a young age, the Court recommends that Robert be awarded $8,500,000 in solatium damages, the full amount paid to the biological or adopted parents of 9/11 victims.

### L.  Veronica A. Glascoe a/k/a Veronica A. Squef

Veronica A. Glascoe was the registered domestic partner of 9/11 decedent Keith A. Glascoe. At the time of his death, Keith and Veronica had been living together with their two children for approximately five years. ECF No. 5030, Veronica A. Glascoe Decl., ¶ 3. At the time of Keith's death, Veronica was five months pregnant with their third child. Id. ¶ 4. In 1999, shortly after the birth of their first child, Keith and Veronica registered as domestic partners with the City of New York. Id. ¶ 5. Keith and Veronica shared a bank account in Brooklyn, New York. Id. ¶ 6. Keith and Veronica had plans to purchase a house together in which to raise their family. Id. ¶ 9. Despite the fact that Keith and Veronica were not formally engaged, they were in a long-term relationship, which produced three children, lived together for five years and were financially dependent upon one another. Accordingly, the Court recommends that Veronica A. Glascoe be awarded $12,500,000 in solatium damages, the full amount paid to the unmarried domestic partners of 9/11 victims.

### M. Lisa C. Goldberg-McWilliams

Lisa C. Goldberg-McWilliams was the domestic partner of 9/11 decedent Martin Edward McWilliams. At the time of his death, Martin and Lisa had been cohabiting for approximately three and a half years. ECF No. 5030, Lisa C. Goldberg-McWilliams Decl. ¶ 3. At the time of Martin's death, he and Lisa were raising their newborn daughter, as well as Lisa's other daughter, both of whom lived in their home. Id. ¶ 4. Martin and Lisa had planned to be married in December of 2001, after moving into the new home they were in the process of buying

together. Id. ¶ 9. After Martin's death, Lisa had to remove his name from the sales agreement to accommodate the subsequent purchase of the property. Id. ¶ 8. Martin and Lisa depended upon each other for financial, spiritual, and emotional support. Id. ¶ 13. Even though Martin and Lisa were not formally engaged, they were in a long-term relationship that produced a child, lived together for three years, and were financially dependent upon one another, as indicated by the presence of both of their names on the sales agreement for their new home. Accordingly, the Court recommends that Lisa C. Goldberg-McWilliams be awarded $12,500,000 in solatium damages, the full amount paid to the unmarried domestic partners of 9/11 victims.

### N.  Lydeda Grant

Lydeda Grant is the stepdaughter of 9/11 decedent Johnnie Doctor, Jr. At the time of his death, Lydeda had been residing with Johnnie for approximately nine years. ECF No. 5030, Lydeda Grant Decl. ¶ 3. Lydeda's mother and Johnnie were married in approximately 1992, when Lydeda was four or five years old. Lydeda began living with Johnnie at that time and continued to do so until his death. Id. Throughout the time that Lydeda lived with Johnnie, Lydeda's biological father played no role in Lydeda's life. Id. ¶ 4. Johnnie was the father figure in Lydeda's life, providing for her financially and emotionally, including nurturing her and disciplining her. Id. ¶ 5. He served as Lydeda's basketball coach when she was a young girl and attended parent-teacher meetings along with Lydeda's mother. Id. ¶¶ 6, 7. Because Johnnie Doctor, Jr. continuously lived with and parented Lydeda Grant from a young age, the Court recommends that Lydeda be awarded $8,500,000 in solatium damages, the full amount paid to the biological or adopted children of 9/11 victims.

### O.  Anthony Newsome

Anthony Newsome is the stepson of 9/11 decedent Johnnie Doctor, Jr. At the time of Johnnie's death, Anthony had been residing with him for approximately nine years. ECF No. 5030, Anthony Newsome Decl. ¶ 3. Anthony's mother and Johnnie were married in approximately 1992, when Anthony was seven or eight years old. Antony began living with Johnnie at that time and continued to do so until Johnnie's death. Id. Throughout the time that Anthony lived with Johnnie, Anthony's biological father played no role in Anthony's life. Id. ¶ 4. Johnnie was the father figure in Anthony's life, providing for him financially and emotionally. Id. ¶ 6. He taught Anthony how to drive a car, helped him open his first bank account, and helped Anthony get his first job. Id. ¶¶ 8, 9, 10. Because Johnnie Doctor, Jr. continuously lived with and parented Anthony Newsome from a young age, the Court recommends that Anthony be awarded $8,500,000 in solatium damages, the full amount paid to the biological or adopted children of 9/11 victims.

### P.  Monica Ianelli a/k/a Monica Palatucci

Monica Ianelli a/k/a Monica Palatucci was the fiancé of 9/11 decedent Joseph A. Ianelli. At the time of his death, Joseph and Monica had been cohabiting for two years and were romantically involved for three years. ECF No. 5030, Monica Ianelli Decl. ¶ 3. Joseph and Monica became engaged to be married on December 23, 2000, and their wedding was to take place on September 1, 2002, at the New Rochelle Country Club in New Rochelle, New York. Id. ¶ 4. During the period of their cohabitation, Joseph and Monica maintained a joint checking account and shared all household expenses. Id. ¶ 5. Joseph and Monica had plans for starting a family and spending the rest of their lives together. Id. ¶ 9. Because of Joseph and Monica's long-term relationship and two years of cohabitation, as well as mutual financial dependence and

formal engagement, the Court recommends that Monica Ianelli be awarded $12,500,000 in solatium damages, the full amount paid to the unmarried domestic partners of 9/11 victims.

### Q.  Frank G. Jensen

Frank G. Jensen was the fiancé of 9/11 decedent Suzanne M. Calley. At the time of her death, Frank and Suzanne had cohabited together for 20 years and had been engaged to be married for approximately 15 years. ECF No. 5030, Frank G. Jensen Decl. ¶¶ 3, 4. Having remained single for tax liability reasons, Frank and Suzanne decided in August 2001 to get married in September 2002. Id. Frank and Suzanne maintained several joint checking accounts, joint credit card accounts, a joint investment account, and jointly owned physical assets. Id. ¶¶ 6, 7, 8, 9. During their 20 years of living together, Suzanne and Frank shared all household expenses, chores, and responsibilities. Id. ¶ 11. Frank gave Suzanne an engagement ring in 1986, which she wore every day as both an engagement ring and a wedding ring. Id. ¶ 16. Frank and Suzanne referred to each other as their spouse. Id. ¶ 17. Because of Frank and Suzanne's long-term relationship and 20 years of cohabitation, as well as their mutual financial dependence, long-term engagement, and recent intention to get married, the Court recommends that Frank G. Jensen be awarded $12,500,000 in solatium damages, the full amount paid to the unmarried domestic partners of 9/11 victims.

### R.  Kerri Kelly

Kerri Kelly is the stepdaughter of 9/11 decedent Joseph ("Joe") Leavey. Joe came into Kerri's life when she was six years old and Joe and Kerri's mother began dating. ECF No. 5030, Kerri Kelly Decl. ¶ 3. Kerri was eight years old when her mother and Joe got married and Kerri, Joe, and Kerri's mother began living together as a family. Id. ¶ 4. Kerri resided in their family home with her mother and Joe for the next 17 years of her life. Id. Throughout those 17 years,

Joe was the father figure in Kerri's life. Id. ¶ 5. Kerri's biological father separated from Kerri's mother when she was two years old, and Kerri never lived with her biological father. Id. From the time Kerri's mother and Joe were married, until he died, Joe assumed all the responsibilities of a father to Kerri. Id. ¶ 6. Joe drove Kerri to school each morning, taught Kerri how to swim, helped her with her homework, and taught her how to drive a car. Id. ¶ 8, 9, 10, 11. Because Joseph Leavey continuously lived with and parented Kerri Kelly from a young age, the Court recommends that Kerri be awarded $8,500,000 in solatium damages, the full amount paid to the biological or adopted parents of 9/11 victims.

### S.  Ina Leventhal

Ina Leventhal was the fiancé of 9/11 decedent Joshua S. Vitale. At the time of his death, Joshua and Ina had been living together for approximately five months. ECF No. 5030, Ina Leventhal Decl. ¶ 4. For approximately two years before his death, Ina and Joshua would alternate between staying at his apartment and staying at her apartment. Id. During the approximately five-month period when they were living together, Ina and Joshua shared all their bills and living expenses equally. Id. ¶ 5. At the time of his death, Ina and Joshua were engaged to be married; Joshua proposed on May 21, 2001, and the marriage ceremony was to take place on July 3, 2002, at the Beth Torah Temple in Dix Hill, New York. Id. ¶¶ 6, 7. Ina and Joshua cooked together, shopped together, vacationed together, and lived in every way like a married couple. Id. ¶ 9. Because of Ina and Joshua's long-term relationship and five months of cohabitation, as well as their mutual financial dependence and formal engagement, the Court recommends that Ina Leventhal be awarded $12,500,000 in solatium damages, the full amount paid to the unmarried domestic partners of 9/11 victims.

### T.  Camille Nicole Martin

Camille Nicole Martin is the grandchild of 9/11 decedent Charles Augustus Laurencin. At the time of Camille's birth in 1991, her biological father was incarcerated, and he was subsequently murdered in 1997. ECF No. 5030, Camille Nicole Martin Decl. ¶ 3. At the time of Camille's birth, her biological mother was a habitual drug abuser and completely unable to care for Camille. Id. ¶ 4. From the time Camille was born in 1991 until Charles was killed on 9/11, Camille lived with her grandparents Charles and Barbara Ann Laurencin. Id. ¶ 5. In 1991, Camille's grandparents were appointed her legal guardians. Id. ¶ 6. Camille's grandparents raised her and did all the things parents do for their children, including feeding her, clothing her, nurturing her, and disciplining her. Id. ¶ 7.

As the Court discussed in Hoglan IV, grandparents may be considered the functional equivalents of parents in certain limited circumstances. Being considered as functional equivalents generally requires permanent abandonment by both parents. See Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 236 (S.D.N.Y. 2013) (awarding solatium damages to grandmother who had acted as the decedent's "surrogate mother" continuously since 1973). In the present case, both of Camille's biological parents were wholly absent from her life from the time of her birth. The Court recognizes the full parental role that Camille's grandparents took on as her appointed legal guardians. Because of Camille's continuous cohabitation with Charles, his legal custodianship of Camille, and the absence of Camille's biological parents, the Court recommends that Camille Nicole Martin be awarded $8,500,000 in solatium damages, the full amount paid to the biological or adopted children of 9/11 victims.

### U. Chelsea Rhea McCarthy

Chelsea Rhea McCarthy is the stepchild of 9/11 decedent Kevin M. McCarthy. At the time of Kevin's death, Chelsea was eleven years old. ECF No. 5030, Chelsea Rhea McCarthy Decl. ¶ 3. Chelsea had been residing in the same home as Kevin since she was three years old, when Chelsea's mother married him. Id. When Chelsea was seven years old, her mother and Kevin petitioned the Probate and Family Court Department of the Commonwealth of Massachusetts to have Chelsea's surname changed to "McCarthy" so that she and her step-siblings would have the same last name. Id. ¶ 4. Chelsea has only vague memories of her biological father, who played no role in Chelsea's life. Id. ¶ 5. When Chelsea was seven years old, Kevin became a stay-at-home dad for several years and prepared Chelsea for school in the mornings, helped her with her homework, and took her on afternoon outings. Id. ¶¶ 6, 7, 8, 9. Because Kevin M. McCarthy continuously lived with and parented Chelsea Rhea McCarthy from a young age, the Court recommends that Chelsea be awarded $8,500,000 in solatium damages, the full amount paid to the biological or adopted children of 9/11 victims.

### V. Rhonda McCleary

Rhonda McCleary is the stepchild of 9/11 decedent James ("Jim") Durward Cleere. Rhonda was approximately ten years old when her mother married James, at which time Rhonda, her mother, and James began living together as a family. ECF No. 5030, Rhonda McCleary Decl. ¶ 3. Rhonda's biological parents got divorced when she was five years old, and Rhonda did not often see her biological father after he remarried shortly after. Id. ¶ 4. Rhonda developed a father-daughter relationship with James. Id. ¶ 9. James showed up for school activities, took an active part in Rhonda's early education, and showed up for family breakfast together. Id. ¶ 8. James nurtured Rhonda, clothed her, fed her, and provided her with emotional support

throughout her formative years. Id. ¶ 10. Rhonda continuously resided in her family home with James and her mother until she was approximately 20 years old. Id. ¶ 11. Because Rhonda McCleary was ten years old when she began living with James Durward Cleere, the Court recommends that Rhonda be awarded $4,250,000 in solatium damages, half the amount paid to the biological or adopted children of 9/11 victims.

### W. Noreen V. McDonough

Noreen V. McDonough was the fiancé of 9/11 decedent Mitchel Scott Wallace. At the time of his death, Mitchel and Noreen had been residing together for over three years. ECF No. 5030, Noreen V. McDonough Decl. ¶ 3. During those three years, Mitchel and Noreen shared expenses and co-mingled their funds. Id. ¶ 4. Mitchel would deposit his paycheck into Noreen's bank account, and Noreen would pay all their bills. Id. On December 8, 1998, Mitchel proposed to Noreen and presented her with an engagement ring. Id. ¶ 6. Mitchel and Noreen had planned to be married before September 11, 2001, but Noreen's father was diagnosed with cancer, and then Noreen had a stroke, forcing the wedding to be put off twice. Id. ¶ 7. Days before September 11, 2001, Mitchel and Noreen decided to marry in October 2001 and have a simple dinner to celebrate. Id. Mitchel and Noreen were interdependent on each other financially, emotionally, and spiritually, and had made plans for their lifetime together. Id. ¶¶ 11, 12. Because of Mitchel and Noreen's long-term relationship and over three years of cohabitation, as well as their mutual financial dependence and formal engagement, the Court recommends that Noreen V. McDonough be awarded $12,500,000 in solatium damages, the full amount paid to the unmarried domestic partners of 9/11 victims.

### X.  Vincent A. Milotta

Vincent A. Milotta was the fiancé of 9/11 decedent Joann Tabeek. At the time of her death, Joann and Vincent had cohabited as a couple for six years. ECF No. 5030, Vincent A. Milotta Decl. ¶ 3. Joann and Vincent had been engaged to be married for approximately one year at the time of her death. Id. ¶ 4. It was their intent to be married in September 2002. Id. Joann and Vincent provided each other with financial, emotional, and spiritual support. Id. ¶ 8. Joann and Vincent had plans for Joann to retire within three years and then move to Florida together. Id. ¶ 6. Because of Joann and Vincent's long-term relationship and six years of cohabitation, as well as their mutual financial dependence and formal engagement, the Court recommends that Vincent A. Milotta be awarded $12,500,000 in solatium damages, the full amount paid to the unmarried domestic partners of 9/11 victims.

### Y.  Catherine M. Nolan

Catherine M. Nolan was the fiancé of 9/11 decedent Michael J. Armstrong. Michael and Catherine had been dating since June 1997. ECF No. 5030, Catherine M. Nolan Decl. ¶ 3. Michael and Catherine became engaged to be married on February 15, 2001, and were to be married at the church of St. Thomas More in New York City on October 6, 2001. Id. ¶ 4. Since their engagement, Michael and Catherine began comingling their assets and saving together for their wedding and future plans. Id. ¶ 6. They also bought a car together. Id. Michael and Catherine were actively planning their future life together, and they were both very excited to start a family and raise children together. Id. ¶ 5. Despite the fact that Michael and Catherine do not appear to have cohabited together, they were in a long-term relationship, were financially dependent on one another, and were formally engaged to be married. Accordingly, the Court

recommends that Catherine M. Nolan be awarded $12,500,000 in solatium damages, the full amount paid to the unmarried domestic partners of 9/11 victims.

### Z.   Gina Pinos

Gina Pinos was the fiancé of 9/11 decedent James N. Pappageorge. At the time of his death, James and Gina had been cohabiting, along with Gina's then five-year-old son, for approximately three and a half years. ECF No. 5030, Gina Pinos Decl. ¶ 3. James and Gina had been romantically involved with each other for approximately seven years. Id. While cohabiting. James and Gina comingled their finances and shared all expenses equally. Id. ¶ 6. In 1999, James and Gina opened a joint checking account into which they deposited their respective paychecks. Id. James proposed marriage to Gina in 2000. Id. ¶ 7. James and Gina were to be married in 2002, and they had given a booking deposit to the venue for the wedding reception. Id. At the time of James's death, Gina was pregnant with James's baby. Id. ¶ 5. Because of James and Gina's long-term relationship and extensive cohabitation, as well as their mutual financial dependence and formal engagement, the Court recommends that Gina Pinos be awarded $12,500,000 in solatium damages, the full amount paid to the unmarried domestic partners of 9/11 victims.

### AA.   Cheryl Rinbrand

Cheryl Rinbrand was the fiancé of 9/11 decedent Daniel Maurice Van Laere. At the time of his death, Daniel and Cheryl had been living together as husband and wife for approximately 11 years. ECF No. 5030, Cheryl Rinbrand Decl. ¶ 3. Prior to residing together, Daniel and Cheryl had dated for several years, including three years while they were in high school together. Id. The house that Daniel and Cheryl shared together was deeded in both of their names with a right of survivorship, and they shared all household expenses and chores equally. Id. ¶ 4. Daniel

and Cheryl also co-mingled all of their financial assets. Id. ¶ 5. Cheryl was the sole beneficiary of a life insurance policy provided through Daniel's employer. Id. ¶ 6. Approximately six years before his death, Daniel and Cheryl became formally engaged to be married, and Daniel and Cheryl were working with the Catholic Church to perform the Rite of Marriage at the time of his death, a requirement of the church before Daniel and Cheryl could get married. Id. ¶ 8. Because of Daniel and Cheryl's long-term relationship and 11 years of cohabitation, as well as their mutual financial dependence and formal engagement, the Court recommends that Cheryl Rinbrand be awarded $12,500,000 in solatium damages, the full amount paid to the unmarried domestic partners of 9/11 victims.

### BB.   Silveria Segura

Silveria Segura was the domestic partner of 9/11 decedent Juan G. Salas. At the time of his death, Juan and Silveria had resided together as husband and wife continuously for eight years. ECF No. 5030, Silveria Segura Decl. ¶ 3. Juan and Silveria had two children together. Id. ¶ 4. Prior to his death, Juan maintained a life insurance policy that named their son as his sole beneficiary. Id. ¶ 6. At the time of his death, Juan and Silveria depended on each other for financial, spiritual, and financial support. Id. ¶ 10. Despite the fact that Juan and Silveria were not formally engaged, they were in a long-term relationship with eight years of cohabitation and mutual financial support. They were also raising their two children together as husband and wife, further suggesting their joint investment in a common life together. Accordingly, the Court recommends that Silveria Segura be awarded $12,500,000 in solatium damages, the full amount paid to the unmarried domestic partners of 9/11 victims.

### CC.    Patricia Skic

Patricia Skic was the domestic partner of 9/11 decedent Michael Matthew Miller. On Christmas 2000, Michael presented Patricia with an engagement ring and asked her to marry him. ECF No. 5030, Patricia Skic Decl. ¶ 3. The wedding had been set for September 28, 2001. Id. ¶ 4. Prior to his death, both Patricia and Michael spoke to their accountants and informed them that they intended to be married to one another by the end of 2001, when they expected to file a joint income tax return. Id. ¶¶ 5, 6. In May 2001, Patricia and Michael were pre-qualified for a home mortgage and began looking for a home. Id. ¶ 7. In March 2001, Patricia and Michael jointly leased a vehicle together. Id. ¶ 8. During their life together, Patricia and Michael comingled their assets and lived their lives like a married couple in all ways. Id. ¶ 13. They had been in a relationship together for almost five years, and had cohabited for most of that time. ECF No. 5030, Letters from Karen Wolf and Pat Theodora. Because of Patricia and Michael's long-term relationship and extensive cohabitation, as well as their mutual financial dependence and formal engagement, the Court recommends that Patricia Skic be awarded $12,500,000 in solatium damages, the full amount paid to the unmarried domestic partners of 9/11 victims.

### DD.    Jose A. Franco-Suarez

Jose A. Franco-Suarez is the stepchild of 9/11 decedent Benjamin Suarez. Jose was five years old in 1994 when he, his mother, and his sister began living together as a family with Benjamin Suarez. ECF No. 5030, Jose A. Franco-Suarez Decl. ¶ 3. Jose's biological father played no role in his life, and Jose has no memories of him. Id. ¶ 4. Benjamin assumed all the responsibilities of a father to Jose, including feeding him, clothing him, and taking him to school. Id. ¶¶ 5, 6, 7. Benjamin taught Jose how to play baseball and how to swim. Id. ¶ 8. Benjamin would take Jose and his sister to the firehouse where he worked and would introduce them to his

fellow firefighters as his children. Id. ¶ 10. Because Benjamin Suarez continuously lived with and parented Jose A. Franco-Suarez from a young age, the Court recommends that Jose be awarded $8,500,000 in solatium damages, the full amount paid to the biological or adopted children of 9/11 victims.

### EE.      Joscelyn C. Franco-Suarez

Joscelyn C. Franco-Suarez is the stepchild of 9/11 decedent Benjamin Suarez. At the time of Benjamin's death, Joscelyn had been living with him for seven years. ECF No. 5030, Joscelyn C. Franco-Suarez Decl. ¶ 3. Joscelyn was seven years old in 1994 when she, her mother, and her brother began living together as a family with Benjamin. Id. ¶ 4. Joscelyn's father played no role in her life and she has no memories of him. Id. ¶ 5. Benjamin assumed all responsibilities of a father to Joscelyn, feeding her, clothing her, taking her to school every day and helping her with homework when she returned. Id. ¶¶ 6, 7, 8. Benjamin would take Joscelyn and her brother to the firehouse where he worked and would introduce them to his fellow firefighters as his children. Id. ¶ 9. Benjamin would take Joscelyn on father-daughter dates to get her nails or hair done. Id. ¶ 11. Because Benjamin Suarez continuously lived with and parented Joscelyn C. Franco-Suarez from a young age, the Court recommends that Joscelyn be awarded $8,500,000 in solatium damages, the full amount paid to the biological or adopted children of 9/11 victims.

### CONCLUSION

For the foregoing reasons, plaintiffs should receive solatium damages as follows:

| Number | Decedent | Plaintiff | Relationship | Solatium Damages |
|---|---|---|---|---|
| 1 | Brian Cummins | Deborah L. Barrett | Fiancé | $12,500,000 |
| 2 | Stephen F. Masi | Theresa Bevilacqua | Stepdaughter | $8,500,000 |

| 3 | Gavin Cushny | Susann Carol Brady | Fiancé | $12,500,000 |
| 5 | Elizabeth C. Logler | Douglas C. Cleary | Fiancé | $12,500,000 |
| 6 | Donald A. Foreman | Cheryl D. Cooper | Domestic Partner | $12,500,000 |
| 7 | Kevin W. Donnelly | Mary Coughlin | Domestic Partner | $12,500,000 |
| 8 | Patricia McAneney | Margaret E. Cruz | Domestic Partner | $12,500,000 |
| 9 | William J. McGovern | John Cuccinello | Stepchild | $8,500,000 |
| 10 | Karen Lynn Seymour | William G. Dietrich | Fiancé | $12,500,000 |
| 11 | Paul Richard Salvio | Robert Giallombardo | Stepparent | $8,500,000 |
| 12 | Keith A. Glascoe | Veronica A. Glascoe | Registered domestic partner | $12,500,000 |
| 13 | Martin McWilliams | Lisa C. Goldberg-McWilliams | Domestic partner | $12,500,000 |
| 14 | Johnnie Doctor, Jr. | Lydeda Grant | Stepchild | $8,500,000 |
| 15 | Johnnie Doctor, Jr. | Anthony Newsome | Stepchild | $8,500,000 |
| 16 | Joseph A. Ianelli | Monica Ianelli | Fiancé | $12,500,000 |
| 17 | Suzanne M. Calley | Frank G. Jensen | Fiancé | $12,500,000 |
| 18 | Joseph Leavey | Kerri Kelly | Stepchild | $8,500,000 |
| 19 | Joshua S. Vitale | Ina Leventhal | Fiancé | $12,500,000 |

| 20 | Charles Augustus Laurencin | Camille Nicole Martin | Grandchild | $8,500,000 |
| 21 | Kevin M. McCarthy | Chelsea Rhea McCarthy | Stepchild | $8,500,000 |
| 22 | James Durward Cleere | Rhonda McCleary | Stepchild | $4,250,000 |
| 23 | Mitchel Scott Wallace | Noreen V. McDonough | Fiancé | $12,500,000 |
| 24 | Joann Tabeek | Vincent A. Milotta | Fiancé | $12,500,000 |
| 25 | Michael J. Armstrong | Catherine M. Nolan | Fiancé | $12,500,000 |
| 26 | James N. Pappageorge | Gina Pinos | Fiancé | $12,500,000 |
| 27 | Daniel Maurice Van Laere | Cheryl Rinbrand | Fiancé | $12,500,000 |
| 28 | Juan G. Salas | Silveria Segura | Domestic partner | $12,500,000 |
| 29 | Michael Matthew Miller | Patricia Skic | Domestic partner | $12,500,000 |
| 30 | Benjamin Suarez | Jose A. Franco-Suarez | Stepchild | $8,500,000 |
| 31 | Benjamin Suarez | Joscelyn C. Franco-Suarez | Stepchild | $8,500,000 |

The solatium claims for Rebecca Chang should be DENIED under the principles established in Hoglan IV.

Plaintiffs should also be awarded prejudgment interest on these damages from September 11, 2001, through the date of judgment, at a rate of 4.96 percent per annum, compounded annually. See ECF No. 3358, adopted by, ECF No. 3383.

Plaintiffs may apply for punitive damages at a later date consistent with any future rulings made by the Court on this issue.

Finally, any Burnett Plaintiffs not appearing in this motion and who were not previously awarded damages may still submit applications for solatium and/or economic damages awards.

DATED:      January 10, 2020
            New York, New York

_____
SARAH NETBURN
United States Magistrate Judge

*          *          *

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be

addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).