## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE: TERRORIST ATTACKS ON    :
SEPTEMBER 11, 2001          :     MDL 03-1570 (GBD)(SN)

**This Document Relates To:**
*Havlish, et al. v. bin Laden, et al.,* **Case No. 03-CV-09848**
*Ashton, et al. v. al Qaeda Islamic Army, et al.,* **Case No. 02-CV-06977**
*Burnett, Sr., et al., v. Islamic Republic of Iran,* **Case No. 15-CV-9903**
*Burlingame, et al. v. bin Laden, et al.,* **Case No. 02-CV-07230**
*Bauer, et al. v. al Qaeda Islamic Army, et al.,* **Case No. 02-CV-07236**
*O'Neill, Sr., et al. v. Republic of Iraq, et al.,* **Case No. 04-CV-1076**
*Federal Insurance Co., et al. v. al Qaida, et al.,* **Case No. 03-CV-06978**
----
*All other cases against the Islamic Republic of Iran*

### *HAVLISH* PLAINTIFFS MEMORANDUM OF LAW IN OPPOSITION TO THE PEC'S MOTION FOR RECONSIDERATION OF THE COURT'S SEPTEMBER 30, 2019 DECISION ESTABLISHING A COMMON BENEFIT FUND SOLELY IN FAVOR OF *HAVLISH* COUNSEL

**January 10, 2020**

# TABLE OF CONTENTS

FACTUAL BACKGROUND AND SUMMARY OF THE ARGUMENT …………………...………….. 2

THE FALSE AND MISLEADING STATEMENTS IN THE PEC'S MOTION FOR RECONSIDERATION ….. 6

ARGUMENT …………………………………………………………………………... 14

1.   THE COURT'S ORDER ESTABLISHING A COMMON BENEFIT FUND FOR HAVLISH COUNSEL IS ENTIRELY APPROPRIATE UNDER THE CIRCUMSTANCES PRESENTED HERE ……………... 14

2.   HAVLISH COUNSEL HAS PROPOSED AN EXCHANGE OF INFORMATION AIMED AT ASSISTING THE COURT IN ESTABLISHING A REASONABLE COMMON BENEFIT FEE …..…………….. 14

3.   HAVLISH COUNSEL HAS NOT WAIVED COMMON BENEFIT FEES FROM THE FIRST ROUND PAYMENTS FROM THE USVSST FUND …………………………………………… 16

TABLE OF AUTHORITIES

**CASES**

*Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885)  …………………………… 5, 15

*In re: 650 Fifth Avenue and Related Properties*

*Peterson v. Islamic Republic of Iran*, 758 F.3d 185 (2014) (S.D.N.Y. case no. 10-04518) …... 9

**STATUTES**

28 U.S.C. §636(b)(1)(A)  …………………………….……………………………………… 1

Foreign Sovereign Immunities Act, 28 U.S.C. §1602, *et seq.*  ……………………………..  10

**OTHER AUTHORITIES**

*In Re: Terrorist Attacks on September 11, 2001*, MDL 03-1570 (GBD)(SN)
    Case Management Order No. 3 …………………………………………………..  2

9/11 COMMISSION REPORT  ……………………………………………………………  10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE: TERRORIST ATTACKS ON     :

SEPTEMBER 11, 2001          :      **MDL 03-1570 (GBD)(SN)**

**This Document Relates To:**

*Havlish, et al. v. bin Laden, et al.,* **Case No. 03-CV-09848**

*Ashton, et al. v. al Qaeda Islamic Army, et al.,* **Case No. 02-CV-06977**

*Burnett, Sr., et al., v. Islamic Republic of Iran,* **Case No. 15-CV-9903**

*Burlingame, et al. v. bin Laden, et al.,* **Case No. 02-CV-07230**

*Bauer, et al. v. al Qaeda Islamic Army, et al.,* **Case No. 02-CV-07236**

*O'Neill, Sr., et al. v. Republic of Iraq, et al.,* **Case No. 04-CV-1076**

*Federal Insurance Co., et al. v. al Qaida, et al.,* **Case No. 03-CV-06978**

----

*All other cases against the Islamic Republic of Iran*

### *HAVLISH* PLAINTIFFS MEMORANDUM OF LAW IN OPPOSITION TO THE PEC'S MOTION FOR RECONSIDERATION OF THE COURT'S SEPTEMBER 30, 2019 DECISION ESTABLISHING A COMMON BENEFIT FUND SOLELY IN FAVOR OF *HAVLISH* COUNSEL

The *Havlish* Plaintiffs, by and through their counsel, respond in opposition to the Motion

For Reconsideration filed by the Plaintiffs Executive Committee ("PEC") (Doc. 5631). This

brief will mainly address arguments raised by the PEC.[1]

On September 30, 2019, this Court entered an Opinion & Order (Doc. No. 5180) granting

in part the *Havlish* Plaintiffs' motion for the creation of a common benefit fund. Through their

motions, the PEC asks the Court to reconsider that decision. None of the PEC's arguments show

that the Magistrate Judge's order "is clearly erroneous or contrary to law," the standard set forth

in 28 U.S.C. §636(b)(1)(A). Nor do they involve the types of issues specified in §636(b)(1)(A)

as reserved for the District Judge, which would convert the Opinion & Order into a Report and

---

[1] The PEC's brief, as we understand it, encompasses arguments on behalf of other Responding Plaintiffs, *i.e.,* all other counsel representing plaintiffs against Iran in this MDL. A second brief responding to the *Federal Insurance Plaintiffs'* Motion For Reconsideration (Doc. 5359) will address issues that overlap the *Federal Plaintiffs* and the PEC/Responding Plaintiffs' Motions For Reconsideration (Doc. 5361).

Recommendation.  *See* Opinion & Order at n. 1, p. 1.  This is presumably why the PEC's filing is not styled "objections," as they have none.

While reconsideration is sometimes warranted when there are new or additional facts or legal principles that the Court did not take into account when rendering its decision, that is not the case here.  Respondents' motions consist primarily of repackaged versions of arguments made in their previous briefing that the Court has already considered and rejected.  Those arguments are just as legally and factually defective now as they were then, and the motion to reconsider should be denied.

## FACTUAL BACKGROUND AND SUMMARY OF THE ARGUMENT

In the early stages of this MDL, the Court entered Case Management Order No. 3 ("CMO No. 3") that, among other things, appointed members of the Plaintiffs' Executive Committee, including counsel for the *Havlish* Plaintiffs, and designated counsel in *Ashton, Burnett* and *Federal Insurance* as Committee Chairs.  *See* MDL Doc. No. 248.  CMO No. 3 contains two unique and important provisions pertinent here. The first provides that any plaintiffs' attorney may, when necessary, present to the Court individual positions that are divergent from the positions of the PEC (CMO No. 3 at ¶13); the second recognizes that independent investigations were being undertaken by various plaintiffs' counsel (CMO No. 3 at ¶20).

From the inception of the PEC, *Havlish* counsel made it clear that they were pursuing, and intended to pursue, claims against the Islamic Republic of Iran and it agencies and instrumentalities that they believed to be important to their clients as well as other plaintiffs in the MDL.  The other PEC members made it clear they considered development of such evidence to be of little consequence in the broader MDL even though they all had cases against Iran.  As this Court correctly observed in its Opinion & Order, *Havlish* counsel's independent

2

investigation was divergent from the position of the PEC but was not inconsistent with CMO No.

3. Rather, "*Havlish* counsel and the remainder of the PEC simply understood that the former

was pursuing claims against Iran, while the latter was focusing on other Defendants."  Opinion &

Order, Doc. 5180 at p. 10.

In 2010, PEC Committee chair and lead counsel in *Ashton* advised the Court that the PEC

"vigorously opposed" the *Havlish* Plaintiffs' presentation of evidence against Iran, referring to

the *Havlish* effort as "the hair on the tail of the dog doing something that we think could kill the

dog."  *See* Transcript of Conference held April 15, 2010, Renewed Motion for CBF, Ex. 4 (Doc.

4289-4) at pp. 16-18.  Prior to the *Havlish* submission of evidence, counsel representing the PEC

repeatedly stated their position that a judgment against Iran was not in *any of the plaintiffs'* best

interest.  *See id.* at p. 17 (stating the PEC's position that a judgment against Iran would

"disadvantage all of the plaintiffs" for reasons that have never been explained).  On July 13,

2011, the same PEC Committee Chair argued in open court the PEC's new position against the

*Havlish* team proceeding to trial on grounds that *a judgment* against Iran could somehow derail a

hoped-for, but again unexplained, murky resolution process – somehow involving the new nation

of South Sudan (not a defendant in this MDL) – that never occurred.  *See Havlish* Renewed

Motion for CBF, Ex. 5 Transcript of Conference held July 13, 2011 (Doc. No. 4289-5) at p. 17.

In the face of such resistance from the PEC, *Havlish* counsel continued with their

investigation and evidentiary presentation preparation that ultimately led to the admission of an

irrefutable body of evidence establishing Iran's liability for direct and material support of the

9/11 hijackers.  In its Opinion & Order, this Court found that all Responding Plaintiffs received a

substantial benefit through their use of the *Havlish* work product, and it is irrefutably so because,

by the middle of this year, the Responding Plaintiffs will have collected, due to their receipt of

awards from the United States Victims of State Sponsored Terrorism Fund ("USVSST Fund") an estimated $1.1 to $1.2 billion. The Responding Plaintiffs' eligibility for those USVSST Fund awards – and more of the same to follow for another decade – is entirely based on their receipt of FSIA judgments that relied 100% on the *Havlish* evidence and Findings of Fact and Conclusions of Law. Even the format of their judgments follow *Havlish*.

The PEC cannot seriously contest these facts or any of the essential facts and legal principles underlying the Court's decision, including that: (1) Responding Plaintiffs and their counsel used in each and every one of their cases all of the evidence and work product that was developed by *Havlish* counsel at great cost and effort; (2) through the use of that appropriated *Havlish* work product, Responding Plaintiffs and their counsel received substantial benefits in the form of liability judgments against Iran and a damages paradigm that has been applied in each of their cases; (3) neither Responding Plaintiffs nor their counsel contributed to the development of the appropriated work product, and they submitted to the Court no evidence of their own in support of their cases; and (4) under such circumstances, this Court has inherent equitable power to award fees to *Havlish* counsel for the benefit bestowed on Responding Plaintiffs and their counsel.

*Havlish* Plaintiffs filed their initial motion seeking the creation of a common benefit fund on March 19, 2016. Doc. No. 3236. The Court denied that motion without prejudice to renew, holding that the creation of the requested fund was premature because, at that point, the amount of effort Respondents would expend to collect on their judgments against Iran, and the sums, if any, they would actually recover, could not be determined. Doc. No. 3322 at p. 1. As this Court found in its Opinion & Order, that uncertainty was removed when Responding Plaintiffs began to collect their judgments against Iran from the USVSST Fund with little effort other than the

filing of an application form.  Opinion & Order at pp. 6-7.

Because Respondents cannot refute the essential facts and legal principles supporting the Court's decision, they attempt to derail *Havlish* counsel's request for a fair fee allocation by advancing arguments that simply have no merit.

First, the PEC resurrects the "premature" argument that this Court already found to be unpersuasive.  Respondents' assertion that the creation of a common benefit fund at this stage of the litigation is inappropriate and unprecedented is unsupportable because MDL courts routinely establish common benefit funds at precisely this stage of the litigation process.

Next, the PEC insists that *Havlish* counsel should not be awarded common benefit fees unless and until they demonstrate that they "need" those fees.  Respondents argue that the Court must review the fees *Havlish* counsel might be paid under agreements with their individual clients to determine if *Havlish* counsel really need common benefit fees.  The PEC can cite no case law supporting its position because the argument was considered and rejected by the Supreme Court more than a century ago in *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885). Therefore, no MDL court since has ever adopted that position.

Third, the PEC objects that the present common benefit fund applies only to *Havlish* counsel and repeat its prior contention that the time the PEC has spent litigating against other defendants also must be considered.  Such common work performed by the PEC has not yet created, and may never create, any tangible benefit for plaintiffs in this MDL.  Thus, the PEC's argument runs directly counter to the principle stated in the Court's initial decision on this issue, *see* Doc. No. 3322, and the PEC's common *work* cannot possibly serve as the basis for their participation in a common *benefit* fund at this time.  As this Court correctly determined, "Because no other defendant has settled or been found liable, any consideration of the work performed would be

premature." Opinion & Order at p. 12, n. 5.

By contrast, all of the liability work and a substantial and critical part of the damages work performed by *Havlish* counsel has in fact benefited the PEC and all Respondents' counsel. Thus, a failure to allocate fees to *Havlish* counsel would defy the long-established principles of equity and *quantum meruit* that serve as the bases for common benefit fee orders.

In tacit recognition that the creation of a common benefit fee fund is appropriate at this time, the PEC proposes an alternative common benefit plan under which a portion of attorney fees derived from USVSST Fund recoveries and other future recoveries, including fees related to awards to *Havlish* plaintiffs, would be placed in a fund to be primarily distributed *to the PEC and Respondents' counsel*. Thus, under the PEC's alternative plan, *Havlish* counsel would be required not only to provide the PEC and Respondents with the benefits of a judgment and damages paradigm, but also to pay them for the privilege of delivering that benefit to them. Incredibly, the PEC attempts to support this proposed appropriation of the *Havlish* common benefit fund by referencing notions of fairness and equity. This Court should reject the PEC's self-serving proposal and deny its motion for reconsideration.

## THE FALSE AND MISLEADING STATEMENTS IN THE PEC'S MOTION FOR RECONSIDERATION

Not only do the PEC's arguments lack merit, they are rife with blatantly false and/or misleading statements, red herrings, phony posturing, pejorative descriptions, rank speculation, and knowing omissions of salient facts. It is incumbent upon *Havlish* counsel to correct the record by addressing the PEC's most egregious misstatements and misrepresentations as follows:

- "*Havlish* counsel have refused to provide Responding Plaintiffs with any documentation whatsoever. Even if *Havlish* counsel has contemporaneous time records and adequate expense records, which seems unlikely given their refusal to share any such information, their failure to provide these records suggests that any existing documentation will reflect substantially less time and expense than *Havlish* counsel currently claim. This failure alone should warrant reconsideration and denial of their request for the creation of a CBF." PEC Motion at 12.

6

There is not a word of truth in this passage, nor is there a hint of the actual truth on this issue. *Havlish* counsel has described to the PEC in writing and verbally in person the extent to which they have time and expense records and what they are doing to reconstruct time to the extent they do not.  More importantly, *Havlish* counsel has explicitly and repeatedly offered to supply the PEC with all of this information and documentation, provided the PEC would supply Havlish counsel with information relevant to the determination of the amount of a reasonable common benefit fee. Specifically, *Havlish* counsel asked for (1) information and documentation related to work the PEC claims that they and/or the Responding Plaintiffs' counsel have done that contributed in any way to the judgments against Iran; (2) information disclosing the amounts of money all Responding Plaintiffs and their attorneys have reaped in payments and fees from the USVSST Fund in Rounds One and Two and that they expect to receive in Round Three.  Rather than engage in the hoped-for exchange of relevant information, the PEC has never committed to supplying any such information or documentation, and, instead, has chosen to poison the well by including baseless allegations in it motion for reconsideration.

- "…[T]he timing of the *Havlish* group's motion for default judgment against Iran, to which some members of the PECs objected, was driven by self-serving interests that did not serve a common benefit.  In order to secure a judgment that would allow its clients – and its clients alone – to intervene in the litigation against the beneficial owners of 650 Fifth Avenue, *Havlish* counsel unilaterally proceeded with default proceedings, knowing that the PECs had independently obtained evidence against Iran intended for that same purpose. But *Havlish* counsel did not share this plan with any other members of the MDL, and secured a place in the 650 Fifth matter for only its own clients, not to the benefit of all plaintiffs."  PEC Motion at p. 14.

This statement is astonishingly disingenuous, hypocritical and vitriolic. First, when the chair of the PEC repeatedly advocated against the *Havlish* Plaintiffs' request to proceed to judgment, he was speaking for the entire PEC, not just "some members."  *See*, for example, the PEC's objection to the *Havlish* request to present evidence at the April 15, 2010 conference with Judge

Daniels:

> ***The Plaintiffs' Executive Committee*** that represents the families of 3,000
> people who were murdered, thousands of people who were injured and billions
> of dollars in property damage does oppose any lawyer who represents 1 percent
> of the plaintiffs group doing something that disadvantages all of the plaintiffs
> in our opinion . . .
> . . . we oppose any single plaintiff doing something that ***99 percent of the***
> ***plaintiffs*** disagree with for really very well thought out reasons.

Transcript of Conference held April 15, 2010, Renewed Motion for CBF, Ex. 4 (Doc. 4289-4) at

p. 17 (*emphasis added*). No member of the PEC broke ranks with the principal spokesperson or

ever indicated that he or she did not object to the *Havlish* case proceeding to trial.

   Second, Responding Plaintiffs were not eligible to participate in the *650 Fifth Avenue*

litigation due to their counsel's self-imposed delay in finalizing their judgements. Their attempt

to now lay blame for their missed collection opportunity at the feet of *Havlsh* counsel is

pathetically sad, because they had every opportunity to join in the *Havlish* effort but chose to

oppose that effort instead.  At the end of the hearing on April 15, 2010, the Court asked *Havlish*

counsel to share and discuss their plan to proceed against Iran with the PEC.  Judge Daniels

specifically observed that "they [the PEC] might have some helpful suggestions."  *See Id.*, at pp.

19-20.  *Havlish* counsel did as Judge Daniels asked, provided the PEC with a copy of their

Amended Complaint and discussed the allegations and the planned evidentiary presentation.

However, when it subsequently became clear that the Court would allow the *Havlish* Plaintiffs to

present the case against Iran, there were no suggestions from the PEC.  The PEC never offered to

help in any way.  PEC leadership never sought a joint presentation of evidence on behalf of all

Responding Plaintiffs,[2] choosing instead to stick by a confused stand-still strategy.  Then, after

---

[2] At the outset of this litigation, *Havlish* counsel proposed that all 9/11 claimants should proceed
against Iran on a class basis and included class allegations in their initial Complaint.  Lead

the *Havlish* Plaintiffs sought the creation of a common benefit fund, the PEC contended that they had compiled their own evidence against Iran that they never shared with *Havlish* counsel.  In fact, the PEC never even hinted that such evidence existed at a time when it may have been useful.

Lastly, the timing of the *Havlish* motion for default judgment and request for trial in this Court was driven by the status of the investigation and the evidence, not the *650 Fifth Avenue* litigation.[3] To be sure, *Havlish* counsel were concerned, as the PEC should have been, that a delay in obtaining a judgement might result in missed collection opportunities for claimants in this MDL. This concerned was heightened in 2010 when, as the PEC was telling this Court that, for "really very well thought out reasons," the PEC "vigorously opposed" the *Havlish* request to present evidence supporting judgment against Iran, other judgment holders were undertaking proceedings in this Court to collect $1.8 billion in Iranian assets. See *Peterson v. Islamic Republic of Iran*, 758 F.3d 185 (2014) (S.D.N.Y. case no. 10-04518).

The *Havlish* motion for default might have been filed earlier, but it was delayed by lead *Havlish* counsel's decision to buttress and cross-check the evidence and to obtain multiple experts' reports and review of the evidence, including, most importantly, the defector witnesses'

---

counsel in *Ashton* and other members of the PEC objected to the proposed *Havlish* class as "not the appropriate mechanism to pursue claims for compensatory or punitive damages against the terrorists."  *See* Letter from Lee S. Kreindler to Hon. James Robertson, July 2, 2002, attached as Ex. C to *Havlish* initial Reply Memorandum, Doc. 3292.  *Havlish* counsel yielded to that position and amended their complaint to withdraw their class allegations.

[3] In its motion for reconsideration, the PEC complains that the 12% common benefit fee sought by *Havlish* counsel is too large and leaves too small a portion of fees for them.  At the same time the PEC chastises *Havlish* counsel for their failure to engage in collection efforts for their clients, especially in the *650 Fifth Avenue* litigation.  *Havlish* attorneys already have effectively obtained a judgment and established a damages paradigm for Responding Plaintiffs.  So, if *Havlish* counsel also do the work to enforce their judgments, what work would the PEC attorneys have done to justify taking any fee?

testimony – for accuracy, credibility, and consistency; to double-check, triple-check, and quadruple-check official governmental and private sources, transcripts, authorities, and experts; to search for and resolve any apparent inconsistencies or gaps in the evidence; by multiple rewrites and revisions to, and editing of, lengthy briefs and appendices; and by assiduous proofreading, cite-checking, and close attention to myriad details in the evidentiary presentation. The reason for all this was that *Havlish* counsel did not consider the case against Iran – the world's preeminent state sponsor of terror – to be "low-hanging" fruit (PEC Motion at pp. 7, 15), but a potential national *causus belli*, and, further, knew that the allegations and the proofs in the case not only defied conventional wisdom but far transcended the scope of both the Congress' and the 9/11 Commission's investigations of the largest and most heinous terrorist attack in history.

The *Havlish* investigation led to stunning evidence and startling conclusions that neither Congress nor the 9/11 Commission had reached – although neither had foreclosed – regarding the role of Iran in the September 11, 2001 terrorist attacks. Indeed, the 9/11 Commission had flatly stated that the National Security Agency satellite intercepts that Commission staff reviewed only a few days before the Commission was to publish its official report (and go out of lawful existence) meant that the role of Iran and Hezbollah in 9/11 "requires further investigation by the U.S. Government." 9/11 COMMISSION REPORT at p. 241. The *Havlish* investigation comprised precisely that "further investigation" that the U.S. Government apparently did not carry out, and, by 2008, *Havlish* counsel knew the case would cut across the grain of history.

Thus, the "uncontested" *Havlish* prove-up hearing [that] lasted less than one day" (PEC Motion at p. 15) was, in fact, designed to withstand any level of scrutiny, from the media to the FBI, to the Congress, and, most importantly, from this Court under the governing law: the

Foreign Sovereign Immunities Act, 28 U.S.C. §1602, *et seq.*  In the eight years since the "prove-up" hearing, no aspect of the *Havlish* evidence or the *Havlish* Findings of Fact and Conclusions of Law has ever been contradicted or undermined in any way.

- "Based on conversations with *Havlish* counsel, it appears that *Havlish* counsel will be seeking fees to compensate them for their work in preparing claims on behalf of their clients for submission to the USVSST Fund, as well as for their other enforcement efforts—such as the attachment of the property at 650 Fifth Avenue and efforts to seize international assets— which would benefit solely their own clients. These efforts, though inuring to the benefit of the *Havlish* plaintiffs, are clearly not common-benefit work, *i.e.*, work undertaken for the benefit of *all* of the Plaintiffs in this MDL."  PEC Motion at p. 16.

This statement is false and bizarre.  In no conversation or writing *ever* did *Havlish* counsel state, imply, or intimate that they would seek any fees, or seek to justify their interest in common benefit fees, by relying on their work preparing USVSST Fund claims for their own clients, or for their work on *In re: 650 Fifth Avenue and Related Properties*, or on their work in any of their international collection cases.  The undersigned counsel has literally no idea from where the PEC derived this idea: it is out of deep left field.

- "Even if this Court were to limit fees solely to work done in connection with claims against Iran, many Responding Plaintiffs' counsel, in addition to *Havlish* counsel, would be entitled to compensation, because they contributed significant common-benefit work that was ultimately utilized in the *Havlish* motion for default judgment."  PEC Motion n. 12 at p. 16. The PEC Motion goes on to suggest that it and various Responding Attorneys are actually responsible for the *Havlish* evidence, including three experts: Kenneth Timmerman, Dr. Patrick Clawson, and Dietrich Snell.

In footnote 12, the PEC creates a false narrative in a desperate attempt to support its argument that the proposed common benefit fund should not be limited to the *Havlish* attorneys. While *Havlish* counsel know that all of the statements in footnote 12 are fabricated, these false allegations highlight the need for the PEC and the Responding Plaintiffs' counsel to produce the information and documents sought by *Havlish* counsel during the meet-and-confer process. As discussed above, *Havlish* counsel received no assistance whatsoever from the PEC or any

11

counsel for Responding Plaintiffs' counsel.  It is incumbent upon them to produce information

and documentation that proves that they provided *Havlish* counsel with work product that

contributed to the development of the *Havlish* evidence and damages paradigm.  Again, *Havlish*

counsel had hoped to obtain that information without having to resort to a formal discovery

process, but the PEC has not agreed to an amicable exchange.

- "In response to the Responding Plaintiffs' requests for time and expense records, only one member of the *Havlish* group has represented that he kept any contemporaneous time records. Another member of the *Havlish* group has suggested that all he did – day and night – for eight years was to think about the suit against the Iranian defendants."  PEC Motion, n. 4 at p. 7.

This statement by the PEC displays a degree of childishness and churlishness that is

unbecoming and not constructive. First, the fact that one *Havlish* attorney represented during a

meet and confer exchange that he kept contemporaneous time records is not dispositive of

anything.  Second, the referenced "suggestion" was not a suggestion at all, but a statement made at

the "meet and confer" meeting; what counsel stated was not that "all he did – day and night – for

eight years was to think about the suit," but that the time records could not possibly capture all the

time that such attorney actually spent on the case because the *Havlish* investigation was not

something that could be left at the office at the end of the workday or workweek.  The weighty

considerations involved in the investigation of Iran's involvement in 9/11 had led the Havlish

team's chief investigative counsel to comment at the meet-and-confer session that he had had years

of day-and-night preoccupation with the substance and significance of the investigation and how to

present it to the Court.  The PEC's misleading and underhanded reference to this comment is

especially troubling and disappointing because both counsel who signed the PEC brief claimed, in

immediate response to that comment, that they, too, had similar day-and-night preoccupation in

dealing with their investigation of Saudi Arabia.  Their attempt to imply that this conversation

constituted some kind of an admission against interest is shameful.

- "This [*Havlish* counsel's] intransigence is contrary to the clear directive of the Court's order and makes any determination of the reasonableness of the *Havlish* counsels' request for 12% of all recoveries– which is 50% more than what they requested in 2016, despite having done no further common benefit work, and which amounts to 80% of all attorneys' fees available under the USVSST Clarification Act's cap on fees of 15% of recovery – impossible to assess."  PEC Motion at p. 7.

The question of who is intransigent and who has been willing to be transparent is addressed above, but other elements above are intentionally misleading.  First, the PEC accuses *Havlish* counsel of hiking its request to 12% despite doing "no further common benefit work."  The increase to 12% was the product of additional research but also the fact that *Havlish* counsel in fact did perform critically important work that made many additional Responding Plaintiffs eligible to access the USVSST Fund.  This work was all done after the original Common Benefit Motion was filed.  *See* Declaration of Timothy B. Fleming, dated March 1, 2019, Exhibit 1 to the *Havlish* Renewed Motion, Doc. No. 4430-1.

The PEC's statement is misleading in yet another significant way.  At the time of the original motion, the USVSST Fund authorized attorney fees up to 25%.  This figure was changed to 15% in the 2019 Clarification Act.  Thus, to characterize the *Havlish* request for 12% as 80% of the fees is misleading.  At the time the request was made, 12% was less than 50%, which seemed appropriate considering *Havlish* counsel had done 100% of the post-complaint work and effectively obtained judgments for Responding Plaintiffs over the PEC's "vigorous objection."  Still, the renewed *Havlish* motion acknowledged that the requested percentage was increased from 8% to 12%, but specifically stated *Havlish* would "look to the Court for its judgment to set the most appropriate percentage under the facts surrounding this matter."  Doc. No. 4292 at p. 5.

## ARGUMENT

**1.   THE COURT'S ORDER ESTABLISHING A COMMON BENEFIT FUND FOR *HAVLISH* COUNSEL IS ENTIRELY APPROPRIATE UNDER THE CIRCUMSTANCES PRESENTED HERE**

In its Opinion & Order, the Court correctly notes that its power to create a common benefit fund springs from two sources. The first is the Court's unquestionable authority to manage and administer this MDL litigation. The second is the Court's inherent equitable power which, for more than a century, courts have relied upon to create common funds where principles of fairness so require, even in the absence of an MDL or class setting.  Given the irrefutable nature of these principles, Respondents do not challenge this Court's authority to create a common benefit fund, but instead object to the timing of that creation.

As the Court is well aware, recoveries on the judgments against Iran have been made possible through the efforts of *Havlish* counsel. While these recoveries are being paid by the USVSST Fund rather than a defendant's settlement fund, the practical effect is the same.  It is beyond question that MDL courts routinely establish common benefit funds at precisely this point in the litigation process.  As stated in *Standards and Best Practices for Large and Mass-Tort MDLs* (Duke Law Center for Judicial Studies, 2014), Ex. 1 hereto:

> *Best Practice* 5D: When individual cases in the MDL begin to settle, or when a global settlement or other final resolution is reached, the transferee judge should determine an appropriate assessment to be made from the gross recovery in each case. The transferee judge should order the defendant to withhold the specified percentage of the recovery from settlement proceeds and deposit that amount into the CBF under the court's direction.

Thus, the PEC's contention that the creation of a common benefit is not proper or appropriate here until all MDL claims have resolved is baseless and unsupportable.

**2.   *HAVLISH* COUNSEL HAS PROPOSED AN EXCHANGE OF INFORMATION AIMED AT ASSISTING THE COURT IN ESTABLISHING A REASONABLE COMMON BENEFIT FEE**

The PEC's contention that *Havlish* counsel have not provided information necessary to

14

establish the amount of a reasonable common benefit fee is both legally deficient and

disingenuous.  The PEC first contends that the Court must consider the compensation that

*Havlish* counsel have received from their own clients before determining whether *Havlish*

counsel really "need" to be compensated for the benefit they have bestowed on Responding

Plaintiffs.  This is obviously a red herring argument, for the question at issue here is not whether

*Havlish* counsel have received reasonable fees for the benefits bestowed on their own clients, but

whether they have received reasonable fees for the benefits bestowed on the PEC and

Respondent counsels' clients.  The PEC cites no law supporting its position because none exists.

To the contrary, the Supreme Court rejected this very same argument more than a century ago in

*Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885).

In *Pettus*, a small number of unsecured railroad corporation bondholders hired attorneys

to prosecute litigation aimed at protecting the bondholders' interest in certain corporate property.

After obtaining a successful result, the attorneys petitioned the court for an award of fees to be

paid by non-client bondholders who had reaped the benefits of the attorneys' work.  The non-

client bondholders objected on the grounds that the attorneys had been compensated under fee

agreements with their clients.  *Pettus*, 113 U.S. at 125.  In response to that argument, the Court

observed that it was clear that the attorneys "had the *right* to demand, and would demand, such

*additional* compensation as was reasonable, in respect of unsecured creditors who *accepted* the

fruits of their labor ...."  *Id*. (*emphasis added*).  The Court noted that the work of the attorneys

had provided a clear benefit to the non-client bondholders and found that those who gained from

that benefit should expect to be called upon to contribute to the litigation expenses, including

reasonable attorney fees. *Id*. at 126, 127.

Thus, the Supreme Court has expressly rebuffed the identical argument Respondents

attempt to advance here.  Respondents' contention that the Court must consider compensation *Havlish* counsel received from their own clients when determining a reasonable common benefit fee is plainly contrary to law and should be rejected.[4]

**2.**     ***Havlish* Counsel Has Not Waived Common Benefit Fees from the First Round Payments from the USVSST Fund**

The PEC argues that Havlish counsel has waived any right to common benefit fees emanating from the Round One payments by the USVSST Fund.  No such waiver occurred.

On May 5, 2016, the PEC argued to this Court that the *Havlish* motion for a common benefit fund was "premature."  Doc. 3272, at pp. 2-4.  Magistrate Judge Maas ruled on July 12, 2016 (Doc. 3309) that the motion was premature because the amount of work needed for Responding Plaintiffs to collect on their judgments was at that time unknown.

In the September 30, 2019 Opinion & Order, this Court did not exclude Round One of the USVSST Fund payments, nor did it limit the common benefit fee to Rounds Two and Three.  No Responding Plaintiff or counsel even raised the purported Round One waiver issue until now. *Havlish* submits that it is too late to raise such a waiver.  A waiver must, of course, be knowing and voluntary, and *Havlish* counsel made no such indication; rather, Havlish counsel filed its original motion well before the Round One payments.  At the time of refiling its motion, *Havlish* did not have information about any, or how many, or indeed if there were any, Iran judgment holders in this MDL who had even qualified for Round One of the USVSST Fund.

In their Renewed Motion for the Creation of a Common Benefit Fund, the *Havlish* Plaintiffs asked the Court for an order "directing the Responding Plaintiffs to set aside twelve percent (12%) of any amounts collected on the Responding Plaintiffs' judgments by any means."

---

[4] In every MDL setting, attorneys who receive common benefit fees also receive fees under their agreements with individual client.  No MDL court has ever required those attorneys to divulge fees from individual clients because they are irrelevant to the common benefit issue.

The *Havlish* Plaintiffs further requested that payments to *Havlish* counsel be made from USVSST Fund distributions made to Responding Plaintiffs in 2019.  By no means can this be construed as a waiver of potential fees generated via USVSST Round One distributions.

As the Court has already noted, the amount of the common benefit fee award has yet to be determined, and, obviously, an important factor is the amount of benefit actually received by Responding Plaintiffs in payments from the USVSST Fund.  The PEC and Responding Plaintiffs have declined *Havlish* counsel's request to divulge information regarding Round One, Round Two, and anticipated Round Three payments. In the event the PEC and Responding Plaintiffs do not change their position on divulging information relevant to a determination of a reasonable common benefit fee amount, the *Havlish* Plaintiffs will be forced to engage in further motion practice and will ask this Court to order production of that information.  The status of the Round One payments should be deferred until such information is provided.

Other issues pertaining to the propriety of a common benefit fee fund raised by the PEC's Motion For Reconsideration, particularly as to the establishment of an alternative form of common benefit fee fund and the propriety of doing so now with respect to the cases against the Saudi Kingdom in this MDL, as opposed to a fund payable only to *Havlish* counsel from recoveries in the Iran cases, and related matters, overlap with the issues raised by the *Federal* Plaintiffs, and therefore are treated together in a separate brief filed this day.  Those arguments are incorporated herein by reference.

Respectfully Submitted,

Date: January 10, 2020          /s/ Timothy B. Fleming
                                Timothy B. Fleming (DC Bar No. 351114)
                                WIGGINS CHILDS PANTAZIS
                                FISHER GOLDFARB, PLLC
                                1211 Connecticut Avenue, N.W., Suite 420
                                Washington, DC  20036

17

(202) 467-4489

Dennis G. Pantazis (AL Bar No. ASB-2216-A59D)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, LLC   (*Lead Counsel*)
The Kress Building
301 19th Street North
Birmingham, AL  35203
(205) 314-0500

Richard D. Hailey (IN Bar No. 7375-49)
Mary Beth Ramey (IN Bar No. 5876-49)
RAMEY & HAILEY
3905 Founders Road
Indianapolis, 46268
(317) 582-0000

Robert M. Foote (IL Bar No. 03124325)
Craig S. Meilke (IL Bar No. 03127485)
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL  60134
(630) 232-7450

John A. Corr (PA Bar No. 52820)
LAW OFFICE OF JOHN A. CORR
301 Richard Way
Collegeville, PA 19426
(610) 482-4237

Stephen A. Corr (PA Bar No. 65266)
BEGLEY, CARLIN & MANDIO, LLP
680 Middletown Boulevard
Langhorne, PA  19047
(215) 750-0110

David C. Lee (TN Bar No. 015217)
422 South Gay Street, 3rd Floor
Knoxville, TN  37902
(865) 544-0101

Evan J. Yegelwel (FL Bar No. 319554)
TERRELL HOGAN ELLIS
  YEGELWEL, P.A.
233 East Bay Street
Blackstone Building, 8th Floor

18

Jacksonville, FL  32202
(904) 632-2424

Edward H. Rubenstone (PA Bar No. 16542)
EDWARD H. RUBENSTONE, LLC
812 N. Fairway Rd.
Glenside, PA 19038
(215) 887-9786

Donald J. Winder (UT Bar No. 3519)
WINDER & COUNSEL, PC
175 West 200 South, Suite 4000
P.O. BOX 2668
Salt Lake City, UT  84110-2668
(801) 322-2222

**Attorneys for the *Havlish* Plaintiffs**