## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: TERRORIST ATTACKS ON | : | |
| SEPTEMBER 11, 2001 | : | MDL 03-1570 (GBD)(SN) |

**This Document Relates To:**

*Havlish, et al. v. bin Laden, et al.,* **Case No. 03-CV-09848**
*Ashton, et al. v. al Qaeda Islamic Army, et al.*, **Case No. 02-CV-06977**
*Burnett, Sr., et al., v. Islamic Republic of Iran,* **Case No. 15-CV-9903**
*Burlingame, et al. v. bin Laden, et al.*, **Case No. 02-CV-07230**
*Bauer, et al. v. al Qaeda Islamic Army, et al*., **Case No. 02-CV-07236**
*O'Neill, Sr., et al. v. Republic of Iraq, et al.*, **Case No. 04-CV-1076**
*Federal Insurance Co., et al. v. al Qaida, et al.,* **Case No. 03-CV-06978**
----
*All other cases against the Islamic Republic of Iran*

## HAVLISH PLAINTIFFS MEMORANDUM OF LAW IN OPPOSITION TO THE *FEDERAL* PLAINTIFFS' PROPOSAL FOR ESTABLISHMENT AND ALLOCATION OF A COMMON BENEFIT FUND AND MOTION FOR RECONSIDERATION OF THE COURT'S SEPTEMBER 30, 2019 DECISION OR OBJECTIONS THERETO

**January 10, 2020**

# TABLE OF CONTENTS

1. NEITHER THE FEDERAL PLAINTIFFS NOR THE PEC HAS PROPERLY PRESENTED THE ISSUE OF ESTABLISHING A MDL-WIDE COMMON BENEFIT FUND APPLICABLE TO BOTH THE IRAN CASES AND THE CASES AGAINST THE SAUDI KINGDOM IN THEIR MOTIONS FOR RECONSIDERATION OR OTHERWISE STYLED SUBMISSION ............ 2

2. A COMMON BENEFIT FUND APPLICABLE ONLY TO HAVLISH COUNSEL IS APPROPRIATE BECAUSE THEY HAVE DELIVERED AN ACTUAL TANGIBLE BENEFIT TO RESPONDENTS' CLIENTS AND THE SAUDI CASES HAVE NOT ............ 4

3. A COMMON BENEFIT FUND APPLICABLE TO HAVLISH COUNSEL SHOULD BE DECIDED NOW AND SHOULD BE BASED ON A PERCENTAGE OF THE RECOVERY ............ 9

   CONCLUSION ............ 11

TABLE OF AUTHORITIES

**CASES**
*In re: 650 Fifth Avenue and Related Properties*, case number 08-cv-10934 (SDNY) ….. 7


**STATUTES**
28 U.S.C. §636(b)(1)(A)
……………………………………………………………………………………… 2, 3


**OTHER AUTHORITIES**
Duke Law Center For Judicial Studies "Standards and Best Practices for
Large and Mass-Tort MDLS" …………………………………………………… 5, 7, 10, 11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

IN RE: TERRORIST ATTACKS ON          :
SEPTEMBER 11, 2001                            :          MDL 03-1570 (GBD)(SN)

**This Document Relates To:**

*Havlish, et al. v. bin Laden, et al.,* Case No. 03-CV-09848
*Ashton, et al. v. al Qaeda Islamic Army, et al.*, Case No. 02-CV-06977
*Burnett, Sr., et al., v. Islamic Republic of Iran,* Case No. 15-CV-9903
*Burlingame, et al. v. bin Laden, et al.*, Case No. 02-CV-07230
*Bauer, et al. v. al Qaeda Islamic Army, et al.*, Case No. 02-CV-07236
*O'Neill, Sr., et al. v. Republic of Iraq, et al.*, Case No. 04-CV-1076
*Federal Insurance Co., et al. v. al Qaida, et al.,* Case No. 03-CV-06978
----
*All other cases against the Islamic Republic of Iran*

**HAVLISH PLAINTIFFS MEMORANDUM OF LAW IN OPPOSITION**
**TO THE *FEDERAL* PLAINTIFFS' PROPOSAL FOR ESTABLISHMENT**
**AND ALLOCATION OF A COMMON BENEFIT FUND AND MOTION**
**FOR RECONSIDERATION OF THE COURT'S**
**SEPTEMBER 30, 2019 DECISION OR OBJECTIONS THERETO**

The *Havlish* Plaintiffs, by and through their counsel, respond in opposition to the *Federal*

Plaintiffs' Proposal for Establishment and Allocation of a Common Benefit Fund and Motion

For Reconsideration (Doc. 5359).  This brief will address arguments raised by the *Federal*

Plaintiffs concerning their alternative proposal for establishment and allocation of a common

benefit fund, as well as related arguments on the same topic raised by the PEC in its Motion For

Reconsideration (Doc. 5361) to the extent the latter are not addressed in the separate *Havlish*

memorandum filed this day.

On September 30, 2019, this Court entered an Opinion & Order (Doc. No. 5180) granting

in part the *Havlish* Plaintiffs' motion for the creation of a common benefit fund.  Through their

motions, the *Federal* Plaintiffs and the PEC ask the Court to reconsider that decision.  None of

their arguments show that the Opinion & Order "is clearly erroneous or contrary to law," the

standard set forth in 28 U.S.C. §636(b)(1)(A). Nor do they involve the types of issues specified in §636(b)(1)(A) as reserved for the District Judge, which would convert the Opinion & Order into a Report and Recommendation, *see* Opinion & Order at n. 1, p. 1, to which they could have objected, but effectively did not.

1. **NEITHER THE *FEDERAL* PLAINTIFFS NOR THE PEC HAS PROPERLY PRESENTED THE ISSUE OF ESTABLISHING A MDL-WIDE COMMON BENEFIT FUND APPLICABLE TO BOTH THE IRAN CASES AND THE CASES AGAINST THE SAUDI KINGDOM IN THEIR MOTIONS FOR RECONSIDERATION OR OTHERWISE STYLED SUBMISSION**

At the outset, *Havlish* counsel submits that that this Court should not entertain the *Federal* Plaintiffs' "proposal" or "motion for reconsideration," or "objections" at all. The same is true of the PEC's motion for "reconsideration" insofar as it pertains to the establishment of a MDL-wide common benefit fund, and to the extent it seeks any ruling on the appropriate measure or method of computation of the common benefit fee payable to *Havlish* counsel. The reason for both is simple: neither the *Federal* Plaintiffs, nor the PEC, have properly raised these issues in connection with the Court's September 30, 2019 Opinion & Order establishing a common benefit fee payable to *Havlish* counsel. These parties' options at this time were to demonstrate that the Court's Opinion & Order warranted reconsideration by the District Judge on the grounds that the ruling "is clearly erroneous or contrary to law," because that is the standard set forth in 28 U.S.C. §636(b)(1)(A).[1] This point was explicitly set forth in the Opinion & Order

---

[1] 28 U.S.C. §636(b)(1)(A) provides:
(b)
(1) Notwithstanding any provision of law to the contrary—
(A) a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

itself.  To the extent the Opinion & Order treated issues that were reserved for the District Judge, as specified in §636(b)(1)(A), the ruling was to be treated as a "Report & Recommendation," and all objections thereto were to be addressed to the District Judge as well.  Nor does the Opinion & Order involve the types of issues specified in §636(b)(1)(A) reserved for the District Judge, which, if they were, would convert the Opinion & Order into a Report and Recommendation, to which objections addressed to the District Judge would be the required procedure.  *See* Opinion & Order at n. 1, p. 1.

Both the *Federal* Plaintiffs and the PEC have utterly failed to follow the provisions of §636(b)(1)(A), and, likewise, have failed to register objections to a Report & Recommendation. This is true not only as to form, but also as to substance.  Both the *Federal* Plaintiffs and the PEC spend little, if any, time objecting to the rulings that were made, but rather argue that *other* rulings should have been made – on issues they never placed before the Court.

The *Federal* Plaintiffs made a cursory nod toward the notion of re-styling its "proposal" and "motion for reconsideration" as "objections" to a report and recommendation, while the PEC did not even pretend to do so.  That course is inappropriate in any event because the Opinion & Order of September 30, 2019 does not address any of the type of issues that §636(b)(1)(A) reserves for a district judge (*i.e.*, "motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action").

The only issues that the *Federal* Plaintiffs and the PEC should have addressed was the manner in which the Opinion & Order warranted reconsideration as "clearly erroneous or

3

contrary to law." To some extent, the PEC did so, and those arguments are treated in a separate brief filed this day. However, the *Federal* Plaintiffs have raised issues wholly outside the scope of the Opinion & Order, and to the extent the PEC did so as well, the Court should reject their proposals and motions for reconsideration for this reason alone. It is, moreover, important to do so, because such new proposals or motions, couched in the general guise of a motion for reconsideration, deprive the *Havlish* Plaintiffs (and, for that matter, the other Respondent attorneys who have Saudi cases in this MDL) of the substance of the motions in the form of the meet-and-confer requirement and a fair chance to respond through the normal motion practice and procedures. This is particularly so where these briefs are the third set of papers on the subject of the *Havlish* common benefit fee motion, and yet it is the first time either the PEC or the *Federal* Plaintiffs have decided to raise these issues, apparently because they simply do not like the result in the September 30, 2019 Opinion & Order. That is not a good reason to invent new motion practice procedures out of wholecloth.

While reconsideration is sometimes warranted when there are new or additional facts or legal principles that the Court did not take into account when rendering its decision, that is not the case here. Respondents' motions consist primarily of repackaged versions of arguments made in their previous briefing that the Court has already considered and rejected. Those arguments are just as legally and factually defective now as they were then, and the motions to reconsider should be denied.

2.    **A COMMON BENEFIT FUND APPLICABLE ONLY TO *HAVLISH* COUNSEL IS APPROPRIATE BECAUSE THEY HAVE DELIVERED AN ACTUAL TANGIBLE BENEFIT TO RESPONDENTS' CLIENTS AND THE SAUDI CASES HAVE NOT**

It is axiomatic that in order to receive compensation from a common benefit fund, the attorney's work must have delivered an actual tangible benefit to those from whose claims the

compensation springs.  The Duke Law Center For Judicial Studies, "Standards and Best

Practices for Large and Mass-Tort MDLS" cited by the PEC, states:

> During the litigation, some attorneys will devote themselves entirely to the case from the
> outset, … while others … will benefit from the work done by other counsel. …. [A]
> common benefit fund (CBF) is meant to compensate attorneys for the … work performed
> for the common benefit of all plaintiffs and their counsel. …. [T]he common benefit
> doctrine … holds that person who obtain the benefits of a lawsuit without contributing to
> defraying its costs are unjustly enriched at the successful litigant's expense.

*See* Ex. 1, Duke Law Center For Judicial Studies, "Standards and Best Practices for

Large and Mass-Tort MDLS" (excerpt) at p. 66.

This has undoubtedly occurred here, but Respondents flip the doctrine on its head to argue that

only they merit payment, not *Havlish* counsel.  They claim that it is only they who work for the

benefit of all plaintiffs, but this is plainly not true, as discussed above and in *Havlish* counsel's

previous submissions on this matter.  The reason that only *Havlish* counsel is presently entitled

to a common benefit fee is that *Havlish* is the only counsel that has produced a common benefit.

It is not common work that creates the fee, it is the common benefit: "The CBF's function is to

compensate plaintiffs' counsel for their work based on their relative *contributions to the outcome

of the case*.  Its purpose is to ensure that all who benefit from the CBF will have contributed

proportionately to the costs of litigation, which is particularly important in a mass-tort MDL,

where the value of bellwether trials often exceeds the value of the particular claims being tried."

Ex. 1, Duke Law Center For Judicial Studies, "Standards and Best Practices for Large and Mass-

Tort MDLS" at p. 68.  This MDL is somewhat unique, but the above principles apply very well:

in this MDL, *Havlish* was not just the "bellwether trial," it provided *res judicata* for all of

Respondents' cases.

   Not only do Respondents object to the creation of a common benefit fund intended solely

to compensate *Havlish* counsel for the benefits bestowed on Responding Plaintiffs, they contend

that they, too, should have access to the fund at this time because they have performed common work in litigating against other defendants on behalf of MDL claimants.  However, the purpose of a common benefit fund is not to reward *common work*, but rather to reward work that provides a *common benefit*.

While the common work undertaken by the PEC *may* at some point yield a benefit to the plaintiffs in the MDL, it has not done so yet.  Nevertheless, the PEC proposes an alternative common benefit fund under which a portion of all recoveries awarded to all MDL claimants would be placed in a fund administered by a special master.  From that fund, the PEC would receive compensation for their labor which so far has *borne no fruit* and is not likely to deliver any benefit for many years, if ever.  The PEC self-servingly conflates the basic concept of a common *benefit* fee with another concept that does not exist: that the reward should go to those who merely engage in common benefit *work* and who, they claim, have done "exponentially" more such work than the *Havlish* lawyers.[2]  *See, e.g.*, PEC Motion at 9-10.  Setting aside the completely speculative nature of this assertion, Respondents improperly substitute common *work* for common *benefit*.  There is no reward for contingency fee work that does not result in a recovery.  All plaintiffs' attorneys know that, and they voluntarily take that financial risk. "When there is no recovery by the plaintiffs, there will be no common benefit funding.  Instead, plaintiffs' counsel will bear the loss of sunk costs and invested time; it is not expected that the judge will order reimbursement from the MDL parties to the leadership team members and other

---

[2] In its motion for reconsideration, the PEC attempts to justify its attempted appropriation of the *Havlish* common benefit fund by claiming that the non-*Havlish* PEC members have "incurred more risk than have *Havlish* counsel" who conducted an international investigation of the world's leading state sponsor of terrorism that controls myriad terrorist groups worldwide, an investigation involving witnesses and others who the Iranian regime targeted for surveillance, arrest, kidnapping, torture, and murder.

attorneys that bore these costs."  Ex. 1, Duke Law Center For Judicial Studies, "Standards and Best Practices for Large and Mass-Tort MDLS," at p. 71.

Here, the inequity of Respondents' alternative common benefit fund concept is made plain when considering the *Havlish* Plaintiffs' potential recovery in *In re: 650 Fifth Avenue and Related Properties*, S.D.N.Y. case number 08-cv-10934, for which the PEC repeatedly criticizes *Havlish* counsel.  In the *650 Fifth Avenue* litigation, which is not part of this MDL, several groups of terrorism victims ranging from the 1983 Marine Barracks bombings victims to the 1996 Khobar Towers bombing victims, and a number of smaller groups, who hold judgments against Iran are attempting to collect their judgments from two entities as proxies for the Iranian government.  The PEC and Respondents were not eligible to participate in that collection effort due to their self-imposed delay in finalizing their judgments, a delay they attempted to force upon the *Havlish* Plaintiffs by arguing to the Court that a *Havlish* judgment would be somehow damaging to all MDL claimants.  If the PEC had won the argument on that issue, it is likely that the *Havlish* Plaintiffs would also have been precluded from the opportunity to participate in a potential *650 Fifth Avenue* recovery.  In the event the *650 Fifth Avenue* litigation is successful, the *Havlish* Plaintiffs will have obtained a recovery *in spite of* efforts by the PEC to convince the Court to deny the *Havlish* request to proceed to judgment.  Nevertheless, the broader common benefit fund proposed by the PEC and *Federal* Plaintiffs would require the *Havlish* Plaintiffs to compensate the very members of the PEC who advocated against the *Havlish* Plaintiffs' interests (and, as it turns out, against the interests of Responding Plaintiffs themselves).  Under these circumstances, Respondents' contention that equity and fairness demand this result is absurd. The exact same may be said about all of the *Havlish* group's other attempts to collect for their clients in the U.S. and abroad.

The *Federal* Plaintiffs spend most of their brief recounting the history of the litigation and informing the Court about the USVSST Fund and the recent amendments.  But the main points of the *Federal* Plaintiffs' proposal/motion/objection are three: (1) that any common benefit fund must benefit all PEC members, (2) that the common benefit fees be allocated according to the PEC members' contributions to the MDL as a whole, and (3) that a special master be appointed to oversee the common benefit fund.  If the Court entertains this proposal/motion/objection at all, which it should not for the reasons stated above, it should reject them.

The *Federal* Plaintiffs' and PEC's proposals to create a common benefit fund for all to participate in, even if such proposals were properly set forth in these papers, should be rejected because they posit a false equivalency between the Iran cases in this MDL and the Saudi cases. There is no need to construct a complex mechanism for the Iran cases, although such may be appropriate for the Saudi cases.  The two sides of this MDL are very different because of the unrelated Defendants and the paths the cases against each has taken, not least because Iran is a designated state sponsor of terrorism unwilling to submit to the jurisdiction of American courts and the Kingdom of Saudi Arabia is not.  Further, the Saudi cases involve ongoing litigation, indeed, seemingly more years of it, whereas the Iran cases are rapidly concluding.  Whereas the considerations pertaining to the Iran cases are now quite clear, and the cases are being resolved by judgment as to all plaintiffs who have sued Iran, and the monetary recoveries are also manifesting, it makes no sense to subject them to the complicated structure the Respondents are proposing.  All the information necessary to decide at least the initial common benefit issues for the Iran cases is now, or very soon will be, present and knowable.

Not least among these is which attorneys have actually produced a common *benefit*, and

which have not.  The common benefit issues pertaining to the Saudi cases are more complex because there are many more attorneys involved who have actually worked on the cases, the litigation path has been different, all the other factors are either problematic or unknowable at present, and there has been produced, to date, no common *benefit* at all.  Because this MDL involves two unrelated defendants, and the production of actual common benefit is already occurring on the Iran side, whereas on the Saudi side, it is problematic and appears likely not to manifest, if at all, until years into the future, the common benefit fee question may be logically handled with separate approaches.  In this way, this MDL is indeed different from the typical mass tort or products liability MDL.  As stated above, however, the *Federal* Plaintiffs and the PEC have not provided adequate detail, consultation, or time for *Havlish* to evaluate fully evaluate or take a position on any common benefit fund structure on the Saudi side of this MDL. Accordingly, *Havlish* Plaintiffs will reserve comment on a specific structure until the time is appropriate and a proposal is properly presented.

The *Federal* Plaintiffs and the PEC and Respondent attorneys all have clients in the Iran cases, and all are getting judgments based entirely on *Havlish*.  Indeed, *Havlish* provides not just the evidence, Findings of Fact and Conclusions of Law, and legal precedent for their judgments, but comprises *res judicata* for their cases.  Consequently, the *Havlish* attorneys have produced actual, tangible common benefit for each and every Iran claimant in this MDL.  The very fact that a tidal wave of new plaintiffs are rolling into this MDL and requesting judgments on the basis of *Havlish* is all the Court really needs to support overwhelmingly the September 30, 2019 Opinion & Order.

3.    A COMMON BENEFIT FUND APPLICABLE TO *HAVLISH* COUNSEL SHOULD BE DECIDED NOW AND SHOULD BE BASED ON A PERCENTAGE OF THE RECOVERY

The time is ripe for deciding the amount of the common benefit fee payable to *Havlish*, at

least as it pertains to the first three rounds of payments from the USVSST Fund.

As observed by the Duke Law Center For Judicial Studies, "Standards and Best Practices for

Large and Mass-Tort MDLS":

> the determination of the assessment percentage often is made after there is a global
> settlement or judgment, when the transferee judge has a firm grasp of the value of the
> PSC work and the level of expenses.  The court may want to make this determination
> earlier, however, if individual cases begin to settle or are resolved through trial.

Ex. 1 at p. 81.  Here, the Court knows, or will know, every fact that is pertinent: the scope of

work done by *Havlish*; the lack of, or minimal amount of, substantial work done by

Respondents' counsel in the Iran cases; and the amount of common benefit bestowed upon the

Respondent parties by virtue of cash payments from the USVSST Fund in Rounds One, Two,

and Three.

Indeed, to delay the decision, as proposed by the PEC and the *Federal* Plaintiffs, would

be to *create the very same claw-back problem* that the PEC claims to fear.  The PEC argued:

"This Court's ruling threatens to create a similar problem: *Havlish* counsel seek to be paid for

their Iran work now, leaving Respondents' counsel to later seek to claw back money from

*Havlish* counsel to compensate Respondents' counsel for common benefit work done in the

balance of the MDL."  PEC Motion, n. 8 at p. 11.  This argument is illogical and upside-down.

If the common benefit fee award to *Havlish* is not created now, *Havlish* will be certainly be left

"to later seek to claw back money from" Respondent's counsel when the entire MDL is

concluded – doubtless, years from now, and maybe never successfully from the perspective of

the Saudi cases.  On the other hand, *if, as, and when* the *Federal* Plaintiffs and the PEC actually

produce a common benefit in the Saudi cases, there will be – *right then and there* – money

recovered from the Saudi defendants to compensate the *Federal* Plaintiffs' and PEC counsel for

their common benefit work.  Indeed, *Havlish* counsel has repeatedly offered exactly this sort of

logical reciprocity.

The PEC and the *Federal* Plaintiffs would both have this Court now create a complex common benefit fee mechanism that requires the supervision of a special master.  Whatever the merits of those sketchy plans, about which *Havlish* as yet takes no position as to the Saudi side of this MDL, it is clear that the cases on the Iran side of this MDL need not, and should not be, so complicated.  The common benefit fee should be a straightforward percentage of the recovery, calculated on the whole of the Respondents' recovery and taken from the Respondent attorneys' respective contingent attorney fees.  There is no reason why such a straightforward and uncomplicated approach should not be utilized in this case.  The percentage of the recovery method is, in any event, the preferred methodology in most federal courts and has been approved by the Supreme Court.  *See generally*, Ex. 1, Duke Law Center For Judicial Studies, "Standards and Best Practices for Large and Mass-Tort MDLS," at pp. 83-85.

As stated previously, deriving the actual percentage to be used is beyond the scope of this briefing.

### CONCLUSION

For the reasons stated above, the *Federal* Plaintiffs and the PEC Motions for Reconsideration should be denied and/or their proposals regarding a common benefit fund and/or their objections to the Court's September 30, 2019 Opinion and Order or Report and Recommendation should be denied.

Respectfully Submitted,

Date: January 10, 2020

/s/ Timothy B. Fleming
Timothy B. Fleming (DC Bar No. 351114)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, PLLC
1211 Connecticut Avenue, N.W., Suite 420
Washington, DC  20036

11

(202) 467-4489

Dennis G. Pantazis (AL Bar No. ASB-2216-A59D)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, LLC   (*Lead Counsel*)
The Kress Building
301 19th Street North
Birmingham, AL  35203
(205) 314-0500

Richard D. Hailey (IN Bar No. 7375-49)
Mary Beth Ramey (IN Bar No. 5876-49)
RAMEY & HAILEY
3905 Founders Road
Indianapolis, 46268
(317) 582-0000

Robert M. Foote (IL Bar No. 03124325)
Craig S. Meilke (IL Bar No. 03127485)
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL  60134
(630) 232-7450

John A. Corr (PA Bar No. 52820)
LAW OFFICE OF JOHN A. CORR
301 Richard Way
Collegeville, PA 19426
(610) 482-4237

Stephen A. Corr (PA Bar No. 65266)
BEGLEY, CARLIN & MANDIO, LLP
680 Middletown Boulevard
Langhorne, PA  19047
(215) 750-0110

David C. Lee (TN Bar No. 015217)
422 South Gay Street, 3rd Floor
Knoxville, TN  37902
(865) 544-0101

Evan J. Yegelwel (FL Bar No. 319554)
TERRELL HOGAN ELLIS
   YEGELWEL, P.A.
233 East Bay Street
Blackstone Building, 8th Floor

12

Jacksonville, FL  32202
(904) 632-2424

Edward H. Rubenstone (PA Bar No. 16542)
EDWARD H. RUBENSTONE, LLC
812 N. Fairway Rd.
Glenside, PA 19038
(215) 887-9786

Donald J. Winder (UT Bar No. 3519)
WINDER & COUNSEL, PC
175 West 200 South, Suite 4000
P.O. BOX 2668
Salt Lake City, UT  84110-2668
(801) 322-2222

**Attorneys for the *Havlish* Plaintiffs**