UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN) (and member case *Betru et al. v. Islamic Republic of Iran,* 18-cv-8297 (GBD)(SN))

**The *Ashton XVII* and *Betru VI* Wrongful Death Plaintiffs' Motion for Final Judgments Against the Islamic Republic of Iran**

For the reasons set forth below, and the statements contained in the declaration of James P. Kreindler, Esq. ("Kreindler Declaration") and exhibits thereto, the *Ashton XVII* and *Betru VI* plaintiffs (that is, those plaintiffs set forth in Exhibits A-1, A-2, B-1 and B-2 to the Kreindler Declaration), by and through their counsel, Kreindler & Kreindler LLP, respectfully move this Court for an Order:

1) Awarding them economic loss to damages as supported by the expert analysis and reports attached as exhibits to the Kreindler Declaration;

2) Awarding them compensatory damages for conscious pain and suffering in the same amounts previously awarded by this Court to other *Ashton* plaintiffs in those cases where such damages had not previously been awarded;

3) Awarding them pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

4) Granting them permission to seek punitive damages, economic damages (if not sought herein), and other appropriate damages at a later date;

1

5) Finding that service of process was properly effected upon the Iran Defendants in accordance with 28 U.S.C. § 1608(a) for sovereign defendants; and,

6) Granting permission for all other plaintiffs in this action not appearing on Exhibits A-1, A-2, B-1 and B-2 to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

This motion is made on behalf of the claimants listed in Exhibits A-1, A-2, B-1 and B-2 attached to the Kreindler Declaration ("*Ashton XVII / Betru VI* Plaintiffs"), in light of this Court's previous order granting permission to allow remaining plaintiffs in the case to move for this relief. *See* 03-md-1570 (S.D.N.Y.) (GBD) (SN), ECF No. 3300, Filed 06/16/2016.[1]

As the awards set forth in the proposed order represent the only direct recovery against Iran on behalf of the *Ashton XVII / Betru VI* Plaintiffs listed in Exhibits A-1, A-2, B-1 and B-2, the proposed order will constitute final awards and judgments against the Islamic Republic of Iran ("Iran") for those plaintiffs listed in Exhibits A-1, A-2, B-1 and B-2 to the Kreindler Declaration.

I. **Procedural Background**

On September 4, 2002, the *Ashton* Plaintiffs filed their first complaint against the sponsors of the September 11, 2001 terrorist attacks, which included allegations against Iran. *See* 02-cv-6977 (S.D.N.Y.) ECF No. 1. Plaintiffs, both United States nationals and non-nationals, asserted federal jurisdiction pursuant to, among other things, the Alien Tort Statute (28 U.S.C. § 1350) ("ATS"), the Foreign Sovereign Immunities Act (28 U.S.C. § 1605(a)) ("FSIA") and the Torture Victim Protection Act (28 U.S.C. § 1350 note) ("TVPA"). *Id.* at 28, 39 – 40, 43, 48. Iran

---

[1] References to the 03-md-1570 docket entries will be noted only by the ECF document number. Any reference to a prior Order or filing on a different docket will include that docket number as well as the ECF document number.

was listed as a named defendant in the *Ashton* Plaintiffs' Consolidated Amended Complaint, filed on March 6, 2003, with the same jurisdictional assertions. *See* 02-cv-6977 (S.D.N.Y.) ECF No. 11-2 at 17, ECF No. 11-5 at 45 - 49. This Consolidated Amended Complaint (the "CAC") was served in compliance with FSIA requirements through diplomatic channels, but Iran has never answered. *See* 02-cv-6977 (S.D.N.Y.), ECF No. 424 at 2; *see also* 02-cv-6977 (S.D.N.Y.) ECF No. 358. The *Ashton* Plaintiffs moved for a Certificate of Default, which the Clerk of the Court issued. *See* 02-cv-6977 (S.D.N.Y.), ECF No. 651.

At the time that the CAC was first filed against Iran, the FSIA functioned as a pass-through statute, denying immunity for claims arising from certain acts of terrorism or material support for terrorism if the United States had designated the foreign sovereign a state sponsor of terrorism, thus allowing a plaintiff to pursue a claim in the federal courts in suits against a nation-state that had been officially designated a state-sponsor of terrorism, such as Iran. *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 221(a), 110 Stat. 1214, 1241. The substantive causes of action detailed in the CAC were for common-law wrongful death based on intentional murder, survival damages and injuries and assault and battery; violation of the Anti-Terrorism Act (18 U.S.C. § 2333); violation of the TVPA; and violation of the FSIA. *See* 02-cv-6977 (S.D.N.Y.) ECF No. 11-5 at 245 – 50.

While the Anti-Terrorism Act applies only to claims brought on behalf of a "national of the United States … or his or her estate, survivors, or heirs" (18 U.S.C. § 2333(a)), and the FSIA is primarily only available to claimants or victims who were "at the time of the act … a national of the United States" (18 U.S.C. § 1605(a)(2)(A)(ii)), the Alien Tort Statue confers district courts with "original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. A defendant may thus be

liable to a non-United States national for conduct that is "either a direct violation of the law of nations or the aiding and abetting of another's violation of the law of nations." *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 166 (2d Cir. 2015); *accord Licci by Licci v. Lebanese Canadian Bank, SAL (Licci II )*, 834 F.3d 201, 213 (2d Cir. 2016).[2] Accordingly, both United States nationals and non-United States nationals remained plaintiffs in the *Ashton* action against Iran.[3]

      Based on evidence and arguments submitted by various plaintiffs in this consolidated multi-district litigation arising out of the September 11, 2001 terror attacks, the *Ashton* Plaintiffs moved for a judgment of liability against Iran for claims arising out of the deaths of the plaintiffs' decedents. ECF No. 3008. In their motion for a liability default judgment, the *Ashton* Plaintiffs relied on the Certificate of Default entered in the *Ashton* case, which was premised on the CAC that Iran had never answered. ECF No. 2970 at 2. They then moved for a default judgment of liability against Iran only as to those causes of action established under the FSIA. ECF No. 2970 at 2, 10 – 18. This Court granted that motion for a default judgment of liability. ECF No. 3014.[4]

---

[2] Also, at the time that suit was filed against Iran, TVPA was available to non-United States citizens for suits against foreign sovereigns and other entities, not just against individuals, though that has since changed. *See Mohamad v. Palestinian Authority*, 566 U.S. 449 (2012).

[3] The United States Victims of State Sponsored Terrorism Fund is not limited to only United States nationals. *See* USVSST Fund FAQs 2.1, 2.6 at http://www.usvsst.com/faq.php (last accessed Jan. 13, 2020).

[4] The *Ashton* Plaintiffs at the same time also moved for permission to file an Amended Consolidated Complaint against Iran, asserting the same jurisdictional allegations as in the prior complaints, adding a claim based on the new provision of the FSIA enacted subsequent to the filing of the original suits against Iran and adopting and incorporating by reference the prior *Ashton* allegations against Iran. ECF Nos. 2968, 2968-1 at 1 - 2 (adding allegations under 28 U.S.C. § 1605A). The Court issued an Opinion and Order that allowed the *Ashton* Plaintiffs to amend their pleadings as to Iran without requiring service of the amended pleadings. ECF No. 3227. Plaintiffs thereafter filed the Amended Consolidated Complaint on the docket. ECF. No. 3237.

Thereafter, the *Ashton* Plaintiffs moved for partial summary judgment for the conscious pain and suffering that victims murdered on September 11, 2001 suffered before death, which this Court granted, and certain *Ashton* Plaintiffs moved for default judgments on economic damages suffered as a result of their decedents' wrongful deaths as well. This Court granted those motions. *See* ECF No. 3229 (adopting December 28, 2015 Report and Recommendation awarding damages for conscious pain and suffering) and No. 3356 (awarding damages for economic loss). In addition, certain *Ashton* Plaintiffs moved for solatium damages suffered by immediate family members and those non-immediate family members who were the "functional equivalent" of immediate family members eligible to recover under the terrorism exception to the FSIA. *See* ECF Nos. 3295 (Motion for Final Judgment for *Ashton I* claimants including claims for solatium damages); 3356 (Motion for Final Judgment for *Ashton II* claimants including claims for solatium damages); 3686 (Motion for Final Judgment for *Ashton III* claimants solely for solatium damages); 3977 (Motion for Final Judgment for *Ashton IV* claimants solely for solatium damages); 4058 (Motion for Final Judgment for *Ashton V* claimants, the "functional equivalent" of immediate family members, solely for solatium damages); 4100 (Motion for Final Judgment for *Ashton VI* claimants solely for solatium damages); 4120 (Motion for Final Judgment for *Ashton VII* claimants solely for solatium damages); 4149 (Motion for Final Judgment for *Ashton VIII* claimants solely for solatium damages); 4158 (Motion for Final Judgment for *Betru (Ashton IX)* claimants solely for solatium damages); 4478 (Motion for Final Judgment for *Ashton X* claimants solely for solatium damages); 4601 (Motion for Final Judgment for *Ashton XI* claimants solely for solatium damages); 4716 (Motion for Final Judgment for *Ashton XIII* claimants solely for solatium damages); 4890 (Motion for Final Judgment for *Ashton XIII* claimants solely for solatium

damages); 5094 (Motion for Final Judgment for *Ashton XIII* claimants solely for solatium damages)[5]; 5134 (Motion for Final Judgment for *Ashton XV* clamants solely for solatium damages) and 5428 (Motion for Final Judgment for *Ashton XVI* claimants solely for solatium damages).

This Court granted these motions, on behalf of both United States nationals and non-United States nationals, finding that an award to the immediate family members of each decedent was proper and that prejudgment interest on the solatium loss amounts was warranted. *See* ECF Nos. 3300; 3387; 3706; 3979; 4106; 4127; 4152; 4173 (granting in part and denying in part motion for "functional equivalent" of immediate family members); 4170; 4497; 4880; 5101; 5137; and 5387 (granting in part and denying in part motion for "functional equivalent" of immediate family members).[6]

For the reasons below as well as those set forth in the prior motions for summary judgment on liability and prior motions for judgment for conscious pain and suffering and economic loss made on behalf of other *Ashton* wrongful death plaintiffs, the *Ashton XVII / Betru VI* Plaintiffs listed in Exhibits A-1, A-2, B-1 and B-2 to the Kreindler Declaration now move this Court to grant the proposed Order awarding them economic loss damages, compensatory damages for the conscious pain and suffering experienced by those individuals killed on September 11, 2001 in the same amount as awarded to other plaintiffs (if not already awarded), directing that pre-judgment interest be assessed at 4.96 percent per annum and finding that

---

[5] Three different subgroups of *Ashton* plaintiffs were inadvertently captioned "*Ashton XIII*" – the 07/31/2019 *Ashton XIII* (ECF No. 4716 et seq.), the 08/19/2019 *Ashton XIII* (ECF No. 4890 et seq.) and the 09/06/2019 *Ashton XIII* (ECF No. 5094 et seq.).

[6] This Court has not yet issued a decision on ECF No. 5428, filed on behalf of non-immediate family members of individuals killed on September 11, 2001.

service of process was properly effected on Iran pursuant to the FSIA (28 U.S.C. § 1608(a)).[7] The *Ashton* Plaintiffs also ask for permission to continue to submit applications in subsequent stages on behalf of those claimants not included in the attached exhibits, should any other applications be warranted.

## II. Damages

Under 28 U.S.C. § 1605A ("Section 1605A"), which, among other claims, applies to the suit against Iran, available damages include "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(a)(1) and (c)(4). That is, the "estates of those who [died] can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." *Valore v. Islamic Republic of Iran*, 700 F.Supp.2d 52, 83 (D.D.C. 2010). While a claim under Section 1605A is available only to a "claimant or … victim [who] was … a national of the United States; a member of the armed forces; or otherwise an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment," under the Alien Tort Statute, district courts have jurisdiction over claims brought by non-United States nationals who do not fit the Section 1605A categories. *See* 28 U.S.C. § 1350.

Those *Ashton XVII / Betru VI* Plaintiffs set forth in Exhibits A-1, A-2, B-1 and B-2 are all representatives of the estates of victims who were murdered on September 11, 2001 ("9/11 Decedents") and claims on behalf of the 9/11 Decedents are asserted by those estate

---

[7] This Court previously granted final damages judgments to non-United States nationals who, unlike in other cases, had argued that jurisdiction could be maintained under the Alien Tort Statute. *See, e.g.,* ECF No. 4716 at 5; ECF No. 4880 at 31 – 33 (granting ECF No. 4716); *compare with Hoglan v. Rafsanjani*, 759 Fed. Appx. 99 (2d Cir. 2019) (affirming denial of damages to non-United States nationals under the FSIA).

representatives. As liability has been established in this matter, each moving plaintiff is now entitled to damages in the amounts set forth on Exhibits A-1, A-2, B-1 and B-2, which reflects (1) the damage amounts either previously awarded by this Court for the conscious pain and suffering suffered by the 9/11 Decedents or the compensatory damages now sought for conscious pain and suffering and (2) the economic loss supported by the expert economic analysis and reports submitted herewith. Plaintiffs identified in Exhibits A-1, A-2, B-1 and B-2 are therefore entitled to compensation for their conscious pain and suffering and economic damages and are also entitled to prejudgment interest.

### A. Conscious Pain and Suffering

Plaintiffs identified in Exhibits A-1, A-2, B-1 and B-2 are all estates of 9/11 Decedents, who suffered through the September 11, 2001 terrorist attacks and were murdered on that day. This Court has previously assessed claims for the extraordinary conscious pain and suffering experienced by those who lost their lives on September 11, 2001. ECF Nos. 2618 at 7 – 9. For the reasons that the Court has previously articulated, those 9/11 Decedents' estates that have not already been awarded damages for conscious pain and suffering should receive compensatory damages amounts commensurate with other victims killed on September 11, 2001 in the terrorist attacks. This Court has previously awarded 9/11 Decedents $2,000,000 per estate for each decedent's conscious pain and suffering. ECF Nos. 2618, 2624 at 1, 3 – 4. Accordingly, *Ashton* Plaintiffs now respectfully request that this Court grant those 9/11 Decedents whose estates are set forth in Exhibits A-1, A-2, B-1 and B-2 and who have not received an award for conscious pain and suffering a compensatory damages judgment of $2,000,000 for each 9/11 Decedent.

## B. Economic Damages

Economic damages are specifically contemplated in a suit against an officially designated state-sponsor of terrorism such as Iran. *See* 28 U.S.C. § 1605A(c). The economic damages provision is "designed to compensate [a] decedent's heirs-at-law for economic losses which result from [the] decedent's premature death." *Flatow v. Islamic Republic of Iran,* 999 F. Supp. 1, 27 (D.D.C. 1998). Accordingly, "the beneficiaries of each decedent's estate [are] … entitled to recover the present value of economic damages, including lost wages that the decedents might reasonably have been expected to earn but for their wrongful deaths." *Valore,* 700 F. Supp. 2d at 81-82, citing *Heiser v. Islamic Republic of Iran,* 466 F.Supp.2d 229 (D.D.C. 2006.) Thus, for example, United States District Court Royce C. Lambreth of the District of Columbia, in a series of decisions issuing final judgments against the Iran, has held Iran "liable for the economic damages caused to decedents' estates." *Roth v. Islamic Republic of Iran,* 78 F. Supp. 3d 379, 399-400 (D.D.C. 2015), quoting *Valore,* 700 F.Supp.2d at 78.[8]

Previously, this Court awarded economic damages in prior claims against Iran for the "economic losses stemming from the wrongful death of the decedent[.]" ECF No. 2623 at 2-3. In doing so, it adopted the economic loss calculations set forth in the plaintiffs' economic expert reports. For those 9/11 Decedents on Exhibits A-1, A-2, B-1 and B-2 for whom economic damages are sought, the economic loss amount was calculated based on updated, present-value figures of either the economic damages calculation previously provided by an economic expert or generated by the September 11 Victim Compensation Fund ("VCF").

---

[8] In adopting this estate-accumulations calculation, Judge Lambreth recognized that case law under the FSIA was "develop[ing] … a federal standard" and looked to the law of the District of Columbia, which it concluded was "an appropriate model" to adopt and which calculated economic damages as the loss of accretions to the decedent's estate. *Roth,* 78 F.Supp.3d at 82.

In this case, the *Ashton* Plaintiffs retained the services of John E. Beauzile, who has a Master's Degree in Actuarial Science from Columbia University ("Expert") and expertise in mathematics, economics, accounting, applied statistics, financial and economic modeling as well as models for life contingencies, among other things, to evaluate the present value of the previously-calculated economic losses resulting from decedent's death as a result of the September 11, 2001 terrorist attacks. Kreindler Decl., Exhibit C at ¶¶14-22.

As described in more detail in the Kreindler Declaration, and Mr. Beauzile's declaration (Exhibit C to the Kreindler Decl.), relying on materials provided by plaintiffs, economic expert reports, VCF applications, VCF work-papers and distribution plans, VCF determinations, underlying economic documents and VCF valuation files, and applying the methodologies and assumptions described in Mr. Beauzile's declaration, the economic damages amounts set forth in Exhibits A-1, A-2, B-1 and B-2 are accurate to a reasonable degree of accounting and actuarial certainty. Kreindler Decl., Exhibit C (Beauzile Decl.) at ¶ 9. The updated reports are provided as Exhibit D to the Kreindler Decl.

Accordingly, *Ashton* plaintiffs now respectfully request that this Court order economic loss awards to those 9/11 Decedents whose estates are set forth in Exhibits A-1, A-2, B-1 and B-2 in the amounts set forth therein.

**C. Punitive Damages**

Plaintiffs are also entitled to punitive damages. *See* 28 U.S.C. § 1605A(c)(4). Previously in this case, the magistrate judge explained that a "3.44 ratio 'has been established as the standard ratio applicable to cases arising out of' terrorist attacks." ECF No. 2618 at 13 (quoting *Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011)). This Court adopted that recommendation and awarded punitive damages on each compensatory damages category at a ratio of 3.44 (punitive) to 1 (compensatory). ECF No. 2623 at 2. The

10

Court has applied that ratio to awards for plaintiffs in other related cases. *See, e.g.*, ECF No. 3175 at 3 (Magistrate Judge Maas Report and Recommendation to apply a 3.44 punitive multiplier); ECF No. 3229 at 1 (Judge Daniels adopting in its entirety Judge Maas's Report and Recommendation to apply a 3.44 multiplier); ECF No. 3300 at 1 and Exhibit A (Judge Daniels applying 3.44 punitive multiplier to claims in *Ashton*).

However, in another case in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, a different magistrate judge recommended that the plaintiffs' request for punitive damages be denied without prejudice. ECF No. 3363 at 28. Judge Daniels adopted that recommendation, denying without prejudice the plaintiffs' request for punitive damages. ECF No. 3384 at 6.

In light of the Court's decision in related litigation to defer determination of punitive damage issues until a later stage of the litigation, the *Ashton* Plaintiffs request permission to address the issue of punitive damages at a later date. *See, e.g.*, ECF No. 3666 (Judge Daniels' order authorizing plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

**D. Prejudgment Interest**

On the issue of prejudgment interest, a December 28, 2015 Report and Recommendation, adopted by this Court, concluded that to the extent the *Ashton* wrongful death plaintiffs' claims arose out of injuries in New York State, the rate of prejudgment interest was 9 percent per annum from September 11, 2001 until the date judgment was entered, and to the extent the injuries arose elsewhere, 4.96 percent interest per annum compounded annually was appropriate. *See* ECF No. 3175 at 1 – 2. Subsequently, however, this Court concluded that the rate of prejudgment interest of 4.96 percent was more appropriate. ECF No. 3384 at 6. *See* 03-md-1570 (11-cv-7550).

Accordingly, the *Ashton XVII / Betru VI* Plaintiffs asks that this Court direct that prejudgment interest of 4.96 percent per annum on their awards running from September 11, 2001 until the date of judgment, as was done previously in the *Ashton I-XVI* cases, as well as for other plaintiffs in this consolidated litigation.

### III.   Conclusion

For all of the reasons herein, as well as those set forth in the previous submissions of the *Ashton* plaintiffs and other plaintiffs, the *Ashton XVII / Betru VI* Plaintiffs respectfully request that this Court grant the proposed order and

1) Award them economic loss to damages as supported by the expert analysis and reports attached as exhibits to the Kreindler Declaration;

2) Award them compensatory damages for conscious pain and suffering in the same amounts previously awarded by this Court to other *Ashton* plaintiffs in those cases where such damages had not previously been awarded;

3) Award them pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

4) Grant them permission to seek punitive damages, economic damages (if not sought herein), and other appropriate damages at a later date;

5) Find that service of process was properly effected upon the Iran Defendants in accordance with 28 U.S.C. § 1608(a) for sovereign defendants; and,

6) Grant permission for all other plaintiffs in this action not appearing on Exhibits A-1, A-2, B-1 and B-2 to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

| | |
|---|---|
| Dated: New York, New York<br>January 14, 2020 | Respectfully submitted,<br><br>KREINDLER & KREINDLER LLP<br><br>BY: <u>  /s/ James P. Kreindler  </u><br>James P. Kreindler, Esq.<br>750 Third Avenue, 32nd Floor<br>New York, New York 10017<br>Tel: (212) 687-8181<br>*Counsel for Ashton Plaintiffs* |