## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) <br> ECF Case |

This document relates to:

*Maureen Moody-Theinert et al. v. Islamic Republic of Iran*, No. 1:18-cv-11876 (GBD) (SN)

### THE *MOODY-THEINERT* PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL FINAL JUDGMENT III

ANDERSON KILL P.C.
Jerry S. Goldman, Esq.
Vianny M. Pichardo, Esq.
Bruce E. Strong, Esq.
Stephen Wah, Esq.
1251 Avenue of the Americas
New York, NY  10020
Tel: 212-278-1000
Fax: 212-278-1733
Email:  jgoldman@andersonkill.com
          vpichardo@andersonkill.com
          bstrong@andersonkill.com
          swah@andersonkill.com
*Attorneys for Plaintiffs*

Dated:   New York, New York
           January 14, 2020

## <u>TABLE OF CONTENTS</u>

**Page**

**I.**    Procedural Background...................................................................................................... 3

**II.**    Damages............................................................................................................................ 4

      **A.**    Solatium Damages .............................................................................. 6
      **B.**    Pain and Suffering Damages.............................................................. 9
      **C.**    Economic Damages ......................................................................... 10
      **D.**    Punitive Damages ............................................................................ 16
      **E.**    Prejudgment Interest ....................................................................... 17

**III.**    Conclusion ..................................................................................................................... 18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Socialist People's Libyan Arab Jamahirya*,
    775 F. Supp. 2d 48 (D.D.C. 2011) ........................................................................16

*Belkin v. Islamic Republic of Iran*,
    667 F. Supp. 2d 8 (D.D.C. 2009) ...........................................................................6

*Estate of Bland v. Islamic Republic of Iran*,
    831 F. Supp. 2d 150 (D.D.C. 2011) .....................................................................6,15

*Dammarell v. Islamic Republic of Iran*,
    281 F. Supp. 2d 105 (D.D.C. 2003), *vacated on other* grounds, 404 F. Supp.
    2d 261 (D.D.C. 2005) ...........................................................................................6

*Estate of Heiser v. Islamic Republic of Iran*,
    466 F. Supp. 2d 229 (D.D.C. 2006) ....................................................................6, 10

*Flatow v. Islamic Republic of Iran*,
    999 F. Supp. 1 (D.D.C. 1998) ..............................................................................10

*Roth v. Islamic Republic of Iran*,
    78 F. Supp. 3d 379 (D.D.C. 2015) ........................................................................10

*Surette v. Islamic Republic of Iran*,
    231 F. Supp. 2d 260 (D.D.C. 2002) ......................................................................6

*Valore v. Islamic Republic of Iran*,
    700 F. Supp. 2d 52 (D.D.C. 2010) ......................................................................6, 10

*Wagner v. Islamic Republic of Iran*,
    172 F. Supp. 2d 128 (D.D.C. 2001)) .....................................................................6

*World Trade Ctr. Props. LLC v. Am. Airlines, Inc.* (*In re September 11th Litig.*),
    802 F.3d 314 (2d Cir. 2015) ................................................................................17

**Statutes**

Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et seq.* .............................. *passim*

Air Transportation Safety and System Stabilization Act,
    Pub. L. No. 107-42, 115 Stat. 230 (2001) (codified as amended at 49 U.S.C.
    § 40101) ...............................................................................................................17

ii

## INTRODUCTION

For the reasons set forth below, the statements contained in the declaration of Jerry S. Goldman, Esq., with Exhibits appended thereto ("Goldman Declaration") which is being filed contemporaneously with this memorandum of law, as well as those set forth in prior motions for damages made on behalf of the *O'Neill* wrongful death plaintiffs, certain plaintiffs in the above-referenced matter who are identified on Exhibits A and B to the Goldman Declaration (collectively, the "*Moody-Theinert III* Plaintiffs") by and through their counsel, Anderson Kill, P.C., respectfully move this Court for an Order:

> (1)     awarding the Plaintiffs identified in Exhibit A to the Goldman Declaration filed contemporaneously with the Memorandum of Law ("Exhibit A") judgment as to damages in the same amounts previously awarded by this Court to various similarly situated plaintiffs in *Burnett*, *Havlish*, *Ashton*, *Bauer*, and other cases, except as in the case of plaintiff-personal representatives of 9/11 Decedents;

> (2)     awarding the Estates of 9/11 Decedents through their personal representatives, and on behalf of all survivors and all legally entitled beneficiaries and family member of such 9/11 Decedents, as identified on Exhibit B to the Goldman Declaration filed contemporaneously with this Memorandum of Law ("Exhibit B"), compensatory damages for pain and suffering in the same per estate amount previously awarded by this Court regarding other estates of decedents killed in the September 11th attacks, as set forth in Exhibit B;

> (3)     awarding the Estates of 9/11 Decedents through their personal representatives, and on behalf of all survivors and all legally entitled beneficiaries and

family member of such 9/11 Decedents, as identified on Exhibit B, an award of economic

damages in the amounts as set forth on Exhibit B;

(4)      awarding the Plaintiffs identified on Exhibits A and B pre-judgment

interest at the rate of 4.96 percent per annum, compounded annually for the period from

September 11, 2001 until the date of the judgment for damages;

(5)      granting the Plaintiffs identified in Exhibits A and B permission to seek

punitive damages, economic damages, and other appropriate damages at a later date;

(6)      determining that service of process was properly effected upon the Iran

Defendants in accordance with 28 U.S.C. § 1608(a) for sovereign defendants and 28

U.S.C. § 1608(b) for agencies and instrumentalities of sovereign defendants; and,

(7)      granting permission for all other plaintiffs in this action not appearing on

Exhibits A and/or B to submit applications for damages awards in later stages, to the

extent such awards have not previously been addressed.[1][2][3]

---

[1]    The plaintiffs listed on Exhibit A are the relatives of a 9/11 decedent, which includes individuals who are not named in the complaint but are entitled to receive judgments for solatium based on their relationship to the 9/11 decedent.  In the case of a relative who died subsequent to the 9/11 decedent, the claim is brought by the personal representative of the relative's estate.  As noted below, each personal representative has provided the undersigned counsel with proof that he or she has been appointed by the court as the personal representative of the deceased relative, except in the cases specifically identified in the Goldman Declaration, where a party has filed a petition to be so appointed, which petition, on information and belief, is unopposed, but has not yet been granted.  Goldman Declaration at ¶¶ 4-6.

[2]    The plaintiffs listed on Exhibit B are the personal representatives of a 9/11 decedent.  In all cases, they are submitting claims for compensatory damages as a result of the death of the 9/11 decedent.  Where there are expert reports demonstrating economic losses as a result death submitted with the Goldman Declaration, as outlined therein and herein, the personal representatives are additionally seeking economic damages in the amounts set forth in Exhibit "B".  Those personal representatives who are seeking at this time to solely recover compensatory damages for pain and suffering are specifically raising their right to seek an additional judgment, at a future date, for economic damages, based upon then submitted evidence.  As noted below, each personal representative has provided the undersigned counsel with proof that he or she has been appointed by the court as the personal representative of the deceased relative. Goldman Declaration at ¶¶ 4-7.

[3]    Exhibits A and B only includes plaintiffs who will be submitting US VSST applications on or before February 19, 2020.  The remaining plaintiffs have either already filed a motion for damages or intend to file a similar motion seeking damages at a later date.

This motion is made only on behalf of the *Moody-Theinert III* Plaintiffs listed in Exhibits A and B attached to the Goldman Declaration.

As the awards set forth in the attached proposed order represent the only direct recovery against Iran on behalf of the *Moody-Theinert III* Plaintiffs, any award issued to those individuals will constitute final awards and judgments against Iran for those plaintiffs listed in Exhibits A and B to the Goldman Declaration.

## I.      Procedural Background

On or about August 14, 2019, the *Moody-Theinert* Plaintiffs filed a motion for a default judgment against the Islamic Republic for Iran ("Iran") for liability.  *In re Terrorist Attacks on September 11, 2001*, No. 03-md-1570 (hereinafter "*MDL*"), ECF Nos. 4864-4865.  On September 3, 2019, the Court granted the motion for liability with leave to seek a determination of damages at a later date.  *MDL,* ECF No. 5055.[4]  Certain *Moody-Theinert III* Plaintiffs set forth on Exhibit "A" have been added pursuant to a Notice of Amendment being filed contemporaneously with this Motion as discussed in Section II-A-1, herein.

This motion is being submitted in accordance with various procedural orders entered by this Court, and the form of this motion and the relief requested herein are intended to comply with various orders of this Court, including the following:

> a.      The Court's order dated January 24, 2017 (ECF No. 3435), requiring that "[a]ll further motions for final judgment against any defaulting defendant shall be accompanied by a sworn declaration attesting that the attorney has (1) complied with the due diligence safeguards [referenced in Section II.D. of the January 23, 2017 letter from the Plaintiffs' Executive Committee (ECF No. 3433)] and (2) personally verified that no relief has previously been awarded to any plaintiff included in the judgment (or, if relief has been awarded, the nature of that relief)."

---

[4] The original *O'Neill* Complaint was filed in the summer of 2003.  There are now a total of eighteen (18) separate (per Court order) *O'Neill* Complaints filed by Jerry S. Goldman, Esq. related to Iran, with which are collectively referred to as "*O'Neill* Iran" Complaints.

3

For compliance with the required sworn declaration, please see paragraph 6, below.

b.      The Court's Order dated October 14, 2016 (ECF No. 3363) concerning the amounts of solatium damage awards.

c.      The Court's Order dated October 14, 2016 (ECF No. 3362) related to the cases captioned as *Bauer v. Al Qaeda Islamic Army,* 02-CV-7236 (GBD)(SN) and *Ashton v. al Qaeda Islamic Army,* 02-CV-6977 (GBD)(SN).

d.      The Court's Order dated October 28, 2019 (ECF No. 5234) setting forth updated procedural rules.

e.      The Court's Order dated October 28, 2019 (ECF No. 5338) setting forth the scheduling order.

## II.    Damages

Section 1605A of the Foreign Sovereign Immunities Act ("FSIA"), permits a foreign state to be held accountable for acts of terrorism or the provision of material support or resources for acts of terrorism where the acts or provision of support or resources were engaged in by an official, employee, or agent of the foreign state while acting within the scope of his or her office, employment, or agency.  28 U.S.C. § 1605A(a)(1).  The statute specifies that damages are available "for personal injury or death," § 1605A(a)(1) and (c)(4), and include "economic damages, solatium, pain and suffering, and punitive damages." § 1605A(c)(4).  Courts addressing the damages available under the statute have held that, among other damages recoverable, "family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages."  *MDL*, ECF No. 2623 at 2-3 (quoting *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010)).

Plaintiffs identified in Exhibit A are comprised of immediate family members of those killed on 9/11, as demonstrated by documentary evidence of their familial relationship to a 9/11 decedent, such as birth or marriage certificates, sworn affidavits, official documents or other documents signed under penalty of perjury, which attest to a familial relationship eligible for

4

recovery, and, in the case of a subsequently deceased family member, a death certificate or sworn affidavit which reflects that the claimant did not predecease the 9/11 victim.[5]  *See* Goldman Declaration at ¶¶ 4-7.  Plaintiffs identified in Exhibit B are comprised of the estates of victims who perished on 9/11, in claims asserted by their personal representatives, as demonstrated by documentary evidence in the form of official documents from probate and administration proceedings from Surrogate's, Probate, Orphan's and similar judicial bodies.  *See* Goldman Declaration at ¶¶ 4-7, 14-22.

As liability has been established in this matter, each moving plaintiff is now entitled to damages in the amounts set forth on Exhibits A and B, which reflect the damage amounts previously established and applied by this Court in this and other related cases arising from the terrorists attacks on September 11, 2001 (the "9/11 Attacks") or based upon expert economic reports submitted herewith.  In accordance with the terms of the FSIA, the Plaintiffs identified in Exhibits A and B are entitled to compensation under Section 1605A for their solatium, pain and suffering and economic damages, as applicable, and are also entitled to prejudgment interest.  Further, each moving party estate of a 9/11 Decedent is now entitled to compensatory damages for pain and suffering, as set forth in Exhibit B, which are the same amounts as previously established by the Court in related cases arising from the terrorist attacks on September 11, 2001.  Finally, such moving party estates of 9/11 Decedent who have tendered expert economic reports at this time, as identified herein, in the Goldman Declaration, and on Exhibit B, are entitled to economic damages.

---

[5]    Such evidence is consistent with that contemplated in the Court's July 10, 2018 Order, ECF No. 4045.

docs-100229532.3

A.      **Solatium Damages**

As set forth above, the FSIA specifically provides for an award of solatium damages. Under § 1605A, family members of a decedent may recover for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of a decedent's society and comfort." *Dammarell v. Islamic Republic of Iran*, 281 F. Supp. 2d 105, 196 (D.D.C. 2003), vacated on other grounds, 404 F. Supp. 2d 261 (D.D.C. 2005). Other courts have previously noted that "[a]cts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009). In cases brought under this exception to the FSIA, solatium claims have been treated as analogous to claims for the intentional infliction of emotional distress. *See, e.g.*, *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (treating solatium claim as "indistinguishable from the claim of intentional infliction of emotional distress" (quoting *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001))).

When previously awarding solatium damages in other cases related to the 9/11 Attacks, such as those noted above, this Court looked at the framework established by District Court Judge Royce C. Lamberth in *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006), where the court awarded solatium damages to each spouse of a deceased victim in the amount of $8 million, to each parent in the amount of $5 million, and to each sibling in the amount of $2.5 million. *Id.* This formula, however, may be adjusted upward or downward when circumstances warrant. *See, e.g.*, *Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 156 (D.D.C. 2011); *Valore*, 700 F. Supp. 2d at 85.

6

Analyzing the solatium claims of the families of the *Havlish* victims who perished in the 9/11 Attacks, Magistrate Judge Maas concluded that an upward departure from Judge Lambert's framework in *Heiser* was appropriate.  In *Havlish*, Judge Maas explained that an upward departure was warranted because the decedents' immediate family members suffered, and continue to suffer "profound agony and grief" and "[w]orse yet, . . . are faced with frequent reminders of the events of that day."  *MDL*, ECF No. 2618 at 10-12.  Judge Maas noted in his July 30, 2012 Report and Recommendation the "extraordinarily tragic circumstances surrounding the September 11th attacks, and their indelible impact on the lives of the victims' families . . . ."  *Id.* at 11.  In that Report and Recommendation, with which this Court later agreed, Magistrate Judge Maas recommended that solatium damages be awarded to the immediate family members of the victims of the 9/11 Attacks in the following amounts:

| Relationship of Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

*Id.* at 11.

These exact amounts were adopted by this Court in its October 3, 2012 Order, *MDL*, ECF No. 2623, and were replicated in this Court's June 16, 2016 Order relating to the claims of certain of the *Ashton* Plaintiffs, *MDL*, ECF No. 3300, in the September 12, 2016 Order pertaining to plaintiffs in the *Bauer* case, *MDL*, ECF No. 3341, in the October 14, 2016 Report and Recommendation, *MDL*, ECF No. 3363, and in the October 31, 2016 Order in the *Hoglan* case, *MDL*, ECF No. 3384.  These amounts were, again, adopted by this Court in its April 24,

2018 Order relating to the claims of additional *Ashton* Plaintiffs, *MDL*, ECF No. 3977 at 6–7.

The same amounts were recently adopted in the Court's June 8, 2018 (Corrected) Order of

Partial Final Default Judgment in the matter known as "Burnett/Iran II," No. 15-cv-09903, ECF

No. 101.[6]

The solatium losses suffered by the *Moody-Theinert III* Plaintiffs before the Court in this

application are legally and factually comparable to those suffered by the plaintiffs in the *Havlish*,

*Ashton*, *Bauer*, *Hoglan* and *Burnett* cases.  As such, Plaintiffs identified on Exhibit A

respectfully request that the Court grant awards of solatium to the immediate family members

identified on Exhibit A in the same amounts indicated herein, consistent with this Court's

application of those values established and applied in *Havlish*, and subsequently adopted and

applied to plaintiffs in the *Ashton*, *Bauer*, *Hoglan* and *Burnett* cases.

### 1. Individuals Not Named in the Complaint Entitled to Solatium Damages

Pursuant to paragraph 5 of Section ii(d) of the Plaintiff's Executive Committee Letter,

dated January 23, 2017, *MDL*, ECF No. 3433, which was adopted by the Court through Order,

dated January 25, 2017, *MDL*, ECF No. 3435, individuals who are not named in the complaint,

but are otherwise a member of the 9/11 decedent's family, are entitled to receive a judgment for

solatium based upon their relationship to the 9/11 decedent and where there is a pending claim

by the personal representative of that decedent's estate.  The letter provides "[i]n instances where

a default judgment is sought by a personal representative in favor of a solatium claimant who is

not a named plaintiff in the action in which the award is sought, counsel requesting the judgment

will be asked to confirm that: (1) the personal representative has requested that a judgment be

---

[6]    The same values were applied to the claims of other plaintiffs in the earlier *Burnett* case in this Court's order of July 31, 2017. *MDL*, ECF No. 3666, are in inter filings of the *Burnett*, *Ashton* and *O'Neill* Iran plaintiffs.

8

sought in favor of the solatium claimant; (2) the solatium claimant has been contacted and affirmed that he or she authorized the personal representative to seek the judgment in his or her favor; and (3) counsel has confirmed that the solatium claimant in favor of whom the judgment is being sought has not retained other counsel or been named in any other action or, if he or she has, that counsel has communicated with the claimant's counsel and received authorization to seek the judgment via the estate's representative."  *MDL*, ECF No. 3433 (p. 7); *See also*, *MDL*, ECF 5234 (October 28, 2019).

Such individuals are indemnified and the compliance with such procedure is described in ¶¶9-10 and Exhibit C to the Goldman Declaration.

Accordingly, judgment should be entered in favor of such Plaintiff's favor as if they were named plaintiffs, in the same amounts indicated herein, consistent with this Court's application of those values established and applied in prior proceedings in this *MDL*.

### B.     Pain and Suffering Damages

As noted above, the plaintiffs identified in Exhibit B include the personal representatives of the estates of individuals who were killed in the 9/11 Attacks, which seek compensatory damages for the decedent's pain and suffering.  This Court previously assessed the entitlement and value of pain and suffering awards to estates for their decedents' deaths in this litigation. 03-md-1570, ECF Nos. 2618 at 7-9.

The plaintiffs identified in Exhibit B include the estates of the following individuals killed in the 9/11 Attacks, which seek damages for the decedent's pain and suffering:

1.  Estate of (Capt.) Thomas Moody
2.  Estate of Paula E. Morales
3.  Estate of Mario Nardone Jr.
4.  Estate of Virginia Ormiston
5.  Estate of Paul Ortiz Jr.
6.  Estate of Adianes Oyola

9

     7.  Estate of Orio J. Palmer
     8.  Estate of Michael Parkes
     9.  Estate of Salvatore F. Pepe
    10. Estate of Kenneth Phelan
    11. Estate of Zandra Marie Cooper Ploger (nee Flores)
    12. Estate of Robert R. Ploger III
    13. Estate of Joseph J. Pycior
    14. Estate of Cecelia E. Richard

For the reasons articulated by this Court previously, the above stated Estates and as set forth in Exhibit B respectfully request that the Court grant awards for the decedent's pain and suffering in the amount of Two Million ($2,000,000) Dollars per estate. *See id*. at 9; 03-md-1570, ECF No. 2624 at 1, 3-4 (Judge Daniels awarding $2,000,000 per estate).  *See* Goldman Declaration ¶¶13.

### C.    Economic Damages

The FSIA specifically provides for economic damages. *See* 28 U.S.C. § 1605A(c).  The economic damages provision is "designed to compensate [a] decedent's heirs-at-law for economic losses which result from [the] decedent's premature death." *Flatow v. Islamic Republic of Iran,* 999 F. Supp. 1, 27 (D.D.C. 1998).  Accordingly, "the beneficiaries of each decedent's estate [are] … entitled to recover the present value of economic damages, including lost wages that the decedents might reasonably have been expected to earn but for their wrongful deaths." *Valore v. Islamic Republic of Iran,* 700 F. Supp. 2d 52, 81-82 (D.D.C. 2010), citing *Heiser,* 466 F.Supp.2d 229.  Thus, for example, United States District Court Royce C. Lambreth of the District of Columbia, in a series of decisions issuing final judgments against the Islamic Republic of Iran under the FSIA, has held Iran "liable for the economic damages caused to

decedents' estates." *Roth v. Islamic Republic of Iran,* 78 F. Supp. 3d 379, 399-400 (D.D.C. 2015), quoting *Valore,* 700 F.Supp.2d at 78.[7]

Previously, this Court awarded economic damages in prior Iran cases for the "economic losses stemming from the wrongful death of the decedent[.]" *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), ECF No. 2623, Entered 10/03/12, at 2-3. In doing so, it adopted the economic loss calculations set forth in the plaintiffs' economic expert reports.

Certain of the Estates set forth on Exhibit B, and as specifically identified and set forth therein,[8] and which provided economic expert reports, transmitted to the Court in the Goldman Declaration, seek economic damages, similar to the plaintiffs in the prior Iran cases in this Court under the standards set in the District of Columbia cases cited herein.  Goldman Declaration ¶¶14-22.

As described at length, In this case, plaintiffs retained the services of an expert, John F. Beauzile, who possesses a Master's Degree in Actuarial Science from Columbia University ("Expert"), to evaluate the economic losses resulting from decedent's death as a result of the 9/11 Attacks.  Goldman Declaration at ¶¶14-22.

As described in more detail in the Goldman Declaration, and the Expert's declaration (which is Exhibit "D" to the Goldman Declaration), we obtained, generally through a Freedom of Information Act Request, entire Victims Compensation Fund ("VCF") files for a substantial

---

[7]   In adopting this estate-accumulations calculation, Judge Lambreth recognized that case law under the FSIA was "develop[ing] … a federal standard" and looked to the law of the District of Columbia, which it concluded was "an appropriate model" to adopt and which calculated economic damages as the loss of accretions to the decedent's estate. *Roth,* 78 F.Supp.3d at 82.

[8]   To the extent other estates are referenced on Exhibit A, these are estates of family members of 9/11 decedents who themselves have passed away in the years following the September 11th attacks, as opposed to the estates of the 9/11 Decedents who are listed on Exhibit B.

11

number of the *O'Neill* Iran plaintiffs.[9] Those files, along with other materials provided by the clients, contained various economic expert reports, VCF applications, VCF work-papers and distribution plans, VCF determinations, underlying economic documents and the like.  Using methodology and assumptions described in his declaration, relying on earlier expert reports, determinations by the VCF, and other documents, the Expert prepared up-to-date economic loss expert reports, copies of which are attached to the Goldman Declaration as Exhibits B-1 to B-12 (collectively "Expert Reports").  Goldman Declaration at ¶¶14-22.

The plaintiffs identified in Exhibit B include the estates of the following individuals killed in the 9/11 Attacks, which seek economic damages similar to the plaintiff in the other Iran cases which have preceded this case, as well as those presently pending as part of this *MDL*:

1.  Estate of Paula E. Morales
2.  Estate of Virginia Ormiston
3.  Estate of Paul Ortiz Jr.
4.  Estate of Cecelia E. Richard
5.  Estate of Adianes Oyola
6.  Estate of Orio J. Palmer
7.  Estate of Salvatore F. Pepe
8.  Estate of Zandra Marie Cooper Ploger (nee Flores)
9.  Estate of Robert R. Ploger III
10. Estate of (Capt.) Thomas  Moody
11. Estate of Kenneth Phelan
12. Estate of Michael Parkes

What follows is a summary of the conclusions drawn by the Expert as set forth in Exhibits B-1 to B-12 of the Goldman Declaration.  Goldman Declaration at ¶¶14-22.    The totals are reflected on Exhibit B to the Goldman Declaration:

1.      **Estate of Paula E. Morales (see Ex. B-1)**

By way of summary, the economic damage amounts as updated by Mr. Beauzile total $1,344,941, which is comprised of the following sums:

---

9       We are still awaiting receipt of additional files.

| Present Value of Lost Earnings: | $726,782 |
| Present Value of Retirement Benefits | $57,372 |
| Present Value of Lost Replacement Services | $560,786 |
| **Total** | **$1,344,941** |

### 2. Estate of Virginia Ormiston (see Ex. B-2)

By way of summary, the economic damage amounts as updated by Mr. Beauzile total

$3,506,278, which is comprised of the following sums:

| Present Value of Lost Earnings: | $2,950,361 |
| Present Value of Retirement Benefits | $555,917 |
| Present Value of Lost Replacement Services | 0 |
| **Total** | **$3,506,278** |

### 3. Estate of Paul Ortiz Jr. (see Ex. B-3)

By way of summary, the economic damage amounts as updated by Mr. Beauzile total

$5,000,863, which is comprised of the following sums:

| Present Value of Lost Earnings: | $4,337,181 |
| Present Value of Retirement Benefits | $193,293 |
| Present Value of Lost Replacement Services | $470,389 |
| **Total** | **$5,000,863** |

### 4. Estate of Cecelia E. Richard (see Ex. B-4)

By way of summary, the economic damage amounts as updated by Mr. Beauzile total

$1,329,226, which is comprised of the following sums:

| Present Value of Lost Earnings: | $921,462 |
| Present Value of Retirement Benefits | $407,764 |
| Present Value of Lost Replacement Services | 0 |
| **Total** | **$1,329,226** |

### 5. Estate of Adianes Oyola (see Ex. B-5)

By way of summary, the economic damage amounts as updated by Mr. Beauzile total

$3,635,324, which is comprised of the following sums:

13

| Present Value of Lost Earnings: | $3,210,903 |
|---|---|
| Present Value of Retirement Benefits | $424,421 |
| Present Value of Lost Replacement Services | 0 |
| **Total** | **$3,635,324** |

6.    **Estate of Orio J. Palmer (see Ex. B-6)**

By way of summary, the economic damage amounts as updated by Mr. Beauzile total

$6,181,570, which is comprised of the following sums:

| Present Value of Lost Earnings: | $3,024,082 |
|---|---|
| Present Value of Retirement Benefits | $386,232 |
| Present Value of Lost Replacement Services | $2,771,256 |
| **Total** | **$6,181,570** |

7.    **Estate of Salvatore F. Pepe (see Ex. B-7)**

By way of summary, the economic damage amounts as updated by Mr. Beauzile total

$2,364,224, which is comprised of the following sums:

| Present Value of Lost Earnings: | $1,562,755 |
|---|---|
| Present Value of Retirement Benefits | $468,932 |
| Present Value of Lost Replacement Services | $332,538 |
| **Total** | **$2,364,224** |

8.    **Estate of Zandra Marie Cooper Ploger (nee Flores) (see Ex. B-8)**

By way of summary, the economic damage amounts as updated by Mr. Beauzile total

$2,200,273, which is comprised of the following sums:

| Present Value of Lost Earnings: | $1,767,458 |
|---|---|
| Present Value of Retirement Benefits | $432,815 |
| Present Value of Lost Replacement Services | 0 |
| **Total** | **$2,200,273** |

9.    **Estate of Robert R. Ploger III (see Ex. B-9)**

By way of summary, the economic damage amounts as updated by Mr. Beauzile total

$1,103,993, which is comprised of the following sums:

14

| | |
|---|---|
| Present Value of Lost Earnings: | $672,110 |
| Present Value of Retirement Benefits | $431,883 |
| Present Value of Lost Replacement Services | 0 |
| **Total** | **$1,103,993** |

### 10.     Estate of (Capt.) Thomas Moody (see Ex. B-10)

By way of summary, the economic damage amounts as updated by Mr. Beauzile total

$4,373,088, which is comprised of the following sums:

| | |
|---|---|
| Present Value of Lost Earnings: | $3,019,254 |
| Present Value of Retirement Benefits | $484,911 |
| Present Value of Lost Replacement Services | $868,923 |
| **Total** | **$4,373,088** |

### 11.     Estate of Kenneth Phelan (see Ex. B-11)

By way of summary, the economic damage amounts as updated by Mr. Beauzile total

$4,297,920, which is comprised of the following sums:

| | |
|---|---|
| Present Value of Lost Earnings: | $3,061,939 |
| Present Value of Retirement Benefits | $364,762 |
| Present Value of Lost Replacement Services | $871,219 |
| **Total** | **$4,297,920** |

### 12.     Estate of Michael Parkes (see Ex. B-12)

By way of summary, the economic damage amounts as updated by Mr. Beauzile total

$3,292,464, which is comprised of the following sums:

| | |
|---|---|
| Present Value of Lost Earnings: | $ 2,619,082 |
| Present Value of Retirement Benefits | $257,560 |
| Present Value of Lost Replacement Services | $415,823 |
| **Total** | **$3,292,464** |

Based on the foregoing, the *Moody-Theinert III* plaintiffs respectfully ask that this Court

award economic damages to the Estates set forth in Exhibit B in the amounts set forth in Exhibit

B as supported by the Expert Reports.

15

### D.     Punitive Damages

Under the FSIA plaintiffs are also entitled to punitive damages.  28 U.S.C.

§ 1605A(c)(4).  In the *Havlish* Report and Recommendation on Damages, the magistrate judge

explained that a "3.44 ratio 'has been established as the standard ratio applicable to cases arising

out of' terrorist attacks."  *MDL*, ECF No. 2618 at 13 (quoting *Estate of Bland v. Islamic Republic

of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011)).  This Court adopted that recommendation and

awarded punitive damages on each compensatory damages category at a ratio of 3.44 (punitive)

to 1 (compensatory).  *MDL*, ECF No. 2623 at 2.  The Court has applied that ratio to awards for

plaintiffs in other related cases.  *See, e.g.*, *MDL*, ECF No. 3175 at 3 (Magistrate Judge Maas

Report and Recommendation to apply a 3.44 punitive multiplier); *MDL*, ECF No. 3229 at 1

(Judge Daniels adopting in its entirety Judge Maas's Report and Recommendation to apply a

3.44 multiplier); *MDL*, ECF No. 3300 at 1 and Exhibit A (Judge Daniels applying 3.44 punitive

multiplier to claims in *Ashton*).

However, in *Hoglan*, another case in the *In re Terrorist Attacks on September 11, 2001*

multidistrict litigation, Magistrate Judge Netburn recommended that the plaintiffs' request for

punitive damages be denied without prejudice.  *MDL*, ECF No. 3363 at 28.  Judge Daniels

adopted Judge Netburn's Report in its entirety, denying without prejudice the plaintiffs' request

for punitive damages.  *MDL*, ECF No. 3384 at 6.

In light of the Court's decision in related litigation to defer determination of punitive

damage issues until a later stage of the litigation, Plaintiffs herein request permission to address

the issue of punitive damages at a later date.  *See, e.g.*, *MDL*, ECF No. 3666 (Judge Daniels'

order in *Burnett*, authorizing plaintiffs to make an application for punitive damages at a later date

consistent with any future rulings of the Court).

16

E.       **Prejudgment Interest**

An award of prejudgment interest is within the sound discretion of a trial court and is

warranted when plaintiffs are delayed in recovering compensation for non-economic injuries

caused by acts of terrorism.  *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F.

Supp. 2d 48, 86 (D.D.C. 2011).  This Court awarded the *Havlish* plaintiffs prejudgment interest

at a rate of 4.96% on their pain and suffering damages awards, to be calculated from

September 11, 2001, until the date of judgment.  *MDL*, ECF No. 2618 at 13-14.  This Court,

recognizing that prejudgment interest was appropriate in cases such as this case, adopted the

magistrate judge's reasoning, finding that an award of prejudgment interest was appropriate and

accepting the rate of 4.96%, as proposed by the *Havlish* plaintiffs' expert.

After the *Havlish* award, plaintiffs in *Ashton* and *Bauer* proposed, and the Court agreed,

that prejudgment simple interest at the New York State statutory rate of nine percent per annum

was appropriate in cases where the injuries arose in New York and the prejudgment interest used

in *Havlish*, 4.96 percent per annum, compounded annually, should be reserved for only those

cases where the injuries arose in other states.  *See MDL*, ECF Nos. 3229 at 2; 3300 at 1; 3341

at 1.

The Second Circuit has held that New York State's statutory prejudgment interest rate

should apply to the damages awarded to World Trade Center complex leaseholders in their

litigation against American Airlines and United Airlines brought under the federal Air

Transportation Safety and System Stabilization Act ("ATSSSA").  Pub. L. No. 107-42, 115 Stat.

230 (2001) (codified as amended at 49 U.S.C. § 40101); *World Trade Ctr. Props. LLC v. Am.

Airlines, Inc.* (*In re September 11th Litig.*), 802 F.3d 314, 343 (2d Cir. 2015).  In that case, the

Second Circuit concluded that a federal cause of action under the ATSSSA must look to state

17

rules concerning prejudgment interest.  *Id.*  Accordingly, the Second Circuit held that New York's statutory prejudgment interest rate of nine percent as opposed to a lower rate crafted under federal law, had to be applied to the plaintiffs' claims related to the 9/11 Attacks.  *Id.*

However, more recently, in *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent interest rate for prejudgment interest should be applied to all of the solatium claims. *MDL*, ECF No. 3363 at 28-29.  Judge Daniels adopted Judge Netburn's *Hoglan* Report in its entirety and applied the interest rate of 4.96 percent per annum, compounded annually to all of the claims.  *MDL*, ECF No. 3384 at 6.  Thereafter, in *Burnett II*, the Court again awarded prejudgment interest of 4.96 per annum, compounded annually.

In light of the Court's decisions in the *Hoglan* and *Burnett* matters, applying the 4.96 percent rate to prejudgment interest, the *Moody-Theinert III* Plaintiffs identified in Exhibits A and B respectfully request that the clerk be directed to award prejudgment interest at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001, until the date of the judgment.

## III.   Conclusion

For all of the reasons herein, in the papers previously submitted to this Court in support of damages against Iran in this *MDL*, and as previously decided by this Court, the *Moody-Theinert III* Plaintiffs respectfully request that this Honorable Court enter an order:

(1)     awarding the Plaintiffs identified in Exhibit A judgment as to damages in the same amounts previously awarded by this Court to various similarly situated plaintiffs in *Burnett*, *Ashton, Havlish*, *Bauer*, and other cases, except as in the case of plaintiff-personal representatives of 9/11 Decedents;

(2)     awarding the Estate of 9/11 Decedents through their personal representatives, and on behalf of all survivors and all legally entitled beneficiaries and family member of such 9/11 Decedents, as identified on Exhibit B, compensatory damages for pain and suffering in the same per estate amount previously awarded by this Court regarding other estates of decedents killed in the September 11th attacks, that is Two Million ($2,000,000.00) Dollars, as set forth in Exhibit B;

(3)     awarding the Estates of 9/11 Decedents through their personal representatives, and on behalf of all survivors and all legally entitled beneficiaries and family member of such 9/11 Decedents, as identified on Exhibit B, an award of economic damages in the amounts as set forth on Exhibit B;

(4)     awarding the Plaintiffs identified on Exhibits A and B pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

(5)     granting the Plaintiffs identified in Exhibits A and B permission to seek punitive damages, economic damages, and other appropriate damages at a later date;

(6)     determining that service of process was properly effected upon the Iran Defendants in accordance with 28 U.S.C. § 1608(a) for sovereign defendants and 28 U.S.C. § 1608(b) for agencies and instrumentalities of sovereign defendants; and,

(7)     granting permission for all other plaintiffs in this action not appearing on Exhibits A and/or B to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Respectfully submitted,

/s/ *Jerry S. Goldman*

ANDERSON KILL P.C.
Jerry S. Goldman, Esq.
Vianny M. Pichardo, Esq.
Bruce E. Strong, Esq.
Stephen Wah, Esq.
1251 Avenue of the Americas
New York, NY  10020
Tel: 212-278-1000
Fax: 212-278-1733
Email:  jgoldman@andersonkill.com
        vpichardo@andersonkill.com
        bstrong@andersonkill.com
        swah@andersonkill.com
*Attorneys for Plaintiffs*

Dated:   New York, New York
         January 14, 2020

20