**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re Terrorist Attacks On September 11, 2001 | ) | 03 MDL 1570 (GBD) (SN) |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

This document relates to:

*Estate of John P. O'Neill, Sr., et al. v. Al Baraka Investment & Development Corp. et al.*, 04-cv-1923 (GBD) (SN)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR CLASS CERTIFICATION AND RELATED RELIEF**

Jerry S. Goldman, Esq.
Bruce Strong, Esq.
Samantha Smith, Esq.
Stephen Wah, Esq.
Anderson Kill P.C.
1251 Avenue of the Americas
New York, NY  10020
(212) 278-1000

Attorneys for Estate of
John P. O'Neill, Sr., et al.

docs-100230340.1

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

PROCEDURAL HISTORY.................................................................................................. 3

STATEMENT OF FACTS ................................................................................................... 4

    The September 11th Attacks ........................................................................................ 4

    Allegations Against IIRO, MWL, Kadi, WAMY, and DIB ........................................ 4

THE CLASS REPRESENTATIVES................................................................................... 5

CLASS DEFINITION ......................................................................................................... 6

ARGUMENT ....................................................................................................................... 7

I.      Legal Standard for Rule 23 Class Certification ....................................................... 7

II.    Plaintiffs' Claims Satisfy the Rule 23(a) Requirements. ......................................... 9

        A.    The Class Satisfies the Numerosity Requirement....................................... 9

        B.    There Are Questions of Law or Fact Common to the Class. ..................... 11

        C.    The O'Neills' Claims Are Typical of the Class's Claims......................... 12

        D.    The Proposed Class Representatives Will Fairly and Adequately
               Protect the Interests of the Class. ............................................................. 13

             1.    Plaintiffs' Interests and the Class's Interests Are Identical. ......... 14

             2.    Class Counsel Is Adequate........................................................... 14

        E.    The Class Is Ascertainable....................................................................... 15

III.   This Action Satisfies the 23(b)(3) Requirements........................................... 16

        A.    Common Questions of Law and Fact Predominate Over Individual
               Questions, in the Liability Context and the Damages Context. ............... 17

        B.    The Court Has Sufficient Information to Certify a Damages Class
               Now........................................................................................................ 19

i

C.      Completion of Damages Discovery May Aid the Court in
        Determining Whether to Certify a Damages Class. .................................. 21

D.      A Class Action Is Superior to Other Available Methods for the Fair
        and Efficient Adjudication of this Controversy for these Plaintiffs. ........ 22

        1.      The Class Members Would Not Benefit from Individually
                Controlling This Litigation. .......................................................... 23

        2.      The Existing MDL Supports Rather Than Detracts from the
                Argument that Class Treatment Is the Superior Method of
                Adjudicating Class Members' Claims. ......................................... 23

        3.      This Case Is Clearly Manageable as a Class Action. .................... 25

CONCLUSION .................................................................................................................... 25

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re "Agent Orange" Prod. Liab. Litig.*,
   818 F.2d 145 (2d Cir. 1987)......................................................................................19

*In re Agent Orange Product Liability Litigation*,
   506 F. Supp. 762 (E.D.N.Y. 1980) ......................................................................24, 25

*In re Amaranth Natural Gas Commodities Litigation*,
   269 F.R.D. 366 (S.D.N.Y. 2010) ...............................................................................8

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997)......................................................................................17, 18, 22

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
   568 U.S. 455 (2013).............................................................................................8, 9

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000)....................................................................................13, 14

*Bakalar v. Vavra*,
   237 F.R.D. 59 (S.D.N.Y. 2006) ...............................................................................16

*Brecher v. Republic of Argentina*,
   802 F.3d 303 (2d Cir. 2015)...........................................................................8, 9, 16

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010)....................................................................................8

*Collins v. Olin Corp.*,
   248 F.R.D. 95 (D. Conn. 2008)...............................................................................17

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)......................................................................................19, 20

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995)....................................................................................10

*Cortigiano v. Oceanview Manor Home for Adults*,
   227 F.R.D. 194 (E.D.N.Y. 2005) .............................................................................13

*In re Drexel Burnham Lambert Group, Inc.*,
　　960 F.2d 285 (2d Cir. 1992)........................................................................................14

*Dziennik v. Sealift, Inc.*,
　　No. 05-CV-4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007) ...........................17

*Fox v. Cheminova, Inc.*,
　　213 F.R.D. 113 (E.D.N.Y. 2003) ...........................................................................19

*In re Initial Pub. Offering Sec. Litig.*,
　　471 F.3d 24 (2d Cir. 2006)........................................................................................8

*Kalish v. Karp & Kalamotousakis, LLP*,
　　246 F.R.D. 461 (S.D.N.Y. 2007) .....................................................................13, 14

*Leider v. Ralfe*,
　　No. 01-cv-3137, 2003 WL 22339305 (S.D.N.Y. Oct. 10, 2003).............................8

*Marisol A. v. Giuliani*,
　　126 F.3d 372 (2d Cir. 1997)....................................................................................13

*Mentor v. Imperial Parking Systems, Inc.*,
　　246 F.R.D. 178 (S.D.N.Y. 2007) ...........................................................................25

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*,
　　241 F.R.D. 185 (S.D.N.Y. 2007) .................................................................17, 18, 24

*In re Nassau County Strip Search Cases*,
　　461 F.3d 219 (2d Cir. 2006)....................................................................................17

*In re Natural Gas Commodities Litigation*,
　　231 F.R.D. 171 (S.D.N.Y. 2005) ...........................................................................11

*Pasternak v. Upjohn Co.*,
　　No. 92-cv-5987, 1994 WL 16495152 (E.D.N.Y. Sept. 19, 1994) ...........................19

*In re Pfizer Securities Litigation*,
　　282 F.R.D. 38 (S.D.N.Y. 2012) ..............................................................................24

*In re Plumbing Fixture Cases*,
　　298 F. Supp. 484 (J.P.M.L. 1968)...........................................................................24

*Robinson v. Metro-North Commuter R.R. Co.*,
　　267 F.3d 147 (2d Cir. 2001)....................................................................................11

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
　　659 F.3d 234 (2d Cir. 2011)................................................................................9, 14

iv

*In re Simon II Litigation*,
   407 F.3d 125 (2d Cir. 2005) ......................................................................................16

*In re Ski Train Fire in Kaprun, Austria on November 11, 2000*,
   220 F.R.D. 195 (S.D.N.Y. 2003) ................................................................................17

*In re Sony Corp. SXRD Rear Projection Television Marketing, Sales Practices
   and Products Liability Litigation*,
   No. 09-md-2102, 2010 WL 3422722 (S.D.N.Y. Aug. 24, 2010) ...............................24

*In re VisaCheck/MasterMoney Antitrust Litigation*,
   280 F.3d at 139, 141 ...........................................................................................17, 19

*In re Vitamin C Antitrust Litigation*,
   279 F.R.D. 90 (E.D.N.Y. 2012) .................................................................................24

*WalMart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .........................................................................................11, 12

*In re Zyprexa Products Liability Litigation*,
   253 F.R.D. 69 (E.D.N.Y. 2009) .................................................................................24

## Statutes

Alien Tort Claims Act
28 U.S.C. §1350 ............................................................................................................3

Anti-Terrorism Act
18 U.S.C. §2333 ............................................................................................................3

Civil Racketeer Influenced and Corrupt Organizations Act
18 U.S.C. §1962(a) ........................................................................................................3

## Other Authorities

Fed. R. Civ. P. 23 .................................................................................................. *passim*

v

The Estate of John P. O'Neill, Sr.,[1] John P. O'Neill, Jr., Christine O'Neill, Carol O'Neill, the Estate of Dorothy O'Neill,[2] and the Estate of John F. O'Neill ("Plaintiffs" or "O'Neill Plaintiffs"),[3] by undersigned counsel, respectfully submit this Memorandum of Law in Support of their Motion for Class Certification and Related Relief ("Motion") against all defendants named in the above-referenced matter (the "al Baraka Defendants"). Plaintiffs seek the certification of a class of the estates of 9/11 victims and their immediate family members who presently do not have a pending case against the al Baraka Defendants in the above-captioned multi-district litigation ("MDL"), and in support thereof state as follows.

## INTRODUCTION

The al Baraka Defendants are alleged to have provided material support to the individuals who carried out the terrorist attacks of September 11, 2001 (the "September 11th attacks"), which caused thousands of deaths in New York City; Arlington, Virginia; and Shanksville, Pennsylvania.  *See* First Consolidated Complaint, including More Definite Statements and RICO Statements, filed in this case on September 30, 2005, ("FCC" or "First Consolidated Complaint")

---

[1] There is currently an unopposed petition pending in New York County Surrogate's Court to have Christine O'Neill substituted in as the personal representative of the estate instead of John P. O'Neill, Jr. If such relief is granted by the Surrogate's Court, we will seek leave to amend our pleading to substitute in Christine O'Neill as the personal representative of the Estate of John P. O'Neill, Sr. Defendants in this case were made aware of this prior to the completion of written class discovery and depositions, and had the opportunity to ask questions of both John P. O'Neill, Jr. and Christine O'Neill.

[2] Dorothy O'Neill passed away a year after the case began. Christine O'Neill has been appointed as the personal representative of her estate. In the present motion papers, we also seek leave to substitute in Christine O'Neill as the personal representative of the Estate of Dorothy O'Neill. Defendants in this case were made aware of this proposed change prior to the completion of written class discovery and depositions, and had the opportunity to ask questions of Christine O'Neill.

[3] Plaintiffs also seek to amend their complaint to add the Estate of John F. O'Neill, the late father of John P. O'Neill, Sr. as a party and class representative.  Recently, undersigned counsel was informed that John F. O'Neill was alive on September 11, 2001. In October 2019, undersigned counsel informed Defendants that plaintiffs may seek to add this estate as a party to the case. In anticipation of this amendment, on October 24, 2019, Defendants sent Interrogatory Requests to the Estate of John F. O'Neill. That same day, the Estate of John F. O'Neill responded to the Interrogatory Requests. On October 29, 2019, Defendants deposed the personal representative of John F. O'Neill's estate. Defendants in the above-action were informed of this proposed amendment and advised that they do not object.

at ¶¶ 1-3 (ECF No. 1570). Seeking monetary compensation in the form of actual and punitive damages for the wrongs committed by the conspirators, Plaintiffs brought this action against the al Baraka Defendants in 2004.  Plaintiffs now seek certification of a class of similarly situated individuals pursuant to Federal Rule of Civil Procedure 23.

As described at length in the First Consolidated Complaint and the Affidavit of Jerry S. Goldman, Esq., Plaintiffs allege that the al Baraka Defendants conspired with and provided material support to Osama bin Laden, al Qaeda, the Taliban, among others, and to the perpetrators of the September 11th attacks.  The al Baraka Defendants' material support led to the September 11th attacks, which killed John P. O'Neill, Sr. and thousands of others.  As a result, Plaintiffs, and thousands of 9/11 victims and their families, suffered damages.

While the O'Neill Plaintiffs and most of the surviving family members (or estates thereof) of thousands of victims of the September 11th attacks (the "MDL Plaintiffs") have pending suits against the al Baraka Defendants in the MDL, there are hundreds of 9/11 decedent estates and thousands more surviving family members presently without a pending case against the al Baraka Defendants. This Motion attempts to bring this group before this Court, to facilitate simultaneous adjudication of their claims and the substantially similar claims of the MDL Plaintiffs.  As detailed below, this scheme aligns neatly with the substantive requirements and policy underpinnings of Federal Rule of Civil Procedure 23.

Plaintiffs, through their undersigned counsel, seek relief on behalf of themselves, and on behalf of a class of all those surviving family members and estates of the victims of the September 11th attacks (the "Class"). Given that Plaintiffs and the members of the Class (the "Class Members") are similarly situated with regard to the facts and legal claims asserted in the First Consolidated Complaint, and given that the al Baraka Defendants' actions similarly

affected Plaintiffs and the proposed Class Members, this Court should certify the Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).[4]

## PROCEDURAL HISTORY

On March 10, 2004, the O'Neill Plaintiffs brought claims against the International Islamic Relief Organization ("IIRO"); Muslim World League ("MWL"); World Assembly of Muslim Youth ("WAMY"); Yassin Kadi ("Kadi"); and Dubai Islamic Bank ("DIB"), among others, under, *inter alia*, common law tort theories, the Alien Tort Claims Act, 28 U.S.C. §1350, the Anti-Terrorism Act, 18 U.S.C. §2333, and Civil Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. §1962(a). *See* Complaint, 04-cv-1923, (ECF No. 1) at ¶¶ 22-24, 35-85.  Plaintiffs also filed several amended pleadings, RICO Statements and More Definite Statements against these defendants. *See* FCC, at p. 10. Defendants WAMY, Kadi, and DIB moved to dismiss. ECF Nos. 954 (DIB), 1456 (WAMY), 1500 (WAMY), 1658 (Kadi). Defendants IIRO and MWL answered. ECF Nos. 1632, 1656.  The Court denied WAMY and DIB's motions to dismiss and granted Kadi's motion to dismiss. ECF Nos. 2252 (DIB) and 2312 (Kadi and WAMY). On appeal, Kadi was remanded for jurisdictional discovery. *See* ECF No. 2732. WAMY and DIB subsequently answered. ECF Nos. 2331 (DIB), 2369-76 (WAMY).[5]

---

[4] If the Court denies this Motion, undersigned counsel requests leave to amend the operative pleading to add additional plaintiffs to *Estate of John P. O'Neill, Sr., et al. v. Al Baraka Investment & Development Corp. et al.*, 04-cv-1923 (GBD) (SN) to preserve their claims against the al Baraka Defendants. *See American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553-54 (1974) (federal class actions toll relevant statutes of limitations for putative class members until a class certification decision is made).

[5] Other defendants in the case have defaulted. Plaintiffs also move for class certification against these defaulted defendants, which include, among others, Rabita Trust, Al Haramain Islamic Foundation, Inc., Benevolence International Foundation, the hijackers themselves, and various al Qaeda leaders.

3

## STATEMENT OF FACTS

### *The September 11th Attacks*

On the morning of September 11, 2001, thousands of innocent people were murdered when nineteen terrorists hijacked four commercial airplanes.  All of the hijackers were members of a terrorist network known as "al Qaeda," established and led by Osama bin Laden.  All of the hijackers received sponsorship, funding, training, and other support through the al Qaeda network.  In a coordinated attack, they caused two jets to crash into the World Trade Center in New York, a third to crash into the Pentagon Building in Arlington County, Virginia, and a fourth to crash into a field near the town of Shanksville, Pennsylvania, after courageous passengers stormed the hijackers and prevented the plane from reaching its apparent intended destination in Washington, D.C.

### *Allegations Against IIRO, MWL, Kadi, WAMY, and DIB*

As detailed in the record, the nature of the support provided by these defendants to al Qaeda has taken many forms, and viewed collectively reflects their intimate, systematic, and longstanding ties to al Qaeda. In this regard, Plaintiffs' pleadings and extrinsic evidence demonstrate that these defendants have, among other actions: (1) raised and laundered funds on behalf of al Qaeda; (2) channeled donated funds to al Qaeda; (3) provided financial and logistical support and physical assets to al Qaeda; (4) permitted al Qaeda members to use ostensible employment with their organizations as a vehicle for covertly traveling in furtherance of al Qaeda's operations; (5) performed reconnaissance within conflict regions on behalf of al Qaeda; (6) served as liaisons to localized terrorist organizations on behalf of al Qaeda, thereby assisting al Qaeda in expanding its operational base and sphere of influence; (7) funded and facilitated shipments of arms and supplies to al Qaeda; (8) funded camps used by al Qaeda to train soldiers and terrorists; (9) actively recruited Muslim youths on behalf of al Qaeda; (10) served as

channels for distributing information and documentation within al Qaeda, and from al Qaeda to the media; (11) disseminated publications designed to advance al Qaeda's radical Islamist ideology throughout the Muslim world and legitimize violent jihad against Christians and Jews on the grounds that they are "infidels" who do not deserve to live; (12) openly advocated for young Muslims to take up arms against Western and democratic societies (13) provided financial services and other forms of material support to al Qaeda, while disregarding warnings and refusing to adhere to even minimal banking industry standards designed to thwart the support of terrorist networks like al Qaeda through anti-terrorist and money laundering safeguards and "know your customer" regulations; and (14) otherwise provided material support to, aided and abetted, and/or conspired with al Qaeda, Bin Ladin, and/or the hijackers.

## THE CLASS REPRESENTATIVES

The O'Neill Plaintiffs—the proposed Class Representatives—are the Estate and surviving family of John P. O'Neill, Sr., lifelong FBI agent, who culminated his career as Special Agent in Charge of National Security at the Bureau's New York Field Office. This position encompassed being in charge of all counter-terrorism and counter-espionage cases at the Bureau's flagship office. *See* Affidavit of John P. O'Neill, Jr., dated January 15, 2020, ("J.P. O'Neill Aff.") at ¶ 4. Mr. O'Neill became Chief of Security for the World Trade Center less than two weeks before the September 11th attacks. Affidavit of Christine I. O'Neill, dated January 13, 2020, ("C.I. O'Neill Aff.") at ¶ 2. On the morning of September 11, 2001, Mr. O'Neill was at work when American Airlines Flight 11 hit the North Tower. *See* J.P. Aff. at ¶ 10. John P. O'Neill, Sr. was killed that Tuesday morning while helping people evacuate the World Trade Center. *See* C.I. Aff. at ¶ 3. His body was recovered under a stairwell in the North Tower. *Id.* He was survived by his mother, father, wife, and two (2) children. *Id* at ¶¶ 7, 8, 11.

docs-100230340.1

## CLASS DEFINITION

There were at least 2,977 innocent individuals killed immediately on or shortly after the morning of September 11, 2001. *See* Affidavit of Jerry S. Goldman, Esq., dated January 15, 2020 ("Goldman Aff."), at ¶ 3 & n. 5. All such individuals were killed based on the same acts committed by the hijackers, all of whom were members of bin Laden's al Qaeda organization. *Id.* at ¶ 4. As such, every Class Member was similarly affected by the material support the al Baraka Defendants provided in growing al Qaeda and planning and executing the September 11th attacks. *Id.* at ¶ 5. In light of these similar factual and legal circumstances, on March 10, 2004, Plaintiffs filed a Class Action Complaint against the al Baraka Defendants, which, as amended by the First Consolidated Complaint, defined the Class as follows:

> (1) all spouses, children, parents, or siblings of any individual who died at the World Trade Center in New York, NY, the Pentagon Building in Arlington County, Virginia, or in the airliner crash in Shanksville, Pennsylvania, as the result of terrorist attacks on September 11, 2001; and (2) all legal representatives (including executors, estate administrators and trustees) entitled to bring legal action on behalf of any individual who died as the result of terrorist attacks on September 11, 2001; but excluding (3) all individuals, and all spouses, children, parents, siblings, and legal representative of individuals identified by the Attorney General of the United States or otherwise shown to have perpetrated, aided and abetted, conspired in regard to, or otherwise supported the terrorist attacks of September 11, 2001.

FCC, at ¶¶ 14, 128.

This Motion seeks to certify the above Class only as to Class Members who do not presently have a pending case against the al Baraka Defendants. Specifically, Plaintiffs seek to restrict the Class as follows:

> (1) all spouses, children, parents, or siblings of any individual who died on or within seventy-two (72) hours of September 11, 2001, at the World Trade Center in New York, NY, the Pentagon Building in Arlington County, Virginia, or in the airliner crash in Shanksville, Pennsylvania, as the result of terrorist attacks on September 11, 2001; and (2) all legal representatives (including executors, estate administrators and trustees)

6

entitled to bring legal action on behalf of any individual who died on or within seventy-two (72) hours of September 11, 2001, at the World Trade Center in New York, NY, the Pentagon Building in Arlington County, Virginia, or in the airliner crash in Shanksville, Pennsylvania, as the result of terrorist attacks on September 11, 2001; but excluding (a) all individuals, and all spouses, children, parents, siblings, and legal representative of individuals identified by the Attorney General of the United States or otherwise shown to have perpetrated, aided and abetted, conspired in regard to, or otherwise supported the terrorist attacks of September 11, 2001; and further excluding (b) any person or estate identified in (1) or (2) who as of January 15, 2020 has a case pending in the Multidistrict Litigation entitled *In re Terrorist Attacks on September 11, 2001* (S.D.N.Y.), Index No. 03-md-1570, against defendants named in *Estate of John P. O'Neill, Sr., et al. v. Al Baraka Investment & Development Corp. et al.* (S.D.N.Y.)*,* Index No. 04-cv-1923 (GBD)(SN), but including the Estate of John P. O'Neill, Sr., the Estate of John F. O'Neill, the Estate of Dorothy A O'Neill, John P. O'Neill, Jr., Carol A. O'Neill, and Christine I. O'Neill.

In the event the Court certifies the above Class, Plaintiffs request leave to amend the Class Definition set forth in paragraphs 14 and 128 of the First Consolidated Complaint. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 463-64 (S.D.N.Y. 2018) ("a court is not bound by the class definition proposed in the complaint" and "has broad discretion to modify the class definition as appropriate"). As discussed in detail below, this proposed Class meets the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements necessary for class certification under Rule 23(b)(3).

## ARGUMENT

### I.   Legal Standard for Rule 23 Class Certification

For a matter to proceed as a class action, a plaintiff must satisfy the four prerequisites of numerosity, commonality, typicality, and adequacy, demonstrating that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately

7

protect the interests of the class." Fed. R. Civ. P. 23(a). In addition, while Rule 23(a) does not

expressly require that a class be definite in order to be certified, the Second Circuit recognizes an

"implied requirement of ascertainability." *Brecher v. Republic of Argentina*, 802 F.3d 303, 304

(2d Cir. 2015) (quoting *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006)).

In addition to satisfying the Rule 23(a) prerequisites, a plaintiff must qualify the proposed

class under one of three subsection Rule 23(b) categories. *Brown v. Kelly*, 609 F.3d 467, 476 (2d

Cir. 2010). Rule 23(b)(3)—the provision under which Plaintiffs move—"is appropriate in cases

in which common legal or factual issues predominate over individual issues and where a class

action is superior to other methods of adjudication." *Reyes v. City of Rye*, No. 13-cv-9051, 2016

U.S. Dist. LEXIS 99428 (S.D.N.Y. July 28, 2016). Plaintiffs need not prove, however, that the

legal or factual issues that predominate will be answered in their favor. *See Amgen Inc. v.

Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013).

It is "beyond peradventure that the Second Circuit's general preference is for granting

rather than denying class certification." *Leider v. Ralfe*, No. 01-cv-3137, 2003 WL 22339305, at

*11 (S.D.N.Y. Oct. 10, 2003). Therefore, district courts must give Rule 23 "'liberal rather than

restrictive construction,'" and "'adopt a standard of flexibility'" when applying it. *In re

Amaranth Natural Gas Commodities Litigation*, 269 F.R.D. 366, 375 (S.D.N.Y. 2010) (Daniels,

J.) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997)). "[I]f there is an error to

be made, let it be in favor of and not against the maintenance of the class action, for it is always

subject to modification should later developments during the course of the trial so require.'" *In

re Amaranth Natural Gas Commodities Litigation*, 269 F.R.D. at 378 (quoting *In re Alstom SA

Securities Litigation*, 253 F.R.D. 266, 275 (S.D.N.Y. 2008)). However, a certifying court "must

receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule

8

23 requirement has been met." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011). Although "a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 568 U.S. at 465-66 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

Here, class certification is sought pursuant to Rule 23(a) and Rule 23(b)(3). As discussed below, the proposed class meets each of the Rule 23(a) and (b)(3) criteria, therefore this Court should grant Plaintiffs' motion for class certification.[6]

## II.     Plaintiffs' Claims Satisfy the Rule 23(a) Requirements.

To certify a Rule 23 class, a plaintiff must first show the court that the four threshold requirements of Rule 23(a) are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.  Fed. R. Civ. P. 23(a). The Second Circuit also requires that the class be ascertainable. *Brecher*, 802 F.3d at 304. As discussed below, Plaintiffs meet these requirements.

### A.     The Class Satisfies the Numerosity Requirement.

Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a). "Impracticable" does not mean impossible, but simply difficult or inconvenient.  *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 179 (S.D.N.Y. 2005).  "Although precise calculation of the number of class members is not required, and it is permissible for the court to rely on reasonable inferences drawn from available facts, numbers in

---

[6] Plaintiffs timely submit this Motion pursuant to the Court's Order, dated November 4, 2019 (ECF No. 5266). Federal Rule of Civil Procedure 23(c)(1)(A) requires the Court to "determine by order whether to certify the action as a class action" at "an early practicable time after a person sues . . . ." Due to the complexities of this case, including prolonged delays in discovery and multiple appeals to the Second Circuit, a decision on class certification was not practicable until now, before dispositive motions practice. *See Novella v. Westchester Cty., N.Y. Carpenters' Pension Fund*, No. 02 Civ. 2192, 2004 U.S. Dist. LEXIS 26149, at *7 (S.D.N.Y. Dec. 29, 2004) ("Rule 23 does not prohibit the filing of a class certification motion until after a decision on the merits of the named individual plaintiff's claims.").

excess of forty generally satisfy the numerosity requirement." *Id.*; *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, the Class Members are the estates and surviving spouses, children, parents, and siblings of the estimated 2,977 victims of the September 11th attacks presently without a case pending in this MDL against the al Baraka Defendants.  As discussed in the Affidavit of Jerry S. Goldman, Esq., it is believed that approximately 800 9/11 families are not represented in this litigation against the al Baraka Defendants. *See* Goldman Aff. at ¶¶ 8-9.

Anderson Kill presently represents and has filed suit for over 350 9/11 estates against other defendants in this MDL. *Id.* at ¶ 10. Anderson Kill also presently represents and has filed suit for approximately 1900 spouses, children, parents, and siblings ("eligible family members") of 9/11 victims. *Id.*  This means that on average, Anderson Kill represents 5.42 eligible family members for every person killed on September 11, 2001. *Id.*  Of course, this number is an underestimation as the undersigned is aware that a significant number of additional eligible family members exist in the families Anderson Kill represents that we have not been able to contact or identify, have not otherwise retained us, or died post 9/11 without a personal representative having been appointed. *Id.*

Using this extremely conservative number (5.42), and multiplying it by the total number of 9/11 families (800) who presently do not have a case pending against the al Baraka Defendants yields approximately 4,330 family members, in addition to the over 800 estates without another pending case against these defendants. Totaling these two numbers together yields a potential class size of at least 5,130 Class Members. *Id.* at 11. A proposed class of over 5,130 people satisfies the numerosity requirement, which, as discussed above, is generally

presumed for proposed classes over 40 people. Accordingly, the proposed Class satisfies the Rule 23(a)(1) numerosity requirement.

**B.      There Are Questions of Law or Fact Common to the Class.**

"The commonality requirement [of Rule 23(a)(2)] is met if plaintiffs' grievances share a common question of law or fact." *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001) (quoting *Marisol A.*, 126 F.3d at 376). The commonality requirement is a "low hurdle" in comparison to Rule 23(b)(3)'s related predominance requirement. *In re Natural Gas Commodities Litigation*, 231 F.R.D. 171, 180 (S.D.N.Y. 2005). Commonality only requires one common question of law or fact, whereas predominance requires common questions of law or fact <u>and</u> that those common questions predominate over any individual questions.

Nonetheless, in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the Supreme Court refused to certify a class on grounds that the proposed class had not shown commonality sufficient to satisfy Rule 23(a)(2). The Class Members here meet Rule 23(a)(2)'s commonality requirement in spite of *Dukes*. The putative class members in *Dukes*, the roughly 1.5 million female employees of Walmart, alleged that Walmart had violated Title VII as to all of them. *Id*. at 343. The alleged legal violation of Title VII was insufficient to demonstrate commonality; rather the class "claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350.

The *Dukes* class failed because commonality requires more than a group of class members who have "all suffered a violation of the same provision of law." *Id*. at 350. Since Walmart's female employees alleged a pattern or practice of discrimination but worked under hundreds of different supervisors with different management practices and rationales for hiring and promotion, simply alleging a Title VII violation was insufficient. *Id*. at 352. Nevertheless,

the Supreme Court acknowledged that one common question capable of class-wide resolution is sufficient to show commonality: "We quite agree that for purposes of Rules 23(a)(2) <u>even a single common question will do</u>." *Id*. at 359 (internal quotations omitted) (emphasis added).

Here, the putative Class meets the commonality standard set forth in *Dukes*. The putative Class Members suffered the same injuries (death or death of a loved one) based on the same facts (generally, the al Baraka Defendants' support for al Qaeda and the hijackings). If these defendants in fact provided material support to the hijackers, that would resolve the question of these defendants' liability as to every Class Member. There are not certain representatives of the al Baraka Defendants whose actions affect only certain Class Members.

As discussed *infra* in Section III, liability determinations against the al Baraka Defendants would apply identically to all Class Members. This Court could also fashion a damages model on a class-wide basis now, as it has already issued judgments against Iran for many thousands of MDL Plaintiffs using a damages model that does not require the Court to make individualized damages determinations. *See* Goldman Aff. at ¶ 17. Similarly, the Victims Compensation Fund of 2001 ("VCF") used a standard damages model in handling claims for 9/11 victims. *See* PEC Letter to Magistrate Judge Sarah Netburn, dated January 10, 2020 Regarding USVSSTF Personal Injury Claims (ECF No. 5484) (describing the formula used to calculate damages for 9/11 victims).

For these reasons, the Class meets the Rule 23(a)(2) commonality requirement.

### C.     The O'Neills' Claims Are Typical of the Class's Claims.

"Typicality . . . requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted). Further, if "all members of the

class would benefit from the named plaintiffs' action," that "demonstrates that the typicality requirement is met." *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 206 (E.D.N.Y. 2005).

Here, Plaintiffs' claims and the Class Members' claims both arise from these defendants' provision of material support to al Qaeda; support relied upon to plan, fund, and execute the September 11th attacks. Furthermore, Plaintiffs' claims and the Class Members' claims both arise from the same legal causes of action alleged in the underlying pleadings. Further, the defenses alleged and briefed in the past by the al Baraka Defendants against Plaintiffs have applied equally to the Class Members, and on information and belief, any other defenses alleged or briefed in the future against Plaintiffs would continue to apply equally to the Class Members. In sum, "the other members of the class have the same or similar claims, the action is not based on conduct special or unique to the named plaintiffs, and the class members have been aggrieved by the same course of conduct." *Cortigiano*, 227 F.R.D. at 206; *see also* Goldman Aff., at ¶¶ 16-17; J.P. O'Neill Aff., at ¶ 24; Affidavit of Carol A. O'Neill, Jr., dated January 15, 2020, ("C.A. O'Neill Aff.") at ¶ 18; C.I. O'Neill Aff. at ¶¶ 28.

### D. The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Class.

As interpreted by the Second Circuit, Rule 23(a)(4) requires that: "1) plaintiff's interests are [not] antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."[7] *Baffa v. Donaldson, Lufkin &*

---

[7] A 2003 amendment to Rule 23 formalized—but did not substantively alter—the adequacy of counsel analysis. Fed. R. Civ. P. 23(g). The Rules Committee specifically stated that 23(g) was not intended to introduce new substantive elements to the class certification process. *Kalish v. Karp & Kalamotousakis, LLP*, 246 F.R.D. 461, 463 (S.D.N.Y. 2007). The new section has caused confusion for judges unsure which provision to focus on. *Id.*; *see also* 1 NEWBERG ON CLASS ACTIONS § 3:80 (5th Ed.). For sake of simplicity, Plaintiffs conduct the adequacy of counsel analysis under 23(a)(4) and submit that the same analysis would apply under 23(g), as many courts in this jurisdiction have previously done.

*Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Here, Plaintiffs and Plaintiffs' counsel meet the two-pronged adequacy test.

**1.      Plaintiffs' Interests and the Class's Interests Are Identical.**

"Class members," including the class representative(s) themselves, "must not have interests that are 'antagonistic' to one another." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). Plaintiffs filed this action in pursuit of justice for 9/11 victims and their loved ones. Plaintiffs and Class Members seek the same result from this litigation: accountability for those responsible for the deaths of those who lost their lives on September 11, 2001 and for the pain and suffering of their family members. *See* J.P. O'Neill Aff., at ¶ 24; C.A. O'Neill Aff., at ¶ 18; C.I. O'Neill Aff., at ¶ 28. The Class Representatives have and will continue to adequately protect the interest of the class and prosecute this action until resolution. *See* J.P. O'Neill Aff., at ¶¶ 22, 25; C.A. O'Neill Aff., at ¶¶ 17, 19; C.I. O'Neill Aff., at ¶ 27. There is no respect in which Plaintiffs' interests in the litigation diverge from the Class Members' interests in the litigation. Goldman Aff. at ¶ 21. As such, the nominated Class Representatives will adequately protect the interests of the class. *See Salim Shahriar*, 659 F.3d at 253 ("As to whether the representative parties will fairly and adequately protect the interests of the class, the Plaintiffs provided the District Court with adequate representation that the class representatives are prepared to prosecute fully the action and have no known conflicts with any class member.").

**2.      Class Counsel Is Adequate.**

Class counsel is an experienced litigator. Undersigned counsel has been practicing law for over forty (40) years and leads a team of attorneys and paralegals who have extensive litigation experience and experience in this case. Goldman Aff. at ¶ 25. Undersigned counsel presently represents thousands of putative class members in this MDL and has been actively and

14

intensely involved in this litigation since 2004. *Id.* at ¶ 26. Undersigned counsel has actively served on the PEC in the MDL for almost sixteen years. *Id.* at ¶ 27. He has significant experience working with other members of the PEC on this case and is intimately familiar with the facts and legal claims at issue. *Id.*

Undersigned counsel and other Anderson Kill attorneys have taken and defended depositions in this MDL, interviewed witnesses, retained experts, drafted substantive motions and sections of motions, crafted various letters to opposing counsel and to the Court; reviewed, edited, and commented on virtually every PEC filing in the case; and have attended virtually every hearing or court conference in the MDL since filing this case in 2004. *Id.* at ¶ 28. Undersigned counsel also regularly participates in PEC calls, which can occur several times a week; regularly participates in PEC working groups; regularly meets in-person with members of the PEC; and receives and responds to many dozens of daily email correspondence and phone calls with members of the PEC regarding litigation strategy and developments in the case. *Id.* at ¶ 29. Since 2004, undersigned counsel has devoted the bulk of his practice to litigating this MDL. Accordingly, both Plaintiffs and their counsel will adequately represent the Class.

   **E.     The Class Is Ascertainable.**

While Rule 23(a) does not expressly require that a class be definite in order to be certified, the Second Circuit has "recognized an implied requirement of ascertainability." *Brecher*, 802 F.3d at 304.  "[T]he touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.* (internal quotation marks omitted). "A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Id*. at 305 (internal citations omitted). Class members need not necessarily be identified at the time of class

certification, but "they must be ascertainable at some stage of the proceeding." *See id.*; *see also Bakalar v. Vavra*, 237 F.R.D. 59, 64 (S.D.N.Y. 2006).

Here, it is administratively feasible to identify the members of the Class. Just a few blocks away from this courthouse is a memorial with a list of names of those who died as a result of the September 11th attacks. Goldman Aff. at ¶ 33. Official databases exist that document the number and name of each person who was killed as a result of the attacks, and many of these individuals' estates and their families are already before this Court in some capacity. *Id.* The First Consolidated Complaint filed in this case attached and incorporated by reference a list of individuals who were murdered on September 11, 2001. *See* FCC, Exhibit A, pp. 1-70 (ECF No. 1570). Based on Anderson Kill's own investigations and research, we have been able to identify, contact, and speak with thousands of 9/11 family members and personal representatives of 9/11 victim estates. *Id.* at ¶ 35. Accordingly, the al Baraka Defendants and the Court can identify the members of the Class.

## III.     This Action Satisfies the 23(b)(3) Requirements.

In addition to meeting the four prerequisites of Rule 23(a), a proposed class action must also be "maintainable" under one of the three Rule 23(b) categories. *In re Simon II Litigation*, 407 F.3d 125, 132 (2d Cir. 2005). Plaintiffs seek to certify a Rule 23(b)(3) class, which requires that: (1) the questions of law or fact common to the members of the class predominate over questions affecting only individual members ("predominance"); and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy ("superiority"). Fed. R. Civ. P. 23(b)(3). As set forth below, the Class is appropriate for certification under Rule 23(b)(3).

docs-100230340.1

A.     **Common Questions of Law and Fact Predominate Over Individual Questions, in the Liability Context and the Damages Context.**

To meet the predominance requirement of Rule 23(b)(3), Plaintiffs must establish that those issues "subject to generalized proof . . . predominate over those issues that are subject only to individualized proof." *In re Nassau County Strip Search Cases*, 461 F.3d 219, 227-28 (2d Cir. 2006); *Heerwagen v. Clear Channel Communications*, 435 F.3d 219, 226 (2d Cir. 2006). Courts should "focus on the liability issue . . . and if the liability issue is common to the class, common questions are held to predominate over individual questions." *Dziennik v. Sealift, Inc.*, No. 05-CV-4659, 2007 WL 1580080, at *9 (E.D.N.Y. May 29, 2007) (internal citation omitted).

Courts regularly certify mass tort cases that derive from what the Supreme Court in *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997) termed a "common cause or disaster." *See, e.g., In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 220 F.R.D. 195, 205 (S.D.N.Y. 2003) (certifying class arising out of train fire within MDL); *In re MTBE Products Liability Litigation*, 241 F.R.D 435, 448 (S.D.N.Y. 2007) (certifying class arising out of ruptured oil pipeline); *Collins v. Olin Corp.*, 248 F.R.D. 95, 105 (D. Conn. 2008) (citing *In re VisaCheck/MasterMoney Antitrust Litigation*, 280 F.3d 124, 141 (2d Cir. 2001)) (certifying class arising out of hazardous waste seepage)). Classes stemming out of a single disaster are readily certifiable because "causation can be determined on a class-wide basis …." *In re MTBE Prods. Liab. Litig.*, 241 F.R.D. at 448; *see also id.* at 447 (listing appellate cases nationwide where classes were certified based on injury stemming from a single event). In other words, "certification is generally granted in a tort case where there is a demonstrated cohesiveness of the class due to a shared experience that is confined in time and place and produces similar effects." *Id.* at 448 (quoting *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456, 477

(S.D.N.Y. 2005)).  Such classes have been certified in "increasing number" since the late 1970s. *Amchem*, 521 U.S. at 625.

Since the instant case against the al Baraka Defendants began, for almost sixteen years, the essential facts, procedural history, and legal issues have all been generally applicable to all 9/11 victims and their family members. Goldman Aff. at ¶ 37. This includes the allegations, facts, and evidence in the Complaints; the issues extensively briefed in preliminary motion practice; decisions of this Court and of the Second Circuit in response to the above-referenced preliminary motions; the defenses raised in Answers; discovery requests made and received; logistical and legal issues associated with conducting discovery; discovery disputes extensively briefed and ultimately decided by this Court; the resulting discovery produced; and the depositions conducted so far. *Id.* Every issue in this litigation so far against these defendants has been applicable to all 9/11 victims and their eligible family members. *Id.*

Undersigned counsel anticipates that upcoming discovery, including expert discovery; additional motion practice, such as summary judgment briefing; and, ultimately, trial will continue to have general applicability to all 9/11 victims and their family members. *Id.* at ¶ 38.

Indeed, the sole issue right now before the Court (as it has been for the past sixteen (16) years), is the connection between the al Baraka Defendants on the one hand and the hijackers and al Qaeda on the other hand in the planning, funding, and execution of the most horrific terrorist attack on U.S. soil in this country's history. *Id.* at ¶ 39. Even the jurisdictional issues before the Court generally turn on this connection. *Id.* The Court's ultimate ruling on this issue would be generally applicable to all Class Members, as every Court ruling to this point has been. *Id.*

docs-100230340.1

The proposed Class arises from a common cause or disaster—the September 11th attacks. Each Class Member suffered the loss of a family member or is the estate of a person who died on 9/11, and each Class Member seeks justice and accountability from the responsible parties.

### B.     The Court Has Sufficient Information to Certify a Damages Class Now.

Common questions concerning liability often support a finding of predominance even when damages differ from one class member to another.  *In re VisaCheck/MasterMoney Antitrust Litigation*, 280 F.3d at 139 (collecting cases). Any concern expressed about certifying mass tort cases is rooted in the fact that mass torts sometimes require individual proof of injury. *See*, *e.g.*, *In re "Agent Orange" Prod. Liab. Litig*., 818 F.2d 145, 165 (2d Cir. 1987) (whether Agent Orange actually caused harm would have to be individually determined); *Pasternak v. Upjohn Co.*, No. 92-cv-5987, 1994 WL 16495152, at *5 (E.D.N.Y. Sept. 19, 1994) (damages depended on amount of contaminated drug ingested and individual circumstances of ingestion). One court, interpreting *Amchem*, specifically differentiated damages suffered from an airplane crash—which would not preclude class certification—and damages suffered from a "typical mass tort" like asbestos exposure—which could preclude class certification. *See Fox v. Cheminova, Inc.*, 213 F.R.D. 113, 129 (E.D.N.Y. 2003).  This case, of course, falls squarely into the first category, as each Class Member's suffered the same injury—death or death of a loved one—at the hands of the same hijackers, all of whom were enabled to conduct the hijackings based on similar alleged support from the al Baraka Defendants.

Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) does not change this analysis.  There, the Supreme Court overturned a lower court's decision to certify an antitrust class, holding that the class members' damages model was based in part on theories of class-wide antitrust impact that were explicitly disregarded by the district court in reaching its decision to certify the class.  *Id*. at 34-37.  The Court did not address any of the other alleged factual or legal similarities among the

class members.  While class-wide proof of damages can be a factor in the predominance analysis, it is "well-nigh universal" that individual damages questions do not automatically preclude class certification under Rule 23(b)(3), as the dissent in *Comcast Corp*. pointed out.  *Id.* at 42 (Breyer, J., dissenting) (listing cases where class was certified despite necessity of individualized proof of damages).

Here, the proposed Class clearly arises from "a common cause or disaster"—the September 11th attacks.  It is therefore analogous to the various "common cause or disaster" cases above, not to the asbestos mass tort class the Supreme Court declined to certify in *Amchem*.

Indeed, here, many groups of MDL Plaintiffs have already obtained judgments against Iran for its role in the September 11th attacks. Goldman Aff. at ¶ 43. In issuing those judgments, the Court used a standard formula for determining the non-economic damages each decedent's estate and family member was entitled to receive from Iran. *Id*. Examples of this Court's Orders (ECF Nos. 5064, 5063, 3175, 3229, 2623) are incorporated herein by reference. *See also* Order of Magistrate Judge Maas, dated July 30, 2012 (ECF No. 2618) (setting standard damages amounts for 9/11 family members). While this methodology may not be the only correct model that the Court could use in assessing damages against the al Baraka Defendants, the existence of a damages model that the Court has already adopted in this MDL, without needing to make individualized damages determinations, strongly suggests that enough common issues predominate regarding damages to certify a damages class now. Goldman Aff. at ¶ 43.

Similarly, the VCF utilized a specific damages model for calculating economic damages for 9/11 estates. *Id*. at ¶ 44. In many cases, MDL Plaintiffs have updated these economic damages calculations using similar assumptions for purposes of securing judgments against Iran, and the Court has adopted these damages calculations in issuing judgments against Iran. *Id*. The

20

existence of damages models that were previously used for the vast majority of 9/11 estates before the VCF and this Court, strongly suggests that common issues relating to damages predominate over individual ones, and to the extent they do not, the Court could create subclasses. *See* Letter to Magistrate Judge Sarah Netburn, dated January 10, 2020 Regarding USVSSTF Personal Injury Claims (ECF No. 5484); *see In re Literary Works in Electronic Databases Copyright Litigation*, 654 F.3d 242, 254 (2d Cir. 2011).

In any event, even if this Court determines that individualized proof of damages are necessary, this does not counsel against class certification.  The overwhelming number of common questions of law and fact make clear that common issues predominate over individual ones.

**C.    Completion of Damages Discovery May Aid the Court in Determining Whether to Certify a Damages Class.**

Courts in this Circuit routinely bifurcate the certification of a liability class from certification of a damages class. *See, e.g.*, *Augustin v. Jablonsky (In re Nassau Cty. Strip Search Cases)*, 461 F.3d at 227 ("we hold that a court may employ subsection (c)(4) to certify a class as to liability regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement"); *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 659 (S.D.N.Y. 2013) ("[T]he class is certified as to liability, but not as to damages. Plaintiffs can, of course, move to certify their class as to damages later in the litigation, if they prove successful on the merits."). "[I]t is not uncommon to have class treatment for certain aspects of damages while leaving individual-specific damages issues to alternative mechanisms, such as sub-classes, separate determinations, and others." *Betances v. Fischer*, 403 F. Supp. 3d 212, 237 (S.D.N.Y. 2019) (citing *In re Literary Works in Electronic Databases Copyright Litigation*, 654 F.3d 242, 254 (2d Cir. 2011) (finding the district court abused its discretion by not creating subclasses for damages following

21

settlement)); *Gulino v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, No. 96-cv-8414, 2016 WL

4129111, at \*1 (S.D.N.Y. Aug. 3, 2016) (using a special master for damages calculations

following a class-wide determination on liability); *Saravia v. 2799 Broadway Grocery LLC*, No.

12-cv-7310, 2014 U.S. Dist. LEXIS 67831, 2014 WL 2011720, \*3-8 (S.D.N.Y. May 16, 2014)

(certifying a global liability class and subclasses for damages).

Here, this Court previously bifurcated liability and damages discovery. *See* Order of

Magistrate Judge Maas, dated October 28, 2010 (ECF No. 2381) ("Fact discovery regarding

liability issues will precede fact discovery regarding damages"); *see also* Order of Magistrate

Judge Maas, dated July 15, 2010 (ECF No. 2260) ("Unless the Court otherwise directs, the

foregoing discovery shall be limited to liability and shall not address the calculation of

damages."). In light of these Orders, it may be premature to determine whether common issues

relating to damages predominate over individual issues.  *See* Goldman Aff. at ¶ 41. In which

case, the completion of damages discovery may aid the Court's decision on whether to certify a

damages class in the future.

> **D.      A Class Action Is Superior to Other Available Methods for the Fair and
>           Efficient Adjudication of this Controversy for these Plaintiffs.**

In determining whether the "superiority" requirement of Rule 23(b)(3) is satisfied, the

Court must consider whether a class action "would achieve economies of time, effort, and

expense, and promote … uniformity of decision as to persons similarly situated, without

sacrificing procedural fairness or bringing about other undesirable results."  *Amchem*, 521 U.S. at

615.  In so doing, the Court must consider the following four factors:  (i) the class members'

interest in individually controlling the prosecution of separate actions; (ii) the extent and nature

of any litigation concerning the controversy already begun by class members; (iii) the

desirability or undesirability of concentrating the litigation of the claims in the particular forum; and, (iv) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3).

Here, class treatment is the superior method of adjudication.  By combining the Class Members with the many existing MDL Plaintiffs, this Court can adjudicate the Class's claims and the MDL Plaintiffs' claims with the aid of the exact same discovery, motion practice, and trial proceedings. Indeed, after certification, just three plaintiffs groups (*Burnett*, *Ashton*, and *O'Neill*) would encompass over 90% of all death claims occurring on September 11, 2001 or its immediate aftermath against the al Baraka Defendants.  Goldman Aff. at ¶ 47. As discussed below, each of Rule 23's four enumerated superiority considerations counsel in favor of class certification.

> **1.      The Class Members Would Not Benefit from Individually Controlling This Litigation.**

In light of the legal and factual issues common to the Class Members, individual prosecution of these claims would benefit no one.  Many of the substantive issues at play are already being litigated collectively in this MDL overseen by an experienced team of plaintiffs' lawyers including proposed class counsel.  *Id*. at ¶ 48. If Class Members litigated their claims separately, they would be unable to benefit from the years of existing discovery and motion practice generally applicable to all Class Members, and indeed, newly filed cases are still being referred to this MDL for this exact reason. *Id*.

> **2.      The Existing MDL Supports Rather Than Detracts from the Argument that Class Treatment Is the Superior Method of Adjudicating Class Members' Claims.**

It is common practice for a Rule 23 class action to exist within a related multidistrict litigation (MDL) proceeding.  *See*, *e.g.*, *In re Vitamin C Antitrust Litigation*, 279 F.R.D. 90, 97 (E.D.N.Y. 2012) (certain plaintiffs moved for class certification after individual cases were

consolidated); *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 241

F.R.D. at 189 (same); *In re Pfizer Securities Litigation*, 282 F.R.D. 38, 41-42 (S.D.N.Y. 2012)

(multiple class actions consolidated into one multidistrict litigation); *In re Sony Corp. SXRD

Rear Projection Television Marketing, Sales Practices and Products Liability Litigation*, No. 09-

md-2102, 2010 WL 3422722, at *1 (S.D.N.Y. Aug. 24, 2010) (same); *see also In re Zyprexa

Products Liability Litigation*, 253 F.R.D. 69, 78 (E.D.N.Y. 2009) (Weinstein, J.), *rev'd on other

grounds*, 620 F.3d 121 (MDL structured as "quasi-class action" for purposes of overseeing

settlements, attorneys' fees). "Mass tort actions are especially suited to MDL treatment," even

when the potential MDL includes one or more class action suits.  *In re "Agent Orange" Prod.

Liab. Litig.*, 304 F. Supp. 2d 404, 416-17 (E.D.N.Y. 2004).

Indeed, MDLs and Rule 23 class actions often coexist in exactly the manner Plaintiffs

propose here: the class grows out of an individual MDL lawsuit and is then certified and litigated

along with the remaining individual claims, in order to ensure that the court has "full control

over the entire litigation" and to provide "the greatest opportunity for judicial efficiency and

economy of time and money."  *In re Agent Orange Product Liability Litigation*, 506 F. Supp.

762, 785 (E.D.N.Y. 1980); *see also In re Vitamin C Antitrust Litigation*, 279 F.R.D. at 97; *In re

Plumbing Fixture Cases*, 298 F. Supp. 484, 488 (J.P.M.L. 1968).

The similarities between the above cases and the instant case are unmistakable.  The fact

that the Class stems from a suit currently in the MDL should not dissuade this Court from

granting class certification.  If anything, the fact that the Class was born in the MDL is additional

evidence that it satisfies the Rule 23 requirements. Indeed, by certifying within this existing

MDL, a class of claimants who have not yet filed suit against the al Baraka Defendants, one

court could hear all possible claims against the al Baraka Defendants. For example, in *In re*

*Agent Orange*, Judge Weinstein chose to certify the entire MDL as a class to give the court "full control over the entire litigation." 506 F. Supp. at 785. The court held that authorizing a class to encompass the MDL "provides the greatest flexibility and the greatest opportunity for judicial efficiency and economy of time and money." *Id.* Even though the proposed class does not encompass plaintiffs in this MDL who already initiated claims against the al Baraka Defendants, the Class's and the MDL Plaintiffs' claims would still be adjudicated together within the context of the MDL where the Court can issue decisions and orders controlling entire groups of plaintiffs or defendants to avoid inconsistencies.

Given the value of a global resolution of this complex litigation, ensuring that all possible claims are adjudicated before the same tribunal is reasonable. Plaintiffs respectfully submit that the proposed class action provides this Court with an opportunity to unite all present and future claimants, increasing the likelihood that if IIRO, MWL, WAMY, Kadi, DIB and other defendants named in the various MDL actions seek "global peace," a settlement can be reached.

### 3.    This Case Is Clearly Manageable as a Class Action.

The final subpart of the superiority inquiry asks whether "extraordinary difficulties are likely to be encountered" if a class is certified. *Mentor v. Imperial Parking Systems, Inc.*, 246 F.R.D. 178, 184 (S.D.N.Y. 2007). There is nothing to suggest that any such "extraordinary difficulties" will arise. Thousands of pending claims, all of which are substantively identical to the Class's claims, are already being successfully managed by this Court. By adding in all potential claims via the Class, the litigation becomes more efficient while remaining equally manageable.

### CONCLUSION

In light of the facts of this case and the case law discussed above, Plaintiffs respectfully request that the Court grant their Motion for Class Certification and Related Relief.

25

New York, New York
January 15, 2020

By:   /s/ *Jerry S. Goldman*
        Jerry S. Goldman, Esq.
        Bruce Strong, Esq.
        Samantha E. Smith, Esq.
        Stephen Wah, Esq.
        ANDERSON KILL P.C.
        1251 Avenue of the Americas
        New York, NY 10020
        Ph: (212) 278-1000
        Fax: (212) 278-1733
        jgoldman@andersonkill.com
        bstrong@andersonkill.com
        ssmith@andersonkill.com
        swah@andersonkill.com

        Attorneys for Estate of
        John P. O'Neill, Sr., et al.

26