USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/21/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In Re:

TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

-----------------------------------------------------------------X

03-MDL-1570 (GBD)(SN)

**REPORT AND
RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:

> Ashton et al. v. al Qaeda Islamic Army, et al., 1:02-cv-6977 (GBD)(SN)
> Bauer et al. v. al Qaeda Islamic Army, et al., 1:02-cv-7236 (GBD)(SN)
> Burlingame v. Bin Laden, et al., 1:02-cv-7230 (GBD)(SN)
> Cheryl Rivelli, et al. v. Islamic Republic of Iran, 1:18-cv-11878 (GBD)(SN)

On August 31, 2015, the Honorable George B. Daniels granted the Ashton, Bauer, and Burlingame Plaintiffs an Order of Judgment by default against the Islamic Republic of Iran. See Order of Judgment, ECF No. 3021. On September 3, 2019, the Honorable George B. Daniels granted the Rivelli Plaintiffs an Order of Judgment by default against the Islamic Republic of Iran. See Order of Judgment, ECF No. 5047. The Court has issued numerous orders since addressing the above-mentioned plaintiffs' requests for damages. Here, pursuant to § 1605A of the Foreign Sovereign Immunities Act, plaintiffs in separate motions seek an award of solatium damages on behalf of nine non-immediate family members of victims of the terrorist attacks on September 11, 2001. ECF Nos. 5402, 5407, 5420, 5428. Plaintiffs' motions should be GRANTED in part and DENIED in part.

## DISCUSSION

The Court assumes the parties' familiarity with the extensive rulings related to this multi-district litigation. As relevant here, on October 14, 2016, the Court detailed a framework to evaluate damages requests by non-immediate family members of the victims of the September 11 attacks. ECF No. 3363, adopted by, ECF No. 3384 ("Hoglan II"). The Court clarified this framework in a subsequent decision issued on August 8, 2017. ECF No. 3676, adopted by, ECF No. 3795 ("Hoglan IV"). The present motions ask the Court to apply the legal principles set forth in Hoglan IV and award solatium damages to nine "functional equivalents" of immediate family members. In addition, in keeping with the Court's prior rulings, plaintiffs seek 4.96 percent per annum from September 11, 2001, until the date of judgment, and permission to file applications for any remaining plaintiffs at a later date.

Consistent with the framework set forth in Hoglan IV, the Court analyzes each plaintiff's claim for solatium damages individually using the objective criteria set forth therein. See generally Hoglan IV.

### I. THE BURLINGAME IX PLAINTIFFS' CLAIMS

**A. Christopher Dowdell**

Christopher Dowdell is the stepchild of 9/11 decedent Brian Magee. Christopher's mother married Brian on August 7, 1983. ECF No. 5403-2, Christopher Dowdell Decl. ¶ 2. Christopher, his mother, and his two brothers lived with Brian from 1983, when he was 15 years old, until he moved out at the age of 28. Id. ¶ 3. Christopher's mother and biological father were divorced in 1977, after which time Christopher's biological father was absent for most of his life. Id. ¶ 4. Christopher has not spoken to his biological father since 1987, and his biological father rarely paid his court-mandated child support. Id. Brian functioned as Christopher's father in all

2

aspects other than biology. Id. ¶ 5. Brian did all the things that a natural father would do, providing Christopher with financial and emotional support, teaching him, guiding him, and providing all the care, companionship, and nurturing that a father would give his son. Id. Brian helped pay for Christopher's college tuition and helped Brian move into his own apartment once he moved out. Id. ¶¶ 8, 10. Accordingly, the Court finds that Brian Magee was the functional equivalent of Christopher Dowdell's father. Because Christopher was 15 years old when Brian married his mother and moved in with him, the Court recommends that Christopher Dowdell be awarded $4,250,000 in solatium damages, half the amount paid to the biological or adopted children of 9/11 victims.

### B. William Dowdell

William Dowdell is the stepchild of 9/11 decedent Brian Magee. William's mother married Brian on August 7, 1983. ECF No. 5403-3, William Dowdell Decl. ¶ 2. William, his mother, and his two brothers lived with Brian from 1983, when he was 13 years old, until he moved out at the age of 25. Id. ¶ 3. William's mother and biological father were divorced in 1977, after which time William's biological father was absent for most of his life. Id. ¶ 4. William has not spoken to his biological father since 1987, and his biological father rarely paid his court-mandated child support. Id. Brian functioned as William's father in all aspects other than biology. Id. ¶ 5. Brian did all the things that a natural father would do, providing William with financial and emotional support, teaching him, guiding him, and providing care and companionship. Id. Brian helped pay for William's high school and college tuition, and took many vacations with William and the rest of the family. Id. ¶¶ 7, 8. Accordingly, the Court finds that Brian Magee was the functional equivalent of William Dowdell's father. Because William was 13 years old when Brian married his mother and moved in with him, the Court recommends

that William Dowdell be awarded $4,250,000 in solatium damages, half the amount paid to the biological or adopted children of 9/11 victims.

### C. Matthew Dowdell

Matthew Dowdell is the stepchild of 9/11 decedent Brian Magee. Matthew's mother married Brian on August 7, 1983. ECF No. 5403-4, Matthew Dowdell Decl. ¶ 2. Matthew, his mother, and his two brothers lived with Brian from 1983, when he was eight years old, until he moved out at the age of 25. Id. ¶ 3. Matthew's mother and biological father divorced when Matthew was three years old, after which Matthew did not have much of a relationship with his biological father. Id. ¶ 4. Brian functioned as Matthew's father in all aspects other than biology. Id. ¶ 5. Brian did all the things that a natural father would do, providing Matthew with financial and emotional support, teaching him, guiding him, and providing care and companionship. Id. Brian played catch with Matthew on the lawn, rooted for Matthew from the sidelines of his games, and was always available to help Matthew with his schoolwork. Id. ¶ 6. Brian paid for Matthew to attend high school, and helped him pay his college tuition. Id. ¶ 9. Accordingly, the Court finds that Matthew Dowdell was the functional equivalent of Brian Magee's child. Because Matthew was eight years old when Brian married his mother and moved in with him, the Court recommends that Matthew Dowdell be awarded $8,500,000 in solatium damages, the full amount paid to the biological or adopted children of 9/11 victims.

## II. THE ASHTON/BAUER PLAINTIFF'S CLAIM

### D. Dayna Spordone

Dayna Spordone is the stepdaughter of 9/11 decedent Milton Bustillo. Milton came into Dayna's life when she was only three years old. ECF No. 5408-2, Dayna Spordone Decl. ¶ 2. Dayna's mother met Milton in 1996, and Milton moved into the apartment that Dayna and her

4

mother shared in 1998, when Dayna was four years old. Id.; ECF No. 5408-3, Laura Bustillo Decl. ¶ 2. Dayna's biological father was never a part of her life, and he never saw her, having relinquished all of his parental rights shortly after she was born. Laura Bustillo Decl. ¶ 2. Shortly after Milton moved in with Dayna and her mother, Dayna felt like she had a real and true father. Id. ¶ 5. Milton loved and cared for Dayna, helping her with her schoolwork, reading to her, and teaching her to draw and paint. Id. When Dayna's school held a Father Daughter Valentine's Day Dance, Dayna asked Milton to come with her, and Milton proudly accepted. Id. When Dayna's mother began having complications during her pregnancy with Dayna's sister, Milton took over Dayna's daily care, getting her up in the morning and ready for school, and picking her up from the after-school program to go home. Id. ¶ 6. Accordingly, the Court finds that Milton Bustillo was the functional equivalent of Dayna Spordone's father. Because Milton began living with and parenting Dayna at the age of four years old, the Court recommends that Dayna be awarded $8,500,000 in solatium damages, the full amount paid to the biological or adopted children of 9/11 victims.

### III.     THE RIVELLI PLAINTIFFS' CLAIMS

#### E.  Christopher Michael Ruggieri

Christopher Michael Ruggieri is the stepson of 9/11 decedent Joseph Rivelli, Jr. Christopher's parents separated in 1992, when he was two years old. ECF No. 5422-2, Christopher Michael Ruggieri Decl. ¶ 3. Christopher's mother divorced his father in 1995, and his mother was awarded sole custody of Christopher and his sister. Id. Joseph Rivelli, Jr. came into Christopher's life in 1992, when he began dating Christopher's mother. Id. ¶ 4. In 1994, Christopher's mother and Joseph purchased their family home in Inwood, New York. Id. ¶ 6. The couple got married in 1997, officially becoming a family, though Christopher had

considered Joseph to be his father long before that. Id. ¶ 7. Christopher was approximately seven years old when Joseph and his mother married. Even though Christopher had a relationship with his biological father, he always considered his stepdad as the real father in his life and the one who he truly counted on. Id. ¶ 8. Joseph provided the financial support for Christopher's family, particularly since they rarely received child support from Christopher's biological father. Id. ¶ 9. Joseph treated Christopher like his son, emotionally and socially, to everyone he came across. Id. ¶ 10. Joseph referred to Christopher as his child, not his stepchild. Id. Joseph taught Christopher how to ride a bike, would do the school shopping with Christopher, his mom, and his sister before the start of each school year, would read to Christopher at bedtime, and coached Christopher at football. Id. ¶ 11. Christopher was ten years old when Joseph was killed on 9/11. Id. ¶ 13. Despite the fact that Christopher's biological father was not wholly absent from Christopher's life, Christopher's family rarely received child support from him, and Joseph parented and cohabited with Christopher for many years. Accordingly, the Court recommends that Christopher Michael Ruggieri be awarded $8,500,000 in solatium damages, the full amount paid to the biological or adopted children of 9/11 victims.

### F. Phylicia Ruggieri

Phylicia Ruggieri is the stepdaughter of 9/11 decedent Joseph Rivelli, Jr. Phylicia's parents separated in 1992, when she was six years old. ECF No. 5422-3, Phylicia Ruggieri Decl. ¶ 3. Phylicia's mother divorced her father in 1995, and her mother was awarded sole custody of Phylicia and her brother. Id. Joseph Rivelli, Jr. came into Phylicia's life in 1992, when he began dating Phylicia's mother. Id. ¶ 4. In 1994, Phylicia's mother and Joseph purchased their family home in Inwood, New York. Id. ¶ 6. The couple got married in 1997, officially becoming a family, though Phylicia had long considered Joseph to be her father before that. Id. ¶ 7. Phylicia

was approximately 11 years old when Joseph and her mother married. Even though Phylicia had a relationship with her biological father, she always considered her stepdad as the real father in her life and the one who she truly counted on. Id. ¶ 8. Joseph provided the financial support for Phylicia's family, particularly since they rarely received child support from Phylicia's biological father. Id. ¶ 9. Joseph treated Phylicia like his daughter, emotionally and socially, to everyone he came across. Id. ¶ 10. Joseph referred to Phylicia as his child, not his stepchild. Id. Joseph would do the school shopping with Phylicia, her mom, and her brother before the start of each school year, would read to Phylicia at bedtime, and give her advice about boys. Id. ¶ 11. Phylicia was 15 years old when Joseph was killed on 9/11. Id. ¶ 13. Despite the fact that Phylicia's biological father was not wholly absent from her life, Phylicia's family rarely received child support from him, and Joseph parented and cohabited with Phylicia for many years.

The Court, however, is constrained to award Phylicia half the solatium damages awarded to biological or adopted children of 9/11 victims. In prior rulings, the Court has established that the relevant period to calculate cohabitation between stepparents and stepchildren is from the date of marriage. Here, Phylicia was approximately 11 years old when Joseph began living with her as her stepfather. This rule is not intended to undervalue the time Phylicia spent living with Joseph before he married her mother; but the Court's role is to establish objective standards that can be applied widely. Accordingly, the Court recommends that Phylicia Ruggieri be awarded $4,250,000 in solatium damages, the half amount paid to the biological or adopted children of 9/11 victims.

## IV.   THE <u>ASHTON XVI</u> PLAINTIFFS' CLAIMS

### G.  Justin Sivin

Justin Sivin is the stepson of 9/11 decedent Joel Miller. Justin's mother and Joel got engaged when Justin was 13 years old, and got married when Justin was about 15 years old. ECF No. 5429-2, Justin Sivin Decl. ¶ 3. Justin resided in the same household as Joel from that point on until his death, when Justin was 21 years old. <u>Id.</u> Though Justin's biological father was also in Justin's life at the time Joel started dating Justin's mother, he died from a heart attack a few months after Justin's bar mitzvah. <u>Id.</u> ¶ 2. Joel was the only father figure that Justin had in his life from age 13 and on. <u>Id.</u> ¶ 4. Joel took Justin to school, attended all of his football games on Saturday when his mother was working, and went to every choir recital that he was in in high school. <u>Id.</u> ¶ 5. In every way, Joel acted like a father to Justin. <u>Id.</u> ¶ 7. When Justin's mother and Joel were married, Joel insisted that their will include Justin's brother, Justin, and Joel's biological son as equals. <u>Id.</u> Accordingly, the Court finds that Joel Miller was the functional equivalent of Justin Sivin's father. Because of Justin's age at the time that Joel became a part of his family, the Court recommends that Justin Sivin be awarded $4,250,000 in solatium damages, half the amount paid to the biological or adopted children of 9/11 victims.

### H.  Maxwell Sivin

Maxwell Sivin is the stepson of 9/11 decedent Joel Miller. Maxwell was around 13 years old when he first met Joel, after Maxwell's mother had separated from his father. ECF No. 5429-2, Maxwell Sivin Decl. ¶ 2. Maxwell's mother and Joel became engaged and got married two years later. <u>Id.</u> While Maxwell's biological father was still in his life at the time he met Joel, he died when Maxwell was just 15 years old. <u>Id.</u> Joel was the only father figure that Maxwell had from the age 15 and on. <u>Id.</u> Maxwell lived with his mother and Joel from the time that he was

8

around 17 years old until the time of Joel's death, when Maxwell was 22 years old. Id. ¶ 3. Joel guided Maxwell through high school, college, and law school, and treated all three of his boys (Joel's biological son, as well as Maxwell's biological brother Justin) as if they were one of his own. Id. ¶ 5. Joel was involved in all of Maxwell's family activities, including sports, the holidays, dinners, and day-to-day activities. Id. ¶ 6.

The Court is constrained to conclude that Joel Miller was not the functional equivalent of Maxwell Sivin's father. In Hoglan IV, the Court reaffirmed that "any step-relative receiving solatium damages must demonstrate that they continuously cohabited with the decedent for a significant period of time prior to the date the claimant (for stepchild claims) . . . turned 18 and attained the age of majority. This period of time is presumptively two years." See Hoglan IV at 13. In the present case, Maxwell only began cohabiting with Joel continuously from the age of 17, less than the two-year presumption that the Court applies. Accordingly, the Court recommends that Maxwell Sivin's claim for solatium damages be DENIED.

### I. Donald Scauso

Donald Scauso is the stepson of 9/11 decedent Dennis Scauso. Denis married Donald's mother in 1993, when Donald was three years old, and Donald took his last name. ECF No. 5429-2, Donald Scauso Decl. ¶ 2. Donald's biological father was absent from his life from the time Donald was three months old. Id. ¶ 3. Donald resided with and was raised by Dennis from the age of three until Dennis's death on 9/11. Id. Dennis support Donald's family financially and emotionally, and was a real family man and jack-of-all-trades, building Donald and his sisters a treehouse and helping with homework. Id. ¶¶ 4, 5. Dennis ate dinner with the family every night, and came on Donald's family vacations. Id. ¶ 5. Because Dennis began living with and parenting Donald from the age of three years old, the Court recommends that Donald Scauso be awarded

$8,500,000 in solatium damages, the full amount paid to the biological or adopted children of 9/11 victims.

## CONCLUSION

For the foregoing reasons, Plaintiffs should receive solatium damages as follows:

| **Number** | **Decedent** | **Plaintiff** | **Relationship** | **Solatium Damages** |
|---|---|---|---|---|
| 1 | Brian Magee | Christopher Dowdell | Stepchild | $4,250,000 |
| 2 | Brian Magee | William Dowdell | Stepchild | $4,250,000 |
| 3 | Brian Magee | Matthew Dowdell | Stepchild | $8,500,000 |
| 4 | Milton Bustillo | Dayna Spordone | Stepchild | $8,500,000 |
| 5 | Joseph Rivelli, Jr. | Christopher Michael Ruggieri | Stepchild | $8,500,000 |
| 6 | Joseph Rivelli, Jr. | Phylicia Ruggieri | Stepchild | $4,250,000 |
| 7 | Joel Miller | Justin Sivin | Stepchild | $4,250,000 |
| 9 | Dennis Scauso | Donald Scauso | Stepchild | $8,500,000 |

The solatium claims for Maxwell Sivin should be DENIED under the principles established in Hoglan IV.

Plaintiffs should also be awarded prejudgment interest on these damages from September 11, 2001, through the date of judgment, at a rate of 4.96 percent per annum, compounded annually. See ECF No. 3358, adopted by, ECF No. 3383.

Plaintiffs may apply for punitive damages at a later date consistent with any future rulings made by the Court on this issue.

Finally, any related plaintiffs not appearing in this motion and who were not previously awarded damages may still submit applications for solatium and/or economic damages awards.

DATED:   January 21, 2020
         New York, New York

_____
SARAH NETBURN
United States Magistrate Judge

\*           \*           \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge George B. Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).