# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEE FOR PERSONAL INJURY AND DEATH CLAIMS

In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| | |
|---|---|
| Ronald L. Motley, (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br><br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br><br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC |

January 21, 2020

**VIA ECF**

The Honorable George B. Daniels
U.S. District Judge
United States District Court
Southern District of New York
Daniel P. Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

The Honorable Sarah Netburn
U.S. Magistrate Judge
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

Re: *In Re: Terrorist Attacks on September 11, 2001*
Case No. 03 MDL 1570 (GBD)(SN)

Dear Judge Daniels and Magistrate Judge Netburn:

We write to: (1) respond to the Court's January 16, 2020 Order (ECF No. 5683) asking for the remaining categories of injuries to be filed and proposed filing dates; (2) address several recent filings (ECF Nos. 5550, 5551, 5674, 5678, 5679, 5680) by law firms not part of the Wrongful Death / Personal Injury Plaintiffs' Executive Committee ("PEC"), which, contrary to the PEC's expectations, have recently filed complaints and moved for default damages judgments on behalf of individuals who sustained environmental exposure injuries in the aftermath of the September 11, 2001 attacks ("latent injuries") and who have subsequently died, as well as for immediate family members of those individuals; and (3) make minor corrections to our January 10, 2020 filing (ECF No. 5484) following discussions with the Special Master of the September 11, 2001 Victim Compensation Fund ("VCF2").

## 1. Categories of Injury Claims and Filing Dates

This Court directed the PEC to submit a brief letter describing "remaining category of injuries to be filed and filing dates." ECF No. 5683. In response, the PEC has the following information.

The *Burnett* Plaintiffs are likely to be filing motions not only today, but potentially up to and including January 31, 2020. Their filing today will identify each individual plaintiff

according to the injury category set forth in Plaintiffs' January 10, 2020 letter. *See* ECF No. 5484. At the present time, the *Burnett* Plaintiffs are not in a position to state what specific categories will be filed as they are employing a "first in, first out" policy vis-à-vis the submission of their motions for their personal-injury plaintiffs. They anticipate they will be filing approximately 30 claims for damages for personal-injury plaintiffs today who were all injured on the day of September 11, 2001. They will attempt to file another similar motion on Thursday, January 23, 2020, followed by a similar motion on Tuesday, January 28, 2020, and a final motion on Friday, January 31, 2020. The *Burnett* Plaintiffs anticipate that these additional motions will have fewer claims per motion than their initial motion which should provide a good cross-section for the Court to address claims in different injury categories.

The *Ashton* Plaintiffs anticipate filing motions for no more than twenty individuals who were injured on the day-of September 11, 2001 and hope to have those complete by January 28, 2020, but the filings may extend until January 31, 2020. The *Ashton* Plaintiffs expect those injuries to all fall within the "impact," "escape," "building collapse" and "falling debris" categories and will identify each individual plaintiff according to the descriptions set forth in the PEC's January 10, 2020 Letter-Brief. *See* ECF No. 5484 at 13-14.

**2. Recent Latent Injury Claims**

At the time the PEC advised this Court in our January 10, 2020 Letter-Brief that only plaintiffs injured on the day of September 11, 2001 would be seeking judgments against the Islamic Republic of Iran ("Iran") for personal injuries, we did not anticipate that any claimants who sustained latent injuries after September 11, 2001 would be seeking final judgments at this time for the reasons we articulated in that letter (e.g., remoteness, causation) ("Latent Injury Claimants"). ECF No. 5484 at 1-2. Since then, however, non-PEC attorneys have filed several complaints against Iran and motions seeking a final damages judgments relating to deaths that followed latent injuries arising after September 11, 2001 (likely months or years after) as well as solatium judgments for the immediate family members of those deceased individuals and captioned those cases as "member cases" to the *Ashton* and *Federal Insurance* suits against Iran. *See Mandelkow et al. v. Islamic Republic of Iran*, 20-cv-315 (S.D.N.Y.); *Alcabes v. Islamic Republic of Iran*, 20-cv-340 (S.D.N.Y.); *Anderson et al. v. Islamic Republic of Iran*, 20-cv-354 (S.D.N.Y.); *Ahearn v. Islamic Republic of Iran*, 20-cv-355 (S.D.N.Y.); *Asciutto v. Islamic Republic of Iran*, 20-cv-411 (S.D.N.Y.); *Amin v. Islamic Republic of Iran*, 20-cv-412; *Basci v. Islamic Republic of Iran*, 20-cv-415 (S.D.N.Y.); and *Cloud v. Islamic Republic of Iran*, 20-cv-416 (S.D.N.Y.) (the "Latent Injury Complaints.")

The contents of those claims and filings require clarification by the PEC.

First, while counsel for the Latent Injury Claimants submitted letters stating that they are "member cases" to *Ashton*, we object to this characterization. ECF No. 5550, 5551, 5674, 5678, 5679, 5680. The use of that term suggests a relationship between the cases and *Ashton* that does not exist. Counsel to *Ashton* are not associated with these new cases, and claimants named in those Latent Injury Complaints are not their clients. Counsel to *Ashton* has also not moved for judgments against Iran for any Latent Injury Claimants. While the Latent Injury Claimants have

filed Iran Short Form Complaints that adopt and incorporate by reference the allegations in the *Federal Insurance* and *Ashton* Plaintiffs' Amended Consolidated Complaint Against Iran, they are not "member cases." Unlike cases that were filed by *Ashton* counsel and involved day-of wrongful death and survival claims (*see, e.g., Betru et al. v. Islamic Republic of Iran*, 18-cv-8297 (S.D.N.Y.)), the Latent Injury Complaints are materially different, both factually and legally.[1]

Second, the Court's liability determination that related to day-of wrongful death and survival claims did not involve analysis of the injuries presented in the Latent Injury Complaints, which have causation and remoteness issues identified in the PEC's January 10, 2020 Letter-Brief (ECF No. 5484 at 2-5 and 9-10).

Third, even if the prior liability determination could apply to the Latent Injury Complaints, the claims made on behalf of individuals (or the estates of individual decedents) for whom default damage judgments have been entered are for (a) compensatory damages for the conscious pain and suffering experienced by the individuals in the World Trade Center (or in close proximity), at the Pentagon, or on the four planes, including at Shanksville, Pennsylvania, on September 11, 2001; (b) economic damages to the estates of those killed on September 11, 2001 in the terrorist attacks; or (c) solatium damages for the immediate family members (or functional equivalents) of those victims murdered on September 11, 2001 in the terrorist attacks. The conscious pain and suffering compensatory damages awards and the solatium awards have been premised on the unique and terrifying events on the day of September 11, 2001 – the "horrific conditions" that the victims killed on the day of the attacks likely encountered, leaving "little doubt that many, if not all, of the decedents … experienced unimaginable pain and suffering *on September 11, 2001*." ECF No. 2618 at 8 (emphasis added). While those killed on September 11, 2001 "may have experienced different levels of pain and suffering" depending on where they were (North Tower, South Tower, the Pentagon, on an airplane or on the ground), the Court found that an individualized determination of each individual's pain and suffering would be "impossible," and adopted an across-the-board award of $2 million for the conscious pain and suffering each decedent killed on September 11, 2001 experienced. ECF No. 2618 at 9. What all "day-of" wrongful death victims had in common was being present at one of the sites of the terrorist attacks on the day of September 11, 2001, and experiencing the physical injury, fear, pain and horror of an unprecedented magnitude that preceded their deaths on that particularly terrible day.

The Latent Injury Claimants' demand for an equivalent amount of conscious pain and suffering is not tethered to the same set of facts. While the pain and suffering associated with death caused by a prolonged exposure illness is significant, it is also qualitatively different than that associated with a death or injury suffered in the midst of the atrocities that day.

Likewise, solatium awards issued to date have been premised on the unique anguish and grief experienced by the immediate family members as a result of the murder of their loved ones in a terrorist attack that was nationally televised. The Court has recognized this unique

---

[1] For similar reasons, these latent injury cases cannot be said to be "member cases" to the *Federal Insurance* case (03-cv-6978).

experience, emphasizing that family members of the victims killed on September 11, 2001 face "frequent reminders of the events of that day" and that every anniversary of the September 11, 2001 attacks continues to have an "indelible impact on the lives of the victims' families." ECF No. 2618 at 11. It was these features of the unusual losses on the day of September 11 that the Court found justified upward departures from solatium damages awards in other terrorism cases. The Latent Injury Claimants' immediate family members were not killed on September 11, 2001 and while deaths ten, fifteen or more years after the terrorist attacks have no doubt caused grief, the solatium losses cannot reasonably be equated with those suffered by victims murdered on September 11, 2001 and, as such, are not analogous to the day-of wrongful death solatium claims but, instead, require a separate and distinct evaluation of solatium damages.

Given these substantial differences in the facts underlying the pleadings and the judgments sought, unlike those additional cases with the same claims previously made brought by the same attorneys for the previous plaintiffs (*see, e.g., Betru et al. v.* Iran, 18-cv-8297 (member case to *Ashton*)) the Latent Injury Complaints should not be considered "member cases" to *Ashton*. As a final matter, plaintiffs in the Latent Injury Complaints have made no attempt to effectuate service on Iran pursuant to 28 U.S.C. § 1608(a).[2]

**3. Clarification to January 10, 2020 Letter-Brief (ECF No. 5484)**

Following submission of the PEC January 10, 2020 Letter-Brief, members of the PEC were contacted by VCF2 Special Master Rupa Bhattacharya. During a call on January 15, 2020, Ms. Bhattacharya raised an issue regarding footnote 16 to the Letter-Brief. To be clear, the PEC does not mean to suggest that the VCF2 Special Master is taking a position as to how "9/11 Victim" as it appears in the United States Victims of State Sponsored Terrorism Clarification Act should be interpreted – whether under a "drafters' intent" reading, a "plain language" interpretation or otherwise. *See* ECF No. 5484 at 5 – 8. The VCF2 has not and will not offer an

[2] Counsel to the latent injury plaintiffs relies on *Betru* on this point. *See, e.g.,* 20-cv-315 (S.D.N.Y.), ECF No. 4 at 3 fn 3. *Ashton* and *Betru* complaints were identical in all respects and would have been added to the *Ashton* complaint by a traditional notice of amendment pursuant to the Federal Rules of Civil Procedure, including new plaintiffs with identical claims represented by the same counsel, but for the Court's July 10, 2018 Order, which required them to proceed via Short Form Complaint against Iran. *See* 18-cv-8297 (S.D.N.Y.), ECF No. 1. The day after filing their Short Form Complaint, the *Betru* Plaintiffs moved for final judgments for solatium damages for immediate family members of individuals killed on September 11, 2001 in the terrorist attacks. *See* 18-cv-8297 (S.D.N.Y.), ECF No. 5. As a true member case to the *Ashton* matter, *Betru* Plaintiffs relied on service of the *Ashton* Amended Consolidated Complaint Against Iran pursuant to the Foreign Sovereign Immunities Act via diplomatic channels (in the same manner by which plaintiffs added by Notice of Amendment would rely on such service), and then served the *Betru* final damages judgment to the United States Department of State via diplomatic channels (and have subsequently undertaken to serve their Short Form Complaint on Iran). The same process should not be employed by plaintiffs whose claims differ materially from the allegations of the *Ashton* Complaints and who are represented by different counsel.

interpretation of a statute such as the USVSST Clarification Act that does not apply to the VCF 2.[3]

                                              Respectfully Submitted,

                                              By: /s/ Megan W. Benett
                                              MEGAN W. BENETT
                                              For Ashton Plaintiffs

                                              By: /s/ Jodi Westbrook Flowers
                                              JODI WESTBROOK FLOWERS
                                              For Burnett Plaintiffs

                                              By: /s/ Jerry S. Goldman
                                              JERRY S. GOLDMAN
                                              For O'Neill Plaintiffs

---

[3] Ms. Bhattacharya also pointed out that presence can be established for purposes of the VCF2 by means other than an affidavit (*see* ECF No. 5484 at 5) and that the VCF2 can rely on the World Trade Center Health Program when establishing a claimant's exposure hours (which had been characterized in the Letter-Brief as "presence") (*see* ECF No. 5484 at 4).