# BARASCH MCGARRY SALZMAN & PENSON
### ATTORNEYS AT LAW

MICHAEL A. BARASCH
BARRY A. SALZMAN*
DOMINIQUE A. PENSON
BRUCE KAYE
SARA DIRECTOR
DANA CUTTING
*ADMITTED IN NY & CT

11 PARK PLACE
SUITE 1801
NEW YORK, N.Y. 10007

(212) 385-8000
1-800-562-9190
Fax No. (212) 385-7845

www.baraschmcgarry.com

LEE LONDON
MARIYA ATANASOVA
JAMES STEINER
JENNIFER JIMENEZ
REBECCA BRENMAN
TRAVIS CARTER
TREVOR TAYLOR

January 27, 2020 **(VIA ECF)**

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District Court for the Southern District of New York
Thurgood Marshall U.S. Courthouse, 40 Foley Square
New York, NY 10007

Dear Magistrate Judge Netburn:

We write in response to the Court's January 22, 2020 Order and to address issues raised by the PEC regarding claims of 9/11 first responder, volunteer, and other wrongful death victims who were injured as a result of the 9/11 attacks, but who suffered and did not succumb to their injuries until sometime thereafter.[1] These victims typically died from fatal diseases the U.S. Department of Justice ("DOJ") has officially determined, through an individualized evaluative process, were eligible for compensation as "the direct result" of toxin exposure from the attacks.

We appreciate the opportunity to respond, and are respectful of the substantial demands posed by the volume of claims of multiple categories of 9/11 victims seeking to participate in the upcoming USVSST distribution. As set forth below, we respectfully submit that law and equity require that the *Mandelkow* Plaintiff victims and their families be treated in the same manner as the other wrongful death and related solatium claims the Court has addressed to date, and in time (by February 19, 2020) for the *Mandelkow* Plaintiffs to seek compensation from the USVSST Fund alongside their fellow victims. Respectfully, the claims – all included in the Court's Short Form Complaint – are straightforward, do not raise new or complex questions of law or fact, and can and should be addressed at this time on the same basis, and with the same fair opportunity for compensation, as all wrongful death claims arising from the horrific events of 9/11.

The PEC argues that there is a fundamental difference between 9/11 victims who were injured as a result of the 9/11 attacks and died *on that day*, and victims injured as a result of the

---

[1] For ease of reference, we refer to these victims and their family members as the *Mandelkow* Plaintiffs, after the first group of plaintiffs, led by Elaine Mandelkow (widow of 9/11 victim FDNY Deputy Chief Inspector James W. William Mandelkow) who filed claims with the Court on January 13, 2020. To avoid any confusion, we note that undersigned counsel also filed one Complaint – *Cloud, Jr. et al. v. Iran*, 20-cv-00416 (S.D.N.Y.) – on behalf of family members of a victim who died on September 11, 2001. For the reasons herein, that distinction should not matter, but to the extent the Court determines otherwise, we raise this for the Court's attention and consideration.

*same* attacks, but who died later, often after suffering for years from fatal diseases *already determined by DOJ to have been caused by the same attacks*.  The PEC's attempt to distinguish among, rank order, and otherwise promote competition between the various groups of 9/11 wrongful death victims is unfounded, unsupported and would produce an inequitable result.

Indeed, the PEC's strategy already has and will continue to divide the 9/11 community. Courts, legislatures, government agencies and administrative bodies consistently have gone to great lengths to treat 9/11 victims comparably and formulaically – with the intent of maximizing the opportunities for (and reducing the barriers to) compensation without fostering competition among the victims and their families.  The PEC's position has left the *Mandelkow* Plaintiffs asking why the deaths of their loved ones are being deemed less valuable, or scrutinized more, than the deaths of other 9/11 victims, especially when DOJ expressly has held otherwise, and when they already have established their injuries and the causal link to the terror attacks for compensation purposes.  The PEC's argument that these wrongful death victims' compensation should be delayed while they are forced to establish anew their suffering and entitlement to relief is unsupported as a matter of law and fact.

The victims the PEC refers to as "day-of" victims died as a result of the 9/11 attacks. DOJ, supported by the National Institute for Occupational Health and Safety ("NIOSH") and the World Trade Center Health Program (WTCHP), has determined on an individualized basis that each of the *Mandelkow* Plaintiff victims did as well, and no evidence has been or will be produced to refute that finding.  Nonetheless, despite that "causation" has been a settled issue for these victims for years, the PEC now suggests for the first time that this determination requires further review.  Why?  The most obvious reason is that this would assure a delay for the *Mandelkow* Plaintiffs and, correspondingly, a greater share of USVSST funds during the upcoming distribution for one category of 9/11 victims over another.  But the deaths of those who died from exposure to deadly toxins released by the same intentional and deadly attacks are no less tragic, require no further proof, and are no less warranting of compensation at this time. Indeed, it is very important for these victims – whose injuries have been long adjudicated to have been caused by the 9/11 attacks – to be included in the upcoming distribution from the USVSST Fund.  There is no certainty that funds will exist in future distributions, or in what amount, and it would be severely unfair and prejudicial to exclude them from this round of compensation where funds are available for established claims.

**These claims were both identified and "anticipated" by the PEC.**  The PEC characterizes the *Mandelkow* Plaintiffs' claims as novel, filed "contrary to PEC's expectations", and materially distinguishable from their own clients' wrongful death and personal injury claims the PEC asserts should be adjudicated prior to the February 19 USVSST deadline.[2]  Yet, on November 28, 2019, the PEC told the Court that the categories of victims Congress intended to address in amending the USVSST statute, and with respect to whom the PEC firms intend to submit claims include expressly: victims "who have either been diagnosed with cancers . . . and

---

[2] The PEC represents that they "did not anticipate" claims by victims who died after 9/11.  However, undersigned counsel had numerous conversations with multiple PEC members (from three different firms) regarding their claims in the weeks prior to filing them, to help the *Mandelkow* Plaintiffs understand the uniform procedures required for them to file claims, including the use of the uniform Short Form Complaint.

other injuries due to toxic WTC dust exposure." Dkt. 5315 at 3 ("PEC Nov. 28 Letter") (noting that "VCF II" claimants are no longer excluded from USVSST compensation).

Indeed, the PEC reported that Counsel for *Ashton* alone represents "approximately 16,000 plaintiffs who have been diagnosed with cancers, inhalation-related and other injuries in the aftermath of the September 11, 2001 terrorist attacks." *Id*. While the PEC may prioritize differently its *own* clients' claims, that choice does not render the instant claims materially different from the PEC's own claims. Nor does it detract from their viability or the victims' entitlement to the same relief, in the same time, as all other 9/11 wrongful death victims.

The PEC has argued, and presumably will continue to argue, that 9/11 toxic-cloud personal injury victims are entitled to judgment, and they will advocate zealously on behalf of *their own* clients to receive *at least* the same amounts in judgment (and from the USVSST) as other 9/11 victims. The only differences between the PEC's thousands of toxic-cloud personal injury clients and the *Mandelkow* Plaintiffs are: (1) the *Mandelkow* Plaintiffs are represented by other counsel; and (2) the *Mandelkow* Plaintiffs *died* as a result of their 9/11 injuries. That the *Mandelkow* Plaintiffs are represented by other counsel does not subject them to different rules than the PEC's clients. And, the fact that the *Mandelkow* Plaintiff victims already have died from their 9/11 injuries makes adjudication of their claims *more* straightforward, not less.

**The *Mandelkow* Plaintiffs should be treated the same as all 9/11 Wrongful Death Victims.** The PEC characterizes the *Mandelkow* Plaintiffs as "Latent Injury Claimants" but it does not change the dispositive, and undisputed, facts that: (1) each victim was killed as a result of the 9/11 attacks; (2) each suffered (often for years) as a result of those attacks; and (3) each of his or her immediate family members suffered the death of a loved one as a result of those attacks. There should be no hierarchy among the murdered and injured victims of the September 11 attacks – whether killed by airplane impact, crushing debris, or inhalation of poisonous toxins. *Every* victim – including each of the PEC's own clients who likewise experienced a variety of injuries from different causes (falling debris, toxic smoke inhalation, etc.) – suffered in his or her own unique way. But they are the same in that each was the victim of Iran's murderous acts. That is why DOJ established a uniform presumed non-economic loss amount for *all* 9/11 decedents – treating the PEC's clients and the *Mandelkow* Plaintiffs exactly the same in this regard – and *does not differentiate between decedents for baseline wrongful death awards based on time of death*. *See* https://www.govinfo.gov/content/pkg/CFR-2019-title28-vol2/xml/CFR-2019-title28-vol2-part104.xml (28 C.F.R. § 104.44). And that is why all of these plaintiffs filed, and are identified in, the same Short Form Complaint, which is uniformly required for *all* victims. Every one of them is entitled to judgment by this Court, and the same opportunity to seek compensation from the USVSST in the next distribution.

**The *Mandelkow* Plaintiffs should be treated as part of the *Ashton* and *Federal Insurance* group of victims.** Undersigned counsel identified the cases associated with the *Mandelkow* Plaintiffs as "member cases" of *Ashton* and *Federal Insurance* to reflect, consistent with the Court's requirements in the Short Form Complaint, that the *Mandelkow* Plaintiffs have adopted and incorporated by reference the allegations in the *Ashton* and *Federal Insurance* complaints. This was appropriate, given that the *Mandelkow* Plaintiffs' complaints, as required, (1) were identical, *word-for-word*, to every other *Ashton* and *Federal Insurance* Short Form

3

Complaint filed by the PEC firms on behalf of their clients; and (2) adopted and incorporated the entirety of the allegations in the *Ashton* and *Federal Insurance* cases. Those cases asserted damages claims against Iran for its role in the 9/11 attacks which led to the injuries and deaths of thousands of innocent victims – *including the Mandelkow Plaintiffs*.

Again, while each claim is different, there is nothing in the Short Form Complaint to suggest that any victim who died as a result of the 9/11 attacks and joined this MDL should be treated differently from any other for wrongful death purposes, simply based on how long it took for the victim to succumb to his or her injuries. Indeed, any attempt to exempt or delay judgment for victims who died after 9/11 is wholly inconsistent with the fact that *the Short Form Complaint expressly includes and authorizes claims for victims "exposed to toxins as a result of the terrorist attacks."* See Dkt. 5234 (Short Form Complaint) at 22.

**The *Mandelkow* Plaintiffs should be treated the same regarding service of process on Iran as every other Short Form Complainant.** The *Mandelkow* Plaintiffs have addressed, and will address, service on Iran in the same manner as other plaintiffs in this case, like the *Betru* plaintiffs the PEC references in its letter. Any distinction the PEC attempts to draw between the *Mandelkow* and *Betru* Plaintiffs in this regard is unsupported and misplaced. Each of them filed *an identical* Short Form Complaint containing *exactly the same words and allegations*. Each of their complaints adopts and incorporates by reference the *exact same* allegations from *Ashton* and *Federal Insurance*. Each of those complaints contains the same references to victims who were "present at the Pentagon and/or lower Manhattan and/or at an area wherein he/she was exposed to toxins as a result of the terrorist attacks." *See supra*. And just like the *Betru* Plaintiffs, the *Mandelkow* Plaintiffs will have to serve their default judgments on Iran, once entered. The fact that one case may have overlapping counsel with another is wholly unrelated to the fundamental question of notice that underlies the service requirement – Iran has been served with the entirety of the allegations in each of the *Mandelkow* Plaintiffs' Complaints. There is no reason to treat *Mandelkow* and *Betru* Plaintiffs – or, indeed, *any* plaintiff filing an identical Short Form Complaint –differently from one another for service of process.

The PEC attempts to distinguish between the *Mandelkow* Plaintiffs and victims the PEC represents who "would have been added to the *Ashton* complaint by a traditional notice of amendment" but for the requirements of the Short Form Complaint. Dkt. 5704 at 4, n.2. That distinction, however, is illusory. First, the requirements of the Short Form Complaint *do* exist, and the *Mandelkow* Plaintiffs are in exactly the same procedural posture as any other Short Form Complainant. Second, other than the *names* of the *Mandelkow* Plaintiffs, their Complaints are *word-for-word* identical to complaints filed by the PEC. There is nothing in those Complaints that differentiates the circumstances or timing of the *Mandelkow* Plaintiffs' deaths; the defaulting Defendant will not (and is not required to) receive any subsequent pleadings discussing any such differences. Presumably, that is why this Court has allowed other victims – including PEC clients – to file claims and obtain judgments pursuant to the Short Form Complaint (*which specifically references toxin-based claims*) without further service at this time. Accordingly, the same law and logic that permits pleading by "notice of amendment" as the PEC firms suggest their clients would have done here applies equally to the *Mandelkow* Plaintiffs.

4

Finally, should this Court require the *Mandelkow* Plaintiffs to separately serve their Short Form Complaints on Iran before they are able to seek or obtain judgment, it would raise serious questions about the validity of judgments received by other plaintiffs (like the *Betru* plaintiffs) that were based on the *identical* complaint, and used to receive USVSST funds in earlier rounds of compensation – *without separate service*. This would raise complicated issues (since service is a non-waivable jurisdictional prerequisite to a valid judgment under the FSIA) as to whether prior awards might have to be vacated or reversed, and how the USVSST would treat such applicants, should the Court determine that service of Short Form Complaints on Iran is required.

**Causation already has been sufficiently established for all *Mandelkow* Plaintiffs.** The PEC attempts to differentiate the *Mandelkow* Plaintiffs on the grounds of "causation and remoteness." As demonstrated with evidence in the *Mandelkow* Plaintiffs' motions for default judgment, DOJ has made an express determination that each *Mandelkow* victim died "as direct result of the crashes or the rescue and recovery efforts or debris removal." *See, e.g.,* 20-cv-315, Dkt. 4 at 3-4 (and Exhibits). On January 10, the PEC described at length the VCF2 process pursuant to which first-responders and other 9/11 toxin victims were required to establish that their injuries were "the direct result" of the attacks, including (1) proof of presence; (2) medical review through the WTCHP, approved by NIOSH; (3) demonstration of a covered condition; (4) satisfaction of designated latency periods; and (5) certification by the WTCHP. Each claimant's eligibility then had to be approved by DOJ, as part of the VCF process. Dkt. 5484.

In other words, every one of the *Mandelkow* Plaintiffs already has had the issue of causation individually determined, based on medical, scientific, and other proof. DOJ's determination, based on its review, that each of the *Mandelkow* Plaintiffs' deaths was the "direct result" of the 9/11 attacks is entitled to judicial notice and consideration, and constitutes evidence that should be "satisfactory to the Court" – the sole evidentiary requirement under the FSIA. Indeed, because the *Mandelkow* Plaintiff victims are all deceased, and no longer available for further examination or review, that determination, based on the proof underlying it, should be deemed sufficient evidence of causation.

The unique nature of cases against Iran under the FSIA's terrorism exception makes this point clear. In these proceedings in which Iran refuses to appear, the victims must present *prima facie* evidence of liability and injury for the court's consideration. The court must then determine whether such undisputed evidence is "satisfactory." In FSIA cases, courts have "broad discretion . . . to determine what degree and kind of evidence is satisfactory" to meet the victim's evidentiary burden. *See, e.g., Maalouf v. Iran*, 923 F.3d 1095, 1114 (D.C. Cir. 2019). This includes even "evidence that might not be admissible in a trial." *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017). With respect to 9/11 in particular, courts and legislatures alike have acknowledged the challenges in demonstrating individualized causation for 9/11 victims. This has resulted in legislative presumptions, and other reduced burdens of proof, designed to facilitate compensation for all victims. *See generally, e.g., Bitchatchi v. Bd. of Trustees of NYC Police Dept. Pension Fund*, 20 N.Y.3d 268 (2012) (discussing presumption of 9/11 causation for qualifying conditions).

Here, each of the *Mandelkow* Plaintiffs has undergone a far more rigorous process of proof, and has presented *specific evidence* of DOJ's *adjudication* of causation based on that

process, with the assistance of NIOSH and the WTCHP – evidence of the type Judge Hellerstein has described not only as competent, but "unparalleled." *In re WTC Lower Manhattan Disaster Site Litigation*, 304 F.R.D. 379, 383 (S.D.N.Y. 2015). To the extent any further evidence could be obtained for these deceased victims, it would necessarily be based on the same data already considered, and therefore would be cumulative and repetitive.[3]

The PEC undoubtedly will agree that the same judicial notice and evidentiary weight should apply to each and every one of the thousands of PEC clients on whose behalf they have advised the Court they intend to seek damages. That is why, even in their submissions seeking to defer consideration of the *Mandelkow* Plaintiffs' claims, they never argue that causation does *not* exist, but only that the Court should *delay* consideration until after the current USVSST deadline passes. Certainly, the PEC firms will not advocate in opposition to their own thousands of clients who have suffered from the same injuries already adjudicated by DOJ as eligible claims directly resulting from the 9/11 attacks. This leaves only Iran to defend against this presumptive evidence of causation. But Iran is in default, and has chosen not to participate in this case in any way. Accordingly, there is more than "sufficient" evidence in the record for this Court to enter judgment on behalf of victims, expressly identified in the Short Form Complaint, who have died "as a direct result" of their exposure to the toxins released in the 9/11 attacks.

**There is nothing about the measure of damages to which the *Mandelkow* Plaintiffs are entitled that warrants delay in adjudication of their claims and entry of judgment.** Finally, as to the measure of damages, the PEC appears to suggest that the *Mandelkow* Plaintiffs should not receive the same damages as in the cases of victims who died instantly. It is an affront to each of the *Mandelkow* Plaintiffs for the PEC to argue that victims who died after suffering from horrible and fatal illnesses caused by the 9/11 attacks somehow suffered a lesser injury than those who died immediately, or that their surviving loved ones' experiences watching a love one suffer (and later die) caused any less severe trauma from those attacks and reminders of the same. The 9/11 attacks took the lives of every one of the *Mandelkow* Plaintiff victims, just as it did all of the other wrongful death victims in this litigation. An independent review of the personal circumstances of each PEC-represented victim undoubtedly would yield a different analysis for each victim and family member. This Court has determined not to undertake such analysis, and to adopt a formulaic approach to damages for all victims of the 9/11 Attacks. The *Mandelkow* Plaintiffs respectfully submit that the same approach is appropriate for *all* deceased victims and their family members, irrespective of their dates of death and length of suffering.

In conclusion, the *Mandelkow* Plaintiffs respect the work and effort required for this Court to adjudicate and address claims of the thousands of victims injured or killed by the 9/11 terrorist attacks. However, we respectfully submit that the first responders, volunteers, and other victims who died after prolonged suffering caused by the attacks, and their loved ones, should be

---

[3] In this regard, no specific added proof appears to have been required of the PEC's clients to demonstrate that each Short Form victim was actually present at, and died in, the 9/11 attacks, much less evidence of the specific suffering of each family member for his or her solatium claims. The point is not to call into any question the validity of those claims, but rather to note that, given the nature of this case, the difficulties of proof, and the limited windows for compensation, the Court has established procedures as to the volume of required proof for wrongful death claims that similarly supports adjudicating the *Mandelkow* Plaintiffs' claims on the current record.

treated no differently – and certainly not *less* favorably – than victims who died instantaneously. These victims are expressly included in the Short Form Complaint, and they have complied with all the requirements this Court established to obtain judgment and an opportunity to submit claims to the USVSST Fund for the next round of payments. They also have provided additional proof of causation in the form of DOJ's final determinations that their injuries and deaths were "the direct result" of the 9/11 attacks. These victims and their family members should not be required to prove anything else to enable them to obtain judgments for their losses, and they should not be subject to delay, or any different or more rigorous procedural requirements than any of the Short Form Complainants in whose favor this Court already has entered judgment.

Accordingly, and for the reasons set forth herein, we respectfully request this Court to consider and adjudicate the *Mandelkow* Plaintiffs' wrongful death and solatium claims based on the evidence submitted, and in time for them, assuming judgment is entered, to submit claims to the USVSST Fund by February 19, 2020.

Respectfully submitted,

 /s/ Barry Salzman
Barry Salzman
Michael Barasch
Barasch & McGarry, P.C.
11 Park Place
18th Floor
New York, NY 10007
Phone: 212.385.8000
Fax: 212.385.7845

Aryeh S. Portnoy
Glen G. McGorty
Michelle Ann Gitlitz
Crowell & Moring LLP
590 Madison Avenue
20th Floor
New York, NY 10022
Phone: 212.223.4000
Fax: 212.223.4134

COUNSEL FOR PLAINTIFFS