# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD/SN) |

This document relates to:   *Estate of John P. O'Neill, Sr., et al. v. Al Baraka Investment & Development Corp. et al.*, 04-cv-1923 (GBD) (SN) (S.D.N.Y.)

## AFFIDAVIT OF JERRY S. GOLDMAN, ESQ.
## IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

STATE OF NEW YORK       )
                               ) ss.:
COUNTY OF NEW YORK     )

Jerry S. Goldman, Esq., being duly sworn, deposes and says:

1.         I am a shareholder at Anderson Kill P.C. ("Anderson Kill"), attorneys for Plaintiffs the Estate of John P. O'Neill, Sr.,[1] John P. O'Neill, Jr., Christine O'Neill, Carol O'Neill, the Estate of Dorothy O'Neill,[2] and the Estate of John F. O'Neill[3] ("Plaintiffs" or "O'Neill

---

[1] There is currently an unopposed petition pending in New York County Surrogate's Court to have Christine O'Neill substituted in as the personal representative of the estate instead of John P. O'Neill, Jr. If such relief is granted by the Surrogate's Court, we will seek leave to amend our pleading to substitute in Christine O'Neill as the personal representative of the Estate of John P. O'Neill, Sr. Defendants in this case were made aware of this prior to the completion of written class discovery and depositions, and had the opportunity to ask questions of both John P. O'Neill, Jr. and Christine O'Neill. On information and belief, ████████████████████████████ However, I believe that either John P. O'Neill, Jr. or Christine O'Neill are qualified to serve as personal representative of the estate.

[2] Dorothy O'Neill passed away a year after the case began. Christine O'Neill has been appointed as the personal representative of her estate. In the present motion papers, we also seek leave to substitute in Christine O'Neill as the personal representative of the Estate of Dorothy O'Neill. Defendants in this case were made aware of this proposed change prior to the completion of written class discovery and depositions, and had the opportunity to ask questions of Christine O'Neill.

Plaintiffs") in the above-captioned action.  I am familiar with the facts and circumstances of this case and am admitted to practice in this Court.

    2.    Through this Motion for Class Certification and Related Relief ("Motion"), Plaintiffs seek an order from the Court that:

(a)    Grants Plaintiffs' Motion For Class Certification and Related Relief;

(b)    Certifies the above-referenced action as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

(c)    Redefines the Class identified in the Complaint filed on March 10, 2004, and amended by the First Consolidated Complaint dated September 30, 2005 ("FCC"), as set forth below;

(d)    Grants Plaintiffs leave to amend the First Consolidated Complaint to:

    (i)    Amend the Class Definition set forth in paragraphs 14 and 128 of the First Consolidated Complaint to conform with the class as defined above;

    (ii)    Add the Estate of John F. O'Neill, the late father of John P. O'Neill, Sr., as a party and Class Representative; and,

    (iii)    Substitute in Christine I. O'Neill as personal representative to the Estate of Dorothy A. O'Neill for Dorothy A. O'Neill as a party and Class Representative;

(e)    Certifies the Class with regard to liability and damages, or in the alternative, pursuant to Rule 23(c)(4) of the Federal Rules of Civil Procedure, certifying the Class for purposes of determining liability and deferring determination of class certification as to damages;

(f)    Appoints Jerry S. Goldman of Anderson Kill P.C., as Class Counsel;

---

[3] Anderson Kill also represents the Estate of John F. O'Neill, father of 9/11 decedent John P. O'Neill, Sr. I was not aware that John F. O'Neill was alive on September 11, 2001 when I filed this suit. He died, on information and belief, on December 19, 2002, before I met the O'Neill family. In October 2019, undersigned counsel informed Defendants that Plaintiffs may seek to add this estate as a party to the case and as a class representative. In anticipation of this amendment, on October 24, 2019, Defendants sent Interrogatory Requests to the Estate of John F. O'Neill. That same day, the Estate of John F. O'Neill responded to the Interrogatory Requests. On October 29, 2019, Defendants deposed the personal representative of John F. O'Neill's estate. In these motion papers, we also seek leave to amend to add the Estate of John F. O'Neill as a party and class representative. Defendants in the above-action were informed of this proposed amendment and advised that they do not object.

(g)     Appoints Christine I. O'Neill, John P. O'Neill Jr. and Carol A. O'Neill as Class Representatives in their individual capacity;

(h)     Appoints Christine I. O'Neill as Class Representative in her capacity as personal representative of the Estate of John F. O'Neill and the Estate of Dorothy A. O'Neill;

(i)     Appoints John P. O'Neill, Jr. as Class Representative in his capacity as personal representative to the Estate of John P. O'Neill, Sr.;

(j)     Subject to defendants being afforded discovery in the same scope and manner as previously conducted, and the opportunity to be heard, grants Plaintiffs:

　　(i)     Leave to substitute any nominated Class Representative that is deemed inadequate with alternate Class Representatives;

　　(ii)    Leave to proffer additional or alternative Class Representatives should it be deemed necessary; and,

(k)     Should the Court deny class certification, grants Plaintiffs leave to amend the First Consolidated Complaint to add additional plaintiffs to the pleading.

### The Class

3.      According to public records, excluding the hijackers, 2,977 individuals were killed on September 11, 2001 or in the immediate aftermath as a result of the attacks.[4]

4.      All such individuals were killed based on the same acts committed by the hijackers, all of whom were members of bin Laden's al Qaeda organization.

5.      These individuals and their families were therefore similarly affected by the material support provided by defendants in the above-referenced matter, including the International Islamic Relief Organization ("IIRO"); Muslim World League ("MWL"); World

---

[4] *See September 11 Terror Attacks Fast Facts*, https://www.cnn.com/2013/07/27/us/september-11-anniversary-fast-facts/index.html; Jerry Dunleavy, *18 years later, a trial date is set for 9/11 masterminds — in 2021*, Washington Examiner, https://www.washingtonexaminer.com/news/18-years-later-a-trial-date-is-set-for-9-11-masterminds-in-2021; 9/11 Commission Report, p. 552, n.188, https://www.9-11commission.gov/report/911Report.pdf (stating victim count as 2,973, which was later revised to 2,977); Gary Buiso, *The Forgotten Victim of 9/11*, New York Post, https://nypost.com/2012/05/13/the-forgotten-victim-of-911/ (explaining the current count of 2,977). *See also* September 11th Victim Compensation Fund of 2001 Final Rule, 67 Fed. Reg. 11233 (2002) (defining "immediate aftermath" in the regulations promulgated in connection with the original Victims Compensation Fund to mean within 72 hours of September 11, 2001) (formerly codified at 28 C.F.R. § 104.2).

Assembly of Muslim Youth ("WAMY"); Yassin Kadi ("Kadi"); Dubai Islamic Bank ("DIB");

and all defaulted defendants (collectively, the "al Baraka Defendants") in growing al Qaeda and

planning and executing the September 11th attacks.

6.      In light of these similar factual and legal circumstances, on March 10,

2004, Plaintiffs filed a Class Action Complaint against the al Baraka Defendants, which, as

amended by the First Consolidated Complaint, pled class allegations and defined the Class as

follows:

> (1) all spouses, children, parents, or siblings of any individual who died at
> the World Trade Center in New York, NY, the Pentagon Building in
> Arlington County, Virginia, or in the airliner crash in Shanksville,
> Pennsylvania, as the result of terrorist attacks on September 11, 2001; and
> (2) all legal representatives (including executors, estate administrators and
> trustees) entitled to bring legal action on behalf of any individual who died
> as the result of terrorist attacks on September 11, 2001; but excluding (3)
> all individuals, and all spouses, children, parents, siblings, and legal
> representative of individuals identified by the Attorney General of the
> United States or otherwise shown to have perpetrated, aided and abetted,
> conspired in regard to, or otherwise supported the terrorist attacks of
> September 11, 2001.

First Consolidated Complaint, including More Definite Statements and RICO Statements, filed
September 30, 2005 ("FCC" or "First Consolidated Complaint") (ECF No. 1570), at ¶¶ 14, 128.

7.      As discussed in the Notice of Motion and accompanying Memorandum of

Law, this Motion seeks to certify the above Class only to the extent that a Class Member does

not presently have a pending case against the al Baraka Defendants.[5] Specifically, Plaintiffs seek

to further restrict the Class as follows:

> (1) all spouses, children, parents, or siblings of any individual who
> died on or within seventy-two (72) hours of September 11, 2001, at
> the World Trade Center in New York, NY, the Pentagon Building
> in Arlington County, Virginia, or in the airliner crash in

---

[5] The resulting class would be a plaintiff group in this case just like, for example, the Motley Rice (*Burnett*) or
Kreindler & Kreindler (*Ashton*) plaintiff groups.

Shanksville, Pennsylvania, as the result of terrorist attacks on September 11, 2001; and (2) all legal representatives (including executors, estate administrators and trustees) entitled to bring legal action on behalf of any individual who died on or within seventy-two (72) hours of September 11, 2001, at the World Trade Center in New York, NY, the Pentagon Building in Arlington County, Virginia, or in the airliner crash in Shanksville, Pennsylvania, as the result of terrorist attacks on September 11, 2001; but excluding (a) all individuals, and all spouses, children, parents, siblings, and legal representative of individuals identified by the Attorney General of the United States or otherwise shown to have perpetrated, aided and abetted, conspired in regard to, or otherwise supported the terrorist attacks of September 11, 2001; and further excluding (b) any person or estate identified in (1) or (2) who as of January 15, 2020 has a case pending in the Multidistrict Litigation entitled *In re Terrorist Attacks on September 11, 2001* (S.D.N.Y.), Index No. 03-md-1570, against defendants named in *Estate of John P. O'Neill, Sr., et al. v. Al Baraka Investment & Development Corp. et al.* (S.D.N.Y.)*,* Index No. 04-cv-1923 (GBD)(SN), but including the Estate of John P. O'Neill, Sr., the Estate of John F. O'Neill, the Estate of Dorothy A O'Neill, John P. O'Neill, Jr., Carol A. O'Neill, and Christine I. O'Neill.[6]

8.      While estates of many thousands of victims of the September 11th attacks and surviving family members are presently represented in cases pending in this MDL (the "MDL Plaintiffs"), there are approximately 800 estates and many thousands more surviving family members presently without a case pending in this MDL against the al Baraka Defendants.

9.      Based on information provided to me by my co-counsel on the Plaintiffs' Executive Committees (the "PEC") as well as my firm's own records, presently, about 2,200 families personally have a pending case in this MDL for claims arising out of a death on

---

[6] The Class does not include injury cases.

September 11, 2001 against the al Baraka Defendants.[7] Accordingly, presently, approximately

800 9/11 families are not personally in suit in this MDL against the al Baraka Defendants.[8]

10. I presently represent and have filed suit for over 350 9/11 estates against

other defendants in this MDL. I also presently represent and have filed suit for approximately

1900 spouses, children, parents, and siblings ("eligible family members") of 9/11 victims. This

means that on average, I presently represent 5.42 eligible family members for every person killed

on September 11, 2001.[9] Of course, this number is an underestimation as I am aware that a

significant number of additional eligible family members exist in the families we represent that

we have not been able to contact or identify, or who have died subsequent to 9/11 without a

personal representative having been appointed, or who have not otherwise retained us.[10]

11. Using this extremely conservative number (5.42), and multiplying it by the

total number of 9/11 families (800) who presently do not have a case pending against the al

Baraka Defendants yields approximately 4,330 family members, in addition to the over 800

---

[7] This number does not include 9/11 estates or family members represented by Anderson Kill who, in the past two (2) years, filed suits against the Kingdom of Saudi Arabia (the "Kingdom") and the Islamic Republic of Iran ("Iran").

[8] Cozen O'Connor ("Cozen") represents a number of insurance companies in the *Federal* action that allegedly have, collectively, a number of allegedly subrogated 9/11 victim estate claims against the al Baraka Defendants, many of which may overlap with claims brought by other firms on behalf of these estates, but a number do not. On information and belief, Cozen allegedly represents approximately 100 9/11 victim estates not otherwise in suit as to the al Baraka Defendants, as a result of the alleged operation of New York State Workers' Compensation Law 29, but on information and belief, does not represent family members. Counting these approximately 100 9/11 estates as having cases presently pending against the al Baraka Defendants would further reduce the number of unrepresented estate claimants.

[9] There is also a small subset of family members I represent and have filed suit for against other defendants in this MDL where I do not represent, nor did I file suit for, the estate of the 9/11 victim.

[10] This calculation also assumes that the families I represent are representative samples for other 9/11 families, which I believe is a reasonable assumption.

estates without another pending case against these defendants. Totaling these two numbers together yields a potential class size of at least 5,130 Class Members.

12.     This Motion attempts to bring all 9/11 death claims before this Court, to facilitate simultaneous adjudication of their claims and the substantially similar claims of the MDL Plaintiffs and achieve justice for all 9/11 victims and their families.

13.     For a matter to proceed as a class action, the proposed class must satisfy four prerequisites: numerosity, commonality, typicality, and adequacy. In addition, the Second Circuit requires that there be an identifiable class.

14.     Rule 23(b)(3) also specifies that common legal or factual issues predominate over individual issues and that the class action be superior to other methods of adjudication. Each of these standards is discussed below.

## Numerosity

15.     The Class is sufficiently numerous as there are at least 5,130 Class Members. As discussed above, this number includes the estates of approximately 800 innocent individuals killed immediately on or shortly after the morning of September 11, 2001, who currently have no pending case in the MDL against the al Baraka Defendants and their approximately 4,330 eligible family members.

## Commonality

16.     The putative Class Members all allege that they suffered a death, or the death of a loved one, based on the conduct of the al Baraka Defendants. FCC, at ¶¶ 128-29. For example, if these defendants in fact provided material support to the hijackers and to al Qaeda, that would resolve the question of liability as to each and every Class Member.  There are not certain acts by the al Baraka Defendants whose actions affected only certain Class Members.

7

17.     As discussed *infra*, liability determinations against the al Baraka Defendants would apply identically to all Class Members. I also strongly believe that this Court could fashion a damages model on a class-wide basis now, as it has already issued judgments against Iran for many thousands of MDL Plaintiffs using a damages model that does not require the Court to make individualized damages determinations. Similarly, the Victims Compensation Fund of 2001 ("VCF") used a standard damages model in handling claims for 9/11 victims. *See* PEC Letter to Magistrate Judge Sarah Netburn, dated January 10, 2020 Regarding USVSSTF Personal Injury Claims (ECF No. 5484) (describing the formula used to calculate damages for 9/11 victims).

18.     While undersigned counsel believes there is enough information and evidence before the Court to certify a damages class right now, the completion of damages discovery may aid the Court's decision on whether to certify a damages class in the future—akin to the class certification schedule the Court adopted here, toward the end of liability discovery.

### Typicality

19.     Plaintiffs' claims and the Class Members' claims both arise from the al Baraka Defendants' provision of material support to al Qaeda—support relied upon to plan, fund, and execute the September 11th attacks. Furthermore, Plaintiffs' claims and the Class Members' claims both arise from the same legal causes of action alleged in the pleadings.  There is no legal theory pled by Plaintiffs that is not also pled by the Class Members (except to the extent certain causes of action are available only to U.S. citizens).  Further, the defenses alleged and briefed in the past by the al Baraka Defendants against Plaintiffs have applied equally to the Class Members, and on information and belief, any other defenses alleged or briefed in the future against Plaintiffs would continue to apply equally to the Class Members.

**Adequacy**

20.     Plaintiffs and the Class Members all seek the same result from this litigation — justice for the 9/11 families and accountability for those responsible. In civil litigation, this relief manifests itself in the form of damages.

21.     There is no respect in which Plaintiffs' interests in the litigation diverge from the Class Members' interests in the litigation, and I am not aware of any conflicts of interest between Plaintiffs and the Class they seek to represent.

22.     Also being filed today are affidavits from the Class Representatives, Christine O'Neill, John P. O'Neill, Jr., and Carol O'Neill. These affidavits are submitted in further support of the Motion for Class Certification and Related Relief.

23.     These affidavits describe in detail how the September 11th attacks deeply impacted each of their lives; their active involvement in the litigation for over sixteen years; the experiences they share with other 9/11 families as a result of the attacks; and their desire to represent the Class against the al Baraka Defendants for the losses that so many 9/11 families suffered as a result of the attacks.

24.     I believe that the proposed Class Representatives are adequate, but if the Court rules otherwise, undersigned counsel requests leave to add additional Class Representatives.[11]

25.     Class counsel is an experienced litigator. Undersigned counsel has been practicing law for over forty (40) years and leads a team of attorneys and paralegals who have

---

[11] Counsel for the al Baraka Defendants stated that they would not oppose the addition of future class representatives, provided that they are given a full and fair opportunity to pursue class discovery related to any future proposed class representatives. Undersigned counsel would consent to such discovery.

extensive litigation experience and experience in this case. One paralegal has continuously worked with the undersigned on this case since it began in 2004.

26.     Undersigned counsel presently represents thousands of putative Class Members in this MDL and has been actively and intensely involved in this litigation since 2004.

27.     Undersigned counsel has actively served on the PEC in the MDL for almost sixteen years. He has significant experience working with other members of the PEC on this case and is intimately familiar with the facts and legal claims at issue.

28.     Undersigned counsel and other Anderson Kill attorneys have taken and defended depositions in this MDL, interviewed witnesses, retained experts, drafted substantive motions and sections of motions, crafted various letters to opposing counsel and to the Court; reviewed, edited, and commented on virtually every PEC filing in the case; and have attended virtually every hearing or court conference in the MDL since filing this case in 2004.

29.     Undersigned counsel also regularly participates in PEC calls, which can occur several times a week; regularly participates in PEC working groups; regularly meets in-person with members of the PEC; and receives and responds to many dozens of daily email correspondence and phone calls with members of the PEC regarding litigation strategy and developments in the case.

30.     Since 2004, undersigned counsel has devoted the bulk of his practice to litigating this MDL.

31.     Anderson Kill employs over seventy (70) attorneys and specializes in complex commercial litigation, almost exclusively on behalf of plaintiffs.  Several attorneys at the firm have significant experience prosecuting and defending class actions, including Lawrence Kill, Esq., one of the firm's named partners.

10

32.     Undersigned counsel has been a shareholder of Anderson Kill since 2008. Attached hereto as Exhibit A is my biographical information.

**Ascertainability**

33.     It is administratively feasible to identify the members of the Class. Just a few blocks away from this courthouse is a memorial with a list of names of those who died as a result of the September 11th attacks. Official databases exist that document the number and name of each person who was killed as a result of the attacks, and many of these individuals' estates and their families are already before this Court in some capacity. Accordingly, the al Baraka Defendants and the Court can identify the members of the Class.

34.     The First Consolidated Complaint filed in this case attached and incorporated by reference a list of individuals who were murdered on September 11, 2001. *See* FCC, Exhibit A, pp. 1-70 (ECF No. 1570).

35.     Based on our own investigations and research, my team has been able to identify, contact, and speak with thousands of 9/11 family members and personal representatives of 9/11 victim estates.

**Common Legal or Factual Issues Predominate Over Individual Issues**

36.     The facts and allegations against the al Baraka Defendants are set forth more fully in the First Consolidated Complaint and are supported by a myriad of evidence including, but not limited to, the record from written discovery and depositions; information contained in the Consolidated Amended Complaint against the Kingdom of Saudi Arabia and the Saudi High Commission for Relief of Bosnia and Herzegovina (ECF No. 3463); the hundreds of exhibits (such as affidavit and sworn testimony, intelligence reports, diplomatic cables, and other materials) that were filed with this Court on February 3, 2015 and February 4, 2015 (ECF No.

2927-1 through 24; ECF No. 2929); and material submitted to the Court in opposition to the Kingdom's motion to dismiss, including the Declarations of Robert T. Haefele, Esq. (ECF No. 3784) and accompanying exhibits; J. Scott Tarbutton, Esq. (ECF No. 3783) and accompanying exhibits; and James P. Kreindler, Esq. and Steven R. Pounian, Esq. (ECF No. 3780) and accompanying exhibits. The sections of the above-referenced documents, pleadings, and filings specifically discussing the al Baraka Defendants are incorporated herein by reference.

37.     Since the instant case against the al Baraka Defendants began, for almost sixteen years, the essential facts, procedural history, and legal issues have all been generally applicable to all 9/11 victims and their family members. This includes the allegations, facts, and evidence in the Complaints; the issues extensively briefed in preliminary motion practice; decisions of this Court and of the Second Circuit in response to the above-referenced preliminary motions; the defenses raised in Answers; discovery requests made and received; logistical and legal issues associated with conducting discovery; discovery disputes extensively briefed and ultimately decided by this Court; the resulting discovery produced; and the depositions conducted so far. Every issue in this litigation so far against these defendants has been applicable to all 9/11 victims and their eligible family members.

38.     I anticipate that upcoming discovery, including expert discovery; additional motion practice, such as summary judgment briefing; and, ultimately, trial will continue to have general applicability to all 9/11 victims and their family members.

39.     Indeed, the sole issue right now before the Court (as it has been for the past sixteen (16) years), is the connection between the al Baraka Defendants on the one hand and the hijackers and al Qaeda on the other hand in the planning, funding, and execution of the most horrific terrorist attack on U.S. soil in this country's history. Even the jurisdictional issues before

the Court generally turn on this connection. The Court's ultimate ruling on this issue would be generally applicable to all Class Members, as every Court ruling to this point has been.

40.     The proposed Class arises from a common cause or disaster—the September 11th attacks.  Each Class Member suffered the loss of a family member or is the estate of a person who died on 9/11, and each Class Member seeks justice and accountability from the responsible parties.

41.     Regarding the issue of damages, this Court previously bifurcated liability and damages discovery. *See* Order of Magistrate Judge Maas, dated October 28, 2010 (ECF No. 2381) ("Fact discovery regarding liability issues will precede fact discovery regarding damages"); *see also* Order of Magistrate Judge Maas, dated July 15, 2010 (ECF No. 2260) ("Unless the Court otherwise directs, the foregoing discovery shall be limited to liability and shall not address the calculation of damages."). In light of these Orders, it may be premature to determine whether common issues relating to damages predominate over individual issues.

42.     Nevertheless, there are strong reasons to believe that common issues predominate and to certify a damages class now.

43.     For example, many groups of MDL Plaintiffs have already obtained judgments against Iran for its role in the September 11th attacks. Those judgments used a standard formula for determining the non-economic damages each decedent's estate and family member was entitled to receive from Iran. Examples of this Court's Orders (ECF Nos. 5064, 5063, 3175, 3229, 2623) are incorporated herein by reference. *See also* Order of Magistrate Judge Maas, dated July 30, 2012 (ECF No. 2618) (setting standard damages amounts for 9/11 family members). While this methodology may not be the only correct model that the Court could use in assessing damages against the al Baraka Defendants, the existence of a damages

model that the Court has already adopted in this MDL, without needing to make individualized damages determinations, strongly suggests that enough common issues predominate regarding damages to certify a damages class now.

44.    Similarly, the VCF utilized a specific damages model for calculating economic damages for 9/11 estates. In many cases, MDL Plaintiffs have updated these economic damages calculations using similar assumptions for purposes of securing judgments against Iran, and the Court has adopted these damages calculations in issuing judgments against Iran.

45.    The existence of damages models that were previously used for the vast majority of 9/11 estates before the VCF and this Court, strongly suggests that common issues relating to damages predominate over individual ones, and to the extent they do not, the Court could create subclasses. *See* Letter to Magistrate Judge Sarah Netburn, dated January 10, 2020 Regarding USVSSTF Personal Injury Claims (ECF No. 5484) discussed *supra*, ¶ 17.

46.    In any event, even if this Court determines that individualized proof of damages are necessary, this does not counsel against class certification. The overwhelming number of common questions of law and fact make clear that common issues predominate over individual ones.[12]

### The Class Action Is Superior to Other Methods of Adjudication

47.    Class treatment is the superior method of adjudication for this particular group of 9/11 families. By combining the Class Members with the many existing MDL Plaintiffs, this Court can adjudicate the Class's claims and the MDL Plaintiffs' claims with the aid of the exact same discovery, motion practice, and trial proceedings. Indeed, after

---

[12] As discussed *supra*, ¶ 18, while undersigned counsel believes there is enough information and evidence before the Court to certify a damages class right now, the completion of damages discovery may aid the Court's decision on whether to certify a damages class in the future.

14

certification, just three plaintiffs groups (*Burnett*, *Ashton*, and *O'Neill*) would encompass over 90% of all death claims occurring on September 11, 2001 or its immediate aftermath against the al Baraka Defendants.[13]

48.    In light of the legal and factual issues common to the Class Members, individual prosecution of these claims would benefit no one.  Many of the substantive issues at play are already being litigated collectively in this MDL overseen by an experienced team of plaintiffs' lawyers including proposed class counsel.  If Class Members litigated their claims separately, they would be unable to benefit from the years of existing discovery and motion practice generally applicable to all Class Members.

49.    The fact that the Class was born in the MDL is additional evidence that it satisfies the Rule 23 requirements. By certifying, within this existing MDL, a class of claimants who have not yet filed suit against the al Baraka Defendants, one court could hear all possible claims against the al Baraka Defendants.

[Intentionally Left Blank]

---

[13] Including the *Federal* plaintiffs' subrogation claims would mean that just four groups would represent over 95% of all death claims occurring on September 11, 2001 or its immediate aftermath.

WHEREFORE, Plaintiffs respectfully request that the Court grant the Motion for

Class Certification and Related Relief.

Dated:   January 15, 2020
         New York, NY

_____

Jerry S. Goldman, Esq.
Anderson Kill P.C.
1251 Avenue of the Americas
New York, NY 10020
Email: jgoldman@andersonkill.com
Tel: 212-278-1000
Fax: 212-278-1733

Sworn to before me this 15th
day of _____, 2020.

_____
Notary Public

BRUCE A. CHOLST
Notary Public, State of New York
No. 02CH4752191
Qualified in New York County
Commission Expires November 30, 20

16

# EXHIBIT A





## Jerry S. Goldman

Shareholder

New York | Philadelphia

212-278-1569

jgoldman@andersonkill.com

Jerry S. Goldman is a shareholder in both Anderson Kill's New York and Philadelphia offices, and is chair of the firm's Regulated Products Practice group.  A former prosecutor in Brooklyn, New York, Jerry has built a highly successful and varied practice serving individuals and closely held businesses throughout the United States.

Jerry practices in the areas of complex litigation; general business law; white collar criminal defense; estate planning along with estate and trust administration; employment law; federal and international taxation and intellectual property.

He focuses on solving difficult problems by devising creative solutions.

Prior to founding his practice in 1982, Jerry served as Senior Assistant District Attorney and Senior Supervising Assistant District Attorney in the Kings County District Attorney's Office in Brooklyn, New York. There he gained substantial experience litigating a variety of complex criminal matters and supervising a host of white-collar criminal prosecutions.

Many of Jerry's engagements have had international law components, ranging from complex litigations involving multi-national parties and claims to transnational business matters.

Jerry has been recognized by Super Lawyers as a New York Metro Super Lawyer for General Litigation since 2016.  He has also been mentioned in Who's Who in America, Who's Who in American Lawyers, Who's Who in Entertainment, and the Bar Register of Preeminent Attorneys for both New York and Pennsylvania, and is rated "AV® Preeminent™ Peer Review Rated," the top rating, by his peers as listed in Martindale Hubbell.

**Speaking Engagements**

Jerry has lectured before a variety of professional, trade, business and non-professional audiences on a variety of topics.

## EXPERIENCE

One of the most challenging litigation matters he has handled is the assumption of co-lead counsel in a series of lawsuits pertaining to the tragedy of 9/11. He represents the individuals murdered by the attacks on September 11, 2001 involving issues relative to the scope of federal jurisdiction as to foreign defendants, the Foreign Sovereign Immunities Act, RICO, and the application of the ATA.

Other representations include:

- represented the founders/promoters of a fund which raised, from international investors, money which was utilized to purchase a substantial stake in a foreign cannabis producer, as well as established top-level entities for future transactions.
- represented a member of a health care joint venture in the un-winding of the transaction, including litigation regarding use and ownership of trade-secrets, effectiveness of a non-competition agreement, and allocation of financial assets.
- represented a major handgun manufacturer in successfully defending against parallel investigations brought by the Federal Government and various state attorney generals.
- successfully represented a shipper in an anti-trust action against a major overnight parcel carrier.
- represented an ISP in its acquisition by a regional telecommunication carrier.

- represented an elderly mentally ill woman in a series of actions against one of her children leading to the recovery of her assets.
- represented the operator of a web-site which provided access to various video entertainment in various content agreements as well as those with the providers of various infra-structure and marketing services.
- represented a corporation in structuring and securing multi-tiered financing, including state economic development loans, to construct and equip a new domestic manufacturing facility.
- represented senior level executives in negotiating employment agreements.
- represented a start-up internet membership social networking site aimed at air-travelers, including representation pertaining to corporate structuring, various rounds of financings, agreements with software developers, drafting of privacy policy and terms of services, and ultimately the transfer of its assets as part of its next round of financing.
- represented a group of shareholders of a technology company who sought the removal of certain officers and high-level employees (including the President). The dissidents prevailed - the President and another departed, tendered their interests in the corporation (and returned certain assets which they had taken control of or which were in their name, including valuable intellectual property) and entered into non-competes.
- represented shareholders of an international manufacturer in a stock sale, involving both US and foreign entities.
- represented manufacturer in securing various trademark and copyright licenses.
- represented key employee in structuring acquisition of equity interests in a construction firm and related real estate development company.
- represented a family member in a hotly contested guardianship proceeding involving substantial assets.
- represented the founder of a start-up company in executing a successful exit strategy including the sale of the business coupled with equity in the acquirer along with continued consulting work.
- represented beneficiaries of a trust in a hotly contested accounting proceeding.
- represented lender in debt financing of a major integrated cannabis grower/retailer.
- advised reinsurance carrier of legal risks relative to entering the cannabis industry.

## PUBLICATIONS

- "Medical Cannabis in a Balkanized Legal Landscape" *InVisible Project* (April 18, 2018)
- "D.C. Circuit Sets Dangerous Precedent by Immunizing Foreign Governments that Commit Cyber Attacks Against U.S. Companies and Citizens" *Pratt's Privacy & Cybersecurity Law Report* (October 03, 2017)
- "D.C. Circuit Sets Dangerous Precedent by Immunizing Foreign Governments that Commit Cyber Attacks Against U.S. Companies and Citizens" *Commercial Litigation Advisor & Alert* (May 09, 2017)
- "Getting the Facts Straight: FOIA or Subpoena?" *Commercial Litigation Advisor & Alert* (December 16, 2016)
- "Captives could be a solution for cannabis insurance" *Marijuana Venture magazine* (September 12, 2016)
- "The Appeal of Captive Insurance Arrangements to Cannabis Businesses" *Coverage Journal* (February 01, 2016)
- "The 2015 Amendments to Rules Pertaining to Discovery in Federal Courts" *Commercial Litigation Advisor & Alert* (January 13, 2016)
- "It Ain't Over Till It's Over: Reopening Final Judgments Under Federal Rule 60(b)(6)" *Commercial Litigation Advisor & Alert* (October 14, 2015)
- "Estate Planning for Startups: From Silicon Alley to Death Valley " *Estate Planning and Tax Advisor & Alert* (July 08, 2014)
- "Guardianship Planning " *Estate Planning and Tax Advisor & Alert* (September 14, 2011)
- "A Look at the Implications of the New Power of Attorney Legislation" *Estate Planning and Tax Advisor & Alert* (July 01, 2009)
- "Supreme Court Serves Notice on 'Notice' Pleading" *Commercial Litigation Advisor & Alert* (January 01, 2009)

## SPEAKING ENGAGEMENTS

- "Cannabis Law 2019: Addressing Legal Issues and Uncertainties" *Lawline* New York, NY (April 19, 2019)
- "Marijuana Laws & Civil Rights" *Federal Bar Association Civil Rights Étouffée* New Orleans, LA (February 15, 2019)
- "Investing in Cannabis: Financial, Legal and Medical Perspectives" *Sharsheret* New York, NY (February 06, 2019)
- "Cannabis Law in the Age of Trump and Beyond" *Burning Man 2017 "Break Your Frame" Speaker Series* Black Rock City, NV (September 01, 2017)
- "Corporate and Business Law Issues in the Cannabis Industry" *Lawline* New York, NY (April 21, 2017)

- "Federal Prohibitions and Medicinal Drug Use: Interstate Traveling with Medical Marijuana" *FBA Civil Rights CLE* New Orleans, LA (April 07, 2017)
- "Marijuana Discussion Series" *Reinsurance Association of America* Stamford, CT (March 03, 2016)

## PRESS

- "20 Anderson Kill Attorneys Recognized by Super Lawyers in 2018" (October 10, 2018)
- "Saudis Must Cough Up Documents In 9/11 Victims Suit" (May 25, 2018)
- "Saudis Raised Immunity Bar Too Late, 9/11 Victims Say" (March 08, 2018)
- "Dubai Bank Fights 9/11 Victims' Bid For Account Records" (November 15, 2017)
- "9/11 Victims Say Saudi Arabia Can't Nix Terror-Support Claims" (November 13, 2017)
- "9/11 Victims Seek Terrorism-Linked Records From Dubai Bank" (November 01, 2017)
- "City Council lowers curtain on Cabaret Law" (October 31, 2017)
- "19 Anderson Kill Attorneys Named to 2017 Super Lawyers and Rising Stars Lists" (October 06, 2017)
- "Let NYC dance: The battle to save New York City's nightlife" (September 20, 2017)
- "Anti-Dance Law Repeal Supported By Everyone From de Blasio to Duke Ellington's Family" (September 15, 2017)
- "NYC Cabaret Law - Interview with Jerry Goldman" (September 09, 2017)
- "New lawsuit accuses Saudi government of involvement in 9/11" (March 22, 2017)
- "Saudi Arabia faces largest ever 9/11 lawsuit - accused of prior knowledge over terror attack" (March 22, 2017)
- "How BigLaw Finally Learned to Try Pot" (December 19, 2016)
- "Why major law firms see potential for medical marijuana in Florida" (October 21, 2016)
- "Eleven Anderson Kill Attorneys Selected as 2016 Super Lawyers, Nine Rising Stars" (October 04, 2016)
- "Override by Congress Restores 9/11 Victim Bill" (September 28, 2016)
- "The House, with the 15th anniversary of the 9/11 looming, approved legislation Friday permitting victims' families to sue Saudi Arabia" (September 09, 2016)
- "BBC Newshouse Interview - Reaction to House of Representatives Passing JASTA" (September 09, 2016)
- "How To Survive After You Make Partner" (August 22, 2016)
- "Saudi Arabia Dismisses New Report Raising 9/11 Links" (August 01, 2016)
- "3 Reasons Why Being A Good Lawyer Just Isn't Enough" (July 26, 2016)
- "Secret parts of 9/11 report have a Philly connection" (July 17, 2016)
- "Congress releases secret '28 pages' on alleged Saudi 9/11 ties" (July 15, 2016)
- "Long-Classified Pages on Alleged Saudi Arabia Ties to 9/11 Could Be Released Friday: Sources" (July 14, 2016)
- "The Global Lawyer: Terror Plaintiffs Still Have Friends in Washington" (May 17, 2016)
- "Senate approves bill allowing 9/11 suits against Saudis" (May 17, 2016)
- "Atty Group In 9/11 MDL Making Premature Fee Bid, Court Told" (May 05, 2016)
- "Sept. 11 Families Seek to Restore Saudi Arabia as Defendant" (March 10, 2016)
- "3 Things Attorneys Do That Tick Off Clients" (March 04, 2016)
- "9/11 Families Demand Sanctions For Alleged Al-Qaida Front" (December 23, 2015)
- "Dubai Bank Says Fire Destroyed Records Sought In 9/11 Suit" (December 21, 2015)
- "Al Qaeda-Linked Group Can't Escape Fees In 9/11 Suit" (December 18, 2015)
- "9/11 Families Continue Push For Dubai Islamic Bank Docs" (December 14, 2015)
- "Saudi Arabia Is Dismissed as Defendant in 9/11 Lawsuits" (September 29, 2015)
- "9/11 Families Demand Docs From Bin Laden Associates" (August 11, 2015)
- "Lawsuit could reveal secret Saudi connection to 9/11" (August 09, 2015)
- "9/11 Families Win Default Judgment Against Iran" (July 30, 2015)
- "Can Saudi government once again evade suit by 9/11 families?" (April 14, 2015)
- "Jewish Lawyer Seeks Answers for 9/11 Victims" (February 27, 2015)
- "U.S. court: Palestinian authorities must pay Americans millions for Israel attacks" (February 24, 2015)
- "9/11 families' attorney still wants to haul Saudi Arabia into court" (February 20, 2015)
- "9/11 terrorist Zacarias Moussaoui claims Saudi involvement" (November 18, 2014)
- "'20th hijacker' seeks role in civil terror cases" (November 16, 2014)
- "Plaintiffs Ask Court For Time To Assess Moussaoui Claims Of Saudi 9/11 Involvement" (November 06, 2014)

- "Zacarias Moussaoui wants to testify on al Qaeda terror financing" (October 14, 2014)
- "If A Bank Can Be Liable For Terrorism, Are The Saudis Next?" (September 23, 2014)
- "Supreme Court lets victims' 9/11 suit vs. Saudi Arabia proceed" (July 02, 2014)
- "Appeals-court panel reverses itself on Saudi 9/11 lawsuit" (December 21, 2013)
- "Saudi Arabia Must Face Sept. 11 Victims in Revived Suit" (December 20, 2013)
- "2nd Circ. Lets 9/11 Victims Proceed With Saudi Arabia Suit" (December 19, 2013)
- "Lawyers React To Supreme Court's Alien Tort Ruling" (April 17, 2013)
- "NYU Tries to Move Ahead With Expansion" (June 01, 2012)
- "Jerry S. Goldman Re-elected Vice President of NYU Alumni Association " (May 29, 2012)
- "Local law firm seeks to reinstate Saudi Arabia as a 9/11 defendant" (March 11, 2012)
- "Justices uphold rejection of 9/11 suit against Saudis" (June 30, 2009)
- "High Court Declines 9/11 Case Against Saudi Arabia" (June 29, 2009)
- "Supreme Court Rules 9/11 Families Cannot Sue Saudi Royals" (June 29, 2009)
- "Statement by Counsel for the Family of John P. O'Neill in Response to U.S. Supreme Court's Refusal to Hear 9/11 Victims' Case Against Kingdom of Saudi Arabia and Others" (June 29, 2009)
- "2nd Circuit Immunizes Saudis from September 11 Suit" (August 01, 2008)
- "As City Jails Overflow, Drug Problems Fester A Revolving-Door Criminal-Justice System. Long Waits For Rehab. Poverty And Joblessness. Causes Are Easy To Find. Solutions Are Elusive." (April 10, 1992)

## HONORS AND AWARDS



## MEMBERSHIPS

### Professional Memberships

Member, Federal Bar Association; Member, New York City Bar Association; Member, National Cannabis Bar Association

### Association Memberships

Vice President, New York University Alumni Association (present); Vice President and Chair of Alumni Day (Reunion) (2011 and 2012); President (2004-2007); Vice President (2001-2004); Secretary (1998-2001); and, Director (1996-present); College of Arts and Science Alumni Association, New York University; Chair, Costume Cultural Society; Criminal Law Committee; Member of National Association of Criminal Defense Lawyers; Member, Philadelphia and New York Estate Planning Councils; Member, Center City Proprietor's Association; Former Chairman, Upper Southampton Township Planning Commission, Upper Southampton, Bucks County, PA

### Board Memberships

Member, Board of Directors, New York University Alumni Association, 1998 to date; Member, Board of Directors (and former counsel) for the Citizen's Crime Commission of the Delaware Valley; Member, Board of Directors, Dance Parade NYC; Member/Chair, Board of Directors, Costume Cultural Society, Inc.

## BAR ADMISSIONS

New York

Massachusetts

Pennsylvania

## COURT ADMISSIONS

United States Supreme Court

United States Court of Appeals for the Second and Third Circuits

United States District Courts for the Eastern and Southern Districts of New York

United States District Court for the Eastern District of Pennsylvania

United States Tax Court

## EDUCATION

Temple University School of Law, LL.M., Taxation

Boston University School of Law, J.D.

New York University (University College), B.A., with Honors in Politics

© 2020 Anderson Kill P.C.

Attorney Advertising. Prior results do not guarantee a similar outcome.