UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD/SN) |

This document relates to: *Estate of John P. O'Neill, Sr., et al. v. Al Baraka Investment & Development Corp. et al.*, 04-cv-1923 (GBD) (SN) (S.D.N.Y.)

**AFFIDAVIT OF CHRISTINE I. O'NEILL
IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

STATE OF NEW JERSEY    )
                       ) ss.:
COUNTY OF ATLANTIC     )

Christine I. O'Neill, being duly sworn, deposes and says:

1. I submit this affidavit in support of Plaintiffs' Motion for Class Certification, and I seek to be appointed as Class Representative in my individual capacity and in my capacity as administrator of the estate of Dorothy O'Neill[1] and as administrator of the estate of John F. O'Neill, the late father of John P. O'Neill, Sr.[2]

2. My husband, John P. O'Neill, Sr. was the head of security at the World Trade Center on September 11, 2001. He had started in this role less than two weeks prior. John had asked our son to travel to New York City that day to celebrate his 29th birthday and discuss a job opportunity. Earlier that morning I spoke with John about our son's visit and our teenage

---

[1] Since the original Complaint was filed, Dorothy O'Neill has passed away, and I have been appointed as her estate's administrator. Counsel will be seeking to add this claim to the case by notice of amendment and I will be a class representative in my additional capacity as administrator of Dorothy O'Neill's estate.

[2] At the time of filing of the original Complaint, counsel did not realize that he was alive on September 11, 2001. Counsel will be seeking to add this claim to the case by notice of amendment and I will be a class representative in my additional capacity as administrator of John F. O'Neill's estate.

daughter's growing need for a car. Shortly after 8 a.m., I received a phone call from my sister telling me to turn on the television: a plane had just struck the World Trade Center. I called John. He heard the noise of an explosion but was not aware a plane had hit the building. He told me he had to get off the phone but he would call later. That was the last time I spoke to my husband.

3. It was not until September 17 that the news had finally been confirmed: My husband was murdered that Tuesday morning. His body was found under a stairwell in the North Tower, where I imagine he was rushing up to try to help others escape.

4. I spent years as a registered nurse for the Atlantic County Medical Examiner's Office. When there was a death, I was responsible for collecting evidence at the scene, including the body, obtaining medical and next of kin information, and assisting with autopsies. A person becomes unrecognizable when the body suffers catastrophic injuries, as John did, and natural decomposition processes begin when a body is not immediately recovered. Positive identification can only occur, for example, through forensic odontology aided by personal items found near the body. As soon as the towers fell I knew what to expect if John had not made it out alive and his body was to be recovered.

5. A week later when my husband's body was recovered and taken to the funeral home, I wanted to goodbye. My children asked me not to view the body. The funeral director was adamant that due to the condition of John's body, viewing it was not advisable. Although grateful John was recovered, I was, and remain to this day, saddened and angered I was not able to gain closure and say goodbye.

6. I am the nominated Class Representative and a member of the class identified in the Complaint filed on March 10, 2004, as amended by the First Consolidated Complaint, dated September 30, 2005. The class is defined as:

2

>(1) all spouses, children, parents, or siblings of any individual who died at the World Trade Center in New York, NY, the Pentagon Building in Arlington County, Virginia, or in the airliner crash in Shanksville, Pennsylvania, as the result of terrorist attacks on September 11, 2001; and (2) all legal representatives (including executors, estate administrators and trustees) entitled to bring legal action on behalf of any individual who died as the result of terrorist attacks on September 11, 2001; but excluding (3) all individuals, and all spouses, children, parents, siblings, and legal representatives of all individuals identified by the Attorney General of the United States or otherwise shown to have perpetrated, aided and abetted, conspired in regard to, or otherwise supported the terrorist attacks of September 11, 2001.

7. I am the wife of John P. O'Neill, Sr. who was killed in the World Trade Center on September 11, 2001. I am the administrator of the estate of Dorothy O'Neill, John's mother. Additionally, I am the administrator of the Estate of John F. O'Neill, the late father of John P. O'Neill, Sr.[3] I am also currently awaiting court approval for my application to become administrator of John's estate, in place of my son, John P. O'Neill, Jr, ███████

8. Dorothy and John Francis O'Neill had John, on February 6, 1952 near Atlantic City, New Jersey. He was their only child.

9. John was my high school sweetheart. Together we attended Holy Spirit High School in Absecon, New Jersey. John was a year older than I was and he moved to the Washington D.C. area after graduating high school to fulfill his childhood dream of working for the FBI. In January of my senior year, I left high school to move to Alexandria, Virginia to marry my one and only love.

10. I married John on January 23, 1971 with the consent of our parents. John started as a clerk at the FBI while attending college at American University. I took classes in the

---

[3] Both Dorothy and John F. O'Neill were alive on September 11, 2001.

3

morning and was employed as a typist for a publishing company in the Georgetown area of Washington D.C.

11. In 1972, we had our first baby, John P. O'Neill, Jr., affectionately referred to by our family as JP. In 1984, we welcomed our daughter Carol into the world.

12. John became a Special Agent in 1976 and started traveling more for work. After Carol was born, John was transferred to Washington, D.C. Later, John was transferred to Chicago and promoted to Assistant Special Agent in Charge. The kids and I did not move to Chicago, and in 1991, John and I thought it would be best to move our family home back to New Jersey so we could be closer to family. In 1995 he was transferred back to Washington D.C. Shortly thereafter John was transferred to New York and again promoted to Special Agent in Charge of National Security. He retired from the FBI in 2001, about two weeks before he would start his position at the World Trade Center.

13. I frequently spoke with John when he was not home. In a time before cell phones and email, John often sent us letters and postcards from all over the world. My mother was an avid postcard collector and John made a habit to send her postcards during his travels to add to her collection. I, and the kids, loved hearing from him.

14. John came home to see the kids and me when work permitted. He loved his work, and he firmly believed in his ability to protect Americans from harm. I was always very proud of him for the work he did. We loved seeing him but understood why he had to be away.

15. Dorothy adored John; he walked on water for her. John always made it a habit to be home for his mother's birthday, something I know meant the world to Dorothy.

4

Before we moved back to New Jersey, John Francis and Dorothy always drove down to Baltimore for Thanksgiving with us.

16. After discussing with JP and Carol on what John would have wanted for his funeral, I made the arrangements. I bought two burial plots at Holy Cross Cemetery where he was laid to rest.

17. After John died, Dorothy was shattered. She was a shadow of her formal self. She died less than four years after the attacks and I made her funeral arrangements. John Francis died in December of 2002. He was heartbroken over the death of his only son. I also arranged for John Francis' funeral.

18. The images broadcasted on television, which are endlessly televised every September, of the planes striking the towers and the towers falling will forever be imprinted in my memory. The pang of nervousness, fear, and doom associated with these images also cannot be erased. I know other class members, no matter who they lost, also still struggle with this fear and anxiety.

19. The panic I felt is still palpable today. I did not know what was happening to my husband and our son and was unable to contact either of them because telephone lines were down. It was hours after the towers fell that I finally got to speak with my son. I continued waiting hour after hour for days and days for John to call. I knew there was always a chance something could happen to him when he worked as an FBI Agent. Never did I imagine anything like this. I almost lost both my husband and my son and it is only good fortune that JP had not arrived in New York earlier that day.

20. I have spent time with different families who lost a loved one on 9/11. I know from experience how difficult a subject 9/11 is to discuss and attempt to process. It is just

as difficult to avoid. A day does not pass that I, like other members of this class, am not reminded of what I lost on September 11, 2001.

21. In this multi-district litigation, 9/11 families are seeking to hold various defendants responsible for their role in the attacks. I have been a part of this litigation since its inception. In addition to staying updated on the litigation by way of reviewing filings sent to me by counsel, and constant communications with counsel, including emails, phone calls, text messages, and in-person meetings, I have attended 9/11 memorial services, spent hours and hours contacting congressmen and senators regarding the Justice Against Sponsors of Terrorism Act ("JASTA"), protested for JASTA in front of the White House, and celebrated when JASTA passed.

22. I have been represented by Jerry S. Goldman, Class Counsel, since early 2004. I authorized and directed Class Counsel to file suit on my behalf and name me as a Class Representative.

23. I have a filing cabinet in my garage dedicated to the reams of paper sent to me by counsel over the past sixteen (16) years along with other 9/11-related documents.

24. I am in constant communication with Class Counsel who provide me with updates on the status of the case in addition to explaining legal theories, detailing possible issues, and summarizing hearings so I am apprised of the litigation. I am always provided an opportunity, when warranted, to explain my own opinions regarding the litigation to counsel. In addition, my questions are always promptly answered to my satisfaction.

25. When the al Baraka Defendants served me with interrogatories and notices of deposition, I diligently complied with their requests in close communication with my counsel. I provided responses to interrogatories, prepared for my deposition, and attended the deposition.

26. I negotiated the fee agreement for my whole family with Class Counsel.

27. I have not yet been appointed as Class Representative. Once appointed I will continue to make every effort to take on any additional task or obligation given by the Court or counsel.

28. I have no conflicts with Class Counsel or with any Class Members. I have suffered the same injury as family members in the class and seek the same result—to hold accountable those responsible for the 9/11 terrorist attacks.

29. No matter how painful the process, it is my mission to prevent anyone from having to experience the pain I have encountered since the attacks on September 11, 2001. My goal is to do everything in my power to divert any funds and material support from terrorist groups to prevent future harm and avoid having anyone else experience the pain and suffering of having a loved one killed in a terrorist attack.

30. Since 2001, there are days I feel lost, like I am standing in the middle of a room with no direction. However, this fight for justice keeps me centered on a path toward a goal I firmly believe in. I take this role as Class Representative very seriously. I've been in this battle since 2003. Every day I do the best I can to press forward toward holding accountable those responsible for providing the terrorists material support. My pain, like others who lost a loved one on 9/11, drives me.

WHEREFORE, I respectfully request I be appointed Class Representative and request that the Motion for Class Certification against the al Baraka Defendants be granted in all respects.

Dated: January 13th, 2020
Atlantic City, New Jersey

*Christine I. O'Neill* (signature)
Christine I. O'Neill

Sworn to before me this 3rd
day of January, 2020.

*Deborah A Landsiedel* (signature)
Notary Public

> **DEBORAH A LANDSIEDEL**
> Notary Public
> State of New Jersey
> My Commission Expires July 26, 2022

8