UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE TERRORIST ATTACKS ON :         03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001          :

_____

**This Document Relates To:**

*Ashton, et al. v. al Qaeda Islamic Army, et al.*, Case No. 02-CV-06977
*Burlingame, et al. v. bin Laden, et al.*, Case No. 02-CV-07230
*Bauer, et al. v. al Qaeda Islamic Army, et al.*, 02-CV-07236
*Havlish, et al. v. bin Laden, et al.*, Case No. 03-CV-09848
*O'Neill, Sr., et al. v. Republic of Iran, et al.*, Case No. 04-CV-1076
*Burnett, Sr., et al., v. Islamic Republic of Iran*, Case No. 15-CV-9903

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION
AND/OR CLARIFICATION OF DECISION ESTABLISHING A COMMON BENEFIT
FUND SOLELY IN FAVOR OF *HAVLISH* COUNSEL**

# TABLE OF CONTENTS

STATEMENT OF FACTS .................................................................................................................2

ARGUMENT ....................................................................................................................................3

    I.    *Havlish* Counsel Have No Claim Whatsoever to Fees from MDL Plaintiffs
        They Do Not Represent. ................................................................................................................3

    II.   Any Common Benefit Fee in this MDL, in Order to Be Fair and Equitable,
        Must Take Into Account Both the Reasonable Value of *Havlish* Counsel's Work
        and the Value of Work Performed By Other Attorneys Acting on Behalf of the
        PECs; Because It Is Not Yet Possible to Assess the Proportionate Value of All
        Common Benefit Work, It Is At Most Appropriate at this Time to  Establish a
        CBF Fund; Allocation of Such Fees Must Await the Conclusion of the MDL. ..........................5

    III.  *Havlish* Counsel Should Not Be Entitled to Any Fees Out of USVSST Fund
        Round One Recoveries. ................................................................................................................9

CONCLUSION ................................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116 (1885) .......................................................7

*Hall v. Cole,* 412 U.S. 1 (1973) ........................................................................................... 3, 4

*In re Genetically Modified Rice Litig.,* 764 F.3d 864 (8th Cir. 2014) ................................................6

*In re Vioxx Prods. Liab. Litig.,* 760 F.Supp.2d 640 (E.D.La. 2010) ...........................................7, 8

*In re Zyprexa*, 594 F.3d 113 ..................................................................................................5

*Mills v. Electric Auto-Lite Co.,* 396 U.S. 375 (1970) ....................................................................4

*Rodonich v. Senyshyn,* 52 F.3d 28 (2d Cir. 1995) .................................................................. 3, 4

*Sprague v. Ticonic Nat. Bank,* 307 U.S. 161 (1939) .....................................................................4

*Wolff v. Ampacet Corp.,* 673 N.E.2d 745 (Ill. 1996) ....................................................................5

**Statutes**

Judiciary and Judicial Procedure: Jurisdiction, Powers, and Temporary Assignment;

    28 U.S.C. § 636(b)(1)(A) ...........................................................................................3

Justice for United States Victims of State Sponsored Terrorism Act,

    34 U.S.C. § 20144 (Dec. 18, 2015)........................................................................... 5, 6

United States Victims of State Sponsored Terrorism Fund Clarification Act,

    P.L. 116-69, Title VII (Nov. 21, 2019) .......................................................................10

**Other Authorities**

*Restatement (Third) of Restitution and Unjust Enrichment* § 29, comment e. ....................................5

Once again, the *Havlish* plaintiffs avoid the central issue that led to the breakdown of the parties' efforts to meet and confer – their refusal to provide and substantiate the time and expenses reasonably spent in connection with work that they contend conferred a common benefit on the Responding Plaintiffs as was previously ordered by the Court. In their opposition to reconsideration, *Havlish* counsel also fail to address the unprecedented nature of a mid-stream "common benefit" payment to one subset of attorneys in a complex multi-district litigation with multiple moving parts and active efforts by several different groups of counsel. Instead, in total disregard of precedent to the contrary, counsel baldly asserts that they are entitled to substantial compensation from every plaintiff who obtained compensation from the United States Victims of State-Sponsored Terrorism Fund (USVSST Fund) – which *Havlish* counsel had no role in establishing. This argument, however, is contrary to well-established law, which the Court overlooked in its previous decision.

Simply put, *Havlish* counsel have no claim whatsoever against plaintiffs who have received payments from the USVSST Fund. As this Court recognized previously, this is not a "common fund" case, as the facts establish that the *Havlish* counsel's work did not create the USVSST Fund or any other "common fund" before the Court from which common benefit fees may be awarded, the *sine qua non* for an equitable fee award under the common fund doctrine. Plaintiffs in subsequent litigation are fully entitled to rely on the work of attorneys in earlier cases without compensation.

On the other hand, *Havlish* counsel may have a basis to seek compensation from other *counsel* in this MDL pursuant to the "common benefit fee" doctrine applicable to multi-district litigations, to ensure that those attorneys who performed little or no work in the entire litigation do not unfairly benefit from the efforts of the counsel active in that MDL. But, as explained in the motion for reconsideration, such common benefit fee awards are subject to significant constraints, which the Court must incorporate into its Order should a common benefit fund be established. Most significantly, any such award must take into account all common benefit work done in this MDL under

the direction of the PECs; moreover, the attorneys who do such common benefit work are only entitled to "reasonable" compensation for their efforts, in order to fairly apportion attorneys' fees between counsel retained by individual plaintiffs and those who undertake the common benefit work. *Havlish* counsel may not simply disregard these requirements in demanding up to 80% of all attorneys' fees earned through USVSST Fund distributions.

Finally, by seeking a fee award solely from "USVSST Fund distributions made to Responding Plaintiffs in 2019" or in the future, *Havlish* counsel have waived any claim for fees derived from the first round of distributions from the fund, which were distributed well before 2019 and are no longer available.

## STATEMENT OF FACTS

Responding Plaintiffs choose not to directly respond to the scurrilous, *ad hominem* attacks set forth in the *Havlish* response, which fail to advance any legal argument, and instead rely on the statement of facts set forth in our initial motion for reconsideration. We do, however, wish to apprise the Court of recent information concerning *Havlish* counsel's continuing efforts to enforce judgments outside of the context of this MDL solely on behalf of their own clients, to the exclusion of all other plaintiffs in this MDL. These efforts further highlight the fact that *Havlish* counsel have never been acting for the "common benefit" of all MDL plaintiffs.

On January 26, 2020, counsel for the *Havlish* plaintiffs moved on an emergency basis to use certain sealed evidence "in judgment domestication, enforcement, and collection litigation in Italy and Luxembourg." ECF No. 5738 at 1. This is further proof of the substantial non-common benefit work that *Havlish* is pursuing on behalf of its clients and its clients alone. While *Havlish* is, of course, entitled to undertake these collection efforts, its recent filings support the Responding Plaintiffs' arguments that *Havlish* counsel always has pursued its efforts regarding Iran for the benefit of its clients and has not been engaged in this work for a common-benefit. That, in doing this individual work for their

individual clients, *Havlish* counsel obtained a judgment that became law-of-the-case does not transform its individual work into common-benefit work and cannot justify receipt of 80% of attorneys' fees from clients it has never sought to directly help (whether in cross-border enforcement action or the *In re 650 Fifth Litigation*, neither of which it has sought to share with other counsel or plaintiffs, or in the instant litigation).

In the absence of any documentation of reasonable time or expenses spent on purported common benefit work, and in light of controlling case law concerning the common benefit fee and common fund doctrines that this Court previously overlooked or misapprehended, reconsideration is warranted.

## ARGUMENT[1]

### I.     *Havlish* Counsel Have No Claim Whatsoever to Fees from MDL Plaintiffs They Do Not Represent.

Under the prevailing "American Rule," attorneys are not entitled to obtain fees for their work except pursuant to contract or statutory authorization. *Hall v. Cole,* 412 U.S. 1, 4 (1973); *Rodonich v. Senyshyn,* 52 F.3d 28, 32 (2d Cir. 1995). Despite this general rule, *Havlish* counsel contend that other MDL plaintiffs owe them attorneys' fees because those plaintiffs "appropriated *Havlish* work product," and contend that the Court has "inherent equitable power" to award such fees "where principles of fairness so require." ECF No. 5498 at 4, 14.

That is not the law. Attorneys have no protectable property interest in their court filings or the judgments obtained therefrom, and other plaintiffs are free to rely on the information in those filings and on those judgments. Indeed, this is a fundamental concept in any common law system, where law is established by precedent; no attorney in a common law system could be expected to

---

[1] *Havlish* counsel fault Responding Plaintiffs for not styling their motion as "objections" to this Court's ruling and for not invoking the standards for review set forth in 28 U.S.C. § 636(b)(1)(A).  That section, of course, is wholly inapplicable because it addresses requests for reconsideration directed to the District Judge, not a request that the Magistrate Judge herself reconsider and/or clarify her ruling, the motion Responding Plaintiffs here bring.

ignore binding precedent, nor could attorneys involved in establishing that precedent reasonably expect to obtain a future fee interest in cases that rely on it.

An exception exists in the "common fund" cases, where an attorney's work creates, expands, or protects a common fund that is subject to the Court's jurisdiction that "makes possible an award that will operate to spread the costs proportionately among" members of the class that will benefit from the fund. *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 394 (1970); *Hall,* 412 U.S. at 5; *Sprague v. Ticonic Nat. Bank,* 307 U.S. 161, 166-67 (1939); *Rodonich,* 52 F.3d at 31. But this is not such a case. *Havlish* counsel's efforts did not establish judgments against Iran for other MDL plaintiffs, nor did they create the USVSST Fund, which is not a source of funds before the Court. They simply established a legal precedent that other plaintiffs relied on as *res judicata* in obtaining default judgments against Iran. There is, at present, no fund before the Court from which it can award fees from other plaintiffs.

This distinction between a "common fund" and a "common benefit fee" is critical. While this Court recognized the meaningful difference between the concepts, it overlooked the fact that its decision essentially rested on "common fund" principles, which are inapplicable in this situation. As the *Restatement of Restitution* explains:

> *e. The significance of the "common fund."* The rule of this section authorizes a restitution claim only against a person who is an acknowledged or adjudicated holder of an interest in property that has been created, preserved, or made more valuable by the intervention of the claimant; only when the property so identified serves as the nexus of common ownership interests linking the claimant and the defendant; and only to the extent that the defendant may satisfy the restitution claim without being required to make a net outlay of money. . . . The requirement . . . that there be an identifiable fund to which the beneficiaries are "entitled to share by reason of their common or parallel interests therein" establishes the minimum connection between the claimant, the fund, and the defendant, without which the benefits in question are either too generalized or too remote to justify a liability to pay for unrequested services.

*Restatement (Third) of Restitution and Unjust Enrichment* § 29, comment e.[2] Here, too, some of the Responding Plaintiffs at most relied on precedent created as a result of the default judgment obtained by *Havlish* counsel. *Havlish* counsel did not "recover a common fund for the benefit of persons other than themselves." *In re Zyprexa*, 594 F.3d at 128. They are therefore not entitled to an award of fees from other plaintiffs under the common fund doctrine.  Indeed, had Congress not established the USVSST Act there would be no fund whatsoever – and had the United States government not prosecuted the underlying actions whose proceeds fill the USVSST Fund's coffers, there would be no monies to be placed into the Fund.  As such, *Havlish* counsel, who neither created nor filled the Fund, cannot be entitled to any recovery under a "common fund" theory.

Thus, contrary to their argument, *Havlish* counsel have no basis whatsoever to seek fees from MDL plaintiffs who have obtained payments from the USVSST Fund, which – no matter what nomenclature *Havlish* counsel may employ – relies on the concepts underlying the inapplicable common fund doctrine.[3]

II.     **Any Common Benefit Fee in this MDL, in Order to Be Fair and Equitable,  Must Take Into Account Both the Reasonable Value of *Havlish* Counsel's Work and the Value of Work Performed By Other Attorneys Acting on Behalf of the PECs; Because It Is Not Yet Possible to Assess the Proportionate Value of All Common**

---

[2] The *Restatement* provides an illustrative example of a situation in which restitution would *not* be appropriate that bears similarities to the situation confronting this Court:

> X Corp. receives a notice of deficiency from the state tax commissioner. X retains Attorney to contest the state's assessment, arguing that a provision of the revenue code has been improperly interpreted to apply to X. X prevails after extended litigation, obtaining a ruling by the state's highest court that the relevant statute does not apply to a taxpayer in X's position. The tax in question has also been assessed against one other taxpayer in X's position, Y Corp. Attorney approaches Y, offering to represent it in related proceedings before the tax commission. Y declines, then retains its own counsel and promptly obtains a tax refund. Attorney sues Y, asserting that final judgment in the X case conferred a valuable benefit on Y, entitling Attorney to a reasonable fee. Although Attorney's efforts on behalf of X have indeed resulted in a substantial benefit to Y, taking the form of reduced taxes and saved legal expenses, Attorney is not entitled to restitution by the rule of this section. The first of several reasons is that Attorney has not created a fund in which both X and Y are entitled to share.

*Id.,* Illustration 17 (based on *Wolff v. Ampacet Corp.*, 673 N.E.2d 745 (Ill. 1996)).

[3] Thus, contrary to *Havlish* counsel's arguments, ECF No. 5498 at 3-4, it is simply irrelevant whether other plaintiffs in this MDL received a "substantial benefit" from work that established a precedent in this case.

5

**Benefit Work, It Is At Most Appropriate at this Time to Establish a CBF Fund; Allocation of Such Fees Must Await the Conclusion of the MDL.**

By contrast, *Havlish* counsel *may* have an argument for the creation of a common benefit fee ("CBF") fund out of attorneys' fees earned by counsel in this MDL out of distributions from the USVSST Fund.[4] However, because such a CBF fund is designed to fairly and equitably divide attorneys' fees both between the attorneys who carried out common benefit work on behalf of the MDL and the primary counsel who were retained by the plaintiffs and also among *all* attorneys who participated in the common benefit work, it is subject to limitations that do not apply in the "common fund" context. In this context, it remains unclear whether *Havlish* counsel have made a sufficient showing to support the creation of a CBF fund. And, it is absolutely clear that if the Court were to establish a CBF fund it would be premature to allocate to a particular set of attorneys a distribution of that fund mid-stream in this active, arduous litigation before the contributions of all attorneys doing CBF work can be assessed. Only after such a determination of the work performed by *all* counsel should a CBF allocation be considered.

First, as this Court properly recognized in requiring *Havlish* counsel to come forward with evidence of their hours and expenses, ECF No. 5180 at 12, counsel performing common benefit work are only entitled to "reasonable" compensation for their efforts on behalf of the MDL. The goal of any CBF fund is to ensure that both counsel who do the common benefit work and the primary counsel retained by the litigants "receiv[e] fair compensation for their respective work." *In re Vioxx*

---

[4] While this Court has decided that an award of common benefit fees out of USVSST Fund recoveries may be appropriate, it is not entirely clear to Responding Plaintiffs that such distributions, which were not made by any party before this Court, are properly subject to this Court's jurisdiction or an appropriate basis for the award of common benefit fees. *Cf. In re Genetically Modified Rice Litig.,* 764 F.3d 864, 874 (8th Cir. 2014) ("district court correctly held that it lacked jurisdiction to order [common benefit fee] holdbacks from the state-court recoveries"). Indeed, the legislation which established the USVSST Fund makes clear that determinations regarding the eligibility of particular claimants to the Fund and the amounts payable to eligible claimants are within the sole discretion of the Fund's Special Master and not subject to judicial review. *See* 34 U.S.C. § 20144(b)(3). As such, any redistribution of fees directly tied to the Special Master's wholly discretionary action would be inappropriate. Responding Plaintiffs have not challenged this Court's conclusion in this regard in the pending motion, but reserve the right to object on this basis to Judge Daniels or on appeal of that fee ruling.

*Prods. Liab. Litig.,* 760 F.Supp.2d 640, 647 (E.D.La. 2010). Yet *Havlish* counsel have made no showing of what a reasonable common benefit fee would be (other than to demand as much as 80% of attorneys' fees). Moreover, it is highly likely that *Havlish* counsel have already recouped significant fees from the USVSST Fund awards to their clients and will do so in any future rounds for that Fund; *Havlish* counsel have also likely recovered significant additional fees from their independent collection efforts that they have undertaken and continue to undertake solely for the benefit of *Havlish* counsel and their clients (*see, e.g.,* ECF No.5738) not all MDL plaintiffs as a group. Absent a satisfactory showing by *Havlish* counsel that they have not yet been reasonably compensated for their efforts in obtaining a default judgment against the Republic of Iran, a non-appearing defendant, there is simply no basis for creating a CBF fund at this time.

*Havlish* counsel cite to *Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116, 125-27 (1885), to argue that they are entitled to compensation from other plaintiffs, regardless of whether they have already been adequately compensated for their work. ECF No. 5498 at 15. But here again *Havlish* counsel are confusing and conflating the "common fund" case law, such as *Pettus,* with common benefit fee case law in MDLs. In that case, which established the legal interest of unsecured bondholders in the assets of a railroad company, the Supreme Court held that the attorneys were entitled to reasonable additional compensation for the benefit they conferred on other bondholders *out of the defendant's assets.* That precedent is wholly inapplicable in the present context, wherein *Havlish* counsel seek fees out of the fees recovered by other attorneys in this MDL from a fund which Congress, not *Havlish* counsel, created and which the United States government funded.

Second, any CBF fund must take into account the substantial work performed by *all* attorneys performing common-benefit work. ECF No. 5361 at 14-17. *Havlish* counsel respond that the common benefit work performed by other MDL counsel "has not yet created, and may never create, any tangible benefit for plaintiffs in this MDL," ECF No. 5498 at 5, while ignoring the fact that *Havlish*

did not create the tangible benefit conferred by the creation of the USVSST Fund.  But that argument entirely misses the point about the justification for common benefit fees in MDLs. The point is to divide the attorneys' fees recovered between primary counsel who retained the clients and MDL counsel who performed the work in order to fairly compensate both. *In re Vioxx Prods. Liab. Litig.*, 760 F.Supp.2d at 647. There is no prior MDL case, precedent or factual basis – nor does (or can) *Havlish* counsel cite to any such authority – to suggest that only MDL counsel who have produced a "tangible result" are entitled to compensation. Indeed, if that were the rule, why would attorneys ever agree to take on the difficult, contested work in an MDL, such as the claims against a well-funded, heavily-represented and politically well-connected defendant, such as the Saudi government, while other attorneys would be virtually guaranteed CBF compensation by taking on the much easier task of litigating against absentee defendants who were known to never appear in United States courts, such as Iran, a country long listed by the U.S. Government as a State Sponsor of Terrorism and against which several other terror defaults had been entered before Havlish?[5]  Such an unprecedented rule would substantially prejudice future MDL litigation by creating an untenable and unworkable structure whereby attorneys would be disinclined to devote substantial resources litigating against certain defendants, irrespective of their culpability, if it were known that attorneys would only be entitled to a fee award from a CBF if their work created a readily quantifiable result.[6]  Attorneys who continue to engage in common benefit work against defendants other than the Islamic Republic of Iran should be just as eligible to receive common benefit fees as those who obtained a default judgment against a

---

[5] Likewise, if that were the rule, attorneys would be disinclined from performing the necessary, more administrative tasks that benefit all plaintiffs and the Court, such as negotiating litigation-wide case management, discovery, and deposition protocol orders, or addressing other case coordination inquiries requested by the Court.

[6] While *Havlish* counsel analogizes this to the risks inherent in any contingency-fee based litigation, that argument overlooks the fact that in an MDL counsel act in a coordinated and collective fashion to prosecute various aspects of the action, dividing up responsibilities (including some litigation-wide coordination responsibilities absent from simpler contingency-fee based litigation) and collectively accepting certain risks of recovery and, concomitantly, benefiting from the work that each other performs.

non-appearing defendant.

These principles lead to two conclusions that require reconsideration and/or clarification of this Court's ruling. First, whether it is even appropriate to establish a CBF fund at this time depends in part upon a showing that *Havlish* counsel have not already been adequately compensated for their work, taking account of both any fees they have recovered from USVSST Fund distributions to their clients, as well as their private enforcement efforts. This is especially true in this MDL, where most of the "primary counsel" from whom *Havlish* counsel seek fees are also the attorneys who have taken on the vast majority of the common benefit work in this MDL. Second, even if it is appropriate to create a CBF fund at this time, by asking primary counsel to contribute a modest percentage of their fees from USVSST Fund recoveries, it would be utterly premature to allocate those funds to particular counsel at this time. As this Court is perhaps too-well aware, counsel engaged in common benefit work on behalf of the PECs continue to pursue plaintiffs' claims against defendants other than the Islamic Republic of Iran, at great cost in terms of both time and expense. They too are entitled to compensation for their efforts, out of any recoveries in this MDL. Thus, even if a CBF fund is created, it would be inappropriate to allocate those funds at this time, before the Court has a complete accounting of the efforts of *all* counsel performing common benefit work.

### III.   *Havlish* Counsel Should Not Be Entitled to Any Fees Out of USVSST Fund Round One Recoveries.

In their motion for fees, *Havlish* counsel sought payments "from USVSST Fund distributions made to Responding Plaintiffs in 2019." ECF No. 5498 at 17. The first round of USVSST Fund distributions were made before that time starting in January 2017 – a fact published on the USVSST Fund's website and readily known to the public and to *Havlish* counsel.  Yet *Havlish* counsel waited until December 2018 to move for any fees associated with those Round One payments.  A delay of nearly two years after the first payments were made – and more than two years since the first *Havlish*

motion for fees was denied – must constitute a waiver and *Havlish* counsel cannot recover any fees from Round One of the USVSST Fund. Indeed, *Havlish's* December 2018 motion demanded fees from *only* Round Two, Round Three and any future USVSST distributions.

In any event, the funds paid and distributed in the USVSST Fund's first distribution cannot be recovered by other counsel at this point for two reasons. First, any fees paid to attorneys in 2017 have been consumed – whether by operating expenses or distribution to the firms' attorneys (or to co-counsel). While *Havlish* counsel assumes that all attorneys were charging the statutory maximum of 25% for fees in all distributions up until that cap was lowered in the USVSST Clarification Act, enacted in November 2019, that is false. Many Round One and Round Two cases involved fee agreements of 15% (or less) and so all but a small part of the 12% of gross recoveries that *Havlish* counsel seeks from Round One was distributed to clients already. And in some cases, those distributions were subject to federal, state and local taxes, which consumed as much as 50% (or more) of the actual payments. Second, it would be difficult if not impossible to recover the amount constituting the percentage that *Havlish* counsel seeks from Round One distributions from subsequent rounds in light of the substantial increase in the number of claims submitted to the USVSST Fund since that time. Simply put, because of the increase in the number of claimants and the resulting decrease in pro rata payments to each claimant, future recoveries will not be sufficient to satisfy what the *Havlish* group seeks in percentage payments from Round One – even if those attorneys had not waived their right to seek such fees.

## CONCLUSION

For the foregoing reasons, and those set forth in our prior Memorandum, Responding Plaintiffs respectfully request that this Court both reconsider and clarify its earlier ruling. Responding Plaintiffs hereby request oral argument on this motion in order to elucidate for the Court the various interests at stake.

January 31, 2020                    Respectfully submitted,

                                    MOTLEY RICE LLC
                                    By: /s/ Robert T. Haefele
                                        JODI WESTBROOK FLOWERS
                                        DONALD A. MIGLIORI
                                        ROBERT T. HAEFELE
                                        MOTLEY RICE LLC
                                        28 Bridgeside Boulevard
                                        Mount Pleasant, SC 29465
                                        Tel.: (843) 216-9184
                                        Email: rhaefele@motleyrice.com

                                    *For the Plaintiffs' Exec. Committee for Wrongful
                                    Death And Personal Injury Plaintiffs*

                                    KREINDLER & KREINDLER LLP
                                    By: /s/ Andrew J. Maloney
                                        JAMES P. KREINDLER
                                        ANDREW J. MALONEY
                                        KREINDLER & KREINDLER LLP
                                        750 Third Avenue
                                        New York, New York 10017
                                        Tel.: 212-687-8181
                                        Email: amaloney@kreindler.com

                                    *For the Plaintiffs' Exec. Committee for Wrongful
                                    Death And Personal Injury Plaintiffs*

                                    ANDERSON KILL P.C.
                                    By: /s/ Jerry S. Goldman
                                        JERRY S. GOLDMAN
                                        ANDERSON KILL P.C.
                                        1251 Avenue if the Americas
                                        New York, New York 10020
                                        Tel.: 212-278-1000
                                        Email: jgoldman@andersonkill.com

                                    *For the Plaintiffs' Exec. Committee for Wrongful
                                    Death And Personal Injury Plaintiffs*