**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**IN RE: TERRORIST ATTACKS ON**                    Civil Action No.
**SEPTEMBER 11, 2001**                              **03 MDL 1570 (GBD) (SN)**
--------------------------------------------------------

This document relates to:  *All Actions*


**THE *FEDERAL* PLAINTIFFS' MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF THEIR PROPOSAL CONCERNING THE ESTABLISHMENT AND**
**ALLOCATION OF THE COMMON BENEFIT FUND AND FOR**
**RECONSIDERATION OF THE COURT'S SEPTEMBER 30, 2019 COMMON**
**BENEFIT FUND DECISION, OR, IN THE ALTERNATIVE, IN FURTHER**
**SUPPORT OF OBJECTIONS TO THE COURT'S SEPTEMBER 30, 2019**
**<u>OPINION AND ORDER PURSUANT TO FED. R. CIV. P. 72</u>**


January 31, 2020

## <u>TABLE OF CONTENTS</u>

**Page**

I.   PRELIMINARY STATEMENT ................................................................................................1

II.  LEGAL ARGUMENT ........................................................................................................3

    A.   The Federal Plaintiffs' Submission is Properly Before the Court ................................3

    B.   The Common Benefit Fund is Intended to Operate for the Benefit of the Committee
        Members Based on their Advancement of the MDL as a Whole ..................................5

    C.   Common Benefit Fund Disbursements Should Correlate to the Committee Members'
        Relative Contributions to and Investments in the MDL .............................................8

III.  CONCLUSION..................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Mills v. Electric Auto-Lite Co.*,
    396 U.S. 375 (1970)................................................................................................................5

**Statutes and Other Authorities**

28 U.S.C. § 636................................................................................................................................4

Federal Rule of Civil Procedure 72 ................................................................................................4

## I.   **PRELIMINARY STATEMENT**

Counsel representing the overwhelming majority of the plaintiffs who have secured default judgments against Iran in this litigation and have filed, or will be filing, applications with the United States Victims of State Sponsored Terrorism Fund ("USVSSTF"), agree with the basic principle that a common benefit fund should operate to provide compensation for all common benefit work performed in the MDL proceedings to date.[1]   The *Havlish* counsel alone stake out a contrary view, urging that a common benefit fund should be established for their sole benefit for obtaining a non-adversarial default judgment against Iran, without taking into consideration or providing any compensation for the investments by other committee members in undertaking other common benefit work that was absolutely necessary in this litigation.  The *Havlish* counsel's position is in conflict with governing law, and at odds with equitable considerations as to the structure and realities of this MDL.  Even more basically, the *Havlish* counsel have no logical basis for opposing the approach proposed by the *Federal* plaintiffs, as that structure allows them to receive the precise relief they are seeking through their motion – namely, a mechanism to seek appropriate compensation for their work on the default judgment.

Critically, this is not a situation in which the recoveries resulting from the MDL are insufficient to compensate both the *Havlish* counsel for their work on Iran, and other counsel for other common benefit work done for the benefit of the plaintiffs as a whole. To the contrary, developments relating to the USVSSTF, including the recent amendments extending the benefits and duration of the fund, confirm that the USVSSTF will produce fees sufficient to provide compensation for the common benefit fund work and expenses incurred to date, and to provide

---

[1] *See* ECF No. 5361 at p. 7 ("the Court should rule that *all* common-benefit work in the MDL, not just work involving claims against Iran, is potentially eligible for a CBF award; ..."); p. 14 ("even if the funds for the CBF are derived entirely from legal fees earned on recoveries relating to judgments against Iran, all counsel who have done common-benefit work in this MDL must be eligible for common benefit fees.").

funding for common benefit expenses that must be incurred to properly represent the plaintiffs in the ongoing litigation. Within the structure the *Federal* plaintiffs are proposing, the *Havlish* counsel will be entitled to receive appropriate compensation for the common benefit work they performed in pursuing a default judgment against Iran. Indeed, as counsel for the *Federal* plaintiffs noted in their earlier brief, one of the factors that would be relevant under applicable law is the degree to which a committee member's work contributed to the realization of a recovery. To the extent the *Havlish* counsel's representations regarding the scope and necessity of the work they performed in relation to the default judgment against Iran are correct, they would be entitled to be properly compensated for their common benefit work under the structure the *Federal* plaintiffs have advocated. The fact that other counsel would also be fairly compensated for their investment in performing common benefit work would result in no prejudice to the *Havlish* counsel.

On the other hand, any approach that limits benefits from the present common benefit fund to the *Havlish* counsel, and fails to compensate other counsel for their common benefit investments in the litigation, will result in severe prejudice to those other committee lawyers and firms. Most notably, unless compensation is provided for all common benefit work via the present distributions from the USVSSTF, there will be no practical way to claw back funds from those distributions at a later date to provide compensation to committee members for their common benefit work in the litigation. That is an entirely untenable and inappropriate result, given that there can be no certainty as to the nature and scope of any future recoveries from the additional claims plaintiffs in the litigation have chosen to pursue, and for which committee members have been and continue to be obligated to perform common benefit work. And to the extent that future settlements or recoveries are realized, the distributions being made at this time pursuant to the common benefit fund would be taken into consideration in relation to any future common benefit fund applications, thereby preventing any windfall.

II.     **LEGAL ARGUMENT**

    A.     **The *Federal* Plaintiffs' Submission is Properly Before the Court**

There is no merit to the *Havlish* counsel's opening argument that the Court should reject the *Federal* plaintiffs' proposal as procedurally improper. This claim misreads the *Federal* plaintiffs' submission, disregards the posture of this case, and is an unfounded effort to distract from the substantive issues before the Court.

The Court's September 30, 2019 Opinion and Order granted, in part, the *Havlish* counsel's request for the creation of a common benefit fund. The Court resolved the parties' disputes as to the timeliness of the fund and invited the parties to meet and confer to address the need for discovery and the proof required to support disbursements, among other issues. The parties' efforts were not productive. At that juncture, it was both appropriate and necessary for the parties to submit proposals for the establishment and allocation of a common benefit fund that properly accounts for the committee structure in the MDL and the equitable considerations relating to the effective management of the complex MDL proceedings. The *Federal* proposal was both proper and intended to narrow the scope of motion practice and facilitate the efficient operation of the common benefit fund to permit disbursements to committee members, including the *Havlish* counsel who are now lodging complaints at this very effort.

Recognizing that the Court focused on the creation of the fund without specifically outlining the criteria governing its operation, the *Federal* plaintiffs explained that their submission was both a proposal and a request that the Court reconsider its ruling to take into consideration new circumstances not previously before the Court, specifically referencing the dramatic changes to the USVSSTF that resulted in an expansion of the duration of the fund and the pool of eligible claimants, and the additional information that became available regarding the scope of the distributions that are or would be available through the USVSSTF. The *Federal* plaintiffs also raised

specific objections to two aspects of the Court's September 30, 2019 Opinion and Order, urging that potential interpretations of the Court's report and recommendation on those issued would not comport with governing law: (1) the potential that the Opinion and Order provides for the establishment of a common benefit fund solely for the Iran claim and solely benefiting *Havlish* counsel for their work on those claims; and (2) the Court's statement that consideration of time and investments spent "litigating claims against" defendants other than Iran would be "premature" given that "no other Defendant has settled or been found liable." ECF No. 5180 at n. 5. The clear import of the *Federal* plaintiffs' submission is that these two findings are "clearly erroneous or contrary to law." The *Federal* plaintiffs alternatively requested that the Court construe the submission as an Objection pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.

The issues raised by the *Federal* plaintiffs are not "wholly outside the scope of" the Court's Opinion and Order. ECF No. 5499 at 4. The opposite is, in fact, true. By filing the motion for the creation of a common benefit fund, the *Havlish* counsel necessarily placed into issue the matters relating to the fund's operation, including the intended scope, the beneficiaries, and the factors governing disbursements. Equally unavailing is the *Havlish* counsel's criticism of the *Federal* plaintiffs for raising issues for the "first time" on reconsideration, under the theory that *Havlish* counsel were deprived of a "fair chance" to respond, while simultaneously dismissing the *Federal* plaintiffs' arguments on the basis that they "consisted primarily of repackaged versions of arguments made in their previous briefing." ECF No. 5499 at 7. Both claims cannot be true. These arguments reveal an internal inconsistency that elevates form over substance, and are in any case unfounded.

4

**B.      The Common Benefit Fund is Intended to Operate for the Benefit of the Committee Members Based on their Advancement of the MDL as a Whole**

The *Federal* plaintiffs do not object to the Court's creation of a common benefit fund, or its determination that the *Havlish* counsel performed common benefit work that entitles them to seek appropriate compensation from the fund.[2]  However, to the extent that the Court intended to create a fund that is applicable solely to the claims against Iran, and solely for the benefit of the *Havlish* counsel, the *Federal* plaintiffs respectfully submit that ruling is contrary to law.

The *Havlish* counsel's efforts to claim the exclusive benefits of a fund runs afoul of the law governing common benefit funds and ignores the actual structure of this litigation.  The *Havlish* counsel cite no authority or support for their suggestion that recovery from a common benefit fund requires that the beneficiaries of the fund deliver an "actual tangible benefit" in the form of a monetary recovery.  Indeed, the Court recognized that the structure of a common benefit fund is intended to compensate attorneys based on their relative investments in prosecuting claims on behalf of all plaintiffs in the MDL, and that the law does not require that the parties seeking the benefit of the fund "must actually bring money into the court."  ECF No. 5180 at 8 (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393-894 (1970)).[3]

By establishing a fund designed to compensate the committee members for the burden that they assumed in the MDL, the Court furthers its objectives to distribute the costs of litigation among those who benefited and avoid the unjust enrichment of counsel who disproportionately

---

[2] The *Havlish* counsel misconstrue the *Federal* plaintiffs' position insofar as they understood it to preclude any recovery by the *Havlish* counsel.  ECF No. 5499 at 5 ("Respondents flip the doctrine on its head to argue that only they merit payment, not *Havlish* counsel").  Attorneys who performed work for the common benefit of all plaintiffs, including the *Havlish* counsel, are entitled to seek disbursements from the fund based on their relative investments.

[3] Committees in complex MDL proceedings perform a range of work that is critical to courts' management of MDL cases, which do not "bring money" into the case.  To name a few, these include the negotiation and drafting of case management orders and protocols, the development of procedures to integrate new cases into large MDLs and to harmonize pleadings among the cases, the negotiation of scheduling issues and agendas for conferences, the drafting of status reports for the Court, etc.  Committee members are of course entitled to compensation for such tasks.

benefit from the work of the committee members.  The suggestion that an Iran-specific common benefit fund is necessary to prevent the unjust enrichment of the committee members who were simultaneously undertaking enormous case management responsibilities and pursuing a broad spectrum of broadly overlapping claims against multiple defendants is simply illogical.  The other common benefit work had to be and was in fact done.

The *Havlish* counsel cherry-pick excerpts from the Duke Law Center's "Standards and Best Practices For Large and Mass-Tort MDLs" to serve their own purposes, without regard to the broader context or implications of the recommendations.  ECF No. 5499 at 5.  For example, the *Havlish* counsel cite to the publication as stating that "some attorneys will devote themselves entirely to the case from the outset, . . . while others . . . will benefit from the work done by other counsel," and imply that it is the *Havlish* counsel who devoted themselves "entirely to the case" while the committee members merely received the benefit.  In fact, the language that the *Havlish* counsel omitted by the ellipses draws a distinction between "those who are appointed to the steering committee or as liaison counsel" (the attorneys who devote themselves to the case and "'front' the bulk of the costs and expenses of the litigation"), and "those whose clients file cases well after commencement of the litigation" (the attorneys who are unjustly enriched).  The *Havlish* counsel also use ellipses to omit language recognizing the common benefit is intended to compensate attorneys for work performed for the benefit of all plaintiffs, and *also costs borne* in pursuing those efforts.  The parallels drawn by the *Havlish* counsel are disingenuous, and should not form the basis for the fund structure in this litigation.

Additionally, there can be no valid claim that the work of the committee members has not yielded any benefit to the plaintiffs in the MDL.  The plaintiffs in the MDL are using the litigation system to pursue a variety of goals aimed broadly at targeting parties implicated in advancing al Qaeda's agenda.  Their interests in accountability, publicity, and deterrence are not resolved simply

6

through the receipt of payments funneled through a federally-established fund.[4]  The parties could not have anticipated, at the outset of this litigation, which of the claims against the defendants would result in a financial recovery.  All of the claims had to be pursued, in order to validate as many potential paths to a financial recovery and other forms of justice as possible.  The committee members assumed and fulfilled those burdens.

To this point, the default judgment against Iran and the work performed by the *Havlish* counsel represent only one piece of the litigation efforts undertaken on behalf of the plaintiffs. The expansion and extension of the USVSSTF ensures that there are ample resources available to justify the creation of the common benefit fund to compensate the *Havlish* counsel and the committee members for their contributions to and investments in the litigation.  The availability of these funds directly contradicts the *Havlish* counsel's claim that the committee members' work has not yielded a recovery.  ECF No. 5499 at 9.  By suggesting that the financial risks are analogous to those undertaken in an ordinary contingency-based matter, the *Havlish* counsel ignore the nature of the MDL, the committee structure instituted by the Court, and the critical case management responsibilities the committee members performed on behalf of all plaintiffs.

The *Havlish* counsel do not contest that the Court required the committee members to undertake case management responsibilities or that such work was critical to the efficient management of the MDL.  The *Havlish* counsel instead draw an artificial divide between the proceedings and posit that any common benefit fund should operate independently as to the Iran claims and the Saudi Arabia claims.  ECF No. 5499 at 8-9.  Yet there is no "Iran case in the MDL" and "Saudi case in the MDL," nor are there "two sides of this MDL;" this is no more than a

---

[4] The litigation has produced numerous default judgments, and a number of defendants implicated in supporting al Qaeda have been driven to dissolution, at least in part due to the committee's litigation efforts.  Others resolved the claims against them in exchange for providing evidence and cooperation to plaintiffs.  These are all benefits and key aims of the litigation.

construct fabricated by the *Havlish* counsel.[5]  The JPMDL established a single proceeding, which is governed by case management orders that contemplate that a single Plaintiffs' General Steering Committee, operating through two Plaintiffs' Executive Committees, would guide the litigation as a whole, in furtherance of the Court's interest in managing a coordinated approach for pretrial proceedings involving common legal and factual issues on behalf of all plaintiffs.

From the beginning of the litigation, the Court recognized that the work necessary to represent the interests of the plaintiffs required simultaneous efforts on claims against hundreds of defendants, in addition to Iran and the Kingdom of Saudi Arabia, and directed the parties to coordinate to "promote the orderly and efficient conduct of this litigation."  *See* CMO #3, ECF No. 248.  The monetary recovery that is now available for the Iran judgments flows from the MDL.  The establishment of a common benefit fund for the benefit of committee members is consistent with and vital to the principles underlying the Court's managerial authority.

## C.  Common Benefit Fund Disbursements Should Correlate to the Committee Members' Relative Contributions to and Investments in the MDL

Because the common benefit fund should operate to compensate committee members for their relative investments in the MDL as a whole, it is appropriate for the Court to evaluate applications based on expenses borne and the time spent to pursue claims on behalf of all plaintiffs. The *Federal* plaintiffs do not contest the relevance of a committee member's contribution to the favorable outcome.  However, to the extent that the Court would require a finding of liability or a settlement before considering an application, the *Federal* plaintiffs submit that this determination is erroneous and contrary to law.  ECF No. 5180 at 12, n. 5.

---

[5] Perhaps due to their lack of involvement in the MDL as a whole, the *Havlish* counsel ignore that there are claims against numerous non-Saudi and non-Iranian defendants, including the Republic of Sudan, a number of Sudanese banks and business interests, an Emirati bank, several U.S. based entities, and many others.

The purpose of the common benefit fund is to compensate committee members for the time, efforts, and money expended to fulfill the case management responsibilities and prosecute common claims, in proportion to the burden that the committee members assumed.  In the context of complex MDL proceedings, a fact-based analysis is required to properly evaluate the relative contributions and investments.[6]  The need for a methodological approach under clear parameters, as proposed by the *Federal* plaintiffs, is even more apparent given the scale of this litigation and the competing interests made obvious by the briefing submitted.

The *Havlish* counsel seek to sidestep the criteria traditionally used to determine the extent and allocation of common benefit funds, arguing instead for an award based on a percentage share of the other attorneys' USVSSTF recoveries.  This approach overstates the impact of the *Havlish* counsel's efforts in a non-adversarial default proceeding and largely undermines the significant and meaningful contributions of the other committee members.  Given the scope of the MDL proceedings, the efforts required to obtain a recovery against Iran and against the Kingdom of Saudi Arabia (or other defendants) cannot be viewed in isolation.

For example, as justification for *Havlish* counsel's attempt to claim the exclusive benefit of the common benefit fund, they direct the Court's attention to the "tidal wave of new plaintiffs [that] are rolling into this MDL" and seeking judgments against Iran.  ECF 5499 at 12.  The history of the litigation, however, reflects that the efforts undertaken by other committee members resulting in the enactment of the Justice Against Sponsors of Terrorism Act ("JASTA") (and related media coverage elevating awareness of the litigation) principally prompted thousands of additional plaintiffs to join the litigation.  Likewise, the recoveries that numerous counsel have collected, and will continue to collect, from the USVSSTF result, in large part, from the leveraging of attorney-client relationships

---

[6] The large degree of finger-pointing presented in the briefs submitted by counsel relating to the common benefit fund underscore the necessity for a fact-based analysis, and counsel in favor of the involvement of a special master.

that were established over fifteen years of contentious litigation, and which exist because of the pursuit of non-Iran claims.

That the *Havlish* counsel's efforts are now linked to a recovery does not entitle them to a common benefit fee to the exclusion of the other committee members that contributed to the litigation efforts. The issues before the Court also are not furthered by the *Havlish* counsel's attempts to engage in some sort of contest as to which attorneys incurred more risk and personal sacrifice through their involvement in international litigation against state sponsors of terrorism.

The *Havlish* counsel contend that a delay is unwarranted and that the time is ripe for the Court to decide the amount payable to the *Havlish* counsel for their contributions to the litigation efforts. The *Federal* plaintiffs agree. The *Federal* plaintiffs' proposal contemplates the appointment of a special master to determine the most equitable approach for directing monies into the common benefit fund from the USVSSTF recoveries (and other sources of funding, when they become available) and to allocate that fund among committee members pursuant to a framework designed to evaluate the relative contributions of the committee members.

III.   **CONCLUSION**

A common benefit fund is intended to compensate the committee members for their work and investments in the MDL as a whole; its purpose is not to bestow a windfall on attorneys who undertake efforts more likely to lead to quantifiable results, or who are otherwise able to identify a direct correlation between their efforts and particular recoveries. Accordingly, the *Federal* plaintiffs respectfully request that the Court reconsider or clarify its September 30, 2019 Opinion and Order and endorse a protocol for the operation of the common benefit that is consistent with the governing law and equitable considerations set forth above.

January 31, 2020

Respectfully submitted,


COZEN O'CONNOR

By:  _/s/   Sean P. Carter_
Sean P. Carter, Esq.
Stephen A. Cozen, Esq.
J. Scott Tarbutton, Esq.
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel: (215) 665-2000

*Attorneys for the Federal Plaintiffs*

11

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of The *Federal* Plaintiffs' Memorandum of Law in Further Support of Their Proposal Concerning the Establishment and Allocation of the Common Benefit Fund and For Reconsideration of the Court's September 30, 2019 Common Benefit Fund Decision, or, in the Alternative, in Further Support of Objections to the Court's September 30, 2019 Opinion and Order Pursuant to Fed. R. Civ. P. 72, was filed electronically this 31st day of January 2020. Notice of this filing will be sent to all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system.  Parties may access this filing through the Court's ECF system.

 */s/  J. Scott Tarbutton*
J. Scott Tarbutton

LEGAL\44632359\1