**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN)<br>ECF Case |
| This document relates to:<br>*Thomas Burnett, Sr., et al. v. The Islamic Republic of Iran, et al.* | 15-cv-9903 (GBD)(SN)<br>ECF Case |

**MEMORANDUM OF LAW FOR ENTRY OF PARTIAL**
**FINAL DEFAULT JUDGMENTS ON BEHALF OF**
***BURNETT/IRAN* PERSONAL-INJURY PLAINTIFFS**

**(*BURNETT / IRAN* PERSONAL INJURY 4)**

For the reasons set forth below and in the accompanying declaration of John M. Eubanks ("Eubanks Declaration"), the Plaintiffs identified in Exhibit A to the Eubanks Declaration filed contemporaneously with this application, by and through their counsel, Motley Rice LLC, respectfully move this Court for an Order awarding them (1) compensatory damages for pain and suffering in amounts commensurate with the injuries these individuals sustained during the Terrorist Attacks on September 11, 2001 and in accordance with prior precedent in the U.S. District Court for the District of Columbia in similar cases factoring in an upward departure on damages values based on the indelible impact of the Terrorist Attacks of September 11, 2001; (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; and (3) leave for the *Burnett*/*Iran* Personal-Injury plaintiffs identified in Exhibit A to seek punitive damages, economic damages, or other damages at a later date; and (4) for all other *Burnett/Iran* Personal-Injury Plaintiffs not appearing on Exhibit A, to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed. In this case, the assessment of personal-injury damages is a matter of first impression as there have been no judgments entered to date that have

addressed the award of damages to individuals who were physically injured in the Terrorist Attacks on September 11, 2001 but survived to pursue damages against the Defendants.

Plaintiffs sued The Islamic Republic of Iran, the Islamic Revolutionary Guard Corps, and the Central Bank of the Islamic Republic of Iran (collectively, "the Iran Defendants") in connection with the 9/11 Attacks. On December 1, 2016, all plaintiffs in the action *Thomas Burnett, Sr., et al. v. The Islamic Republic of Iran*, et al., Case No. 15-cv-9903 (GBD)(SN) ("*Burnett/Iran*"), moved for judgment as to liability only. 15-cv-9903 ECF Nos. 65, 66, amended on December 6, 2016, 15-cv-9903 ECF Nos. 68, 69. On January 31, 2017, the Court granted plaintiffs' application for judgment as to liability only. 15-cv-9903 ECF No. 85. The plaintiffs that are party to this application, as identified in Exhibit A, are a subset of the plaintiffs who have been granted judgment as to liability only, and rely on that judgment as to liability only for their request for damages arising from the personal injuries they sustained in the Terrorist Attacks on September 11, 2001. The plaintiffs identified in Exhibit A now request entry of partial final default judgment against the Iran Defendants as to their claims.

## I.     Procedural Background

### A.     Related Cases

Relying on evidence and arguments[1] submitted by plaintiffs in *In re Terrorist Attacks on September 11, 2001*, the consolidated multidistrict litigation arising out of the 9/11 Attacks, this Court on December 22, 2011, and again on August 31, 2015, granted Orders of Judgment on Liability in favor of the *Havlish, Ashton, O'Neill, Federal Insurance*, and *Hoglan* groups of

---

[1] In each of the Orders of Judgment regarding plaintiffs' claims against Iran in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, the Court premised its determination "[u]pon consideration of the evidence submitted by the Plaintiffs in filings with this Court on May 19, 2011, July 13, 2011, and August 19, 2011, and the evidence presented at the December 15, 2011, hearing on liability, together with the entire record in this case." ECF Nos. 2516, 3014, 3016, 3020-22; *see also* ECF No. 3023 (substantially similar language).

plaintiffs against the Iran Defendants (*See* ECF Nos. 2516, 3014, 3016, 3020, 3020-23). After granting the *Havlish* Order of Default Judgment on Liability, this Court considered the issue of damages suffered by the *Havlish* plaintiffs and their decedents. Upon the submissions of the *Havlish* plaintiffs, on October 3, 2012, this Court found, among other things, that "Plaintiffs may recover for[, inter alia,] solatium . . . in an action under Section 1605A. 28 U.S.C. § 1605A(c)(4). In such an action, . . . family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." ECF No. 2623 at 2-3, quoting *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010).  This Court also found that the following solatium awards for family members are appropriate, as an upward departure from the framework in *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006).

| Relationship of Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

ECF No. 2623 at 4.  The Court has applied the same solatium values to claims of other solatium plaintiffs in the *Burnett/Iran* case (ECF No. 3666) and other solatium plaintiffs in other cases coordinated in the *In re Terrorist Attack on September 11, 2001* multidistrict litigation. *See, e.g.,* ECF Nos. 3175 at 2; 3300 at 1; 3358 at 9; 3363 at 16; 3399; and 3977 at 7.

In that same decision in *Havlish,* this Court also found that Plaintiffs are entitled to punitive damages under the FSIA in an amount of 3.44 multiplied by their compensatory damages award. ECF No. 2623 at 5.  The Court has applied that 3.44 multiplier also to judgments in the *Ashton* case. *See* ECF No. 3175, at 3 (Report and Recommendation to apply 3.44 punitive multiplier); ECF No. 3229 at 1 (Order adopting in its entirety Report and Recommendation to apply 3.44 punitive multiplier).  The Court applied the 3.44 punitive multiplier to the compensatory awards

previously awarded in *Burnett/Iran*. ECF No. 3666. However, in *Hoglan*, another case in this multidistrict litigation, Magistrate Judge Netburn recommended that the plaintiffs' request for punitive damages be denied without prejudice. ECF Nos. 3358 at 11-16 and 3363 at 28. Judge Daniels adopted Judge Netburn's Reports and Recommendations in their entirety. ECF Nos. 3383 at 2 and 3384 at 6.

In the *Havlish* decision, this Court also found that prejudgment interest was warranted for the Plaintiffs' solatium damages. ECF No. 2623 at 5. The *Havlish* plaintiffs sought application of a 4.96% interest rate, which the magistrate judge recommended (ECF No. 2619 at 13-14) and Judge Daniels adopted (ECF No. 2623 at 5). In *Ashton*, plaintiffs sought, and the magistrate judge recommended, application of a statutory nine percent simple interest rate for prejudgment interest. ECF No. 3175 at 7-8. Judge Daniels adopted the magistrate judge's report and recommendation and has applied the nine percent interest rate in multiple instances in the *Ashton* and *Bauer* matters. *See* ECF Nos. 3229 at 2; 3300 at 1; 3341 at 1. However, in *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent rate for prejudgment interest should be applied to all of the solatium claims. ECF Nos. 3358 at 17-20 and 3363 at 28-29. Judge Daniels adopted Judge Netburn's *Hoglan* Report in its entirety and applied an interest rate of 4.96 percent per annum, compounded annually. ECF Nos. 3383 at 2 and 3384 at 6. The Court applied that interest rate, 4.96 percent per annum, to the awards to other plaintiffs in *Burnett/Iran*. *See, e.g.,* ECF No. 3666.

**B.**     ***Burnett, et al. v. Iran* Defendants**

The *Burnett/Iran* plaintiffs filed suit on December 18, 2015, against the Iran Defendants. Service on the Central Bank was effectuated on March 18, 2016, and on Iran and the IRGC on September 14, 2016. 15-cv-9903, ECF No. 67 at ¶¶ 3-4.  At Plaintiffs' request, the Clerk of the Court issued a Certificate of Default as to the Iran Defendants on December 5, 2016. 15-cv-9903, ECF No. 67.  On December 1, 2016, Plaintiffs requested judgment as to liability against the Iran Defendants, 15-cv-9903 ECF Nos. 65, 66, which application was amended on December 6, 2016 (15-cv-9903, ECF Nos. 68, 69), after the Clerk of the Court issued a Certificate of Default on December 5, 2016. ECF No. 67.  The Court granted judgment as to liability against the Iran defendants in favor of all plaintiffs on January 31, 2017.  15-cv-9903, ECF No. 85.  On July 31, 2017, June 8, 2018, August 28, 2018, September 13, 2018, September 4, 2018, September 3, 2019, September 6, 2019, September 11, 2019, and December 13, 2019 (ECF Nos. 3666, 4023, 4126, 4175, 4146, 5061, 5062, 5087, 5138, and 5356), the Court granted orders of judgement to different subsets of *Burnett/Iran* plaintiffs who filed for entry of partial final default judgments.

The *Burnett/Iran* plaintiffs identified in Exhibit A now respectfully request that this Court grant them an Order awarding them (1) compensatory damages for pain and suffering in amounts commensurate with the injuries these individuals sustained during the Terrorist Attacks on September 11, 2001 and in accordance with prior precedent in the U.S. District Court for the District of Columbia in similar cases factoring in an upward departure on damages values based on the indelible impact of the Terrorist Attacks of September 11, 2001; (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; and (3) leave for the *Burnett*/*Iran* Personal-Injury plaintiffs identified in Exhibit A to seek punitive damages, economic damages, or other damages at a later

5

date; and (4) for all other *Burnett/Iran* Personal-Injury Plaintiffs not appearing on Exhibit A, to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

## II. Damages Under § 1605A

Section 1605A of the Foreign Sovereign Immunities Act (FSIA) creates an exception to sovereign immunity allowing a foreign state to be held accountable for acts of terrorism or the provision of material support or resources for acts of terrorism where the acts or provision of support or resources were engaged in by an official, employee, or agent of the foreign state while acting within the scope of his or her office, employment, or agency. 28 U.S.C. § 1605A(a)(1). The statute specifies that damages are available "for personal injury or death," 28 U.S.C. § 1605A(a)(1) and (c)(4), and include "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c)(4).

### A. Personal-Injury Damages

The plaintiffs identified in Exhibit A include individuals who were either on site at the time of the terrorist attacks in New York, New York (at the World Trade Center complex or surrounding area); Arlington, Virginia (in or around the Pentagon); or Shanksville, Pennsylvania (where United Flight 93 crashed), or who were among those who entered the premises in the vicinity of the World Trade Center or the Pentagon and were injured on September 11, 2001 by subsequent damage resulting from the attacks. The range of injuries of individuals who were injured on September 11, 2001 range from pulmonary issues resulting from smoke inhalation to broken bones to significant burn injuries to limb amputations. One non-physical injury that accompanies the vast majority of these physical injuries is the onset of post-traumatic stress disorder for most of the individuals who were caught in the melee of the attacks on September 11, 2001. Under the FSIA,

these injuries are all compensable, and given that these injuries occurred either as a direct result of the attacks, the ensuing chaos from the attacks in the immediate aftermath, or as a result of first responders attempting to assist the injured or endangered to flee from the scene, the proximate causation of these injuries cannot truly be in question.

This Court has previously looked to precedent in the U.S. District Courts for the District of Columbia for guidance in addressing damages resulting from claims arising pursuant to 28 U.S.C. § 1605A. Well-established caselaw exists in the D.C. District Court regarding the measurement of pain and suffering damages in personal-injury cases such as this one. In *Cohen v. The Islamic Republic of Iran*, 268 F. Supp. 3d 19 (D.D.C. 2017), the court acknowledged that it had "adopted a general procedure for the calculation of damages that begins with the baseline assumption that persons suffering substantial injuries in terrorist attacks are entitled to $5 million in compensatory damages." 268 F. Supp. 3d at 24; *see also Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24 (D.D.C. 2012); *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25 (D.D.C. 2007).

This "baseline" figure for personal-injury damages may also be adjusted based on the "nature of the injury, the pain associated with it, the duration of the hospitalization, and the degree and length of impairment." *Peterson*, 515 F. Supp. 2d at 52. Less severe injuries to the plaintiff may show it is appropriate to move the award downward in the range of $2 million to $3 million whereas a more permanent injury or impairment may justify a larger award between $7 million and $12 million. *See Cohen*, 268 F. Supp. 3d at 24 (citing *Wultz*, 864 F. Supp.2d at 38). In the latter situation, the upward adjustment has been found appropriate "in more severe instance of physical and psychological pain, such as where victims suffered relatively more numerous and severe injuries, were rendered quadriplegic, partially lost vision and hearing, or were mistaken for

dead." *See Barry v. Islamic Republic of Iran*, 2019 U.S. Dist. LEXIS 150491, at *29 (D.D.C. Sept. 4, 2019) (quoting *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 84 (D.D.C. 2010)). The downward departure "has been found appropriate where victims suffered relatively more minor injuries, such as 'minor shrapnel injuries,'… or 'severe emotional injury accompanied by relatively minor physical injuries.'" *Id.* (quoting *Valore* and *Estate of Doe v. Islamic Republic of Iran*, 943 F. Supp. 2d 180, 186 (D.D.C. 2013)).

### B. Upward Departure for Damages Resulting from the Terrorist Attacks on September 11, 2001

Whereas the D.C. District Court has established certain parameters for addressing damages for personal-injury claims under the FSIA, this Court has previously addressed the nature of the Terrorist Attacks on September 11, 2001 and the indelible mark they have left on this country and more specifically on the victims. Many of the personal-injury victims whose claims are being submitted to the Court in these proceedings continue to live in close proximity to the areas where they sustained their injuries, and for those in New York, the reminder of the attacks is inescapable—annual commemorations of the lost on September 11, 2001 at Ground Zero, the illumination of the skyline with two beams of light representing the Twin Towers during the same time period each year, and simply watching the building of the Freedom Tower on the site of the two fallen towers. Furthermore, these attacks are ingrained in the consciousness of the American public. The attacks are taught in American schools, and the popular-culture references can evoke triggers in many of these victims who suffer from some level of either post-traumatic stress disorder or other emotional distress as a result of their involvement as victims of the attacks.

As Magistrate Judge Maas first held in 2012—based in part on the "profound agony and grief" resulting from the attacks and the "frequent reminders of the events of that day"— "[c]onsidering the extraordinarily tragic circumstances surrounding the September 11th attacks,

and their indelible impact on the lives of the victims' families, I find that it is appropriate to grant the upward departures from the [D.C. District Court] framework that the Individual Plaintiffs have collectively requested." *Havlish v. bin Laden*, 2012 U.S. Dist. LEXIS 110673, at *105 (S.D.N.Y. July 30, 2012) (adopted by Judge Daniels at *Havlish v. bin Laden*, 2012 U.S. Dist. LEXIS 143525, at *80-*82 (S.D.N.Y. Oct. 3, 2012)). While Judge Maas' decision—adopted by Judge Daniels—applied to solatium damages for family members of individuals who were killed on September 11, 2001, the logic equally applies to individuals who were present and physically injured in the attacks on September 11, 2001 and continue to experience the same reminders in their everyday life that would impact these other family members. In fact, it is arguable that the impact would be more severe for someone who was physically present and whose life was endangered by the attacks.

For the solatium damages, the upward departure adopted by this Court constituted an upward increase of 56.25% for spouses (from $8 million to $12.5 million); 70% for parents and children (from $5 million to $8.5 million); and 70% for siblings (from $2.5 million to $4.25 million). A similar upward departure should be adopted by this Court for personal-injury claimants who sustained physical injury as a direct result of the Terrorist Attacks on September 11, 2001. Individuals who were in harm's way on September 11, 2001 as a result of the terrorist attacks and sustained physical injury while experiencing a true fear for their lives in addition to the physical injuries they sustained while also experiencing what can only be described as a battle scenario with death all around them should have the $5 million baseline award increased in accordance with the increase to parent and children solatium awards for wrongful death to $8.5 million as the baseline for personal-injury claims arising on the day of September 11, 2001. Furthermore, more severe injuries with severe or permanent impairment should be granted an upward departure in the range of $12 million to $20 million. Finally, any downward departure should be in the range of $2.5

million to $5 million for those claims where the physical injuries are less severe but rather accompanied by severe emotional damages. As the D.C. District Court decisions have stated, "[t]he award of damages for physical injuries 'assume[s] severe psychological injuries." *Barry*, 2019 U.S. Dist. LEXIS 150491, at *29.

### C. Punitive Damages

Under the FSIA, plaintiffs are also entitled to punitive damages. *See* 28 U.S.C. §1605A(c)(4). In the *Havlish* Report and Recommendation on Damages, the magistrate judge explained that a "3.44 ratio 'has been established as the standard ratio applicable to cases arising out of' terrorist attacks." (ECF No. ECF 2619, at 13, citing *Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.C. 2011)). This Court adopted that recommendation and awarded punitive damages on each compensatory damages category at a ratio of 3.44 (punitive) to 1 (compensatory) (ECF No. 2623). The Court has applied that ratio to awards for plaintiffs in other related cases. *See, e.g.*, ECF No. 3175, at 3 (Magistrate Judge Maas Report and Recommendation to apply 3.44 punitive multiplier); ECF No. 3229, at 1 (Judge Daniels adopting in its entirety Judge Maas's Report and Recommendation to apply 3.44 multiplier); ECF No. 3300, at 1 and Exhibit A (Judge Daniels applying 3.44 punitive multiplier to claims in *Ashton*).

However, in *Hoglan*, another case in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, Magistrate Judge Netburn recommended that the plaintiffs' request for punitive damages be denied without prejudice. ECF No. 3363, at 28. Judge Daniels adopted Judge Netburn's Report in its entirety, denying without prejudice the plaintiffs' request for punitive damages. ECF No. 3384, at 6.

In light of the Court's decision in related litigation to defer determination of punitive damage issues until a later stage of the litigation, Plaintiffs herein request leave to address the issue

10

of punitive damages at a later date. *See, e.g.*, ECF No. 3666 (Judge Daniels order in *Burnett/Iran*, authorizing other plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

### D.     Prejudgment Interest

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism. *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011). This Court awarded the *Havlish* plaintiffs prejudgment interest at a rate of 4.96% on their pain and suffering damages awards, to be calculated from September 11, 2001 until the date of judgment (ECF 2619 at 13-14). This Court, recognizing that prejudgment interest was appropriate in cases such as this case, adopted the magistrate judge's reasoning, finding that an award of prejudgment interest was appropriate and accepting the rate of 4.96%, as proposed by the *Havlish* plaintiffs' expert.

After the *Havlish* award, plaintiffs in *Ashton* and *Bauer* proposed, and the Court agreed, that prejudgment simple interest at the New York State statutory rate of nine percent per annum was appropriate in cases where the injuries arose in New York and the prejudgment interest used in *Havlish*, 4.96 percent per annum, compounded annually, should be reserved for only those cases where the injuries arose in other states. *See* ECF Nos. 3229 at 2; 3300 at 1; 3341 at 1.

The Second Circuit has held that New York State's statutory prejudgment interest rate should apply to the damages awarded to World Trade Center complex leaseholders in their litigation against American Airlines and United Airlines brought under the federal Air Transportation Safety and System Stabilization Act ("ATSSSA"). *World Trade Farmers Market, Inc. v. American Airlines, Inc.* (*In Re: September 11th Litigation*), 2015 U.S. App. LEXIS 16619,

\*66 (2d Cir. Sept. 17, 2015). In that case, the Second Circuit concluded that a federal cause of action under the ATSSSA must look to state rules concerning prejudgment interest. *Id*. Accordingly, the Second Circuit held that New York's statutory prejudgment interest rate of nine percent as opposed to a lower rate crafted under federal law, had to be applied to the plaintiffs' 9/11 claims. *Id*.

However, more recently, in *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent interest rate for prejudgment interest should be applied to all of the solatium claims. ECF No. 3363 at 28-29. Judge Daniels adopted Judge Netburn's *Hoglan* Report in its entirety and applied the interest rate of 4.96 percent per annum, compounded annually to all of the claims. ECF No. 3384 at 6.

In light of the Court's decision in the *Hoglan* matter, applying the 4.96 percent rate to prejudgment interest, the *Burnett/Iran* Plaintiffs identified in Exhibit A respectfully request that the clerk be directed to award prejudgment interest at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001 until the date of the judgment.

### III. Individualized Case Assessments

In an effort to provide the Court with a cross-section of the types of claims that they intend to submit in advance of the Court's February 3, 2020 deadline, Plaintiffs have attempted to identify the category for the Court for each of these injury plaintiffs in accord with the letter submitted to the Court on January 10, 2020. *See* ECF No. 5484. While Plaintiffs' motion addresses claims in multiple categories, by narrowing down the categories in which these claims arise, Plaintiffs are attempting to assist the Court in addressing these claims in an efficient manner.

    **A.**     **Jonathan Becker**
           **Injury Category:[2] Impact Injuries**
           **Severity: Significant/Severe**

Jonathan Becker was employed by Quint Amasis, LLC on the 47th Floor of One World Trade Center when the terrorist attacks took place on September 11, 2001. *See* Eubanks Dec., Ex. B, Dec. of Jonathan Becker at ¶4. When the first plane struck the North Tower where Mr. Becker was working, it jolted the building which caused Mr. Becker to fall and injure his elbows, neck and jaw. *Id.* at ¶6. His physicians have determined that his experiences on September 11, 2001 on the 47th Floor of One World Trade Center resulted in cervical spine issues including disc protrusion at C3 to C4, central herniation at C4 to C5 with mild cord compression, left paramedian disc herniation at C5 to C6 with mild hemicord compression, a bulging disc at C6 to C7 and reversal of the cervical lordosis centered at C4 to C5. *Id.* at Ex. B. He has attempted numerous forms of therapy and treatment to relieve the pain and radiculopathy emanating from these cervical injuries; however, his physicians have determined him to be permanently partially disabled as a result of the cervical pain. *Id.* at ¶¶8-9. Mr. Becker also suffers from post-traumatic stress disorder in addition to anxiety and bouts of depression as a result of the attacks of September 11, 2001. *Id.* at ¶10. Based on the injuries he sustained and the emotional trauma that continues to impact him, Plaintiffs submit that Mr. Becker should be granted the baseline damages judgment as determined by the Court.

---

[2] The categories cited are those categories set forth in the January 10, 2020 letter submitted by the Plaintiffs' Executive Committee for Personal Injury and Death Claims. *See* ECF No. 5484 at 13-14.

    **B.**    **David Allen Bridgeforth[3]**
          **Injury Category: Impact/Building Collapse Injuries**
          **Severity: Severe**

David Allen Bridgeforth was employed by the Port Authority of New York and New Jersey and was working in the cafeteria on the 43rd floor of the North Tower at the time of the attacks on September 11, 2001. *See* Eubanks Dec., Ex. C, Dec. of Carmen Bridgeforth as the Personal Representative of the Estate of David Allen Bridgeforth at ¶5. When the plane struck the North Tower, the impact caused the grill in the kitchen where David was working to dislodge, and the grill fell on top of Mr. Bridgeforth causing him to sustain crushing and burn injuries while he also struck his head on the counter behind him. *Id.* at ¶6, Ex. B. After freeing himself, he found his wife and son, and they began the descent down to the lobby level despite fighting flames at various egresses. *Id.* at ¶¶6-7. Soon after exiting the North Tower, the South Tower began to collapse, and Mr. Bridgeforth was bombarded by the collapse and the resultant cloud of dust and debris from the skyscraper collapsing. *Id.* at ¶8. Mr. Bridgeforth sustained injuries to his knee, leg, arm, and back in addition to third-degree burns on both legs. *Id.* at ¶10. He also inhaled harmful fumes, debris and dust in the collapse of the building. *Id.* His injuries included the third-degree burns, post-concussion syndrome with cognitive dysfunction, cervicodorsal derangement with traumatic myofascitis, cervical radiculopathy, lumbosacral derangement with traumatic myofascitis, lumbar radiculopathy, right shoulder sprain, right knee derangement with probable torn meniscus in addition to emotional injuries including post-traumatic stress disorder and adjustment reaction with depression and anxiety. *Id.* at Ex. B. He subsequently died of congestive heart failure at the age of 49 on November 30, 2011. *Id.* at ¶¶2, 12. Given the significant injuries he suffered to his head

---

[3] Mr. Bridgeforth's wife, Carmen Bridgeforth, is asserting claims on behalf of the Estate of David Allen Bridgeforth as the designated Administrator of his estate as he passed away in November 2011.

and back and his other orthopedic and psychological injuries, Plaintiffs submit that Mr. Bridgeforth's estate should be granted the baseline damages judgment as determined by the Court.

    **C.    Joseph Falco**
           **Injury Category: Building Collapse Injuries**
           **Severity: Severe**

Mr. Falco was the chauffeur of Engine 1 for the New York City Fire Department, and his engine arrived on scene not long prior to the collapse of the South Tower. *See* Eubanks Dec., Ex. D, Dec. of Joseph Falco at ¶4. The force of the collapse crushed Mr. Falco and blew him across West Street and then into and over a center divider on West Side Highway. *Id.* at ¶5. He was located by other firefighters, but then the North Tower collapsed as they were continuing to attempt to escape to a boat to reach New Jersey. *Id.* Mr. Falco sustained a badly bruised head, asbestos and contamination inhalation, shoulder injuries, fractured vertebrae in his back, a large hematoma on his left calf, a fracture of his left patella, laceration to his lower left leg under his patella requiring sutures, a torn anterior cruciate ligament and medial meniscus in both knees, sprained medial collateral ligament, and a posterior cruciate ligament injury with an avulsion fracture to his left knee. *Id.* at ¶6. The injuries he sustained required surgery to repair his knees and then subsequent knee-replacement surgeries with attendant physical therapy. *Id.* at ¶7. His physicians anticipate he will need shoulder replacement surgery due to osteoarthritic changes in his left shoulder, and he receives epidural steroid injections to control spine injuries which will likely require spine surgery in the future. *Id.* He was deemed to be totally disabled, and he was forced to retire from his job with the New York City Fire Department. *Id*. at ¶8. He has also endured serious emotional distress as a result of what he endured on September 11, 2001. *Id.* at ¶9. Based on the loss of his job and his continuing pain and multiple surgeries coupled with the

accompanying emotional distress, Plaintiffs submit that Mr. Falco should be granted an upward adjustment to the baseline damages judgment as determined by the Court.

**IV.    Conclusion**

For all of the reasons herein, as well as those set forth in the submissions of the other plaintiffs in this case and plaintiffs in the other 9/11 related cases in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, the *Burnett/Iran* plaintiffs identified in Exhibit A respectfully request that this Court award them (1) compensatory damages for pain and suffering in amounts commensurate with the injuries these individuals sustained during the Terrorist Attacks on September 11, 2001 and in accordance with prior precedent in the U.S. District Court for the District of Columbia in similar cases factoring in an upward departure on damages values based on the indelible impact of the Terrorist Attacks of September 11, 2001; (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; and (3) leave for the *Burnett*/*Iran* Personal-Injury plaintiffs identified in Exhibit A to seek punitive damages, economic damages, or other damages at a later date; and (4) for all other *Burnett/Iran* Personal-Injury Plaintiffs not appearing on Exhibit A, to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Dated: February 3, 2020								Respectfully submitted,

											/s/  John M. Eubanks
											John M. Eubanks, Esq.
											Robert T. Haefele, Esq.
											MOTLEY RICE LLC
											28 Bridgeside Blvd.
											Mount Pleasant, SC 29464
											Tel: 843-216-9000
											Fax: 843-216-9450
											Email: jeubanks@motleyrice.com
											Email: rhaefele@motleyrice.com

											Attorneys for the *Burnett/Iran* Plaintiffs