UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

    **TERRORIST ATTACKS ON**                    03-MD-01570 (GBD)(SN)
    **SEPTEMBER 11, 2001**

                                                  **REPORT AND
RECOMMENDATION**

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:

    Thomas Burnett, Sr., et al. v. The Islamic Republic of Iran, et al., No. 15-CV-9903 (GBD)(SN)

On January 31, 2017, the Honorable George B. Daniels granted the Burnett Plaintiffs an Order of Judgment by default against the Islamic Republic of Iran. See Order of Judgment, ECF No. 3443. Since then, the Court has issued numerous orders addressing the Burnett Plaintiffs' requests for damages. Before the Court is a motion brought by 21 personal injury plaintiffs injured in the terrorist attacks on September 11, 2001. ECF No. 5760. Plaintiffs' motion should be GRANTED.

## DISCUSSION

This Court assumes the parties' familiarity with the extensive rulings related to this multi-district litigation. As relevant here, on February 7, 2020, the Court issued a Report and Recommendation that detailed an objective framework to evaluate the proper amount of pain and suffering damages for 9/11 personal injury victims. ECF No. 5879 ("Burnett I"). This motion asks the Court to award compensatory damages for pain and suffering in amounts commensurate with the injuries these plaintiffs sustained during the terrorist attacks on September 11, 2001. In

addition, in keeping with the Court's prior rulings, plaintiffs seek prejudgment interest at the rate of 4.96 percent per annum compounded annually for the period from September 11, 2001, until the date of judgment, permission to seek punitive damages, economic damages, or other damages at a later date, and permission to file applications for all other Burnett Personal Injury Plaintiffs for damages awards in later stages, to the extent such awards have not previously been addressed.

**I.      BURNETT II PERSONAL INJURY PLAINTIFFS**

Consistent with the framework set forth in Burnett I, the Court analyzes each plaintiff's claim for pain and suffering damages individually using the objective criteria set forth therein.

**A.  Yvonne Veronica Abdool**

Yvonne Veronica Abdool was in the South Tower of the World Trade Center during the 9/11 attacks. ECF No. 5762-2, Yvonne Veronica Abdool Decl. ¶ 3. While fleeing the building, Yvonne fell and injured her knee. ¶ 5. Yvonne has had a number of procedures over the years, including arthroscopic surgery on November 30, 2001, a left knee uni-compartmental replacement on August 20, 2003, and multiple stellate ganglion block treatments with varying results. Id. ¶ 9. Yvonne also has suffered, and continues to suffer, severe emotional distress as a result of the attacks and was diagnosed and treated for PTSD. Id. ¶ 9 (numbering error in original). Because her injuries fall into the first category, including significant orthopedic injuries and mental health trauma, the Court recommends that Yvonne Veronica Abdool be awarded $5 million.

**B.  Ingrid Alleyne-Robertson**

Ingrid Alleyne-Robertson was in the South Tower of the World Trade Center during the 9/11 attacks. ECF No. 5762-3, Ingrid Alleyne-Robertson Decl. ¶ 3. After the first plane hit,

Ingrid began exiting the building via the stairwell. Id. ¶ 7. When the second plane hit, Ingrid was thrown across the stairwell onto her back, and as she continued running down the stairs, she fell backwards. Id. Running away from the collapsing towers, Ingrid either ran into or was knocked into a wall. Id. As a result, she sustained L5-S1 disc herniation, bulging disks at L3-L4 and L4-L5, mild narrowing of the L5-S1 disc space, straightening of the normal curvature of the lumbosacral spine, and desiccation of the L4-L5 disc space. Id. ¶ 6. Because of these injuries Ingrid has lower back pain that radiates down her right leg, for which she has received several epidural injections and wears a back brace. Id. She is unable to sit or stand for long periods of time, and sometimes walks with a cane. Id. She was found to be partially disabled, and she still suffers from back pain, PTSD, anxiety, and bouts of depression. Id. ¶ 6, 9.

On the record presented, the Court is not able to conclude with reasonable certainty that Ingrid's ongoing orthopedic pain resulted from the injuries she sustained on 9/11 alone. In her medical records, Ingrid stated in 2002 that she does not recall if she fell down, and she gave contradictory statements about whether she lost consciousness when she fell. ECF No. 5762-3, Ex. B at 64, 101. Additionally, Ingrid had lumbar surgery in 1999, indicating a preexisting lower back condition that may have caused some of the pain described. Id. at 91. As established in Burnett I, the Court also takes into account the fact that Ingrid did not require urgent medical attention and did not seek medical attention until three days after the attack. Alleyne-Robertson Decl. ¶ 10; See Burnett I at 7. Accordingly, under the principles established in Burnett I, the Court recommends that Ingrid Alleyne-Robertson be awarded $5 million.

   C. Frances Berdan

Frances Berdan was in the South Tower of the World Trade Center during the 9/11 attacks. ECF No. 5762-4, Frances Berdan Decl. ¶ 3. Scrambling to leave the building after the

planes hit, Frances lost her footing near her desk and landed with all her weight on her arm, breaking her arm and shoulder. Id. ¶ 5. After escaping from the building and finding a cab to take her home, Frances became delirious from the pain and her daughter and husband took her to the hospital. Id. ¶ 8. She had surgery the next morning, where ten screws and a plate were put into her arm. Id. ¶ 10. The metal remains in her arm to this day. Id. She was in the hospital for nine days, in part because she developed pneumonia. Id. Frances was out of work for seven months due to the injury and is still affected by it because it limits her ability to lift everyday things and open windows. Id. Frances has also suffered, and continues to suffer, from emotional distress. Id. ¶ 13. Because these injuries fall into the second category, including falls causing significant injury, multiple broken bones, and mental health trauma, the Court recommends that Francis Berdan be awarded $7 million.

**D. Deborah E. Berk**

Deborah E. Berk was in the North Tower of the World Trade Center during the 9/11 attacks. ECF No. 5762-5, Deborah E. Berk Decl. ¶ 3. During her escape across the street away from the towers, Deborah suffered from a closed head injury with resultant brain injury when she was struck in the back of the head as she was lying on the ground. Id. ¶ 6. She also sustained a broken foot and knee injuries. Id. She continues to experience pain to this day and has difficulty walking due to her foot and knee injuries. Id. She also suffers from PTSD, for which she was treated with in-patient psychiatric care on several occasions and continues to receive treatment including prescription drugs. Id. According to Deborah's medical records, as a result of her closed head injury, she suffered from residual cognitive neurological disability affecting her short-term memory, attention-concentration capability, mental processing speed, executive functioning, learning capacity, and reading capacity. ECF No. 5762-5. Ex. B. at 29. The Court

notes that Deborah has a pre-existing mental health issue, involving a long-standing history of post-traumatic stress disorder. Id. at 25. Because her injuries fall into the second category, including neurological trauma, broken bones, and mental health disorders, the Court recommends that Deborah E. Berk be awarded $7 million.

### E. Michael P. Brodbeck

Michael P. Brodbeck was a firefighter at the World Trade Center during the 9/11 attacks. ECF No. 5762-6, Michael P. Brodbeck Decl. ¶ 3, 4. As he was exiting the North Tower, Michael was hit with a compression wave of dust and debris from the building's collapse, sweeping him off his feet. Id. ¶ 4. Michael was thrown ten feet into the side of a truck, breaking his arm and thumb. As he got up and ran, he fell five feet between a curb and a tire, crushing his right shoulder and dislocating it. Id. Michael was also diagnosed with PTSD, which he continues to be treated for. Id. He retired from the Fire Department of New York due to disability in 2015, and was diagnosed with blood abnormality in 2014. Id. ¶ 5. The PTSD has affected the cognitive parts of his brain, robbing him of his emotional life and costing him his marriage, time with his sons, and his peace of mind. Id. ¶ 6. Because his injuries fall into the second category, including significant injuries from falls including broken bones and mental health disorders, the Court recommends that Michael P. Brodbeck be awarded $7 million.

### F. Boris Bronshteyn

Boris Bronshteyn was at the World Trade Center during the 9/11 attacks. ECF No. 5762-7, Boris Bronshteyn Decl. ¶ 3. As a mechanical engineer working in the basement between the two towers when the planes hit, Boris sustained a broken shoulder. He has suffered from severe and crippling emotional trauma, anxiety, and sleeping issues. Id. ¶¶ 5, 6. Because of his anxiety and depression, Boris seldom leaves his home and continues to have problems talking to anyone.

Id. ¶ 7. Boris's best friend who was working with him on 9/11 died while he was holding his hand. Id. ¶ 8. While the Court recognizes the severe emotional trauma Boris went through, the Court in Burnett I determined that severe emotional trauma, combined with some lasting physical injury, falls in the first category of "significant" injuries. See Burnett I at 6. Accordingly, the Court recommends that Boris Bronshteyn be awarded $5 million.

### G. Sharron L. Clemons

Sharon L. Clemons was in the Court Street area of Downtown Brooklyn during the 9/11 attacks. ECF No. 5762-8, Sharon L. Clemons Decl. ¶ 3. Recognizing the emergency and her on-call status with her company, she believed that she needed to go to her main office in Manhattan to see if her assistance was needed. Id. ¶¶ 5, 6. She arrived blocks away from the World Trade Center complex, and as she was crossing a subway grate, the grate gave way and she fell approximately 20 feet below the subway platform. Id. ¶ 9. After a set of subway rides with the assistance of other passengers and emergency medical technicians, Sharron arrived in Brooklyn, where she collapsed on the platform and was taken to the hospital. Id. ¶¶ 10-20. Sharon sustained a burst fracture and compression of the L1 vertebral body, and a mid-foot dislocation and pilon fracture on her left foot. Id. ¶ 21. She also suffers from PTSD and major depression. Id. ¶ 22. She has since undergone surgery to repair the fracture in her left foot. ECF No. 5762-8, Ex. B. at 45. Because these injuries fall into the first category, consisting of fractures and other significant orthopedic injuries, and mental health trauma, the Court recommends that Sharron L. Clemons be awarded $5 million.

### H. Flory H. Danish, Jr.

Flory H. Danish, Jr. was on the 86th floor of in the North Tower of the World Trade Center during the 9/11 attacks. ECF No. 5762-9, Flory H. Danish, Jr. Decl. ¶ 3. After taking the

stairs down to the concourse level, a thick, dark debris cloud came directly at him, causing Flory to fall backward onto his left shoulder. Id. ¶¶ 5, 6, 7. He continued crawling as he was pelted with debris, eventually reaching firefighters who led the dust-covered survivors to street level. Id. ¶ 8. Flory sustained a left shoulder injury that caused fluid within the rotator cuff and partial tearing of the small acromial spur, and mental disorders including PTSD and a major depressive disorder secondary to the PTSD. Id. ¶ 14. Because his injuries fall into the first category, including significant orthopedic injuries and mental health trauma, the Court recommends that Flory H. Danish, Jr. be awarded $5 million.

### I. Michael T. Dempsey

Michael T. Dempsey was at 5 World Trade Center during the 9/11 attacks. ECF No. 5762-10, Michael T. Dempsey Decl. ¶ 3. He was exiting 4 World Trade Center when the second plane hit and was trampled by the evacuating crowd in the street fleeing from the attacks. Id. He suffered inhalation injuries and reactive airway dysfunction syndrome as a result of the dust and debris. Id. He was also treated at the hospital for a head injury, severe concussion, multiple contusions, and internal bleeding. Id. ¶ 4. He received psychiatric treatment at the hospital and continues to suffer from PTSD. Id. Because his injuries fall into the first category, including respiratory ailments, bleeding, and lasting emotional injuries, the Court recommends that Michael T. Dempsey be awarded $5 million.

### J. John Drapas, Jr.

John Drapas, Jr. was at the Pentagon during the 9/11 attacks. ECF No. 5762-11, John Drapas, Jr. Decl. ¶ 3. After the plane hit, John heard a thunderous crash and the walls and ceilings began to fall, causing a forceful wind to flow over his body. Id. ¶ 4. John made his way out of the Pentagon and went to a first-aid station to receive assistance. Id. ¶ 5. He was barely

able to walk, became faint and went into shock, was put on a stretcher, and lost a great deal of blood. Id. He sustained numerous lacerations, the largest of which required twelve stitches to his forehead, bodily bruises, and a concussion. Id. ¶ 6. A scar remains on the upper-left hand side of his forehead. Id. He also suffered from a moderate traumatic brain injury, PTSD, depression, anxiety, and emotional trauma, and has sought therapy to address these injuries. Id. ¶¶ 6, 7. The brain injury has left him slower, less articulate, and unable to recall, learn, and process information quickly. Id. ¶ 8. Because his injuries fall into the second category, including severe flesh wounds, serious head trauma, and psychological injuries, the Court recommends that John Drapas, Jr. be awarded $7 million.

### K. Hernando Fernandez

Hernando Fernandez was at the North Tower of the World Trade Center during the 9/11 attacks. ECF No. 5762-12, Hernando Fernandez Decl. ¶ 3. Hernando was in the lobby at the time the plane hit, and the impact of the plummeting elevator threw him across the lobby floor. Id. ¶ 4. He crashed against a glass wall or door, injuring his face, head, knees, and legs. Id. Hernando's scalp and skin were burned, and he ran outside and fell into the glass of a bus stop structure. Id. He also suffered from sprains and strains of left knee, left ankle, and foot; a contusion to his forehead with swelling and headache; and contusions to his left knee, left lower leg, and calf area. Id. ¶ 6. Hernando also developed PTSD as well as a sleep disorder, nightmares, and intrusive thoughts during the day. Id. ¶ 7. While Hernando's orthopedic injuries fall into the first category, including sprains and strains, the burns and head injuries that he sustained fall into the second category. Accordingly, the Court recommends that Hernando Fernandez be awarded $7 million.

### L. Paul E. Gonzales

Paul E. Gonzales was at the Pentagon during the 9/11 attacks. ECF No. 5762-13, Paul E. Gonzales Decl. ¶ 4. He was lifted off the ground in a fireball, then found himself kneeling on the ground with the skin on his hands peeled back. Id. ¶¶ 5, 6. He led other survivors on their hands and knees through the smoke-filled room and found a path to get outside, collapsing in the Pentagon's center courtyard. Id. ¶ 8. He suffered from acute inhalation injury, closed fracture of second cervical vertebra, pulmonary insufficiency following trauma and surgery, acidosis, third-degree burns to hands and other parts of body, mixed conductive and sensorineural hearing loss, conjunctive hemorrhage, benign paroxysmal positional vertigo, contusions to face, scalp, and neck, dysphagia, hypotension, and PTSD. Id. ¶ 10. He was placed on life support as a result of chemical and smoke burns, and his wife was told he would die without extraordinary measures. Id. ¶ 11. Over time his left hand has atrophied, and he has neurological damage and severe brain atrophy. Id. ¶ 13. He has had several surgeries, his right ear is no longer functional, one of his eyes will not open all the way, and his breathing remains impaired. Id. Because these injuries fall into the third category and are particularly devastating, including hearing and vision loss, severe pulmonary trauma, severe burns, and loss of mobility, the Court recommends that Paul E. Gonzales be awarded $12 million.

### M. Ruben Gordillo

Ruben Gordillo was at the Marriott World Trade Center during the 9/11 attacks. ECF No. 5762-14, Ruben Gordillo Decl. ¶ 3. While he was in the hotel lobby, the first tower collapsed, causing the building to shake and throwing him against a door, resulting in injuries to his back, ribs, knees, and shoulders. Id. ¶ 5. He proceeded to escape uptown, and was treated for pain and shortness of breath at the hospital. Id. ¶ 6. Ruben suffered from contusions and sprains to his

right and left shoulders, chest contusions and a broken rib, and torn meniscuses in his right and left knees, which required a separate surgery to repair. Id. ¶ 8. He was also diagnosed with PTSD. Id. He continues to experience occasional pain in his left shoulder, pain in his back, and pain in his knees. Id. ¶ 11. The Court finds his injuries to be significant, not severe. Because his injuries fall into the first category, including sprains and other significant orthopedic injuries causing intermittent pain, and mental health disorders, the Court recommends that Ruben Gordillo be awarded $5 million.

### N. Rafael Gudmuch

Rafael Gudmuch was at the Marriott World Trade Center during the 9/11 attacks. ECF No. 5762-15, Rafael Godmuch Decl. ¶ 3. Upon exiting the building, everyone began running, and Rafael fell down in the melee and was trampled over, resulting in physical injuries to his back. Id. ¶ 6. He suffered from sprains and strains of both the cervical and lumbar regions of his back and was diagnosed with PTSD. Id. ¶ 10. He continues to suffer from back pain and PTSD. Id. ¶ 13. Because these injuries fall into the first category, consisting of significant orthopedic trauma and mental health disorders, the Court recommends that Rafael Gudmuch be awarded $5 million.

### O. Robert Hall

Robert Hall was at the North Tower during the 9/11 attacks. ECF No. 5762-16, Robert Hall Decl. ¶ 3. He was working in the B4 Level Pump Room when the first plane hit, and the freight cable elevator came crashing down, blowing him off his feet. Id. ¶ 6. When he and his coworkers approached one of the elevators, the doors exploded into a fireball and Robert was blown through a steel door. Id. He suffered from a severe, displaced fracture to his scaphoid bone and severe damage to his ulnar nerve at both his elbow and wrist in his dominant right arm

when it was crushed. Id. ¶ 5. He suffers from muscle weakness in this arm, causing persistent numbness and making his ring and little fingers curl inward, noted in his medical records as a claw deformity. Id. He had three surgeries on his right arm and is totally disabled. Id. He was diagnosed with PTSD, depression, anxiety, and nightmares. Id. ¶¶ 5, 6. The Court finds these injuries to be severe, but not devastating. Because these injuries fall into the second category, including severe, debilitating orthopedic injuries requiring multiple surgeries, the Court recommends that Robert Hall be awarded $7 million.

### P.  David J. King, Jr.

David J. King, Jr. was at the Pentagon during the 9/11 attacks. ECF No. 5762-17, David J. King Decl. ¶ 3. His entire office erupted into flame when the plane hit, and David was surrounded by rubble. Id. ¶ 5. He sustained burns on his arm as he tried to get to his coworker a few feet away. Id. ¶ 6. The whole room was filling with smoke, and David sustained further burns to his legs and face. Id. After escaping through a hole, he was evacuated to the Burn Unit at the hospital. Id. Third and fourth degree burns covered 22% of his total body surface area, requiring a six-week hospital stay, multiple surgeries, and significant physical therapies for the next year. Id. ¶ 7. The VA rated his disabilities as follows: 20% for burn scars of the left upper extremity; 40% for burn scars on the right upper extremity; 50% for facial burn scars; 40% for traumatic brain injury from the explosion; and 50% for post-traumatic stress disorder. Id. David continues to suffer from PTSD and emotional and physical distress. Id. ¶¶ 8, 9. Because his injuries fall into the third category, including severe burns, a lengthy hospital stay, multiple surgeries, and continuing emotional trauma, the Court recommends that David J. King, Jr. be awarded $10 million.

### Q. Evelyn A. Lugo

Evelyn A. Lugo was at 2 World Trade Center during the 9/11 attacks. ECF No. 5762-18, Evelyn A. Lugo Decl. ¶ 3. She sustained physical injuries in the escape and collapse, including a head injury caused by falling debris and ringing in her ears, for which she recently was seen for a medical consultation. Id. ¶ 6. She was treated at the hospital on September 11, 2001, for her injuries. She suffered, and continues to suffer, from severe emotional distress, anxiety, and bouts of depression. Id. ¶ 9. Because her injuries fall into the first category, including short term physical injuries, some lasting ringing in the ears, and emotional injuries, the Court recommends that Evelyn A. Lugo be awarded $5 million.

### R. Antonio Quinones

Antonio Quinones was at the North Tower of the World Trade Center during the 9/11 attacks. ECF No. 5762-19, Antonio Quinones Decl. ¶¶ 3, 4. The impact of the first plane hitting the building caused an explosion from the elevator shaft that blasted him 10-15 feet and caused the ceiling to collapse on top of him. Id. ¶ 5. About 45 minutes after the first plane hit, Antonio escaped from the building with his stepfather and mother, who also worked in the towers. Id. ¶¶ 4, 8. At this point he did not know if his brother, who worked in the building as well, had survived. Id. ¶ 15. Seeing that the South Tower was about to collapse, Antonio grabbed his mother and stepfather and they ran as their bodies were pelted by the debris, Id. ¶ 11. As a result, Antonio suffered from injuries to his head, neck, back, and leg, third degree burns, six herniated disks, heartburn, PTSD, anxiety, and severe smoke inhalation. Id. ¶ 14.

Diagnostic follow-up established that he suffered from post-concussion syndrome; cervicodorsal derangement with herniated discs at C3 to C4 and C5 to C6; cervical myeloradiculopathy; lumbosacral derangement with bulging discs at L4 to L5 and L5 to S1;

lumbar radiculopathy; post-traumatic adjustment reaction with depression and anxiety; and post-traumatic stress disorder. ECF No. 5762-19, Ex. B at 11. Because his injuries fall into the second category, including burns, severe orthopedic injuries, and severe emotional trauma in part due to witnessing his mother and stepfather be injured and his concern for his brother's safety, the Court recommends that Antonio Quinones be awarded $7 million.

### S. Joseph Rotondi

Joseph Rotondi was working one block away from the World Trade Center during the 9/11 attacks. ECF No. 5762-20, Joseph Rotondi Decl. ¶ 3. He was on the roof of a building when the second plane hit. Id. ¶ 5. He sustained knee injuries requiring continuing treatment, for which he had surgery in 2016. Id. ¶ 6. Joseph also suffers from PTSD, and severe anxiety that causes panic attacks. Id. ¶ 7. According to his medical records, Joseph had a prior injury to the left knee before 9/11, although the doctors found that there is still a causal relationship between his present injury and 9/11. ECF No. 5762-20, Ex. B at 13. The Court however finds these injuries to be significant, not severe. Because these injuries fall into the first category, including significant orthopedic injuries requiring a surgical procedure, and lasting emotional injuries, and recommends that Joseph Rotondi be awarded $5 million.

### T. Glenn Savery

Glenn Savery was in the basement of the South Tower of the World Trade Center during the 9/11 attacks. ECF No. 5762-21, Glenn Savery Decl. ¶ 3. As a security officer, he helped clear people from the lobby. Id. ¶ 4. He then felt the building coming down and escaped. Id. The debris and force of the building coming down threw him across the street. Id. In the process, he suffered from lumbar derangement, radiculopathy lumbosacral, TR myofascitis of his lumbar spine, chest wall contusion, PTSD, post-concussion syndrome with moderate cognitive

deficiency, vertigo, tinnitus, vestibular contusion and costochondritis. Id. ¶ 5. Glenn continues to suffer from anxiety and bouts of depression, including sleep apnea and survivor's guilt. Id. ¶ 6. He still requires treatment for his lumbar derangement and other back complications, and the tinnitus and cognitive deficiencies regularly detract from his ability to complete everyday tasks. Id. ¶ 7. Because his injuries fall into the second category, including continuing lower back pain, ringing in the ears, cognitive deficiency, and mental health trauma, the Court recommends that Glenn Savery be awarded $7 million.

### U. Barbara M. Williams

Barbara M. Williams was in the South Tower of the World Trade Center during the 9/11 attacks. ECF No. 5762-22, Barbara M. Williams Decl. ¶¶ 3, 4. Barbara suffered injuries to her feet and legs from running down 88 flights of steps, stumbling, and tripping on debris and glass in her stocking feet, without her dress shoes on, trying to exit the tower. Id. ¶ 6. She was also diagnosed with asthma, chronic rhinitis, and esophageal reflux due to exposure to toxic substances from the soot and dust from the debris. Id. Barbara sought medical attention for her injuries at an emergency room within two days following the attacks. Id. ¶ 7. She suffered, and continues to suffer, from severe emotional distress. Id. ¶ 9. Because these injuries fall into the first category, including significant orthopedic injuries, nasal irritations and chest pain, and mental health disorders, the Court recommends that Barbara M. Williams be awarded $5 million.

## CONCLUSION

For the foregoing reasons, Plaintiffs should receive pain and suffering damages as follows:

| Number | Plaintiff | Pain and Suffering Damages |
|---|---|---|
| 1 | Yvonne Veronica Abdool | $5,000,000 |
| 2 | Ingrid Alleyne-Robertson | $5,000,000 |
| 3 | Frances Berdan | $7,000,000 |
| 4 | Deborah E. Berk | $7,000,000 |
| 5 | Michael P. Brodbeck | $7,000,000 |
| 6 | Boris Bronshteyn | $5,000,000 |
| 7 | Sharron L. Clemons | $5,000,000 |
| 8 | Flory H. Danish, Jr. | $5,000,000 |
| 9 | Michael T. Dempsey | $5,000,000 |
| 10 | John Drapas, Jr. | $7,000,000 |
| 11 | Hernando Fernandez | $7,000,000 |
| 12 | Paul E. Gonzales | $12,000,000 |
| 13 | Ruben Gordillo | $5,000,000 |
| 14 | Rafael Gudmuch | $5,000,000 |
| 15 | Robert Hall | $7,000,000 |
| 16 | David J. King, Jr. | $10,000,000 |
| 17 | Evelyn A. Lugo | $5,000,000 |
| 18 | Antonio Quinones | $7,000,000 |
| 19 | Joseph Rotondi | $5,000,000 |

| 20 | Glenn Savery | $7,000,000 |
| 21 | Barbara M. Williams | $5,000,000 |

Plaintiffs should also be awarded prejudgment interest on these damages from September 11, 2001, through the date of judgment, at a rate of 4.96 percent per annum, compounded annually. See ECF No. 3358, adopted by, ECF No. 3383.

Plaintiffs may apply for punitive damages, economic damages, or other damages at a later date consistent with any future rulings made by the Court on this issue. Any application for punitive damages should not be filed until after the Supreme Court has issued a decision in Opati v. Republic of Sudan, 139 S. Ct. 2771 (2019).

Any Burnett Personal Injury Plaintiffs not appearing in this motion and who were not previously awarded damages may still submit applications for damages awards in later stages.

Finally, the Court recognizes that in order to participate in the next distribution from the United States Victims of State Sponsored Terrorism Fund ("VSSTF"), Plaintiffs must have a judgment by February 19, 2020. Accordingly, the Burnett II Plaintiffs are ORDERED to notify the Honorable George B. Daniels no later than **Wednesday, February 12, 2020**, whether any plaintiff intends to file an objection. For claims for which no objections are anticipated, the Court will issue judgments by the VSSTF deadline. For claims for which objections are filed, the Court will make every effort to address the objections by the VSSTF deadline, but a judgment cannot be guaranteed. And, to protect the due process rights of all parties, any objection timely filed within the 14-day period but after a judgment has been entered, will result in a stay of execution of the judgment until further order of the Court.

DATED:   February 7, 2020
         New York, New York

_____
SARAH NETBURN
United States Magistrate Judge

\*          \*          \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge George B. Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).