UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

    TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001

-----------------------------------------------------------------X

03-MDL-01570 (GBD)(SN)

**REPORT AND RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:

    <u>Thomas Burnett, Sr., et al. v. The Islamic Republic of Iran, et al.</u>, 15-cv-9903 (GBD)(SN)

    On January 31, 2017, the Honorable George B. Daniels granted the <u>Burnett</u> Plaintiffs an Order of Judgment by default against the Islamic Republic of Iran. <u>See</u> Order of Judgment, ECF No. 3443. Since then, the Court has issued numerous orders addressing the <u>Burnett</u> Plaintiffs' requests for damages. Before the Court is a motion brought by 17 personal injury plaintiffs injured in the terrorist attacks on September 11, 2001. ECF No. 5798. Plaintiffs' motion should be GRANTED.

## DISCUSSION

    This Court assumes the parties' familiarity with the extensive rulings related to this multi-district litigation. As relevant here, the Court on February 7, 2020, issued a Report and Recommendation ("<u>Burnett I</u>") that detailed an objective framework to evaluate the proper amount of pain and suffering damages for 9/11 personal injury victims. ECF No. 5879. This motion asks the Court to award compensatory damages for pain and suffering in amounts commensurate with the injuries these plaintiffs sustained during the terrorist attacks on September 11, 2001. In addition, in keeping with the Court's prior rulings, plaintiffs seek

prejudgment interest at the rate of 4.96 percent per annum compounded annually for the period from September 11, 2001, until the date of judgment, permission to seek punitive damages, economic damages, or other damages at a later date, and permission to file applications for all other Burnett Personal Injury Plaintiffs to file applications for damages awards in later stages, to the extent such awards have not previously been addressed.

I. **BURNETT III PERSONAL INJURY PLAINTIFFS**

Consistent with the framework set forth in Burnett I, the Court analyzes each plaintiff's claim for pain and suffering damages individually using the objective criteria set forth therein.

**A. Lynette Bangaree**

Lynette Bangaree was at Ground Zero during the World Trade Center attacks. ECF No. 5800-2, Lynette Bangaree Dec. ¶ 3. On the morning of 9/11, Lynette exited the subway a few blocks away from the World Trade Center when she saw the second plane hit the South Tower. Id. ¶¶ 4, 5. She does not remember falling, but somehow in the chaos she injured her foot, probably when she tried running away. Id. ¶ 5. Her right foot was swollen around the ankle. Id. Later that day Lynette's sister took her to the hospital, where the x-ray showed she had a fractured heel bone. Id. ¶ 7. She was placed in a cast and given crutches and did not return to work for six months because it was difficult to get around. Id. She also was diagnosed with PTSD, for which she was given medication. Id. ¶ 8. Because these injuries fall into the first category, including fractures and mental health trauma, the Court recommends that Lynette Bangaree be awarded $5 million.

**B. Eduardo E. Bruno**

Eduardo E. Bruno was on the first floor of the Pentagon during the 9/11 attacks. ECF No. 5800-3, Eduardo E. Bruno Decl. ¶ 4. Eduardo felt as if something slammed into him, sending

2

him backwards through a wall into the next room and causing him to lose consciousness. Id. ¶ 7. When he regained consciousness, he began choking with his lungs burning from the inside out. Id. ¶ 8. Pain coursed throughout his body, and he could feel blood streaming down his face. Id. Giant slabs of concrete, metal, wires, and other debris from above had fallen on top of him, pinning him to the ground. Id. He eventually managed to free himself, and freed one of his coworker and a coworker's infant baby, crawling to a blown-out window. Id. ¶¶ 11-13. Eduardo received diagnoses for PTSD, traumatic brain injury with associated severe migraine headaches, right knee strain, status post medial meniscus tear, sprain of the lumbar spine with degenerative disc disease, and radiculopathy of the lower right extremity. Id. ¶ 17. His orthopedic injuries cause him to suffer severe chronic lower back pain, intermittent paresthesia with post thigh numbness, and tenderness and spasm of the lumbar muscles, making it difficult to bend, drive, and climb stairs. Id. ¶ 27. He also continues to suffer from his emotional trauma, and his traumatic brain injury prevents him from performing many physical tasks with any consistency. Because some of these injuries fall into the second category, including traumatic brain injury causing severe headaches, significant injuries from being buried, and mental health trauma, the Court recommends that Eduardo E. Bruno be awarded $7 million.

### C. Richard Collins

Richard Collins was in the North Tower of the World Trade Center during the 9/11 attacks. ECF No. 5800-4, Richard Collins Decl. ¶ 3. After the first plane hit, Richard was trapped in a storage room, and the force of a second explosion knocked him to the ground and caused his lungs to burn. Id. ¶¶ 7-9. After escaping from the room, two men helped carry him out of the building. Id. ¶¶ 10-11. As the South Tower began to collapse, Richard ran and a powerful rush of air swooped him off his feet. Id. ¶ 13. He was flung into the air, and then buried under debris. Id.

Richard suffered from a left knee contusion with a tear of the posterior horn of the medial meniscus, bilateral chondromalacia, Hepatitis C, complete loss of hearing in his left ear, a lower right forearm contusion, eye trauma including loss of vision in his right eye, irritant-induced asthma, chronic sinusitis, gastrointestinal reflux, and reactive airway disease syndrome, and PTSD. Id. ¶ 17. The Court's review of the medical records, however, does not support the affiant's statements. According to his medical Records, Richard's hearing is normal, and he has 20/20 vision in both eyes. ECF No. 5800-4, Ex. D at 39. Because Richard's other injuries fall into the first category, including significant orthopedic injuries, asthma, and mental health trauma, the Court recommends that Richard Collins be awarded $5 million.

### D.  Walter Henry Cramer Jr.

Walter Henry Cramer Jr. was adjacent to the World Trade Center complex during the 9/11 attacks. ECF No. 5800-5, Walter Henry Cramer Jr. Decl. ¶ 3. He worked at the World Trade Center along with his younger brother and sister in law. Id. He received physical injuries in the escape and collapse, but did not seek immediate medical attention because he was informed when he returned home that no one had heard from his younger brother or sister in law, and he then put all his effort into locating them. Id. ¶ 5. Tragically, neither survived the attacks. Id. He suffered from mild to moderate disc desiccation and degeneration at L3-4, and a slightly lesser degree of disc desiccation at L4-5 and L5-S1. Id. ¶ 6. At L5-S1 there is evidence of a moderate size right posterolateral disc herniation extending into the right lateral recess and proximal right neural forearm inferiorly. Id. There is also some mild diffuse annular bulging at the L4-5 level. Id. Walter started to experience numbness and weakness in his legs and hands, and developed bilateral carpel tunnel syndrome. Id. Walter also suffers from acute stress reaction and PTSD. Id. ¶ 8. While Walter continues to experience back pain, his medical records suggest that his pain

improved by up to 90% less than a year after 9/11. ECF No. 5800-5, Ex. E. at 17. Because his injuries fall into the first category, including significant orthopedic injuries and mental health trauma, the Court finds these injuries to be significant, not severe. Accordingly, the Court recommends that Walter Henry Cramer Jr. be awarded $5 million.

### E. Clifford Jenkins

Clifford Jenkins was at Ground Zero during the 9/11 attacks. ECF No. 5800-6, Clifford Jenkins Decl. ¶ 3. He was standing in front of the North Tower when the attacks began, and he was pelted with debris, including glass and body parts. Id. He inhaled copious amounts of smoke and saw people jumping to their deaths. Id. He sustained a shoulder impingement, which continually causes pain. Id. ¶ 4. He experienced constant coughing and difficulty breathing in the months following the attacks and was diagnosed with a concussion from being hit with debris. Id. He suffered, and continues to suffer, from PTSD. Id. ¶ 5. Because these injuries fall into the first category, including significant orthopedic injuries, respiratory ailments, and mental health disorders, the Court recommends that Clifford Jenkins be awarded $5 million.

### F. Mark D. Joseph

Mark D. Joseph was in the North Tower of the World Trade Center During the 9/11 attacks. ECF No. 5800-7, Mark D. Joseph Decl. ¶ 3. As he ran from the building, bodies from jumpers exploded around him, and he was covered with their insides. Id. As he continued running an object struck him in the scalp, knocking him to the ground and causing him to lose his upper front teeth and bleed from the head. Id. Particles from the falling debris were lodged into his head, and Mark continues to have scarring and pressure headaches as a result. Id. ¶ 4. He suffered, and continues to suffer, from PTSD and had thoughts of suicide. Id. ¶ 5. He developed respiratory problems, including the presence of nodes on his lungs. Id. ¶ 6. Because many of

these injuries fall into the second category, including head injuries causing frequent headaches and mental health trauma, the Court recommends that Mark D. Joseph be awarded $7 million.

### G. Susanne Kikkenborg

Susanne Kikkenborg was at the World Trade Center site during the 9/11 attacks. ECF No. 5800-8, Susanne Kikkenborg Decl. ¶ 3. Susanne attempted to flee the Marriott Hotel when the first plane struck, but was forced back inside due to falling debris. Id. ¶ 5. The hotel was filled with dust, debris, and smoke. Id. She was again enveloped in dust, smoke, and debris as she later made her way from the hotel as the South Tower collapsed. Id. Susanne suffered from interstitial lung disease, chronic respiratory disorder, chronic rhino sinusitis, gastroesophageal reflux disease, reactive airway dysfunction syndrome, and extrinsic asthma. Id. ¶ 6. She developed multiple autoimmune diseases and thyroid and bladder issues. Id. Susanne also suffers from PTSD, resulting in an alcohol dependency that she has since overcome. Id. ¶ 7. Because these injuries fall into the first category, including significant respiratory ailments and mental health disorders, the Court recommends that Susanne Kikkenborg be awarded $5 million.

### H. Stephen J. King, III

Stephen J. King, III was a firefighter at the World Trade Center during the 9/11 attacks. ECF No. 5800-9, Stephen J. King, III Decl. ¶ 3. After the South Tower collapsed, Stephen was covered in debris and engulfed in smoke and heavy dust, unable to see and barely able to breathe. Id. ¶ 7. Somehow, he shattered his left knee. Id. Through the confusion, he was able to get out of the tower just before it collapsed behind him. Id. Stephen threw himself down a subway staircase to survive and was covered in the debris that came tumbling down the stairs, losing consciousness. Id. He sustained a shattered meniscus in his knee, ongoing muscular knee problems, hearing loss and tinnitus, lung scarring and nodules, Barrett's esophagus, PTSD, and

various GI-related issues. Id. ¶ 6. His last day as a firefighter was September 11, 2001. Id. The Court finds these injuries to be significant, but not severe, a categorization supported by the fact that Stephen's submission does not contain medical documentation. Burnett I at 9. Because the injuries fall into the first category, including significant orthopedic trauma, some hearing loss and ringing in the ears, and mental health trauma, the Court recommends that Stephen J. King, III be awarded $5 million.

### I. Joseph Pesce

Joseph Pesce was at the World Trade Center during the 9/11 attacks. ECF No. 5800-10, Joseph Pesce Decl. ¶ 3. He was on the 7th floor of the North Tower when he felt the building shake, and he ran down the stairs and walked to Penn Station. Id. ¶ 4. He suffered from heel and knee injuries, hearing loss, and severe PTSD resulting in suicidal thoughts. Id. ¶¶ 6, 7. Because these injuries fall into the first category, including significant orthopedic injuries, some hearing loss, and mental health trauma, the Court recommends that Joseph Pesce be awarded $5 million.

### J. Nathan Peterson, Jr.

Nathan Peterson, Jr. was on the 58th floor of the South Tower of the World Trade Center during the 9/11 attacks. ECF No. 5800-11, Nathan Peterson, Jr. Decl. ¶ 3. Nathan made it down the stairs and out the building, but was injured in the midst of everyone running and falling in the stairwells. Id. He suffered from tendinitis of his left shoulder, lumbar radiculopathy, PTSD, and a cervical sprain. Id. ¶ 4. He also has asthma, so the air quality made it difficult for him to breathe, and he was treated in 2002 for reactive airway disease syndrome related to his dust exposure. Id. He has pains that go down his arm and fingers and suffered a mild heart attack in 2003, which his physician said comes from his anxiety. Id. The emotional stress from that day caused Nathan to refuse treatment for his injuries until January 2002. Id. ¶ 5. He sustained a mild heart attack in

2003 that was attributed to the anxiety he continued to experience. Id. ¶ 4. Because these injuries fall into the first category, including significant orthopedic injuries, respiratory ailments, and mental health trauma, the Court recommends that Nathan Peterson, Jr. be awarded $5 million.

**K. Juan Ramirez**

Juan Ramirez was at the Marriott World Trade Center during the 9/11 attacks. ECF No. 5800-12, Juan Ramirez Decl. ¶ 4. He ran down the stairs, falling on his way down, and exited the building. Id. ¶ 6. As people fled for their lives, Juan was trampled in the crowd. Id. He fell again as he ran away from the collapsing tower. Id. Juan suffered from a fractured left scapula, a sprained left elbow, and a torn left rotator cuff. Id. ¶ 7. He underwent arthroscopy and decompression and repair surgery in October 2001. Id. ¶ 8. He suffered, and continues to suffer, from PTSD. Id. ¶ 9. Juan's medical records suggest that he suffers from a prior work related injury to his left shoulder, for which he continued to have symptoms after 9/11. ECF No. 5800-12, Ex. L at 26. The Court finds these injuries to be significant, not severe, including significant orthopedic injuries requiring surgery and mental health trauma. Accordingly, the Court recommends that Juan Ramirez be awarded $5 million.

**L. Grace Rivera**

Grace Rivera was at the World Trade Center during the 9/11 attacks. ECF No. 5800-14, Grace Rivera Decl. ¶ 3. She and her husband were both in the lobby of the North Tower when the first plane hit. Id. As she and her husband tried to get out of the building, a tremendous gust of wind and fire exploded from behind them and threw them outside. Id. ¶ 4. 23% of Grace's total body surface area had second and third degree flame burns involving the bilateral extremities including her hands, large areas of her back, and both her lower legs. Id. ¶ There were multiple sutured lacerations on her lower legs and multiple abrasions on her thighs. Id. She

also had a large area of ecchymosis on her left hip, upper thigh, and other scattered areas. Id. These burns have left Grace with significant permanent scarring. Id. ¶ 9. She also suffered from PTSD. Id. ¶ 10. These injuries fall into the third category, including severe burns, permanent disfigurement, and mental health trauma. Because she suffered through this experience alongside her husband, who was also devastatingly injured, the Court recommends that Grace Rivera be awarded $12 million.

### M. Edwin Rivera

Edwin Rivera was at the World Trade Center during the 9/11 attacks. ECF No. 5800-13, Edwin Rivera Decl. ¶ 3. He and his wife were both in the lobby of the North Tower when the first plane hit. Id. As he and his wife tried to get out outside, a tremendous gust of wind and fire exploded from behind them and threw them out of the building. Id. ¶ 4. Edwin was bleeding from his injuries and his burning clothes caused severe skin burns, including third degree burns on his left hand, fingers, forearm, elbow, left arm, left posterior shoulder, and entire back, and second degree burns on his forehead, bilateral ears and upper eyelids. Id. ¶¶ 5, 6. In total, he was found to have 24% body surface area second and third degree flame burn. Id. ¶ 9. These burns have left Edwin with significant permanent scarring. Id. ¶ 11. He sustained inhalation injuries to his lungs and trauma to his left shoulder. Id. ¶ 7. He also suffered from PTSD and reactive anxiety disorder. Id. ¶ 12. These injuries fall into the third category, including severe burns, permanent disfigurement, and mental health trauma. Because he suffered through this experience alongside his wife, who was also devastatingly injured, the Court recommends that Edwin Rivera be awarded $12 million.

### N. John Rogers

John Rogers was a New York Police Department detective at the World Trade Center during the 9/11 attacks. ECF No. 5800-15, John Rogers Decl. ¶ 3. As the North Tower begun to collapse, he was thrown to the ground by the force of the explosion. Id. ¶ 5. A large amount of debris struck him on the back of the head, and he was buried under the building rubble. Id. He inhaled a large amount of dust, debris, soot and ash while he was buried. Id. He arrived unconscious to the emergency room. Id. John suffered from injuries and lacerations to his left cheek and nose, resulting in a deviated septum and a pocket in his left sinus canal that traps fluid and becomes infected; severe cervical spine and lumbar spine injuries, resulting in a C6-C7 discectomy and fusion surgery; a large hematoma in his lumbar region preventing him from receiving an additional recommended back surgery; and bacterial prostatitis. Id. ¶ 6. He also has chronic sinus infections that led to pneumonia, chronic bronchitis, heartburn, abnormal blood cell counts, and polycythemia that led to his development of deep vein thrombosis and the need for long term anticoagulant therapy. Id. He continues to suffer from chronic pain, and modified his house four years ago so that his parents could move in with him to help with activities such as driving a car and cleaning around the house. Id. ¶ 9. He also suffers from PTSD. Id. ¶ 11. Because these injuries fall into the second category, including severe orthopedic trauma, severe pulmonary trauma, and mental health trauma, the Court recommends that John Rogers be awarded $7 million.

### O. Abida Shaikh

Abida Sheikh was on the 63rd floor of the World Trade Center during the 9/11 attacks. ECF No. 5800-16. After the first plane hit she hurried down the stairs, injuring her back in the process. Id. ¶ 4. As a result, she has suffered severe lower back pain, lumbar radiculopathy,

10

degenerative disc disease, and herniated nucleus pulposis on the lumbar L4-L5 and L5-S1, as well as left side sciatica. Id. ¶ 5. She underwent multiple steroid injections to ease the pain, has seen a chiropractor, and continues to feel pain causing her to be unable to bend over or carry heavy items. Id. ¶¶ 6, 7. Because these injuries fall into the first category, including significant orthopedic trauma, the Court recommends that Abida Sheikh be awarded $5 million.

### P.  Dennis J. Valentin

Dennis J. Valentin was at the Marriott World Trade Center during the 9/11 attacks. ECF No. 5800-17, Dennis J. Valentin Decl. ¶ 3. After the first plane hit, Dennis took the escalator down to the main lobby, slipping and falling and being trampled in the hordes of people. Id. ¶ 4. After the first tower collapsed, Dennis saw that he had cuts and bruises all over his body from his head to his legs. Id. After the second tower collapsed, he was surrounded by the resulting huge clouds of debris and could not breathe. Id. He picked up his daughter uptown and dropped her off at home and then went to the emergency room. Id. Dennis suffered from four protruding disks in his lower back, his right foot and three toes were broken, both rotator cuffs were torn, and his collar bone on the left side was cracked. Id. ¶ 6. He also suffers from PTSD and vertigo. Id. He has had to have five surgeries for these injuries, which required six screws being put into his back as well as an implanted stimulus machine to help him walk, though he still has difficulty walking. ¶ 7. Because these injuries fall into the second category, including severe orthopedic trauma, multiple broken bones, multiple surgeries, and mental health trauma, the Court recommends that Dennis J, Valentin be awarded $7 million.

### Q.  Lauren Manning

Lauren Manning was at Ground Zero during the 9/11 attacks. ECF No. 5800-18, Lauren Manning Decl. ¶ 3. She was in the lobby when the first plane hit, and as she turned toward the

11

elevator bank, a wall of fire exploded out of the elevators, covering her in flames. Id. ¶ 5. Lauren's body was fully in flames as she ran across the West Side Highway, reaching a patch of grass and dropping and rolling. Id. She prayed to die, feeling that only death would bring her any release from the pain, but determined to continue to fight, struggling to maintain consciousness while battling the profound and relentless burn penetration. Id. Lauren was taken by ambulance to the hospital less than ten minutes before the South Tower fell. Id. ¶ 6. She remained fully conscious for six hours after the flames engulfed her. Id. Lauren suffered burns on 82.5% of her body, the majority of them third degree, and her odds of living were calculated at almost 17.5%. Id. ¶ 7. That number dwindled to single digits for months at a time due to the massive nature of the trauma, wounds, and related infections. Id.

Lauren spent three months at a burn center, the first seven and a half weeks in a medically induced coma. Id. She underwent more than twenty-five operations, which included over sixty individual surgical procedures. Id. Lauren's body remains riddled with deformities, internal staples, and unstable skin. Id. Lauren had to re-learn how to stand, walk, and adaptively use her severely altered hands and body. Id. ¶ 8. A daily routine of physical and occupational therapy continues to this day, along with 24-hour home health care aide assistance. Id. Lauren also suffered from lung and nasal damage, partial amputation of four fingers, the loss of the DIP joints of two other fingers, the loss of her left ear, various spinal cord compressions L3-L7 and throughout the lower spine sacral area, and further deformities and compromises to a significant number of joints. Id. ¶ 9.

Lauren's son was 10.5 months old at the time of the attacks. Id. ¶ 11. Lauren did not return home for more than half a year. Id. Her son endured seeing blood-soaked bandages, tortuous splints, and open wounds in the hospital. Id. For years, Lauren remained covered head

to toe in highly restrictive compression garments and plastic silicone face masks. Id. Her son suffered from severe latent post-traumatic stress syndrome after he turned 11. Id. Lauren's son spent three months in a therapy program, followed by 18 months at a residential treatment center. Id. ¶ 13. The Court recognizes that the injuries Lauren suffered, and the enduring effect those injuries have had on her life and on her son's life, are beyond devastating. There is no figure that can provide an appropriate measure of damages for the pain she has endured. The Court recommends that Lauren Manning be awarded $25 million.

## CONCLUSION

For the foregoing reasons, Plaintiffs should receive pain and suffering damages as follows:

| **Number** | **Plaintiff** | **Pain and Suffering Damages** |
|---|---|---|
| 1 | Lynette Bangaree | $5,000,000 |
| 2 | Eduardo E. Bruno | $7,000,000 |
| 3 | Richard Collins | $5,000,000 |
| 4 | Walter Henry Cramer Jr. | $5,000,000 |
| 5 | Clifford Jenkins | $5,000,000 |
| 6 | Mark D. Joseph | $7,000,000 |
| 7 | Susanne Kikkenborg | $5,000,000 |
| 8 | Stephen J. King, III | $5,000,000 |
| 9 | Joseph Pesce | $5,000,000 |
| 10 | Nathan Peterson, Jr. | $5,000,000 |
| 11 | Juan Ramirez | $5,000,000 |
| 12 | Grace Rivera | $12,000,000 |

| 13 | Edwin Rivera | $12,000,000 |
| 14 | John Rogers | $7,000,000 |
| 15 | Abida Shaikh | $5,000,000 |
| 16 | Dennis J. Valentin | $7,000,000 |
| 17 | Lauren Manning | $25,000,000 |

Plaintiffs should also be awarded prejudgment interest on these damages from September 11, 2001, through the date of judgment, at a rate of 4.96 percent per annum, compounded annually. See ECF No. 3358, adopted by, ECF No. 3383.

Plaintiffs may apply for punitive damages, economic damages, or other damages at a later date consistent with any future rulings made by the Court on this issue. Any application for punitive damages should not be filed until after the Supreme Court has issued a decision in Opati v. Republic of Sudan, 139 S. Ct. 2771 (2019).

Any Burnett Personal Injury Plaintiffs not appearing in this motion and who were not previously awarded damages may still submit applications for damages awards in later stages.

Finally, the Court recognizes that in order to participate in the next distribution from the United States Victims of State Sponsored Terrorism Fund ("VSSTF"), Plaintiffs must have a judgment by February 19, 2020. Accordingly, the Burnett III Plaintiffs are ORDERED to notify the Honorable George B. Daniels no later than **noon on Friday, February 14, 2020**, whether any plaintiff intends to file an objection. For claims for which no objections are anticipated, the Court will issue judgments by the VSSTF deadline. For claims for which objections are filed, the Court will make every effort to address the objections by the VSSTF deadline, but a judgment cannot be guaranteed. And, to protect the due process rights of all parties, any objection timely

filed within the 14-day period but after a judgment has been entered, will result in a stay of execution of the judgment until further order of the Court.

                                                                  _____
                                                                  SARAH NETBURN
                                                                  United States Magistrate Judge

DATED:     February 11, 2020
               New York, New York

                        \*                         \*                        \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).