USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/11/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

    TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001

-----------------------------------------------------------------X

03-MDL-01570 (GBD)(SN)

**REPORT AND RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:

    Ashton et al. v. al Qaeda Islamic Army, et al., 02-cv-6977 (GBD)(SN)
    Burlingame v. Bin Laden, et al., 02-cv-7230 (GBD)(SN)

On August 31, 2015, the Honorable George B. Daniels granted the Ashton and Burlingame Plaintiffs an Order of Judgment by default against the Islamic Republic of Iran. See Order of Judgment, ECF No. 3021. Since then, the Court has issued numerous orders addressing the Ashton and Burlingame Plaintiffs' requests for damages. Before the Court is a motion brought by five personal injury plaintiffs injured in the terrorist attacks on September 11, 2001. ECF No. 5802. Plaintiffs' motion should be GRANTED.

## DISCUSSION

The Court assumes the parties' familiarity with the extensive rulings related to this multi-district litigation. As relevant here, the Court on February 7, 2020, issued a Report and Recommendation ("Burnett I") that detailed an objective framework to evaluate the proper amount of pain and suffering damages for 9/11 personal injury victims. ECF No. 5879. This motion asks the Court to award compensatory damages for pain and suffering in amounts commensurate with the injuries these plaintiffs sustained during the terrorist attacks on

September 11, 2001. In addition, in keeping with the Court's prior rulings, plaintiffs seek prejudgment interest at the rate of 4.96 percent per annum compounded annually for the period from September 11, 2001, until the date of judgment, permission to seek punitive damages, economic damages, or other damages at a later date, and permission to file applications for all other Burlingame Personal Injury Plaintiffs to file applications for damages awards in later stages, to the extent such awards have not previously been addressed.

I.       **BURLINGAME XI PERSONAL INJURY PLAINTIFFS**

Consistent with the framework set forth in Burnett I, the Court analyzes each plaintiff's claim for pain and suffering damages individually using the objective criteria set forth therein.

**A.  Ling N. Young**

Ling N. Young was in the 86th floor of the South Tower of the World Trade Center during the 9/11 attacks. ECF No. 5803-2, Ling N. Young Decl. ¶ 6. Taking the elevator down to the 78th floor after hearing the first explosion, Ling then heard a second explosion and immediately lost consciousness. Id. ¶¶ 6, 7. When she woke up, she found herself on the floor with things on top of her, bleeding from cuts on her face and forehead. Id. ¶ 7. She was surrounded by a wasteland, with dead bodies and flames all around her. Id. ¶ 8. Ling attempted to lift one of her colleagues who was having trouble walking, but her burns made it so painful that Ling had to put her down. Id. ¶ 11. Ling made her way down the stairs to the 40th floor and then took a service elevator that was still in operation to the lobby. Id. ¶ 13. Ling was immediately taken to a burn unit by ambulance. Id. She was burned over 40% of her body, and the harvesting of skin for skin grafts from the rest of her body caused the equivalent of new second-degree burns in those areas. Id. ¶ 16. Ling has undergone at least 40 surgeries and has lost most function in her left hand. Id. ¶ 18. She also still experiences nightmares and anxieties.

Id. ¶ 20. Because these devastating injuries fall into the third category, including severe burns and loss of mobility, the Court recommends that Ling Young be awarded $12 million.

### B. Virginia DiChiara

Virginia DiChiara was at the World Trade Center during the 9/11 attacks. ECF No. 5803-4, Virginia DiChiara Decl. ¶ 1. Virginia just stepped into a bank of elevators on the 78th floor when the first plane hit, and jet fuel engulfed the elevator shaft in flames. Id. ¶ 3. The elevator doors were forced partially open, but an escape from the elevator was fraught with danger as jet fuel streamed down the shaft. Id. ¶ 4. Virginia determined to escape from the elevator nonetheless, leaping through a wall of fire into the hallway seconds before the elevator plummeted to the ground. Id. Virginia realized her body was on fire, and rolled on the ground to extinguish the flames. Id. ¶ 5. A colleague helped her descend the 78 flights of stairs, and on the ground, Virginia was taken by ambulance to the hospital. Id. ¶¶ 5, 6. She suffered burns to approximately 47% of her body, a quarter of which consisted of third-degree burns. Id. ¶ 7. She suffered second-degree burns on her back and left side, from her shoulders to her fingertips on both arms, and on her face. Id. ¶ 7. Virginia has since undergone numerous operations, and suffers from severely limited range of motion, especially in her left arm and shoulder. Id. ¶ 11. Because these devastating injuries fall into the third category, including severe burns and loss of mobility, the Court recommends that Virginia DiChiara be awarded $12 million.

### C. Kathy Cordero

Kathy Cordero was at the Pentagon during the 9/11 attacks. ECF No. 5803-6, Kathy Cordero Decl. ¶ 1. Kathy was suddenly thrown across the office and covered in debris and jet fuel. Id. ¶ 4. She was trapped under sections of the ceiling that had fallen on her, but her colleague helped move the debris off and helped her escape. Id. Her arm was on fire, and orange

flames and thick black smoke were everywhere. Id. After making it outside to the courtyard, police officers took Kathy to the hospital, where she was put in a medically induced coma for six days. Id. ¶¶ 6, 7. Kathy suffered first, second, and third degree burns to her face and left arm, severe inhalation injuries, and injuries to her shoulder and spine from the debris that fell on her. Id. ¶ 8. She remained in the hospital until the end of September. Id. ¶ 9. Her left arm developed raised scars and abnormal pigmentation, white her forehead developed a hyperpigmentation. Id. ¶ 10. The inhalation injuries she suffered resulted in a permanent change to her voice, and left her unable to speak for extended periods of time. Id. The injuries to her left shoulder and spine cause her great pain and have limited her physical activities. Id. ¶ 11. Kathy has also been diagnosed with PTSD. Id. ¶ 14. Because these injuries fall into the third category, including severe burns, disfigurement, and mental health trauma, the Court recommends that Kathy Cordero be awarded $10 million.

### D. Edward A. Nicholls

Edward A. Nicholls was at the World Trade Center on September 11, 2001. ECF No. 5803-8, Edward A. Nicholls Decl. ¶ 1. Edward was on the 78th floor when the second plane hit, winding up face down on the floor. Id. ¶ 6. He could not feel his right arm. Id. After finding the stairs and taking them down to the 40th floor, he then took the elevator down to the lobby. Id. ¶¶ 11, 12. At the hospital, Edward first underwent surgery for an open abdominal wound. Id. ¶ 14. He then underwent multiple surgeries to repair the damage to his right arm and shoulder, including replacing the missing end of his humerus with a prosthetic, reconstructing the missing portions of his scapula, and repairing the remainder of his shoulder joint. Id. ¶ 16. He was discharged on September 28th. Id. Edward was determined to have lost 30% use of his arm and

the functionality will not return. Id. ¶ 20. Because the substantial loss of use of his arm falls into the third category, the Court recommends that Edward A. Nicholls be awarded $10 million.

### E. Valecia Parker

Valecia Parker was at the Pentagon during the 9/11 attacks. ECF No. 5803-10, Valecia Parker Decl. ¶ 1. When the plane crashed, the overhead foundations began to collapse and steel from higher levels of the structure crashed down on Valecia, rendering her unconscious. Id. ¶ 2. Upon regaining consciousness, she found herself covered in debris and drenched in jet fuel. Id. Valecia was taken to the hospital, suffering from a severe closed head injury, burns to her torso and legs, smoke inhalation, torn shoulder and back muscles, and a serious kidney infection. Id. ¶ 3. Her most serious and lasting injuries result from her closed head injuries, including PTSD, post-concussion syndrome, post-traumatic vestibulopathy, and convergence insufficiency. Id. She has lost cognitive functions including memory loss, difficulty with math, spelling, reading, problems with balance, dizziness, headaches, loss of urinary control and anxiety. Id. ¶ 4. Valecia continues to require treatment by a neurologist, neuropsychologist, ophthalmologist, rehabilitative medicine specialist, internist psychologist and psychiatrist. Id. ¶ 6.

The Court's review of Valecia's medical records suggests that she has "normal cognitive processes," ECF No. 5803-10 Ex. K at 2, and that her memory, basic attentional abilities, and executive functioning "all appear normal" and are "not consistent with those commonly found in brain injury clients," id. at 31. Because the most serious effects of her closed head injuries appear to have largely subsided, the Court does not find Valecia's injuries to be devastating. Her injuries fall into the second category, including burns, severe head injuries, and mental health trauma. Accordingly, the Court recommends that Valecia Parker be awarded $7 million.

## CONCLUSION

For the foregoing reasons, Plaintiffs should receive pain and suffering damages as follows:

| Number | Plaintiff | Pain and Suffering Damages |
|---|---|---|
| 1 | Ling N. Young | $12,000,000 |
| 2 | Virginia DiChiara | $12,000,000 |
| 3 | Kathy Cordero | $10,000,000 |
| 4 | Edward A. Nicholls | $10,000,000 |
| 5 | Valecia Parker | $7,000,000 |

Plaintiffs should also be awarded prejudgment interest on these damages from September 11, 2001, through the date of judgment, at a rate of 4.96 percent per annum, compounded annually. See ECF No. 3358, adopted by, ECF No. 3383.

Plaintiffs may apply for punitive damages, economic damages, or other damages at a later date consistent with any future rulings made by the Court on this issue. Any application for punitive damages should not be filed until after the Supreme Court has issued a decision in Opati v. Republic of Sudan, 139 S. Ct. 2771 (2019).

Any Burlingame Personal Injury Plaintiffs not appearing in this motion and who were not previously awarded damages may still submit applications for damages awards in later stages.

Finally, the Court recognizes that in order to participate in the next distribution from the United States Victims of State Sponsored Terrorism Fund ("VSSTF"), Plaintiffs must have a judgment by February 19, 2020. Accordingly, the Burlingame XI Plaintiffs are ORDERED to notify the Honorable George B. Daniels no later than **noon on Friday, February 14, 2020**, whether any plaintiff intends to file an objection. For claims for which no objections are

anticipated, the Court will issue judgments by the VSSTF deadline. For claims for which objections are filed, the Court will make every effort to address the objections by the VSSTF deadline, but a judgment cannot be guaranteed. And, to protect the due process rights of all parties, any objection timely filed within the 14-day period but after a judgment has been entered, will result in a stay of execution of the judgment until further order of the Court.

_____
SARAH NETBURN
United States Magistrate Judge

DATED: February 11, 2020
New York, New York

\*        \*        \*

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).