**MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES**
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

**VIA ECF**

February 21, 2020

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

     RE:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

    As this Court directed at the January 13, 2020 conference, the Plaintiffs' Executive Committees (PECs) submit Plaintiffs' positions on the disputed aspects of the proposed deposition protocol, which is attached hereto, together with three supporting attorney's declarations (one filed under seal) and exhibits. Plaintiffs respectfully ask the Court to hold a conference to address these disputes.

    **Disputes Relating to The Fact Discovery Deadlines – ¶ 7** Plaintiffs share the Court's desire to move forward with depositions expeditiously, and have undertaken significant efforts to schedule and conduct key depositions. However, Plaintiffs submit that fairness and justice require that the deposition schedule be linked to the Court's resolution of Plaintiffs' motions to compel directed to the Kingdom and FBI, and motions relating to the Kingdom's deponents. As set forth in our February 10, 2020 letter, which is incorporated by reference, Plaintiffs would be severely and irreparably prejudiced if required to go forward with key fact witness depositions before this Court decides the outstanding motions and Plaintiffs receive the additional relevant documents to which they are entitled.

    The Kingdom recently interjected an additional impediment to moving ahead with depositions by objecting to the testimony of the vast majority of current and former Saudi officials identified on Plaintiffs' witness list. The scope of these objections demonstrates the Kingdom's attempts to limit Plaintiffs' opportunities to obtain admissible evidence from knowledgeable witnesses. This circumstance increases the importance of ensuring that Plaintiffs obtain critical and relevant documents before undertaking key witness depositions.[1]

    The Kingdom and the FBI, not Plaintiffs, are responsible for the delays resulting from these unresolved disputes, and Plaintiffs should not be subjected to adverse consequences as a result of them. Plaintiffs have been aggressive in pursuing discovery from Saudi Arabia. That process has required motion practice, and the Court granted discovery sought by Plaintiffs' motions. Most recently, plaintiffs filed an additional motion to compel because the Kingdom failed to comply with this Court's July 22, 2019 Orders, and Saudi Arabia filed its own motion to limit searches required by the Court's January 3, 2020 Order. As to the FBI, the Plaintiffs served their subpoena nearly two years ago, sought leave to move to compel just a few months later, but motion practice was deferred at the FBI's request during its so-called core documents approach, and the production was delayed by the pace of the FBI's document

---

[1] Plaintiffs cannot proceed with depositions of key witnesses until they know which witnesses will be available. Only then can plaintiffs develop a coherent strategy and plan for conducting the depositions in reasoned sequence. It would be fundamentally unfair to require plaintiffs to proceed with the depositions of primary Saudi government actors without being afforded an opportunity to develop facts through testimony of other witnesses first.

Honorable Sarah Netburn
February 21, 2020
Page **2**

review, an intervening government shutdown, the FBI's apparent difficulty in locating relevant documents, the FBI's preference to consolidate all remaining disputes in an omnibus motion, and the government's request for a lengthy extension to move for a protective order. Plaintiffs have repeatedly pressed the government to respond more quickly, and unsuccessfully sought to expedite key briefing.

Plaintiffs' proposal that the deadline for completing fact depositions be linked to the resolution of these motions does not mean that depositions would be suspended. To the contrary, the deposition of Akram Alzamari is likely to proceed in March, and the deposition of Mohdar Abdullah is set to go forward in Sweden on March 3 and 4. In addition, the depositions of third parties that produced documents can proceed, as discussed below.

Saudi Arabia's proposal that the Court set a June 5, 2020 deadline for fact depositions is not only fundamentally unfair but unworkable. Indeed, Saudi Arabia has rendered it impossible to proceed by opposing the depositions of most of its officials on Plaintiffs' witness list. The Kingdom's proposed schedule also fails to account for basic realities and logistics. For instance, third-party witnesses are not under Plaintiffs' control, but are predominantly individuals who had relevant interactions with members of the hijackers' support network. These witnesses are likely to involve counsel after being subpoenaed, and negotiations will be necessary to arrange for their appearances. Plaintiffs also anticipate that many of these witnesses will be observant Muslims, who are unlikely to appear during Ramadan (the Kingdom's own proposal provides for no depositions during Ramadan). As a practical matter, the Kingdom's proposal effectively requires fact depositions to be complete by April 22.[2] This is not remotely realistic.[3] After the Court resolves the outstanding witness disputes, the parties can confer regarding the sequence of the depositions of the Saudi government witnesses, and those depositions can proceed within a specified number of days after resolution of the remaining discovery motions and production of relevant documents. In the interim, the pending depositions and those pertaining to documents produced by non-parties can proceed.

**Interim Deposition Deadlines - ¶¶ 7, 8, 24**  Saudi Arabia's proposal also includes interim deadlines, all based on its proposed June 5 deadline for completing fact depositions, for service of 30(b)(6) notices, and disclosure of third party deponents and declarants. Because these are tied to the June 5 deadline, they are unworkable. For instance, Plaintiffs do not control the third party witnesses, and do not know which may be amenable to testifying by declaration. Yet under Saudi Arabia's proposal, such declarants would need to be identified by March 20, 2020, well before there is any realistic chance of

---

[2] And immediately before Ramadan, several members of the PECs have vacations scheduled surrounding the Passover and Easter holidays.

[3] Even more fundamentally, the Kingdom's proposal schedule does not remotely afford sufficient time to accomplish the forty depositions contemplated by the Court's Order. Indeed, the Kingdom has already indicated that all of its witnesses will require an Arabic translator, meaning that each deposition we will span at least two days. This is likely to be true for many of the non-party witnesses as well. In addition, virtually all of the depositions will involve significant travel. Even assuming that only half of the witnesses require translators, and allocating only one travel day for each deposition based on the assumption they can be done in groups, the conduct of the 40 depositions contemplated by the Court's Order would cover 100 working days. That assumes a perfect process, no scheduling difficulties, and incorporates no down days (which itself is not possible). Despite these realities, the Kingdom is proposing a schedule that functionally allows 9 weeks (63 total days and only 45 business days) from the submission of the proposals on February 21. The fundamental illogic of this proposal indicates that it is not the least bit credible.

Honorable Sarah Netburn
February 21, 2020
Page **3**

working through this multi-step process, let alone the personal safety concerns of the third party witnesses addressed below.[4]

During the meet and confer, Saudi Arabia explained that it was principally interested in ensuring adequate notice to a 30(b)(6) witness for deposition, and sufficient notice of the identities of third party declarants and deponents to depose them. Plaintiffs do not seek to deprive Saudi Arabia of adequate notice, but the deadlines included in its proposal are linked to its unreasonable June 5 proposed deadline for completing fact depositions. During discussions, Saudi Arabia indicated that approximately 60 days would be adequate notice for a 30(b)(6) witness deposition notice. Plaintiffs submit that 21 days advance notice of a third party deposition is more than sufficient, and that identification of declarants 45 days prior to the close of discovery is more than adequate. Plaintiffs have offered language to this effect in the draft.

**Protections for Third Party Witnesses – ¶ 8** Plaintiffs should not be ordered to produce their list of 35 potential non-party witnesses, as that list constitutes the PECs' privileged work product. The Kingdom has no proper basis to demand production of such a list, nor is the Kingdom producing its own internal list of potential knowledgeable party or non-party witnesses. Saudi Arabia cannot claim prejudice, as under the protocol it will receive sufficient notice of the depositions that the Plaintiffs conduct of any non-party witness, and will also be timely served with any witness declarations that Plaintiffs may obtain. Plaintiffs referenced their non-party witness list in a prior submission to provide a basis for the Court to set the number of depositions, and at the January 13 hearing, this Court allowed Plaintiffs 15 non-party witness depositions. Since many of the 35 potential witnesses on Plaintiffs' list will not be deposed or provide declarations, there is no reason for them to be identified.

Moreover, as addressed in the PECs' accompanying declaration, non-party witnesses have raised serious and genuine concerns to the PECs about risks to their personal safety from Saudi Arabia once named as a witness. One witness reported that Saudi Arabia approached a family member of a witness directly and threatened reprisals from the Kingdom if the witness offered testimony. Maloney Dec. at ¶ 4. Witnesses have also raised concerns based on the murder of Jamal Khashoggi inside a Saudi Consulate in October 2018. *Id.* at ¶ 3. Plaintiffs reference some of the Saudi government conduct relevant to these concerns in the accompanying declaration. *Id.* at ¶¶ 9 - 25. The production of witness names at this time will needlessly chill Plaintiffs' efforts to obtain testimony and declarations from non-party witnesses, and may effectively block certain key testimony altogether. As part of the protocol, Plaintiffs have proposed a procedure to provide special protections for certain witnesses.

**Expert Disclosures** After considering the issue extensively, plaintiffs respectfully submit that the most appropriate approach to expert disclosures would be to require plaintiffs to provide expert witness disclosures in accordance with Fed. R. Civ. P. 26, forty-five days after the completion of fact discovery. Several considerations inform plaintiffs' position on this issue.

First, the Federal Rules and logic dictate that experts provide their testimony on the complete factual record. Requiring an expert to commit to testify on matters that are the subject of ongoing

---

[4] Plaintiffs' preference would be simply to depose the majority of these witnesses, which would be more efficient and require less time, and obviously allow Saudi Arabia to question the witness. The need to seek declarations from several is due to the limits Saudi Arabia has sought on the number of depositions.

Honorable Sarah Netburn
February 21, 2020
Page 4

discovery, and to certify the topics they will address in a future report, places both the consultants and Plaintiffs in an untenable position.  For good and obvious reasons, reputable consultants will understandably be reluctant to commit to address specific topics until given an opportunity to consider the entire record, including the deposition testimony of key witnesses.  As a corollary, an expert witness who did make such commitments before reviewing critical aspects of the factual record might expose herself to problematic cross-examination.  For these and other reasons, it would be unfair to name potential experts prior to completion of fact discovery.

Second, a preliminary identification of the names of plaintiffs' anticipated experts and the topics they may address would not advance the discovery process or the resolution of any potential dispute. Indeed, it is neither appropriate nor possible to assess whether expert testimony is admissible before the factual record has been developed and the proposed expert testimony has been offered.[5]

**Location of Depositions – ¶ 7**  As to the seven government official witnesses Saudi Arabia agrees should be deposed, one is a former employee resident in the United States subject to subpoena. Saudi Arabia agreed to produce four witnesses outside Saudi Arabia, but for some reason did not offer to make them available at any of the neutral presumptive deposition locations the Court identified in its previous protocol, even though the travel to those locations would in most cases be no more burdensome.  For example, Saudi Arabia has proposed that Bayoumi and another witness testify in Morocco, and offered no reason why those witnesses cannot instead appear in Madrid or London, given Bayoumi's travel history abroad over the past seven years.  Maloney Under Seal Dec. at ¶ 3.  For Thumairy, Saudi Arabia has suggested Bahrain, a client state of the Kingdom, despite Thumairy's history of foreign trips during the past six years. *Id.*[6]

---

[5] *See United States v. Roberts*, 2001 U.S. Dist. LEXIS 20577 (S.D.N.Y. Dec. 14, 2001) (ruling it was premature to assess whether a *Daubert* hearing is necessary where parties have not exchanged expert testimony and the government is in the process of interviewing potential experts); *Ausa Life Ins. Co. v. Dwyer*, 899 F. Supp. 1200 (S.D.N.Y. 1995) (declining to rule on plaintiffs' specific objections to expert testimony, as premature, where parties had not yet completed expert testimony because it is "simply impossible to foresee at this point what testimony the parties will actually seek to introduce at trial or in what context it will be presented. Especially in litigation as complicated as this, we are hesitant to rule in advance, and in the abstract, on the admissibility of particular pieces of evidence").

[6] In proposing that these witnesses appear at a presumptive location, the PECs reemphasize application of the factors the Court previously considered in setting presumptive locations (*see* Sept. 7, 2017 Hearing at 23 and ECF No. 3710 at 2-10), identifying (1) the relative safety and security concerns (deemed the paramount factor); (2) the parties' relative ability to bear the associated costs; (3) the relative burdens on counsel and witnesses; (4) the relative litigation efficiency (e.g., the number of people traveling, the volume of documents to be transported, the availability of litigation resources); and (5) the need for the court's availability to supervise depositions).  Those factors weigh at least as heavily now.  Plaintiffs are also compelled to raise a significant concern regarding Saudi Arabia's apparent retreat from statements made during a meet and confer early in the discovery process. Plaintiffs' discovery included a requests to identify the foreign locations where witnesses such as Bayoumi and Thumairy had recently traveled, in order to find neutral deposition locations.  Saudi counsel conveyed that they understood why plaintiffs sought that information, but assured the PECs that it would not be a problem.  At the time of those discussions, the deposition protocol for the merits and personal jurisdiction defendants was in place, and the PECs reasonably understood that Saudi Arabia would be making witnesses such as Bayoumi and Thumairy available at one of the presumptive locations listed in that protocol.  The PECs believe that Saudi Arabia has retreated from positions upon which the PECs relied in good faith, and should be required to make these witnesses (who have all agreed to travel) available at a presumptive deposition location.

Honorable Sarah Netburn
February 21, 2020
Page **5**

For two remaining witnesses, both current Saudi government employees, the Kingdom proposes that the depositions proceed in Saudi Arabia. As detailed in the accompanying declaration and Appendix 1, Saudi Arabia is not a proper location. Saudi Arabia has ruthlessly targeted persons that it considers as its adversaries, including the premeditated murder and dismemberment of Jamal Khashoggi in October 2018, and a series of cyberattacks in 2019, including one the infiltration of Twitter and another involving Amazon's CEO. All of these attacks have been traced to the highest levels of the Saudi government. The Plaintiffs were themselves targets of a Saudi government undercover operation involving the JASTA legislation in late 2016 and early 2017. The depositions should be conducted in a neutral and safe location, and not in a country where the PECs have to fear not only about their personal safety but for the security of their documents, work product information, and conversations.[7]

**Depositions to Decipher Third-Party Documents and Impeach Witness Statements Should Not Count Against the Limit – ¶ 21** First, while the parties agree that depositions to authenticate documents should not count against the limit, Plaintiffs anticipate they will also need non-substantive testimony to properly understand third party documents. For example, for Bayoumi's educational records at Keller University, Plaintiffs need testimony to explain certain codes used in those records (such as "W-8" and "N") which evidence whether he actually attended classes. Likewise, while Bayoumi produced "certificates" from "courses" he took at George Washington University, that school was unable to locate documents for Bayoumi, and a deposition is needed to explain this discrepancy.

Second, depositions necessary to impeach witness statements at other depositions should not count against the limit. Plaintiffs can endeavor to obtain declarations from these witnesses concerning prior inconsistent statements, but it is uncertain whether any declarations can be obtained since many of the prior statements were made to U.S. government officials who are subject to *Touhy* regulations.

**Additional time for translation – ¶ 42** Plaintiffs' actual experience in this litigation with conducting depositions with Arabic interpreters demonstrates that deposition time is at least doubled when interpreters are involved. Haefele Decl. at ¶¶ 4 - 14. The process necessarily results in more than 100% increase in the time required for a deposition, not accounting for the additional time required to resolve disputes regarding the translations. A proposal to increase by only 50% does not account for the actual time added to conduct Arabic translations.

**Saudi Arabia is Not Entitled to Conduct Additional Affirmative Depositions – ¶ 21** The Court should deny Saudi Arabia's 11th hour and guileful bid to conduct affirmative depositions. As this Court found, jurisdictional discovery was granted to allow Plaintiffs to obtain evidence, and did not include affirmative discovery by Saudi Arabia.[8] Indeed, the Kingdom has not previously offered any witness list or suggested that it had witnesses to depose. Consistent with these facts, the Court set a limit on *Plaintiffs'* depositions, and did not authorize affirmative depositions by Saudi Arabia.

---

[7] Finally, because Saudi Arabia has opposed depositions of most of the current and former witnesses on plaintiffs' list, it has not provided any information concerning possible deposition locations for those witnesses. For witnesses the Court directs Saudi Arabia to make available, plaintiffs stand ready to confer with the Kingdom concerning an appropriate location.

[8] The Court authorized discovery by only plaintiffs. ECF 3946 (March 28 Order) at 5 ("[T]his Court will exercise its discretion to allow *Plaintiffs'* limited jurisdictional discovery) (emphasis added); April 12, 2018 Hearing at 21 (the Court is allowing "*plaintiffs* to probe within each of those areas . . . that Judge Daniels identified.") (emphasis added); May 24 Hearing at 38-39 ("the Kingdom's request for discovery from the plaintiffs. . . is not appropriate").

Honorable Sarah Netburn
February 21, 2020
Page **6**

Respectfully submitted,

KREINDLER & KREINDLER, LLP

By: _/s/  Steven R. Pounian_
    Steven R. Pounian
    Andrew J. Maloney
    Kreindler & Kreindler, LLP
    750 Third Avenue
    New York, NY  10017
    Tel:  212-687-8181
    E-mail: jkreindler@kreindler.com

*On behalf of the MDL 1570 Plaintiffs' Exec.*
*Committees*

MOTLEY RICE LLC

By: _/s/  Robert T. Haefele_
    Robert T. Haefele
    Motley Rice LLC
    28 Bridgeside Boulevard
    Mount Pleasant, SC  29465
    Tel:  (843) 216-9184
    E-mail: rhaefele@motleyrice.com

*On behalf of the MDL 1570 Plaintiffs' Exec.*
*Committees*

cc:    The Honorable George B. Daniels (via ECF)
      All Counsel of Record (via ECF)

COZEN O'CONNOR

By: __/s/  Sean P. Carter__
    Sean P. Carter
    Cozen O'Connor
    One Liberty Place
    1650 Market Street, Suite 2800
    Philadelphia, PA  19103
    Tel: (215) 665-2105
    E-mail: scarter@cozen.com

*On behalf of the MDL 1570 Plaintiffs' Exec.*
*Committees*

LEGAL\44978034\1

Proposed Deposition Protocol

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
                                    )
IN RE:                              )    03-MDL-1570 (GBD) (SN)
TERRORIST ATTACKS ON                )    [PROPOSED] DEPOSITION PROTOCOL
SEPTEMBER 11, 2001                  )    ORDER #2
                                    )
```

SARAH NETBURN, United States Magistrate Judge:

1) On March 28, 2018, the Court denied Saudi Arabia's motion to dismiss (ECF No. 3946 at 7, 41), and authorized the Plaintiffs to engaged in "limited and targeted jurisdictional discovery" relating to their claims against Saudi Arabia. *Id.* at 23. On January 13, 2020, the Court directed the Plaintiffs and Saudi Arabia to meet and confer (*see* Tr. Jan. 13, 2020 Hearing at 35) regarding a deposition protocol governing fact depositions concerning the claims against Saudi Arabia.

2) This order sets forth the deposition protocols, between Plaintiffs, Saudi Arabia, and Dallah Avco (the "Parties"), applicable to depositions of all fact witnesses (including non-party witnesses and witnesses under Federal Rule of Civil Procedure 30(b)(6)) in the context of the authorized jurisdictional discovery concerning the claims against Saudi Arabia in these MDL Proceedings.

3) Nothing in this Order shall preclude any Party or witness to which or whom this Order applies from seeking to modify it later for good cause shown; prior to doing so, however, counsel shall meet and confer among themselves in a good-faith effort to reach agreement as to the appropriate scope of any modifications or revisions to this Order.

4) The term "Deposition Point Persons" refers collectively to the MDL Plaintiffs' Executive Committees co-chairs and liaison counsel (or their designees), counsel for defendant Kingdom of Saudi Arabia and Dallah Avco (or their designees), and (where known) counsel for the deponent.

5) The sides may stipulate to different arrangements or rules other than those specified in this Order.

## I.    **General Provisions**

6) The MDL Protective Order entered on October 3, 2006 (ECF No. 1900) and the Privacy Act Order and Protective Order for FBI Documents (ECF No. 4255), remain in effect to the extent that they are not in conflict with the provisions of this Order. Unless specifically modified herein, nothing in this order shall be construed to abrogate the Federal Rules of Civil Procedure or the Court's previous orders pertaining to the Parties entered in these MDL proceedings.

7)

| Plaintiffs' Proposal | Saudi Arabia's & Dallah Avco's Proposal. |
|---|---|
| The following outstanding motions regarding FBI and Saudi Arabia document discovery and Saudi Arabia witnesses shall be resolved before a deposition schedule is set with discovery deadlines. | The Parties shall complete all fact depositions on or before June 5, 2020. No extensions shall be granted absent a showing of good cause. |

a) Plaintiffs have outstanding document discovery requests regarding productions from Saudi Arabia and the FBI that are currently the subject of motion practice before the Court.

b) Plaintiffs have previously provided to Saudi Arabia and the Court a list of current and former employees of Saudi Arabia that Plaintiffs seek to depose. During the hearing on January 13, 2020, the Court indicated that the Court would allow 25 depositions of Kingdom officials (*see* Tr. Jan. 13, 2020 Hearing at 36). On February 3, 2020, Saudi Arabia responded to Plaintiffs indicating whether each witness is available for deposition and, if so, the Kingdom's preferred location of each deposition. The Kingdom's list identified only seven witnesses were available. The parties met and conferred regarding the witnesses, and have disputes that must be addressed to the Court.

|  |  |  |
|---|---|---|
| c) | Following the Court's ruling on the motions regarding FBI and Saudi Arabia document discovery and Saudi Arabia witnesses, the parties shall immediately meet and confer on a deposition schedule, and submit to the Court either agreed or disputed deposition schedule(s), and proposed discovery deadline(s). |  |
| d) | Depositions of third-party document custodians may commence immediately. |  |

8)

| Plaintiffs' Proposal | Saudi Arabia's & Dallah Avco's Proposal. |
|---|---|
| Plaintiffs will provide notices of the deposition of any non-party witness at least three weeks in advance of the deposition. With regard to certain depositions, Plaintiffs may meet and confer with counsel for Saudi Arabia, and file an appropriate application with the Court if necessary, to establish safeguards necessary to protect the witness and testimony. | Plaintiffs have previously provided to Saudi Arabia and the Court a list of current and former employees of Saudi Arabia that Plaintiffs seek to depose. On February 3, 2020, Saudi Arabia responded to Plaintiffs indicating whether each witness is available for deposition and, if so, the location of each deposition.<br><br>Plaintiffs shall identify all non-party witnesses that they intend to depose no later than February 28, 2020. |

9)   The Parties shall identify any fact witnesses from whom they have reason to expect they will present a declaration 45 days before the deadline for fact depositions, and if requested, provide the addresses of those witnesses so that they may be subpoenaed for deposition or arrange for service of deposition subpoenas by the other side. The parties shall promptly supplement such identification if additional witnesses become amenable to submitting declarations, and the other side shall be afforded an opportunity to depose the declarant.

| Plaintiffs' Proposal | Saudi Arabia's & Dallah Avco's Proposal. |
|---|---|
| Any declaration from such a witness shall be produced 14 days prior to that witness's deposition. No fact witness declaration (other than a declaration to establish authenticity or admissibility of documents) may be used with respect to jurisdictional proceedings following the close of discovery, whether related to a renewed motion to dismiss, evidentiary hearing, or other process, if the other side has not been afforded a reasonable opportunity to depose the declarant. | Any declaration from such a witness shall be produced on the earlier of: (a) 14 days prior to that witness's deposition; or (b) 30 days before the deadline for fact depositions. No fact witness declaration (other than a declaration to establish authenticity or admissibility of documents) may be used with respect to the renewed motion to dismiss, if the other side has not been afforded a reasonable opportunity to depose the declarant or if the declaration is not produced by the deadline set forth in this paragraph. |

## II.   Deposition Notices, Scheduling, and Logistics

10) All deposition notices and deposition subpoenas shall comply with the Federal Rules of Civil Procedure and this Order. This Order, in its entirety, shall be attached to any subpoena or deposition notice for a non-party's deposition

11) Notices for Depositions shall be served by e-mail, facsimile, or other electronic means on Deposition Point Persons.

12) Deposition Point Persons shall confer before noticing or subpoenaing a deposition in an effort to schedule depositions for mutually convenient dates and times. To the extent that a proposed witness is unable to be deposed on the noticed date of his or her deposition, Deposition Point Persons shall promptly confer to discuss alternative dates.

13) Deposition Point Persons are expected to cooperate and coordinate the scheduling of depositions in an effort to accommodate all counsel and Parties and to schedule the depositions in the most efficient manner feasible regarding date and time. With respect to non-party witnesses, the Deposition Point Persons will also cooperate and coordinate regarding location. Toward that goal, the Deposition Point Persons shall periodically meet and confer to develop a plan for scheduling depositions that will maximize efficiency and control costs by attempting to schedule witnesses to be deposed in blocks of time, especially where the depositions are scheduled to occur outside of the United States.

14) To ensure the expeditious progress, in the event that the Deposition Point Persons are unable to reach agreements—either advance agreement on dates and times (and, with

4

respect to non-party witnesses, locations), or agreement as to blocks of depositions to be scheduled—the noticing Party may notice the deposition in accordance with this Order; should any other Party or the witness maintain a need for relief thereon, such request for relief shall be submitted promptly for judicial resolution.

15) To allow for planning, preparation, and coordination, fact depositions of witnesses residing in the United States must be noticed at least fourteen (14) days before they are scheduled to occur. Because additional planning, preparation, coordination, and travel is attendant to depositions conducted outside the United States, depositions outside of the United States must be noticed at least twenty-one (21) days before they are scheduled to occur.

16) Expedited depositions may be scheduled by agreement of the Deposition Point Persons in writing or as ordered by the MDL Court, and in which event the time limitations for notice may be lessened, as well as the time limitation for production of any documents sought by third-party subpoena in conjunction with such a deposition.

17) In the absence of agreement, for witnesses who reside or work in the United States, a deposition may take place within (a) the county in which the deponent resides, (b) the county in which the deponent is employed, (c) the judicial district of the MDL Court, or (d) a mutually agreeable location.

18)

| Plaintiffs' Proposal | Saudi Arabia's & Dallah Avco's Proposal. |
|---|---|
| The parties are submitting motions to the court addressing disputes as to certain proposed deponents, including as to locations. The parties will be guided by the Court's holdings on those motions, as to location and other relevant issues. Plaintiffs' core proposal is:<br><br>For each current or former official of Saudi Arabia who is being deposed, Saudi Arabia shall provide a list of all location(s) outside of Saudi Arabia that each such witness has travelled from 2010 to date.<br><br>For those witnesses who reside outside of the United States, a deposition shall take place in New York, New York; London, United Kingdom; Madrid, Spain; and Rome, Italy (collectively, "Presumptively Acceptable Locations"). Notwithstanding | For each current or former official of Saudi Arabia who is being deposed, Saudi Arabia has already provided locations (if any) outside of Saudi Arabia where the witness is willing to be deposed.<br><br>If a Party's counsel is unable or unwilling to travel to the location of a deposition that deposition may proceed by videoconference. |

the preceding sentence, upon agreement of the Parties, a deposition may take place in some location other than those four Presumptively Acceptable Locations, including one of the locations where the witness travelled from 2010 to date. Locations covered by a "Travel Warning" by the U.S. State Department may be inappropriate locations for conducting depositions and the Parties should meet and confer to ensure a safe location. The Parties should also discuss any applicable local laws that may affect the taking of the deposition.

If the Parties and deponent agree, the deposition may be taken by videoconference.

19) The costs of a deposition venue of reasonable size (as necessary to accommodate up to fifteen people) and, if applicable, the costs of securing a court reporter shall be borne by the Party noticing the deposition.

20)

| Plaintiffs' Proposal | Saudi Arabia's & Dallah Avco's Proposal. |
|---|---|
| Given the pending motions, document discovery remains ongoing. For any notice of deposition where there is an accompanying request for the production of documents, the producing Party shall, within seven (7) days of receipt of such notice, alert counsel for the noticing Party and the Deposition Point Persons of any reason that the requested documents cannot be produced a minimum of seven (7) days prior to the date noticed for the deposition. As to each witness, where a curriculum vitae or comparable document exists, the witness or the witness's counsel shall produce the document at least seven days before the date originally noticed for the witness's deposition. | Written discovery is closed. For current and former employees of Saudi Arabia, Saudi Arabia will request that the witness voluntarily produce a curriculum vitae seven (7) days before the deposition. |

| Plaintiffs may demand the production of documents that are identified during the course of a deposition, and the parties shall meet and confer regarding any disputes, and file any motions, if necessary with the Court. | |
|---|---|

## III.   Number of depositions allowed

21) During the hearing on January 13, 2020, the Court ordered that Plaintiffs shall take no more than twenty-five (25) depositions of current or former employees of Saudi Arabia and fifteen (15) depositions of all other fact witnesses and that Plaintiffs' prior depositions of Khalil Al Khalil and Osman Kaldrim will count against Plaintiffs' 15-deposition limit. Notwithstanding these limitations, depositions for the principal purpose of authenticating documents are not counted against the Parties' limit.

| Plaintiffs' Proposal | Saudi Arabia's & Dallah Avco's Proposal. |
|---|---|
| For the reasons stated in Plaintiffs' accompanying letter, Saudi Arabia is permitted to depose Plaintiffs' deponents or declarants, but the Court has not granted and should not grant Saudi Arabia the right to conduct additional affirmative depositions.  To the extent that Plaintiffs do not depose 25 current or former employees of Saudi Arabia, Plaintiffs shall be entitled to conduct additional depositions of fact witnesses. Notwithstanding these limitations, depositions for the principal purposes of (a) obtaining testimony necessary to assess the meaning and import of documents provided by non-parties; or (b) impeaching the deposition testimony of another witness based on a prior statement, are not counted against the parties' limit.  In addition, depositions conducted for purposes of Plaintiffs' discovery disputes with the FBI, including any deposition of | Saudi Arabia will be subject to the same deposition limits as Plaintiffs.  All depositions (other than depositions to establish authenticity or admissibility of documents) will count against the parties' deposition limits. |

| an FBI records custodian, shall not count against these limits.  Further, depositions of declarants offered by Saudi Arabia or Dallah Avco shall not count against this limit. | |

22) Unless otherwise agreed to by the Parties or ordered by the Court, depositions shall not be taken on days that would interfere with a deponent's religious observances.  In addition, counsel and Parties shall also use their best efforts to accommodate any conflict due to religious observance of witnesses (including Ramadan) and of counsel whose participation in the deposition is necessary.

23) All fact witnesses may be deposed only once unless (i) otherwise agreed to in writing by both sides or (ii) authorized by an order of the MDL Court upon a showing of good cause by the Party seeking the additional deposition.

24) Plaintiffs may serve a single 30(b)(6) notice on Saudi Arabia listing all topics on which Plaintiffs seek 30(b)(6) testimony.  To the extent Plaintiffs intend to serve any 30(b)(6) notice, it must be served no later than 8 weeks before the close of the fact deposition period.  The 30(b)(6) deposition will count against Plaintiffs' 25-deposition limit for current and former employees of Saudi Arabia.

25) A witness may be deposed once in his individual capacity and separately if designated as 30(b)(6) representative.

### IV.    *Touhy* Requests

26) Access to the testimony of a current or former government employee is often restricted by U.S. or state law or regulation and may only proceed with government permission upon request (a "*Touhy* request").  Prior to the submission of any Touhy request, the Parties shall meet and confer on the subjects to be included in such request so that the request includes all topics desired by both sides.  All Touhy requests will separately indicate the testimony requested by Plaintiffs and the testimony requested by Defendants.

### V.    Rescheduling and Resolution of Deposition Disputes

27) Any disputes regarding the timing or scheduling of the deposition or any other objections to a deposition shall be resolved through the procedures stated in ECF No 3894, paragraphs 40-46.

### VI.    Recording

28) Each witness, attorney, and other person attending the deposition (in person, electronically, or telephonically) shall be identified on the record at the commencement of the deposition. The videotape recording shall include the court reporter administering

the oath or affirmation to the witness. Thereafter, the deponent and, if necessary, exhibits and any demonstratives will be videotaped.

29)   The videotape operator shall use recording equipment with an appropriate timer and, unless otherwise agreed to by the Parties, shall prepare and provide counsel with a log, cross-referenced with timestamps, that identifies the portion of the recording at which examination by different counsel begins and ends and when there is any interruption of continuous tape recording, whether for recess, "off the record" discussions by counsel, mechanical failure, or other interruption.

30)   Video recording will be suspended during all "off the record" discussions and the video operator shall note such suspensions.

## VII.   Attendance

31)   Unless otherwise agreed to by the Parties or ordered under Federal Rule of Civil Procedure 26(c) and subject to the terms of the MDL Protective Order (ECF No. 1900) and the Privacy Act and Protective Order for FBI Documents (ECF No. 4255), depositions may be attended (either in person or remotely) only by the witness, counsel for the witness, attorneys of record in the MDL Proceeding and their staff, court reporters, videographers, translators, and the Parties' in-house counsel.  All persons in attendance (either in person or remotely) must be noted on the deposition record.

| Plaintiffs' Proposal | Saudi Arabia's & Dallah Avco's Proposal. |
|---|---|
| It is anticipated that a party representative will be permitted to attend depositions, subject to the limitations of the FBI Protective Order, provided, however, that the party seeking to include its representative shall identify the name and position of the representative who plans to attend at least 20 days in advance of the deposition, and the parties shall confer in the event there are any objections to the representative's attendance.  Any disputes relating to a representative's attendance shall be presented to the Court in a letter, not to exceed 3 pages, at least 10 days in advance of the deposition. | Saudi Arabia's and Dallah Avco's party representatives may attend depositions. |

32) Upon motion, and for good cause shown, the MDL Court may permit attendance by a person who does not fall within any of the categories above or prohibit attendance by a person who does fall within any of the categories.

33) While a deponent is being examined about any information subject to the MDL Protective Order (ECF No. 1900) or the Privacy Act and Protective Order for FBI Documents (ECF No. 4255), persons to whom disclosure is not authorized shall be excluded.

34) A witness (other than a Party) who appears on any Party's list of witnesses to be deposed is prohibited from attending other depositions in the MDL Proceeding prior to the taking of that witness' own deposition.

35) The Plaintiffs' Executive Committees shall designate an attorney to serve as the lead examiner to conduct the principal examination of each deponent on behalf of the MDL Plaintiffs.

36) Given deposition time limits and in the interest of efficiency, the Plaintiffs' Executive Committees shall designate the attorneys to examine each witness, and the Court encourages the Committees to designate no more than three attorneys to serve as the examiners of each deponent on behalf of all Plaintiffs.

37) Plaintiffs' Counsel shall diligently work together to ensure that questioning on behalf of Plaintiffs in the MDL proceeds in the most efficient manner possible.

38) All counsel shall use reasonable efforts not to ask duplicative questions of a witness.

## VIII.   Remote Participation

39) Remote participation of interested counsel shall be governed by the procedures stated in ECF No 3894, paragraphs 71-74.

## IX.   Duration of Depositions

40) All questioning by the noticing side shall be limited to seven (7) hours. The non-noticing side of the deposition will also be permitted to question the witness for up to seven (7) hours. The noticing side may have additional time to address any subjects and/or answers that are raised for the first time during the questioning by the non-noticing side, and the non-noticing side may also have an equal time for questioning thereafter. Plaintiffs state that, as provided in Fed. R. Civ. P. 30(d)(1), additional time consistent with Rule 26(b)(1) and (2) will be needed to fairly examine various deponents, including Fahad al-Thumairy, Omar al-Bayoumi, Musaed al-Jarrah, and Smail Mana. Saudi Arabia is willing to meet and confer with Plaintiffs regarding this request, once Plaintiffs have a concrete proposal.

41) During the scheduling of a deposition, prior to noticing a deposition, if a side believes there is an exception to the seven-hour limitation, then the parties shall meet and confer to reach an agreement. Absent agreement, this issue must be briefed and decided by the

Court. To the extent the non-noticing side for a deposition reasonably anticipates that its questioning of the witness will exceed ninety minutes, it will provide notice at least ten (10) days before the scheduled deposition, so arrangements can be made for the deposition to continue into an additional day, if necessary; provided, however, that this provision shall not be interpreted to preclude any Party on the non-noticing side from questioning a witness for the time that Party may deem necessary up to its limit of seven (7) hours. The Parties may, by agreement, modify this provision in the context of a particular deposition as may be appropriate to facilitate to enhance coordination.

42) The time limits for a deposition set forth above shall be based on the actual time spent in examining the witness. Time spent on attorney colloquy and breaks (including for lunch) shall not be counted toward the time limit. Colloquy regarding translations shall be excluded from calculation of time.

| Plaintiffs' Proposal | Saudi Arabia & Dallah Avco's Proposal. |
|---|---|
| All time limits for depositions shall be increased by one hundred percent (100%) in the event that the witness requires a translator. | All time limits for depositions shall be increased by 50 percent (50%) in the event that the witness requires a translator. |

## X.   Examination, Objections, Confidentiality, Consultation

43) All objections, except those as to form, foundation, manner of taking the deposition, and privilege, are reserved until trial or other use of the depositions.

44) Counsel shall state all objections in a concise, nonargumentative, and nonsuggestive manner—i.e., counsel shall not make objections or statements in order to suggest an answer to a witness. Counsel shall not engage in colloquy in objecting to a question or responding to an objection. The phrases "objection as to form," "objection as to foundation," or similar language are sufficient and shall preserve all objections as to form and foundation until a Party seeks to use a deposition. To prevent a deponent from being improperly guided by objections and other colloquy, and to reduce the time to complete depositions, objections and colloquy shall not be translated by the translator unless necessary to afford the witness proper direction.

45) If a deposition is cross-noticed, the Parties shall confer in good faith about the order of examination.

46) Any objection raised by one Party is preserved as to all other Parties on that side. Counsel for other Parties should avoid repeating the objection. To determine whether there is a need to cure a defect in a question, counsel conducting the examination may ask the attorney lodging the form or foundation objection to identify the specific defect. If an explanation for the basis of the objection is requested, objecting counsel shall explain the

basis for the objection. Nothing herein shall prohibit counsel for a Party or for the deponent from objecting to preserve a privilege or confidentiality, to identify an ostensible mistranslation, or to enforce a limitation imposed by court order, law, or rule.

47) A deponent may be instructed not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the MDL Court, or to present a motion under Rule 30(d)(3).

48) When a question is pending, the witness must first answer the question before consulting with counsel, except that a witness may consult with counsel at any time for the purpose of (a) determining whether a privilege or immunity exists, (b) determining whether disclosure of information may violate an order of the MDL Court or another court or may violate any other law, rule, or restriction, or (c) addressing an issue regarding confidentiality or whether the information sought is subject to an applicable protective order. Such consultations are attorney-client privileged and work product protected. Attorney-witness conferences should be kept to a minimum and should not be employed to coach the witness or otherwise improperly shape the witness's testimony.

49) When a privilege or protection is claimed, to the extent a witness is able to answer questions relevant to the existence, extent, or waiver of the privilege (such as the date of a communication, who made the statement, to whom and in whose presence the statement was made, other persons to whom the contents of the statement have been disclosed, and such other information as may be necessary to determine the nature of the purportedly privileged communication), without waiving the privilege or protection, the witness should do so.

50) Treatment of Confidential Information in depositions is governed by section G of the MDL Protective Order (ECF No. 1900) and the Privacy Act and Protective Order for FBI Documents (ECF No. 4255).

## XI.    **Interpreters**

51) For witnesses who require a translator, the noticing Party bears the cost of securing a qualified and official neutral translator for the deposition. In addition, counsel for any Party may bring its own translator to the deposition for the purpose of assisting that counsel.

52) Absent the Parties' agreement, for any witness who, at least fourteen (14) days before the deposition, states that he or she lacks sufficient familiarity with English to understand questions asked in English or to respond to questions in English, the Parties will secure a neutral interpreter. Counsel for the witness or defending Party shall promptly, but in any event no less than fourteen (14) days before the deposition, notify the Deposition Point Persons if a witness will require the use of an interpreter during a deposition.

53) If a Fact Witness does not indicate the need for an interpreter but then demonstrates an inability or unwillingness to respond to questions due to alleged language difficulty, any

Party may bring the issue to the attention of the MDL Court so that a proper remedy may be fashioned.

54) In the event that a Party or witness objects to a translation of the translator, the objecting Party has the right to raise its objection on the record to the translation, affording the opportunity for correction, and may file an errata sheet within sixty (60) days after the date that the transcript is received by counsel for the Party or the witness. Colloquy regarding translations is excluded from the parties' allotted time for questioning and are not to be used to lead or otherwise coach a witness.

| Plaintiffs' Proposal | Saudi Arabia's & Dallah Avco's Proposal. |
| --- | --- |
| To the extent that the errata sheet substantively changes the witness's answer, the witness shall be made available to address the revised answer. | No witness shall be recalled for additional testimony absent a showing of good cause. |

55) Any objection to a translation must be mindful of the requirements of Federal Rule of Civil Procedure 30(c)(2). Counsel shall refrain from argumentative or suggestive objections, and colloquy in the witness's presence shall be kept to a minimum.

56) In the event that a Party or witness objects to repeated mistranslations at a deposition, that Party or witness may, after meeting and conferring with the other Parties attending the deposition, stop the deposition and seek relief from the MDL Court and a continuation of the deposition with another translator.

## XII.   **Provision of Documents**

57) All documents marked as exhibits will be attached to the original transcript and will be retained with the original transcript. The court reporter for each deposition will include in each deposition transcript a list of the exhibits referenced in the deposition.

58) During a deposition, copies of documents about which counsel plan to examine the deponent shall be provided to counsel for the deponent and counsel for the other Party participants. As a general rule, hard copies of the documents should be made available to the deponent, the deponent's attorney, and the principal examiners of the deponent. The documents may be provided to other attendees on electronic media such as CDs, DVDs, or USB drives. To the extent possible, all exhibits should have printed Bates or other document control numbers affixed before distribution, which shall remain constant throughout the litigation.

59) Counsel shall use best efforts to mark exhibits sequentially and shall attempt to use previously marked exhibits in subsequent depositions rather than re-marking the same documents with different exhibit numbers.

60) Objections to the relevance or admissibility of documents used as deposition exhibits are not waived, and are reserved for later ruling by the MDL Court.

61) If a Party chooses to use a document that is a translation of a foreign language document by showing it to the witness or by quoting from the translation at the deposition, the Party must also provide to the witness and other counsel a copy of the original foreign language document.

## XIII.    Transcript and Time to Review Transcript

62) Notwithstanding the Privacy Act and Protective Order for FBI Documents (ECF No. 4255), the Parties shall be permitted to disclose Protected Information (as defined in that Order) to a witness in preparation for a deposition or at a deposition if that Protected Information: (a) purports to summarize the substance of an interview of the deponent; (b) purports to summarize the substance of an interview or portion of an interview of another witness and references the witness; (c) is a phone or bank record or portion thereof referencing the witness; (d) is a document that was at one time in the possession of the witness; or (e) contradicts an interview statement of the deponent.  The witness must execute the acknowledgement attached to the Privacy Act and Protective Order for FBI Documents before the disclosure of the Protected Information specified above. Nothing in this provision shall be construed to limit permitted uses of Protected Information pursuant to the FBI Protective Order.

63) All confidentiality designations of deposition testimony shall be made as authorized by the MDL Protective Order (ECF No. 1900) and the Privacy Act and Protective Order for FBI Documents (ECF No. 4255).  Notwithstanding the terms of those Orders, the following shall apply to confidentiality designations of deposition testimony.  The deposition transcript and video recording will be treated as confidential under the MDL Protective Order (ECF No. 1900) for ninety (90) days following the deposition, and such confidentiality shall continue as to those portions of the deposition designated confidential by a Party or witness within ninety (90) days after the deposition. Notice of such confidentiality designations shall be made in writing to the court reporter, with copies to the Deposition Point Persons, specifying the portion(s) of the transcript and exhibits that constitute or contain Confidential Information or Material and are to be marked as Confidential.

64) Unless waived by the deponent, the deposition transcript shall be submitted to the deponent for correction and signature, and shall be corrected and signed before any notary or certified under penalty of perjury within sixty (60) days after the date that the transcript is received by counsel for the witness.  The Parties may agree to reasonable extensions of this deadline.

65) Corrections to a deposition shall be listed on an errata sheet signed by the deponent and the court reporter shall serve copies of the errata sheet on all Parties and counsel for the deponent if the deponent is not a party purchasing the transcript. Should the deponent fail to submit corrections within sixty (60) days, the transcript will be presumed accurate, and all Parties shall have the right to use the copy sent to the deponent as if it were final and signed with no corrections needed. Parties in jurisdictions where rules do not provide for correction and signing of a deposition transcript reserve their objections to corrections made pursuant to this procedure.

**XIV.**   <u>**Witness Claim to Alternate Procedures**</u>

66) To the extent that any Party anticipates a witness asserting that applicable law requires a procedure other than that set forth herein or under the Federal Rules of Civil Procedure, the Party aware of the issue shall promptly notify all other Parties in writing. The Parties shall thereafter meet and confer in an effort to timely resolve the matter among the Parties so as to minimize any disruption to the scheduling of the deposition. To the extent the Parties are unable to resolve the issue, the matter shall be promptly presented for judicial resolution.