**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD / SN)<br><br>ECF Case |

This document relates to:

*Estate of John P. O'Neill, Sr. v. Al Baraka Investment & Devel. Corp.,*
*04-cv-01923*

**JOINT MEMORANDUM OF LAW IN OPPOSITION**
**TO**
**THE *O'NEILL* PLAINTIFFS' MOTION**
<u>**FOR CLASS CERTIFICATION AND RELATED RELIEF**</u>

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

BACKGROUND ..................................................................................................... 3

    A.    The Pursuit of Remedies for the 9/11 Attacks ...................................... 3

    B.    The *O'Neill* Plaintiffs' Claims ............................................................ 5

    C.    The *O'Neill* Plaintiffs' Proposed Class ............................................... 6

ARGUMENT .......................................................................................................... 7

I.    The *O'Neill* Plaintiffs' Class Certification Motion Fails to Establish that Common Questions Predominate over Individual Issues. .................................................. 9

    A.    The *O'Neill* Plaintiffs ignore the individualized issues involving statutes of limitations and the laws governing their "common law" claims. ......................... 10

    B.    The *O'Neill* Plaintiffs ignore the individualized question whether putative class members have standing under the Anti-Terrorism Act. .............................. 13

    C.    The *O'Neill* Plaintiffs ignore the individualized question of waiver of claims through participation in the VCF. ........................................................ 13

    D.    The *O'Neill* Plaintiffs avoid the individualized question of damages. ................ 15

II.    The *O'Neill* Plaintiffs' Class Certification Motion Fails to Establish that a Class Action is a Superior Method of Adjudicating Claims that this Court Long Has Managed Effectively in this Multi-District Litigation. .................................................. 17

    A.    As the long and unjustified delay in bringing this motion helps to show, the proposed class is unmanageable and will increase delay ..................................... 18

    B.    Individual claimants have strong incentives to litigate their own cases, as they have been doing. ......................................................................... 22

III.    The *O'Neill* Plaintiffs' Motion Also Fails to Satisfy All Elements of Rule 23(a). ........... 23

CONCLUSION ...................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
 687 F. App'x 10 (2d Cir. 2017) ..................................................................................19

*Acuar v. Letourneau*,
 531 S.E.2d 316 (Va. 2000) ........................................................................................16

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 614 (1997) ..................................................................................................22

*Aquilino v. Philadelphia Catholic Archdiocese*,
 884 A.2d 1269 (Pa. Super. Ct. 2005) ........................................................................11

*AroChem Int'l, Inc. v. Buirkle*,
 968 F.2d 266 (2d Cir. 1992) ......................................................................................12

*Averbach v. Cairo Amman Bank*,
 2020 WL 486860 (S.D.N.Y. Jan. 21, 2020) .............................................................13

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
 222 F.3d 52 (2d Cir. 2000) ........................................................................................24

*Bennett v. Hannelore Enters., Ltd.*,
 296 F. Supp. 2d 406 (E.D.N.Y. 2003) .......................................................................10

*Braune v. Abbott Labs.*,
 895 F. Supp. 530 (E.D.N.Y. 1995) ............................................................................10

*Brecher v. Republic of Argentina*,
 802 F.3d 303 (2d Cir. 2015)......................................................................................21

*Causey v. Pan Am. World Airways, Inc.*,
 66 F.R.D. 392 (E.D. Va. 1975) ................................................................13, 19, 22

*Comcast Corp. v. Behrend*,
 569 U.S. 27 (2013)................................................................................................7, 8

*Curley v. AMR Corp.*,
 153 F.3d 5 (2d Cir. 1998) ..........................................................................................12

*Devore v. Pfizer Inc.*,
 58 A.D.3d 138 (1st Dep't 2008) ................................................................................12

*Duprey v. Conn. Dep't of Motor Vehicles*,
 191 F.R.D. 329 (D. Conn. 2000)................................................................................11

*Eisen v. Carlisle & Jacquelin*,
 417 U.S. 156 (1974)...................................................................................................18

*Gordon v. Sonar Capital Mgmt. LLC*,
 92 F. Supp. 3d 193 (S.D.N.Y. 2015).....................................................................24, 25

*Hallet v. Li & Fung, Ltd.*,
 1997 WL 621111 (S.D.N.Y. Oct. 6, 1997) ...............................................................24

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ................................................................................................8

*Hobbs v. Ne. Airlines, Inc.*,
50 F.R.D. 76 (E.D. Pa. 1970) ...............................................................................19

*In re Agent Orange Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984) .......................................................................11

*In re Chiquita Brands Int'l Inc. Alien Tort Statute & S'holders Derivative Litig.*,
331 F.R.D. 675 (S.D. Fla. 2019) ..........................................................................20

*In re Citigroup Inc. Sec. Litig.*,
987 F. Supp. 2d 377 (S.D.N.Y. 2013) ..................................................................12

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
299 F. Supp. 3d 430 (S.D.N.Y. 2018) ........................................................ *passim*

*In re Literary Works in Elec. Databases Copyright Litig.*,
654 F.3d 242 (2d Cir. 2011) .................................................................................24

*In re NYSE Specialists Sec. Litig.*,
260 F.R.D. 55 (S.D.N.Y. 2009) ...........................................................................24

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017) ...............................................................................8, 9

*In re Pfizer Inc. Sec. Litig.*,
282 F.R.D. 38 (S.D.N.Y. 2012) ...........................................................................21

*In re September 11th Litig.*,
2004 WL 1320897 (S.D.N.Y. June 10, 2004) .......................................................14

*In re Ski Train Fire in Kaprun, Austria, on November 11, 2000*,
220 F.R.D. 195 (S.D.N.Y. 2003) .........................................................................20

*In re Terrorist Attacks on September 11, 2001*,
392 F. Supp. 2d 539 (S.D.N.Y. 2005) ...............................................................5, 6

*In re Terrorist Attacks on September 11, 2001*,
740 F. Supp. 2d 494 (S.D.N.Y. 2010) ...............................................................5, 6

*In re Terrorist Attacks on September 11, 2001*,
714 F.3d 659 (2d Cir. 2013) ...................................................................................5

*In re Terrorist Attacks on September 11, 2001*,
718 F. Supp. 2d 456 (S.D.N.Y. 2010) ...............................................................5, 6

*In re U.S. Foodservice Inc. Pricing Litig.*,
729 F.3d 108 (2d Cir. 2013) ...........................................................................11, 12

*In re Vitamin C Antitrust Litig.*,
279 F.R.D. 279 (E.D.N.Y. 2012) .........................................................................21

*In re Zyprexa Prod. Liab. Litig.*,
253 F.R.D. 69 (E.D.N.Y. 2008) ...........................................................................20

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Jensen v. Cablevision Sys. Corp.*,
   372 F. Supp. 3d 95 (E.D.N.Y. 2019) ....................................................................23

*Johnson v. Beane*,
   664 A.2d 96 (Pa. 1995) ........................................................................................16

*Johnson v. Nextel Commc'ns Inc.*,
   780 F.3d 128 (2d Cir. 2015).......................................................................... *passim*

*Kaplan v. Lebanese Canadian Bank, SAL*,
   405 F. Supp. 3d 525 (S.D.N.Y. 2019)...................................................................6

*Kern v. Siemens Corp.*,
   393 F.3d 120 (2d Cir. 2004)..................................................................................21

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
   897 F.3d 88 (2d Cir. 2018)............................................................................ *passim*

*Leider v. Ralfe*,
   2003 WL 22339305 (S.D.N.Y. Oct. 10, 2003) .....................................................8

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   739 F.3d 45 (2d Cir. 2013)....................................................................................12

*Linde v. Arab Bank, PLC*,
   882 F.3d 314 (2d Cir. 2018)............................................................................6, 14

*Matharu v. Muir*,
   86 A.3d 250 (Pa. Super. Ct. 2014).......................................................................11

*McLaughlin v. Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008).............................................................................10, 15

*Munoz v. PHH Corp.*,
   2013 WL 2146925 (E.D. Cal. May 15, 2013) .....................................................25

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010)...................................................................................8

*Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*,
   324 F. Supp. 3d 387 (S.D.N.Y. 2018)..................................................................10

*Stutz v. Guardian Cab Corp.*,
   273 A.D. 4 (1st Dep't 1947) .................................................................................11

*UFCW Local 1776 v. Eli Lilly & Co.*,
   620 F.3d 121 (2d Cir. 2010)..................................................................................20

*United States v. Charmer Industr., Inc.*,
   1981 WL 2098 (E.D.N.Y. 1981)..........................................................................22

*United States v. Svoboda*,
   347 F.3d 471 (2d Cir. 2003)..................................................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)..........................................................................................7, 8

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Yong Wen Mo v. Gee Ming Chan,*
  17 A.D.3d 356 (2d Dep't 2005) ............................................................................11

Sᴛᴀᴛᴜᴛᴇs

18 U.S.C. § 2333 .................................................................................................6, 13, 23

28 U.S.C. § 1407 ..............................................................................................................3

N.Y. CPLR § 202 ...................................................................................................10, 11

N.Y. CPLR § 4545 .........................................................................................................16

N.Y. Est. Powers & Trusts L. § 5-4.1 ..........................................................................11

Air Transp. Safety & System Stabilization Act § 405(a)(1),
  Pub. L. No. 107-42, 115 Stat. 230 (2001)
  (codified as amended at 49 U.S.C. § 40101 note) ........................................ *passim*

Va. Code § 8.01-243 .....................................................................................................11

Oᴛʜᴇʀ Aᴜᴛʜᴏʀɪᴛɪᴇs

2 *McLaughlin on Class Actions* § 7:15 (16th ed. 2019) ..................................................9

28 C.F.R. § 104.4 .......................................................................................................4, 14

28 C.F.R. § 104.43 .......................................................................................................16

28 C.F.R. § 104.47 .......................................................................................................16

7AA Wright *et al.*, *Fed. Prac. and Proc.* § 1785.3 (3d ed. 2019) ................................19

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

## INTRODUCTION

Defendants Dubai Islamic Bank ("DIB"), International Islamic Relief Organization ("IIRO"), Yassin Kadi, Muslim World League ("MWL"), and World Assembly of Muslim Youth ("WAMY") (collectively, "*O'Neill* Defendants") hereby oppose the *O'Neill* Plaintiffs' Motion for Class Certification (ECF 5675) and respond to their Memorandum (ECF 5676, "P.Mem.").[1]

The September 11 attacks were a terrible tragedy. Al Qaeda, which perpetrated them, committed unprecedented acts of violence against the United States and against humanity. The *O'Neill* Defendants all again condemn those attacks in New York, Pennsylvania, and Virginia, and those responsible for them.

The *O'Neill* Defendants, however, played no role in planning or executing the September 11 plot. After more than sixteen years of multi-district litigation ("MDL") overseen by this Court, the thousands of MDL plaintiffs (including thousands long represented by counsel other than the O'Neills') have adduced no evidence that the *O'Neill* Defendants in any way knowingly assisted—much less "conspired with"—those who did plan and execute the three attacks. P.Mem. 2. The *O'Neill* Plaintiffs casually assert otherwise in their certification motion, but only through a cursory waving of their hands at an unspecified "record." *Id.* at 4–5.

Yet the *O'Neill* Plaintiffs now seek to expand and further complicate their groundless case by certifying a faulty class under Federal Rule of Civil Procedure 23(b)(3). Their motion, brought nearly sixteen years after their initial Complaint and class allegations, would compound the number of baseless claims that the *O'Neill* Defendants face, by potentially dragging in over 5,000 new plaintiffs. The *O'Neill* Plaintiffs' motion fails for several reasons.

---

[1] ECF citations are of the MDL docket unless otherwise indicated.

*First*, the *O'Neill* Plaintiffs have failed to show that common issues predominate. In fact, the individualized issues predominate—regarding statutes of limitations under state law, substantive law governing state-law claims, statutory standing under the Anti-Terrorism Act, waiver of claims through the Victims Compensation Fund ("VCF"), and damages. With only the partial exception of damages, the *O'Neill* Plaintiffs in their brief ignore all of these issues.

*Second*, the *O'Neill* Plaintiffs have not shown that a class action is superior. In fact, the individualized issues they ignore, and the potentially numerous liability sub-classes required (plus the impossibility of any damages class), mean that class certification would make these cases even harder to manage. The superior approach is to continue through dispositive motions in this MDL litigation—indeed, the *O'Neill* Plaintiffs essentially recognize this by their own incredible delay in bringing their motion even while litigating in the MDL. In addition, individual plaintiffs' strong interests in continuing to control their own litigation strategies is confirmed by the large number of plaintiffs already in this litigation, the large potential damages arising from the horrific September 11 attacks, and the variety of rational approaches to obtaining redress.  Indeed, the *O'Neill* Plaintiffs implicitly concede this by defining their class to exclude the thousands of other existing plaintiffs, particularly those long represented by three other sets of counsel.

*Third*, for similar reasons, the *O'Neill* Plaintiffs also have failed to establish that their claims are typical of, and that they could adequately represent, either (a) class members whose claims arise from the crash sites other than New York or (b) class members who have not (as the *O'Neill* Plaintiffs have) largely waived their claims by seeking compensation through the VCF.

Thus, the Court should deny the *O'Neill* Plaintiffs' motion for class certification.

## BACKGROUND

### A.    The Pursuit of Remedies for the 9/11 Attacks

Since the attacks of September 11, estates and family members of victims have sought, and often obtained, relief in various ways, including through this Court. In December 2003, the Judicial Panel on Multidistrict Litigation centralized here all lawsuits against "an array of defendants who allegedly promoted, financed, sponsored or otherwise supported the acts of terrorists that led to the deaths and injuries arising from the September 11, 2001 attacks on the United States." Transfer Order, ECF 1. It did so "to eliminate duplicative discovery, prevent inconsistent judicial rulings, and conserve the resources of the parties, their counsel and the judiciary." *Id.* Thousands of named plaintiffs in about 330 complaints have since sued in this MDL. Cottreau Decl. ¶ 7. Across sixteen years, these plaintiffs, led by initially nine firms or attorney groups in the relevant Plaintiffs' Executive Committee ("PEC"), have conducted initial motion practice, document discovery, fact-witness depositions, third-party discovery, the early stages of expert discovery, and numerous appeals. Case Mgmt. Order No. 3, ECF 248 (establishing PEC). The transfer for all "pretrial proceedings" encompasses any "valid order, including but not limited to summary judgment." 28 U.S.C. § 1407(a); MDL R. 10.1(a).

The *O'Neill* Plaintiffs are six of the thousands of personal-injury and death plaintiffs that have sued the *O'Neill* Defendants (or some of them) here. P.Mem. 6, 23. Aside from the *O'Neill* Plaintiffs, approximately 2,649 other such plaintiffs have maintained suits against all of these defendants. Cottreau Decl. ¶ 9. Another approximately 3,561 such plaintiffs have chosen to maintain suits here against some but not all *O'Neill* Defendants. *Id.* ¶ 10. These plaintiffs have retained counsel other than the O'Neills' counsel, and most of these attorneys help steer the PEC.

Similarly, the five *O'Neill* Defendants are a subset of the many defendants who have remained in this MDL. P.Mem. 20. The *O'Neill* Plaintiffs themselves have brought additional

lawsuits here, including a lawsuit against the Islamic Republic of Iran and another class action against the Kingdom of Saudi Arabia and other sovereign defendants. Am. Compl., *Estate of John P. O'Neill, Sr. v. Republic of Iraq,* No. 04-cv-1076 (Mar. 29, 2016), ECF 3246; Compl., *Estate of John P. O'Neill, Sr. v. Kingdom of Saudi Arabia*, No. 04-cv-1922 (Mar. 10, 2004), *O'Neill* ECF 1. Many other plaintiffs have chosen to pursue judgments here against Iran, Saudi Arabia, or other sovereign defendants without also suing the *O'Neill* Defendants. *E.g.*, Mem. Supp. Renewed Mot. for Common Benefit Fund 6–7 & n.3, ECF 4290 (mentioning *Havlish*, *Hoglan*, and *Ray* plaintiffs, who have sued Iran but not *O'Neill* Defendants); PEC Ltr. to Ct. 2, ECF 3572 (discussing that the *Adesso*, *Aguilar*, *Aiken*, and *Hodges* plaintiffs will dismiss claims against *O'Neill* Defendants). In short, as the *O'Neill* Plaintiffs recognize, they are far from the only individual plaintiffs, and not all plaintiffs have chosen to sue all the same defendants. P.Mem. 16; Goldman Aff. ¶ 43.

As the Court knows from its own involvement, suits against Iran have yielded default judgments. The damages awards have entitled plaintiffs to payments under the U.S. Victims of State Sponsored Terrorism Fund and a share of the over $2.1 billion the Fund has paid out. Cottreau Decl. Ex. A at 2.

Finally, many family members and estates opted for compensation through the federal September 11th Victims Compensation Fund ("VCF"). Under the VCF, a personal representative of a deceased individual may submit an administrative claim to a Special Master. Air Transp. Safety & System Stabilization Act ("Transp. Act") § 405(a)(1), Pub. L. No. 107-42, 115 Stat. 230 (2001) (codified as amended at 49 U.S.C. § 40101 note); 28 C.F.R. § 104.4(b)(1). By doing so, "the claimant waives the right to file a civil action … for damages sustained as a result of the terrorist-related aircraft crashes of September 11, 2001," except lawsuits "to recover collateral source obligations" or "against any person who is a knowing participant in any conspiracy to hijack

any aircraft or commit any terrorist act." Transp. Act § 405(c)(3)(C)(i). Although the number of VCF claimants is unclear, the *O'Neill* Plaintiffs are among them; they submitted a claim on behalf of the Estate of John P. O'Neill, Sr., in 2003, and received a share of the over $13 billion the VCF has paid out. Cottreau Decl. Ex. B at 18; Ex. C at 1; John P. O'Neill, Jr., Interrog. Resp. No. 4.[2]

### B.   The *O'Neill* Plaintiffs' Claims

The *O'Neill* Plaintiffs sued on March 10, 2004. Compl., *O'Neill* ECF 1. MWL simply answered. ECF 1534, 1632. The remaining *O'Neill* Defendants, and others, moved to dismiss, and this Court resolved those motions between 2005 and 2010.

The Court found sufficient contacts alleged to sustain initial personal jurisdiction over IIRO and DIB at that stage, and it granted in part and denied in part their motions to dismiss for failure to state a claim. *See In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 490, 495 (2010) ("*Terrorist Attacks IV*"); *id.*, 392 F. Supp. 2d 539, 575 (2005) ("*Terrorist Attacks II*"). The Court also dismissed Mr. Kadi for lack of personal jurisdiction, and granted in part and denied in part WAMY's motion to dismiss for failure to state a claim. *See id.*, 740 F. Supp. 2d 494, 508, 515–16, 524 (2010) ("*Terrorist Attacks V*"); *see In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 682 (2d Cir. 2013) (vacating and remanding for jurisdictional discovery as to Kadi).

The *O'Neill* Plaintiffs' claims arise out of the September 11 airplane crashes in New York. P.Mem. 5. The claims include what they call "common law tort theories." *Id.* at 3. These are apparently state-law claims, under the laws of unspecified States, for negligence, negligent and/or intentional infliction of emotional distress, wrongful death, and survival.

---

[2] The putative class representatives' interrogatory responses are on file with counsel for the *O'Neill* Defendants and contain redacted information. To avoid having the Court rule on the redacted information, *see* Judge Netburn's Individual Practices in Civil Cases, counsel for the *O'Neill* Plaintiffs has agreed that he does not take issue with our citation of these facts without filing the interrogatory responses. If the Court would like to see the full interrogatory responses, counsel for the *O'Neill* Defendants would be happy to file them under seal after conferring with the *O'Neill* Plaintiffs on confidentiality issues.

The *O'Neill* Plaintiffs also have pleaded claims under federal law. These include a claim under the Anti-Terrorism Act. 18 U.S.C. § 2333. Liability under that provision is not, as they imply, a function of whether "defendants in fact provided material support to the hijackers." *E.g.*, P.Mem. 12. To establish **primary** liability, plaintiffs need to prove injury to a U.S. national, a defendant's own act of international terrorism, and proximate causation. *Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525, 531 (S.D.N.Y. 2019) (Daniels, J.). And "the provision of material support to a terrorist organization does not invariably equate to an act of international terrorism." *Linde v. Arab Bank, PLC*, 882 F.3d 314, 326 (2d Cir. 2018). **Secondary** liability requires proving that a defendant either conspired with or aided and abetted ("by knowingly providing substantial assistance") a person who committed an "act of international terrorism" by a designated foreign terrorist organization. 18 U.S.C. § 2333(d). A claim must be by a "national of the United States." *Id.* § 2333(a). Each *O'Neill* Plaintiff is or was a U.S. national. *See* Interrog. Resps. Nos. 1–2.

This Court in the initial motion practice dismissed from *O'Neill*, and other MDL cases, claims under the Alien Tort Statute, Torture Victim Prevention Act, RICO, and common-law negligence. *Terrorist Attacks V*, 740 F. Supp. 2d at 514–15 & n.6; *Terrorist Attacks IV*, 718 F. Supp. 2d at 493–94; *Terrorist Attacks II*, 392 F. Supp. 2d at 565–66; *cf.* P.Mem. 3. The MDL Court also dismissed the *Federal Insurance* plaintiffs' claims for intentional infliction of emotional distress, filed on September 10, 2003, as time barred. *Terrorist Attacks V*, 740 F. Supp. 2d at 514 n.6; *Terrorist Attacks IV*, 718 F. Supp. 2d at 494–95; *Terrorist Attacks II*, 392 F. Supp. 2d at 566.

### C. The *O'Neill* Plaintiffs' Proposed Class

Between early 2004 and the end of 2018, the *O'Neill* Plaintiffs did nothing apparent with regard to their proposed class action, apart from resisting class discovery in 2011. Cottreau Decl. ¶ 3. At least DIB (which has taken the lead among the *O'Neill* Defendants in class discovery) thought they had abandoned the class allegations, learning otherwise only when the subject arose

in 2019 as the parties prepared a joint status report. Order, ECF 4484; Rep., ECF 4495. In response to the Court's Order of April 11, 2019, the parties proposed a schedule for class discovery tied to the close of third-party deposition discovery. The Court adopted that proposal, ordering class discovery to occur in the fall of 2019. Order, ECF 4582. It also ordered the *O'Neill* Plaintiffs to file their certification motion by January 15, 2020. Order, ECF 5266.

The class certification motion revises the initial 2004 class definition. P.Mem. 6–7. The *O'Neill* Plaintiffs still propose a single class, but acknowledge that subclasses may be necessary. *Id.* at 21. The proposed class encompasses all claims for all spouses, children, parents, siblings, and legal representatives of any individual who died on (or within 72 hours of) September 11, 2001 as a result of the attacks that day. It draws no distinction for crash site, nationality, or participation in the VCF. The *O'Neill* Plaintiffs do carve out of that class any other person or estate that already is a plaintiff in the MDL against the *O'Neill* Defendants, although they do not give a reason for that carve-out. *Id.* at 6–7, 25. They also acknowledge that it remains unresolved whether some number of subrogated estates' claims belong within the putative class. Goldman Aff. ¶ 9 n.8. Finally, they seek to add the Estate of John F. O'Neill (decedent's father) as a party and class representative. P.Mem. 16; Goldman Aff. ¶ 2(d)(ii). As cause, counsel states that, although he has represented the family for sixteen years, he just learned that John F. O'Neill was alive on September 11, 2001. Goldman Aff. ¶ 1 n.3.

## ARGUMENT

"Class actions under Rule 23 ...  are an exception to the general rule that one person cannot litigate injuries on behalf of another." *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 93 (2d Cir. 2018). "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with" that rule. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). That

party "bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

Courts must conduct a "rigorous analysis" as to each element of Rule 23, even if that entails some overlap with the merits of the claims or defenses. *Wal-Mart*, 564 U.S. at 351; *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015). "[A] court must 'probe behind the pleadings before coming to rest on the certification question,' satisfying itself that Rule 23 compliance may be demonstrated through 'evidentiary proof.'" *Johnson*, 780 F.3d at 138 (quoting *Comcast*, 569 U.S. at 33). "[P]laintiffs wishing to proceed through a class action must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3)," which imposes a "far more demanding" burden than does Rule 23(a). *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014); *In re Petrobras Sec.*, 862 F.3d 250, 261 (2d Cir. 2017), respectively.

There is no "'general preference'" for granting class certification. P.Mem. 8. A presumption in favor of certification would be "out of step with recent Supreme Court authority." *Petrobras*, 862 F.3d at 260 n.11. The *O'Neill* Plaintiffs, to argue otherwise, rely solely on a 15-year-old unpublished district-court opinion, *Leider v. Ralfe*, 2003 WL 22339305 (S.D.N.Y. Oct. 10, 2003), which relied solely on "cf." citations of two Second Circuit decisions that do not provide any authority for such a presumption, *see id.* at *11. Yet "no Second Circuit case provides any reasoning or justification for the idea that [it] review[s] denials of class certification with more scrutiny than grants," and the "Supreme Court has never drawn a distinction." *Petrobras*, 862 F.3d at 260 n.11. Thus, pre-*Wal-Mart* statements such as that, "'if there is to be an error made, let it be in favor of and not against the maintenance of the class action'" (P.Mem. 8), "must be considered obsolete under the Supreme Court's recent pronouncements requiring denial of certification unless

- 8 -

a specific showing has been made demonstrating compliance with each of the requirements of Rule 23." 2 *McLaughlin on Class Actions* § 7:15 (16th ed. 2019) (collecting cases).

Here, the *O'Neill* Plaintiffs have not made those showings. They have failed to show either "predominance" or "superiority" under Rule 23(b)(3), and those failures also highlight their failure to satisfy every requirement of Rule 23(a).

**I.     The *O'Neill* Plaintiffs' Class Certification Motion Fails to Establish that Common Questions Predominate over Individual Issues.**

"[B]efore a district court may certify a class under Rule 23(b)(3) the party seeking certification must show that 'questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Langan*, 897 F.3d at 96 (quoting Fed. R. Civ. P. 23(b)(3)). "The predominance inquiry is a core feature of the Rule 23(b)(3) class mechanism, and is not satisfied simply by showing that the class claims are framed by the common harm suffered by potential plaintiffs." *Petrobras*, 862 F.3d at 270. Proper inquiry requires assessing "(1) the 'elements of the claims and defenses to be litigated,' and (2) 'whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief.'" *Johnson*, 780 F.3d at 138 (quoting 1 *McLaughlin on Class Actions* § 5:23 (11th ed. 2014)). "Predominance requires a further inquiry, however, into whether the common issues can profitably be tried on a classwide basis, or whether they will be overwhelmed by individual issues." *Id.* "Where individualized questions permeate the litigation, those 'fatal dissimilarit[ies]' among putative class members 'make use of the class-action device inefficient or unfair.'" *Petrobras*, 862 F.3d at 270 (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 470 (2013)). Accumulated individualized issues can outweigh common ones even when each issue, standing alone, would not prevent certification. *See Johnson*, 780 F.3d at 138 (noting that individualized defenses bear on

lack of predominance); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008) (noting

that individualized damages bear on lack of predominance), *abrogated on other grounds by Bridge*

*v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

Yet the *O'Neill* Plaintiffs offer just two pages, with only a cursory discussion of relevant

law, to purportedly show that common issues predominate as to liability. P.Mem. 17–18. Even

these limited assertions collapse on inspection. Specifically, statutes of limitations and substantive

law governing liability, statutory standing, waiver, and damages "overwhelm" common issues.

### A. The *O'Neill* Plaintiffs ignore the individualized issues involving statutes of limitations and the laws governing their "common law" claims.

Despite pleading several "common law tort" claims, the *O'Neill* Plaintiffs cite *no* state law.

P.Mem. 3. By this omission, they ignore the individualized issues of determining whether putative

class members have timely state-law claims and what law governs them.

**1.** Statutes of limitations may bar class certification when they present individualized

issues. *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 324 F. Supp. 3d 387, 399 (S.D.N.Y. 2018)

(holding that the "need to determine, for each class member, his or her residence, where and when

the claims accrued, and the applicable statute of limitations" in each jurisdiction are predominating

individual issues, "especially because" many limitations periods "will likely preclude recovery").

Under New York's Borrowing Statute, CPLR 202, "in actions brought by nonresidents, the shorter

of the New York statute of limitations and that of the state 'where the cause of action accrued'

applies." *Braune v. Abbott Labs.*, 895 F. Supp. 530, 557 (E.D.N.Y. 1995). And under it, "a cause

of action 'accrues' where the injury is suffered as opposed to where the allegedly tortious act

occurred." *Bennett v. Hannelore Enters., Ltd.*, 296 F. Supp. 2d 406, 411 (E.D.N.Y. 2003). "Where

CPLR 202 causes another state's statute to be borrowed," its limitations and tolling "will be applied

as a total package." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 801 (E.D.N.Y. 1984).

In this case, statutes of limitations present significant individualized bars to recovery. The Court will need to determine whether each putative class member resides in New York or elsewhere. For those residing elsewhere, the Court must ascertain, for each state-law claim asserted, whether it should apply the statute of New York or of the State where the cause of action accrued, which here would mean the limitations law of another crash site. Claims governed by Virginia or Pennsylvania law are subject to a two-year period and thus time-barred because this action was filed more than two years after the 9/11 attacks.[3] Va. Code § 8.01-243(A) (two years for injury to a person, "whatever the theory of recovery"); *Matharu v. Muir*, 86 A.3d 250, 263 (Pa. Super. Ct. 2014) (two years for survival and wrongful death); *Aquilino v. Philadelphia Catholic Archdiocese*, 884 A.2d 1269, 1275 (Pa. Super. Ct. 2005) (two years for negligence and negligent infliction of emotional distress). "A class action cannot proceed on behalf of class members whose claims are time-barred," so, for each putative class member with time-barred claims, the question would be whether there were any ground for tolling, another fact-intensive inquiry. *Duprey v. Conn. Dep't of Motor Vehicles*, 191 F.R.D. 329, 341 (D. Conn. 2000).

2.      For state-law claims not time-barred, the Court will have to conduct choice-of-law analyses. "In a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 127 (2d Cir. 2013) (internal quotation marks omitted). "As with all Rule 23 requirements, the party seeking certification has the ultimate burden to demonstrate that any variations in relevant state laws do not predominate over the similarities." *Langan,* 897 F.3d at 97. "[N]ationwide class action movants must creditably demonstrate, through an extensive analysis of state law variances, that class

---

[3] New York has a two-and-a-half-year period for wrongful death, N.Y. Est. Powers & Trusts L. § 5-4.1, and a three-year period for all other negligence claims, *Yong Wen Mo v. Gee Ming Chan*, 17 A.D.3d 356, 358 (2d Dep't 2005); *Stutz v. Guardian Cab Corp.*, 273 A.D. 4, 10 (1st Dep't 1947).

certification does not present insuperable obstacles." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 576 (S.D.N.Y. 2018) (quoting *Foodservice*, 729 F.3d at 127 (internal quotation marks omitted)). Variance predominates when material differences exist. *Compare Johnson*, 780 F.3d at 148 (vacating order certifying twenty-seven-state class action, because variations in law "defeat[ed] the predominance of common issues and the superiority of trying the case as a class action"), *with Foodservice*, 729 F.3d at 127 (finding no predominance problem with putative class action brought under the contract law of various States, where all had adopted the Uniform Commercial Code). The district court cannot "take the plaintiff's word that no material differences exist" and should "undertake a considered analysis." *Langan*, 897 F.3d at 97.

Here, for example, "[i]n tort actions, if there is a conflict of laws, New York courts apply an 'interests analysis,' under which the law of the jurisdiction having the greatest interest in the litigation" applies. *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998); *cf. In re Citigroup Inc. Sec. Litig.*, 987 F. Supp. 2d 377, 389 (S.D.N.Y. 2013) (an MDL court applies the choice-of-law rules of transferor State). This usually points to, as options, "'the parties' domiciles and the locus of the tort.'" *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992) (quoting *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (N.Y. 1985)). One would thus compare the laws of each putative class member's domicile (unknown in number, but potentially including all 50 States, plus foreign jurisdictions), of the *O'Neill* Defendants' domiciles (Saudi Arabia and the United Arab Emirates), and of the "locus" of their alleged tort—which sometimes is the place of wrongful conduct and other times is the place of the injury. *Compare Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 50–51 (2d Cir. 2013) (former), *with Devore v. Pfizer Inc.*, 58 A.D.3d 138, 141 (1st Dep't 2008) (latter).

Yet the *O'Neill* Plaintiffs cite **nothing** regarding their state-law claims—much less offer the "extensive analysis of state law variances" that would be required for their nationwide class, involving crash sites in three States, with victims from countless domiciles. *LIBOR*, 299 F. Supp. 3d at 576; *see Causey v. Pan Am. World Airways, Inc.*, 66 F.R.D. 392, 399 (E.D. Va. 1975) (denying certification for single-site airliner crash with victims from seven States, because "conflict of law questions would be extremely complex").

### B. The *O'Neill* Plaintiffs ignore the individualized question whether putative class members have standing under the Anti-Terrorism Act.

The *O'Neill* Plaintiffs quote no language from the Anti-Terrorism Act ("ATA"), much less discuss the elements of a claim, to try to show predominance. They thereby elide a significant individualized issue of standing. As noted above, only a "national of the United States injured in his or her person, property, or business … or his or her estate, survivors, or heirs," may sue for damages for injuries sustained "by reason of international terrorism." 18 U.S.C. § 2333(a). Thus, non-U.S. nationals may not recover for their own injuries. *See Averbach v. Cairo Amman Bank*, 2020 WL 486860, at *9-10 (S.D.N.Y. Jan. 21, 2020) (recommending dismissal of foreign nationals' personal-injury claims, because ATA's text "bar[s] personal injury claims by foreign nationals"). The Court accordingly must receive individualized proof of nationality. Yet neither the *O'Neill* Plaintiffs' brief nor their class definition mentions this limitation—despite counsel's apparent awareness that the ATA claim may not be available to the entire class. Goldman Aff. ¶ 19.

### C. The *O'Neill* Plaintiffs ignore the individualized question of waiver of claims through participation in the VCF.

The *O'Neill* Plaintiffs similarly ignore the import of the VCF's statutory waiver language. Congress has provided that the submission of a VCF claim "waives the right to file a civil action" over September 11 except, as relevant here, against "a **knowing participant** in any **conspiracy** to hijack any aircraft or commit any terrorist act." Transp. Act § 405(c)(3)(C)(i) (emphases added).

Only a single VCF claim "may be submitted … by an individual or on behalf of a deceased individual," and that claim waives all causes of action for damages that could have been included in it. *Id.* § 405(c)(3)(B). That is why "[a]ny purported Personal Representative must … provide written notice of the claim … to any other persons who may reasonably be expected to assert an interest in an award or to have a cause of action to recover damages relating to the wrongful death of the decedent." 28 C.F.R. § 104.4(b)(1). Accordingly, in *In re September 11th Litigation*, Judge Hellerstein dismissed cases in which plaintiffs sued after a non-party personal representative had submitted a VCF claim on behalf of the same decedent. 2004 WL 1320897, at *10–12 (S.D.N.Y. June 10, 2004). He reasoned that the non-claimant relatives could not maintain even suits for damages they personally suffered due to that death, given that the VCF required "the personal representative to present information 'concerning any possible economic and noneconomic losses that the claimant suffered'" and that "a VCF award encompasses all potential claims that could be made," including for a family member's emotional distress. *Id.* at *12. To allow the suit would be to allow "dual recovery," "impermissible under the Act." *Id.*

This waiver significantly affects the ability of putative class members to bring claims. The VCF statute's "knowing participant in [a hijacking] conspiracy" language means someone subject to it cannot recover—is subject to a complete defense—unless the putative class member can, essentially, prove a claim of conspiracy under the ATA. Proof of negligence would not suffice. *Cf. United States v. Svoboda*, 347 F.3d 471, 481–82 (2d Cir. 2003) (discussing that mere negligence cannot establish "guilty knowledge"). Nor would even proof of aiding-and-abetting under the ATA, whose elements do not establish knowing participation in a conspiracy. *See Linde*, 882 F.3d at 329–30 (explaining elements). And proof of VCF participation is inherently individualized. To determine waiver, the Court will need, for each putative class member, to analyze whether he or

any family member submitted a VCF claim based on the death that is the basis for class membership. Ultimately, the Court would find itself likely dismissing an indeterminate number of claims.

### D.     The *O'Neill* Plaintiffs avoid the individualized question of damages.

Finally, the *O'Neill* Plaintiffs sidestep the inherently individualized question of each putative class member's damages. This, at a minimum, bars certification as to damages. More broadly, damages is "a factor that [the Court] must consider in deciding whether issues susceptible to generalized proof 'outweigh' individual issues," even if that factor may not be the sole reason to deny certification. *McLaughlin,* 522 F.3d at 231.

The *O'Neill* Plaintiffs' argument depends on a flawed premise: that the existence of two other methods of awarding mass compensation for personal damages, ***outside*** of adversarial litigation, somehow means a third, class-wide method will exist ***within*** such litigation. P.Mem. 19–21; Goldman Aff. ¶ 43. As to one of those two—judgments against Iran relating to the September 11 attacks—the *O'Neill* Plaintiffs in their brief never mention that all are ***default*** judgments. Iran never contested the cases, including damages. This Court has thus expressed appropriate skepticism about these judgments' broader relevance in the MDL: "I certainly don't think that the default judgment posture carries an enormous amount of weight in more contested actions." Tel. Conf. Tr. 11:15–17 (Oct. 7, 2019), ECF 5195. Similarly, the other method, the VCF, is a non-adversarial administrative proceeding offering a no-fault remedy built on several presumptions. PEC VCF Letter 2 (Jan. 10, 2020), ECF 5484 (explaining that, once presence at crash site and injury "are met … , eligibility is established," and "no showing of duty, breach or causation is required"). By relying on these two methods and offering nothing else (*see* P.Mem. 20–21), the *O'Neill* Plaintiffs leave the Court without relevant analysis of how damages would not

be a predominating individualized issue here—on tort claims against defendants who deny, and will continue to contest, both liability and damages.

Damages here would indeed present a host of individualized issues for the Court. For example, economic damages vary depending on factors related to the deceased's earning capacity. Non-economic damages vary depending on the nature of the relationship between the putative class member and the decedent. Putative class members also are likely to differ based on the extent to which they have received compensation from collateral sources, which, in turn, presents the legal question whether the law governing a claim allows defendants an offset. *Compare* CPLR § 4545(a) (permitting collateral source arguments), *with Acuar v. Letourneau,* 531 S.E.2d 316, 323 (Va. 2000) (prohibiting them), *and Johnson v. Beane*, 664 A.2d 96, 100 (Pa. 1995) (same, but with an exception). The *O'Neill* Plaintiffs' off-point arguments from non-adversarial remedies, if anything, help to confirm the individualized nature of damages calculations here: Even in the Iran default judgments, an expert has had to separately determine the economic damages for each plaintiff based on his or her unique characteristics. Beauzile Decl., ECF 5618-4 (*O'Neill* Plaintiffs damages expert declaration). Similarly, even the VCF Special Master must make individualized determinations of lost earnings and collateral-source offsets. 28 C.F.R. §§ 104.43, 104.47; *see also* Beauzile Decl. 14–20 (explaining multi-step process for calculating economic loss under the VCF).

Given all of this, not only do individualized damages issues prevent certification of a damages class, but they also, in conjunction with the individualized liability issues discussed above, prevent any certification here. *Johnson*, 780 F.3d at 147 n.23 (observing that individualized damages "weighs against class action" when "many of the liability issues are not susceptible to common proof"); *LIBOR*, 299 F. Supp. 3d at 571–79 (lack of predominance found where

limitations, variations in state law, and damages contributed to individualized issues). The Court thus should deny certification given the failure to establish predominance as Rule 23(b)(3) requires.

## II.   The *O'Neill* Plaintiffs' Class Certification Motion Fails to Establish that a Class Action is a Superior Method of Adjudicating Claims that this Court Long Has Managed Effectively in this Multi-District Litigation.

The individualized issues discussed in the preceding argument, in addition to confirming the failure to show predominance, also help demonstrate another ground for denying certification: The *O'Neill* Plaintiffs fail to show superiority. Rather, issues of manageability and the interests of individual claimants both establish that this MDL remains a superior method of adjudicating claims against the *O'Neill* Defendants over the September 11 attacks.

Class certification here, under Rule 23(b)(3), would require showing that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The rule specifies four non-exclusive "matters pertinent" to the analysis: (A) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (B) "the extent and nature of any litigation concerning the controversy already begun by … class members"; (C) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (D) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

"[A] finding of non-predominance is easily paired with a finding that a class action is unmanageable and hence not a superior form of litigation." *LIBOR*, 299 F. Supp. 3d at 546 (quoting 2 William B. Rubenstein, *Newberg on Class Actions* § 4:74 (5th ed. 2017)). Individualized issues "undercut[] the superiority of trying the common issues on a classwide basis." *Johnson*, 780 F.3d at 148. For example, "'[t]he creation of a number of subclasses … may make the case unmanageable," defeating superiority. *LIBOR*, 299 F. Supp. 3d at 547 (quoting *Manual for Complex Litigation* § 21.23 (4th ed. 2004)) (ellipsis in original). So "a district court that relies on subclasses to cure predominance issues … must identify the required subclasses and explain why

they are necessary" and how they "would cure the predominance issues." *Langan*, 897 F.3d at 98. "[M]ere mention of subclasses" is not "an adequate response" when confronted with "factual and legal differences" that require "multiple sets of subclasses." *Id*. (internal quotation marks omitted). And, as with all other Rule 23 requirements, "[t]he court … is not obligated to implement Rule 23(c)(4) [and -(c)(5)] on its own initiative by certifying classes only as to certain issues or creating subclasses," and the burden rests with plaintiff "to show how the action may be [modified] to avoid certification problems." *LIBOR*, 299 F. Supp. 3d at 465 (internal quotation marks omitted).

On manageability, the *O'Neill* Plaintiffs cite only a thirteen-year-old district-court decision to suggest that the question is merely whether a class would pose "extraordinary difficulties." P.Mem. 25 (quoting *Mentor v. Imperial Parking Sys., Inc*., 246 F.R.D. 178, 184 (S.D.N.Y. 2007)). That decision laid down no such rule, and in any event the Second Circuit has not so held. Rather, manageability "encompasses the whole range of practical problems that may render the class action format inappropriate." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).

### A.   As the long and unjustified delay in bringing this motion helps to show, the proposed class is unmanageable and will increase delay.

With respect to manageability, the *O'Neill* Plaintiffs offer only a single short paragraph, which asserts rather than explains that the case is "clearly manageable" as a class action. P.Mem. 25. They fail to wrestle with the complexity that the individualized issues will introduce, or that would arise from an effort to respond to those issues by adding subclasses; or with the way in which this MDL Court has managed the sprawling litigation for years.

The *O'Neill* Plaintiffs would need to add: crash-site subclasses to address state-law claims, nationality subclasses to address ATA standing, and subclasses to address the high threshold for claims of those subject to the VCF waiver. Putative class members, moreover, may belong to these subclasses in different combinations, leading to a series of Venn diagrams to capture all

permutations: One U.S. national might have claims that accrued in New York and be subject to the VCF waiver; another might have claims that accrued in Virginia and not be subject to the VCF waiver.[4] Then the *O'Neill* Plaintiffs must show how each subclass separately satisfies Rule 23 and, for many of them, select a new class representative—which would warrant additional discovery and thus cause further delay.[5] The "late timing" of such addition of subclasses and representatives is a reason in its own right to deny class certification, given that further discovery at this stage would "unduly complicate the case." *See* 7AA Wright *et al.*, *Fed. Prac. and Proc.* § 1785.3 (3d ed. 2019) (class certification generally denied when "the late timing of the determination may cause prejudice or unduly complicate the case"); *see also Acticon AG v. China N.E. Petroleum Holdings Ltd.*, 687 F. App'x 10, 12 (2d Cir. 2017) (quoting same). Plus, the *O'Neill* Plaintiffs have defined their class so as to exclude significant numbers of pre-existing plaintiffs (particularly two large groups, each with its own counsel), such that class certification would not even pull all claims together in a single case. *See* P.Mem. 7, 23. Finally, for reasons discussed above in Argument I, all of this would just compound the complexity already arising from the need to adjudicate damages individually, or, at best—although most unlikely—in yet more subclasses, *id.* 21.

The prospect of a bifurcated class action, on liability only, encumbered by numerous necessary subclasses, with several substantial groups of non-class plaintiffs alongside but not

---

[4] This points to one of the problems with the *O'Neill* Plaintiffs' reliance on single-location, "common cause or disaster" cases: The September 11 attacks had three crash sites, with the resulting individualized issues discussed above in Argument I. *See Causey*, 66 F.R.D. at 399 (denying certification of a single-site plane crash accident due to choice-of-law issues); *Hobbs v. Ne. Airlines, Inc.*, 50 F.R.D. 76, 80 (E.D. Pa. 1970) (denying motion to certify airline crash class).

[5] The *O'Neill* Plaintiffs incorrectly assert that "[c]ounsel for [Defendants] stated that they would not oppose adding class representatives." Goldman Aff. ¶ 24 n.11 They merely reserved their right, if class representatives were added, to obtain discovery, taking no position on whether doing so after the close of class discovery would be appropriate. Before the close, counsel for DIB repeatedly inquired whether the *O'Neill* Plaintiffs' counsel intended to add class representatives, but the only one they have sought to add is the estate of John F. O'Neill. Cottreau Decl. ¶ 4.

included, hardly provides a reason for this Court to modify the longstanding management of the MDL, within which there has been and will continue to be extensive litigation concerning the September 11 attacks. The MDL Transfer Order long ago consolidated here, for all pretrial purposes, all litigation against alleged September 11 conspirators. During that time, this MDL Court has managed pretrial proceedings in a single forum, into which thousands of plaintiffs have effectively participated through the various counsel on the relevant PEC. To the extent that class treatment might have achieved efficiencies from consolidating litigation in a single forum, that has already happened through the MDL. The *O'Neill* Plaintiffs have not shown, and cannot show, why "thousands of putative class members" could not have proceeded "as the thousands of other individual claimants already subsumed in the member cases to the MDL proceeding have done over the last [sixteen] years of its litigation." *In re Chiquita Brands Int'l Inc. Alien Tort Statute & S'holders Derivative Litig.*, 331 F.R.D. 675, 686 (S.D. Fla. 2019) (denying certification in MDL for cases alleging a company provided financial support to terrorist organization).

The *O'Neill* Plaintiffs are thus quite wrong that the MDL somehow **helps** to show class superiority. P.Mem. 24. Nor do the cases they cite show otherwise. They at most stand for the unremarkable proposition that lawsuits consolidated within an MDL can, like others, be appropriate for class certification—if (but only if) plaintiffs satisfy all of Rule 23's requirements. Indeed, the Second Circuit reversed *In re Zyprexa Prod. Liab. Litig.*, 253 F.R.D. 69 (E.D.N.Y. 2008), not "*on other grounds*" (P.Mem. 24), but precisely because the district court should not have certified. *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 136 (2d Cir. 2010). And the Second Circuit reversed in *In re Ski Train Fire in Kaprun, Austria, on Nov. 11, 2000*, 220 F.R.D. 195 (S.D.N.Y. 2003), *see* P.Mem. 17, because certification did not comport with Rule 23(b)(3), and also expressed "significant doubts" that a class could be "superior to other available methods

for the fair and efficient adjudication of the controversy." *Kern v. Siemens Corp.*, 393 F.3d 120, 129 & n.8 (2d Cir. 2004). In the *O'Neill* Plaintiffs' leading case, *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 279 (E.D.N.Y. 2012), the real question was just adequacy: Predominance was not disputed in that price-fixing case, and superiority was not really at issue given (among other things) the small size of such claims and that the class included *all* plaintiffs. *See id.* at 97, 99, 106–07, 109–10. Similarly, in *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38 (S.D.N.Y. 2012), the primary question was adequacy and typicality: Defendants did not seriously dispute predominance or superiority in that securities-fraud case (which relied on the fraud-on-the-market presumption), and the main class included *all* plaintiffs. *See id.* at 52. There was, indeed—quite unlike here— "*no indication* that individual class members have *any interest* in prosecuting their claims separately, or that *any such litigation* has already commenced." *Id.* at 53 (emphases added).

The *O'Neill* Plaintiffs' long and unexplained delay in seeking class certification helps to show the lack of superiority. By sitting back for sixteen years since filing their class allegations, including eight years since this Court resolved initial dispositive motions, they have allowed time to confirm that the MDL is fully adequate for handling this litigation. Correspondingly, their delay has shown that they themselves saw no need to transform their case into a class action, and their motion comes at a point when the main effect of certification would be to add complexity and increase delay. If the *O'Neill* Plaintiffs truly believed a class action were superior, they would have moved in 2011, at the latest.  None of the cases they cite as purported support for certifying a class action within an MDL involved a delay even half as long as here from the assertion of class allegations to moving for certification, and in all but one (*Pfizer*) the putative class representatives moved for class certification within a couple of years of either the case being filed or the consolidation of related cases into an MDL. *See* P.Mem. 23–25.

### B. Individual claimants have strong incentives to litigate their own cases, as they have been doing.

The *O'Neill* Plaintiffs also ignore the strong interests that individuals have in controlling their own litigation or other means of redress for the September 11 attacks—even while they concede the point through their class definition. Strong individual interests in controlling litigation exist when a suit involves great emotional investment, a significant potential recovery for those pursuing relief, or a wide range of strategy for achieving those ends. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 614, 617 (1997) (noting that the Advisory Committee, in drafting Rule 23(b)(3), "had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all"); *United States v. Charmer Industr., Inc.,* 1981 WL 2098, *3 (E.D.N.Y. 1981) ("The prospect of an award of treble damages and attorneys' fees, should they prevail, provides plaintiffs and their attorneys with a significant incentive to litigate the civil actions vigorously."); *Causey*, 66 F.R.D. at 399 (declining to certify a class in a single-site airplane crash case because of the "high financial value placed upon such wrongful death actions" and because the crash "vitally affect[s] a significant aspect of the lives" of those involved).

These cases involve all three. The September 11 attacks themselves and subsequent litigation within this MDL show the strong emotional interests in and financial incentives for individual control over litigation. The Court need not speculate, as over 6,200 individual plaintiffs in multiple longstanding plaintiff groups have sued, including two substantial groups, each of which has its longstanding counsel other than counsel in *O'Neill*. Cottreau Decl. ¶¶ 9–10. The *O'Neill* Plaintiffs acknowledge these plaintiffs—by defining them out of the putative class. P.Mem. 7; Goldman Aff. ¶ 47. They never explain that substantial exclusion, but if class treatment were truly superior, it would not make sense. In addition to the number of plaintiffs, the amounts at issue

are significant: Among other things, the ATA provides for treble damages. 18 U.S.C. § 2333(a). And to the extent that Iran default judgments have any relevance here as a general gauge, they confirm the high financial stakes. Final Order of J., ECF 5927 (awarding $5,831,235 to estate of John P. O'Neill). These are far from minimal-value claims that need class treatment to be viable, such as in a consumer class action or securities-fraud case. *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 130 (E.D.N.Y. 2019) (certifying class for claims with a $50 statutory cap).

Maintaining individual litigation within the MDL is also superior because it leaves claimants unencumbered in pursuing (or not) a variety of approaches for recovery. As the VCF procedure demonstrates, many rationally chose to forego (at least in large part) the right to bring a lawsuit, and instead seek administrative compensation. Or, victims chose to bring a lawsuit, but target other parties for strategic reasons. The *Havlish* Plaintiffs, for example, "focused their efforts on establishing liability against Iran and Hezbollah"—an approach that has proved fruitful, leading to a right to payments from the U.S. Victims of State Sponsored Terrorism Fund—while other plaintiffs represented by the PEC "devoted their efforts and resources almost exclusively to pursuing claims against the Kingdom of Saudi Arabia and related non-sovereign state defendants." Mem. Supp. Renewed Mot. for Common Benefit Fund 7, ECF 4290. Even as to claims against the *O'Neill* Defendants, approximately 3,561 plaintiffs have chosen not to sue at least one of them, namely DIB. Cottreau Decl. ¶ 10. Thousands of plaintiffs and potential plaintiffs long have been making individual strategic choices, and the *O'Neill* Plaintiffs have articulated no good reason why it would be superior to end that regime.

## III.   The *O'Neill* Plaintiffs' Motion Also Fails to Satisfy All Elements of Rule 23(a).

In any event, the points developed above separately establish that the *O'Neill* Plaintiffs fail to satisfy all elements of Rule 23(a) for their proposed class, particularly adequacy and typicality. Adequacy requires that class representatives show that they will "vigorously pursu[e] the claims

- 23 -

of the class" and "have no interests antagonistic to the interests of other class members." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (citation omitted). Similarly, "[t]he purpose of the Rule 23(a) typicality requirement is to ensure that a class representative has 'the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions.'" *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 71 (S.D.N.Y. 2009) (quoting *In re NASDAQ Market–Makers Antitrust Litig.*, 172 F.R.D. 119, 126 (S.D.N.Y. 1997)).

A unique defense can render a class representative inadequate and his or her claims atypical. *Gordon v. Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193, 201 (S.D.N.Y. 2015) ("The issue of unique defenses is relevant not only to adequacy, but also to the typicality and commonality prongs of Rule 23(a)."). "Regardless of the prong under which this issue is analyzed, there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id.* (internal quotation marks omitted). "The defendant need not show at the certification stage that the unique defense will prevail, only that it is meritorious enough to require the plaintiff to devote considerable time to rebut the unique defense." *Hallet v. Li & Fung, Ltd.*, 1997 WL 621111, at *3 (S.D.N.Y. Oct. 6, 1997) (internal quotation marks omitted); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) ("[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."). The proposed class fails these requirements in two respects.

*First*, the *O'Neill* Plaintiffs' claims are not typical of the claims of putative class members whose claims arise from the crashes in Virginia and Pennsylvania, nor are they adequate representatives for such class members. The state-law claims of the class representatives all accrued in New York and are therefore timely. P.Mem. 5; C.I. O'Neill Aff. ¶ 3. Conversely, as

shown above, the claims that accrued in Virginia and Pennsylvania are time-barred unless tolling applies. Yet the class representatives lack the incentive to litigate tolling. *See Munoz v. PHH Corp.*, 2013 WL 2146925, at *20–21 (E.D. Cal. May 15, 2013) ("If the Court were to follow Plaintiffs' suggestion and certify the Class as proposed, the interests of tolling class members would be represented by individuals who have no interest in claim tolling."), *rep. & rec. adopted*, 2015 WL 3703972 (E.D. Cal. June 11, 2015).

*Second*, the *O'Neill* Plaintiffs' claims are not typical of the claims of putative class members who did not waive claims through the VCF, nor are they adequate representatives for such class members. Because only "one claim may be submitted" to the VCF "on behalf of a deceased individual," all of the *O'Neill* Plaintiffs have waived claims except (as discussed above) to the extent that they can prove conspiracy. Transp. Act § 405(c)(3)(B). The *O'Neill* Plaintiffs' incentive is to be "preoccupied with" how to satisfy that high standard, to the detriment of lower *mens rea* claims on which it might be easier to recover. *Gordon*, 92 F. Supp. 3d at 201. This incentive could particularly harm non-U.S. nationals, as they lack standing to assert an ATA claim.

## CONCLUSION

For the foregoing reasons, the Court should deny the *O'Neill* Plaintiffs' motion for class certification.

DATED: February 28, 2020

/s/ *Omar T. Mohammedi*
Omar T. Mohammedi
The Law Firm of Omar T. Mohammedi, LLC
233 Broadway, Suite 820
New York, NY 10279
Telephone: (212) 725-3846
Fax: (212) 202-7621
Email: omohammedi@otmlaw.com

Frederick J.Goetz (admitted *pro hac vice*)
Goetz & Eckland P.A.
43 Main St. S.E., Suite 505
Minneapolis, MN 55414
(612)-874-1552
Fax: (612)-331-2473
Email: fgoetz@goetzeckland.com

*Counsel for Defendant World Assembly of Muslim Youth*

/s/ *Peter C. Salerno*
Peter C. Salerno
Amy Rothstein
Salerno & Rothstein
221 Schultz Hill Road
Pine Plains, NY 12567
Telephone: (518) 771-3050
Fax: (866) 589-9010
Email: peter.salerno.law@gmail.com
Email: amyrothsteinlaw@gmail.com

*Counsel for Defendant Yassin Kadi*

Respectfully submitted,

/s/ *Steven T. Cottreau*
Steven T. Cottreau (admitted *pro hac vice*)
C. Kevin Marshall (admitted *pro hac vice*)
Stephen M. DeGenaro (admitted *pro hac vice*)
Gabrielle E. Pritsker
Jones Day
51 Louisiana Ave, NW
Washington, D.C. 20001
Telephone: (202) 879-3939
Email: scottreau@jonesday.com
Email: ckmarshall@jonesday.com
Email: sdegenaro@jonesday.com
Email: gpritsker@jonesday.com

Juan P. Morillo (admitted *pro hac vice*)
Quinn Emanuel Urquhart & Sullivan LLP
777 Sixth St NW
Washington, DC 20001
Telephone: (202)-538-8174
Email: juanmorillo@quinnemanuel.com

*Counsel for Defendant Dubai Islamic Bank*

/s/ *Aisha E. R. Bembry*
Aisha E. R. Bembry (admitted *pro hac vice*)
Waleed Nassar (admitted *pro hac vice*)
Lewis Baach Kaufmann Middlemiss PLLC
1101 New York Avenue, NW Suite 1000
Washington, DC 20005
Telephone: (202) 833-8900
Fax: (202) 466-5738
Email: aisha.bembry@lbkmlaw.com
Email: waleed.nassar@lbkmlaw.com

*Counsel for Defendants Muslim World League and International Islamic Relief Organization*