# EXHIBIT A

# UNITED STATES VICTIMS OF STATE SPONSORED TERRORISM FUND



KENNETH R. FEINBERG
SPECIAL MASTER

REPORT REGARDING SECOND DISTRIBUTION

FEBRUARY 2019

# UNITED STATES VICTIMS OF STATE SPONSORED TERRORISM FUND

## SPECIAL MASTER'S REPORT REGARDING SECOND DISTRIBUTION

## FEBRUARY 2019

### 1. INTRODUCTION

The Justice for United States Victims of State Sponsored Terrorism Act, 34 U.S.C. § 20144[1] (2015) (the "Act"), established the United States Victims of State Sponsored Terrorism Fund (the "Fund"). As required by the Act, *id.* at (i), the Special Master provides this report to Congress after the second round of payments. The report includes an overview of the Fund and sources of its funding, an explanation of the procedures for filing and processing of applications for compensation, and an analysis of the payments made to eligible claimants and the amount of outstanding eligible claims.

### 2. OVERVIEW OF THE FUND

The Fund provides compensation to eligible claimants who hold judgments against state sponsors of terrorism, hostages held in the United States embassy in Iran from 1979 to 1981 and their spouses and children, or the personal representative of such persons who are deceased.[2] On May 17, 2016, the Attorney General appointed Kenneth R. Feinberg, Esq., as the Special Master to administer the Fund with the assistance of the Money Laundering and Asset Recovery Section, Criminal Division, Department of Justice.

The Act required that the Special Master authorize the initial round of payments within one year of its passage in December 2015. *Id.* at (d)(2). The Department of Justice and the Special Master rapidly established Fund procedures and operations, and accepted applications until December 2, 2016. The Special Master authorized initial payments by the December 19, 2016 statutory deadline; the Fund distributed the initial round of payments in early 2017.

The Fund received a total of 2,883 applications in 2016 for consideration for initial payments. The Special Master determined that 2,332 of them were eligible claims from

---

[1] Formerly codified as 42 U.S.C. § 10609 (2015).
[2] More specifically, the Fund may compensate United States persons who (1) hold a final judgment issued by a United States district court awarding the applicant compensatory damages arising from acts of international terrorism for which a foreign state sponsor of terrorism was found not immune from the jurisdiction of the courts of the United States under the Foreign Sovereign Immunities Act ("FSIA"); (2) were taken and held hostage from the United States embassy in Tehran, Iran, during the period beginning November 4, 1979, and ending January 20, 1981, or are spouses and children of these hostages, if identified as a member of the proposed class in case number 1:00-CV-03110 (EGS) of the United States District Court for the District of Columbia; or (3) are the personal representative of a deceased individual in either of those two categories. *Id.* at (c).

Report Regarding Second Distribution

qualifying judgment holders and Iran hostage crisis victims and their spouses and children. The Fund allocated $1,104,450,000 for initial-round payments.[3]

Eligible claimants were paid on a *pro rata* basis out of available funds. With certain limitations, as the Fund is replenished, claimants will continue to be paid in subsequent rounds on a *pro rata* basis out of available funds until all such claims have been paid in full or the Fund terminates.

During the application period for second-round payments,[4] the Fund received 3,743 new applications. The Special Master determined that 3,172 of them were eligible claims, based on qualifying final judgments obtained during the application period. On December 13, 2018, the Fund notified eligible claimants of their second-round award payment amounts, in advance of the January 1, 2019 statutory deadline. Act at (d)(4). The Fund allocated $1.095 billion for second-round payments. On January 2, 2019, the Fund began issuing the second-round payments on a rolling basis.

To date, the Fund has paid or allocated over $2.1 billion to eligible claimants. The claimants found eligible in the initial round remain eligible, and an even greater number of claimants was found eligible in the second round. Generally, claimants are receiving 4.2 percent of their eligible damages in the second round, compared with 13.66 percent in the 2017 initial round, when a similar amount (just over $1.1 billion) was allocated. Currently eligible claimants, as well as any new eligible claimants, may receive awards in future rounds of payments. The Fund continues to accept applications for the next round of payments, which, if funds are available, will be authorized by January 1, 2020, with additional rounds authorized annually thereafter. The Act further provides that the Fund will make its last obligations no later than January 2, 2026. *Id.* at (e)(6).

---

[3] Additional details regarding initial payments were provided to Congress in the Special Master's January 2017 Report and August 2017 Supplemental Report. The reports are publicly available on the Fund's website. *See* http://www.usvsst.com/news.php. The Fund's website provides details of the award calculation methodology. *See* http://www.usvsst.com/docs/USVSST_Fund_Round_Two_Payment_Calculation_12-11-18_Final.pdf (last updated December 2018).
[4] December 2, 2016 to September 14, 2018.

Report Regarding Second Distribution

   

### 3. SOURCES OF FUNDING

The Act established the Fund with a one-time appropriation of $1.025 billion in fiscal year 2017. *Id.* at (e)(5). The Fund is replenishing, however, and accumulates funds from certain civil and criminal matters involving prohibited transactions with state sponsors of terrorism. *Id.* Specifically, the Act directs that certain funds and property forfeited or paid to the United States as criminal or civil penalties or fines after the enactment of the Act on December 18, 2015 must be transferred to the Fund. *Id.* at (e)(2). The Fund provides on its website a list of cases or matters where some or all of the qualifying proceeds and penalties have been deposited into the Fund.[5] The Fund updates the list periodically after additional funds are deposited into the Fund.

### 4. PROCEDURES FOR FILING AND PROCESSING OF APPLICATIONS FOR COMPENSATION

#### a. Application Process

The application process has remained the same since the inception of the Fund. The claimant has the burden of establishing eligibility for payment by the Fund under the Act. Each claimant must submit his or her own application, and, if the claimant is the estate of a deceased individual, provide the requisite information for the personal representative of the decedent.

The personal representative for a deceased claimant is normally the individual appointed by a court of competent jurisdiction as the personal representative of the deceased claimant's will

---

[5] *See* http://www.usvsst.com/deposits.php.

Report Regarding Second Distribution

or estate, executor of the deceased claimant's will, or the administrator of the deceased claimant's estate. Accordingly, the personal representative provides copies of relevant legal documents, such as court orders, letters testamentary, letters of administration, or similar documentation. Sufficient documentation must be submitted for those personal representatives appointed under foreign law.

A claimant may obtain an Application Form by registering on the Fund's website,[6] or by calling or submitting a written request. Application Forms may be submitted online, by email, by mail, or via toll-free facsimile. If claimants are represented by counsel, counsel may submit their applications.

Claimants with final judgments obtained on or after July 14, 2016, must file no later than 90 days after the date of obtaining a final judgment. To be considered for second-round payments, new claimants were required to submit complete applications by September 14, 2018. Those who were deemed eligible for initial payments were not required to re-submit an application to be considered for second-round payments.

### b. Application Requirements

#### i. Iran Hostages and Their Spouses and Children

A claimant who sought to establish eligibility for payment as a hostage from the United States embassy in Tehran, Iran, during the period beginning November 4, 1979, and ending January 20, 1981, or spouse or child thereof, must have submitted: (1) verification that he or she was taken hostage, or marriage certificate if a spouse, or birth certificate or adoption decree as a child; and (2) verification that he or she is a member of the proposed class in case number 1:00-CV-03110 (EGS) of the United States District Court for the District of Columbia. These claimants were required to file their applications by the October 12, 2016 deadline for initial payments.

The Act prescribes the eligible claim amount as the sum total of $10,000 per day for each day that a United States person was taken and held hostage from the United States embassy in Tehran, Iran, during the period beginning November 4, 1979, and ending January 20, 1981. *Id.* at (c)(2)(B). Based on that 444-day period, the eligible claim amount is $4,440,000. For each spouse and each child of a former hostage, the Act sets the eligible claim amount as $600,000. *Id.* at (c)(2)(C). As with final judgment amounts, these eligible claim amounts are subject to *pro rata* calculation in accordance with the terms of the Act. *Id.* at (d)(3)(A)(i).

#### ii. Judgment Holders

A claimant seeking to establish eligibility for payment on the basis of a final judgment issued by a United States district court under state or federal law against a state sponsor of terrorism and arising from an act of international terrorism, for which the foreign state was found not immune under provisions of the FSIA, must submit, among other documents, a copy of the final judgment, as well as a list identifying any immediate family member(s) of the claimant also identified in the final judgment. Claimants with a final judgment against an instrumentality of a

---

[6] *See* https://cert.gardencitygroup.com/vtfReg/fs/home.

4

state sponsor of terrorism are eligible for compensation from the Fund; however, claimants with a final judgment solely against a terrorist group or organization, and not against a state sponsor of terrorism, are not eligible for compensation.

### c. Review and Adjudication

All applications to the Fund are reviewed by the Fund's claims administrator, as well as attorneys employed by the Department of Justice ("Fund attorneys"). If an application is deficient, Fund attorneys notify the claimant, or his or her attorney, and offer an opportunity to resolve the deficiency. Fund attorneys make recommendations; however, all applications are reviewed and either determined eligible or denied by the Special Master.

All decisions by the Special Master with regard to compensation from the Fund are final and not subject to administrative or judicial review. *Id.* at (b)(3). However, no later than 30 days after receipt of a written decision by the Special Master, a claimant whose application was denied in whole or in part may request a hearing before the Special Master or his designee. *Id.* at (b)(4). No later than 90 days after a hearing, the Special Master must issue a written decision affirming or amending the original decision; the written decision is final and non-reviewable. *Id.*

### d. Payment

The Act authorizes the Special Master to order payment from the Fund "for each eligible claim of a United States person to that person or, if that person is deceased, to the personal representative of the estate of that person." *Id.* at (d)(1). With certain limitations, eligible funds will be paid on a *pro rata* basis out of available funds, based on the amounts outstanding and unpaid on eligible claims, until all such amounts have been paid in full or the Fund terminates in 2026.

The Act requires that all claimants identify compensation from any source other than the Fund that the claimant or the claimant's beneficiaries have received or are entitled or scheduled to receive as a result of the act of international terrorism that gave rise to the final judgment. *Id.* at (b)(2)(B). The claimant must provide all relevant information and documentation in his or her application and update the Fund about any additional amounts received after filing the application. This assists the Fund in determining the amount outstanding and unpaid on the claims.

The Act includes specific provisions which affect payments to claimants in particular circumstances. The sections below detail the limitations on payments to eligible claimants.

#### i. Payments from Other Sources

Claimants who have received 30 percent or more of their compensatory damages from sources other than the Fund may not receive payments from the Fund until other claimants have received 30 percent of their compensatory damages from the Fund. *Id.* at (d)(3)(B). Claimants who have received some, but less than 30 percent, of their compensatory damages from sources other than the Fund had their awards adjusted to account for the percentage other claimants receive from the Fund.

Report Regarding Second Distribution

## ii. Judgment Amounts

Certain provisions of the Act limit payments if compensatory damage amounts in qualifying judgments exceed certain amounts: $20 million for individuals, and $35 million for the total of immediate family members' judgment amounts.[7] These provisions provide "caps" on the amounts eligible claimants can receive from the Fund. The Fund applies the $20 million individual cap before applying the $35 million family cap, and then uses these adjusted amounts when calculating payments.

## iii. Prohibition on Payments to Anyone Criminally Culpable for an Act of International Terrorism

The Act contains a special exclusion provision, which provides that no individual "who is criminally culpable for an act of international terrorism" may "receive any compensation . . . either directly or on behalf of a victim." *Id.* at (h). The Special Master consulted with the Federal Bureau of Investigation ("FBI") to ensure that background checks were conducted on eligible claimants.[8]

## iv. Recipients of 9/11 Victim Compensation Fund Awards or Award Determinations

The Act imposes limitations on compensation to claimants who received an award or an award determination under section 405 of the Air Transportation Safety and System Stabilization Act ("ATSSSA"). Specifically, subsection (d)(3)(A)(ii)(III) of the Act provides:

> In the event that a United States person, or the immediate family member of such person, has an eligible claim under this section and **has received an award or an award determination** under section 405 of the Air Transportation Safety and System Stabilization Act (49 U.S.C. 40101 note), the amount of compensation to which such person, or the immediate family member of such person, was determined to be entitled under section 405 of the Air Transportation Safety and System Stabilization Act (49 U.S.C. 40101 note) shall be considered controlling for the purposes of this section, notwithstanding any compensatory damages amounts such person, or immediate family

---

[7] "(I) In the event that a United States person has an eligible claim that exceeds $20,000,000, the Special Master shall treat that claim as if it were for $20,000,000 for purposes of this section. (II) In the event that a United States person and the immediate family members of such person, have claims that if aggregated would exceed $35,000,000, the Special Master shall, for purposes of this section, reduce such claims on a *pro rata* basis such that in the aggregate such claims do not exceed $35,000,000." *Id.* at (d)(3)(A)(ii).

[8] FBI background checks were conducted on the eligible claimants, such as the victim himself or herself, or the personal representative of deceased victims. FBI background checks were not conducted on the beneficiaries of a deceased claimant's estate (other than personal representatives) because they did not receive any compensation directly from the Fund or on behalf of the victim. In addition, as stated in the System of Records Notice ("SORN") (Department of Justice, Privacy Act of 1974; Systems of Records, 81 Fed. Reg. 45539, 45540 (July 14, 2016)), Fund records were disseminated to "the Department of [the] Treasury to ensure that any recipients of federal payments who also owe delinquent federal debts have their payment offset or withheld or reduced to satisfy the debt."

Report Regarding Second Distribution

>member of such person, is deemed eligible for or entitled to pursuant to a final judgment described in subsection (c)(2)(A). [Emphasis added.]

Pursuant to this language, a claimant who received a compensation award from the September 11th Victim Compensation Fund ("VCF"), or a claimant who did not actually receive compensation but who was subject to "an award determination" by the VCF Special Master, is ineligible to receive compensation from the Fund. (Individuals who voluntarily opted out of the VCF in order to pursue litigation against the airlines are, however, eligible.)[9]

Subsection (d)(3)(A)(ii)(III) of the Act requires the Special Master to consider section 405 of the ATSSSA as controlling when it comes to Fund award determinations. Because the VCF made award determinations and compensated victims of 9/11 and their families for those amounts, they are precluded by the terms of the Act from receiving compensation from the Fund. (Not so, however, if the individual opted out of the VCF to pursue litigation against the airlines.) No additional compensation from the Fund is permitted, even in cases where the Fund finds such claimants otherwise eligible.

In addition, if a claimant received money based only on an approved local estate distribution plan under section 405 of the ATSSSA, but the VCF did not make an award or award determination as to that individual, then the Act provides that the claimant is eligible to receive compensation from the Fund.

A total of 223 eligible claimants (136 from the initial round, 87 from the second round) who had final judgments also received an award or award determination from the VCF. Claimants must report to the Fund payments from the VCF along with any other sources of compensation. Although these claimants were determined to be eligible, because their VCF awards or award determinations were considered controlling under the Act, and they had been paid by the VCF, they were not entitled to any compensation from the Fund. Therefore, no Fund award amounts were calculated and allocated for these claimants.

As a result of the specific statutory language of both the VCF and the Act:

1. Individuals who received a VCF award or a VCF award determination (even though such individuals may not have received any compensation), are ineligible for a subsequent Fund award.
2. But individuals who opted out of the VCF in order to pursue separate individual litigation against the airlines are eligible to receive a Fund award because they did not receive a VCF award, nor did they receive a VCF award determination.
3. Individuals who did receive some amount of VCF money based on a local estate distribution plan – but no direct VCF award or award determination – are eligible to receive compensation from the Fund if they hold final judgments and meet other eligibility requirements.
4. Finally, VCF family members who did not receive a VCF award or a VCF award determination, *e.g.*, victims' siblings, grandparents, *etc.*, are eligible to receive

---

[9] VCF claimants generally had to waive their rights to sue, but could still make VCF claims even if they had brought two types of lawsuits: civil actions against terrorists and civil actions to recover collateral source obligations. *See* https://www.vcf.gov/pdf/VCF_Overview.pdf.

compensation from the Fund if they hold final judgments and meet other eligibility requirements.

Changes to these statutory provisions to alter these outcomes would require legislative changes.

### v. Conditional Payments Allocated but not Disbursed

The Act includes a special provision for Settling Judgment Creditors as identified in the order dated May 27, 2014, in the proceedings captioned *In Re 650 Fifth Avenue & Related Properties*, No. 08 Civ. 10934 (S.D.N.Y.).[10] These individuals had the option to file conditional applications; for these claimants the Fund determined eligibility and award amounts, but withheld the payments, pending a final judgment in the proceedings. Seventy-one (71) Settling Judgment Creditors from *In Re 650 Fifth Avenue & Related Properties* filed applications for conditional payment, which includes those Settling Judgment Creditors who had not received an award or award determination under section 405 of the ATSSSA, and were allocated award payments. The Special Master has allocated, but not distributed, $80,875,527.59 ($61,868,069.53 from the initial round and $19,007,458.06 from the second round) to these claimants. The litigation remains pending and the allocated amount is being withheld until a final judgment is entered.

5.   **ANALYSIS OF PAYMENTS MADE TO ELIGIBLE CLAIMANTS FROM THE FUND**

   a. **Number of Applications for Compensation Submitted**

From July 14, 2016 to December 1, 2016, the Fund received 2,883 applications for compensation. These applications were considered for authorization for an initial payment. From December 2, 2016 to September 14, 2018, the Fund received 3,743 applications for consideration for the Special Master's authorization of second-round payments.[11] Twelve (12) of these claims were hold-over claims from the initial round, *i.e.*, they were deemed deficient for consideration for initial payments, but the claimants cured the deficiencies for consideration for second-round payments. From the inception of the Fund to 2018, a total of 6,614 applications for compensation has been submitted to the Fund.

   b. **Number of Applications Approved and Amount of Each Award**

The Special Master approved 3,172 applications submitted for consideration for second-round payments. Eighty-seven (87) of these eligible claimants were not included when the Fund calculated awards for second-round payments, because they received awards or award determinations from the VCF, as explained in section 4(d)(iv), *supra*. Thus, 3,085 of the second-round applications were deemed eligible for compensation in second-round payments.

---

[10] Discussion of the special provision for judgment creditors in *Peterson v. Islamic Republic of Iran*, No. 10 Civ. 4518 (S.D.N.Y) can be found in the August 2017 Supplemental Report to Congress.
[11] Of the 3,743 new applications submitted to the Fund, the Special Master determined that 542 applications were deficient as of the September 14, 2018 deadline.

Report Regarding Second Distribution

Claimants who received an award in the initial round were not required to re-submit an application, and 2,038 of these claimants were eligible for future distributions.[12]

The Fund calculated second-round awards in accordance with the Act for the 5,124 total eligible claimants. As explained in the August 2017 Supplemental Report to Congress, one claim identified sources of compensation other than the Fund that fully satisfied the compensatory damages awarded by a United States district court. Thus, although the Fund calculated awards for 5,124 eligible claims, that claimant did not receive an award because the claim had been paid in full.

Pursuant to the Privacy Act Notice in the Fund's Application Form and the SORN, the amount of each award paid is provided in a separate addendum. Generally, the award amounts for these 5,123 eligible claimants ranged from approximately $2,000 to $840,000. The chart below shows that most claimants received award payments of less than $400,000.



Fund Awards

### c. Number of Applications Denied and Reasons for Denial

The Special Master denied 29 applications that were submitted for consideration for second-round payments. All but one of these claims were denied because the claimants did not meet the statutory eligibility requirements; *i.e.*, they did not hold a qualifying final judgment, or they were not qualifying hostages held in Iran from 1979 to 1981, or did not demonstrate that they were qualifying spouses or children of such a hostage. One (1) application was denied as untimely. Of the total 6,614 applications that have been submitted to the Fund to date, 569 have been denied.

---

[12] The August 2017 Supplemental Report to Congress explained that 2,116 initial-round eligible claims may receive future distributions; 78 of those claims have been determined not to be eligible for second-round payments.

9

### d. Number of Applications Pending for Which Compensatory Damages Have Not Been Paid in Full

A total of 5,123 applications remain pending for which compensatory damages have not been paid in full and may be eligible to receive payments when the Fund makes future distributions.[13] Of these 5,123 applications, a significant portion have received second-round payments. The amounts of these payments are detailed in an addendum to this report. Those who did not receive payments to date include the 71 Settling Judgment Creditors from *In Re 650 Fifth Avenue* who filed applications for conditional payment. As explained in section 4(d)(v), *supra*, those claimants were allocated payment amounts, but the allocated amounts have been withheld pending a final resolution in that case. Finally, 23 claimants had already received more than 30 percent of their total compensatory judgment amounts from other sources, seven of whom received payment from the initial round. Accordingly, they were precluded from receiving second-round payment amounts, as explained in section 4(d)(i), *supra*, but may receive payments in future distributions.

### e. Total Amount of Compensatory Damages From Eligible Claims That Have Been Paid and Remain Unpaid

To date, the Special Master has paid or is scheduled to pay 5,107 claims, which are the 5,123 claims that have not been paid in full, less the 16 claims that received more than 30 percent of their total compensatory judgments from sources other than the Fund. The 5,107 eligible claims have been paid or are scheduled to be paid a total of $2,186,253,618.27 in compensatory damages.

A total of $27,070,685,391.39 in compensatory damages (or statutory award amounts for Iran hostages and their spouses and children) currently remains unpaid on the 5,123 eligible claims that may receive future distributions.

## 6. FUTURE DISTRIBUTIONS

The Act provides that "[o]n January 1 of the second calendar year that begins *after the date of the initial payments* . . . if funds are available in the Fund, the Special Master shall authorize additional payments on a *pro rata* basis to those claimants with eligible claims . . . and shall authorize additional payments for eligible claims annually thereafter if funds are available in the Fund." *Id.* at (d)(4) (emphasis added). As noted above, the Fund issued initial payments in 2017. Therefore, in accordance with the Act, the Special Master authorized second-round payments on January 1, 2019. The Fund began distributing second-round payments on January 2, 2019, on a rolling basis. The Special Master is statutorily required to authorize the third round of payments on January 1, 2020, if funds are available. *Id.* The Special Master will authorize distributions annually thereafter until the Fund terminates in 2026. *Id.* at (e)(6)(A).

---

[13] The Fund has eliminated certain applications from further consideration for compensation, and will not factor them into future calculations. As explained earlier, a total of 223 claimants received VCF awards or award determinations, and thus will not receive compensation from the Fund.