IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

In re TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

Case No. 1:03-md-01570-GBD-SN

*This document relates to:*

ORAL ARGUMENT REQUESTED

*The Underwriting Members of Lloyd's
Syndicate 2, et al. v. Al Rajhi Bank, et al.*,
No. 16-cv-7853; *Aguilar, et al. v. Kingdom of
Saudi Arabia, et al.*, No. 16-cv-09663;
*Addesso, et al. v. Kingdom of Saudi Arabia, et
al.*, No. 16-cv-09937; *Hodges, et al. v.
Kingdom of Saudi Arabia, et al.*, No. 17-cv-
00117; *Aiken, et al. v. Kingdom of Saudi
Arabia, et al.*, No. 17-cv-00450; *Charter Oak
Fire Insurance Co., et al. v. Al Rajhi Bank, et
al.*, No. 17-cv-02651; *Abarca, et al., v.
Kingdom of Saudi Arabia, et al.*, No. 17-cv-
03887; *Arrowood Indemnity Co., et al. v.
Kingdom of Saudi Arabia, et al.*, No. 17-cv-
03908; *Abedhajajreh v. Kingdom of Saudi
Arabia, et al.*, No. 17-cv-06123; *Fraser, et al.
v. Al Qaeda Islamic Army, et al.*, No. 17-cv-
07317; *Muenchener Rueckversicherungs-
Gesellschaft Aktiengesellschaft in Muenchen,
et al. v. Kingdom of Saudi Arabia, et al.*,
No. 17-cv-07914; and *Abbate, et al. v.
Kingdom of Saudi Arabia, et al.*, No. 17-cv-
08617.

**REPLY MEMORANDUM IN SUPPORT OF
AL RAJHI BANK'S MOTION FOR THE COURT TO
<u>DECIDE THE BANK'S PENDING RULE 12(b)(6) MOTION TO DISMISS</u>**

**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005

March 9, 2020

*Counsel for Al Rajhi Bank*

## TABLE OF CONTENTS

I.      THIS COURT IS NOT BARRED FROM RULING ON THE BANK'S
        ALTERNATIVE RULE 12(b)(6) MOTION TO DISMISS ................................................. 1

        A.      The Court May Assume Personal Jurisdiction Because Dismissal Of
                Plaintiffs' Claims Under Rule 12(b)(6) Is Foreordained .........................................1

        B.      The Second Circuit's Mandate Was Confined To Personal Jurisdiction
                And Does Not Address The Bank's Alternative Rule 12(b)(6) Arguments
                That Were Not On Appeal .........................................................................................4

II.     THE SECOND CIRCUIT'S SUMMARY ORDER ON JURISDICTIONAL
        DISCOVERY DID NOT RESOLVE AL RAJHI BANK'S RULE 12(b)(6)
        MOTION TO DISMISS ................................................................................................. 7

        A.      The Second Circuit's Remand For Jurisdictional Discovery Does Not
                Render Plaintiffs' Claims Sufficient Under Rule 12(b)(6), But Rather
                Supports Dismissal For Failure To State A Claim....................................................7

                1.      The Second Circuit Did Not Identify Any Allegations "Related To"
                        Specific Intent As Sufficient Under Rule 12(b)(6)......................................8

                2.      The Second Circuit Did Not Even Identify Any Allegations "Related
                        To" Specific Intent As Sufficient Under Rule 12(b)(2).............................10

        B.      The Deficiencies In The Amended Complaint Identified By The Second
                Circuit Require Dismissal For Failure To State A Claim......................................11

                1.      The Amended Complaint's Gaps Require Dismissal Of Plaintiffs'
                        Primary-Liability Claims ...........................................................................11

                2.      The Amended Complaint's Gaps Require Dismissal Of Plaintiffs'
                        Aiding-and-Abetting Claim .......................................................................14

                3.      The Amended Complaint's Gaps Require Dismissal Of Plaintiffs'
                        Conspiracy Claim.......................................................................................17

CONCLUSION...................................................................................................................19

# TABLE OF AUTHORITIES

## CASES

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006)........................................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................. 7-9, 11

*Ashton v. Al Qaeda Islamic Army*,
  298 F. Supp. 3d 631 (S.D.N.Y. 2018)...........................................................13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................. 7-8, 11

*Ctr. for Reprod. Law & Policy v. Bush*,
  304 F.3d 183 (2d Cir. 2002)...................................................................... 1-3

*Chevron Corp. v. Naranjo*,
  667 F.3d 232 (2d Cir. 2012)........................................................................

*In re Coudert Brothers LLP*,
  809 F.3d 94 (2d Cir. 2015)........................................................................ 4-7

*Geneva Pharm. Tech. Corp. v. Barr Labs.*,
  No. 98-cv-861, 2005 U.S. Dist. LEXIS 19069 (S.D.N.Y. Sept. 7, 2005) ...............................4

*Gill v. Arab Bank, PLC*,
  893 F. Supp. 2d 542 (E.D.N.Y. 2012) ...........................................................13

*Halberstam v. Welch*,
  705 F.2d 472 (D.C. Cir. 1983) ................................................................ 14-16

*Havlish v. 650 Fifth Ave. Co.*,
  934 F.3d 174 (2d Cir. 2019).......................................................................5, 18

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010)..................................................................................... 11-12

*Holmes v. Secs. Inv. Prot. Corp.*,
  503 U.S. 258(1992)...................................................................................12, 14

*Kaplan v. Lebanese Canadian Bank, SAL*,
  405 F. Supp. 3d 525 (S.D.N.Y. 2019)................................................... *passim*

*Lightfoot v. Cendant Mortg. Corp.*,
   137 S. Ct. 553 (2017) ..................................................................................................2

*Linde v. Arab Bank, PLC*,
   882 F.3d 314 (2d Cir. 2018) .............................................................................. 14-16

*LLM Bar Exam, LLC v. Barbri, Inc.*,
   271 F. Supp. 3d 547 (S.D.N.Y. 2017) ..........................................................................2

*O'Grady v. BlueCrest Capital Mgmt. LLP*,
   646 F. App'x 2 (2d Cir. 2016) .....................................................................................9

*O'Sullivan v. Deutsche Bank AG*,
   No. 17-cv-8709, 2019 U.S. Dist. LEXIS 73305 (S.D.N.Y. Mar. 28, 2019) ............... 14, 18-19

*Ortiz-Franco v. Holder*,
   782 F.3d 81 (2d Cir. 2015) ...................................................................................... 2-3

*Puricelli v. Argentina*,
   797 F.3d 213 (2d Cir. 2015) .........................................................................................5

*In re Rationis Enters., Inc.*,
   261 F.3d 264 (2d Cir. 2001) .........................................................................................2

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013) .................................................................................11, 14

*Ruhrgas AG v. Marathon Oil Co.*,
   526 U.S. 574 (1999) ................................................................................................ 2-3

*Sherrod v. Breitbart*,
   720 F.3d 932 (D.C. Cir. 2013) ...................................................................................3

*Siegel v. HSBC N. Am. Holdings, Inc.*,
   933 F.3d 217 (2d Cir. 2019) .............................................................................. 15-16

*Sinochem Int'l v. Malaysia Int'l Shipping*,
   549 U.S. 422 (2007) ....................................................................................................2

*Spring v. Allegany-Limestone Cent. Sch. Dist.*,
   No. 14-cv-476S, 2017 U.S. Dist. LEXIS 209250 (W.D.N.Y. Dec. 20, 2017) ..................... 4-5

*SPV OSUS, Ltd. v. UBS AG*,
   882 F.3d 333 (2d Cir. 2018) .........................................................................................1

*Steel Co. v. Citizens for a Better Environment,*
    523 U.S. 83 (1998) ........................................................................................ 1-3

*In re Terrorist Attacks on September 11, 2001* ("*Terrorist Attacks I*"),
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) ........................................................ 16-18

*In re Terrorist Attacks on September 11, 2001* ("*Terrorist Attacks V*"),
    740 F. Supp. 2d 494 (S.D.N.Y. 2010) ...............................................................7

*O'Neill v. Al Rajhi Bank (In re Terrorist Attacks on September 11, 2001),*
    714 F.3d 118 (2d Cir. 2013) ............................................................ 3, 11, 13-14

*O'Neill v. Asat Trust Reg. ("Terrorist Attacks VII"),*
    714 F.3d 659 (2d Cir. 2013) ................................................................... 10, 16

*In re Terrorist Attacks on September 11, 2001,*
    295 F. Supp. 3d 416 (S.D.N.Y. 2018) ................................................... 1, 4, 17

*Vera v. Banco Bilbao Vizcaya Argentaria, S.A.,*
    946 F.3d 120 (2d Cir. 2019) .............................................................................2

*Weiss v. Nat'l Westminster Bank PLC,*
    381 F. Supp. 3d 223 (E.D.N.Y. 2019) ...................................................... 13, 14

## STATUTES AND RULES

18 U.S.C. § 2331(a) ............................................................................................14

18 U.S.C. § 2333(a) ............................................................................................14

18 U.S.C. § 2333(d) ............................................................................................17

Justice Against Sponsors of Terrorism Act ("JASTA"),
    Pub. L. 114-222, § 2(a)(5), 130 Stat. 852 (2016) ........................................17

In their Opposition, Plaintiffs attempt to erect false hurdles to insulate their already-rejected allegations from review.  Each and every one of Plaintiffs' claims against Al Rajhi Bank must be dismissed under prior precedent in this multidistrict litigation, as well as under other recent ATA decisions by the Second Circuit and this Court.  Accordingly, and in keeping with *Center for Reproductive Law* (the Second Circuit decision interpreting *Steel Co.*), nothing prevents this Court from immediately proceeding to consider the Bank's Rule 12(b)(6) arguments and dismissing the Amended Complaint — a pleading that merely recycles allegations previously held by this Court to be insufficient to state a claim.  To proceed first with jurisdictional discovery would needlessly waste judicial and party resources.

## I.   THIS COURT IS NOT BARRED FROM RULING ON THE BANK'S ALTERNATIVE RULE 12(b)(6) MOTION TO DISMISS

### A.   The Court May Assume Personal Jurisdiction Because Dismissal Of Plaintiffs' Claims Under Rule 12(b)(6) Is Foreordained

*Center for Reproductive Law v. Bush*, 304 F.3d 183 (2d Cir. 2002), allows district courts to rule on the merits of a case where the result is "foreordained" by a ruling in a companion case, without first resolving personal (or subject-matter) jurisdiction.  304 F.3d at 194-95 (quoting *Steel Co.*, 523 U.S. at 98); *see SPV OSUS*, 882 F.3d at 346-47 (Calabresi, J., concurring) (explaining that "prior case law allows" a court to "assume personal jurisdiction arguendo and direct a dismissal with prejudice for failure to state a claim").  The prior dismissals by the Second Circuit and this Court of "recycled" and "similar, if not identical" claims in previous cases are tantamount to "companion" decisions that "foreordain[]" the outcome here.  *In re Terrorist Attacks*, 295 F. Supp. 3d at 426; *Ctr. for Reprod. Law*, 304 F.3d at 194.

Plaintiffs' reliance on *Steel Co.* (Opp'n 3-4) is misplaced for at least two reasons.  *First*, *Steel Co.* dealt with Article III jurisdiction, not personal jurisdiction.  *Steel Co.*, 523 U.S. at 98. The Second Circuit has recently affirmed the principle that, "[a]lthough courts *traditionally* treat

personal jurisdiction as a threshold question to be addressed prior to consideration of the merits of a claim, that practice is prudential and *does not reflect a restriction on the power of the courts to address legal issues*." *LLM Bar Exam*, 271 F. Supp. 3d at 574 n.8, *aff'd*, 922 F.3d 136 (2d Cir. 2019) (alterations omitted) (emphases added) (quoting *ONY*, 720 F.3d at 498 n.6).

None of Plaintiffs' authorities rejects the Second Circuit's statement of the law that a court may decide legal issues without first finding personal jurisdiction, and none addresses a decision on the merits prior to finding personal jurisdiction. Opp'n 5. *Sinochem* merely stated the general rule, "clarified" by *Steel Co.*, that a federal court "*generally*" and "*ordinarily*" must decide "jurisdictional questions" before the merits. 549 U.S. at 430-31 (emphases added) (holding that *forum non conveniens* (a non-merits question) could be decided before subject-matter jurisdiction). *Ruhrgas* also repeated the general rule, "as *Steel Co.* held, [that] jurisdiction *generally* must precede merits in dispositional order." 526 U.S. at 577 (emphasis added); *id.* at 584-85 (holding (prior to *Center for Reproductive Law*) that personal jurisdiction could be decided before subject-matter jurisdiction); *see also Lightfoot*, 137 S. Ct. at 562 (stating general rule in the context of contract interpretation, citing *Ruhrgas*); *In re Rationis*, 261 F.3d at 267 (stating (prior to *Center for Reproductive Law*) the general rule under *Steel Co.* and relying on *Ruhrgas* to decide personal jurisdiction before the court's authority to issue a preliminary injunction).

Following *Center for Reproductive Law*, this Court and the Second Circuit have repeatedly assumed jurisdiction to reach a non-constitutional, foreordained merits issue. *See, e.g.*, *Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 137 n.22 (2d Cir. 2019) (observing that the Court in *Hausler* "sensibly avoided delving into the voluminous record" to determine jurisdiction when the plaintiff could not state a claim under the Terrorism Risk Insurance Act); *Ortiz-Franco v. Holder*, 782 F.3d 81, 86 (2d Cir. 2015) (citing immigration cases in which the court assumed

jurisdiction and denied a petition on the merits, and citing *Ctr. for Reprod. Law*, 304 F.3d at 193-94); *see also Sherrod v. Breitbart*, 720 F.3d 932, 400 (D.C. Cir. 2013) (collecting cases from courts of appeal that "assume jurisdiction when the merits decision was 'foreordained' by precedent"). Plaintiffs cite no authority for their assumption that this practice is permitted "only" where a court has personal jurisdiction over co-defendants. Opp'n 5. Indeed, Plaintiffs do not (and cannot) dispute (*see* Opp'n n.2) that the Second Circuit previously affirmed the dismissal of Al Rajhi Bank on the merits without a finding of personal jurisdiction. *See O'Neill v. Al Rajhi Bank*, 714 F.3d 118 (2d Cir. 2013).

*Second*, even if personal jurisdiction were treated like subject-matter jurisdiction, *Steel Co.* does not "forbid[]" this Court from deciding the merits in cases like this one. Opp'n 3-4. In *Center for Reproductive Law*, then-Judge Sotomayor explained that *Steel Co.* prohibits courts from issuing "advisory opinions," but did *not* create a bright-line rule that a court must find subject-matter jurisdiction before deciding merits questions in every case. 304 F.3d at 195; *see Steel Co.*, 523 U.S. at 98 (explaining that assuming subject-matter jurisdiction is improper when used "as a device for reaching a question of law that otherwise would have gone unaddressed"). *Steel Co.* in fact "did not overrule" several prior Supreme Court decisions which the Court "'acknowledged to have diluted the absolute purity of the rule that Article III jurisdiction'" — much less personal jurisdiction — "'is always an antecedent question.'" *Ctr. for Reprod. Law*, 304 F.3d at 193-94 (quoting *Steel Co.*, 523 U.S. at 101); *Ruhrgas*, 526 U.S. at 577 (recognizing *Steel Co.*'s acknowledgment "that 'the absolute purity' of the jurisdiction-first rule had been diluted in a few extraordinary cases").

Here, dismissal of Plaintiffs' claims against the Bank is foreordained. Prior decisions of the Second Circuit and this Court in this multidistrict litigation, as well as other ATA cases, have

firmly held that allegations virtually identical to those at issue here are insufficient to state primary- and secondary-liability ATA claims against the Bank. *See* Mem. 8-12 (ECF No. 3703); Reply 1-3 (ECF 3869); *see also infra* Section II. Not only do Plaintiffs ask this Court to needlessly opine on the question of personal jurisdiction when dismissal for failure to state a claim is foreordained, they also argue that the Court must first wade through jurisdictional discovery and render findings of fact before it could even consider the sufficiency of Plaintiffs' allegations under Rule 12(b)(6). Opp'n 2, 5. The Court need not do so and, instead, should dismiss Plaintiffs' claims.

### B. The Second Circuit's Mandate Was Confined To Personal Jurisdiction And Does Not Address The Bank's Alternative Rule 12(b)(6) Arguments That Were Not On Appeal

The "procedural posture of the appeal, by necessity," dictates the scope of the Second Circuit's mandate. *Geneva Pharm. Tech. Corp. v. Barr Labs.*, No. 98-cv-861, 2005 U.S. Dist. LEXIS 19069, at *7-9 (S.D.N.Y. Sept. 7, 2005); *see also Coudert Bros.*, 809 F.3d at 98 ("[T]he mandate is controlling only 'as to matters within its compass.'"). As Plaintiffs recognize, this Court "d[id] not consider" the Bank's Rule 12(b)(6) arguments and instead ruled only on the Bank's Rule 12(b)(2) motion. *In re Terrorist Attacks*, 295 F. Supp. 3d at 421 n.5; Opp'n 3 (acknowledging that this Court previously "refused to address" the Bank's Rule 12(b)(6) arguments). Thus, the "procedural posture of the appeal" was to review *only* the Rule 12(b)(2) decision and did not cover Rule 12(b)(6) issues at all. Nothing in the mandate prevents this Court from deciding this case on alternative grounds presented but not previously considered by this Court, and not decided by the Second Circuit. *See Coudert Bros.*, 804 F.3d at 99 ("When the mandate leaves issues open, the lower court may dispose of the case on grounds not dealt with by the remanding appellate court."); *Geneva Pharm.*, 2005 U.S. Dist. LEXIS 19069, at *9, 11-13 (rejecting argument that Second Circuit mandate barred further litigation on issues of which "Plaintiffs never sought" review); *Spring v. Allegany-Limestone Cent. Sch. Dist.*, No. 14-cv-476S,

2017 U.S. Dist. LEXIS 209250, at *15 (W.D.N.Y. Dec. 20, 2017) (holding mandate of Second Circuit's ruling on deliberate-indifference element of due process claim did not "preclude[]" ruling on deliberate-indifference element of ADA claim).

Plaintiffs' cited authorities are not to the contrary and, indeed, favor the Bank. The mandate in *Havlish* (cited at Opp'n 5-6) directed the district court to address "only" two issues on remand, and thus was far more restrictive than, and does not resemble, the Second Circuit's Summary Order here. 934 F.3d at 182. *Puricelli* (cited at Opp'n 6) is inapposite for similar reasons; the Second Circuit "stated that the District Court . . . '*must* adopt an individualized approach'" to damages in defining the class on remand, and the District Court "resurrected Plaintiffs' original class definition" without an individualized approach. 797 F.3d at 218 (emphasis in original).

Upon a close reading, *Coudert Brothers* also does not "directly foreclose" this Court from deciding the Bank's Rule 12(b)(6) motion (Opp'n 7-8), and in fact supports the Bank's motion. In *Coudert Brothers*, a New York federal bankruptcy court held that the plaintiffs' claim was time-barred under New York's choice-of-law rules. 809 F.3d at 96-97. The plaintiff moved for reconsideration, arguing that under Connecticut's choice-of-law rules, which the plaintiff contended should have been applied, the claim was not time-barred. *Id.* at 97. The bankruptcy court denied the motion, holding that the plaintiff's argument had not been raised before and could not be considered on reconsideration, and, in any event, that New York's choice-of-law rules applied. *Id.* On appeal, the Second Circuit vacated and remanded with specific instructions "to apply Connecticut's choice of law rules in deciding [the plaintiffs'] motion to reconsider." *Id.* On remand, the bankruptcy court instead denied the motion for reconsideration again based on the bankruptcy court's prior alternative holding that the argument had not been timely raised and could

not be considered on a motion for reconsideration.  *Id.* at 98.  Deciding that the bankruptcy court had violated its mandate, the Second Circuit explained:  "[I]f we elect to consider a new argument on appeal, on remand the lower court may not ignore our ruling on the basis that we relied on a noncognizable 'new argument.'  By remanding in this case, we *necessarily* implied that [the plaintiff's] argument should not be disregarded as a 'new argument.'"  *Id.* at 100 (emphasis added).  The Second Circuit's mandate in *Coudert Brothers*, therefore, was contingent on a legally necessary, antecedent determination that the lower court proceeded to directly violate.

Plaintiffs cite no authority suggesting that a grant of jurisdictional discovery is legally contingent on a determination that Rule 12(b)(6) must be decided after personal jurisdiction.  And nothing in the Second Circuit's remand for jurisdictional discovery "indicate[s]" (Opp'n 7) that the Second Circuit "necessarily" decided that this case could not be decided on alternative grounds under Rule 12(b)(6).  *Coudert Bros.*, 809 F.3d at 100.  On the contrary, the Second Circuit left merits issues "open" and this Court "may dispose of the case on [merits] grounds not dealt with by the remanding appellate court."  *Id.* at 99.

This Court said as much in *Kaplan*.  There, it dismissed the plaintiffs' claims for lack of personal jurisdiction, and the Second Circuit reversed, concluding that plaintiffs had sufficiently alleged aiding and abetting "as required to establish jurisdiction" for a claim under the Alien Tort Statute.  *Kaplan*, 405 F. Supp. 3d at 536 n.6.  After remand, the plaintiffs argued that "the Second Circuit's previous ruling[] . . . preclude[d] Defendant's argument that the complaint fails to sufficiently allege a claim for aiding and abetting" under the ATA.  *Id.*  Even though the factual allegations for both issues were similar, this Court rejected the argument because the Second Circuit rendered its ruling "in the context of a *jurisdictional inquiry*," not on the merits.  *Id.*

Finally, Plaintiffs submit that this Court must conduct jurisdictional discovery "[e]ven if jurisdiction *could* be assumed at this stage." Opp'n 5. This wooden reading of the Second Circuit's order ignores "the spirit of the mandate." *Coudert Bros.*, 809 F.3d at 99 (internal quotations omitted). The Second Circuit ruled that this Court could not dismiss the Bank for lack of personal jurisdiction without first engaging in jurisdictional discovery. *See* Summ. Order 4. The "spirit" of the Second Circuit's mandate, therefore, was not to order jurisdictional discovery as an end to itself. Any other reading would ignore that jurisdictional discovery serves only to further a jurisdictional inquiry, and is not "warranted" if the court does not address personal jurisdiction. *Terrorist Attacks V*, 740 F. Supp. 2d at 511.

In sum, the Second Circuit's mandate does not preclude this Court from assuming personal jurisdiction and dismissing the Amended Complaint on Rule 12(b)(6) grounds.

## II.   THE SECOND CIRCUIT'S SUMMARY ORDER ON JURISDICTIONAL DISCOVERY DID NOT RESOLVE AL RAJHI BANK'S RULE 12(b)(6) MOTION TO DISMISS

### A.   The Second Circuit's Remand For Jurisdictional Discovery Does Not Render Plaintiffs' Claims Sufficient Under Rule 12(b)(6), But Rather Supports Dismissal For Failure To State A Claim

Plaintiffs' assertion that the Second Circuit's Summary Order somehow "resolves" Al Rajhi Bank's motion to dismiss under Rule 12(b)(6) is baseless. Opp'n 8-12, 24, 31. The Second Circuit's reference to allegations "related to . . . specific intent" does not establish the sufficiency of Plaintiffs' claims. First, the Second Circuit did not assess Plaintiffs' allegations under the *Twombly* / *Iqbal* pleading standard applicable on a motion to dismiss under Rule 12(b)(6). Second, the Second Circuit did not even determine that the Amended Complaint sufficiently alleges personal jurisdiction over Al Rajhi Bank, but instead identified factual gaps in the Amended Complaint warranting jurisdictional discovery. The Second Circuit's Order therefore in no way establishes the sufficiency of Plaintiffs' claims under *Twombly* / *Iqbal*.

**1.  The Second Circuit Did Not Identify Any Allegations "Related To" Specific Intent As Sufficient Under Rule 12(b)(6)**

To assess the sufficiency of claims under Rule 12(b)(6), courts must apply a "two-pronged approach."  *Iqbal*, 556 U.S. at 679.  As this Court has explained:  "A district court must first review a plaintiff's complaint to identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Kaplan*, 405 F. Supp. 3d at 531 (quoting *Iqbal*, 556 U.S. at 679)).  The Second Circuit did not take either step in its oblique reference to allegations "related to" specific intent.

First, the Second Circuit did not exclude conclusory allegations, stating instead that mere "*inclusion* of allegations related to Al Rajhi Bank's specific intent to further terrorism in the United States . . . warrants jurisdictional discovery."  Summ. Order 4 (emphasis added).  The Second Circuit did not identify any factual allegations supporting a plausible inference of specific intent. Rather, the Second Circuit appears to have based its decision on the conclusory allegations "related to specific intent" in the Amended Complaint.  Summ. Order 4.  *See* Am. Compl. ¶¶ 87, 175, 313, 324-25, 335.

Second, the Second Circuit did not test the Amended Complaint's allegations for plausibility, *Twombly* and *Iqbal* require.  *See Twombly*, 550 U.S. at 556 (requiring "plausible grounds to infer" wrongdoing); *Iqbal*, 556 U.S. at 682 (same).  Instead, the Second Circuit "resolv[ed] *all doubts* in the plaintiff's favor."  Summ. Order 4 (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (relying on pre-*Twombly* case, *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (per curiam)) (emphasis added)).  The Second Circuit thus applied a pleading standard leading to dismissal only if "it appears *beyond doubt* that the plaintiff can prove *no* set of facts in support of his claim which would entitle him to relief."

*Twombly*, 550 U.S. at 561 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (emphasis added)).

Regardless of whether this "beyond doubt" dismissal standard applies when determining whether to grant jurisdictional discovery, *Twombly* rejected this standard for purposes of resolving a motion to dismiss under Rule 12(b)(6).   550 U.S. at 557; *see O'Grady v. BlueCrest Capital Mgmt. LLP*, 646 F. App'x 2, 4 n.2 (2d Cir. 2016) ("The *Twombly/Iqbal* pleading standard supplanted the 'no set of facts' standard set forth in *Conley v. Gibson* . . . .").

As a result, the Second Circuit's reference to the inclusion of allegations related to the Bank's purported specific intent was not in any way a determination of the sufficiency of those allegations under Rule 12(b)(6).   Plaintiffs not only incorrectly assert that the Second Circuit "necessarily found instead that ARB acted with awareness and specific intent to foster al Qaeda's anti-U.S. terrorist agenda," they depend on this erroneous conclusion to overblow the significance of the Summary Order in other ways that are misleading and wholly unsupportable. Opp'n 9.  For example, the Second Circuit did not "necessarily" hold, based on any finding of specific intent, that Plaintiffs have alleged banking services that were not "routine," that the Bank provided direct support to Al Qaeda, and that the "actions and intent" of others could be attributed to the Bank. *Id.*  Stripped of these faulty premises, Plaintiffs' contentions that the Summary Order supports the merits of their claims fall apart.   *Id.* at 8 (asserting that the Summary Order "establishes" that the Bank's motion to dismiss "is without merit with respect to aiding and abetting liability"); *id.* at 23 (asserting that the Summary Order "confirms" that the Amended Complaint alleges an agreement between the Bank and Al Qaeda); *id.* at 31 (asserting that the Summary Order "appears to confirm the causal relationship between ARB's conduct and the losses suffered by Plaintiffs").

### 2. The Second Circuit Did Not Even Identify Any Allegations "Related To" Specific Intent As Sufficient Under Rule 12(b)(2)

Even assuming that a sufficient allegation of specific personal jurisdiction may be tantamount to sufficient allegations of aiding and abetting (Opp'n 9-10) or proximate causation (Opp'n 31), the Second Circuit did not conclude that this Court has personal jurisdiction over Al Rajhi Bank. The Second Circuit did not even state that Plaintiffs had made out a *prima facie* case of personal jurisdiction. Rather, "[g]iven the factual issues that persist," the Second Circuit followed its decision in *Terrorist Attacks VII*, and remanded for jurisdictional discovery. Summ. Order 4 (citing *Terrorist Attacks VII*, 714 F.3d at 678-79).

Just as here, the Second Circuit in *Terrorist Attacks VII* identified "factual issues" with the plaintiffs' theory of personal jurisdiction and, as here, permitted discovery regarding "(1) when the alleged support was given to al Qaeda, (2) what support was given, (3) whether the support was 'earmarked' for use in a specific schemes or attacks not directed at the United States, [and] (4) specifically how these defendants were involved in the process of providing support to al Qaeda." *Terrorist Attacks VII*, 714 F.3d at 678-79; *see* Summ. Order 4. The Second Circuit's determination here to permit jurisdictional discovery against the Bank, despite having "constru[ed] all pleadings and affidavits in the light most favorable to the plaintiff" (Summ. Order 4), necessarily means that, just as in *Terrorist Attacks VII*, these critical facts for establishing personal jurisdiction were "*not* clear from plaintiffs' allegations" (714 F.3d at 678-79 (emphasis added)). Because each of these missing facts is *also* critical for stating a claim for primary liability, aiding and abetting liability, or conspiracy, the Summary Order's conclusions confirm that the Amended Complaint cannot survive the Bank's motion to dismiss under Rule 12(b)(6).

**B.      The Deficiencies In The Amended Complaint Identified By The Second Circuit Require Dismissal For Failure To State A Claim**

Putting aside the Second Circuit's inconclusive references to allegations of specific intent, the Summary Order identified "factual issues" that the Amended Complaint leaves open. Specifically, the Second Circuit identified the following gaps in the Amended Complaint's factual allegations: "(1) when the alleged support was given to al Qaeda, (2) what support was given, (3) whether the support was 'earmarked' for use in  specific schemes or attacks not directed at the United States, [and] (4) specifically how these defendants were involved in the process of providing support to al Qaeda." Summ. Order 4.  These gaps are fatal to Plaintiffs' primary- and secondary-liability claims under the *Twombly* / *Iqbal* pleading standard for Rule 12(b)(6).

**1.      The Amended Complaint's Gaps Require Dismissal Of Plaintiffs' Primary-Liability Claims**

To state a claim for primary liability, Plaintiffs must allege that Al Rajhi Bank's financial services and donations to charities proximately caused their injuries, i.e., that the Bank's conduct was "a substantial factor in the sequence of responsible causation" and that "the alleged violation led directly" to plaintiffs' injury, which, in addition, was "reasonably foreseeable or anticipated as a natural consequence." *Rothstein*, 708 F.3d at 91-92, 95 (dismissing ATA primary liability claims for lack of proximate causation) (citations omitted)); *O'Neill v. Al Rajhi Bank*, 714 F.3d at 124 (affirming dismissal of substantively identical claims against Al Rajhi Bank for lack of proximate causation).  Absent allegations about "what support" the Bank actually provided to Al Qaeda (Summ. Order 4), the Amended Complaint cannot plausibly show that the Bank's purported support was a "substantial factor" in causing Plaintiffs' injuries from the September 11 attacks.

Well-settled law on proximate causation, moreover, "requires 'some direct relation between the injury asserted and the injurious conduct alleged.' A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9

(2010) (quoting *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 271, 274 (1992) (citations omitted)); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("[T]he central question [a court] must ask [when analyzing proximate causation] is whether the alleged violation led directly to the plaintiff's injuries."); *Holmes*, 503 U.S. at 268 (holding that proximate cause demands "some direct relation between the injury asserted and the injurious conduct alleged"); *Kaplan*, 405 F. Supp. 3d at 532-33 (dismissing primary-liability claims where "[t]he causal link between Defendant's provision of financial services and Plaintiffs' injuries is too attenuated" absent "factual, non-conclusory allegations . . . that Defendant provided money directly to Hizbollah to carry out the attacks [or] that any funds transferred through the [bank's accounts] were, in fact, sent to Hizbollah and then used by Hizbollah to perpetrate the rocket attacks").

The Second Circuit's conclusion that the Amended Complaint does not clearly allege what support was given "*to Al Qaeda*," and leaves open "specifically how [Al Rajhi Bank was] involved in the process of providing support *to al Qaeda*" (Summ. Order 4 (emphasis added)), confirms that the Amended Complaint fails to plausibly show that any purported Bank support was "directly related" to the September 11 attacks.

To argue that Al Rajhi Bank provided "direct support" to Al Qaeda (*e.g.*, Opp'n 32), Plaintiffs are forced to conflate the charities with Al Qaeda itself. *See, e.g.*, Opp'n 16 (characterizing charities as "components of al Qaeda itself"); *id.* at 30 (referring to "al Qaeda's charity network" and "al Qaeda charities"); *id.* at 33 (stating that "the charities were al Qaeda operations"). Plaintiffs' artifice does not square with the Summary Order. If the Second Circuit had read the Amended Complaint to allege that the Bank's purported "financial services and donations to charities" were in fact provided *to Al Qaeda itself*, the Second Circuit would not have concluded that the Amended Complaint fails to factually allege "what support was given" to Al

Qaeda and "how specifically [Al Rajhi Bank was] involved in the process of providing support to al Qaeda." Summ. Order 4. Moreover, none of the charities in Saudi Arabia was designated at any relevant time as even a supporter of Al Qaeda, much less as a "foreign terrorist organization" ("FTO") for being "al Qaeda itself." Opp'n 16. Indeed, the Amended Complaint does not allege any facts plausibly showing that the Bank's charity customers "participated in, planned, trained the perpetrators of, requested that someone carry out, or were the cause of the attacks giving rise to Plaintiffs' claims." *Weiss*, 381 F. Supp. 3d at 234 (dismissing primary and secondary liability ATA claims against bank for alleged services to charities linked to Hamas).

Proximate causation also requires allegations of a temporal connection between Al Rajhi Bank's alleged support and the September 11 attacks. *See Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 572-73 (E.D.N.Y. 2012) (finding no proximate cause where "[t]he majority of allegedly illicit funds transfers lack a temporal connection to plaintiff's injuries"); *see also Ashton v. Al Qaeda Islamic Army*, 298 F. Supp. 3d 631, 659 (S.D.N.Y. 2018) (finding "acts by the charities to aid and support al Qaeda's efforts in Europe, Africa, the Middle East, and the Far East during the 1980s and 1990s" were "too temporally and geographically remote from the 9/11 Attacks to have proximately caused Plaintiffs' injuries"). The Second Circuit's conclusion that the Amended Complaint does not allege "when [Al Rajhi Bank's] alleged support was given to al Qaeda" (Summ. Order 4) confirms that Plaintiffs have failed to allege a temporal connection between any purported Bank support and the September 11 attacks that plausibly shows proximate causation.

Plaintiffs' extraordinary logical leap that knowledge of a charity customer's link to a terrorist "creates causation and thus liability" (Opp'n 33) contradicts the controlling precedent. *See O'Neill*, 714 F.3d at 124 (holding that allegations that Al Rajhi Bank "provided funding to purported charity organizations known to support terrorism that, in turn, provided funding to al

–13–

Qaeda and other terrorist organizations" were "insufficient for proximate causation purposes"). JASTA did not nullify *O'Neill*'s rejection of substantively identical allegations against Al Rajhi Bank, as Plaintiffs argue. *See* Opp'n 30-31. JASTA did not change the causation standard; JASTA did not amend § 2333(a)'s provision that only injuries "by reason of" an act of international terrorism are compensable. *See Rothstein*, 708 F.3d at 95 (rejecting similar policy argument regarding the meaning of "by reason of," and pointing to the Supreme Court's conclusion in *Holmes* that Congress "used the same words, and we can only assume it intended them to have the same meaning that courts had already given them" (quoting *Holmes*, 503 U.S. at 268)).

Primary liability also requires Plaintiffs to allege that Al Rajhi Bank's conduct "involve[d] violence or endanger[ed] human life." *Linde*, 882 F.3d at 325-26 (citing 18 U.S.C. §§ 2333(a), 2331(1)(A)). The Amended Complaint fails to allege "what support" from the Bank can be traced to Al Qaeda (Summ. Order 4), let alone "that [Al Rajhi Bank's] banking services directly involved strong physical force, or intense force, or vehement or passionate threats" (*Weiss*, 381 F. Supp. 3d at 235). The Amended Complaint, therefore, fails to allege that the Bank committed an "act of international terrorism" that is the prerequisite for primary liability. *See Weiss*, 381 F. Supp. 3d at 233-35; *O'Sullivan*, 2019 U.S. Dist. LEXIS 53134, at *33; Mem. 23-24 (ECF No. 3703); Reply 9-10 (ECF 3869); Mem. 7-8.

## 2.   The Amended Complaint's Gaps Require Dismissal Of Plaintiffs' Aiding-and-Abetting Claim

To state a claim for aiding and abetting, the Amended Complaint must allege that Al Rajhi Bank "knowingly provid[ed] substantial assistance [to] . . . the person who committed such an act of international terrorism." *Linde*, 882 F.3d at 320 (quoting 18 U.S.C. § 2333(d)(2)). The Second Circuit's Summary Order confirms that, under the applicable *Halberstam* factors, Plaintiffs have failed to allege sufficient facts to plausibly show that the Bank substantially assisted Al Qaeda in

perpetrating the September 11 attacks.  *See Linde*, 882 F.3d at 329 (listing the *Halberstam* factors

(citing *Halberstam*, 705 F.2d at 483-84)); Reply 11 (ECF 3869).

The first and second factors — the "nature of the act" (i.e., whether the type of support

"might matter" to the attacks (*Halberstam*, 705 F.2d at 484)), and the "amount of assistance given"

— require factual allegations that the Second Circuit concluded were missing from the Amended

Complaint, namely, "what support" actually passed from the Bank to Al Qaeda.  Summ. Order 4.

The third and sixth factors — presence "at the time of the tort," and "the period of

defendant's assistance" — turn on the proximity in time between the Bank's alleged support and

the September 11 attacks, and the duration of that support.  *See, e.g.*, *Siegel*, 933 F.3d at 221, 223-

24 (affirming dismissal of aiding-and-abetting claims for failure to allege "substantial assistance"

under *Halberstam* factors, despite HSBC's alleged 25-year banking relationship involving

"hundreds of millions of dollars" with purported terrorism supporter, where HSBC allegedly

provided no financial services for ten months before the attacks at issue).  The dearth of allegations

in the Amended Complaint tethering purported Bank support for Al Qaeda to the timeframe of the

September 11 attacks eliminates any basis under these two factors for finding that the Bank

substantially assisted Al Qaeda with the attacks.  *See* Summ. Order 4 (remanding for jurisdictional

discovery on "*when* [Al Rajhi Bank's] alleged support was given to al Qaeda" (emphasis added)).

The fourth factor — the "defendant's relation to the principal" — weighs against finding

substantial assistance here, because the Second Circuit concluded that the Amended Complaint

lacks allegations of "how [the Bank was] involved" in supporting Al Qaeda.  Summ. Order 4.

The fifth factor — the "defendant's state of mind" — does not support finding substantial

assistance here, because the Amended Complaint has not alleged facts plausibly showing that Al

Rajhi Bank knowingly supported Al Qaeda's terrorism against the United States.  The Summary

–15–

Order is not to the contrary, despite referencing the Amended Complaint's "inclusion of allegations related to" the Bank's purported specific intent. Summ. Order 4. The Second Circuit concluded that the Amended Complaint lacks allegations of "whether [the Bank's] support was 'earmarked' for use in specific schemes or *attacks not directed at the United States*." Summ. Order 4 (quoting *Terrorist Attacks VII*, 714 F.3d at 678-79 (emphasis added)). The Second Circuit thus recognized that allegations of intent to support Al Qaeda may not allege intent to support terrorism — like the September 11 attacks — "directed at the United States." *Id.*; *see Terrorist Attacks VII*, 714 F.3d at 678 (explaining the need for discovery on this issue because "factual issues persist with respect to whether [the purported] support was 'expressly aimed' at the United States").

Plaintiffs incorrectly decouple the allegations required for aiding and abetting from the attacks at issue. Opp'n 14 (arguing the Bank must have merely "advanced al Qaeda's overall tortious activities"). The Second Circuit in *Siegel* affirmed dismissal of aiding-and-abetting claims where plaintiffs failed to allege that a bank "substantially assisted [a terrorist] in [terrorist] activities, *specifically the November 9 Attacks*." *Siegel*, 933 F.3d at 226 (emphasis added); *id.* at 223 (requiring defendant to have "knowingly and substantially assist[ed] *the principal violation*" (quoting *Halberstam*, 705 F.2d at 477 (emphasis added))); *Linde*, 882 F.3d at 329 ("[A]iding and abetting an *act* of international terrorism requires more than the provision of material support to a designated terrorist *organization*."); *Kaplan*, 405 F. Supp. 3d at 536 (holding "substantial assistance" not alleged absent well-pleaded allegations that the defendant knowingly and intentionally supported Hizbollah "in perpetrating the rocket attacks").

This Court's previous dismissal under *Halberstam* of aiding-and-abetting claims based on substantively identical allegations controls the outcome here. *See Terrorist Attacks I*, 349 F. Supp.

2d at 798 & n.28, 800-01, 832-33 (quoting *Halberstam*, 705 F.2d at 477).  The "legal framework" has not "changed dramatically" since this Court's previous decision, as Plaintiffs assert (Opp'n 11), other than to now include an express finding that the *Halberstam* decision applied by this Court in 2005 "provides the proper legal framework" for aiding-and-abetting and conspiracy liability.  JASTA § 2(a)(5).  If anything, the recent decisions of this Court, its sister courts, and the Second Circuit applying *Halberstam* in the terrorism context have clarified that the knowledge requirement for aiding-and-abetting liability is higher than for primary liability, and that aiding-and-abetting claims must be rejected where factual allegations fail to plausibly show that the alleged support substantially assisted in the commission of the attack at issue.  *See* Mem. 9-10 (analyzing recent cases).  Nor do the Amended Complaint's allegations "differ considerably" (Opp'n 11) from those previously dismissed.  *See* Ex. 1 (comparing purportedly "new" allegations (Opp'n Ex. 1) with the record); Mem. 10-11 & Ex. 1 (same); *In re Terrorist Attacks*, 295 F. Supp. 3d at 426 (characterizing allegations against the Bank as "recycled" and "similar, if not identical").

### 3.   The Amended Complaint's Gaps Require Dismissal Of Plaintiffs' Conspiracy Claim

To state a claim for conspiracy, Plaintiffs must allege that Al Rajhi Bank reached an agreement with Al Qaeda itself "to commit an act of international terrorism."  *Kaplan*, 405 F. Supp. 3d at 534 (quoting *O'Sullivan*, 2019 U.S. Dist. LEXIS 53134, at *35); *see* 18 U.S.C. § 2333(d)(2) (providing for liability of defendant "who conspires with the person who committed such an act of international terrorism").  Plaintiffs characterize "the object of the [purported] conspiracy" between Al Rajhi Bank and Al Qaeda, however, as merely to "advance[ ] al Qaeda's anti-U.S. campaign."  Opp'n 26; *see id.* at 23 (arguing "it is sufficient for Plaintiffs to show that ARB agreed to advance the anti-U.S. agenda and operations of al Qaeda and its affiliated charitable entities").  By their own admission, Plaintiffs have not stated a conspiracy claim.

–17–

Nor does the Amended Complaint allege a factual basis for *any* agreement, on any object, between the Bank and Al Qaeda.  Under *Halberstam*, "the proximity in time and place of the acts, and the duration of the actors' joint activity" are "relevant in inferring an agreement in a civil conspiracy action."  705 F.2d at 481; *see O'Sullivan*, 2019 U.S. Dist. LEXIS 53134, at *37 (finding defendant bank's alleged material support "so far removed from the acts of terrorism that injured Plaintiffs that the Court cannot infer that Defendants shared the common goal of committing an act of international terrorism").  The Summary Order indicates that the Amended Complaint fails to allege "when [Al Rajhi Bank's] alleged support was given to al Qaeda."  Summ. Order 4.  Plaintiffs, therefore, are wrong that the Second Circuit's supposed "jurisdictional findings alone indicate that the complaint sufficiently alleges the relevant agreement . . . ."  Opp'n 24.

Plaintiffs mistakenly count on two other factors to find an agreement based on circumstantial evidence:  allegations "of assistance itself" and "the extent of the relationship between the parties."  Opp'n 24.  The first factor does not support finding an agreement, because the Amended Complaint fails to allege "what support was given" to Al Qaeda by Al Rajhi Bank.  Summ. Order 4.  The second factor also cuts against a conspiracy, because the Amended Complaint does not allege relevant details about the Bank's purported relationship with Al Qaeda, i.e., "specifically how [the Bank was] involved in the process of providing support to al Qaeda."  *Id.*

The "most significant link" that Plaintiffs purport to allege between Al Rajhi Bank and "the al Qaeda charities" is the so-called "Golden Chain" list (Opp'n 16-17, 20), which this Court has discredited.  *See Terrorist Attacks I*, 349 F. Supp. 2d at 817-18 (dismissing a defendant purportedly named on the list, finding the list had "serious foundational flaws," and concluding that "with no indication of who wrote the list, when it was written, or for what purpose, the Court cannot make the logical leap that the document is a list of early al Qaeda supporters"); *see also* Bierstein Aff.

–18–

in Opp'n to Al-Husani Mot. to Dismiss, Ex. 2 (ECF No. 272-5) (attaching "Golden Chain" document, which does not mention Suleiman Al Rajhi, Al Rajhi Bank, or Al Qaeda, but merely a cryptic reference to "Al Rajhi").  This threadbare connection cannot sustain Plaintiffs' conspiracy claim.  *See O'Sullivan*, 2019 U.S. Dist. LEXIS 53134, *37-38 (holding no agreement alleged absent allegations that "the connection" between purported co-conspirators "was so coordinated and monolithic" as to demonstrate "a common purpose or plan").

The Amended Complaint's factual deficiencies — highlighted by the Summary Order — therefore require dismissal of Plaintiffs' primary-liability and secondary-liability claims.

## <u>CONCLUSION</u>

For the foregoing reasons, the reasons in its Memorandum of Law (ECF No. 5385) in support of the instant motion, as well as in its Memorandum of Law (ECF No. 3703) and Reply Memorandum of Law (ECF No. 3869) in support of Al Rajhi Bank's Motion to Dismiss, the Court should decide Al Rajhi Bank's pending Rule 12(b)(6) Motion to Dismiss prior to permitting jurisdictional discovery and should dismiss with prejudice Plaintiffs' claims against the Bank.

Dated:   March 9, 2020
      Washington, DC

Respectfully submitted,

**WHITE & CASE**

 /s/ *Christopher M. Curran*
Christopher M. Curran
Nicole Erb
Matthew S. Leddicotte (admitted *pro hac vice*)
Reuben J. Sequeira
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005
Telephone:     + 1 202 626 3600
Facsimile:     + 1 202 639 9355
ccurran@whitecase.com
nerb@whitecase.com
mleddicotte@whitecase.com
rsequeira@whitecase.com

*Counsel for Al Rajhi Bank*