UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:

*Chang Dom Kim, et al v. Islamic Republic of Iran (1:18-cv-11870) (GBD) (SN)*

**OBJECTIONS OF MARGARET ANN WILLIAMS, CHRISTINE SANDRA WILSON, KATHERINE WYNN, EDITH OTELIKA HARRIS, ESTATEOF LELIA WYNN, AND ESTATE OF DOROTHY LEE COLES TO THAT PORTION OF THE REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE SARAH NETBURN DATED JANUARY 23, 2020, DENYING OBJECTANTS CLAIMS FOR SOLATIUM DAMAGES.**

ANDERSON KILL P.C.
Jerry S. Goldman, Esq.
Bruce E. Strong, Esq.
Jeffrey E. Glen, Esq.
1251 Avenue of the Americas
New York, NY 10020
Tel:  212-278-1000
Fax:  212-278-1733
Email: jgoldman@andersonkill.com
         bstrong@andersonkill.com
         jglen@andersonkill.com

*Attorneys for Plaintiffs*

Dated: March 11, 2020
       New York, New York

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 72(b), Margaret Ann Williams, Christine Sandra Wilson, Katherine Wynn, Edith Otelika Harris, Estate of Lelia Wynn, and Estate of Dorothy Lee Coles (collectively, "the Hurt family members"), each of which is a plaintiff in the Kim action, object to that portion of the Report and Recommendation of Magistrate Judge Netburn filed January 23, 2020, ECF 5735, which recommends denying the application of the Hurt family members for solatium damages, and request that the application of the Hurt family members be remanded to Judge Netburn for her recommendation as to the amount of solatium damages to be awarded to each Hurt family member.

This request for remand acknowledges that in her Report and Recommendation, Judge Netburn "recognizes the unique factors in this case, both regarding the communal way in which the Hurt family raised their children and the award (of economic damages to each Hurt family member) of the VCF. This Court, however, is not bound by the VCF's determination, and it must follow judicial precedent in making its award determination."

As demonstrated in this Objection, the "judicial precedent" which bound the Magistrate Judge in her consideration of the Hurt family members' application is the precedent established by this Court in its prior decisions regarding the award of solatium damages to functional equivalents of immediate family members. Because of the unique factors presented by the Hurt family members' application, they respectfully request that this Court revisit its earlier functional equivalent decisions and marginally expand the definition of eligible participants in a solatium damages award to include this family.

2

## THE HURT FAMILY MEMBERS[1]

The Hurt family has lived in and around the small country town of Kenbridge, Virginia, for generations.  Peggie Hurt, a member of the United States Army who lost her life in the attack on the Pentagon a mere two weeks after she had been reassigned there, was raised in her grandparents' home with her biological mother Mary Magdalene Hurt and her aunt Margaret Ann Williams, who was older than her by thirteen years.  The family "was and remains a close-knit family in which all the members provide mutual support, care, and solace." ECF 5735, at 9.  While Peggie's mother lived in the family home with Peggie and Margaret until her mother's death when Peggie was 22, "Margaret and Peggie were raised together in the home of Margaret's parents." ECF 5735, at 8.

Margaret and Mary Magdalene had five other sisters.  Peggie had close relations with all: "Personal relations between the generations were extremely close in the Hurt family, with all the aunts looked on as a band of mothers and sisters." ECF 5735, at 9.

Despite Judge Netburn's acceptance of the "communal way in which the Hurt family raised their children," she denied the family members' claims because they do not fit squarely into the functional equivalent examples for step-siblings and aunts she had articulated in she had enunciated in *Hoglan II*, ECF 3363 at 15-16, and *Hoglan IV*, ECF 3676 at 10.  In particular, Judge Netburn declined to consider Margaret as the functional equivalent of Peggie's sister both because Margaret and Peggie were blood relatives (and thus not "step-relatives" as defined in *Hoglan II*),, and because Peggie was parented by her biological mother and Margaret was parented by her biological parents. ECF 5735 at 7-8.  Similarly, Judge Netburn denied the

---

[1] Unless otherwise indicated, the factual recitations herein are taken from Judge Netburn's Report and Recommendation, in which she references the documents that were submitted to her with the Hurt family members' memorandum of law in support of their claim for solatium damages, ECF No. 4935.  Objectants' respectfully refer the Court to that memorandum of law and its attendant exhibits for more extensive factual development.

3

claims of the five other aunts because Peggie's biological mother was not wholly absent from her life, the aunts other than Margaret Williams did not cohabit with Peggie for an extended period of time, and no aunt had legal custody of Peggie. ECF 5735 at 9 -11.

It is understandable that the Magistrate Judge did not feel it was within her purview to extend the boundaries of the categories of arguable claimants beyond those which she had considered when drafting the *Hoglan* decisions. But it seems evident from a reading of this Court's Decision and Order approving Judge Netburn's recommendations in *Hoglan IV* that she deemed herself unnecessarily restricted by the precedent of the *Hoglan* cases, and that she and this Court can in fact recognize that the unique factors of the family's claim make them appropriate recipients of solatium damages.

## THIS COURT'S FUNCTIONAL EQUIVALENCY JURISPRUDENCE

In *Hoglan II*, Judge Netburn agreed with the Court of Appeals for the D.C. Circuit that non-immediate family members of 9/11 decedents were not categorically excluded from solatium damage awards. Referencing *Bettis v. Islamic Republic of Iran*, 315 F.3d 325 (D.C.Cir. 2003), Judge Netburn adopted the view that where relatives were functional equivalents of immediate family members, they could receive solatium damages. ECF 3363 at 4-5. She went on to discuss other cases which provided examples in which particular facts of particular family relationships between a decedent and family members other than spouse, parents, siblings, and children justified solatium awards. ECF 3363 at 10-12. She concluded:

> The Court will follow the *Heiser* and *Valore* decisions in considering whether the family members claiming to be "functional equivalents of parents" or "functional equivalents of children" on the facts of each case, rather than by treating their legal status as controlling." ECF 3363, at 11.

4

Nevertheless, in discussing claims put forth by aunts and uncles, Judge Netburn limited such claims to aunts or uncles who "adopted the decedent … in all but name." *Id.*, at 13.

This Court adopted Judge Netburn's report in its entirety as it pertained to plaintiffs who were immediate family members, but recommitted the "issue of non-immediate family members' entitlement to damages" to the Magistrate Judge. ECF 3384, at 1.

On reconsideration following this Court's remand in *Hoglan II*, Judge Netburn made it clear that as regards claims from aunts and uncles, "in using the 'all but name' language, the Court does not require a legal adoption as a per se requirement to recover solatium damages, and does not consider the legal relationship between the parties as dispositive." ECF 3676, at 9. Reexamining her evaluation of aunt and uncle claims, Judge Netburn wrote

> [F]or these categories of plaintiffs, only in the rarest cases will such a plaintiff be able to demonstrate functional equivalence absent [a legal custodianship relationship]. *Id.,* at 10.

Judge Netburn did not deem the proof of functional relationship presented by the plaintiffs in *Hoglan IV* to be sufficient to justify an award, and this Court agreed. ECF 3795, at 5:

> Magistrate Judge Netburn properly recommended an objective and reasonable framework to assess the availability of solatium damages for non-immediate family members that balances tort law's inherent need to limit recovery to a readily identifiable class of individuals with the FSIA's recognition of the uniquely heinous nature of terrorism, allowing for a "claim-by-claim, family-by-family, fact driven analysis." *Hoglan IV*, at 3, 6. In addition, magistrate Judge Netburn carefully evaluated each claim of the non-immediate family members in accordance with the factors identified, taking into consideration the unique circumstances of each claimant's relationship with their loved one.

5

However, when Judge Netburn undertook her analysis of the Hurt family's claims, she conducted precisely the categorical, and not individual, inquiry that she and this Court had written was not appropriate. Judge Netburn wrote several paragraphs in support of her finding that

> The Hurt family, of which Peggie, her five aunts, and Margaret Ann Williams were all a part, was and remains a close-knit family in which all the members provide mutual support, care, and solace. ECF 5735, at 9.

It certainly appears that Judge Netburn believes that precisely the "loss of solace" for which "solatium" damages constitute compensation has been suffered by the Hurt plaintiffs. Yet she apparently read her own precedent in her *Hoglan* decisions to prevent her from making an award to the Hurt family members. In doing so, they respectfully argue here, she failed to recognize and apply this Court's modification of her earlier decisions which explicitly, as quoted above, permits her to take into consideration the precise "unique circumstances of each claimant's relationship with their loved one" that she found here.

The Hurt family members argued to Judge Netburn that because they had received solatium awards from the Victim's Compensation Fund, there should be no concern that recognizing them as functional equivalents of immediate family members would open the VSST fund to a substantial group of potential claimants. ECF 4935, at 15-18. Because to the best knowledge of plaintiffs' counsel there are no other claimants who are outside the universe of functional equivalents, such as step-siblings, who have received VCF awards, the reality is that only Peggie's six aunts will benefit from the individualized consideration that this Court permits.

Judge Netburn rejected the argument based on the VCF awards because there was a regulation allowing that Fund to make an award to a "spouse, children, or other relatives" of a 9/11 decedent. ECF 5735, at 11. While those words do not appear to be included in any

6

regulations implementing the VSST Act, nothing in that Act or its regulations precludes an award to the functional equivalent of an immediate family member. And Judge Netburn appears to recognize that; she stated that "The Court does not have similar discretion in deciding these matters," *id.*, but based that statement on her previous finding in *Hoglan IV*, not on any purported regulatory restriction. And it should be noted that were the lack of an "other relatives" phrase in the implementing regulations of the VSST Act to be dispositive, the extension of awards to step-relatives by this very Court would have been barred

## AN AWARD TO THE HURT FAMILY MEMBERS AS EXEMPLIFYING THE EXTENDED FAMILY IS APPROPRIATE COMPENSATION TO THESE VICTIMS OF STATE SPONSORED TERRORISM

Historically, communal rearing of children was and remains a hallmark of rural African-American families. See the analysis of Professor Elmer P. Martin, ECF 4935, at 14. Through the 1880's extended families, consisting of multiple generations under one roof, provided the kind of mutual support and affection found in the Hurt family by Judge Netburn. Extended families "were highly beneficial because they led to less economic troubles and a more effective was to raise children." *.The Importance of Extended Families in the African American Community: A Qualitative Analysis Using Social Learning Theory.*, Neshona Armstrong, Howard University, 2012, at 1322, copy attached hereto. With increasing urbanization, a statistical decline in extended families has occurred, leading scholars to become concerned that the adoption by African-Americans of the Eurocentric standard of nuclear families has led to economic hardship, dissocializing behavior, and even dysfunction. *Id.,* at 1323.

In addition to the evidence presently in the record that the Hurt family is an archetypical extended family, objectants respectfully wish to add the following, taken from an email from Carlene Wynn to Jeffrey Glen, one of the family's attorney's herein, sent March 10, 2020, while this objection was being prepared:

> [I]n speaking with my Aunts we all would like for their Father (my grandfather) Hunter Hurt to be acknowledged. Because Peggie could not be found during the 9/11 tragedy, he passed away about two weeks after the incident and his funeral was before hers. The doctors told the family that he died from a broken heart. This was a double tragedy for the Hurt family. We've suffered greatly and our heartbreak hasn't stopped. We live with heartbreak day to day, year after year.

Upon receiving this email, Mr. Glen spoke with Margaret Williams, who recollected that at the time of the tragedy, her father Hunter had been in the local hospital, consumed with anxiety over whether Peggie was still alive. When after two weeks he was visited by two soldiers sent by the Army to let him know that Peggie's body had been found, he said "at least now I know we will be together"; he died the next day after having been transferred to a hospital in Richmond. Hunter's and Peggie's caskets were set side by side in the funeral home, exasperating the devastation felt by the Hurt family members.[2]

Failure to recognize that an African American extended family is as entitled to solatium damages as is a comparable nuclear family is to foster disintegration and to perpetuate the stigma regarding African American childrearing practice noted in the sociological literature cited by Ms. Armstrong. Quite simply, it fails to treat comparable victims of state sponsored terrorism as equally harmed. As Prof. Vern Bengtson of the University of Southern California, perhaps the leading academician on intergenerational families, wrote:

---

[2] In the event that the Court grants this objection to the extent of remanding plaintiffs' claims to the Magistrate, plaintiffs will file supplemental declarations setting forth the details surrounding their receipt of information regarding Peggie's death, and describing the funerals of Peggie and Hunter.

8

> Multi-generational bonds represent a valuable resource for families in the 21st century and are becoming more important that nuclear family ties for well-being and support over the course of our lives. Beyond the Nuclear Family: The Increasing Importance of Multigenerational Bonds: THE BURGESS AWARD LECTURE, as quoted in the Armstrong article, *supra at* 1326.[3]

Rather than devaluing the validity and significance of communal child rearing by restricting solatium damages to nuclear families, this Court should take this opportunity to recognize that the loss of care and emotional support such damages represent is not only to perpetuate an unfair distinction between African-American and Eurocentric child-rearing practices, but denigrates a vital societal endeavor – the monetization of loss of solace to 9/11 victims -- to the disadvantage of an entire culture.

What brought Peggie Hurt into the American mainstream, through a college degree and into the military service of her country, was precisely the rock of the Hurt family. They, together with Peggie's biological mother, made Peggie what she was to become had her life not been taken by an act of terror. At the very least, they should share in the award of maternal solatium that Peggie's mother would have indisputably received had she not passed.

---

[3] Prof. Bengtson passed away in November of 2019, and thus is not available to give his perspective on the instant points to this Court.

9

## CONCLUSION

For the reasons stated herein, and in the submission previously made to Magistrate-Judge Netburn, ECF 4935, the Report and Recommendation to this Court should be modified and claims of the Hurt family members should be remanded to the Magistrate Judge for reconsideration in light of their unique entitlement to solatium awards.

Respectfully submitted,

/s/ *Jeffrey E. Glen*
ANDERSON KILL P.C.
Jeffrey E. Glen, Esq.
Jerry S. Goldman, Esq.
Bruce E. Strong, Esq.
1251 Avenue of the Americas
New York, NY 10020
Tel: 212-278-1000
Fax: 212-278-1733
Email: jglen@andersonkill.com
jgoldman@andersonkill.com
bstrong@andersonkill.com
*Attorneys for Plaintiffs*

Dated: March 11, 2020