UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------X
```

In re:

**TERRORIST ATTACKS ON
September 11, 2001**

03-MD-1570 (GBD)(SN)

**OPINION AND ORDER**

```
-----------------------------------------------------------X
```

**SARAH NETBURN, United States Magistrate Judge:**

On October 10, 2019, the Plaintiffs' Executive Committees ("Plaintiffs") served supplemental discovery requests on the Kingdom of Saudi Arabia ("Saudi Arabia") concerning ███████████████████████████ See Plaintiffs' November 8, 2019 Letter ("Pl's Ltr."), Ex. A, B. On October 28, 2019, Saudi Arabia filed a letter motion under seal requesting that the Court grant a protective order under Rule 26(c) preventing plaintiffs' October 10, 2019 discovery requests, or in the alternative, asking the Court to set a briefing schedule for Saudi Arabia to move for such an order. See Defendants' October 28, 2019 Letter ("Def's Ltr."). Plaintiffs filed a letter in response to Saudi Arabia's letter on November 8, 2019. See Pl's Ltr. For the reasons that follow, Saudi Arabia's motion is GRANTED in part and DENIED in part.[1]

## BACKGROUND

On March 28, 2018, the Honorable George B. Daniels concluded that plaintiffs had articulated a reasonable basis for the Court to assume jurisdiction over Saudi Arabia. See ECF No. 3946, Memorandum Decision and Order at 4–5. Judge Daniels permitted plaintiffs to conduct limited jurisdictional discovery into "whether and to what extent Thumairy, Bayoumi,

---

[1] This Opinion & Order has been filed under seal in its entirety. The Court has directed the parties to provide proposed redactions consistent with the FBI Protective Order. The Court will issue a redacted version on the public docket once that process is complete.

and their agents took actions in 2000, at the direction of more senior Saudi officials, to provide assistance to Hazmi, Midhar, and other 9/11 hijackers." Id. at 23.

The Court established procedures to manage the scope of that discovery. See ECF No. 4009. Saudi Arabia produced responsive documents, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Plaintiffs requested a broad array of discovery. Among other things, they sought documents concerning ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

███ On October 8, 2019, Saudi Arabia identified the documents it had produced in response to plaintiffs' discovery request in an appendix filed under seal. See Saudi Arabia's October 8, 2019 Document Appendix ("Saudi Arabia App'x."). On October 10, 2019, plaintiffs served their ███ supplemental discovery requests ███████ on Saudi Arabia. See Pl's Ltr., Ex. A, B.

**LEGAL STANDARD**

The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, provides "the sole basis for obtaining jurisdiction over a foreign state in federal court." Chettri v. Nepal Rastra Bank, 834 F.3d 50, 55 (2d Cir. 2016) (quoting Argentine Republic v. Amerada Hess Shipping

2

Corp., 488 U.S. 428, 439 (1989)). The FSIA seeks to "protect foreign sovereigns from the burdens of litigation, including the cost and aggravation of discovery." Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic, No. 10-CV-5256 (KMW), 2011 WL 4111504, at *3 (S.D.N.Y. Sept. 13, 2011). As a result, before the plaintiff has established jurisdiction, a district court "must be circumspect in allowing discovery." Arch Trading Corp. v. Republic of Ecuador, 839 F.3d 193, 206 (2d Cir. 2016) (quoting EM Ltd v. Republic of Argentina, 695 F.3d 201, 210 (2d Cir. 2012)). Were that not the case, the discovery obligations imposed on a foreign state would frustrate the FSIA's presumption of immunity. See Compania del Bajo Caroni (Caromin) v. Bolivarian Republic of Venezuela, 556 F. Supp. 2d 272, 282 (S.D.N.Y. 2008) (citing El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996)).

The FSIA therefore requires a "delicate balancing" in managing jurisdictional discovery. First City, Texas-Houston, N.A. v. Rafidain Bank, 150 F.3d 172, 176 (2d Cir. 1998). While the Court must permit the discovery necessary to determine whether immunity applies, it must also protect a sovereign's legitimate claim to immunity. Id. In maintaining this balance, the Court should exercise "special vigilance" to protect foreign states from the dangers of unnecessary discovery. Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court, 482 U.S. 522, 546 (1987). Accordingly, even where jurisdictional discovery is warranted, it should be "ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination." First City, 150 F.3d at 176; Glencore Denrees Paris v. Dep't of Nat'l Store Branch 1, No. 99-CV-8607 (RJS), 2008 WL 4298609, at *6 (S.D.N.Y. Sept. 19, 2008).

In this case, plaintiffs have already established a "reasonable basis" for the Court to assume jurisdiction over Saudi Arabia. ECF No. 3946, at 4. This lessens the concern, at least to

an extent, that the Court will impose discovery obligations on a potentially immune defendant. Moreover, Congress has expressed a strong interest in granting federal courts jurisdiction when a foreign state commits a tortious act in connection with an act of terrorism within the United States. See JASTA, § 2(b), Pub. L. No. 114-222, 130 Stat. 852, 853 ("The purpose of this Act is to provide civil litigants with *the broadest possible basis* . . . to seek relief against . . . foreign countries . . . that have provided material support . . . to persons that engage in terrorist activities against the United States.") (emphasis added). While these concerns do not negate the Court's obligation to conduct limited discovery, they emphasize that plaintiffs must be given the discovery necessary to determine if JASTA applies. See Société Nationale, 482 U.S. at 544 n.28.

## DISCUSSION

I. **Plaintiffs' Discovery Requests Are Not Barred on Procedural Grounds**

   A. **Discovery Is Ongoing**

Saudi Arabia argues that plaintiffs' supplemental discovery requests ▆▆▆▆ are untimely because written discovery has come to a close. Saudi Arabia describes a "two stage schedule" that the Court set for written discovery, consisting of initial discovery that was to be completed by July 31, 2018, followed by a September 21, 2018 deadline (extended to November 30, 2018) to present any disputes to the Court. See Def's Ltr., at 1-2; ECF Nos. 4009, 4115, and 4213. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ and Saudi Arabia completed its responses to plaintiffs' ▆▆▆▆ demands on October 4, 2019. See ECF No. 5200. Saudi Arabia contends that written discovery was brought to a close on October 4, 2019, a few days before plaintiffs filed their discovery demands on October 10, 2019. See Def's Ltr., Ex. B, C.

4

Plaintiffs argue that while the Court set deadlines for plaintiffs to serve initial discovery requests and to move to compel based on those initial requests, the Court did not issue any directive precluding plaintiffs from serving appropriate follow up discovery requests based on newly discovered evidence. <u>See</u> Pl's Ltr., at 4. Plaintiffs argue that the Court was aware that the initial stages of discovery would yield additional evidence warranting further inquiry, and cite the Court's approval of their previous supplemental discovery request, based on newly discovered information, as further indication that written discovery has not closed. <u>See</u> <u>id.</u> at 4-5.

Plaintiffs are correct. The Court's July 31, 2018 deadline did not mark the close of written discovery. It was, as the Court wrote at the time, the deadline for Saudi Arabia's production of "an initial round of documents." ECF No. 4009. The Court's statement that the parties should meet and confer regarding "the appropriate scope of any further jurisdictional discovery" further suggests that the Court contemplated additional discovery at that time. <u>See</u> <u>id.</u> As plaintiffs accurately recount, the Court ordered Saudi Arabia to conduct limited additional searches in the Court's November 25, 2019 Opinion and Order. The Court also recently ordered Saudi Arabia to conduct supplemental discovery regarding a Saudi official in the Court's January 3, 2020 Opinion and Order filed under seal. While written discovery is nearly complete, these numerous orders suggest that the door, at this time, remains partially open. Consideration of the merits of plaintiffs' claims is therefore warranted.

### B. Plaintiffs' Requests Are Not Untimely

Saudi Arabia argues that plaintiffs' October 10, 2019 discovery requests ▮▮▮▮▮ should be denied because there is no reason why plaintiffs could not have sought this information in their earlier requests for discovery. <u>See</u> Def's Ltr., at 2. Saudi Arabia cites plaintiffs' ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████ According to Saudi Arabia, plaintiffs had reason ████████ to seek all discovery ████████. See Def's Ltr., at 3.

Plaintiffs respond that they have been diligent seeking evidence concerning the ███ ███████████████████████████████████████████████, from the beginning of discovery. See Pl's Ltr., at 1. These supplemental discovery requests are entirely appropriate, they argue, █████████████████████████████████████████████████████ ████████, as well as necessary because Saudi Arabia evaded providing evidence ████████ ████ in response to plaintiffs' earlier discovery requests. See id. Plaintiffs argue that Saudi Arabia has produced only ████████████████████████████████████████████ ███████████████████████████████████████████████████████████ See id. at 4.

The Court agrees with plaintiffs that further discovery into ████████████ ██████████████████████████████████████████████████████████. Many of the supplemental discovery requests that plaintiffs have currently made would have been deemed to be entirely speculative by the Court had they been made ████████████ ████████████████████████████████████████. Plaintiffs' ████████████ ████████ discovery demands further indicate that the results of an initial round of discovery may lead to further requests for documents, and the Court will not categorically rule against plaintiffs' current set of supplemental discovery requests simply because plaintiffs did not ask every conceivable discovery question ████████ at the initial stage of discovery. The Court will therefore consider the merits of plaintiffs' current set of supplemental discovery

6

requests in light of the ███████████████████████████████████████████

███████████, Saudi Arabia's September 25, 2019 and October 4, 2019 productions, and

other newer evidence such as plaintiffs' expert ████████████████████████████████

████████████

**II.     Plaintiffs' Discovery Requests Are GRANTED in Part and DENIED in Part**

████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████ See Pl's Ltr., at 7. Plaintiffs argue that this information is readily available to Saudi Arabia

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████ Such communications, plaintiffs contend, are relevant to the

overarching agency questions for which the Court has authorized discovery. See id. at 2.

Saudi Arabia does not address the substance of plaintiffs' request, responding only that

plaintiffs had reason ████████████████████████████████████████

████ See Def's Ltr., at 3. Plaintiffs' failure to do so, Saudi Arabia argues, "falls far short of the

diligence needed" to justify reopening discovery. In re General Motors, No. 14-MC-2543 (JMF),

2016 WL 2766654, at *2 (S.D.N.Y. May 12, 2016).

As the Court addressed above, discovery has not yet closed. Considering plaintiffs'

current discovery request in light of the available record, the Court concludes that plaintiffs have

not articulated a sufficient explanation as to why they should be authorized to pursue discovery

into ████████████████

The ███ does not, in and of itself, justify an authorization of discovery into ███. The ███ ███ ███ Conversely, Saudi Arabia has already searched for documents concerning any ███ ███, and found no documents concerning a ███ See Saudi Arabia App'x., at 6. Plaintiffs' assertions that Saudi Arabia's production was insufficient are undercut by the fact that Saudi Arabia ███ ███ ███ While Saudi Arabia may not have produced the documents plaintiffs were hoping for, the evidence suggests that Saudi Arabia undertook a thorough search, identifying a combined 150 pages of documents as responsive to plaintiffs' document requests ███. The Court does not know whether Saudi Arabia in fact complied in full with its ███ ███ but the Court cannot authorize a request for further discovery on the fact that a prior round of discovery did not yield the hoped-for results.

Plaintiffs further contend that Saudi Arabia has previously opposed discovery ███ ███ To support this argument, plaintiffs cite Saudi Arabia's ███ letter, which suggested that ███. See Saudi Arabia's ███ Opposition Letter, at 3. By contrast, plaintiffs argue, Saudi Arabia knew at the time that ███ ███, suggesting a pre-2002 relationship. See Plaintiffs' ███ ███ But while plaintiffs correctly identify ███ in the above-referenced letter, ███

████ appears only on the letter's cover sheet. The appearance of ████████ indicates only that ████████████████████████████████████████████████████████████████████ ████████████████████████ in the years before September 11, 2001. See id., at Ex. 10. The appearance of ████████████████████████████████████ is not sufficient for the Court to conclude that Saudi Arabia has misconstrued the facts or "obstructed" the discovery process.

Plaintiffs further claim that Saudi Arabia misleadingly suggested that there was no basis for plaintiffs' argument that ████████████████████████████████████████████████ ████████████ See Pl's Ltr., at 5. Plaintiffs support this argument by claiming that they now have evidence that Saudi Arabia was specifically aware before discovery began that ████████ ████████████████████████████ See id. Plaintiffs cite the declaration of ████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ See Plaintiffs' November 6, 2019 Letter Response, at 1-2. But the Court cannot take ████████ conclusory opinion that it is ████████████████████████████████████████████████, without any further support, as evidence that this is in fact what happened.

The Court has previously considered plaintiffs' requests for the search of phone records in the Court's July 22, 2019, and November 25, 2019 opinions. On July 22, 2019, the Court denied plaintiffs' requests to search Sowailem's phone records for phone calls with Bayoumi, despite the fact that a redacted FBI report seemed to indicate that Bayoumi had made thirty calls to Sowailem, because it was difficult to determine with certainty who actually called Sowailem's number and there was no evidence that Saudi Arabia's prior search was insufficient. See July 22, 2019 Opinion and Order, at 51-52. On November 25, 2019, the Court again denied plaintiffs'

9

request, rejecting plaintiffs' argument that the Court erred by relying on Saudi Arabia's unsworn statements that it conducted reasonable searches, and noting that the fact that ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ does not suggest that Saudi Arabia's search was insufficient. See November 25, 2019 Order and Opinion, at 18-19.

Unlike the case of Sowailem, where there was some indication that ▮▮▮▮▮ Bayoumi may have contacted him by phone, here there is no indication that ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ Without any specific evidence suggesting that ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the Court must GRANT Saudi Arabia's request for a protective order regarding ▮▮▮▮▮▮▮▮▮. This order, however, does not preclude further inquiry on the subject at a deposition.

### B. Saudi Arabia's Investigative Files

Plaintiffs' supplemental discovery requests ask for ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ See Pl's Ltr., Ex. B. The interrogatories, in addition to the ▮▮▮▮▮▮▮ discussed above, request answers to ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ See Pl's Ltr., Ex. A.

Plaintiffs argue that some of these requests seek to determine whether Saudi Arabia ratified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10

███████████████████ The Court has previously held that potential ratification of an agent's work is relevant to the Court's jurisdictional inquiry, authorizing discovery into a June 2003 meeting concerning the propagators in the United States. See July 22, 2019 Opinion and Order, at *33 (citing Reiss v. Societe Centrale du Groupe Des Assurances Nationales, 185 F. Supp. 2d 335, 338 (S.D.N.Y. 2002) ("[A] party's ratification, that is, subsequent approval of an agent's performance, may support a finding of jurisdiction under the FSIA.")).

The nature of plaintiffs' supplemental discovery requests suggests that they would involve a search of Saudi Arabia's intelligence agencies and files. In the Court's July 22, 2019 Opinion and Order, the Court advised that it will address demands for searches of Saudi Arabia's intelligence services on a case by case basis. See July 22, 2019 Opinion and Order, at 9. The burden or expense of a discovery demand cannot exceed its likely benefit. See Fed. R. Civ. P. 26(b)(1). This is particularly true where any undue burden would be imposed on a potentially immune sovereign defendant. For these reasons, the Court held that Saudi Arabia must search additional locations only if the evidence suggests that a particular group of responsive documents may be located there. See Transcript of May 24 Conference, ECF No. 4015, at 17, 25.

Given the allegations identified as discoverable by Judge Daniels and the limited nature of jurisdictional discovery under the FSIA, the Court ruled on July 22, 2019 that broad searches of the General Intelligence Directorate (GID) or the Presidency of State Security (PSS) are inappropriate. See July 22, 2019 Opinion and Order, at 9. Even in merits discovery, international comity requires the Court to demonstrate due respect for "any sovereign interest expressed by a foreign state." Catalano v. BMW of North America, LLC, No. 15-CV-4889 (KBF), 2016 WL 3406125, at *6 (S.D.N.Y. June 16, 2016) (quoting First Am. Corp. v. Price Waterhouse LLP, 154 F.3d 16, 21 (2d Cir. 1998)). These considerations are particularly important "when it comes

11

to a foreign sovereign's diplomatic and military affairs." <u>Aurelius Capital Master, Ltd. v. Republic of Argentina</u>, 589 F. App'x. 16, 18 (2d Cir. Dec. 23, 2014). As a result, the Court will order Saudi Arabia to search its intelligence agencies only if, weighing the interests of comity, "actual . . . contemporaneous evidence" suggests responsive documents may exist. <u>See</u> Transcript of May 24 Conference, at 27; <u>Freund v. Republic of France</u>, 592 F. Supp. 2d 540, 563 (S.D.N.Y. 2008) ("[Plaintiffs'] requests raise serious comity concerns insofar as they would require the Court to order a foreign sovereign . . . to provide access to their sealed archives.").

The Court has held in its July 22, 2019 Opinion and Order and November 25, 2019 Opinion and Order, however, that Saudi Arabia does not have blanket protection from discovery of its intelligence agencies. Rather, consistent with Judge Daniels's March 28, 2018 Order, the Court seeks evidence that responsive documents may exist before encroaching Saudi Arabia's legitimate interests as a foreign sovereign potentially immune from the Court's jurisdiction. <u>See</u> July 22, 2019 Order and Opinion, at 11; November 25, 2019 Order and Opinion, at 12-13. To this end, the Court's May 24, 2018 initial discovery order authorized searches for documents obtained and complied by the PSS through December 31, 2002, after the parties indicated that the PSS likely serves as a central repository for the compilation of relevant records. <u>See</u> May 24, 2018 Hearing, at 19-20.

Given the nature of the information being asked for, the Court understands the requests outlined in this section to arise specifically from the ████████████████████████ ████████████████████████████ While plaintiffs do not explicitly outline the basis for their belief that the ████████████████████████████████████ ████████████████, it stands to reason that plaintiffs base their claims ████████ ████████████████████████████████████████████████

12

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

On the record before the Court, plaintiffs have not made a sufficient showing that the ████████████████████████ warrants the full investigation into Saudi Arabia's intelligence files that they are requesting. Regardless of whether the statements in ████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ plaintiffs have presented no documentation suggesting that the ██████████████ ████████████████████████████. While the Court agrees that it is plausible that the ██ ████████████████████████████████ declaration that this ████████████ occurred is not sufficient to warrant a search of Saudi Arabia's intelligence files. As the Court has ruled previously, the Court cannot rely on the unsupported conclusions of others to order additional discovery. See November 25, 2019 Opinion and Order, at 13. Plaintiffs need to show the Court some evidence that the ██████████████████████████████████ ████████████ before the Court can authorize discovery into the nature and details of those ████████████████.

Recognizing that it is plausible that this ████████████ occurred, and recognizing that the question of whether ████████████████████████████████████████████ is relevant to the issue of Saudi Arabia's ratification of the hijackers' activities, the Court GRANTS interrogatory ████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████ But because plaintiffs have presented no evidence at this time that any ███████

██████████████ in fact took place, the Court DENIES, without prejudice, the remaining questions in the interrogatories and all three of plaintiffs' requests for documents.

## CONCLUSION

Saudi Arabia's request for a protective order is GRANTED in part and DENIED in part. Saudi Arabia is directed to respond to the two interrogatories identified in the Court's Opinion within 30 days. Saudi Arabia's request to set a briefing schedule is DENIED as moot.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   January 7, 2020
         New York, New York