UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

In re Terrorist Attacks On September 11, 2001    )    03 MDL 1570 (GBD) (SN)
                                                 )
                                                 )
                                                 )    **ORAL ARGUMENT REQUESTED**
                                                 )

This document relates to:

*Estate of John P. O'Neill, Sr., et al. v. Al Baraka Investment & Development Corp. et al.*, 04-cv-1923 (GBD) (SN)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND RELATED RELIEF

Jerry S. Goldman, Esq.
Bruce Strong, Esq.
Nicholas R. Maxwell, Esq.
Samantha Smith, Esq.
Stephen Wah, Esq.
Anderson Kill P.C.
1251 Avenue of the Americas
New York, NY  10020
(212) 278-1000

Attorneys for Estate of
John P. O'Neill, Sr., et al.

# TABLE OF CONTENTS

Page

ARGUMENT .......................................................................................................................... 2

I. Plaintiffs Satisfy the Rule 23 Standard. .................................................................... 2

II. Notwithstanding Defendants' Myopic Perspective of the Issues in this Case, Common Issues Clearly Predominate. ..................................................................... 3

III. The Class Representatives Are Typical and Adequate. ........................................... 7

IV. Defendants Completely Misapply the Superiority Factors. ..................................... 8

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Amaranth Natural Gas Commodities Litigation,*
   269 F.R.D. 366 (S.D.N.Y. 2010) .................................................................................................. 2

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,*
   568 U.S. 455 (2013) ...................................................................................................................... 3

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
   222 F.3d 52 (2d Cir. 2000) ............................................................................................................ 7

*Basso v. New York Univ.,*
   363 F. Supp. 3d 413 (S.D.N.Y. 2019) ..................................................................................... 2, 5

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,*
   504 F.3d 229 (2d Cir. 2007) ......................................................................................................... 7

*Comcast Corp. v. Behrend,*
   569 U.S. 27 (2013) ........................................................................................................................ 6

*Johnson v. Nextel Commc'ns Inc.,*
   780 F.3d 128 (2d Cir. 2015) ......................................................................................................... 6

*In re JPMorgan Chase & Co. Sec. Litig.,*
   No. 12-cv-03852, 2015 WL 10433433 (S.D.N.Y. Sept. 29, 2015) ........................................ 2

*Levitt v. J.P. Morgan Sec., Inc.,*
   710 F.3d 454 (2d Cir. 2013) ......................................................................................................... 3

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,*
   299 F. Supp. 3d 430 (S.D.N.Y. 2018) ........................................................................................ 3

*In re Petrobras Sec.,*
   862 F.3d 250 (2d Cir. 2017) ......................................................................................................... 6

*Roach v. T.L. Cannon Corp.,*
   778 F.3d 401 (2d Cir. 2015) ......................................................................................................... 3

*Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n,*
   324 F. Supp. 3d 387 (S.D.N.Y. 2018) ........................................................................................ 6

*Sykes v. Mel S. Harris & Assocs. LLC,*
   780 F.3d 70 (2d Cir. 2015) ........................................................................................................... 6

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*In re Terrorist Attacks on Sept. 11, 2001*,
  718 F. Supp. 2d 456 (S.D.N.Y. 2010), *aff'd on other grounds*, 714 F.3d 109 (2d Cir. 2013) ................................................................................................................ 3, 4

*In re Terrorist Attacks on Sept. 11, 2001*,
  740 F. Supp. 2d 494 (S.D.N.Y. 2010), *aff'd on other grounds*, 714 F.3d 118 (2d Cir. 2013) ................................................................................................................ 3, 4

*In re Terrorist Attacks on September 11, 2001*,
  741 F.3d 353 (2d Cir. 2013) ..................................................................................... 4, 9

*In re VisaCheck/MasterMoney Antitrust Litigation*,
  280 F.3d 124 (2d Cir. 2001) ......................................................................................... 6

**Statutes**

28 U.S.C. § 1605A ............................................................................................................ 4

28 U.S.C. § 1605B ............................................................................................................ 4

Air Transportation Safety and System Stabilization Act, § 408(b), P.L. 107–42, 115 Stat. 230 (2001) .................................................................................................. 5

Anti-Terrorism Act, 18 U.S.C. § 2333 ........................................................................ 4, 6, 7

National Defense Authorization Act for Fiscal Year 2013, 112 P.L. 239, 126 Stat. 1632 (2013) ............................................................................................................... 5

United States Victims of State Sponsored Terrorism Clarification Act, 116 P.L. 69, 133 Stat. 1134 (2019) ............................................................................................. 5

**Other Authorities**

Federal Judicial Center, *Managing Related Proposed Class Actions in Multidistrict Litigation* ............... 2, 8, 10

F.R.C.P. 23 ............................................................................................................. 1, 2, 3, 8

F.R.C.P. 60(b) ..................................................................................................................... 9

Al Qaeda did not declare war on Virginia, Pennsylvania, or New York, nor did the hijackers investigate the citizenship of the people on the planes before crashing them into buildings. While Defendants seek to divide the 9/11 community based on these and other arbitrary distinctions, the United States Congress, this Court, the Judicial Panel on Multidistrict Litigation ("JPML"), and the Second Circuit, have stated, unequivocally, the desire to have all claims heard together, without disparate treatment among members of the 9/11 community.

Yet in an attempt to thwart this stated goal, and undermine the purpose of Federal Rule 23, Defendants raise four obscure and meritless issues that they contend may apply in this MDL, that these are "individualized" issues that "overwhelm" common ones; that the MDL alone is therefore the only way to manage this case, and that these issues act to disqualify the proposed Class Representatives and prevent class certification. They are wrong on all fronts.

In over 16 years of active litigation, through consolidated briefing from all plaintiffs, this Court and the Second Circuit have considered multiple, complex, significant, and *common* issues. *See infra* at pp. 3-4. And these issues will continue to predominate. In contrast, in over 16 years of active litigation, the Court and the parties have devoted almost no ink to the purported "overwhelming" individual issues of statutes of limitations, choice of law, citizenship, and Victims Compensation Fund ("VCF") waiver. Tellingly, these defendants failed to even raise these issues in their motions to dismiss (except Yassin Kadi, who raised the VCF waiver issue in a single paragraph). They also declined to request discovery from any plaintiff on these issues and made the strategic decision not to request discovery from any member of the 9/11 community, other than the O'Neills in class discovery, about citizenship, state of domicile, or place of death, despite having 16 years to do so.

And even if Defendants had raised these issues earlier, they would have been briefed and considered on a consolidated basis (as was the case with the VCF waiver issue raised in Yassin Kadi's motion to dismiss) as required by the MDL Case Management Orders ("CMOs") and as has

been the practice in this litigation for over 16 years. Indeed, Defendants fail to acknowledge that regardless of class certification, these issues would ultimately come before the Court anyway. The class just ensures that the Court's rulings apply to the entire 9/11 community, with no one left behind.[1]

Defendants also contend that the MDL structure alone can effectively manage the case without a class. They ignore that despite the MDL, thousands of 9/11 family members are currently left out. They also ignore the efficiencies class certification can add within an MDL setting.[2] The MDL alone will not and cannot ensure the preservation and prosecution of all 9/11 claims, nor can it resolve any potential inefficiencies in this litigation. A class can.

## ARGUMENT

### I. Plaintiffs Satisfy the Rule 23 Standard.

Defendants cherry pick words from different cases to give the appearance of a more demanding standard than what is actually required in the Second Circuit. The preponderance of the evidence Rule 23 standard simply requires that "the scales tip, however slightly, in favor of the party with th[e] burden of proof." *In re JPMorgan Chase & Co. Sec. Litig.*, No. 12-cv-03852, 2015 WL 10433433, at *2 (S.D.N.Y. Sept. 29, 2015) (Daniels, J.) (quoting *Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d 171, 187 (2d Cir.1992)). Recognizing this modest standard, district courts in this Circuit construe Rule 23 "liberally" and "resolv[e] close calls in favor of class certification." *Basso v. New York Univ.*, 363 F. Supp. 3d 413, 420 (S.D.N.Y. 2019); *see also In re Amaranth Natural Gas Commodities Litigation*, 269 F.R.D. 366, 375 (S.D.N.Y. 2010) (Daniels, J.). Defendants' reliance on an obscure treatise, Opposition ("Opp.") at pp. 8-9, does not substitute for the law in this Circuit describing the

---

[1] For similar reasons, the issues Defendants raise do not act to disqualify the proposed Class Representatives.

[2] Federal Judicial Center ("FJC"), *Managing Related Proposed Class Actions in Multidistrict Litigation*, pp. 9, 12-14 (describing potential efficiencies gained through class certification within MDLs) *available at* https://www.fjc.gov/sites/default/files/materials/21/Managing_Related_Proposed_Class_Actions_in_Multidistrict_Litigation.pdf (hereinafter "Class Actions in MDLs").

2

legal standard "[w]hen reviewing a grant of class certification" as "noticeably more deferen[tial] than when . . . review[ing] a denial of class certification." *Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 464 (2d Cir. 2013). Nor does it substitute for FJC guidance stating that Rule 23 "requires [MDL] transferee judges to safeguard the interests of class members" and emphasizing that "judges' creativity in meeting the challenges presented by multiclass MDL proceedings is unlimited."[3] To the extent Defendants suggest a more demanding standard, the Court should disregard it.

## II. Notwithstanding Defendants' Myopic Perspective of the Issues in this Case, Common Issues Clearly Predominate.

Defendants ignore the plain meaning of "predominance." Under Rule 23, issues can predominate over others because they are *more important, see In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 462 (S.D.N.Y. 2018), or because there are *more of them. See Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (one issue not enough to prevent class certification). Predominance does not require uniformity across plaintiffs on every single factual or legal issue in a case. *Id.* Rather, Rule 23(b)(3) simply requires "common questions [to] predominate over any questions affecting only individual [class] members" and "does *not* require a plaintiff seeking class certification to prove that each elemen[t] of [her] claim [is] susceptible to classwide proof." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (emphasis in original). For the past 16 years of active litigation against these defendants, and in multiple appeals, the few issues Defendants claim "predominate" over common ones: statute of limitations, choice of law, citizenship, and waiver, have appeared in approximately two sentences within decisions by this Court;[4] were barely raised, if raised at all, by these defendants in their motions to

---

[3] *See* Class Actions in MDLs, *supra*, Note 2.

[4] *See e.g., In re Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 514 n.6 (S.D.N.Y. 2010) ("intentional infliction of emotional distress ["IIED"] and assault and battery, pled in the *Federal* complaint, are dismissed as time-barred"), *aff'd on other grounds*, 714 F.3d 118 (2d Cir. 2013); *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 494–95 (S.D.N.Y. 2010) (same), *aff'd on other grounds*, 714 F.3d 109 (2d Cir. 2013).

3

dismiss or in their discovery requests;[5] and the issue of damages was specifically tabled by Judge Casey and Magistrate Judge Maas.[6] Clearly, the bottom-barrel issues Defendants have scraped up solely to oppose class certification do not actually predominate in this case.

Indeed, for the past 16 years, the parties have actively litigated *numerous* and *significant* complex common issues on a consolidated basis, including: pleading standards, jurisdiction, agency, causation, intent, theories of liability, and a host of discovery disputes. *See, e.g., In re Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d at 514; *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d at 494–95. The CMOs have consistently required consolidated briefing precisely because of the many issues common to all plaintiffs, including the isolated issues identified by Defendants. *See e.g.*, CMO No. 2, at ¶¶16, 20 (ECF No. 247); CMO No. 3, at ¶¶3, 9-21 (ECF No. 248).

The JPML, the Second Circuit and Congress, have also specifically found that common issues predominate in this litigation. The JPML created this MDL because "[a]ll MDL-1570 actions present common, complex legal and factual questions[.]" JPML Transfer Order, at p.1 (ECF No. 1). In 2013, in this MDL, the Second Circuit reopened the case against Saudi Arabia, precisely because "[t]he procedural history of this case produced inconsistent results between two sets of plaintiffs," noting that "inconsistent results for victims of the same incident pose[] a unique problem of unfairness." *In re Terrorist Attacks on September 11, 2001*, 741 F.3d 353, 357, 359 (2d Cir. 2013). Congress even acknowledged the desire for uniform treatment of terrorism cases by enacting the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333; the State Sponsored Terrorism Exception to Sovereign Immunity, 28 U.S.C. § 1605A; and the Justice Against Sponsors of Terrorism Act ("JASTA"), 28 U.S.C. § 1605B, which each created overarching federal causes of action and

---

[5] *See* DIB Mot. Dismiss (ECF No. 954) (waiver and citizenship issues not discussed, and only New York statute of limitations issues for IIED and assault raised), WAMY Mot. Dismiss (ECF No. 1460) (same), Kadi Mot. Dismiss (ECF No. 1660) (same, but did raise VCF waiver argument, which went unaddressed by the Court).

[6] *See* CMO No. 2, dated June 16, 2004, at ¶17 (ECF No. 247); Order of Magistrate Judge Maas, dated October 28, 2010 (ECF No. 2381), *see also* Order of Magistrate Judge Maas, dated July 15, 2010 (ECF No. 2260).

procedural tools available to the overwhelming majority of 9/11 family members and victim estates in order to avoid a piecemeal approach to this litigation under applicable state law.[7]

But even putting these arguments aside, this Court would have to decide the isolated issues raised by Defendants anyway. The predominance test is just a means of determining whether there is judicial economy in adjudicating claims together. *See Basso v. New York Univ.*, 363 F. Supp. 3d 413, 424 (S.D.N.Y. 2019). In the context of isolated non-MDL cases, predominance may well be a good proxy for preserving judicial resources. But in an MDL, where the Court would have to address these issues anyway, class certification just ensures that the Court can adjudicate *all* 9/11 claims simultaneously. Defendants' rationale for denying certification would only simplify the litigation by excluding thousands of 9/11 family members and victim estates, but none of the legal or factual arguments would change.

Defendants try to buttress their arguments with weak analogies to clearly-distinguishable cases. Defendants ignore that the few issues they identify here require a simple factual inquiry and would generally apply to thousands of plaintiffs. For example, Defendants allege that by participating in the VCF, claimants not only waived their own right to sue, and that of the 9/11 victim estate, but also of all family members who received notice of the VCF filing. *See* Opp. at p.14. As relevant to the issue of class certification, the factual inquiry would simply be whether a family participated in the VCF and who received notice. This information is readily available from the VCF and via discovery. Further, approximately 97% of 9/11 families participated in the VCF. *See*

---

[7] *See also* Air Transportation Safety and System Stabilization Act, § 408(b), P.L. 107–42, 115 Stat. 230 (2001) (granting S.D.N.Y. "original and exclusive jurisdiction" over 9/11 claims to facilitate uniform adjudication); National Defense Authorization Act for Fiscal Year 2013, 112 P.L. 239, 126 Stat. 1632 (2013) (creating "Special Rule" for 9/11 claims by extending the ATA statute of limitations to January 2, 2019 to facilitate uniform adjudication of claims); United States Victims of State Sponsored Terrorism Clarification Act, 116 P.L. 69, 133 Stat. 1134 (2019) (amending VSST Fund to allow almost all 9/11 family members to participate).

Supplemental Declaration of Jerry S. Goldman, Esq., dated March 13, 2020 ("Goldman Supp. Dec."), at ¶5. So the waiver issue, as framed by Defendants, would encompass almost every proposed class member and alleviate the need to decide that issue on a case-by-case basis.[8] In contrast, the cases relied on by Defendants involved complex factual issues not capable of class-wide proof. *See, e.g., In re Petrobras Sec.*, 862 F.3d 250, 272 (2d Cir. 2017) (class members needed to provide "evidence that varie[d] from member to member" relating to contract formation, passing of title, and exchange of money); *Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*, 324 F. Supp. 3d 387, 398–99 (S.D.N.Y. 2018) (court would have to identify "numerous beneficial owners and assignors" of certificates issued by trusts); *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128 (2d Cir. 2015) (evidence needed of specific information provided to each class member and advice given). These cases are nothing like the one before the Court.[9]

With regard to damages, Defendants do not dispute that common questions concerning liability (i.e., what the parties have been litigating for the past 16 years) often supports a finding of predominance even when damages differ from one class member to another. *See In re VisaCheck/MasterMoney Antitrust Litigation*, 280 F.3d 124, 139 (2d Cir. 2001). Further, Plaintiffs need not *prove* a damages model now (especially before damages discovery has taken place). Plaintiffs need only show that "damages are *capable* of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (emphasis added); *see also Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015) ("[Plaintiffs must ... show that they can prove, through common evidence, that all

---

[8] Similarly, the factual inquiries needed to determine citizenship, residency, or place of death are simple, and the Court could rule on state law and ATA issues that would apply generally to thousands of MDL plaintiffs.

[9] Further, the defenses identified by Defendants are meritless, and therefore should not serve as a basis to divide the 9/11 community, deny class certification, or unnecessarily burden this Court. For example, with regard to the statute of limitations defense, the ATA statute remained open until January 2, 2019 and various tolling rules apply. With regard to waiver, given that Defendants now boldly assert that this argument knocks out almost every claim in the case, the Court should wonder why they failed to raise it in their motions to dismiss, especially given the judicial resources that could have been saved by eliminating issues early in the case. *See* DIB Mot. Dismiss (ECF No. 954); WAMY Mot. Dismiss (ECF No. 1460).

6

class members were . . . injured by the alleged conspiracy," they need not "be prepared at the certification stage to demonstrate through common evidence the precise amount of damages incurred by each class member") (citations omitted). Here, the O'Neills have provided the Court with damages models used by members of this exact proposed class and adopted by this Court. As the Court and the VCF have endorsed damages calculation models for many of these very same people, Order of Magistrate Judge Maas, dated July 30, 2012 (ECF No. 2618); Letter To Magistrate Judge Netburn, dated Jan. 10, 2020 (ECF No. 5484), plaintiffs have adequately shown that a damages model or evidentiary proof may be subject to a class-wide finding.

### III. The Class Representatives Are Typical and Adequate.

Typicality and adequacy prongs are satisfied when "each class member's claim arises from the same course of events, . . . each class member makes similar legal arguments," and class members' claims "are not antagonistic to the interest of other members". *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007) (typicality); *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) (adequacy). Defendants claim the O'Neills are not typical or adequate because they are subject to VCF waiver argument and because of differences in Pennsylvania and Virginia state law. Defendants are wrong. The waiver argument is just one of the many legal issues in this litigation, and under Defendants' broad view of that argument, it would impact the overwhelming majority of all 9/11 families anyway. The O'Neills accordingly would be adequate and typical as to that argument. Regarding tolling, again, this is just one of many issues in the litigation, and does not render the proposed class representatives "antagonistic" to the class members. To the contrary, the claim of proposed Class Representative, the Estate of John F. O'Neill, could also depend on the application of tolling arguments similar to tolling arguments applicable to Virginia and Pennsylvania state claims. And state law tolling arguments would not even matter for ATA claims, which are available to the vast

7

majority of 9/11 family members.[10] Accordingly, the O'Neills meet the typicality and adequacy tests.

### IV. Defendants Completely Misapply the Superiority Factors.

Defendants claim the existing MDL is sufficient to adjudicate all 9/11 claims, but fail to acknowledge that a class would further enhance the Court's ability to render justice and efficiently manage this case. *See Class Actions in MDLs*, *supra* Note 2, at pp. 9, 12-14. For this reason, each of the Rule 23(b)(3) factors counsel in favor of class certification.

With regard to the first factor, "class members' interest in individually controlling the prosecution of separate actions," Defendants note that many 9/11 family members have individual suits in this MDL and an interest in individually prosecuting those claims. But Defendants fail to acknowledge that the class would not affect existing claims at all. And even for those already-existing claims, the Plaintiffs' Executive Committees ("PECs") have been coordinating this litigation for years precisely because individual control over this complex litigation would be inefficient and undesirable. Accordingly, this factor favors certification.

Regarding the "nature of litigation . . . already begun by class members," for many thousands, there is no litigation already begun. With regard to plaintiffs represented by counsel who did not sue these defendants, they would only benefit from class certification as the undersigned could realize additional recoveries for their clients. Accordingly, this factor favors certification.[11]

With regard to "the desirability of concentrating litigation in [a] particular forum," Defendants bizarrely point to the existence of the MDL as evidence that a class is *not* a superior method of adjudicating claims against them. *See* Opp. at p. 20. But the MDL's existence suggests, at the very least, the desirability of litigating in a particular forum. Indeed, as discussed below, a

---

[10] The O'Neills all declared under penalty of perjury that they had no conflicts with other class members and would do everything in their power to hold accountable those responsible for the 9/11 terrorist attacks for the class members. *See* J.P. O'Neill Aff., at ¶¶ 22, 24, 25; C.A. O'Neill Aff., at ¶¶ 17-19; C.I. O'Neill Aff., at ¶¶ 27-29.

[11] Even co-counsel with pending claims against these defendants benefit from the class. Inevitably when dealing with claims from thousands of families and tens of thousands of family members, mistakes can be made. The class is, and always has been, a safety net against potential errors, even for co-counsel with existing claims against these defendants.

certified class within the MDL would result in at least three other management efficiencies.

First, while Defendants tout the MDL as a panacea litigation management tool, it can cause relitigation of the same issues for added plaintiffs. For example, if the Court denies class certification and plaintiffs file new complaints, defendants may be entitled to relitigate dozens of issues previously decided by the Court as to other plaintiffs. But if the Court simply grants class certification, relitigation would not be possible.

Second, a class is easier to manage than thousands of additional individual cases. While Defendants lament the added complexity that class certification would create, they ignore how straightforward class discovery was, and would be, and ignore the alternative: Filing thousands of new individual claims with the Court, as, for example, undersigned counsel previously undertook in connection with new cases filed against Iran. Defendants cite the "late timing" and "prejudice" that might result if additional class discovery of hypothetical "crash-site" "nationality" and "VCF waiver" subclasses were allowed. *See* Opp. at p. 18. Yet in the class discovery that already took place, Defendants failed to request any documents; served minimal interrogatories, and failed to cite a single word of deposition testimony in their Opposition. Goldman Supp. Dec. at ¶¶ 2-3, Ex. A. The only facts Defendants relied on from all of class discovery were that the O'Neills are U.S. nationals and that a claim was filed on behalf of the O'Neill estate with the VCF. Opp. at pp. 5-6.[12] The alternative is far more burdensome: Potential fact discovery of thousands of additional individuals. Undersigned counsel alone has already filed 17 new cases against Iran. And even though the cases against Iran are default cases, the Court still had to rule on many dozens of separate filings. Yet Defendants claim that the Court creating a handful of subclasses—which the *O'Neill* plaintiffs contend are not even necessary—would somehow be more complex and burdensome than

---

[12] Indeed, in email correspondence to undersigned counsel, Defendants did not express any misgivings about conducting future class discovery should it be warranted. Goldman Supp. Dec., Ex. B.

9

preparing, filing, and serving new pleadings for thousands of people, and related motion practice and discovery. They are mistaken.

Third, despite the existence of this MDL, thousands of 9/11 family members or victim estates are presently not represented against these defendants (and in many cases, at all) in the MDL. If the MDL alone were truly the only way of adjudicating 9/11 claims, why are thousands of people excluded? If Congress, this Court, the JPML, and the Second Circuit all expressed the goal of resolving claims for all 9/11 victims and family members, why settle on a case management structure that only partly gets the job done? The 9/11 community deserves its claims fully and completely adjudicated. Defendants claim that the MDL has been an effective tool in managing this litigation, but ignore the thousands of family members and victim estates left out under the existing structure.

Finally, the timing of the class motion neatly jives with this Court's case management goals. Until April 2019, when a briefing schedule for class certification was contemplated, these defendants were engaged in liability and jurisdictional discovery, which has not yet been completed. Consistent with the guidance articulated by the FJC that "[m]ost often . . . motions for summary judgment are scheduled after or concurrently with the class certification motion," *see Class Actions in MDLs, supra* Note 2, at p. 9, this class motion was filed before dispositive motion practice. *See* Joint Status Report, dated April 23, 2019 (ECF No. 4495). Consolidation within the MDL and coordination with the PECs allowed the *O'Neill* plaintiffs to file their class motion at the precise time when an MDL structure alone would no longer suffice to protect the putative class.

## CONCLUSION

Accordingly, Plaintiffs respectfully request that the Court grant the requested relief.

Date: New York, New York
March 13, 2020

By: _____
Jerry S. Goldman, Esq.

10

                      Bruce Strong, Esq.
                      Nicholas R. Maxwell, Esq.
                      Samantha E. Smith, Esq.
                      Stephen Wah, Esq.
                      ANDERSON KILL P.C.
                      1251 Avenue of the Americas
                      New York, NY 10020
                      Ph: (212) 278-1000
                      Fax: (212) 278-1733
                      jgoldman@andersonkill.com
                      nmaxwell@andersonkill.com
                      bstrong@andersonkill.com
                      ssmith@andersonkill.com
                      swah@andersonkill.com

                      Attorneys for Estate of
                      John P. O'Neill, Sr., et al.