# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**BY ECF**

March 30, 2020

The Honorable Sarah Netburn
United States Magistrate Judge
Thurgood Marshall Courthouse
40 Foley Square, Room 430
New York, NY 10007

    Re:   *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn,

    Plaintiffs, by the Plaintiffs Executive Committees (PECs), oppose the March 27, 2020 letter of the Department of Justice, ECF No. 6101, seeking leave for the Federal Bureau of Investigation to submit an *ex parte* and *in camera* brief "to allow the Government to discuss classified national security information."

    The government's extraordinary and unprecedented request should be denied. The government does not merely seek leave to identify and redact fact information that raises genuine national security concerns. Rather, it asks permission to file an entire secret *legal* brief comprising nearly half of its authorized page limits. The government told the PECs that it intended to use the *ex parte* brief to present case law and argument concerning the application of that case law. The government indicated that its proposed secret brief would have its own table of authorities, so that Plaintiffs would not even know what legal authorities the government is citing, much less how the government suggested that those authorities should be applied. Further, the government does not even propose to limit this *ex parte* brief to specified issues that somehow qualify for such extraordinary and disfavored treatment, but instead seeks unfettered leeway to raise secret arguments on any topic.

    The proposed *ex parte* brief is contrary to the most fundamental requirements of our legal system, and threatens the legitimacy of these proceedings. *See United States v Abuhamra*, 389

F.3d 309, 322 (2d Cir. 2004) ("due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other."). The need for open, fair, and complete briefing of arguments is particularly important given the completely unprecedented nature of the state secrets privilege advanced by the government to conceal information about the investigation of a mass murder inside the United States. No court has ever applied the state secrets privilege to bar production of similar evidence. *See* Plaintiffs' October 2019 Reply Memo. of Law at 8. Moreover, the government seeks a sweeping and unauthorized expansion of the privilege to materials it has not even searched for or reviewed. The novel nature of the government's arguments makes its request to submit an extensive *ex parte* brief all the more suspect and inappropriate.

Further, no proof is offered by the DOJ to justify its request, while the very nature of the evidence sought by Plaintiffs about two-decades old conduct by various Saudi government actors in California to support the 9/11 hijackers demonstrates that the information at issue does not meaningfully implicate any current national security interests.[1] Moreover, it is remarkable that the government plans to submit *ex parte* declarations "that will be in excess of two hundred pages." DOJ March 27, 2020 letter at 1.[2] Given the age of the investigation and other circumstances, Plaintiffs have legitimate concerns that the FBI is improperly using its classification authority to provide cover for the criminal conduct of Saudi government officials inside our borders, and to avoid scrutiny of the FBI's own failures in relation to the investigation of the attacks.[3] Such concealment tactics should not be allowed.

This concern is amplified by the FBI's remarkable delays in responding to Plaintiffs' April 2018 subpoena and rationales for same, which increasingly suggest both an effort to use the clock as a sword to limit scrutiny of the FBI's response, as well as possible alternate reasons for resisting compliance that remain concealed. From the outset, the government refused to simply comply with the subpoena by searching for and reviewing non-privileged documents from its key subfile 9/11 investigation of Saudi government officials.[4] More recently, the FBI has simply refused to search for records relating to its investigations of additional Saudi officials deemed central to the jurisdictional inquiry by this Court, despite early representations that it would search for and produce documents relevant to that inquiry. In support of its efforts to

---

[1] *See, e.g.,* May 2019 Youssef Dec'l at ¶ 53 ("The FBI should not classify information simply because it identifies a Saudi government official who participated in a crime, particularly a heinous crime inside the United States."). Plaintiffs' July 2019, ECF No. 4677, and November 2019, ECF No. 5265, requests for oral argument remain pending.

[2] Why and how can our government hide such volumes of evidence about the activities occurring two decades ago of Saudi diplomat and Imam Fahad al-Thumairy, Saudi agent Omar Bayoumi, other Saudi government officials, and their subagents inside the U.S., to aid and abet the 9/11 hijackers? The sheer scale and reach of the FBI's efforts to present secret evidence and argument raise questions about its motivations for seeking to avoid scrutiny of its claims.

[3] May 2019 Youssef Dec'l at ¶¶ 52-55.

[4] *Id.* at ¶ 30 ("Based on my expertise, the FBI could have reviewed, processed, and produced all of the documents in the subfile case to the Plaintiffs by now.").

avoid appropriate searches and rationalize the delays the FBI has claimed that the FBI's 9/11 investigation remained "active," *see* ECF No. 5140 at 21, when in truth that investigation effectively ended in 2016.[5] And it is apparent that the FBI has used an excessively broad definition for what merits national security protection, for instance by improperly insisting that the name of its subfile investigation was itself classified.[6] Even now, the government continues to refuse to remove its redactions of portion markings, which would likely show that most of the material it is hiding from view was originally designated as unclassified. Given this history, there is simply no reason to accept the DOJ's arguments at face value.

      Notably, the DOJ cites no published decisions in support of its request, but instead references a handful of docket entries for cases in which courts have authorized limited *ex parte* submissions, based on a proper showing and narrowly restricted to information requiring such protection (which in those cases involved unquestioned, genuine and active national security issues).[7] No such showing has been made here, and the scope of the government's request here goes well beyond what was permitted in those cases. Again, it is doubtful that the FBI documents about events twenty years ago in California raise "active" national security interests. *See Am. Civ. Liberties Union v. Dept. of Justice*, 681 F.3d at 65. But in any case, the government's request to submit an *ex parte* legal brief is unprecedented and should not be permitted.

---

[5] *See, e.g.* May 2019 Youssef Dec'l at ¶ 48 ("[i]t is difficult to understand how. . . the FBI can assert that it still has an active investigation."); July 2019 Youssef Dec'l at ¶ 18; October 2019 Youssef Dec'l at ¶¶ 18-26; Tim Golden & Sebastian Rotella, *The Saudi Connection – Inside the 9/11 Case That Divided the F.B.I.*, N.Y. TIMES, Jan. 23, 2020, at MM42 (reporting that the FBI subfile investigation team was "broken up" in 2016).

[6] *See* May 2019 Youssef Dec'l at ¶ 26 ("I see no reason why the name of the case subfile could not be declassified at this time. The subject matter of the relevant case investigation is already a matter of public record."). The January 2020 New York Times article reports that in 2007 "according to former senior counterterrorism officials" the investigation "was code-named Operation Encore." *Saudi Connection* at MM42.

[7] *Am. Civ. Liberties Union v. Dept. of Justice*, 681 F.3d 61, 65 (2d Cir. 2012) (FOIA case seeking information about a "highly classified, active intelligence method"); *New York Times Co. v. U.S. Dept. of Justice*, 756 F.3d 100, 103 (2d Cir. 2014) (FOIA requests for information about 2011 drone attacks carried out by U.S. against Anwar al-Awlaqi and others in Yemen); *Johnson v. Cent. Intelligence Agency*, 771 Fed Appx 108, 109 n. 1 (2d Cir. 2019) (Court rejects FOIA claim based on argument that the CIA had officially disclosed information, noting that plaintiff "does not argue that Exemptions 1 and 3 are otherwise inapplicable.").

Respectfully submitted,

COZEN O'CONNOR

*/s/ Sean P. Carter, Esquire*
Sean P. Carter, Esquire
1650 Market Street, Suite 2800
Philadelphia, PA 19103

MDL 1570 Plaintiffs' Exec. Committee
for Commercial Claims

KREINDLER & KREINDLER

*/s/ Steven R. Pounian, Esquire*
Steven R. Pounian, Esquire
Andrew J. Maloney, Esquire
750 Third Avenue, 32nd Floor
New York, NY 10017

MDL 1570 Plaintiffs' Exec. Committee
for Personal Injury and Death Claims

MOTLEY RICE

*/s/ Robert T. Haefele, Esquire*
Robert T. Haefele, Esquire
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464

MDL 1570 Plaintiffs' Exec. Committee
for Personal Injury and Death Claims