# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**BY ECF**

April 19, 2020

The Honorable Sarah Netburn
United States Magistrate Judge
Thurgood Marshall Courthouse
40 Foley Square, Room 430
New York, NY 10007

Re:   *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

Plaintiffs reply to Saudi Arabia's April 17, 2020 Letter, ECF No. 6146, which relies on material errors, half-truths, an incomplete translation, and misleading quotes from Plaintiffs' submissions in a further and improper effort to evade and delay the production of Abdullah al-Jaithen documents as required by this Court's January 3, 2020 Order. Plaintiffs must be allowed to promptly file their motion to compel Saudi Arabia to conduct proper searches, including at the Ministry of Islamic Affairs (MOIA), as well as the Saudi Embassy and Consulate that have not been searched to date, and produce the documents.[1]

---

[1] The Kingdom makes the false statement that "Saudi Arabia informed Plaintiffs at the time" of its production of Jaithen documents "on February 20" that "Saudi Arabia was then in the process of conducting a secondary search" for MOIA documents. KSA April 17 Letter at 1. But the Kingdom initially attempted to skirt its obligations under this Court's January 3 Order. During a meet and confer on February 27, 2020, the Kingdom deflected the PECs' specific identification of missing documents by resort to its now-familiar claims that it had conducted "reasonable searches" of MOIA, produced all responsive documents, and that no additional documents existed. The Kingdom doubled down on these claims by arguing that any deficiencies were due to the fact that Jaithen was a "low level" propagator, a claim that explained nothing (since the MOIA requires detailed reporting from all propagators) and that is demonstrably inaccurate given Jaithen's education, reporting chain, and rank. It was only *after* the PECs pointed out that all of the produced records had apparently been pulled from Jaithen's basic MOIA personnel file, and listed many obvious gaps in the production, that the Kingdom agreed to make its so-called "secondary search" for Jaithen documents, which led to its second production on April 6, 2020.

Saudi Arabia misquotes Plaintiffs' April 14, 2020 Letter to this Court as stating that "Saudi Arabia has produced no documents 'about Jaithen's trip' to the United States in December 1999." KSA April 17 Letter at 3. Plaintiffs' April 14 Letter correctly stated that the Kingdom's February 20 production contained no documents about Jaithen's trip to the United States, and that the Kingdom's April 6 production contained no documents about Jaithen's trip *to California*. PECs April 14 Letter at 1, 2.

Saudi Arabia admits that it produced no documents about Jaithen's trip to California, but falsely states that its April 6 production contains "numerous documents" concerning his 1999 trip to the United States. KSA April 17 Letter at 3. Yet the Kingdom cites only two documents to back up this claim, and only one of those documents mentions the United States. Not only is it clear that "numerous documents" were never produced, but the two documents relied upon by the Kingdom raise serious issues that further support Plaintiffs' motion to compel discovery.

The first document cited by the Kingdom is a November 30, 1999 MOIA letter, KSA April 17 Letter, Ex. G, which shows:

- Jaithen, a confirmed extremist,[2] was originally assigned by MOIA to work in a location controlled at the time by al Qaeda. Saudi Arabia's translation completely omits that the original draft of that letter, correctly translated by Plaintiffs in attached Exhibit 1, shows that Jaithen was being assigned by MOIA to work in "Kismayo, Kenya." Ex. 1 at KSA0009538. Kismayo is a city in Somalia close to the border with Kenya that foreign travelers usually reached via Kenya. In 1999, Kismayo was under the control of the Somali affiliate of al Qaeda. The letter shows that a line was put through "Kismayo, Kenya" and that "Minneapolis, U.S.A." was handwritten in its place. *Id.*

- Jaithen was ordered that "while performing the job" he should "provide a detailed report" to MOIA about his work in the United States. *Id.* No report of Jaithen, detailed or otherwise, was produced by Saudi Arabia.[3]

- The Saudi Embassy and Consulate have documents about Jaithen's trip, because he was instructed: "you will cooperate with the employees of the. . .Embassy and best represent the Kingdom." *Id.* Saudi Arabia, however, has refused to search either location for Jaithen documents as ordered by this Court. Saudi Arabia must be required to do so.

- Jaithen was provided "specified" Islamic organizations in the U.S. to visit and required to fill out a form for each organization he visited, *id.*, but no documents identifying those organizations or the forms prepared by Jaithen have been produced.

- Jaithen was assigned to travel abroad by MOIA Minister Shaikh himself, in a letter signed by Tawfiq al-Sudairy, a senior MOIA official and the brother of Mutaeb al-Sudairy, MOIA Propagator in California. *Id.* Minister Shaikh, as well as both Tawfiq

---

[2] As Plaintiffs previously demonstrated, Jaithen was a religious extremist who publically attacked the United States. July 9, 2019 Second Supp. Dec'l of Catherine Hunt at ¶ 14.

[3] Likewise, Saudi Arabia repeatedly refused to produce similar reports prepared by other Kingdom officials. *See, e.g.,* Plaintiffs' Second Motion to Compel at A-1 ¶ 2.

and Mutaeb Sudairy, have been identified by Plaintiffs as material witnesses, and all of them have ties to Omar al-Bayoumi and Fahad al-Thumairy. The Kingdom's claim that Jaithen was "not. . . an 'official'" of Saudi Arabia is belied by his direct reporting chain to MOIA's top leadership and his senior ranking to Thumairy.[4]

Saudi Arabia states that "Jaithen was sent to Minneapolis," KSA April 17 Letter at 2, but the only actual proof of his work location inside the United States is in Los Angeles, California, where several weeks before the arrival of the 9/11 hijackers Jaithen met with Saudi agent Omar al-Bayoumi on December 20, 1999 at the Travelodge near the King Fahad Mosque headed by Saudi diplomat and MOIA Propagator Thumairy. Oct. 26, 2018 Hunt Dec'l at ¶ 19 & Ex. 4 at 2.

The second document cited by the Kingdom as showing Jaithen's U.S. trip is a November 24, 1999 phone message. The document states that Jaithen and two other MOIA employees of its Qassim, Saudi Arabia branch office were assigned to a MOIA work trip during the Ramadan holiday but nowhere in the document do the words United States appear. One of those other MOIA employees was Propagator Majid Mohamed Mersal, who has also been named as a material witness in this case. Plaintiffs will demonstrate that Mersal and Jaithen were both in California at the same time in December 1999, and that both had direct contacts with Thumairy and Bayoumi.

Saudi Arabia attempts to hide its failures to search for Jaithen's travel records by making the misleading claim that "information shows that Al Jaithen held a 'normal' passport during the relevant time period." KSA April 17 Letter at 3. But Kingdom officials who held diplomatic passports (such as Thumairy) also kept a "normal" or "personal" passport. No claim is made by the Kingdom that it conducted any search for Jaithen's government passport, or that Jaithen never had such a passport. As stated earlier, Jaithen must have had a visa for his travel to the United States, and the Kingdom must have documents concerning Jaithen's diplomatic passport and visas for his trip. No such documents have been produced.

More generally, the Kingdom's letter argues at a strawman, as Plaintiffs were very clear in their April 14, 2020 letter that they were offering only a "few examples' of the deficiencies in the Kingdom's production.[5] Plaintiffs should be permitted to present a full record of those deficiencies through a motion to compel the Kingdom to comply with this Court's January 3, 2020 Order.

---

[4] Saudi Arabia continues to use the word "Preacher" to describe Jaithen's job, but official U.S. and Saudi government documents translate the relevant Arabic term as "Propagator" and "Propagation." *See, e.g.,* Plaintiffs' Motion to Compel, Attorney's Dec'l, Ex. 8 at DOJ00002, 06, 09, 11, 13, 16; Saudi Arabia Basic Law of Governance, Art. 23, translated at https://www.saudiembassy.net/basic-law-governance ("[t]he State shall . . . undertake its duty regarding the Propagation of Islam . . .").

[5] These would include documents pertaining to programs in which Jaithen participated (*see, e.g.,* the Imamate Program referenced in Ex. 1 at KSA 9538), whether or not his name appears in the document.

Respectfully submitted,

| | |
|---|---|
| KREINDLER & KREINDLER | MOTLEY RICE |
| */s/ Steven R. Pounian* | */s/ Robert T. Haefele* |
| Steven R. Pounian, Esquire | Robert T. Haefele, Esquire |
| Andrew J. Maloney, Esquire | 28 Bridgeside Boulevard |
| 750 Third Avenue, 32nd Floor | Mt. Pleasant, SC 29464 |
| New York, NY 10017 | |
| | MDL 1570 Plaintiffs' Exec. Committee for Personal Injury and Death Claims |
| MDL 1570 Plaintiffs' Exec. Committee for Personal Injury and Death Claims | |

COZEN O'CONNOR

*/s/ Sean P. Carter*
Sean P. Carter, Esquire
1650 Market Street, Suite 2800
Philadelphia, PA 19103

MDL 1570 Plaintiffs' Exec. Committee
for Commercial Claims