K4HSTERC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    In re Terrorist Attacks on              03 MD 1570(GBD)(SN)
     September 11, 2001
4                                            Telephone Conference

5    ------------------------------x

6                                            New York, N.Y.
                                             April 17, 2020
7                                            3:00 p.m.

8    Before:

9                          HON. SARAH NETBURN,

10                                          U.S. Magistrate Judge

11                              APPEARANCES

12   COZEN O'CONNOR
          Attorneys for Federal Insurance Plaintiffs
13   BY:  SEAN P. CARTER

14   KREINDLER & KREINDLER LLP
          Attorneys for Ashton Plaintiffs
15   BY:  STEVEN R. POUNIAN

16   MOLO LAMKEN LLP
          Attorneys for Dallah Avco Trans Arabia Co.
17   BY:  ROBERT K. KRY

18   GEOFFREY S. BERMAN
          United States Attorney for the
19        Southern District of New York
     SARAH S. NORMAND
20        Assistant United States Attorney

21

22

23

24

25

K4HSTERC

1           (The Court and all parties appearing telephonically)

2           THE COURT:  Good afternoon.  This is Judge Netburn.

3           Before anybody says good afternoon back, I'll note

4      that there are 48 people on this call.  So I'm going to do my

5      best to manage the call.

6           First let me check to see whether or not the court

7      reporter is on the call.

8           This is In Re Terrorist Attacks of September 11, 2001.

9      Docket number is 03 MD 1570.

10          What I would like to do is to first wish everybody

11     health and safety.  I hope everybody and their families and

12     colleagues are all doing OK and that everybody is safe right

13     now.

14          Second, thank you for appearing on this telephone

15     call.  I appreciate that.  There are a lot of open matters in

16     this case right now.  We are doing our best to manage this case

17     as best we can in this new remote world.

18          So I wanted to have this conference, as I indicated in

19     the order, to talk about how we're going to talk about the case

20     going forward.  I apologize this conference may not result in a

21     huge amount of direction.  I thought it was important for us to

22     at least all be on the same page.

23          I'm going to ask the lawyers to state their

24     appearances for the record, but what I'm going to do, I know I

25     can see how many people are on the line, that many people are

K4HSTERC

1    here.  What I would prefer to do is to have only those lawyers

2    who intend to speak state their appearance for the record.  If

3    another lawyer doesn't think he or she is going to speak but

4    later realizes he or she has something to add, you can state

5    your appearance at that time.  But for now, I think it would

6    probably be easiest if I only had appearances stated from those

7    lawyers who intend to be speaking.

8            I ask on behalf of the Plaintiffs Executive Committee,

9    who is here?

10           MR. POUNIAN:  Yes, your Honor.  Steven Pounian for the

11   Plaintiff's Executive Committee.

12           We greatly appreciate this opportunity to address the

13   court under these extraordinary circumstances.

14           THE COURT:  Thank you.

15           MR. CARTER:  Your Honor, Sean Carter, also on behalf

16   of the plaintiffs.

17           Thank you, your Honor.

18           THE COURT:  Thank you.

19           Anybody else from the Plaintiff's Executive Committee

20   intending to speak today?

21           Then on behalf of the Kingdom of Saudi Arabia, who is

22   here?

23           MR. RAPAWY:  Gregory Rapawy, your Honor.

24           THE COURT:  Thank you.

25           On behalf of Dallah Avco?

K4HSTERC

1          MR. KRY:  Robert Kry, your Honor.

2          THE COURT:  Thank you.

3          Then on behalf of the government?

4          MR. NORMAND:  Good afternoon, your Honor.  Sarah

5    Normand.

6          THE COURT:  I don't know whether you all can hear the

7    beeping I can here.  People are falling off and falling back

8    on.  Should anybody fall off the call, just call back in.

9    We'll all be here.

10          I'll also ask that if you're not speaking, if you

11    could mute your phones just to reduce background noise and to

12    facilitate the court reporter's difficult job.

13          And then lastly, I'll ask that when you do speak, if

14    you can state your name again so that the court reporter can

15    attribute your statements to the correct person.

16          In this incredibly complex case, we have had a few

17    successful telephone conferences, I know you all are up to the

18    challenge.

19          Let me begin by telling you where we see things.  I

20    thought it would be helpful for me to outline what I believe

21    are the outstanding matters that are on our plate and make sure

22    that we haven't lost anything, and to the extent any party is

23    anticipating any additional motions, to make sure that we are

24    aware of that.

25          We believe that there is a motion to compel the FBI.

K4HSTERC

1   It is a two-part motion in our view.  One part has to do with

2   whether or not the FBI should be compelled to search for

3   additional individuals and the second part concerns the 2012

4   summary report.  We anticipate getting a decision out on that

5   first part in the near future.  Unfortunately, the second part

6   requires me to be in our SCIF, which is in our courthouse.

7   Unfortunately, I don't think I will be able to get a ruling out

8   on that until I'm allowed back in the courthouse.  At least for

9   the near future, certainly until May 15, I'm not going

10  anywhere, which means I won't be able to review that document

11  to work on that motion.  That's just a scheduling heads up for

12  you.

13          There is a motion for reconsideration that plaintiffs

14  have filed with respect to Sadhan and Sudairy --

15          Can I just remind folks to put their phones on mute,

16  please?

17          There is a motion for reconsideration with respect to

18  Sadhan, S-a-d-h-a-n and Sudairy, S-u-d-a-i-r-y.  In some ways

19  that motion is similar to the motion to compel the FBI.  So we

20  intend to work on those in tandem.

21          There is also a motion, what we're thinking of as a

22  second motion to compel the Kingdom, which we are working on,

23  but that motion is fully briefed.

24          There is an initial motion that has been pending on

25  the Kingdom's searches of Jaithen documents, J-a-i-t-h-e-n, and

K4HSTERC

1    that's pursuant to the court's January 3 order.  I understand

2    the plaintiffs have just filed a letter application a couple

3    days ago seeking leave to supplement the briefing on that

4    motion.  One question I have for the Kingdom is whether they

5    oppose that request.

6            Then lastly, there is a second motion to compel the

7    FBI, which is in the briefing stage right now.

8            We understand that to be all of the discovery motions

9    that are pending.  Separately, I know there is a motion to

10   reconsider on the question of the appropriateness of a common

11   benefit fund and there is also a motion on the class

12   certification.  Setting those issues aside and focusing on

13   discovery, we see that as the landscape for discovery.

14           Then, in addition, there is the protective order issue

15   that the Kingdom has filed.  I want to speak a little bit about

16   that.  I don't know if that qualifies as a full-blown motion,

17   but obviously that is a major issue that is on our plate as

18   well.

19           Then some of the attendance questions about the

20   deposition protocol more broadly and how we're going to proceed

21   in this litigation in light of the current pandemic.

22           So with that as the landscape, why don't I begin by

23   asking either Mr. Pounian or Mr. Carter, first, whether or not

24   my review of the pending motions is consistent with what they

25   believe is outstanding and whether or not at this point they

K4HSTERC

1    believe they are likely to be filing any additional discovery

2    motions.

3            MR. POUNIAN:  Your Honor, your description was

4    correct.  There are also objections before Judge Daniels

5    regarding certain rulings of the court that were filed that are

6    also pending.

7            But as to the motions before your Honor, you provided

8    a correct list.

9            MR. CARTER:  Your Honor, this is Sean Carter.

10           Can I add one brief point to Mr. Pounian's comment?

11           THE COURT:  Yes.

12           MR. CARTER:  With regard to the Jaithen motion, your

13    Honor is correct in that the Kingdom had filed a motion to

14    limited searches.  I think the application we had made is not

15    simply to supplement the briefing on the Kingdom's motion, but

16    also to move to compel as to other areas.

17           The original motion sought to limit the repositories

18    being searched, and based on the content of the production

19    we've received, we think there are problems beyond that.  I

20    just wanted to clarify the motion isn't narrowly limited to the

21    issues that have already been briefed.

22           THE COURT:  All right.  Let's unpack that a little

23    bit.

24           So there is a motion to compel the Kingdom, which was

25    filed and fully briefed some time ago.  In addition, there is a

K4HSTERC

1   motion that the Kingdom filed to limit the scope of its Jaithen

2   searches, and it was our understanding that the PEC wanted to

3   file some sort of supplemental brief in connection with that

4   motion.

5          Is that not correct?

6          MR. POUNIAN:  That's not entirely correct, your Honor.

7   Saudi Arabia filed that motion on January 22 while they were

8   searching for Jaithen documents.  They then produced Jaithen

9   documents on February 20, and on February 27, we brought a

10   request for a premotion conference to move to compel production

11   of Jaithen documents, and Saudi Arabia then said they are going

12   to have a secondary production of documents, which we received,

13   I believe, last week.  And then this week we served a motion

14   to -- we served a supplemental request to file a motion to

15   compel Jaithen documents based on the production that was

16   received from Saudi Arabia.

17          So we are filing a motion to compel Saudi Arabia to

18   produce -- we want to file a motion to compel Saudi Arabia to

19   produce Jaithen documents.

20          THE COURT:  So maybe it is a misstatement to say that

21   it is a supplement because it is a separate motion.

22          MR. POUNIAN:  It was a supplement to our prior request

23   for premotion conference.  So our letter this week was a

24   supplement to our February 27 request that was made before the

25   court.  Our view is, what we asked for is simply just to go

K4HSTERC

1    forward and file the motion that we would like to file just

2    because we think it is the easier way to proceed right now and

3    file the motion and let the motion be presented to the court

4    and let Saudi Arabia oppose the motion.

5         THE COURT:  Can you just give me a sense of volume of

6    this motion, meaning is it going to be a 25-page brief with 100

7    exhibits, or is it going to be a five-page letter?

8         MR. POUNIAN:  It is probably somewhere around a

9    ten-page brief, your Honor.  We have to go through the

10   production, but it is not complex because it deals with what

11   has not been provided and it also deals with what we believe is

12   places that were never searched by the Kingdom.

13        THE COURT:  OK.  If I grant you that leave to file,

14   how quickly can it be filed?

15        MR. POUNIAN:  In our letter, your Honor, we suggested

16   one week from the date that you ordered us to file the motion.

17   I think given the circumstances with the FBI motion we're

18   dealing with right now, we would request, I think, ten days, at

19   least in the first instance.  But we could probably do it

20   within one week from today.  Either way, your Honor.

21        THE COURT:  When you reference -- when you said given

22   with what we're dealing with with the FBI motion, you mean your

23   reply brief to the motion to compel?

24        MR. POUNIAN:  We just received the FBI's papers on

25   state secrets earlier this week.  As your Honor knows, there

K4HSTERC

1   is many different declarations that were submitted and our

2   opposition is due, I think, three weeks from yesterday.

3           So there's just a lot of work that the committee needs

4   to do to prepare their opposition.  We're in the middle of that

5   right now, your Honor, but we can handle the other motion at

6   the same time, I'm sure.

7           THE COURT:  OK.

8           MR. POUNIAN:  We would want to get that issue

9   resolved.  It is an important issue.

10          THE COURT:  Understood.

11          Let me pivot briefly to Mr. Rapawy.  On this

12  particular issue, any objection to me setting a schedule for

13  what I'm told is about a ten-page leave on this motion that the

14  plaintiffs want to file in connection with the Jaithen

15  searches?

16          MR. RAPAWY:  We do object to their request to file a

17  new motion, your Honor.  We have a letter that I was hoping to

18  have it in before the conference today.  There was a last-

19  minute problem with translations.  We'll have it in to the

20  court later today.  We ask that the court review that and our

21  response to some of the claims that plaintiffs made about

22  things that were and were not produced before deciding whether

23  a full motion is warranted on this issue.

24          THE COURT:  OK.  That answers another question I had,

25  which is will you be responding.

K4HSTERC

1        We'll wait and reserve decision on that and we'll take

2   a look at that letter when it gets filed today.

3        All right.  Let me tell you how I'm hoping we can move

4   forward and what folks think about that.

5        Some of the issues that have been raised in the

6   various letters, namely the letters that were filed on

7   February 21, I'm losing my notes now, but I think on

8   February -- yes, February 21 -- I think some of those issues, I

9   understand everybody's arguments, and I don't know that I need

10  additional oral argument on the issue.

11        You know, questions about deadlines, questions about

12  locations, questions about attendance, whether the Kingdom can

13  take depositions, questions about the identity of experts.  I

14  think those types of disputes I can address based on the

15  submissions.

16        So what I am contemplating doing is, in the coming

17  weeks, address some of those issues by order, then schedule a

18  conference that we can all participate in hopefully through a

19  multimedia fashion to address some of the more complex issues

20  that have been presented.

21        So what I'm thinking we could do is schedule a

22  conference, let's say, for three weeks from now, plus or minus,

23  and do it on a platform that would allow the video conferencing

24  and would allow the parties to present exhibits.  I know that

25  in our criminal cases right now, we are using a program -- I

K4HSTERC

1    can't recall what it is called; I think it might be called

2    Court Connect -- that allows parties to appear by video and

3    share documents and put it onto a screen.

4              To the extent anyone on the phone has had experience

5    with a similar type of platform, I'm happy to use whatever

6    makes the most sense.  But I think rather than wait until we

7    can all be together again, which I think at the soonest is

8    going to be the middle of June and could possibly be even

9    later, I would rather just operate under the best situation we

10   can present, and I do think we can do this by video with one of

11   these platforms that provides for the presentation of exhibits

12   and the like.

13             That is my inclination with respect to moving the

14   depositions forward.  I'll note that because Ramadan starts

15   next week, depositions likely would have been disrupted or

16   maybe not even have happened, were we not in the middle of a

17   pandemic.  Maybe we'll just take advantage of that religious

18   holiday to spend the next few weeks getting ourselves up and

19   running with the hopes of moving forward on depositions.

20             I'll note with respect to how depositions will go

21   forward, it is my hope, like everybody else's hope, that we can

22   be back to, quote-unquote, normal life, you know, by the middle

23   or late summer.  Of course, nobody knows whether we will or

24   not.

25             Some of the depositions that I'm aware of that parties

K4HSTERC

1     want to take are going to have to go forward by remote means.

2              I'm sorry.  My dog, who I am trying to keep out of the

3     house, just appeared and is inevitably here barking, I'm

4     afraid.  I lost my train of thought.  You don't have that

5     happen in the courtroom.

6              Some of the depositions, I think, are going to have to

7     go forward by remote means.  I'm hoping that the parties can

8     now start thinking about those types of depositions and

9     depositions that could lend themselves to remote means.  I'm

10    sure that there are depositions that the plaintiffs feel

11    absolutely must be done in person.  My suspicion is that those

12    depositions are ones that you would otherwise take later in the

13    deposition food chain anyway, so hopefully the more those get

14    pushed back, the better our environment will be.

15             But my hope is that we will be able to have a

16    operational deposition protocol in place certainly by June 1,

17    with the goal of starting depositions, you know, in the second

18    half of June, even if it means those depositions are going

19    forward by remote means.

20             Do the plaintiffs want to be heard on that general

21    proposal?

22             MR. POUNIAN:  Yes, your Honor.

23             In terms of conducting depositions remotely, it is

24    very difficult to contemplate that now without understanding

25    exactly who we're going to be able to depose, which Saudi

K4HSTERC

witnesses are going to be available.

It is a difficult circumstance when you're dealing with witnesses who are adverse or hostile, conducting their depositions remotely.  It is almost impossible to conduct depositions under those circumstances, particularly when you're dealing with the language issues that we're dealing with in this case.

There may be a handful of depositions that could possibly be conducted that way.  I can't think of any offhand as I'm here, but it is something that has to be dealt with on a witness-by-witness basis.  And given the nature of the witnesses and the nature of the testimony, I don't -- I really don't see how we can conduct the depositions remotely.

You know, the families are willing to have a delay in the process because of this extraordinary situation to get the testimony that they need in a proper way and that we're willing to -- and I think the circumstances demand that that be allowed in this situation.  And to be doing depositions remotely, to my mind, does not give us the opportunity to explore the issues properly and to conduct the depositions properly in the vast majority of cases.

THE COURT:  Do you think that that is true for nonparty depositions as well?

MR. POUNIAN:  I think it probably is true, your Honor, because of the difficulties with language, with understanding,

K4HSTERC

1    with demeanor.  We just had -- and I don't know who everyone is

2    on the call right now, but we had one deposition recently, your

3    Honor, where there were issues where there was essentially the

4    equivalent of a remote deposition, and I could discuss it in

5    more detail, but it doesn't -- it is not necessary in this

6    setting.

7            But we are going to be filing an application with your

8    Honor with regard to that deposition.  it makes the situation

9    almost impossible for a litigant to properly conduct a

10   deposition and our right to confront a witness and to deal with

11   the inevitable situations that will happen during the course of

12   the deposition with documents that are necessary that maybe are

13   in the bottom of a pile somewhere.  It is impossible to know

14   exactly what is going to come up and what may happen.  And to

15   do it remotely, unless it is really a witness you already know

16   is simply confirming a document or confirming a fact that you

17   already know, it is close to impossible.

18           MR. CARTER:  Your Honor, Sean Carter.

19           Can I add one or two points?

20           THE COURT:  I think that Sean Carter wanted to say

21   something as well.

22           MR. CARTER:  I did, your Honor.

23           THE COURT:  OK.  Go ahead.

24           MR. CARTER:  With regard to third-party witnesses, I

25   do think there is an additional issue that we may encounter

K4HSTERC

1   difficulty persuading third-party witnesses to appear if we're

2   still operating in a remote environment.  In many of these

3   cases, we end up having to have conversations with lawyers who

4   show up for those third-party witnesses who don't know anything

5   about this litigation when they jump in.  And, you know,

6   sometimes they are face-to-face conversations that need to

7   happen in order to facilitate the appearances.

8            But beyond that, I think the way that we were thinking

9   about it, your Honor, is that there is a threshold issue here

10  relating to the universe of witnesses that we are going to have

11  access to that is going to define a lot about, you know, how we

12  proceed with regard to depositions.

13           And among other things, I think your Honor is aware

14  that we have indicated that we do not think Saudi Arabia has

15  provided some of the information the court needs in order to

16  make determinations about objections its raised based on the

17  status of some of these people's alleged former employees'

18  claims that they have diplomatic rights to be immune and that

19  some of them, you know, qualify as high-ranking officials.

20           So we had thought that once it was an appropriate time

21  to begin tackling these issues, one of the first order

22  questions would be to define the universe of available

23  witnesses and make sure we have the right information to make

24  those determinations.

25           THE COURT:  Understood.

K4HSTERC

1          I mean, look, nothing is going to happen,

2    unfortunately, for the case for at least 45 days.  Many of the

3    things that you are saying are preventing the parties from

4    moving forward, I'm hopeful will be addressed by the court in

5    those 45 days.

6          So I think my goal is that when we at least move to

7    the next phase of our existence, that we are positioned to

8    start thinking about those depositions, which means not that

9    on June 1 we are taking depositions, but we have a much better

10   sense of who is going to be deposed and sort of a public

11   health, you know, sense.

12         So I think this pandemic is, you know, in effect,

13   putting a pause in the litigation on some level.  It sounds

14   like everybody is working as hard as we are working, so it is

15   not -- nobody is taking a nap during these 45 days.  At least

16   with respect to when those actual depositions are taking place,

17   I think we've got some time to position ourselves in a way that

18   will allow the depositions to go forward hopefully once the

19   environment presents it.

20         Can I ask you a question, Mr. Carter or Mr. Pounian?

21         The issues that you are referring to are related to

22   the Kingdom's protective order.  I understand that your

23   response to that is enormous, I guess is the word I would use,

24   and you know we all left our chambers without a great sense of

25   how long we would be away from them.

K4HSTERC

1          I'm wondering whether or not it would be possible for

2     the parties, specifically the PEC is responsible for the

3     greatest volume here, to prepare additional courtesy copies for

4     myself and my law clerk.  So we need two courtesy copies and

5     have them mailed to us, to our homes, I think, is what we're

6     going to ask, but we may set something up with the court.

7          Is that something you are capable of doing at this

8     time?

9          MR. POUNIAN:  Yes.  We can have our offices do that,

10     your Honor.

11          THE COURT:  Terrific.

12          I'm going to figure out operationally what makes the

13     most sense and what my deputy marshals want me to do as far as

14     security issues and see what makes the most sense, and then

15     give you some instructions either today or early next week and

16     have that motion.  Because my sense is some of the other briefs

17     would be easier for us to go through the documents online, but

18     my sense and in speaking with my clerk, we think we can be most

19     productive if we can have hard copies of those documents.  I

20     think we're going to ask you to provide that to us as well.

21          Thank you for accommodating that.

22          Let me continue with plaintiffs.  If I can ask, do you

23     envision, other than this motion that you're asking to file now

24     with respect to the Kingdom's searches, at this point, do you

25     envision additional motion practice?

K4HSTERC

|     |                                                                           |
| --- | ------------------------------------------------------------------------- |
| 1   | MR. POUNIAN:  We have another motion, your Honor, that                     |
| 2   | we are planning to bring regarding the one witness that I just            |
| 3   | addressed as to whom we took a deposition from --                          |
| 4   | THE COURT:  OK.                                                            |
| 5   | MR. POUNIAN:  -- in March, under the written question                      |
| 6   | procedure.                                                                 |
| 7   | THE COURT:  Yes.                                                           |
| 8   | MR. POUNIAN:  We have a motion to file regarding that                      |
| 9   | witness.  And I don't --                                                   |
| 10  | Sean, are there any other motions that we contemplate                     |
| 11  | bringing at this time, at this immediate time?                             |
| 12  | I'm not certain.                                                          |
| 13  | MR. CARTER:  I don't think there are any formal                           |
| 14  | motions, your Honor.                                                      |
| 15  | I know that Ms. Normand said she was on the phone.                        |
| 16  | The materials we received earlier this week indicated that the            |
| 17  | FBI was looking for some additional documents, and given that             |
| 18  | the court had set a deadline last July, we probably were going            |
| 19  | to ask, just to get a sense.                                              |
| 20  | I don't want to put her on the spot right now because                     |
| 21  | it wasn't on the agenda.  You know, if we encounter difficulty            |
| 22  | in those dialogues, we may bring it to your Honor's attention.            |
| 23  | We just want to get a sense of the timeline on that.                      |
| 24  | MS. NORMAND:  This is Sarah Normand.                                       |
| 25  | Unfortunately, the FBI's operations are also                              |

K4HSTERC

1    restricted substantially, so I don't have an answer on the

2    timeline.  I can tell you that some of our personnel with whom

3    we deal on a regular basis on this case are working and can be

4    doing some of the searching during this time.  It is a limited

5    piece of searching that they are doing really to confirm that

6    all interview reports that can be provided have been provided

7    from the sub file.

8           But some of that work is proceeding, and I can

9    certainly try to get a timeline.  I don't know how firm it

10    would be under the circumstances, but we will certainly do that

11    for Mr. Carter.

12           Unfortunately, when it comes to actually processing

13    records that are still in the cue, our hope had been to have

14    all records processing completed by the time we filed our

15    motion, but unfortunately, from teleworking and the fact that

16    these records exist almost exclusively, if not exclusively, on

17    a classified system to begin with, that work processing has had

18    to largely cease during the teleworking and the pandemic.

19           I will try to get an answer to Mr. Carter's question

20    as to the additional searching that is occurring.

21           THE COURT:  Right.  Thank you very much.

22           Again, my hope is that during these next 45 days,

23    we'll be able to move forward on a lot of these outstanding

24    issues, and that when there is a reopening, we'll be able to

25    really drill down on these depositions.

K4HSTERC

1          I know in some of the submissions, the PEC have

2     suggested that all of the discovery disputes need to be

3     resolved before depositions can take place.  I obviously

4     understand why that is their preference, and we are working as

5     quickly as we can to get through the motions and get answers

6     and directions to the parties, but I'm not going to hold off --

7     if the environment allows for depositions to move forward, I am

8     not going to hold those in abeyance if there are still

9     outstanding discovery disputes and motions pending.  Because

10    that process needs to continue on and on, and the depositions,

11    once the environment allows for the depositions to go forward.

12         Does the Kingdom wish to be heard on any of these

13    matters?

14         MR. RAPAWY:  Yes, your Honor.

15         I think overall, I just want to acknowledge that

16    public individual safety should be everyone's first concern at

17    this point as we move forward.

18         I don't know if the court is aware, but there are

19    actually quite stringent protective, sort of, distancing type

20    measures in place within Saudi Arabia, just as there are in the

21    United States, with travel almost completely prohibited and

22    curfews, basically 24-hour curfews, in locations like Riyadh

23    and Jeddah.  And the court's judicial offices are closed and

24    even most of the government are closed, except for the most

25    critical staff.

K4HSTERC

1          We do completely agree that progress can be made to

2     keep the case moving forward.  Now, we have certainly been

3     anticipating that we would and have been undertaking work to

4     prepare for the depositions that we know were going to go

5     forward during this time.  And we also agree that it would be

6     helpful to have, necessary in some respects, to have rulings on

7     some of the disputed issues regarding the witness list and the

8     protocol to facilitate that process.  Which I understand, you

9     know, the court is obviously not going to decide today, but we

10    are glad to hear that there are plans to move forward on that

11    subject.

12         We are happy to do argument on those motions by

13    telephone, by video conference, or by whatever other manner the

14    court prefers, or not, if the court doesn't believe it is

15    necessary on a particular motion.

16         I haven't used the Court Connect service.  I don't

17    know that -- I don't think anyone on our team has, but we are

18    willing to give it a shot, your Honor.

19         THE COURT:  The reviews were not great, I'll tell you.

20    Hopefully by the time we do a conference, it will be better.

21         MR. RAPAWY:  I'm sure they are getting a lot of

22    constructive feedback day by day, your Honor.

23         THE COURT:  That's very political of you.

24         MR. RAPAWY:  I think we had proposed earlier that

25    some -- at least some depositions could go forward by video

K4HSTERC

1    conference, if necessary.  I think there has been some

2    experience with that in other parts of the MDL, not our

3    witnesses, but I don't think it is a complete barrier to

4    depositions.

5            I think it is a process that can work in at least some

6    cases.  And once we have, I guess, clarity on what the universe

7    of depositions is, we may be able to do more work on figuring

8    out which ones of those there are.

9            You know, there are also a couple of other -- in terms

10   of other things that may need to be briefed, plaintiffs had

11   already -- we had already discussed the motion to compel that

12   plaintiffs have asked to file, and I would advise your Honor

13   that we will be filing our opposition to that -- opposition to

14   the request later today.

15           Another issue that comes up in the context of the

16   deposition protocol is the question of expert testimony and

17   whether the court is going to entertain briefing on whether

18   there should be expert testimony at the jurisdictional phase.

19   That is probably -- that struck us as something else that could

20   probably be done even while everyone is working remotely.

21           Other than that, I would just like to thank the court

22   for the information you provided about what you are planning

23   to --

24           I'm sorry.  I'm reminded of one other thing, your

25   Honor, which is that there is also, one of the other protocol

K4HSTERC

1    issues is the identification of nonparty witnesses that

2    plaintiffs intend to depose.  To the extent -- that is another

3    thing that would help us to figure out what work we can do in

4    terms of preparing for those depositions even while everything

5    is largely shut down.

6           Other than that, your Honor, I guess unless you have

7    any questions for us, I would just thank the court for this

8    opportunity to be heard and for the information you provided,

9    which I think is very helpful to us.

10          THE COURT:  Thank you.  You're welcome.

11          I'm looking over my calendar right now, and I think

12   the week of May 11, I believe the week of May 11 is relatively

13   open on my calendar right now.  I just want to check with

14   everybody on this call.

15          If we were to tentatively look to that week in order

16   to do this sort of video oral argument on the deposition issue,

17   are there times during that window that work for you all, or

18   should I ask you to sort of e-mail among yourselves and see

19   whether or not that works?

20          Maybe I'll ask Mr. Pounian or Mr. Carter first.

21          MR. POUNIAN:  Right.  I think, your Honor, if we could

22   get back to you on that, because I need to consult with Sean.

23   Also, our papers are due on the FBI, I think, the week before

24   that.  So in terms of preparing everything we need to prepare

25   for the oral argument, all the exhibits, it may be difficult to

K4HSTERC

do both of those things at the same time remotely.  I need to look at the schedule and maybe confer with Sean and the other committee members on that.

THE COURT:  OK.  In that case, I'm not going to ask Mr. Rapawy or Mr. Kry or Ms. Normand the same question.

Why don't I ask that the PEC take the lead on this question.  My calendar does fill up quickly, but right now that week is pretty open.  So, you know, maybe if we blocked off that Friday, the 15th, you know, for a couple of hours for this conference.  It is very difficult to do these conferences remotely, and I'm sensitive to the court reporters' difficulties as well.

You know, maybe we even do it in a two-phase and do, you know, on two different days, two different subject matters.  But why don't I ask you to think about scheduling and communicate with defense counsel.  And, actually, I don't know that the government lawyers need to be involved in that because I don't think it will really concern them because it is about depositions.

Then just if you can submit a letter and let me know whether or not that week would work for you all.

MR. POUNIAN:  All right, your Honor.

THE COURT:  Excellent.

MS. NORMAND:  Your Honor, this is Sarah Normand.  I was wondering if I could just be heard on one issue.

K4HSTERC

1          The court had mentioned in your recitation of the

2     pending motions that the fully briefed motion to compel with

3     regard to the FBI, one piece of which involved the four

4     individuals and the other piece of which involved the 2012

5     report.

6          I just wanted to alert the court, in case the court

7     has -- I would certainly understand why it hasn't had an

8     opportunity to look at the papers that we filed on Monday --

9     the Attorney General has now asserted the state secrets

10    privilege with regard to records and information that would

11    reveal whether or not specific individuals are subjects or were

12    subjects of investigation, and that would include the four

13    individuals who were the subject of the prior motion.

14          So I just wanted to alert the court to that fact and

15    the fact that, to the extent the motion addresses privilege

16    issues, it will overlap with the currently -- the motion that

17    is currently being briefed of the Jill Sanborn declaration.

18    She is the assistant director of the FBI's counter terrorism

19    civil division.  Paragraph 45 to 56 of her declaration

20    addressed this issue.

21          So I just wanted to alert the court to that potential

22    overlap.

23          THE COURT:  Thank you.

24          MR. CARTER:  Your Honor, this is Mr. Carter.

25          Just in response to that, and for the record,

K4HSTERC

1   plaintiffs knew obviously that that earlier motion was fully

2   briefed quite some time ago and that the record has closed on

3   that motion.

4            THE COURT:  OK.  Understood.

5            With respect to any of the motions that may be

6   forthcoming, I guess I'll just say that if they are going to be

7   filing -- if anyone is going to be filing documents or motions

8   that have sizeable exhibits, we may also ask that courtesy

9   copies be sent.

10           Please don't send courtesy copies now.  Wait for

11   instructions from us.  But we may ask for courtesy copies to be

12   sent so that we can more easily review the documents.  Having

13   those makes it a lot easier than flipping through the PDFs for

14   us.

15           I'll be in touch in the next -- either by the end of

16   the day today or before Monday about the response to the

17   Kingdom's protective order, where I think we would like to see

18   a courtesy copy of that, as I indicated.

19           All right.  Anything further from the plaintiffs?

20           MR. POUNIAN:  No, your Honor.

21           THE COURT:  That was Mr. Pounian.

22           Anything further from Mr. Rapawy?

23           MR. RAPAWY:  No, your Honor.

24           THE COURT:  Mr. Kry, anything?

25           MR. KRY:  No, your Honor.  Thank you.

K4HSTERC

1           THE COURT:  Thank you.

2           Ms. Normand, anything further from the government?

3           MS. NORMAND:  No, thank you.

4           THE COURT:  OK.  Thank you all for making yourselves

5     available.  Thank you to the court reporter for being here.

6           I hope everyone continues to be healthy and safe, and

7     we will be in touch in the coming days about additional

8     procedures to move this case forward.  If I can ask that the

9     plaintiff's lawyers coordinate with defense counsel about

10    possibly scheduling a video conference sometime in the middle

11    of May so that we can address some of those outstanding issues.

12          All right, everybody.  Thank you.

13          (Adjourned)

14

15

16

17

18

19

20

21

22

23

24

25