**WIGGINS CHILDS PANTAZIS FISHER GOLDFARB PLLC**
Advocates & Litigators

A PROFESSIONAL LIMITED LIABILITY COMPANY
1211 CONNECTICUT AVENUE, N.W. · SUITE 420 · WASHINGTON, D.C. 20036

Direct Dial: 202−467−4489 · Fax: 205−314−0805
Email:TFleming@wigginschilds.com · Web:www.wigginschilds.com

TIMOTHY B. FLEMING
OF COUNSEL

April 30, 2020

*Via ECF and Federal Express*

| | |
|---|---|
| The Honorable George B. Daniels | The Honorable Sarah Netburn |
| UNITED STATES DISTRICT JUDGE | UNITED STATES MAGISTRATE JUDGE |
| UNITED STATES DISTRICT COURT | UNITED STATES DISTRICT COURT |
| SOUTHERN DISTRICT OF NEW YORK | SOUTHERN DISTRICT OF NEW YORK |
| Daniel P. Moynihan U.S. Courthouse | Thurgood Marshall U.S. Courthouse |
| 500 Pearl Street | 40 Foley Square |
| New York, NY 10007-1312 | New York, NY 10007-1312 |

Re: *In re: Terrorist Attacks on September 11, 2001*, **03-md-01570 (GBD)(SN)**
*Havlish, et al. v. bin Laden, et al.*, **1:03-cv-9848 (GBD)(FM)**
*Hoglan, et al. v. Iran, et al.*, **1:11-cv-07550 (GBD)(SN)**
<u>Reply to PEC's letter filed April 13, 2020, ECF Doc. 6135</u>

Dear Judge Daniels and Magistrate Judge Netburn:

This letter replies to the PEC's April 13, 2020 letter that purports to "update the Court on recent actions by the *Havlish/Hoglan* plaintiffs that support the pending motion for reconsideration. ECF No. 5361 *et seq.*"

To start, it is not clear what authority the PEC had to file the purported "update" letter four months after the *Havlish/Hoglan* group's Opposition to the PEC's Motion for Reconsideration, the PEC not having sought leave of court to file the document; nor is the letter bringing any new legal developments, but rather to apprise the Court, purportedly, of the *Havlish/Hoglan* group's "motive." Nothing in the Federal Rules, the Local Rules, or the Court's Individual Practices authorizes its filing without permission. Second, it should have been clear to the PEC that the "[s]everal recent *ex parte* submissions by the *Havlish/Hoglan* plaintiffs" required no "update" to the Court because those submissions were *to the Court* and they explained exactly why they were being submitted in that fashion. The PEC's apparent disdain for the *ex parte* nature of the filings, *see* PEC April 13, 2020 letter at p.1, n. 2, ignores the fact that the *Havlish* and *Hoglan* judgment holders moved this Court for permission to make those filings *ex parte* (and showed the Court in their motion for leave what they intended to file *ex parte*), and received such permission. These facts were plainly on the public docket and the PEC was served with same via the ECF system. MDL Doc. Nos. 6028, 6029, 6091, 6099.

The PEC footnote complains, apparently, that there should have been "reasonable notice and an opportunity to be heard … [for] both sides of a dispute." Citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County,* 415 U.S. 423, 438–39, (1974). The *Havlish* and *Hoglan* judgment holders do not believe there was or is any dispute between them and the PEC on the subject of "their [meaning the *Havlish/Hoglan* judgment holders'] enforcement efforts." PEC "update" letter, MDL Doc. No. 6135 at 1. It is possible, we

| | |
|---|---|
| The Honorable George B. Daniels | The Honorable Sarah Netburn |
| UNITED STATES DISTRICT JUDGE | UNITED STATES MAGISTRATE JUDGE |
| APRIL 30, 2020 | Page 2 |

suppose in retrospect, that the PEC might have tried to oppose the *Havlish* and *Hoglan* judgment holders from obtaining suitable orders purusuant to 28 U.S.C. §1610(c) to support their efforts to enforce the *Havlish* and *Hoglan* judgments, just as the PEC tried to stop – again, for no apparent logical reason – the *Havlish* team from obtaining a judgment in the first place.  What good it would have done the PEC, or their clients, to prevent *Havlish* and *Hoglan* from obtaining §1610(c) orders is not stated, but then, it also remains a mystery why the PEC opposed the *Havlish* plaintiffs from advancing to trial in the first place.  Yet, according to the PEC, it is again the *Havlish* and *Hoglan* attorneys who are somehow failing to represent the PEC's clients' interest, at least as the PEC would apparently like.

The basic problem with the PEC's letter is that the PEC continues to misapprehend the nature of the MDL and the ethical responsibilities of attorneys engaged in representing clients in these cases.  Both *Havlish* and *Hoglan* are now post-judgment cases, as are the PEC's cases that followed in the footsteps of *Havlish* and *Hoglan* and used the evidence, findings, and holdings of *Havlish* and *Hoglan* to obtain their own judgment.  Nothing in the original Case Management Order #3, MDL Doc. No. 248, or in any other orders in this MDL, or in 28 U.S.C. §1407, the statutory basis for creating this MDL, requires, or even suggests, that the PEC has anything to do with how any constituent case may try to enforce a judgment *post-trial*.[1]  *Havlish* and *Hoglan* are not bound in any way to work with, or include in their enforcement efforts, the clients of the PEC or any other attorneys in this MDL, and it is impossible to see how we ethically could do so in any limited fund matter where there are finite funds or assets to attach in satisfaction of a judgment or set of judgments.

Rather, the *Havlish* and *Hoglan* attorneys are doing exactly what we promised our clients we would do – and what we believe we are ethically bound to do – that is, to make the foreign nation-state – the Islamic Republic of Iran, and its political subdivisions and agencies and instrumentalities – accountable for its direct and material support for the 9/11 hijackers.  Toward that end, *Havlish* and *Hoglan* counsel are attempting to enforce those judgments wherever Iran's assets may be found and collect upon the awards made in those judgments.

While we do not know if the PEC's judgments are capable of enforcement in other courts, particularly outside the United States, or, for that matter, within, we do know that the PEC has never requested, or in any manner heretofore suggested, that the *Havlish* and *Hoglan* judgment holders and their attorneys interface with the PEC in any way regarding judgment enforcement, collective or otherwise.[2]  Indeed, what the PEC consistently leaves out is the fact that, once the

---

[1] The PEC's own description of Case Management Order #3, noting five references to pre-trial matters, including discovery, liability, and damages, demonstrates CMO3 was limited to *pre-trial* matters; it said nothing about *post-trial* matters or judgment enforcement.  See PEC's Opposition to *Havlish* Renewed Motion To Create Common Benefit Fund, MDL Doc. No. 4407, February 15, 2019, at p. 4.

[2] Not only did the PEC not request that the *Havlish/Hoglan* team discuss judgment enforcement despite knowing that *Havlish* has been so engaged for several years, but, quite the contrary, everything we have heard in court, read from the MDL docket, or, indeed, been able to deduct or surmise from listening to the PEC and other MDL plaintiffs' counsel and watching the moves made by the PEC, is that the PEC members (and, for that matter, most if not all of the other plaintiffs, except the *Ray* judgment holders) <u>have no intention of trying to enforce their judgments and have no interest in that subject at all – other than with respect to applying for payments from the</u>

| | |
|---|---|
| The Honorable George B. Daniels<br>UNITED STATES DISTRICT JUDGE<br>APRIL 30, 2020 | The Honorable Sarah Netburn<br>UNITED STATES MAGISTRATE JUDGE<br>Page 3 |

difference in the attorneys' approaches to the investigation became apparent, the PEC pointedly excluded the *Havlish* attorneys who held seats on the PEC from all of the meetings, discussions, emails, and other communications ongoing within the PEC, for the duration right up through the present day.

Because the PEC approached its judgments in very different ways than did the *Havlish* and *Hoglan* plaintiffs, the undersigned counsel is not sanguine about the prospects of the PEC's cases in terms of collection outside the friendly confines of the USVSST Fund.[3]  Whether that is right or wrong, the PEC appears to have the view that the *Havlish* and *Hoglan* attorneys have a duty to act against their own *Havlish* and *Hoglan* clients' interests either by dramatically diluting the *Havlish* and *Hoglan* judgment holders' own recoveries by seeking to include the PEC's cases with their own in any collection effort or by jeopardizing the overall prospects of collection success by including the PEC judgments with all their problematic aspects regarding how those PEC judgments were obtained or served.  *Havlish* and *Hoglan* counsel respectfully disagree and we maintain that what the PEC appears to believe is *required* is *neither desirable nor ethical*; and we know that our clients understand clearly how such an approach would work against their interests.

The PEC also charges that "[t]hese filings are further proof that the *Havlish/Hoglan* attorneys have not been motivated by an interest or intention to work toward a common benefit conferred on all wrongful death and personal injury claimants in this MDL."  Once again, the PEC misapprehends what is happening.  The *Havlish/Hoglan* attorneys do not represent all the persons in the PEC's and other attorneys' cases; the PEC and those other attorneys are responsible for those cases and to their own clients.  Rather, the *Havlish/Hoglan* attorneys filed a common benefit fund motion because <u>in fact</u> it was our efforts that <u>actually created a common benefit shared by the PEC's and other attorneys' clients</u>.  That is what matters.

The PEC again attempts to cast this matter as an attempt at unjust enrichment.  <u>It is just that, and the PEC wants that to continue because it is the PEC that is attempting to gain unjust enrichment</u>

---

<u>USVSST Fund established by the federal government</u>.  It almost goes without saying that the PEC has not offered *Havlish* and *Hoglan* counsel any appropriate compensation for representing the interests of the PEC's clients in any judgment enforcement effort because, on the contrary, it vehemently opposes any such compensation even after the PEC's clients have collected hundreds of millions of dollars of their *Havlish/Hoglan*-based judgments from the USVSST Fund.

[3]  On that point, the PEC notes that *Havlish* and *Hoglan* had nothing to do with the creation of the USVSST Fund.  While we certainly do not claim credit for creation of the USVSST Fund, the PEC's statement is not true.  When the U.S. Department of Justice first announced that it wanted to create a program to compensate victims of state-sponsored terrorism using the money DOJ won, and would win, in the prosecution of sanctions-violating and money-laundering cases, DOJ invited public comments and suggestions.  *Havlish* counsel responded by submitting a lengthy, detailed white paper suggesting a comprehensive program to do just that, for all terrorism victims.  Subsequent to the public submissions, Congress took over the issue and used a portion of that money for, *inter alia*, the USVSST Fund.  During the legislative process in which the USVSST Fund was created, lobbyists for groups of victims of other, non-9/11, acts of terrorism tried very hard to exclude the 9/11 families from eligibility under the USVSST Fund law.  The *Havlish* attorneys battled in the halls of Congress, through the final markup of the bill, to prevent the exclusion of 9/11 victims from that legislation, and succeeded.  Further, as discussed in the earlier filings on this motion, the *Havlish/Hoglan* attorneys were the only 9/11 families' lawyers who spoke out against the Special Master's attempt to exclude or limit 9/11 families from realizing the benefits of the USVSST Fund.

| | |
|---|---|
| The Honorable George B. Daniels | The Honorable Sarah Netburn |
| UNITED STATES DISTRICT JUDGE | UNITED STATES MAGISTRATE JUDGE |
| APRIL 30, 2020 | Page 4 |

by denying any compensation for the *Havlish/Hoglan* attorneys who provided the entire evidentiary and legal basis for the PEC's judgments that have and will collect from the USVSST Fund somewhere on the order of $1.1 to 1.3 billion in 2019 and 2020 combined. The PEC and all the other firms whose clients are now collecting hundreds of millions of dollars from the United States Victims of State Sponsored Terrorism Fund contributed nothing to the establishment of the evidentiary basis for their judgments that led to those huge recoveries.

The PEC further charges that "the *Havlish*/*Hoglan* plaintiffs have elected not to work with the PEC and instead proceed on behalf of their individual clients, sometimes *even at the expense of the interest of the other plaintiffs in this case*." *Emphasis added*.[4] The PEC makes no further explanation of this outrageous and patently false charge. The *Havlish/Hoglan* group has never done anything whatsoever to impede the PEC or any other attorneys in this MDL from doing whatever they have chosen to do – not a single time. Unlike the PEC, the *Havlish/Hoglan* group did not try to stop, and never objected to, the PEC and other attorneys from filing motions for judgments based on the *Havlish/Hoglan* evidence, findings of fact, and conclusions of law.

With their April 13, 2020 letter, the PEC maintains that, even still, in any realm, the *Havlish/Hoglan* attorneys are somehow bound to continue working, indefinitely, and without compensation, as the PEC's indentured servants.

This Court should set the record straight by denying the PEC's motion for reconsideration and moving ahead expeditiously with proceedings to determine the proper amount of the common benefit fee for the *Havlish/Hoglan* attorneys.

                                                          Respectfully,

                                                          Dennis G. Pantazis
                                                          Timothy B. Fleming

                                                          Richard Hailey of RAMEY & HAILEY
                                                         *For Havlish/Hoglan*

cc:  All Counsel of Record via ECF

---

[4] We do know that some of our clients, formerly represented by members of the PEC, who have recently retained us, would assert precisely the opposite.