JbfWterC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    In re Terrorist Attacks on              03 MD 1570 (GBD)(SN)
     September 11, 2001
4                                            Conference
     ------------------------------x
5                                            New York, N.Y.
                                             November 15, 2019
6                                            10:30 a.m.

7    Before:

8                          HON. SARAH NETBURN,

9                                            U.S. Magistrate Judge

10                         APPEARANCES

11

12   COZEN O'CONNOR
          Attorneys for Federal Insurance Plaintiffs
13   BY:  SEAN P. CARTER

14   MOTLEY RICE, LLP
          Attorneys for Burnett and Euro Brokers Plaintiffs
15   BY:  ROBERT T. HAEFELE

16   KREINDLER & KREINDLER LLP
          Attorneys for Ashton Plaintiffs
17   BY:  JAMES P. KREINDLER
          STEVEN R. POUNIAN
18        ANDREW J. MALONEY

19   ANDERSON KILL P.C.
          Attorneys for O'Neill Plaintiffs
20   BY:  JERRY S. GOLDMAN

21

22

23

24

25

JbfWterC

                        APPEARANCES CONTINUED


KELLOGG, HUBER, HANSEN, TODD FIGEL & FREDERICK, P.L.L.C.
      Attorneys for Defendant Kingdom of Saudi Arabia
BY:   GREGORY G. RAPAWY
      ANDREW C. SHEN


SALERNO & ROTHSTEIN
      Attorneys for Defendant Yassin Abdullah Kadi
BY:   PETER C. SALERNO


MOLO LAMKEN LLP
      Attorneys for Dallah Avco Trans Arabia Co.
BY:   ROBERT K. KRY
      ERIC R. NITZ


GEOFFREY S. BERMAN
      United States Attorney for the
      Southern District of New York
      On behalf of Attorney General of the United States
      William P. Barr
BY:   SARAH S. NORMAND
      JEANNETTE A. VARGAS
      Assistant United States Attorneys

JbfWterC

1              (Case called)

2              MR. POUNIAN:  Steven Pounian for plaintiffs.

3              MR. CARTER:  Sean Carter for the plaintiffs.

4              MR. HAEFELE:  Robert Haefele for the plaintiffs.

5              MR. KREINDLER:  Jim Kreindler for the plaintiffs.

6              MR. GOLDMAN:  Jerry Goldman, for the plaintiffs.

7              MS. NORMAND:  Good morning, your Honor.  Sarah Normand

8       for the United States.

9              MS. VARGAS:  Good morning, your Honor.  Jeannette

10      Vargas on behalf of the United States.

11             MR. RAPAWY:  Good morning, your Honor.  Gregory Rapawy

12      for Saudi Arabia.

13             MR. SHEN:  Good morning.  Andy Shen for Saudi Arabia.

14             MR. KRY:  Robert Kry for Dallah Avco.

15             MR. NITZ:  Eric Nitz for Dallah Avco.

16             MR. SALERNO:  Peter Salerno for defendant Yassin Kadi,

17      your Honor, in case there's an opportunity for me to speak.

18             THE COURT:  Thank you.

19             Welcome to all of the families and other members of

20      the public who are here.

21             For the lawyers, let me remind you that in this

22      absolutely beautiful courtroom that is large, the acoustics are

23      awful.  When you speak, please be sure to move the microphone

24      as close as possible to you, not only so that I can hear you

25      but the court reporter can hear you and create the best record

JbfWterC

1    possible.

2              We're here on a status conference to address a couple

3    of pending motions.  I also have a few housekeeping matters

4    that I want to address.

5              I want to talk about the letter motion that the

6    plaintiffs had filed to compel the FBI to conduct further

7    searches, and I'd like to talk with the parties about the

8    nature of that dispute.  And obviously in the submissions, the

9    FBI hasn't responded on the merits, so I think we're going to

10   need to set a briefing schedule on that.

11             The Kingdom has filed a letter motion requesting a

12   scheduling order going forward, which the plaintiffs have

13   responded to.  I'm not prepared to set that order today, as the

14   parties know, but I may have a few questions and give you all

15   some direction to continue in your meet-and-confers.

16             Then I want to speak about a few housekeeping matters

17   so we can move this case forward in the most clear and

18   transparent way and so that everybody has their expectations in

19   the right place.

20             Let's begin with the letter motion that the plaintiffs

21   filed on October 24 that concerns the FBI's searching for

22   documents related to the third named subject of the FBI's

23   subfile investigation.  Obviously, those arguments have been

24   set forth in the plaintiffs' letter brief.

25             I think, actually, rather than having Mr. Pounian

JbfWterC

1    begin, I think I'm going to ask the government to begin because

2    you haven't responded on the merits here, but let me ask you a

3    few questions.

4            Are your objections here related to -- why don't I ask

5    it in an open-ended way.

6            What are your objections here?

7            MS. NORMAND:  Our objections, your Honor, aside from

8    not having the issues decided through summary briefing, are

9    that we are now in a position to litigate the issues relating

10   to the core records.

11           When we were here a year ago, in October of 2018, we

12   explained to the Court, as we had explained to the plaintiffs,

13   how the FBI had approached the core-records search and how the

14   FBI had approached its response to the subpoena; that is, by

15   gathering a group of core records to determine whether

16   information from those records could be released under

17   protective order.

18           As of this morning, I've provided what is an eighth

19   tranche of records, which substantially completes the FBI's

20   review of and processing of the core records.  There are a

21   handful of items that are still being looked at, but very few,

22   and hopefully those will be resolved in a matter of weeks, but

23   we think that the FBI's core-records review and production is

24   substantially complete now.

25           When we were here in May and the plaintiffs asked to

JbfWterC

1   have briefing on certain discrete issues, the Court entertained

2   that request and had the view that we could have an initial

3   motion with regard to requests for additional discovery about

4   four individuals and the 2012 report, which we have now done.

5   We think that process has really identified that piecemeal

6   review of discrete aspects of the core-records approach and the

7   assertion of privileges is not the most efficient and practical

8   way of proceeding here.

9        We would like, and we think the best and most

10  efficient way of proceeding, is to have a global, omnibus

11  motion that addresses whatever disputes that the plaintiffs

12  have with the core-records approach.  Those can include search

13  issues.  Those can include, obviously, assertion of privileges.

14  But we don't think it's efficient or reasonable to continue to

15  have piecemeal motions.

16       THE COURT:  Let me stop you for a second.  As I

17  understand it, there are two pending motions.  I believe

18  they're now fully briefed, awaiting for my decision.

19       MS. NORMAND:  Yes.

20       THE COURT:  One relates to these four individuals, and

21  the second relates to the assertion of privilege with respect

22  to certain documents by the government, and we'll get to those

23  motions as quickly as we can.

24       It's your view that even after those motions are

25  decided, there is another layer of disputes regarding, more

JbfWterC

1    wholesale, the nature of the FBI's searches that needs to be

2    resolved?

3              MS. NORMAND:  I think that's the plaintiffs' view.  As

4    we understand the plaintiffs' view, they don't agree with the

5    core-records methodology and search.

6              And if I could just back up?

7              A year ago, when we explained what the FBI was doing

8    to respond to the subpoena, it was very clear that the

9    plaintiffs were agreeing to this provisionally.  They were

10   going to see how it went, see what records they got through the

11   core-records search; there was uncertainty, but after reviewing

12   whatever records they received, there would be an opportunity

13   to make whatever motions to compel they believed were

14   appropriate.

15             We are now at that point, and we understand the

16   plaintiffs to be disappointed with what they have received.

17   They don't believe, as we understand it, that the core records

18   were sufficiently inclusive, and they believe that some of the

19   material or perhaps a lot of the material that was withheld is

20   material that they're entitled to.

21             We have legitimate disagreements on those points, but

22   we think those are absolutely ripe for review.

23             THE COURT:  It sounds to me, and maybe I have a

24   misunderstanding, but it sounds to me that at least with

25   respect to the plaintiffs' letter submission, their dispute, as

JbfWterC

1    I understood, was specific to this third main subject and not

2    sort of an omnibus dispute with how the FBI has conducted its

3    discovery writ large.

4          MS. NORMAND:  I think they have both disputes, your

5    Honor, and obviously they'll explain them.

6          I do want to make the point that the FBI's search for

7    core records absolutely included a search for records regarding

8    the third main subject, so that is a misimpression that

9    hopefully has now been corrected.  The search for records

10   regarding the third main subject also implicates the search for

11   records regarding the core records generally.  Those are the

12   same issues, from our perspective, and if we were to brief the

13   adequacy of the search with regard to the third main subject,

14   we would be briefing, effectively, the FBI's core-records

15   search and why it's sufficient.

16         One of the reasons it's sufficient, your Honor, and

17   really the principal reason we think it's sufficient, is

18   because the premise of the core-records approach was that the

19   plaintiffs here had requested a vast amount of information

20   about a pending law enforcement investigation.  A vast majority

21   of the information is privileged, and as a result, it does not

22   make sense to have the FBI search for and identify all records

23   in various category, whether they be about the four

24   individuals, the third main subject, the subfile.  They want

25   all records about many, many topics.

JbfWterC

1            If, ultimately, the FBI's privilege assertions are

2      sustained as to the core records, which we believe are very

3      much representative of the types of documents that are most

4      pertinent to the Court's jurisdictional inquiry, if the FBI's

5      assertion of privilege is sustained as to the core records,

6      then that very much informs the analysis as to the search,

7      because the FBI's position will be, and is, that it would be

8      unduly burdensome to search for all records concerning four

9      individuals, all records concerning the third main subject.

10     And the reason that's unduly burdensome is not simply a matter

11     of volume, although that's part of it, and in many cases we

12     can't even reveal the full volume of records because that

13     itself would implicate classified information, but it's unduly

14     burdensome because the information is privileged.  We would be

15     putting the FBI to this extraordinary burden of locating,

16     identifying, processing and withholding as privileged a large

17     volume of information for no ultimate purpose.  It would be an

18     undue burden because ultimately that information is going to be

19     privileged.

20            THE COURT:  It's the government's view, before we have

21     any briefing with respect to this anticipated motion, that I

22     first render a decision on the state-secrets privilege?

23            MS. NORMAND:  We do think if the Court were to render

24     a decision on the state-secrets privilege, because those

25     categories of information are the same categories of

JbfWterC

1    information that are implicated in the rest of the records, we

2    think that if the Court were to render a decision on that

3    issue, that would very much inform the other issues, including

4    the issues raised in the instant motion, including the more

5    omnibus issues that we understand the plaintiffs seek to raise

6    at a later point.

7                THE COURT:  OK.  Thank you.

8                Mr. Pounian, you're taking the lead here?

9                MR. POUNIAN:  Yes, your Honor.

10                The core of the jurisdictional discovery in this case

11    that was ordered by Judge Daniels was to determine who tasked

12    the two Saudi officials in California, Thumairy and Bayoumi,

13    who gave them the order to provide substantial assistance to

14    the hijackers in California, when they arrived, the first

15    arrival of the al-Qaeda hijackers in California.  And we served

16    a subpoena in April of 2018 that specifically asked for

17    documents about Mr. Thumairy, Saudi official Thumairy,

18    documents about Saudi official Bayoumi and documents about this

19    third main subject, this third main criminal subject of the

20    investigation, who was the person who ordered Thumairy and

21    Bayoumi to carry out the support network for the hijackers upon

22    their arrival in the United States.

23                Now, we've received discovery about Bayoumi and

24    Thumairy over the past year.  We've been engaged now, since

25    last November, when the documents were first produced by the

JbfWterC

1   FBI, and we have received certain factual evidence about

2   Bayoumi and Thumairy.  That's been received over the past year.

3   We're not complete yet.  There's more documents on a disk we

4   just received today, which I understand has 2,000 pages on it.

5   There are other items that we've asked for that are

6   outstanding, and there are other items on a list that we've

7   given to the government, and there may be another motion, your

8   Honor, regarding those items.

9          But the most critical matter, and the reason we

10  brought this to your Honor's attention so quickly, after we

11  heard, to our surprise, that they were not going to produce any

12  documents regarding this third subject, any documents regarding

13  the very core of the jurisdictional discovery in this case --

14          THE COURT:  Is that actually their position to you,

15  that they're not producing documents as to the third subject?

16          MR. POUNIAN:  They told us on September 30 in an email

17  exchange that they would not do any further searches for this

18  subject as of that time.

19          THE COURT:  That's different than they're not

20  producing documents as to that person, because I think they

21  have produced documents.

22          MR. POUNIAN:  To date, your Honor, all we've received

23  is the name.  After the families went and met with the

24  President on September 11, the next day, we got the name.

25  That's all we got.  And all we have otherwise, other than the

JbfWterC

1   name, is the report which had already been released three years

2   ago, that said redacted, you now know the name, tasked Bayoumi

3   and Thumairy with assisting the hijackers.  And we also know

4   that a criminal investigation was opened by the FBI regarding

5   that third main subject.

6           But the FBI, with regard to that third main subject,

7   has not produced any of the evidence, any of the factual

8   evidence in the same manner that it has produced evidence as to

9   Bayoumi and Thumairy.

10          Now, we have a privilege log from them that lists 17

11  items, but it doesn't contain the factual evidence that was

12  assembled by the FBI.  And when counsel says the core documents

13  included the third main subject, when we look at the only

14  evidence in the record, which is a declaration of Duel

15  Valentine that was submitted in June of this year, when he

16  described what the core-records search was, he said it was a

17  search for records regarding Thumairy and Bayoumi.  That was

18  the government's position until, suddenly, on September 11th

19  and 12th, the name was released.  And now they've had to

20  scramble and figure out what to do at that point in terms of

21  handling the situation.

22          Now, what we've heard now from the government is,

23  Well, the statement in the 2012 report that this person, this

24  third main subject, it was really an investigative theory; it

25  wasn't a fact.  That's now the argument that's coming out of

JbfWterC

the woodwork from the government, and that's the argument of
Michael McGarry, the assistant director of the FBI, who's come
in and said that to this Court, even though he never worked on
the investigation itself.  He was not involved in this
investigation, in this part of the investigation, certainly.

What we do know is that for the FBI to open a criminal
investigation into this third man, they had to have an
articulable factual basis.  That's what the rules say.  They
had to have facts, facts to show that this third man performed
some criminal act in furtherance of this conspiracy, in
furtherance of directing Thumairy and Bayoumi to assist the
hijackers.

In addition, the report itself says that there is
evidence.  The report, on its face, says there is evidence, and
we submitted a declaration from an FBI agent who says FBI
agents don't use the word "evidence" lightly.  It's not
something they toss around and say there is evidence.  If there
is evidence, according to this agent, there would have to be
direct proof.  If it was an opinion or a theory, they would
state it as such in the report.  They wouldn't say there is
evidence.

Also, your Honor, on the privilege log that I
mentioned, there's another document.  It's not as if the 2012
document is sitting isolated on its own.  There's more.
There's a report from 2016.

JbfWterC

```
 1              Now, I don't know if it's included on this.  I doubt
 2     it, but there's an FBI report from 2016, a review report, of 16
 3     pages, not a summary report, like the 2012 report, but a review
 4     report that goes through, evidently, the evidence.  It's on
 5     their privilege log, but it has not been produced.  We don't
 6     know whether it's going to be produced, and according to the
 7     FBI, after the name of the third subject was declassified, they
 8     were going to do a review of all of their documents, and that
 9     was supposed to be done by October 28.  We haven't gotten
10     anything yet.  But that review, if they produce this document,
11     will provide further evidence regarding what happened in this
12     investigation, and perhaps that document could be sent to the
13     Court at least so the Court can know what actually happened in
14     this investigation.
15              At some point, the truth has to get developed within
16     this case, between the Court and the parties in this case.
17              Now, it's a very simple matter to determine the
18     documents that involve this third man.  It's a matter of a
19     keystroke on a computer.  They've said they can make a list of
20     every document from this third man in a matter of seconds.
21     They could provide that list to the Court.  They could provide
22     it to the plaintiffs in the form of a privilege log.  What
23     documents do they have on the third man?  But the FBI won't
24     even tell us the number of documents about the third man,
25     because they say that's protected for some reason.
```

JbfWterC

1          There's never been a privilege log where you can't

2     find out the number of documents involving someone, because we

3     know already the person's name and we know what they did.  So

4     why not have the evidence?  Why not know the documents, the

5     number of documents and what the FBI did in its investigation?

6          THE COURT:  To my question previously, is the scope of

7     your dispute with respect to just documents for this

8     individual, or is the scope of your dispute more globally how

9     the FBI conducted its review?

10          MR. POUNIAN:  It's both, your Honor.  We were waiting

11     until the last production, and I don't believe this is the last

12     production; I believe there are more items that are outstanding

13     that we have raised with the government in the list of

14     documents.  But our plan was to review what had been produced,

15     and at that point, file another -- we probably will file

16     another motion on this issue, because the core documents that

17     have been produced, it's a very subjective standard.  We have

18     no way of knowing what is going to be produced.

19          But with regard to this third man, the issue was so

20     clear, so discrete and so critical to the case at this time, we

21     thought there was no choice but to file this motion now and get

22     that issue resolved, just like back in April, we filed a motion

23     immediately after hearing about the four other witnesses that

24     we were trying to get information about.  We immediately filed

25     a motion, and this Court allowed us to file the motion

JbfWterC

```
1   regarding the four Saudi government officials that we filed in

2   May of 2019.  So that issue is before the Court now.

3           This issue also, we think, is of the same thing.  And

4   if we had known back in April, as we pointed out in our papers,

5   your Honor, if we'd known back in April that this was going to

6   be an issue -- and we were led to believe in every way it was

7   not going to be an issue -- we would have brought the motion

8   back then.  But because of the way this has developed, we did

9   not, and now we find out -- in September, October -- that the

10  documents are not going to be provided to us.  And that's why

11  we believe it's urgent that we file the motion now.

12          THE COURT:  But if it's the government's position that

13  they conducted this core-records search and produced all

14  responsive documents and you've received now your eighth

15  tranche -- and you'll go through those -- if it's the

16  government's position, as I think they've said, that with

17  respect to this third individual, if that was identified as

18  part of their review, they would have produced related

19  documents.  And so it sounds to me like your objection is not

20  that they are withholding these documents but rather that there

21  was a flaw more globally in how they conducted their search.

22  If that's the issue, it seems that this application is subsumed

23  in the larger motion.

24          MR. POUNIAN:  No, your Honor.  It's both.  It's both

25  issues.  It's both withholding and the search that they made,
```

JbfWterC

1    because we believe that, as I said before, they did not include

2    within their search -- I don't believe they included the third

3    subject in their search.  And the declaration of the FBI agent

4    who submitted a declaration in June, Duel Valentine, only

5    includes Thumairy and Bayoumi as part of the core-records

6    search that had been made by the FBI.

7         And may I say, also, there is no evidence.  We have

8    evidence about Thumairy.  We have phone records.  We have

9    banking records.  We have other factual evidence to show their

10   involvement.  We have 302 statements.  We have other items

11   regarding them that are relevant to the cases involving them,

12   involving the situation regarding them.

13        As to the third man, there is nothing, nothing except

14   the name, nothing except the 2012 report.  That's all we have,

15   those two pieces of information.  And now we have a privilege

16   log.  And if we look at the privilege log, we don't see the

17   phone records.  We don't see the banking records.  We don't see

18   the other items of any normal criminal investigation that the

19   FBI would have had to collect on this third main subject.  So

20   for them to come in now and say, Oh, we searched for everything

21   as part of our core-records search, it's just not there.  It's

22   just not in the papers.  It's not in the documents.  And their

23   own agent, who submitted the declaration, didn't say I searched

24   for Thumairy, Bayoumi and the third man.  No.  He said I

25   searched for Thumairy and Bayoumi.  That's all he said.

JbfWterC

1          So it's a question of not only the search but that

2     they have the documents and they're withholding them from

3     production.  And I think it's essential that we get those

4     documents and get this issue cleared and resolved.

5          As I said also, there's this 2016 summary report.

6     It's actually a review report of the FBI that was prepared

7     after the 2012 report and provides the review of the entire

8     investigation, and we still have not received that document.

9          THE COURT:  In a redacted form?

10          MR. POUNIAN:  Not even in a redacted form, your Honor.

11    We just know that it exists.  And we also suspect it mentions

12    Thumairy, Bayoumi, the third man, whose name has now been

13    revealed, others who we have identified before this Court who

14    are the subject of present motions before the Court.  We

15    believe that all those names are mentioned in there, that they

16    must be, because we believe they're involved in this whole

17    support network for the hijackers, but yet it's being withheld

18    from production, and we think that is a critical document that

19    should be produced.

20          THE COURT:  OK.  Thank you.

21          MR. POUNIAN:  Thank you, your Honor.

22          MS. NORMAND:  Your Honor, I do need to correct some

23    just inaccuracies in the presentation of what was included in

24    the core-records search.

25          Counsel is simply misreading the declaration.

JbfWterC

1    Mr. Valentine made clear that the core group of records that

2    were gathered pertained to the issues as to which the Court had

3    allowed jurisdictional discovery, "which I understand" --

4    Mr. Valentine understood was "whether and to what extent,

5    Thumairy, Bayoumi and their agents took actions in 2000 at the

6    direction of more senior Saudi officials to provide assistance

7    to the hijackers."

8          I am representing to this Court, as I have represented

9    to the plaintiffs, that the core-records search included a

10   search for records regarding the third main subject.  We were

11   well aware -- Ms. Vargas and I were actively involved in

12   assisting and coordinating with the FBI regarding the types of

13   searches that were appropriate.  I am representing to the Court

14   that those searches included searches for relevant records

15   regarding the third main subject.

16         THE COURT:  How do you explain, two things: one, the

17   language in the report that says "based on evidence"; and then

18   relatedly, Mr. Pounian's remarks that there are no 302 reports,

19   no phone records, banking records, the type of stuff that you

20   see with respect to Bayoumi and Thumairy and that you would

21   typically see in an investigation of this sort?  Are the

22   documents being withheld on privilege grounds, or do they not

23   exist?  Were they not searched for?  How do you explain this?

24         MS. NORMAND:  Your Honor, I'm not able to say in open

25   court or in an unclassified way precisely which records were

JbfWterC

1    searched for with regard to the third main subject or which

2    records were located.  If the Court finds that important, we

3    are happy to make an *ex parte* submission to the Court to

4    identify which of the core records pertain to the third main

5    subject.

6            What I can tell you is that the FBI, looking at the

7    2012 report and the specific language that the plaintiffs are

8    relying on there, "tasked Bayoumi and Thumairy with assisting

9    the hijackers."  Evidence.  Whether it was evidence or whether

10   it was an investigative theory, that's not pertinent here.  We

11   looked for it, and we included within the core records what

12   information we thought was being referred to as evidence in

13   that document, and it is being withheld as privileged.  That is

14   exactly correct.

15           THE COURT:  The evidence being withheld is privileged.

16           MS. NORMAND:  Yes.

17           THE COURT:  Is that the evidence that's part of the

18   underlying privilege motion?  Or is that separate?

19           MS. NORMAND:  It's related, your Honor.

20           The plaintiffs wanted to proceed with one document, so

21   we justified the privilege assertions as to one document.  If

22   the Court looks at the attorney general's declaration and the

23   declaration of Michael McGarry, you will see that the

24   information that was withheld from that document falls into

25   four categories: subject information, information about the

JbfWterC

1   reasons for and results of the FBI's investigation; national

2   security investigations; sources and methods by which the FBI

3   gathers information and did gather information; and foreign

4   government information.

5          I have also represented that the core-records review

6   and production is now substantially complete.  We made a large

7   production today.  It's quite large, but most of the documents

8   are actually the grand jury records that were recently

9   authorized for release by the Court.  That does largely

10  conclude the FBI's production.

11         There are a handful of discrete items that have been

12  requested that if we can find we will process.  But we are

13  done.  For all intents and purposes, we are done with the core

14  records.  The plaintiffs gave us a list of all records

15  concerning this, all records concerning that, that they still

16  wanted and we said that's not consistent with the core-records

17  approach.  We're not going to go back to the drawing board and

18  undertaking broad new searches.  We should litigate any

19  disputes about the core records.

20         I want to emphasize that Mr. Pounian's concerns about

21  information that's being withheld and the propriety of those

22  withholdings, the privilege assertions, those are the very

23  issues that we think right now are ripe for resolution.

24         Mr. Pounian referred to the 2016 report that he

25  believes is important.  Regardless of the contents of that

JbfWterC

1   report, that is a core record.  It was reviewed by the FBI.  It

2   was withheld in full.  We are now prepared to brief whether

3   that assertion of privilege is appropriate.

4          To the extent that they have questions about what this

5   core-records search or they have disputes about what the

6   core-records search included or excluded, we should litigate

7   that now.  It's the same issue, whether the FBI's approach was

8   sufficient as to the third main subject as whether the FBI's

9   approach was sufficient as to the core records generally.

10          If we were going to respond to a submission about how

11   the FBI's searched for records regarding the third main

12   subject, we would respond by telling you, Here's what our core

13   search was and here's why we did it that way and here's why

14   it's appropriate and here's why requiring the FBI to go back

15   and conduct all-records searches in all these various

16   categories would impose undue burdens here.  Those would be the

17   same arguments.

18          I do want to emphasize why it's crucial that not just

19   the search issues be addressed but the privilege issues as

20   well, because it's fundamentally clear that the disputes

21   between the plaintiffs and the FBI at this point really have to

22   do with what determinations have been made about what

23   information will be produced.  It was clear a year ago that the

24   FBI was reviewing the core records to determine what, if any,

25   information could be produced.  We never committed to produce

JbfWterC

1    any particular records.

2            And I would note that when there were discussions in

3    August between the PECs, my office, the Department of Justice,

4    arguments were made by representatives of the plaintiffs, both

5    to my office and to the Department of Justice, that they wanted

6    the name:  Please declassify the name; the name is important.

7    And they recognized in the course of those discussions that

8    additional information about the predication for the

9    investigation of the third main subject -- the evidence, the

10   sources and methods for gathering that evidence -- that those

11   aspects, those categories of information would raise serious

12   privilege issues and so they focused on the name.

13           So it should not be a surprise that the FBI has

14   withheld this information.  I fully understand there's

15   disagreement, and we should brief those issues.  The parties

16   have legitimate disagreements.  We should brief the issues and

17   the Court should resolve them.  But there's been no

18   misrepresentation.  There's been no misleading.

19           From the very beginning the question was would the

20   core records be produced?  And to the extent they were

21   produced, would privileges be asserted?  And to the extent

22   privileges were asserted, were those appropriate privileges,

23   and if so, then that would let us know whether the core

24   approach was workable and was sufficient, because if, in fact,

25   the FBI is right that the evidence that's being described is,

JbfWterC

1   in fact, privileged, then it doesn't make sense to have the FBI

2   go back and search for all records identifying that

3   information, because we will know at that point that those

4   records are going to be privileged and that requiring the FBI

5   to go back and search for them would impose an undue burden.

6           I would like to say, and I think it's important, I

7   would like to make the point that over the past several months

8   there has been, I think, an elevation of the level of rhetoric.

9   There are legitimate disagreements between the parties here

10  that we think are appropriate for briefing.  But we think both

11  sides should be treating each other with respect.  We think

12  that it's important for the parties to be able to talk to each

13  other and make representations to each other and to act in good

14  faith.

15          We categorically deny that there has been any effort

16  to mislead or be evasive.  From the very beginning, it was

17  clear, and I would point the Court to the transcript from the

18  October 2018 conference, in which Mr. Pounian acknowledged that

19  they were hopeful about the process of the core-records

20  approach; they think it was the best way under the

21  circumstances to proceed, "but we will not know until we get

22  the documents and we actually see them; there's some

23  uncertainty right now, but we're willing to proceed with that

24  uncertainty."

25          That process is now done.  They had a sense of what

JbfWterC

the FBI is willing to produce.  We should litigate those issues
in one global, omnibus motion that will then be highly
informative of all or any remaining disputes, if there are any.

We do think that the privilege assertions in the 2012
report are highly indicative of what the briefing would look
like as to the core records, so we do think that it should be
very clear that the categories of information that they now are
saying they want the FBI to produce are going to fall well
within those categories of records.  And as the Court knows
from the process with regard to the briefing over the summer
and the fall, it's a cumbersome process to assert the
state-secrets privilege.

We asked for 60 days to complete that process.  It
took even a little bit longer than that.  If we have to
litigate this motion -- by our count, there are at least three
motions that the plaintiffs would like to make.  They'd like to
make this motion about the third main subject.  They'd like to
make a motion about the core-records search.  They'd like to
make a motion, then, about withholdings in the various
tranches.  That's at least three more motions.  We have two
motions already pending.  We think there should be one motion.
All the issues are inextricably intertwined, and when the Court
resolves that motion, that will be the most efficient and
effective way to proceed here.

THE COURT:  Thank you.

JbfWterC

1           MR. POUNIAN:  Your Honor, I don't think the Court got

2   a clear answer to the question that the Court asked about

3   whether documents were being withheld, whether they're all

4   listed on a privilege log or not.  Looking at the privilege

5   log, the documents, the evidence is not there.  We know the

6   name of this person, the third suspect.  We know that this

7   third suspect was the person who initiated the order that set

8   in motion the 9/11 plot inside the United States.  We know

9   that.  And the government is saying that every document, every

10  piece of evidence about that person is privileged?  Is that

11  what the government is saying?  Or what?  I mean, because it

12  makes no sense that the government is trying to hide the facts

13  regarding this third subject from the families and the American

14  people.  It's just wrong, and it makes.

15          THE COURT:  I actually don't think that's what she's

16  saying.  I really don't.  I think what she said --

17          MR. POUNIAN:  Well, I was --

18          THE COURT:  Sir.

19          MR. POUNIAN:  I'm sorry, your Honor.

20          THE COURT:  I think what she said was that she

21  included this person in the directive while they were

22  searching, they were fully aware of who this person was, it was

23  part of their process and to the extent the documents have not

24  been produced it's either because they don't exist or because

25  they are being withheld on privilege grounds, and I think the

JbfWterC

1    government's view is let's resolve those privilege grounds,

2    because if we just ask the question what about these particular

3    documents, we're going to run into those privilege issues

4    anyway.

5            MR. POUNIAN:  In order for your Honor to resolve those

6    privilege issues, why don't we get a list of every document in

7    the FBI files with the third subject's name on it?  Because

8    without that list we don't know what is being withheld from

9    production.

10           On the privilege log itself, we would, as I said

11   before, expect to see the evidence regarding this third main

12   subject, and the evidence is not there.  It's simply not on the

13   log.  So where is it?  It's residing in a file within the FBI,

14   and we subpoenaed it back in April 2018 with a very clear,

15   specific subpoena.  And your Honor, there's no reason to delay

16   this process regarding the third main subject, who is the key

17   person in this jurisdictional discovery dispute, one of the

18   three key people, any longer.

19           We can go and brief other issues later if those issues

20   arise, but this issue is here now, and it is an important one

21   for this Court to resolve, and we believe the Court should do

22   that as soon as possible.

23           MR. CARTER:  Your Honor, could I just say one brief

24   thing, raised by a comment your Honor just made?

25           I want to be clear about what we understand the

JbfWterC

core-documents search to have been.  We had expected, and there
was probably some misunderstanding on this point, but our
expectation was that a core-document search would have included
a comprehensive search of the subfile for documents about
Bayoumi, Thumairy and the third main subject.  That's what we
understood a core document would be.  My present understanding
is that the core-documents search involved agents familiar with
the investigation identifying documents that, in their view,
were of core relevance to the jurisdictional inquiry.

        So, if your Honor's question is whether or not the FBI
conducted a search of the subfile to identify every document
relating to the third main subject and to assess whether those
materials are privileged, I do not believe that that has
happened.  And that's why we're trying to bring the motion now,
because we think anything in the subfile about the third main
subject is of core relevance to the jurisdictional inquiry, and
we need to know if that universe has been assembled and that
there's been an assessment as to whether or not any of those
materials can be released.  That's why we're getting to this
motion, your Honor.

        MS. NORMAND:  I can clarify a few points.

        Mr. Carter is right that the core-records search did
not involve a search for all records about Bayoumi, all records
about Thumairy or all records about the third main subject.
And the reason for that is that would have been an

JbfWterC

extraordinarily burdensome approach, and we don't think we
would have been able to do it in any reasonable time frame.
That's the reason we chose the core-records approach, which we
do think we made clear from the beginning was a subset of
records that we thought, through discussions with the
investigators and a great deal of thought and effort, were of
particular relevance to the specific issues before the Court.

          Those records include records about the third main
subject.  They include what records we believed and information
we believed may have been what the 2012 report was referring to
as evidence.  All of that work has been done.  There has been a
decision by the FBI that the remaining information, including
the 2016 report, including the opening electronic communication
that identifies the predication for the investigation of the
third main subject, all of that is included in the core-records
search and included in either the privilege log or in
redactions.

          But to answer the point about why they can't identify
it on the privilege log, there's a reason for that, and that is
because, as the attorney general and Assistant Director McGarry
stated in the declarations, and I do think for some of these
issues, your Honor, looking at those declarations and the
classified declaration in particular, would provide some very
useful background for the Court in evaluating some of these
issues.  But the categories of information include things like

JbfWterC

 1    the predication for a national security investigation, the

 2    results of that investigation; sources and methods; foreign

 3    government information.

 4            If we were to provide, for example, a detailed list of

 5    every document about the third main subject, that list itself,

 6    possibly because of the volume, but certainly because of the

 7    dates, the types of documents, the sources and methods that

 8    would be revealed by identifying what those documents are,

 9    would include information that falls squarely within the

10    categories of information over which the attorney general has

11    now asserted a state-secrets privilege.

12            So the answer to the question about why isn't it

13    listed on the privilege log is that we can't list on the

14    privilege log information that is itself privileged.  That's a

15    basic principle.  We're not required to do that.

16            If the Court wanted to test the notion that the core

17    records actually do include materials regarding the third main

18    subject, we are happy to provide an *ex parte*, classified

19    submission that will identify which of the core records address

20    that.  But it is simply not accurate that the core records

21    don't include this information.  Mr. Carter is right.  None of

22    the categories of core records include all records about third

23    main subject, Bayoumi, Thumairy, or anyone else, and that's

24    because if we were to do that, we would have been here for

25    years.  It's already taken a year for us to review and make

JbfWterC

1    determinations on the materials that have been produced.

2            And I would like to take a step back and make the

3    point that the FBI has produced an extraordinary amount of

4    material here, material that would not have been available

5    under the Freedom of Information Act, material that would not

6    be available in most cases, and they've done that because of

7    the extraordinary nature of this investigation.  We've produced

8    witness statements.  Witness statements are something that

9    would ordinarily fall squarely within the law-enforcement

10   privilege.  We've produced them here under protective order.

11   We have produced materials that were covered by Federal Rule of

12   Criminal Procedure 16.  We sought an application to have those

13   unsealed.  We've sought to have other records unsealed.

14           We've produced a vast amount of information in this

15   case, and I do believe that the plaintiffs have found a great

16   deal of that information to be very, very helpful to them.

17   This is not a case where the FBI is withholding all the

18   information.  We've produced a great deal of information in

19   what would be called the evidentiary category, but the material

20   that has been withheld has been determined by the FBI to be

21   privileged.  And based on what we know about the attorney

22   general's assertion about the state-secrets privilege as to the

23   2012 report, the materials that have been withheld fall

24   squarely within those categories of privileged information.

25           At the end of the day, the time has come to litigate

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

JbfWterC

1   the documents as a whole.  I mean, there's really no point in

2   talking about the FBI should be releasing the 2016 summary

3   report.  We are saying to you and to the plaintiffs that

4   document's been withheld on privilege grounds.  If they want it

5   and believe they're entitled to it, they should litigate that.

6   We shouldn't be saying, Go back to the well and look for more

7   documents as to the third main subject that are going to be

8   privileged anyway if the FBI's privilege assertions are upheld.

9           THE COURT:  Thank you.

10          MS. NORMAND:  Thank you, your Honor.

11          THE COURT:  All right.  I think I understand the

12  parties' positions.

13          Let me ask one question of Mr. Pounian.

14          If I were to conclude that the best way to proceed is

15  to issue my ruling with respect to the privilege issue that's

16  already fully submitted and then have the parties brief all of

17  these issues in one omnibus motion, as the government is

18  suggesting, I guess I have two procedural questions for you.

19  One is is it your view that that's a motion to compel that's

20  filed by the plaintiffs, or is that a motion for protective

21  order that's filed by the government?  That's question 1.

22          Question 2 is -- and I think we need to review what's

23  on the disk and obviously you need my ruling on the

24  state-secrets privilege -- how soon could you file such a

25  motion?  I do want to have everything, I think, within one

JbfWterC

motion here.  The idea that you're sort of suggesting there may

be several other motions down the road, I think, is an

inefficient way for us to proceed.

When do you think this motion could be filed?

MR. POUNIAN:  If the government is saying its

production is complete now, with the exception of several --

THE COURT:  Sorry.  You need to use the microphone.

MR. POUNIAN:  If the government's saying its

production is complete, I think we'd be prepared to file a

motion in three to four weeks, your Honor.

THE COURT:  OK.  I take it that means motion to

compel?

One inquiry I have is -- and we did this the last

time, where, see if I can get the back-and-forth correct.  I

believe the plaintiffs moved.  The government asserted a

state-secrets privilege.  The plaintiffs then felt like this

was the first time they were hearing it so they needed a

full-blown motion in response, which would ordinarily have been

a shorter motion, which then obligated the FBI to file a bigger

motion or a surreply, and I would like to avoid that, if

possible.  So I'm wondering whether or not it makes more sense

for the government to go in the first instance.

MR. POUNIAN:  It may, your Honor.  It may make sense

in these circumstances.

THE COURT:  I think that may be right.  Maybe the best

JbfWterC

1    way to proceed is to ask the PECs to put in a short letter just

2    to the government what its position is and allow the government

3    to file the motion for protective order and you can respond in

4    full.

5         MS. NORMAND:  Your Honor, typically, if the

6    state-secrets privilege is asserted, it's asserted in response

7    to a motion to compel so the government is aware of exactly

8    what the parameters are of the issues that are in dispute.  We

9    think that was a helpful process the first time around, because

10   the plaintiffs identified in their initial motion what exactly

11   they were seeking, and in fact, as a result of their motion, we

12   actually met and conferred and narrowed a bit further.  So I do

13   think there's a great deal of value in having the plaintiffs

14   move first and identify the issues, particularly when it comes

15   to the core-records search.  We don't know.  It would be

16   helpful for them to identify why they believe, what their

17   concerns are so that we can address them, your Honor, in our

18   motion.  That's a challenge to the FBI's search, and we think

19   it's useful for them to do that first.

20        THE COURT:  OK.  Let me think about how to proceed.

21        MR. POUNIAN:  Your Honor, we could provide a

22   summary -- not a summary, but a list of what we are actually

23   saying the government has not yet produced that the government

24   could then use as the basis for its protective order.

25        THE COURT:  OK.  Let me think about all of this and

JbfWterC

1    decide the best way to proceed and I will give you all some

2    instructions.  And maybe a meet-and-confer on this topic

3    between you all makes sense.

4            I guess that's a nice segue for me just to reiterate a

5    point that the government made.  I do feel like there's been a

6    heightened level of animosity and tension between the FBI, on

7    the one hand, and the PECs, on the other hand.  I'm fully aware

8    of the nature of the relationship and the dispute, but I do

9    feel like over the last few months there has been an increased

10   sort of aggression that's just not productive.  I know

11   everybody here is representing their clients vigorously and

12   everybody has interests, and I think everybody is representing

13   those interests in good faith.  I wanted to just say that

14   because I do feel like we've gotten a little bit heightened.

15           I'll also make reference to the concern that was

16   raised in the letters about some public remarks that have been

17   made by the plaintiffs' executive committee lawyers.  I don't

18   want to get into the back-and-forth of who's right and who's

19   wrong and what's public and what's not, but let's all be paying

20   attention here.  There are all sorts of concerns in this case.

21           I appreciate and I'm always grateful to have the

22   families in the courtroom when you come, and I know all you

23   want are answers.  Everybody in this room is doing their best

24   to get those for you, but there are very intense national

25   security concerns and public safety issues that I think were

JbfWterC

1   you even aware of them all, you would probably be a little bit

2   more sympathetic about some of the concerns that everybody is

3   operating under.  Everybody has your interests in mind and the

4   desire for transparency, but that needs to be balanced with

5   concern for the safety of our country writ large, and I think

6   some of those issues are being animated here.  I just want

7   everybody to be operating, at counsels' table, with heightened

8   sensitivity.

9           I will get back to you all on what we're going to do

10   with respect to that motion.  I will say that my thinking right

11   now from the bench is that I should rule on the state-secrets

12   privilege and then we should have a full motion on whatever

13   outstanding issues are raised, and whether that motion is a

14   motion to compel or whether the PECs identify in some fashion

15   to the government what it is they're seeking and then the

16   government moves for a protective order, I'll think a little

17   bit more about that.

18           Let me just give a heads-up to the government that

19   this issue is going to be teed up and so to the extent you need

20   to start the wheels of government on whatever privileges you

21   think you're going to be asserting, I would be doing that now.

22           MR. POUNIAN:  Your Honor, may I mention one thing?

23           We had asked for oral argument on the state-secrets

24   issue before the Court and also the other motion that's pending

25   before the Court.

JbfWterC

1          THE COURT:  OK.  I'm not sure I'm going to entertain

2     that, but I appreciate your reminding me of your request for

3     that.

4          Let's talk briefly about next steps with respect to

5     the litigation against Saudi Arabia.  I know that there are a

6     number of issues that were raised in the Kingdom's October 28

7     letter regarding the scope of discovery going forward and when

8     we could be wrapping things up.  I also note there are a couple

9     of motions pending still that may affect the scope of discovery

10    and the Kingdom's obligations.  Those need to be resolved

11    before we can move forward.

12         Mr. Pounian, are you going to take the lead on this

13    topic as well, or one of your colleagues?

14         MR. POUNIAN:  I think we both are, your Honor.

15         THE COURT:  OK.  One question is is the gist of your

16    opposition to the Kingdom's letter that it's just too soon to

17    make any determinations about all of this?  And I guess my

18    question for you is when will be the right time?

19         MR. POUNIAN:  When the document discovery is

20    completed, your Honor.

21         THE COURT:  By whom?

22         MR. POUNIAN:  By the FBI and by Saudi Arabia.

23         We also believe we have to file another motion to

24    compel based on the most recent production of Saudi Arabia,

25    which we should be able to do in about two to three weeks also.

JbfWterC

| 1 | THE COURT:  OK.  I've said this before.  At a certain |
|---|---|

1          THE COURT:  OK.  I've said this before.  At a certain

2     point, we've got to close the doors, because we can't just have

3     constant motions to compel.  Every production is going to

4     inspire you for further productions.  Maybe the answer is to

5     start taking depositions and ask some of the questions that

6     you're asking the Court, meaning are there more documents and

7     start that process.

8          You write that you want to take 115 depositions, which

9     is not going to be authorized.  But whatever the number is,

10    it's going to take a lot of time and we need to move into that

11    phase.  I'm concerned about seriatim motions.

12         MR. POUNIAN:  I understand, your Honor, but we don't

13    have control over the documents that are produced, and we have

14    to review them.  It's been a long, laborious process to get

15    them translated, read them, understand them, and to see whether

16    they've actually responded to our requests.  And if the

17    defendants are not responding to our requests, we have to file

18    a motion to compel.  There's no option.

19         If we ask a request and they say they're going to

20    produce something and we get nothing, then there's no option at

21    that point but to file the motion to compel, and those

22    documents, we've proved, have shown that they're critical to

23    conduct the depositions properly.

24         THE COURT:  The filing of motion to compel documents

25    the Kingdom has said they'll produce and then turned around and

JbfWterC

1    did not produce, or is it documents you believe exist and they

2    said we've looked for them and haven't found them?

3              MR. POUNIAN:  We believe they exist.

4              There are also pending motions before your Honor,

5    motions for reconsideration that raise some of the issues that

6    the motion to compel now will raise.

7              THE COURT:  Will you be guided by my decision in those

8    motions?

9              MR. POUNIAN:  Of course, your Honor.  Yes, of course.

10             And with regard to the number of depositions, we have

11   to take a large number of depositions because of the nature of

12   the case, the nature of the circumstantial evidence that we

13   need to assemble to prove our case and the complexity and the

14   fact that it's 20 years ago, and we're trying to determine

15   events that occurred in California and Washington and in Saudi

16   Arabia.  It's a monumental task to assemble all of that, and

17   even though the issue here is one of jurisdiction,

18   quote/unquotes, under the JASTA bill, it goes right to the

19   merits of the case involving liability, causation, and the

20   issue of agency, which is at the center, as Judge Daniels

21   pointed out in his opinion.

22             So, it is a monumental task that we have to conduct

23   the depositions, and we want to be in the position to do that

24   with the documents that we believe should be produced to us in

25   the case.  When we went ahead with depositions back in June, we

JbfWterC

1    then got documents in September and October that we should have

2    had at the time we took the depositions in June.  So we kind of

3    got burnt on that occasion.  We don't want to get burnt again,

4    and we want to just do the depositions once and not have to do

5    them multiple times.

6              THE COURT:  I think everybody wants you to do them

7    once.

8              I've said this before.  This case is obviously unique

9    and special, and so in some ways -- all of the history of civil

10   litigation is different -- and this case is different.  This

11   case should be treated in a special way.  That said, it is

12   litigation and you take depositions without all of the

13   documents and you take depositions without a perfect sense of

14   what you're going to learn during that deposition.  A

15   deposition is just another fact-finding method, and so I

16   appreciate the monumental task.  I really do.  I'm deeply

17   involved in this case, and I realize the task that is presented

18   to you, but it may be that you have to take a deposition

19   without knowing everything, and that's just the way litigation

20   goes.  At a certain point you will take a deposition and you

21   will feel like you don't have everything you want and you'll do

22   fine.  Right?  And so we need to figure out when we can decide

23   it's time to move on.

24             MR. POUNIAN:  I believe, your Honor, that we need the

25   documents to resolve the issue concerning the documents

JbfWterC

1    regarding the third man before we can properly conduct the

2    depositions and know that we have evidence in hand or know that

3    we can't get that evidence before we can go ahead and conduct

4    the depositions.

5         THE COURT:  I assume some of that evidence will affect

6    your selection of depositions, but some won't.  Right?  I would

7    like you and the Kingdom to be having conversations now about

8    people you know you're going to want to depose.  And it may be

9    that there are certain people you can depose because they have

10   a particular category of information and you can start getting

11   some either foundational information or other background

12   information that's critical.  You should be having those

13   conversations.

14         MR. POUNIAN:  Yes, your Honor.

15         We do have two pending depositions right now, one of

16   Mr. Alzamari and the other one in Sweden from Mr. Abdullah.

17   There are two pending depositions that we have noticed, and we

18   are prepared to notice additional depositions but have been

19   waiting to get the documents.  But your Honor is certainly

20   correct that we can proceed in some limited fashion with

21   depositions, and we are, with the witnesses that we can locate

22   and who are not related to other evidence in the case.

23         THE COURT:  OK.  Also, things like deposition location

24   seems to me an issue that can be discussed now.

25         Yes.

JbfWterC

```
 1              MR. RAPAWY:  If I may, your Honor?

 2              I do want to say that I think it's going to be very

 3    difficult for the parties to have constructive meet-and-confer

 4    discussions about depositions if we are still so far apart on

 5    the question of the number of depositions, because you said 115

 6    wouldn't be authorized.  I'm glad to hear that.  They clearly

 7    don't agree that ten, which we've proposed, is appropriate.  So

 8    if we start taking, without an idea of what the limit is -- a

 9    limit of either the number or the amount of time -- then there

10    is not much of an incentive to focus on the depositions which

11    are most important to the case, which is the purpose that a

12    deposition cap usually serves.

13              I completely believe the plaintiffs are zealously

14    representing their clients in this matter, but we're just

15    really far apart in terms of what deposition discovery is going

16    to look like and who is appropriate -- you saw the witness

17    list, who's is appropriate to depose and how long this is going

18    to go on for.

19              Also, your Honor's aware of our position on whether

20    the entire process should await the conclusion of the FBI

21    production.  We vigorously disagree with that, and we've said

22    in our papers there are instances in which I believe your Honor

23    has expressed a view that's consistent with ours.  We do want

24    to get things started moving, but I think some guidance from

25    the Court would be helpful about numbers and about deadlines to
```

JbfWterC

1    focus those discussions on something that's going to have a

2    concrete result in the near future and will actually move the

3    case toward completion.

4              THE COURT:  I agree.

5              I think what I'm going to do, and I'm not prepared to

6    give you that information now, but I think I'm probably going

7    to issue an order soon and ask to get a little bit more

8    information from the parties about what they are currently

9    thinking.  This will be, in part, the way we develop the other

10   deposition protocol, in a way that I've operated in other

11   complex litigations, and that's to ask the parties to think in

12   a little bit more detail about the categories of information

13   they're seeking to explore and who they believe the appropriate

14   witnesses are for that area, and then we can look and see.

15             I'm just inclined to pull a number out of thin air,

16   but I'd like to explore exactly what works.  I'd like to have a

17   better sense of the topics that we're looking for.  I think

18   probably what I'm going to do is issue an order in the next

19   couple of days asking for some letters from the parties on

20   these particular issues.

21             MR. RAPAWY:  Thank you, your Honor.

22             THE COURT:  I think that is it with respect to the

23   substantive things.  I just want to mention a few other

24   housekeeping matters.

25             The first is with respect to letter briefs.  It's like

JbfWterC

1    you've gone off the rails about what is permissible and what is

2    not permissible.  A party may file a five-page letter motion.

3    The opposing party may file a five-page response within three

4    business days, and the moving party may file a three-page reply

5    brief within two business days of the opposition.  That is it.

6    I don't want surreplies.  I don't want ten-page reply briefs.

7            Five-page letter motion, five-page opposition letter

8    motion and a three-page reply letter motion, and that's all.

9            Secondly, just as a heads-up, we have a standing

10   protocol about how documents are supposed to be filed on the

11   court docket that are subject to the FBI protective order,

12   which involves filing documents under seal, submitting proposed

13   redactions to the FBI, having the FBI get back to the party

14   seeking permission to file and then filing the document

15   redacted on the court docket.  And I feel like that last part

16   is not happening.

17           I believe we have had a fair number of motions that

18   have been filed under seal and the redacted version has not

19   been filed on the public docket.  We'll probably issue an order

20   in the next day or two on this issue, but I need everybody to

21   go back and look and see what they have done on this topic.  To

22   the extent the logjam is the FBI getting back to the parties,

23   I'll ask you to be more timely on that.  To the extent the FBI

24   is getting back -- that's OK.

25           To the extent the FBI is getting back in a timely way

JbfWterC

1   and then the moving party is failing to actually file the

2   redacted version on the docket, please pay more attention.

3   We're going to go look at our files, but it's our sense that

4   there is a fair number of documents that should be on the

5   public docket that are not.

6            I think that addresses everything.  We'll get a couple

7   of orders out.

8            Does anyone have anything else they want to raise

9   before we adjourn?

10           MR. RAPAWY:  On that last point, your Honor,

11   procedurally, I thought we needed an order from the Court

12   authorizing the filing of the redacted documents before we

13   could go ahead and file the redacted documents.  Am I wrong

14   about that?

15           THE COURT:  I think you are, but I will also go back

16   and check.  I believe the FBI protective order governs the

17   protocol and that it authorizes the filing both of the

18   under-seal document and the filing of the redacted document on

19   the docket sheet once it's been approved by the FBI.

20           MR. RAPAWY:  OK.  That may be the cause of some delay

21   then.  But the MDL protective order, we need an order from the

22   Court approving redactions.

23           THE COURT:  Yes.  We have a separate protocol as to

24   these documents that are governed by the FBI protective order

25   because of the nature of that production and the government's

JbfWterC

1    involvement.

2                    MR. RAPAWY:  I apologize for any confusion on that

3    point, your Honor.

4                    THE COURT:  That's all right.

5                    MR. POUNIAN:  I have one question on that same issue.

6                    We've noticed, and I'm not sure we're correct or not,

7    that some parties are not filing their under-seal papers with

8    the clerk.  I assume that's required in every instance, and we

9    want to make sure that the record is preserved with the clerk.

10                   THE COURT:  As do we.

11                   Yes.  To the extent that anyone's filing documents

12   that they are emailing, that's protected, and emails to

13   chambers need to be filed under seal.  To the extent it's a

14   document that's being filed under seal because it discloses

15   information governed by the FBI protective order, you already

16   have permission to file it under seal.  I believe the MDL

17   protective order does not give that blanket permission and you

18   need to seek leave from the Court in order to do so.  But yes,

19   we want to make sure that we have a full record, including

20   documents that are being filed under seal.

21                   MR. POUNIAN:  To the extent that it's not been done in

22   the past, I would ask that your Honor include within your order

23   that the parties that have not filed documents under seal, that

24   they come up to date and do that so that the record can be

25   completed.

JbfWterC

1        MS. NORMAND:  I'll just add that our understanding was

2   that the sealed materials that are reflected on the docket as

3   being placed in the vault were the materials that were being

4   submitted by email, so that was our misunderstanding.  We will

5   certainly go back and compile everything that's been submitted

6   under seal and make an under-seal submission.  And in the

7   future we will make those separate filings.

8        We apologize for that.

9        THE COURT:  We want to make sure that the vault

10  reflects everything that was filed and that the public record

11  reflects everything that was filed.  Some of those documents

12  are going to be redacted, but we should be working to limit

13  those, obviously, as best we can.  But everything needs to be

14  in both categories: in the vault and under seal.

15       MR. RAPAWY:  I'm sorry, your Honor.

16       Your individual practices have a passage about the

17  separate set of clean pages that are to be attached.  I thought

18  that was the one that went to the vault.  Again, maybe I was

19  mistaken about that.

20       THE COURT:  We'll go back and issue an order so we can

21  get everybody on the same page.  I don't want to speak about it

22  and confuse the matter more.  I believe the FBI order has

23  separate protocols that everybody's operating under, but we

24  will issue an order about sealing to make sure that everybody's

25  on the same page, and we'll reiterate that to the extent

JbfWterC

```
 1    anybody hasn't filed in both places, they need to do so.  OK?
 2              I have something unusual as well.  My law clerk Dan is
 3    leaving.  He's been working on this case for the last 14
 4    months, and he has been a huge help in keeping this case
 5    running.  We have another person coming in, and I'm sure he'll
 6    be close to just as good.  But Dan's been really terrific
 7    working on this case, so I wanted to say a public thank you to
 8    Dan for all of the work that he has done.
 9              MR. RAPAWY:  Thank you.
10              THE COURT:  Thank you.
11              (Applause)
12              THE COURT:  We're adjourned.
13              (Adjourned)
14
15
16
17
18
19
20
21
22
23
24
25
```