

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street, 3rd floor*
*New York, New York 10007*

April 13, 2020

<u>By Electronic Mail</u>

MDL 1570 Plaintiffs' Executive Committees
Attn: Sean P. Carter
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103

    Re: *In re Terrorist Attacks*, 03 MDL 1570 (GBD) (SN)
       Final Response to Touhy Request for Documents and
       Objections to Subpoena

Dear Mr. Carter:

   This letter provides a final response to the request of the MDL 1570 Plaintiffs' Executive Committees ("PECs") dated April 6, 2018 ("Request"), seeking production of records and information from the Federal Bureau of Investigation ("FBI") in connection with the above-referenced multidistrict litigation, pursuant to 28 C.F.R. §§ 16.21-16.29. In accordance with Fed. R. Civ. P. 45(d)(2)(B), this letter also supplements the FBI's objections to the subpoena you served on the FBI on April 10, 2018 ("Subpoena"), seeking the same records and information.[1]

   As set forth in the Interim Response, the Request and Subpoena seek ten categories of records and information from the FBI, including "any and all records" regarding the Subfile Investigation, as well as "any and all records" and "any and all PENTTBOM records," regarding specific individuals or entities that either are subjects or the PECs believe may be subjects of investigations (subcategories a, b, d, f, g). The Request and Subpoena also seek records that the PECs know to be classified, including classified portions of the 2012 Report (subcategory e), the Joint FBI-CIA Intelligence Report (subcategory h), and the DOJ-OIG Report (subcategory j).

   The Interim Response explained that DOJ's Touhy regulations govern the response to the Request and Subpoena. Those regulations identify several factors that the responsible DOJ

---

   [1] Each and every objection set forth in the May 2, 2018 interim response to the Request and Subpoena ("Interim Response") is expressly incorporated in this final response, even if it is not specifically reiterated herein.

*In re Terrorist Attacks*, 03 MDL 1570
Final Response to Touhy Request to FBI
Page 2

official must consider in deciding whether to authorize disclosures in response to a request or subpoena.  Those factors are discussed in turn below.

1.  *Relevance of the Requested Documents and Information and Whether Disclosure Is Appropriate Under the Rules of Procedure Governing the Case*

"In deciding whether to make disclosures in response to a demand, Department officials and attorneys should consider . . . [w]hether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose."  28 C.F.R. § 16.26(a)(1).

a.  *Relevance and Proportionality*

The Request on its face extends well beyond the "limited and targeted jurisdictional discovery" on the discrete issue contemplated by the MDL Court's March 28, 2018 order, *see* ECF No. 3946 ("March 28 Order"), namely, "whether and to what extent [Fahad al] Thumairy [("Thumairy")], [Omar al] Bayoumi [("Bayoumi")], and their agents took actions in 2000, at the direction of more senior Saudi officials, to provide assistance to [Nawaf al] Hazmi [("Hazmi")], [Khalid al] Mihdhar [("Mihdhar")], and other 9/11 hijackers."[2]  The FBI repeatedly asked that the PECs narrow the Request and Subpoena to records pertaining to the specific allegations on which Judge Daniels and Magistrate Judge Netburn have permitted limited and targeted jurisdictional discovery, but the PECs consistently declined to do so.

As explained further in Section 2, *infra*, the FBI has asserted the law enforcement privilege with respect to the compilations of all records related to the Subfile Investigation, Bayoumi, Thumairy, the individual referenced as the "third main subject" referenced in the 2012 Report, and Mohdar Abdullah ("Mohdar").  Furthermore, the FBI could not fully respond to subcategory (f) of the Request without implicating information subject to the state secrets privilege.  And the FBI could not reveal the volume of records responsive to the subcategories seeking documents pertaining to Omar Abdi Mohammed, Khalid Sowailem, the King Fahd Mosque, or the Western Somali Relief Agency (or any other individual who has not been acknowledged to be the subject of a national security investigation) without revealing information subject to the state secrets privilege.  Thus, the FBI could not respond to those subcategories of the Request that sought "any and all records" regarding the Subfile or various individuals or entities as propounded.

Although the PECs refused to narrow the Request, in recognition of the unique importance of the underlying litigation regarding the September 11 terrorist attacks, the FBI agreed to search for and conduct declassification reviews of a subset of records that may be of particular relevance to the jurisdictional inquiry authorized by the Court, a process that has been called the "core records" approach.  Processing a subset of documents from the Subfile

---

[2] Judge Daniels rejected plaintiffs' request to take jurisdictional discovery with respect to Omar Abdi Mohamed, whom plaintiffs alleged "established a charity organization in San Diego called the Western Somali Relief Agency . . . to serve as a fundraising front for al Qaida." March 28 Order at 28, 30-31.

*In re Terrorist Attacks*, 03 MDL 1570
Final Response to Touhy Request to FBI
Page 3

Investigation, or documents pertaining to Bayoumi, Thumairy, Mohdar, or the third main subject, does not raise the same privilege concerns as producing or even describing the entire universe of records in the FBI's possession relating to those individuals or the Subfile Investigation.

Even this more limited undertaking has proven to be a difficult enterprise—over the better part of two years, the FBI expended thousands of hours to locate and process the core records. The FBI now has produced to the PECs in whole or in part more than 4,000 pages of records subject to the FBI Protective Order.[3] In addition, the FBI has withheld in full 21 records (or, in one case, a group of "classified record(s)") in their entirety because they contain confidential human source reporting, foreign government information, sensitive sources or methods, or other classified and/or privileged information. The core records approach enabled the FBI to respond to items in the Request and Subpoena that, as propounded, called for the production of privileged information.

The initial set of core records included interview reports, the 2012 Report and other reports of an analytical nature, the Joint FBI-CIA Intelligence Report, portions of the DOJ-OIG Report████████████████ and phone and bank records ████████████████ Subsequently, between October 2018 and March 2020, in response to numerous specific requests from the PECs, the FBI conducted multiple supplemental searches and identified additional documents for review and processing. The FBI also took the unusual step of asking foreign governments to authorize the release of records and information subject to the FBI Protective Order. In addition, DOJ filed petitions in four district courts seeking disclosure of communications and financial and banking records obtained via grand jury subpoena. At the PECs' request, DOJ also sought unsealing of a████████████████████████ ████████████████ filed under seal in the Southern District of California and obtained archived trial records from another case in that district. As for the request for an unredacted copy of the September 1, 2005 letter from Robert Mueller and Porter Goss to Senator Pat Roberts, a search was conducted by the office within the FBI's Information Management Division that maintains copies of the FBI Director's correspondence, and current and former FBI employees involved in the drafting of the Joint FBI-CIA Intelligence Report and in the Office of Congressional Affairs were asked to search for a copy of the letter; despite these efforts, the FBI could not locate an unredacted copy of the letter.

Certain additional records requested by the PECs that have been located recently will be processed.[4] In addition, the FBI has undertaken to determine whether all interview reports in the



---

[3] A detailed chronology of the FBI's core records approach and productions is provided in the Fourth Declaration of Sarah S. Normand, which is being filed with the Court today in support of the FBI's motion for a protective order and opposition to the PECs' motions to compel production of records responsive to the Request and Subpoena.

[4] The FBI's ability to process these additional core records has been constrained by the COVID-19 public health emergency, and will be completed when normal operations resume.

*In re Terrorist Attacks*, 03 MDL 1570
Final Response to Touhy Request to FBI
Page 4

Subfile Investigation that contain substantive information concerning Bayoumi, Thumairy, the third main subject ███████ have been processed and produced, to the extent that can be done without disclosing privileged information.  To the extent any such interview reports have not been processed, they will be.

    The FBI continues to object to the Request and Subpoena to the extent they seek records and information that are not relevant or proportional to the needs of the case, and that exceed the limited scope of discovery authorized in the March 2018 Order.  *See* 28 C.F.R. § 16.26(a)(1); Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 45(d)(3)(A)(iv); *cf. People of State of Cal. v. Reyes*, 816 F. Supp. 619, 622 (E.D. Cal. 1992) (statement that testimony sought was "necessary to help prove the innocence of defendant" not specific enough to comply with 28 C.F.R. § 16.23(c)).

    b.   *Undue Burden*

    As the FBI has consistently maintained since the Interim Response, requiring the FBI—a non-party—to respond to the extraordinarily broad requests for "any and all records" relating or referring to particular categories of information (subcategories a, b, d, f, and g) would impose an undue burden, particularly because of the large volume of classified and privileged material contained in the potentially responsive records.  *See Agility Public Warehousing Co., K.S.C.P. v. U.S. Dep't of Defense,* 246 F. Supp. 3d 34, 48 (D.D.C. 2017) (in responding to Touhy request, government entitled to consider burden requested discovery would place on agency).

    The complexity of searching for items from the PENTTBOM investigation underscores the enormity of the burden if the FBI were to search for and process all the requested records.  Due to the extraordinary nature of the 9/11 attacks, virtually every FBI field office in the United States and every overseas FBI Legal Attaché Office was involved in the PENTTBOM investigation and maintained its own hard copy PENTTBOM investigative file.  The FBI has spent considerable time and effort searching for documents and things that are not stored electronically, coordinating those efforts with FBI personnel in various field offices and record storage facilities.  The FBI will not undertake this process for "[a]ny and all records referring or relating" to various individuals or entities, and for any and all Subfile records, as this would present an extreme burden on FBI officials with wide-ranging investigative and operational duties and responsibilities.

    Such extraordinary burdens are especially unwarranted here, because they vastly outweigh the likely benefits of further discovery.  In selecting materials for inclusion within the core records, the FBI prioritized evidentiary materials, as it was more likely such documents could be released, over analytical materials, which more often raise privilege concerns.  Searches for and processing of all potentially responsive records will yield a large volume of classified and privileged materials, the vast majority of which likely will not be subject to release.  The burden of all of the time and effort that additional searching and processing of these records would consume outweighs any possible limited additional benefit to the PECs.

*In re Terrorist Attacks*, 03 MDL 1570
Final Response to Touhy Request to FBI
Page 5

  For all these reasons, the FBI continues to object to the Request and Subpoena as overbroad, vague, ambiguous, and unduly burdensome.  28 C.F.R. § 16.26(a)(1); Fed. R. Civ. P. 45(d)(3)(A)(iv).

  2. *Whether Disclosure Is Appropriate Under the*
    *Relevant Substantive Law Concerning Privilege*

  "In deciding whether to make disclosures pursuant to a demand, Department officials and attorneys [also] should consider . . . [w]hether such disclosure is appropriate under the relevant substantive law concerning privilege."  28 C.F.R. § 16.26(a)(2).  The Request seeks disclosure of a substantial volume of information that is protected from disclosure by one or more privileges, including the state secrets privilege, the National Security Act, the law enforcement privilege, the work product doctrine, and the deliberative process privilege.

  a. *State Secrets Privilege and National Security Act*

  The FBI cannot respond fully to the Request without revealing information that could reasonably be expected to cause significant harm to the national security.  For certain subcategories of the Request, the FBI cannot even acknowledge the volume, subjects, or dates of such records, without revealing information that is privileged.  And for documents that were included within the core records but withheld in full or in part on the basis of the state secrets privilege, the FBI properly withheld that privileged information.  The Attorney General of the United States and the Acting Director of National Intelligence ("DNI"), after actual and personal consideration, have asserted the state secrets privilege to protect the classified information sought by the PECs.  Assistant Director Jill Sanborn of the FBI's Counterterrorism Division and the Acting DNI have also invoked the National Security Act of 1947, as amended, 50 U.S.C. § 3001 *et seq.*, to protect this information.

  A formal claim of the state secrets privilege with respect to the FBI's information has been asserted by the Attorney General based upon his personal consideration of the matter.  As to information within the core records that belongs to other members of the Intelligence Community, the Acting DNI has likewise made a formal claim of privilege upon personal consideration.  *See United States v. Reynolds*, 345 U.S. 1, 7-8 (1953) (privilege must be lodged by the head of the department which has control over the matter, after actual personal consideration of the matter by that officer).

  The Attorney General has asserted the state secrets privilege over four overlapping categories of classified information: (i) subject information; (ii) reasons for investigation and results; (iii) sources and methods; and (iv) foreign government information and information sharing and cooperation with foreign partners.  The Attorney General has determined, after actual and personal consideration, that disclosure of these categories of information reasonably could be expected to cause significant harm to the national security.  *See also* 28 C.F.R. § 16.26(b)(1), (3) and (4) (DOJ Touhy regulations prohibiting disclosure that "would violate a statute," "would reveal classified information [ ] unless appropriately declassified by the

In re Terrorist Attacks, 03 MDL 1570
Final Response to Touhy Request to FBI
Page 6

originating agency," or "would reveal a confidential source or informant, unless the investigative agency and the source or informant have no objection").

The FBI is not able to produce records that would identify whether or not certain individuals are or were the subjects of national security investigations because such information is encompassed by the Attorney General's assertion of the state secrets privilege. For that reason, the FBI cannot respond to subcategory (f) of the Request to the extent it seeks records related to any individual other than Bayoumi, Thumairy, or the third main subject. Whether or not there are additional subjects of the Subfile Investigation is information encompassed by the Attorney General's assertion of the state secrets privilege. In addition, the FBI is not able to provide a privilege log of all Subfile documents, because a comprehensive listing of all Subfile document is encompassed within the Attorney General's assertion of the state secrets privilege.

The Request further seeks all records pertaining to Omar Abdi Mohammed, Khalid Sowailem, the King Fahd Mosque, or the Western Somali Relief Agency. Yet the FBI cannot identify the volume of records it possesses regarding these individuals or entities without suggesting whether or not they are subjects of national security investigations. Accordingly, the volume of responsive records is likewise information that is subject to the state secrets privilege. Moreover, a privilege log, in addition to revealing the volume, would necessarily reveal other information protected by the state secrets privilege.

Acting DNI Grenell has similarly asserted the state secrets privilege over "highly sensitive and classified" information concerning intelligence activities, sources and methods; foreign government information; and information concerning foreign activities and foreign relations of the United States. The Government has therefore established that there is "a reasonable danger" that disclosure of the information over which the privilege is asserted could be detrimental to national security. *Reynolds*, 345 U.S. at 9-10.

      b.   *Law Enforcement Privilege*

The FBI has properly invoked the law enforcement privilege to protect information (both classified and unclassified) within the core records, based on personal review of the documents at issue by Assistant Director Sanborn and former Assistant Director Michael C. McGarrity. The information the PECs seek pertains to ongoing national security investigations. In addition to the information encompassed by the Attorney General's assertion of the state secrets privilege, the law enforcement privilege extends to information redacted from the core records produced to the parties which would reveal the FBI's investigative interest in certain individuals, specific law enforcement methods and techniques used in the FBI's national security investigations, specific information obtained, or gaps in information, relating to the investigations, the FBI's opinions and conclusions about certain witnesses and evidence gathered in the investigations, personal information regarding third parties which if revealed would discourage cooperation, and information which would indirectly tend to reveal confidential cooperation from a foreign government. *See, e.g.*, *In re City of New York*, 607 F.3d 923, 944 (2d Cir. 2010); *see also* 28 C.F.R. § 16.26(b)(5) (DOJ Touhy regulation prohibiting disclosure that "would reveal investigatory records compiled for law enforcement purposes, and would interfere with

*In re Terrorist Attacks*, 03 MDL 1570
Final Response to Touhy Request to FBI
Page 7

enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired").

Among other things, the FBI has asserted the law enforcement privilege with respect to the compilations of all records related to the Subfile Investigation, Bayoumi, Thumairy, the third main subject, and Mohdar. The universe of such records, when viewed collectively, would provide a roadmap to subjects and other interested parties as to how the FBI conducted particular national security investigations. The record compilations would reveal privileged information, such as what the FBI knows and does not know about the subjects of the investigation, which witnesses the FBI did or did not interview, what types of leads the FBI followed and which it did not, how the FBI analyzes evidence, and the conclusions the FBI reached as a result of its investigation.

       c.    *Deliberative Process Privilege*

In addition to the state secrets and law enforcement privileges, certain documents are protected in full or in part by the deliberative process privilege. The deliberative process privilege protects internal agency documents that are "(1) predecisional, *i.e.*, prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.*, actually . . . related to the process by which policies are formulated." *Brennan Ctr. for Justice at New York Univ. School of Law v. DOJ*, 697 F.3d 184, 194 (2d Cir. 2012). The documents or portions of documents withheld pursuant to the deliberative process privilege are predecisional and deliberative because they were prepared as part of the consultative and deliberative process of determining the next steps in an investigation, prior to any final investigative or prosecutorial decision.

       d.    *Work Product Doctrine*

Certain information was also withheld from the core records because it constitutes work product protected from disclosure under Federal Rule of Civil Procedure 26(b)(3). The information was prepared in anticipation of litigation by a party or its representative, namely, agents of the FBI working in consultation with federal prosecutors regarding an investigation that could result in a criminal prosecution.

\* \* \* \* \* \* \* \* \* \*

For all of these reasons, the Touhy request is denied to the extent it seeks privileged information withheld from the core records and seeks "any and all records" concerning the Subfile Investigation or specific individuals or entities. The FBI continues to object to the Request to the extent it seeks privileged documents or information, including but not limited to documents or information protected by the state secrets, law enforcement, deliberative process, and work product privileges. 28 C.F.R. § 16.26(a)(2); Fed. R. Civ. P. 45(d)(3)(A)(iii). The FBI reserves the right to assert any and all privileges or other protections that may be applicable to records that are still being processed.

*In re Terrorist Attacks*, 03 MDL 1570
Final Response to Touhy Request to FBI
Page 8

      3.    *Protected Information Under the Touhy Regulations*

      DOJ's Touhy regulations provide that "disclosure will not be made by any Department official" if it would reveal certain categories of protected information set forth in 28 C.F.R. § 16.26(b). The majority of the information withheld from the core records is currently and properly classified, and thus its disclosure is prohibited under subsection 16.26(b)(3), which prohibits the disclosure of classified information unless appropriately declassified by the originating agency. As noted above and in the Interim Response, certain information is also prohibited from disclosure by other subsections of section 16.26(b), including subsections 16.26(b)(1) and (b)(2), which prohibit disclosure of information where the disclosure would violate a statute, rule of procedure or specific regulation. Moreover, as set forth in in the Interim Response, the considerations listed in 28 C.F.R. § 16.26 are not exhaustive. *See* 28 C.F.R. § 16.26(b). The Touhy request is denied to the extent it seeks information that falls into one or more of the subsections of section 16.26. The FBI reserves the right to assert any and all privileges or other protections that may be applicable to records that are still being processed.

*Conclusion*

      The FBI has searched for and produced the non-privileged portions of the 2012 Report and the Joint FBI-CIA Intelligence Report requested in subcategories (e) and (h) of the Request. The FBI denies the Request for any classified, privileged, or protected information that has been withheld from those documents. The FBI has searched for and processed the portions of the DOJ-OIG Report referenced in subcategory (j) of the Request that pertain to the issues for which the Court has permitted jurisdictional discovery, as well as the table of contents for that document. As that is a lengthy document that contains a great deal of classified and privileged information, and as the vast majority of that document does not concern issues related to the jurisdictional discovery in this case, the FBI denies the Request for the remainder of this document. Further, the FBI denies the Request for any classified, privileged, or protected information that has been withheld from the portions of the document that have been processed. The FBI conducted a reasonable search for, and was unable to locate, an unredacted copy of the document referenced in subcategory (i) of the Request. The FBI has searched for and produced records responsive to subcategory (c) of the Request. At the PECs' request, the FBI conducted additional searches to attempt to locate any other potentially responsive records; to the extent these searches uncovered any additional records, those records will be processed as part of the set of records located recently.

      To the extent the Request seeks "any and all records" regarding the Subfile Investigation (subcategory (d)), or specific individuals or entities (subcategories (a), (b), or (g)), or records regarding any potential "subject" of the Subfile Investigation other than Bayoumi, Thumairy, or the "third main subject" referenced in the 2012 report (subcategory (f)), the Request is denied. The FBI could not respond to subcategories (a), (b), (d), (f) and (g) of the Touhy request as propounded without thereby revealing privileged information. Moreover, responding to these subcategories of the Request as propounded would have imposed an undue burden on the FBI because of the complexity of the searches required and the need to review documents from pending national security investigations carefully to identify classification and privilege issues.

*In re Terrorist Attacks*, 03 MDL 1570
Final Response to Touhy Request to FBI
Page 9

In light of these concerns, the FBI determined that it could not respond to the Request as propounded. The FBI has determined, however, that it could search for and process a subset of the responsive records in its possession of particular pertinence to the issue of whether and to what extent Thumairy, Bayoumi, and their agents took actions in 2000, at the direction of more senior Saudi officials, to provide assistance to the 9/11 hijackers. This core record approach was designed to strike a reasonable and appropriate balance between the FBI's interests related to its law enforcement and counterterrorism mission and the PECs' interests in jurisdictional discovery.

The FBI has expended thousands of hours searching for and processing the core records and it will devote still more time processing the additional core records. This work has involved a substantial commitment of time from individuals whose primary duties are investigative and operational. As of the date of this letter, the FBI has processed more than 4,000 pages of records pursuant to its core record approach, and has committed to searching for and processing a limited set of additional materials.

The core records approach enabled the FBI to contend with the extraordinarily broad requests that exceeded the scope of the jurisdictional inquiry authorized by the Court in the underlying litigation and on their face called for the production of classified and privileged information that is not subject to release pursuant to DOJ Touhy regulations or in civil discovery pursuant to the Federal Rules of Civil Procedure. The core records that were identified, and the additional materials called for by the Request, implicate substantial privilege concerns, which further warrant the scope of response described here.

Finally, to the extent the Request seeks classified, privileged, and otherwise protected information that has been withheld from the core records or the records remaining to be processed, the Request is denied.

In closing, we note that the Touhy regulations are not intended to, and do not, create any right or benefit, substantive or procedural, against the United States, and that the FBI reserves its rights under 28 C.F.R. §§ 16.21-16.29.

Very truly yours,

GEOFFREY S. BERMAN
United States Attorney

cc:   Robert T. Haefele, Motley Rice LLC
      James P. Kreindler, Kreindler & Kreindler
      Jerry S. Goldman, Anderson Kill, P.C.