# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

**VIA ECF**

June 18, 2020

The Honorable George B. Daniels
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY  10007

      RE:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Daniels:

The Plaintiffs' Executive Committees ("PECs"), for the plaintiffs in the *Burnett*, *Federal*, *O'Neill*, and *Continental* cases, propose consolidated and coordinated proceedings as to the Republic of Sudan (Sudan) in those cases. Plaintiffs in those cases have agreed on a proposed Consolidated Amended Complaint ("CAC") as to Sudan, which would allow for consolidated and coordinated proceedings as to Sudan in those cases. If the Court authorizes the plaintiffs in those cases to file a CAC and Sudan's counsel consents to accept service of that pleading, plaintiffs in the *Burnett* and *Federal* cases are willing to consent to entry of an Order relieving Sudan from the defaults entered against it in those cases.[1]

As discussed below, the proposed filing of the CAC is appropriate and necessary under governing legal standards and the Case Management Orders governing the consolidated, coordinated management of this MDL; will promote the efficient conduct of proceedings as to Sudan; will avoid motion practice as to Sudan's default status in several of the cases, and is especially appropriate given Sudan's failure to appear for more than 15 years following service in several of the cases.

1. <u>Procedural Background</u>

Initially, plaintiffs note the extraordinary procedural circumstances in which this proposal is being offered. Sudan was named as a defendant in *Burnett*, *Federal, O'Neill* and *Continental* via complaints filed between 2002 and 2005, and in 2018, and was properly served via diplomatic channels in *Federal* and *Burnett* in 2004 and in *O'Neill* in 2005 and 2019 respectively. The Clerk of Court entered Certificates of Default against Sudan in *Burnett* and *Federal* on March 15, 2012 and September 9, 2005, respectively, and Sudan still has not appeared in those cases or in *Continental*.

Most obviously, plaintiffs have no obligation to offer proposals to relieve Sudan from the defaults entered against it, but they are doing so here in deference to the goals underlying the establishment of this MDL and provisions of the Case Management Orders, including inter alia, coordination to

---

[1] Counsel for plaintiffs in the *Ashton* case have indicated that they will separately address a similar issue in *Ashton*. Plaintiffs' proposal to Sudan included language that would have preserved Sudan's right to argue that amendments asserting particular bases of jurisdiction or legal theories had to be submitted within a set time period, without waiver of plaintiffs' rights to argue that all such amendments are timely and proper. The correspondence between the PECs and counsel for Sudan is attached hereto as Exhibits 1 to 9.

The Honorable George B. Daniels
June 18, 2020
Page 2

promote judicial economy and to avoid duplicative efforts. *See* ECF # 1 (Transfer Order, finding centralization is necessary to "conserve the resources of the parties, their counsel and the judiciary"); ECF No. 248 (CMO # 3 at ¶¶ 3, 9, 10, requiring the PECs to coordinate for all plaintiffs to the extent practicable to promote judicial economy and to avoid duplicative effort).

Although Sudan still has not taken any action in *Burnett, Federal* and *Continental*, counsel for Sudan did enter a limited appearance in the *O'Neill* actions, and Sudan filed a Motion to Dismiss claims against it in *O'Neill*. The named plaintiffs in the *O'Neill* cases had filed a putative class action against Sudan on March 10, 2004 (04-cv-1922), and filed a new putative class action Complaint (18-cv-12114) on December 21, 2018, which incorporated by reference the allegations against Sudan from the earlier action. Sudan's pending motion is directed solely at the two Complaints in the *O'Neill* cases.

Very shortly after Sudan moved to dismiss in *O'Neill*, the PECs contacted Sudan's counsel regarding the pending claims and defaults entered against Sudan in several of the other MDL cases. Given the coordination principles undergirding the MDL and the Case Management Orders, the PECs proposed to coordinate the proceedings against Sudan, including parameters under which plaintiffs would consent to an Order relieving Sudan of defaults entered in several of the cases. Unfortunately, Sudan has unreasonably refused to consent to the filing of a CAC in the *Burnett, Federal, O'Neill* and *Continental* cases, resulting in an impasse. Sudan's resistance is inconsistent with governing law, ignores the consequences of its own failure to appear for more than 15 years, and merely reflects a desperate effort to avoid damning evidence released since plaintiffs filed the underlying Complaints.

2. <u>Amendment of the Complaints is Appropriate and Necessary</u>

The approach that the PECs propose on behalf of the plaintiffs in the *Burnett*, *Federal*, *O'Neill*, and *Continental* cases is appropriate and necessary for at least the following five reasons.

**First, Sudan's opposition to amendment ignores the realities and consequences of Sudan's own deliberate decision to ignore this litigation for over fifteen years.** Plaintiffs refrained from amending against Sudan specifically because Sudan had failed to appear and, in several of the cases, because Sudan was in default. Given those circumstances, there was no need or reason for plaintiffs to amend the complaints against Sudan, and considerable reason for them to refrain from doing so. In this regard, the filing of an amended pleading as to Sudan (or other of the many defaulted defendants) would have presented the risk of reopening and restarting the litigation against defaulted defendants, negating the work the Court and parties had done to move them into default, and complicating the already difficult management of this MDL. Thus, plaintiffs decision to refrain from amending pleadings as to Sudan was in furtherance of the orderly management of this MDL and attributable entirely to Sudan's own failure to appear.

**Second, and relatedly, Sudan may present a defense to the claims against it in several of the cases only by securing relief from the defaults entered against it in those actions.** Plaintiffs have suffered severe prejudice due to Sudan's deliberate decision to ignore these proceedings for more than fifteen years. In fact, more than a few plaintiffs have unfortunately died while Sudan ignored the claims against it, depriving those plaintiffs of the opportunity to litigate their claims against Sudan during their lifetimes. In addition, Sudanese officials who were instrumental in orchestrating Sudan's intimate partnership with al Qaeda have themselves died, depriving plaintiffs of the opportunity to secure their testimony. For these and other reasons, plaintiffs have strong grounds to oppose any

The Honorable George B. Daniels
June 18, 2020
Page 3

request by Sudan for relief from the defaults, but are willing to consent to such relief and proceed on the merits, provided plaintiffs are permitted to do so on the basis of an amended complaint that accurately reflects the current state of available facts and law. Absent an opportunity to amend, plaintiffs with defaults against Sudan intend to oppose any application for relief from such defaults, and as a result, Sudan's unreasonable resistance to amendment will only serve to further burden the Court and the parties by requiring motion practice that would otherwise be unnecessary.

**Third, the filing of an amended pleading as to Sudan is necessary and appropriate given intervening developments in the law and further development of the factual and evidentiary record, since the filing of the underlying complaints**. Under the Federal Rules, leave to amend is to be "freely" granted in the interests of justice. Fed. R. Civ. Pro. 15(a). Interpreting Rule 15, the Supreme Court has said that, absent an apparent or declared reason, "such as undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment," "leave sought should, as the rules require, be 'freely given'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

These standards confirm that amendment is appropriate and necessary here. All but one of the underlying complaints was filed by the end of 2005. Since then, this Court and the Second Circuit have issued numerous decisions, including in the context of the 9/11 attacks, of likely relevance to Sudan's defenses. For example, this Court's March 28, 2016 decision denying Saudi Arabia's Motion to Dismiss addressed principles of jurisdictional causation under the FSIA. In addition, all but one of the underlying complaints preceded JASTA's enactment, which provides an additional basis of jurisdiction and cause of action applicable to plaintiffs' claims against Sudan. Plaintiffs must be freely given leave to amend to address these intervening changes of law, including for purposes of presenting factual allegations to support jurisdiction under JASTA's amendment to sovereign immunity.[2]

Amendment also is appropriate and necessary to allow plaintiffs to give the Court a clear presentation of the current evidentiary and factual record. In the many years since the underlying complaints were filed, there have been significant disclosures about Sudan's partnership with al Qaeda for more than decade leading up to the September 11th attacks. These include documents declassified by U.S. government agencies in response to FOIA requests and subpoenas plaintiffs issued in this litigation. As recently as 2018, the CIA and State Department produced documents in response to plaintiffs' subpoenas, relating specifically to Sudan's partnership with al Qaeda.

---

[2] *See, e.g., King County v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 300 (S.D.N.Y. 2012) (granting leave to amend to address development in the governing legal standard); *Bilello v. JPMorgan Chase Ret. Plan*, 649 F.Supp.2d 142, 151 (S.D.N.Y. 2009) (granting motion to amend to address recent Second Circuit decision); *Smart v. Arnone*, 315 F.Supp.2d 292, 294 (W.D.N.Y. 2004) (granting motion to amend answer to add affirmative defense "based on a change in the law caused by a United State Supreme Court's decision"); *Clarke v. UFI, Inc.*, 98 F.Supp.2d 320, 327-28 (E.D.N.Y. 2000) (granting motion to amend answer to add allegations relating to "events that have occurred since the date of their initial answer" and an affirmative defense "on the basis of judicial opinions that were not available when the original answer was filed"); *see also State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (allowing amendment despite long delay because new facts had come to light); *Phillips v. Kidder, Peabody & Co.*, No. 87 Civ. 4936, 1994 U.S. Dist. LEXIS 14578, at *10 (S.D.N.Y. Oct. 13, 1994) ("courts consistently grant motions to amend where it appears that the new facts and allegations are developed during discovery, are closely related to the original claim, and are foreshadowed in earlier pleadings."); *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 759 F. Supp. 855, 857-58 (D.D.C. 1991) (allowing amended complaint against Iran after remand from D.C. Circuit because new facts had come to light since the complaint was filed and noting that the 9 year delay in moving to amend was due to "the interlocutory appeal and the Claims Tribunal").

Significantly, plaintiffs are entitled to present extrinsic evidence to oppose any motion by Sudan to dismiss asserting an immunity defense. Under the FSIA, a plaintiff opposing a motion to dismiss asserting sovereign immunity may present extrinsic evidence to support its theories of jurisdiction. Here, that would include voluminous documentation in the form of government reports, testimony by al Qaeda members, and other evidence directly relevant to Sudan's intimate partnership with al Qaeda. Plaintiffs' contemplated amended complaint will provide the Court and Sudan with a clear road map of this evidence and its relevance to the jurisdictional analysis, and thereby substantially reduce the burden on the Court in resolving the motion to dismiss.

Sudan's resistance to the filing of an amended complaint is all the more misguided, given the provision of Case Management Order # 2 (ECF No. 247, ¶ 14), expressly authorizing at least the *Federal* plaintiffs to file a RICO statement within thirty days of the appearance by any defendant in the litigation. That RICO statement serves as an amendment to the *Federal* plaintiffs' complaint, and may be filed as a matter of right. Because Sudan has never appeared and remains in default in the *Federal* action, the *Federal* plaintiffs have not filed any such RICO statement, but fully intend to do so in the event Sudan does appear. As a result, an amendment of the pleadings will be filed in any case, and it obviously makes more sense to do so via a consolidated pleading governing the majority of the actions.

**Fourth, the filing of the proposed consolidated amended pleading is consistent with the Judicial Panel on Multidistrict Litigation's decision establishing this MDL, and the case management orders and practices implemented by this Court in furtherance of the orderly management of this MDL.** The manner of proceedings proposed here as to the claims against Sudan are precisely the type of proceedings contemplated by the Judicial Panel on Multidistrict Litigation ("JPML") in creating this MDL and this Court in Case Management Order # 3 (CMO # 3, ECF No. 248). In its Transfer Order (ECF # 1), the JPML asserted that centralization of the individual cases was necessary to "conserve the resources of the parties, their counsel, and the judiciary." In CMO # 3, the Court required the PECs to "conduct all pretrial proceedings involving common legal and factual issues . . . on behalf of all plaintiffs." CMO # 3 at ¶ 10. The Court required coordinated, consolidated proceedings directed by the PECs "to the extent practicable" "to promote judicial economy" and "[to] avoid duplicative effort." *Id.* at ¶ 3.

Here, the PECs proposal to file a consolidated amended complaint and proceed in a consolidated, coordinated manner, where practicable, addresses the goals contemplated by the JPML in creating MDL 1570 and this Court in the CMO. On the contrary, requiring the Court, the *O'Neill* plaintiffs, and Sudan to address the *O'Neill* cases in proceedings entirely divorced from each of the remaining cases against Sudan is inconsistent with the indicated goals.

**Finally, Sudan's efforts to avoid amendment based on claims that plaintiffs' "delayed" seeking an opportunity to amend or on other grounds are entirely without merit, and it is remarkable that Sudan would even advance such an argument given its deliberate decision to ignore this litigation for more than 15 years.** As a general matter, delay is not, by itself, grounds for denying a plaintiff an opportunity to amend. *Frenkel v. New York City Off-Track Betting Corp.,* 611 F. Supp. 2d 391, 394 (S.D.N.Y. 2009). To the contrary, delay may serve as grounds for denying amendment only where the party seeking to amend fails to offer any reasonable explanation for the failure to seek amendment earlier, and the proposed amendment would result in some prejudice (e.g., resulting in a delay in resolving the dispute or a significant increase in resources to conduct discovery or prepare for trial). *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir. 1993).

Having deliberately ignored these proceedings for fifteen years and taken no steps to appear to defend the claims against it, Sudan cannot reasonably appear now and be heard to complain that plaintiffs did not seek to amend their pleadings earlier. Again, plaintiffs refrained from amending their complaints as to Sudan precisely because Sudan had failed to appear and because formal defaults had been issued in several of the cases. Further, Sudan still has not appeared in several of the actions, and as a result the amendment of the complaints will not delay or complicate proceedings as to Sudan in the MDL. To the contrary, the consolidated amendment will streamline the proceedings and avoid motion practice related to the defaults. While delay may be a relevant consideration where the parties have appeared and long been active in litigation, it is not relevant where a defendant has deliberately ignored the proceedings for fifteen years and has not appeared in most of the relevant cases.

3. The Pending Motion to Dismiss the *O'Neill* Complaints Should be Stayed

The response to Sudan's Motion to Dismiss the *O'Neill* cases is presently stayed until June 19, 2020. That motion should be stayed to bring it in harmony with the proceedings for all the cases, because consideration of the motion in *O'Neill*, distinct from the other cases, would be an inefficient use of the Court's and the parties' resources and inconsistent with the Court's and the JPML's goals.

The very first ground Sudan raises in its motion to dismiss *O'Neill* is that the complaint does not contain factual allegations sufficient to make a showing of jurisdictional causation under §§ 1605A and 1605B of the FSIA. ECF No. 5825 page 1. But "where a claim is dismissed on the grounds that it is 'inadequate[ly] pled,' there is 'a strong preference for allowing [a] plaintiff[ ] to amend." *Kirschner v. JPMorgan Chase Bank, N.A.*, 2020 WL 2614765, *17 (S.D.N.Y.) (citations omitted); *see also The Youngbloods v. BMG Music,* 07-cv-2394, 2008 WL 919617 (S.D.N.Y. 2008, Daniels, J.)("it is appropriate that plaintiff be afforded an opportunity to amend, given its representation that the amended complaint will sufficiently state a plausible claim to relief beyond the speculative level."). To adjudicate the *O'Neill* claims without consideration of the years of intervening factual development and changes in the law, which would inevitably lead to amending all the pleadings including the *O'Neill* complaints, would simply further delay the proceedings.

4. Conclusion

For the reasons discussed above, the Court should issue an Order (1) staying proceedings on Sudan's pending in *O'Neill*, to allow coordinated MDL proceedings as to Sudan; and (2) authorizing plaintiffs in *Burnett, Federal, O'Neill* and *Continental* to file a CAC within 10 days of entry of an Order authorizing the CAC, and directing counsel for Sudan to accept service of the CAC and file a Consolidated Motion to Dismiss in those cases within 60 days. Plaintiffs in *Burnett, Federal, O'Neill* and *Continental* propose that their Consolidated Opposition to Sudan's Motion to Dismiss be due sixty (60) days thereafter, and that any reply on behalf of Sudan be filed within thirty (30) days of that Opposition.

Respectfully submitted,

| COZEN O'CONNOR | MOTLEY RICE LLC |
|---|---|
| By: __/s/ *Sean P. Carter*__ | By: __/s/ *Robert T. Haefele*__ |
| Sean P. Carter | Robert T. Haefele |
| Cozen O'Connor | Motley Rice LLC |
| One Liberty Place | 28 Bridgeside Boulevard |

    1650 Market Street, Suite 2800        Mount Pleasant, SC  29465
    Philadelphia, PA  19103                Tel:  (843) 216-9184
    Tel: (215) 665-2105                     E-mail: rhaefele@motleyrice.com
    E-mail: scarter@cozen.com

*On behalf of the MDL 1570 Plaintiffs' Exec. Committees*    *On behalf of the MDL 1570 Plaintiffs' Exec. Committees*

cc:    The Honorable Sarah Netburn (Via ECF)
       All Counsel of Record (Via ECF)