# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

June 23, 2020

The Honorable George B. Daniels
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY  10007

      RE:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Daniels:

The Plaintiffs' Executive Committees (PECs) write, on behalf of the *Burnett, Federal, O'Neill,* and *Continental* plaintiffs, in response to the Republic of Sudan's letter of June 21, 2020.  As discussed below, Sudan's letter largely fails to address the specific rationales plaintiffs have advanced in support of their proposal that they be permitted to file a Consolidated Amended Complaint (CAC).  And while Sudan professes "sympathies for the victims of the heinous acts on September 11, 2001" and that it "welcomes the opportunity [to] litigate these cases on the merits in an adversarial context to clear its name," the reality is that its entire proposal is aimed at avoiding having to litigate the merits of the claim based on current evidence and law.[1]

Sudan made a deliberate decision to ignore all of these proceedings for fifteen years, and now seeks to belatedly appear to respond to the claims against it.  Its proposal sidesteps that, for most of the cases under consideration, Sudan remains in default; it cannot file any motion to dismiss in those cases unless and until it files proper motions to relieve it from those defaults and only if those motions are resolved in its favor.  Moreover, if Sudan is at all permitted to respond to the claims, justice requires that the litigation must proceed on the basis of pleadings that address the current factual and legal

---

[1] Sudan's proposal ignores that the preference for deciding cases on their merits (the preference on which Sudan relies to suggest that the Court should relieve it from the defaults in multiple cases it has intentionally ignored for over 15 years) *also* undergirds the permissive standard to freely grant amendment. *Rountree v. US Bank NA*, 2017 WL 31405 (S.D.N.Y Jan. 3, 2017).  If the case is to be heard on the merits, justice requires that it be heard on the merits as they exist today.

The Honorable George B. Daniels
June 23, 2020

---

landscape, not the record as it existed 15 years ago when Sudan decided to ignore these cases. To the extent Sudan is in fact interested in litigating the claims on the merits, it can do so simply by consenting to the proposed filing of the CAC, agreeing to accept service of same, and filing a motion to dismiss directed to the CAC.

In their June 18, 2020 letter setting forth their proposal for further proceedings as to Sudan, the *Burnett, Federal, O'Neill* and *Continental* plaintiffs articulated at least five reasons demonstrating the appropriateness and necessity of allowing them to file an Amended Complaint. Plaintiffs noted that amendments were necessary to mitigate the prejudice plaintiffs had suffered as a result of Sudan's deliberate decision to ignore the litigation for over fifteen years, and to allow plaintiffs to update their pleadings to reflect developments in the factual and legal record. Plaintiffs noted that the federal government had disclosed additional intelligence and other reports specifically addressing Sudan's intimate collaboration with al Qaeda, and that there had been intervening developments and changes in governing law, including the enactment of a new exception to foreign sovereign immunity pursuant to the Justice Against Sponsors of Terrorism Act (JASTA). Plaintiffs also noted that their proposal would substantially streamline the litigation as to Sudan, by bringing the claims of at least four separate plaintiffs groups under the same pleading. Additionally, plaintiffs explained that the filing of their proposed CAC would streamline the Court's review of the record.

Sudan's January 21, 2020 letter conspicuously ignores most of these arguments, and the two isolated points it offers in opposing the amendment miss the mark entirely. For example, Sudan argues that "to the extent plaintiffs seek to amend their complaints to bring their claims under 28 U.S.C. §1605A, , [sic] such amendments would be time-barred …". Beyond the fact that Sudan's argument on this point is wrong,[2] it simply fails to address that plaintiffs' proposed amendments would not merely seek to assert claims pursuant to 28 U.S.C. §1605A. Quite to the contrary, plaintiffs have been very clear that the CAC would address developments in the factual and evidentiary record[3] and intervening developments in the law unrelated to the enactment of §1605A. Sudan offers no response to plaintiffs' arguments that they are entitled to amend to address those developments, because it has none.

Sudan's arguments that plaintiffs' proposal should be rejected because it does not encompass the claims in the *Ashton* and *NYMAGIC* cases is equally misguided. To begin with, the *NYMAGIC* plaintiffs filed a notice of voluntary dismissal of their action in 2010. Plaintiffs find it surprising that Sudan did not conduct sufficient due diligence to identify the dismissal of that action before criticizing plaintiffs for not including it in their proposal, but it is a non-issue in any case.[4] Further, the fact that

---

[2] To the extent Sudan seeks to argue that any amendments advancing new legal claims are untimely, plaintiffs made clear that their proposal to amend would be without prejudice to Sudan's right to assert such timeliness arguments. Amendment of the pleadings will actually help to properly frame those issues, making it easier for the Court to resolve any dispute concerning the timeliness of legal claims advanced in the amended pleading.

[3] As plaintiffs explained in their letter, the *Federal* plaintiffs are entitled to file a RICO statement, which would serve as an amendment of their complaint, within thirty days of any appearance by Sudan in their action. Given that authority to amend as of right, the *Burnett, Federal, O'Neill* and *Continental* plaintiffs urge that it would be far more efficient for them to join in a single consolidated amended complaint. Sudan simply ignores this very logical point in its letter.

[4] When Sudan belatedly entered an appearance in *only* the *O'Neill* case, the PECs affirmatively reached out to Sudan and learned that Sudan's counsel was unaware of cases in MDL 1570 with claims against Sudan other than *O'Neill*. The PECs then identified for Sudan the additional cases in which Sudan had been named as a defendant and served, in order to assist Sudan in its appearing in the case at this late stage. In connection with those discussions, the PECs identified all cases known to them in which Sudan had been named as a defendant and served. The *NYMAGIC* case did not come up during

The Honorable George B. Daniels
June 23, 2020

---

the *Ashton* plaintiffs have not committed to join the CAC does not change the fact that the proposal will result in substantial consolidation and coordination of the proceedings against Sudan, by bringing virtually all of the plaintiffs under a single complaint.

More fundamentally, Sudan's arguments about the extent of coordination resulting from plaintiffs' proposal ignore that plaintiffs' right to amend is not contingent or dependent upon any consolidation of pleadings. Instead, the right of the plaintiffs in each of the actions to amend is governed by the liberal amendment standards of Fed. R. Civ. P. 15, which would fully support the filing of amended complaints in *each* of the separate actions against Sudan. Accordingly, Sudan's arguments relating to the fact that there may be two amended complaints are largely irrelevant.

Finally, Sudan's claims that plaintiffs had previous opportunities to amend their complaints, and nitpicking about the duration of the negotiations among the parties concerning the proposals for further proceedings against Sudan, are entirely without merit. Again, Sudan made a deliberate decision to ignore these proceedings for more than fifteen years. In order to belatedly appear at this point, and obtain relief from the defaults against it, Sudan must be required to confront the pleadings that address the current factual and evidentiary record and that speak to current legal standards.[5] The current complaints do not do so.

As to the duration of the negotiations among the parties concerning their proposals for further proceedings as to Sudan, Sudan ignores that plaintiffs' efforts required a present review of troves of evidence and the drafting of an entirely new complaint, which had to be reviewed, refined, and approved by various of the plaintiffs' groups, in an environment where counsel did not have access to their offices and physical files. In any case, it is not the least bit credible for Sudan to complain about the timeline of the parties' negotiations, given Sudan's 15-year delay in even appearing.

If Sudan insists on relying on the preference to proceed on the merits, justice requires that plaintiffs be permitted to amend to proceed on the merits as they are now.

Respectfully submitted,

| COZEN O'CONNOR | MOTLEY RICE LLC |
|---|---|
| By: __/s/ Sean P. Carter__ | By: __/s/ Robert T. Haefele__ |
| Sean P. Carter | Robert T. Haefele |
| Cozen O'Connor | Motley Rice LLC |

---

the PECs' due diligence because it has not been an active part of the litigation for many years. When Sudan thereafter indicated that there were claims pending against it in *NYMAGIC*, the PECs conducted additional due diligence and were reminded of the dismissal of that case years ago. Far from indicating any lack of diligence on the part of the PECs, these circumstances merely underscore the haphazard way in which Sudan has belatedly sought to appear in the litigation, and the degree to which the PECs have gone out of their way to facilitate Sudan's entry into the litigation in a more orderly fashion.

[5] Sudan's contention that plaintiffs had many opportunities to amend their complaint as to Sudan misstate the record. In fact, plaintiffs in many of the cases have deliberately refrained from seeking an amendment of their pleadings as to Sudan, to avoid reopening the proceedings as to Sudan. In any case, plaintiffs did not have an opportunity to amend their pleadings to address legal standards under JASTA, or evidentiary developments resulting from declassification of documents in recent years. Moreover, Sudan's complaints of delay ring hollow given their deliberate refusal to appear in multiple high profile cases for over 15 years.

The Honorable George B. Daniels
June 23, 2020

_____

| | |
|---|---|
| One Liberty Place | 28 Bridgeside Boulevard |
| 1650 Market Street, Suite 2800 | Mount Pleasant, SC  29465 |
| Philadelphia, PA  19103 | Tel:  (843) 216-9184 |
| Tel: (215) 665-2105 | E-mail: rhaefele@motleyrice.com |
| E-mail: scarter@cozen.com | |
| | |
| *On behalf of the MDL 1570 Plaintiffs' Exec. Committees* | *On behalf of the MDL 1570 Plaintiffs' Exec. Committees* |

cc:   The Honorable Sarah Netburn (Via ECF)
      All Counsel of Record (Via ECF)

4