# Exhibit

# E

# UNITED STATES VICTIMS OF STATE SPONSORED TERRORISM FUND



SPECIAL MASTER

REPORT REGARDING THE THIRD DISTRIBUTION

JUNE 2020

# UNITED STATES VICTIMS OF STATE SPONSORED TERRORISM FUND

## SPECIAL MASTER'S REPORT REGARDING THE THIRD DISTRIBUTION

## JUNE 2020

### 1.  INTRODUCTION

The Justice for United States Victims of State Sponsored Terrorism Act[1] established the United States Victims of State Sponsored Terrorism Fund (the "Fund") in 2015.  Congress enacted the United States Victims of State Sponsored Terrorism Fund Clarification Act[2] in November 2019, amending the original legislation in significant ways that affected the administration of the Fund.  The Clarification Act expanded eligibility to receive payments from the Fund, set new statutory deadlines for applications and authorizations for third-round payments, changed the payment calculation methodology, added relevant definitions, extended the life of the Fund, and increased the potential Fund deposit amounts from certain kinds of cases.  The amended governing legislation is codified at 34 U.S.C. § 20144 (the "Act").

As required by the Act, *id.* at (i), the Special Master provides this report to Congress within 30 days of authorizing the third round of payments.  The report includes an overview of the Fund and its sources of funding, an explanation of the procedures for filing and processing applications for compensation, and information regarding applications and payments.  Where relevant, this report explains the effects of the Clarification Act.  The Special Master will supplement this report with more information regarding the third round of payments when it is available.[3]

### 2.  OVERVIEW OF THE FUND

The Fund provides compensation to eligible claimants who hold judgments against state sponsors of terrorism, were hostages held in the United States embassy in Iran from 1979 to 1981 and their spouses and children, or are the personal representative of such persons who are deceased.[4]  Subject to statutory conditions, the Fund makes payments to eligible claimants on a

---

[1] Pub. L. No. 114-113, div. O, title IV, § 404 (Dec. 18, 2015).

[2] Pub. L. No. 116-69, div. B, title VII, § 1701(b)(1) (Nov. 21, 2019).

[3] This report provides data accurate as of the date of its submission.  Data in the supplemental report may differ, as the Fund and claimants update claim information.

[4] More specifically, the Fund may compensate United States persons who (1) hold a final judgment issued by a United States district court awarding the applicant compensatory damages arising from acts of international terrorism for which a foreign state sponsor of terrorism was found not immune from the jurisdiction of the courts of the United States under the Foreign Sovereign Immunities Act ("FSIA"); (2) were taken and held hostage from the United States embassy in Tehran, Iran, during the period beginning November 4, 1979, and ending January 20, 1981, or are spouses and children of these hostages, if identified as a member of the proposed class in

Report Regarding the Third Distribution

*pro rata* basis out of available funds. As the Fund is replenished, eligible claimants may receive payments out of available funds in subsequent distribution rounds until all claims have been paid in full or the Fund terminates in 2030.

### a. Initial Distribution

The Act required that the Special Master authorize the initial round of payments within one year of its passage in December 2015. *Id.* at (d)(2). The Department of Justice and the Special Master rapidly established Fund procedures and operations, and accepted applications until December 2, 2016. The Fund received a total of 2,883 applications in 2016 for consideration for initial payments. The Special Master determined that 2,332 of them were eligible claims from qualifying judgment holders and Iran hostage crisis victims and their spouses and children. The Fund allocated $1,104,450,000 for initial-round payments.[5] The Special Master authorized initial payments by the December 19, 2016 statutory deadline; the Fund distributed the initial round of payments in early 2017.

### b. Second Distribution

During the application period for second-round payments,[6] the Fund received 3,743 new applications. The Special Master determined that 3,172 of them were eligible claims, based on qualifying final judgments obtained during the application period. On December 13, 2018, the Fund notified eligible claimants of their second-round award payment amounts, in advance of the January 1, 2019 statutory deadline. *Id.* at (d)(4). The Fund allocated $1.095 billion for second-round payments. On January 2, 2019, the Fund began issuing the second-round payments on a rolling basis.

### c. Third Distribution

The Clarification Act, enacted in November 2019, amended the Fund's governing legislation in significant ways that affected the Fund's third-round distribution. The Clarification Act re-opened the application period,[7] and specified a deadline of February 19, 2020 to accept applications, and a deadline of May 19, 2020 to authorize payments. The Clarification Act also removed a provision of the Act that precluded payments to otherwise eligible claimants who had

---

case number 1:00-CV-03110 (EGS) of the United States District Court for the District of Columbia; (3) were taken and held hostage from the United States Embassy in Tehran, Iran, during the period beginning November 4, 1979, and ending January 20, 1981, and who did not have an eligible claim before November 21, 2019; or (4) are the personal representative of a deceased individual in either of those two categories. *Id.* at (c).

[5] Additional details regarding initial payments are in the Special Master's January 2017 Report and August 2017 Supplemental Report. The reports are publicly available on the Fund's website. *See* http://www.usvsst.com/news.php. The Fund's website also provides details of the award calculation methodology. *See* http://www.usvsst.com/docs/USVSST_Fund_Round_Two_Payment_Calculation_12-11-18_Final.pdf (last updated December 2018).

[6] December 2, 2016 to September 14, 2018.

[7] Under the original terms of the Act, the Special Master would have authorized third-round payments by January 1, 2020. Accordingly, the Fund set an application deadline of September 13, 2019. The Clarification Act altered these dates.

2

Report Regarding the Third Distribution

received an award or an award determination from the 9/11 Victim Compensation Fund (VCF), and altered the eligibility requirements for certain Iran hostage crisis victims.[8]

The Fund received 7,893 new applications for the third round of distributions. The Special Master issued decisions by the statutory deadline of May 19, 2020 to all claimants with complete applications, finding 7,479 of these new claims eligible. The Fund allocated $1.075 billion for third-round payments.

### d. Future Distributions

Eligible claimants from all three rounds of payments, as well as any new eligible claimants, may also receive awards in future rounds of payments. The Fund continues to accept applications for the next round of payments, the timing of which depends on the availability of sufficient funds. Under the terms of the Clarification Act, the Fund will make its last obligations no later than January 2, 2030. *Id.* at (e)(6).

## 3.   SOURCES OF FUNDING

After a one-time appropriation of $1.025 billion for fiscal year 2017, *id.* at (e)(5), all funding for this victim compensation program comes from proceeds of federal enforcement actions. Specifically, the Act directs that certain funds and property forfeited or paid to the United States as criminal or civil penalties or fines after December 18, 2015 must be transferred to the Fund. *Id.* at (e)(2). All of the proceeds of qualifying criminal cases must be deposited. The Clarification Act increased the percentage of qualifying civil matters that must be deposited into the Fund from 50 percent to 75 percent.[9] The Fund provides on its website a list of cases or matters where some or all of the qualifying proceeds and penalties have been deposited into the Fund.[10] The Fund updates the list periodically after additional funds from qualifying cases or matters are deposited into the Fund.

## 4.   PROCEDURES FOR FILING AND PROCESSING APPLICATIONS FOR COMPENSATION

### a.  Application Process

The application process has remained fundamentally the same since the inception of the Fund. The claimant has the burden of establishing eligibility for payment by the Fund under the Act. Each claimant must submit his or her own application, and, if the claimant is the estate of a

---

[8] *Compare* Pub. L. No. 114-113, div. O, title IV, § 404 (Dec. 18, 2015) (setting forth subsections (d)(3)(A)(ii)(III) (payment limitations) and (c)(2)(B) (Iran hostages) of the Justice for United States Victims of State Sponsored Terrorism Act) *with* 34 U.S.C. §§ 20144(d)(3)(A)(ii) and (c)(2)(B) (incorporating amendments from the United States Victims of State Sponsored Terrorism Fund Clarification Act, Pub. L. No. 116-69, div. B, title VII, § 1701(b)(1) (Nov. 21, 2019)).

[9] *Compare* Pub. L. No. 114-113, div. O, title IV, § 404 (Dec. 18, 2015) (setting forth subsection (e)(2)(A) of the Justice for United States Victims of State Sponsored Terrorism Act) *with* 34 U.S.C. § 20144(e)(2)(A) (incorporating amendments from the United States Victims of State Sponsored Terrorism Fund Clarification Act, Pub. L. 116-69, div. B, title VII, §1701(b)(1) (Nov. 21, 2019)).

[10] *See* http://www.usvsst.com/deposits.php.

deceased individual, provide the requisite information for the personal representative of the decedent.

The personal representative for a deceased claimant is normally the individual appointed by a court of competent jurisdiction as the personal representative of the deceased claimant's will or estate, executor of the deceased claimant's will, or the administrator of the deceased claimant's estate. Accordingly, the personal representative provides copies of relevant legal documents, such as court orders, letters testamentary, letters of administration, or similar documentation.

A claimant may obtain an Application Form by registering on the Fund's website,[11] or by calling or submitting a written request. Application Forms may be submitted online, by email, by mail, or via toll-free facsimile. If claimants are represented by counsel, counsel may submit their applications.

Claimants generally must file no later than 90 days after the date of obtaining a final judgment. The Clarification Act, however, for the third round only, extended this timeline for 9/11 victims, 9/11 spouses, or 9/11 dependents with final judgments entered before November 21, 2019, who did not previously submit an application to the Fund. *Id.* at (c)(3)(A). They could file even if more than 90 days had elapsed since they obtained a final judgment. To be considered for third-round payments, the Clarification Act set a February 19, 2020 application deadline. *Id.* at (d)(4)(B). Claimants who were eligible for initial or second-round payments were not required to re-submit an application to be considered for third-round payments.

### b. Application Requirements

#### i. Iran Hostages and Their Spouses and Children

A claimant who sought to establish eligibility for payment as a hostage from the United States embassy in Tehran, Iran, during the period beginning November 4, 1979, and ending January 20, 1981, or spouse or child thereof, must have submitted: (1) verification that he or she was taken hostage, a marriage certificate if a hostage's spouse, or a birth certificate or adoption decree if a hostage's child; and (2) verification that he or she is a member of the proposed class in case number 1:00-CV-03110 (EGS) of the United States District Court for the District of Columbia. These claimants were required to file their applications by the October 12, 2016 deadline for initial payments.

The Clarification Act removed the statutory requirement that the former hostage be identified as a member of the proposed class described above. Accordingly, those individuals who were not held hostage for the entire time period became eligible, and could apply for third-round payments during the re-opened application period. The Clarification Act did not change the eligibility requirements for hostages' spouses and children.

The Act prescribes the eligible claim amount as the sum total of $10,000 per day for each day that a United States person was taken and held hostage from the United States embassy in Tehran, Iran, during the period beginning November 4, 1979, and ending January 20, 1981. *Id.*

---

[11] *See* https://cert.gardencitygroup.com/vtfReg/fs/home.

at (c)(2)(B).  For those held for the entire 444-day period, the eligible claim amount is $4,440,000.  For each spouse and each child of a former hostage, the Act sets the eligible claim amount as $600,000.  *Id.* at (c)(2)(C).  As with final judgment amounts, these eligible claim amounts are subject to *pro rata* calculation in accordance with the terms of the Act.  *Id.* at (d)(3)(A)(i).

ii.  Judgment Holders

A claimant seeking to establish eligibility for payment on the basis of a final judgment issued by a United States district court under state or federal law against a state sponsor of terrorism and arising from an act of international terrorism, for which the foreign state was found not immune under provisions of the FSIA, must submit, among other documents, a copy of the final judgment, as well as a list identifying any immediate family member(s) of the claimant also identified in the final judgment.  Claimants with a final judgment against an instrumentality of a state sponsor of terrorism are eligible for compensation from the Fund; however, claimants with a final judgment solely against a terrorist group or organization, and not against a state sponsor of terrorism, are not eligible for compensation.

**c.  Review and Adjudication**

The Fund's claims administrator, as well as attorneys employed by the Department of Justice ("Fund attorneys"), review applications to the Fund.  If an application is deficient, the Fund notifies the claimant, or his or her attorney, and offers an opportunity to resolve the deficiencies.  Fund attorneys make recommendations regarding eligibility to the Special Master, who has the statutory authority to determine claims eligible or deny claims.

All of the Special Master's decisions about compensation from the Fund are final and not subject to administrative or judicial review.  *Id.* at (b)(3).  However, no later than 30 days after receipt of a written decision by the Special Master, a claimant whose application was denied in whole or in part may request a hearing before the Special Master or his or her designee.  *Id.* at (b)(4).  No later than 90 days after a hearing, the Special Master must issue a written decision affirming or amending the original decision; the written decision is final and non-reviewable.  *Id.*

**d.  Payment**

The Act authorizes the Special Master to order payment from the Fund "for each eligible claim of a United States person to that person or, if that person is deceased, to the personal representative of the estate of that person."  *Id.* at (d)(1).  Subject to certain conditions and limitations, eligible claims are paid on a *pro rata* basis out of available funds, based on the amounts outstanding and unpaid on eligible claims, until all such amounts have been paid in full or the Fund terminates in 2030.

The Act requires that all claimants identify compensation from any source other than the Fund that the claimant or the claimant's beneficiaries have received or are entitled or scheduled to receive as a result of the act of international terrorism that gave rise to the final judgment.  *Id.* at (b)(2)(B).  The claimant must provide all relevant information and documentation in his or her application and update the Fund about any additional amounts received after filing the

application.  This assists the Fund in determining the amount outstanding and unpaid on the claims.

The Act includes specific provisions which affect payments to claimants in particular circumstances.  The Clarification Act made significant changes that affect payment calculations. The sections below explain conditions and limitations on payments to eligible claimants.

### i.   Dividing Available Funds between 9/11-Related Victims and Other Victims

The Clarification Act mandates that the Fund divide in half the total amount allocated for payments in a distribution, and then allocate one-half to 9/11-related victims, and the other half to all other claimants (other judgment-holders and Iran hostages and their families).  *Id.* at (d)(3)(A)(i).  Within each of the two resulting pools of available funds, the Fund distributes the funds *pro rata*, subject to the other statutory limitations and conditions.  For the third round, the Fund allocated a total of $1.075 billion.  Accordingly, when calculating third-round payments, the Fund will allocate $537.5 million for eligible 9/11-related claimants, and $537.5 million for all other eligible claimants.  There are 10,590 9/11-related eligible claimants, and 2,822 non-9/11-related eligible claimants.[12]

### ii.   Judgment Amounts

The Act places limits on the amount of compensatory damages included in the Fund's payment calculations.  In the event any applicant is awarded a judgment with gross compensatory damages that exceed $20 million, the Special Master will treat that claim as if the compensatory award were $20 million.  *Id.* at (d)(3)(A)(ii)(I).  This individual cap applies to all claimants, and has been in effect since the Fund's inception.

The legislation governing the Fund also applies family-based limitations on awards, in addition to the individual cap.  The Clarification Act mandates different family caps for the non-9/11-related victims and their families than for 9/11-related victims and their families.

For non-9/11-related claimants, these victims and their immediate family members are subject to a collective $35 million cap, as they have been since the inception of the Fund.  *Id.* at (d)(3)(A)(ii)(II).  The Clarification Act applies the same $35 million cap to family groups comprised of 9/11 victims, 9/11 spouses, and 9/11 dependents.  *Id.* at (d)(3)(A)(ii)(III); *see also* (j)(10)-(14) (defining terms).  However, the Clarification Act applies a $20 million cap to family groups comprised of 9/11 family members who are not 9/11 victims, 9/11 spouses, or 9/11 dependents.  *Id.* at (d)(3)(A)(ii)(IV).  This lower cap applies to, for example, non-dependent parents or siblings of 9/11 victims.

The Fund applies the $20 million individual cap before applying the relevant family cap, and then uses these adjusted amounts when calculating payments.

---

[12] As explained below, some eligible claimants are not included in payment calculations.  *See, e.g.,* sec. 4.d.iii; n.19, *infra.*

6

Report Regarding the Third Distribution

### iii.   Payments from Other Sources

Claimants who have received 30 percent or more of their compensatory damages from sources other than the Fund may not receive payments from the Fund until other claimants have received 30 percent of their compensatory damages from the Fund.  *Id.* at (d)(3)(B).  Claimants who have received some, but less than 30 percent, of their compensatory damages from sources other than the Fund have their awards adjusted to account for the percentage other claimants receive from the Fund.

### iv.   Recipients of VCF Awards or Award Determinations

The Clarification Act removed the statutory provision that precluded Fund payments to eligible claimants who had received an award or award determination from the VCF under section 405 of the Air Transportation Safety and System Stabilization Act.  Accordingly, under the Clarification Act, if a 9/11 victim or immediate family member has a qualifying claim, he or she may receive compensation from the Fund regardless of whether he or she did or did not apply to the VCF.  A total of 223 eligible claimants (136 from the initial round, 87 from the second round) who had earlier been precluded from receiving compensation will be included in payment calculations for the third round.  Moreover, any award from VCF is not considered a payment on the claimant's judgment, so it is not considered a payment from a "source other than th[e] Fund" for purposes of payment calculations.  *Id.* at (j)(6).

### v.   Prohibition on Payments to Anyone Criminally Culpable for an Act of International Terrorism

The Act contains a special exclusion provision, which provides that no individual "who is criminally culpable for an act of international terrorism" may "receive any compensation . . . either directly or on behalf of a victim."  *Id.* at (h).  The Special Master consults with the Federal Bureau of Investigation ("FBI") to ensure that background checks are conducted on eligible claimants.[13]

### vi.   Conditional Payments Allocated but not Disbursed

The Act includes a special provision for Settling Judgment Creditors as identified in the order dated May 27, 2014, in the proceedings captioned *In Re 650 Fifth Avenue & Related Properties*, No. 08 Civ. 10934 (S.D.N.Y.).[14]  These individuals had the option to file conditional

---

[13] FBI background checks are conducted on the eligible claimants, such as the victim himself or herself, deceased victims, and the personal representative of deceased victims.  FBI background checks are not conducted on the beneficiaries of a deceased claimant's estate (other than personal representatives) because they do not receive any compensation directly from the Fund or on behalf of the victim.  In addition, as stated in the System of Records Notice ("SORN") (Department of Justice, Privacy Act of 1974; Systems of Records, 81 Fed. Reg. 45539, 45540 (July 14, 2016)), Fund records are disseminated to "the Department of [the] Treasury to ensure that any recipients of federal payments who also owe delinquent federal debts have their payment offset or withheld or reduced to satisfy the debt."

[14] Discussion of the similar special provision for judgment creditors in *Peterson v. Islamic Republic of Iran*, No. 10 Civ. 4518 (S.D.N.Y) can be found in the August 2017 Supplemental Report to Congress.

Report Regarding the Third Distribution

applications; for these claimants, the Fund determines eligibility and award amounts, but withholds the payments, pending a final judgment in the proceedings.

The Fund received 102 applications from these Settling Judgment Creditors in the initial round of distributions, all of whom had eligible claims.  Of these, seventy-one (71) eligible Settling Judgment Creditors were included in the first and second-round payment calculations. In the initial and second-round distributions, the Special Master allocated, but did not distribute, $80,875,527.59 to these 71 claimants.  The other thirty-one (31) additional Settling Judgment Creditors filed applications for conditional payment the initial round of distributions; however, they were subject to the statutory provision that precluded Fund payments to eligible claimants who had received an award or award determination from the VCF.  *See supra*, section (4)(d)(iv). Accordingly, the Special Master did not include these 31 claimants in payment calculations and did not allocate any funds to those 31 claimants in the initial and second round of distributions. Because the Clarification Act removed the statutory provision precluding payments to these 31 claimants, they will be included in third-round payment calculations.

In the third round, the Special Master received 47 additional conditional applications from Settling Judgment Creditors from *In Re 650 Fifth Avenue & Related Properties* and found all 47 eligible.  Accordingly, the Special Master will allocate, but not distribute payments to all 149[15] eligible conditional applicants in the third round.  The *In Re 650 Fifth Avenue & Related Properties* litigation remains pending and the allocated amount will be withheld until a final judgment is entered.

5.     ANALYSIS OF PAYMENTS MADE TO ELIGIBLE CLAIMANTS FROM THE FUND

a.  Number of Applications for Compensation Submitted

From the inception of the Fund until the February 19, 2020 statutory deadline for third-round applications, the Fund received a total of 14,507 applications for compensation. A total of 7,893 new claims were submitted for consideration for third-round payments.

b.  Number of Applications Approved and Amount of Each Award

The Special Master approved 7,987[16] applications submitted or completed for consideration for third-round payments.  A total of 5,346 eligible claimants from the initial and second rounds of distributions remained eligible for future distributions.[17]  The amount of each

---

[15] The 149 total consists of the 71 applications for conditional payments from the initial distribution, the 31 applications that are no longer subject to the pre-Clarification Act provision that precluded payment, and the 47 new applications for conditional payment received in the third round.

[16] The 7,987 includes 508 claims that were deficient or unable to be approved in the initial or second rounds but were complete and sufficient for review for third-round consideration.

[17] *See* February 2019 Report Regarding Second Distribution. This number reflects the 5,123 claims identified as eligible to receive future distributions, along with the 223 claimants who had eligible claims but were precluded from receiving payment from the Fund by the then-governing statute because of VCF awards or award determinations.

Report Regarding the Third Distribution

individual third-round award has not yet been calculated.  The Fund will provide a supplemental report after payments commence that identifies the amount of each award.

### c.   Number of Applications Denied and Reasons for Denial

The Special Master denied 55 applications that were submitted for consideration for third-round payments.  All of these claims were denied because the claimants did not meet the statutory eligibility requirements; *i.e.*, they did not hold a qualifying final judgment, or they were not qualifying hostages held in Iran during the period from November 4, 1979 to January 20, 1981.  Of the total 14,507 applications that have been submitted to the Fund to date, 624[18] have been denied.

### d.   Number of Applications Pending for Which Compensatory Damages Have Not Been Paid in Full

All eligible claimants will be included in payment calculations for the third round, subject to the limitations in the Act.[19]  The Fund will provide a supplemental report after payments commence that identifies the number of applications which have not been paid in full.  However, given the amount of funds available for distribution in the third round ($1.075 billion), and the amount of claimants' compensatory damages that remained outstanding and unpaid after the second round of distributions (over $27 billion), eligible claimants will likely have significant amounts outstanding and unpaid even after third-round payments are issued.

### e.   Total Amount of Compensatory Damages from Eligible Claims That Have Been Paid and Remain Unpaid

The Fund will provide a supplemental report after payments commence that identifies the total amount of compensatory damages from eligible claims that have been paid and remain unpaid.

## 6.   FUTURE DISTRIBUTIONS

As noted above, eligible claimants remain eligible for future rounds of distributions from the Fund.  After the special provisions regarding the date of third-round payment authorization (*id.* at (d)(4)(B)), the Special Master is statutorily required to authorize additional rounds of payments annually on January 1, if sufficient funds are available, until the Fund terminates in 2030.  *Id.* at (d)(4)(A), (e)(6)(A).

---

[18] This includes the 55 denials from the third distribution and the 569 denials in the prior two rounds.

[19] These include the limitations set forth in section 4(d) above, as well as any other statutory limitations.  For example, claimants who have received all of their compensatory damages from sources other than the Fund do not have any "amounts outstanding and unpaid," Act at (d)(3)(A)(II)-(III), and will not be included in payment calculations.