KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

September 22, 2020

*Via ECF*

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

Re:   *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

      Pursuant to the Court's August 27, 2020 Order, ECF No. 6408 ("August 27 Order"), Defendant Kingdom of Saudi Arabia ("Saudi Arabia" or "KSA") respectfully submits this proposal regarding the sequencing and logistics of depositions.

      On September 1, 2020, Saudi Arabia provided Plaintiffs with its proposal for deposition scheduling and logistics, and requested that Plaintiffs do the same so that the parties could complete the meet-and-confer process. Plaintiffs did not provide their proposal until yesterday, September 21, 2020, during the parties' meet-and-confer call. It is not a full proposal, however, and seems designed more to create discovery disputes than to take depositions.

      **1.**      **Witnesses Who Will Be Deposed**

      Following the August 27 Order, Saudi Arabia informed Plaintiffs that the following 16 current and former Saudi government employees would sit for deposition:

1. Omar Al Bayoumi
2. Fahad Al Thumairy
3. Mussaed Al Jarrah
4. Smail Mana
5. Saud Abdullah Al Ghudaian
6. Majid Mohamed Mersal
7. Abdulaziz Abdulkareem Al Anqari
8. Faisal Ahmed Al Muhanna
9. Ahmed bin Abdulaziz Al Qattan
10. Abdullah Al Awad

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. Judge Sarah Netburn
September 22, 20
Page 2

    11.    Sami Al Ibrahim
    12.    Saleh bin Abdulaziz Al Ash-Shaikh
    13.    Abdullah Al Jaithen
    14.    Adel Al Sadhan
    15.    Mutaeb Al Sudairy
    16.    Abdurrahman Bin Gurman Al Shahri

Saudi Arabia further informed Plaintiffs that, pursuant to the August 27 Order, Saudi Arabia had reached out to the following individuals who are no longer employees of Saudi Arabia, and inquired whether they would voluntarily testify: Prince Bandar Bin Sultan Bin Abdulaziz Al Saud, Prince Abdulaziz Bin Fahad Bin Abdulaziz, Prince Mohammed Bin Salman Bin Mohammed Al Saud, former Ambassador Mohammed Al Salloum, and former Cultural Attache Mazyed Ibrahim Al Mazyed. Each of these individuals declined to voluntarily testify. Saudi Arabia is still in the process of inquiring whether former Ambassador Mohammed Bin Faiz Al Sharif will voluntarily testify.

As directed by the Court, Saudi Arabia is undertaking reasonable efforts to confirm whether Alp Karli is a current or was a former employee of Saudi Arabia and whether he will voluntarily sit for deposition. Saudi Arabia is also undertaking similar reasonable efforts with respect to Sharif Batikhi. At present, Saudi Arabia has found no indication that either individual is a current employee of its government, does not have current contact information for either individual, and has not been able to contact them.[1] Saudi Arabia also does not believe that either individual was an employee of Saudi Arabia during the relevant period and will address this matter further when its investigation is complete.

    **2.**    **Sequencing of Depositions**

On the parties' September 21, 2020 meet-and-confer call, Plaintiffs proposed proceeding with depositions in groups. The first group of depositions consists of individuals associated with the Consulate in Los Angeles (Al Awad, Al Ibrahim, and Mana[2]). The second group of depositions consists of individuals associated with the Ministry of Islamic Affairs (Al Ghudaian, Al Ash-Shaikh, Al Mersal, Al Sadhan, and Al Sudairy). Plaintiffs proposed taking the remaining depositions after the first two groups of depositions are completed. Saudi Arabia will make reasonable efforts to produce its witnesses in the order requested by Plaintiffs. However, it respectfully submits that any scheduling should account for the convenience and availability of the witnesses.

---

[1] Saudi Arabia is making continuing efforts to locate Karli and Batikhi, including by engaging the services of a private investigation firm.

[2] Plaintiffs also listed Batikhi in this group but, as noted above, Saudi Arabia does not believe that Batikhi ever worked for Saudi Arabia, does not have his current contact information, and cannot currently represent that he will sit for deposition.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. Judge Sarah Netburn
September 22, 20
Page 3

### 3.  Proposed Schedule for Fact Depositions

Saudi Arabia proposes a deadline of December 18, 2020, for the completion of all party and non-party fact depositions.  This schedule is consistent with the guidance that the Court provided at the January 13, 2020 hearing that the deposition period should be no longer than 90 days, consisting of "60 days to take . . . depositions" and "30 days to . . . clean up and wind down."  ECF No. 5777, at 40:2-10.  Three months is more than sufficient time to complete the depositions identified above and any non-party depositions that Plaintiffs may seek to take.

Plaintiffs' proposal, as expressed during the September 21 meet and confer, is that the Court not set any deadline for depositions.  Instead, Plaintiffs propose proceeding with the group 1 depositions in November and the group 2 depositions in December.  They propose evaluating whether a deadline should be set, and, if so, what it should be, only after the completion of the group 1 and 2 depositions.  Plaintiffs further propose that non-party witness depositions can be "mixed in" with the depositions of current and former Saudi government employees, and that the Court should not set any deadline for non-party depositions.

That is not a scheduling proposal at all.  Without a firm deadline, Plaintiffs will never complete depositions (much less schedule them in earnest).  As the Court is aware, Plaintiffs have conducted only one deposition this year and have scheduled one other deposition to occur in October.  The Court has directed Plaintiffs three times to begin taking non-party depositions "immediately" – on May 11, on May 21, and in the August 27 Order.  *See* ECF No. 6204, at 1; ECF No. 6274, at 146:10-18; ECF No. 6408, at 40.  In the three weeks since the August 27 Order, Plaintiffs have neither subpoenaed any additional non-party witnesses nor provided the four-week notice of the identity of any additional non-party deponent required by the Court's May 11, 2020 Order.  *See* ECF No. 6204.  A firm deadline is required to "impose valuable discipline on attorneys, forcing them to be selective and helping to move the case expeditiously." Fed. Judicial Ctr., *Manual for Complex Litigation (Fourth)* § 11.422, at 54 (2004).

### 4.  Deposition Logistics

In light of the global COVID-19 pandemic, which impedes international travel as well as in-person meetings, the depositions in this case can and should proceed remotely by videoconference.  The parties in this multidistrict litigation have experience conducting depositions via videoconference, including depositions of Arabic-speaking witnesses that require translation.  *See* ECF No. 5235, at 2; ECF No. 6274, at 141:22-144:24.  Those depositions have all been conducted efficiently and effectively with no issues relating to their remote nature.  Moreover, in the past several months, our firm has taken and defended dozens of remote depositions in numerous cases pending in federal courts throughout the country.  Those depositions have likewise proceeded efficiently and without issue.  Plaintiffs have never articulated why remote depositions are inappropriate here.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. Judge Sarah Netburn
September 22, 20
Page 4

    Courts have the discretion to order that depositions "be taken by telephone or other remote means." Fed. R. Civ. P. 30(b)(4). Over the past several months, courts around the country, including judges in this District, have exercised that discretion. *See, e.g.*, Order at 6, *Joffe v. King & Spalding LLP*, No. 17 Civ. 3392 (VEC) (SDA), ECF No. 239 (S.D.N.Y. June 4, 2020) ("The parties are directed to proceed by remote deposition."); *Sinceno v. Riverside Church in New York*, 2020 WL 1302053, at *1 (S.D.N.Y. Mar. 18, 2020); *In re Broiler Chicken Antitrust Litig.*, 2020 WL 3469166, at *5 (N.D. Ill. June 25, 2020); *Wilkens v. ValueHealth, LLC*, 2020 WL 2496001, at *2 (D. Kan. May 14, 2020).

    Plaintiffs' position is that *all* depositions must be conducted in person. They have further suggested that the depositions should take place in the United States – either in New York, or in some cases in California or Arizona – meaning that witnesses located abroad will need to travel to the United States for their deposition. Fourteen of the witnesses listed above are located overseas, the vast majority in Saudi Arabia. There is no basis to require these witnesses to travel to the United States, even absent the current pandemic. *See, e.g.*, *In re Petition of Boehringer Ingelheim Pharm., Inc. & Boehringer Ingelheim Int'l GmbH, in Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 745 F.3d 216 (7th Cir. 2014) (granting mandamus relief from a district court order requiring a company to produce Germany-based employees, 10 of whom were German citizens, in the United States for deposition); *Dagen v. CFC Grp. Holdings Ltd.*, 2003 WL 21910861 (S.D.N.Y. Aug. 11, 2003) (granting a motion for a protective order designating Hong Kong as the location for a witness's deposition, where the witness resided and worked).

    Given the current public health crisis, Plaintiffs' demand is completely unworkable. "The U.S. continues to lead the world in both total confirmed cases and deaths," and many experts expect a "fresh surge in Covid cases" in the United States. Ted Mann & Talal Ansari, *Fresh Surge in Covid Cases Feared*, Wall St. J. at A3 (Sept. 22, 2020). New York currently requires a 14-day quarantine for virtually all international travelers, including those from Saudi Arabia, and residents of several States, including at least one State where Saudi Arabia's counsel reside.[3] Many other possible international locations have travel restrictions in place, with no indication as to when those restrictions will be lifted or when it will be feasible to safely conduct these depositions in person in locations in Europe or the Middle East.[4] Several witnesses who

---

[3] *See* New York State Dep't of Health, COVID-19 Frequently Asked Questions, https://coronavirus.health.ny.gov/system/files/documents/2020/04/doh_covid19_faqs_updated_041720_2.pdf; New York State, COVID-19 Travel Advisory, https://coronavirus.health.ny.gov/covid-19-travel-advisory.

[4] The other presumptive deposition locations are London, Madrid, and Rome. The United Kingdom and Italy require travelers from the United States and Saudi Arabia to quarantine for 14 days. *See* https://www.gov.uk/uk-border-control; https://it.usembassy.gov/covid-19-information/. Italy and Spain are also not generally open to residents from the United States or Saudi Arabia. *See* https://www.esteri.it/mae/en/ministero/normativaonline/decreto-iorestoacasa-domande-frequenti/focus-cittadini-italiani-in-rientro-dall-estero-e-cittadini-stranieri-in-italia.html; https://es.usembassy.gov/covid-19-information/.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. Judge Sarah Netburn
September 22, 20
Page 5

are currently in Saudi Arabia have informed counsel that they are unwilling to travel at all due to the COVID-19 pandemic. Postponing depositions until they can feasibly and safely be conducted in person will grind this litigation to a halt.

In addition, several of the witnesses are former employees who have voluntarily agreed to testify. If, as Plaintiffs insist, these former employees must travel to the United States for their deposition, Saudi Arabia cannot guarantee that they will continue to voluntarily agree to testify. Indeed, it seems extremely unlikely that they will do so. The same safety and additional logistical concerns apply to current Saudi government employees, and especially its high-level officials. As set forth in the Court's August 27 Order, the scope of many of these depositions is limited by the high-level-official doctrine and Vienna Convention immunities. In addition, as this Court and the Second Circuit have held, the rationale underlying the high-ranking-official doctrine is that these officials "'have greater duties and time constraints than other witnesses.'" August 27 Order at 24 (quoting *Lederman v. NYC Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013)). Given the narrow scope of permissible questioning and deference to the competing responsibilities of these high-level officials, these witnesses should not be compelled to take additional time away from their government functions to travel, particularly not in the face of a global pandemic. *Cf. Dagen*, 2003 WL 21910861, at *4 (noting, in deciding to order a Hong Kong-based witness's deposition to take place in Hong Kong, that the witness's "absence from the workplace for a number of days, and perhaps an entire work-week, would have an adverse impact on [the witness] and the company").

Finally, Saudi Arabia requests a procedure for the Court to resolve certain objections prior to the depositions. At least seven witnesses are current or former officials or employees of the Saudi Embassy in Washington, D.C. or the Saudi Consulate in Los Angeles, or are former Ambassadors for Saudi Arabia. At least four are high-level officials. As the Court recognized in its August 27 Order, Vienna Convention immunities and the high-level-official doctrine limit the testimony of all such individuals. *See also Google Inc. v. American Blind & Wallpaper Factory, Inc.*, 2006 WL 2578277, at *3 & n.3 (N.D. Cal. Sept. 6, 2006) (limiting scope and time limit of deposition under apex doctrine). Although the Court has set out the contours of those limitations in its August 27 Order, Saudi Arabia anticipates that disputes will arise during the course of the depositions. Saudi Arabia therefore proposes that, for these particular witnesses, (1) Plaintiffs submit specific topics of examination to Saudi Arabia 14 days before the deposition; (2) Saudi Arabia will lodge any objections 10 days before the deposition, including objections as to the time limits; and (3) Plaintiffs then raise any disputes with the Court 7 days before the deposition so that outstanding issues can be resolved before the deposition. Without such a procedure, Saudi Arabia anticipates that the parties are likely to need repeated assistance from the Court in real time to rule on objections on a question-by-question basis. In addition, advance guidance from the Court will help avoid additional motion practice seeking to reopen depositions, especially for witnesses who hold or held ministerial or ambassadorial positions.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. Judge Sarah Netburn
September 22, 20
Page 6

                                             Respectfully submitted,

                                             */s/ Michael K. Kellogg*

                                             Michael K. Kellogg
                                             *Counsel for the Kingdom of Saudi Arabia*

cc:     All MDL Counsel of Record (via ECF)