# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

September 22, 2020

The Honorable Sarah Netburn
United States Magistrate Judge
Thurgood Marshall Courthouse
40 Foley Square, Room 430
New York, NY 10007

Re:   *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

Plaintiffs respectfully submit their proposal "regarding the sequencing and logistics of the depositions subject to this Order" as directed by this Court's August 27, 2020 Order, ECF 6408 at 40. As directed by the Court, the Plaintiffs Executive Committees (PECs) conferred with counsel for Saudi Arabia on September 21, 2020, but the parties were unable to reach agreement on these issues. The parties have agreed that they will submit responses to their respective proposals by September 25, 2020.

Plaintiffs' proposal is based on this Court's May 11, 2020 Order, ECF 6204, which directed that subject to public health concerns the depositions would proceed in-person in one of several "Presumptively Acceptable Locations" which include New York City, three European capitals, or location(s) as agreed by the parties. *Id.* at 2 (citing ECF No. 3894, ¶ 31).

Plaintiffs have developed a safety protocol for the depositions in consultation with Dr. Amesh Adalja, Senior Scholar at the Johns Hopkins University Center for Health Security, with expertise in emerging infectious disease, pandemic preparedness, and biosecurity,[1] and also

---

[1] During the COVID-19 pandemic, in addition to consulting with the PECs, Dr. Adalja has been serving on the National Collegiate Athletic Association coronavirus advisory group and as a consultant to various other businesses, schools, and organizations. Dr. Adalja has served on U.S. government panels tasked with developing guidelines for the treatment of plague, botulism, and anthrax in mass casualty settings and for the system of care for infectious

contacted several nationwide court reporting companies that have recently handled in-person depositions at locations throughout the United States. These consultations took into consideration any applicable travel restrictions, quarantine requirements, regulations governing the number of people who can safely assemble together, COVID case levels in the germane locations, and other relevant considerations. Plaintiffs have been assured that if the protocol is followed by the parties that in-person depositions are entirely feasible and can be conducted with minimal risk.

Based on these assessments, Plaintiffs proposed to Saudi Arabia that the witnesses appear for their depositions in New York, as it is one of the Presumptively Acceptable Locations identified in the Court's Order and there are no impediments to having the attorneys, witnesses, and other participants safely appear in New York for in-person depositions. Alternatively, Plaintiffs proposed that the depositions be conducted in an agreed location, such as Washington, D.C. (if applicable regulations and safety considerations permit); a warm weather location in the U.S. (such as Arizona) or abroad where the depositions could be held in a protected outside place; or, some other suitable and mutually agreeable foreign location. *See, e.g.* ECF No. 3894, ¶ 31 (authorizing alternative locations by mutual agreement).

Under the safety protocol, the depositions would be held at a large venue of a sufficient size to seat at least 25 participants at a safe distance and with proper ventilation. Most participants would wear masks and be cordoned as is feasible, for example, using Plexiglas dividers. Other lawyers in Plaintiffs' law firms have recently conducted in-person depositions in other cases using similar safety measures. Plaintiffs have also assembled information regarding the duties imposed on visitors at this time in various potential deposition locations, such as quarantine requirements. The situation is fluid, but could be easily and quickly addressed if Saudi Arabia worked together with the Plaintiffs to agree on the location(s) and protocol.

During our meet and confer, however, Saudi Arabia's counsel was intransigent in offering only Saudi Arabia as a possible in-person location for the depositions, expressing unwillingness to discuss any other location, in contravention of this Court's May 11 Order.

Plaintiffs understand that travel is now permitted from Saudi Arabia to the United States and other destinations, and that officials of Saudi Arabia are currently travelling to foreign locations, including the United States, on Saudi government business.

Subject to reaching an agreement with Saudi Arabia on the suitable deposition location(s), which has proved impossible, Plaintiffs further proposed that the parties conduct four

---

disease emergencies. He also served as an external advisor to the New York City Health and Hospital Emergency Management Highly Infectious Disease training program and on a Federal Emergency Management Agency working group on nuclear disaster recovery. He is a spokesperson for the Infectious Diseases Society of America, and previously served on their Public Health and Diagnostic Committees and their precision medicine working group. Dr. Adalja is a member of the American College of Emergency Physicians Pennsylvania Chapter's EMS & Terrorism and Disaster Preparedness Committee as well as the Allegheny County Medical Reserve Corps. He was formerly a member of the National Quality Forum's Infectious Disease Standing Committee and the U.S. Department of Health and Human Services' National Disaster Medical System, with which he was deployed to Haiti after the 2010 earthquake.

or more rounds of depositions, starting with a first round of depositions in November, and a second round of depositions in December.

A period of at least 45 days from now is needed before the first round of depositions to provide the parties with sufficient time to make the necessary arrangements, address other outstanding motion practice in the litigation, and prepare for the depositions. The Court's August 27 Order identified the witnesses who will be subject to deposition and, in certain cases, outlined general parameters for the questioning. With that information, Plaintiffs now need to prepare complete deposition files for each of the witnesses, double-check to ensure all translations to be used at those depositions are accurate, and agree within the PECs on strategies and allocation of responsibilities for each of the depositions. In addition, Plaintiffs need to work through the logistics for conducting the depositions. Although Plaintiffs have done considerable preparatory work already, they will need at least 45 days to finalize their preparations based on the August 27 Order. We anticipate that defendants will, likewise, need time to plan travel and arrange for visas.

Plaintiffs proposed a first round of depositions focused on the Los Angeles Consulate that would include up to five witnesses, including Abdullah al-Awad (Deputy Consul General); Sami al-Ibrahim (Deputy Consul General); Smail Mana (Consulate employee); Sharif Battikhi[2]; and, Mohammed Salloum (Consul General).[3]

The second round of depositions Plaintiffs proposed focus on Ministry of Islamic Affairs officials, and included Saud Abdullah al-Ghudaian (Director General for Da'wah Abroad); Saleh bin Abdulaziz Al Ash-Shaikh (Minister); Majid Mohamed Mersal (Propagator); Adel Al Sadhan (Propagator); and Mutaeb Al Sudairy (Propagator).

Plaintiffs propose that a final deadline for completion of the depositions should be set only after the parties have first conducted several rounds of actual depositions, so that the deadline can be premised on practical experience of what is needed to conduct the depositions and the time required to do so. In addition, the outstanding issues concerning production of FBI documents must be resolved before the final rounds of depositions are conducted.[4] Accordingly, Plaintiffs proposed that, following the second round of depositions, the parties meet and confer to schedule the remaining depositions and hold a status conference with the Court to address the remaining schedule.

---

[2] Saudi Arabia claimed for the first time in a recent communication to Plaintiffs that Mr. Battikhi was not a former Saudi government employee. That is a disputed issue between the parties, but should not prevent moving forward with the deposition of Battikhi, who Plaintiffs believe is a current resident of California.

[3] Following this Court's August 27 Opinion, Saudi Arabia told Plaintiffs for the first time that Mr. Salloum would not voluntarily appear for his deposition. Saudi Arabia also admitted that Salloum told counsel that he would not appear last January, but that Saudi Arabia never informed the Court or Plaintiffs of that fact, and has not yet checked with Salloum after the August 27 Opinion to determine if he would agree to appear after his testimony was cleared by this Court. In addition, Plaintiffs brought a pending motion for reconsideration for the testimony of Mr. Salloum.

[4] Plaintiffs will be filing a separate application updating the Court concerning the FBI's belated productions, the pending motions, and the relevant documents that remain to be produced, many of which are not subject to any privilege claim.

Saudi Arabia's proposal to Plaintiffs was that all depositions "proceed by remote means." That is unacceptable. It is essentially the same proposal to conduct depositions in Saudi Arabia that the Kingdom previously demanded but that this Court rejected in its May 21 Order, which directed that depositions proceed in one of the "Presumptively Acceptable Locations."

Per the parties' agreement, Plaintiffs will respond to Saudi Arabia's proposal by this Friday, September 25, 2020. As Plaintiffs will address in further detail in that response, Saudi Arabia's proposal to conduct all depositions by remote means within 90 days would be manifestly unfair and transparently seeks to leverage the current health crisis to advantage the Kingdom. Such a proposal is logistically infeasible, would imperil the integrity of the deposition process and compromise the security of FBI protected material, and make it impossible for Plaintiffs to meaningfully question witnesses who are certain to be evasive and/or dishonest (as reflected by the fact that several lied to the 9/11 Commission). In-person depositions are feasible and should go forward.

Respectfully submitted,

KREINDLER & KREINDLER

*/s/ Steven R. Pounian*
Steven R. Pounian, Esquire
Andrew J. Maloney, Esquire
750 Third Avenue, 32nd Floor
New York, NY 10017

For the MDL 1570 Plaintiffs' Exec. Committee for Personal Injury and Death Claims

COZEN O'CONNOR

*/s/ Sean P. Carter*
Sean P. Carter, Esquire
1650 Market Street, Suite 2800
Philadelphia, PA 19103

For the MDL 1570 Plaintiffs' Exec. Committee for Commercial Claims

MOTLEY RICE

*/s/ Robert T. Haefele*
Robert T. Haefele, Esquire
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464

For the MDL 1570 Plaintiffs' Exec. Committee for Personal Injury and Death Claims