KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900
FACSIMILE:
(202) 326-7999

September 25, 2020

*Via ECF*

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

Re:   *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

      Defendant Kingdom of Saudi Arabia ("Saudi Arabia") respectfully submits this letter in response to the deposition proposal outlined in Plaintiffs' September 22, 2020 letter (ECF No. 6466). The proposal outlined in that letter, which would require mandatory in-person depositions in the United States or other locations outside of Saudi Arabia, impermissibly treads on Saudi Arabia's sovereign interest, ignores serious comity concerns, is unworkable during the current public health crisis, and would put the health of witnesses at great risk.

      Plaintiffs intend to depose at least 14 current and former government employees, including at least four employees with the rank of minister or ambassador, who reside outside the United States. It is unconscionable to suggest that these individuals should be required to travel abroad to sit for depositions in the United States or elsewhere. Even aside from the global pandemic, we are not aware of any instance – certainly Plaintiffs cite none – where a United States court has imposed such a requirement on government employees of a sovereign nation. Principles of "international comity" require this Court to "take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations," including that its current and former officials and employees reside abroad. *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for Southern Dist. of Iowa*, 482 U.S. 522, 546 (1987); *see also, e.g.*, *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 1995 WL 686715, at *9 (S.D.N.Y. Nov. 17, 1995) ("[P]rinciples of comity require that the burden of litigation imposed on the sovereigns be held to a minimum."). Comity concerns are even stronger here because the United States would never permit a foreign court to compel its officials – especially ones as senior as Cabinet members and ambassadors – to be deposed overseas in a foreign action.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Hon. Sarah Netburn
September 25, 2020
Page 2

      Even in an ordinary civil action in full merits discovery involving private litigants, foreign-based witnesses are not required to travel abroad for depositions. *See*, *e.g.*, *Probulk Carriers Ltd. v. Marvel Int'l Mgmt. & Transp.*, 180 F. Supp. 3d 290, 294 (S.D.N.Y. 2016); *Dagen v. CFC Grp. Holdings Ltd.*, 2003 WL 21910861, at *3-4 (S.D.N.Y. Aug. 11, 2003); *Six-West Retail Acquisition v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 107-08 (S.D.N.Y. 2001); *Snow Becker Krauss P.C. v. Proyectos E Instalaciones de Desalacion, S.A.*, 1992 WL 395598, at *3 (S.D.N.Y. Dec. 11, 1992). At least one district court order imposing such a requirement was set aside on petition for mandamus. *See In re Petition of Boehringer Ingelheim Pharm., Inc. & Boehringer Ingelheim Int'l GmbH, in Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 745 F.3d 216, 219 (7th Cir. 2014) (granting mandamus relief from a district court order requiring, as a sanction, a company to produce Germany-based employees, 10 of whom were German citizens, in the United States for deposition, noting "the risk of international complications arising from a U.S. judge's having ordered foreigners to be brought to the United States to be deposed").

      Plaintiffs' proposal is in any event impossible to implement during the current public health crisis. Plaintiffs suggest in-person depositions in New York. All of the foreign deponents reside in countries that are designated by the Centers for Disease Control and Prevention as "Level 3" countries indicating that "COVID-19 Risk Is High."[1] Residents of those countries visiting New York are required to stay in "mandatory isolation" for 14 days.[2] A mandatory quarantine requirement of 14 days also applies to Saudi Arabia's counsel who reside in states, such as Virginia.[3] Other potential U.S. locations – such as Washington, D.C. and Arizona – are no better. Washington, D.C. currently requires all individuals who travel from 29 "high-risk states" to quarantine for 14 days.[4] This includes California, where we understand all of the non-foreign based witnesses reside – Mana and Ibrahim are residents of California and Plaintiffs have represented that Batikhi lives there as well.[5] It also includes Arizona; thus to the extent any depositions are conducted in person in Arizona, D.C.-based counsel would be required to

---

[1] *See* https://www.cdc.gov/coronavirus/2019-ncov/travelers/map-and-travel-notices.html#travel-1.

[2] *See* New York State Dep't of Health, COVID-19 Frequently Asked Questions, at 7, https://coronavirus.health.ny.gov/system/files/documents/2020/04/doh_covid19_faqs_updated_041720_2.pdf; New York State, COVID-19 Travel Advisory, https://coronavirus.health.ny.gov/covid-19-travel-advisory.

[3] *See* https://coronavirus.health.ny.gov/covid-19-travel-advisory.

[4] https://coronavirus.dc.gov/release/dc-health-releases-updated-list-high-risk-states-sept8.

[5] California is currently under a stay home order. In addition, international travelers to California are subject to a 14-day quarantine. *See* https://covid19.ca.gov/stay-home-except-for-essential-needs/.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. Sarah Netburn
September 25, 2020
Page 3

quarantine for two weeks upon their return home.  It is not logistically feasible to conduct depositions under these conditions.

The international locations suggested by Plaintiffs are equally untenable.  The other presumptive deposition locations identified by the Court are London, Madrid, and Rome.  As set forth in Saudi Arabia's September 22, 2020 letter, Italy and Spain are generally not open to residents of the United States or Saudi Arabia.[6]  The United Kingdom requires travelers from the United States and Saudi Arabia to quarantine for 14 days.[7]

Given quarantine or isolation requirements, witnesses would need to set aside roughly *3 weeks* for their stay in the United States, and be subject to additional quarantine requirements upon their return home – putting both their government responsibilities and their personal lives on hold.[8]  Plaintiffs have cited no precedent for imposing such a burden.

Most fundamentally, though, Plaintiffs are willfully asking this Court to put the health of the witnesses at great risk.  They are seeking an order requiring the government witnesses – nearly all of whom are advanced in age[9] – to travel internationally during a global pandemic.  Several witnesses who are current government employees have already expressed to counsel that they are understandably unwilling to travel for depositions during this pandemic.  Saudi Arabia also can make no guarantee that former employees – who are under no obligation to testify at all – will voluntarily agree to testify if such a drastic and unwarranted requirement is imposed.  Under Plaintiffs' self-serving proposal, their counsel may remain safely at their homes in the New York City area, leaving only to attend what they suggest will be a socially distanced deposition at which they can wear face coverings.  But the witnesses will have to spend many hours of public travel, including at least 12 hours on a plane each way, live in hotels for extended periods, and will not be permitted to wear face coverings during such depositions.[10]

---

[6] *See* https://www.esteri.it/mae/en/ministero/normativaonline/decreto-iorestoacasa-domande-frequenti/focus-cittadini-italiani-in-rientro-dall-estero-e-cittadini-stranieri-in-italia.html; https://es.usembassy.gov/covid-19-information/.

[7] *See* https://www.gov.uk/uk-border-control.  To the extent United States and Saudi Arabia residents are permitted to travel to Italy, they must also quarantine for 14 days.  https://it.usembassy.gov/covid-19-information/.

[8] *See* https://sa.usembassy.gov/u-s-citizen-services/covid-19-information/.

[9] Centers for Disease Control & Prevention, *Travel During the COVID-19 Pandemic*, (updated Sept. 17,2020), https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-during-covid19.html ("older adults . . . are at increased risk for severe illness from COVID-19.")

[10] *See id.* ("Travel increases your chance of getting and spreading COVID-19.  **Staying home is the best way to protect yourself and others from COVID-19.**"); U.S., Envtl. Prot. Agency, *Indoor Air and Coronavirus (COVID-19)*, https://www.epa.gov/coronavirus/indoor-air-

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Hon. Sarah Netburn
September 25, 2020
Page 4

There is a feasible, less burdensome, safer, and more efficient path forward – remote video depositions. The parties in this MDL proceeding have conducted numerousl video depositions, including those involving Arabic simultaneous translation.[11] All of these depositions have proceeded seamlessly with no complaints raised to the Court. Indeed, the Court's May 11, 2020 Order contemplated proceeding by video depositions, stating that location of depositions will be "[s]ubject to public health concerns." ECF No. 6204, at 2. The Court has reiterated that video depositions are appropriate on numerous occasions. *See* ECF No. 6274, at 146:9-17. Because the current public health crisis is worse now than in May when the Court issued its Order, and shows no signs of abating,[12] video depositions are the only feasible path forward.

Plaintiffs have never adequately explained why video depositions would be inappropriate here. Their blanket claims (at 4) that such depositions are "logistically infeasible" and that they would "imperil the integrity of the deposition process" are belied by the fact that the parties have already successfully used video depositions in this MDL proceeding. Courts have recognized even before the present crisis that video testimony is an acceptable alternative to in-person testimony when circumstances require. *See Warner v. Cate*, 2015 WL 4645019, at *1 (E.D. Cal. Aug. 4, 2015) ("Because a witness testifying by video is observed directly with little, if any, delay in transmission, . . . courts have found that video testimony can sufficiently enable cross-examination and credibility determinations, as well as preserve the overall integrity of the proceedings."); *FTC v. Swedish Match N. Am., Inc.*, 197 F.R.D. 1, 2 (D.D.C. 2000) (finding "no practical difference between live testimony and contemporaneous video transmission"). Moreover, this firm has and continues to conduct remote depositions during the global health crisis. One deposition vendor that we have used, Veritext, reports that it is currently hosting 300-400 virtual depositions per day.

Plaintiffs' additional claim that virtual depositions would "compromise the security of FBI protected material" is unsupported – as well as inconsistent with Plaintiffs' previous extensive use of FBI protected material during a prior video hearing with the Court. The video and exhibit platform that we have used is encrypted and password protected, among other

---

and-coronavirus-covid-19 ("In addition to close contact with infected people and contaminated surfaces, there is a possibility that spread of COVID-19 may also occur via airborne particles in indoor environments, in some circumstances beyond the 2 m (about 6 ft) range encouraged by social distancing recommendations.").

[11] Remote depositions have been conducted of Adnan Basha, Ibrahim Anwar Ibrahin, and Abdulhadi Daguit.

[12] *See* Ted Mann & Talal Ansari, *Fresh Surge in Covid Cases Feared As Death Toll Nears 200,000*, Wall St. J., at A3 (Sept. 22, 2020).

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Hon. Sarah Netburn
September 25, 2020
Page 5

protections.[13]  Moreover, prior video depositions in this MDL also involved sensitive documents that had been designated as confidential.  The same is true of dozens of virtual depositions in other cases that this firm has been involved with since the pandemic.

Plaintiffs' claim (at 4) that they cannot "meaningfully question witnesses" by video is baseless.  As stated above, video depositions are now common, accepted practice.  Several courts have even conducted virtual trials.[14]  There is no impediment to questioning witness over video in the same manner as if they were in person.  *See*, *e.g.*, *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002) (even in fraud case where "demeanor evidence is important," holding that "videotaped depositions . . . could afford the jury an opportunity to assess the credibility of [foreign] witnesses").  Plaintiffs, who are sophisticated litigators, must know all of this.  Indeed, it is hard to see any legitimate reason for their insistence that all depositions should take place in person – which, at the present time, cannot happen.

The Court should also disregard Plaintiffs' closing remark (at 4) that in-person depositions are required because the witnesses "are certain to be evasive and/or dishonest."  It is unprofessional and improper for counsel to attack the characters of witnesses they have never met or spoken with in this manner, or to suggest that the Court presume in advance that those witnesses will lie under oath.  What Plaintiffs really anticipate is that the witnesses' truthful testimony will provide no evidentiary support for their unsubstantiated allegations, just as two years of written jurisdictional discovery have failed to do.  Prompt completion of discovery using the well-accepted means of video deposition is the best way to proceed to the fact-finding process that will finally bring closure to this case.

---

[13] https://info.veritext.com/rs/239-INX-871/images/Remote%20Deposition%20-%20Security%20Guide.pdf.

[14] *See*, *e.g.*, *Gould Electronics Inc. v. Livingston Cty. Road Comm'n*, -- F. Supp. 3d --, 2020 WL 3717792, at *3-6 (E.D. Mich. June 30, 2020) (conducting trial by videoconference due to COVID-19, rejecting objection "that the parties' ability to cross-examine witnesses, and the Court's ability to effectively evaluate witnesses' credibility, will be impaired by conducting the proceedings via videoconference"); *Argonaut Ins. Co. v. Manetta Enters., Inc.*, 2020 WL 3104033, at *2-3 (E.D.N.Y. June 11, 2020) (similar); *see also*, *e.g.*, *Amtrust N. Am., Inc. v. KF&B, Inc.*, 2020 WL 4365280, at *1 (S.D.N.Y. July 29, 2020) ("[T]he current COVID-19 pandemic constitutes compelling circumstances and provides good cause to allow this trial to be conducted remotely through the use of telephonic and video conferencing solutions.").

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Hon. Sarah Netburn
September 25, 2020
Page 6

                                                Respectfully submitted,

                                                */s/ Michael K. Kellogg*

                                                Michael K. Kellogg
                                                *Counsel for the Kingdom of Saudi Arabia*

cc:    All MDL Counsel of Record (via ECF)