# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

September 25, 2020

The Honorable Sarah Netburn  VIA ECF
United States Magistrate Judge
Thurgood Marshall Courthouse
40 Foley Square, Room 430
New York, NY 10007

    Re:    *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

Plaintiffs respond to Saudi Arabia's September 22, 2020 Letter, ECF No. 6465.

**1.    In-person depositions can be held under this Court's May 2020 Order if Saudi Arabia works with Plaintiffs on suitable, agreed location(s) other than the Kingdom**

Saudi Arabia claims that Plaintiffs' proposal is "completely unworkable," KSA Letter at 4, but that is only because of the Kingdom's own refusal to work with Plaintiffs to agree on a reasonable plan. For reasons detailed below, in-person depositions are distinctively necessary in this complex, sui generis litigation. And despite the current pandemic, in-person depositions in this case are possible and can be conducted safely if the Kingdom joins with Plaintiffs to (1) choose an agreed, suitable location, and (2) follow a safety protocol.

The Kingdom's proposal ignores that this Court's May 2020 Order, ECF No. 6204, directed the parties to proceed, subject to public health concerns, with in-person depositions in one of four presumptive locations or an agreed location(s) — specifically rejecting the very proposal that the Kingdom repeats now to hold the depositions in Saudi Arabia. *Id.* at 3. The sole exception provided by that Order was that "Saudi Arabia may make an application to conduct the depositions of current high-ranking officials. . . at a different location." Saudi Arabia did not seek reconsideration or file an objection to that Order. In August 2018, this Court recounted the careful consideration that went into its determination to order depositions at the presumptive locations, and rejected efforts of various charity defendants to avoid giving testimony in-person, ordering them to appear for their depositions at one of the presumptive locations. ECF No. 4105. The disingenuous nature of the Kingdom's proposal is shown by the fact that it is identical to the position the Kingdom (and other defendants) previously demanded, and that this Court has repeatedly rejected.

Plaintiffs developed a safety protocol in consultation with Dr. Amesh Adalja for the depositions, and (based on the expert advice we received) proposed one of the four presumptive locations, New York, as the site for the depositions. Alternatively, Plaintiffs offered to discuss other available domestic or foreign locations. Saudi Arabia refused to consider any alternative. Earlier this month, however, the Kingdom itself separately issued a statement announcing that Saudi government officials "were free to travel abroad" as of September 15, 2020.[1] The website of Saudia

---

[1] Earlier this month, Reuters reported that the Kingdom's state news agency said "Saudi Arabia will partially lift its suspension of international flights as of Sept. 15 to allow 'exceptional categories' of citizens and residents to travel. . . ."

Airlines, the Saudi national carrier wholly owned by the Kingdom, shows that it is currently operating non-stop flights from the Kingdom to New York and Washington, and numerous other locations around the world.[2]

Depositions can proceed in New York or a variety of other locations. Saudi Arabia's claim that "New York currently requires a 14-day quarantine for. . . travelers. . . from Saudi Arabia" is wrong. The Kingdom cites outdated information from last April and overlooks that in August 2020, New York announced that it would follow the federal guidelines for international travelers established by the Centers for Disease Control. The CDC guidelines allow travelers from the Kingdom without any quarantine.[3]

At this time, the Court should, in accordance with its May 2020 Order, direct the parties to meet and confer on a plan for in-person depositions. Plaintiffs and their expert Dr. Adalja are ready to do the work necessary to allow the depositions to proceed.

**2.   In-person depositions of the Saudi government officials are essential**

Saudi Arabia's proposal that all depositions "proceed by remote means" is unacceptable, and seeks to exploit the current health crisis to overturn this Court's May 2020 decision and unfairly prejudice the Plaintiffs. There are compelling and unique reasons here why Plaintiffs must conduct these depositions in-person.[4]

*First*, the witnesses to be deposed are implicated in an extraordinary criminal investigation that the FBI and DOJ still describe as active. At least three of the deponents are main subjects of that investigation. Others are their co-workers who assisted their efforts and/or oversaw their work. These realities provide a compelling incentive for all of the witnesses to evade, dissemble, and lie, all the more so given that they reside in Saudi Arabia and have no concerns about exposure to a mere U.S. perjury or obstruction charge. For example, Saudi law enforcement officials sat with both Fahad al-Thumairy and Omar al-Bayoumi as they repeatedly gave false and deceptive answers at their 9/11 Commission interviews in Saudi Arabia.

---

and that the "[e]xceptional categories include public and military sector employees, diplomats and their families, those working for public or non-profit private sector jobs abroad, businessmen, patients who need treatment abroad, those studying abroad as well as people with humanitarian cases, and sports teams." In addition, the Kingdom announced that it would "scrap all travel restrictions on air, land and sea transport for citizens on Jan. 1, 2021." https://www.reuters.com/article/us-health-coronavirus-saudi-travel-idUSKBN2640OS.

[2] https://www.saudia.com/travel-with-saudia/book-with-us/flight-schedule. Our searches on the Saudia website showed that the airline was currently conducting weekly non-stop flights from Riyadh to New York; that as of October 23, 2020, it would resume daily Saturday – Wednesday flights; that it also operated scheduled non-stops from Riyadh to Dulles Airport in Virginia outside Washington; and had many flights to other foreign destinations.

[3] The current New York quarantine requirements, updated as of September 22, 2020, apply only to travelers from other states, and do not apply to international travelers. https://coronavirus.health.ny.gov/covid-19-travel-advisory?gclid=EAIaIQobChMIhoX9goaC7AIVkYTICh0CtAcREAAYASAAEgIj9PD_BwE. Foreign travelers are governed by federal guidelines set by the Centers for Disease Control, which at this time bar travelers from certain countries (but not Saudi Arabia), and do not impose a quarantine. https://www.cdc.gov/coronavirus/2019-ncov/travelers/from-other-countries.html.

[4] The Kingdom's statement that "Plaintiffs have never articulated why remote depositions are inappropriate here," KSA Letter at 3, is remarkable, as Saudi Arabia has long known Plaintiffs' precise position on these issues from discussions during numerous meet and confers.

It is critical for the depositions to go forward outside of Saudi Arabia and that Plaintiffs' counsel be in the room with the witnesses during their testimony to properly gauge the responses and see the actual circumstances under which the testimony is being given.[5]

*Second*, Plaintiffs anticipate that during the testimony the Kingdom's counsel will raise numerous objections, attempt to consult privately with the witnesses, and use various means to obstruct the questioning. We also anticipate that it will be necessary to obtain rulings from the Court during the depositions. In its initial submission on this issue, the Kingdom confirmed its own expectation that the Court will need to make rulings during the depositions.

*Third*, it will be impossible to properly secure the protected FBI information that must be transmitted to and from Saudi Arabia to conduct the depositions. The transmission of that material would subject it to surveillance by the Kingdom. Moreover, the FBI protective order does not allow access to the FBI information to foreign-based lawyers or others that the Kingdom will have present during the depositions. Remotely enforcing access to that information is, at best, uncertain.

*Fourth*, the PECs represent the interests of thousands of different clients, and necessarily must be together in the same room with each other and their experts to properly conduct the depositions. The Committee will need to coordinate instantaneously to properly respond uniformly to situations that will inevitably arise during the testimony. The kind of coordination necessarily cannot occur if the PECs are compelled to conduct the depositions remotely.

*Fifth*, the testimony will be entirely in Arabic, and will require a translator and the Kingdom's check translator(s). Plaintiffs anticipate that there will be disagreements between the official translator and the Kingdom's check translator(s). Based on the experience from the prior depositions, we anticipate that the translators will need to consult during the depositions with each other and counsel.

*Sixth*, Saudi Arabia does not clearly address key details, including the necessary arrangements for the court reporter, translator, and videographer, which are fraught with numerous difficulties. Using local contractors from the Kingdom is unacceptable to Plaintiffs because of potential biases and other risks to the proper conduct of the testimony and exhibits. Also, the Kingdom previously advised Plaintiffs that it planned to have its own Saudi-based counsel — a Yale and Harvard educated lawyer — present with the witnesses during their testimony. Given the fact that the Kingdom has reopened to international travel, the Kingdom's U.S. counsel and their entire litigation team may also plan to attend. The Kingdom's failure to honestly address these details underscores the fundamental unfairness of its proposal.

The cases the Kingdom cites about remote depositions, KSA Letter at 4, are clearly distinguishable as those cases involved the scheduling of routine civil depositions, and did not address any of the extraordinary considerations raised by this litigation that include the testimony of the Saudi government officials and their subagents.[6] Likewise, Saudi Arabia attempts to confuse

---

[5] Plaintiffs previously detailed to the Court various recent efforts made by high level Kingdom officials to conceal facts about the criminal activities of Kingdom officials in foreign countries, thwart international investigations of such criminal conduct, and obstruct the U.S. justice system to protect Saudi nationals. ECF No. 6033.

[6] *Joffe v. King & Spalding LLP*, 2020 WL 3453452, at *1 (S.D.N.Y. June 24, 2020) (on reconsideration of order cited by the Kingdom, court orders remote depositions of two non-party former law firm partners in employment termination case where "testimony is unlikely to be central to the case."); *Wilkens v. ValueHealth, LLC*, 2020 WL 2496001, at *2

the issue by citing cases that declined to order foreign witnesses to travel to the United States for their depositions under completely different circumstances. *Id.*[7] The Kingdom ignores this Court's May 2020 Order, which already decided the deposition location issue; relevant case law undergirding this Court's discretion and the propriety of its Order that the witnesses appear in New York[8]; and Plaintiffs' offer to discuss alternative foreign locations for the depositions (which the Kingdom rejected).

The Kingdom cites to several instances when Plaintiffs voluntarily agreed to conduct a remote deposition as a courtesy and after extraordinary consideration, based on the unique circumstances of specific witnesses (*e.g.*, a witness's need to care for an elderly parent, and another witness's inability to obtain a visa). KSA Letter at 3. In each case, Plaintiffs confirmed that their agreement should not be considered as a precedent. Those depositions were complicated, among other things, by the dramatic time zone differences, technical issues with the internet and real time connections, and document security. The approach to the merits and personal jurisdiction depositions confirms the criticality of in-person depositions. The overwhelming majority of the merits and personal jurisdiction depositions were conducted in-person, in Madrid or London. Plaintiffs' counsel would not have spent weeks overseas at tremendous expense if remote depositions were sufficient. They are not.

**3.     If the Kingdom does not alter its position against proceeding with in-person depositions at this time, the depositions must be deferred**

Plaintiffs want to proceed with in-person depositions now, but if the Kingdom's position remains unchanged, the depositions must be postponed. As discussed above, there is no fair way to properly conduct the depositions of Saudi government officials and their subagents remotely. If postponement is necessary, the deposition issue can be revisited in several months. In the meantime, no time will be wasted, as the parties have plenty of work to complete to advance this MDL litigation, including third-party declarations and depositions, completing the FBI's document production, and expert discovery as to the merits and jurisdictional defendants.

---

(D. Kan. May 14, 2020) (in Equal Pay Act case, "[d]efendants' general claims about stress on some of its companies related to COVID-19" did not justify denying Plaintiff's request for remote depositions); *Sinceno v Riverside Church in City of New York*, 2020 WL 1302053, at *1 (S.D.N.Y. Mar. 18, 2020) (remote depositions of fact witnesses in employment claim ordered without any apparent objection); *In re Broiler Chicken Antitrust Litig.*, 2020 WL 3469166, at *2 - 5 (N.D. Ill. June 25, 2020) (court rejects defendants' arguments to avoid remote depositions in antitrust case, including the difficulty of preparing witnesses, and the workload of the witnesses).

[7] *Dagen v. CFC Grp. Holdings Ltd.*, 2003 WL 21910861 (S.D.N.Y. Aug. 11, 2003), weighed the relevant factors and found that the cost, convenience, and litigation efficiency did not support a deposition in New York. *In re Petition of Boehringer Ingelheim Pharm., Inc. & Boehringer Ingelheim Int'l GmbH, in Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 745 F.3d 216 (7th Cir. 2014), found that the district court improperly ordered witnesses who were not officers, directors, or agents of the defendant to appear as a discovery sanction. By contrast, this Court has conducted the required discretionary balancing on multiple occasions, including consideration of the same factors and others based on the unique facts here, and consistently arrived at the determination that the depositions shall proceed at one of four presumptive locations or another agreed location.

[8] *See, e.g., Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 550 (S.D.N.Y. 1989) (ordered depositions of foreign defendants to be conducted in New York); *Doe v. Karadzic*, 1997 WL 45515, at *3 (S.D.N.Y. Feb. 4, 1997) (foreign defendant ordered to submit to deposition in New York); *Livent, Inc. Secs. Litig.*, 2002 WL 31366416 (S.D.N.Y. Oct. 17, 2002) (ordering corporate witnesses to appear in New York from Canada); *see also* ECF No. 6003 at 4-5 and attachments; ECF No. 3710 at 2-10, summarizing the arguments, case law, and relevant factors

**4.      No deadline should be set until the parties gain key practical information**

Saudi Arabia's deadline proposal repeats arguments for the same deadline this Court rejected in its May 2020 Order, fails to take into account the actual logistics of the depositions or the complexity of this case, and invites the Kingdom to delay and obstruct. As set forth in Plaintiffs' proposal, the PECs need at least 45 days to consult with each other and their experts to organize and make necessary preparations before the first deposition round. This Court's order provides for 40 depositions, including 25 Kingdom witnesses and 15 non-party witnesses. Given the time allotted both parties to question, at least two (and possibly three) days need to be scheduled for each deposition, based on the need for translations, objections, disputes, and likely cross-examination. Some depositions, such as those of Bayoumi, Thumairy, and Musaed al-Jarrah, will require more time. For 40 witnesses, that amounts to 80 to 100 deposition days, without accounting for weekends/holidays (and holy days), preparation time, addressing inevitable disputes, and the other ongoing work in the litigation.[9]

**5.      Non-party depositions**

Plaintiffs plan to take in-person depositions of certain third party witnesses once we determine a schedule for the Saudi government witnesses. Plaintiffs are also working to obtain declarations from various non-party witnesses. For instance, Plaintiffs are attempting to obtain declarations from certain educational institutions rather than hold depositions (which the Kingdom would seek to count against the Plaintiffs' allotted depositions). Also, Plaintiffs are negotiating with the DOJ to get declarations from certain FBI and other government witnesses.

**6.      Saudi Arabia is not entitled to Plaintiffs' work product in advance of the depositions**

The Kingdom's motion for a protective order was decided in this Court's August 27, 2020 Order, which considered specific examples and defined the parameters for questioning certain witnesses under the Vienna Convention. Saudi Arabia did not move for reconsideration or file objections to that Order. Nevertheless, it now makes a new, unsupported demand that Plaintiffs share their "specific topics for examination" with the Kingdom ahead of the depositions. This is a blatantly improper attempt to obtain Plaintiffs' work product to prepare the witnesses. The Kingdom cites no case law or any other support for its request. If and when disagreements arise during the deposition, the attorneys must first try to resolve them, and if (and only if) that proves impossible, the parties can seek a Court ruling. The Kingdom's proposal would invite more (not fewer) disputes and needlessly adds to the burden of the parties and the Court to address issues before they are ripe. Any additional specific objections that the Kingdom wanted to resolve prior to the deposition should have been raised in its prior motion.

---

[9] Saudi Arabia's insistence on setting a deadline before the parties have actual practical experience in conducting these depositions makes no sense. A deadline would essentially invite the Kingdom to delay and obstruct the process to run out the clock, while imposing an improper burden on Plaintiffs to seek necessary extensions. The Kingdom treats this case as a routine tort matter, and ignores the extraordinary discovery issues that continue to occupy the time of the Court and the parties, including the significant difficulties over the non-party depositions of Akram Alzamari and Mohdar Abdullah, and the motion practice over document production and witnesses involving the Kingdom and third parties, most notably the FBI.

Respectfully submitted,

| KREINDLER & KREINDLER | MOTLEY RICE |
|---|---|
| */s/ Steven R. Pounian* | */s/ Robert T. Haefele* |
| Steven R. Pounian, Esquire | Robert T. Haefele, Esquire |
| Andrew J. Maloney, Esquire | 28 Bridgeside Boulevard |
| 750 Third Avenue, 32nd Floor | Mt. Pleasant, SC 29464 |
| New York, NY 10017 | |
| For the MDL 1570 Plaintiffs' Exec. Committee for Personal Injury and Death Claims | For the MDL 1570 Plaintiffs' Exec. Committee for Personal Injury and Death Claims |

COZEN O'CONNOR

*/s/ Sean P. Carter*
Sean P. Carter, Esquire
1650 Market Street, Suite 2800
Philadelphia, PA 19103

For the MDL 1570 Plaintiffs' Exec. Committee for Commercial Claims