UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE TERRORIST ATTACKS ON :           03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001
                                                                   :

**This Document Relates To:**
*Havlish, et al. v. bin Laden, et al.*, Case No. 03-CV-09848
*Ashton, et al. v. al Qaeda Islamic Army, et al.*, Case No. 02-CV-06977
*Burnett, Sr., et al., v. Islamic Republic of Iran,* Case No. 15-CV-9903
*Burlingame, et al. v. bin Laden, et al.,* Case No. 02-CV-07230
*Bauer, et al. v. al Qaeda Islamic Army, et al.,* Case No. 02-CV-07236
*O'Neill, Sr., et al. v. Republic of Iraq, et al.,* Case No. 04-CV-1076
*Federal Insurance Co., et al. v. al Qaida, et al.*, Case No. 03-CV-06978
----
*All other cases against the Islamic Republic of Iran*

**OPPOSITION OF PLAINTIFFS' EXECUTIVE COMMITTEE FOR WRONGFUL DEATH AND PERSONAL INJURY CLAIMS TO *HAVLISH COUNSEL'S* "EMERGENCY" MOTION FOR INJUNCTIVE RELIEF [ECF Nos. 6448-6449]**

MOTLEY RICE LLC

JODI WESTBROOK FLOWERS
DONALD A. MIGLIORI
ROBERT T. HAEFELE
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com
*For the Plaintiffs' Exec. Committee for Wrongful Death And Personal Injury Plaintiffs*

KREINDLER & KREINDLER LLP

JAMES P. KREINDLER
ANDREW J. MALONEY
KREINDLER & KREINDLER LLP
750 Third Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: amaloney@kreindler.com
*For the Plaintiffs' Exec. Committee for Wrongful Death And Personal Injury Plaintiffs*

ANDERSON KILL P.C.
JERRY S. GOLDMAN
ANDERSON KILL P.C.
1251 Avenue if the Americas
New York, New York 10020
Tel.: 212-278-1000
Email: jgoldman@andersonkill.com
*For the Plaintiffs' Exec. Committee for Wrongful Death And Personal Injury Plaintiffs*

**TABLE OF CONTENTS**

1. As this Court Previously Held, there is No Good Cause to Restrain Distribution of VSST Fund Recoveries; *Havlish* Counsel Have Shown Neither a Protectable Interest in any Fees Nor Any Irreparable Harm that Could Justify Their Demand ........................ 2

2. *Havlish* Counsel Refuse to Comply with this Court's September 30, 2019 Order and, Accordingly, Cannot Demonstrate a Likelihood of Success on the Merits of their Underlying Motion ................................................................................................................. 6

3. Because *Havlish* Counsel's Summary of 23,591.94 Hours is Unsupported and Unsupportable, They Cannot Show a Likelihood of Success on the Merits ...................... 8

4. *Havlish* Counsel's Request for Documentation Should, Likewise, Be Denied .................. 12

5. Conclusion ......................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Andino v. Fischer*, 555 F.Supp.2d 418 (S.D.N.Y. 2008) ........................................................... 3

*JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75 (2d Cir. 1990) ......................................... 5

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) ............................................................................ 3

*Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506 (2d Cir. 2005) ................................. 3

*Sussman v. Crawford*, 488 F.3d 136 (2d Cir. 2007) ............................................................. 3, 12

*Weaver v. Schiavo*, 750 F. App'x 59 (2d Cir. 2019) .................................................................. 3

**Statutes**

34 U.S.C. § 20144 .............................................................................................................. 3, 4, 5

This Court should deny with prejudice the *Havlish* counsel's "emergency" request for a restraining order on certain funds that firms comprising the Plaintiffs' Executive Committee for Wrongful Death and Injury Plaintiffs ("PEC") will obtain for their clients from the United States Victims of State Sponsored Terrorism ("VSST") Fund. This Court already rejected this very request and the current demand for relief is – just as it was previously – unwarranted and improper.

This Court should reject *Havlish* counsel's motion because: (1) it previously denied *Havlish* counsel's request to escrow funds, nothing justifies a different result now, and (as before) *Havlish* counsel have neither shown a protectable interest in any fees nor articulated any irreparable harm that could justify the restraints they demand; (2) *Havlish* counsel have refused to comply with this Court's September 30, 2019 Order; and (3) *Havlish* counsel's summary of the 23,591.94 hours it claims were necessary to procure a non-adversarial judgment against the Islamic Republic of Iran ("Iran"), a single defaulting defendant, is unsupported and unsupportable. The Court should also reject *Havlish* counsel's separate burdensome and unnecessary demand for an accounting of VSST awards and fees, when they have not yet established their entitlement to fees or that the information sought bears any relevance to any fee that the Court may ultimately award them.[1]

---

[1] *Havlish* counsel's application is also overly broad, ignoring the Court's specific exclusion from its September 30, 2019 Order of *Federal Insurance* plaintiffs and other plaintiffs who have Iran judgments but, for whatever reason, are ineligible or have otherwise not filed claims with the VSST Fund. ECF No. 5180 at 7. Indeed, to the extent that a respondent has received no funds from the VSST Fund, no fees yet exist that could be escrowed. For example, the *Federal Insurance* plaintiffs have received no funds from the VSST Fund in any round and plaintiffs represented by Anderson Kill received no funds in rounds 1 or 2. Thus, in addition to the reasons that compel denial of the "emergency" motion generally, the *Havlish* counsel's logic as to Anderson Kill and similarly situated firms is particularly flawed. *See* ECF 6449 at 4-5.

This latest effort is a distraction to the Court and the PECs, who are working diligently to advance the case against parties who have appeared and are vigorously defending themselves and is nothing more than a diversion from its own failure over the past year to comply with this Court's order that they provide documentation of the reasonable time that might have been spent in furtherance of any common benefit work they performed to obtain the initial default judgment against Iran.

1. **As this Court Previously Held, there is No Good Cause to Restrain Distribution of VSST Fund Recoveries;** *Havlish* **Counsel Have Shown Neither a Protectable Interest in any Fees Nor Any Irreparable Harm that Could Justify Their Demand**

Though *Havlish* counsel make no mention of it, in January 2019, this Court rejected their request to restrain recoveries that they expected the Responding Plaintiffs to obtain from the VSST Fund, finding that *Havlish* counsel had "not established good cause for such a restraint." ECF No. 4371 (denying request made in ECF No. 4292 at 24-28). *Havlish* counsel never asked the Court to reconsider that decision. Nothing material has changed since this Court first denied their request for injunctive relief and the newest *Havlish* motion, supported by no attorney declaration or other sworn statement, should be denied.[2]

As a threshold matter, no decision on the current motion should be made before resolution of the pending motion to reconsider the September 30, 2019 Order. *See* ECF No. 5361 *et seq*. Even, however, if this Court were to decide the most recent *Havlish* motion at this

---

[2] Despite attaching materials to their notice of motion, nothing attached was new, supports treating their application as emergent, or was part of any sworn statement. Their latest motion is not an "emergency" when they have no new facts to support a renewed application to restrain any recoveries; when they have declined—for nearly a year—to comply with the disclosures the Court ordered in its September 30, 2019 Order (ECF No. 5180); and where the VSST Fund has always stated publicly that it expected to make payments in 2020. Having long known that the VSST would make payments in 2020, the timing of their application was of their own election.

time, the movants have again failed to provide any evidence that could support the heavy burden of persuasion they bear when seeking injunctive relief such as a restraint on any portion of the distribution of VSST Fund recoveries.[3]

*Havlish* counsel have not—and cannot—meet the standard necessary to impose the requested restraint.  To restrain the PECs, they must have "demonstrated (1) that [*Havlish* counsel] will suffer irreparable harm absent injunctive relief, and (2) either (a) that [they are] likely to succeed on the merits, or (b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party."[4] *Weaver v. Schiavo,* 750 F. App'x 59, 60 (2d Cir. 2019) (quoting *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005)).  This sort of relief, particularly before a determination on the underlying merits, "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing,* carries the burden of persuasion." *Sussman v. Crawford,* 488 F.3d 136, 139–40 (2d Cir. 2007) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997)) (emphasis in original). *Havlish* counsel cannot meet this stringent standard.

---

[3] *Havlish* counsel's reference to the values of judgments other plaintiffs may have received from the VSST Fund is speculative and misleading, as they ignore the substantial reduction in judgment value that the VSST Fund imposes.  *See* ECF No. 6449 at 4-6; ECF No. 6448-1.  In their numbers, *Havlish* counsel suggest inflated VSST Fund awards by neglecting to account for the caps on recoveries that the enacting statutes impose on the family members of those killed on September 11, 2001.  *See* 34 U.S.C. § 20144(d)(3)(A)(ii).  The USVSST Clarification Act imposes a collective limit on all judgments issued to a 9/11 victim's estate, spouse and dependents and separate collective limit on all judgments issued to other immediate family members of a 9/11 victim, as well as a cap on any individual judgment. *Id.*

[4] The standard for granting a temporary restraining order and a preliminary injunction are identical. *Andino v. Fischer,* 555 F.Supp.2d 418, 419 (S.D.N.Y. 2008) ("It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction.").

First, *Havlish* counsel have no protectable interest. This Court has not awarded *Havlish* counsel any fees; *Havlish* counsel have not renewed that portion of their motion seeking a contribution to a fund that this Court denied in the September 30, 2019 Order; they never filed Rule 72 objections to that Order; and even to the extent that that Order *potentially* entitles them to fees in the future, the PECs' motions to reconsider that Order are still pending. Further, in the September 30, 2019 Order, the Court explicitly instructed *Havlish* counsel to "come forward with additional evidence before the Court can assess a common benefit fee," ECF No. 5180 at 12, which they have not done. Under these circumstances, *Havlish* counsel have shown no protectable interest in the recoveries other firms will receive from the VSST Fund and have therefore not carried their burden of persuasion by a "*clear showing*" that they are likely to succeed and be awarded all of the attorneys' fees associated with VSST Fund recoveries, which is the injunctive relief they now seek.[5]

Second, *Havlish* counsel have offered no argument, let alone one that persuasively makes a "*clear showing*," that they will suffer irreparable harm if the Court denies their motion to restrain distributions. As the Second Circuit has held, "it is settled law that when an injury is

---

[5] In addition to having no protectable interest in *any* fee, the *Havlish* counsel's motion is also excessive by their own standards. In their original fee motion, in 2016, *Havlish* counsel sought 8% of recoveries from cases in *Ashton*, *Federal Insurance*, and *O'Neill*, *see* ECF No. 3309 at 6, 3322 at 1, which the Court rejected. *Id.* In their 2018 renewed motion, they increased their demand to 12% from those three cases and 10 other cases. ECF No. 4289 at 2. In November 2019, Congress amended the VSST regulations, imposing a cap of 15% on combined attorneys' fees and expenses. 34 U.S.C. § 20144(f)(1). Now, though *Havlish* counsel acknowledge that "a downward adjustment of [the] proposed fee request may be appropriate" in light of the fee cap, and suggest that they are seeking half of all other attorneys' fees (*see* ECF No. 6449 at 7 fn 11), they nevertheless seek to enjoin the *entirety* of attorneys' fees from the forthcoming VSST Fund awards in all cases against Iran, even in the case of those firms, such as Anderson Kill which did not receive *any* fees or expenses in Rounds 1 or 2. ECF No. 6448 at pp. 1-2 (". . . to place into escrow, a sum equal to the attorney fee portion of Respondents' Round 3 VSSTF awards")(emphasis added).

4

compensable through money damages there is no irreparable harm." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) (reversing district court's grant of preliminary injunction requiring defendant to deposit money in a trust account.). Any *potential* "injury" to *Havlish* counsel is compensable through money damages and, thus, they cannot show any irreparable harm. Additionally, should this Court order the Respondents to make payments toward a common benefit fund, *Havlish* counsel have not (and cannot) demonstrate any reason to believe that the Respondents would not comply with such an order.[6] While *Havlish* counsel incorrectly suggests that it is unlikely that the VSST Fund will make future distributions (ECF No. 6449 at 4), that is not relevant to the irreparable harm analysis.[7] The question is whether *Havlish* counsel have made a clear showing that the Respondents would not comply with an order directing them to contribute to a common benefit fund. They have not – because the Respondents, of course, would comply with any such final order. Having made no showing (let alone a clear one) that they will be irreparably harmed, *Havlish* counsel have failed to carry their

---

[6] That some fees may have been disbursed is immaterial to the question of whether Respondents will comply with a final order directing a payment into a common benefit fund. What *Havlish* counsel would need to show is that the Respondents would not satisfy their court-ordered obligations. They do not (and cannot) make such a showing because the very suggestion that the Respondents would ignore such an obligation is false. Further, *Havlish* counsel have not shown that the funds over which they demand that the Court exercise authority, but which are not a fisc before this Court, are subject to the Court's jurisdiction (distinct from authority to create a common benefit fund).

[7] *Havlish* counsel cite the VSST Fund website in asserting that there is "no indication when, if ever" the Fund will make future distributions. That is misleading and the suggestion that there will be no future payments is unsupportable. ECF No. 6449 at 3-4. The governing statutes require that monies from criminal and civil federal enforcement actions must be transferred to the VSST Fund. 34 U.S.C. § 20144(e)(2)(A)(i)-(ii) (requiring all criminal funds and sale proceeds paid to federal government as criminal penalty for violation of certain trade sanctions and seventy-five percent of all such civil penalties "shall be deposited or transferred into the Fund… .") The Fund itself has said that it "continues to work diligently to identify matters that qualify for deposit." *See* usvsst.com last accessed 9/25/2020. Thus, "[w]hen sufficient funds are available, the Special Master will be able to authorize the next round of payments by January 1, in 2022 or in subsequent years, until the VSST Fund sunsets in 2030." *Id.*

5

substantial burden in seeking injunctive relief and their so-called "emergency" motion should be denied.

> **2. *Havlish* Counsel Refuse to Comply with this Court's September 30, 2019 Order and, Accordingly, Cannot Demonstrate a Likelihood of Success on the Merits of their Underlying Motion**

Contrary to this Court's directive, *Havlish* counsel have not meaningfully met and conferred with the PECs nor provided "adequate documentation for the time and expense incurred in obtaining the Original Default Judgment" – information that the Court identified as essential for any fee award – and their current motion should be denied on this basis, as well. *See* ECF No. 5180 at 3.  Without having satisfied their obligation to meaningfully confer and produce the required documentation supporting their claim for time and expenses, *Havlish* counsel have failed their burden of showing that they are likely to succeed on the merits of their underlying motion.

In the September 30, 2019 Order, this Court specifically noted that *Havlish* counsel's "lack of time records is particularly problematic when the requested fee is excessive, which may be the case here," ECF No. 5180 at 12, and ordered the parties to meet and confer.  *Id*.  The topics the parties were to discuss included (1) the need, if any, for limited discovery; (2) the kinds of documents that constitute reasonable proof of the *Havlish* counsel time and expenses; and (3) the propriety of reserving decision on the size of the common benefit fund fee until parties were notified of the amounts they would recover through the VSST Fund's third round payments. *Id.* at 12-13.

On October 2, 2019, just two days after the Order, the PECs in good faith invited *Havlish* counsel to a meet-and-confer and, to make the meeting productive, asked them to provide

> contemporaneous time records relating to the claimed common benefit work for which you are seeking fees; (b) any other documents you intend to rely on to support your claim for fees and description of work-hours; and (c) all documentation supporting expenses

> you claim were incurred in connection with that work. If you do not have contemporaneous time records, please so state.

Exhibit A to Declaration of Andrew J. Maloney ("Maloney Decl."), October 2, 2019 Email and Letter. *Havlish* counsel did not produce those materials, but the PECs nevertheless proceeded with that meeting, which took place on November 5, 2019. *See* Maloney Decl. at ¶ 2-4. During the meeting, the PECs again asked *Havlish* counsel for records substantiating the time and expenses necessary to obtain the default judgment. *See* Maloney Decl. at ¶ 3. They refused to do so. *Id*. Then, subsequent to that meeting, the PECs yet again sought this information, explaining that it needed the back-up documentation of *Havlish* counsel's collective investment in obtaining the default judgment against Iran, both time records and out-of-pocket expenditure). *Id.* at ¶ 5. *Havlish* counsel, however, refused to produce the information absent a "mutual[] exchange" of information and demanded that PECs produce time and expense records of all attorneys for the Iran judgment holders, the total amount of recovery to date, and total fees for those collections. *Id.*

Over the ten months since that correspondence, *Havlish* counsel have made no other meaningful efforts to meet and confer on the three points in the September 30, 2019 Order.[8] Instead, they have filed frivolous discovery demands against the PECs, distracting the PECs from the substantial liability work against appearing defendants, and then very recently made the

---

[8] *Havlish* counsel's specious argument that the PECs ignored the August 31, 2020 email requesting a duplicative meet-and-confer or feedback on their wholly inadequate 10-line "time summary" for 23,511.24 attorney and paralegal hours, demonstrates their inattention to the calendar and the MDL docket. That same time period included a national holiday (Labor Day), preparation of multiple briefs by the PECs, and recognition of the nineteenth anniversary of the September 11 Attacks, which involved heightened client communications and other demands surrounding the remembrance. *Havlish* counsel also ignore that, during that same period, *Havlish* counsel did communicate directly with certain counsel for the PECs, but never raised the issue during that communication. Their motion was filed immediately thereafter.

7

risible assertion that more than 23,000 hours or attorney work time was necessary and reasonable in obtaining a default judgment. They did so first in a 10-line attachment to an August 31, 2020 email request for an additional meet-and confer on an unspecified topic, but presumably to address the same issues the parties covered in their November 5, 2019 meeting. The attachment showed only:

|   | A | B |
|---|---|---|
| 1 | **FIRM** | **TOTAL HOURS** |
| 2 | Wiggins Childs | 9298.65 |
| 3 | Mellon Webster | 8272.8 |
| 4 | Ramey & Hailey | 1720.4 |
| 5 | Foote Mielke | 136.5 |
| 6 | Hogan Terrell Yegelwel | 280.7 |
| 7 | Walter S. Batty, Jr. | 232.24 |
| 8 | Lamm Rubenstone | 853.8 |
| 9 | Winder & Counsel | 1384.35 |
| 10 | Burbidge & Mitchell | 1331.8 |
| 11 | **TOTAL** | **23511.24** |

*See* Exhibit B to Maloney Decl. They then expanded that document to four-pages, with entries coming to 23,59194, or 80.7 hours more than they had listed in their August 31, 2020 summary. *See* ECF No. 6448-2. This evasion of their responsibilities to produce meaningful documentation of the reasonable time spent in procuring a default judgment is yet another reason to deny the most recent *Havlish* motion.

    **3. Because *Havlish* Counsel's Summary of 23,591.94 Hours is Unsupported and Unsupportable, They Cannot Show a Likelihood of Success on the Merits**

To meet their burden in demonstrating the need for the restraint they have requested, *Havlish* counsel must demonstrate they are likely to succeed on the merits—that is, they must show that their claim for fees association with 23,591.94 hours of work will likely support their

8

demand for the portion of recoveries they now seek.  But their failure to produce any reasonable support for their fees or expenses dooms that likelihood.

In its September 30, 2019 Order, the work that the Court identified as arguably justifying a common benefit fee included

> (1) overseas travel; (2) sworn videotaped testimonies of four Iranian witnesses, including the first president of Iran; and (3) ten expert affidavits in the fields of terrorism, intelligence, criminal investigation, and the structural aspects of the Iranian government.  The *Havlish* attorneys complied this information into a formal motion for default judgment, submitting three memorandum of law and nearly 100 exhibits.

ECF No. 5180 at 9 (summarizing *Havlish* counsel's submissions).  After an uncontested one-half day hearing, Judge Daniels adopted proposed findings of fact and conclusions of law and entered a final judgment as to liability against not only Iran, but fourteen other sovereign defendants and four other non-sovereign defendants. *Id.* at 10-11; *see also* 03-cv-9848 (S.D.N.Y.), ECF No. 295.  The overseas travel, testimony, affidavits, memoranda of law and exhibits concerned not only Iran, but those eighteen other defendants, as well – none of whom are the subject of the underlying *Havlish* motion for common benefit fees, as any work concerning those other defendants conferred no conceivable benefit on the PECs.

As this Court noted about their claimed work, "the *Havlish* Plaintiffs failed to provide adequate proof of their time and expenses." ECF No. 5180 at 12.  The Court also observed that in denying a prior *Havlish* motion, "Judge Maas emphasized that neither party had submitted contemporaneous time records documenting the hours they spent obtaining default judgments against Iran, 'despite the fact that courts often rely on such information in determining the common benefit fee.'" *Id.* (internal citations omitted).  The absence of such time records was "particularly problematic," this Court wrote, "when the requested fee is excessive, which may be the case here," where "there are concerns that the work performed by the *Havlish* attorneys was

9

unnecessary, duplicative, and otherwise available from public sources." *Id.*  Thus, and because "a fee applicant's lodestar is often used to cross-check the reasonableness of the percentage fee award," the Court ordered *Havlish* counsel to "come forward with additional evidence" of their time and expense.

Now, *Havlish* counsel have made the astonishing claim that their work – travel, four witness statements, ten expert affidavits and an unopposed motion for default with exhibits followed by an uncontested hearing against a defaulting defendant – warranted 23,591.94 hours of time. ECF No. 6448-2.  In doing so, they first offered a 10-line chart to the PECs and then, later, inventoried names and hours of various "timekeepers" in a two-page chart.  But neither version provides any description of the work allegedly performed or the date on which it was allegedly incurred.  Neither version identifies any "timekeepers'" by title (*e.g.*, attorney, paralegal, or some other employee) nor offers any contemporaneous records supporting the time claims (or any other back-up documentation). *See* ECF No. 6448-2.[9]  And nowhere at all have *Havlish* counsel sought to support any of their expenses.

*Havlish* counsel's February 27, 204 status update (ECF No. 3273-2) further undermines the credibility of their current application.  In that update (*id.* at 5-6), they claimed that as of then

---

[9] Vagaries and discrepancies in and between the two summaries beg further analysis and clarification.  Examination of the two summaries suggests that *Havlish* counsel have sought to amalgamate time compilations for all counsel and staff at various firms for any work, regardless of the nature of the work.  In some instances, they have not even delineated specifically which "timekeeper" is alleged to have done work (*see, e.g.*, entries for "LZ," "Law Clerks," "Firm" and for "Rich Hailey/Mary Beth Ramey").  In other cases, multiple entries identify the same "timekeeper." (*See, e.g.*, "Edward Rubenstone," listed three times at rates varying between $300 per hour and $375 per hour; "Don Winder," listed six times at six rates varying between $230 and $395 per hour; "Richard Burbridge," listed five times in a row at five rates between $275 and $500 per hour; "Jerry Hale," listed five times at four rates between $225 and $295 per hour, as well as other duplicated names).  Absolutely no information even suggests what work was performed for any given day, or any given moment, as to any "timekeeper".  ECF No. 6448-2.

(less than two and a half years after the 9/11 Attacks) they had already "expended approximately 10,000 attorney hours and in excess of a half million dollars" in engaging "leading academic and diplomatic experts to assist in the development of the factual and legal bases of their claims." *Id*. At the same time, *Havlish* counsel stated that they were ready to "shortly seek a hearing to establish liability against [Iran and Iraq]." *Id*. at 6. Apparently, however, *Havlish* counsel then spent an additional 13,591 hours before doing so. Having failed to provide any justification for the extraordinary hours it claims were necessary (such as explaining why, even if about to move for a default hearing against Iran after 10,000 hours of work, they went on to more than double their alleged time investment), *Havlish* counsel have not made the necessary clear showing that it would be entitled to the recoveries it seeks to restrain.

Last, *Havlish* counsel's summary list of hours may have included hours that are not properly attributable to securing the Iran default judgment. At the same time as it moved against Iran, *Havlish* counsel moved for and obtained a default judgment against 18 other defendants and the work involved in those judgments cannot form the basis of any common benefit contribution. *See* 03-cv-9848 (S.D.N.Y.), ECF No. 295. Similarly, *Havlish* counsel have been seeking to identify Iranian foreign and domestic assets and enforce the *Havlish* judgments against those assets (foreign and domestic), an effort on which they have embarked at the exclusion of all other plaintiffs in the MDL, serving only their own interests and providing no common benefit. Finally, much of the work in which *Havlish* counsel engaged was necessarily specific to *Havlish* counsel's own client-specific aspects of the judgments, as evidenced by the plaintiff-specific filings that *Havlish* counsel have filed with the Court, often under seal. To the extent that any of the 23,591.94 hours are attributable to any non-common benefit endeavors, the hours (and expenses) must be excluded from any analysis concerning a common benefit fee.

For these reasons, the summary inventory of 23,591.94 hours cannot support the drastic remedy *Havlish* counsel seek of restraining distribution of VSST Fund recoveries. *Sussman,* 488 F.3d at 139.

### 4. *Havlish* Counsel's Request for Documentation Should, Likewise, Be Denied

Finally, the Court should deny *Havlish* counsel's request for an accounting of VSST Fund awards and fees, because they have made no showing, nor has this Court made any judicial determination, that such information is relevant to the pending fee dispute. As explained in the PECs' motions for reconsideration and the PECs' opposition to discovery demands, *Havlish* counsel have no valid basis to claim a percentage fee of VSST Fund awards (as opposed to, perhaps, reasonable compensation for their labors). The value any individual plaintiff may have received from the VSST Fund should be irrelevant to any determination of the value of a fee, if any, to which *Havlish* counsel may be entitled. In any event, any request for PEC documentation from the VSST Fund is premature, given that *Havlish* counsel have wholly failed to satisfy their obligation to provide adequate proof of the reasonable time and expenses incurred in obtaining the default judgment against Iran, and the Court has not yet ruled on the PECs' motions for reconsideration or set a level for fees.

### 5. Conclusion

For the reasons herein, and in the PECs' motions for reconsideration (ECF Nos. 5359-5361), the Court should deny with prejudice *Havlish* counsel's motion to set aside and preserve a portion of, and to provide information about, awards received from the VSST Fund. Further, the Court should prohibit *Havlish* counsel from moving again for such injunctive relief, absent a showing to the Court of a material change in circumstances. *Havlish* counsel have recycled their prior arguments in moving to restrain distribution of recoveries (arguments that this Court

12

previously rejected), and have again failed to meet their heavy burden to show good cause for injunctive relief.

September 28, 2020                                   Respectfully submitted,

MOTLEY RICE LLC                                      KREINDLER & KREINDLER LLP

By: /s/ Robert T. Haefele                            By: /s/ Andrew Maloney

   JODI WESTBROOK FLOWERS                               JAMES P. KREINDLER
   DONALD A. MIGLIORI                                   ANDREW J. MALONEY
   ROBERT T. HAEFELE                                    KREINDLER & KREINDLER LLP
   MOTLEY RICE LLC                                      750 Third Avenue
   28 Bridgeside Boulevard                              New York, New York 10017
   Mount Pleasant, SC 29465                             Tel.: 212-687-8181
   Tel.: (843) 216-9184                                 Email: amaloney@kreindler.com
   Email: rhaefele@motleyrice.com                       *For the Plaintiffs' Exec. Committee for Wrongful Death And Personal Injury Plaintiffs*
   *For the Plaintiffs' Exec. Committee for Wrongful Death And Personal Injury Plaintiffs*

                                                     ANDERSON KILL P.C.

                                                     By: /s/ Jerry S. Goldman
                                                        JERRY S. GOLDMAN
                                                        ANDERSON KILL P.C.
                                                        1251 Avenue if the Americas
                                                        New York, New York 10020
                                                        Tel.: 212-278-1000
                                                        Email: jgoldman@andersonkill.com
                                                        *For the Plaintiffs' Exec. Committee for Wrongful Death And Personal Injury Plaintiffs*

cc:   The Honorable George B. Daniels, via ECF
      All Counsel of Record via ECF