UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

-----------------------------------------------------------------X

03-MDL-01570 (GBD)(SN)

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

On December 13, 2019, the Federal Plaintiffs and "Responding Plaintiffs"[1] filed motions for reconsideration and/or clarification of the Court's September 30, 2019 common benefit fund ("CBF") decision ("September 30 Order"). ECF Nos. 5359, 5361. The Havlish Plaintiffs filed opposition briefs to both motions on January 10, 2020, ECF Nos. 5498, 5499, and reply briefs were filed on January 31, 2020, ECF Nos. 5795, 5797. The parties later supplemented the record with letters to the Court. ECF Nos. 6135, 6168. The Court DENIES the Federal Plaintiffs' and Responding Plaintiffs' motions.[2]

## BACKGROUND

On March 19, 2016, the Havlish Plaintiffs filed an initial motion for the creation of a common benefit fund. They sought an order requiring all other lawyers with judgments against Iran to deposit eight percent of any damages recovered from Iran to compensate the Havlish Plaintiffs for their efforts in securing a default judgment against Iran, upon which the Court relied in entering default judgments on behalf of Responding Plaintiffs. ECF No. 3235. On July

---

[1] The Court understands the "Responding Plaintiffs" to be the Plaintiffs' Executive Committee for Wrongful Death and Personal Injury Plaintiffs and certain other the Plaintiffs listed in their motion. The Court further understands that the "Responding Plaintiffs" in the initial motion represented *all* Plaintiffs with a claim against Iran who are not part of the Havlish action.

[2] The Court issues this decision as an Opinion and Order. See September 30, 2019 Opinion and Order, at 1 n.1. To the extent Judge Daniels concludes that these motions fall within the excepted motions in 28 U.S.C. § 636(b)(1)(A), this decision should be interpreted as a Report and Recommendation.

12, 2016, Magistrate Judge Frank Maas issued a Report and Recommendation advising that the Honorable George B. Daniels deny the Havlish Plaintiffs' motion without prejudice to its later renewal. ECF No. 3309. Magistrate Judge Maas based his recommendation on the fact that it would be premature to reach the merits of the motion because the amount of effort Respondents would expend to collect their award from Iran, and the sums that they would actually recover, would be speculative. See id., at 4-7. Judge Daniels adopted Magistrate Judge Maas's Report and Recommendation in full on August 2, 2016. ECF No. 3322.

    The Havlish Plaintiffs filed a renewed motion for the creation of a common benefit fund on December 19, 2018. ECF No. 4289. On September 30, 2019, the Court issued an Opinion & Order granting in part the Havlish Plaintiffs' renewed motion. September 30 Order, ECF No. 5180. The Court addressed and rejected the three arguments presented by Responding Plaintiffs as to why the Havlish motion should be denied. First, the Court found that given the intervening developments regarding the USVSST Fund since the initial Havlish motion was filed, it was no longer premature to create a common benefit fund. Id., at 6-8. Second, the Court found that Havlish Plaintiffs need not have created a common fund to be awarded attorney's fees under the common benefit doctrine pursuant to the Court's equitable power. Id., at 8-9. Third, the Court found that Havlish Plaintiffs' work constituted common benefit work even though the Plaintiffs' Executive Committees ("PECs") did not coordinate its activities with Havlish Plaintiffs, further finding that any inefficiencies resulting from the lack of coordination are better addressed with reductions to the common benefit fee, not a complete bar from recovery. Id., at 9-10.

    The Court held that it could not determine the size of the common benefit fee at the time because Responding Plaintiffs had not presented the amount they recovered to the Court and the Havlish Plaintiffs had failed to provide adequate proof of their time and expenses. Id., at 11-12.

The Court directed the parties to meet and confer regarding the need for any limited discovery, the kinds of documents that constitute reasonable proof of the Havlish Plaintiffs' time and expenses, and the propriety of reserving decision on the size of the common benefit fee until Responding Plaintiffs are notified of the amounts they will recover through the USVSST Fund's third-round of payments. Id., at 12-13. Responding Plaintiffs allege that Havlish counsel refused to provide them with any documentation at the meet and confer, see Responding Plaintiffs' Motion for Reconsideration ("Responding Pls. Br."), at 12, and filed, along with the Federal Plaintiffs, motions for reconsideration and/or clarification of the Court's September 30 Order.

## LEGAL STANDARD

The standards governing a motion for reconsideration under Local Civil Rule 6.3 are the same as those under Rule 59(e) of the Federal Rules of Civil Procedure. Abrahamson v. Bd. of Educ., 237 F. Supp. 2d 507, 510 (S.D.N.Y. 2002). To prevail on such a motion, the movant must demonstrate "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013). The standard for granting a motion for reconsideration is strict. Shrader v. CSX Transp., Inc., 70 F.3d 255, 256-57 (2d Cir. 1995). Accordingly, reconsideration is generally denied unless "the moving party can point to controlling decisions or data that the court overlooked." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (citing Shrader, 70 F.3d at 257). The decision to grant a motion for reconsideration is within the sound discretion of the district court. Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009).

## DISCUSSION

**I.     No Clear Error or Manifest Injustice in the Court's September 30 Order**

Responding and <u>Federal</u> Plaintiffs both argue that no other multidistrict litigation ("MDL") court has carved out a CBF to benefit one group of "common benefit" attorneys at the expense of and to be paid by another group of "common benefit" attorneys from recoveries obtained against one defendant when the litigation against other defendants is ongoing. Respondent Pls. Br., at 4. They propose that the CBF should serve to compensate members of the Plaintiffs' Steering Committee for their relative investments prosecuting the MDL as a whole. <u>Federal</u> Plaintiffs' Memorandum of Law ("<u>Federal</u> Pls. Br."), at 1. Responding Plaintiffs argue that the purpose of MDL CBF awards is to avoid the "free rider" problem, in which passive attorneys representing MDL plaintiffs reap a windfall from the efforts of the attorneys carrying out the common-benefit work on behalf of the entire MDL. Responding Pls. Br., at 5. They argue that this concern is not at issue with respect to Responding and <u>Federal</u> Plaintiffs' counsel who have been actively involved in prosecuting claims in the MDL for over 17 years. <u>Id.</u>

Responding and <u>Federal</u> Plaintiffs do not cite to any caselaw, nor is the Court aware of any, that precludes the Court from awarding counsel a common benefit fee for their efforts successfully obtaining the original default judgment against Iran. While many or even most MDLs may wait until the litigation is complete, most MDLs do not involve multiple defendants with cases proceeding on vastly disparate timelines. As this Court previously noted, in denying the <u>Havlish</u> Plaintiffs' initial motion, Judge Mass was concerned only with the uncertainty at the time regarding the claims against Iran, not with that of the MDL as a whole. September 30 Order, at 7; ECF No. 3309, at 4-5. As this Court found in its prior decision, Judge Mass's concerns are no longer applicable, and as such, "a common benefit fund applicable solely to

claims against Iran is appropriate" and well within "the sound discretion of the district court." September 30 Order, at 7; In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig., No. 05-1708 (DWF)(AJB), 2008 WL 682174, at *4 (D. Minn. Mar. 7, 2008).

Conversely, Responding and Federal Plaintiffs are not yet entitled to common benefit fees for other cases in the MDL because those cases have not yet reached conclusion. See, e.g., Duke Law Center for Judicial Studies, Standards and Best Practices for Large and Mass-Tort MDLs 71 (2014) ("Duke Report") ("When there is no *recovery* by the plaintiffs, there will be no common benefit funding") (emphasis added); see id., at 68 ("The CBF's function is to compensate plaintiffs' counsel for their work based on their relative contributions to the *outcome* of the case.") (emphasis added). Judge Kaplan's concurrence on the Court of Appeals suggests similarly that a common benefit award presumes the success of the litigation. See In re Zyprexa Prods. Liab. Litig., 594 F.3d 113, 130 (2d Cir. 2010) (Kaplan, J., concurring) (finding that the "most equitable" source of compensation in an MDL is the "recoveries" of benefitting plaintiffs).

Responding Plaintiffs argue that Havlish counsel, and this Court, cannot "rely on the common fund authority as an independent basis for a CBF." Responding Pls. Br., at 8 n.5. Responding Plaintiffs are incorrect. On the contrary, "MDL courts have consistently cited the common fund doctrine as a basis for assessing common benefit fees in favor of attorneys who render legal services beneficial to all MDL plaintiffs." In re Vioxx Prods. Liab. Litig., 760 F. Supp. 2d 640, 647 (E.D. La. 2010); see also In re Genetically Modified Rice Litig., MDL No. 06-1811, 2010 WL 716190, at *4 (E.D. Mo. Feb. 24, 2010) (relying on common fund doctrine as an alternate basis to inherent managerial authority). The Third Circuit Court of Appeals similarly found that under the common benefit doctrine, which is "distinct from the common fund doctrine" but which "derives from the latter," "an award of attorney's fees is appropriate where

5

'the plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class.'" In re Diet Drugs, 582 F.3d 524, 546 (3rd Cir. 2009) (citing Polonski v. Taj Mahal, 137 F.3d 139, 145 (3d Cir. 1998)).

Responding Plaintiffs further contend that the Court conflated two separate points in the Duke Report: a discussion of "interim reimbursement payments," intended to defray expenditures by lead counsel who front the bulk of costs and expenses of the litigation, and a common benefit assessment of settlement proceeds. Responding Pls. Br, at 10. Responding Plaintiffs argue that the Report says nothing about awarding payment of attorneys' fees out of the common benefit assessment before the conclusion of the MDL as a whole. Id. But the Report, in fact, states exactly that: "When individual cases in the MDL begin to settle . . . the transferee judge should determine an appropriate assessment to be made from the gross recovery in each case . . . [and] should order the defendant to withhold the specified percentage of the recovery from the settlement proceeds and deposit that amount into the CBF." Mass-Tort MDLs, at 80. Responding Plaintiffs are correct that in the MDL context, the source of tension in a fee application is typically "between the attorneys who have done common benefit work and the primary attorneys who have not." Vioxx, 760 F. Supp. 2d at 653. But this does not mean, as Responding Plaintiffs argue, that a CBF can be established in the MDL context only once the contributions of all attorneys doing CBF work can be assessed. Responding Pls. Reply, at 6.

Responding and Federal Plaintiffs further express concern that if only Havlish counsel are awarded a CBF, MDL attorneys would be incentivized to pursue only the "low-hanging fruit," such as default judgments against non-appearing defendants, and discouraged from taking on tasks where a favorable outcome is less certain as well as administrative case management responsibilities where the nexus between such work and a particular recovery is more attenuated.

6

Responding Pls. Br., at 7; Federal Pls. Br., at 11. This concern is misplaced. Unlike the Iran cases, the Saudi cases in this MDL, among others, may not resolve for years. See Havlish Oppo. to Federal Pls., at 8. Because the cases against Iran have by and large come to a close, now is the appropriate time to consider a common benefit fee for all counsel, including but not limited to Havlish counsel, that contributed work for the benefit of all Plaintiffs in securing the original default judgment entered by Judge Daniels on December 22, 2011. ECF No. 2516. To the extent that Responding or Federal Plaintiffs ask the Court to set aside money now from USVSST Fund recoveries for awards on behalf of non-Iran related work, that request is not timely and is denied.

Responding Plaintiffs nonetheless contend that an award for Havlish counsel in particular is inequitable because Havlish counsel have likely already been compensated, including for work pursuing independent recoveries such as the attachment of 650 Fifth Avenue. Responding Pls. Br., at 5, 7. Responding Plaintiffs further point to the "self-interested nature of the work that Havlish counsel pursued," contending that the timing of Havlish counsels' motion for default judgment against Iran was "driven by self-serving interests that did not serve a common benefit." Responding Pls. Br., at 14; ECF No. 6135, at 1-2.

The Court does not find Responding Plaintiffs' allegations concerning any self-serving nature of Havlish counsels' actions to be availing. As the Court already found, although Havlish counsel and the PECs did not have an "ideal" arrangement, the evidence does not suggest that Havlish Plaintiffs were "rogue actors" and there is no evidence of "any significant disruption or malfeasance" due to Havlish Plaintiffs' work on the original Iran default judgment. September 30 Order, at 10; see also Federal Pls. Br., at 6 (noting that while "the coordination of the default efforts was less than ideal, the fact that Havlish counsel handled the default judgment while other

7

members of the committees were focused on other necessary work reflects the kind of division of assignments contemplated by the case Management Order #3, ECF No. 248).

The question before the Court is not whether Havlish counsel have been compensated by their own clients. The question is whether they, potentially along with other counsel who contributed to the original Iran default judgment, have been compensated by those who relied on counsel's common benefit work. See In re Air Crash Disaster at Fl. Everglades on Dec. 29, 1972, 549 F.2d 1006, 1016 (1977) (rejecting the notion that a committee "must work without any compensation other than that coming from their own clients" and finding MDL managerial authority to be "illusory if it is dependent upon lead counsel's performing duties desired of them for no *additional* compensation,") (emphasis added). To the extent that Havlish Plaintiffs' work was duplicative of Responding Plaintiffs' work, any resulting inefficiencies are "better addressed with reductions to the common benefit fee, not a complete bar from recovery." September 30 Order, at 10.

**II.     The Common Benefit Fee**

The motions for reconsideration before the Court were filed, in part, as the result of a breakdown in the Court-ordered meet and confer process between the parties. Federal Plaintiffs contend that discussions with Havlish counsel were unproductive, and request that the Court establish procedures and criteria to govern the CBF. Federal Pls. Br., at 1 n.1. Responding Plaintiffs argue that Havlish counsel were unwilling to disclose any records to support the time and expense they claim to have incurred in obtaining the default judgment against Iran. Responding Pls. Br., at 6. They argue that this intransigence is contrary to the Court's order and makes any determination of the reasonableness of the Havlish counsels' request for 12% of all recoveries, which amounts to 80% of all attorneys' fees available under the USVSST

Clarification Act's cap on fees of 15% of recovery, impossible to assess. Id., at 6-7. They also argue that if the Court were to limit fees solely to work done in connection with claims against Iran, many Responding Plaintiffs' counsel, would also be entitled to compensation because they contributed significant common benefit work that was ultimately utilized in the Havlish original motion for default judgment. Id., at 16 n.12.

Havlish counsel contend, to the contrary, that they have described to the PEC the extent to which they have time and expense records as well as what they are doing to reconstruct time to the extent that they do not, and have explicitly offered to supply the PEC with all of this information and documentation provided the PEC would supply them with information relevant to the determination of the amount of a reasonable common benefit fee. Havlish Oppo. to Responding Pls., at 7. Specifically, Havlish counsel asked for information and documentation related to work the PEC claims they and/or the Responding Plaintiffs' counsel have done that contributed in any way to the original default judgment against Iran, and information disclosing the amounts of money that Responding Plaintiffs and their attorneys have reaped in payments and fees from the USVSST Fund in Rounds One and Two and expect to receive in Round Three. Id. Havlish counsel also suggest that Responding Plaintiffs are making "fabricated" statements regarding their contributions to the Havlish original motion for default judgment. Id., at 11.

Presenting a way out of this morass, Federal Plaintiffs recommend that the Court appoint a special master to manage the common benefit process, in accordance with Court-established criteria. Federal Pls. Br., at 13. The special master would make recommendations concerning the appropriate value of the CBF, the total value of the common benefit work undertaken by all committee members over the course of the MDL, the total common benefit expenses incurred, the equitable allocation of that CBF among committee members, and the most equitable

approach for directing monies into the CBF. Id., at 14. To that end, Federal Plaintiffs contend that Havlish counsel seek to sidestep the criteria traditionally used to determine the extent and allocation of common benefit funds in complex MDLs, arguing instead for an award based on a percentage share of other attorneys' USVSST Fund recoveries. Federal Pls. Reply, at 9.

The Court reaffirms that it is appropriate now to assess a common benefit fee to compensate those lawyers who worked for the common benefit of all plaintiffs in pursuit of the claims against Iran. To determine the appropriate size of the common benefit fee, including which parties should pay and which parties should receive, both Havlish and Responding Plaintiffs are ordered to file sworn declarations and supporting evidence setting forth the work they did in securing the original Iran default judgment.[3] Only work done for the "common benefit" of all MDL plaintiffs should be submitted to the Court, not work completed in the pursuit of independent recoveries solely on behalf of counsels' own clients. Accordingly, the presumptive cutoff for common benefit work would be December 22, 2011.

Additionally, all parties, including Havlish counsel, should submit documentation to the Court detailing the amounts of money that they have received or expect to receive from the USVSST Fund. This documentation should include both the percentage of Plaintiffs' clients' recovery that counsel have received as a fee, and the dollar amount of those percentages. Responding Plaintiffs should also provide information about the distribution of USVSST funds to all other counsel, to the extent that they are able to do so. The Court defers judgment on whether a special master would be appropriate until the parties identify and produce to the Court

---

[3] It is the Court's understanding that Federal Plaintiffs are ineligible for USVSST Fund recovery. See September 30 Order, at 7; ECF No. 6474. To the extent Federal Plaintiffs have either contributed work to the original Iran default judgment or received any payments from the USVSST Fund, they should submit all of the same information to the Court.

the above information regarding their contributions to the original Iran default judgment and the USVSST Fund awards that they received.

### III.   First-Round USVSST Fund Payments

Responding Plaintiffs argue that Havlish counsel have waived any interest in USVSST Fund Round One recoveries because they did not renew their motion for the creation of a CBF for nearly two years after Round One distribution payments were made to clients and fees distributed to counsel. Responding Pls. Br., at 17. Responding Plaintiffs cite Havlish counsel's December 2018 motion, where Havlish counsel moved to receive payment from "distributions received by Responding Plaintiffs in 2019 and continuing through all future years of the USVSST." ECF No. 4289, at 2. Even if Havlish counsel have not waived interest in Round One funds, Responding Plaintiffs argue that these funds can no longer be recovered because any fees paid to attorneys in 2017 have already been consumed, and it would be difficult if not impossible to recover the amount constituting the percentage that Havlish counsel seeks from Round One distributions from subsequent rounds in light of the substantial increase in the number of claims submitted to the USVSST Fund since that time. Responding Pls. Reply, at 10.

Havlish counsel respond that no such waiver occurred, and that it is too late for Responding Plaintiffs to raise the issue now. They argue that they filed their original motion well before Round One payments, and at the time of refiling the motion, they did not have any information about how many Iran judgment holders, if any, had qualified for Round One payments. Havlish Oppo. to Responding Ps., at 16. Havlish counsel cite their renewed motion where they asked the Court for an order "directing the Responding Plaintiffs to set aside twelve percent (12%) of any amounts collected on the Responding Plaintiffs' judgments." Id.

The Court did not find, and does not find here, that <u>Havlish</u> counsel waived any interest in USVSST Fund Round One payments. <u>Havlish</u> counsel filed their initial motion well before the Round One payments were distributed, and there is no reason why Round Two and Three should be included but Round One excluded from a common benefit fee. The Court also does not find Responding Plaintiffs' argument that Round One funds may no longer be recoverable to have merit. Whether the specific monies received from the USVSST Fund have been consumed is irrelevant; as Responding Plaintiffs have themselves recently argued, "[t]hat some fees may have been disbursed is immaterial to the question of whether Respondents will comply with a final order directing payment into a common benefit fund." ECF No. 6475, at 5 n.6.

## CONCLUSION

The Court DENIES Responding and <u>Federal</u> Plaintiffs' motions for reconsideration. The parties are directed to submit sworn declarations and supporting evidence to the Court within 30 days with (1) detailed information concerning their time and expenses for the common benefit in securing the original Iran default judgment, and (2) information detailing the percentages and dollar amounts that all parties and their counsel have recovered from the USVSST Fund.

Responding Plaintiffs' request for oral argument is DENIED as moot. <u>Havlish</u> Plaintiffs' May 15, 2020 motion for discovery is also DENIED as moot. The Clerk of Court is respectfully directed to terminate the gavels at ECF Nos. 5359, 5361, and 6216.

**SO ORDERED.**

September 30, 2020
New York, New York

_____
SARAH NETBURN
United States Magistrate Judge