## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

**VIA ECF**

October 9, 2020

The Honorable Sarah Netburn, U.S. Magistrate Judge
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

      Re:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

      The Plaintiffs' Executive Committees ("PECs") write, on behalf of all Plaintiffs with claims against the Republic of the Sudan ("Sudan"), in response to Sudan's letter at ECF No. 6462 (docketed Sept. 18, 2020) and the Court's related Order at ECF No. 6482 (docketed Oct. 1, 2020).[1] As Plaintiffs sought to explain within the updated pleadings and in the accompanying letter, ECF Nos. 6427-29,[2] Plaintiffs designated their updated Complaints as "Supplemental Complaints" pursuant to Fed. R. Civ. P. 15(d), rather than "Amended Complaints" pursuant to Rule 15(a), because it is more correct to do so. Three considerations supported this assessment.[3]

      **First**, while the updated Complaints as to Sudan did incorporate additional factual allegations and legal standards governing the claims against Sudan, Plaintiffs have been consistently clear that the updated pleadings were never intended to displace the allegations in the underlying Complaints. Indeed, Plaintiffs would not have considered displacing the original complaints, which also contained

---

[1] The PECs note that we understood a response to Sudan's letter was due October 2, 2020, under Local Rule 6.1(b)(2), and had planned to respond on October 2. However, because the Court's October 1, 2020 Order directed that the PECs' response, now due October 9, should also address the added issue of the impact of Plaintiffs' supplemental pleadings on the existing defaults, the PECs have used the additional time to include that issue in our response.

[2] In the supplemental pleadings, *see* ECF Nos. 6427, ¶ 2, n.1; 6429 at 1-2, and the accompanying letter, ECF No. 6428 at 1-2, Plaintiffs stressed that the supplemental pleadings updated, not displaced, the earlier-filed complaints to reflect changes in the law and evidentiary disclosures by the U.S. government and others long after the filing of the underlying complaints. The gravamen of the claims against Sudan in the original pleadings remained unchanged, and Plaintiffs' operative pleadings were not displaced, replaced, or supplanted. ECF No. 6427, ¶ 2; 6428; 6429 at 2. Instead, the supplements "stand[] with the original pleading[s, as] mere addition[s] to or continuation[s] of the original complaint . . . and [were] designed to obtain relief along the same lines pertaining to the same cause and based upon the same subject matter or claim for relief as set out in the original complaint." *United States v. Russell*, 241 F.2d 879 (1st Cir. 1957).

[3] The Court authorized an update to the pleadings described during the hearing. Legal commentators and courts have long-recognized that, although Rule 15 addresses the two vehicles in different subsections, the terms "supplement" and "amendment" are often used interchangeably in legal parlance. 6A C. Wright and A. Miller, Federal Practice and Procedure § 1504 (3d ed.) ("Parties and courts occasionally confuse pleadings and mislabeling is common. However, these misnomers are not of any significance . . . ." "[T]he court's' inattention to the formal distinction between amendment and supplementation is of no consequence."); s*ee In re Arred Elec'l Contracting Corp.*, 106 B.R. 353, 358-59 (Bankr. S.D.N.Y. Sept. 22, 1989) (treating motion to amend as a motion to amend or supplement); *Goglia v. Bodnar*, 156 Az. 12, 17(Ariz. Ct. App. 1987) (equating supplemental and amended pleadings and finding trial court had not erred in finding the new pleading was not intended to supersede the original complaint on which default was premised); Here, Plaintiffs denominated the filings consistent with the intent described during the hearing.

The Honorable Sarah Netburn
October 9, 2020
Page 2

the identity of the Plaintiffs, their relations to decedents, the nature of each Plaintiffs' injuries, and the substantial allegations and claims against many other Defendants named in the underlying Complaints. On the contrary, the context, circumstances, and discussion among the Court and the parties have consistently shown that Plaintiffs' new pleadings were *always* intended to supplement, and not displace, their earlier pleadings, with the dual aims of adding new information, premised on occurrences and events that post-dated the original complaints, and harmonizing the allegations and counts for the Court's consideration in default proceedings.[4]

**Second**, designating the updated pleadings as Supplemental Complaints was viewed as consistent with the approach the Court authorized under paragraph 13 of Case Management Order No. 2 ("CMO #2) and in the Short Forms authorized in the context of new pleadings conforming claims against Saudi Arabia and Iran, which all supplemented, but did not displace, earlier pleadings. ECF No. 5234, at 7, 26, 31. Paragraph 13 set a deadline and perimeters for amending the Complaints as to all Defendants in the litigation, and a separate procedure for updating allegations specific to any particular Defendant. *See* ECF No. 247 at ¶ 13 (authorizing Plaintiffs to file more definite statements or additional allegations against Defendants in lieu of filing an additional amended complaint); *see also id.*, ¶ 14 (authorizing Federal Insurance to file a RICO statement incorporated by reference into its earlier complaint). In the Short Forms that the Court approved in the context of claims against Iran and Saudi Arabia, the forms specifically provided that they "supplement[] by incorporation into, but do[] not displace, Plaintiffs' underlying Complaint." ECF No. 5234, at 7, 26, 31. In short, in each of those earlier contexts where the Court applied the term "amendment", they were each intended to supplement earlier pleadings, not displace them.

**Third**, a core purpose of the updated Complaints was precisely to update Plaintiffs' respective nearly two-decades old operative pleadings to address events that have occurred after Plaintiffs' original complaints were filed. Here, in the intervening nearly two decades during which Sudan ignored each of Plaintiffs' original pleadings, significant events relevant to Plaintiffs' claims against Sudan have occurred, including changes to the relevant law, changes to the pleading standard, and additional evidentiary disclosures. In particular, the updated Complaints were aimed at including legal remedies established subsequent to the filing of the original complaints, including in particular JASTA,[5] and evidentiary disclosures by the United States government and others in the years after Plaintiffs filed their original complaints. Importantly, though, the gravamen of the claims against Sudan as to all Plaintiffs has remained unchanged.

Perhaps the most prominent intervening occurrences necessitating Plaintiffs' supplementation are the several intervening changes in the law regarding suits against foreign sovereigns. In 2008, § 1605(a)(7) of Title 28 of the U.S. Code—previously known as the "terrorism exception" to foreign sovereign immunity—was amended to create a new explicit source of law for Plaintiffs' cause of action

---

[4] *See, e.g.,* ECF No. 6285 (explaining that the new pleadings were necessary due to the intervening developments in the law and further development of the factual and evidentiary record, since the filing of the underlying complaints); Tr. of Aug. 5 at 8:21 to 9:4; 13:1-22; 16:3-13; 14:20 to 15:2 (explaining that the new pleadings would address intervening changes to the law that, for example, define sources of law for causes of action and update facts, but that do not change the essential gist or gravamen of the action against Sudan; explaining that factual updates will include results obtained from intervening years of FOIA disclosures and discovery from other defendants; and expressing an interest in harmonizing the proceedings among the various constituent cases).

[5] Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 852-856, enacted Sept. 28, 2016 ("JASTA").

and for punitive damages. The new statutory provision, 28 U.S.C. § 1605A, which did not exist when Plaintiffs' original complaints were filed, took the place of § 1605(a)(7). The same is true with 28 U.S.C. § 1605B and 18 U.S.C. § 2333(d), provisions enacted as part of the September 2016 enactment of JASTA. JASTA provided a new statutory source for the aiding and abetting liability alleged against Sudan, as well as an exception to foreign sovereign immunity, applicable to Sudan, as a foreign state alleged to have engaged in providing material support or resources to a designated terrorist organization that carried out a terrorist attack on American soil. Specifically, the jurisdictional and cause-of-action predicates enacted as part of § 1605A and JASTA did not exist when the original complaints were filed, supplemental pleading was the appropriate vehicle to address those updates to the Court's attention. *See United Sates ex rel. Gadbis v. PharMerica Corp.* 809 F.3d 1, 3 (1st Cir. 2015) (Rule 15(d) supplements are available to cure alleged jurisdictional defects and considering a subsequent court decision among the subsequent events considered).

Similarly, since Plaintiffs filed their operative Complaints pursuant to Fed. R. Civ. P. 8's notice-pleading requirement, the federal pleading standard has been altered. In 2007, the Supreme Court decided *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), requiring demonstration of plausible factual allegations that state a claim for relief that is plausible on its face. In 2009, the Supreme Court expanded on *Twombly in Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Without conceding that any of the operative complaints as to Sudan were insufficient to meet the new standards, further fleshing out these facts—which was not required under Rule 8 at the time of filing—is appropriate to afford the Court the benefit of the full set of facts to meet the pleading standard and for a default hearing. Again, though, the supplemental pleadings do not alter either the nature or the gravamen of the allegations against Sudan, and cite consistently to the same underlying criminal and tortious conduct that resulted in the 9/11 terror attack.

Another set of occurrences that post-dated the original complaints includes evidentiary disclosures by the U.S. government and others. Those later-occurring evidentiary disclosures include, for example, responses to Freedom of Information Act inquiries, productions from the federal government and other defendants, and information that has been otherwise unsealed and publicly disclosed. Information from those later-occurring disclosures were valuable to update Plaintiffs' allegations to foster consolidation of all of the grievances against Sudan and maximize the opportunity for each claim to be decided on its merits rather than on procedural technicalities.

Sudan could not be more wrong where it argues [at 2] that Plaintiffs' supplemental pleadings "subvert the Court's efforts to streamline these proceedings, create confusion, and prejudice Sudan." First, the proposal to employ the consolidated approach to pleadings against Sudan was proposed by Plaintiffs to afford the Court the most current information for application in default proceedings, while Sudan opposed this and claimed it preferred to move directly to dismiss the various multiple substantially similar complaints. *See* ECF No. 6285. And the end result, whether the pleadings are denominated amendments or supplements is essentially the same. In fact, the proof of that is found in Judge Casey's early-stage management of the proceedings when the Court requested consolidated pleadings. The Court did so again in the cases against Saudi Arabia and Iran. Although the pleadings in the context of Saudi Arabia were denominated "amendments,"[6] the effective approach proposed

---

[6] In hindsight, the pleadings against Saudi Arabia were also more appropriately denominated as "supplements," but the distinction was never made an issue in that context as Sudan has done here. In fact, the pleadings there also expressly

The Honorable Sarah Netburn
October 9, 2020
Page 4

here is no different—common allegations against Saudi Arabia facilitated the Court's ability to address the claims against Saudi Arabia in a uniform manner. The consolidation of the claims against Saudi Arabia has undoubtedly "conserve[d] the resources of the parties, their counsel, and the judiciary," allowed the parties more efficiently to address common legal and factual issues, and promoted judicial economy through avoidance of duplicative effort. ECF No. 6285, at 4. The Court similarly ordered consolidating new complaints against Iran on behalf of family members with solatium claims related to the previous Iran defaults over estate cases. In both the Saudi Arabia and Iran context, the consolidated pleadings approach resulted in the Court implementing a short form pleadings approach as to later-filed claims against each of the defendants.

Finally, turning to the inquiry the Court raised in the Court's October 1, 2020 Order (*i.e.*, impact of Plaintiffs' supplemental pleadings on the existing defaults), Plaintiffs position is that the Supplemental Pleadings do not affect the Plaintiffs' defaults or the Plaintiffs ability to proceed to default judgment. Plaintiffs' approach corresponds with the approach other courts have taken in the analogous context of post-amendment default judgments against state sponsors of terrorism. *See, e.g.*, *Belkin v. v. Islamic Republic of Iran*, 220 U.S. District Lexis 130286, *7 (D.D.C. July 23, 2020) and *In Re Islamic Republic of Iran*, 659 F. Supp. 2d 31, 100 (D.D.C. 2009) (in particular, regarding *Valore v. Islamic Rep. of Iran,* 03-CV-1959). *Belkin* and *Valore*, because they are in the same context as the issue now before this Court, are more controlling than the cases in dissimilar contexts that Sudan cites. In both *Belkin* and *Valore*, plaintiffs filed complaints, then obtained certificates of default, then filed amended complaints, then proceeded directly to default judgment without being required to start anew, or serve the new pleading upon the defaulted defendant.[7] In these analogous contexts, rather than treating the original defaults as vitiated by the amendments, the courts, instead, proceeded immediately to default judgment following the amendment.

The other courts' treatment of the pleadings suggest that the technical distinction Sudan has highlighted does not matter. For the reasons explained here and given Sudan's penchant for relying on arguments premised on technicalities[8] rather than substance, the new pleadings are more properly

---

state that they "supplement[ed] by incorporation into, but d[id] not displace, the operative complaints." ECF No. 3463, ¶ 18.

[7] In *Belkin*, a suit filed against Iran in 2006, the court entered judgment in October 2009, after Iran had defaulted in July 2007 and after plaintiff amended the complaint in June 2008. *Belkin v. Islamic Rep. of Iran*, Dkt. No. 1:06-cv-711-PLF (D.D.C.), Docket Report and Docket Entry No. 24. In *Valore*, a suit filed against Iran in 2003, the court entered judgment in March 2010, after Iran defaulted in August 2006 and after plaintiffs amended the complaint in February 2009. *Valore v. Islamic Rep. of Iran*, Dkt. No. 1:03-cv-1959-RCL (D.D.C.), Docket Report.

[8] During the August 5 hearing, counsel for the Plaintiffs' Executive Committees underscored the problem of Sudan's long history of focusing on technicalities to navigate around its obligations and liabilities in antiterrorism litigation:

> "I think the one concern would be that in consenting that some processes in which Sudan were permitted to file a motion without there having been an application seeking formal relief for default, we may be inadvertently waiving the protections of the default. *And as you probably heard, Sudan has a bit of a history of raising highly technical arguments after ignoring proceedings for quite some time and many of the arguments you just heard from counsel about civil unrest and the like have been presented to other courts which have not found them credible.* There's informative discussion about this in [*Flanagan v. Islamic Rep. of Iran,* 190 F. Supp. 3d 138 (D.D.C. 2016)]. And so we're mindful of that and we're mindful of proceeding in a way that's quite technical."

Tr. of Aug. 5, 2020, p. 40, lines 9-17 (emphasis added).

designated supplements. In addition, the distinction is moot and the steadfastness of the defaults is clearer if the Court accepts the pleadings as supplements.[9] Indeed, Sudan argues for the distinction (between amendment and supplement), desperate for the Court to consider the updated pleadings as "amendments," because it views that designation as facilitating its only path to void Plaintiffs' defaults, allowing Sudan to escape its responsibility for ignoring the litigation for over 17 years. But in either case, where the gravamen of the updated pleading remains essentially the same, service of the new pleading was unnecessary and proceeding to default judgment on the existing defaults is appropriate. *Belkin v. Islamic Rep. of Iran*, 667 F. Supp. 2d 8, 20 (D.D.C. 2009). As such, regardless of the title the Court applies, the status of the defaults should remain unaffected. If the defaults are to be vacated (and Plaintiffs' position is that they should *not* be), Sudan must be required to meet the standards under Federal Rule of Civil Procedure 55(c).[10]

While the PECs believed the designation of the updated Complaints as Supplemental Complaints to be technically correct, Plaintiffs have always understood that the Court has the authority to treat them as filed under a different designation if it determined another designation to be more appropriate under the Rules. *See, e.g., In re Arred Elec'l Contracting Corp.*, 106 B.R. at 358-59 (Bankr. S.D.N.Y. Sept. 22, 1989) (treating motion to amend as a motion to amend or supplement). Accordingly, to the extent that the Court concludes that the updated Complaints should more properly have been designated as Amended Complaints under Rule 15, the PECs would respectfully request that the Court designate them as such.[11]

Under whichever designation that the Court elects to accept the updated pleadings, Plaintiffs ask that the Court nonetheless reinforce that the burden rests with Sudan to make its application to be relieved of the defaults before moving forward. Normally Sudan would be required to seek default relief in the first instance, before moving on to its motion to dismiss. Here, in an effort toward docket efficiency, the Court modified the briefing schedule to require Sudan to brief simultaneously its motion

---

[9] Also, given Sudan's insistence that the new pleadings are amendments that displace the original pleadings, the Court will need to address the additional issue of reincorporating various aspects of the earlier complaints—the Plaintiffs identities and their relations to decedents, the nature of each Plaintiffs' injuries, and the volumes of allegations and claims against many other Defendants—which Plaintiffs never intended to displace.

[10] *See Flanagan v. Islamic Rep. of Iran*, 190 F. Supp. 3d 138 (D.D.C. 2016) (applying Rule 55(c) to deny Sudan's motion to set aside default). In *Flanagan*, applying Rule 55(c), the court considered whether Sudan had shown "good cause" to vacate the default, balancing "whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense is meritorious." *Id.* at 156. Assessing the factors in a context remarkably akin to the circumstances here, the Court found all three factors weighed against Sudan and rejected Sudan's motion to vacate. *See also Owens v. Rep. of Sudan*, 174 Supp. 3d 242, 253-259 (D.D.C. 2016)(applying similar analyses to deny Sudan's motion to vacate under Rule 60(b)).

[11] If the Court nonetheless determines that the new pleadings should be designated as amendments, the Court should not displace the initial Complaints, but may address the new allegations and counts as amendments incorporated into the earlier pleadings solely as to Sudan without displacing the entirety of the earlier complaints. *See* ECF No. 247 at ¶ 13 (authorizing plaintiffs to file more definite statements or additional allegations against defendants in lieu of filing an additional amended complaint) and ¶ 14 (authorizing Federal Insurance to file a RICO statement incorporated by reference into earlier complaint); ECF No. 5234 (authorizing short forms for addition of new claims against Saudi Arabia and Iran, and specifically providing that "[t]he amendment effected through this Notice to Conform supplements by incorporation into, but does not displace, Plaintiffs' underlying Complaint" [*id.* at 7]; "[t]he amendment effected through this Notice of Amendment supplements by incorporation into, but does not displace, the underlying Complaint" [*id.* at 26, 31]; *In re Arred Elec'l Contracting Corp.*, 106 B.R. 353, 358-59 (Bankr. S.D.N.Y. Sept. 22, 1989) (treating motion to amend as a motion to amend or supplement).

The Honorable Sarah Netburn
October 9, 2020
Page 6

for relief from the defaults and its motion to dismiss. In moving forward as to Sudan, however, the Court should require Sudan to address the motion as the Court had intended and not allow Sudan to avoid the burden that falls on it to secure relief from the defaults.

Respectfully submitted,

| | |
|---|---|
| COZEN O'CONNOR | MOTLEY RICE LLC |
| By: /s/ Sean P. Carter | By: /s/ Robert T. Haefele |
| SEAN P. CARTER | ROBERT T. HAEFELE |
| COZEN O'CONNOR | MOTLEY RICE LLC |
| One Liberty Place | 28 Bridgeside Boulevard |
| 1650 Market Street, Suite 2800 | Mount Pleasant, SC 29465 |
| Philadelphia, Pennsylvania 19103 | Tel.: (843) 216-9184 |
| Tel.: (215) 665-2105 | Email: rhaefele@motleyrice.com |
| Email: scarter@cozen.com | For the Plaintiffs' Exec. Committees |
| For the Plaintiffs' Exec. Committees | |

KREINDLER & KREINDLER LLP

By: /s/ Andrew J. Maloney
ANDREW J. MALONEY
KREINDLER & KREINDLER LLP
750 Third Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: amaloney@kreindler.com
For the Plaintiffs' Exec. Committees

cc:   The Honorable George B. Daniels, via ECF
       All Counsel of Record via ECF