UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

In re:

      TERRORIST ATTACKS ON
      SEPTEMBER 11, 2001

----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___ 10/21/2020

03-MDL-01570 (GBD)(SN)

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

On September 11, 2019, the Plaintiffs' Executive Committees ("PECs" or "Plaintiffs") filed an initial motion to compel non-party Federal Bureau of Investigation ("FBI") to produce documents from its investigation of Saudi Government officials' assistance to the 9/11 hijackers. ECF No. 5127 (filed under seal without redactions on May 31, 2019, at ECF No. 4568). On September 12, 2019, the FBI filed a memorandum of law in opposition to Plaintiffs' motion. ECF No. 5140. On October 18, 2019, Plaintiffs filed their reply memorandum. ECF No. 5221. On November 1, 2019, the FBI filed a surreply memorandum. ECF No. 5263.

Plaintiffs' motion to compel addressed two issues: the production of documents concerning FBI investigations of four Saudi officials, and the production of the 2012 FBI Summary Report. This Opinion & Order addresses the production of the 2012 FBI Summary Report. An Opinion & Order addressing the production of documents concerning FBI investigations of the four Saudi officials was issued separately on April 27, 2020. ECF No. 6159. For the reasons discussed below, the Court finds the redacted and contested portions of the 2012 Summary Report to fall properly under the state secrets and law enforcement privileges. The Court therefore DENIES Plaintiffs' motion to compel the release of the unredacted report.

## BACKGROUND

The 2012 Summary Report was prepared to provide an update on an FBI investigation that has been described as the "Subfile Investigation." Memorandum of Law of Non-Party the Federal Bureau of Investigation in Partial Opposition to Plaintiffs' Motion to Compel ("FBI Br."), at 2 (citing the Declaration of Michael C. McGarrity, dated Sept. 12, 2019 ("McGarrity Decl.") ¶ 4). The FBI opened this Subfile Investigation within the PENTTBOM Investigation— the FBI's initial investigation of the 9/11 attacks—to sharpen the focus on allegations that the circle of 9/11 conspirators may be broader than reported in the 9/11 Commission Report. McGarrity Decl. ¶¶ 4 n.2, 14. Both the PENTTBOM Investigation and the Subfile Investigation remain open. Id. ¶ 14. In its current form, the Subfile Investigation is focused on individuals who provided or may have provided substantial assistance to 9/11 hijackers Nawaf al-Hazmi or Khalid al-Midhar. Id. The FBI has publicly disclosed that Omar al-Bayoumi and Fahad al-Thumairy are subjects of the Subfile Investigation. Id. ¶¶ 14 n.6, 17.

In 2016, the FBI produced a redacted version of the 2012 Summary Report in response to a request under the Freedom of Information Act ("FOIA"). Supplemental Declaration of Sarah S. Normand, dated Sept. 12, 2019 ("Supp. Normand Decl.") ¶ 4 & Ex. J; McGarrity Decl. ¶ 14 n.6. The FBI withheld certain information in the report pursuant to various FOIA exceptions, see 5 U.S.C. § 552(b), including information that was currently classified; information protected by Section 102A(i)(1) of the National Security Act of 1947; privileged information; various categories of law enforcement information; and information that implicated personal privacy interests. Supp. Normand Decl., Ex. J. The district court supervising the FOIA litigation upheld all of the FBI's redactions to the 2012 Summary Report except certain information redacted solely on privacy grounds. Broward Bulldog, Inc. v. Dep't of Justice., No. 16-cv-61289 (CMA),

2017 WL 746410, at *16-18 (S.D. Fla. Feb. 27, 2017), aff'd in part, rev'd in part on other grounds and remanded, 939 F.3d 1164 (11th Cir. 2019).

On April 10, 2018, the PECs served on the FBI a subpoena and a request pursuant to the DOJ's Touhy regulations, 28 C.F.R. §§ 16.21-16.29, in which they sought, among other things, an unredacted copy of the 2012 Summary Report. Declaration of Sarah S. Normand, dated June 21, 2019 ("Normand Decl."), Ex. A. Plaintiffs argue that there is "absolutely no dispute" that the 2012 Summary Report is relevant to Plaintiffs' claims and the jurisdictional discovery discussed in the Court's March 28, 2018 Decision. Memorandum of Law in Support of Plaintiffs' Initial Motion to Compel the Federal Bureau of Investigation ("Pls. Br."), at 15. Specifically, Plaintiffs argue that the report includes "the name of the individual(s) the FBI has determined was responsible for tasking Bayoumi and Thumairy to assist the hijackers," one of the critical issues for which the Court authorized the ongoing discovery. Id.

By letter dated May 2, 2018, the FBI provided an interim response to the Touhy request and served formal objections to the subpoena. Normand Decl., Ex. B. After meet-and-confer discussions between the parties, the FBI agreed to conduct a line-by-line review of the 2012 Summary Report to determine whether any information contained therein, although classified and/or privileged, could nonetheless be disclosed in the litigation. FBI Br., at 3. This review included consideration of whether any information could be declassified and released in the public interest and in the exercise of discretion pursuant to section 3.1(d) of Executive Order 13,526. Declaration of Duel W. Valentine, dated June 21, 2019, ¶ 8. Certain information that had been redacted in the FOIA-produced version of the document was released to the parties pursuant to the FBI Protective Order. FBI Br., at 4, n.1. In consultation with the Attorney

General of the United States, the FBI exercised its discretion to declassify the name of the third main subject of the investigation under the FBI Protective Order. Id., at 4.

The remaining information that has been redacted from the 2012 Summary Report, the FBI argues, remains classified and/or privileged.[1] Id., at 4-5. The Attorney General has asserted the state secrets privilege to protect most of the information from disclosure. Declaration of William P. Barr, dated September 12, 2019 ("Barr Decl."), ¶¶ 3-4; McGarrity Decl. ¶ 15-37. The FBI argues that the information subject to the Attorney General's assertion of the state secrets privilege is also protected by the law enforcement privilege, and a small amount of that information is additionally protected by the work product privilege and the deliberative process privilege. McGarrity Decl. ¶¶ 38, 41-43. The FBI has also asserted the law enforcement privilege to protect unclassified redacted information in the report. Id. ¶¶ 39-40.

## DISCUSSION

I.  **Preliminary Issues**

A.  **Standard of Review**

The Court of Appeals for the Second Circuit has left undecided whether section 706 of the Administrative Procedure Act ("APA") or the Federal Rules of Civil Procedure provides the appropriate standard of review when a challenge is brought pursuant to a motion to compel. See U.S. Envtl. Prot. Agency. v. General Elec. Co., 212 F.3d 689, 689-90 (July 6, 2004); accord In re S.E.C. ex rel. Glotzer, 374 F.3d 184, 190 (2d Cir. 2004). Courts in this Circuit have approached this problem in different ways. At least one court has applied the APA abuse of discretion standard. See In re Sept. 11 Litig., 621 F. Supp. 2d 131, 144-45 (S.D.N.Y. 2009). Another has

---

[1] Not all of the remaining withheld information from the 2012 Summary report is currently at issue in this case. See Carter Decl., Ex. 10; Supp. Normand Decl. ¶ 10. The FBI does not address the undisputed information in their moving papers, and the Court will not address it here.

concluded that the APA standard of review is inapplicable. See In re PE Corp. Securities Litigation, No. 03-cv-705 (TPS), 2005 WL 806719, at *6-7. (D. Conn. Apr. 8, 2005). As discussed in the April 27, 2020 Opinion & Order, this Court gives special weight to the fact that the D.C. Circuit, which handles the largest number of federal agency subpoenas, has chosen to apply the Federal Rules. ECF 6159, at 6; see Watts v. S.E.C., 482 F.3d 501, 508 (D.C. Cir. 2007). Accordingly, absent instruction otherwise from the Second Circuit, the Court will apply the Federal Rules, specifically Rules 26 and 45, in its analysis of Plaintiffs' motion to compel.

### B. Timeliness of Invocation of Privileges

In their initial motion to compel, Plaintiffs suggest that "the FBI may belatedly seek to invoke certain privileges in response to the present motion, further delaying and complicating the evidence-gathering process the Court is working diligently to oversee." Pls. Br., at 16. Plaintiffs further contend that the FBI's affidavits invoking the privileges "must [be] presented promptly before a motion to compel because the government's delay prejudices both the party seeking disclosure and the Court." Id., at n.3 (citing United States v. "Le Marche," No. 06-cv-12994 (RJS)(KNF), 2008 WL 2600659, at *3 (S.D.N.Y. June 25, 2008), and Kelly v. City of San Jose, 114 F.R.D. 653, 670 (N.D. Cal. 1987)).

The FBI argues that its May 2, 2018 letter response to the PECs' Touhy request and subpoena objected to the subpoena on the grounds that the 2012 Summary Report "includes classified and statutorily protected information" including information protected from disclosure by the National Security Act, and on the grounds that "the 2012 FBI Summary Report includes information protected by the deliberative process and law enforcement privileges." FBI Br., at 6; Normand Decl., Ex. B, at 8-10. In addition, the FBI notes that it applied redaction codes describing the various categories of information withheld from the 2012 Summary Report,

putting the PECs on notice of the privileges the FBI was planning to assert regarding the information in the document. FBI Br., at 6; Carter Decl., Ex. 10; Supp. Normand Decl. ¶ 8 & Ex. K (key describing each FBI redaction code). The only privilege the FBI asserted in its moving papers that was not identified in the redaction codes is the state secrets privilege, which can only be asserted by the Attorney General after actual personal consideration and which Plaintiffs were aware the FBI might assert. FBI Br., at 7; Normand Decl., Ex. B, at 11; Ex. I, at 23-25, 35.

The Court agrees with the FBI. In Le Marche, "[n]o affidavits ha[d] been submitted to the Court and no affidavits appear to have been served . . . along with the government's privilege log, *or at any other time*, making an official claim of privilege by the executive level officials of the departments having control over the requested information." 2008 WL 2600659, at *3 (emphasis added). By contrast, here the FBI submitted affidavits with their opposition. Additionally, Kelly held that a declaration or affidavit regarding the "official information" privilege must be submitted at the time a party files its response to a discovery. 114 F.R.D. at 669. But the official information privilege is not at issue here. The state secrets privilege is.

Courts in this district have found, contrary to Kelly, that "our local rules concerning the assertion of a privilege claim impose no [requirement to submit a declaration before Plaintiffs filed their motion to compel]." Aguilar v. Immigration & Customs Enforcement Div. of the U.S. Dep't of Homeland Sec., 259 F.R.D. 51, 58 (S.D.N.Y. 2009); see also S.E.C. v. Downe, No. 92-cv-4092, 1994 WL 23141, at *5 (S.D.N.Y. Jan. 27, 1994) (finding, under the local rules, that an affidavit regarding privileged documents need not be provided before formal motion practice). Additionally, this Court's scheduling order provided for the submission of "any affidavits or declarations in support of assertions of privilege (state secrets or otherwise), or any other grounds to withhold information from the 2012 Summary Report" only after Plaintiffs filed their

motion to compel. ECF No. 4524. Accordingly, the Court finds that the FBI acted in accordance with both the applicable precedent and this Court's instructions, and the Court will proceed to the substance of the parties' arguments.

## II.   State Secrets Privilege

### A.  Procedural Requirements

The state secrets privilege is a "common law evidentiary rule that allows the government to withhold information from discovery when disclosure would be inimical to national security." Zuckerbraun v. General Dynamics Corp., 935 F.2d 544, 546 (2d Cir. 1991). In United States v. Reynolds, the Supreme Court recognized the privilege and set forth standards governing its use. 345 U.S. 1, 7-11 (1953). The privilege may be invoked only by the government and may be asserted even when the government is not a party to the case. See, e.g., Fitzgerald v. Penthouse Int'l., Ltd., 776 F.2d 1236 (4th Cir. 1985). It must be claimed by the head of the department with control over the matter in question after personal consideration by that officer. See Reynolds, 345 U.S. at *7-*8. Once properly invoked, "the state secrets privilege is absolute. No competing public or private interest can be advanced to compel disclosure of information found to be protected by a claim of privilege." Ellsberg v. Mitchell, 709 F.2d 51, 57 (D.C. Cir. 1983), cert. denied, 465 U.S. 1038 (1984). But "the privilege may not be used to shield any material not strictly necessary to prevent injury to national security; and, whenever possible, sensitive information must be disentangled from nonsensitive information to allow for the release of the latter." Id. at 57.

The degree to which a court should probe the materials sought to be withheld in a particular case depends upon two considerations. First, "the more compelling a litigant's showing of need for the information in question, the deeper the court should probe in satisfying

itself that the occasion for invoking the privilege is appropriate." Id. at 58-59 (internal quotations omitted). When, for example, "a party's entire case rests on the outcome of a motion to compel, then the court must generally make an *in camera* examination of the documents in question. See, e.g., Kronisch v. United States, No. 83-cv-2458 (KMW)(NRB), 1994 WL 524992, at *11 (S.D.N.Y. Sept. 27, 1994). But if the party seeking the information has made only a "trivial showing of need," the court should evaluate the privilege assertions based solely on the government's public representations, without conducting an in-camera examination." Ellsberg, 709 F.2d at 59 n.38. Second, "the more plausible and substantial the government's allegations of danger to national security, in the context of all the circumstances surrounding the case, the more deferential should be the judge's inquiry into the foundations and scope of the claim." Id. at 59. Neither of these factors can affect the judge's determination, however, if she is "ultimately satisfied" that "disclosure of the material *would* damage national security." Id. (emphasis in original).

### 1.   Actual Personal Consideration by the Attorney General

Plaintiffs argue that the government's motion fails to meet the "essential" requirement that the Attorney General, as the responsible department head, testify that he personally read the 2012 Summary Report and personally determined that the release of each redacted piece of information could reasonably be expected to cause significant harm to the national security of the United States. Reply Memorandum of Law in Support of Plaintiffs' Motion to Compel the Federal Bureau of Investigation ("Pls. Reply"), at 3. To formally invoke the state secrets privilege, there must be (1) a "formal claim of privilege," (2) "lodged by the head of the department which has control over the matter," (3) "after actual personal consideration by that officer." Reynolds, 345 U.S. at *7-*8. "It is of the utmost importance . . . that the Government

comply with the formal requisites for assertion of the claim." <u>Kinoy v. Mitchell</u>, 67 F.R.D. 1, 8 (S.D.N.Y. 1975). Because the Court must rely so heavily upon the judgment of the responsible executive officer . . . it must be clear that the judgment was properly exercised. At a minimum there must be an explicit representation to this effect." <u>Id.</u> at 9.

On September 12, 2019, Attorney General William P. Barr filed a declaration with this Court, explaining that the "purpose of [the] declaration is to assert, at the request of the Federal Bureau of Investigation . . . a formal claim of the state secrets privilege in order to protect the national security interests of the United States." Barr Decl. ¶ 1. The Attorney General explained that the "statements made [in the declaration] are based on [his] personal knowledge, on information provided to [him] in [his] official capacity, and on [his] evaluation of that information." <u>Id.</u> The Attorney General further explained that he has "read and carefully considered the classified McGarrity Declaration" and that his decision is based on his "careful and actual personal consideration of the matter." <u>Id.</u>, ¶ 4; <u>see generally</u> <u>Molerio v. FBI</u>, 749 F.2d 815, 831 (D.C. Cir. 1984 (personal examination of requested documents could be done by the Attorney General "either personally or by proper delegation").

The Court finds that the Attorney General has complied with the necessary prerequisites for the formal invocation of the state secrets privilege. Courts assessing whether this procedural requirement has been met have found that government officials who have not "reviewed the specific content of the material for which privilege is sought" are not competent to assert the privilege. <u>Yang v. Reno</u>, 157 F.R.D. 625, 634 (M.D. Penn. 1994); <u>see also</u> <u>Kinoy</u>, 67 F.R.D. at 9 ("The essential matter is that the decision to object should be taken by the minister who is the political head of the department and that he should have *seen and considered the contents of the*

*documents* and himself have formed the view that on the grounds of public interest they ought not to be produced.") (internal citations omitted) (emphasis added).

Where, as here, the Attorney General personally considered the nature of plaintiffs' requests, see Barr Decl. ¶ 2, and considered the information provided in a classified declaration by the Assistant Director of the FBI's Counterterrorism Division that details the dangers to national security if the information would be disclosed, courts have found the "actual personal consideration" requirement to be met. See, e.g., Edmonds v. U.S. Dep't of Justice, 323 F. Supp. 2d 65, 75 (D.D.C. 2004) (classified declaration of the Deputy Director of the FBI submitted for *in camera* review in support of Attorney General's formal invocation of the state secrets privilege); In re United States, 872 F.2d 472, 474 (D.C. Cir. 1989) (classified declaration of the assistant director of the FBI's Intelligence Division submitted for *in camera* review in support of Attorney General's formal invocation of the state secrets privilege); Halkin v. Helms, 598 F.2d 1, 5 (D.C. Cir. 1978) (privilege invoked by Secretary of Defense was supported by *in camera* testimony of Deputy Director of the National Security Agency).

The Ninth Circuit Court of Appeals similarly found that "explaining through a competent official . . . how the claim of privilege plays out in practice is consistent with Reynolds's insistence that the decision to object be made at the highest level. Kasza v. Browner, 133 F.3d 1159, 1169 (9th Cir. 1998). In that case, the Secretary of the Air Force stated that her decision was based on "(a) [her] personal consideration of the matter; (b) [her] personal knowledge; and (c) [her] evaluation of information made available to [her] in [her] official capacity." Id. at 1168. Here, the Attorney General's declaration reflects a similar level of personal consideration of the matter and materials at issue, and it too is supported by a classified declaration of a competent subordinate official. Cf. Kinoy, 67 F.R.D. at 9 (denying invocation of the state secrets privilege

because the Attorney General did not "personally consider[] *the material* as to which he lodged" his claim) (emphasis added).

Plaintiffs cite Clift v. United States for the proposition that Reynolds's "actual personal consideration" requirement requires the department head to personally review and consider the relevant document at issue. Pls. Reply at 3; 597 F.2d 826 (2d Cir. 1979). But the issue in Clift was whether the Secretary of Defense had to invoke the privilege *at all*, not whether the department head must personally review the document at issue. Id. at 828. Plaintiffs also cite Ellsberg v. Mitchell, which found that the district court erred in not requiring the government to identify which attorneys general had authorized contested wiretaps, for the proposition that the "identified head of the department personally review[] and consider[] the document and each aspect of the text at issue." Pls. Reply at 4. But the court in Ellsberg was concerned with identifying *who* conducted the review of the material; that court did not address the depth of review that is required. Ellsberg, 709 F.2d 51 at 59 n.44.

The Court recognizes that Plaintiffs are not able to determine the level of detail with which the classified McGarrity Declaration describes the content in the redacted portions of the 2012 Summary Report for themselves. *In camera* examination "is necessarily conducted without benefit of criticism and illumination by a party with the actual interest in forcing disclosure." Vaughn v. Rosen, 484 F.2d 820, 825 (D.C. Cir. 1973). The Court is likewise inhibited by having to issue a ruling without being able to give a full explanation for its rationale. But "[i]n national security cases, some sacrifice to the ideals of the full adversary process are inevitable." Military Audit Project v. Casey, 656 F.2d 724, 751 (D.C. Cir. 1981). The classified McGarrity Declaration contains significant detail regarding the specific contents of each of the redacted portions of the Summary Report, in many cases quoting the redacted portions verbatim, to

assuage the Court that a review of that declaration by the Attorney General satisfies the Reynolds requirement.[2] As such, the Court finds the state secrets privilege to have been formally invoked.

### 2.   Scope of the State Secrets Privilege

Plaintiffs next argue that the government's assertion of the state secrets privilege is fundamentally defective. Plaintiffs argue that no state secret concerning the national security of the United States is implicated by the 2012 Summary Report's information about how Saudi government officials worked in California and Washington D.C. to provide substantial assistance to the 9/11 hijackers. Pls. Reply, at 7. Plaintiffs further state that at this point in time, more than 18 years after the 9/11 attacks, it is "clear" that the FBI investigation does not remotely concern matters that implicate a current national security threat, and that the "domestic investigation of the criminal act of Saudi government officials" is instead a largely dormant criminal investigation. Id., at 9, 10. The FBI responds that the September 11 attacks, perpetrated by a foreign terrorist organization, are inarguably a matter related to the national security of the United States. Surreply Memorandum of Law of Non-Party the Federal Bureau of Investigation in Partial Opposition to Plaintiff's Motion to Compel ("FBI Surreply"), at 3.

The Court finds the FBI's position on this issue to be correct. The Supreme Court has recognized that the Executive's constitutional mandate encompasses the authority to protect national security information. See Dep't of the Navy v. Egan, 484 U.S. 518, 527 (1988). Because "the state secrets doctrine pertains generally to *national security* concerns, the privilege has been viewed as both expansive and malleable." Ellsberg, 709 F.2d at 57 (emphasis in original). "The various harms against which protection is sought by invocation of the privilege, include

---

[2] In one instance, the Court reviewed a redacted paragraph of the Summary Report *in camera* to confirm that the description provided in the classified McGarrity Declaration sufficiently detailed its contents. See ECF No. 6327.

impairment of the nation's defense capabilities, disclosure of intelligence-gathering methods or capabilities, and disruption of diplomatic relations with foreign governments." Id. Courts have already applied the state secrets privilege in contexts similar to the present case. See, e.g., Fazaga v. FBI, 884 F. Supp. 2d 1022, 1030 (C.D. Cal. 2012) (applying the state secrets privilege in a case involving FBI surveillance of members of the Muslim community in California), aff'd in part, rev'd in part on other grounds, 965 F.3d 1015 (9th Cir. 2020).

Indeed, intelligence activities conducted domestically have been found by courts to be no different for disclosure purposes than foreign intelligence activities conducted abroad. See CIA v. Sims, 471 U.S. 159, 169 (1985) (making clear that "all sources of intelligence information" are protected from disclosure); see also Fitzgibbon v. CIA, 911 F.2d 755, 764-65 (D.C. Cir. 1990) (holding that, after Sims, domestic intelligence sources are protected to the same extent as foreign sources); accord Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice, 160 F. Supp. 3d 226, 235-36 (D.D.C. 2016) (applying the Supreme Court's expansive view of what constitutes an "intelligence source" in Sims to the activities of the FBI); cf. Mohamed v. Jeppesen Dataplan, Inc., 614 F.3d 1070, 1086 (9th Cir. 2010) (citing Sims favorably in determining the scope of the state secrets privilege). Courts have also applied the privilege broadly owing to the kinds of transcontinental terrorist and criminal activities common today. "[A]lthough purely domestic investigations with no international connection do not involve state secrets, we recognize that the contours of the privilege are perhaps even more difficult to draw in a highly globalized, post-9/11 environment, where the lines between foreign and domestic security interests may be blurred." Fazaga v. FBI, 916 F.3d 1202, 1227 (9th Cir. 2019).

In light of the case law discussed above, the Court is unmoved by Plaintiffs' argument that the 9/11 investigation is a purely domestic security matter. It goes without saying that Al-

Qaeda is a foreign terrorist organization, defined as a foreign organization engaging in terrorism and thereby threatening the national security of the United States. See Holder v. Humanitarian Law Project, 561 U.S. 1, 9 (2010) (providing the statutory definition of foreign terrorist organizations). Plaintiffs themselves have characterized the investigation as focusing on whether the government of Saudi Arabia, a foreign state, provided support to al-Qaeda, a foreign terrorist organization, through the activities of Saudi nationals working in Saudi government offices in the United States. The fact that the September 11 attacks took place on U.S. soil, and that some of the targets of the FBI's investigation allegedly supported the terror plot from within the United States, does not turn an investigation of a foreign-based terrorist attack into a domestic criminal investigation.

The Court further agrees with the FBI that an investigation can at the same time "concern[] a heinous violation of federal law as well as a breach of this nation's security." Center for Nat. Sec. Studies v. U.S. Dep't of Justice, 331 F.3d 918, 926 (D.C. Cir. 2003). The fact that the FBI is also claiming the law enforcement privilege does not suggest that the government's assertion of the state secrets privilege is a "guise to transform a qualified privilege claim into one that is absolute." Pls. Reply, at 8 n.5. Conversely, the applicability of a second privilege "in addition to that for state secrets is irrelevant to the consideration of the latter privilege." Halkin v. Helms, 690 F.2d 977, 994 n.59 (D.C. Cir. 1982). The Court of Appeals has also found the state secrets privilege to apply in law enforcement investigations. See United States v. Abu-Jihaad, 630 F.3d 102, 141 (2d Cir. 2010) (applying the privilege in the prosecution of a former Navy officer convicted of communicating national defense information to unauthorized persons). The Court need not address Plaintiffs' argument that the information in the Summary Report was not properly classified, see Pls. Reply, at 11, because "the state secrets privilege applies regardless of

whether the information has actually been classified pursuant to the substantive and procedural requirements of applicable statutes or executive orders." Halkin, 630 F.3d at 996 n.69.

### B.  Whether the Information in the 2012 Summary Report is Privileged

After a court determines that the privilege has been properly invoked, it then "must make an independent determination whether the information is privileged." Jeppesen Dataplan, 614 F.3d at 1080 (internal citations omitted). The court must satisfy itself "that there is a reasonable danger that disclosure of the particular facts in litigation will jeopardize national security." Zuckerbraun, 935. F.2d at 546-47. "The Executive bears the burden of satisfying a reviewing court that the Reynolds reasonable-danger standard is met." El-Masri v. United States, 479 F.3d 296, 305 (4th Cir. 2007). "Simply saying 'military secret,' 'national security' or 'terrorist threat' or invoking an ethereal fear that disclosure will threaten our nation is insufficient to support the privilege." Al-Haramain Islamic Found., Inc. v. Bush, 507 F.3d 1190, 1203 (9th Cir. 2007). Rather, the government must provide "[s]ufficient detail" to enable the court to conduct a meaningful examination. Id.

But "it is recognized that the government need not demonstrate that injury to the national interest will inevitably result from disclosure; a showing of 'reasonable danger' that harm will ensue is sufficient." Ellsberg, 709 F.2d at 58 (internal quotations omitted). Courts have demonstrated a "willingness to credit relatively speculative projections of adverse consequences." Id. at n.35. Although the privilege "is not to be lightly invoked," Reynolds, 345 U.S. at 7, the court must accord the "utmost deference" to the executive's determination of the impact of disclosure on military or diplomatic security. Zuckerbraun, 935 F.2d at 547 (internal citations omitted); see also al-Masri, 479 F.3d at 305 (deference is appropriate "not only for constitutional reasons," but because "the Executive and the intelligence agencies under his

control occupy a position superior to that of the courts in evaluating the consequences of a release of sensitive information").

The FBI asserts the state secrets privilege over four categories of information as described in the government's public and classified declarations: (i) subject information, (ii) reasons for investigation and results, (iii) sources and methods, and (iv) foreign government information and information sharing and cooperation with foreign partners. McGarrity Decl. ¶ 15; Barr Decl. ¶ 3. These categories of information, contrary to Plaintiffs' arguments, see Pls. Reply at 11-12, are typical categories over which the government has previously applied the state secrets privilege. See, e.g., Fazaga, 884 F. Supp. 2d at 1041.

First, the FBI seeks to protect "information which would indicate that a particular individual is or was the subject of a national security investigation . . . [which] includes information that could tend to confirm or deny whether a particular individual is, was, or was not the subject of a national security investigation." Barr Decl. ¶ 3; McGarrity Decl. ¶ 15. Second, the FBI seeks to protect "information which would reveal the reasons a particular individual is or was the subject of a national security investigation and information obtained as a result of that investigation." Id. Third, the FBI seeks to protect "information which would reveal sensitive sources and methods used in a national security investigation." Id. Fourth, the FBI seeks to protect "information received from a foreign government with the understanding that it and the nature of the information sharing and cooperation between the FBI and foreign partners in a national security investigation will remain confidential." Id.

Beyond the FBI's descriptions of these categories of information in its public filings, the Court relies heavily upon the classified McGarrity Declaration to determine whether disclosure of the information included within the categories described above could be expected to cause

significant harm to national security. In making its determination, the Court assumes the "special burden to assure itself that an appropriate balance is struck between protecting national security matters and preserving an open court system." <u>Jeppesen Dataplan</u>, 614 F.3d at 1081 (internal citations omitted). The Court has thoroughly and skeptically examined the FBI's submissions. After scrutinizing the classified declaration *in camera*, the Court finds the FBI's classified submission to show persuasively that there is a reasonable danger that disclosure of the redacted portions of the 2012 Summary Report in litigation would harm national security interests.

The Court bases this conclusion on the fact that Assistant Director McGarrity's classified declaration is comprehensive and detailed, and the bases for the privilege are well-documented. The Court is precluded from explaining the matters covered by the privilege in more detail than can be found in the public McGarrity declaration, because "[c]are in protecting state secrets is necessary not only during a court's review of the evidence, but in its subsequent treatment of the question in any holding." <u>Black v. United States</u>, 62 F.3d 1115, 1119 (8th Cir. 1995). But the Court can say that the information all falls within the four categories identified by the FBI in its public declarations, and that the Court has independently and critically confirmed that their disclosure could be expected to harm national security. Accordingly, the Court finds that the government has sustained its burden as to the state secrets privilege.

## III.     Law Enforcement Privilege

### A.  Applicability of the Privilege

The law enforcement privilege protects "information pertaining to law enforcement techniques and procedures, information that would undermine the confidentiality of sources, information that would endanger witness and law enforcement personnel [or] the privacy of individuals involved in an investigation, and information that would otherwise . . . interfere[]

with an investigation." In re City of New York, 607 F.3d 923, 944 (2d Cir. 2010) (internal

quotation marks and citations omitted). The party asserting the law enforcement privilege bears

the burden of showing that the privilege applies to the documents in question. In re Sealed Case,

856 F.2d 268, 271-72 (D.C. Cir. 1988). To meet this burden, "(1) there must be a formal claim of

privilege by the head of the department having control over the requested information; (2)

assertion of the privilege must be based on actual personal consideration by that official; and (3)

the information for which the privilege is claimed must be specified, with an explanation why it

properly falls within the scope of the privilege." Id. at 271 (internal citations omitted).

The FBI has properly established the applicability of the law enforcement privilege. The

D.C. Circuit Court of Appeals has found that officials other than the head of the department

could assert the privilege, including lesser officials such as the head of the relevant office or

division. See Landry v. F.D.I.C., 204 F.3d 1125, 1135-36 (D.C. Cir. 2000). The FBI has satisfied

this criterion by submitting classified and unclassified declarations from Assistant Director

McGarrity, who oversaw the FBI's counterterrorism division and based his assertion of the

privilege on his personal review of the 2012 Summary Report. McGarrity Decl. ¶¶ 3, 9.

Because the Court has found that the classified redacted portions of the Summary Report

fall under the state secrets privilege, the Court need analyze only whether the law enforcement

privilege applies to the unclassified sections in the report that the FBI argues are so protected.

The FBI has explained why the unclassified information in the Summary Report over which it is

invoking the law enforcement privilege properly falls within the privilege's scope. In general

terms, these sections consist of specific law enforcement methods and techniques, the FBI's

assessment of certain evidence gathered in the investigation, and information that would

indirectly tend to reveal confidential cooperation from a foreign government. McGarrity Decl. ¶

39. The unclassified sections subject to the law enforcement privilege are further detailed in the Classified McGarrity Declaration. Id. ¶ 40.

These categories of information fall within the scope of the law enforcement privilege, specifically as the privilege is designed to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources . . .  and otherwise to prevent interference with an investigation." In re Dep't of Investigation of City of New York, 856 F.2d 481, 484 (2d Cir. 1988) (internal citations omitted). The Court again finds itself in the difficult position of finding this burden met without being able to explain precisely how the relevant sections of the Summary Report are in fact covered by the privilege. But the Court is satisfied that the sections at issue contain information that would interfere with the Subfile Investigation, impair other national security investigations, or put confidential sources at risk. The Court need not take a position on how "active" the Subfile Investigation currently is, see Pls. Reply Br. at 14-16, because an investigation "need not be ongoing for the law enforcement privilege to apply as the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information" is revealed to the public. In re City of New York, 607 F.3d at 944 (internal quotations omitted). In any event, the statements in the unclassified and classified McGarrity declarations sufficiently persuade the Court both that the investigation remains open and that disclosure of this information could interfere with this and future investigations.

### B.  Balancing Harms from Disclosure with Plaintiffs' Need for the Information

"Once a court has determined that the law enforcement privilege applies . . . there [is] a pretty strong presumption against lifting the privilege." In re City of New York, 607 F.3d at 945 (internal citations and quotation marks omitted). "To rebut that presumption, the party seeking disclosure must show (1) that the suit is non-frivolous and brought in good faith, (2) that the

information sought is [not] available through other discovery or from other sources, and (3) that the information sought is importan[t] to the party's case. Id. (internal quotation marks omitted). With respect to the importance of the information sought, a "*compelling* need" for the information is required. Id. (emphasis in original). Rebutting the presumption, however, does not end the inquiry. "Rather, once the presumption has been overcome, a court must still balance [t]he public interest in nondisclosure . . . against the need of a particular litigant for access to the privileged information." Id. (internal citations and quotations omitted). Disclosure is therefore required only if the compelling need outweighs the public interest in nondisclosure. See id.

The parties do not dispute that Plaintiffs' request is non-frivolous and that the information in the 2012 Summary Report is not available through discovery from other sources. Pls. Reply, at 16. The only question that remains is whether Plaintiffs have a compelling need for the information. The FBI argues that apart from the name of the third main subject of the investigation that has been declassified and released, Plaintiffs have not attempted to show a need for the information in the 2012 Summary Report. FBI Br., at 22. Plaintiffs argue that while they are "distinctly disadvantaged" by the government's *ex parte* submission, reasonable interferences drawn from certain sections of the 2012 Summary Report establish their compelling need for the redacted information. Pls. Reply, at 18 (quoting Floyd v. City of New York, 739 F. Supp. 2d 376, 380 n.7 (S.D.N.Y. 2010)). Plaintiffs argue that the redacted information in the 2012 Report addresses (a) the role of Mohdar Abdullah; (b) precisely how Bayoumi, Thumairy, and the third main subject of the Subfile Investigation worked together to provide substantial assistance to the hijackers; (c) a key contact with Thumairy and Bayoumi while the hijackers were in Los Angeles and San Diego; and (d) specific evidence about the actions of the third main subject of the Subfile Investigation. Id., at 17.

Nondisclosure has been favored where the request concerns "highly sensitive" information, such as the identity of a confidential informant where the informant's work resulted in multiple arrests and convictions, where the informant was unable to protect themselves, and where the revelation of the informant's identity would have a chilling effect on the willingness of others to serve as a confidential informant. See Goodloe v. City of New York, 136 F. Supp. 3d 283, 301-02 (E.D.N.Y. 2015). Nondisclosure has also been favored where future undercover operations might be negatively affected. See In re City of New York, 607 F.3d at 947.

Disclosure has been favored where a confidential informant's statements did not involve a large-scale conspiracy, where the confidential informant is able to take steps to ensure his security, and where it is likely that the informant has information that is vitally important to the case. Creighton v. City of New York, 12-cv-7454 (PGG), 2015 WL 8492754, at *11 (S.D.N.Y. Dec. 9, 2015). Courts have also favored disclosure where the information "does not involve secret operations or undercover officers," does not "implicate such vital concerns as terrorism," does not "risk divulging any secret law enforcement techniques or procedures," or does not "impair the integrity of [] investigations or weaken any future law enforcement program." Floyd, 739 F. Supp. 2d at 384-85. Where the suit "involves questions of broad public concern and civil rights," such as racial profiling by the NYPD and unconstitutional searches and seizures, see Floyd at 385, or where the information "is key to the Court's eventual resolution of the jurisdictional challenge," Doe 1 v. McAleenan, No. 18-cv-02349 (BLF)(VKD), 2019 WL 4235344, at *6 (N.D. Cal. Sept. 6, 2019), courts have favored disclosure as well.

The Court is unable to publicly confirm whether the unclassified protected information at issue in the Summary Report addresses the topics that Plaintiffs have identified above. Based on the Court's review of this information, however, the Court can say with certainty that Plaintiffs

plainly have no compelling need for either the protected information concerning specific law enforcement methods and techniques or the information that would indirectly tend to reveal confidential cooperation from a foreign government, which, as the FBI argues, has no bearing on the jurisdictional discovery authorized by the Court. FBI Surreply, at 10. Plaintiffs' argument is more colorable with regard to a section containing the FBI's assessment of certain evidence gathered in the investigation. But after carefully balancing the public interest in nondisclosure against Plaintiffs' possible need of this information, the Court finds that the nature of this information supports its nondisclosure. The release of this section may "impair the integrity of [this] investigation[]" or of future investigations. Floyd, 739 F. Supp. 2d at 385. Additionally, this section does not provide any details explaining the FBI's assessment, reducing its potential value to Plaintiffs, and a similar assessment may be made based on evidence already available to Plaintiffs. Accordingly, the Court finds that Plaintiffs have not rebutted the presumption against lifting the law enforcement privilege regarding these sections.

## CONCLUSION

Pursuant to the analysis above, the Court finds the redacted classified sections in the 2012 Summary Report to be properly protected by the state secrets privilege and the redacted unclassified sections to be properly protected by the law enforcement privilege. Because these privileges apply, the Court declines to assess the applicability of the National Security Act, the work product and deliberative process privileges, and the law enforcement privilege as to the redacted classified sections. The Court therefore DENIES Plaintiffs' motion to compel the FBI to produce the redacted portions of the 2012 Summary Report.

Plaintiffs' motion for oral argument is DENIED as moot. The Clerk of Court is

respectfully directed to terminate the motion at ECF No. 5265.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:      October 21, 2020
            New York, New York