UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:

**TERRORIST ATTACKS ON
SEPTEMBER 11, 2001**

------------------------------------------------------------X

03-MDL-01570 (GBD)(SN)

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

On April 24, 2020, the Plaintiffs' Executive Committees ("PECs" or "Plaintiffs") filed a motion under seal to conduct an oral deposition of Akram Alzamari. ECF No. 6155. Counsel for Alzamari filed a memorandum of law in opposition under seal on May 15, 2020. ECF No. 6223. Saudi Arabia filed a memorandum of law opposition on May 15, 2020, agreeing with the arguments made in Alzamari's opposition. ECF No. 6225. Plaintiffs filed their Reply under seal on May 29, 2020. ECF No. 6249. For the reasons below, Plaintiffs' motion is DENIED.[1]

### BACKGROUND

In August 2018, Plaintiffs' investigator and former FBI Special Agent Catherine Hunt identified Akram Alzamari as someone who had contact with the hijackers and learned that Alzamari had been interviewed by the FBI about his knowledge concerning the hijackers' time in Los Angeles. See Declaration of Megan W. Bennett, Dated April 24, 2020 ("Bennet Decl."), Ex. C (April 2020 Declaration of Catherine Mannherz Hunt) ("Hunt Decl.") at ¶ 19; Ex. D (September 2018 Declaration of Catherine Mannherz Hunt) ("2018 Hunt Decl.") at ¶ 26. Hunt located and spoke in person with Alzamari, who was hesitant to discuss his knowledge of the hijackers, but referred Hunt to "the write-ups of [his] interviews" and discussed his opinions on

---

[1] This Opinion & Order has been filed under seal in its entirety. The Court has directed the parties to provide proposed redactions consistent with the FBI Protective Order. The Court will issue a redacted version on the public docket once that process is complete.

the role of the Saudi government's intelligence operations, Consulate, and Ministry of Islamic Affairs ("MOIA") in the running of the King Fahad Mosque. Hunt Decl. at ¶¶ 24, 32 38.

On September 26, 2018, Plaintiffs sent a letter accompanied by Hunt's declaration to the FBI, first identifying Alzamari as a material witness and demanding that Alzamari's statements to the FBI be produced. 2018 Hunt Decl. at 16, ¶ 6. On September 27, 2018, Plaintiffs served a subpoena for Alzamari to appear for an oral deposition. ECF No. 4496, Plaintiffs' Letter-Motion to Compel, Declaration of Andrew J. Maloney ("Maloney Decl."), at ¶ 5; Ex. A. After being served with the subpoena, Alzamari called Plaintiffs' counsel to request a postponement of the deposition so that he could retain counsel, Maloney Decl. at 7, and referred Plaintiffs to an attorney with a not-for-profit organization handling a family immigration matter. Id., at ¶¶ 8-9. In November 2018, the FBI produced reports of its ▮▮▮ interviews of Alzamari conducted on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Bennet Decl., Ex. B (Deposition Transcript of Akram Alzamari ("Dep. Tr."), at Ex. 1-2 ("FBI 302s").

While Plaintiffs' counsel continued to contact Alzamari and press him for a deposition date, Alzamari told Plaintiffs in January 2019 that he had obtained new counsel. ECF No. 4496, Maloney Decl. at ¶¶ 10-12. Plaintiffs' counsel discussed with Alzamari's new counsel whether a declaration may be sufficient before requesting, on March 18, 2019, that Alzamari sit for an oral deposition. Declaration of John M. Maloy, dated May 15, 2020 ("Maloy Decl."), ¶¶ 10-11. In April 2019, Plaintiffs filed a motion to compel Alzamari's testimony and Alzamari moved for a protective order proposing a Fed. R. Civ. P. 31 deposition by written questions. ECF No. 4496; April 30 Letter-Motion, at 3-4. Following further motion practice, the Court ordered that Plaintiffs would be limited to a deposition by written questions, pursuant to Rule 31. ECF No. 4564. The Court also allowed Alzamari's counsel to discuss the parties' written questions before

his deposition. ECF No. 4748, at 2-3. Additional motion practice regarding Alzamari's objections to Plaintiffs' direct and re-direct examination questions followed, and the Court ruled on those objections on December 16, 2019. ECF No. 5372. The deposition proceeded pursuant to Fed. R. Civ. P. 31 in San Diego, California, and was recorded on video, on March 11, 2020.

## LEGAL STANDARD

The parties debate the applicable legal standard. Plaintiffs move the Court for an order requesting that Alzamari appear at an oral deposition, "whether one reopened to allow Plaintiffs an opportunity to ask follow-up questions . . . or ordering a second deposition." Pls. Br., at 10. Alzamari argues that Plaintiffs must show "good cause," citing the Court's May 11, 2020 Order regarding re-opening depositions on the basis of errata. Alzamari Br., at 5. A party must show "good cause" to "extend the time for examination or otherwise alter the limitations" if such an extension is "needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination." Carmody v. Village of Rockville Centre, No. CV-05-4907 (SJF) (ETB), 2007 WL 2177064, at *2 (E.D.N.Y. July 27, 2007); see also Condit v. Dunne, 225 F.R.D. 100, 112 (S.D.N.Y. 2004). The Court finds that the "good cause" standard does not apply in the present case. Plaintiffs are not requesting an extension of time or alteration of the limitations of Alzamari's written deposition. They are requesting that Alzamari's completed Rule 31 written deposition be supplemented by a Rule 30 oral deposition.

Plaintiffs set out the correct standard for the motion to compel in this case. "A motion to compel a second deposition "must comply with the requirements set out in Rule 30(a)(2)(A)(ii)." Cedars-Sinai Medical Center v. Ray, 19-MC-129 (PAE), 2019 WL 2420045, at *2 (S.D.N.Y. June 10, 2019); see also Chang v. Safe Horizons, No. 03-CV-10100 (WHP) (RLE), 2004 WL 1874965, at *1 (S.D.N.Y. Aug. 20, 2004) ("A court's discretion regarding the use of multiple

3

depositions of the same party is governed by Federal Rule of Civil Procedure 26(b)(2).")". Under Rule 30(a)(2)(A)(ii), "[a] party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in [Rule 26(b)(1) and (2)] . . . if . . . the person to be examined has already been deposed in the case." Cedars-Sinai, 2019 WL 2420045, at *2.

Rule 26(b)(2) sets out three factors that the Court must consider in exercising its discretion: "(1) whether the second deposition of the witness would be unnecessarily cumulative; (2) whether the party requesting the deposition has had other opportunities to obtain the same information; and (3) whether the burden of a second deposition outweighs its potential benefit." United States v. Prevezon Holdings, Ltd., 320 F.R.D. 112, 115 (S.D.N.Y. Feb. 27, 2017) (citations omitted). The party opposing the second deposition bears the burden of showing that granting the motion would run afoul of Rules 26(b)(1) and (2). See Judicial Watch, Inc. v. United States Dep't of Commerce, 34 F. Supp. 2d 47, 54 (D.D.C. 1998). The Court has "discretion to make a determination which is fair and equitable under all the relevant circumstances." Prevezon Holdings, Ltd., 320 F.R.D. at 114 (internal citations omitted).

"Courts will typically reopen a deposition where there is new information on which a witness should be questioned." Ganci v. United States Limousine Service, Ltd., No. CV 10 3027 (JFB) (AKT), 2011 WL 4407461, at *2 (E.D.N.Y. Sept. 21, 2011); see also Keck v. Union Bank of Switzerland, No. 94-CV-4912 (AGS) (JCF), 1997 WL 411931, at *1 (S.D.N.Y. July 22, 1997) ("[A] second deposition is often permitted, where new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition."). Where the deposition is reopened because of newly discovered information, "the questioning of the witness is limited to those questions relating to the newly produced information." Ganci, 2011 WL 4407461, at *2. Courts generally favor permitting a second deposition where "the

4

burden of redeposing" the witness "is outstripped by the potential importance of the issue." Keck, 1997 WL 411931, at *2.

## DISCUSSION

I.     Rule 26(b)(2) Factors

    A. Unnecessarily Cumulative

Plaintiffs argue that Alzamari repeatedly, and for the first time, contradicted his prior statements to law enforcement, offering implausible explanations in attempting to explain away specific factual aspects of those prior statements. Pls. Br., at 5. Plaintiffs contend that Alzamari denied having made many of the key statements from his ▇▇▇ FBI interviews. Id. This turn of events and the specific rationalizations offered by Alzamari, Plaintiffs argue, could not have been anticipated. Id. Plaintiffs therefore argue that it is not unnecessarily cumulative for the Court to order a limited oral deposition for Plaintiffs to pursue questions in light of Alzamari's "unforeseen (and unforeseeable) disavowal of the summaries of his interviews." Pls. Reply, at 7.

The Court agrees with Plaintiffs that Alzamari contradicted some of the statements attributed to him in the FBI 302s. But the Court does not find these contradictions to be as stark or inexplicable as Plaintiffs make them out to be, making an oral deposition of Alzamari unnecessarily cumulative. Alzamari affirmed at his deposition that ▇▇▇ ▇▇▇ Dep. Tr., at 132, but corrected that ▇▇▇ "did not use the word ▇▇▇ as had been reported in the 302. Id., at 49. Alzamari had also previously said, according to the 302, that ▇▇▇ ▇▇▇ Maloy Decl., Ex. 9, at FBI-141. At his deposition, Alzamari explained this to mean that if ▇▇▇ Dep. Tr., at 52. Alzamari also clarified that ▇▇▇

5

██████████████████████████ Dep. Tr., at 53. Alzamari's deposition answer is consistent with a statement attributed to him in a different 302 that ████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████ Maloy Decl., Ex. 10, at FBI-183. Alzamari also clarified that the ████████████████████████████████████ and clarified that ███ ████████████████████████████████████. Dep. Tr., at 60-61. He also corrected the FBI agent's spelling of the street name on which ████ lived. Id., at 60.

Alzamari further confirmed that he saw ██████████████████████████ ████████ but disavowed the language in the 302 stating that he had seen ████████████ ███████████████████████████ Id., at 66-67. Alzamari corrected minor descriptions regarding the meeting at the ████████████████ clarifying that ████████████ ██████████████████████████ confirming that he commented to ████ about the ████, and clarifying that people go ████████████████████████████████████████ because there is only one small room in the █████████ Id., at 69-72. Alzamari disavowed that ██████████ ████████████████████████████████████ id., at 84-85, contradicting the 302 from ████████████ Maloy Decl., Ex. 9, at FBI-142. But that 302 is also contradicted by the 302 from the ████████████ interview with Alzamari that recounts that ████████████ ██████████████████████ and the 302 from the ████████████ interview with Alzamari that states that ██████████████████████████ Maloy Decl., Ex. 8, at FBI-225; Ex. 10, at FBI-181. Alzamari, furthermore, confirmed that Thumairy and the hijackers ████████ knew each other, but claimed, ████████████████████████████ that he did not see ████████████ ██████████████████████. Dep. Tr., at 128, 86; Maloy Decl., Ex. 9, at FBI-142.

6

As this analysis demonstrates, Alzamari's deposition transcript is not, as Plaintiffs suggest, "replete with unaddressed contradictions of his prior statements." Pls. Br., at 6. The transcript reflects corrections, clarifications, and generally affirmation of the key events mentioned in the FBI 302s. There are some differences in the accounts provided by the 302s and by Alzamari's deposition, but the differences are not so significant such that they are inexplicable. Indeed, contrary to Plaintiffs' representations, the 302s do not contain records of Alzamari's prior statements, "but statements made by a [non-party] reporting his recollection of statements of the [witness]." United States v. Safavian, 233 F.R.D. 205, 206 (D.D.C. 2006). These 302s also recount events that took place between ▮▮▮▮ years earlier from the time they were recorded, and the deposition recounts events that took place over twenty years earlier. The notion that the written deposition diverges from a prior, more authentic record is belied both by the transcript of the deposition itself and the totality of the circumstances relevant here.

The 302s also contained contradictions themselves, as noted above. Notably, the 302 from the ▮▮▮▮ interview, which Alzamari most frequently disputed, was written 15 days after the interview took place. Alzamari Br., at 11 n.3. The Court will not engage in speculation regarding the reasons why the 302s differ in minor ways from one another and from Alzamari's deposition testimony. But the Court is guided by the Court of Appeals' instruction that a "third party's characterization" of a witness's statement "does not constitute a prior statement of that witnesses unless the witness has subscribed to that characterization." United States v. Almonte, 956 F.2d 27, 29 (2d Cir. 1992) (finding that "[i]f a third party's notes reflect only that note-taker's summary characterization of a witness's prior statement, then the notes are irrelevant as an impeaching prior inconsistent statement."). Courts have accordingly found 302s to be inadmissible as prior inconsistent statements because they "were not made under oath" and

inadmissible as declarations against penal interest since their "trustworthiness is not corroborated." Scarpati v. United States, No. 93-CV-740 (JFK), 1994 WL 256691, at *3 (S.D.N.Y. June 7, 1994), aff'd, 50 F.3d 4 (2d Cir. 1995). Accordingly, the Court gives only limited weight to the accounts in the 302s of Alzamari's prior interviews in this case.

The record also undermines Plaintiffs' arguments that any contradictions were entirely unforeseeable. Plaintiffs based many of their questions on the 302s, citing to the reports to refresh Alzamari's recollection. Pls. Br., at 5. Plaintiffs asked Alzamari if certain passages are true, and if not, to "state which part of the passage is true and which part is an error and explain why [he] say[s] that the statement contains an error or errors." See, e.g., Pls. Ex. A, at 112b, c. Alzamari's counsel also informed Plaintiffs before the deposition, consistent with his testimony, that the two hijackers were introduced to Alzamari ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Maloy Decl., Ex. 3, at 2. Alzamari's counsel additionally informed Plaintiffs that "Alzamari's current recollection differs from certain language in the FBI 302s," and that the language that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Maloy Decl. ¶ 21. Alzamari's answers to this effect were, as such, not unforeseeable. See, e.g., Dash v. Seagate Technology (US) Holdings, Inc., No. CV 13-6329 (LDW) (AKT), 2015 WL 4257329, at *7 (E.D.N.Y. July 14, 2015) (denying motion to reopen deposition on the grounds that the pertinent facts were already available at the time of plaintiffs' deposition).

Additionally, Alzamari's answers that the statements in the 302s "contain many errors," and that he does not "have personal knowledge" of certain topics, are not "pre-scripted," as Plaintiffs argue. Pls. Br., at 8. These answers suggest, rather, that Alzamari's counsel prepared their client consistent with the Court's orders that Alzamari be allowed to review the questions in

advance and is only to answer based on his personal knowledge and observations. ECF Nos. 4748, 5372. Plaintiffs' further argument that Alzamari's answers may have been inaccurate because certain individuals' names were mispronounced is similarly undercut by Alzamari's counsel's attestation that Alzamari was aware before the deposition that he would be asked about those individuals, and the fact that Plaintiffs showed Alzamari images of these individuals before the videographer used their names. Pls. Br., at 9; Maloy Decl. ¶ 24; Dep. Tr., at 32.

### B. Other Opportunities to Obtain the Information and the Burden on Alzamari

Plaintiffs argue that "the information that [they] seek is not available elsewhere." Pls. Reply, at 4. Alzamari, Plaintiffs argue, is the only witness who can testify, for example, as to the "special attention" that Saudis received from Thumairy over a substantial period of time; and the only one who saw █████████████████████████████████ Id. Furthermore, even if some testimony overlaps with other deponents, "[t]wo witnesses communicating the same content to the fact-finder is more persuasive than only one; three more than two; and so on." Id., at 4-5. Alzamari argues that the areas of inquiries about which Plaintiffs claim there are inconsistencies could be addressed by other deponents, noting that Mohdar Abdullah's deposition has already been noticed and Hunt's declaration makes it clear that Plaintiffs have spoken to Mohamed Johar. Alzamari Br., at 11-13.

To the extent that Plaintiffs would like to compare Alzamari's sworn deposition statements with those of other relevant individuals to confirm their accuracy, Plaintiffs may question Thumairy, Johar, and Abdullah about the same topics. But Plaintiffs have already deposed Alzamari concerning the topics they allege he uniquely is able to testify on, including the "special attention" that Saudis received from Thumairy and Alzamari's eyewitness accounts ███████████████████████████. All the information at issue was available to Plaintiffs

9

before the deposition, including the statements in the 302s about which Plaintiffs asked Alzamari to confirm or deny their veracity. Plaintiffs do not cite any caselaw, nor has the Court found any, to justify a second deposition where, as Plaintiffs argue, "the witness's own conduct at the deposition [] constitutes new evidence." Pls. Reply, at 4.

Courts typically grant requests for a second deposition where newly received information contradicts a witness's prior testimony. See Cedars-Sinai, 2019 WL 2420045, at *4 (finding that a second deposition was necessary to put questions to a witness regarding nearly 1,800 new responsive documents); Keck, 1997 WL 411931, at *2 (allowing a second deposition to test a new allegation that had not been made before the initial deposition); Hayden v. Acadian Gas Pipeline System, No. Civ. A. 96-3612, 1997 WL 180380, at *6 (E.D. La. Apr. 10, 1997) (allowing a second deposition of plaintiff where plaintiff changed the date of alleged accident); Dixon v. Certainteed Corp., 164 F.R.D. 685, 692 (D. Kan. 1996) (production after first deposition of documents containing statement by witness warranted second deposition); Hurley v. JARC Builders, Inc., 164 F.R.D. 39, 40 (E.D. Pa. 1995) (reopening of deposition to explore corporate relationships of which deposing party was unaware of at first deposition). None of these cases suggests that a witness's own answers at his first deposition constitute new information on which a second deposition is justified. No newfound documentary evidence or other witness testimony contradicts Alzamari's sworn testimony.

Because there is no new information at issue here about which Alzamari may be again deposed, "the burden of redeposing" the witness is not "outstripped by the potential importance of the issue." Keck, 1997 WL 411931, at *2. The balance weighs especially in Alzamari's favor as a non-party in this litigation. Courts have found that "any potential benefit of permitting the second deposition of a[] [non-party] is outweighed by the burden this deposition would place on

[the] non-party." United States Sec. & Exch. Comm'n v. Ahmed, No. 3:15-CV-675 (JBA), 2018 WL 1541902, at *1 (D. Conn. Mar. 29, 2018) (finding, additionally, that "[t]he Court bears in mind when weighing the relevance with the proportional needs of the case, that [the witness] is a non-party who already produced documents by [] Defendants."). Where, as here, the potential benefit of a second deposition is low, and the burden placed on a non-party who has already alleged harassment in this litigation is high, see Alzamari Br., at 3, the Court finds that the burden of a second deposition outweighs any potential benefit.

**II.      Hostile Witness**

Plaintiffs argue that Alzamari "unexpectedly became a hostile witness" when he contradicted his prior statements to law enforcement, offering "implausible" explanations in attempting to explain away those prior statements. Pls. Br., at 5. The determination of whether a witness is hostile "must be based upon the demeanor of the witness, the witness's situation and relationship to and with the parties, the witness's interest in the case, and the inducements he or she may have for withholding the truth." 81 Am. Jur. 2d Witnesses § 875 (2d ed. updated May 2020) (internal citations omitted).

Courts have found witnesses to be hostile where "the interest of the proposed deponents" and "the interest of the defendant in resisting plaintiff's claim" were "closely allied," and the proposed deponents "would be under a strong motive to exculpate themselves." Oscar Gruss & Son v. Lumbermens Mut. Cas. Co., 41 F.R.D. 279, 281 (S.D.N.Y. 1966); see also McCaffrey v. City of New York, No. 11-CV-1636 (RJS), 2013 WL 494025, at *8 (S.D.N.Y. Feb. 7, 2013) (determining a witness to be hostile where he said that he had "already been through this and I'm done . . . I feel like it's a waste of time."); Bingham v. Zolt, 66 F.3d 553, 566 (2d Cir. 1995) (finding a witness who responded beyond the questions asked "in order to blame his co-

defendants" to be hostile); United States v. Eaton, 485 F.2d 102, 105 (10th Cir. 1973) (finding a witness who was evasive and stated that she did not desire to testify to be a hostile witness).

Alzamari evidenced none of the indicia of a hostile witness. His interests were not aligned with any opposing party, he did not decline to answer any questions on the grounds that he had already provided answers to the FBI, he did not respond beyond the questions asked, and he did not indicate a desire not to testify. The deposition video shows that he was attentive to the questioned asked and thorough in his answers. Plaintiffs contend, regardless, that "when it appears a party is genuinely surprised by adverse testimony from his own witness, the trial court may . . . allow the party calling the witness to cross-examine and to interrogate him as to prior contradictory statements to the extent necessary to overcome the effects of the surprise." Moomaw v. United States, 220 F.2d 589, 592 (5th Cir. 1955); Eaton, 485 F.2d at 104-05. But Alzamari is a non-party witness, not Plaintiffs' witness. Plaintiffs may not have expected all of Alzamari's answers, but there is no indication that he answered any untruthfully or with hostile intent. The Court accordingly does not find that Alzamari was a hostile witness.

## CONCLUSION

The Court DENIES Plaintiffs' motion to conduct an oral deposition of Akram Alzamari. Plaintiffs' motion for oral argument is DENIED as moot. The Clerk of Court is respectfully directed to terminate the gavel at ECF No. 6250. This Order is restricted to the following case participants: Plaintiffs' Executive Committees, Counsel for Mr. Alzamari, Kingdom of Saudi Arabia, Dallah Avco Trans Arabia, and the Federal Bureau of Investigation.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

Dated:   July 20, 2020
         New York, New York