UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**IN RE: TERRORIST ATTACKS ON
SEPTEMBER 11, 2001**

Civil Action No.
03 MDL 1570 (GBD) (SN)

-----------------------------------------------------------

**This Document Relates To:**

*Havlish, et al. v. bin Laden, et al.*, **Case No. 03-CV-09848**
*Ashton, et al. v. al Qaeda Islamic Army, et al.*, **Case No. 02-CV-06977**
*Burnett, Sr., et al., v. Islamic Republic of Iran*, **Case No. 15-CV-9903**
*Burlingame, et al. v. bin Laden, et al.*, **Case No. 02-CV-07230**
*Bauer, et al. v. al Qaeda Islamic Army, et al.*, **Case No. 02-CV-07236**
*O'Neill, Sr., et al. v. Republic of Iraq, et al.*, **Case No. 04-CV-1076**
*Federal Insurance Co., et al. v. al Qaida, et al.*, **Case No. 03-CV-06978**
----
*All other cases against the Islamic Republic of Iran*

**THE *FEDERAL* PLAINTIFFS' OBJECTIONS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 72(A) AND 28 U.S.C. § 636(B)(1)
<u>TO THE SEPTEMBER 30, 2020 OPINION AND ORDER</u>**

**TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. STANDARD OF REVIEW ............................................................................................... 4

III. ARGUMENT AND OBJECTIONS .................................................................................. 5

   A. The Purpose of the Common Benefit Fund is to Compensate Attorneys for their Common Benefit Work in Advancing the MDL ................................................... 5

   B. The PEC Members are Entitled to Common Benefit Fees for their Relative Contributions to the Litigation on behalf of All MDL Plaintiffs ......................... 8

   C. The 2020 Order Creates an Artificial Divide between the "Iran Claims" and the "Saudi Claims" ...................................................................................................... 12

IV. CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Air Crash Disaster at Florida Everglades*,
    549 F.2d 1006 (5th Cir. 1977) ...................................................................................6, 7

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*,
    2008 U.S. Dist. LEXIS 17535 (D. Minn. Mar. 7, 2008) ..............................................7

*Muenchener Rueckversicherungs Gesellshaft Aktiengesellschaft in Muenchen, et al. v. Kingdom of Saudi Arabia, et al.*,
    Case No. 1:17-cv-07914 ................................................................................................1

*In re Terrorist Attacks on September 11, 2001*,
    2016 U.S. Dist. LEXIS 151675 (S.D.N.Y. Oct. 31, 2016) ..........................................4

*In re Terrorist Attacks on September 11, 2001*,
    295 F.Supp.2d 1377 (J.P.M.L. 2003) ............................................................................8

*Tompkins v. R.J. Reynolds Tobacco Co.*,
    92 F. Supp.2d 70 (N.D.N.Y. 2000) ................................................................................4

*In re Zyprexa Prods. Liab. Litig.*,
    467 F. Supp.2d 256 (E.D.N.Y. 2006) ............................................................................7

*In re Zyprexa Prods. Liab. Litig.*,
    594 F.3d 113 (2d Cir. 2010)......................................................................................6, 7

**Statutes**

28 U.S.C. § 636(b)(1)(A) ................................................................................................1, 4

**Other Authorities**

DUKE LAW CENTER FOR JUDICIAL STUDIES, *Guidelines and Best Practices for Large and Mass-Tort MDLs* (2d Edition 2018) ....................................................6, 7

Fed. R. Civ. P. 72 ..............................................................................................................1, 4

MANUAL FOR COMPLEX LITIGATION, FOURTH  ..............................................................5

Pursuant to Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b)(1), the *Federal* Plaintiffs[1] file this Objection to the September 30, 2020 Opinion and Order of the Honorable Sarah Netburn, U.S. Magistrate Judge, for consideration by the Honorable George B. Daniels, U.S. District Court Judge. The *Federal* Plaintiffs do not object to Magistrate Judge Netburn's recommendation that it is appropriate to establish a common benefit fund at this time. The *Federal* Plaintiffs do, however, object to the September 30, 2020 Opinion on the basis that the creation of a common benefit fund applicable solely to work undertaken to obtain non-adversarial default judgments as to Iran is clearly erroneous and contrary to law. The *Federal* Plaintiffs respectfully request that this Court endorse a protocol for the operation of a common benefit fund that compensates counsel for their contributions to and investments in the multi-district litigation proceedings as a whole (i.e., all common benefit work and investments that have been necessary to prosecute this MDL).

**I.    PRELIMINARY STATEMENT**

On September 30, 2019, Judge Netburn issued an Opinion and Order granting, in part, the *Havlish* Plaintiffs' request for the creation of a common benefit fund (the "2019 Order"). *See* ECF No. 5180. In that decision, the Court recognized that the significant recoveries flowing to the MDL plaintiffs from the United States Victims of State Sponsored Terrorism Fund ("USVSST") – and the resulting fees realized by counsel for those plaintiffs – warranted the establishment of a common benefit fund. The Court directed the parties to meet and confer

---

[1] As used herein, the *Federal* Plaintiffs include the plaintiffs in the following cases, and their counsel, Cozen O'Connor: *Federal Insurance, et al. v. Al Qaida, et al.,* Case No. 1:03-cv-06978; *Vigilant Insurance, et al. v. Kingdom of Saudi Arabia, et al.,* Case No. 1:03-cv-08591; *Pacific Employers Insurance Co., et al. v. Kingdom of Saudi Arabia, et al.,* Case No. 1:03-cv-08591; *Underwriting Members of Lloyd's Syndicate 2, et al. v. Al Rajhi Bank, et al.,* Case No, 1:16-cv-07853; *Underwriting Members of Lloyd's Syndicate 53, et al. v. Kingdom of Saudi Arabia, et al.,* Case No. 1:17-cv-02129; *Muenchener Rueckversicherungs Gesellshaft Aktiengesellschaft in Muenchen, et al. v. Kingdom of Saudi Arabia, et al.,* Case No. 1:17-cv-07914; and *Wurttembergisce Versicherung AG v. Kingdom of Saudi Arabia,* Case No 1:18-cv-12257.

concerning certain issues relating to the operation of the common benefit fund. Those efforts were not productive.

The *Federal* Plaintiffs thereafter moved for reconsideration of the 2019 Order to the extent that it provided for the establishment of a common benefit fund that inured solely to the benefit of the *Havlish* counsel for their work on the "Iran claims." *See* ECF No 5359. The *Federal* Plaintiffs further sought reconsideration of the Court's statement that it would be "premature" to consider the time and investments spent "litigating claims against" defendants other than Iran given that 'no other Defendant has settled or been found liable." *Id.* at 2-3. The *Federal* Plaintiffs submitted a proposal to the Court regarding a framework for a common benefit fund designed to compensate the members of the Plaintiffs' Executive Committees ("PECs") for their relative investments in prosecuting the MDL as a whole. The *Federal* Plaintiffs noted that, at least for certain of the PECs firms, these investments have been enormous, and were absolutely necessary to fulfill the obligations imposed on the PECs by the Court pursuant to the governing Case Management Orders.

On September 30, 2020, Judge Netburn issued an Opinion and Order that denied the motions for reconsideration filed by the *Federal* Plaintiffs and the other Responding Plaintiffs[2] and created a common benefit fund applicable solely to the work related to the Iran default judgments (the "2020 Order"). *See* ECF No. 6481. The *Federal* Plaintiffs do not object to the Court's creation of a common benefit fund, or Judge Netburn's determination that the *Havlish* counsel performed common benefit work that entitles them to seek appropriate compensation from the fund. Rather, two aspects of the 2020 Order merit the *Federal* Plaintiffs' objections here:

---

[2] The Responding Plaintiffs include the Plaintiffs' Executive Committee for Wrongful Death and Personal Injury Plaintiffs, as well as plaintiffs in the cases referenced in the caption above.

*First*, Judge Netburn improperly limited the scope of the common benefit fund by formulating a structure designed to compensate counsel only for the efforts undertaken in successfully obtaining the default judgment against Iran. Although Judge Netburn acknowledged that other attorneys, in addition to the *Havlish* counsel, may be entitled to seek a common benefit fee, she nonetheless recommended that counsel be permitted to submit evidence only related to work in securing the non-adversarial default judgment against Iran, subject to a "presumptive cutoff for common benefit work" of December 22, 2011. *See* ECF No. 6481 at 10.

Judge Netburn's proposed approach contravenes the governing law, equitable principles, committee structure in this MDL, as well as the public policy considerations necessary for the effective management of complex MDL proceedings, all of which indicate that the common benefit fund should serve as a vehicle to benefit the committees for their investments in the MDL as a whole. Whereas case law establishes that the fund structure in complex MDL proceedings is intended to compensate counsel for a broad range of work critical to the courts' management of MDL cases, Judge Netburn's ruling authorizes recovery only for a thin subset of the common benefit work, and only for such work specifically tied to the monetary recovery supporting the fund.

*Second*, Judge Netburn erred in embracing the fiction that there are "Iran cases" in the MDL that are separate and distinct from the "Saudi cases" in the MDL. The *Federal* Plaintiffs object to this construct, and also to the related notion that it is premature to consider a common benefit fee "for other cases in the MDL because those cases have not yet reached conclusion." *See* ECF No. 6481 at 4-5. In this regard, the 2020 Order fails to recognize that the Judicial Panel for Multidistrict Litigation established a single MDL. The structure of that single MDL involved (and indeed required) an obligation for the PECs to prosecute claims against numerous common

3

defendants *other than* Iran and Saudi Arabia, and to invest significant time and expense associated with case management responsibilities imposed by the Court.

Judge Netburn's recommendation for a common benefit fund that authorizes a fee due only to those attorneys who secured a non-adversarial default judgment that somewhat serendipitously bore substantial financial recoveries is erroneous because it fails to compensate other attorneys' common benefit work and investments necessary to prosecute the MDL. The 2020 Order also incentivizes attorneys to handle only those aspects of the MDL that are perceived to have the potential to position them for a common benefit windfall. By imposing an artificial divide between the "Iran claims" and all other claims, objectives, and administrative responsibilities involved in the MDL, the 2020 Order unduly prejudices those attorneys who have undertaken work for the common benefit of all plaintiffs in the MDL.

For the reasons discussed herein, the *Federal* Plaintiffs respectfully submit that the Court should decline to adopt Judge Netburn's recommendations as set forth in the 2020 Order.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b)(1)(A) authorize the district court to modify or set aside any part of a magistrate judge's order that is clearly erroneous or contrary to law. The district court's review is *de novo,* and the court must "'arrive at its own, independent conclusion' regarding those portions of the Report to which objections were made." *In re Terrorist Attacks on September 11, 2001*, 2016 U.S. Dist. LEXIS 151675, *271 (S.D.N.Y. Oct. 31, 2016) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189-90 (S.D.N.Y. 1985) (citations omitted)).

Judge Netburn's creation of a common benefit fund applicable solely to the "Iran claims" is in conflict with the governing law, and at odds with equitable considerations as to the structure and realities of this multi-district litigation. *See Tompkins v. R.J. Reynolds Tobacco Co.,* 92 F.

4

Supp.2d 70, 74 (N.D.N.Y. 2000) ("[a]n order is clearly erroneous when 'the reviewing court is left with the definite and firm conviction that a mistake has been committed.' . . . [a]n order is contrary to law 'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure'") (citations omitted).

## III.     ARGUMENT AND OBJECTIONS

### A.     The Purpose of the Common Benefit Fund is to Compensate Attorneys for their Common Benefit Work in Advancing the MDL

Judge Netburn's recommendation to create a common benefit fund applicable to a segment of the litigation, and solely to the claims against a single defendant, marks a departure from established law and guidelines governing common benefit funds in the context of complex litigation proceedings. The prevailing view is that common benefit funds are intended to govern the broad scope of the MDL, and to compensate those attorneys who undertake tasks for the benefit of all plaintiffs in the MDL. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH §§ 10.21-10.225; 14.121; 14.215; 22.62. Indeed, Judge Netburn recognized in the 2019 Order that common benefit funds serve as a means to distribute the costs of litigation, and to compensate attorneys for work performed for the common benefit. *See* ECF No. 5180 at 3. Judge Netburn further recognized that common benefit fees are due to those attorneys who "confer a substantial benefit" on the MDL plaintiffs, and that "courts rely on this doctrine to assess attorney's fees in favor of attorneys who render legal services in favor of all MDL plaintiffs." *See* ECF No. 5180 at 5 (citing *In re Vioxx Prods. Liab. Litig.*, 760 F.Supp.2d 640, 647-48 (E.D. La. 2010)).

By endorsing a framework that authorizes common benefit fees only for counsel's work in furtherance of the default judgment against Iran, the 2020 Order dismantles the fund structure at the expense of, and prejudice to, attorneys who made significant contributions to the MDL proceedings over nearly two decades.

5

As Judge Netburn acknowledges, the MDL court is vested with broad managerial powers to create a leadership structure at the outset of the litigation. *See* ECF No. 5180 at 4. The central objective of the leadership structure is to "ensure the effective management of the litigation." *See* DUKE LAW CENTER FOR JUDICIAL STUDIES, *Guidelines and Best Practices for Large and Mass-Tort MDLs* (2d Edition 2018) at 29. Among other responsibilities, the lead attorneys are responsible for negotiating and drafting case management procedures to govern all claims in the MDL, providing reports to the Court to facilitate its management of the litigation, coordinating discovery and pretrial work, developing proof necessary for trial, drafting motions, working with experts, and communicating with the opposing parties and court; in other words "[t]hey must be able to manage all aspects of the litigation." *Id.* at 29. The leadership structure is tailored to the needs and complexity of the particular case to the objective of efficient case management. *Id.* at 33.

The attorneys who assume and fulfill the obligations required of such leadership committees play a vital role in assisting and enabling the courts' management of complex MDL proceedings. *See In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 130 (2d Cir. 2010). Under these circumstances, courts recognize that "[m]anagerial power is not merely desirable. It is a critical necessity." *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1012 (5th Cir. 1977). For this reason, the attorneys comprising the leadership committees are obligated to perform *all* of the administrative and common benefit work falling within the structure of the MDL and required by the Court – they do not have the option of ignoring certain of that work because it seems less likely to produce a recovery than other required tasks.

As a corollary to the court's authority to appoint attorneys to manage complex proceedings, courts are obligated "to ensure that they are properly compensated for their work."

*See* DUKE LAW CENTER FOR JUDICIAL STUDIES at 64-65. "The desirability – indeed, the compelling need – to have pretrial proceedings managed or at least coordinated by lead counsel or a steering or executive committee demands the existence of a source of compensation for their efforts on behalf of all." *In re Zyprexa Prods.*, 594 F.3d at 130; *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 17535, *20 (D. Minn. Mar. 7, 2008) ("As a corollary to this appointment [to the PEC] the court must be permitted to compensate fairly the attorneys who serve on such a committee") (citations omitted). The court's power to manage complex litigation through the establishment of an executive or steering committee would be entirely "illusory if it [were] dependent upon lead counsel's performing the duties desired of them for no additional compensation." *In re Air Crash Disaster*, 549 F.2d at 1016.

Although courts often establish the framework for a common benefit fund at the outset of the litigation, there is no specific timeframe in which a fund must be created, and no common benefit fund currently governs these proceedings. As with other aspects of complex litigation proceedings, common benefit funds are tailored to the particular facts of the proceedings, and such funds may remain unfunded until the parties reach a global settlement, or payment is available through partial settlement or other sources. *See, e.g., In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp.2d 256, 267 (E.D.N.Y. 2006). When funding becomes available, the sums should be deposited in the common benefit fund and assessed pursuant to a criteria established by the Court, with the recognition that the funds will be "disproportionately going to the plaintiffs' leadership." *See* DUKE LAW CENTER FOR JUDICIAL STUDIES at 74. There is no support for the concept, as embraced by the 2020 Order, that work directed to only a particular result or recovery is eligible for a common benefit fee, to the exclusion of compensating other common

benefit work and investments that were required under the structure of the MDL and governing Case Management Orders.

> B. The PECs Members are Entitled to Common Benefit Fees for their Relative Contributions to the Litigation on behalf of All MDL Plaintiffs

By imposing a December 22, 2011 presumptive cutoff date for common benefit work, and limiting the work considered to work directed toward the default judgment against Iran, the 2020 Order discounts the massive scope of work undertaken by the committee members in furtherance of the objectives of the MDL and in fulfillment of the obligations imposed on the PECs by the Court, on behalf of all MDL plaintiffs. The 2020 Order erroneously allocates the entirely of the common benefit fund it conceives exclusively to a single aspect of the proceeding, without regard to the tasks undertaken by the PEC members for the management of the proceedings and fulfillment of the PECs' administrative or other Court-ordered responsibilities over the course of this litigation.

In December 2003, the Judicial Panel on Multidistrict Litigation ordered that the lawsuits filed against defendants who allegedly promoted, financed, sponsored, or otherwise supported the terrorist attacks of September 11, 2001 be consolidated and transferred to the United States District Court for the Southern District of New York, and assigned to the Honorable Richard C. Casey. *See In re Terrorist Attacks on September 11, 2001*, 295 F.Supp.2d 1377, 1378 (J.P.M.L. 2003). The resulting multi-district litigation encompassed claims by thousands of individual wrongful death and personal injury claimants, as well as commercial claimants seeking recovery of several billion dollars in economic losses, against a range of defendants those plaintiffs sought to hold accountable for the terrorist attacks. The nature and scope of the MDL proceedings demanded that counsel take coordinated and simultaneous efforts on various fronts to facilitate the efficient conduct of the litigation.

To that end, and consistent with his managerial authority, Judge Casey established a committee structure to address the anticipated complexities of the MDL proceedings as a whole. *See* Case Management Order ("CMO") #3, ECF No. 248. CMO #3 established a single Plaintiffs' General Steering Committee, operating through two Plaintiffs' Executive Committees, one comprised of attorneys representing the interests of wrongful death and personal injury claimants, and other populated by counsel representing commercial plaintiffs. *Id.* at ¶ 1.

The committees were charged with the *responsibility* to guide the litigation *as a whole*, in furtherance of the Court's interest in managing a coordinated approach to pretrial proceedings involving common legal and factual issues on behalf of all plaintiffs. *Id.* at ¶ 10 ("The Plaintiffs' Executive Committee shall conduct all pretrial proceedings involving common legal and factual issues, whether relating to liability or damages, on behalf of all plaintiffs."). The Court imposed significant obligations on the committees for the benefit of all plaintiffs, which were critical to the Court's ability to effectively manage the proceedings. CMO #3 further directed the co-chairs of the PECs to "ensure that all plaintiffs act together where possible in an effort to avoid duplicative filings." *Id* at ¶ 9. Judge Casey further recognized that the work necessary to represent the interests of the MDL plaintiffs and to advance the MDL would need to proceed simultaneously on different fronts, and therefore directed the committees to "distribute all works assignments in such a manner as to promote the orderly and efficient conduct of this litigation, and [] avoid unnecessary duplication and unproductive effort." *Id.* at ¶ 12.

The docket for this proceedings plainly reflects the immense scope of the work undertaken by the counsel for the *Federal* Plaintiffs and other committee members on behalf of all plaintiffs in the MDL. In addition to the development of case strategy, coordination with co-counsel, drafting and preparing of case management reports, and negotiations with opposing

9

counsel for dozens of defendants, the PECs' members also participated in significant document-intensive discovery, global investigation efforts, third-party discovery through subpoenas, Freedom of Information Act requests, and *Touhy* submissions, the handling of hundreds of dispositive motions, Second Circuit appeals, petitions for *certiorari,* and related proceedings aimed at furthering the vast objectives of the proceedings. Committee members simultaneously pursued related claims in a forfeiture proceeding in federal court in Chicago seeking to attach frozen al Qaeda assets, which funds, if recovered, would have been available for the benefit of 9/11 plaintiffs as a whole. Given this backdrop, there can be no dispute that the PEC members have invested and continue to invest significant time and effort in prosecuting the claims on behalf of all of the MDL plaintiffs, and have also invested millions of dollars in expenses in support of same.

At the same, other committee members and attorneys engaging in common benefit work (including counsel for the *Havlish* plaintiffs) pursued other aspects of the case, as contemplated by CMO #3, on behalf of the MDL plaintiffs. At the time that the parties engaged in these efforts on behalf of the MDL plaintiffs, there was no indication as to which efforts would result in financial recovery, nor is there information available to what financial recoveries will be forthcoming. To date, it is the default judgment against Iran and the funds available pursuant to the USVSST (the creation and operation of which exists entirely independent of the *Havlish* counsel and their efforts) that has produced a substantial recovery in the course of the MDL proceedings. Consistent with the governing law and equitable principles discussed above, a percentage of such funds should be available to fund the common benefit fund, to compensate the attorneys for their work in the advancement of the MDL.[3]

---

[3] The *Federal* Plaintiffs agree that it is within the structure they are proposing that the *Havlish* counsel will be entitled to receive appropriate compensation for the common benefit work they performed in pursuing a default

10

The 2020 Order is incorrect in its determination that the only work entitled to a common benefit at this juncture is the work directed to the default judgment against Iran; such a view overlooks the scope of the litigation and breadth of its objectives. As Judge Netburn recognizes that common benefit fees are available for attorneys who "render legal services beneficial to all MDL plaintiffs," *see* ECF No. 6481 at 5, the work of the committee members has yielded a variety of benefits to the plaintiffs in the MDL. The MDL plaintiffs' interests in accountability, publicity, and deterrence are not resolved simply through the receipt of payments funneled through a federally-established fund. To the contrary, the plaintiffs in the MDL are using the litigation system to pursue a variety of goals aimed broadly at targeting parties implicated in advancing al Qaeda's agenda.

Much of the common benefit work undertaken by the committee members that post-dated the default judgment against Iran also contributed in the monetary recoveries made possible by the USVSST. The significant efforts of the committee members that resulted in the enactment of the Justice Against Sponsors of Terrorism Act ("JASTA") (and pursued related media coverage elevating awareness of the litigation) prompted thousands of additional plaintiffs to join the litigation. The recoveries that counsel have collected, and will continue to collect, from the USVSST result, in large part of the leveraging of attorney-client relationships that were established over fifteen years of contentious litigation, and which exist because of efforts with no direct nexus to the default judgment against Iran. It defies logic for the Court to segment the Iran

---

judgment against Iran, and the degree to which an attorney's work contributed to the realization of a recovery is a factor relevant to the determination of a common benefit fee. To the extent the *Havlish* counsel's representations regarding the scope and necessity of the work they performed in relation to the default judgment against Iran are correct, the *Havlish* counsel would be entitled to proper compensation for such common benefit work, and the framework that the *Federal* Plaintiffs now propose will have no impact on such a claim.

11

default judgment and to preclude the committee members from seeking common benefit fees for work that both enhanced and enabled the efficient prosecution of the MDL.

    C.    The 2020 Order Creates an Artificial Divide between the "Iran Claims" and the "Saudi Claims"

The 2020 Order overlooks the realities and complexities of this MDL proceeding by establishing a common benefit fund applicable solely to the claims against Iran. On this basis, the *Federal* Plaintiffs also object to Judge Netburn's determination that it is appropriate to consider a common benefit fee *solely* for the counsel that contributed work for the benefit of plaintiffs in securing the original default judgment against Iran. *See* ECF No. 6481 at 7. This determination is premised on the argument that the "Saudi cases in this MDL" are not yet resolved, and that the members of the Plaintiffs' Executive Committees are not entitled to compensation for "other cases in the MDL" because those cases have not yet reached conclusion, or resulted in monetary success. *Id.* at 5.

In the 2019 Order, Judge Netburn recognized that the law does not require that the parties seeking the benefit of the fund "must actually bring money into the court." ECF No. 5180 at 8 (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)). Yet in the 2020 Order, Judge Netburn now rejects as untimely any request to be made by the *Federal* Plaintiffs for common benefit fees for "non-Iran related work." These positions cannot be reconciled.

The committee structure operates, in part, through a framework that vests the court with authority to compensate attorneys for case management responsibilities; this structure recognizes the critical need to provide compensation for numerous tasks, none of which have a direct role in bringing money into the court. The suggestion that there are "Iran cases" in the MDL and separately "Saudi cases" in the MDL is belied by the fact that there are also Sudanese cases, Emirati bank cases, and numerous business entity and individual cases, all of which make up a

12

part of the consolidated MDL proceedings. The JPML established a single proceeding, governed by Case Management Orders that appoint a single steering committee, operating through two PECs which would guide the litigation as a whole, in furtherance of the Court's interest in managing a coordinated approach for pretrial proceedings involving common legal and factual issues on behalf of all plaintiffs. To the extent that the 2020 Order advances a framework for a common benefit fee available only to attorneys who worked to secure liability against one defendant, from which a financial recovery flowed (in hindsight), is inconsistent with the policy considerations that govern the fund structure that operates to compensate attorneys that performed work for the common benefit of all MDL plaintiffs.

Indeed, by limiting the common benefit fee to counsel's efforts *in securing the original default judgment* against Iran, *see* ECF 6481 at 7, the Court effectively disregards the impact of the other case management responsibilities and obligations imposed on the committees by the Court, in furtherance of the MDL. Even accepting the premise that the common benefit work in the MDL could be divided by defendant, there is a significant component of the work undertaken that is more collective, or essentially administrative in nature, such as the negotiation of case management protocols, the arguments before the Court on disputed points, and periodic reports on the status of the various claims and motions. The PECs undertook these tasks at the Court's direction and pursuant to Case Management Orders, in furtherance of the MDL, and not as part of the "Iran case" or the "Saudi case." The approach embraced by Judge Netburn in the 2020 Order would leave all such work entirely uncompensated, notwithstanding its necessity and critical importance to the prosecution of the MDL. The Court's approach, which adheres to the construct fabricated by the *Havlish* counsel and draws a fictional divide between the "Iran claims" and the "Saudi claims" (without any reference to other defendants or the broader aspects

13

of this litigation) is inconsistent with the equitable considerations and law, and will result in severe prejudice to other committee members and firms.

## IV. CONCLUSION

For the reasons set forth in the *Federal* Plaintiffs' Objections, this Court should set aside the September 30, 2020 Opinion & Order and endorse a protocol for the operation of a common benefit fund that compensates counsel for their contributions to and investments in the MDL proceedings as a whole. The *Federal* Plaintiffs' further respectfully submit that this Court accept its proposal, as set forth in greater detail in prior briefing, that the Court appoint a special master to administer the common benefit fund, in recognition of the fact that this litigation is already straining the resources of the Court, and it will require significant time and effort to assess the scope and proprietary of common benefit fees in accordance with the criteria traditionally applied in such circumstances. *See* ECF No. 6481 at 9-10; ECF No. 5359 at 13-14.

Dated: November 4, 2020

Respectfully submitted,

COZEN O'CONNOR

By: __/s/  Sean P. Carter__
Sean P. Carter, Esq.
Stephen A. Cozen, Esq.
J. Scott Tarbutton, Esq.
1650 Market Street
Suite 2800
Philadelphia, PA 19103
Tel: 215-665-2105

*Attorneys for the Federal Insurance Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the *Federal* Plaintiffs' Objections Pursuant to Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1) to the September 30, 2020 Opinion and Order was filed electronically this 4th day of November 2020. Notice of this filing will be sent to all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system. Parties may access this filing through the Court's ECF system.

                                         /s/ J. Scott Tarbutton
                                         J. Scott Tarbutton

LEGAL\48855888\1