IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **IN RE: TERRORIST ATTACKS ON** | : | |
| **SEPTEMBER 11, 2001** | : | MDL 03-1570 (GBD)(SN) |

**This Document Relates To:**

*Havlish, et al. v. bin Laden, et al.,* **Case No. 03-CV-09848**
*Ashton, et al. v. al Qaeda Islamic Army, et al.*, **Case No. 02-CV-06977**
*Burnett, Sr., et al., v. Islamic Republic of Iran,* **Case No. 15-CV-9903**
*Burlingame, et al. v. bin Laden, et al.*, **Case No. 02-CV-07230**
*Bauer, et al. v. al Qaeda Islamic Army, et al.*, **Case No. 02-CV-07236**
*O'Neill, Sr., et al. v. Republic of Iraq, et al.*, **Case No. 04-CV-1076**
----
*All Other Cases Against the Islamic Republic of Iran*


*HAVLISH* **PLAINTIFFS' RESPONSE IN OPPOSITION TO THE**
*FEDERAL* **PLAINTIFFS' RULE 72 OBJECTIONS TO MAGISTRATE
<u>JUDGE NETBURN'S SEPTEMBER 30, 2020 OPINION AND ORDER</u>**

November 25, 2020

Table of Contents

I. PRELIMINARY STATEMENT ................................................................................ 1

II. FACTUAL BACKGROUND ..................................................................................... 2

III. SUMMARY OF THE ARGUMENT .......................................................................... 5

IV. STANDARD OF REVIEW ........................................................................................ 8

V. ARGUMENT ............................................................................................................ 10

    A. The Purpose of a Common Benefit Fund Is Not Simply to Compensate Attorneys for Their Common Work, But Rather to Reward Those Attorneys Whose Work Produces a Common Benefit .............................................................................................................. 10

    B. The Court Should Reject *Federal* Plaintiffs' attempt to Direct Common Benefit Fees to PEC Members Whose Work Has Not Contributed to Recovery For MDL Claimants 12

    C. The Reconsideration Order Appropriately Contemplates a Common Benefit Fund to Compensate Counsel that Contributed to the Work Product that Produced a Recovery Against Iran for All MDL Claimants ............................................................................. 14

VI. CONCLUSION ........................................................................................................ 15

Plaintiffs in *Havlish v. Bin Laden, et al.*, case no. 03-cv-09848, respectfully ask the Court to deny the *Federal* Plaintiffs' Rule 72 Objections to Magistrate Judge Netburn's September 30, 2020 Order and Opinion, ECF 6481, denying the *Federal* Plaintiffs' motion for reconsideration of the Court's September 30, 2019 common benefit order.

I.  **PRELIMINARY STATEMENT**

The *Federal* Plaintiffs[1] have submitted objections to Magistrate Netburn's September 30, 2020 Opinion and Order, ECF No. 6481 (referred to herein as the "Reconsideration Order"), that denied the *Federal* Plaintiffs' motion for reconsideration of Judge Netburn's September 30, 2019 Opinion and Order, ECF No. 5180 (referred to herein as the "Common Benefit Order"). The Federal Plaintiffs' objections are similar to, and in several respects repetitive of, some of the objections raised by Respondents. ECF No. 6522. The *Havlish* Plaintiffs have filed a Response in Opposition to Respondents' Rule 72 Objections (referred to herein as the "Response to Respondents") that includes a description of the factual background and a number of arguments that are pertinent to the *Federal* Plaintiffs' objections. For that reason, and in an attempt to avoid as much duplication as possible, the *Havlish* Plaintiffs incorporate herein, and refer the Court to, their Response to Respondents.

---

[1] *Havlish* Plaintiffs understand *Federal* Plaintiffs to include the plaintiffs in the following cases, and their counsel, Cozen O'Connor: *Federal Insurance, et al. v. Al Qaida, et al.,* Case No. 1:03-cv-06978 ("*Federal Insurance*"); *Vigilant Insurance, et al. v. Kingdom of Saudi Arabia, et al.,* Case No. 1:03-cv-08591; *Pacific Employers Insurance Co., et al. v. Kingdom of Saudi Arabia, et al.,* Case No. 1:03-cv-08591; *Underwriting Members of Lloyd's Syndicate 2, et al. v. Al Rajhi Bank, et al.,* Case No, 1:16-cv-07853; *Underwriting Members of Lloyd's Syndicate 53, et al. v. Kingdom of Saudi Arabia, et al.,* Case No. 1:17-cv-02129; *Muenchener Rueckversicherungs Gesellshaft Aktiengesellschaft in Muenchen, et al. v. Kingdom of Saudi Arabia, et al.,* Case No. 1:17-cv-07914; and, *Wurttembergisce Versicherung AG v. Kingdom of Saudi Arabia*, Case No 1:18-cv-12257.

## II.     FACTUAL BACKGROUND

In the early stages of this MDL, the Court entered Case Management Order No. 3, ECF No. 248, that, among other things, established two Plaintiffs Executive Committees (referred to jointly as the "PEC").  CMO No. 3 appoints counsel in *Ashton* and *Burnett* as co-chairs of the Plaintiffs Executive Committee for Personal Injury and Death Claims and names *Havlish* Counsel as members of that committee. CMO No. 3 also appoints counsel for the *Federal Plaintiffs* as chair of the Plaintiffs Executive Committee for Commercial Claims.  For purposes of the matter at issue here, CMO No. 3 contains two other unique and important provisions. The first provides that any plaintiffs' attorney may, when necessary, present to the Court individual positions that are divergent from the positions of the PEC (CMO No. 3 at ¶13), and the second recognizes that independent investigations were being undertaken by various plaintiffs' counsel (CMO No. 3 at ¶20).

From the inception of the PEC, *Havlish* counsel made it clear that they were pursuing, and intended to pursue, claims against The Islamic Republic of Iran and its agencies and instrumentalities (collectively, "Iran") that they believed to be important to their clients as well as many other plaintiffs in the MDL. At the same time, the other PEC members made it clear that they considered the development of such evidence to be of little consequence in the broader MDL.  As Magistrate Judge Netburn correctly found in the Common Benefit Order, *Havlish* counsel's independent investigation was divergent from the position of the PEC but was not inconsistent with CMO No. 3. ECF No. 5180 at p. 10.

On December 29, 2011, this Court entered an Order of Judgment in *Havlish* finding the Islamic Republic of Iran and several of its agencies and instrumentalities (collectively referred to as "Iran") liable for damages the *Havlish* Plaintiffs suffered as a result of the September 11, 2001

terrorist attacks. ECF No. 2516. Thereafter, *Havlish* counsel developed a damages paradigm, supported by expert testimony, that was incorporated into Magistrate Judge Maas's Report and Recommendation adopted by the Court on October 3, 2012. ECF No. 2623. The *Havlish* judgment and damages paradigm are the product of years of effort and *Havlish* counsels' investment of vast amounts of time, money and expertise. The task of obtaining that judgment was complicated by the fact that *Havlish* counsel developed the evidence against Iran and presented its work product to the Court over the repeated "vigorous objections" of, and with no assistance from, the Plaintiffs Executive Committee.

In the years since entry of the *Havlish* judgment, the Court has entered judgments against Iran totaling more than $82 billion in 25 personal injury cases in this MDL. The Court has also entered judgment against Iran in favor of the *Federal* Plaintiffs. Thousands of MDL personal injury claimants (the Respondents who also filed objections to the Reconsideration Order) now have recovered a portion of their Iran judgments through awards from the U.S. Victims of State Sponsored Terrorism Fund (the "VSSTF").[2] The basis of Respondents' VSSTF recoveries are the Iran judgments entered in this MDL. Each Respondent relied on and utilized the *Havlish* work product exclusively to obtain their judgments, as did the *Federal* Plaintiffs. However, since

---

[2] The VSSTF was created and funded by an act of Congress, 34 U.S.C. §20144, "to provide compensation to a specific group of international terrorism victims harmed by state sponsored terrorism. In general, the Fund is designed to award compensation to those victims of international state sponsored terrorism who (1) have secured final judgments in a United States district court against a state sponsor of terrorism, or (2) were held hostage at the United States Embassy in Tehran, Iran from 1979 to 1981 (and their spouses and children)." http://www.usvsst.com/faq.php. The VSSTF was originally funded by Congress' designation of a portion of certain monies derived from U.S. Department of Justice prosecutions of entities that violated U.S. sanctions against Iran and other state sponsors of terrorism. The VSSTF is replenished, on a continuing basis, through "qualifying case deposits" from further prosecutions by the Justice Department until January 1, 2026. http://www.usvsst.com/deposits.php

3

commercial claimants are not eligible to receive awards from the VSSTF, *Federal* Plaintiffs have not recovered any portion of their Iran judgment.

In the Common Benefit Order, Magistrate Judge Netburn summarized her factual findings as follows:

> In sum, *Havlish* counsel performed a substantial amount of work that benefited all Plaintiffs and allowed them to receive compensation from the VSSTF. The Court views these circumstances as exceptional and unlikely to reoccur in this litigation.
>
> For nearly a decade, the *Havlish* Plaintiffs expended significant time and expense pursuing a default judgment against Iran. Their work included: (1) overseas travel; (2) sworn videotaped testimonies of four Iranian witnesses, including the first president of Iran; and (3) ten expert affidavits in the fields of terrorism, intelligence, criminal investigation, and the structural aspects of the Iranian government. The *Havlish* attorneys compiled this information into a formal motion for default judgment, submitting three memorandum of law and nearly 100 exhibits. After conducting an evidentiary hearing, Judge Daniels adopted the proposed findings of fact and conclusions of law and entered a final judgment as to liability.
>
> Respondents almost exclusively relied on the *Havlish* evidence when they pursued their own default judgments years' later. *See, e.g.,* ECF No. 2970 (*Ashton*); ECF No. 3000 (*O'Neill*). Indeed, both the *Ashton* and *O'Neill* Plaintiffs requested that the Court use "the evidence . . . previously received and analyzed" in *Havlish*. ECF No. 2970, at 21; ECF No. 3000, at 2. Judge Daniels obliged, entering default judgments based on the "evidence submitted by [the *Havlish*] Plaintiffs." ECF Nos. 3021 & 3022.

ECF No. 5180 at pp. 10-11 (citations omitted).

Based on this factual background, Magistrate Judge Netburn concluded that "In these circumstances, creating a common benefit fund to compensate the *Havlish* attorneys is appropriate. *Id.* at 11.

Judge Netburn subsequently denied Respondents motion for reconsideration of the Common Benefit Order and "reaffirm[ed] that it is appropriate now to assess a common benefit fee to compensate those lawyers who worked for the common benefit of all plaintiffs in pursuit

4

of the claims against Iran." ECF No. 6481 at p. 10. The Court also recognized the claim that Respondents' counsel contributed to common benefit work that was utilized in the *Havlish* motion for default judgment. *Id*. at p. 9. The Reconsideration Order clarifies that the contemplated common benefit fund would not be limited to *Havlish* counsel: "Because the cases against Iran have by and large come to a close, now is the appropriate time to consider a common benefit fee for all counsel, including but not limited to *Havlish* counsel, that contributed work for the benefit of all Plaintiffs in securing the original default judgment entered by Judge Daniels on December 22, 2011." *Id*. at p. 7.  To that end, Magistrate Judge Netburn ordered all parties to submit to the Court time and expense records and VSSTF award information that will inform the Court's decision regarding the appropriate scope and administrative mechanism for the fund. *Id*. at p. 10.

### III.     SUMMARY OF THE ARGUMENT

The *Federal* Plaintiffs do not object to Magistrate Judge Netburn's finding that the creation of a common benefit fund is appropriate at this time or her determination that *Havlish* counsel performed common benefit work that entitles them to seek compensation from the fund. Objections at p. 2. Instead, the *Federal* Plaintiffs essentially raise the single objection that the scope of the contemplated common benefit fund is too narrow because it is not specifically designed to compensate *Federal* Plaintiffs' counsel and other PEC members for their work and "enormous investments" in pursuing claims against defendants other than Iran. They ask the Court to set aside Magistrate Judge Netburn's well-reasoned decisions and adopt a protocol for the operation of a common benefit fund more to their liking.

The protocol that *Federal* Plaintiffs propose would "compensate counsel for their contributions to and investments in the MDL proceedings as a whole" without regard to the

5

benefit their work produces or does not produce for MDL claimants. Objections at p. 14.  Of course, since *Federal* Plaintiffs are not eligible for VSSTF awards, the common benefit fund established under their proposed protocol would be funded solely by the VSSTF recoveries of *Havlish* Plaintiffs and Respondents. While *Federal* Plaintiffs would be adding nothing to the fund, their counsel, having contributed absolutely nothing to the work product that produced the Iran judgments and recoveries, would be compensated through the fund for their "contributions to the MDL proceedings as a whole." For their part, *Havlish* counsel would be the smallest dog at a bowl they filled with food. Such a result is hardly consistent with the principles of equity on which the common benefit doctrine is founded.

By contrast, the common benefit protocol set forth in the Reconsideration Order does not simply compensate counsel for their common work but rather compensates counsel for work that has produced a common benefit. Such a protocol *is* consistent with the equitable principles on which the common benefit doctrine rests and should be upheld.

In support of their objections, *Federal* Plaintiffs assert arguments that lack factual and legal foundation and are riddled with self-defeating contradictions. For example, *Federal* Plaintiffs acknowledge that common benefit funds should be "tailored to the particular facts of the proceedings." Objections at p. 10.  However, they raise objections that the Court can sustain only by completely ignoring the salient "particular facts" of these proceedings. Similarly, *Federal* Plaintiffs acknowledge that MDL courts are "vested with broad managerial powers." Objections at p. 6.  However, they argue that this particular MDL Court does not have such broad managerial powers but rather is constrained in its ability to tailor a common benefit fund to the circumstances presented here.

*Federal* Plaintiffs' disregard of the particular facts of this MDL causes them to take a

number of misguided positions that demonstrate the general weakness of their objections. For example, *Federal* Plaintiffs assert that the Reconsideration Order incentivizes attorneys to handle only those aspects of the MDL that are perceived to position them for a common benefit windfall. Objections at p. 4. But the particular facts in this MDL do not support that assertion. Here, the PEC declined to aggressively investigate and pursue Iran claims presumably in the belief that they would *not* produce a "windfall" for anyone. If the PEC leadership believed the Iran claims would produce a common benefit "windfall," which necessarily would have meant a "windfall" for their clients, it would have been a dereliction of their professional obligations to refrain from pursuing the Iran judgment. Clearly, the PEC viewed the Iran claims as secondary to claims against other MDL defendants and unlikely to produce a "windfall." Indeed, *Federal* Plaintiffs themselves characterize the MDL claimants' recoveries from the VSSTF as "serendipitous," indicating that even they did not view the Iran claims as likely to position anyone for a "common benefit windfall."

Contrary to *Federal* Plaintiffs' misguided assertion, the "particular facts of these proceedings" establish that *Havlish* counsel vigorously pursued claims against Iran that the PEC had all but abandoned and obtained a judgement that has benefited thousands of MDL plaintiffs. Viewed in the clear light of these "particular facts," *Federal* Plaintiffs' policy concern is misplaced. Rather, the Reconsideration Order incentivizes MDL attorneys to pursue legitimate claims on behalf of their clients even in the face of opposition from PEC members.

Similarly, *Federal* Plaintiffs contend that in the Reconsideration Order, Judge Netburn created an "artificial divide" between the Iran claims and claims against other MDL defendants. But it is the "particular facts of these proceedings," not the Reconsideration Order, that have made the Iran claims distinctive. The Iran case is the only case in the MDL where judgments

have been entered and recoveries have been made by MDL claimants. As Judge Netburn correctly observed, "most MDLs do not involve multiple defendants with cases proceeding on vastly disparate timelines." ECF No. 6481 at p. 4. Judge Netburn recognized this practical distinction in the Reconsideration Order: "Unlike the Iran cases, the Saudi cases in this MDL, among others, may not resolve for years. Because the cases against Iran have by and large come to a close, now is the appropriate time to consider a common benefit fee for all counsel, including but not limited to *Havlish* counsel, that contributed work for the benefit of all Plaintiffs in securing the default judgment entered by Judge Daniels on December 22, 2011." *Id*. at p. 7. In recognizing the distinguishing characteristics of the Iran claims, Judge Netburn was simply doing what the *Federal* Plaintiffs suggest an MDL court should do – tailoring the common benefit order to the particular facts of the proceedings.

*Federal* Plaintiffs have not and cannot establish that any aspect of the Reconsideration Order is clearly erroneous or contrary to law, so their objections must be denied.

## IV.   STANDARD OF REVIEW

The Court should review *Federal* Plaintiffs' objections under a "clearly erroneous or contrary to law" standard. *Federal* Plaintiffs have submitted objections to Magistrate Judge Netburn's September 30, 2020 Reconsideration Order that addresses issues raised in connection with the *Havlish* Plaintiffs' motion to create a common benefit fund. While *Federal* Plaintiffs contend that the Court should treat the order as a Report and Recommendation and conduct a *de novo* review, the order does not fall within the excepted motions in 28 U.S.C. § 636(b)(1)(A), so it cannot be interpreted as a Report and Recommendation. Accordingly, Judge Netburn correctly issued her decision as an Opinion and Order. *See In re Zyprexa Prods. Liab. Litig.,* 594 F.3d 113, 117–18 (2d Cir. 2010) (finding that an order establishing a three-percent set-aside for a common

benefit fund did not "give, or aid in giving, [any] substantive relief" sought in the lawsuit) (internal alterations omitted).

This Court recently stated the standard for review of Rule 72 objections to a Magistrate Judge's order as follows:

> A district judge must modify or set aside only those parts of a magistrate judge's order related to nondispositive matters that are clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(l)(A); *Thomas v. Arn,* 474 U.S. 140, 149 (1985) (stating that "Congress provided for a 'clearly erroneous or contrary to law' standard of review of a magistrate's disposition of certain pretrial matters"). A district court is justified in finding a magistrate judge's ruling 'clearly erroneous' where, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Highland Mgmt., L.P. v. Schneider,* 551 F. Supp. 2d 173, 177 (S.D.N.Y. 2008) (citations omitted). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *MacNamara v. City of New York,* 249 F.R.D. 70, 77 (S.D.N.Y. 2008) (internal citations and quotations omitted). This is a highly deferential standard, and the objector thus carries a heavy burden. *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.,* No. 04 Civ. 6189, 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007); *see also Lugosch v. Cangel,* 443 F.Supp.2d 254, 276 (N.D.N.Y. 2006) (noting that particular deference is due where "the magistrate judge has been deeply involved in discovery matters in the case for years").

ECF No. 6532.

This same standard applies here.[3]

---

[3] *Federal* Plaintiffs chose to seek reconsideration of the Common Benefit Order of September 30, 2019 rather than file objections within 14 days of that order as required by Fed. R. Civ. P. 72(a). Here, they object to Judge Netburn's ruling regarding their motion for reconsideration. To prevail on a reconsideration motion, the movant must demonstrate "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013). The standard for granting a motion for reconsideration is strict. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 256-57 (2d Cir. 1995). Accordingly, reconsideration is generally denied unless "the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir.

## V.     ARGUMENT

### A.  THE PURPOSE OF A COMMON BENEFIT FUND IS NOT SIMPLY TO COMPENSATE ATTORNEYS FOR THEIR COMMON WORK, BUT RATHER TO REWARD THOSE ATTORNEYS WHOSE WORK PRODUCES A COMMON BENEFIT

The *Federal* Plaintiffs contend that "the purpose of a common benefit fund is to compensate attorneys for their common benefit work in advancing the MDL." Objections at p. 5. But this self-serving formulation of a common benefit fund's purpose is misguided, for there can be no common benefit fund in an MDL that "advances" to a zero recovery for MDL claimants. The *Federal* Plaintiffs' objections, like those of Respondents, are premised on the mistaken notion that common benefit funds are intended to compensate attorneys who perform common work. This simply is not true. The purpose of a common benefit fund is not to reward common work, but rather to reward work that produces a common benefit. *See* Duke Law Center for Judicial Studies, *Standards and Best Practices for Large and Mass-Tort MDLs* (2014) ("Duke Report") at 71 ("When there is no recovery by plaintiffs, there will be no common benefit funding"); *see id*. at 68 ("The CBF's function is to compensate plaintiffs' counsel for their work based on their relative contributions to the *outcome* of the case.")(emphasis added).

This is a point on which every federal court agrees and is supported by every case cited by *Federal* Plaintiffs as well as every case cited in Respondents' objections. The *Federal* Plaintiffs cite cases such as *In re Zyprexa Prods. Liab. Litig., 594 F.3d 113 (2d Cir. 2010); In re*

---

2012) (citing *Shrader*, 70 F.3d at 257). In her Opinion and Order, Magistrate Judge Netburn found that the points raised in *Federal* Plaintiffs' motion for reconsideration did not satisfy the standard for granting reconsideration. Therefore, the only question raised here by *Federal* Plaintiffs' objections is whether it was "clearly erroneous or contrary to law" for Judge Netburn to find that *Federal* Plaintiffs' motion for reconsideration failed to establish that aspects of Common Benefit Order were "clear error or manifestly unjust."

*Vioxx Prods. Liab. Litig.*, 760 F.Supp.2d 640 (E.D. La. 2010); and *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir. 1977) to demonstrate that courts rely on common benefit funds to compensate attorneys, normally PEC members, who perform common benefit work. But the courts in those cases were issuing common benefit rulings in settings where the work of the committee members had led to successful recoveries for MDL plaintiffs. In the present case, only the work of *Havlish* counsel has led to successful recoveries for MDL plaintiffs. *See Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. Pelella*, 350 F.3d 73, 90 (2d Cir. 2003) (common benefit doctrine permits an award of attorney's fees where the plaintiff's *successful litigation* confers a substantial benefit on the members of an ascertainable class.)(emphasis added).

    *Federal* Plaintiffs base the entirety of their objections on the false premise that the work performed by their counsel and the other members of PEC, in and of itself, constitutes a compensable benefit to MDL plaintiffs even when it does not contribute to a recovery. There simply is no legal support for this position, so *Federal* Plaintiffs' objections must be denied.

    *Federal* Plaintiffs claim that by endorsing a framework that authorizes common benefit fees only for work in furtherance of the Iran judgment, the Reconsideration Order "dismantles the fund structure." Objections at p. 5. But that claim is misguided. Judge Netburn has not precluded the possibility of a common benefit fund to compensate attorneys for work that delivers a benefit in the form of a judgement or settlement with other MDL defendants. Rather, the Reconsideration Order simply recognizes that the claims against other defendants in this MDL are on a longer timeline and that, because the claims against Iran have mostly resolved, it is now appropriate to establish a common benefit fund to compensate attorneys whose work produced the benefit of judgments for, and enabled recoveries by, MDL claimants.

To justify their contention that their counsel should be compensated for work that has not yet produced any benefit for them, *Federal* Plaintiffs recite a list of tasks that PEC members typically perform, such as coordinating discovery and pretrial work, developing proof necessary for trial, drafting motions, working with experts, and communicating with opposing parties and the court. Objections at p. 6. But here, it was not the PEC but *Havlish* counsel who coordinated discovery and pretrial work in connection with the Iran judgment; it was *Havlish* counsel who developed proof necessary for trial in connection with the Iran judgment; it was *Havlish* counsel who worked with experts in connection with the Iran judgment; it was *Havlish* counsel who communicated with the court in connection with the Iran judgment. *Federal* Plaintiffs' assertion that the PEC members "do not have the option of ignoring certain of that work because it seems less likely to produce a recovery" once again demonstrates that their objections completely ignore "the particular facts of these proceedings." For it was the PEC that objected to *Havlish* counsel's pursuit of the Iran judgment. And yet, under *Federal* Plaintiffs' conception of an appropriate common benefit order, the work of the PEC would be rewarded and the work of *Havlish* counsel would not.

B.  **THE COURT SHOULD REJECT *FEDERAL* PLAINTIFFS' ATTEMPT TO DIRECT COMMON BENEFIT FEES TO PEC MEMBERS WHOSE WORK HAS NOT CONTRIBUTED TO RECOVERY FOR MDL CLAIMANTS**

*Federal* Plaintiffs contend that a common benefit fund cannot be used to compensate only those attorneys whose work has enabled MDL claimants to recover judgments against Iran. They provide another list of work done by PEC members that includes activities such as FOIA requests, *Touhy* submissions, Second Circuit appeals, and petitions for certiorari in an attempt to lend support to their insistence that any common benefit order must be designed to compensate them for their work on cases that have not resolved. Objections at p. 10. Again, none of the

activities *Federal* Plaintiffs recite contributed in any way to the work product that produced the Iran judgment. In fact, none of those activities has produced a benefit in the form of a recovery against any MDL defendant. Undaunted by this lack of result, the *Federal* Plaintiffs seek to replace the common benefit fund contemplated in the Reconsideration Order with a common benefit fund framework that will allow *Federal* Plaintiffs' counsel and other PEC members to receive compensation from the fund for work that has not yet produced a benefit.

Under the *Federal* Plaintiffs' preferred framework, the *Havlish* Plaintiffs would pay a portion of their recoveries from the VSSTF and all other sources into a common benefit fund which would then be distributed to attorneys who contributed nothing to the work product that produced the recoveries. Such a framework would effectively transfer fees from attorneys who perform work that produces a common benefit to attorneys that perform work that does not – the exact opposite of what a common benefit fund should do.

The inequity produced by the application of *Federal* Plaintiffs' concept of an appropriate common benefit fund framework is made plain when considering the *Havlish* Plaintiffs' potential recovery in *In re: 650 Fifth Avenue and Related Properties*, S.D.N.Y. case number 08-cv-10934. In the *650 Fifth Avenue* litigation, which is not part of this MDL, the *Havlish* Plaintiffs and several groups of terrorism victims ranging from the 1983 Marine Barracks bombings victims to the 1996 Khobar Towers bombing victims, and a number of smaller groups, who hold judgments against Iran are attempting to collect their judgments from two entities as proxies for the Iranian government. The *Federal* Plaintiffs and other MDL plaintiffs represented by members of the PEC were not eligible to participate in that collection effort due to their self-imposed delay in finalizing their judgments, a delay they attempted to force upon the *Havlish* Plaintiffs by arguing to the Court that a *Havlish* judgment would be somehow damaging to all MDL claimants. If the

13

PEC had won the argument on that issue, it is likely that the *Havlish* Plaintiffs would also have been precluded from the opportunity to participate in a potential *650 Fifth Avenue* recovery. In the event the *650 Fifth Avenue* litigation is successful, the *Havlish* Plaintiffs will have obtained a recovery *in spite of* efforts by the PEC to convince the Court to deny the *Havlish* request to proceed to judgment. Nevertheless, the broader common benefit fund proposed by the PEC and *Federal* Plaintiffs would require the *Havlish* Plaintiffs to compensate the very members of the PEC who advocated against the *Havlish* Plaintiffs' interests (and, as it turns out, against the interests of Respondents and *Federal* Plaintiffs also). Under these circumstances, *Federal* Plaintiffs' contention that equity and fairness demand this result is ludicrous.

C. **THE RECONSIDERATION ORDER APPROPRIATELY CONTEMPLATES A COMMON BENEFIT FUND TO COMPENSATE COUNSEL THAT CONTRIBUTED TO THE WORK PRODUCT THAT PRODUCED A RECOVERY AGAINST IRAN FOR ALL MDL CLAIMANTS**

*Federal* Plaintiffs contend that the Reconsideration Order overlooks the realities of this MDL proceeding by establishing a common benefit fund applicable solely to the claims against Iran. Objections at p. 12. But *Federal* Plaintiffs get it exactly backward. Through the Reconsideration Order, Judge Netburn established a common benefit fund applicable solely to the claims against Iran *in recognition of* the realities of this MDL proceeding. The Iran case is the only case in the MDL where judgments have been entered and recoveries have been made by MDL claimants. Judge Netburn recognized this practical distinction: "Unlike the Iran cases, the Saudi cases in this MDL, among others, may not resolve for years. Because the cases against Iran have by and large come to a close, now is the appropriate time to consider a common benefit fee for all counsel, including but not limited to *Havlish* counsel, that contributed work for the benefit of all Plaintiffs in securing the default judgment entered by Judge Daniels on December 22, 2011." *Id*. at p. 7. *Federal* Plaintiffs' cite no legal support for their claim that the Court's

14

recognition of this practical distinction is contrary to law because none exists. They simply have not and cannot demonstrate that any part of the Reconsideration Order is clearly erroneous or contrary to law. The Court should deny their objections.

## VI. **CONCLUSION**

For the reasons stated above and those set forth in *Havlish* Plaintiffs' Response in Opposition to Respondents' Objections to the September 30, 2020 Opinion and Order, the Court should deny *Federal* Plaintiffs' objections.

Respectfully Submitted,

/s/ Stephen A. Corr
Stephen A. Corr (PA Bar No. 65266)
BEGLEY, CARLIN & MANDIO, LLP
680 Middletown Boulevard
Langhorne, PA  19047
(215) 750-0110

Timothy B. Fleming (DC Bar No. 351114)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, PLLC
1211 Connecticut Avenue, N.W., Suite 420
Washington, DC  20036
(202) 467-4489

Dennis G. Pantazis (AL Bar No. ASB-2216-A59D)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, LLC   (*Lead Counsel*)
The Kress Building
301 19th Street North
Birmingham, AL  35203
(205) 314-0500

Richard D. Hailey (IN Bar No. 7375-49)
Mary Beth Ramey (IN Bar No. 5876-49)
RAMEY & HAILEY
3905 Founders Road
Indianapolis, 46268
(317) 582-0000

Robert M. Foote (IL Bar No. 03124325)
Craig S. Meilke (IL Bar No. 03127485)
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL  60134
(630) 232-7450

John A. Corr (PA Bar No. 52820)
LAW OFFICE OF JOHN A. CORR
301 Richard Way
Collegeville, PA 19426
(610) 482-4237

David C. Lee (TN Bar No. 015217)
422 South Gay Street, 3rd Floor
Knoxville, TN  37902
(865) 544-0101

Evan J. Yegelwel (FL Bar No. 319554)
TERRELL HOGAN ELLIS
   YEGELWEL, P.A.
233 East Bay Street
Blackstone Building, 8th Floor
Jacksonville, FL  32202
(904) 632-2424

Edward H. Rubenstone (PA Bar No. 16542)
EDWARD H. RUBENSTONE, LLC
812 N. Fairway Rd.
Glenside, PA 19038
(215) 887-9786

Donald J. Winder (UT Bar No. 3519)
WINDER & COUNSEL, PC
175 West 200 South, Suite 4000
P.O. BOX 2668
Salt Lake City, UT  84110-2668
(801) 322-2222

**Attorneys for the *Havlish* Plaintiffs**