**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___ 12/1/2020 ___

**In re:**

> **TERRORIST ATTACKS ON**
> **SEPTEMBER 11, 2001**

**03-MDL-01570 (GBD)(SN)**

**OPINION & ORDER**

----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

The global pandemic has affected every corner of society. It comes as no surprise, then, that COVID-19 has impacted this civil litigation as well.

On August 27, 2020, the Court granted in part and denied in part the Kingdom of Saudi Arabia's (the "Kingdom" or "KSA") motion for a protective order and the Plaintiffs' Executive Committees' ("Plaintiffs" or "PECs") cross-motion to compel, authorizing certain depositions and directing the KSA and the PECs to provide proposals regarding "the sequencing and logistics of the depositions subject to [the] Order."[1] ECF No. 6408 (the "Deposition Order"). By submissions dated September 22, 2020, and September 25, 2020, the KSA and PECs provided separate proposals and responsive letters for the Court's consideration. See ECF Nos. 6465, 6466, 6469, 6470.

In light of the global pandemic, and in particular the surge of cases in the United States and international travel restrictions, the Court directs that depositions be conducted by remote means. See Fed. R. Civ. P. 30(b)(4).

---

[1] Plaintiffs' motion for reconsideration of portions of the Deposition Order remains pending.

**BACKGROUND**

Following the Court's Deposition Order, the Kingdom informed the Plaintiffs that 16 current and former Saudi government employees would sit for deposition; certain other individuals have refused to voluntarily testify, and a few other individuals remain unidentified. See KSA Ltr., dated Sept. 22, 2020, at ECF 6465. Following a meet-and-confer, the parties have agreed in principle to a sequencing of witnesses based on certain categories. Accordingly, the primary dispute concerns how and where depositions shall be conducted.

The Plaintiffs propose that depositions be conducted in person in the United States. Based on consultations with an expert in infectious disease, pandemic preparedness, and biosecurity, the Plaintiffs contend that in-person depositions are "entirely feasible and can be conducted with minimal risk." PEC Ltr., dated Sept. 22, 2020, at ECF 6466. Specifically, Plaintiffs propose that the depositions be held in New York City (one of the Court's previously authorized Presumptively Acceptable Locations), Washington, D.C., or a warm-weather state like Arizona, where depositions could be held outdoors. These depositions would be held "at a large venue," where "at least 25 participants" could participate under safety guidelines including social distancing. "Most participants" would wear masks and be separated by plexiglass. The Plaintiffs make only passing reference to "duties imposed on visitors," such as quarantine requirements.

The Kingdom opposes in-person depositions conducted in the United States. It argues that remote depositions are authorized by the Federal Rules, have been successfully conducted in this case, and are the new normal for pandemic-era litigation. Fourteen of the witnesses live abroad, with the majority living in Saudi Arabia. All will face travel restrictions and/or quarantine periods. Many witnesses are current high-level government employees who cannot

2

afford weeks of quarantining to accommodate a single deposition. Some witnesses are in high-risk categories due to age or health concerns.

## DISCUSSION

The Court has reviewed the parties' submissions and orders that depositions proceed by remote means. Below, the Court briefly addresses the parties' arguments.

## I.    Remote Depositions

## A.    Saudi Arabia's Legitimate Sovereign Interests

Pre-pandemic, the Court addressed how and where the depositions of Saudi witnesses would be conducted. See ECF No. 6204. In light of the serious health risks posed by COVID-19, the Court must weigh more heavily the comity concerns when considering whether to order an employee of a sovereign nation to travel to the United States to be deposed.

The Supreme Court has "long recognized the demands of comity in suits involving foreign states, either as parties or as sovereigns with a coordinate interest in the litigation." Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa, 482 U.S. 522, 546 (1987) (citing Hilton v. Guyot, 159 U.S. 113 (1895)). Accordingly, American courts are advised to "take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." Id.

Plaintiffs intend to depose 14 current and former Saudi government employees, at least four of whom hold or have held the title of minister or ambassador, who reside outside the U.S. On the basis of comity and out of the special solicitude owed regarding discovery under these circumstances, the Court will not require these current or former government employees who reside outside the U.S. to travel to be deposed. The Court has previously authorized Saudi Arabia

to apply to conduct the depositions of current high-ranking officials who serve at the apex of a government agency at a different location, see ECF No. 3894, at ¶ 31, and finds that, especially given the global COVID-19 pandemic, it is not appropriate to order any current and former government employees to travel outside Saudi Arabia or to the United States.

**B.      Remote Depositions are Safe, Effective and Efficient**

Rule 30(b)(4) provides that "[t]he parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means." Fed. R. Civ. P. 30(b)(4). "'Since Rule 30(b)(4) does not specify the standards to be considered in determining whether to grant a request [for a remote] deposition . . . the decision to grant or deny such an application is left to the discretion of the Court, which must balance claims of prejudice and those of hardship . . . and conduct a careful weighing of the relevant facts.'" Rouviere v. DePuy Orthopaedics, Inc., No. 18-CV-04814 (LJL)(SDA), 2020 WL 3967665, at *2 (S.D.N.Y. July 11, 2020) (quoting RP Family, Inc. v. Commonwealth Land Title Ins. Co., No. 10-CV-01149 (DLI) (CLP), 2011 WL 6020154, at *3 (E.D.N.Y. Nov. 30, 2011) (citations & internal quotation marks omitted)); see also 2 *Civil Practice in the Southern District of New York* § 17:3 (2d ed. 2020) ("While Rule 30(b)(4) does not specify the standard for evaluating motions to have depositions conducted remotely, courts generally consider the hardship on the party to be deposed, and the prejudice to the party seeking the deposition.").

Since the beginning of the pandemic, courts have considered the serious health risk posed by the coronavirus and concluded that remote depositions do not cause undue hardship and can be conducted with relative ease given current technology. See, e.g., Joffe v. King & Spalding LLP, No. 17-CV-3392 (VEC), 2020 WL 3453452, at *2, n.7 (S.D.N.Y. June 24, 2020) (requiring party to take depositions remotely over its objection and noting that "[c]ourts in this circuit have

been cognizant of the risks of in-person testimony and have encouraged remote depositions as a matter of course."). Indeed, judges in this District are conducting trials by remote technology. See, e.g., Amtrust N. Am., Inc. v. KF&B, Inc., 2020 WL 4365280, at *1 (S.D.N.Y. July 29, 2020) ("[T]he current COVID-19 pandemic constitutes compelling circumstances and provides good cause to allow this trial to be conducted remotely through the use of telephonic and video conferencing solutions.").

Plaintiffs raise several objections to proceeding by remote means. These objections do not overcome the substantial weight the Court assigns to the health risk implicated to lawyers, witnesses, deposition staff, and all of their families, by ordering people to travel and gather.

### 1.    The Need to Assess the Witness's Demeanor

First, Plaintiffs argue that because "the witnesses to be deposed are implicated in an extraordinary criminal investigation," they have a compelling incentive "to evade, dissemble, and lie, all the more so given that they reside in Saudi Arabia and have no concerns about exposure to a mere U.S. perjury or obstruction charge." ECF No. 6470 at 2. This, Plaintiffs argue, requires that "the depositions to go forward outside of Saudi Arabia and that Plaintiffs' counsel be in the room with the witnesses during their testimony to properly gauge the responses and see the actual circumstances under which the testimony is being given." Id. at 2–3.

Plaintiffs' argument assumes a position not shared by the Court. There is no evidence that the Saudi witnesses will lie under oath. And any ruling that assumes that they will would require the Court to assume also that Saudi Arabia's American lawyers are similarly engaging in such misconduct. But, even accepting the Plaintiffs' proposition for the moment, Plaintiffs have not demonstrated how in-person depositions will solve those problems. Deposition by video allows the party "to view [the witness's] demeanor during questioning." Usov v. Lazar, No. 13-CV-818

(RWS), 2015 WL 5052497, at *2 (S.D.N.Y. Aug. 25, 2015); see also Tangtiwatanapaibul v. Tom & Toon Inc., No. 17-CV-00816 (LGS)(KHP), 2017 WL 10456190, at *3 (S.D.N.Y. Nov. 22, 2017); DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 30 (2d Cir. 2002) ("videotaped depositions . . . could afford the jury an opportunity to assess the credibility of [foreign] witnesses" in fraud case).

Moreover, Plaintiffs' alternative proposal would not meaningfully improve the ability to assess witness credibility. Plaintiffs propose that in-person depositions be conducted at a "large venue," potentially outside, where people are wearing masks, separated by plexiglass, and socially distant. Such protocols would significantly diminish any value to in-person depositions.

Finally, although the lawyers might gain some marginal value by observing the witness in person, ultimately the purpose of a deposition is to gather information and commit a witness's testimony. The product of the deposition is the transcript and video footage, which will be unaffected whether the deposition is conducted remotely or in person. Thus, because neither the Court nor the jury would be present at the deposition, any argument that the witness is being intentionally evasive will have to rely on the record regardless of whether the lawyers were in the room where it happened.

## 2.    The Need to Prevent Witness Tampering

Plaintiffs next argue that during the depositions, counsel to KSA will attempt to "obstruct" questioning by consulting privately with witnesses and that the parties will likely make applications to the Court regarding objections. These scenarios—which remain hypothetical—plausibly arise during all remote depositions. And yet remote depositions are presumptively valid under the Federal Rules. Plaintiffs have not specifically demonstrated that KSA's counsel's obstruction is so likely or would be so disruptive as to overcome the

presumptive validity of remote depositions and require in-person depositions despite the significant comity and health considerations. See Tom & Toon Inc., 2017 WL 10456190, at *3 (finding that the fact of a deposition by videoconference does not necessarily make it more likely that a witness will be coached). The parties have already conducted remote depositions and there have been no allegations of witness tampering or improper coaching. The Court assumes that the parties will work together to accommodate one another's reasonable requests in designing a remote videoconferencing setup to ensure transparency and professionalism. Counsel for all parties are reminded that attorneys are subject to discipline if they are found in violation of the New York State Rules of Professional Conduct concerning activities connected to this action, which would include, for example, improper behavior during depositions. See Local Civil Rule 1.5(b)(5).

### 3. The Need to Maintain Confidentiality of Certain Documents

Third, Plaintiffs argue that the use of documents subject to the FBI Protective Order necessitates in-person depositions. To the extent this issue is raised on account of the remote nature of the proceedings, Plaintiffs' use of documents subject to the FBI Protective Order during a remote conference before the Court undermines Plaintiffs' argument. Plaintiffs also state that KSA's use of local counsel would be irreconcilable with the use of documents subject to the FBI Protective Order. The parties should ensure that the format of the deposition allows the parties to comply with the FBI Protective Order and should make use of the security features of the available videoconferencing technology.

### 4. The Need for Plaintiffs' Counsel to Conference

Plaintiffs argue that all counsel for the PECs must be together in the same room in order to conduct the depositions effectively. It is hard to understand how being in the same room,

while socially distanced and wearing masks, is better than using email, texts or separate phone lines when lawyers want to pass information or suggest questions for the witness. But lawyers are free to assemble in person on their own terms to coordinate their participation in the remote proceedings. To the extent counsel desire to be in the same room, they will need to comply with any existing limit on the number of people who may gather indoors.

### 5.    The Need to Engage Translation Services

Fifth, Plaintiffs argue that the necessary translation services require in-person depositions. The "need" for Plaintiffs' and KSA's translators to "consult during the depositions with each other and counsel" does not require the translators or counsel to be physically present in the same room. To the extent remote interpreting services cause delays, the Court has already authorized extra time to complete depositions where interpreters are used, ECF No. 6204 at 2, and finds this allowance sufficient to cover remote circumstances as well.

### 6.    Technical Difficulties

Finally, Plaintiffs cite issues that have allegedly arisen in previous video depositions in this litigation as a reason for the Court to compel in-person depositions. These issues include "dramatic time zone differences, technical issues with the internet and real time connections . . .." ECF No. 6470 at 4. As with most of Plaintiffs' arguments for holding the depositions in-person, the case would be different if all else were equal and the world were not in the throes of a global pandemic. But, as another court in this District has observed, "pandemic circumstances render all other things not equal, and many cases are proceeding through discovery despite these conditions, aided by the ability to conduct remote depositions through video conferencing." Joffe, 2020 WL 3453452, at *2 (emphasis added). In particular, the Court does not find that the occasional technical difficulty that can occur with videoconferencing software—and which can

be addressed by the Court and parties if and when it occurs—is a sufficient reason not to use videoconferencing for depositions. There are also potential solutions to the problem of time-zone issues—for example, "holding the deposition in two- to four-hour blocks." Sec. & Exch. Comm'n v. Aly, 320 F.R.D. 116, 120 (S.D.N.Y. 2017).

In sum, Plaintiffs have not demonstrated how, on balance, potential issues posed by remote depositions outweigh the burden of requiring high-ranking and former Saudi government officials to travel and potentially quarantine abroad in the midst of a global pandemic.[2]

## II.    Scheduling

The Kingdom believes that depositions can be completed in approximately 90 days. Plaintiffs believe they need "at least" 45 days to prepare for the first round of depositions, and that they will require at least 100 days of deposition testimony. Plaintiffs propose that any deadline to complete all depositions be set after the second round of depositions is completed, at some indeterminate time. In the alternative, Plaintiffs suggest that depositions should be held in abeyance until the pandemic is over and the parties can safely conduct in-person depositions.

The Court recognizes the importance of these depositions but further delay is no longer

---

[2] As of November 18, 2020, all four Presumptively Acceptable Locations for depositions would or could require witnesses and counsel to meet COVID testing requirements and/or quarantine upon arrival and some do not allow visitors from the U.S. See https://it.usembassy.gov/covid-19-information/ (travelers to Italy from the USA are not permitted); http://www.salute.gov.it/portale/nuovocoronavirus/dettaglioContenutiNuovoCoronavirus.jsp?lingua=italiano&id=5412&area=nuovoCoronavirus&menu=vuoto&tab=6 (travelers to Italy from Saudi Arabia are subject to 14 day quarantine and health surveillance); https://www.gov.uk/uk-border-control/self-isolating-when-you-arrive (travelers to the UK from the U.S. and Saudi Arabia must self-isolate for 14 days upon arrival); https://es.usembassy.gov/covid-19-information/ (travelers to Spain from U.S. generally prohibited, and other travelers subject to testing requirements). On September 28, 2020, New York Governor Andrew M. Cuomo signed an executive order maintaining the mandatory quarantine for anyone arriving to New York from any "Level 2" or "Level 3" country (including Saudi Arabia), separate from the National Center for Disease Control's guidance regarding incoming foreign travelers. See Executive Order # 205.1, available at https://www.governor.ny.gov/news/no-2051-quarantine-restrictions-travelers-arriving-new-york.

appropriate. Accordingly, the parties must complete all depositions by June 30, 2021.[3] This deadline will not be adjourned. To the extent the public health situation changes, Plaintiffs may timely seek leave to travel abroad to conduct depositions safely in the witness's country of residence. But the Court will not extend or stay this deadline in response to such application.

## III.    Proposed Topics and Objections

Finally, KSA requests the Court enter a schedule for the KSA and Plaintiffs to submit, in advance of the depositions, topics of examination and objections, respectively, to address preemptively likely disputes. Plaintiffs oppose this proposal, arguing that such an order would amount to a requirement that Plaintiffs disclose privileged work product. The Court declines to rule in advance on deposition topics. Regarding the scope of permissible questioning, the parties should take guidance from the Court's Deposition Order. Plaintiffs shall advise the Court, by email to chambers with copy to Defendants, when the depositions are scheduled so that, if possible, the Court can make itself available should any applications arise during a deposition.

## CONCLUSION

All fact depositions shall be completed by June 30, 2021. The depositions shall be conducted remotely by reliable videoconferencing method. The Court will not extend the fact witness deposition deadline. KSA's request for the Court to require pre-deposition submissions on the topics for the depositions is denied.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:        December 1, 2020
              New York, New York

---

[3] The Court takes judicial notice that Ramadan begins on or around April 12, 2021, through May 11, 2021. The parties should take steps now to avoid any conflict with that holiday.