UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |

*This document relates to*:
All Actions

**PLAINTIFFS' RULE 72 OBJECTIONS TO THE
MAGISTRATE JUDGE'S DECEMBER 1, 2020 ORDER & OPINION**

Pursuant to Fed. R. Civ. P. 72, Plaintiffs object to the December 1, 2020 Opinion & Order, ECF No. 6546 ("the December 1 Order") of the Honorable Sarah Netburn, United States Magistrate Judge, to preserve their right to seek certain relief in order to properly and fairly complete jurisdictional discovery.

Plaintiffs intend to make every effort to complete depositions in accordance with the December 1 Order. Indeed, in compliance with that Order, on December 9, 2020, Plaintiffs noticed the first remote deposition of a Kingdom of Saudi Arabia witness for January 13, 2021, with additional witnesses to follow. However, Plaintiffs are concerned that circumstances may require Plaintiffs to obtain relief from certain aspects of the December 1 Order, and present these Objections to avoid any potential future argument that they have waived the right to do so. Accordingly, Plaintiffs object as follows.

    **A.**    **Plaintiffs object to an inflexible deposition deadline**

Plaintiffs support the Court's direction to move ahead with depositions expeditiously, but must object for the record to the statements in the December 1 Order that the deposition deadline of June 30, 2021 "will not be adjourned" and again that "[t]he Court will not extend the fact witness deposition deadline." December 1 Order at 9-10. This is the first time the Court has set a deadline

1

for the completion of fact discovery against Saudi Arabia, and that deadline has issued at a time when even the most diligent planning could be disrupted by developments relating to the global health crisis.  Plaintiffs may face a situation where it is impossible to complete discovery by the end of June 2021 despite their best efforts.  There are numerous contingencies involving the witnesses and evidence, as well as the ongoing health emergency, that are outside of Plaintiffs' control.[1] Indeed, the orderly completion of the fact depositions will be highly dependent on the flexibility and cooperation of the Kingdom, other defendants,[2] witnesses, and third-parties, and it is impossible to predict what challenges may arise on those fronts (due to no fault of Plaintiffs).  Moreover, an inflexible deadline may give the Kingdom and others a strategic incentive to be less flexible and cooperative, in the hopes of using the clock as a sword.

<u>Witness availability</u>.  There are potential and as yet unresolved difficulties and delays involved in obtaining witness testimony.

For one example, Plaintiffs have already worked for over a year-and-a-half to obtain the testimony of subagent Mohdar Abdullah, who provided substantial support for the 9/11 hijackers at the direction of Omar al-Bayoumi.  Immediately after Plaintiffs located Abdullah in Sweden, Plaintiffs obtained Letters of Request for his testimony in May 2019.  ECF No. 4560.  The Swedish court scheduled the hearing for March 2020 and again in October 2020, but on both occasions the hearing was cancelled because Abdullah avoided service of process.  ECF Nos. 6016, 6477.  The Swedish court notified Plaintiffs that additional service methods would be attempted and a new

---

[1] In May 2020, the Court held that Plaintiffs' expert reports would be due "no later than the date of completion of fact discovery." ECF No. 6204 at 3.  Given the number of fact depositions and the time they will require, Plaintiffs do not expect that it is possible to complete fact depositions *and* also submit expert reports by the end of June 2021.  The experts must first have an opportunity to review the testimony of the witnesses and then have a suitable time to prepare their reports.

[2] Pursuant to the Court's directives, the Kingdom depositions will be proceeding concurrently with expert depositions in merits and personal jurisdiction cases, and the overall process will thus depend on the flexibility and cooperation of those defendants and those experts as well.

hearing set in January 2021, but no date has been provided, likely because of the current COVID emergency in Sweden. ECF No. 6538 at 3. The Swedish Court was recently advised of the December 1 Order, and Plaintiffs will request that the Abdullah hearing be conducted at the first available opportunity, with U.S. counsel appearing remotely via videoconference.[3]

The Kingdom has not yet complied with its own witness obligations. For example, the Court concluded that Saudi Arabia's arguments that Omar al-Bayoumi's supervisor Alp Karli was not employed by the Kingdom "represent its interpretation of the evidence, not the results of a properly conducted investigation" and instructed Saudi Arabia to advise Plaintiffs whether Karli would appear for deposition. ECF No. 6408 at 39. The Kingdom contacted Karli and maintains, despite testimony and document evidence to the contrary, *see id.,* that Karli was never a Kingdom employee; but it has not yet advised Plaintiffs whether he will appear for a deposition. ECF No. 6538 at 2. In addition, although Saudi Arabia now knows where Karli is, it has to date declined Plaintiffs' requests for Karli's current address. *Id.*[4] Depending on Karli's location and willingness to testify, it may be necessary for Plaintiffs to file a motion and/or Letters of Request to conduct Karli's deposition.[5]

Also, as Plaintiffs previously advised the Court, Plaintiffs have encountered problems contacting and arranging the testimony of a number of third-party witnesses because of their fears about testifying in a case involving Saudi Arabia. *Id.* at 3; ECF No. 6003-2 at ¶¶ 3-8. Some of the

---

[3] The Swedish court had previously advised the parties that U.S. counsel could conduct the questioning of the witness, but it is uncertain whether the Swedish court will allow U.S. counsel to participate remotely.

[4] Plaintiffs understand that the Kingdom is asserting that this information is work product. However, Plaintiffs anticipate (and have raised with the Kingdom's counsel) that Saudi Arabia had information in its possession that facilitated its investigator's ability to locate Karli. Further, the Kingdom chose to disclose selective information from the investigator's interview into the record. Finally, Plaintiffs have a substantial need for the information that outweighs the Kingdom's privilege assertion, if any, and plaintiffs do not otherwise have access to the same information.

[5] Similarly, Saudi Arabia has also not provided witness information about Sharif Battikhi based on claims about Battkihi's employment that are contrary to facts in the record. ECF No. 4236 Hunt Declaration Oct 26, 2018, Ex. 16; Plaintiffs' July 15, 2019 Letter to Supplement the Record, Ex. 1 at FBI 1037.

witnesses will likely involve counsel after being subpoenaed, and negotiations will be necessary to arrange for their appearances.  Moreover, the COVID emergency has prevented Plaintiffs from conducting person-to-person meetings with third-party witnesses essential to obtain information, prepare declarations, and notice depositions.  Plaintiffs do not have the option of subpoenaing every witness with relevant information, because the Court limited the number of available non-party depositions.[6]

Outstanding document production.  The Court has not yet decided a series of outstanding Motions to Compel the Kingdom and the FBI to obtain documents necessary to conduct the depositions of the involved Saudi government personnel.  For example, the FBI has still not produced most of the key non-privileged phone records and reports.  ECF No. 6491 at 3-4; Plaintiffs' Jan. 14, 2020 Second Motion to Compel the FBI at 13, 18, 20-21.  Plaintiffs need these documents to prove the contacts among the Saudi officials and their subagents in California over 20 years ago as they made plans for the arrival of the hijackers and then provided them with support.[7]  Nor has the FBI completed its agreed production of witness statements that include material information about Fahad al-Thumairy or Bayoumi, or any of the statements of their co-conspirator Anwar Aulaqi.  ECF No. 6491 at 4-5.  The Court has not yet decided Plaintiffs' January 14, 2020 Second Motion to Compel the FBI, which addresses the bulk of the contested FBI's documents about the role of Saudi government personnel in supporting the hijackers, including responsive documents that the FBI acknowledges were never reviewed for production.

---

[6] The Court limited Plaintiffs to 15 non-party depositions, but held that the two non-party King Fahad Mosque depositions conducted in 2019 would be counted toward that total.  Jan. 13, 2020 Hearing at 37.

[7] Plaintiffs are missing the complete phone records of Omar al-Bayoumi and Fahad al-Thumairy, and have not received any of the records of Fathi Aidarus, Mohdar Abdullah, Musaed al-Jarrah, Anwar al-Aulaqi, Mohamed Johar, Abdussattar Sheikh, Smail Mana, and Khalid al-Sowailem.  *Id.*

There are outstanding issues about Saudi Arabia's failure to produce documents about two Saudi Ministry of Islamic Affairs officials, Abdullah al-Jaithen and Majid Mersal, who visited California in December 1999 – January 2000, several weeks before the hijackers' arrival.

In addition, this Court has not yet decided any of Plaintiffs' outstanding Objections to the orders of Magistrate Judge Netburn which seek documents from Saudi Arabia concerning the activities of Saudi government personnel including Thumairy, Bayoumi, Musaed al-Jarrah, Smail Mana, Jaithen, and Mersal.[8]  These Objections raise critical issues of first impression about the Kingdom's searches and obligations to comply with the Federal Rules.[9]  The Kingdom initially failed to produce documents about the actual government work roles and activities of Bayoumi and Thumairy in the United States, and then produced a handful of additional documents only after Plaintiffs' own investigation and the FBI's production identified specific employment records that the Kingdom failed to produce.[10]  Plaintiffs' Objections should be decided, and the serious defects in the Kingdom's searches and production remedied, sufficiently in advance of the key depositions of the Saudi government officials involved in the support plot go forward.

<u>Virus risk.</u>  The COVID emergency is currently at its apex.  Plaintiffs have no control over any of the witnesses (many of whom are reluctant to testify) and it is uncertain whether subpoenas

---

[8] Those Objections include: Plaintiffs' August 5, 2019 Objections to the Magistate Judge's July 22, 2019 Opinion & Order; Plaintiffs' December 9, 2019 Objections to the Magistrate Judge's November 25, 2019 Opinion & Order; Plaintiffs' June 10, 2020 Motion for Reconsideration and Objections, ECF No. 6265, to the Magistrate Judge's May 27, 2020 Opinion & Order, ECF No. 6244; and Plaintiffs' July 7, 2020 Objections, ECF No. 6301.

[9] This is the first case addressing the scope of discovery of a foreign state under the Justice Against Sponsors of Terrorism Act, a law enacted based on Congress's assessment that fulsome judicial inquiries into evidence of foreign state assistance enabling or assisting an act of terrorism inside the United States advance U.S. national security and counter-terrorism goals.  Several of Plaintiffs' Objections concern the basic standards applicable to discovery in such cases, where Plaintiffs' have made a *prima facie* showing of jurisdiction.  Those are matters of first impression.

[10] Similar to its other officials, the Kingdom produced no documents about the activities of Embassy Islamic Affairs diplomat Jarrah during 2000, the key time when the FBI found in its 2012 Summary Report that "there is evidence that Jarrah . . . tasked al-Thumairy and al-Bayoumi with assisting the hijackers."  DOJ June 25, 2020 Letter, ECF No. 6292.  The Court's October 21, 2020 Order and Opinion, ECF No. 6510, held that key portions of that 2012 Summary Report were "State Secrets," denying Plaintiffs access to the information collected by the FBI about Thumairy, Bayoumi, and Jarrah.  The Court ordered that Plaintiffs could wait to file their Objection to the October 2020 Order until after the Court decides the other pending FBI privilege assertions.  ECF No. 6517.

can be served at this time.  This Court can take judicial notice of the current status of the virus, and the fact that a vaccine is just becoming available but will not be widely administered or effective until the spring at the earliest.

Plaintiffs object to the Court's suggestion that Plaintiffs' counsel need not be in the same room to conduct these depositions.  December 1 Order at 7-8.  Rather, the depositions require real-time consultation and coordination because of the complex factual and legal issues, together with the different views, approaches, and knowledge of the Plaintiffs' lawyers and their consultants.  Such exchanges are not feasible via text messaging or other remote means suggested by the Magistrate Judge.  The depositions will also uniquely require interactions during the testimony with the translator, and the handling of multiple translations and highly protected exhibits.  Plaintiffs' counsel need the in-person assistance of their offices and support staff to properly conduct the depositions, including researchers and paralegals; coordinators to manage the video document presentation; and, technological professionals.  Plaintiffs also need commercial grade broadband support and videoconferencing capabilities available only in the firms' offices.  Plaintiffs can conceive of no way of handling these depositions without access to such resources, and, despite the health risks, plan to go to their offices (and likely to assemble with one another) to conduct the depositions.  Further government restrictions or worsening health risks, however, could make that impossible.  And of course there is an ongoing risk that one of the responsible lawyers on either side will become infected.

> **B.    Plaintiffs object to in-person depositions in Saudi Arabia or holding the depositions remotely after the health situation improves and the Kingdom's witnesses can travel to a neutral deposition site**

In addition, Plaintiffs object to the Court's *sua sponte* ruling that "[t]o the extent the public health situation changes" to allow in-person depositions, such depositions must proceed "in the witness's country of residence."  December 1 Order at 10.  It was unwarranted for the Court to

suddenly reverse its previous orders which unequivocally decided, after full adversarial hearings, that in-person depositions should not proceed in Saudi Arabia.  In May 2020, the Court entered its deposition protocol Order which held—well after the onset of the COVID crisis—that the depositions of Kingdom witnesses would proceed in-person in one of four "presumptive locations," one in the U.S. and three in Europe (or pursuant to the agreement of the parties) and *not* in Saudi Arabia.  ECF No. 6204 at 2.  At that time, Plaintiffs successfully contended that the depositions should be conducted in a neutral and safe location, and that a deposition in the Kingdom raised fears about the personal safety of Plaintiffs' counsel, and the security of their documents, work product information, and conversations.  Plaintiffs' Feb. 21, 2020 Letter at 4-5.[11]  That was not the Court's first recognition that Saudi Arabia was not a proper venue from which to conduct depositions.  In 2017, addressing safety and security concerns about conducting depositions from Saudi Arabia, Judge Netburn recognized the "unique issues that are raised by requiring depositions to the take place in Saudi Arabia, which is obviously a defendant in this case," and ordered that depositions of Saudi residents must proceed in Europe or an agreed location outside of Saudi Arabia, concluding that "I reject the proposal from the Defendants' Executive Committee that depositions occur in any nation, including where a deponent lives or works." *See* Sept. 9, 2017 Hearing at 23.  The risks and circumstances underlying the Court's prior two rulings that Saudi Arabia was not a safe and proper location for depositions have not changed.  This Court should order that if and when conditions permit counsel and witnesses to safely travel, the depositions should proceed in-person in a neutral and agreed location, and not in Saudi Arabia.

---

[11] The Court's characterization that "[t]he Plaintiffs propose that depositions be conducted in person in the United States," December 1 Order at 2, does not accurately state the Plaintiffs' position at the time.  The Plaintiffs offered the U.S. as only one of several feasible locations at the time the issue was briefed in September 2020, and argued that the Court should order the parties to agree on any neutral and safe location *other than* Saudi Arabia for the depositions. ECF No. 6466 at 2.

7

Plaintiffs further object to the rationales cited by the Court for its reversal on the deposition location. The Court cited its need to recognize "Saudi Arabia's Legitimate Sovereign Interests" and grant "comity" and "special solicitude" to the Kingdom, December 1 Order at 3, but that reasoning does not support the reversal of the Court's prior orders for several reasons. First, the Kingdom previously volunteered to produce several of its witnesses in a neutral location, including Bayoumi and Thumairy. Thus, the Kingdom's own position establishes that its comity interests are not significantly implicated by presenting these and other witnesses in a neutral third-party state.

Second, the record did not contain the kind of evidence necessary to establish such an interest in favor of Saudi Arabia. To the contrary, the record shows that over the past decade many of the Saudi government witnesses have repeatedly traveled to the U.S., Europe, and other locations that could serve as a neutral deposition site.

Third, the cases cited by the Court, December 1 Order at 3, are clearly distinguishable as none apply comity to a situation similar to that presented here, where Plaintiffs have already made a *prima facie* showing that a group of foreign government officials organized a criminal scheme inside the U.S. to provide substantial support to terrorists. Given JASTA's fundamental purposes, it is doubtful that "comity" considerations play any role under these circumstances, particularly where the Court had previously recognized that safety, security, fairness and justice dictated that the witnesses be produced for deposition in a neutral location outside of Saudi Arabia.

Another reason the Court cited for rejecting Plaintiffs' arguments that the depositions be conducted in a neutral site was that "[t]here is no evidence that the Saudi witnesses will lie under oath." December 1 Order at 5.[12] But the undisputed record, as acknowledged by the Court, shows

---

[12] The Court also incorrectly stated that "any ruling that assumes that [the Saudi witnesses will lie under oath] would require the Court to assume also that Saudi Arabia's American lawyers are similarly engaging in such misconduct." December 1 Order at 5. Plaintiffs respectfully submit that this is incorrect. The Kingdom's American lawyers know only what the Kingdom and its witnesses have disclosed to them. Particularly given the dearth of documents produced by the Kingdom based on searches solely conducted by Saudi officials, the witnesses could withhold relevant information without American counsel realizing they had done so.

that Plaintiffs have legitimate concerns. Bayoumi and Thumairy repeatedly lied about material facts during their 9/11 Commission interviews. *See* Plaintiffs' Jan. 8, 2019 Reply on Motion to Compel, App. at 9-11.[13] The fact that they lied to the official government investigators conducting the inquiry into the murder of 2,977 innocent people (and, at least in Thumairy's case, while receiving coaching from a Saudi intelligence officer), must give rise to a reasonable inference that they may be less than forthcoming during civil depositions relative to which they face no meaningful perjury risk. Thumairy also apparently withheld material information about his work under the direction of Prince Abdulaziz bin Fahd when interviewed for purposes of the Kingdom' responses to Plaintiffs' interrogatories. KSA Dec 21, 2018 Opp. to Plaintiffs' Motion to Compel at 6, 8, 9 & Add. at 1, 6. Khalil al-Khalil, the Director of the King Fahad Mosque who was a former Saudi Embassy Islamic Affairs Deputy (the same position held by Jarrah), an official of a Saudi state-run university, and a member of the Saudi Shura Council, made numerous statements during his deposition about Thumairy's role at the Mosque which are deeply at odds with the overwhelming evidence of record. Plaintiffs' June 21, 2019 Reply at 2-4.[14] The record also details the recent and shocking involvement of the Saudi government in a string of criminal acts ranging from the murder of Jamal Khashoggi in Turkey to illegal hacking and surveillance inside the U.S.—as well as the Kingdom's efforts to cover-up those government-sponsored crimes as well as the criminal acts of its citizens inside the U.S. ECF No. 6003-2 at ¶¶ 9-25 (and accompanying exhibits).

---

[13] The 9/11 Commission interviewers themselves concluded that Thumairy was "deceptive" throughout his testimony. ECF No. 3783-6, Rochford Declaration of Nov 9, 2017 at ¶ 92. This Court previously acknowledged the proof that Thumairy and Bayoumi lied during those interviews. July 30, 2015 Hearing at 73. False statements made to a government body such as the 9/11 Commission constitute a criminal violation of 18 U.S.C. § 1001.

[14] Saudi Arabia also filed an "emergency motion" to postpone Khalil's deposition, ECF No. 4572, claiming "unfair surprise" while at the same time Kingdom was actively working in secret with the Mosque's lawyers to prepare Khalil for his deposition.

Dated: New York, New York
December 15, 2020

| KREINDLER & KREINDLER LLP | MOTLEY RICE LLC |
|---|---|
| By: /s/ *Steven R. Pounian* <br> STEVEN R. POUNIAN <br> ANDREW J. MALONEY <br> 750 Third Avenue <br> New York, New York 10017 <br> Tel.: 212-687-8181 <br> Email: spounian@kreindler.com <br> *For the Plaintiffs' Exec. Committees* | By: /s/ *Robert T. Haefele* <br> ROBERT T. HAEFELE <br> 28 Bridgeside Boulevard <br> Mount Pleasant, SC 29465 <br> Tel.: (843) 216-9184 <br> Email: rhaefele@motleyrice.com <br> *For the Plaintiffs' Exec. Committees* |

COZEN O'CONNOR

By: /s/ *Sean P. Carter*
SEAN P. CARTER
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Tel.: (215) 665-2105
Email: scarter@cozen.com
*For the Plaintiffs' Exec. Committees*