UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE TERRORIST ATTACKS ON :     03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001                      :

**This Document Relates To:**
*Havlish, et al. v. bin Laden, et al.*, **Case No. 03-CV-09848**
*Ashton, et al. v. al Qaeda Islamic Army, et al.*, **Case No. 02-CV-06977**
*Burnett, Sr., et al., v. Islamic Republic of Iran,* **Case No. 15-CV-9903**
*Burlingame, et al. v. bin Laden, et al.,* **Case No. 02-CV-07230**
*Bauer, et al. v. al Qaeda Islamic Army, et al.,* **Case No. 02-CV-07236**
*O'Neill, Sr., et al. v. Republic of Iraq, et al.,* **Case No. 04-CV-1076**
----
*All other cases against the Islamic Republic of Iran*

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR FED.R.CIV.P. 72 OBJECTIONS TO THE SEPTEMBER 30, 2020 OPINION & ORDER (ECF No. 6481) DENYING PLAINTIFFS' MOTIONS FOR RECONSIDERATION AND / OR CLARIFICATION REGARDING "COMMON BENEFIT FUND" DECISION (ECF No. 5180)**

MOTLEY RICE LLC
JODI WESTBROOK FLOWERS
DONALD A. MIGLIORI
ROBERT T. HAEFELE
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com
*For the Plaintiffs' Exec. Committee for Wrongful Death And Personal Injury Plaintiffs*

KREINDLER & KREINDLER LLP
JAMES P. KREINDLER
ANDREW J. MALONEY
KREINDLER & KREINDLER LLP
750 Third Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: amaloney@kreindler.com
*For the Plaintiffs' Exec. Committee for Wrongful Death And Personal Injury Plaintiffs*

ANDERSON KILL P.C.
JERRY S. GOLDMAN
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, New York 10020
Tel.: 212-278-1000
Email: jgoldman@andersonkill.com
*For the Plaintiffs' Exec. Committee for Wrongful Death And Personal Injury Plaintiffs*

## TABLE OF CONTENTS

1. Standard of Review ................................................................................................... 1

2. *Havlish* Counsel Rest Their Opposition on Irrelevant Facts ............................... 2

3. Jurisdiction ............................................................................................................... 2

4. The Opposition Brief Offers No Support Under Caselaw, MDL Practice, or Equitable Principles for Establishing a Common Benefit Fund Applicable Solely to Claims Against Iran in this Ongoing Multi-Defendant MDL ....................................................................... 4

5. Any Common Benefit Fund Contribution Should Not Reach to Round One USVSST Fund Payments ........................................................................................ 9

6. Conclusion ............................................................................................................... 10

Responding Plaintiffs file this reply in support of their Fed.R.Civ.P. 72 Objections asking this Court to set aside the September 30, 2019 and September 30, 2020 decisions by the Honorable Sarah Netburn, United States Magistrate Judge. ECF Nos. 5180, 6481. Those decisions contravene the law, principles of equity, and purpose of multi-district litigation ("MDL") practice. Establishing a Common Benefit Fund ("CBF") to compensate only a small subset of attorneys who worked on getting a default liability judgment against one defendant in a multi-defendant MDL has no analog in the long-body of MDLs and CBFs and would be unprecedented, unwarranted, and unjustifiable.

Such a limited CBF would not only ignore the basic underlying rationale of an MDL (upon which a court's managerial authority to create a CBF rests), it would also fail to give adequate consideration to the complex, demanding, and continuing MDL work that Responding Plaintiffs have performed and are continuing to perform on behalf of all plaintiffs against the variety of parties that are vigorously defending themselves. To the extent this Court believes that plaintiffs in this MDL have received a benefit within the scope of the litigation that justifies creation of a CBF, then any such fund must be available to compensate all counsel who have performed work as part of the Plaintiffs' Executive Committees ("PECs") or have otherwise contributed toward the common goals of the litigation.

1. **Standard of Review**

These objections should be reviewed *de novo* under Fed.R.Civ.P. 72(b), as well-established caselaw holds that "motions for attorney's fees" must "be reviewed *de novo* if referred to a Magistrate Judge and properly objected to." *Baylor v. Mitchell Rubenstein & Associates, P.C.*, 857 F.3d 939, 946 (D.C. Cir. 2017); *McConnell v. ABC–Amega, Inc.*, 338 Fed.Appx. 24, 26 (2d Cir. 2009) ("Attorneys' fee determinations are considered 'dispositive' for

purposes of Rule 72 of the Federal Rules of Civil Procedure."); *Scarangella v. Group Health Inc.*, 877 F.Supp.2d 78, 82 (S.D.N.Y. 2012).

The Magistrate Judge's reliance on *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113 (2d Cir. 2010) in support of her characterization of the decisions as Opinions and Orders was misplaced, as *Zyprexa* did not concern the standard of review applicable to Fed.R.Civ.P. 72 challenges but, rather, an interlocutory appeal to the Second Circuit.

Nevertheless, whether review is carried out under Fed.R.Civ. P. 72(b) (*de novo*) or under Fed.R.Civ.P. 72(a) (for clear error or misapplication of the law) makes no difference to the outcome here.  The Magistrate Judge's creation of a CBF that would apply only to efforts relating to the default judgment against Iran in this ongoing MDL conflicts with controlling law and is at odds with the equitable considerations underlying the common benefit doctrine.

2. *Havlish* **Counsel Rest Their Opposition on Irrelevant Facts**

In opposing Responding Plaintiffs' objections, *Havlish* counsel focuses on disputed questions of fact as to their role in the MDL, efforts they allege the PECs took to undermine their work, and the labor they assert was necessary to obtain their own default liability judgment against Iran. *See* ECF No. 6544 at 1-12.  Most if not all of those assertions are contested.  Because, however, those disputed factual representations are irrelevant to the legal questions concerning the authority of the Court to create a CBF here and the propriety of doing so to compensate only for efforts relating to the Iran default liability judgment, Responding Plaintiffs simply note these disputes and reserve the right to address them when procedurally appropriate.

3. **Jurisdiction**

This Court lacks the authority to establish a Common Benefit Fund premised on recoveries from the U.S. Victims of State Sponsored Terrorism ("USVSST") Fund.  The USVSST Fund is a government program outside the scope of this or any related litigation.  It is

not a party to this MDL, nor is it subject to any court-ordered obligation to pay judgments against Iran.  As Responding Plaintiffs previously argued, a district court's authority to create a CBF rests on its jurisdiction over both the parties before it and the recoveries that will contribute to the common benefit fund. *See* ECF No. 6522 at 8-12.  Because the USVSST Fund is beyond the Court's jurisdiction, recoveries from it can neither justify (nor go toward) a CBF.

*Havlish* counsel attempts to distinguish the decisions Responding Plaintiffs cited on this point by arguing that it is the district court's jurisdiction over *plaintiffs* that confers it with jurisdiction to establish a CBF based on USVSST Fund recoveries. *See* ECF 6544 at 14-17.  That, however, ignores the important point made in those cases that it is only recoveries paid by defendants in the MDL on claims raised in the MDL that may provide a source of funding for a CBF. *See In re Genetically Modified Rice*, 764 F.3d 864, 874 (8th Cir. 2014), *cert. denied* 135 S.Ct. 1455 (2015) ("*Rice I*"); *In re Showa Denko K.K.L.-Tryptophan Prods. Liab. Litig. II*, 953 F.2d 162, 165 (4th Cir. 1992).

While *Havlish* counsel attempt to distinguish *Rice I* by citing to *In re Genetically Modified Rice II*, 835 F.3d 822 (8th Cir. 2016), for the proposition that USVSST Fund recoveries are properly within the jurisdiction of this Court, they are incorrect.  In *Rice II*, the corpus that the Eighth Circuit held was within the scope of the MDL was comprised of settlement monies paid by one party to the MDL litigation to another party to the litigation, albeit paid to resolve a parallel state court action.  By contrast, here the USVSST Fund is not a party to this MDL.  The USVSST Fund makes payments from financial penalties assessed against entities that have violated trade sanctions against any officially designated state-sponsor of terrorism – entirely unrelated to the issues being litigated in this MDL. 34 U.S.C. § 20144(e)(2)(A).  A claimant need not have a judgment against Iran to be paid by the USVSST Fund; a judgment against any state-sponsor of terrorism will do. 34 U.S.C. § 20144(c)(1) and (2).  The USVSST Fund is not a

3

means to get funds from Iran to claimants but is, instead, a broad compensatory scheme that distributes monies from a variety of non-Iranian sources to a variety of judgment holders. That Congress chose the condition of a final judgment does not bring the awards from the USVSST Fund within this Court's jurisdiction.[1] To the extent that any plaintiffs relied on work performed by *Havlish* counsel to meet the USVSST Act's precondition for payment, that is only a function of the structure that the USVSST Fund voluntarily adopted for awarding payments. Just as no one could reasonably argue that simply because Responding Plaintiffs have a case in the MDL this Court could order them to contribute to a CBF out of recoveries from entirely unrelated cases, this Court cannot order a CBF contribution from a source that is separate and distinct from the parties and issues being litigated in this MDL.

4. **The Opposition Brief Offers No Support Under Caselaw, MDL Practice, or Equitable Principles for Establishing a Common Benefit Fund Applicable Solely to Claims Against Iran in this Ongoing Multi-Defendant MDL**

In treating Iran as a uniquely-situated defendant, the Magistrate Judge essentially deconstructed the MDL and, in doing so, undermined the legal, historical, and equitable justifications for a CBF here. This approach would, for the first time ever, carve out a single defendant from an MDL that was created expressly to consolidate claims against multiple defendants and treat only work relating to that defendant as justification for a common benefit fund. That would, however, deprive the court of the very legal, equitable, and managerial

---

[1] As it happens, many 9/11 claimants were originally ineligible for USVSST Fund payments because they had received compensation from the 9/11 Victims' Compensation Fund, despite having final judgments issued by this Court, which is further evidence that the payments from the USVSST Fund are outside the scope of this MDL. Moreover, even valid judgment holders eligible for payment cannot compel payment of USVSST Fund proceeds as payouts can be garnished to satisfy an array of debt obligations unrelated to this MDL, from real estate taxes to educational loans. Additionally, the USVSST Act itself provides that "decisions made by the Special Master with regard to compensation from the Fund" are "not subject to administrative or judicial review," taking such awards, again, outside the scope of this MDL. *See* 34 U.S.C. § 20144(b)(3).

authority upon which a CBF depends, and it would directly contradict the order establishing this MDL to manage complex claims against multiple defendants involved in the 9/11 attacks.

An MDL is, by definition, a collection of multiple cases. Duke Law Center for Judicial Studies, *Standards and Best Practices for Large and Mass-Tort MDLs* 71 (2014) ("Duke Report") at 1.[2] The Multidistrict Litigation Act conferred power on the federal courts to transfer and consolidate groups of cases filed in multiple federal district courts to a single court for purposes of coordinating and conducting pretrial proceedings. 28 U.S.C. § 1404 *et seq*. Because MDLs often include thousands of cases and multiple parties, "[i]t is necessary for an MDL transferee judge to impose some organizational structure on the attorney representation so that the case can proceed in an effective and efficient manner." Judge Eldon E. Fallon, *Common Benefit Fees in Multidistrict Litigation,* 74 LA. L. Rev. 371, 373 (2014). Federal courts have this broad managerial authority precisely because of the procedural complexity of the number of cases and parties consolidated into an MDL.

It is the same managerial authority that allows an MDL court to appoint lead counsel or committee counsel to coordinate discovery, develop proof of liability, anticipate defenses, consult with experts – frequently concerning multiple defendants – as well as coordinate filings, communicate with plaintiffs' counsel, defense counsel and the court, among other things. It is also this managerial authority over a complex, multi-party, multi-claim consolidated process that confers on an MDL court the power to create a common benefit compensation program. Indeed, it has been "long recognized that a court's power to consolidate and manage litigation

---

[2] To the extent the Magistrate Judge believed most MDLs do not involve multiple defendants (ECF No. 6481 at 4), that statement is incorrect. Indeed, best MDL practices anticipate multiple-defendant situations and sometimes recommend a defense steering committee to ensure efficiencies on the defense as well as the plaintiff side of an MDL. *See* Duke Report at 40, 55. Further, the "timeline" of the suit against Iran has not "by and large come to a close." ECF No. 6481 at 7. While the USVSST Fund is issuing payments, Iran remains a defendant in this MDL and parties maintain their rights to press enforcement efforts against Iran (as opposed to a federally-funded compensation program) in the future.

necessarily implies a corollary authority to appoint lead or liaison counsel and to compensate them for their work." Judge Eldon E. Fallon, *Common Benefit Fees in Multidistrict Litigation,* 74 LA. L. Rev. 371, 377 (2014), citing *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1008 (5th Cir. 1977); *see also In re Zyprexa Liab. Litig.*, 467 F.Supp.2d 256, 265 (E.D.N.Y. 2006) (the court's authority to manage the federal MDL confers on it power to "assure that [the] attorneys [performing common benefit tasks] receive reasonable compensation for their work" and establish a common benefit fund.) Implicit in an MDL court's authority to create a CBF is the principle that that fund is intended to provide compensation to ***all*** of the attorneys who, under the authority of the Court, have carried out the common MDL work.

In the original transfer order in this case issued on December 10, 2003, the Judicial Panel on Multidistrict Litigation ("JPML") found that the then-pending actions "involve common questions of fact and that centralization in the Southern District of New York will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." ECF No. 1.  As the JPML observed, all of the actions – which, at that time, included claims against, among others, al Qaeda, Iran, Sudan, Saudi Arabia, various banks, charities, and individual defendants – "present common, complex legal and factual questions concerning the efforts of plaintiffs to hold liable ***an array of defendants*** who allegedly promoted, financed, sponsored or otherwise supported the acts of terrorists that led to the deaths and injuries arising from the September 11, 2001 attacks on the United States." *Id.* (emphasis added). The JPML did not parse out a separate Iran-claims MDL but, instead, consolidated all claims arising out of the September 11, 2001 terrorist attacks.  Any CBF must therefore consider the entirety of MDL work and cannot be established to compensate only for the work performed against a discrete, individual defendant, while ignoring the other common MDL work.

What *Havlish* counsel here is seeking is inherently contradictory. They ask this Court to view their work as carried out within the scope of the MDL in order to leverage MDL caselaw and practice on the establishment of a common benefit fund, but then also ask this Court to treat their work against Iran as entirely independent from the efforts of the PECs with respect to other MDL tasks and other MDL defendants. *See, e.g.,* ECF No. 6543 at 10; ECF No. 6544 at 17-20. This they cannot do. If payouts from the USVSST Fund are deemed to be benefits conferred on MDL plaintiffs, then they are necessarily benefits that have been conferred by the work of all attorneys carrying out common benefit work on behalf of the PECs. Any Iran-only CBF would be inimical to MDL practice and disregard the establishment of this particular MDL.

No other MDL fee decision that Responding Plaintiffs have found has ever established a CBF to award fees to attorneys who worked on *only* one, discrete portion of the litigation while ignoring the other work performed by other committee members. Indeed, *Havlish* counsel can cite to none and the Magistrate Judge likewise could not find any. The reason for this is self-evident. A CBF cannot be created to reward work performed in connection with only one out of many defendants in an MDL, as the JPML's creation of the MDL defines its scope and a transferee court cannot subsequently excise claims on a case-by-case basis, singling out some but not others for compensation.

*Havlish* counsel also take an unreasonably narrow view of what constitutes a "common benefit" for the plaintiffs in this case. ECF No. 6544 at 18-21. Responding Plaintiffs have performed an enormous amount of work for all plaintiffs (exactly the sort contemplated by the JPML order, much of which is evidenced in the almost epically-long MDL docket, which now reaches to over 6,500 entries), and in addition to the substantial discovery demands they have met, the Responding Plaintiffs' efforts have resulted in, among other things, strengthening U.S. counter-terrorism enforcement through the establishment of a federal cause of action for aiding

7

and abetting and conspiracy liability, declassification of FBI documents concerning the September 11 investigation, release of CIA, State Department and Treasury Department documents concerning al Qaeda, the closure of the al-Haramain Foundation, which was a major funder of terrorism, production of information from the Kingdom of Saudi Arabia about individuals who provided material support to the hijackers and upcoming depositions of key Saudi officials concerning the Kingdom's role in the September 11 Attacks. *See also* ECF No. 6523 at 2-7 (detailing Responding Plaintiffs' litigation, legislative and enforcement efforts performed on behalf of all plaintiffs). All of that has conferred a benefit on the families touched by September 11, disrupting the financing of terrorist networks, providing information about the sponsors of the 9/11 attacks, and aiding the plaintiffs in their search for truth and transparency.

      The JPML's establishment of the MDL is to accomplish the very purpose that *Havlish* counsel's argument would defeat: to distribute work amongst various attorneys, avoid duplicative discovery and conserve the resources of the parties, their counsel and the judiciary. Management of an MDL would be infinitely more complicated (and less efficient) were the only consideration when establishing (and paying out from) a CBF to be monetary recoveries. Such a rule would discourage attorneys from working on the more mundane or more difficult aspects of an MDL while encouraging participation only in those efforts most likely to result in a direct financial payout.[3] The purpose of the MDL is to distribute *all* of the work, and the CBF must compensate *all* of the attorneys who have worked to the common benefit of the parties. If the USVSST Fund payments constitute a benefit flowing from this MDL (which Responding Plaintiffs dispute, *see supra* at 3-4), then it is the MDL that was successful and it is all of the

---

[3] *Havlish* counsel recognizes this structural problem by claiming that the PECs would only have pursued a judgment against Iran if they believed doing so would produce a "windfall." ECF No. 6543 at 9. Were members of an MDL committee only interested in performing work that they believed would lead to a monetary recovery, no attorneys would be willing to act as liaison counsel nor would any volunteer to prosecute liability or damages theories that were anything but guaranteed to result in a monetary recovery.

8

attorneys who have labored for the past sixteen years on behalf of all plaintiffs who are entitled to share in compensation from any common benefit fees.  There is simply no separate Iran-only litigation here; the MDL, as defined by the JPML's order establishing it, consolidates claims against all defendants charged with providing support for and aiding in the September 11 terrorist attacks.  Because there is no separate, stand-alone Iran MDL, there is also no justification under law or equity for an Iran-only common benefit fund.

While *Havlish* counsel also argue that the Responding Plaintiffs' objection concerning allocation is premature (ECF No. 6544 at 22), they misconstrue the problem with the Magistrate Judge's decisions.  This objection is not to a specific allocation amount but, rather, to an allocation that, as the Magistrate Judge recommended, would be available for work relating only to default liability judgments against Iran.  Separate and apart from the objections to imposing an assessment on USVSST Fund recoveries, Responding Plaintiffs' object to creating a CBF that will allocate payments ***only*** for Iran-related work, as opposed to all work for the common benefit of MDL plaintiffs, which would be contrary to MDL law, practice, and principles.

### 5. Any Common Benefit Fund Contribution Should Not Reach to Round One USVSST Fund Payments

While a district court has inherent authority to order assessments to create a common benefit fund, any requirement to do so from USVSST Fund payments received prior to *Havlish* counsel's renewed motion for creation of a CBF would be improper under the particular circumstances at issue here.

It was not until after the USVSST Fund publicized its first round of payments that *Havlish* counsel moved anew for creation of a CBF.  When it did so, *Havlish* counsel's motion asked for contributions to be made only from fees relating to USVSST Fund distributions received from 2019 onward, asking the Court to "authorize payments to the *Havlish* attorneys of

9

all sums placed into the common benefit fund by virtue of USVSST Fund distributions ***received by the Responding Plaintiffs in 2019 and continuing through all future years of the USVSST.***" ECF Nos. 4289 at 2 (emphasis added); *see also* ECF No. 4290 at 2-3 (arguing only for USVSST Fund payments made in 2019 and later). That request, by its plain terms, excluded any pre-2019 USVSST Fund distributions and later efforts by *Havlish* to excuse away its failure to move for pre-2019 recoveries cannot justify a ruling that went beyond the relief that *Havlish* counsel expressly sought: payments from fees derived from USVSST Fund distributions "in 2019" and later. The Magistrate Judge erred in ruling that any contribution to a CBF should take those earlier payments into consideration.

Moreover, because the *Havlish* motion was limited to USVSST Rounds Two and later, substantial due process and equal protection problems would arise with any order attempting to claw back portions of payouts from Round One. Those who had recovered fees in Round One would be asked to make disproportionate percentage contributions from later awards, without proper notice or opportunity to object to this disparate treatment.

6. **Conclusion**

For all of the reasons in Plaintiffs' Objections and this Reply, the Court should not authorize creation of a Common Benefit Fund based on recoveries from a government fund outside the scope of the MDL that would compensate work relating only to a single defaulting defendant (while work in all other aspects of the MDL goes uncompensated). Responding Plaintiffs respectfully request that this Court set aside the 09/30/2019 and 09/30/2020 decisions and deny *Havlish* counsel's request for establishment of a Common Benefit Fund to compensate work relating solely to Iran.

| | |
|---|---|
| December 16, 2020 | Respectfully submitted, |
| MOTLEY RICE LLC<br>By: /s/ Robert T. Haefele<br>    JODI WESTBROOK FLOWERS<br>    DONALD A. MIGLIORI<br>    ROBERT T. HAEFELE<br>    MOTLEY RICE LLC<br>    28 Bridgeside Boulevard<br>    Mount Pleasant, SC 29465<br>    Tel.: (843) 216-9184<br>    Email: rhaefele@motleyrice.com<br>    *For the Plaintiffs' Exec. Committee for Wrongful Death And Personal Injury Plaintiffs* | KREINDLER & KREINDLER LLP<br>By:  /s/ Andrew Maloney<br>    JAMES P. KREINDLER<br>    ANDREW J. MALONEY<br>    KREINDLER & KREINDLER LLP<br>    750 Third Avenue<br>    New York, New York 10017<br>    Tel.: 212-687-8181<br>    Email: amaloney@kreindler.com<br>    *For the Plaintiffs' Exec. Committee for Wrongful Death And Personal Injury Plaintiffs*<br><br>ANDERSON KILL P.C.<br><br>By: /s/ Jerry S. Goldman<br>    JERRY S. GOLDMAN<br>    BRUCE STRONG<br>    ANDERSON KILL P.C.<br>    1251 Avenue of the Americas<br>    New York, New York 10020<br>    Tel.: 212-278-1000<br>    Email: jgoldman@andersonkill.com<br>    *For the Plaintiffs' Exec. Committee for Wrongful Death And Personal Injury Plaintiffs* |