# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
)
IN RE:  TERRORIST ATTACKS ON       )     Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001            )     ECF Case
_____)

This document relates to:  *All Actions*

## SAUDI ARABIA'S OPPOSITION TO PLAINTIFFS'
## <u>RULE 72 OBJECTIONS TO THE DECEMBER 1, 2020 OPINION & ORDER</u>

Michael K. Kellogg
Mark C. Hansen
Gregory G. Rapawy
Andrew C. Shen
Christopher M. Young
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900
(202) 326-7999 (fax)

*Attorneys for the Kingdom of Saudi Arabia*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION .........................................................................................................................1

STANDARD OF REVIEW ............................................................................................................2

BACKGROUND ...........................................................................................................................2

ARGUMENT .................................................................................................................................5

I.      Judge Netburn Reasonably Established a Deadline for the Conclusion of
        Fact Depositions..................................................................................................................5

II.     Judge Netburn Reasonably Determined That Depositions Must Proceed
        by Remote Means or, with Leave of Court, in a Witness's Country of
        Residence .........................................................................................................................10

CONCLUSION............................................................................................................................16

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

**CASES**

*American Broad. Cos. v. Aereo, Inc.*, 2013 WL 12328764
(S.D.N.Y. Oct. 17, 2013) .................................................................................................11

*B.F. Goodrich v. Betkoski*, 99 F.3d 505 (1996), *clarified on denial of reh'g*,
112 F.3d 88 (2d Cir. 1997).................................................................................................6

*Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail Rigging, LLC*, 2015 WL 545565
(S.D.N.Y. Feb. 9, 2015) ...................................................................................................13

*Dagen v. CFC Grp. Holdings Ltd.*, 2003 WL 21910861 (S.D.N.Y. Aug. 11, 2003) .............14-15

*Emory v. Grenough*, 3 U.S. (3 Dall.) 369 (1798).........................................................................13

*Federal Ins. Co. v. Kingsbury Props., Ltd.*, 1992 WL 380980
(S.D.N.Y. Dec. 7, 1992).....................................................................................................10

*Frydman v. Verschleiser*, 2017 WL 1155919 (S.D.N.Y. Mar. 27, 2017).....................................2, 6

*Grace v. Rosenstock*, 228 F.3d 40 (2d Cir. 2000).........................................................................13

*Hilton v. Guyot*, 159 U.S. 113 (1895).........................................................................................13

*Housing Works, Inc. v. City of New York*, 203 F.3d 176 (2d Cir. 2000) .......................................13

*Joffe v. King & Spalding LLP*, 2020 WL 3453452 (S.D.N.Y. June 24, 2020)............................10

*Leviton Mfg. Co. v. Greenberg Traurig LLP*, 2011 WL 2946380
(S.D.N.Y. July 14, 2011) ....................................................................................................2

*McQuiggin v. Perkins*, 569 U.S. 383 (2013)................................................................................14

*Natural Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 760 F.3d 151
(2d Cir. 2014)....................................................................................................................14

*New York v. National Servs. Indus., Inc.*, 352 F.3d 682 (2d Cir. 2003) ......................................5-6

*Peterson v. Home Depot U.S.A., Inc.*, 2014 WL 1355622 (S.D.N.Y. Apr. 4, 2014).....................6

*Petition of Boehringer Ingelheim Pharm., Inc. & Boehringer Ingelheim Int'l
GmbH, in Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig., In re*,
745 F.3d 216 (7th Cir. 2014) ...........................................................................................14

*RMed Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2000 WL 420548
(S.D.N.Y. Apr. 18, 2000)....................................................................................................2

*Rouviere v. DePuy Orthopaedics, Inc.*, 471 F. Supp. 3d 571 (S.D.N.Y. 2020)............................11

*RP Family, Inc. v. Commonwealth Land Title Ins. Co.*, 2011 WL 6020154
(E.D.N.Y. Nov. 30, 2011) ................................................................11

*Ryan v. Gonzales*, 568 U.S. 57 (2013) ..........................................................14

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of
Iowa*, 482 U.S. 522 (1987) ................................................................13

*U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.*, 2007 WL 2327068
(S.D.N.Y. Aug. 13, 2007) ................................................................2

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 1995 WL 686715
(Nov. 17, 1995), *clarified*, 1995 WL 758767 (S.D.N.Y. Dec. 21, 1995) ........................14

## STATUTES AND RULES

Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 852
(2016) ................................................................14

28 U.S.C. § 1605B ................................................................14

28 U.S.C. § 636(b)(1)(A) ................................................................2

Fed. R. Civ. P.:

Rule 30(b)(4) ................................................................1, 11

Rule 72 ................................................................2, 6, 8, 9

Rule 72(a) ................................................................2, 6

## OTHER MATERIALS

Fed. Judicial Ctr., *Manual for Complex Litigation (Fourth)* (2004) ................................6

## INTRODUCTION

Jurisdictional discovery against the Kingdom of Saudi Arabia ("Saudi Arabia") will soon reach the three-year mark. Written discovery closed almost a year ago. Since then, Judge Netburn has repeatedly indicated that depositions should begin, by video-conference when necessary, instructing Plaintiffs' Executive Committees ("Plaintiffs") that non-party depositions should "proceed immediately," ECF No. 6204, at 1 (May 11, 2020); that a deadline for all jurisdictional discovery fact depositions was "high on [her] list of things to accomplish," ECF No. 6274, at 146:18-20 (May 21, 2020); and that the parties should "move forward immediately with non-party . . . depositions," ECF No. 6408, at 40 (Aug. 27, 2020). Plaintiffs did not schedule any party or non-party depositions in response to those instructions from the Court, nor did they propose a schedule with any discovery end date. Instead, they contended as late as September 22, 2020, that it would be premature to set any deadline until the parties "first conducted several rounds of actual depositions." ECF No. 6466, at 3.

On December 1, 2020, Judge Netburn reasonably concluded that, without a firm date for the end of depositions, the "prompt[] and expeditious[]" discovery directed by this Court in March 2018, ECF No. 3946, at 41, would drag on indefinitely. Accordingly, she directed the parties to complete "[a]ll fact depositions . . . by June 30, 2021," and gave notice that she "will not extend" this deadline. ECF No. 6546, at 10. Recognizing the safety risks posed by the ongoing global COVID-19 pandemic, and pursuant to Federal Rule of Civil Procedure 30(b)(4), she ordered that the "depositions be conducted by remote means," *id.* at 1, but invited Plaintiffs to seek leave to conduct in-person depositions in witnesses' countries of residence if "the public health situation changes," *id.* at 10. Her discovery order reasonably balances the interests of the parties and the public. Plaintiffs' objections to it are meritless and should be overruled.

## STANDARD OF REVIEW

To justify reversal of a magistrate judge's discovery orders, plaintiffs filing Rule 72 objections bear a "'heavy burden.'" *Leviton Mfg. Co. v. Greenberg Traurig LLP*, 2011 WL 2946380, at *1 (S.D.N.Y. July 14, 2011) (quoting *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.*, 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007)).  They must demonstrate that the discovery orders were "clearly erroneous" or "contrary to law."  Fed. R. Civ. P. 72(a) (review of a magistrate judge's nondispositive rulings); *see* 28 U.S.C. § 636(b)(1)(A) (same). Under this "highly deferential standard," *Frydman v. Verschleiser*, 2017 WL 1155919, at *2 (S.D.N.Y. Mar. 27, 2017), discovery orders "'may be overturned only if found to have been an abuse of discretion,'" *Leviton Mfg.*, 2011 WL 2946380, at *1 (quoting *RMed Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2000 WL 420548, at *2 (S.D.N.Y. Apr. 18, 2000)).

## BACKGROUND

On March 28, 2018, this Court authorized "limited and targeted jurisdictional discovery" against Saudi Arabia and directed that "[l]imited jurisdictional discovery . . . proceed promptly and expeditiously."  ECF No. 3946, at 23, 41.[1]  Nearly two years later, on January 13, 2020, Judge Netburn declared "formal paper discovery" closed.  ECF No. 5777, at 43:10-11; *see* ECF No. 6290, at 7 (filed under seal June 23, 2020).

---

[1] In this filing, "December 1 Order" refers to Judge Netburn's December 1, 2020 Opinion & Order, docketed as ECF No. 6546; "KSA 2d Prot. Order Motion" refers to Saudi Arabia's Motion for Protective Order Regarding Depositions of Current and Former Saudi Officials, filed under seal February 21, 2020; and "Jan. 3 Order" refers to the sealed January 3, 2020 Opinion & Order on Plaintiffs' August 5, 2019 motion to vacate the November 29, 2018 Order; "KSA 1st MTC Opp. Add." refers to the Addendum to Saudi Arabia's opposition to Plaintiffs' November 30, 2018 motion to compel, filed under seal December 21, 2018; "KSA 2d MTC Opp. Add." refers to the Addendum to Saudi Arabia's opposition to Plaintiffs' January 22, 2020 motion to compel, filed under seal February 5, 2020; "KSA May 7, 2020 Ltr. Add." refers to the Addendum to Saudi Arabia's sealed May 7, 2020 letter to Judge Netburn; and "KSA Nov. 16, 2020 Ltr. Add." refers to the Addendum to Saudi Arabia's sealed November 16, 2020 letter to Judge Netburn.

That same day, Judge Netburn ruled that Plaintiffs are "entitled to 25 depositions of individuals under [Saudi Arabia's] control and 15 nonparty witnesses."  ECF No. 5777, at 39:5-7.  She directed Saudi Arabia to respond to Plaintiffs' list of purported party deponents by notifying Plaintiffs "as to each witness whether or not they will be produced for a deposition," *id.* at 34:23-25; directed the parties to file "a proposed deposition protocol and letter briefs on [any] outstanding issues," *id.* at 47:8-9; and declined "to set a close date for the depositions," but informed the parties that she envisioned "about 30 days to get up and running," "60 days to take . . . depositions," and "30 days to . . . clean up and wind down," equating to a total period of four months.  ECF No. 5777, at 40:2-10.

On February 3, 2020, Saudi Arabia informed Plaintiffs which of the current or former Saudi government employees whom Plaintiffs had identified as potential deponents were available for deposition.  *See* KSA 2d Prot. Order Motion, Ex. 1.  On February 21, 2020, Saudi Arabia sought a protective order as to the remaining witnesses on Plaintiffs' deposition list.  *See* KSA 2d Prot. Order Motion.  Also on February 21, 2020, the parties jointly submitted a proposed deposition protocol, and each party submitted a letter-brief on deposition-related disputes.  *See* ECF Nos. 6002-6004.  Judge Netburn originally set a follow-up hearing for March 23, 2020, but postponed it in light of restrictions on travel and gatherings during the early stages of the COVID-19 pandemic.  *See* ECF No. 6084.

During a telephone hearing on April 17, 2020, Judge Netburn made clear that "[s]ome of the depositions . . . are going to have to go forward by remote means" and urged Plaintiffs to "start thinking about those types of depositions."  ECF No. 6158, at 13:6-8.  On May 11, 2020, Judge Netburn resolved the outstanding deposition protocol issues.  ECF No. 6204.  Although "declin[ing] to set a firm deadline for the completion of all fact depositions in light of the current

public health crisis," she ruled that "[d]epositions pertaining to the authentication of documents produced by non-parties should proceed immediately via videoconference." *Id.* at 1.  And, at a subsequent hearing on May 21, 2020, Judge Netburn made clear that the parties "should be creative" and should be conducting depositions "now with remote means."  ECF No. 6274, at 146:9-17.  Judge Netburn also emphasized at the May 21 hearing that she "want[s] to move this case forward" and that, although she had not yet set a deposition deadline, it was "high on [her] list of things to accomplish."  *Id.* at 146:6-7, 18-20.

On August 27, 2020, Judge Netburn resolved Saudi Arabia's motion for a protective order.  ECF No. 6408 (filed under seal).  She also directed the parties to present proposals regarding deposition "sequencing and logistics."  *Id.* at 40.  At the same time, Judge Netburn "reiterate[d] [her] expectation that the parties move forward immediately with non-party and document authentication depositions."  *Id.*

The parties submitted their proposals to Judge Netburn on September 22, 2020.  *See* ECF Nos. 6465-6466; *see also* ECF Nos. 6469-6470.  Saudi Arabia proposed that Judge Netburn set a fact deposition deadline of December 18, 2020 – two months to take depositions and one month to wind down, consistent with Judge Netburn's guidance on January 13, 2020.  *See* ECF No. 6465, at 3.  Saudi Arabia further proposed that, in light of the ongoing global public health crisis, all fact depositions should proceed by remote means.  *Id.*  Plaintiffs proposed that Judge Netburn set no deposition deadline at all and that all fact depositions proceed in person in the United States or other locations outside Saudi Arabia, taking no account of the significant health risks posed to witnesses, counsel, court reporters, videographers, and other support staff by extensive travel during the COVID-19 pandemic.  *See* ECF No. 6466, at 2-3.

Despite Judge Netburn's repeated admonitions that non-party depositions should proceed "immediately" by remote means, Plaintiffs did not notice any new non-party depositions in 2020.[2]  On December 1, 2020, Judge Netburn set a fact deposition deadline of June 30, 2021, and ordered that all depositions proceed remotely via videoconference, with the opportunity for Plaintiffs to seek leave to conduct in-person depositions in witnesses' countries of residence in the event the public health situation improves.  *See* ECF No. 6546, at 10.  Because fact discovery has been ongoing for nearly three years, and because Plaintiffs have demonstrated their unwillingness to move this case forward, Judge Netburn made clear that "[t]he Court will not extend the fact witness deposition deadline."  *Id*.

## ARGUMENT

### I.    Judge Netburn Reasonably Established a Deadline for the Conclusion of Fact Depositions

In her December 1 Order, Judge Netburn gave full consideration to Plaintiffs' proposal not to set any fact deposition deadline, but concluded that "further delay is no longer appropriate."  ECF No. 6546, at 9-10.  She ordered the parties to "complete all depositions by June 30, 2021," and informed the parties that "[t]his deadline will not be adjourned."  *Id.* at 10.[3] In so doing, Judge Netburn acted well within her considerable discretion.

A magistrate judge has "broad authority to control discovery" in "complex multi-party litigation" by using a variety of measures to ensure "orderly and reasonable discovery," including "time limits, schedules for discovery, and limitations on deposition discovery."

---

[2] In May 2019, Plaintiffs obtained a Letter Request from Judge Netburn to take the testimony of non-party Mohdar Abdullah in Sweden.  *See* ECF No. 4560.

[3] Judge Netburn further clarified that she will "not extend or stay this deadline in response to" an application from Plaintiffs to conduct an in-person deposition in a witness's country of residence.  ECF No. 6546, at 10.

*B.F. Goodrich v. Betkoski*, 99 F.3d 505, 523 (1996), *clarified on other grounds on denial of reh'g*, 112 F.3d 88 (2d Cir. 1997) (per curiam), *and overruled on other grounds by New York v. National Servs. Indus., Inc.*, 352 F.3d 682, 685 (2d Cir. 2003).  When Judge Netburn exercised that "broad authority" here, she had ample grounds to conclude that "orderly and reasonable discovery" would not occur without "time limits."  Although written discovery had been closed for more than 10 months, *see* ECF No. 5777, at 43:10-11, Plaintiffs had been unwilling to move deposition discovery forward at all, notwithstanding clear, repeated instructions from Judge Netburn on May 11, May 21, and August 27, 2020, that she expected depositions to begin. *See* ECF No. 6204, at 1; ECF No. 6274, at 146:9-17; ECF No. 6408, at 40.

Nor does Plaintiffs' objection (at 1) to the deadline's "inflexib[ility]" show Judge Netburn abused her discretion.  It is well-established that "all deadlines are 'final' unless and until the Court grants an extension," and "[a]ny assumption to the contrary [i]s unreasonable." *Peterson v. Home Depot U.S.A., Inc.*, 2014 WL 1355622, at *4 (S.D.N.Y. Apr. 4, 2014).  By informing the parties well in advance that June 30, 2021, is a firm deadline to which they will be held, Judge Netburn simply underscored the obvious:  "Court-imposed deadlines matter." *Frydman*, 2017 WL 1155919, at *2.[4]  Otherwise, a deadline would not "impose valuable discipline on attorneys, forcing them to be selective and helping to move the case expeditiously." Fed. Judicial Ctr., *Manual for Complex Litigation (Fourth)* § 11.422, at 54 (2004).  Judge Netburn's deadline has already moved this case forward.  Since December 1, Plaintiffs have noticed two new depositions for January 2021 – two more than they took in all of 2020.

---

[4] The Court should disregard Plaintiffs' complaint (at 2 n.1) that the deadline for Plaintiffs to submit expert reports is tied to the completion of fact discovery.  Judge Netburn made that ruling more than six months ago, *see* ECF No. 6204 (May 11, 2020), and any objection to it is well outside the time for objections under Rule 72.  *See* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in [a non-dispositive] order not timely objected to.").

Plaintiffs lack any basis to suggest (at 2) that Saudi Arabia may be "less flexible and cooperative[] in the hopes of using the clock as a sword." Saudi Arabia has gone to great lengths to be cooperative and flexible throughout this protracted discovery process, making extraordinary efforts to find and produce 20-plus-year-old documents and information, including from sensitive diplomatic missions and consular facilities that are protected by the Vienna Conventions from compelled discovery.[5] Moreover, since at least January 2019, Saudi Arabia has consistently pushed for deposition discovery to move forward. *See* ECF No. 4390, at 1, 2 (requesting a scheduling order to resolve disputes "concerning the number and identities of deponents" so that "depositions . . . can begin soon" after Saudi Arabia's supplemental document production).[6] And for each of the two depositions noticed by Plaintiffs since the December 1 Order, Saudi Arabia has promptly confirmed the witness's availability on Plaintiffs' requested date. If anyone has been inflexible and uncooperative, it has been Plaintiffs, who have repeatedly refused even to begin the process of setting dates until faced with a firm deadline. In any event, the question before the Court is only whether Judge Netburn abused her discretion by setting a deadline – and Plaintiffs' mere speculation about future disputes falls well short of establishing that.

---

[5] *See* KSA 1st MTC Opp. Add. (describing the searches and investigations undertaken by Saudi Arabia from April 24, 2018, to December 21, 2018, to respond to Plaintiffs' discovery requests); KSA 2d MTC Opp. Add. (same for searches and investigations from December 22, 2018, to October 4, 2019); KSA May 7, 2020 Ltr. Add. (same for searches and investigations from November 25, 2019, to April 6, 2020); KSA Nov. 16, 2020 Ltr. Add. (same for searches and investigations from June 23, 2020, to November 16, 2020).

[6] *See also*, *e.g.*, ECF No. 4456, at 53:4-7 (Saudi Arabia informing Judge Netburn that it "want[s] to get to depositions"); ECF No. 6398, at 1 (Saudi Arabia moving for a scheduling order to govern fact depositions, because "Plaintiffs have repeatedly indicated their desire to put depositions off" and "it is clear that [Plaintiffs] will not begin taking depositions in earnest unless the Court sets a deadline for completion"); ECF No. 6465, at 3 (Saudi Arabia requesting a firm deadline for fact depositions, because, "[w]ithout a firm deadline, Plaintiffs will never complete depositions (much less schedule them in earnest)").

Similarly, Plaintiffs' conjecture (at 2-4) that they may be unable to depose some non-party witnesses within the allotted time period does not render that period unreasonable or outside Judge Netburn's discretion.  As set forth above, Judge Netburn repeatedly directed Plaintiffs to begin taking non-party depositions as early as May 2020.  By the end of June 2021, Plaintiffs will have had more than a year to arrange the depositions they say they need.  Nor do they even suggest some particular future point by which the depositions *could* be completed. Instead, their position appears to be that it would be an abuse of discretion for Judge Netburn to end fact depositions at any time before Plaintiffs are satisfied they have deposed all witnesses they claim are necessary.  They cite no authority for such a rule.  To the contrary, Judge Netburn has reasonably implemented this Court's order that "[l]imited jurisdictional discovery . . . shall proceed promptly and expeditiously."  ECF 3946, at 41.

Plaintiffs also inaccurately accuse Saudi Arabia (at 3) of "not yet compl[ying] with its own witness obligations" concerning non-party Alp Karli.[7]  On August 27, 2020, Judge Netburn ordered Saudi Arabia "to undertake additional steps to determine the identity of Karli's employer and inquire whether Karli will sit for deposition."  ECF No. 6408, at 39.  In response to Judge Netburn's order, Saudi Arabia hired a private investigator who was able to locate Mr. Karli. Mr. Karli confirmed that he has never been an employee of Saudi Arabia.  *See* ECF No. 6533, at 2-3 (filed under seal Nov. 16, 2020).  Although Saudi Arabia does not have any obligation to make available a non-party who is not and never was an employee of its government – and does

---

[7] Further, Plaintiffs accuse Saudi Arabia (at 3 n.5) of refusing to provide information on non-party Sharif Batikhi.  Judge Netburn rejected Plaintiffs' request to permit document discovery as to Batikhi.  *See* Jan. 3 Order 12.  In any event, Plaintiffs themselves have represented that any dispute between the parties over Batikhi "should not prevent moving forward with the deposition of Batikhi, who Plaintiffs believe is a current resident of California." ECF No. 6466, at 3 n.2.

not read Judge Netburn's order to impose one – Saudi Arabia has further inquired whether

Mr. Karli will testify voluntarily.  Mr. Karli is in the process of consulting counsel regarding that

inquiry.  If he agrees, there will be ample time before June for his deposition to go forward.

Plaintiffs also point (at 4-5) to their ongoing dispute with the FBI, as well as to the more

than 10 pending Rule 72 objections they have filed in response to Judge Netburn's prior

discovery rulings.  Judge Netburn made clear at the outset of jurisdictional discovery that

third-party discovery, including discovery from the FBI, will not "hold up the [K]ingdom's

right to file a new motion to dismiss once a reasonable period of discovery has concluded."

ECF No. 3964, at 23:15-17.  By June 30, 2021, jurisdictional discovery will have been ongoing

for 39 months, which is more than a "reasonable period" to complete the limited, narrow, and

circumspect discovery authorized by the Court's March 28, 2018 Order.  Plaintiffs' practice of

filing Rule 72 objections to every one of Judge Netburn's discovery rulings that deny Plaintiffs'

discovery motions in any respect also cannot be allowed to hold up discovery, especially given

the substantial deference that must be given to those rulings.

Finally, Plaintiffs' complaint (at 5-6) about the health risks posed if Plaintiffs' counsel

assemble in person to conduct jointly depositions is a red herring.  Nothing in Judge Netburn's

order requires Plaintiffs' counsel to assemble together in the same physical location during

remote depositions.  Nor is it necessary for Plaintiffs' counsel to do so.  Counsel in this

multidistrict litigation have considerable experience conducting remote depositions in this case

and others.  Counsel on the same side frequently take depositions remotely without assembling

in the same room and without in-person assistance from support staff.  Indeed, counsel

frequently take and defend depositions either from their offices (with appropriate social-

distancing protocols in place) or from their own homes using the Zoom platform, which the

parties contemplate using in this case.  Moreover, in this MDL proceeding there have already been numerous depositions of Arabic-speaking witnesses that have required translation services. *See* ECF No. 5235, at 2; ECF No. 6274, at 141:22-144:24.  Those depositions have all proceeded efficiently with no issues raised to the Court.

In short, Plaintiffs fail to show that Judge Netburn exceeded her broad authority by setting a firm fact deposition deadline.  Counting from December 1, 2020, that deadline provides seven full months to complete fact depositions – and that is on top of the six-plus months since May 2020, when Judge Netburn first indicated that she would soon set a deadline and directed Plaintiffs to begin conducting depositions.  That is more than enough time to complete depositions in this case.  *See Federal Ins. Co. v. Kingsbury Props., Ltd.*, 1992 WL 380980, at *2 (S.D.N.Y. Dec. 7, 1992) (refusing to disturb the discovery schedule adopted by the magistrate judge, in part because "the parties had ample time to complete discovery").

## II.     Judge Netburn Reasonably Determined That Depositions Must Proceed by Remote Means or, with Leave of Court, in a Witness's Country of Residence

In addition to setting a fact deposition deadline of June 30, 2021, Judge Netburn directed the parties to conduct all fact depositions remotely via videoconference.  ECF No. 6546, at 10. Judge Netburn first determined that she would not order "current or former government employees who reside outside the U.S. to travel to be deposed," given "comity" and "the special solicitude owed [to foreign sovereigns] regarding discovery," particularly "[i]n light of the serious health risks posed by COVID-19."  *Id.* at 3.  She then explained that, "[s]ince the beginning of the pandemic, courts have considered the serious health risk posed by the coronavirus and concluded that remote depositions do not cause undue hardship and can be conducted with relative ease given current technology."  *Id.* at 4 (citing *Joffe v. King & Spalding LLP*, 2020 WL 3453452 (S.D.N.Y. June 24, 2020), as one example).  Judge Netburn went on to

address Plaintiffs' myriad arguments against remote depositions and concluded that those

arguments "do not overcome the substantial weight [she] assign[ed] to the health risk implicated

to lawyers, witnesses, deposition staff, and all of their families, by ordering people to travel and

gather." *Id.* at 5-9 (addressing each of Plaintiffs' arguments). She further allowed that, "[t]o the

extent the public health situation changes, Plaintiffs may timely seek leave" to depose a witness

in person "in the witness's country of residence." *Id.* at 10.

Again, Judge Netburn acted well within her discretion in ordering the parties to conduct

depositions remotely via videoconference. Federal Rule of Civil Procedure 30(b)(4) provides

that a court may "order" that depositions "be taken by telephone or other remote means." In

exercising her authority to "order" depositions by "remote means," Judge Netburn considered the

parties' extensive briefing laying out "'claims of prejudice'" and "'hardship,'" and "'conduct[ed]

a careful weighing of the relevant facts.'" *Rouviere v. DePuy Orthopaedics, Inc.*, 471 F. Supp.

3d 571, 574 (S.D.N.Y. 2020) (quoting *RP Family, Inc. v. Commonwealth Land Title Ins. Co.*,

2011 WL 6020154, at *3 (E.D.N.Y. Nov. 30, 2011)); *see American Broad. Cos. v. Aereo, Inc.*,

2013 WL 12328764, at *4 (S.D.N.Y. Oct. 17, 2013) (upholding a magistrate judge's discovery

orders that were "the product of extensive briefing by and lengthy discovery conferences with

the parties" and that "reflect consideration of the arguments made by the parties and judgments

made in situations where the need to strike a balance . . . was clear and present").

Plaintiffs' complaints (at 6-9) that Saudi Arabia is not a proper forum for in-person

depositions overlook the fact that the December 1 Order does not permit any in-person

depositions, in Saudi Arabia or elsewhere. Instead, that ruling merely permits Plaintiffs to

"timely seek leave" to conduct in-person depositions "in the witness's country of residence,"

assuming that "the public health situation changes." ECF No. 6546, at 10. To be clear,

Plaintiffs' concerns about traveling to Saudi Arabia are all baseless.  But they are also speculative, because Judge Netburn's order requires all depositions to be conducted remotely and there is no assurance that in-person travel will be safe by June.

Regardless, none of Plaintiffs' complaints comes anywhere near demonstrating that Judge Netburn clearly erred, acted contrary to law, or abused her discretion in concluding that, to the extent she permits any in-person depositions, those depositions must proceed "in the witness's country of residence."  *Id.*  Plaintiffs falsely state (at 6-7) that Judge Netburn "*sua sponte*" and "suddenly reverse[d]" earlier rulings that "unequivocally decided . . . that in-person depositions should not proceed in Saudi Arabia."  Judge Netburn's ruling was not *sua sponte* because Saudi Arabia specifically argued to her in its September 22, 2020 submission on deposition logistics that "[t]here is no basis to require" current and former government employees based overseas to travel outside their country of residence to sit for a deposition, "even absent the current pandemic."  ECF No. 6465, at 4.  That argument was, moreover, consistent with Judge Netburn's previous recognition that the depositions of "current or former employees of a sovereign nation" implicate unique "interests" concerning appropriate deposition locations.  ECF No. 5777, at 38:5-9.[8]

---

[8] Plaintiffs mischaracterize Judge Netburn's May 11, 2020 order, which stated that, "[s]ubject to public health concerns, the location of depositions should be governed by the 'Presumptively Acceptable Locations' provision from the MDL Deposition Protocol" and that "Saudi Arabia may make an application to conduct the depositions of current high-ranking officials who serve at the apex of a government agency at a different location."  ECF No. 6204, at 2.  That order expressly recognized that deposition locations might change depending on "public health concerns," the primary motive for the December 1 ruling, and for "current high-ranking officials."  In addition, the May 11 ruling did not address the problem of former employees, a number of whom have agreed to testify voluntarily but whom the Court lacks authority to compel to leave their country of residence for that purpose.

But, even to the extent Judge Netburn's order reflects some change in approach, she had full discretion to make that change. Orders "governing discovery" are "interlocutory orders," *Housing Works, Inc. v. City of New York*, 203 F.3d 176, 178 (2d Cir. 2000) (per curiam), that "remain subject to modification or adjustment prior to the entry of a final judgment adjudicating the claims to which they pertain," *Grace v. Rosenstock*, 228 F.3d 40, 51 (2d Cir. 2000). A court "possesses the inherent authority to *sua sponte* reconsider its own interlocutory orders before they become final." *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail Rigging, LLC*, 2015 WL 545565, at *2 (S.D.N.Y. Feb. 9, 2015). Plaintiffs can hardly contend that Judge Netburn had finally ruled on the location of depositions that had not yet begun – and that Plaintiffs themselves argued vehemently should not begin until well into the future.

Plaintiffs' attack (at 8) on Judge Netburn's reliance on principles of comity is also misplaced. The Supreme Court has "long recognized the demands of comity in suits involving foreign states." *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987) (citing *Hilton v. Guyot*, 159 U.S. 113 (1895)); *see also id.* at 543 n.27 (noting the reference to "the doctrine of comity among nations" in *Emory v. Grenough*, 3 U.S. (3 Dall.) 369 (1798)). In such suits, courts must "take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." *Id.* at 546. In exercising her discretion here, Judge Netburn was entirely correct to show respect for the special problems faced by Saudi Arabia in making witnesses available who are unable or reluctant to travel outside their country of residence, as well as for Saudi Arabia's sovereign interest in mitigating the burdens of depositions on current and former government employees.

Contrary to Plaintiffs' suggestion (at 8), nothing in the Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 852 (2016) (codified in part at 28 U.S.C. § 1605B) ("JASTA"), suggests that comity principles are inapplicable in this case. "Congress legislates against the backdrop of existing law," *McQuiggin v. Perkins*, 569 U.S. 383, 398 n.3 (2013); and courts "assume that, when Congress enacts statutes, it is aware of relevant judicial precedent," *Ryan v. Gonzales*, 568 U.S. 57, 66 (2013). JASTA created a new exception to foreign sovereign immunity and allowed U.S. nationals to assert Anti-Terrorism Act claims against foreign states for conduct within the new exception; it said nothing about how U.S. courts should approach discovery against foreign sovereigns. Had Congress intended to depart from longstanding precedent on that subject, one would have expected "clear direction." *Natural Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 760 F.3d 151, 166 (2d Cir. 2014). JASTA contains none.

Plaintiffs also erroneously contend (at 8) that the voluntary travel of certain current and former government employees "over the past decade," and the pre-pandemic willingness of certain employees to sit voluntarily for depositions outside their countries of residence, negate any "special solicitude" Saudi Arabia is owed. "[P]rinciples of comity require that the burden of litigation imposed on [Saudi Arabia] be held to a minimum." *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 1995 WL 686715, at *9 (Nov. 17, 1995), *clarified on other grounds*, 1995 WL 758767 (S.D.N.Y. Dec. 21, 1995). Mandating that current and former government employees travel internationally to sit for depositions is inconsistent with those principles.[9]

---

[9] Indeed, even if the individuals were not current and foreign employees of a foreign sovereign, there would still be no basis for compelling them to travel outside their countries of residence to sit for depositions. *See, e.g.*, *In re Petition of Boehringer Ingelheim Pharm., Inc. & Boehringer Ingelheim Int'l GmbH, in Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 745 F.3d 216 (7th Cir. 2014) (granting mandamus relief from a district court order requiring a company to produce Germany-based employees, 10 of whom were German citizens, in the United States for deposition); *Dagen v. CFC Grp. Holdings Ltd.*, 2003 WL 21910861 (S.D.N.Y.

Finally, the Court should disregard Plaintiffs' continued, baseless assault (at 8-9) on the integrity and character of Saudi Arabia's current and former employees.[10]  Judge Netburn stated clearly in her order that "[t]here is no evidence that the Saudi witnesses will lie under oath." ECF No. 6546, at 5.  That ruling was correct.  It was neither professional nor appropriate for Plaintiffs to ask Judge Netburn to presume that Saudi Arabia's witnesses, many of whom they have never seen or met, would lie under oath.  It is equally unprofessional and inappropriate for Plaintiffs to repeat that request to this Court.  Their choice to do so says less about the witnesses' character than about Plaintiffs' own uncomfortable awareness that extensive document discovery has produced no evidence to support their allegations, and truthful witness testimony can be expected to gut them further.

After nearly three years of jurisdictional discovery, there is not a shred of evidence supporting Plaintiffs' allegation in this case that any senior Saudi official instructed Fahad Al Thumairy or Omar Al Bayoumi to assist any of the 9/11 hijackers – a result consistent with the final determinations of the FBI, the CIA, the 9/11 Commission, and the 9/11 Review Commission.  *See* 9/11 Commission Report (ECF Nos. 975-1, 975-2) at 171-72, 217-19; 2005 FBI-CIA Summary (ECF No. 3669-06) at 2; 9/11 Review Report (ECF No. 3669-07) at 101-03.[11]

---

Aug. 11, 2003) (granting a motion for a protective order designating Hong Kong as the location for a witness's deposition, where the witness resided and worked).

[10] Plaintiffs also criticize (at 9 n.14) counsel for Saudi Arabia for filing a motion to compel – two years ago – in advance of depositions of two officers of the foundation operating the King Fahad Mosque ("Mosque").  As the record reflects, that motion was a reasonable response to Plaintiffs' unreasonable refusal to produce to Saudi Arabia non-party discovery obtained from the Mosque in advance of the then-upcoming depositions.  *See* ECF No. 4572. Once Plaintiffs did so – as they were plainly bound to do – the depositions proceeded as scheduled.

[11] The Court should likewise disregard Plaintiffs' inflammatory references (at 9) to the Saudi government's purported involvement in a "string of criminal acts," which have nothing at all to do with the setting of a discovery deadline or the taking of depositions in this case.

Depositions should proceed as Judge Netburn has ordered, so that the lack of evidence supporting

Plaintiffs' allegations can be presented to the Court and made clear to the world.

## CONCLUSION

Plaintiffs' Rule 72 objections should be overruled.

Dated:  January 5, 2021                          Respectfully submitted,


                                                 /s/ *Michael K. Kellogg*
                                                 _____
                                                 Michael K. Kellogg
                                                 Mark C. Hansen
                                                 Gregory G. Rapawy
                                                 Andrew C. Shen
                                                 Christopher M. Young
                                                 KELLOGG, HANSEN, TODD, FIGEL
                                                   & FREDERICK, P.L.L.C.
                                                 Sumner Square
                                                 1615 M Street, N.W., Suite 400
                                                 Washington, D.C. 20036-3209
                                                 (202) 326-7900
                                                 (202) 326-7999 (fax)

                                                 *Attorneys for the Kingdom of Saudi Arabia*

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 5, 2021, I caused a copy of the foregoing Opposition to Plaintiffs' Rule 72 Objections to the December 1, 2020 Opinion & Order filed by the Kingdom of Saudi Arabia to be served electronically pursuant to the Court's ECF system.

/s/ *Michael K. Kellogg*

Michael K. Kellogg
*Attorney for the Kingdom of Saudi Arabia*