UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

03-MDL-01570 (GBD)(SN)

**OPINION & ORDER**

-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/22/2019

**SARAH NETBURN, United States Magistrate Judge:**

On October 10, 2018, the Plaintiffs' Executive Committees ("PECs" or "Plaintiffs") served their first set of supplemental document requests (the "Requests") on the Kingdom of Saudi Arabia ("Saudi Arabia"). On November 29, the Court ordered document discovery regarding three individuals identified in the Requests: Musaed Al Jarrah, Smail Mana, and Mohamed Al Muhanna. ECF No. 4261. Saudi Arabia moves for a protective order limiting the scope of discovery for these individuals. ECF No. 4283 ("Def's Br."). For the reasons that follow, Saudi Arabia's motion is GRANTED in part and DENIED in part.[1]

**LEGAL STANDARD**[2]

The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, provides "the sole basis for obtaining jurisdiction over a foreign state in federal court." Chettri v. Nepal Rastra Bank, 834 F.3d 50, 55 (2d Cir. 2016) (quoting Argentine Republic v. Amerada Hess Shipping

---

[1] This Opinion & Order has been filed under seal in its entirety. The Court has directed the parties to provide proposed redactions consistent with the FBI Protective Order and the Court's recent decision granting in part Saudi Arabia's motion to seal. The Court will issue a redacted version on the public docket once that process is complete.
[2] In resolving Plaintiffs' motion to compel Saudi Arabia to produce documents and answer interrogatories, the Court outlined the appropriate legal standard for jurisdictional discovery against a foreign sovereign under the Foreign Sovereign Immunities Act and the Justice Against State Sponsors of Terrorism Act. The Court summarizes that standard here.

Corp., 488 U.S. 428, 439 (1989)). The FSIA seeks to "protect foreign sovereigns from the burdens of litigation, including the cost and aggravation of discovery." Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic, No. 10 CV-5256 (KMW), 2011 WL 4111504, at *3 (S.D.N.Y. Sept. 13, 2011). As a result, before the plaintiff has established jurisdiction, a district court "must be circumspect in allowing discovery." Arch Trading Corp. v. Republic of Ecuador, 839 F.3d 193, 206 (2d Cir. 2016) (quoting EM Ltd, 695 F.3d at 210). Were that not the case, the discovery obligations imposed on a foreign state would frustrate the FSIA's presumption of immunity. See Compania del Bajo Caroni (Caromin) v. Bolivarian Republic of Venezuela, 556 F. Supp. 2d 272, 282 (S.D.N.Y. 2008) (citing El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996)).

The FSIA therefore requires a "delicate balancing" in managing jurisdictional discovery. First City, Texas-Houston, N.A. v. Rafidain Bank, 150 F.3d 172, 176 (2d Cir. 1998). While the Court must permit the discovery necessary to determine whether immunity applies, it must also protect a sovereign's legitimate claim to immunity. Id. In maintaining this balance, the Court should exercise "special vigilance" to protect foreign states from the dangers of unnecessary discovery. Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court, 482 U.S. 522, 546 (1987). Accordingly, even where jurisdictional discovery is warranted, it should be "ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination." First City, 150 F.3d at 176; Glencore Denrees Paris v. Dep't of Nat'l Store Branch 1, No. 99-CV-8607 (RJS), 2008 WL 4298609, at *6 (S.D.N.Y. Sept. 19, 2008).

In this case, Plaintiffs have already established a "reasonable basis" for the Court to assume jurisdiction over Saudi Arabia. ECF No. 3946, Memorandum Decision and Order ("March 28 Order"), at 4. This lessens the concern, at least to an extent, that the Court will

impose discovery obligations on a potentially immune defendant. Moreover, Congress has expressed a strong interest in granting federal courts jurisdiction when a foreign state commits a tortious act in connection with an act of terrorism within the United States. See JASTA, § 2(b), Pub. L. No. 114-222, 130 Stat. 852, 853 ("The purpose of this Act is to provide civil litigants with *the broadest possible basis* . . . to seek relief against . . . foreign countries . . . that have provided material support . . . to persons that engage in terrorist activities against the United States.") (emphasis added). While these concerns do not negate the Court's obligation to conduct limited discovery, they emphasize that Plaintiffs must be given the discovery necessary to determine if JASTA applies. See Société Nationale, 482 U.S. at 544 n.28.

## DISCUSSION

I. **Locations to be Searched**

   A. **Musaed Al Jarrah**

Saudi Arabia states that Jarrah was an employee of the Ministry of Education ("MOE") and that he worked in the Islamic Affairs office of the Saudi Embassy in Washington, D.C. (the "Embassy"). Saudi Arabia further indicates that Jarrah worked for a period of time in Los Angeles, California. Based on this information, Saudi Arabia proposes searching, depending on the request, the MOE, the Embassy, and the Saudi Consulate in Los Angeles (the "Consulate"). Def's Br., at 2. The Court finds that this proposal is reasonable.

Insisting that the "Islamic Affairs Department" is part of the Ministry of Foreign Affairs ("MOFA"), Plaintiffs contend that Saudi Arabia must also search that agency. Pl's Br., at 2. This position is contradicted by the available evidence. Documents — cited by Plaintiffs in their initial motion for supplemental discovery — indicate that Jarrah's position at the Embassy was

affiliated with the Ministry of *Islamic Affairs* ("MOIA"). Pounian Reply Decl., Exhibit 76, at 1.[3] Given that Saudi Arabia has agreed to search the MOE, which employed Jarrah, as well as the Embassy and Consulate, where Jarrah worked, searches of the MOFA (or the MOIA) are unnecessary.

In addition, Plaintiffs contend that Saudi Arabia must search the Imam Mohammed Bin Saud University (the "University"). Pl's Br., at 2. This position is more reasonable. Saudi Arabia previously represented that Jarrah was a University employee during the relevant period, and a document produced in discovery states ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓ Pounian Reply Decl., Exhibit 74, at 1249. Saudi Arabia contacted the University after Plaintiffs' opposition was filed — although the University is "considered a public institution and is supervised by the [MOE]," it is also "academically, administratively, and financially independent" from Saudi Arabia. Nevertheless, the University has agreed to voluntarily provide documents contained in any personnel file it has on Jarrah. Def's Reply Br., at 2.

Given the limited evidence in the record — and given that Plaintiffs have not had an opportunity to reconsider their position following Saudi Arabia's reply — the Court will not rule on whether Saudi Arabia has custody and control over documents in the University's possession. Saudi Arabia is directed to produce any documents voluntarily provided by the University, including any personnel file. As discussed below, Saudi Arabia will perform extensive searches for documents concerning Jarrah in the Consulate, the Embassy, and the MOE. The Court does not anticipate that any further relief is warranted.

---

[3] Citations to "Pounian Decl" or "Pounian Reply Decl." refer to declarations filed under seal as part of Plaintiffs' related motion to compel.

4

### B. Smail Mana

Mana was a locally hired, non-senior employee in the Los Angeles Consulate. Def's Br., at 2. The majority of Mana's assignments focused on ███████████████████████ ███████████████████████████. Pounian Decl., Exhibit 17, ████ Saudi Arabia agreed to search the Consulate, the Embassy, and the MOIA for responsive documents. Def's Br., at 2. In its reply, Saudi Arabia further agreed to conduct a targeted search for Mana's personnel file (and only his personnel file) in the MOFA. Def's Reply Br., at 3. While this proposal is mostly reasonable, the inclusion of the MOIA is somewhat perplexing. At oral argument, Saudi Arabia stated that "there is no basis to believe that [Mana] was employed by the [MOIA]." ECF No. 4456, at 66. Saudi Arabia makes similar assertions in its briefing, Def's Br., at 2, and the Court can find no evidence connecting Mana to the MOIA.

Nevertheless, given Saudi Arabia's offer to search the MOIA, the Court will not preclude searches of that agency. In addition, as Plaintiffs point out, because Mana was a *Consular* employee, it seems likely that he was in fact supervised by the MOFA. Accordingly, depending on the request, Saudi Arabia must search the Consulate, the Embassy, the MOIA, and/or the MOFA.

### C. Mohamed Al Muhanna

Muhanna was a MOIA employee working in Los Angeles, California. Def's Br., at 2. In its motion, Saudi Arabia proposes searching the Consulate, the Embassy, and the MOIA. Def's Br., at 2. These locations are reasonable places to search for responsive documents, and Plaintiffs do not respond to Saudi Arabia's proposal in their opposition. Accordingly, depending on the request, Saudi Arabia must search the Consulate, the Embassy, and/or the MOIA.

**II.     Relevant Timeframe**

The Requests provide a date range from January 1, 1998, until September 11, 2001. For Muhanna, however, Plaintiffs contend that Saudi Arabia should expand its search until 2003. Pl's Br., at 3. To support their argument, Plaintiffs emphasize a June 2003 meeting between two MOIA employees. Id. That meeting was convened to study the "problems" of some of the propagators in the United States and Great Britain. Pounian Decl., Exhibit 40, at 556–57. Those problems included, among other things, communicating in good faith with "suspicious persons in the name of [the propagators'] official work." Id. at 557. The employees provided specific recommendations for delegates in America and Britain. Id. at 558–60. Referencing Thumairy by name, the employees noted his recent "arrest and return to Saudi Arabia" and concluded that his deployment should be terminated because "his return to America is not possible now." Id at 558.

In resolving Plaintiffs' related motion to compel, the Court found that the 2003 meeting was relevant because it involved Saudi Arabia's review and potential ratification of Thumairy's work. A similar conclusion is required for Muhanna. Although he is not referenced by name, other evidence suggests that ████████████████████████████ for example, ████████████████████████████████████████████████ ████████████████████████████ Pounian Decl., Exhibit 41, at 6868. █ ████████████████████████████████████ ████████████████ Id. This evidence suggests that █████ ████████████████████████████████████ ████ Accordingly, Saudi Arabia is directed to search for and produce documents regarding any review of Muhanna's work conducted by the 2003 Committee. Saudi Arabia should search for responsive documents until December 31, 2003.

6

No further relief is warranted. To the extent Plaintiffs wish to amend their request to include documents through December 31, 2002, they may do so pursuant to the Court's May 24, 2018 Order. See ECF No. 4009.

### III.    Objections to Specific Requests

Saudi Arabia proposes to search specific locations for each of Plaintiffs' document demands. Def's Br., Exhibit B, 4–8. In some instances, despite offering to search the MOIA for Muhanna and Mana, Saudi Arabia refuses to search the MOE for Jarrah. The Court does not see a basis — and Saudi Arabia does not offer one — for why Muhanna's employing Ministry would have responsive documents, but Jarrah's would not. For this reason, where Saudi Arabia has proposed to search the MOIA for Muhanna and Mana, the Court will also require Saudi Arabia to search the MOE for Jarrah. See Requests 1(b), 1(e)–(i).

#### A.    Duties and Responsibilities

Plaintiffs seek documents concerning each individual's "hiring[,] . . . job title(s), duties, responsibilities, functions, authorities, and any secondments." Request 1(a). To respond to this request, Saudi Arabia proposes searching for each of the individual's personnel files. Def's Br., at 3. This response is insufficient. Saudi Arabia must make reasonable efforts to locate and produce all responsive documents. It may be that, because of the way in which documents are stored, reasonable efforts require Saudi Arabia to search only for personnel files. But the Court will not make that determination at the outset without any knowledge of Saudi Arabia's filing system.

For Jarrah, Saudi Arabia should search the Consulate, the Embassy, and the MOE; for Mana, Saudi Arabia should search the Consulate, the Embassy, the MOIA, and the MOFA; and for Muhanna, Saudi Arabia should search the Consulate, the Embassy, and the MOIA.

### B. Payments from the Saudi Government

Plaintiffs seek documents concerning each individual's payments from the Saudi government. Requests 1(b). For Jarrah, Saudi Arabia should search the Consulate, the Embassy, and the MOE; for Mana, Saudi Arabia should search the Consulate, the Embassy, the MOIA, and the MOFA; and for Muhanna, Saudi Arabia should search the Consulate, the Embassy, and the MOIA.

### C. Diplomatic Status

Plaintiffs ask for records of each individual's "diplomatic status and/or credentials in the United States." Requests 1(c). As part of their request, Plaintiffs argue that Saudi Arabia must search the MOFA for responsive documents. Pl's Br., at 3. The Court disagrees. The Consulate and the Embassy — the two Saudi diplomatic missions in the United States — are the logical locations to search for documents concerning a Saudi national's diplomatic status while a U.S. resident. Indeed, Saudi Arabia's document production ▮▮▮▮ suggests that ▮▮▮▮ ▮▮▮▮ See, e.g., Pounian Decl., Exhibit 10.

Accordingly, for all three individuals, Saudi Arabia should search the Consulate and the Embassy for responsive documents.[4] This conclusion is consistent with the Court's obligation to order jurisdictional discovery circumspectly. See Aurelius Capital Master, LTD. v. Republic of Argentina, 589 F. App'x 16, 18 (2d Cir. Dec. 23, 2014) ("[W]e urge the district court to . . . prioritize discovery of those documents that are unlikely to prove invasive of sovereign dignity.").

---

[4] As noted below, Mana is not a Saudi Arabia national. It is possible, therefore, that Saudi Arabia does not possess records concerning his diplomatic or immigration status beyond any such documents that may have been kept in connection with his employment at the Consulate. See infra, Part III.F.

### D. Residences within California

Next, Plaintiffs ask for documents concerning "each location . . . within the State of California" where each individual "resided or stayed." Requests 1(d). Saudi Arabia proposes to search the Embassy and the Consulate for responsive documents, but not any Ministries in Saudi Arabia. Def's Br., at 3. This proposal is reasonable. Saudi Arabia's employees in the United States are paid salaries and reimbursed for travel expenses through the Embassy. As a result, the Embassy is the logical place to look for documents showing an individual's home address or temporary stay. Indeed, Saudi Arabia previously produced ▮▮▮▮▮ from the Embassy showing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Def's Br., at 4; Pounian Decl., Exhibit 8, at 9.

Accordingly, for each individual, Saudi Arabia should search the Consulate and the Embassy for responsive documents. However, if no responsive documents are located, Saudi Arabia should perform a targeted search of the relevant Saudi Ministries.

### E. Tasks and Activities within California

Plaintiffs request documents concerning each individual's "assignment to, tasks, and activities within the State of California." Requests 1(e). To respond to this request, Saudi Arabia proposes searching for documents only insofar as those assignments, tasks, or activities relate to Thumairy and Bayoumi. Def's Br., at 4. This response is insufficient. In authorizing discovery into Jarrah, Mana, and Muhanna, the Court determined that these individuals are relevant to the Court's limited jurisdictional inquiry. Plaintiffs are therefore entitled to discovery regarding their activities in California during the relevant timeframe. Moreover, under Saudi Arabia's approach, potentially responsive documents may not be produced. There may be evidence, for example, that Mana or Muhanna assisted the hijackers while they were in Los Angeles. Those documents

9

may not "relate" to Thumairy or Bayoumi, but they are certainly relevant to the Court's jurisdictional inquiry. Any concern of imposing an undue burden on Saudi Arabia is tempered by the geographic and temporal limitations identified in Plaintiffs' request.

Accordingly, Saudi Arabia must search for documents concerning each individual's assignments, tasks, and activities within California during the relevant timeframe. For Jarrah, Saudi Arabia should search the Consulate, the Embassy, and the MOE; for Mana, Saudi Arabia should search the Consulate, the Embassy, the MOIA, and the MOFA; and for Muhanna, Saudi Arabia should search the Consulate, the Embassy, and the MOIA.

### F. Passport and Visa Records

Plaintiffs also seek documents regarding each individual's passport and visa records. Requests 1(f). For Jarrah, Saudi Arabia should search the Consulate, the Embassy, and the MOE; and for both Mana and Muhanna, Saudi Arabia should search the Consulate, the Embassy, and the MOIA. Because Mana is not a Saudi national, Saudi Arabia is not required to search the MOFA for responsive documents.

### G. Supervisors and Supervisees

Plaintiffs ask for documents concerning "the name(s), job titles, and responsibilities" of the three individuals' supervisors and supervisees. Requests 1(g)–(h). The Court noted the "potential broad sweep" of these requests in its Order authorizing supplemental discovery. ECF No. 4261, at 2. Saudi Arabia proposes to search for responsive documents only insofar as the relationships involved Thumairy or Bayoumi. In this instance, Saudi Arabia's proposal is reasonable. Unlike Jarrah, Mana, and Muhanna, the Court has not ordered discovery into the relevant supervisors and supervisees. Discovery regarding those individuals is therefore properly

limited to their relationship with Thumairy and Bayoumi. Perhaps recognizing the breadth of their request, Plaintiffs do not directly oppose Saudi Arabia's suggestion. See Pl's Br., at 4.

For Jarrah, Saudi Arabia should search the Consulate, the Embassy, and the MOE; for Mana, Saudi Arabia should search the Consulate, the Embassy, the MOIA, and the MOFA; and for Muhanna, Saudi Arabia should search the Consulate, the Embassy, and the MOIA.

### H. Travel

Plaintiffs request documents regarding each of the individual's travel, including flights, hotels, car rentals, and travel expenses. Requests 1(i). For Jarrah, Saudi Arabia should search the Consulate, the Embassy, and the MOE; for Mana, Saudi Arabia should search the Consulate, the Embassy, the MOIA, and the MOFA; and for Muhanna, Saudi Arabia should search the Consulate, the Embassy, and the MOIA.

### I. Meetings and Contacts

Lastly, Plaintiffs seek documents concerning "any meeting, communication, contact, transaction or relationship" between (a) Jarrah, Mana, and Muhanna; and (b) seven different individuals or categories of individuals. Requests 1(j). Those individuals include: Bayoumi, Thumairy, Sowailem, Abdussattar Shaikh (███████████████████████████████ ███████████████████████, Cayson Bin Don (████████████████████████████ ██████████████████████████████████████████████), any officer or employee at the King Fahad Mosque and/or the Islamic Foundation of Sheikh Ibn Taymiyah, and any of the 9/11 hijackers. Id.; Pounian Decl., Exhibit 17, at 54, 84. Although slightly overbroad, Plaintiffs' document demand is otherwise proper.

Saudi Arabia contends that there is no way to design a reasonable search to respond to Plaintiffs' request. Def's Br., at 5. On this basis, Saudi Arabia proposes to produce responsive

11

documents only insofar as they are located while conducting other searches. Id. This proposal is insufficient. The individuals identified in Plaintiffs' request are plainly relevant to the Court's jurisdictional inquiry. Therefore, to the extent they exist, any contacts between these individuals and Jarrah, Mana, and Muhanna should be produced. Nevertheless, the request for documents regarding "any officer or employee" of the King Fahad Mosque or the Foundation is overbroad, and here, the Court agrees with Saudi Arabia that it is difficult to identify search terms. Accordingly, that portion of Plaintiffs' demand is stricken.

For Jarrah, Saudi Arabia should search the Consulate, the Embassy, and the MOE; for Mana, Saudi Arabia should search the Consulate, the Embassy, the MOIA, and the MOFA; and for Muhanna, Saudi Arabia should search the Consulate, the Embassy, and the MOIA.

**IV.    Plaintiffs' Remaining Requests**

In its opposition, Plaintiffs argue that Saudi Arabia should be required to file an affidavit, from a knowledgeable Saudi official, indicating "whether the Kingdom has reason to believe documents responsive to [P]laintiffs' document request may be located in additional locations." Pl's Br., at 5. These locations include, but are not limited to, the MOFA, the MOIA, the University, the Ministry of the Interior, and the Saudi intelligence agencies. Id. This request is DENIED.

In its reply, Saudi Arabia makes clear that its proposed searches reflect "a reasonable effort on the part of counsel (after conferring closely with Saudi co-counsel and client representatives) to identify where relevant and responsive documents would likely be found, taking into account the Court's mandate for targeted and limited discovery to verify specific facts." Def's Reply Br., at 2. While the Court has broadened Saudi Arabia's proposed searches in

certain instances, it sees no reason to doubt the veracity of defense counsel's representations. No further relief is warranted.

## CONCLUSION

For the foregoing reasons, Saudi Arabia's motion is GRANTED in part and DENIED in part. Within 45 days of this Order, Saudi Arabia is directed to search for and produce the documents identified above. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 4283.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   July 22, 2019
         New York, New York