**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

In re:

      **TERRORIST ATTACKS ON**
      **SEPTEMBER 11, 2001**

-------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:___ 11/25/2019
```

**03-MDL-01570 (GBD)(SN)**

**<u>OPINION & ORDER</u>**

**SARAH NETBURN, United States Magistrate Judge:**

      The Plaintiffs' Executive Committees ("Plaintiffs") move for reconsideration of the

Court's July 22, 2019 Opinion & Orders (the "July 22 Orders") regarding: (1) Plaintiffs' motion

to compel the Kingdom of Saudi Arabia ("Saudi Arabia") to produce documents and answer

interrogatories; and (2) Saudi Arabia's motion to modify the scope of supplemental discovery.[1]

Plaintiffs' motion is GRANTED in part and DENIED in part.

**BACKGROUND**

      On March 28, 2018, the Honorable George B. Daniels concluded that Plaintiffs

articulated a reasonable basis for the Court to assume jurisdiction over Saudi Arabia. ECF No.

3946, at 4–5 (the "March 28 Order"). Judge Daniels permitted Plaintiffs to conduct targeted

jurisdictional discovery regarding two individuals: Fahad al Thumairy and Omar al Bayoumi. <u>Id.</u>

at 23.

      The Court held a conference to determine the scope of that discovery. ECF No. 3968.

Specifically, the Court directed Saudi Arabia to search for documents in five repositories: (1) the

---

[1] This Opinion & Order, as well as the July 22 Orders, have been filed under seal in their entirety. The
Court will issue a redacted version following the resolution of Plaintiffs' Rule 72 objections to the
Court's decision granting in part Saudi Arabia's motion to seal. <u>See</u> ECF No. 4696.

Saudi Consulate in Los Angeles, California (the "Consulate"); (2) the Saudi Embassy in Washington, D.C. (the "Embassy"); (3) the Cultural Mission in Fairfax, Virginia; (4) the Ministry of Islamic Affairs ("MOIA"); and (5) the Presidency of Civil Aviation ("PCA"), and its successor, the General Authority of Civil Aviation ("GACA"). ECF No. 4009.

Saudi Arabia searched these locations and produced responsive documents. Plaintiffs then served their first set of supplemental discovery requests, and on November 29, 2018, the Court ordered document discovery regarding three additional individuals: Musaed al Jarrah, Smail Mana, and Mohamed al Muhanna.[2] ECF No. 4261.

Plaintiffs moved to compel Saudi Arabia to produce documents in response to Saudi Arabia's initial production. ECF No. 4266. In addition, Saudi Arabia filed a motion to limit the scope of the supplemental discovery authorized in the Court's November 29 Order. ECF No. 4283. The Court heard oral argument, and the parties supplemented the record in March, June, and July of 2019.

The Court granted in part both Plaintiffs' motion to compel and Saudi Arabia's motion to narrow the scope of supplemental discovery. The Court assumes the parties' familiarity with the relevant factual background, procedural history, and legal standards.

## LEGAL STANDARD

The standards governing a motion for reconsideration under Local Civil Rule 6.3 are the same as those under Rule 59(e) of the Federal Rules of Civil Procedure. Abrahamson v. Bd. of Educ., 237 F. Supp. 2d 507, 510 (S.D.N.Y. 2002). To prevail on such a motion, the movant must demonstrate "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of

---

[2] Plaintiffs also move to vacate the November 29 Order. The Court will resolve that motion in a separate decision.

2

Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013). The standard for granting a motion for reconsideration is strict. Shrader v. CSX Transp., Inc., 70 F.3d 255, 256–57 (2d Cir. 1995). Accordingly, reconsideration is generally denied unless "the moving party can point to controlling decisions or data that the court overlooked." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (citing Shrader, 70 F.3d at 257). The decision to grant a motion for reconsideration is within the sound discretion of the district court. Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009).

## DISCUSSION

### I.      Documents Concerning Thumairy

#### A.      October 2000 Meeting with the U.S. State Department

On March 22, 2019, Plaintiffs submitted a supplemental letter (the "March 22 Ltr."), attaching an interim document production from the State Department. The documents show that Department officials met with Mohammed al-Salloum, the Consul General in Los Angeles, on October 4, 2000, and wrote to him on the same day. March 22 Ltr, Ex. 1, at 33, 39. The officials sought confirmation that Thumairy was still an administrative officer at the Consulate given his role as an imam at the King Fahad Mosque. Id. at 39. In addition, the officials stated that Thumairy, against Department regulations, obtained a driver's license and registered a vehicle through the State of California. Id. at 38–40.

The March 22 letter also discussed a recent production from Saudi Arabia. This included

███████████████████████████████████████████████████████

████████████████████████. March 22 Ltr., at 3. Relying on this production, the Court ordered Saudi Arabia to search for documents regarding Thumairy. MTC Order, at 12–13, 15–

16.[3] The Court did not, however, construe Plaintiffs' submission as a request for documents regarding the State Department. Plaintiffs contend — and the Court agrees — that this was in error.

Plaintiffs sought a specific order for production of documents related to ████████ ████ See March 22 Ltr., at 4 (arguing that Saudi Arabia should be directed "to fully search for and produce" certain categories of related documents). Plaintiffs did not make a similar request with respect to the State Department production. Nevertheless, they described the documents in detail and asserted the materials "provide yet further evidence that the Kingdom has not produced . . . responsive records." Id. at 2. This was sufficient to notify the Court that Plaintiffs sought further information regarding the October 2000 inquiry. Moreover, the requested documents are plainly relevant, and Saudi Arabia has not produced any responsive records thus far. Additional searches are therefore warranted.

Accordingly, Saudi Arabia is directed to search for and produce any documents regarding the October 2000 inquiry by the Department of State, including any documents reflecting Saudi Arabia's internal deliberations and response to the Department's statements concerning Thumairy.

### B.    Work Responsibilities and Supervision

Plaintiffs submitted documents produced by the Department of Justice to support their motion to compel. See Pounian Decl., Ex. 8.[4] Relying on this evidence, the Court directed Saudi Arabia to search for several categories of documents, including: (1) Thumairy's nomination to

---

[3] Citations to "MTC Order" refer to the July 22, 2019 Order on Plaintiffs' motion to compel; those to "Supp. Disc. Order" refer to the July 22, 2019 Order on Saudi Arabia's motion to narrow supplemental discovery; those to "Pl's Br." refer to Plaintiffs' Motion for Reconsideration; those to "Def's Br." refer to Saudi Arabia's opposition; and those to "Pl's Reply Br." refer to Plaintiffs' reply.

[4] Unless otherwise stated, citations to the parties' declarations refer to declarations submitted in connection with the July 22, 2019 Order regarding Plaintiffs' motion to compel.

oversee Saudi propagators working in California; (2) the approval of that nomination by the

Saudi government; (3) any supervisory reports submitted by Thumairy to the Embassy or MOIA;

(4) documents that Sowailem used to prepare Thumairy's performance report; and (5) any other

performance reviews of Thumairy's work. MTC Order, at 12–16.

Despite the Court's rulings, Plaintiffs argue that the DOJ's production was overlooked.

Pl's Br., at 3. This is incorrect. The Court discussed the documents cited by Plaintiffs in detail,

directing Saudi Arabia to perform a broad array of additional searches. Plaintiffs emphasize that

they received few documents regarding Thumairy's nomination, his supervisory role in

California, and ███████████████████████████. Pl's Reply Br., at 5. But

these are the exact documents for which Saudi Arabia was directed to search. MTC Order, at 13,

16, 36. No further relief is necessary.

Plaintiffs also sought documents concerning the tasks assigned to Thumairy by the

Ministry of Foreign Affairs ("MOFA"). The Court denied this request, reasoning in part that

Saudi Arabia had already performed extensive searches of both the Consulate and the Embassy.

MTC Order, at 16. Plaintiffs move for reconsideration of the Court's decision. They argue that

the Court should not have relied on Saudi Arabia's representations that it searched these facilities

because the Court did not receive an affidavit or declaration. Pl's Br., at 2–3.

Plaintiffs cite two cases where a party submitted a sworn statement to oppose a motion to

compel. Pl's Br., at 2 (citing Mason Tenders Dist. Council of Greater New York v. Phase Constr.

Servs., Inc., 318 F.R.D. 28, 42 (S.D.N.Y. 2016), and Zervos v. S.S. Sam Houston, 79 F.R.D.

593, 595 (S.D.N.Y. 1978)). But nothing in these cases suggests a party is *required* to do so.

Indeed, "when counsel represent that they have conducted a reasonable search and have not

uncovered all requested documents, it is up to the requesting party to show that the search was

inadequate." <u>Gary Friedrich Enters., LLC v. Marvel Enters., Inc.</u>, No. 08-CV-1533 (BSJ) (JCF), 2011 WL 2623458, at *1 (S.D.N.Y. June 21, 2011) (relying on counsel's representations in meet-and-confer emails); <u>accord</u> <u>Jackson v. Edwards</u>, No. 99-CV-0982 (JSR) (HBP), 2000 WL 782947, at *3–4 (S.D.N.Y. June 16, 2000) (relying on the defendant's assertion that "no responsive documents [were] in his possession" where the plaintiff "offered nothing to show that these responses were untrue"); <u>Moll v. Telesector Res. Grp., Inc.</u>, 760 F.3d 198, 202–04 (2d Cir. 2014) (noting that the court was in "no position" to second-guess the defendant's representation that the requested documents did not exist). This is particularly appropriate where, as here, the party has described its discovery efforts in significant detail. <u>See</u> Addendum to Saudi Arabia's Opposition to Plaintiffs' Motion to Compel ("Def's Add.").

Finally, citing page five of their motion to compel, Plaintiffs argue that the Court overlooked their "specific request" for documents concerning "any MOIA directives or communications that Thumairy would have received based on his title." Pl's Br., at 4. No such request is made in that portion of Plaintiffs' motion.

Plaintiffs may, however, be referring to page six of their motion to compel. There, they argued that MOIA sent regular correspondence to its propagators in the United States. Based on this assertion, Plaintiffs sought documents concerning the "duties, responsibilities, and tasks" of MOIA's "Propagators and Guides." Plaintiffs' Proposed Order ("Proposed Order"), ¶ 2. This amounted to a request for documents concerning the responsibilities of individuals with Thumairy's title, as Thumairy was ranked as either a "Propagator" or a "Guide" during the relevant period. <u>See</u> Pounian Decl., Ex. 31, at 593.

The Court granted this request in full. Specifically, the Court directed Saudi Arabia to search for documents showing the "responsibility of individuals who held the same title and rank

as Thumairy." MTC Order, at 14. Plaintiffs received all their requested relief. That they want additional searches after-the-fact is not a ground for reconsideration.

### C.     The Offices of Prince Abdulaziz

The Court did not originally identify the Offices of Prince Abdulaziz as a relevant repository. See ECF No. 4009. After Plaintiffs presented evidence obtained in third-party discovery, however, the Court directed Saudi Arabia to perform a targeted search for responsive documents. Specifically, the Court ordered Saudi Arabia to search for documents regarding: (1) the identity of Thumairy's supervisors; (2) any tasks or directives issued to Thumairy; and (3) a 1999 letter that allegedly stated that the Prince no longer wanted a representative on the board of directors that ran the King Fahad Mosque. MTC Order, at 21–22, 34–36.

Plaintiffs challenge the Court's decision in two respects. First, Plaintiffs argue that Saudi Arabia must search for documents concerning payments to the Mosque. Pl's Br., at 5. This argument is meritless. The Court stated, correctly, that the exhibits cited in Plaintiffs' motion to compel suggested that ███████████████████████████████████████████████ ████████████████████  See MTC Order, at 22 (citing Pounian Decl., Ex. 26, at 1250–51, 1258). The Court then considered Plaintiffs' supplemental letter from June 2019. Although the evidence connected Prince Abdulaziz to the Mosque's funding, it was too tangential to Plaintiffs' limited jurisdictional inquiry to justify a broad search for documents. Id. at 22 & n.10. Plaintiffs do not challenge these findings, merely reciting the already-considered evidence from their June 2019 letter. This is insufficient to satisfy Plaintiffs' heavy burden.

Next, Plaintiffs contend that Saudi Arabia must search the Offices of the Prince for documents concerning Thumairy's appointment as the imam of the Mosque. Pl's Br., at 5. This argument is also unavailing. The Court directed Saudi Arabia to search for information regarding

Thumairy's supervisors, if any, as well as any tasks or directives issued to Thumairy. MTC

Order, at 36. Moreover, these searches were properly limited from 1998 until 2002. Id. Imposing

time constraints on Saudi Arabia's document production is consistent with the Court's obligation

to be circumspect in allowing discovery. Id. at 8. In addition, the Court's selected timeframe

focuses on Plaintiffs' core allegation that Thumairy was directed by a senior Saudi official to

assist two of the hijackers when they arrived in California in January 2000. Documents from

1995 and 1996 are unlikely to shed light on Plaintiffs' targeted inquiry. Accord Reiss v. Societe

Centrale du Groupe Des Assurances Nationales, 185 F. Supp. 2d 335, 340 (S.D.N.Y. 2002)

(imposing a three-year discovery window to conduct jurisdictional discovery under the FSIA).

### D.   Alleged Photograph of Thumairy with the Hijackers

In June 2019, the parties deposed Dr. Khalil al Khalil, a director of the foundation that

runs the King Fahad Mosque. Dr. Khalil testified about a phone call he received from a Mosque

employee in October 2001. Khalil Dep., at 69–79. The employee stated that the FBI visited the

Mosque and asked how to contact Thumairy. Id. at 75. The employee also stated that the FBI

displayed a photograph of Thumairy with two of the hijackers, Nawaf al Hazmi and Khalid al

Mihdhar. Id. at 69. After receiving this information, Khalil called Abdul Aziz al-Ammar, a

deputy minister in MOIA, to inform him about the FBI's visit. Id. at 76–77.

Based on this evidence, Plaintiffs requested documents concerning Thumairy's

association with the hijackers. See Plaintiffs' June 21, 2019 Letter ("June 21 Ltr."), at 5. The

Court denied Plaintiffs' request because Saudi Arabia had already produced relevant materials.

MTC Order, at 23. Plaintiffs move for reconsideration, arguing that none of the documents cited

by the Court mention the alleged photograph. Pl's Br., at 16. This argument is unpersuasive.

Saudi Arabia agreed to perform a reasonable search of MOIA, the Embassy, and the Consulate for documents concerning any "meeting, communication, or contact" between Thumairy and the hijackers. Pounian Decl., Ex. 3, at 19. These searches would have necessarily included any documents describing a photograph of Thumairy with Hazmi and Mihdhar. Thus, Saudi Arabia has already searched for responsive documents.

The basis for any additional searches is Khalil's testimony — specifically, that he informed Ammar that the FBI asked about Thumairy and displayed a photograph showing Thumairy with the hijackers. But Saudi Arabia already produced documents ███████████

██████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

Given Saudi Arabia's prior searches — and given the numerous related documents already produced — the Court does not believe that Saudi Arabia's discovery efforts were insufficient. This conclusion is supported by the FBI's document production, as well as the 2004 interview notes from the 9/11 Commission, neither of which mention the alleged photograph.

### E.      Supervision of Propagators in California

Plaintiffs sought documents regarding Thumairy's supervision of Saudi employees within California. Proposed Order, ¶ 10. This included documents identifying "any MOIA Propagators

in the United States" between January 1995 and September 2001. Id., ¶ 11. The Court denied

these requests, see MTC Order, at 24, and sees no reason to reconsider its decision.

As an initial point, the Court ordered Saudi Arabia to conduct relevant searches.

Recognizing that Thumairy may have supervised California propagators, the Court directed

Saudi Arabia to search for ███████████████████████████████████████████████

███████████████  MTC Order, at 14–15. Plaintiffs ignore this finding in their motion for

reconsideration. Nevertheless, they urge the Court to order additional searches based on evidence

allegedly connecting three propagators to the hijackers. Pl's Br., at 7.

The Court has separately considered whether discovery regarding these individuals is

appropriate. More importantly, disputed evidence concerning three propagators is too limited in

scope to justify broad searches regarding "any MOIA Propagators" in the United States across a

six-year period. As both this Court and Judge Daniels have explained, that Thumairy may have

supervised an individual's religious activities does not mean that Thumairy directed that

individual to aid the hijackers. See MTC Order, at 24 (citing Judge Daniels's March 28 Order).

### F.     Travel Documents

The Court also denied Plaintiffs' request for documents regarding Thumairy's travel

records. MTC Order, at 30–31. Plaintiffs move for reconsideration, arguing that: (1) newly

obtained evidence warrants additional searches; and (2) the Court mistakenly concluded that

Thumairy was not working during his travel to Denmark on September 11, 2001. Pl's Br., at 7–8.

Neither argument is persuasive.

The FBI produced a fifth tranche of documents on July 15, 2019. The documents show

that ████████████████████████████████████████████████████████████

███████████████  See Third Supplemental Declaration of Catherine Hunt ("Hunt Decl."), Ex. 1, ██

 Saudi Arabia's document production shows that Thumairy traveled to San Francisco on a work trip shortly thereafter. See id., Ex. 5, at 7021 (authorizing Thumairy's travel to San Francisco to "visit Islamic centers and societies"); Ex. 6, at 1535 (████████████████████████████████████████████████████████. According to an internet message board, ████████████████████████████████████████████████████████████████████ Id., Ex. 4, at 1–2. Plaintiffs claim that ████████████████████████████████████████████████████████████████ Pl's Br., at 8; Hunt Decl., ¶ 3.

These documents do not warrant reconsideration. At best, the evidence shows that the individual ████████████████████████████████████ may have subsequently been in contact with another individual who is allegedly affiliated with al Qaeda. This does not show that Saudi Arabia has failed to locate responsive documents regarding Thumairy's travel records.

Similarly, the Court did not err in finding that Thumairy was travelling in his personal capacity when he visited Denmark in September 2001. The Court considered the online article cited by Plaintiffs, acknowledging that Thumairy was scheduled to deliver a lecture in Copenhagen on the relevant date. MTC Order, at 31. While the title of the article may suggest that the lecture was part of a Saudi "forum," other documents show that Thumairy was on a leave of absence during this period. Pounian Decl., Ex. 37, at 1; Rapawy Decl., Exs. 21 & 22, at 584, 2765. Plaintiffs ignore this evidence, and as a result, cannot show that the Court committed a clear error.

Lastly, Plaintiffs contend that two specific documents regarding ████████████████████ ████████ have not been produced. These documents are a February 6, 2000 letter from

Sowailem, and a document described as ███████████████████████ See Hunt Decl., ¶¶

6–7. A motion for reconsideration, however, is not an "opportunity for making new arguments

that could have been previously advanced." Elgalad v. New York City Dep't of Educ., No. 17-

CV-4849 (VSB), 2019 WL 4805669, at *3 (S.D.N.Y. Sept. 30, 2019) (quoting Associated Press

v. U.S. Dep't of Def., 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005)). Plaintiffs base their request on

two records that were produced in Saudi Arabia's August 2018 production. See Hunt Decl., ¶¶

6–7. Although Plaintiffs requested documents regarding Thumairy's travel, they never claimed

that the February 6 letter or ███████████████████ were not produced. Indeed, KSA 7021,

on which Plaintiffs rely, was seemingly not presented to the Court at all. Reconsideration is

therefore unwarranted.

## II.     Documents Concerning Bayoumi

### A.     Intelligence Records

Plaintiffs claimed that Bayoumi's secondment to Dallah Avco was a "cover job"

designed to conceal the true nature of his employment. As a result, Plaintiffs argued, Saudi

Arabia must search its intelligence agencies, Ministry of Defense, and Ministry of Interior, for

documents concerning Bayoumi's "actual duties and responsibilities." MTC Order, at 36–37.

The Court denied this request. Judge Daniels directed that jurisdictional discovery shall

proceed "by focusing only on those allegations of specific facts described below relevant to the

FSIA immunity determination." March 28 Order, at 5. The Saudi intelligence services were

virtually unmentioned in Judge Daniels's decision. For this reason — and given the limited

nature of jurisdictional discovery under the FSIA, and the Court's obligation to demonstrate "due

respect" for "any sovereign interest expressed by a foreign state," particularly its "diplomatic and

military affairs" — the Court concluded that broad searches of intelligence documents were

inappropriate. MTC Order, at 8–11. The Court did not, however, afford Saudi Arabia categorial

protection from such discovery; rather, it merely sought evidence that responsive documents may

exist before encroaching on the legitimate interests of a foreign sovereign potentially immune

from the Court's jurisdiction. Id. at 11.

The Court concluded that Plaintiffs failed to establish a connection between Bayoumi and

the agencies they proposed to be searched. MTC Order, at 36–37. Although the FBI production

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████. Id. at 37 n.14. The Court therefore denied Plaintiffs' request for

documents from these locations.

Plaintiffs ask the Court to reconsider its decision. They point to a ████████████████

████████████████████████████████████████████████████ as well as documents

indicating Bayoumi's frequent calls with several U.S.-based Saudi officials. Pl's Br., at 9–10

(presumably referring to Pounian Decl., Ex. 17, ████████; Ex. 56, at 14). This evidence, however,

was specifically cited by the Court, and therefore it does not warrant reconsideration. See MTC

Order, at 37 n.14. In addition, Plaintiffs also highlight portions of the FBI's 2012 Summary

Report. But that document does not provide any evidence for its statements regarding Bayoumi,

and more importantly, does not mention the Saudi intelligence services. See Pounian Decl., Ex.

51, at 3–4. The Court cannot rely on the unsupported conclusions of others to order additional

discovery.[5]

---

[5] For example, the 2012 Summary Report states that "[t]here is evidence that al-Jarrah [redacted] and
tasked al-Thumairy and al-Bayoumi with assisting the hijackers." ECF No. 5144, Supplemental
Declaration of Sarah S. Normand, Ex. K, at 4 (filed under seal). As noted in the public declaration of
Michael C. McGarrity, the Assistant Director of the FBI's Counterterrorism Division, however, "it would
have been more appropriate" to phrase this sentence as an "investigative theory," not an "objective

Plaintiffs next contend that the Court overlooked the opinions of their expert witness, Michael Rochford. Pl's Reply Br., at 8. Rochford opined that Bayoumi was a "covert" Saudi employee who "promot[ed] the Wahhabi religious agenda of the Ministry of Islamic Affairs." Rochford Decl., ¶¶ 23, 50 (attached as Ex. 42 to the Pounian Decl.). Although Rochford found that the General Intelligence Directorate ("GID") was a "secondary consumer[]" of Bayoumi's work, he concluded that Bayoumi was directed by Saudi Arabia's "diplomatic missions," not its intelligence services. Id., ¶¶ 41, 48. Rochford amended his findings after reviewing the FBI's document production. Specifically, he concluded that Bayoumi performed an "undisclosed extraterritorial function for the Kingdom" and that, as a result, the GID "would have monitored and documented his activities in the United States." Supp. Rochford Decl., ¶ 60 (submitted with Plaintiffs' reply brief in support of their motion to compel).

Neither declaration requires reconsideration. The parties have not conducted expert discovery, nor has the Court decided whether such discovery is even appropriate. See ECF No. 5236, at 4. Moreover, despite ample briefing by the parties, Judge Daniels did not rely on the Rochford Declaration in the March 28 Order. This cautions against allowing Plaintiffs discovery based exclusively on Rochford's opinions, as opposed to the alleged facts underlying those opinions. In any event, the supplemental declaration does not suggest that Saudi Arabia should search its intelligence services for Bayoumi's "actual duties and responsibilities."

Rochford relies extensively on the FBI's document production. The Court cited these materials throughout the July 22 Orders, directing additional searches where appropriate. See MTC Order, at 26, 34–36, 37 n.14, 46, 49, 50–51, 52; Supp. Disc. Order, at 5, 11. To support his conclusion that the GID "would have monitored" Bayoumi's activities, Rochford emphasized the

---

statement[] of fact." ECF No. 5142, at ¶ 22. This after-the-fact clarification cautions against relying on unsupported "conclusions" in investigative documents.

███████████████████████████████. Supp. Rochford Decl., ¶¶ 59–60. But██████████████

████████████████████████████████████████████████████████████████████████████████

███████████████████. Pounian Decl., Ex. 17, ██████ Rochford also referenced a September 2002

meeting among various Saudi agencies, which included the "Intelligence." Pounian Decl., Ex.

40, at 557–58. The agencies recommended certain "controls and rules" for MOIA delegates who

interacted with "Islamic associations . . . in Western countries." Id.

Recognizing their relevance to Thumairy, a MOIA delegate, the Court ordered Saudi

Arabia to produce the minutes from the September 2002 meeting. MTC Order, at 32–34. No

further searches are warranted. There is no evidence that the committee convened on a regular

basis, let alone that it monitored Bayoumi, a *PCA* employee, between 1995 and 2001. Indeed, in

a related meeting in June 2003, only MOIA officials were present, and they did not discuss

Bayoumi at all. Pounian Decl., Ex. 40, at 558–60. Given the allegations identified by Judge

Daniels, the limited nature of jurisdictional discovery under the FSIA, and the due respect owed

to Saudi Arabia's legitimate interests as a foreign sovereign, Rochford's supplemental

declaration is not enough to order broad searches of Saudi Arabia's most sensitive agencies. See

Freund v. Republic of France, 592 F. Supp. 2d 540, 563 (S.D.N.Y. 2008) ("[B]road document

discovery . . . at least part of which would be conducted in the closed archives of a foreign state[]

. . . raise[s] serious comity concerns insofar as . . . [it] would require the Court to order a foreign

sovereign . . . to provide access to their sealed archives.") (internal quotation marks omitted).

Plaintiffs newly submitted evidence does not alter the Court's conclusion. On September

9, 2019, Plaintiffs supplemented the record with the FBI's sixth tranche of documents. The

production includes ██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████. Id., Ex. 2, at 1338; ECF No.

15

2927-1, ¶ 181; <u>accord</u> Pounian Decl., Ex. 17, ███████████████████████████████ According to Plaintiffs, ███████████████████████████████████████████████████████████████████████████

Saudi Arabia disputes the accuracy of Plaintiffs' translation. Even assuming Plaintiffs are correct, ███████████████████████████████████████████ ████████████████ Plaintiffs argue that other documents "must exist" and that Saudi Arabia should search the GID to find them. But this is mere speculation, and in any event, Saudi Arabia located a responsive document in its supplemental searches. <u>See</u> Sept. 12, 2019 Letter, Ex. D ███████████████████████████████████████████

### B.    Pay Records

Records produced by Saudi Arabia indicate that Dallah Avco was responsible for Bayoumi's salary and allowances. <u>See</u> MTC Order, at 40–41. Based on this evidence, the Court credited Saudi Arabia's interrogatory response that Dallah Avco, not the PCA, "made decisions concerning [Bayoumi's] compensation." <u>Id.</u> at 41. The Court therefore denied Plaintiffs' request for documents regarding Bayoumi's salary, including an alleged pay increase in April 2000. <u>Id.</u>

Deposition testimony from Dallah Avco — first presented to the Court in Plaintiffs' motion for reconsideration — complicates the factual record. Among other things, the corporate representative testified that the PCA, not Dallah Avco, determined Bayoumi's job titles. Kamel

Dep., at 91–92, 113.[6] He further testified that, because an individual's job title dictated his compensation, Bayoumi's salary was based on the PCA's direction. Id. at 113–14. The Court need not decide the exact relationship between Dallah Avco and Bayoumi. At a minimum, the testimony raises doubts about Saudi Arabia's discovery efforts, particularly as they relate to the reasons for Bayoumi's alleged pay increase in April 2000. This conclusion is supported by the Court's separate findings that Saudi Arabia failed to adequately search the PCA for other responsive documents. See MTC Order, at 37; 39–40.

Plaintiffs failed to supplement the record with Dallah Avco's deposition in a timely manner. Nevertheless, Bayoumi's pay records are an important component of Plaintiffs' claims and were specifically cited by Judge Daniels as a subject of jurisdictional discovery. See March 28 Order, at 21. Accordingly, to avoid a manifest injustice, Saudi Arabia is directed to search for and produce any documents regarding Bayoumi's compensation, including documents regarding an alleged pay increase in April 2000.

### III.    Additional Document Requests

#### A.    9/11 Commission Interviews

The 9/11 Commission interviewed Bayoumi and Thumairy in Saudi Arabia in October 2003 and February 2004. The Commission produced memoranda of the interviews, which indicate that Saudi intelligence were present. Pounian Decl., Ex. 11 (first page of each interview). Based on this information, Plaintiffs sought documents "concerning the interviews of Bayoumi and Thumairy." Proposed Order, ¶ 38. This included any "recordings, transcripts, transcriptions, and notes," as well as any preparation materials. Id. The Court denied this request. Given that Plaintiffs already possessed the Commission's detailed memoranda, the likely benefit

---

[6] The deposition transcript is attached as Exhibit 2 to the August 5, 2019 Declaration of Steven R. Pounian.

of the proposed discovery was outweighed by the burden of searching the intelligence services of a potentially immune sovereign defendant. MTC Order, at 48–49.

Plaintiffs seek reconsideration, claiming that transcripts of Thumairy and Bayoumi's testimony are not privileged. Pl's Br., at 11. This argument misconstrues the Court's decision. The Court must be circumspect in conducting jurisdictional discovery, Arch Trading Corp. v. Republic of Ecuador, 839 F.3d 193, 206 (2d Cir. 2016), and exercise special vigilance to protect foreign states from the dangers of unnecessary searches. Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court, 482 U.S. 522, 546 (1987). Thus, regardless of whether a particular document is privileged, the Court must balance Plaintiffs' right to obtain discovery with Saudi Arabia's legitimate claim to immunity. First City, Texas-Houston, N.A. v. Rafidain Bank, 150 F. 3d 172, 176 (2d Cir. 1998). Despite already possessing detailed memoranda, Plaintiffs requested a broad array of documents, not merely a transcript or recording of the interview. Balancing the parties' interests, the Court concluded that the scale tipped in Saudi Arabia's favor. Plaintiffs provide no reason to reconsider this conclusion.

### B. Sowailem's Phone Records

The Court denied Plaintiffs' request for documents concerning Sowailem's phone records. The Court reasoned that: (1) Saudi Arabia had already conducted a search for these records; and (2) Plaintiffs had not shown that those searches were insufficient. MTC Order, at 51–52.

Plaintiffs argue that the Court erred by relying on Saudi Arabia's unsworn statements that it conducted reasonable searches. Pl's Br., at 12. As the Court explained above, however, courts regularly rely on counsel's representations regarding their client's discovery efforts. See Gary Friedrich Enters., 2011 WL 2623458, at *1; Jackson, 2000 WL 782947, at *3–4; accord Margel

v. E.G.L. Gem Lab Ltd., No. 04-CV-1514 (PAC) (HBP), 2008 WL 2224288, at *2–3 (S.D.N.Y.

May 29, 2008) (relying on counsel's representation that "all responsive, non-privileged

documents [had] been produced" and emphasizing that the defendants failed to "point to any

specific evidence that additional responsive documents exist"). Moreover, that ███████████

████████████████████████████████████████ does not suggest that Saudi

Arabia's searches were insufficient. Plaintiffs' request for reconsideration is therefore DENIED.

### C.       The Islamic Center of San Diego ("ICSD")

Plaintiffs sought documents concerning the relationship between the ICSD, a San Diego

mosque, and Thumairy, Bayoumi, Sowailem, and the hijackers. The Court rejected this request,

finding that Plaintiffs' allegations were speculative, and that Saudi Arabia was unlikely to

possess documents regarding Bayoumi or Thumairy's connection with the Mosque. MTC Order,

at 49–50.

Plaintiffs seem to have narrowed their request on reconsideration. Specifically, they now

seek information only regarding Saudi Arabia's funding of the ICSD. Pl's Br., at 12. To support

their position, Plaintiffs contend that the Court overlooked evidence that ██████████████

█████████████████████████████████████████████████████████████

███████████████████████████. See Plaintiffs' July 15, 2019 Letter, Ex. 1.███

████ This argument does not warrant reconsideration. The Court specifically discussed

███████████████████████, and in doing so, ordered Saudi Arabia to search for documents

regarding █████████████. MTC Order, at 34–36. To the extent Saudi Arabia possesses

responsive documents, they will be produced. Plaintiffs have not shown that the Court

overlooked evidence or otherwise made a clear error.

**IV.    Supplemental Discovery**

On November 29, 2018, the Court ordered supplemental document discovery regarding

three individuals: Musaed al Jarrah, Smail Mana, and Mohamed al Muhanna. ECF No. 4261.

Saudi Arabia moved for a protective order limiting the scope of Plaintiffs' discovery. ECF No.

4283. The Court granted Saudi Arabia's request in part, concluding, among other things, that

Saudi Arabia was required to search a limited number of locations for each individual. See Supp.

Disc. Order, at 3–5.

Saudi Arabia asserted that Jarrah was an employee of the Ministry of Education ("MOE")

and that he worked in the Islamic Affairs office of the Embassy. Saudi Arabia further indicated

that ████████████████████████████████████████. Based on this information, the

Court directed Saudi Arabia to search for documents in the MOE, the Embassy, and the

Consulate. See Supp. Disc. Order, at 3. Insisting that the "Islamic Affairs office" is part of the

Ministry of Foreign Affairs, Plaintiffs contend that Saudi Arabia must also search that agency.

Pl's Br., at 13. The Court previously rejected this argument, and Plaintiffs provide no reason to

reconsider that decision.

The record does not clearly establish which Saudi agency houses the Islamic Affairs

office. One document — cited by Plaintiffs in their initial motion for supplemental discovery —

indicates that Jarrah's position was affiliated with MOIA. Pounian Reply Decl., Ex. 76, at 1.

Plaintiffs now contend that this document is "mistaken[]," but provide little evidence to the

contrary. Indeed, common sense suggests that the "Islamic Affairs" office would be contained

within the Ministry of *Islamic Affairs*, not the Ministry of *Foreign* Affairs.

Regardless, whether MOFA supervises the Islamic Affairs office is immaterial to the

Court's ultimate conclusion. In determining the scope of supplemental discovery, the Court

ordered Saudi Arabia to search an individual's parent agency, as well as any Saudi-controlled locations where the individual worked in the United States. The Court directed Saudi Arabia to search the MOE, which employed Jarrah, and the Embassy and the Consulate, where Jarrah worked. The Court further directed Saudi Arabia to produce any documents produced by the Imam Mohammed Bin Saud University, which may have also employed Jarrah. <u>See</u> Supp. Disc. Order, at 4. Searches of any other agency, MOFA or otherwise, contravene the Court's obligation to tailor jurisdictional discovery narrowly. Plaintiffs do not challenge this finding in their moving papers, and they did not respond when Saudi Arabia raised this point in their opposition. Accordingly, reconsideration is inappropriate.

## CONCLUSION

Plaintiffs' motion for reconsideration is GRANTED in part and DENIED in part. The remainder of Plaintiffs' motion will be resolved by Judge Daniels pursuant to Rule 72 of the Federal Rules of Civil Procedure. Saudi Arabia is directed to search for and produce documents identified in this Order no later than 14 days following the resolution of Plaintiffs' Rule 72 objections.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:     November 25, 2019
           New York, New York