UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:

TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

03-MDL-01570 (GBD)(SN)

**OPINION & ORDER**

------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

The Plaintiffs' Executive Committees ("Plaintiffs") move to vacate the Court's November 29, 2018 Order, ECF No. 4261 (the "November 29 Order"), and require the Kingdom of Saudi Arabia ("Saudi Arabia") to conduct supplemental discovery regarding four Saudi officials. Plaintiffs' motion is GRANTED in part and DENIED in part.[1]

## BACKGROUND

On March 28, 2018, the Honorable George B. Daniels concluded that Plaintiffs articulated a reasonable basis for the Court to assume jurisdiction over Saudi Arabia. ECF No. 3946, at 4–5 (the "March 28 Order"). Judge Daniels permitted Plaintiffs to conduct limited jurisdictional discovery regarding two individuals: Fahad al Thumairy and Omar al Bayoumi. Id. at 23.

The Court established procedures to manage the scope of that discovery. ECF No. 4009. Saudi Arabia produced responsive documents, and soon thereafter, Plaintiffs served their first set of supplemental discovery requests. Plaintiffs sought document discovery regarding seven Saudi

---

[1] This Opinion & Order has been filed under seal in its entirety. The Court will issue a redacted version following the resolution of Plaintiffs' Rule 72 objections to the Court's decision granting in part Saudi Arabia's motion to seal. See ECF No. 4696.

1

officials: Abdullah al Jaithen, Musaed al Jarrah, Smail Mana, Adel al Sadhan, Mutaeb al Sudairy, Mohamed al Muhanna, and Sharif Batikhi. See Plaintiffs' October 26, 2018 Letter.

Plaintiffs requested a broad array of discovery. Among other things, they sought documents concerning the officials' travel, compensation, residences within California, tasks and activities, visa records, supervisors and supervisees, and "meeting[s], communication[s], contact[s], transaction[s], or relationship[s]" with seven different individuals or categories of individuals. Id., App. 1, at 1–2. Those persons included: Bayoumi, Thumairy, Khalid al Sowailem, Abdussattar Shaikh, Caysan Bin Don, any officer or employee at the King Fahad Mosque, and any of the 9/11 hijackers. Id. at 2.

Based on the limited jurisdictional inquiry authorized by Judge Daniels — that is, whether Thumairy, Bayoumi, and their agents took actions in 2000, at the direction of more senior Saudi officials, to assist the 9/11 hijackers — the Court allowed discovery regarding Jarrah, Mana, and Muhanna. March 28 Order, at 23; November 29 Order, at 1. The Court denied Plaintiffs' request as to the remaining officials, with an opinion and order to follow. November 29 Order, at 2. This decision resolves Plaintiffs' motion to vacate and provides the reasoning underlying the disputed portions of the November 29 Order.

## DISCUSSION

### I. Preliminary Issues

Plaintiffs move to vacate the Court's decision denying supplemental discovery regarding Jaithen, Sadhan, Sudairy, and Batikhi. They argue that new evidence produced by the Federal Bureau of Investigation ("FBI") shows that these individuals had key ties to the 9/11 hijackers.

Pl's Br., at 1.[2] Plaintiffs do not identify the procedural basis for their motion, but contend that they were unable to move for reconsideration without the Court's written decision. Id. at 1, n.1. Saudi Arabia disagrees, arguing that Plaintiffs' motion should be construed as a motion for reconsideration and denied as untimely and procedurally improper.

Under Local Civil Rule 6.3, a motion for reconsideration must be served within 14 days after the entry of the Court's determination of the original motion. The moving party is also prohibited from submitting affidavits unless directed by the Court. Even assuming that Rule 6.3 is controlling, it does not require the Court to deny Plaintiffs' motion.

"When an act . . . must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). This determination is an equitable one, taking into account all relevant circumstances surrounding the party's omission. Beckles v. City of New York, No. 08-CV-3687 (RJH) (JCF), 2010 WL 1841714, at *3 (S.D.N.Y. May 10, 2010) (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)). Courts consider: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id.* The third factor is often the most important, as the "equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule." Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366 (2d Cir. 2003) (citations omitted).

---

[2] Citations to "Pl's Br." refer to Plaintiffs' August 5, 2019 motion to vacate; those to "Def's Br." refer to Saudi Arabia's August 19, 2019 opposition; and those to "Pl's Reply Br." refer to Plaintiffs' August 27, 2019 reply.

Here, Plaintiffs' deadline to move for reconsideration should be extended. Plaintiffs were told that a written decision containing the Court's reasoning was forthcoming. November 29 Order, at 2. Given that Local Rule 6.3 requires the movant to set forth the "matter or controlling decisions which counsel believes the [c]ourt has overlooked," Plaintiffs acted reasonably by relying on the Court's statement and waiting to file their motion. There is also no evidence that Plaintiffs acted in bad faith; indeed, they signaled as early as December 2018 that the FBI had subsequently produced relevant documents. See ECF No. 4287. Although there is some prejudice to Saudi Arabia, this is outweighed by the equities as a whole. As discussed further below, Plaintiffs' document requests regarding Jaithen target the heart of the jurisdictional inquiry authorized by Judge Daniels. Moreover, the Court has separately ordered Saudi Arabia to conduct additional searches, and Plaintiffs have objected to the Court's July 22, 2019 decisions regarding Plaintiffs' motion to compel and Saudi Arabia's motion to narrow supplemental discovery. Thus, while document discovery is nearly complete, we are not yet at the point of no return. Consideration of the merits of Plaintiffs' claims is therefore warranted.

## II.    Abdullah al Jaithen

Plaintiffs allege that Jaithen is a senior official within Saudi Arabia's Ministry of Islamic Affairs ("MOIA"). Pl's Br., at 3; Supplemental Declaration of Catherine Hunt ("Supp. Hunt Decl."), ¶ 11. The FBI located registration forms that indicate Jaithen and Bayoumi checked into a Travelodge Motel in Los Angeles, California, on December 20, 1999, and checked out the following day.[3] Declaration of Catherine Hunt ("Hunt Decl."), Ex. 4, at 2. Plaintiffs allege that the motel stay was significant to the plot to aid the hijackers, who arrived in Los Angeles less

---

[3] Elsewhere, the FBI stated that ████████████████████████████████████████
████████████████████████████████████ Plaintiffs' July 18, 2019 Letter
("July 18 Ltr."), Ex. 1, ████ This suggests, contrary to Saudi Arabia's assertion, that the two men checked in together. See Def's Br., at 5.

4

than a month later. See ECF No. 3669-1 ("9/11 Comm'n Report"), at 215. In addition, Bayoumi and Jaithen's interaction may have also involved Thumairy. The motel was in "close proximity" to the King Fahad Mosque, where Thumairy worked, and █████████████████ ████████████████████████████ Id., at 3; Supp. Hunt Decl., Ex. 5, at 4.

These allegations do not establish a reasonable basis to conduct supplemental discovery regarding Jaithen. In their moving papers, however, Plaintiffs submit newly obtained evidence from the FBI. These documents — combined with Plaintiffs' previous submissions and evaluated in light of the record as a whole — compel additional searches regarding Jaithen and his relationship with Bayoumi and Thumairy.

The FBI produced ████████████████████. The ██████████ ████████████ along with ████████████████████████ ████. See Supp. Hunt Decl., ¶¶ 12–13; Ex. 7, at 346. ████████████████████ ████ Dallah Avco, to whom Bayoumi was seconded during his time in the United States. Id., ¶ 12. This confirms that ██████████████, and more importantly, suggests that ██ ████████████████████████████████████.

The FBI also produced ████████████████. See Third Supplemental Declaration of Catherine Hunt ("Third Supp. Hunt Decl."), ¶ 2. ████████████████████████ ████████████████████████████████████. This included: ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████.

Id., ¶¶ 10–12; 9/11 Comm'n Report, at 221 & n.33; July 22, 2019 Opinion & Order on Plaintiffs'

5

Motion to Compel ("MTC Order"), at 50–51. ▮▮▮

▮▮▮

▮▮▮ See January 8, 2019

Reply Declaration of Steve Pounian, Ex. 69, ▮▮▮.

▮▮▮ shine a new light on Bayoumi's December 20 motel stay with Jaithen. The two men interacted ▮▮▮

▮▮▮. This increases Jaithen's importance to Plaintiffs' allegations as a whole. While not all of Bayoumi's contacts warrant additional searches, his stay with Jaithen is noteworthy. Bayoumi is not a MOIA employee, and Saudi Arabia offers no explanation for his interaction with Jaithen. Moreover, Jaithen is more senior than Thumairy at the Ministry of Islamic Affairs. As a result, questions about Thumairy and Bayoumi's interactions with Jaithen, shortly before the hijackers arrived, go directly to the heart of Plaintiffs' jurisdictional inquiry; that is, whether a higher-ranking Saudi official gave instructions to assist the hijackers.

Plaintiffs also emphasize a 2009 electronic communication produced by the FBI. The communication provides ▮▮▮ July 18 Ltr., Ex. 1, ▮▮▮. It states, among other things, that ▮▮▮ Id. ▮▮▮. The FBI redacted the remainder of the document, ▮▮▮. Id. ▮▮▮ The Court is generally unwilling to draw inferences based on conclusory investigative findings or redacted portions of government records. Nevertheless, although not instrumental to the Court's conclusion, the ▮▮▮

██████████████████████████████████████████████████████████

██████.

The Court must conduct jurisdictional discovery circumspectly and only to verify allegations of specific facts crucial to an immunity determination. March 28 Order, at 7; MTC Order, at 4–11; accord EM Ltd. v. Republic of Argentina, 473 F.3d 463, 486 (2d Cir. 2007). Plaintiffs have met this burden. They allege a specific fact crucial to their limited inquiry: that Jaithen, a MOIA official senior to Thumairy, traveled from Saudi Arabia to meet with Bayoumi, an employee of an unrelated Saudi ministry, shortly before the hijackers arrived, ██████ ████████████████████████████████████████████████████████████ ████████████████████████████ This allegation (unlike those discussed below) is supported by the factual record. In addition, it targets the core of Plaintiffs' jurisdictional inquiry, which focuses on whether Saudi officials directed Bayoumi and Thumairy to assist the hijackers. Under these circumstances, supplemental discovery regarding Jaithen is warranted.

### III. Adel al Sadhan and Mutaeb al Sudairy

Sadhan and Sudairy were MOIA propagators living in the United States between 1998 and 2002. See Supp. Hunt Decl., Ex. 16, at 559. ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████ Id., Ex. 7, ██████; Plaintiffs' September 9, 2019 Letter ("Sept. 9 Ltr."), Ex. 1, ██████ Ex. 3, ██████

In addition, a 2015 FBI report stated that Bayoumi "[a]ssisted" Sadhan and Sudairy while they were in San Diego. Supp. Hunt Decl., Ex. 13, at 101. Other documents support this assertion. ████████████████████████████████████████████

███████████████████████████████████████████. See Sept. 9 Ltr, Ex. 2, █

███ ; accord November 25, 2019 Opinion & Order, at 16. According to Plaintiffs, ██████

████████████████████████████████████████████████████████████████████

███████ Id. ███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████ Sept. 12 Ltr., Ex. D. While acting as propagators in California, Sadhan and

Sudairy ████████████████████████████. Supp. Hunt Decl., Ex. 15, at 6903.

This evidence connects Sadhan and Sudairy to Bayoumi and Thumairy. Plaintiffs fail, however, to provide concrete allegations that either official assisted the hijackers. Plaintiffs attempt to do so in two ways: first, by arguing that Sadhan and Sudairy were █████████ ██████████████████████████████████████ ; and second, by arguing that Bayoumi arranged for them to live in the same five-room boarding house as the hijackers during the summer of 2000. Pl's Br., at 5–6. Neither argument is convincing.

The evidence suggests that Sadhan and Sudairy ████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████ Sept. 9 Ltr., Ex. 2, ████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████. See Sept. 12 Ltr., at 2–3. Moreover, ████████████████████████████████████████████████████████████████████ █████ , and a TD Waterhouse application shows that Sudairy was living in Virginia by September ██████████. Id., Ex. D; Supp. Hunt Decl., Ex. 19, at 112072. ████████████

---

[4] Saudi Arabia disputes the accuracy of Plaintiffs' translation. See September 12, 2019 Letter, at 2 ("Sept. 12, Ltr."). Even assuming Plaintiffs are correct, the letter does not warrant broad discovery of Sadhan and Sudairy.

8

██████████████████████████████████████████████████████████

██████ Sept. 9 Ltr., Ex. 1, ██████ Accordingly, the evidence suggests that Sadhan and Sudairy visited San Diego ████████████████████████████████████████

████████████████████████████████████████████. Although ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████. See MTC Order, at 50.

██████████████████████████████████████████████████████████

██████ Id. As discussed above, however, Sadhan and Sudairy were already in the United States by ██████████ and therefore ████████████████████████ It is also unclear that it was ████████████████████████████████

██████. Id. at 50–51. This lessens the importance of Plaintiffs' broad discovery requests, especially as the Court has already ordered Saudi Arabia to search for documents ██████

████████████████. Id.

Plaintiffs contend that, in the summer of 2000, Bayoumi arranged for Sadhan and Sudairy to live in the same five-room boarding house as the hijackers. They emphasize a government report produced by the FBI. The report states that ██████████████████████████

████████████████████████████████████████ See July 18 Ltr., Ex. 2, ██

██████ The report ████████████████████████████████████████

██████ Id. The only evidence that either official lived in the boarding house is a conclusory statement from Plaintiffs' investigator, Catherine Hunt. See Hunt Decl., ¶ 30. But Hunt does not explain the basis for her conclusion, and the document production indicates that Sadhan and Sudairy were in San Diego ██████████, not the summer of 2000. Indeed, the 2015 FBI report suggests that the hijackers were in San Diego at a different time than Sadhan and Sudairy. See

9

Supp. Hunt Decl., Ex. 13, at 101 ("[Bayoumi] [a]ssisted al-Hazmi and al-Mihdhar as well as al-Sadhan and al-Sudairy during their *respective* times in San Diego.") (emphasis added).

Thus, both of Plaintiffs' key allegations are undercut by the factual record. This distinguishes Plaintiffs' claims from those against Jaithen and cautions against broad discovery. Given the Court's obligation to conduct jurisdictional discovery narrowly, the Court concludes that Plaintiffs' supplemental document requests regarding Sadhan and Sudairy are inappropriate.

## IV.  Sharif Batikhi

Plaintiffs allege that Sharif Batikhi is a MOIA employee, the imam of the Islamic Center of San Diego ("ICSD"), and "very close friends" with Bayoumi. Pl's Br., at 7. Plaintiffs further allege that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ For example, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ See Third Supp. Hunt Decl., ¶ 13. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Id.

While these allegations ▇▇▇▇▇▇▇▇▇▇▇▇▇▇, they provide no basis to conclude that Batikhi assisted the hijackers, or directed others to do the same. Plaintiffs' arguments to the contrary are unavailing. First, Plaintiffs contend that the ICSD was the center of the hijackers' support network. Pl's Br., at 7–8. The Court previously rejected this argument when it denied Plaintiffs' request for discovery regarding the ICSD. See MTC Order, at 49. The Court found that Plaintiffs' allegations were based "largely on speculation and guilt-by-association." Id. Plaintiffs repeat those allegations here, citing the same claims from the same declaration. Just as

10

these arguments were insufficient to warrant discovery regarding the ICSD, they are also insufficient to warrant even broader discovery regarding its imam, Sharif Batikhi.

Second, Plaintiffs emphasize a July 2003 FBI report regarding ▇▇▇▇▇▇



▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ See MTC Order, at 34. The report indicates that ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇ Id. at 35. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Id. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Id. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇ Id.

The Court directed Saudi Arabia to search for documents from the Offices of Prince Abdulaziz regarding (1) the identity of Thumairy's supervisors; and (2) any tasks or directives issued to Thumairy, including any instructions regarding ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇



▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. MTC Order, at 36. To the extent Saudi Arabia has documents explaining ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, they will be produced. No further relief is warranted. Plaintiffs do not allege (let alone provide evidence) that Batikhi ▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Therefore, despite its relevance to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇ the report does not support broad discovery regarding Batikhi.

Finally, Plaintiffs point to a December 2002 congressional report. The report states that, in approximately 1998, the FBI became aware of millions of dollars in wire transfers from the Somali community in San Diego to businesses affiliated with Usama Bin Ladin. See November 30, 2018 Declaration of Steven Pounian, Ex. 56, at 25–26. The FBI believed that "some of the funding" originated from Saudi Arabia and that both the King Fahad Mosque and the ICSD were involved in laundering the money first to Somali non-profits and then to other entities connected

11

with Bin Laden. Id. Plaintiffs argue that [REDACTED] Pl's Reply Br., at 9. They note, for example, that [REDACTED]. Id.

The 2002 report does not alter the Court's conclusion. Plaintiffs did not raise this issue in their moving papers, depriving Saudi Arabia an opportunity to respond. It also unclear whether the two reports are related: the alleged money laundering took place before 1998, while [REDACTED]. In any event, Judge Daniels denied jurisdictional discovery against Saudi Arabia based on similar allegations. See March 28 Order, at 31. Judge Daniels emphasized that Plaintiffs failed to show that "any of the support the charities provided al Qaeda or its operatives was used to help fund or facilitate the 9/11 Attacks in any meaningful way." March 28 Order, at 37. The same reasoning applies here. At bottom, Plaintiffs contend that Batikhi's mosque gave money to a non-profit organization which later provided financial support to businesses associated with Bin Laden. While relevant to an extent, this does not suggest that Batikhi was personally involved in any money laundering, or more importantly, that the funding was used to support the hijackers.

Like those against Sadhan and Sudairy, Plaintiffs' allegations are speculative and undercut by the factual record. Although the 2003 FBI report raises questions about Saudi Arabia's production, the Court has already directed the Kingdom to conduct additional searches. The Court will not order broad, untailored discovery regarding Batikhi in these circumstances.

## CONCLUSION

Plaintiffs' motion is GRANTED in part and DENIED in part. Within 14 days of this Opinion & Order, the parties are directed to meet-and-confer regarding the scope of Saudi Arabia's document production. The parties' discussion should be consistent with the Court's July

22, 2019 decision regarding Saudi Arabia's motion to limit supplemental discovery. Saudi Arabia is directed to search for and produce any responsive documents within 30 days of the completion of the parties' meet-and-confer.

Plaintiffs' motion for oral argument is DENIED as moot. The Clerk of the Court is respectfully directed to terminate the gavel at ECF No. 5022.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   January 3, 2020
         New York, New York