USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/7/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

TERRORIST ATTACKS ON
September 11, 2001

03-MD-1570 (GBD)(SN)

**OPINION AND ORDER**

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

On October 10, 2019, the Plaintiffs' Executive Committees ("Plaintiffs") served supplemental discovery requests on the Kingdom of Saudi Arabia ("Saudi Arabia") concerning Musaed Ahmed al Jarrah ("Jarrah"). See Plaintiffs' November 8, 2019 Letter ("Pl's Ltr."), Ex. A, B. On October 28, 2019, Saudi Arabia filed a letter motion under seal requesting that the Court grant a protective order under Rule 26(c) preventing plaintiffs' October 10, 2019 discovery requests, or in the alternative, asking the Court to set a briefing schedule for Saudi Arabia to move for such an order. See Defendants' October 28, 2019 Letter ("Def's Ltr."). Plaintiffs filed a letter in response to Saudi Arabia's letter on November 8, 2019. See Pl's Ltr. For the reasons that follow, Saudi Arabia's motion is GRANTED in part and DENIED in part.[1]

### BACKGROUND

On March 28, 2018, the Honorable George B. Daniels concluded that plaintiffs had articulated a reasonable basis for the Court to assume jurisdiction over Saudi Arabia. See ECF No. 3946, Memorandum Decision and Order at 4–5. Judge Daniels permitted plaintiffs to conduct limited jurisdictional discovery into "whether and to what extent Thumairy, Bayoumi,

---

[1] This Opinion & Order has been filed under seal in its entirety. The Court has directed the parties to provide proposed redactions consistent with the FBI Protective Order. The Court will issue a redacted version on the public docket once that process is complete.

and their agents took actions in 2000, at the direction of more senior Saudi officials, to provide assistance to Hazmi, Midhar, and other 9/11 hijackers." Id. at 23.

The Court established procedures to manage the scope of that discovery. See ECF No. 4009. Saudi Arabia produced responsive documents, and soon thereafter, plaintiffs served their first set of supplemental discovery requests. Plaintiffs sought document discovery regarding seven Saudi officials, including Jarrah. See Plaintiffs' October 26, 2018 Letter.

Plaintiffs requested a broad array of discovery. Among other things, they sought documents concerning the officials' travel, compensation, residences within California, tasks and activities, visa records, supervisors and supervisees, and "meeting[s], communication[s], contact[s], transaction[s], or relationship[s]" with seven different individuals or categories of individuals. Id., App. 1, at 1–2. Those persons included: Bayoumi, Thumairy, Khalid al Sowailem, Abdussattar Shaikh, Caysan Bin Don, any officer or employee at the King Fahad Mosque, and any of the 9/11 hijackers. Id. at 2.

Based on the limited jurisdictional inquiry authorized by Judge Daniels, the Court allowed discovery regarding Jarrah and two others on November 29, 2018. See ECF No. 4261, at 1.  On October 8, 2019, Saudi Arabia identified the documents it had produced in response to plaintiffs' discovery request in an appendix filed under seal. See Saudi Arabia's October 8, 2019 Document Appendix ("Saudi Arabia App'x."). On October 10, 2019, plaintiffs served their next set of supplemental discovery requests regarding Jarrah on Saudi Arabia. See Pl's Ltr., Ex. A, B.

## LEGAL STANDARD

The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, provides "the sole basis for obtaining jurisdiction over a foreign state in federal court." Chettri v. Nepal Rastra Bank, 834 F.3d 50, 55 (2d Cir. 2016) (quoting Argentine Republic v. Amerada Hess Shipping

Corp., 488 U.S. 428, 439 (1989)). The FSIA seeks to "protect foreign sovereigns from the burdens of litigation, including the cost and aggravation of discovery." Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic, No. 10-CV-5256 (KMW), 2011 WL 4111504, at *3 (S.D.N.Y. Sept. 13, 2011). As a result, before the plaintiff has established jurisdiction, a district court "must be circumspect in allowing discovery." Arch Trading Corp. v. Republic of Ecuador, 839 F.3d 193, 206 (2d Cir. 2016) (quoting EM Ltd v. Republic of Argentina, 695 F.3d 201, 210 (2d Cir. 2012)). Were that not the case, the discovery obligations imposed on a foreign state would frustrate the FSIA's presumption of immunity. See Compania del Bajo Caroni (Caromin) v. Bolivarian Republic of Venezuela, 556 F. Supp. 2d 272, 282 (S.D.N.Y. 2008) (citing El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996)).

The FSIA therefore requires a "delicate balancing" in managing jurisdictional discovery. First City, Texas-Houston, N.A. v. Rafidain Bank, 150 F.3d 172, 176 (2d Cir. 1998). While the Court must permit the discovery necessary to determine whether immunity applies, it must also protect a sovereign's legitimate claim to immunity. Id. In maintaining this balance, the Court should exercise "special vigilance" to protect foreign states from the dangers of unnecessary discovery. Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court, 482 U.S. 522, 546 (1987). Accordingly, even where jurisdictional discovery is warranted, it should be "ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination." First City, 150 F.3d at 176; Glencore Denrees Paris v. Dep't of Nat'l Store Branch 1, No. 99-CV-8607 (RJS), 2008 WL 4298609, at *6 (S.D.N.Y. Sept. 19, 2008).

In this case, plaintiffs have already established a "reasonable basis" for the Court to assume jurisdiction over Saudi Arabia. ECF No. 3946, at 4. This lessens the concern, at least to

an extent, that the Court will impose discovery obligations on a potentially immune defendant. Moreover, Congress has expressed a strong interest in granting federal courts jurisdiction when a foreign state commits a tortious act in connection with an act of terrorism within the United States. See JASTA, § 2(b), Pub. L. No. 114-222, 130 Stat. 852, 853 ("The purpose of this Act is to provide civil litigants with *the broadest possible basis* . . . to seek relief against . . . foreign countries . . . that have provided material support . . . to persons that engage in terrorist activities against the United States.") (emphasis added). While these concerns do not negate the Court's obligation to conduct limited discovery, they emphasize that plaintiffs must be given the discovery necessary to determine if JASTA applies. See Société Nationale, 482 U.S. at 544 n.28.

## DISCUSSION

### I. Plaintiffs' Discovery Requests Are Not Barred on Procedural Grounds

#### A. Discovery Is Ongoing

Saudi Arabia argues that plaintiffs' supplemental discovery requests into Jarrah are untimely because written discovery has come to a close. Saudi Arabia describes a "two stage schedule" that the Court set for written discovery, consisting of initial discovery that was to be completed by July 31, 2018, followed by a September 21, 2018 deadline (extended to November 30, 2018) to present any disputes to the Court. See Def's Ltr., at 1-2; ECF Nos. 4009, 4115, and 4213. Plaintiffs' first set of supplemental discovery requests were made on October 10, 2018, See Def's Ltr., Ex. A, and Saudi Arabia completed its responses to plaintiffs' additional demands on October 4, 2019. See ECF No. 5200. Saudi Arabia contends that written discovery was brought to a close on October 4, 2019, a few days before plaintiffs filed their discovery demands on October 10, 2019. See Def's Ltr., Ex. B, C.

Plaintiffs argue that while the Court set deadlines for plaintiffs to serve initial discovery requests and to move to compel based on those initial requests, the Court did not issue any directive precluding plaintiffs from serving appropriate follow up discovery requests based on newly discovered evidence. See Pl's Ltr., at 4. Plaintiffs argue that the Court was aware that the initial stages of discovery would yield additional evidence warranting further inquiry, and cite the Court's approval of their previous supplemental discovery request, based on newly discovered information, as further indication that written discovery has not closed. See id. at 4-5.

Plaintiffs are correct. The Court's July 31, 2018 deadline did not mark the close of written discovery. It was, as the Court wrote at the time, the deadline for Saudi Arabia's production of "an initial round of documents." ECF No. 4009. The Court's statement that the parties should meet and confer regarding "the appropriate scope of any further jurisdictional discovery" further suggests that the Court contemplated additional discovery at that time. See id. As plaintiffs accurately recount, the Court ordered Saudi Arabia to conduct limited additional searches in the Court's November 25, 2019 Opinion and Order. The Court also recently ordered Saudi Arabia to conduct supplemental discovery regarding a Saudi official in the Court's January 3, 2020 Opinion and Order filed under seal. While written discovery is nearly complete, these numerous orders suggest that the door, at this time, remains partially open. Consideration of the merits of plaintiffs' claims is therefore warranted.

### B. Plaintiffs' Requests Are Not Untimely

Saudi Arabia argues that plaintiffs' October 10, 2019 discovery requests regarding Jarrah should be denied because there is no reason why plaintiffs could not have sought this information in their earlier requests for discovery. See Def's Ltr., at 2. Saudi Arabia cites plaintiffs' October 10, 2018 supplemental discovery requests regarding Jarrah, and plaintiffs'

5

October 26, 2018 letter to the Court describing how Jarrah "fit the description of the person described in the 2012 FBI Report" who purportedly "tasked al-Thumairy and al-Bayoumi with assisting the hijackers." Plaintiff's October 26, 2018 Letter, at 1, 3. According to Saudi Arabia, plaintiffs had reason in October 2018 to seek all discovery related to Jarrah. See Def's Ltr., at 3.

Plaintiffs respond that they have been diligent seeking evidence concerning the third main subject of the FBI sub-file investigation, now known to be Jarrah, from the beginning of discovery. See Pl's Ltr., at 1. These supplemental discovery requests are entirely appropriate, they argue, given the recent disclosure of Jarrah's status as the third main subject of the FBI's investigation, as well as necessary because Saudi Arabia evaded providing evidence concerning Jarrah in response to plaintiffs' earlier discovery requests. See id. Plaintiffs argue that Saudi Arabia has produced only 21 pages of documents about Jarrah's work activities over the relevant five-year period, and has not produced a single record about his activities during the year 2000. See id. at 4.

The Court agrees with plaintiffs that further discovery into Jarrah may be warranted owing to the September 12, 2019 declassification of his name in the FBI Summary Report. Many of the supplemental discovery requests that plaintiffs have currently made would have been deemed to be entirely speculative by the Court had they been made before it was revealed that Jarrah was the third main subject of the FBI's sub-file investigation. Plaintiffs' October 2018 set of supplemental discovery demands further indicate that the results of an initial round of discovery may lead to further requests for documents, and the Court will not categorically rule against plaintiffs' current set of supplemental discovery requests simply because plaintiffs did not ask every conceivable discovery question regarding Jarrah at the initial stage of discovery. The Court will therefore consider the merits of plaintiffs' current set of supplemental discovery

requests in light of the September 12, 2019 declassification of Jarrah's name in the FBI Summary Report, Saudi Arabia's September 25, 2019 and October 4, 2019 productions, and other newer evidence such as plaintiffs' expert Bassem Youssef's May 2019 and September 2019 declarations.

## II. Plaintiffs' Discovery Requests Are GRANTED in Part and DENIED in Part

### A. Jarrah's Phone Records

Plaintiffs seek the number, name of service provider, name of the subscriber, and address for any work, home, or mobile phone used by Jarrah between January 1, 1998 and September 11, 2002. See Pl's Ltr., at 7. Plaintiffs argue that this information is readily available to Saudi Arabia because Jarrah still works for the Kingdom. Such information is also necessary to identify relevant calls between Jarrah, Bayoumi, Thumairy, and other key actors in the raw phone records provided by the FBI and third-party telecommunication companies that provided service to Bayoumi and Thumairy. Such communications, plaintiffs contend, are relevant to the overarching agency questions for which the Court has authorized discovery. See id. at 2.

Saudi Arabia does not address the substance of plaintiffs' request, responding only that plaintiffs had reason in October 2018 to seek any discovery regarding Jarrah and his phone usage. See Def's Ltr., at 3. Plaintiffs' failure to do so, Saudi Arabia argues, "falls far short of the diligence needed" to justify reopening discovery. In re General Motors, No. 14-MC-2543 (JMF), 2016 WL 2766654, at *2 (S.D.N.Y. May 12, 2016).

As the Court addressed above, discovery has not yet closed. Considering plaintiffs' current discovery request in light of the available record, the Court concludes that plaintiffs have not articulated a sufficient explanation as to why they should be authorized to pursue discovery into Jarrah's phone records.

7

The September 12, 2019 declassification of Jarrah's name does not, in and of itself, justify an authorization of discovery into Jarrah's phone records. The redacted portions of the report offer no indication that Jarrah contacted Thumairy, Bayoumi, or other key actors by phone. Conversely, Saudi Arabia has already searched for documents concerning any purported supervisory relationship between Jarrah and Thumairy or Bayoumi, and found no documents concerning a supervisory relationship between them. See Saudi Arabia App'x., at 6. Plaintiffs' assertions that Saudi Arabia's production was insufficient are undercut by the fact that Saudi Arabia agreed to "pull every document . . . that even reference[s] [Jarrah]" at the consulate and embassy, and represented that plaintiffs "are going to get his day-to-day activity also because we also agreed to pull every reference to Mr. Al Jarrah." February 26, 2019 Hearing, at 65-68. While Saudi Arabia may not have produced the documents plaintiffs were hoping for, the evidence suggests that Saudi Arabia undertook a thorough search, identifying a combined 150 pages of documents as responsive to plaintiffs' document requests relating to Jarrah. The Court does not know whether Saudi Arabia in fact complied in full with its broad February 26, 2019 promises; but the Court cannot authorize a request for further discovery on the fact that a prior round of discovery did not yield the hoped-for results.

Plaintiffs further contend that Saudi Arabia has previously opposed discovery as to Jarrah. To support this argument, plaintiffs cite Saudi Arabia's November 2, 2018 letter, which suggested that Jarrah had no connection with Thumairy before 2002 and 2003. See Saudi Arabia's November 2, 2018 Opposition Letter, at 3. By contrast, plaintiffs argue, Saudi Arabia knew at the time that ███████████████████████████████████████████████ ███████████, suggesting a pre-2002 relationship. See Plaintiffs' October 26, 2018 Letter, Ex. 10. But while plaintiffs correctly identify ██████████ in the above-referenced letter, ████

8

███████████████████████████████████. The appearance of ████████ indicates only that ████████████████████████████████, not that Jarrah had any personal relationship with Thumairy in the years before September 11, 2001. <u>See</u> <u>id.</u>, at Ex. 10. The appearance of ████████ on a document ███████████ is not sufficient for the Court to conclude that Saudi Arabia has misconstrued the facts or "obstructed" the discovery process.

Plaintiffs further claim that Saudi Arabia misleadingly suggested that there was no basis for plaintiffs' argument that Jarrah had authority over Thumairy and may have tasked him to aid the hijackers. <u>See</u> Pl's Ltr., at 5. Plaintiffs support this argument by claiming that they now have evidence that Saudi Arabia was specifically aware before discovery began that Jarrah had been implicated by U.S. investigations. <u>See</u> <u>id.</u> Plaintiffs cite the declaration of Bassem Youssef, a former FBI Unit Chief, who testified that it is "almost a certainty" that the FBI briefed Saudi Arabia about its 2012 Summary Report and that Saudi Arabia knew well before the lawsuit commenced that Jarrah was the third main subject of the investigation. <u>See</u> Plaintiffs' November 6, 2019 Letter Response, at 1-2. But the Court cannot take Youssef's conclusory opinion that it is "almost a certainty" that the FBI briefed Saudi Arabia, without any further support, as evidence that this is in fact what happened.

The Court has previously considered plaintiffs' requests for the search of phone records in the Court's July 22, 2019, and November 25, 2019 opinions. On July 22, 2019, the Court denied plaintiffs' requests to search Sowailem's phone records for phone calls with Bayoumi, despite the fact that a redacted FBI report seemed to indicate that Bayoumi had made thirty calls to Sowailem, because it was difficult to determine with certainty who actually called Sowailem's number and there was no evidence that Saudi Arabia's prior search was insufficient. <u>See</u> July 22, 2019 Opinion and Order, at 51-52. On November 25, 2019, the Court again denied plaintiffs'

9

request, rejecting plaintiffs' argument that the Court erred by relying on Saudi Arabia's unsworn statements that it conducted reasonable searches, and noting that the fact that ▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ does not suggest that Saudi Arabia's search was insufficient. See November 25, 2019 Order and Opinion, at 18-19.

Unlike the case of Sowailem, where there was some indication that ▆▆▆▆▆▆ Bayoumi may have contacted him by phone, here there is no indication that Jarrah and Thumairy or Bayoumi called one another. Without any specific evidence suggesting that Jarrah spoke by phone with any of the other main actors in an effort to assist the hijackers, the Court must GRANT Saudi Arabia's request for a protective order regarding Jarrah's phone information. This order, however, does not preclude further inquiry on the subject at a deposition.

### B. Saudi Arabia's Investigative Files

Plaintiffs' supplemental discovery requests ask for any and all documents (1) received from the United States concerning Jarrah, (2) provided to the United States concerning Jarrah, and (3) relating to the inquiry conducted by the Kingdom of Saudi Arabia in relation to any requests for information from the United States concerning Jarrah. See Pl's Ltr., Ex. B. The interrogatories, in addition to the phone information discussed above, request answers to (2) whether Saudi Arabia received any request for information or inquiry concerning Jarrah from the United States, and (3) whether Saudi Arabia was aware, prior to September 12, 2019, that Jarrah had been implicated by any U.S. investigation relating to the September 11th attacks. Requests (2) and (3) also contain numerous follow-up questions. See Pl's Ltr., Ex. A.

Plaintiffs argue that some of these requests seek to determine whether Saudi Arabia ratified Jarrah's conduct by appointing him to positions within the embassy after the United States allegedly notified Saudi Arabia of Jarrah's involvement in directing Bayoumi and

10

Thumairy to assist the hijackers. The Court has previously held that potential ratification of an agent's work is relevant to the Court's jurisdictional inquiry, authorizing discovery into ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. See July 22, 2019 Opinion and Order, at *33 (citing Reiss v. Societe Centrale du Groupe Des Assurances Nationales, 185 F. Supp. 2d 335, 338 (S.D.N.Y. 2002) ("[A] party's ratification, that is, subsequent approval of an agent's performance, may support a finding of jurisdiction under the FSIA.")).

The nature of plaintiffs' supplemental discovery requests suggests that they would involve a search of Saudi Arabia's intelligence agencies and files. In the Court's July 22, 2019 Opinion and Order, the Court advised that it will address demands for searches of Saudi Arabia's intelligence services on a case by case basis. See July 22, 2019 Opinion and Order, at 9. The burden or expense of a discovery demand cannot exceed its likely benefit. See Fed. R. Civ. P. 26(b)(1). This is particularly true where any undue burden would be imposed on a potentially immune sovereign defendant. For these reasons, the Court held that Saudi Arabia must search additional locations only if the evidence suggests that a particular group of responsive documents may be located there. See Transcript of May 24 Conference, ECF No. 4015, at 17, 25.

Given the allegations identified as discoverable by Judge Daniels and the limited nature of jurisdictional discovery under the FSIA, the Court ruled on July 22, 2019 that broad searches of the General Intelligence Directorate (GID) or the Presidency of State Security (PSS) are inappropriate. See July 22, 2019 Opinion and Order, at 9. Even in merits discovery, international comity requires the Court to demonstrate due respect for "any sovereign interest expressed by a foreign state." Catalano v. BMW of North America, LLC, No. 15-CV-4889 (KBF), 2016 WL 3406125, at *6 (S.D.N.Y. June 16, 2016) (quoting First Am. Corp. v. Price Waterhouse LLP, 154 F.3d 16, 21 (2d Cir. 1998)). These considerations are particularly important "when it comes

to a foreign sovereign's diplomatic and military affairs." Aurelius Capital Master, Ltd. v. Republic of Argentina, 589 F. App'x. 16, 18 (2d Cir. Dec. 23, 2014). As a result, the Court will order Saudi Arabia to search its intelligence agencies only if, weighing the interests of comity, "actual . . . contemporaneous evidence" suggests responsive documents may exist. See Transcript of May 24 Conference, at 27; Freund v. Republic of France, 592 F. Supp. 2d 540, 563 (S.D.N.Y. 2008) ("[Plaintiffs'] requests raise serious comity concerns insofar as they would require the Court to order a foreign sovereign . . . to provide access to their sealed archives.").

The Court has held in its July 22, 2019 Opinion and Order and November 25, 2019 Opinion and Order, however, that Saudi Arabia does not have blanket protection from discovery of its intelligence agencies. Rather, consistent with Judge Daniels's March 28, 2018 Order, the Court seeks evidence that responsive documents may exist before encroaching Saudi Arabia's legitimate interests as a foreign sovereign potentially immune from the Court's jurisdiction. See July 22, 2019 Order and Opinion, at 11; November 25, 2019 Order and Opinion, at 12-13. To this end, the Court's May 24, 2018 initial discovery order authorized searches for documents obtained and complied by the PSS through December 31, 2002, after the parties indicated that the PSS likely serves as a central repository for the compilation of relevant records. See May 24, 2018 Hearing, at 19-20.

Given the nature of the information being asked for, the Court understands the requests outlined in this section to arise specifically from the September 12, 2019 declassification of Jarrah's name in the FBI Summary Report. While plaintiffs do not explicitly outline the basis for their belief that the United States and Saudi Arabia shared any information or intelligence regarding Jarrah after 9/11, it stands to reason that plaintiffs base their claims on the revelation that the FBI investigated Jarrah as a main subject after 9/11, and Bassem Youssef's statements

that "[i]t is . . . expected that the FBI would have briefed their Saudi counterparts on the information/intelligence in the 2012 Summary Report, including the involvement of al-Bayoumi, al-Thumairy, the name of the subject(s), and the evidence involving all of the subjects. In my opinion, it is almost a certainty that such a briefing took place, and that Saudi Arabia knows the name of the subject(s) and the evidence." Youssef Decl. at ¶ 46.

On the record before the Court, plaintiffs have not made a sufficient showing that the declassification of Jarrah's name warrants the full investigation into Saudi Arabia's intelligence files that they are requesting. Regardless of whether the statements in the 2012 FBI Summary Report represent an investigative theory, see Declaration of Michael C. McGarrity at ¶ 22, or indicate that the FBI has direct proof of Jarrah's involvement, see Youssef Supp. Decl. at ¶ 15, plaintiffs have presented no documentation suggesting that the United States shared information regarding Jarrah with Saudi Arabia. While the Court agrees that it is plausible that the U.S. government shared this information, Bassem Youssef's declaration that this "almost" certainly occurred is not sufficient to warrant a search of Saudi Arabia's intelligence files. As the Court has ruled previously, the Court cannot rely on the unsupported conclusions of others to order additional discovery. See November 25, 2019 Opinion and Order, at 13. Plaintiffs need to show the Court some evidence that the United States and Saudi Arabia shared any information regarding Jarrah before the Court can authorize discovery into the nature and details of those alleged communications.

Recognizing that it is plausible that this information sharing occurred, and recognizing that the question of whether Saudi Arabia knew about the FBI's investigation into Jarrah is relevant to the issue of Saudi Arabia's ratification of the hijackers' activities, the Court GRANTS interrogatory 2(a), seeking the date of any request for information received by Saudi

13

Arabia from the United States, and 3(a) the earliest date by which Saudi Arabia became aware that Jarrah had been implicated by a United States investigating relating to the September 11th attacks. But because plaintiffs have presented no evidence at this time that any information sharing regarding Jarrah in fact took place, the Court DENIES, without prejudice, the remaining questions in the interrogatories and all three of plaintiffs' requests for documents.

## CONCLUSION

Saudi Arabia's request for a protective order is GRANTED in part and DENIED in part. Saudi Arabia is directed to respond to the two interrogatories identified in the Court's Opinion within 30 days. Saudi Arabia's request to set a briefing schedule is DENIED as moot.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   January 7, 2020
         New York, New York