USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/27/2020

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

**In re:**

**TERRORIST ATTACKS ON SEPTEMBER 11, 2001**

-----------------------------------------------------------X

**03-MDL-01570 (GBD)(SN)**

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

On May 31, 2019, the Plaintiffs' Executive Committees ("PECs" or "Plaintiffs") filed an initial motion to compel the non-party Federal Bureau of Investigation ("FBI") to produce documents from its investigation of Saudi Government officials' assistance to the 9/11 hijackers. The parties' filings address two issues: the production of documents concerning FBI investigations of four Saudi officials, and the production of the 2012 FBI Summary Report. The parties later filed additional materials regarding the 2012 Summary Report. See, e.g., ECF No. 5140, Second Memorandum of Law in Opposition to Plaintiffs' Motion to Compel FBI to produce documents. This Opinion and Order will address only the first issue briefed in Plaintiffs' initial motion to compel: the production of documents concerning FBI investigations of four Saudi officials. A separate Opinion and Order on the 2012 Summary Report will be forthcoming.

The Court will first discuss the relevant background and analyze the applicable standard of review. Then the Court will address the two substantive issues presented by Plaintiffs' motion to compel. The Court will first discuss whether Plaintiffs' non-party discovery requests regarding the four Saudi officials seeks information discoverable from the FBI, concluding that further discovery is warranted regarding Abdullah al-Jaithen. The Court will then analyze whether the FBI would suffer an undue burden by conducting additional searches for information regarding

Jaithen, and concludes that no undue burden would result. Therefore, pursuant to the discussion below, the initial motion to compel the FBI to produce documents concerning its investigations of four Saudi officials is GRANTED in part and DENIED in part.[1]

**BACKGROUND**

On March 28, 2018, the Honorable George B. Daniels authorized "limited and targeted jurisdictional discovery" into "whether and to what extent Thumairy, Bayoumi, and their agents took actions in 2000, at the direction of more senior Saudi officials, to provide assistance to Hazmi, Mihdhar, and other 9/11 hijackers." ECF No. 3946, Memorandum Decision and Order ("March 28 Order"), at 23. On April 10, 2018, Plaintiffs served on the FBI a subpoena and a request pursuant to the Department of Justice's so-called "Touhy" regulations, 28 C.F.R. §§ 16.21-16.29, for production of investigatory and other records. See Declaration of Sarah S. Normand, dated June 21, 2019 ("Normand Decl."), Ex. A.

The Touhy request and subpoena sought ten categories of records from the FBI, including any and all records (including PENTTBOM records, the FBI's investigation of the September 11, 2001 attacks) referring or relating to Omar al-Bayoumi, Fahad al Thumairy, Mohdar Abdullah, Omar Abdi Mohamed, Khalid Sowailem, the King Fahd Mosque, and the Western Somali Relief Agency, as well as any and all records referring or relating to any person(s) referenced in the 2012 FBI Summary Report as "subjects" of the investigation described in that report. Normand Decl., Ex. A; see also id., Ex. B, at 1-2.

On May 2, 2018, the government provided an interim response to the Touhy request and objections to the subpoena. Normand Decl., Ex. B. The objections set forth in this interim

[1] This Opinion & Order has been filed under seal in its entirety. The Court will issue a redacted version following the resolution of Plaintiffs' Rule 72 objections to the Court's decision granting in part Saudi Arabia's motion to seal. See ECF No. 4696.

response have been expressly incorporated in the government's final response on April 13, 2020. See Fourth Supplemental Declaration of Sarah S. Normand, dated April 13, 2020, Ex. S. The interim response discussed numerous objections to the Touhy request and subpoena, including relevance and proportionality objections because the categories of records sought exceeded the limited scope of jurisdictional discovery authorized by the Court and would place an undue burden on the FBI as a non-party. Normand Decl., Ex. B, at 3-7. After the parties failed to reach an agreement to produce the documents listed in the Touhy request and subpoena, Plaintiffs on September 26, 2018, sent the Department of Justice ("DOJ") a letter, together with a Declaration of Catherine Hunt, which included as Appendix 1 a priority list of FBI documents for production. See Declaration of Sean P. Carter, dated May 31, 2019 ("Carter Decl."), Ex. 5.

The first and second tranches of documents the FBI produced in response to the subpoena and Touhy request in November and December 2018 contained documents responsive to Plaintiffs' Appendix 1 list. See Second Supplemental Declaration of Catherine M. Hunt, dated July 9, 2019 ("Hunt Second Supp. Decl.") at ¶ 6. On January 2, 2019, Plaintiffs provided the FBI with an additional list of documents that were of priority to Plaintiffs. See Carter Decl., Ex. 7. In an April 2, 2019 letter, the FBI advised Plaintiffs that "the FBI did not—and does not intend to—undertake a new search based on Appendix 1 to the Hunt declaration." Carter Decl., Ex. 9, at 4. In the April 2, 2019 letter, the FBI stated as an example that "Judge Daniels denied discovery as to Omar Abdi Mohamed, and Magistrate Judge Netburn denied discovery as to Abdullah al-Jraithen, Adel Mohamed al-Sadan, and Mutaeb Abdelaziz al-Sudairy. . . the FBI does not intend to undertake additional searches for records regarding individuals as to whom the Court has ruled that jurisdictional discovery is not appropriate." Id. The present motion seeks to compel the FBI to conduct additional searches and process records regarding these four listed individuals.

## LEGAL STANDARD

### I. The Federal Rules Provide the Appropriate Standard of Review

Plaintiffs contend that the FBI's obligations in response to Plaintiffs' subpoena are governed by Federal Rules of Civil Procedure 26. See Memorandum of Law in Support of Plaintiffs' Initial Motion to Compel the Federal Bureau of Investigation ("Pl's Br.") at 7. Pursuant to Rule 26, Plaintiffs are entitled to discovery concerning:

> Any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the party's access to relevant information, the party's resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). The FBI disagrees and contends that the Court should review the FBI's discovery response under the Administrative Procedure Act's ("APA") arbitrary and capricious standard, under which "the reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . . ." 5 U.S.C. § 706(2)(A). See Memorandum of Law of Non-Party the Federal Bureau of Investigation in Opposition to Plaintiffs' Motion to Compel ("FBI Br."), at 12.

"[A]s an attribute of sovereign immunity, the United States and its agencies may not be subject to judicial proceedings unless there has been an express waiver of that immunity." United States EPA v. General Elec. Co. ("EPA I"), 197 F.3d 592, 597 (2d Cir. 1999), modified on other grounds, 212 F.3d 689 (2d Cir. 2000) ("EPA II"). The Second Circuit Court of Appeals has held that "the only identifiable waiver of sovereign immunity that would permit a court to require a response to a subpoena in an action in which the government is not a party is found in the APA." Id. at 598. Specifically, § 702 of the APA, 5 U.S.C. § 701 *et. seq.*, provides, in pertinent part:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702. The APA "allows the enforcement of a non-party subpoena duces tecum for discovery against the government through a motion to compel compliance." EPA I, 197 F.3d at 599. The Second Circuit has left undecided whether § 706 of the APA or the Federal Rules provides the appropriate standard of review when a challenge is brought by a motion to compel. See EPA II, 212 F.3d at 689-90; accord In re S.E.C. ex rel. Glotzer, 374 F.3d 184, 190 (2d Cir. 2004). Other Circuits are divided on the question. Some have held that APA § 706 does not apply. See Exxon Shipping Co. v. United States Dep't of Interior, 34 F.3d 774, 778-79 (9th Cir. 1994); see also Linder v. Calero-Portocarrero, 251 F.3d 178, 180-81 (D.C. Cir. 2001). Others have held that APA § 706 is the appropriate standard. See COMSAT Corp. v. National Sci. Found., 190 F.3d 269, 277 (4th Cir. 1999); see also Moore v. Armour Pharm. Co., 927 F.2d 1194, 1197 (11th Cir. 1991).

Courts in this Circuit have approached this problem in different ways. At least one court has applied the APA abuse of discretion standard. See In re Sept. 11 Litig., 621 F. Supp. 2d 131, 144-45 (S.D.N.Y. 2009). Another has concluded that the APA standard of review is inapplicable. See In re PE Corp. Securities Litigation, No. 03-CV 705 (CFD) (TPS), 2005 WL 806719 (D. Conn. Apr. 8, 2005). In some cases, the parties' positions help the court determine which standard to use. See Moran v. Pfizer, Inc., No. 99-CV-9969 (WHP) (HBP), 2000 WL 1099884 (S.D.N.Y. Aug. 4, 2000) (applying the APA standard after plaintiffs conceded that the court should apply that standard); see also Adler v. United States Dep't of Justice, No. 18-CV-2188

(PAC), 2018 WL 4571677 (S.D.N.Y. Sept. 24, 2018) (applying the APA standard where plaintiffs relied on the APA and not the Federal Rules).

The Second Circuit has observed that "some of our sister circuits have affirmatively held that APA § 706 does not apply to motions to compel agency compliance with subpoenas." In re S.E.C. ex rel. Glotzer, 374 F.3d at 191 (citing Exxon Shipping Co., 34 F.3d at 778-79). In Exxon, the Ninth Circuit Court of Appeals stated:

> We acknowledge the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations. However, we are confident that district courts can, and will, balance the government's concerns under the general rules of discovery. The Federal Rules of Civil Procedure explicitly provide for limitations on discovery in cases such as this. Rule 26(c) and Rule 45(c)(3) give ample discretion to district courts to quash or modify subpoenas causing "undue burden."

Id. at 779. The Court agrees with the Ninth Circuit and gives special weight to the fact that the D.C. Circuit, which handles the largest number of federal agency subpoenas, has chosen to apply the Federal Rules as well. See Watts v. S.E.C., 482 F.3d 501, 508 (D.C. Cir. 2007). Under the APA, the scope of review is narrowly "limited to consideration of the decision of the agency . . . and of the evidence on which it was based." United States v. Carlo Bianchi, 373 U.S. 709, 714-15 (1963). The Federal Rules, by contrast, balance a party's need for discovery against the burden placed on a governmental non-party, allowing for a broader analysis of the competing interests. Accordingly, absent instruction otherwise from the Second Circuit, the Court will apply the Federal Rules, specifically Rules 26 and 45, in its analysis of Plaintiffs' motion to compel.

## II. The Parties' Burdens Under the Federal Rules

Subpoenas "issued under Rule 45 of the Federal Rules of Civil Procedure are subject to Rule 26(b)(1)'s overriding relevance requirement." During v. City Univ. of N.Y., No. 05-CV-6992 (RCC), 2006 WL 2192843, at *2 (S.D.N.Y. Aug. 1, 2006). Rule 26(b)(1)-(2) requires

district courts in "[a]ll discovery" to consider a number of factors potentially relevant to the question of undue burden, including: whether the discovery is "unreasonably cumulative or duplicative"; whether the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive"; whether "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; and whether "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(1)-(2).

"The party seeking discovery bears the initial burden of proving the discovery is relevant." Citizens Union of City of N.Y. v. Attorney General of N.Y., 269 F. Supp. 3d 124, 139 (S.D.N.Y. Sept. 29, 2016). If the party issuing the subpoena establishes the relevance of the materials sought, the burden then shifts to the movant to demonstrate an undue burden. See Griffith v. United States, No. M8-85 (JFK), 2007 WL 1222586, at *2 (S.D.N.Y. Apr. 25, 2007). "Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed." Night Hawk Ltd. v. Briarpatch Ltd., No. 03-CV-1382 (RWS), 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003). The trial court has broad discretion to determine whether a subpoena imposes an undue burden. See Jones v. Hirschfeld, 219 F.R.D. 71, 74 (S.D.N.Y. 2003).

## III. Rule 45's Undue Burden Standard as Applied to Requests to a Governmental Non-Party

The Rule 45 "undue burden" standard requires district courts supervising discovery to be generally sensitive to the costs imposed on non-parties. See, e.g., Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998) ("concern for the unwarranted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in Rule 45

inquiry); see also Fed. R. Civ. P. 45(d)(2)(B)(ii) (a court order to compel compliance "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance"). Discovery under Rules 26 and 45 must properly accommodate "the government's serious and legitimate concern that its employees not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations." Exxon Shipping, 34 F.34 at 779.

Further, "[i]t is clear from the Department of Justice regulations governing the disclosure of confidential information, as well as the common law doctrine in Touhy and the litany of succeeding case law, that the United States may restrict the release of its information." Edwards v. United States Dep't. of Justice, 43 F.3d 312, 317 (11th Cir. 1994). "[T]he decision about production rests with the agency, based on the factors provided in [the agency's] Touhy regulations. Even if the information [the party] seeks is relevant to the underlying litigation, it is not automatically entitled to the [documents] it has requested." Agility Public Warehousing Company K.S.C.P. v. United States Dep't of Defense, 246 F. Supp. 3d 34, 44 (D.D.C. 2017). During the AIDS epidemic, a court found that "plaintiffs' interest in [the requested information] simply cannot compare to the government's interest in maximizing the use of its limited resources in dealing with a national health crisis." Moore, 927 F.2d at 1197-98. To this end, "the court [may] take steps to relieve a nonparty of the burden of compliance even when such accommodations might not be provided to a party." Wertheim Schroder & Co. v. Avon Products, No. 91-CV-2287 (PKL), 1995 WL 6259, at *6 (S.D.N.Y. Jan. 9, 1995).

## DISCUSSION

### I. Determining Whether Plaintiffs Seek Discoverable Information Regarding the Four Saudi Individuals

#### A. Abdullah al-Jaithen a/k/a Abdullah A.S. al-Jraithen

The FBI argues that the PECs cannot compel production of documents from the FBI, a non-party and a sovereign, that the PECs are precluded from seeking from the defendant, the Kingdom of Saudi Arabia. FBI Br., at 16. The FBI cites the Court's November 29, 2018 Order, ECF No. 4261, denying the PECs' supplemental document requests regarding Jaithen. See id. Since this motion to compel was filed, the Court has ruled on Plaintiffs' motion to vacate the Court's November 29, 2018 Order and authorized supplemental discovery regarding Jaithen. See January 3, 2020 Opinion and Order ("January 3 Opinion"), at 4-7. Specifically, the Court ordered supplemental discovery to verify plaintiffs' allegation that Jaithen, a MOIA official senior to Thumairy, traveled from Saudi Arabia to meet with Bayoumi, an employee of an unrelated Saudi ministry, shortly before the hijackers arrived, [redacted] [redacted]. Id., at 7. Accordingly, the Court rejects the FBI's argument that the PECs are expanding jurisdictional discovery by requesting non-party document discovery into Jaithen and finds that non-party discovery into Jaithen is relevant to the FSIA immunity determination.

#### B. Adel Mohamed al-Sadhan and Mutaeb Abdelaziz al-Sudairy

The FBI has similarly declined to conduct additional searches for documents regarding Sadhan and Sudairy because the Court rejected the PECs' request to include them within the scope of jurisdictional discovery against the Kingdom. See ECF No. 4261, November 29, 2018 Order. The Court upheld its prior decision denying discovery into Sadhan and Sudairy in its January 3, 2020 Opinion and Order. See January 3 Opinion, at 7-10. The FBI argues that the

PECs cannot compel the production of documents from the FBI, a non-party and sovereign, that they are precluded from seeking from the defendant, the Kingdom of Saudi Arabia. See FBI Br., at 16.

The Court finds the FBI's argument that the PECs cannot compel documents from a non-party that they are precluded from seeking from the defendant to be without merit. The Court in this litigation has allowed third-party discovery broader than that authorized against defendants. See In re Terrorist Attacks on September 11, 2001, 689 F. Supp. 2d 552, 559 (S.D.N.Y. 2010) (denying plaintiffs' request that the Saudi National Commercial Bank ("NCB") be required to produce documentation concerning its banking relationships in the United States, but permitting third-party discovery of seven domestic banks for the records of 254 potential account holders, one of which was NCB). But the PECs are not entitled to seek discovery from the FBI that goes beyond the bounds of jurisdictional discovery that Judge Daniels authorized in this case. Judge Daniels allowed "Plaintiffs limited jurisdictional discovery . . . [which] shall proceed in a prompt and expeditious manner by focusing *only* on those allegations of specific facts described [in pages 19-24 of that opinion] relevant to the FSIA immunity determination." March 28 Order, at 5 (emphasis added). Accordingly, the question before this Court is whether plaintiffs have alleged specific facts regarding Sadhan and Sudairy relevant to the FSIA immunity determination in this case.

Sadhan and Sudairy were MOIA propagators living in the United States between 1998 and 2002. See Supplemental Declaration of Catherine M. Hunt, Dated May 30, 2019 ("Supp. Hunt Decl."), Ex. 16, at 559.



[redacted] See Id., Ex. 7, [redacted] Plaintiff's September 9, 2019 Letter ("Sept. 9 Ltr."), Ex. 1, [redacted] Ex. 3, [redacted]

In addition, a 2015 FBI report stated that Bayoumi "[a]ssisted" Sadhan and Sudairy while they were in San Diego. Supp. Hunt Decl., Ex. 13, at 101. Other documents support this assertion. Bayoumi [redacted] See Sept. 9 Ltr., Ex. 2[redacted] According to Plaintiffs, [redacted] Id. [redacted] Sept. 12 Ltr., Ex. D. While acting as propagators in California, Sadhan and Sudairy were [redacted] See Supp. Hunt Decl., Ex. 15, at 6903.

This evidence connects Sadhan and Sudairy to Bayoumi and Thumairy. But Plaintiffs fail to provide specific allegations that either official assisted Bayoumi or Thumairy in their alleged efforts to support the hijackers. Plaintiffs have argued that Sadhan and Sudairy [redacted], and that Bayoumi arranged for Sadhan and Sudairy to live in the same five-room boarding house as the hijackers during the summer of 2000. See January 3 Opinion, at 8. The Court found, however, that the evidence suggests that Sadhan and Sudairy [redacted] and that the document production indicates that Sadhan and Sudairy were in San Diego [redacted], not the summer of 2000, and presents no evidence that Bayoumi arranged for Sadhan and Sudairy to live in the same five-room boarding house as the hijackers. See id., at 8-10.

---

[2] Saudi Arabia disputes the accuracy of plaintiffs' translation. See September 22, 2019 Letter, at 2 (Sept. 12 Ltr."). This dispute does not affect the Court's analysis.



The Court is aware that Plaintiffs requested leave to supplement the record on January 17, 2020, with .[3] See January 17, 2020 Motion for Reconsideration, at 1; see also Saudi Arabia's Opposition to Plaintiffs' Motion for Reconsideration, at 4. But the Court has already acknowledged that Plaintiffs have identified evidence connecting Sudairy to Bayoumi, See January 3, Opinion, at 7-8. The fact that Bayoumi, who knew Sudairy from his visit to Sudairy, who no longer lived in California, does not suggest that Sadhan and Sudairy had any connection with the hijackers. Unlike Bayoumi's contacts with Jaithen, who seemingly traveled from Saudi Arabia to meet with Bayoumi, an employee of an unrelated Saudi ministry, shortly before the hijackers arrived, have a reasonable alternative explanation. See January 3, 2020 Opinion, at 6-7 (noting that Saudi Arabia offers no explanation for [Bayoumi's] interaction with Jaithen). Plaintiffs have still made no specific allegation, supported by the factual record, that Sadhan and Sudairy were involved in assisting the hijackers.

Additionally, the Court has expressed concern about letting ongoing document findings determine the limits and boundaries of discovery:

[3] Plaintiffs have not expressly asked the Court to consider the impact of this evidence on their initial motion to compel the FBI, but the Court would be remiss in failing to address this new evidence here. However, the Court's discussion of these records here and the conclusions the Court reaches should not necessarily be interpreted to predetermine how the Court might rule on Plaintiffs' January 17, 2020 Motion for Reconsideration and Request for Leave to Supplement the Record Pursuant to Local Rule 6.3 of the Court's January 3, 2020 Opinion.

> One concern I have . . . is that you will be given a tranche of information from the FBI . . . in the coming months. What is to stop you from arguing every month that I set a motion to compel deadline that you think you are getting more documents and you want to review those? . . . There is probably an endless source of information you can be seeking here and at a certain point we need to move forward.

October 13, 2018 Hr'g Transcript, at 29-30. To be sure, the Court has considered newly proffered evidence "to avoid a manifest injustice" even though Plaintiffs had earlier "failed to supplement the record . . . in a timely manner." November 25, 2019 Opinion and Order, at 17. In the Court's November 25, 2019 Opinion and Order, the Court considered evidence of Bayoumi's pay records because it was "an important component of Plaintiffs' claims" and was "specifically cited by Judge Daniels as a subject of jurisdictional discovery." Id. By contrast, Judge Daniels found that a MOIA propagator was outside the limits of jurisdictional discovery despite the fact that Thumairy allegedly supervised him. See March 28 Order, at 30-31 (denying discovery into Omar Abdi Mohammed even "assuming" that "Thumairy supervised Mohamed's missionary activities" because Plaintiffs had not demonstrated that a reasonable basis for jurisdiction exists).

Accordingly, the Court DENIES plaintiffs' motion to compel the FBI to undertake additional searches for documents relating to Sadhan and Sudairy.

**C. Omar Abdi Mohamed a/k/a Omar al-Kateeb**

Plaintiffs next ask the Court to compel the FBI to conduct additional searches for Omar Abdi Mohamed. Mohamed worked for Saudi Arabia as a MOIA propagator in San Diego from 1995 through 2004. See Supp. Hunt Decl., Ex. 23, at 2, 6.



. See id., Ex. 15, at 6903. . See id., Ex. 7, the Western Somali Relief Agency, the charity founded by Abdi Mohamed and which he used as a

cover to launder money for other charities associated with al-Qaeda. See id., Ex. 27, at 1, 5; Ex. 23, at 2; Ex. 25. Abdi Mohamed was the subject of investigations by the FBI, INS, and the 9/11 Commission, and the government declined to pursue criminal prosecution of him "due to concerns of diplomatic relations," based on his work for Saudi Arabia. Id., Ex. 24, at 4.

In the Court's March 28 Order, Judge Daniels reviewed the PECs' allegations that Omar Abdi Mohamed "was part of the same Southern California al Qaeda cell as Thumairy and Bayoumi, among others, and that Mohamed provided money-laundering services for al Qaeda at the direction of senior Saudi officials." March 28 Order, at 30. These allegations included evidence that Thumairy "was appointed 'to oversee the propagators working in the State of California.'" Id. at 29-30. Judge Daniels found that this evidence "does not support the inference that Mohamed was part of the cell that Thumairy directed to provide support to the 9/11 hijackers upon their arrival in California. Nor does it suggest, as Plaintiffs argue, that Thumairy, or any other Saudi official, directed Mohamed to deliver funds to al Qaeda." Id. at 30. Judge Daniels denied the PECs' request for jurisdictional discovery with respect to Mohamed, finding that the PECs "must first demonstrate that a reasonable basis for jurisdiction exists based on Mohamed's alleged tortious acts," and that "Plaintiffs' allegations as to Omar Abdi Mohamed come up short." Id. at 31.

Plaintiffs argue that Judge Daniels only denied discovery regarding allegations of Abdi Mohamed's role in a charity money laundering scheme, while discovery regarding Abdi Mohamed's work in California and his work relationships with Thumairy and Bayoumi is relevant to the jurisdictional questions of agency and scope of employment. See Pl's Br., at 13-14. The Court disagrees. Judge Daniels explicitly found that the evidence presented did not "support the inference that Mohamed was part of the cell that Thumairy directed to provide

support to the 9/11 hijackers." March 28 Order, at 30. The fact that Bayoumi had [redacted] Abdi Mohamed [redacted] was plausibly related to Bayoumi's connection with the 9/11 hijackers, does not change the Court's analysis. Plaintiffs do not allege any specific fact that suggests that Abdi Mohamed was part of a cell directed by Thumairy and Bayoumi to assist the hijackers.

Accordingly, the Court DENIES plaintiffs' motion to compel the FBI to undertake additional searches for documents relating to Abdi Mohamed.

## II. Burden on the FBI

The Court next considers whether the motion to compel the FBI to conduct an additional search for documents relating to the specific allegations Plaintiffs have made regarding Jaithen presents an "undue burden" to the FBI under Federal Rule 45. The Court finds that ordering the FBI to undertake this additional discovery does not present an undue burden.

Plaintiffs argue that the burden on the FBI to find and produce the requested documents is minimal. See Pl's Br., at 13. They argue that the records can be located by the FBI within seconds (if they have not been found already), that Plaintiffs have nowhere else to obtain the information, and that the FBI's investigation offers a unique view into the issues at the heart of the jurisdictional inquiry. See id. Plaintiffs' expert Bassem Youssef states in his declaration that the FBI's case management system, Sentinel, is "capable, within seconds, to perform a word search of all documents and communications within the FBI's enterprise system and can, for example, locate any and all documents and communications referencing a particular person or entity within the FBI's entire database system." Declaration of Bassem Youssef, dated May 30, 2019 ("Bassem Decl."), ¶ 14. The FBI "could promptly determine which documents and portions

of documents being requested in the Plaintiff's subpoena are not classified and provide those immediately." Id. ¶ 24. The FBI can also "quickly determine if some of the classified documents contain only one or two items of classified information — and either redact that item of information, or determine that it should be declassified." Id.[4]

The FBI argues that the Touhy request and subpoena would place an extraordinary, disproportionate, and undue burden on the FBI, both in the requests' exceptionally broad scope and insofar as the requests seek production of classified and privileged records as well as the entire investigatory file relating to the FBI's subfile investigation. See FBI Br., at 4 (citing Duel Valentine Declaration, dated June 21, 2019 ("Valentine Decl."), ¶ 4, which states that the subfile investigation is an ongoing counterterrorism investigation involving over 1,000 "serials," or documents placed in the FBI case file).

The FBI has identified a core group of documents potentially relevant to the jurisdictional discovery in this litigation. See id., at 5. With respect to those core records, the FBI has been conducting a line-by-line review of each document to determine whether information in the document is and remains properly classified or is subject to privilege, and is also conducting a declassification review to determine whether any properly classified information should nevertheless be declassified in the FBI's discretion. See id., at 6. This declassification review in particular is painstaking and time-consuming for the FBI, as it includes a review of whether release is permissible under law and policy, whether authority for release needs to be sought from another government agency or foreign government, and whether release might compromise

[4] The FBI argues that some of Youssef's statements should be stricken because they are speculative and are not based on personal knowledge. See FBI Br. at 22. Whether or not Youssef had personal knowledge of the FBI's 9/11 investigation is irrelevant, however, to Youssef's statements regarding the FBI's review of classified documents more generally, for which Youssef's classification guide and mid-level management experiences provide sufficient bases on which to opine. See Youssef Decl. ¶¶ 3, 4, 5, 6.

sensitive sources and methods. See Valentine Decl. ¶ 8. Many of the FBI personnel working on the response to the subpoena have ongoing, regularly assigned investigative and operational duties and responsibilities. See id. ¶ 9.

Because of these burdens, the FBI argues that it should not be required to respond to broad additional discovery requests concerning individuals untethered to the jurisdictional inquiry identified by the Court. See FBI Br., at 1. The FBI has, however, already conducted supplemental searches at the request of the PECs. Additional searches were completed and more interview reports were added to the set of core documents following the submission of Catherine Hunt's September 26, 2018 declaration, the same declaration containing the discovery requests at issue in this motion. See Valentine Decl. ¶ 6. The FBI also conducted additional searches and added documents to the set of core records after receipt of Plaintiffs' January 2, 2019 letter identifying specific documents and categories of documents that Plaintiffs considered especially important for the FBI to include in the core documents. See id. The FBI's expert has also reiterated Youssef's statement that searches in Sentinel "in most instances result in responses virtually instantaneously." Id. ¶ 12. This evidence suggests that compelling the FBI to undertake new additional targeted searches is not unduly burdensome.

Under Rule 26, the Court must weigh Plaintiffs' need for the information against the burden imposed on the FBI, a governmental non-party. The Court finds that additional, targeted FBI discovery into Jaithen is not unreasonably cumulative, cannot be obtained from another more convenient source, and is not, as the Court determined in Section I, outside the scope permitted by Rule 26(b)(1). But the Court must also accommodate the FBI's concern that its personnel are being forced to work on discovery issues at the expense of their ongoing national

security obligations. See Exxon Shipping, 34 F.34 at 779. Furthermore, the FBI is in its right to restrict the release of classified or privileged information. Edwards, 43 F.3d at 317.

The Court is aware that the FBI may not possess any documents relating to Jaithen that can be released. See Valentine Decl. ¶ 11 (noting that the FBI has neither confirmed nor denied whether Jaithen is or was the subject of an FBI investigation). But the Court disagrees with the FBI's characterization that Plaintiffs "effectively ask[] the FBI to confirm or deny whether it has opened investigations regarding those individuals." FBI Br., at 10. Plaintiffs are interested in any relevant documents in the FBI's possession, not confirmation that an individual is or is not under investigation. See Carter Decl., Ex. 5 at App'x 1, Section 5 (explicitly asking for documents concerning Jaithen found, in part, in the cases opened for subjects Thumairy, Bayoumi, Mohdar Abdullah, Mohamed Johar, Smail Mana, and Akram Alzamari). Relevant documents may be found in the case files of any of the aforementioned individuals, the production of which may have no bearing on whether or not the FBI has opened an investigation into Jaithen.

Accordingly, the Court finds that the FBI is compelled to undertake an additional search for and produce any records, including the production of a detailed and if necessary *ex parte* privilege log, that relate to Plaintiffs' allegation that Jaithen traveled from Saudi Arabia to meet with Bayoumi shortly before the hackers arrived, including any relevant documents relating to Jaithen's contacts and activities while in California, as described in Sections 5(a), 5(b), and 5(c) of Appendix 1 of the September 26, 2018 Supplemental Hunt Declaration.

**CONCLUSION**

Pursuant to the analysis above, the Court GRANTS Plaintiffs' motion to compel the FBI to conduct additional searches into Abdullah al-Jaithen. Plaintiffs' request for discovery as to the other three Saudi officials is DENIED. The FBI is ORDERED to complete the search and

production of records regarding Jaithen, and the production of a privilege log as appropriate, within 45 days of this Order or as soon is reasonably practicable during the current health crisis. This Order is restricted to the following case participants: Plaintiffs' Executive Committees, Kingdom of Saudi Arabia, Dallah Avco Trans Arabia, and the Federal Bureau of Investigation.

Plaintiffs' motion for oral argument is DENIED as moot. The Clerk of Court is respectfully directed to terminate the gavel at ECF No. 4677.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED: April 27, 2020
New York, New York