```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

    TERRORIST ATTACKS ON                          03-MDL-01570 (GBD)(SN)
    SEPTEMBER 11, 2001
                                                  OPINION & ORDER

-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/23/2020

**SARAH NETBURN, United States Magistrate Judge:**

On January 22, 2020, the Kingdom of Saudi Arabia ("Saudi Arabia") filed a letter under seal requesting that the Court resolve a dispute between the parties regarding the scope of the search required by the Court's sealed January 3, 2020 Order ("January 3 Order") granting in part and denying in part the motion of the Plaintiffs' Executive Committees ("Plaintiffs") to vacate the November 29, 2018 Order. Separately, Plaintiffs filed a motion to compel production of documents concerning Abdullah Al Jaithen on April 30, 2020. This Opinion and Order resolves both of these motions. The Court GRANTS Saudi Arabia's January 22, 2020 request to limit its searches and GRANTS in part and DENIES in part Plaintiffs' motion to compel.[1]

## BACKGROUND

On March 28, 2018, the Honorable George B. Daniels concluded that Plaintiffs articulated a reasonable basis for the Court to assume jurisdiction over Saudi Arabia. ECF No. 3946, at 4-5. Judge Daniels permitted Plaintiffs to conduct limited jurisdictional discovery regarding two individuals: Fahad al Thumairy and Omar al Bayoumi. Id., at 23.

---

[1] This Opinion and Order has been filed under seal in its entirety. The Court will issue a redacted version following the resolution of Plaintiffs' Rule 72 objections to the Court's decision granting in part Saudi Arabia's motion to seal. See ECF No. 4696.

The Court established procedures to manage the scope of that discovery. ECF No. 4009. Saudi Arabia produced responsive documents, and soon thereafter, Plaintiffs served their first set of supplemental discovery requests. Plaintiffs sought document discovery regarding seven Saudi officials: Abdullah al Jaithen, Musaed al Jarrah, Smail Mana, Adel al Sadhan, Mutaeb al Sudairy, Mohamed al Muhanna, and Sharif Batikhi. See Plaintiffs' October 26, 2018 Letter.

Plaintiffs requested a broad array of discovery. Among other things, they sought documents concerning the officials' travel, compensation, residences within California, tasks and activities, visa records, supervisors and supervisees, and "meeting[s], communication[s], contact[s], transaction[s], or relationship[s]" with seven different individuals or categories of individuals. Id., App. 1, at 1-2. Those persons included: Bayoumi, Thumairy, Khalid al Sowailem, Abdussattar Shaikh, Caysan Bin Don, any officer or employee at the King Fahad Mosque, and any of the 9/11 hijackers. Id., at 2.

The Court authorized supplemental document discovery regarding Jaithen on January 3, 2020. This decision determines the required scope of Saudi Arabia's search and resolves Plaintiffs' motion to compel production of Abdullah Al Jaithen documents.

**DISCUSSION**

I. **Scope of Document Search**

A. **Searches of the Embassy and Consulate**

Plaintiffs allege that Jaithen was an employee of the Ministry of Islamic Affairs ("MOIA"), see January 3 Order, at 4, and that during the relevant time, the travel of MOIA officials inside the United States ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the Saudi Embassy and Consulate. Pls. Ltr., at 1-2.[2] Saudi Arabia argues that there is no concrete allegation that Jaithen

---

[2] Citations to "Pls. Ltr." refer to Plaintiffs' January 27, 2020 Letter; "KSA Ltr." refers to Saudi Arabia's January 22, 2020 Letter; "KSA Reply Ltr." refers to Saudi Arabia's January 29, 2020 Letter; "Pls. Br." refers to Plaintiffs' April

2

ever worked at the Embassy or Consulate or interacted with any employee of either mission. KSA Ltr., at 3.

The Court authorized discovery as to Jaithen based on allegations that Jaithen and Bayoumi interacted ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, staying at the same hotel as Bayoumi, who is not a MOIA employee, without any explanation from Saudi Arabia. See Jan. 3 Order, at 4-7. In determining the scope of discovery, the Court ordered Saudi Arabia to search "an individual's parent agency, as well as any Saudi-controlled locations where the individual worked in the United States." November 25, 2019 Opinion & Order, at 20-21. The Court required Saudi Arabia to conduct searches of the Embassy and Consulate for travel and other records for Jarrah, Mana, and Muhanna because these individuals worked at these locations. Jarrah worked in the office of the Saudi Embassy in Washington D.C., and also worked for a period of time in Los Angeles, California. See July 22, 2019 Opinion and Order ("July 22 Order") at 3. Mana was an employee of the Los Angeles Consulate. See id. at 5. Muhanna, according to Plaintiffs, was a Ministry of Islamic Affairs employee working in Los Angeles who ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Id. The Court found the search of additional locations, however, to be improper. See November 25, 2019 Opinion & Order, at 21 ("Searches of any other agency . . . contravene the Court's obligation to tailor jurisdictional discovery narrowly.").

Despite the fact that Jaithen did not work at the Embassy or Consulate, Plaintiffs point to the fact that the MOIA specifically instructed Jaithen to "cooperate with the employees of the . . . Embassy and best represent the Kingdom." Pls. Ex. 7. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

30, 2020 Motion to Compel; "KSA Br." refers to Saudi Arabia's May 7, 2020 Opposition to Plaintiffs' Motion to Compel; "Pls. Reply" refers to Plaintiffs' May 12, 2020 Reply to their Motion to Compel. All Plaintiffs' Exhibits refer to exhibits filed with Plaintiffs' motion to compel.



Pls. Ex. 4, at KSA 7805. Plaintiffs argue that MOIA's U.S. office monitored propagators visiting the United States and would have been aware of Jaithen's work and in contact with him, ▮

Pls. Br., at 3; Pls. Ex. 9.

Plaintiffs fail to identify, however, any specific documents regarding Jaithen that would necessarily be housed in the Embassy or Consulate. The Court recognizes that the Embassy and Consulate may house related documents, such as  But consistent with the Court's prior opinions, the Court cannot expand the search parameters for Jaithen documents based on mere speculation. The Kingdom has also already searched for and produced every Embassy or Consulate document referencing Bayoumi, Thumairy, Mana, Muhanna, Sowailem, and Jarrah, which would have led to the production of any document reflecting contacts between Jaithen and these individuals. KSA Br., at 3.

The Court must also take the burden imposed on the Kingdom into account. The Kingdom has already conducted three separate rounds of searches at each of these diplomatic missions, which involved a burdensome manual review of hundreds of thousands of Arabic language documents. Id. These searches have been conducted in part by the Kingdom's own native Arabic language readers, an intrusion on Saudi Arabia's legitimate sovereign interests for which the FSIA provides protection. See KSA Reply Ltr., at 3. The Court must calibrate the "delicate balancing between permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting a sovereign['s] [] . . . legitimate claim to immunity from

4

discovery." EM Ltd. v. Republic of Argentina, 473 F.3d 463, 486 (2d Cir. 2007) (internal quotation marks omitted). Without specific evidence that documents exist in these locations, the Court DENIES Plaintiffs' request for additional broad searches of the Embassy and Consulate.

### B. Meetings and Contacts with Officers and Employees of the King Fahad Mosque

The January 3 Order directs that the scope of any search for documents regarding Jaithen "should be consistent with the [July 22 Order]." January 3 Order, at 12-13. The Court in the July 22 Order found that the request for documents regarding "any officer or employee" of the King Fahad Mosque or the Islamic Foundation of Sheikh Ibn Tamiyah was overbroad and concluded that it would be difficult to identify appropriate search terms. See July 22 Order, at 12. Saudi Arabia argues that consistent with that ruling, the Kingdom should not be required to search for documents concerning Jaithen's meetings and contacts with "any officer or employee" of the Mosque or the Foundation. KSA Ltr., at 4. Saudi Arabia further argues that this is especially true because Plaintiffs have not presented any "concrete allegations" that Jaithen had any contact with the Mosque or Foundation or anyone who worked at both these institutions, and because the Mosque has represented in response to Plaintiffs' subpoena that it "does not have any documents relating to [Jaithen] or his lodging." KSA Ltr., at 4; KSA Ex. G, at 6.[3]

Plaintiffs themselves note that unlike Jaithen, the three Saudi government officials addressed in the July 22 Order all ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Pls. Ltr., at 3. Plaintiffs nevertheless contend that Jaithen's contacts with the Mosque are specifically relevant to his ties and mission in California related to

---

[3] In Saudi Arabia's April 17, 2020 letter opposing Plaintiffs' request to file a motion to compel, the Kingdom contends that these arguments are moot because Saudi Arabia has already searched the MOIA for any documents relating to Jaithen. See Ltr. from M. Kellogg to Hon. S. Netburn (Apr. 17, 2020). The Kingdom's search of the MOIA, however, does not necessarily mean that no other searches are appropriate for these sets of documents, so the Court will still address the merits of this issue.

5

Thumairy and Bayoumi. Id. But while the Court noted in the January 3 Order that Jaithen stayed in Los Angeles in close proximity to the Mosque, and that ███████████████████████████ ███████████████████████████, the Court concluded that "[t]hese allegations do not establish a reasonable basis to conduct supplemental discovery regarding Jaithen." See January 3 Opinion, at 5. Rather, the Court authorized supplemental discovery primarily in light of the newly discovered interactions between Jaithen and Bayoumi. See id. at 6-7. While relevant to the Court's decision to authorize discovery regarding Jaithen, the allegations regarding Jaithen's stay near the Mosque and ███████████████████████████ are therefore an insufficient basis, alone, to authorize additional discovery.

The fact that "Jaithen is more senior than Thumairy at the Ministry of Islamic Affairs," id. at 6, does not suggest that Jaithen had any contacts with employees or officers at the Mosque or that such contacts would be relevant to any supervisory role Jaithen had over Thumairy's work. A 1998 personnel evaluation stated that Jaithen had no "responsibility" for "supervisory tasks or decision-making." KSA Br., at 2 (citing ECF No. 6146-05); cf. July 22, 2019 Opinion and Order ("MTC Order"), at 24-25 (relying on similar language in denying additional searches regarding Thumairy's supervision of California propagators). Saudi Arabia's already-completed search for any contacts Jaithen had with the Mosque and the Foundation is sufficient. The Court finds that additional searches for any contacts Jaithen may have had with Mosque or Foundation officers or employees are unnecessary and overbroad.

### C. Searches Regarding Majed bin Mohamed Mersal

Plaintiffs request that the Court order Saudi Arabia to produce documents prepared by Majed bin Mohamed Mersal, an MOIA propagator, regarding his trip to California during the period December 1999–January 2000. Plaintiffs argue that Jaithen and Mersal are ████████

6

██████████████████████████████████, about whom the Court ordered Saudi Arabia to search for and produce documents in the MTC Order. Pls. Br., at 1-2. Plaintiffs contend that Jaithen and Mersal worked in the same MOIA office in Buraydah, Saudi Arabia, and that ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Id.; Pls. Ex. 4, at KSA7807. Other MOIA documents show that Jaithen and Mersal both used the honorific title of "Sheikh," and the record suggests that ████████████████████████████ ████████████████████████████████ Id.; Pls. Ex's. 5, 6.

The Kingdom responds that Plaintiffs' request for documents pertaining to Mersal is untimely because "formal paper discovery" is now "over." Jan. 13, 2020 Hr'g Tr. 43:10-11. The Court agrees. The Court authorized Plaintiffs to file a motion to compel the Kingdom to produce Jaithen documents as granted by the January 3 Order, not to compel the Kingdom to produce documents regarding the activities of Mersal in California. In any event, Plaintiffs have not convincingly argued that Mersal and Jaithen were ████████████ Plaintiffs first sought discovery regarding █████████████████████████████████████████████, see Pls. Br., at 4, only to now about-face and claim that ████████████████████████ ██████ The Court will not order discovery based on Plaintiffs' shifting investigative theories. Moreover, the evidence that Plaintiffs present in the record is lacking: ████████████████ ████████████████ see Pls. Ex. 4, while ██████████████████████████████ ████████████████████ MTC Order, at 50. Additionally, Plaintiffs' exhibits show that the honorific title of "Sheikh" was not used by Jaithen and Mersal exclusively. Pls. Ex. 5. Accordingly, Plaintiffs have presented no non-speculative basis on which the Court might order Saudi Arabia to pursue further discovery of Mersal.

7

### D. Saudi Arabia's Completed Document Production

Plaintiffs contend that despite this Court's January 3 Order, Saudi Arabia has produced nothing concerning Jaithen's trip to California, what he did when he arrived there, or his meetings with Bayoumi, Thumairy, and others. Pls. Br., at 2. The Kingdom produced two documents from before Jaithen departed, referencing Jaithen's initial assignment to work at a mosque in Kismayo, Somalia, before he was assigned to Minneapolis instead. Id.; Pls. Ex's. 4, 7. A document produced from the Ministry of Interior shows that Jaithen left the Kingdom for the United States on December 12, 1999. Pls. Ex. 8. But the evidence suggests that Jaithen was instructed to "provide a detailed report on the status of Muslims in the country referred to and the size of propagators' efforts and to give [his] recommendations on how to disseminate Islam and deal with whatever obstacles in the way of propagation," and to "fill out the form for every organization during [his] visits to the Islamic organizations in the region specified." Pls. Ex. 7. None of these "detailed reports" or "forms" has been produced by the Kingdom. Pls. Br., at 3.

Plaintiffs argue that the Kingdom also failed to produce (a) the MOIA travel and expense reports for Jaithen's December 1999–January 2000 trip to the United States; (b) the records of Jaithen's actual day-to-day work for MOIA from November 1999–February 2000; and (c) documents relating to any program or initiative which may have served as cover for Jaithen's trip, even if those documents do not reference Jaithen specifically. Pls. Br., at 5. Regarding the third category, the letter Jaithen received before his trip references the "program of Imamate prepared by the Deputy Minister of Islamic Affairs," Pls. Ex. 7, and Plaintiffs argue that documents would exist concerning the planning, logistics, and purpose of any such program. Id.

Saudi Arabia responds that speculative assertions that documents "would necessarily" have been prepared are an insufficient basis for a motion to compel. KSA Br., at 2 (citing Pls.

8

Br., at 5). The Kingdom also claims that it has searched for and not found any report that Plaintiffs' Exhibit 7 suggests that Jaithen was told to prepare a report on his trip. Id., at 3. While the Court takes at face value the Kingdom's representations in its Addendum that a thorough search was conducted for these records in the locations mentioned, the Court is concerned that the Kingdom has not searched all potentially relevant MOIA locations. The Kingdom's decision to undertake a second search of its own initiative, during which additional search locations were added, suggests to the Court that even the Kingdom was aware that its initial search may have been inadequate. See Second Supplemental Statement Concerning Discovery, at 3.

The Court has held that Plaintiffs "must cite to specific evidence to challenge [Saudi Arabia's] assertions that no additional responsive documents exist." MTC Order, at 11 (internal citations omitted). The "detailed reports" and "forms" that Jaithen was instructed to provide in Plaintiffs' Exhibit 7 are such evidence. Still, "[w]ithout evidence that additional searches will locate more documents, the Court will not order Saudi Arabia to duplicate its discovery efforts." Id., at 16. The Court does not find that the Kingdom needs to duplicate its searches of the MOIA facilities in Riyadh, Najran, and Qassim. The Court orders that the parties meet-and-confer to identify other MOIA locations for the Kingdom to search, such as the MOIA office in Buraydah, Saudi Arabia where Plaintiffs allege that Jaithen worked, and any of MOIA's U.S. offices that may house additional responsive documents.

### E. Jaithen's Passports

Plaintiffs argue that Saudi Arabia refuses to produce Jaithen's government-issued work passport and diplomatic visas. Pls. Br., at 3. The Kingdom produced the first three pages of Jaithen's February 1999 personal passport but omitted the pages that show Jaithen's travel activities. Id.; Pls. Ex. 12. Plaintiffs contend that Jaithen could not have traveled to the United

States without a diplomatic visa, and that his work passport must contain his U.S. diplomatic A1/A2 visa which states the purpose of his trip and the Embassy or Consulate where he was accredited. Id., at 3-4. Plaintiffs present evidence that other MOIA propagators sent to the United States at that time, including Thumairy, Sowailem, Sudairy, Sadhan, and Mohamed al-Muhanna, had work passports ███████████████████████████████████████ ████████████. Pls. Ex. 13. Plaintiffs note that the three pages produced from Jaithen's personal passport do not indicate that he used that passport for his work trip to the U.S. Pls. Reply, at 2.

Saudi Arabia argues that there is no reason to believe that Jaithen possessed a work passport and diplomatic visa, citing inquiries made of Jaithen himself, the production of Jaithen's personal passport, and a reasonable search of the Ministry of Interior and MOIA. KSA Br., at 4. But if other MOIA propagators sent to the United States at that time did have a work passport ████████████████, the Court sees no reason to believe that Jaithen did not possess such documents as well. Plaintiffs also convincingly argue that the chart prepared by the Kingdom concerning Jaithen's personal passport, Pls. Ex. 14, is inadequate, because the Kingdom prepared similar charts for Thumairy and Sowailem who both had work passports not disclosed on the chart. Pls. Ex. 13. Accordingly, the Court orders Saudi Arabia to identify and search additional locations at which Jaithen's work passport and diplomatic visa may be found.

## CONCLUSION

The Court GRANTS Saudi Arabia's January 22, 2020 request to limit its searches and GRANTS in part and DENIES in part Plaintiffs' motion to compel. Saudi Arabia shall perform the required searches and produce responsive documents within 45 days of this Order. This Order is restricted to the following case participants: Plaintiffs' Executive Committees, Kingdom of Saudi Arabia, Dallah Avco Trans Arabia, and the Federal Bureau of Investigation.


**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   June 23, 2020
         New York, New York