```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/11/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

-----------------------------------------------------------------X

03-MDL-01570 (GBD)(SN)

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

On July 7, 2020, the Kingdom of Saudi Arabia ("Saudi Arabia" or the "Kingdom") filed a motion for partial reconsideration of the Court's June 23, 2020 Opinion & Order ("June 23 Order"). ECF No. 6304. The Plaintiffs' Executive Committees ("PECs" or "Plaintiffs") filed their opposition on July 24, 2020. ECF No. 6329. The Kingdom filed its reply on July 31, 2020. ECF No. 6347. The Court GRANTS in part and DENIES in part the Kingdom's motion for partial reconsideration.

## BACKGROUND

On March 28, 2018, the Honorable George B. Daniels concluded that Plaintiffs articulated a reasonable basis for the Court to assume jurisdiction over Saudi Arabia. ECF No. 3946, at 4-5. Judge Daniels permitted Plaintiffs to conduct limited jurisdictional discovery regarding two individuals: Fahad al Thumairy and Omar al Bayoumi. Id., at 23. This Court authorized supplemental document discovery regarding Abdullah Al Jaithen on January 3, 2020. ECF No. 5431. On January 22, 2020, Saudi Arabia filed a letter requesting that the Court resolve a dispute between the parties regarding the scope of the search required by the Court's January 3 Order. Separately, Plaintiffs filed a motion to compel production of Jaithen documents on April 30, 2020. ECF No. 6165. The Court resolved both the Kingdom's letter and Plaintiffs' motion in

the June 23 Order. ECF No. 6290. This decision addresses the Kingdom's motion for partial reconsideration of the June 23 Order.

## LEGAL STANDARD

The standards governing a motion for reconsideration under Local Civil Rule 6.3 are the same as those under Rule 59(e) of the Federal Rules of Civil Procedure. Abrahamson v. Bd. of Educ., 237 F. Supp. 2d 507, 510 (S.D.N.Y. 2002). To prevail on such a motion, the movant must demonstrate "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013). The standard for granting a motion for reconsideration is strict. Shrader v. CSX Transp., Inc., 70 F.3d 255, 256-57 (2d Cir. 1995). Accordingly, reconsideration is generally denied unless "the moving party can point to controlling decisions or data that the court overlooked." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (citing Shrader, 70 F.3d at 257). The decision to grant a motion for reconsideration is within the sound discretion of the district court. Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009).

## DISCUSSION

Plaintiffs argued in their April 30, 2020 motion to compel that the Kingdom failed to produce (a) the MOIA travel and expense reports for Jaithen's December 1999 – January 2000 trip to the United States; (b) the records of Jaithen's actual day-to-day work for MOIA from November 1999 – February 2000; and (c) documents relating to any program or initiative which may have served as cover for Jaithen's trip, even if those documents do not reference Jaithen specifically. Pls. April 30, 2020 Motion to Compel, at 5. The Court found that Plaintiffs met their burden to cite to specific evidence challenging Saudi Arabia's assertions that no additional

2

responsive documents exist. June 23 Order, at 9. While the Court held that the Kingdom did not need "to duplicate its searches of the MOIA facilities in Riyadh, Najran, and Qassim," the Court ordered the parties to "meet-and-confer to identify other MOIA locations for the Kingdom to search, such as the MOIA office in Buraydah, Saudi Arabia where Plaintiffs allege that Jaithen worked, and any of MOIA's U.S. offices that may house additional responsive documents." Id.

The Kingdom moves for partial reconsideration of the June 23 Order on two grounds. First, the June 23 Order cited MOIA's office in Buraydah (or Buraidah) as an example of a location that had not been searched, but the city of Buraydah is the capital of the administrative region of Qassim. KSA Br., at 1, Ex. 1. MOIA's Buraydah office is the same as the Qassim office, which the Court ruled Saudi Arabia need not search again for Jaithen documents. Id. Second, the June 23 Order cited MOIA's "U.S. offices" as examples of locations that had not been searched, but the only office that could potentially meet that description was the Da'wah office in the Saudi Embassy, directed by Khalid Al Sowailem during the relevant period, which the Kingdom has included in past searches of the Embassy and which the Kingdom argues that the Court ruled that Saudi Arabia need not search again for Jaithen documents. Id.

Plaintiffs argue that Saudi Arabia's motion must be denied because the Kingdom does not present any decisions or data "that might reasonably be expected to alter the conclusion reached by the court." Pls. Br., at 5 (citing Shrader, 70 F.3d at 257). Plaintiffs are partially correct. The Kingdom's motion clarifies, for instance, that the MOIA office in Buraydah has already been searched. See KSA Reply, at 2. As the Court previously ruled, the Kingdom does not need to duplicate searches it already conducted without evidence that additional searches of those locations will produce additional documents. See June 23 Order, at 9. But as Plaintiffs correctly note, the Court did not limit its Order to the search the Buraydah office or MOIA's

3

"U.S. offices"; the Court merely suggested these two locations as examples of additional locations to search. See Pls. Br., at 5. The Court ordered the parties to meet-and-confer regarding additional locations that may house responsive records, and the Court still expects the parties to do so.

The Kingdom's motion compels the Court to offer further guidance regarding the parameters of the search that the Kingdom is expected to conduct. The Kingdom notes that documents from the Da'wah office were already included in previous searches of the Embassy and produced if responsive. KSA Reply, at 2. But on the record before the Court, it appears that the Da'wah office was searched only for documents related to ▮▮▮▮▮▮. See ECF No. 6196, at 3 n.3. The Da'wah office, established by seconded MOIA employees in the Embassy, may have relevant documents regarding Jaithen, such as travel and expense records, that have not been produced. See KSA Br., at 4 n.3. Such a limited search would not conflict with the Court's June 23 Order denying Plaintiffs' request for "additional broad searches" of the Embassy and Consulate. June 23 Order, at 5.

The Kingdom also correctly recounts that the Court denied Plaintiffs' request for searches regarding Majed bin Mohamed Mersal on the grounds that ▮▮▮▮▮▮ June 23 Order, at 6-7. The Court did not, however, address the potential search of Mersal documents for Jaithen information. Plaintiffs contend that Mersal worked alongside Jaithen in MOIA's Qassim office ▮▮▮▮▮▮. Pls. Br., at 3; ECF No. 6166-4, at KSA 7807. Mersal documents, even those that do not reference Jaithen specifically, may relate to any program or initiative that may have served as cover for Jaithen's trip, such as the "program of Imamate" referenced in the letter Jaithen received before his trip. June 23 Order, at 8 (citing ECF No. 6166-7, at KSA 9538). The Court does not question the

Kingdom's assertion that it did not exclude documents from searches about Bayoumi and Thumairy because they relate to Mersal. KSA Reply, at 4. But the Kingdom may not have searched those same files for any relevant information about Jaithen in particular.

The Court recognizes the Kingdom's warning that Plaintiffs' reference to "Mersal's files" has the potential to cause confusion. KSA Reply, at 4 n. 2. While this opinion is intended to provide some guidance to the parties regarding the scope of the search for additional responsive Jaithen documents, the Court recognizes that the Kingdom, not the Court, is in the best position to identify the locations of potentially relevant documents and the likelihood that a search may yield fruitful results. Still, the Court's conclusions regarding a broad search of the Embassy and Consulate and Plaintiffs' contention that ███████████████████████ do not place the search of a specific Embassy office or of documents pertaining to Mersal beyond the scope of discovery, particularly if there is any likelihood that such searches would yield results after the search of other locations have come up empty. The Court leaves it to the parties to determine the precise contours of the search of these or any other potentially relevant locations or files.

## CONCLUSION

The Court GRANTS in part and DENIES in part the Kingdom's motion for partial reconsideration. The parties are ordered to meet-and-confer to identify relevant search locations. This Order is restricted to the following case participants: Plaintiffs' Executive Committees, Kingdom of Saudi Arabia, Dallah Avco Trans Arabia, and the Federal Bureau of Investigation.

The Clerk of Court is respectfully directed to terminate the gavel at ECF No. 6304.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

August 11, 2020
New York, New York