UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |

*This document relates to*:
All Actions

**FILED ECF - UNDER SEAL – SUBJECT TO FBI PROTECTIVE ORDER**

**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT
TO CONDUCT AN ORAL DEPOSITION OF HOSTILE WITNESS
<u>AKRAM ALZAMARI PURSUANT TO THE FED. R. CIV. P. 26 AND 30</u>**

KREINDLER & KREINDLER LLP
STEVEN R. POUNIAN
ANDREW J. MALONEY
MEGAN W. BENETT
750 Third Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: spounian@kreindler.com
*For the Plaintiffs' Exec. Committees*

MOTLEY RICE LLC
ROBERT T. HAEFELE
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com
*For the Plaintiffs' Exec. Committees*

COZEN O'CONNOR
SEAN P. CARTER
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Tel.: (215) 665-2105
Email: scarter@cozen.com
*For the Plaintiffs' Exec. Committees*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii
PROCEDURAL BACKGROUND ........................................................................................... 2
ALZAMARI'S MARCH 11, 2020 DEPOSITION BY WRITTEN QUESTIONS ....................... 5
ARGUMENT ........................................................................................................................... 10
   ALZAMARI MUST BE ORDERED TO APPEAR AT AN ORAL DEPOSITION ............... 10
CONCLUSION ....................................................................................................................... 13

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen & Co. v. Occidental Petroleum Corp.*, 49 F.R.D. 337 (S.D.N.Y. 1970) .............................. 11
*Cedars-Sinai Med. Ctr. v. Ray*, 2019 WL 2420045 (S.D.N.Y. June 10, 2019) ............................ 10
*Chang v. Safe Horizons*, 2004 WL 1874965 (S.D.N.Y. Aug.18, 2004) ........................................ 11
*Ganci v. U.S. Limousine Serv., Ltd.*, 2011 WL 4407461 (E.D.N.Y. Sept. 21, 2011) ................... 10
*Hlinko v. Virgin Atlantic Airways*, 1997 WL 68563 (S.D.N.Y. Feb. 19, 1997) ............................ 11
*Innomed Labs LLC v. Alza Corp.*, 211 F.R.D. 237 (S.D.N.Y.2002) ............................................. 10
*Int'l Corp. v. IBJ Schroeder Leasing Corp.*, 1996 WL 591213 (S.D.N.Y. Oct. 15, 1006) ............ 10
*Judicial Watch, Inc. v. United States DOC*, 34 F. Supp. 2d 47 (D.D.C. 1998) ............................. 10
*Keck v. Union Bank of Switzerland*, 1997 WL 411931 (S.D.N.Y. July 22, 1997) ........................ 11
*Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547 (S.D.N.Y. 1989) .......................................... 12
*Oscar Gruss & Son v. Lumbermens Mut. Cas. Co.*, 41 F.R.D. 279 (S.D.N.Y. 1966)
   aff'd 422 F.2d 1278 (2d Cir. 1970) ....................................................................................... 2, 11, 12
*Sadowski v. Technical Career Institutes, Inc.*, 1994 WL 240546 (S.D.N.Y. May 27, 1994) ....... 12
*United States v. Prevezon Holdings, Ltd.*, 320 F.R.D. 112 (S.D.N.Y. 2017) ................................ 11
*Vincent v. Mortman*, 2006 WL 726680 (D. Conn. Mar. 17, 2006) ............................................... 11

**Statutes**

18 U.S.C. § 1001 ............................................................................................................................. 4

**Rules**

Fed. R. Civ. P. 30 ............................................................................................................... 1, 4, 10, 11
Fed. R. Evid. 613 ..................................................................................................................... 6, 13
Fed.R.Civ.P. 31 ....................................................................................................................... 1, 2, 4

**Other Authorities**

FBI Domestic Investigations and Operations Guide ...................................................................... 4

Plaintiffs move this Court to conduct an oral deposition of Akram Alzamari, pursuant to Fed. R. Civ. P. 26 and 30, Second Circuit and other case law, and in the interests of justice. An oral deposition is necessary because in his written question testimony Alzamari recanted specific factual statements he previously made to federal investigators under penalty of imprisonment. The written question format provided no opportunity to cross-examine Alzamari in response to his unanticipated disavowal of prior statements. Under Second Circuit authority, Alzamari's testimony must be subjected to scrutiny and adequate development via cross-examination in a live setting.

On May 25, 2019, this Court granted Alazmari's motion for a protective order and directed that his testimony be conducted by written questions under Rule 31. ECF No. 4564. In the context of Alzamari's motion, the Court was provided copies of the materials that FBI agents had prepared documenting the statements Alzamari made to them during ▉▉ separate interviews in ▉▉▉▉ ▉▉▉▉ To the extent that the Order granting a motion for a protective order was premised in part on the expectation that Alzamari would simply be confirming the prior statements he made to federal law enforcement agents, that expectation was upended by Alzamari's responses to the written questions. Plaintiffs invested painstaking efforts to draft focused questions aimed at confirming Alzamari's past factual statements to federal investigators in order to make the written question process as productive as possible. Had Alzamari simply acknowledged and confirmed his past statements made under penalty of imprisonment and closer in time to the events in question, the written question format may have proved sufficient. Unfortunately, Alzamari instead used the format to attempt to withdraw or recant his prior statements, in a setting where his implausible retreat from his prior specific statements could not be subjected to cross-examination.

For obvious reasons, it was impossible for Plaintiffs to know prior to the written questions deposition that, or how, Alzamari might recant his prior statements contemporaneously recorded by FBI agents during ▉▉ interviews in ▉▉▉▉▉▉▉ (and that Alzamari reaffirmed to Plaintiffs'

1

investigator in 2018), concerning Alzamari's observations of [REDACTED]

[REDACTED] Because of the Rule 31 written question format, it was also impossible to properly challenge Alzamari's disavowal of his prior statements during the deposition. Moreover, Alzamari's repeated, canned assertions that the FBI made "errors" in documenting his prior statements made his credibility central to his testimony on many key points and in general, and required contemporaneous cross-examination. In prior cases involving depositions of a hostile witness, the Second Circuit and other courts have ruled that a written question deposition is improper, and that a party must be given "the opportunity of confrontation and a face-to-face cross-examination."[1] Absent such an opportunity here, Plaintiffs will suffer undue prejudice in being denied their right to a meaningful examination of this key witness, and it would be error not to compel Alzamari to appear at an oral deposition given his attempts to disavow his prior statements.

## PROCEDURAL BACKGROUND

In August 2018, former FBI Special Agent (SA) Catherine Hunt conducted an investigation for Plaintiffs in Los Angeles, which was focused on "the two hijackers' activities during their first two weeks in the Los Angeles…" in January 2000. SA Hunt identified Akram Alzamari as someone who had contact with the hijackers, and learned that Alzamari had been interviewed by the FBI about his knowledge concerning the hijackers' time in Los Angeles. *See* Declaration of Megan W. Benett ("Decl."), attached hereto, Ex. C (April 2020 Declaration of Catherine Mannherz Hunt) ("Hunt Decl.") at ¶19; Ex. D (September 2018 Declaration of Catherine Mannherz Hunt) ("2018

---

[1] *Oscar Gruss & Son v. Lumbermens Mut. Cas. Co.*, 41 F.R.D. 279 (S.D.N.Y. 1966), *aff'd*, 422 F.2d 1278 (2d Cir. 1970); *see* Argument at 10-13, *infra*.

Hunt Decl") at ¶ 26. SA Hunt located and spoke in person with Alzamari. He was hesitant to discuss his knowledge of the hijackers, but told SA Hunt

> he had already answered the same questions to the government or "whoever investigates these things," and "You must have seen the write-ups of my interviews." Alzamari ... said, "if you read the reports then you should already know."

Hunt Decl. at ¶ 24; 2018 Hunt Decl at ¶ 26. Nevertheless, Alzamari told SA Hunt about his conversations with Saudi diplomat and Ministry of Islamic Affairs (MOIA) official Thumairy and the role of the Saudi government's intelligence operations, Consulate, and MOIA in the running of the King Fahad Mosque. Hunt Decl. at ¶¶ 32 – 38.

On September 26, 2018, Plaintiffs sent a letter accompanied by a declaration of SA Hunt to the FBI. 2018 Hunt Decl. The letter and declaration first identified Akram Alzamari as a material witness, and demanded that Alzamari's statements to the FBI, which were clearly responsive to Plaintiffs' April 2018 FBI subpoena, be produced. 2018 Hunt Decl. at 16, ¶ 6.

The next day, September 27, 2018, Plaintiffs served a subpoena for Alzamari to appear for an oral deposition in San Diego, California on October 16, 2018. *See* ECF No. 4496, Plaintiffs' Letter-Motion to Compel, Declaration of Andrew J. Maloney ("Maloney Decl."), at ¶ 5; Ex. A. After being served with the subpoena, Alzamari called Plaintiffs' counsel, and requested a postponement of the deposition so that he could retain counsel. Maloney Decl. at 7. He referred Plaintiffs to an attorney with a not-for-profit organization who was handling an immigration matter for his wife daughter and asked that the deposition be delayed until the end of 2018. ECF No. 4496, Maloney Decl. at ¶¶ 8-9. Plaintiffs agreed to the initial postponement requested by Alzamari.

In November 2018, the FBI produced reports of its ▓▓▓ interviews of Alzamari, each witnessed by ▓▓▓ FBI agents from ▓▓▓ and ▓▓▓ The interviews were conducted on ▓▓▓ *See* Decl., Ex. B (Deposition Transcript of Akram Alzamari ("Dep. Tr.") at Ex. 1-2 ("FBI 302s"). The reports document specific

3

statements made by Alzamari to the interviewing agents and included statements Alzmari offered when the agents followed up on specific language Alzamari used. Those statements were subject to the provisions and penalties of the Federal False Statements Act, 18 U.S.C. § 1001, under which any false statements or concealments of material fact to the federal agents are punishable by jail.[2]

Plaintiffs' counsel continued to contact Alzamari and press him for a deposition date. In January 2019, Alzamari told Plaintiffs that he had obtained new counsel: Kelly A. Moore, a former assistant United States Attorney in the Eastern District of New York and a partner at Morgan, Lewis & Bockius. ECF No. 4496, Maloney Decl. at ¶¶10-12. Although Ms. Moore agreed that Alzamari would appear at an oral deposition, Plaintiffs were unable for over three months to secure a date from Ms. Moore and Alzamari. In April 2019, Alzamari moved for a protective order which included *ex parte* submissions to the Court, and proposed the highly unusual and disfavored procedure of a Fed.R.Civ.P. 31 deposition by written questions. April 30 Letter-Motion at 3 - 4.

Following further motion practice, this Court ordered that Plaintiffs would be limited to a deposition by written questions, pursuant to Rule 31. ECF No. 4564. Although the Court found that affording witnesses access to the questions in advance of the Rule 31 deposition "render[ed] Rule 31 depositions a less preferable discovery tool," this Court nevertheless ruled that "doing so [was] permissible under the Federal Rules" and allowed Ms. Moore to discuss the parties' written questions with Alzamari before his deposition. ECF No. 4748 at 2. The deposition proceeded on March 11, 2020. The PECs were not allowed to observe the deposition in person or by video link.

---

[2] The federal agents' reports of the interviews were also subject to the provisions and penalties of the False Statements Act. In addition, the FBI Domestic Investigations and Operations Guide (DIOG) charges every FBI component with the obligations to create and maintain "authentic, reliable, and trustworthy records," because "[w]ithout complete and accessible records, the FBI cannot conduct investigations, gather intelligence, [or] assist with the prosecution of criminals." FBI DIOG § 14.1, p. 229, viewable online at https://vault.fbi.gov.

## ALZAMARI'S MARCH 11, 2020 DEPOSITION BY WRITTEN QUESTIONS

Plaintiffs framed most of their questions based on Alzamari's ▬▬▬ statements to FBI agents. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and, the role of the Saudi government and its intelligence agencies in the operation of the King Fahad Mosque in Los Angeles. *See* Decl., Ex. A (Direct Examination Questions). In drafting those questions, Plaintiffs specifically cited to the FBI interview reports if the witness needed to have his recollection refreshed.

During the March 11, 2020 reading of questions, Alzamari repeatedly, and for the first time, contradicted his prior statements to law enforcement, offering implausible explanations in attempting to explain away specific factual aspects of those prior statements, and thus unexpectedly became a hostile witness. He denied having made many of the key statements from his ▬▬▬ FBI interviews. He implausibly claimed that several FBI agents from multiple offices, while investigating the worst terrorist attack ever committed on U.S. soil, included detailed, false statements in their interview reports in violation of federal law. His answers also contradicted statements he made to SA Hunt (another highly experienced former FBI agent with particular expertise on a post-9/11 Joint Terrorism Task Force). This turn of events and the specific rationalizations offered by Alzamari could not have been anticipated, and as a result Plaintiffs were unable to confront Alzamari as to any of this unexpected testimony.

For example, when the question was read to Alzamari about whether ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Alzamari responded that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Decl., Exh. B (Dep. Tr.) at 48-49. Alzamari later

5

confirmed, however, that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ at 132. Had this been an ordinary deposition, Plaintiffs would have challenged Alzamari on these points at length, including by using his prior inconsistent statements made in the course of an active criminal investigation (as allowed under Fed. R. Evid. 613); having him acknowledge that the interviews were conducted nearly ▮▮▮▮▮▮▮▮▮ nearer in time to the relevant events; challenging Alzamari as to whether he would have lied to the FBI during the interviews; and, through other means. By necessity, this questioning would have been conducted in a particular manner based on the specific nature of the reasons offered by Alzamari for disputing the records of his prior statements, and could not have been anticipated or scripted in advance. But, because Alzamari unexpectedly (and incredibly) denied having made the statements recorded by the FBI agents, Plaintiffs were not able to even attempt to confront him concerning these revisions and his new and different accounts of events.

Alzamari's deposition transcript is replete with unaddressed contradictions of his prior statements – all following the same script that FBI agents who contemporaneously memorialized the interviews made error after error.

- Alzamari claimed that "*[t]he passage*" about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "*contains many errors*." Decl., Exh. B (Dep. Tr.) at 52).

- Regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Alzamari now testified that it was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ claiming that "this is a misleading statement or error here" because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 53.

- As to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at his deposition he claimed that the interview recording "*[t]his passage contains many errors.*" *Id.* at 60. Alzamari then went on to disavow the entirety of his prior descriptions of where and for how long ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 60-61.

- When asked about witnessing Thumairy ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *[t]his passage contains many errors.*" Decl., Exh. B (Dep. Tr.) at 60. Alzamari then disavowed his prior statement that he had seen ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ this description as it appeared in the FBI agents' recordings (Decl, Exh. B (Dep. Tr.) Ex. 1 (FBI 302s at ▮▮▮▮) was "completely not true" and that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 62-4, 67.

- When asked about the meeting between ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Alzamari said of the written statement that "*[t]his passage contains many errors*[.]" *Id.* at 69. Alzamari then denied saying that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 69-70. Alzamari also denied having told the FBI agents that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 71. At the same time, he inexplicably admitted knowledge that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 72. This was an unintentional admission by Alazmari that he knew the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This admission would have been immediately pursued by further questioning at an oral deposition.[3]

- After Alzamari was asked about a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Alzamari said that description attributed to him within the FBI record was mainly true but had "three, four errors." *Id.* at 84. He specifically disavowed his prior statement that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ claiming that the FBI recording of his statement was "not true" because the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 85.

- Alzamari did acknowledge that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 131. But at his deposition, Alzamari for the first time, claimed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The implication that the investigating law enforcement officers would have independently added such detail to Alzamari's statement is not credible and warranted contemporaneous cross-examination.

- With respect to Alzamari's prior statement to FBI agents that he and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Alzamari said "*[t]hat passage is*

---

[3] The reaction of Alzamari's lawyer to his admission was telling: immediately after the answer, Ms. Moore demanded and obtained a break in the proceedings. *Id.* at 72.

7

*not true.*" *Id.* at 97.

- Contrary to his prior description to the FBI agents that he would ███████████████████████████████████████████████ claiming: "[n]o. This is not true." *Id.* at 130.

An Appendix setting forth the prior inconsistent statements and the deposition testimony is attached to this brief.

Alzamari's responses to the written questions were not only replete with disavowals of his prior statements to seasoned FBI investigators, but were also clearly scripted. For instance, Alzamari repeatedly and implausibly stated "this passage contains many errors" to deny prior statements that ████████████████████████████████████ *See id.* at 53, 60, 64, 69, 76, 97, 100, 104. Alzamari also rebuffed a series of questions with the canned response "I don't have personal knowledge." *Id.* at 33, 35, 41, 43, 80, 83. This answer, using language that appears different from the witness's own layman's words, suggested that the answer was pre-scripted and that Alzamari was aware of other information he was holding back, but Plaintiffs had no opportunity to pursue additional and necessary questioning to understand what Alzamari actually meant.

Likewise, Alzamari's responses to questions about ████████████████ was another key area of inquiry that Plaintiffs were unable to pursue through the written question process. Alzamari gave a series of conflicting answers that required follow-up questioning: he testified at one point said it was his "understanding" that the ████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████ Plaintiffs must be allowed to probe the witness for the basis of his "understanding" and nail down his actual testimony.

8

The witness also gave answers that either contradicted his statements to SA Hunt in 2018 or were evasive. He specifically told SA Hunt to review his FBI interview reports for the facts, but then repeatedly denied the facts set forth in those reports at his deposition. *See* Decl, Exh. C, Hunt Decl. at ¶¶ 24-25. He denied knowledge of the role that the Saudi government, including Saudi government intelligence, MOIA, and Consulate personnel, played at the King Fahad Mosque, which he had previously shared in detail with SA Hunt. *Compare id.* at ¶¶ 31-37 *with* Decl., Exh. B (Dep. Tr.) at 40-43. He testified that he had no conversations with Thumairy about Saudi government officials, despite volunteering information to Plaintiffs' investigator on that topic. *Compare* Decl., Exh. C (Hunt Decl.) at ¶ 29 ("Akram said that al-Thumairy wanted to introduce him into the important influential circles of people at the Consulate and the mosque … ") *with* Decl., Exh. B (Dep. Tr.) at 43 ("he [Thumairy] never offered … to introduce me to any government officials."). Plaintiffs were denied the opportunity to address and follow-up in real-time to Alzamari's testimony that was directly inconsistent with his prior statements.

Further complicating matters, a review of the video recording shows that the videographer tasked with reading the written questions did not correctly enunciate key facts. *See* Decl., Ex. D, Deposition Video ("Dep. Video"). There is no way to know, for instance, if Alzamari's answers denying knowledge about ████████████████████ are accurate, because the pronunciation of their names was unrecognizable (although properly recorded on the written transcript). *Id.* at time 47:45 – 48:00; 48:46 – 49:00. While Alzamari may have seen the names if he read the written questions to prepare for his deposition, but that is far from clear based on the video. Plaintiffs were not allowed to watch the video live and had no ability to correct these errors during the course of the deposition.

These examples are emblematic of the structural problems of a deposition by written question of a witness who uses the format to deny his own prior statements and facts recorded in

9

those statements that the deposition was aimed to confirm. The format simply does not provide an opportunity to conduct an effective examination of a witness on controversial issues and inconsistent statements, and absent an opportunity to conduct a traditional oral examination Plaintiffs would be deprived of the opportunity to take any meaningful testimony of a key percipient witness with information about facts material to the jurisdictional discovery in this case.

## ARGUMENT

### ALZAMARI MUST BE ORDERED TO APPEAR AT AN ORAL DEPOSITION

This Court must order Akram Alzamari to appear at an oral deposition, whether one reopened to allow Plaintiffs an opportunity to ask follow-up questions to his unanticipated answers or ordering a second deposition to address areas of his testimony that are inconsistent with his prior statements and issues not subject to adequate exploration in the written question format. *See* Fed. R. Civ. P. 30(a)(2)(A)(ii) (courts have authority to order a witness be deposed again); *Innomed Labs LLC v. Alza Corp.,* 211 F.R.D. 237, 239 (S.D.N.Y.2002) (when considering motion for further deposition, court must make a determination that is fair and equitable under all the relevant circumstances.) Any party opposing a further deposition "bears the burden of showing that granting the motion would run afoul of Rules 26(b)(1) and (2)." *Cedars-Sinai Med. Ctr. v. Ray,* 2019 WL 2420045, at *3 (S.D.N.Y. June 10, 2019); *see also Judicial Watch, Inc. v. United States DOC*, 34 F. Supp. 2d 47, 54 (D.D.C. 1998) ("Leave to conduct a second deposition should ordinarily be granted; the burden is on the opposing party to demonstrate" inconsistency with Rules 26(b)(1) and (2)). A Court "***must*** grant leave to [conduct a further deposition to] the extent consistent with Rule 26(b)(2)." *Ganci v. U.S. Limousine Serv., Ltd.,* 2011 WL 4407461, at *2 (E.D.N.Y. Sept. 21, 2011) (emphasis added); *see also PFK Int'l Corp. v. IBJ Schroeder Leasing Corp.*, 1996 WL 591213, at *2 (S.D.N.Y. Oct. 15, 1006) ("[a] party must obtain leave of court, which *shall* be granted to the

extent consistent with the principles stated in [Rule 26(b)(1) and (2) ] . . . if . . . the person to be examined already has been deposed in the case") (emphasis in original).

Courts typically reopen a deposition where there is new information on which a witness should be questioned. *See United States v. Prevezon Holdings, Ltd.,* 320 F.R.D. 112, 114–15 (S.D.N.Y. 2017) (granting motion to compel second deposition when "'burden of redeposing [this witness] ... [was] ... outstripped by the potential importance of the issue[s]" because the non-party witness's "testimony will either undermine or strengthen [the] defense."); *Vincent v. Mortman*, 2006 WL 726680, at *1–2 (D. Conn. Mar. 17, 2006) (allowing plaintiff to reopen deposition when one witness' deposition contradicted defendants' deposition and medical records); *Chang v. Safe Horizons*, 2004 WL 1874965, at *2 (S.D.N.Y. Aug.18, 2004); *Keck v. Union Bank of Switzerland,* 1997 WL 411931, at *2 (S.D.N.Y. July 22, 1997) (deposition reopened where affidavit provided evidence conflicting with witness testimony).[4]

While Plaintiffs had objected to proceeding with a deposition by written question in lieu of the Rule 30 oral deposition that Plaintiffs initially noticed, Plaintiffs did not learn Alzamari was a hostile witness who would contradict his previous statements until Plaintiffs reviewed Alzamari's responses, in which he unexpectedly disavowed his ▇▇▇▇▇▇▇ interview statements as recorded in the FBI 302s interviews). Plaintiffs must now be allowed to cross-examine the witness, and to do so by oral examination, not the disfavored written-question procedure.

The district court and Second Circuit in *Oscar Gruss & Son v Lumbermens Mut. Cas. Co.*, 41 F.R.D. 279 (S.D.N.Y. 1966) (Weinfeld, J.), *aff'd*, 422 F.2d 1278 (2d Cir. 1970), concluded that "[i]t would be devastatingly prejudicial to plaintiff" to allow the defendant to use written question

---

[4] Similarly, under Fed. R. Civ. P. 30(e), to protect a litigant's opportunity to take meaningful testimony and effectively question a witness, a court may "reopen a deposition to allow for further cross-examination of the deponent if the changes to the [original deposition] transcript are so substantial as to effectively render it 'incomplete or useless without further testimony.'" *Hlinko v. Virgin Atlantic Airways,* 1997 WL 68563, at *1 (S.D.N.Y. Feb. 19, 1997) (quoting *Allen & Co. v. Occidental Petroleum Corp.,* 49 F.R.D. 337, 340 (S.D.N.Y. 1970)).

11

procedure, as it would "secure the testimony of these hostile witnesses without the opportunity of confrontation and a face-to-face cross-examination." 41 F.R.D. at 282, *aff'd*, 422 F.2d at 1282. Judge Weinfeld observed that:

> The opportunity for evasive answers or self-serving exculpatory statements by the witnesses emphasizes the need for oral cross-examination to enable plaintiff to expose the claimed true facts . . . .
>
> Under ordinary circumstances the advantages of oral examination over the rigidity of written interrogatories are readily acknowledged. Cross-examination of a witness who may be evasive, recalcitrant or nonresponsive to questions is an essential in ferreting out facts, particularly of an adverse party or witness.
>
> . . .
> To suggest that appropriate and searching questions can be framed and answers relied on to furnish . . . the information . . . is to underestimate the nature of the issues and the problems of proof involved herein. An oral examination is clearly indicated. To deny it would result in serious prejudice . . . .

41 F.R.D. at 282 (quotations and citations omitted).

These basic principles cannot be seriously questioned. "[I]t has often, and appropriately, been observed that depositions on written questions are a generally inadequate substitute for an oral deposition since there is no meaningful possibility of follow-up question and the inquiring party is denied any opportunity to assess the demeanor, and thus the credibility, of the witness in responding to specific question[s]." *Sadowski v. Technical Career Institutes, Inc.*, 1994 WL 240546, at *1 (S.D.N.Y. May 27, 1994). Deposition by written questions are inadequate "in all but the simplest litigation," because they preclude necessary probing follow-up questions, prevent questioning counsel from "observ[ing] the demeanor of the witness and evaluat[ing] his credibility in anticipation of trial," and "provide an opportunity for counsel to assist the witness in providing answers so carefully tailored that they are likely to generate additional discovery disputes." *Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 549 (S.D.N.Y. 1989). Here, all of the issues identified in both *Sadowski* and *Mill Run* were ultimately implicated.

When Alzamari was asked about prior statements he made to federal law enforcement agents investigating the 9/11 terrorist attacks, he routinely claimed that the FBI agents investigating the 9/11 attacks memorialized his those statements with "many errors." At an ordinary deposition, Plaintiffs would have immediately asked Alzamari about the circumstances of his ▓▓▓▓ interviews by FBI agents and his 2018 interview by Plaintiffs' investigator, during which he reaffirmed the accuracy of many of the statements in the ▓▓▓▓ FBI summaries. Because, however, the unusual written question format hampered Plaintiffs' deposition of the witness, Plaintiffs were unable to confront Alzamari about how his testimony contradicted so many aspects of the prior, contemporaneously recorded record. As a result, Plaintiffs were denied their rights to: (1) have the witness reconsider his responses, or (2) impeach Alzamari's credibility, as expressly allowed by Fed. R. Evid. 613. The issue of credibility is especially important now that the dubious new account denies knowledge of Alzamari's prior statements about ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

The only remedy to the highly problematic deposition by written questions, albeit an imperfect one (now that Alzamari has been prepped by counsel and had a dry-run through Plaintiffs' questions) is to allow Plaintiffs to conduct a further, oral deposition.

Finally, Plaintiffs are unaware of the precise concerns, presented *ex parte*, which led this Court to order that Alzamari's deposition be conducted by written questions. But there is no reason why those concerns cannot be accommodated through an oral deposition that is held in a confidential manner, subject to questioning guidelines and oversight by this Court.

## CONCLUSION

The deposition by written questions deprived Plaintiffs of any meaningful opportunity to question Akram Alzamari, who unexpectedly became a hostile witness and testified in a manner that contradicted his prior statements. The only remedy is for this Court to order that Alzamari

13

appear for an oral deposition, which will allow Plaintiffs to conduct a proper examination and confront the witness with his prior inconsistent statements.

Dated: April 24, 2020

KREINDLER & KREINDLER LLP

By: */s/ Steven R. Pounian*
STEVEN R. POUNIAN
ANDREW J. MALONEY
MEGAN W. BENETT
750 Third Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: spounian@kreindler.com
*For the Plaintiffs' Exec. Committees*

MOTLEY RICE LLC

By: */s/ Robert T. Haefele*
ROBERT T. HAEFELE
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com
*For the Plaintiffs' Exec. Committees*

COZEN O'CONNOR

By: */s/ Sean P. Carter*
SEAN P. CARTER
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Tel.: (215) 665-2105
Email: scarter@cozen.com
*For the Plaintiffs' Exec. Committees*