UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |

*This document relates to*:
All Actions

**FILED ECF - UNDER SEAL – SUBJECT TO FBI PROTECTIVE ORDER**

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO CONDUCT
AN ORAL DEPOSITION OF HOSTILE WITNESS
<u>AKRAM ALZAMARI PURSUANT TO THE FED. R. CIV. P. 26 AND 30</u>**

Akram Alzamari is an eyewitness to the interactions between the first two 9/11 hijackers to arrive in the United States and the Saudi diplomat tasked by a Kingdom official to assist those hijackers. In practiced testimony by written questions, Alzamari repeatedly disavowed multiple statements he made to federal law enforcement officers, despite the fact that those prior statements were made during a criminal investigation of the murder of nearly 3,000 innocent people, subjected him to federal criminal charges if they were false, were recorded by multiple FBI agents, and are consistent in their contents. In disavowing those statements, Alzamari offered a canned refrain that ▓▓▓ FBI agents, over a period of ▓▓▓▓▓▓▓, had inexplicably included information that was not true in their interview reports.

This is not a case of a witness's testimony not "perfectly mirroring" his prior statements to federal law enforcement officers. *See* ECF No. 6223 at 8-10. This is a case of a wholesale alteration of a witness's description of events. And it illustrates why, here, an oral deposition is indispensable.

1. **Factual Corrections**

In his opposition, Alzamari makes several assertions that are factually incorrect and that weigh directly on this motion for a further deposition.

First, Plaintiffs did not "request" a Rule 31 deposition by written questions and the record belies any suggestion to the contrary. *See* ECF No. 6223 at 8, 17. On September 27, 2018 Plaintiffs noticed a Rule 30 deposition and served Alzamari with a subpoena to testify. *See* ECF No. 4496 at 19-23.[1] After months of delay, during which Plaintiffs tried to accommodate various excuses Alzamari and his counsel proffered, Plaintiffs finally filed a motion to compel the Rule 30 deposition. *See* ECF No. 4496. Alzamari, *not* Plaintiffs, proposed a Rule 31 deposition by written questions. *See* 2019-04-19 Kelly Moore, Esq., Letter to Court at 3-4. Plaintiffs opposed that request. *See* ECF No. 4528. Alzamari's counsel provided secret information and invited the Court to engage in *ex parte* communications (2019-05-13 Moore Letter to Court at 1-2) and two days later the Court issued an Order limiting access to the fact witness to a sworn declaration. ECF No. 4522.[2] It was only in response to that extraordinary limitation on traditional fact-finding that Plaintiffs, in their Motion for Reconsideration, noted that the relief granted to Alzamari did not comply even with a Rule 31 procedure, which the witness had sought. *See*

---

[1] Alzamari's counsel continues to mischaracterize the attempt to compel an oral deposition of a first-hand witness to interactions between the hijackers and key Saudi personnel, a witness who had for over six months avoided setting a date for the deposition, as "harassment." ECF No. 6223 at 7. Rules 30 and 45, of course, specifically contemplate the commonplace practice of deposing fact witnesses and moving to compel the contumacious witness who refuses to appear at such a deposition without good cause.

[2] Such *ex parte* communications on substantive issues are generally prohibited as they deprive persons with an interest in the proceeding of their right to be heard (*see* Code of Conduct for United States Judges, Canon 3.A.4) and, to the extent any occurred in this case, Plaintiffs ask that such communications be disclosed and reference to any conference with counsel for Alzamari and the Court or judicial staff (especially any conferences conducted without Plaintiffs present) be placed on the docket, as required by the presumption of public access to court proceedings.

2019-05-21 PEC Letter to Court at 5. Plaintiffs have never departed from their position that, under the circumstances, the most appropriate manner of obtaining admissible evidence from Alzamari was pursuant to an oral deposition. Any suggestion otherwise mischaracterizes the record.

Second, Alzamari's wholesale disavowal of key statements he provided to federal law enforcement agents on ▮▮▮▮ different occasions was not known or knowable prior to his response to written questions. The objections he raised to the written questions concerned only foundation, form, or scope. At no point did Alzamari's counsel advise Plaintiffs that his response to those questions would contradict the statements in the FBI 302s, which Alzamari had already reviewed with counsel at the time that objections were served. *See* ECF No. 6224-4 at 23-7. During the September 20, 2019 "meet-and-confer" to which Alzamari refers, the attorneys simply addressed the phrasing to be used when referring to the hijackers – whether to use their proper names or a euphemism. *See* ECF No. 6224-1 at ¶¶ 18, 21-22. At no point do Alzamari's attorneys suggest (nor could they) that they advised Plaintiffs that when answering questions Alzamari would deviate substantially from the statements he made to FBI agents and claim that the summaries the agents prepared contained multiple untruths. This revelation, not only unknown to Plaintiffs before Alzamari's questioning but, apparently, known to his counsel, constitutes new evidence that became available only after Plaintiffs were provided with the deposition transcript and recording.

Alzamari's counsel cites statements that she – not the witness – proffered, that spoke to limitations of the witness's observations, *not* systematic denial of the admissions consistently documented by multiple FBI agents. For example, counsel stated in her protective order application that "Mr. Alzamari never spoke to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"; "[h]e observed

3

only very limited contact between ████████████████"; and "[h]e ████████
████████████████████████████," but that statement (not from the witness himself) merely flagged the purported limitations of his knowledge. ECF No. 6224-3. It in no way advised Plaintiffs that he would claim that multiple FBI agents included untruths in their official interview summaries.

Alzamari and his attorneys knew, having reviewed the FBI reports and having received the parties' written questions after doing so, that the witness would contradict the interview summaries, but Plaintiffs did not.[3] Nor did or could Plaintiffs anticipate the witness's disavowal of the statements that the FBI agents recorded. It is the witness's own conduct at the deposition that constitutes new evidence previously unavailable to Plaintiffs and that warrants a further, oral deposition.

Third, the information that Plaintiffs seek is not available elsewhere. Alzamari is the only witness who can testify, for example, as to the key "████████" that ████████
████████████████████████████; the only one who saw ████████
████████████████████████.

As the Court has seen, and for a variety of reasons outside of Plaintiff's control, witness availability is thus far limited in this litigation; but even if other witnesses were to provide consistent testimony, that would not make Alzamari's testimony unnecessary. To the contrary, the accumulation of evidence and testimony from multiple witnesses reinforcing Plaintiffs' allegations that Saudi officials, acting in their official capacity, directed the hijackers is, of

---

[3] Additional evidence of Alzamari having been primed to make certain assertions during the questioning include his surprising, and non-responsive, comment that "Fahad [al-Thumairy] is not an extremist." ECF No. 6156-2 at 13 (p. 42, l. 13).

4

course, how liability is established. Two witnesses communicating the same content to the fact-finder is more persuasive than only one; three more than two; and so on. Further, without those depositions yet conducted, it is impossible to know what other witnesses may say. It is simply wrong to suggest that because other witnesses may provide some overlapping (that is, reinforcing) testimony, a meaningful opportunity to adequately test the truthfulness of Alzamari's testimony is unnecessary.

Further illustrating the need for an oral deposition, Alzamari's counsel in his opposition excuses away a key admission by the witness about the hijackers and their co-conspirators' use of the ▮▮▮▮▮ as a meeting location. ECF No. 6223 at 12, n 4.[4] If, as his lawyer states, Alzamari's competency in English were, in fact, the reason that he provided an answer that revealed he knew ▮▮▮▮▮, then the parties could have addressed that at the deposition had they been allowed to attend. Instead, Alzamari's attorneys try to neutralize the admission, yet Plaintiffs cannot rebut those efforts without a further, oral deposition.

Plaintiffs have always and consistently sought a traditional oral deposition, which would have allowed them to test Alzamari's testimony in real-time; to assess his credibility; and to confront him with prior inconsistent statements. Although Alzamari could still disavow the FBI agents' summaries, Plaintiffs would be able to explore the circumstances of the prior interviews, confront the witness with the indicia of reliability they contained, and test the new answers.

---

[4] Alzamari's counsel fail to address the fact that, immediately after being asked about the ▮▮▮▮▮ and answering "▮▮▮▮▮" counsel immediately interrupted and asked for a break in the proceedings. ECF No. 6156-2 at 20 (pp. 72 – 73, ll. 25 – 2).

5

Without an oral deposition, Plaintiffs were wholly deprived of this opportunity, which is critical to the truth-seeking purpose of civil discovery.

Last, Alzamari incorrectly cites to *United States v. Shulaya*, 17-cr-350 (S.D.N.Y.) (KBF), for the proposition that the FBI 302s are not admissible as evidence in and of themselves, ignoring the distinctions between criminal and civil proceedings relevant in this context.[5] Even putting that aside, Alzamari fails to appreciate that, if Plaintiffs had been present when Alzamari denied making statements that multiple FBI agents attributed to him, Plaintiffs would have had the opportunity to pursue additional lines of questioning. They could have examined the circumstances of his original interviews, relying on the information in the 302s so that the witness could correct himself or have his credibility impeached as to the denials, regardless of whether the 302s were themselves admitted as exhibits.[6] However, because of the extraordinary procedure of deposition by written question, plaintiffs here had no opportunity to confront the witness, test his credibility, or explore the circumstances of his ▆▆▆▆ interviews by federal law enforcement agents in ▆▆▆▆▆▆ and his subsequent interview with retired FBI Special Agent Catherine Hunt in 2018.

2. **The Only Remedy to the Prejudicial "Deposition" by Written Questions is an Oral Deposition of Alzamari**

Federal Rule of Civil Procedure 30(a)(2)(A)(ii) provides that, when seeking to depose a witness whose deposition has already been taken, a party "must obtain leave of the court" *and*

---

[5] The Federal Rules of Evidence specifically contemplate exceptions to the hearsay rule that would allow the 302s into evidence in this civil proceeding. *See* F.R.E. 803(6), (8).

[6] Further, even (ret.) Judge Forrest recognized that her practice with respect to 302s in criminal proceedings as set forth in her memo that Alzamari cited "may run afoul of practice" in the Southern District of New York and that she had "a particular view of 302 practice, which is I know different from what a lot of people allow." *Shulaya*, Trial Trans. at 1017.

that "the court *must* grant leave" to the extent consistent with the general limits on civil discovery set forth in Rule 26(b)(1) and (2) (emphasis added). Alzamari attempts to graft a "good cause" requirement on a request for a further deposition, but none exists in the Federal Rules or in the case law.[7]

Rather, a court must exercise its "discretion to make a determination which is fair and equitable under all the relevant circumstances." *Ganci v. U.S. Limousine Serv., Ltd.*, 2011 WL 4407461, at *2 (E.D.N.Y. Sept. 21, 2011). The factors that should guide a court's discretion when considering a motion for a second deposition include (1) whether the second deposition of the witness would be unnecessarily cumulative; (2) whether the party requesting the deposition has had other opportunities to obtain the same information; and (3) whether the burden of a second deposition outweighs its potential benefit. *Id.* at *2.

The case law is clear that an oral deposition is *not* the equivalent of the disfavored practice of deposition by written questions and, thus, allowing Plaintiffs a limited oral deposition (with time constraints and judicial availability during the course of the deposition that could protect any legitimate concerns Alzamari may have) is not cumulative and certainly not "unnecessarily" so. It is only when the issues to be addressed by a witness are narrow and straightforward and the hardships of taking an oral deposition are substantial that written questions may be an adequate substitute, at least "in the first instance." *See Winbourne v. Eastern Air Lines, Inc.*, 632 F.2d 219, 226 (2d Cir.1980).

Plaintiffs here did not have the opportunity to pursue questions in light of Alzamari's unforeseen (and unforeseeable) disavowal of the summaries of his interviews. His attorney only

---

[7] To the contrary, any "good cause" burden rests on Alzamari, who moved for a protective order in this case, as Fed. R. Civ. P. 26(c) requires that a court find "good cause ... to protect a party or person" from discovery. The record contains no such "good cause" finding in this case.

objected as to form, foundation, and scope of the written questions and never, despite reviewing the FBI 302s with the witness before the deposition, advised Plaintiffs that the witness would repeatedly assert that the summaries contained falsehoods.

Alzamari is wrong in claiming that he was not a hostile witness and in attempting to distinguish *Oscar Gruss & Son v. Lumbermens Mut. Cas. Co.*, which provides a clear doctrinal explanation for the superiority of oral depositions and the inadequacies of depositions by written questions. 41 F.R.D. 279 (S.D.N.Y 1966). 41 F.R.D. 279 (S.D.N.Y. 1966) (Weinfeld, J.), *aff'd*, 422 F.2d 1278 (2d Cir. 1970).

Further, the characterization of Alzamari as a hostile witness is accurate.

> It is hornbook law that if a party's own witness (a) surprises him, by (b) testifying materially differently from a prior statement, which differing testimony (c) damages the calling party's case, then the calling party's counsel may cross-examine his hostile witness; ask the witness whether or not he made the prior inconsistent statement; and if so, if the witness desires to explain it.

*United States v Eaton*, 485 F2d 102, 104-05 (10th Cir 1973); *see also United States v. DeLillo*, 620 F2d 939, 946 (2d Cir 1980) (when witness "was not called to the stand by the government as a subterfuge with the primary aim of getting to the jury a statement impeaching him," and witness then failed to corroborate other evidence "the government had the right to question him, and to attempt to impeach him, about those aspects of his testimony which conflicted with [another] account of the same events.").

Whether Alzamari was, as a technical matter, a hostile witness, however, is not critical to this motion for a further deposition. Fed. R. Evid. 607 provides that "[a]ny party, including the party that called the witness, may attack the witness's credibility." It is precisely the probing as to Alzamari's disavowals and his credibility in that respect that Plaintiffs were denied by this

8

extraordinary deviation from the traditional discovery tools established by the Federal Rules of Civil Procedure.

Any oral deposition could be conducted in an under-seal posture, at a courthouse in Southern California near the witness's home with the Court available by teleconference to address any disputes that might arise during the deposition. Any burden on the witness would thus be minimal.

Denying Plaintiffs this further deposition would be an abuse of the Court's discretion and would be contrary to the practice of district courts in the Second Circuit. *United States v. Prevezon Holdings, Ltd.*, 320 F.R.D. 112, 114–15 (S.D.N.Y. 2017) (granting motion to compel second deposition); *Vincent v. Mortman*, 2006 WL 726680, at *1–2 (D. Conn. Mar. 17, 2006) (allowing plaintiff to reopen deposition); *Keck v. Union Bank of Switzerland,* 1997 WL 411931, at *2 (S.D.N.Y. July 22, 1997) (deposition reopened where affidavit provided evidence conflicting with witness testimony); *see also Tramm v. Porter Mem'l Hosp.*, 128 F.R.D. 666, 668 (N.D. Ind. 1989) (rejecting party's claim that a second deposition would be an "undue expense and hardship" and would "annoy and embarrass" her and ordering further deposition).

### 3. Conclusion

For all of the reasons in Plaintiffs' Motion to Compel an Oral Deposition and their original motion to compel, having been deprived of any meaningful opportunity to question Akram Alzamari, Plaintiffs must be allowed to conduct a proper oral deposition of the witness.

Dated: May 29, 2020

| | |
|---|---|
| KREINDLER & KREINDLER LLP | MOTLEY RICE LLC |
| By: /s/ *Megan W. Benett* <br> STEVEN R. POUNIAN <br> ANDREW J. MALONEY <br> MEGAN W. BENETT <br> 750 Third Avenue <br> New York, New York 10017 <br> Tel.: 212-687-8181 <br> Email: spounian@kreindler.com <br> *For the Plaintiffs' Exec. Committees* | By: /s/ *Robert T. Haefele* <br> ROBERT T. HAEFELE <br> 28 Bridgeside Boulevard <br> Mount Pleasant, SC 29465 <br> Tel.: (843) 216-9184 <br> Email: rhaefele@motleyrice.com <br> *For the Plaintiffs' Exec. Committees* |

COZEN O'CONNOR

By: /s/ *Sean P. Carter*
SEAN P. CARTER
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Tel.: (215) 665-2105
Email: scarter@cozen.com
*For the Plaintiffs' Exec. Committees*