**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |

***This document relates to***:
**All Actions**

**FILED ECF – UNDER SEAL – SUBJECT TO FBI PROTECTIVE ORDER**

**DEFENDANT AKRAM ALZAMARI'S MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFFS' MOTION AND MEMORANDUM**
**OF LAW IN SUPPORT TO CONDUCT AN ORAL DEPOSITION OF**
**AKRAM ALZAMARI PURSUANT TO THE FED. R. CIV. P. 26 AND 30**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................................... 1

BACKGROUND ......................................................................................................... 2

ARGUMENT ............................................................................................................. 5

I.      PLAINTIFFS MUST SHOW GOOD CAUSE TO REOPEN ALZAMARI'S
        COMPLETED DEPOSITION ........................................................................... 5

II.     PLAINTIFFS HAVE NOT SHOWN GOOD CAUSE TO REOPEN
        ALZAMARI'S COMPLETED DEPOSITION ................................................... 5

        A.      Plaintiffs Cannot Point to Any New Evidence that Became Available After
                the Deposition ...................................................................................... 6

        B.      Plaintiffs Knew that Mr. Alzamari's Testimony Would Not Mirror ███
                ███ FBI 302 Reports .......................................................................... 8

        C.      The Testimony Plaintiffs Seek Is Available Elsewhere ........................ 11

        D.      Plaintiffs' Complaints About the Court's Order Regarding a Deposition
                Pursuant to Federal Rule of Civil Procedure 31 Do Not Warrant Good
                Cause ................................................................................................. 13

        E.      Mr. Alzamari Is Not a Hostile Witness ............................................... 15

III.    RULE 26(B)(2) REQUIRES THE COURT TO DENY PLAINTIFFS' REQUEST
        TO REOPEN ALZAMARI'S DEPOSITION ................................................... 20

CONCLUSION ...................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bridgeforth v. City of New York*,
 286 F. Supp. 3d 629 (S.D.N.Y. 2017)....................................................................5, 7

*Cedars-Sinai Med. Ctr. v. Ray*,
 No. 19 Misc. 129 (PAE), 2019 WL 2420045 (S.D.N.Y. June 10, 2019) ..............5, 6

*Chang v. Safe Horizons*,
 No. 03 Civ. 10100 WHP RLE, 2004 WL 1874965 (S.D.N.Y. Aug. 20, 2004).......20

*Dash v. Seagate Tech. (US) Holdings, Inc.*,
 No. CV 13-6329(LDW)(AKT), 2015 WL 4257329 (E.D.N.Y. July 14, 2015) .........7

*Fed. Deposit Ins. Corp. v. St. Paul Fire & Marine Ins. Co.*,
 No. 3:95CV847(PCD), 2000 WL 306939 (D. Conn. Feb. 2, 2000) ........................16

*Jibowu v. Target Corp.*,
 No. 17 CV 3875 (PKC)(CLP), 2018 WL 5624145 (E.D.N.Y. Oct. 30, 2018).........18, 20

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
 No. 14 MD 2542 (VSB)(SLC), 2020 WL 1430537 (S.D.N.Y. Mar. 24, 2020) ...............11, 12

*Margel v. E.G.L. Gem Lab Ltd.*,
 No. 04 Civ. 1514(PAC)(HBP), 2008 WL 2224288 (S.D.N.Y. May 29, 2008).........5

*McCaffrey v. City of New York*,
 No. 11 CIV. 1636 (RJS), 2013 WL 494025 (S.D.N.Y. Feb. 7, 2013)....................19

*Scarpati v. United States*,
 No. 93 CIV. 740 (JFK), 1994 WL 256691 (S.D.N.Y. June 7, 1994), *aff'd*, 50
 F.3d 4 (2d Cir. 1995)..............................................................................................10

*United States v. Prevezon Holdings, Ltd.*,
 320 F.R.D. 112 (S.D.N.Y. 2017) .............................................................................6

*United States v. Shulaya*,
 No. 17-0350 (S.D.N.Y June 11, 2018), ECF No. 819 ...........................................10

**Other Authorities**

Fed. R. Civ. P. 26............................................................................................1, 5, 20

Fed. R. Civ. P. 30.....................................................................................................5

Fed. R. Civ. P. 31 ....................................................................................................................1, 4, 13

Akram Alzamari submits this memorandum of law in opposition to Plaintiffs' motion to reopen his deposition and conduct an oral deposition pursuant to Fed. R. Civ. P. 26 and 30 (the "Motion").

## **PRELIMINARY STATEMENT**

Plaintiffs' Motion to reopen the deposition of non-party Akram Alzamari is without merit because Plaintiffs cannot show good cause, as required.  Plaintiffs are once again attempting to relitigate issues that have been fully briefed and decided by the Court.

Mr. Alzamari was subpoenaed in this case because he had the misfortune of being introduced to two Saudi men who would later become 9/11 hijackers.  The Court ordered on May 29, 2019—at Plaintiffs' request—that Mr. Alzamari's deposition would move forward pursuant to Federal Rule of Civil Procedure 31.  In accordance with the Court's Order, Plaintiffs submitted direct examination questions, Defendant Kingdom of Saudi Arabia submitted cross-examination questions, Plaintiffs submitted re-direct examination questions, and Defendant Saudi Arabia submitted re-cross examination questions.  The deposition was completed in San Diego on March 11, 2020 in compliance with the Federal Rules and the Court's Order.

Contrary to Plaintiffs' characterization, Mr. Alzamari was not a hostile witness; he was cooperative throughout his deposition and provided thoughtful, truthful testimony.  Moreover, even if Mr. Alzamari were a hostile witness, that would not establish good cause to reopen the deposition.  At most, this would have allowed Plaintiffs to ask leading questions, which Plaintiffs did anyway.

In short, Plaintiffs' seek a "do over" because they did not like some of Mr. Alzamari's answers.  But dislike of a witness's truthful testimony based on his current recollection of events

that occurred 20 years ago, is not "good cause" to reopen the deposition of a non-party witness with extremely limited firsthand knowledge of any relevant facts.

## BACKGROUND

Mr. Alzamari lives in California, cares for five young children, and works a part time job. Ex. 1 ¶ 3 ("Maloy Decl.").  Plaintiffs have relentlessly pursued his deposition since he spoke with their investigator, Catherine Hunt, at a mall in California in August 2018.  Ex. 2 ¶ 21 ("Hunt Decl.").  This conversation was informal, and he specifically refused to answer any questions about the 9/11 hijackers.  *Id*. ¶ 24.  He was asked to opine on various other topics without limitations to personal knowledge.  *See id.* ¶¶ 32 – 41.  Although Ms. Hunt and/or Plaintiffs believed Mr. Alzamari was represented by an immigration lawyer at the time, the interview was conducted outside the presence of that lawyer or his current counsel.  *See id.* ¶ 21.

Several months after the informal interview, Mr. Alzamari engaged counsel.  Maloy Decl. ¶ 3.  Counsel first met with Plaintiffs in February 2019.  *Id*. ¶ 4.  Plaintiffs advised that they were hoping to defeat an upcoming motion to dismiss in the case by seeking discovery on the limited question of whether Fahad al-Thumairy and/or Omar al Bayoumi knowingly assisted two of the 9/11 hijackers at the direction of the Saudi Arabian government.  *Id.*  They further advised that they wanted to interview Mr. Alzamari in advance of a deposition and that they were only interested in asking him questions about his knowledge of certain events that occurred during a short period of time, *i.e.*, a couple of months in 2000.  *Id.*  Mr. Alzamari's counsel offered to provide Plaintiffs a declaration rather than proceeding with a deposition to lessen the burden on Mr. Alzamari.  *Id.*  Mr. Alzamari's counsel never agreed that Mr. Alzamari would sit for an oral deposition.  *Id.* ¶ 11.

On March 5, 2019, Plaintiffs provided Mr. Alzamari's counsel FBI reports of the ████

interviews Mr. Alzamari provided to the FBI in ████████. *Id.* ¶ 7.  After an opportunity to

review the reports and meet and speak with Mr. Alzamari, his counsel advised Plaintiffs that he

did not have information relevant to the limited jurisdictional discovery authorized by the Court.

*Id.* ¶ 10.  Counsel also advised that Mr. Alzamari would not agree to a pre-deposition informal

interview with Plaintiffs' counsel.  *Id.*  Plaintiffs' demeanor changed immediately and became

increasingly aggressive and sharp with demands for an immediate videotaped deposition and

threats of contempt proceedings, in an apparent effort to harass or intimidate Mr. Alzamari into

acquiescing to an informal interview.  *Id.* ¶¶ 11-12.

After months of harassment, on April 25, 2019, Plaintiffs filed a motion to compel Mr.

Alzamari's deposition, harassing him further by putting his name on the public docket.  *See* Dkt

No. 6155.  Mr. Alzamari opposed the motion to compel and filed a motion for a protective order.

*See* Ex. 3.  On May 15, 2019, the Court granted Mr. Alzamari's motion and ordered Mr.

Alzamari to file a declaration "containing all knowledge he has regarding whether and to what

extent Fahad al Thumairy, Omar al Bayoumi, and/or their agents took actions in 2000, at the

direction of more senior Saudi officials, to provide assistance to Nawaf al Hazmi, Khalid al

Mihdhar, and other 9/11 hijackers" and including "the details of his knowledge of and personal

interactions with Hazmi and Mihdhar and his knowledge of any interactions between the 9/11

hijackers and Thumairy."  *See* Dkt. No. 4522 at 1-2.  The Court's Order also gave Plaintiffs and

Defendants the opportunity to serve follow-up questions by written interrogatories.  *See id.* at 2.

On May 21, 2019, Plaintiffs filed a motion asking the Court to reconsider the May 15

Order and stated that the problems posed by the Court's May 15 order "can be cured … in only

one of two ways: (1) by authorizing an oral deposition of Mr. Alzamari to be taken before Your

Honor … or (2) by proceeding with a deposition by written questions taken in accordance with the procedures and requirements of Rule 31." Dkt. No. 4528 at 1-2. The Court considered Plaintiffs' arguments and granted their request to move forward with the deposition pursuant to Federal Rule of Civil Procedure 31 on May 29, 2019. *See* May 29 Order, Dkt. No. 4564. Proceeding in this manner at their own request, Plaintiffs forewent the opportunity to preview a sworn declaration of "the details of [Mr. Alzamari's] knowledge of and personal interactions with Hazmi and Mihdhar and his knowledge of any interactions between the 9/11 hijackers and Thumairy" prior to drafting follow up questions. *See* Dkt. No. 4522 at 2.

On July 19, 2019, Plaintiffs served their direct examination questions for the written deposition. Maloy Decl. ¶ 16. Defendant Saudi Arabia served cross-examination questions on August 2, 2019, Plaintiffs served their re-direct examination questions on August 9, 2019, and Defendant Saudi Arabia served re-cross examination questions on August 16, 2019. *See id.* Mr. Alzamari served objections to the examination questions on August 21, 2019. *See* Ex. 4.

On September 25, 2019, Plaintiffs served updated direct and re-direct examination questions based on a meet and confer with Mr. Alzamari's counsel. Maloy Decl. ¶ 19. Additional motion practice regarding Mr. Alzamari's objections followed, and the Court ruled on those objections in a December 16, 2019 Order. *See* Dkt. No. 5372. Plaintiffs served updated examination questions on December 23, 2019. Maloy Decl. ¶ 20. On February 11, 2020, Plaintiffs again updated the examination questions following further conversations with Mr. Alzamari's counsel and based on Mr. Alzamari's August objections. *Id.* ¶ 22.

The deposition took place pursuant to Federal Rule of Civil Procedure 31 on March 11, 2020 in San Diego, California.

## ARGUMENT

### I.   PLAINTIFFS MUST SHOW GOOD CAUSE TO REOPEN ALZAMARI'S COMPLETED DEPOSITION

The Court ruled in its May 11, 2020 Order that "[n]o witness shall be recalled for additional testimony absent a showing of good cause."  Dkt. No. 6204 at 3.  That ruling is consistent with long-standing precedent in this district and the Second Circuit.  *See Bridgeforth v. City of New York*, 286 F. Supp. 3d 629, 632 (S.D.N.Y. 2017) (requiring good cause to reopen deposition); *Margel v. E.G.L. Gem Lab Ltd.*, No. 04 Civ. 1514(PAC)(HBP), 2008 WL 2224288, at *8 (S.D.N.Y. May 29, 2008) (evaluating whether moving party showed good cause to reopen deposition); *see also* Fed. R. Civ. P. 30 advisory committee's note to 2000 amendment ("The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order.").  The determination of whether good cause exists is fact specific.  *See, e.g.*, *Margel*, 2008 WL 2224288, at *8.[1]

### II.   PLAINTIFFS HAVE NOT SHOWN GOOD CAUSE TO REOPEN ALZAMARI'S COMPLETED DEPOSITION

Plaintiffs argue that they should be entitled to reopen Mr. Alzamari's deposition to ask follow up questions to "unanticipated answers" and to address testimony that differs in some respects from unsworn FBI interview reports that were written ███████████ about events that occurred two decades ago.  *See* Motion at 10.  In short, Plaintiffs complain that they did not know in advance that they would not like some of the answers to their questions.  But that

---

[1] Plaintiffs suggest that the burden is on Mr. Alzamari to show that reopening his deposition would run afoul of Rules 26(b)(1) and (2), but the cases Plaintiffs cite in support of this burden shifting are irrelevant because they do not reference the "good cause" standard the Court has adopted.  *See Cedars-Sinai Med. Ctr. v. Ray*, No. 19 Misc. 129 (PAE), 2019 WL 2420045, at *3 (S.D.N.Y. June 10, 2019) (citing *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 34 F. Supp. 2d 47, 54 (D.D.C. 1998)).

assertion is not supported by the record and does not constitute good cause to reopen Mr.

Alzamari's deposition.

A.   Plaintiffs Cannot Point to Any New Evidence that Became Available After the Deposition.

Plaintiffs cite to seven cases where the court reopened a completed deposition. In every

case, new evidence became known **after** the completion of the prior deposition. *See, e.g.*,

*Cedars-Sinai Med. Ctr.*, 2019 WL 2420045, at *3 (reopening deposition of former director of

defendant where defendant produced an additional 1,700 documents related to the deponent after

her deposition); *United States v. Prevezon Holdings, Ltd.*, 320 F.R.D. 112, 114–15 (S.D.N.Y.

2017) (reopening deposition of CEO at the heart of the government's case where the government

and the deponent produced additional documents after his first deposition). Here, Plaintiffs did

not—and cannot—identify **any** new evidence that they discovered after Mr. Alzamari's

deposition, let alone new evidence that would warrant reopening his deposition.

Plaintiffs claim that Mr. Alzamari's truthful testimony under oath constitutes "new

evidence" because it is inconsistent with certain aspects of FBI 302s that summarize interviews

completed by the FBI ███████████████████████████. Plaintiffs

received these summaries in November 2018—16 months before Mr. Alzamari's deposition. *See*

Motion at 3. They are not "new evidence." In fact, those FBI 302s were used and quoted

extensively in both Plaintiffs' and Defendant's questions during Mr. Alzamari's deposition. *See,*

*e.g.*, Dep. Tr. at 103:3 – 105:2. Plaintiffs also claim that Mr. Alzamari's truthful testimony

constitutes "new evidence" because it contradicts information Mr. Alzamari purportedly

provided to Plaintiffs' investigator, Catherine Hunt, 19 months before Mr. Alzamari's

deposition. *See* Motion at 9.

Plaintiffs' failure to use part or all of this information in their examination of Mr. Alzamari was a strategic decision and does not constitute good cause. *See Dash v. Seagate Tech. (US) Holdings, Inc.*, No. CV 13-6329(LDW)(AKT), 2015 WL 4257329, at *7 (E.D.N.Y. July 14, 2015) (refusing to reopen deposition regarding an area of inquiry "that counsel either neglected or affirmatively opted to forego").

Plaintiffs' reliance on Ms. Hunt's interview as a basis for reopening Mr. Alzamari's deposition further fails because it contains no information about the one topic on which the Court has authorized jurisdictional discovery—namely whether Fahad al-Thumairy and/or Omar al Bayoumi knowingly assisted two of the 9/11 hijackers at the direction of the Saudi Arabian government. *See* Dkt. No. 3946 at 23. To the contrary, Ms. Hunt's report demonstrates that Mr. Alzamari refused to talk to her about the hijackers—the only topic on which jurisdictional discovery has been ordered. *See* Hunt Decl. ¶ 26 ("He refused to speak with me about his interactions with Mohamed Johar, al-Hazmi and al-Mihdhar. … He would not answer questions about any connections between al-Thumairy, al-Hazmi, and al-Mihdhar."); *see also* Motion at 3. Furthermore, Mr. Alzamari's testimony was limited to matters and subjects of which he has "personal knowledge," but his discussion with Ms. Hunt included hearsay, opinion, and otherwise irrelevant and inadmissible commentary.[2] *See Bridgeforth*, 286 F. Supp. 3d at 632 (declining to reopen a deposition where further deposition was unlikely to lead to relevant evidence).

---

[2] Plaintiffs' emphasis on Ms. Hunt's statement that Mr. Alzamari told her to refer to the FBI's notes from his prior interviews is not compelling. *See* Motion at 12 (Mr. Alzamari "specifically told SA Hunt to review his FBI interview reports for the facts, but then repeatedly denied the facts set forth in those reports at his deposition"). Mr. Alzamari did not know what the FBI 302s said until May 2019 when he reviewed them in connection with this case and therefore could not have known that they contained many errors when he spoke to Ms. Hunt in August 2018—9 months earlier.

B.      Plaintiffs Knew that Mr. Alzamari's Testimony Would Not Mirror ████ FBI
        302 Reports.

Plaintiffs knew that the language used in the FBI 302 reports would not be identical to

Mr. Alzamari's truthful testimony about his current recollection well before the deposition and

any suggestion otherwise is disingenuous.

On April 30, 2019, in support of Mr. Alzamari's motion for a protective order, counsel

for Mr. Alzamari explained that ████████████████████████████████████████████

█████████████████████████████ Ex. 3 at 2 (emphasis added).  The motion for a

protective order also described that ███████████████████████████████

████████████████████████████████████████████████████; and

███████████████████████████████████████████ *Id.*

Plaintiffs claim that they could not have anticipated that Mr. Alzamari would testify that

████████████████████████████████████████████████

███████████████ *See* Motion at 5-6.  However, Plaintiffs were repeatedly and

expressly advised prior to the deposition that Mr. Alzamari would testify that those exact words

were not used.

On August 19, 2019, Mr. Alzamari's counsel raised foundational objections regarding

each question that used the phrase ████████████████████████████████ and

advised Plaintiffs that the foundational objections could be remedied if Plaintiffs removed that

phrase and replaced it with ████████████████████████████ Ex. 4 at 4.

Plaintiffs refused to discuss these objections during a meet and confer on September 20, 2019

and stated that they would leave the questions unchanged.  Maloy Decl. ¶ 18.  During briefing

regarding Mr. Alzamari's objections to Plaintiffs' examination questions, Mr. Alzamari's

counsel advised that ████████████████████████████████████████████

███████████████████████████████████████████████████
███████████████████████████████████ Ex. 5 at 5-6 (Nov. 11, 2019 Letter).

Plaintiffs were also warned that Mr. Alzamari would "object to a second deposition to fix" this

issue, which "was easily avoidable." *Id*. at 6.

On January 30, 2020, Plaintiffs offered to withdraw Mr. Alzamari's deposition notice if

he agreed to sign a declaration confirming certain information in the FBI 302s, but Mr.

Alzamari's counsel explained that his current recollection differs from certain language in the

FBI 302s.  Maloy Decl. ¶ 21.  During the same conversation, Plaintiffs asked why Mr.

Alzamari's counsel objected to ███████████████████████████████████

███████████████████████████ *Id.*  Counsel explained that ████████████

████████ and reiterated what was clearly stated nine months earlier in the motion for a protective

order, namely that Mr. Alzamari's recollection was that █████████████████████████

██████████ *Id*.; *see also* Ex. 3 at 2.

Shortly before the deposition—on February 11, 2020—Plaintiffs changed 22 written

questions that contained the phrase ██████████████████████████████████

because they were repeatedly warned that that wording was not verbatim and could cause

confusion and result in their questions not being fully understood or answered.  *See* Ex. 6

(Maloney Feb. 11, 2020 Email); *see also* Ex. 7 at Questions 110; 117f; 117k; 118a; 118e; 118i;

119a; 120a; 128a; 129a; 130b; 131; 133; 134; 138a; 140; 147a; 151b; 156a; 156e; 157e; 232a.

Thus, Plaintiffs' claim that they were "not able to even attempt to confront him concerning these

revisions and his new and different accounts of events" is thoroughly belied by the record.  *See*

Motion at 6.  Mr. Alzamari's testimony was ***not*** "unexpected[] (and incredibl[e])."  *See id*.

Furthermore, Plaintiffs had to have known that Mr. Alzamari's deposition testimony would not perfectly mirror the language in the FBI 302s.  FBI 302s are inadmissible into evidence—for good reason.  *See* Guidelines Regarding Appropriate Use of 302 Forms in Criminal Trials, *United States v. Shulaya*, No. 17-0350 (S.D.N.Y June 11, 2018), ECF No. 819 (detailing that several issues make 302s unreliable evidence, including "that different agents have different practices regarding how much detail they choose to include" and "whether to include facts learned elsewhere as part of the investigation or editorial content that were not actually stated during the interview").  Judge Forrest explained that 302s are "classic hearsay without—in and of themselves—requisite indicia of reliability" and "are not themselves admissible by way of the 302."  *Id.* at 5; *see also, e.g.*, *Scarpati v. United States*, No. 93 CIV. 740 (JFK), 1994 WL 256691, at *3 (S.D.N.Y. June 7, 1994), *aff'd*, 50 F.3d 4 (2d Cir. 1995) (finding that 302 was not admissible as substantive evidence).



Additionally, the FBI 302s here were inconsistent with each other.  For instance, ███ FBI 302s describe ██████████████████████████████████████ ███, but the FBI 302s include conflicting information as to ███████████████ ███████ The FBI 302s from the █████████ and █████████ interviews state that ███ ████████████████████████████████████████████████  *See* Ex. 8 at ██████████ Ex. 9 at ██████████ *see also* Dep. Tr. at 88:1-3.  However, the FBI 302 from the ████████ interview states that █████████████████████████████████████████ ███.  *See* Ex. 10 at █████████

Similarly, ███ FBI 302s state that Mr. Alzamari was ███████████████████ ████████████████████████████████████████████



Moreover, Plaintiffs' own questions contemplated that Mr. Alzamari would disagree with the content of some of the statements in the FBI 302s. Each time Plaintiffs' questions quoted language from an FBI 302, Plaintiffs specifically asked, "Please state which part of the passage is true and which part is an error and explain why you say that the statement contains an error or errors." *See* Ex. 7 at Questions 112c; 123d; 130d; 139d; 151d; 168d; 213c; 220c; 226c. That repeatedly asked question demonstrates that Plaintiffs anticipated that the FBI 302s might contain inaccuracies and that they wanted Mr. Alzamari to correct any such inaccuracies, which he did.

    C.    The Testimony Plaintiffs Seek Is Available Elsewhere.

For each alleged "inconsistency" Plaintiffs identify, Plaintiffs could get the information from a different non-party deponent with more direct knowledge. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14 MD 2542 (VSB)(SLC), 2020 WL 1430537, at *3 (S.D.N.Y. Mar. 24, 2020) (denying request to reopen deposition because Plaintiffs had "not shown good cause to why this topic warrant[ed] re-opening of a deposition, especially where such information is available elsewhere."). In *In re Keurig*, the Court

---

[3] The FBI 302 from the ▮▮▮▮▮▮ interview was written the day after the interview on ▮▮▮▮▮▮, but the FBI 302 from the ▮▮▮▮ interview was written 15 days later.

specifically refused to reopen a deposition where the information was available from two other deponents. *Id.*

Plaintiffs' Motion focuses on alleged "inconsistencies" related to the following areas of inquiry:



Each area of inquiry could be addressed by other deponents and Plaintiffs do not even attempt to suggest otherwise. Indeed, Mohdar Abdullah's deposition has already been noticed and Ms. Hunt's declaration makes clear that Plaintiffs have spoken to Mohamed Johar. *See* Hunt Decl. ¶ 17 ("Johar admitted he saw [the hijackers] on multiple occasions … Johar admitted that he took the hijackers to the Mediterranean restaurant …. Johar admitted that … al-Hazmi returned to Los Angeles and stayed the night with Johar"). Plaintiffs may and likely will conduct

---

[4] Plaintiffs state that it was an "unintentional admission" when Mr. Alzamari responded to a question regarding ███████████████████████████████████████████ Dep. Tr. at 72:19-24; *see also* Motion at 7. Plaintiffs appear to be suggesting that Mr. Alzamari "admitted" that he had additional information that ████████████████ This was not an "admission" of any sort. English is not Mr. Alzamari's first language and this was not the only time during his deposition that he used a plural pronoun to describe ████████████. *See* Dep. Tr. at 48:24 – 49:2 (stating in response to a question about why Mr. Alzamari went to ███████████████ building, ████████████████████████) (emphasis added). Additionally, Plaintiffs and Defendants asked Mr. Alzamari about every single interaction he had with the hijackers and covered all of his interactions with them. *See, e.g.*, Dep. Tr. at 127:20 - 132:1.

depositions of Mohdar Abdullah and Mohamed Johar during which they can ask questions about their first-hand knowledge of these events.  But an oral deposition will not change Mr. Alzamari's current recollection of these topics, which, coming from him, is inadmissible hearsay in any event.

Plaintiffs also allege that there are "inconsistencies" with some of Mr. Alzamari's observations, *e.g.*, █████████████████████████████████████████ ███████  As described above, Plaintiffs and Defendants thoroughly covered these topics during Mr. Alzamari's deposition and used the FBI 302s to do so.  Accordingly, Plaintiffs' real complaint is that they simply did not like Mr. Alzamari's truthful testimony but that does not constitute "good cause" to reopen the deposition.

> D.   Plaintiffs' Complaints About the Court's Order Regarding a Deposition Pursuant to Federal Rule of Civil Procedure 31 Do Not Warrant Good Cause.

The deposition format, which Plaintiffs requested and complies with the Federal Rules, does not warrant good cause to reopen the deposition.  The issue of how this deposition would proceed was thoroughly litigated and already subject to a motion for reconsideration—that Plaintiffs won.  *See* May 29 Order, Dkt. No. 4564.  In fact, Plaintiffs specifically stated that moving forward with this deposition pursuant to Rule 31 would "cure[]" alleged problems with a prior order.  *See* Dkt. No. 4528 at 1-2.

Plaintiffs complain that Mr. Alzamari's testimony regarding Musaed al-Jarrah and Khalid al-Sowailem is unreliable because "the pronunciation of their names was unrecognizable."  *See* Motion at 9.  But mispronunciations during the deposition did not affect Mr. Alzamari's answers. Mr. Alzamari was aware that he would be asked about those individuals prior to the deposition and therefore did not have to rely on the videographer's pronunciation of the names when he testified that he never heard Fahad al-Thumairy talk about either individual.  Maloy Decl. ¶ 24;

13

*see also* Dep. Tr. at 32:18-20; 33:3-6.  Plaintiffs also showed Mr. Alzamari images of Musaed al-Jarrah (Exhibit 10) and Khalid al-Sowailem (Exhibit 12) before the videographer used their names, further minimizing any alleged confusion from the pronunciations.  *See* Dep. Tr. at 32.  Moreover, numerous breaks were taken throughout the deposition, and Mr. Alzamari had ample opportunity to correct the record if he did not understand a name from a prior question.

Furthermore, this issue was entirely of Plaintiffs' own making.  On the morning of the deposition, Plaintiffs asked the videographer to read the deposition questions rather than the person who had prepared to ask the deposition questions—the court reporter.  *See* Maloy Decl. ¶ 25.  The videographer came to the deposition that morning having no idea he would have to ask the questions.  *See id.*  With this last minute change in plans, Plaintiffs made no effort to assist the videographer in getting the names right.  Plaintiffs could have, for example, provided phonetic spelling of all 22 names in the deposition questions.  Plaintiffs also could have reviewed the names with the person tasked with reading the questions.  Indeed, the videographer and court reporter signed the protective order and received the questions on March 3, 2020—eight days before the deposition.  Ex. 11 (Maloney Mar. 3, 2020 Email).

At best, Plaintiffs failed to prepare properly for the deposition.[5]  At worst, Plaintiffs intentionally undermined the process in a transparent attempt to set up this Motion and complain that the procedures were unfair.  Neither scenario warrants "good cause" to reopen the deposition, particularly because the answers would be no different with perfect pronunciation of the names.

---

[5] Plaintiffs also failed to provide the court reporter any guidance regarding the exhibits that would be used, the number of copies that needed to be printed, or the order of the questions, *i.e.*, direct examination questions followed by cross-examination questions followed by re-direct and re-cross.  *See* Maloy Decl. ¶ 25.

E.     Mr. Alzamari Is Not a Hostile Witness.

Plaintiffs argue that Mr. Alzamari is a hostile witness because his deposition testimony differs in some aspects from statements in the FBI 302s. *See* Motion at 11.  Plaintiffs further argue that because Mr. Alzamari was a hostile witness they could not perform a "meaningful examination" of the witness. *See id.* at 2.  We are not aware of a single case that holds that a deposition must be reopened because a witness is designated as hostile and Plaintiffs cite none.

Contrary to Plaintiffs' suggestion, *Oscar Gruss & Son v. Lumbermens Mutual Casualty Co.* does not stand for the proposition that hostile witnesses must be deposed by oral deposition. 41 F.R.D. 279, 282 (S.D.N.Y. 1966) (Weinfeld, J.).  In *Oscar*, the court held that written depositions should not go forward based on the totality of the circumstances, including that the potential deponents (i) were incentivized to provide defense-favorable testimony because it was consistent with their defenses in a criminal case, (ii) were openly adverse to the plaintiff, and (iii) would be questioned about hundreds of documents related to a complex bank fraud. *Id.* at 281-82.  Furthermore, *Oscar* did not involve reopening a deposition and therefore the court did not need to address the "good cause" standard for reopening a deposition. *See id.* at 283.  In this case, Mr. Alzamari has already been deposed, was asked questions about just two documents totaling ***5 pages***, and had no incentive to do anything but provide truthful testimony based on his best current recollection.  Additionally, *Oscar* is further distinguishable because the party challenging the deposition as "devastatingly prejudicial" was not the same party who noticed the deposition. *See id*. at 282.  Here, ***Plaintiffs*** noticed Mr. Alzamari's deposition and ***chose*** to move forward with it in accordance with the Court's May 29 Order.  *Oscar* is clearly distinguishable and Plaintiffs' mischaracterization of Mr. Alzamari as hostile is simply an attempt to get the Court to reconsider its May 29 Order using recycled arguments. *See* Dkt. No.

4528 at 3 (arguing that oral depositions are generally favored over depositions pursuant to written questions).

Moreover, Mr. Alzamari is not a hostile witness. *See Fed. Deposit Ins. Corp. v. St. Paul Fire & Marine Ins. Co.*, No. 3:95CV847(PCD), 2000 WL 306939, at *1 (D. Conn. Feb. 2, 2000) (denying motion to designate witness as hostile where his deposition testimony was neither disingenuous nor evasive).  In *St. Paul Fire & Marine*, plaintiff requested an order declaring a witness as hostile because, among other things, he allegedly provided disingenuous and evasive prior testimony.  *Id.*  After reviewing the relevant deposition testimony, the court denied plaintiff's request to designate the witness as hostile.  *Id.*  A review of Mr. Alzamari's deposition transcript similarly reveals that his testimony was not disingenuous or evasive.  Mr. Alzamari answered every question to the best of his recollection and even elaborated on answers when necessary to clarify his testimony.

For example, Plaintiffs repeatedly asked Mr. Alzamari to review full paragraphs from FBI 302s containing many different facts and then asked Mr. Alzamari to explain which parts of the passage were true and which contained errors.  *See, e.g.*, Dep. Tr. at 103:12 – 104:9.  In response, Mr. Alzamari carefully reviewed the relevant portion of each FBI 302 and broke down which parts were correct and which parts were inaccurate:





Dep. Tr. at 103:3 – 105:2.

Mr. Alzamari also ████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████ *See* Dep. Tr. at 51:1 – 53:7.  Plaintiffs argue in their Motion that Mr.

Alzamari created an "unaddressed contradiction" when he ████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████████████ *See* Motion at 6 (internal citations omitted).  But

Mr. Alzamari's testimony was ████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████ Plaintiffs fail to highlight

for the Court that █████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████ Ex. 9 at ██████████.  Mr. Alzamari again addressed how the two hijackers were

introduced to him on re-direct examination:



Dep. Tr. at 132:2-10.

As these examples illustrate, Mr. Alzamari diligently prepared for his deposition and patiently

and carefully answered Plaintiffs' questions.  The fact that his truthful testimony based on the

best of his current recollection is not identical to the FBI 302s does not make him a hostile

witness.  Nor does it establish good cause to reopen his deposition.  *See Jibowu v. Target Corp.*,

No. 17 CV 3875 (PKC)(CLP), 2018 WL 5624145, at *2-3 (E.D.N.Y. Oct. 30, 2018) (concluding

that there was "insufficient good cause" to reopen the deposition because the deponent was

"largely cooperative" and her occasional failure to answer questions was due, in large part, to

defendants' use of compound questions and complex language).

Mr. Alzamari's restriction of his answers to information within his "personal knowledge" also does not make him a hostile witness. The Court's May 29 Order granting Plaintiffs' motion for reconsideration specifically limited Mr. Alzamari's testimony to Mr. Alzamari's personal knowledge and the deposition instructions advised the witness that "all answers to the questions should be based on your personal knowledge and/or observations." Dep. Tr. at 7:15-16; *see also* May 29 Order, Dkt. No. 4564.

Even if Mr. Alzamari were a hostile witness, at most, this designation would allow Plaintiffs to ask Mr. Alzamari leading questions—something they did throughout the deposition anyway. *See, e.g.*, *McCaffrey v. City of New York,* No. 11 CIV. 1636 (RJS), 2013 WL 494025, at *7 (S.D.N.Y. Feb. 7, 2013) (stating that Plaintiffs' counsel could ask a hostile witness leading questions). For instance, after refreshing Mr. Alzamari's recollection with FBI 302s, Plaintiffs asked:



- ███████████████████████████████████████ ████████████████████ Dep. Tr. at 64:21-23.

- ███████████████████████████████████████ ███████████████████████ Dep. Tr. at 86:11-13.

Additionally, during Mr. Alzamari's re-direct examination, Plaintiffs asked:



- ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████ Dep. Tr. at 130:9-13.

- ███████████████████████████████████████ ██████████████████████████████████████ ████████████████ Dep. Tr. at 131:14-16.

Plaintiffs' suggestion that Mr. Alzamari is a hostile witness is unfounded.  Mr. Alzamari was cooperative and answered every single question Plaintiffs asked to the best of his current recollection.  Furthermore, even if Mr. Alzamari were a hostile witness, it would not establish good cause to reopen his deposition.

## III.   RULE 26(B)(2) REQUIRES THE COURT TO DENY PLAINTIFFS' REQUEST TO REOPEN ALZAMARI'S DEPOSITION

Rule 26(b)(2)(C) states that a court must "restrict discovery if 'the discovery sought is unreasonably cumulative or duplicative,' if 'the party seeking discovery has had ample opportunity to obtain the information' sought, or 'the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.'"  *See Jibowu*, 2018 WL 5624145, at *2-3 (concluding that there was "insufficient good cause" to reopen the deposition).

For the reasons stated above, reopening Mr. Alzamari's deposition would be cumulative or duplicative of other discovery available to plaintiffs.  Additionally, Plaintiffs had ample opportunity to question Mr. Alzamari on each topic referenced in the Motion during his deposition.  *See Chang v. Safe Horizons*, No. 03 Civ. 10100 WHP RLE, 2004 WL 1874965, at *2 (S.D.N.Y. Aug. 20, 2004) (denying request to reopen a deposition because the plaintiff "had ample time to depose" the witness "on a number of issues" and the witness "was responsive to [plaintiff's] extensive questions.").

Finally, the burden of requiring Mr. Alzamari—a nonparty witness—to prepare for and appear at another deposition far outweighs the potential benefit.  Mr. Alzamari is currently living in San Diego, raising five children, and working a part-time job.  This case has already created a significant burden for him and further harassment from Plaintiffs would not inure to anyone's

benefit.  Indeed, as described above, the information Plaintiffs seek from Mr. Alzamari is inadmissible hearsay and could be obtained in the form of admissible evidence from Plaintiffs' depositions of Mohamed Johar and Mohdar Abdullah.

## **CONCLUSION**

We respectfully request that the Court deny Plaintiffs motion to reopen Akram Alzamari's deposition.

Dated: May 15, 2020

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Kelly A. Moore*
Kelly A. Moore
John M. Maloy
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178
Tel. (212) 309-6000
Fax: (212) 309-6001
kellymoore@morganlewis.com

*Attorneys for Akram Alzamari*