**SUBJECT TO THE FBI PROTECTIVE ORDER**

September 9, 2020

By ECF (Under Seal) and Electronic Mail

Honorable Sarah Netburn
United States Magistrate Judge
40 Foley Square
New York, NY  10007

Re:  *In re Terrorist Attacks of September 11, 2001*, 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

In accordance with the instructions in the Court's August 26, 2020 e-mail and the provisions of Paragraph 11 of the FBI Protective Order, *see* ECF No. 4255, counsel for the FBI, the Plaintiffs' Executive Committees, and Akram Alzamari jointly submit this letter motion concerning information in the Court's July 20, 2020 opinion and order, ECF No. 6322 (filed under seal) ("July 20 Order"), that the FBI or Mr. Alzamari believe should be filed under seal, and that the PECs believe should be released, when the July 20 Order is publicly docketed.

Attached hereto as Exhibit A is a highlighted version of the July 20 Order.  The information highlighted in yellow is language that the parties agree, at this time,[1] should be redacted when the July 20 Order is made public.  The items in dispute are highlighted in blue and orange—information highlighted in blue is language that the FBI believes should be redacted, and information highlighted in orange is language that Mr. Alzamari believes should be redacted.

1. **Page 1: all redactions**

*Mr. Alzamari's position*:  The three redactions on page one were proposed by Mr. Alzamari on August 10, 2020 after the Court and the FBI proposed redactions to the July 20 Order.  Although the Court cites Plaintiffs' investigator for the information included in Mr. Alzamari's proposed redactions, Mr. Alzamari requests that his proposed redactions on page one of the July 20 Order remain redacted.

On February 21, 2020, Plaintiffs made an application to the Court setting forth Plaintiffs' concerns about the safety of third-party witnesses in this case, based in part on their view that the horrific and "well-publicized murder of Saudi Washington Post journalist Jamal Khashoggi" may have been related to an interview of Khashoggi by Plaintiffs' investigator.  See ECF No. 6003-2

---

[1] The PECs continue to object to the application of the protective order by the Department of Justice and the Federal Bureau of Investigation, as the restrictions on access to judicial documents involved in the dispositive jurisdictional inquiry into the role that the Kingdom of Saudi Arabia and its officials played in the planning and execution of the 9/11 Attacks is contrary to the presumption of public access to these filings, for the same reasons set forth in our opposition to the Kingdom's overuse of the protective orders in this case. *See, e.g.,* ECF No. 4373.  Nevertheless, to facilitate access to the July 20 Order for the 9/11 Families and the public, the PECs make only the objections set forth herein, preserving their general objections to any sealing or redactions.

at ¶¶ 3; 9-16.  Yet, Plaintiffs are now pushing to add information to the public docket regarding Mr. Alzamari—one of the confidential third party witnesses referenced in Plaintiffs' February 21, 2020 application to the Court.  See March 4, 2020 Tr. at 8:5-13 (explaining that one of the confidential witnesses "is a subject of matters before the Court" where "[t]he Court has taken unusual measures for a deposition").  If the views set forth in Plaintiffs' February 21 application were held in good faith, it is difficult to reconcile them with Plaintiffs' request to put more information about Mr. Alzamari, his deposition testimony, and their investigators' interview of him in the public record.

Moreover, as a Muslim man living in the United States, Mr. Alzamari faces obvious potential safety concerns from any publicity regarding his limited interactions with two of the 9/11 hijackers.  The tragic events of September 11 have fueled unprecedented racism in this country towards Muslims and Arabs, which of course would be heightened by information that Mr. Alzamari had contact with two of the hijackers, no matter how unwitting or innocuous those interactions were.  Any information contained in a Court order referencing Mr. Alzamari's "knowledge" of the hijackers and of their time in Los Angeles will needlessly expose him and his family to potential harm.  The problem is exacerbated by the fact that nowhere in the order is it made clear that Mr. Alzamari's interactions with the hijackers were extremely limited and unwitting as to who they were or what they were planning.

While the proposed redactions will not undo the damage and disruption to Mr. Alzamari's life already caused by Plaintiffs' motion practice in this case, there is no reason to add more information about him to the public docket than necessary, particularly at this stage of the case, which may not even survive a motion to dismiss.

*PECs' position*:  Akram Alzamari witnessed interactions between the first two 9/11 hijackers to arrive in the United States and Fahad al-Thumairy, who had official privileges bestowed on him by Saudi leaders and had been tasked by a higher-up to provide assistance to the terrorists.  The witness has not met the high bar for sealing the three redactions on page one of the July 20 Order and this Court should not restrict public access to that information.

Court records must be freely available absent unusual and compelling circumstances. *See Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13 (1986)(*Press-Enterprise II*)("Criminal acts, especially certain violent crimes, provoke public concern, outrage and hostility..." and open courts provide "an outlet for these understandable reactions and emotions.").  As the Supreme Court has observed: "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Id*.  Any restrictions on the public's access to judicial documents should only occur for the "most compelling reasons." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006).  It is Mr. Alzamari who bears the heavy burden of showing the "exceptional circumstances" and "higher values" necessary to overcome the presumption of public access to judicial documents under the First Amendment and common law. *Lugosch,* 435 F.3d at 120-21, 124. Yet contrary to Second Circuit law, Mr. Alzamari makes only broad and conclusory assertions about "disruption" and "damage" in support of his request for sealing certain information from the public, and in doing so fails to comply with the Second Circuit's requirement of "narrowly tailored" redactions tied to specific findings. *Lugosch,* 435 F.3d at 120; *see Press-Enterprise II*, 478 U.S. at 13-14.

Additionally, Mr. Alzamari argues that his role as a witness to certain events leading up to the 9/11 Attacks has or will continue to damage or disrupt his life, but Mr. Alzamari's identity as a fact witness is already well-known and has appeared on the public docket 48 times – placed there only a small number of times by the PECs. (Of the 48 references to Mr. Alzamari, the PECs cite Mr. Alzamari's identity only 12 times. *See* ECF No. 4496, 4528, 6153, 6154, 6155, 6156, 6240, 6249, 6352.) That it is already well-known to any interested observer that Mr. Alzamari had contact with the 9/11 hijackers is, alone, reason to deny his request to redact the information on page one of the July 20 Order. As the Second Circuit has observed, "[w]e simply do not have the power, even were we of the mind to use it if we had, to make what has...become public private again." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004); *Centauri Shipping Ltd. v. Western Bulk Carriers KS,* 528 F.Supp.2d 197, 205–06 (S.D.N.Y. 2007)(documents could not be sealed where information had already been the subject of press accounts).

Mr. Alzamari tries to twist the PECs' description of specific risks to witnesses whose identities have not yet been made revealed to the Kingdom, but that comparison is wholly inapposite. The witnesses that the PECs identified to the Court whose safety had been threatened had not yet testified nor even, primarily, identified as witnesses. *See* ECF 6003 at 3 ("non-party witnesses have raised serious and genuine concerns to the PECs about risks to their personal safety from Saudi Arabia *once named as a witness*.") (emphasis added). The concerns that the PECs raised regarding certain third-party witnesses was grounded in real-world threats and intimidation that could discourage them from testifying. Mr. Alzamari has already provided answers to written questions, has not described any specific threats (which, it would appear, do not exist) and his identity as a witness is already well-known to the Kingdom of Saudi Arabia.[2] He is using incidents actually reported by other third-party witnesses that raised concerns about revealing their identities prior to deposition to improperly hide information from the public about his role as a fact witness following his questioning.

Additionally, any "disruption" to Mr. Alzamari's life is less onerous than what any other fact witness in a wrongful death suit or criminal homicide case might have experienced. He was asked to sit for a half-day "deposition" without any live questioning, after being carefully prepared by his team of lawyers and following extensive and extraordinary efforts to deny the 9/11 Families the ordinary discovery device of a live deposition. That Mr. Alzamari chose to embark on this unusual path that forced protracted side-litigation cannot justify selectively sealing the record. Likewise, that Mr. Alzamari had contact with certain individuals involved in the 9/11 Attacks two decades ago, a fact already publicly documented, cannot, without specific examples, establish any basis for sealing. Further undermining his generalized concerns about Islamophobia are the facts that: (1) Mr. Alzamari provided information to the 9/11 investigators on multiple occasions, (2) volunteered details about the hijackers, Thumairy and others and (3) stated his support for the efforts by the 9/11 Families to hold the supporters of the attacks responsible. If anything, up until January 2019, Mr. Alzamari demonstrated his allyship with the 9/11 community, which could only redound to his reputational benefit.

---

[2] The murder of Jamal Khashoggi amplifies the actual threats that other witnesses have described, but cannot warrant the wholesale sealing of information about Mr. Alzamari's contacts with the hijackers when the Kingdom of Saudi Arabia already knows about those contacts and Mr. Alzamari has provided no individualized description of threats, intimidation or reasonable fear.

Mr. Alzamari has provided no convincing reason why he should be treated differently than any other fact witness to a crime. Individuals testify in criminal matters all the time, sometimes as cooperating witnesses, putting themselves at no less risk of harm to their public reputation or their safety than Mr. Alzamari postulates from his role as a witness in this civil suit, and that information is routinely made public. The 9/11 Commission itself had no hesitation identifying individuals who, based on its limited investigation, had interacted with the hijackers. Mr. Alzamari's effort to seal from public view the most basic facts about his interactions with the hijackers is simply further proof of the highly unorthodox situation that Mr. Alzamari himself has created, through unjustified *ex parte* communications with the Court and specious contentions of "damage" and "disruption" to keep basic facts from the public and the 9/11 Families.

Finally, the FBI has taken no position as to the redactions on page 1 – a strong indication that it does not believe that any of the information there is subject to any protective order or any other basis for sealing, which should be taken into further consideration by this Court in rejecting Mr. Alzamari's improper redaction requests.

  2.   **Pages 5-6: proposed redactions o** ███████████████████████████████
███████████████████████████████████████████████████

*FBI's position*: These redactions were proposed by the Court when the July 20 Order was first transmitted to the parties. For the first redaction at issue, the July 20 Order cites to page 52 of Mr. Alzamari's deposition transcript, and indicates that the language in this proposed redaction represents Mr. Alzamari's testimony explaining a certain phrase from the ███████ FBI 302. *See* ECF No. 6224-9 (filed under seal) at ███████. In fact, Mr. Alzamari's testimony at lines 20-24 of page 52 of his transcript—which includes the language from this proposed redaction— consists of Mr. Alzamari reading a portion of the ███████ 302 so that he can later (at lines 52:25 – 53:7) provide testimony clarifying the 302. For the second redaction at issue, the language should remain sealed because it is a clarification of a statement attributed to Mr. Alzamari in the ███████ 302. The PECs state that Mr. Alzamari separately provided this information to their investigator, Catherine Manherz Hunt, but that is beside the point. The information remains protected in the context of the 302 because it reveals that the information was sought by and provided to the FBI in the course of its investigation, and is contained within a document produced subject to the Protective Order. The FBI therefore believes the Court correctly proposed both pieces of information for redaction pursuant to the Protective Order.

With regard to these and the other proposed redactions discussed below, the FBI notes that public disclosure of the contents of 302 interview reports for particular witnesses has the potential to compromise the integrity of an FBI investigation by revealing to other witnesses and potential witnesses the questions that were asked by the FBI and the specific information reported to the FBI as part of its investigation. Such public disclosures also can also pose a threat to the safety and security of witnesses whose statements are reflected in the 302, as well as discourage candor and cooperation of future witnesses with FBI investigations.

*PECs' position*: As to the specific redactions proposed above, the content that the FBI proposes be redacted has already been publicly discussed and is sourced to non-FBI documents. ███████████████ was a statement that Mr. Alzamari voluntarily made to former FBI Special Agent

Catherine Mannherz Hunt, an investigator for Plaintiffs.³



    While these statements may not ▉▉▉▉▉▉▉▉ language Mr. Alzamari used during the written question procedure, the material information communicated ▉▉▉▉▉▉▉▉▉▉.

    Nor can the FBI's generalized assertion above that disclosure of information that appears in 302 interview reports would compromise the integrity of "an FBI investigation" justify any redactions. First, the FBI has not identified what, if any, investigation might actually be compromised. As the PECs have argued in the context of other briefing (*see* ECF No. 6310 at 13), the FBI has produced no evidence of an ongoing 9/11 investigation. Second, as the FBI well knows, the cooperation of witnesses is frequently made public in criminal proceedings, where courts regularly hold open trials during which cooperators testify, describing their collaboration with the FBI or other law enforcement agencies, with transcripts that describe such cooperation available to the public.⁴ The "threat" to unidentified investigations by revealing that the federal government interviews witnesses (a fact that all members of the general public, including those potentially involved in criminal conduct, must know) is no greater here than in any other criminal case and cannot overcome the burden in favor of public access to judicial filings. Last, the fact

---

³ Alzamari's contact with the hijackers was a fact that Plaintiffs' investigator uncovered prior to the FBI's production of its interview reports. *See* ECF No. 6154-4, filed publicly, 2018 Declaration of Catherine Mannherz Hunt ("2018 Hunt Decl.") at ¶ 24 ("During my interview of Mr. Johar and his attorney, Mr. Johar also identified two other individuals as having contact with [the hijackers]. Mohdar Abdullah and an acquaintance of Mr. Johar's named Akram Alzamari."); *see also* ECF No. 6154-3, filed publicly, 2020 Declaration of Catherine Mannherz Hunt ("2020 Hunt Decl.") at ¶ 19.

⁴ As one court recently observed, the trend in the Second Circuit and elsewhere has been to "accord" even formal acknowledgement of cooperation in U.S.S.G. § 5K1.1 submissions "a presumptive right of access under the First Amendment or, at minimum, the common law." *United States v. Sater*, No. 98-CR-1101 (ILG), 2019 WL 3288389, at *1 (E.D.N.Y. July 22, 2019) at fn 3 (listing cases). In the *Sater* case, the court ruled, among other things, that the vast majority of the record, including the cooperator's sentencing memorandum which detailed chapter and verse of his decade-long work for United States law enforcement and intelligence agencies including gathering sensitive Russian military intelligence and traveling to Central Asia to gain information about Osama bin Laden and al Qaeda had to be unsealed and available to the public. *See* 98-cr-1101 (E.D.N.Y) (ILG) ECF No. 299 (unsealed letter by Sater's counsel detailing his activities on the government's behalf). These detailed revelations about Sater's clandestine and undercover work were made public despite arguments of potential for damage to law enforcement that go well beyond any of the interests raised by the information in the July 20 Order. (This information is also far more salacious and potentially "disruptive" and "damaging" than the information that Mr. Alzamari seeks to redact.)

that Mr. Alzamari was interviewed by FBI agents has appeared in the docket repeatedly (*see* ECF No. 4496 at 11, ECF no. 4528 at 8, ECF No. 6154-4 at 6), was information that the witness freely shared with Plaintiffs' investigator and the FBI has not objected to making those references publicly available. Indeed, even in the context of the July 20 Order, the FBI has not proposed redacting references to FBI interviews of Mr. Alzamari and the resulting interview reports, only the number and dates of those interviews. *See* ECF No. 6322 at 2 ("In November 2018, the FBI produced reports of its [redacted] interviews of Alzamari conducted on [redacted].") and 6 ("Alzamari, furthermore, confirmed that [redacted], but claimed, contrary to the description in the 302, that he did not see [redacted]." The FBI's asserted concern about the effect that publicly docketing some statements showing the existence of FBI interviews of Mr. Alzamari could have on other purported investigations cannot be squared with its past (and current) willingness to publicly docket other statements that do the very same.

3. **Page 6: proposed redaction of** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*FBI's position*: This redaction was proposed by the Court when the July 20 Order was first transmitted to the parties. The language in this proposed redaction should remain sealed because it is a direct quotation from the FBI 302 report that memorializes the FBI's ▮▮▮▮ interview of Mr. Alzamari. *See* ECF No. 6224-10 (filed under seal) at ▮▮▮▮. The PECs claim that the language at issue in this proposed redaction is equivalent to statements made by Mr. Alzamari to the PECs' investigator, Ms. Hunt. The FBI has reviewed Ms. Hunt's declarations of April 21, 2020 and September 26, 2018, *see* ECF Nos. 6156-3 and 6156-4 (both filed under seal),[5] and none of the information regarding Mr. Alzamari in those declarations matches the information from the ▮▮▮▮ 302 that is quoted in the July 20 Order. Even if Mr. Alzamari had separately made the identified statements to Ms. Hunt, the information proposed to be redacted reveals additional information, namely, what Mr. Alzamari told the FBI. The FBI therefore believes the Court correctly proposed this information for redaction pursuant to the Protective Order.

*PECs' position*: As with the proposed redactions in point 2, the information here appears in Ms. Hunt's publicly docketed declaration. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ While this is not the exact language in the July 20 Order, it communicates the same information. To the extent the FBI has any legitimate concern in protecting the fact that a statement came from a 302, the Court could simply redact the phrase "in a different 302," which would adequately address the FBI's concern in a narrower way, better preserving the public's access to the content of the July 20 Order.

---

[5] The PECs note that the same two declarations that the FBI cites above as having been filed under seal were also filed in their identical versions on the public docket. *Compare* ECF Nos. 6154-3 and 6154-4 with 6156-3 and 6156-4. The statements in Ms. Hunt's declarations were obtained during her August 2018 interview of Akram Alzamari, which took place prior to the FBI's production of the 302 interview reports of Alzamari and thus cannot be said to be derived at all from any FBI materials.

4. **Page 6: all proposed redactions in the sentence beginning "Alzamari corrected minor descriptions regarding the meeting . . . ."**

*FBI's position*: Most of the redactions in this sentence were proposed by the Court when the July 20 Order was first transmitted to the parties, and the FBI requests only limited additional redaction of the word ▌▌▌▌ which is tied to the redactions of the references to ▌▌▌▌▌▌▌. All of these proposed redactions should remain sealed because each of the redactions reveals the contents of portions of the FBI 302 report that memorialize the FBI's ▌▌▌▌▌▌▌ interview of Mr. Alzamari. *See* ECF No. 6224-9 (filed under seal) at ▌▌▌▌▌▌▌▌▌ This sentence of the July 20 Order focuses on language from ▌▌▌▌▌▌▌ 302 regarding Mr. Alzamari's knowledge about ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. While information has been made public regarding ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌▌ the FBI is not aware of any of those reports mentioning ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ let alone that Mr. Alzamari provided such information to the FBI. The FBI therefore believes the Court correctly proposed this information for redaction pursuant to the Protective Order.

*Mr. Alzamari's position*: The limited proposed redactions by Mr. Alzamari were proposed on August 10, 2020. Mr. Alzamari believes that the Court should redact "the meeting at" because that phrase is part of a description of the contents of an FBI 302 report and the sentence is explaining that Mr. Alzamari provided corrections to "minor descriptions" contained in that report.

*PECs' position*: Neither the FBI nor Mr. Alzamari have met their burden in establishing that the phrase "the meeting at ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ must be redacted. It is a widely-reported fact that ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ and appears in, among other public sources, the plaintiffs' complaints and the 9/11 Commission's publicly reported interviews. *See* ECF No. 3452 Consolidated Amended Complaint, March 1, 2017 ▌▌▌▌▌ 9/11 Commission Report ▌▌▌▌▌▌ ECF No. 3783-7 (Declaration of Former FBI Special Agent David Mitchell) ▌▌▌▌▌▌▌▌ *see also* Berger, J.M. "Anwar Al-Awlaki's Links to the September 11 Hijackers," *The Atlantic Magazine*, Sept. 9, 2011 ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌.

The proposed redactions are premised only on the assertion that Mr. Alzamari's knowledge of the meeting was initially revealed during his interviews with law enforcement agents. Yet the FBI has no objection to the public knowing that Mr. Alzamari described a meeting, only that he – like many others – knew that the meeting took place ▌▌▌▌▌▌▌▌ ▌▌▌▌▌ There is no logical reason to excise from the public record the already public information that the meeting took place ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ simply because the July 20 Order might ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌[6]

---

[6] The fallaciousness of the FBI's position here is confirmed by its declassification (following Freedom of Information Act requests) years ago of several other reports that refer to the ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ as described by witnesses during their interviews. *See* PECs Exhibit B hereto (FBI Sept. 4, 2002 Report at ▌▌▌▌▌▌ and April 15, 2002 Report at ▌▌). Other witnesses have revealed ▌▌▌▌▌▌▌▌▌▌▌▌▌▌ meeting with no objection by the FBI. *See* PECs Exhibit C hereto (▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

Further, this Court should not allow Mr. Alzamari to broaden the FBI's protective order by seeking redactions based on it that even the FBI does not request. The FBI has rightly acknowledged that the phrase "the meeting at" should not be redacted and Mr. Alzamari has no standing to challenge that FBI decision.

5. **Page 6: proposed redaction of "Thumairy and the hijackers ▮▮▮▮▮ knew each other" (the PECs are not challenging redaction of the word ▮▮▮▮▮**

   *FBI's position:* This redaction was proposed by the Court when the July 20 Order was first transmitted to the parties. The language in this proposed redaction should remain sealed because it reveals information that is contained in the FBI 302 report that memorializes the FBI's ▮▮▮▮▮ interview of Mr. Alzamari, both by confirming certain information in the 302 ▮▮▮▮▮ and by disputing certain information contained in the 302 ▮▮▮▮▮ *See* ECF No. 6224-9 (filed under seal) at ▮▮▮▮▮ The PECs' recognition that the word ▮▮▮▮▮ must be redacted underscores that the sentence would reveal the contents of the FBI 302. The FBI therefore believes the Court correctly proposed this information for redaction pursuant to the Protective Order.

   *PECs' position*: Again, that Thumairy interacted with the 9/11 hijackers is a widely reported fact and a matter of public record that should not be redacted. *See* ECF No. 3452 Consolidated Amended Complaint at ¶ 158; 17-cv-2003 (S.D.N.Y.) ECF No. 1 *Ashton* Complaint at ¶ 44c, ECF No. 3780-4 (Declaration of Stephen K. Moore) at 2, ECF No. 6292-1 (FBI 2012 Summary Review); ECF No. 6154-3 (Declaration of Catherine Manherz Hunt) at 6. Mr. Alzamari simply confirmed this public information during his response to the written questions; that confirmation does not rely on the content of the FBI 302s and thus falls outside the scope of the FBI's protective order. The PECs have agreed to redaction of the word ▮▮▮▮▮ because that is the only reference to a statement contained in a 302 but not elsewhere.

6. **Page 8: proposed redaction of ▮▮▮▮▮ but nothing else in that sentence or on that page**

   *FBI's position:* This redaction was proposed by the Court when the July 20 Order was first transmitted to the parties. The language in this proposed redaction should remain sealed ▮▮▮▮▮ *See* ECF No. 6224-9 (filed under seal) at ▮▮▮▮▮ The Court's Order cites to a communication from Mr. Alzamari's counsel, in which counsel apparently advised the PECs that Mr. Alzamari would not be able to testify to certain statements ▮▮▮▮▮ While the fact that ▮▮▮▮▮ may have been revealed in other contexts, in the context of the statement on page 8 of the Order ▮▮▮▮▮ Indeed, the PECs' recognition that other text in this sentence must be redacted underscores that the sentence ▮▮▮▮▮ The FBI therefore believes the Court correctly proposed this information for redaction pursuant to the Protective Order.

---

Just as with the reports involving Mr. Alzamari, the released FBI documents necessarily reveal that certain witnesses had information about that meeting – but, apparently, did not trigger the same concerns about inhibiting purported investigations or any of the other arguments the FBI raises now in favor of redaction.

***PECs' position***: Former FBI Special Agent Hunt took a statement from Mr. Alzamari that ██████████████████████████████ which was not based on FBI 302s (as the FBI had not yet produced them) and which was voluntarily offered in August 2018. ECF No. 6154-3 ██████████████████████████████ While the July 20 Order refers to a statement by Alzamari's counsel, it is wholly consistent with the statement Mr. Alzamari gave to Ms. Hunt and also does not refer directly or indirectly to the FBI 302s or their contents. Though the additional information in that sentence is likewise not sourced to a 302, because it is not expressly stated elsewhere the PECs treat it differently than the phrase ██████████████████████████████. The FBI overstates how readily, if at all, any member of the public not privy to the actual communications between Mr. Alzamari's counsel and the PECs could divine the role the 302s may have played in that proposed redaction. While the July 20 Order cites to an exhibit that includes a reference to the 302s, that exhibit (ECF No. 6224-3) is under seal. It would be impossible for any member of the public to connect the already public fact that ██████████████████████████████ from the contested clause on page 8 and the phrase ██████████████████████████████ should therefore not be redacted.

We thank the Court for its consideration of and attention to this matter.

Respectfully submitted,

| | |
|---|---|
| AUDREY STRAUSS<br>Acting United States Attorney for the<br>Southern District of New York<br>*Counsel for Federal Bureau of Investigation*<br><br>By:  */s/ Sarah S. Normand*<br>    SARAH S. NORMAND<br>    JEANNETTE A. VARGAS<br>    ANDREW E. KRAUSE<br>    Assistant United States Attorneys<br>    86 Chambers Street, 3rd Floor<br>    New York, New York Y 10007<br>    Telephone: 212-637-2709/2678/2769 | MORGAN, LEWIS & BOCKIUS LLP<br>*Counsel for Akram Alzamari*<br><br>By:  */s/ Kelly A. Moore*<br>    Kelly A. Moore<br>    John M. Maloy<br>    101 Park Avenue<br>    New York, New York 10178<br>    Telephone. (212) 309-6000<br>    Facsimile: (212) 309-6001 |
| KREINDLER & KREINDLER<br><br>By:  */s/ Megan Benett*<br>    Megan Benett, Esquire<br>    Andrew J. Maloney, Esquire<br>    750 Third Avenue, 32nd Floor<br>    New York, NY 10017<br><br>MDL 1570 Plaintiffs' Exec. Committee for Personal Injury and Death Claims | MOTLEY RICE<br><br>By:  */s/ Robert T. Haefele*<br>    Robert T. Haefele, Esquire<br>    28 Bridgeside Boulevard<br>    Mt. Pleasant, SC 29464<br><br>MDL 1570 Plaintiffs' Exec. Committee for Personal Injury and Death Claims |

COZEN O'CONNOR

By:  */s/ Sean P. Carter*
    Sean P. Carter, Esquire
    1650 Market Street, Suite 2800
    Philadelphia, PA 19103

MDL 1570 Plaintiffs' Exec. Committee for Commercial Claims

Enclosures