UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

In re Terrorist Attacks On September 11, 2001   )   03 MDL 1570 (GBD) (SN)
)
)
)

This document relates to:

*All Actions*

# PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF RULE 72 OBJECTIONS TO THE MAGISTRATE JUDGE'S DECEMBER 1, 2020 ORDER & OPINION

Plaintiffs' Rule 72 Objections reasonably noted the potential challenges inherent in this complex multidistrict litigation proceeding, coupled with difficulties arising from the COVID-19 pandemic and myriad other circumstances, that may impede even the most diligent efforts to meet the deadlines set by Magistrate Judge Netburn's December 1, 2020 Opinion & Order. *See* ECF 6546 ("December 1 Order"). On that basis, Plaintiffs raised timely objections to that portion of the December 1 Order indicating that those deadlines were inflexible. Meanwhile, Plaintiffs are making every effort to complete depositions in accordance with the December 1 Order, and in fact held the first remote deposition of a Kingdom witness on Wednesday and Thursday of this week. Plaintiffs have noticed additional Kingdom depositions for January 26-27, 2021 and February 10-11, 2021, although the Kingdom has indicated today for the first time that it may not present the witness noticed for the latter date, a circumstance that only underscores the validity of Plaintiffs' concerns.

In its Opposition, the Kingdom of Saudi Arabia attempts to defend the December 1 Order. But the Opposition is internally inconsistent and cites cases that are either factually inapplicable or in fact support Plaintiffs' position. Accordingly, the Court should sustain Plaintiffs' objections.

docs-100347927.1

## ARGUMENT

I. **Notwithstanding the Kingdom's Opposition, Imposing an Inflexible Discovery Deadline During a Pandemic, in a Case With Dozens of International Witnesses, and Demonstrable Logistical Challenges, Was Clear Error.**

The Kingdom's Opposition declares, "all deadlines are final," "[a]ny assumption to the contrary [i]s unreasonable," and court-imposed discovery deadlines "matter." Opposition (Opp.) at 6 (quoting *Peterson v. Home Depot U.S.A., Inc.*, 2014 WL 1355622, at *4 (S.D.N.Y. Apr. 4, 2014); *Frydman v. Verschleiser*, 2017 WL 1155919, at *2 (S.D.N.Y. Mar. 27, 2017)). But the same Opposition later states that orders "governing discovery" are actually "interlocutory orders," and the Court "possesses the inherent authority to *sua sponte* reconsider its own interlocutory orders before they become final." Opp. at 13 (quoting *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail Rigging, LLC*, 2015 WL 545565, at *2 (S.D.N.Y. Feb. 9, 2015)). By splicing together out-of-context quotes from different courts, the Kingdom's official position appears to be that orders are "final" when the Kingdom likes what the order says, but a judge has "full discretion" to change an order when the Kingdom does not like what the order says.

There are many challenges that could, and indeed will likely play out in the next six months. Plaintiffs therefore wish to preserve their position that a "no adjournments" approach in this context is unreasonable, and wish to inform the Court of this now, rather than raising it for the first time in June and being told they are acting too late. Plaintiffs and the Court have correctly identified pandemic-related difficulties; outstanding document discovery; logistical issues with translators; technical issues; scheduling issues; witness availability issues; ongoing expert discovery; witness intimidation issues; Ramadan; the possibility of witnesses, interpreters, court reporters and/or counsel contracting COVID-19; and, other challenges that could impact the parties' ability to complete depositions by the end of June during a pandemic. These and

other unexpected issues may almost certainly affect the schedule and make it impossible for Plaintiffs to complete the necessary work by the end of June.

Both *Peterson* and *Frydman* are readily distinguishable.[1] In *Peterson*, the court denied an "eleventh-hour request" for an extension of discovery deadlines (and a motion for reconsideration) where the plaintiff should have known that he would need more time to conduct a metallurgical analysis and would have had time to complete the analysis under the discovery schedule if he had acted diligently. Similarly, *Frydman* is distinguishable because plaintiffs in that case sought to introduce two expert witness reports *after* the deadline had passed to disclose experts and just nine days before the close of all discovery. The court specifically noted that if there was some confusion about what the discovery deadlines meant, the parties should have asked the court for clarification well in advance of the deadline, especially if the expert reports were so crucial to the plaintiffs' case.

Here, Plaintiffs opposed any changes to Judge Netburn's original May 11, 2020 discovery Order (ECF 6204) ("May Order") and are now filing Objections to the December 1 Order months before the close of fact depositions, precisely because they wish to avoid making an eleventh-hour request to push discovery deadlines in light of likely logistical challenges. Plaintiffs object now because completing depositions is critical to their right to fairly conclude jurisdictional discovery as ordered by the Court.

The cases the Kingdom cites that purportedly support taking depositions remotely, *see Rouviere v. DePuy Orthopaedics, Inc.*, 471 F. Supp. 3d 571, 574 (S.D.N.Y. 2020); *American Broad. Cos. v. Aereo, Inc.*, 2013 WL 12328764 (S.D.N.Y. Oct. 17, 2013), also undermine the

---

[1] *Federal Ins. Co. v. Kingsbury Props., Ltd.*, 1992 WL 380980, at *2 (S.D.N.Y. Dec. 7, 1992), Opp. at 10, is similarly distinguishable in part because the information sought in discovery there "was discoverable when the suit was first commenced." That is obviously not the case here where Plaintiffs still await documents from various sources, including the defendants.

Kingdom's argument defending the Court's hard deadline. The procedural history in *Rouviere*, for example, shows that court's painstaking effort, multiple times, to extend the close of discovery due to COVID-related issues.[2] Similarly, the district court judge in *Aereo* specifically noted that immediately after the Magistrate set a discovery deadline, defendant informed the Magistrate that it was unreasonably short. The Magistrate then promptly extended the deadline by 4 months. Here too Plaintiffs immediately have requested added flexibility from the Court regarding the discovery deadline, in light of COVID-19 and other logistical concerns—a request that the Magistrate Judge and this Court should give due consideration.

## II. Requiring Plaintiffs to Conduct In-Person Depositions in Saudi Arabia Was Clear Error.

According to the Kingdom's Opposition, Judge Netburn has "full discretion" to change any order "governing discovery." *See* Opp. at 13 (citing *Housing Works, Inc. v. City of New York*, 203 F.3d 176, 178 (2d Cir. 2000) (per curiam); *Grace v. Rosenstock*, 228 F.3d 40, 51 (2d Cir. 2000); *Chartis*, 2015 WL 545565, at *2). In reality, however, these cases limit a judge's discretion to change an order "when justice so requires." *See Chartis,* 2015 WL 545565, at *2 (judge could change an order because of "clear error," to correct a "manifest injustice," if there was a change in law, or if new evidence is discovered); *see also Grace*, 228 F.3d at 51. Here, the Order directing the depositions to be conducted in one of the presumptive locations was overturned without any material new facts, any change in law, any clear error, or any injustice that needed correcting. This suggests that such a change in approach was not a proper exercise of discretion, particularly because the Court had previously made specific findings that Saudi Arabia was not a proper location for the depositions. *See* May Order at 2 (no depositions in Saudi

---

[2] *Rouviere* also granted several accommodations to plaintiffs to complete remote depositions, such as increasing the time allowed to complete each deposition to account for logistical issues with sharing documents in a remote setting and authorized cost sharing. Here, the Magistrate offered neither accommodation to Plaintiffs despite this case's complexity.

docs-100347927.1

Arabia based on Plaintiffs' briefing); ECF 6003-2 (Declaration of Andrew J. Maloney III documenting security threats in Saudi Arabia, including mining Twitter for Saudi critics, surveillance of activists, hacking of phones, and threats of murder to witnesses and their family); Hearing before Judge Netburn on March 4, 2020, at 4:21-7:3 (threats to witnesses, including Jamal Khashoggi); Hearing before Judge Mass on February 15, 2012, at 37:4-16 (death of process server). Plaintiffs' counsel should not have to choose between possible security risks and effectively litigating this case.

The Kingdom's reliance on *In re Petition of Boehringer Ingelheim Pharm., Inc. & Boehringer Ingelheim Int'l GmbH, in Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 745 F.3d 216 (7th Cir. 2014) is misplaced. While that court granted mandamus relief to prevent foreign employees from depositions in the United States, it did so because the district court issued that order as a *sanction*, rather than as part of the normal discovery process. The dissent noted 10+ cases where courts correctly ordered deponents to travel to the forum district even though they were foreign citizens and residents. Here the Court already conducted the relevant analysis when it ruled that depositions in the Kingdom would not be safe and required depositions of Saudi witnesses at a Presumptively Acceptable Location. *See* May Order at 2.

Judge Netburn and the Kingdom overly and improperly rely on comity to Plaintiffs' detriment. The U.S. Supreme Court recently heard argument in *Republic* of *Hungary v. Simon*, Dkt. No. 18-1447. During oral argument, several Justices expressed skepticism that judges were equipped to balance comity considerations. *See, e.g.,* Tr. of Oral Arg. 13:40 – 17:36, *Republic of Hungary v. Simon*, (No. 18-1447) (Kagan, J., Gorsuch, J.) (argued Dec. 7, 2020), *available at* https://www.oyez.org/cases/2020/18-1447 ("Tr."). Rather, Congress enacted the Foreign Sovereign Immunities Act ("FSIA") in 1976 specifically to remove an opaque case-by-case

immunity determination from the Executive Branch, and codified immunity determinations across all cases without regard to international political influences. H.R. REP. 94-1487, 7, 1976 U.S.C.C.A.N. 6604, 6606. The Justices expressed doubt that judges would do any better than the Executive at balancing competing international interests, and conceded that judges may in fact do a *worse* job. *See* Tr. at 15:50-15:57 ("At least the executive knew something about foreign affairs and were politically accountable. . . .") (Kagan, J.). It follows that when Congress enacted the Justice Against Sponsors of Terrorism Act ("JASTA") to amend the FSIA specifically with this case against the Kingdom of Saudi Arabia in mind,[3] the Court should not have relied on international comity considerations to reverse its own finding that the Kingdom of Saudi Arabia is not a safe place to hold depositions.

## CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that the Court sustain Plaintiffs' Rule 72 Objections.

Date:  New York, New York
       January 15, 2021

| COZEN O'CONNOR | MOTLEY RICE LLC |
|---|---|
| /s/ *Sean P. Carter, Esq.* | /s/ *Robert T. Haefele, Esq.* |
| Sean P. Carter, Esquire | Robert T. Haefele, Esquire |
| Cozen O'Connor | Motley Rice LLC |
| 1650 Market Street, Suite 2800 | 28 Bridgeside Boulevard |
| Philadelphia, PA 19103 | Mt. Pleasant, SC 29464 |

---

[3] 114 Cong. Rec. H5241, H5243 (2016) ("The Kingdom has blood on its hands. Is it the blood of the victims of 9/11? Possibly."); 114 Cong. Rec. S6167 (2016) ("If the Saudi Government had no involvement in 9/11, it has nothing to fear. But if it was culpable, it should be held accountable. That is the basic principle of this measure."); 114 Cong. Rec. S6026 (2016) ("If the Saudi Government was not complicit in the attack on 9/11, the plaintiffs will fail to prove such complicity in an American court. Justice will have been served, and the Saudis will be vindicated after years of suspicion. But if it is proven in an American court that the Saudi Government was complicit in the attacks on 9/11, justice will have been served and we—not the Saudis—will have justification to be very angry."); JASTA Hearing on July 14, 2016, at 9-10 (response of Chairman Franks).

Tel: (215) 665-2105
E-mail: scarter1@cozen.com

*On behalf of the MDL 1570 Plaintiffs' Exec. Committees*

KREINDLER & KREINDLER LLP

 */s/ Steven R. Pounian, Esq.*
Steven R. Pounian, Esquire
Kreindler & Kreindler LLP
750 Third Avenue, 32nd Floor
New York, NY 10017
Tel: (212) 687-8181
E-mail: spounian@kreindler.com

*On behalf of the MDL 1570 Plaintiffs' Exec. Committees*

Tel: (843) 216-9184
E-mail: rhaefele@motleyrice.com

*On behalf of the MDL 1570 Plaintiffs' Exec. Committees*

ANDERSON KILL P.C.

 */s/ Jerry S. Goldman, Esq.*
Jerry S. Goldman, Esquire
Bruce Strong, Esquire
Anderson Kill P.C.
1251 Avenue of the Americas
New York, NY 10020
Ph: (212) 278-1000
E-mail: jgoldman@andersonkill.com

*On behalf of the MDL 1570 Plaintiffs' Exec. Committees*

docs-100347927.1