UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

In re:

       **TERRORIST ATTACKS ON**
       **SEPTEMBER 11, 2001**

------------------------------------------------------------------X

**03-MDL-01570 (GBD)(SN)**

**REPORT &
RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:

      Estate of John P. O'Neill, Sr. v. Al Baraka Investment and Development Corporation et
al., No. 04-CV-1923 (GBD)(SN)

      On March 10, 2004, the estates of John P. O'Neill, Sr., Dorothy O'Neill, and John F.

O'Neill, and individuals John P. O'Neill, Jr., Christine O'Neill, and Carol O'Neill (together

"Plaintiffs" or the "O'Neill Plaintiffs") filed a class action complaint against the International

Islamic Relief Organization ("IIRO"), the Muslim World League ("MWL"), the World

Assembly of Muslim Youth ("WAMY"), Yassin Kadi ("Kadi"), and Dubai Islamic Bank

("DIB") (together, "Defendants" or the "O'Neill Defendants"), among others, stemming from the

terrorist attacks of September 11, 2001 (the "9/11 Attacks"). Plaintiffs seek to certify a class (the

"Proposed Class") composed of all victims of the 9/11 Attacks or their estates that do not have a

pending case in the Multidistrict Litigation captioned In re Terrorist Attacks on September 11,

2001 (the "MDL") against each of the O'Neill Defendants.[1] See ECF No. 5675.[2] Defendants

---

[1] Plaintiffs also move for class certification against the defendants who have defaulted, including, among others, Rabita Trust, the Al Haramain Islamic Foundation, Inc., the Benevolence International Foundation, and various al Qaeda leaders, including the hijackers of the 9/11 Attacks.
[2] ECF citations are to the MDL docket unless indicated otherwise.

oppose the motion. See ECF No. 6030 ("Defs. Opp."). On October 29, 2020, the Hon. George B. Daniels referred Plaintiffs' motion to me for a report and recommendation. For the reasons below, I recommend the Court DENY the motion for class certification.

**BACKGROUND**

I.      **Relief Following the 9/11 Attacks**

      A.      **MDL Litigation**

In 2003, the Judicial Panel on Multidistrict Litigation consolidated and transferred to the Southern District of New York, for pretrial proceedings, all lawsuits against "an array of defendants who allegedly promoted, financed, sponsored, or otherwise supported the acts of terrorists that led to the deaths and injuries arising from the September 11, 2001 attacks on the United States." ECF No. 1. Since that time, thousands of named plaintiffs across more than 300 complaints have brought suit as part of this MDL against scores of defendants. See ECF No. 6031 ("Cottreau Decl."), ¶ 7. The numerous complaints comprising this MDL litigation plead primary and concerted theories of liability for violation of international, federal and state law. For nearly 20 years, this Court has managed initial motion practice, document discovery, fact and expert witness depositions, third-party discovery, default proceedings, and the allocation of damages awards, among other proceedings.

The plaintiffs who have elected to bring claims through this MDL (the "MDL Plaintiffs") have chosen to sue various defendants. For instance, some MDL Plaintiffs currently maintain suits against the Islamic Republic of Iran, the Kingdom of Saudi Arabia, and Sudan. Some MDL Plaintiffs are also actively engaged in litigation against individuals, nonprofit organizations, and commercial entities. Many MDL Plaintiffs have decided to pursue claims related to the 9/11 Attacks by suing some, but not all of the O'Neill Defendants. See Cottreau Decl., ¶ 10. Other

2

MDL Plaintiffs have chosen to pursue judgments against sovereign defendants, such as Iran or

Saudi Arabia, while declining to pursue claims against any of the O'Neill Defendants. See Defs.

Opp. at 10 (noting plaintiffs who have sued Iran but not the O'Neill Defendants and noting

plaintiffs who will voluntarily dismiss claims against the O'Neill Defendants).

     To date, the Court has dismissed numerous defendants from MDL cases for lack of

personal jurisdiction and has also dismissed claims brought under the Anti-Terrorism Act

("ATA"), 18 U.S.C. § 2333; the Alien Tort Statute, 28 U.S.C. § 1350; the Torture Victim

Protection Act, 28 U.S.C. § 1350 note (a)(1); the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1962; and state law. See, e.g., In Terrorist Attacks on

Sept. 11, 2001, 740 F. Supp. 2d 494, 505 & 514–15 (S.D.N.Y. 2010). Suits against a number of

individual and sovereign defendants remain active in various stages of pretrial proceedings.

### B.    Victims' Funds

     In addition to, or separate from, litigation, many eligible individuals have also submitted

claims for compensation through programs enacted by Congress to provide monetary relief to

victims of the 9/11 Attacks. Under the relevant statutory scheme, a personal representative of a

deceased individual may submit an administrative claim to a Special Master for payment through

the Victims' Compensation Fund (the "VCF"). See Air Transp. Safety & System Stabilization

Act ("Transp. Act") § 405(a)(1) Pub. L. No. 107-42-115 Stat. 230 (2001) (codified as amended

at 49 U.S.C. § 40101 note); 28 C.F.R. § 104.4(b)(1). The submission of a VCF claim "waives the

right to file a civil action" for damages "sustained as a result of the terrorist-related aircraft

crashes of September 11, 2001," except "to recover collateral source obligations" or against a

"knowing participant in any conspiracy to hijack any aircraft or commit any terrorist act."

Transp. Act § 405(c)(3)(C)(i). The VCF has paid nearly $6 billion to claimants for relief related

to the 9/11 Attacks. Cottreau Decl., Ex. B at 12. The O'Neill Plaintiffs submitted a successful

claim in 2003 on behalf of the Estate of John P. O'Neill, Sr. and received a payment from the

VCF. Defs. Opp. at 11.

Additionally, the Justice for United States Victims of State-Sponsored Terrorism Act, 34

U.S.C. § 20144 (2015), established the United States Victims of State Sponsored Terrorism Fund

(the "VSST") to provide compensation to eligible claimants who hold judgments against state

sponsors of terrorism arising from acts of international terrorism. Cottreau Decl., Ex. A. The

VSST has paid more than $2.1 billion to claimants for relief related to the 9/11 Attacks. Id. at 2.

## II.    Plaintiffs' First Consolidated Complaint

The O'Neill Plaintiffs brought suit on March 10, 2004, and later filed a First

Consolidated Complaint, the current operative complaint in this action (the "FCC"). See

generally ECF No. 1570. The O'Neill Plaintiffs are the estate and surviving family members of

John P. O'Neill Sr., who died on September 11, 2001, in the North Tower of the World Trade

Center in New York. See ECF No. 5756 ("Affidavit of Christine I. O'Neill"), ¶¶ 2, 3, 7, 8, 11.

Each O'Neill Plaintiff is or was a U.S. national. Defs. Opp. at 6. The O'Neill Plaintiffs are six of

approximately 2,649 plaintiffs who have brought suit against the entire group of the O'Neill

Defendants. Approximately 3,561 plaintiffs have separately elected to sue some, but not all, of

the O'Neill Defendants. Cottreau Decl. ¶¶ 9–10.

In short, the O'Neill Plaintiffs claim that the Defendants conspired with and provided

material support to Osama bin Laden, al Qaeda, the Taliban, and others who perpetrated the 9/11

Attacks, which caused injury and death to thousands of individuals. Plaintiffs seek damages

under the Torture Victim Protection Act, the Alien Tort Claims Act, RICO, the Anti-Terrorism

Act, the Foreign Sovereign Immunities Act, 28 U.S.C. § 1606; and several common law tort

4

theories. The common law tort theories include claims under the laws of unspecified states for negligence, negligent and/or intentional infliction of emotional distress, wrongful death, and survival. See FCC at 52–58.

Several of the O'Neill Defendants moved to dismiss, and this Court resolved those motions between 2005 and 2010. See In re Terrorist Attacks on Sept. 11, 2001, 718 F. Supp. 2d 456, 490, 495 (S.D.N.Y. 2010); In re Terrorist Attacks on Sept. 11, 2001, 392 F. Supp. 2d 539, 575 (S.D.N.Y. 2005). The Court dismissed claims under the Alien Tort Statute, Torture Victim Prevention Act, RICO, and common-law negligence. The Court also dismissed defendant Kadi for lack of personal jurisdiction, and granted in part and denied in part WAMY's motion to dismiss for failure to state a claim. See In re Terrorist Attacks on Sept. 11, 2001, 740 F. Supp. 2d 494, 508, 515–16, 524 (2010); In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 682 (2d Cir. 2013) (vacating and remanding for jurisdictional discovery as to Kadi).

## III.   The Proposed Class and Class Representatives

Plaintiffs move under Rule 23(a) and 23(b)(3) to certify a class according to a modified version of the class definition set forth in the FCC. See ECF No. 5676 ("Pls. Br.") at 6–7, 12. The Proposed Class would consist of the legal representatives of decedents, and those decedents' spouses, children, parents, or siblings, who died in the four separate, but coordinated terrorist attacks on September 11, 2001, at the World Trade Center in New York, the Pentagon in Virginia, and near Shanksville, Pennsylvania. The Proposed Class definition carves out two groups from the class: (1) individuals "identified as or otherwise shown to have perpetrated, aided and abetted, conspired in regard to, or otherwise supported" the 9/11 Attacks; and (2) individuals or their legal representatives who, as of January 15, 2020, already have cases pending

in the Multidistrict Litigation against all of the O'Neill Defendants.[3] The Proposed Class

Representatives are the estate and surviving mother, father, wife, and children of John P.

O'Neill, Sr.

Defendants oppose the motion for class certification on several grounds. Specifically,

Defendants argue that: (1) common questions do not predominate; (2) a class action is not a

superior procedure to manage the case's claims, especially when compared to the MDL; and (3)

the proposed named plaintiffs are neither typical nor adequate representatives of the Proposed

Class.

## DISCUSSION

### I.      Legal Standard for Class Certification

Under Rule 23(a), one or more members of a class may sue or be sued as representative

parties on behalf of all members only if: (1) the class is so numerous that joinder of all members

is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class. Fed. R.

Civ. P. 23. In addition, courts in the Second Circuit often require that the class be

"ascertainable." Brecher v. Republic of Argentina, 806 F.3d 22, 24 (2d Cir. 2015) ("Like our

sister Circuits, we have recognized an 'implied requirement of ascertainability' in Rule 23 of the

Federal Rules of Civil Procedure." (citations omitted)). Furthermore, the class "must . . . be

defined in such a way that anyone within it would have standing." Denney v. Deutsche Bank

AG, 443 F.3d 253, 264 (2d Cir. 2006).

---

[3] But includes the following named plaintiffs: the Estate of John P. O'Neill, Sr., the Estate of John F. O'Neill, the Estate of Dorothy A. O'Neill, John P. O'Neill, Jr., Carol A. O'Neill, and Christine I. O'Neill.

In addition to satisfying the prerequisites of Rule 23(a), the plaintiff must qualify the proposed class under one of three categories under Rule 23(b). Fed. R. Civ. P. 23(b). Under Rule 23(b)(3), a plaintiff must establish (1) predominance—"that the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) superiority—"that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); see also Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 137 (2d Cir. 2015).

Rule 23 is more than a "mere pleading standard." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). To prevail on a motion for class certification, a movant must establish each of Rule 23's requirements by a "preponderance of the evidence." Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008). Trial courts are afforded substantial discretion in determining whether to grant class certification because the district court is often in the best position to assess the propriety of the class and has the ability to alter or modify the class, create subclasses, and decertify the class if and when warranted. See Kaplan v. S.A.C. Capital Advisors, L.P., 311 F.R.D. 373, 378 (S.D.N.Y. 2015).

## II.     Ascertainability

The touchstone of the implied requirement of ascertainability is whether the class is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." Brecher, 806 F.3d at 24 (quoting 7A Wright & Miller, Federal Practice and Procedure § 1760 (3d ed. 1998)). "A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." Id. at 24–25 (quoting Charron v. Pinnacle Grp. N.Y. LLC, 269 F.R.D. 221, 229 (S.D.N.Y. 2010)). Ascertainability imposes a "modest

threshold requirement" that asks only "whether a proposed class is defined using objective criteria that establish a membership with definite boundaries." In re Petrobras Sec., 862 F.3d 250, 269 (2d Cir. 2017). It "will only preclude certification if a proposed class definition is indeterminate in some fundamental way." Id.

Here, the individuals who died as a result of the 9/11 Attacks form an identifiable class based on reference to objective criteria. The Proposed Class includes persons (or their estates) whose deaths were caused by a specific, time-bound set of events in definite locations. The Proposed Class's carve-out based on existing litigation efforts against the O'Neill Defendants can be verified by cross-reference to the lists of plaintiffs in other MDL cases. The identity of all prospective class members is therefore sufficiently definite. Finding that the class is ascertainable, I proceed to analyze whether class certification is appropriate under the requirements imposed by Rule 23.

## III.   Rule 23(b)

Plaintiffs move for class certification under Rule 23(b)(3). A class action is maintainable under Rule 23(b)(3) when the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

### A.   Predominance

Plaintiffs must show predominance by demonstrating that "the issues that are subject to generalized proof, and are thus applicable to the class as a whole, predominate over those issues subject to individualized proof." Moskowitz v. La Suisse, Societe D'Assurances sur la Vie, 282 F.R.D. 54, 62 (S.D.N.Y. 2012) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623

(1997)). The distinction between "individual" and "common" issues is central to the analysis. An individual question or issue is one where "'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized class-wide proof.'" In re Petrobras Sec., 862 F.3d at 270 (quoting Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016) (alteration omitted)). Predominance is not satisfied simply upon a showing that the class claims are rooted in common harm suffered by potential plaintiffs. Id. (citing Amchem Prods., 521 U.S. at 623–24). Instead, the inquiry examines "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." Id. (citing Tyson Foods, 136 S. Ct. at 1045).

In balancing common versus individual questions, courts "assess (1) the elements of the claims and defenses to be litigated, and (2) whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief." In re LIBOR-Based Fin. Instruments Antitrust Litig., 299 F. Supp. 3d 430, 462 (S.D.N.Y. 2018) (hereinafter "In re LIBOR") (internal quotation marks omitted). Where individualized questions permeate the litigation, significant dissimilarities among putative class members' claims make use of the class action device inefficient or unfair, and class certification is not proper. In re Petrobras Sec., 862 F.3d at 270; see also 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1778, at 141 (3d ed. 2005) ("[W]hen individual rather than common issues predominate, the economy and efficiency of class-action treatment are lost and . . . the risk of confusion is magnified." (footnote omitted)). "This analysis is 'more qualitative than quantitative,' and must account for

'the nature and significance of the material common and individual issues in the case.'" In re LIBOR, 299 F. Supp. 3d at 462 (quoting In re Petrobras, 862 F.3d at 271 (alterations and citations omitted)).

In mass tort cases based on discrete accidents or disasters, Rule 23(b)(3) certification is typically granted where plaintiffs demonstrate a cohesiveness of the class based on a "shared experience that is confined in time and place and produces similar effects." Presbyterian Church of Sudan v. Talisman Energy, Inc., 226 F.R.D. 456, 477 (S.D.N.Y. 2005). Certification is proper where common facts not only generate the claims of the class members, but also allow causation to be reasonably derived from those facts and applied to the class generally. See id.; see also In re Methyl Tertiary Butyl Ether Prod. Liab. Litig., 241 F.R.D. 435, 442 (S.D.N.Y. 2007) (hereinafter "In re MTBE") ("[C]ourts will often certify classes involving claims arising out of a mass accident (such as a plane crash or a building collapse) in which causation may be proven on a class-wide basis. . .".). In other words, when a jury can resolve questions of liability with a single decision applicable to the whole class, and the only individual question left to resolve relates to damages, class certification is typically warranted. See id. at 448.

For their claims, Plaintiffs identify several questions on the issue of liability that are appropriately answered by common proof, including—for example—whether and how Defendants took specific actions to support al Qaeda and its individual operatives. In particular, Plaintiffs rely on single-site mass accident cases to support the argument that certification is appropriate here. Defendants argue that individual issues such as variations arising from statutes of limitations and substantive law governing liability, standing, waiver, and damages overwhelm any common issues.

### 1. Choice of Law and State Law Statutes of Limitations

Plaintiffs assert claims for negligence, intentional and/or negligent infliction of emotional distress, survival, and wrongful death under unspecified state law(s). Where, as here, the motion for class certification in an MDL proposes a single nationwide or multistate class based in part on state law, the MDL forum court must undertake a choice-of-law analysis. See 3 Newberg on Class Actions § 10:31 (5th ed. 2020). Therefore, the Court must determine "whether different state laws will apply to different members of the class" by applying New York choice-of-law principles. In re LIBOR, 299 F. Supp. 3d at 595. If certifying the Proposed Class would require the application of the laws of different jurisdictions, the Court must consider whether variations in state law introduce individual questions and, if so, the extent to which those individual questions predominate. Id. The application of multiple states' laws does not necessarily preclude class certification, for example, when no material conflict exists between the applicable states' laws. See Johnson, 780 F.3d at 140–41.

Alternatively, where state law statutes of limitations differ among putative class members, such differences may bar class certification if the determination of the applicable statute of limitations for each class member would predominate over common issues. See Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n, 324 F. Supp. 3d 387, 399–400 (S.D.N.Y. 2018) (denying class certification in part on the ground that individualized statute of limitations questions predominated). Similarly, courts also refrain from granting class certification where "plaintiffs have offered no reliable means of collectively determining how many class members' claims are time-barred." Id. at 398–99 (citing McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 233–34 (2d Cir. 2008)).

Here, the Proposed Class consists of individuals (and estates) of an unknown number of residences with claims based on three separate crash sites: outside Shanksville, PA; in Arlington County, VA; and in New York, NY. For state law claims filed in federal court in New York, courts apply the choice-of-law rules of New York. See Johnson, 780 F.3d at 141. "New York's borrowing statute, C.P.L.R. Section 202, requires the Court to apply the statute of limitations of the 'foreign jurisdiction where a nonresident's cause of action accrued, if that limitations period is shorter than New York's.'" Royal Park Investments, 324 F. Supp. 3d at 399 (quoting Glob. Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 526 (N.Y. 1999)). Under the borrowing statute, an "action accrues at the time and in the place of the injury," and "when an alleged injury is purely economic, the place of injury is usually where the plaintiff resides and sustains the economic impact of the loss." Glob. Fin. Corp., 93 N.Y.2d at 526, 529.

Under this legal framework, therefore, the Court would need to determine, for each Proposed Class member, the location where the claims accrued (i.e., the crash site or the state where the harm occurred) and the corresponding statute of limitations for the relevant specific state law claim. The non-New York plaintiffs' claims must be timely under the shorter limitations period of either New York or the state where the action accrued. This analysis presents significant individual issues, in part because two of the potential jurisdictions have statutes of limitations that could preclude recovery for each state law theory of recovery.[4] See

---

[4] Survival, wrongful death, negligence, and negligent and/or intentional infliction of emotional distress claims governed by Virginia or Pennsylvania law are time-barred after two years. See Va. Code § 8.01-243(A) ("[E]very action for personal injuries, whatever the theory of recovery . . . shall be brought within two years after the cause of action accrues."); 42 Pa. Stat. and Cons. Stat. Ann. § 5524 (West) (two year statute of limitations for intentional infliction of emotional distress and negligence claims under Pennsylvania law); Matharu v. Muir, A.3d 250, 263 (Pa. Super. Ct. 2014) (wrongful death claims and survival claims must be commenced within two years after the death, subject to limited exceptions, under Pennsylvania law). As Plaintiffs commenced this suit more than two years after the accrual of their claims—whether measured by the date on which the tortious activity occurred or the date of the injury–Defendants contend that many Proposed Class members' claims are time-barred. Defs. Opp. at 16–17.

Royal Park Investments, 324 F. Supp. 3d at 399 (citing Royal Park Investments SA/NV v. HSBC Bank USA, N.A., No. 14-CV-8175 (LGS), 2018 WL 679495, at *6 (S.D.N.Y. Feb. 1, 2018)). Proposed class members would be required to offer individual proof of residence and, for members whose claims may be barred by the relevant state law statute of limitations, any evidence in favor of tolling. See Vincent v. Money Store, 915 F. Supp. 2d 553, 562 (S.D.N.Y. 2013) (under New York's borrowing statute, "the Court must consider not just the accrual state's limitations period, but also that state's tolling provisions" in order to determine whether claims are time-barred).

Plaintiffs offer no choice-of-law analysis in support of their contention that common issues predominate, notwithstanding the potential variations in state law. Where plaintiffs of numerous residences raise difficult choice of law questions, the plaintiffs' failure either to discuss or to suggest the manner in which these questions may be resolved counsels against class certification. And, when taken in conjunction with the additional individualized issues outlined below, I find that the choice-of-law issue defeats a finding of predominance under Rule 23(b)(3).

### 3. ATA Standing

Plaintiffs also bring a claim under the ATA, which confers standing only to nationals of the United States or their estates, survivors, or heirs, for injuries to person, property, or business by reason of international terrorism. See 18 U.S.C. § 2333(a); Averbach v. Cairo Amman Bank, No. 19-CV-00004 (GHW), 2020 WL 1130733, at *2 (S.D.N.Y. Mar. 9, 2020) ("Nowhere in the [ATA] does Congress provide remedies for non-nationals claiming damages for personal injuries."); see also O'Sullivan v. Deutsche Bank AG, No. 17-CV-8709 (LTS)(GWG), 2019 WL 1409446, at *4 (S.D.N.Y. Mar. 28, 2019) (noting that to state a claim for primary liability under § 2333(a), a plaintiff must plausibly allege: (1) an injury to a U.S. national, (2) an act of

international terrorism, and (3) causation). Defendants argue that Plaintiffs must offer individualized proof of nationality in order to recover under the ATA. Plaintiffs respond generally that common questions predominate and that Defendants failure to raise the issue of ATA standing at the motion to dismiss stage shows the secondary nature of the issue.

I find that, although proof of nationality for the purposes of standing under the ATA must be established for each class member, this individualized inquiry does not predominate common questions on liability. Nationality may be determined by reference to straightforward documentary evidence and a subclass of non-nationals may be established under Rule 23 to facilitate class-wide resolution of ATA claims, if necessary.

### 4. Waiver Based on VCF Participation

Defendants argue that the individualized question of participation in the VCF, which acts as a waiver to certain types of claims based on the 9/11 Attacks, precludes certification. Under the VCF scheme, successful claims for compensation waive an individual or estate's right to file a civil action for damages "sustained as a result of the terrorist-related aircraft crashes of September 11, 2001," except "to recover collateral source obligations" or against a "knowing participant in any conspiracy to hijack any aircraft or commit any terrorist act." Transp. Act § 405(c)(3)(C)(i). According to Defendants, this heightened liability standard imposed on civil actions means that VCF participants and non-participants face different burdens in prosecuting their claims. I find that even when taken in conjunction with other individualized issues, the question of waiver does not present a significant individualized question that cannot be addressed through, for example, the creation of subclasses. I do find, however, that the question of waiver and the resulting standard of proof render the representative plaintiffs' claims atypical of the Proposed Class, as explained *infra* in Section III.C.

### 5. Damages

While a finding of individualized damages determinations alone cannot preclude certification under Rule 23(b)(3), the fact that damages may have to be ascertained on an individual basis is a factor that courts must consider in the predominance analysis. See In re LIBOR, 299 F. Supp. 3d at 543; see also Roach v. T.L. Cannon Corp., 778 F.3d 401, 409 (2d Cir. 2015) (holding that class certification does not require a finding that damages can be measured on a class-wide basis). But a finding that damages present individualized questions, without more, is not a sufficient basis upon which to deny class certification. In re LIBOR, 299 F. Supp. 3d at 595 ("[I]ndividualized damages determinations alone cannot preclude certification under Rule 23(b)(3).").

Plaintiffs argue that two existing methods to award compensation for personal damages in the MDL context demonstrate that the question of damages is not inherently, overwhelmingly individualized, citing VCF and VSST payments to individual plaintiffs. Plaintiffs also argue that even if individualized questions arise in the damages context, the class may be certified as to liability questions only, with separate damages determinations occurring later. Defendants respond that the unique nature of the proceedings pursuant to which VCF and VSST payments are made renders those examples inapposite as models by which to determine individual damages in this case, where Defendants contest liability and damages.

I conclude that the question of damages is inherently highly individualized in this case where both liability and damages are contested and there is no ready reference for calculating either individual economic or non-economic losses. As Defendants note, both economic and non-economic damages vary from individual to individual according to a number of factors, including the deceased's earnings capacity and the relationship between the putative class

member and the deceased. Further complicating the possibility of a class-wide damages assessment is the individualized question of offsets from collateral source compensation, where permitted.

On balance, I conclude that Plaintiffs have not substantially addressed the question of varying state law issues—including a choice of law analysis—and that, when considered along with the individualized nature of the eventual damages calculations, those individual determinations overwhelm common questions. Given these several unknowns of the Proposed Class membership, Defendants' argument that aggregated individualized questions predominate is persuasive. While there are undoubtedly significant common questions regarding liability, class certification according to Rule 23(b)(3) is not appropriate where the Proposed Class membership's relationship to the individualized questions presented is simply unknown. Where a number of Proposed Class members potentially have time-barred state law claims and require individualized damages determinations, I find that class certification should be denied.

### B.    Superiority

To determine whether a class action is superior to other methods of adjudication, courts look to the following factors: (1) the interest of the class members in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation already commenced by or against class members; (3) the desirability of concentrating the litigation of the claims in a particular forum; and (4) difficulties likely to be encountered in the management of a class action. See Fed. R. Civ. P. 23(b)(3). Superiority is established when "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Amchem, 521 U.S. at 615 (citing Advisory Committee Note to Fed. R. Civ.

P. 23)). A court's finding that individual issues predominate over common issues also "often necessitates a finding that a class action is not a superior vehicle for resolving claims." <u>Royal Park Investments</u>, 324 F. Supp. 3d at 400.

I find that Plaintiffs fail to meet their burden on the issue of superiority under Rule 23(b)(3). Approaching the inquiry by recognizing both the costs and benefits of the class device when compared with the MDL device, certifying the Proposed Class would not improve case management. This finding is due in large part to Plaintiffs' proposal to limit the class to individuals or their estates who do not have a case pending against each of the O'Neill Defendants. Plaintiffs provide no persuasive justification or explanation for fashioning a class subject to that carve-out. In the context of the Proposed Class, the conclusion that individual issues predominate over common issues reinforces a finding that a class action lacks superiority to management as an MDL composed of individual member cases.

First, the interest of the Proposed Class members in individually controlling the prosecution or defense of separate actions does not weigh in favor of class certification where, as here, many separate actions have been consolidated for proceedings as part of the MDL, and the Proposed Class members have taken no part in prosecuting claims against all of the O'Neill Defendants. If anything, the fact that some Proposed Class members have elected to pursue remedies against other MDL defendants, but not the O'Neill Defendants, weighs against certifying a class, because doing so would interfere with the individual control demonstrated to date in how victims of the 9/11 Attacks and their families have chosen to participate in this litigation over the past 16 years. But more importantly, Plaintiffs do not effectively highlight specific deficiencies of proceeding as individual cases under the MDL that this class action would cure. To the extent that class treatment might have achieved efficiencies from

consolidating pretrial proceedings in a single forum, the MDL has accomplished those efficiencies. Indeed, the Court had managed the adjudication of Plaintiffs' class allegations for 16 years before Plaintiffs filed their motion for class certification, providing adequate time to demonstrate how the MDL mechanism has effectively facilitated this litigation.

Moreover, Plaintiffs have not established that the traditional benefits of a class action provide grounds for certifying the class. For example, Plaintiffs do not describe a reliable and administratively feasible way to discover and communicate with all members of the class where notice to each affected individual's estate may be difficult to achieve. Of course, when actual notice to all members of the class is not possible, courts often authorize alternative means of providing notice, such as through third parties, paid advertising, or posting in other places or media frequented by class members. These alternative notice processes normally associated with class action litigation provide little marginal benefit in the context of this MDL, however. This MDL commenced in the wake of an internationally historic event. The ensuing proceedings have been ongoing for nearly 20 years, involving thousands of plaintiffs represented by numerous law firms. There is no doubt that the affected estates of the Proposed Class are aware of the tragic occasion that forms the underlying basis for the O'Neill lawsuit and related MDL lawsuits. There is similarly very little question whether members of the Proposed Class are aware of this MDL. In fact, as Plaintiffs note, many Proposed Class members have claims pending against other MDL defendants, and some Proposed Class members have claims pending against some, but not all, of the O'Neill Defendants. Plaintiffs offer an estimate of "thousands" of Proposed Class members who are not part of the MDL litigation at all, but do not provide any analysis as to how those excluded plaintiffs would be better served by a class action than by the MDL, except to argue that they are better off included as opposed to excluded from this litigation. See ECF No.

6065 at 14. Given the unusual historical significance of the case's underlying events and the substantial publicity of the ensuing litigation efforts, which have reached thousands of plaintiffs, the argument that the Proposed Class members will necessarily be excluded from this relief through litigation absent class certification is not compelling. Relatedly, Plaintiffs make no persuasive argument as to why it is appropriate to certify a class of plaintiffs who, against this backdrop, have chosen not to participate in the MDL litigation against all of the O'Neill Defendants specifically.

There is also no evidence that individual bar to recovery is so high that a class action must be maintained in order to provide the Proposed Class members viable routes to recovery. While such a showing is not required to support class certification, the "most compelling rationale for finding superiority in a class action [is] the existence of a negative value suit," *i.e.*, a suit comprised of claims in which the costs of enforcement in an individual action would exceed the expected individual recovery. In re MTBE, 209 F.R.D. at 350. The fact of the MDL by its terms tends to show that class certification is unnecessary to support individual cases: so many individual cases have been filed relating to the claims at issue that pretrial consolidation was necessary to create efficient judicial oversight. Plaintiffs fail to demonstrate why the unknown number of Proposed Class members who have chosen not to participate in this MDL at all could not have proceeded as the thousands of other individual plaintiffs have: by joining suits where lawyers retained on contingency arrangements brought separate actions supervised as MDL member cases. Even if class certification may be appropriate for other groups of litigants proceeding as part of the MDL, Plaintiffs have not carried their burden at this stage to demonstrate how the Proposed Class satisfies the superiority requirement of Rule 23(b)(3).

This finding is reinforced by the conclusion that individual questions abound. Defendants argue that Plaintiffs would need to designate subclasses for (1) crash sites and/or residence (for state-law claims); (2) nationality (for ATA claims); and (3) waiver (for participation in VCF). Moreover, as Defendants note, Proposed Class members may belong to potential subclasses in different combinations. That potentially several liability sub-classes could be required solely to manage the litigation as to the Proposed Class members means that class certification could make these claims even more burdensome for the Court to manage. And Plaintiffs offer no counterproposal for designing subclasses that would effectively group class members based on shared questions.

Additionally, certifying a class will introduce preventable delays into the proceedings. For example, for those thousands of plaintiffs who are represented by counsel and have already brought claims in the MDL, though not against all of the O'Neill Defendants, there would presumably be a substantial opt-out initiative, which would be complex and burdensome to supervise. For those current MDL Plaintiffs who did not opt out, they would find themselves with two sets of lawyers – and two contingency arrangements – that might create litigation strategy conflicts that would be difficult to resolve without raising serious ethical concerns.

While there may be efficiencies and other benefits gained from certifying a class action within the context of an MDL, this Proposed Class does not achieve those advantages and is not a superior litigation management method. I therefore find that the Proposed Class fails to meet the superiority requirement of Rule 23(b)(3).

## IV.    Rule 23(a)

While I find the Court would act within its discretion to deny the motion for class certification based on the Proposed Class's failure to comport with the requirements of Rule

23(b)(3), I also analyze the Proposed Class in light of Rule 23(a)'s requirements for purposes of this Report and Recommendation. I conclude that Plaintiffs fail to meet all of Rule 23(a)'s requirements and the motion class certification should also be denied on that basis.

### A. Numerosity

Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Courts in this Circuit presume the numerosity requirement is satisfied "once plaintiffs number 40." Taylor v. Zucker, No. 14–CV–05317 (CM), 2015 WL 4560739, at *7 (S.D.N.Y. July 27, 2015). Yet "the numerosity requirement is not strictly mathematical but must take into account the context of the particular case." Pa. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co., 772 F.3d 111, 120 (2d Cir. 2014); accord Deen v. New Sch. Univ., No. 05-CV-7174 (KMW), 2008 WL 331366, at *3 (S.D.N.Y. Feb. 4, 2008) (finding numerosity lacking for class of 110 members because plaintiffs failed to show that joinder of the proposed class into a consolidated action would be difficult or less efficient than class certification). Here, the Proposed Class, composed of potentially thousands of family members or estates of victims of the 9/11 Attacks, is substantial. Plaintiffs assert—and Defendants do not dispute—that the Proposed Class encompasses approximately 5,130 individuals and estates that are not currently plaintiffs against any of the O'Neill Defendants in the Multidistrict Litigation. See ECF No. 5754 ("Goldman Aff."), ¶¶ 3, 8–11. Although the Proposed Class is sizable, Plaintiffs have not demonstrated that joinder is impracticable in the context of this MDL, where the Court has established streamlined procedures for adding large numbers of new plaintiffs to individual cases. I find therefore that the Proposed Class does not meet the numerosity requirement.

## B.    Commonality

Commonality requires that common issues of fact or law affect all class members. Fed.

R. Civ. P. 23(a)(2). A "question[ ] of law or fact [is] common to the class . . . if the question is

'capable of classwide resolution—which means that its truth or falsity will resolve an issue that

is central to the validity of each one of the claims in one stroke.'" Johnson, 780 F.3d at 137

(quoting Wal-Mart, 564 U.S. at 350). This may be so "if plaintiffs demonstrate that the class

members have suffered the same injury." Id. at 137 (quotation marks omitted). There is no

requirement that the claims for relief be identical, but rather that there be "issues whose

resolution will affect all or a significant number of the putative class members." Id.

Plaintiffs argue that the Proposed Class meets the commonality requirement because all

members suffered death or death of a family member based on Defendants' support for al Qaeda

and the hijackers. Plaintiffs claim that liability determinations as to each of the Defendants

would apply "identically to all [c]lass [m]embers." Pls. Br. at 12. Defendants do not explicitly

argue that the Proposed Class fails to meet the commonality requirement. I find the Proposed

Class satisfies the commonality requirement for the reasons Plaintiffs outline. While there are

some elements of the liability inquiry that may differ among individual class members (as noted

above), there are undoubtedly common factual and legal issues that will affect the liability

determination for all members of the class. The nature of the Defendants' relationships with and

role in supporting al Qaeda and the hijackers are issues that apply broadly in the same manner to

all Proposed Class members and present common claims for purposes of the class certification

analysis. See Johnson, 780 F.3d at 137 ("The claims for relief need not be identical for them to

be common; rather, Rule 23(a)(2) simply requires that there be issues whose resolution will

affect all or a significant number of the putative class members."). Because Rule 23(a)'s

commonality requirement poses a "low hurdle" to certification, <u>Dodona I, LLC v. Goldman, Sachs & Co.</u>, 296 F.R.D. 261, 267 (S.D.N.Y. 2014), and is less "demanding" than Rule 23(b)(3)'s predominance requirement, <u>Johnson</u>, 780 F.3d at 138, I find it is satisfied here.

### C.    Typicality and Adequacy

"To establish typicality under Rule 23(a)(3), the party seeking certification must show that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" <u>In re LIBOR</u>, 299 F. Supp. 3d at 460 (quoting <u>In re Flag Telecom Holdings, Ltd. Sec. Litig.</u>, 574 F.3d 29, 35 (2d Cir. 2009)). "Typicality requires that 'the disputed issue[s] of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" <u>Id.</u> (quoting <u>Mazzei v. Money Store</u>, 829 F.3d 260, 272 (2d Cir. 2016)). The representative parties must also fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This "adequacy" requirement overlaps in part with the requirements of commonality and typicality, but "also raises concerns about the competency of class counsel and conflicts of interest." <u>Wal-Mart</u>, 564 U.S. at 349 n.5.

A plaintiff's unique defense may, however, preclude a finding of typicality or adequacy. <u>Gordon v. Sonar Capital Mgmt. LLC</u>, 92 F. Supp. 3d 193, 201 (S.D.N.Y. 2015). In order to defeat a finding of typicality, a defendant need not show "that [a] unique defense will prevail, only that it is meritorious enough to require the plaintiff to devote considerable time to rebut the unique defense." <u>In re LIBOR</u>, 299 F. Supp. 3d at 461 (internal quotation marks omitted). However, "[n]ot every conflict among subgroups of a class will prevent class certification—the conflict must be fundamental to violate Rule 23(a)(4)." <u>In re Literary Works in Elec. Databases Copyright Litig.</u>, 654 F.3d 242, 249 (2d Cir. 2011) (internal quotation marks omitted). Where

conflict does exist, the Court may rectify it by dividing the class into separate "homogeneous subclasses . . . with separate representation to eliminate conflicting interests of counsel." Id. at 249–50 (quoting Ortiz v. Fibreboard Corp., 527 U.S. 815, 856 (1999)); see also Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule.").

Plaintiffs argue that the Proposed Class representatives' claims and the Class Members' claims both arise from the Defendants' provision of material support to al Qaeda in furtherance of the 9/11 Attacks and form the same legal causes of action alleged in the underlying pleadings. Plaintiffs also claim that the Defendants' previously asserted defenses applied equally to the class members and the Plaintiffs, and so the existence of unique defenses does not preclude a typicality finding here. Defendants make similar arguments for lack of typicality to those made regarding predominance under Rule 23(b)(3), namely that the application of state law, as well as Plaintiffs' nationality and their participation in the VCF, potentially differ from that of at least some Proposed Class members.

I find that Plaintiffs' state law tort claims are not necessarily typical of the Proposed Class and that the existence of unique defenses counsels against certification. The Plaintiffs' state-law claims accrued in New York and may be timely, whereas Proposed Class members' claims that accrued elsewhere, including in Virginia or Pennsylvania, may not be. Thus, the named Plaintiffs' incentives to litigate whether the relevant state law claims are tolled differs from those of some of the absent class members. Because the issue would be outcome determinative as to class members whose state law claims would be time-barred, the issue is substantial.

Furthermore, the O'Neill Plaintiffs submitted a claim on behalf of the estate of decedent John P. O'Neill, Sr. The named plaintiffs' participation in the VCF waives claims relating to the 9/11 Attacks except those "to recover collateral source obligations" or against a "knowing participant in any conspiracy to hijack any aircraft or commit any terrorist act." Transp. Act § 405(c)(3)(C)(i). Defendants argue that therefore, the named Plaintiffs' interest in proving liability lies in satisfying the higher standard of proving the O'Neill Defendants engaged in a knowing conspiracy to commit the 9/11 Attacks, whereas other class members may not need to meet this higher standard to prove liability under other theories of recovery. While it is not inevitable that the effort of proving the more demanding waiver standard will be to the detriment of establishing liability according to a different, lower standard, I find that the discrepancy between the possible claims available to waiver and non-waiver plaintiffs is significant. Whereas waiver plaintiffs will need to focus solely on meeting a high standard, non-waiver plaintiffs may wish to press different litigation strategies or pursue different claims more vigorously in order to obtain relief.

I agree that class counsel is generally experienced and qualified, as well as specifically well-suited to represent the Proposed Class based on its extensive involvement in this MDL. But because Plaintiffs are neither typical nor adequate representatives due to the potentially unique defenses and issues presented, class certification should be denied.

## IV. Plaintiffs' Remaining Requests

In addition to seeking class certification, Plaintiffs move to add the Estate of John F. O'Neill as a party and to substitute Plaintiff Dorothy A. O'Neill, who has died, with Christine O'Neill, as personal representative to the Estate of Dorothy A. O'Neill. Defendants do not oppose those specific requests. I recommend that Court grant the motion to add John F. O'Neill

as a party and, pending approval by the Surrogate's Court, <u>see</u> Pls. Br. at n.1, I recommend the Court grant the motion to substitute the named individual plaintiffs.

Should class certification be denied, Plaintiffs move in the alternative for leave to amend the FCC to add additional plaintiffs. <u>See</u> Pls. Br. at n.4. To amend the FCC at this stage of the litigation requires the consent of the opposing parties or leave of the Court. <u>See</u> Fed. R. Civ. P. 15(a)(2); <u>see also</u> Fed. R. Civ. P. 21. Leave to amend may be denied where the proposed amendment would be futile or where it would result in prejudice to the opposing parties. <u>Soroof Trading Dev. Co. v. GE Microgen, Inc.</u>, 283 F.R.D. 142, 147 (S.D.N.Y. 2012). "Prejudice arises when the amendment would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" <u>Id.</u> (quoting <u>Block v. First Blood Associates</u>, 988 F.2d 344, 350 (2d Cir.1993)).

Here, without indication of the number or identity of the specific individuals or estates Plaintiffs seek to add as parties to this case, the Court cannot properly assess whether leave to amend should be granted under the standards of the Federal Rules—*i.e.*, whether and to what degree delay or prejudice would result. As such, I recommend denying without prejudice Plaintiffs' request for leave to amend the complaint. Plaintiffs should address such discrepancies in a motion for leave to amend supported by a memorandum of law and a proposed Second Consolidated Complaint. This will allow the O'Neill Defendants to evaluate the proposed amendments and the Court to evaluate the effect of adding the proposed parties to the litigation at this stage.

**CONCLUSION**

While Plaintiffs have demonstrated the Proposed Class satisfies certain elements of Rule 23, I find that Plaintiffs have failed to prove, by a preponderance of the evidence, that class certification is proper under Rule 23. For that reason, I recommend the Court deny Plaintiffs' Motion for Class Certification. I further recommend the Court (1) grant the motion to add John F. O'Neill's estate as a plaintiff; (2) grant Plaintiffs' motion to substitute Dorothy A. O'Neill with Christine O'Neill, as personal representative to the Estate of Dorothy A. O'Neill; and (3) deny without prejudice Plaintiffs' motion for leave to amend the First Consolidated Complaint.

DATED:      January 22, 2021        SARAH NETBURN
            New York, New York       United States Magistrate Judge

\*            ˜            ˜

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S.