**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re Terrorist Attacks On September 11, 2001 | ) | 03 MDL 1570 (GBD) (SN) |
| | ) | |
| | ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |

This document relates to:

*Estate of John P. O'Neill, Sr., et al. v. Al Baraka Investment & Development Corp. et al.*, 04-cv-1923 (GBD) (SN)

**_O'NEILL_ PLAINTIFFS' RULE 72(b) OBJECTIONS TO THE MAGISTRATE JUDGE'S
JANUARY 22, 2021 REPORT & RECOMMENDATION**

Jerry S. Goldman, Esq.
Jeffrey E. Glen, Esq.
Bruce Strong, Esq.
Anderson Kill P.C.
1251 Avenue of the Americas
New York, NY  10020
(212) 278-1000

Attorneys for Estate of
John P. O'Neill, Sr., et al.

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT.............................................................................................1

BACKGROUND .............................................................................................................3

PROCEDURAL HISTORY................................................................................................5

THE CLASS REPRESENTATIVES ...................................................................................6

CLASS DEFINITION .....................................................................................................6

ARGUMENT.................................................................................................................8

I.   The Court Must Review *De Novo* the Magistrate Judge's Report & Recommendation
     With Special Scrutiny for a Denial of Class Certification...................................................8

II.  Plaintiffs' Claims Satisfy the Rule 23 Requirements........................................................9

     A.   The Court Must Consider Certifying a Liability-Only Issue Class. ...............................10

     B.   As this Court, the Second Circuit, the JPML and the U.S. Congress Have
          Confirmed, Common Issues Predominate in this Case Because the
          Overwhelming Majority of Class Members Have Identical Claims and Even
          for the Few Who Have Similar But Not Identical Claims, the Court Can
          Resolve the Issue Wholesale with a Simple Factual Inquiry. .........................................11

          1.   In Over 17 Years of Active Litigation, Many Courts, Including this
               One, and the U.S. Congress Have Found that Common Issues
               Predominate...........................................................................................12

          2.   The Overwhelming Majority of Class Members Have Identical
               Claims Under New York Law, and the Court Can Easily Resolve the
               Few Cases that Have Similar But Not Identical Claims...................................14

     C.   A Class Action Is Superior Because It Protects the Rights of Thousands
          Without Compromising Strategic Decisions Made By Other 9/11 Families or
          Their Attorneys and Streamlines Resolution of Thousands of Claims Within
          this MDL Without the Need for Renewed Motion Practice, New
          Complaints, New Service, or More Discovery..............................................................15

          1.   Class Certification Would Preserve Thousands of Claims. .............................16

          2.   Class Certification Will Not Interfere with Strategic Decisions Made
               By Individual Family Members or Their Attorneys and in Fact, the
               Existence of a Putative Class to this Point Has Aided Prosecution of
               These Claims..........................................................................................17

i

# TABLE OF CONTENTS
### *(continued)*

**Page**

      3.    Class Certification Within the MDL Is Appropriate. ........................................19

      4.    A Class Would Streamline Management of this Case........................................20

D.    A Class of Over 5,000 Members Satisfies Rule 23(a)'s Numerosity Requirement as Responding Defendants Concede. ........................................................21

E.    The O'Neills' Claims Are Typical of the Class's and the O'Neills Would Adequately Advance Those Claims Because (1) They Occupy the Same Legal Position as the Overwhelming Majority of 9/11 Families; (2) the Differences Between Their Claims and the Claims of a Handful of Other Families Is Small, and (3) Those Claims Would Be Protected Anyway. ........................................22

CONCLUSION ........................................................................................................................24

docs-100369157.1

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Agent Orange Prod. Liab. Litig.*,
 506 F. Supp. 762 (E.D.N.Y. 1980) ........................................................................................19

*Alford v. St. Nicholas Holding Corp.*,
 631 N.Y.S.2d 30 (App. Div. 1995)........................................................................................23

*In re Amaranth Natural Gas Commodities Litig.*,
 269 F.R.D. 366 (S.D.N.Y. 2010) ............................................................................................9

*Amchem Prod., Inc. v. Windsor*,
 521 U.S. 591 (1997)..............................................................................................................15

*American Pipe & Const. Co. v. Utah*,
 414 U.S. 538 (1974)..........................................................................................................4, 23

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
 222 F.3d 52 (2d Cir. 2000) ...................................................................................................22

*Basso v. New York Univ.*,
 363 F. Supp. 3d 413 (S.D.N.Y. 2019)....................................................................................9

*Bolanos v. Norwegian Cruise Lines Ltd.*,
 212 F.R.D. 144 (S.D.N.Y. 2002) ............................................................................................8

*Brecher v. Republic of Argentina*,
 806 F.3d 22 (2d Cir. 2015) ...................................................................................................10

*Consol. Rail Corp. v. Town of Hyde Park*,
 47 F.3d 473 (2d Cir. 1995) ...................................................................................................21

*Cortigiano v. Oceanview Manor Home for Adults*,
 227 F.R.D. 194 (E.D.N.Y. 2005) .........................................................................................22

*Dziennik v. Sealift, Inc.*,
 No. 05-CV-4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007) .........................................11

*Fogarazzo v. Lehman Bros., Inc.*,
 232 F.R.D. 176 (S.D.N.Y. 2005) ..........................................................................................21

*Grassia v. Scully*,
 892 F.2d 16 (2d Cir.1989) ......................................................................................................8

# TABLE OF AUTHORITIES
### *(continued)*

**Page**

*Grosshandels-Und Lagerei-Berufsgenossenschaft v. World Trade Ctr. Props., LLC,*
  435 F.3d 136 (2d Cir. 2006) ............................................................................... 14, 15

*Hutchinson v. Merchants' & Mechanics' Bank,*
  41 Pa. 42 (Pa. 1861) ..............................................................................................23

*Jean-Laurent v. Wilkerson,*
  461 F. App'x 18 (2d Cir. 2012).................................................................................1

*In re JPMorgan Chase & Co. Sec. Litig.,*
  No. 12-cv-03852, 2015 WL 10433433 (S.D.N.Y. Sept. 29, 2015) ....................9

*Levitt v. J.P. Morgan Sec., Inc.,*
  710 F.3d 454 (2d Cir. 2013) ...................................................................................9

*Marisol A. v. Giuliani,*
  126 F.3d 372, 376 (2d Cir. 1997) ........................................................................22

*In re MTBE,*
  241 F.R.D.435 (S.D.N.Y. 2007) ........................................................12, 14, 15, 19

*In re Nassau Cnty. Strip Search Cases,*
  461 F.3d 219 (2d Cir. 2006) .......................................................................*passim*

*In re Pfizer Securities Litig.,*
  282 F.R.D. 38 (S.D.N.Y. 2012) ............................................................................19

*In re Sony Corp. SXRD Rear Projection Television Marketing, Sales Practices and Products
  Liability Litigation,*
  No. 09-md-2102, 2010 WL 3422722 (S.D.N.Y. Aug. 24, 2010) .......................19

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,*
  546 F.3d 196 (2d Cir. 2008) ...................................................................................9

*In re Terrorist Attacks on Sept. 11, 2001,*
  718 F. Supp. 2d 456 (S.D.N.Y. 2010), *aff'd on other grounds*, 714 F.3d 109 (2d Cir.
  2013)........................................................................................................................13

*In re Terrorist Attacks on Sept. 11, 2001,*
  740 F. Supp. 2d 494 (S.D.N.Y. 2010), *aff'd on other grounds*, 714 F.3d 118 (2d Cir.
  2013)........................................................................................................................13

*In re Terrorist Attacks on September 11, 2001,*
  741 F.3d 353 (2d Cir. 2013) ..........................................................................12, 17

iv

# TABLE OF AUTHORITIES
## *(continued)*

Page

*United States v. Romano*,
794 F.3d 317 (2d Cir. 2015) ................................................................................. 8

*In re Vitamin C Antitrust Litigation*,
279 F.R.D. 90 (E.D.N.Y. 2012) ......................................................................... 19

*In re Zyprexa Products Liability Litigation*,
253 F.R.D. 69 (E.D.N.Y. 2009) (Weinstein, J.), *rev'd on other grounds*, 620 F.3d 121
(2d Cir. 2010) ........................................................................................................ 19

**Statutes**

28 U.S.C. § 636(b)(1) ................................................................................................ 8

28 U.S.C. § 636(b)(1)(A) ......................................................................................... 1

28 U.S.C. § 636(b)(1)(C) ......................................................................................... 8

28 U.S.C. § 1605A .................................................................................................. 12

28 U.S.C. § 1605B .................................................................................................. 12

Air Transportation Safety and System Stabilization Act, § 408(b), P.L. 107–42, 115
Stat. 230 (2001) ................................................................................................... 13

Alien Tort Claims Act, 28 U.S.C. §1350 ................................................................. 5

Anti-Terrorism Act, 18 U.S.C. §2333 ................................................................. 5, 12

National Defense Authorization Act for Fiscal Year 2013, 112 P.L. 239, 126 Stat.
1632 (2013) .......................................................................................................... 13

Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1962(a) ............ 5

United States Victims of State Sponsored Terrorism Clarification Act, 116 P.L. 69,
133 Stat. 1134 (2019) .......................................................................................... 13

Va. Code § 8.01-229(K) ......................................................................................... 23

**Other Authorities**

CPLR § 213-b ......................................................................................................... 23

CPLR § 215 ............................................................................................................ 23

Federal Rule Civ. P. 23 .................................................................................. 8, 9, 10

## TABLE OF AUTHORITIES
### *(continued)*

**Page**

Federal Rule Civ. P. 23(a) ..................................................................................8, 9, 10, 21

Federal Rule Civ. P. 23(a) ...................................................................................................10

Federal Rule Civ. P. 23(b)(3) ......................................................................................*passim*

Federal Rule Civ. P. 23(c)(4) ......................................................................................*passim*

Federal Rule Civ. P. 60............................................................................................................12

Federal Rule Civ. P. 72(b)...................................................................................................1, 8

Federal Rule Civ. P. 72(b)(3) ............................................................................................... 8

The *O'Neill* Plaintiffs respectfully submit Rule 72(b) Objections ("Objections") to portions of the Magistrate Judge's January 22, 2021 Report & Recommendation, ECF No. 6601 ("R&R") recommending denial of class certification. As stated at 28 U.S.C. § 636(b)(1)(A), the District Court's review of a magistrate judge's recommendation regarding certification of a class is *de novo*; to accord any presumption of correctness to such a recommendation is reversible error. *Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 25 (2d Cir. 2012).

## PRELIMINARY STATEMENT

The Magistrate Judge erred in several critical respects in weighing the class certification factors against a uniquely complex 17-year record, without the aid of oral argument due to COVID-19.

First, the Magistrate Judge failed to consider certifying a liability-only issue class under Federal Rule 23(c)(4) in contravention of clear Second Circuit precedent. *See In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006). The *O'Neill* Plaintiffs seek to certify a class solely as to the issue of liability at this time, and the Magistrate Judge was required to consider certifying such a class but did not.

Second, the Magistrate Judge erred in finding that common issues do not predominate under Federal Rule 23(b)(3). Excluding damages (which should have been excluded from the predominance analysis anyway), the Magistrate Judge's ruling rested solely on differing common law statutes of limitation for victims killed in Virginia or Pennsylvania as opposed to New York. This issue affects at most 7.5% of the 2,977 killed in the September 11, 2001 attacks, likely only impacts a small subset of this group in light of pending applicable federal claims and applicable tolling rules, and will necessarily be determined anyway in the pending cases whether or not a class is certified. Tellingly, the Joint Panel on Multidistrict Litigation ("JPML"), the Second Circuit, Congress, and this

Court have all already found that common issues predominate in this litigation on numerous occasions, and those determinations ought to be followed here. *See infra*, pp. 11-15.

Third, the Magistrate Judge erred in finding that a class is not superior by (1) erroneously assuming that everyone either knows about this case and already filed suit, decided not to sue, or strategically decided not to sue certain defendants, and by (2) erroneously *comparing* a class to an MDL as a case management tool instead of treating a class as a useful *supplement* to an MDL.

Contrary to the Magistrate Judge's finding, thousands of family members do not know about this litigation. Without a class, these people may find their rights have evaporated if class certification is denied. With a class, just three law firms: Anderson Kill, Motley Rice, and Kreindler & Kreindler, would represent virtually all wrongful death claims pending in this MDL against the *al Baraka* Defendants. All have seats on the Plaintiffs Executive Committee ("PEC"), and all have steered this case for decades. The Magistrate Judge's belief that a class would somehow displace strategic decisions made by thousands of individual plaintiffs or potential plaintiffs in consultation with thousands of different attorneys is wrong.

The Magistrate Judge's other finding that a class was not superior when compared to an MDL also was wrong. A certified class within this MDL would supplement and enhance efficiencies gained from the existing MDL structure. Here, the proposed Class would actually obviate the need for dozens of motions, amendments, new complaints, new service, additional discovery, and avoid the need to relitigate issues already decided by the Court. An MDL or a class is not an either/or proposition.

Fourth, the Magistrate Judge erred in finding that a proposed class of over 5,000+ people is not numerous. This Circuit presumes numerosity when a proposed class exceeds 40 people and responding Defendants conceded the point.

Fifth, the Magistrate Judge erred in finding that the proposed class representatives are not adequate or typical. The O'Neills share the *identical* legal position with the overwhelming majority of proposed class members. The Court can resolve the few differences between them and the remaining families who lost a loved one in Pennsylvania or Virginia with the same simple factual inquiry that would resolve the predominance issue.

Finally, the Magistrate Judge erred that the O'Neills' participation in the Victims Compensation Fund of 2001 ("VCF") distinguishes them from other proposed class members. To the contrary, ninety-seven percent or 2,880 of all 2,977 9/11 families participated in the VCF. Further, any waiver signed in connection with receiving a VCF award to help bail out the airline industry is not a material issue in this case against participants in a conspiracy to carry out the 9/11 attacks, and the waiver issue will necessarily be adjudicated with or without a class anyway.

Accordingly, the Court must freshly review the class motion papers, hopefully with the aid of oral argument, and grant certification of a liability-only issue class.

## BACKGROUND

The International Islamic Relief Organization ("IIRO"); Muslim World League ("MWL"); World Assembly of Muslim Youth ("WAMY"); Yassin Kadi ("Kadi"); and Dubai Islamic Bank ("DIB") (collectively, the "*al Baraka* Defendants") along with other Defendants,[1] are alleged to have provided material support to the hijackers who carried out the terrorist attacks of September 11, 2001.[2] Excluding the hijackers, at least 2,977 people died from the terrorist attacks on 9/11,

---

[1] Other defendants in the case have defaulted. Plaintiffs also move for class certification against these defaulted defendants, which include, among others, Rabita Trust, Al Haramain Islamic Foundation, Inc., Benevolence International Foundation, the hijackers themselves, and various al Qaeda leaders.

[2] Plaintiffs allege that these Defendants: (1) raised and laundered funds on behalf of al Qaeda; (2) channeled donated funds to al Qaeda; (3) provided financial and logistical support and physical assets to al Qaeda; (4) permitted al Qaeda members to use ostensible employment with their organizations as a vehicle for covertly traveling in furtherance of al Qaeda's operations; (5) performed reconnaissance within conflict regions on behalf of al Qaeda; (6) served as liaisons to localized terrorist organizations on behalf of al Qaeda, thereby assisting al Qaeda in expanding its operational base and sphere of influence; (7) funded and facilitated shipments of arms and supplies to al Qaeda; (8) funded camps used by al Qaeda to train soldiers and terrorists; (9) actively recruited Muslim youths on behalf of al Qaeda; (10) served as channels

including 2,753 deaths in New York City; 184 deaths in Arlington, Virginia;[3] and 40 deaths in Shanksville, Pennsylvania. *See* First Consolidated Complaint, including More Definite Statements and RICO Statements, filed in this case on September 30, 2005, ("FCC" or "First Consolidated Complaint") at ¶¶ 1-3 & Ex. A pp. 1-70 (ECF No. 1570); *see also* Affidavit of Jerry S. Goldman, Esq., dated January 15, 2020 ("Goldman Aff.") at ¶ 3 (ECF No. 5754). Of the 2,977 killed, about 2,728 were U.S. citizens. Goldman Aff. at ¶ 3; Second Supplemental Declaration of Jerry S. Goldman, Esq., dated March 8, 2021, at ¶ 6 ("Goldman 2nd Suppl. Dec.").

The O'Neill family and most other 9/11 families (the "MDL Plaintiffs") have pending suits against the *al Baraka* Defendants. But hundreds of 9/11 decedent estates and thousands more surviving family members presently do not. *See* Goldman Aff. at ¶¶ 8-11. Most of them do not even realize that this MDL exists. *See* Goldman 2nd Suppl. Dec. at ¶ 2. These 9/11 family members risk losing their right to sue if the Court denies class certification. The *O'Neill* Plaintiffs wish to bring this group before this Court, to facilitate simultaneous adjudication of their claims together with the MDL Plaintiffs.

Alternatively, in the event the Court is inclined to deny class certification, the *O'Neill* Plaintiffs request a stay of 180 days before the Court enters a final order deciding the class issue to allow undersigned counsel time to notify as many claimants as possible about the pending litigation and add them to an existing suit.[4]

---

for distributing information and documentation within al Qaeda, and from al Qaeda to the media; (11) disseminated publications designed to advance al Qaeda's radical Islamist ideology throughout the Muslim world and legitimize violent jihad against Christians and Jews on the grounds that they are "infidels" who do not deserve to live; (12) openly advocated for young Muslims to take up arms against Western and democratic societies (13) provided financial services and other forms of material support to al Qaeda, while disregarding warnings and refusing to adhere to even minimal banking industry standards designed to thwart the support of terrorist networks like al Qaeda through anti-terrorist and money laundering safeguards and "know your customer" regulations; and (14) otherwise provided material support to, aided and abetted, and/or conspired with al Qaeda, Bin Ladin, and/or the hijackers.

[3] The overwhelming majority of those killed in Arlington would have been U.S. citizens working at the Pentagon as members of the armed services or as government contractors.

[4] Under *American Pipe*, a court's order denying class certification may terminate tolling of the statute of limitations on claims of the putative class members. *See American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974).

## PROCEDURAL HISTORY

On March 10, 2004, the *O'Neill* Plaintiffs brought claims against the *al Baraka* Defendants, under, *inter alia*, the Anti-Terrorism Act, 18 U.S.C. §2333 ("ATA"), common law tort theories, the Alien Tort Claims Act, 28 U.S.C. §1350, and Civil Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. §1962(a). *See* Complaint, 04-cv-1923, (ECF No. 1) at ¶¶ 22-24, 35-85. Plaintiffs also filed several amended pleadings, RICO Statements and More Definite Statements against these defendants. *See* FCC, at p. 10. Defendants WAMY, Kadi, and DIB moved to dismiss. ECF Nos. 954 (DIB), 1456 (WAMY), 1500 (WAMY), 1658 (Kadi). Defendants IIRO and MWL answered. ECF Nos. 1632, 1656.  The Court denied WAMY and DIB's motions to dismiss and granted Kadi's motion to dismiss. ECF Nos. 2252 (DIB) and 2312 (Kadi and WAMY). On appeal, Kadi was remanded for jurisdictional discovery. *See* ECF No. 2732. WAMY and DIB subsequently answered. ECF Nos. 2331 (DIB), 2369-76 (WAMY).

The Court bifurcated the case into liability and damages phases. *See* Order of Magistrate Judge Maas, dated October 28, 2010 (ECF No. 2381) ("Fact discovery regarding liability issues will precede fact discovery regarding damages"); *see also* Order of Magistrate Judge Maas, dated July 15, 2010 (ECF No. 2260) ("Unless the Court otherwise directs, the foregoing discovery shall be limited to liability and shall not address the calculation of damages."). The parties have engaged in extensive liability discovery and discovery motion practice over the course of several years. *E.g.*, ECF Nos. 3827-3828 (MWL/IIRO), 3910-3911 (WAMY), 2973-2974 (DIB), 3830- 3831 (Kadi).

In anticipation of renewed dispositive motion practice, the parties agreed to a class discovery schedule and a class certification briefing schedule. *See* Joint Status Report, dated April 23, 2019 (ECF No. 4495). In September and October 2019, the *al Baraka* Defendants served interrogatories on the O'Neills but requested no documents. Goldman Supplemental Declaration, dated March 13, 2020 ("Goldman Supp. Dec.") at ¶¶ 2-3, Ex. A (ECF No. 6064). In October 2019, the *al Baraka*

Defendants deposed the O'Neills over three days. The parties subsequently completed briefing on class certification on March 13, 2020. *See* ECF No. 6067. That same day, the *O'Neill* Plaintiffs requested oral argument, but the *al Baraka* Defendants thought oral argument not necessary. ECF No. 6066. On March 24, 2020, the *al Baraka* Defendants reversed course and decided that they would want oral argument or permission to file a surreply. *See* ECF No. 6095 at p. 2; *see also* ECF No. 6098 at p. 2. On April 1, 2020, the Magistrate Judge denied the *al Baraka* Defendants' request for supplemental briefing. ECF No. 6112. On January 22, 2021, the Magistrate Judge recommended denying the Motion for Class Certification and Related Relief without the benefit of oral argument due to COVID-19. ECF No. 6601.

## THE CLASS REPRESENTATIVES

The *O'Neill* Plaintiffs—the proposed class representatives—are the Estate and surviving family of John P. O'Neill, Sr., lifelong FBI agent, who culminated his career as Special Agent in Charge of National Security at the Bureau's New York Field Office. This position encompassed being in charge of all counter-terrorism and counter-espionage cases at the Bureau's flagship office. *See* Affidavit of John P. O'Neill, Jr., dated January 15, 2020, ("J.P. O'Neill Aff.") at ¶ 4 (ECF No. 5755). Mr. O'Neill became Chief of Security for the World Trade Center less than two weeks before the September 11th attacks. Affidavit of Christine I. O'Neill, dated January 13, 2020, ("C.I. O'Neill Aff.") at ¶ 2 (ECF No. 5756). On the morning of September 11, 2001, Mr. O'Neill was at work when American Airlines Flight 11 hit the North Tower. *See* J.P. Aff. at ¶ 10. John P. O'Neill, Sr. was killed that Tuesday morning while helping people evacuate the World Trade Center. *See* C.I. Aff. at ¶ 3. He was survived by his mother, father, wife, and two children. *Id.* at ¶¶ 7, 8, 11.

## CLASS DEFINITION

There were at least 2,977 innocent individuals killed immediately on or shortly after the morning of September 11, 2001. *See* Goldman Aff. at ¶ 3 & n. 5. All such individuals were killed

based on the same acts committed by the hijackers, all of whom were members of Osama bin

Laden's al Qaeda organization. *Id.* at ¶ 4. These 2,977 people also had families, including surviving

spouses, children, parents, siblings, and functional equivalents thereof. *Id.* at ¶ 5. Each of these class

members was similarly affected by the material support provided in growing al Qaeda and planning

and executing the September 11th attacks. *Id.* On March 10, 2004, Plaintiffs filed a Class Action

Complaint against the *al Baraka* Defendants, which, as amended by the First Consolidated

Complaint, defined the Class as follows:

> (1) all spouses, children, parents, or siblings of any individual who died at the
> World Trade Center in New York, NY, the Pentagon Building in Arlington
> County, Virginia, or in the airliner crash in Shanksville, Pennsylvania, as the
> result of terrorist attacks on September 11, 2001; and (2) all legal
> representatives (including executors, estate administrators and trustees)
> entitled to bring legal action on behalf of any individual who died as the
> result of terrorist attacks on September 11, 2001; but excluding (3) all
> individuals, and all spouses, children, parents, siblings, and legal
> representative of individuals identified by the Attorney General of the United
> States or otherwise shown to have perpetrated, aided and abetted, conspired
> in regard to, or otherwise supported the terrorist attacks of September 11,
> 2001.

FCC, at ¶¶ 14, 128.

To further simplify case management, the *O'Neill* Plaintiffs seek to circumscribe the above

Class to include only those class members who do not have a pending case against the *al Baraka*

Defendants. Specifically, Plaintiffs have sought to restrict the Class as follows:

> (1) all spouses, children, parents, or siblings of any individual who died on or
> within seventy-two (72) hours of September 11, 2001, at the World Trade
> Center in New York, NY, the Pentagon Building in Arlington County,
> Virginia, or in the airliner crash in Shanksville, Pennsylvania, as the result of
> terrorist attacks on September 11, 2001; and (2) all legal representatives
> (including executors, estate administrators and trustees) entitled to bring legal
> action on behalf of any individual who died on or within seventy-two (72)
> hours of September 11, 2001, at the World Trade Center in New York, NY,
> the Pentagon Building in Arlington County, Virginia, or in the airliner crash
> in Shanksville, Pennsylvania, as the result of terrorist attacks on September
> 11, 2001; but excluding (a) all individuals, and all spouses, children, parents,
> siblings, and legal representative of individuals identified by the Attorney
> General of the United States or otherwise shown to have perpetrated, aided

7

and abetted, conspired in regard to, or otherwise supported the terrorist attacks of September 11, 2001; and further excluding (b) any person or estate identified in (1) or (2) who as of January 15, 2020 has a case pending in the Multidistrict Litigation entitled *In re Terrorist Attacks on September 11, 2001* (S.D.N.Y.), Index No. 03-md-1570, against defendants named in *Estate of John P. O'Neill, Sr., et al. v. Al Baraka Investment & Development Corp. et al.* (S.D.N.Y.)*,* Index No. 04-cv-1923 (GBD)(SN), but including the Estate of John P. O'Neill, Sr., the Estate of John F. O'Neill, the Estate of Dorothy A O'Neill, John P. O'Neill, Jr., Carol A. O'Neill, and Christine I. O'Neill.

The absence of oral argument due to COVID-19 deprived the *O'Neill* Plaintiffs the opportunity to elaborate on the significance of this narrower Class definition and answer any of the Court's concerns. While the Magistrate Judge correctly found that the Class met certain requirements of Rule 23, including ascertainability and commonality, without the aid of oral argument, the Magistrate Judge erred by not considering whether to certify a liability-only issue class under Rule 23(c)(4). The Magistrate Judge also wrongly decided that the proposed Class does not meet the predominance or superiority requirements of Rule 23(b)(3) or the numerosity, typicality, and adequacy requirements under Rule 23(a). The *O'Neill* Plaintiffs dispute these findings.

## ARGUMENT

**I.    The Court Must Review *De Novo* the Magistrate Judge's Report & Recommendation With Special Scrutiny for a Denial of Class Certification.**

A court must determine *de novo* the portions of a Report and Recommendation to which Rule 72(b) objections are made. 28 U.S.C. § 636(b)(1)(C); *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir.1989). Under Rule 72(b)(3), the district judge may either "accept, reject, or modify the recommended disposition," "receive further evidence," or "return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1); *see also Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 147 (S.D.N.Y. 2002).

"As [Rule 23's] plain language and structure establish, a court must first identify the issues potentially appropriate for certification 'and . . . then'" apply the Rule 23 factors to those identified issues. *See In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006). Plaintiffs must then

show by preponderant evidence that the class meets the requirements of Rule 23. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201–03 (2d Cir. 2008). This standard simply requires that "the scales tip, however slightly, in favor of the party with th[e] burden of proof." *In re JPMorgan Chase & Co. Sec. Litig.*, No. 12-cv-03852, 2015 WL 10433433, at *2 (S.D.N.Y. Sept. 29, 2015) (Daniels, J.) (quoting *Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d 171, 187 (2d Cir.1992)).

Recognizing this modest standard, district courts in this Circuit construe Rule 23 "liberally" and "resolv[e] close calls in favor of class certification." *Basso v. New York Univ.*, 363 F. Supp. 3d 413, 420 (S.D.N.Y. 2019); *see also In re Amaranth Natural Gas Commodities Litig.*, 269 F.R.D. 366, 375 (S.D.N.Y. 2010) (Daniels, J.). A reviewing court affords a grant of class certification noticeably more deference than a denial of class certification, especially when certification of a liability-only issue class is possible. *See In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 231 (reversing district court's decision not to certify a liability class); *Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 464 (2d Cir. 2013).

Here, the *O'Neill* Plaintiffs object to the Magistrate Judge's failure to consider certification of a liability-only class under Rule 23(c)(4), *see* Memo of Law, (ECF No. 5676) at pp. 21-22, to the Magistrate Judge's findings as to superiority and predominance under Rule 23(b)(3), *id.* at pp. 16-20, and to the Magistrate Judge's findings regarding numerosity, typicality, and adequacy under Rule 23(a). *Id.* at pp. 9-16. The Court must conduct a *de novo* review of these findings with greater scrutiny of the Magistrate Judge's decision than had the Magistrate Judge granted class certification.

## II.   Plaintiffs' Claims Satisfy the Rule 23 Requirements.

A court must first determine what particular issues are fit for resolution on a class-wide basis and certify those issues for class resolution under Rule 23(c)(4). *See In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 226 ("As the rule's plain language and structure establish, a court must first identify the issues potentially appropriate for certification 'and ... then' apply the other provisions of the rule, i.e., subsection (b)(3) and its predominance analysis."). Under Rule 23(b)(3), a plaintiff must

then demonstrate with respect to that issue, that (1) questions of law or fact common to the members of the class predominate over questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  In addition the issue class must satisfy the requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.  The Second Circuit also requires that the class be ascertainable. *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015).

As discussed below, the Magistrate Judge agreed with the *O'Neill* Plaintiffs that the Class meets the commonality and ascertainability requirements of Rule 23. Plaintiffs therefore limit their argument to whether certification of a liability-only issue class is otherwise warranted under Rule 23(c)(4) and the remaining Rule 23(a) and (b)(3) factors.

### A.    The Court Must Consider Certifying a Liability-Only Issue Class.

The Second Circuit allows for certification of liability-only classes and actually *requires* a district court to analyze whether an issue class is warranted *before* analyzing the Rule 23(b)(3) factors. *See In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 227 ("we hold that a court may employ subsection (c)(4) to certify a class as to liability regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement"); *id.* at 226 ("As the rule's plain language and structure establish, a court must first identify the issues potentially appropriate for certification 'and . . . then' apply . . . subsection (b)(3) and its predominance analysis").

Despite this clear Second Circuit precedent, the Magistrate Judge failed to isolate the liability-only portion of the case and decide whether to certify a liability class under Rule 23(c)(4) irrespective of damages. Indeed, the *O'Neill* plaintiffs noted that certification of a damages class "may be premature" because no damages discovery had occurred. *See* Memo of Law (ECF No. 5676) at p. 22. Once damages discovery commences, "there [will be] a number of management tools available to a district court to address any individualized damages issues, such as bifurcation, the use

of a magistrate or special master, alteration of the class definition, the creation of subclasses, or even decertification after a finding of liability." *In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 231. Indeed, this Court has already endorsed damages *models* for thousands of these same class members as to other defendants in this MDL. *E.g.*, Order of Magistrate Judge Maas, dated July 30, 2012 (ECF No. 2618) (setting standard damages amounts for 9/11 family members). And so did the VCF when it issued award determinations to 2,880 of 2,977 9/11 families using a published, uniform, damages model. Goldman Aff. at ¶ 44; Goldman Supp. Dec. at ¶ 5.

     For these reasons, this Court must analyze whether to certify a liability-only issue class under Rule 23(c)(4).

     **B.**    **As this Court, the Second Circuit, the JPML and the U.S. Congress Have Confirmed, Common Issues Predominate in this Case Because the Overwhelming Majority of Class Members Have Identical Claims and Even for the Few Who Have Similar But Not Identical Claims, the Court Can Resolve the Issue Wholesale with a Simple Factual Inquiry.**

     To meet the predominance requirement of Rule 23(b)(3), Plaintiffs must establish that an identified issue "is susceptible to generalized, class-wide proof," not "subject only to individualized proof." *In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 227-28. An individual question or issue is one where "'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized class-wide proof.'" R&R at p. 9 (quoting *In re Petrobras Sec.*, 862 F.3d 250, 270 (2d Cir. 2017)). Courts should "focus on the liability issue . . . and if the liability issue is common to the class, common questions are held to predominate over individual questions." *Dziennik v. Sealift, Inc.*, No. 05-CV-4659, 2007 WL 1580080, at *9 (E.D.N.Y. May 29, 2007) (internal citation omitted).

     As the Magistrate Judge correctly stated, "[i]n mass tort cases based on discrete accidents or disasters, Rule 23(b)(3) certification is typically granted where plaintiffs demonstrate a cohesiveness

of the class based on a 'shared experience that is confined in time and place and produces similar effects.'" R&R at p.10 (quoting *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456, 477 (S.D.N.Y. 2005)). Certification is proper where common facts not only generate the claims of the class members, but also allow causation to be reasonably derived from those facts and applied to the class generally. *Id.* (citing *Talisman Energy*, 226 F.R.D. at 477; *id.* (quoting *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 241 F.R.D. 435, 442 (S.D.N.Y. 2007) (hereinafter "*In re MTBE*") ("[C]ourts will often certify classes involving claims arising out of a mass accident (such as a plane crash or a building collapse) in which causation may be proven on a class-wide basis. . ."). )). "[W]hen a jury can resolve questions of liability with a single decision applicable to the whole class, and the only individual question left to resolve relates to damages, class certification is typically warranted. *Id.* (quoting *In re MTBE*, 241 F.R.D. at 448). Despite this precedent, correctly cited by the Magistrate Judge, the Magistrate did not correctly apply it to the facts of this case.

> 1.  **In Over 17 Years of Active Litigation, Many Courts, Including this One, and the U.S. Congress Have Found that Common Issues Predominate.**

This MDL is a mass tort case based on discrete accidents or disasters, resulting in a shared experience confined in time and place, where causation (among many other things) can be shown on a class-wide basis. *See* R&R at p.10 (citing *Talisman Energy*, 226 F.R.D. at 477 *and In re MTBE*, 241 F.R.D. at 442). The JPML, the Second Circuit, and the U.S. Congress have all found that common issues predominate in this litigation. *See* JPML Transfer Order, at p.1 (ECF No. 1) ("[a]ll MDL-1570 actions present common, complex legal and factual questions[.]"); *In re Terrorist Attacks on September 11, 2001*, 741 F.3d 353, 357, 359 (2d Cir. 2013) (reversing district court denial of Rule 60 relief because "[t]he procedural history of this case produced inconsistent results between two sets of plaintiffs," and "inconsistent results for victims of the same incident pose[] a unique problem of unfairness."); 18 U.S.C. § 2333; 28 U.S.C. § 1605A; 28 U.S.C. § 1605B (each creating overarching

12

federal causes of action and procedural tools available to the overwhelming majority of 9/11 family members and victim estates to avoid a piecemeal litigation under applicable common law).[5] The Case Management Orders ("CMO") have also consistently required consolidated briefing precisely because of the many issues common to all plaintiffs. *See e.g.*, CMO No. 2, at ¶¶16, 20 (ECF No. 247); CMO No. 3, at ¶¶3, 9-21 (ECF No. 248).

Notwithstanding the common issues that have occupied the parties' and this Court's time since 2003, the Magistrate Judge accepted Defendants' counterfactual that common law statute of limitations issues actually predominate in this litigation.

In over 17 years of litigation—almost 7000 docket entries—there has been virtually no briefing on any common law statute of limitation. In multiple District Court decisions and Second Circuit appellate rulings in this case, these courts have devoted approximately two sentences to this issue[6] which was barely raised, if raised at all, by the *al Baraka* Defendants in their motions to dismiss or in their discovery requests.[7]  Rather the Court and the parties have focused their full attention to the material issues in the case: on pleading standards, jurisdiction, agency, *causation*, intent, theories of liability, and a host of discovery disputes. *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d at 514; *In re Terrorist Attacks on Sept. 11, 2001,* 718 F. Supp. 2d at 494–95. Even if the only common issue were causation, class certification would be warranted. *See* R&R at p. 10 (citing *In re*

---

[5] *See also* Air Transportation Safety and System Stabilization Act, § 408(b), P.L. 107–42, 115 Stat. 230 (2001) (granting S.D.N.Y. "original and exclusive jurisdiction" over 9/11 claims to facilitate uniform adjudication); National Defense Authorization Act for Fiscal Year 2013, 112 P.L. 239, 126 Stat. 1632 (2013) (creating "Special Rule" for 9/11 claims by extending the ATA statute of limitations to January 2, 2019 to facilitate uniform adjudication of claims); United States Victims of State Sponsored Terrorism Clarification Act, 116 P.L. 69, 133 Stat. 1134 (2019) (amending VSST Fund to allow almost all 9/11 family members to participate).

[6] *See e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 514 n.6 (S.D.N.Y. 2010) ("intentional infliction of emotional distress ['IIED'] and assault and battery, pled in the *Federal* complaint, are dismissed as time-barred"), *aff'd on other grounds*, 714 F.3d 118 (2d Cir. 2013); *In re Terrorist Attacks on Sept. 11, 2001,* 718 F. Supp. 2d 456, 494–95 (S.D.N.Y. 2010) (same), *aff'd on other grounds*, 714 F.3d 109 (2d Cir. 2013).

[7] *See* DIB Mot. Dismiss (ECF No. 954) (VCF waiver and citizenship issues not discussed, and only New York statute of limitations issues for IIED and assault raised), WAMY Mot. Dismiss (ECF No. 1460) (same), Kadi Mot. Dismiss (ECF No. 1660) (same, but did raise VCF waiver argument, which went unaddressed by the Court).

13

*MTBE*, 241 F.R.D. at 442). Here, where so many more issues and causation have been and will be decided on a class-wide basis, the Court should certify the Class.

> **2.      The Overwhelming Majority of Class Members Have Identical Claims Under New York Law, and the Court Can Easily Resolve the Few Cases that Have Similar But Not Identical Claims.**

Of the 2,977 people killed on 9/11, 2,728 people (91.5%) were U.S. citizens. *See* Goldman Aff. at ¶ 3; Goldman 2nd Suppl. Dec. at ¶ 6. These 9/11 estates and family members have federal causes of action all subject to the same statute of limitations and legal standard. Further, of the 2,977 people who were killed on 9/11, 2,753 (92.5%) died in New York City. *See* FCC, Ex. A, pp. 1-70. New York law would govern their common law claims. *See Grosshandels-Und Lagerei-Berufsgenossenschaft v. World Trade Ctr. Props., LLC*, 435 F.3d 136, 137 (2d Cir. 2006) ("Given that wrongful death and survival actions [arising out of 9/11] relate to loss allocation, . . . and that the parties are domiciled in a number of different states, the presumption is that New York's rules apply."). The 7.5% (those killed outside New York) of the 8.5% (non-citizens killed) totals approximately 19 people, many of whom are already represent in this case against the *al Baraka* Defendants and are therefore excluded from the Class. *See* Declaration of Steven T. Cottreau, Esq. dated February 28, 2020, at ¶¶ 9-10 (ECF No. 6031). The remaining 2,958 of the 2,977 people killed on 9/11 either died in New York and therefore New York law would apply, or have viable federal causes of action which, for assessment of damages purposes, are likely to fully duplicate the damages to be awarded under the common law claims.

To the extent that Pennsylvania and Virginia statute of limitations affect the common law claims of 224 families who lost a loved one in Shanksville or at the Pentagon, the Court can resolve the issue with one basic factual inquiry—where the 9/11 victim died. *See Grosshandels-Und Lagerei-*

docs-100369157.1

*Berufsgenossenschaft*, 435 F.3d at 137.[8] That information is already included in the First Consolidated

Complaint ("FCC"), Exhibit A, pp. 1-70 (ECF No. 1570) (listing everyone who died on 9/11, where

they died, and where they were domiciled). It is all the Court needs to determine whose common

law claims are subject to different limitations periods from those who died in New York.[9] That's the

entire inquiry, and the Court would have to determine these issues on a wholesale basis for these 224

families anyway, with or without a certified class. The Magistrate Judge's finding that varying

common law issues predominate was wrong.[10]

>    **C.    A Class Action Is Superior Because It Protects the Rights of
>          Thousands Without Compromising Strategic Decisions Made By
>          Other 9/11 Families or Their Attorneys and Streamlines Resolution
>          of Thousands of Claims Within this MDL Without the Need for Renewed
>          Motion Practice, New Complaints, New Service, or More Discovery.**

The "superiority" prong of Rule 23(b)(3) is satisfied when a class action "would achieve

economies of time, effort, and expense, and promote … uniformity of decision as to persons

similarly situated, without sacrificing procedural fairness or bringing about other undesirable

results." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).  The Court must consider the

following non-exclusive factors:  (i) the class members' interest in individually controlling the

---

[8] The Magistrate Judge incorrectly found that the state of residency of the victim influences the choice of law analysis here. Under New York choice of law principles, if the applicable law is "conduct regulating" the law of the place of injury applies. If the law is "loss allocating" and the domiciles of the plaintiffs and defendants differ (which they do here), the law of the place of injury applies. *See Grosshandels-Und Lagerei-Berufsgenossenschaft*, 435 F.3d at 137. Accordingly, in all situations, the law of the crash site (i.e., the place of injury) governs the common law claims here.

[9] As discussed *infra* p. 23, common law statute of limitations variances in Pennsylvania and Virginia are red herrings as various tolling rules apply to preserve those claims.

[10] The Magistrate agreed with the *O'Neill* Plaintiffs that the other issues identified by the *al Baraka* Defendants as potentially predominating, in fact did not predominate. The Magistrate found that to the extent non-citizens may not have viable federal claims, that factual inquiry was "straightforward" and "does not predominate [over] common questions on liability." R&R at p. 14. With regard to the *al Baraka* Defendants' other argument, that a waiver signed by over 97% of 9/11 victim estates to obtain VCF benefits bars certain claims against these Defendants, the Magistrate similarly found that this issue "does not present a significant individualized question." *Id.* Plaintiffs agree and therefore do not object to these portions of the Magistrate's Report & Recommendation. The only other basis for the Magistrate's finding as to predominance was that damages are "inherently highly individualized". R&R at p. 15. But the Magistrate's Report & Recommendation acknowledged that "if the only individual question left to resolve relates to damages, class certification is typically warranted." R&R at p.10 (quoting *In re MTBE*, 241 F.R.D. at 448). And as discussed *supra*, pp. 10-11, the Magistrate should have, and this Court must, consider certification of a liability-only issue class under Rule 23(c)(4).

prosecution of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and, (iv) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). Due to the lack of oral argument caused by the COVID-19 pandemic, the Magistrate Judge did not effectively analyze the uniquely complex 17-year record of this case, resulting in a superiority finding that rested on several key inaccuracies.

### 1.   Class Certification Would Preserve Thousands of Claims.

The Magistrate Judge assumed without any support in the record, that there is "little question" that members of the proposed Class are aware of this MDL and have either consciously chosen to participate and sue particular defendants and not others, or have decided not to participate in the litigation at all, thus obviating the need for a class. R&R at p. 18. That factual finding is wrong. The overwhelming majority who find out about the existing litigation, join the litigation. Goldman 2nd Suppl. Dec. at ¶ 3. But many are still not aware that this suit exists, or that they are eligible to participate. *Id.* For example, in the year that this class motion has been pending, undersigned counsel retained over 400 new 9/11 family members and 9/11 estates to participate in this MDL.[11] *Id.* at ¶ 4. The vast majority of these new clients had never heard of this MDL or had no idea that they could potentially recover for the loss of a loved one on 9/11. *Id.* at ¶ 2. Class certification serves the vital purpose of ensuring that those family members who have not yet found out about this MDL continue to have the opportunity to join. Certification avoids the precise situation the Second Circuit warned against: that "[t]he procedural history of this case [would] produce[] inconsistent results between two sets of plaintiffs," and "inconsistent results for victims of

---

[11] At this time, Anderson Kill clients, other than the O'Neill family, only are in suit against Iran with a sizeable subset of them also in suit against the Kingdom of Saudi Arabia.

the same incident pose[] a unique problem of unfairness." *In re Terrorist Attacks on September 11, 2001*, 741 F.3d 353 at 359.

The Magistrate Judge noted that individual plaintiffs have relatively large potential claims against these Defendants and so the transactional cost of filing a new claim would be relatively small compared to the potential recovery, unlike other types of class actions. R&R at p. 19. But while the per-plaintiff recovery may be higher in a mass tort case compared to other class actions, the costs associated with this litigation, such as procuring translation services, hiring expert witnesses, and the cost of foreign service, are also higher than in other class actions. So while the potential recovery may be higher, so are out-of-pocket expenses.[12]

Further, if the Court denies class certification, that could drastically change the financial incentive for filing standalone suits by adding fuel to Defendants' statute of limitations defense. Thus, class certification in this case actually dovetails with the more traditional reasons for class certification—keeping per-plaintiff costs down while preserving potential recoveries.

### 2. Class Certification Will Not Interfere with Strategic Decisions Made By Individual Family Members or Their Attorneys and in Fact, the Existence of a Putative Class to this Point Has Aided Prosecution of These Claims.

The Magistrate Judge incorrectly assumed that thousands of individual hand-picked attorneys represent a huge number of 9/11 family members, who strategically chose who to sue and what to allege. R&R at pp. 17-18. That is a misconception. If class certification were granted, virtually all 9/11 families would be represented by just three law firms as to these Defendants: Kreindler & Kreindler, Motley Rice, and Anderson Kill. *See* Goldman Aff. at ¶ 47. These firms actively communicate with each other, all actively serve on the PEC, decide collectively about overall strategy against all MDL Defendants; and in some cases have relied on the *O'Neill* putative class to

---

[12] This issue is even more acute because many members of the 9/11 community are older. During the COVID-19 pandemic, many have died. This creates an additional barrier to bring suit against the Defendants.

preserve claims against these particular defendants to help streamline case management. The Magistrate Judge's perception that class certification would curtail strategic decisions of thousands of individual attorneys ignores the fact that this case is managed by a functional PEC (of which undersigned counsel is a member with the above-reference firms), with just a few attorneys coordinating regularly on strategy.

For similar reasons, opt-out rates would be low. The *O'Neill* Plaintiffs purposely narrowed the Class definition to exclude 9/11 estates and family members who already have counsel as to these defendants. Thus, opt outs will be limited to those few individuals represented by law firms, who do not presently have pending claims against these Defendants, and who decide they would prefer to file new suits against these Defendants rather than participate in the Class. But adding plaintiffs or filing new suits may require new service on these Defendants, including the defaulted Defendants, and could lead to the parties restarting discovery and relitigating issues already decided by the Court, so opt-outs may in fact be zero.

The Magistrate Judge identified phantom ethical issues that could arise if class is certified regarding the few class members represented by other counsel who have not already sued the *al Baraka* Defendants. *See* R&R at p. 20. There is virtually no overlap in representation. Of the 5,000+ members of the proposed Class, Anderson Kill commenced litigation in this MDL for over 2,700 9/11 family members and estates as to Iran, approximately 2,200 are completely unrepresented, and the remaining few proposed class members have pending claims in this MDL but not against these Defendants and are represented by other counsel. The Magistrate Judge's concern is that if this latter group of class members do not opt out, they would have two sets of counsel as to different defendants. As a practical matter, very few people would have this issue. Besides Anderson Kill, Motley Rice and Kreindler & Kreindler represent the vast majority of 9/11 families in this litigation, and they have also generally sued these Defendants. For the remaining handful of plaintiffs where

this may be an issue, they can opt out and file their own suits, or they can manage with different sets of attorneys representing them as to different defendants. That is already the case with several plaintiffs and no claimed conflict or ethical issue has been raised by any 9/11 defendant, or previously by any jurist. Undersigned counsel serves on the PEC and would work collaboratively on any issue that would arise, as we have done with limited exception for decades.

### 3. Class Certification Within the MDL Is Appropriate.

The Magistrate Judge erroneously determined due to the absence of oral argument that a class was not superior *when compared to* an MDL. R&R at p. 17. Class superiority is not determined by an either/or comparison to an MDL. While the *O'Neill* Plaintiffs agree that this MDL has assisted the parties in adjudicating aspects of the case, undersigned counsel believes that the Class would further the objective and operations of the MDL and actually lead to added efficiencies here. *See In re Agent Orange Prod. Liab. Litig.*, 506 F. Supp. 762, 785 (E.D.N.Y. 1980) (entire MDL certified as a class to give the court "full control over the entire litigation" and "provide[] the greatest flexibility and the greatest opportunity for judicial efficiency and economy of time and money."); *In re Vitamin C Antitrust Litigation*, 279 F.R.D. 90, 97 (E.D.N.Y. 2012) (certain plaintiffs moved for class certification after individual cases were consolidated); *In re MTBE*, 241 F.R.D. at 189 (same); *In re Pfizer Securities Litig.*, 282 F.R.D. 38, 41-42 (S.D.N.Y. 2012) (multiple class actions consolidated into one multidistrict litigation); *In re Sony Corp. SXRD Rear Projection Television Marketing, Sales Practices and Products Liability Litigation*, No. 09-md-2102, 2010 WL 3422722, at *1 (S.D.N.Y. Aug. 24, 2010) (same); *see also In re Zyprexa Products Liability Litigation*, 253 F.R.D. 69, 78 (E.D.N.Y. 2009) (Weinstein, J.), *rev'd on other grounds*, 620 F.3d 121 (2d Cir. 2010) (MDL structured as "quasi-class action" for purposes of overseeing settlements). Similarly, while the Magistrate Judge touted the MDL as an efficient *pretrial* case management tool, which the *O'Neill* Plaintiffs do not dispute, the Magistrate

Judge failed to realize that those efficiencies disappear once cases are selectively remanded out of the MDL. A class, in contrast continues past pretrial proceedings.

### 4.      A Class Would Streamline Management of this Case.

The Magistrate Judge wrongly cited the availability of "streamlined procedures for adding large numbers of new plaintiffs to individual cases" as a reason that class certification should fail. R&R at p. 21. But unlike the cases against the Kingdom of Saudi Arabia, Iran, and Sudan, there is no streamlined procedure for adding new plaintiffs to cases against the *al Baraka* Defendants. The Magistrate Judge's reliance on these streamlined procedures is therefore misplaced. In actuality, the Class will prevent the need for many new lawsuits and new discovery. It would also potentially prevent re-litigation of motions already decided by the Court, including issues related to the defaulted defendants, who arguably would no longer be in default if new plaintiffs are required to file new suits against them. Indeed, to date, undersigned counsel has had to file <u>22</u> separate lawsuits against Iran and arrange for service and seek judgments in <u>all 22</u> cases separately, and then arrange for service of those judgments separately, precisely because there is no class action against Iran.

Finally, the Magistrate Judge found that Plaintiffs did not describe "a reliable and administratively feasible way to discover and communicate with all members of the class." R&R at p. 18. But the Magistrate Judge failed to recognize that the suggested alternative of denying class certification requires inevitable substantial additional pleadings and service issues and may deprive potential plaintiffs of viable claims. That is not a reasonable alternative. Rather, there are many available means to communicate with absent class members, including using records on file with the VCF, contacting already-represented family members to identify other relatives who may not know about the litigation, private investigations, public records searches, notice in newspapers and on social media, or any other typical means. 9/11 families should not be left out of this litigation solely due to logistical challenges associated with providing notice, especially when the potential universe

of class members here is small compared to classes in Truth in Lending or securities manipulation cases. If this is the only difficulty in managing a class action, that cannot be the reason to find a lack of superiority. *See In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 229 ("Absent class certification and its attendant class-wide notice procedures, most of these individuals—who potentially number in the thousands—likely never will know that defendants violated their clearly established constitutional rights, and thus never will be able to vindicate those rights. As a practical matter, then, without use of the class action mechanism, individuals harmed by defendants' policy and practice may lack an effective remedy altogether.").

For these reasons, and for the reasons discussed in the *O'Neill* Plaintiffs' initial briefing before the Magistrate Judge, the Class meets the superiority factor.

### D. A Class of Over 5,000 Members Satisfies Rule 23(a)'s Numerosity Requirement as Responding Defendants Concede.

Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). "Impracticable" does not mean impossible, but simply difficult or inconvenient. *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 179 (S.D.N.Y. 2005). "[N]umbers in excess of forty generally satisfy the numerosity requirement." *Id.*; *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, the potential class size is at least 5,130. Goldman Aff. ¶¶ 8-11. A proposed class of over 5,130 people satisfies the numerosity requirement and the *al Baraka* Defendants have not disagreed.

Nevertheless, the Magistrate Judge, relying on a single unpublished opinion that rejected a proposed class of 110 members, found that a 5,000+ member class was not numerous because the Court "established a streamlined procedure for adding large numbers of new plaintiffs to individual cases." R&R at p. 21. But as discussed above, unlike other cases in this MDL against the Kingdom of Saudi Arabia, Iran, and Sudan, there is no streamlined procedure for adding new plaintiffs to

21

cases against these Defendants. Further, even if the Court implemented a truly streamlined procedure, that could not help the thousands of proposed class members whose claims may become time-barred if the Court denies class certification.

> **E.**     **The O'Neills' Claims Are Typical of the Class's and the O'Neills Would Adequately Advance Those Claims Because (1) They Occupy the Same Legal Position as the Overwhelming Majority of 9/11 Families; (2) the Differences Between Their Claims and the Claims of a Handful of Other Families Is Small, and (3) Those Claims Would Be Protected Anyway.**

"Typicality . . . requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Further, if "all members of the class would benefit from the named plaintiffs' action," that "demonstrates that the typicality requirement is met." *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 206 (E.D.N.Y. 2005). Adequacy is satisfied when class members' claims "are not antagonistic to the interest of other members". *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

Here, the Magistrate Judge found, wrongly, that the proposed class representatives were not adequate or typical for virtually the same reasons that the Magistrate Judge found that class-wide issues did not predominate. But the O'Neills are U.S. citizens, John P. O'Neill, Sr. died in New York at the World Trade Center on 9/11, and the O'Neills participated in the VCF. That puts them in the *identical* legal position as the overwhelming majority of other 9/11 families with regard to federal causes of action, common law claims, and any VCF waiver argument.[13] So the Magistrate Judge recommended denial of class certification, potentially undermining the rights of thousands of people, on account of a few families where the 9/11 victim was not a U.S. citizen and that person

---

[13] As discussed *supra*, pp. 3, 10, & 14, 92.5% of victims died in New York, 91.5% of victims were U.S. citizens, and 97% of 9/11 families participated in the VCF.

died outside of New York. As noted *supra*, pp. 11-14, the only arguably relevant distinction between the *O'Neill* Plaintiffs and plaintiffs' whose decedent died in Virginia or Pennsylvania is the differing limitations periods and tolling doctrine, which must be determined in the underlying cases in any event.

The Magistrate Judge fixated on the possibility that certain causes of action for these handful of 9/11 families from Virginia and Pennsylvania would be time-barred. But that is not even true (and is not a good reason to deny class certification in any event as that issue can, and likely will be resolved on a wholesale basis, with or without a class). Various tolling rules besides *American Pipe* class tolling apply to their claims. For example, in New York, Pennsylvania, and Virginia, pending criminal proceedings toll an otherwise applicable statute of limitations. *See* CPLR § 213-b (10-year extension to sue a defendant from date of conviction); CPLR § 215 (at least one year from termination of criminal action against same defendant that is the subject of the criminal action); *Alford v. St. Nicholas Holding Corp.*, 631 N.Y.S.2d 30 (App. Div. 1995) ("'the same defendant', is broad enough to include persons so related to the criminal defendant as to be vicariously liable for his or her intentional torts"); *Hutchinson v. Merchants' & Mechanics' Bank*, 41 Pa. 42, 45 (Pa. 1861) (criminal proceedings arising out of bank theft tolled statute of limitations for trover); Va. Code § 8.01-229(K) ("if a criminal prosecution arising out of the same facts is commenced, the time such prosecution is pending shall not be computed as part of the period within which such a civil action may be brought. . . .").

The criminal proceeding against Zacarias Moussaoui for example, continued through May 2006, when a Virginia jury sentenced him to life in prison, well after the *O'Neill* Plaintiffs filed their Class Complaint in 2004. There are also ongoing criminal prosecutions proceeding, *to this day*, for inmates currently detained at Guantanamo Bay for their role in the attacks. Indeed, the FBI asserted the law enforcement privilege to prevent Plaintiffs from discovering relevant documents. Their

privilege assertion not only suggests that criminal proceedings are still ongoing in connection with the 9/11 attacks, but also provides a clear rationale for why these tolling rules exist in the first place.

The Magistrate Judge also expressed concern that since the O'Neills participated in the VCF, the personal representative of the O'Neill estate had to sign a waiver intended to immunize the airlines from negligence suits. Therefore, the Magistrate Judge reasoned, the O'Neills might not focus their efforts on proving liability against the *al Baraka* Defendants for negligence or other causes of action that have modest intent standards. R&R at p. 25. The Magistrate Judge's concerns are misplaced for several reasons.

First, only the VCF applicant (i.e. the personal representative of the 9/11 victim estate) had to sign a VCF waiver, not the entire family, so several of the proposed class representatives never signed a waiver and therefore stand on identical legal footing as anyone else who did not sign the waiver.

Second, 2,880 of 2,977 9/11 families (97%), including the O'Neills, participated in the VCF. Goldman Supp. Aff. at ¶ 5. Each of these families would need to respond to the exact same waiver argument.

Third, undersigned counsel, and many other members of the PEC represent individuals and estates who did not participate in the VCF. Undersigned counsel would be duty-bound to protect their interests notwithstanding any purported merit to the VCF waiver argument applicable to other clients.[14]

## CONCLUSION

In light of forgoing, the *O'Neill* Plaintiffs respectfully request that the Court sustain their Objections to the Magistrate Judge's Report and Recommendation and certify a liability-only issue

---

[14] The Magistrate Judge found that class counsel was adequate. The *al Baraka* Defendants did not dispute this before the Magistrate, and the *O'Neill* Plaintiffs do not object to the Magistrate Judge's finding in this regard.

class. Alternatively, in the event the Court is inclined to deny class certification, Plaintiffs request a

stay of 180 days before the Court enters a final order deciding the class issue to allow undersigned

counsel time to notify as many claimants as possible about the pending litigation and add them to an

existing suit..

New York, New York
March 8, 2021

By:     /s/ *Jerry S. Goldman*
        Jerry S. Goldman, Esq.
        Jeffrey E. Glen, Esq.
        Bruce Strong, Esq.
        ANDERSON KILL P.C.
        1251 Avenue of the Americas
        New York, NY 10020
        Ph: (212) 278-1000
        Fax: (212) 278-1733
        jgoldman@andersonkill.com
        jglen@andersonkill.com
        bstrong@andersonkill.com

        Attorneys for Estate of
        John P. O'Neill, Sr., et al.