# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re Terrorist Attacks on September 11, 2001** | **03 MDL 1570 (GBD)(SN)**<br>**ECF Case** |

**This document relates to:**

*Ashton et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977 (GBD)(SN) (and member case *Hugh A. Chairnoff, et al. v. Islamic Republic of Iran*, 1:18-cv-12370(GBD) (SN)))

### *CHAIRNOFF* PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR (1) JUDGMENT BY DEFAULT AS TO LIABILITY AGAINST THE ISLAMIC REPUBLIC OF IRAN PURSUANT TO 28 U.S.C. § 1605A, AND (2) PARTIAL FINAL JUDGMENT FOR SOLATIUM AND PAIN AND SUFFERING DAMAGES FOR CERTAIN PLAINTIFFS

FLEISCHMAN BONNER & ROCCO LLP
James P. Bonner (jbonner@fbrllp.com)
Patrick L. Rocco (procco@fbrllp.com)
Susan M. Davies (sdavies@fbrllp.com)
81 Main Street, Suite 515
White Plains, New York 10601
Telephone:  908-516-2066

Joseph Peter Drennan (admitted *pro hac vice*)
218 North Lee Street, Third Floor
Alexandria, Virginia 22314-2631
Telephone: (703) 519-3773
Telecopier: (703) 997-2591
Mobile: (540) 226-0777
joseph@josephpeterdrennan.com

Patrick M. Donahue (admitted *pro hac vice*)
P. Joseph Donahue (admitted *pro hac vice*)
Thomas P. Donahue (admitted *pro hac vice*)
THE DONAHUE LAW FIRM, LLC
18 West Street
Annapolis, MD 21401
Telephone: (410) 280-2023
pmd@thedonahuelawfirm.com
pjd@thedonahuelawfirm.com
tpd@thedonahuelawfirm.com

P. York McLane (admitted *pro hac vice*)
LAW OFFICE OF P. YORK MCLANE
14015 Park Dr., Ste. 111
Tomball, Texas 77377
yorkmclane@yahoo.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT ........................................................................................................................... 3

I.   THIS COURT HAS SUBJECT MATTER JURISDICTION
OVER *CHAIRNOFF* PLAINTIFFS' SECTION 1605A(c)
CLAIMS AGAINST IRAN .......................................................................................... 3

II.  THIS COURT HAS PERSONAL JURISDICTION OVER
IRAN IN THIS ACTION ............................................................................................. 4

III. IRAN HAS DEFAULTED IN THIS ACTION ................................................................ 6

IV. IRAN IS LIABLE TO *CHAIRNOFF* PLAINTIFFS UNDER
SECTION 1605A(c) OF THE FSIA ........................................................................... 6

    A.  LEGAL STANDARD FOR DEFAULT JUDGMENT
AGAINST A FOREIGN SOVEREIGN ................................................................ 6

    B.  THE ELEMENTS OF *CHAIRNOFF* PLAINTIFFS'
SECTION 1605A(C) CLAIMS ....................................................................... 8

    C.  THE PROOF OF EACH ELEMENT OF *CHAIRNOFF*
PLAINTIFFS' SECTION 1605A(C) CLAIMS ................................................... 9

        1.  FACTS OF WHICH THIS COURT MAY TAKE JUDICIAL NOTICE ............................ 9

        2.  ALL OF THE *CHAIRNOFF* PLAINTIFFS ARE OR REPRESENT U.S.
CITIZENS INJURED OR KILLED IN THE SEPTEMBER 11TH ATTACKS ................... 10

        3.  EVIDENCE SATISFACTORY TO THE COURT ESTABLISHES THAT
*CHAIRNOFF* 9/11 DECEDENTS' DEATHS WERE CAUSED BY IRAN'S
PROVISION OF MATERIAL SUPPORT AND RESOURCES TO AL QAEDA ............... 11

V.  CERTAIN *CHAIRNOFF* PLAINTIFFS SEEK AWARDS
OF DAMAGES AND PREJUDGMENT INTEREST
AGAINST IRAN ...................................................................................................... 11

    A.  SOLATIUM DAMAGES ............................................................................... 11

    B.  PAIN AND SUFFERING DAMAGES .............................................................. 13

    C.  PUNITIVE DAMAGES ................................................................................. 13

    D.  PREJUDGMENT INTEREST ......................................................................... 14

CONCLUSION...........................................................................Error! Bookmark not defined.5

Plaintiffs in the above-captioned *Hugh A. Chairnoff, et al. v. Islamic Republic of Iran*, 1:18-cv-12370 (GBD) (SN) (the "*Chairnoff* Plaintiffs"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in Support of their Motion for (1) Judgment by Default as to Liability of the Islamic Republic of Iran pursuant to Section 1605A(c) of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A(c); and (2) Partial Final Judgment for Solatium and Pain and Suffering Damages and Prejudgment Interest for Certain *Chairnoff* Plaintiffs.

## PRELIMINARY STATEMENT

This action arises out of the events of September 11, 2001, during which members of the al Qaeda terrorist network hijacked four commercial airliners and used those planes as weapons in coordinated terrorist attacks on the United States (the "September 11th Attacks"). The *Chairnoff* Plaintiffs are the personal representative of an individual killed in the September 11th Attacks (a "9/11 Decedent") and family members of seven other 9/11 Decedents. *See* Declaration of Joseph Peter Drennan executed on March 18, 2021 ("Drennan Decl.") at ¶ 4.

*Chairnoff* Plaintiffs now respectfully request entry of judgment by default against the Islamic Republic of Iran ("Iran") on the issue of liability, solely as to the *Chairnoff* Plaintiffs' claims under the FSIA's private right of action against state sponsors of terrorism, codified at 28 U.S.C. § 1605A(c).[1] *Chairnoff* Plaintiffs' Section 1605A(c) claims are based on Iran's direct sponsorship of al Qaeda for nearly a decade leading up to September 11, 2001, which included support that directly assisted and enabled al Qaeda to carry out the September 11th Attacks. Throughout the time that Iran sponsored al Qaeda, Iran knew and intended that al Qaeda would

---

[1] For purposes of this memorandum, references to "*Chairnoff* Plaintiffs" do not include Plaintiff Isabel Nimbley, who was not a United States citizen on September 11, 2001 and does not join in any of the relief sought in this motion. *See* Drennan Decl. at ¶ 1 n.1.

1

use support provided by Iran to carry out terrorist attacks against the United States and its allies, a goal al Qaeda announced publicly on numerous occasions prior to September 11, 2001.

This Court already has entered judgment against Iran for identical claims by other plaintiffs in multiple related matters consolidated before this Court under *Havlish v. Bin Laden (In re Terrorist Attacks on September 11, 2001) (Havlish I)*, 2011 U.S. Dist. LEXIS 155899 (S.D.N.Y. Dec. 22, 2011), based on a full evidentiary record and hearing pursuant to the FSIA. *Chairnoff* Plaintiffs respectfully incorporate that prior evidence herein to establish the "material support or resources" and causation elements of their Section 1605A(c) claims against Iran.

In addition, those *Chairnoff* Plaintiffs listed on Exhibit A to the Drennan Declaration (the "Exhibit A Plaintiffs")—all of whom are spouses, parents, children, siblings and, in one instance, the estate of a parent, of 9/11 Decedents—respectfully move this Court to enter partial final judgment awarding them solatium damages in the same amounts previously awarded by this Court against Iran to other similarly situated plaintiffs, and prejudgment interest on those damages at the rate previously determined by this Court.  Plaintiff Debra Guja, as personal representative of the estate of her husband Geoffrey E. Guja, respectfully moves this Court to enter partial final judgment awarding her husband's estate $2,000,000 in damages for his pain and suffering, and prejudgment interest on that amount.

Thus, while all *Chairnoff* Plaintiffs hereby move for default judgment as to Iran's liability under § 1605A(c) of the FSIA, currently only the Exhibit A Plaintiffs and Debra Guja as personal representative of the estate of Geoffrey E. Guja seek entry of partial final damages judgments against Iran.[2]

---

[2] Aside from the Exhibit A Plaintiffs, two other *Chairnoff* Plaintiffs—Angel Anderson and Aishah Anderson—who are non-immediate family members of a 9/11 Decedent respectfully seek leave to file their motions for entry of partial final damages judgments at a later date, when

<u>ARGUMENT</u>

"A default judgment may be entered against a foreign sovereign when (1) subject matter jurisdiction over the claims is established; (2) personal jurisdiction is properly exercised over the defendants; (3) the plaintiff has satisfactorily presented evidence establishing the defendants' liability to the plaintiff; and (4) the plaintiff has satisfactorily proven they are entitled to the monetary damages the plaintiff seeks." *Azadeh v. Gov't of the Islamic Republic of Iran*, 2018 U.S. Dist. LEXIS 150597, at *27 (D.D.C. Sept. 5, 2018). The satisfaction of each of these requirements is addressed below.

I.    THIS COURT HAS SUBJECT MATTER JURISDICTION OVER
      *CHAIRNOFF* PLAINTIFFS' SECTION 1605A(C) CLAIMS AGAINST IRAN

The FSIA provides the "sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Samantar v. Yousef,* 560 U.S. 305, 314 (2010) (citing *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 439 (1989)). Under the architecture of the FSIA, foreign states are presumed to be immune from suit in the courts of the United States unless one of the FSIA's enumerated exceptions to immunity applies. *See* 28 U.S.C. §§ 1605-1605A; *Samantar,* 560 U.S. at 305. This Court previously held that subject matter jurisdiction exists for claims against Iran for injuries resulting from the September 11th Attacks under two separate, independent provisions of the FSIA: the State Sponsor of Terrorism exception (28 U.S.C. § 1605A(a)) and the noncommercial tort exception (28 U.S.C. § 1605(a)(5)). *See Havlish I,* 2011 U.S. Dist. LEXIS 155899, at *186 ("Here, this

_____

the necessary proof of their damages has been compiled. *See* Drennan Decl. at ¶ 11. Plaintiff Debra Guja also seeks leave to move at a later date for solatium damages for two non-immediate family members of 9/11 Decedent Geoffrey E. Guja. *See id.* Plaintiff Michele M. Nimbley may also file a separate motion for entry of partial final judgment for solatium damages at a later date. *See id.* at ¶ 11.

3

Court has [subject matter] jurisdiction because . . . defendants' conduct falls within both the 'state sponsor of terrorism' exception set forth in 28 U.S.C. § 1605A and the 'noncommercial tort' exception of § 1605(a)(5).").

This Court's holding in *Havlish I* is controlling in this action, as it has been in other related actions against Iran including *Hoglan, et al. v. Islamic Republic of Iran, et al.,* 1:11-cv-07550-GBD, ECF No. 112 (Aug. 31, 2015) and *Ashton, et al. v. Al Qaeda Islamic Army, et al.*, 1:02-cv-6977-GBD, ECF No. 759 (Aug. 31, 2015). The issue of subject-matter jurisdiction over Iran need not be re-litigated here. *See, e.g., Fed. Ins. Co. v. Kingdom of Saudi Arabia,* 741 F.3d 353, 358 (2d Cir. 2013) (explaining that the "September 11 cases were centralized in part to 'prevent inconsistent pretrial rulings'") (citation omitted); *see also United States v. Quintieri,* 306 F.3d 1217, 1225 (2d Cir. 2002) ("[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case . . . .") (internal quotations omitted).

## II.   THIS COURT HAS PERSONAL JURISDICTION OVER IRAN IN THIS ACTION

"Under the FSIA, . . . personal jurisdiction equals subject matter jurisdiction plus valid service of process." *Shapiro v. Republic of Bolivia,* 930 F.2d 1013, 1020 (2d Cir. 1991). No due process analysis is necessary to determine the existence of personal jurisdiction over Iran. *See Frontera Res. Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic*, 582 F.3d 393, 400 (2d Cir. 2009) ("[F]oreign states are not 'persons' entitled to rights under the Due Process Clause . . . .").

Section 1608(a) of the FSIA "prescribes a hierarch of four alternative procedures to use when serving process on a foreign state or political subdivision. The first two procedures provide for service according to either special arrangements between the parties, or international

4

conventions governing service of process." *Finamar Inv'rs v. Republic of Tadjikistan*, 889 F.

Supp. 114, 116 (S.D.N.Y. 1995) (citing 28 U.S.C. § 1608(a)(1)-(2)).  Iran is not amenable to

service under either of Section 1608(a)'s first two procedures because there are no applicable

special arrangements or international conventions.  *See* Declaration of Susan M. Davies in

Support of Request for Clerk's Certificate of Default Against Islamic Republic of Iran executed

on November 5, 2020 ("Davies Decl.") (ECF No. 46 in 1:18-cv-12370-GBD-SN) at ¶ 6; *Azadeh*,

2018 U.S. Dist. LEXIS 150597, at *40.

*Chairnoff* Plaintiffs' attempt in early 2020 to serve Iran under Section 1608(a)(3)—"by

any form of mail requiring a signed receipt . . . address and dispatched by the clerk of the court

to the head of the ministry of foreign affairs of the foreign state"—proved unsuccessful.  *See*

Davies Decl. at ¶ 7.

*Chairnoff* Plaintiffs eventually succeeded in serving Iran pursuant to Section 1608(a)(4)

of the FSIA, through the U.S. Secretary of State, who transmitted one copy of the summons and

complaint and a notice of suit, together with Farsi translations of same, to the Embassy of

Switzerland in Tehran, Iran, which in turn transmitted the documents to the Iranian Ministry of

Foreign Affairs in Tehran on June 29, 2020.  *See* Davies Decl. at ¶ 9 and Ex. 3 (July 28, 2020

letter from U.S. Department of State to Clerk of S.D.N.Y. enclosing copies of Swiss diplomatic

notes).  Although the Iranian Ministry of Foreign Affairs ultimately refused to accept the

documents (*see id*.), the Swiss Embassy's transmission of same constituted good and proper

service pursuant to Section 1608(c)(1) of the FSIA, which provides that service under Section

1608(a)(4) "shall be deemed to have been made . . . as of the date of transmittal indicated in the

certified copy of the diplomatic note"—which was June 29, 2020.  *See* Davies Ex. 3; *Panahi v.*

*Islamic Republic of Iran*, 2020 U.S. Dist. LEXIS 211143, at *17 (D.D.C. Nov. 10, 2020) ("It is

of no moment to this Court's analysis that Iran refused to accept the documents [from the Swiss diplomats in Tehran], . . . and the record shows that as of May 21, 2019, plaintiff had fully complied with the requirements of 28 U.S.C. § 1608(a)(4) and properly served Iran under the FSIA.") (internal citations omitted).

## III.   IRAN HAS DEFAULTED IN THIS ACTION

Pursuant to Section 1608(d) of the FSIA, Iran was obligated to "serve an answer or other responsive pleading to [*Chairnoff* Plaintiffs'] complaint within sixty days after service ha[d] been made" on June 29, 2020.  On November 6, 2020, the Clerk of this Court entered Iran's default pursuant to Fed. R. Civ. P. 55 and S.D.N.Y. Local Civil Rule 55.  *See* ECF No. 47.

## IV.   IRAN IS LIABLE TO *CHAIRNOFF* PLAINTIFFS UNDER SECTION 1605A(C) OF THE FSIA

### A.   Legal Standard for Default Judgment Against a Foreign Sovereign

Under the FSIA, "[n]o judgment by default shall be entered by a court of the United States or of a State against a foreign state . . . unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."  28 U.S.C. § 1608(e).  While the Second Circuit has yet to elaborate on the meaning of "evidence satisfactory to the court," courts in this District have characterized the burden to be met by the plaintiffs as "'a legally sufficient evidentiary basis for a reasonable jury to find for plaintiff.'"  *See, e.g.*, *Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 224 (S.D.N.Y. May 7, 2003) (quoting *Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91, 98 (D.D.C. 2002)); *Bd. of Mgrs. of Otic Prof'l Condo. v. Democratic Republic of Somalia*, 2009 U.S. Dist. LEXIS 68333, at *3 (S.D.N.Y. July 20, 2009) (same).

"In evaluating the Plaintiffs' proof [under Section 1608(e)], the Court may 'accept as true the plaintiffs' uncontroverted evidence.'"  *Havlish I*, 2011 U.S. Dist. LEXIS 155899, at *84 (quoting *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 100 (D.D.C. 2000) and *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258, 268 (D.D.C. 2003)).  No evidentiary hearing is required.  "In FSIA default judgment proceedings, the plaintiffs may establish proof by affidavit."  *Id.* (citing *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13, 19 (D.D.C. 2002)) *see also Commercial Bank of Kuwait v. Rafidain Bank*, 15 F. 3d 238, 242 (2d Cir. 1994) (evidence in the form of affidavits and exhibits sufficed to satisfy Section 1608(e)).

In litigation involving multiple claims arising from the same terrorist attacks, "the FSIA does not require this Court to relitigate issues that have already been settled in previous decisions.  Instead, the Court may review evidence considered in an opinion that is judicially noticed, without necessitating the re-presentment of such evidence."  *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 60 (D.D.C. 2010) (internal quotations and citations omitted).  *See also, e.g., Harrison v. Republic of Sudan,* 882 F. Supp. 2d 23, 31 (D.D.C. 2012) ("[W]hen a court has found facts relevant to a FSIA case involving material support to terrorist groups, courts in subsequent, related cases may 'rely upon the evidence presented in earlier litigation . . . without necessitating the formality of having that evidence reproduced.'")(quoting *Taylor v. Islamic Republic of Iran,* 811 F. Supp. 2d 1, 7 (D.D.C. 2011)); *Rimkus v. Islamic Republic of Iran,* 750 F. Supp. 2d 163, 172 (D.D.C. 2010) ("[T]he statutory obligation found in § 1608(e) was not designed to impose the onerous burden of re-litigating key facts in related cases arising out of the same terrorist attack . . . .  [C]ourts in FSIA litigation have adopted a middle-ground approach that permits courts in subsequent related cases to rely upon

the evidence presented in earlier litigation—without necessitating the formality of having that evidence reproduced—to reach their own, independent findings of fact in the cases before them." (internal citation omitted)).

As detailed below, the affidavits, documentary evidence, and testimony presented to and reviewed by this Court in *Havlish, et al. v. Bin Laden, et al.*, 1:03-cv-9848-GBD, all of which are part of the record in this multidistrict litigation, provide a sufficient evidentiary basis to establish certain elements of *Chairnoff* Plaintiffs' Section 1605A(c) claims against Iran without the necessity for representation of the same evidence.

### B.   The Elements of *Chairnoff* Plaintiffs' Section 1605A(c) Claims

The private right of action in Section 1605A(c) of the FSIA has six elements:  (1) a country designated as a state sponsor of terrorism shall be liable to (2) a U.S. citizen (3) for personal injury or death (4) caused by (5) that country's provision of material support or resources (6) for an act of torture, extrajudicial killing, aircraft sabotage or hostage taking.  *See* 28 U.S.C. §§ 1605A(a)(1), (c) and (h)(5), 8 U.S.C. § 1101(a)(22).

Section 1605A(h) adopts the following definition of "material support or resources" set forth in 18 U.S.C. § 2339A:

> [T]he term 'material support or resources' means any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials . . . .

18 U.S.C. § 2339A(b)(1).

In FSIA cases involving terrorist attacks caused by a foreign state's provision of material support or resources, a court must "determine whether a defendant country has provided material

8

support to terrorism . . . consider[ing] first, whether a particular terrorist group committed the terrorist act and second, whether the defendant foreign state generally provided material support or resources to the terrorist organization which contributed to its ability to carry out the terrorist act." *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 67 (D.D.C. 2008).

The applicable standard of causation is liberally construed in § 1605A material-support cases—namely, Plaintiffs do not need to demonstrate a direct nexus between the material support and the eventual terrorist act. *See, e.g., Havlish I,* 2011 U.S. Dist. LEXIS 155899, at *202 ("The causation requirement under the statute is satisfied by a showing of proximate cause. Proximate causation may be established by a showing of a 'reasonable connection' between the material support provided and the ultimate act of terrorism.") (quoting *Valore*, 700 F. Supp. 2d at 66)). *Accord Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 18 (D.D.C. 1998) ("[A] plaintiff need not establish that the material support or resources provided by a foreign state for a terrorist act contributed directly to the act from which his claim arises in order to satisfy [the terrorism exception of the FSIA]."); *In re Islamic Republic of Iran Terrorism Litig*., 659 F. Supp. 2d 31, 42 (D.D.C. 2009) ("[T]here is no 'but-for' causation requirement with respect to cases that rely on the material support component of the terrorism exception to foreign sovereign immunity; sponsorship of a terrorist group which causes personal injury or death of United States national alone is sufficient to invoke jurisdiction.") (internal quotation omitted).

Section 1605A(c) provides for the recovery of economic damages, solatium, pain and suffering, and punitive  damages.

### C.    The Proof of Each Element of *Chairnoff* Plaintiffs' Section 1605A(c) Claims

#### 1.    Facts of Which this Court May Take Judicial Notice

A court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

9

readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This Court may take judicial notice of the following facts establishing three essential elements of *Chairnoff* Plaintiffs' Section 1605A(c) claims against Iran:

- Iran has been designated by the U.S. Department of State as a foreign state sponsor of international terrorism since January 19, 1984. *See State Sponsors of Terrorism*, U.S. DEPARTMENT OF STATE, https://www.state.gov/state-sponsors-of-terrorism/ (last visited March 3, 2021).[3]

- The September 11th Attacks were committed by individuals affiliated with the Islamic extremist group al Qaeda.[4]

- The deaths resulting from the September 11th Attacks constitute "extrajudicial killings."[5]

### 2.   All of the *Chairnoff* Plaintiffs Are or Represent U.S. Citizens Injured or Killed in the September 11th Attacks

The *Chairnoff* Plaintiffs are comprised of the estate of 9/11 Decedent Geoffrey E. Guja, who was a United States citizen on September 11, 2001, and United States citizens who are (or were) immediate family members, or the functional equivalent of immediate family members, of seven other 9/11 Decedents on September 11, 2001. *See* Drennan Decl. at ¶ 5. Accordingly, all of the *Chairnoff* Plaintiffs have standing to assert claims under Section 1605A(c).

---

[3] *See, e.g., Karen Maritime Ltd. v. Omar Int'l Inc*., 322 F. Supp. 2d 224, 230 n.2 (E.D.N.Y. 2004) (taking judicial notice of State Department report available on its official website identifying Syria as a state sponsor of terrorism).

[4] *See, e.g., Love Terminal Partners v. United States*, 126 Fed. Cl. 389, 404 n.5 ("Pursuant to Rule 201 of the Federal Rules of Evidence, the court takes judicial notice of the events that occurred on September 11, 2001 . . . [including that] 19 militants associated with the Islamic extremist group al-Qaeda hijacked four airliners and carried out suicide attacks against targets in the United States.") (internal quotation omitted), *rev'd on other grounds*, 2018 U.S. App. LEXIS 11912 (Fed. Cir. May 7, 2018).

[5] *See, e.g.*, *Havlish I*, 2011 U.S. Dist. LEXIS 155899, at *196-97.

10

3.   **Evidence Satisfactory to the Court Establishes that**
**_Chairnoff_ 9/11 Decedents' Deaths Were Caused by**
**Iran's Provision of Material Support and Resources to al Qaeda**

In 2011, the plaintiffs in _Havlish, et al. v. Bin-Laden, et al._, 1:03-cv-9848-GBD,

presented extensive evidence in the form of affidavits, documentary evidence and testimony

establishing Iran's long history of providing material support and resources to the al Qaeda

network, including direct support for the September 11th Attacks.  _See Havlish, et al. v. Bin-_

_Laden, et al._, 1:03-cv-9848-GBD ECF Nos. 273-76 (May 19, 2011), 280 (July 13, 2011) and

283 (August 19, 2011).  Based on that evidence, this Court concluded that:  (1) "Iran

provided general material support or resources to al Qaeda . . . [and] provided direct support to al

Qaeda specifically for the attacks on the World Trade Center, the Pentagon, and Washington, DC

(Shanksville, Pennsylvania), on September 11, 2001.  Such material support or resources took

the form of, _inter alia_, planning, funding, facilitation of the hijackers' travel and training, and

logistics, and included the provision of services, money, lodging, training, expert advice or

assistance, safehouses, false documentation or identification, and/or transportation;" and (2) "the

9/11 attacks were caused by [Iran's] provision of material support to al Qaeda."  _Havlish I_, 2011

U.S. Dist. LEXIS 155899, at *198-99, *203.

_Chairnoff_ Plaintiffs respectfully incorporate by reference herein all of the evidence the

Court previously received and analyzed in the _Havlish_ case, and which forms part of the record

in the MDL proceeding.

V.   **CERTAIN _CHAIRNOFF_ PLAINTIFFS SEEK AWARDS**
**OF DAMAGES AND PREJUDGMENT INTEREST AGAINST IRAN**

A.   **Solatium Damages**

Section 1605A(c) specifically provides for the award of solatium damages.  _See_ 28

U.S.C. § 1605A(c)(4).  "'A claim for solatium refers to the mental anguish, bereavement, and

11

grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort.'" *Havlish v. Laden*, 2012 U.S. Dist. LEXIS 143525, *80-81 n.1 (S.D.N.Y. Oct. 3, 2012) ("*Havlish II*") (internal quotation omitted); *In re Terrorist Attacks on September 11, 2001*, 2016 U.S. Dist. LEXIS 142865, at *278 (S.D.N.Y. Oct. 12, 2016) (same).

In *Havlish II*, this Court approved the following solatium awards as appropriate for immediate family members of 9/11 Decedents:

| | |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

*Havlish II*, 2012 U.S. Dist. LEXIS 143525, at *81 and Table 1.  These amounts represent an upward departure from the benchmarks established in *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006), which this Court found warranted "[c]onsidering the extraordinarily tragic circumstances surrounding the September 11th attacks, the indelible impact on the lives of the victims' families, and the frequent reminders that each of the individual Plaintiffs face daily . . . ."  *Havlish II*, 2012 U.S. Dist. LEXIS 143525, at *81.  This Court has consistently awarded these same amounts to other Plaintiffs in this MDL.

The solatium losses suffered by the Exhibit A Plaintiffs are legally and factually comparable to those suffered by the plaintiffs in *Havlish* and other 9/11-related cases. Accordingly, the Exhibit A Plaintiffs respectfully request the Court to grant them awards of solatium in the amounts set forth in Drennan Exhibit A, which are consistent with the amounts established and applied in *Havlish* and other 9/11-related cases.

12

### B.      Pain and Suffering Damages

*Chairnoff* Plaintiff Debra Guja, as personal representative of the estate of her husband

9/11 Decedent Geoffrey E. Guja seeks damages for her husband's pain and suffering.  In the

*Havlish* case, this Court assessed the value of pain and suffering awards at $2,000,000 per

decedent, in light of awards in other FSIA cases, noting that "[c]alculating a precise award for

each decedent's individual pain and suffering would be impossible because the decedents in this

case may have experienced different levels of pain and suffering dependent on their precise

locations at the time of the September 11th attacks."  *Havlish II*, 2012 U.S. Dist. LEXIS 143525,

at *79-80.  This Court has consistently awarded estates $2,000,000 for pain and suffering in

related cases in this MDL.  Debra Guja respectfully requests the Court to award $2,000,000 to

the Estate of Geoffrey E. Guja for her husband's pain and suffering.

### C.      Punitive Damages

Under Section 1605A(c)(4), plaintiffs are also entitled to punitive damages.  *See* 28

U.S.C. § 1605A(c)(4).  In 2012, this Court awarded the *Havlish* plaintiffs punitive damages in

the amount of 3.44 times their compensatory damages.  *Havlish II*, 2012 U.S. Dist. LEXIS

143525, at *82.  This Court subsequently applied the same ratio in awarding punitive damages to

plaintiffs in other 9/11-related cases.

However, in an order dated October 14, 2016, in *Ashton, et al. v. Al Qaeda Islamic*

*Army, et al.*, 1:02-cv-6977-GBD-SN and *Bauer v. al Qaeda Islamic Army*, 1:02-cv-7236-

GBD-SN, U.S. Magistrate Judge Netburn ordered prompt entry of final judgments for

compensatory damages but deferral of awards of punitive damages until a later stage of this

litigation.  *See* ECF No. 3362 in 1:03-md-01570-GBD-SN (Oct. 14, 2016) noting that "[a]ny

delay in the award of punitive damages will not prejudice plaintiffs in their applications to

the [Victims of State Sponsored Terrorism Fund]"), *adopted by*, ECF No. 3384 in 1:03-md-01570-GBD-SN (Oct. 31, 2016).  Since then, the Court has routinely entered final orders of judgment authorizing plaintiffs awarded compensatory damages to submit "an application for punitive damages . . . at a later date consistent with any future rules made by this Court on the issue."  *See, e.g.,* ECF No. 5565 in 1:03-md-01570-GBD-SN (Feb. 18, 2020). Plaintiff Debra Guja and the Exhibit A Plaintiffs respectfully request permission to address the issue of punitive damages at a later date, in accordance with future rulings of the Court.

### D.    Prejudgment Interest

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism.  *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011).  This Court awarded the *Havlish* plaintiffs prejudgment interest at a rate of 4.96 per cent per annum, compounded annually on their solatium and pain and suffering damages awards, to be calculated from September 11, 2001 until the date of judgment. *Havlish II*, 2012 U.S. Dist. LEXIS 143525, at *83.  Recently, this Court has affirmed that the 4.96% interest rate should be applied to all damages awarded in 9/11-related cases, regardless of whether the injuries arose in New York (where the statutory rate for prejudgment interest is 9%). *See In re Terrorist Attacks on September 11, 2001*, 2016 U.S. Dist. LEXIS 144325, at *316-17 (S.D.N.Y. Oct. 14, 2016), *adopted by* 2016 U.S. Dist. LEXIS 151675, at *275 (S.D.N.Y. Oct. 24, 2016).  Plaintiff Debra Guja and the Exhibit A Plaintiffs respectfully request that the Clerk be directed to award prejudgment interest on their pain and suffering and solatium damages awards at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001 until the date of the judgment.

14

## CONCLUSION

For all of the foregoing reasons, *Chairnoff* Plaintiffs respectfully request that the Court (1) grant their motion for entry of judgment by default as to liability against Iran under Section 1605A(c) of the FSIA, (2) enter partial final judgments against Iran and in favor of the Exhibit A Plaintiffs and the Estate of Geoffrey E. Guja for damages for, respectively, solatium and pain and suffering, and prejudgment interest thereon at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001 until the date of the judgment.

Dated:   March 18, 2021          Respectfully submitted,
         White Plains, New York

                                 **FLEISCHMAN BONNER & ROCCO LLP**

                                 By: /s/ James P. Bonner
                                 James P. Bonner (jbonner@fbrllp.com)
                                 Patrick L. Rocco (procco@fbrllp.com)
                                 Susan M. Davies (sdavies@fbrllp.com)
                                 81 Main Street, Suite 515
                                 White Plains, New York 10601
                                 Telephone:  908-516-2066

                                 Joseph Peter Drennan (admitted *pro hac vice*)
                                 218 North Lee Street, Third Floor
                                 Alexandria, Virginia 22314-2631
                                 Telephone: (703) 519-3773
                                 Telecopier: (703) 997-2591
                                 Mobile: (540) 226-0777
                                 joseph@josephpeterdrennan.com

                                 Patrick M. Donahue (admitted *pro hac vice*)
                                 P. Joseph Donahue (admitted *pro hac vice*)
                                 Thomas P. Donahue (admitted *pro hac vice*)
                                 THE DONAHUE LAW FIRM, LLC
                                 18 West Street
                                 Annapolis, MD 21401
                                 Telephone: (410) 280-2023
                                 pmd@thedonahuelawfirm.com
                                 pjd@thedonahuelawfirm.com
                                 tpd@thedonahuelawfirm.com

15

P. York McLane (admitted *pro hac vice*)
LAW OFFICE OF P. YORK MCLANE
14015 Park Dr., Ste. 111
Tomball, Texas 77377
yorkmclane@yahoo.com

**Counsel for Plaintiffs**