# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------- x
                                                        )
                                                        )
                                                        )        No. 03 MDL 1570 (GBD/SN)
                                                        )
In re Terrorist Attacks on September 11, 2001           )        ECF Case
                                                        )
                                                        )
                                                        )
                                                        )
------------------------------------------------------- x
```

This document relates to:

*Estate of John P. O'Neill, Sr. v. Al Baraka Investment & Devel. Corp., 04-cv-01923*

### JOINT RESPONSE OF THE "*O'NEILL* DEFENDANTS" TO THE *O'NEILL* PLAINTIFFS' OBJECTIONS TO JUDGE NETBURN'S REPORT AND RECOMMENDATION AGAINST CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 3

    A.    The Pursuit of Remedies for the 9/11 Attacks, in and out of Court............................ 3

    B.    The *O'Neill* Plaintiffs' Claims and Proposed Class.................................................... 4

    C.    Judge Netburn's Report and Recommendation ......................................................... 5

ARGUMENT ...................................................................................................................... 6

I.    Judge Netburn Correctly Concluded that the *O'Neill* Plaintiffs Failed to Establish that Common Questions Predominate over Individual Ones................................................. 8

    A.    As Judge Netburn Found, the *O'Neill* Plaintiffs Failed to Prove that Common Questions Predominate over Individualized Issues Involving State Laws ................. 9

    B.    As Judge Netburn Found, the *O'Neill* Plaintiffs Failed to Prove that Common Questions Predominate over Individualized Damages Questions ............................ 14

    C.    Additional Individualized Issues Reinforce Judge Netburn's Conclusion that the *O'Neill* Plaintiffs Failed to Prove that Common Questions Predominate .......... 16

II.    Judge Netburn Correctly Concluded that the *O'Neill* Plaintiffs Failed to Establish that a Class Action Is a Superior Method of Adjudicating Claims that This Court Long Has Managed Effectively in This MDL ..................................................................... 17

    A.    As Judge Netburn Found, the *O'Neill* Plaintiffs Failed to Prove that a Class Action Would Achieve Economies or Benefits in Case Management that the MDL Has Not Already Achieved ................................................................................ 17

    B.    As Judge Netburn Found, a Class Action Would, If Anything, Be *Less* Manageable and Produce *More* Delay ...................................................................... 19

    C.    As Judge Netburn Found, a Class Action Would Interfere with the Significant Interests and Longstanding Litigation Decisions of Putative Class Members .......... 21

III.    Judge Netburn Correctly Concluded that the *O'Neill* Plaintiffs Failed to Establish that Their Proposed Class Satisfies All Elements of Rule 23(a) ........................................ 22

    A.    As Judge Netburn Found, the *O'Neill* Plaintiffs Failed to Prove that the Proposed Class Satisfies the Numerosity Requirement ............................................ 22

    B.    As Judge Netburn Found, the *O'Neill* Plaintiffs Failed to Prove that the Proposed Class Representatives Are Typical and Adequate .................................... 23

CONCLUSION .................................................................................................................. 25

**TABLE OF AUTHORITIES**

Page(s)

<span style="font-variant: small-caps;">Cases</span>

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..................................................................................8

*Averbach v. Cairo Amman Bank*,
    2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020) ...........................................4

*Causey v. Pan Am. World Airways, Inc.*,
    66 F.R.D. 392 (E.D. Va. 1975)...........................................................9, 11

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)..............................................................................6, 7

*Dungan v. Acad. at Ivy Ridge*,
    344 F. App'x 645 (2d Cir. 2009) ...........................................................15

*Fischer v. Forrest*,
    286 F. Supp. 3d 590 (S.D.N.Y. 2018)....................................................14

*Glob. Fin. Corp. v. Triarc Corp.*,
    715 N.E.2d 482 (N.Y. 1999)............................................................10, 12

*Gordon v. Sonar Cap. Mgmt. LLC*,
    92 F. Supp. 3d 193 (S.D.N.Y. 2015)................................................23, 25

*Greene v. WCI Holdings Corp.*,
    956 F. Supp. 509 (S.D.N.Y. 1997)...........................................................7

*Grosshandels-Und Lagerei-Berufsgenossenschaft v. World Trade Ctr. Props.,*
    *LLC*,
    435 F.3d 136 (2d Cir. 2006)............................................................12, 13

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014).................................................................................6

*In re Citigroup Inc. Sec. Litig.*,
    987 F. Supp. 2d 377 (S.D.N.Y. 2013).....................................................10

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    299 F. Supp. 3d 430 (S.D.N.Y. 2018).............................................. *passim*

*In re Literary Works in Elec. Databases Copyright Litig.*,
    654 F.3d 242 (2d Cir. 2011)...................................................................23

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*In re Nassau Cnty. Strip Search Cases,*
461 F.3d 219 (2d Cir. 2006) ........................................................................................7, 14, 15

*In re NYSE Specialists Sec. Litig.,*
260 F.R.D. 55 (S.D.N.Y. 2009) ................................................................................................23

*In re Petrobras Sec.,*
862 F.3d 250 (2d Cir. 2017) ....................................................................................7, 8, 13

*In re September 11th Litig.,*
2004 WL 1320897 (S.D.N.Y. June 10, 2004) ........................................................................24

*Johnson v. Nextel Commc'ns Inc.,*
780 F.3d 128 (2d Cir. 2015) ................................................................................... *passim*

*Langan v. Johnson & Johnson Consumer Cos.,*
897 F.3d 88 (2d Cir. 2018) ............................................................................6, 7, 8, 9

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
739 F.3d 45 (2d Cir. 2013) ................................................................................................12

*Marchesi v. E. Airlines, Inc.,*
68 F.R.D. 500 (E.D.N.Y. 1975) ................................................................................................9

*Mario v. P & C Food Mkts., Inc.,*
313 F.3d 758 (2d Cir. 2002) ................................................................................................7

*McLaughlin v. Am. Tobacco Co.,*
522 F.3d 215 (2d Cir. 2008) ......................................................................8, 13, 14, 15

*N.Y.C. Dist. Council of Carpenters Pension Fund v. Forde,*
341 F. Supp. 3d 334 (S.D.N.Y. 2018) ................................................................................18

*Neumeier v. Kuehner,*
286 N.E.2d 454 (N.Y. 1972) ................................................................................................13

*Pa. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.,*
772 F.3d 111 (2d Cir. 2014) ................................................................................................22

*Presbyterian Church of Sudan v. Talisman Energy, Inc.,*
226 F.R.D. 456 (S.D.N.Y. 2005) ................................................................................................9

*Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n,*
324 F. Supp. 3d 387 (S.D.N.Y. 2018) ........................................................................10, 11, 13

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*,
    2018 WL 1831850 (S.D.N.Y. Aug. 17, 2018)......................................................................15

*United States v. Gladden*,
    394 F. Supp. 3d 465 (S.D.N.Y. 2019)...............................................................................12

**STATUTES**

18 U.S.C. § 2333...................................................................................................................4

Air Transp. Safety & Stabilization Act, Pub. L. No. 107-42, § 405, 115 Stat. 230
    (2001) (codified as amended at 49 U.S.C. § 40101 note)..................................4, 24

N.Y. CPLR 202...................................................................................................................10

**OTHER AUTHORITIES**

28 C.F.R. § 104.4...............................................................................................................4, 24

Fed. R. Civ. P. 23 .......................................................................................................... *passim*

Fed. R. Civ. P. 72 ...............................................................................................................7

## INTRODUCTION

Defendants Dubai Islamic Bank, International Islamic Relief Organization, Yassin Kadi, Muslim World League, and World Assembly of Muslim Youth (collectively, the "*O'Neill* Defendants") hereby respond to the *O'Neill* Plaintiffs' Objections (ECF 6644, "P.Obj.") to Judge Netburn's Report and Recommendation (ECF 6601, "R&R"), which explained in detail why the *O'Neill* Plaintiffs' motion for class certification fails on multiple, independent grounds.[1]

The September 11 attacks were a terrible tragedy. Al Qaeda committed unprecedented acts of violence against the United States and humanity. The *O'Neill* Defendants all condemn those attacks and those responsible for them. The defendants, however, also played no role in planning or executing the attacks, and seventeen years of multi-district litigation ("MDL") overseen by this Court have yielded no evidence to the contrary, notwithstanding the *O'Neill* Plaintiffs' bare assertions. Nonetheless, the *O'Neill* Plaintiffs recently returned to the putative class action they appeared to have abandoned since 2004, now seeking to drag in over 5,000 new plaintiffs as putative class members. Judge Netburn was right to reject their arguments.

***First***, Judge Netburn was right to conclude that the *O'Neill* Plaintiffs failed to show, under Rule 23(b)(3), that common questions predominate. Plaintiffs proposed a class involving crash sites in three States with class members from many different domiciles but offered no choice-of-law analysis and no answers to the various state-law issues that divided the putative class, including statute of limitations. The putative class members also are differently situated as to other legal issues, including statutory standing (which the Anti-Terrorism Act ("ATA") confers upon U.S. nationals), waiver of claims from participating in the administrative remedies of the September 11th Victims Compensation Fund ("VCF"), and individualized damages. Judge Netburn explained

---

[1] ECF citations are of the MDL docket unless otherwise indicated.

that "Plaintiffs have not substantially addressed the question of varying state law issues" and, after a detailed analysis, she recognized that "individual determinations overwhelm common questions." R&R 16. In their Objections, plaintiffs largely ignore both her analysis and her authorities. Indeed, they do not dispute that state-law claims from the Pennsylvania and Virginia crashes are likely time-barred absent tolling—an issue with which even now they barely grapple. Mainly, they emphasize the common harm of 9/11, but under the terms of Rule 23 and settled law that does not suffice. They also dodge Judge Netburn's analysis of individualized damages— faulting her for considering them, yet ignoring that binding precedent required her to do so.

**Second**, Judge Netburn correctly determined that the *O'Neill* Plaintiffs also failed to prove, under Rule 23(b)(3), that a class action would be superior to this longstanding MDL. Looming large are the many subclasses that would be required by the lack of predominance—subclasses that would divide class members based on crash site (and possibly place of residence), statutory standing, and VCF waiver. Superiority of a class vehicle is further undermined by plaintiffs' unexplained decision to *exclude* the thousands of plaintiffs who have already sued all the *O'Neill* Defendants, while *including* the thousands of plaintiffs who have sued other defendants but who have decided not to sue some or all of the *O'Neill* Defendants. Moreover, the horrific nature of the 9/11 attacks, the potential value of available claims, and the course of the MDL establish that would-be class members have a greater interest in directing their own litigation, through their own current counsel. The *O'Neill* Plaintiffs attempt to escape the flaws of their class definition by *ipse dixit*, as well as by offering arguments and evidence that they did not offer Judge Netburn. P.Obj. 16–19. All of these efforts fail to meet their burden to establish superiority.

**Third**, Judge Netburn was right that the *O'Neill* Plaintiffs also failed to satisfy all of Rule 23(a)'s requirements. As to typicality and adequacy, the problem once more was their sprawling

class and failure to account for the swirl of legal regimes that apply to its members—state statutes of limitations, and the different legal standards governing the claims of those who did and did not participate in the VCF. The *O'Neill* Plaintiffs again respond now by ignoring authority, rolling out a new argument, and generally intimating that failure to comply with Rule 23 should not matter.

In short, this Court should accept Judge Netburn's carefully reasoned Report and Recommendation and deny the *O'Neill* Plaintiffs' motion for class certification.

## BACKGROUND

### A.    The Pursuit of Remedies for the 9/11 Attacks, in and out of Court

Since the Judicial Panel on Multidistrict Litigation in late 2003 centralized all lawsuits against defendants alleged to have supported the 9/11 attacks (ECF 1), thousands of individual plaintiffs in hundreds of complaints have sued myriad defendants, selecting a wide variety of litigation strategies. Cottreau Decl. ¶ 7, ECF 6031. As Judge Netburn recognized, many, including the *O'Neill* Plaintiffs, have sued the Islamic Republic of Iran, the Kingdom of Saudi Arabia, and other sovereign defendants. R&R 2; Defs. Opp. 4, ECF 6030. Such suits against Iran have produced default judgments entitling plaintiffs to payments under the U.S. Victims of State Sponsored Terrorism Fund—thus, to a share of the over $2 billion the Fund has paid out, which includes nearly $6 million to the named plaintiffs in this case. Cottreau Decl. Ex. A at 2; Final Order of J., ECF 5927.

Some plaintiffs have chosen to target *only* sovereign defendants, suing none of the five *O'Neill* Defendants. Others, approximately 2,649 plaintiffs (not counting the *O'Neill* named plaintiffs), have sued ***all five*** *O'Neill* Defendants. Cottreau Decl. ¶ 9. Even more, approximately 3,561 plaintiffs, have chosen to sue ***only some*** *O'Neill* Defendants. *Id.* ¶ 10. All these plaintiffs have their own counsel, most of whom help steer the Plaintiffs' Executive Committee.

Apart from litigation, many family members and estates have received shares of the nearly $6 billion that the VCF has paid out, including the *O'Neill* Plaintiffs. R&R 3–4; Defs. Opp. 5 & n.2. The VCF allows a representative of a decedent to obtain payment through an administrative claim, in exchange for waiving the right to file a civil action for damages resulting from 9/11 unless, as relevant here, the representative can prove the defendant was "a knowing participant" in a "conspiracy to hijack any aircraft or commit any terrorist act." Air Transp. Safety & Stabilization Act ("Transp. Act"), Pub. L. No. 107-42, §§ 405(a)(1) & (c)(3)(C)(i), 115 Stat. 230 (2001) (codified as amended at 49 U.S.C. § 40101 note); 28 C.F.R. § 104.4(b)(1).

### B.    The *O'Neill* Plaintiffs' Claims and Proposed Class

The *O'Neill* Plaintiffs sued over seventeen years ago, on March 10, 2004. Compl., *O'Neill* ECF 1. (They have brought several other suits in this MDL, as well. *See* ECF 4321 (summary).) Their claims arise only out of the September 11 airplane crashes in New York and include "common law tort" claims for negligence, negligent and/or intentional infliction of emotion distress, wrongful death, and survival. P.Mem. 3, 5, ECF 5676; P.Obj. 5. Their federal claims include one under the ATA, which allows certain claims by a U.S. national and authorizes treble damages and attorney's fees. 18 U.S.C. § 2333(a); *see Averbach v. Cairo Amman Bank*, 2020 WL 1130733, at *2 (S.D.N.Y. Mar. 9, 2020) (adopting recommendation to dismiss claims under ATA, because it "preclud[es] claims by foreign nationals … for personal damages"). In initial motion practice, the MDL Court dismissed from *O'Neill*, and other MDL cases, other federal claims, as well as some claims of common-law negligence. *See* R&R 5; Defs. Opp. 6 (collecting decisions). The MDL Court also dismissed the *Federal Insurance* plaintiffs' claims for intentional infliction of emotional distress, filed in September 2003, as time-barred. Defs. Opp. 6.

Although the *O'Neill* Plaintiffs included class allegations in their complaint, they did nothing apparent with them through the end of 2018, apart from resisting class discovery in 2011.

Cottreau Decl. ¶ 3. The subject arose in 2019, however; the Court ordered class discovery and then, in early 2020, received full briefing on their class-certification motion under Rule 23(b)(3).

The *O'Neill* Plaintiffs propose one class—encompassing all claims for spouses, children, parents, siblings, and legal representatives of anyone who died on (or within 72 hours of) September 11 from that day's attacks in New York, or Pennsylvania, or Virginia. They draw no distinction for crash site, State of residence, VCF participation, or nationality. They do carve out the over 2,500 other persons or estates already participating in the MDL as plaintiffs against all *O'Neill* Defendants; but the over 3,500 who are plaintiffs against only some *O'Neill* Defendants apparently fall within the putative class. *See* R&R 5–6, 20; P.Obj. 8. The *O'Neill* Plaintiffs did not explain this carve-out to Judge Netburn. *See* R&R 17. Nor did they raise any possibility of subclasses, except as to damages. P.Mem. 6–7, 21; Reply 9, ECF 6065.

### C.     Judge Netburn's Report and Recommendation

Judge Netburn issued a 27-page report recommending that the Court deny class certification, on three distinct grounds. R&R 2. She determined, first, that the *O'Neill* Plaintiffs failed to prove under Rule 23(b)(3) that common issues *predominate*; rather, "individual determinations overwhelm common questions." *Id.* at 16. There were obvious "potential variations in state law," yet the *O'Neill* Plaintiffs "offer[ed] no choice-of-law analysis." *Id.* at 13. State-law issues would predominate at least because different statutes of limitations would apply, likely time-barring some claims absent tolling. *Id.* at 12–13. She further found that "the question of damages is inherently highly individualized," given factors affecting economic and non-economic damages and the inadequacy of non-adversarial models that the *O'Neill* Plaintiffs invoked. *Id.* at 15–16; *see* Defs. Opp. 15. Acknowledging individual issues with respect to VCF waiver and ATA standing, she reasoned they did not present predominance problems (given the option of subclasses) but did view them as bearing on other considerations. R&R 13–14, 20, 24–25.

Judge Netburn determined that the *O'Neill* Plaintiffs also failed to satisfy Rule 23(b)(3)'s *superiority* requirement. *Id.* at 20. They had not shown that a class action would provide benefits that the MDL had not achieved, including because the proposed class excludes many plaintiffs with claims against the *O'Neill* Defendants. *Id.* at 17–19. A class action would add to delay and case-management burdens, due to the number and overlapping nature of subclasses necessary as well as opt-out initiatives. *Id.* at 18. She additionally found that putative class members have strong interests in controlling their own actions and that the *O'Neill* Plaintiffs did not show why those who have not participated in litigation could not do so. *Id.* at 17–19.

Finally, Judge Netburn determined that the *O'Neill* Plaintiffs established commonality under Rule 23(a) but not *numerosity, typicality, and adequacy*. *Id.* at 21–25. On numerosity, they did not demonstrate that joinder was impracticable in this MDL. *Id.* at 21. They failed to show typicality and adequacy because they have timely state-law claims (tied to the New York crashes), unlike some putative class members (with claims tied to the Pennsylvania and Virginia crashes), and also must (given their VCF claim) prove a higher *mens rea*, among other things. *Id.* at 23–25.

## ARGUMENT

The class action is an "exception to the general rule that one person cannot litigate injuries on behalf of another." *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 93 (2d Cir. 2018). To qualify for that exception, a party "'must affirmatively demonstrate [its] compliance' with Rule 23." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). A movant must "actually prove—not simply plead—" its compliance, with "each requirement." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis,'" that the movant has done so, even if that inquiry overlaps with the merits. *Comcast*, 569 U.S. at 33 (quoting *Wal-Mart*, 564 U.S. at 350–51). A court "must 'probe behind the pleadings,'" "satisfying

itself that Rule 23 compliance may be demonstrated through 'evidentiary proof.'" *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (quoting *Comcast*, 569 U.S. at 33).

This Court reviews *de novo* the portions of Judge Netburn's Report and Recommendation to which the *O'Neill* Plaintiffs object specifically, and otherwise may review either for clear error or *de novo*. Fed. R. Civ. P. 72(b); *see Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002); *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 514 (S.D.N.Y. 1997). It is not correct, as plaintiffs have claimed, that certification is preferred. P.Mem. 8; P.Obj. 9. They cite two Second Circuit cases (particularly *Nassau County*) but ignore that court's more recent explanation that such a distinction "need not and ought not be drawn." *In re Petrobras Sec.*, 862 F.3d 250, 260 n.11 (2d Cir. 2017). The Second Circuit had "sometimes stated in the past"—as in *Nassau County*— that its scrutiny was greater for denials, but that idea "arose from a misreading of earlier Second Circuit cases." *Id.* In fact, "no Second Circuit case provides any reasoning or justification for the idea." *Id.* In any event, the Second Circuit added, the Supreme Court has "never drawn a distinction between the standard used to review district court denials or grants of class certification," and differential treatment is "out of step with" its recent authority, such as *Comcast* and *Wal-Mart*. *Id.* The court went on to vacate an order certifying a Rule 23(b)(3) class. *Id.* at 274; *see also, e.g.*, *Langan*, 897 F.3d at 99 (same); *Johnson*, 780 F.3d at 148 (same).

Although Judge Netburn repeatedly cited *Petrobras*—which highlights *Nassau County*'s lack of authority on this issue—the *O'Neill* Plaintiffs erroneously emphasize *Nassau County* and **never cite** *Petrobras*. Under established Second Circuit law, Judge Netburn was correct to conclude that the *O'Neill* Plaintiffs failed to carry their burden several times over—on predominance, on superiority, and on Rule 23(a)'s requirements.

I.     **Judge Netburn Correctly Concluded that the *O'Neill* Plaintiffs Failed to Establish that Common Questions Predominate over Individual Ones**

Because the *O'Neill* Plaintiffs seek certification under Rule 23(b)(3), they must "show that 'questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Langan*, 897 F.3d at 96 (quoting Fed. R. Civ. P. 23(b)(3)). Individual questions are those on which "members of a proposed class will need to present evidence that varies from member to member," as opposed to questions susceptible to "generalized class-wide proof." *Petrobras*, 862 F.3d at 270 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). An individual question may contribute to a failure of common questions to predominate even if each one, in isolation, might not prevent certification. *See Johnson*, 780 F.3d at 138 (noting that individualized defenses bear on predominance); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008) (noting that individualized damages bear on predominance), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008).

Under Rule 23*(a)*, one question is whether "there are questions of law or fact common to the class." It follows, as Judge Netburn recognized, that a plaintiff cannot prove predominance under Rule 23*(b)(3)* "simply by showing that the class claims are framed by the *common harm* suffered by potential plaintiffs." *Petrobras*, 862 F.3d at 270 (emphasis added); R&R 9. Predominance is "far more demanding," requiring the "further inquiry … into whether the common issues can profitably be tried on a classwide basis, or whether they will be overwhelmed by individual issues." *Johnson*, 780 F.3d at 138 (internal quotation marks omitted). The *O'Neill* Plaintiffs ignore this distinction, emphasizing the "shared experience" of 9/11 and common issues leading to the MDL's formation and other developments. *See* P.Obj. 12–13.

Yet to meet the predominance burden in "mass tort cases" can be particularly difficult, notwithstanding a "common cause or disaster." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

625 (1997) (noting Advisory Committee's statement that mass accidents are "ordinarily" not suitable for class treatment, and its "call for caution when individual stakes are high and disparities among class members great"). Even in single-plane-crash cases, courts "do not by any means always certify classes," though they have "on occasion found that common issues predominate." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456, 476 (S.D.N.Y. 2005) (citing *Marchesi v. E. Airlines, Inc.*, 68 F.R.D. 500, 501–02 (E.D.N.Y. 1975) (finding it "well-settled that class actions are disfavored" in plane-crash cases, due to predominance problems, and declining to certify the "worst single-plane disaster in American History")); *see Causey v. Pan Am. World Airways, Inc.*, 66 F.R.D. 392, 397, 399 (E.D. Va. 1975) (concluding that mass-accident class may be appropriate "under some circumstances," such as if choice-of-law complexity is minimal, but declining to certify plane-crash class) (cited in *Marchesi*, 68 F.R.D. at 502).

Here, in a mass-tort case involving crashes in three States, with putative class members from across the country and the world, Judge Netburn correctly concluded that ***un***common issues predominate. A jury could not even "resolve questions of liability with a single decision applicable to the whole class," much less questions of damages. R&R 10 (citing *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 241 F.R.D. 435, 448 (S.D.N.Y. 2007)).

## A. As Judge Netburn Found, the *O'Neill* Plaintiffs Failed to Prove that Common Questions Predominate over Individualized Issues Involving State Laws

The *O'Neill* Plaintiffs have asserted state-law claims for negligence, negligent and/or intentional infliction of emotion distress, wrongful death, and survival. "When claims in a class action arise under state law—and the class comprises multiple states—the court must consider whether different state laws will apply to different members of the class." *Johnson*, 780 F.3d at 140; *see Langan*, 897 F.3d at 98–99 (vacating certification where district court omitted "requisite considered analysis" of state-law differences). Applying the applicable choice-of-law rules, the

court must consider "whether any conflicts in governing law will overwhelm the ability of the trier of fact meaningfully to advance the litigation through classwide proof." *Johnson*, 780 F.3d at 141. That "often" happens if proposed class actions implicate multiple States' laws. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 576 (S.D.N.Y. 2018) (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 126 (2d Cir. 2013)).

Conflicting statutes of limitations may preclude a finding of predominance—"especially" where many limitations periods "will likely preclude recovery" for some class members. *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 324 F. Supp. 3d 387, 399 (S.D.N.Y. 2018). Those seeking certification of a nationwide class must "demonstrate, through an extensive analysis of state law variances, that class certification does not present insuperable obstacles." *LIBOR*, 299 F. Supp. 3d at 576 (quoting *Foodservice*, 729 F.3d at 127).

1.       In this case, with crash sites in three States and plaintiffs from an unknown large number of domiciles, Judge Netburn recognized that the need to apply different statutes of limitations "presents significant individual issues" that predominate. R&R 12–13. Under New York's Borrowing Statute, CPLR 202 (for suits filed there, R&R 12[2]), courts distinguish New York residents from non-residents and then apply the limitations period of non-residents' place of injury, if shorter than New York's. *Royal Park Invs.*, 324 F. Supp. 3d at 399. And, she added, the place of injury might be "where the plaintiff resides," not necessarily a crash site. R&R 12 (quoting *Glob. Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 485 (N.Y. 1999)).

State-law claims that **did** accrue at a non-New York crash site are time-barred absent tolling, given the two-year limitations periods under Pennsylvania and Virginia law and the fact

---

[2] Regarding claims originally brought in jurisdictions outside of New York, see *In re Citigroup Inc. Sec. Litig.*, 987 F. Supp. 2d 377, 389 (S.D.N.Y. 2013) (recognizing that an MDL court applies the transferor court's choice-of-law rules).

that the *O'Neill* Plaintiffs first filed their complaint more than two years after 9/11. R&R 12 n.4, 24. Indeed, the *O'Neill* Plaintiffs never dispute this point. Thus, class members would need to offer proof of residence plus any tolling evidence under those States' laws. This is the very scenario in which individual issues predominate—a "need to determine, for each class member, his or her residence, where and when the claims accrued, and the applicable statute of limitations," especially when "many of the relevant jurisdictions have statutes of limitations that will likely preclude recovery." *Royal Park Invs.*, 324 F. Supp. 3d at 399 (so finding); *cf. Causey*, 66 F.R.D. at 397 (refusing to certify class arising from plane crash, due in part to complex choice-of-law questions).

Judge Netburn had no occasion to decide whether tolling would ultimately be allowed, particularly given that the *O'Neill* Plaintiffs offered her only vague mention of it. *See* Reply 6 n.9, 7. It was enough, in view of "plaintiffs of numerous residences" and "difficult choice of law questions," that they "fail[ed] either to discuss or to suggest the manner in which these questions may be resolved." R&R 13. More generally, far from providing the required "extensive analysis of state law variances," they had "offer[ed] no choice-of-law analysis in support of their contention that common issues predominate, notwithstanding the potential variations in state law." *LIBOR*, 299 F. Supp. 3d at 576; R&R 13, respectively. Indeed, they pleaded "common law tort" claims without citing any state law. P.Mem. 3; *see* Reply 6 n.9, 7; R&R 11 ("unspecified state law(s)").

Even now, the *O'Neill* Plaintiffs largely ignore Judge Netburn's careful analysis, breezing by it in a footnote, and fail to discuss (or cite) the authorities on which she relied. They assert that she erred in considering the "state of residency of the victim," arguing for the first time that the law of each crash site controls "in all situations." P.Obj. 14, 15 & n.8; *but see* Reply 6 n.8 (referring to "the factual inquiries needed to determine citizenship, residency, or place of death"). But plaintiffs' only support doesn't even address these issues: They rely on a decision applying New

York's choice-of-law interests analysis, for the subsequent question of what jurisdiction's substantive law applies to **_timely_** claims. *Grosshandels-Und Lagerei-Berufsgenossenschaft v. World Trade Ctr. Props., LLC*, 435 F.3d 136, 139 (2d Cir. 2006). Judge Netburn rightly looked to the Borrowing Statute, as "there is a significant difference between a choice-of-law question, which is a matter of common law," and a statute-of-limitations issue, "which is governed by particular terms of the CPLR." *Glob. Fin. Corp.*, 715 N.E.2d at 484. Yet the *O'Neill* Plaintiffs do not even cite that CPLR provision.

2.       To the extent that the *O'Neill* Plaintiffs, in invoking some choice-of-law principles (albeit to address statutes of limitations and tolling), try to make a substantive choice-of-law argument, they fail for two reasons. ***First***, they gave Judge Netburn nothing of the kind. R&R 13 ("no choice-of-law analysis"); *id.* at 16 ("Plaintiffs have not substantially addressed the question of varying state law issues—including a choice of law analysis"). Within the Second Circuit, "it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (quoting *Hubbard v. Kelley*, 752 F. Supp. 2d 311, 313 (W.D.N.Y. 2009)).

***Second***, even if they could make new arguments, and even if all putative class members' state-law claims were timely, the *O'Neill* Plaintiffs ignore the complexity of New York's "flexible" interests analysis. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013) (internal quotation marks omitted); *see id.* at 50–51 (holding that locus of tort was New York in negligence claims against New York-based bank alleged to have facilitated terrorist attack in Israel). Their own authority describes their place-of-injury rule as only a rebuttable "presumption," depending on several factors, which the *O'Neill* Plaintiffs do not discuss.

*Grosshandels*, 435 F.3d at 139 (citing *Neumeier v. Kuehner*, 286 N.E.2d 454 (N.Y. 1972)); *see Neumeier*, 286 N.E.2d at 458 (stating factors). And they still say nothing about the choice-of-law rules of (among other forums) Pennsylvania or Virginia, much less cite the substantive laws that might apply and discuss any differences among them.

3.      The *O'Neill* Plaintiffs also attempt to dismiss the individual state-law questions as concerning only a subset of class members. P.Obj. 1, 14. But individualized issues need not affect all putative class members to predominate. *Petrobras*, for example, vacated certification where only some class members (noteholders, unlike shareholders) faced the individualized inquiry on which the viability of their claims depended. 862 F.3d at 258–59, 261, 273–74; *see Johnson*, 780 F.3d at 146–48 (vacating certification where claims of at least one quarter of class members depended on individualized state-law inquiry). The *O'Neill* Plaintiffs also give no reason to find the number vanishingly small. By their own math, there could be 1,438 persons and estates whose claims accrued (they assume) in Pennsylvania or Virginia. *See* P.Obj. 14 (stating that 224 families have a decedent from those crash sites); P.Mem. 10 (estimating each 9/11 family at 5.42 persons). The *O'Neill* Plaintiffs have not estimated how many or how few of these come within the proposed class or have brought state-law claims in the MDL—so we also do not know the degree to which their state-law issues "must be determined in the [other] underlying cases" regardless of certification. P.Obj. 15, 23. "Courts should not grant class certification if 'plaintiffs have offered no reliable means of collectively determining how many class members' claims are time-barred.'" *Royal Park Invs.*, 324 F. Supp. 3d at 398–99 (quoting *McLaughlin*, 522 F.3d at 234). So here.

4.      The *O'Neill* Plaintiffs suggest that the lack of prior briefing on these issues means they do not matter for class certification. P.Obj. 13. Pennsylvania and Virginia statutes of limitations were not relevant at the motion-to-dismiss stage, as the O'Neills' "common law" claims

were only New York-based. Statutes-of-limitations and choice-of-law issues are also (absent a tolling argument) largely questions of law, so it is equally unsurprising that they did not spark discovery disputes. In any event, they are core to the present Rule 23 inquiry, which arises now only because the *O'Neill* Plaintiffs waited an apparently unprecedented sixteen years to seek class certification. *See* R&R 18. If that is a problem, it is one they made.

**B.     As Judge Netburn Found, the *O'Neill* Plaintiffs Failed to Prove that Common Questions Predominate over Individualized Damages Questions**

"[I]n deciding whether issues susceptible to generalized proof 'outweigh' individual issues," the Court "must consider" damages as a factor, even if one that may not be the sole reason to deny class certification. *McLaughlin*, 522 F.3d at 231. Judge Netburn, doing so, recognized that damages in this case are "inherently highly individualized," varying from class member to class member "according to a number of factors, including the deceased's earnings capacity and the relationship between the putative class member and the deceased"—there being "no ready reference for calculating either individual economic or non-economic losses"—and are "[f]urther complicat[ed]" by the possibility of individual offsets from collateral compensation. R&R 15–16.

The *O'Neill* Plaintiffs do not contend with the substance of Judge Netburn's analysis. *See* P.Obj. 8, 9, 10–11, 15 n.8. (This Court thus may limit its review to clear error. *Fischer v. Forrest*, 286 F. Supp. 3d 590, 606–08 (S.D.N.Y. 2018).) Instead, they argue that she should have ignored damages, erring "by not considering whether to certify a liability-only issue class." P.Obj. 8. That argument is wrong on both the law and the facts.

On the law, they over-read their sole citation, from *Nassau County*, which merely held that, under Rule 23(c)(4), courts "may" certify classes as to liability or another issue "when common questions predominate only as to" that issue, "regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement." *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219,

226–27 (2d Cir. 2006). The court did not hold, nor does it follow, that a court may not consider individual damages in its overall predominance analysis and conclude that, in conjunction with other individual issues, they contribute to a lack of predominance of common questions. *See Dungan v. Acad. at Ivy Ridge*, 344 F. App'x 645, 648 (2d Cir. 2009) (affirming, as complying with *Nassau County* and *McLaughlin*, refusal to certify a liability-only class due to individualized issues including damages); *LIBOR*, 299 F. Supp. 3d at 464, 579 (after *Nassau County* and *McLaughlin*, noting that "overly aggressive application of Rule 23(c)(4) would nullify Rule 23(b)(3)'s predominance requirement," and finding that individual questions "taken together," including damages, outweighed common ones).

Here too, the *O'Neill* Plaintiffs ignore subsequent, clarifying Second Circuit authority that Judge Netburn often cited. In *Johnson*, the Second Circuit reiterated that its rule from *McLaughlin* (itself post-*Nassau County*) remains valid: Individual damages issues are among the factors that a court "must consider in deciding whether issues susceptible to generalized proof 'outweigh' individual issues" and that "weigh[] against class certification" where there are individualized liability issues. *Johnson*, 780 F.3d at 138–39 & n.11 (quoting *McLaughlin*, 522 F.3d at 231); *id.* at 147 n.23 (recognizing "damages inquiry" as "further weigh[ing] against class certification"). A liability-only class is no solution where individual questions—including determining for each class member "where the claim accrued, when it accrued, and the applicable statute of limitations" in each State—"continue to permeate the issue of liability." *Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*, 2018 WL 1831850, at *8, *10 (S.D.N.Y. Aug. 17, 2018) (after finding individual damages, declining to certify a liability-only class due to individual questions going to liability).

On the facts, the *O'Neill* Plaintiffs ignore that Judge Netburn simply followed this law: She acknowledged that "individualized damages determinations alone cannot preclude certification,"

correspondingly recognized "that class certification does not require a finding that damages can be measured on a class-wide basis," and noted the *O'Neill* Plaintiffs' argument that "the class may be certified as to liability questions only." R&R 15. She also recognized that individual damages issues are nevertheless "a factor that courts must consider" and that, here, those individual issues do not stand alone. *Id.* The problem, "[o]n balance," was "that Plaintiffs have not substantially addressed the question of varying state law issues—including a choice of law analysis—***and*** that, when considered along with the individualized nature of the damages calculations, those individual determinations overwhelm common questions." *Id.* at 16 (emphasis added). Each step of this reasoning was correct.

**C.    Additional Individualized Issues Reinforce Judge Netburn's Conclusion that the *O'Neill* Plaintiffs Failed to Prove that Common Questions Predominate**

Although Judge Netburn was correct to conclude that the *O'Neill* Plaintiffs failed Rule 23(b)(3)'s predominance requirement due simply to the combination of state-law and damages questions, their proposed class presents two additional individualized inquiries, which compound that failure and reinforce her conclusion, and on which this Court also should rely. ***First***, the *O'Neill* Plaintiffs brought a claim under the ATA, which gives standing for damages claims only to U.S. nationals. *See supra*, 4. ***Second***, the *O'Neill* Plaintiffs participated in the VCF, waiving damages claims arising from 9/11 unless they can prove knowing participation in a conspiracy. *See id.*; *infra*, 24–25. Because plaintiffs' class draws no distinction for either nationality or VCF participation, the Court would need to receive proof of each for every class member. Defs. Opp. 13–15. The *O'Neill* Plaintiffs' principal response has been that ***only some*** class members would differ as to ATA standing or VCF waiver. *See* P.Obj. 14, 22 & n.13; Reply 5–8. That's the point: Their proposed class would swamp the Court in individualized inquiries.

In sum, Judge Netburn agreed with the *O'Neill* Defendants "that aggregated individualized questions predominate." R&R 16. Whether one considers only the individualized questions on which she focused or takes a broader view, she was right to reach that conclusion.

## II.    Judge Netburn Correctly Concluded that the *O'Neill* Plaintiffs Failed to Establish that a Class Action Is a Superior Method of Adjudicating Claims that This Court Long Has Managed Effectively in This MDL

Rule 23(b)(3) requires proving that a class action not only presents predominating common questions but also "is superior to other available methods for fairly and efficiently adjudicating the controversy." Conducting this comparison, Judge Netburn considered whether "the costs and benefits of the class device" would be superior to "the MDL device," which for seventeen years has "effectively facilitated this litigation," as she knows firsthand. R&R 17–18. The *O'Neill* Plaintiffs vaguely fault her for comparing a class action to the MDL—notwithstanding that Rule 23(b)(3) calls for considering "the extent and nature of" existing litigation as well as "the desirability or undesirability of" concentrating it in the forum—but they do not suggest to what else she could have compared it. *See* P.Obj. 19. Judge Netburn acknowledged that, in general, "there may be efficiencies and other benefits gained from certifying a class action within the context of an MDL" but recognized that, for several reasons, "this Proposed Class does not achieve those advantages and is not a superior litigation management method." R&R 20.

### A.    As Judge Netburn Found, the *O'Neill* Plaintiffs Failed to Prove that a Class Action Would Achieve Economies or Benefits in Case Management that the MDL Has Not Already Achieved

In concluding that the *O'Neill* Plaintiffs failed to meet their burden to prove that their proposed class action would "improve case management," Judge Netburn emphasized their exclusion of the thousands of plaintiffs who already have a case pending against all the *O'Neill* Defendants. R&R 17. They offered "no persuasive justification or explanation for fashioning a class subject to that carve-out." *Id.* (They provided none at all.) Now, they say that they defined

the class to reduce opt-outs, but that belated explanation does not demonstrate why the gerrymandered class they *have* proposed *improves* on the status quo. P.Obj. 18. It actually implies that even they consider the principal benefit of a class action—pulling all claims into a single case (not just a single forum)—impossible here.

Judge Netburn noted that the *O'Neill* Plaintiffs failed to suggest ways to provide notice to class members, but on her own initiative considered the question. R&R 18; *contra* P.Obj. 20 (arguing that "9/11 families should not be left out of this litigation solely due to logistical challenges associated with providing notice"). But that question only reinforced the lack of superiority of a class compared to the MDL, as the "notice processes normally associated with class action litigation provide little marginal benefit" here. R&R 18. A class action is hardly necessary to alert affected persons to the 9/11 attacks, or the MDL involving those attacks, given that the litigation arises from an "internationally historic event," is 20 years old, and has reached thousands of plaintiffs—including those already suing only other parties, suing only some *O'Neill* Defendants, and suing all *O'Neill* Defendants. *Id.*

The *O'Neill* Plaintiffs complain that Judge Netburn lacked "support in the record" to reason from the obvious. P.Obj. 16. But it was their burden to show class superiority, and they cite nothing but a new declaration. *See id.* In it, counsel guesses that many people would sue if they knew about the MDL, citing a history of conversations and recent acquisition of several hundred new clients. Goldman 2d Suppl. Decl., ECF 6645. The *O'Neill* Plaintiffs offer no justification for failing to provide this purported evidence to Judge Netburn, even though they argued then as now that many will be "left out" absent class treatment (Reply 10); this Court should disregard it. *E.g.*, *N.Y.C. Dist. Council of Carpenters Pension Fund v. Forde*, 341 F. Supp. 3d 334, 338 (S.D.N.Y. 2018) ("[c]ourts generally do not consider new evidence raised in objections to a magistrate judge's

report and recommendation, absent a compelling justification for failure to present such evidence to the magistrate judge") (internal quotation marks omitted). In any event, counsel's belated anecdotes only prove Judge Netburn's point. The MDL was only necessary because "so many individual cases have been filed." R&R 19.

The *O'Neill* Plaintiffs argue briefly that a class action is superior to the MDL because it would outlast the pretrial phase—yet another new contention. But they ignore the degree to which the MDL has successfully narrowed the litigation, as the Court has dismissed numerous defendants and claims. *Id.* at 3. They provide no reason to doubt that summary judgment in the MDL will continue this process; indeed, seventeen years have produced no evidence raising any question (genuine or otherwise) whether the *O'Neill* Defendants played any role in planning or executing the 9/11 attacks. And plaintiffs offer no glimpse of what a trial might look like.

### B.   As Judge Netburn Found, a Class Action Would, If Anything, Be *Less* Manageable and Produce *More* Delay

"[T]he likely difficulties in managing a class action" are one of the "matters pertinent" to the superiority inquiry. Fed. R. Civ. P. 23(b)(3)(D). And, as Judge Netburn noted, failure to prove that common questions predominate "often necessitates a finding that a class action is not a superior vehicle." R&R 17 (quoting *Royal Park Invs.*, 324 F. Supp. 3d at 400).

Indeed, here, as she recognized, due to the individual questions discussed above (*supra*, 9–13, 16–17), class certification would depend on creating several subclasses even for liability issues. So the subclass device that might, arguably, mitigate predominance problems (*see* R&R 13–14) would *exacerbate* the superiority problem: In addition to expected subclasses varying by "crash sites and/or residence," the Court likely would need to craft ones for the additional "individual questions" of "participation in VCF" (and thus waiver of non-conspiracy claims) and "nationality" (and thus ATA standing). R&R 20. Worse, class members could belong to different combinations

of subclasses. *Id.* Additional class representatives would be needed, warranting additional discovery and adding to delay. Still, not all claims would be pulled together in a single case. This prospect "means that class certification could make these claims ***even more burdensome*** for the Court to manage." *Id.* (emphasis added).

The *O'Neill* Plaintiffs offered Judge Netburn "no counterproposal for designing subclasses." *Id.* Indeed, they have never mentioned liability subclasses except to assert that they are unnecessary. Reply 9. And in their Objections they never even utter the word. Yet it was their burden, not the Court's, "to show how the action may be [modified] to avoid certification problems." *LIBOR*, 299 F. Supp. 3d at 465 (internal quotation marks omitted).

Further, because the *O'Neill* Plaintiffs defined the class to include many existing plaintiffs, "there would presumably be a substantial opt-out initiative, which would be complex and burdensome to supervise." R&R 20. That would add "preventable delays," and those who did not opt out would have "two sets of lawyers—and two contingency arrangements—that might create litigation strategy conflicts that would be difficult to resolve without raising serious ethical concerns" and introduce yet more delay. *Id.*

The *O'Neill* Plaintiffs respond with contradictory assurances. On the one hand, they assert that "opt-out rates would be low," maybe "zero." P.Obj. 18. They suppose that no class members who have sued via other counsel would opt out without also wishing to file independent suits against (all of) the *O'Neill* Defendants—which would be inconvenient and pointless, and so would not happen. (They ignore that those class members might prefer to continue as they have already wittingly done.) On the other hand, the *O'Neill* Plaintiffs assure the Court that there are no grounds for concern about conflicting strategy between legal teams—because class members can always "opt out and file their own suits." *Id.* at 18–19. (They also assert that class members simply "can

manage with different sets of attorneys." *Id.* at 19.) That is no answer to Judge Netburn, much less proof that the proposed class would be superior to the status quo.

### C. As Judge Netburn Found, a Class Action Would Interfere with the Significant Interests and Longstanding Litigation Decisions of Putative Class Members

Finally, a key "matter[] pertinent" to the superiority inquiry is "the class members' interests in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). Here, Judge Netburn rightly concluded that "the interest of the Proposed Class members in individually controlling the prosecution or defense of separate actions does not weigh in favor of class certification" but actually weighs against certification. R&R 17.

The 9/11 attacks and ensuing litigation show the strong emotional interests in and financial incentives for individual control over litigation. Knowledge of and passion over the horrific harms of that day are pervasive, and at least the ATA claims confirm the prospects of ample recovery from a defendant who can be held liable, with treble damages and attorney's fees. *See id.* at 19. The need for and size of the MDL reinforce this logic. *Id.* (They also belie the *O'Neill* Plaintiffs' new suggestion that litigation costs are a "barrier." P.Obj. 17 & n.12.) Even as to those putative class members who have chosen not to participate in the MDL at all, there is no reason to assume that their decision on how best to obtain redress for their serious injuries is unthinking, given the billions that the VCF has paid out.

The *O'Neill* Plaintiffs concede the point by defining out of the class the over 2,500 plaintiffs already suing all five *O'Neill* Defendants, fearing that, satisfied with their own strategies, they would opt out. Yet the *O'Neill* Plaintiffs deny, without reason, that other sets of putative class members—who have chosen to sue only other parties (particularly sovereign defendants, with the prospect of payment from another fund that has distributed billions), or to sue only some *O'Neill* Defendants (as over 3,500 plaintiffs have done by not suing Dubai Islamic Bank, a fact the *O'Neill*

Plaintiffs never acknowledge), or to forgo litigation—could be similarly satisfied. *See supra*, 3–4. The *O'Neill* Plaintiffs offer "no persuasive argument as to why it is appropriate to certify a class of plaintiffs who … have chosen *not* to participate in the MDL litigation against all of the O'Neill Defendants specifically." R&R 19.

## III.   Judge Netburn Correctly Concluded that the *O'Neill* Plaintiffs Failed to Establish that Their Proposed Class Satisfies All Elements of Rule 23(a)

Judge Netburn further determined that the *O'Neill* Plaintiffs also failed to satisfy Rule 23(a)'s requirements, in several respects. In this too, she was correct.

### A.   As Judge Netburn Found, the *O'Neill* Plaintiffs Failed to Prove that the Proposed Class Satisfies the Numerosity Requirement

Rule 23(a)(1) requires the plaintiff to prove that "the class is so numerous that joinder of all members is impracticable." Given the link to joinder, the inquiry "is not strictly mathematical but must take into account the context of the particular case." *Pa. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014). Judge Netburn concluded that joinder is not impracticable in the context of this MDL, including because streamlined procedures for adding any new plaintiffs are available. R&R 21 (quoting *Pa. Pub. Sch. Emps.*, 772 F.3d at 120).

The *O'Neill* Plaintiffs' various attacks fail. Defendants never "conceded" numerosity. P.Obj. 2. Although plaintiffs (again) imply that classes with 40 members always satisfy numerosity (P.Obj. 21; P.Mem. 9–10), their own authorities describe that rubric as only applying "generally" or as "presumed." P.Obj. 21 (citing *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 179 (S.D.N.Y. 2005) (former); *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (latter)). They also ignore Judge Netburn's explanation, mistakenly scorning her as "relying on a single unpublished opinion." *Id.* She in fact quoted the published Second Circuit decision above for the rule that numerosity depends on context. R&R 21. Finally, they fault her for considering the availability of streamlined procedures for adding new plaintiffs, contending that

there is no such procedure for cases against the *O'Neill* Defendants. P.Obj. 21–22. But they recognize that such procedures exist in the MDL, including a short-form complaint process (ECF 5234), and give no reason they could not be used here too, should that prove necessary. P.Obj. 21–22. That would be of a piece with this Court's long having "successfully managed" "[t]housands" of claims "substantively identical to the Class's" without class treatment. P.Mem. 25.

### B.     As Judge Netburn Found, the *O'Neill* Plaintiffs Failed to Prove that the Proposed Class Representatives Are Typical and Adequate

Rule 23(a) also requires the *O'Neill* Plaintiffs to establish typicality and adequacy. For typicality, they must show that disputed issues "occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *LIBOR*, 299 F. Supp. 3d at 460 (quoting *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016)). Typicality ensures "that a class representative has the incentive to prove all the elements of the cause of action which would be presented by the individual members" in their own lawsuits. *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 71 (S.D.N.Y. 2009) (internal quotation marks omitted). Adequacy "overlaps" with typicality (R&R 23), as it similarly ensures that the class representatives will "vigorously pursu[e] the claims of the class" and "have no interests antagonistic to the interests of other class members." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (citation omitted). A unique defense can leave class representatives inadequate and their claims atypical, as "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Gordon v. Sonar Cap. Mgmt. LLC*, 92 F. Supp. 3d 193, 201 (S.D.N.Y. 2015) (internal quotation marks omitted). Judge Netburn concluded that the O'Neills failed both requirements.

The O'Neills' claims that are timely under New York law are not typical of the claims of putative class members that accrued in Pennsylvania or Virginia and that are—absent tolling—

time-barred, nor are the O'Neills adequate representatives for those class members. *See supra*, 9–12. After barely mentioning tolling before Judge Netburn, they now make the baffling assertion that tolling based on pending **criminal** proceedings against **others** might apply. P.Obj. 23–24; *compare* Reply 6 n.9, 7. Even if it did, and even if the *O'Neill* Plaintiffs could make new arguments now (*but see supra*, 12), they miss the point: They **lack incentive to litigate** tolling—which both is "substantial" and "would be outcome determinative as to class members whose state law claims would be time-barred." R&R 24. That tolling might ultimately "be determined in the [other] underlying cases in any event"—through litigation by those **with incentive to litigate** it—is no reason to disregard the law and mis-entrust that task to the O'Neills. P.Obj. 23.

The O'Neills' claims also are not typical of the claims of putative class members who did not participate in the VCF, nor are the O'Neills adequate representatives for those class members. Only a single VCF claim "may be submitted … by an individual or on behalf of a deceased individual," and that claim waives all causes of action for damages that could have been included in it, unless the plaintiff can prove "knowing" conspiracy. Transp. Act § 405(c)(3)(B) & (C)(i). That is why "purported Personal Representative[s] must … provide written notice of the claim … to any other persons who may reasonably be expected to assert an interest in an award or to have a cause of action to recover damages relating to the wrongful death of the decedent." 28 C.F.R. § 104.4(b)(1). Accordingly, in *In re September 11th Litigation*, Judge Hellerstein concluded that the relatives of a 9/11 decedent could not maintain suits for their own suffering, because a non-party personal representative had submitted a VCF claim on behalf of the same decedent. 2004 WL 1320897, at *10–12 (S.D.N.Y. June 10, 2004). As VCF participants, the O'Neills will be "preoccupied with" meeting the high standard to overcome their waiver, to the detriment of those putative class members who did not participate in the VCF and might recover on easier theories.

*Gordon*, 92 F. Supp. 3d at 201. Those class members "may wish to press different litigation strategies or pursue different claims more vigorously in order to obtain relief." R&R 25. The O'Neills' incentive may especially disadvantage those putative class members who, as foreign nationals, lack standing to bring ATA claims.

The *O'Neill* Plaintiffs assert that the VCF waiver applies only to the applicant who signed the waiver, making the claims of the O'Neills who did not do so typical of the claims of those in the class who did not participate in the VCF. But, in the face of the text and Southern District of New York decision just discussed, they offer nothing to support their interpretation. P.Obj. 24.

With respect to both VCF waiver and tolling, the *O'Neill* Plaintiffs emphasize their view that their claims are typical of the claims of most putative class members. Again, it is unclear that the number of class members implicated is as insignificant as the *O'Neill* Plaintiffs wish, and, even as claimed, it is hardly small in an absolute sense (well more than 40, for example). *See* Goldman 2d Suppl. Decl. ¶ 6 (estimating that 249 9/11 victims were not U.S. nationals); P.Obj. 24 (stating that 97 families did not participate in the VCF); P.Mem. 10 (estimating that each 9/11 family consists of 5.42 persons). In any event, that the O'Neills' claims may be typical of some other class members' claims does little for those left out. It likewise does little for the *O'Neill* Plaintiffs' burden to prove that "each class member's claim arises from the same course of events and each class member makes similar legal arguments." *LIBOR*, 299 F. Supp. 3d at 460 (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)).

## CONCLUSION

For the foregoing reasons, the Court should, as Judge Netburn recommends, deny the *O'Neill* Plaintiffs' motion for class certification. The Court also should deny their request to stay its order for half a year, for which they provide no authority or argument. *See* P.Obj. 4, 25.

DATED: April 7, 2021

/s/ *Omar T. Mohammedi*
Omar T. Mohammedi
The Law Firm of Omar T. Mohammedi, LLC
233 Broadway, Suite 820
New York, NY 10279
Telephone: (212) 725-3846
Fax: (212) 202-7621
Email: omohammedi@otmlaw.com

Frederick J. Goetz (admitted *pro hac vice*)
Goetz & Eckland P.A.
43 Main St. S.E., Suite 505
Minneapolis, MN 55414
Telephone: (612) 874-1552
Fax: (612) 331-2473
Email: fgoetz@goetzeckland.com

*Counsel for Defendant World Assembly of Muslim Youth*

/s/ *Peter C. Salerno*
Peter C. Salerno
Amy Rothstein
Salerno & Rothstein
221 Schultz Hill Road
Pine Plains, NY 12567
Telephone: (518) 771-3050
Fax: (866) 589-9010
Email: peter.salerno.law@gmail.com
Email: amyrothsteinlaw@gmail.com

*Counsel for Defendant Yassin Kadi*

Respectfully submitted,

/s/ *Steven T. Cottreau*
Steven T. Cottreau (admitted *pro hac vice*)
C. Kevin Marshall (admitted *pro hac vice*)
Gabrielle E. Pritsker
Audrey Beck (admitted *pro hac vice*)
Jones Day
51 Louisiana Ave., NW
Washington, DC 20001
Telephone: (202) 879-3939
Email: scottreau@jonesday.com
Email: ckmarshall@jonesday.com
Email: gpritsker@jonesday.com
Email: abeck@jonesday.com

Juan P. Morillo (admitted *pro hac vice*)
Quinn Emanuel Urquhart & Sullivan LLP
777 Sixth St. NW
Washington, DC 20001
Telephone: (202) 538-8174
Email: juanmorillo@quinnemanuel.com

*Counsel for Defendant Dubai Islamic Bank*

/s/ *Aisha E. R. Bembry*
Aisha E. R. Bembry (admitted *pro hac vice*)
Waleed Nassar (admitted *pro hac vice*)
Lewis Baach Kaufmann Middlemiss PLLC
1101 New York Ave., NW Suite 1000
Washington, DC 20005
Telephone: (202) 833-8900
Fax: (202) 466-5738
Email: aisha.bembry@lbkmlaw.com
Email: waleed.nassar@lbkmlaw.com

*Counsel for Defendants Muslim World League and International Islamic Relief Organization*