IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Case No. 1:03-md-01570-GBD-SN |
| *This document relates to:* | ORAL ARGUMENT REQUESTED |

*The Underwriting Members of Lloyd's Syndicate 2, et al. v. Al Rajhi Bank, et al.*, No. 16-cv-7853; *Aguilar, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09663; *Addesso, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09937; *Hodges, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-00117; *Aiken, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-00450; *Charter Oak Fire Insurance Co., et al. v. Al Rajhi Bank, et al.*, No. 17-cv-02651; *Abarca, et al., v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03887; *Arrowood Indemnity Co., et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03908; *Abedhajajreh v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-06123; *Fraser, et al. v. Al Qaeda Islamic Army, et al.*, No. 17-cv-07317; *Muenchener Rueckversicherungs-Gesellschaft Aktiengesellschaft in Muenchen, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-07914; and *Abbate, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-08617.

**AL RAJHI BANK'S OBJECTIONS
TO THE MAGISTRATE JUDGE'S OPINION AND ORDER**

**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005

April 9, 2021

*Counsel for Al Rajhi Bank*

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

PROCEDURAL BACKGROUND...........................................................................................2

ARGUMENT ..........................................................................................................................3

I.      THE COURT SHOULD DECIDE THE BANK'S PENDING RULE 12(b)(6) MOTION NOW BECAUSE THE OUTCOME IS FOREORDAINED ...........................3

      A.     The Court May Decide The Bank's Rule 12(b)(6) Motion Before Subjecting The Parties To Complex Jurisdictional Discovery...............................4

      B.     This Court Should Now Determine That "The Merits Question Is Foreordained" ......................................................................................................5

             1.     The Merits Of Plaintiffs' Primary-Liability Claims Against The Bank Are Foreordained.......................................................................................7

             2.     The Merits Of Plaintiffs' Secondary-Liability Claims Against The Bank Are Foreordained............................................................................8

      C.     Deciding The Bank's Pending Rule 12(b)(6) Motion Now Will Avoid Complex, Burdensome and Judicially Inefficient Jurisdictional Discovery .........12

II.     THE SECOND CIRCUIT'S MANDATE DOES NOT PRECLUDE DECIDING THE MERITS FIRST ...................................................................................................14

III.   THIS COURT'S PRIOR PRACTICE SUPPORTS DECIDING THE MERITS NOW.................................................................................................................................17

CONCLUSION.......................................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Ashton v. Al Qaeda Islamic Army*,
  298 F. Supp. 3d 631 (S.D.N.Y 2018) ................................................................. 13

*Averbach v. Cairo Amman Bank*,
  No. 19-cv-00004, 2020 U.S. Dist. LEXIS 10902 (S.D.N.Y. Jan. 21, 2020) ........................... 6

*Bakalian v. Cent. Bank of the Republic of Turk.*,
  932 F.3d 1229 (9th Cir. 2019) ..................................................................... 4

*Biocad JSC v. F. Hoffmann-La Roche*,
  942 F.3d 88 (2d Cir. 2019) ....................................................................... 13

*Burrell v. United States*,
  467 F.3d 160 (2d Cir. 2006) ...................................................................... 14

*Butcher v. Wendt*,
  975 F.3d 236 (2d Cir. 2020) .................................................................. 4, 12

*Cain v. Twitter, Inc.*,
  No. 17-cv-2506, 2018 U.S. Dist. LEXIS 163457 (N.D. Cal. Sept. 24, 2018) ......................... 11

*Clayborne v. Califano*,
  603 F.2d 372 (2d Cir. 1979) ................................................................... 12-13

*Ctr. for Reprod. Law & Policy v. Bush*,
  304 F.3d 183 (2d Cir. 2002) .......................................................... 1, 4-6, 12

*Chen-Oster v. Goldman, Sachs & Co.*,
  325 F.R.D. 55 (S.D.N.Y. 2018) ..................................................................... 5

*In re Coudert Brothers LLP*,
  809 F.3d 94 (2d Cir. 2015) .................................................................... 14-15

*Edwards & Hanly v. Wells Fargo Sec. Clearance Corp.*,
  602 F.2d 478 (2d Cir. 1979) ....................................................................... 9

*Freeman v. HSBC Hldgs. PLC*,
  No. 14-cv-6601, 2019 U.S. Dist. LEXIS 162179 (E.D.N.Y. Sept. 16, 2019) ............................ 6

*Freeman v. HSBC Hldgs. PLC*,
  465 F. Supp. 3d 220 (E.D.N.Y. 2020) ............................................................ 6-7

*Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*,
  582 F.3d 393 (2d Cir. 2009) ...............................................................................17

*Halberstam v. Welch*,
  705 F.2d 472 (D.C. Cir. 1983) ...............................................................5-6, 9, 11

*Kaplan v. Lebanese Canadian Bank, SAL*,
  405 F. Supp. 3d 525 (S.D.N.Y. 2019)...........................................................*passim*

*Linde v. Arab Bank, PLC*,
  882 F.3d 314 (2d Cir. 2018) .............................................................................14-16

*Liparota v. United States*,
  471 U.S. 419 (1985) .........................................................................................7, 9, 10

*O'Neill v. Al Rajhi Bank (In re Terrorist Attacks on Sept. 11, 2001)*,
  714 F.3d 118 (2d Cir. 2013) ..............................................................................5, 8, 16

*O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on Sept. 11, 2001)*
  714 F.3d 659 (2d Cir. 2013) ....................................................................................12

*O'Sullivan v. Deutsche Bank AG*,
  No. 17-cv-8709, 2019 U.S. Dist. LEXIS 53134 (S.D.N.Y. Mar. 28, 2019).....................6, 11

*Phillips v. Reed Grp., Ltd.*,
  955 F. Supp. 2d 201 (S.D.N.Y. 2011) ......................................................................17

*In re Platinum-Beechwood Litig.*,
  453 F. Supp. 3d 645 (S.D.N.Y. 2020) ........................................................................9

*Schonfeld v. Hilliard*,
  218 F.3d 164 (2d Cir. 2000) .............................................................................15-16

*Sherrod v. Breitbart*,
  720 F.3d 932 (D.C. Cir. 2013) ..................................................................................12

*Siegel v. HSBC N. Am. Holdings, Inc.*,
  933 F.3d 217 (2d Cir. 2019) ......................................................................................9

*Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund*,
  725 F. App'x 79 (2d Cir. 2018) ................................................................................15

*Sprague v. Ticonic Nat'l Bank*,
  207 U.S. 161 (1939) .........................................................................................14-15

*SPV OSUS, Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018) ......................................................................5, 9

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) .................................................................................4, 12

*In re Terrorist Attacks on Sept. 11, 2001*,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005).......................................................5, 16

*In re Terrorist Attacks on Sept. 11, 2001*,
    295 F. Supp. 3d 416 (S.D.N.Y. 2018) .......................................................2-3

*United States v. Golitschek*,
    808 F.2d 195 (2d Cir. 1986) ........................................................................12

*Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*,
    946 F.3d 120 (2d Cir. 2019) ......................................................................4-5

*Weiss v. Nat'l Westminster Bank*,
    No. 19-cv-863, 2021 U.S. App. LEXIS 9979 (2d Cir. Apr. 7, 2021) ................7-10

## STATUTES AND RULES

28 U.S.C. § 636................................................................................................3

Anti-Terrorism Act, 18 U.S. Code § 2331, et seq.

    18 U.S.C. § 2333(d)..............................................................................9

Fed. R. Civ. P. 12(b)(2)....................................................................................2

Fed. R. Civ. P. 12(b)(6).............................................................................passim

Fed. R. Civ. P. 72............................................................................................1

## OTHER AUTHORITIES

9/11 Monograph on Terrorist Financing, *available at*
http://govinfo.library.unt.edu/911/staff_statements/
911_TerrFin_Monograph.pdf.........................................................................10

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, Al Rajhi Bank respectfully objects to the Magistrate Judge's Opinion and Order filed on March 26, 2021, ECF No. 6681 ("Order"), denying the Bank's dispositive motion for the Court to decide the Bank's pending Rule 12(b)(6) motion and dismiss all claims against the Bank with prejudice. The Court reviews such an order denying a dispositive motion *de novo*. Based on controlling decisions by this Court and the Court of Appeals in these multidistrict proceedings, the Court should now dismiss all claims against the Bank for failure to state a claim. Otherwise, the Court will be inviting jurisdictional discovery that may last years and prove to be wholly unnecessary and wasteful of party and judicial resources.

## INTRODUCTION

In December 2019, Al Rajhi Bank asked this Court to decide the Bank's pending Rule 12(b)(6) motion to dismiss before proceeding to jurisdictional discovery because dismissal on the merits of all claims against the Bank is foreordained. *See* Mem. Law Supp. Al Rajhi Bank's Renewed Mot. Dismiss, ECF No. 5385 (Dec. 19, 2019) ("Renewed Mot."); Reply Mem. Supp. Al Rajhi Bank's Renewed Mot. Dismiss, ECF No. 6048 (Mar. 9, 2020) ("Reply on Renewed Mot."). As the Bank explained, prior decisions of this Court and the Court of Appeals in these multidistrict proceedings, as well as other controlling precedent in this Circuit, foreordain dismissal of Plaintiffs' primary- and secondary-liability Anti-Terrorism Act ("ATA") claims against the Bank for failure to state a claim.

The Magistrate Judge's Order correctly acknowledges that this Court may decide the merits without first resolving personal jurisdiction if the outcome on the merits is "foreordained," *see id.* (quoting *Ctr. for Reprod. Law & Policy v. Bush*, 304 F.3d 183, 195 (2d Cir. 2002)), but nonetheless concludes that such a decision is discretionary and should not be done, *see id.* at 9-10. That Order

allows jurisdictional discovery to proceed, notwithstanding that the merits of this case may be foreordained.

This Court should review the Order *de novo* to confirm that the outcome of the Bank's Rule 12(b)(6) motion is "foreordained" and to dismiss all claims against the Bank for failure to state a claim.  Otherwise, the Court and the parties will be engaged in protracted discovery that is unnecessary and wasteful.

## PROCEDURAL BACKGROUND

It has been nineteen years since Al Rajhi Bank originally appeared of its own volition, without waiting to be served with process, to defend itself and clear its name in these multidistrict proceedings.  In 2005, this Court dismissed all thirteen cases in this multidistrict litigation then-pending against the Bank for failure to allege sufficient facts to state a claim against the Bank.  The Court of Appeals affirmed the dismissal of the Bank in April 2013.  On June 30, 2014, after seeking the views of the United States, and consistent with those views, the Supreme Court declined to review the Second Circuit's decision.

Undeterred, the current Plaintiffs (represented by the same counsel as many of the plaintiffs whose claims against the Bank were previously dismissed) filed the first of several new cases based on the same allegations against the Bank (and others) beginning in January 2016.  In August 2017, the Bank moved to dismiss Plaintiffs' consolidated Amended Complaint, seeking dismissal under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim under the ATA.  Mem. Law Supp. Al Rajhi Bank's Mot. Dismiss, ECF No. 3703 (Aug. 21, 2017) ("Mem.").  In March 2018, this Court dismissed the Amended Complaint against the Bank for lack of personal jurisdiction without reaching the Bank's Rule 12(b)(6) motion.  Mem. Decision & Order, ECF No. 3947 (*In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 3d 416 (S.D.N.Y. 2018)) ("2018 Decision") (dismissing claims against the Bank and two other

–2–

defendants, National Commercial Bank ("NCB") and Saudi Binladin Group, for lack of personal jurisdiction). On appeal, the Second Circuit issued a summary order reversing the dismissal for lack of personal jurisdiction and permitting jurisdictional discovery to commence, also without reaching the Bank's arguments on failure to state a claim. *See* Summ. Order, No. 18-1201, ECF No. 188 (*Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank*, 779 F. App'x 66, 68-69 (2d Cir. Oct. 15, 2019)) ("Summary Order").

On remand, in December 2019, the Bank moved this Court to decide the Bank's pending Rule 12(b)(6) motion and to dismiss with prejudice all claims against the Bank for failure to state a claim. *See* Renewed Mot., ECF No. 5385. After all, the Bank had previously won dismissal of prior actions in the same MDL under Rule 12(b)(6). On March 26, 2021, Magistrate Judge Netburn issued the Order denying the Bank's Renewed Motion, declining to consider the Bank's Rule 12(b)(6) arguments at this time, and compelling initiation of jurisdictional discovery. *See* Order 2.

## ARGUMENT

### I. THE COURT SHOULD DECIDE THE BANK'S PENDING RULE 12(b)(6) MOTION NOW BECAUSE THE OUTCOME IS FOREORDAINED

In resolving objections to dispositive motions, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(2). Al Rajhi Bank's motion was a dispositive motion that asked the Court "to resolve the Bank's pending Motion to Dismiss" before proceeding to jurisdictional discovery and "to dismiss with prejudice Plaintiffs' claims" against the Bank. *See* Renewed Mot. 15, ECF No. 5385; *see also* Notice of Mot. to Decide Al Rajhi Bank's Pending Rule 12(b)(6) Mot. to Dismiss 2, ECF No. 5384 (Dec. 19, 2019) ("Notice of Mot.") (same). Magistrate Judge Netburn, therefore, should have

resolved the Bank's motion by making a report and recommendation, rather than by issuing an

opinion and order. *See* 28 U.S.C. § 636(b)(1)(C).

A.   **The Court May Decide The Bank's Rule 12(b)(6) Motion Before Subjecting The Parties To Complex Jurisdictional Discovery**

The Order correctly states the legal rule of decision for the Bank's motion to decide its

pending Rule 12(b)(6) motion before proceeding to complex jurisdictional discovery:

> The Court of Appeals, applying [*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998)], has also held that a court may reach a merits question before addressing jurisdictional challenges where the merits outcome has been "foreordained" by another case such that "the jurisdictional question could have no effect on the outcome," and so long as the court "d[oes] not use the pretermission of the jurisdictional question as a device for reaching a question of law that otherwise would have gone unaddressed." *Ctr. for Reprod. Law & Policy v. Bush*, 304 F.3d 183, 194 (2d Cir. 2002).

Order 6.

Under *Center for Reproductive Law*, the Court should decide the Bank's Rule 12(b)(6)

motion now because the outcome of that motion is foreordained and resolution of that motion now

will obviate the need for complex, burdensome and judicially inefficient jurisdictional discovery

that could take years to complete. 304 F.3d at 194 (holding courts may decide merits first where

outcome is "foreordained" and court can decide merits without reaching novel legal issues); *see*

*Butcher v. Wendt*, 975 F.3d 236, 244 (2d Cir. 2020) (same, and collecting decisions of First Circuit,

Third Circuit, Sixth Circuit, Eighth Circuit, Federal Circuit, and District of Columbia); *Bakalian*

*v. Cent. Bank of the Republic of Turk.*, 932 F.3d 1229, 1236 (9th Cir. 2019) (same).

Indeed, this Circuit *favors* deciding merits before jurisdiction in the limited cases like this

one where the merits have been resolved under highly similar circumstances, because this

approach promotes judicial efficiency. *See Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946

F.3d 120, 137 n.22 (2d Cir. 2019) (explaining that, where the merits outcome was foreordained,

the district court "sensibly avoided delving into the voluminous record on appeal to ascertain the precise basis for the district court's assertion of jurisdiction"), *cert. denied sub nom. Fuller v. Banco Bilbao Vizcaya Argentaria, S.A.*, 141 S. Ct. 364 (2020); *see also SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333, 348 (2d Cir. 2018) (Calabresi, J., concurring) (advocating for decision on merits prior to personal jurisdiction to avoid duplicative proceedings in alternate jurisdictions, which would be "doubly wasteful of judicial resources").

**B.      This Court Should Now Determine That "The Merits Question Is Foreordained"**

Applying *Center for Reproductive Law* and its progeny, as the Order ought to have done, this Court should find that the criteria for deciding the merits before personal jurisdiction are met in this case, and the Court should dismiss all claims against the Bank for failure to state a claim. *See, e.g., Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 84 (S.D.N.Y. 2018) (reversing magistrate judge's threshold determination, then addressing undecided issue).

Al Rajhi Bank has demonstrated that the outcome on the merits, i.e., dismissal of all of Plaintiffs' claims, is foreordained by decisions of this Court and the Court of Appeals in this multidistrict litigation, as well as other ATA cases within the Circuit.  *See* Mem. 8-12 & Ex. 1, ECF No. 3703, 3703-1; Reply Supp. Al Rajhi Bank's Mot. Dismiss 1-3, ECF No. 3869 (Jan. 11, 2018) ("Reply"); Br. for Def.-Appellee 32-34, No. 18-cv-1201, ECF No. 153 (2d Cir. Dec. 6, 2018) ("Opp'n Br."); Renewed Mot. 3-5, ECF No. 5385; Reply on Renewed Mot. 3-4, ECF No. 6048.

Under *Center for Reproductive Law*, a prior decision addressing "essentially the same factual allegations as the instant case" will "foreordain" the merits of the instant case.  304 F.3d at 192-93.  In *In re Terrorist Attacks on September 11, 2001*, this Court dismissed ATA primary-liability claims against Al Rajhi Bank, holding that allegations concerning Al Rajhi Bank's and its

principals' alleged donations to charities that were purported front organizations for Al Qaeda failed to state a claim. 349 F. Supp. 2d 765, 826, 833 (S.D.N.Y. 2005), *aff'd*, 714 F.3d 118, 125 (2d Cir. 2013). In the same decision, this Court dismissed ATA secondary-liability claims against Al Rajhi Bank under the standard set forth in *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983). *See* 349 F. Supp. 2d at 798 & n.28, 832-33. In its 2018 Decision, this Court deemed the allegations against the Bank in those previously dismissed actions to be "similar, if not identical" to the allegations now before the Court in the Amended Complaint. 2018 Decision 12. The Court's prior dismissals of primary- and secondary-liability ATA claims against the Bank based on "essentially the same factual allegations" that are at issue here demonstrate that the merits of the Bank's pending Rule 12(b)(6) motion are foreordained and the claims against the Bank should be dismissed with prejudice for failure to state a claim. *Ctr. for Reprod. Law*, 304 F.3d at 193.

The merits in this case are also foreordained by recent decisions of this Court and its sister courts dismissing ATA claims against other banks that allegedly committed, aided and abetted, or conspired to commit acts of international terrorism by providing financial services to terrorists. *See* Renewed Mot. 4-5; *O'Sullivan v. Deutsche Bank*, No. 17-cv-8709, 2019 U.S. Dist. LEXIS 53134, at *13 (S.D.N.Y. Mar. 28, 2019) (dismissing ATA claims against banks that allegedly provided financial services, in violation of U.S. sanctions, to various Iranian and commercial entities connected to Hizbollah); *Freeman v. HSBC Holdings PLC*, No. 14-cv-6601, 2019 U.S. Dist. LEXIS 162179, at *91, 92, 99 (E.D.N.Y. Sept. 16, 2019) (dismissing ATA claims against banks that allegedly "flout[ed] U.S. sanctions" in providing financial services to Iran and its entities that transferred funds "directly to" Hizbollah); *Kaplan v. Lebanese Canadian Bank*, 405 F. Supp. 3d 525, 528-29 (S.D.N.Y. 2019) (dismissing ATA claims against bank that allegedly provided account services to leaders and "subordinate entities" of Hizbollah); *Averbach v. Cairo*

*Amman Bank*, No. 19-cv-00004, 2020 U.S. Dist. LEXIS 10902, at *5-6 (S.D.N.Y. Jan. 21, 2020), *accepted and adopted* 2020 U.S. Dist. LEXIS 40430 (S.D.N.Y. Mar. 9, 2020) (dismissing ATA claims against bank that allegedly provided account services to prominent Hamas members and charities in Hamas's "infrastructure") (relying on *Kaplan*); *Freeman v. HSBC Holdings PLC*, 465 F. Supp. 3d 220, 234 (E.D.N.Y. 2020) (dismissing ATA claims against banks that allegedly "worked directly with Iran to evade sanctions . . . and avoid United States authorities," and even negotiated "many illegal Iranian transactions"); *Weiss v. Nat'l Westminster Bank*, No. 19-cv-863, 2021 U.S. App. LEXIS 9979, at *4-6 (2d Cir. Apr. 7, 2021) (affirming dismissal of ATA claims against banks that provided account services to purported charity fronts for Hamas); Summ. Order, *Strauss v. Crédit Lyonnais, S.A.*, No. 19-cv-865 (2d Cir. Apr. 7, 2021) (same, relying on *Weiss*).

These controlling decisions confirm that this Court's earlier dismissal of claims against the Bank was correct and that it remains so today such that the outcome of the Bank's pending Rule 12(b)(6) motion is foreordained.

## 1. The Merits Of Plaintiffs' Primary-Liability Claims Against The Bank Are Foreordained

The merits of Plaintiffs' primary-liability claims are foreordained because the factual allegations against the Bank in the Amended Complaint are insufficient under binding Second Circuit authority and this Court's prior decisions. A jurisdictional inquiry into supposed allegations of the Bank's purported "specific intent" would not alter this outcome. *See* Order 8, 11 (quoting Summary Order, 779 F. App'x at 68-69). For example, the Amended Complaint fails to allege:

(i)  that the Bank's purported financial services and donations to charities "involve[d] violence or endanger[ed] human life" (*Kaplan*, 405 F. Supp. 3d at 532 (quoting *Linde v. Arab Bank, PLC*, 882 F.3d 314, 326 (2d Cir. 2018));

(ii)    that the Bank's purported actions — regardless of its actual state of mind — "appear[ed] to be intended to intimidate or coerce a civilian population or to influence or affect a government" (*Kaplan*, 405 F. Supp. 3d at 532 (quoting *Linde*, 882 F.3d at 326)); *see Weiss*, 2021 U.S. App. LEXIS 9979, at \*36 ("[P]roof of the provision of banking services, in and of itself, is insufficient either to show that the services involved an act of violence or threat to human life or to give the appearance that such services were intended to intimidate or coerce a civilian population or government.");

(iii)    that the Bank "participated in the September 11, 2001 attacks or that [the Bank] provided money directly to al Qaeda . . . [or] that the money allegedly donated by the [Bank] to the purported charities actually was transferred to al Qaeda and aided in the September 11, 2001 attacks," such that the Bank's purported actions proximately caused the attacks (*O'Neill v. Al Rajhi Bank*, 714 F.3d 118, 124 (2d Cir. 2013); *see also Kaplan*, 405 F. Supp. 3d at 536 (same)).

*See* Renewed Mot. 5-8, ECF No. 5385 (explaining grounds for dismissing Plaintiffs' primary-liability claims); Reply on Renewed Mot. 3-4, ECF No. 6048 (same); Mem. 8-12, ECF No. 3703 (same); Reply 1-3, ECF No. 3869 (same).

Plaintiffs have not and cannot distinguish these authorities that necessarily foreclose the Amended Complaint's primary-liability claims against the Bank, regardless of the contemplated jurisdictional inquiry.

### 2.    The Merits Of Plaintiffs' Secondary-Liability Claims Against The Bank Are Foreordained

The merits of Plaintiffs' secondary-liability claims are also foreordained for dismissal under binding Second Circuit authority and this Court's prior decisions. *See* Renewed Mot. 5-8,

ECF No. 5385 (explaining grounds for dismissing Plaintiffs' secondary-liability claims); Reply on Renewed Mot. 8-12, ECF No. 6048 (same); Mem. 8-12, ECF No. 3703 (same); Reply 1-3, ECF No. 3869 (same).

**Aiding and abetting.** As set forth in the Bank's Renewed Motion (at 9-11), Plaintiffs' aiding-and-abetting claim fails because, regardless of the Bank's state of mind, the Amended Complaint does not allege facts plausibly supporting any inference that Al Rajhi Bank's purported financial services and donations to charities "substantial[ly] assist[ed]" Al Qaeda in committing the September 11 attacks in the United States.   18 U.S.C. § 2333(d)(2); *see* Mem. 28-29; Reply 10-12.  The Amended Complaint does not contain a single factual allegation of any material support provided by the Bank, whether donations or banking services, that "substantially assisted [Al Qaeda] in [terrorist] activities, specifically the [September 11] Attacks." *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 225-26 (2d Cir. 2019); *see Linde*, 882 F.3d at 329 (holding that for aiding-and-abetting liability "the defendant must knowingly and substantially assist the principal violation" (quoting *Halberstam*, 705 F.2d at 487)).

The Amended Complaint also fails to allege facts plausibly supporting any inference that the Bank proximately caused the September 11 attacks by means of the Bank's "alleged supportive conduct" for Al Qaeda.  *Linde*, 882 F.3d at 331 (explaining that the substantial assistance inquiry under aiding and abetting "focuses on the relationship between the act of international terrorism and the secondary actor's alleged supportive conduct"); *see SPV OSUS*, 882 F.3d at 345 ("Substantial assistance requires the plaintiff to allege that the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated."); *Edwards & Hanly v. Wells Fargo Sec. Clearance Corp.*, 602 F.2d 478, 484-85 (2d Cir. 1979) (holding proximate cause required for aiding and abetting); *In re Platinum-Beechwood Litig.*, 453 F. Supp. 3d 645, 650

(S.D.N.Y. 2020) ("[E]mbedded in the substantial assistance element [of aiding and abetting] is the concept of proximate causation, which requires a showing that 'a defendant's participation [was] the proximate cause of plaintiff's injury.'").

Jurisdictional discovery into the Bank's purported "specific intent to further terrorism in the United States" (Summary Order, 779 F. App'x at 68-69) would not alter the outcome of Plaintiffs' aiding-and-abetting claims.  *See Kaplan*, 405 F. Supp. 3d at 533 n.6 (noting that finding of "purposeful" contacts with the forum "in the context of the *jurisdictional inquiry*" was insufficient to establish culpable state of mind for aiding and abetting).  Regardless of the Bank's purported intent, the Amended Complaint does not allege facts plausibly showing that the Bank was, in fact, aware that by providing banking services and donations to charities the Bank was "*itself* assuming a 'role' in terrorist activities" of Al Qaeda.  *Linde*, 882 F.3d at 329 (emphasis added); *Weiss*, 2021 U.S. App. LEXIS 9979, at *42 (quoting *Linde*).

Specifically, the Amended Complaint fails to allege that before September 11, 2001, *any* of the Bank's alleged charity customers were designated by *any* government authority as Al Qaeda fronts so as to potentially put the Bank (and others) on notice of the risk of dealing with these charities.  *See* Opp'n Br. 32-34, ECF No. 153 (No. 18-cv-1201) (discussing self-contradictory allegations in the Amended Complaint).  Instead, the Amended Complaint alleges that the charities held themselves out as bona fide charitable organizations that carried out "legitimate humanitarian or social programs," known to include providing meals, paying for potable water projects, setting up and equipping medical facilities, and operating orphanages.  *Id.* at 33 (citing Am. Compl. ¶ 119 and 9/11 Commission Staff Monograph on Terrorist Financing 115 (2004) referenced in the Amended Complaint); *see Weiss*, 2021 U.S. App. LEXIS 9979, at *47 (affirming district court's finding that mental state for aiding and abetting was not shown where "the charities to which

NatWest transferred funds as instructed by Interpal performed charitable work and . . . , as plaintiffs admitted, Interpal did not indicate to NatWest that the transfers were for any terroristic purpose; and plaintiffs proffered no evidence that the charities funded terrorist attacks or recruited persons to carry out such attacks").  The Amended Complaint also alleges that funds purportedly funneled to Al Qaeda by charities allegedly were "merged with and hidden among funds used for other legitimate humanitarian or social programs."  Opp'n Br. 33, ECF No. 153 (No. 18-cv-1201) (citing Am. Compl. ¶ 119).  Finally, the Amended Complaint does not allege any facts plausibly showing that at any relevant time Al Rajhi family members held "leadership positions" (Order 2) in alleged charity fronts for Al Qaeda, that any such charity in Saudi Arabia in fact provided support to Al Qaeda, or that any Al Rajhi family member learned of any such support while acting in a Bank capacity or shared knowledge of such support with anyone at the Bank.  *See* Reply 3-5.

**Conspiracy.**  As set forth in the Bank's Renewed Motion (at 11), the Amended Complaint fails to state a claim for conspiracy because the Amended Complaint does not allege that the Bank reached an *agreement* with Al Qaeda itself to participate in Al Qaeda's efforts to attack the United States.  *See* Mem. 29-30; Reply 12; *O'Sullivan*, 2019 U.S. Dist. LEXIS 53134, at *35-36 (holding that plaintiffs must plausibly plead that defendants conspired with an FTO "to commit an act of international terrorism"); *Kaplan*, 405 F. Supp. 3d at 534 (describing "the *Halberstam* framework" for conspiracy as *requiring* an "agreement between two or more persons . . . to participate in an unlawful act, or a lawful act in an unlawful manner" (quoting *Halberstam*, 705 F.2d at 477)); *see also Cain v. Twitter, Inc.*, No. 17-cv-2506, 2018 U.S. Dist. LEXIS 163457, at *8-9 (N.D. Cal. Sept. 24, 2018) (dismissing JASTA conspiracy claim because "[n]othing in the [complaint] establishes an agreement, express or otherwise, between Twitter and ISIS *to commit terrorist attacks*" (emphasis added)).

*          *          *

Regardless of any jurisdictional discovery, the controlling precedent in this multidistrict litigation and in this Circuit establish that allegations against the Bank that are virtually identical to the already-dismissed allegations against the Bank are insufficient to state a claim against the Bank.  Therefore, the merits of Plaintiffs' primary- and secondary-liability ATA claims against the Bank are foreordained, and the Court should grant the Bank's Rule 12(b)(6) motion and dismiss with prejudice all claims against the Bank, obviating any need for the parties or the Court to proceed with complex, burdensome and judicially inefficient jurisdictional discovery.  *Ctr. for Reprod. Law*, 304 F.3d at 194-95.

### C.    Deciding The Bank's Pending Rule 12(b)(6) Motion Now Will Avoid Complex, Burdensome and Judicially Inefficient Jurisdictional Discovery

The Order ignores Second Circuit authority that deciding the merits of a claim before personal jurisdiction is "particularly prudent" to avoid complex determinations involved in finding personal jurisdiction over the Bank.  *Butcher*, 975 F.3d at 242-43 ("[W]e have found it particularly prudent to assume hypothetical jurisdiction 'where the jurisdictional issues are complex and the substance of the claim is . . . plainly without merit.'"); *see also Sherrod v. Breitbart*, 720 F.3d 932, 937 (D.C. Cir. 2013) ("[A]court does not exercise its 'power to declare the law,' and thus need not resolve difficult questions of its jurisdiction, when a prior judgment of the court forecloses the merits issue." (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998))).

If this Court proceeds to first decide the question of personal jurisdiction over the Bank, the Court will be forced to resolve the complex question whether the facts elucidated in discovery demonstrate the Bank's "specific intent to further terrorism in the United States."  Summary Order, 779 F. App'x at 69 (holding that (unidentified) allegations of the Bank's purported specific intent "distinguish[] the present case" from those dismissed for lack of personal jurisdiction without

–12–

discovery).  The Court of Appeals indicated that the Bank's alleged support for Al Qaeda is insufficient to find personal jurisdiction, but that "in conjunction with this specific intent," the alleged support could be "'more direct and one step closer to al Qaeda' when compared to the support we have previously found inadequate."  *Id.* (quoting *O'Neill v. Asat Trust Reg.*, 714 F.3d 659, 678 (2d Cir. 2013)).

Specific intent is not only a "difficult legal concept[]" (*United States v. Golitschek*, 808 F.2d 195, 201 n.2 (2d Cir. 1986) (quoting *Liparota v. United States*, 471 U.S. 419, 433 n.16 (1985))), but it is also "usually difficult to prove" (*Clayborne v. Califano*, 603 F.2d 372, 380 (2d Cir. 1979)).  Plaintiffs assert that "the key issues of 'aiming' or 'expressly directing' [Bank employees'] actions at the United States are ones of knowledge and intent that inherently rest on inferences drawn from circumstantial evidence . . . ."  Br. for Pls.-Appellants 50-51, No. 18-cv-1201, ECF No. 127 (2d Cir. Sept. 7, 2018).  Determining specific intent will undoubtedly be a "complicated inquir[y]."  *See Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 99 (2d Cir. 2019) (explaining that in certain legislation Congress adopted "an objective jurisdictional test" specifically "to avoid complicated inquiries into intent").

In addition, the parties will face a number of challenging procedural complexities in discovery, including, at a minimum:  (i) any relevant evidence related to the Bank's intent would date from approximately two decades ago, or more; (ii) the alleged conduct took place in a foreign jurisdiction; (iii) any relevant evidence would likely be in Arabic; (iv) the Bank is strictly controlled by the local financial regulator, including as to disclosure of Bank information; and (v) the global pandemic continues to restrict coordination of the parties and their counsel.

Indeed, over the course of this multidistrict litigation, the Kingdom of Saudi Arabia, National Commercial Bank, and Saudi Binladin Group each have been subjected to "limited"

jurisdictional discovery.  Yet in each instance that "limited" discovery has lasted at least three years (or well more), expending both extensive party resources as well as judicial resources to actively oversee the discovery process and resolve discovery disputes.

For example, in March 2018, this Court ordered "limited and targeted jurisdictional discovery" as to Saudi Arabia to "proceed promptly and expeditiously."  *Ashton v. Al Qaeda Islamic Army*, 298 F. Supp. 3d 631, 651, 661 (S.D.N.Y 2018).  Yet that "limited" discovery process remains ongoing over three years later.  Over that period of "limited and targeted jurisdictional discovery," Magistrate Judge Netburn has issued at least *eighty orders, thirty-six endorsements*, and *thirty written opinions*; held *ten conferences*; received at least *fifty-eight letter motions*, *sixty oppositions and replies* to letter motions, *nineteen requests from Plaintiffs for extensions of time*, and *125 other discovery-related letters* from parties and non-parties; and entertained at least *four motions for reconsideration*.  And *this Court has entertained at least ten objections* to Magistrate Judge Netburn's opinions and orders, *issued four written decisions* stemming from discovery disputes, and *received (and granted) two requests by Plaintiffs for additional time*.

Deciding the merits of the Bank's Rule 12(b)(6) motion to dismiss now avoids the unnecessary exercise of wading through these procedural complications, potentially for years, only to eventually acknowledge that dismissal on the merits was foreordained.

## II.    THE SECOND CIRCUIT'S MANDATE DOES NOT PRECLUDE DECIDING THE MERITS FIRST

Al Rajhi Bank has established that the Second Circuit's mandate was confined to personal jurisdiction and does not address the Bank's Rule 12(b)(6) motion to dismiss for failure to state a claim.  *See* Mem. 2-3; Reply on Renewed Mot. 1-7.  This Court, therefore, should conclude that the mandate does not prevent this Court from ruling on the merits of Plaintiffs' claims.

The established rule in this Circuit is that the mandate — including the "spirit of the mandate" — controls only "matters within its compass." *Coudert Bros.*, 809 F.3d at 98 (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)). The Order correctly acknowledges an established "corollary" to the mandate rule, explaining that "where an issue was not part of the appellate decision: there, a trial court may consider the issue." Order 10 (citing *Burrell v. United States*, 467 F.3d 160, 165 (2d Cir. 2006)); *see In re Coudert Bros. LLP*, 809 F.3d 94, 98 (2d Cir. 2015) ("When the mandate leaves issues open, the lower court may dispose of the case on grounds not dealt with by the remanding appellate court.").

The Court of Appeals elaborated in *Coudert Brothers* that the scope of the "spirit of the mandate" extends to conclusions not expressly stated in the mandate but "*necessarily* implied" because they are legally necessary to effectuate the order on remand. *Coudert Bros.*, 809 F.3d at 99 (quoting *Sprague*, 307 U.S. at 168) (emphasis added); *see* Reply on Renewed Mot. 4-6 (describing factual context and reasoning of *Coudert Bros.*); *see also Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund.*, 725 F. App'x 79, 81 (2d Cir. 2018) (affirming district court's dismissal on grounds not addressed by mandate and deemed not prohibited by the "spirit of the mandate," because "[n]othing in our opinion *restricted* the district court from considering" alternative grounds (emphasis added)).

Defining the "compass" of the mandate as extending to only legally necessary implications limits the "spirit of the mandate" to avoid free-floating, indeterminate orders. Abandoning that boundary would create uncertainty and confusion among the courts and litigants, multiplying litigation over the scope of orders issued by the Court of Appeals.

Here, the Second Circuit's instructions on discovery and its silence on the Bank's pending Rule 12(b)(6) motion cannot somehow mean that "the spirit of the mandate requires that the parties

proceed to jurisdictional discovery." Order 12. Foreclosing an early decision on the merits was not legally necessary for the Court of Appeals to issue instructions about jurisdictional discovery. *See* Reply on Renewed Mot. 6.

A far more plausible explanation for the Second Circuit's treatment of personal jurisdiction and its silence regarding the merits is that the Court of Appeals strongly prefers not to address issues undecided by a district court — even if the parties ask the Court of Appeals to do so. *See Schonfeld v. Hilliard*, 218 F.3d 164, 184 (2d Cir. 2000) ("Both of these grounds were briefed by the parties below, but the district court elected not to address them. Although we are empowered to affirm a district court's decision on a theory not considered below, it is our distinctly preferred practice to remand such issues for consideration by the district court in the first instance."). Here, the Court of Appeals evidently followed its preferred practice of allowing this Court to decide first whether the question on the merits is foreordained such that the Bank's pending 12(b)(6) motion may be decided before the parties and the Court proceed to jurisdictional discovery.

Nor could the Summary Order's instructions on the appropriate scope of jurisdictional discovery suggest that the Court of Appeals considered dismissal of Plaintiffs' claims on the merits less-than-foreordained. As discussed above, whatever non-conclusory allegations of "specific intent" Plaintiffs might try to conjure from the Amended Complaint (there are none) for jurisdictional purposes, they cannot cure the deficiencies of Plaintiffs' claims on the merits, which require a different showing.

The Order, therefore, erroneously concludes that the "spirit of the mandate requires that the parties proceed to jurisdictional discovery." Order 12. Neither the mandate nor the "spirit of the mandate" prevents this Court from granting the Bank's motion and dismissing Plaintiffs' claims, with prejudice. *See* Renewed Mot. 5-8.

–16–

## III.   THIS COURT'S PRIOR PRACTICE SUPPORTS DECIDING THE MERITS NOW

The Court's previous decision in these proceedings to grant the Bank's Rule 12(b)(6) motion before resolving the issue of personal jurisdiction supports doing so here.  *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 826, 833 (S.D.N.Y. 2005), *aff'd*, 714 F.3d 118, 125 (2d Cir. 2013).  The Order ignores that decision and erroneously relies only on this Court's most recent decision in 2018 to conclude that jurisdictional discovery must proceed before deciding the merits.  *See* Order 9.  But this Court's 2018 sequencing decision is not instructive: there the Court *had* to address the law on personal jurisdiction to resolve the companion motion of NCB, which sought dismissal *only* for lack of personal jurisdiction.  *See* 2018 Decision 2. Because Al Rajhi Bank faced allegations very similar to those leveled against NCB, the Court's focus on the dispositive jurisdictional issues resulted in some judicial efficiency.  *See* 2018 Decision 3-4 (granting motions to dismiss of NCB, SBG, and Al Rajhi Bank "[f]or substantially the same reasons this Court previously dismissed NCB and SBG from this multidistrict litigation").

Further, decisions previously relied upon by this Court (*see* 2018 Decision 4 n.5) do not preclude deciding the merits first now.  In *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201 (S.D.N.Y. 2011), unlike here, the case involved novel claims.  955 F. Supp. 2d at 239 (describing contract and tort claims made more complex by "unclear" choice-of-law issues).  In *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393 (2d Cir. 2009), unlike here, the Court of Appeals was asked to "subject [the respondent] to the court's power" to enforce an arbitral award.  582 F.3d at 397-98.

Here, in contrast, deciding the merits before personal jurisdiction would not involve any novel questions and would obviate the need for years of complex, burdensome and judicially inefficient jurisdictional discovery.

## **CONCLUSION**

For the foregoing reasons, this Court should set aside the Order and decide Al Rajhi Bank's pending Rule 12(b)(6) Motion to Dismiss prior to permitting jurisdictional discovery, and should dismiss with prejudice Plaintiffs' claims against the Bank for failure to state a claim.

Dated:   April 9, 2021
       Washington, DC

Respectfully submitted,

**WHITE & CASE**

*/s/ Christopher M. Curran*
Christopher M. Curran
Nicole Erb
Matthew S. Leddicotte (admitted *pro hac vice*)
Reuben J. Sequeira
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005
Telephone:      + 1 202 626 3600
Facsimile:      + 1 202 639 9355
ccurran@whitecase.com
nerb@whitecase.com
mleddicotte@whitecase.com
rsequeira@whitecase.com

*Counsel for Al Rajhi Bank*