## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

April 20, 2021

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District Court for the S.D.N.Y.
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

  Re: *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

  Plaintiffs' Executive Committees (the "PECs") write in follow-up to the Court's orders at ECF Nos. 6611, 5326, 5314, 5305, 5258 and 5199, and submit this letter and accompanying exhibits to request that the Court enter an order pursuant to Federal Rule of Civil Procedure 37(a), compelling defendant Wa'el Hamza Jelaidan ("Jelaidan") to immediately sit for his deposition and, if he does not do so, to impose further sanctions under FRCP 37(b), including dispositive sanctions against Jelaidan.

  Defendant Jelaidan's constant evasion of his discovery obligations, unabated despite the Court's imposition of previous sanctions, dates back more than a decade. Despite unconvincing statements by Jelaidan's counsel, wrapped in qualifying language, that Jelaidan may appear for deposition in Mid-August of this year, he has consistently demonstrated no intention of complying with the Court's December 4, 2019 order [ECF No. 5326] to promptly sit for his deposition following the Court's February 2021 Order [ECF No. 6611] denying his objections to the Court's text-only order [ECF No. 5314]. Jelaidan's ongoing refusal to respond to matters in this litigation has previously been met with sanctions [*See* ECF No. 2789] and the PECs maintain he has demonstrated, through his intentional defiance of prior sanctions, that lesser sanctions are almost certain to be futile and unlikely to cause him to comply with this Court's orders.

  Accordingly, the PECs respectfully request that the Court compel Defendant Jelaidan to appear for his deposition, consistent with this Court's previous orders, on an agreed-upon date between June 14, 2021, and July 16, 2021. Furthermore, given his long history of consistent noncompliance with discovery, Plaintiffs ask that the Court's order provide that, in the event that Jelaidan fails to comply and appear for his deposition as ordered, the Court will, on notice by Plaintiffs,

enter an order striking his Answer and will recommend that the District Court enter default and a default judgment against Jelaidan. Plaintiffs should not be obligated to chase Jelaidan any further to secure his compliance with his obligations as a defendant in these MDL proceedings.

## Summary of Defendant Jelaidan's Long History of Discovery Abuses

As this Court has previously observed, "[t]he history of Jelaidan's noncompliance with court orders is long and convoluted" [ECF No. 4138 at 1], dating back more than a decade. His refusal to comply with discovery orders has been constant since discovery began. On October 17, 2011, Plaintiffs sought documents responsive to Plaintiffs' discovery requests and pursuant to this Court's January 21, 2011 Order. [*See* ECF No. 2700 at Exhibit A]. At the close of a hearing on November 16, 2011, the Court granted Plaintiffs' request and ordered Jelaidan to produce the documents Plaintiffs requested [*see, e.g.*, Tr. of Nov. 16, 2011 Hr'g, at 12:13-23; 33:19-25]. After Jelaidan failed to comply with the Court's order to produce and after he was also unresponsive to Plaintiffs' supplemental requests, Plaintiffs filed another motion on January 30, 2013, asking the Court to order Jelaidan to immediately produce certain documents and requesting imposition of sanctions [ECF No. 2700].

On October 28, 2013, the Court issued its Memorandum Decision and Report and Recommendation, wherein Judge Maas accurately described Jelaidan's failure to comply with discovery orders as "evidenc[ing] a continued unwillingness to participate fairly in discovery" and characterized Jelaidan's conduct "as proceeding in bad faith." [ECF 2789 at 9]. In summarizing Jelaidan's non-compliance, Judge Maas noted that Jelaidan had "not made good faith efforts to satisfy his discovery obligations," *id*. at 14, was "less than forthcoming," *id*, and that he had "willfully disregarded his discovery obligations and acted in bad faith. *Id* at 15. Ultimately, Judge Maas recommended imposition of adverse inference sanctions and that Plaintiffs be entitled to recover the reasonable fees and costs. *Id*. at 16. Judge Daniels adopted this report and recommendation on April 23, 2014 [ECF No. 2851]. Judge Maas determined the reasonable fees and awarded them on October 23, 2015 [ECF No. 3073]; the Court denied defendant Jelaidan's motion for reconsideration of the Fee Decision on December 2, 2015 [ECF No. 3139].

The award was finalized on March 9, 2016, and Jelaidan was required to comply with the Court's order within thirty days [ECF No. 3228]. After noting that Plaintiffs could not accept payment from Jelaidan, a U.S. designated global terrorist, without a license granted by the U.S. Treasury Department Office of Foreign Assets Control ("OFAC"), the Court ordered Jelaidan to inform the Court of steps he took to comply with this Court's order within thirty days. *Id.* The Court later found Jelaidan failed to comply with the Court's order to provide updates and ordered him to provide regular updates on his efforts to obtain the OFAC license and a timeline for payment by November 4, 2016, with regular updates to follow thereafter [ECF Nos. 3372, 3380]. Predictably, Jelaidan did not obtain the OFAC license within a reasonable time, nor did he pay the related sanctions for several years.

Plaintiffs filed additional motions for sanctions in October 2017 [ECF No. 3742] and May 2018 [ECF No. 3988], noting that Jelaidan had still not complied with the seven preceding orders [ECF Nos. 2789, 2853, 3073/3087, 3139, 3228, 3372, 3380] directing Jelaidan to pay monetary sanctions. On August 30, 2018, the Court denied Plaintiffs' October 2017 motion for sanctions, expressing a reluctance to impose additional sanctions for Jelaidan's actions as to which sanctions had already been imposed, and that the Court was unconvinced that additional sanctions would cause

Jelaidan to be more forthcoming in discovery [ECF No. 4138 at 9]. The Court also required Jelaidan to provide the Court with responses to specific inquiries of the Court. [ECF No. 4138]. On March 31, 2019, the Court denied Plaintiffs' May 2018 motion for sanctions without prejudice to renew [ECF No. 4464 at 9].

**Jelaidan's Defiance of this Court's Deposition Order (ECF No. 5179)**

The present motion is predicated on conduct distinct from the conduct for which the Court has previously sanctioned Jelaidan – namely, it is premised on his continued refusal to comply with the Court's orders to sit for his deposition. However, Jelaidan's long history of continued defiance cannot be ignored, and must be factored into considering that no lesser sanction is available, short of the dispositive sanctions requested, to address his continued contempt toward the Court and Plaintiffs.

Even considering only the period from the Court's November 2019 Orders [ECF Nos. 5258, 5305] setting late 2019 dates for his court-ordered deposition, Jelaidan has now avoided sitting for his deposition for well more than a year. In May 2019 (almost two years ago), the Court ordered Jelaidan to appear for his deposition by July 31, 2019, or move for a protective order by May 31, 2019 [ECF No. 4532]. On June, 10, 2019, the Court directed Jelaidan to sit for deposition by October 31, 2019 [ECF No. 5179]. Jelaidan failed to confirm dates he would be available for deposition. The PECs, through communications with Jelaidan's counsel Martin McMahon, requested that the deposition take place by November 13, 2019, which this Court directed on October 8, 2019 [ECF No. 5199].

Jelaidan requested, and the Court granted, an extension of the deadline to complete his deposition. [ECF No. 5258, Nov. 1, 2019]. His deposition was then scheduled to be completed no later than November 27, 2019. Jelaidan then affirmed to the Court that he agreed to terms that prohibited attendance at his deposition by non-U.S. counsel. [ECF No. 5255.] However, just days before his deposition, he tried to renege on the agreement and asked Magistrate Judge Netburn to amend the November 1 Order to allow his local Saudi counsel to attend in contravention with the agreement and the Court's order. [ECF No. 5301]. The Court denied that request, underscoring that Jelaidan had already *expressly agreed* that his deposition cannot be attended by any person who is not U.S. Counsel [*See* ECF No. 5255 and ECF No. 5314].

On November 21, 2019, Jelaidan moved to stay his deposition [ECF No. 5301]; then on November 22, 2019, in a separate application, Jelaidan's counsel filed an emergency motion to stay, explaining that a death in his family would prevent him from attending Jelaidan's deposition. The Court granted the emergency motion and adjourned the deposition *sine die*, directing the parties to confer regarding a new date by December 4, 2019. [ECF No. 5305].

Defendant Jelaidan filed an Objection [ECF No. 5306] to the Court's November 22 Order [ECF 5314], prohibiting Jelaidan's Saudi attorney from attending the deposition. Jelaidan requested that the Court stay its Order at ECF No. 5305 (requiring the parties to meet and confer on a new date) until Judge Daniels ruled on this objection. On February 4, 2021, Judge Daniels overruled and denied this objection [ECF No. 6611]

Plaintiffs have since conferred with Jelaidan's counsel, who has insisted – without explaining the need for Jelaidan's extended availability blackout – that Jelaidan is unavailable for deposition until mid-August, after the close of discovery. Jelaidan's counsel has also continued to insist, contrary to

Jelaidan's earlier agreement and this Court's previous orders, that his Saudi counsel must be permitted to attend the deposition.

Even in the discourse to reschedule his deposition, Jelaidan has been combative, has shown no sign of adjusting his combativeness, and has raised further doubt as to whether he will participate in the Court's proceedings in any manner. For example, communicating indirectly through messages relayed to his counsel through a Saudi lawyer not admitted in the U.S. or in this MDL, Jelaidan has insisted that specific limited dates for his availability were given on a "take or leave" basis and that he "will not be pushed around nor be intimidated anymore."[1] Although Plaintiffs have advised Jelaidan's counsel that the Court has afforded the parties up to 14 hours to question witnesses testifying through a translator,[2] Jelaidan continues to insist that the length of his deposition be confined to the minimum of the federal rules and that any longer will be "unacceptable."[3] Although Plaintiffs have advised Jelaidan's counsel that the Court's order and the Court deposition protocols already address his request for presence of an additional translator at his deposition, Jelaidan also insists that his own translator be permitted to attend with him, at Plaintiffs' expense, and that he will not "accept any language to be inserted in the deposition unless it is verified and acceptable by him and his translator."[4] As recently as February 17, 2021, Mr. McMahon was still inquiring of Jelaidan as to whether Jelaidan would comply with the Court's order and sit for his deposition "without Mr. Alim [a lawyer in Saudi Arabia, but not admitted in the U.S. and not appearing in this MDL] in the room?"[5]

The combativeness, asserted conditions, and questioning of Jelaidan's resolve to comply with the Court's order to appear, suggest that Jelaidan is likely to continue his long path of noncompliance.

**Legal Basis**

In the absence of a discovery order, courts "may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-107 (2d Cir.2002) (quoting *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 135–36 (2d Cir.1998)). Parties must attend their own depositions and "[t]he court where the action is pending may, on motion, order sanctions if . . . a party . . . fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. Proc. 37(d)(1)(A)(i).

Rule 37 governs the Court's authority to sanction parties who fail to comply with discovery orders. Rule 37(b) affords courts "broad discretion in fashioning an appropriate sanction" *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir.2002). Further, "[s]uch sanctions may include . . . orders deeming certain facts established; permitting an adverse inference instruction;

---

[1] Exhibit A to Declaration of Robert T. Haefele ("Haefele Decl."), April 8, 2021 email from Richard Sandza to Robert Haefele.

[2] Tr. of May 21, 2020 Hr'g at 143 (the Court finding that, where translations in depositions are such that questions and answers are staggered, not real-time translation, "it's going to have to be double (the time) because you're asking two questions. You're asking a question in English and then a question in Arabic.")

[3] Exhibit B to Haefele Decl., March 2, 2021 email from Richard Sandza to Robert Haefele.

[4] *Id.*

[5] *See* Exhibit C, to Haefele Decl., "Memo to Robert Haefele and associates" at point 8(c), sent as an attachment to Richard Sandza's February 17, 2021, email (Exhibit D to Haefele Decl.).

striking pleadings; prohibiting the "disobedient" party from making specific claims or introducing certain matters into evidence; dismissing a claim or the entire action or granting default judgment against the disobedient party; or entering an order of contempt." *Id.*; Fed. R. Civ. P. 37(b).

Magistrate Judge Maas previously outlined the legal analysis governing how to determine the proper sanction for a party's failure to produce evidence. [*See* ECF No. 2789 at 16]. To determine proper sanctions for a party's failure to produce evidence, courts should "weigh, among other factors, the harshness of the sanctions, the extent to which the sanctions are necessary to restore the evidentiary balance upset by incomplete production, and the non-disclosing party's degree of fault." ECF No. 2789 (quoting *Linde v. Arab Bank, PLC,* 706 F.3d 92, 113 (2d Cir. 2013)). Magistrate Judge Maas found that, in 2013, Wa'el Jelaidan had acted in bad faith, and that commensurate with that bad faith, severe sanctions were appropriate. See ECF No. 2789 at 16, stating "[w]here, as here, 'the failure to comply with a court order is due to willfulness or bad faith,' severe sanctions are justified." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991). Magistrate Judge Maas also pointed out that sanctions serve a "punitive as well as a remedial purpose. *See* ECF No. 2789 (citing *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 890 (S.D.N.Y. 1999)).

Given that the severity of the previously-imposed sanctions, including an adverse inference instruction, did not sufficiently encourage Jelaidan to cease his constant evasion of his discovery duties, only the most severe penalties are now appropriate.

Thus, the PEC respectfully requests that this Court compel defendant Wa'el Hamza Jelaidan to sit for his deposition on a date between June 14, 2021 and July 16, 2021, to be determined in a meet and confer among the PECs and Jelaidan's U.S. counsel, and, should he not comply, to strike his Answer and enter default judgment against him, as is appropriate under FRCP 37(b). In the alternative, Plaintiffs request that if the deposition is permitted to take place in August 2021, that Jelaidan be ordered to appear and subject to the above described default sanction should he fail to appear.

Respectfully submitted,

| COZEN O'CONNOR | MOTLEY RICE LLC |
|---|---|
| By: /s/ *Sean P. Carter* | By: /s/ *Robert T. Haefele* |
| SEAN P. CARTER | ROBERT T. HAEFELE |
| COZEN O'CONNOR | MOTLEY RICE LLC |
| One Liberty Place | 28 Bridgeside Boulevard |
| 1650 Market Street, Suite 2800 | Mount Pleasant, SC 29465 |
| Philadelphia, Pennsylvania 19103 | Tel.: (843) 216-9184 |
| Tel.: (215) 665-2105 | Email: rhaefele@motleyrice.com |
| Email: scarter@cozen.com | |
| *For the Plaintiffs' Exec. Committees* | *For the Plaintiffs' Exec. Committees* |

The Honorable Sarah Netburn
April 20, 2021
Page 6

---

KREINDLER & KREINDLER LLP

By: /s/ *Andrew J. Maloney*
    ANDREW J. MALONEY
    KREINDLER & KREINDLER LLP
    750 Third Avenue
    New York, New York 10017
    Tel.: 212-687-8181
    Email: amaloney@kreindler.com

*For the Plaintiffs' Exec. Committees*

cc:    The Honorable George B. Daniels, via ECF
       All Counsel of Record via ECF