# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re Terrorist Attacks On September 11, 2001 | ) <br> ) <br> ) <br> ) <br> ) | 03 MDL 1570 (GBD) (SN) <br><br> **ORAL ARGUMENT REQUESTED** |

This document relates to:

*Estate of John P. O'Neill, Sr., et al. v. Al Baraka Investment & Development Corp. et al.*, 04-cv-1923 (GBD) (SN)

### REPLY IN SUPPORT OF *O'NEILL* PLAINTIFFS' RULE 72(b) OBJECTIONS TO THE MAGISTRATE JUDGE'S JANUARY 22, 2021 REPORT & RECOMMENDATION

Jerry S. Goldman, Esq.
Jeffrey E. Glen, Esq.
Bruce Strong, Esq.
Anderson Kill P.C.
1251 Avenue of the Americas
New York, NY  10020
(212) 278-1000

Attorneys for Estate of
John P. O'Neill, Sr., et al.

## **TABLE OF CONTENTS**

**Page**

ARGUMENT ........................................................................................................................................3

I. The *al Baraka* Defendants Distort the Standard of Review. .........................................................3

II. The Court Must Consider *De Novo* Whether to Certify a Liability-Only Issue Class to Protect the Rights of 9/11 Victims and Their Families. ................................................................4

    A. Defendants Do Not Dispute that Most Issues in this Case Can Be Resolved on a Wholesale Basis for All Class Members But Continue to Maintain Wrongly that Differing Statutes of Limitation in Three States and Damages Predominate. ...........................................................................................................5

    B. A Class Protects Thousands Without the Need for Renewed Motion Practice, New Complaints, New Service, or More Discovery. .......................................8

    C. The O'Neills Satisfy Rule 23(a)'s Numerosity, Typicality and Adequacy Requirements. ..............................................................................................................10

CONCLUSION ..................................................................................................................................10

i

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................................................7

*Basso v. New York Univ.*,
    363 F. Supp. 3d 413 (S.D.N.Y. 2019)......................................................................................4

*Brohan on Behalf of Brohan v. Volkswagen Mfg. Corp. of Am.*,
    97 F.R.D. 46 (E.D.N.Y. 1983) .................................................................................................6

*Coco v. Inc. Vill. of Belle Terre*,
    233 F.R.D. 109 (E.D.N.Y. 2005) .............................................................................................9

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)...................................................................................................................8

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968) ................................................................................................4, 8

*Grosshandels-Und Lagerei-Berufsgenossenschaft v. World Trade Ctr. Props., LLC*,
    435 F.3d 136 (2d Cir. 2006) ................................................................................................5, 6

*Guy v. MTA New York City Transit*,
    2012 WL 4472098 (E.D.N.Y. Sept. 26, 2012) ........................................................................7

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015) ....................................................................................................7

*In re JPMorgan Chase & Co. Sec. Litig.*,
    2015 WL 10433433 (S.D.N.Y. Sept. 29, 2015) ......................................................................4

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    299 F. Supp. 3d 430 (S.D.N.Y. 2018)......................................................................................7

*In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*,
    241 F.R.D. 435 (S.D.N.Y. 2007) .................................................................................... 5, 7, 8

*In re Nassau Cty. Strip Search Cases*,
    461 F.3d 219 (2d Cir. 2006) ................................................................................................4, 8

*Neumeier v. Kuehner*,
    31 N.Y.2d 121 (1972) ..............................................................................................................6

# TABLE OF AUTHORITIES
### *(continued)*

Page

*In re Omnicom Grp., Inc. Sec. Litig.*,
  2007 WL 1280640 (S.D.N.Y. Apr. 30, 2007) ................................................................. 9

*Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*,
  277 F.R.D. 97 (S.D.N.Y. 2011) .................................................................................. 10

*Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n.*,
  324 F. Supp. 3d 387 (S.D.N.Y. 2018) ........................................................................... 7

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015) ............................................................................................ 8

*In re Terrorist Attacks on September 11, 2001*,
  741 F.3d 353 (2d Cir. 2013) .......................................................................................... 1

**Statutes**

Anti-Terrorism Act, 18 U.S.C. § 2333 ................................................................... 2, 6, 7

CPLR 202 ........................................................................................................................ 6

Federal Rule of Civil Procedure 23 ...................................................................... Passim

Federal Rule of Civil Procedure 72(b) .......................................................................... 7

**Other Authorities**

Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 3070.2 (3d ed.) ................................. 3

A year from now, undersigned counsel will receive a call from a 9/11 widow. The caller will describe how she was on the phone with her husband right after the planes hit the World Trade Center. She will describe running to the TV to see the latest news reports. She will describe how her husband tried to comfort her—emergency personnel were on the way. He would be fine.

She will then describe watching the towers collapse on live TV and the phone line going dead. She will describe the phone calls, letters, and emails that bombarded her and her young children in the aftermath of the attacks, and how she decided to relocate her family and try to start afresh. She will say those years were a blur. She had no idea about the ongoing 9/11 litigations until a few weeks earlier when she happened to read a news article, and she wants to get involved so that her husband's death is not the end of his story.

I know that I will receive this call because my staff, co-counsel, and I have received thousands of similar calls since 2018. The caller may be a spouse, child, parent, or sibling; may have lost a loved one in New York, Virginia, or Pennsylvania; and may or may not speak English. The victim may have been a first-responder, banker, clerical worker, military officer, or dishwasher. All the caller wants to know is—How can I participate? The Court's ruling on the pending certification motion may determine what I tell them. If this Court denies certification, they may not have their day in court, even while cases for thousands of others, with identical allegations, proceed.

That is the purpose of the class—to bring the entire 9/11 community into this MDL without disparate treatment to the greatest extent allowed under applicable law. Unfair and arbitrary distinctions within the 9/11 community are precisely what lead to *In re Terrorist Attacks on September 11, 2001*, 741 F.3d 353 (2d Cir. 2013) where the Second Circuit reversed this Court because "inconsistent results for victims of the same incident pose[d] a unique problem of unfairness." The Court should grant class certification to prevent the potential for inconsistent and inequitable results between absent class members and 9/11 family members already in suit.

docs-100377938.1

As to the specific objections raised by the O'Neills to the Magistrate Judge's Report & Recommendation, Defendants fail completely to respond to the principal one—that the Magistrate Judge erred by not considering whether to certify a liability-only class. This Court must decide *de novo* whether to certify a liability-class under Rule 23.

Second, Defendants claim that Plaintiffs "barely grapple" with differences in common law statutes of limitation between Virginia, Pennsylvania, and New York and their effect on the predominance analysis. But (1) the choice-of-law analysis is actually as simple as the O'Neills explain it, as has already been explained by the Second Circuit; (2) the Court would have to analyze these exact statute of limitations issues anyway on a wholesale basis with or without a class; (3) the facts needed to undertake any choice-of-law analysis are already included in full, in the Complaint; (4) the overarching federal causes of action under the Anti-Terrorism Act available to victims who died in all three states predominate over their state law claims; (5) there is no reason to compromise the claims of thousands of class members solely because Defendants may have a valid common law statute of limitations defense against a small subset; and, most critically, (6) there are multiple other complex and common issues that have been and will need to be resolved on a wholesale basis that are generally applicable to all plaintiffs. Defendants fail to persuasively rebut any of these arguments—preferring instead to chase rabbits down rabbit holes and ignore the big picture.

Third, Defendants essentially argue that class denial will improve case management because thousands of claims will disappear, thus freeing judicial and party resources. That approach is wrong. They argue that an MDL is superior to a class, even though thousands of claims could vanish within this MDL without a class. They similarly argue that if subclasses were needed (the O'Neills reiterate that subclasses are not necessary), that would complicate the case. But consider the alternative of either thousands potentially losing their right to sue or an influx of new lawsuits, motions and discovery that could be avoided from a certification order. Defendants cite the desirability of

individual control of the litigation as reason to deny class certification. But if individual claims were time-barred, there would be no new suits at all against these defendants.

Fourth, regarding the typicality and commonality class factors, Defendants identify a "swirl" of legal issues applicable to the O'Neills but not other class members. The two they identify are differing statute of limitations between Pennsylvania and Virginia on the one hand and New York on the other, and the O'Neill personal representative signing a limited waiver to participate in the VCF. Regarding both issues, the O'Neills are prototypical class representatives. John P. O'Neill, Sr. died in New York and the O'Neills participated in the VCF, putting them in the identical position as the overwhelming majority of class members with respect to both issues. Undersigned counsel and co-counsel on the PEC both represent families of victims killed in Virginia and Pennsylvania and people who did not participate in the VCF. There is zero concern that absent class members' rights would be compromised, and undersigned counsel would gladly add class representatives who did not participate in the VCF or who lost a loved in Virginia or Pennsylvania should the Court desire. Surely that is preferable to denying class certification and compromising the claims of thousands based on the unfounded fear that the current class representatives *may* (but won't) in the future compromise the claims of absent class members.

For these reasons, as discussed below, the Court should certify a liability-only class.

## ARGUMENT

### I.     The *al Baraka* Defendants Distort the Standard of Review.

Defendants agree that the standard of review is *de novo*, Response ("Resp.") at 7, which "means the district court must consider the matter referred to a magistrate judge anew, as if it had not been heard before and as if no decision previously had been rendered." Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 3070.2 (3d ed.). They do not dispute that the district judge may "accept, reject, or modify the recommended disposition," "receive further evidence," or "return the matter to the

magistrate judge with instructions." Objections ("Obj.") at 8. They take issue with binding Second Circuit precedent regarding the judicial preference in favor of certification with more scrutiny to decisions denying class certification. Resp. at 7 (citing *In re Petrobras Sec.*, 862 F.3d 250, 260 n.11 (2d Cir. 2017)). Selectively quoting from a footnote, they claim that there is no longer such a preference. *Id.* But that same footnote states that the panel was not displacing existing Second Circuit law and subsequent cases continue to rely on the binding precedent that the standard of review is more deferential toward a grant of class certification than a denial. *Id.* ("we need not decide the issue here"); *Basso v. New York Univ.*, 363 F. Supp. 3d 413, 420 (S.D.N.Y. 2019) (applying standard). While Defendants claim there is "no . . . reasoning or justification" for such a preference, this Court, and the Second Circuit have both articulated the reason as follows: "[I]f there is to be an error made, let it be in favor of and not against the maintenance of the class action, for it is always subject to modification . . . later.'" *In re JPMorgan Chase & Co. Sec. Litig.*, 2015 WL 10433433, at *2 (S.D.N.Y. Sept. 29, 2015) (Daniels, J.) (quoting *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968)); *see also Green*, 406 F.2d at 301 (Recommending district court "make use of the freedom afforded it by Rule 23 to manage the litigation efficiently and fairly, including the creation of any necessary subclasses" and recognizing that this might "place additional burdens on judges but the alternatives are either no recourse for thousands" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake."). Defendants' suggestion of a different standard is wrong.

**II.   The Court Must Consider *De Novo* Whether to Certify a Liability-Only Issue Class to Protect the Rights of 9/11 Victims and Their Families.**

Defendants fail to rebut the order of operations a court "must" engage in when presented with a class certification motion under Rule 23. "As the rule's plain language and structure establish, a court *must first* identify the issues potentially appropriate for certification 'and . . . then' apply . . . subsection (b)(3) and its predominance analysis." *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006) (first ellipse in original) (emphasis added). Instead, Defendants cite cases

4

discussing damages as a factor when analyzing whether the case *as a whole* should be certified as a class after the court already concluded that a liability-only class was not warranted. *See* Resp. at 13 (citing cases). As courts "must" analyze whether to certify a liability-only issue class, this Court "must" do so here as well.

> **A.      Defendants Do Not Dispute that Most Issues in this Case Can Be Resolved on a Wholesale Basis for All Class Members But Continue to Maintain, Wrongly, that Differing Statutes of Limitation in Three States and Damages Predominate.**

The O'Neills have argued repeatedly that pleading standards, jurisdiction, agency, causation, intent, theories of liability, and a host of discovery disputes are all common issues susceptible to generalized proof in this case. Defendants never challenge this, and they cannot because it would fly in the face of 17+ years of litigation—almost 7,000 docket entries—and this Court's own experience with issues in the case. The Magistrate Judge similarly did not disagree. For these reasons, the leading Southern District case, correctly cited repeatedly by the Magistrate Judge, concludes that certification is generally appropriate in cases like this one, "involving claims arising out of a mass accident (such as a plane crash or a building collapse) in which causation may be proven on a class-wide basis. . ." *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 241 F.R.D. 435, 442 (S.D.N.Y. 2007). This argument alone should convince the Court that common issues predominate.

Yet Defendants continue to harp on the six-month difference in the statute of limitations in New York on the one hand and Pennsylvania or Virginia on the other, as being so pervasive as to "overwhelm" the other issues that have been litigated for 17+ years. That makes no sense. And even the statute of limitations issue is readily resolvable *en masse*, for all plaintiffs, by this Court, with or without a class, using already-established Second Circuit precedent to resolve the choice-of-law issue. *See Grosshandels-Und Lagerei-Berufsgenossenschaft v. World Trade Ctr. Props., LLC*, 435 F.3d 136, 137 (2d Cir. 2006). Defendants contend that the analysis is actually more complicated, but other than

their *ipse dixit* and citing New York's straightforward borrowing statute, do not say how.[1] The O'Neills included all information the Court would need to complete the choice-of-law analysis in their Complaint, which lists the place of death and domicile of every 9/11 victim, FCC, Ex. A, pp. 1-70, and the Court would have to adjudicate the statute of limitations issue with or without a class in the MDL anyway.[2]

Significantly, Defendants exaggerate the number of class members with potentially non-viable claims, estimating the number to be 1,438. Resp. at 13. But Defendants fail to complete their own analysis. Of those 1,438 claims, only about 27% are included in the Class because about 73% are already represented by co-counsel. Goldman Aff. at ¶¶ 3, 8 (ECF 5754). Further, as only 8.5% of those killed on 9/11 were non-citizens, Goldman 2nd Suppl. Dec. at ¶ 6 (ECF 6645), the rest, 91.5%, would all at least have viable federal Anti-Terrorism Act ("ATA") claims. Completing

---

[1] While *Grosshandels* soundly navigates the choice-of-law analysis in a few lines, to the extent this Court desires a deeper dive covering all potential factual permutations, here it is, in a single footnote. If a New York resident dies in New York, New York law, i.e. the place of injury, would apply here. *See Neumeier v. Kuehner*, 31 N.Y.2d 121, 128 (1972) (If law is "conduct regulating" apply law of place of injury. If law is "loss-allocating" and plaintiff and defendants do not reside in same domicile, which is the case here, generally use place of injury); *Grosshandels*, 435 F.3d at 137 ("Given that wrongful death and survival actions relate to loss allocation, . . . and that the parties are domiciled in a number of different states, the presumption is that New York's rules apply."). If a non-resident of New York dies outside New York, apply the borrowing statute of where the cause of action "accrued", which in this case would be the place of injury (either Virginia or Pennsylvania). *See* CPLR 202. If a non-resident of New York dies in New York, generally apply New York law, i.e. the place of injury. *See Neumeier*, 31 N.Y.2d at 128 (see above analysis). If a New York resident dies outside of New York, even though the cause of action may "accrue" outside New York, a New York statute of limitations would apply. *See, e.g., Brohan on Behalf of Brohan v. Volkswagen Mfg. Corp. of Am*., 97 F.R.D. 46, 48 (E.D.N.Y. 1983) (citing CPLR 202 (borrowing statute)). Under this final permutation, the only one that potentially does not apply the place of injury rule, New York law would apply. This final permutation would potentially apply to 9 families, 7 of whom are already represented by other counsel as to these Defendants, and 2 of whom are members of the Class. *See* First Consolidated Complaint ("FCC"), Ex. A (ECF 1570), pp. 62-70. The *Grosshandels* place of injury analysis applies with the exception of two families in the Class where New York law would apply. Undersigned counsel had intended to include this last point about the two (out of 800, Goldman Aff. at ¶ 8 (ECF 5754)) families in the original Objections but inadvertently omitted it and apologizes for the omission. The basic point remains that the entire choice-of-law analysis is straightforward and can be adjudicated on a wholesale basis.

[2] Perhaps realizing their arguments on the merits fail, Defendants claim the O'Neills should not be permitted to make a substantive choice-of-law analysis before this Court because that would be a "new argument" not presented to the Magistrate Judge. Resp. at 12. But Defendants presented a substantive (and needlessly complex and incorrect) choice-of-law analysis before the Magistrate Judge, citing much of the same law Plaintiffs have here, and Plaintiffs responded before the Magistrate Judge that a choice-of-law analysis was actually "simple" and would only require the Court to examine a single exhibit already attached to the Complaint. Reply at 6. Plaintiffs now explain exactly how simple the analysis really is under the law Defendants previously cited (which plaintiffs would have gladly done during oral argument that did not occur due to COVID-19).

Defendants' analysis, there would be an estimated 48 class members, out of at least 5,130, Goldman Aff. at ¶ 11, who potentially have neither viable state nor federal claims, less than 1% of the whole proposed class.[3] This further highlights that the one difference Defendants have identified between certain class members in this case is a non-issue for the overwhelming majority of class members.

Defendants also misrepresent the state of the law regarding certifying mass-tort cases. They quote two 1975 cases, while ignoring more recent authority explaining exactly why those cases no longer apply. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (Noting trend "since the late 1970's" certifying mass tort cases); *In re MTBE*, 241 F.R.D. at 442 ("mass accidents are suitable for class-wide adjudication"). They further cite to easily distinguishable cases for the proposition that "nationwide" classes involving extremely fact-intensive individual analyses are not appropriate for certification. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430 (S.D.N.Y. 2018) (reliance and state law standards differed across 52 jurisdictions, multiple individualized affirmative defenses, and damages in complex LIBOR manipulation case); *Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*, 324 F. Supp. 3d 387 (S.D.N.Y. 2018) (mortgage-backed securities case would require court to identify "numerous beneficial owners and assignors" of certificates issued by trusts at time of breach); *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128 (2d Cir. 2015) (evidence needed of specific information provided to each class member and advice given related to legal malpractice). These cases have no applicability here.[4]

---

[3] Further limiting this number, U.S. citizens related to non-U.S. citizens who died on 9/11 may have viable ATA claims. Also those who died at the Pentagon were overwhelmingly U.S. citizens, including, for example, all of Anderson Kill's Pentagon clients.

[4] Defendants also repeat arguments regarding the VCF waiver and ATA standing issues to rebut a finding of predominance that Judge Netburn expressly rejected. Defendants failed to object to the Magistrate Judge's findings with respect to these issues under Rule 72(b). Therefore her findings are reviewed for clear error. *See, e.g., Guy v. MTA New York City Transit*, 2012 WL 4472098, at *1 (E.D.N.Y. Sept. 26, 2012) (district court must review *de novo* "those portions of the report or specified proposed findings or recommendations to which [an] objection is made. . . . Where no objection to a Report and Recommendation has been timely made a district court need only satisfy itself that that there is no clear error on the face of the record.") (internal citations omitted). For the reasons discussed in the O'Neills' briefing before the Magistrate Judge, her findings with regard to these issues were correct.

Finally, with regard to damages, Defendants claim individualized damages rebut a finding of predominance. But the O'Neills do not seek certification of a damages class at this time and therefore any differences in damages across class members are irrelevant here. *See In re MTBE*, 241 F.R.D. at 448 ("When liability can be resolved . . . that applies to the whole class, and the only individual question left to resolve relates to damages, class certification is warranted").[5]

### B. A Class Protects Thousands Without the Need for Renewed Motion Practice, New Complaints, New Service, or More Discovery.

Defendants do not dispute that a certified class would preserve thousands of claims. This fact alone should color the Court's entire analysis. *Green*, 406 F.2d at 301 (district court should "make use of the freedom afforded it by Rule 23 to manage the litigation efficiently and fairly, including the creation of any necessary subclasses" when the alternative is "no recourse for thousands"); *In re Nassau Cty. Strip Search Cases*, 461 F.3d at 229 (without a class, "thousands . . . likely never will know that defendants violated their clearly established constitutional rights").

Defendants cite the existence of the MDL as proof that a class is not a superior means to litigate this case but concede that thousands will potentially lose their right to sue without a class. They feign confusion over why the O'Neills defined the class to exclude those already represented by counsel as to these defendants. But when the stated goal of class certification here is to preserve claims, any broader class definition, that may needlessly elicit opt outs from those with already-existing cases against these defendants, is unnecessary. Defendants correctly point out that certifying this narrower class has the effect of bringing all 9/11 families into the MDL but not necessarily the *O'Neill* case specifically, but that is exactly the idea.

---

[5] Even if damages played a more significant role in a liability-only class certification analysis, Plaintiffs would only need to show that damages "are capable" of class-wide resolution. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013); *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015). As discussed in Plaintiffs' Objections, this Court has already endorsed damages models for thousands of these same class members as to other defendants in this MDL, as did the VCF. Goldman Aff. at ¶ 44; Goldman Supp. Dec. at ¶ 5 (ECF 6064); Order of Magistrate Judge Maas, dated July 30, 2012 (ECF No. 2618).

Defendants claim that the Court would need to create a number of subclasses to manage the case, overly complicating matters. Blind are they to the fact that co-counsel on the Plaintiffs' Executive Committee have litigated their cases for 19+ years representing families from Virginia, Pennsylvania, and New York; non-citizens and citizens; and VCF participants and non-VCF participants. What is the difference between co-counsel's (and undersigned counsel's) representation of these families and the proposed *O'Neill* Class? And Defendants fail to grapple with the alternative—new complaints, new service, new motion practice, and new discovery if certification is denied for those class members who wish to preserve their claims against these defendants.

Regarding the logistics of notifying absent class members, Defendants offer no response to Plaintiffs' argument that there are many ways to provide notice, and that any notice option is superior to allowing claims to vanish. They answer by simply guessing that no one will respond. Resp. at 18. But given the hundreds of new clients who continue to call undersigned counsel without even receiving a notice, their guess is wrong.[6] Surely the thousands who have not yet called should have the opportunity to receive notice and participate in any resolution to this case. Plaintiffs had no way to know that the Magistrate Judge would erroneously assume all 9/11 family members already knew about the case, especially given that undersigned counsel has filed 22 new cases on a rolling basis against Iran in this MDL for 2700+ new clients since summer 2018.

Finally, Defendants half-heartedly argue, without factual support, that absent class members would want individual control of their claims, so class certification ought to be denied. Resp. at 21. Defendants ignore that if class certification were denied, new claims against these defendants may be time barred, precluding many from filing suit in the first place. Defendants' concerns are further eroded because the PEC has steered this case on a wholesale basis for 17+ years for all plaintiffs.

---

[6] It was also incorrect for the Magistrate Judge to consider notice issues *sua sponte* as part of the class certification analysis as typically that issue is tabled until *after* certification. E.g., *In re Omnicom Grp., Inc. Sec. Litig.*, 2007 WL 1280640, at *10 (S.D.N.Y. Apr. 30, 2007); *Coco v. Inc. Vill. of Belle Terre*, 233 F.R.D. 109, 116 (E.D.N.Y. 2005).

The false narrative Defendants advance, that absent class members have deliberately chosen not to participate in this MDL, is overwhelmingly not the case. Goldman 2nd Suppl. Dec. at ¶¶ 2-3. And even if individual control here were desirable, because the O'Neills only seek to certify a liability class at this time, class members would regain individual control right when individual damages issues could emerge.

### C. The O'Neills Satisfy Rule 23(a)'s Numerosity, Typicality, and Adequacy Requirements.

With regard to numerosity, Defendants do not meaningfully dispute that a class of at least 5,130 easily meets the presumptive threshold. Neither they nor the Magistrate Judge explain how the "streamlined" process applicable only to cases against Saudi Arabia, Sudan, and Iran, with per-complaint plaintiff limits of 100, rebuts this presumption or even remotely helps "streamline" filing suit for 5000+ class members.

Regarding the typicality and adequacy inquiries, which overlap, *Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. 97, 109 (S.D.N.Y. 2011), Defendants contend principally that the statute of limitations and VCF waiver issues are "unique" to the O'Neills and therefore disqualify them from serving as class representatives. But the opposite is true. These issues are common to almost all class members, and the myriad of other issues identified above, *see supra* page 5, apply *identically* across all class members. Undersigned counsel can easily add class representatives from their many existing clients if the Court were ever concerned that the O'Neills are not adequately representing the Class. The Court should not compromise the rights of thousands when simple alternatives exist to preserve those claims.

## CONCLUSION

The *O'Neill* Plaintiffs respectfully request that the Court sustain their Objections and grant the requested relief following oral argument.

New York, New York
April 21, 2021

                By:  /s/ *Jerry S. Goldman*
                     Jerry S. Goldman, Esq.
                     Jeffrey E. Glen, Esq.
                     Bruce Strong, Esq.
                     ANDERSON KILL P.C.
                     1251 Avenue of the Americas
                     New York, NY 10020
                     Ph: (212) 278-1000
                     Fax: (212) 278-1733
                     jgoldman@andersonkill.com
                     jglen@andersonkill.com
                     bstrong@andersonkill.com

                     Attorneys for Estate of
                     John P. O'Neill, Sr., et al.