# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

May 28, 2021

**Via ECF**
The Honorable Sarah Netburn
United States Magistrate Judge
Thurgood Marshall Courthouse
40 Foley Square, Room 430
New York, NY 10007

  Re: *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

  Plaintiffs reply to the oppositions of the Kingdom of Saudi Arabia [ECF No. 6820] and Dallah Avco [ECF No. 6823] to Plaintiffs' request for clarification on the timing expert discovery [ECF No. 6816]. Improperly using the scheduling request as an opportunity to preview future motions practice, even while depositions are rapidly unfolding, the Kingdom seeks to re-litigate its effort, already rejected by the Court, to preemptively deprive Plaintiffs of the right enshrined in the Federal Rules to invoke expert testimony. The Court should again reject that improper request, and set a date for expert reports that ensures Plaintiffs a meaningful opportunity to secure and present relevant and proper expert testimony.

  **1. The Kingdom's Effort to Pre-Brief its Jurisdiction Motion is Improper**

  Plaintiffs asked for clarification regarding the timing of expert discovery and the Kingdom responded with a letter-opposition previewing its anticipated motion for summary judgment. A simple application concerning the dates for expert discovery is not the proper forum for the Kingdom's arguments. Given the demands of this Court's deadline for fact depositions ending on June 30, 2021, it is simply infeasible to engage with the Kingdom on the substance of the information elicited during the discovery and deposition stage. Today, for example, Plaintiffs completed the second day of deposing Saudi propagator Majed al-Mersal and

of the 22 remaining workdays before June 30, based on the Kingdom's recent deposition notices, there may be up to 24 days of testimony.[1]

The facts and the inferences to be drawn from the record are sharply disputed. Plaintiffs cannot and should not be expected to provide a full response to all of the Kingdom's arguments while laboring diligently to comply with this Court's fact deposition deadline. We must nevertheless address several misleading aspects of the Kingdom's presentation of the factual record regarding witness Mohdar Abdullah. Saudi Arabia makes no mention of the fact that Mohdar Abdullah repeatedly invoked a right against self-incrimination to avoid answering specific questions presented by Plaintiffs about the support he provided to the hijackers and surrounding circumstances, Mohdar Abdullah Dep. Tr. at 83-84, 361-63, 489-93; repeatedly declined to renounce his numerous prior statements to the FBI that Bayoumi assigned him to assist the hijackers, *id.* at 486-87; acknowledged contacts among himself, the hijackers and both Bayoumi and Thumairy, *id.* at 131-35, 143-47, 203-5, 485; confirmed private meetings between the hijackers and Thumairy, *id.* at 203-21; sought to avoid testifying about his meetings and discussions with Kingdom counsel in advance of his deposition based on his view that they were "confidential," *id.* at 402-403; and, ultimately acknowledged that Kingdom counsel "wanted to give me a hint about what this case was about and whether or not I have – I can recollect certain information about incidents that happened before," and showed him FBI documents shortly before his deposition. *Id.* at 400-422. Contrary to the Kingdom's representations (and Dallah Avco's gratuitous and self-serving tag-along), the factual record does not show "no evidence" of an official Saudi role in the 9/11 plot.

Again, this is not the time to brief competing arguments regarding the factual record and Plaintiffs cite to the above only to provide an example of how the Kingdom has proffered solely evidence that it views favorably while ignoring anything to the contrary. This Court should reject the Kingdom's effort to exploit a request for clarification about the timing of expert disclosures to strategic advantage on the ultimate question of jurisdiction.

2. **This Court Should Not Indulge the Kingdom's Renewed Effort to Preclude Expert Witnesses in this Complex Terrorism Conspiracy Case**

This Court should likewise reject the Kingdom's attempt to renew its unprecedented effort to preemptively preclude Plaintiffs from offering any expert testimony. The Federal Rules of Civil Procedure expressly enshrine a plaintiff's right to invoke expert testimony in support of a claim. Fed. R. Civ. P. 26(2). The rules then provide an opposing party the opportunity to challenge the admissibility of the expert opinions – but not to deny plaintiffs the right to proffer the proposed expert opinion *ex ante*.

As other courts have repeatedly observed, given the nature of civil terrorism cases against foreign states, "[t]he testimony of expert witnesses is of crucial importance because firsthand evidence of terrorist activities is difficult, if not impossible, to obtain." *Owens v. Republic of*

---

[1] The Kingdom waited until May 19, 2021 to provide notice of its intention to take testimony of *any* witnesses and is now seeking to double-track – and in one case triple-track – those depositions despite the fact that the identity of the witnesses and their role in or knowledge of the 9/11 plot were all available to it at the outset of this litigation. The Kingdom's schedule would interfere with the preparation for and depositions of the key witnesses in Plaintiffs' case: Omar al-Bayoumi, Musaed al-Jarrah, and Fahad al-Thumairy. Plaintiffs suggested a brief extension of one to two weeks to accommodate the Kingdom's deposition requests, which the Kingdom has rejected.

*Sudan*, 864 F.3d 751, 787 (D.C. Cir. 2017) (internal citations omitted), *vacated in part on other grounds sub nom. Opati v. Republic of Sudan*, ––– U.S. ––––, 140 S. Ct. 1601, 206 L.Ed.2d 904 (2020); *see also United States v. Elshinawy*, 2018 WL 1521876, at *14 (D. Md. Mar. 28, 2018), *aff'd*, 781 F. App'x 168 (4th Cir. 2019) (to establish terrorism charges, expert was allowed to opine on contribution public exhortations to ISIS supporters had to spikes in attacks.).

Dallah Avco itself previously took the position that expert testimony was necessary. Dallah Avco told the Court that it planned to introduce expert testimony that Bayoumi was an employee of the Kingdom, not Dallah Avco. July 30, 2015 conference, Tr. at 80:10-13 ("We are working with the Saudi labor expert who we expect to be able to convince your Honor that there is no employment relationship 13 there at all."). Now lockstep with the Kingdom, however, Dallah Avco (without an explanation or even an acknowledgement that it previously argued in support of expert testimony) has attempted to amend its position. But Dallah Avco's earlier position that expert testimony is appropriate was quite clearly correct.

In this complex case involving both circumstantial and direct evidence, denying Plaintiffs expert testimony would not only be contrary to the Federal Rules but would be a fundamental violation of due process. Plaintiffs must be allowed to proffer their expert opinions and the Kingdom can then decide if it wishes to challenge the admissibility of those opinions.

3. **This Court Should Not Credit the Kingdom's Speculation About Plaintiffs' Experts and its Misleading Citations of Caselaw**

The Kingdom engages in sheer speculation about the subject areas of Plaintiffs' experts, perhaps hoping that it can force premature work-product disclosure. This Court, however, cannot reasonably require Plaintiffs to disclose the identities or subject matters of their proposed experts prior to the close of fact depositions. Doing so would inappropriately afford the Kingdom a roadmap to defend the upcoming depositions of Bayoumi, Jarrah, and Thumairy, and would unduly prejudice Plaintiffs here.

As for the case law the Kingdom cites, none supports its effort to exploit the procedural history to avoid expert discovery entirely. In *Capstone Logistics Holdings, Inc. v. Navarrete*, 2019 WL 12239656 (S.D.N.Y. Mar. 19, 2019), the defendant submitted a rebuttal expert report that discussed topics outside the scope of plaintiff's initial expert testimony, which the plaintiff sought to strike as an untimely initial expert report. The court nevertheless refused to strike the report, finding that it could permit an untimely disclosure that "causes no prejudice." *Id.* (citing several cases permitting the disclosure of untimely expert reports and extending discovery where there was limited prejudice to the other party, noting that "[p]recluding the testimony of an expert is a 'drastic remedy'" and "[d]oing so on timeliness grounds alone may 'frustrate the Federal Rules' overarching objective of doing substantial justice to litigants.'") In *Frydman v. Verschleiser*, 2017 WL 1155919 (S.D.N.Y. Mar. 27, 2017), plaintiffs never sought clarification or an extension from the court regarding the deadline for expert disclosures and the content required in the disclosure and had engaged in "scorched earth practices to torment the other party" throughout the litigation. In contrast, Plaintiffs here expressly sought clarification immediately after the Kingdom stated its disagreement with Plaintiffs' understanding of the timing of expert discovery. Last, in *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76 (S.D.N.Y. 2012), plaintiffs effectively failed to disclose a damages expert until expert depositions were already ongoing and failed to show any good cause

3

to change the scheduling order. In contrast, here, as discussed below, Plaintiffs reasonably understood the disclosure due by June 30, 2021 to be to identify experts and not to provide full reports given the ongoing factual discovery and, once the parties' differences on this point were revealed, promptly sought clarification from the Court.

### 4. Plaintiffs Have Reasonably Relied on this Court's Expert Witness Practice Concerning Other Defendants and this Court's Plain Statements at Conferences and in Orders and Have Never Understood Expert Reports to be Due on June 30, 2021

The last discussion of expert discovery was at the January 13, 2020 conference, during which the Court considered the timing of providing "a list of the expert or experts … and the subject matter of their testimony." Tr. at 40:18-20. Plaintiffs have *never* asserted or suggested that they understood that fact discovery generally would close on June 30, 2021 – only that this Court set June 30, 2021 as the deadline for fact *depositions* when objecting to any expert report deadline that was simultaneous with the fact deposition deadline (and objecting to the June 30, 2021 deposition deadline, as well.) ECF No. 6554 at 2 fn 1. Contrary to the Kingdom's suggestion, Plaintiffs have *never* suggested that expert reports were due on June 30 – only that they understood the triggering date to be the fact *discovery* deadline (not fact deposition). *Id.* Further, the Kingdom has been on notice that Plaintiffs did not believe their expert reports could or should be due by June 30, 2021, given Plaintiffs' objections to any simultaneous fact and expert deadline.

Additionally, the Kingdom's statement that "paper discovery" closed in January 2020 misconstrues the record. The statement the Kingdom quotes was at the tail end of the January 13, 2020 status conference about fact *depositions* and a full year before depositions of Kingdom witnesses began (which have revealed glaring gaps in production). It was in response to the Kingdom's arguments about the number of and identities of witnesses who should be deposed. And it was followed by Plaintiffs raising the issue of ongoing disputes over document production and the need for motions practice on the point, which this Court endorse. Tr. at 43:22-47:5. The Court expressly ruled in a subsequent Order that paper discovery was *not* closed as to third-parties. ECF No. 6131 (denying Kingdom's motion, ECF No. 6102, to quash third-party document subpoena based on claim that "paper discovery" was over.)

Plaintiffs have been working at breakneck speed to meet the Court's fact deposition deadline (while working in parallel to conduct expert depositions in the case against other defendants), they have been reviewing and following up on rolling FBI productions and have been working to identify the areas of expertise and appropriate expert witnesses that will be suitable to review the fact discovery. Plaintiffs must be allowed to focus now on meeting the Court's fact deposition deadline, then produce the identities of experts and, after that, work with their experts to provide reports at a reasonable time, but no sooner than September 15, 2021, which is wholly reasonable in light of the scope of the substantial factual record, the challenges the pandemic has imposed on finding and meeting with experts, and the significance of this litigation.

The Kingdom wrongly suggests that Plaintiffs provide "no basis" for their assertion that the pandemic raised hurdles to working with experts. There are unique circumstances in this case, which Plaintiffs can brief *ex parte*, if necessary, given the need to protect work-product.

On other occasions, the Kingdom has requested and this Court credited the statements of its counsel on discovery issues and it would be patently unfair to treat Plaintiffs differently here.

Finally, and perhaps most fundamentally, the deadline request Plaintiffs have submitted is necessary to afford the Plaintiffs a reasonable and fair opportunity to work with experts, with the benefit of adequate time to review the factual record, to secure expert testimony essential to their case. The demands of this uniquely complex litigation over the last several months, and in the coming month in particular, are massive. The experts must have the benefit of the full factual record for purposes of preparing their reports, and Plaintiffs' counsel must have a meaningful opportunity to meet and work with Plaintiffs experts in relation to their reports. The Kingdom's demand that expert reports be due at the same time that Plaintiffs are rushing to complete the key depositions is unreasonable and unfairly prejudicial. Fundamental fairness and basic due process principles require that Plaintiffs be afforded a reasonable period of time, after the factual record is complete, to provide their expert reports.[2]

Respectfully submitted,

| COZEN O'CONNOR | MOTLEY RICE |
|---|---|
| /s/ Sean P. Carter | /s/ Robert T. Haefele |
| Sean P. Carter, Esquire | Robert T. Haefele, Esquire |
| 1650 Market Street, Suite 2800 | 28 Bridgeside Boulevard |
| Philadelphia, PA 19103 | Mt. Pleasant, SC 29464 |
| | |
| MDL 1570 Plaintiffs' Exec. Committee for Commercial Claims | MDL 1570 Plaintiffs' Exec. Committee for Personal Injury and Death Claims |

KREINDLER & KREINDLER

/s/ Megan W. Benett
Steven R. Pounian, Esquire
Andrew J. Maloney, Esquire
Megan W. Benett, Esquire
485 Lexington Avenue, 28th Fl.
New York, NY 10017

MDL 1570 Plaintiffs' Exec. Committee
for Personal Injury and Death Claims

---

[2] Both Saudi Arabia and Dallah Avco have asked for an opportunity to review Plaintiffs' expert reports, before any date for their rebuttal reports are due. In doing so, they both implicitly recognize the need for parties to be afforded fair and adequate time to prepare their expert reports. Under their proposal, their experts would enjoy the benefit of a full factual record and Plaintiffs' reports in preparing their reports, and would be doing so in an environment when no depositions are ongoing. Plaintiffs note though that under ordinary terms there is no justification for the defendants' initial reports to be sequenced after plaintiffs' reports unless they intend to limit their reports solely to rebuttal. *See* Fed. R. Civ. P. 26 (a)(2)(D)(i) (absent court order, the default timing and sequence requires expert disclosures to be made simultaneously at least 90 days before the trial date).