KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900
FACSIMILE:
(202) 326-7999

June 1, 2021

*Via ECF*

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

      Re:    *In re Terrorist Attacks on September 11, 2001*, 03-md-1570 (GBD) (SN)

Dear Judge Netburn:

      I write on behalf of Defendant Kingdom of Saudi Arabia ("Saudi Arabia") in further support of Saudi Arabia's letter-motion for a protective order limiting questioning at the upcoming deposition of Musaed Al Jarrah, ECF No. 6817, and in reply to the opposition of the Plaintiffs' Executive Committees ("Plaintiffs"), ECF No. 6826 (sealed).

      **1.**      Saudi Arabia has never waived the protection of the Vienna Convention on Diplomatic Relations of 1961 ("VCDR") in this litigation. The Vienna Convention states clearly: "Waiver must always be express." VCDR art. 32(2). Plaintiffs' contrary argument (at 3) points to no express statement of waiver. As Saudi Arabia's February 21, 2020 motion for a protective order ("Feb. 2020 Mot.") reaffirmed (at 7), Saudi Arabia has "expressly reserved" Vienna Convention protections throughout discovery.

      Plaintiffs err in suggesting (at 2) that the Court's February 20, 2020 docket order directing "Saudi Arabia . . . to file their motion for a protective order by February 28," ECF No. 5998, set a deadline for any motion for a protective order for any purpose. At that time, the parties were disputing whether Saudi Arabia should be compelled to produce certain witnesses.[1] Thus, Saudi Arabia's motion addressed whether certain witnesses should be "compelled to testify in this matter." Feb. 2020 Mot. 10. For certain witnesses, Saudi Arabia argued that Vienna Convention "immunities preclude[d] testimony about *all* topics on which Plaintiffs ha[d] said they 'intend[ed] to elicit' testimony." *Id.* at 6 (emphasis added). Saudi Arabia did not raise,

---

      [1] *See* ECF No. 5982, at 1 (Plaintiffs' request for a conference "to address the structure and timing for motion practice relating to [certain] witnesses that the Kingdom recently indicated . . . it would not produce for deposition"); ECF No. 5991, at 1 (Saudi Arabia's opposition stating that the parties had met and conferred about the "identities of the deponents").

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
June 1, 2021
Page 2

and the Court's order did not require Saudi Arabia to raise, requests to "forbid[ ] inquiry into certain matters," Fed. R. Civ. P. 26(c)(1)(D), for witnesses undisputedly subject to deposition about other matters. For instance, nothing in the Court's order affects Saudi Arabia's ability to invoke the attorney-client privilege, attorney work product protection, or high-level-official doctrine at deposition. The same is true for Vienna Convention immunities.

Indeed, in resolving the parties' dispute, the Court ruled that, "[f]or witnesses . . . where certain topics of questioning may fall outside the scope of the witness's residual [Vienna Convention] immunity, the witnesses must appear for deposition and objections should be made on a question-by-question basis." ECF No. 6444 (public version), at 20. The Court indicated that its ruling "should provide helpful guidance to the parties regarding any other potential deponents." *Id.* As Saudi Arabia pointed out in its letter-motion (at 3), that guidance would make no sense if (as Plaintiffs erroneously contend) Saudi Arabia could not invoke the Vienna Conventions as to witnesses not named in its previous motion. Plaintiffs have no response.

Plaintiffs also err in contending (at 2) that Saudi Arabia waived immunity when its counsel stated that Al Jarrah had "voluntarily agreed to sit for a deposition" or had "consent[ed]" to be deposed. Those statements were and remain true: Al Jarrah, a former employee beyond the subpoena jurisdiction of the Court, cannot be compelled to testify without his consent, but has voluntarily agreed to appear. In no way did the statement imply (much less express) that Saudi Arabia would waive valid privileges such as those available under the VCDR.

    **2.**    Plaintiffs mischaracterize (at 2) Saudi Arabia's request for a protective order as "egregiously late." Under this Court's previous order, Saudi Arabia was required to show that "the State Department has recognized that the person for whom [diplomatic immunity] was requested is entitled to it." ECF No. 6444, at 14 (quoting *Carrera v. Carrera*, 174 F.2d 496, 497 (D.C. Cir. 1949)). Although Saudi Arabia has ample evidence in its own files of Al Jarrah's work at the Embassy, much of which it has voluntarily produced in this case, the Court's order indicated that confirmation from the State Department would be required.

Accordingly, on January 28, 2021, Saudi Arabia asked the State Department for "a contemporaneous document or a current letter . . . reflecting Mr. Al Jarrah's status during the relevant time." Ex. 1, at 2.[2] On May 12, Saudi Arabia received such a letter. *Id.* at 1. On May 14, more than a month before Al Jarrah's deposition, Saudi Arabia gave Plaintiffs the letter and told them it would invoke the VCDR at that deposition. ECF No. 6817-2, at 2. On May 21, Plaintiffs indicated a dispute, *id.* at 1, and on May 24, Saudi Arabia filed its letter-motion for a protective order. Saudi Arabia has missed no deadline and acted as soon as it reasonably could. Nor have Plaintiffs shown prejudice from any purported delay. Indeed, no Federal Rule or court order requires Saudi Arabia to seek a protective order at all. Saudi Arabia could instead instruct Al Jarrah not to disclose privileged material at his deposition, as it could for other privileges,

_____

[2] Saudi Arabia is filing Exhibit 1 under seal because it discusses Embassy documents. *See* ECF No. 4696 (authorizing sealing). This letter contains no confidential information.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable Sarah Netburn
June 1, 2021
Page 3

such as attorney-client privilege.  The present motion merely puts the State Department letter in the record and may help ensure a more orderly deposition.

**3.**      Plaintiffs have no basis to question (at 3 n.1) whether the State Department's letter establishes Al Jarrah's diplomatic status.  The letter states that the "official records" of the State Department's "Office of Foreign Missions . . . indicate" that "AL JARRAH . . . was notified to the Department as assuming his duties as an administrative and technical staff member for the Embassy of [the] Kingdom of Saudi Arabia, effective February 8, 1991 until February 26, 2006." ECF No. 6817-1 (attachment).  The term "notified" tracks the VCDR's provision that immunity begins from "the moment when [an] appointment *is notified* to the Ministry of Foreign Affairs or such other ministry as may be agreed."  VCDR art. 39(1) (emphasis added).

Plaintiffs' comparison to Fahad Al Thumairy, whose diplomatic status was revoked, is misplaced.  There is no suggestion in the State Department's letter that Al Jarrah's status was ever revoked.  Nor do Plaintiffs proffer any such evidence.  Al Jarrah is thus like the witnesses addressed in the Court's previous order, not like Al Thumairy.  *See* ECF No. 6444, at 15 ("Plaintiffs have not presented any evidence to the Court that the credentials of any of these listed officials have at any time been revoked.").  Whether residual Vienna Convention protections apply to Al Thumairy has no bearing on whether those protections apply to Al Jarrah.

**4.**      Finally, Plaintiffs' fulmination (at 3-4) that Saudi Arabia's invocation of the Vienna Convention will "deny the 9/11 Families key information" is neither relevant nor true.  It is irrelevant because Vienna Convention immunity cannot be overcome by an asserted need for information.  As this Court has explained, "[t]he articles of the Conventions are considered inviolable."  ECF No. 6444, at 12.  Where Vienna Convention immunity applies, it does not matter whether the information sought is "key" or not.

Plaintiffs rhetorically assert (at 4) that "material support for a plot leading to the murder of 3,000 citizens of the receiving state cannot be considered a legitimate diplomatic function." Three years of discovery have yielded no evidence that Al Jarrah, or any other senior Saudi official, supported the 9/11 plot.  *See* ECF No. 6822, at 1-2 (May 26, 2021).  Nevertheless, as Saudi Arabia has explained, it will permit inquiry "as to interactions or communications (if any) that [Al Jarrah] had with Omar Al Bayoumi, Fahad Al Thumairy, Nawaf Al Hazmi, and Khalid Al Mihdhar," as well "as to whether [Al Jarrah] (or to his knowledge anyone else) provided instructions to anybody to assist" Al Hazmi or Al Mihdhar.  ECF No. 6817-1, at 2.  Those topics cover the limited and targeted discovery authorized by Judge Daniels.  Plaintiffs' abstract assertions (at 3-4) that they wish to seek "circumstantial evidence" of "conspiracy" give no concrete examples of important questions that immunity would bar.[3]

---

[3] The one specific topic Plaintiffs raise (at 3 n.2) is questioning about propagators (other than Al Thumairy).  This Court has twice denied Plaintiffs' requests for documents about such individuals.  *See* ECF No. 6577, at 24-25; ECF No. 6579, at 9-10.  They are hardly "key."

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable Sarah Netburn
June 1, 2021
Page 4

Respectfully submitted,

/s/ *Michael K. Kellogg*

Michael K. Kellogg
*Counsel for the Kingdom of Saudi Arabia*

cc:    All MDL Counsel of Record (via ECF)