# Exhibit A

## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA EMAIL**

May 11, 2021

Matthew S. Leddicotte, Esq.
White & Case LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005-3807

     RE:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Matt:

     Enclosed please find Plaintiffs' First Set of Consolidated Jurisdictional Requests for Production of Documents Directed to Al Rajhi Bank.

     We note that these Requests do not encompass the full range of relationships, transactions, events, and associations relied upon by the Second Circuit in granting jurisdictional discovery.  While Plaintiffs are entitled under the Second Circuit's Order to explore all of those matters in the context of jurisdictional discovery, they have focused here on certain key relationships, transactions, and issues.  However, Plaintiffs reserve their rights to explore through discovery all of the allegations and relationships the Second Circuit relied upon in granting jurisdictional discovery.

     We are of course available to confer concerning these Requests.

Matthew S. Leddicotte, Esq.
May 11, 2021
Page 2


Warm regards,

COZEN O'CONNOR

By:  _/s/  Sean P. Carter_____
    Sean P. Carter
    Cozen O'Connor
    One Liberty Place
    1650 Market Street, Suite 2800
    Philadelphia, PA 19103
    Tel: (215) 665-2105
    E-mail: scarter1@cozen.com

*On behalf of the MDL 1570 Plaintiffs' Exec.
Committees*

LEGAL\52225328\1

2

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |
|---|---|
| | ECF Case |

This document relates to:

*Underwriting Members of Lloyd's Syndicate 2, et al., v. Al Rajhi Bank, et al.*, No. 16-cv-07853
*Addesso, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09937
*Aguilar, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09663
*Hodges, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-00117
*Aiken, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-00450
*Charter Oak Fire Insurance Co., et al. v. Al Rajhi Bank, et al.*, No. 17-cv-02651
*Abarca, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03887
*Arrowood Indemnity Co., et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03908
*Abedhajajreh, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-06123
*Muenchener Rueckversicherungs-Gesellschaft Aktiengesellschaft in Muenchen, et al. v. Kingdom of Saudi Arabia, et al.*, Case No. 17-cv-07914
*Abbate, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-08617

**PLAINTIFFS' FIRST SET OF CONSOLIDATED JURISDICTIONAL
<u>REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO AL RAJHI BANK</u>**

May 11, 2021

**PLAINTIFFS' FIRST SET OF CONSOLIDATED JURISDICTIONAL**
<u>**REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO AL RAJHI BANK**</u>

Plaintiffs propound and serve on Al Rajhi Bank (hereinafter "Defendant" or "ARB"), the following Requests for Production of Documents to be answered fully and under oath, pursuant to Rule 34 of the Federal Rules of Civil Procedure, within 30 days of their receipt.

<u>**INSTRUCTIONS**</u>

1.      In responding to these requests, You shall produce all responsive documents and other things, in Your possession, custody, or control, regardless of whether such documents or things are possessed directly by You or by Your employees, agents, attorneys, accountants, auditors, investigators, or other representatives.  A document shall be deemed to be within Your control if You have the practical ability to obtain the document or a copy of the document from another person having possession or custody of the document.

2.      Documents are to be produced in full; redacted documents will not constitute compliance with this request.  If any requested document or thing cannot be produced in full, defendant is requested to produce it to the extent possible, indicating which document or portion of that document is being withheld and the reason that document or portion of that document is being withheld.

3.      In producing documents, Defendant is to produce the original of each document requested together with all non-identical copies and drafts of that document.  If the original of any document cannot be located, an identical copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

4.      Documents shall be produced as they are kept in the usual course of business or the documents shall be organized and labeled to correspond to the categories in this request.  All documents shall be produced in the original file folder, binder, covers, envelope, or other container

in which the documents are kept or maintained by defendant. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

5.      Documents shall be produced in such fashion as to identify any organization, department, branch, or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian.

6.      Documents attached to each other should not be separated.

7.      If any documents requested herein have been lost, discarded, destroyed, or are otherwise no longer in defendant's possession, custody or control, they shall be identified as completely as possible, including without limitation the following information:  date of disposal, manner of disposal, reason for disposal, person authorizing the disposal and person disposing of the document.

8.      Documents shall be produced in such fashion as to identify which request(s) they are responsive to.

9.      Each of these requests shall be continuing.  If at any time after Defendant responds to this request any information becomes available that calls for any supplement to a previous response, provide such documents within a reasonable time period from the time when it becomes available.

10.     If Defendant asserts a privilege or other authorized protection with respect to any document requested herein, defendant must produce all non-privileged/protected portions of the document with those portions as to which a privilege/protection is claimed redacted, and Defendant must provide a privilege log that conforms with the requirements set out in the November 19, 2012 Order Governing Identification of Privileged Documents (ECF No. 2644),

2

including providing the following information concerning each individual document withheld or redacted:

A.      The type of document or information (e.g., letter, notebook, telephone conversation, etc.);

B.      The general subject matter of the document;

C.      The date of the document;

D.      The authors of the document, the addressees of the document and any other recipients, and where not apparent, the relationship of the authors, addressees, and recipients to one another;

E.      If the document is an electronic document, its file size; and

F.      Each and every basis for the privilege or protection claimed; and if a privilege or protection asserted is based upon or governed by a law, statute, regulation, or rule, the specific law, statute, regulation, or rule being invoked.

11.     For the purpose of these discovery requests, except to the extent specifically indicated in the "Definitions" section of this Set of Requests, the words used herein are considered to have, and should be understood to have, their ordinary, everyday meaning and Plaintiffs refer Defendant to any collegiate dictionary such as *Webster's New World Dictionary,* Second College Edition by Prentice Hall Press.  In the event Defendant asserts that the wording which has been used is somehow vague, ambiguous, unintelligible, indecipherable, confusing or such other boiler plate objections to avoid squarely addressing the specific discovery request, Plaintiffs refer Defendant to *Webster's Dictionary* for the plain meaning of the terms defined herein.

12.     If You object to any request for production, the objection must state whether any responsive materials are being withheld on the basis of that objection; and the objection must state whether the objection is to all or part of the request; and if to only part of the request, it must state

to which part of the request the objection is made and produce all documents responsive to the rest.

13.    If You object to any request for production on the ground that it is overbroad, is unreasonably burdensome, or seeks information which is not relevant to the subject matter of this action, You should state the specific reasons for that objection, state what You contend to be the proper scope of the request for production, and respond in accordance with what You contend is the proper scope, and produce documents within the scope You contend to be proper.

14.    Any request referring to any entity, organization, office, association, or government includes any official, employee, representative, or agent of that entity, organization, office, association, or government.

15.    Unless the nature of subject matter of the request indicates otherwise, or a different time period is specified, the relevant scope of discovery will be for the time period from January 1, 1998 through December 31, 2004.

16.    Unless otherwise specified, ARB's responses to Plaintiffs' First Set of Consolidated Jurisdictional Requests for Production of Documents Directed to Al Rajhi Bank, including any production of documents by the Defendant, shall be directed to the law offices of Cozen O'Connor, One Liberty Place, 1650 Market Street, Suite 2800, Philadelphia, PA 19103.

## DEFINITIONS

1.      All terms used herein that are defined in Local Civil Rule 26.3 have the meaning as defined therein, unless specified otherwise in these directions.  To the extent that any term is defined herein in a manner that is inconsistent with Local Civil Rule 26.3, the rule governs.

2.      The terms "document" or "documents" are defined to be synonymous in meaning and equal in scope to the usage of the terms "documents or electronically stored information" and "any designated tangible things" as used in Fed. R. Civ. P. 34(a)(1)(A) and (B).  Specifically, the term "document" as used herein shall include "electronically stored information" and "any designated tangible things."  A draft or non-identical copy is a separate document within the meaning of this term.

3.      The term "electronically stored information," or "ESI," includes the original (or identical copies when originals are not available) and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of electronic data of any kind or description, whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such data may include, but is not limited to, all text files (including word processing documents), presentation files (such as PowerPoint), spreadsheets, electronic mail files and information concerning electronic mails (including electronic mail receipts and/or transmittals, logs of electronic mail history and usage, header information, and deleted files), internet history of files and preferences, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, contact managers, computer system activity logs, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, output resulting from the use of any software program including, but not limited to, database files, charts, graphs, outlines, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, .PDF and .TIFF files, batch files, native files and all

5

ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the medium or media on which they reside and regardless of whether such electronic data is in an active file, deleted file, or file fragment.  ESI includes, but is not limited to, any and all items stored on any electronic media, computers, networks or "cloud" computing services and all backup files containing electronically stored data. ESI also includes the file, folder tabs, metadata, personal electronic backup media, including thumb drives, and/or containers and labels appended to or associated with any physical storage device associated with each such original and/or copy. ESI includes all text messages, instant messages, internet messages, intranet messages, electronic bulletin board messages, blog entries, website postings of any nature, and all other methods by which messages may be transmitted by or through electronic means.

4.      The term "communication" shall mean any transmission, conveyance, or exchange of information, words, or ideas, whether written, oral, electronic, or other means, including but not limited to any meeting, discussion, contract, conference, telephone conversation, text message, electronic or instant message, email, internet posting, letter, memorandum, document, message, facsimile, or other form of written or oral transmission or exchange.

5.      The term "person" shall mean any natural person or any business, legal, or government entity or association.

6.      The term "concerning" shall mean relating to, referring to, describing, evidencing, or constituting.

7.      The terms "all," "any," and "each" shall be construed as encompassing any and all.

8.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

9.      The use of the singular form of any word includes the plural and vice versa.

10.      The term "Plaintiffs" shall refer to Plaintiffs in cases in the above-referenced MDL proceedings, *In re Terrorist Attacks on September 11, 2001,* 03 MDL 1570, who have asserted claims against defendant Al Rajhi Bank.

11.      The terms "Defendant," "You," "Your," and/or "ARB" shall refer to Al Rajhi Bank and any branch office, ARB Principal, employee, consultant, agent, alter ego, volunteer, or representative acting on Al Rajhi Bank's behalf.

12.      The term "ARB Principal" shall refer to any ARB board member, ARB executive council member, ARB Shariah Board member, and/or any other ARB management level executive, trustee, director, or officer employed by and/or acting on Al Rajhi Bank's behalf, including without limitation, Suleiman al Rajhi, Saleh al Rajhi, Abdullah al Rajhi, Abdul Rahman al Rajhi, Abdul Aziz al Khereiji, Abdullah al Misfer, and Saleh al Hussayen.

13.      The terms "Kingdom of Saudi Arabia," or "KSA," or "Saudi government" shall mean the Kingdom of Saudi Arabia, including any agency, instrumentality, organ, political subdivision, official, or agent of the Kingdom of Saudi Arabia, including without limitation, the Saudi Arabian Monetary Authority ("SAMA") (a/k/a Saudi Central Bank).

14.      The term "Da'wah Organizations" shall refer to the International Islamic Relief Organization ("IIRO"), Al Haramain Islamic Foundation, and Muwafaq Foundation (a/k/a Blessed Relief Foundation), and any branch office, board member, executive, trustee, director, trustee, employee, consultant, agent, alter ego, volunteer, or representative acting on behalf of the Da'wah Organizations' behalf.

15.     The term "9/11 Hijackers" shall mean any of the 19 men who hijacked aircraft on September 11, 2001, and crashed the aircraft into the World Trade Center buildings in New York, the Pentagon in Virginia, and a field in Shanksville, Pennsylvania, including:

| | |
|---|---|
| Abdulaziz Mohamed al Omari; | Mohamed Atta; |
| Ahmed Abdullah al Nami; | Mohand al Shehri; |
| Ahmed Ibrahim al Haznawi; | Nawaf Mohamed al Hazmi; |
| Ahmed Saleh al Ghamdi; | Salem Mohamed al Hazmi; |
| Hamzeh Saleh al Ghamdi; | Satam al Suqami; |
| Hani Saleh Hanjour; | Saeed Abdullah al Ghamdi; |
| Fayez Banihammad; | Wail Mohamed al Shehri; |
| Khalid Mohamed al Mihdhar; | Walid Mohamed al Shehri; and |
| Majed al Moqed; | Ziad Jarrah. |
| Marwan al-Shehhi; | |

16.     The term "Golden Chain-Related Individuals" shall mean the following individuals: Suleiman al Rashid, Abdel Qader Bakri, Bakr Bin Laden, Ghaleb Bin Laden Group, Youssef Jameel, Ibrahim Muhammad Afandi, Saleh Abdullah Kamel, Suleiman Abdulaziz al Rajhi, Mohammed Bin Abdullah al Jomaih, Abdulrahman Hassan al Sharbatly, Ahmed Mohamed al Naghi, Khalid Bin Mahfouz, Abdel Qader Faqeeh, Salah al Din Abdel Jawad (a/k/a Salahuddin Abduljawad), Ahmad Turki Yamani (a/k/a Ahmad Zaki Yamani), Abdel Hadi Taher, Mohammed Omar, Ahmad al Harbi, Mohammed al Issai, Hamad al Hussaini, Salem Taher, Adel Abdul Jalil Batterjee, Osama Bin Laden, and Wa'el Hamza Jelaiden.

17.     The term "SAAR Network-Related Entities" shall mean any of the following entities and any past or present subsidiaries, affiliates, and/or branches of such organizations, their directors, officers, employees, agents and representatives:  African Muslim Agency, Al-Aqsa Educational Fund, AMC Foundation, Amana Limited, Amana Mutual Funds, American Institute for Islamic Societal Studies, American Muslim Foundation, American Muslim Council, Global Enterprises, LLC, Global Holdings, LLC, Grove Corporate Plaza, Grove Street Corporation, Heritage Education Trust, Inc. (a/k/a Marwa Education Trust), Heritage Holdings, Herndon Grand,

Inc., Humana Charitable Trust, International Education Trust, Inc., International Institute of Islamic Thought, Inc., International Islamic Charitable Organization ("IICO"), International Islamic Relief Organization, International Graphics Printing Service, Islamic Relief Organization, Makkah Mukarramah Charity Trust, Inc., Mar-Jac Investments, Mar-Jac Farms, Inc., Mar-Jac Holdings, Inc., Mar-Jac Poultry, Inc., Mena Corporation, Mena Estates, Inc. d/b/a Mena for Development, Mena Investments, Inc., Mirza Family Limited Partnership, Muslim World League, Piedmont Poultry, Reston Investments, Inc., SAAR Foundation Canada, Inc., SAAR Foundation, Inc., SAAR International, Inc., Safa Trust, Safty, LLC, Sanabel Al Kheer, Inc., Sana-Bell, Inc., Sterling Advisors, Inc., Sterling Charitable Gift Fund, Sterling Infogain Fund, LLC, Sterling Investment Group, LLC, Sterling Lynux Works, LLC, Sterling Management Group, Inc., Sterling Packet Stream Fund, LLC, Sterling Ptech Fund, LLC, Sterling Poultry Company, Sterling Stock Investments, LLC, Sterling Technology Fund, LLC (formerly Sterling Malaysian Fund, LLC), The Success Foundation, Inc., Taibah International Aid Association, York Foundation, York International, and 500 Grove Street, LLC.

18.     The term "SAAR Network-Related Individuals" shall mean any of the following individuals: Abdulrahman Alamoudi, Taha Jaber Al Alwani, Abdullah M. Al Mahdi, Abdullah Bin Saleh Al Obaid, Abdullah Suleiman Al Rajhi, Suleiman Abdul Aziz Al Rajhi, Hisham Altalib, M. Omar Ashraf, Muhammad Ashraf, Hassan A.A. Bahafzallah, Jamal Barzinji, Ibrahim Hassabellah, Mohammad Jaghlit, M. Yaqub Mirza, Khaled Nouri, Mohamed S. Omeish, Samir I. Salah, Cherif Sedky, Ahmad Totonji, Iqbal J. Unus, and Tarik Hamdi.

19.     The term "contribution" shall mean the giving, bestowing, granting, awarding, bequeathing, and/or providing of money, checks, services, logistical or administrative support, assets, rights, securities, real estate or any good, tangible or intangible, including the giving of "zakat."

**PLAINTIFFS' FIRST SET OF CONSOLIDATED JURISDICTIONAL
REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO AL RAJHI BANK**

1.      Please provide all documents relating to all ARB accounts established or held in the name of, on behalf of, and/or for the benefit of the Da'wah Organizations, any ARB account for any entity in which the Da'wah Organizations held any beneficial interest, and/or any ARB account over which the Da'wah Organizations and their representatives had signatory authority or had any actual or potential beneficial interest.  Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among ARB and the Da'wah Organizations.  Responsive documents shall also include, without limitation, documents detailing the opening of and/or closing of the account(s), account signatories, Know-Your-Customer and/or other customer due diligence reports, suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.  As to Muwafaq Foundation, the relevant time period for this Request is from January 1, 1992 through December 31, 2002.

**ANSWER:**

2.      For each of the ARB accounts identified in response to Request No. 1, please provide any and all lists or summaries, including any lists or summaries that can be generated electronically, of transfers of funds into or out of the accounts.  Responsive documents shall include lists or summaries concerning the amounts and sources of funds deposited into the

accounts, and/or the amounts and destinations and/or beneficiaries of funds transferred from the accounts.  As to Muwafaq Foundation, the relevant time period for this Request is from January 1, 1992 through December 31, 2002.

**ANSWER:**

3.      To the extent ARB is not in possession of and is unable to produce lists or summaries identifying all transfers of funds into and from the accounts, including the sources and destinations/beneficiaries of the transfers, please provide all documents identifying:  (i) all transfers of funds into the accounts, including the amounts and sources of the funds; and (ii) all transfers of funds out of the accounts, including the amounts and destinations and/or beneficiaries of the funds.  As to Muwafaq Foundation, the relevant time period for this Request is from January 1, 1992 through December 31, 2002.

**ANSWER:**

4.      Please provide all documents, including any electronically generated lists or summaries, identifying all monetary donations or contributions provided to the Da'wah Organizations by ARB, Suleiman al Rajhi, Saleh al Rajhi, Abdul Rahman al Rajhi, the Suleiman Abdel Aziz al Rajhi Foundation, and/or members of the Al Rajhi family, including but not limited to, the contribution of *zakat* and *haram* funds to the Da'wah Organizations.  As to Muwafaq Foundation, the relevant time period for this Request is from January 1, 1992 through December 31, 2002.

**ANSWER:**

5.      Please provide all documents identifying all ARB Principals who simultaneously held a position(s) with the Da'wah Organizations, including but not limited to, documents concerning: (i) Suleiman al Rajhi's relationship with the IIRO and Sanabel al Kheer; (ii) Abdul Aziz al Khereiji's relationship with the Muwafaq Foundation; and (iii) Abdullah al Misfer's

11

relationship with the Al Haramain Islamic Foundation.  The relevant time period for this Request is from January 1, 1992 through December 31, 2004.

**ANSWER:**

6.      Please provide all communications between the ARB Principals and the Da'wah Organizations.  The relevant time period for this Request is from January 1, 1992 through December 31, 2004.

**ANSWER:**

7.      Please provide all documents relating to all fundraising events that were held for the benefit of the Da'wah Organizations and were promoted, advertised, sponsored, organized, funded, managed, or attended by ARB.  Responsive documents shall include, but are not limited to, the identification of all ARB accounts that were maintained and serviced to accept donations for the Da'wah Organizations.  As to Muwafaq Foundation, the relevant time period for this Request is from January 1, 1992 through December 31, 2002.

**ANSWER:**

8.      Please provide all documents relating to any information or notification ARB received that any of the Da'wah Organizations, or any individual or entity employed by and/or affiliated with the Da'wah Organizations, was:  (1) implicated in any terrorist activity or event, or in providing any form of material support to any terrorist organization or person; (2) implicated in supporting any armed conflict or militant activity; or (3) implicated in criminal or corrupt activities, including money laundering.

**ANSWER:**

9.      Please provide all documents relating to all ARB accounts established or held in the name of, on behalf of, and/or for the benefit of the following individuals, any ARB account for any entity in which the following individuals held any beneficial interest, and/or any ARB account

over which the following individuals had signatory authority or had any actual or potential beneficial interest:

    a)  Osama bin Laden;

    b)  9/11 Hijackers, including Abdulaziz Mohamed al Omari (including ARB Account Nos. 162608010366080 and 39800061, Visa  Debit Card No. 4909-8016-2002-5747), and Walid al Shehri (including ARB Account No. 2956080100036881);

    c)  Mamdouh Mahmud Salim (including ARB Account No. 001424/4);

    d)  Wa'el Hamza Jelaidan (including ARB Account No. 314608010016294);

    e)  Abd al Hamid Sulaiman al Mujil;

    f)  Yassin al Kadi; and

    g)  Soliman al Buthe (including ARB Account No. 140608010109206).

Responsive documents shall include those identified in Request No. 1.  The time period for this Request is January 1, 1992 through December 31, 2004.

**ANSWER:**

    10.    For each of the ARB accounts identified in response to Request No. 9, please provide all documents, including any electronically generated lists or summaries, identifying: (i) all transfers of funds into the accounts, including the amounts and sources of the funds; and (ii) all transfers of funds out of the accounts, including the amounts and destinations and/or beneficiaries of the funds.

**ANSWER:**

    11.    Please provide all documents relating to all transactions, financial or otherwise, involving 9/11 Hijacker Abdulaziz Mohamed al Omari, any entity associated with Omari, and/or any entity in which Omari held a beneficial interest.  Responsive documents shall include, but are not limited to, documents concerning a wire transfer from ARB's Buraidah Branch to Abdulaziz Mohamed al Omari in the United States on or about September 7, 2001.

**ANSWER:**

12.    Please provide all documents relating to all transactions, financial or otherwise, involving 9/11 Hijacker Hani Hanjour, any entity associated with Hanjour, and/or any entity in which Hanjour held a beneficial interest.

**ANSWER:**

13.    Please provide all documents relating to all transactions, financial or otherwise, involving Mahmoud Darkazanli and Abdul Fattah Zammar, any entity associated with those individuals, and/or any entity in which those individuals held a beneficial interest.  Responsive documents shall include, but are not limited to, all documents referring or relating to any transactions linked to the Hamburg, Germany al Qaeda cell.

**ANSWER:**

14.    Please provide all documents relating to all transactions, financial or otherwise, involving Muhammed Galeb Kalaje Zouaydi, any entity associated with Zouaydi, and/or any entity in which Zouaydi held a beneficial interest.

**ANSWER:**

15.    Please provide all documents relating to all transactions, financial or otherwise, involving Omar al Bayoumi, any entity associated with Bayoumi, and/or any entity in which Bayoumi held a beneficial interest.

**ANSWER:**

16.    Please provide all documents relating to any business, banking, financial, employment, charitable, religious, or other relationship between Omar al Bayoumi and ARB, including ARB officials Abdul Rahman al Rajhi and Abdullah al Misfer.  Responsive documents shall include, but are not limited to, all communications between Omar al Bayoumi and ARB, Abdul Rahman al Rajhi, and/or Abdullah al Misfer.

14

**ANSWER:**

17.     Please provide all documents relating to all transactions, financial or otherwise, involving Fahad al Thumairy, any entity associated with Thumairy, and/or any entity in which Thumairy held a beneficial interest.

**ANSWER:**

18.     Please provide all documents relating to any business, banking, financial, employment, charitable, religious, or other relationship between Fahad al Thumairy and ARB, including ARB officials Abdul Rahman al Rajhi and Abdullah al Misfer.  Responsive documents shall include, but are not limited to, all communications between Fahad al Thumairy and ARB, Abdul Rahman al Rajhi, and/or Abdullah al Misfer.

**ANSWER:**

19.     Please provide all documents relating to all transactions, financial or otherwise, involving Mohammed Jamal Khalifa, any entity associated with Khalifa, and/or any entity in which Khalifa held a beneficial interest.  The relevant time period for this request is January 1, 1992 through December 31, 2004.

**ANSWER:**

20.     Please provide all documents relating to any business, banking, financial, employment, charitable, religious, or other relationship between Mohammed Jamal Khalifa and ARB, including ARB official Abdullah al Misfer.  Responsive documents shall include, but are not limited to, all communications between Khalifa and ARB, and/or Abdullah al Misfer.  The relevant time period for this request is January 1, 1992 through December 31, 2004.

**ANSWER:**

21.     Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between ARB and/or Suleiman al Rajhi and Akida Bank, Bank al Taqwa, Youssef Nada, and Ahmed Idris Nasreddin.  Responsive documents shall include, but are not limited to, all communications between ARB and/or Suleiman al Rajhi and those persons or entities.

**ANSWER:**

22.     Please provide all documents relating to all transactions, financial or otherwise, involving Akida Bank, Bank al Taqwa, Youssef Nada, and Ahmed Idris Nasreddin (the "SDGTs"), any entity associated with SDGTs, and/or any entity in which the SDGTs held a beneficial interest.

**ANSWER:**

23.     Please provide all documents, including any electronically generated lists or summaries, identifying all monetary donations, contributions, grants, and/or transfers of money from ARB, Suleiman al Rajhi, and/or any benevolent or charitable organization associated with ARB, Suleiman al Rajhi, or any member of the Al Rajhi family, to beneficiaries in the United States.  Responsive documents shall include, but are not limited to, all communications with recipients of those donations, contributions, grants, and/or transfers of money.

**ANSWER:**

24.     Please provide all documents, including any electronically generated lists or summaries, identifying all monetary donations, contributions, grants, and/or transfers of money from ARB, Suleiman al Rajhi, and/or any benevolent or charitable organization associated with ARB, Suleiman al Rajhi, or any member of the Al Rajhi family, to any mosque, Islamic center, religious institution, or charitable organization operating in California, United States.  Responsive documents shall include, but are not limited to, all communications with recipients of those donations, contributions, grants, and/or transfers of money.

16

**ANSWER:**

25.    Please provide all documents, including any electronically generated lists or summaries, identifying all monetary donations, contributions, grants, and/or transfers of money to beneficiaries in the United States authorized, managed, or overseen by Abdul Rahman al Rajhi. Responsive documents shall include, but are not limited to, all communications between Abdul Rahman al Rajhi and the recipients of those donations, contributions, grants, and/or transfers of money.

**ANSWER:**

26.    Please provide all documents relating to the issues, relationships, transactions, and/or events described in the July 26, 2007 Wall Street Journal article, *Terror Finance: U.S. Tracks Saudi Bank Favored by Extremists*, including all documents relating to any inquiry or investigation conducted by or on behalf of ARB into those matters.

**ANSWER:**

27.    Please provide all documents relating to any communications or directives from Suleiman al Rajhi to ARB's Board of Directors and/or other ARB personnel, between September 11, 2001 and December 31, 2004, concerning contributions to da'wah or charitable organizations.

**ANSWER:**

28.    Please provide all documents relating to the allegation that Suleiman al Rajhi asked ARB personnel to explore or design financial instruments or technologies that would allow ARB's contributions to the da'wah organizations and/or other charitable designees to circumvent Saudi government identification, examination, scrutiny, or auditing.

**ANSWER:**

29.     Please provide all documents relating to any transfer of any funds of Suleiman al Rajhi, or funds in which Suleiman al Rajhi held some beneficial interest, to offshore accounts in or around 2002.

**ANSWER:**

30.     Please provide all documents describing computer codes employed in relation to the transfer of funds, as well as any documents relating to any proposed modification of those codes or proposed development of new codes after September 11, 2001.

**ANSWER:**

31.     Please provide all documents relating to any transfer of funds associated with Suleiman al Rajhi or Saleh al Rajhi to parties in Germany and Pakistan in December 1998.

**ANSWER:**

32.     Please provide all documents relating to the delivery of funds to recipients in Indonesia by couriers, including but not limited to the delivery of money to KOMPAK ("Komite Penanggulangan Krisis") by ARB couriers.

**ANSWER:**

33.     Please provide all documents responsive to the July 17, 2009 Administrative Subpoena served on ARB, attached hereto as Exhibit A.

**ANSWER:**

34.     Please provide all documents relating to the deposit of $130,000.00 in $1,000.00 traveler's checks, and a $21,000.00 cashier's check, by Soliman al Buthe in 2000.

**ANSWER:**

35.     Please provide all documents relating to all communications between ARB and officials of the Al Haramain Islamic Foundation concerning fundraising for Bosnia.  The relevant time period for this request is April 6, 1992 through December 31, 1995.

**ANSWER:**

36.     Please provide all documents relating to any business, banking, financial, employment, charitable, religious, or other relationship between ARB and/or Suleiman al Rajhi and any of the Golden Chain Related Individuals, and/or any individual or entity associated therewith.  Responsive documents shall include, but are not limited to, all communications between ARB and/or Suleiman al Rajhi and the Golden Chain Related Individuals.

**ANSWER:**

37.     Please provide all documents relating to all ARB accounts established or held in the name of, on behalf of, and/or for the benefit of the Golden Chain Related Individuals, any ARB account for any entity in which the Golden Chain Related Individuals held any beneficial interest, and/or any ARB account over which the Golden Chain Related Individuals and/or their representatives had signatory authority or had any actual or potential beneficial interest. Responsive documents shall include those identified in Request No. 1.

**ANSWER:**

38.     Please provide all documents relating to all transactions, financial or otherwise, involving the Golden Chain Related Individuals, any entity associated with the Golden Chain Related Individuals, and/or any entity in which the Golden Chain Related Individuals held a beneficial interest.  Responsive documents shall include, but are not limited to, all documents relating to the transfer of funds to the Golden Chain Related Individuals from ARB, Suleiman al Rajhi, and/or members of the Al Rajhi family.

**ANSWER:**

39.     Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between ARB and/or Suleiman al Rajhi and any SAAR Network Related Entity and/or SAAR Network Related Individual.  Responsive documents shall include, but are not limited to, all communications between ARB and/or Suleiman al Rajhi and the SAAR Network Related Entity and/or SAAR Network Related Individual.

**ANSWER:**

40.     Please provide all documents relating to all transactions, financial or otherwise, involving any SAAR Network Related Entity and/or SAAR Network Related Individual. Responsive documents shall include, but are not limited to, all documents relating to the transfer of funds to any SAAR Network Related Entity and/or SAAR Network Related Individual from ARB, Suleiman al Rajhi, and/or members of the Al Rajhi family.

**ANSWER:**

41.     Please produce all documents relating to the post-September 11, 2001 raids on the SAAR Network Related Entities and/or SAAR Network Related Individuals, conducted by U.S. government authorities.  Responsive documents shall include, but are not limited to, copies of all records, materials, property, or things which were seized by U.S. authorities.

**ANSWER:**

42.     Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between ARB and Saleh al Hussayen, including without limitation, any and all documents relating to all positions Hussayen held within ARB.  Responsive documents shall include, but are not limited to, documents detailing or describing Hussayen's role and responsibilities with ARB's Shariah Board.

**ANSWER:**

43.    Please provide all documents relating to Saleh al Hussayen's trip to the United States in 2001, including but not limited to, airline tickets and receipts, hotel reservations and receipts, travel itineraries, points of destination, scheduled events and meetings, identification of all members of Hussayen's delegation, correspondence, reports, and memoranda.  Responsive documents shall include, but are not limited to, all communications relating to same.

**ANSWER:**

44.    Please provide all documents relating to any investigation conducted by ARB and/or the Saudi government concerning Saleh al Hussayen's trip to the United States in 2001, Hussayen's stay at the Marriott Residence Inn in Herndon, VA on September 10, 2001, and Hussayen's detainment and questioning by the FBI following the attacks of September 11, 2001. Responsive documents shall include, but are not limited to, all communications between ARB and the Saudi government regarding same.

**ANSWER:**

45.    Please provide all documents relating to any investigation or audit relating to any potential criminal or terrorist activity, following the attacks of September 11, 2001, which references or addresses any ARB Principal, employee, branch office, account, and/or transaction.

**ANSWER:**

46.    Please provide all documents relating to all ARB accounts that were seized, frozen, closed, monitored, or in any way restricted following the attacks of September 11, 2001. Responsive documents shall include, but are not limited to, all documents referring or relating to the reasons or basis for the seizing, freezing, closing, monitoring, or restricting of the accounts.

**ANSWER:**

21

47.     Please provide all documents relating to any investigation, inquiry, review, or audit conducted by ARB and/or the Saudi government which references or addresses any of the individuals, entities, accounts, transactions, and/or events identified in Request Nos. 1-46 above.

**ANSWER:**

48.     Please provide all documents relating to any investigation, inquiry, review, or audit conducted by the United States government, United Nations, and/or any foreign government or international body which references or addresses any of the individuals, entities, accounts, transactions, and/or events identified in Request Nos. 1-46 above.  Responsive documents shall include, but are not limited to, all documents produced to ARB and/or the Saudi government by the United States, United Nations, and/or foreign government concerning the individuals, entities, transactions, and/or events.

**ANSWER:**

49.     Please provide all communications between ARB and the Saudi government which references or addresses the individuals, entities, transactions, and/or events identified in Request Nos. 1-46 above.

**ANSWER:**

50.     Please provide all documents relating to all communications between the United States, ARB, and/or the Saudi government relating to United States' concerns that ARB was being used by al Qaeda, like-minded terrorist organizations, extremists intent on supporting and/or committing acts of terrorism, and/or Islamic charities funding terrorism.  Responsive documents shall include, but are not limited to, documents relating to all meetings held between representatives of the United States, ARB, and/or the Saudi government relating to same.

**ANSWER:**

51.     Please provide all documents relating to any internal investigation or audit conducted by ARB relating to any accusation that ARB was being used by al Qaeda, like-minded terrorist organizations, extremists intent on supporting and/or committing acts of terrorism, and/or Islamic charities funding terrorism.  Responsive documents shall include, but are not limited to, any investigation or audit ordered, conducted, supervised, overseen, or reviewed by the Saudi government.

**ANSWER:**

52.     Please provide all documents relating to any joint investigation, audit, examination, and/or remedial action undertaken with the United States concerning ARB's links to al Qaeda and terrorism, ARB accounts and transactions linked to al Qaeda and terrorism, and/or money laundering.

**ANSWER:**

53.     Please provide all documents and information the United States provided to ARB and/or the Saudi government detailing or describing instances of terrorists using ARB, including specific accounts and transactions.

**ANSWER:**

54.     Please provide all documents and information ARB and/or the Saudi government provided to the United States concerning ARB accounts and transactions, including but not limited to, customer background information, account opening documentation, account statements, wire transfer data, anti-money laundering compliance or terrorist financing reviews and reports, action plans, and audit reports.

**ANSWER:**

55.     Please provide all documents discussing the reasons for Suleiman al Rajhi's departure from, and relinquishment of control over, ARB.

23

**ANSWER:**

56.     Please provide all documents governing, describing, detailing, or otherwise relating to ARB's policies, practices, procedures, technologies, and controls concerning Anti-Money Laundering ("AML"), Combatting the Financing of Terrorism ("CFT"), Know Your Customer ("KYC"), Customer Identification ("CI"), Suspicious Transaction Reports ("STRs"), and Suspicious Activity Reports ("SARs").

**ANSWER:**

57.     Please provide all documents governing, describing, detailing, or otherwise relating to ARB's policies, practices, procedures, technologies, and controls aimed at (i) preventing terrorists, extremists, and/or criminals from having access to ARB bank accounts or wire transfer services for transmitting funds, and (ii) detecting such instances of misuse when they occur.

**ANSWER:**

58.     Please provide all documents relating to any investigation, audit, examination, and/or remedial action undertaken by ARB and/or the Saudi government, and/or jointly with the United States, concerning ARB's policies, practices, procedures, technologies, and controls identified in Request Nos. 56-57 above, following the attacks of September 11, 2001.

**ANSWER:**


Date:  May 11, 2021                            /s/  Sean P. Carter
                                               Sean P. Carter, Esq.
                                               William J. Clark, Jr., Esq.
                                               J. Scott Tarbutton, Esq.
                                               COZEN O'CONNOR
                                               1650 Market Street, Suite 2800
                                               Philadelphia, PA  19103
                                               (215) 665-2000

                                               Attorneys for *Lloyd's Syndicate 2*
                                               and *Muenchener* Plaintiffs

James L. Bernard, Esq.
Patrick N. Petrocelli, Esq.
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038
(212) 806-5400

Attorneys for *Arrowood* Plaintiffs


Christopher R. LoPalo, Esq.
NAPOLI SHKOLNIK PLLC
400 Broadhollow Road, Suite 305
Melville, NY  11747
(212) 397-1000

Attorneys for *Augilar*, *Abarca*, *Abedhajajreh*,
*Addesso*, *Aiken*, *Hodges*, and *Abbate* Plaintiffs


Robert C. Sheps, Esq.
SHEPS LAW GROUP, P.C.
25 High Street
Huntington, NY 11743
(631) 249-5600

Attorneys for *Charter Oak* Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the Plaintiffs' First Set of Consolidated Jurisdictional Requests for Production of Documents Directed to Al Rajhi Bank was served via electronic mail and U.S. first-class mail, postage prepaid, this 11th day of May 2021, upon the following:

Matthew S. Leddicotte, Esq.
Reuben J. Sequeira, Esq.
White & Case LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005-3807
mleddicotte@whitecase.com
rsequeira@whitecase.com

Alan R. Kabat, Esq.
Bernabei & Kabat, PLLC
1400 16th Street, N.W.
Suite 500
Washington, D.C. 20036
kabat@bernabeipllc.com
(Defendants' Executive Committee's appointed representative to receive discovery requests and responses in 03-MDL-1570)

_____
J. Scott Tarbutton, Esq.

LEGAL\52221760\1

# Exhibit A

# United States Department of Justice
# United States Attorney's Office
# for the District of Oregon

**ORIGINAL**

## *ADMINISTRATIVE SUBPOENA*

To: Al Rajhi Banking and Investment; Al-Rajhi Bank
C/O King & Spalding
Attn: Isam Salah, Partner
1185 Avenue of Americas
New York, New York
Telephone: (217) 556-2140

---

By service of this subpoena upon you, you are hereby commanded and required to appear before the Internal Revenue Service Criminal Investigation Division and to bring with you and produce for examination the following books, records and papers at the time and place set forth below.

## REQUIRED DOCUMENTS

Authenticated copies of certified bank records, belonging to Soliman Al-But'he from the Al Rajhi Bank, in Riyadh, Saudi Arabia. The records should cover the time period between February 1, 2000 through April 30, 2000, and should include the following documents:

Account records for account number 140608010109206 for the time period of February, March, and

April of 2000, to include:

(1) Copies of signature cards and customer applications;

(2) Copies of bank statements, ledger cards, or records reflecting dates and amounts of deposits and withdrawals;

(3) Copies of debit and credit memos;

(4) Copies of deposit slips and checks deposited (including the backs of the checks);

(5) Copies of withdrawal slips and teller records showing the withdrawal of currency, including records reflecting the type of currency received (U.S. dollars or Saudi Riyals);

(6) Copies of checks issued for withdrawals (including the backs of the checks);

(7) Copies of all records reflecting the cashing of traveler's checks, including teller records, receipts indicating the number of cashier's checks cashed, the denominations of the cashier's checks cashed, and the type of currency received (U.S. dollars or Saudi Riyals);

(8) Records reflecting the customer exchange rate of U.S. dollars to Saudi Riyals on March 13, 2000, March 14, 2000, March 27, 2000, and March 28, 2000;

(9) Records pertaining to the cashing of 130 $1,000 American Express Traveler's checks by Soliman Al-But'he in March of 2000 at Al Rajhi Bank, to include the date and time of the transaction, the amount of the transaction, and type of currency received by Al-But'he (U.S. dollars or Saudi Riyals). (A copy of one of the traveler's checks is attached for review); and

(10) Records pertaining to the deposit and any subsequent disposition of a Bank of America cashier's check, check number 1001040568, issued to Soliman Al-But'he on March 11, 2000, for $21,000. (A copy of the cashiers check is attached for review.)

## PLACE AND TIME OF APPEARANCE

Internal Revenue Service
Criminal Investigation Division
960 Ellendale, Suite A
Medford, Oregon 97504

August 28, 2009; 10:00 a.m.

Issued under authority of 31 United States code, Section 5318(k)(3), by a duly authorized delegate of the Attorney General.

_Kent S. Robinson_   7-17-09

Kent S. Robinson
Acting United States Attorney
U.S. Attorney's Office for the District of Oregon
U.S. Department of Justice

Name, address and phone number of government attorney and investigating agent:

Charles F. Gorder, Jr.,
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, OR 97204
(503) 727-1021

Special Agent Colleen Anderson
Internal Revenue Service CID
960 Ellendale, Suite A
Medford, Oregon 97504
(541) 282-1341