# Exhibit B

*In Re Terrorist Attacks on September 11, 2001* **(03 MDL 1570) (GBD) (SN)**

## AL RAJHI BANK DISCOVERY RELEVANCE CHART

| 1. THE DA'WAH ORGANIZATION REQUESTS ||
|---|---|
| **Plaintiffs' Request** | **Relevance to Claim** |
| 1. Please provide all documents relating to all ARB accounts established or held in the name of, on behalf of, and/or for the benefit of the Da'wah Organizations [International Islamic Relief Organization ("IIRO"), Al Haramain Islamic Relief Organization ("AHIF"), and Muwafaq Foundation (a/k/a Blessed Relief Foundation)], any ARB account for any entity in which the Da'wah Organizations held any beneficial interest, and/or any ARB account over which the Da'wah Organizations and their representatives had signatory authority or had any actual or potential beneficial interest. Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among ARB and the Da'wah Organizations. Responsive documents shall also include, without limitation, documents detailing the opening of and/or closing of the account(s), account signatories, Know-Your-Customer and/or other customer due diligence reports, suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts. As to Muwafaq Foundation, the relevant time period for this Request is from January 1, 1992 through December 31, 2002. | Plaintiffs' First Amended Complaint ("FAC") at ECF No. 56 (Case No. 1:16-cv-07853), alleges that Osama bin Laden and al Qaeda relied on the institutional relationships they established with the Da'wah Organizations to provide the financial and logistical support necessary to build and sustain the al Qaeda terrorist organization, and develop the global strike capabilities necessary to successfully carry out the attacks of September 11, 2001. Indeed, Plaintiffs' FAC specifically asserts that each of the Da'wah Organizations, including the IIRO, AHIF, and Muwafaq Foundation, acted as an al Qaeda "front" that provided a robust, secure, and consistent source of funding and logistical support for al Qaeda's global infrastructure. *See* FAC ¶¶ 119, 123, 124, 158 ("U.S. intelligence reports confirm that Al Rajhi Bank played a critical role in facilitating the terrorist activities of al Qaeda's integrated charity fronts, and 'describe how Al Rajhi Bank has maintained accounts and accepted donations for Saudi charities that the U.S. and other nations have formally designated as fronts for al Qaeda or other terrorist groups.'"); and ¶ 173 (stating that "Al Rajhi Bank both funded and provided financial services to virtually all of al Qaeda's most critical charity fronts").<br><br>*See also* FAC ¶ 125 (Juan Zarate, former deputy national security advisor for combatting terrorism and the first ever assistant secretary for the Treasury for terrorist financing and financial crimes, stated: "Distinguishing between some of the international Wahhabi organizations and terrorist support networks was nearly impossible, especially when support for Al Qaeda and support for spreading Wahhabi beliefs seemed to blend together so seamlessly. This was true in the work of some of the branches of Saudi-based institutions, such as the International Islamic Relief Organization (IIRO).").<br><br>*See also* FAC ¶ 158 ("[I]ntelligence reports indicate that Al Rajhi Bank maintained at least twenty-four (24) accounts and handled unusual transactions for the Al Haramain Islamic Foundation, 'a charity that Treasury officials say has acted as a front for al Qaeda in 13 countries.'"); ¶ 176 |

| | |
|---|---|
| | ("Usama bin Ladin used the entire IIRO network for his terrorist activities."); ¶¶ 178-179 (asserting that ARB maintained and advertised numerous accounts for the IIRO at a time when the IIRO was repeatedly implicated in terrorist activities prior to the 9/11 attacks); ¶¶ 210-211 (Muwafaq Foundation merged directly into al Qaeda in 2001).<br><br>*See also* Exhibit A to the FAC, which provides detailed allegations concerning the terrorist activities of the Saudi da'wah organizations – Muslim World League ("MWL"), International Islamic Relief Organization ("IIRO"), World Assembly of Muslim Youth ("WAMY"), Al Haramain Islamic Foundation, Saudi High Commission ("SHC"), Saudi Red Crescent Society ("SRC"), Saudi Joint Relief Committee ("SJRC"), and Rabita Trust. |
| 2. For each of the ARB accounts identified in response to Request No. 1, please provide any and all lists or summaries, including any lists or summaries that can be generated electronically, of transfers of funds into or out of the accounts. Responsive documents shall include lists or summaries concerning the amounts and sources of funds deposited into the accounts, and/or the amounts and destinations and/or beneficiaries of funds transferred from the accounts. As to Muwafaq Foundation, the relevant time period for this Request is from January 1, 1992 through December 31, 2002. | *See* Request No. 1 relevance citations above. |
| 3. To the extent ARB is not in possession of and is unable to produce lists or summaries identifying all transfers of funds into and from the accounts, including the sources and destinations/beneficiaries of the transfers, please provide all documents identifying: (i) all transfers of funds into the accounts, including the amounts and sources of the funds; and (ii) all transfers of funds out of the accounts, including the amounts and destinations and/or beneficiaries of the funds. As to Muwafaq Foundation, the relevant time period for this Request is from January 1, 1992 through December 31, 2002. | *See* Request No. 1 relevance citations above. |
| 4. Please provide all documents, including any electronically generated lists or summaries, identifying all monetary donations or contributions provided to the Da'wah Organizations by ARB, Suleiman al Rajhi, Saleh al Rajhi, Abdul Rahman al Rajhi, the Suleiman Abdel Aziz al Rajhi Foundation, and/or members of the Al Rajhi family, including but not limited to, the contribution of *zakat* and *haram* funds to the Da'wah Organizations. As to Muwafaq Foundation, the relevant | Plaintiffs' FAC alleges that ARB and members of the Al Rajhi family transferred significant sums of money to al Qaeda charity fronts. *See* FAC ¶ 159 ("Mr. Al Rajhi and family members have been major donors to Islamic charities that are suspected by Western intelligence agencies of funding terrorism, according to CIA reports and federal-court filings by the Justice Department."); ¶ 167 (Al Qaeda member Zacarias Moussaoui testified that ARB was one of the main supporters of the Saudi charity fronts used by al Qaeda, including AHIF); ¶ 174 (ARB |

2

| | |
|---|---|
| time period for this Request is from January 1, 1992 through December 31, 2002. | contributed its own *zakat* and *haram* funds to the al Qaeda charity fronts). |
| 5. Please provide all documents identifying all ARB Principals who simultaneously held a position(s) with the Da'wah Organizations, including but not limited to, documents concerning: (i) Suleiman al Rajhi's relationship with the IIRO and Sanabel al Kheer; (ii) Abdul Aziz al Khereiji's relationship with the Muwafaq Foundation; and (iii) Abdullah al Misfer's relationship with the Al Haramain Islamic Foundation. The relevant time period for this Request is from January 1, 1992 through December 31, 2004. | Plaintiffs' FAC alleges that several senior ARB officials held significant leadership roles in the da'wah organizations that served as al Qaeda charity fronts. *See* FAC ¶¶ 154, 180 (Suleiman al Rajhi, ARB's Chairman, Managing Director, and largest shareholder in the years leading up to the 9/11 attacks, simultaneously served on the Executive Council of the IIRO, and further served on the Board of Trustees of Sanabel, Inc., the U.S. based arm of Sanabel al Kheer). In addition, Abdul Aziz al Khereiji, an ARB executive board member from 1999-2000, simultaneously served as a principal owner of the Muwafaq Foundation and served on its board with Executive Order 13224 Specially Designated Global Terrorist ("SDGT") Yassin Kadi. Moreover, ARB official Abdullah al Misfer concurrently served as the Director of the Palestine Division of Executive Order 13224 SDGT Al Haramain Islamic Foundation while at ARB. |
| 6. Please provide all communications between the ARB Principals and the Da'wah Organizations. The relevant time period for this Request is from January 1, 1992 through December 31, 2004. | *See* Request No. 5 relevance citations above. |
| 7. Please provide all documents relating to all fundraising events that were held for the benefit of the Da'wah Organizations and were promoted, advertised, sponsored, organized, funded, managed, or attended by ARB. Responsive documents shall include, but are not limited to, the identification of all ARB accounts that were maintained and serviced to accept donations for the Da'wah Organizations. As to Muwafaq Foundation, the relevant time period for this Request is from January 1, 1992 through December 31, 2002. | *See* FAC ¶ 174 (ARB assisted the al Qaeda charity fronts with their fundraising activities by *inter alia* advertising the existence and numerical designation of the charity accounts throughout the Muslim world); ¶ 178 (working with the IIRO to solicit donations to the IIRO accounts maintained at ARB); ¶ 179 (ARB collected charitable donations on behalf of the financial/investment arm of the IIRO, Sanabel al Kheer). |
| 8. Please provide all documents relating to any information or notification ARB received that any of the Da'wah Organizations, or any individual or entity employed by and/or affiliated with the Da'wah Organizations, was: (1) implicated in any terrorist activity or event, or in providing any form of material support to any terrorist organization or person; (2) implicated in supporting any armed conflict or militant activity; or (3) implicated in criminal or corrupt activities, including money laundering. | *See* FAC ¶ 156 (2003 Central Intelligence Agency report stating: "Islamic extremists have used Al-Rajhi Banking & Investment Corporation (ARABIC) since at least the mid-1990s as a conduit for terrorist transactions, probably because they find the bank's vast network and adherence to Islamic principles both convenient and ideologically sound. Senior al-Rajhi family members have long supported Islamic extremists and probably know that terrorists use their bank…. The al-Rajhis know they are under scrutiny and have moved to conceal their activities from financial regulatory authorities."); ¶ 174 (ARB and Al Rajhi family members "were expressly aware that the charities for which Al Rajhi Bank provided financial services and funding were al Qaeda fronts, and that the bank was being used as a |

| | |
|---|---|
| | vehicle for laundering funds on behalf of, and transferring funds to, that terrorist organization."); ¶ 178 (ARB maintained numerous accounts for the IIRO throughout the period the IIRO was repeatedly implicated in terrorist activities); ¶ 181 ("By virtue of the leadership positions held by Al Rajhi Bank officials within the IIRO and Sanabel al Kheer, including most notably those held by Suleiman al Rajhi himself, those Al Rajhi Bank officials received express and repeated notifications of the pervasive involvement of the IIRO and its affiliates in supporting al Qaeda and terrorist activities … in addition to the widespread public reporting concerning the terrorism investigations of the various IIRO offices."). |
| 35.  Please provide all documents relating to all communications between ARB and officials of the Al Haramain Islamic Foundation concerning fundraising for Bosnia.  The relevant time period for this request is April 6, 1992 through December 31, 1995. | *See* FAC ¶ 158 ("[I]ntelligence reports indicate that Al Rajhi Bank maintained at least twenty-four (24) accounts and handled unusual transactions for the Al Haramain Islamic Foundation, 'a charity that Treasury officials say has acted as a front for al Qaeda in 13 countries.'").<br><br>*See also* Exhibit A to the FAC at ¶ 133 (stating that the United States designated Al Haramain's branch office in Bosnia-Herzegovina based on its extensive and pervasive involvement in the funding of al Qaeda's activities in that country).<br><br>*See also* U.S. Treasury Department's March 11, 2002 Executive Order 13224 designation of the Bosnia-Herzegovina branch of Al Haramain Islamic Foundation for "supporting terrorist activities and terrorist organizations such as al-Qaida." |

| 2.   THE AL QAEDA OPERATIVE REQUESTS ||
|---|---|
| **Plaintiffs' Request** | **Relevance to Claim** |
| 9.  Please provide all documents relating to all ARB accounts established or held in the name of, on behalf of, and/or for the benefit of the following individuals, any ARB account for any entity in which the following individuals held any beneficial interest, and/or any ARB account over which the following individuals had signatory authority or had any actual or potential beneficial interest:<br><br>a) Osama bin Laden; | Plaintiffs' FAC and ongoing investigation confirm that certain of the 9/11 hijackers, members of al Qaeda, and al Qaeda financiers maintained bank accounts at ARB.  For example:<br><br>*See* FAC ¶ 163 ("Through Al Rajhi Bank, September 11th hijacker Abdulaziz al Omari received funds into his Al Rajhi Bank Account Nos.: ----------6080, ----0061, and Visa Debit Card No. ---- - ---- - ---- -5747.  Al Omari frequently utilized a credit card drawn on Al Rajhi Bank in the planning of the attacks.  On September 7, 2001, four |

4

| | |
|---|---|
| b) 9/11 Hijackers, including Abdulaziz Mohamed al Omari (including ARB Account Nos. 162608010366080 and 39800061, Visa Debit Card No. 4909-8016-2002-5747), and Walid al Shehri (including ARB Account No. 2956080100036881);<br><br>c) Mamdouh Mahmud Salim (including ARB Account No. 001424/4);<br><br>d) Wa'el Hamza Jelaidan (including ARB Account No. 314608010016294);<br><br>e) Abd al Hamid Sulaiman al Mujil;<br><br>f) Yassin al Kadi; and<br><br>g) Soliman al Buthe (including ARB Account No. 140608010109206).<br><br>Responsive documents shall include those identified in Request No. 1. The time period for this Request is January 1, 1992 through December 31, 2004. | days before the 9/11 attacks, al Omari received a wire transfer from Al Rajhi Bank, Buraidah Branch, Jeddah, Saudi Arabia.").<br><br>*See* FAC ¶ 164 ("Further, Mamduh Mahmud Salim, convicted mastermind of the 1998 embassy bombings in Kenya and Tanzania, was carrying records of an Al Rajhi account when arrested in Germany in 1998.").<br><br>*See* Exhibit A to the FAC at ¶ 61 (stating that following Abd al Hamid al Sulaiman al Mujil's Executive Order 13224 designation as a Specially Designated Global Terrorist ("SDGT"), the Saudi government "froze his bank accounts, including an account at Al Rajhi Bank"); *see also* August 14, 2006 U.S. diplomatic cable, *Terrorism Finance: Saudi Response of IIRO's Al-Mua'jjil UNSCR 1267 Designation*, stating that high-ranking officials at the Saudi Ministry of Interior, Saudi Financial Intelligence Unit, and the Saudi Ministry of Foreign Affairs Office of Counter Terrorism were informed about Mujil's bank account at ARB.<br><br>*See* FAC ¶ 158 ("The [intelligence] report states that in 2000, a top official from al-Haramain [Soliman al Buthe] deposited $130,000 in $1,000 traveler's checks into an Al Rajhi account in Riyadh. According to a U.S. indictment, the funds were then sent to al-Qaeda fighters in Chechnya.")<br><br>*See also* FAC ¶ 162 (The U.S. investigations also confirmed that al Qaeda and other terrorist organizations had absolute confidence in Al Rajhi Bank's commitment to their terrorist cause, as reflected by the United States' finding that extremists "ordered operatives in Afghanistan, Indonesia, Pakistan, Saudi Arabia, Turkey, and Yemen" to use Al Rajhi Bank.). |
| 10. For each of the ARB accounts identified in response to Request No. 9, please provide all documents, including any electronically generated lists or summaries, identifying: (i) all transfers of funds into the accounts, including the amounts and sources of the funds; and (ii) all transfers of funds out of the accounts, including the amounts and destinations and/or beneficiaries of the funds. | *See* Request No. 9 relevance citations above. |
| 11. Please provide all documents relating to all transactions, financial or otherwise, involving 9/11 Hijacker Abdulaziz Mohamed al Omari, any entity associated with Omari, and/or any entity in which Omari held a beneficial interest. Responsive documents shall | *See* FAC ¶ 163 ("Through Al Rajhi Bank, September 11th hijacker Abdulaziz al Omari received funds into his Al Rajhi Bank Account Nos.: ----------6080, ----0061, and Visa Debit Card No. ---- - ---- - ---- -5747. Al Omari frequently utilized a credit card drawn on Al Rajhi Bank in |

5

| | |
|---|---|
| include, but are not limited to, documents concerning a wire transfer from ARB's Buraidah Branch to Abdulaziz Mohamed al Omari in the United States on or about September 7, 2001. | the planning of the attacks. On September 7, 2001, four days before the 9/11 attacks, al Omari received a wire transfer from Al Rajhi Bank, Buraidah Branch, Jeddah, Saudi Arabia."). |
| 12. Please provide all documents relating to all transactions, financial or otherwise, involving 9/11 Hijacker Hani Hanjour, any entity associated with Hanjour, and/or any entity in which Hanjour held a beneficial interest. | *See* Plaintiffs' Averment of Facts (ECF No. 3463-1) at ¶ 237 (Saleh al Hussayen, who served on ARB's Shariah Board while on a trip to the United States in 2001, checked into the same hotel where 9/11 hijackers Nawaf al Hazmi, Khalid al Mihdhar, and Hani Hanjour were staying before they woke up on the morning of September 11, 2001, hijacked American Airlines Flight 77, and crashed it into the Pentagon killing approximately 125 military personnel and civilians, and injuring countless others.). Declassified U.S. government documents also indicate that wire transfers originating at ARB were sent to Hanjour in the United States in 1998 and 1999. |
| 13. Please provide all documents relating to all transactions, financial or otherwise, involving Mahmoud Darkazanli and Abdul Fattah Zammar, any entity associated with those individuals, and/or any entity in which those individuals held a beneficial interest. Responsive documents shall include, but are not limited to, all documents referring or relating to any transactions linked to the Hamburg, Germany al Qaeda cell. | *See* FAC ¶ 163 ("U.S. investigations have identified numerous instances in which al Qaeda members used accounts at Al Rajhi Bank to fund and facilitate terrorist attacks. For example, money was funneled to the Hamburg, Germany al Qaeda cell through the Al Rajhi Bank to businessmen Mahmoud Darkazanli and Abdul Fattah Zammar, who in turn provided the al Qaeda cell of September 11th hijackers with financial and logistical support."). |
| 14. Please provide all documents relating to all transactions, financial or otherwise, involving Muhammed Galeb Kalaje Zouaydi, any entity associated with Zouaydi, and/or any entity in which Zouaydi held a beneficial interest. | *See* Plaintiffs' Averment of Facts (ECF No. 3463-1) at ¶ 277 (describing Zouaydi as "al Qaeda's principal financier in Europe"). Zouyadi transferred money to Abdul Fattah Zammar, who is linked to the Hamburg al Qaeda cell. |
| 15. Please provide all documents relating to all transactions, financial or otherwise, involving Omar al Bayoumi, any entity associated with Bayoumi, and/or any entity in which Bayoumi held a beneficial interest. | *See* Request No. 16 relevance citations below. |
| 16. Please provide all documents relating to any business, banking, financial, employment, charitable, religious, or other relationship between Omar al Bayoumi and ARB, including ARB officials Abdul Rahman al Rajhi and Abdullah al Misfer. Responsive documents shall include, but are not limited to, all communications between Omar al Bayoumi and ARB, Abdul Rahman al Rajhi, and/or Abdullah al Misfer. | Plaintiffs' ongoing investigation has identified documentation indicating that Omar al Bayoumi, a Saudi government employee alleged to have provided substantial assistance to 9/11 hijackers Nawaf al Hazmi and Khalid al Mihdhar, was in telephone contact with ARB officials in Saudi Arabia in 2001, including ARB officials Abdul Rahman al Rajhi and Abdullah al Misfer. *See* Exhibits D and E to Declaration of J. Scott Tarbutton. |
| 17. Please provide all documents relating to all transactions, financial or otherwise, involving Fahad al | *See* Request No. 16 relevance citations above. |

6

| | |
|---|---|
| Thumairy, any entity associated with Thumairy, and/or any entity in which Thumairy held a beneficial interest. | |
| 18. Please provide all documents relating to any business, banking, financial, employment, charitable, religious, or other relationship between Fahad al Thumairy and ARB, including ARB officials Abdul Rahman al Rajhi and Abdullah al Misfer. Responsive documents shall include, but are not limited to, all communications between Fahad al Thumairy and ARB, Abdul Rahman al Rajhi, and/or Abdullah al Misfer. | *See* Request No. 16 relevance citations above. |
| 19. Please provide all documents relating to all transactions, financial or otherwise, involving Mohammed Jamal Khalifa, any entity associated with Khalifa, and/or any entity in which Khalifa held a beneficial interest. The relevant time period for this request is January 1, 1992 through December 31, 2004. | *See* Request No. 20 relevance citations below. |
| 20. Please provide all documents relating to any business, banking, financial, employment, charitable, religious, or other relationship between Mohammed Jamal Khalifa and ARB, including ARB official Abdullah al Misfer. Responsive documents shall include, but are not limited to, all communications between Khalifa and ARB, and/or Abdullah al Misfer. The relevant time period for this request is January 1, 1992 through December 31, 2004. | Plaintiffs' ongoing investigation has identified documentation indicating that Mohammed Jamal Khalifa, Osama bin Laden's brother-in-law and member of al Qaeda, had contact with ARB officials in Saudi Arabia, including ARB officials Abdul Rahman al Rajhi and Abdullah al Misfer. |
| 21. Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between ARB and/or Suleiman al Rajhi and Akida Bank, Bank al Taqwa, Youssef Nada, and Ahmed Idris Nasreddin. Responsive documents shall include, but are not limited to, all communications between ARB and/or Suleiman al Rajhi and those persons or entities. | *See* FAC ¶ 187 ("Suleiman al Rajhi also was a member of the board of directors of Akida Bank in the Bahamas, a Specially Designated Global Terrorist ("SDGT") entity pursuant to Executive Order 13224. Akida Bank was run by Youssef Nada, a noted terrorist financier, with whom Suleiman al Rajhi had a close and longstanding relationship."); ¶ 188 ("Suleiman al Rajhi also enjoyed a long and ongoing relationship with Ahmed Idris Nasreddin, yet another SDGT. Nasreddin and Nada are both founders and directors of Bank al Taqwa, itself a SDGT that operated from the Bahamas. According to the U.S. Treasury Department, 'Usama bin Laden and his al-Qaida organization received financial assistance from Youssef Nada. Al Taqwa provides investment advice and cash transfer mechanisms for al Qaida and other radical Islamic groups.'"). |
| 22. Please provide all documents relating to all transactions, financial or otherwise, involving Akida Bank, Bank al Taqwa, Youssef Nada, and Ahmed Idris Nasreddin (the "SDGTs"), any entity associated with | *See* Request No. 21 relevance citations above. |

7

| | |
|---|---|
| SDGTs, and/or any entity in which the SDGTs held a beneficial interest. | |
| 33. Please provide all documents responsive to the July 17, 2009 Administrative Subpoena served on ARB, attached hereto as <u>Exhibit A</u>. | *See* FAC ¶ 158 ("The [intelligence] report states that in 2000, a top official from al-Haramain deposited $130,000 in $1,000 traveler's checks into an Al Rajhi account in Riyadh. According to a U.S. indictment, the funds were then sent to al-Qaeda fighters in Chechnya. In connection with the resulting federal prosecution of an al Haramain official, the U.S. government issued an administrative subpoena to Al Rajhi Bank, requesting that Al Rajhi Bank produce documents relevant and essential to the prosecution. Al Rajhi Bank refused to comply."). <br><br> *See also* <u>Exhibit A</u> to the FAC at ¶¶ 145-149 (discussing Soliman al Buthe's deposit of funds into his bank account at ARB). |
| 34. Please provide all documents relating to the deposit of $130,000.00 in $1,000.00 traveler's checks, and a $21,000.00 cashier's check, by Soliman al Buthe in 2000. | *See* Request No. 33 relevance citations above. |

| **3. THE U.S. FINANCIAL REQUESTS** ||
|---|---|
| **Plaintiffs' Request** | **Relevance to Claim** |
| 23. Please provide all documents, including any electronically generated lists or summaries, identifying all monetary donations, contributions, grants, and/or transfers of money from ARB, Suleiman al Rajhi, and/or any benevolent or charitable organization associated with ARB, Suleiman al Rajhi, or any member of the Al Rajhi family, to beneficiaries in the United States. Responsive documents shall include, but are not limited to, all communications with recipients of those donations, contributions, grants, and/or transfers of money. | Plaintiffs' requests seek ARB's financial dealings in the United States in general and specifically what funds ARB transferred into the United States to al Qaeda support entities. Production of the requested documents goes directly to the heart of the jurisdictional inquiry as to what extent ARB's own funding activities in support of al Qaeda were aimed at the United States specifically. |
| 24. Please provide all documents, including any electronically generated lists or summaries, identifying all monetary donations, contributions, grants, and/or transfers of money from ARB, Suleiman al Rajhi, and/or any benevolent or charitable organization associated with ARB, Suleiman al Rajhi, or any member of the Al Rajhi family, to any mosque, Islamic center, religious institution, or charitable organization operating in California, United States. Responsive documents shall include, but are not limited to, all communications with | Plaintiffs' requests seek ARB's financial dealings in the United States in general and specifically what funds ARB transferred into the United States to al Qaeda support entities. Production of the requested documents goes directly to the heart of the jurisdictional inquiry as to what extent ARB's own funding activities in support of al Qaeda were aimed at the United States specifically. |

8

| | |
|---|---|
| recipients of those donations, contributions, grants, and/or transfers of money. | |
| 25. Please provide all documents, including any electronically generated lists or summaries, identifying all monetary donations, contributions, grants, and/or transfers of money to beneficiaries in the United States authorized, managed, or overseen by Abdul Rahman al Rajhi. Responsive documents shall include, but are not limited to, all communications between Abdul Rahman al Rajhi and the recipients of those donations, contributions, grants, and/or transfers of money. | Plaintiffs' requests seek ARB's financial dealings in the United States in general and specifically what funds ARB transferred into the United States to al Qaeda support entities. Production of the requested documents goes directly to the heart of the jurisdictional inquiry as to what extent ARB's own funding activities in support of al Qaeda were aimed at the United States specifically. |

| 4. THE TERROR FINANCING ARTICLE REQUESTS ||
|---|---|
| **Plaintiffs' Request** | **Relevance to Claim** |
| 26. Please provide all documents relating to the issues, relationships, transactions, and/or events described in the July 26, 2007 Wall Street Journal article, *Terror Finance: U.S. Tracks Saudi Bank Favored by Extremists*, including all documents relating to any inquiry or investigation conducted by or on behalf of ARB into those matters. | *See* FAC ¶¶ 156-166, 168 (describing the Wall Street Journal's review of the 2003 Central Intelligence Agency report and other intelligence reports authored by the CIA and other U.S. agencies concerning ARB's extensive sponsorship of al Qaeda and associated terrorist organizations). |
| 27. Please provide all documents relating to any communications or directives from Suleiman al Rajhi to ARB's Board of Directors and/or other ARB personnel, between September 11, 2001 and December 31, 2004, concerning contributions to da'wah or charitable organizations. | *See* FAC ¶ 160 (Confirming the depth of Al Rajhi Bank's commitment to supporting al Qaeda and related terrorist organizations, the "2003 CIA Report claims that a year after Sept. 11, with a spotlight on Islamic charities, Mr. Al Rajhi ordered Al Rajhi Bank's board 'to explore financial instruments that would allow the bank's charitable contributions to avoid official Saudi scrutiny.'"). |
| 28. Please provide all documents relating to the allegation that Suleiman al Rajhi asked ARB personnel to explore or design financial instruments or technologies that would allow ARB's contributions to the da'wah organizations and/or other charitable designees to circumvent Saudi government identification, examination, scrutiny, or auditing. | *See* FAC ¶ 160 (Confirming the depth of Al Rajhi Bank's commitment to supporting al Qaeda and related terrorist organizations, the "2003 CIA Report claims that a year after Sept. 11, with a spotlight on Islamic charities, Mr. Al Rajhi ordered Al Rajhi Bank's board 'to explore financial instruments that would allow the bank's charitable contributions to avoid official Saudi scrutiny.'"). |
| 29. Please provide all documents relating to any transfer of any funds of Suleiman al Rajhi, or funds in which Suleiman al Rajhi held some beneficial interest, to offshore accounts in or around 2002. | *See* FAC ¶ 160 (According to 2003 CIA report, "Mr. Al Rajhi 'transferred $1.1 billion to offshore accounts – using commodity swaps and two Lebanese banks – citing a concern that U.S. and Saudi authorities might freeze his assets.'"). |

| Plaintiffs' Request | Relevance to Claim |
|---|---|
| 30. Please provide all documents describing computer codes employed in relation to the transfer of funds, as well as any documents relating to any proposed modification of those codes or proposed development of new codes after September 11, 2001. | *See* FAC ¶ 161 (The 2003 CIA Report also discusses efforts by Suleiman and Saleh al Rajhi to conceal and disguise unusual transfers through purported charities. The report says that Suleiman and Saleh transferred $4 million to parties in Germany and Pakistan in December 1998 using "a unique computer code to send funds at regular intervals to unspecified recipients, suggesting that they were trying to conceal the transactions and that the money may have been intended for illegitimate ends."). |
| 31. Please provide all documents relating to any transfer of funds associated with Suleiman al Rajhi or Saleh al Rajhi to parties in Germany and Pakistan in December 1998. | *See* FAC ¶ 161 (The 2003 CIA Report also discusses efforts by Suleiman and Saleh al Rajhi to conceal and disguise unusual transfers through purported charities. The report says that Suleiman and Saleh transferred $4 million to parties in Germany and Pakistan in December 1998 using "a unique computer code to send funds at regular intervals to unspecified recipients, suggesting that they were trying to conceal the transactions and that the money may have been intended for illegitimate ends."). |
| 32. Please provide all documents relating to the delivery of funds to recipients in Indonesia by couriers, including but not limited to the delivery of money to KOMPAK ("Komite Penanggulangan Krisis") by ARB couriers. | *See* FAC ¶ 165 (U.S. investigations also documented very hands-on dealings between Al Rajhi Bank and terrorists at operational levels. In this regard, the 2003 CIA Report says that Al Rajhi Bank couriers "delivered money to the Indonesian insurgent group Kompak to fund weapons purchases and bomb-making activities." Kompak is an al Qaeda affiliate, which also received funding through al Haramain Islamic Foundation.). |

| 5. THE GOLDEN CHAIN REQUESTS ||
|---|---|
| **Plaintiffs' Request** | **Relevance to Claim** |
| 36. Please provide all documents relating to any business, banking, financial, employment, charitable, religious, or other relationship between ARB and/or Suleiman al Rajhi and any of the Golden Chain Related Individuals, and/or any individual or entity associated therewith. Responsive documents shall include, but are not limited to, all communications between ARB and/or Suleiman al Rajhi and the Golden Chain Related Individuals. | *See* FAC ¶ 90, citing to the 9/11 Commission Report at p. 55 ("Bin Ladin understood better than most of the volunteers the extent to which the continuation and eventual success of the jihad in Afghanistan depended on an increasingly complex, almost world-wide organization. This organization included a financial support network that came to be known as the 'the Golden Chain,' put together mainly by financiers in Saudi Arabia and Persian Gulf states. Donations flowed through charities and other non-governmental organizations (NGOs). Bin Ladin and the 'Afghan Arabs'" drew largely on funds raised by this network, whose agents roamed world markets to buy arms and supplies for the mujahideen or 'holy warriors.'"). |

| | |
|---|---|
| | *See also* FAC ¶ 136 ("The funding provided by the Golden Chain donors, including Suleiman al Rajhi, Khalid bin Mahfouz and bin Laden family members, was critical to the development of the al Qaeda organization, sustained al Qaeda in the years leading up to the September 11th attacks, and enabled bin Laden to acquire the resources essential to those Attacks.  Indeed, the 9/11 Commission specifically concluded that bin Laden 'enjoyed a strong financial position in Afghanistan, *thanks to Saudi and other financiers associated with the Golden Chain*.' (emphasis supplied).").<br><br>*See also* FAC ¶ 180 ("Meanwhile, several senior Al Rajhi Bank officials were simultaneously serving as senior officials of the IIRO and/or Sanabel.  Most notably, Suleiman al Rajhi served on the Executive Council of the IIRO, along with several other members of the Golden Chain.  Suleiman al Rajhi also served on the Board of Trustees of Sanabel, Inc., the U.S.-based arm of Sanabel al Kheer, again along with another member of the Golden Chain."). |
| 37.  Please provide all documents relating to all ARB accounts established or held in the name of, on behalf of, and/or for the benefit of the Golden Chain Related Individuals, any ARB account for any entity in which the Golden Chain Related Individuals held any beneficial interest, and/or any ARB account over which the Golden Chain Related Individuals and/or their representatives had signatory authority or had any actual or potential beneficial interest.  Responsive documents shall include those identified in Request No. 1. | *See* Request No. 36 relevance citations above. |
| 38.  Please provide all documents relating to all transactions, financial or otherwise, involving the Golden Chain Related Individuals, any entity associated with the Golden Chain Related Individuals, and/or any entity in which the Golden Chain Related Individuals held a beneficial interest.  Responsive documents shall include, but are not limited to, all documents relating to the transfer of funds to the Golden Chain Related Individuals from ARB, Suleiman al Rajhi, and/or members of the Al Rajhi family | *See* Request No. 36 relevance citations above. |

| 6. THE SAAR NETWORK REQUESTS ||
|---|---|
| **Plaintiffs' Request** | **Relevance to Claim** |
| 39. Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between ARB and/or Suleiman al Rajhi and any SAAR Network Related Entity and/or SAAR Network Related Individual. Responsive documents shall include, but are not limited to, all communications between ARB and/or Suleiman al Rajhi and the SAAR Network Related Entity and/or SAAR Network Related Individual. | *See* FAC ¶ 185 ("Suleiman al Rajhi established, founded, financed, and was the namesake of the SAAR network of 'charities' and front groups organized at 555 Grove Street in Herndon, Virginia. Until its dissolution, the SAAR Network was comprised of over 100 entities at this single address, with overlapping officers and directors set up to launder money to al Qaeda and international terrorism. According to the Department of Defense, 'the SAAR network includes more than 100 Muslim think tanks, charities and companies. The al-Rajhi family utilized SAAR to fund Islamic extremist organizations and has ties to al Qaida.'").  *See also* Exhibit A to the FAC at ¶ 80 ("The SAAR Network of businesses and charities was created to providing funding, money laundering and other material support to terrorist organizations, including al Qaeda."); ¶ 115 (stating that "WAMY's U.S. branch was deeply involved in the terrorist activities of the SAAR Network of businesses and charities"); ¶ 219 ("Rabita Trust has share common officers and directors with several other charities operating within al Qaeda's infrastructure, including the MWL and SAAR Network of charities and businesses."); ¶ 219 (MWL Secretary Generals Abdullah Omar Naseef and Abdullah al Obaid served as officers certain charities and businesses operating within the SAAR Network). |
| 40. Please provide all documents relating to all transactions, financial or otherwise, involving any SAAR Network Related Entity and/or SAAR Network Related Individual. Responsive documents shall include, but are not limited to, all documents relating to the transfer of funds to any SAAR Network Related Entity and/or SAAR Network Related Individual from ARB, Suleiman al Rajhi, and/or members of the Al Rajhi family. | *See* Request No. 39 relevance citations above. |
| 41. Please produce all documents relating to the post-September 11, 2001 raids on the SAAR Network Related Entities and/or SAAR Network Related Individuals, conducted by U.S. government authorities. Responsive documents shall include, but are not limited to, copies of all records, materials, property, or things which were seized by U.S. authorities. | *See* FAC ¶ 186 ("In March 2002, the entities comprising the SAAR network were raided under a federal search warrant by the U.S. Treasury Department. Known as Operation Green Quest, federal authorities were looking for 'potential money laundering and tax evasion activities and their ties to terrorist groups such as . . . al Qaeda as well as individual terrorists . . . (including Osama bin Laden).' Authorities said that the probe of the Herndon groups was the largest federal investigation of terrorism financing in |

|  | the world. An affidavit from Homeland Security agent David Kane said that the SAAR network in Herndon had sent more than $26 million in untraceable money overseas and that the leaders of the organization 'have committed and conspired to . . . provide material support to foreign terrorist organizations.'"). *See also* <u>Exhibit A</u> to the FAC at ¶ 80 ("In March of 2003, federal authorities executed search warrants at the offices of IIRO in Washington, DC, in connection with an ongoing federal investigation of the illegal activities of the Northern Virginia and Washington based charities and for-profit enterprises within the SAAR Network."); ¶ 115 ("Federal authorities raised WAMY's U.S. offices in 2004, in connection with an ongoing investigation of the SAAR Network's role in sponsoring al Qaeda."). |

| 7. THE SALEH AL HUSSAYEN REQUESTS ||
|---|---|
| **Plaintiffs' Request** | **Relevance to Claim** |
| 42. Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between ARB and Saleh al Hussayen, including without limitation, any and all documents relating to all positions Hussayen held within ARB. Responsive documents shall include, but are not limited to, documents detailing or describing Hussayen's role and responsibilities with ARB's Shariah Board. | *See O'Neill v. Asat Trust Reg.* (*In Re: Terrorist Attacks on September 11, 2001* (Asat Trust Reg.)), 714 F.3d 659 (2d Cir. 2013). The Second Circuit Court of Appeals authorized jurisdictional discovery as to Saleh al Hussayen, a member of ARB's Shariah Board, finding that Hussayen's "travels to the United States shortly before the September 11, 2001 attacks, as well as his decision to switch hotels *to stay in the same hotel as at least three of the hijackers*, cast his activities at Al Rajhi Bank and his alleged indirect funding of al Qaeda in a different light." *Id.* at 679 (emphasis original). "These additional allegations not only suggest the possibility that he may have provided direct aid to members of al Qaeda, but they also raise a plausible inference that he may have intended his alleged indirect support of al Qaeda to cause injury in the United States." *See also* Plaintiffs' Averment of Facts (ECF No. 3463-1) at ¶¶ 231-236 (discussing Hussayen's fundraising trip to the United States in 2001, and scheduled meetings with officials from the Saudi da'wah organizations in the Washington D.C. area, Muslim World League ("MWL") and World Assembly of Muslim Youth ("WAMY")); ¶ 237 ("On September 6, 2001, Hussayen arrived in Herndon, VA. Then, just days before the September 11th attacks, Hussayen abruptly moved from his original hotel to the |

13

| | Marriott Residence Inn just a few miles away. The Marriott Residence Inn is the same hotel where September 11th hijackers Hazmi, Mihdhar, and Hanjour were staying before they woke up on the morning of September 11th, hijacked American Airlines Flight 77 and crashed it into the Pentagon killing approximately 125 military personnel and civilians, and injuring countless others."). |
|---|---|
| 43. Please provide all documents relating to Saleh al Hussayen's trip to the United States in 2001, including but not limited to, airline tickets and receipts, hotel reservations and receipts, travel itineraries, points of destination, scheduled events and meetings, identification of all members of Hussayen's delegation, correspondence, reports, and memoranda. Responsive documents shall include, but are not limited to, all communications relating to same. | *See* Request No. 42 relevance citations above. |
| 44. Please provide all documents relating to any investigation conducted by ARB and/or the Saudi government concerning Saleh al Hussayen's trip to the United States in 2001, Hussayen's stay at the Marriott Residence Inn in Herndon, VA on September 10, 2001, and Hussayen's detainment and questioning by the FBI following the attacks of September 11, 2001. Responsive documents shall include, but are not limited to, all communications between ARB and the Saudi government regarding same. | *See* Request No. 42 relevance citations above. |

| 8. THE TERRORISM FINANCE INVESTIGATION REQUESTS | |
|---|---|
| **Plaintiffs' Request** | **Relevance to Claim** |
| 45. Please provide all documents relating to any investigation or audit relating to any potential criminal or terrorist activity, following the attacks of September 11, 2001, which references or addresses any ARB Principal, employee, branch office, account, and/or transaction. | Plaintiffs' requests seek information concerning terror finance investigations conducted by ARB, Saudi Arabia, and the United States following the 9/11 attacks. Indeed, the FAC details the U.S. government's post 9/11 attempts to investigate ARB's connections with al Qaeda. *See* FAC ¶¶ 169-171. Post 9/11 investigation records concerning ARB's ties to terrorist organization and proxies is directly relevant to any material support provided by ARB to al Qaeda. |
| 46. Please provide all documents relating to all ARB accounts that were seized, frozen, closed, monitored, or in any way restricted following the attacks of September 11, 2001. Responsive documents shall include, but are | Plaintiffs' requests seek information concerning terror finance investigations conducted by ARB, Saudi Arabia, and the United States following the 9/11 attacks. Indeed, the FAC details the U.S. government's post 9/11 attempts |

14

| | |
|---|---|
| not limited to, all documents referring or relating to the reasons or basis for the seizing, freezing, closing, monitoring, or restricting of the accounts. | to investigate ARB's connections with al Qaeda.  *See* FAC ¶¶ 169-171.  Post 9/11 investigation records concerning ARB's ties to terrorist organization and proxies is directly relevant to any material support provided by ARB to al Qaeda, including the identification of all ARB accounts that were seized, frozen, closed, monitored, or in any way restricted following the attacks. *See also* Exhibit A to the FAC at ¶ 61 (stating that following Abd al Hamid al Sulaiman al Mujil's Executive Order 13224 designation as a Specially Designated Global Terrorist ("SDGT"), the Saudi government "froze his bank accounts, including an account at Al Rajhi Bank"); *see also* August 14, 2006 U.S. diplomatic cable, *Terrorism Finance: Saudi Response of IIRO's Al-Mua'jjil UNSCR 1267 Designation*, stating that high-ranking officials at the Saudi Ministry of Interior, Saudi Financial Intelligence Unit, and the Saudi Ministry of Foreign Affairs Office of Counter Terrorism were informed about Mujil's bank account at ARB. |
| 47.  Please provide all documents relating to any investigation, inquiry, review, or audit conducted by ARB and/or the Saudi government which references or addresses any of the individuals, entities, accounts, transactions, and/or events identified in Request Nos. 1-46 above. | Plaintiffs' requests seek information concerning terror finance investigations conducted by ARB, Saudi Arabia, and the United States following the 9/11 attacks.  Indeed, the FAC details the U.S. government's post 9/11 attempts to investigate ARB's connections with al Qaeda.  *See* FAC ¶¶ 169-171.  Post 9/11 investigation records concerning ARB's ties to terrorist organization and proxies is directly relevant to any material support provided by ARB to al Qaeda. |
| 48.  Please provide all documents relating to any investigation, inquiry, review, or audit conducted by the United States government, United Nations, and/or any foreign government or international body which references or addresses any of the individuals, entities, accounts, transactions, and/or events identified in Request Nos. 1-46 above.  Responsive documents shall include, but are not limited to, all documents produced to ARB and/or the Saudi government by the United States, United Nations, and/or foreign government concerning the individuals, entities, transactions, and/or events. | Plaintiffs' requests seek information concerning terror finance investigations conducted by ARB, Saudi Arabia, and the United States following the 9/11 attacks.  Indeed, the FAC details the U.S. government's post 9/11 attempts to investigate ARB's connections with al Qaeda.  *See* FAC ¶¶ 169-171.  Post 9/11 investigation records concerning ARB's ties to terrorist organization and proxies is directly relevant to any material support provided by ARB to al Qaeda. |
| 49.  Please provide all communications between ARB and the Saudi government which references or addresses the individuals, entities, transactions, and/or events identified in Request Nos. 1-46 above. | Plaintiffs' requests seek information concerning terror finance investigations conducted by ARB, Saudi Arabia, and the United States following the 9/11 attacks.  Indeed, the FAC details the U.S. government's post 9/11 attempts to investigate ARB's connections with al Qaeda.  *See* FAC ¶¶ 169-171.  Post 9/11 investigation records concerning ARB's ties to terrorist organization and proxies is directly relevant to any material support provided by ARB to al |

| | |
|---|---|
| | Qaeda, including all communications between ARB and the Saudi government regarding same. |
| 50. Please provide all documents relating to all communications between the United States, ARB, and/or the Saudi government relating to United States' concerns that ARB was being used by al Qaeda, like-minded terrorist organizations, extremists intent on supporting and/or committing acts of terrorism, and/or Islamic charities funding terrorism. Responsive documents shall include, but are not limited to, documents relating to all meetings held between representatives of the United States, ARB, and/or the Saudi government relating to same. | *See* FAC ¶ 168 (Faced with a wealth of compelling evidence of ARB's long-standing material support for al Qaeda, U.S. officials sought reforms of the bank via direct negotiations with the government of Saudi Arabia); ¶ 169 (U.S. State Department diplomatic cables confirm that "U.S. officials conveyed their 'real concerns about the financial activities facilitated by Al-Rajhi' to senior Saudi officials, and sought unprecedented reform at Al Rajhi Bank in the years following the September 11th attacks."); ¶ 170 (Treasury Assistant Secretary Juan Zarate explained to Saudi banking officials that the United States needs "to be assured that Al-Rajhi is doing everything possible regarding compliance and cooperation. Particular accounts of concern need to be investigated and the bank's compliance structure needs to be reviewed.").<br><br>*See also* November 25, 2004 U.S. diplomatic cable, *Joint Examination of Al Rajhi Bank Through the Joint Terrorist Financing Task Force*, cited at ¶ 172, stating that "representatives of the U.S. and Kingdom of Saudi Arabia have discussed U.S. concerns that Al Rajhi Banking and Investment Corporation (Al Rajhi Bank) has been used by al Qaida and like-minded terrorist groups." |
| 51. Please provide all documents relating to any internal investigation or audit conducted by ARB relating to any accusation that ARB was being used by al Qaeda, like-minded terrorist organizations, extremists intent on supporting and/or committing acts of terrorism, and/or Islamic charities funding terrorism. Responsive documents shall include, but are not limited to, any investigation or audit ordered, conducted, supervised, overseen, or reviewed by the Saudi government. | *See* September 27, 2004 U.S. diplomatic cable, *Terrorist Financing: Al-Rajhi Bank*, cited at ¶ 170, stating that ARB hired Ernst & Young to conduct a full scope audit in August 2003. |
| 52. Please provide all documents relating to any joint investigation, audit, examination, and/or remedial action undertaken with the United States concerning ARB's links to al Qaeda and terrorism, ARB accounts and transactions linked to al Qaeda and terrorism, and/or money laundering. | *See* FAC ¶ 171 (Saudi Arabia agreed to conduct a joint review with Treasury Department officials "to ensure the institution is not operating in a way that provides safe haven for the financial transactions of terrorists and their supporters.").<br><br>*See also* November 25, 2004 U.S. diplomatic cable, *Joint Examination of Al Rajhi Bank Through the Joint Terrorist Financing Task Force*, cited at ¶ 172, stating that the U.S. Treasury Department will work with the Saudi Arabian Monetary Agency "on terms of reference for conducting a joint examination of certain accounts at Al Rajhi Bank. The joint examination will include a review of both customer information relevant to the specified accounts and |

| | transactions (wire transfer, check payment, cash management, etc.) processed through those accounts. Additionally, the examination team will review anti-money laundering compliance files related to all of the accounts." |
|---|---|
| 53. Please provide all documents and information the United States provided to ARB and/or the Saudi government detailing or describing instances of terrorists using ARB, including specific accounts and transactions. | *See* FAC ¶ 171 (U.S. officials "provided the Saudi government with information documenting specific instances of terrorists using the Al Rajhi Bank, including information about specific accounts and transactions of interest."). |
| 54. Please provide all documents and information ARB and/or the Saudi government provided to the United States concerning ARB accounts and transactions, including but not limited to, customer background information, account opening documentation, account statements, wire transfer data, anti-money laundering compliance or terrorist financing reviews and reports, action plans, and audit reports. | *See* November 25, 2004 U.S. diplomatic cable, *Joint Examination of Al Rajhi Bank Through the Joint Terrorist Financing Task Force*, cited at ¶ 172, stating that as part of the joint U.S.-Saudi examination, ARB and/or the Saudi government was to provide Juan Zarate, U.S. Treasury Assistant Secretary for Terrorist Financing and Financial Crimes, and his examination team with relevant records, including but not limited to, listings of accounts for specified individuals, complete account opening documentation, customer background information, account statements, wire transfer data, and audit reports. |

| 9. THE SULEIMAN AL RAJHI DEPARTURE REQUEST ||
|---|---|
| **Plaintiffs' Request** | **Relevance to Claim** |
| 55. Please provide all documents discussing the reasons for Suleiman al Rajhi's departure from, and relinquishment of control over, ARB. | *See* FAC ¶ 168 ("Faced with a wealth of compelling evidence of ARB's long-standing material support for al Qaeda," U.S. officials sought "reforms of the bank via direct negotiations with the Saudi government," which led to significant leadership and managerial changes at ARB, including Suleiman al Rajhi's departure from ARB.). |

17

| 10. THE ARB FINANCIAL CONTROLS REQUESTS ||
|---|---|
| **Plaintiffs' Request** | **Relevance to Claim** |
| 56. Please provide all documents governing, describing, detailing, or otherwise relating to ARB's policies, practices, procedures, technologies, and controls concerning Anti-Money Laundering ("AML"), Combatting the Financing of Terrorism ("CFT"), Know Your Customer ("KYC"), Customer Identification ("CI"), Suspicious Transaction Reports ("STRs"), and Suspicious Activity Reports ("SARs"). | ARB's financial controls are relevant to Plaintiffs' claims. To the extent that Plaintiffs can show that banking transactions were facilitated by ARB in violation of ARB's own financial policies and controls (AML, CFT, KYC, CI, STRs, SARs), an inference arises that ARB facilitated those transaction with a nefarious intent. |
| 57. Please provide all documents governing, describing, detailing, or otherwise relating to ARB's policies, practices, procedures, technologies, and controls aimed at (i) preventing terrorists, extremists, and/or criminals from having access to ARB bank accounts or wire transfer services for transmitting funds, and (ii) detecting such instances of misuse when they occur. | ARB's financial controls are relevant to Plaintiffs' claims. To the extent that Plaintiffs can show that banking transactions were facilitated by ARB in violation of ARB's own financial policies and controls (AML, CFT, KYC, CI, STRs, SARs), an inference arises that ARB facilitated those transaction with a nefarious intent. |
| 58. Please provide all documents relating to any investigation, audit, examination, and/or remedial action undertaken by ARB and/or the Saudi government, and/or jointly with the United States, concerning ARB's policies, practices, procedures, technologies, and controls identified in Request Nos. 56-57 above, following the attacks of September 11, 2001. | *See* November 25, 2004 U.S. diplomatic cable, *Joint Examination of Al Rajhi Bank Through the Joint Terrorist Financing Task Force*, cited at ¶ 172, stating that as part of the joint U.S.-Saudi examination, ARB and/or the Saudi government was to provide Juan Zarate, U.S. Treasury Assistant Secretary for Terrorist Financing and Financial Crimes, and his examination team with relevant records, including but not limited to, anti-money laundering compliance or terrorist financing reviews, reports concerning anti-money laundering compliance or terrorist financing, and audits of compliance and AML/KYC. |

LEGAL\53554273\1