# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) ECF Case |
|---|---|
| This document relates to:<br><br>*Katherine Dillaber, et al., v. Islamic Republic of Iran, et al.* | 18-cv-03162 (GDB)(SN) ECF Case |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL FINAL DEFAULT JUDGMENT ON BEHALF OF PERSONAL INJURY PLAINTIFF KATHERINE DILLABER

For the reasons set forth below and in the accompanying declaration of Amanda Fox Perry ("Perry Declaration"), Plaintiff Katherine ("Kathy") Dillaber, by and through counsel, Fay Law Group, PA, respectfully moves this Court for an Order awarding (1) compensatory damages for pain and suffering in amounts commensurate with the injuries she sustained during the Terrorist Attacks on September 11, 2001, and in accordance with prior precedent in the U.S. District Court for the District of Columbia in similar cases factoring in an upward departure on damages values based on the indelible impact of the Terrorist Attacks of September 11, 2001; (2) prejudgment interest at the rate of 4.96% per annum, compounded annually for the period since September 11, 2001, until the date of the judgment; and (3) leave for Plaintiff Kathy Dillaber to seek punitive damages, economic damages, or other damages at a later date; and (4) for all *Dillaber* Plaintiffs to submit applications for damages in later stages, to the extent such awards have not previously been addressed.

## I.      PROCEDURAL BACKGROUND

The *Dillaber* Plaintiffs sued the Islamic Republic of Iran ("Iran") and the Iranian Ministry of Information and Security ("MOIS") (collectively, "the Iran Defendants") in connection with the terrorist attacks on September 11, 2001. On October 17, 2019, the *Dillaber* Plaintiffs filed a

Motion for Default Judgment against the Islamic Republic of Iran and the Iranian Ministry of Information and Security for Liability Only. *See* 18-cv-3162 (GBD)(SN), ECF No. 67. On October 22, 2019, the Court granted the Motion and referred the matter to Magistrate Judge Netburn for determination of damages. ECF No. 70.

On March 10, 2020, the *Dillaber* Plaintiffs filed a Letter-Motion seeking guidance for the damages assessment process, as the claims in this case are varied and almost all Plaintiffs have more than one claim. *See* 18-cv-03162, ECF No. 72. The *Dillaber* Plaintiffs are comprised of members of two families, the Dillabers and the Clarkes. The Dillaber family plaintiffs' claims arise from injuries *and* death occurring on September 11, 2001.[1] The Clarke family plaintiffs' claims arise from exposure injuries that developed after September 11, 2001.[2]

In their Letter-Motion, Plaintiffs proposed filing a single Motion for Partial Final Default Judgment for all categories of the Dillaber family plaintiffs' claims, and sought guidance from the Court for proceeding with the Clarke family claims.

---

[1] The Dillaber family plaintiffs' claims include: five (5) solatium claims for family members of Patricia Mickley, who was killed in the September 11th attacks; one (1) claim for pain and suffering incurred by Kathy Dillaber, a personal injury plaintiff who sustained physical injuries in the September 11th attacks; and four (4) solatium claims for family members of Kathy Dillaber, who was injured in the September 11th attacks. Kathy Dillaber seeks compensatory damages for her pain and suffering as well as solatium damages arising from her sister's death. Plaintiffs John Dillaber and Anne Dillaber Youngblood are siblings of Kathy Dillaber and Patricia Mickley, and they seek solatium damages for Kathy Dillaber's injuries and Patricia Mickley's death. The claims of Kathy Dillaber and Patricia Mickley's parents are brought by Anne Dillaber Youngblood, personal representative for the Estates of Jacqueline Dillaber and Philip Dillaber. The estates seek solatium damages for Kathy Dillaber's injuries and Patricia Mickley's death.

[2] The Clark family plaintiffs' claims include one (1) claim for pain and suffering incurred by Plaintiff Mary Jo Clarke, who sustained injuries in the weeks following the attacks as a result of exposure during the clean-up and recovery process in lower Manhattan; and, two (2) solatium claims for family members of Mary Jo Clarke for the injuries she sustained during clean-up and recovery process in lower Manhattan.

In an Order filed on March 12, 2020, Judge Netburn instructed the Dillaber family plaintiffs to submit motions for partial final default judgment for the pain and suffering sustained by Plaintiff Kathy Dillaber and for solatium damages for the losses suffered by relatives of decedent Patricia Mickley. *See* 1:18-cv-03162, ECF No. 73. Pursuant to that Order, the Dillaber family plaintiffs filed a motion for solatium damages arising from the death of Patricia Mickley on June 11, 2020. *Id.*, ECF No. 74. On June 18, 2020, the Court entered a partial final default judgment on solatium damages for the five (5) family members of Patricia Mickley. *Id.,* ECF No. 77.

Plaintiff Kathy Dillaber, the only party to the present motion, is the sister of Patricia Mickley and received a solatium award arising from Patricia's death. Like her sister, Plaintiff Kathy Dillaber also worked in the Pentagon and was injured in the September 11th attacks.

Plaintiff Kathy Dillaber now moves for partial final default judgment for pain and suffering. Plaintiff Kathy Dillaber relies on the Court's Order of Default Judgment as to liability only for her request for pain and suffering.

## II.      DAMAGES UNDER 28 U.S.C. § 1605A

Section 1605A of the Foreign Sovereign Immunities Act (FSIA) creates an exception to sovereign immunity allowing a foreign state to be held accountable for acts of terrorism or the provision of material support or resources for acts of terrorism where the acts or provision of support or resources were engaged in by an official, employee, or agent of the foreign state while acting within the scope of his or her office, employment, or agency. 28 U.S.C. § 1605A(a)(1). The statute specifies that damages are available "for personal injury or death." *See* 28 U.S.C. § 1605A(a)(1) and (c)(4). These damages include "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c)(4).

### A.  Personal Injury Damages

Plaintiff Kathy Dillaber was working at the Pentagon when it was attacked by terrorists on September 11, 2001. She sustained physical and emotional injuries in the attack. Twenty-four (24) of her colleagues were killed. Her sister Patricia Mickley also died in the attacks. Kathy Dillaber developed post-traumatic stress disorder (PTSD) and survivor's guilt.

These injuries are compensable under the FSIA. Because they occurred as a direct result of the attacks and the chaos that immediately followed, the proximate causation of her injuries cannot truly be in question.

This Court has previously looked to precedent in the U.S. District Court for the District of Columbia for guidance in addressing pain and suffering damages resulting from claims arising pursuant to 28 U.S.C. § 1605A. In *Cohen v. Islamic Republic of Iran*, 268 F. Supp. 3d 19 (D.D.C. 2017), the court acknowledged that it has "adopted a general procedure for the calculation of damages that begins with the baseline assumption that persons suffering substantial injuries in terrorist attacks are entitled to $5 million in compensatory damages." 268 F. Supp. 3d at 24; *see also Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24 (D.D.C. 2012); *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25 (D.D.C. 2007). This "baseline" figure for personal injury damages may also be adjusted based on the "nature of the injury, the pain associated with it, the duration of hospitalization, and the degree and length of impairment." *Peterson*, 515 F. Supp. 2d at 52.

## B.  Upward Departure for Damages Resulting from the Terrorist Attacks on September 11, 2001

This Court has previously granted an upward departure from the baseline, and Plaintiff Kathy Dillaber asks that it do so here. As Magistrate Judge Maas first held in 2012 – based in part on the "profound agony and grief" resulting from the attacks and the "frequent reminders of the events of that day"  - "[c]onsidering the extraordinarily tragic circumstances surrounding the

September 11th attacks, and their indelible impact on the lives of the victims' families, I find that it is appropriate to grant the upward departures from the [D.C. District Court] framework that the Individual Plaintiffs have collectively requested." *Havlish v. bin Laden*, 2012 U.S. Dist. LEXIS 110673, at *105 (S.D.N.Y. July 30, 2012) (adopted by Judge Daniels at *Havlish v. bin Laden*, 2012 U.S. Dist. LEXIS 143525, at *80-82 (S.D.N.Y. Oct. 3, 2012)).

Plaintiffs have reviewed the framework for personal injury damages awards proposed by the plaintiffs in *Thomas Burnett, Sr., et al. the Islamic Republic of Iran, et al*. 15-cv-9903, 03-cv-1570, ECF No. 5762.  The framework was adopted by Judge Netburn in a February 7, 2020, Report and Recommendation regarding pain and suffering damages for personal injury plaintiffs in *Burnett*. *Burnett v. Islamic Republic of Iran, et al*., No. 15-cv-9903 (GBD)(SN), 2020 WL 762164 (S.D.N.Y., Feb. 7, 2020). In the Report, Judge Netburn acknowledged the challenge of "making exact comparisons between injuries", *id*. at *2, and the difficulty in "'assess[ing] the amount of compensatory damages for the pain and suffering of surviving victims of terrorist attacks, especially where severe mental anguish is involved'", *id*., citing *Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40, 59 (D.D.C. 2006). The Report noted that the Court has an "'interest [in] promoting uniformity of determinations with respect to [state sponsored terrorist acts]'", *id*., citing *Estate of Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d. 20, 24-25 (D.D.C. 2009).  Accordingly, the Report stated that the Court would establish a baseline award of $7 million, with an upward deviation of $10 million and a downward deviation of $5 million, and that these amounts would be tied to three categories of injuries: significant, severe, and devastating. *Id*. at *3.

**C. Katherine Dillaber's Injuries**
   **Injury Category: Impact Injuries**
   **Severity:  Severe**

Plaintiff Kathy Dillaber was working at the Pentagon as a U.S. Army civilian program analyst on September 11, 2001. She was approaching her office on the second floor, 4th corridor, C ring of the Pentagon when the plane hit the building. She was knocked to the ground and sustained a leg injury. She was able to stand up and eventually exited the building. The panic she experienced as she navigated the smoke- and debris-filled hallways of the Pentagon was compounded by her frantic desire to find her sister, Patricia ("Patty") Mickley, who also worked in the Pentagon.

More than a week passed before Patty's remains were identified. During those intervening days, Kathy set aside her own medical needs and focused her efforts on getting news about Patty. She reported to the family information center each day. She also returned to work in her new offsite office space. She did not want to use any of her paid leave because she would need to use it to take care of Patty when she came home.

After Patty's remains were found, Kathy's focus shifted to planning the funeral, contacting loved ones, and comforting her niece and parents. Throughout this time, Kathy ignored the pain in her leg. Only after Patty's funeral did Kathy seek medical treatment for her physical injuries. Getting treatment for her mental health took longer but she was eventually diagnosed with post-traumatic stress disorder.

That she lived and Patty died still weighs heavily on Kathy. At the time of the attack Kathy was single and childless, whereas Patty left behind a five year old daughter and a husband. Kathy joined a Pentagon family support group for loved ones of 9/11 victims, hoping to find a community where she could share her grief. However, she realized that her presence at meetings created pain for other group members because even though Kathy was grieving Patty's death,

others saw her as a survivor. That realization both alienated Kathy and brought up feelings of shame and guilt.

Those feelings were reinforced when she was rejected from the 9/11 Victims Compensation Fund ("VCF") for failure to report her injuries in the first 48 hours after the attack. Though the requirement was later eliminated, she internalized the rejection to mean that her suffering did not deserve attention and that she should just be grateful to be alive.

Kathy continued to work at the Department of Defense and eventually moved back into the Pentagon where she was constantly reminded of the attacks. She found the loud noises, alarms, and strange smells from the ongoing construction disturbing and sometimes startling. She had difficulty focusing. The workload increased as the War on Terror ramped up. There was no time to slow down or grieve, so she worked harder, believing it was the best way to honor the victims.

The memories of her life at the Pentagon before 9/11, when Patty was there with her, were always at the forefront of Kathy's mind. Those memories were painful but Kathy wanted to keep them alive as long as possible. To process her grief, she got involved with some of the 9/11 memorial groups and helped raise money for the Pentagon Memorial Fund, a small butterfly garden in the courtyard dedicated to Patty, and the memorial chapel. As the years passed, Kathy felt increasingly worn down by the work but her attachment to the memorials never wavered. She knew it would be harder to access those special places if she left the Pentagon. She eventually retired in 2010.

The Court has said it will assess cases to "award each victim the amount that most fairly corresponds to all of their injuries, taken together, focusing on their severity, duration, and permanence." *Burnett,* 2020 WL 762164 at *5. Kathy Dillaber's injuries are unique, as the psychological experience of surviving the same terrorist attack that killed her sister cannot be

neatly assigned to a single category comprised of well-defined physical injuries. "Where a factor cannot tell the whole story … a court must consider other factors that may alter the determination of the appropriate award." *Oviessi v. Islamic Republic of Iran,* 768 F. Supp. 2d 16 at 27.

The "significant" category established by the Court encompasses Kathy's physical injuries, as it includes cuts, lacerations, bruises, and significant orthopedic injuries that cause continuing intermittent pain and may require surgery. *Burnett,* 2020 WL 762164 at *3. However, Kathy's psychological injuries are devastating.

 "Factors pertinent to the determination of damages enhancements are largely common sense, [including…] circumstances surrounding the terrorist attack which made the suffering particularly more acute or agonizing." *Oviessi* at 27. When the plane struck the building, Kathy experienced terror and anxiety for her own safety as well as for her sister, Patty. That sense of duty to find Patty, or get news of her status, carried Kathy through the following week. The heartbreak she experienced upon learning of Patty's death was compounded by the guilt she felt for surviving the attack. She is still devastated by the events of September 11, 2001.

Based on the physical injuries sustained by Kathy Dillaber, as well as the emotional trauma of the attack, which was tragically and significantly compounded by her sister's death and her own struggle with survivor's guilt, Plaintiff Kathy Dillaber respectfully requests that this Court grant her an upward departure from the baseline damages judgment.

### D.  Prejudgment Interest

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism. *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011). This Court awarded the *Havlish* plaintiffs prejudgment interest at

a rate of 4.96% on their pain and suffering damages awards, to be calculated from September 11, 2001 until the date of judgment (ECF No. 2619 at 13-14). This Court, recognizing that prejudgment interest was appropriate in cases such as this case, adopted the magistrate judge's reasoning, finding that an award of prejudgment interest was appropriate and accepting the rate of 4.96%, as proposed by the *Havlish* plaintiffs' expert.

After the *Havlish* award, plaintiffs in *Ashton* and *Bauer* proposed, and the Court agreed, that prejudgment simple interest at the New York State statutory rate of nine percent per annum was appropriate in cases where the injuries arose in New York and the prejudgment interest used in *Havlish*, 4.96 percent per annum, compounded annually, should be reserved only for those cases where the injuries arose in other states. *See* ECF Nos. 3229 at 3; 3300 at 1; 3341 at 1.

The Second Circuit has held that New York State's statutory prejudgment interest rate should apply to the damages awarded to World Trade Center complex leaseholders in their litigation against American Airlines and United Airlines brought under the federal Air Transportation Safety and System Stabilization Act ("ATSSSA"). *World Trade Farmers Market, Inc. v. American Airlines, Inc. (In re: September 11th Litigation)*, 2015 U.S. App. LEXIS 16619, *66 (2d Cir. Sept. 17, 2015). In that case, the Second Circuit concluded that a federal cause of action under the ATSSSA must look to state rules concerning prejudgment interest. *Id*. Accordingly, the Second Circuit held that New York's statutory prejudgment interest rate of nine percent as opposed to a lower rate crafted under federal law, had to be applied to the plaintiffs' 9/11 claims. *Id.*

However, more recently, in *Hoglan v. Islamic Republic of Iran,* 11-cv-7550, (GBD)(SN), Magistrate Judge Netburn recommended that the 4.96% interest rate for prejudgment interest should be applied to all of the solatium claims. ECF No. 3363 at 28-29. Judge Daniels adopted

Judge Netburn's *Hoglan* Report in its entirety and applied the interest rate of 4.96 percent per annum, compounded annually to all of the claims. ECF No. 3384 at 6.

In light of the Court's decision in the *Hoglan* matter, applying the 4.96% rate to prejudgment interest, Plaintiff Kathy Dillaber respectfully requests that the Clerk be directed to award prejudgment interest at the rate of 4.96% per annum, compounded annually, running from September 11, 2001, until the date of the judgment.

### E.  Punitive Damages

Under the FSIA, plaintiffs are also entitled to punitive damages. *See* 28 U.S.C. § 1605A(c)(4). In the *Havlish* Report and Recommendation on Damages, the magistrate judge explained that a "3.44 ratio 'has been established as the standard ratio applicable to cases arising out of 'terrorist attacks." (ECF No. 2619, at 13, citing *Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150,158 (D.C. 2011)). This Court adopted that recommendation and awarded punitive damages on each compensatory damages category at a ratio of 3.44 (punitive) to 1 (compensatory) (ECF No. 2623). The Court has applied that ratio to awards for plaintiffs in other related cases. *See e.g.,* ECF No. 3175, at 3 (Magistrate Judge Maas Report and Recommendations to apply 3.44 punitive multiplier); ECF No. 3229, at 1 (Judge Daniels adopting in its entirety Judge Maas's Report and Recommendation to apply 3.44 multiplier); ECF No. 3300, at 1 and Exhibit A (Judge Daniels applying 3.44 punitive multiplier to claims in *Ashton*).

However, in *Hoglan*, Magistrate Judge Netburn recommended that the plaintiffs' request for punitive damages be denied without prejudice. ECF No. 3363, at 28. Judge Daniels adopted Judge Netburn's Report in its entirety, denying without prejudice the plaintiffs' request for punitive damages. ECF No. 3384, at 6.

In light of the Court's decision in related litigation to defer determination of punitive damage issues until a later stage of the litigation, Plaintiff herein requests leave to address the issue of punitive damages at a later date. *See, e.g.,* ECF No. 3666 (Judge Daniels order in *Burnett/Iran*, authorizing other plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

### III.     CONCLUSION

For all of the reasons herein, as well as those set forth in the submissions of the other plaintiffs in this case and plaintiffs in the other 9/11 related cases, Plaintiff Kathy Dillaber respectfully requests that this Court award her (1) compensatory damages for pain and suffering in an amount commensurate with the injuries she sustained during the attacks on September 11, 2001, and in accordance with prior precedent in the U.S. District Court for the District of Columbia in similar cases, factoring in an upward departure on damages values based on the indelible impact of the Terrorist Attacks of September 11, 2001; (2) prejudgment interest at the rate of 4.96% per annum, compounded annually for the period from September 11, 2001, until the date of the judgment; and (3) leave for Plaintiff Kathy Dillaber to seek punitive damages, economic damages, or other damages at a later date; and (4) for all *Dillaber* Plaintiffs to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Dated: August 16, 2021                              Respectfully submitted,

                                                    /s/ Amanda Fox Perry_____
                                                    Amanda Fox Perry (*pro hac vice*)
                                                    Fay Law Group, P.A.
                                                    6205 Executive Boulevard
                                                    Rockville, MD 20852
                                                    Phone: 202-589-1300
                                                    Amanda.Perry@faylawgroup.com
                                                    *Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that Defendants Islamic Republic of Iran and Iranian Ministry of Information and Security could not be sent a copy of the Notice of Electronic Filing as they have not yet entered an appearance and appear not to have acknowledged other efforts to contact them in this case.

/s/ Amanda Fox Perry_____