UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03-MDL-1570 (GBD)(SN)<br>ECF Case |
|---|---|
| This document relates to:<br>*Asciutto et al v. Islamic Republic of Iran* | Case No. 20-cv-00411 (GBD)(SN)<br>ECF Case |

### *ASCIUTTO* PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL FINAL DEFAULT JUDGMENTS

Plaintiffs in the above-captioned matter (the "*Asciutto* Plaintiffs"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in support of their Motion for Partial Final Default Judgments. Each of the *Asciutto* Plaintiffs respectfully requests entry of judgment by default against the Islamic Republic of Iran ("Iran") on the issue of liability as to the *Asciutto* Plaintiffs' claims under the FSIA's private right of action against state sponsors of terrorism, codified at 28 U.S.C. 1605A(c), and damages in the amounts in the simultaneously filed "[Proposed] Order of Partial Final Default Judgments on Behalf of *Asciutto* Plaintiffs Identified at Exhibits A and B" (the "Proposed Order"). The *Asciutto* Plaintiffs request the damages awards in the Proposed Order as partial final awards and judgments against Iran on their claims.

### PROCEDURAL BACKGROUND

This action arises out of the events of September 11, 2001, during which members of the al Qaeda terrorist network hijacked four commercial airliners and used those planes as weapons in coordinated terrorist attacks on the United States (the "September 11 attacks"). The *Asciutto* Plaintiffs comprise personal representatives and eligible family members of individuals killed as a result of the September 11 attacks (the "*Asciutto* Plaintiffs"). On January 15, 2020, pursuant to the Court's October 28, 2019 Order, counsel for the *Asciutto* Plaintiffs filed a Short Form

Complaint against Defendant the Islamic Republic of Iran ("Defendant" or "Iran"), adopting all of the factual and jurisdictional allegations in the Amended Consolidated Complaint against Iran in *Ashton et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977 (GBD) (SN), and joining in all prior pleadings in *Ashton*. As provided for in this Court's October 28, 2019 Order in *In re Terrorist Attacks on September 11, 2001*, by filing the Short Form Complaint, the *Asciutto* Plaintiffs are bound by all decisions in *Ashton* and in this MDL that relate to all actions. *See In re Terrorist Attacks on September 11, 2001*, 03-md-1570 (SDNY) (GBD) (SN), ECF No. 4045.

On June 4, 2020, the *Asciutto* Plaintiffs filed an Amended Complaint. *Asciutto*, ECF No. 12. The *Asciutto* Plaintiffs then commenced service of the Amended Complaint, first attempting service under 28 U.S.C. 1608(a)(3), and, when that was unsuccessful, completing service under 28 U.S.C. 1608(a)(4). Service under 28 U.S.C. 1608(a)(4) was effected on April 7, 2021. *See Asciutto*, ECF No. 22. Iran failed to filed a responsive pleading or otherwise appear in or defend this suit within 60 days after service was effected (and still has not filed a responsive pleading or otherwise appeared in or defended this suit), and on June 28, 2021, the Clerk of the Court entered a certificate of default against Iran. *Asciutto*, ECF No. 25.

All *Asciutto* Plaintiffs now respectfully request entry of judgment by default against Iran on the issue of liability under the terrorism exception, 28 U.S.C. § 1605A, of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, and now hereby seek: (1) partial compensatory damages for decedents' conscious pain and suffering in an amount of $2,000,000 per estate; (2) partial solatium damages for the losses suffered by the immediate family members of decedents in the same amounts previously awarded by this Court to other plaintiffs in this consolidated multidistrict litigation against Iran; (3) prejudgment interest on those damages as set forth below; and (4) permission for the *Asciutto* Plaintiffs herein to submit future applications for

punitive damages, economic damages, and other damages (including additional compensatory damages for pain and suffering prior to the decedent's death) consistent with any future rulings of this Court.[1]

## ARGUMENT

The *Asciutto* Plaintiffs have satisfied each of the requirements for a default judgment and the award of damages, as (1) this Court has subject-matter jurisdiction and personal jurisdiction over the claims; (2) the evidence shows Iran is liable to the *Asciutto* Plaintiffs for the September 11 attacks; and (3) the *Asciutto* Plaintiffs have shown that they are entitled to monetary damages. *See, e.g.*, *Azadeh v. Gov't of the Islamic Republic of Iran*, 2018 U.S. Dist. LEXIS 150597, at *27 (D.D.C. Sept. 5, 2018).

Significantly, on the issue of liability, this Court already has entered judgment against Iran for similar claims, in multiple related matters consolidated before this Court under *In re Terrorist Attacks on September 11, 2001*. Likewise, with respect to damages, the *Asciutto* Plaintiffs seek damages in the same amounts previously awarded by this Court to various similarly situated plaintiffs in *Havlish v. Bin Laden*, 1:03-cv-9848 (GDB) (SN), *Ashton v. al Qaeda Islamic Army*, 1:02-cv-6977 (GBD) (SN)*, Bauer v. al Qaeda Islamic Army*, 1:02-cv-7236 (GBD) (SN), *Hoglan v. Islamic Republic of Iran*, 1:11- cv-07550 (GBD) (SN), *Burnett v. Islamic Republic of Iran*, 1:15-cv-9903 (GBD) (SN)*,* and other cases, as set forth below in detail.

---

[1] Although the Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 852 (2016) ("JASTA"), enacted by Congress on September 28, 2016, provides an additional ground for jurisdiction and liability against Iran, because an application for default judgment as to the *Asciutto* Plaintiffs' claims under the new statute would potentially raise issues not previously addressed by the Court, the *Asciutto* Plaintiffs are not seeking judgment in reliance on JASTA at this time, but reserve their right to do so in the future, if necessary. Additionally, because certain *Asciutto* Plaintiffs who died as a result of the September 11 attacks suffered lengthy illnesses before death, the compensatory damages amounts established by this Court for conscious pain and suffering before death and loss of solatium for decedents' family members represents the minimum amount to which those plaintiffs are entitled, and the *Asciutto* Plaintiffs respectfully seek permission to present additional evidence of pain and suffering or loss of solatium for those plaintiffs, and to seek additional compensatory damages awards on that basis at a later date.

I.      **This Court Has Jurisdiction Over Iran For The *Asciutto* Plaintiffs' Claims.**

        A.      **This Court Has Subject Matter Jurisdiction**

The FSIA provides the "sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Samantar v. Yousef*, 560 U.S. 305,314 (2010) (citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989)).  A foreign state is immune from suit in the courts of the United States unless one of the FSIA's enumerated exceptions to immunity applies.  *See* 28 U.S.C. §§ 1605-1605A; *Samantar*, 560 U.S. at 305.  This Court previously has held that subject matter jurisdiction exists for claims against Iran for injuries resulting from the September 11th Attacks under two separate, independent FSIA exceptions: the terrorism exception (28 U.S.C. § 1605A(a)) and the noncommercial tort exception (28 U.S.C. § 1605(a)(5)).  *See Havlish v. Bin Laden*, 1:03-cv-9848 (GDB) (SN), 2011 U.S. Dist. LEXIS 155899, at *186 (S.D.N.Y. Dec. 22, 2011) ("*Havlish I*") ("Here, this Court has [subject matter] jurisdiction because . . . defendants' conduct falls within both the 'state sponsor of terrorism' exception set forth in 28 U.S.C. § 1605A and the 'noncommercial tort' exception of § 1605(a)(5).").

This Court's holding in *Havlish I* is controlling in this action, as it has been in other related actions against Iran, including *Hoglan v. Islamic Republic of Iran, et al.*, 1:11- cv-07550 (GBD) (SN), ECF No. 112 (S.D.N.Y. Aug. 31, 2015) and *Ashton, et al. v. Al Qaeda Islamic Army, et al.*, 1:02-cv-6977-GBD, ECF No. 759 (S.D.N.Y. Aug. 31, 2015).  The issue of subject-matter jurisdiction over Iran need not be re-litigated here.  *See, e.g., Fed. Ins. Co. v. Kingdom of Saudi Arabia*, 741 F.3d 353, 358 (2d Cir. 2013) (explaining that the "September 11 cases were centralized in part to 'prevent inconsistent pretrial rulings'") (citation omitted); *see also* Fed. R. Evid. 201(b) (Courts may take judicial notice of facts that are "not subject to reasonable dispute" and that are "either (1) generally known within the territorial jurisdiction . . . or (2) capable of

accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."), *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 172 (D.D.C. 2010) (citing 29 Am. Jur. 2d Evidence § 151 (2010)) (A court's "ability to take notice of adjudicative facts extends to judicial notice of court records in related proceedings."); 2 McCormick on Evid. § 332 (6th ed. 2009) (The principle permitting courts to take judicial notice of current proceeding "is equally applicable to matters of record in the proceedings in other cases in the same court."); *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) ("[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case") (internal quotations omitted).

As in *Havlish*, *Hogan*, and *Ashton*, the *Asciutto* Plaintiffs assert claims against Iran for wrongful deaths and personal injuries resulting from the September 11 attacks, based on Iran's extensive sponsorship of al Qaeda during the decade prior to the attacks and direct support for critical aspects of the September 11 attacks. The evidentiary and factual record supporting the Court's jurisdiction over the *Asciutto* Plaintiffs' claims is identical to the record this Court considered in issuing judgment against Iran in the other related proceedings.

Accordingly, this Court's prior rulings considering jurisdiction under the FSIA's Terrorism Exception, 28 U.S.C. §1605A, to claims against Iran for injuries resulting from the September 11 attacks apply with full force to the *Asciutto* Plaintiffs' claims.

### B. This Court Has Personal Jurisdiction Over Iran

Under the FSIA, personal jurisdiction over a foreign sovereign such as Iran "equals subject matter jurisdiction plus valid service of process." *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1020 (2d Cir. 1991); *see also* 28 U.S.C. § 1330(b) ("[P]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction

. . . where service has been made under section 1608 of this title.").[2] Service under the FSIA is governed by 28 U.S.C. Section 1608(a). As the *Asciutto* Plaintiffs have satisfied the service requirements of this section, this Court has personal jurisdiction over Iran.

Section 1608(a) of the FSIA "prescribes a hierarchy of four alternative procedures to use when serving process on a foreign state." *Finamar Inv'rs v. Republic of Tadjikistan*, 889 F. Supp. 114, 116 (S.D.N.Y. 1995). As the *Asciutto* Plaintiffs have no "special arrangement" with Iran, service via the first method, provided for in section 1608(a)(1), was unavailable. *See Asciutto*, ECF No. 22, Affidavit of Service, at para. 1. Similarly, as there is no "applicable international convention," service via the second method, provided for in section 1608(a)(2) was unavailable. *See id.*

Accordingly, the *Asciutto* Plaintiffs attempted service via the third method, provided for in section 1608(a)(3), which allows service "by any form of mail requiring a signed receipt . . . address and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state." On August 10, 2020, following a request from the *Asciutto* Plaintiffs, the Clerk certified mailing of the *Asciutto* Plaintiffs' First Amended Complaint (English & Farsi), Notice of Suit (English & Farsi), Summons (English & Farsi), the Foreign Sovereign Immunities Act (English & Farsi), and Affidavit of Translator (collectively the "Service Documents") by registered mail, return receipt requested. *Asciutto*, ECF No. 17. Iran refused receipt of the mailing, and the Service Documents were returned to counsel's office. *See Asciutto*, ECF No. 22 at para. 3.

Following the inability to effect service under section 1608(a)(3), the *Asciutto* Plaintiffs

---

[2] As the Second Circuit has held that foreign states are not persons within the meaning of the Due Process Clause, there is no need to analyze whether or not asserting personal jurisdiction over Iran complies with due process. *See Frontera Resources Azerbaijan Corp. v. State Oil Company of the Azerbaijan Republic*, 582 F.3d 393, 399-401 (2d Cir. 2009).

6

next arranged for service to be effected pursuant to section 1608(a)(4), which provides for service by diplomatic channels.  28 U.S.C. 1608(a)(4) ("[I]f service cannot be made within 30 days under paragraph (3), . . . [service shall be made] by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels.").  On December 4, 2020, in response to the *Asciutto* Plaintiffs' request, the Clerk of the Court certified mailing of two copies of the Service Documents, along with the requisite fees, to the United States Department of State for service on Iran under 28 U.S.C. § 1608 (a)(4).  *Asciutto*, ECF No. 21.  As evidenced by the letter dated April 19, 2021 from Jared Hess, Attorney Advisor, Overseas Citizens Services, Office of Legal Affairs, United States Department of State, to Ruby J. Krajick, Clerk of Court, service was effectuated on Iran on April 7, 2021, when the U.S. Department of State, assisted by the Foreign Interests Section of the Embassy of Switzerland in Tehran, delivered the Service Documents to Iran under cover of diplomatic note number 1034-IE.  *See Asciutto*, ECF No. 22-3.  On May 17, 2021, the Clerk of the Court acknowledged receipt of the April 19, 2021 letter from the United States Department of State.

Given the unavailability of each of the other methods of service, this successful service under 28 U.S.C. § 1608(a)(4) satisfies the requirements of section 1608.  As service on Iran was proper and valid, and as the terrorism exception, 28 U.S.C. 1605A, provides subject matter jurisdiction for the *Asciutto* Plaintiffs claims against Iran, this Court has personal jurisdiction over Iran.  *See, e.g.*, *Shapiro,* 930 F.2d at 1020, *Reed v. Islamic Republic of Iran,* 845 F. Supp. 2d 204, 209 (D.D.C. 2012).

## II.     Default Judgment Should Be Entered Against Iran In Favor Of The *Asciutto* Plaintiffs

### A.     Iran Has Defaulted In This Action

Pursuant to Section 1608(d) of the FSIA, Iran was obligated to "serve an answer or other responsive pleading to [the *Asciutto* Plaintiffs'] complaint within sixty days after service" was made.  Pursuant to section 1608(c)(1), service under section 1608(a)(4) is deemed to have been made "as of the date of transmittal indicated in the certified copy of the diplomatic note."  The date of transmittal of the diplomatic note is April 7, 2021.  *See Asciutto*, ECF Nos. 22-3, 24 at para. 12.  Accordingly, Iran's answer or other responsive pleading was due on June 7, 2021.  Iran has not filed any responsive pleading or otherwise appeared in or defended this suit.  On June 28, 2021, based on the foregoing, the Clerk of the Court entered a certificate of default against Iran.  *See Asciutto*, ECF No. 25.

### B.     Legal Standard For Default Judgment Against A Foreign Sovereign

The FSIA provides that "[n]o judgment by default shall be entered by a court of the United States or of a State against a foreign state . . . unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."  28 U.S.C. § 1608(e).  Courts in this District have interpreted this requirement to mean "'a legally sufficient evidentiary basis for a reasonable jury to find for plaintiff.'"  *Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 224 (S.D.N.Y. May 7, 2003) (quoting *Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91, 98 (D.D.C. 2002)); *see also Bd. of Mgrs. of Otic Prof'l Condo. v. Democratic Republic of Somalia*, 2009 U.S. Dist. LEXIS 68333, at *3 (S.D.N.Y. July 20, 2009).  A court may "'accept as true the plaintiffs' uncontroverted evidence.'"  *Havlish I*, 2011 U.S. Dist. LEXIS 155899, at *84 (quoting *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 100 (D.D.C. 2000) and *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258, 268 (D.D.C. 2003)).  No evidentiary hearing is

required, and "the plaintiffs may establish proof by affidavit." *Id.* (citing *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13, 19 (D.D.C. 2002)); *see also Commercial Bank of Kuwait v. Rafidain Bank*, 15 F. 3d 238, 242 (2d Cir. 1994) (evidence in the form of affidavits and exhibits sufficed to satisfy Section 1608(e)).

Moreover, the FSIA "permits courts in subsequent related cases to rely upon the evidence presented in earlier litigation . . . without necessitating the formality of having that evidence reproduced." *Anderson v. Islamic Republic of Iran*, 753 F. Supp. 2d 68, 75 (D.D.C. 2010) (internal quotation marks omitted); *see also, e.g.*, *Harrison v. Republic of Sudan,* 882 F. Supp. 2d 23, 31  (D.D.C. 2012) ("[W]hen a court has found facts relevant to a FSIA case involving material support to terrorist groups, courts in subsequent, related cases may 'rely upon the evidence presented in earlier litigation . . . without necessitating the formality of having that evidence reproduced.'")(quoting *Taylor v. Islamic Republic of Iran,* 811 F. Supp. 2d 1, 7 (D.D.C. 2011)); *Brewer v. Islamic Republic of Iran*, 664 F. Supp. 2d 43, 54 (D.D.C. 2009) (quoting *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 263 (D.D.C. 2006)) ("[T]he FSIA does not require this Court to relitigate issues that have already been settled.  Instead this Court 'may take judicial notice of related proceedings and records in cases before the same court.'").

As detailed below, the affidavits, documentary evidence, and testimony presented to and reviewed by this Court in *Havlish, et al. v. Bin Laden, et al.*, 1:03-cv-9848-GBD, all of which are part of the record in this multidistrict litigation, provide a sufficient evidentiary basis to establish Iran's liability for the September 11 attacks without the necessity for re-presentation of the same evidence, and the affidavit evidence submitted simultaneously with the *Asciutto* Plaintiffs' Motion provides a sufficient evidentiary basis to establish Iran's liability as to each of the

*Madelkow* Plaintiffs.

### C. Evidence Satisfactory To The Court Demonstrates That The *Asciutto* Plaintiffs Have Each Meet the Requirements To Bring a Claim Under 1605A(c)

Section 1605A(c) establishes a private right of action with six elements: (1) a country designated as a state sponsor of terrorism at the relevant times shall be liable to (2) a U.S. citizen (3) for injury or death (4) caused by (5) that country's provision of material support or resources (6) for an act of torture, extrajudicial killing, aircraft sabotage or hostage taking. *See* 28 U.S.C. §§ 1605A(a)(1), (c) and (h)(5).

This Court may take judicial notice of the fact that Iran was, at the time of the September 11 attacks, designated as a state sponsor of terrorism since January 19, 1984 and remains so designated to this day. *See State Sponsors of Terrorism*, U.S. DEPARTMENT OF STATE, https://www.state.gov/state-sponsors-of-terrorism/ (last visited June 9, 2021); *see also* 22 C.F.R. § 126.1(d) (2006); 31 C.F.R. § 596.201 (2006); Determination Pursuant to Section 6(i) of the Export Administration Act of 1979 – Iran, 49 Fed. Reg. 2836, 2836 (Jan. 23, 1984).

This Court has already entered judgment against Iran in multiple related matters consolidated before this court after determining, based on a full evidentiary record and hearing, that the September 11 attacks constituted "extrajudicial killings" and that they were caused by Iran's provision of material support and resources to al Qaeda. The *Asciutto* Plaintiffs incorporate by reference herein all of the evidence previously received and analyzed by this Court, which also forms a part of the record in this MDL proceeding.

In particular, in 2011, the plaintiffs in *Havlish* presented evidence in the form of affidavits, documentary evidence, and testimony. This evidence established Iran's long history of providing material support and resources to the al Qaeda network, including direct support for

10

the September 11th Attacks. *See Havlish*, 1:03-cv-9848 (GBD) (SN), ECF Nos. 273-76 (May 19, 2011), 280 (July 13, 2011) and 283 (Aug. 19, 2011). After a full review of that evidence, this Court concluded that:

> Iran provided general material support or resources to al Qaeda . . . [and] provided direct support to al Qaeda specifically for the attacks on the World Trade Center, the Pentagon, and Washington, DC (Shanksville, Pennsylvania), on September 11, 2001. Such material support or resources took the form of, *inter alia*, planning, funding, facilitation of the hijackers' travel and training, and logistics, and included the provision of services, money, lodging, training, expert advice or assistance, safehouses, false documentation or identification, and/or transportation.

*Havlish I*, 2011 U.S. Dist. LEXIS 155899, at *198-99, *203. The Court thus held that "the 9/11 attacks were caused by [Iran's] provision of material support to al Qaeda." *Id.*

Finally, the affidavit evidence establishes that each *Asciutto* Plaintiff was a U.S. citizen who was killed as a result of the September 11 attacks or is a U.S. citizen family member who suffered personal injury as a result of the death of a decedent killed as a result of the September 11 attacks (or the personal representatives of the estates of such immediate family members). *See* Salzman Declaration at para. 9.

Attached to the Salzman Declaration at Exhibits C and D is documentation establishing for each decedent that the decedent's death was caused by the September 11 attacks. The attached Exhibits contain documentation from the September 11th Victim Compensation Fund ("VCF") administered by the U.S. Department of Justice, which adjudicates claims for victims eligible for compensation due to injuries suffered "as a direct result" of the 9/11 Attacks and their aftermath. 28 CFR §104.2. Accordingly, attached to the Salzman Declaration is (1) the regulatory authority establishing the criteria for eligibility for compensation from the VCF; and (2) for each *Asciutto* Plaintiff who died as a result of the 9/11 Attacks, the official letter from the Special Master of the 9/11 VCF determining that the victim "has met the eligibility criteria

11

established in the statute and regulations."

The *Asciutto* Plaintiffs respectfully submit that their claims are ripe for judgment. The determination by the Department of Justice that each *Asciutto* Plaintiff's injuries were the "direct result" of the 9/11 Attacks and its aftermath constitutes evidence sufficient to support judgment, of which this Court may take judicial notice. The *Asciutto* Plaintiffs further note that the Short Form Complaint expressly contemplates such claims by victims "present at the Pentagon and/or lower Manhattan and/or at an area wherein he/she was exposed to toxins as a result of the terrorist attacks…." Certainly, these victims and their family members have suffered greatly as a result of Iran's actions, and should be afforded the same opportunity to obtain judgments and seek compensation from the USVSST Fund as all the other victims who are seeking and obtaining judgments in this case pursuant to the same Short Form Complaint.

The extension of the Court's prior rulings to the *Asciutto* Plaintiffs is both appropriate and consistent with the specific objectives that prompted the Judicial Panel for Multidistrict Litigation to centralize each of those proceedings before this Court. Under the circumstances, the submission of additional or repetitive evidence of Iran's liability for the September 11th Terrorist Attacks would merely impose an unnecessary burden on the resources of this Court.

### III. The *Asciutto* Plaintiffs Are Entitled To Damages

Under 28 U.S.C. § 1605A, damages are available under the federal law and include money damages "for personal injury or death." *See* 28 U.S.C. § 1605A(a)(1) and (c)(4). The damages available to plaintiffs in a Section 1605A action include "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c)(4). That is, the "estates of those who [died] can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all

plaintiffs can recover punitive damages." *Valore*, 700 F. Supp. 2d at 83.

### A. The Decedents Killed By The September 11 Attacks Are Entitled To Damages For Pain And Suffering

The *Asciutto* Plaintiffs identified in Exhibit B to the simultaneously filed Proposed Order are the estates of individuals killed as a result of the September 11th Attacks which seek damages for each decedent's pain and suffering before death. This Court previously assessed the entitlement and value of pain and suffering awards to estates for their decedents' deaths in this litigation. *See, e.g.*, *In re Terrorist Attacks on September 11, 2001*, ECF Nos. 2618 (July 30, 2012) (*Havlish* Report); 2624 (Oct. 16, 2012) (*Havlish* Judgment); 3175 (Dec. 28, 2015) (*Ashton* Report); 3229 (Mar. 9, 2016) (*Ashton* mem. op.). For the reasons previously articulated by this Court, the estates identified in Exhibit B to the Proposed Order respectfully request that the Court grant partial compensatory damages awards for the decedents' pain and suffering in the amount of $2,000,000 per estate.[3] *See, e.g.*, *In re Terrorist Attacks on September 11, 2001*, ECF Nos. 2618 (July 30, 2012) (*Havlish* Report); 2624 (Oct. 16, 2012) (*Havlish* Judgment); 3175 (Dec. 28, 2015) (*Ashton* Report); 3229 (Mar. 9, 2016) (*Ashton* mem. op.).

### B. The Immediate Family Members of Decedents Killed As A Result Of The September 11 Attacks Are Entitled to Damages For Loss Of Solatium

Section 1605A specifically provides for solatium damages. Under that provision, the immediate family members of the decedents may recover for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort." *Dammarell v. Islamic Republic of Iran*, 281 F. Supp. 2d 105, 196 (D.D.C. 2003), *vacated on*

---

[3] For the reasons discussed at footnote 3, *supra*, the *Asciutto* Plaintiffs respectfully seek permission to present additional evidence of pain and suffering experienced prior to the decedents' death, and to seek additional pain and suffering and/or solatium awards on that basis at a later date.

13

*other grounds*, 404 F. Supp. 2d 261 (D.D.C. 2005). Other courts have previously noted that "[a]cts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009). Accordingly, in FSIA cases, solatium claims have been treated as comparable to claims for intentional infliction of emotional distress, in which the immediate family members of the decedent are treated as direct victims. *See, e.g.*, *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 115 n.12 (D.D.C. 2005) ("[c]ourts have uniformly held that a terrorist attack – by its nature – is directed not only at the victims but also at the victims' families."); *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (treating solatium claim as "'indistinguishable' from the claim of intentional infliction of emotional distress.") (quoting *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001)). Thus, this Court has previously awarded solatium damages to "immediate family members" who, though not physically present at the site of the terrorist attacks, were nevertheless intended victims of the terrorist activities. *In re Terrorist Attacks on September 11, 2001*, ECF Nos. 3358 (Oct. 12, 2016) (*Hoglan* Report); 3175 (Dec. 28, 2015) (*Ashton* Report); 2618 (July 30, 2012) (*Havlish* Report).

In defining those family members eligible to make a claim for solatium damages, this Court previously determined, among other things, that spouses, parents, children and siblings of the 9/11 decedent are entitled to recover for their losses. *See In re Terrorist Attacks on September 11, 2001*, ECF No. 3363 (Oct. 14, 2016).

To fashion a solatium award adequately compensating the surviving "immediate family members" in the litigation against Iran, this Court previously looked to the analysis undertaken by District Court Judge Royce Lamberth in the case of *Estate of Heiser v. Islamic Republic of*

14

*Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006).  There, Judge Lamberth concluded that solatium damages should be awarded to each spouse of a deceased victim in the amount of $8 million, to each parent in the amount of $5 million, and to each sibling in the amount of $2.5 million.  *Id.*[4]

Magistrate Judge Frank Maas previously recognized that the "immediate family members" of those killed in the September 11 terrorist attacks suffered and continue to suffer "profound agony and grief" and, "[w]orse yet, . . . are faced with frequent reminders of the events of that day."  *In re Terrorist Attacks on September 11, 2001*, ECF No. 2618 (July 30, 2012) at pp. 10-12.  Given the "extraordinarily tragic circumstances surrounding the September 11th attacks, and their indelible impact on the lives of the victims' families," the *Havlish* Report and Recommendation concluded that an upward departure was appropriate and recommended solatium damages in the following amounts:

| Relationship to Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

The solatium losses suffered by the immediate family members listed in Exhibit A to the simultaneously filed Proposed Order are legally and factually comparable to those suffered by the *Havlish* claimants.  The death of each 9/11 decedent in this case was the result of the terrorism defendants' extreme acts of malice.  The defendants' acts were intended to create an environment of fear and terror.  The claimants here were not attenuated victims, and they paid an extreme price for the terrorist acts and consequences.  The amount of solatium damages previously adopted by the District Court in *Havlish* should apply equally to the immediate family members listed in Exhibit A to the simultaneously filed Proposed Order, and those *Asciutto*

---

[4] This formula may be adjusted upward or downward when circumstances warrant.  *See, e.g., Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 156 (D.D.C. 2011); *Valore*, 700 F. Supp. 2d at 85.

15

Plaintiffs therefore respectfully request that they be awarded solatium damages in those same amounts, based on their relationship to the 9/11 decedents.[5]

### C. All *Asciutto* Plaintiffs Are Entitled To Prejudgment Interest

Additionally, the *Asciutto* Plaintiffs also ask that this Court direct that prejudgment interest of 4.96% per annum running from September 11, 2001 until the date of judgment be assessed, as was done previously for other plaintiffs in this consolidated litigation. *See, e.g.*, *Havlish v. Bin Laden*, 2012 U.S. Dist. LEXIS 143525, at *83 (S.D.N.Y. Oct. 3, 2012) (awarding prejudgment of 4.96 per cent per annum, compounded annually, to be calculated from September 11, 2001 until the date of judgment); *In re Terrorist Attacks on September 11, 2001*, 2016 U.S. Dist. LEXIS 144325, at *316-17 (S.D.N.Y. Oct. 14, 2016), *adopted by* 2016 U.S. Dist. LEXIS 151675, at *275 (S.D.N.Y. Oct. 24, 2016) (affirming that the 4.96% interest rate should be applied to all damages awarded in 9/11-related cases, regardless of whether the injuries arose in New York (where the statutory rate for prejudgment interest is 9%)).

### D. The *Asciutto* Plaintiffs Respectfully Request Permission to Seek Punitive Damages At A Later Date

Previously, in connection with a motion for final judgment on behalf of certain other claimants, this Court asked that, to expedite issuance of final judgments, claimants defer decision as to the appropriate quantum of punitive damages. *See In re Terrorist Attacks on September 11, 2001*, ECF No. 3362 (Oct. 14, 2016). Accordingly, the *Asciutto* Plaintiffs ask that this Court allow them to submit future applications for punitive damages consistent with any future ruling of this Court.

---

[5] For the reasons discussed at footnote 3, *supra*, the *Asciutto* Plaintiffs respectfully seek permission to present additional evidence of pain and suffering experienced prior to the decedents' deaths, and to seek additional pain and suffering and/or solatium awards on that basis, at a later date.

16

**CONCLUSION**

For all of the reasons set forth herein, the exhibits attached to and statements contained in the Salzman Declaration, and on the basis of the evidence the Court previously received and analyzed, and which already forms part of the record in the MDL proceeding, the *Asciutto* Plaintiffs respectfully request that this Court grant the Proposed Order filed contemporaneously with this Motion, enter default judgment as to liability against Iran for all *Asciutto* Plaintiffs' claims under Section 1605A of the FSIA, and (1) award compensatory damages for decedents' conscious pain and suffering in an amount of $2,000,000 per estate; (2) award solatium damages to immediate family members as set forth in the Proposed Order; (3) direct that prejudgment interest of 4.96% running from September 11, 2001 until the date of judgment be assessed; and (4) permit the *Asciutto* Plaintiffs to submit future applications for punitive damages, economic damages, and other damages (including additional compensatory damages for pain and suffering prior to the decedents' deaths) consistent with any future rulings of this Court.

Dated: August 17, 2021

          Respectfully submitted,

     /s/ Barry Salzman
Barry Salzman
Michael Barasch
Barasch & McGarry, P.C.
11 Park Place
18th Floor
New York, NY 10007
Phone: 212.385.8000
Fax: 212.385.7845

Aryeh S. Portnoy
Glen G. McGorty
Michelle Ann Gitlitz
Crowell & Moring LLP
590 Madison Avenue
20th Floor
New York, NY 10022
Phone: 212.223.4000
Fax: 212.223.4134

COUNSEL FOR PLAINTIFFS