IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Case No. 1:03-md-01570-GBD-SN |

*This document relates to:*

*The Underwriting Members of Lloyd's Syndicate 2, et al. v. Al Rajhi Bank, et al.*, No. 16-cv-7853; *Aguilar, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09663; *Addesso, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09937; *Hodges, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-0117; *Aiken, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-00450; *Charter Oak Fire Insurance Co., et al. v. Al Rajhi Bank, et al.*, No. 17-cv-02651; *Abarca, et al., v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03887; *Arrowood Indemnity Co., et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03908; *Abedhajajreh v. Kingdom of Saudi Arabia*, No. 17-cv-06123; *Muenchener Rueckversicherungs-Gesellschaft Aktiengesellschaft in Muenchen, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-07914; and *Abbate, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-08617

## AL RAJHI BANK'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005

September 1, 2021

*Counsel for Al Rajhi Bank*

**TABLE OF CONTENTS**

PROCEDURAL BACKGROUND................................................................................................1

ARGUMENT .........................................................................................................................2

I.  PLAINTIFFS, NOT AL RAJHI BANK, FUNDAMENTALLY MISCONSTRUE
    THE SCOPE OF JURISDICTIONAL DISCOVERY AUTHORIZED BY THE
    SECOND CIRCUIT...................................................................................................2

II. PLAINTIFFS' TEN "AREAS OF INQUIRY" ARE NOT RELEVANT TO THE
    JURISDICTIONAL INQUIRY AUTHORIZED BY THE SECOND CIRCUIT .............5

    A.   The Da'wah Organization Requests (Request Nos. 1-8, 35) ...................................6

    B.   The Al Qaeda Operative Requests (Request Nos. 9-22, 33, 34)..........................10

    C.   The U.S. Financial Requests (Request Nos. 23-25)............................................10

    D.   The Terror Financing Article Requests (Request Nos. 26-32) ............................12

    E.   The Golden Chain Requests (Request Nos. 36-38) .............................................12

    F.   The SAAR Network Requests (Request Nos. 39-41)............................................13

    G.   The Saleh al Hussayen Requests (Request Nos. 42-44) .......................................14

    H.   The Terrorism Finance Investigation Requests (Request Nos. 45-54) ................15

    I.   The Suleiman Al Rajhi Departure Request (Request No. 55) ..............................15

    J.   The ARB Financial Controls Requests (Request Nos. 56-58).............................16

III. PLAINTIFFS' PROPOSED TIME FRAMES FOR JURISDICTIONAL
    DISCOVERY ARE INCONSISTENT AND DISPROPORTIONATE TO THE
    NEEDS OF THE CASE............................................................................................16

IV. PLAINTIFFS' REQUESTS ARE BURDENSOME .......................................................20

V.  NO SAUDI LAW ISSUE IS RIPE .............................................................................23

CONCLUSION......................................................................................................................24

# TABLE OF AUTHORITIES

## CASES

*A Star Group, Inc. v. Manitoba Hydro*,
    621 F. App'x 681 (2d Cir. 2015) ....................................................................... 5-6

*Am. Express Travel Related Servs. Co. v. Allegis Grp., Inc.*,
    No. 00-cv-5781, 2001 WL 1661917 (S.D.N.Y. Dec. 28, 2001).............................................21

*Astor Chocolate Corp. v. Elite Gold Ltd.*,
    No. 18-cv-11913, 2020 WL 2130680 (S.D.N.Y. May 5, 2020) .........................................7, 17

*Averbach v. Cairo Amman Bank*,
    No. 19-cv-0004, 2020 WL 486860 (S.D.N.Y. Jan. 21, 2020) .................................................18

*Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*,
    975 F. Supp. 562 (S.D.N.Y. 1997).........................................................................................11

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).................................................................................................................6

*Burnett v. Al Baraka Inv. & Dev. Corp. (In re Terrorist Attacks)* ("*Terrorist Attacks I*"),
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) ........................................................................ 12-13, 16

*Carl v. Edwards*,
    No. 16-cv-3863, 2017 WL 4271443 (E.D.N.Y. Sept. 25, 2017) ..................................... *passim*

*Charles Schwab Corp. v. Bank of Am. Corp.*,
    883 F.3d 68 (2d Cir. 2018).....................................................................................................14

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)...............................................................................................................14

*Edmondson v. RCI Hospitality, LLC*,
    No. 16-cv-2242, 2018 WL 4112816 (S.D.N.Y. Aug. 29, 2018)..............................................5

*Fidelity Bank, Nat'l Ass'n v. Avrutick*,
    740 F. Supp. 222 (S.D.N.Y. 1990) ........................................................................................16

*Gear, Inc. v. L.A. Gear Cal., Inc.*,
    637 F. Supp. 1323 (S.D.N.Y. 1986) ........................................................................................7

*Grynberg v. BP, P.L.C.*,
    No. 08-cv-6494, 2008 WL 4450277 (S.D.N.Y. Oct. 1, 2008) .................................................5

*Hake v. Citibank, N.A.*,
    No. 19-mc-00125, 2020 WL 1467132 (S.D.N.Y. Mar. 26, 2020)..................................... 22-23

*Hallmark v. Cohen & Slamowitz, LLP*,
   No. 11-cv-842, 2016 WL 1128494 (W.D.N.Y. Mar. 23, 2016)...............................................21

*Kaplan v. Lebanese Canadian Bank, SAL*,
   999 F.3d 842 (2d Cir. 2021)....................................................................................................19

*Lear v. Royal Caribbean Cruises Ltd.*,
   No. 20-cv-4660, 2021 WL 1299489 (S.D.N.Y. Apr. 7, 2021) ...............................................11

*Linde v. Arab Bank, PLC*,
   882 F.3d 314 (2d Cir. 2018).....................................................................................................18

*O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on Sept. 11, 2001)* ("*Terrorist Attacks VII*"),
   714 F.3d 659 (2d Cir. 2013).............................................................................................. *passim*

*O'Sullivan v. Deutsche Bank AG*,
   No. 17-cv-8709, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019)..............................................8

*Owens v. BNP Paribas, S.A.*,
   235 F. Supp. 3d 85 (D.D.C. 2017) .................................................................................... 19-20

*Robertson v. People Magazine*,
   No. 14-cv-6759, 2015 WL 9077111 (S.D.N.Y. 2015) ...........................................................12

*RSM Prod. Corp. v. Fridman*,
   643 F. Supp. 2d 382 (S.D.N.Y. 2009)................................................................................ 6-7, 10

*Siegel v. HSBC N. Am. Holdings, Inc.*,
   933 F.3d 217 (2d Cir. 2019).....................................................................................................18

*Siegel v. HSBC Holdings, PLC*,
   No. 17-cv 6593, 2018 WL 501610 (S.D.N.Y. Jan. 19, 2018) .......................................... 17-18

*In re Ski Train Fire in Kaprun, Aus.*,
   230 F. Supp. 2d 392 (S.D.N.Y. 2002)...............................................................................5, 6, 17

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*,
   482 U.S. 522 (1987)..................................................................................................................23

*Sokolow v. PLO*,
   60 F. Supp. 3d 509 (S.D.N.Y. 2014).......................................................................................19

*Tasso v. Platinum Guild Int'l*,
   No. 94-cv-8288, 1997 WL 16066 (S.D.N.Y. Jan. 13, 1997) ..................................................16

*In re Terrorist Attacks on Sept. 11, 2001*,
   440 F. Supp. 2d 281 (S.D.N.Y. 2006)......................................................................................17

*In re Terrorist Attacks on Sept. 11, 2001* ("*Terrorist Attacks III*"),
   538 F.3d 71 (2d Cir. 2008).................................................................................3, 4, 6

*In re Terrorist Attacks on Sept. 11, 2001* ("*Terrorist Attacks IV*"),
   718 F. Supp. 2d 456 (S.D.N.Y. 2010)................................................................13, 16

*In re Terrorist Attacks on Sept. 11, 2001*,
   740 F. Supp. 2d 494 (S.D.N.Y. 2010)......................................................................13

*In re Terrorist Attacks on Sept. 11, 2001*,
   740 F. Supp. 2d 494 (S.D.N.Y. 2010)......................................................................13

*Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank*,
   779 F. App'x 66 (2d Cir. 2019) .................................................................... *passim*

*Zubulake v. UBS Warburg LLC*,
   217 F.R.D. 309 (S.D.N.Y. 2003) ...................................................................... 20-21

## STATUTES AND RULES

Fed. R. Civ. P. 26(b)(1).......................................................................................5, 9, 11

## OTHER AUTHORITIES

Restatement (Third) of Foreign Relations Law § 442(1)(c) ..........................................23

U.S. Dep't of the Treasury, *Treasury Designates Director, Branches of Charity Bankrolling Al
   Qaida Network* (Aug. 3, 2006), https://www.treasury.gov/press-center/press-
   releases/Pages/hp45.aspx ...........................................................................................8

71 Fed. Reg. 45,599 (Dep't of Treasury Aug. 9, 2006) ..................................................8

Al Rajhi Bank opposes Plaintiffs' Motion to Compel the production of documents. Plaintiffs' Motion and Document Requests go far beyond the four specific areas of limited jurisdictional discovery authorized by the Second Circuit and recognized by this Court. Plaintiffs have set aside their obligation to meet and confer. Instead, they prematurely seek this Court's intervention to convert limited jurisdictional discovery into a wide-ranging and protracted fishing expedition, including on topics, people, and entities not referenced in the First Amended Complaint ("FAC"). Responding to Plaintiffs' overbroad Requests would impose an overwhelming burden on the Bank that is disproportionate to the needs of this case. This Court should deny Plaintiffs' Motion to Compel.

## PROCEDURAL BACKGROUND

On March 26, 2021, this Court directed the Parties to conduct "limited personal jurisdictional discovery" consistent with the "specific boundaries" outlined by the Second Circuit. *See* Opinion & Order 2, 10, & 11, ECF No. 6681 (Mar. 26, 2021). Over six weeks later, on May 11, 2021, Plaintiffs ignored both this Court's and the Second Circuit's directives and served Al Rajhi Bank with 58 enumerated document requests, many of which contained multiple subparts and virtually all of which are overbroad and exceed the scope of jurisdictional discovery authorized by the Second Circuit and this Court.

The Bank served Responses and Objections to Plaintiffs' Requests on June 10, 2021, and agreed to search for and produce on a rolling basis any relevant, reasonably accessible, non-privileged documents responsive to certain specific Requests. The Bank objected to producing documents in response to most of Plaintiffs' Requests because the Requests are not "limited," as directed by this Court, and go well beyond the FAC and the scope of the Second Circuit's Summary Order.

On June 29, 2021, the Parties met and conferred regarding Plaintiffs' Requests and the Bank's Responses and Objections.  On that call — which lasted less than an hour — Plaintiffs agreed to provide in writing specific counterproposals regarding two fundamental issues on which the Parties disagree:  the scope of jurisdictional discovery authorized by the Second Circuit and the relevant date range to be applied to Plaintiffs' Requests.  The Bank agreed to consider Plaintiffs' promised counterproposals to see if the areas of disagreement could be narrowed.

On July 15, 2021, Plaintiffs sent the Bank a letter but failed to provide *any* specific counterproposals as had been agreed.  Instead, Plaintiffs proposed to file this motion to compel, which asks the Court to direct the Bank to respond to Plaintiffs' Requests as originally drafted, without any limiting principles whatsoever.  And despite this Court's July 21, 2021 directive that the Parties should continue to meet and confer regarding the scope of jurisdictional discovery (*see* ECF No. 6976), Plaintiffs still have not made any counterproposals, as agreed on the June 29 meet-and-confer call, or otherwise continued the meet-and-confer process.

Consistent with its Responses and Objections, the Bank has made two productions of documents on July 19 and 29, 2021.  The Bank continues the process of identifying potentially relevant, reasonably accessible, non-privileged documents that are responsive to certain Requests, and will continue to produce such documents to Plaintiffs on a rolling basis.

## ARGUMENT

### I.   PLAINTIFFS, NOT AL RAJHI BANK, FUNDAMENTALLY MISCONSTRUE THE SCOPE OF JURISDICTIONAL DISCOVERY AUTHORIZED BY THE SECOND CIRCUIT

Plaintiffs' assertions (at 5, 7) that the "plain language and import" of the Second Circuit's October 15, 2019 Summary Order, *Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank*, 779 F. App'x 66 (2d Cir. 2019) ("Summary Order"), "authorized discovery" as to (i) "all matters bearing on ARB's intent to foster al Qaeda's terrorism against the United States" and (ii) "the

totality of Plaintiffs' allegations bearing on ARB's intent," actually contradict the plain language of the Summary Order.

In the Summary Order, the Second Circuit ascertained that Plaintiffs "principally allege that Al Rajhi Bank provided financial services and donations to charities that it knew financially supported al Qaeda and provided financial services to known extremist operatives," and that they "further allege Al Rajhi Bank's provision of financial services was done with the specific intent to further al Qaeda's terrorism against the United States." *Id.* at 68. The Second Circuit acknowledged that Plaintiffs' allegations in the first category — that the Bank "provided financial services and donations to charities that it knew financially supported al Qaeda" — are insufficient to subject the Bank to personal jurisdiction in the United States. *See id.* The Second Circuit explained that it has already held that "'[p]roviding indirect funding to an organization that was openly hostile to the United States does not constitute . . . intentional conduct' that is 'expressly aimed . . . at residents of the United States.'" *Id.* (alterations in original) (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d at 95 ("*Terrorist Attacks III*")) (citing *O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d at 675 ("*Terrorist Attacks VII*")).

Indeed, in *Terrorist Attacks VII*, the Second Circuit considered and rejected as insufficient for establishing personal jurisdiction allegations that a defendant "provided financial services and donations to charities that it knew financially supported al Qaeda." *See* 714 F.3d at 676. There, the court affirmed that allegations that "banking and financial institutions" or "the individuals who managed them" had "knowingly maintained bank accounts for individuals associated with al Qaeda as well as for purported front charities that aided al Qaeda" were insufficient for establishing personal jurisdiction. *Id.* (addressing claims against another banking defendant, National Commercial Bank, and various Al Rajhi family members, including Sulaiman Bin Abdul Aziz Al

Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al Rajhi).   The Second Circuit further rejected as insufficient for personal jurisdiction allegations that a defendant "donated money to various purported al Qaeda fronts."   *Id.*   The court reiterated that the plaintiffs' personal jurisdiction burden "is not satisfied by the allegation that [defendants] intended to fund al Qaeda through their donations to Muslim charities."   *Id*. (quoting *Terrorist Attacks III*, 538 F.3d at 95). The Second Circuit then authorized jurisdictional discovery only against defendants that "allegedly sent financial and other material support *directly* to al Qaeda when al Qaeda allegedly was known to be targeting the United States."   *Id.* at 678.

Here, the only alleged support by the Bank identified in the Second Circuit's Summary Order as being "'more direct and one step closer to al Qaeda' when compared to the support [the Second Circuit] ha[s] previously found inadequate" are allegations that the Bank "provided financial services to known extremist operatives."   Summary Order, 779 F. App'x at 68-69 (quoting *Terrorist Attacks VII*, 714 F.3d at 678).   Therefore, in accordance with and expressly relying on *Terrorist Attacks VII*, the Second Circuit defined the jurisdictional inquiry on remand, i.e., "to determine:  '(1) when the *alleged* support was given *to al Qaeda*, (2) what support was given, (3) whether the support was earmarked for use in specific schemes or attacks not directed at the United States, or (4) specifically how these defendants were involved in the process of providing support *to al Qaeda*.'"   *Id.* at 69 (quoting *Terrorist Attacks VII*, 714 F. 3d at 678-79) (emphases added).

In other words, the Second Circuit authorized jurisdictional discovery only with respect to the allegations in the FAC that the Bank provided direct support to al Qaeda purportedly by "providing financial services to known extremist operatives."   *Id.* at 68-69.   The vast majority of Plaintiffs' 58 Requests (not including subparts) far exceed the scope of the jurisdictional inquiry

authorized by the Second Circuit because they either (1) probe areas outside Plaintiffs' allegations of the Bank's purported provision of financial services to alleged known al Qaeda operatives identified in the FAC, or (2) are otherwise untethered from the allegations in the FAC. *See Carl v. Edwards*, No. 16-cv-3863, 2017 WL 4271443, at *9 (E.D.N.Y. Sept. 25, 2017) (denying plaintiff's motion to compel as to "overbroad" requests where "there [were] no allegations set forth in the Complaint" to justify the scope of the request); *Grynberg v. BP, P.L.C.*, No. 08-cv-6494, 2008 WL 4450277, at *3 (S.D.N.Y. Oct. 1, 2008) (same). Plaintiffs' Requests constitute an improper fishing expedition that, unless rejected by this Court, raises the specter of *years* of costly, intrusive, and wasteful jurisdictional discovery against the Bank.

## II.   PLAINTIFFS' TEN "AREAS OF INQUIRY" ARE NOT RELEVANT TO THE JURISDICTIONAL INQUIRY AUTHORIZED BY THE SECOND CIRCUIT

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows discovery only of documents "relevant to [a] party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Information is "relevant" pursuant to Rule 26(b)(1) "if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Vaigasi v. Solow Mgmt. Corp.*, No. 11-cv-5088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401). The party seeking disclosure carries "[t]he burden of establishing relevance." *Edmondson v. RCI Hospitality, LLC*, No. 16-cv-2242, 2018 WL 4112816, at *1-2 (S.D.N.Y. Aug. 29, 2018) (denying plaintiffs' motion to compel production of documents where plaintiffs "failed to articulate the relevance of the requested documents"). Plaintiffs have failed to discharge their burden to establish relevance for the vast majority of their 58 requests, which seek information far beyond and irrelevant to "the essentials necessary to determining the preliminary question of jurisdiction." *In re Ski Train Fire in Kaprun, Aus.*, 230 F. Supp. 2d 392, 400 (S.D.N.Y. 2002) (citation omitted). And Plaintiffs'

attempts to justify the relevance of their requests by going beyond the allegations of the FAC (*see, e.g.*, Mot. Exs. B, D-F) should not be countenanced.  *See A Star Group, Inc. v. Manitoba Hydro*, 621 F. App'x 681, 683 (2d Cir. 2015) ("[A] party may not amend its pleadings through statements in its briefs."); *Carl*, 2017 WL 4271443, at *9.

A.      **The Da'wah Organization Requests (Request Nos. 1-8, 35)**

Plaintiffs have failed to establish that the Da'wah Organization Requests are relevant to determine "when" any support from Al Rajhi Bank was "given *to al Qaeda*" or "what" support (if any) was given, much less any "use" for which such support was "earmarked," or the Bank's "involvement in the process" of providing such support.  Summary Order, 779 F. App'x at 68 (emphasis added); *see In re Ski Train Fire*, 230 F. Supp. 2d at 400 (holding plaintiffs "must 'target information pertinent to'" the jurisdictional inquiry) (internal citation omitted).  As discussed above, the Second Circuit held in *Terrorist Attacks III* and reiterated in its Summary Order that "'[p]roviding indirect funding to an organization that was openly hostile to the United States does not constitute . . . intentional conduct' that is 'expressly aimed . . . at residents of the United States.'"  Summary Order, 779 F. App'x at 68 (alterations in original) (quoting *Terrorist Attacks III*, 538 F.3d at 95).  Indeed, in *Terrorist Attacks III*, the Second Circuit determined that allegations that defendants "supported Muslim charities knowing that their money would be diverted to al Qaeda, which then used the money to finance the September 11 attacks" did not justify "the exercise of personal jurisdiction."  *Terrorist Attacks III*, 538 F.3d at 94-95.  Personal jurisdiction did not exist "[e]ven if [defendants] were reckless in monitoring how their donations were spent, or could and did foresee that recipients of their donations would attack targets in the United States."  *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

As such, even taking as true the allegations in the FAC, "Plaintiffs have made no factual allegations" as to the Da'wah Organizations "which could be proven through additional discovery

that would change the outcome" of the personal jurisdiction issue.  *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 402 (S.D.N.Y. 2009).  Instead, Plaintiffs' overbroad Requests amount to an "unfounded fishing expedition" and must be denied.  *Id.* (quoting *Gear, Inc. v. L.A. Gear Cal., Inc.*, 637 F. Supp. 1323, 1328 (S.D.N.Y. 1986)); *see also Astor Chocolate Corp. v. Elite Gold Ltd.*, No. 18-cv-11913, 2020 WL 2130680, at *9 n.6 (S.D.N.Y. May 5, 2020) ("[B]ecause the purpose of the present round of discovery is solely to test jurisdiction, the Court directs that requests for production be tightly focused on this objective only.").

Plaintiffs ignore the Summary Order's focus on alleged Bank support given to al Qaeda by arguing that the Da'wah Organization Requests as to IIRO and Al Haramain in particular are relevant because Al Rajhi Bank's purportedly "intertwined relationships and dealings" with these organizations "are of central import to the assessment of ARB's intent to foster al Qaeda's terrorism" (Mot. 10).  Although Plaintiffs assert that Requests 1-4 and 7 are relevant to the jurisdictional inquiry because Al Rajhi Bank contributed funds and provided various banking services to the Da'wah Organizations (Mot. 10), none of the allegations Plaintiffs cite approaches, let alone goes beyond, "support[ing] Muslim charities knowing that their money would be diverted to al Qaeda, which then used the money to finance the September 11 attacks" — a degree of support that the Second Circuit in *Terrorist Attacks III* found insufficient to support personal jurisdiction. *See* Mot. Ex. B at 1 ("Al Rajhi Bank has maintained accounts and accepted donations" for the Da'wah Organizations (quoting FAC ¶ 158)); *id.* ("Al Rajhi Bank both funded and provided financial services to virtually all of al Qaeda's most critical charity fronts" (quoting FAC ¶ 173)); *id.* ("Al Rajhi Bank maintained at least [24] accounts and handled unusual transactions for [Al Haramain]" (quoting FAC ¶ 158)); *id.* at 2 ("ARB maintained and advertised numerous accounts for the IIRO" (citing FAC ¶¶ 178-79)); *id.* at 2-3 ("ARB and members of the Al Rajhi family

transferred significant sums of money to the al Qaeda charity fronts" (citing FAC ¶¶ 159, 167, 174)); *id.* at 3 ("ARB assisted the al Qaeda charity fronts with their fundraising activities" (citing FAC ¶¶ 174, 178, 179)). Accordingly, under controlling precedent, none of these allegations establishes the relevance of the Da'wah Organization Requests.

Plaintiffs are similarly off the mark in asserting (at 10 & n.4; Ex. B at 3-4 (citing FAC ¶¶ 180-81)) that Requests 5, 6, 8, and 35 are relevant because of Bank officials' purported support for and service "as senior officials" of IIRO and Al Haramain. Not only would any alleged Bank support for these entities be irrelevant, the FAC does not allege that any Bank officials served in these organizations in their official Bank capacities, or even when such alleged service took place. *See* FAC ¶¶ 180-81; *see also Carl*, 2017 WL 4271443, at *9.

And Plaintiffs' reference (at 10) to the U.S. designations of IIRO and Al Haramain is irrelevant, because the United States did not designate IIRO-Philippines, IIRO-Indonesia, or the IIRO official until August 3, 2006, nearly five years after the 9/11 Attacks. U.S. Dep't of the Treasury, *Treasury Designates Director, Branches of Charity Bankrolling Al Qaida Network* (Aug. 3, 2006), https://www.treasury.gov/press-center/press-releases/Pages/hp45.aspx; 71 Fed. Reg. 45,599, 45,599-600 (Dep't of Treasury Aug. 9, 2006). Similarly, the FAC alleges designations of various Al Haramain branches at various times (including as late as 2008), but only *after* the 9/11 Attacks. *See* FAC Ex. A ¶¶ 133-34, 138, 142, 153. Plaintiffs fail to establish how these post-9/11 designations are relevant to Al Rajhi Bank's purported specific intent to further terrorism in the United States before September 11, 2001. *Cf. O'Sullivan v. Deutsche Bank AG*, No. 17-cv-8709, 2019 WL 1409446, at *9 (S.D.N.Y. Mar. 28, 2019) (dismissing plaintiffs' JASTA secondary-liability claim for conspiracy where "the Complaint alleges that certain Iranian entities were only designated as SDGTs years after Defendants transacted business

with them, [which] further undermin[ed] any inference that Defendants had reason to [know] about these entities' connections with FTOs").  Moreover, the FAC's allegations purportedly connecting the Bank to Al Haramain appear to concern only Al Haramain in Saudi Arabia.  *See* FAC ¶¶ 158, 167.

Nor is the information Plaintiffs seek in the Da'wah Organization Requests relevant to the jurisdictional inquiry.  Plaintiffs' Requests seek "*all documents* relating to all ARB accounts established or held in the name of, on behalf of, and/or for the benefit of the Da'wah Organizations, any ARB account for any entity in which the Da'wah Organizations held any beneficial interest, and/or any ARB account over which the Da'wah Organizations and their representatives had signatory authority or had any actual or potential beneficial interest" (RFP 1 (emphasis added)) and documents regarding "all transfers of funds [and donations] into" and out of those accounts (RFPs 2-4), among other broad categories of documents (*see* RFPs 5-8, 35).  Beyond the undue burden of gathering these documents, compliance with these Requests would plainly require the Bank to produce many documents that are irrelevant and lack any connection with the jurisdictional inquiry, using either Plaintiffs' or the Bank's interpretation of that inquiry's proper scope.  The extraordinary breadth of these Requests may suggest an improper purpose, for example, to obtain discovery about other defendants, rather than jurisdictional discovery as to the Bank.  *See* Fed. R. Civ. P. 26(b)(1) (limiting permissible discovery to matters relevant and proportional "to the needs of *the case*") (emphasis added).

Finally, the Da'wah Organization Requests as to the Muwafaq Foundation ("Muwafaq") (*see* ECF No. 6996-3 at 7) are not relevant to the jurisdictional inquiry because the FAC does not contain any allegations against Al Rajhi Bank relating to Muwafaq.  *See Carl*, 2017 WL 4271443, at *9.  Without any nonconclusory allegations connecting the Bank to Muwafaq, this Court again

has "no basis to infer" that Al Rajhi Bank had any interactions with Muwafaq, let alone any interactions relevant to Plaintiffs' jurisdictional inquiry. *Id.*

Accordingly, the Da'wah Organization Requests are not relevant and must be denied.

### B.    The Al Qaeda Operative Requests (Request Nos. 9-22, 33, 34)

Plaintiffs fail to establish the relevance of most of the Al Qaeda Operative Requests (putting aside Abdulaziz Mohamed al Omari, Mamdouh Mahmud Salim, and Abd al Hamid Sulaiman al Mujil, for which the Bank agreed to search for and produce documents).  Plaintiffs' assertion that Al Rajhi Bank's objection to these is "a nonsensical argument" ignores the basic requirement that the FAC must set forth allegations to provide the Court with a "basis to infer" that the discovery sought indeed is relevant. *Carl*, 2017 WL 4271443, at *9.  A "fishing expedition" on these unfounded requests is impermissible. *See RSM Prod. Corp.*, 643 F. Supp. 2d at 402.  Plaintiffs also suggest (at 12) that discovery may be authorized here "based on facts learned by Plaintiff through discovery or through independent investigations," but do not point to any such purported facts.

Plaintiffs then suggest that "the FAC's specific allegation that al Qaeda directed its operatives to use ARB" grounds these Requests in the Complaint. *Id.* (citing FAC ¶ 162).  This allegation stops far short of alleging that al Qaeda operatives had accounts at Al Rajhi Bank.  It also does not allege any time frame for al Qaeda's purported directive that al Qaeda operatives used the Bank in a manner directed at the United States, underscoring the irrelevance of the Requests to the jurisdictional inquiry under either Plaintiffs' or Al Rajhi Bank's interpretation.

### C.    The U.S. Financial Requests (Request Nos. 23-25)

The U.S. Financial Requests are irrelevant to the jurisdictional inquiry authorized by the Second Circuit because the FAC fails to make any allegations related to these purported charitable contributions. *See Carl*, 2017 WL 4271443, at *9.  Plaintiffs do not cite to any allegations

concerning charitable contributions in the United States generally or the State of California specifically.  They instead make a conclusory argument that the "requested documents [go] directly to the heart of the jurisdictional inquiry as to what extent ARB's own funding activities in support of al Qaeda were aimed at the United States specifically," without explaining how these Requests are so targeted.  Mot. Ex. B at 8.

The U.S. Financial Requests also seek "*all documents*" regarding transfers of money "to beneficiaries in the United States," including specifically money transfers "to any mosque, Islamic center, religious institution, or charitable organization operating in California, United States." RFPs 23-25 (emphasis added).  Not only are these requests grossly overbroad, but they are also untethered to al Qaeda or to the Bank's alleged financial support to al Qaeda in the United States. In fact, Plaintiffs acknowledge they are seeking not only information regarding "funds ARB transferred into the United States to support al Qaeda entities," but also information related to "ARB's financial dealings in the United States" in general.  Mot. 12.  Such a request extends far beyond even Plaintiffs' understanding of the scope of jurisdictional discovery and cannot be relevant under Rule 26(b)(1).  *See Lear v. Royal Caribbean Cruises Ltd.*, No. 20-cv-4660, 2021 WL 1299489, at *12 (S.D.N.Y. Apr. 7, 2021) ("[A] 'plaintiff cannot put [a] defendant through the costly process of discovery, even discovery limited to jurisdictional matters, simply because it thinks it can probably show significant contact with the [forum] if discovery were to proceed.'" (second alteration in original) (quoting *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 565 (S.D.N.Y. 1997))).

Moreover, the U.S. Financial Requests seek "all documents" related to charitable contributions "from any benevolent or charitable organization associated with *any member of the*

*Al Rajhi family*" (RFPs 23-24 (emphasis added)), irrespective of whether they hold an official position in the Bank and, if so, whether they were acting in their official capacity.

In short, the U.S. Financial Requests constitute a blatant fishing expedition and are far too vague and overbroad to be relevant to the limited jurisdictional discovery authorized by the Second Circuit and directed by this Court.  As such, they must be denied.

### D.  The Terror Financing Article Requests (Request Nos. 26-32)

Plaintiffs contend that the Terror Financing Article Requests are relevant to "the heart of the state of mind of the bank and its principals" because the Requests seek "documents relating to the transactions and events described in several intelligence reports authored by" the U.S. Government.  Mot. 12-13.  But Plaintiffs fail to establish how the transactions and events that took place after the 9/11 Attacks (*see* RFPs 26-30; Mot. 12 (citing FAC ¶¶ 156-63)) and/or far from the United States (*see* RFPs 31-32) often by individuals previously dismissed from this litigation (*see* RFPs 29, 31) are relevant to Al Rajhi Bank's "specific intent to further terrorism in the United States" before September 11, 2001, much less the jurisdictional inquiry as defined by the Second Circuit.  Summary Order, 779 F. App'x at 68-69.  Nor do Plaintiffs establish why these Requests for "all documents" are warranted; indeed, discovery of "all documents" responsive to these Requests would yield production of innumerable documents not at all relevant to the jurisdictional inquiry.  *See*, *e.g.*, *Robertson v. People Magazine*, No. 14-cv-6759, 2015 WL 9077111, *2 (S.D.N.Y. 2015) (holding requests for "all documents" were "burdensome and disproportionate" because they would "extend far beyond the scope of Plaintiff's claims and would significantly burden Defendants").

### E.  The Golden Chain Requests (Request Nos. 36-38)

The Golden Chain Requests are irrelevant to the jurisdictional inquiry because this Court has already dismissed the alleged "Golden Chain" list as not probative of the "involvement" of the

purported individuals on the list "in a terrorist conspiracy culminating in the September 11 attacks and it does not demonstrate that [they] purposefully directed [their] activities at the United States." *Burnett v. Al Baraka Inv. & Dev. Corp. (In re Terrorist Attacks)* ("*Terrorist Attacks I*"), 349 F. Supp. 2d 765, 818 (S.D.N.Y. 2005); *see also id.* at 817 ("[W]ith no indication of who wrote the list, when it was written, or for what purpose, the Court cannot make the logical leap that the document is a list of early al Qaeda supporters."); *In re Terrorist Attacks on Sept. 11, 2001* ("*Terrorist Attacks IV*"), 718 F. Supp. 2d 456, 483 (S.D.N.Y. 2010) ("[E]ven if the document is in fact what plaintiffs purport it to be, it alone does not render those listed therein subject to the jurisdiction of this Court under specific jurisdictional theories."). Plaintiffs have failed to establish the relevance of information responsive to these requests — particularly because the FAC does not allege any relationship between the Bank and any so-called "Golden Chain Related Individual," or any such relationship with Suleiman Al Rajhi or any other Al Rajhi family member acting within his official capacity at the Bank. These Requests must be denied.

F.     **The SAAR Network Requests (Request Nos. 39-41)**

The SAAR Network Requests likewise cannot bear on the jurisdictional inquiry because this Court previously dismissed Plaintiffs' claims as to the SAAR Network Defendants for failure to state a claim. *See In re Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 523 (S.D.N.Y. 2010) ("Plaintiffs merely plead conclusory allegations against a large group of defendants, whom plaintiffs have independently concluded to be related and operating in unison. None of the Defendants can be held liable based on such allegations alone."). The allegations Plaintiffs cite (at 13 (citing FAC ¶¶ 185-86)) in support of these Requests — allegations already deemed by this Court to be "conclusory" and insufficient to state a claim — therefore are not probative and cannot support jurisdictional discovery.

### G.      The Saleh al Hussayen Requests (Request Nos. 42-44)

Although Plaintiffs maintain they are "entitle[d] to the discovery they seek from ARB as to Hussayen" (Mot. 14), the FAC does not contain any allegations regarding Hussayen; thus, there is no basis for these requests.  *Carl*, 2017 WL 4271443, at *9.

Plaintiffs mistakenly rely on the Second Circuit's decision in *Terrorist Attacks VII* as concluding that "discovery was warranted as to Hussayen, *based on his role as an agent of ARB*." Mot. 14 (citing *Terrorist Attacks VII*, 714 F.3d at 678) (emphasis added).  The Second Circuit did not conclude that Hussayen committed the actions alleged as an agent the Bank; rather, the court found a plausible inference only that "*he* may have intended *his* alleged indirect support of al Qaeda to cause injury in the United States."  *Terrorist Attacks VII*, 714 F.3d at 678 & n.14 (emphasis added).  Nor have Plaintiffs pleaded any facts at all about Hussayen's role at the Bank, let alone facts that could support an inference that he undertook the alleged actions as a purported agent of the Bank.  *See Schwab*, 883 F.3d at 85 (declining to impute jurisdictional contacts to defendant under agency theory where allegations that defendant "controlled or otherwise directed or materially participated in" and "reaped proceeds or other financial benefits from" activities of its subsidiaries were "bare" and "too conclusory").

Plaintiffs in any event have not established that an agent's actions can be attributed to a principal under either the effects test or the common scheme test; *Schwab* and other Second Circuit cases contemplate attribution through agency only in the context of the purposeful availment theory of personal jurisdiction that is irrelevant here.  *See Schwab*, 883 F.3d at 84-86 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014) (noting that "a corporation can *purposefully avail* itself of a forum by directing its agents or distributors to take action there")).

Even if Hussayen had acted in his official capacity as an agent of the Bank in conducting the alleged activities, the Second Circuit determined that "his activities at Al Rajhi Bank and his

alleged indirect funding of al Qaeda" by "channel[ing] contributions to purported charities that supported al Qaeda" would be insufficient, "standing alone," to "warrant jurisdictional discovery." *Terrorist Attacks VII*, 714 F.3d at 679.  It is only Hussayen's "travels to the United States" ahead of the 9/11 Attacks and "his decision to switch hotels" that "cast his activities at Al Rajhi Bank and his alleged indirect funding of al Qaeda in a different light." *Id.*  Neither the Second Circuit nor the FAC suggest those travels were part of his purported role at the Bank; in fact, Plaintiffs have alleged Hussayen's trip to the United States was an "IANA [Islamic Assembly of North America] sponsored fundraising event."  More Definite Statement as to Defendant Islamic Assembly of North America ("IANA") ¶ 84, ECF No. 208-2.  Discovery as to those travels would therefore have no relevance to Plaintiffs' theories of jurisdiction over Al Rajhi Bank.

## H.  The Terrorism Finance Investigation Requests (Request Nos. 45-54)

Al Rajhi Bank has agreed to produce documents responsive to Requests 47-54, subject to the objections set forth in its Responses and Objections.  *See* Mot. Ex. C at 134-55.  And Requests 45 and 46 are not relevant to the jurisdictional inquiry and should be denied.  These Requests seek "*all documents*" relating to (i) "*any* investigation or audit relating to *any* potential criminal or terrorist activity" after the 9/11 Attacks and (ii) "*all* ARB accounts that were seized, frozen, closed, monitored, or in any way restricted" after the 9/11 Attacks.  RFPs 45, 46 (emphases added).  The Requests are entirely untethered from Plaintiffs' injuries and the 9/11 Attacks generally, let alone the allegations in the FAC.  Compliance with these overbroad Requests would require production documents far outside the scope of the jurisdictional discovery authorized under either party's interpretation of the Second Circuit's Summary Order.

## I.  The Suleiman Al Rajhi Departure Request (Request No. 55)

Plaintiffs contend (at 15) that documents concerning Suleiman Al Rajhi's departure from Al Rajhi Bank are relevant to the jurisdictional inquiry, but Plaintiffs ignore that this Court

previously dismissed Suleiman Al Rajhi for lack of personal jurisdiction and held that "allegations concerning the Al Rajhi family cannot support a claim against Al Rajhi Bank because there is no allegation that the family members were acting in furtherance of Al Rajhi Bank business." *Terrorist Attacks IV*, 718 F. Supp. 2d at 485 (quoting *Terrorist Attacks I*, 349 F. Supp. 2d at 833); *see also Tasso v. Platinum Guild Int'l*, No. 94-cv-8288, 1997 WL 16066, at *6 (S.D.N.Y. Jan. 13, 1997) (*cited in Terrorist Attacks I*, 349 F. Supp. 2d at 833) (dismissing tort claims against employer where "plaintiff . . . failed to allege that [defendant] was acting within the scope of his employment when he engaged in the [tortious] conduct"); *Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by director of surety corporation could be imputed to a separate bank of which he was board chairman and COO). The FAC includes no such allegations, so any documents responsive to this request would not support the jurisdictional inquiry — and would plainly exceed the scope of discovery authorized by the Second Circuit.

### J.     The ARB Financial Controls Requests (Request Nos. 56-58)

Plaintiffs have failed to establish that the ARB Financial Controls Requests are relevant to the jurisdictional inquiry as authorized by the Second Circuit, as they do not seek information related to the Bank's alleged direct support to al Qaeda. *See* Summary Order, 779 F. App'x at 68. Additionally, Requests seeking Al Rajhi Bank's financial controls postdating the 9/11 Attacks are not relevant to the Bank's "specific intent to further terrorism in the United States" before the 9/11 Attacks, and should be denied.

## III.   PLAINTIFFS' PROPOSED TIME FRAMES FOR JURISDICTIONAL DISCOVERY ARE INCONSISTENT AND DISPROPORTIONATE TO THE NEEDS OF THE CASE

Plaintiffs (at 20-24) are inconsistent as to which dates should be the presumptive time limits on their Requests. Plaintiffs' Motion alternatively defends January 1, 1992 and January 1, 1998

as the proper start date for jurisdictional discovery (at 20-22) and only defends December 31, 2004 as the end date in the context of the Terrorism Finance Investigation Requests (at 22-24).  Either date range would extend jurisdictional discovery well beyond "the essentials necessary to determining the preliminary question of jurisdiction." *In re Ski Train Fire*, 230 F. Supp. 2d at 400 (citation omitted).

**Start Date.**  Whether January 1, 1992 or January 1, 1998, Plaintiffs' "presumptive" start date for their Requests would require the production of documents entirely irrelevant to the jurisdictional inquiry.

Plaintiffs' reliance (at 21-22) on the December 21, 2007 Order issued by Judge Daniels regarding the scope of merits discovery is misplaced.  The scope of jurisdictional discovery is not necessarily coextensive with merits discovery.  *See, e.g.*, *Astor Chocolate Corp.*, 2020 WL 2130680, at *9 n.6 (narrowing scope of permitted jurisdictional discovery where merits discovery not yet authorized, stating:  "[B]ecause the purpose of the present round of discovery is solely to test jurisdiction, the Court directs that requests for production be tightly focused on this objective only").  The 2007 Order in any event does not establish any "bright line rule" for this Court's determination of appropriate discovery date ranges, and certainly not with respect to jurisdictional discovery.  *In re Terrorist Attacks on Sept. 11, 2001*, 440 F. Supp. 2d 281, 285 (S.D.N.Y. 2006) ("There is no bright line rule capable of helping a court fix the appropriate look-back period for every case.").

This Court has previously recognized a far stricter temporal limit on the conduct relevant to personal jurisdiction.  In *Siegel v. HSBC Holdings, PLC*, No. 17-cv 6593, 2018 WL 501610 (S.D.N.Y. Jan. 19, 2018), this Court dismissed terrorism claims against Al Rajhi Bank for lack of personal jurisdiction where the Bank's purported jurisdictional contacts ceased *ten months* prior

–17–

to the attacks at issue.  2018 WL 501610, at *4 (determining that the complaint "fails to establish that the exercise of personal jurisdiction over Al Rajhi Bank would be appropriate," finding that "while the Al Rajhi Bank may have done business inside the United States . . . before the attacks, it was not doing so from late January 2005 through the [November 2005] date of the attacks").

Even assuming some overlap between the jurisdictional inquiry and merits inquiry, as Plaintiffs propose (Mot. 20), the Second Circuit and this Court have also applied this temporal limit to conduct relevant to liability under the ATA.  *See Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 224-26 (2d Cir. 2019) (holding that, even after over twenty-five years of alleged jurisdictional contacts, HSBC's termination of its purported support for terrorism ten months before the attacks made it implausible to find either the mental state or "substantial assistance" required for ATA liability); *see also Averbach v. Cairo Amman Bank*, No. 19-cv-0004, 2020 WL 486860, at *13-14, 17 (S.D.N.Y. Jan. 21, 2020) (dismissing ATA claims on the merits, finding that a *three-month* gap between the bank defendant's last fund transfer for entities linked to terrorism and the first attack at issue "precludes an inference that CAB was generally aware that it was playing a role in that attack," and that any alleged assistance was not "substantial" in part because the fund transfers "took place over a much shorter period of time and well before any of the Attacks").

Based on the authority in this Circuit, Al Rajhi Bank's proposal to use October 8, 1999 — the date the United States designated al Qaeda as a Foreign Terrorist Organization (FTO) and approximately *thirteen* months before the September 11 attacks — as a start date for jurisdictional discovery would not "distort the Court's ability to assess the relationships and conduct giving rise to jurisdiction," as Plaintiffs contend.  Mot. 23.

Plaintiffs' authorities (at 18-19, 22-23) are irrelevant.  Neither *Kaplan* nor *Linde* addresses the time frame or scope of jurisdictional discovery, or even the time frame of allegations that are sufficient to state a claim under the ATA.  *See Kaplan*, 999 F.3d at 863-66 (dealing only with the sufficiency of general awareness and substantial assistance allegations to state an aiding-and-abetting claim under the ATA, where personal jurisdiction had been previously resolved); *Linde*, 882 F.3d at 318 (addressing defendant's post-verdict motion concerning whether the jury was properly instructed on "the ATA's 'act of international terrorism' element").

**End Date.**  Plaintiffs' Motion (at 22-24) seeks to compel the production of only documents responsive to the Terrorism Finance Investigation Requests (RFPs 45-54) for the time period ending on December 31, 2004.  The Bank has agreed to produce documents responsive to the majority of these Requests (RFPs 47-54) through December 31, 2002.  *See* ECF No. 6996-5 at 134-55.  This Court in this multidistrict litigation has previously ordered jurisdictional discovery against SBG to end on August 15, 2002 (ECF No. 1941 at 2) and jurisdictional discovery against the Kingdom of Saudi Arabia to end on December 31, 2002 (ECF No. 4009 at 1).  No basis exists to order a longer jurisdictional discovery period against the Bank.

For Plaintiffs' other Requests, Plaintiffs do not show why any potentially responsive materials from September 11, 2001 through December 31, 2004, would be relevant to the jurisdictional inquiry.  This Court and others have held that support for terrorists that postdates the attack at issue is not relevant to a defendant's liability for the attack.  *See, e.g.*, *Sokolow v. PLO*, 60 F. Supp. 3d 509, 517 n.11 (S.D.N.Y. 2014) ("A showing of support [for terrorist attacks] — even post-attack financial support to the families of terrorists — is not sufficient to demonstrate that Defendants were somehow responsible for the attacks."); *Owens v. BNP Paribas, S.A.*, 235 F.

Supp. 3d 85, 98 (D.D.C. 2017) (holding plaintiffs failed to state a secondary-liability ATA claim where most allegations concerned conduct "at least four years after the August 1998 bombings").

## IV.    PLAINTIFFS' REQUESTS ARE BURDENSOME

Plaintiffs' knee-jerk assertion (at 25) that the Bank's burden objection is "boilerplate" is both premature and wrong.  Plaintiffs to date have not engaged with the Bank in any meaningful discussion to narrow the areas of disagreement between the Parties or reduce the burden on the Bank in responding to Plaintiffs' overbroad Requests.  Plaintiffs did not even respond to the Bank's objections based on burden and lack of proportionality during the one meet-and-confer call and, instead, raise the issue for the first time in their Motion to Compel.

The Bank, however, has put Plaintiffs on notice that many Requests that overstep the scope of the Second Circuit's order also would impose an undue and disproportionate burden on the Bank.  Some of the requested account information — i.e., account statements and know-your-customer information, such as what the Bank has already produced — can be retrieved from the Bank's operational files or digital repositories.  However, responding to any of Plaintiffs' requests for decades-old administrative records, communications, correspondence, notes, memoranda, etc., would require searching for boxes of documents from the Bank's Archive Center because most of the Bank's documents from 1992 through 2002 would have been created as hard-copy documents. *See* Statement of Naif Al Dahmashi ("Al Dahmashi Statement") ¶ 3.

Indeed, the Bank's historical, hard-copy documents are an axiomatic example of documents that are so burdensome to review that they effectively are kept in an inaccessible format. *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003) ("In the world of paper documents, for example, a document is accessible if it is readily available in a usable format and reasonably indexed.  Examples of inaccessible paper documents could include (a) documents in storage in a difficult to reach place; (b) documents converted to microfiche and

not easily readable; or (c) documents kept haphazardly, with no indexing system, in quantities that make page-by-page searches impracticable."); *see also Am. Express Travel Related Servs. Co. v. Allegis Grp., Inc.*, No. 00-cv-5781, 2001 WL 1661917, at *3 (S.D.N.Y. Dec. 28, 2001) (denying plaintiff's request to compel production where defendant "represent[ed] that [the] reimbursement records [sought] are in storage in hard copy form and that some 300 boxes of records would have to be reviewed to obtain the requested information"); *Hallmark v. Cohen & Slamowitz, LLP*, No. 11-cv-842, 2016 WL 1128494, at *3 (W.D.N.Y. Mar. 23, 2016) (providing as an example of "inaccessible" paper documents those "in hard-copy form albeit filed in a manner and location that requires extensive manual searching and individual review to locate and retrieve").

The Bank currently holds approximately 2.25 million total boxes of hard-copy documents in four Riyadh warehouses. Al Dahmashi Statement ¶ 6. The Bank maintains an index of the boxes; however, the specific documents inside each box are not indexed and the specific documents in a particular box cannot be searched without retrieving the entire box. *Id.* at ¶¶ 7-9, 14. Although some of the documents in the Bank's archives have been scanned, the contents of the documents scanned and received by the Bank's Archive Center before 2015 are not digitally searchable in their current format. *Id.* at ¶ 12.

Setting aside the issue of the proper scope of jurisdictional discovery authorized by the Second Circuit, the extraordinary burden on the Bank to respond just to Plaintiffs' Request No. 1 is illustrative. For just the three-year period from 1999 to 2001 — a substantially shorter period than the ten years from 1992 to 2002 that Plaintiffs seek in their Motion (at 20-22) — the Bank has identified approximately 114,420 boxes (or an estimated 286 million pages) of documents potentially responsive to Plaintiffs' Request. *Id.* at ¶ 15; *see also* Declaration of John J.

Queirolo, Jr. ("Queirolo Decl.") ¶ 9 (estimating this volume of boxes to contain approximately 71,500,000 documents).

To respond to Plaintiffs' Request, the Bank would need to retrieve these boxes, scan (or rescan) their contents, load the scanned data to a review platform, host the data, and review the documents for responsiveness.  The total estimated costs for the Bank to do this would be in the range of approximately $98,712,148 to $256,987,348.  *See* Al Dahmashi Statement ¶ 18 (estimating retrieval and scanning costs); Queirolo Decl. ¶ 7 (estimating loading and hosting costs); Declaration of Cathy A. Fetgatter, Esq. ("Fetgatter Decl.") ¶ 8 (estimating review costs). And the time to review these documents would be at least 1.6 to 2 *years*, if the Bank were able to engage 300 reviewers working 8 hours per day for 365 days a year.  *See* Fetgatter Decl. ¶ 7.

Even if the Bank were to exclude boxes that appear (from the limited index) to contain only transactional documents (e.g., deposit or withdrawal slips, checks, etc.) from branches — despite Plaintiffs' Requests for the production of such documents (*see, e.g.*, RFPs 1, 3, 10-14, 17, 19, 22-25, 29, 31, 34, 37-38, 40) — the estimated total cost to the Bank to review the documents in the remaining boxes is still in the range of approximately $11,286,616 to $29,324,593.  *See* Al Dahmashi Statement ¶¶ 15, 18; Queirolo Decl. ¶ 8; Fetgatter Decl. ¶ 8.

Therefore, even if the Court were to conclude that some additional requested documents could be potentially relevant and within the scope of the limited jurisdictional discovery authorized by the Second Circuit, the overwhelming burden on the Bank to locate, retrieve, and review those documents would be disproportionate to the potential marginal relevance such documents might have to the jurisdictional inquiry before the Court.  *See Hake v. Citibank, N.A.*, No. 19-mc-00125, 2020 WL 1467132, *6 (S.D.N.Y. Mar. 26, 2020) ("Given the marginal relevance of these

documents, the burden of restoring and searching archived data, . . .  Plaintiffs' request for the Source Data is not proportional to the needs of their respective cases.").

## V.      NO SAUDI LAW ISSUE IS RIPE

Plaintiffs' protest (at 24-25) against possible Saudi-law constraints on the Bank's production is premature.  As the Bank made clear during the parties' only meet-and-confer call, the Bank has not withheld any documents that it would have otherwise disclosed but for the restrictions of Saudi law.  Al Rajhi Bank, however, is indeed subject to and must observe applicable Saudi laws and regulations governing the disclosure of banking data, national data, and personal data.

Nearly all of Plaintiffs' 58 Requests (and dozens of sub-parts) seek highly sensitive personally identifiable or financial information about customers of the Bank.  When a party seeks to compel the production of such information from a foreign litigant, special precautions are necessary to protect against undermining foreign law and interests.  *See Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987) ("American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position."); Restatement (Third) of Foreign Relations Law § 442(1)(c) (advising the consideration of the "important interests of the state where the information is located," along with other factors, when the disclosure of information is prohibited by the laws of a foreign state).

If the Court were to conclude that additional Requests are within the scope of jurisdictional discovery, and Saudi laws or regulations were to prevent the Bank from producing documents responsive to those Requests, then the Bank will address the issue with Plaintiffs and, as needed,

make the necessary representations for this Court to rule on the Bank's objection.  For now, there is no crystalized dispute over the constraints of Saudi law.

## CONCLUSION

For the foregoing reasons, Al Rajhi Bank respectfully requests that the Court deny Plaintiffs' Motion to Compel Production of Documents from Al Rajhi Bank.

Dated:   September 1, 2021
         Washington, DC

Respectfully submitted,

**WHITE & CASE**

 /s/ *Nicole Erb*
Christopher M. Curran
Nicole Erb
Matthew S. Leddicotte (*pro hac vice*)
Reuben J. Sequeira
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005
Telephone:     + 1 202 626 3600
Facsimile:      + 1 202 639 9355
ccurran@whitecase.com
nerb@whitecase.com
mleddicotte@whitecase.com
rsequeira@whitecase.com

*Counsel for Al Rajhi Bank*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 1, 2021, I caused an electronic copy of the foregoing Al Rajhi Bank's Response in Opposition to Plaintiffs' Motion to Compel Production of Documents to be served electronically by the Court's Electronic Case Filing (ECF) System.  I caused the foregoing to be filed on the MDL docket and the dockets for the following consolidated cases:

*The Underwriting Members of Lloyd's Syndicate 2, et al. v. Al Rajhi Bank, et al.*, No. 16-cv-7853;
*Aguilar, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09663;
*Addesso, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09937;
*Hodges, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-0117;
*Aiken, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-00450;
*Charter Oak Fire Insurance Co., et al. v. Al Rajhi Bank, et al.*, No. 17-cv-02651;
*Abarca, et al., v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03887;
*Arrowood Indemnity Co., et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03908;
*Abedhajajreh, et al., v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-06123
*Muenchener Rueckversicherungs-Gesellschaft Aktiengesellschaft in Muenchen, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-07914; and
*Abbate, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-08617

Dated: September 1, 2021

/s/ *Nicole Erb*
Nicole Erb