innovativediscovery

## DECLARATION OF CATHY FETGATTER

I, Cathy A. Fetgatter, Esq., declare as follows:

1.      I make this declaration in support of Al Rajhi Bank's Opposition to Plaintiffs' Motion to Compel Production of Documents filed in *In re Terrorist Attacks on September 11, 2001*, Case No. 1:03-md-01570-GBD-SN (S.D.N.Y.). I am over the age of 18 years, am familiar with the information contained in this declaration, and am competent to testify as to that information.

2.      I am a Senior Vice President of Analytics and Managed Review Services at Innovative Discovery, LLC. I have held this position since March 2012. I have over 20 years of experience in the litigation support field. My area of expertise is in analytics and managed review services, including process defensibility and cost-saving strategies utilizing technology assisted review workflows when applicable. I have a JD from the Washington College of Law at American University and am a member of the Virginia and District of Columbia Bars. I also have an MBA from the Kogod School of Business at American University.

3.      I have reviewed and am familiar with the Statement of Naif Al Dahmashi at Al Rajhi Bank and the Declaration of John J. Queirolo, Jr. at Innovative Discovery, LLC, that I understand also are being submitted in support of the Bank's Opposition to Plaintiffs' Motion to Compel.

4.      Further, the estimates provided in this declaration are based solely on the information provided by Mr. Al Dahmashi and Mr. Queirolo without any direct access to the hard-copy documents or direct knowledge of the type, size, or condition of the hard-copy documents.

5.      In his statement, Mr. Al Dahmashi estimates that approximately 114,420 boxes from the Bank's Archive Center would contain a total of approximately 286 million pages of hard-copy documents (assuming 2,500 pages per box). Mr. Al Dahmashi also estimates that

approximately 13,049 boxes (approximately 32,622,500 pages, assuming 2,500 pages per box) out of the 114,420 boxes do not contain documents that can be selected by combination of transaction date and branch ("Non-Transaction Documents").

6.       Based upon the Declaration of Mr. Queirolo, (1) the approximately 286 million pages of hard-copy documents contain approximately 71,500,000 documents, and (2) the approximately 32,622,500 pages of hard-copy Non-Transaction Documents contain approximately 8,155,625 documents.   These estimates assume an average document length of 4 pages per document according to industry averages as well as the information described in Paragraph 15 of Mr. Al Dahmashi's statement.

7.       Depending on the review technology and workflow selected,[1] U.S.-based reviewers should be able to review between 40 and 50 documents per hour.[2]   At these rates, it would take between 1,430,000 and 1,787,500 total hours (i.e., between 595.8 and 744.8 days if the Bank engaged 300 reviewers working 8 hours per day) to complete a review of the 114,420 boxes. Similarly, it would take between 163,113 and 203,891 total hours (i.e., between 68 and 85 days if

---

[1] Leveraging technology to reduce review costs and maximize the efficiency of the review should always be considered at the forefront of a review — whether it be to cull the review universe (e.g., search terms, deduplication), strategically organize the review (e.g., email threading, near-duplicate identification, clustering, categorization), and/or potentially even replace a subset of human review (i.e., machine learning/predictive coding) (collectively, technology-assisted review, or "TAR"). However, TAR only works on text-based documents and the review efficiencies gained by leveraging TAR is wholly dependent on the quality of that text. Since the potential review universe consists of hard-copy documents, these documents will need to be scanned as images and then converted into text-based machine-readable files by applying optical character recognition ("OCR") technology for TAR to work. While the condition of the hard-copy documents is unknown, there are several foreseeable factors that will likely reduce/minimize the effectiveness of leveraging TAR (e.g., age of the documents, amount of handwritten material, etc.). As a result, it is unlikely that leveraging technology will provide great utility in reviewing the hard-copy documents in this instance. Therefore, the estimated review pace will likely be at the low end of industry averages.

[2] This review pace estimate: (1) is an average pace achieved over the life of the review, (2) is based on minimal information regarding the actual review requirements that will be in play, and (3) applies to First-Level Review only. First-Level Review generally includes reviewing for responsiveness, issues, potential privilege, and identification of candidates for redaction only. Drafting privilege log entries and applying redactions are not included in these estimates and are generally estimated at a slower review pace, due to the associated review requirements. In addition to this, depending on the condition of the hard-copy documents which directly correlates with the quality of the scanned documents for review, the review pace estimate of 40 to 50 documents per hour could be too aggressive. Should the quality of the scanned documents be such that it is difficult to review the content, which in my experience is often the case for scans of hard-copy documents that are more than ten years old, the review pace will likely be significantly slower than industry averages.

 innovativediscovery

the Bank engaged 300 reviewers working 8 hours per day) to complete a review of the 13,049 boxes of Non-Transaction Documents.

8.      If Al Rajhi Bank hires U.S.-based contract reviewers to complete this review at an estimated hourly rate of $45.00 per hour for English-language contract attorneys and $120.00 per hour for Arabic-language contract attorneys, and legal project managers at an estimated hourly rate of $95.00 per hour at an estimated 20% of total contract reviewer hours, this would result in review fees between $91,520,000.00 and $248,462,500.00 for the approximately 114,420 boxes. Using the same assumptions, the review fees for only the approximately 13,049 boxes of Non-Transaction Documents would be between $10,439,200.00 and $28,340,797.00.[3]

9.      In sum, the total estimated cost for loading, hosting for one (1) year (per the Declaration of Mr. Queirolo), and reviewing the 114,420 boxes of hard-copy documents identified in Mr. Al Dahmashi's statement would be approximately $92,106,300.00 to $250,381,500.00. Similarly, the total estimated cost for loading, hosting for one (1) year (per the Declaration of Mr. Queirolo), and reviewing only the 13,049 boxes of non-transactional, hard-copy documents identified in Mr. Al Dahmashi's statement would range from approximately $10,553,370.00 to $28,571,347.00.

---

[3] The estimated review costs are for First-Level Review conducted by contract attorneys and associated project management by the managed review vendor, including vendor-provided quality assurance. The estimated review costs do not include Second-Level Review conducted by counsel, nor does it include additional review workflows traditionally conducted by contract attorneys such as Privilege Log Review and/or Redaction Review. Further, the estimated review costs do not consider documents that may need to be reviewed more than once by the First-Level Review team (i.e., mixed-language documents that require review by both English-language contract attorneys and Arabic-language contract attorneys to minimize the amount of review required by the higher cost Arabic-language resources).

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Vienna, Virginia on September 1, 2021.

_____

Cathy A. Fetgatter, Esq.

innovativediscovery