# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

September 2, 2021

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

RE:   *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

In light of the extraordinary decision by the United States government – after more than three years of litigation – to review its privilege designations and produce additional materials, a modest extension of time for expert discovery is absolutely necessary and squarely in the public's best interest, and outweighs any countervailing concerns. The Court should grant the Plaintiffs' motion for an extension of time (ECF No. 7074) and the arguments by the Kingdom of Saudi Arabia and Dallah Avco to the contrary (ECF Nos. 7084 and 7085, respectively), are misplaced. As to the other, unrelated issues that the Kingdom forces into its opposition (ECF No. 7084 at 4-5), those topics are both beyond the scope of plaintiffs' request and inconsistent with the procedural history. These matters would be best be addressed before the Court at a conference.

A. <u>The Interests of Justice Require an Extension of the Present Expert Deadline</u>

1.   The Kingdom's arguments opposing plaintiffs' extension request focus single-mindedly on its own interests and wholly ignore the United States government's and plaintiffs' significant interests at issue here. The United States has a unique interest in ensuring that the civil remedies available to plaintiffs here operate effectively and fairly to secure justice for terrorism victims and deter the sponsorship of terrorism.[1]

---

[1] *Linde v. Arab Bank, PLC*, 706 F.3d 92, 99 (2d Cir. 2013) (discussing "the substantial public interest in compensating victims of terrorism and combating terrorism—interests shared by the United States…"); *Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 558-59 (S.D.N.Y. 2012) ("The United States has a 'profound and compelling interest in combating

Honorable Sarah Netburn
September 2, 2021
Page 2

The United States government has stated that those public interests would be advanced here by ensuring the 9/11 plaintiffs an opportunity to receive the additional information under review *before* they must submit their affirmative expert reports. Far from deserving "no weight", ECF No. 7084 at 3, the views and interests of the United States should be afforded considerable deference in this context. If the Court has questions on these points, it may ask the government to address them.

2. The Kingdom's attempts to diminish the significance of the ongoing production of evidence as "political" action are incorrect. The Kingdom blatantly ignores the government's direct statement that the Subfile Investigation was closed in late May, and that the evaluations of the impact of that action on the government's privilege assertions have been ongoing for months. Because the claimed active status of the investigation undergirded the government's privilege assertions, the investigation's closing materially impacted a core *legal* predicate for the government's privilege assertions and this Court's rulings upholding them. Such matters very directly implicate this Court's core processes in relation to disputes it is directly overseeing, and require that the schedule be adjusted appropriately.

3. Saudi Arabia's arguments about the alleged uncertainty of the government's forthcoming actions are equally misguided. The government has made abundantly clear that it will be producing additional documents, and the material significance of those records to plaintiffs' jurisdictional theories is indisputable.[2] Indeed, the government itself identified the records in question as having "core" relevance to the jurisdictional inquiry, and the government already has begun the process of producing additional information by removing redactions from several hundred pages of previously produced documents.[3]

---

terrorism at every level…"); Justice Against Sponsors of Terrorism Act, Pub. L. No. 114–222, § 2(a)(1) & (7), 130 Stat. 852 (2016) ("International terrorism is a serious and deadly problem that threatens the vital interests of the United States…The United States has a vital interest in providing persons and entities injured as a result of terrorist attacks committed within the United States with full access to the court system in order to pursue civil claims against persons, entities, or countries that have knowingly or recklessly provided material support or resources, directly or indirectly, to the persons or organizations responsible for their injuries."); Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132 § 301(a)(1), 110 Stat. 1214 (1996) ("international terrorism is a serious and deadly problem that threatens the vital interests of the United States"); Sudan Claims Resolution Act, Pub. L. 116-260, Div. FF, Title XVII, § 1706(a)(1), 134 Stat. 3291 (2020) ("It is the long-standing policy of the United States that civil lawsuits against those who support, aid and abet, and provide material support for international terrorism serve the national security interests of the United States by deterring the sponsorship of terrorism and by advancing interests of justice, transparency, and accountability.").

[2] In their depositions, the Kingdom's witnesses broadly (and implausibly) disclaimed having any recollection of basic events and transactions, and the Kingdom itself claimed an inability to locate many important documents. Given the Kingdom's professed inability to provide evidence, the FBI's investigation has provided a key path for plaintiffs to discover many of the most important facts. To offer an example from one of the very few public documents the government provided, it was solely through the government's investigation that plaintiffs learned of Fahad al Thumiary's role within the Kingdom's (illegal) propagation program in the United States. The non-public documents detail transactions, events, contacts and relationships of even greater significance to the jurisdictional inquiry, underscoring the significance of the forthcoming materials.

[3] The government's further productions already have disrupted and complicated the work of plaintiffs' experts, a circumstance that itself calls for an extension. In the last two weeks, Plaintiffs' experts have been required to spend considerable time reviewing hundreds of pages of new versions of documents, in order to assess what is new or different from earlier, more redacted versions. Because the new versions contain no indication what has been changed, this is a time consuming and difficult process. Plaintiffs' experts did not plan time in their busy schedules for this disruption and additional work, and cannot manage the influx of new documents within the present schedule.

The fact that the United States has not yet specified a date for completing this process does not provide a basis for denying plaintiffs the essential and modest relief requested. Any delay on the part of the *government* in making the additional evidence available should not prejudice the 9/11 plaintiffs. And to the extent the Court has any concerns about the government's timeline, it can and should ask the DOJ to speak to those issues directly.

4. Further still, the Kingdom's presentation of the procedural history leading to this moment, upon which it predicates many of its arguments, is deeply misleading[4] and rests on the absurd theory that Saudi Arabia's desire to modestly expedite the case (for the sole purpose of advantaging itself) is paramount to the interests of the 9/11 plaintiffs and United States in securing a just result based on a complete record. In point of fact, the 9/11 plaintiffs have been painstakingly diligent in pursuing evidence from the FBI. The fact that the FBI's production is not complete is attributable to the government's own deliberate process to date, delay in reviewing the status of the investigation, and failure to more timely notify the parties and Court that the investigation had been closed.

5. Finally on this issue, the Kingdom's arguments concerning the probative value of the forthcoming evidence and whether plaintiffs' experts may address it in their reports are entirely speculative, and legally flawed in any case. The Kingdom does not know the nature of the evidence the government will be producing, or what opinions plaintiffs' experts will offer. Courts have consistently recognized that experts play a unique and important role in terrorism cases, and have endorsed their reliance on a broad range of materials in formulating their opinions. *See Owens v. Republic of Sudan,* 864 F.3d 751, 787 (D.C. Cir. 2017) (stating that "the testimony of expert witnesses is of crucial importance in terrorism cases" and citing cases). The fact that the present dispute involves a jurisdictional issue to be resolved by the Court, before plaintiffs have been afforded discovery on the merits, further distinguishes the present circumstance from the single case the Kingdom cites, involving a dispute between Marvel comic books and one of its artists.[5] In any case, this Court has already recognized that assessments as to the propriety of expert testimony cannot be conducted before that testimony has even been proffered, and properly rejected the Kingdom's repeated attempts to pre-litigate those questions on the basis of rank assumptions.

For all of the foregoing reasons, plaintiffs respectfully submit that the Kingdom and Dallah have offered no credible argument for denying the extension plaintiffs seek, which is in the interests of justice given the government's extraordinary commitment to produce evidence previously withheld from plaintiffs.

### B. The Kingdom's Proposals for Proceedings Beyond Expert Discovery are Premature and Improper

1. The proposals in the Kingdom's letter go far beyond what the Court ordered the parties to address in their joint proposal (*see* ECF No. 6872 at 1, directing the parties to "file a joint proposal recommending reasonable deadlines for rebuttal expert reports and the close of expert discovery"). Consistent with the scope of the directive of this Court's order, proposals now as to proceedings

---

[4] Offering only a partial quotation from the Court's statements at the October 12, 2018 hearing, the Kingdom conspicuously omits the Court's simultaneous recognition of the 9/11 plaintiffs' "real interest in developing as best they can under difficult circumstances their evidence so that they can ultimately have this case proceed forward onto the merits." Oct. 12, 2018 Tr. at 29:14-16. That "real interest" provides good cause for the modest relief plaintiffs seek.

[5] That very decision in fact acknowledges that the Rules "permit experts some leeway with respect to hearsay evidence." *Marvel Characters, Inc. v. Kirby,* 726 F.3d 119, 136 (2d Cir. 2013).

beyond expert discovery are premature and should be deferred to a date near the end of expert discovery, when the parties and Court will have a clearer picture of the nature and scope of the issues to be addressed, and procedures required, in resolving the jurisdictional issue.

In this regard, it is imperative that the Court first receive additional guidance from the parties as to the unique burdens and procedures governing resolution of the jurisdictional question under the FSIA in a post-discovery setting, before setting deadlines or processes beyond expert discovery. The Kingdom's proposal suggests that the issues can be resolved solely through paper briefing on a renewed motion to dismiss, but that is manifestly incorrect.

Under the FSIA, plaintiffs are entitled to an opportunity to present facts and evidence in support of their jurisdictional theories, and in a post-discovery setting this includes a right to an evidentiary hearing. *See, e.g., Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 235 F.3d 738, 748 (2d Cir. 2000). In that setting, plaintiffs are entitled to the benefit of facts and evidence the Kingdom has failed to directly rebut, including those the Court already found to be sufficiently pled in its March 28, 2018 decision. Even as to matters for which the Court found discovery necessary and relative to which the Kingdom presents a competent factual challenge, plaintiffs bear only a modest burden of production. The Kingdom, and not plaintiffs, bears the burden of persuasion. *See, e.g., Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 (2d Cir. 2001); *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993).

The procedures the Court adopts for post-expert discovery proceedings must be in accord with this framework and associated standards, and cannot properly be determined on the basis of the current record. These are complex issues, which should be decided only after the Court has received the benefit of additional guidance through full briefing.

2. For the reasons discussed in plaintiffs' initial letter of August 26 (ECF No. 7074 at 5) and above, plaintiffs respectfully submit that the Court should confine the current determinations to those the Court invited in its order (ECF No. 6872) and defer consideration of further proposals concerning expert discovery until the FBI's ongoing process comes into sharper focus. Again, it may be helpful for the Court to direct the DOJ to submit a letter addressing that issue, and the nature of the government's interests, to assist in and expedite that process. In the interim, plaintiffs note that there are several fundamental problems with the Kingdom's expert-related proposals.

Initially, the Kingdom's effort to preclude plaintiffs from offering expert rebuttals to the Kingdom's expert reports is improper. Again, the Kingdom must raise a competent factual challenge to trigger plaintiffs' burden of production, and it is clear that the Kingdom intends to raise purported factual challenges, at least in part, through its expert reports. Plaintiffs must be afforded an opportunity to respond to such challenges. Further, the Kingdom's claim that its reports will solely rebut plaintiffs' experts should not be credited in setting any schedule. Meanwhile, Dallah Avco is yet to provide information concerning the nature or number of its experts, but its earlier statements in Court indicate that it will be offering affirmative expert reports. Any schedule must allow plaintiffs to respond to those.

The schedule the Kingdom proposes for expert depositions is both unworkable and unfair, and based on deficient information. Again, neither the Kingdom nor Dallah has provided information concerning the number, identity, or nature of their experts, and it is impossible to set a rational deposition schedule without that information. Further, it would be fundamentally unfair to require plaintiffs' experts to sit for depositions before receiving the Kingdom's expert reports and criticisms

4

of them and rebuttal opinions contained therein. All experts should be on equal footing, and that requires that the reports be served first, before depositions begin. Last on this point, the defendants' proposal that plaintiffs should be afforded only 30 days after receiving reports from an indefinite number of experts to complete their depositions is deeply unfair and unworkable. Plaintiffs and their experts need a fair opportunity to review the reports and materials cited therein, which may be voluminous, before deposing those experts. And the schedule for completing those depositions must take into account the number of experts involved and nature of their opinions, information the defendants have not provided.

3. Finally, the Kingdom's attempt to impose an 11th hour obligation on plaintiffs to serve a statement of facts and evidence on less than two weeks' notice, ECF No. 7074 at 4, despite the fact that the Court has never set any deadline for such a filing or even found it to be necessary, is a troubling attempt at gamesmanship. To support its argument for the unrealistic obligation, the Kingdom points to a reference three months ago in the context of Plaintiffs' June 2 request for a Case Management Conference. See ECF No. 6847, where Plaintiffs offered an example of ideas the Court might have considered to advance the case at that time. Importantly, that discussion contemplated that Plaintiffs would have more than 3 months to draft the statement of facts and evidence.

But after that exchange, neither the Court nor any party raised the proposal again. The Court's June 18, 2021 order (following the parties exchanges (ECF No. 6872)) never even addressed, much less imposed, the obligation. Moreover, responding to the Court's direction to "identify[] all outstanding issues and stat[e] whether a case management conference is still necessary" [*id.*], the Kingdom never claimed its proposal for a statement of facts and evidence was an "outstanding issue." *See* ECF No 6884. It is flatly unreasonable for the Kingdom now to propose that this Court order for the first time that plaintiffs – in less than two weeks – assemble a statement of facts and evidence in a case of this scope and importance. Any ruling about the utility of such statements and the timing of their submission should come after a conference with the Court and should await briefing on the FSIA burdens and processes as outlined above.

Respectfully submitted,

COZEN O'CONNOR

By: /s/ Sean P. Carter
    Sean P. Carter
    Cozen O'Connor
    One Liberty Place
    1650 Market Street, Suite 2800
    Philadelphia, PA 19103
    Tel: (215) 665-2105
    E-mail: scarter1@cozen.com

*On behalf of the MDL 1570 Plaintiffs' Exec. Committees*

KREINDLER & KREINDLER LLP

MOTLEY RICE LLC

*By: /s/ Robert T. Haefele*
    Robert T. Haefele
    Motley Rice LLC
    28 Bridgeside Boulevard
    Mount Pleasant, SC 29465
    Tel.: (843) 216-9184
    Email: rhaefele@motleyrice.com

*On behalf of the MDL 1570 Plaintiffs' Exec. Committees*

5

Honorable Sarah Netburn
September 2, 2021
Page 6

>By: */s/ Steven R. Pounian*
> Steven R. Pounian
> Kreindler & Kreindler LLP
> 750 Third Avenue
> New York, New York 10017
> Tel.: 212-687-8181
> Email: spounian@kreindler.com

*On behalf of the MDL 1570 Plaintiffs'
Exec. Committees*

cc: The Honorable George B. Daniels (via ECF)
    All MDL Counsel of Record (via ECF)