

Aisha E. R. Bembry
202 659 6752
aisha.bembry@lbkmlaw.com

September 3, 2021

**VIA ECF**

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY  10007

> Re:   In re Terrorist Attacks of September 11, 2001,
>       03 MDL 1570 (S.D.N.Y) (GBD) (SN)

Dear Judge Netburn:

Defendants,[1] together with the Plaintiffs' Executive Committees (collectively, "Parties") write in response to the Court's Order dated August 13, 2021 (ECF No. 7014), which directed the Parties to submit a joint status letter proposing the "next steps for this action and a schedule for those steps."

The Parties have largely been able to reach a compromised agreement on the next phase of this case (Phase 1), but have been unable to reach agreement for the proceedings thereafter (Phase 2 and trial).  There is disagreement on the timeline for Phase 1 due to the Parties' differing views as to the overall approach.  In this regard, Defendants believe it would be best to focus initially on Daubert and other challenges to expert testimony during Phase 1, and Plaintiffs are generally willing to accommodate a schedule that provides for briefing of those issues on the front end. Plaintiffs and Dubai Islamic Bank (DIB) also agree that DIB would be permitted to file a motion to address DIB's personal jurisdiction arguments that would follow a similar schedule to the challenges to experts during Phase 1, but each of the deadlines would follow two weeks after the deadlines proposed for briefing on the challenges to experts.

**I. PHASE 1**

**A.** *Daubert Challenges*

The Parties agree that this case should proceed next to the briefing of Daubert challenges. Given the number of experts (23) and the nature and extent of the anticipated challenges, motions

---

[1] For the purposes of this submission, "Defendants" means Dubai Islamic Bank, World Assembly of Muslim Youth and World Assembly of Muslim Youth International, International Islamic Relief Organization, Muslim World League, the four "Charity Officer Defendants" (Abdullah Omar Naseef, Abdullah bin Saleh al Obaid, Abdullah Mohsen al Turki, and Adnan Basha), and Yassin Kadi.



The Honorable Sarah Netburn
September 3, 2021
Page 2

should be consolidated to the greatest extent possible.  To that end, the Parties will consolidate motions where possible in order to present the issues for Court resolution in the most efficient manner possible.  In light of consolidation, the Parties will confer further about the manner in which the expert challenges may be consolidated and about page limit extensions and will set forth a proposal to the Court by Friday, September 17, 2021.

With respect to the briefing schedule for the challenges to experts, the Parties have met and conferred but remain at an impasse.

Defendants propose a longer schedule for the briefing of *Daubert* motions.  The expert admissibility issues are many and some raise complex issues for this Court's resolution.  Plaintiffs' six experts issued 10 reports totaling approximately 478 pages.  To consolidate briefing amongst all of the Defendants, the Defendants will need to confer about drafts and agree on an efficient approach to present the issues to this Court.  Thus, Defendants respectfully request the following schedule to consolidate issues and coordinate to avoid duplication and limit the number of motions:

- Motions and opening briefs due:  10 weeks from scheduling order;
- Responses due:  10 weeks from opening briefs; and
- Replies due:  5 weeks from response.

Recognizing that Defendants' experts issued 18 reports totaling approximately 931 pages, and that to consolidate briefing amongst all of the Plaintiffs, Plaintiffs' counsel will need to confer about drafts and agree on an efficient approach to present issues to the Court, Plaintiffs propose the following schedule for briefing challenges to experts:

- Motions and opening briefs due:  45 days from scheduling order;
- Responses due:  45 days from opening briefs; and
- Replies due:  30 days from response.

The Parties propose that the Court issue a scheduling order for the briefing of all challenges to experts in Phase 1.

### B. *DIB Personal Jurisdiction Challenge*

During Phase 1, DIB also proposes—and Plaintiffs agree—that Parties should present arguments regarding whether DIB should be dismissed for lack of personal jurisdiction based on the factual record of the case.  Briefing on DIB's personal jurisdiction arguments (whether styled as Rule 12(b)(2) motions, summary judgment, or otherwise) would follow a similar schedule to the challenges to experts, but each of the three deadlines would follow two weeks after the deadlines proposed by Defendants for briefing on the challenges to experts.



DIB believes that personal jurisdiction is an essential threshold issue that should be decided prior to its briefing on other dispositive issues.  DIB believes it has strong arguments that there is no basis for this Court to assert personal jurisdiction over it.  Plaintiffs plan to oppose DIB's efforts to seek dismissal based upon personal jurisdiction, but Plaintiffs have no objections to briefing and resolving this issue concurrently with expert challenges.

DIB made this proposal because it believes it furthers the interests of judicial economy while not adding delay to the proceedings.  In the event the Court finds that it lacks personal jurisdiction over DIB, the Parties would avoid the time and expense of briefing the summary judgment merits of Plaintiffs' federal and numerous state law claims.  If, however, this Court determines that it has personal jurisdiction over DIB, DIB would then brief summary judgment on the merits of Plaintiffs' claims at the same time the other Defendants do so.

## II. PLAINTIFFS' ADDITIONAL PROPOSALS

During the meet and confer process, Plaintiffs conveyed their baseline view that the most efficient course at this point would be for the Court to set a trial date and, working back from that trial date, should then schedule dispositive and *in limine* motions, including Daubert /expert challenges, premised on that trial date.  Nonetheless, plaintiffs agreed as a compromise to a structure under which briefing on Daubert and expert challenges, and DIB's personal jurisdiction motion, would proceed first.  However, Plaintiffs maintain that a reasonable control date should be set, providing for a trial to be completed before September 11, 2022, and that deadlines should be set for dispositive motions based on that trial date.  Consistent with this approach, plaintiffs propose the following schedule:

- Each parties' Daubert motions as to experts shall be filed in consolidated fashion by Oct 18.  Each sides' motion as to an expert shall be filed in a single consolidated brief per side.  The same consolidation shall apply to Opposition and Reply Briefs.

- All Opposition Briefs as to Daubert motions shall be filed by Dec 2.

- All Reply Briefs as to Daubert Motions shall be filed January 6, 2022.

- All dispositive motions shall be filed by Feb. 7, 2022.

- All Oppositions to Dispositive Motions shall be filed by April 8, 2022.

- All Replies to Dispositive Mtns shall be filed by May 9, 2022.

- The proposed trial date is set for June 6, 2022.
  The parties shall confer and submit pretrial submissions 14 days before trial.

Defendants' proposal for a phased approach, under which briefing on *Daubert* and expert challenges would continue for 25 weeks, and all further deadlines would be set only after those motions were decided by the Court, is not practical. It likely will take the Court some time to decide the expert motions following the lengthy briefing schedule, and under the defendants' proposal, briefing on dispositive motions would not even begin until that time. Plaintiffs expect defendants will seek significant time for those motions as well. As a result, it is reasonable to expect that pre-trial legal briefing and determinations could span as much as a year under defendants' proposal.

Plaintiffs respectfully submit that briefing on any dispositive motions can commence in parallel to the contemplated *Daubert* and expert motions. To the extent any defendant's motion for summary judgment hinges on the Court's determinations as to its expert challenges, the motion for summary judgment can incorporate the arguments from the expert challenge. Plaintiffs contend this is especially appropriate given their view that there would be no merit to any challenges defendants may file to plaintiffs' experts. Previous *Daubert* rulings in terrorism cases in this Circuit on some of Plaintiffs' experts have previously affirmed their qualifications and endorsed their methodologies. *See, e.g., United States v. Abu Ghayth*, No. S14 98 CRIM. 1023, 2014 WL 978629 (S.D.N.Y. Feb. 28, 2014) (finding Mr. Kohlmann qualified under Rule 702, noting he has been qualified to testify in 25 federal criminal trials, and recognizing the Second Circuit recognized that he satisfied Rule 702 based on his experience, training, education, and methodology); *Gill v. Arab Bank*, 11-CV-3706, at ECF. 186 (E.D.N.Y. 2012) ("Dr. Levitt's background and professional experience qualify as 'specialized knowledge' gained through 'experience, training, or education'").

Plaintiffs further understand that certain of the personal jurisdiction defendants intend to propose that plaintiffs be required to file statements of facts and evidence directed to them, to be served before they file their dispositive motions. While plaintiffs have agreed to such filings in a few instances in the past, those involved different procedural contexts and unique considerations related to the status of the MDL as a whole at the time of those disputes. In this distinct setting, plaintiffs believe the normal procedure should be followed – namely, that any statement of facts would be submitted in response to the defendants' motions. Plaintiffs are entitled to know the grounds for the defendants' motions in the first instance, so that they can identify the facts that render summary judgment or dismissal inappropriate.

Finally, Defendant Yassin Kadi recently requested that plaintiffs provide updated responses to his contention interrogatories, originally served in 2013. Judge Maas had earlier directed that contention interrogatories should be deferred until near the end of discovery. As expert depositions as to defendant Kadi are now complete, plaintiffs are amenable to revisiting the interrogatories.

The Honorable Sarah Netburn
September 3, 2021
Page 5

### III. DEFENDANTS' ADDITIONAL PROPOSALS

A. *Defendants' Proposal for Phase 2*

Defendants propose that the briefing of all remaining dispositive motions proceed in Phase 2, aided and narrowed by the Court's rulings in Phase 1.

*1. Timing of briefing on dispositive motions.* Defendants believe it is important to have a ruling on the Phase I motions *before* briefing on the dispositive motions begins because those rulings may significantly have an impact on and define the scope of and evidence considered in the dispositive motions. The PECs have stated the position that dispositive motions should begin immediately after the challenges to experts are fully briefed but before any rulings on those motions are decided. Defendants believe it would be helpful for the Court to understand the reasoning behind their proposal as to length of briefing on expert challenges and the timing of the briefing on dispositive motions.

As the Court is aware, this is no ordinary matter: the issues in this nearly two decades-long, multi-district litigation are complex, the parties numerous, and the record extensive. Indeed, on the issue of expert testimony, the parties have submitted a total of 28 expert reports totaling over 1,400 pages of testimony on a wide range of issues. Defendants anticipate filing challenges on several issues with respect to each of the Plaintiffs' experts, pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) and its progeny. As just an example of the issues to be addressed, Plaintiffs' experts seek to opine on issues as to which they either lack qualifications to render expert opinions, lack any identified factual basis on which to render expert opinions, or both. Further, Plaintiffs' experts either have no identifiable methodology or, though they claim to have a methodology, have not followed the methodology in forming their opinions. Significantly, Plaintiffs' claims against many Defendants are largely if not entirely dependent upon expert testimony.

Given the nature and extent of the issues the Defendants anticipate briefing, coupled with Plaintiffs' heavy reliance on expert testimony, the Court's rulings on the *Daubert* motions will define the universe of evidence to be presented. Proceeding to dispositive motions without first resolving issues concerning the nature and scope of admissible expert testimony would undoubtedly lead to the Court and the Parties expending significant time and effort addressing expert testimony that is inadmissible and irrelevant. *See, e.g.*, Manual for Complex Litigation, Fourth at § 23.352 (requiring challenges to expert testimony to be made shortly after the close of expert discovery "facilitates the disposition of summary judgment motions, to the extent those motions rely in whole or in part on expert evidence"). In cases less complex than this and involving far less evidence and fewer experts, courts have recognized *Daubert* motions can limit the expert testimony to be considered in ruling on a summary judgment motion and have therefore decided the *Daubert* challenges first. *See e.g. Houser v. Norfolk Southern Railway Co.*, 264 F.Supp.3d 470, 478 (W.D.N.Y. 2017) (an expert report that is not sufficiently reliable "cannot be considered

admissible evidence in opposition to Defendant's motion for summary judgment"); *see also Berk v. St. Vincent's Hosp. and Med. Ctr.*, 380 F.Supp.2d 334, 356 (S.D.N.Y. 2005) (excluding plaintiff's expert testimony as inadmissible under Rule 702 and determining defendant's summary judgment based on the 'admissible evidence'"); *Rodefer v. Hill's Pet Nutrition, Inc.*, No. IP 01-123-C H/K, 2003 WL 23096486, at *1 (S.D. Ind. Nov. 7, 2003) ("Where expert opinions are employed to oppose summary judgment, the proffered opinions must be admissible or usable at trial." (internal quotation marks omitted)).

In sum, the complexity of the issues in this case, the number of parties, the volume of the record, the number of experts, and the extent of the anticipated challenges to expert testimony all warrant determination of the expert challenges *before* briefing of the dispositive motions. Defendants do not anticipate a need for evidentiary hearings on the challenges to Plaintiffs' experts and, thus, under Defendants' proposal, *Daubert* challenges would be fully briefed within 6 months of a scheduling order from the Court.

**2. Proposed schedule for briefing on dispositive motions.** Thus, Defendants propose that Phase 2 would begin following rulings on the Phase 1 motions as follows: (i) with respect to Defendants, except DIB, briefing on dispositive motions (whether styled as a renewed motion to dismiss, summary judgment, or otherwise) would begin 12 weeks after the initial rulings on the challenges to experts; (ii) with respect to DIB, if its motions on personal jurisdiction are denied, its motions for summary judgment raising all other issues would be due 12 weeks after the later of the final ruling on its motions regarding personal jurisdiction or after obtaining initial rulings on the challenges to experts. Once opening motions are filed, oppositions would be due 12 weeks thereafter, and replies due 6 weeks following oppositions.

### B. Proposed Findings of Fact for Certain Personal Jurisdiction Defendants in Phase 1.

As the Court is aware, Mr. Kadi and Drs. Obaid, Basha, Turki, and Naseef ("Certain Personal Jurisdiction Defendants") were dismissed in 2011 for lack of personal jurisdiction but the District Court's decision was overturned by the Second Circuit in 2013. *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 678-79 (2d Cir. 2013). In its Opinion, which held that jurisdictional discovery was warranted as to these defendants, the Second Circuit concluded that "factual issues persist with respect to whether this support was 'expressly aimed' at the United States . . . [f]or example, it is not clear from plaintiffs' allegations (1) when the alleged support was given to al Qaeda, (2) what support was given, (3) whether the support was 'earmarked' for use in specific schemes or attacks not directed at the United States, or (4) specifically how these defendants were involved in the process of providing support to al Qaeda." *Id.* Now that discovery has ended, the Defendants should not be expected to guess at what evidence the Plaintiffs will claim is sufficient to answer the "when", "what", "whether" and "how" inquiries posed by the Second Circuit.



Instead, Plaintiffs should be required to submit proposed findings of fact as to their claims against these defendants.[2]

This type of post-jurisdictional discovery submission first was suggested by Your Honor at a hearing with respect to the Kingdom of Saudi Arabia on May 24, 2018:

> I think what Judge Daniels anticipates is a renewed motion to dismiss filed by the Kingdom. What I want to propose is that the plaintiffs … *set forth something like findings of fact in advance of the motion to dismiss*, setting forth the basis that the Plaintiffs Executive -- I don't want an amended complaint -- nobody wants an amended complaint -- but a statement on this particular issue, say, findings of fact à la Rule 56.1, although that's not what we are talking about here, so some version of that, so a statement *with supporting documents* that the Kingdom can review and rely upon in making its motion.

*See* Transcript, May 24, 2018, at 39 (ECF No. 4015) (emphasis added). The same reasoning applies equally, if not more forcefully, to these Certain Personal Jurisdiction Defendants who were remanded for jurisdictional discovery more than 8 years ago, and as to which there are 6 or more operative complaints that are more than 15 years old. Notably, counsel for Plaintiffs agreed with this post-discovery submission rather enthusiastically. *Id.* pp. 39-40.

Accordingly, Certain Personal Jurisdiction Defendants request that during the briefing as to challenges to experts or shortly thereafter, but not later than 4 weeks after the expert challenges are fully briefed, Plaintiffs be directed to submit proposed findings of fact as to their claims against these defendants, together with citations to supporting documents and all other evidence for each proposed finding.

**C.** *Setting a Trial Date is Premature*

Defendants believe that as a result of the expert challenges and the resolution of dispositive motions, there will not be a need for a trial in this case. If this Court determines that a trial is necessary, Defendants are committed to proceeding to trial expeditiously after the resolution of the outstanding pretrial issues.

Defendants, however, believe setting a trial date at this stage is premature for several reasons. First, as noted, a trial may not be necessary in this case. In any event, the Court and the

---

[2] Defendant Kadi notes that his counsel served interrogatories on Plaintiffs in 2013, and these interrogatories remain unanswered. Answers should be required within 30 days. *See, e.g.*, ECF 5388 (Dec. 20, 2019), docket entry order extending time until 30 days after the Wa'el Jelaidan deposition. That deposition was scheduled for August 26, 2021, though it did not occur then, and may never occur.



The Honorable Sarah Netburn
September 3, 2021
Page 8

Parties will have to plan for a trial in this case after this Court determines which parties, claims, and issues are left for trial following the resolution of dispositive motions.

<u>Second</u>, the Court will also need to weigh a number of interests (including judicial economy and fairness) to determine whether all defendants should proceed to trial together, or whether other defendants (such as Dallah Avco and Al Rajhi Bank) would potentially proceed to trial on another track.

<u>Third</u>, the timing of the trial may be further complicated as to Certain Personal Jurisdiction Defendants (Yassin Kadi and the Charity Officials) on remand from the Second Circuit, where either side may seek to take an immediate appeal from decisions of personal jurisdiction.

<u>Fourth</u>, we note that Parties are still awaiting a final ruling on class certification in the *O'Neill* putative class action. The issue was fully briefed for Judge Daniels on April 21, 2021. Following the Court's ruling, it is not certain whether Plaintiffs (or Defendants) plan to appeal or whether Plaintiffs will take some other course of action (such as seeking to amend or the filing of new complaints) that may complicate this proceeding. As a result, the timing of a ruling on class certification and the issues that follow it could have an impact on the timing of a trial in this case.

<u>Finally</u>, and most importantly, it does not make sense to try to force the Court into quick decisions about the merits of dispositive motions. This case has been pending for almost two decades. Defendants want an expeditious end. But both Your Honor and Judge Daniels are likely to need some time—an amount that is not predictable at this stage—to review and issue rulings on the many forthcoming dispositive motions dealing with the federal and state law claims in this complex MDL litigation.

As a result, the Court should determine a time for trial only after it resolves those dispositive motions and considers the other issues raised above.

Respectfully submitted,

/s/ *Aisha E. R. Bembry*
Aisha E. R. Bembry (admitted pro hac vice)