WHITE & CASE

September 13, 2021

VIA ECF

The Honorable George B. Daniels
United States District Judge
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
T +1 202 626 3600

whitecase.com

*In re Terrorist Attacks on September 11, 2001*, **Case No. 1:03-md-01570-GBD-SN (S.D.N.Y.): Notice of Supplemental Authority (*Honickman v. BLOM Bank SAL*)**

Dear Judge Daniels:

Al Rajhi Bank writes to advise the Court of the Second Circuit's most recent decision under the Anti-Terrorism Act, *Honickman v. BLOM Bank SAL*, No. 20-575, 2021 U.S. App. LEXIS 22480 (2d Cir. Jul. 29, 2021) (attached), as it pertains to the Bank's Objections to the Magistrate Judge's Order dated March 26, 2021.

In its Objections, the Bank showed how this Court's and the Second Circuit's prior decisions in this multidistrict litigation, as well as broader Second Circuit precedent, foreordain the dismissal of all of Plaintiffs' claims against the Bank.  *See* Al Rajhi Bank's Objs. to the Magistrate Judge's Op. & Order ("Objections"), ECF No. 6724; Reply Mem. in Supp. of Al Rajhi Bank's Objs. to the Magistrate Judge's Op. & Order, ECF No. 6807.  The Second Circuit's decision in *Honickman* confirms that dismissal of Plaintiffs' claims against Al Rajhi Bank is foreordained, and that the Court should grant the Bank's Rule 12(b)(6) motion to dismiss rather than proceeding through protracted and costly jurisdictional discovery.  *See* Al Rajhi Bank's Opp'n to Pls.' Mot. to Compel 20-23 (outlining the multi-million-dollar burden Plaintiffs' extraordinarily wide-ranging discovery requests would impose on the Bank).

The allegations in *Honickman* are remarkably similar to the allegations against Al Rajhi Bank here, and the Second Circuit held those allegations to be insufficient for the same reasons Al Rajhi Bank has argued Plaintiffs' allegations are insufficient here.  Indeed, *Honickman* is in line with this Court's prior dismissal of Al Rajhi Bank.  *See In re Terrorist Attacks on Sept. 11, 2001* ("*Terrorist Attacks I*"), 349 F. Supp. 2d 765, 798 & n.28, 800, 832-33 (S.D.N.Y. 2005) (dismissing aiding-and-abetting claims against Al Rajhi Bank for failure to state a claim under the *Halberstam* standard because "concerted action liability requires general knowledge of the primary actor's conduct," and "Plaintiffs do not offer facts to support their conclusions that Al Rajhi Bank had to know that the Defendant charities . . . were supporting terrorism" (citing *Halberstam v. Welch*, 705 F.2d 472, 477 , 486-88 (D.C. Cir. 1983))); *see also In re Terrorist Attacks on Sept. 11, 2001*, 295

The Honorable George B. Daniels
September 13, 2021

F. Supp. 3d 416, 427-28 (S.D.N.Y. 2018) (concluding that the allegations in the Amended Complaint are not "new or materially different" from those allegations "previously considered by this Court and the Second Circuit").

In *Honickman*, the Second Circuit affirmed the dismissal of an aiding-and-abetting claim against a Lebanese bank under the ATA for failure to state a claim. The plaintiffs in *Honickman* sued BLOM Bank under the ATA, as amended by JASTA, for "allegedly aiding and abetting Hamas's attacks" "by providing financial services to three customers affiliated with Hamas." 2021 U.S. App. LEXIS 22480, at *3 (subsequently referring to the customers as "the Three Customers"). In affirming dismissal, the Second Circuit focused on the second element required to establish aiding-and-abetting liability under *Halberstam*, namely, the element of "general awareness":

> For the second element, general awareness, the complaint must plausibly allege: (1) as a threshold requirement, that BLOM Bank was aware of the Three Customers' connections with Hamas before the relevant attacks; and (2) the Three Customers were so closely intertwined with Hamas's violent terrorist activities that one can reasonably infer BLOM Bank was generally aware of its role in unlawful activities from which the attacks were foreseeable while it was providing financial services to the Three Customers.

*Id.* (citing *Kaplan v. Lebanese Canadian Bank*, SAL, 999 F.3d 842, 860 (2d Cir. 2021)).

Applying the well-trod pleading standards of *Iqbal*, the Second Circuit concluded that the first ("threshold") subpart of the general-awareness element was not satisfied: "Plaintiffs' aiding-and-abetting claim fails because the allegations do not support an inference that BLOM Bank was aware of the Three Customers' ties with Hamas prior to the relevant attacks, thereby undermining the second element of general awareness." *Id.* at *27-28. (Given this conclusion, the Second Circuit found it unnecessary to address the second subpart of the general-awareness element or *Halberstam*'s third element, substantial assistance.)

The Second Circuit further concluded that "the public sources cited in the complaint do not plausibly support an inference that BLOM Bank had the requisite general awareness *at the time that it provided banking services to the Three Customers*." *Id.* at *29 (emphasis added). The Second Circuit explained that press coverage allegedly linking the customers to Hamas was dated "more than a year after the relevant attack" or was "undated" (*id.* at *28-29); and the complaint did not allege that an individual who publicly praised martyrdom and criticized the U.S. designation of Hamas was publicly known at the time as chairman of a BLOM Bank customer. *Id.* at *29.

The Second Circuit distinguished the insufficient allegations in *Honickman* from those deemed sufficient in *Kaplan*, concluding that the "limited public sources Plaintiffs cite" in *Honickman* "pale in comparison to the detailed, numerous sources that sufficed in *Kaplan*," which included multiple public statements by Hizbollah itself confirming that the defendant bank's customers were "integral parts of Hizbollah." *Id.* (citing *Kaplan*, 999 F.3d at 864). Specifically:

> The *Kaplan* complaint alleged Hizbollah made public statements identifying the defendant-bank's customers as "integral parts of Hizbollah" prior to the relevant attacks which were "specific as to the status of the speaker," "the circumstances in which the statements were made," and "the other specific media in which they were made," including Hizbollah's own websites.

*Id.* (quoting *Kaplan*, 999 F.3d at 864).

The allegations against Al Rajhi Bank here are remarkably similar to, but even more scant than, the allegations that the Second Circuit in *Honickman* held were insufficient to plausibly allege that BLOM Bank was aware that its three customers were affiliated with Hamas. Indeed, consistent with *Honickman* and in contrast to *Kaplan*, the Amended Complaint is devoid of any allegation of any public statement by al Qaeda prior to the 9/11 Attacks (or at any other time) identifying any of Al Rajhi Bank's accountholders (including the Bank's charity accountholders) as integral parts of al Qaeda. And the Amended Complaint does not contain any allegations of press reports published before the attacks that would connect Al Rajhi Bank's alleged accountholders with al Qaeda.

The Second Circuit in *Honickman* also pointed out that the United States designated two BLOM Bank customers "only *after* the final attack at issue" and described their humanitarian purposes as a "cover." *Id.* at *29-30 (emphasis added); *see also id.* at *30 (observing that charity "was not indicted until 2004, *after* the relevant period" (emphasis added)). The Second Circuit concluded: "That organizations like the Three Customers maintained a 'cover' in public undermines the plausibility of Plaintiffs' theory that BLOM Bank understood these organizations' true nature and activities from the public record at the time." *Id.* at *29.

Similar to *Honickman*, the Amended Complaint fails to allege that before September 11, 2001, *any* of Al Rajhi Bank's alleged accountholders were designated by any government authority as connected to al Qaeda so as to potentially put the Bank (and others) on notice of the risk of dealing with these accountholders. *See* Opp'n Br. 32-34, ECF No. 153 (No. 18-cv-1201) (discussing self-contradictory allegations in the Amended Complaint). Instead, as with the complaint in *Honickman*, the theme of the Amended Complaint is that the Bank's alleged charity accountholders were terrorist "fronts." *See, e.g.*, Am. Compl. ¶¶ 118-19, 124, 126, 158, 167, 173-74, 180, 185, 204, 210, 330, 340, 356.

In particular, the Amended Complaint alleges that Al Rajhi Bank's charity accountholders held themselves out as bona fide charitable organizations that carried out "legitimate humanitarian or social programs," known to include providing meals, paying for potable water projects, setting up and equipping medical facilities, and operating orphanages; and that funds purportedly funneled to al Qaeda by charities allegedly were "merged with and hidden among funds used for other legitimate humanitarian or social programs." Opp'n Br. 33, ECF No. 153 (No. 18-cv-1201) (citing Am. Compl. ¶ 119 and 9/11 Commission Staff Monograph on Terrorist Financing 115 (2004) (referenced in the Amended Complaint)); *see also* Br. for Plaintiffs-Appellants 56 n.7, ECF No. 127 (No. 18-cv-1201) ("[T]he 'charitable organizations' receiving ARB funding and services are alleged to be operational components of al-Qaeda, undertaking ostensibly legitimate "front"

The Honorable George B. Daniels
September 13, 2021

activities *as a cover* for soliciting, receiving, and moving money, services, and other material support to al-Qaeda terrorists for use in their operations." (emphasis added)).

Thus, as in *Honickman*, allegations that the Bank's charity accountholders allegedly operated as fronts and covers that concealed their nefarious activities behind humanitarian purposes "undermine[] the plausibility of Plaintiffs' theory that [Al Rajhi Bank] understood these organizations' true nature and activities from the public record at the time." *Honickman*, 2021 U.S. App. LEXIS 22480, at *29.

Further, although the *Honickman* complaint references various funds transfers involving "over $2 million," "an additional $250,000," "at least $50,000," and "over $500,000," and one funds transfer from a Specially Designated Global Terrorist to a BLOM Bank customer, the Second Circuit concluded that the allegations about BLOM Bank's financial services were insufficiently detailed. *See id*. at *8-9 (stating that the *Honickman* complaint "does not provide dates or further information regarding the financial services BLOM Bank provided" to one customer, and does not "note the transactions, if any, BLOM Bank processed" for another). The Amended Complaint here does not allege even a single transfer on behalf of an alleged charity front for al Qaeda, much less provide details about the amounts or dates of any such transfers. The Amended Complaint merely alleges three donations "for Bosnia" to the Saudi-government-sponsored charity Saudi High Commission in 1994-1996, years before the 9/11 Attacks and also before the designation of al Qaeda by the United States. Am. Compl. ¶ 186.

Moreover, while Plaintiffs here, like the plaintiffs in *Honickman*, rely extensively on *Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685 (7th Cir. 2008) (*see* Pls.' Opp'n to Al Rajhi Bank's Mot. for the Court to Decide the Bank's Pending Rule 12(b)(6) Mot. to Dismiss, ECF No. 5892 (citing *Boim* "passim")), the Second Circuit in *Honickman* held that "*Boim* is inapposite" because it was "decided before Congress assigned *Halberstam* as the appropriate framework for JASTA aiding-and-abetting liability claims and therefore lacks the requisite analysis." 2021 U.S. App. LEXIS 22480, at *21-24 & n.14. The Second Circuit further concluded that "any persuasive value [*Boim*] might have is insufficient to overcome the binding effects of *Linde* and *Kaplan*." *Id.*

The Second Circuit also distinguished *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), "a criminal material support case under § 2339B" (*Honickman*, 2021 U.S. App. LEXIS 22480, at *22) on which Plaintiffs also rely (*see* Pls.' Opp'n to Mot. to Dismiss 6 & 47, ECF No. 3835). The Second Circuit held that "*Linde* determined that the facts in *Holder* — adequate for criminal material support — fall short for the general awareness element of JASTA aiding and abetting." *Honickman*, 2021 U.S. App. LEXIS 22480, at *22 (citing *Linde v. Arab Bank, PLC*, 822 F.3d 314, 329-30 (2d Cir. 2018)). Plaintiffs cannot "displace" the aiding-and-abetting standard "by making 'knowingly providing material support to an FTO, without more' sufficient 'as a matter of law' for the general awareness element." *Id.* at *22-23 (quoting *Kaplan*, 999 F.3d at 860).

All told, *Honickman* establishes that the Amended Complaint here fails to satisfy the "threshold" aspect of *Halberstam*'s general-awareness element. This Court need not even reach the other parts of *Halberstam*'s aiding-and-abetting standard but as Al Rajhi Bank has established, Plaintiffs have

**WHITE & CASE**

The Honorable George B. Daniels
September 13, 2021

not satisfied those other parts either. *See* Mem. of Law in Supp. of Al Rajhi Bank's Mot. for the Court to Decide the Bank's Pending Rule 12(b)(6) Mot. to Dismiss 8-11 ("Mem."), ECF No. 5385; Reply Mem. in Supp. of Al Rajhi Bank's Mot. for the Court to Decide the Bank's Pending Rule 12(b)(6) Mot. to Dismiss 14-17 ("Reply"), ECF No. 6048; Objections 8-11.

\*     \*     \*

The Amended Complaint's factual allegations against Al Rajhi Bank, like those against BLOM Bank in *Honickman*, do not support a plausible inference of Al Rajhi Bank's "general awareness" sufficient to state an aiding-and-abetting claim against the Bank under the ATA. *Honickman* controls here, and thus foreordains this Court's dismissal of the Amended Complaint's aiding-and-abetting claim against Al Rajhi Bank for failure to state a claim. As dismissal under Rule 12(b)(6) of all of Plaintiffs' other claims against Al Rajhi Bank is also foreordained for reasons already addressed by the Bank (*see* Mem. 3-15; Reply 11-19; Objections 3-14), the Amended Complaint against the Bank should be dismissed in its entirety with prejudice.

Respectfully submitted,

/s/ *Christopher M. Curran*

Christopher M. Curran
Nicole Erb
Matthew S. Leddicotte
Reuben A. Sequeira

*Counsel for Al Rajhi Bank*

Attachment

cc:   Counsel of Record (via ECF)