# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

September 17, 2021

The Honorable George B. Daniels
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

      RE:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Daniels:

Plaintiffs write in response to the letter of September 13, 2021 submitted by Al Rajhi Bank ("ARB") (ECF No. 7111), claiming that *Honickman v. BLOM Bank SAL*, No. 20-575, 2021 U.S. App. LEXIS 22480 (2d Cir. July 29, 2021), supports its Objection to the Magistrate Judge's *Order* of March 26, 2021 (ECF No. 6681). That *Order* concluded that the Second Circuit's mandate directing the undertaking of primary jurisdiction discovery should be followed and foreclosed consideration of ARB's Rule 12(b)(6) motion at this stage of the litigation.

In fact, *Honickman* and the Second Circuit decision it applied, *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021), set forth a new framework for analyzing Anti-Terrorism Act ("ATA") claims that, as explained below, strongly confirm that Plaintiffs have adequately alleged an ATA aiding-and-abetting claim. Indeed, both cases also support undertaking primary jurisdiction discovery of an appropriately comprehensive scope to ensure the production of all evidence that these decisions deem relevant.

Initially, ARB does not claim that *Honickman* has any bearing on several of the principal reasons their Objection is meritless. The Second Circuit's mandate must be followed. *See* Plaintiffs' Mem. in Opp. to ARB's Motion for the Court to Decide the Bank's Pending Rule 12(b)(6) Motion ("Pl. Opp.") (ECF No. 5892), at 5-8. That court's underlying determination that Plaintiffs' allegations establish a *prima facie* case of intent for jurisdictional purposes (as ARB

Honorable George B. Daniels
September 17, 2021
Page 2

––––––––––––––––––––

itself conceded), establishes *a fortiori* that Plaintiffs also have satisfied the lower standard of "general awareness" of supporting terrorism. *See id*. at 8-11. The Second Circuit has already rejected ARB's identical invitation to address the merits of Plaintiffs' claims rather than resolve the jurisdictional issue. *See id.* at 6-7. And, even in the absence of all these factors and even if a concurring opinion controlled the issue, ARB would need to show not only that success on the merits be "foreordained," but that addressing the merits would address no additional issues, which it cannot show. *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 347 (2d Cir. 2018) (Calebresi, J., concurring).

As to the claims in ARB's letter regarding the ATA aiding-and-abetting element of "general awareness," *Honickman* and *Kaplan* strongly support a finding that Plaintiffs' allegations are entirely adequate. A key command of both cases is that allegations of support for terrorism "must be evaluated in the context of the enterprise they aided," *Kaplan*, 999 F.3d at 865 (quoting *Halberstam*, 705 F.2d at 488), and evaluated holistically. For such claims, the district court is required "to consider all of the complaint's allegations, rather than considering each in isolation, and to accept as true all permissible inferences that could be drawn from the complaint as a whole." *Id.*; *id.* at 854 ("[t]he proper question is whether there is a permissible relevant inference from '*all* of the facts alleged, taken collectively,' not whether an inference is permissible based on 'any individual allegation, scrutinized in isolation.'") (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 323 (2007)) (emphasis in *Tellabs*). ARB disregards this principle in several respects: by ignoring Plaintiffs' principal allegations; by ignoring the context of the alleged dealings among ARB, its controlling officers, and al Qaeda; and by addressing only a few "individual allegation[s], scrutinized in isolation." *Id.* at 854 (internal quotation omitted); *see* ABR Let. at 3-5. ABR's letter invites this Court to commit precisely the error that the Second Circuit identified and addressed in *Kaplan*.

The full scope of Plaintiffs' allegations demonstrates that the allegations readily meet the newly defined standard regarding general awareness. *Kaplan* established, and *Honickman* confirmed, that this element required no *mens rea* or other intent requirement beyond showing "that the defendant ha[d] been 'aware' that it was playing a role in terrorism" when it provided support to the foreign terrorist organization (FTO). *Kaplan* at 859-60, 863-64; *see Honickman*, 2021 U.S. App. LEXIS 22480, at *20 ("'a defendant may be liable for aiding and abetting an act of terrorism if it was generally aware of its role in an 'overall illegal activity' from which an 'act of international terrorism' was a foreseeable risk.'") (quoting *Kaplan*).

Addressing this standard requires considering the broad context of both the types of alleged support and the full range of information allegedly available to the bank and its controlling officers that may support a reasonable inference that they were "generally aware" of their role in supporting al Qaeda's activities. That support included ARB's provision of its own funds to al Qaeda affiliates through a donation process controlled by its officers, including Suleiman al Rajhi and Saleh al Hussayen. Pl. Opp. at 15, 7-28; First Amended Complaint ("FAC") at ¶¶ 159-60, 173-74, 183. The former had extensive, intimate knowledge of the links between the fund recipients and al Qaeda. Pl. Opp. at 16-18, 20-22; FAC ¶¶ 159-61, 174, 180-81. The latter was singled out by the Second Circuit as subject to personal jurisdictional discovery for his alleged

links to al Qaeda. *See O'Neill v. Asat Trust Reg.*, 714 F.3d 659, 679 (2d Cir. 2013); Pl. Opp. at 18-19, 22.

The bank's support also took the form of establishing and perpetuating processes that made the bank's services readily available to al Qaeda operatives, and the key officers that controlled all significant details of the bank's operations (including its money laundering and transfer safeguards) are alleged to have very direct personal ties to and knowledge of particular al Qaeda operatives and the organizational recipients intertwined with al Qaeda members and used to transfer al Qaeda's funds and otherwise support their terrorist activities. Pl. Opp. 19-22, 25; FAC ¶¶ 136, 138-39, 155-92. And, the bank was alleged to have gone out of its way, though very unusual measures, to support al Qaeda's money transport and fundraising, further supporting the inference of general awareness of the bank's role in supporting al Qaeda's terrorism. Pl. Opp. at 12, 15-16; FAC ¶¶ 160-61, 165-66. The U.S. government warnings to ARB in 1999, and its review and later retrospective conclusions of the nature of ARB's operational defects and its support for al Qaeda, all also support that inference. Pl. Opp. at 15-16; FAC ¶¶ 156-66, 168-72, 191.

This comprehensive, multi-faceted pattern of alleged support to al Qaeda – directed and controlled by officials with intimate, personal knowledge of the nature of the recipients of that support and their close ties to al Qaeda – is far more extensive and probative than the allegations at issue in *Kaplan*, much less *Honickman*. ARB's claim that "[t]he allegations against Al Rajhi Bank here are remarkably similar to … the allegations" at issue in *Honickman*, ARB Let. at 3, would invite the Court to view Plaintiffs' allegations as simply whether the bank had a few discrete transactions with parties its officers hardly knew. However, in light of the full range of allegations noted above, that is not a plausible or fair reading of the complaint, nor would it reflect the holistic consideration of all the allegations together that *Kaplan* and *Honickman* require. The different and more extensive nature of the support, the different and more extensive nature of the officers' knowledge of the recipients of the support, and the confirmation of that context provided by U.S. officials all make the allegations nothing like those at issue in *Honickman*, much less "more scant" than those allegations. ARB Let. at 3.

The Second Circuit's reference in *Honickman* to ARB's intimate ties to al Qaeda, to distinguish the types of contacts found insufficient in that case, confirms this point. In discussing the relevance of a defendant bank's relationship with the FTO, the court compared BLOM Bank's relation to Hamas with the banking relationships at issue in *Seigel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217 (2d Cir. 2019). Much like BLOM Bank, the defendant HSBC was "several steps removed" from the FTO, and only "had a commercial relationship with *another bank* that was linked to *various terrorist organizations* including the FTO that caused the plaintiffs' injuries." *See Honickman*, 2021 U.S. App. LEXIS 22480, at *26 (emphasis in original). That other, terrorist-linked bank at issue in *Seigel* was, of course, Al Rajhi Bank. This discussion arose in the course of the court's consideration of the "substantial assistance" element of an ATA aiding-and-abetting claim, regarding which *Honickman* and *Kaplan* also set out principles contrary to ARB's arguments. *Compare* ARB Mem. at 9-10 (Plaintiffs must show provision of support used in particular attack, and that support was "substantial factor" causing the attacks),

Honorable George B. Daniels
September 17, 2021
Page 4

_____

with *Honickman*, 2021 U.S. App. LEXIS 22480, at *20, *25; *id*. at *23 ("knowing and substantial assistance to the actual injury-causing act—here, Hamas's attacks—is unnecessary"); *Kaplan*, 999 F.3d at 855-56 (indirect support provided to FTO suffices, where terrorist attacks are a foreseeable consequence); *id*. at 862 (explaining that in *Siegel, supra*, the relevant inquiry was whether financial support was provided "to [al Qaeda] or to any other terrorist organization.").

ARB's particular points are no more faithful to the complaint or to the framework established in *Honickman* and *Kaplan*. ARB points to the Second Circuit's conclusions that BLOM Bank officials were found not to be on notice of the al Qaeda links of the three particular recipients of traditional banking service, given the post-attack timing of official designation, how the recipients operated under "cover," and the absence of other information available to the bank. ARB Let. 3. In contrast, the Plaintiffs extensively alleged the many ways in which ARB and its controlling officials were, before the attacks, extremely familiar with the nature of the recipients of the bank's support, including through their own personal dealings with those entities and with al Qaeda and its operatives, as well as official notice provided to the bank in 1999. U.S. government analysis confirmed and underscored the strength of these allegations, as do statements of a former al Qaeda operative addressing ARB's active role in closely assisting al Qaeda. Pl. Opp. at 12, 15-16, 20-21; FAC ¶¶ 156-67, 191. In contrast, any absence of other, particular allegations relevant to the ordinary banking operations at issue in *Kaplan* and *Honickman* is irrelevant to the strengths of these allegations and the reasonable inferences they support (especially when considered together, as a whole). When U.S. designations as FTOs occurred, whether the "charities" also provided humanitarian services, and the absence of public statements by al Qaeda declaring its affiliation with the entities simply mean that this is a different case with different alleged facts establishing "general awareness" – not that the allegations are insufficient.

ARB points to *Honickman*'s rejection of a particular argument for which the plaintiffs in that case had relied on *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), and *Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685 (7th Cir. 2008). *See* ARB Let. at 4. However, this aspect of *Honickman* has no bearing on Plaintiffs' different arguments here or the strength of its allegations. *Honickman* rejected the argument that aiding-and-abetting could be established by any alleged provision of support to an FTO, even if well-intentioned or clearly unconnected to terrorism (plaintiffs' "fungibility" theory). It distinguished *Holder* and *Boim* with regard to that argument. *Honickman*, 2021 U.S. App. LEXIS 22480, at *21-23, n.14. Here, Plaintiffs' allegations and theory of liability are quite different. The allegations' sufficiency does not rely on ARB's liability springing from the bank's support earmarked for only truly charitable activities. Instead, the allegations establish that ARB and its officers were instead, in providing the support, "'generally aware of [ARB's] role in an 'overall illegal activity' from which an 'act of international terrorism' was a foreseeable risk.'" *Honickman*, 2021 U.S. App. LEXIS 22480, at *20 (quoting *Kaplan*). Indeed, Plaintiffs' opposition does not cite *Holder* at all, and it does not cite *Boim* in its section discussing "general awareness," *see* Pl. Opp. at 14-18, the context *Honickman* addressed "fungibility" and distinguished *Holder* and *Boim*.

Honorable George B. Daniels
September 17, 2021
Page 5

_____

On this and other points, however, *Honickman* is quite helpful to Plaintiffs' arguments related to personal jurisdiction, including the scope of personal jurisdiction discovery. *Honickman*'s and *Kaplan*'s treatment of *Holder* and *Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018), left open the possibility that the "general awareness" element would not be satisfied when a party provides support to an FTO intending that only legitimate activities would be supported, as where the support is "earmarked" to foster only non-terrorist activities. That "earmarking" principle accords with and explains the Second Circuit's mandate in this case to use discovery to determine whether ARB's support for the various al Qaeda-affiliated entities may have been "earmarked" for exclusively proper purposes. *See Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank*, 779 F. App'x 66, 69 (2d Cir. 2019); *see also O'Neill*, 714 F.3d at 678-79 (jurisdictional discovery to determine in part whether support "earmarked" for non-terroristic purposes). ARB will find it nearly impossible to establish that its extensive support provided to al Qaeda-affiliated entities met this standard. Separately, the Second Circuit's insistence in *Honickman* and *Kaplan* that courts undertake a holistic review to determine the defendant's nature and intent related to alleged support for terrorism is a generally applicable principle and especially appropriate in considerations of support for terrorism. *See, e.g., Kaplan*, 999 F.3d at 854, 865. That is, the principle applies equally to such issues as they bear on the jurisdictional determination. As a result, jurisdictional discovery in this case must encompass information that is relevant and necessary to the holistic determination the Court will be required to make.

\* \* \*

For all these reasons, *Honickman* and *Kaplan* only strengthen the conclusion that Plaintiffs adequately alleged ARB's general awareness of its role in supporting al Qaeda's unlawful activities. Those cases also frame the jurisdictional inquiry and the scope of discovery in ways that support Plaintiffs' arguments regarding those issues.

    Respectfully submitted,

    COZEN O'CONNOR

    By:    Sean P. Carter

cc:    All MDL Counsel of Record (via ECF)

LEGAL\54285409\1