UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

In re:

       TERRORIST ATTACKS ON
       SEPTEMBER 11, 2001

----------------------------------------------------------------X

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____            │
│ DATE FILED:___9/23/2021___       │
└─────────────────────────────────┘
```

03-MD-1570 (GBD)(SN)

<u>OPINION & ORDER</u>

SARAH NETBURN, United States Magistrate Judge:

       Oath Inc., which offers the Yahoo! News Service ("Yahoo! News"), moves to intervene to have the Court reconsider its order investigating the breach of its protective orders. ECF No. 7082 (the "Investigative Order"). It asks the Court to (1) permit it to intervene, (2) modify the Investigative Order, and (3) if any part of its motion is denied, stay the Investigative Order pending review. This motion is DENIED in its entirety.

BACKGROUND

       Yahoo! News's motion follows this Court's investigation into the breach of the two protective orders governing discovery in this multidistrict litigation. On June 17 and 18, 2021, the Plaintiffs' Executive Committees ("PECs") deposed Musaed Al Jarrah. ECF No. 6891 at 1. The deposition covered material subject to the general protective order governing discovery, ECF No. 1900 (the "General Protective Order"), and possibly the protective order governing material produced by the FBI. ECF No. 4255 (the "FBI Protective Order," collectively the "Protective Orders"). Al Jarrah was under no obligation to testify but did so voluntarily in part because of the protections afforded by the Protective Orders. ECF No. 6981 at 1.

       The General Protective Order permits parties to designate transcripts as confidential. ECF No. 1900 at § II.G.1. Confidential information can be used only in this multidistrict litigation, <u>id.</u> at § H.1, and disclosed only to a limited array of people, such as the parties' counsel and their

experts. Id. at § H.3.a–i. The parties' deposition protocol also requires that transcripts be treated as confidential under the General Protective Order for 90 days after the deposition. ECF No. 6002-1 at ¶ 63, adopted by ECF No. 6204. The Al Jarrah transcript was so designated. ECF No. 7097 at 8.

The FBI Protective Order similarly prohibits the unauthorized disclosure of certain information produced by the FBI. ECF No. 4255 at ¶ 9. It requires that any deposition transcript containing information that would be prohibited from disclosure be treated as confidential for 30 days from the FBI's receipt of the transcript. Id. at ¶ 10.

Despite these orders, on July 15, 2021, 28 days after the close of the deposition, reporter Michael Isikoff of Yahoo! News published an article reporting that "[a] copy of the deposition [transcript] — with some redactions for law-enforcement sensitive material — was obtained exclusively by Yahoo News." ECF No. 6981-1 at 3. The article includes verbatim quotes from the deposition, id., and appears to confirm that Isikoff received a copy of the transcript.

In a motion filed on July 23, 2021, Saudi Arabia asserted that the General Protective Order had been breached. ECF No. 6981 at 1. The PECs effectively agreed that the General Protective Order had been breached, ECF No. 6988 at 1, though they disputed that the FBI Protective Order had also been breached. Id. at 1 n.1. The FBI, for its part, stated that the Al Jarrah transcript was subject to the FBI Protective Order, ECF No. 6999 at 2, which would mean that the provision requiring a 30-day confidentiality hold for FBI review was breached as well. At minimum, this Court has found, and all parties agree, that "[t]here has plainly been a breach of . . . the [General] Protective Order." ECF No. 7011 at 1.

The Court's investigation of this breach prompted Yahoo! News's motion. In addition to alerting the Court to the breach, Saudi Arabia proposed that the Court investigate by ordering

declarations from every individual with access to the Al Jarrah transcripts. ECF No. 6981 at 4. Leading by example, it submitted 27 declarations from its attorneys and support staff. These declarations stated, in substance, that the declarant did not disclose the Al Jarrah transcript, did not know anyone at the firm who had, and that they either had no communications with Isikoff since June 1, 2021, or had been contacted by Isikoff but had not provided him with any information. See generally ECF No. 6981-4. The PECs opposed Saudi Arabia's motion and suggested instead that the parties meet and confer to determine a process to investigate the breach. ECF No. 6988 at 1.

Despite this, firms began voluntarily submitting declarations distancing themselves from the breach. Cozen O'Connor and MotleyRice, both of which are members of the PECs, filed the first set of declarations. ECF Nos. 6991, 6992. Cozen O'Connor submitted five declarations, including two from senior attorneys, who attested that they had neither shared the transcript with Isikoff nor communicated with him at least since June 2021. ECF No. 6991 at 3–10. Two paralegals attested that they had not shared the transcript. Id. at 14–17. A fifth declaration was filed by the firm's "Director of User Support" who detailed the investigative steps the firm had taken to ensure that it was not the source of the breach. Id. at 11–13. Based on that investigation, the declaration affirmed that no one at the firm had corresponded with Isikoff between June 17 and July 29, 2021. Id. at 13.

MotleyRice submitted seven declarations showing similar thoroughness. It also submitted declarations from lawyers, ECF No. 6992 at 3–17, and legal support staff, id. at 18–21, all stating that firm staff had neither communicated with Isikoff nor knew anyone from the firm who had. MotleyRice also included a declaration from a "Compliance and Security Specialist" who affirmed that no emails had been sent to known email addresses for Isikoff. Id. at 23.

At this point, the inquiry turned to another member of the PECs: Kreindler & Kreindler. Several circumstantial factors suggested that Kreindler & Kreindler might be responsible for the leak or at least have insight into who is. In a July 5, 2021, communication to Saudi Arabia's lawyer Michael Kellogg, Isikoff indicated that James Kreindler had discussed the progress of the depositions with him. ECF No. 6981-4 at 10. Mr. Kellogg attached to his declaration an email from Isikoff in which Isikoff asked for a comment "in response to what Jim Kreindler had to say about where things stand." Mr. Kreindler has also discussed this case on Isikoff's *ConspiracyLand* podcast. ECF No. 6990 at 2. Additionally, the Court has previously found Mr. Kreindler's conduct discussing discovery materials to be "a breach of the confidentiality requirement." ECF No. 3619 at 9:6–7. While the Court has repeatedly reaffirmed that parties may speak to the press within the bounds of the Protective Orders, see, e.g., id. at 9:10-11, ECF No. 7011 at 2, the firm's connections to Isikoff and prior brushes with the limits of the General Protective Order suggested that Kreindler & Kreindler might be the source of the leak.

Accordingly, the Court ordered Kreindler & Kreindler to provide declarations stating whether anyone at the firm or acting under its direction had shared the Al Jarrah deposition transcript with Isikoff. ECF No. 7011. While the Court did not specify the number of declarations to be provided, it identified four attorneys that were expected to file submissions. Id. at 2.

Shortly after the Court entered this order, another PECs firm, AndersonKill P.C., voluntarily filed five declarations. ECF No. 7013. Like Cozen O'Connor and MotleyRice, AndersonKill included both attorney, ECF Nos. 7013-1, 7013-2, 7013-3, and support staff declarations, ECF No. 7013-4, stating that no one at the firm shared the Al Jarrah deposition with Isikoff or otherwise communicated with him. AndersonKill also included a declaration from the

director of their IT department saying that there were no emails on the AndersonKill system between Isikoff and any of the other four AndersonKill declarants. ECF No. 7013-5 at 3.

On August 16, 2021, Kreindler & Kreindler responded to the Court's order by submitting only four attorney declarations. ECF No. 7016. Kreindler & Kreindler's four declarations were less comprehensive and vaguer than the others that the Court had received. All four stated that neither the declarant nor anyone in the firm had shared the transcript "with anyone unauthorized to see it." None of the declarants denied communication with Isikoff during the relevant period. The firm also declined to produce declarations from support staff who had access to the transcript. And while one attorney offered that the firm's IT director performed a review to determine that no one had shared the deposition transcript, ECF No. 7016 at 3, the firm did not include a declaration from that director.

Accordingly, on August 30, 2021, the Court issued the Investigative Order. It required supplemental declarations from Kreindler & Kreindler that would bring their submissions in line with what the Court received from the other parties. ECF No. 7082. It ordered the four attorneys who submitted the original Kreindler & Kreindler declarations to: (1) identify all communications with Isikoff or anyone acting on his behalf from June 1, 2021, to August 1, 2021, and to supply copies of any written communications; (2) state whether they had ever discussed the Al Jarrah deposition with Isikoff or anyone acting on his behalf; (3) list every person they had provided the deposition transcript to who had not already submitted a declaration; and (4) state every person they know who had access to the deposition transcript who had not already submitted a declaration. At least one of these declarations was required to describe, in detail, the investigation Kreindler & Kreindler had undertaken to respond to the breach of the General Protective Order. Id. at 1.

In addition, the Investigative Order required Kreindler & Kreindler to submit declarations from anyone identified in their original submissions, stating whether those people had communicated with Isikoff or shared the Al Jarrah transcript. It also required a declaration from the head of the firm's information technology group or comparable figure. That declaration had to describe the investigation the firm took in response to the breach of the General Protective Order and state if anyone at the firm corresponded with two email addresses associated with Isikoff. Id. at 2.

Beyond Kreindler & Kreindler, the Investigative Order required declarations from all plaintiff and defendant law firms that attended the Al Jarrah deposition or had access to the transcript, as well as the court reporter firm Golkow Litigation Services. Those declarations had to affirm whether anyone at the firm had shared the deposition or otherwise communicated with Isikoff from June 1 to August 1, 2021. Id. at 3. Golkow Litigation Services is the only nonparty impacted by the Investigative Order. All other affected parties are law firms before this Court.

Four days after the Court entered the Investigative Order, Yahoo! News filed its motion. ECF No. 7094. That motion requested that the Court modify the Investigative Order on First Amendment grounds. If the Court denied any part of the motion, then it sought a stay so that Yahoo! News could seek review. ECF No. 7095 at 11. Saudi Arabia opposed the motion, ECF No. 7098, but the Court stayed the enforcement of the order pending replies by interested parties. ECF No. 7100. Yahoo! News filed its reply on September 9. ECF No. 7104. The only other party to submit papers was Kreindler & Kreindler. ECF No. 7103. In a letter submission, Mr. Kreindler joined Yahoo! News' motion and offered that "[c]ommunications with the media, provided they do not reveal protected material, are, of course, permitted." Id. The letter further argued more broadly that the Protective Orders "deny the Plaintiffs and the public critical

information" about the September 11 attacks and any role Saudi Arabia played in carrying them out. The Court also accepted an amicus letter brief from The Reporters Committee for Freedom of the Press, ECF Nos. 7105, 7108, making arguments similar to those pressed by Yahoo! News.

Meanwhile, despite the stay of the Investigative Order, parties continued to voluntarily submit declarations disassociating themselves from the breach. On September 10, the PECs filed declarations for all other plaintiffs' law firms affected by the Investigative Order as well as other counsel who, despite not being covered by the Investigative Order, volunteered declarations. ECF No. 7106 at 1.[1] In total, this submission included nine more declarations. All of these denied that the declarant, or to their knowledge, anyone at their firm, had shared the transcript with Isikoff. All but one affirmed that they had no communication with Isikoff at all. Id. at 5–21.

## DISCUSSION

Yahoo! News has neither suffered a legally cognizable injury, nor is it entitled to intervene to vindicate the interests of others. While it gestures in the direction of First Amendment rights, none of the rights to newsgathering, anonymous speech, or receipt of information it references has the vast reach that it tries to ascribe to them in order to justify intervention. This deficiency undercuts Yahoo! News's arguments at every turn: it deprives Yahoo! News of an injury that would provide standing, renders it devoid of protectable interest to support intervention, and counsels against permitting a stay.

## I.   Yahoo! News Lacks Standing to Intervene

Yahoo! News cannot demonstrate, even under the overbreadth doctrine, the injury Article III requires to grant standing and permit its intervention. "[T]he 'irreducible constitutional minimum' of standing consists of three elements." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547

---

[1] In a break from practice, Kreindler & Kreindler did not sign the PECs' letter submitting these additional declarations.

(2016) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 559–560 (1992)). Those are "(1) . . . an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc., 136 S. Ct. at 1547 (citing Lujan, 504 U.S. at 560–61). Yahoo! News stumbles at "injury in fact, the '[f]irst and foremost' of standing's three elements." Spokeo, Inc., 136 S. Ct. at 1547 (quoting Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 103 (1998)). It cannot show injury of either its own rights or rights it can assert on behalf of third parties under the overbreadth doctrine.

## A.  Yahoo! News Cannot Show Injury in Fact to Its Own Rights

Normally, "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc., 136 S. Ct. at 1548 (citing Lujan, 504 U.S. at 560).

Yahoo! News lacks this injury. It proposes a "right to gather news." ECF No. 7095 at 7. In support, it cites Zerilli v. Smith, 656 F.2d 705 (D.C. Cir. 1981), Branzburg v. Hayes, 408 U.S. 665 (1972), and Baker v. F & F Inv., 470 F.2d 778, 780 (2d Cir. 1972). None of these cases, however, supports Yahoo! News's sweeping claim that nonparty journalists are entitled to interfere with discovery in a private civil action. Zerilli found that "[c]ompelling a reporter to disclose the identity of a confidential source raises obvious First Amendment problems." 656 F.2d at 710 (emphasis added). Baker similarly dealt with when a court may compel a reporter to reveal their sources. 470 F.2d at 785. These and other cases have "have affirmed the existence of a journalists' privilege," Gonzales v. Nat'l Broad. Co., 194 F.3d 29, 34 (2d Cir. 1999) (emphasis added), that is, a qualified privilege that may be invoked when "information [is] sought from the press . . . ." Id. at 35.

That right does not apply here. Neither Isikoff nor any other Yahoo! News entity is required to disclose anything. What Yahoo! News is proposing then, is a sweeping expansion of the reporter's privilege such that a reporter can invoke it to shield a non-reporter party from its obligation to participate in discovery and obey a court's orders.

The Supreme Court foreclosed this argument nearly half a century ago. Branzburg noted that the reporter's privilege "is that of the reporter, not the informant, and that if the authorities independently identify the informant, neither his own reluctance to testify nor the objection of the newsman would shield him from grand jury inquiry . . . ." 408 U.S. at 695. In re Grand Jury Proceeding confirms that "a potential witness is not excused from compliance with a grand jury subpoena merely because the subpoena concerns the witness's communications with reporters." 971 F.3d 40, 55 (2d Cir. 2020). These cases make clear that the entity holding the reporter's privilege is the reporter, who cannot invoke it on behalf of a third party.

In fact, faced with the possibility that a reporter has information relevant to litigation, a party must first exhaust other available sources before turning to a journalist. In re Petroleum Prod. Antitrust Litig., 680 F.2d 5, 8 (2d Cir. 1982) (vacating an order compelling disclosure from a reporter because there was no evidence that the information had been sought from other sources first).

Accordingly, courts in this district have consistently approved discovery from non-reporters as an alternative to discovery against a reporter. See, e.g., Application of Behar, 779 F. Supp. 273, 275 (S.D.N.Y. 1991) (quashing a deposition subpoena because the moving party had not "demonstrate[d] that other available sources of the information have been exhausted"), In re Pishevar, No. 119-mc-00503 (JGK)(SDA), 2020 WL 1862586, at *5 (S.D.N.Y. Apr. 14, 2020) (denying discovery against a reporter where the movant failed to show that "the identity of [a]

Confidential Source is not obtainable from other available sources") (quoting <u>In re Application of Shervin Pishevar</u>, 439 F. Supp. 3d 290, 306 (S.D.N.Y. 2020)), <u>Persky v. Yeshiva Univ.</u>, No. 01-cv-5278 (LMM), 2002 WL 31769704, at \*4 (S.D.N.Y. Dec. 10, 2002) (finding that three depositions was insufficient to demonstrate that information sought was only available from a reporter), <u>Giuffre v. Maxwell</u>, 221 F. Supp. 3d 472, 480 (S.D.N.Y. 2016) (quashing the subpoena of a reporter because the movant failed to show she had turned to the reporter as a "last resort") (quoting <u>In re Grand Jury Subpoenas Served on Nat. Broad. Co., Inc.</u>, 683 N.Y.S.2d 708 (N.Y. Sup. 1998)). This body of law is irreconcilable with Yahoo! News's position that the reporter's privilege is injured when discovery is sought from a non-reporter.

The Investigative Order is consistent with this law. It does not seek information from Isikoff or any other Yahoo! News employee. Instead, it seeks information from other sources: attorneys before this Court who already have a duty of candor. <u>See</u> New York Rule of Professional Conduct 3.3. Yahoo! News's reporter privilege is not harmed by this and so it lacks standing based on an injury to its own rights.

### B.  The Overbreadth Doctrine Does Not Give Yahoo! News Standing

Yahoo! News cannot cure this standing deficiency through the overbreadth doctrine. It seeks to asserts two rights held by third parties: anonymous speech and receipt of information. But it lacks the necessary injury under even this doctrine. The Investigative Order does not infringe on these rights, and even if the overbreadth doctrine applied, the Investigative Order would survive the resulting review.

#### 1.  Yahoo! News Lacks the Injury Necessary to Invoke the Overbreadth Doctrine

"The First Amendment doctrine of substantial overbreadth is an exception to the general rule that a person to whom a statute may be constitutionally applied cannot challenge the statute

on the ground that it may be unconstitutionally applied to others." Massachusetts v. Oakes, 491 U.S. 576, 581 (1989). "Invalidation for overbreadth is 'strong medicine' that is not to be 'casually employed.'" United States v. Williams, 553 U.S. 285, 293 (2008) (quoting Los Angeles Police Dept. v. United Reporting Publishing Corp., 528 U.S. 32, 39 (1999)).

Thus, the overbreadth doctrine still requires that the party making the challenge suffer an injury in fact. Farrell v. Burke, 449 F.3d 470, 499 (2d Cir. 2006). So, "[a] litigant who challenges a rule of law as overbroad may have constitutional standing even though the rule's application to her is constitutional, but only insofar as her own conduct falls within the ambit of the specific rule of law that she challenges." United States v. Smith, 945 F.3d 729, 737 (2d Cir. 2019).

Yahoo! News's problem is that its alleged injury to its First Amendment right to gather news does not "fall[] within the ambit of the" Investigative Order. Id. That order requires disclosures only from law firms before this Court and a single legal services provider in these firms' employ. ECF No. 7082. The Investigative Order does not apply to Yahoo! News and does not command it to do or not do anything. Because it is legally impossible for Yahoo! News to violate the order's terms or be penalized for doing so, it cannot demonstrate the injury in fact that the overbreadth doctrine requires.

### 2.   Yahoo! News Cannot Demonstrate an Injury to Anonymous Speech

Even making the counterfactual assumption that Yahoo! News's right to gather news was somehow infringed by the Investigative Order, it still would be unable to demonstrate a cognizable injury to others. Its arguments about injury to anonymous speech fail because they are too conjectural, even under the overbreadth doctrine, to show an injury in fact. It suggest that the order "adversely affects potential source(s)' First Amendment right to speak anonymously." ECF No. 7095 at 8. However, an injury in fact must be "actual or imminent, not conjectural or

'hypothetical." Lujan, 504 U.S. at 560 (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)) (internal quotations omitted). "[T]he overbreadth doctrine . . . does not provide a reason to find such injury where none is present or imminently threatened in the first instance." Hedges v. Obama, 724 F.3d 170, 204 (2d Cir. 2013).

Yahoo! News does not identify what, if any, anonymous speech would be disclosed. It does not state, for example, that a source shared the Al Jarrah deposition on condition of anonymity, that any anonymous communications to Isikoff were made, or that the Investigative Order will reveal these communications. The article itself does not quote anonymous sources or state that such a source supplied the transcript. See ECF No. 6981-1. And, in fact, Mr. Isikoff expressly asked Saudi Arabia's counsel to respond to "what Jim Kreindler had to say." Yahoo! News is, presumably, in an unparalleled position to provide information concerning any anonymous communications, even in a format that would protect the anonymity of its sources. Instead, it merely speculates that the order could impact parties who wish to remain anonymous. ECF No. 7104 at 10. This is not enough to show the concrete, imminent threat required to establish an injury in fact.

Moreover, permitting a party to invoke the overbreadth doctrine requires that they be "expected satisfactorily to frame the issues in the case." Sec'y of State of Md. v. Joseph H. Munson Co., 467 U.S. 947, 958 (1984). Yahoo! News's vagueness on the question of anonymity prevents it from doing so. A party's right to speak anonymously varies based on its circumstances. Arista Recs., LLC v. Doe 3, for example, noted that a "party's expectation of privacy" should be considered in determining whether to quash a subpoena in order to preserve anonymity. 604 F.3d 110, 119 (2d Cir. 2010).

To the extent a lawyer in this case disclosed the transcript in violation of the General Protective Order, that lawyer could have no expectation that his conduct would remain shielded from the Court's review. Certainly, a court may, without offending the First Amendment, restrict how a party may use materials obtained through discovery. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 37 (1984). Indeed, the Supreme Court has "expressly contemplated that the speech of those participating before the courts could be limited." Gentile v. State Bar of Nevada, 501 U.S. 1030, 1072 (1991). In particular, "the speech of lawyers representing clients in pending cases may be regulated under a less demanding standard than that established for regulation of the press . . . ." Id. at 1074.

Thus, parties and lawyers before a court will have an increased expectation that their speech can be regulated, and this expectation may limit their expectation of privacy. The Investigative Order was targeted at lawyers and law firms, so the question of who seeks to speak anonymously is of crucial importance in determining the scope of any rights. Yahoo! News, however, has been unwilling or unable to provide this information, meaning that they cannot satisfactorily frame the case as the overbreadth doctrine requires.

### 3. No Right to Receive Information Is Implicated

The right to receive information also does not provide Yahoo! News with standing. Yahoo! News cites Stanley v. Georgia, 394 U.S. 557, 564 (1969), for the principle that there is a "public[] First Amendment right to receive newsworthy information . . . ." ECF No. 7095 at 8. It is true that "[i]n a variety of contexts . . . [the Supreme Court] has referred to a First Amendment right to 'receive information and ideas' . . . ." Kleindienst v. Mandel, 408 U.S. 753, 762 (1972). That right limits the state's ability to restrict access to information. See Stanley, 394 U.S. at 564 (restrictions on the possession of obscene materials); Virginia State Bd. of Pharmacy v. Virginia

Citizens Consumer Council, Inc., 425 U.S. 748, 756 (1976 (restrictions on drug pricing advertisements); Lamont v. Postmaster Gen. of U.S., 381 U.S. 301, 306 (1965) (restrictions on the receipt of communist propaganda). "[T]he right to *receive* ideas follows ineluctably from the sender's First Amendment right to *send* them . . . ." Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico, 457 U.S. 853, 867 (1982) (emphases added).

Yahoo! News does not suggest that the Investigative Order directly interferes with its ability to send news or the public's ability to receive it. That argument would be meritless: the Investigative Order does not require that Yahoo! News do anything, much less stop covering this case, write less about it, or remove what it has already published. Instead, Yahoo! News argues that, because the Investigative Order will somehow "chill" its ability to gather news, it will limit the public's ability to receive it. ECF No. 7095 at 8. It does not offer any authority for this proposition that the right to send and receive ideas carries with it an unfettered right to collect information. Nor could it: "[t]he right to speak and publish *does not* carry with it the unrestrained right to gather information." Zemel v. Rusk, 381 U.S. 1, 17 (1965) (emphasis added). The public's generalized right to receive information thus does not provide the injury in fact required for overbreadth.

### 4.  The Order is Appropriately Tailored

Finally, even if the Court found that Yahoo! News could invoke the overbreadth doctrine, the Investigative Order would survive the resulting analysis. To succeed in an overbreadth challenge, an order's "overbreadth [must] be substantial, not only in an absolute sense, but also relative to   . . . [its] plainly legitimate sweep." Williams, 553 U.S. at 292. Because invalidation under overbreadth "is 'strong medicine,' the law rigorously enforces the burden on the

challenging party to demonstrate '*substantial*' infringement of speech." <u>United States v. Farhane</u>, 634 F.3d 127, 136–37 (2d Cir. 2011) (citing <u>Williams</u>, 553 U.S. at 292) (emphasis in original).

Yahoo! News does not make this showing, nor can it. In absolute terms, the amount of speech reached by the Investigative Order is minimal. The only parties who are required to disclose anything are law firms and litigation service providers before the Court. Thus, as opposed to statutes of general applicability, the Investigative Order affects only a small number of people.

The amount of speech affected is also limited. In drafting the order, the Court had the benefit of the submissions made by Saudi Arabia, and two plaintiff law firms. Those submissions suggest that the disclosure requirements impact few communications: neither of the plaintiffs' firms had to disclose a single communication with Isikoff. Saudi Arabia was able to disclose the whole of Isikoff's attempts to communicate with them in one page.

Subsequent events have confirmed the Court's intuition that the amount of speech covered by the Investigative Order is marginal. AndersonKill, which submitted declarations voluntarily after the entry of the Investigative Order, reported no communications with Isikoff. The supplemental declarations voluntarily submitted by plaintiff firms after the entry of the order report no communications with Isikoff. In short, based on the 53 declarations the Court has received thus far, the absolute volume of speech covered by the Investigative Order, and the number of parties who speech is affected at all is minimal.

Finally, the impact on speech is limited. <u>Tory v. Cochran</u>, which Yahoo! News cites in support of is overbreadth argument, dealt with a permanent injunction forbidding speech about a particular lawyer. 544 U.S. 734, 736 (2005). Violating that injunction could have resulted in criminal penalties. By contrast, the Investigative Order does not prohibit any speech: it merely

directs that communications be disclosed. ECF No. 7082 at 1, 3. Nor is there any suggestion that simply communicating with Isikoff will result in penalties. Quite the opposite: the Court has affirmed that parties may talk to Isikoff or any other member of the press so long as they do not violate the Protective Orders. ECF No. 3619 at 9:10–11. The Investigative Order does not change this. Thus, the absolute amount of speech affected by the Investigative Order is small.

Any protected speech affected by the Order is also limited relative to the scope of legitimate information sought. The First Amendment is not offended by limitations on litigants' dissemination of materials obtained purely through discovery. Seattle Times Co., 467 U.S. at 37. Thus, requiring disclosure of communications of non-reporters to leak the Al Jarrah transcript to Isikoff is legitimate. In response, Yahoo! News proffers two hypothetical ways the order could be overbroad. It suggests that the order could be overbroad as to time because it covers a period six weeks before and two weeks after the article's publication. It also suggests that the Investigative Order covers too much subject matter because it asks for communications with people acting on Isikoff's behalf and any discussion of the contents of the deposition.

Such speech is legitimately covered by the Investigative Order. The time frame is reasonable because the parties knew of Al Jarrah's deposition since at least late May. See, e.g., ECF No. 6817. Thus, it is possible that, if there was a plan to leak the deposition to Isikoff, people could have been discussing it by June 1. Similarly, it is possible that in the two weeks after the article, a culprit would communicate with Isikoff about the fallout from their breach of the order. Such communications are legitimate subjects for discovery.

Including people working with or for Isikoff is also sensible. Otherwise a declarant who leaked the transcript to one of Isikoff's associates could evade detection by truthfully saying they had not provided anything to Isikoff. Similarly, Yahoo! News suggests that it is problematic that

the Investigative Order would require parties to "disclose whether they communicated to Isikoff that certain topics were <u>not</u> addressed at the Al Jarrah deposition . . . ." ECF No. 7095 at 10. It could, and that is by design. Like a sculpture executed in relief, an intelligent party could, with the right set of responses to a clever reporter, convey confidential information about what was covered by indicating what was not covered.

While these might seem like remote concerns, the Court must consider them because it is increasingly disturbed that a party before it may be operating in bad faith by concealing material information about who breached the Protective Orders. It has already noted that there is circumstantial evidence that Kreindler & Kreindler breached the Protective Order. ECF No. 7011 at 2. That firm's initial submissions were also sparse enough that the Court felt they needed to be supplemented. ECF No. 7082. Thus, in assessing the legitimate scope of the Investigate Order, the Court must consider that relevant communications may have been crafted to elude detection, further legitimizing the framing of the Investigative Order.

Accordingly, mindful that "[i]nvalidation for overbreadth is 'strong medicine' that is not to be 'casually employed,'" <u>Williams</u>, 553 U.S. at 293 (quoting <u>Los Angeles Police Dept.</u>, 528 U.S. at 39), the Court finds that Yahoo! News has not shown the Order to be overbroad, even if it could invoke the doctrine. The speech it seeks is targeted and necessary to identify who breached the Protective Orders.

"[A]n intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests." <u>Town of Chester, N.Y. v. Laroe Ests., Inc.</u>, 137 S. Ct. 1645, 1651 (2017). Yahoo! News has failed to show the injury in fact required for this standing. This alone would be sufficient to deny its motion.

## II.    The Investigative Order Is Not Vague

Even if Yahoo! News had standing, its vagueness challenge would fail on the merits. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). This means that "laws [must] give the person of ordinary intelligence a reasonable opportunity to know what is prohibited . . . ." Id. Additionally, an order "may be invalid if it prohibits privileged exercises of First Amendment rights whether or not the record discloses that the petitioner has engaged in privileged conduct." NAACP v. Button, 371 U.S. 415, 432 (1963).

Yahoo! News's void for vagueness arguments are unsupportable for two reasons. First, the doctrine is inapposite here. In each of the cases Yahoo! News cites, the void for vagueness doctrine was invoked to strike down a law that prohibited some form of protected conduct. See, Reno v. Am. C.L. Union, 521 U.S. 844, 871 (1997) (applying the void for vagueness doctrine to the Communications Decency Act's prohibitions on the transmission of "indecent" materials); Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971) (striking down a statue prohibiting "annoying" people on a sidewalk); NAACP, 371 U.S. at 419 (striking down a prohibition on the solicitation of legal business).

By contrast, the Investigative Order does not prohibit anything or regulate speech. It requires only that communications be produced. This is, in effect, a discovery proceeding, and Yahoo! News identifies no case that imports the vagueness doctrine into this context. That is no surprise. Many discovery proceedings involve the production of material that enjoys First Amendment protection. Parties in discovery will frequently debate the terms of what must be produced. Accepting Yahoo! News's argument about the applicability of the vagueness doctrine to these disputes would transform nearly every quotidian discovery dispute into a potential battle

over First Amendment rights. This would be a sweeping expansion of the void for vagueness doctrine, and Yahoo! News cites no case endorsing this enlargement.

Even if the void for vagueness doctrine applied, the Investigative Order's terms would survive it. All that is required to survive void for vagueness review is that the order be comprehensible to someone of ordinary intelligence. Thibodeau v. Portuondo, 486 F.3d 61, 65 (2d Cir. 2007) (quoting Betancourt v. Bloomberg, 448 F.3d 547, 552 (2d Cir. 2006)). Thus, an order does not need to lay out what it covers with "mathematical certainty" and can survive review even if it employs "flexibility and reasonable breadth . . . ." Grayned, 408 U.S. at 110.

Yahoo! News anchors its vagueness claim on the purported ambiguity of the phrase "the contents of the Al Jarrah deposition." ECF No. 7095 at 10. It suggests that this does not adequately convey whether a conversation about what was not covered in the deposition would be covered by the Investigative Order. It also suggests that the order does not indicate how to deal with broad subjects like the FBI Investigation into September 11, where only a portion of the topic was discussed in the deposition.

Neither of these are close calls. Discussing what was not covered in the deposition is discussing the contents of the deposition. It would, with effort, be possible to completely describe the contents of the deposition by describing what was not in it. Similarly, the question of when to include information about broad topics can be resolved by asking if the communication revealed information about the Al Jarrah deposition. If a communication does not implicitly or explicitly reveal information about what was covered in the deposition, then it is not about the contents of the deposition.

 "It will always be true that the fertile legal 'imagination can conjure up hypothetical cases in which the meaning of (disputed) terms will be in nice question.'" Grayned, 408 U.S. at

110 n.15 (quoting <u>Am. Comm. Assn. v. Douds</u>, 339 U.S. 382, 412 (1950)). The easy resolution

of these two purported areas of vagueness confirms to the Court that the term "the contents of the

Al Jarrah deposition" provides an adequate guide to inform an ordinary person (and certainly the

sophisticated legal parties here) what the Investigative Order requires.

## III.   Yahoo! News Cannot Intervene as a Matter of Right and Permissive Intervention Is Inappropriate

Yahoo! News moves to intervene both as of right under Federal Rule of Civil Procedure

24(a) and for permissive intervention under Federal Rule of Civil Procedure 24(b). Both

arguments are unavailing. Yahoo! News cannot make the showing required to intervene as a

matter of right and permissive intervention would be inappropriate.

### A.   Yahoo! News Cannot Make the Showing Required to Intervene as a Matter of Right

Yahoo! News may not intervene as a matter of right. Intervention as of right is

appropriate when an applicant "(1) files a timely motion; (2) asserts an interest relating to the . . .

transaction that is the subject of the action; (3) is so situated that without intervention the

disposition of the action may . . . impede its ability to protect its interest; and (4) has an interest

not adequately represented by the other parties." <u>United States v. Pitney Bowes, Inc.</u>, 25 F.3d 66,

70 (2d Cir. 1994). Failure to meet any of these requirements will result in denial. <u>Id.</u> The

decision is committed to the discretion of the district court. <u>Floyd v. City of New York</u>, 770 F.3d

1051, 1057 (2d Cir. 2014).

The timeliness of Yahoo! News's application is not in doubt, but its application fails

every other element of the test. It has not identified a single protectable interest it can assert. For

intervention, an "interest [must] be direct, substantial, and legally protectable." <u>Washington Elec.

Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.</u>, 922 F.2d 92, 97 (2d Cir. 1990). As

discussed, Yahoo! News has not identified such an interest. Though it asserts a "right to gather

news," ECF No. 7104 at 8, this right does not exist in a form that is harmed by the Investigative

Order. The rights it identifies for others—to receive news and speak anonymously—are similarly

unharmed by the Investigative Order because they do not have the capacious dimensions Yahoo!

News ascribes to them. Because Yahoo! News thus does not have protectable rights in this

action, nothing is impeded by barring its intervention. Its claims thus fail the second and third

criteria for intervention.

Finally, Yahoo! News does not show that its interest will be inadequately represented by

the existing parties. Every party directly affected by the Investigative Order is either a

sophisticated law firm or litigation service provider. Each has demonstrated the ability to

aggressively litigate issues before this Court. Some of these firms have also suggested that they

believe that there should be greater disclosure of matters in this MDL to the public. ECF No.

7102 at 1 ("[T]he 9/11 Plaintiffs have repeatedly argued, the existing FBI and MDL Protective

Orders deny the Plaintiffs and the public critical information about the 9/11 Attacks . . . .")

Because they are directly affected by the Investigative Order and know what communications

might be disclosed, they are perfectly positioned to raise any issues relating to anonymous

speech, vagueness, and public access. The rights for which Yahoo! News proposes to intervene

have ready and capable defenders already before the Court.

All told, Yahoo! News cannot to show three of the four elements required so the request

to intervene as of right must be denied.

**B.  Permissive Intervention Is Inappropriate**

Permissive intervention under Federal Rule of Civil Procedure 24(b) is also

inappropriate. Under this Rule, "the Court may permit anyone to intervene who . . . has a claim

or defense that shares with the main action a common question of fact or law." Fed. R. Civ P.

24(b)(1)(B). In determining whether to permit this intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

"Substantially the same factors [as govern intervention of right] are considered in determining whether to grant an application for permissive intervention . . . ." In re Bank of New York Derivative Litig., 320 F.3d 291, 300 n.5 (2d Cir. 2003). This would already be fatal to Yahoo! News's claims, and the prejudice that will result from allowing their intervention counsels against permissive intervention as well.

Plaintiffs, defendants, and non-parties forced to provide discovery are all prejudiced by the delay in enforcing the Protective Order occasioned by Yahoo! News's attempted intervention. Protective orders play a "vital function" in civil disputes "by encouraging full disclosure of all evidence that might conceivably be relevant." Martindell v. Int'l Tel. & Tel. Corp., 594 F.2d 291, 295 (2d Cir. 1979). "Unless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation, thus undermining a procedural system that has been successfully developed over the years for disposition of civil differences." Id.

Thus, so long as the breach of the Protective Order is not fully addressed, plaintiffs will be prejudiced by inhibition of full disclosure, and defendants will be prejudiced by being forced to give evidence without the confidence that their disclosures are protected. This breach is a prime example: Al Jarrah was under no obligation to testify. He did so voluntarily in part because of the protections offered by the Protective Orders. ECF No. 6981 at 1. In the future, people similarly situated may be less likely to participate if the Court cannot enforce its protective orders.

Yahoo! News's attempt to inject itself into this collateral dispute has already delayed the Court's efforts to mend this breach. If it is permitted to intervene, there is no telling how long it will be able to delay adjudication through more demands to modify the Investigative Order. That prejudices the parties and counsels against permissive intervention.

## IV.   A Stay Pending Appeal Is Inappropriate

Yahoo! News does not make the necessary showing to stay the implementation of the Investigative Order "to consider seeking appropriate review." ECF No. 7104. "A stay involves extraordinary relief," In re Pine Lake Vill. Apartment Co., 21 B.R. 395, 398 (S.D.N.Y. 1982), and "[t]he burden on the movant is a 'heavy' one." In re DJK Residential, LLC, No. 08-10375 (JMP), 2008 WL 650389, at *2 (S.D.N.Y. Mar. 7, 2008) (quoting In re Adelphia Cmmc'ns Corp., 333 B.R. 649, 659 (S.D.N.Y. 2005)). The four factors a court considers in assessing if this burden is met are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Barretta v. Wells Fargo Bank, N.A., 693 F. App'x 26, 27 (2d Cir. 2017) (quoting In re World Trade Ctr. Disaster Site Litig., 503 F.3d 167, 170 (2d Cir. 2007)). Yahoo! News has not shown any of these factors.

Yahoo! News's papers suggest it will not succeed on the merits because it has not identified any right that it can invoke that will be injured by the Investigative Order. It has not identified any protectable rights that it holds so it will not be injured absent a stay. Conversely, the parties will be injured. The Court's inability to enforce its protective orders will prejudice the plaintiffs' access to fulsome discovery, Martindell, 594 F.2d at 295, and the defendants' interests

in assuring that materials they produce under a protective order do not become a means for abuse and oppression. Seattle Times Co., 467 U.S. at 35.

Denying a stay also benefits the public by protecting the effective functioning of the civil dispute resolution system. Martindell, 594 F.2d at 295. "Without an ability to restrict public dissemination of certain discovery materials that are never introduced at trial, litigants would be subject to needless "annoyance, embarrassment, oppression, or undue burden or expense." S.E.C. v. TheStreet.Com, 273 F.3d 222, 229 (2d Cir. 2001). Permitting Yahoo! News's meritless challenge to support an indefinite delay of the Investigative Order as it decides whether to seek appeal will undermine litigants' confidence in protective orders and impede the effective functioning of the judicial system.

### CONCLUSION

Yahoo! News's motion to intervene and for a stay is DENIED. The parties shall provide any outstanding declarations required by the order at ECF No. 7082 by September 27, 2021.

**SO ORDERED.**

DATED:      New York, New York
            September 23, 2021

_____
SARAH NETBURN
United States Magistrate Judge