UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

    **TERRORIST ATTACKS ON**
    **SEPTEMBER 11, 2001**

-----------------------------------------------------------------X

03-MD-01570 (GBD)(SN)

**REPORT &
RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge:**

**TO THE HONORABLE GEORGE B. DANIELS:**

    The Plaintiffs' Executive Committees ("PECs") move to impose a sanction of default judgment against defendant Wael Jelaidan. ECF No. 7079. For a nearly a decade, judges in this multidistrict litigation have made every effort to encourage Jelaidan to participate in this litigation in good faith. Those efforts have failed. Having attempted to resolve his non-compliance with lesser sanctions and having repeatedly warned him of the consequences of his misconduct, the Court now recommends that a default judgment be rendered.

## BACKGROUND

    This Court once described "[t]he history of Jelaidan's noncompliance with court orders" as "long and convoluted." ECF No. 4138 at 1. That was three years ago. His conduct has not improved since. While portions of this misconduct have been detailed in prior opinions, see, e.g., ECF Nos. 2789, 4138, the Court finds it prudent, it light of its recommendation for a default judgment, to recount the full history here.

    Jelaidan is "widely believed to have shared a close relationship with Osama bin Laden and to have directed organizations that provided financial and logistical support to al Qaeda."

ECF No. 2789 at 5. He was designated by the U.S. Treasury as a "person who supports terror" in September 2002. Id. It appears that he remains so designated up to today.[1]

Jelaidan's obstruction began at the earliest stages of discovery and continues through to today. On June 13, 2006, the PECs served a set of requests on Jelaidan seeking various financial records. ECF No. 4138 at 1. He produced only 22 documents with a total length of 104 pages. Id.

The PECs responded with a motion to compel,[2] which came before Magistrate Judge Frank Maas. Judge Maas first addressed the issue at a status conference on November 16, 2011. ECF No. 2789 at 6. He found that Jelaidan's efforts to comply with the PECs' discovery requests were inadequate and ordered him to redouble his efforts to obtain responsive materials. Id. at 7. He also warned Jelaidan that he would impose sanctions if Jelaidan failed to show a good faith effort to obtain responsive records. Id.

This warning went unheeded. Less than a month later, Jelaidan, through then-counsel Martin McMahon, stated (with little supporting evidence) he could not produce anything else. Id. He also supplied no additional materials in response to supplemental document requests. Id. at 8.

Faced with this intransigence, the PECs filed a motion for sanctions, ECF No. 2700, which Judge Maas granted on October 2, 2013. ECF No. 2789 at 17. In granting the motion, he found that Jelaidan's "misconduct span[ed] a history of seven years and persists to this day." Id. He noted that Jelaidan had been warned numerous times by the Court and the PECs about the

---

[1] A search of the U.S. Treasury Office of Foreign Assets Control's (OFAC) Sanctions List Search website at https://sanctionssearch.ofac.treas.gov/ conducted September 2, 2021, under the name "Wa'el Hamza Julaidan" indicates that he is listed as a "SDGT" – a specially designated global terrorist. "Wa'el Hamza Julaidan" is one of several aliases under which Jelaidan was originally added to the OFAC Sanctions List. See ECF No. 2789 at 5 (citing *Treasury Department Statement on the Designation of Wa'el Hamza Julidan*, U.S. Department of the Treasury (Sept. 6, 2002), https://www.treasury.gov/press-center/press-releases/Pages/po3397.aspx).

[2] This letter motion appears to be undocketed, but a copy is included in the PECs' subsequent sanction motion at ECF No. 2700 at 7 and is referenced in the opinion resolving that motion. ECF No. 2789 at 6.

consequences of non-compliance, but "had disregarded those warnings." Id. Finally, Judge Maas found that this misconduct "evidence[d] a continued unwillingness to participate fairly in discovery and [could] only be characterized as proceeding in bad faith." Id. at 9. Accordingly, he imposed an adverse inference sanction on Jelaidan, with the specific language to be determined by the trial judge. Id. at 17. He also ordered Jelaidan to pay the costs associated with the PECs' motion. Id.

Imposing these sanctions ought to have been the finale to Jelaidan's noncompliance. Instead, it proved to be only the opening act. Jelaidan moved to reconsider those sanctions but that motion was denied. ECF No. 3139. Judge Daniels confirmed the penalty on March 9, 2016. ECF No. 3228. However, as Jelaidan was a "Specially Designated Global Terrorist" under federal law, it was not possible for the PECs to accept money from him without an Office of Foreign Assets Control (OFAC) license from the U.S. Treasury. Id. Judge Daniels thus ordered Jelaidan to file a letter within 30 days indicating what actions he had taken to comply with the sanction order. Id.

Jelaidan failed to file this letter and Judge Daniels was forced to issue another order to obtain information on Jelaidan's efforts to comply with the award. ECF No. 3372. This Court then ordered 60-day status letters detailing these efforts. ECF No. 3380. Again, Jelaidan failed to comply and the PECs were forced to move for sanctions in May 2017. ECF No. 3542.

The Court concluded that Jelaidan's efforts to comply with Judge Daniels's status report order as well as his effort to obtain an OFAC license were "lackluster." ECF No. 3610 at 1. In response, it imposed a 30-day status report requirement with financial sanctions to be levied on

Jelaidan's counsel if he failed to comply. Id. at 2. That, at least, led to the regular filing of adequate reports. ECF No. 4138 at 4.

Then, on January 30, 2018, OFAC granted Jelaidan a license. Id. at 5. When the PECs contacted Jelaidan's attorney to request payment however, McMahon demurred, stating that securing the award was the PECs' responsibility. Id. This Court issued a further order directing Jelaidan to pay the sanction imposed, ECF No. 3960, only to be informed on April 18, 2018, that Jelaidan lacked the funds to pay, having decided to use his remaining resources to settle other debts rather than pay his sanction. ECF No. 4138 at 6–7. Compounding the problem, McMahon attempted to withdraw as counsel. Id. at 7.

In response, the Court directed Jelaidan to provide addition information to determine whether further sanctions were appropriate. Id. at 9–11. Eventually, the Court denied the motion to withdraw, but ordered the PECs and Jelaidan to meet-and-confer given evidence that it was unlikely that Jelaidan could pay further sanctions. ECF No. 4464 at 9. By March 2019, three years after Jelaidan had originally been ordered to pay, there was no evidence in the record to suggest he ever did.

At this point, Jelaidan supplemented his ongoing noncompliance with that sanction with fresh disobedience to new orders. On May 16, 2019, the PECs informed the Court that they intended to take Jelaidan's deposition. ECF No. 4526 at 1. The Court ordered him to sit for this by July 31, 2019. ECF No. 4532 at ¶ 1. That deadline was later extended to October 31, 2019. ECF No. 4582 at ¶ 7. Jelaidan, though, failed to agree on a date so the Court was forced to order him to coordinate once again under threat of sanction. ECF No. 5179.

With this inducement, a date was set. ECF No. 5199. But then, Jelaidan requested an extension, ECF No. 5255, and then a stay on account of a family emergency for one of his

lawyers. ECF No. 5302. He also tried to bring his unbarred Saudi Arabian counsel into the deposition, ECF No. 5301 at 1, in defiance of a prior agreement that only his counsel of record would attend. ECF No. 5258. The Court denied that motion, ECF No. 5314, and tried again to get the parties to set deposition date. ECF No. 5305. Judge Daniels also denied Jelaidan's request for relief from the order barring his Saudi Arabian counsel. ECF No. 6611.

Despite this, no deposition date was set. So, on April 20, 2021, the PECs moved to compel Jelaidan to appear. ECF No. 6753. They also requested that default judgment be granted if he failed to comply. Id. at 5. On March 10, this Court granted that motion in part, ordering Jelaidan to sit for his deposition. ECF No. 6801. That order did not preemptively sanction him, but warned him that, if the Court received notice that he failed to appear by August 31, the Court would treat that notice as a motion for sanctions. Id. at 5. Initially, it seemed the threat of sanction had again broken the impasse and the deposition was scheduled for August 26. ECF No. 6833 at 1.

Unfortunately, this progress evaporated. On June 16, 2021, McMahon passed away. ECF No. 6867. While tragic, this was not unexpected. McMahon suffered from a serious medical condition and the Court had explicitly warned Jelaidan and McMahon more than a month prior that they would need to make plans to ensure that counsel's health did not affect the scheduling of the deposition. ECF No. 6801 at 2 n. 1. Apparently, no such preparations were made because the passing of his counsel left Jelaidan unrepresented. ECF No. 6867. The Court therefore ordered Jelaidan to either have a new attorney notice an appearance on his behalf, or state that he would proceed *pro se*. Id. This order was conveyed to Jelaidan's Saudi Arabian attorney through a former colleague of McMahon. ECF No. 6870.

Jelaidan did neither. Accordingly, on July 20, the Court announced that it would treat him as an unrepresented litigant, directed him to the resources this district provides for *pro se* parties, and ordered him to file the appropriate notice. ECF No. 6968 at 1. It also enlisted the assistance of the Defendants' Executive Committee (DEC) in providing him with a copy of the order. Id. The DEC reported that they emailed a copy of that order to email addresses associated with Jelaidan, his Saudi Arabian attorney, and that attorney's assistant. ECF No. 6987 at 1. They received no reply. Id. The Court also emailed copies of the relevant orders to these addresses itself. ECF No. 6997. The only reply it received was from Jelaidan's Saudi Arabian attorney stating that he no longer represented Jelaidan. ECF No. 7010.

Finally, on August 20, with the deposition approaching, the PECs requested that the Court order Jelaidan to provide them with contact information to facilitate the deposition or be deemed to have failed to appear. ECF No. 7064. The Court granted that motion. ECF No. 7065. Jelaidan failed to provide any contact information or otherwise appear for his deposition. ECF No. 7079. Indeed, the Court has received no communication from Jelaidan or any suggestion that he has communicated with other parties since June 1, 2021. ECF No. 6833. Pursuant to the Court's order at ECF No. 6801, the notice of his absence from the deposition also serves as a motion for sanctions.

## DISCUSSION

Jelaidan's long history of noncompliance leaves the Court with little alternative but to recommend a default judgment. Federal Rule of Civil Procedure 37(b)(2)(A)(vi) permits a court to render a default judgment against a party who disobeys a discovery order. Rendering a default judgment is a "severe sanction[], but . . . may be appropriate in 'extreme situations,' as 'when a court finds willfulness, bad faith, or any fault on the part of the' noncompliant party."

Guggenheim Cap., LLC v. Birnbaum, 722 F.3d 444, 451 (2d Cir. 2013) (citing Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764 (2d Cir.1990)). In determining what sanction is appropriate, a court should consider "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009) (internal quotations omitted) (alterations in original) (citing Nieves v. City of New York, 208 F.R.D. 531, 535 (S.D.N.Y.2002)).

Each of these factors supports imposing a default judgment. Judge Maas noted Jelaidan's pattern of bad faith in 2013. ECF No. 2789 at 9, 17. His conduct has not improved in the intervening years. He has not fulfilled basic discovery obligations, id. at 6, and does not willingly comply with even straightforward requirements like filing status reports. See, e.g., ECF No. 3372. He has tried to renege on prior agreements for the conduct of depositions. See, e.g., ECF No. 5301 (attempting to bring unbarred Saudi counsel into proceedings despite having agreed not to do so). His resistance is such that even the simple task of scheduling a deposition took three years, multiple court interventions, and the threat of sanction. Indeed, Jelaidan has repeatedly demonstrated that only the threat of sanctions, with its attendant costs in time and effort to both the PECs and this Court, motivates even the barest participation in these proceedings. The Court thus reaffirms Judge Maas's 2013 finding that Jelaidan continues to act in willful bad faith.

His latest act of defiance demonstrates that even lesser sanctions have reached the limits of their efficacy. Over the course of a decade, this Court, Judge Maas, and Judge Daniels have employed a broad spectrum of penalties to secure Jelaidan's participation and resolve this matter on the merits. These efforts have failed. Warnings do not work. He ignores them. Adverse

inferences do not work. He is unfazed by them. Fines do not work. He will not (and perhaps cannot) pay them. Indeed, despite these sanctions, Jelaidan's obstruction has gotten worse. He has absented himself from the litigation with no apparent intention to return and without any way for the Court to even communicate with him. The situation is comparable to Sieck v. Russo, where a default judgment was upheld after defendants who had previously received lesser sanctions continued to evade deposition. 869 F.2d 131, 134 (2d Cir. 1989). Compounding these difficulties, McMahon, at least, was a member of the bar over whom the Court could exert some leverage and who could, in turn, motivate Jelaidan to at least communicate with the Court. With his passing, the Court has even less reason to believe that further lesser sanctions will work.

The duration of this willful obstruction is also staggering. In Robertson v. Dowbenko, a bad faith delay of *two years* was sufficient to support a default judgment. 443 F. App'x 659, 661 (2d Cir. 2011). In his 2013 sanction order, Judge Maas noted that Jelaidan had engaged in bad faith conduct for *seven years*. ECF No. 2789 at 9. It is 2021 now. That means that, by any measure, Jelaidan has been engaged in a pattern of misconduct for at least a decade. Measured from Judge Daniels's 2016 final confirmation of the sanctions award, ECF No. 3228, Jelaidan has been out of compliance with a court-ordered penalty for about five years. His complete failure to respond to any court communications since June 1, 2021, suggests that, absent a default judgment, these delays will only continue.

Finally, Jelaidan was warned that continued noncompliance could result in a default judgment. The Court alerted Jelaidan in its March 10 order that if he failed to be deposed by August 31, the Court would treat that as a renewal of the PECs' motion for a default judgment. ECF No. 6801 at 5. Critically, while the Court's later communications alerting Jelaidan to the threat of a default judgment were made while he was a *pro se* litigant, see, e.g., ECF No. 6997,

the original order at ECF No. 6801 was delivered when Jelaidan was still represented by counsel, who did not pass until more than a month later. ECF No. 6867. Even if the Court's later orders did not reach Jelaidan or if he did not understand their import, he received the Court's March 10 warning. The later orders simply reaffirmed what Jelaidan had already been told: if he failed to appear by August 31, the Court would entertain a motion for default judgment. This is also only the last warning in the decade-long series of warnings Jelaidan has received that the Court would respond to misconduct with severe sanctions. As in Guggenheim Cap., LLC v. Birnbaum, the repeated warnings Jelaidan has received, both when he was counseled and uncounseled, permit imposing a default judgment. 722 F.3d 444, 453 (2d Cir. 2013) ("the numerous warnings Birnbaum received—both while represented by counsel and not—were, collectively, sufficient to place him on notice of the pending default judgment").

In sum, for more than a decade, three judges have urged, warned, admonished, or sanctioned Jelaidan without success. Having exhausted lesser sanctions and warned Jelaidan of the consequences of his continued non-compliance, the Court now recommends a default judgment be rendered against him.

## CONCLUSION

The Court recommends that defendant Wael Jelaidan's answer be struck and a default judgment be entered against him for all cases pending in this MDL for which he is named as a party.

Dated: September 27, 2021
       New York, New York

SARAH NETBURN
United States Magistrate Judge

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). These objections shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Federal Rules of Civil Procedure 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Federal Rules of Civil Procedure 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).