**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br><br>ECF Case |
|---|---|

This document relates to:

*Underwriting Members of Lloyd's Syndicate 2, et al., v. Al Rajhi Bank, et al.*, No. 16-cv-07853
*Addesso, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09937
*Aguilar, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09663
*Hodges, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-00117
*Aiken, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-00450
*Charter Oak Fire Insurance Co., et al. v. Al Rajhi Bank, et al.*, No. 17-cv-02651
*Abarca, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03887
*Arrowood Indemnity Co., et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03908
*Abedhajajreh, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-06123
*Muenchener Rueckversicherungs-Gesellschaft Aktiengesellschaft in Muenchen, et al. v. Kingdom of Saudi Arabia, et al.*, Case No. 17-cv-07914
*Abbate, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-08617

# REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DIRECTED TO DEFENDANT AL RAJHI BANK

## Table of Contents

Page

I. LEGAL ARGUMENT....................1

A. The Second Circuit Did Not Limit Jurisdictional Discovery To ARB's Direct Support of So-Called Known Extremists....................1

B. The Requests Seek Information That Is Relevant....................3

C. The Time-Frames Set In The Requests Are Proper....................7

D. ARB's Undue Burden Claims are Deficient and Meritless....................8

E. ARB Has Waived Any Foreign Law Privilege Arguments....................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amidax Trading Group v. S.W.I.F.T. SCRL*,
671 F.3d 140 (2d Cir. 2011) ....... 3, 4

*Carl v. Edwards*,
2017 WL 4271443 (E.D.N.Y. Sept. 25, 2017) ....... 3

*Chemtex. LLC v. St. Anthony Enters.*,
2004 WL 764781 (S.D.N.Y. Apr. 9, 2004) ....... 10

*Compagnie Francaise d'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*,
105 F.R.D. 16 (S.D.N.Y. 1984) ....... 8

*Jackson v. Monin*,
2015 WL 5714243 (W.D.N.Y. Sept. 29, 2015) ....... 10

*Kaplan v. Lebanese Canadian Bank, SAL*,
999 F.3d 842 (2d Cir. 2021) ....... 2, 3, 4, 8

*Lear v. Royal Caribbean Cruises Ltd.*,
2021 WL 1299489 (S.D.N.Y. Apr. 7, 2021) ....... 4

*In re Lloyds Banking Grp., PLC*,
2021 WL 3037388 (S.D.N.Y. July 19, 2021) ....... 10

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) ....... 3

*Precision Med. Grp., LLC v. Blue Matter, LLC*,
2020 WL 7352509 (S.D.N.Y. Dec. 15, 2020) ....... 10

*Siegel v. HSBC Holdings, PLC*,
2018 WL 501610 (S.D.N.Y. Jan. 19, 2018) ....... 8

*Standard Dyeing & Finishing Co. v. Arma Textile Printers Corp.*,
1987 WL 6905 (S.D.N.Y. Feb. 10, 1987) ....... 10

*Strike 3 Holdings, LLC v. Doe*,
2019 WL 78987 (S.D.N.Y. Jan. 2, 2019) ....... 1

*In re Terrorist Attacks on September 11, 2001*,
298 F.Supp.3d 631 (S.D.N.Y. 2018) ....... 5

*In re Terrorist Attacks on September 11* ("*Terrorist Attacks V*")
740 F.Supp.2d 494 (S.D.N.Y. 2010)........................................................................................5

*In re Terrorist Attacks on September 11* ("*Terrorist Attacks VII*")
714 F.3d, 659 (2d Cir. 2013)..................................................................................................6

*United States v. Norris*,
513 Fed. Appx. 57 (2d Cir. 2013) ..........................................................................................5

*United States v. Rutkoske*,
506 F.3d 170 (2d Cir. 2007) ..................................................................................................5

**Other Authorities**

FED. R. CIV. P. 12 ....................................................................................................................10

FED. R. CIV. P. 26 ......................................................................................................................3

The layered objections ARB has raised to plaintiffs' discovery are without merit, and only serve to unmask its true aim to evade discovery altogether.[1] ARB's relevancy objections ignore the Summary Order, Rule 26, and recent controlling Second Circuit decisions. Its undue burden claims are factually dubious and not supported by any competent evidence, and misguided as a matter of law. Finally, ARB has waived any purported claim of privilege under foreign law.

## I. LEGAL ARGUMENT

### A. The Second Circuit Did Not Limit Jurisdictional Discovery To ARB's Direct Support of So-Called Known Extremists

As discussed in Plaintiffs' opening brief, the Second Circuit's Summary Order recognized that the discovery relevant to the personal jurisdiction inquiry encompassed the full spectrum of the support alleged in the FAC, and additional evidence relevant[2] to assessing ARB's knowledge and intent, and its participation in al Qaeda's conspiracy to attack America.

Despite the clarity of the Summary Order, ARB spends three pages "interpreting" it in an effort to strip it of its obvious meaning. First, ARB ignores the Second Circuit's explicit reference to the support ARB provided in collaboration with charity intermediaries, and seizes in isolation on the additional reference to its support to "known extremist operatives." On that basis, ARB implausibly claims that the Second Circuit limited discovery to ARB's direct support to so-called known extremist operatives. Second, ARB attempts to distort the obvious import of the Second Circuit's assessment that the full scope of allegations as to ARB indicated that its participation in al Qaeda's terrorist campaign was "more direct and one step closer to al Qaeda," to claim that the Second

---

[1] In the 143 days since plaintiffs served their requests, ARB has produced 15 pages, a fact that thoroughly refutes its attempts to claims that it has acted in good faith by "identifying potentially relevant, reasonably accessible, non-privileged documents that are responsive to certain requests." ARB b. p.2.

[2] "Relevancy for discovery purposes is broad and "[i]t is well established within this Circuit that the rule of discovery will be satisfied if there is 'any possibility' that the information sought to be obtained may be relevant to the subject matter of the action." *Strike 3 Holdings, LLC v. Doe,* 2019 WL 78987, *2 (S.D.N.Y. Jan. 2, 2019)(quoting *Daval Steel Prods. V. M/V Fakredine,* 951 F.2d 1357, 1376 (2d Cir. 1991)).

Circuit intended to foreclose discovery as to indirect support or assistance channeled through intermediaries intimately tied to both ARB and al Qaeda.

Neither of ARB's novel "interpretations" withstands even modest scrutiny. Its claims that discovery should be limited to dealings with known terrorist operatives ignores the Second Circuit's explicit acknowledgment and endorsement of plaintiffs' claims of "indirect support." And ARB's proposed (ambiguous and narrow) application of that term, in turn, ignores plaintiffs' allegations, explicitly credited by the Second Circuit, that the charities with which it was partnering to support al Qaeda were themselves known by ARB to be "terrorist operatives." ARB's arguments relating to the Second Circuit's finding that the allegations here demonstrated a "more direct" role in al Qaeda's terrorist campaign than those presented in certain earlier cases, meanwhile, fails to acknowledge both the context of that observation and the fact that the Court linked it to the plaintiffs' allegations of ARB's "specific intent." Quite clearly, the Second Circuit's holding recognized that those allegations of intent informed its assessment of the full spectrum of supportive dealings alleged, including support provided indirectly, and indicated that ARB had played a more direct role in al Qaeda's terrorist campaign, distinguishing the present case from earlier claims addressed in *Terrorist Attacks III and Terrorist Attacks VII*.

The Second Circuit's recent decision in *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021) makes these conclusions all the more clear. Indeed, *Kaplan* confirms that a defendant bank may participate in an FTO's terrorist campaign "even when the defendant has given assistance only indirectly," *id*. at 866, where the circumstances indicate an awareness that its support was playing a role in supporting terrorism. *Kaplan* further recognizes that allegations of support must be evaluated holistically, including for purposes of evaluating the defendant's mental state. Thus, the district court is required "to consider all of the complaint's allegations, rather than considering each in isolation, and to accept as true all permissible inferences that could be drawn from the complaint

as a whole." *Id.* at 865. Within this framework, the evaluation of ARB's mental state and of its participation in al Qaeda's conspiracy to attack America necessarily require an assessment of the full range of support alleged, and of all factors evidencing its awareness of its role in supporting terrorism. Plaintiffs' discovery focuses on those precise issues.

ARB also may not avoid discovery by claiming that there is no particularized allegation in the FAC specifically detailing the relationship or transaction in issue. To the contrary, "discovery is not limited to the issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). This dual purpose of verifying known facts and searching for new facts is equally applicable to jurisdictional discovery because "a court should take care to give the plaintiff ample opportunity to *secure* and present evidence relevant to the existence of jurisdiction." *Amidax Trading Group v. S.W.I.F.T. SCRL,* 671 F.3d 140, 149 (2d Cir. 2011)(emphasis added).[3]

**B. The Requests Seek Information That Is Relevant**

Consistent with the above, this Court should analyze the relevancy of plaintiffs' requests by determining if they seek information that has any possibility to prove or disprove an issue of consequence in the litigation, guided by *Kaplan*. Having already established relevancy pursuant to these standards (Op. Br. pp.9-14), Plaintiffs briefly respond to ARB's particular arguments.

**The Da'Wah Organization Requests (Request Nos. 1-8, 35)**. ARB's refusal to respond to these rests on its mistaken views that only direct support to known extremists is relevant, and that the support provided to those organizations does not qualify. *Supra* pp. 1-3.. There likewise is no merit to ARB's effort to evade discovery because the Da'Wah organizations were not designated as terrorist entities until after 9/11. *Kaplan* expressly rejected designation as a precondition for finding

[3] To the extent *Carl v. Edwards,* 2017 WL 4271443 (E.D.N.Y. Sept. 25, 2017), the sole decision cited by ARB, suggests that discovery must be tied to facts pled in the complaint as opposed to a claim or defense, it is an outlier that fails to recognize Rule 26(b)(1)'s mandate that discovery need only be relevant to a claim or defense.

knowledge, holding that "it would defy common sense to hold that such knowledge could be gained in no other way." *Kaplan*, 999 F.3d at 864. Here, plaintiffs offered extensive allegations, credited by the Second Circuit, demonstrating such knowledge.

**The Al Qaeda Operatives Requests (Request Nos. 9-22, 33, 34).** ARB concedes that its ties to al Qaeda Operatives are relevant, but objects to requests relating to key al Qaeda members (including the 9/11 hijackers and Osama bin Laden) unless the FAC specifically identified an account held by the operative at ARB. This argument is premised on the erroneous contention that discovery not directed at verifying facts already pled is an improper fishing expedition. *Supra* p. 3. In fact, these requests are amply supported by the FAC's express allegation that senior al Qaeda figures instructed their operatives to use ARB, FAC 167, and other allegations. *See* Relevancy Chart at p. 6 (Thumairy); pp.5-6 (Bayoumi).

**The U.S. Financial Requests (Request Nos. 23-25).** ARB refuses to search for responsive records to the U.S. Financial Requests, again based on its erroneous position that discovery is permitted only to verify known facts and not to discover new facts, and relying on *Lear v. Royal Caribbean Cruises Ltd.,* 2021 WL 1299489, *12 (S.D.N.Y. Apr. 7, 2021). ARB is wrong about the reach of discovery, *supra* p. 3, and *Lear* does not support its position. The court in *Lear* declined jurisdictional discovery altogether simply because the operative complaint failed to make any showing of personal jurisdiction and the requested discovery would not have changed the outcome. *Id.* at *13. Here, in contrast, plaintiffs have made the prima facie showing of jurisdiction and are entitled to "ample opportunity to *secure* and present evidence relevant to the existence of jurisdiction." *Amidax,* 671 F.3d at 149.(emphasis added) This includes the right to develop facts relating to ARB's, Suleiman al Rajhi's, and Abdul Rahman al Rajhi's contacts with U.S. based al Qaeda support entities, as well as ARB's support for radical causes in the United States. This

discovery is well supported by plaintiffs' allegations that ARB and its principals sought to establish and foster al Qaeda affiliated and pro-jihadist enterprises in the U.S. *See* Relevancy Chart p. 7.

**The Terror Financing Article Requests (Request Nos. 26-32).** These Requests seek information concerning the U.S. government's investigation of ARB's support for al Qaeda both before and after 9/11, and ARB's efforts to continue those activities even after 9/11. Most obviously, these requests run to the very heart of ARB's intimate role in fostering al Qaeda's terrorism, both before and after 9/11. Far from irrelevant, evidence that ARB and its principals sought to sustain the bank's program for support of al Qaeda even after 9/11, and to evade new counter-terrorism measures in the process, speak powerfully to ARB's commitment to al Qaeda's terrorist campaign and intent to foster same. *See United States v. Norris*, 513 Fed. Appx. 57, 60 (2d Cir. 2013); *United States v. Rutkoske*, 506 F.3d 170, 177 (2d Cir. 2007).

**The Golden Chain Requests (Request Nos. 36-38).** Plaintiffs use the term Golden Chain to refer to a select group of al Qaeda's primary fundraisers and patrons, such as people like Wa'el Jelaidan. The Court recognized the relevance of connections to the Golden Chain group in its decision denying Saudi Arabia's motion to dismiss. *See In re Terrorist Attacks*, 298 F.Supp.3d 631, 649 n.11 (S.D.N.Y. 2018). The requests here are relevant to ARB's role in facilitating donations to al Qaeda from its principal patrons.

**The SAAR Network Requests (Request Nos. 39-41).** ARB's claim that the SAAR Network Requests are irrelevant rests on a 2010 ruling that a different complaint failed to state a claim against *certain* of the SAAR Network entities. Beyond the entirely distinct context and pleadings, the 2010 ruling found that claims could proceed as to a SAAR Network principal official, Jamal Barzinji. *See Terrorist Attacks V,* 740 F.Supp.2d 494, 524 (S.D.N.Y. 2010). The ruling supports plaintiffs' entitlement to discovery, as it confirms the Network's connection to terrorism and because the FAC alleges that ARB principals established the SAAR enterprise to support terrorism

(making their roles more significant even than that of Barzinji). In any case, the allegations of ARB's principals' involvement in the SAAR Network were central to the allegations of specific intent, Mot. p. 13; Relevancy Chart pp. 10-11, which the Second Circuit focused on in authorizing discovery.

**The Saleh al Hussayen Requests (Request Nos. 42-44).** ARB's objections here ignore that the Second Circuit drew a direct line between Saleh Al-Hussayen's ties to the 9/11 hijackers and his role at ARB, finding that "his travels to the United States shortly before the September 11, 2001 attacks, as well as his decision to switch hotels *to stay in the same hotel as at least three of the hijackers*, cast his activities at Al Rajhi Bank and his alleged indirect funding of al Qaeda in a different light," and crediting the allegations that he channeled contributions to al Qaeda's support network as a member of ARB's Sharia Board. *See Terrorist Attacks VII,* 714 F.3d, 659, 678 n. 14 (2d Cir. 2013).

**The Terror Finance Investigation Requests (Request Nos. 45-54)** ARB concedes that Requests 47-54 are relevant and that states that it will produce responsive documents, yet after 143 days no responsive documents have been produced. ARB argues that Requests 45 and 46, concerning any investigation or audit relating to criminal or terrorist activity, and ARB accounts sanctioned in the immediate aftermath of 9/11, are irrelevant because they seek information untethered from the 9/11 attacks, an argument that ignores the relevant legal inquiry. The relevant question is whether those materials are relevant to assessing ARB's intent or role in al Qaeda's conspiracy, and the facts alleged and context of the post-9/11 scrutiny of ARB make clear that the inquiries covered by these requests were directed to that very question.

**The Suleiman Al Rajhi Departure Requests (Request No. 55)**. Suleiman Al Rajhi's departure from ARB is relevant to issues of Suleiman Al Rajhi's control over ARB and role in directing ARB's support of al Qaeda, resulting in his removal from the bank under pressure from authorities. Suleiman Al Rajhi's previous dismissal as defendant in prior proceedings in no way precludes this discovery, as the Summary Order explicitly differentiated the allegations in previous

complaints with the allegations of support and intent in the FAC, and directed that discovery proceed in this case based on the FAC's allegations of support and intent.

**The ARB Financial Controls Requests (Request Nos. 56-58)** ARB objects to the Financial Controls Requests, under the theory that they are not relevant to ARB's intent to further terrorism prior to 9/11. To the contrary, ARB's financial controls (or lack thereof) will evidence whether ARB and its principals circumvented ARB's own regulations or international standards to channel support to al Qaeda, or deliberately created a lax system to enable such activities. In addition, the changes made to ARB's financial controls post 9/11 are relevant to determine if the pre 9/11 financial controls were intentionally designed to avoid detecting suspicious activity, and because they evidence the mechanisms used by ARB before 9/11 to deliver support to al Qaeda. These issues all speak to ARB's intent and participation in al Qaeda's conspiracy.

**C. The Time-Frames Set In The Requests Are Proper**

Plaintiffs have specified a December 31, 2004 end date for certain Requests, based on the detailed allegations in the FAC concerning ARB's continued support to al Qaeda support affiliates well past 9/11, the dates of the designations of several of ARB's collaborators (which should have triggered relevant investigations of their accounts), and establishing that terror finance investigations of ARB commenced in earnest in 2003 and were ongoing through at least November of 2004. (Mot. pp. 22-24; Relevancy Chart pp. 12-14). ARB's resistance to this discovery rests solely on the theory that the discovery cut-off set by the Court for Saudi Arabia should control here.

Most obviously, the cut-off date set by the Court for discovery as to the Kingdom pursuant to the FSIA, concerning the particular acts of support at issue in that case, has no bearing on the proper scope of discovery here. ARB is not a sovereign, and the FAC clearly establishes that U.S. and Saudi officials were actively investigating ARB's pre- and post-9/11 links to terrorism through at least November 25, 2004, and that relevant actions such as designations occurred after 2002.

Several of the Requests similarly specify pre-1998 start dates, based on specific allegations in the FAC. ARB instead proposes that plaintiffs should be artificially limited to periods after October 8, 1999, the date of al Qaeda's designation, citing *Siegel v. HSBC Holdings, PLC,* 2018 WL 501610 (S.D.N.Y. Jan. 19, 2018). However, *Siegel* addresses an entirely distinct theory of personal jurisdiction in a completely different context: personal jurisdiction over ARB for a terrorist attack in Jordan based on ARB's unrelated contacts to New York. *Kaplan* squarely rejects the theory of knowledge underlying ARB's attempted reliance on the date of al Qaeda's designation and confirms the full context of ARB's support for al Qaeda is critical in assessing its intent and conspiratorial role.

**D. ARB's Undue Burden Claims are Deficient and Meritless**

The party seeking to avoid discovery has the burden of showing the court specifically how each discovery request is unduly burdensome or oppressive. *See Compagnie Francaise d'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984). An objecting party's burden requires it to articulate the nature of the burden associated with responding to each request individually. *Id.* at 42.

ARB has failed to meet its burden of showing how responding to each individual request is unduly burdensome, and as a result its claim of undue burden should be rejected. ARB's submission of the affidavit of Naif Al Dahmashi does not satisfy ARB's burden of proof because it does nothing more than describe ARB's archaic paper archive system, without actually declaring that any of the requested documents are located exclusively in the paper archives, let alone address, on a request by request basis, that responsive documents are located exclusively in the archives and accessible through no other means. Indeed, the al Dahmashi declaration lacks basic information that would be necessary to evaluate any claim of undue burden, to include: a) whether ARB conducted searches of all other document and ESI repositories; b) what information can be generated via ARB"s computer systems; c) when documents moved from ARB's operational files to

its archives; d) how sensitive documents relating to terrorism financing issues are maintained; e) under what circumstances are documents kept in ARB's operational files or segregated; f) what documents did ARB place on litigation hold after ARB was first named as a defendant in the 9/11 litigation and were any of those documents placed into the paper archives after August of 2002[4]; g) which categories of documents are not routinely transferred to archives because of their importance or a need for retrieval; h) the operation of the O'Neill or other indexing system; and i) whether ARB attempted to use the O'Neill index to locate responsive documents.

ARB's additional declarations from a discovery service provider, meanwhile, rest entirely on the self-serving claims in the ARB employee declaration and are thus inherently defective. And as plaintiffs' expert's responsive declaration makes clear, ARB's discovery service providers fail to consider or address a range of common strategies and options to locate responsive documents without resort to the wholesale scanning and review process ARB interposes in service of efforts to avoid discovery. *See* Declaration of Eric Robinson.

Based on the current record, ARB's undue burden argument is nothing more than a plea that it be completely relieved of its discovery obligations, based on its own unwieldy and disorganized record keeping system. However, a party may not rely on the unwieldy state of its own records as a means to avoid discovery, or as grounds to shift the burden and expense of locating responsive materials within a voluminous archive of poorly indexed documents to the requesting party. *See*

---

[4] For example, documents relating to the post-9/11 investigation into ARB's terror financing should be readily accessible, given both the significance of the documents and fact that ARB was on specific notice from August of 2002 that it was the target of civil litigation involving its support to al Qaeda, and especially given ARB's representation to the Second Circuit in this matter that "starting in August of 2002…. Al Rajhi Bank [was named as a defendant in the 9/11 litigation]" and "without evening waiting to be served with process, Al Rajhi Bank voluntarily appeared in the first case filed to clear its good name of the unfounded claims leveled against it." *In re Terrorist Attacks on September 11*, 18-1201, Doc. 153 pp.3-4). If so, ARB certainly would have set aside in a secure location the sensitive documents relating to terror financing investigations, especially given its obligation to place a hold on relevant documents starting in 2002. To the extent that relevant documents were placed into the archives after August of 2002, an inference arises that ARB did so with the intent to make them inaccessible, to enable it to (preposterously) claim that they cannot be located and produced without spending up to $248,462,000.00 to do so.

*Standard Dyeing & Finishing Co. v. Arma Textile Printers Corp.*, 1987 WL 6905, *2-3 (S.D.N.Y. Feb. 10, 1987); *Chemtex. LLC v. St. Anthony Enters., Inc.*, 2004 WL 764781, *1 (S.D.N.Y. Apr. 9, 2004); *Jackson v. Monin*, 2015 WL 5714243, *5 (W.D.N.Y. Sept. 29, 2015)("[A] party's failure to maintain its documents in a searchable manner does not ordinarily justify its invoking what is, in effect, a self-created burden as an excuse not to produce otherwise relevant documents.") (quoting *Newman & Associates v. J.K. Harris & Co., LLC*, 2005 WL 3610140, *1 (S.D.N.Y. 2005)). That conclusion is especially clear here, given ARB's awareness of the relevance of the requested records to pending and potential claims since at least 2002, and the significant likelihood that its recordkeeping system is inconsistent with international anti-money laundering and counterterrorism financing standards and best practices. *See* Declaration of Professor Jimmy Gurule.[5]

**E. ARB Has Waived Any Foreign Law Privilege Arguments**

Citing to this Court decision in *In re Lloyds Banking Grp., PLC,* 2021 WL 3037388 (S.D.N.Y. July 19, 2021), Plaintiffs warned ARB that it would consider its speculative claims of foreign law privilege waived if it did not substantiate them with supporting affidavits. (Mot. pp. 24-25). ARB is guilty of that precise offense because a "crystalized dispute over the constraints of Saudi law" exists given ARB's failure to produce responsive records.[6]

---

[5] Nor has ARB as the party resisting discovery met its burden under Rule 12(b)(1) of showing that the Requests seek discovery disproportional to the needs of this case because its flawed claims of undue burden fail to counterbalance the relevancy of Requests, the need for the discovery "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Precision Med. Grp., LLC v. Blue Matter, LLC*, 2020 WL 7352509, *1 (S.D.N.Y. Dec. 15, 2020). Moreover, to the extent that the Court even entertains ARB's undue burden and proportionality arguments, those arguments cannot be addressed until the completion of the depositions of Naif Al Dahmashi and a 30(b)(6) records custodian so that the Court can make a decision based on actual and not speculative burden set for in ARB's opposition.

[6] For example, ARB has agreed to produce documents in response to Request Nos. 47-54 (subject to 19 pages of objections which include objections based on foreign law) but has not produced one document in response to these requests. ARB has not divulged why it has not produced the responsive documents even after the passing of 143 days. To the extent the lack of production is due to a claim of privilege, that privilege is waived due to the failure to properly assert it.

Dated: Respectfully submitted,

*/s/ Sean P. Carter*
Stephen A. Cozen, Esq.
Sean P. Carter, Esq.
Elliott R. Feldman, Esq.
Scott Tarbutton, Esq.
COZEN O'CONNOR
1650 Market Street
Suite 2800
Philadelphia, PA 19103
(215) 665-2000

Plaintiffs' Executive Committee on behalf of Plaintiffs