KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

(202) 326-7900

FACSIMILE:
(202) 326-7999

October 8, 2021

*Via ECF*

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

      Re:    *In re Terrorist Attacks on September 11, 2001*, 03-md-1570 (GBD) (SN)

Dear Judge Netburn:

      We write on behalf of Defendant Kingdom of Saudi Arabia ("Saudi Arabia") and Plaintiffs' counsel Kreindler & Kreindler LLP ("Kreindler & Kreindler") concerning Saudi Arabia's letter-motion for Kreindler & Kreindler and John Fawcett to produce materials related to the breach of the FBI and MDL Protective Orders (collectively, "the Protective Orders"). ECF No. 7215.

      Pursuant to the Court's October 7, 2021 Order, ECF No. 7234, counsel for Saudi Arabia and Kreindler & Kreindler have met and conferred regarding Saudi Arabia's motion and accompanying Requests for Production directed to Kreindler & Kreindler. ECF No. 7215-1. Non-Kreindler leadership of the Plaintiffs' Executive Committees ("PECs") also participated in the meet-and-confer discussions.[1]

      Saudi Arabia and Kreindler & Kreindler have reached agreement on many of Saudi Arabia's requests. Specifically, Kreindler & Kreindler has agreed to search for documents that are responsive to Request Nos. 1-4, 7, 9, 11, and 14, and to produce any responsive documents not subject to privilege or work product protections. Saudi Arabia and Kreindler & Kreindler have agreed that Request No. 8 is redundant of Requests Nos. 1 and 2. Kreindler & Kreindler also has agreed to provide a sworn declaration regarding the scope of Mr. Fawcett's responsibilities and a stipulation regarding Mr. Fawcett's access to documents subject to the

---

[1] Mr. Fawcett did not participate in the meet-and-confer and has not contacted Saudi Arabia regarding Saudi Arabia's letter-motion. Counsel for Kreindler & Kreindler understands that Mr. Fawcett is in the process of obtaining counsel.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable Sarah Netburn
October 8, 2021
Page 2

Protective Orders, which Saudi Arabia will treat as satisfying Request Nos. 12 and 13, respectively.

Saudi Arabia and Kreindler & Kreindler are at an impasse: (1) on three of Saudi Arabia's Requests; (2) on whether Kreindler & Kreindler's search for responsive documents will encompass certain personal devices (including phones) of firm attorneys and staff; (3) on the deadline for production; and (4) on production and inspection of Mr. Fawcett's laptop and other personal devices. Their respective positions on these issues are set forth below.

**Request No. 5. All communications You had with Michael Isikoff or any member of the press relating to any confidential deposition taken in this case. The relevant time period for this category is July 1, 2019, to the present.**

Saudi Arabia's position: Communications between Kreindler & Kreindler and members of the press about other confidential depositions in this case are relevant to assessing whether Kreindler & Kreindler has a pattern and practice of leaking confidential information about this case as part of its litigation strategy. There is reason to believe that such a pattern and practice exists. Before the current violation of the Protective Orders, attorneys or consultants from Kreindler & Kreindler were responsible for at least one adjudicated leak of confidential material to the press in violation of the MDL Protective Order, *see* ECF No. 6990 at 2 (discussing April 2017 hearing concerning *Politico* leak); and at least one speech that disclosed information the FBI then considered confidential, *see id.* (discussing James Kreindler's October 2019 Dartmouth speech). In addition, in or around January 2020, Kreindler & Kreindler investigator Daniel Gonzalez gave a lengthy interview to reporter Tim Golden that resulted in an article that contains extensive discussion of the FBI's investigation and interviews of various witnesses. *See* ECF No. 5905 at 2 & n.2 (discussing article).[2]

Now, a Kreindler & Kreindler staff researcher has claimed that he leaked the Al Jarrah deposition transcript to Mr. Isikoff around the same time that James Kreindler publicly complained to Mr. Isikoff about the Protective Orders, publicly described to Mr. Isikoff the confidential depositions in this case, and publicly stated to Mr. Isikoff that the information available in the case could lead Congress to declare war against Saudi Arabia, among other inflammatory and improper remarks. *See* ECF No. 6990 at 2 (describing James Kreindler's July 10, 2021 appearance on Mr. Isikoff's podcast *Conspiracyland*). Evidence of other leaks by Kreindler & Kreindler to members of the press would support the position that Mr. Fawcett's actions – if in fact he provided the confidential transcript to Mr. Isikoff – were not those of a

---

[2] *See* Tim Golden & Sebastian Rotella, *The Saudi Connection: Inside the 9/11 Case That Divided the F.B.I.*, N.Y. Times (Jan. 23, 2020), https://www.nytimes.com/2020/01/23/magazine/9-11-saudi-arabia-fbi.html. In addition to quoting Gonzalez extensively by name, the article contains several references to anonymous statements concerning confidential documents or interviews by "people familiar with" those documents or interviews. *Id.*

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable Sarah Netburn
October 8, 2021
Page 3

rogue employee, but instead were actions consistent with the wishes of, if not authorized by, his Kreindler supervisors.  Alternatively, evidence concerning other leaks may also be relevant to the reasonableness of Kreindler & Kreindler's supervision of its employees and of the review or inquiry it claims to have performed before submitting sworn statements to the Court on August 16, 2021 claiming that it was not responsible for the leak.

During the meet-and-confer, counsel for Kreindler & Kreindler requested clarification regarding the scope of this Request.  Counsel for Saudi Arabia proposed that counsel for Kreindler & Kreindler (i) ask attorneys and staff at Kreindler & Kreindler to identify the press members with whom they have discussed the case against Saudi Arabia and then (ii) search for deposition-related communications with those press members.  Counsel for Saudi Arabia offered to provide a complete list of the confidential depositions taken in the case against Saudi Arabia.

Kreindler & Kreindler's position:  Kreindler & Kreindler objects to this request as overbroad and unduly burdensome. The record to date is clear that the leak that is the subject of this inquiry was an isolated incident. *See, e.g.* ECF No.  7147 and exhibits thereto.  There is no basis from the existing record to support a fishing expedition into the confidential files of counsel in this case, which files indisputably contain extensive privileged and protected materials. The Kingdom's attempt to broaden the inquiry to the firm's dealings with other confidential material and other members of the press, and to extend the relevant time frame to two years prior to the current leak, is unfounded; if there were a press article reflecting leaked information and any evidence linking that leak to Kreindler & Kreindler, counsel for the Kingdom would surely have brought it to the Court's attention in support of this extraordinary attempt for access to their adversaries' files. There is none and this request should be denied as irrelevant and inappropriate. Kreindler & Kreindler reserves the right to supplement this response as counsel has an opportunity to get up to speed, consistent with the Court's memo endorsement of earlier today. ECF No. 7248.

**Request No. 6.  All phone records reflecting Your communications with Michael Isikoff.**[3]

Saudi Arabia's position:  The Court has already determined that oral communications between Kreindler & Kreindler and Mr. Isikoff are relevant to its inquiry into whether Kreindler & Kreindler bears responsibility for the leak of the Al Jarrah deposition transcript.  In response to the deficient declarations submitted by four attorneys from Kreindler & Kreindler on August 16, 2021, ECF No. 7016, the Court directed Kreindler & Kreindler to submit supplemental declarations that, among other things, had to "identify all communications with Michael Isikoff or anyone acting on his behalf, whether *oral* or written, from June 1, 2021, to August 1, 2021," ECF No. 7082 at 1 (emphasis added).  And, in the supplemental declarations submitted by Kreindler & Kreindler in response to that directive, numerous attorneys for Kreindler &

---

[3] Saudi Arabia's Requests provide that, "[u]nless otherwise stated, the relevant time period is from June 1, 2021, to October 5, 2021."  ECF No. 7215-1 at 3.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable Sarah Netburn
October 8, 2021
Page 4

Kreindler made representations to the Court regarding their phone calls (or lack thereof) with Mr. Isikoff. *See, e.g.*, ECF Nos. 7147-1 (Declaration of James Kreindler) at 2-3 (recalling two phone calls), 7147-2 (Declaration of Andrew Maloney) at 3 (stating that he had no communications at all with Mr. Isikoff), 7147-3 (Declaration of Megan Wolfe Benett) at 2 (same), 7147-4 (Declaration of Steven R. Pounian) at 2 (same). Those representations warrant scrutiny, particularly in light of several omissions from them that Saudi Arabia has already pointed out to the Court. *See* ECF No. 7157 at 3 (discussing omissions from the first John Fawcett Declaration); *id* at 4 (discussing omissions from the James Kreindler Declaration). Moreover, given the admitted destruction of relevant written evidence, *see* ECF No. 7162-2, phone records are critical objective evidence of the circumstances surrounding Kreindler & Kreindler's leak.

Kreindler & Kreindler's position: Kreindler & Kreindler objects to this request as overbroad and unduly burdensome. Kreindler & Kreindler has already agreed to produce call logs from the personal devices of the Kreindler & Kreindler witnesses and any non-privileged materials from their personal devices responsive to requests #1 and #2. The request for firm call logs is excessive and unlikely to produce additional information not already covered by other requests and material agreed to be produced. The burden of review and redaction is disproportionate to the potential that any information relevant to the scope of this inquiry would be uncovered. Kreindler & Kreindler reserves the right to supplement this response as counsel has an opportunity to get up to speed, consistent with the Court's memo endorsement of earlier today. ECF No. 7248.

**Request No. 10. Documents sufficient to show the compensation (including any benefits) You paid, provided, or agreed to provide to John Fawcett. The relevant time period for this category is January 1, 2018, to the present.**

Saudi Arabia's position: Kreindler & Kreindler has agreed to produce the relevant tax forms for Mr. Fawcett, but has taken the position that the actual amount of compensation should be redacted from those forms for personal privacy concerns. The compensation and benefits that Kreindler & Kreindler provided to Mr. Fawcett are relevant to determining the scope of Mr. Fawcett's relationship with Kreindler & Kreindler and whether he was an employee. Courts examine "all aspects of the arrangement between the parties" in evaluating whether an employment relationship exists. *Araneo v. Town Bd. for Town of Clarkstown*, 865 N.Y.S.2d 281, 283 (App. Div. 2d Dep't 2008). This includes details regarding compensation, such as "the method of compensation" and "whether the individual is paid on commission," *Quality Health Care Mgmt. Inc. v. Kobakhidze*, 977 N.Y.S.2d 568, 573 (Sup. Ct. 2013), and "whether Social Security and other taxes are withheld from such payments," *Greene v. Osterhoudt*, 673 N.Y.S.2d 272, 274 (App. Div. 3d Dep't 1998); *see Gfeller v. Russo*, 846 N.Y.S.2d 501, 503 (App. Div. 4th Dep't 2007) (concluding that the individual defendant was an independent contractor of the corporate defendant after pointing to evidence that the individual "was paid an agreed-upon price per vehicle that was repossessed" and that the company "did not withhold Social Security or other taxes from . . . payments" to the individual); *Harjes v. Parisio*, 766 N.Y.S.2d 270, 271-72

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable Sarah Netburn
October 8, 2021
Page 5

(App. Div. 3d Dep't 2003) (describing the details of an individual defendant's billing practices, including the precise dollar figures used to calculate amounts owed, in concluding that the individual was not the employee of a corporate defendant). Moreover, Mr. Fawcett's compensation and benefits are relevant to assessing whether Mr. Fawcett has a motive to lie about Kreindler & Kreindler's involvement in, or knowledge of, his actions related to the leak. Indeed, Kreindler & Kreindler's submissions to the Court seem to suggest that Mr. Fawcett remains of the firm's payroll and that Kreindler & Kreindler's only action against him has been to restrict his access to confidential materials. *See* ECF No. 7147 at 1; *see also* ECF No. 7162 at 3 (defending Mr. Fawcett). Any confidentiality concerns are adequately addressed by producing the documents subject to the MDL Protective Order.

Kreindler & Kreindler's position: The Kingdom's request as drafted is unreasonably overbroad, burdensome and unfairly invades Mr. Fawcett's legitimate privacy concerns relating to his compensation. Subject to objections for attorney work product, attorney-client privilege and privacy, Kreindler & Kreindler has already agreed to produce documents sufficient to show the nature of Mr. Fawcett's compensation (including whether he is a 1099 or W2 worker) and to provide a statement describing his responsibilities at a high level that will not reveal work product. Kreindler & Kreindler will also produce certain non-privileged exemplars further reflecting the nature of compensation. Anything further is irrelevant to the scope of this inquiry or relevant remedies and appears to be designed only to invade the realm of work product. Kreindler & Kreindler reserves the right to supplement this response as counsel has an opportunity to get up to speed, consistent with the Court's memo endorsement of earlier today. ECF No. 7248.

### Search of Personal Devices

Saudi Arabia's position: It is extremely likely that critical documents reside on the personal devices of Kreindler & Kreindler's attorneys and staff. Mr. Fawcett has already represented that the actual leak came from a personal device and personal email. In addition, many of the relevant communications sent by James Kreindler provided to the Court were sent from his iPhone, as indicated on the messages themselves. *See* ECF No. 7147-6 at 10-12, 25, 27. Saudi Arabia has agreed to limit the searches of Kreindler & Kreindler personal devices to: (1) the named witnesses who will testify on October 21, 2021 and any other individual that Kreindler & Kreindler knows to have communicated with Mr. Isikoff (such as Catherine Hunt, who appeared on the same July 10 podcast with Mr. Isikoff and who also attended the Jarrah deposition on behalf of Kreinder & Kreindler[4]); and (2) that the search will include any documents (*e.g.*, personal email, text messages, iMessage, WhatsApp, phone history, voicemail) relating to communications with Mr. Isikoff (*i.e.*, both communications with Mr. Isikoff and documents relating to such communications), to the leak of the Al Jarrah deposition transcript, to

---

[4] *See* ECF No. 7157, Ex. A.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable Sarah Netburn
October 8, 2021
Page 6

the investigation of that leak, or to any submissions that Kreindler & Kreindler made to the Court about the leak.

<u>Kreindler & Kreindler's position</u>:  Kreindler & Kreindler LLP will search for responsive documents on the firm's servers. Kreindler & Kreindler LLP will also search the personal devices of the named witnesses for documents responsive to document requests #1 and #2, including text messages and other messaging services, if any, and for records of calls to/from Mr. Isikoff during the relevant time period. Kreindler & Kreindler LLP objects to Saudi Arabia's requests to search the personal devices of all attorneys and staff as overbroad, unduly burdensome and disproportionate to the scope of the Court's inquiry.

**Deadline for Production**

Kreindler & Kreindler has confirmed that it will produce documents and a privilege log that will comply with the requirements of Federal Rule of Civil Procedure 26(b)(5).[5]  The parties have not been able to agree on a deadline for production.

---

[5] During the meet-and-confer, and in follow-up communications, the PECs noted that certain of the Kingdom's requests would encompass privileged communications and information of non-Kreindler PECs' firms and counsel, *see* ECF No. 2644 (finding communications among plaintiffs' counsel in MDL 1570 are privileged and need not be included on privilege logs) and agreed with the proposal of Kreindler & Kreindler that PEC-privileged materials would be withheld from production, but agreed they may be listed on a privilege log, provided that (1) the PECs are provided copies of all PECs' documents and information gathered in the searches by Kreindler & Kreindler at least two days prior to their inclusion on any privilege log; and (2) the PECs are provided with the proposed language and information proposed to be included on a privilege log related to any PECs' communications, work product, or information, at least two days before production of any privilege log.  Saudi Arabia is amenable to the PECs' proposal, provided that (1) any privilege review by the PEC conduct does not delay the production of documents or of a privilege log; and (2) any non-privileged, responsive documents are produced. Further, Saudi Arabia reserves the right to challenge any privilege assertion.  In response to the Kingdom's qualifications, the PECs have expressed the views that (1) the process to address assertions of privilege is not a delay, and (2) the PECs' communications, information, and work product collected in the Kreindler searches are by definition privileged, consistent with the Courts' existing determination at ECF No. 2644, and disputes on that front will be resolved in the context of any necessary privilege disputes.  The PECs also expressed the view that similar protections are necessary to protect information that may be ordered to be produced from John Fawcett.  Kreindler & Kreindler objects to the other PECs' request to have any additional review period.  Kreindler & Kreindler undertakes to protect all privileges and work product, including those common to all PECs, and the additional level of review is redundant.  In any event, Kreindler & Kreindler cannot accelerate its already expedited production to accommodate any secondary review period.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable Sarah Netburn
October 8, 2021
Page 7

    Saudi Arabia's position:  The production of documents and the provision of a privilege log should be provided by no later than October 15, 2021, so that Saudi Arabia can review these documents and use them at the October 21, 2021 hearing and challenge any assertion of privilege, as appropriate.

    Kreindler & Kreindler's position:  Kreindler & Kreindler is unable to confirm that it can make a full production and provide a privilege log by October 15, 2021.  The document requests are broad, and the privilege and work product review will be cumbersome, including the privilege and work product review for protection of other plaintiff's executive committee firms and lawyers which may reside within the universe of responsive documents.  In addition, we understand that the other PECs have made a request that they furnished all materials two (2) days prior to production which obviously places an additional timing burden on Kreindler & Kreindler.  Kreindler & Kreindler will make every effort to make the full production as expeditiously as possible and undertakes to update counsel for Saudi Arabia by October 13 with an estimate of when the production can be made.

**Production of Mr. Fawcett's Laptop and Personal Devices**

    Saudi Arabia's position:  Saudi Arabia respectfully requests that the Court lift the stay of its order directing Mr. Fawcett to produce the laptop he used to violate the Protective Orders.  *See* ECF No. 7167.  Saudi Arabia further requests that Mr. Fawcett produce any other device, including the phone that he used to contact or message Mr. Isikoff so that it and his laptop may be forensically evaluated by a neutral third party.  Given the representations that Mr. Fawcett have made to the Court that he destroyed relevant evidence, including communications with Mr. Isikoff, this forensic evaluation is necessary to understand his conduct and any directions provided to him by Kreindler & Kreindler.

    Kreindler & Kreindler's position:  Kreindler & Kreindler objects to this request.  Kreindler & Kreindler agrees with the Court that the fulsome production it is making obviates the need for Mr. Fawcett's laptop to be produced.  Kreindler & Kreindler also notes that Mr. Fawcett's laptop likely contains significant work product and privileged material such that any investigation of its contents would have to be subject to an extraordinarily burdensome process in order to avoid tainting the Court or others by inadvertent access to information protected by attorney-client privilege or the attorney work product doctrine.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable Sarah Netburn
October 8, 2021
Page 8

                Respectfully submitted,

                /s/ *Michael K. Kellogg*

                Michael K. Kellogg
                *Counsel for the Kingdom of Saudi Arabia*

                /s/ *Emily Kirsch*

                Emily Kirsch
                *Counsel for Kreindler & Kreindler LLP*

cc:  All MDL Counsel of Record (via ECF)