

**EMILY KIRSCH**
150 E. 58TH STREET 22ND FLOOR
NEW YORK, NY 10155
O (212) 832-0170
M (917) 744-2888
EMILY.KIRSCH@KIRSCHNIEHAUS.COM
KIRSCHNIEHAUS.COM

October 12, 2021

**VIA ECF**
The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

Re:   *In re Terrorist Attacks on September 11, 2001*, 03-md-1570 (GBD) (SN)

Dear Judge Netburn:

This firm represents Kreindler & Kreindler, LLP ("K&K") in connection with the October 21, 2021 hearing concerning the recent leak of confidential information (the "Hearing"). While K&K again notes its regret that the leak occurred, the firm is confident that the Hearing will show that K&K did not encourage a breach of the protective orders in this case, nor did they have any reason to expect that the consultant was behind the leak.

As set forth in the October 8, 2021 joint letter filed by the Kingdom of Saudi Arabia and K&K (the "Joint Letter"), K&K has agreed to voluntarily produce nearly all the documents requested by the Kingdom in its October 6, 2021 letter motion seeking discovery (the "Discovery Motion"). *See* ECF No. 7512, ECF No. 7152. We submit this letter in further support of our opposition to the only three remaining disputed requests, which are unreasonably overbroad and irrelevant to the Court's inquiry. Moreover, discovery produced pursuant to the disputed requests would have the purpose and effect of allowing the Kingdom to impermissibly access protected work product and privileged material of K&K and its clients, and greatly – and unduly – prejudice the 9/11 Families without any showing that K&K expressly or tacitly encouraged or facilitated the breach.

**The Kingdom Has Overreached in its Requests for Discovery**

Although K&K has voluntarily agreed to make a production, we note that it is far from clear that any discovery at all is required. In its Discovery Motion, the Kingdom incorrectly asserts that "courts have routinely ordered appropriate discovery" once a protective order breach has occurred, *citing CEATS, Inc. v. TicketNetwork, Inc.,* 2*:*15-cv-01470-JRG ECF No. 371 (E.D.Tex. May 14, 2019) and *Apple Inc. v. Samsung Elecs. Co.,* 2013 U.S.Dist. Lexis 188904 (N.D.Cal. October 2, 2013). Putting aside the fact that neither case is from the Second Circuit, let alone this District, discovery was ordered in both these cases only *after* the courts held hearings and determined that the information provided was insufficient to determine the extent of the breach. Accordingly, these cases are inapposite to the current situation, and more broadly, do not show that pre-hearing discovery is "commonplace," or "routine" in cases of protective order breaches.

**KIRSCH & NIEHAUS**

The Kingdom also wrongly asserts that "attorney work product protections cannot shield these documents from disclosure." While we are pleased that the Kingdom has quickly backed away from this incorrect, overreaching position,[1] the statement nevertheless warrants a response. None of the cases cited by the Kingdom (again, which do not originate in this District) stands for the proposition that a breach of a confidentiality order, standing alone, vitiates all document protections. *See, e.g., Drummond Co. v. Conrad & Scherer, LLP,* 885 F.3d 1324, 1337 (11th Cir. 2018) (party seeking disclosure of protected documents must first prove attorney misconduct and then must present the documents for *in camera* review; after review, only communications made in furtherance of the misconduct will be produced); *Moody v. IRS,* 654 F.2d 795, 800 (D.C.Cir. 1981) (even where the party seeking disclosure of protected information shows attorney engaged in crime or fraud, the court will maintain document protections unless the party seeking disclosure shows its interest outweighs the client's legitimate interest in secrecy).

**The Court Should Reject the Kingdom's Attempt to Draw A Link Between Kreindler & Kreindler's Media Presence With This Isolated and Unique Incident.**

The Kingdom justifies its Request No. 5 by stating that "communications between Kreindler & Kreindler and members of the press about confidential depositions in this case are relevant to assessing whether Kreindler & Kreindler has a pattern and practice of leaking confidential information about this case as part of its litigation strategy." This allegation is wholly speculative and unfounded.

There is no prohibition on communications with the press generally in this case of public importance. *See, e.g.,* ECF No. 3530. The Kingdom draws no connection between Mr. Fawcett's unique, unauthorized leak and K&K's permitted communications with the press. The Kingdom cites to three public statements – all public, transparent, and well-known to the Kingdom and to the Court; but there is no rational link to be drawn between these three public statements and the current unique, unauthorized leak. Specifically, the three examples cited by the Kingdom do not suggest any "pattern and practice of leaking confidentiality."

- With respect to the Politico article in 2017, no confidential information was leaked. To the contrary, it was established only that a publicly available phone number may have been obtained from a confidential document. There is no dispute, however, that the phone number could easily have been obtained from publicly available information, that no harm was visited, and that the phone number was not information that needed protection. *See,* ECF No. 3619 ("I don't believe that the specific contents were, in fact, disclosed; it was more the light in which the documents were presented that was inappropriate."). The Kingdom's attempt to suggest that anything more serious occurred is unfounded.

- With respect to Mr. Kreindler's October 2019 Dartmouth speech, again, no confidential information was leaked. As Mr. Kreindler stated in a November 11, 2019 under seal letter

---

[1] In the Joint Letter, the Kingdom readily concedes that K&K's production will be subject to attorney-client privilege and attorney work product protections.

**KIRSCH & NIEHAUS**

- to the Court, the information that a "high ranking Saudi official" was the person who "tasked" Omar al Bayoumi and Fahad al Thumairy came from the public portions of the 2012 FBI Summary Report and K&K's own investigation, not from protected FBI information. Indeed, as reflected in Judge Daniels' March 2018 decision allowing jurisdictional discovery, Plaintiffs offered proof that a "more senior" Embassy official directed Bayoumi and Thumairy. *In re: Terrorist Attacks on September 11, 2001*, 298 F.Supp.3d 631, 650-51 (S.D.N.Y. 2018) ("Plaintiffs claim that Thumairy and Bayoumi were directed by someone within the Saudi Embassy in Washington, D.C. to help Hazmi and Mihdhar. . ."). This Court was presented with the facts and chose not to pursue the matter further.

- Lastly, with respect to the January 23, 2020 New York Times article, there is once again no evidence or finding that confidential information was leaked by Kreindler & Kreindler. The independent reporting and interviews conducted by ProPublica reporters Tim Golden and Sebastian Rotella, is demonstrated throughout the article itself, such as a reference to the then-classified name of the FBI investigation ("Operation Encore"), made at a time when K&K had no documents or information from the FBI that would have revealed that name. The Kingdom wrongly seeks to create an impression that there is evidence that K&K "leaked" information, by citing their own letter to the Court (ECF No. 5905), a letter which includes no facts or support for the unfounded allegation that that article was a result of any improper leak.

There is, in short, no evidence that K&K supplied confidential information to the press in any of these three incidents and likewise no reasonable argument that these three instances over the past four years should justify the broad inquiry the Kingdom seeks.

With respect to Mr. Fawcett, the Kingdom also overreaches. Request No. 10 seeks "documents sufficient to show the compensation (including any benefits) [K&K] paid, provided, or agreed to provide John Fawcett." In response, K&K is producing documents reflecting his status (he is a 1099 contractor), an exemplar of documents that will further reflect the nature of his compensation (hourly billing) and a declaration that will describe his role and responsibilities at the firm. The Kingdom has failed to indicate what information is responsive to this request beyond what K&K has agreed to produce. The cases cited in the Joint Letter do not explain why anything more is relevant to the Court's inquiry. In fact, the Kingdom has failed to explain how any legitimate purpose could be served by accessing the personal laptop of a fact researcher for plaintiff's counsel where that researcher has been instrumental in building the case against the Kingdom. Indeed, the only additional case-related information such a search would reveal would be protected work-product that K&K has developed while investigating and prosecuting the case against the Kingdom. To this end, we join in the letter submitted by Mr. Fawcett. ECF No. 7253.

**KIRSCH & NIEHAUS**

**Conclusion**

When viewed in context, the overreaching legal and factual positions taken by the Kingdom regarding discovery do not reflect a proportionate and reasonable response to Mr. Fawcett's breach. Rather, the Kingdom's position appears to be more of a disguised attempt to leverage this unfortunate incident into an opportunity to access counsel's protected work product and for the Kingdom to gain an unfair advantage resulting in undue prejudice to the 9/11 Families. The discovery that K&K has voluntarily agreed to produce will sufficiently allow the Kingdom to explore questions surrounding Mr. Fawcett's breach, and will allow the Court to assess the accuracy of the statements set forth in the K&K declarations without impermissibly allowing the Kingdom access to work-product in this ongoing litigation against it.

Respectfully Submitted,

_____*/s/ Emily Kirsch*_____
Emily Bab Kirsch