KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

October 13, 2021

*Via ECF*

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

      Re:    *In re Terrorist Attacks on September 11, 2001*, 03-md-1570 (GBD) (SN)

Dear Judge Netburn:

      I write on behalf of Defendant Kingdom of Saudi Arabia ("Saudi Arabia") in further support of Saudi Arabia's letter-motion for an order directing Kreindler & Kreindler LLP ("Kreindler & Kreindler") to produce documents, ECF No. 7215; and in reply to the letter-opposition submitted yesterday by Kreindler & Kreindler, ECF No. 7255.  That opposition abandons the firm's previous apologies.  *See* ECF No. 7147, at 1 ("very sorry"); ECF No. 7162, at 1 ("genuinely sorry").  Kreindler & Kreindler now attempts to minimize its belatedly admitted violation of the Court's protective orders as an "[i]solated and [u]nique [i]ncident."  ECF No. 7255, at 2 (boldface omitted).  Facts already before the Court show that the label should be tested, not taken at face value.  The targeted discovery that Saudi Arabia has sought, after narrowing its requests in a good-faith attempt to reach agreement, will do so.

      **1.**      As an initial matter, Kreindler & Kreindler falsely states (at 2) that Saudi Arabia has "backed away" from its position that the documents sought are not subject to work-product protection and "concedes that K&K's production will be subject to attorney-client privilege and attorney work product protections."  Saudi Arabia has conceded no such thing.  In its discussions with counsel and in the joint letter, Saudi Arabia expressly reserved objections to privilege and agreed only to raise them after Kreindler & Kreindler provides a privilege log.[1]

      **2.**      When it addresses the merits, Kreindler & Kreindler errs in arguing (at 2) that the attorney-misconduct exception to the work-product doctrine does not apply because – it claims – this case involves "a breach of a confidentiality order, standing alone."  The record already

---

[1] *See* ECF No. 7251, at 7 ("[A] privilege log should be provided by no later than October 15, 2021, so that Saudi Arabia can . . . challenge any assertion of privilege, as appropriate."); *see also id.* at 6 n.5 ( "Saudi Arabia reserves the right to challenge any privilege assertion").

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
October 13, 2021
Page 2

shows (1) a willful violation of two protective orders by a long-time firm investigator, *see* ECF Nos. 7147, 7162; (2) destruction of documents to hide that violation, *see* ECF No. 7162-2; (3) false statements to the Court denying the violation, *see* ECF No. 6988, now claimed to be innocent errors; (4) failures to comply with other orders directing an investigation, *see* ECF No. 7157; and (5) circumstantial evidence linking senior partner James Kreindler personally to the violation, *see* ECF No. 7134, at 4, though he now denies knowledge of it. The breach here does not "stand[ ] alone." It is surrounded by facts that establish serious misconduct.

      To be sure, Kreindler & Kreindler should have a hearing on its claim (at 2) that John Fawcett's actions were "unauthorized." Perhaps it will persuade the Court that Fawcett was merely a "consultant," ECF No. 7147; that none of its attorneys authorized or encouraged his actions; and that none knew or should have known of those actions when they made false denials to the Court. But the function of the attorney-misconduct exception to the work-product doctrine, *see* ECF No. 7215 (collecting authorities), is to ensure that such defenses do not pass scrutiny merely because no one sees the evidence. Saudi Arabia looks forward to addressing this matter further after Kreindler & Kreindler has produced a privilege log.

      **3.**      Kreindler & Kreindler likewise fails to show (at 2) that its violation of the protective orders was "unique." Each incident mentioned in Saudi Arabia's previous letter supports inquiry into whether the current violation was part of a pattern and practice of conduct.

      **a.**      As to the 2017 *Politico* article, Kreindler & Kreindler falsely states (at 2) that "no confidential information was leaked," contrary to the Court's express finding on the record. *See* ECF No. 3619, at 12:20-22 ("I do believe that that was information that was confidential and you were not entitled to disclose the source of the information."); *id.* at 9:6-7 ("I do find, Mr. Kreindler, that this was a breach of the confidentiality requirement."). Kreindler & Kreindler also omits the Court's statements that it had a "hard time believing" James Kreindler's in-court statements about the origin of the article, *id.* at 9:17, and the Court's admonition not only to counsel generally but also to "Mr. Kreindler" by name that he should "be exceedingly discreet" in the future, *id.* at 9:24-25. Further, it overlooks that James Kreindler attributed the improper conversation with the *Poltico* reporter there, like the leak to Michael Isikoff here, to "John Fawcett, our investigator," *id.* at 3:23-24; *see also id.* at 4:6-5:20, 6:10-22 (further discussions of conversations between "John" and the reporter).

      **b.**      As to the 2019 Dartmouth speech, James Kreindler, though claiming to be bound by a "disgusting protective orders imposed upon us by the Justice Department with the blessing of the Court," said that the individual named as the third main subject of the 2012 FBI Summary Report was a "high-ranking official in the Saudi Embassy."[2] The identity of that subject was then confidential. Kreindler & Kreindler now claims (at 3) that the information in the speech

---

[2] Dartmouth College, *Saudi Arabia's Role in 9/11 and Why the U.S. Government has Kept it Hidden*, at 17:03-28, YouTube (Jan. 2, 2020), https://www.youtube.com/watch?v=6nnz0YRy6So.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable Sarah Netburn
October 13, 2021
Page 3

"came from the public portions of the 2012 FBI summary report and [its] own investigation." But Kreindler said at the time that he "kn[e]w" the "name" of the "official" but "can't tell my clients"[3] – disclosing, or purporting to disclose, that the still-protected information confirmed his "own investigation." And the Court, though not finding a violation, again warned "everybody to be operating, at counsels' table, with heightened sensitivity." ECF No. 5334, at 36:6-8.

      **c.**      As to the 2020 *New York Times / ProPublica* article, Kreindler & Kreindler fails to address the point that the primary named source for the article was Daniel Gonzalez – a former FBI agent who works for Kreindler & Kreindler as an "investigator," the same job title the firm gave Fawcett.[4] The firm's assertion (at 3) that it had no "documents or information from the FBI" that would have revealed the "then-classified name of the FBI investigation" is not credible. Gonzalez knew because he worked on the investigation; Gonzalez talked to the reporters who wrote the article; and Gonzalez, like Fawcett, worked for Kreindler & Kreindler.

      Taken together, this past conduct suggests that what Kreindler & Kreindler calls (at 2) its "[m]edia [p]resence" (boldface omitted) has repeatedly involved (1) personal statements by James Kreindler that disparage the protective orders and reveal, or purport to reveal, protected information; and (2) contacts by Kreindler & Kreindler "investigators," like Fawcett and Gonzalez, with reporters who publish articles that reveal confidential information. It is reasonable to ask whether Kreindler & Kreindler has had other communications with reporters about confidential evidence, and what such communications disclosed. Limiting the inquiry to discussions "about confidential depositions," as Saudi Arabia has proposed, should remove breadth concerns. So should limiting it to a two-year period beginning in July 2019, just after the first confidential depositions involving Saudi Arabia's protected information: the King Fahad Mosque depositions. The list of communications should not be long. If it is, that itself warrants inquiry.

      **4.**      Kreindler & Kreindler's denial (at 3) that any "legitimate purpose could be served by accessing" Fawcett's "personal laptop" warrants no lengthy response. The Court ordered the laptop produced, *see* ECF No. 7167, at 2, because Fawcett had stated under oath that he had used the laptop to send confidential documents to Isikoff and then destroyed those documents as well as the email evidence. The details and scope of a forensic review of the laptop can be briefed after the parties meet and confer. The need for review is not open to reasonable dispute.

---

      [3] *Id.*

      [4] Gonzalez has identified himself as having worked since 2018 as an "Investigator for the law firm of Kreindler & Kreindler LLP" in a declaration that contains confidential information, and has called his "involvement" a "matter of public record." Saudi Arabia is not submitting the declaration to avoid an unnecessary sealed filing, but can do so upon request.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
October 13, 2021
Page 4

          Respectfully submitted,

          /s/ *Michael K. Kellogg*

          Michael K. Kellogg
          *Counsel for the Kingdom of Saudi Arabia*

cc:    All MDL Counsel of Record (via ECF)