KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

(202) 326-7900

FACSIMILE:
(202) 326-7999

October 18, 2021

*Via ECF*

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

   Re: *In re Terrorist Attacks on September 11, 2001*, 03-md-1570 (GBD) (SN)

Dear Judge Netburn:

  We write on behalf of Defendant Kingdom of Saudi Arabia ("Saudi Arabia") and non-party John Fawcett regarding: (1) Saudi Arabia's Requests for Production directed at Mr. Fawcett, *see* ECF No. 7215-2 (the "Requests"); and (2) the proposed search protocol for Mr. Fawcett's laptop and the personal device that Mr. Fawcett used to communicate with Michael Isikoff of Yahoo! News.

  Saudi Arabia and Mr. Fawcett have met and conferred regarding Saudi Arabia's Requests and proposed search protocol. Plaintiffs' counsel Kreindler & Kreindler LLP ("Kreindler & Kreindler" or "Kreindler Firm") and non-Kreindler leadership of the Plaintiffs' Executive Committees ("PECs") also participated in the meet-and-confer discussions. Mr. Fawcett joins in this letter.

  Counsel for Kreindler & Kreindler has added its position where appropriate. Specifically, Kreindler & Kreindler has an interest in protecting information and material that is subject to the attorney-client privilege belonging to its clients, the 9/11 Families, as well as information and material that is covered by the attorney work product doctrine, including that which is subject to common interest privilege with the PECs. Kreindler & Kreindler has added specific positions where appropriate, but in no event shall be deemed to have waived any of the above protections and specifically reserves its rights to assert hose protections when and as necessary. In addition, the PECs have inserted a statement of their limited position at the end of the letter.

**I. Saudi Arabia's Requests for Production**

  Saudi Arabia and Mr. Fawcett have reached agreement on a number of Saudi Arabia's Requests, which were submitted to the Court on October 6 (ECF No. 7215-02). Specifically, Mr. Fawcett has agreed to search for documents and communications responsive to Request Nos. 1,

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable Sarah Netburn
October 18, 2021
Page 2

2, 7, and 13, and to produce any responsive documents not subject to privilege or work-product protections.[1]  Saudi Arabia and Mr. Fawcett have agreed that Request No. 6 is redundant of Requests Nos. 1 and 2.  Saudi Arabia and Mr. Fawcett have further agreed that Kreindler & Kreindler's forthcoming stipulation regarding Mr. Fawcett's access to documents subject to the FBI and MDL Protective Orders (collectively, "the Protective Orders") will satisfy Request No. 12.  Saudi Arabia requests that all responsive documents and any privilege log be produced by October 22, 2021.

Mr. Fawcett notes that this timeline is simply unrealistic given the quantity of forensic processing that is required before his counsel can even begin to review material and given the fact that the Kreindler Firm and counsel to the PECs have communicated their intention of conducting a work product and privilege review of material prior to any production.  Mr. Fawcett proposes a rolling production to begin October 25, 2021.

Saudi Arabia and Mr. Fawcett are at an impasse on Saudi Arabia's remaining Requests.  Their respective positions on those Requests are set forth below.  "Unless otherwise stated, the relevant time period is from June 1, 2021, to October 5, 2021."  ECF No. 7215-2.

**Request No. 3:  All communications You had with Michael Isikoff or any member of the press relating to any confidential deposition taken in this case, including without limitation any phone records reflecting such communications.  The relevant time period for this category is July 1, 2019, to the present.**

Saudi Arabia's position:  Mr. Fawcett has proposed to search for and produce only communications with Isikoff from June 1, 2021 to October 5, 2021.  With respect to any phone records reflecting calls between Mr. Fawcett and Isikoff, Mr. Fawcett has agreed to produce only the record of the call between Mr. Fawcett and Isikoff, but has taken the position that all other information in the phone record, such as records of all other calls, will be redacted.

Communications between Mr. Fawcett and *any* member of the press about any confidential deposition in this case are relevant to assessing whether Kreindler & Kreindler has a pattern and practice of leaking confidential information about this case as part of its litigation strategy.  As Saudi Arabia detailed in submissions related to its Requests for Production directed to Kreindler & Kreindler, there is reason to believe that such a pattern and practice exists.  *See* ECF Nos. 7251 at 2-3, 7263 at 2-3.  Evidence of other leaks by Mr. Fawcett to members of the press would support the position that Mr. Fawcett's admitted breach of the Protective Orders, were not those of a rogue employee, but rather were within the scope of his agency.  Evidence

---

[1] For any documents or communications over which Mr. Fawcett, Kreinder & Kreindler, or the PECs asserts privilege or work-product protections, Mr. Fawcett will identify the document on a privilege log that indicates which party is asserting the privilege or protection and complies with the requirements of Federal Rule of Civil Procedure 26(b)(5).  Saudi Arabia reserves the right to challenge any privilege or work-product assertion.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable Sarah Netburn
October 18, 2021
Page 3

concerning other leaks may also be relevant to the reasonableness of Kreindler & Kreindler's supervision of Mr. Fawcett and of the review or inquiry it claims to have performed before submitting sworn statements to the Court on August 16, 2021 claiming that it was not responsible for the leak.

Moreover, Mr. Fawcett has no basis for redacting phone records that he produces in response to this Request or any other Request. Dates and times of communications are not privileged. *See*, *e.g.*, *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 79 n.12 (S.D.N.Y. 2010) ("[T]he fact that a conference call took place, . . . is not privileged."); *State-Wide Cap. v. Superior Bank*, 2000 WL 20705, at *1 (S.D.N.Y. Jan. 12, 2000) (noting that "the fact that a conversation occurred is not privileged" and "the date of a conversation is not privileged"). Nor do call detail records raise substantial privacy concerns. *See*, *e.g.*, *Johnson v. Duxbury, Massachusetts*, 931 F.3d 102, 103, 106 (1st Cir. 2019) (holding that the Town of Duxbury did not violate a police officer's rights "by demanding his cell and home phone records in connection with . . . [an] internal investigation of him," because the officer "had no reasonable expectation of privacy in the phone records"). And, even to the extent such privacy concerns exist, production under the MDL Protective Order will protect those concerns.

Mr. Fawcett's position: Mr. Fawcett objects to this request as unreasonably overbroad, unduly burdensome and not tailored to accomplish the goal of the hearing, which concerns conduct that occurred in the summer of 2021. (ECF No. 7167.) In addition, the term "any member of the press" is unclear. In addition, because phone records do not reflect the content of the communication, only the telephone number of caller and recipient, as a practical matter it is simply not possible to identify "phone records reflecting" a communication about a specific topic. Mr. Fawcett agrees to conduct a search for and produce communications with Mr. Isikoff and phone records of calls with Mr. Isikoff in the period June 1, 2021 through October 5, 2021. Any production of phone records is not a representation about the content of any call, for the reason stated above.

Kreindler & Kreindler's position: Kreindler & Kreindler objects to this document request for the same reasons it objected to the similar request made by the Kingdom of Kreindler & Kreindler. ECF Nos. 7251, 7255. This request is impractically overbroad and unduly burdensome. The record to date supports only the inference that the leak that is the subject of this inquiry was an isolated incident. *See, e.g. ECF 7147 and exhibits thereto.* There is no basis from the existing record to justify a fishing expedition into the confidential files of counsel in this case, which files indisputably contain extensive privileged and protected materials. The Kingdom's attempt to broaden the inquiry to the firm's dealings with other confidential material and other members of the press, and to extend the relevant time frame to two years prior to the current leak, is unfounded; if there were information in the public reflecting leaked information and any evidence linking that leak to Kreindler & Kreindler, counsel for the Kingdom would surely have brought it to the Court's attention in support of this extraordinary attempt for access to their adversaries' files. There is none. There is no support that even this leak was made with any motive of gaining a tactical advantage in the litigation or for any personal gain. There is no

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable Sarah Netburn
October 18, 2021
Page 4

foundation for the Kingdom's effort to expand this inquiry beyond the scope of this leak of the Al Jarrah deposition to Michael Isikoff.

**Request No. 4: All communications You had with anyone at Kreindler & Kreindler LLP relating to the July 15, 2021 Isikoff article or the leak of the Al Jarrah transcript to Michael Isikoff, including without limitation any phone records reflecting such communications.**

Saudi Arabia's position: Mr. Fawcett has refused to produce any phone records reflecting communications between Mr. Fawcett and anyone at Kreindler & Kreindler. These type of records – for instance, phone records showing the dates of phone calls between James Kreindler and Mr. Fawcett in or around the time of the leak and the July 15 Isikoff article – are circumstantial evidence of whether Mr. Fawcett's actions were conducted with the approval or knowledge of his Kreindler & Kreindler supervisors. These records are all the more important in light of Mr. Fawcett's admitted destruction of relevant written evidence of his actions. *See* ECF No. 7162-2.

Mr. Fawcett's position: Mr. Fawcett objects to this request as vague and impossible to carry out in its entirety. Mr. Fawcett agrees to conduct a search for any communications with personnel of the Kreindler Firm that facially reflect a communication about the July 15, 2021 Isikoff article or the leak of the Al Jarrah transcript. Because phone records do not reflect the content of the communication, only the telephone number of caller and recipient, it is simply not possible to identify "phone records reflecting" a communication about a specific topic. For this reason, Mr. Fawcett does not agree to produce phone records responsive to this request.

**Request No. 5: Your telephone records (home phone, cell phone, work phone) from the relevant time period.**

Saudi Arabia's position: As set forth above, Mr. Fawcett's phone records are important objective evidence of whether Mr. Fawcett's actions were conducted with approval or knowledge of his Kreindler & Kreindler supervisors. For example, an early July 2021 phone call between Mr. Fawcett and James Kreindler, followed immediately by a phone call between Mr. Fawcett and Isikoff, would provide evidence that Mr. Kreindler ordered or had knowledge of the leak. Similarly, phone calls between Mr. Fawcett and James Kreindler immediately following the release of the Court's orders related to its investigation of the leak, *see* ECF Nos. 7011 (August 12, 2021), 7082 (August 30, 2021), 7134 (September 23, 2021), would provide circumstantial evidence that Kreindler & Kreindler knew of Mr. Fawcett's actions before September 27, 2021. *See* ECF Nos. 7147, 7166-1. Moreover, given Mr. Fawcett's admitted culpability, *see* ECF Nos.7162-2, 7166-1, any self-identification of communications responsive to Request No. 4 is insufficient to provide the information necessary for the Court to evaluate the circumstances surrounding the leak.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
October 18, 2021
Page 5

<u>Mr. Fawcett's position</u>:  Mr. Fawcett objects to this request as unreasonably overbroad, unduly burdensome and not tailored to accomplish the goal of the hearing, and invasive of his personal privacy and his family's privacy.  In addition, any request for the production of "work phone" records is properly addressed to the Kreindler Firm, and not to Mr. Fawcett.  Mr. Fawcett has already agreed to produce records of calls, to the extent he has such records, between himself and Mr. Isikoff between June 1, 2021 through October 5, 2021 in response to Request No. 3 above.

**Request No. 8:  Documents sufficient to show the compensation (including any benefits) You received or that You were promised from Kreindler & Kreindler LLP.  The relevant time period for this category is January 1, 2018, to the present.**

<u>Saudi Arabia's position</u>:  As Saudi Arabia detailed in submissions related to its Requests for Production directed to Kreindler & Kreindler, the compensation and benefits that Kreindler & Kreindler provided to Mr. Fawcett are relevant to determining the nature of Mr. Fawcett's relationship with Kreindler & Kreindler, as well as to whether Mr. Fawcett has a motive to misrepresent Kreindler & Kreindler's involvement in, or knowledge of, his actions related to the leak.  *See* ECF No. 7251 at 4-5.  Any purported privacy concerns can be addressed by producing documents pursuant to the MDL Protective Order.

<u>Mr. Fawcett's position</u>:  Mr. Fawcett objects to this request as duplicative of Request #10 to the Kreindler Firm (ECF No. 7512-1), unreasonably overbroad, not tailored to accomplish the goal of the hearing, and invasive of his personal financial privacy.  The Kreindler Firm has already agreed to produce documents sufficient to show the nature of Mr. Fawcett's compensation.

**Request No. 9:  Your time records relating to any work you conducted for Kreindler & Kreindler LLP.  The relevant time period for this category is January 1, 2018, to the present.**

<u>Saudi Arabia's position</u>:  These time records are directly relevant to determining the scope of Mr. Fawcett's agency relationship with Kreindler & Kreindler and whether communications with the press are within the scope of that agency relationship.

<u>Mr. Fawcett's position</u>:  Mr. Fawcett objects to this request as unreasonably overbroad, unduly burdensome and not tailored to accomplish the goal of the hearing.  Over three and a half years of Mr. Fawcett's time records will presumably be replete with protected attorney work product that Mr. Fawcett does not control, likely leading to a protracted process of review by other parties, redaction and logging.  That process is by its nature unwieldy and is unlikely to advance the goal of the hearing about a breach that occurred in June 2021.

<u>Kreindler & Kreindler's position</u>:  Kreindler & Kreindler objects to the request for Mr. Fawcett's time records because those time records contain material protected by the work

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
October 18, 2021
Page 6

product doctrine. Moreover, the time frame is unreasonably overbroad as it would extends years prior to the leak that is the subject of this inquiry and thus even logging protected, redacted material implicates work product far beyond the scope of this hearing. Kreindler & Kreindler has agreed to product certain documents or exemplars of documents sufficient to show the format in which Mr. Fawcett billed his time, but objects this fishing expedition by the Kingdom seeking to gain insight into the substance and priorities of Kreindler & Kreindler' s fact investigation and research related to the case against the Kingdom.

**Request No. 10:  Any tax records reflecting your relationship with Kreindler & Kreindler LLP, including without limitation any Form 1099.  The relevant time period for this category is January 1, 2018 to the present.**

Saudi Arabia's position:  Saudi Arabia incorporates its position on Request No. 8.

Mr. Fawcett's position:  Mr. Fawcett objects to any request for his personal income tax returns or tax records as unreasonably overbroad, not tailored to accomplish the goal of the hearing, and invasive of his personal financial privacy.  The Kreindler Firm has already agreed to produce documents sufficient to show the nature of Mr. Fawcett's compensation

**Request No. 11:  Documents sufficient to show Your responsibilities in connection with any work you performed for Kreindler & Kreinder LLP, including without limitation your work in the capacities as investigator, researcher, or consultant.  The relevant time period for this category is January 1, 2018, to the present.**

Saudi Arabia's position: Mr. Fawcett has agreed to produce any contract or other documents that summarizes his responsibilities for the relevant period.  However, he will not produce other documents, such as time records, that are sufficient to show his responsibilities.  Saudi Arabia submits that for the reasons set forth above with respect to Request No. 9, Mr. Fawcett's time records should be produced.

Mr. Fawcett's position:  Mr. Fawcett objects to this request as unreasonably overbroad, unduly burdensome and ambiguous as to which documents are sought.  In response to this request Mr. Fawcett will search for and produce, if it exists, any employment contract or other summary employment document describing Mr. Fawcett's work responsibilities for the Kreindler Firm.

II.     **Saudi Arabia's Proposed Search Protocol for Mr. Fawcett's Laptop and Personal Device**

Saudi Arabia and Mr. Fawcett have met and conferred regarding Saudi Arabia's proposed search protocol for Mr. Fawcett's laptop and personal device.  That proposed protocol is outlined below, along with the joint or individual positions of Saudi Arabia and Mr. Fawcett.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
October 18, 2021
Page 7

Mr. Fawcett's counsel informed us today, however, that the forensic firm that is imaging Mr. Fawcett's laptop, StoneTurn Group, LLP ("StoneTurn") has reported that it encountered an unexpected shutdown of its examination machine when it was in the last steps of imaging Mr. Fawcett's computer. As a result, the forensic report that will inform certain aspects of the search protocol cannot be completed this evening. The parties address other aspects of the protocol below, and will update the Court once the forensic report is generated.[2]

**1.     Forensic report showing folder structure / file names on the laptop and personal device.**

Saudi Arabia and Mr. Fawcett are at an impasse on Saudi Arabia's request that Mr. Fawcett produce certain portions of any forensic reports of Mr. Fawcett's laptop and personal device prepared by StoneTurn Group, LLC ("StoneTurn") or any other forensic firm.

Saudi Arabia's position: Mr. Fawcett should produce any portion of any forensic firms' report showing (i) the file names of any relevant documents or communications and (ii) the folder structure for any folders containing such documents or communications. Relevant documents or communications are those documents or communications responsive to Saudi Arabia's Requests (set forth above), as well as documents or communications responsive to categories nos. 4-7, listed below. Mr. Fawcett need not produce portions of the forensic reporting detailing folders that do not contain relevant and responsive documents. An understanding of the scope of such materials that Mr. Fawcett maintains on his laptop and device, as well as how Mr. Fawcett maintains such materials, is relevant to the reasonableness (or lack thereof) of Kreindler & Kreindler's maintenance of confidential materials in this case. It is also relevant to whether Mr. Fawcett has reasonably identified for production the responsive materials from his laptop and device.

Mr. Fawcett's position: Mr. Fawcett objects to this request as unreasonably overbroad, unduly burdensome and not tailored to accomplish the goal of the hearing. We understand this to be a request for an index of every folder and document file name on Mr. Fawcett's personal computer and personal cell phone. That is an invasion of personal privacy of extraordinary scope without any basis. There is no reason to disclose to the Kingdom of Saudi Arabia the title of every one of Mr. Fawcett's personal, family-related, medical, and financial documents stored on his personal laptop and cell phone. Mr. Fawcett objects to this request to the extent it calls for materials covered by his attorney client-privilege. In addition, as a consultant to the Kreindler Firm for many years, Mr. Fawcett's laptop undoubtedly contains attorney work product belonging to the Kreindler Firm, including organization of case research. Disclosing file paths showing how specific documents were filed is a disclosure of the Kreindler Firm's work product. Moreover, responding to a request of this magnitude would entail a burdensome process of work

---

[2] The categories below are numbered based on the search protocol proposal that Saudi Arabia initially provided to Mr. Fawcett. *See* Ex. A. The parties are awaiting the forensic report from StoneTurn before setting out their positions on categories 2, 3, and 5 in that proposal.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
October 18, 2021
Page 8

product and privilege review, redaction and logging that will bog down the proceedings, with no attendant benefit to the hearing ordered by the Court.

<u>Kreindler & Kreindler's position</u>:  Kreindler & Kreindler objects to this request as wholly unnecessary to the purpose of this inquiry: this breach and an appropriate remedy. Indeed, Mr. Fawcett has worked as a fact researcher and paralegal for Kreindler & Kreindler, examining facts and circumstances critical to developing the case of the 9/11 Families against the Kingdom. Permitting counsel for the Kingdom to understand how Mr. Fawcett organized his research is to offer them access to classic work product protected information. It should be denied in its entirety.

**4.     Forensic search and production of any version of the Jarrah, Bayoumi, Thumairy deposition transcript (including in deleted files)**

Mr. Fawcett has agreed to produce any version of the Jarrah deposition transcript that are located on Mr. Fawcett's laptop or device, including any rough versions (including versions created by Mr. Fawcett or others from real-time transcription software used during the depositions) and final versions.  The parties are at an impasse on whether Mr. Fawcett should also do the same for the confidential deposition transcripts of Omar Al Bayoumi and Fahad Al Thumairy.

<u>Saudi Arabia's position</u>:  Mr. Fawcett should produce any version of the Bayoumi and Thumairy deposition transcripts that are located on Mr. Fawcett's laptop or device, including any rough versions (including versions created by Mr. Fawcett or others from real-time transcription software used during the depositions) and final versions.  This production is relevant to whether Mr. Fawcett is also the source of information leaked to Isikoff about those depositions, as discussed in Isikoff's July 15, 2021 article.  *See* ECF No. 6990 at 2-3.  In addition, an understanding of the type materials subject to the Protective Orders that Mr. Fawcett maintains on his personal laptop or device is relevant to the Court's inquiry into whether Kreindler & Kreindler has adequate controls over its maintenance of confidential material in this case.

<u>Mr. Fawcett's position</u>:  Mr. Fawcett objects to the request to the extent it calls for information beyond the scope of the hearing.

<u>Kreindler & Kreindler's position</u>:  Kreindler & Kreindler objects to this request as beyond the scope of the inquiry. It is not in dispute that Mr. Fawcett had access to these materials and whether they ever resided on his laptop and/or were deleted therefrom is not relevant to the scope of the inquiry:  this breach and the appropriate remedy. The Kingdom has not presented any evidence of any other leak to the press or the public, and should not be permitted to engage in a fishing expedition into the content of the personal laptop of an investigator and fact researcher for the law firm that represents the 9/11 Families.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
October 18, 2021
Page 9

**6.     Forensic search and production of all communications from June 1, 2021 to the present between (1) John Fawcett, and (2) Jim Kreindler, Megan Bennet, Duke Maloney, Steve Pounian, Catherine Hunt, Michael Isikoff (or anyone acting on his behalf), or any member of the press.**

Saudi Arabia and Mr. Fawcett have agreed that Mr. Fawcett's counsel will direct the forensic firm to search the forensic image of Mr. Fawcett's laptop and device for these communications, between himself and Jim Kreindler, Megan Bennet, Duke Maloney, Steve Pounian, Catherine Hunt, and Michael Isikoff (or anyone acting on Mr. Isikoff's behalf) during the time period June 1, 2021 and October 5, 2021, after which Mr. Fawcett's counsel will conduct a relevancy review of the documents and communications identified during the search. Saudi Arabia and Mr. Fawcett further agree that there is overlap between this request and Saudi Arabia's Requests, *see* ECF No. 7215-2, although, as set forth above, disagreements remain on a number of those Requests. *See supra* Part I.

Saudi Arabia and Mr. Fawcett, however, are at an impasse on the criteria that Mr. Fawcett's counsel must use to determine responsiveness.

Saudi Arabia's position: Saudi Arabia's position is that documents that may arguably responsive should be produced even if the documents do not facially refer to the leak. For example, a hypothetical July 3, 2021 email from Mr. Fawcett to James Kreindler in which Mr. Fawcett simply writes, "Done" should be produced even if it does not explicitly relate to the leak. A more restrictive approach would allow Mr. Fawcett and Kreindler & Kreindler to dodge meaningful inquiry into the circumstances surrounding the misconduct at issue. *See* Order Re: Apple's Motion for Sanctions, *Apple Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846-LHK, at 4 (N.D. Cal. Oct. 2, 2013), ECF No. 2483 ("Rarely is the fox is [sic] permitted to investigate without supervision the disappearance of chickens at the henhouse.").

Mr. Fawcett's position: Mr. Fawcett objects to the request as unreasonably overbroad, unduly burdensome and not tailored to accomplish the goal of the hearing. Because it seeks all communications between Mr. Fawcett and the law firm that hired him to conduct research in the underlying lawsuit, by its very nature the request calls for routine communications with, and work product that Mr. Fawcett produced for, the Kreindler Firm. The work product and privilege review alone would be extremely time consuming and an enormous burden. Mr. Fawcett also objects to this request to the extent it calls for materials covered by his attorney client-privilege. Mr. Fawcett proposes to search for and produce communications that facially relate to his disclosure of the Jarrah deposition to Mr. Isikoff, which are dated June 1, 2021 through October 5, 2021, between himself and Jim Kreindler, Megan Bennet, Duke Maloney, Steve Pounian, Catherine Hunt and Michael Isikoff (or anyone acting on Mr. Isikoff's behalf).

Kreindler & Kreindler position: Kreindler & Kreindler objects to this request. There is already agreement to produce communications with Kreindler personnel that relate to the leak, and we understand that Mr. Fawcett will also produce communications he had directly with Mr.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
October 18, 2021
Page 10

Isikoff during the relevant time frame. That leaves this request as seeking communications with four Kreindler lawyers and one other consultant on matters that *are not* related to the leak. This is by definition irrelevant, and obviously invades the realm of work product. We further note that simply logging work product material is not an acceptable solution. First, it is unduly burdensome to simply identify all communications between the lawyers and their paralegal or researcher only to catalog all such communications on a privilege log. Second, there is still the concern that even a log of *all* such communications will in itself provide insight into counsel's work and priorities. If these results are not necessary, they should be avoided.

      **7.** **Forensic search and production of all documents created or modified between June 1, 2021 and the present that hit upon the following search terms: Isikoff, Issikoff, Isikof, \*@yahoo-inc.com, \*@oath.com, misikoff@verizonmedia.com, misikoff52@gmail.com, mj061821\*, mj061721\*, \*protonmail\*, \*Jarrah, \*Jarah, \*Jarra, \*Mussaed, \*Musaed, conspiracyland, conspiracy land, Bayoumi, Thumairy, Netburn.**

For this category, Saudi Arabia and Mr. Fawcett have agreed to the same protocol set forth for category no. 6. The parties disagree on the scope of the responsiveness review conducted by Mr. Fawcett's counsel, as discussed above.

      **III.**    **Non-Kreindler PECs' Statement of Position**

As indicated previously, ECF No. 7256, the PECs have no interest in complicating the Court's inquiry into the leak of the confidential information, but have a compelling interest in ensuring that the process does not result in the disclosure to the Kingdom of privileged information and work product of the non-Kreindler PECs and their clients. Accordingly, any discovery the Court authorizes should be targeted to matters directly relevant to the Court's inquiry, and conducted in a manner that allows the non-Kreindler PECs an opportunity to review their privileged information prior to production of any privilege log or documents to the Kingdom. The PECs respectfully submit that discovery should be limited to matters with concrete relevance to the Court's inquiry, and not extend to any core litigation activities or initiatives on behalf of the plaintiffs that do not directly relate to the Court's inquiry.
In the context of the Kingdom's proposed discovery directed to John Fawcett, the following disputed discovery proposals of the Kingdom are particularly concerning to the PECs for their tendency to intrude on the non-Kreindler PECs' privileges[3]:

---

[3] As drafted, a number of the Kingdom's other discovery requests also implicate privileged communications involving the non-Kreindler PECs' work product interests. However, as with the discovery served on Kreindler, the Kingdom has committed to the process outlined in ECF No. 7251, n.5, allowing for a relevance review and insertion on a privilege log of privileged communications, with any resulting disputes submitted for the Court's determination. The PECs, however, underscore that the non-Kreindler PECs potential privilege claims reach beyond

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
October 18, 2021
Page 11

1. *Request No. 9: The Kingdom's request for Mr. Fawcett's time records relating to any work you conducted for Kreindler & Kreindler L.L.P. from January 1, 2018 to the present.* As indicated previously, the non-Kreindler PECs have been coordinating discovery and litigation efforts with the Kreindler firm, as required by Case Management Order No. 3. Kreindler already has represented that Mr. Fawcett served as an investigator for the firm, working on the 9/11 litigation, since at least 2002. Given these circumstances, disclosure of all of Mr. Fawcett's time records, from more than 3 years prior to the leak to the present, would broadly expose the strategies, work product, and privileged communications of the non-Kreindler PECs to discovery by the Kingdom. Moreover, it is certain that the overwhelming majority of the time entries will have no bearing whatsoever on the leak of the Isikoff transcript or any related issues, making disclosure of this information all the more inappropriate.

2. *Forensic Report Request No. 1: The Kingdom's proposal to require Mr. Fawcett to produce a forensic map of the file names and structure on his laptop.* As with Request no. 9 addressed above, disclosure of the file structure and all file names on Mr. Fawcett's computer would provide counsel for the Kingdom with a road map of the thinking and priorities of the PECs as a whole, including the non-Kreindler PECs' members. At the same time, the majority of the files on the computer likely have no bearing whatsoever on the leak of the Isikoff transcript or any related issues, making disclosure of those file names and the overall file structure all the more inappropriate. The fact that these files are contained on Mr. Fawcett's laptop does not alter the fact that they represent privileged information and work product of the non-Kreindler PECs' members and their clients.

Finally, with regard to the timing of the production, the PECs reiterate the request they made in relation to the discovery directed to Kreindler, ECF No. 7251 at 6 n.5, that Mr. Fawcett provide a copy of any privilege log or documents collected in the discovery process at least two days in advance of production to the Kingdom. The Court has advised that the hearing will not take place until November 1, 2021, and as a result there should be no difficulty building this review period into the discovery schedule. For example, if the hearing is set for November 1, the production to the PECs could be set for Friday, October 22, with the production to the Kingdom following on Tuesday, October 26.

\*\*\*

---

communications, to include other work product that may be disclosed by the disclosures requested.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
October 18, 2021
Page 12

                                            Respectfully submitted,

                                            /s/ *Michael K. Kellogg*

                                            Michael K. Kellogg
                                            *Counsel for the Kingdom of Saudi Arabia*

cc:    All MDL Counsel of Record (via ECF)