KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

(202) 326-7900

FACSIMILE:
(202) 326-7999

October 22, 2021

*Via ECF*

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

      Re:    *In re Terrorist Attacks on September 11, 2001*, 03-md-1570 (GBD) (SN)

Dear Judge Netburn:

      I write on behalf of Defendant Kingdom of Saudi Arabia ("Saudi Arabia") regarding this Court's forthcoming hearing on the leak of the confidential transcript of the deposition of Musaed Al Jarrah to Yahoo! News reporter Michael Isikoff and the cover-up of that leak. As the Court knows, John Fawcett of Kreindler & Kreindler LLP ("Kreindler & Kreindler") has filed declarations confessing to sending Isikoff the transcript and to destroying evidence that he did so, but claims to have acted without the knowledge or encouragement of others at Kreindler & Kreindler. *See* ECF Nos. 7147-11, 7162-2, 7166-1.[1] In its October 4, 2021 order, the Court indicated that one of the remedies under consideration for this intentional violation of the FBI and MDL Protective Orders (collectively, "the Protective Orders") was "a criminal referral to the U.S. Attorney's Office for the Southern District of New York." ECF No. 7167 at 1.

      Fawcett's declarations, the Court's order, and Fawcett's recent retention of separate counsel all suggest that Fawcett faces potential criminal prosecution. During recent meet-and-confer discussions, Saudi Arabia asked whether Fawcett intended to invoke his Fifth Amendment privilege against self-incrimination at the hearing, and Fawcett's counsel declined to state one way or the other. If Fawcett invokes the privilege at the hearing, Saudi Arabia will contend that he has waived it through his voluntary submission of declarations. The Court may benefit from briefing on this issue. Accordingly, Saudi Arabia respectfully requests that the Court accept this letter setting forth reasons that Fawcett has waived any Fifth Amendment privilege he may seek to assert.

---

[1] Fawcett's declarations are sealed and should be redacted before public filing because they disclose confidential information from Al Jarrah's deposition. Saudi Arabia will submit proposed redactions after taking guidance from the Court's ruling on the pending motion to seal at ECF No. 7066. This letter discloses no confidential information.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
October 22, 2021
Page 2

1.      On September 27, 2021, Kreindler & Kreindler submitted a letter to the Court admitting that its previous denials of responsibility for the leak of the Al Jarrah transcript had been "wrong." ECF No. 7147, at 1. Attached to that letter was a same-day declaration from Fawcett, stating: "[I]n early July 2021 I sent a redacted version of the transcript of the deposition of Musaed al Jarrah to Michael Isikoff." ECF No. 7147-11, ¶ 2 (the "First Fawcett Declaration"). Fawcett further stated: "[U]ntil today, no one other than Michael Isikoff and I knew that I sent the redacted transcript to Michael Isikoff"; "I sent the transcript to Michael Isikoff using a non-Kreindler e-mail address" in order "to prevent the lawyers and staff of Kreindler from knowing about my intended action and to prevent them from stopping me"; and "[n]o one from Kreindler directed me to send the transcript to Michael Isikoff." *Id.* ¶ 3. At the end of the declaration, he stated: "I accept responsibility for my actions." *Id.* ¶ 6.

On September 30, 2021, Kreindler & Kreindler submitted a second declaration from Fawcett dated the same day. *See* ECF No. 7162-2 (the "Second Fawcett Declaration"). The Second Fawcett Declaration described three phone calls between Fawcett and Isikoff in July 2021. The first, in "early July," involved Fawcett providing Isikoff with details about the confidential Al Jarrah deposition, *id.* ¶ 3; the second involved discussion "about the timing of [Isikoff's] article discussing Jarrah," *id.* ¶ 8; and the third involved discussion of a "2016 FBI Operation Encore report," *id.* ¶ 10. The Second Fawcett Declaration further described "several steps" that Fawcett allegedly "took" to send the transcript to Isikoff "without anyone at Kreindler knowing." *Id.* ¶ 7. According to Fawcett, those "steps" included "sav[ing]" the transcript "onto a thumb drive," *id.*; using "an end-to-end encrypted email service," *id.*; "set[ting] up" a "self-destructing messages option" on that service, *id.*; later "delet[ing] everything from the thumb drive," *id.* ¶ 9; and "thr[o]w[ing] the thumb drive out in . . . household garbage," *id.*

On October 4, 2021, the Court informed the parties that it would conduct a hearing into Kreindler & Kreindler's breach of the Protective Orders. *See* ECF No. 7167. The Court ordered a number of individuals affiliated with Kreindler & Kreindler, including Fawcett, to appear as witnesses. *Id.* at 1-2. Saudi Arabia's counsel "will be permitted to cross-examine the witnesses." *Id.* at 2. "The purpose of the hearing is to render findings of fact in connection with the breach and to determine the appropriate remedies," and "[s]uch remedies may include, among other possible remedies, . . . a criminal referral to the U.S. Attorney's Office for the Southern District of New York." *Id.* at 1. Fawcett has since retained individual counsel.

2.      The Fifth Amendment privilege against self-incrimination "protects against any [compelled] disclosures which the witness reasonably believes could be used in a criminal prosecution [against him] or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972). That privilege can be, and frequently is, waived through voluntary testimony. "It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." *Mitchell v. United States*, 526 U.S. 314, 321 (1999); *see Rogers v. United States*, 340 U.S. 367, 373 (1951) ("Disclosure of a fact waives the privilege as to details."); *United States v. Spinelli*, 551 F.3d 159, 167 (2d Cir. 2008) ("[A] witness may not

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable Sarah Netburn
October 22, 2021
Page 3

pick and choose what aspects of a subject to discuss; if allowed to draw the boundaries of his testimony anyplace he chooses, the defendant would be able to distort the facts."); *Klein v. Harris*, 667 F.2d 274, 288 (2d Cir. 1981) ("[A]ny witness who makes testimonial, incriminating statements plainly has reason to know, when he does so, that these statements may be interpreted as a waiver of his fifth amendment privilege against self-incrimination.").

Courts in this District have repeatedly concluded that a witness's written testimony in a civil case can waive the Fifth Amendment privilege as to later questioning on the same topics in the same case. *See OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 262 F. Supp. 2d 302, 307-11 (S.D.N.Y. 2003) (finding that, by submitting an "affidavit . . . that . . . gave information which could not have been compelled over his privilege against self-incrimination," a witness "waived [that] privilege . . . with regard to matters relevant to his affidavit"); *Air-India v. Goswami*, 1993 WL 403999, at *9 (S.D.N.Y. Oct. 5, 1993) (quoting instruction: "Once you have waived your Fifth Amendment privilege by filing an affidavit setting forth certain facts, you open yourself up to examination with regard to those facts and circumstances disclosed in the affidavit."); *Camelot Grp., Ltd. v. W.A. Krueger Co.*, 486 F. Supp. 1221, 1230 (S.D.N.Y. 1980) (explaining that witnesses who "reveal[ed] . . . information in . . . affidavits" had "waived their privilege . . . with respect to details of the factual matters disclosed therein").

Judge Kaplan's decision in *OSRecovery* provides useful guidance. Acknowledging that "'courts must "indulge every reasonable presumption against waiver,"'" 262 F. Supp. 2d at 308 (quoting *Emspak v. United States*, 349 U.S. 190, 198 (1955)), *OSRecovery* applied a "two-pronged test" drawn from *Klein v. Harris* to determine whether a witness's affidavit overcame that presumption. The "first prong" of the test "requires that 'the witness' prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth.'" *Id.* (quoting *Klein*, 667 F.2d at 287). The "second prong requires that 'the witness had reason to know that his prior statements would be interpreted as a waiver of the fifth amendment's privilege against self-incrimination.'" *Id.* (same).

3. Fawcett's two declarations meet both prongs of the test set forth in *Klein* and *OSRecovery*, and establish that he has waived any privilege against self-incrimination. As to the first prong, Fawcett has purported to "accept responsibility for [his] actions," ECF No. 7166-1, ¶ 5, but gives a self-serving account of his motives, asserting that he acted out of personal moral outrage and to protect public safety. *See id.* ¶ 4; ECF No. 7162-2, ¶ 6. Cross-examination will help to show that his statements present a "distorted view of the truth," *Klein*, 667 F.2d at 287, because his actions were in fact consistent with the practices and strategic objectives of Kreindler & Kreindler. Similarly, Fawcett's repeated statements that he acted alone and without instructions, *see* ECF No. 7166-1, ¶ 3; ECF No. 7162-2, ¶ 8, appear intended to protect the Kreindler & Kreindler attorneys who were his long-term employers, who submitted his declaration to the Court, and whose actions will be a focus of the upcoming hearing. To accept Fawcett's version of the facts without adversarial testing would "furnish one side with what may be false evidence and deprive the other of any means of detecting the imposition." *United States v. St. Pierre*, 132 F.2d 837, 840 (2d Cir. 1942) (Hand, J.).

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable Sarah Netburn
October 22, 2021
Page 4

      As to the second prong of the test, Fawcett's statements are sufficient for this Court to infer that he knew or had reason to know when he signed the declarations that his statements could incriminate him.[2] Taken at face value, those statements not only incriminate him, but also show that he was conscious of his guilt. After purposefully sending Isikoff materials he knew to be confidential, *see* ECF No. 7166-1, ¶ 4 (referring to the "Saudi government's invocations of diplomatic immunity"), Fawcett claims to have deliberately concealed his actions from Kreindler & Kreindler, *see id.* ¶ 3; ECF No. 7162-2, ¶ 7, attempted to protect James Kreindler from blame for those actions, *see* ECF No. 7162-2, ¶ 8, and destroyed evidence of those actions, *see id.* ¶ 9. And, again, the First Fawcett Declaration states that he "accept[s] responsibility," ECF No. 7166-1, ¶ 5, for what he has done – language that signals intent to confess a violation of law.

      To assert the Fifth Amendment to avoid testifying about the violation of the Court's protective orders, Fawcett had to do so before submitting his declarations. *See St. Pierre*, 132 F.2d at 840 ("The time for a witness to protect himself is when the decision is first presented to him; he needs nothing more, and anything more puts a mischievous instrument at his disposal."). Having instead disclosed incriminating facts to the Court and the parties in his declarations – which will be "admit[ted]" at the hearing as his "direct testimony," ECF No. 7167, at 2 – Fawcett cannot now refuse to answer Saudi Arabia's or the Court's questions at the hearing "as to details." *Rogers*, 340 U.S. at 373; *see Spinelli*, 551 F.3d at 167 ("By choosing to testify, . . . the defendant gives up his right to refuse to answer questions that fall within the proper scope of cross examination."); *Palacio v. City of New York*, 2008 WL 7453608, at *20 (S.D.N.Y. Nov. 19, 2008) ("[W]hen a witness voluntarily puts forth his version of the facts, he cannot then claim immunity from cross examination on those same facts."), *report and recommendation adopted*, 2010 WL 308808 (S.D.N.Y. Jan. 27, 2010).

      **4.**     This Court need not ask whether Fawcett was actually aware of his Fifth Amendment rights when he waived them. The Second Circuit has expressed "no doubt that a waiver of the fifth amendment's privilege against self-incrimination may, in an appropriate case, be inferred from a witness' prior statements with respect to the subject matter of the case, without any inquiry into whether the witness, when he made the statements, actually knew of the existence of the privilege and consciously chose to waive it." *Klein*, 667 F.2d at 287; *E.F. Hutton & Co. v. Jupiter Dev. Corp.*, 91 F.R.D. 110, 114 (S.D.N.Y. 1981) (same); *see also St. Pierre*, 132 F.2d at 840 (observing that a witness "has no just claim for . . . tenderness, unless he has not learned of his privilege before he consents to speak, and not then if the law charges him with knowledge of it anyway").

---

    [2] As *OSRecovery* explains, statements are "incriminating" and can waive a witness's rights if the witness had the "ability to have invoked the privilege" at the time the statement was made. 262 F. Supp. 2d at 310. A showing that the statements "actually harmed" the witness is not needed. *Id.*; *see also id.* at 309 (observing that the privilege can be waived through a witness's attempt to "exculpate[ ] him- or herself and then use[ ] the privilege to avoid cross-examination"). In any event, Fawcett's statements in his declarations are incriminating even in the narrower sense of actually confessing to criminal conduct.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
October 22, 2021
Page 5

      Nor need the Court ask whether Fawcett had counsel to advise him when he decided to submit the affidavit.  *See McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (explaining that the right "does not attach until a prosecution is commenced"); *Rogers*, 340 U.S. at 368-69 & n.2 (upholding finding of waiver even though the witness had an opportunity to consult counsel only after she had testified to incriminating facts before the grand jury).  To be sure, individual counsel might have warned Fawcett that the declarations he was signing were more in Kreindler & Kreindler's interest (or perceived interest) than in his own.  But he did not need that advice for his waiver to be effective.  *See Lopez v. City of New York*, 2007 WL 2228150, at *10 (E.D.N.Y. July 31, 2007) (finding waiver under *Klein* despite "concern[ ]" that a party's "opportunistic litigation strategy ha[d] placed an unrepresented, non-party witness in criminal jeopardy").

      **5.**      The scope of Fawcett's waiver extends at least as far as the "proper scope of cross examination," *Spinelli*, 551 F.3d at 167, on the matters as to which Fawcett has voluntarily testified, including his violation of the Protective Orders, his role at and relationship with Kreindler & Kreindler, and his interactions with Kreindler & Kreindler attorneys.  This Court has, however, indicated that questioning at the hearing "shall not be limited in scope by [the witnesses'] direct testimony."  ECF No. 7167, at 2.  To the extent Fawcett asserts the privilege in response to any questions, the Court should determine on a question-by-question basis whether additional testimony presents a "danger[ ]" of additional self-incrimination that is "real," rather than "remote and speculative," *SEC v. Pence*, 323 F.R.D. 179, 187 (S.D.N.Y. 2017) (quoting *Zicarelli v. N.J. State Comm'n of Investigation*, 406 U.S. 472, 478 (1972), in light of the evidence already in the record; and, if so, whether permitting Fawcett to refuse to answer such questions "would open the way to distortion of facts by permitting [the] witness to pick a convenient stopping place in his . . . testimony," *E.F. Hutton*, 91 F.R.D. at 116.

      Respectfully submitted,

/s/ *Michael K. Kellogg*

Michael K. Kellogg
*Counsel for the Kingdom of Saudi Arabia*

cc:      All MDL Counsel of Record (via ECF)