KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

October 29, 2021

*Via ECF*

The Honorable George B. Daniels
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

   Re: *In re Terrorist Attacks on September 11, 2001*, 03-md-1570 (GBD) (SN)
     Opposition to Emergency Rule 72 Objections to Judge Netburn's Order Finding
     Fifth Amendment Waiver

Dear Judge Daniels:

  I write on behalf of Defendant Kingdom of Saudi Arabia ("Saudi Arabia") to oppose the emergency Rule 72(a) objections filed by John Fawcett ("Fawcett") to Judge Netburn's bench ruling that Fawcett has waived his privilege against self-incrimination under the Fifth Amendment against questioning at the evidentiary hearing set for November 1, 2021.

  **1.** On July 15, 2021, Yahoo! News reporter Michael Isikoff published an article revealing that he had received the confidential deposition transcript of witness Musaed Al Jarrah and disclosing information from it. *See* ECF No. 6981-1. The transcript was protected by two orders of this Court: Judge Casey's 2006 order that applies to all discovery in this MDL, ECF No. 1900, and Judge Netburn's 2018 order that applies to certain information produced by the FBI, ECF No. 4255. Isikoff could not have obtained the transcript unless someone had violated the Court's protective orders. Around the time that Isikoff published his article, he had been in contact with the law firm Kreindler & Kreindler LLP ("Kreindler & Kreindler"), a member of the Plaintiffs' Executive Committees ("PECs") in this litigation, and in particular with its name partner James P. Kreindler. *See* ECF No. ECF No. 6981-4, Ex. D3A; *see also* ECF No. 6990, at 2 (describing Mr. Kreindler's July 10, 2021 appearance on Isikoff's podcast *Conspiracyland*).

  On July 23, 2021, Saudi Arabia moved the Court to investigate the violation of its protective orders. ECF No. 6981 (filed under seal). The PECs opposed. All PEC members represented to the Court that they had "already conducted internal investigations" and were "confident" they were not the sources of the leak. ECF No. 6988, at 2 (filed under seal). PEC members Cozen O'Connor, Motley Rice, and, later, Anderson Kill, voluntarily submitted declarations setting forth the details of those investigations, disclosing all their communications with Isikoff (none during the relevant period), and including sworn denials from all those with

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable George B. Daniels
October 29, 2021
Page 2

access to the transcripts.  ECF Nos. 6991, 6992, 7013.  Other than joining the PECs' general opposition, Kreindler & Kreindler submitted nothing.

On August 12, 2021, Judge Netburn ordered Kreindler & Kreindler to follow the other firms' lead and submit declarations.  ECF No. 7011.  On August 16, Kreindler & Kreindler submitted sworn declarations denying it was the source of the leak.  They were much less detailed than the other PEC members' submissions and did not include denials from everyone the firm had given access to the transcripts.  ECF No. 7016.  On August 30, Judge Netburn found Kreindler & Kreindler's submission to be insufficient and ordered the firm to make a more detailed submission.  ECF No. 7082, at 1-2.  She further ordered every other firm in the MDL with access to the transcripts, as well as the court reporter, to submit declarations.  *Id.* at 2-3.

On September 27, 2021, after a delay caused by an unsuccessful motion by Yahoo! News to intervene, Kreindler & Kreindler finally submitted its declarations and finally admitted it was the source of the leak.  ECF No. 7147.  The firm blamed the leak on John Fawcett, a Kreindler & Kreindler investigator, claiming that he had acted without authorization and had confessed for the first time the morning the declarations were due.  *See id.* at 1.  Fawcett signed, and Kreindler & Kreindler submitted, a sworn declaration in which Fawcett testified he had leaked the transcript to Isikoff and had destroyed evidence that he had done so.  ECF No. 7147-11 (filed under seal).  In that declaration, Fawcett claimed to "accept responsibility for [his] actions."  *Id.* ¶ 5.  On September 30, after Saudi Arabia pointed out deficiencies in Fawcett's initial declaration, ECF No. 7157, at 3, Fawcett signed and Kreindler & Kreindler submitted a second sworn declaration with more details, ECF No. 7162-2 (filed under seal).  It is undisputed that Fawcett had access to personal criminal defense counsel when he signed his declarations.

Fawcett's declarations admit to facts showing that he broke the law, knew that he was breaking the law, and took steps to hide his conduct.  They state that he used a personal encrypted e-mail account that would leave no discoverable traces on Kreindler's computer systems, used a feature of that system to delete the e-mail sending the transcript, and secretly disposed of a portable "thumb drive."  ECF No. 7147-11, ¶ 3; ECF No. 7162-2, ¶¶ 7, 9.  The declarations attempt to justify Fawcett's violation by claiming that Fawcett was trying to protect the public from future unlawful acts that Al Jarrah might commit.  ECF No. 7147-11, ¶ 4.  They also attempt to protect Kreindler & Kreindler – and in particular James Kreindler – by claiming that Fawcett acted without authorization and took steps to prevent others from learning of his acts.  ECF No. 7147-11, ¶ 3; ECF No. 7162-2, ¶¶ 7-9.  They also minimize his connection with the firm, claiming he was a "consultant" with "no contract."  ECF No. 7162-2, ¶ 2.

**2.**     On October 4, 2021, Judge Netburn issued an order setting an evidentiary hearing and directing Fawcett, along with James Kreindler, three other Kreindler & Kreindler attorneys, and a Kreindler & Kreindler IT employee, to testify at that hearing and be cross-examined by Saudi Arabia.  ECF No. 7167.  The order stated that Judge Netburn intended to make findings of fact and take remedial measures for the now-admitted violations of its protective orders, and that

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable George B. Daniels
October 29, 2021
Page 3

she might make a criminal referral. *Id.* at 1. The hearing was originally scheduled for October 21, was rescheduled, and is now set for next Monday, November 1. ECF No. 7277, at 8.

On October 12, 2021, new counsel entered an appearance on the docket for Fawcett. ECF No. 7252. During meet-and-confer discussions about pre-hearing discovery, counsel for Saudi Arabia asked counsel for Fawcett whether Fawcett intended to assert the Fifth Amendment at the hearing. ECF No. 7278, at 1. Counsel for Fawcett declined to say. *Id.* On October 22, Saudi Arabia therefore submitted a letter brief to Judge Netburn arguing that, by submitting his September 27 and September 30 declarations, Fawcett had waived his Fifth Amendment privilege at least as to the scope of fair cross-examination. *Id.* On October 25, Fawcett submitted a response stating that he intended to assert his Fifth Amendment privilege at the hearing and arguing he had not waived it. ECF No. 7285. He did not attempt to withdraw his declarations in their entirety, but instead argued that Judge Netburn could cure any prejudice to Saudi Arabia from its inability to cross-examine Fawcett by selectively striking portions of the declarations with which Saudi Arabia disagreed. *See id.* at 4.

**3.** Yesterday, October 28, 2021, Judge Netburn held a hearing in which she ruled from the bench that Fawcett had waived his Fifth Amendment privilege by submitting testimony and would be required to answer questions at Monday's hearing. A transcript is Exhibit A. In that ruling, Judge Netburn acknowledged that there is a presumption against testimonial waiver of Fifth Amendment rights, but determined that it had been overcome. Tr. 26:4-6. She cited *Rogers v. United States*, 340 U.S. 367 (1951), and *United States v. St. Pierre*, 132 F.2d 837 (2d Cir. 1942) (Hand, J.), for the proposition that a witness who has voluntarily begun to testify may not invoke the Fifth Amendment to stop testifying at a point of his choosing. Tr. 26:10-15.

Judge Netburn observed that the parties agreed that the question of testimonial waiver in this case is governed by the two-part test of *Klein v. Harris*, 667 F.2d 274 (2d Cir. 1981). Tr. 25:21-13. That test asks (1) whether a "witness's prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth"; and (2) whether "the witness had reason to know that his prior statements would be interpreted as a waiver of the fifth amendment's privilege against self-incrimination." *Id.* at 287.

Judge Netburn reasoned that *Klein*'s first prong had been met because the testimony in Fawcett's declarations was key to the upcoming evidentiary hearing (to determine who was responsible for the violation of the Court's orders) and the Court would not be able to reach its ultimate conclusions without cross-examination of Fawcett. Tr. 27:4-8. She reasoned that *Klein*'s second prong had been met because the statements in the declarations were testimonial and incriminating. Tr. 27:10-28:20. She found that the hearing will not be a new or separate proceeding from the extensive proceedings she had already undertaken to investigate the violation of the Court's orders and that the remedies that might be imposed at that hearing, including the possibility of a criminal referral, were obvious to everyone including Fawcett at the time the declarations were submitted. Tr. 27:22-28:5. She found it not credible that Fawcett did not understand he was incriminating himself at the time he signed the declarations and that the

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable George B. Daniels
October 29, 2021
Page 4

evidence suggested that he knew the nature of his conduct. Tr. 28:9-20. Accordingly, she ruled that he would be required to testify on the subject matter of his declaration and that any further disputes would be resolved question-by-question. Tr. 28:20-29:3.

4. Judge Netburn's ruling is subject to review under Federal Rule of Civil Procedure 72(a) to determine whether it is clearly erroneous or contrary to law. Judges in this District give deference to the discovery rulings of a magistrate judge. Special deference is due where, as here, a magistrate judge has become familiar with a case through long years of supervising discovery. This Court has found special deference to be warranted for Judge Netburn's rulings in this case. ECF Nos. 6798, 6842, 6865. In any event, no deference is needed for this Court to conclude that Judge Netburn's ruling was correct. Fawcett's suggested procedure of selectively striking parts of his testimony about which he no longer wishes to testify runs directly contrary to Supreme Court and Circuit precedent, and Judge Netburn had ample reasons to reject it.

Fawcett errs in arguing (at 4) that Judge Netburn "did not specify how the record would be distorted, as opposed to simply less complete," if his testimony were partially struck. The distortion against which precedent warns is precisely the risk that a witness will be able to "select any stopping place in his testimony." *Rogers*, 340 U.S. at 371; *Klein*, 667 F.2d at 288; *see St. Pierre*, 132 F.2d at 839-40 (pointing to the "obvious injustice of allowing a witness, who need not have spoken at all, to decide how far he will disclose what he has chosen to tell in part"). Here, Fawcett decided to confess his own violation but also attempted to minimize the extent of his breach, claim he acted with public-spirited motives, and protect his long-time employer, Kreindler & Kreindler, by saying that he acted independently and without their knowledge. Saudi Arabia wants to cross-examine him about facts that were left out of the declarations that run contrary to that sworn testimony. Striking the parts of the declarations that concern Kreindler & Kreindler would only allow Fawcett to achieve his apparent goal – and the goal of the attorneys who submitted his declarations – of protecting the firm from scrutiny.

Fawcett further errs in arguing (at 4) that Judge Netburn did not identify any prejudice to Saudi Arabia, as a party, and instead focused on prejudice to the Court as factfinder. His contention (at 4) that "the *Klein* test does not ask whether the *factfinder* is prejudiced" is remarkable and unsupported. The core of *Klein*'s first prong is the concern that "the witness' prior statements have created a significant likelihood that *the finder of fact* will be left with and prone to rely on a distorted view of the truth." 667 F.2d at 287 (emphasis added); *see also St. Pierre*, 132 F.2d at 640 (rejecting a distinction between "adversary and inquisitory proceedings" for purposes of testimonial waiver as an "unnecessary and deplorable innovation"). In any event, Saudi Arabia does have its own interest in vindicating the Court's protective order (as does Al Jarrah, who undersigned counsel also represent) and would therefore be prejudiced if Fawcett were permitted to avoid questions about his own and others' responsibility for the violation.

In addition, Fawcett fails to meet his burden to show clear error in Judge Netburn's ruling because he cannot point to any case adopting the procedure he proposed to her: striking part, but not all, of a party's incriminating declaration. Instead, as Judge Netburn observed at the hearing,

The Honorable George B. Daniels
October 29, 2021
Page 5

the cases on which Fawcett relies (at 4-5) all involved situations in which for one reason or another a court could decide the issue before it without taking into account any of the witness's testimony. *See In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 58, 67 (D.D.C. 2000); *E.F. Hutton & Co. v. Jupiter Dev. Corp.*, 91 F.R.D. 110, 117 (S.D.N.Y. 1981). That is far different from making factfindings based on part but not all of a sworn declaration. Indeed, Fawcett's procedure would achieve the very outcome *Rogers* and *Klein* prohibit of "select[ing] a stopping place in his testimony." *Rogers*, 340 U.S. at 371. And Fawcett's insistence that stopping inquiry would leave Saudi Arabia "better off" ignores the point that cross-examination is necessary not merely for evidence against Fawcett himself, but also (or even primarily) for evidence against Kreindler & Kreindler and the attorneys, which he seeks to exclude from the case.

  **5.** Judge Netburn also did not clearly err in rejecting Fawcett's contention that he had "new grounds for apprehension" concerning his criminal liability after her October 4 order advising the parties of the possibility of criminal sanctions. There is no dispute that the upcoming hearing is part of the "same judicial proceeding," *Klein*, 667 F.2d at 288, in which Fawcett submitted his declarations. The reason for the hearing is to admit the declarations as direct testimony and permit cross-examination by Saudi Arabia to explore the same violation that Judge Netburn issued her earlier orders to investigate. Further, Judge Netburn rejected as a matter of fact Fawcett's contention that he did not understand when he submitted the declarations that he could face criminal liability as a result. There was no clear error in that result.

  The cases on which Fawcett relies (at 5) involved far different circumstances. *United States v. Miranti*, 253 F.2d 134 (2d Cir. 1958), held that "two appearances before the same grand jury . . . should not be characterized as a single proceeding" because they were "separated by indictment and conviction for crimes related to the original disclosures and the passage of nearly a year." *Id.* at 140. *Knopf v. Esposito*, No. 17-cv-5833 (DLC), 2021 WL 276539 (S.D.N.Y. Jan. 27, 2021), involved "separate actions alleging distinct claims against different defendants" and observed in passing that there were "*additionally*[ ] . . . 'new grounds for apprehension'" since the earlier proceeding. *Id.* at *1. Neither suggests that Judge Netburn clearly erred by rejecting Fawcett's claim in this case.

  **6.** No stay of Judge Netburn's ruling or of the hearing is warranted. Fawcett's likelihood of success on appeal is low. Also, the last-minute way in which this issue is presented to this Court is a result of Fawcett's initial strategic decision to try to wait until the hearing to announce whether he would invoke the privilege, which was the strategy his counsel communicated to counsel for Saudi Arabia in meet-and-confer discussions on October 14, 2021. The Fifth Amendment waiver issue here was obvious, and counsel could have obtained an earlier ruling by indicating at an earlier date that Fawcett would invoke, or by raising the issue with Judge Netburn themselves. Further, in the unlikely event that this Court were later to determine that Judge Netburn's ruling was erroneous, any prejudice to Fawcett could be cured by excluding his testimony at the hearing from any later criminal proceeding against him. Under the circumstances, Judge Netburn reasonably concluded that Monday's hearing, which she has already had to reschedule once for unrelated reasons, should proceed as scheduled.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable George B. Daniels
October 29, 2021
Page 6

                                      Respectfully submitted,

                                      /s/ *Michael K. Kellogg*

                                      Michael K. Kellogg
                                      *Counsel for the Kingdom of Saudi Arabia*

cc:      All MDL Counsel of Record (via ECF)