UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___11/9/2021___
```

In re:

    **TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001**

-------------------------------------------------------------------X

**03-MD-01570 (GBD)(SN)**

**REPORT &
RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge:**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:

    Burnett et al., v. The Islamic Republic of Iran, et al., No. 15-cv-09903 (GBD)(SN)

    On January 31, 2017, the Honorable George B. Daniels granted the plaintiffs in Burnett an Order of Judgment by default against the Islamic Republic of Iran. ECF No. 3443. Since then, the Court has issued recommendations on four motions seeking entries of partial default judgment for personal injuries suffered by the Burnett Plaintiffs. Fifty-one additional Plaintiffs bring the fifth such motion for personal injuries sustained in the terrorist attacks on September 11, 2001. ECF No. 7005. The Court recommends that the Plaintiffs' motion be GRANTED in part.

## DISCUSSION

    The Court assumes familiarity with the background of this case and discusses only those aspects relevant to this report and recommendation. Since Judge Daniels issued the default judgment against Iran in January 2017, ECF No. 3443, this Court has issued reports and recommendations in favor of granting four of the Burnett Plaintiffs' motions for personal injury damages, starting on February 7, 2020. ECF No. 5879 ("Burnett I"). Burnett I defined a

framework for assessing personal injury damage claims brought under Section 1605A of the Foreign Sovereign Immunities Act. Id. at 2–10. This framework divides injuries into three categories with expected damages for each: the baseline "severe" injuries ($7 million), a "significant" injuries downward departure category ($5 million), and an upward departure "devastating" injuries category ($10 million). Id. at 6–10. For rare individuals with exceptionally traumatic injuries, the Court has recommended damages above $10 million. See, e.g., ECF No. 5909 at 12–13 (awarding damages of $25 million where the plaintiff's injuries were "beyond devastating").

The Court used this framework to analyze three subsequent motions for personal injury damages made by the Burnett Plaintiffs: Burnett II, ECF No. 5888 at 2, Burnett III, ECF No. 5909 at 2, and Burnett IV, ECF No. 5932 at 2. The Burnett I framework was also employed to assess a similar motion for default judgment made by the plaintiffs in Ashton et al. v. al Qaeda Islamic Army, et al., 02-cv-6977 (GBD)(SN). ECF No. 5914 at 2. Having reviewed Burnett I, the Court determines that it remains the proper framework for evaluating personal injury claims.

The current motion ("Burnett V") seeks (1) compensatory damages for pain and suffering inflicted during the September 11, 2001 Terrorist Attacks, (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001, until the date of the judgment, (3) leave for these 51 plaintiffs to seek punitive damages, economic damages, or other damages at a later date, and (4) leave for other Burnett personal injury plaintiffs to file applications for damages awards later if such awards have not been address already. See ECF No. 7006 at 52.

## I.   <u>BURNETT V</u> PERSONAL INJURY PLAINTIFFS

The Court analyzes each of the 51 plaintiffs' claims for pain and suffering individually based on the framework laid out in <u>Burnett I</u>. ECF No. 5879. The plaintiffs provided additional information in a supplemental letter at ECF No. 7127.

### 1.  Jocelyne Ambroise

On the day of the attacks, Jocelyne Ambroise was working for Union Bank of California in Tower Two (the South Tower) of the World Trade Center Towers. ECF No. 7007-2 at ¶¶ 3–4. She watched flames pour from Tower One (the North Tower) after the first plane struck, then fled, escaping Tower Two just before it was struck by the second plane. <u>Id.</u> at ¶ 5.

As she bolted, Ms. Ambroise fell and hit her head on the concrete. <u>Id.</u> She reports suffering a head injury as well as a left shoulder fracture. <u>Id.</u> at ¶ 6. She also experienced anxiety, depression, <u>id.</u> at ¶ 7, and recurring dreams about the attacks for about nine months. <u>Id.</u> at ¶ 8. She sought medical treatment for her physical injuries, undergoing physical therapy three times a week for six months. <u>Id.</u> at ¶ 9. Her medical records confirm these injuries. <u>Id.</u> at Ex. B at 1–2, 4–5. These records do not suggest permanent or long-term effects from the head wound. Therefore, based on her head injury and a fracture addressed through physical therapy, the Court finds that Ms. Ambroise's injuries are significant and recommends a $5 million award.

### 2.  Benjamin Arroyo

Benjamin Arroyo was working as a doorman in the lobby of Three World Trade Center, the Marriott World Trade Center Hotel. ECF No. 7007-3 at ¶ 3. Upon hearing the explosion from Tower One, he went out into the street to investigate, only to witness people jumping from the tower and "exploding as they hit the pavement below." <u>Id.</u> at ¶ 4. He tried to assist people in the area before retreating towards the Hudson River. <u>Id.</u> at ¶¶ 4, 6. Then, he saw Tower Two

collapse and was enveloped in dust and chemical debris. Id. at ¶ 6. He retreated towards the Hudson River, injuring his ankle in the process. Id. Eventually, he made it home. Id. at ¶ 7.

Because of the debris and chemicals he inhaled, Mr. Arroyo states that he suffers from "lung nodules, respiratory infections, shortness of breath on exertion, reactive airway dysfunction syndrome (RADS), headaches, chronic sinusitis, extrinsic asthma, chronic rhinitis, gastroesophageal reflux, stomach disorders, sleep apnea, asthenia, and short term memory loss." Id. at ¶ 10. He reports that this ankle injury turned out to be a broken ankle and he also suffered a right knee effusion. Id. He also suffers from anxiety and bouts of depression. Id. at ¶ 11. He has included copies of his medical records corroborating his post-traumatic stress disorder (PTSD), id. at Ex. C at 4, chronic sinusitis, depression, extrinsic asthma, and gastroesophageal reflex disease (GERD). Id. at Ex. C at 6. The Court could not confirm the ankle sprain or knee effusion. Given his psychological trauma and respiratory issues, the Court finds that Mr. Arroyo's injuries are significant and recommends a $5 million award.

### 3. Prakash Bhatt

When the first plane struck Tower One, it sent shards of debris and glass falling through the ceiling of the Marriott Green Café at Three World Trade Center. ECF No. 7007-4 at ¶¶ 4–5. There, Prakash Bhatt was working as a waiter in the dining room. Id. at ¶ 4. He was hit by the falling wreckage, suffering injuries to his neck, lower back, right wrist and hand, right hip, and elbow. Id. at 6. As he tried to take cover, he watched people jump from Tower One to their deaths and saw a customer in his restaurant get killed by falling debris. Id. at ¶ 7. By that point, body parts were falling around him. Id. at ¶ 8. As he tried to flee the carnage, he was knocked down by a fleeing crowd, suffering additional injuries to his neck, back, and arm. Id. at ¶ 9.

Then, just as he was calling his mother to tell her that he survived the Tower One explosion, the second plane struck. <u>Id.</u> at ¶ 10. He escaped a little after that second strike. <u>Id.</u> at ¶ 11.

Mr. Bhatt suffered a cervical sprain, a lumbar sprain, a right elbow injury leading to tendinitis, a left hip injury, and a significant sprain in the right wrist that led to the development of carpal tunnel syndrome. <u>Id.</u> at ¶ 12. He did not return to work for over a year because of these injuries. <u>Id.</u> He was also diagnosed with PTSD. <u>Id.</u> at ¶ 13. He sought medical assistance for these injuries and has submitted copies of his treatment records, which align with his declaration. <u>Id.</u> at Ex. B at 11, 14, 44.[1] Mr. Bhatt's sprains and PTSD are significant injures for which the Court recommends a $5 million award.

### 4. Quinceyann Booker-Jackson

When the first plane hit Tower One, Quinceyann Booker-Jackson was in an elevator heading for her job with Unique Security on the 61st floor. ECF No. 7007-5 at ¶¶ 3, 5. The elevator plummeted back to the ground floor and the doors blew open. <u>Id.</u> at ¶ 5. She fled outside, <u>id.</u>, where she saw people jumping from Tower One. <u>Id.</u> at ¶ 6. When the second plane hit, a bystander used his body to shield her from the debris. <u>Id.</u> at ¶ 7. She was then trampled by a fleeing crowd before another stranger paid for her to board a train out of the area. <u>Id.</u> at ¶ 10.

Ms. Booker-Jackson did not go outside for two years after the attack. <u>Id.</u> at ¶ 11. She reports suffering from panic disorder, anxiety, and major depression, and PTSD. <u>Id.</u> at ¶¶ 12, 14, 15. She also reports a fractured right ankle, injuries to her back and head, asthma, chronic rhinosinusitis, and obstructive sleep apnea. <u>Id.</u> at ¶ 12. She pursued medical assistance for these injuries and has submitted copies of her treatment records. ECF No. 7127 at Ex. C at 9. Based on

---

[1] Mr. Bhatt's declaration lists the medical records as being Exhibit C, ECF No. 7007-4 at ¶ 14, but the exhibit is labeled as "Exhibit B." The Court has located no Exhibit C.

these records, the Court agrees with Ms. Booker-Jackson that her injuries should be classified as significant. ECF No. 7006 at 13. Accordingly, the Court recommends an award of $5 million.

### 5. Carmen Bridgeforth

On the 43rd floor of Tower One, Carmen Bridgeforth was working as a cashier in a cafeteria while her husband David Allen Bridgeforth worked in the kitchen. ECF No. 7007-6 at ¶ 4. The impact of the first plane hitting the tower ricocheted her between the steel bars separating cashiers from customers. Id. In the kitchen, the impact caused a grill to crush David's legs, inflicting severe burns. Id. Ms. Bridgeforth's youngest son had been there with her that morning too. Id. He had just left the cafeteria, so she had no idea if he was alive. Id.

She and her husband began making their way down 43 flights of stairs, but she slipped and fell on the way, injuring her knees and twisting her back. Id. at ¶ 5. As they emerged, they witnessed people jumping from buildings and saw their bodies hit the ground. Id. at ¶ 6. The Bridgeforths tried to leave the area but were blinded by smoke and debris, causing Ms. Bridgeforth to run into a truck and further injured her head and back. Id. at ¶ 7. Then her husband fell and pulled her down, further injuring her shoulder. Id. They struck numerous other objects while fleeing through the cloud until they finally escaped. Id. Mr. Bridgeforth was later awarded $7 million in damages for injuries suffered that day. See ECF No. 5932 at 3 (recommending a $7 million award), ECF No. 5980 (Clerk's Judgment confirming the recommended award).

Ms. Bridgeforth suffered multiple serious injuries in her escape alongside her injured husband. Specifically, she reports head trauma, vertigo, memory impairment, cervical spine disorder, cervicodorsal derangement, lumbar and lumbosacral derangement, bilateral derangement of the shoulders and ankles, bilateral knee and leg sprains, toxic bronchopneumonitis from fume inhalation, and severe smoke and dust inhalation causing chronic respiratory issues and painful sinus nodules. Id. at ¶ 8. She continues to suffer from bouts of

6

depression as well. Id. at ¶ 9. She has attached medical records of her treatment as well. Id. at Ex

B at 8, 19. Ms. Bridgeforth suffered brain injuries causing "lasting cognitive impairment", ECF

No. 5879 at 7, as well as a host of other injuries suffered while fleeing with her severely burned

husband. The Court finds these injuries to be severe and recommends an award of $7 million.

### 6. Pasquale Buzzelli

Pasquale Buzzelli was riding an elevator up Tower One when the first plane struck. ECF

No. 7007-7 at ¶ 4. He made it to his office on the 64th floor, id., and had just finished a call with

his wife when the second plane slammed into Tower Two. Id. at ¶ 5. He and his coworkers

decided to leave the building and began descending via a stairwell. Id. at ¶¶ 6–7. When he

reached the 22nd floor, the building began to shake, and Mr. Buzzelli tried to take cover in a

stairwell corner beneath a landing. Id. at ¶ 7. Then, Tower One began to collapse. Mr. Buzzelli

saw flashes of light from falling debris but recalled nothing more until he awoke on the edge of a

pile of debris. Id. at ¶ 8. Miraculously, he had survived and was fifteen feet off the ground on a

pile of wreckage. Id. at ¶¶ 9–10. With only limited mobility, he managed to attract the attention

of a rescue worker and a team got him to a hospital. Id. at ¶¶ 11–13.[2]

Though he survived the collapse, Mr. Buzzelli fractured multiple bones in his right ankle

and suffered impact injuries to his right knee, right leg, right shoulder, and upper neck. Id. at ¶

14. He also suffered lacerations, abrasions, and contusions across his entire body, including

lacerations to his face. Id. The debris he inhaled caused him to develop GERD and a stomach

ulcer. Id. Finally, he continues to suffer severe emotional distress, having been diagnosed with a

major depressive disorder with recurrence, PTSD, an anxiety disorder, and a panic disorder, all

---

[2] While not necessary to the determination of this motion, the remarkable details of Mr. Buzzelli's
survival and rescue are recounted in more detail in Steve Fishman, The Miracle Survivors, New York
(Sept. 5, 2003), available at https://nymag.com/nymetro/news/sept11/2003/n_9189/.

of which continue today. Id. at ¶ 15. He continues to receive medical assistance for these injuries and has submitted copies of these treatment records. Id. at Ex. B at 13–15, 28–29. Given the physical and psychological injuries Mr. Buzzelli suffered from quite literally having Tower One collapse on him, Court finds that his injuries are severe and recommends a $7 million award.

### 7. Richard Martin Bylicki

Richard Martin Bylicki was an NYPD sergeant working in the New York City Mayor's Office of Emergency Management (OEM) at Seven World Trade Center on the morning of the attacks. ECF No. 7007-8 at ¶¶ 3–4. He learned from the Federal Aviation Administration that a third plane was still unaccounted for and could also be headed for New York. Id. at 5. It was feared that this plane might hit the Citywide Command Center at Seven World Trade Center, so the decision was made to evacuate the building. Id. at ¶ 6. Sgt. Bylicki then made his way to the fire command post in Tower One, stepping across human remains as he went. Id. But, when he reached the post, Tower Two collapsed, and he was buried in debris, inhaling large amounts of dust and debris. Id. at ¶ 7. Sgt. Bylicki managed to extract himself and escaped, assisting a wounded officer in the process. Id. at ¶ 8.

The wounds Sgt. Bylicki suffered on September 11 include a permanently dislocated right finger, a closed head wound, various scrapes, bruises, and contusions, chronic rhinitis, sinusitis, upper respiratory disease, obstructive airway disease, spots on his lungs, GERD, and sleep apnea. Id. at ¶ 9. He has also been diagnosed with a major depressive disorder with recurrence, PTSD, and anxiety and panic disorders. Id. at ¶ 10. He has submitted medical records detailing his treatment, id. at Ex. B at 1–4, 13, and requests an upward departure to the "devastating" category of injury. ECF No. 7006 at 16.

While recognizing Sgt. Bylicki's heroism, the injuries he sustained (including respiratory issues and a permanently dislocated right finger from being buried) fit into the severe, rather than

the devastating category, for which factors like grievous burns, long-term hospitalization, loss of limbs, and other severe permanent mobility or cognitive impairments are expected. ECF No. 5879 at 8. Accordingly, the Court recommends that Sgt. Bylicki be awarded $7 million.

### 8. Luis Carbonell

Luis Carbonell was drinking coffee in an employee's locker room when the first plane struck. ECF No. 7007-9 at ¶ 5. He tried to leave but faced a mass of conflicting instructions as various security guards or police blocked exits or told him that it was safe to return to his area. Id. at ¶¶ 5–6. He still tried to escape but was pushed down and trampled by a large crowd. Id. at ¶ 7. When he was finally able to make his way out, he had to navigate in almost zero-visibility as the air was becoming thick with smoke and debris from the collapse of Tower Two. Id. Eventually, he made his way to a clearing. Id.

Mr. Carbonell suffered numerous injuries when he was trampled. Id. He sprained his knee, shoulder, and right ankle, had multiple cervical disk herniations, and suffered a broken finger that required surgery to repair. Id. at ¶ 9. He also suffered from several respiratory issues as a result of debris inhalation, including asthma, bronchitis, sinusitis, and rhinitis. Id. Psychologically, he has been diagnosed with a major depressive disorder with recurrence, PTSD, and anxiety, sleep, and panic disorders. Id. at ¶ 10. He has submitted medical documentation for these injuries. Id. at Ex. C at 1, 11, 13, 22, 29. Mr. Carbonell's multiple sprains, single smaller broken bone, respiratory issues, and psychological harms are significant injuries so the Court recommends a $5 million award.

### 9. Frank Castrogiovanni

Frank Castrogiovanni was working on the 81st floor of the Tower One on the morning of September 11. ECF No. 7127 at Ex. B at 1. When the tower was struck, he headed for the stairwell, trying to help others as he went. Id at 2. As he fled, he saw victims who had been

seriously burned. <u>Id.</u> He also fell as he ran down the stairs and then several more times as he tried to navigate the debris in his escape. <u>Id.</u> at 2, 5. He made it to the street but, having made it about 200 feet from the towers, he stopped to rest. <u>Id.</u> at 5. As he was escaping, he saw people falling to their deaths and people burned so severely that their skin was falling off their arms and it was impossible to tell their race. ECF No. 7007-10 at ¶ 7. Then, the towers fell, and he lost consciousness, awaking in the hospital. ECF No. 7127 at Ex. B at 5. He also suffered physically in the form of smoke and debris inhalation, as well as injuries to his back, shoulder, and left knee. <u>Id.</u> at ¶ 5. These injuries required four major surgeries, including a neck surgery involving the implantation of plates and screws. <u>Id.</u> at ¶ 6. Additionally, he suffers from anxiety and bouts of depression. <u>Id.</u> at ¶ 7. Mr. Castrogiovanni has provided medical records substantiating his injuries. <u>Id.</u> at Ex. C at 1, 4, and 11. These injuries, requiring multiple surgeries to address, are severe and the Court therefore recommends an award of $7 million.

### 10. Carmen Colon

Carmen Colon was on her way to work at Tower Two on the morning of the attack. ECF No. 7007-11 at ¶ 5. Undaunted by the flames coming from Tower One, she proceeded to Tower Two, but when she got there, she felt something was wrong and decided to leave. <u>Id.</u> at ¶ 6. As she exited, she looked up and saw the second plane hit right where her company's offices were. <u>Id.</u> at 7. As she watched, she clenched her jaw so hard she broke her upper right dental bridge. <u>Id.</u> Glass began falling around her and she started to inhale debris and chemicals from the burning buildings. <u>Id.</u> Though she felt unable to move, a stranger led her away from Ground Zero and she eventually made it home. <u>Id.</u> at ¶¶ 8–9.

In addition to her broken dental bridge, Ms. Colon suffered asthma, chronic rhinosinusitis, and sleep apnea. <u>Id.</u> at ¶ 11. She also claims to have suffered PSTD, <u>id.</u> at ¶ 14, and because the attacks, leaves home rarely and only ventures into Manhattan for medical

appointments. Id. at ¶ 15. In support of her claim, she has provided medical records. id. at Ex. C at 2. The Court's review of her medical records confirmed the respiratory issues but was unable to confirm the PTSD or the dental injury. Accordingly, it finds that Ms. Colon's injuries were significant and recommends an award of $5 million.

### 11. Joel Council

After the first plane struck Tower One, Joel Council called his wife and she begged him to leave the area. ECF No. 7007-12 at ¶ 5. He went outside, saw people leaping from Tower One, then witnessed the second plane strike Tower Two. Id. He started to flee but was hurt tripping over a body. Id. He ran, then walked when his strength gave out, until he made it to Brooklyn, where his wife picked him up. Id.

Mr. Council suffered a left knee joint effusion, muscle spasms in his neck, and a dislocated disk. Id. at ¶ 6. He also suffers from major depression, anxiety, and PTSD—he continues to see flashbacks of people jumping from the buildings. Id. at ¶ 7. He has submitted medical records relating to his treatment of these injuries. Id. at Ex. B at 1, 5, 9, 10, 13. Based on these records the Court concludes that his injuries, including his PTSD, are significant. Accordingly, the Court recommends an award of $5 million.

### 12. Fernando Cuba

Fernando Cuba was working in Tower Two as a field technician for Verizon Wireless when the first plane stuck. ECF No. 7007-13 at ¶ 3. He decided to leave soon after he heard the explosions. Id. at ¶ 4. After he exited, Tower Two collapsed, and he twisted his left leg in his rush to escape the falling debris. Id. Unable to walk, he crawled to a nearby building to take shelter. Id. Eventually, he was located by rescue workers who got him to a hospital. Id. at ¶ 6.

At the hospital, he learned that his twisted leg was actually a ruptured Achilles tendon requiring surgical intervention. Id. Mr. Cuba has submitted medical records associated with his

injuries. Id. at Ex. B at 1. The Court finds that the ruptured tendon is a significant injury and therefore recommends a $5 million award for Mr. Cuba.

### 13. Andres De La Rosa

Andres De La Rosa was working as a busser for the Marriott World Trade Center Hotel when the terrorists struck. ECF No. 7007-14 at ¶ 3. He was in a basement cafeteria drinking coffee when he heard an explosion. He tried to escape but, in the chaos, fell down and was knocked unconscious. Id. at ¶ 4. He awoke, but was then trampled by people attempting to escape. Id. at ¶ 5. He finally managed to get to his feet and flee before the towers collapsed. Id.

Mr. De La Rosa reports suffering a closed head injury leading to a loss of consciousness, lower back pain with bulging discs, bilateral knee injuries including a torn meniscus in the left knee, right shoulder pain with a decreased range of motion, and leg cramps. Id. at ¶ 6. His physical and emotional pain led him to attempt suicide one week after the attacks. Id. He continues to receive medical attention for these injuries and has submitted records of his treatment. Id. at Ex. C at 1–2, 6–7. Accordingly, the Court finds that Mr. De La Rosa's injuries are significant and entitle him to $5 million in damages.

### 14. Elaine Duch

Elaine Duch worked on the 88th floor of Tower One, just a few floors below where the plane stuck. ECF No. 7007-15 at ¶¶ 3–5. When it hit, a "fireball of fuel and chemicals" came through the elevator shaft, enveloping her in flames. Id. at ¶ 5. Her clothes burnt away, and her colleagues had to put the flames out with their hands. Id. They led her away and someone gave her a sweater to cover herself as her skin dripped down her legs. Id. Despite her severe burns, she had to walk down 88 floors, aided by two friends, to escape. When she reached the bottom, she was put on a stretcher and given last rites—responders expected her to die. Id. at ¶6.

She refused to succumb despite third-degree burns on over 77 percent of her body. Id. at ¶ 7. Seven surgeries were needed to treat just the burns, id., and she had to stay at the Weill Cornell Medical Center Burn Unit for over four months. Id. at ¶ 10. She was in a medically induced coma until December 29, 2001. Id. After her release from the Burn Unit she was sent to a rehabilitation center. Id. She did not leave until June 5, 2002, nine months after the attack.

These burns caused a thinning of Ms. Duch's cornea resulting in vision loss, and heterotopic ossification of an elbow and several fingers, which required further surgeries to correct. Id. at ¶ 7. The mass of jet fuel she inhaled caused adult respiratory distress syndrome, respiratory failure, nosocomial pneumonia with MRSA, and chronic bronchitis. Id. Finally, the antibiotics she was taking to address infections related to her burns caused bilateral hearing loss. Id. These injuries are beyond devastating. Ms. Duch suffered burns over three-fourths of her body and was hospitalized for nine months, enduring numerous surgeries in the process. She has not provided medical records supporting her claims, but the injuries were the subject of substantial media coverage detailing the scope of her injuries and she has incorporated this coverage into her declaration by reference. Id. at ¶ 10.[3] The Court finds that this sufficient to evaluate her injuries and recommends a $15 million award.

---

[3] See generally ECF No. 7007-15 at ¶ 10 citing World Trade Centre Burns Victim, Associated Press (Jan. 29, 2002, 5:00 AM), available at http://www.aparchive.com/metadata/youtube/a96371db76f2a86ca330bca3165003f2. While not necessary to the determination of this motion, the Court notes that numerous other sources corroborate Ms. Duch's account of her injuries. See Hugh Dougherty, 88th Floor Survivor Leaves Hospital, The Guardian (Jan. 29, 2002, 10:11 PM), available at https://www.theguardian.com/world/2002/jan/30/september11.usa, John Lehmann, Brave Face – WTC "Miracle" Survivor Leaves Hosp Burn Unit, New York Post (Jan. 30, 2002, 5:00 AM), available at https://nypost.com/2002/01/30/brave-face-wtc-miracle-survivor-leaves-hosp-burn-unit/.

**15. Timothy Duffy**

Firefighter Timothy Duffy had finished his shift and was not scheduled to work on September 11. ECF No. 7007-16 at ¶ 4. But, when the call came in, he answered, id., weaving through traffic on his motorcycle and reaching the attack site just after Tower Two collapsed. Id. at ¶ 5. As he arrived, Tower One collapsed too, and he was partially buried in rubble. Id. at ¶ 6. The debris injured his head, neck, and back, while falling glass struck him in the eyes. Id. He managed to escape and took shelter in a nearby Brooks Brothers store, where he started helping others who were injured, transporting several to Beekman Hospital himself. Id. at ¶ 8. Only after did he seek treatment for his own injuries. Id. at ¶ 9.

Mr. Duffy suffered pain and head trauma from the falling debris, resulting in concussion syndrome, severe headaches, and vertigo. Id. at 10. Because of the large amount of toxic material he inhaled, he suffers from squamous cell carcinoma on his chest, asthma, chronic respiratory disorder, chronic rhinosinusitis, GERD with associated sleep apnea, chronic bronchitis, and psoriatic arthritis. Id. at ¶ 10. He also suffers from a major depressive disorder with recurrence. Id. at ¶ 11. He has provided a copy of his medical records, id. at Ex. C at 2, 4, 8–9, 29, which suggest that his injuries are severe. The vertigo and head trauma existed but appear to have resolved within a few months of the attack, id. at Ex. C at 6–7, though he continues to face respiratory issues. Id. at Ex. C at 98. Given the head injuries Mr. Duffy received from falling debris, the long-term respiratory issues, and his psychological injuries, the Court finds that his injuries are severe and recommends an award of $7 million.

### 16. Gabriel Esposito

Gabriel Esposito was a firefighter with Engine 14 of the FDNY. ECF No. 7007-17 at ¶ 3. When the terrorists struck, he was recalled to duty to assist with the response and worked to rescue survivors at the attack site. Id. at ¶¶ 3–4. While aiding survivors, he was struck by falling wreckage and inhaled chemicals, dust, and debris. Id. at ¶ 4. He was present at the site not only on the day of the attack, but for two days after. Id.

During his rescue efforts, Mr. Esposito suffered numerous injuries: he dislocated his ankle and hip, sprained his shoulder, and injured his elbow. Id. at ¶ 6. The debris he inhaled led to GERD and chronic rhinosinusitis. Id. He continues to seek medical treatment for these injuries and has attached copies of relevant excerpts of his medical records showing evidence of foot and groin sprains, along with the respiratory issues. Id. at Ex. B at 40–41. Mr. Espositio's sprains and respiratory injuries are significant injuries that merit $5 million in damages.

### 17. Edgar Felix

Edgar Felix was working in the Millennium Hotel across from Tower One on the day of the attacks. ECF No. 7007-18 at ¶¶ 3–4. When he heard an explosion he went outside to see what was going on. Id. at ¶ 4. He was still outside when the second plane hit, but then began to flee. Id. Smoke began to envelop him, and he fell as he attempted to run. Id. A manager from the hotel picked him up and he eventually escaped. Id. Despite having injured his knee in the fall, he returned to the area a few days later to help his hotel clean-up. Id. He worked through his knee pain and helped with the clean-up efforts at the hotel for four months, eventually working there for eight more years. After that, though, the knee pain led him to stop working at the hotel. He has taken odd jobs since 2010. Id.

Mr. Felix had four surgeries on his knee in total, one each in 2002, 2011, 2014, and 2016. Id. The specific nature of this knee injury is a derangement of the meniscus. Id. at ¶ 6. He still

has difficulties with stairs and cannot lift heavy objects. Id. at ¶ 4. He has developed chronic obstructive pulmonary disease (COPD) from the inhalation of debris as well. Id. Finally, he has developed gastric reflux disease and uses a CPAP machine for his lung damage and sleep apnea. Id. at ¶ 7. Before the attack, it appears he may have already had respiratory issues that were exacerbated by exposure to toxins at Ground Zero. Id. at Ex. B at 3. He has attached medical records documenting the treatment he received for injuries he received after the attacks. Id. at Ex. B at 5. He describes his injuries as "significant," ECF No. 7006 at 24, and the Court agrees with this assessment. Accordingly, the Court recommends an award of $5 million.

**18. Erasmo Fernandez**

Erasmo Fernandez was working on an elevator in Tower One when it was struck by the first plane. ECF No. 7007-19 at ¶¶ 3–4. He began fleeing down a stairwell, then fell, injuring his neck and back. Id. at ¶ 4. He reached the bottom floor of Tower One but could not escape because of a locked door. Id. Eventually, he found a way out and sought medical treatment not only for his back and neck, but for his ears, which were hurting from the explosion. Id.

Mr. Fernandez reports back and neck injuries as well as deafness in his left ear from the explosion in Tower One. Id. at ¶ 6. He has also developed GERD, a sleeping disorder, and chronic bronchitis from the dust and debris he inhaled. Id. Psychologically, he continues to suffer from PTSD, anxiety, and bouts of depression. His affidavit includes select medical records relating to treatment he received after the attack. Id. at Ex. B at 1, 8. Those records show that while Mr. Fernandez suffered some hearing loss, he rarely uses a hearing aid and appears to have good functioning in his other ear. Id. at Ex. B at 1. Accordingly, the Court finds that his injuries are significant and recommends a $5 million award.

### 19. Genoveva "Jenny" Fernandez

On the morning of September 11, Genoveva "Jenny" Fernandez's commute brought her to the World Trade Center area after the first plane struck. ECF No. 7007-20 at ¶ 5. She saw the flames and watched people jumping from the tower to their deaths. Id. Still, she made her way into Tower Two, only to be blown across the lobby as the second plane hit. Id. at ¶ 6. Then debris fell, and she was trapped under a pile of concrete and rubble. Id. Over the next several minutes, she inhaled masses of building debris as she remained trapped. Id. at ¶ 7. Finally, a group of rescuers helped her escape. Id. at ¶ 8.

As a result of the debris and chemicals she inhaled while trapped, she suffers from a chronic cough, chronic sinusitis, nosebleeds, gastritis, and sleep apnea. Id. at ¶ 10. The debris also inflicted injuries on her lower body, so she suffers from inflammation, thrombosis, and other vascular issues with her left leg, in addition to other bruises and scratches inflicted by the debris. Id. She also suffers from PTSD, severe depression, and insomnia. Id. at ¶ 11. She had submitted medical records, which has allowed the Court to confirm the chronic asthma and PTSD. Id. at Ex. C at 1. Ms. Fernandez's respiratory injuries and PTSD are significant, and the Court therefore recommends a $5 million award.

### 20. Roger Fernandez

When Tower Two collapsed, Roger Fernandez was on the mezzanine level of Tower One. ECF No. 7007-21 at ¶ 4. He inhaled a large volume of debris, which also got into his eyes. Id. He reports being diagnosed with corneal erosion, corneal edema, chronic sinusitis, and high blood pressure, as well as chronic stomach issues. He has had major surgeries to deal with damage to his liver, kidneys, and intestines. Id. The Court has confirmed the eye injuries caused

17

by the September 11 Attacks based on his submitted records. Id. at Ex. B at 7.[4] It is unable to corroborate that his other injuries are connected to the September 11 Attacks. While this might merit a downward adjustment, Mr. Fernandez has already requested only that his injuries be classified as significant. ECF No. 7006 at 26. His eye injuries qualify on this front and the Court therefore recommends a $5 million award.

### 21. Vincent Ferranti

Vincent Ferranti was working at Morgan Stanley as a bond redemption-treasury specialist at Five World Trade Center. ECF No. 7007-22 at ¶ 3. When he heard the explosion and saw the falling debris he ran for the escalators, id. at ¶ 4, and made his way out on to the street. Id. at ¶ 5. He emerged into an area full of dust and debris, and with bodies falling everywhere. Id. He inhaled much of this dust, and when he attempted to flee, someone knocked him down, injuring his right shoulder. Id. He looked for a friend, Johnny Torres, who worked in Tower Two, and when he found him, they tried to escape together. Id. at ¶ 7. As they retreated on foot, Mr. Ferranti realized that he had injured his neck, lower back, and legs. Id. at ¶ 9. When he and Mr. Torres made it to the Williamsburg Bridge, they saw the towers collapse. Id. at ¶ 10. Eventually, the two fled over the bridge and Mr. Ferranti made it home. Id. at ¶ 11.

In his escape, he suffered a dislocated right shoulder, neck spasms, lower back pain, and a cervical neck injury that included bulging discs. Because of the debris and chemicals he inhaled, he also reports suffering from chronic migraine headaches, pneumonia, shortness of breath, and a persistent cough. Id. at ¶ 12. He further reports PTSD, a major depressive disorder with recurrence, and anxiety and panic disorders. Id. at ¶ 13. He has provided relevant medical records, id. at Ex. B at 4, 6, as well as a copy of a New York Times article where he discusses

---

[4] Mr. Fernandez reports submitting two tranches of medical records: Exhibit B and C. The Court has not located an Exhibit C.

some of the challenges he faced with work as a result of his psychological harms. Id. at Ex. C. These psychological, orthopedic, and respiratory injuries are significant, and the Court therefore recommends a $5 million award.

### 22. Thomas Joseph Forbes

Thomas Joseph Forbes watched both planes strike the World Trade Center from his hotel room across the street. ECF No. 7007-23 at ¶ 4. He saw people jump from the towers, some holding hands as they leaped. Id. When the second plane struck, the force of the impact launched him backwards: his head struck a marble shelf and he injured his left elbow as he tried to break his fall. Id. He abandoned most of his belongings in the hotel and fled before the towers collapsed—the blood and bodies he saw as he left made the area look like "a butcher's counter." Id. As he walked through the streets of New York, he found a nurse who told him that he had dislocated his elbow and fashioned a makeshift splint. Id. Not wanting to get help before those he felt would likely be more injured, Mr. Forbes did not seek medical attention in New York. Id. Five days later, he boarded a plane to return to California, still wearing the improvised splint. Id.

In California, Mr. Forbes saw a doctor for his elbow as well as a psychiatric team to assist with his PTSD. Id. at ¶ 8. Overall, he suffered a dislocated elbow, cuts and bruises to his neck and back as well as PTSD, anxiety, and depression. Id. at ¶ 6. He has submitted medical records relating to treatment for these injuries. Id. at Ex. B at 1–2, 6–7. His psychological traumas and dislocated elbow are significant injuries for which the Court recommends a $5 million award.

### 23. Leileth Foster

Leileth Foster was working as a security guard at Three World Trade Center when the first plane struck. ECF No. 7007-24 at ¶¶ 3–4. She helped law enforcement officers open building exits and evacuate the building. Id. at ¶ 4. But, when she opened a door, a panicked

surge of people trampled her, inflicting injuries on her back, lower legs, and ankles. Id. at ¶ 5. A

stranger then picked her up and helped her escape the area. Id. The security uniform Ms. Foster

wore that day still hangs in her closet, covered in the dust from fallen buildings. Id. at ¶ 6.

Ms. Foster reports numerous injuries from that day: a soft tissue back injury, bilateral

knee injuries (including a torn meniscus), and bilateral ankle injuries (including torn ligaments in

both ankles). Id. at ¶ 7. She underwent ankle surgery in 2002 and then knee surgery in 2003. Id.

She has also been diagnosed with a major depressive disorder with recurrence, PTSD, an anxiety

disorder, and a panic disorder. Id. at ¶ 8. Her medical records corroborate her reported injuries.

Id. at Ex. B at 2, 25–37. These trampling injuries, which required multiple surgeries to address,

combined with her psychological injuries are severe. Accordingly, the Court recommends a $7

million award.

### 24. Henry Fuerte

When the first plane struck Tower One, Henry Fuerte had just stepped off an elevator on

the 78th floor and was stepping onto a second elevator up to his office on the 95th floor. ECF

No. 7007-25 at ¶ 6. The force of the strike blew him out of the elevator. Id. Dazed, he tried,

unsuccessfully, to free others trapped in another elevator but was unable to do so. Id. He and

another person then found a narrow exit stairwell only wide enough for two people. Id. As he

escaped past the 35th floor, he encountered firefighters heading up the stairs—he would "never

forget the looks on their faces." Id. He finally escaped and as he began walking towards the

Brooklyn Bridge, he saw Tower Two collapse. Id

Mr. Fuerte suffered eye injuries from flying debris, and a back injury when he was blown

out of the second elevator. Id. at ¶ 7. The back injury required six to eight months of physical

therapy to heal. Id. He also suffered from PSTD. Id. at ¶ 8. His medical records related to the

attack were destroyed during Hurricane Sandy on October 29, 2012. Id. at ¶ 9.

While the lack of medical records could merit a downward departure from the baseline damage award, ECF No. 5879 at 9 ("The absence of medical records supporting and providing further information regarding an affiant's claims may support a downward departure in an award determination."), Mr. Fuerte seeks only damages associated with significant category. This is already a downward departure. ECF No. 7006 at 29. That satisfies the Court that no further downward adjustment is necessary. Accordingly, the Court recommends granting Mr. Fuerte a $5 million award.

### 25. Carmela M. Harrison

Carmela M. Harrison was working at her desk on the 90th floor of Tower Two, when the terrorists struck. ECF No. 7007-26 at ¶¶ 3–4. She began making her way down the stairs when Tower Two was hit by the second plane. Id. at ¶ 5. The impact knocked her down and people on the stairs above her fell on top of her. Id. As a result, she suffered back and neck injuries, nerve damage in her arm, and PTSD. Id. at ¶ 7. She continues to suffer back pain, id. at ¶ 8, and to receive medical treatment for her injuries. Id. ¶ at 9. She has provided a copy of relevant medical records substantiating her injuries. Id. at Ex. B at 1–2, 10–13. This back injury combined with psychological trauma is severe and the Court therefore recommends a $5 million award.

### 26. Elaine Helms

Elaine Helms was working as a security guard checking identifications and issuing visitor badges in the lobby of Tower Two on September 11. ECF No. 7007-27 at ¶ 3. Debris began to fall, and she found one of the exits in her building blocked by wreckage. Id. at ¶ 4. She saw people jumping from Tower One and body parts strewn around the area. Id. Seeking to escape, she made her way to the other side of the Tower Two only to be trampled as a mass of people tried to escape. Id. at ¶ 5. The crowd inflicted injuries on her back, neck, left hip, left wrist, and left shoulder. Id. She was still able to escape the area, only to then see Tower Two fall. Id.

Fearing that the terrorists would also try to bomb the Brooklyn Bridge, she took a ferry to Staten Island, where she received medical care at Meadowlands Hospital. Id. at ¶ 7.

Ms. Helms suffered several spinal injuries including bulging discs, disc herniation, and derangement of her lumbosacral spine. Id. at ¶ 8. She also sprained her left hip, left wrist, and left shoulder. Id. She suffered severe headaches, and respiratory issues because of the large amount of debris she inhaled. Id. As a result, she endured a collapsed lung on three occasions and ultimately had a lobectomy (a removal of lung lobes) in 2004. Id. In addition she suffers from PTSD, anxiety, depression and panic attacks for which she continues to receive treatment. Id. at ¶ 10. Her medical records substantiate these reports. Id. at Ex. B at 1–2, 5–6, 33, 36. Given her debilitating psychological injuries and significant physical harms from being trampled, the Court finds that Ms. Helms suffered severe injuries for which it recommends a $7 million award.

### 27. Patrick Imperato

On September 11, Patrick Imperato had traveled to the World Trade Center area to take a computer class in Tower Two. ECF No. 7007-28 at ¶ 4. As he left the train near Tower One he looked up and saw the smoking opening in the tower. Id. Then, he heard people screaming to get away. Id. at ¶ 5. He looked up and saw the second plane slam into Tower Two and felt the heat from the impact. Id. He turned and tried to flee but fell and found himself trampled by others fleeing the area. Id. He limped away from the area, id. at ¶ 6, having suffered a torn meniscus that would eventually require surgical intervention. Id. at ¶ 7. He also suffers from anxiety and bouts of depression. Id. at ¶ 10. Having reviewing Mr. Imperato's medical records, id. at Ex. C at 1–3. the Court has been unable to confirm either the psychological diagnoses or the connection of his knee injury and surgery to harms suffered on September 11. Mr. Imperato, though, already requests a downward departure from the baseline award. ECF No. 7006 at 31. Accordingly, no

further downward modification for the knee injury and psychological wounds is required. The Court finds Mr. Imperato's injuries are significant and recommends a $5 million award.

### 28. Rafaela Martinez

Rafaela Martinez was assisting a colleague with paperwork at the federal building at One Bowling Green on the morning of the attacks. ECF No. 7007-29 at ¶ 4. When the terrorists struck, she tried to escape the area but was overcome by fumes and debris from the collapsing buildings. <u>Id.</u> at ¶ 5. She fell unconscious and when she awoke, she learned she had been transported to Bayonne Hospital, where she remained until September 13. <u>Id.</u>

As a result of the attacks, Ms. Martinez reports numerous physical and psychological injuries: PTSD, depression, anxiety, a sprained right hand, leg contusions, post-concussion syndrome, hypertension, and COPD. <u>Id.</u> at ¶ 6. She reports that she has attempted suicide on four occasions. <u>Id.</u> at ¶ 7. The Court's review of her medical records supports the finding of post-concussion syndrome and PTSD, <u>id.</u> at Ex. D at 3, but could not confirm the sprains or leg contusions. The Court therefore finds that Ms. Martinez's injuries are properly classified as significant and recommends damages of $5 million.

### 29. Nexhat Mela

One Liberty Plaza was located across from the site of the World Trade Center. ECF No. 7007-30 at ¶ 3. Nexhat Mela was working there on September 11, cleaning and making repairs. <u>Id.</u> at ¶ 4. When he heard a loud explosion, everyone began trying to escape the building. <u>Id.</u> He used an emergency service elevator to exit and emerged into a scene of "complete chaos" with people running and screaming. <u>Id.</u> Then, the second plane hit Tower Two, sending smoke and debris all around him. <u>Id.</u> He tried to flee but fell down several times and was stepped on repeatedly by others similarly in flight. <u>Id.</u> Some directed him to escape towards the waterfront

but as he ran away, he began experiencing heart palpitations from the stress, as well as dizziness and shortness of breath from the debris he had inhaled. Id.

Mr. Mela escaped but suffered injuries to his cervical and lumbar spine, paroxysmal arterial fibrillation, dyspnea (difficult or labored breathing) from dust and trauma, allergic conjunctivitis to both eyes caused by debris, a lung nodule, and obstructive sleep apnea. Id. at ¶ 6. His psychological injuries include periodic limb movement disorder, PTSD, panic attacks, and anxiety. Id. In addition, he cannot be exposed to either excessive dust or excessive stress as these can trigger his recurring cardiac arrhythmia. Id. at ¶ 7. He has submitted medical records detailing his treatment, id. at Ex. B at 1, 4–6, including a "significant cardiac arrhythmia." Id. at Ex. B at 4. Mr. Mela's spinal and respiratory injuries, significant cardiac arrhythmia, and psychological traumas amount to severe harms, meriting $7 million in damages.

### 30. Roberto Mesa

When the terrorists attacked the Twin Towers, Roberto Mesa had to make his way down 68 flights of stairs to escape. ECF No. 7007-31 at ¶ 3. In the process, he fell, injuring his left knee and right shoulder. Id. That injury began a years' long ordeal.

Beginning in December 2001, a series of doctors documented the deteriorating condition of Mr. Mesa's arm and leg. Id. ¶ at 4–6. The decay culminated in 2015 with total knee replacement. Id. at ¶ 9. Medical records are included with Mr. Mesa's declaration substantiating his knee injury, id. at Ex. B at 2[5], and shoulder injury. Id. at Ex. B at 5. This orthopedic trauma, which required multiple surgeries, is a severe injury so the Court recommends a $7 million award.

---

[5] Mr. Mesa appears to have had a prior knee injury in 1991. ECF No. 7007-31 at Ex. B at 4, but his medical records state that he recovered from this injury. Accordingly, the Court does not see this as a mitigating factor in assessing his damages.

### 31. Ram Anthony Mohabir

When the first plane struck Tower One, Ram Anthony Mohabir was about five floors below the impact area. ECF No. 7007-32 at ¶ 4. He tried to escape immediately, heading down the stairwell while warning others to flee. Id. But, as he retreated down the stairs, he tripped and slammed into a concrete wall, injuring his head, neck, right shoulder, and both wrists. Id. A throng of other people then trampled him. Id. When he made it outside, the second plane struck. Id. at ¶ 5. The force of the blast knocked Mr. Mohabir down and he rose with a ringing in his ears. Id. He escaped the area, jumping over dead bodies and helping others escape as he went. Id. When Tower Two collapsed, he was surrounded by a thick cloud of glass flakes and debris. Id. at ¶ 6. He inhaled this waste and his eyes began to burn from exposure. Id. To find his way through the cloud he had to hold hands with others and navigate by the sound of a police officer's bullhorn to escape. Id. at ¶ 7.

Mr. Mohabir reports numerous physical injuries: post-concussion syndrome with lingering memory deficits and headaches, bilateral hearing loss requiring the use of a hearing aid in his left ear, cervical, thoracic, and lumbar sprains, internal derangement of the right shoulder that resulted in rotator cuff surgery in 2012, corneal injuries to both eyes, bilateral carpal tunnel syndrome in both wrists, COPD, asthma, RADS, chronic respiratory disorder, and obstructive sleep apnea. Id. at ¶ 9. He also suffered psychologically, having been diagnosed with a major depressive disorder with recurrence, PTSD, an anxiety disorder, and a panic disorder. Id. at ¶ 10. In support, he has provided his medical records. Id. at Ex. B at 4, 10–12, 21, 26, 30–31. This litany of wounds, including a shoulder injury requiring surgery, respiratory issues, hearing loss, other other wounds from being trampled, and mental health traumas, is severe. The Court therefore recommends an award of $7 million.

25

### 32. Omar Mota

Omar Mota was working in an elevator on the 44th floor of Tower Two when the second plane struck. ECF No. 7007-33 at ¶ 3. The impact jolted the elevator and debris fell on him. Id. Using the stairs, Mr. Mota escaped the building and returned to his home in the Bronx. Id. The attack inflicted both neck injuries and PTSD. Id. at ¶ 6. Mr. Mota was treated by a psychiatrist for several years afterwards and had visions of the buildings collapsing on him. Id. at ¶ 8. His medical records are attached with his declaration. Id. at Ex. B at 2, 3. These psychological harms and neck injury are significant, making an award of $5 million appropriate.

### 33. Daniel Arthur Narlock

Daniel Arthur Narlock was working on the 61st floor of Tower Two at Morgan Stanley when the first plane stuck Tower One. ECF No. 7007-34 at ¶¶ 3–4. While he and his coworkers were told that it was an accident and they could remain in place, he decided to leave. Id. at ¶ 4. He had made it down to between the 57th and 58th floors when Tower Two was struck about 19 floors from him. Id. The explosion threw him down the stairwell, which began to fill with smoke, chemicals, and other debris. Id. Unable to see more than a few feet, he navigated down the stairs using his undershirt as a makeshift mask. Id. The descent took more than 40 minutes. Id. As he emerged, the body of a man landed on the pavement nearby. Id. ¶ at 5. Then, as he tried to escape Ground Zero, Tower Two collapsed, engulfing him in a cloud of chemicals and debris. Id. He took shelter in a business and when he finally looked outside, he saw Tower One begin to collapse. Id.

In his flight down the stairwell, Mr. Narlock reports that he suffered a broken ankle. Id. at ¶ 6. He also reports suffering from emphysema, COPD, and asthma as a result of his exposure to the chemicals released in the attack. Id. This chemical exposure has caused him to suffer seizures. Id. Finally, he has been diagnosed with PTSD. To this day, his sits with his back

towards a wall facing an exit for fear catastrophe may strike again. Id. at ¶ 7. He continues to receive treatment for his lung conditions and seizures and has submitted his medical records. Id. at Ex. B. Based on these medical records the Court been able to substantiate the PTSD which also appear to be connected to the seizures, as well as some respiratory harms like sinus trouble. Id. at Ex. B at 19–21, 25. The Court, however, has been unable to confirm all of his reported respiratory conditions or the broken ankle. Additionally, it appears from his medical records that the seizures do not show the kind of long-term neurological damage that would merit a baseline award. Id. at Ex. B at 22. The Court accordingly recommends an award of $5 million.

### 34. Eugene F. O'Reilly

When Eugene F. O'Reilly, an off-duty lieutenant in the FDNY, saw the second plane hit the World Trade Center, he sprang into action. ECF No. 7007-35 at ¶ 4. Along with other off-duty firefighters, he commandeered a city bus to get to the attack site, arriving just as the second tower fell. Id. He assisted victims until the North Tower began to collapse. He ran to escape and leapt off a pier bulkhead to avoid falling debris, causing him to fracture his right shoulder landing on a barge. Id. Because of his injuries, he could no longer be a firefighter. Id. The broken shoulder required surgery and months of physical therapy. Id. at ¶ 8. He has attached a copy of his relevant medical records. Id. at Ex. B. These confirm that he suffered a right proximal fracture of the humorous, which required surgery and physical therapy. Id. at Ex. B at 4. The career-altering fractured shoulder, surgery, and months of physical therapy show that it is a severe injury for which the Court recommends $7 million in damages.

### 35. Angel R. Ortiz

Angel Ortiz's wife, Lisa Ortiz, brings this action as the administrator of his estate. ECF No. 7007-36 at ¶ 2. Ms. Ortiz though, is not a party in this Burnett action, only in the separate action, Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al., No. 03-cv-9849 (GBD)(SN) (Dec.

23, 2003). <u>See</u> ECF No. 7127 at 2. The Court has previously informed parties that, to obtain a default judgment, parties must properly be before the court, which means they must be parties in the action. ECF No. 5910. It is not sufficient that the party be before the Court in a separate proceeding in this multidistrict litigation "[b]ecause cases consolidated for MDL pretrial proceedings ordinarily retain their separate identities . . . ." <u>Gelboim v. Bank of Am. Corp.</u>, 574 U.S. 405, 406 (2015). Ms. Ortiz's motion for default judgment is thus denied without prejudice.

### 36. Pedro Pichardo

Pedro Pichardo was working on the 58th floor of Tower Two as a maintenance technician, ECF No. 7007-37 at ¶ 4, while his wife was on the 81st floor. <u>Id.</u> at ¶ 5. He saw the hole left by the impact of the first plane on Tower One and witnessed people jumping to their deaths. <u>Id.</u> at ¶ 4. Thinking first of his wife, he tried to make his way *up* Tower Two so he could guide her to safety. <u>Id.</u> at ¶ 5. But though he tried several routes, the mass of people leaving the building forced him to retreat. <u>Id.</u> As he reached about the 40th floor, he felt an impact that he would later learn was the second plane. <u>Id.</u> at ¶ 6. The shock threw him forward, causing him to injure his head and chest. <u>Id.</u> Then, he was trampled by a fleeing crowd. <u>Id.</u> Someone eventually helped him up, <u>id.</u>, and he made his way to the mezzanine level. <u>Id.</u> at ¶ 7. He stopped to look for his wife at the concourse level but could not find her in the fleeing crowd. <u>Id.</u> at ¶ 8. Thwarted, he began to flee the area, only to be trampled by another crowd. <u>Id.</u> at ¶ 9. He finally found refuge in a building but stayed in the area until the evening looking for his wife. <u>Id.</u> Thankfully, she survived the day's terrors. <u>Id.</u> at ¶ 10.

Mr. Pichardo suffered numerous physical and mental injuries: blunt head trauma, cerebral concussion, post-concussion syndrome, a peripheral tear of the medial meniscus of his left knee, an anterior ligament tear, joint effusion of the left and right knees, herniated discs, cervical spine derangement, traumatic cervical myofascitis, lumbar derangement, traumatic myofascitis lumbar

spine, right ankle sprain, tendonitis of the right knee, facial burns, and respiratory issues. Id. at ¶ 11. He has also been diagnosed with PTSD and acute anxiety. Id. at ¶ 12. His medical records substantial these injuries. Id. at Ex. B at 10. Accordingly, the Court finds that Mr. Pichardo's injuries are severe and recommend a $7 million award.

**37. Edward Joseph Prince**

At Brooklyn's firehouse E241, firefighter Edward Joseph Price heard about the attacks from his wife, who was working in Tower Two. ECF No. 7007-38 at ¶ 4. When the second plane struck, his fire company was called into Manhattan, id., reaching it just as Tower Two began to collapse. Id. at ¶ 5. He attempted to reach his wife without success, then poured his efforts into rescuing people who had been injured by falling debris. Id. He injured his neck and back and inhaled a large amount of smoke and debris. Id. For two days, he searched Ground Zero for his wife. Id. at ¶ 6. It was not until October 1, 2001 that he learned of her death. Id. at ¶ 7. On February 2, 2020, Mr. Prince was awarded $8.5 million in solatium damages for the injuries he sustained from her death. ECF No. 5848 at 9.

Mr. Prince's records present a challenging case for two reasons. First, the loss of his wife is undoubtably a grievous one. In calculating direct injuries, however, "the 'significant' category covers 'the absence of serious physical injuries combined with severe emotional injuries.'" ECF No. 7142 at 3 (quoting ECF No. 5879 at 7). In assessing such emotional injuries, the Court has consistently been "reluctant to attempt to measure one victim's emotional injury as against another's absent extraordinary conditions." ECF No. 7142 at 3. The loss of Mr. Prince's wife is thus better addressed through his solatium award than a modification to his personal injury award.

Second, the Court has been unable to verify his injuries. He reports suffering bulging discs in his neck and lower back, nerve damage in his neck, persistent headaches, a shoulder

injury, chronic sinusitis, rhinosinusitis, GERD, a deviated nasal septum, and laryngopharyngitis. ECF No. 7007-38 at ¶ 9. He further indicates that he receives regular nerve block injections for the discs and various medications to manage the chronic sinusitis. Id. at ¶ 10. The Court has been unable to verify these injuries based on his medical records. The records discussing his back injuries do not make any connection to the September 11 Attacks or discuss his treatment regime. Id. at Ex. B at 7–10. Similarly, his psychological treatment record does not make any mention of the attacks. Id. at Ex. B at 14–16. Since the Court has been unable to medically verify several of Mr. Prince's injuries, it is constrained to describe them as significant. The Court accordingly recommends an award of $5 million.

### 38. Godwin Quinones

Godwin Quinones was in the basement of Tower One when he heard an explosion. ECF No. 7007-39 at ¶ 4. He was instructed to remain in the building, but decided to leave, id. at ¶ 5, rescuing a trapped man in the process. Id. at ¶ 6. He used his shoulder to "charge into closed doors" to get out. Id. Though he made it out of the building, he tried to return to Tower One to check on his family, all of whom worked there. Id. at ¶¶ 7–8. As he tried to return, the second plane stuck, and he fled toward the Brooklyn Bridge. Id. at ¶ 8. Thankfully, his family had escaped Tower One. Id. at ¶ 9.

As a result of the attack, Mr. Quinones suffered a sprained left shoulder, forearm, and hand, as well as traumatic tendinitis of the left wrist. Id. at ¶ 10. He also suffered from the debris and chemicals he inhaled, which caused shortness of breath, bronchitis, pneumonitis, a chronic cough, GERD, and diffuse headaches. Id. He also suffers from PSTD, anxiety, and bouts of depression. Id. at ¶ 11. He has supplied medical records detailing his injuries, id at Ex. B at 10, 14–15. Mr. Quinones's sprains, respiratory issues, and PTSD are significant injuries and the Court accordingly recommends he be awarded $5 million.

### 39. Nelson Rocha

Nelson Rocha was working as a busser in the Greenhouse Restaurant of the Marriott World Trade Center Hotel. ECF No. 7007-40 at ¶ 3. When the attacks came, he ran down a set of stairs, only to slip and injure his left knee cap. Id. Mr. Rocha's medical records confirm that he suffered a patella (kneecap) fracture during the attacks. Id. at Ex. B at 5. He was also diagnosed with PTSD in 2006, id. at ¶ 6, but the Court was unable to connect that diagnosis to the September 11 Attacks based on his medical records. His knee fracture is significant, and the Court therefore recommends an award of $5 million.

### 40. Arnold John Roma

Arnold John Roma was a volunteer firefighter from Staten Island, who was sent to help in Manhattan on the day of the attacks. ECF No. 7007-41 at ¶ 4. He had just entered the lobby of the Marriot World Trade Center Hotel when he realized the buildings were going to fall. Id. at ¶ 5. He tried to run but was caught in the collapse. Id. Together, he and other trapped firefighters made their way out and he rescued a number of victims from elevators as he went. Id. As he got free though, Tower Two collapsed, and he was hit with debris, smoke and dust. Id.

Mr. Roma suffered a torn rotator cuff and bilateral corneal abrasions, along with a number of other cuts and bruises. Because of his exposure to dust and debris, he also suffers from reactive airway disease, esophageal reflux, COPD, and asthma. Id. at ¶ 6. In addition to witnessing horrors at Ground Zero, Mr. Roma's son Keith, a member of the New York Fire Patrol, died in the attacks. Id. at ¶ 7. On Christmas Eve, Mr. Roma pulled Keith's body from the rubble himself. Id. Understandably, Mr. Roma has been diagnosed with PTSD. Id. In his words, "I now only exist I am never happy." Id. He has included medical evidence of his injuries. Id. at Ex. B at 1, 8. On June 8, 2018, Mr. Roma received a solatium aware of $8.5 million for the injuries he suffered caused by Keith's death. ECF No. 4023 at 22.

As with Mr. Prince, Mr. Roma has suffered an acute emotional injury, one that is properly compensated with a solatium award. Given similar facts, the Court has consistently found that the combination of significant physical injuries and severe psychological trauma merit a finding of significant injury. See, e.g., ECF No. 5888 at 5 ("While the Court recognizes the severe emotional trauma . . . the Court in Burnett I determined that severe emotional trauma, combined with some lasting physical injury, falls in the first category of "significant" injuries.") (citing Burnett I, ECF No. 5879 at 6). Mr. Roma's physical injuries are significant, so the Court recommends a $5 million award.

### 41. Jose Sanchez

Jose Sanchez was working in the basement machine shop of Tower One when the first plane hit. ECF No. 7007-42 at ¶ 4. As he and a fellow worker went to investigate the explosion, a blast of fire and air slammed them against a wall. Id. at ¶¶ 4–5. The room began to fill with smoke and debris, and Mr. Sanchez's coworker badly injured his leg. Id. at ¶ 6. They made their way through an exit and others carried the coworker to a vehicle. Id. Mr. Sanchez was still in the area when the second plane struck but then managed to take a ferry out of New York City. Id. at ¶ 7.

He suffered minor burns to his face, scalp and head, spasms in his back and neck, and disc herniations and bulges in his spine. Id. at ¶ 8. He also suffers from PTSD, anxiety, and bouts of depression. Id. at ¶ 9. He has submitted treatment records for his injuries. Id. at Ex. C at 1, 12. These psychological and spinal injuries are significant injuries and the Court recommends an award of $5 million.

### 42. Brandon Smith

When Brandon Smith entered the lobby of Tower One, a ball of fire and jet fuel met him. ECF No. 7007-43 at ¶ 5. Still, he made it out to the street and eventually found an ambulance to

take him to St. Vincent's hospital. Id. at ¶ 7. His ordeal was not over: St. Vincent's lacked the staff and equipment to treat burn victims, so Mr. Smith spent the next 24 hours in pain until he was transferred to St. Barnabas Medical Center in Livingston, New Jersey. Id. at ¶ 8. He stayed the next several weeks at St. Barnabas enduring treatment for his burns, including two skin graft surgeries. Id. at ¶ 9. He also had to wear custom compression garments over large parts of his body for a year and a half. Id.

All told, Mr. Smith suffered second- and third-degree burns across his body, which included third-degree burns to his hands, left arm, and both ears. Id. at ¶ 10. He also experienced post-traumatic respiratory failure and upper airway edema. Id. In addition to these physical wounds, he has been diagnosed with a major depressive disorder with recurrence, PTSD, an anxiety disorder, and a panic disorder. He has submitted medical records detailing his treatment. Id. at Ex. B at 9–10. The Court has been unable to confirm Mr. Smith's PTSD and other psychological diagnoses from his medical records, but that is immaterial given the confirmed severity of his physical wounds. Mr. Smith's burns covered 20 to 29 percent of his body, id. at Ex. B at 11-12, were untreated for 24 hours, and then required weeks of care, two surgeries, and a year and a half of enduring specialized medical garments. This is a devastating injury for which the Court recommends an award of $10 million.

### 43. Kathleen Stanton

Kathleen Stanton was working on the 92nd floor of Tower Two for Aon Risk Services when the first plane struck Tower One. ECF No. 7007-44 at ¶ 3. The impact blew out her windows and filled her office with smoke. Id. She and others ran down the stairwell and had made it to the 76th floor when the second plane hit Tower Two. Id. When it hit, an "I" beam broke and caused the ceiling to collapse on her. Id. Falling plaster damaged her right knee and

left leg as she inhaled a large amount of dust. Id. She also suffered burns on both feet. Id. Despite these injuries, she managed to flee the building just as Tower Two collapsed. Id. at ¶ 4.

Ms. Stanton's injuries from that day include severe left leg lymphedema. Id. at ¶ 5. Lymphedema is chronic condition without a cure. Id. at ¶ 6. It requires daily intensive skin care, and daily use of a custom stocking and compression brace. Id. She faces continual pain and swelling from the leg as well. Id. In addition, she suffered burns on both feet, a right knee sprain with torn meniscus, id. at ¶ 5, aerodigestive upper respiratory disease, aerodigestive-obstructive airway disease, small airway disease, asthma, chronic rhinitis in her nasal tissues, and GERD. Id. at ¶ 7. She also suffers from PTSD and emotional distress. Id. at ¶ 8. She has submitted medical records detailing her treatment. Id. at Ex. B at 42–42, 55–56. Ms. Stanton's lymphedema is serious but her medical records do not reflect the kind of severe limitations on mobility and activity that are required for a devastating injury. ECF No. 5879 at 8. Accordingly, the Court finds her injuries to be severe and recommends a $7 million award.

### 44. Geraldine Texeria

Geraldine Texeria was cleaning a bathroom on the 82nd floor of Tower One when the first plane struck. ECF No. 7007-45 at ¶ 4. She heard parts of the building begin to crumble so she ran to a stairwell to escape. Id. As she ran down more than 80 flights of stairs, she slipped and rolled down four or five of the cement steps. Id. at ¶ 5. She was trampled by people also fleeing the building. Id. Eventually, she escaped Ground Zero, id. at ¶ 6, but reports suffering a cerebral concussion with post-concussion syndrome and lingering headaches, posterior disc herniations in her neck with anterior disc protrusions, posterior herniations of her back, posterior disc bulging in her lumbar spine, reversed cervical lordosis, bilateral sciatic radiculopathy in both legs, and a torn right rotator cuff and bilateral shoulder sprains that resulted in surgery on her right shoulder. Id. at ¶ 7. She also suffered from PTSD, anxiety, depression, and sleep

disturbances. Id. at ¶ 9. She has submitted medical records of her treatment confirming an array of injuries suffered on September 11. Id. at Ex B at 1, 5, 7, 9, 37.

These injuries, including head injuries with after-effects, multiple spinal injuries, and sprains requiring surgery, alongside the psychological injuries, are severe. The Court accordingly recommends a $7 million award.

### 45. Johnny Torres

Johnny Torres was in the kitchen on the 37th floor of Tower One, when he heard an explosion that made the building tremble. ECF No. 7007-46 at ¶ 4. He decided to leave, id., and rode the elevator down, eventually emerging onto the street. Id. at ¶ 5. Debris and smoke were everywhere, and he inhaled these as he watched people jump to their deaths from Tower One. Id. Then, he set off in search of his friend, Mr. Ferranti, id. at ¶ 6, and the two fled together. Id. at ¶ 8. Eventually, they made their way to the Williamsburg Bridge, where they watched Tower Two fall. Id.

Mr. Torres reports a range of physical harms: RADS, sleep apnea, GERD, recurrent pneumonia, and several autoimmune conditions. Id. at ¶ 10. He has also been diagnosed with a major depressive disorder with recurrence, PTSD, an anxiety disorder, and a panic disorder. Id. at ¶ 11. At one point, he attempted suicide. Id. He has also attached medical records of his treatment, which has allowed the Court to confirm his GERD and PTSD diagnoses. Id. at Ex. B at 1, 26, 59. The PTSD and GERD are significant injuries, and the Court accordingly recommends awarding $5 million.

### 46. Hilda Valentine

Hilda Valentine was a case manager at Aon, working on the 100th floor of Tower Two on the morning of September 11. ECF No. 7007-47 at ¶ 3. When the first plane hit Tower One, the impact shook her offices and debris floated past her. Id. at ¶ 4. She decided that her unit

should leave the building and began to descend by a stairwell. Id. at ¶ 5. At the 70th floor, she

paused, id., and soon after, Tower Two was hit. Id. at ¶ 6. The force of the blast threw her against

the stairwell wall and she suffered hearing damage from the sound of the explosion. Id. The

stairwell was now filled with smoke and debris, and she inhaled large amounts, but eventually

managed to exit the tower. Id. at ¶ 7. She found her sister and, having descended 100 flights,

walked seven miles to find the car that would get her home. Id. at 8.

Ms. Valentine reports multiple physical injuries: herniated discs in the spine with nerve

impingement, a torn meniscus in her left knee, a concussion which caused long-term memory

loss and a neurocognitive disorder, an auditory processing disorder, GERD, chronic rhinitis, and

a septal deviation with sleep apnea. Id. at ¶ 10. She also suffered from anxiety, bouts of

depression, and PTSD. Id. at ¶ 11. She has submitted medical records associated with her

treatment. Id. at Ex. B at 5, 9–10, 13, 45–48. Ms. Valentine's head injury, which created long-

term impairment, and other physical and psychological injuries, is severe, and the Court

accordingly recommends awarding her $7 million.

### 47. Emmanuel Vega

By the time Emmanuel Vega arrived at the Fulton Street subway station on his way to

work, Tower One had already been hit. ECF No. 7007-48 at ¶ 3. As he stood there, Tower Two

was stuck, and Mr. Vega retreated to his office two blocks away. Id. Then, the fire department

ordered an evacuation of the building, id., and Mr. Vega was back out on the street. Id. at ¶ 4. As

he started to walk away, Tower Two began to collapse. Id. He took shelter in a building

vestibule, but a mass of others did as well, crushing him against the glass of an inner door. Id. A

cloud of soot overtook the group and Mr. Vega pounded on the locked inner doors to be let in.

Id. Eventually, the building's maintenance people let the people in, but Mr. Vega was further

injured: his arms and legs were scrapped and bruised as a mass of people tried to push their way

inside. Id. When they finally made it in, the soot followed them in and Mr. Vega took shelter

with other is a sub-basement that also started to fill with smoke. Id. at ¶ 5. After 20 minutes, he

was directed out back out onto the street. Id. As he tried to make his way towards the Brooklyn

Bridge, Tower One fell, and Mr. Vega was choked by another soot cloud. Id. at ¶ 6. Help finally

came in the form of four strangers, who brought him to Saint Vincent's Hospital. Id. at ¶ 7.

In this extended ordeal, Mr. Vega suffered burns to his trachea from the soot as well as

contusions to his arm and leg. Id. at ¶ 8. He was also hospitalized for two days and later had to

receive voice therapy. Id. He has included medical reports detailing his injuries. Id. at Ex. G at

24, 27. These are significant, and the Court accordingly recommends awarding Mr. Vega $5

million.

### 48. Cecil Ward

Cecil Ward's shift as an insurance underwriter for Aon began at 8:00 am on the morning

of September 11. ECF No. 7007-49 at ¶¶ 3–4. He was working on the 48th floor of Tower Two

when the first plane struck Tower One. Id. at ¶ 4. Though he received an announcement

encouraging people to stay at their desks, he decided to leave. Id. He began descending the stairs

but when he was halfway to the bottom, the second plane struck. Id. at ¶ 5. Before he could

escape, the tower collapsed, leaving him partially buried in rubble. Id. While trapped, he inhaled

a large amount of dust and debris. Id. at ¶ 6. He managed to pull himself free and an ambulance

rushed him to Brooklyn Hospital. Id. at ¶ 5.

Mr. Ward reports that the attack left him with a fractured left leg with extreme muscle

stress and trauma, fractured ribs, a left hip displacement, neck and back tenderness in the area of

his thoracic spine, and pulmonary issues includes asthma, shortness of breath, sinusitis, and mild

obstructive airway disease. Id. at ¶ 7. He has also been diagnosed with a major depressive

disorder with recurrence, PTSD, an anxiety disorder, and a panic disorder. Id. at ¶ 8. Having

reviewed Mr. Ward's medical records, the Court has been able to confirm the existence of RADS and extreme muscle strain and stress that will likely require use of cane or other support for the rest of his life. Id. at Ex B at 7-9. It has not been able to confirm his other physical or psychological injuries. Even without these, the extreme leg strain requiring a permanent supportive tool like a cane is a "significant injur[y] from … being buried" that falls into the severe category. ECF No. 5879 at 7. The Court therefore recommends awarding him $7 million.

### 49. Christian Waugh

Christian Waugh was a FDNY fireman with Division #1, Ladder Company #5 in 2001. ECF No. 7007-50 at ¶ 4. When the attacks came, he and a deputy chief of the department drove to the World Trade Centers and set up a command post in the lobby of Tower One. Id. at ¶ 6. From there, Mr. Waugh assisted with assigning responders to tasks. Id. When Tower Two collapsed though, the lobby of Tower One was filled with smoke and debris. Id. at ¶ 7. Mr. Waugh was knocked down by falling wreckage and fleeing people. Id. He also saw numerous bodies of his fellow firefighters and had to help carry the body of the Fire Department Chaplain out of the lobby. Id. at ¶ 9.

Mr. Waugh endured knee and spinal pain as a result of that day. He has spondylosis and has had to endure both a knee replacement and back surgery. Id. at ¶ 8. He also suffers from anxiety and bouts of depression. Id. at ¶ 11. He has provided medical records relating to his treatment. Id. at Ex. B at 5–7. The motion requests a downward departure award for Mr. Waugh, describing his injuries as belonging to the significant category. The Court, however, finds that his back injury and knee replacement are "severe orthopedic trauma requiring significant or multiple surgeries." ECF No. 5879 at 7. Accordingly, Mr. Waugh's injuries fall into the severe category and the Court recommends awarding him $7 million.

### 50. John David Yates

John David Yates was working at the Pentagon when it was struck by terrorists. ECF No. 7007-51 at ¶ 4. Caught in the flames and explosions wreaking the building, he suffered numerous severe burns. Id. Despite these injuries, he began crawling away from the destruction, leading others to safety as well. Id. at ¶ 5. Eventually, he managed to drag himself to safety. Id.

Mr. Yates escaped but paid a heavy price. Thirty-five percent of his body was covered in second- and third-degree burns. Id. at ¶ 5. He suffered second-degree burns to his face, ears, neck, upper arms, back, left leg, buttocks, and the top of his head and third degree burns to his lower arms and hands. Id. He endured three painful surgeries for these wounds, which required two skin graft procedures and a debridement. Id. He had included copies of his medical records. Id. at Ex. B at 2–3, 5. These "severe burns covering significant body area", ECF No. 5879 at 8, are devastating injuries for which the Court recommends an award of $10 million.

### 51. Richard Zletz

Richard Zletz was on his way to meet with his attorney, who worked near the World Trade Center. ECF No. 7007-52 at ¶ 4. He was outside when Tower One collapsed, id. at ¶ 5, and dove under a car to seek shelter from the debris. Id. at ¶ 7. The dust surrounded him and burned his eyes, making him unable to see. Id. Eventually, some strangers pulled him from under the car and brought him to Downtown Beekman Hospital for treatment. Id. As a result of that day, he has asthma, chronic rhinosinusitis, obstructive sleep apnea, and obstructive airway disease. Id. at ¶ 6. He also suffers from PTSD and depression. Id. at ¶ 8. He has submitted medical records documenting his treatment for these injuries. Id. at Ex. B at 12, 14–15.[6] Overall,

---

[6] Mr. Zletz states that he also included a copy of letters from the administrator of the World Trade Center Health Program certifying his condition. Id. at ¶ 10. The Court has not received a copy of this exhibit. It appears that a copy of one of the letters referenced in Mr. Zletz's declaration was included in Exhibit B as a medical record. Id. at Ex. B at 14. The filing received by the Court has no Exhibit C.

Mr. Zletz's respiratory ailments and PTSD are significant injuries for which the Court recommends awarding $5 million.

## CONCLUSION

The Court recommends granting pain and suffering damages as follows:

| Number | Plaintiff | Pain and Suffering Damages |
|--------|-----------|----------------------------|
| 1 | Jocelyne Ambroise | $5 million |
| 2 | Benjamin Arroyo | $5 million |
| 3 | Prakash Bhatt | $5 million |
| 4 | Quinceyann Booker-Jackson | $5 million |
| 5 | Carmen Bridgeforth | $7 million |
| 6 | Pasquale Buzzelli | $7 million |
| 7 | Richard Martin Bylicki | $7 million |
| 8 | Luis Carbonell | $5 million |
| 9 | Frank Castrogiovanni | $7 million |
| 10 | Carmen Colon | $5 million |
| 11 | Joel Council | $5 million |
| 12 | Fernando Cuba | $5 million |
| 13 | Andres De La Rosa | $5 million |
| 14 | Elaine Duch | $15 million |
| 15 | Timothy Duffy | $7 million |
| 16 | Gabriel Esposito | $5 million |
| 17 | Edgar Felix | $5 million |
| 18 | Erasmo Fernandez | $5 million |
| 19 | Genoveva "Jenny" Fernandez | $5 million |
| 20 | Roger Fernandez | $5 million |
| 21 | Vincent Ferranti | $5 million |
| 22 | Thomas Joseph Forbes | $5 million |
| 23 | Leileth Foster | $7 million |
| 24 | Henry Fuerte | $5 million |
| 25 | Carmela M. Harrison | $5 million |
| 26 | Elaine Helms | $7 million |
| 27 | Patrick Imperato | $5 million |
| 28 | Rafaela Martinez | $5 million |
| 29 | Nexhat Mela | $7 million |
| 30 | Roberto Mesa | $7 million |
| 31 | Ram Anthony Mohabir | $7 million |
| 32 | Omar Mota | $5 million |
| 33 | Daniel Arthur Narlock | $5 million |

| 34 | Eugene F. O'Reilly | $7 million |
|----|--------------------|------------|
| 35 | Angel R. Ortiz | Denied |
| 36 | Pedro Pichardo | $7 million |
| 37 | Edward Joseph Prince | $5 million |
| 38 | Godwin Quinones | $5 million |
| 39 | Nelson Rocha | $5 million |
| 40 | Arnold John Roma | $5 million |
| 41 | Jose Sanchez | $5 million |
| 42 | Brandon Smith | $10 million |
| 43 | Kathleen Stanton | $7 million |
| 44 | Geraldine Texeria | $7 million |
| 45 | Johnny Torres | $5 million |
| 46 | Hilda Valentine | $7 million |
| 47 | Emmanuel Vega | $5 million |
| 48 | Cecil Ward | $7 million |
| 49 | Christian Waugh | $7 million |
| 50 | John David Yates | $10 million |
| 51 | Richard Zletz | $5 million |

These plaintiffs should also be awarded prejudgment interest on these damages from September 11, 2001, to the date of judgment, at a rate of 4.96 percent per annum, compounded annually. ECF No. 3358, adopted by, ECF No. 3383.

Plaintiffs may apply for punitive, economic, and other damages at a later date and in a manner consistent with any applicable future Court rulings on the issue. Additionally, any Burnett personal injury plaintiffs not appearing in this motion who were not previously awarded damages may still submit applications for damages awards in later stages.

_____
SARAH NETBURN
United States Magistrate Judge

Dated:  November 9, 2021
        New York, New York

41

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). These objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).