# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |
|---|---|
| | |

This document relates to:

*BNY Mellon, et al. v. Islamic Republic of Iran*, No. 1:19-cv-11767 (GBD) (SN)
*Deborah Bodner, et al. v. Islamic Republic of Iran*, No. 1:19-cv-11776 (GBD) (SN)
*August Bernaerts, et al. v. Islamic Republic of Iran*, No. 1:19-cv-11865 (GBD) (SN)
*Ber Barry Aron, et al. v. Islamic Republic of Iran*, No. 1:20-cv-09376 (GBD) (SN)
*Jeanmarie Hargrave, et al. v. Islamic Republic of Iran*, No. 1:20-cv-09387 (GBD) (SN)
*Paul Asaro, et al. v. Islamic Republic of Iran*, No. 1:20-cv-10460 (GBD) (SN)
*Michael Bianco, et al. v. Islamic Republic of Iran*, No. 1:20-cv-10902 (GBD) (SN)

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PARTIAL FINAL JUDGMENT AS TO LIABILITY AND DAMAGES

ANDERSON KILL P.C.
Jerry S. Goldman, Esq.
Bruce E. Strong, Esq.
Alexander Greene, Esq.
1251 Avenue of the Americas
New York, NY 10020
Tel:     (212) 278-1000
Fax:     (212) 278-1733
Email:  jgoldman@andersonkill.com
        bstrong@andersonkill.com
        agreene@andersonkill.com

*Attorneys for Plaintiffs*

Dated:  New York, New York
          November 12, 2021

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................................................ 1

II.    PRELIMINARY STATEMENT ......................................................................... 4

    a.    Orders ..................................................................................................... 4

    b.    Related Cases.......................................................................................... 4

    c.    JURISDICTION ..................................................................................... 7

        i.    This Court Has Subject Matter Jurisdiction Over Iran .............................. 8

        ii.    This Court has Personal Jurisdiction over Iran ......................................... 10

        iii.    Service by Mail Was Not Successful......................................................... 10

        iv.    Iran Was Served Via Diplomatic Means .................................................. 13

    d.    THE CLERK PROPERLY ENTERED DEFAULT AGAINST IRAN. ................................................................................................... 17

    e.    Motions to Correct Errors/Motions for Substitution/Notices of Amendment ........................................................................................... 20

        i.    Motions to Correct Errors ....................................................................... 20

        ii.    Motions for Substitution ......................................................................... 20

        iii.    Notices of Amendment ........................................................................... 22

III.    JUDGMENT AGAINST IRAN AS TO LIABILITY SHOULD BE ENTERED ........................................................................................................ 22

    a.    Legal Standard for FSIA Default Judgment As to Liability................................ 22

    b.    Plaintiffs State a Cause of Action Under the Terrorism Exception of the FSIA ............................................................................................ 25

    c.    There Is a Factual Basis for Establishing Liability ............................................ 26

        i.    United States' Recognition of Iran as a State Sponsor of Terrorism.................................................................................................. 28

        ii.    Iran's Training and Support of al Qaeda Operatives ............................... 29

        iii.    Iran's Support for the September 11, 2001 Attacks.................................. 32

    d.    Plaintiffs Have Established Material Support and Causation............................... 34

        i.    Plaintiffs Have Established Material Support............................................ 34

        ii.    Plaintiffs Have Proved Causation ........................................................... 36

    e.    The Basis for Judgment as to Liability Has Been Established........................... 37

i

**TABLE OF CONTENTS**
(*continued*)

Page

IV.    JUDGMENTS AS TO DAMAGES SHOULD BE ENTERED ...................................... 37

    a.    Damages – Governing Law .......................................................................... 38

        i.    Background ........................................................................................ 38

    b.    Solatium Damages ...................................................................................... 39

        i.    Individuals Not Named in the Complaint (Notices of
           Amendment) Entitled to Solatium Damages ........................................... 42

    c.    Punitive Damages ........................................................................................ 43

    d.    Prejudgment Interest .................................................................................... 44

V.     CONCLUSION ............................................................................................................ 45

    a.    Liability ...................................................................................................... 45

    b.    Damages ...................................................................................................... 46

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baker v. Socialist People's Libyan Arab Jamahirya,*
  775 F. Supp. 2d 48 (D.D.C. 2011) ........................................................................ 44

*Belkin v. Islamic Republic of Iran,*
  667 F. Supp. 2d 8 (D.D.C. 2009) .......................................................................... 40

*Blais v. Islamic Republic of Iran,*
  459 F. Supp. 2d 40 (D.D.C. 2006) ........................................................................ 35

*Estate of Bland v. Islamic Republic of Iran,*
  831 F. Supp. 2d 150 (D.D.C. 2011) ...................................................................... 40

*Com. Bank of Kuwait v. Rafidain Bank,*
  15 F.3d 238 (2d Cir. 1994) .................................................................................... 23

*Dammarell v. Islamic Republic of Iran,*
  281 F. Supp. 2d 105 (D.D.C. 2003), vacated on other grounds, 404 F. Supp.
  2d 261 (D.D.C. 2005) ............................................................................................ 40

*Est. of Heiser v. Islamic Republic of Iran,*
  466 F. Supp. 2d 229 (D.D.C. 2006) ....................................................... 5, 24, 30, 40

*Fain v. Islamic Republic of Iran,*
  856 F. Supp. 2d 109 (D.D.C. 2012) ...................................................................... 24

*Flatow v. Islamic Republic of Iran,*
  999 F. Supp. 1 (D.D.C. 1998) ......................................................................... 35, 36

*Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic,*
  582 F.3d 393 (2d Cir. 2009) .................................................................................. 10

*Gates v. Syrian Arab Republic,*
  580 F. Supp. 2d 53 (D.D.C. 2008) ........................................................................ 34

*Haim v. Islamic Republic of Iran,*
  784 F. Supp. 2d 1 (D.D.C. 2011) .......................................................................... 24

*Harrison v. Republic of Sudan,*
  882 F. Supp. 2d 23 (D.D.C. 2012) ........................................................................ 23

*Havlish, et al. v. Bin Laden, et al.,* No. 03-CV-9848-GBD (S.D.N.Y. Dec. 22,
  2011) ................................................................................................................. 7, 26

iii

**TABLE OF AUTHORITIES**
(*continued*)

**Page(s)**

*Int'l Road Fed'n v. Embassy of the Democratic Republic of the Congo*,
  131 F. Supp. 2d 248 (D.D.C. 2001) ....................................................................23

*In re Islamic Republic of Iran Terrorism Litig.*,
  659 F. Supp. 2d 31 (D.D.C. 2009) ...............................................................34, 36

*Leibovitch v. Syrian Arab Republic*,
  25 F. Supp. 3d 1071 (N.D. Ill. 2014) ..................................................................24

*Murphy v. Islamic Republic of Iran*,
  740 F. Supp. 2d 51 (D.D.C. 2010) .......................................................................24

*O'Neill. Hoglan, et al. v. Islamic Rep. of Iran, et al.*,
  1:11-cv-07550-GBD (Aug. 31, 2015) ........................................................... *passim*

*Owens v. Republic of Sudan*,
  2011 WL 5966900 (D.D.C. Nov. 28, 2011) .........................................................31

*Owens v. Republic of Sudan*,
  826 F. Supp. 2d 128 (D.D.C. 2011) ..............................................26, 29, 31, 34

*Peterson v. Islamic Republic of Iran*,
  264 F. Supp. 2d 46 (D.D.C. 2003) .......................................................................24

*Reed v. Islamic Republic of Iran*,
  845 F. Supp. 2d 204 (D.D.C. 2012) ..............................................................17, 22, 36

*Rimkus v. Islamic Republic of Iran*,
  575 F. Supp. 2d 181 (D.D.C. 2008) ....................................................................23

*Rimkus v. Islamic Republic of Iran*,
  750 F. Supp. 2d 163 (D.D.C. 2010) ...............................................................24, 25

*Roeder v. Islamic Republic of Iran*,
  333 F.3d 228 (D.C. Cir. 2003) .............................................................................22

*Rux v. Republic of Sudan*,
  495 F. Supp. 2d 541 (E.D. Va. 2007) .................................................................35

*Samantar v. Yousuf*,
  560 U.S. 305 (2010) ..................................................................................................7

*In re Sept. 11 Litig.*,
  802 F.3d 314 (2d Cir. 2015) ...................................................................................44

*Shapiro v. Republic of Bolivia*,
  930 F.2d 1013 (2d Cir. 1991) ........................................................................10, 17

iv

## TABLE OF AUTHORITIES
### (*continued*)

**Page(s)**

*Smith ex rel. Smith v. Islamic Emirate of Afghanistan*,
  262 F. Supp. 2d 217 (S.D.N.Y. 2003), *amended sub nom. Smith ex rel. Est. of
  Smith v. Islamic Emirate of Afghanistan*, No. 01 CIV.10132 (HB), 2003 WL
  23324214 (S.D.N.Y. May 19, 2003)......................................................................22, 23

*Surette v. Islamic Republic of Iran*,
  231 F. Supp. 2d 260 (D.D.C. 2002) ...........................................................................40

*In re Terrorist Attacks on Sept. 11, 2001*,
  741 F.3d 353 (2d Cir. 2013)........................................................................................9

*Ungar v. Islamic Republic of Iran*,
  211 F. Supp. 2d 91 (D.D.C. 2002) .......................................................................22, 23

*United States v. Quintieri*,
  306 F.3d 1217 (2d Cir. 2002)......................................................................................9

*Valore v. Islamic Republic of Iran*,
  478 F. Supp. 2d 101 (D.D.C. 2007) ..........................................................................23

*Valore v. Islamic Republic of Iran*,
  700 F. Supp. 2d 52 (D.D.C. 2010).......................................................................11, 40

*Weinstein v. Islamic Republic of Iran*,
  175 F. Supp. 2d 13 (D.D.C. 2001) ............................................................................23

*Weinstein v. Islamic Republic of Iran*,
  184 F. Supp. 2d 13 (D.D.C. 2002) ............................................................................23

*Wultz v. Islamic Republic of Iran*,
  864 F. Supp. 2d 24 (D.D.C. 2012) ............................................................................24

**Statutes**

18 U.S.C. § 2339...............................................................................................................35

28 U.S.C. § 1605................................................................................................... *passim*

28 U.S.C. § 1608................................................................................................... *passim*

Air Transportation Safety and System Stabilization Act, Pub. L. No. 107-42, 115
  Stat. 230 (2001) (codified as amended at 49 U.S.C. § 40101) ...............................44

Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 852
  (2016)............................................................................................................................7

docs-100419182.1

## TABLE OF AUTHORITIES
### (*continued*)

**Page(s)**

**Other Authorities**

Fed. R. Civ. P. 55 ..................................................................................................17

Report of the National Commission on Terrorist Attacks Upon the United States,
   http://govinfo.library.unt.edu/911/report/911Report.pdf ................................27, 29, 30, 32, 37

United States Department of State, *Patterns of Global Terrorism 2002*,
   https://2009-2017.state.gov/documents/organization/20117.pdf ...........................................33

U.S. Department of State, *State Sponsors of Terrorism*,
   https://www.state.gov/state-sponsors-of-terrorism/ .................................................28

White House, *President Donald J. Trump Is Holding the Iranian Regime
   Accountable for Its Global Campaign of Terrorism*,
   https://www.whitehouse.gov/briefings-statements/president-donald-j-trump-
   holding-iranian-regime-accountable-global-campaign-terrorism/ .........................................28

docs-100419182.1

## I.      INTRODUCTION

Plaintiffs in the above-captioned actions, by and through their counsel, Anderson Kill, P.C., respectfully submit this Memorandum of Law in support of their Motion for Partial Final Judgment as to both Liability and Damages against the Defendant Islamic Republic of Iran ("Iran"), pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A.

This action arises out of the events of September 11, 2001, during which members of the al Qaeda[1] terrorist network hijacked four commercial airliners and used those planes as weapons in coordinated terrorist attacks on the United States (the "September 11th Attacks").  Plaintiffs in the above-captioned cases are comprised of personal representatives and eligible family members of individuals killed in the September 11th Attacks.

First, all Plaintiffs[2] in the within actions now respectfully request entry of judgments by default against Iran on the issue of liability, solely as to the Plaintiffs' substantive causes of action established under the FSIA's state sponsor of terrorism exception, codified at 28 U.S.C. § 1605A(c).[3]

Significantly, on the issue of liability, this Court has already entered judgment against Iran for identical claims in multiple related matters consolidated before this Court under *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570, based on a full evidentiary record and

---

[1] Arabic words and names are spelled differently in various sources. Plaintiffs have strived for consistency as much as possible, but original spellings are maintained in quoted sources.

[2] Where a plaintiff's name is the subject of a pending Motion to Amend to Correct Errors, the corrected plaintiff's name is listed in Exhibits A-1 to A-7 (collectively, "Exhibits A").

[3] As discussed below, the issues presented by this application related to the request for default judgment on liability against Iran as to the instant Plaintiffs' claims under the state sponsor of terrorism exception have already been addressed by this Court in proceedings in related litigation in *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570. While the within Plaintiffs are not at this time seeking judgment on their other claims asserted in the complaint, they reserve their right to do so in the future, if necessary.

hearing pursuant to the FSIA.  The extension of those rulings to all plaintiffs in the above caption matters is both appropriate and consistent with the specific objectives that prompted the Judicial Panel for Multidistrict Litigation to centralize each of those proceedings before this Court.

The Plaintiffs now respectfully request entry of judgment by default against Iran on the issue of liability, solely as to the Plaintiffs' substantive causes of action established under the FSIA's state sponsor of terrorism exception, codified at 28 U.S.C. § 1605A(c).

In addition, Plaintiffs seek a judicial determination that service was properly effectuated upon Iran in accordance with 28 U.S.C. § 1608.

Further, for the reasons set forth below, the statements contained in the declaration of Jerry S. Goldman, Esq., with exhibits appended thereto and tendered under seal ("Goldman Declaration"), which is being filed contemporaneously with this memorandum of law, as well as those set forth in prior motions for liability and damages made on behalf of the *O'Neill* wrongful death plaintiffs, certain plaintiffs in the above-referenced matters who are identified in Exhibits A (the Plaintiffs identified in Exhibits A are collectively referred to herein as the "Moving Plaintiffs") to the Goldman Declaration, by and through their counsel, Anderson Kill, P.C., respectfully move this Court for an Order:

1.    awarding the Plaintiffs identified in annexed Exhibits A judgments as to damages in the same amounts previously awarded by this Court to various similarly situated plaintiffs in *Burnett*, *Havlish*, *Ashton*, *Bauer*, *O'Neill*, and other cases;  and,

2.    awarding solatium damages to those Plaintiffs identified in Exhibits A in the amounts of $12,500,000 per spouse, $8,500,000 per parent, $8,500,000 per child, and $4,250,000 per sibling, as set forth in Exhibits A; and,

3.      awarding the Moving Plaintiffs prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages; and,

4.      granting the Moving Plaintiffs permission to seek punitive damages, economic damages, and other appropriate damages at a later date; and

5.      granting permission for all other Plaintiffs in this action not appearing in annexed Exhibits A to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.[4, 5]

This motion is made only on behalf of all Plaintiffs in the above-captioned matters as to liability and damages on behalf of the Moving Plaintiffs .

As the awards set forth in the attached Proposed Order represent the only direct recovery against Iran on behalf of the Moving Plaintiffs for the claims herein, any award issued to those individuals will constitute final awards and judgments against Iran for the Moving Plaintiffs.

---

[4] The plaintiffs listed in Exhibits A are the relatives of a 9/11 decedent, which includes individuals who are not named in the complaint but are entitled to receive judgments for solatium based on their relationship to the 9/11 decedent.  In the case of a relative who died subsequent to the 9/11 decedent, the claim is brought by the personal representative of the relative's estate.  As noted below, each personal representative has provided the undersigned counsel with proof that he or she has been appointed by the court as the personal representative of the deceased relative, except in the cases specifically identified in the Goldman Declaration, where a party has filed a petition to be so appointed, which petition, on information and belief, is unopposed, but has not yet been granted.  Goldman Declaration at ¶¶ 4-16, 18-19.

[5] Exhibits A only include plaintiffs who will be submitting U.S. Victims of State Sponsored Terrorism Fund applications for the next tranche.  The remaining plaintiffs have either already filed a motion for damages or intend to file a similar motion seeking damages at a later date.

## II.    PRELIMINARY STATEMENT

### a.  Orders

This motion is being submitted in accordance with various procedural orders entered by

this Court, and the form of this motion and the relief requested herein are intended to comply

with various orders of this Court, including the following:

a.  The Court's January 24, 2017 Order, ECF No. 3435,[6] requiring that "[a]ll further motions for final judgment against any defaulting defendant shall be accompanied by a sworn declaration attesting that the attorney has (1) complied with the due diligence safeguards [referenced in Section II.D. of the January 23, 2017 letter from the Plaintiffs' Executive Committee (ECF No. 3433)] and (2) personally verified that no relief has previously been awarded to any plaintiff included in the judgment (or, if relief has been awarded, the nature of that relief)."

b.  The Court's October 14, 2016 Order, ECF No. 3363, concerning the amounts of solatium damage awards.

c.  The Court's October 14, 2016 Order, ECF No. 3362, related to the cases captioned as *Bauer v. Al Qaeda Islamic Army*, 02-CV-7236 (GBD)(SN) and *Ashton v. al Qaeda Islamic Army*, 02-CV-6977 (GBD)(SN).

d.  The Court's October 28, 2019 Order, ECF No. 5234, setting forth updated procedural rules.

e.  The Court's October 28, 2019 Order, ECF No. 5338, setting forth the scheduling order.

f.  The Court's August 23, 2021 Order, ECF No. 7067, setting forth procedures for filing confidential information relating to damages under seal.

### b.  Related Cases

Relying on evidence and arguments[7] submitted by plaintiffs in *In re Terrorist Attacks on*

*September 11, 2001*, 03-md-1570, the consolidated multidistrict litigation arising out of the

---

[6] All ECF numbers are to the MDL docket unless stated otherwise.

[7] In each of the Orders of Judgment regarding plaintiffs' claims against Iran in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, the Court premised its determination "[u]pon consideration of the evidence submitted by the Plaintiffs in filings with this Court on May 19, 2011, July 13, 2011, and August 19, 2011, and the evidence presented at the December

September 11th Attacks, this Court on December 22, 2011, and again on August 31  2015,
granted Orders of Judgment on Liability in favor of certain of the *Havlish*, *Ashton*, *O'Neill*,
*Federal Insurance*, and *Hoglan* groups of plaintiffs against Iran.  *See*, e.g., ECF Nos. 2516, 3014,
3016, 3020-23.  Subsequently, other liability findings were made for additional *O'Neill*
Plaintiffs. After granting the *Havlish* Order of Default Judgment on Liability, this Court
considered the issue of damages suffered by the *Havlish* plaintiffs and their decedents. Upon the
submissions of the *Havlish* plaintiffs, on October 3, 2012, this Court found, among other things,
that "Plaintiffs may recover for [, inter alia,] solatium . . . in an action under Section 1605A. 28
U.S.C. § 1605A(c)(4). In such an action, . . . family members can recover solatium for their
emotional injury; and all plaintiffs can recover punitive damages." ECF No. 2623 at 2-3, quoting
*Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010). This Court also found
that the following solatium awards for family members are appropriate, as an upward departure
from the framework in *Est. of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C.
2006).

| Relationship of Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

ECF No. 2623 at 4.

---

15, 2011, hearing on liability, together with the entire record in this case." ECF Nos. 2516, 3014,
3016, 3020-22; *see also* ECF No. 3023 (substantially similar language).

The Court has applied the same solatium values to claims of other solatium plaintiffs in *Burnett* (ECF Nos. 3666, 4023, 4126, 4146, 4175, 5061, 5062, 5087, 5138, and 5356) and other solatium plaintiffs in other cases coordinated in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation. *See*, e.g., ECF Nos. 3175 at 2, 3300 at 1, 3358 at 9, 3363 at 16, 3399, and 3977 at 7.

In that same decision in *Havlish*, this Court also found that Plaintiffs are entitled to punitive damages under the FSIA in an amount of 3.44 multiplied by their compensatory damages award. ECF No. 2623 at 5. The Court has applied that 3.44 multiplier also to judgments in *Ashton*. *See* ECF No. 3175 at 3 (Report and Recommendation to apply 3.44 punitive multiplier); *see also* ECF No. 3229 at 1 (Order adopting in its entirety Report and Recommendation to apply 3.44 punitive multiplier). The Court applied the 3.44 punitive multiplier to the compensatory awards previously awarded in *Burnett*. ECF No. 3666. However, in *Hoglan*, another case in this multidistrict litigation, Magistrate Judge Netburn recommended that the plaintiffs' request for punitive damages be denied without prejudice. ECF Nos. 3358 at 11-16, 3363 at 28. Judge Daniels adopted Magistrate Judge Netburn's Report and Recommendation in its entirety. ECF Nos. 3383 at 2, 3384 at 6.

In the *Havlish* decision, this Court also found that prejudgment interest was warranted for the Plaintiffs' solatium damages. ECF No. 2623 at 5.  The *Havlish* plaintiffs sought application of a 4.96% interest rate, which the magistrate judge recommended (ECF No. 2619 at 13-14) and Judge Daniels adopted (ECF No. 2623 at 5). In *Ashton*, plaintiffs sought, and the magistrate judge recommended, application of a statutory nine percent simple interest rate for prejudgment interest. ECF No. 3175 at 7-8.  Judge Daniels adopted the magistrate judge's report and recommendation and applied the nine percent interest rate in multiple instances in *Ashton* and

*Bauer. See* ECF Nos. 3229 at 2, 3300 at 1, 3341 at 1. However, in *Hoglan*, Magistrate Judge

Netburn recommended that the 4.96 percent rate for prejudgment interest should be applied to all

solatium claims, ECF Nos. 3358 at 17-20, 3363 at 28-29. Judge Daniels adopted Magistrate

Judge Netburn's *Hoglan* Report and Recommendation in its entirety and applied an interest rate

of 4.96 percent per annum, compounded annually. ECF Nos. 3383 at 2, 3384 at 6.  The Court

applied that interest rate, 4.96 percent per annum, to the awards to other plaintiffs in *Burnett*.

### c.  JURISDICTION

The FSIA provides the "sole basis for obtaining jurisdiction over a foreign state in federal

court." *Samantar v. Yousuf*, 560 U.S. 305, 314 (2010) (citing *Argentine Republic v. Amerada

Hess Shipping Corp.*, 488 U.S. 428, 439 (1989)).  Under the architecture of the FSIA, foreign

states are presumed to be immune from suit in the courts of the United States unless one of the

FSIA's enumerated exceptions to immunity applies.  *See* 28 U.S.C. §§ 1605-1605A; *Samantar*,

560 U.S. at 305.  As discussed below, this Court previously held that subject matter jurisdiction

exists for claims against Iran for injuries resulting from the September 11th Attacks under two

separate, independent provisions of the FSIA: the state sponsor of terrorism exception (28 U.S.C.

§ 1605A) and the noncommercial tort exception (28 U.S.C. § 1605(a)(5)).[8] *See* the Court's

Findings of Fact and Conclusions of Law in *Havlish, et al. v. Bin Laden, et al.*, No. 03-CV-9848-

GBD, ECF No. 294 (S.D.N.Y. Dec. 22, 2011), hereinafter referred to as "Court Findings," ECF

No. 294 at 46 ¶ 4.  Those rulings control in relation to the present application, although this

---

[8] On September 28, 2016, Congress enacted the Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 852 (2016) ("JASTA"), which provides an additional ground for jurisdiction and liability against Iran. *See Id.* § 3. However, because an application for default judgment as to the Moving Plaintiffs' claims under the new statute would potentially raise issues not previously addressed by the Court, the Moving Plaintiffs are not seeking judgment in reliance on JASTA, but reserve their right to do so in the future, if necessary.

motion focuses solely on the jurisdictional grant and substantive remedies provided under

Section 1605A.

Also as discussed below, Plaintiffs have properly effected service of process on Iran,

perfecting personal jurisdiction over Iran under the FSIA as well.

i. <u>This Court Has Subject Matter Jurisdiction Over Iran</u>

In *Havlish*, this Court concluded that it had subject matter jurisdiction for claims against

Iran for injuries resulting from the September 11th Attacks pursuant to both Sections 1605A and

1605(a)(5) of the FSIA, explaining as follows:

> Subject matter jurisdiction exists if the defendant's conduct falls
> within one of the specific statutory exceptions to immunity. *See* 28
> U.S.C. §§ 1330(a) and 1604. *Owens v. Republic of Sudan*, 2011
> WL 5966900 (D.D.C. Nov. 28, 2011). Here, this Court has
> jurisdiction because service was proper and defendants' conduct
> falls within both the "state sponsor of terrorism" exception set
> forth in 28 U.S.C. § 1605A and the "noncommercial tort"
> exception of § 1605(a)(5).

*See* Court Findings, ECF No. 294 at 46 ¶ 4.

As to liability against Iran through the present motion, the Moving Plaintiffs seek the

entry of default judgment in relation to their substantive causes of action arising under

Section 1605A, and thus only the exception to immunity provided under that section is

implicated by the instant proceedings.[9]  With respect to the issue of jurisdiction, this Court's

prior holding that Section 1605A provides a proper basis for subject matter jurisdiction for

claims against Iran for injuries resulting from the September 11th Attacks is controlling, and the

issue need not, and indeed should not, be re-litigated in the context of the present default

---

[9] As indicated previously, the Plaintiffs reserve their right to pursue judgments against Iran on
their additional common law and statutory theories of liability, and to invoke jurisdiction
pursuant to Section 1605(a)(5) and JASTA in that context.

judgment proceedings.  *In re Terrorist Attacks on Sept. 11, 2001*, 741 F.3d 353, 358 (2d Cir.

2013) (explaining that the "September 11 cases were centralized in part in order to 'prevent

inconsistent pretrial rulings'"); *see also United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir.

2002) (internal quotations omitted) ("when a court has ruled on an issue, that decision should

generally be adhered to by that court in subsequent stages in the same case").

As in *Havlish*, the Plaintiffs' actions assert claims against Iran for wrongful deaths and

personal injuries resulting from the September 11th Attacks, based on Iran's extensive

sponsorship of al Qaeda during the decade leading up to the attacks, and direct support for

critical aspects of the 9/11 operation itself.  The evidentiary and factual record supporting the

present claims is identical to the record this Court considered in issuing judgment against Iran in

*Havlish*.  Given the similarity of the present claims to those present in *Havlish*, there can be no

dispute that this Court's ruling that Section 1605A provided a proper basis for jurisdiction for the

claims against Iran in *Havlish* also controls as to the wrongful death and personal injury claims

asserted in the Plaintiffs' actions.

For example, this Court has also previously extended the ruling in *Havlish* to apply to

other related actions against Iran pending in the *In re Terrorist Attacks on September 11, 2001*

multidistrict litigation, namely *Hoglan*, *Federal Insurance*, *Ashton*, *Burnett*, and *O'Neill*.

*Hoglan, et al. v. Islamic Rep. of Iran, et al.*, 1:11-cv-07550-GBD, ECF No. 112 (Aug. 31, 2015);

*In re Terrorist Attacks on September 11, 2001*, ECF Nos. 3021 (*Ashton*), 3022 (*O'Neill*), 3020

(*Federal Ins.*) (Aug. 31, 2015), 3443 (*Burnett*) (Jan. 31, 2017).

For all the foregoing reasons, this Court's prior ruling concerning the applicability of

Section 1605A to claims against Iran for injuries resulting from the September 11th Attacks

applies with full force to the claims asserted against Iran in the Plaintiffs' matters.

9

ii.  This Court has Personal Jurisdiction over Iran

"Under the FSIA, . . . personal jurisdiction equals subject matter jurisdiction plus valid service of process." *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1020 (2d Cir. 1991).[10] Service under the FSIA is governed by 28 U.S.C. Section 1608(a).

The Complaints were filed as follows (and summons duly issued):

| NAME OF CASE | CASE NO. | DATE FILED |
|---|---|---|
| *BNY Mellon, et al. v. Islamic Republic of Iran* | No. 1:19-cv-11767 (GBD) (SN) | 12/23/2019 |
| *Deborah Bodner, et al. v. Islamic Republic of Iran* | No. 1:19-cv-11776 (GBD) (SN) | 12/24/2019 |
| *August Bernaerts, et al. v. Islamic Republic of Iran* | No. 1:19-cv-11865 (GBD) (SN) | 12/27/2019 |
| *Ber Barry Aron, et al. v. Islamic Republic of Iran* | No. 1:20-cv-09376 (GBD) (SN) | 11/09/2020 |
| *Jeanmarie Hargrave, et al. v. Islamic Republic of Iran* | No. 1:20-cv-09387 (GBD) (SN) | 11/10/2020 |
| *Paul Asaro, et al. v. Islamic Republic of Iran* | No. 1:20-cv-10460 (GBD) (SN) | 12/10/2020 |
| *Michael Bianco, et al. v. Islamic Republic of Iran* | No. 1:20-cv-10902 (GBD) (SN) | 12/23/2020 |

Following the filing of the complaints and the issuance of a summons, the Plaintiffs herein secured a translation of the complaint, summons, and notice of suit into Farsi, and took steps to serve Iran.

Service was effectuated as set forth below.

iii.  Service by Mail Was Not Successful

Service on Iran could not be effected under 28 U.S.C. § 1608(a)(1) because the United States and Iran do not have any special arrangement for service of process, nor is service

---

[10] The Second Circuit has ruled that foreign states are not persons within the meaning of the Due Process Clause. *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 399-401 (2d Cir. 2009). Thus, the personal jurisdiction analysis as to Iran does not include a due process component.

permitted by any applicable international convention under the provisions of subsection (2).  *See*

*Valore*, 700 F. Supp. 2d at 70.

Accordingly, the Moving Plaintiffs first attempted to serve Iran in accordance with

Section 1608(a)(3) of the FSIA.  Section 1608(a)(3) provides that:

> if service cannot be made under paragraphs (1) or (2), by sending a
> copy of the summons and complaint and a notice of suit, together
> with a translation of each into the official language of the foreign
> state, by any form of mail requiring a signed receipt, to be
> addressed and dispatched by the clerk of the court to the head of
> the ministry of foreign affairs of the foreign state concerned.

The Southern District of New York's Clerk's Office Foreign Mailing Instructions provide

plaintiffs with instructions for service by U.S. Postal Service ("USPS"), FedEx, or DHL.  *See*

United States District Court for the Southern District of New York Clerk's Office Foreign

Mailing Instructions at 2.

On the dates set forth in the table below, the instant Plaintiffs attempted to utilize USPS

for service under § 1608(a)(3).[11]  Pursuant to the Southern District of New York's Clerk's Office

Foreign Mailing Instructions, plaintiffs prepared an envelope along with the requisite service

documents for the Clerk of the District Court as prescribed, and delivered a Service Packet[12] to

the Clerk.  The Clerk of Court, in accordance with the Southern District of New York's Clerk's

Office Foreign Mailing Instructions and 28 U.S.C. § 1608 (a)(3), attempted to serve the Service

Packet on Iran via USPS.  As set forth in Jerry S. Goldman's Affidavits in Support of Requests

for Clerk's Default (the "Goldman Default Affidavits"), Iran refused to accept the Service

---

[11] FedEx and DHL were not delivering packages to Iran at the time service was attempted to be
effectuated.

[12] The Service Packet, in addition to pre-paid postage, contained an envelope, two copies of the
summons and complaint and notice of suit, together with a translation in the official language of
the foreign state (Farsi), and a certification of same.

11

Packet.  Because service by mail could not be effected within 30 days, Plaintiffs proceeded to

effect service by diplomatic channels pursuant to §1608(a)(4).  *See* Jerry S. Goldman's

Affidavits of Service (the "Goldman Affidavits of Service"); *see also* Goldman Default

Affidavits; *see also* Clerk's Certificates of Mailing, all as identified in the following table:

| **CASE NAME:** | *BNY Mellon, et al. v. Islamic Republic of Iran* | |
|---|---|---|
| | CASE NO: | No. 1:19-cv-11767 (GBD) (SN) |
| | DATE OF ATTEMPTED SERVICE BY MAIL: | 1/22/2020 |
| | CLERK'S CERTIFICATE OF MAILING-ECF NO.: | ECF No. 11 (docket for individual case) |
| | GOLDMAN AFFIDAVIT OF SERVICE-ECF NO.: | ECF No. 6899 |
| | GOLDMAN DEFAULT AFFIDAVIT-ECF NO.: | ECF No. 6928 |
| **CASE NAME:** | *Deborah Bodner, et al. v. Islamic Republic of Iran* | |
| | CASE NO: | No. 1:19-cv-11776 (GBD) (SN) |
| | DATE OF ATTEMPTED SERVICE BY MAIL: | 1/23/2020 |
| | CLERK'S CERTIFICATE OF MAILING-ECF NO.: | ECF No. 11 (docket for individual case) |
| | GOLDMAN AFFIDAVIT OF SERVICE-ECF NO.: | ECF No. 6897 |
| | GOLDMAN DEFAULT AFFIDAVIT-ECF NO.: | ECF No. 6926 |
| **CASE NAME:** | *August Bernaerts, et al. v. Islamic Republic of Iran* | |
| | CASE NO: | No. 1:19-cv-11865 (GBD) (SN) |
| | DATE OF ATTEMPTED SERVICE BY MAIL: | 1/22/2020 |
| | CLERK'S CERTIFICATE OF MAILING-ECF NO.: | ECF No. 8 (docket for individual case) |
| | GOLDMAN AFFIDAVIT OF SERVICE-ECF NO.: | ECF No. 6895 |
| | GOLDMAN DEFAULT AFFIDAVIT-ECF NO.: | ECF No. 6924 |
| **CASE NAME:** | *Ber Barry Aron, et al. v. Islamic Republic of Iran* | |
| | CASE NO: | No. 1:20-cv-09376 (GBD) (SN) |
| | DATE OF ATTEMPTED SERVICE BY MAIL: | 11/24/2020 |
| | CLERK'S CERTIFICATE OF MAILING-ECF NO.: | ECF No. 8 (docket for individual case) |
| | GOLDMAN AFFIDAVIT OF SERVICE-ECF NO.: | ECF No. 6894 |
| | GOLDMAN DEFAULT AFFIDAVIT-ECF NO.: | ECF No. 6932 |

**CASE NAME:** *Jeanmarie Hargrave, et al. v. Islamic Republic of Iran*

| | |
|---|---|
| CASE NO: | No. 1:20-cv-09387 (GBD) (SN) |
| DATE OF ATTEMPTED SERVICE BY MAIL: | 11/24/2020 |
| CLERK'S CERTIFICATE OF MAILING-ECF NO.: | ECF No. 8 (docket for individual case) |
| GOLDMAN AFFIDAVIT OF SERVICE-ECF NO.: | ECF No. 6898 |
| GOLDMAN DEFAULT AFFIDAVIT-ECF NO.: | ECF No. 6911 |

**CASE NAME:** *Paul Asaro, et al. v. Islamic Republic of Iran*

| | |
|---|---|
| CASE NO: | No. 1:20-cv-10460 (GBD) (SN) |
| DATE OF ATTEMPTED SERVICE BY MAIL: | 12/14/2020 |
| CLERK'S CERTIFICATE OF MAILING-ECF NO.: | ECF No. 8 (docket for individual case) |
| GOLDMAN AFFIDAVIT OF SERVICE-ECF NO.: | ECF No. 6900 |
| GOLDMAN DEFAULT AFFIDAVIT-ECF NO.: | ECF No. 6971 |

**CASE NAME:** *Michael Bianco, et al. v. Islamic Republic of Iran*

| | |
|---|---|
| CASE NO: | No. 1:20-cv-10902 (GBD) (SN) |
| DATE OF ATTEMPTED SERVICE BY MAIL: | 12/30/2020 |
| CLERK'S CERTIFICATE OF MAILING-ECF NO.: | ECF No. 8 (docket for individual case) |
| GOLDMAN AFFIDAVIT OF SERVICE-ECF NO.: | ECF No. 6896 |
| GOLDMAN DEFAULT AFFIDAVIT-ECF NO.: | ECF No. 6930 |

   iv. <u>Iran Was Served Via Diplomatic Means</u>

Under 28 U.S.C. § 1608(a)(4),

> if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

Therefore, pursuant to 28 U.S.C. § 1608(a)(4), after service by mail was rejected, the

instant Plaintiffs delivered to the Clerk of the Court for the U.S. District Court for the Southern

docs-100419182.1

District of New York the following items: cover letter, a cashier's check in the amount of $2,275.00 payable to the U.S. Embassy Bern, copies of the Complaint in English, copies of the Complaint in Farsi, Notice of Suit in English, Notice of Suit in Farsi, Summons in English, Summons in Farsi, Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602, Civil Cover Sheet, Affidavits from translators, and a U.S. Airbill (from FedEx) (collectively, "Service Documents").[13]  The Clerk was requested to transmit these documents to the United States State Department in Washington, D.C.  *Id.*  In accordance with the statute and the protocol of the Department of State, it would, in turn, transmit one copy of the papers through diplomatic channels to the foreign state and send the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.  Plaintiffs met all of those requirements in this case.  *See* Goldman Default Affidavits and Goldman Affidavits of Service.

As set forth in the below table, the Clerk of the Court mailed the Service Documents to the Secretary of State, Director of Consular Services, Office of Policy Review and Inter-Agency Liaison, United States Department of State for service on Iran under 28 U.S.C. § 1608 (a)(4).  *See* Goldman Default Affidavits and Goldman Affidavits of Service.

As evidenced by letter from Jared Hess, Attorney Advisor, Overseas Citizens Services, Office of Legal Affairs, United States Department of State, to Ruby J. Krajick, Clerk of Court, service was effectuated on Iran as set forth in the below table, when the U.S. Department of State, assisted by the Foreign Interests Section of the Embassy of Switzerland in Tehran, delivered the Service Documents to the Iranian Ministry of Foreign Affairs under cover of diplomatic notes, whose number is in the below table.  Pursuant to 28 U.S.C. § 1608(c)(1), in

---

[13] Also included were United States Airbills from the State Department to the Embassy in Bern and back, and to the Southern District of New York Clerk.

instances of service under § 1608(a)(4), service shall be deemed to have been made "as of the date of transmittal indicated in the certified copy of the diplomatic note." *See* Goldman Default Affidavits, Goldman Affidavits of Service, Clerk's Certificates, and Diplomatic Notes.

| | | |
|---|---|---|
| **CASE NAME:** | *BNY Mellon, et al. v. Islamic Republic of Iran* | |
| | CASE NO: | No. 1:19-cv-11767 (GBD) (SN) |
| | DATE OF DELIVERY OF THE DIPLOMATIC NOTE AND SERVICE DOCUMENTS: | 06/29/2020 |
| | DIPLOMATIC NOTE NO: | No. 1080-IE |
| | CLERK'S CERTIFICATION OF MAILING-ECF NO.: | ECF No. 15 (docket for individual case) |
| | GOLDMAN AFFIDAVIT OF SERVICE-ECF NO: | ECF No. 6899 |
| | GOLDMAN DEFAULT AFFIDAVIT-ECF NO.: | ECF No. 6928 |
| | | |
| **CASE NAME:** | *Deborah Bodner, et al. v. Islamic Republic of Iran* | |
| | CASE NO: | No. 1:19-cv-11776 (GBD) (SN) |
| | DATE OF DELIVERY OF THE DIPLOMATIC NOTE AND SERVICE DOCUMENTS: | 06/29/2020 |
| | DIPLOMATIC NOTE NO: | No. 1083-IE |
| | CLERK'S CERTIFICATION OF MAILING-ECF NO.: | ECF No. 15 (docket for individual case) |
| | GOLDMAN AFFIDAVIT OF SERVICE-ECF NO: | ECF No. 6897 |
| | GOLDMAN DEFAULT AFFIDAVIT-ECF NO.: | ECF No. 6926 |
| | | |
| **CASE NAME:** | *August Bernaerts, et al. v. Islamic Republic of Iran* | |
| | CASE NO: | No. 1:19-cv-11865 (GBD) (SN) |
| | DATE OF DELIVERY OF THE DIPLOMATIC NOTE AND SERVICE DOCUMENTS: | 06/29/2020 |
| | DIPLOMATIC NOTE NO: | No. 1084-IE |
| | CLERK'S CERTIFICATION OF MAILING-ECF NO.: | ECF No. 12 (docket for individual case) |
| | GOLDMAN AFFIDAVIT OF SERVICE-ECF NO.: | ECF No. 6895 |
| | GOLDMAN DEFAULT AFFIDAVIT-ECF NO.: | ECF No. 6921 |

15

| | | |
|---|---|---|
| **CASE NAME:** | *Ber Barry Aron, et al. v. Islamic Republic of Iran* | |
| | CASE NO: | No. 1:20-cv-09376 (GBD) (SN) |
| | DATE OF DELIVERY OF THE DIPLOMATIC NOTE AND SERVICE DOCUMENTS: | 04/14/2021 |
| | DIPLOMATIC NOTE NO: | No. 1044-IE |
| | CLERK'S CERTIFICATION OF MAILING-ECF NO.: | ECF No. 9 (docket for individual case) |
| | GOLDMAN AFFIDAVIT OF SERVICE-ECF NO.: | ECF No. 6894 |
| | GOLDMAN DEFAULT AFFIDAVIT-ECF NO.: | ECF No. 6932 |
| | | |
| **CASE NAME:** | *Jeanmarie Hargrave, et al. v. Islamic Republic of Iran* | |
| | CASE NO: | No. 1:20-cv-09387 (GBD) (SN) |
| | DATE OF DELIVERY OF THE DIPLOMATIC NOTE AND SERVICE DOCUMENTS: | 04/14/2021 |
| | DIPLOMATIC NOTE NO: | No. 1043-IE |
| | CLERK'S CERTIFICATION OF MAILING-ECF NO.: | ECF No. 9 (docket for individual case) |
| | GOLDMAN AFFIDAVIT OF SERVICE-ECF NO.: | ECF No. 6898 |
| | GOLDMAN DEFAULT AFFIDAVIT-ECF NO.: | ECF No. 6911 |
| | | |
| **CASE NAME:** | *Paul Asaro, et al. v. Islamic Republic of Iran* | |
| | CASE NO: | No. 1:20-cv-10460 (GBD) (SN) |
| | DATE OF DELIVERY OF THE DIPLOMATIC NOTE AND SERVICE DOCUMENTS: | 04/21/2021 |
| | DIPLOMATIC NOTE NO: | No. 1050-IE |
| | CLERK'S CERTIFICATION OF MAILING-ECF NO.: | ECF No. 9 (docket for individual case) |
| | GOLDMAN AFFIDAVIT OF SERVICE-ECF NO.: | ECF No. 6900 |
| | GOLDMAN DEFAULT AFFIDAVIT-ECF NO.: | ECF No. 6971 |
| | | |
| **CASE NAME:** | *Michael Bianco, et al. v. Islamic Republic of Iran* | |
| | CASE NO: | No. 1:20-cv-10902 (GBD) (SN) |
| | DATE OF DELIVERY OF THE DIPLOMATIC NOTE AND SERVICE DOCUMENTS: | 04/21/2021 |
| | DIPLOMATIC NOTE NO: | No. 1049-IE |
| | CLERK'S CERTIFICATION OF MAILING-ECF NO.: | ECF No. 9 (docket for individual case) |
| | GOLDMAN AFFIDAVIT OF SERVICE-ECF NO.: | ECF No. 6896 |

16

GOLDMAN DEFAULT AFFIDAVIT-ECF NO.:          ECF No. 6930

Based on the foregoing, Plaintiffs filed an Affidavit of Service confirming service was effected on Iran on the dates of the diplomatic notes as set forth above.

Because service upon Iran was proper, and Section 1605A of the FSIA provides subject matter jurisdiction for the Plaintiffs' claims against Iran, this Court has personal jurisdiction over Iran. *Shapiro*, 930 F.2d at 1020; *see also Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 209 (D.D.C. 2012). *See* Goldman Declaration ¶ 17.

### d.  THE CLERK PROPERLY ENTERED DEFAULT AGAINST IRAN.

Iran did not file any responsive pleading or otherwise defend the suit. Rule 55(a) of the Federal Rules of Civil Procedure, provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." *Id.*

The within Plaintiffs requested, on the dates set forth in the following table, that the Clerk enter default against Iran because:

- Iran was obligated to "serve an answer or other responsive pleading to the complaint within sixty days after service [was effectuated]." 28 U.S.C. § 1608(d);

- Iran was served on the dates set forth in the table; and

- More than sixty (60) days elapsed since service, and Iran failed to file an answer or other responsive pleading, or take any other steps to defend this action.

Upon the Moving Plaintiffs' application, the Clerk issued a Certificate of Default as set forth below.

As Iran failed to timely answer or move in response to the duly served summons and complaint, the Clerk of the Court properly issued a Certificate of Default.

**CASE NAME:** *BNY Mellon, et al. v. Islamic Republic of Iran*

| | |
|---|---|
| CASE NO: | No. 1:19-cv-11767 (GBD) (SN) |
| DATE OF SERVICE: | 06/29/2020 |
| DATE OF REQUEST FOR CLERK'S CERTIFICATE OF DEFAULT: | 07/09/2021 |
| ECF NO. OF REQUEST FOR CLERK'S CERTIFICATE OF DEFAULT: | ECF No. 6928 |
| DATE OF CLERK'S CERTIFICATE OF DEFAULT: | 07/09/2021 |
| ECF NO. OF CLERK'S CERTIFICATE OF DEFAULT: | ECF No. 6935 |

**CASE NAME:** *Deborah Bodner, et al. v. Islamic Republic of Iran*

| | |
|---|---|
| CASE NO: | No. 1:19-cv-11776 (GBD) (SN) |
| DATE OF SERVICE: | 06/29/2020 |
| DATE OF REQUEST FOR CLERK'S CERTIFICATE OF DEFAULT: | 07/09/2021 |
| ECF NO. OF REQUEST FOR CLERK'S CERTIFICATE OF DEFAULT: | ECF No. 6926 |
| DATE OF CLERK'S CERTIFICATE OF DEFAULT: | 07/09/2021 |
| ECF NO. OF CLERK'S CERTIFICATE OF DEFAULT: | ECF No. 6934 |

**CASE NAME:** *August Bernaerts, et al. v. Islamic Republic of Iran*

| | |
|---|---|
| CASE NO: | No. 1:19-cv-11865 (GBD) (SN) |
| DATE OF SERVICE: | 06/29/2020 |
| DATE OF REQUEST FOR CLERK'S CERTIFICATE OF DEFAULT: | 07/09/2021 |
| ECF NO. OF REQUEST FOR CLERK'S CERTIFICATE OF DEFAULT: | ECF No. 6924 |
| DATE OF CLERK'S CERTIFICATE OF DEFAULT: | 07/09/2021 |
| ECF NO. OF CLERK'S CERTIFICATE OF DEFAULT: | ECF No. 6933 |

**CASE NAME:** *Ber Barry Aron, et al. v. Islamic Republic of Iran*

| | |
|---|---|
| CASE NO: | No. 1:20-cv-09376 (GBD) (SN) |
| DATE OF SERVICE: | 04/14/2021 |
| DATE OF REQUEST FOR CLERK'S CERTIFICATE OF DEFAULT: | 07/09/2021 |
| ECF NO. OF REQUEST FOR CLERK'S CERTIFICATE OF DEFAULT: | ECF No. 6932 |

|  | DATE OF CLERK'S CERTIFICATE OF DEFAULT: | 07/09/2021 |
|--|--|--|
|  | ECF NO. OF CLERK'S CERTIFICATE OF DEFAULT: | ECF No. 6937 |

**CASE NAME:** *Jeanmarie Hargrave, et al. v. Islamic Republic of Iran*

|  | CASE NO: | No. 1:20-cv-09387 (GBD) (SN) |
|--|--|--|
|  | DATE OF SERVICE: | 04/14/2021 |
|  | DATE OF REQUEST FOR CLERK'S CERTIFICATE OF DEFAULT: | 07/08/2011 |
|  | ECF NO. OF REQUEST FOR CLERK'S CERTIFICATE OF DEFAULT: | ECF No. 6911 |
|  | DATE OF CLERK'S CERTIFICATE OF DEFAULT: | 07/09/2021 |
|  | ECF NO. OF CLERK'S CERTIFICATE OF DEFAULT: | ECF No. 6922 |

**CASE NAME:** *Paul Asaro, et al. v. Islamic Republic of Iran*

|  | CASE NO: | No. 1:20-cv-10460 (GBD) (SN) |
|--|--|--|
|  | DATE OF SERVICE: | 04/21/2021 |
|  | DATE OF REQUEST FOR CLERK'S CERTIFICATE OF DEFAULT: | 07/20/2021 |
|  | ECF NO. OF REQUEST FOR CLERK'S CERTIFICATE OF DEFAULT: | ECF No. 6971 |
|  | DATE OF CLERK'S CERTIFICATE OF DEFAULT: | 07/20/2021 |
|  | ECF NO. OF CLERK'S CERTIFICATE OF DEFAULT: | ECF No. 6972 |

**CASE NAME:** *Michael Bianco, et al. v. Islamic Republic of Iran*

|  | CASE NO: | No. 1:20-cv-10902 (GBD) (SN) |
|--|--|--|
|  | DATE OF SERVICE: | 04/21/2021 |
|  | DATE OF REQUEST FOR CLERK'S CERTIFICATE OF DEFAULT: | 07/09/2021 |
|  | ECF NO. OF REQUEST FOR CLERK'S CERTIFICATE OF DEFAULT: | ECF No. 6930 |
|  | DATE OF CLERK'S CERTIFICATE OF DEFAULT: | 07/09/2021 |
|  | ECF NO. OF CLERK'S CERTIFICATE OF DEFAULT: | ECF No. 6936 |

### e. Motions to Correct Errors/Motions for Substitution/Notices of Amendment

#### i. Motions to Correct Errors

Certain of the within Plaintiffs requested that the Complaint be amended to correct

certain minor errors as set forth below.

| **CASE NAME:** | *Jeanmarie Hargrave, et al. v. Islamic Republic of Iran* | |
| --- | --- | --- |
| | CASE NO: | No. 1:20-cv-09387 (GBD) (SN) |
| | DATE OF MOTION TO AMEND TO CORRECT ERRORS: | 10/05/2021 |
| | ECF NO. OF MOTION TO AMEND TO CORRECT ERRORS: | ECF No. 7177 |
| | DATE OF ORDER GRANTING MOTION TO CORRECT ERRORS: | 10/07/2021 |
| | ECF NO. OF ORDER GRANTING MOTION TO CORRECT ERRORS: | ECF No. 7229 |
| **PLAINTIFF:** | Maria Vega, individually, as surviving sibling of Diana O'Connor | |

#### ii. Motions for Substitution

Certain of the within Plaintiffs filed motions to substitute parties as set forth below.

| **CASE NAME:** | *BNY Mellon, et al. v. Islamic Republic of Iran* | |
| --- | --- | --- |
| | CASE NO: | No. 1:19-cv-11767 (GBD) (SN) |
| | DATE OF MOTION TO SUBSTITUTE: | 10/05/2021 |
| | ECF NO. OF MOTION TO SUBSTITUTE: | ECF No. 7201 |
| | DATE OF ORDER GRANTING MOTION TO SUBSTITUTE: | 10/07/2021 |
| | ECF NO. OF ORDER GRANTING MOTION TO SUBSTITUTE: | ECF No. 7239 |
| **PLAINTIFF:** | Ralph Gullickson and Patricia Byrne as Co-Personal Representatives of the Estate of Robert Gullickson, Sr., deceased, the late parent of Joseph Gullickson<br>Kathleen Creran as Personal Representative of the Estate of Kevin T. Hughes, deceased, the late sibling of Thomas F. Hughes, Jr. | |

20

| | | |
|---|---|---|
| **CASE NAME:** | *BNY Mellon, et al. v. Islamic Republic of Iran* | |
| | CASE NO: | No. 1:19-cv-11767 (GBD) (SN) |
| | DATE OF MOTION TO SUBSTITUTE: | 11/09/2021 |
| | ECF NO. OF MOTION TO SUBSTITUTE: | ECF No. 7318 |
| | DATE OF ORDER GRANTING MOTION TO SUBSTITUTE: | 11/10/2021 |
| | ECF NO. OF ORDER GRANTING MOTION TO SUBSTITUTE: | ECF No. 7324 |

| | |
|---|---|
| **PLAINTIFF:** | Phelan Halloran, individually, as surviving child of Vincent G. Halloran |

| | | |
|---|---|---|
| **CASE NAME:** | *Deborah Bodner, et al. v. Islamic Republic of Iran* | |
| | CASE NO: | No. 1:19-cv-11776 (GBD) (SN) |
| | DATE OF MOTION TO SUBSTITUTE: | 10/05/2021 |
| | ECF NO. OF MOTION TO SUBSTITUTE: | ECF No. 7203 |
| | DATE OF ORDER GRANTING MOTION TO SUBSTITUTE: | 10/07/2021 |
| | ECF NO. OF ORDER GRANTING MOTION TO SUBSTITUTE: | ECF No. 7240 |

| | |
|---|---|
| **PLAINTIFF:** | Donna A. Cavanaugh as Personal Representative of the Estate of Henry Karczewski, deceased, the late parent of Charles Henry Karczewski |
| | Jeffrey A. Bloom, Esq. as Personal Representative of the Estate of Hazel Lillian Mariani, deceased, the late parent of Louis Mariani |
| | Peter Roman as Personal Representative of the Estate of Miriam Roman, deceased, the late sibling of Diana O'Connor |

| | | |
|---|---|---|
| **CASE NAME:** | *Ber Barry Aron, et al. v. Islamic Republic of Iran* | |
| | CASE NO: | No. 1:20-cv-09376 (GBD) (SN) |
| | DATE OF MOTION TO SUBSTITUTE: | 10/05/2021 |
| | ECF NO. OF MOTION TO SUBSTITUTE: | ECF No. 7199 |
| | DATE OF ORDER GRANTING MOTION TO SUBSTITUTE: | 10/07/2021 |
| | ECF NO. OF ORDER GRANTING MOTION TO SUBSTITUTE: | ECF No. 7238 |

21

| | |
|---|---|
| **PLAINTIFF:** | Ann Bocchi-Schwimmer as Personal Representative of the Estate of Camillo Bocchi, deceased, the late parent of John Bocchi |

### iii.  Notices of Amendment

Certain of the Plaintiffs herein, as set forth in Exhibits A and Exhibits C-1 to C-4 (collectively, "Exhibits C") to the Goldman Declaration, have been added pursuant to a Notice of Amendment being filed contemporaneously with this Motion as further discussed in Section IV-B-i herein.

## III.  JUDGMENT AGAINST IRAN AS TO LIABILITY SHOULD BE ENTERED

### a.  Legal Standard for FSIA Default Judgment As to Liability

Under the FSIA, "[n]o judgment by default shall be entered by a court of the United States or of a State against a foreign state…unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."  28 U.S.C. § 1608(e); *see also Reed*, 845 F. Supp. 2d at 211 (considering evidence presented by plaintiffs after satisfaction of jurisdictional requirements); *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 232 (D.C. Cir. 2003) ("The court still has an obligation to satisfy itself that plaintiffs have established a right to relief.").  To prevail in a FSIA default proceeding, a plaintiff must present a "legally sufficient evidentiary basis for a reasonable jury to find for plaintiff."  *Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91, 98 (D.D.C. 2002).  This standard is the same standard used for granting judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a).  *See*, e.g., *Smith ex rel. Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 223 (S.D.N.Y. 2003), *amended sub nom. Smith ex rel. Est. of Smith v. Islamic Emirate of Afghanistan*, No. 01 CIV.10132 (HB), 2003 WL 23324214 (S.D.N.Y. May 19, 2003) (adopting standard used in *Ungar* and finding Iraq liable for September 11, 2001 terrorist acts).

Courts within the Second Circuit have noted that the proper standard for establishing liability under the FSIA should be "less than normally required," *Id.* at 223, and that a plaintiff needs merely to demonstrate a *prima facie* case to obtain a judgment of liability in a FSIA case. *See Ungar*, 211 F. Supp. 2d at 98.  A plaintiff meets its burden of proof by affidavit or similar evidence, *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13, 19 (D.D.C. 2002), and a court considering entry of default judgment may "accept plaintiffs' uncontroverted evidence as true." *Rimkus v. Islamic Republic of Iran*, 575 F. Supp. 2d 181, 193 (D.D.C. 2008); *Valore v. Islamic Republic of Iran*, 478 F. Supp. 2d 101, 106 (D.D.C. 2007).

Section 1608(e) does not require a new evidentiary hearing to establish liability when a foreign sovereign is in default.  *See Com. Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 242 (2d Cir. 1994) (finding evidence in form of affidavits and exhibits sufficient to satisfy §1608(e)); *Int'l Road Fed'n v. Embassy of the Democratic Republic of the Congo*, 131 F. Supp. 2d 248, 262 (D.D.C. 2001) (accepting as true plaintiffs' uncontroverted factual allegations supported by documentary and affidavit evidence without evidentiary hearing).  Instead, a plaintiff seeking a default judgment under the FSIA may meet its burden by entering into evidence certified transcripts of relevant testimony presented in a previous proceeding.  *See Weinstein v. Islamic Republic of Iran*, 175 F. Supp. 2d 13, 22 (D.D.C. 2001) (adopting findings by relying on affidavit testimony and certified transcript from another proceeding is sufficient to establish Iran's provision of material support and resources to al Qaeda).  In lieu of filing affidavits from witnesses that testified in a previous case, plaintiffs may submit certified copies of the witnesses' transcript from the previous case to establish particular facts.  *See Weinstein*, 175 F. Supp. 2d at 22; *see also Harrison v. Republic of Sudan*, 882 F. Supp. 2d 23, 31 (D.D.C. 2012) ("when a court has found facts relevant to a FSIA case involving material support to terrorist groups, courts in

23

subsequent, related cases may 'rely upon the evidence presented in earlier litigation . . . without necessitating the formality of having that evidence reproduced'" (quoting *Taylor v. Islamic Republic of Iran*, 811 F. Supp. 2d 1, 7 (D.D.C. 2011)); *see also Haim v. Islamic Republic of Iran*, 784 F. Supp. 2d 1, 10 (D.D.C. 2011) (taking judicial notice of sworn testimony and documentary evidence presented in prior proceedings which arose out of the 1995 Gaza strip bombing at issue in *Haim*).

Additionally, taking into account the "multiplicity of FSIA-related litigation," *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 172 (D.D.C. 2010), courts acknowledge that "a FSIA court may 'take judicial notice of related proceedings and records in cases before the same court.'" *Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24, 29 (D.D.C. 2012), quoting *Valore*, 700 F.Supp.2d at 59.

Although judicial notice of findings of fact does not itself establish the truth of such facts under the Federal Rules of Evidence, "'the FSIA does not require this Court to re-litigate issues that have already been settled' in previous decisions. . . . Instead, the Court may review evidence considered in an opinion that is judicially noticed, without necessitating the re-presentment of such evidence." *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 59 (D.D.C. 2010) (quoting *Heiser*, 466 F. Supp. 2d at 264  (taking judicial notice of findings of fact and conclusions of law made in *Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46 (D.D.C. 2003), which also arose out of the 1983 Beirut bombing); *Fain v. Islamic Republic of Iran*, 856 F. Supp. 2d 109 (D.D.C. 2012) (same); *Heiser*, 466 F. Supp. 2d at 263 (taking judicial notice of factual findings made in case brought against same defendants for damages arising from the same 1996 attack on Khobar Towers); *see also Leibovitch v. Syrian Arab Republic*, 25 F. Supp.

3d 1071 (N.D. Ill. 2014) (taking judicial notice of findings of fact in related proceedings arising

out of terrorist attack where defendants failed to appear or otherwise plead).

> [T]he statutory obligation found in § 1608(e) was not designed to impose the onerous burden of re-litigating key facts in related cases arising out of the same terrorist attack. . . . Rather, the requirement was intended to ensure that the courts give proper deference to the political branches' predominant role in foreign affairs by pausing to ensure the validity of their actions before undertaking the substantial step of piercing sovereign immunity and entering judgment against a foreign state.  Mindful of these interests, courts in FSIA litigation have adopted a middle-ground approach that permits courts in subsequent related cases to rely upon the evidence presented in earlier litigation—without necessitating the formality of having that evidence reproduced—to reach their own, independent findings of fact in the cases before them.

*Rimkus*, 750 F. Supp. 2d at 172.

### b.  Plaintiffs State a Cause of Action Under the Terrorism Exception of the FSIA

In addition to establishing a basis for subject matter jurisdiction for Moving Plaintiffs'

claims against Iran, Section 1605A also provides a substantive cause of action imposing liability

against Iran for the Moving Plaintiffs' injuries.  Pursuant to Section 1605A(c), a country

designated as a State Sponsor of Terrorism shall be liable to a national of the United States for

personal injury or death caused by that country's provision of material support or resources.  *See*

§ 1605A(a)(1), (c).  As the District Court for the District of Columbia explained in 2011:

> A straightforward reading of § 1605A(c) is that it creates a federal cause of action for four categories of individuals:  a national of the United States, a member of the U.S. armed forces, a U.S. Government employee or contractor, or a legal representative of such a person . . . . The cause of action is further described as "for personal injury or death caused by acts described in subsection (a)(1) of that foreign state, or of an official employee or agent of that foreign state, for which the courts of the United States may maintained jurisdiction under this section for money damages.

*Owens v. Republic of Sudan*, 826 F. Supp. 2d 128, 153 (D.D.C. 2011) ("liability under section 1605A(c) will exist whenever the jurisdictional requirements of section 1605A are met") (citing *Calderon-Cardona v. Democratic People's Republic of Korea*, 723 F. Supp. 2d 441, 460 (D.P.R. 2010)).

Section 1605A(c) authorizes the recovery of economic damages, solatium, pain and suffering, and punitive damages.

### c.   There Is a Factual Basis for Establishing Liability

The Moving Plaintiffs seek entry of default judgment as to liability against Iran based on Iran's provision of material support to al Qaeda and direct support for, and sponsorship of, the September 11th Attacks.  As set forth below, Iran provided material support and resources to al Qaeda and bin Laden both directly and through Iran surrogate, Hezbollah.  The support provided by Iran assisted in, and contributed to, the preparation and execution of the plans that culminated in the September 11th Attacks.  Without Iran's active and enthusiastic support, al Qaeda could never have carried out those attacks.

The government of Iran has a long history of providing material support and resources to terrorist organizations targeting the United States and its citizens, including al Qaeda.  In 2011, in the *Havlish* case and as part of the *In re Terrorist Attacks on September 11, 2001 MDL*, this Court specifically outlined Iran's longstanding role in the development of the al Qaeda network and direct support for the September 11th Attacks themselves.[14]  This Court's factual findings in the *Havlish* proceeding are supported by an array of government reports, including the Final Report of the National Commission on Terrorist Attacks Upon the United States (the "9/11 Commission").  Among other relevant findings as to Iran, the 9/11 Commission concluded that

---

[14] *See Havlish v. Bin Laden*, No. 03-CV-9848-GBD, ECF No. 294 (S.D.N.Y. Dec. 22, 2011).

Iran forged a cooperation agreement with al Qaeda in the early 1990's, pursuant to which Iran

provided a range of training and assistance to al Qaeda for nearly a decade leading up to the

September 11th Attacks; and that Iran facilitated the travel of senior al Qaeda figures and several

of the future 9/11 hijackers into Afghanistan, thereby directly assisting al Qaeda in the planning

and execution of the September 11th Attacks.  *See* The 9/11 Commission Report (the "9/11 Final

Report") at 60-61, 240-241.[15]

The Moving Plaintiffs submit that the 9/11 Commission's findings as to the nature and

scope of Iran's sponsorship of al Qaeda are themselves sufficient to support entry of judgment by

default in these proceedings.  Moreover, these findings were further corroborated by affidavits of

terrorism experts Dietrich L. Snell, Dr. Daniel L. Byman, Janice L. Kephart, Dr. Patrick

Clawson, Claire M. Lopez, Dr. Bruce D. Tefft, Dr. Ronen Bergman, and Kenneth Timmerman,

submitted of record in the *Havlish* default proceedings.  Citing both the government reports of

record and the corroborating affidavits, this Court recognized Iran's critical role in enabling and

facilitating al Qaeda's terrorist activities, concluding, for example, that "there is clear and

convincing evidence pointing to the involvement on the part of Hezbollah and Iran in the 9/11

attack, especially as it pertains to travel facilitation and safe haven."  *See* Court Findings, ECF

No. 294 at 35 ¶ 213 (citing Ex. 5, Snell Aff. ¶ 23).  "Iran's facilitation of the hijackers' terrorist

travel operation constituted material support – indeed direct support – for al Qaeda 9/11 attacks,"

Court Findings, ECF No. 294 at 39 ¶ 234 (citing Ex.4, Kephart Aff. ¶ 66), and that evidence of

record "leaves no doubt that al Qaeda and the official Iranian Regime at the highest levels have

---

[15] The 9/11 Commission Report, http://govinfo.library.unt.edu/911/report/911Report.pdf, accessed
October 18, 2021.

been acting in concert to plot and execute attacks against the United States since early 1990s."

Court Findings, ECF No. 294 at p. 41 ¶ 247 (citing Ex. 6, Lopez-Tefft Aff. ¶ 352).

### i. United States' Recognition of Iran as a State Sponsor of Terrorism

The United States Government has recognized and condemned Iran's support of terrorist attacks for over thirty (30) years.  Since January 19, 1984, Iran has been designated by the United States Secretary of State as a State Sponsor of Terrorism on the basis that it "repeatedly provided support for acts of international terrorism."  U.S. Department of State, *State Sponsors of Terrorism*, https://www.state.gov/state-sponsors-of-terrorism/ (last visited October 18, 2021). As a designated State Sponsor of Terrorism, Iran is subject to restrictions on exports and imports, prohibitions on economic assistance and financial and other restrictions.  On March 16, 1995, in response to Iranian support of international terrorism, President Clinton issued Executive Order 12957, which prohibited United States involvement with petroleum development in Iran.  On May 6, 1995, President Clinton strengthened these sanctions by signing Executive Order 12959, pursuant to the International Emergency Economic Powers Act (50 USCS § 1701).  President Clinton imposed additional restrictions on Iran pursuant to Executive Order 13059 on August 19, 1997.  This Order reflected the Executive Branch's intent to prohibit virtually all trade and investment activities with Iran by United States persons.

To be sure, Iran's status as a state sponsor of terrorism remains firmly in place today; as quoted in a White House statement dated April 8, 2019, President Donald Trump confirmed: "The Iranian regime is the leading state sponsor of terror.  It exports dangerous missiles, fuels conflicts across the Middle East, and supports terrorist proxies."[16]

---

[16] White House, *President Donald J. Trump Is Holding the Iranian Regime Accountable for Its Global Campaign of Terrorism*, https://trumpwhitehouse.archives.gov/briefings-

### ii.  Iran's Training and Support of al Qaeda Operatives

This Court's prior findings of fact affirm that Iran "has engaged in, and supported,
terrorism as an instrument of foreign policy, virtually from the inception of its existence after the
Iranian Revolution in 1979."  Court Findings, ECF No. 294 at 6 ¶ 1.  Beginning in the mid-to-
late 1980s, Iran began formulating contingency plans for anti-United States terrorist operations.
*Id.* at 15 ¶ 70. As this Court already has found:

> In the early 1990s, casting aside the historic bitterness between the
> Sunni and Shi'a sects of Islam, Sudanese religious-political leader
> Hassan al Turabi and Iran's political leadership and intelligence
> agencies established close ties, including paramilitary and
> intelligence connections, beginning a united Sunni-Shiite front
> against the United States and the West. . . .
>
> While Osama bin Laden and al Qaeda were headquartered in
> Sudan in the early 1990s, Hassan al Turabi fostered the creation of
> a foundation and alliance for combined Sunni and Shi'a opposition
> to the United States and the West, an effort that was agreed to and
> joined by Osama bin Laden and Ayman al Zawahiri, leaders of al
> Qaeda, and by the leadership of Iran. . . .

Court Findings, ECF No. 294 at 16 ¶¶ 72-73.  Though Iran and Hezbollah are largely Shiite and
al Qaeda is Sunni, according to the 9/11 Final Report, "[t]he relationship between al Qaeda and
Iran demonstrated that Sunni-Shia divisions did not necessarily pose an insurmountable barrier to
cooperation in terrorist operations."  *Id.* at 15 ¶ 69 (citing 9/11 Final Report at 61).

In 1991, bin Laden relocated his terrorist operation from Afghanistan and Pakistan to
Sudan.  According to the testimony of terrorism expert Dr. Matthew Levitt in a separate
proceeding, the Iranian government played a "very active" role in Sudan when bin Laden
operated from Khartoum.  *See Owens*, 826 F. Supp. 2d at 136 (D.D.C. 2011).  In 1991 or 1992,

---

statements/president-donald-j-trump-holding-iranian-regime-accountable-global-campaign-
terrorism/, accessed November 11, 2021.

al Qaeda and Iranian operatives met in Sudan and "reached an informal agreement to cooperate in providing support for actions carried out primarily against Israel and the United States." Court Findings, ECF No. 294 at 16 ¶ 77 (citing 9/11 Final Report at 61). After these meetings, senior al Qaeda operatives traveled to Iran to receive explosives training. *Id.* at ¶ 78 (citing 9/11 Final Report at 61). In 1993, bin Laden and Ayman al Zawahiri met in Sudan to develop an "alliance of joint cooperation and support on terrorism" with Iran's master terrorist, Imad Mughniyah, and Iranian officials. Court Findings, ECF No. 294 at 16-17 ¶¶ 79-80.

> The 1993 meeting in Khartoum led to an ongoing series of communications, training arrangements, and operations among Iran, Hezbollah and al Qaeda. Osama bin Laden sent more terrorist operatives, including Saef al Adel (who would become number 3 in al Qaeda and its top 'military' commander), to Hezbollah training camps operated by Mughniyah and the IRGC [defendant, Islamic Revolutionary Guard Corps] in Lebanon and Iran. Among other tactics, Hezbollah taught bin Laden's al Qaeda operatives how to bomb large buildings, and Hezbollah also gave the al Qaeda operatives training in intelligence and security.

*Id.* at 17 ¶ 83. The al Qaeda-Iran-Hezbollah terrorist training continued throughout the 1990s. "At all times, Iran's Supreme Leader [Ayatollah Ali Hoseini Khamenei] was fully aware that Hezbollah was training such foreign terrorists." *Id.* at 18 ¶ 88.

In the years that followed, this terrorist alliance orchestrated and claimed responsibility for various terrorist attacks against the United States and its allies. *See*, e.g., *Id.* at 18-22 ¶¶ 90-115. Consistent with the evidence also endorsed by this Court, the United States District Court for the District of Columbia held that Iran was factually and legally responsible for the June 25, 1996 bombing of the Khobar Towers housing complex in Dhahran, Saudi Arabia. *See Heiser*, 466 F. Supp. 2d at 229. al Qaeda was involved in the planning of and preparation for the bombing. *See* Court Findings, ECF No. 294 at 20 ¶ 104. Shortly thereafter, in August 1996, an Iranian intelligence operative involved in the Khobar Towers attack met with bin Laden in

30

Jalalabad, Afghanistan to continue developing their joint terrorism campaign against the United

States.  *Id.* at 20-21 ¶ 106.

> At this time, Iranian and Hezbollah trainers traveled between Iran
> and Afghanistan, transferring to al Qaeda operatives such material
> as blueprints and drawings of bombs, manuals for wireless
> equipment, and instruction booklets for avoiding detection by
> unmanned aircraft.

*Id.* at 21 ¶ 107 (citing Ex. 7, Bergman Aff. ¶ 68).

The United States District Court for the District of Columbia also recognized Iran's

involvement in and responsibility for al Qaeda's August 7, 1998 bombings of the United States

embassies in Kenya and Tanzania.  *See Owens*, 826 F. Supp. 2d at 135.  That court relied on

testimony of Dr. Matthew Levitt to support its conclusion regarding Iran's direct assistance to al

Qaeda operatives and its provision of explosives training to Bin Laden and al Qaeda, recognizing

that the "government of Iran was aware of and authorized this training and assistance."  *Id.* at

139.  The *Owens* Court further found that "Iran regarded al Qaeda as a useful tool to destabilize

U.S. interests. . . . [T]he government of Iran aided, abetted and conspired with Hezbollah, Osama

Bin Laden, and al Qaeda to launch large-scale bombing attacks against the United States by

utilizing the sophisticated delivery mechanism of powerful suicide truck bombs."  *Id.* at 135.

Moreover, the court in *Owens* recognized that "Hezbollah's assistance to al Qaeda would not

have been possible without the authorization of the Iranian government."  *Id.* at 138.

This Court's findings of fact further recognize that, in or around October 2000, a United

States Defense Intelligence Agency analyst was in the process of identifying connections among

al Qaeda, Iranian intelligence agencies controlled by Iran's Supreme Leader, Hezbollah, and

other terrorist groups.  Court Findings, ECF No. 294 at 22 ¶ 114.  On October 12, 2000, al Qaeda

suicide bombers attacked the *U.S.S. Cole* in Yemen.  According to the 9/11 Final Report, "Iran

31

made a concerted effort to strengthen relations with al Qaeda after the October 2000 attack on

the *USS Cole*." *Id.* at ¶ 115 (citing 9/11 Final Report at 240).

### iii.   Iran's Support for the September 11, 2001 Attacks

In the *Havlish* proceeding, this Court held that "Iran furnished material and direct support

for the 9/11 terrorists' specific terrorist travel operation" and the facilitation of al Qaeda's

operatives' travel to training camps in Afghanistan was "essential for the success of the 9/11

operation."  Court Findings, ECF No. 294 at 22 ¶¶ 116, 118-119.  This finding is consistent with

the statement in the 9/11 Final Report that "[f]or terrorists, success is often dependent on

travel . . . . For terrorists, travel documents are as important as weapons."  *Id.* at ¶ 117 (citing

9/11 Final Report at 384).

This Court's findings of fact confirm two separate, but related, ways in which Iran

directly facilitated and supported al Qaeda relative to the September 11, 2001 attacks:

> The first way in which the Iranian government materially and
> directly supported the 9/11 terrorist travel operation was by
> ordering its border inspectors not to place telltale stamps in the
> passports of these future hijackers traveling to and from
> Afghanistan via Iran.  Several of the 9/11 hijackers transited Iran
> on their way to or from Afghanistan, taking advantage of the
> Iranian practice of not stamping Saudi passports.  Thus, Iran
> facilitated the transit of al Qaeda members into and out of
> Afghanistan before 9/11.  Some of these were future 9/11
> hijackers.
>
> * * *
>
> Iran's willingness to permit the undocumented admission and
> passage of al Qaeda operatives and 9/11 hijackers provided key
> material support to al Qaeda.  By not stamping the hijackers'
> passports, by providing safe passage through Iran and into
> Afghanistan, and by permitting Hezbollah to receive the traveling
> group . . . Iran, in essence, acted as a state sponsor of terrorist
> travel.

*Id.* at 22, 24 ¶¶ 122, 132.  This Court's findings on this point are corroborated by National

Security Administration intercepts made available to the 9/11 Commission shortly before the

publication of the 9/11 Final Report.  *See Id.* at 123.  Moreover, "[n]umerous admissions from

lower level al Qaeda members who were interrogated at the detention facility at Guantanamo

Bay confirm the existence of the clandestine Iran-Afghanistan passageway."  *Id.* at 23 ¶ 128

(citing Ex. 2, Timmerman 2nd Aff. ¶¶ 115-19).

> The second way in which Iran furnished material and direct
> support for the 9/11 attacks was that a terrorist agent of Iran and
> Hezbollah helped coordinate travel by future Saudi hijackers.  As
> found by the 9/11 Commission, "[i]n October 2000, a senior
> operative of Hezbollah [Imad Mughniyah] visited Saudi Arabia to
> coordinate activities there.  He also planned to assist individuals in
> Saudi Arabia in traveling to Iran during November . . . ."
>
> * * *
>
> The "activities" that Mughniyah went to Saudi Arabia to
> "coordinate" revolved around the hijackers' travel, their obtaining
> new Saudi passports, and/or U.S. visas for the 9/11 operation, the
> hijackers' security, and the operation's security.

Court Findings, ECF No. 294 at 24-25 ¶¶ 134, 140.  This Court found that those activities also

"constituted direct and material support for the 9/11 conspiracy."  *Id.* at 25 ¶ 144.

Additionally, Iran's provision of material support to al Qaeda continued after the

September 11, 2001 attacks, "most significantly by providing safe haven to al Qaeda leaders and

operatives, keeping them safe from retaliation from U.S. forces, which invaded Afghanistan."

*Id.* at 33 ¶ 198.  Indeed, the Department of State's *Patterns of Global Terrorism* report for

calendar year 2002, released in April 2003 by the Secretary of State and Coordinator for

Counterterrorism, recognized that "al-Qaida members have found virtual safehaven there [in Iran] and may even be receiving protection from elements of the Iranian Government."[17]

In sum, it is by now well established that Iran provided al Qaeda with critical training and support, from the earliest stages of al Qaeda's formation through September 11, 2001, and even thereafter.  Iran's assistance provided al Qaeda with the expertise and resources necessary to carry out large scale international terrorist attacks, and directly enabled al Qaeda to plan and carry out the September 11th Attacks.  As this Court already has held, Iran's provision of material support and resources was instrumental in ultimately causing the deaths and injuries of the thousands who suffered from the September 11th Attacks, and subjects Iran to liability for those injuries.

### d. Plaintiffs Have Established Material Support and Causation

#### i. Plaintiffs Have Established Material Support

The basis of Iran's liability is its provision of material support and resources to al Qaeda, as set forth above, which caused the September 11 Attacks and resulted in the death and injuries of thousands of United States citizens.  *See*, e.g., *In re Islamic Republic of Iran Terrorism Litig*., 659 F. Supp. 2d 31, 59 (D.D.C. 2009) (explaining Iran's material support to Hamas in the form of funding, safe haven, training, and weapons was responsible for suicide attacks).  In order to demonstrate that Plaintiffs have a cause of action under Section 1605A, Plaintiffs must satisfy the elements of Section 1605A(a)(1).  *See Owens*, 826 F. Supp. 2d at 153.

In FSIA cases involving terrorist attacks caused by a foreign state's provision of material support or resources, a court must "determine whether a defendant country has provided material

---

[17] *See* United States Department of State, *Patterns of Global Terrorism 2002*, 77, https://2009-2017.state.gov/documents/organization/20117.pdf, accessed on 10/22/2021.

support to terrorism . . . consider[ing] first, whether a particular terrorist group committed the terrorist act[18] and second, whether the defendant foreign state generally provided material support or resources to the terrorist organization which contributed to its ability to carry out the terrorist act."  *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 67 (D.D.C. 2008).

Section 1605A(h) adopts the definition of "material support or resources" set forth in 18 U.S.C. § 2339A:

> [T]he term "material support or resources" means any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials[.]

18 U.S.C. § 2339A(b)(1).

The record evidence concerning Iran's support of al Qaeda easily satisfies this definition of "material support."  Indeed, this Court already has entered a specific conclusion of law recognizing that Iran "provided material support and resources to al Qaeda for acts of terrorism" including the September 11, 2001 attacks.  Court Findings, ECF No. 294 at 50 ¶ 17; *see also Id.* at 47 ¶ 7 ("plaintiffs have established that their injuries were caused by defendants" acts of 'extrajudicial killing' and/or the provision of 'material support for such acts'").  This conclusion clearly is correct, as the definition of material support prohibits the provision of any form of property or service to a terrorist organization, making specific reference to "expert advice or assistance" and "transportation" and "financial" services, all of which are forms of support Iran provided to al Qaeda.  And the definition plainly recognizes the critical benefits terrorists obtain

---

[18] al Qaeda's responsibility for committing the September 11th Attacks is undisputed and a matter plainly subject to judicial notice.

through any support that assists them in traveling, by expressly including "safehouse,"
"lodging," "false documentation or identification" and "transportation" as forms of prohibited
support.  18 U.S.C. § 2339A(b)(1); *see also Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d
40, 55 (D.D.C. 2006) (recognizing provision of training and travel documents to facilitate acts
constitutes material support); *Rux v. Republic of Sudan*, 495 F. Supp. 2d 541, 549-54 (E.D. Va.
2007) (safe haven); *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 18 (D.D.C. 1998)
(superseded by enactment of Section 1605A) ("routine provision of financial assistance to a
terrorist group in support of its terrorist activities constitutes 'providing material support or
resources' for a terrorist act within the meaning of the [terrorism exception of the FSIA]").

ii.  Plaintiffs Have Proved Causation

The applicable standard of causation is liberally construed in Section 1605A material-
support cases—namely, in such cases, Plaintiffs do not need to demonstrate any direct nexus
between the material support and the eventual terrorist act.[19] It has been established that a
"plaintiff need not establish that the material support or resources provided by a foreign state for
a terrorist act contributed directly to the act for which his claim arises in order to satisfy" the
terrorism exception of the FSIA.  *Flatow*, 999 F. Supp. at 18; *see also*, e.g., *In re Islamic
Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d at 44 (holding that there is no but-for
causation requirement).

Once again, this Court already has determined that the record evidence concerning the
material support Iran provided to al Qaeda is more than sufficient to satisfy the modest causation
requirement of 1605A(c).  Indeed, this Court concluded that Iran's assistance "constituted direct

---

[19] Courts addressing liability under the FSIA generally are guided by the principles of the
Restatement (Second) of Torts. *Reed*, 845 F. Supp. 2d at 212 (granting motion for default
judgment pursuant to Section 1605A).

support and material support for al Qaeda's 9/11 attacks."  Court Findings, ECF No. 294 at 24

¶ 133 (citing 9/11 Final Report); *see also Id.* at 47 ¶ 7 ("plaintiffs have established that their

injuries were caused by defendants" acts of 'extrajudicial killing' and/or the provision of

'material support for such acts'").

### e.  The Basis for Judgment as to Liability Has Been Established

This Court already has analyzed the evidentiary record submitted in the *Havlish*

proceeding, and as described above, issued findings of fact and law on the basis of that evidence.

Although additional materials could be offered to augment that record, the Court's holdings in

*Havlish* render any such supplementation unnecessary.  Under the circumstances, the submission

of additional or repetitive evidence would merely impose an unnecessary burden on the

resources of the Court.  To avoid that result, the Moving Plaintiffs respectfully request that the

Court enter default judgment against Iran as to liability on the basis of the evidence the Court

previously received and analyzed, and which already forms part of the record in the related

multidistrict litigation proceeding for the September 11, 2001 terrorist attacks (03 MDL 1570).

As set forth in detail above, this Court's prior findings of fact, and the affidavits and

documentary evidence already of record, provide a detailed record of Iran's involvement with

and sponsorship of al Qaeda and the September 11, 2001 attacks, and are more than sufficient to

support entry of default judgment against Iran as to liability in this action, pursuant to the

liability standards governing their Section 1605A(c) claims.

## IV.    JUDGMENTS AS TO DAMAGES SHOULD BE ENTERED

Orders of Partial Final Judgments should be entered for damages for the Moving

Plaintiffs.

### a. Damages – Governing Law

#### i. Background

Section 1605A of the FSIA permits a foreign state to be held accountable for acts of terrorism or the provision of material support or resources for acts of terrorism where the acts or provision of support or resources were engaged in by an official, employee, or agent of the foreign state while acting within the scope of his or her office, employment, or agency.  28 U.S.C. § 1605A(a)(1).  The statute specifies that damages are available "for personal injury or death," § 1605A(a)(1) and (c)(4), and include "economic damages, solatium, pain and suffering, and punitive damages." § 1605A(c)(4).  Courts addressing the damages available under the statute have held that, among other damages recoverable, "family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages."  ECF No. 2623 at 2-3 (quoting *Valore*, 700 F. Supp. 2d at 83) .Plaintiffs identified in Exhibits A are comprised of immediate family members of those killed on 9/11, as demonstrated by documentary evidence of their familial relationship to a 9/11 decedent, such as birth or marriage certificates, sworn affidavits, official documents or other documents signed under penalty of perjury, which attest to a familial relationship eligible for recovery, and, in the case of a subsequently deceased family member, a death certificate or sworn affidavit which reflects that the claimant did not predecease the 9/11 victim.[20]  *See* Goldman Declaration at ¶¶ 4-16, 18-19.

With respect to each estate plaintiff in annexed Exhibits A, the personal representative has provided the undersigned counsel with proof that he or she has been appointed by the court as the personal representative of the deceased relative, except in the estates listed in the tables

---

[20] Such evidence is consistent with that contemplated in the Court's July 10, 2018 Order, ECF No. 4045.

directly below, where a petition has been filed to appoint the personal representative, is pending, and, upon information and belief, is unopposed.

| | |
|---|---|
| **CASE NAME:** | *BNY Mellon, et al. v. Islamic Republic of Iran* |
| **CASE NO:** | No. 1:19-cv-11767 (GBD) (SN) |
| **PLAINTIFF:** | Kathleen Creran as Personal Representative of the Estate of Kevin T. Hughes, deceased, the late sibling of Thomas F. Hughes, Jr. |
| | Ralph Gullickson and Patricia Byrne as Co-Personal Representatives of the Estate of Robert Gullickson, Sr., deceased, the late parent of Joseph Gullickson |

As liability has been established in this matter, as provided for above, each Moving Plaintiff is now entitled to damages in the amounts set forth in Exhibits A, which reflect the damage amounts previously established and applied by this Court in this and other related cases arising from the September 11th Attacks or based upon expert economic reports submitted herewith.  In accordance with the terms of the FSIA, the Moving Plaintiffs are entitled to compensation under Section 1605A for their solatium, pain and suffering and economic damages, as applicable, and are also entitled to prejudgment interest.

**b.   Solatium Damages**

As set forth above, the FSIA specifically provides for an award of solatium damages. Under § 1605A, family members of a decedent may recover for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of a decedent's society and comfort." *Dammarell v. Islamic Republic of Iran*, 281 F. Supp. 2d 105, 196 (D.D.C. 2003), vacated on other grounds, 404 F. Supp. 2d 261 (D.D.C. 2005).  Other courts have previously noted that "[a]cts of terrorism are by their very definition extreme and outrageous and intended

39

to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009). In cases brought under this exception to the FSIA, solatium claims have been treated as analogous to claims for the intentional infliction of emotional distress. *See*, e.g., *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (treating solatium claim as "indistinguishable from the claim of intentional infliction of emotional distress" (quoting *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001))).

When previously awarding solatium damages in other cases related to the September 11th Attacks, such as those noted above, this Court looked at the framework established by District Court Judge Royce C. Lamberth in *Heiser*, 466 F. Supp. 2d at 229, where the court awarded solatium damages to each spouse of a deceased victim in the amount of $8 million, to each parent in the amount of $5 million, and to each sibling in the amount of $2.5 million. *Id.* This formula, however, may be adjusted upward or downward when circumstances warrant. *See*, e.g., *Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 156 (D.D.C. 2011); *Valore*, 700 F. Supp. 2d at 85.

Analyzing the solatium claims of the families of the *Havlish* victims who perished in the September 11th Attacks, Magistrate Judge Maas concluded that an upward departure from Judge Lamberth's framework in *Heiser* was appropriate because the decedents' immediate family members suffered, and continue to suffer "profound agony and grief" and "[w]orse yet, . . . are faced with frequent reminders of the events of that day." ECF No. 2618 at 10-12. Judge Maas noted in his July 30, 2012 Report and Recommendation the "extraordinarily tragic circumstances surrounding the September 11th attacks, and their indelible impact on the lives of the victims' families . . ." *Id.* at 11. In that Report and Recommendation, with which this Court later agreed,

40

Magistrate Judge Maas recommended that solatium damages be awarded to the immediate family members of the victims of the September 11th Attacks in the following amounts:

| Relationship of Decedent | Solatium Award |
| --- | --- |
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

*Id.* at 11.

These exact amounts were adopted by this Court in its October 3, 2012 Order, ECF No. 2623, and were replicated in this Court's June 16, 2016 Order relating to the claims of certain of the *Ashton* Plaintiffs, ECF No. 3300, in the September 12, 2016 Order pertaining to plaintiffs in the *Bauer* case, ECF No. 3341, in the October 14, 2016 Report and Recommendation, ECF No. 3363, and in the October 31, 2016 Order in the *Hoglan* case, ECF No. 3384.  These amounts were, again, adopted by this Court in its April 24, 2018 Order relating to the claims of additional *Ashton* Plaintiffs, ECF No. 3977 at 6–7.  The same amounts were recently adopted in the Court's June 8, 2018 (Corrected) Order of Partial Final Default Judgment in the matter known as "*Burnett/Iran II*,"[21] No. 15-cv-09903, ECF No. 101.

The solatium losses suffered by the Exhibits A Plaintiffs before the Court in this application are legally and factually comparable to those suffered by the plaintiffs in the *Havlish*, *Ashton*, *Bauer*, *Hoglan*, *O'Neill* and *Burnett* cases.  As such, Plaintiffs identified in Exhibit A respectfully request that the Court grant awards of solatium to the immediate family members as identified in Exhibits A in the same amounts indicated herein, consistent with this Court's

---

[21] The same values were applied to the claims of other plaintiffs in the earlier *Burnett* case in this Court's order of July 31, 2017. ECF No. 3666.

application of those values established and applied in *Havlish*, and subsequently adopted and applied to plaintiffs in the *Ashton*, *Bauer*, *Hoglan, O'Neill*, and *Burnett* cases.

i.   <u>Individuals Not Named in the Complaint (Notices of Amendment)</u>
<u>Entitled to Solatium Damages</u>

Pursuant to paragraph 5 of Section II(D) of the Plaintiffs' Executive Committee's January 23, 2017 letter, ECF No. 3433, which was adopted by the Court through its January 25, 2017 Order, ECF No. 3435, individuals who are not named in the complaint, but are otherwise a member of the 9/11 decedent's family, are entitled to receive a judgment for solatium based upon their relationship to the 9/11 decedent and where there is a pending claim by the personal representative of that decedent's estate.  The letter provides "[i]n instances where a default judgment is sought by a personal representative in favor of a solatium claimant who is not a named plaintiff in the action in which the award is sought, counsel requesting the judgment will be asked to confirm that: (1) the personal representative has requested that a judgment be sought in favor of the solatium claimant; (2) the solatium claimant has been contacted and affirmed that he or she authorized the personal representative to seek the judgment in his or her favor; and (3) counsel has confirmed that the solatium claimant in favor of whom the judgment is being sought has not retained other counsel or been named in any other action or, if he or she has, that counsel has communicated with the claimant's counsel and received authorization to seek the judgment via the estate's representative."  ECF No. 3433 at 7; *see also* ECF No. 5234.

Such individuals are indemnified and the compliance with such procedure is described in ¶¶ 15-16 and Exhibits C to the Goldman Declaration.

Accordingly, judgment should be entered in such Plaintiff's favor as if they were named plaintiffs, in the same amounts indicated herein, consistent with this Court's application of those values established and applied in prior proceedings in this *MDL*.

### c.  Punitive Damages

Moving Plaintiffs are also entitled to punitive damages under the FSIA.  28 U.S.C.

§ 1605A(c)(4).  In the *Havlish* Report and Recommendation on damages, the magistrate judge

explained that a "3.44 ratio 'has been established as the standard ratio applicable to cases arising

out of' terrorist attacks."  ECF No. 2618 at 13 (quoting *Estate of Bland v. Islamic Republic of*

*Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011)).  This Court adopted that recommendation and

awarded punitive damages on each compensatory damages category at a ratio of 3.44 (punitive)

to 1 (compensatory).  ECF No. 2623 at 2.  The Court has applied that ratio to awards for

plaintiffs in other related cases.  *See*, e.g., ECF No. 3175 at 3 (Magistrate Judge Maas Report and

Recommendation to apply a 3.44 punitive multiplier); ECF No. 3229 at 1 (Judge Daniels

adopting in its entirety Judge Maas's Report and Recommendation to apply a 3.44 multiplier);

ECF No. 3300 at 1 and Exhibit A (Judge Daniels applying 3.44 punitive multiplier to claims in

*Ashton*).

However, in *Hoglan*, another case in the *In re Terrorist Attacks on September 11, 2001*

multidistrict litigation, Magistrate Judge Netburn recommended that the plaintiffs' request for

punitive damages be denied without prejudice.  ECF No. 3363 at 28.  Judge Daniels adopted

Magistrate Judge Netburn's Report in its entirety, denying without prejudice the plaintiffs'

request for punitive damages.  ECF No. 3384 at 6.

In light of the Court's decision in related litigation to defer determination of punitive

damage issues until a later stage of the litigation, Plaintiffs herein request permission to address

the issue of punitive damages at a later date.  *See*, e.g., ECF No. 3666 (Judge Daniels' Order in

*Burnett*, authorizing plaintiffs to make an application for punitive damages at a later date

consistent with any future rulings of the Court).

### d. Prejudgment Interest

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism. *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011). This Court awarded the *Havlish* plaintiffs prejudgment interest at a rate of 4.96% on their pain and suffering damages awards, to be calculated from September 11, 2001, until the date of judgment. ECF No. 2618 at 13-14. This Court, recognizing that prejudgment interest was appropriate in cases such as this case, adopted the magistrate judge's reasoning, finding that an award of prejudgment interest was appropriate and accepting the rate of 4.96%, as proposed by the *Havlish* plaintiffs' expert.

After the *Havlish* award, plaintiffs in *Ashton* and *Bauer* proposed, and the Court agreed, that prejudgment simple interest at the New York State statutory rate of nine percent per annum was appropriate in cases where the injuries arose in New York and the prejudgment interest used in *Havlish*, 4.96 percent per annum, compounded annually, should be reserved for only those cases where the injuries arose in other states. *See* ECF Nos. 3229 at 2; 3300 at 1; 3341 at 1.

The Second Circuit has held that New York State's statutory prejudgment interest rate should apply to the damages awarded to World Trade Center complex leaseholders in their litigation against American Airlines and United Airlines brought under the federal Air Transportation Safety and System Stabilization Act ("ATSSSA"). Pub. L. No. 107-42, 115 Stat. 230 (2001) (codified as amended at 49 U.S.C. § 40101); *In re Sept. 11 Litig.*, 802 F.3d 314, 343 (2d Cir. 2015). In that case, the Second Circuit concluded that a federal cause of action under the ATSSSA must look to state rules concerning prejudgment interest. *Id.* Accordingly, the Second Circuit held that New York's statutory prejudgment interest rate of nine percent as

opposed to a lower rate crafted under federal law, had to be applied to the plaintiffs' claims related to the September 11th Attacks. *Id.*

However, Magistrate Judge Netburn recently recommended in *Hoglan* that the 4.96 percent interest rate for prejudgment interest should be applied to all of the solatium claims. ECF No. 3363 at 28-29. Judge Daniels adopted Magistrate Judge Netburn's *Hoglan* Report in its entirety and applied the interest rate of 4.96 percent per annum, compounded annually to all of the claims. ECF No. 3384 at 6. Thereafter, in *Burnett/Iran II*, the Court again awarded prejudgment interest of 4.96 per annum, compounded annually.

In light of the Court's decisions in *Hoglan* and *Burnett*, applying the 4.96 percent rate to prejudgment interest, the Moving Plaintiffs respectfully request that the clerk be directed to award prejudgment interest at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001, until the date of the judgment.

## V.    CONCLUSION

For all of the reasons herein, in the papers previously submitted to this Court in support of damages against Iran in this *MDL*, and as previously decided by this Court, the Moving Plaintiffs respectfully request that this Honorable Court enter an order:

### a.  Liability

First, all of the reasons herein, as to liability, all Plaintiffs respectfully request that the Court grant Plaintiffs' motion for entry of judgment by default as to liability against Iran as to all Plaintiffs' claims under Section 1605A(c) of the FSIA and enter an order in the form submitted herewith, which tracks the language and format of the Order of Judgment issued in *Havlish, et al. v. bin Laden, et al.*, 1:03-cv-09848 (GBD) (*see* 03 MDL 1570, ECF No. 2516), as the Court directed the plaintiffs in *Hoglan*, *O'Neill*, *Federal Ins.*, and *Ashton* to do. *See* ECF No. 3004.

Plaintiffs further respectfully reserve their rights to seek judgment on other causes of action which have not otherwise been addressed by the Court in the future, if necessary.

In addition, Plaintiffs are seeking a judicial determination that service was properly effectuated upon Iran in accordance with 28 U.S.C. § 1608.

### b. Damages

Further, for all of the reasons herein, the Goldman Declaration, in the papers previously submitted to this Court in support of damages against Iran in this *MDL*, and as previously decided by this Court, the Moving Plaintiffs respectfully request that this Honorable Court enter an Order:

    1.    awarding the Plaintiffs identified in annexed Exhibits A judgments as to damages in the same amounts previously awarded by this Court to various similarly situated plaintiffs in *Burnett*, *Havlish*, *Ashton*, *Bauer*, *O'Neill* and other cases; AND,

    2.    awarding solatium damages to those Plaintiffs identified in Exhibits A in the amounts of $12,500,000 per spouse, $8,500,000 per parent, $8,500,000 per child, and $4,250,000 per sibling, as set forth in Exhibits A; AND,

    3.    awarding the Moving Plaintiffs prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages; AND,

    4.    granting the Moving Plaintiffs permission to seek punitive damages, economic damages, and other appropriate damages at a later date; AND,

5.      granting permission for all other Plaintiffs in these actions not appearing in annexed Exhibits A to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

| | | |
|---|---|---|
| Dated: | New York, New York<br>November 12, 2021 | Respectfully submitted, |

/s/ Jerry S. Goldman

ANDERSON KILL P.C.
Jerry S. Goldman, Esq.
Bruce E. Strong, Esq.
Alexander Greene, Esq.
1251 Avenue of the Americas
New York, NY 10020
Tel:  (212) 279-1000
Fax: (212) 278-1733
Email:  jgoldman@andersonkill.com
        bstrong@andersonkill.com
        agreene@andersonkill.com

*Attorneys for Plaintiffs*