KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

November 15, 2021

*Via ECF*

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

      Re:   *In re Terrorist Attacks on September 11, 2001*, 03-md-1570 (GBD) (SN)

Dear Judge Netburn:

      Defendant Kingdom of Saudi Arabia ("Saudi Arabia") respectfully submits this reply in support of its letter-motion for discovery, ECF No. 7322, and in response to the letter-opposition of Kreindler & Kreindler LLP ("Kreindler & Kreindler"), ECF No. 7330.  As Saudi Arabia explained in its motion (at 2-3), the testimony given by Kreindler & Kreindler counsel Megan Benett at the November 2, 2021 hearing provides substantial grounds to believe that a former FBI agent attended the Musaed Al Jarrah deposition without appearing on the deposition record, violating Paragraph 31 of the deposition protocol.  Indeed, Kreindler & Kreindler's letter as much as concedes that one or more unnamed individuals did attend the confidential depositions in this case.  The Court should direct Kreindler & Kreindler to provide sworn declarations identifying any individuals who attended each confidential deposition in this case not listed on the deposition record, and to produce records showing that such individuals agreed to abide by the protective orders.

      **1.**      We respond initially to Kreindler & Kreindler's false allegation (at 5) that on July 23, 2021, Michael Kellogg, undersigned counsel for Saudi Arabia, "deliberately" withheld from the Court the fact that James Kreindler's statements discussing the contents of confidential depositions in this case were made to Michael Isikoff during Isikoff's *Conspiracyland* podcast, as opposed to a private conversation between Kreindler and Isikoff.  *See* ECF No. 6981, Ex. D3, ¶ 4 (Kellogg Decl.) & attach. A (filed under seal).  The record shows that is nonsense.  Less than a week after his July 23 letter, undersigned counsel filed a reply letter advising the Court that Saudi Arabia had "since learned" that the statements quoted had been broadcast on the July 10, 2021 episode of *Conspiracyland*.  ECF No. 6990, at 2.  So much for Kreindler & Kreindler's baseless assertion (at 6) that Saudi Arabia "fostered [a] misconception for months."

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable Sarah Netburn
November 15, 2021
Page 2

      Even were it not contrary to the record, Kreindler & Kreindler's claim would make no sense. It hardly helps James Kreindler that his statements about the contents of confidential depositions were broadcast publicly rather than made privately to a reporter. And if he had thought it did, he or his firm could have called the supposed omission to the Court's attention in the letter they and other PEC members filed in opposition to Saudi Arabia on July 27, 2021. ECF No. 6988 (filed under seal). Instead, that letter did not mention the podcast at all.

      **2.**      Kreindler & Kreindler also errs in contending (at 2-3) that there is no evidence to "suggest[ ] that [the] deposition protocol was breached." As Saudi Arabia explained in its letter-motion (at 2-3), Benett testified that she was alone in a "Zoom room" in the Kreindler & Kreindler office when she took the Jarrah deposition and that "[t]here were people who were attending [the deposition] . . . in a [nearby] conference room." Tr. 310:17-311:1, 328:14-20. Benett then testified that during a break in the "middle of the deposition" she met in person with and received certain information from a former FBI agent who she "had not met . . . before." Tr. 328:23-329:1, 334:6-7. When asked whether she knew "whether [the former agent] attended that deposition and watched that deposition," Benett answered: "I wouldn't be surprised if he did. . . . I guess I don't have any reason to think that he didn't." Tr. 329:7-12. She then admitted that the agent's name was not on the appearance sheet for the deposition. *See* Tr. 329:18-330:1. After that, Benett again repeated that she "d[id]n't know if he was in the room." Tr. 331:7.

      Benett's testimony shows that she, the attorney conducting the Al Jarrah deposition for Kreindler & Kreindler, believed it was not unlikely that there were individuals attending the deposition who did not appear on the appearance sheet. Further, when asked whether it was "the practice of the Kreindler firm to have people who did not actually make an appearance at these confidential depositions . . . listen in on the depositions," Benett answered only that she "d[id]n't think it was a practice to do that." Tr. 330:2-8. By contrast, she was willing to testify that she "kn[e]w with 100 percent certainty" that, "[i]f [the agent] was in the room, he signed the protective order." Tr. 331:8, 332:23-25. It is reasonable to infer from those answers that Benett was aware of at least some individuals who, contrary to the deposition protocol, attended depositions without making appearances.

      **3.**      Kreindler & Kreindler's letter itself as much as confirms that the unnamed former FBI agent or others like him listened in on the Al Jarrah deposition or others like it. At its end, the letter states (at 8) that Saudi Arabia "seek[s] a list of names of consultants whose names Kreindler & Kreindler, in order to protect against witness intimidation, has not disclosed." That gives up the game. Saudi Arabia's letter-motion asks (at 1) only for a list of the "names of all individuals who attended each confidential deposition taken in this case whose names do not appear on the deposition record." If Kreindler & Kreindler had complied with the deposition protocol's requirement that "[a]ll persons in attendance (either in person or remotely) must be noted on the deposition record," ECF No. 6002-1, at 9, ¶ 31, that would impose no burden. The answer would be that there are no such persons. A "list" will be required only if there are multiple violations.

The Honorable Sarah Netburn
November 15, 2021
Page 3

  Kreindler & Kreindler purports (at 6-7) to find fault with Saudi Arabia for not using limited hearing time to further explore this issue with Kreindler & Kreindler attorney Steven Pounian and researcher John Fawcett. But Kreindler & Kreindler has access to Pounian, at least, if no longer to Fawcett. If Pounian could truthfully say that no one attended the depositions who did not appear on the appearance sheets – or even that the former FBI agent to whom Benett referred at the hearing did not attend the Al Jarrah deposition – that would give Kreindler & Kreindler a basis to represent that it complied with the deposition protocol. No such representation appears in Kreindler & Kreindler's letter. That can only be because, having discussed the matter with her clients, she cannot make such a representation.

  **4.** Saudi Arabia continues to object to Kreindler & Kreindler's repeated but unfounded assertions (at 2 & n.1, 8) that witnesses' or consultants' names cannot be revealed because Saudi Arabia might threaten or intimidate them. We have never participated and would never participate in such conduct. We respectfully refer the Court to Saudi Arabia's past response to Plaintiffs' falsehoods, including a sworn denial from the Minister of State who supervises this litigation. *See* ECF No. 6017-1.

  Kreindler & Kreindler's assertion of a right to withhold attendee names is also contrary to the agreed deposition protocol provisions that Kreindler & Kreindler attorneys Andrew Maloney and Steven Pounian, among other PEC representatives, presented to the Court in the very same filing on the very same day that they first proffered their baseless allegations of intimidation to the Court. *See* ECF No. 6003, at 6 (signatures); *id.* addendum, ¶ 31 (agreement to list attendees); ECF No. 6003-2 (Maloney Decl.). Those attorneys did not then reserve any right to keep attendee names secret and did not raise any concerns about safety.

  Should the Court wish to accommodate Kreindler & Kreindler's purported concerns, it can use a procedure similar to the one it has used in the past, where Kreindler & Kreindler has filed declarations with redactions for consultant-identifying information and has sent to chambers an unredacted version accompanied by a motion giving reasons for sealing. *See* ECF No. 7166-2. The Court can then decide whether maintaining the unredacted version under seal is warranted. Similarly, names can be redacted from the documents showing that individuals have agreed to comply with the MDL and FBI Protective Orders. In this situation, any documents with redacted names should be marked with unique identifiers (Consultants 2, 3, 4, and so on).

  Finally, contrary to Kreindler & Kreindler's assertions (at 1), Saudi Arabia's discovery request is neither "pivoting" to other allegations nor an "effort to get at its adversaries' work product." It is legitimate, appropriate, necessary follow-up on information revealed for the first time at the evidentiary hearing that shows the scope of Kreindler & Kreindler's cavalier disregard for procedure extends beyond the protective order violations that prompted the Court to order the hearing.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable Sarah Netburn
November 15, 2021
Page 4

                                                      Respectfully submitted,

                                                      /s/ *Michael K. Kellogg*

                                                      Michael K. Kellogg
                                                      *Counsel for the Kingdom of Saudi Arabia*

cc:      All MDL Counsel of Record (via ECF)