LAT5ter1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE:  TERRORIST ATTACKS ON
SEPTEMBER 11, 2001,

                                    03 MD 1570 (GBD)
                                    Remote Proceeding

------------------------------x

                                    New York, N.Y.
                                    October 29, 2021
                                    3:00 p.m.

Before:

                    HON. GEORGE B. DANIELS,

                                    U.S. District Judge

                         APPEARANCES


KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
     Attorneys for Defendant Kingdom of Saudi Arabia
BY:  MICHAEL K. KELLOGG

THE LAW OFFICES OF MA & PARK
     Attorneys for Non-party John Fawcett
BY:  MICHAEL GERBER

EMILY KIRSCH
     Attorney for Interested Party Kreindler & Kreindler

LAT5ter1

1          (Case called; The Court and all parties appearing via

2     Microsoft Teams)

3          THE DEPUTY CLERK:  Will the attorneys and the parties

4     please state yourself for the record?

5          MR. KELLOGG:  This is I Michael Kellogg on behalf of

6     the Kingdom of Saudi Arabia.

7          MR. GERBER:  This the Michael Gerber on behalf of John

8     Fawcett.

9          MS. KIRSCH:  And this is Emily Kirsch on behalf of law

10     firm Kreindler & Kreindler.

11          THE DEPUTY CLERK:  Thank you.

12          We now have the Honorable George B. Daniels presiding.

13          THE COURT:  Good afternoon.

14          MR. KELLOGG:  Good afternoon, Judge Daniels.

15          MR. GERBER:  Good afternoon, your Honor.

16          THE COURT:  Mr. Gerber, why don't I hear from you.

17          I have reviewed all of the correspondence relevant to

18     this case and the cases and the declarations and other relevant

19     documents.  So, Mr. Gerber, let's hear from you.

20          MR. GERBER:  Thank you, your Honor, and thank you for

21     seeing us on such short notice.

22          Your Honor, before I turn to the cases in the legal

23     doctrine, I just first want to put this in context, and what we

24     have here is a situation, which as the Court knows, a hearing

25     is scheduled for Monday and our client has been ordered to

LAT5ter1

1    testify at that hearing.  At that hearing -- or in connection

2    with that hearing, Judge Netburn is considering whether to make

3    a criminal referral to the U.S. Attorney's office for the

4    Southern District of New York.  Our client is being called to

5    testify regarding the subject matter as to which there could be

6    a referral.  That is what he is being asked to testify about --

7    directed to testify about.  He is, in a literal sense, in a

8    really true sense, being called as a witness against himself

9    and that scenario, where he has been called as a witness at a

10   hearing to determine whether, with respect to his testimony,

11   the subject matter of his testimony, there should be a criminal

12   referral, we believe that is antithetical to the guarantees of

13   the Fifth Amendment.

14          THE COURT:  Well, let me ask you a direct question

15   before you go beyond that.  Isn't he already called as a

16   witness by submitting his declaration under oath?

17          MR. GERBER:  So, your Honor, the two-part Klein test

18   speaks to that issue, particularly on the second prong of

19   Klein.  So, one of the questions that the Second Circuit

20   directs the Courts to ask, and which your Honor is asking is,

21   hasn't he already made himself a witness?  Hasn't he already

22   waived given the sworn statements?  And, your Honor, the law is

23   clear that when there are no grounds for apprehension, that

24   prior testimony does not carry over, does not constitute a

25   waiver in a subsequent proceeding or in a new proceeding.

LAT5ter1

1          Now, I think it is undisputed, I think the law is

2    crystal clear that if you have a new proceeding, a different

3    proceeding, you don't have a waiver from a prior proceeding.

4          THE COURT:  This isn't a new proceeding.

5          MR. GERBER:  So, your Honor, understood, but the point

6    we would make is --

7          THE COURT:  He submitted a declaration in the

8    proceeding specifically on the issue that is raised in the

9    proceeding and was not, as they say, dragged in to court to

10   testify about that.

11         MR. GERBER:  Your Honor, what has changed, the new

12   grounds for apprehension are the Court's directive not only to

13   have to come testify but, critically, the Court is

14   contemplating a criminal referral and that constitutes new

15   grounds for apprehension.

16         THE COURT:  All right, so let's concentrate on that.

17   The first thing I want to ask is, without the new grounds, do

18   you have any argument that he, if there weren't -- if there

19   aren't new grounds or weren't new grounds, that he would have

20   any basis to refuse to testify?

21         MR. GERBER:  Yes, your Honor.  Yes, because we

22   think -- we respectfully submit, as we say in our papers, that

23   the first prong of Klein is also not satisfied because the

24   Court --

25         THE COURT:  I'm sorry.  I didn't mean to interrupt

LAT5ter1

1    you.  Let's say with the new, the changed circumstances.

2              MR. GERBER:  Yes, your Honor.

3              THE COURT:  I read the transcript, I got the

4    transcript this afternoon from the argument before Magistrate

5    Judge Netburn.

6              MR. GERBER:  Yes, your Honor.

7              THE COURT:  Two things.  One, he is not even

8    referenced with regard, specifically, with regard to a criminal

9    referral; and secondly, wouldn't you have to convince me that

10   prior to any reference to a criminal referral that he did not

11   have a basis to believe that he would subject himself to

12   significant punishment by the Court including criminal contempt

13   for taking acts which were in violation of that order and,

14   therefore, in violation of the law and that would subject him

15   to possible criminal prosecution?

16             MR. GERBER:  So several responses, your Honor.

17             First, with regard to the fact, respect to the fact

18   that he is not referenced, by name, in the Court order, that is

19   true but, your Honor, given the facts, as your Honor is well

20   aware, and given what is in the declarations, I don't think

21   there is any real question here, any real factual question that

22   part of what Judge Netburn is considering is a criminal

23   referral with respect to our client.  I don't think that's

24   really in dispute as part of what is going on here at the

25   hearing.

LAT5ter1

1    THE COURT:  That was always possible.  That was always

2    possible.  That was possible when all of the parties signed the

3    protective order.

4    MR. GERBER:  Yes, but your Honor, the second prong of

5    Klein, the test, the new grounds of apprehension, is not about

6    the -- the question that Courts are directed to ask is not, on

7    that piece, what an individual could have surmised or might

8    have surmised at a particular -- sort of at step one.  The

9    question is whether facts and the grounds have changed, whether

10    there are new grounds for apprehension, whether someone has

11    been put on notice in an additional way.

12    THE COURT:  But that's not the first inquiry.  The

13    first inquiry is whether or not there was a sufficient basis

14    for him to understand that if you violated this Court order and

15    then later confessed to it, he could expose himself to criminal

16    prosecution and at least, minimally, a criminal prosecution for

17    a criminal contempt.

18    MR. GERBER:  Your Honor, first, I think that for a

19    non-lawyer I did not think that is so obvious at all.  I

20    appreciate --

21    THE COURT:  But this isn't exactly -- this may be a

22    non-lawyer but not someone who is unfamiliar with the Court

23    process.  And a lot of these arguments that you are making

24    about what he could have thought or might have thought, there

25    is absolutely no basis in this record for me to make that

LAT5ter1

1   conclusion because he doesn't say any of that.  He doesn't say

2   he didn't know that he would be making a serious violation of

3   the Court order which might subject him to punishment and

4   penalties including criminal penalties and somehow, despite his

5   actions that were consistent with that, with understanding

6   that, somehow he didn't know that when he submitted these

7   affidavits.  On what basis am I supposed to conclude that

8   somehow he was an ignorant bystander and didn't understand the

9   Court process and didn't understand that if he did what the

10  Court told him not to do that he would be subject to punishment

11  for that and serious punishment even including criminal

12  contempt.

13           MR. GERBER:  Your Honor, the protective order -- the

14  core protective order does reference sanctions, it does not

15  reference criminal sanctions or criminal referral.  It does not

16  reference criminal contempt.

17           THE COURT:  But, again, that's a sideways argument

18  because I have yet to hear you -- say, and I haven't seen in

19  any of his affidavits -- that he thought that he was confessing

20  to something that he couldn't go to jail for.

21           MR. GERBER:  Well, your Honor, I can't speak --

22  because of the privilege, I can't speak to what my client has

23  or has not told me what he understood.

24           THE COURT:  If you want me to make a conclusion that

25  he somehow didn't understand this when the evidence is that he

LAT5ter1

1    has great familiarity with the process; he is a professional,

2    not a layperson.  He may not be a lawyer but he is a

3    professional and a lot of his contact is in court.  And also,

4    the circumstantial evidence is that -- unless you are

5    representing this or somebody from Kreindler is representing

6    this, there is no reason for me to assume that when he filled

7    out that first affidavit that the law firm and he didn't both

8    understand the seriousness of the information he was getting

9    ready to provide to the Court and that there would be possibly

10   serious consequences without limitation if, once the Court

11   found, saw this affidavit.  And this isn't even -- and that's

12   only the first one because then the other question is -- and

13   that's what I am looking for -- the kinds of things you want me

14   to surmise.  Where I am supposed to get that from since he

15   doesn't say it, that I am supposed to assume that by the time

16   he voluntarily submitted the second affidavit he didn't know

17   from the very beginning when he submitted the first affidavit,

18   and then after he submitted the first affidavit and there was

19   the big hullabaloo about that that somehow he thought he could

20   do these acts, admit them without impugning.

21        MR. GERBER:  Your Honor, our argument is not based --

22   it is true we do not have record evidence about what was in his

23   mind at the time or what he understood.  That is the case, we

24   do not have record evidence about that.

25        THE COURT:  We do have some record evidence.  We know

LAT5ter1

1    that his declaration says he took significant steps to make

2    sure that no one found out what he was doing and it doesn't say

3    he wasn't aware of the protective order.  It doesn't say he

4    wasn't aware that he would be in contempt of Court if he

5    violated that order.  It doesn't say, oh, I'm a layperson and I

6    don't know what goes on in the Court so I thought if I violated

7    the Court's order that somehow I would just get a $10 fine.  He

8    handled this as if this was the most serious conduct that he

9    had ever engaged in in his life in terms of hiding it from the

10    law firm, in terms of hiding it from the Court, in terms of how

11    he destroyed the evidence.  So you say, you are right, there is

12    no direct evidence and that would be helpful to him if there

13    was, but there is no direct evidence that he was unaware of the

14    consequences of violating Court's order and the serious nature

15    of, even criminal nature of violating a court order.  And I'm

16    not sure that any layperson would -- very few laypeople,

17    reasonable laypeople would say to me that I think I can violate

18    a court order and that would not be breaking the law and the

19    Court couldn't punish me for that.

20         So, I'm not sure -- I mean given, as Judge Netburn

21    examined the circumstances under which he conducted this

22    disclosure, the extent to which he went to hide this

23    disclosure, not just from the lawyers but from anyone finding

24    out that he was the source of this, on what basis do I have to

25    conclude that somehow he was just an ignorant layperson who had

LAT5ter1

1    no idea he was committing the crime?

2              MR. GERBER:  Your Honor, a few points.

3              First, an individual can appreciate -- or an

4    individual can be aware of the potential for sanctions and an

5    array of sanctions but not appreciate the potential for a

6    criminal referral.  I just think for the record I want to make

7    clear about that.

8              THE COURT:  But nobody says that's true in this case.

9              MR. GERBER:  Again, your Honor, I -- it is certainly

10   correct that there is no -- his declarations do not speak to

11   either way.  The declarations do not speak either way to what

12   sanctions he did or did not appreciate could exist as a result

13   of his conduct.  The declarations are silent on the sanctions

14   question.  I do just want to make the point, your Honor, that

15   if this were arising in a different -- in a new civil action,

16   for example, if the declarations had been given in civil action

17   no. 1 and this was arising in civil action no. 2, the law is

18   crystal clear that there would be no finding of waiver in civil

19   action no. 2 because of a brightline rule that says in a new

20   action we don't infer waiver from a different proceeding

21   because of the potential for new grounds for apprehension.

22             THE COURT:  You are talking about a circumstance that

23   doesn't apply.

24             MR. GERBER:  Your Honor, the point we are making is

25   that, as Judge Cote discussed in *Knopf*, within a single

LAT5ter1

1  proceeding you can have new grounds for apprehension.

2        THE COURT:  That's true, but the scenario that

3  Magistrate Judge Netburn is working with is she told the

4  lawyers, OK, everybody knows there is a protective order, you

5  know what you are supposed to do, you are supposed to notify

6  everybody else what they're supposed to do who has access to

7  this information.  This information has been leaked in

8  violation of that order.  I want to know who leaked it and so I

9  can take the appropriate action.  Ultimately, Mr. Fawcett

10  confesses that he is the culprit and submits affidavits

11  admitting his liability, his responsibility, and exculpating

12  the lawyers.  Your critical point is that because there is a

13  reference in the order to possible criminal referral, which was

14  a circumstance that you acknowledge that existed even before

15  she said it and would have existed even if she hadn't said it,

16  that you want me to assume that that means that your client

17  wasn't aware of that possibility before that and only became

18  aware of the possibility of criminal contempt sanctions once he

19  saw that reference in that order, even though that's not what

20  any of his affidavits say.

21        MR. GERBER:  Your Honor, his affidavits just don't

22  speak to that issue.

23        THE COURT:  I know.  None of his affidavits speak to

24  that.  Nobody forced him to submit these two affidavits.  If he

25  wanted to submit an affidavit on that issue I don't know what

LAT5ter1

1    would have prevented him from doing so.  I'm not supposed to

2    assume that is the case because he didn't submit an affidavit.

3    This is a person who, up until -- well, let's put it this way.

4    With regard to his past violation, is -- really admitted it and

5    with regard to his continued testimony, that he wants a

6    determination that somehow he didn't realize the extent of the

7    punishment until he saw that reference in an order and so,

8    therefore, that changes the circumstance.  Isn't that sort of

9    like saying, well, two things.  It is sort of like a Perry

10   Mason moment.  It is sort of like, OK, I'm on the stand, I

11   break down and confess to committing the crime, and exculpate

12   the person that is sitting at the table, but now you say I

13   can't be asked any questions -- Perry Mason can't ask me any

14   more questions about that while I'm on the stand.  Or that I,

15   you know, I committed a murder and I thought, well, you know

16   what?  If they convict me, I might get life in prison.  And

17   then I find out that they're going to go for the death penalty

18   so I say, oh, wait a minute, now you are going for the death

19   penalty, everything has changed.

20        I'm not sure -- the question isn't how severe the

21   punishment is, the question is whether you knew at the time

22   that you, even if you were only convicted of disorderly

23   conduct, the question is whether you knew at the time that you

24   provided this information in this proceeding that that

25   information would subject you to punishment and could subject

LAT5ter1

1    you to criminal punishment.  And I still don't -- I don't hear

2    an argument that your client was not fully aware that his

3    violation of this Court order could subject him to criminal

4    penalties including criminal contempt and a referral which

5    would have been through a referral to the U.S. Attorney's

6    office.

7              MR. GERBER:  Well, again, your Honor, I think the

8    record is silent on that but if I may -- if I may --

9              THE COURT:  So how can I conclude that if the record

10   is silent?

11             MR. GERBER:   Well, no, your Honor.  I will say what

12   Klein says that the waiver of the privilege can only be

13   inferred in the most compelling of circumstances.  I think,

14   your Honor, to the extent the record is silent I think that

15   that strengthens Mr. Fawcett's point, not the other way.

16             THE COURT:  Not to the extent that it is silent on

17   what he thought.  If the crux of your argument is that he was

18   under a misconception or was ignorant then it is his

19   responsibility to tell me that.  I'm not supposed to assume

20   that, I assume just the opposite.  I assume that the conduct

21   that he was involved with clearly, as Magistrate Judge Netburn

22   concluded, clearly is more consistent with knowing the

23   seriousness of the violation that you committed rather than

24   being ignorant of the seriousness of the violation that you are

25   committing and the seriousness of the possible penalty.  And

LAT5ter1

1     your argument would be significantly advanced, I would assume,

2     if your client were to say I had no idea I could be subject to

3     criminal punishment so it wasn't until I saw that in the

4     Judge's order that it ever dawned on me.  I'm not even going to

5     say that I think that that would be sufficient but at least

6     that would advance your argument significantly more than to

7     simply say to me, oh, well, there is nothing in this record and

8     we are to the going to tell you anything about it but we, on

9     the basis of a conclusion that somehow this is a change in his

10    mind of circumstances, it is not a real change in

11    circumstances, it was always subject to these penalties and

12    even then I don't even hear you saying that, making any

13    representation or submitting any evidence about what the

14    lawyers and he discussed or thought when they were preparing

15    this affidavit.  I mean, I can't imagine that you would, or

16    anyone from the firm Kreindler & Kreindler would say to this

17    court that they sat down and helped this individual prepare

18    this affidavit without having any discussion with him about the

19    nature of the serious problem that he had just created and the

20    serious consequences that he could face.

21          MR. GERBER:  Your Honor, just so the record is clear,

22    we were not representing him at the time.

23          THE COURT:  I understand that.

24          MR. GERBER:  And, your Honor, I hope the Court

25    appreciates and understands, of course this is not an

LAT5ter1

1    evidentiary hearing, I can't make a representation to the Court

2    about what my client has told me.

3        THE COURT:  Right.  Only your client can make those

4    representations on declarations prior.

5        MR. GERBER:  Your Honor, if I may, you referenced

6    Perry Mason, and if I can use that opportunity to turn to the

7    other prong of the Klein test because your Honor made the

8    point, used the example of an individual on the witness stand

9    who testifies to certain matters and then wants to stop.  It is

10   critical here, and we cited cases in this regard, EF Hutton and

11   Candor and the Vitamins Antitrust Litigation case out of D.C.

12   that do draw a distinction, an important distinction between

13   trial testimony or a situation where a jury is a fact finder

14   and situations where a Judge is a fact finder.  And Klein does

15   say that a Court should not find a waiver unless a failure to

16   find a waiver would prejudice a party to the litigation.

17       THE COURT:  You don't think parties in this litigation

18   would be prejudiced -- both of them -- if his testimony that he

19   was the one responsible and not the lawyers was withheld, was

20   ignored?

21       MR. GERBER:  So, your Honor, the fact that his

22   description of what he did, the acknowledgment of what he did,

23   we are not asking that that be struck precisely because as to

24   that piece there would be prejudice.

25       THE COURT:  Suppose he is lying.  Suppose he is lying.

LAT5ter1

1    Suppose that's not true.  What are you supposed to do with

2    that?  Can he be cross-examined on that?

3         MR. GERBER:  Your Honor, that point, though, of what

4    if the individual is lying, that's true every time -- every

5    time -- someone invokes.

6         THE COURT:  Right, and that doesn't mean it is not a

7    consideration with regard to whether or not he is entitled to

8    give partial statements and not have them tested by

9    cross-examination.

10        MR. GERBER:  Right.  And, your Honor, the question

11   then becomes what Klein says -- what Klein says is because,

12   again, every case that is always going to be a concern, the

13   Fifth Amendment stands as a block, as a barrier to

14   fact-finding.  The question becomes is there a path -- what

15   Klein is telling the Court to do is, is there a path to not

16   finding waiver without prejudicing the parties?  And in a world

17   in which the Court did not strike his admission about what he

18   did but otherwise struck statements that are prejudicial to a

19   party, the parties are no worse off.  They're no worse off

20   than --

21        THE COURT:  But in those cases those were not relevant

22   issues, they were not determinative issues.  The Court decided

23   that it could decide the issues in this case without arising at

24   those other determinations.  In this case we say there is no

25   prejudice.  In this case what -- I'm not even sure, I have read

LAT5ter1

1    it several times the two declarations.  I'm not sure which

2    portions you say should be added and which portions you say

3    should be out.

4            Let me give you a scenario:  Magistrate Judge Netburn

5    holds this hearing on Monday, calls a Kreindler lawyer and

6    doesn't believe him or her.  OK?

7            MR. GERBER:  Yes, your Honor.

8            THE COURT:  Then is it your position that she should

9    act as if there is no evidence that Mr. Fawcett was responsible

10   for this?

11           MR. GERBER:  No.  No.  Your Honor, we completely agree

12   that Judge Netburn should take account of what Mr. Fawcett did

13   and he is responsible for it.

14           THE COURT:  He is the only one who says it and he is

15   the only one that can testify to that.

16           MR. GERBER:  Your Honor, again, we are not

17   disputing --

18           THE COURT:  In what form?  I just don't understand

19   your solution here.  In what form do you say he should be

20   examined and to what extent, do you say, that examination

21   should be limited?

22           MR. GERBER:  Your Honor, our position is that what the

23   Court can do, consistent with the first prong of Klein, is

24   strike portions of the declarations --

25           THE COURT:  Which portions?

LAT5ter1

| | |
|---|---|
| 1 | MR. GERBER:  Any portion that in any way prejudices a |
| 2 | party keeping his admissions to what he did. |
| 3 | THE COURT:  Well, doesn't his taking responsibility |
| 4 | for and deflecting it from the lawyer, if that is not |
| 5 | admissible testimony to be examined under oath doesn't |
| 6 | withholding that testimony prejudice one side?  And if we cut |
| 7 | out his declaration that he was the person involved and not the |
| 8 | lawyer, doesn't that prejudice the other side? |
| 9 | MR. GERBER:  Your Honor, I'm sorry.  For a moment |
| 10 | there the feed cut out so, I apologize, I did not hear your |
| 11 | question. |
| 12 | THE COURT:  That's fine. |
| 13 | My question was, basically, how do you not prejudice |
| 14 | one side or the other?  This person has testimony to give and |
| 15 | that testimony is favorable to the lawyers at the law firm.  He |
| 16 | says they didn't know nothing, I did it all myself.  Your |
| 17 | proposition is that that part should stay in but the other side |
| 18 | should not have an opportunity to cross examine him on that and |
| 19 | in what form -- you are saying it should be submitted in the |
| 20 | form of the declaration or he should be examined, direct and |
| 21 | cross-examined, on that issue? |
| 22 | MR. GERBER:  No, your Honor.  Our position is that the |
| 23 | Court should find that there was no waiver, that he should be |
| 24 | permitted to invoke and not be called as a witness against |
| 25 | himself.  At the same time, to avoid prejudice to the parties, |

LAT5ter1

1    the Court could strike portions of his declaration keeping his

2    admissions of what he did.

3         THE COURT:  Suppose his declaration is untrue.   In

4    what proceeding would you accept the out-of-court sworn

5    declaration of a witness and not subject that witness to

6    cross-examination on that issue?

7         MR. GERBER:  Well, your Honor, in this context -- I

8    mean to the extent we are talking about his admissions of his

9    conduct which, to say the least, are not to his benefit, quite

10   the opposite, as the Court has noted, and I think are not in

11   dispute in the case in terms of what he himself did, I don't

12   think anyone is disputing that.  He is acknowledging it, I

13   don't think as to what he did the parties are fighting about

14   that.

15        THE COURT:  No.  I'm not going to say that.

16   Acknowledge is not the right word.  He has submitted an

17   affidavit making these statements.  OK?  I don't know if it is

18   true.  I don't know if it is false.  I don't know if it is

19   partially true.  I don't know if it is partially false.  I have

20   no idea.  Your assumption is that it should be accepted in the

21   limited manner that he has presented it and accepted it as

22   being true.  I'm not sure what kind of procedure that is.

23        MR. GERBER:  Your Honor, it is a procedure that is

24   designed to try to preserve his Fifth Amendment privilege

25   without prejudicing the parties and, again, I do want to

LAT5ter1

1  emphasize that any time someone is invoking it is depriving a

2  fact finder of the opportunity to gain additional facts.

3           THE COURT:  But what you are asking me to do is a

4  little different than what is done in the cases.  What is done

5  in the cases is that when there is found to be a legitimate

6  basis to assert the Fifth that it deprives a witness of some

7  valuable testimony.  It is the Court's responsibility to the

8  process and to the parties to fashion a reasonable alternative.

9  None of those cases say that that can be manipulated in order

10  to provide the witness an opportunity to take the Fifth.

11  That's not what those cases say.  They don't say that, they say

12  that -- and it is not even a consideration of -- that is not a

13  part of the consideration of whether he can assert the Fifth.

14  It is a part of the consideration if he can't assert the Fifth

15  whether, how do you, in fairness, present the evidence.  If he

16  has a Fifth Amendment privilege and you have an opportunity to

17  otherwise provide that evidence to the Court then the Court has

18  the obligation to do that.  I don't read those cases as saying

19  that, look, this is a tool by which you can give him a chance

20  to get out of testifying.

21           MR. GERBER:  Your Honor, if may, and very

22  respectfully, I do disagree with the Court on that point about

23  what the cases say.

24           THE COURT:  OK.  Which case says that?

25           MR. GERBER:  For example, in EF Hutton.

LAT5ter1

| | |
|---|---|
| 1 | THE COURT:  Read the language in EF Hutton that you |
| 2 | say says that the determination of whether he can assert the |
| 3 | Fifth is dependent on whether or not you can fashion partial |
| 4 | admission of testimony. |
| 5 | MR. GERBER:  I'm just pulling the case, your Honor. |
| 6 | THE COURT:  Yes.  Sure.  Maybe I have misread it.  But |
| 7 | I didn't understand that to be part of the test that determines |
| 8 | whether or not he can assert the Fifth. |
| 9 | MR. GERBER:  So, your Honor, and this is what I am |
| 10 | trying to get at. |
| 11 | THE COURT:  Where is it? |
| 12 | MR. GERBER:  So, in EF Hutton. |
| 13 | THE COURT:  Where are you? |
| 14 | MR. GERBER:  I'm on page 117.  It is the very end of |
| 15 | the EF Hutton decision. |
| 16 | THE COURT:  Paragraph? |
| 17 | MR. GERBER:  It is page 117, it is the paragraph |
| 18 | beginning:  "On the basis of the foregoing analysis..." |
| 19 | THE COURT:  Right. |
| 20 | MR. GERBER:  And Court does an analysis and it says |
| 21 | the incriminating testimonial statement that Hutton argues |
| 22 | forms the basis for a waiver, Smith's affidavit submitted in |
| 23 | support of his Rule 14 motion.  However, the Court -- |
| 24 | THE COURT:  Sorry.  Have to do that over. |
| 25 | MR. GERBER:  Sorry. |

LAT5ter1

1              What I was saying was that at page 117, the Court

2      makes the point that the incriminating testimonial statement

3      that Hutton argues form the predicate for a waiver, Smith's

4      affidavit submitted in support of his Rule 14 motion, the Court

5      then notes it denied the Rule 14 motion as being untimely

6      filed.  As a result -- and here is the key language -- as a

7      result, even if Smith's affidavits presents a distorted view of

8      the, facts no prejudice can adhere to Hutton as a result of

9      such distortion because the Court has not relied on the Smith

10     affidavit.  The second prong of the test for testimonial waiver

11     is therefore not met.

12             THE COURT:  That's not this case.  You want the

13     parties to rely on the affidavit.

14             MR. GERBER:  Your Honor, in these cases, EF Hutton and

15     others, the Court rejects the affidavits entirely in order to

16     avoid the waiver issue.  It is not they're not testimony at

17     all, it is not there is not a concern about distortion.  The

18     Court says because we want to avoid a waiver, because that is

19     so important because of the constitutional concerns here, we

20     are going to avoid this problem by disregarding the affidavit

21     entirely.

22             We are asking for something short of that.  We are not

23     coming and saying --

24             THE COURT:  How does that support what you asked for

25     if you are not asking for that?

LAT5ter1

1          MR. GERBER:  Because we are asking for less.

2          THE COURT:  OK.

3          MR. GERBER:  Because if a Court, in order to avoid a

4     waiver -- if a Court, in order to avoid the invocation of Fifth

5     Amendment rights can disregard a declaration entirely then

6     surely a Court, by definition, logically, has the authority,

7     has the ability and can and should strike portions of a

8     declaration.  One is less than the other.

9          THE COURT:  I can only disregard the declaration

10    entirely if I find that he has a Fifth Amendment privilege.

11         MR. GERBER:  I'm sorry, your Honor.  I missed the last

12    statement.

13         THE COURT:  I can only disregard the affidavit

14    entirely if I first find he has a Fifth Amendment privilege.

15    It is not the other way around.  It is not that I disregard the

16    affidavit to see if that gives him a chance to assert a Fifth

17    Amendment privilege.

18         I understand your prejudice argument but I am still

19    not sure I understand how I can make, or Magistrate Judge

20    Netburn can make, a decision on this bare record that neither

21    party will be prejudiced.  It would be quite awkward -- and it

22    could happen -- and if it is compelled if the law compels it,

23    but it would be quite awkward for Magistrate Judge Netburn to

24    say I'm going to disregard the declarations so therefore there

25    is no evidence in this case whatsoever that supports the

LAT5ter1

1    lawyers assertions that they didn't know.  OK?  And that would

2    be prejudice.  All right?  That would be prejudice to them,

3    particularly if she were to make what would be an awkward

4    decision to say that the reason I'm going to rule against the

5    lawyers is because I don't believe them alone and they have no

6    corroborating evidence of this because I have just ignored the

7    corroborating affidavits that support it.  And if she does

8    allow just the affidavit, doesn't that prejudice the other side

9    to say, well, wait a minute, we don't think that's true.  That

10   statement is not true and we believe that we can demonstrate

11   that that statement is not true through examination of this

12   witness under oath, whereas consistent with a proceeding that

13   the Court has already set up a process where the direct

14   examination are the affidavits.

15       My understanding is the way this is going to be

16   conducted, the direct examination are the affidavits that have

17   been submit and they will be going straight into

18   cross-examination of those witnesses.

19       So this isn't a question of just a question of

20   admissibility.  It is a question of what you do with this

21   evidence that I -- it would be quite unusual for me to say that

22   Magistrate Judge Netburn can decide on, based on these

23   affidavits, which paragraph she is going to let in and which

24   paragraph she is going to keep out and make a determination

25   that it doesn't prejudice either side.

LAT5ter1

1          MR. GERBER:  Your Honor, I would just point out that

2     there are lots of circumstances -- lots -- in which a Court, a

3     fact finder has information that it can't rely on for a variety

4     of reasons.  Judges do this all the time, testimony has been

5     struck for any number of reasons, Courts may disregard

6     something, whatever it may be.  So, the fact that the Judge has

7     certain information and then for whatever reason is not relying

8     on it on findings of fact, that's not unheard of, that's not so

9     uncommon.

10          THE COURT:  But that's not what you are proposing.

11     You are proposing piecemeal to pick -- for example, give me an

12     example of a paragraph that you say should be kept in or a

13     sentence should be kept in.  Give me an example of a sentence

14     you say should be deleted.

15          MR. GERBER:  Your Honor, before I read from the

16     declaration I just want to be sure in terms of what is under

17     seal and what is not.

18          THE COURT:  You are right.  You are right.  I'm sorry.

19     Don't give me a paragraph then, talk about it in general.  I

20     don't understand the nature of the information that you say

21     should be allowed and should be allowed without

22     cross-examination and the nature of the information you say

23     should be precluded.

24          MR. GERBER:  Sure.

25          THE COURT:  What is the information?

LAT5ter1

1          MR. GERBER:  So, your Honor, there are certain

2     sentences or paragraphs where Mr. Fawcett is describing things

3     that he did and they are contrary to the Court's order.  There

4     are sentences in here, paragraphs in fact, that are in no way

5     self-serving.  Frankly, they are directly contrary to our

6     client's interests discussing things that he did that

7     contravenes a Court order.

8          THE COURT:  You say it should be limited, he should be

9     able to shoes by declaration, the extent or the limit of how he

10    is going to discuss that issue.  Because I don't know how --

11    you are saying because your position still is -- I'm not sure

12    what your position is.  Is your position that the parties get

13    cross-examination on that issue?

14         MR. GERBER:  No, your Honor.  No.

15         THE COURT:  OK.  That's what I thought.

16         MR. GERBER:  No.

17         THE COURT:  So we are just supposed to accept it as

18    true?

19         MR. GERBER:  Your Honor, the thrust of the Fifth

20    Amendment is to protect an individual from being a witness

21    against himself.

22         THE COURT:  I know, but the information we are talking

23    about is information you acknowledge is not protected by the

24    Fifth Amendment.  You are saying that I should let the parties

25    use, as evidence in this proceeding, some incriminating

LAT5ter1

1    statement.  So, is it your position that that also applies to

2    him that the Court should use those incriminating statements to

3    the limit that they lay out in this affidavit against and for

4    all of the parties including him?

5             MR. GERBER:  The statements regarding his own conduct?

6    Yes.  Yes, your Honor.  Yes.

7             THE COURT:  All right.  So how is that consistent with

8    a Fifth Amendment.

9             MR. GERBER:  Your Honor, he did not invoke before.

10            THE COURT:  Right.

11            MR. GERBER:  He is seeking to invoke now.

12            THE COURT:  Right.  So your real critical argument is

13   really whether or not there is a change of circumstance because

14   without a change of circumstance, you wouldn't have an

15   argument.  Right?  You say he invoked before and now that

16   things have changed -- he didn't invoke before but now that

17   things have changed he is invoking.

18            MR. GERBER:  No.

19            THE COURT:  Is there anything in his first affidavit

20   that you say is protected by his Fifth Amendment privilege even

21   though he put it in the affidavit at the time?  And are you

22   saying it was protected on the date that he submitted it?  Or

23   are you saying he is now only protected because of the

24   subsequent reference to criminal penalty?

25            MR. GERBER:  Your Honor, I want to be clear on our

LAT5ter1

1    position.  We are not suggesting that as to either declaration

2    the statements in those declarations are somehow protected by

3    the Fifth Amendment.  He did not invoke before so we are not

4    saying -- we are not suggesting that there is somehow Fifth

5    Amendment protection here on those statements the question is

6    whether he can invoke now.

7              THE COURT:  Right.  OK.  That's what I'm trying to

8    focus on.  I want to understand your argument.  So, your

9    argument is not that he invoked his Fifth Amendment privilege

10   at any time prior to Magistrate Judge Netburn's order.

11             MR. GERBER:  He did not.

12             THE COURT:  OK.  And if Magistrate Netburn hadn't put

13   that reference in that order you wouldn't have an argument.

14             MR. GERBER:  No, we would, your Honor, under prong

15   one.  Under prong one.  Your Honor, I take your point as to

16   prong --

17             THE COURT:  No.  What I am trying to understand, what

18   would be your argument -- if he told me he didn't invoke, he

19   didn't assert his Fifth Amendment right when he voluntarily

20   submitted an affidavit in this litigation, I'm not sure what is

21   your argument that, absent what you claim is a change of

22   circumstance, he was protected from giving further testimony

23   even though he had given testimony by declaration.

24             MR. GERBER:  Your Honor, that's the question under

25   prong one.  The question is whether there is a way to avoid a

LAT5ter1

1    finding of waiver without prejudicing the parties.

2              THE COURT:  Right.  And you say the way to do that is

3    to eliminate evidence that is favorable to whom and to leave in

4    evidence that is favorable to whom.

5              MR. GERBER:  The way to do that is to leave in any

6    statements that are contrary to his interests that neither

7    party can characterize is self-serving.  To the extent -- and

8    Saudi Arabia --

9              THE COURT:  Isn't that pretty much every one of those

10   statements?

11             MR. GERBER:  No, your Honor.  I don't think that's

12   correct.

13             THE COURT:  All right.  So you say that you will leave

14   in any criminal conduct that -- or any conduct that he admitted

15   his own wrongful acts?

16             MR. GERBER:  Your Honor, I do want to be clear for the

17   record that we are not -- I hope the Court can appreciate why I

18   am saying this.  We are not conceding --

19             THE COURT:  No.

20             MR. GERBER:  -- criminality as probably the Court can

21   appreciate but, yes, your Honor, there is conduct described in

22   the declarations that is contrary to the Court's order; there

23   are statements in there.  I think it is beyond dispute.  I

24   don't think anyone will dispute that there are statements in

25   there that are in no way self-serving and are contrary to his

LAT5ter1

1   interests and they are admissions regarding that conduct and we

2   are not asking that those be struck.  However, Saudi Arabia has

3   pointed out, they've identified certain portions of the

4   declarations that they believe are self-serving, whether it is

5   serving Kreindler's interests or Mr. Fawcett's interest, and to

6   leave those in would prejudice a party.  And we understand that

7   Klein makes clear that you can't say no waiver if that's going

8   to prejudice a party.  So we think the Court --

9           THE COURT:  You think Kreindler is going to say

10  they're not prejudiced by your taking out of this declaration

11  his statement that none of the Kreindler lawyers were involved

12  in this disclosure?

13          MR. GERBER:  Your Honor, they are --

14          THE COURT:  Do you agree with that?

15          MR. GERBER:  I think the question is are they

16  prejudiced relative to where they would have been ex ante, that

17  is, where would they have been if he had invoked to begin with.

18  And the answer is, no, they're not prejudiced, they're no worse

19  off.  The world, as to Kreindler, looks the same.  They are no

20  worse off if that is struck.  It is as if he had not made those

21  statements before, it is as if he had invoked before and in

22  that sense they are no worse off.

23          THE COURT:  It is not as if he had invoked before

24  because if he had invoked before, none of this testimony would

25  be there, nobody could take advantage of this to the other's

LAT5ter1

1   disadvantage.  So I don't understand how that is supposed to

2   make everybody happy, by saying that you are just going to --

3   that just going to let one side, let Saudi Arabia pick the

4   stuff that they don't like and take it out and then just use

5   the stuff that they do like against the Kreindler lawyer.  And

6   the Kreindler lawyer says, yeah, that's all right with me.

7        I mean, you really think that that's a viable

8   solution?

9        MR. GERBER:  Your Honor, I actually do think it is

10  viable solution and I think I do think --

11       THE COURT:  The lawyers -- because they haven't spoken

12  up on this issue so I don't what basis that you believe that

13  they would agree.  And, who is going to make that

14  determination?  Magistrate Judge Netburn?  Or the Saudi Arabia

15  lawyers?

16       MR. GERBER:  No.  I think the parties would make their

17  submissions to the Court and Judge Netburn would strike what

18  she thinks appropriate.

19       Your Honor, what Klein makes clear, I think I submit,

20  is that given the importance of the Fifth Amendment right, a

21  Court should try to find a way to avoid a waiver.  I think

22  Klein and EF Hutton --

23       THE COURT:  I'm not going to accept that.  It is not

24  what it stands for.  It is not my job to try to find a way to

25  avoid a waiver.  My job is to determine whether in fact there

LAT5ter1

```
 1    was a waiver.  I'm not supposed to fix this for your client,

 2    I'm supposed to determine whether your client made a conscious

 3    decision that he would forego asserting his Fifth Amendment

 4    privilege in order to provide the information in this

 5    litigation that he thought was important to provide and whether

 6    he knowingly and voluntarily did that.  I'm not supposed to

 7    help him.  I'm not supposed to fix this for him.  I am supposed

 8    to determine whether he has this right and he asserted this

 9    right.  And you say he didn't assert this right but you want to

10    fashion a remedy that you say would put the parties in a better

11    position than had he asserted this right.  Well, they don't

12    want to be in a better position than when he asserted this

13    right.  They want to be in a better position than they're in if

14    he has such a right.  And their position is this isn't about

15    trying to figure out whether or not we can help him now undo

16    his waiver.  This is about whether or not he in fact had that

17    right and we agree that he did.  And then the question is

18    whether he knowingly and voluntarily decided, even though I

19    don't have to give this testimony in this proceeding, I am

20    going to give it anyway even though I know it's going to

21    incriminate me and even though I know that, to the extent that

22    it may incriminate me, I still think it is important to do.

23              Do you think if, on Monday morning, a Kreindler lawyer

24    says that when we prepared this affidavit we explained to him

25    the serious nature of providing this affidavit and that he
```

LAT5ter1

1    would be confessing to a crime and that he might have serious

2    consequences for it once the Judge finds out that he did this

3    in violation of the order.  Do you think that, under those

4    circumstances, that I or Magistrate Judge Netburn will have

5    some basis to argue he didn't waive?

6              MR. GERBER:  Under prong two?  No.  I agree under

7    prong two.

8              THE COURT:  Prong one?

9              MR. GERBER:  Prong one is a question about prejudice.

10   Prong two goes to what he understood and the scenario your

11   Honor is describing.  I understand.  You are describing a

12   scenario where there is evidence about what he understood.

13   Your Honor --

14             THE COURT:  How did we get to that?  How does one get

15   to that?  How does one get to the truth?  How does one get to

16   that if his position now is, I changed my mind; I submitted

17   this affidavit, I said it was my fault, not the lawyers' fault,

18   everybody knows this now, even in court, out-of-court,

19   everybody knows that I said that I'm the one that did it and

20   they didn't have anything to do with it.  All right?  As long

21   as he is concerned, case closed, he can go home.

22             I am not sure -- I guess the critical argument that

23   you have really made because I still don't completely

24   understand your lack of prejudice argument.  I mean, I don't

25   think, as they say, on prejudice, sometimes you can just use

LAT5ter1

1    the happy test.  Who is going to be happy with that?  Explain

2    to me how both sides are going to be happy with that result.

3    That's the simple prejudice test.  But, ultimately, it really

4    does -- it is not so much the prejudice test, it is the

5    question of whether or not the order that Magistrate Judge

6    Netburn issued changed the circumstance.  Because before that

7    order, the circumstances were that he voluntarily submitted

8    sworn testimony by declaration in this case and forewent any

9    assertion of the Fifth Amendment privilege, and had not

10   Magistrate Judge Netburn issued this order with that language

11   in it, you would not be in a position to argue the first most

12   important part of the test is whether or not he is being

13   compelled to testify as a witness against himself and that's

14   what the Fifth Amendment is about because he is not -- no one

15   made him do this.  No one -- I don't even have any evidence

16   that anybody even asked him to do this -- somebody may have

17   asked him to do it -- but I have no reason to conclude that he

18   didn't have a choice and made the choice that rather than to

19   stay solid or to refuse to testify because of the exposure that

20   would inevitably result, that there is no reason to conclude

21   that when he did these acts under the circumstances in which he

22   admits that he did these acts, the surreptitious way that he

23   did these acts and his decision to submit not just one but two

24   declarations in this litigation, declarations submitted to

25   convince the Court that -- well, to accept the responsibility

LAT5ter1

1    for the leak and deflect that responsibility from the lawyers,

2    that that was clearly a conscious decision and the purpose of

3    these declarations, that somehow he could make that choice and

4    we can still fashion a process to allow him to do that to both

5    invoke the Fifth and submit testimonial evidence at the same

6    time.  And I have difficulty and I think Magistrate Judge

7    Netburn had difficulty reconciling those two, you know.

8            I don't, given the serious nature of -- given what

9    should have been clear to everyone who had access to this

10   material that it would be a violation of law for them to

11   disclose this material, and given no evidence in this case that

12   this individual did not understand that it was a violation of

13   law to violate that Court order, that somehow doing that, not

14   just on one or two occasions is somehow reflective of his

15   desire not to incriminate himself, he made a conscious decision

16   to incriminate himself and whether or not he thought that the

17   consequences of doing that might be slight or might be serious,

18   it is difficult for me to speculate that somehow he thought

19   this wasn't a big deal and that, at most, he would get a

20   reprimand or a slap on the wrist when he got caught.  And his

21   conduct doesn't even reflect that.  The way he did it doesn't

22   reflect that.

23           So I am trying to understand if you have any other

24   argument that would give him the right to invoke the Fifth now

25   if he didn't invoke the Fifth at any time prior to Magistrate

LAT5ter1

1    Judge Netburn's order and the argument that you make that he

2    had the right to invoke it after the order was that she

3    explicitly said she was looking at possible criminal referral

4    to the U.S. Attorney's office and that's the critical thing

5    that changed his view of whether he wanted to voluntarily

6    continue to voluntarily provide testimony in this providing

7    after submitting two declarations under oath.

8         But, let me hear from Mr. Kellogg and then I will let

9    you respond.

10        MR. KELLOGG:  Thank you, Judge Daniels, and may it

11   please the Court; I will try to be brief because I know you

12   read the transcript from yesterday and I don't want to repeat

13   points.

14        First, on the reason to know issue, his claim now that

15   he didn't understand the seriousness of what he admitted to is

16   inappropriate under Klein where the Court said, and I quote,

17   any witness -- any witness -- who makes testimonial

18   incriminating statements, plainly has reason to know when he

19   does so that these statements may be interpreted as a waiver of

20   his Fifth Amendment privilege against self-incrimination.

21        Now, Mr. Fawcett, who has worked as a legal

22   investigator for 20 years, was better able to understand the

23   legal consequences of his actions than many witnesses face with

24   similar choices indeed.  It is undisputed that he had access to

25   personal criminal defense counsel when he signed the

LAT5ter1

1    declaration.  Heal allocuted to a serious offense.  He knew the

2    protective orders were in place, he knew the materials he gave

3    violated two protective orders.  He took great steps to hide

4    his wrongdoing and he destroyed evidence.  He admitted to all

5    of those things in his declaration and he said I take

6    responsibility for my actions which is itself an admission that

7    he knows that he is incriminated.  Mr. Gerber's only response

8    to that is to claim that it was not the same as a judicial

9    proceeding because the Court's October 4 order created new

10   grounds for apprehension.  Magistrate Judge Netburn rightly

11   rejected both those points.  She said they are, I remind you,

12   entirely of the same proceeding which began when the protective

13   order violations were first discovered.  And that is obviously

14   the case.

15          Mr. Fawcett has been a potential target of this since

16   the very start and his incriminating statements were not

17   somehow wiped off by the October 4 order mentioning potential

18   criminal sanctions.

19          Magistrate Judge Netburn also found, based on her

20   familiarity with all of the circumstances, that it was not

21   credible that Fawcett did not understand he was incriminating

22   himself at the time he signed the declarations.  Neither of

23   those findings are clearly erroneous.

24          So let me turn now to the other prong.  The Court hit

25   the nail on the head when it said Mr. Fawcett cannot testify

LAT5ter1

 1    about some matters and invoke the Fifth Amendment on others.  I

 2    could cite you cases all day long saying that starting with the

 3    Supreme Court's decision in *Mitchell v. United States* when he

 4    said, first said it is well established that a witness may not

 5    testify voluntarily about a subject and then invoke the

 6    privilege against self-incrimination when questioned about the

 7    details.  So, having deciding to incriminate himself,

 8    Mr. Fawcett cannot take back that decision and assert the

 9    privilege to prevent cross-examination on statements he chose

10    to make in his declarations otherwise, as Magistrate Judge

11    Netburn pointed out, witnesses could distort the truth by

12    testifying to some fact, denying or withholding others, and

13    asserting the privilege as a bar to cross-examination that

14    would reveal the whole truth.  This Court --

15            THE COURT:  Let me just make sure I have all the facts

16    right.

17            My understanding is that Magistrate Judge Netburn

18    limited her decision to examination relative to the information

19    that's in the declaration.  She did not issue a blanket rule

20    saying, for no purpose, under no circumstances, could he not

21    invoke the privilege if he was being asked about some other

22    subject matter which might expose him personally.

23            MR. KELLOGG:  Absolutely correct, your Honor.  As the

24    Court said in the Mitchell case, the proper scope of

25    cross-examination on its declaration is what's allowed and we

LAT5ter1

1    undertook and told Judge Netburn that we would not go beyond

2    the scope of the declarations itself in asking him questions.

3    But we get a chance -- we need a chance to test those.  The

4    declarations, even though he said he was taking responsibility,

5    at the same time he gives a very self-serving account designed

6    to mitigate his own culpability and to protect his long-time

7    employers by claiming that he acted without their authorization

8    or knowledge.  In my argument yesterday I went through a number

9    of lines of cross-examination and gave a number of examples of

10   statements in his declarations that we think are misleading,

11   false, or incomplete and that we have a right to follow up on

12   those and he can't simply say, no, I'm sorry, here is what I am

13   going to testify to and I'm stopping there, I'm not going to go

14   farther.

15          As the Second Circuit said in Klein, a distortion of

16   facts by committing a witness to select any stopping place in

17   his testimony is antithetical to the Fifth Amendment.

18          And Magistrate Judge Netburn, at page 27 of the

19   transcript, made clear that what is being proposed by defense

20   counsel is some sort of melange while they may consider some of

21   his statements but not others.  But there is no way for the

22   Court to reach its ultimate conclusion, which is the purpose of

23   the hearing on Monday, without being left with distorted facts

24   if Mr. Fawcett's account is not subject to cross-examination.

25          Judge Learned Hand, in *St. Pierre*, made the same

LAT5ter1

1    point:  The time for a witness to protect himself is when a

2    decision is first presented to him.  Anything more puts a

3    mischievous instrument at his disposal.  He can tell a little

4    bit of the truth and withhold things and say I'm not going to

5    answer questions.  It is just -- there is no case that allows

6    that.  And the ones that Mr. Gerber cites, including

7    particularly *Hutton*, do not hold that at all.  In Hutton, the

8    affidavit in question was considered completely collateral and

9    unnecessary to the Court's decision which denied relief on a

10    timeliness ground and therefore was not subject to its

11    distorted few of the facts in the declaration.

12          It is important to realize just how bizarre the

13    procedure that Mr. Gerber is proposing, that somehow the Court

14    is going to go through the declaration and say, *Well, we will*

15    *throw out this one, we will throw out this one.  You can ask*

16    *about this, you can't ask about that.*  That's not a choice the

17    defendant gets to make once he has waived his Fifth Amendment

18    right.

19          Those are the main points I wanted to make, your

20    Honor.  I am happy to answer any questions.

21          THE COURT:  Mr. Gerber, did you want to add anything

22    further?

23          MR. GERBER:  Your Honor, I don't want to belabor our

24    arguments, the Court has our arguments.  I do want to say,

25    emphasize one last time, a product of a criminal referral, a

LAT5ter1

1    Judge saying that a criminal referral to the U.S. Attorney's

2    office is in prospect, is in contemplation, I do submit it is a

3    game-changer.  I do.  I think that's true I think for anybody,

4    I think it is particularly true for a non-lawyer, a Judge

5    saying that she is considering a criminal referral changes the

6    landscape.  I do respectfully submit that.  But otherwise, your

7    Honor, you have our argument.

8              (Continued next page)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

LATGterO

1      THE COURT:  How is that different than prior to her

2  issuing -- I mean, you're not saying that she considered it

3  when she wrote the order, but never considered it and that

4  wasn't a possibility?

5      MR. GERBER:  No, in terms of an individual's degree of

6  apprehension, being told that a federal judge is considering a

7  referral to the US attorney's office for the Southern District

8  of New York increases that person's degree of apprehension, I

9  do submit that that is the case.

10     THE COURT:  But that's not part of increasing their

11  level of apprehension.

12     MR. GERBER:  I mean, the question is, are there new

13  grounds for apprehension, your Honor.  And our position is,

14  yes.

15     THE COURT:  Your argument is because the clients had

16  reason to believe something different before or are you arguing

17  that simply because it was articulated by Netburn?  My reading

18  of the transcript, Netburn said what I expected her to say,

19  look, I didn't wave a magic wand here and make this a new

20  penalty.  This is what everyone should have understood was part

21  of and was the -- hold on a second, let me have the protective

22  order -- that part of the protective order that says that any

23  violation of this order is punishable by money damages caused

24  by the violation, including but not limited to all attorney's

25  fees, court costs, exhibit costs, expert witness fees, travel

LATGterO

1    expenses, all related litigation costs and actual damages

2    incurred by the other party, equitable relief, injunctive

3    relief, sanctions or any other remedy as the Court deems

4    appropriate -- please mute yourself -- particularly, any other

5    remedy as the Court deems appropriate.  Doesn't that include

6    criminal sanctions?

7            MR. GERBER:  Your Honor, I think that that language,

8    particularly to a nonlawyer, lists a whole lot of things which

9    are civil forms of relief.  Criminal sanctions is not listed

10   there.

11           THE COURT:  The serious problem I have with your

12   argument is that you are not representing that's what your

13   client knew.

14           MR. GERBER:  Your Honor, again, I can't testify for my

15   client here.  I can't speak for my client.

16           THE COURT:  He can submit an affidavit if he wants.

17   I'm not preventing him from doing that.  I'm really in a

18   position at hearing, at trial to assume something is true

19   because the lawyers say there's no evidence in the record that

20   it's not true.  There's got to be some evidence in the record

21   that it is true.  And you have scrupulously avoided making such

22   a representation that your client ever thought that he could

23   get away with this without exposing himself to criminal

24   liability.

25           MR. GERBER:  Your Honor, for all the reasons I'm sure

LATGterO

1    the Court can appreciate, I cannot say, oh, my client told me

2    this or that.

3            THE COURT:  Your client could -- look, we know how you

4    can do it.  He can submit a declaration.  He's submitted two

5    declarations already.  There's nothing that prevented him from

6    submitting a declaration saying that he's so inexperienced that

7    he never thought that he could go to jail for violating this

8    court's order.  And quite frankly, I would be very surprised if

9    he was in a position to legitimately and truthfully allege

10   that.

11           MR. KELLOGG:  Your Honor, if I may make one point.  I

12   don't think even if they were at this point putting a

13   self-serving declaration in saying, I didn't know, that would

14   not overcome the evidence that Judge Netburn relied upon in

15   making her conclusion, but that he did understand he was

16   incriminating himself at the time that he signed the

17   declarations and the declarations themselves which make that

18   clear and the fact that he had advice of counsel when he was

19   doing it.  It would just be preposterous at this point for him

20   to put in a declaration.  And indeed, that's potential

21   possibility of criminal sanctions.

22           THE COURT:  I mean, you can probably tell that I have

23   read through all of these papers.  And I think the Magistrate

24   Judge Netburn's decision was appropriate, not in any error of

25   law or in any way not supported by the facts and the law here.

LATGterO

1    Her determination that this witness who has begun his

2    testimony, right, voluntarily submitting affidavits on the very

3    issue and not just affidavits, significant affidavits on the

4    very issue that the magistrate judge is considering and, as he

5    stated in his affidavit, taking responsibility for the conduct

6    that's at issue here as a witness -- not as an accused -- that

7    there's no reason in this record to conclude other than what

8    Magistrate Judge Netburn concluded.  That he was fully aware of

9    the consequences and serious nature of the conduct that he has

10   said he was involved in and the serious consequences that might

11   follow as a result of that conduct.  Being fully aware that he

12   made a decision to submit sworn testimony to influence this

13   court in its determination as to who was responsible and as to

14   who was either solely or additionally responsible.  And he did

15   that knowing that the there would be very serious consequences,

16   including consequences for violating a court order.  There is

17   no reason to believe that he did not understand that violating

18   a court order constitutes criminal contempt, which can be

19   prosecuted within the power of the Court's power to prosecute.

20   And adding no evidence to the contrary that he believed

21   anything else.

22          And the evidence, the circumstantial evidence is that

23   he acted in a way and made statements in his affidavits in a

24   way that clearly indicated that he made a conscious choice to

25   forego those penalties and punishments and to instead take

LATGterO

1  responsibility for the violation of law and to disclose that in

2  this proceeding in the nature of sworn testimony, that he

3  intends to influence the Court.

4         That being the case, I find that there was no change

5  of circumstances here.  The Court's reference in its order, as

6  I say, is not even a reference to him.  It's a general

7  reference to the availability of sanction and punishment that

8  is consistent with the language of the protective order, did

9  not change the circumstances under which Mr. Fawcett found

10  himself, and did not somehow change this into a different

11  proceeding, depending on whether or not he wants to say that

12  now the Court has used words that now make me more afraid than

13  I was before of what's going to happen to me.  He knew that he

14  had violated the law.  He knew that there were possible

15  consequences.  And there's no logical reason, based on his

16  conduct or his statements in his affidavit, to conclude that he

17  wasn't fully aware of the rights he was waiving when he decided

18  to voluntarily give testimony in this case to influence the

19  Court's determination as to how to resolve the issues.

20         That being said, he has already given testimony by two

21  sworn declarations.  His testimony by those declarations and

22  the testimony of others by those declarations are already

23  considered to be testimony at this hearing.  And the next step

24  is cross-examination with regard to testimony at this hearing.

25  And based on the facts before Magistrate Judge Netburn, he does

LATGterO

1    not have the opportunity to submit that limited testimony in

2    this proceeding and decide that that's the only extent to which

3    he will make disclosures in this case under oath and that he

4    will not further subject himself to either direct examination

5    or cross-examination by any of the parties in this litigation.

6    Because now that he somehow thinks that this seems a little

7    more serious than he thought it was going to be when he made

8    that initial decision -- if he did make that initial

9    decision -- to make these disclosures in violation of a court

10   order and to disclose voluntarily if he was the one who was

11   responsible.  Whether or not others are responsible for that

12   are still relevant issues within Magistrate Judge Netburn's

13   determination.  And to what extent his testimony is truthful,

14   accurate and reliable is still an issue as it's an issue to all

15   witnesses and what the appropriateness of the sanctions might

16   be, given the nature of the conduct, is still an issue before

17   Magistrate Judge Netburn.  All of those issues need to be

18   resolved in this hearing.

19          Given his conduct in this hearing so far, I find that

20   it was appropriate for Magistrate Judge Netburn to deny him a

21   right to now assert the Fifth after having made these

22   disclosures in this litigation under oath intended to influence

23   the determination of the Court.

24          I find that the arguments with regard to no prejudice

25   are not persuasive.  I think there's not only prejudice to the

LATGterO

1    parties, I think that there could be significant prejudice to

2    the integrity of -- given the fact that this information is now

3    out there and if there's no way to test the voracity of this

4    information, I find that the parties can -- Saudi Arabia or

5    other parties -- can be significantly affected and publications

6    that are out there in response to the disclosures that

7    demonstrate that even this person -- if this person is going to

8    be a witness -- might be called by either side, that that

9    person's credibility has already been tarnished outside of this

10   courtroom.

11        Information with regard to this case is now

12   information that's disclosed publicly.  And much of that

13   information is not necessarily information that has been tested

14   in a court of law.

15        So given all those reasons, I believe Magistrate Judge

16   Netburn made the right decision and that it was appropriate for

17   her to deny an invocation of the Fifth Amendment and to order

18   this witness -- and as I said, need I say -- under penalties of

19   contempt to further give testimony in this hearing or face both

20   the possibility of further criminal or civil sanctions and

21   punishment if he refuses a lawful court order to testify.

22   That's the order of the Court.

23        Anything further, gentleman?

24        MR. GERBER:  No, your Honor.

25        MR. KELLOGG:  No, Judge.  Thank you.

LATGterO

1           THE COURT:  We're adjourned.

2           (Adjourned)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25