

**EMILY KIRSCH**
150 E. 58TH STREET  22ND FLOOR
NEW YORK, NY 10155
O (212) 832-0170
M (917) 744-2888
EMILY.KIRSCH@KIRSCHNIEHAUS.COM
KIRSCHNIEHAUS.COM

November 16, 2021

**VIA ECF**
The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

      Re:    *In re Terrorist Attacks on September 11, 2001*, 03-md-1570 (GBD) (SN)

Dear Judge Netburn:

We represent the firm Kreindler & Kreindler, LLP ("Kreindler & Kreindler") in connection with the November 1-2, 2021 hearing regarding John Fawcett's breach of the protective orders in this matter (the "Hearing"). We write in opposition to the Kingdom of Saudi Arabia's (the "Kingdom") letter motion dated November 11, 2021, *ECF 7328* ("Nov. 11 Motion") seeking an order to re-open discovery in this matter. For the third time since the close of the Hearing, the Kingdom has made an application to the Court to obtain information it failed to obtain at the Hearing,[1] and once again has fabricated "circumstances" to try to find evidence connecting Kreindler & Kreindler to John Fawcett's leak of the Jarrah deposition transcript. The Kingdom failed to discover any such evidence in the fulsome discovery produced prior to the Hearing, and it failed to elicit any such evidence during the extensive two-day Hearing itself, during which the Court put no time or other constraints on the testimony of any of the witnesses. Having failed so patently, the Kingdom has made repeated post-Hearing efforts to sling further, unfounded accusations at Kreindler & Kreindler, hoping to convince the Court of wrongdoing by innuendo, supposition, and speculation. This third post-Hearing motion, like the two that precede it, should be denied.

---

[1] The common thread underlying each of the Kingdom's three motions is its strategic decision not to ask relevant questions of relevant witnesses at the Hearing itself. *See November 9, 2021 motion, ECF 7322* (seeking additional evidence regarding attendance at the Jarrah deposition, where the Kingdom declined at the Hearing to ask Kreindler & Kreindler attorneys who were present at the deposition for their testimony); *November 10, 2021 motion, ECF 7327* (seeking to move into evidence certain documents not admitted at the Hearing, where the Kingdom, as to many of them, chose not to seek their admission at the Hearing, not to show them to the relevant witnesses, and not to lay a foundation); *November 11, 2021 motion, ECF 7328* (seeking additional information regarding Ms. Crotty, where the Kingdom chose at the Hearing not to ask the Kreindler & Kreindler witnesses if they had any contact with Ms. Crotty during the month of July). The fact that the Kingdom's courtroom strategy failed is no basis to allow it another bite at the apple using different tactics.

1

**KIRSCH & NIEHAUS**

*The Kingdom Has No Basis in Law or Fact to Re-Open Discovery*

As an initial matter, in making its request to re-open discovery, the Kingdom once again ignores the Federal Rules applicable to this proceeding. If the Kingdom seeks to compel further disclosure, the proper mechanism is a motion under Fed. R. Civ. P. 37(a). As with its prior motions, the Kingdom fails to identify the appropriate rule, fails to provide any citations to support its application, and fails to provide any legal basis to support its request to reopen discovery and compel further disclosure. We respectfully submit that, with the gravity of what the Kingdom is trying to do, the law matters.

So, too, do established facts. The record is clear that the Kingdom knew about Mr. Fawcett's attorney-client relationship with Liz Crotty well before the Hearing. The Kingdom received Mr. Fawcett's privilege log on October 27, 2021, wherein numerous "attorney-client" communications between Mr. Fawcett and Liz Crotty are listed. In fact, prior to the Hearing, the Kingdom was singularly focused on Ms. Crotty's role as Mr. Fawcett's counselor, as highlighted in the Kingdom's October 28 letter to the Court attaching the privilege log itself. *ECF 7298 and attachments.* Accordingly, if the Kingdom felt the absence of communications between the named witnesses and Ms. Crotty reflected a production deficiency, the time to raise the issue was pre-Hearing. But the Kingdom did not raise the issue, or any other purported discovery deficiency, because it had no grounds to do so. Kreindler & Kreindler has at all times been forthcoming and transparent – both in initially reporting Mr. Fawcett's leak and in complying with the Court's orders as a result of the leak – and its extensive production was complete (and the Kingdom knows it). Only after the close of the Hearing, after the Kingdom was unable to adduce a shred of evidence that Kreindler & Kreindler was complicit in any way with Mr. Fawcett's leak, did the Kingdom seek more discovery in its efforts to find something – anything – that Kreindler & Kreindler may have done wrong.

Nor can the Kingdom's rank speculation and misleading characterizations create what it wrongly refers to as "circumstantial evidence" to support its motion. The Kingdom's argument is founded on the fact that a call between Mr. Kreindler and Mr. Fawcett falls on the same day as a call between Mr. Fawcett and Ms. Crotty. At the Hearing the Kingdom attempted, but failed, to adduce evidence that the calls were related. But despite the fact that the record holds no support for the Kingdom's conjecture – and sworn testimony from Mr. Kreindler and Mr. Fawcett directly refutes that supposition (*Kreindler 84:3-19; Fawcett 445:18-446:8*) – the Kingdom now misrepresents to the Court that there exists "circumstantial evidence" of Mr. Kreindler's foul play. In other words, the Kingdom wishes that it had been able to elicit different testimony from the witnesses than it did, and now wants to re-open discovery to try again. Just as it advanced false innuendo in its July 23 filing to create a misconception around the July 5 email from Mr. Isikoff to Mr. Kellogg, and just as it misrepresented Ms. Benett's testimony with respect to the presence of a consultant at the Jarrah deposition in direct contradiction of Your Honor's apt summary of the testimony, the

**KIRSCH & NIEHAUS**

Kingdom's speculation here about a phone call to support what amounts to perjury allegations is not only wholly unsupported, it is demonstrably false.[2]

In fact, the 46-minute call on July 22, 2021 had nothing to do with the subject matter of the Hearing. Nor was it even a private call between Mr. Fawcett and Mr. Kreindler, as Mr. Fawcett testified he believed was likely the case. *Fawcett 446:9-20.* It was an ordinary 9/11 team conference call that included Mr. Pounian as well as Mr. Kreindler and Mr. Fawcett. *See Accompanying November 15, 2021 Declaration of Steven Pounian and Exhibit A thereto.*[3] Mr. Fawcett called Mr. Kreindler at 9:17 a.m. on July 22 (for 46 minutes), and as Mr. Pounian's declaration makes clear, he was joined into the call at 9:18 a.m. for 45 minutes. A few hours later, Mr. Pounian similarly was dialed in to the 12:46 p.m. call for 5 minutes. Given the Kingdom's determination to create the misimpression of some misconduct during those calls, Mr. Pounian submits herewith his recollection of the calls, states the topics discussed and, consistent with all the documents and testimony to date, testifies with certainty that John Fawcett's leak of the Jarrah Transcript was not discussed.[4]

To further correct the record, and contrary to the Kingdom's claim, Kreindler & Kreindler did in fact supply a complete response to this inquiry prior to the Kingdom's instant motion. On Friday, November 5, counsel for the Kingdom sent undersigned counsel an email asserting that they deemed communications with Ms. Crotty as responsive to their document demands. Counsel demanded that I confirm that I searched for documents related to Liz Crotty and if I had not, further demanded that I do so and produce any newly-discovered material by no later than November 10. On Monday, November 8, I responded to the Kingdom's request, stating: "We have reviewed your below request. We confirm that Kreindler & Kreindler has complied fully with its discovery obligations, including communications and phone history, that were required by the Court's October 21, 2021 Order." I declined to walk counsel for the Kingdom through the steps that I took, to provide further interpretations of the terms of the discovery requests, or to be interrogated

---

[2] The Kingdom also continues to shamelessly (and newly) mischaracterize Ms. Benett's testimony, stating in its letter-reply filed November 15, 2021 that she testified that people were "in a [*nearby*] conference room" while she took Musaed al-Jarrah's deposition. *ECF 7336 at 2* (emphasis added). That is patently untrue. Ms. Benett, in fact, testified that she was in her own "wing" of the Kreindler & Kreindler offices. *Benett at 328:14:16.* The addition of the word "nearby" is a false characterization, and a blatant misrepresentation, that the Kingdom improperly adds to Ms. Benett's testimony.

[3] In the attachment to Mr. Pounian's Declaration, his personal calls have been redacted for privacy. His personal telephone bills were not requested discovery, nor are they in any way relevant to the instant matter, nor are they in any way responsive to the questions the Court sought to have answered at the Hearing. Kreindler & Kreindler presents them here to disprove facts that exist only in the Kingdom's imagination.

[4] Mr. Pounian's Declaration would not be necessary had the Kingdom asked any of the other Kreindler & Kreindler attorneys about their conferences that day. Because of the Kingdom's failure to elicit testimony at the Hearing, Mr. Pounian is now required to address the Kingdom's unwarranted inquiry into the firm's business matters conducted on that date.

**KIRSCH & NIEHAUS**

about my methods of responding to discovery, none of which is required, necessary or appropriate. The Kingdom's representation that I would not give my position is false.

*The Kingdom's Litigation Tactics Should not be Tolerated*

All of the above, and its other post-Hearing motions, represents the *modus operandi* of the Kingdom: Without authority in the Federal Rules or federal practice, and based on false characterizations (and often outright misrepresentations) of the record, the Kingdom demands information and sworn statements from its adversaries designed to expose the Plaintiffs' work product. When Plaintiffs' counsel declines to answer these invasive and improper demands in its legitimate attempt to guard work product, the Kingdom unfairly suggests that Kreindler & Kreindler is "hiding" something.[5] Kreindler & Kreindler is thus presented with a Hobson's choice: Comply with the Kingdom's demands – irrespective of whether it has the right to make them, whether they would reveal work product, or whether they in fact distract attention and resources from the merits of the litigation – or else face continued specious allegations that Kreindler & Kreindler is hiding contumacious behavior.[6]

The Court should not countenance the Kingdom's endless, baseless, and unauthorized post-Hearing demands. We respectfully remind the Court that Kreindler & Kreindler has cooperated fully at every step with the Court's inquiry. When Kreindler & Kreindler learned of the leak by John Fawcett on September 27, it came forward that very day, in good faith, and with as much detail as was immediately available. The Kingdom nevertheless made one of its characteristic motions on September 29 that Kreindler & Kreindler must be hiding something, and this process ensued. *ECF 7157*. In the past six weeks, Kreindler & Kreindler has provided *extraordinary* discovery concerning its internal communications and protected work product, including additional invasive material from counsel's personal devices. Four Kreindler & Kreindler lawyers were sequestered in the Court for two days, to be called for examination under oath *by their adversaries*. Kreindler & Kreindler cooperated fully with this entire process. The end result of this exceptional process has been to establish that Kingdom cannot make even a *prima facie* showing of any wrongdoing by Kreindler & Kreindler, and that the facts as Kreindler & Kreindler presented them to the Court on September 27 were true, accurate, and complete.

The Kingdom's serial requests for additional discovery clearly illustrate that no matter what information Kreindler & Kreindler provides in its attempt to prove a negative, the Kingdom will

---

[5] This method is further evidenced in the Kingdom's November 15, 2021 letter-reply, in which it incorrectly claims that Kreindler & Kreindler has, *de facto*, admitted that an individual not listed on the deposition appearance sheet of the Jarrah deposition attended it. *ECF 7322* at 2.

[6] This strategy of seeking to burden-shift when it has no affirmative arguments in facts or law is also manifested in the Kingdom's misguided evidence motion. *ECF 7346*. Having failed to meet even the most minimal evidentiary requirement for admission of a document at the Hearing, the Kingdom astonishingly argues that the Court should admit the documents anyway because *Kreindler & Kreindler* has failed to prove the *inauthenticity* of a document. *Id.*

**KIRSCH & NIEHAUS**

never be satisfied. Unless stopped, it will continue to demand ever more-detailed recitations and proof of how Kreindler & Kreindler did *not* participate in John Fawcett's leak of confidential information (or otherwise commit any violation as imagined by the Kingdom), distracting its own adversary from the substance of this lawsuit, and delving deeper into its adversary's work product.

We respectfully submit that this extraordinary diversion must be brought to an end and the Kingdom's Nov. 11 motion should be denied in its entirety.

Respectfully Submitted,

_____*/s/ Emily Kirsch* _____
Emily Bab Kirsch
