**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
                                                                  }
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001   }
                                                                  }   **1:03 MDL 1570 (GBD)(SN)**
                                                                  }
                                                                  }
------------------------------------------------------------------X

**This Document Relates to**
<u>*Ryan, et al. v. Iran, et al.*</u>
**1:20-cv-0266 (GBD)(SN)**

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DIRECT THE CLERK TO DISPATCH DOCUMENTS TO AGENCY AND INSTRUMENTALITY AND GOVERNMENT OFFICIAL DEFENDANTS <u>AS SET FORTH IN 28 U.S.C. §1608(a)(4)</u>

The *Ryan* Plaintiffs respectfully submit this memorandum of law in support of their motion to direct the Clerk of Court for the Southern District of New York to dispatch service documents to the Agency and Instrumentality Defendants and Government Official Defendants identified below in conformity with the procedures set forth in the Foreign Sovereign Immunities Act ("FSIA") for dispatching service documents to foreign state defendants and political subdivisions of foreign state defendants under FSIA §1608(a)(4). This motion has become necessary because other authorized methods of serving the Agency and Instrumentality and Government Official Defendants are unavailable.

**I.     FACTUAL BACKGROUND**

The *Ryan* Plaintiffs are family members and representatives of the estates of family members of victims of the terrorist attacks of September 11, 2001. The *Ryan* Plaintiffs filed their Complaint on January 10, 2020 in order to hold Iran, its political subdivisions, agencies and instrumentalities accountable for their roles in planning, executing, and providing material support for the most deadly act of terror to ever occur on American soil. *Ryan* Doc. No. 1. The

{00962573/}

Complaint names as Defendants the Islamic Republic of Iran and seven of its political subdivisions. *Id*., ¶¶ 70-75, 76(c)-(g).

The *Ryan* Plaintiffs' Complaint also names as Defendants six agencies and instrumentalities of Iran that provided material support for terrorist attacks of September 11, 2001. *Id*., ¶ 77(b)-(h). The six agencies and instrumentalities of the government of Iran are (1) National Iranian Oil Company, (2) National Iranian Tanker Company, (3) National Iranian Gas Company, (4) National Iranian Petrochemical Company, (5) Iran Airlines, and (6) Hezbollah (collectively, the "Agency and Instrumentality Defendants").

In addition, the *Ryan* Plaintiffs named as Defendants two officials of the government of Iran: (1) Ayatollah Ali Hoseini-Khamenei, Supreme Leader of Iran, and (2) the Estate of Ali Akbar Hashemi Rafsanjani, the now-deceased, former Chairman of the Expediency Discernment Counsel and former President of Iran. *Id*., ¶¶ 76(a)-(b) (collectively, the "Government Official Defendants").

## II.   THE *RYAN* PLAINTIFFS HAVE ATTEMPTED TO SERVE THE AGENCY AND INSTRUMENTALITY AND GOVERNMENT OFFICIAL DEFENDANTS VIA THE U.S. POSTAL SERVICE

Pursuant to the service provisions of the FSIA, the *Ryan* Plaintiffs have previously attempted to serve their Complaint and related documents on the Agency and Instrumentality and Government Official Defendants. When there is (1) no special arrangement between the parties, (2) no representative of the Agency and Instrumentality or Government Official Defendants in the United States, and (3) no applicable international convention, the FSIA authorizes service on agencies and instrumentalities of a foreign state by a request to the Clerk of Court to dispatch the required documents "by. . . mail requiring a signed receipt" addressed to the agency or instrumentality. 28 U.S.C. §1608(b)(3)(B).

In March 2021, counsel for the *Ryan* Plaintiffs hand-delivered sixteen pleadings packages to the Foreign Mailings Clerk of Court for the Southern District of New York, who then dispatched all sixteen packages to the Minister of Foreign Affairs at the Ministry of Foreign Affairs in Tehran, Iran, via the United States Postal Service, return receipt requested. Clerk's Certificates of Mailing were entered on the *Ryan* docket on March 31, 2021 and April 8, 2021, certifying that these sixteen packages were sent by the SDNY Clerk's Office on March 30, 2021 and April 2, 2021 via registered U.S. Mail (*Ryan* Doc. Nos. 27-43; *In Re: 9/11 Terrorist Attacks*, MDL Doc. Nos. 6688 through 6697 and 6715 through 6721).

The documents thus dispatched to each of the *Ryan* Defendants included: an individual cover letter; the Complaint; the Summons; and a Notice of Suit, pursuant to 22 C.F.R. 93.2, along with a copy of the text of the FSIA. In addition, the *Ryan* Plaintiffs included Farsi translations of each document and certificates of translation. *Id.*

The *Ryan* Plaintiffs did not receive any signed return receipts for any of these mailings to Iran and were never notified whether the packages were ultimately delivered to their respective destinations. Once the packages reached the Iranian Postal Service, they simply disappeared.

**III.   SERVICE THROUGH DIPLOMATIC CHANNELS CAN BE ACCOMPLISHED**

While Iran does not cooperate with service on agencies or instrumentalities or on government officials pursuant to 28 U.S.C. §1608(b), it is nevertheless possible to serve the Government of Iran and its political subdivisions pursuant to 28 U.S.C. §1608(a).

When, as in this case, there is no special arrangement for service and no applicable international convention, service on foreign states and their political subdivisions is attempted by the Clerk of Court dispatching two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of

mail requiring a signed receipt to the foreign state's minister of foreign affairs. 28 U.S.C. §1608(a)(3). If the foreign state's minister of foreign affairs refuses to accept service by mail, the FSIA provides that service can be accomplished through diplomatic channels pursuant to 28 U.S.C. §1608(a)(4). Service through diplomatic channels is accomplished by the clerk of the court dispatching the documents to be served to the U.S. Secretary of State who "shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted." 28 U.S.C. §1608(a)(4). Pursuant to 18 U.S.C. §1608(c)(1), service is deemed made "as of the date of transmittal indicated in the certified copy of the diplomatic note."

The *Ryan* Plaintiffs have successfully served the state and the Iranian Government Political Subdivision Defendants pursuant to 28 U.S.C. §1608(a)(4). After not receiving a return receipt in connection with their attempt to serve Iran and the Government Political Subdivision Defendants via mail pursuant to 28 U.S.C. §1608(a)(3), the *Ryan* Plaintiffs caused the Clerk of this Court to dispatch to the United States Department of State, via Federal Express, in separate packages, the *Ryan* pleadings and related documents for service upon each of eight nation-state and Iranian Government Political Subdivision Defendants through diplomatic channels pursuant to 28 U.S.C. §1608(a)(4). These packages were accompanied by checks from Plaintiffs' counsel for payment of the requisite State Department fees. The SDNY Clerk posted notices of these dispatches on the *Ryan* docket on July 6, 2021. *Ryan* Doc. Nos. 45-52. Notices of these dispatches was posted on the SDNY *In Re: 9/11 Terrorist Attacks*, MDL docket on July 12, 2021 at Doc. Nos. 6939 through 6946.

Because the Agency and Instrumentality Defendants and the Government Official Defendants cannot be served pursuant to 28 U.S.C. §1608(b), the Court should, as it has in other

cases, authorize the Clerk of the Court to docket and dispatch the service papers using the procedures set forth in 28 U.S.C. §1608(a)(4) for serving Iran and the Iranian Government Political Subdivisions.

### IV. DIPLOMATIC SERVICE IS THE ONLY VIABLE MEANS OF SERVING THE AGENCY AND INSTRUMENTALITY DEFENDANTS AND THE GOVERNMENT OFFICIAL DEFENDANTS

As it has in other cases in the MDL, the *Ryan* Plaintiffs are currently requesting letters rogatory authorizing service of the complaint and related documents on the Agency and Instrumentality Defendants and the Government Official Defendants through diplomatic channels.

The Clerk of the Court has recently indicated that she needs an order authorizing her to docket service and dispatch the service materials using the procedures set forth in 28 U.S.C. §1608(a)(4). The Clerk informed counsel for the *Ryan* Plaintiffs that the order is necessary because §1608 does not require dispatch of letters rogatory to the State Department for service.

The *Ryan* Plaintiffs recognize that the FSIA does not require the Clerk to dispatch letters rogatory to the State Department. However, the United States Department of State has previously required letters rogatory to enable it to serve these same Agency and Instrumentality and Government Official Defendants diplomatically.[1] As a result, for the reasons set forth

---

[1] In the first case in the *In Re: Terrorist Attacks On September 11, 2001* MDL to proceed to judgment against Iran, *Havlish, et al. v. bin Laden, et al.*, S.D.N.Y 1:03 Civ. 09848 (GBD)(FM), Mr. William P. Fritzlen, Attorney Advisor, Overseas Citizens Services, Office of Legal Affairs of the U.S. Department of State informed the SDNY Clerk of Court via correspondence that service would only be effectuated on the using letters rogatory under 28 U.S.C. §1608(b)(3)(A). Accordingly, the *Havlish* plaintiffs filed a motion and memorandum of law for issuance of letters rogatory, which this Court granted on April 9, 2013. *See Havlish, supra,* Doc. No. 376; *In Re: 9/11 Terrorist Attacks*, MDL Doc. No. 2714. In the related companion case of *Hoglan, et al. v. Iran, et al.*, S.D.N.Y. 1:11 Civ. 0775 (GBD)(SN), the *Hoglan* plaintiffs filed a motion and memorandum of law for issuance of letters rogatory for service of their initial pleadings on October 25, 2013 (*Hoglan* Doc. No. 63; Memorandum of Law, *Hoglan* Doc. No. 64), which this Court granted on November 27, 2013. *See Hoglan* Doc. No. 66; *In Re: 9/11 Terrorist Attacks*, MDL Doc. No. 2802. The *Hoglan* plaintiffs also filed a motion and memorandum of law for issuance of letters rogatory for diplomatic service of their final judgment on compensatory damages on September 18, 2018 (*Hoglan* Doc. No. 282; Memorandum of Law, Doc. No. 283; *In Re: 9/11 Terrorist Attacks*, MDL Doc. No.s 4184 and 4185) which motion was granted on January 7, 2019 (*Hoglan* Doc. No. 293; *In Re: 9/11 Terrorist Attacks*, MDL Doc. No. 4338). In the related companion case of *Ray, et al. v. Iran, et al.*, S.D.N.Y. 1:19-cv-00012 (GBD)(SN), the *Ray* plaintiffs

below, the *Ryan* Plaintiffs ask the Court to enter an order specifically authorizing the Clerk both to (1) dispatch the service papers in her possession to the State Department using the procedures set forth in §1608(a)(4), and (2) docket the service event on the MDL and *Ryan* dockets.

## V.     LEGAL ARGUMENT

Federal courts in New York have dealt with the difficulty of serving Iran, and its agencies and instrumentalities, in the past.  Due to Iran's refusal to allow service of process, the courts have permitted substituted service after other reasonable methods have been exhausted.  For example, in *New England Merchants Nat. Bank v. Iran Power Generation and Transmission Company, et al.*, 495 F.Supp. 73 (SDNY 1980), plaintiffs therein sued Iran and Iranian agencies and instrumentalities.  The Court granted plaintiffs' motion for substituted service after finding that plaintiffs had not been able to serve the Iranian agencies and instrumentalities under the methods listed in 28 U.S.C. §1608(b).  There, the Court stated:

> I must conclude that a substituted form of service is not precluded under the FSIA and, in fact, is authorized under the Federal Rules of Civil Procedure.
>
> I need not recite the present political situation in Iran.  It is enough to note that the efforts of plaintiffs to serve under the provisions of the FSIA have been fruitless.  The major stumbling block has been that despite the numerous mailings of the pleadings to the defendants in Iran, there have been a paucity of receipts signed by authorized Iranians and returned by the Iranian postal service to the United States as required under the FSIA.

*New England Merchants*, 495 F.Supp. at 78 (ordering service by telex).

The *Ryan* Plaintiffs have exhausted every reasonably available means of service known to them.  Therefore, as a "method of last resort," the *Ryan* Plaintiffs ask this Court for an Order

---

filed a motion and memorandum of law for issuance of letters rogatory for service of their initial pleadings on October 14, 2020 (*Ray* Doc. No. 63; Memorandum of Law, *Ray* Doc. No. 64; *In Re: 9/11 Terrorist Attacks*, MDL Doc. No.s 6499 and 6500), which this Court granted on November 5, 2020.  *See Ray* Doc. No. 233; *In Re: 9/11 Terrorist Attacks*, MDL Doc. No. 6525.

{00962573/}                                                      6

allowing them to serve the Agency and Instrumentality Defendants and the Government Official Defendants through diplomatic channels. The *Ryan* Plaintiffs believe this method to be the best and only viable remaining option and is "intended to serve the same purpose as the substitute service provision":

> … *[A] method of last resort ...* provides that a copy of the pleadings be delivered to the Secretary of State in Washington, D.C., who shall, in turn, transmit the pleadings through diplomatic channels to the foreign state. After the transmission, the Secretary of State is directed to provide the Clerk of the Court with a certified copy of the diplomatic note sent to the foreign state. *At this point service is complete.*
>
> It is important to note that while under all other modes of service upon a foreign state the plaintiffs must receive a signed receipt from an authorized official of the foreign government before service is complete, under this fourth method of service no signed receipt need be filed to complete service. *Compare §1608(c)(1) with §1608(c)(2)*. This is also true with respect to a mode of service fashioned by the Court upon an agency or instrumentality of a foreign state under §1608(b)(3)(C). It would appear, therefore, that this final method of service through diplomatic channels was intended to serve the same purpose as the substitute service provision in the section dealing with the agencies or instrumentalities of a foreign state.

*New England Merchants*, 495 F.Supp. at 79 (*emphases added*).

The essence of valid service under FSIA §1608(b)(3) is that the chosen method must be "reasonably calculated to give actual notice" to the defendants of the pendency and nature of the claims filed against them. 28 USC §1608 (b)(3). The Supreme Court recently explained in *Republic of Sudan v. Harrison, et al.*, 587 U.S. _, 139 S.Ct. 1048 (2019):

> … [FSIA] §1608(b)(3)(B) requires delivery of a service package to the intended recipient "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court." But §1608(b)(3)(B), unlike §1608(a)(3), contains prefatory language saying that service by this method is permissible "if reasonably calculated to give actual notice."

587 U.S. at *9, 139 S.Ct. at 1058.

In creating the FSIA, Congress has "established a flexible framework so that American plaintiffs will have a variety of acceptable methods of service, even when relations with the foreign country in question are strained" and so that foreign defendants will get meaningful notice of the action filed against them. *Harris Corp. v. National Iranian Radio and Television*, 691 F.2d 1344, 1352 n. 16 (11th Cir. 1982).

Importantly, Congress' approach to permitting alternate forms of service for agencies and instrumentalities under §1608(b) is more flexible than it would be for the foreign state or subdivision itself. In the case of agencies and instrumentalities, the purpose of the FSIA service requirement under 28 U.S.C. §1608(b)(3) is to make sure the defendants get notice of the suit. Thus, the standard for service under §1608(b), and especially under 28 U.S.C. §1608(b)(3), is a practical one.

In *Baumel v. Syrian Arab Republic*, 550 F.Supp. 2d 110, 113 (D.D.C. 2008), the court explained, for purposes of service under the FSIA, the distinction between a foreign state and its political subdivisions, on the one hand, and its agencies and instrumentalities, on the other hand.

> "[S]ection 1608(a) 'sets forth the exclusive procedures for service on a foreign state,' but contains no such admonition for section 1608(b). Section 1608(b)(3) allows simply delivery 'if reasonably calculated to give actual notice,' showing that Congress was there concerned with ***substance rather than form***; but the analogous subsection of section 1608(a) says nothing about actual notice."

*Baumel* at 113, quoting *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994) (*citing* H.R. Rep. No. 1487 (1976), at 24, reprinted in 1976 U.S.C.C.A.N. 6604, 6223); *id.* ("The authorities generally hold that section ***1608(b) may be satisfied by technically faulty service that gives adequate notice to the foreign state*** .... [However], strict adherence to the terms of [§]1608(a) is required.")(*emphases added*). *Id.*

{00962573/}                                                        8

Similarly, in *Nikbin v. Islamic Republic of Iran*, 471 F.Supp. 2d 53 (D.D.C. 2007), the court explained "the distinctions between the service provisions for foreign states in §1608(a) and the provisions for agencies and instrumentalities in §1608(b) by stating that they are 'neatly tailored to the differences between foreign states and agencies or instrumentalities. The latter, typically international commercial enterprises, often possess a sophisticated knowledge of the United States' legal system that other organs of foreign governments may lack." *Nikbin* at 66, quoting *Transaero*, 30 F.3d at 154. "Therefore, 'strict adherence to the terms of [§]1608(a) is required' for service against a foreign state itself, even though technically faulty service" or court-approved alternate service under §1608(b) may suffice for agencies or instrumentalities. *Transaero* at 153-54.

In *Baumel v. Syrian Arab Republic*, *supra*, plaintiffs moved the district court for permission alternatively to serve Syrian defendant agencies and instrumentalities via FSIA §1608(a)(4), which is usually reserved for foreign states and political subdivision defendants. 550 F.Supp.2d at 112. The *Baumel* plaintiffs requested "a declaration that any or all of the [d]efendants be treated as the foreign state of Syria and are therefore subject to service by the Secretary of State of the United States pursuant to 28 USC §1608(a)[(4)]." *Id.* at 112-3. The district court approved the motion and allowed service of the defendant agencies and instrumentalities via the State Department pursuant to §1608(a)(4). *Id.* at 115. *See also*, *Harris v. Nat. Iran Radio & TV, supra,* at 1352-53.

Furthermore, in the related *In Re: Terrorist Attacks On September 11, 2001* MDL cases of *Havlish, et al. v. bin Laden, supra*, and *Hoglan, et al. v. Iran*, *supra*, the SDNY Clerk of Court docketed all the mailings to the agency and/or instrumentality defendants and then sent all mailings for the agency and instrumentality defendants to the U.S. State Department for

diplomatic service in conformity with the FSIA's procedures for foreign state or political subdivisions of foreign state defendants under §1608(a)(4). *See Havlish* Doc. Nos. 341-54, dated January 13 and 14, 2013; *Havlish* Doc. Nos. 378-85, dated April 25, 2013 and May 8, 2013; un-numbered *Havlish* docket entries dated May 8, 2013 and May 22, 2013; *see also Hoglan* Doc. Nos. 67-79, dated November 27, 2013 and December 13, 2013; un-numbered *Hoglan* Doc. entries dated December 13, 2013; *Hoglan* Doc. Nos. 294-302, dated January 24 and 25, 2019, and *Hoglan* Doc. Nos. 305-12, dated May 8, 2019.

Finally, authorizing alternative service using the procedures set forth in §1608(a)(4) is also appropriate because, although treated differently for purposes of service under §1608, the FSIA defines "agencies and instrumentalities" as "foreign states" for all other purposes. 28 U.S.C. §1603(a). In fact, by definition, an agency and instrumentality is a legal entity separate from the foreign state but either "an organ of a foreign state or political subdivision thereof" or an entity whose "shares or other ownership interest is majority owned by a foreign state or political subdivision thereof." 28 U.S.C. §1603(b)(2). Consequently, serving the Agency and Instrumentality Defendants through the Iranian Minister of Foreign Affairs pursuant to §1608(a)(4) is reasonably calculated to give the "owner" of the Agency and Instrumentality Defendants actual notice of the *Ryan* Plaintiffs' claims.

### VI. SERVICE OF FINAL JUDGMENT DOCUMENTS ON THE *RYAN* AGENCY AND INSTRUMENTALITY DEFENDANTS AS SET FORTH IN 28 U.S.C. §1608(a)(4)

Under the FSIA, should they prevail in this case, the *Ryan* Plaintiffs will eventually be required to serve their final judgment documents using the same methodology as required to serve their initial pleading materials. *See* §1608(e) and §1610(c). The *Ryan* Plaintiffs expect the Agency and Instrumentality Defendants and the Government Official Defendants to refuse

eventual service of their final judgment documents, just as they are refusing service of the complaint documents (as they did in *Havlish* and *Hoglan* as well).

Therefore, the *Ryan* Plaintiffs respectfully request to be included in this Court's Order a further directive to the SDNY Clerk authorizing docketing and dispatching of service to the U.S. State Department of any final judgment documents for diplomatic service on the Agency and Instrumentality Defendants and the Government Official Defendants using the procedures set forth in 28 U.S.C. §1608(a)(4), after the *Ryan* Plaintiffs have attempted service by mail, return receipt requested, and upon the Plaintiffs' appropriate application to the Clerk, citing such Order.

### VII. ALTERNATIVE SERVICE ON THE AGENCY AND INSTRUMENTALITY DEFENDANTS AND THE GOVERNMENT OFFICIAL DEFENDANTS WILL SERVE TWO IMPORTANT PURPOSES

Authorizing alternative service on the Agency and Instrumentality and Government Official Defendants using the procedures in §1608(a)(4) will serve two important purposes. First, authorizing the use of §1608(a)(4) will provide a robust and meaningful way to prove service of process through diplomatic channels. The dispatch of service by the Clerk will be docketed as part of the record in the case. The steps taken to effect service will then be meticulously recorded in the diplomatic notes that will later be filed by the State Department. A description of every step in the process will be on the record and available to prove that service was accomplished when the *Ryan* Plaintiffs attempt to enforce their judgments both in the United States and in foreign countries.

Second, some foreign countries seem to exhibit a preference for serving foreign governments, their political subdivisions, and agencies and instrumentalities through diplomatic channels. Therefore, authorizing service on the Agency and Instrumentality Defendants and the Government Official Defendants using the procedures in §1608(a)(4) will not only provide the *Ryan* Plaintiffs with the means to prove service but will also satisfy service requirements

imposed by some foreign countries, enabling the *Ryan* Plaintiffs to domesticate their judgments internationally more readily.

## VIII.  CONCLUSION

For the reasons stated above, the *Ryan* Plaintiffs respectfully request that this Honorable Court enter the attached proposed Order GRANTING the *Ryan* Plaintiffs' motion to direct the Clerk to dispatch pleadings and, as well, any final judgment documents, to the United States State Department for diplomatic service on the Agency and Instrumentality Defendants and the Government Official Defendants using the procedures set forth in 28 U.S.C. §1608(a)(4), including docketing the service event, and for the United States Department of State to serve said materials pursuant to 28 U.S.C. §1608(b)(3)(c).

          Respectfully submitted,

Date:  11/18/2021            */s      Timothy B. Fleming*
          Timothy B. Fleming (DC Bar No. 351114)
          WIGGINS CHILDS PANTAZIS
          FISHER GOLDFARB PLLC
          1211 Connecticut Avenue, N.W.
          Suite 420
          Washington, D.C. 20036
          (202) 467-4489

          *Attorney for Plaintiffs*