USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/19/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

    TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001

-----------------------------------------------------------------X

03-MD-1570 (GBD)(SN)

ORDER

**SARAH NETBURN, United States Magistrate Judge:**

    This Order addresses three discovery disputes related to the Court's investigation of the breach of the protective orders. On November 1 and 2, 2021, the Court held an evidentiary hearing to investigate that breach. The parties are directed to file proposed findings of fact and conclusions of law by November 24, 2021. ECF No. 7317.

    The Kingdom of Saudi Arabia filed motions: (1) for discovery to investigate a possible breach of the deposition protocol, ECF No. 7322, (2) seeking leave to admit exhibits, ECF No. 7327, and (3) for discovery into Kreindler & Kreindler's contacts with attorney Elizabeth Crotty. ECF No. 7328. In brief, the motions for discovery into the potential breach of the deposition protocol and leave to file exhibits are GRANTED in part. The motion for discovery into communications between attorney Elizabeth Crotty and Kreindler & Kreindler is DENIED.

**I.    Breach of the Deposition Protocol**

    Saudi Arabia's request for discovery into the breach of the deposition protocol is granted in part. ECF No. 7322. It seeks to determine if Kreindler & Kreindler violated the deposition protocol and protective orders by allowing individuals to attend confidential depositions without their attendance being noted on the record. Id. at 1. Saudi Arabia also suggests that these attendees may not have agreed to be bound by the protective orders. Id. Accordingly, it asks that Kreindler & Kreindler provide sworn declarations "identifying all individuals who attended each

confidential deposition in this case but who were not listed on the appearance sheets," along with proof that they agreed to be bound by the protective orders. Id. at 3. Kreindler & Kreindler objects to this discovery as baseless and an attempt to obtain work product. ECF No. 7330 at 1.

The Court has already noted that "what is relevant . . . includes whether or not the systems that were in place by [Kreindler & Kreindler] at the outset were sufficient to protect this [confidential deposition] material." Hearing Tr. at 248: 15–19.[1] Additionally, Kreindler & Kreindler's adherence to the protective orders and the deposition protocols, particularly at the Musaed Al Jarrah deposition, is relevant to the credibility of assertions that the firm emphasized the importance of complying with the protective orders and had systems in place to do so. See, e.g., Hearing Tr. at 303–04, 484. The Court also already determined that whether someone attended the Al Jarrah deposition but was not listed on the record is relevant to this inquiry. Id. at 328:11–12.

The evidentiary hearing raises questions whether Kreindler & Kreindler followed these protocols. Attorney Megan Benett—who deposed Al Jarrah—testified that during a deposition break she met a former FBI agent (the "FBI Agent") in a corridor. That FBI Agent gave her information about Al Jarrah. Id. at 328:21–329:1. She also testified that she "wouldn't be surprised" if this individual had attended the deposition. Id. at 329:9. The FBI Agent is not listed in the record, id. at 330:1, and their ability to proffer new relevant information as the Al Jarrah deposition was occurring, id. at 15–21, suggests that they might have attended.

The suggestion that this information is work product is unavailing. The deposition protocol states that "[a]ll persons in attendance (either in person or remotely) must be noted on the deposition record." ECF No. 6002-1 at ¶ 31. Thus, the material that Kreindler & Kreindler

---

[1] The hearing transcripts for days one and two of the evidentiary hearing are at ECF Nos. 7347 and 7349.

claims is work product would have been disclosed as a matter of course if the firm had adhered to the protocol. There is no basis to claim that such a required disclosure is work product and Kreindler & Kreindler offers no authority to support the assertion.

Saudi Arabia's request for the names of *all* individuals attending *all* confidential depositions, though, is excessive. This is an investigation into the breach of the protective orders revealed by the Al Jarrah deposition transcript leak. Evidence of a protocol breach by a particular consultant directly tied to the Al Jarrah deposition would be sufficient to demonstrate the issues with Kreindler & Kreindler's management of the deposition materials. Anything beyond that is "unreasonably cumulative or duplicative . . . ." Fed. R. Civ. P. 26.

Accordingly by November 22, 2021, Kreindler & Kreindler shall file a declaration from the FBI Agent referenced in Ms. Benett's testimony at ECF No. 328:23–25. That declaration shall state whether the FBI Agent attended the Al Jarrah deposition. It shall also state if the FBI Agent signed materials agreeing to be bound by the protective orders and provide any materials demonstrating that that they agreed to be so bound. The FBI Agent's name may be redacted from this filing only if the FBI Agent did not attend any portion of the Al Jarrah deposition.

## II.   Leave to File Exhibits

Saudi Arabia's motion for leave to file exhibits is granted except for KSAX-0023, which is inadmissible hearsay. It seeks to move 48 documents into evidence. Forty-three of these were used at the hearing and five were not. ECF No. 7327 at 1. Saudi Arabia and John Fawcett agree to admit all exhibits and Kreindler & Kreindler agrees on 34. Id., see also ECF No. 7363.

There appears to be some confusion on which documents are subject to the remaining disagreement. Saudi Arabia initially reported that the parties disagreed on the admission of 14 documents. Id. Kreindler & Kreindler, however, state that they contest only 11 or 12 exhibits

depending on if an exhibit and its corrected version count as a single item. ECF No. 7337 at 1 n.1. Saudi Arabia's initial filing thus identifies two or three more challenged exhibits than Kreindler & Kreindler actually challenges. Kreindler & Kreindler makes no argument on one of these: KSAX-0031. In the absence of any objection, it is admitted.

For the second exhibit, Kreindler & Kreindler states that it opposes admitting KSAX-0012, a text chain, and its corrected version, KSAX-0151. Id. The corrected version of KSAX-0012, however, is KSAX-0152. ECF No. 7356 at 1, n.*, see also ECF No. 7327-3, ECF No. 7327-4. Kreindler & Kreindler's arguments on KSAX-0012, moreover, are inapposite to KSAX-0151. Accordingly, the Court interprets Kreindler & Kreindler to be opposing KSAX-0152. Absent objection, KSAX-0151 is thus admitted as well.

The parties agree that the remaining objections are to KSAX-0012/KSAX-0152, KSAX-0018, KSAX-0023, KSAX-0038, KSAX-0067, KSAX-0068, KSAX-0079, KSAX-0150, KSAX-0101, KSAX-0136, and KSAX-0139.

All but one of Kreindler & Kreindler's objections focus exclusively on the authenticity of these exhibits. It does not suggest or supply any evidence that the documents are not authentic. It merely argues that they have not been authenticated.

Authentication requires that a "proponent . . . produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901. "The bar for authentication of evidence is not particularly high," United States v. Gagliardi, 506 F.3d 140, 151 (2d Cir. 2007), and "[a] trial court has broad discretion to determine whether a piece of evidence has been properly authenticated . . . ." United States v. Tropeano, 252 F.3d 653, 661 (2d Cir. 2001).

4

"Generally, a document is properly authenticated if a reasonable juror could find in favor of authenticity." Gagliardi, 506 F.3d at 151. In making this determination, "a document may be authenticated based on its 'appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances . . . .'" Lebewohl v. Heart Attack Grill LLC, 890 F. Supp. 2d 278, 298 (S.D.N.Y. 2012) (citing Fed. R. Evid. 901(b)(4)). Additionally, "circumstantial evidence may establish authenticity," Lebewohl, 890 F. Supp. 2d at 298. Thus, for example, in Com. Data Servers, Inc. v. Int'l Bus. Machines Corp., a declaration from counsel that documents had been received in discovery, combined with circumstantial factors and a lack of objection to authenticity by the party producing the materials, was sufficient. 262 F. Supp. 2d 50, 59 (S.D.N.Y. 2003).

Measured against this standard, Kreindler & Kreindler's authenticity objections are meritless. KSAX-0101 was produced by Kreindler & Kreindler's counsel. ECF No. 7327-1 at ¶ 11. It also bears a Kreindler & Kreindler Bates stamp. Kreindler & Kreindler's counsel does not contend that the document that she herself produced is not authentic, merely that it was not authenticated. ECF No. 7337 at 8.

Faced with similar circumstances, the court in Faulkner v. Arista Recs. LLC noted that "[g]iven that Plaintiffs produced the documents and are thus in the best position to know whether they are indeed authentic (as they appear to be), . . . [a motion to strike those exhibits] teeters on the edge of sanctionable." 797 F. Supp. 2d 299, 307 (S.D.N.Y. 2011); see also Roc Nation LLC v. HCC Int'l Ins. Co., PLC, No. 19-cv-554 (PAE), 2021 WL 827957 n. 5 (S.D.N.Y. Mar. 4, 2021) ("As to authenticity, Roc Nation itself produced this document, which bears a Roc Nation bates stamp and does not suggest any reason to doubt its authenticity. In such circumstances, Roc Nation 'cannot credibly question' its authenticity . . . .") (quoting Tr. of Local 8A-28A Welfare

Fund v. Am. Grp. Adm'rs., No. 14-cv-1088 (RRM) (PK), 2017 WL 3700899, at *2 (E.D.N.Y. Aug. 25, 2017)).

Objections to KSAX-0067 and KSAX-0068 are similarly misplaced. While these were not produced by Kreindler & Kreindler, KSAX-0067 is an email sent to Kreindler & Kreindler, its counsel, other members of the Plaintiffs' Executive Committees, plus Mr. Fawcett's counsel. ECF No. 7327-1 at ¶ 9. KSAX-0068, which is attached to that email, was a screenshot of Saudi Arabia's counsel's computer, and he describes the process of that screenshot's creation. Id. The screenshot, moreover, is of a Dropbox account that lists Mr. Fawcett as its owner. Mr. Fawcett "who is clearly in the position to know if the exhibits are not authentic copies," Com. Data Servers, Inc., 262 F. Supp. 2d at 59, has consented to the admission of the material. Courts presented with a similar combination of a supporting declaration and a lack of objections to authenticity (not authentication) by the party best placed to know have been found sufficient grounds to authenticate documents. See id. The same result holds here.

A similar analysis eliminates Kreindler & Kreindler's objections to six further documents: KSAX-0012, KSAX-0023, KSAX-0136, KSAX-0139, KSAX-0150, and KSAX-0152. While these documents were not produced by Kreindler & Kreindler, they were produced or sent by Mr. Fawcett. ECF No. 7327-1 at ¶¶ 4, 6, 12, 13, 14, 16. Counsel for Saudi Arabia has produced a declaration attesting to the authenticity of these documents. Id.  Mr. Fawcett has consented to their admission despite again presumably being well placed to know what material he produced and what letters his counsel sent. ECF No. 7327 at 1, 4. These documents bear other indicia of authenticity as well: all but KSAX-0023 (which was written by Mr. Fawcett's attorney) bear Mr. Fawcett's Bates stamp, suggesting they were produced by him and that he could contest their authenticity. The combination of a declaration by the attorney seeking

6

admission, evidence of a party's Bates stamp, and the consent to admit the material by the producing party is more than adequate to meet the "not particularly high" bar for authenticity. Gagliardi, 506 F.3d at 151.

KSAX-0023, however, is non-admissible hearsay. Saudi Arabia states that it seeks to admit KSAX-0023 "for impeachment of John Hartney . . . ." ECF No. 7327 at 3. Specifically, it seeks to show that Kreindler & Kreindler's investigation failed to explore Mr. Fawcett's use of a cloud storage program called "Tresorit," which is mentioned in KSAX-0023. Saudi Arabia's questions, though, show that the point of KSAX-0023 was to demonstrate that Mr. Fawcett had used the Tresorit service and that Kreindler & Kreindler's investigation failed to investigate that platform. See, e.g., Hearing Tr. at 155:8 ( "And you had no idea that Mr. Fawcett was using [Tresorit]?")

The point of KSAX-0023 is thus not to show that Mr. Hartney is an untrustworthy witness. Quite the opposite: Saudi Arabia's point is that his testimony is accurate and should be credited to show the inadequacy of Kreindler & Kreindler's investigation because it failed to uncover the Tresorit use. ECF No. 7356 at 2 ("In assessing John Hartney's credibility, the Court may give what weight it finds appropriate to the fact that Mr. Fawcett's counsel identified a cloud-based storage that Mr. Fawcett used but of which Mr. Hartney had never heard.") KSAX-0023 is thus an out of court statement offered for the truth and so it is inadmissible hearsay. Fed. R. Evid. 801(c), 802.

That leaves KSAX-0018, KSAX-0038, and KSAX-0079. None of Kreindler & Kreindler's objections to these exhibits has merit. KSAX-0018 is a transcript of a YouTube video recording of speech by Jim Kreindler at Dartmouth University that was created when a paralegal copied and pasted the transcript from the website, then saved it as a Word document,

which they converted into a PDF. ECF No. 7327-1 at ¶ 5. The link included in the declaration is readily viewable and can be compared both to the words of the transcript and the accompanying timestamp. Jim Kreindler was examined about key moments in the underlying video and did not challenge that the video accurately reflected a speech he gave. Hearing Tr. at 47–50. The Court has checked that link and confirmed that, as of this opinion, that video remains on YouTube. See Lebewohl, 890 F. Supp. 2d at 299 (finding that a printout of a website was more likely to be authentic where it "remains accessible on that public website as of the writing of this opinion, as the Court has verified.") None of the cases that Kreindler & Kreindler cites undermines this analysis.[2]

Finally, KSAX-0038 and KSAX-0079 are copies of web pages. ECF No. 7327-1 at ¶ 8, 10. Saudi Arabia introduced these documents during the cross-examination of Kreindler & Kreindler attorney Andrew Maloney. They were used to explore his awareness of various publicly available materials that might have been relevant to his investigation of whether anyone at Kreindler & Kreindler breached the protective orders. Hearing Tr. at 203–205. Saudi Arabia has provided a declaration identifying the web links for these two pages, both of which the Court has verified to be functional and which show the websites reflected in the exhibits. The printouts themselves include a date of printing and an internet domain address.[3]

---

[2] Briefly, Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC, involved the translation of an unknown and unidentified Russian language audio source. No. 16-cv-1318 (GBD)(BCM), 2017 WL 5067500, at *5 n.9 (S.D.N.Y. Sept. 27, 2017). United States v. Rommy involved the transcription of a non-public wiretap carried out by foreign law enforcement, which in any case was found to be authentic. 506 F.3d 108, 138 (2d Cir. 2007). Neither case is remotely applicable to the circumstances before the Court.

[3] The address for KSAX-0079 is partially obscured but the visible portion aligns with the functional link in the declaration. ECF No. 7327-1 at ¶ 10.

"Evidence may be authenticated in many ways, and as with any piece of evidence whose authenticity is in question, the 'type and quantum' of evidence necessary to authenticate a web page will always depend on context." United States v. Vayner, 769 F.3d 125, 133 (2d Cir. 2014) (quoting United States v. Sliker, 751 F.2d 477, 488 (2d Cir.1984)). Where the goal is simply to show that a particular web page exists online a declaration supplying a printout from that website, a functioning website address, and printout date for an exhibit may be sufficient. See, e.g., Lebewohl, 890 F. Supp. 2d at 299 (website exhibits have sufficient indicia of authenticity where "they are direct printouts from . . . [the web page that] contain Internet domain addresses as well as printout dates. Both articles remain accessible on that public website as of the writing of this opinion, as the Court has verified.") The materials Saudi Arabia has supplied are thus sufficient to authenticate KSAX-0038 and KSAX-0079 as existing public facing web pages, the only purpose for which their admission is sought.

The cases Kreindler & Kreindler cite involve complicating factors not present here. Novak v. Tucows, Inc., No. 06-cv-1909 (JFB)(ARL), 2007 WL 922306, at *5 (E.D.N.Y. Mar. 26, 2007), aff'd, 330 F. App'x 204 (2d Cir. 2009), and Disney Enterprises, Inc. v. Sarelli, 322 F. Supp. 3d 413, 443 (S.D.N.Y. 2018), both primarily involved printouts not of the original website, but of records of those websites held by an internet archive. In Disney Enterprises, the screenshots were also of poor quality and supported by only a "boilerplate" declaration. 322 F. Supp. 3d at 442.

The retrieval of webpages from an internet archive presents different authentication challenges from retrieval of webpages directly from the source. For webpages retrieved from archives, a declaration from the archive employee may be necessary. Where the website has been accessed directly, a declaration from the person who visited the website and captured the image

is sufficient. See United States v. Gasperini, No. 16-cr-441 (NGG), 2017 WL 3140366, at *6–7 (E.D.N.Y. July 21, 2017), aff'd, 729 F. App'x 112 (2d Cir. 2018) (contrasting the nature of evidence necessary to authenticate archived internet pages versus directly accessed pages).

Vayner is similarly inapposite. 769 F.3d at 131. There, the government sought to prove not merely that a particular web page existed at a given address, but that it was the social media profile of a person who actually created the profile. Authentication was thus inappropriate because the government failed to prove not only that a website existed, but that it was created by a specific person. Id. Saudi Arabia, on the only hand, seeks only to prove that these websites are publicly available.

Accordingly, the Court finds that all the exhibits are authentic and all but KSAX-0023 may be moved into evidence. All the exhibits the parties have agreed on may also be moved into evidence.

## III. Discovery as to Elizabeth Crotty

Saudi Arabia's request for discovery into communications between Ms. Crotty and Kreindler & Kreindler is denied as unnecessarily cumulative. Saudi Arabi suggests that these would be "relevant to whether Kreindler & Kreindler knew of Fawcett's actions, was willfully blind to those actions, or acted to cover them up." ECF No. 7328 at 3. In support, it notes that the existing evidence of calls between Mr. Fawcett and Ms. Crotty "gives rise to a strong circumstantial inference that on July 22, 2021, Kreindler discussed with Fawcett his breach of the protective orders in this case and Fawcett's outreach to Crotty concerning this breach." Id.

A "court must limit the frequency or extent of discovery . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative . . . ." Fed. R. Civ. P. 26 (b)(2)(C)(i). After hundreds of pages of production and a two-day hearing, there must be an end to discovery

in this serious, but ultimately collateral proceeding. With this last request, the parties have reached that point.

Over the course of the two-day hearing, Saudi Arabia examined Mr. Fawcett and other Kreindler personnel about their contacts and relationship with Ms. Crotty. See, e.g., Hearing Tr. at 84:20–86:7, 268:7–269:10, 344:16–346:8, 447:5–451:23, 464:4–465:15, 480:4–482:9. This is just the material directly relevant to Ms. Crotty. Saudi Arabia had numerous other opportunities to seek testimony and discovery on whether and to what degree Kreindler & Kreindler countenanced Mr. Fawcett's breach.

It is certainly possible that further discovery of Kreindler & Kreindler's communications with her might yield some additional material that might help develop Saudi Arabia's theory of the breach. But Ms. Crotty worked at Kreindler & Kreindler, see, e.g., ECF No. 85:8–9, and remained in personal contact with staff there. See, e.g., ECF No. 345:10–19. Thus, authorizing further discovery into the firm's contacts with her would be unlikely to yield irrefragable evidence of Kreindler & Kreindler complicity. More likely, it would provide at best circumstantial evidence of other contacts between her and the firm that duplicates existing evidence.

## CONCLUSION

Saudi Arabia's motion for discovery into the potential breach of the deposition protocol is GRANTED in part. Kreindler & Kreindler shall file the declaration required by the Court in relation to that motion by November 22, 2021. Saudi Arabia's motion for leave to file exhibits is GRANTED in part. Its motion for discovery into communications between attorney Elizabeth

Crotty and Kreindler & Kreindler is DENIED. The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 7327 and 7328.

**SO ORDERED.**

DATED:  New York, New York
        November 19, 2021

SARAH NETBURN
United States Magistrate Judge