UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
                                                           )
                                                           )   No. 03 MDL 1570 (GBD/SN)
                                                           )
In re Terrorist Attacks on September 11, 2001              )   ECF Case
                                                           )
                                                           )   **ORAL ARGUMENT REQUESTED**
                                                           )
                                                           )
                                                           )
                                                           )
                                                           )
---------------------------------------------------------- x

This document relates to:

*Federal Insurance Co., et al. v. Al Qaida, et al.*, 03-cv-06978
*Thomas E. Burnett, Sr., at al. v. Al Baraka Inv. & Dev. Corp., et al.*, 03-cv-09849
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 04-cv-01923
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, 04-cv-05970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, 04-cv-07065
*Euro Brokers Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 04-cv-07279

**RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF
DEFENDANT DUBAI ISLAMIC BANK'S
MOTION FOR SUMMARY JUDGMENT
AND RENEWED MOTION FOR DISMISSAL
(LIMITED TO PERSONAL JURISDICTION)**

In accordance with Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1, Defendant Dubai Islamic Bank ("DIB" or "the Bank") submits the following statement of material facts, as to all of which there is no genuine issue to be tried:

**Bank Operations**

1. DIB is a publicly traded banking company organized under the laws of the United Arab Emirates ("UAE"). (Ex. 1, Sharif Decl. ¶12.)

2. DIB has always been headquartered in Dubai, UAE, and has always maintained its principal place of business there. (Ex. 1, Sharif Decl. ¶12.)

3. The corporate entity DIB has always conducted all its business from Dubai or its other Middle Eastern offices. (Ex. 1, Sharif Decl. ¶13.)

4. DIB has never been qualified to do business in the United States or sought such qualification. (Ex. 1, Sharif Decl. ¶14.)

5. DIB has never had offices or affiliates in the United States or provided services there. (Ex. 1, Sharif Decl. ¶15.)

6. Apart from holding correspondent banking accounts, neither DIB nor any of its subsidiaries and affiliates have conducted any banking business in the United States. (Ex. 1, Sharif Decl. ¶¶14–16.)

7. DIB processed 7,137,666 transactions in 1999; 8,343,935 transactions in 2000; and 10,048,210 transaction in 2001. DIB had at least 314,100 local currency customer accounts in 1999; 371,686 local currency customer accounts in 2000; and 421,184 local currency customer accounts in 2001. DIB had 203,821 different customers in 1999; 216,547 different customers in 2000; and 247,207 different customers in 2001. (Ex. 4, Dharsey Decl. ¶¶10-12.)

**Osama bin Laden**

8.  Osama bin Laden has never been an accountholder at Dubai Islamic Bank.  (Ex. 1, Sharif Decl. ¶¶18–23, 40 and Exhibit B thereto at pp. 15-41 (certified English translation of Arabic text available at Ex. 3); Ex. 6, Fine Dep.)

9.  Osama bin Laden has never transferred funds using Dubai Islamic Bank.  (Ex. 6, Fine Dep.)

10.  For example, before September 11, 2001 ("9/11"), DIB searched its records for accounts and wire transfers for Osama bin Laden (including spelling variations), and found no accounts or wire transfers for bin Laden.  (Ex. 1, Sharif Decl. ¶¶18–23; Ex. 6, Fine Dep. Tr. 25:18–21, 26:1-27:24, 102:17–103:12, 103:15-21, 110:2-4 113:6–9, 121: 2-7.)

11.  Further, after 9/11, DIB again searched its records for accounts for Osama bin Laden, including all name variations provided by the US Treasury Department's Office of Foreign Assets Control ("OFAC") in September and October 2001, and found no accounts for bin Laden.  (Ex. 1, Sharif Decl. ¶40 and Exhibit B thereto at pp. 15-41 (certified English translation of Arabic text available at Ex. 3).)

**Mustafa Ahmed al-Hisawi**

12.  Mustafa Ahmed al-Hisawi has never been an accountholder at Dubai Islamic Bank.  (*E.g.*, Ex. 4, Dharsey Decl. ¶14.)

13.  For example, DIB has searched its records and found no accounts for Mustafa Ahmed al-Hisawi, including any of seventeen variations provided by Plaintiffs.  (Ex. 4, Dharsey Decl. ¶14.)

**Response to 1999 Article**

14.  In response to a July 8, 1999 New York Times article (hereinafter, "the July 1999 article") reporting a DIB relationship with bin Laden, Mr. Alan Fine (DIB's outside US counsel at the time) contacted the US State Department in July 1999, seeking additional information about any

suspected relationship with Osama bin Laden and offering DIB's cooperation. (Ex. 1, Sharif Decl. ¶19; Ex. 6, Fine Dep.)

15. In response to Mr. Alan Fine's conversation with the US State Department in July 1999, the US government provided no names, dates, or account numbers to search, and no one from the US government ever followed up with Mr. Fine, despite his request to "please call" with any information. (Ex. 6, Fine Dep.)

16. After concluding its investigation in response to the July 1999 article, DIB sought a retraction from the newspaper that published the July 8, 1999 story. (Ex. 1, Sharif Decl. ¶¶24–26; Ex. 6, Fine Dep. and Exhibit 7 thereto at pp. 6-7 (retraction request).)

**Oversight of DIB**

17. The UAE Central Bank did not have concerns about DIB and money laundering or terrorist financing in 1999. (Ex. 1, Sharif Decl. ¶¶4–5, 9–11.)

18. The UAE Central Bank prior to 9/11 never sanctioned or issued a citation against DIB due to money-laundering or terrorist-financing concerns. (Ex. 1, Sharif Decl. ¶30.)

19. The Dubai government and UAE Central Bank closely supervised DIB in 1998 and 1999, following the discovery of a fraud against DIB in 1998. (Ex. 1, Sharif Decl. ¶¶19; Ex. 6, Fine Dep.)

20. The Dubai government intervened in DIB following the discovery of a fraud against DIB in 1998, including approving the hiring of DIB's investigator (whose mandate was to investigate the fraud) and installing new management to oversee DIB's operations. (Ex. 1, Sharif Decl. ¶17; Ex. 8, Ansari Decl. ¶25; Ex. 6, Fine Dep.)

21. Following the discovery of a fraud against DIB in 1998, the UAE Central Bank audited DIB daily for months, and DIB employed outside auditors to diagnose what "needed to be cleaned up" to prevent future frauds.  (Ex. 6, Fine Dep.)

22. The fraud against DIB discovered in 1998 had nothing to do with al Qaeda or terrorism. (Ex. 6, Fine Dep.)

**Counter-Terrorism Financing**

23. In the fall of 1999, DIB distributed two sanctions lists from OFAC to each section of the Bank where accounts could be opened or transactions could be conducted to ensure that DIB did not conduct any business with any party named on those lists, one of which was al Qaeda.  (Ex. 8, Ansari Decl. ¶¶15, 18–19 and Exs. A and B thereto at pgs. 8-20 (certified translation of Arabic text available at Exs. 9, 10.)

24. DIB's branches kept copies of the two sanctions lists from OFAC distributed in the fall of 1999 to ensure no accounts were opened for any of the named parties, and DIB required employees to check those lists when opening accounts and conducting transactions.  (Ex. 8, Ansari Decl. ¶20.)

25. DIB's banking practices before 9/11 were consistent with applicable law and industry standards.  (Ex. 12a, Maaty Decl. ¶¶6–24, 26, 29; Ex. 14a, Maazmi Decl. ¶¶5–10.)

26. For example, DIB's internal audit programs before 9/11 incorporated UAE Central Bank guidance, and DIB always used its best efforts to comply with the Central Bank's instructions. (Ex. 12a, Maaty Decl. ¶¶6-9.)

27. DIB's auditors reviewed DIB branches and departments to ensure that they followed Central Bank circulars—including the Anti-Money Laundering Circular 24/2000.  As part of implementing that circular, which issued in late 2000, DIB in early 2001 appointed an Anti-Money-Laundering Compliance Officer, who developed policies and procedures, prepared reports,

provided training, and communicated with the Central Bank. (Ex. 12a, Maaty Decl. ¶¶6-12; Ex. 14a, Maazmi Decl. ¶¶5-10.)

28. DIB accounts could not be opened for any person on the UAE Central Bank's blacklist, other sanctions lists distributed to DIB's branches, or DIB's own blacklist, and DIB would not have opened an account for such a person. (Ex. 12a, Maaty Decl. ¶¶14–24, 26.)

29. DIB would promptly terminate any customer relationship and report the customer to the UAE government if DIB believed the customer was funding or otherwise involved in terrorist activity. (Ex. 1, Sharif Decl. ¶36; Ex. 14a, Maazmi Decl. ¶32, Ex. 12a, Maaty Decl. ¶28; Ex. 8, Ansari Decl. ¶22.)

30. DIB never intended to aid a terrorist attack. (Ex. 1, Sharif Decl. ¶35; Ex. 8, Ansari Decl. ¶21; Ex. 12a, Maaty Decl. ¶27; Ex. 14a, Maazmi Decl. ¶31; Ex. 4, Dharsey ¶7.; Ex. 5, Hassan Dep.)

31. DIB has never intended to support al Qaeda. (Ex. 1, Sharif Decl. ¶¶31–33; Ex. 8, Ansari Decl. ¶¶9–10; Ex. 12a, Maaty Decl. ¶¶31-32; Ex. 14a, Maazmi Decl. ¶29–30; Ex. 4, Dharsey ¶7; Ex. 5, Hassan Dep.)

32. DIB never provided financial services to a customer that it knew had links to al Qaeda while DIB was providing services. (Ex. 1, Sharif Decl. ¶35; Ex. 8, Ansari Decl. ¶21; Ex. 12a, Maaty Decl. ¶27; Ex. 14a, Maazmi Decl. ¶31; Ex. 4, Dharsey ¶7.)

**Ten Accountholders**[1]

33. Before 9/11, all ten accountholders of interest were provided only financial services available to all customers in the ordinary course of business. (Ex. 4, Dharsey ¶16.)

---

[1] Ali Abdul Aziz Ali, Fayez Rashid Ahmed Hassan Al-Qadi, Ali Saleh Mohammad Kahla Al-Marri, Seedi Al Madani Al-Ghazi Mustafa Al Tayyib, Mamdoh Mahmoud Salim Ahmed, Ahmed Ali Jumale, Barakaat Bank of Somalia, Al Baraka Exchange LLC, Khalid Amer Salim Ballayth, and International Islamic Relief Organization (referred to, collectively, as the ten accountholders throughout these related filings).

34. None of the ten accountholders were, before 9/11, "designated by that name as the subject of sanctions administered by the U.S. Office of Foreign Assets Control or the United Nations Security Council." (Ex. 19, Pls.' Resps. and Objs. to Def. DIB's First Set of Reqs. for Admis. Nos. 1–10 (Mar. 23, 2020).)

35. Plaintiffs have "insufficient" information "to admit or deny that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any involvement in Al Qaeda by [any of the ten accountholders]." (Ex. 21, Pls.' Resps. and Objs. to Def. DIB's Third Set of Reqs. for Admis. Nos. 1–10 (Aug. 5, 2021).)

36. DIB did not have any knowledge or awareness, prior to the September 11 Attacks, of any involvement in Al Qaeda by any of the ten accountholders. (Ex. 21, Pls.' Resps. and Objs. to Def. DIB's Third Set of Reqs. for Admis. Nos. 1–10 (Aug. 5, 2021); Ex. 8, Ansari Decl. ¶¶9–10, 21–22; Ex. 12a, Maaty Decl. ¶¶27–28, 31–32; Ex. 1, Sharif Decl. ¶¶31–33, 35–36; Ex. 14a, Maazmi Decl. ¶¶29–32; Ex. 4, Dharsey ¶7; Ex. 5, Hassan Dep.; Ex. 6, Fine Dep.)

37. Plaintiffs have "insufficient" information "to admit or deny that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any use of" any of the ten accountholders' DIB accounts "by Al Qaeda" or "for Al Qaeda's purposes." (Ex. 21, Pls.' Resps. and Objs. to Def. DIB's Third Set of Reqs. for Admis. Nos. 11–20 (Aug. 5, 2021).)

38. DIB did not have any knowledge or awareness, prior to the September 11 Attacks, of any use of any of the ten accountholders' DIB accounts by al Qaeda or for al Qaeda's purposes. (Ex. 21, Pls.' Resps. and Objs. to Def. DIB's Third Set of Reqs. for Admis. Nos. 11–20 (Aug. 5, 2021); Ex. 8, Ansari Decl. ¶¶9–10, 21–22; Ex. 812a, Maaty Decl. ¶¶27–28, 31–32; Ex. 1, Sharif Decl. ¶¶31–33, 35–36; Ex. 14a, Maazmi Decl. ¶¶29–32; Ex. 4, Dharsey ¶7; Ex. 5, Hassan Dep.)

39. Plaintiffs have no evidence "that money was withdrawn from Ali Abdul Aziz Ali's DIB account to support the 9/11 hijackers or other 9/11 plot principles [sic] in carrying out the 9/11 operation nor evidence that Ali withdrew funds prior to the 9/11 attacks in support of his own activities," only withdrawing funds the day before 9/11 for his private use.  (Exh. 14b at 3457t–3458t (account statement); Ex. 20, Pls.' Suppl. Resps. and Objs. to Def. DIB's Second Set of Reqs. for Admis. No. 1 (May 27, 2021).)

40. No money was withdrawn or transferred from Ali Abdul Aziz Ali's DIB account to support the 9/11 hijackers or other 9/11 plot principals in carrying out the 9/11 attacks.   (Exh. 14b at 3457t–3458t (account statement); Ex. 20, Pls.' Suppl. Resps. and Objs. to Def. DIB's Second Set of Reqs. for Admis. No. 1 (May 27, 2021).)

41. Ali Abdul Aziz Ali withdrew or transferred no funds from his DIB account prior to September 10, 2001.  (Exh. 14a at 3457t–3458t (account statement); Ex. 20, Pls.' Suppl. Resps. and Objs. to Def. DIB's Second Set of Reqs. for Admis. No. 1 (May 27, 2021).)

42. Plaintiffs have no evidence "tracing the specific use of Ali Abdul Aziz Ali's account at DIB" to "funding Al Qaeda through specific transactions."  (Ex. 20, Pls.' Suppl. Resps. and Objs. to Def. DIB's Second Set of Reqs. for Admis. No. 11 (May 27, 2021).)

43. Aziz Ali's account at DIB was not used to fund Al Qaeda through specific transactions. (Exh. 14a at 3457t–3458t (account statement); Ex. 20, Pls.' Suppl. Resps. and Objs. to Def. DIB's Second Set of Reqs. for Admis. No. 11 (May 27, 2021).)

44. Plaintiffs have no evidence "tracing the use of specific funds from Fayez Rashid Hassan Al Qadi's account at DIB to particular operational expenditures he incurred in carrying out the 9/11 operation."  (Ex. 20, Pls.' Suppl. Resps. and Objs. to Def. DIB's Second Set of Reqs. for Admis. No. 2 (May 27, 2021).)

45. Fayez Rashid Hassan Al Qadi never used his account at DIB for operational expenditures incurred in carrying out the 9/11 attacks.  (Exh. 18 (account statement); Ex. 20, Pls.' Suppl. Resps. and Objs. to Def. DIB's Second Set of Reqs. for Admis. No. 2 (May 27, 2021).)

46. Fayez Rashid Hassan Al-Qadi ceased using his DIB account over a year before the 9/11 attacks.  (Exh. 18 (account statement).)

47. Neither Ali Abdul Aziz Ali nor Fayez Rashid Hassan Al-Qadi had any transactions that made use of DIB's correspondent banking accounts in the United States or otherwise had transactions that involved the United States.  (Ex. 4, Dharsey ¶15.)

48. Plaintiffs have no evidence "tracing the use of specific funds from" the other eight accountholders accounts[2] "at DIB to particular operational expenditures incurred by the 9/11 hijackers or other 9/11 plot principals in carrying out the 9/11 operation."  (Ex. 20, Pls.' Suppl. Resps. and Objs. to Def. DIB's Second Set of Reqs. for Admis. Nos. 3–10 (May 27, 2021).)

49. Plaintiffs have no evidence "tracing the use of specific funds from" any of the DIB accounts of the ten accountholders "to funding Al Qaeda through specific transactions."  (Ex. 20, Pls.' Suppl. Resps. and Objs. to Def. DIB's Second Set of Reqs. for Admis. Nos. 11–20 (May 27, 2021).)

50. No funds from the DIB accounts of any of the ten accountholders were used to fund Al Qaeda through specific transactions.  (Ex. 20, Pls.' Suppl. Resps. and Objs. to Def. DIB's Second Set of Reqs. for Admis. Nos. 1–20 (May 27, 2021).)

51. No funds in any account at Dubai Islamic Bank were used by the 9/11 hijackers or other 9/11 plot principals in carrying out the 9/11 terrorist attacks.  (Ex. 14a at 3457t–3458t (account

---

[2] Ali Saleh Mohammad Kahla Al-Marri, Seedi Al Madani Al-Ghazi Mustafa Al Tayyib, Mamdoh Mahmoud Salim Ahmed, Ahmed Ali Jumale, Barakaat Bank of Somalia, Al Baraka Exchange LLC, Khalid Amer Salim Ballayth, and International Islamic Relief Organization.

statement); Ex. 18 (account statement); Ex. 20, Pls.' Suppl. Resps. and Objs. to Def. DIB's Second Set of Reqs. for Admis. Nos. 1–10 (May 27, 2021).)

Dated: December 3, 2021　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　By: */s/ Steven T. Cottreau*
　　　　　　　　　　　　　　　　　　　　　　Steven T. Cottreau
　　　　　　　　　　　　　　　　　　　　　　C. Kevin Marshall (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　Gabrielle E. Pritsker
　　　　　　　　　　　　　　　　　　　　　　Audrey Beck (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　JONES DAY
　　　　　　　　　　　　　　　　　　　　　　51 Louisiana Avenue, N.W.
　　　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20001
　　　　　　　　　　　　　　　　　　　　　　Telephone: (202) 879-3939
　　　　　　　　　　　　　　　　　　　　　　Email: scottreau@jonesday.com
　　　　　　　　　　　　　　　　　　　　　　Email: ckmarshall@jonesday.com
　　　　　　　　　　　　　　　　　　　　　　Email: gpritsker@jonesday.com
　　　　　　　　　　　　　　　　　　　　　　Email: abeck@jonesday.com

　　　　　　　　　　　　　　　　　　　　　　Juan P. Morillo (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　QUINN EMANUEL URQUHART & SULLIVAN LLP
　　　　　　　　　　　　　　　　　　　　　　777 Sixth St., N.W.
　　　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20001
　　　　　　　　　　　　　　　　　　　　　　Telephone: (202) 538-8174
　　　　　　　　　　　　　　　　　　　　　　Email: juanmorillo@quinnemanuel.com

　　　　　　　　　　　　　　　　　　　　　　*Counsel for Defendant Dubai Islamic Bank*