# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN) |
|---|---|

This document relates to:

*August Bernaerts, et al. v. Islamic Republic of Iran*, No. 1:19-cv-11865 (GBD) (SN)

## DECLARATION OF FAMILIAL RELATIONSHIP

I, Jude Monteserrato a/k/a Judith Monteserrato, declare under penalty of perjury, as provided for by 28 U.S.C. § 1746, that the following statements are true and correct:

1.      My name is Jude Monteserrato, and I was the life partner of John Michael Sbarbaro ("John") who died on September 11, 2001 ("9/11") when the World Trade Center collapsed. I submit this Declaration to demonstrate I was the functional equivalent of John's spouse.

2.      John and I began dating in 1986. We met at work when we both worked for Chase Manhattan Bank. Starting in 1992, we moved in together in Brooklyn, New York, where we resided until John's tragic death on 9/11.

3.      As life partners, John and I both contributed financially to our life together. We paid equally the mortgage, condo fees, utilities, and food bills, we purchased a timeshare in Sanibel Island, Florida (*see* Exhibit 1), were the beneficiary of each other's accounts (including life insurance, investment accounts, and IRAs) (*see* Exhibit 2), shared expenses for trips, and saved for the future together. While John was the title holder of our condo, he notarized a letter stating the condo should go to me, "The love of my life," if he passed away (*see* Exhibit 3), and I received the condo (*see* Exhibit 4) from John's mother on this basis. John's mother previously told me I was John's wife even though we were not legally married.

4.      At the time of John's death, we lived together and shared our lives. John and I did everything together, including commuting to work (our offices were nearby). We traveled to, among other places, Colorado, Utah, and Vermont to ski, South Carolina, Hawaii, the Hamptons, and Lake George. I will never forget when John surprised me with an all-expense-paid first-class trip to Maui when I turned 40 years old. John even contacted my boss to get the time off from work. I hoped to take John to Scotland for his 50th birthday because he dreamed of playing golf there. We looked forward to going on many more adventures together.

5.      In addition to experiencing new things, John and I also had our rituals of things we enjoyed together. For example, John and I celebrated birthdays and special occasions at Nobu and Windows on the World (the restaurant at the top of the World Trade Center).

6.      In addition to the happy times we spent together, John and I were there for each other through difficult times. John supported me when I had cancer and when my brother passed away, and I supported John when his sister passed away. John always came with me to the hospital and to doctor's visits. It brought my parents great comfort that John was always there with me. I was also always there for John when he was sick and took him to the hospital.

7.      There is no doubt that John and I were family. While we were never formally engaged and did not have a formal marriage ceremony, we were committed to each other as "husband and wife" and planned to be together forever. We had a relationship akin to a married couple and loved each other immensely. *See* photos attached as Exhibit 5. In fact, people said we were "more married" than most married couples. Together we attended family gatherings and celebrated holidays with each other's families. We were very close with each other's families, and I was particularly close with John's sister, who was like a sister to me. Both of our families got along well, and we all celebrated John's 40th birthday together.

2

8.      In fact, based on being John's domestic partner, I received a September 11th Victim Compensation Fund ("VCF") award (from my own application), proceeds from John's family's VCF award, funds from the American Express 9/11 Fund and Robin Hood Fund, Families of Freedom paid for some of my courses to become a professional yoga instructor, and Cantor Fitzgerald honored me as John's "wife" and paid my health insurance for 10 years.

9.      Upon hearing news of the terrorist attack at the World Trade Center, I prayed John would be found alive. I contacted hospitals and put up missing persons pictures of John. I did not want to believe the love of my life left this world so suddenly and unexpectedly, but I eventually had to accept the terrible truth that John was really gone.

10.      When I woke up on 9/11, I never imagined I would never see John again. After all, John and I looked forward to spending the rest of our lives together. John was stolen away from me, and I feel his loss every day and share fond memories of him. He is forever in my heart. I purchased a cobblestone at the 9/11 Memorial (*see* Exhibit 6) and got a tattoo (*see* Exhibit 7) in John's memory. I also bought John a plot in a cemetery on Long Island and bought the neighboring plot for myself, so our tombstones will be next to each other.  *See* Exhibit 8.

11.      John and I shared our lives as committed life partners with the deepest love for one another. We considered each other to be family. Accordingly, I should be deemed the functional equivalent of John's spouse.

Executed on: _____

Name (Signature): *Jude Monteserrato / Judith Monteserrato*

Name (Print):    Jude Monteserrato a/k/a Judith Monteserrato

3

# EXHIBIT 1

# NORTH AMERICAN TITLE INSURANCE AGENCY, INC.

11595 Kelly Road, Fort Myers, Florida 33908
(941) 454-1600   454-6828 Fax
Timeshare Direct Line (941) 454-0222

June 15, 2001

JOHN SBARBARO and JUDY MONTESERRATO

BROOKLYN, NY

Our File Number:  52701CF

Dear Friends:

In connection with your recent purchase, enclosed, please find your copy of the signed, unrecorded Warranty Deed.

The original has been sent to the courthouse for recording.  Upon receipt of the same back in our office, we will forward the original to you along with your Owners Title Insurance Policy.

It has been a pleasure to handle this closing for you and we look forward to working with you again in the future.  If you should have any questions regarding any of the the above mentioned, please feel free to contact our office, and ask for Angel.

Sincerely,

NORTH AMERICAN TITLE
INSURANCE AGENCY, INC.

encl.

Established in 1979

RECORDING FEE - $6.00
DOCUMENTARY STAMP TAX - $94.50
**This Instrument Prepared By/Return to:**
**Angelique J. Habig of:**
**NORTH AMERICAN TITLE**
**INSURANCE AGENCY, INC.**
**11595 Kelly Road**
**Fort Myers, Florida 33908**
**Grantee(s) S.S. #:**
**Strap Number:** ▮▮▮▮▮▮▮▮
**File Number: 52701CF**

# WARRANTY DEED

**This Indenture** made this <u>8</u> day of <u>June</u>, 2001, BETWEEN

**DONALD V. COOK**
**of** ▮▮▮▮▮▮ DECATUR, GA ▮▮ **as GRANTOR\*, and**

**JOHN SBARBARO and JUDY MONTESERRATO, AS JOINT TENANTS WITH FULL RIGHTS OF SURVIVORSHIP**
**of** ▮▮▮▮▮▮ BROOKLYN, NY ▮▮ **as GRANTEE\***

(\*"Grantor" and "Grantee" are used herein for singular or plural, and any gender shall include all genders as context requires)

**WITNESSETH,** That the said Grantor, for and in consideration of the sum of TEN Dollars ($10.00) and other good and valuable considerations to said Grantor in hand paid by said Grantee, the receipt whereof is hereby acknowledged, has agreed, has granted, bargained and sold unto the Grantee and Grantee's heirs, or successors; and assigns forever the following described land located in the County of Lee, State of Florida, to-wit:

**UNIT WEEK(S) NO. 17 IN CONDOMINIUM PARCEL NO. 145 OF CASA YBEL BEACH AND RACQUET CLUB PHASE F, A CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM THEREOF, AS RECORDED IN OFFICIAL RECORDS BOOK 1354 AT PAGE 1039, IN THE PUBLIC RECORDS OF LEE COUNTY, FLORIDA, AND ALL AMENDMENTS THERETO IF ANY.**

THE GRANTOR WARRANTS THAT THE ABOVE DESCRIBED PROPERTY IS NOT THE GRANTOR'S HOMESTEAD AS THAT TERM IS DEFINED PURSUANT TO ARTICLE X, SECTION 4, CONSTITUTION OF THE STATE OF FLORIDA BECAUSE NEITHER THE GRANTOR NOR ANY DEPENDENTS OF GRANTOR RESIDE ON THE ABOVE DESCRIBED REAL PROPERTY OR UPON ANY REAL PROPERTY CONTIGUOUS THERETO.

SUBJECT TO EASEMENTS, RESTRICTIONS, RESERVATIONS AND LIMITATIONS OF RECORD, IF ANY.

**TO HAVE AND TO HOLD,** the same in fee simple, together with an undivided remainder in fee simple and an estate for years.

**AND** the grantor does hereby fully warrant the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances, except taxes accruing for the current and subsequent years.

**IN WITNESS WHEREOF,** Grantor has hereunto set grantor's hand and seal this day and year first above written.

TWO SEPARATE WITNESSES REQUIRED

X _Jeane Charles Turlock_

X _DONALD V. COOK_
DONALD V. COOK

X _Mildred A. Hartley_

STATE OF GA
COUNTY OF DeKalb

The foregoing instrument was acknowledged before me this <u>8</u> day of <u>June</u>, 2001 by **DONALD V. COOK** who is/are personally known to me or who has/have each produced GA DL 020650202 as identification.
____personally known to me    ✔ provided identification as indicated above    ✔ did take an oath    ____did not take an oath

Notary Public-Gwinnett County, Georgia
**EXPIRATION DATE** X My Commission Expires July 29, 2002

**SERIAL NUMBER** X      none
**(SEAL)** X

X _Rita Novak_
**NOTARY PUBLIC SIGNATURE**

X _Rita Novak_
**NOTARY NAME TYPED-PRINTED OR STAMPED**

# EXHIBIT 2

**Phoenix Home Life**

**Variable Annuity Application**
Annuity Ticket ☐ Yes ☐ No

**1 Annuitant(s)**
If no Contract Owner is specified in Box 2 below, the Annuitant will be the Contract Owner.

☒ Primary Annuitant

Name JOHN M. SBARBARO
Phone 718-680-0225    Social Security Number ▮▮▮▮
Address (No., Street) ▮▮▮▮
(City, State, Zip Code) BROOKLYN    N.Y    ▮▮▮▮
Sex ☒ Male ☐ Female    Date of Birth 56

☐ Contingent Annuitant (Complete only if Owner differs from Annuitant)

Name
Phone    Social Security Number
Address (No., Street)
(City, State, Zip Code)
Sex ☐ Male ☐ Female    Date of Birth

**2 Contract Owner(s)**
Complete only if different from Annuitant.

☐ Contract Owner

Name
Phone    Social Security Number
Address (No., Street)
(City, State, Zip Code)
Sex ☐ Male ☐ Female    Date of Birth

☐ Joint Owner (Between spouses only)

Name
Phone    Social Security Number
Address (No., Street)
(City, State, Zip Code)
Sex ☐ Male ☐ Female    Date of Birth

**3 Beneficiary Designations**

a. Annuitant's Primary Beneficiary
JUDITH MONTESERRATO    Relationship to Annuitant S/O

Annuitant's Contingent Beneficiary
KATHRYN SBARBARO    Relationship to Annuitant SISTER

b. Owner's Beneficiary (Complete ONLY if owner differs from annuitant)    Relationship to Owner

Owner's Contingent Beneficiary    Relationship to Owner

**4 Type of Plan**

☐ Non-Qualified    ☒ Qualified (Indicate type below)

☒ IRA:  ☐ Regular Contributory  ☐ Direct Rollover  ☒ Transfer
Tax year to which contributions apply
☐ Simplified Employee Pension IRA (Include IRS Form 5305-SEP)
☐ Section 401 Corporate Plan (Include Form PT 352); ☐ Corp., ☐ Keogh, ☐ Profit Sharing, ☐ Money Purchase
☐ Section 403(b) TSA - This Application must be signed by the Employer of the Owner-Annuitant. The Employer states that it is an educational organization described in Internal Revenue Code section 170(b)(1)(A)(ii); a tax-exempt organization described in Code section 501(c)(3); or a State, political subdivision of a State, or an agency or instrumentality of one of the foregoing. (The Employer further states that only amounts deferred by the Owner-Annuitant under a salary reduction agreement with the Employer will be applied to this annuity contract.)

**5 Purchase Payments**
The minimum initial payment for non-qualified contracts is $1,000 and the minimum subsequent payment is $25. The minimum initial and subsequent payment for IRA and Check-O-Matic contracts is $25. For tax qualified or employer sponsored plan contracts, the minimum planned annual premium is $1,000 or its monthly equivalent of $83.33.

INITIAL PREMIUM PAYMENT: An initial payment of $ 38 469.58* is attached, being transferred
SUBSEQUENT PURCHASE PAYMENTS will be flexible unless otherwise noted as follows: $

☐ Annual
☐ Semi-Annual
☐ Quarterly
☐ Monthly
☐ Check-O-Mat

☐ Billing Notices are requested. Send bills to:

Name:
Address:
Note: If Check-O-Matic has been elected, please complete the attached authorization card and include a voided check.

OL 1754 NY 2-93

**6 Sub-Account Allocation**
Use full percentages.

_50_ % Growth   ____ % Total Return   ____ % GIA   _25_ % Wanger U.S.
____ % International   ____ % Balanced   ____ % Real Estate   _25_ % Wanger Int'l
____ % Money Market   ____ % Bond   ____ % Strategic Theme   ____ % Other

TEMPORARY MONEY MARKET ALLOCATION   ☐ Yes   ☒ No   If yes, I elect to temporarily allocate my premiums to the Big Edge Money Market sub-account until termination of the Right to Cancel period as stated in the policy.

**7 Dollar Cost Averaging**

a. Transfer Amount $ _____   ($2,000 Minimum in sending Sub-account)
b. Select one deposit sub-account:
   ☐ Money Market   ☐ Guaranteed Interest Account
   ☐ Total Return   ☐ Bond   ☐ Balanced   ☐ Growth
   ☐ International
c. Indicate Frequency of Transfer   ☐ Monthly   ☐ Quarterly   ☐ Semi-Annual   ☐ Annual
d. Select the Sub-accounts that will receive Transfers

Sub-Account                 Transfer Amount          Sub-Account              Transfer Amount
_____                $ _____           _____             $ _____
_____                $ _____           _____             $ _____

**8 Replacement**
Will the proposed contract replace any existing annuity or life Insurance?   ☒ Yes   ☐ No.   If yes, list company name, plan and year issued in box 12.

**9 Maturity Date (Optional)**
The maturity date shall be the policy anniversary nearest the Annuitant's attainment of age 85 for non tax-qualified plans (age 70-1/2 for tax-qualified plans) unless earlier age noted as follows: _____

**10 Statement of Additional Information** - If desired, please check here ☐

**11** ☐ Check here if $35 Annual Administrative Charge is to be paid in cash, rather than deducted automatically.

**12 Miscellaneous Instructions/ Comments**
PHOENIX HOME LIFE - SINGLE PREMIUM DEFERRED ANNUITY
1 - 30 - 91

**13 Statement of Owner/ Applicant and Annuitant**
All statements on this application are true to the best of our knowledge and belief. We agree that this application shall be part of the annuity contract. We hereby verify our understanding that all payments and values provided by the contract, when based on Investment experience of the Phoenix Edge Series Fund, are variable and not guaranteed as to dollar amount. We acknowledge receipt of current prospectuses for the Big Edge Plus and Phoenix Edge Series Fund.
Signed at _Brooklyn_   _N.Y_   On _2-20-97_
              (CITY, STATE)                        (DATE)

Under penalty of perjury, I (the owner) certify that my Social Security/Taxpayer ID number is correct as it appears on this application.
Signature of Annuitant   X _____
Signature of Owner/Applicant (if other than annuitant) _____

**14 Statement of Representative**
Will this contract replace any existing insurance or annuity?   ☒ Yes   ☐ No
This replacement is meant to be a tax-free exchange under Section 1035.   ☐ Yes   ☒ No   If 'yes', please give particulars above in #12.
The Agent hereby certifies that the Applicant signed this application in his/her presence; he/she has truly and accurately recorded on the application the information supplied by the proposed annuitant; and that he/she is qualified and authorized to discuss the contract herein applied for.
_____   _2-20-97_
AGENT'S SIGNATURE        DATE

**15 Representative Information**
(Please type or print)

Representative's Name _WILLIAM  R  RYAN_   Rep # _59617_
Insurance Agency (if other than broker/dealer) _PHOENIX Home Life (maximum)_   Branch # (if any) _AUS00_
Branch Office Address (Street) _888 - 7th AVE_   _44th FL_
(City, State, Zip Code) _N.Y_   _N.Y_   _10106_   Rep. Tel. No. (_212_) _246-4100_
Broker/Dealer (Name, City, State) _W.S. GRIFFITH_   _N.Y._

Send completed application - with a check payable to Phoenix Home Life to: Variable Products Operations, Phoenix Home Life Mutual Insurance Company, 101 Munson Street, P.O. Box 942, Greenfield, MA 01302-0942.

# EXHIBIT 3

11/2/98

To Whom it May Concern

In the event of my death, all
interests/ownership ~~will become of~~
the condo unit ███████████████████
in BKlyn will become Judy Montesenato.
(The love of my life).

WiTNessed. 11/2/98 by

Rosemarie Shabsis

Sworn before me this 2ND Day
November 1998

**VENA CAMPAGNINO**
Commissioner of Deeds
City of New York No. 22886
Certificate Filed in New York County
Commission Expires June 1, 1999

Vena Campagnino

# EXHIBIT 4

LAW OFFICES OF

# ALFRED CAVALLARO

ROCKEFELLER CENTER
630 FIFTH AVENUE
SUITE 2162
NEW YORK, NEW YORK 10111

**ALFRED CAVALLARO**
MEMBER OF
NEW YORK BAR
NEW JERSEY BAR

TELEPHONE 212-977-3535
TELECOPIER 212-247-5202

September 27, 2002

Ms. Judy Monteserrato
█████████████████
Brooklyn, New York   █████

Re:   <u>Deed</u>

Dear Ms. Monteserrato:

     Enclosed herewith is the original recorded deed transferring the property located at █████████████   Brooklyn, New York █████ into your name.  The deed was recorded in the Office of the City Register of the City of New York On July 1st, 2002, in Liber 5695, Page 1235.

     Should you have any questions or comments, please feel free to contact our office.

Very truly yours,

Erica L. Blaufeux
Paralegal

:elb
Enclosures

REEL 5 6 9 5 PG 1 2 3 5

# CITY REGISTER RECORDING AND ENDORSEMENT PAGE

**COUNTY OF ►** KINGS

THIS PAGE FORMS PART OF THE INSTRUMENT

| TOTAL NUMBER OF PAGES IN DOCUMENT INCLUDING THIS PAGE ► | 3 |
|---|---|

| Block ▼ | Lots - ONLY IF ENTIRE LOT ▼ | Partial Lots ▼ |
|---|---|---|
| ▬▬ | ▬▬ | P/O |

| Premises ▼ | | NAME ▼ ALFRED CAVALLARO, ESQ. |
|---|---|---|
| ▬▬ | RECORD & RETURN TO: | ADDRESS ▼ 630    5    AVENUE |
| Title/Agent Company Name ▼  TRADITIONAL  ABSTRACT | | CITY ▼ N.Y. | STATE ▼ N.Y. | ZIP ▼ 10111 |
| Title Company Number ▼  TRAD CTY      311 | | |

**NAME & ADDRESS**

| PARTY 1 ► | ROSEMARIE  SBARBARO     ADMINISTRATRIX |
|---|---|
| ADDITIONAL PARTY 1 ► | ▬▬        S.I.    N.J. |
| PARTY 2 ► | JUDITH  C.  MONTESERRATO |
| ADDITIONAL PARTY 2 ► | ▬▬        BROOKLYN   N.Y. |

CHECK THIS BOX IF THERE ARE MORE THAN 2 OF EITHER PARTY ........................ ☐

FOLD

**CITY REGISTER'S USE ONLY  -  DO NOT WRITE BELOW THIS LINE**

| Examined by (☒): | | City Register Serial Number ► 081186 |
|---|---|---|
| Mtge Tax Serial No. | | Indexed By (☒): | Verified By (☒): |
| Mtge Amount | $ | |
| Taxable Amount | $ | Block(s) and Lot(s) verified by (✓): |
| Exemption (✓) YES ☐ NO ☐ | | Address ........... ☐      Tax Map ☐ |
| Type: 339EE  [ 255 ]  OTHER___ | | Extra Block(s) _____      Lot(s) _____ |
| Dwelling Type: [1 to 2]  [3]  [4 to 6]  [OVER 6] | | Recording Fee ........ $ 32 |
| TAX RECEIVED ON ABOVE MORTGAGE ▼ | | Affidavit Fee ....(C) ... $ |
| County (basic) | $ | RPTT Fee ......(R) ... $ 25 |
| City (Addt'l) | $ | HPD-A ☐         HPD-C ☐ |
| Spec Addt'l | $ | New York State Real Estate Transfer Tax ▼ |
| TASF | $ | $                0 |
| MTA | $ | Serial Number ► 023487 |
| NYCTA | $ | New York City Real Property Transfer Tax |
| TOTAL TAX | $ | Serial Number ► 13543 |
| Apportionment Mortgage (✓) YES ☐ NO ☐ | | |

DEED 0214            32.00
10/TL  CRH SPDT  INT  TIME
5-1    V14HEH   T  1-02 A9G9

FOLD

JUL 0 1 2002

9112A

**RECORDED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

2002 JUL -1  A 9: 12

CRGFM89NLBPG  04/00

45 - H - 002

REEL 5695 PG 1236

Form 8005-B (3/00) 12-70-6M– Administrator's Deed (single sheet)

**CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT – THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.**

**THIS INDENTURE,** made the 25th day of     March    ,    2002    and
**BETWEEN**
ROSEMARIE SBARBARO, residing at ████████ Staten Island, New York ████

as administrator (trix) of the Estate of  JOHN SBARBARO,
late of ████████ Brooklyn, New York ████
who died intestate on the   11th   day of     September     ,   2001   and
party of the first part, and
~~JUDY~~ MONTESERRATO, residing at ████████ Brooklyn, New York
JUDITH C.

party of the second part,

**WITNESSETH,** that whereas                         letters of administration were issued to the party of the first part
by the Surrogate's Court,            Kings            County, New York, on   January 7, 2002   and by virtue
of the power and authority given by Article 11 of the Estates, Powers and Trusts Law, and in consideration of

Ten ($10.00)  dollars,

paid by the party of the second part, does hereby grant and release unto the
party of the second part, the distributees or successors and assigns of the party of the second part forever,

~~ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the~~

ALL that certain piece or parcel of real property, with the improvements therein contained, situate and being a part of
a condominium in the Borough of Brooklyn, County of Kings, City and State of New York, known and designated as
████████ together with a 5.5414% percent undivided interest in the common elements of the condominium
hereinafter described as the same is defined in the Declaration of Condominium hereinafter referred to.
The real property above described is a Unit shown on the plans of a Condominium prepared and certified by DiFiore,
Giacobbe & Associates, Registered Architects, and filed in the Office of the Register of the City of New York, Kings
County on the 6th day of May, 1988 as Map 4698 defined in the Declaration of Condominium entitled
████████ made by ████████ under Article 9-B of the New York Real Property Law
dated March    , 1988 and recorded in the office of the Register of New York City, Kings County on the 6th day of
May, 1988, in Reel 2211 at page 2258 covering the property therein described as follows:
ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City
and State of New York, bounded and described as follows:
BEGINNING at a point on the southwesterly side of ████ distant 347 feet 8 ½ inches southeasterly from the
corner formed by the intersection of the southwesterly side of ████ and the southeasterly side of 3rd Avenue;
RUNNING THENCE southeasterly along said southwesterly side of ████ 83 feet 11 ½ inches;
THENCE southeasterly at right angles to said ████ 116 feet 5 ¼ inches;
THENCE northwesterly along a line forming an interior angle of 89 degrees 14 minutes 47 seconds with the last
mentioned course 83 feet 11 ½ inches;
THENCE northeasterly along a line forming an interior angle of 90 degrees 45 minutes 13 seconds with the last
mentioned course, 115 feet 4 ½ inches to the southwesterly side of ████ at the point or place of BEGINNING.
TOGETHER with the benefits, rights, privileges, easements and subject to the burdens, covenants, restrictions,
by-laws, rules, regulations and easements all as set forth in the Condominium Documents filed and recorded as
aforesaid.
SAID premises being known as ████ at premises ████ Brooklyn, New York.
This condominium unit is for personal use only.

TOGETHER with all right, title and interest, if any, of the party of the first part, in and to any streets and roads abutting the above
described premises to the center lines thereof; TOGETHER with the appurtenances, and also all the estate which the said decedent
had at the time of decedent's death in said premises, and also the estate therein, which the party of the first part has or has power to
convey or dispose of, whether individually, or otherwise; TO HAVE AND TO HOLD the premises herein granted unto the party of
the second part, the distributees or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises
have been incumbered in any way whatever, except as aforesaid.

Subject to the trust fund provisions of section thirteen of the Lien Law.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF,** the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

_____          Rosemarie Sbarbaro
                                          ROSEMARIE SBARBARO-Administratrix
                                          of the Estate of John Sbarbaro

Acknowledgement taken in New York State

State of New York, County of  Kings                    , ss:

On the  J 8 ᵗʰ  day of  March      in the year  2002 , before me,
the undersigned, personally appeared
 ROSEMARIE SBARBARO
personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(X) whose name(X) is
(are) subscribed to the within instrument and acknowledged to
me that  he/she/they  executed the same in  his/her/their
capacity(ies), and that by  her/her/their signature(s) on the
instrument, the individual(X) or the person upon behalf of which
the individual(s) acted, executed the instrument.

**VENA CAMPAGNINO**
**Commissioner of Deeds**
**City of New York No. 22886**
**Certificate Filed in New York County**
**Commission Expires June 1, 2004**

*Vena Campagnino*

---

Acknowledgement taken in New York State

State of New York, County of                        , ss:

On the        day of        , in the year        , before me,
the undersigned, personally appeared

personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that  he/she/they  executed the same in  his/her/their
capacity(ies), and that by  his/her/their  signature(s) on the
instrument, the individual(s) or the person upon behalf of which
the individual(s) acted, executed the instrument.

---

**Acknowledgement by Subscribing Witness taken in New York State**

State of New York, County of                        , ss:

On the        day of        , in the year        , before me,
the undersigned, personally appeared

the subscribing witness to the foregoing instrument, with whom
I am personally acquainted, who being by me duly sworn, did
depose and say, that  he/she/they  reside(s) in

that he/she/they know(s)

to be the individual described in and who executed the
foregoing instrument; that said subscribing witness was
present and saw said
execute the same; and that said witness at the same time
subscribed  his/her/their  name(s) as a witness thereto.

---

**Acknowledgement taken outside New York State**

* State of                , County of                , ss:
* (or insert District of Columbia, Territory, Possession or
 Foreign Country)

On the        day of        , in the year        , before me,
the undersigned, personally appeared

personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that  he/she/they  executed the same in  his/her/their
capacity(ies), that by  his/her/their  signature(s) on the
instrument, the individual(s) or the person upon behalf of which
the individual(s) acted, executed the instrument, and that such
individual made such appearance before the undersigned in the

(add the city or political subdivision and the state or country or
other place the acknowledgement was taken).

---

Title No.:_____

TO

**The Judicial Title Insurance Agency LLC**

| New York City | Westchester | |
|---|---|---|
| 888 Seventh Avenue, Suite 300 | 550 Mamaroneck Avenue | 152 South Highland Avenue |
| New York, NY 10106 | Suite 202 | Suite 202 |
| 800-281-TITLE (8485) | Harrison, NY 10528 | Ossining, NY 10562 |
| Tel: (212) 432-3272 | Tel: (914) 381-6700 | Tel: (914) 923-2300 |
| Fax: 800-FAX-9396 | Fax: (914) 381-3131 | Fax: 800-FAX-9396 |

DISTRICT

SECTION

BLOCK  ▉

LOT  ▉

COUNTY OR TOWN   KINGS COUNTY

RETURN BY MAIL TO:

Law Offices of Alfred Cavallaro
630 Fifth Avenue
Suite 2162
New York, New York

**Zip No.** 10111

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE

# EXHIBIT 5









ocument 7592










ocument 7592



ocument 7592







# EXHIBIT 6



# 9/||
## MEMORIAL

### COBBLESTONE SPONSORSHIP CERTIFICATE

#### John Sbarbaro

The National September 11 Memorial & Museum
is honored to include you among our supporters.
A cobblestone sponsored in your name will permanently
line the Memorial at the World Trade Center.

Your cobblestone brings us one step closer to completing
this national tribute – a place of remembrance, reflection
and learning for generations to come.

Out of respect for the victims of the attacks of
September 11, 2001, and February 26, 1993, cobblestones
will not be inscribed with donor names. To locate
your cobblestone, you will enter your name at a kiosk
located on the Memorial Plaza.

I purchased a cobblestone in memory of John ♡

# EXHIBIT 7



# EXHIBIT 8

**Dear Valued Customer,** ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

**Please carefully inspect the drawing below.  Call us if you have any problems or questions.  If the drawing meets your approval, sign this form and return it.**
**Please also forward ..$.625....... which is due at this time.**
The drawing is a scaled image of the original blue-print from which your stone will be cut.

Your signature *Judy C. Montesenes*





# Holy Family Monuments

Southern State Parkway, Exit 34
New Highway - Opp. St. Charles Cemetery
P.O. Box 59 - Farmingdale, NY 11735
1-631-694-4830

Date _3 - 30 - 2002_  7/8 - Phone # _380 - 6225_

Purchaser _JUDY C. MONTESSRICATO_

Address _[redacted]_

_Brooklyn, N_ _[redacted]_

Surname _SBARBARO_

First Name _JOHN M._

Born _[redacted] 1952_ Died _Sept 11, 2001_

☑ Dates Under First Name   ☐ On One Line

T. of E. _NONE_

Epitaph _TOGETHER FOREVER_

Size
Die _1 - 8 x 8 x 2 - 0_
Base _2 - 0 x 6 - 10 x 0 - 8_

Finish
Die _ALL POLISHED_
Base _P/T/T WS BACK B/R/P_

Letters Surname _v/S_ Epitaph _v/S_

First Name _v/S_ Dates _v/S_

☐ Large Panel   ☑ Individual Panels

Would you like a larger Monument if permitted ?
Yes / No )

Design:
_STAVGENELLI CROSS_

---

| | | WILL MAIL |
|---|---|---|
| | Deed | ☐ |
| ☑ | Application | ☐ |
| ☑ | Affidavit | ☐ |
| ☐ | Fd. Fee | ☐ |
| ☑ | Payment | ☐ |
| ☑ | Order | ☐ |

Section _41_

Range _L - JP_

Grave _7055_

Cemetery _ST CHARLES_

Date Deceased _9 - 11 - 2001_

_/_ # of future burials

Color _RED_

Granite Monument erected according to the rules and regulations of the cemetery for the

| | |
|---|---|
| Sum of | 1395 |
| Cemetery Fdt. Fee (Payable to Cemetery) | 60 |
| Sales Tax | |
| Total | 1455 |
| Deposit | 100 |
| Balance | 1355 |



---

Cancelled orders are subject to a cancellation charge of 20% of total price.

### ALL WORK GUARANTEED    FIRST-CLASS WORKMANSHIP

IT IS UNDERSTOOD AND AGREED that the title and ownership of the above described Monument shall be and remain possession of HOLY FAMILY MONUMENTS, until paid in full. Not responsible for delays due to strikes, acts of God or pouring of foundations by cemetery personnel.

TOTAL COST $ _1455_   DEPOSIT $ _100_   BALANCE $ _1355_

Purchaser _____   By _____

Purchaser reserves the right to cancel this order within three days from above date.

We reserve the right to cancel this order within 30 days of above date.

1-1/2% monthly interest (or 18% per year) will be added to the unpaid balance, commencing the date the monument is complete and ready to be installed.

# CATHOLIC CEMETERIES

| | |
|---|---|
| R. OF B.    1,300.00 | ST. CHARLES |
| E / C    650.00 | CEMETERY |

Owned and Operated by
### THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK
80-01 Metropolitan Avenue, Middle Village, New York 11379

No.    313763

## CERTIFICATE OF RIGHT OF BURIAL

THIS IS TO CERTIFY, that

MONTESERRATO        JUDY C.

residing at ▮▮▮▮▮▮▮▮▮

BROOKLYN        NY ▮▮▮▮

is the Proprietor of Right of Burial with Endowed Care in and to

```
SECTION:041      R/R: L      PLOT:  ST.JOHN-ST.PAUL
GRAVE(S):7055
  1 GRAVE(S)       36''W  ×  108''L
```

in the above Cemetery subject to the following conditions, terms and limitations AND those stated on the reverse of this Certificate and in the rules and regulations of the Cemetery as same may be modified from time to time.

### TERMS AND CONDITIONS

1. A plotholder (cryptholder) is subject to the Rules and Regulations for Cemeteries of the Roman Catholic Diocese of Brooklyn, New York. Said Rules and Regulations shall be deemed a part of these Terms and Conditions. The Rules and Regulations may be changed from time to time and the same shall be binding upon the plotholder (cryptholder) without notice. A copy of the Rules and Regulations is available at any office of the Cemeteries of The Roman Catholic Diocese of Brooklyn, New York. Likewise, the plotholder (cryptholder) is subject to all rules and disciplines of The Roman Catholic Diocese of Brooklyn, New York (hereinafter referred to as Diocese) now or hereafter existing in respect to the government of the aforesaid Cemetery as construed by the ecclesiastical authorities of such Diocese.
2. The Certificate of Right of Burial shall not be construed to grant any other right or privilege whatsoever other than the Right of Burial in the above grave(s)/crypts; and shall in no way convey any right, title and interest in and to the land itself (in-ground gravesite), or structures themselves (cryptsites); that the said right shall not extend to the burial of any deceased person who shall have departed this life not fully in communion with the Roman Catholic Church; and the Certificate is issued with the expressed understanding that no disinterment or removal within the cemetery shall be allowed except for a good reason and then with the written approval of the Cemetery Authorities, in their sole and absolute discretion, and the written authorization of the certificate holder(s) or any other necessary person all in accordance with any civil and Church laws. No disinterment or removal from the cemetery shall be allowed except for a good reason and then upon order of a court of competent jurisdiction in accordance with applicable civil and Church laws.
3. The ownership of this Certificate of Right of Burial issued hereunder shall not be assignable nor transferable without the prior approval in writing of the Diocesan Director of Cemeteries. Said approval shall be in the sole and absolute discretion of the Diocesan Director of Cemeteries.
4. No interment shall be made of any person without the authorization of the plotholder (cryptholder), in accordance with the Rules and Regulations of the Cemetery, or, if the plotholder (cryptholder) is deceased, without the authorization of other such person(s) who are owners of the Right of Burial.
5. The monies received for endowment shall be placed in an endowment fund and the income/interest of such shall be used for the maintenance, care and general embellishment of the above designated grave(s) and the cemetery. The cemetery shall not be responsible for nor shall this endowment apply to either the maintenance, care and improvement of any memorial, monument, grave marker, sarcophagus, private mausoleum crypts, vaults, inscriptions or any other object which would mark or designate a grave or, private plantings. The endowment fund shall be managed in accordance with the New York State Management of Institutional Funds Act, as it shall be amended from time to time.

IN WITNESS WHEREOF, the Diocese has caused these presents to be signed by its duly authorized agent this
1ST    day of    APRIL    2002        A.D.

THE ROMAN CATHOLIC DIOCESE
OF BROOKLYN, NEW YORK
THOMAS V. DAILY, D.D.

MOST REVEREND BISHOP OF BROOKLYN

By _____

REV. MICHAEL J. REID
Diocesan Director of Cemeteries

---

ORIGINAL CERTIFICATE - Duplicate/replacement certificates are not issued.      CRB 0700