# EXHIBIT N

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN) |
|---|---|

This document relates to:

*August Bernaerts, et al. v. Islamic Republic of Iran*, No. 1:19-cv-11865 (GBD) (SN)

## DECLARATION OF FAMILIAL RELATIONSHIP

I, Cristal Barragan, declare under penalty of perjury, as provided for by 28 U.S.C. § 1746, that the following statements are true and correct:

1.      My name is Cristal Barragan, and I am the step-daughter of Moises Rivas ("Moises") who died on September 11, 2001 ("9/11") when the World Trade Center collapsed. I submit this Declaration to demonstrate I am the functional equivalent of Moises' daughter.

2.      In 1996, Moises came into my life when he started dating my mother. I was five years old at the time. That same year, he moved in with us, and we began living together as a family. On May 15, 1996, Moises and my mother got married. We lived in the Bronx with my mother and older sister, and eventually my baby siblings (Moises and my mother had a baby boy and girl), and then moved to Washington Heights. We lived together until Moises' tragic death on 9/11.

3.      Moises supported our family and took care of us. He was the sole financial support of our family as my mother was a stay-at-home mother. Moises paid the rent, took us clothes shopping, bought us school clothes, school supplies, toys, and gave me money to buy breakfast and food from the local store. Most importantly, Moises treated me like his daughter, both emotionally and socially, and made our family whole. Moises was a true family man. He walked me to school, organized family board game nights (he was great at Monopoly), watched

cartoons with us, took us on family walks with the dog, and took us to Central Park, the Bronx Zoo, and Jones Beach.

4.       Moises strongly believed in education and helped me with my homework and made sure I did well in school. He taught me Spanish, and I helped him learn English.

5.       One of my fondest childhood memories is when Moises taught me how to play the guitar. He was musically talented—he played the guitar and piano and sang Spanish music in a band—and wanted to introduce us, his children, to the world of music. In fact, I still have his guitar to this day. I cherish it and will give it to Moises Jr. (Moises and my mother's son) once he is older and tell him how talented his father was. Moises was also very athletic and taught me how to play soccer and volleyball. He played on a soccer team in Washington Heights and loved the sport. I remember when I visited Moises at his job at Windows on the World. He proudly introduced me to his supervisor and coworkers as his daughter. We ate lunch together surrounded by a beautiful view of the city. It was a special moment for me because I did not have a father figure before Moises entered my life as my biological father died when I was three years old. I also remember when Moises took me to the Disney store in Times Square. We saw the Disney characters and sat on the red stairs. I still have the Winnie the Pooh he bought me and keep it in good condition. It has great sentimental value because it reminds me of the special times Moises and I had together.

6.       There is no doubt that I was Moises' family. We went to his family gatherings and celebrations together, and also went on overnight trips to his family's house in Queens. We spent Christmas and Thanksgiving with my mother's side of the family or with Moises' side of the family in Manhattan or Queens. My mother's extended family loved Moises. He had a great sense of humor and was lovable. When Moises and my mother and Moises' brother and his wife

2

went out, I babysat my baby siblings and Moises' brother's children. In fact, I am close with Moises' brother to this day. We both live in Pennsylvania and visit each other every year.

7.      Moises was my father. We had a special bond and were very close. *See* photo attached as Exhibit 1. Moises made it known to others that I was his daughter, and I referred to him as my dad. He gave me advice like any loving father. After my biological father passed away when I was three years old, I had no father in my life. Moises filled that void and was the father figure in my life. It meant so much to me that he was always present and made me feel important and taken care of.

8.      Moises claimed my sister and I as dependents on his tax returns, and my sister and I received social security benefits and an award from the September 11th Victim Compensation Fund ("VCF"). *See* VCF award attached as Exhibit 2.

9.      9/11 ripped our family apart. We did not want to believe that Moises left this world so suddenly and unexpectedly, but we eventually had to accept the terrible truth that he was really gone. I had a difficult time dealing with Moises' passing. I was depressed and did not go to school for approximately two months (my teacher came to my house and dropped of my homework). Things were never the same again.

10.     When I woke up on 9/11, I never imagined I would never see Moises again. I feel Moises' loss every day and share fond memories of him.

11.     Moises and I had a very close relationship akin to a father and daughter and we considered each other to be father and daughter in every way. Accordingly, I should be deemed the functional equivalent of Moises' daughter.

Executed on: 10/18/2021

Name (Signature): _Cristal Barragan_

Name (Print):   Cristal Barragan

# EXHIBIT 1



# EXHIBIT 2



**U.S. Department of Justice**
September 11th Victim Compensation Fund

P.O. Box 18698
Washington, D.C. 20036-8698

**AWARD DETERMINATION**
**PERIODIC PAYMENT AGREEMENT**

In accordance with Title IV of the Air Transportation Safety and System Stabilization Act, the Special Master of the September 11th Victim Compensation Fund (the "Fund") has determined the award for claim no. 212-002827 for the death of MOISES NORBERTO RIVAS pursuant to the authority vested in him. This award shall be made subject to the terms and conditions stated below.

**Terms and Conditions**

1.    The award for this claim is:

    a.    A single payment in the amount of TWO HUNDRED THOUSAND DOLLARS AND NO CENTS ($200,000.00) paid to the account of ELIZABETH RIVAS.

    b.    To ELIZABETH RIVAS ("payee"):

        i.    Lifetime monthly payments, guaranteed for THIRTY (30) years, each in the amount of TWO THOUSAND EIGHT HUNDRED TWENTY-SEVEN DOLLARS AND NO CENTS ($2,827.00), increasing at a rate of TWO PERCENT (2%) compounded annually, paid to the account of ELIZABETH RIVAS. The first payment shall be made sixty (60) days after the structured settlement annuity is funded; the remaining payments shall be made on a monthly basis thereafter;

If a payee dies before the payment of the last periodic payment to which that payee is entitled, all remaining payments shall be made payable in accordance with a written designation of successor payee(s) signed by that payee, provided that any such designation shall be in a form acceptable to the payor and shall be sent to the payor prior to the payee's death. If at the time of the payee's death there is no valid designation in effect, or if none of the designated successor payees survives the

Award Determination Periodic Payment Agreement                   1
MOISES NORBERTO RIVAS – 212-002827
MIAC Assignment

payee, then all remaining payments shall instead be made payable as follows: if the payee was a minor, then to the payee's parents in equal shares (or all to the survivor of them); or, if neither parent of a minor payee survives the payee, or if the payee was an adult, then to the Estate of the payee.

c.    To MOIEZHA DE ROSETTE DE ROSETTE RIVAS ("payee"):

    i.    A single payment of ONE HUNDRED FIVE THOUSAND EIGHT HUNDRED ONE DOLLARS AND NO CENTS ($105,801.00) paid to the account of MOIEZHA DE ROSETTE RIVAS. The payment shall be made on October 20, 2024;

    ii.    A single payment of ONE HUNDRED FIFTY-FOUR THOUSAND SIX HUNDRED SEVENTY-FIVE DOLLARS AND NO CENTS ($154,675.00) paid to the account of MOIEZHA DE ROSETTE RIVAS. The payment shall be made on October 20, 2029;

    iii.    A single payment of TWO HUNDRED FOURTEEN THOUSAND FOUR HUNDRED EIGHTEEN DOLLARS AND NO CENTS ($214,418.00) paid to the account of MOIEZHA DE ROSETTE RIVAS. The payment shall be made on October 20, 2034; and

    iv.    Lifetime monthly payments, guaranteed for thirty (30) years, each in the amount of TWO THOUSAND TWO HUNDRED EIGHTY-TWO DOLLARS AND NO CENTS ($2,282.00), paid to the account of MOIEZHA DE ROSETTE RIVAS. The first payment shall be made on October 20, 2017; the remaining payments shall be made on a monthly basis thereafter.

If a payee dies before the payment of the last periodic payment to which that payee is entitled, all remaining payments shall be made payable in accordance with a written designation of successor payee(s) signed by that payee, provided that any such designation shall be in a form acceptable to the payor and shall be sent to the payor prior to the payee's death. If at the time of the payee's death there is no valid designation in effect, or if none of the designated successor payees survives the payee, then all remaining payments shall instead be made payable as follows: if the payee was a minor, then to the payee's parents in equal shares (or all to the survivor of them); or, if neither parent of a minor payee survives the payee, or if the payee was an adult, then to the Estate of the payee.

d.    To    MOISES NORBERTO RIVAS JR. ("payee"):

    i.    A single payment of EIGHTY-EIGHT THOUSAND SIX HUNDRED

**Award Determination Periodic Payment Agreement**
**MOISES NORBERTO RIVAS – 212-002827**
**MIAC Assignment**

2

SEVENTY-FOUR DOLLARS AND NO CENTS ($88,674.00) paid to the account of MOISES NORBERTO RIVAS JR. The payment shall be made on November 7, 2022;

    ii.    A single payment of ONE HUNDRED TWENTY-SEVEN THOUSAND SIX HUNDRED EIGHTY-FIVE DOLLARS AND NO CENTS ($127,685.00) paid to the account of MOISES NORBERTO RIVAS JR. The payment shall be made on November 7, 2027;

    iii.    A single payment of ONE HUNDRED EIGHTY-ONE THOUSAND EIGHTY-ONE DOLLARS AND NO CENTS ($181,081.00) paid to the account of MOISES NORBERTO RIVAS JR. The payment shall be made on November 7, 2032;

    iv.    Lifetime monthly payments, guaranteed for thirty (30) years, each in the amount of ONE THOUSAND NINE HUNDRED FORTY DOLLARS AND NO CENTS ($1,940.00) paid to the account of MOISES NORBERTO RIVAS JR. The first payment shall be made on November 7, 2015; the remaining payments shall be made on a monthly basis thereafter.

If a payee dies before the payment of the last periodic payment to which that payee is entitled, all remaining payments shall be made payable in accordance with a written designation of successor payee(s) signed by that payee, provided that any such designation shall be in a form acceptable to the payor and shall be sent to the payor prior to the payee's death. If at the time of the payee's death there is no valid designation in effect, or if none of the designated successor payees survives the payee, then all remaining payments shall instead be made payable as follows: if the payee was a minor, then to the payee's parents in equal shares (or all to the survivor of them); or, if neither parent of a minor payee survives the payee, or if the payee was an adult, then to the Estate of the payee.

    e.    To    CRISTAL BARRAGAN ("payee"):

    i.    Lifetime monthly payments, guaranteed for thirty (30) years, each in the amount of SIX HUNDRED FOUR DOLLARS AND NO CENTS ($604.00) paid to the account of CRISTAL BARRAGAN. The first payment shall be made on September 30, 2007; the remaining payments shall be made on a monthly basis thereafter.

If a payee dies before the payment of the last periodic payment to which that payee is entitled, all remaining payments shall be made payable in accordance with a written designation of successor payee(s) signed by that payee, provided that any

**Award Determination Periodic Payment Agreement**    3
**MOISES NORBERTO RIVAS – 212-002827**
**MIAC Assignment**

such designation shall be in a form acceptable to the payor and shall be sent to the payor prior to the payee's death. If at the time of the payee's death there is no valid designation in effect, or if none of the designated successor payees survives the payee, then all remaining payments shall instead be made payable as follows: if the payee was a minor, then to the payee's parents in equal shares (or all to the survivor of them); or, if neither parent of a minor payee survives the payee, or if the payee was an adult, then to the Estate of the payee.

    f.    To KATHERIN MICHELL BARRAGAN ("payee"):

        i.    Lifetime monthly payments, guaranteed for thirty (30) years, each in the amount of FIVE HUNDRED TWO DOLLARS AND NO CENTS ($502.00) paid to the account of KATHERIN MICHELL BARRAGAN. The first payment shall be made on October 13, 2004; the remaining payments shall be made on a monthly basis thereafter.

If a payee dies before the payment of the last periodic payment to which that payee is entitled, all remaining payments shall be made payable in accordance with a written designation of successor payee(s) signed by that payee, provided that any such designation shall be in a form acceptable to the payor and shall be sent to the payor prior to the payee's death. If at the time of the payee's death there is no valid designation in effect, or if none of the designated successor payees survives the payee, then all remaining payments shall instead be made payable as follows: if the payee was a minor, then to the payee's parents in equal shares (or all to the survivor of them); or, if neither parent of a minor payee survives the payee, or if the payee was an adult, then to the Estate of the payee.

2.    The United States of America ("United States") hereby assigns the obligation to make the periodic payments described in paragraph 1(b), 1(c), 1(d), 1(e) and 1(f) ("Paras. 1(b), 1(c), 1(d), 1(e) and 1(f)") to the Metropolitan Insurance and Annuity Company ("MIAC"). MIAC hereby assumes this obligation pursuant to the terms and conditions set forth in this Award Determination Periodic Payment Agreement ("Agreement"). MIAC's obligation to make the periodic payments described in Paras. 1(b), 1(c), 1(d), 1(e) and 1(f) is equal to the obligation of the United States prior to the assignment.

3.    In exchange for assuming the obligation to make the periodic payments described in Paras. 1(b), 1(c), 1(d), 1(e) and 1(f), MIAC shall receive a payment from the United States Treasury in the amount of ONE MILLION FOUR HUNDRED SIXTY-FIVE THOUSAND ONE HUNDRED SIX DOLLARS AND NINETY-NINE CENTS ($1,465,106.99).

4.    The periodic payments in Paras. 1(b), 1(c), 1(d), 1(e) and 1(f) cannot be accelerated, deferred, increased or decreased by MOISES NORBERTO RIVAS JR., or MOIEZHA DE ROSETTE RIVAS, or CRISTAL BARRAGAN, or KATHERIN MICHELL BARRAGAN,

**Award Determination Periodic Payment Agreement**                  4
**MOISES NORBERTO RIVAS – 212-002827**
**MIAC Assignment**

or ELIZABETH RIVAS, or ELIZABETH RIVAS as Guardian of the Property of MOISES NORBERTO RIVAS JR., or ELIZABETH RIVAS as Guardian of the Property of MOIEZHA DE ROSETTE RIVAS, or ELIZABETH RIVAS as Guardian of the Property of CRISTAL BARRAGAN, or ELIZABETH RIVAS as Guardian of the Property of KATHERIN MICHELL BARRAGAN or any payee or beneficiary; nor shall MOISES NORBERTO RIVAS JR., or MOIEZHA DE ROSETTE RIVAS, or ELIZABETH RIVAS, or CRISTAL BARRAGAN, or KATHERIN MICHELL BARRAGAN, or ELIZABETH RIVAS as Guardian of the Property of MOISES NORBERTO RIVAS JR., or ELIZABETH RIVAS as Guardian of the Property of MOIEZHA DE ROSETTE RIVAS, or ELIZABETH RIVAS as Guardian of the Property of CRISTAL BARRAGAN, or ELIZABETH RIVAS as Guardian of the Property of KATHERIN MICHELL BARRAGAN or any payee or beneficiary have the right or power to transfer, by sale, gift, or otherwise, mortgage, encumber, or anticipate the periodic payments, or any part thereof, by assignment or otherwise. However, nothing in the prior sentence shall be deemed to prevent transfers in distribution of the interest in the periodic payments by reason of the death of the payee. The obligation of MIAC to make the periodic payments described in Paras. 1(b), 1(c), 1(d), 1(e) and 1(f) shall be discharged upon the mailing of valid checks in the amounts of such payments to the designated addresses of the payee(s) named above. Each payee shall be responsible for maintaining a current mailing address with MIAC.

5.      MIAC may fund its obligation to make the periodic payments described in Paras. 1(b), 1(c), 1(d), 1(e) and 1(f) through the purchase of annuity contracts that comply in all respects with the requirements of 26 U.S.C. §130(d) for a "qualified funding asset," in that any such annuity contract is issued by a life insurance company that:

      a.      is licensed to do business as an insurance company under the laws of any State;

      b.      has a minimum of $100,000,000 capital and surplus, exclusive of any mandatory security valuation reserve; and

      c.      has one of the following "Financial Strength Rating" scores from two of the following rating organizations – A.M. Best Company (A+, A+g, A+p, A+r, A+s, A++, A++g, A++p, A++r, or A++s), Moody's Investor Service (Aa3, Aa2, Aa1, or Aaa), Standard and Poor's (AA-, AA, AA+, or AAA), or Fitch (AA-, AA, AA+, or AAA).

6.      All rights of control in any annuity contract purchased pursuant to paragraph 5 above ("Para. 5") shall be and remain vested in MIAC exclusively. The rights of MOISES NORBERTO RIVAS JR., or MOIEZHA DE ROSETTE RIVAS, or CRISTAL BARRAGAN, or KATHERIN MICHELL BARRAGAN, or ELIZABETH RIVAS, or ELIZABETH RIVAS as Guardian of the Property of MOISES NORBERTO RIVAS JR., or ELIZABETH RIVAS as Guardian of the Property of MOIEZHA DE ROSETTE RIVAS, or

ELIZABETH RIVAS as Guardian of the Property of CRISTAL BARRAGAN, or ELIZABETH RIVAS as Guardian of the Property of KATHERIN MICHELL BARRAGAN or any payee or beneficiary, against MIAC shall be no greater than the rights of a general creditor.

7.      MIAC may have the issuer of any annuity contract purchased pursuant to Para. 5 send any payments under that annuity contract directly to the payees designated pursuant to Paras. 1(b), 1(c), 1(d), 1(e) and 1(f). Such direction of payments shall be solely for MIAC's convenience and shall not provide MOISES NORBERTO RIVAS JR., or MOIEZHA DE ROSETTE RIVAS, or CRISTAL BARRAGAN, or KATHERIN MICHELL BARRAGAN, or ELIZABETH RIVAS, or ELIZABETH RIVAS as Guardian of the Property of MOISES NORBERTO RIVAS JR., or ELIZABETH RIVAS as Guardian of the Property of MOIEZHA DE ROSETTE RIVAS, or ELIZABETH RIVAS as Guardian of the Property of CRISTAL BARRAGAN, or ELIZABETH RIVAS as Guardian of the Property of KATHERIN MICHELL BARRAGAN, or any other payee or beneficiary, with any rights of ownership or control over any such annuity contract or against the issuer of such a contract.

8.      ELIZABETH RIVAS and MOISES NORBERTO RIVAS JR., by and through his Guardian of the Property, ELIZABETH RIVAS, and MOIEZHA DE ROSETTE RIVAS, by and through her Guardian of the Property, ELIZABETH RIVAS, and CRISTAL BARRAGAN, by and through her Guardian of the Property, ELIZABETH RIVAS, and KATHERIN MICHELL BARRAGAN, by and through her Guardian of the Property, ELIZABETH RIVAS, understand and agree that, as a consequence of MIAC's assumption of the liability to make the periodic payments in Paras. 1(b), 1(c), 1(d), 1(e) and 1(f):

   a.      the obligation to make the periodic payments described in Paras. 1(b), 1(c), 1(d), 1(e) and 1(f) shall belong solely and exclusively to MIAC;

   b.      the United States does not guarantee or insure any of the periodic payments described in Paras. 1(b), 1(c), 1(d), 1(e) and 1(f); and

   c.      the United States does not guarantee or insure any payments under any annuity contract purchased to fund the periodic payments described Paras. 1(b), 1(c), 1(d), 1(e) and 1(f).

9.      ELIZABETH RIVAS and MOISES NORBERTO RIVAS JR., by and through his Guardian of the Property, ELIZABETH RIVAS, and MOIEZHA DE ROSETTE RIVAS, by and through her Guardian of the Property, ELIZABETH RIVAS, and CRISTAL BARRAGAN, by and through her Guardian of the Property, ELIZABETH RIVAS, and KATHERIN MICHELL BARRAGAN, by and through her Guardian of the Property, ELIZABETH RIVAS, further understand and agree that, as a consequence of MIAC's assumption of the liability to make the periodic payments in Paras. 1(b), 1(c), 1(d), 1(e) and 1(f), neither they, nor their successors-in-interest, shall have any rights against the United

Award Determination Periodic Payment Agreement                                    6
MOISES NORBERTO RIVAS – 212-002827
MIAC Assignment

States in the event of a default by either (1) MIAC on any of its obligations under this Agreement, or (2) the issuer of any annuity contract purchased pursuant to Para. 5 on any of its obligations under such an annuity contract. ELIZABETH RIVAS, in her own right and as Personal Representative of the MOISES NORBERTO RIVAS claim no. 212-002827, and MOISES NORBERTO RIVAS JR., by and through his Guardian of the Property, ELIZABETH RIVAS, and MOIEZHA DE ROSETTE RIVAS, by and through her Guardian of the Property, ELIZABETH RIVAS, and CRISTAL BARRAGAN, by and through her Guardian of the Property, ELIZABETH RIVAS, and KATHERIN MICHELL BARRAGAN, by and through her Guardian of the Property, ELIZABETH RIVAS, also understand and agree that upon the execution of this Agreement by all parties, the sole obligation of the United States under this Agreement, shall be to make the payments described in paragraph 1(a) ("Para. 1(a)") and in paragraph 3 above ("Para. 3").

10.     ELIZABETH RIVAS, in her own right and as Personal Representative of the MOISES NORBERTO RIVAS claim no. 212-002827,and MOISES NORBERTO RIVAS JR., by and through his Guardian of the Property, ELIZABETH RIVAS, and MOIEZHA DE ROSETTE RIVAS, by and through her Guardian of the Property, ELIZABETH RIVAS, and CRISTAL BARRAGAN, by and through her Guardian of the Property, ELIZABETH RIVAS, and KATHERIN MICHELL BARRAGAN, by and through her Guardian of the Property, ELIZABETH RIVAS, hereby consent to and accept MIAC's assumption of all liability for the periodic payments described in Paras. 1(b), 1(c), 1(d), 1(e) and 1(f). ELIZABETH RIVAS, in her own right and as Personal Representative of the MOISES NORBERTO RIVAS claim no. 212-002827, and MOISES NORBERTO RIVAS JR., by and through his Guardian of the Property, and ELIZABETH RIVAS, and MOIEZHA DE ROSETTE RIVAS, by and through her Guardian of the Property, ELIZABETH RIVAS, and CRISTAL BARRAGAN, by and through her Guardian of the Property, ELIZABETH RIVAS, and KATHERIN MICHELL BARRAGAN, by and through her Guardian of the Property, ELIZABETH RIVAS hereby agree that, once the payments described in Para 1(a) and in Para. 3 have been made, the United States shall be released from all obligations associated with the this claim for the death of MOISES NORBERTO RIVAS, including but not limited to the obligation to make the periodic payments described in Paras. 1(b), 1(c), 1(d), 1(e) and 1(f). Should MIAC, or its successor-in-interest, refuse to accept the payment described in Para. 3, this Agreement shall be void.

11.     The terms and conditions in this Agreement must be accepted in their entirety and without reservation by ELIZABETH RIVAS, in her own right and as Personal Representative of the MOISES NORBERTO RIVAS claim no. 212-002827, and MOISES NORBERTO RIVAS JR., by and through his Guardian of the Property, ELIZABETH RIVAS, and MOIEZHA DE ROSETTE RIVAS, by and through her Guardian of the Property, ELIZABETH RIVAS, and CRISTAL BARRAGAN, by and through her Guardian of the Property, ELIZABETH RIVAS, and KATHERIN MICHELL BARRAGAN, by and through her Guardian of the Property, ELIZABETH RIVAS and MIAC (the "Parties"). An executed copy of this Agreement bearing the signatures of each of the Parties must be

**Award Determination Periodic Payment Agreement**                                    7
**MOISES NORBERTO RIVAS – 212-002827**
**MIAC Assignment**

received by the Office of the Special Master no later than **Wednesday, June 9, 2004**. If an executed copy of this Agreement is not received by the above deadline, this Agreement shall be void.

The undersigned Parties hereby accept and agree to abide by the above stated terms and conditions of this Agreement. The Parties acknowledge that this document contains the entire Agreement between themselves and the United States. The Parties agree that they each have had a full and fair opportunity to consult with an attorney regarding the advisability of accepting the terms and conditions of this Agreement. The Parties agree that their acceptance of the terms and conditions of this Agreement has been made without reliance upon any statements by the United States, its attorneys, agents, employees or agencies. The parties specifically understand and agree that (1) the United States makes no representations regarding the tax consequences of accepting the terms and conditions of this Agreement and (2) that the United States makes no representation regarding whether this Agreement conforms to the requirements of Revenue Ruling 2003-115.

The Parties hereby waive any claim they may now have, or may hereafter acquire, against the United States, its agencies, and its present or former agents or employees, for any tax liability the Parties may incur as a result of, or in any way relating to, their acceptance of the terms and conditions of this Agreement.

**Award Determination Periodic Payment Agreement**                                           8
**MOISES NORBERTO RIVAS – 212-002827**
**MIAC Assignment**

_Elizabeth Rivas_
ELIZABETH RIVAS, in her own right and as
Personal Representative of the
MOISES NORBERTO RIVAS claim no. 212-002827

State of New York) ss.:
County of New York

On the 07 day of June    in the year 2004 before me, the undersigned, a notary public
in and for said state, personally appeared ELIZABETH RIVAS, in her own right and as
Personal Representative of the MOISES NORBERTO RIVAS claim no. 212-002827,
personally known to me or proved to me on the basis of satisfactory evidence to be the
individual whose name is subscribed to the within instrument and acknowledged to me that
she executed the same in her capacities, and that by her signature on the instrument, the
individual, or the person upon behalf of which the individual acted, executed the instrument.

_Jahjaira Santiago_
(Signature and office of individual taking acknowledgment.)

JAHJAIRA SANTIAGO
Notary Public - State of New York
No. 01SA6105766
Qualified in New York County
My Commission Expires Feb. 17, 2008

**Award Determination Periodic Payment Agreement**                                    9
**MOISES NORBERTO RIVAS – 212-002827**
**MIAC Assignment**