# EXHIBIT O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN) |
|---|---|

This document relates to:

*August Bernaerts, et al. v. Islamic Republic of Iran*, No. 1:19-cv-11865 (GBD) (SN)

## <u>DECLARATION OF FAMILIAL RELATIONSHIP</u>

I, Katherin Pleitez *nee* Barragan, declare under penalty of perjury, as provided for by 28 U.S.C. § 1746, that the following statements are true and correct:

1.      My name is Katherin Pleitez *nee* Barragan, and I am the step-daughter of Moises Rivas ("Moises") who died on September 11, 2001 ("9/11") when the World Trade Center collapsed. I submit this Declaration to demonstrate I am the functional equivalent of Moises' daughter.

2.      In 1996, Moises came into my life when he started dating my mother. I was nine years old at the time. Shortly after, he moved in with us and we began living together as a family. On May 15, 1996, Moises and my mother got married. We lived in the Bronx with my mother and younger sister, and eventually my baby siblings (Moises and my mother had a baby boy and girl), and then moved to Washington Heights. We lived together until Moises' tragic death on 9/11.

3.      Moises supported our family and took care of us. He was the sole financial support of our family as my mother was a stay-at-home mother. Moises paid the rent, took us clothes shopping, bought us school clothes and supplies, bought me NSYNC posters, and CDs. Most importantly, Moises treated me like his daughter, both emotionally and socially, and made

our family whole. Moises was a true family man. He cooked family dinners, took us to a family

Christmas party at Windows on the World, and to Jones Beach.

4.      Moises strongly believed in education and encouraged me to do well in school.

He taught me Spanish, and I helped him learn English.

5.      One of my fondest childhood memories is when Moises and I got up early and he

bought me a concert ticket to watch NSYNC perform at Madison Square Garden. NSYNC was

my favorite band and it meant so much to me that he got me a ticket.  I remember when he

bought me a Mickey Mouse pajama shirt from the Disney store. It was my favorite shirt and was

so comfortable. Moises was very athletic and played on a soccer team in Washington Heights.

He was also musically talented and played the guitar. I vividly remember the night before 9/11.

He played his guitar in the living room and asked me to sing with him.

6.      There is no doubt that I was Moises' family. We went to his family gatherings and

celebrations together, and we also went on overnight trips to his family's house in Queens. I was

close with Moises' family. I spent New Year's with them and had sleepovers at his cousin's

house. I was also part of Moises' cousin's Sweet 16 party as one of the 16 girls. My mother's

extended family loved Moises dearly. He had a great sense of humor and was lovable.

7.      Moises and I had a special bond and were very close. *See* photos attached as

Exhibit 1. Moises made it known to others that I was his daughter and he called me *mija* (short

for *mi hija*—Spanish for "my daughter"). He gave me advice like a loving father and encouraged

me to succeed and chase my dreams. After my biological father passed away when I was six

years old, I had no father in my life. Moises filled that void and was like a father figure in my

life. It meant so much to me that he was always present and made me feel important and taken

care of.

8.      In fact, Moises claimed my sister and I as dependents on his tax returns, and my sister and I received social security benefits and an award from the September 11th Victim Compensation Fund. *See* Exhibit 2.

9.      9/11 ripped our family apart. We did not want to believe that Moises left this world so suddenly and unexpectedly, but we eventually had to accept the terrible truth that he was really gone. I began suffering from anxiety and depression and having trouble in school. Things were never the same again.

10.     When I woke up on 9/11, I never imagined I would never see Moises again. I feel Moises' loss every day and share fond memories of him.

11.     Moises and I had a very close relationship akin to a father and daughter. Accordingly, I should be deemed the functional equivalent of Moises' daughter.

Executed on: __10/20/21__

Name (Signature): _____

Name (Print):   __Katherin Pleitez *nee* Barragan_____

3

# EXHIBIT 1





Case 1:03-md-01570-GBD-SN   Document 7692-16   Filed 01/13/22   Page 8 of 19





# EXHIBIT 2



**U.S. Department of Justice**
September 11th Victim Compensation Fund

_____

P.O. Box 18698
Washington, D.C. 20036-8698

### AWARD DETERMINATION
### PERIODIC PAYMENT AGREEMENT

In accordance with Title IV of the Air Transportation Safety and System Stabilization Act, the Special Master of the September 11th Victim Compensation Fund (the "Fund") has determined the award for claim no. 212-002827 for the death of MOISES NORBERTO RIVAS pursuant to the authority vested in him.  This award shall be made subject to the terms and conditions stated below.

### Terms and Conditions

1.  The award for this claim is:

    a.  A single payment in the amount of TWO HUNDRED THOUSAND DOLLARS AND NO CENTS ($200,000.00) paid to the account of ELIZABETH RIVAS.

    b.  To ELIZABETH RIVAS ("payee"):

        i.  Lifetime monthly payments, guaranteed for THIRTY (30) years, each in the amount of TWO THOUSAND EIGHT HUNDRED TWENTY-SEVEN DOLLARS AND NO CENTS ($2,827.00), increasing at a rate of TWO PERCENT (2%) compounded annually, paid to the account of ELIZABETH RIVAS.  The first payment shall be made sixty (60) days after the structured settlement annuity is funded; the remaining payments shall be made on a monthly basis thereafter;

        If a payee dies before the payment of the last periodic payment to which that payee is entitled, all remaining payments shall be made payable in accordance with a written designation of successor payee(s) signed by that payee, provided that any such designation shall be in a form acceptable to the payor and shall be sent to the payor prior to the payee's death.  If at the time of the payee's death there is no valid designation in effect, or if none of the designated successor payees survives the

**Award Determination Periodic Payment Agreement**                                  1
**MOISES NORBERTO RIVAS – 212-002827**
**MIAC Assignment**

payee, then all remaining payments shall instead be made payable as follows: if the payee was a minor, then to the payee's parents in equal shares (or all to the survivor of them); or, if neither parent of a minor payee survives the payee, or if the payee was an adult, then to the Estate of the payee.

c.   To MOIEZHA DE ROSETTE DE ROSETTE RIVAS ("payee"):

    i.   A single payment of ONE HUNDRED FIVE THOUSAND EIGHT HUNDRED ONE DOLLARS AND NO CENTS ($105,801.00) paid to the account of MOIEZHA DE ROSETTE RIVAS. The payment shall be made on October 20, 2024;

    ii.   A single payment of ONE HUNDRED FIFTY-FOUR THOUSAND SIX HUNDRED SEVENTY-FIVE DOLLARS AND NO CENTS ($154,675.00) paid to the account of MOIEZHA DE ROSETTE RIVAS. The payment shall be made on October 20, 2029;

    iii.   A single payment of TWO HUNDRED FOURTEEN THOUSAND FOUR HUNDRED EIGHTEEN DOLLARS AND NO CENTS ($214,418.00) paid to the account of MOIEZHA DE ROSETTE RIVAS. The payment shall be made on October 20, 2034; and

    iv.   Lifetime monthly payments, guaranteed for thirty (30) years, each in the amount of TWO THOUSAND TWO HUNDRED EIGHTY-TWO DOLLARS AND NO CENTS ($2,282.00), paid to the account of MOIEZHA DE ROSETTE RIVAS. The first payment shall be made on October 20, 2017; the remaining payments shall be made on a monthly basis thereafter.

If a payee dies before the payment of the last periodic payment to which that payee is entitled, all remaining payments shall be made payable in accordance with a written designation of successor payee(s) signed by that payee, provided that any such designation shall be in a form acceptable to the payor and shall be sent to the payor prior to the payee's death. If at the time of the payee's death there is no valid designation in effect, or if none of the designated successor payees survives the payee, then all remaining payments shall instead be made payable as follows: if the payee was a minor, then to the payee's parents in equal shares (or all to the survivor of them); or, if neither parent of a minor payee survives the payee, or if the payee was an adult, then to the Estate of the payee.

d.   To   MOISES NORBERTO RIVAS JR. ("payee"):

    i.   A single payment of EIGHTY-EIGHT THOUSAND SIX HUNDRED

Award Determination Periodic Payment Agreement                                    2
MOISES NORBERTO RIVAS – 212-002827
MIAC Assignment

SEVENTY-FOUR DOLLARS AND NO CENTS ($88,674.00) paid to the account of MOISES NORBERTO RIVAS JR. The payment shall be made on November 7, 2022;

ii.   A single payment of ONE HUNDRED TWENTY-SEVEN THOUSAND SIX HUNDRED EIGHTY-FIVE DOLLARS AND NO CENTS ($127,685.00) paid to the account of MOISES NORBERTO RIVAS JR. The payment shall be made on November 7, 2027;

iii.   A single payment of ONE HUNDRED EIGHTY-ONE THOUSAND EIGHTY-ONE DOLLARS AND NO CENTS ($181,081.00) paid to the account of MOISES NORBERTO RIVAS JR. The payment shall be made on November 7, 2032;

iv.   Lifetime monthly payments, guaranteed for thirty (30) years, each in the amount of ONE THOUSAND NINE HUNDRED FORTY DOLLARS AND NO CENTS ($1,940.00) paid to the account of MOISES NORBERTO RIVAS JR. The first payment shall be made on November 7, 2015; the remaining payments shall be made on a monthly basis thereafter.

If a payee dies before the payment of the last periodic payment to which that payee is entitled, all remaining payments shall be made payable in accordance with a written designation of successor payee(s) signed by that payee, provided that any such designation shall be in a form acceptable to the payor and shall be sent to the payor prior to the payee's death. If at the time of the payee's death there is no valid designation in effect, or if none of the designated successor payees survives the payee, then all remaining payments shall instead be made payable as follows: if the payee was a minor, then to the payee's parents in equal shares (or all to the survivor of them); or, if neither parent of a minor payee survives the payee, or if the payee was an adult, then to the Estate of the payee.

e.   To   CRISTAL BARRAGAN ("payee"):

i.   Lifetime monthly payments, guaranteed for thirty (30) years, each in the amount of SIX HUNDRED FOUR DOLLARS AND NO CENTS ($604.00) paid to the account of CRISTAL BARRAGAN. The first payment shall be made on September 30, 2007; the remaining payments shall be made on a monthly basis thereafter.

If a payee dies before the payment of the last periodic payment to which that payee is entitled, all remaining payments shall be made payable in accordance with a written designation of successor payee(s) signed by that payee, provided that any

such designation shall be in a form acceptable to the payor and shall be sent to the payor prior to the payee's death. If at the time of the payee's death there is no valid designation in effect, or if none of the designated successor payees survives the payee, then all remaining payments shall instead be made payable as follows: if the payee was a minor, then to the payee's parents in equal shares (or all to the survivor of them); or, if neither parent of a minor payee survives the payee, or if the payee was an adult, then to the Estate of the payee.

    f.    To KATHERIN MICHELL BARRAGAN ("payee"):

        i.    Lifetime monthly payments, guaranteed for thirty (30) years, each in the amount of FIVE HUNDRED TWO DOLLARS AND NO CENTS ($502.00) paid to the account of KATHERIN MICHELL BARRAGAN. The first payment shall be made on October 13, 2004; the remaining payments shall be made on a monthly basis thereafter.

        If a payee dies before the payment of the last periodic payment to which that payee is entitled, all remaining payments shall be made payable in accordance with a written designation of successor payee(s) signed by that payee, provided that any such designation shall be in a form acceptable to the payor and shall be sent to the payor prior to the payee's death. If at the time of the payee's death there is no valid designation in effect, or if none of the designated successor payees survives the payee, then all remaining payments shall instead be made payable as follows: if the payee was a minor, then to the payee's parents in equal shares (or all to the survivor of them); or, if neither parent of a minor payee survives the payee, or if the payee was an adult, then to the Estate of the payee.

2.    The United States of America ("United States") hereby assigns the obligation to make the periodic payments described in paragraph 1(b), 1(c), 1(d), 1(e) and 1(f) ("Paras. 1(b), 1(c), 1(d), 1(e) and 1(f)") to the Metropolitan Insurance and Annuity Company ("MIAC"). MIAC hereby assumes this obligation pursuant to the terms and conditions set forth in this Award Determination Periodic Payment Agreement ("Agreement"). MIAC's obligation to make the periodic payments described in Paras. 1(b), 1(c), 1(d), 1(e) and 1(f) is equal to the obligation of the United States prior to the assignment.

3.    In exchange for assuming the obligation to make the periodic payments described in Paras. 1(b), 1(c), 1(d), 1(e) and 1(f), MIAC shall receive a payment from the United States Treasury in the amount of ONE MILLION FOUR HUNDRED SIXTY-FIVE THOUSAND ONE HUNDRED SIX DOLLARS AND NINETY-NINE CENTS ($1,465,106.99).

4.    The periodic payments in Paras. 1(b), 1(c), 1(d), 1(e) and 1(f) cannot be accelerated, deferred, increased or decreased by MOISES NORBERTO RIVAS JR., or MOIEZHA DE ROSETTE RIVAS, or CRISTAL BARRAGAN, or KATHERIN MICHELL BARRAGAN,

or ELIZABETH RIVAS, or ELIZABETH RIVAS as Guardian of the Property of MOISES NORBERTO RIVAS JR., or ELIZABETH RIVAS as Guardian of the Property of MOIEZHA DE ROSETTE RIVAS, or ELIZABETH RIVAS as Guardian of the Property of CRISTAL BARRAGAN, or ELIZABETH RIVAS as Guardian of the Property of KATHERIN MICHELL BARRAGAN or any payee or beneficiary; nor shall MOISES NORBERTO RIVAS JR., or MOIEZHA DE ROSETTE RIVAS, or ELIZABETH RIVAS, or CRISTAL BARRAGAN, or KATHERIN MICHELL BARRAGAN, or ELIZABETH RIVAS as Guardian of the Property of MOISES NORBERTO RIVAS JR., or ELIZABETH RIVAS as Guardian of the Property of MOIEZHA DE ROSETTE RIVAS, or ELIZABETH RIVAS as Guardian of the Property of CRISTAL BARRAGAN, or ELIZABETH RIVAS as Guardian of the Property of KATHERIN MICHELL BARRAGAN or any payee or beneficiary have the right or power to transfer, by sale, gift, or otherwise, mortgage, encumber, or anticipate the periodic payments, or any part thereof, by assignment or otherwise. However, nothing in the prior sentence shall be deemed to prevent transfers in distribution of the interest in the periodic payments by reason of the death of the payee. The obligation of MIAC to make the periodic payments described in Paras. 1(b), 1(c), 1(d), 1(e) and 1(f) shall be discharged upon the mailing of valid checks in the amounts of such payments to the designated addresses of the payee(s) named above. Each payee shall be responsible for maintaining a current mailing address with MIAC.

5.      MIAC may fund its obligation to make the periodic payments described in Paras. 1(b), 1(c), 1(d), 1(e) and 1(f) through the purchase of annuity contracts that comply in all respects with the requirements of 26 U.S.C. §130(d) for a "qualified funding asset," in that any such annuity contract is issued by a life insurance company that:

    a.      is licensed to do business as an insurance company under the laws of any State;

    b.      has a minimum of $100,000,000 capital and surplus, exclusive of any mandatory security valuation reserve; and

    c.      has one of the following "Financial Strength Rating" scores from two of the following rating organizations - A.M. Best Company (A+, A+g, A+p, A+r, A+s, A++, A++g, A++p, A++r, or A++s), Moody's Investor Service (Aa3, Aa2, Aa1, or Aaa), Standard and Poor's (AA-, AA, AA+, or AAA), or Fitch (AA-, AA, AA+, or AAA).

6.      All rights of control in any annuity contract purchased pursuant to paragraph 5 above ("Para. 5") shall be and remain vested in MIAC exclusively. The rights of MOISES NORBERTO RIVAS JR., or MOIEZHA DE ROSETTE RIVAS, or CRISTAL BARRAGAN, or KATHERIN MICHELL BARRAGAN, or ELIZABETH RIVAS, or ELIZABETH RIVAS as Guardian of the Property of MOISES NORBERTO RIVAS JR., or ELIZABETH RIVAS as Guardian of the Property of MOIEZHA DE ROSETTE RIVAS, or

ELIZABETH RIVAS as Guardian of the Property of CRISTAL BARRAGAN, or ELIZABETH RIVAS as Guardian of the Property of KATHERIN MICHELL BARRAGAN or any payee or beneficiary, against MIAC shall be no greater than the rights of a general creditor.

7.      MIAC may have the issuer of any annuity contract purchased pursuant to Para. 5 send any payments under that annuity contract directly to the payees designated pursuant to Paras. 1(b), 1(c), 1(d), 1(e) and 1(f).  Such direction of payments shall be solely for MIAC's convenience and shall not provide MOISES NORBERTO RIVAS JR., or MOIEZHA DE ROSETTE RIVAS, or CRISTAL BARRAGAN, or KATHERIN MICHELL BARRAGAN, or ELIZABETH RIVAS, or ELIZABETH RIVAS as Guardian of the Property of MOISES NORBERTO RIVAS JR., or ELIZABETH RIVAS as Guardian of the Property of MOIEZHA DE ROSETTE RIVAS, or ELIZABETH RIVAS as Guardian of the Property of CRISTAL BARRAGAN, or ELIZABETH RIVAS as Guardian of the Property of KATHERIN MICHELL BARRAGAN, or any other payee or beneficiary, with any rights of ownership or control over any such annuity contract or against the issuer of such a contract.

8.      ELIZABETH RIVAS and MOISES NORBERTO RIVAS JR., by and through his Guardian of the Property, ELIZABETH RIVAS, and MOIEZHA DE ROSETTE RIVAS, by and through her Guardian of the Property, ELIZABETH RIVAS, and CRISTAL BARRAGAN, by and through her Guardian of the Property, ELIZABETH RIVAS, and KATHERIN MICHELL BARRAGAN, by and through her Guardian of the Property, ELIZABETH RIVAS, understand and agree that, as a consequence of MIAC's assumption of the liability to make the periodic payments in Paras. 1(b), 1(c), 1(d), 1(e) and 1(f):

        a.      the obligation to make the periodic payments described in Paras. 1(b), 1(c), 1(d), 1(e) and 1(f) shall belong solely and exclusively to MIAC;

        b.      the United States does not guarantee or insure any of the periodic payments described in Paras. 1(b), 1(c), 1(d), 1(e) and 1(f); and

        c.      the United States does not guarantee or insure any payments under any annuity contract purchased to fund the periodic payments described Paras. 1(b), 1(c), 1(d), 1(e) and 1(f).

9.      ELIZABETH RIVAS and MOISES NORBERTO RIVAS JR., by and through his Guardian of the Property, ELIZABETH RIVAS, and MOIEZHA DE ROSETTE RIVAS, by and through her Guardian of the Property, ELIZABETH RIVAS, and CRISTAL BARRAGAN, by and through her Guardian of the Property, ELIZABETH RIVAS, and KATHERIN MICHELL BARRAGAN, by and through her Guardian of the Property, ELIZABETH RIVAS, further understand and agree that, as a consequence of MIAC's assumption of the liability to make the periodic payments in Paras. 1(b), 1(c), 1(d), 1(e) and 1(f), neither they, nor their successors-in-interest, shall have any rights against the United

**Award Determination Periodic Payment Agreement**                                    6
**MOISES NORBERTO RIVAS – 212-002827**
**MIAC Assignment**

States in the event of a default by either (1) MIAC on any of its obligations under this
Agreement, or (2) the issuer of any annuity contract purchased pursuant to Para. 5 on any of
its obligations under such an annuity contract. ELIZABETH RIVAS, in her own right and as
Personal Representative of the MOISES NORBERTO RIVAS claim no. 212-002827, and
MOISES NORBERTO RIVAS JR., by and through his Guardian of the Property,
ELIZABETH RIVAS, and MOIEZHA DE ROSETTE RIVAS, by and through her Guardian
of the Property, ELIZABETH RIVAS, and CRISTAL BARRAGAN, by and through her
Guardian of the Property, ELIZABETH RIVAS, and KATHERIN MICHELL BARRAGAN,
by and through her Guardian of the Property, ELIZABETH RIVAS, also understand and
agree that upon the execution of this Agreement by all parties, the sole obligation of the
United States under this Agreement, shall be to make the payments described in paragraph
1(a) ("Para. 1(a)") and in paragraph 3 above ("Para. 3").

10.     ELIZABETH RIVAS, in her own right and as Personal Representative of the
MOISES NORBERTO RIVAS claim no. 212-002827,and MOISES NORBERTO RIVAS
JR., by and through his Guardian of the Property, ELIZABETH RIVAS, and MOIEZHA DE
ROSETTE RIVAS, by and through her Guardian of the Property, ELIZABETH RIVAS, and
CRISTAL BARRAGAN, by and through her Guardian of the Property, ELIZABETH
RIVAS, and KATHERIN MICHELL BARRAGAN, by and through her Guardian of the
Property, ELIZABETH RIVAS, hereby consent to and accept MIAC's assumption of all
liability for the periodic payments described in Paras. 1(b), 1(c), 1(d), 1(e) and 1(f).
ELIZABETH RIVAS, in her own right and as Personal Representative of the MOISES
NORBERTO RIVAS claim no. 212-002827, and MOISES NORBERTO RIVAS JR., by and
through his Guardian of the Property, and ELIZABETH RIVAS, and MOIEZHA DE
ROSETTE RIVAS, by and through her Guardian of the Property, ELIZABETH RIVAS, and
CRISTAL BARRAGAN, by and through her Guardian of the Property, ELIZABETH
RIVAS, and KATHERIN MICHELL BARRAGAN, by and through her Guardian of the
Property, ELIZABETH RIVAS hereby agree that, once the payments described in Para 1(a)
and in Para. 3 have been made, the United States shall be released from all obligations
associated with the this claim for the death of MOISES NORBERTO RIVAS, including but
not limited to the obligation to make the periodic payments described in Paras. 1(b), 1(c),
1(d), 1(e) and 1(f). Should MIAC, or its successor-in-interest, refuse to accept the payment
described in Para. 3, this Agreement shall be void.

11.     The terms and conditions in this Agreement must be accepted in their entirety and
without reservation by ELIZABETH RIVAS, in her own right and as Personal
Representative of the MOISES NORBERTO RIVAS claim no. 212-002827, and MOISES
NORBERTO RIVAS JR., by and through his Guardian of the Property, ELIZABETH
RIVAS, and MOIEZHA DE ROSETTE RIVAS, by and through her Guardian of the
Property, ELIZABETH RIVAS, and CRISTAL BARRAGAN, by and through her Guardian
of the Property, ELIZABETH RIVAS, and KATHERIN MICHELL BARRAGAN, by and
through her Guardian of the Property, ELIZABETH RIVAS and MIAC (the "Parties"). An
executed copy of this Agreement bearing the signatures of each of the Parties must be

**Award Determination Periodic Payment Agreement**                                      7
**MOISES NORBERTO RIVAS – 212-002827**
**MIAC Assignment**

received by the Office of the Special Master no later than **Wednesday, June 9, 2004**. If an executed copy of this Agreement is not received by the above deadline, this Agreement shall be void.

The undersigned Parties hereby accept and agree to abide by the above stated terms and conditions of this Agreement. The Parties acknowledge that this document contains the entire Agreement between themselves and the United States. The Parties agree that they each have had a full and fair opportunity to consult with an attorney regarding the advisability of accepting the terms and conditions of this Agreement. The Parties agree that their acceptance of the terms and conditions of this Agreement has been made without reliance upon any statements by the United States, its attorneys, agents, employees or agencies. The parties specifically understand and agree that (1) the United States makes no representations regarding the tax consequences of accepting the terms and conditions of this Agreement and (2) that the United States makes no representation regarding whether this Agreement conforms to the requirements of Revenue Ruling 2003-115.

The Parties hereby waive any claim they may now have, or may hereafter acquire, against the United States, its agencies, and its present or former agents or employees, for any tax liability the Parties may incur as a result of, or in any way relating to, their acceptance of the terms and conditions of this Agreement.

**Award Determination Periodic Payment Agreement**          8
**MOISES NORBERTO RIVAS – 212-002827**
**MIAC Assignment**

*Elizabeth Rivas*

ELIZABETH RIVAS, in her own right and as
Personal Representative of the
MOISES NORBERTO RIVAS claim no. 212-002827

State of New York)  ss.:
County of New York

On the 07  day of June   in the year 2004 before me, the undersigned, a notary public
in and for said state, personally appeared ELIZABETH RIVAS, in her own right and as
Personal Representative of the MOISES NORBERTO RIVAS claim no. 212-002827,
personally known to me or proved to me on the basis of satisfactory evidence to be the
individual whose name is subscribed to the within instrument and acknowledged to me that
she executed the same in her capacities, and that by her signature on the instrument, the
individual, or the person upon behalf of which the individual acted, executed the instrument.

*Jahjaira Santiago*

(Signature and office of individual taking acknowledgment.)

JAHJAIRA SANTIAGO
Notary Public - State of New York
No. 01SA6105766
Qualified in New York County
My Commission Expires Feb. 17, 2008

**Award Determination Periodic Payment Agreement**                                    9
**MOISES NORBERTO RIVAS – 212-002827**
**MIAC Assignment**