# EXHIBIT Q

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN) |
| --- | --- |

This document relates to:

*Jeanmarie Hargrave, et al. v. Islamic Republic of Iran*, No. 1:20-cv-09387 (GBD) (SN)

## <u>DECLARATION OF FAMILIAL RELATIONSHIP</u>

I, Danny J. Marino, declare under penalty of perjury, as provided for by 28 U.S.C. § 1746, that the following statements are true and correct:

1.    My name is Danny J. Marino, and I am the step-son of Paul Ruback ("Paul") who died on September 11, 2001 ("9/11") when the World Trade Center collapsed. I submit this Declaration to demonstrate I am the functional equivalent of Paul's son.

2.    Paul came into my life in 1977 or 1978 when he started dating my mother. I was around 12 or 13 years old at the time. Soon after, Paul moved into our home, and we became a family. Shortly thereafter, Paul and my mother got married and they bought a house in Newburgh, where Paul, my mother, my sister, and I lived together as a family.

3.    Paul supported our family and took care of us. He was the main financial support as my mother was mostly a stay-at-home mother. Paul bought my sister and me birthday and Christmas presents, and we never wanted for anything. In addition to financial support, Paul treated me like his son, both emotionally and socially, and made our family whole. *See* photos attached as Exhibit 1. Paul was a true family man. He loved to cook dishes he learned to make at his firehouse (Ladder 25), we had dinner as a family and told stories about our days, and we had family game nights where we played cards, Pictionary, Monopoly, and Trivial Pursuit. Paul was

incredibly smart and was one of those people who knew most of the answers on Jeopardy!.
When it rained, our family sat on our screened-in porch and told jokes and laughed. Paul loved
the outdoors and frequently took us camping. I remember the laughs we had and songs we sang
sitting around the campfire. We went on family vacations to Lake George, New Mexico, and
Wyoming. We had a blast going white water rafting in Wyoming.

4.      Paul strongly believed in education and stressed the importance of reading. He
helped me with my homework and encouraged me to do well in school.

5.      One of my fondest memories is when we had our first overnight stay at Paul's
apartment before he moved in with us. I woke up early and looked through his record albums. He
came into the room, put them in the record player, and introduced me to great music. In fact,
Paul bought me my first album: Pink Floyd, The Wall. We were best friends and he taught me
everything. I remember when Paul took me camping in the Catskills for my 13th birthday. We
walked 10 miles up a mountain and stood above the clouds. Whenever I see blueberries, I think
of Paul because we picked blueberries while hiking and had them for breakfast. Once I became
an adult, we sat on the porch with a beer and talked for hours about a variety of topics. We lived
near each other and remained very close. We had so many wonderful times together and looked
forward to spending more time and creating more memories together.

6.      Paul took us to Christmas parties at Ladder 25. We spent holidays with Paul's
family, and they loved us as if we were Paul's biological children. We decorated the Christmas
tree, put up the lights, and sang Christmas carols. In fact, I am still close with Paul's family and
spend Thanksgiving with them every year.

7.      There is no doubt Paul was my father. He gave me advice (and, of course,
discipline) like any loving father. While my biological father was in my life, I spent much more

time and was closer with Paul. I can never be as close with another man as I was with Paul. He was my father and a great man. It meant so much to me that he was always present and made sure I felt important. I recently adopted my granddaughter and I think about all of the things Paul did for me and I want to be the same person for her.

8.      In fact, Paul's will named my sister and I as beneficiaries in the event my mother predeceased Paul (*see* will attached as Exhibit 2), Paul claimed my sister and I as dependents on his tax returns when we were minors, my sister and I received support from the Twin Towers Fund, and I received an out-of-court settlement with the airlines.

9.      9/11 ripped our family apart. When I woke up on September 11, 2001, I never imagined I would never see Paul again. I did not want to believe Paul left this world so suddenly and unexpectedly, but I eventually had to accept the terrible truth that he was really gone. I was devastated by Paul's tragic death. I was robbed of a father and friend. I feel Paul's loss every day and share fond memories of him. I would give anything to have more night on the porch with Paul.

10.     Paul and I had a very close relationship akin to a father and son and we considered each other to be father and son in every way. Accordingly, I should be deemed the functional equivalent of Paul's son.

Executed on: _Oct 25, 2021_

Name (Signature): _[signature]_

Name (Print):  Danny J. Marino

3

docs-100414703.1

# EXHIBIT 1

Case 1:03-md-01570-GBD-SN   Document 7592-18   Filed 01/13/22   Page 6 of 20























# EXHIBIT 2



## PAUL RUBACK

I, PAUL RUBACK, presently residing at ████████████, in the Town
of Newburgh, County of Orange and State of New York, being of sound and disposing mind
and memory, do hereby make, publish and declare this to be my Last Will and Testament,
hereby revoking any and all Wills and Codicils by me at any time heretofore made.

FIRST:    I direct the payment of all my debts and funeral expenses
as soon after my death as may be practicable.

SECOND:    All estate, inheritance, succession, legacy and other
death duties or taxes of any nature which may be assessed or imposed upon my estate
shall be paid out of my residuary estate as part of the expenses of administration and
with no right of reimbursement from any of the legatees, devisees or beneficiaries hereunder.

THIRD:    I hereby give, devise and bequeath all of my estate, whether
it be real or personal property, or both, of whatsoever kind or nature and wheresoever
situate, of which Imay die seized or possessed, or in which I may have any interest or
over which I may have any power of appointment or testamentary disposition, to my wife,
RITA LYNNE RUBACK.  However, if my said wife shall predecease me or if we should die as
the result of a common disaster or under such circumstances that there is not sufficient
evidence to determine the order of our deaths, I give, devise and bequeath my said property
to the following:  DANNY MARINO, DENYSE MARINO, DAVID RUBACK, GINA RUBACK and SHANNON RUBACK,
to be divided equally, per stirpes and not per capita.  In the event that any one of my
beneficiaries shall predecease me or if we should die as the result of a common disaster,
I give, devise and bequeath that beneficiary's portion of my estate to my surviving bene-
ficiaries at that time, to be divided equally, per stirpes and not per capita, but, subject,
however, to the provisions hereinafter made.

FOURTH:    In the event that any devisee or legatee under my
Will shall at the time such party be entitled to receive a share of my estate be under
the age of twenty-one (21) years, I direct that such shares be paid over, instead of to
such minor legatee or devisee, to my Trustee hereinafter named, IN TRUST, NEVERTHELESS,
for the following uses and purposes:

A.  To receive such share of my estate, to invest and reinvest the same, and to
apply the income therefrom to the benefit, health, education and welfare of such beneficiary.
My Trustee, whether he be the person herein named or any other person duly designated or
appointed, has the power to invade the principal of the trust for the benefit, health,

education and welfare of any beneficiary, and this power may be exercised by the Trustee or her successor, at any time she deem it expedient so to do in her sole discretion.

B.  Upon such beneficiary reaching the age of twenty-one (21) years, to pay over such share, together with any accumulation thereon, to such beneficiary, to be his or hers, as the case may be, absolutely and forever.

C.  I nominate, constitute and appoint as Trustee hereunder, DENYSE MARINO. If she shall predecease me or fail to qualify, or having qualified, should die, resign or become incapacitated, I appoint as alternate Trustee, PATRICIA KEHRBERGER. I direct that no bond or other security shall be required of them for their faithful performance of their duties as Trustee in the State of New York or elsewhere.

FIFTH:       I nominate, constitute and appoint as Guardian of my minor children me surviving the said, DENYSE MARINO. If she shall predecease me or fail to qualify, or having qualified, should die, resign or become incapacitated, I appoint as alternate Guardian, PATRICIA KEHRBERGER. I direct that no bond or other security shall be required of my Guardian or alternate Guardian for the faithful performance of their duties as Guardian in the State of New York or elsewhere.

SIXTH:       I nominate, constitute and appoint, my wife, RITA LYNNE RUBACK, as Executrix of this, my Will. If she should predecease me or fail to qualify or, having qualified, should die, resign or become incapacitated, I appoint the said DENYSE MARINO, as Executrix in her place and stead. Neither my Executrix nor my alternate Executrix shall be required to furnish any bond or other security for the faithful performance of their duties, either in the State of New York or elsewhere.

SEVENTH:     I give to my Executrix , my alternate Executrix and my Trustees full power to sell any real or personal property, at public or private sale, upon such terms and conditions, and at such times as to them may seem advisable, either for cash or credit, or partly for cash and partly for credit; to exchange, partition, lease, sublease, mortgage, pledge or encumber any real property, upon such terms as to them may seem advisable; to invest or reinvest all of the property in their possession in bonds, mortgages or real estate, either in the State of New York or elsewhere, stock or other securities, or property, real, personal, foreign or domestic; to keep the funds of my estate or of any trust on deposit with a bank or banks for so long a period as they may deem advisable; to join in or become a party to, oppose or otherwise participate in any plan or agreement of reorganization, merger, consolidation or other capital adjustment or dissolution of any corporation, the stocks, bonds or securities of which may at any time be held by my Executor, my alternate Executor and Trustee to the same extent as if they were the absolute, individual owners of the same; to make any payment, distribution or

-2-

undivided interest, even though shares be composed differently; to borrow money for the proper administration of my estate and of any trust created hereunder and to give security for such loan; and to do any and all things reasonable and necessary for the proper administration of the affairs of my estate and of any trust created hereunder.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal this 19 day of December , in the year One Thousand Nine Hundred and Ninety-Four.

*Paul Ruback* (L.S

PAUL RUBACK

The foregoing instrument, consisting of this and  two ( 2 ) preceding typewritten pages, was signed, sealed, published and declared by the above named Testator to be his   Last Will and Testament in our presence and in the presence of each of us:  Whereupon, we, at his   request and in his  presence, and in the presence of each other, hereunto subscribe our names as witnesses the day and year last above written.

_____  residing at ███████████
_____  residing at ███████████