# EXHIBIT R

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN) |
|---|---|

This document relates to:

*Michael Bianco, et al. v. Islamic Republic of Iran*, No. 1:20-cv-10902 (GBD) (SN)

## <u>DECLARATION OF FAMILIAL RELATIONSHIP</u>

I, Natalie Pollack, declare under penalty of perjury, as provided for by 28 U.S.C. § 1746, that the following statements are true and correct:

1.      My name is Natalie Pollack, and I am the stepdaughter of Louis F. Aversano, Jr. ("Lou") who died on September 11, 2001 ("9/11") when the World Trade Center collapsed. I submit this Declaration to demonstrate I am the functional equivalent of Lou's daughter.

2.      Lou entered my life when he started dating my mother. I was five years old or younger at the time. They married on October 18, 1969, and we officially became a family. I was five years old at the time. I lived in the same home as Lou until I moved away for college at 18 in 1982.

3.      Lou supported our family and took care of us. He was the main financial support as my mother was a stay-at-home mother. Lou bought us toys and bikes, and we never wanted for anything. In addition to financial support, he treated me like his daughter, both emotionally and socially, and made our family whole. Lou was a true family man. Among other things, he walked me to school and made us breakfast and barbecued on the weekends.

4.      Lou strongly believed in education. He helped me with my homework and made sure I did well in school. He was great at math and made it easier for me to understand.

5.      One of my fondest memories is when Lou taught me how to ride a bike. I was so scared, and Lou made me feel comfortable. It was a huge milestone for me that he helped and encouraged me to accomplish. Lou was very athletic and liked to play sports. He taught me how to swim and play handball, and we played handball and tennis together.

6.      There is no doubt that I was Lou's family. On the weekend, we spent time with our grandparents, aunts, uncles, and cousins. We were always together for family gatherings and celebrations. I celebrated Christian holidays with Lou's side of the family and Jewish holidays with my mother's side. On Christmas, the house was decorated beautifully, and we decorated the tree and opened presents as a family. We went to Lou's parents' home for dinner every Sunday. His mother was an excellent cook and made gravy from scratch. She was also an excellent baker and made her famous toll house cookies. One of Lou's brothers had two sons who were my cousins. When we got older, we learned how to play poker at Lou's parents' home. I was, and still am, very close with Lou's extended family, and they treat me like a loved family member.

7.      Lou was my father. We had a special bond and were very close. *See* photos attached as Exhibit 1. Lou made it known to others that I was his daughter, and I referred to him as my dad. He gave me advice (and, of course, discipline) like any loving father. My biological father was absent most of my life and we were not close. There were times when years would go by without me seeing my biological father. Lou filled that void and was the father figure in my life since I was a young child. It meant so much to me that he was always present and made sure I felt important and taken care of. Lou knew how much I loved him. We were extremely close throughout my childhood and adult life. There was mutual respect, love, and friendship as I grew up. When I got engaged and married, Lou and my mother welcomed my husband into our family. Lou and my mother viewed wedding venues with us, participated in food tastings, met

2

with the wedding band, and Lou was one of the witnesses at my wedding. We spent all birthdays and holidays together, and my husband and I frequently went to dinner and a movie with my mother and Lou. We were an extremely close-knit family. Since my birthday and Lou's were three days apart, we had joint birthday celebrations. For my mother and Lou's twenty-fifth anniversary, we had a celebratory party and my husband and I paid for them to go on vacation to Florida. Lou was at the hospital when my first child was born, and he became a proud grandpa. *See* photo attached as Exhibit 2. The last time I saw Lou was at my daughter's second birthday party a few days before 9/11.

8.      Lou claimed me as a dependent on his tax returns for several years, and his will named me a substitute or successor Executrix, and a beneficiary in the event my mother predeceased him. *See* Last Will and Testament attached as Exhibit 3.

9.      9/11 ripped our family apart. I will never forget that horrible day. I prayed Lou would be found alive. I did not want to believe that Lou left this world so suddenly and unexpectedly, but I eventually had to accept the terrible truth that he was really gone. I feel his loss every day and share fond memories of him.

10.      Lou and I had a very close relationship and we considered each other to be father and daughter in every way. Accordingly, I should be deemed the functional equivalent of Lou's daughter.

Executed on: 10/21/21

Name (Signature): *Natalie Pollack*

Name (Print):    Natalie Pollack

3

# EXHIBIT 1

















# EXHIBIT 2



# EXHIBIT 3

# Last Will and Testament
## Of
## LOUIS F. AVERSANO, JR.

I, LOUIS F. AVERSANO, JR., residing at ███████████ Manalapan, County of Monmouth and the State of New Jersey, do hereby make, publish and declare this to be my Last Will and Testament.

**FIRST:** I hereby revoke any and all other former Wills and/or Codicils by me any time heretofore made.

**SECOND:** I am married and my wife's name is DORIS AVERSANO. All references in this will to my wife's name are to her.

**THIRD:** I have one living child, the issue of my marriage to DORIS AVERSANO, as follows:

> LISA AVERSANO, DOB ███71,
> of ███████████ Staten Island, New York ███

**FOURTH:** I have two living children, the issue of my previous marriage to NOBILE RING, formerly known as NOBILE AVERSANO, as follows:

> ROSEMARY AVERSANO, DOB ███66,
> of ███████████ Sarasota Springs, New York ███ and,
> ANTHONY AVERSANO, DOB ███69,
> c/o RING, ███████████ Troy, New York ███

**FIFTH:** I have one living stepchild, the issue of the previous marriage of my current wife, DORIS, to ARNOLD ROTHSTEIN as follows:

> NATALIE POLLACK, DOB ███64,
> of ███████████ Merrick, New York ███

**SIXTH:** I hereby nominate, constitute and appoint my wife, DORIS AVERSANO, to be Executrix of this Will. In the event that my said wife predeceases me, fails to qualify or having qualified shall die, resign or become incapable of acting as such Executrix, then I appoint, my daughter LISA AVERSANO and my stepdaughter NATALIE POLLACK, as substitute or successor Executrixes in her place and stead. All references in this Will to Executrix or Executor shall include any substitutes or successor

1

Executor acting hereunder. I direct that no bond or other security shall be required of my executrix or any substitute or successor Executor in any jurisdiction in which they may be called upon to act.

**SEVENTH:** I direct my Executrix to pay all my just debts, funeral expenses and the expenses of the administration of my estate as soon after my death as may be convenient.

**EIGHTH:** All estate, inheritance, transfer, legacy, succession, and other death taxes of any nature, payable by reason of my death, which may be assessed or imposed upon or with respect to property passing under this Will, or property not passing under this Will, shall be paid out of my residuary estate and no part of said taxes shall be apportioned or prorated to any legatee or devisee under this Will or any person owning or receiving any property not passing under this Will.

**NINTH:** I give, devise and bequeath all of my jewelry, clothing, and other articles of personal use, household furnishings and effects and any automobiles to my wife, DORIS AVERSANO, if she survives me. In the event that my said wife predeceases me, then I give all the foregoing to my children, ROSEMARY AVERSANO, ANTHONY AVERSANO and LISA AVERSANO; and to my step daughter, NATALIE POLLACK, in equal shares, or all to the survivor, to be divided among them in such manner as my Executor, in his sole and absolute discretion, may deem proper having due regard to the extent feasible for the values of the respective items and for the personal preference of such persons. The decision of my Executor shall be conclusive and binding upon such persons and upon all other persons interested in my estate.

**TENTH:** I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, of every kind and nature and wherever situated, which I may own or to which I may be entitled at the time of my death, including lapsed legacies and all property over which I have any power of appointment (hereinafter referred to as my "residuary estate") to my wife, DORIS AVERSANO, if she survives me. In the event that my said wife predeceases me, then I give, devise and bequeath my residuary estate to my children, ROSEMARY, ANTHONY, LISA and NATALIE, in equal shares, share and share alike, or all to the survivor.

2

ELEVENTH: If my wife, DORIS AVERSANO, or any other beneficiary under this will shall die with me in common accident or disaster, or under such circumstances which render it difficult or impossible to determine which of us survived the other, I direct that it shall be conclusively presumed, that my said wife or such other beneficiary predeceased me and that the provisions if this Will shall be construed, and the distribution of property herein provided for shall be made, governed and regulated as if my said wife or such other beneficiary had, in fact, predeceased me.

TWELVTH: I give and grant to my Executrix, in addition to all of the powers conferred upon her by law, in effect at the time of my death, the following powers and authority:

(a) to hold and retain all or part of the property comprising my estate at the time of my death as long as she may deem advisable, and I do further direct my Executrix to invest and reinvest in any real or personal property whatsoever and wheresoever situated whether or not authorized by law for the investment of trust funds and regardless of any rule regarding diversity of trust investment;

(b) to sell, exchange, partition or otherwise dispose of any property, real or personal, of which I may die seized or possessed, or which may at any time form part of my estate, at public or private sale, for such purposes and upon such terms, including sales on credit, with or without security, in such manner and at such prices, as she may deem advisable;

(c) to renew or extend the time of payment of any obligation secured or unsecured, payable to or by my estate, for a long a period or periods of time, and on such terms as she may deem advisable;

(d) to adjust, settle, compromise and arbitrate claims or demands in favor of or against my estate upon such terms as she may deem advisable;

(e) to make distributions, including the satisfaction of any pecuniary bequest, in cash or in specific property, real or personal, or an undivided interest therein, or partly in cash and partly in such property;

(f) to employ attorneys, accountants and such other persons as she may deem advisable, in the administration of my estate and to make such payments

3

therefor as she may deem reasonable and to delegate any discretion which she may deem advisable;

(g) in respect of any securities forming part of my estate, to vote upon any proposition or election at any meeting, and to grant proxies, discretionary or otherwise, to vote at any such meeting; to join in or become a party to any reorganization, readjustment, merger, voting trust, consolidation or exchange, and to deposit any such securities with any committee, depository, trustee or otherwise and to pay out of my estate any fees, expenses and assessments incurred in connection therewith; to exercise conversion, subscription or other rights, or to sell or abandon such rights, and to receive and hold any new securities issued as a result of any such reorganization, readjustment, merger, voting trust, consolidation, exchange or exercise of conversions, subscriptions or other rights; and generally, to take all action in respect of any such securities as she might or could do as absolute owner thereof;

(h) to sell, exchange, lease, mortgage, alter, improve, expand or otherwise dispose of any real estate held by my estate at the time of my death upon such terms as she shall deem proper, and to execute and deliver deeds, leases, mortgages, and other instruments relating thereto. Any lease may be made for such periods as she shall deem proper, even though the same exceeds the maximum terms specifically authorized by law, and shall contain such covenants, including covenants of renewal, as may be desirable to effect such leasing;

(i) to the extent permitted by law, to deduct administration expenses and commissions whether against the gross estate in computing the estate's income tax, as my Executrix, in her sole discretion, shall elect and shall not be required to make any adjustments on account thereof;

(j) whenever my Executrix is given a choice of dates to value property for federal estate tax purposes, she may elect such date as she, in her sole discretion, deem advisable regardless of the resulting effect on other provisions of my Will, and without being required to make any adjustments on account thereof;

4

(k) to borrow money, from others or from herself, for any purpose which she may deem suitable or desirable and to pledge any assets of my estate as security for such borrowing;

(l) to hold the securities or other property in her own name, individually, in bearer form, or in the name of her nominee or nominees;

(m) to grant options for the sale or lease of any property, either real or personal, in which my estate has an interest, for any period of time as she deem advisable;

(n) to enter into any transaction authorized herein with a partnership or similar entity in which my Executrix may have an interest;

(o) to abandon in any way and for any reason any property, real or personal, owned by me at my death, without court order and without liability therefor.

IN WITNESS WHEROF, I have hereunto set my hand and seal to this, my Last Will and Testament, this 2nd day of November, 2000.

_Louis F. Aversano, Jr._

LOUIS F. AVERSANO, JR.

The above instrument, consisting of five (5) pages, including this page, on which the undersigned have subscribed their names as witnesses, was at the date hereof subscribed, sealed, published and declared by the Testator, LOUIS F. AVERSANO, JR., to be his Last Will and testament, in the presence of each of us, who were all present at the same time, and who, at his request and in his presence and in the presence of each other, heave hereunto subscribed our names as witness thereto this 2nd day of November, 2000.

_Kathleen Miller_    residing at ▮▮▮▮▮▮▮
New Hartford, CT

_Lucia Lapore_    residing at ▮▮▮▮▮
New York, NY ▮▮

_Harold Dougherty_    residing at ▮▮▮▮▮▮
New York, NY ▮▮

5