**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) <br> ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army*, et al., 02-cv-6977 (GBD)(SN) (and member case *Burlingame v. Bin Laden, et al.,* 02-cv-7230 (GBD)(SN))

### The *Burlingame* Wrongful Death and Certain Personal Injury Plaintiffs' Motion for Final Judgments Against the Taliban and Muhammad Omar

For the reasons set forth below, and the statements contained in the declaration of Frank H. Granito III, Esq. ("Granito Declaration"), the *Burlingame* plaintiffs, a subset of *Ashton* plaintiffs, reflected on the annexed Exhibits to the Granito Declaration by and through their counsel, Speiser Krause, PC, respectfully move for an Order for final damages judgments in connection with the losses and injuries they suffered as a result of the deaths of the decedents in the September 11, 2001 Terrorist Attacks set forth in the exhibits, in light of the default liability judgment the *Ashton* plaintiffs (including all *Burlingame* plaintiffs listed on Exhibits A-1 and A-2 to the Granito Declaration) previously obtained against, among others, the Taliban and the founder and former leader of the Islamic Emirate of Afghanistan, emir Muhammad Omar (hereinafter the "*Taliban* and *Omar* Defendants"), specifically:

    1.    Awarding each estate of the individuals killed in the September 11 Terrorist Attacks listed in Exhibits A-1 and A-2 (the "*Burlingame* 9/11 Decedents") damages for conscious pain and suffering against the *Taliban* and *Omar* Defendants in the amount of $2,000,000 per decedent, which is the same amount this Court previously awarded to them;

    2.    Awarding each estate of the *Burlingame* 9/11 Decedents listed in Exhibits A-1 and A-2 damages for economic loss against the *Taliban* and *Omar* Defendants in the same amounts that this Court previously awarded to those estates, which damages claims

1

were supported by the expert analysis and reports that the *Burlingame* Plaintiffs previously filed with this Court;

      3.      Awarding the victims listed in Exhibit A-3, the *Burlingame* personal injury Plaintiffs, persons who suffered severe and permanent physical injuries at the World Trade Center or Pentagon on the day of September 11, 2001 and survived, damages for pain and suffering in the same amounts that this Court has previously awarded to those individuals;

      4.      Awarding each estate representative and individual listed in Exhibits B-1 and B-2 who were named in the Sixth Amended Complaint and who are also each the immediate family member of a *Burlingame* 9/11 Decedent solatium damages in the same amounts that this Court has previously awarded to those immediate family members;

      5.      Awarding the immediate family members (and the functional equivalents) of *Burlingame* 9/11 Decedents listed in Exhibits C-1 and C-2 solatium damages in the same amounts that this Court has previously awarded to those immediate family members;

      6.      Awarding these plaintiffs pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001, until the date of the judgment for damages;

      7.      Granting the *Burlingame* Plaintiffs permission to seek punitive damages, economic damages (if not sought herein), and other appropriate damages at a later date; and

      8.      Granting permission for all other plaintiffs in this action not appearing on Exhibits A-1, A-2, A-3, B-1, B-2, C-1 or C-2 to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

As the awards set forth in the proposed order represent the only direct recovery against the Taliban and Omar on behalf of the *Burlingame v. Taliban and Omar* Plaintiffs listed in Exhibits A, B and C, the

proposed order will constitute final awards and judgments against the Taliban and Omar for those Plaintiffs listed in the exhibits to the Granito Declaration.

I.      **Procedural Background**

On September 10, 2002, the *Burlingame* Plaintiffs filed their first complaint against the alleged sponsors of the September 11, 2001 terrorist attacks, which included claims against defendants al Qaeda Islamic Army, the Taliban, and Muhammad Omar, among others. *See* 02-cv-7230 (S.D.N.Y.) ECF 1.[1] The *Burlingame* (02-cv-7230) and *Ashton* (02-cv-6977) matters were Ordered consolidated for liability purposes and mandated to proceed under the *Ashton, et al. v. al Qaeda Islamic Army, et al*. (hereinafter "*Ashton*") master docket number 02-cv-6977, with the filing of a consolidated master complaint, and attorney James Kreindler was appointed Liaison Counsel for the consolidated actions within the *Ashton* master complaint. See 02-cv-6977, Doc. No. 5, Entered 11/19/2002. The *Burlingame* plaintiffs remain segregated within all consolidated *Ashton* filings and are identified therein according to their separate docket number and counsel. See, e.g., 02-cv-6977, Doc. No. 465, filed 03/30/2005. The master complaint was amended several times. *See, e.g.,* 02-cv-6977 (S.D.N.Y.) ECF 2, 11, 32, 38, 111, 465[2]

In their complaints, the *Ashton* Plaintiffs (including the *Burlingame* plaintiffs listed on Exhibits A-1, A-2, A-3, B-1, B-2, C-1 and C-2), both United States nationals and non-nationals, asserted federal jurisdiction against the *Taliban* and *Omar* Defendants pursuant to, among other provisions, the Alien Tort Statute (28 U.S.C. § 1350) ("ATS"), the Foreign Sovereign Immunities Act (28 U.S.C. § 1605(a)(7)) ("FSIA") and the Torture Victim Protection Act (28 U.S.C. § 1350 note) ("TVPA"), and made claims for damages against those defendants under those provisions as well as under the Anti-Terrorism Act (18 U.S.C. § 2333) ("ATA") and state law for the deaths, injuries and losses suffered in the September 11th

---

[1] References to MDL docket entries found at 03-md-1570 (S.D.N.Y.) are noted only by ECF number; references to individual civil case docket entries are preceded by the case number.

[2] In a Case Management Order, this Court set forth a process for adding plaintiffs by listing their names and filing as supplemental pleadings under Fed.R.Civ.P. 15(d) and ordering that "[p]laintiffs added by this procedure need not re-serve defendants who have already been served." ECF 247 at ¶ 12.

Terrorist Attacks. *See, e.g.* ECF 447; *Ashton v. al Qaeda et al.*, 02-cv-6977, ECF 465 at ¶¶ 2-3, 10-12, 464-466, 469-70, 473-74, 477-78, 481-82, 486-89.

This Court issued an order authorizing services of process by publication on certain defendants, including the *Taliban* and *Omar* Defendants. ECF 445 at 1, 8, 11. The *Ashton* Plaintiffs (including the *Burlingame* plaintiffs listed on Exhibits A-1, A-2 and A-3), and others, served the *Taliban* and *Omar* Defendants by publication with verification of publication filed on March 16, 2005 and March 31, 2005. ECF 709, 735.[3] The *Taliban* and *Omar* Defendants never answered and the *Ashton* Plaintiffs (including the *Burlingame* plaintiffs listed on Exhibits A-1, A-2 and A-3) thereafter moved for a Certificate of Default and a default judgment, which this Court granted on May 12, 2006. ECF 1782 *et seq.*, 1797 (referring to the defendants listed in Exhibit B to the *Ashton* Plaintiffs' motion, including the *Taliban* and *Omar* Defendants).[4]

Previously, in connection with their claims against defendant Islamic Republic of Iran, another defendant in the complaints naming the *Taliban* and *Omar* Defendants, this Court granted the *Ashton* Plaintiffs (including the *Burlingame* plaintiffs listed on Exhibit A-1, A-2 and A-3) a default liability judgment. ECF 3021. Thereafter, in connection with the damages assertions set forth in the *Ashton* complaints, in a series of orders this Court issued final damages judgments against Iran, granting the *Burlingame* Plaintiffs' motions for:

- Compensatory damages for the conscious pain and suffering of the *Ashton* and *Burlingame* 9/11 Decedents (*e.g.*, ECF 3226, 3229);

---

[3] The publication notices directed the named defendants to the MDL docket and advised them in both English and Arabic that they were required to answer the complaints on that docket, which sought, among other things, compensatory, treble and punitive damages, within 60 days. ECF 709 at 2; 735 at 2. The jurisdictional and factual allegations against the *Taliban* and *Omar* Defendants as set forth in the operative complaint at the time of service did not change in subsequent amendments. *Compare* 02-cv-6977 (S.D.N.Y.) (*Ashton* Consolidated Master Complaint, Filed 03/06/2003), ECF 11 at ¶¶ 2, 10-12, 112-14, 178-79, 600, 602-03, 605-06, 608-09, 610-12, 615-19 *with* 02-cv-6977 (S.D.N.Y.) (Sixth Amended Complaint, Filed 09/03/2005) ECF 465 at ¶¶ 2, 10-12, 78-79, 123-25, 464-66, 469-70, 473-74, 477-78, 481-82.

[4] This Court's default liability judgment was issued on May 12, 2006 and stated that it applied to all claims, plaintiffs and defendants that were included up to and through the Sixth Amended Complaint. ECF 1797.

- Economic damages for the estates of the *Burlingame* 9/11 Decedents (*e.g.,* ECF 5857), which damages claims were supported by the expert analysis, reports or other economic loss calculations that the *Burlingame* Plaintiffs previously filed with this Court. (*See, e.g.,* ECF5486-2);

- Compensatory damages for the pain and suffering of the *Burlingame* personal injury Plaintiffs who suffered severe and permanent physical injuries at the World trade Center or Pentagon on September 11th (*e.g.*, ECF 5971); and

- Solatium damages for the immediate family members (and their functional equivalents) of the *Burlingame* 9/11 Decedents (*e.g.* ECF 3987, 4087, 4156, 4707, 5058, 5453, 5974).

The *Burlingame* Plaintiffs listed in the Exhibits to the Granito Declaration now move this Court to grant the proposed Order awarding them damages for, as noted on those exhibits, conscious pain and suffering, economic loss, and solatium losses arising out of the deaths of those individuals killed in, and awarding damages for pain and suffering to those severely physically injured but who survived, the September 11th Terrorist Attacks in the same amounts as awarded previously as against defaulting defendant Iran, directing that pre-judgment interest be assessed at 4.96 percent per annum and finding that service of process was properly effectuated.

The *Burlingame* Plaintiffs are set forth in the exhibits as follows:

- Exhibits A-1 (U.S. nationals) and A-2 (non-U.S. nationals), asserting damage claims for the estates of those individuals killed in the Sept. 11 Terrorist Attacks;

- Exhibit A-3 (U.S. nationals), asserting damage claims for the severe and permanent physical and emotional injuries suffered by those individuals in the September 11 Terrorist Attacks;

- Exhibits B-1 (U.S. nationals) and B-2 (non-U.S. nationals), asserting damage claims for solatium damages of those immediate family members listed by name in the Sixth Amended Complaint (and also later added to the *Ashton* docket via Notice of Amendment against defendants Iran and Sudan); and

- Exhibits C-1 (U.S. nationals) and C-2 (non-U.S. nationals), asserting damages claims for solatium damages of those immediate family members not listed by name in the Sixth Amended Complaint who were added to the *Ashton* docket via Notice of Amendment against defendants Iran and Sudan.[5]

---

[5] Should this Court conclude that a Notice of Amendment process similar to what was adopted for the claims against Iran and Sudan is necessary, the *Burlingame* Plaintiffs will add the solatium claimants individually to the docket.

The *Burlingame* Plaintiffs also ask for permission to continue to submit applications in subsequent stages on behalf of those claimants not included in the attached exhibits, should any other applications be warranted.

**II.     Damages**

The *Ashton* Plaintiffs (including the *Burlingame* plaintiffs listed on Exhibits A-1, A-2 and A-3) claimed damages, as relevant here, pursuant to the ATA's civil damages provision, the TVPA, the FSIA (if the Taliban are determined to be the governing body for the nation state of Afghanistan) and state law. 02-cv-6977 (S.D.N.Y.), ECF 465 at 235-240.

According to the caselaw governing terrorism litigation, the "those who survived the attack can recover damages for their pain and suffering, as well as any other economic losses caused by their injuries; estates of those who did not survive can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." *Valore v. Islamic Republic of Iran*, 700 F.Supp.2d 52, 83 (D.D.C. 2010) (concerning damages under FSIA); *Ests. of Ungar ex rel. Strachman v. Palestinian Auth.,* 304 F. Supp. 2d 232, 267 (D.R.I. 2004) (finding that under ATA plaintiffs can recover "both pecuniary damages … and also for non-economic damages, including loss of companionship, society, and mental anguish experienced by the victim's surviving family members, including his siblings … ."); *see also Miller v. Arab Bank, PLC,* 372 F. Supp. 3d 33, 41 (E.D.N.Y. 2019) (ruling that plaintiffs were entitled to solatium damages under the ATA); *Lelchook v. Commerzbank AG*, 2011 WL 4087448, at *2 (S.D.N.Y. Aug. 2, 2011) ("permitting plaintiffs to pursue claims for solatium damages is consistent with both the purpose of the ATA, and Congress's intention to incorporate traditional tort-law principles into the statute."); *Goldberg v. UBS AG*, 660 F.Supp.2d 410, 426 (E.D.N.Y. 2009) ("every court that has construed § 2333(a)" has found that it permits both emotional and pecuniary damages); *Smith ex rel. Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 240 (S.D.N.Y. 2003) (while punitive damages are not available under ATA, its civil action provision "provides for treble damages"). And of course, the injured can recover damages "for personal injury," 28 U.S.C. § 1605A(a)(1) and (c)(4), including "economic damages, solatium, pain and suffering,

and punitive damages." 28 U.S.C. § 1605A(c)(4). The award of damages for physical injuries "assume[s] severe psychological injuries." *Schertzman Cohen v. Islamic Republic of Iran*, No. 17-CV-1214 (JEB), 2019 WL 3037868, at *6 (D.D.C. July 11, 2019) (citing Wamai v. Republic of Sudan, 60 F. Supp. 3d 84, 92-93 (D.D.C. 2014); ECF 5879.

Even if there is a question as to whether the Taliban is considered the governing body of a foreign sovereign, and though a claim under the FSIA is available only to a "claimant or … victim [who] was … a national of the United States; a member of the armed forces; or otherwise an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment," under the Alien Tort Statute, which was another source of jurisdiction the *Ashton* Plaintiffs asserted, district courts have authority to hear claims brought against non-sovereign defendants by both U.S. nationals and non-U.S. nationals. *See* 28 U.S.C. § 1350. Further, the ATA (for U.S. nationals) and state law remedies (for U.S. nationals and non-U.S. nationals) also provide remedies against a non-sovereign defendant for those killed or injured in an attack on United States.

Those *Burlingame* Plaintiffs set forth in Exhibits A-1 and A-2 are all representatives of the estates of victims who were murdered on September 11, 2001 (*Burlingame* 9/11 Decedents) and the claims on behalf of the *Burlingame* 9/11 Decedents are asserted by those estate representatives.  As liability has been established against the *Taliban* and *Omar* Defendants, each of those moving plaintiffs is now seeking a final order of damages in the amounts set forth on Exhibits A-1 and A-2, which reflects (1) the damage amounts previously awarded by this Court for the conscious pain and suffering suffered by those *Burlingame* 9/11 Decedents listed on the exhibits; and (2) the economic loss suffered by the Estates of the *Burlingame* 9/11 Decedents previously awarded by this Court and supported by the expert economic analysis and reports previously submitted.

Those *Burlingame* personal injury Plaintiffs set forth in Exhibit A-3 are all individuals who suffered severe and permanent physical and emotional injuries at the World Trade Center or Pentagon on September 11, 2001 and survived.  As liability has been established against the *Taliban* and *Omar* Defendants, each

7

of those moving plaintiffs is now seeking a final order of damages in the amounts set forth on Exhibit A-3, which reflect the damage amounts previously awarded by this Court for the pain and suffering suffered by each of those *Burlingame* 9/11 Plaintiffs.

Those *Burlingame* Plaintiffs set forth in Exhibits B-1, B-2, C-1 and C-2 are all the immediate family members (or functional equivalents) of *Burlingame* 9/11 Decedents. As liability has been established against the *Taliban* and *Omar* Defendants, each of those moving plaintiffs is now seeking a final order of damages in the amounts set forth in Exhibits B-1, B-2, C-1 and C-2, which reflect the solatium damages amounts previously awarded by this Court.

### A. Economic Damages

Economic damages are specifically contemplated in terrorism litigation, whether under the FSIA, the ATA or otherwise. The economic damages provision is "designed to compensate [a] decedent's heirs-at-law for economic losses which result from [the] decedent's premature death." *Flatow v. Islamic Republic of Iran,* 999 F. Supp. 1, 27 (D.D.C. 1998); *see also Ungar*, 304 F.Supp.2d at 264-65 (its legislative history "indicates that the ATA was to be construed broadly" and giving weight to its co-sponsor's statement that the ATA "'empowers victims with all the weapons available in civil litigation,'" suggesting "that Congress intended that the full range of damages should be available to persons entitled to bring actions pursuant to § 2333(a).") (Emphasis in original). Accordingly, "the beneficiaries of each decedent's estate [are] … entitled to recover the present value of economic damages, including lost wages that the decedents might reasonably have been expected to earn but for their wrongful deaths." *Valore,* 700 F. Supp. 2d at 81-82, citing *Heiser v. Islamic Republic of Iran,* 466 F.Supp.2d 229 (D.D.C. 2006.) Thus, for example, United States District Court Royce C. Lambreth of the District of Columbia, in a series of decisions issuing final judgments against Iran, has held Iran "liable for the economic damages caused to decedents' estates." *Roth v. Islamic Republic of Iran,* 78 F. Supp. 3d 379, 399-400 (D.D.C. 2015), quoting *Valore,* 700 F.Supp.2d at 78.[6]

---

[6] In adopting this estate-accumulations calculation, Judge Lambreth recognized that case law under the FSIA was "develop[ing] … a federal standard" and looked to the law of the District of

8

Previously, this Court awarded economic damages in prior claims against Iran for the "economic losses stemming from the wrongful death of the decedent[.]" ECF No. 2623 at 2-3. In doing so, it adopted the economic loss calculations set forth in the plaintiffs' economic expert reports. For those 9/11 Decedents on Exhibits A-1 and A-2 for whom economic damages are sought, the economic loss amount was calculated based on updated, present-value figures of either the economic damages calculation previously provided by an economic expert or generated by the September 11 Victim Compensation Fund ("VCF") and this Court previously found that those economic damages amounts were proper.

In prior motions for economic damages, the *Burlingame* Plaintiffs presented reports prepared by an economic expert who, relying on materials provided by plaintiffs (economic expert reports, VCF applications, VCF work-papers and distribution plans, VCF determinations, underlying economic documents, VCF valuation files, tax submissions and other earnings information), applied generally accepted methodologies and assumptions and calculated the present value of economic losses to a reasonable degree of accounting and actuarial certainty. The updated reports were filed with this Court. *See* ECF 5486-2; and the Court credited those reports and granted the motion as to each estate's individual economic and other damages. *See* ECF 5857.

Accordingly, the *Burlingame v. Taliban and Omar* Plaintiffs now respectfully request that this Court order economic loss awards to those 9/11 Decedents listed in Exhibit A-1 and A-2 in the amounts set forth therein, and as were previously awarded to these estates by this Court in the final judgments against Iran.

**B. Conscious Pain and Suffering**

Plaintiffs identified in Exhibits A-1 and A-2 are all estates of *Burlingame* 9/11 Decedents, who suffered through the September 11, 2001 terrorist attacks and were murdered on that day. Plaintiffs identified in Exhibit A-3 are all *Burlingame* 9/11 Plaintiffs who were present at either the World Trade Center or the Pentagon during the September 11, 2001 terrorist attacks and suffered significant and permanent physical

---

Columbia, which it concluded was "an appropriate model" to adopt and which calculated economic damages as the loss of accretions to the decedent's estate. *Roth,* 78 F.Supp.3d at 82.

9

injuries as a direct result of the airplane crash impact at each of those locations on that day. This Court has previously assessed claims for the extraordinary conscious pain and suffering experienced by those who lost their lives or were physically injured on September 11, 2001, including for those *Burlingame* 9/11 Decedents identified on Exhibits A-1 and A-2 and those *Burlingame* Personal Injury Plaintiffs identified on Exhibit A-3. ECF Nos. 2618 at 7 – 9, 5971. Accordingly, the *Burlingame* Plaintiffs now respectfully request that this Court grant those *Burlingame* 9/11 Decedents whose estates are set forth in Exhibits A-1 and A-2 total compensatory damages judgment that reflects both the economic losses listed those exhibits as well as the previously awarded $2,000,000 for each 9/11 Decedent. That total final damages amount for each *Burlingame* 9/11 Decedent is listed in Exhibits A-1 and A-2. The *Burlingame* Personal Injury Plaintiffs further request that the Court award damages to those physically injured who are set forth on Exhibit A-3 in the amounts which reflect the damage amounts previously awarded by this Court for the extraordinary pain and suffering endured by each of those injured *Burlingame* 9/11 Plaintiffs.

### C. Solatium Damages

"Acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22. Reflecting the nature of terrorist attacks, which are intended to cause emotional damages to those closest to the physically injured party, family members of the decedents may recover for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort." *Dammarell v. Islamic Republic of Iran*, 281 F. Supp. 2d 105, 196 (D.D.C. 2003) (solatium damages available under FSIA), *vacated on other grounds*, 404 F. Supp. 2d 261 (D.D.C. 2005); *Lelchook v. Commerzbank AG*, 2011 WL 4087448, at *2 (S.D.N.Y. Aug. 2, 2011) (plaintiffs may "pursue claims for solatium [emotional] damages' under the ATA") (brackets in original); *Henkin v. Kuveyt Turk Katilim Bankasi*, 495 F.Supp. 3d 144, 152 (EDNY 2020) ("[c]ourts permit "[p]laintiffs to pursue claims for solatium [emotional] damages" under the ATA.") *citing Lelchook*, 2011 WL 4087448, at *2.

10

To this end, "[s]pouses and relative[s] in direct lineal relationships are presumed to suffer damages for mental anguish. *Knox v. Palestine Liberation Org.*, 442 F. Supp. 2d 62, 78 (S.D.N.Y. 2006); *Morris*, 415 F.Supp.2d at 1337 (holding that "victim's family may recover under § 2333 for the victim's lost wages and pain and suffering, and for the victim's wife and children's loss of companionship, society, and guidance, and mental anguish); *Ungar*, 304 F. Supp 2d at 267 (holding plaintiffs entitled under § 2333 to economic and non-economic damages, including loss of companionship and society, and mental anguish experienced by the victim's surviving family members).

Given that, in terrorism cases, solatium claims have been treated as comparable to claims for intentional infliction of emotional distress, in which the immediate family members of the decedent are treated as direct victims. *See, e.g Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 115 n.12 (D.D.C. 2005)( *"*[c]ourts have uniformly held that a terrorist attack—by its nature—is directed not only at the victims but also at the victims' families."); *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (treating solatium claim as "'indistinguishable' from the claim of intentional infliction of emotional distress.") (quoting *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001)).

Thus, this Court has previously awarded solatium damages to "immediate family members" who, though not physically present at the site of the terrorist attacks, were nevertheless intended victims of the terrorist activities. *See e.g.* ECF 3987, 4087, 4156, 4707, 5058, 5453, 5974.

In defining those family members eligible to make a claim for solatium damages, this Court previously determined that spouses, parents, children and siblings who survived a victim killed in the September 11 terrorist attacks were entitled to recover for their losses and set forth a framework for factors establishing other family relationships that fell outside of those four categories, such as intimate partners, aunts and uncles and step-relationships that may be eligible to make a claim for solatium damages. *See* ECF 3363. The four established categories of family relationships – spouses, parents, children and siblings – do not require any additional showing of the nature of the underlying relationship.

To fashion a solatium award adequately compensating the surviving family members in the litigation when issuing solatium damages as against defendant Iran, this Court looked to the analysis

11

undertaken by District Court Judge Royce Lambert in the case of *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006).  There, Judge Lamberth concluded that solatium damages should be awarded to each spouse of a deceased victim in the amount of $8 million, to each parent in the amount of $5 million, and to each sibling in the amount of $2.5 million.  *Id*.

Recognizing that the immediate family members of those killed in the September 11 terrorist attacks suffered and continue to suffer "profound agony and grief and, "[w]orse yet, … are faced with frequent reminders of the events of that day," ECF 2618 at 10 – 12, this Court adopted the following solatium damages framework:

| Relationship to Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

The losses claimed in this motion are identical to those that this Court ordered in connection with the final judgments against Iran.  The amount of solatium damages previously adopted in the judgments against Iran should apply equally to the *Taliban* and *Omar* Defendants.

The relationships between the *Burlingame* Plaintiffs and their decedents are set forth in Exhibits B-1, B-2, C-1 and C-2 accompanying the Granito Declaration.  As described in the Granito Declaration, the Burlingame Plaintiffs have direct relationships previously recognized as being presumptively qualified for solatium damages; the relationships between the Burlingame Plaintiffs and the immediate family members killed in the September 11, 2001 terrorist attacks have been verified; each of the *Burlingame* Plaintiffs survived the death of their immediate family member on September 11, 2001; the *Burlingame* Plaintiffs do not have another known claim pending before this Court for compensation against the *Taliban* or *Omar* Defendants; and, this Court previously granted solatium damages in the amounts sought here.

The Plaintiffs in Exhibits B-1 and B-2 are all individuals who were identified by name as the estate representatives of *Burlingame* 9/11 Decedents no later than the filing of the Sixth Amended Complaint; are also immediate family members of *Burlingame* 9/11 Decedents; and were added in that capacity via Notice of Amendment as to defendants Iran and Sudan.  The Plaintiffs in Exhibits C-1 and C-2 are all additional immediate family members of *Burlingame* 9/11 Decedents on the Sixth Amended Complaint; were not set forth by name in the Sixth Amended Complaint; and have now been added via Notice of Amendment as to defendants Iran and Sudan.

The *Burlingame* Plaintiffs therefore respectfully request that this Court issue a final judgment ordering payment of solatium damages to the *Burlingame* Plaintiffs listed in Exhibits B-1, B-2, C-1 and C-2, in the amounts set forth in those exhibits.

### D. Punitive Damages

While *Burlingame* Plaintiffs are also entitled to punitive damages, in light of prior differing decisions on the proper punitive multiplier (*compare* ECF No. 2623 at 5, ECF No. 3175 at 3, ECF No. 3229 at 1, ECF No. 3300 at 1 *with* ECF No. 3363 at 28 and ECF No. 3384 at 6), the *Burlingame* Plaintiffs request permission to address the issue of punitive damages at a later date.  *See, e.g.*, ECF No. 3666 (Judge Daniels' order authorizing plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

### E. Prejudgment Interest

On the issue of prejudgment interest, a December 28, 2015, Report and Recommendation, adopted by this Court, concluded that to the extent the *Burlingame* wrongful death plaintiffs' claims arose out of injuries in New York State, the rate of prejudgment interest was 9 percent per annum from September 11, 2001, until the date judgment was entered, and to the extent the injuries arose elsewhere, 4.96 percent interest per annum compounded annually was appropriate.  *See* ECF No. 3175 at 1 – 2.  Subsequently, however, this Court concluded that the rate of prejudgment interest of 4.96 percent was more appropriate. ECF No. 3384 at 6.  *See* 03-md-1570 (11-cv-7550).

Accordingly, the *Burlingame* Plaintiffs asks that this Court direct that prejudgment interest of 4.96 percent per annum on their awards running from September 11, 2001, until the date of judgment, as was done previously done in this consolidated litigation.

### III. Conclusion

For all of the reasons herein, as well as those set forth in the previous submissions, the *Burlingame* Plaintiffs respectfully request that this Court grant the proposed order:

1. Awarding each estate of the individuals killed in the September 11 Terrorist Attacks listed in Exhibits A-1 and A-2 damages for conscious pain and suffering against the *Taliban* and *Omar* Defendants in the amount of $2,000,000 per decedent, which is the same amount this Court previously awarded to them;

2. Awarding each estate of the *Burlingame* 9/11 Decedents damages listed in Exhibits A-1 and A-2 damages for economic loss against the *Taliban* and *Omar* Defendants in the same amounts that this Court previously awarded to those estates;

3. Awarding the *Burlingame* personal injury Plaintiffs listed in Exhibit A-3, persons who suffered severe and permanent physical injuries on the day of September 11, 2001, damages for pain and suffering in the same amounts that this Court has previously awarded to those individuals;

4. Awarding each estate representative listed in Exhibits B-1 and B-2 who are also the immediate family members of the *Burlingame* 9/11 Decedents solatium damages in the same amounts that this Court has previously awarded to them;

5. Awarding the immediate family members (and the functional equivalents) of *Burlingame* 9/11 Decedents listed in Exhibits C-1 and C-2 solatium damages in the same amounts that this Court has previously awarded to them;

6. Awarding these plaintiffs pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001, until the date of the judgment for damages;

7. Granting the *Burlingame* Plaintiffs permission to seek punitive damages, economic damages (if not sought herein), and other appropriate damages at a later date; and

8. Granting permission for all other Plaintiffs to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Dated: Rye Brook, New York
January 13, 2022

Respectfully submitted,

SPEISER KRAUSE, PC

By: /s/ Frank H. Granito
Frank H. Granito, III, Esq. (FG9760)
Douglas A. Latto, Esq. (DL3649)
Jeanne M. O'Grady, Esq. (JO3362)
Speiser Krause, PC
800 Westchester Avenue, Suite S-608
Rye Brook, New York 10573
Tel: (914) 220-5333
Fax: (914) 220-5334
f3g@speiserkrause.com
dal@speiserkrause.com
jog@speiserkrause.com
*Attorneys for the Burlingame Plaintiffs*