# EXHIBIT AM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)<br>ECF Case |

This document relates to:

*All Actions*

## AFFIRMATION OF EVAN FRANCOIS KOHLMANN

1. I, Evan Francois Kohlmann, being duly sworn, declare and state as follows:

2. My full name is Evan Francois Kohlmann. I am a private International Terrorism Consultant who specializes in tracking Al-Qaida and other contemporary terrorist movements.

3. I hold a degree in International Politics from the Edmund A. Walsh School of Foreign Service (Georgetown University), and a Juris Doctor (professional law degree) from the University of Pennsylvania Law School. I am also the recipient of a certificate in Islamic studies from the Prince Alwaleed bin Talal Center for Muslim-Christian Understanding (CMCU) at Georgetown University. I am a senior partner at Flashpoint Global Partners, a New York-based security consulting firm. I additionally serve as an on-air analyst for NBC News in the United States. I am author of the book <u>Al-Qaida's Jihad in Europe: the Afghan-Bosnian Network</u> (Berg/Oxford International Press, London, 2004) which has been used as a teaching text in graduate-level terrorism courses offered at such educational institutions as Harvard University's Kennedy School of Government, Princeton University, and the Johns Hopkins School of Advanced International Studies (SAIS).

4. As part of my research beginning in approximately 1997, I have traveled overseas to interview known terrorist recruiters and organizers (such as Abu Hamza al-Masri) and to attend underground conferences and rallies; I have reviewed thousands of open source documents; and, I have amassed one of the largest digital collections of terrorist multimedia and propaganda in the world. The open source documents in my collection include sworn legal affidavits, original court exhibits, video and audio recordings, text communiqués, eyewitness testimonies, and archived Internet websites. I have also developed computer software and database applications in PHP/MYSQL format designed to draw out this data and provide statistical trends and models to human analysts.

12. Most recently, on February 4, 2014, the U.S. 4th Circuit Court of Appeals published a ruling addressing the admissibility of my expert testimony in United States v. Hassan, Yaghi, et al (2012):

    "The court heard and considered testimony about Kohlmann's credentials and techniques and was convinced that he possessed 'the requisite knowledge, skill, experience, training, and education to testify on various aspects of the trend of decentralized terrorism and homegrown terrorism.' In so ruling, the court gave particular attention to the Daubert factors, including thorough assessments of whether Kohlmann's methods were subject to peer review, his 'consultation with others in the field,' and 'whether or not his research findings [were] based in a sound methodology'… The court did not err in deciding that Kohlmann's testimony was reliable as well as relevant to the issues to be presented. Notably, we have previously approved of Kohlmann's expertise in terrorism matters, ruling that his testimony would 'assist the trier of fact to understand the evidence or to determine a fact in issue.'"

13. I have been asked by Plaintiffs counsel to provide expert testimony analyzing the degree to which several alleged dawah organizations, or charitable fronts for terrorism—namely, the Al-Haramain Islamic Foundation (Al-Haramain), the International Islamic Relief Organization (IIRO), the Muslim World League (MWL), the World Assembly for Muslim Youth (WAMY), the Saudi Red Crescent (SRC), the Saudi High Commission (SHC), and the Saudi Joint Relief Committee (SJRC)—are under the control and/or guidance of official representatives of the government of the Kingdom of Saudi Arabia. I was also asked to assess the intimacy of the relationship between the Saudi-based headquarters of each of these groups with their branch offices around the world, and whether that relationship demonstrates mutuality and organizational symbiosis. I was further asked to assess the commonality of ownership; the exchange or intermingling of corporate directors and officers; the exchange of documents among the entities in the ordinary course of business; the use of the same offices; the financing of branch offices by the headquarters; the headquarters' use of the branch offices' property as its own; the decision-making by the headquarters for the branch offices; and whether the branches' officers failed to act independently in the interest of the branch but rather for the parent organization.

14. Before addressing the relationship between the Kingdom of Saudi Arabia and the various dawah entities, it is necessary to understand the role of Islam in the Saudi state, and the role of Dawah organizations in fulfilling Islamic obligations of the Saudi state.

15. The Kingdom of Saudi Arabia is an Islamic state, and its Constitution is the Quran and the Sunna (Traditions) of the Prophet Mohammed.[1]

---

[1] See Saudi Basic Law of Governance, Article 1.

16. The Kingdom itself was founded through an alliance between the al-Saud family and conservative Wahhabi clerics who viewed themselves as the true custodians of Islam. As a result, from its inception, a core function of the Saudi government has been the advancement of a Wahhabi ideology both inside and outside the borders of the Arabian Peninsula. The Basic Law of Governance expressly provides that the Propagation of Islam (Dawah) is an essential function and duty of the Saudi government.[2]

17. In his speech on the issuance on the Basic Laws of Governance in 1992, then-King Fahd bin Abdulaziz identified the nine bases for the foundation of the modern Saudi state, including "the undertaking of the Propagation of Islam (Dawah) and its dissemination, since the Propagation of Islam is one of the most important functions of an Islamic state."[3]

18. In an affidavit filed in this litigation, Abdulaziz H. al Fahd, a member of the Saudi Council of Ministers, similarly affirmed that "Saudi Arabia is home to the most holy sites of Islam, and a core policy and function of the Kingdom since its founding in the early twentieth century has been to foster and preserve Islamic faith and Islamic law within the Kingdom and abroad."[4]

19. According to the General Manager for External Relations in the Ministry of Islamic Affairs, Abdul Majid bin Muhammad al-Omari, "The most prominent characteristic of the Kingdom of Saudi Arabia's role in spreading Islamic missionary work is that it has made it one of the goals of the country. This means that this is a role that has been adopted by the state and is part of its plans. The government provides it with the necessary financial and human resources."[5]

20. The Kingdom has formed several bodies and organizations to carry out its self-described duty to propagate Islam outside of Saudi Arabia. These include the Supreme Council for Islamic Affairs, the Ministry of Islamic Affairs Endowment, Da'wah and Guidance, and individual dawah organizations such as the Muslim World League (MWL), International Islamic Relief Organization (IIRO), the World Assembly of Muslim Youth (WAMY), the Al-Haramain Islamic Foundation, the Saudi High Commission for Relief of Bosnia & Herzegovina (SHC), the Saudi Joint Relief Committee for Kosovo and Chechnya (SJRC), the Saudi Red Crescent Society (SRC), the Al-Haramain al-Masjid al-Aqsa Foundation, and others.

---

[2] See Saudi Basic Law of Governance, Article 23 ("the State shall protect the Islamic Creed, apply the Sharia, encourage good and discourage evil, and undertake its duty regarding the Propagation of Islam (Da'wah").

[3] King Fahd's Speech on the Issuance of the Basic Law of Governance, at p.2.

[4] Declaration of Abdulaziz H. al Fahad, at pp. 2-3.

[5] Interview with General Manager for External Relations in the Ministry of Islamic Affairs, Abdul Majid bin Muhammad Al Omari.

5

21. Dr. Saleh bin Hussein al-Ayed, the Secretary General for Islamic Affairs, described the differing functions of those bodies in an interview with al Riyadh daily newspaper, a Saudi government publication. Dr. al-Ayed explained that the Supreme Council for Islamic Affairs "is responsible for the Islamic work by the Kingdom abroad, including providing in-kind and financial assistance to Islamic centers as well as Islamic organizations and associations abroad, and coordinating Saudi activities undertaken by the organizations, whether at the official or individual levels, all of which fall under the responsibility of the Supreme Council." Dr. al-Ayed further explained that the "Supreme Council is not an executive authority, but rather a planning body." In contrast, other authorities "such as the Ministry of Islamic Affairs" serve as the operational bodies that "execute its (the Supreme Council for Islamic Affairs') decisions." Because the Supreme Council for Islamic Affairs is a planning body, and the Ministry of Islamic Affairs is an operational arm of the government, Dr. al-Ayed affirmed that "there is no duplication" between their work.

22. The overview of the Ministry of Islamic Affairs' role in the propagation of Islam outside of the Kingdom, from its own website, reinforces that the dawah activities undertaken by the Kingdom outside of Saudi Arabia are an essential function of the Kingdom as an Islamic state, and affirms the Ministry of Islamic Affairs' role as an operational body tasked with implementing those activities. The website explains that propagating and calling people to Islam "is the essential cornerstone of its [the Kingdom's] system, duties and obligations, to which it pays due attention." The website also notes that dawah is one of the "outstanding pillars and essential parts of the Kingdom," and that the Kingdom has "established, sponsored, supported, and developed large organizations for this purpose." The overview then explains that "this effort was crowned with success when Royal Decree No. 3-A of 20-1-1414 A. H. was issued to establish the Ministry of Islamic Affairs, Endowments, Da'wah, and Guidance to be in charge of matters relating to Islam, endowments, mosques, guidance, and Da'wah."[6]

23. The individual dawah organizations—such as MWL, IIRO, Al-Haramain, WAMY, SHC, SJRC, and SRC—serve as the primary (although not exclusive) governmental arms through which the Ministry of Islamic Affairs implements the Kingdom's dawah activities at the ground level, outside of the Kingdom.

24. The government of the Kingdom has consistently and repeatedly described the actions of the Saudi dawah organizations outside of the Kingdom as achievements of the State itself.[7] According to a document posted on multiple official Saudi government websites touting their work in the "Service of Islam and Muslims", one of the chief such contributions was cited as the creation of "Saudi Relief Agencies": "Since the era of King Abdulaziz—may Allah be merciful to him—

---

[6] http://www.moia.gov.sa/eng/Menu/Pages/About.aspx

[7] *See, e.g.*, Fahad Declaration at para. 11 (government oversight of dawah organizations is exercised through government officials who head those organizations).

6

Kingdom of Saudi Arabia gave the top priority to support and help the Muslims all over the world. Kingdom of Saudi Arabia made available of this support through specialized agencies established for this reason as follows: International Islamic Relief Organization, World Assembly for Muslim Youth, Saudi Commission for Fundraising."[8] An alternative version of this text posted on the official website of the Saudi Embassy in New Zealand also included the "Al-Haramain Foundation" on the list of "specialized agencies" established by the Kingdom to "support Muslims all over the world."[9] As noted by Saudi Minister of Islamic Affairs Saleh al-Shaykh, "this work was not at an individual level, but rather conducted through institutions and committees and special entities headed by… state officials."[10]

25. Consistent with its self-described dawah obligation, the evidence as outlined below reflects that the Saudi state apparatus has controlled the dawah organizations, both internally and externally, to fulfill the Kingdom of Saudi Arabia's core function of propagating Islam.

## I. AL-HARAMAIN ISLAMIC FOUNDATION

26. The Al-Haramain Islamic Foundation was a Saudi non-profit dawah organization that has engaged in various forms of religious propagation and related work around the world. At the height of its operations, it had over 40 international branches working in over fifty countries, and in 1999 spent more than $61 million on various projects worldwide.[11] Al-Haramain also maintained a presence and local offices in the continental United States; primarily, in the states of Missouri and Oregon.

27. An overwhelming degree of evidence indicates that Al-Haramain was controlled by the Saudi Ministry of Islamic Affairs and funded by the Saudi government and Saudi officials.

28. According to Al-Haramain's former website www.alharamain.org, the "superintendent of all Foundation activities" is Shaykh Saleh Ibn Abdul-'Azeez Aali Shaykh, the Saudi Minister of Islamic Affairs, Endowments, Call and

---

[8] http://www.mofa.gov.sa/sites/mofaen/EServ/VisitingSaudiArabia/aboutKingDom/Pages/ServingIslam36145.aspx, http://www.mohe.gov.sa/en/studyinside/aboutKSA/Pages/service-of-Islam-and-Muslims.aspx?AspxAutoDetectCookieSupport=1,
http://www.mohe.gov.sa/ar/studyinside/aboutksa/pages/service-of-islam-and-muslims.aspx?aspxautodetectcookiesupport=1

[9] http://embassies.mofa.gov.sa/sites/NewZealand/AR/AboutKingdom/KingdomAchievments/Pages/default.aspx

[10] Lecture of Sheikh Saleh bin Abdel Aziz Al Sheikh, Minister of Religious Affairs

Efforts of the Servant of the Two Holy Mosques in Advocacy and the Service of Islam and Muslims

[11] "Saudi Arabia's top Islamic charity denies any of its assets frozen." Agence France Presse. March 13, 2002.

7

of Islamic Affairs and other senior Saudi officials have assisted in the micro-managing of these charities remotely from Saudi Arabia.

132. There is also an overwhelming degree of evidence proving that branch offices of these charities were kept on a tight rein by central offices in Riyadh and Jeddah, Saudi Arabia, and that these overseas offices were incapable of making even relatively minor administrative or financial decisions without input and approval from charity officials back in the Kingdom of Saudi Arabia.

133. Indeed, the "history, association, assignments, and transactions" of these charities convincingly demonstrate "mutuality", a commonality of ownership, an exchange or intermingling of corporate directors and officers at the regional and headquarters level, the regular exchange of documents between offices in Riyadh and around the world in the ordinary course of business, the use of the same corporate office and address, the direct financing of subsidiary offices by a parent charity, the parent charity's demonstrated use of a subsidiary entity's property as its own, decision-making for a subsidiary by a parent and its principals, and that the subsidiary directors of these charities frequently do not act independently in the interest of their local chapter but rather the parent organization.

Evan Francois Kohlmann,

Executed on the 3 day of February, 2015.

45