# APPENDIX A2

KSAX EXHIBITS  38 to 62

10/11/21, 4:31 PM                    Bonus Episode 2: "Khashoggi and the 9/11 lawsuit" | Conspiracyland on Acast



### EPISODE DETAILS

## Bonus Episode 2: "Khashoggi and the 9/11 lawsuit"

In the fall of 2017, Jamal Khashoggi secretly met with a former FBI agent working for the legal team suing the Saudi government for alleged complicity in the terror attacks of 9/11. Although he had for years been a loyal defender of his government, Khashoggi now suggested he might be willing to help the families of 9/11 victims demanding accountability from the Saudi regime. Did the Saudis know about his surprise offer? And what are the questions still unanswered about the role of some Saudi officials in allegedly helping to facilitate the attacks. In this special bonus episode of Conspiracyland-- Khashoggi and the 9/11 lawsuit-- we dive into those issues with interviews with former FBI agent Catherine Hunt, Jim Kreindler, the chief lawyers for the families of 9/11 victims and legendary former agent Ali Soufan, who spent years investigating Al Qaeda.

See acast.com/privacy for privacy and opt-out information.

MORE FROM CONSPIRACYLAND

 Bonus Episode 2: "Khashoggi and the 9/11 lawsuit"                    49:52
Jul 10, 2021

 Bonus Episode 1: "Training the Assassins"                    31:55
Jul 08, 2021

 Episode 8: "Anatomy of a Cover-up"                    50:38
Jul 08, 2021

https://play.acast.com/s/conspiracyland/bonusepisode2-khashoggiandthe9-11lawsuit

KSAX-0038

Case No.
03-md-1570

10/11/21, 4:31 PM                    Bonus Episode 2: "Khashoggi and the 9/11 lawsuit" | Conspiracyland on Acast

 Episode 7: "A Tale of Two Women"                                              39:47
Jul 05, 2021

 Episode 6: "Influence Operations"                                             40:49
Jul 01, 2021


 Episode 5: "The Rise of the Bullet Guy"                                       36:34
Jun 28, 2021


 Episode 4: "A Revolution Crushed"                                             34:00
Jun 24, 2021
 

 Episode 3: "Jamal and Osama"                                                  29:33
Jun 21, 2021


 Episode 2: "The Arms Dealer's Harem"                                         28:41
Jun 17, 2021

Episode 1: "The Henchman"                                                                          52:34
Jun 14, 2021

---

**Load More**

# Acast

   


**KSAX-0038, Page 2 of 2**

HOME   MAIL   NEWS   FINANCE   SPORTS   ENTERTAINMENT   LIFE   SHOPPING   YAHOO PLUS   MORE...

yahoo!news   [search]   Sign In   Mail

yahoo!news

# FBI tried to flip Saudi official in 9/11 investigation



**Michael Isikoff · Chief Investigative Correspondent**
July 15, 2021 · 7 min read

When the 9/11 commission released its long-awaited report in the summer of 2004, one of its findings — while controversial — seemed definitive: There was, the panel asserted, no evidence that the Saudi government "as an institution" or its "senior officials" had "knowingly" supported al-Qaida, the terrorist group that had unleashed the deadly attacks on the World Trade Towers and the Pentagon.

But not everybody in the FBI thought that ended the matter. Even while the 9/11 commission report grabbed big headlines, and a paperback version rocketed to the top of the bestseller lists, FBI agents were aggressively investigating a Saudi Embassy official in Washington, D.C., suspected of directing assistance to two of the al-Qaida hijackers in Southern California, including getting them an apartment and setting them up with a bank account and flight lessons.

The agents questioned the ex-official, Mussaed al-Jarrah, at least three times and even threatened him, confronting him with photos of child pornography found on his home computer in an apparent attempt to "flip" him and gain his cooperation, according to a closed-door deposition of the Saudi national taken last month by lawyers for the families of the 9/11 victims. A copy of the deposition — with some redactions for law-enforcement sensitive material — was obtained exclusively by Yahoo News.

*[See also: "Conspiracyland" bonus episode: "Khashoggi and the 9/11 lawsuit"]*



Copies of "The 9/11 Commission Report" on sale in Chicago in 2004.(Seth Perlman/AP Photo)

KSAX-0040

Case No.
03-md-1570

But the gambit does not appear to have worked. After acknowledging he was confronted by an FBI agent with a photo of a naked child taken off his computer, Jarrah testified that he basically told the agent to take a hike.

"Then I told him, 'If you are here to threaten me with the pictures, just go ahead, go to the Embassy,'" Jarrah testified. "Then I got in my car and drove off." He never spoke to the FBI again, he later said.

The deposition of Jarrah — who oversaw the Ministry of Islamic Affairs at the Saudi Embassy in the late 1990s and early 2000s — provided no smoking guns or dramatic confessions by the witness.

But the more than 600 pages of transcripts of his deposition, which stretched over two days on June 17 and 18, reveals new details about the lengths to which the FBI continued to pursue the possible role of Saudi officials in 9/11, long after the public was led to believe the matter had been settled.

The bureau's probe into a possible Saudi role in 9/11 later morphed into Operation Encore, the code name for an FBI investigation that stretched on for more than a decade and wasn't terminated until 2016. The details of that probe to this day remain shrouded in secrecy. But as the 20th anniversary of the 9/11 attacks approaches, the still-classified evidence from that bureau investigation is now at the center of a contentious lawsuit brought by lawyers for the victims' families against the Saudi government.



William Barr, then U.S. attorney general, at a press conference in December last year. (Michael Reynolds/EPA/Bloomberg via Getty Images)

Attorney General William Barr in 2019 imposed a state secrets privilege that has blocked documents from the FBI investigation into the Saudis from becoming public or even being shared with the lawyers representing the families in the case. But lawyers for the families — backed up by allies on Capitol Hill — are appealing to Attorney General Merrick Garland to lift the privilege, arguing that the families deserve to see all the government's evidence about the Saudi role in the attacks.

"A fair day in court for these brave 9/11 families requires access to evidence," wrote Democratic Sens. Kirsten Gillibrand of New York, Robert Menendez of New Jersey and Richard Blumenthal of Connecticut, in a recent letter to Garland and FBI Director Christopher Wray. "DOJ must not gratuitously stand in their way." A spokesman said the Justice Department is reviewing the request.

The Jarrah deposition — and his acknowledgment that he was confronted with child

Source: https://news.yahoo.com/fbi-tried-to-flip-saudi-official-in-911-investigation-090041290.html?guccount...          Created 2021-10-11 at 17:10

Created 2021-10-11 at 17:10

pornography — offers one possible clue into why Barr directed the details of Operation Encore be kept under wraps. If the FBI obtained images of child pornography on the Saudi diplomat's home computer, it is "very likely" agents obtained them through a warrant under the 1978 Foreign Intelligence Surveillance Act (FISA) — a move that would be authorized by a secret federal court and that by very definition would be classified, said David Kris, the former assistant attorney general for national security and now the founding partner of Culper Partners, a business consulting firm.

As first reported by Yahoo News last year, Jarrah was a key figure in the Operation Encore probe. One of the few documents from the probe that has become public — a four-page report on the status from the investigation written by FBI agents in October 2012 — identifies him as one of three subjects of the investigation. Another was Fahad al-Thumairy, a radical imam at the Saudi-government funded King Fahad Mosque in Los Angeles, and a third was Omar al-Bayoumi, a suspected Saudi intelligence agent who befriended the two hijackers, Khalid al-Mihdhar and Nawaf al-Hazmi, after they flew into the country in mid-January 2000 after attending an al-Qaida planning summit in Kuala Lumpur, Malaysia.



Assistant Attorney General David Kris, left, of the Justice Department's National Security Division testifies with Jeh Johnson, the Defense Department's general counsel, before the Senate Armed Services Committee in 2009. (Win McNamee/Getty Images)

"There is evidence," the FBI report states, that Jarrah had "tasked al-Thumairy and al-Bayoumi with assisting the hijackers." It also states that Thumairy "immediately assigned an individual to take care" of the hijackers and that Bayoumi "assisted the hijackers" by finding them a place to live in San Diego, opening up a bank account for them and delegating others to "care for them."

Jarrah's name is blanked out in the FBI report, but after Yahoo News disclosed his identity last year, the FBI and Justice Department publicly confirmed in court papers that he was the Saudi official in question. However, a senior FBI official in an affidavit asserted that, despite the wording of the 2012 report, the reference to Jarrah having "tasked" Thumairy and Bayoumi with assisting the hijackers was merely a theory pursued by the Operation Encore agents, rather than a finding.

When questioned by a U.S. lawyer for the Saudi government, Jarrah — in last month's videotaped deposition from his current home in Morocco — denied ever knowing or having discussed the two hijackers prior to 9/11.

Source: https://news.yahoo.com/fbi-tried-to-flip-saudi-official-in-911-investigation-090041290.html?guccount...

"No, not at all," he replied when asked if he had ever "heard the names" of Khalid al-Mihdhar or Nawaf al-Hazmi before the terrorist attacks.

Jarrah did for the first time acknowledge his interactions with the FBI, testifying that he recalled three occasions when he was approached and questioned by agents as late as 2004. Prior to confronting him with the pornographic photos of children taken from his home computer, the agents even took him to dinner at a Washington restaurant.



An aide to Crown Prince Abdullah denied on November 24, 2002 that the Saudi government had sent money to two of the Sept. 11 hijackers, Khalid al-Mihdhar (L) and Nawaf al-Hazmi. (FBI/Reuters)

Jarrah testified that he was "cooperative" with them "because I have nothing to hide."

Yet under questioning from Megan Bennett, a lawyer for the 9/11 families, Jarrah said he was unable to recall virtually anything the FBI agents asked him about or what he discussed with them. Asked in multiple questions by Bennett whether the agents questioned him about terrorism, or Saudi involvement with the 9/11 plot, or any conversations he had had with Thumairy or Bayoumi, Jarrah repeatedly responded: "I don't remember."

He used those identical words 103 times.

The deposition of Jarrah was also repeatedly thwarted by Andrew Shen, the lawyer for the Saudis, who instructed him not to respond to questions about any of his official activities at the Saudi Embassy — including any communications with Thumairy and Bayoumi or even the Saudi ambassador at the time, Prince Bandar — on the grounds that it was a violation of a 1961 Vienna Convention providing immunity to accredited diplomats on foreign soil.

The families' lawyers also got an equally frustrating lack of responses in their closed-door video depositions last month with Thumairy and Bayoumi. But the lawyers are also banking on making what they believe can be a powerful circumstantial case of at least some Saudi complicity in the plot — provided they get to see the FBI's own secrets, still under lock and key.

———

**Read more from Yahoo News:**

- **How Trump helped the Saudis whitewash the murder of Jamal Khashoggi**

- **The real measure of Justice Amy Coney Barrett will come in the next year**

- **NYPD's new 'game truck' draws scrutiny from critics**

- **How do we survive extreme heat brought by climate change?**

Source: https://news.yahoo.com/fbi-tried-to-flip-saudi-official-in-911-investigation-090041290.html?guccount...   Created 2021-10-11 at 17:10

Was this article helpful?          

Our goal is to create a safe and engaging place for users to connect over interests and passions. In order to improve our community experience, we are temporarily suspending article commenting

Source: https://news.yahoo.com/fbi-tried-to-flip-saudi-official-in-911-investigation-090041290.html?guccount...        Created 2021-10-11 at 17:10

| From: | Carter, Sean <SCarter1@cozen.com> |
|---|---|
| Sent: | Friday, July 23, 2021 3:05 PM |
| To: | Steven R. Pounian; Rapawy, Gregory G.; zRobert Haefele; Kreindler, James; Maloney, III, Andrew; Megan Benett; Tarbutton, Joseph; Goldman, Jerry; WTC[jflowers@motleyrice.com]; Capone, Thea; NASP[rsheps@shepslaw.com]; cbaltier@fordmarrin.com; jog@speiserkrause.com; WTC[PByrnes@lockelord.com]; WTC[ATaylor@lockelord.com]; WTC[ppetrocelli@stroock.com]; skatz@butler.legal; gmcallister@cahill.com; WTC[trohback@axinn.com]; esnyder@jonesday.com; scottreau@jonesday.com; enitz@mololamken.com; rkry@mololamken.com; sumayya.khatib@lbkmlaw.com; jmandell@otmlaw.com; gsalem@georgesalempllc.com; WTC[sarah.normand@usdoj.gov]; Vargas, Jeannette |
| Cc: | Kellogg, Michael K.; Shen, Andrew C. |
| Subject: | [EXTERNAL] RE: In re Terrorist Attacks on September 11, 2001, No. 1:03-md-01570-GBD-SN |

Greg,

Tagging on to Steve's email, we have not yet had a chance to confer with all of the plaintiffs' counsel on your list, owing to the Marks deposition yesterday and the Comras deposition today, but do plan to reach out to them as well.

As for Cozen O'Connor, and as indicated above, we are happy to cooperate by providing information confirming that the apparent disclosure of confidential information to Michael Isikoff has no linkage to us, subject to a reservation of all privileges etc.

The first notice we received that any confidential information may have been disclosed to Mr. Isikoff was the publication of the story itself. For a variety of reasons, we were confident from the outset that there was no possible link to our firm. Nonetheless, we regarded Mr. Isikoff's reporting that he had obtained a copy of the transcript to be a serious matter, and therefore initiated an internal inquiry that same day to verify that no person under our umbrella was involved in providing any confidential information or materials to Mr. Isikoff. We are confident that the results of that inquiry will eliminate any concerns as far as we are concerned, and we are willing to provide relevant and appropriate details pursuant to a voluntary process, without waiving any privileges.

Best, Sean



**Sean P. Carter**
**Member | Cozen O'Connor**
One Liberty Place, 1650 Market Street Suite 2800 | Philadelphia, PA 19103
P: 215-665-2105 F: 215-701-2105
Email | Bio | LinkedIn | Map | cozen.com

> **KSAX-0042**
>
> Case No.
> 03-md-1570

**From:** Steven R. Pounian <Spounian@kreindler.com>
**Sent:** Friday, July 23, 2021 3:00 PM
**To:** Rapawy, Gregory G. <grapawy@kellogghansen.com>; zRobert Haefele <rhaefele@motleyrice.com>; WTC[jkreindler@kreindler.com] <jkreindler@kreindler.com>; WTC[amaloney@kreindler.com] <amaloney@kreindler.com>; Megan Benett <Mbenett@kreindler.com>; Carter, Sean <SCarter1@cozen.com>; Tarbutton, J. Scott <STarbutton@cozen.com>; WTC[jgoldman@andersonkill.com] <jgoldman@andersonkill.com>; WTC[jflowers@motleyrice.com] <jflowers@motleyrice.com>; WTC[tcapone@baumeisterlaw.com]

**KSAX-0042, Page 1 of 5**

<tcapone@baumeisterlaw.com>; NASP[rsheps@shepslaw.com] <rsheps@shepslaw.com>; cbaltier@fordmarrin.com; jog@speiserkrause.com; WTC[PByrnes@lockelord.com] <PByrnes@lockelord.com>; WTC[ATaylor@lockelord.com] <ATaylor@lockelord.com>; WTC[ppetrocelli@stroock.com] <ppetrocelli@stroock.com>; skatz@butler.legal; gmcallister@cahill.com; WTC[trohback@axinn.com] <trohback@axinn.com>; esnyder@jonesday.com; scottreau@jonesday.com; enitz@mololamken.com; rkry@mololamken.com; sumayya.khatib@lbkmlaw.com; jmandell@otmlaw.com; gsalem@georgesalempllc.com; WTC[sarah.normand@usdoj.gov] <sarah.normand@usdoj.gov>; WTC[jeannette.vargas@usdoj.gov] <jeannette.vargas@usdoj.gov>
**Cc:** Kellogg, Michael K. <mkellogg@kellogghansen.com>; Shen, Andrew C. <ashen@kellogghansen.com>
**Subject:** RE: In re Terrorist Attacks on September 11, 2001, No. 1:03-md-01570-GBD-SN

**\*\*EXTERNAL SENDER\*\***

Dear Greg,

We do not believe that there is any dispute among the parties that necessitates a motion.

The PECs share your concerns about the apparent disclosure of confidential information. The Cozen, Motley Rice, Kreindler, and Anderson Kill firms have each completed our own separate internal reviews of the handling of the Jarrah deposition transcript and contacts with Michael Isikoff. Each firm has determined that the transcript was not released through our firms or others working with our firms and are prepared to document the facts, if necessary.

Please let us know if the Kellogg firm and other counsel working for Saudi Arabia can give us the same assurances.

We did not conduct separate inquiries relating to the Bayoumi or Thumairy transcripts and are of the view that further inquiries are unnecessary under the circumstances.

We do not see the need for a formal court-ordered discovery process and have concerns that your proposal may require disclosure of privileged information or involve inquiries that are unnecessary under the circumstances.

If you would like, we can schedule a phone conference to resolve any outstanding issues. Please let us know.

Regards,

Steve

---

**From:** Rapawy, Gregory G. <grapawy@kellogghansen.com>
**Sent:** Thursday, July 22, 2021 11:44 AM
**To:** zRobert Haefele <rhaefele@motleyrice.com>; Steven R. Pounian <Spounian@kreindler.com>; Jim Kreindler <JKreindler@kreindler.com>; Andrew J. Maloney <AMaloney@kreindler.com>; Megan Benett <Mbenett@kreindler.com>; Carter, Sean <SCarter1@cozen.com>; zScott Tarbutton <starbutton@cozen.com>; Goldman, Jerry <jgoldman@andersonkill.com>; zJodi W. Flowers <jflowers@motleyrice.com>; zDorothea Capone <tcapone@baumeisterlaw.com>; rsheps@shepslaw.com; cbaltier@fordmarrin.com; jog@speiserkrause.com; pbyrnes@lockelord.com; ataylor@lockelord.com; ppetrocelli@stroock.com; skatz@butler.legal; gmcallister@cahill.com; trohback@axinn.com; esnyder@jonesday.com; scottreau@jonesday.com; enitz@mololamken.com; rkry@mololamken.com; sumayya.khatib@lbkmlaw.com; jmandell@otmlaw.com; gsalem@georgesalempllc.com; zSarah S. Normand <sarah.normand@usdoj.gov>; Vargas, Jeannette <jeannette.vargas@usdoj.gov>
**Cc:** Kellogg, Michael K. <mkellogg@kellogghansen.com>; Shen, Andrew C. <ashen@kellogghansen.com>
**Subject:** RE: In re Terrorist Attacks on September 11, 2001, No. 1:03-md-01570-GBD-SN

2

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you are expecting the link or attachment from the sender and know the content is safe.

Bob,

Thanks for your response.  We will hold off filing until we receive Plaintiffs' position, or 3 pm tomorrow (Friday), whichever comes first.

Regards,

Greg

---

**From:** Haefele, Robert <rhaefele@motleyrice.com>
**Sent:** Thursday, July 22, 2021 11:19 AM
**To:** Rapawy, Gregory G. <grapawy@kelloghhansen.com>; Steven R. Pounian <spounian@kreindler.com>; Kreindler, James <jkreindler@kreindler.com>; Maloney, III, Andrew <amaloney@kreindler.com>; Benett, Megan <mbenett@kreindler.com>; Carter, Sean <SCarter1@cozen.com>; Tarbutton, Joseph <starbutton@cozen.com>; Goldman, Jerry <jgoldman@andersonkill.com>; Flowers, Jodi <jflowers@motleyrice.com>; Capone, Thea <tcapone@baumeisterlaw.com>; rsheps@shepslaw.com; cbaltier@fordmarrin.com; jog@speiserkrause.com; pbyrnes@lockelord.com; ataylor@lockelord.com; ppetrocelli@stroock.com; skatz@butler.legal; gmcallister@cahill.com; trohback@axinn.com; esnyder@jonesday.com; scottreau@jonesday.com; enitz@mololamken.com; rkry@mololamken.com; sumayya.khatib@lbkmlaw.com; jmandell@otmlaw.com; gsalem@georgesalempllc.com; sarah.normand@usdoj.gov; Vargas, Jeannette <jeannette.vargas@usdoj.gov>
**Cc:** Kellogg, Michael K. <mkellogg@kelloghhansen.com>; Shen, Andrew C. <ashen@kelloghhansen.com>
**Subject:** [EXTERNAL] RE: In re Terrorist Attacks on September 11, 2001, No. 1:03-md-01570-GBD-SN


Greg – While I think I can say that there is shared concern on our side as to how the release may have happened, we believe it would be appropriate for us to confer on our side, including with the various non-PECs counsel listed on your email, to address your request.  However, we are not in a position to do so today given that we are in the midst of the deposition of WAMY's expert, Jonathan Marks.  We also have a deposition set for tomorrow of one of the plaintiffs' experts.  However, we can commit to trying to confer by tomorrow at 3 pm.  Can you please allow us that time to confer before getting back to you?

Regards,

**Robert Haefele** | Attorney at Law | Motley Rice LLC
28 Bridgeside Blvd. | Mt. Pleasant, SC 29464
o. 843.216.9184 | f. 843.216.9450 | rhaefele@motleyrice.com

---

**From:** Rapawy, Gregory G. <grapawy@kelloghhansen.com>
**Sent:** Wednesday, July 21, 2021 9:14 PM
**To:** Steven R. Pounian <spounian@kreindler.com>; Kreindler, Jim <JKreindler@kreindler.com>; Andrew J. Maloney <amaloney@kreindler.com>; Benett, Megan <mbenett@kreindler.com>; Carter, Sean <SCarter1@cozen.com>; Tarbutton, Scott <starbutton@cozen.com>; Goldman, Jerry S. <Jgoldman@andersonkill.com>; Haefele, Robert <rhaefele@motleyrice.com>; Flowers, Jodi <jflowers@motleyrice.com>; Capone, Thea <tcapone@baumeisterlaw.com>; rsheps@shepslaw.com; cbaltier@fordmarrin.com; jog@speiserkrause.com; pbyrnes@lockelord.com; ataylor@lockelord.com; ppetrocelli@stroock.com; skatz@butler.legal; gmcallister@cahill.com; trohback@axinn.com; esnyder@jonesday.com; scottreau@jonesday.com; enitz@mololamken.com; rkry@mololamken.com; sumayya.khatib@lbkmlaw.com; jmandell@otmlaw.com; gsalem@georgesalempllc.com; sarah.normand@usdoj.gov;

3

Vargas, Jeannette <jeannette.vargas@usdoj.gov>
**Cc:** Kellogg, Michael K. <mkellogg@kellogghansen.com>; Shen, Andrew C. <ashen@kellogghansen.com>
**Subject:** In re Terrorist Attacks on September 11, 2001, No. 1:03-md-01570-GBD-SN

CAUTION:EXTERNAL

SUBJECT TO MDL PROTECTIVE ORDER

Counsel.

On July 15, 2021, Michael Isikoff of Yahoo! News published an article entitled "FBI tried to flip Saudi official in 9/11 investigation." The article states that "a copy of the [Mussaed Al Jarrah] deposition – with some redactions for law-enforcement sensitive material – was obtained exclusively by Yahoo News" and describes in detail certain portions of the content of that deposition, including verbatim transcript quotations. The article further describes the contents of the Omar Al Bayoumi and Fahad Al Thumairy depositions. The disclosure to Mr. Isikoff is a clear and serious violation of the MDL Protective Order and potentially of the FBI Protective Order.

Tomorrow (July 22), Saudi Arabia intends to file a motion requesting that the Court order targeted discovery to determine who disclosed this confidential information to Mr. Isikoff. Specifically, the motion will request that the Court direct all entities or individuals who received or had access to the transcripts of the Al Jarrah, Al Bayoumi, and Al Thumairy depositions to submit declarations stating to whom they provided these transcripts and to identify, describe, and where applicable produce, all communications with Mr. Isikoff from June 1, 2021 to the present.

Please inform us by no later than tomorrow at 3 pm whether your clients consent to this requested relief. Saudi Arabia reserves all rights to seek further relief concerning this matter.

Regards,

Gregory G. Rapawy
Kellogg, Hansen, Todd, Figel & Frederick, PLLC
1615 M Street NW, Suite 400
Washington, DC 20036
main (202) 326-7900
direct (202) 326-7967

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

**Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to**

4

*the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.*

**KSAX-0042, Page 5 of 5**

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |

*This document relates to*:
All Actions

### DECLARATION OF JOHN HARTNEY

I, John Hartney, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury
the following:

1.      I am the head of Information Technology ("IT") at Kreindler & Kreindler LLP
("Kreindler") and manage the firm's email and document systems.  In connection with the *In re
Terrorist Attacks on September 11, 2001* suit, I am familiar with the system managing retention
and sharing of documents and other electronically stored information.  I can search Kreindler's
email accounts and have access to all the drives within our network.  I also have managerial
access to Kreindler's cloud-based document storage system.

2.      On July 16, 2021, I was advised that journalist Michael Isikoff published an
article the day before on Yahoo! News in which he reported that he had obtained a copy of a
redacted deposition transcript of Kingdom of Saudi Arabia official Musaed al-Jarrah ("Jarrah")
and asked to assist with an internal review to determine if Isikoff received it from a source at
Kreindler.  I was told that the Jarrah deposition took place on June 17, 2021 and June 18, 2021
and that there had been both a rough transcript and a final transcript for both days.

3.      In connection with that request, I reviewed Kreindler's proprietary server, its
cloud-based storage system and its email system.  Based on my review, I determined the
following.

**KSAX-0056F**

Case No.
03-md-1570

4.      The rough Jarrah transcripts were saved on Kreindler's server within a share drive specific to documents related to the 9/11 litigation on June 17, 2021 and June 18, 2021. The final Jarrah transcripts were saved on Kreindler's server within the same share drive on June 29, 2021. The final Jarrah transcript was uploaded to the cloud-based storage system on June 29, 2021. The rough Jarrah transcript was not uploaded to the cloud-based storage system.

5.      Only individuals given Kreindler login credentials have access to Kreindler's server. To manage information relating to this lawsuit, I created a directory on a network share drive within the server where all 9/11 litigation-related documents can be saved. That directory is for use only by individual Kreindler attorneys and staff involved in this litigation and one consultant to Kreindler, John Fawcett. The Jarrah transcripts were saved within that network share. I was told that the following had been able to access the Jarrah transcripts: Kreindler attorneys Jim Kreindler, Steven R. Pounian, Andrew J. Maloney, Megan Wolfe Benett, and Gavin Simpson; Kreindler staff members Debra Pagan, Julia Sienski and Lisa Ranieri; and Kreindler consultant John Fawcett. I did not find any evidence that the Jarrah transcripts had been downloaded, printed, or emailed by anyone else.

6.      Consultants, experts, or others outside of Kreindler's system could access the Jarrah transcript on the cloud-based storage system if Kreindler provided them access to the system. To view documents saved on that system the documents must be downloaded by the user. The system tracks which users have downloaded documents. On July 29, 2021, I reviewed the user history for the cloud-based system and determined that as of that date no one had downloaded the Jarrah transcript that was saved on the cloud-based storage system.

7.      Based on my search of Kreindler's e-mail system, I determined that the only Kreindler personnel who received the rough or final Jarrah transcripts via email from the court

reporting service Golkow Litigation Services ("Golkow") were Jim Kreindler, Steven R. Pounian, Andrew J. Maloney, Megan Wolfe Benett, and Debra Pagan.

8.  I also conducted a search of Kreindler's email system for any incoming or outgoing messages to misikoff@yahoo-inc.com, misikoff@oath.com, misikoff@verizonmedia.com and misikoff52@gmail.com between June 1, 2021 and August 1, 2021.

9.  I also searched the email server for all outgoing, incoming, saved or deleted messages during that same time period containing the names "Jarrah" or "Isikoff" or the name that Golkow had given to the Jarrah transcripts when they were originally provided to Kreindler.

10.  The only emails returned as a result of the searches I conducted are attached hereto as Exhibit 1.  None of those emails had any portion of the Jarrah deposition transcripts attached to them.

11.  I also determined that on two occasions between June 1, 2021 and August 1, 2021 the Jarrah transcripts were emailed from the Kreindler system to someone outside of the Kreindler firm: (1) an email from Kreindler consultant John Fawcett to another Kreindler consultant ("Consultant A"); and (2) an email from Debra Pagan to the law firm of Baumeister & Samuels.  I determined that there were no other occasions when the Jarrah transcripts were emailed from the Kreindler system to anyone outside of the Kreindler firm.

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge and belief.

Dated: New York, New York
        September 27, 2021

KREINDLER & KREINDLER LLP

By:

JOHN HARTNEY
485 Lexington Avenue
New York, New York 10017
Tel.: 212-687-8181

# EXHIBIT 1

**From:**    Jim Kreindler <JKreindler@kreindler.com>
**Sent:**    6/28/2021 2:33:57 PM
**To:**      Mark Seman <mark@yahoonews.com>
**Cc:**      Michael Isikoff <misikoff@verizonmedia.com>;
**Subject:** Re: Thurs. July 1st 2:30pm - Isikoff - Conspiracyland Interview

---

Thanks

Sent from my iPhone

> On Jun 28, 2021, at 2:28 PM, Mark Seman <mark@yahoonews.com> wrote:

⚠ **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you are expecting the link or attachment from the sender and know the content is safe.

Jim,

I hope you are well.
Mark here - Michael Isikoff's producer.

Here's the Zoom Intv. info for this Thurs. at 2:30pm

Mark Seman is inviting you to a scheduled Zoom meeting.

Topic: Isikoff w/ Jim Kreindler & Ali Soufan
Time: Jul 1, 2021 02:30 PM Eastern Time (US and Canada)

Join Zoom Meeting
https://us02web.zoom.us/j/89967891280?pwd=OWtVZDRvZGduUVlROC9UeUt0OVVsZz09

Meeting ID: 899 6789 1280
Passcode: 420714
One tap mobile
+16465588656,,89967891280#,,,,*420714# US (New York)
+13017158592,,89967891280#,,,,*420714# US (Washington DC)

Dial by your location
        +1 646 558 8656 US (New York)
        +1 301 715 8592 US (Washington DC)
        +1 312 626 6799 US (Chicago)
        +1 669 900 9128 US (San Jose)
        +1 253 215 8782 US (Tacoma)
        +1 346 248 7799 US (Houston)
Meeting ID: 899 6789 1280
Passcode: 420714
Find your local number: https://us02web.zoom.us/u/kctag2jRM0


--
Mark Seman
Head of Audio / Podcasts
Yahoo News
917.723.4639

**From:** Jim Kreindler <JKreindler@kreindler.com>
**Sent:** 7/1/2021 1:34:08 PM
**To:** Mike Isikoff <Misikoff52@gmail.com>
**Subject:** Letter from Sen. Blumenthal, Gillibrand, Menendez to DOJ + FBI re State Secrets Privilege - v6 - final.pdf

**Attachments:** Letter from Sen. Blumenthal, Gillibrand, Menendez to DOJ + FBI re State Secrets Privilege - v6 .pdf

Sent from my iPhone

July 1, 2021

The Honorable Merrick Garland
Attorney General
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

The Honorable Christopher Wray
Director
Federal Bureau of Investigation
935 Pennsylvania Avenue, N.W.
Washington, D.C. 20535

Dear Attorney General Garland and Director Wray:

We write again concerning the decision by the Department of Justice (DOJ) and Federal Bureau of Investigation (FBI), under the previous Administration, to invoke the "state secrets privilege" in litigation brought by victims of the terrorist attacks of September 11, 2001. For years, these survivors and family members have sought information from the DOJ and, in particular, the FBI, which has been withheld, purportedly for national security reasons. Unfortunately, in fact, the reasons for continued concealment of this potentially critical evidence have never been credibly or adequately explained.

As we have noted previously, on September 11, 2019, then-President Trump made a promise to the survivors and families that DOJ would disclose documents relevant to the case. Yet, the next day, then-Attorney General William Barr invoked the state secrets privilege to prevent the release of the very documents and information that the then-President vowed to disclose.[1]

The 9/11 families—many of whom we are honored to represent in Congress—have fought relentlessly for justice and to hold accountable all associated with the worst terrorist attack ever committed on American soil. We are now less than three months away from the twentieth anniversary of the 9/11 attacks. The lengthy passage of time since the attacks creates powerful questions about the need for continued classification of documents and the ongoing withholding of related information.

A fair day in court for these brave 9/11 families requires access to evidence. Their case and this cause is about truth, justice, and accountability. DOJ must not gratuitously stand in their way. If there is any credible reason to withhold facts, testimony, and documents concerning the attacks and the FBI's handling of subsequent investigations twenty years after 9/11, the American people deserve to know it.

---

[1] *See* Tim Golden and Sebastian Rotella, *The Saudi Connection: Inside the 9/11 Case That Divided the F.B.I.*, N.Y. TIMES (Jan. 23, 2020), https://www.nytimes.com/2020/01/23/magazine/9-11-saudi-arabia-fbi.html.

In previous appearances before the Senate Judiciary Committee,[2] you have both committed to review the situation in an effort to make documents and information available to the families to the greatest extent possible. As yet, however, there has been no tangible progress and we received no response to several additional letters on this issue. We again urge you to review past decisions to invoke the state secrets privilege and to meet with representatives of the families. We request a response to this letter no later than July 14, 2021. Thank you for your prompt consideration.

Sincerely,

_____
RICHARD BLUMENTHAL
United States Senate

_____
KIRSTEN GILLIBRAND
United States Senate

_____
ROBERT MENENDEZ
United States Senate

---

[2] The Nomination of the Honorable Merrick Brian Garland to be Attorney General of the United States: Day 1, Hearing before the Senate Judiciary Committee, 117th Cong. (Feb. 22, 2021), *available at* https://www.judiciary.senate.gov/meetings/the-nomination-of-the-honorable-merrick-brian-garland-to-be-attorney-general-of-the-united-states-day-1; Oversight of the Federal Bureau of Investigation, Hearing before the Senate Judiciary Committee, 116th Cong. (July 23, 2019), *available at* https://www.judiciary.senate.gov/meetings/07/23/2019/oversight-of-the-federal-bureau-of-investigation.

**From:**    Michael Isikoff <misikoff52@gmail.com>
**Sent:**    7/1/2021 2:14:32 PM
**To:**    Jim Kreindler <JKreindler@kreindler.com>
**Subject:** Re: Letter from Sen. Blumenthal, Gillibrand, Menendez to DOJ + FBI re State Secrets Privilege - v6 - final.pdf

---

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you are expecting the link or attachment from the sender and know the content is safe.

Thanks, Looking forward to our chat at 2:30

On Thu, Jul 1, 2021 at 1:34 PM Jim Kreindler <JKreindler@kreindler.com> wrote:

> 
> 
> Sent from my iPhone

**From:**     Michaeli IslehkMaeli Isleofeli Isle<m5c2
**Sent:**     @g.g>7>.h>/.1/>0h:4
**To:**       4im3PlshJKif5rrhkciKif5rr1>oncPis<m5c2
**Subject:**  dl/hRlLLlehre5chtl <hSsBcl L3Psuh,issiGeP Iuh41 l IlbhL5hzDMhOh+SJhelhtLPLlhtlmelLKh:eiFislnlhvhF-hvhri Ps<6Ir

---

4lhL55

tl Lhre5chcphi:35 l

    D hMBsh.uh>7>.uhPLh>/.0h:4uh4im3PlshJKif5rrhkciKif5rr1>oncPis<m5c2hTe5Ll/

| **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you are expecting the link or attachment from the sender and know the content is safe. |

w3P fKuhR55fi nhr5eTPeIhL5h5Behm3PLhPLh>/y7h

    D hw3BuhMBsh.uh>7>.hPLh./y0h:4Michaeli IslehkMaeli Isleofeli Isle<m5c2hTe5Ll/

    tl Lhre5chcphi:35 l

**From:**   Jim Kreindler <JKreindler@kreindler.com>
**Sent:**   7/10/2021 10:18:57 AM
**To:**     Mike Isikoff <Misikoff52@gmail.com>
**Subject:**

Great article. Thanks mike

Sent from my iPhone

| From: | John Fawcett <Jfawcett@kreindler.com> |
|---|---|
| Sent: | 7/12/2021 11:38:05 AM |
| To: | Michael Isikoff <misikoff@verizonmedia.com> |
| Subject: | |
| Attachments: | 2021 5-6 Unclassified_privilege_log_updated_May 6 2021.pdf ,image001.jpg |

John Fawcett

**Kreindler & Kreindler LLP**
485 Lexington Ave          T: 212.973.3469    ·    E-mail: jfawcett@kreindler.com
New York, NY 10017         F: 212.972.9432    ·    Web: www.kreindler.com

Please consider the environment before printing this e-mail.

**FBI PRIVILEGE LOG**
**Tranche 26**
**May 6, 2021**
*In re Terrorist Attacks on September 11, 2001 Litigation*
**Civil Action No. MDL 03-1570**

| Log No. | Document Type | Pages | Date | Subject Matter | Bases for Withholding |
|---|---|---|---|---|---|
| 1 | Investigative Accomplishments Report | 6 pages | January 2008 | Confidential Human Source reporting | Classified/Law Enforcement Privileged/Informant Privilege/Privacy/ National Security Act/State Secrets Privilege |
| 2 | Confidential Human Source Reporting Document | 3 pages | November 2009 | Confidential Human Source reporting | Classified/Law Enforcement Privileged/Informant Privilege/Privacy/ National Security Act/State Secrets Privilege |
| 3 | Teletype | 3 pages | March 2010 | Confidential Human Source reporting | Classified/Law Enforcement Privileged/Informant Privilege/Privacy/ National Security Act/State Secrets Privilege |
| 4 | Letter | 3 pages | March 2011 | Communication with foreign government (not the Kingdom of Saudi Arabia) re Confidential Human Source | Classified/Law Enforcement Privileged/Informant Privilege/Privacy/ National Security Act/State Secrets Privilege |
| 5 | Electronic Communication | 3 pages | April 2003 | Confidential Human Source reporting | Classified/Law Enforcement Privileged/Informant Privilege/Privacy/ National Security Act/State Secrets Privilege |

| 6 | Electronic communication | 11 pages | January 2007 | Communication re intelligence information provided to the FBI by a foreign government (not the Kingdom of Saudi Arabia) and coordination between FBI and foreign government | Classified/Law Enforcement Privileged/National Security Act/ State Secrets Privilege |
|---|---|---|---|---|---|
| 7 | Report | 8 pages | December 2006 | Communication from foreign government to FBI containing intelligence information and reflecting coordination between FBI and foreign government | Classified/Law Enforcement Privileged/National Security Act/State Secrets Privilege |
| 8 | Letter | 2 pages | July 2017 | Communication from foreign government to FBI containing intelligence information and reflecting coordination between FBI and foreign government | Classified/Law Enforcement Privileged/National Security Act/State Secrets Privilege |
| 9 | Electronic Communication | | | Communication re initiation of investigation of Bayoumi | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/State Secrets Privilege |
| 10 | Electronic Communication | | | Communication re initiation of investigation of Thumairy | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/State Secrets Privilege |

| 11 | Electronic Communication | | | Communication re initiation of investigation of third subject identified in 2012 FBI report | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/State Secrets Privilege |
|----|----|----|----|----|----|
| 12 | Electronic Communication | 16 pages | April 2016 | Analytic review and assessment of case | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/Deliberative Process Privilege/State Secrets Privilege |
| 13 | Briefing document | 6 pages | February 2010 | Case overview | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/Deliberative Process Privilege/Work Product Privilege/State Secrets Privilege |
| 14 | Electronic Communication | 15 pages | September 2010 | Communication re information to be disseminated to foreign government | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/State Secrets Privilege |
| 15 | Electronic Communication | 13 pages | December 2009 | Working document outlining results of investigation | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/Deliberative Process Privilege/State Secrets Privilege |

| 16 | Electronic Communication | 3 pages | January 2003 | Communication re bank records acquired with assistance from foreign government | Classified/Law Enforcement Privileged/National Security Act/State Secrets Privilege |
| 17 | Memorandum | 3 pages | February 2016 | Report from foreign government of communication from witness | Classified/Law Enforcement Privileged/National Security Act/State Secrets Privilege |
| 18 | Electronic Communication | 5 pages | November 2002 | Report of interview by foreign government | Classified/Law Enforcement Privileged/National Security Act/State Secrets Privilege |
| 19 | Electronic communication | 9 pages | May 2008 | Report of interview involving foreign government | Classified/Law Enforcement Privileged/National Security Act/Privacy/State Secrets Privilege |
| 20 | Electronic communication | 9 pages | December 2007 | Report of interview involving foreign government | Classified/Law Enforcement Privileged/National Security Act/Privacy/State Secrets Privilege |

| 21 | Classified Record(s): Because the FBI cannot provide any description of certain record(s) without thereby disclosing classified information, a classified privilege log describing such record(s) will be provided separately to the Court | | | | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/Privacy/State Secrets Privilege |
|---|---|---|---|---|---|
| 22 | Electronic communication | 12 pages | February 2010 | Discussion of investigative results | Classified/Law Enforcement Privileged/National Security Act/ Privacy/Deliberative Process Privilege/ State Secrets Privilege[*]/Privacy |
| 23 | Teletype | 9 pages | March 2010 | Report of briefing | Classified/Law Enforcement Privileged/National Security Act/ Privacy/Deliberative Process Privilege/ State Secrets Privilege[*]/Privacy |
| 24 | Electronic communication | 5 pages | June 2010 | Document outlining research results | Classified/Law Enforcement Privileged/National Security Act/ Privacy/State Secrets Privilege[*]/Privacy |

[*] The documents listed at entries 22-36 and 38-45 of the Privilege Log were identified and processed after the Attorney General asserted the state secrets privilege on April 13, 2020.  However, these documents contain classified information falling within one or more of the categories of information over which the Attorney General asserted the state secrets privilege.

| 25 | Electronic communication | 4 pages | November 2001 | Request regarding investigative action | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/ Deliberative Process Privilege/Privacy/ State Secrets Privilege* |
| 26 | Electronic communication | 4 pages | November 2001 | Request regarding investigative action | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/ Deliberative Process Privilege/Privacy/ State Secrets Privilege* |
| 27 | Memorandum | 5 pages | February 2004 | Investigative summary for foreign government | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/State Secrets Privilege* |
| 28 | Teletype | 9 pages | December 2004 | Information Report for various federal agencies and foreign governments | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/ Privacy/State Secrets Privilege* |
| 29 | Electronic communication | 5 pages | January 2002 | Approval regarding investigative action | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/ Privacy/State Secrets Privilege* |
| 30 | Electronic communication | 3 pages | June 2002 | Confidential Human Source reporting | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/ Privacy/State Secrets Privilege* |

| 31 | Teletype | 7 pages | July 2004 | Information Report for various federal agencies re Confidential Human Source reporting | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/ Privacy/State Secrets Privilege[*] |
|---|---|---|---|---|---|
| 32 | Electronic communication | 2 pages | August 2002 | Confidential Human Source reporting | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/ Privacy/State Secrets Privilege[*] |
| 33 | Electronic communication | 3 pages | August 2005 | Confidential Human Source reporting | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/ Privacy/State Secrets Privilege[*] |
| 34 | Electronic communication | 2 pages | March 2006 | Administrative document relating to Confidential Human Source reporting | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/ Privacy/State Secrets Privilege[*] |
| 35 | Memorandum | 5 pages | March 2004 | Investigative summary for foreign government | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/State Secrets Privilege[*] |
| 36 | Electronic communication | 4 pages | June 2004 | Report of investigative updates | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/ Privacy/State Secrets Privilege[*] |

| 37 | FD-302 | 1 page | October 2001 | Interview of witness requesting identity be protected; content determined to be source-identifying | Law Enforcement Privileged/Informant Privilege/Privacy |
|---|---|---|---|---|---|
| 38 | Memorandum | 2 pages | November 2001 | Report of investigative activity | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/ Privacy/State Secrets Privilege* |
| 39 | Electronic communication | 16 pages | October 2007 | Communication re initiation of investigation | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/ Privacy/State Secrets Privilege* |
| 40 | Electronic communication | 6 pages | December 2007 | Request regarding investigative action | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/ Privacy/State Secrets Privilege* |
| 41 | Electronic communication | 3 pages | July 2004 | Confidential Human Source reporting | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/ Privacy/State Secrets Privilege* |
| 42 | Electronic communication | 5 pages | November 2005 | Confidential Human Source reporting | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/ Privacy/State Secrets Privilege* |

| 43 | Electronic communication | 2 pages | February 2006 | Confidential Human Source reporting | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/ Privacy/State Secrets Privilege[*] |
| 44 | Memorandum | 8 pages | August 2002 | Communication to foreign government regarding investigative information | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/State Secrets Privilege[*] |
| 45 | Electronic Communication | 7 pages | April 2008 | Interview of witness requesting identity be protected; content determined to be source-identifying | Classified/Law Enforcement Privileged/Informant Privilege/National Security Act/ Privacy/State Secrets Privilege[*] |

**From:** Michael Isikoff <misikoff@verizonmedia.com>
**Sent:** 7/13/2021 11:53:29 AM
**To:** Jim Kreindler <JKreindler@kreindler.com>
**Subject:** checking in

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you are expecting the link or attachment from the sender and know the content is safe.

Hi Jim-- where do you stand on your request to DOJ to lift the state secrets privilege and gag order? Am planning on writing something this week.
Mike Isikoff
c 202-258-2535

**From:** Jim Kreindler <JKreindler@kreindler.com>
**Sent:** 7/13/2021 12:31:26 PM
**To:** Michael Isikoff <misikoff@verizonmedia.com>
**Subject:** Re: checking in

Still working on motion.  Too many chefs….

Sent from my iPhone

> On Jul 13, 2021, at 11:53 AM, Michael Isikoff <misikoff@verizonmedia.com> wrote:

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you are expecting the link or attachment from the sender and know the content is safe.

Hi Jim-- where do you stand on your request to DOJ to lift the state secrets privilege and gag order? Am planning on writing something this week.
Mike Isikoff
c 202-258-2535

| From: | Michael Isikoff <misikoff@verizonmedia.com> |
|---|---|
| Sent: | 7/13/2021 1:25:28 PM |
| To: | Jim Kreindler <JKreindler@kreindler.com> |
| Subject: | Re: [E] Re: checking in |

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you are expecting the link or attachment from the sender and know the content is safe.

Ok, aiming to write something for Thursday or Friday -- so if any update by then, let me know.

On Tue, Jul 13, 2021 at 12:31 PM Jim Kreindler <JKreindler@kreindler.com> wrote:
> Still working on motion.  Too many chefs….
>
> Sent from my iPhone
>
>
>     On Jul 13, 2021, at 11:53 AM, Michael Isikoff <misikoff@verizonmedia.com> wrote:
>
>
>
>       CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you are expecting the link or attachment from the sender and know the content is safe.
>       Hi Jim-- where do you stand on your request to DOJ to lift the state secrets privilege and gag order? Am planning on
>       writing something this week.
>       Mike Isikoff
>       c 202-258-2535

**From:**   Jim Kreindler <JKreindler@kreindler.com>
**Sent:**   7/13/2021 1:26:11 PM
**To:**   Michael Isikoff <misikoff@verizonmedia.com>
**Subject:** Re: [E] Re: checking in

Will do

Sent from my iPhone

> On Jul 13, 2021, at 1:25 PM, Michael Isikoff <misikoff@verizonmedia.com> wrote:

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you are expecting the link or attachment from the sender and know the content is safe.
> Ok, aiming to write something for Thursday or Friday -- so if any update by then, let me know.
>
> On Tue, Jul 13, 2021 at 12:31 PM Jim Kreindler <JKreindler@kreindler.com> wrote:
>> Still working on motion.  Too many chefs….
>>
>> Sent from my iPhone
>>
>>> On Jul 13, 2021, at 11:53 AM, Michael Isikoff <misikoff@verizonmedia.com> wrote:
>>>
>>> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you are expecting the link or attachment from the sender and know the content is safe.
>>> Hi Jim-- where do you stand on your request to DOJ to lift the state secrets privilege and gag order? Am planning on writing something this week.
>>> Mike Isikoff
>>> c 202-258-2535

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |

*This document relates to*:
All Actions

### DECLARATION OF JOHN FAWCETT

I, John Fawcett, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury the following:

1.     I have worked for the 9/11 Families as a researcher and consultant to Kreindler & Kreindler ("Kreindler") since 2002.

2.     As I told Kreindler for the first time earlier today, in early July 2021 I sent a redacted version of the transcript of the deposition of Musaed al Jarrah to Michael Isikoff. The redacted portions of the deposition I sent to Michael Isikoff were focused on Musaed al Jarrah's testimony about his possession of child pornography. I did not send any FBI protected portions of the deposition to Michael Isikoff.

3.     Until today, no one other than Michael Isikoff and I knew that I sent the redacted transcript to Michael Isikoff. I sent the transcript to Michael Isikoff using a non-Kreindler e-mail address. I did so to prevent the lawyers and staff of Kreindler from knowing about my intended action and to prevent them from stopping me, should they wish to do so. No one from Kreindler directed me to send the transcript to Michael Isikoff and I took steps so that no one from Kreindler would know what I had done.

4.     I felt compelled to release the information because I thought that the media was the only venue available to protect the public and children from Musaed al Jarrah and his

**KSAX-0056J**

Case No.
03-md-1570

conduct. After the revelations at the deposition that he was a child pornographer, I did not believe that Musaed al Jarrah's criminal acts should remain a secret. The Saudi government's invocations of diplomatic immunity and the FBI's claims of secrecy about its own relationship with Musaed al Jarrah only served to protect Musaed al Jarrah rather than expose his dangers to children. No one was taking action to protect the children at risk because of the conduct of Musaed al Jarrah. I had a personal interest because Musaed al Jarrah worked for Saudi Arabia as a diplomat in Morocco for many years and still lives there, █████████████████████████ ████████ and I know from my prior international humanitarian and human rights work that Morocco has a dreadful history of child sex trafficking.

5.      I accept responsibility for my actions.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: New York, New York
       September 27, 2021

By: _____
     JOHN FAWCETT

2

**KSAX-0056J, Page 2 of 2**

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |

*This document relates to*:
All Actions

## DECLARATION OF JOHN FAWCETT

I, John Fawcett, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury the following:

1.      I have worked for the 9/11 Families as a researcher and consultant to Kreindler & Kreindler ("Kreindler") since 2002.

2.      As I told Kreindler for the first time earlier today, in early July 2021 I sent a redacted version of the transcript of the deposition of Musaed al Jarrah to Michael Isikoff. The redacted portions of the deposition I sent to Michael Isikoff were focused on Musaed al Jarrah's testimony about his possession of child pornography. I did not send any FBI protected portions of the deposition to Michael Isikoff.

3.      Until today, no one other than Michael Isikoff and I knew that I sent the redacted transcript to Michael Isikoff. I sent the transcript to Michael Isikoff using a non-Kreindler e-mail address. I did so to prevent the lawyers and staff of Kreindler from knowing about my intended action and to prevent them from stopping me, should they wish to do so. No one from Kreindler directed me to send the transcript to Michael Isikoff and I took steps so that no one from Kreindler would know what I had done.

4.      I felt compelled to release the information because I thought that the media was the only venue available to protect the public and children from Musaed al Jarrah and his

KSAX-0062A

Case No.
03-md-1570

CONFIDENTIAL - SUBJECT TO MDL PROTECTIVE ORDER
KSAX-0062A, Page 1 of 2

conduct. After the revelations at the deposition that he was a child pornographer, I did not

believe that Musaed al Jarrah's criminal acts should remain a secret. The Saudi government's

invocations of diplomatic immunity and the FBI's claims of secrecy about its own relationship

with Musaed al Jarrah only served to protect Musaed al Jarrah rather than expose his dangers to

children. No one was taking action to protect the children at risk because of the conduct of

Musaed al Jarrah. I had a personal interest because Musaed al Jarrah worked for Saudi Arabia as

a diplomat in Morocco for many years and still lives there, my own children are from that

country, and I know from my prior international humanitarian and human rights work that

Morocco has a dreadful history of child sex trafficking.

     5.     I accept responsibility for my actions.

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge and belief.

Dated: New York, New York
       September 27, 2021

By: _____
     JOHN FAWCETT

CONFIDENTIAL - SUBJECT TO MDL PROTECTIVE ORDER
KSAX-0062A, Page 2 of 2