# APPENDIX C1

ECF  1900 to 7082

UNITED STATES DISTRICT COURT                                                    ECF
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC)<br><br>**MEMORANDUM**<br>**& ORDER** |

*This document relates to*: ALL ACTIONS

**RICHARD CONWAY CASEY, United States District Judge:**

　　The Defendants' Executive Committee ("Defendants' Committee") makes an application for an umbrella protective order covering all materials produced during discovery in the above-captioned case. Rule 26(c) of the Federal Rules of Civil Procedure provides that upon motion a court may grant a protective order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," provided that the party or person requesting the protective order has demonstrated that good cause exists for its issuance. The Plaintiffs' Executive Committee opposes the instant application for a protective order on the grounds that the Defendants' Committee has not adequately demonstrated good cause, particularly in light of the intense public interest surrounding this litigation. Because the Court finds that the Defendants' Committee has demonstrated sufficient good cause to warrant a limited protective order, the Defendants' Committee's application is **GRANTED IN PART**.

**I.      MEMORANDUM**

　　"The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). But courts also must be mindful that protective orders implicate a litigant's First Amendment right to speak, see id. at 34, as well as the public's common law and "likely constitutional" right of access

to the courts, Gambale v. Deutsche Bank AG, 377 F.3d 133, 140 (2d Cir. 2004). Rule 26(c) of the Federal Rules of Civil Procedure accommodates these important rights by requiring the party or person seeking a protective order to demonstrate good cause for its issuance. See Seattle Times, 467 U.S. at 37; In re "Agent Orange" Prod. Liab. Litig. ("In re Agent Orange"), 821 F.2d 139, 145 (2d Cir. 1987) ("[T]he party seeking a protective order has the burden of showing that good cause exists for issuance of that order . . . [and] if good cause is not shown, the discovery materials in question should . . . be open to the public for inspection.").

The specificity required in a showing of good cause varies with the scope and complexity of a case. Ordinarily, good cause exists "when a party shows that disclosure will result in a clearly defined, specific and serious injury." Shingara v. Skiles, 420 F.3d 301, 306 (3d Cir. 2005); see also Havens v. Metro. Life Ins. Co., No. 94 Civ. 1402 (CSH), 1995 WL 234710, at *11 (S.D.N.Y. April 20, 1995) ("[D]efendant fails to specify the nature or extent of injury [that] it contemplates release of the sealed documents would bring about, and accordingly fails to establish good cause."). But see Topo v. Dhir, 210 F.R.D. 76, 77-78 (S.D.N.Y. 2002) (holding that while the "specificity requirement" of the good cause standard applies to companies, it does not apply to private individuals). In cases of unusual scope and complexity, however, broad protection during the pretrial stages of litigation may be warranted without a highly particularized finding of good cause. See In re Agent Orange, 821 F.2d at 148. Instead, a court may impose an initial protective order based upon a general showing of good cause, and may modify that order at a later time if more specific grounds for its continuance remain indiscernible. Id. (explaining that although the district court made no finding of good cause, the court "properly entered the [protective] orders initially as temporary measures, and properly lifted them thereafter").

2

In addition, the public's right of access to discovery materials depends on the type of materials and the stage of the litigation. A court considering whether to issue a protective order must consider the public interests at stake. Shingara, 420 F.3d at 308; Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 945 (7th Cir. 1999) (Posner, J.) (noting that "[t]he judge is the primary representative of the public interest in the judicial process"). But, as the Second Circuit indicated in United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995), public interest in particular litigation does not generate a public right of access to all discovery materials. Indeed, no public right of access exists with respect to materials produced during the initial stages of discovery. Id. The Second Circuit in Amodeo explained that while a presumption of public access exists as to documents filed with the court, "[d]ocuments that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach and stand on a different footing than a motion filed by a party seeking action by the court, or, indeed, than any other document which is presented to the court to invoke its powers or affect its decisions." Id. (internal quotations, citations, and alteration omitted).

Thus, the public's right of access to discovery material only encompasses access to "judicial documents," that is, such "items filed with the court that are relevant to the performance of the judicial function and useful in the judicial process." SEC v. TheStreet.com, 273 F.3d 222, 231 (2d Cir. 2001) (quoting United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) (alterations omitted)). This "presumptive right to public observation is at its apogee when asserted with respect to documents relating to matters that directly affect an adjudication. Such documents include those relating to the decision of a motion for summary judgment . . . ." Gambale, 377 F.3d at 140 (internal quotations and citations omitted). Accordingly, a party seeking a protective order sealing trial, other

court hearings, or motions and accompanying exhibits filed with the court must satisfy a more demanding standard of good cause.  See id. (noting that "documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons"); Byrnes v. Empire Blue Cross Blue Shield, No. 98 Civ. 8520 (BSJ), 2000 WL 60221, *1 (S.D.N.Y. Jan. 25, 2000).

In a two-page letter to the Court, dated May 4, 2006, the Defendants' Committee requests that all discovery in this multi-district litigation be subject to a protective order.  The Committee has made this request on behalf of numerous defendants, including sovereign states, government institutions, public figures, private individuals, companies, charitable organizations, and others.  The Defendants' Committee's application includes, inter alia, a request for provisions limiting the parties' use of all disclosure or discovery material to purposes associated with this litigation.  It also requests provisions affording additional protections to specifically designated confidential materials. Among the latter provisions, the Defendants' Committee requests that the protective order require the parties to file under seal any confidential material submitted to the Court.

The Committee argues that good cause exists for an umbrella protective order because discovery will encompass "an enormous number of documents," and "[a] substantial portion of those documents may contain sensitive or confidential information, such as details about defendants' finances, the public disclosure of which would intrude on defendants' privacy."  (Defs.'s May 4, 2006 Letter.)  The Defendants' Committee also argues that imposing a protective order will prevent further prejudice to the defendants.  It contends "that plaintiffs have already demonstrated their desire to try their case in the press," and therefore, that disclosure of any discovery materials "would irreparably tarnish defendants' reputations" and "would prejudice defendants' ability to defend

themselves at trial." (Id.)

Under normal circumstances, such broad assertions of good cause would be too generalized to support imposition of a protective order. See Shingara, 420 F.3d at 306; Havens, 1995 WL 234710, at *11. But the present circumstances are far from normal. Indeed, this multi-district litigation amounts to one of the largest private lawsuits in United States history. Defendant-by-defendant good cause determinations for individual protective orders at this juncture in this case, much less document-by-document confidentiality determinations where no protective order has issued, would impose an enormous burden upon the Court and severely hinder its progress toward resolution of pretrial matters. For this reason, the Court finds that the unusual scope and complexity of the instant litigation warrants broad protection during the pretrial stages of litigation based upon only a general finding of good cause. See In re Agent Orange, 821 F.2d at 148.

Furthermore, the Court finds that the Defendants' Committee's general assertions of good cause based upon privacy and prejudice concerns are sufficient to warrant imposition of a limited protective order in this case. Most, if not all, of the numerous defendants to these consolidated actions are accused of either committing the terrorist acts of September 11, 2001 or providing material support to those who did. Many of these same defendants will be asked to turn over a vast array of private and confidential information during discovery, much of which will have little or no bearing on the resolution of these actions but will be subject to widespread public scrutiny with prejudicial effects in the absence of a protective order. See Seattle Times, 467 U.S. at 34-35 (noting that "[i]t is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse," and that such abuse "may seriously implicate privacy interests of litigants and third parties"). In light of these circumstances, the Defendants' Committee has shown

5

sufficient good cause for a protective order covering the initial stages of discovery.

Such a showing is not sufficient, however, to warrant a protective order covering all "judicial documents," particularly those submitted to the Court in connection with trial, other hearings, and motions. The public's right of access to the court and judicial process is at its "apogee" with respect to such documents, <u>Gambale</u>, 377 F.3d at 140, and a protective order sealing them requires a more specific, clearly defined demonstration of good cause than that which the Defendant's Committee presented here, <u>see</u> <u>Byrnes</u>, 2000 WL 60221, at *1. Thus, although the Court will permit the parties to designate particular discovery material as confidential and subject to heightened protections, the Court will not permit such materials to be filed under seal pursuant to the Defendant's Committee's current application.

## II.  ORDER

### A.  PURPOSES AND LIMITATIONS

Disclosure and discovery activity in the actions that make up this Multi-District Litigation (the "MDL") are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation will be warranted. Accordingly, the Court hereby adopts the following Protective Order ("Order").

### B.  DEFINITIONS

1.  "Party" shall mean any party to this MDL, including all of its officers, directors, employees, consultants, retained experts, and outside counsel (and their support staff).

2.  "Disclosure or Discovery Material" shall include, but not be limited to, all items or information, regardless of the medium or manner generated, stored, or maintained

(including, among other things, testimony, transcripts or tangible things), that are produced or generated in disclosures or responses to discovery in this MDL.

3.     "Producing Party" shall mean a Party or non-party that produces Disclosure or Discovery Material in this MDL.

4.     "Receiving Party" shall refer to a Party that receives Disclosure or Discovery Material from a Producing Party.

5.     "Designating Party" shall mean a Party or non-party that designates Disclosure or Discovery Material as Confidential pursuant to paragraph F.3. of this Order.

6.     "Confidential Information or Material" or "Protected Material" shall mean all Disclosure or Discovery Material, or portions thereof, as well as any copies, summaries or abstracts thereof, which have been designated by the Designating Party as Confidential pursuant to paragraph F.3. of this Order.

7.     "Counsel" shall mean attorneys who are not employees of a Party but who are retained to represent or advise a Party.

8.     "Expert" shall mean a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this MDL.  This definition includes a professional jury or trial consultant retained in connection with this MDL.

9.     "Professional Vendors" shall mean persons or entities that provide litigation support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstratives; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors.

C.      SCOPE

The protections conferred by this Order cover not only Protected Material (as defined above), but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by parties or counsel to or in court or in other settings that might reveal Protected Material.

D.      DURATION

Even after the termination of this MDL, the obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.

E.      USE OF DISCLOSURE OR DISCOVERY MATERIAL

All Disclosure or Discovery Material (or any copies, summaries or abstracts thereof) produced in the course of the MDL shall be used solely for the purpose of the prosecution or defense of the MDL, or preparation of the MDL for trial.

F.      DESIGNATING PROTECTED MATERIAL

1.      Each Producing Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.  If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection at all, or do not qualify for the level of protection initially asserted, that Designating Party must promptly notify all Receiving Parties that it is withdrawing the mistaken designation.

2.      Each Producing Party wishing to designate material for protection under this Order must clearly so designate that material before it is disclosed or produced.

3.      The Designating Party shall label or mark Disclosure or Discovery Material

8

produced to any other Party that is deemed to contain Confidential Material as follows:

> CONFIDENTIAL:  This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (RCC), United States District Court for the Southern District of New York.

4.      Stamping or writing the designated legend on the cover of the first page of any multi-page Disclosure or Discovery Material shall so designate all pages of such Disclosure or Discovery Material, unless otherwise indicated by counsel for the Designating Party. Confidentiality designations shall be made for good cause.

5.      Should the Producing Party inadvertently fail to mark Disclosure or Discovery Material as Confidential at the time of production, counsel for the Producing Party shall promptly notify counsel for all Receiving Parties upon discovery of the inadvertent production.  Correction of an omission of the Confidential designation and notice thereof shall be made in writing by counsel for the Producing Party, accompanied by substitute copies of each document or thing appropriately marked Confidential.  Within ten (10) business days of receipt of these substitute copies, counsel for the Receiving Parties shall return, or certify in writing the destruction of, the previously unmarked Disclosure or Discovery Material and all copies; and all summaries and abstracts thereof shall be maintained as Confidential by the Party or their counsel which created such copies, summaries or abstracts.

6.      If a Producing Party produces material qualifying for protection under this Order without designating that material for such protection, any other party may designate that material for protection under this Order.  Counsel for the Designating Party shall promptly notify counsel for all Receiving Parties upon discovery that the produced material may be so designated. Notice of the designated material shall be made in writing by counsel for the Designating Party,

9

accompanied by substitute copies of each document or thing appropriately marked Confidential. Within ten (10) business days of receipt of these substitute copies, counsel for the Receiving Parties shall return, or certify in writing the destruction of, the previously unmarked Disclosure or Discovery Material and all copies; and all summaries and abstracts thereof shall be maintained as Confidential by the Party or their counsel which created such copies, summaries or abstracts.

G.    DEPOSITION TESTIMONY

1.    In the case of depositions upon oral examination, if counsel for a Party has a reasonable and good faith belief that any question or answer contains Confidential Information or Material, counsel for that Party shall so state on the record and shall request that all pages that include such Confidential Information or Material be marked Confidential.

2.    When testimony designated as containing Confidential Information or Material is elicited during a deposition, persons not entitled to receive such information under the terms of this Order shall be excluded from the deposition.

3.    In addition to designating during the deposition any question or answer as containing Confidential Information or Material, counsel may designate any portion of the deposition transcript as containing Confidential Information or Material at any time within thirty (30) business days of receiving the deposition transcript from the court reporter.  Notice of such designation shall be made in writing to the court reporter, with copies to all other counsel, specifying the portion(s) of the transcript and exhibits that constitute or contain Confidential Information or Material and are to be marked as Confidential.

4.    Transcripts containing testimony or exhibits designated as containing Confidential Information or Material shall be marked by the court reporter, prior to transcript

distribution, with the legend "THIS TRANSCRIPT CONTAINS CONFIDENTIAL MATERIAL" and shall be treated in accordance with the provisions of this Order.

5. Until expiration of the thirty (30) business day period, all deposition transcripts shall be considered and treated as though marked Confidential, unless otherwise agreed on the record at the deposition.

H. **ACCESS TO, USE AND DISCLOSURE OF CONFIDENTIAL INFORMATION OR MATERIAL**

1. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a non-party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order.

2. Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

3. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated as Confidential only to:

a. Counsel for the Parties who are actively engaged in the conduct of the MDL on behalf of the named Parties, including partners, associates, secretaries, legal assistants of such counsel, and any other person in the employ of such counsel to the extent reasonably necessary to render professional services;

b. The Court and those employed by the Court;

c. Any person designated by the Court in the interest of justice, upon

11

such terms as the Court may deem proper;

        d.      Any witness at a deposition or at a hearing, or to the extent reasonably necessary in the preparation of such witness for such deposition or hearing, and to counsel for the witness;

        e.      Court reporters or persons operating video equipment who record depositions or other testimony in the MDL;

        f.      Outside consultants or Experts retained for the purpose of assisting counsel in the MDL, but only to the extent the disclosure of Confidential Information or Material is directly related to and reasonably necessary to counsel's prosecution of the MDL;

        g.      Professional Vendors engaged in one or more aspects of copying, organizing, filing, coding, converting, storing or retrieving data or designing programs for handling data connected with the prosecution of the MDL;

        h.      Any other person after written consent given by counsel for the Designating Party; and

        i.      Clients, to the extent necessary to fulfill counsel's obligations of attorney-client communications.

        4.      If any Receiving Party desires to provide Confidential Information or Material produced by a Producing Party to any person(s) not set forth in paragraph H.3., and if the Parties cannot resolve the matter consensually, the Party seeking to make such disclosure may make an appropriate application to the Court.

        5.      It shall be the responsibility of counsel giving access to Confidential Information or Material produced by the Producing Party to create and retain records indicating that

the person receiving Confidential Information or Material agreed to be bound by the terms and restrictions of this Order.

I.    INADVERTENT PRODUCTION OF PROTECTED OR PRIVILEGED MATERIAL

    1.    The inadvertent production of Disclosure or Discovery Material containing attorney-client privilege or work-product information or any other Protected Material or privileged information will not constitute, and may not be argued to constitute, a waiver of any applicable privileges or protections.

    2.    Any Disclosure or Discovery Material inadvertently produced and subject to a subsequent claim of privilege and/or protection shall, upon written request to Counsel for all Receiving Parties made promptly upon learning of the inadvertent production, be returned immediately to counsel for the Producing Party, and neither such Disclosure or Discovery Material, nor copies thereof, shall be retained and/or used by any Receiving Party without either the consent of the Producing Party or an order of the Court. Any Party may then move the Court for an order compelling production of the Disclosure or Discovery Material, but said Party shall not assert as a ground for entering such an order the fact or circumstances of the inadvertent production.

J.    PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED TO A NON-PARTY

    1.    If any Receiving Party receives a subpoena or other document production request from a non-Party to this Order seeking production or other disclosure of Confidential Information or Material produced by a Producing Party in this MDL, that Party shall notify Counsel for the Designating Party in writing (by facsimile and email, if possible) immediately and in no event more than five calendar days after receiving the subpoena or document production request

identifying the Confidential Information or Material sought and enclosing a copy of the subpoena or request.

2.     Counsel for the Receiving Party shall make timely objections to the production of the Confidential Information or Material including, by reference, the existence of this Order.  Unless and until such objections are overruled by the Court, or the Court otherwise orders production of the Confidential Information or Material, no Receiving Party may produce or divulge the contents of the Confidential Information or Material, except with the express written consent of the Designating Party.

K.     FINAL DISPOSITION

1.     Within 120 days after the entry of a final, non-appealable order disposing of all actions in this MDL, all Disclosure or Discovery Material, and all copies thereof, including but not limited to, any notes or other transcriptions made therefrom, shall be returned to counsel for the Producing Party or, in lieu thereof, counsel for the Receiving Party shall certify in writing to counsel for the Producing Party the destruction of such Disclosure or Discovery Material.

2.     Counsel for the Receiving Party shall make a reasonable effort to retrieve any Disclosure or Discovery Material, or portions thereof, subject to this Order from any Party or non-party witness and Expert or consultant to whom such information has been given, and shall notify in writing counsel for the Producing Party of any failure to retrieve any such information, the reasons therefore, the identity of the person from whom the Disclosure or Discovery Material, or portions thereof, could not be retrieved, and the identity of any Disclosure or Discovery Material, or portions thereof, not returned.

L.     CHALLENGING CONFIDENTIALITY DESIGNATIONS

14

If any Party objects to the designation of any Confidential Information or Material, that Party shall state the objection and reasons therefore in a letter to Counsel for the Designating Party. Counsel shall then confer in an effort to resolve the dispute without court intervention. If the Designating Party does not change the designation within twenty (20) calendar days following the receipt of such written notice, then the Party objecting to the designation may make a motion seeking an order that such Confidential Information or Material shall be treated as no longer Confidential under this Order. Until the Court rules on any such motion and any and all proceedings or interlocutory appeals (assuming such a right exists) challenging such decision have been concluded, the Confidential Information or Material shall continue to be deemed Confidential, under the terms of this Order.

M. MISCELLANEOUS

1. No Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order. Similarly, no Party waives any right to object on any ground to the use in evidence of any of the material covered by this Order.

2. Except as specifically provided herein, any violation of this Order is punishable by money damages caused by the violation, including, but not limited to, all attorneys fees, court costs, exhibit costs, expert witness fees, travel expenses, all related litigation costs, and actual damages incurred by the other Party, equitable relief, injunctive relief, sanctions or any other remedy as the Court deems appropriate.

3.     Nothing in this Order shall be construed to apply to any Disclosure or

Discovery Material filed with the Court in connection with any trial, other hearing, or as an exhibit

or other attachment to any motion (other than a motion filed pursuant to paragraph L of this Order).

**So Ordered:**  New York, New York
             October 3, 2006

*Richard Conway*

**Richard Conway Casey, U.S.D.J.**

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x
                     :

                     :

In re Terrorist Attacks of September 11, 2001,     :      03 MDL 1570 (GBD) (SN)

                     :

                     :

------------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/14/2018

## PRIVACY ACT ORDER AND PROTECTIVE ORDER FOR FBI DOCUMENTS

Pursuant to the provisions of Rule 26(c) of the Federal Rules of Civil Procedure, the

Court enters this Privacy Act Order and Protective Order, upon the joint request of the Plaintiffs

and the Federal Bureau of Investigation (the "FBI"), for the purposes of facilitating the

disclosure of information that otherwise would be prohibited from disclosure under the Privacy

Act of 1974, 5 U.S.C. § 552a (the "Privacy Act"), and assuring the confidentiality of information

that may be disclosed by the FBI in the course of discovery proceedings. The Court, having

found that good cause exists for entry of this Privacy Act Order and Protective Order, HEREBY

ORDERS:

1.      Pursuant to 5 U.S.C. § 552a(b)(11), this Order authorizes the FBI to produce

information that otherwise would be prohibited from disclosure under the Privacy Act without

presenting Privacy Act objections to this Court for a decision regarding disclosure. To the extent

the Privacy Act allows the disclosure of information pursuant to a court order, this Order

constitutes such a court order and authorizes the disclosure of that information. However,

nothing in this paragraph shall require production of information that is prohibited from

disclosure (even with the entry of this Order) by other applicable privileges, statutes, regulations,

or authorities. The terms of this Order shall govern the safeguarding of such information by all

individuals referenced herein.

2.      As used in this Order, the term "Protected Information" constitutes any and all documents or records, and information contained therein, that contain any confidential, proprietary, personal, or similar information, including, but not limited to, information protected from disclosure by the Privacy Act.

3.      Information that the FBI deems Protected Information shall be designated as such by stamping the phrase "Subject to FBI Protective Order" on any document or record containing Protected Information prior to the production of such document or record.

4.      Any party who contests the designation of a document or record as Protected Information shall provide the FBI written notice of its challenge.  If the dispute cannot be resolved, the party or parties and the FBI shall follow the Federal Rules of Civil Procedure, the Local Civil Rules for the United States District Courts for the Southern and Eastern Districts of New York, the individual practices of the Court, and/or any court orders for addressing discovery disputes.  Failure to challenge a designation immediately does not waive a party's ability to bring a later challenge.

5.      Except as provided in this Order, all Protected Information produced pursuant to this Order shall be used solely for the purposes of this action and for no other purpose whatsoever, and shall not be published to the general public in any form, or otherwise disclosed, disseminated, or transmitted to any person, entity, or organization, except in accordance with the terms of this Order.

6.      Except as otherwise provided herein, any document or record designated as Protected Information may be disclosed only to the following Qualified Persons:

    i.      Members of the Plaintiffs' Executive Committees ("PECs"), and any support staff of such PEC members who require access to Protected Information in order to assist in the prosecution of this action and whose offices are in the United States, as well as attorneys who are members of the same law firm as a member of the PEC, so long as such attorneys are

licensed to practice law in the United States and have filed a notice of appearance on the docket

of this action;

        ii.      Attorneys who are licensed to practice law in the United States, whose

offices are in the United States and who have filed a notice of appearance on the docket of this

action on behalf of Defendants the Kingdom of Saudi Arabia and Dallah Avco, and any support

staff of such attorneys of record who require access to Protected Information in order to assist in

the defense of this action and whose offices are in the United States;

        iii.     Witnesses who are deposed by the PECs or counsel for Defendants the

Kingdom of Saudi Arabia and Dallah Avco in this action, but only to the extent the witnesses'

testimony may relate to documents designated as Protected Information;

        iv.     Experts or consultants whose offices are in the United States and who are

retained or consulted for this action by the PECs or counsel for Defendants the Kingdom of

Saudi Arabia and Dallah Avco, and any support staff for such experts or consultants who require

access to Protected Information in order to assist in the expert's or consultant's work for this

action and whose offices are in the United States;

        v.      Court reporters, stenographers, videographers and translators engaged to

translate and record deposition testimony, and their employees who are assisting in the

preparation of transcripts of such deposition testimony.

        Protected Information shall not be disclosed to Plaintiffs or Defendants absent

consent of the FBI or further Order of the Court pursuant to ¶¶ 4, 7, 11 or 13 of this Order.

       7.     Any party to this litigation may seek the consent of the FBI to share a particular

document (or a portion thereof) that contains Protected Information with an individual who is not

a Qualified Person (a "Limited Access Individual"). In making this application to the FBI, the

party must identify the specific Protected Information to be shared, the name and address of the

individual to whom such Protected Information is to be shared, and make a showing of good cause for sharing such Protected Information.

    i.  If the FBI consents to the disclosure, a copy of this Order shall be delivered to the Limited Access Individual, at or before the time of disclosure, by the attorney making the disclosure. Prior to receiving access to Protected Information, each such Limited Access Individual shall agree to be bound by the terms of this order by executing an Acknowledgement in the form attached hereto. The provisions of this Order shall be binding upon each such Limited Access Individual to whom disclosure is made.

    ii.  A Limited Access Individual is only authorized to access the specific Protected Information that was identified in the application and approved by the FBI. The FBI's consent to such disclosure should not be deemed to be authorization to disclose any additional Protected Information to such Limited Access Individual.

    iii.  To the extent there is any dispute between the party seeking to make a disclosure to a non-Qualified Person under this paragraph and the FBI, within fourteen (14) days of making the application, the party and the FBI shall meet and confer and attempt to resolve the dispute. If the dispute is not resolved within the fourteen (14) day period, the party making the application shall submit to the Court a motion (filed under seal) identifying the individual and the specific Protected Information that the party seeks to share, as well as the justification for why this information should be shared. The FBI shall have ten (10) business days to file papers in opposition to such motion.

   8.  A copy of this Order shall be delivered to each Qualified Person to whom a disclosure of Protected Information is made, at or before the time of disclosure, by the attorney making the disclosure. Prior to receiving access to Protected Information, each such Qualified Person shall agree to be bound by the terms of this order by executing an Acknowledgement in

the form attached hereto. The provisions of this Order shall be binding upon each such person to whom disclosure is made.

9.    All Qualified Persons to whom Protected Information is disclosed are hereby prohibited from disclosing information designated as Protected Information to any unauthorized person, except as provided in this Order.

10.    Any deposition questions intended to elicit testimony regarding Protected Information shall be conducted only in the presence of persons authorized to review the Protected Information.  Pending review of the deposition transcript by the FBI, any deposition transcripts containing such questions and testimony shall be automatically subject, in their entirety, to the same protections and precautions as the Protected Information.  Upon receipt of the deposition transcript, a copy shall be served on the FBI by the PECs.  The FBI will have thirty (30) days to review and designate the portions of the deposition transcript that contain Protected Information.  The portions of the deposition transcript designated by the FBI shall be stamped "Subject to FBI Protective Order" and made subject to the provisions of this Order.

11.    If any party seeks to file with the Court any Protected Information, or portions of pleadings, motions, or other papers that disclose such Protected Information, that party must either obtain prior permission in writing from the FBI or file the information under seal.  The filing party will not need to separately file a motion or submission seeking leave to file such papers under seal prior to filing, and this Order shall constitute authorization for such sealed filing.  The filing party shall, on the same date as the papers are filed under seal, serve upon counsel for the relevant parties and the FBI, and provide to the Court, an unredacted copy of the papers filed under seal as well as a copy of the papers that the party proposes to file on ECF with all Protected information redacted.  The FBI and any relevant parties shall have seven (7) days to inform the filing party whether it opposes any redactions proposed by the filing party, and/or whether it proposes any additional redactions to any such papers.  The filing party may then file

the documents on ECF with the redactions agreed upon (or not objected to) by the FBI and any

relevant parties.  To the extent there is any dispute between the filing party and the FBI and/or

any relevant party regarding the information to be redacted from the publicly-filed documents,

within fourteen (14) days of sealed filing, the filing party and the FBI and/or any relevant party

shall meet and confer and jointly submit to the Court a motion identifying the documents, or

portions thereof, that the FBI and/or any relevant party believes should be redacted and filed

under seal, along with the justification for why the information should be filed under seal and

any statement by the filing party in opposition to filing under seal.

      12.     Nothing in this Order shall preclude any disclosure of Protected Information to

any judge, magistrate, or employee of the Court for purposes of this action.

      13.     Any party intending to disclose Protected Information in open court must notify

the FBI at least 30 days prior to such disclosure, and that party and the FBI shall meet and

confer.  If the FBI does not consent to the disclosure of the information in open court, the party

intending to disclose the information must file a motion under seal and serve said motion upon

counsel for the relevant parties and the FBI at least 14 days prior to the intended disclosure.  The

FBI shall have 10 days to respond to such motion.  Protected Information shall not be disclosed

in open court unless specifically authorized by Court order after the filing of said motion.  To the

extent the scheduling of hearings or deadlines set by the court do not afford adequate time to

comply with the notice and service requirements of this provision, the party intending to disclose

Protected Information in open court and the FBI will confer in good faith in an effort to

accelerate the notice and service requirements of this provision, but in any case, Protected

Information shall not be disclosed in open court unless specifically authorized by the FBI or

pursuant to a Court order.

      14.     Within thirty days after the final disposition of this action, including any and all

appeals, all Protected Information and copies thereof in the possession of any Qualified Persons

shall be returned to the FBI or destroyed.  If the Protected Information is destroyed, the party that

has destroyed the Protected Information shall certify in writing to counsel of record for the FBI

that the Protected Information in its possession has been destroyed.

15.    If the FBI inadvertently fails to designate material as Protected Information at the

time of production, this shall not in itself be deemed a waiver of any claim of confidentiality as

to that Protected Information.  The FBI may correct its failure to designate an item as Protected

Information by taking reasonable steps to notify all receiving persons of its failure, and by

promptly supplying all receiving persons with new copies of any documents bearing corrected

designations.  Within five business days of receiving copies of any documents bearing corrected

designations pursuant to this paragraph, the receiving persons shall return or destroy the

improperly designated materials, and certify in writing to the FBI that such materials have been

returned or destroyed.

16.    All service, notices, and applications that are to be provided under this Protective

Order to the FBI shall be effected by sending an email to the United States Attorney's Office for

the Southern District of New York at the following email addresses: sarah.normand@usdoj.gov

and jeannette.vargas@usdoj.gov.

17.    This Order does not constitute any ruling on the question of whether any

particular document or category of information is properly discoverable, and does not constitute

any ruling on any potential objection to the discoverability, relevance, or admissibility of any

document or information.  Nothing in this Order constitutes an agreement by the FBI to produce

any particular document or information in the litigation, and it is without prejudice to any

objection the FBI may have to any party's discovery requests.

18.    Nothing in this Order shall be construed as a waiver of any defense, right,

objection, or claim by any party or the FBI, including any objection to the production of

documents and any claim of privilege or other protection from disclosure.  Any disclosure of a

document (or portion thereof) or information by the FBI shall not constitute a waiver by the FBI of any privilege or other protection that may be applicable to any other document (or portion thereof) or information not disclosed.

19.     Nothing in this Order shall affect the right of any party or the FBI to seek additional protection against the disclosure of any documents or materials, or of the parties to seek additional disclosures.

20.     Nothing in this Order shall prevent the disclosure of Protected Information to Government authorities for purposes of enforcement of criminal laws or in furtherance of civil enforcement or regulatory proceedings.

21.     Nothing in this Order shall prevent any disclosure of Protected Information by FBI.

22.     The terms of this Order shall survive the termination of this action for purposes of enforcing this Order.


SO STIPULATED AND AGREED TO BY:


Dated:   November 2, 2018

    *Attorney for the United States of America*

    GEOFFREY S. BERMAN
    United States Attorney for the
    Southern District of New York

By: __*Jeannette Vargas*_____
    JEANNETTE A. VARGAS
    SARAH S. NORMAND
    Assistant United States Attorneys
    86 Chambers Street, Third Floor
    New York, New York 10007
    Telephone: (212) 637-2678/2709

*For the Plaintiffs Exec. Committees*

COZEN O'CONNOR

By:  *Sean P. Carter*
  Sean P. Carter
  COZEN O'CONNOR
  One Liberty Place
  1650 Market Street, Suite 2800
  Philadelphia, Pensylvania 19103
  Telephone: (215) 665-2105


MOTLEY RICE LLC

By:  *Robert T. Haefele*
  Robert T. Haefele
  MOTLEY RICE LLC
  28 Bridgeside Boulevard
  Mount Pleasant, South Carolina 29465
  Telephone: (845) 216-9184


KREINDLER & KREINDLER LLP

By:  *James P. Kreindler*
  James P. Kreindler
  KREINDLER & KREINDLER LLP
  750 Third Avenue
  New York, New York 10017
  Phone: 212-687-8181


SO ORDERED.


              _____
              SARAH NETBURN
              United States Magistrate Judge


November 14, 2018
New York, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
                                                      :
                                                      :
In re Terrorist Attacks of September 11, 2001,     :       03 MDL 1570 (GBD) (SN)
                                                      :
                                                      :
------------------------------------------------------------------ X

## <u>ACKNOWLEDGEMENT</u>

       I have read and I understand the Privacy Act Order and Protective Order for FBI

Documents entered by the Court in the case *In re Terrorist Attacks of September 11, 2001*, 03

MDL 1570(GBD)(SN), and I agree to be bound by its terms.


Date:              _____


Name (printed):     _____


Signature:          _____

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900
FACSIMILE:
(202) 326-7999

July 23, 2021

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

*Via ECF (under seal) and electronic mail*

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

Re:  *In re Terrorist Attacks on September 11, 2001*, 03-md-1570 (GBD) (SN)

Dear Judge Netburn:

I write on behalf of Defendant Kingdom of Saudi Arabia ("Saudi Arabia") to seek relief for a violation of the general protective order in this litigation, ECF No. 1900 ("MDL Protective Order"), through unauthorized disclosure of Musaed Al Jarrah's confidential deposition transcript to Michael Isikoff of Yahoo! News. Isikoff recently published details from the transcript, including verbatim quotations. *See* Ex. A (Michael Isikoff, *FBI tried to flip Saudi official in 9/11 investigation*, Yahoo! News, July 15, 2021). His article states that "a copy of the deposition – with some redactions for law-enforcement sensitive material – was obtained exclusively by Yahoo News." *Id.* at 2. The Court should order targeted discovery to determine who disclosed the transcript as a step towards enforcement of the MDL Protective Order.

1.     On June 17 and June 18, 2021, the Plaintiffs' Executive Committees ("Plaintiffs") took Al Jarrah's deposition. *See* Ex. B (excerpts of Al Jarrah deposition transcripts). Al Jarrah is a former employee who worked in Saudi Arabia's Embassy during the relevant period. He had no obligation to testify. He voluntarily agreed to do so in part given the confidentiality protections in place. Undersigned counsel represented Al Jarrah in connection with his deposition. At the deposition, Plaintiffs introduced exhibits that were subject to the MDL Protective Order, and Al Jarrah answered questions about those exhibits. *See* Ex. B, ██████ ██████████████████████████████████. Those exhibits included documents that Saudi Arabia had voluntarily produced from the files of its Embassy that the Court has ruled are protected by the Vienna Convention on Diplomatic Relations and must be filed only under seal. *See id.* at ███████████████████████████████████████ ██████████████; *see also* ECF No. 4696 (sealing order), *objections overruled*, ECF No. 6532.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
July 23, 2021                          **FILED UNDER SEAL**
Page 2                          **SUBJECT TO MDL PROTECTIVE ORDER**



At the close of Al Jarrah's deposition, counsel for Saudi Arabia and Al Jarrah designated the deposition as confidential. *See id.* at 609:17-21. The court reporter marked the transcripts as confidential. *See id.* (top line of all pages). On June 9-11, 2021 and June 28-30, 2021, Plaintiffs also took the depositions of Omar Al Bayoumi, and Fahad Al Thumairy. Those depositions also discussed confidential information and the transcripts were also designated as confidential. As set forth in declarations submitted with this motion, Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen"), is the only entity acting on behalf of Saudi Arabia that has received the Al Jarrah, Al Bayoumi, or Al Thumairy transcripts. No person at Kellogg Hansen has sent those transcripts to anyone not authorized to receive them.[2]

     **2.**     Michael Isikoff is a correspondent who covers this litigation. On July 5, 2021, Isikoff sent counsel for Saudi Arabia an email requesting comment on an article he was preparing. Ex. D3, ¶ 4 (Kellogg Decl.) & attach. A. That email asked for "any comments you can make in response to what Jim Kreindler had to say about where things stand – and how the depositions went." *Id.* The quotations attributed to "Jim Kreindler" stated: "If I could tell you now everything we knew about the Saudi role, you could see a resolution in Congress to declare war. I mean, it is so dramatic" and "[w]e are thrilled with how the depositions went . . . . I can say that we've exposed all kinds of lies. You know, one witness will contradict another. Each person wants to minimize their own role and point fingers at each other." *Id.* (boldface omitted). No one from Kellogg Hansen responded to Isikoff. *See* Exs. D2, ¶ 5, D3, ¶ 4.

---

[1]



[2] Exhibits D1 through D27 are declarations from everyone at Kellogg Hansen who has received or accessed the transcripts in the course of their work. Most who received the transcripts sent them to no one at all. *See* Ex. D3, D5-D27. Those who did share the transcripts sent them only to (1) employees of the firm, *see* Exs. D1, ¶¶ 3-5 (Shen Decl.), D2, ¶ 4 (Rapawy Decl.); (2) counsel for Plaintiffs, *see* Ex. D2, ¶ 3; (3) counsel for Dallah Avco, *see* Ex. D2, ¶ 3, (4) counsel for the FBI, *see* Exs. D1, ¶ 10, D2, ¶ 3; or (5) the Court and its personnel, *see* Ex. D2, ¶ 3, D4, ¶ 3. *See* ECF No. 1900, ¶ III.H.3 (setting out categories of persons authorized to receive confidential material); ECF No. 4255, ¶ 10 (authorizing disclosures of transcripts to FBI).

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
July 23, 2021            **FILED UNDER SEAL**
Page 3            **SUBJECT TO MDL PROTECTIVE ORDER**

On July 15, 2021, Yahoo! News published under Isikoff's byline the article attached as Exhibit A. As noted above, the article states that a "copy of the deposition – with some redactions for law-enforcement sensitive material – was obtained exclusively by Yahoo News." Ex. A, at 2. The FBI has not yet approved any redactions of the Al Jarrah transcripts.

Details in the article corroborate Isikoff's statement that he has a copy of the transcripts. The article correctly identifies the number of pages (more than 600). It quotes verbatim from Al Jarrah's ███████████████████████ his denial that before the 9/11 attacks he ever heard the names of Khalid Al Mihdhar and Nawaf Al Hazmi. *Compare* Ex. A, at 4-5 *with* Ex. B, at ████████████████. It also purports to give an exact count of the number of times that Al Jarrah used the words "I don't remember." *See* Ex. A, at 7.

The July 15 article contains no direct quotations attributed to Plaintiffs' counsel. We also have not found any other published article containing the quotations that Isikoff attributed to Plaintiffs' counsel in his July 5 email. But the July 15 article does set out "[t]he families' lawyers[']" point of view on the matters it discusses, describing the Al Jarrah, Al Bayoumi, and Al Thumairy depositions as "frustrating" but stating that "the lawyers are . . . making what they believe can be a powerful circumstantial case." Ex. A, at 7-8. Counsel for Plaintiffs are also quoted by name in other articles that Isikoff has written this month referring to this litigation.[3]

3.      The MDL Protective Order states that a "Receiving Party may use Protected Material . . . only for prosecuting, defending, or attempting to settle this litigation," ECF No. 1900, ¶ III.H.1; that "Protected Material may be disclosed only to the categories of persons and under the conditions described in this order," *id.*; and that "Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order," *id.* ¶ III.H.2. Depositions marked as containing confidential material "shall be treated in accordance with the provisions of this Order." *Id.* ¶ III.G.4. The deposition transcripts here were so marked.

The facts before the Court show that a violation of the MDL Protective Order has occurred. The article's statement that "Yahoo News" had "obtained" a "copy of the deposition," combined with the corroborating details in the article about the contents of the confidential Al Jarrah deposition transcripts, indicate that Isikoff has a copy of those confidential transcripts. He could have obtained them only through a violation of the MDL Protective Order. Isikoff's public and private statements also provide reason to believe that he had substantive discussions with Plaintiffs' counsel concerning the depositions at the time he was preparing the July 15 article.

4.      This Court has broad authority to enforce and devise remedies for violations of its discovery orders. Because the MDL Protective Order was issued pursuant to Federal Rule of

---

[3] *See* Ex. C, at 2, 6 (Michael Isikoff, *Prior to his murder, Jamal Khashoggi offered to help 9/11 victims suing Saudi Arabia*, Yahoo! News, July 10, 2021) (offering an "exclusive account" from Plaintiffs' investigator "Catherine Hunt," and quoting "Jim Kreindler").

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
July 23, 2021                    **FILED UNDER SEAL**
Page 4                    **SUBJECT TO MDL PROTECTIVE ORDER**

Civil Procedure 26(c), *see* ECF No. 1900 preamble, the Court has authority to enforce it under Federal Rule of Civil Procedure 37(b). *See, e.g., Jay v. Spectrum Brands Holdings, Inc.*, 2015 WL 6437581, at *5 (S.D.N.Y. Oct. 20, 2015) ("[T]his Court has consistently held that a protective order issued under Rule 26(c) can be enforced through Rule 37(b)."); *see also In re Bouchard Transp. Co.*, 2018 WL 1581992, at *1 (S.D.N.Y. Mar. 28, 2018); *Schiller v. City of New York*, 2007 WL 1623108, at *3 (S.D.N.Y. June 5, 2007). In addition, the Court also has "inherent power to enforce [its] own orders" and to "issue orders designed to correct wrongs committed through its process." *Hunt v. Enzo Biochem, Inc.*, 904 F. Supp. 2d 337, 344 (S.D.N.Y. 2012) (discussing the power to enforce confidentiality orders).

Rule 37(b) states that the Court may "issue further just orders" upon a finding that a discovery order has been violated, including but not limited to sanctions. The Court's inherent powers include "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). The MDL Protective Order provides that "any violation of this Order is punishable by money damages . . . equitable relief, injunctive relief, sanctions or any other remedy as the Court deems appropriate." ECF No. 1900, ¶ III.M.2. All of these sources grant the Court flexibility to investigate and remedy the violation of the MDL Protective Order here.

    5.    The Court should investigate or authorize Saudi Arabia to investigate the circumstances of this serious violation. Saudi Arabia respectfully submits that the Court should follow the procedure suggested in *Schiller v. City of New York* to deal with a similar situation.

In that case, the City of New York and its Police Department (collectively, the "City") produced confidential police intelligence documents to protestors who alleged they had been wrongfully arrested. *See* 2007 WL 1623108, at *1. The *New York Times* published articles suggesting its reporters had the documents. *See id.* at *2. The City asked the Court to order the protestors' attorneys to declare under oath whether they had or had not given the *Times* the documents. *See id.* at *4. Judge Francis declined, but said he would "consider granting the relief requested by the defendants" if he "were satisfied that any breach of the protective orders most likely originated with plaintiffs' counsel." *Id.* That would require the City to "provide declarations from everyone who had access to the Intelligence Documents, attesting that they did not disclose the documents in violation of the protective order, and identifying everyone to whom they did provide the documents." *Id.* By doing so, the City could establish "a complete and accurate chain of custody" and its "lack of responsibility for the breach." *Id.*

Here, Saudi Arabia is showing it was not responsible for the breach of confidentiality by submitting sworn declarations from every individual who, while acting as counsel, or at the direction of counsel for Saudi Arabia in this matter, accessed or received the Al Jarrah deposition transcripts. That is enough to "shift . . . the burden . . . [to] demonstrat[e] . . . innocence," *id.*, to the other parties who received the transcripts – particularly counsel for Plaintiffs who have been in contact with Isikoff about his recent articles. Saudi Arabia respectfully requests that the Court now direct all other entities or individuals with access to the transcripts to submit declarations to

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
July 23, 2021                **FILED UNDER SEAL**
Page 5                **SUBJECT TO MDL PROTECTIVE ORDER**

the Court similar to those submitted by Saudi Arabia. Further, because counsel for Plaintiffs communicated with Isikoff concerning the Al Jarrah, Al Bayoumi, and Al Thumairy depositions at or around the time that Isikoff published the article, the Court should direct similar disclosures as to the Al Bayoumi and Al Thumairy transcripts; and should direct each declarant also to identify, describe, and where applicable produce, communications with Isikoff from June 1, 2021 to the present. A proposed order is being sent to chambers with this letter.

In the alternative, if the Court does not order that the above disclosures be made to the Court directly, Saudi Arabia respectfully requests authorization to conduct limited, targeted party and third-party discovery to investigate this violation of the MDL Protective Order.

Before sending this letter, Saudi Arabia requested the positions of Plaintiffs, Dallah Avco, all parties whose counsel attended the deposition, and the FBI on the relief sought. Various Plaintiffs' firms responded separately, including some not on the Plaintiffs' Executive Committees. All Plaintiffs who responded represented that they had not given the transcripts to Isikoff. Some, but not all, represented that they had no communications with him. Several disagreed that the intervention of the Court was required and suggested a voluntary exchange of information. Dallah Avco consented to the relief requested. The FBI agreed that inquiry was warranted, but asked that the FBI and the Department of Justice ("DOJ") not be required to submit declarations, at least for now.[4] Saudi Arabia proceeded with this motion because a Court-supervised process is appropriate to investigate this violation of the Court's order and because inquiry into communications with Isikoff is a necessary part of that process.

\* \* \*

As the Second Circuit observed in *Eli Lilly & Co. v. Goldstein*, 617 F.3d 186 (2d Cir. 2010), inability to enforce protective orders would "eviscerate courts' ability to manage discovery, and, hence, litigation." *Id.* at 195. Saudi Arabia has voluntarily produced thousands of pages of confidential material from its Embassy and the highest offices of its government, relying on the MDL Protective Order to keep those documents confidential. Al Jarrah testified voluntarily ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████.
He too should have been able to rely on the MDL Protective Order for protection against the "embarrassment, oppression, or undue burden," Fed. R. Civ. P. 26(c), of having those questions and answers made public. The Court and the parties have also spent untold hours developing and applying rules and procedures to protect confidential information. The party or counsel who disclosed the transcripts to Isikoff has shown contempt for that process. The Court should act to protect the integrity of its proceedings and ensure future respect for its orders.

---

[4] Saudi Arabia agrees that the FBI need not submit declarations at this time because, to the best of our knowledge, the FBI had only rough versions of the Al Jarrah transcripts and the page count in the Isikoff article ("more than 600") matches the final versions, not the rough.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
July 23, 2021            **FILED UNDER SEAL**
Page 6           **SUBJECT TO MDL PROTECTIVE ORDER**

Respectfully submitted,

/s/ *Michael K. Kellogg*

Michael K. Kellogg
*Counsel for the Kingdom of Saudi Arabia*

cc:     Counsel for Plaintiffs, Dallah Avco, and the FBI
       All counsel who attended the deposition of Musaed Al Jarrah, Omar Al Bayoumi, or
       Fahad Al Thumairy

# Exhibits
# D1-D27

## FILED UNDER SEAL

<u>Exhibits</u>

D1 – Declaration of Andrew C. Shen
D2 – Declaration of Gregory G. Rapawy
D2A – Declaration of Gregory G. Rapawy, Exhibit A
D3 – Declaration of Michael K. Kellogg
D3A – Declaration of Michael K. Kellogg, Exhibit A
D4 – Declaration of Carolina Parra
D5 – Declaration of Sami Ahmed
D6 – Declaration of Kimberly A. Briggs
D7 – Declaration of Robert J. Brown
D8 – Declaration of David M. Burke
D9 – Declaration of Susan D. Cohen
D10 – Declaration of Peter J. Curtin
D11 – Declaration of Daniel Dorris
D12 – Declaration of Matthew M. Duffy
D13 – Declaration of Mark C. Hansen
D14 – Declaration of Seth A. Hochman
D15 – Declaration of Jason B. Hois
D16 – Declaration of Matthew R. Huppert
D17 – Declaration of Robert L. Moore
D18 – Declaration of Bernadette Murphy
D19 – Declaration of Summer Norwood
D20 – Declaration of Christopher Reed
D21 – Declaration of Kira A. Schumm
D22 – Declaration of Chandler J. Sella
D23 – Declaration of Eve Soliman
D24 – Declaration of Sean Sullivan
D25 – Declaration of Kyler Wheeler
D26 – Declaration of Marilyn R. Williams
D27 – Declaration of Christopher M. Young

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) ) ) | Civil Action No. 03 MDL 1570 (GBD) (SN) ECF Case |

This document relates to:

*All cases*

### <u>DECLARATION OF ANDREW C. SHEN</u>

I, Andrew C. Shen, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

1.      I am an attorney with the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen"). I represent the Kingdom of Saudi Arabia ("Saudi Arabia") and several witnesses who have been deposed in the above-captioned action, including Mussaed Al Jarrah, Omar Al Bayoumi, and Fahad Al Thumairy. I am admitted to practice in this Court.

2.      I personally defended the depositions of Mussaed Al Jarrah (on June 17 and 18, 2021), Omar Al Bayoumi (June 9, 10, and 11, 2021), and Fahad Al Thumairy (June 28, 29, and 30, 2021). At the conclusion of each of these depositions, the entire transcript of each deposition was designated as Confidential under the MDL Protective Order consistent with paragraph 63 of the Deposition Protocol, pending Kellogg Hansen's further confidentiality review.

3.      After each day of deposition testimony from the above witnesses, I received a copy of the rough transcript of the deposition testimony by email from the court reporter assigned to each deposition. Following the conclusion of each of the above depositions, I received a final transcript of each deposition by email from the court reporter assigned to each deposition.

**Exhibit D1**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

4.      Copies of the rough and final transcripts of these depositions were circulated to an internal email listserv consisting of the following Kellogg Hansen employees:  Michael K. Kellogg, Mark C. Hansen, Gregory G. Rapawy, Daniel V. Dorris, Christopher M. Young, Sami M. Ahmed, Matthew R. Huppert, Matthew M. Duffy, Robert L. Moore, Bernadette M. Murphy, David M. Burke, Susan D. Cohen, Eve M. Soliman, Sean D. Sullivan, Carolina Parra, Seth A. Hochman, Peter J. Curtin, Robert J. Brown, and myself.

5.      Copies of the final transcripts of these depositions are also saved to an internal Kellogg Hansen TextMap database.  Access to this TextMap database is limited to the same individuals set forth in paragraph 4 and the following additional individuals: Kimberly Briggs, Jason Hois, Chris Reed, Chandler Sella, Kyle Wheeler, Kira Schumm, and Marilyn Williams.

6.      In addition, copies of the rough and final transcripts of these depositions are saved on Kellogg Hansen's internal document management system called "Interwoven."  Interwoven tracks all individuals who have accessed the Interwoven versions of these transcripts.

7.      Interwoven indicates that as of July 16, 2021 the only individuals who have accessed the Interwoven rough or final transcripts of the Al Jarrah deposition are:  Gregory G. Rapawy, Carolina Parra, and myself.

8.      Interwoven indicates that as of July 16, 2021 the only individuals who have accessed the Interwoven rough or final transcripts of the Al Bayoumi deposition are:  Carolina Parra, Christopher M. Young, and myself.

9.      Interwoven indicates that as of July 16, 2021 the only individuals who have accessed the Interwoven rough or final transcripts of the Al Thumairy deposition are:  Carolina Parra and myself.

**Exhibit D1**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

10.     I have never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with anyone other than the individuals listed in paragraphs 4 and 5 above, with one exception.  On June 18, 2021, I forwarded a copy of the rough transcripts of the Al Jarrah deposition to Sarah Normand, counsel for the United States.

11.     Copies of the rough and final transcripts of the Al Jarrah, Al Bayoumi, and Al Thumairy depositions have not been shared with any Saudi counsel representing Saudi Arabia.

12.     I have not had any written or oral communication with Michael Isikoff and have never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.  I have no knowledge of anyone at Kellogg Hansen, or anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  July 19, 2021

_____
Andrew C. Shen

- 3 -

**Exhibit D1**

FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————————————— )
IN RE:  TERRORIST ATTACKS ON     )     Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001          )     ECF Case
———————————————————— )

This document relates to:

*All cases*

## DECLARATION OF GREGORY G. RAPAWY

I, Gregory G. Rapawy, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

1.        I am an attorney with the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen").  I represent the Kingdom of Saudi Arabia ("Saudi Arabia") in the above-captioned action.

2.        I have received and accessed copies of the rough and final transcripts of the depositions of Mussaed Al Jarrah (on June 17 and 18, 2021), Omar Al Bayoumi (June 9, 10, and 11, 2021), and Fahad Al Thumairy (June 28, 29, and 30, 2021).

3.        I have never provided copies of the rough or final transcripts of these depositions to anyone outside of Kellogg Hansen, with one exception.  On July 13, 2021, I caused to be filed under seal in this case Saudi Arabia's opposition to Plaintiffs' Rule 72 objections to this Court's June 15, 2021 Order.  *See* ECF No. 6947.  That opposition references and attaches excerpts of the Al Jarrah deposition transcript.  On July 13, 2021, I emailed copies of that filing, including exhibits, to Judge Netburn's chambers and to counsel of record for Plaintiffs, Dallah Avco, and the United States.  A copy of that email is attached as Exhibit A to this Declaration.

- 1 -

**Exhibit D2**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

4.      In preparation for that filing, I also shared draft and final versions of that filing and the Al Jarrah deposition transcripts with Summer Norwood, a Kellogg Hansen paralegal.

5.      I have not had any written or oral communication with Michael Isikoff after June 1, 2021, and have never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff. I have no knowledge of anyone at Kellogg Hansen, or anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff. Mr. Isikoff may have contacted me in the past to request comment on a story he was working on. I have never given him a comment about this litigation.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: July 21, 2021

_____
Gregory G. Rapawy

-2-

**Exhibit D2**

**From:** Rapawy, Gregory G.
**Sent:** Tuesday, July 13, 2021 10:51 PM
**To:** 'Netburn_NYSDChambers@nysd.uscourts.gov' <Netburn_NYSDChambers@nysd.uscourts.gov>
**Cc:** 'jflowers@motleyrice.com' <jflowers@motleyrice.com>; 'rhaefele@motleyrice.com'
<rhaefele@motleyrice.com>; Kreindler, James <jkreindler@kreindler.com>; 'spounian@kreindler.com'
<spounian@kreindler.com>; Maloney, III, Andrew <amaloney@kreindler.com>;
'mbenett@kreindler.com' <mbenett@kreindler.com>; 'scarter1@cozen.com' <scarter1@cozen.com>;
Tarbutton, Joseph <starbutton@cozen.com>; 'Goldman, Jerry S.' <Jgoldman@andersonkill.com>;
'bstrong@andersonkill.com' <bstrong@andersonkill.com>; 'sarah.normand@usdoj.gov'
<sarah.normand@usdoj.gov>; Vargas, Jeannette <jeannette.vargas@usdoj.gov>;
'rkry@mololamken.com' <rkry@mololamken.com>; 'enitz@mololamken.com'
<enitz@mololamken.com>; Kellogg, Michael K. <mkellogg@kelloghansen.com>; Hansen, Mark C.
<mhansen@kelloghansen.com>; Shen, Andrew C. <ashen@kelloghansen.com>; Huppert, Matthew R.
<mhuppert@kelloghansen.com>
**Subject:** CONFIDENTIAL -- In re Terrorist Attacks on September 11, 2001, No. 1:03-md-01570-GBD-SN

ATTACHMENTS SUBJECT TO FBI AND MDL PROTECTIVE ORDER

Dear Judge Netburn:

As indicated in the letter filed earlier on the public docket, ECF No. 6947, Saudi Arabia is filing under seal an opposition and exhibits to Plaintiffs' Rule 72 objections to this Court's June 15, 2021 order.

Attached are a copy of ECF No. 6947, clean and highlighted copies of Saudi Arabia's opposition, and clean and highlighted copies of Exhibits A and B. Red highlighting indicates proposed redactions for information subject to the FBI protective order. The FBI has not yet reviewed these proposed redactions. Yellow highlighting indicates proposed redactions for information subject to the MDL protective order. Saudi Arabia is the producing party for all MDL protected information in this filing.

Also attached is a courtesy copy of Exhibit C, which is already sealed in its entirety under this Court's order dated July 22, 2019.

Counsel for the Plaintiffs' Executive Committees, the FBI, and Dallah Avco are copied on this e-mail.

Regards,

Gregory G. Rapawy
Kellogg, Hansen, Todd, Figel & Frederick, PLLC
1615 M Street NW, Suite 400
Washington, DC 20036
main (202) 326-7900
direct (202) 326-7967

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.

**Exhibit D2A**

FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| _____ ) | |
| IN RE:  TERRORIST ATTACKS ON ) | Civil Action No. 03 MDL 1570 (GBD) (SN) |
| SEPTEMBER 11, 2001 ) | ECF Case |
| _____ ) | |

This document relates to:

_All cases_

## DECLARATION OF MICHAEL K. KELLOGG

I, Michael K. Kellogg, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of

perjury that:

1.      I am an attorney with the law firm of Kellogg, Hansen, Todd, Figel & Frederick,

P.L.L.C. ("Kellogg Hansen").  I represent the Kingdom of Saudi Arabia ("Saudi Arabia") in the

above-captioned action.

2.      I have received and accessed copies of the rough and final transcripts of the

depositions of Mussaed Al Jarrah (on June 17 and 18, 2021), Omar Al Bayoumi (June 9, 10, and

11, 2021), and Fahad Al Thumairy (June 28, 29, and 30, 2021).

3.      I have never provided copies of the rough or final transcripts of these depositions

to anyone outside of Kellogg Hansen.

4.      I have never shared any copy of the rough or final transcripts of the Al Jarrah, Al

Bayoumi, or Al Thumairy depositions with Michael Isikoff.  I have no knowledge of anyone at

Kellogg Hansen, or anyone working at Kellogg Hansen's direction, who has shared copies of the

rough or final transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr.

Isikoff.  Mr. Isikoff has contacted me in the past to request comment on a story he was working

Exhibit D3

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

on, but I have never given him comment about this case. A true and correct copy of a July 5, 2021 email from Mr. Isikoff to me is attached as Exhibit A.

     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: July 20, 2021

                                         Michael K. Kellogg

**Exhibit D3**

**From:** Michael Isikoff <misikoff@verizonmedia.com>
**Date:** July 5, 2021 at 12:59:34 PM EDT
**To:** "Kellogg, Michael K." <mkellogg@kellogghansen.com>, mkellog@khhte.com
**Subject: [EXTERNAL] questions for 9/11 lawsuit story**

Michael Kellogg-
With the depositions of Jarrah, Bayoumi and Thumairy now completed, am doing a story on the state of the 9/11 lawsuit in which I would appreciate any comments you can make in response to what Jim Kreindler had to say about where things stand-- and how the depositions went: **"If I could tell you now everything we knew about the Saudi role, you could see a resolution in Congress to declare war. I mean, it is so dramatic…"We are thrilled with how the depositions went,. I can say that we've exposed all kinds of lies. You know, one witness will contradict another. Each person wants to minimize their own role and point fingers  at each other."**
**This would be for a story slated for Wednesday so any comment appreciated by mid afternoon tomorrow.**
**Mike Isikoff**
**Yahoo News**
**c 202-258-2535**

**Exhibit D3A**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| IN RE:  TERRORIST ATTACKS ON | ) | Civil Action No. 03 MDL 1570 (GBD) (SN) |
| SEPTEMBER 11, 2001 | ) | ECF Case |
| | ) | |

This document relates to:

*All cases*

## <u>DECLARATION OF CAROLINA PARRA</u>

I, Carolina Parra, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

1.      I am a legal assistant with the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen").

2.      I have received copies of the rough and final transcripts of the depositions of Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's representation of Saudi Arabia in the above-captioned case.

3.      I have never provided copies of the rough or final transcripts of these depositions to anyone outside of Kellogg Hansen, with one exception.  On July 13, 2021, I assisted with the sealed filing in this case of Saudi Arabia's opposition to Plaintiffs' Rule 72 objections to this Court's June 15, 2021 Order.  *See* ECF No. 6947.

4.      I have not had any written or oral communication with Michael Isikoff and have never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.  I have no knowledge of anyone at Kellogg Hansen, or

**Exhibit D4**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  July 21, 2021

Carolina Parra

**Exhibit D4**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| _____ | ) | |
| IN RE:  TERRORIST ATTACKS ON | ) | Civil Action No. 03 MDL 1570 (GBD) (SN) |
| SEPTEMBER 11, 2001 | ) | ECF Case |
| _____ | ) | |

This document relates to:

*All cases*

## <u>DECLARATION OF SAMI AHMED</u>

I, Sami Ahmed, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

1.      I am an attorney with the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen").

2.      I have received copies of the rough and final transcripts of the depositions of Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's representation of Saudi Arabia in the above-captioned case.

3.      I have never provided copies of the rough or final transcripts of these depositions to anyone outside of Kellogg Hansen.

4.      I have not had any written or oral communication with Michael Isikoff and have never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.  I have no knowledge of anyone at Kellogg Hansen, or anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

**Exhibit D5**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

      I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  July 19, 2021

 

 

_____

Sami Ahmed

**Exhibit D5**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Civil Action No. 03 MDL 1570 (GBD) (SN) ECF Case |

This document relates to:

*All cases*

## <u>DECLARATION OF KIMBERLY AUSTIN BRIGGS</u>

I, Kimberly Austin Briggs, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

1.     I am a Senior Staff Attorney with the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen").

2.     I have received copies of the rough and final transcripts of the depositions of Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's representation of Saudi Arabia in the above-captioned case.

3.     I have never provided copies of the rough or final transcripts of these depositions to anyone outside of Kellogg Hansen.

4.     I have not had any written or oral communication with Michael Isikoff and have never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.  I have no knowledge of anyone at Kellogg Hansen, or anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

- 1 -

**Exhibit D6**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: July 19, 2021

Kimberly Austin Briggs

- 2 -

**Exhibit D6**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---
)
IN RE:  TERRORIST ATTACKS ON ) Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001 ) ECF Case
---
)

This document relates to:

*All cases*

## DECLARATION OF ROBERT J. BROWN

I, Robert J. Brown, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

1.      I am a legal assistant with the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen").

2.      I have received copies of the rough and final transcripts of the depositions of Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's representation of Saudi Arabia in the above-captioned case.

3.      I have never provided copies of the rough or final transcripts of these depositions to anyone outside of Kellogg Hansen.

4.      I have not had any written or oral communication with Michael Isikoff and have never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.  I have no knowledge of anyone at Kellogg Hansen, or anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

**Exhibit D7**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  July 19, 2021

_____

Robert J. Brown

**Exhibit D7**

FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) ) ) | Civil Action No. 03 MDL 1570 (GBD) (SN) ECF Case |

This document relates to:

*All cases*

## DECLARATION OF DAVID MICHAEL BURKE

I, David Michael Burke, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

1.      I am a paralegal with the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen").

2.      I have received copies of the rough and final transcripts of the depositions of Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's representation of Saudi Arabia in the above-captioned case.

3.      I have never provided copies of the rough or final transcripts of these depositions to anyone outside of Kellogg Hansen.

4.      I have not had any written or oral communication with Michael Isikoff and have never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.  I have no knowledge of anyone at Kellogg Hansen, or anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

**Exhibit D8**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge and belief.

Dated: July 21, 2021

David Michael Burke

- 2 -

**Exhibit D8**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————————————— )
IN RE:  TERRORIST ATTACKS ON                    )          Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001                                      )          ECF Case
———————————————————— )

This document relates to:

*All cases*

## <u>DECLARATION OF SUSAN D. COHEN</u>

I, Susan D. Cohen, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury

that:

1.      I am a paralegal with the law firm of Kellogg, Hansen, Todd, Figel & Frederick,

P.L.L.C. ("Kellogg Hansen").

2.      I have received copies of the rough and final transcripts of the depositions of

Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and

Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's

representation of Saudi Arabia in the above-captioned case.

3.      I have never provided copies of the rough or final transcripts of these depositions

to anyone outside of Kellogg Hansen.

4.      I have not had any written or oral communication with Michael Isikoff and have

never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al

Thumairy depositions with Mr. Isikoff.  I have no knowledge of anyone at Kellogg Hansen, or

anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final

transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

**Exhibit D9**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  July 19, 2021

 

                                 _____

                                 Susan D. Cohen

Exhibit D9

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
                                                    )
IN RE:  TERRORIST ATTACKS ON         )        Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001                           )        ECF Case
_____  )

This document relates to:

*All cases*

## <u>DECLARATION OF PETER J. CURTIN</u>

I, Peter J. Curtin, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury

that:

1.      I am a legal assistant with the law firm of Kellogg, Hansen, Todd, Figel &

Frederick, P.L.L.C. ("Kellogg Hansen").

2.      I have received copies of the rough and final transcripts of the depositions of

Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and

Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's

representation of Saudi Arabia in the above-captioned case.

3.      I have never provided copies of the rough or final transcripts of these depositions

to anyone outside of Kellogg Hansen.

4.      I have not had any written or oral communication with Michael Isikoff and have

never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al

Thumairy depositions with Mr. Isikoff.  I have no knowledge of anyone at Kellogg Hansen, or

anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final

transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

- 1 -

**Exhibit D10**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  July 19, 2021

_____
Peter J. Curtin

**Exhibit D10**

FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| _____ | ) | |
| IN RE:  TERRORIST ATTACKS ON | ) | Civil Action No. 03 MDL 1570 (GBD) (SN) |
| SEPTEMBER 11, 2001 | ) | ECF Case |
| _____ | ) | |

This document relates to:

*All cases*

## <u>DECLARATION OF DANIEL DORRIS</u>

I, Daniel Dorris, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

1.　I am an attorney with the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen").

2.　I have received copies of the rough and final transcripts of the depositions of Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's representation of Saudi Arabia in the above-captioned case.

3.　I have never provided copies of the rough or final transcripts of these depositions to anyone outside of Kellogg Hansen.

4.　I have not had any written or oral communication with Michael Isikoff and have never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.  I have no knowledge of anyone at Kellogg Hansen, or anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

- 1 -

**Exhibit D11**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  July 18, 2021

_____

Daniel Dorris

**Exhibit D11**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

IN RE: TERRORIST ATTACKS ON       )      Civil Action No. 03 MDL 1570 (GBD) (SN)

SEPTEMBER 11, 2001                )      ECF Case

_____ )

This document relates to:

_All cases_

### <u>DECLARATION OF MATTHEW M. DUFFY</u>

I, Matthew M. Duffy, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of

perjury that:

1.      I am an attorney with the law firm of Kellogg, Hansen, Todd, Figel & Frederick,

P.L.L.C. ("Kellogg Hansen").

2.      I have received copies of the rough and final transcripts of the depositions of

Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and

Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's

representation of Saudi Arabia in the above-captioned case.

3.      I have never provided copies of the rough or final transcripts of these depositions

to anyone outside of Kellogg Hansen.

4.      I have not had any written or oral communication with Michael Isikoff and have

never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al

Thumairy depositions with Mr. Isikoff. I have no knowledge of anyone at Kellogg Hansen, or

anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final

transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

**Exhibit D12**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  July 19, 2021

_____
Matthew M. Duffy

**Exhibit D12**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| _____ | ) |  |
| IN RE:  TERRORIST ATTACKS ON | ) | Civil Action No. 03 MDL 1570 (GBD) (SN) |
| SEPTEMBER 11, 2001 | ) | ECF Case |
| _____ | ) |  |

This document relates to:

*All cases*

## <u>DECLARATION OF MARK C. HANSEN</u>

I, Mark C. Hansen, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

1.      I am an attorney with the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen").

2.      I have received copies of the rough and final transcripts of the depositions of Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's representation of Saudi Arabia in the above-captioned case.

3.      I have never provided copies of the rough or final transcripts of these depositions to anyone outside of Kellogg Hansen.

4.      I have not had any written or oral communication with Michael Isikoff and have never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.  I have no knowledge of anyone at Kellogg Hansen, or anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

- 1 -

**Exhibit D13**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  July 20, 2021

_____
Mark C. Hansen

**Exhibit D13**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
)
IN RE: TERRORIST ATTACKS ON ) Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001 ) ECF Case
_____ )

This document relates to:

_All cases_

### <u>DECLARATION OF SETH A. HOCHMAN</u>

I, Seth A. Hochman, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of

perjury that:

1.      I am a legal assistant with the law firm of Kellogg, Hansen, Todd, Figel &

Frederick, P.L.L.C. ("Kellogg Hansen").

2.      I have received copies of the rough and final transcripts of the depositions of

Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and

Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's

representation of Saudi Arabia in the above-captioned case.

3.      I have never provided copies of the rough or final transcripts of these depositions

to anyone outside of Kellogg Hansen.

4.      I have not had any written or oral communication with Michael Isikoff and have

never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al

Thumairy depositions with Mr. Isikoff. I have no knowledge of anyone at Kellogg Hansen, or

anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final

transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

**Exhibit D14**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  July 19, 2021

_____
Seth A. Hochman

**Exhibit D14**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                  )
IN RE:  TERRORIST ATTACKS ON       )     Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001               )     ECF Case
_____ )

This document relates to:

_All cases_

### <u>DECLARATION OF JASON B. HOIS</u>

I, Jason B. Hois, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

1.      I am a legal assistant with the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen").

2.      I have received copies of the rough and final transcripts of the depositions of Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's representation of Saudi Arabia in the above-captioned case.

3.      I have never provided copies of the rough or final transcripts of these depositions to anyone outside of Kellogg Hansen.

4.      I have not had any written or oral communication with Michael Isikoff and have never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.  I have no knowledge of anyone at Kellogg Hansen, or anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

**Exhibit D15**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  July 19, 2021

_____

Jason B. Hois

**Exhibit D15**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
                                                                )
IN RE:  TERRORIST ATTACKS ON              )          Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001                                )          ECF Case
_____ )

This document relates to:

*All cases*

**<u>DECLARATION OF MATTHEW R. HUPPERT</u>**

I, Matthew R. Huppert, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of

perjury that:

1.        I am an attorney with the law firm of Kellogg, Hansen, Todd, Figel & Frederick,

P.L.L.C. ("Kellogg Hansen").

2.        I have received copies of the rough and final transcripts of the depositions of

Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and

Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's

representation of Saudi Arabia in the above-captioned case.

3.        I have never provided copies of the rough or final transcripts of these depositions

to anyone outside of Kellogg Hansen.

4.        I have not had any written or oral communication with Michael Isikoff and have

never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al

Thumairy depositions with Mr. Isikoff.  I have no knowledge of anyone at Kellogg Hansen, or

anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final

transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

- 1 -

**Exhibit D16**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  July 19, 2021

_____

Matthew R. Huppert

**Exhibit D16**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| IN RE:  TERRORIST ATTACKS ON | ) | Civil Action No. 03 MDL 1570 (GBD) (SN) |
| SEPTEMBER 11, 2001 | ) | ECF Case |
| | ) | |

This document relates to:

*All cases*

## <u>DECLARATION OF ROBERT L. MOORE</u>

I, Robert L. Moore, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

1.     I am an attorney with the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen").

2.     I have received copies of the rough and final transcripts of the depositions of Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's representation of Saudi Arabia in the above-captioned case.

3.     I have never provided copies of the rough or final transcripts of these depositions to anyone outside of Kellogg Hansen.

4.     I have not had any written or oral communication with Michael Isikoff and have never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.  I have no knowledge of anyone at Kellogg Hansen, or anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

**Exhibit D17**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  July 19, 2021

_____
Robert L. Moore

**Exhibit D17**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| _____ | ) | |
| IN RE:  TERRORIST ATTACKS ON | ) | Civil Action No. 03 MDL 1570 (GBD) (SN) |
| SEPTEMBER 11, 2001 | ) | ECF Case |
| _____ | ) | |

This document relates to:

*All cases*

### DECLARATION OF BERNADETTE MURPHY

I, Bernadette Murphy, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

1.      I am a paralegal with the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen").

2.      I have received copies of the rough and final transcripts of the depositions of Mussaed Al Jarrah (on June 17 and 18, 2021), Omar Al Bayoumi (June 9, 10, and 11, 2021), and Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's representation of Saudi Arabia in the above-captioned case.

3.      I have never provided copies of the rough or final transcripts of these depositions to anyone outside of Kellogg Hansen.

4.      I have not had any written or oral communication with Michael Isikoff and have never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.  I have no knowledge of anyone at Kellogg Hansen, or anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

- 1 -

**Exhibit D18**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: July 19, 2021

Bernadette Murphy

**Exhibit D18**

FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) ) ) | Civil Action No. 03 MDL 1570 (GBD) (SN) ECF Case |

This document relates to:

*All cases*

### DECLARATION OF SUMMER NORWOOD

I, Summer Norwood, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

1.      I am a paralegal with the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen").

2.      I have received copies of the rough and final transcripts of the depositions of Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's representation of Saudi Arabia in the above-captioned case.

3.      I have never provided copies of the rough or final transcripts of these depositions to anyone outside of Kellogg Hansen.

4.      I have not had any written or oral communication with Michael Isikoff and have never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.  I have no knowledge of anyone at Kellogg Hansen, or anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

- 1 -

**Exhibit D19**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge and belief.

Dated: July 19, 2021

Summer Norwood

**Exhibit D19**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____ )

IN RE:  TERRORIST ATTACKS ON      )      Civil Action No. 03 MDL 1570 (GBD) (SN)

SEPTEMBER 11, 2001               )      ECF Case

_____ )

This document relates to:

_All cases_

## <u>DECLARATION OF CHRISTOPHER REED</u>

I, Christopher Reed, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

1.       I am a Senior IT Specialist with the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen").

2.       I have received copies of the rough and final transcripts of the depositions of Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's representation of Saudi Arabia in the above-captioned case.

3.       I have never provided copies of the rough or final transcripts of these depositions to anyone outside of Kellogg Hansen.

4.       I have not had any written or oral communication with Michael Isikoff and have never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.  I have no knowledge of anyone at Kellogg Hansen, or anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

- 1 -

**Exhibit D20**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  July 19, 2021

_____
Christopher Reed

**Exhibit D20**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| _____ | ) | |
| IN RE: TERRORIST ATTACKS ON | ) | Civil Action No. 03 MDL 1570 (GBD) (SN) |
| SEPTEMBER 11, 2001 | ) | ECF Case |
| _____ | ) | |

This document relates to:

*All cases*

### DECLARATION OF KIRA A. SCHUMM

I, Kira A. Schumm, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

1.  I am a legal assistant with the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen").

2.  I have received copies of the rough and final transcripts of the depositions of Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's representation of Saudi Arabia in the above-captioned case.

3.  I have never provided copies of the rough or final transcripts of these depositions to anyone outside of Kellogg Hansen.

4.  I have not had any written or oral communication with Michael Isikoff and have never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff. I have no knowledge of anyone at Kellogg Hansen, or anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

**Exhibit D21**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  July 19, 2021

_Kira Schumm_
_____
Kira A. Schumm

**Exhibit D21**

FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

——————————————————————— )
 )
IN RE: TERRORIST ATTACKS ON ) Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001 ) ECF Case
——————————————————————— )

This document relates to:

*All cases*

## DECLARATION OF CHANDLER J. SELLA

I, Chandler J. Sella, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of

perjury that:

1.      I am a paralegal with the law firm of Kellogg, Hansen, Todd, Figel & Frederick,

P.L.L.C. ("Kellogg Hansen").

2.      I have received copies of the rough and final transcripts of the depositions of

Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and

Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's

representation of Saudi Arabia in the above-captioned case.

3.      I have never provided copies of the rough or final transcripts of these depositions

to anyone outside of Kellogg Hansen.

4.      I have not had any written or oral communication with Michael Isikoff and have

never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al

Thumairy depositions with Mr. Isikoff. I have no knowledge of anyone at Kellogg Hansen, or

anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final

transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

- 1 -

**Exhibit D22**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  July 19, 2021

Chandler J. Sella

**Exhibit D22**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
                              )
IN RE:  TERRORIST ATTACKS ON    )    Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001              )    ECF Case
_____ )

This document relates to:

_All cases_

## <u>DECLARATION OF EVE SOLIMAN</u>

      I, Eve Soliman, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

      1.     I am a paralegal with the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen").

      2.     I have received copies of the rough and final transcripts of the depositions of Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's representation of Saudi Arabia in the above-captioned case.

      3.     I have never provided copies of the rough or final transcripts of these depositions to anyone outside of Kellogg Hansen.

      4.     I have not had any written or oral communication with Michael Isikoff and have never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.  I have no knowledge of anyone at Kellogg Hansen, or anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

**Exhibit D23**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: July 19, 2021

Eve Soliman

**Exhibit D23**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE: TERRORIST ATTACKS ON )    Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001        )    ECF Case

This document relates to:

*All cases*

### DECLARATION OF SEAN SULLIVAN

      I, Sean Sullivan, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury

that:

      1.      I am a paralegal with the law firm of Kellogg, Hansen, Todd, Figel & Frederick,

P.L.L.C. ("Kellogg Hansen").

      2.      I have received copies of the rough and final transcripts of the depositions of

Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and

Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's

representation of Saudi Arabia in the above-captioned case.

      3.      I have never provided copies of the rough or final transcripts of these depositions

to anyone outside of Kellogg Hansen.

      4.      I have not had any written or oral communication with Michael Isikoff and have

never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al

Thumairy depositions with Mr. Isikoff. I have no knowledge of anyone at Kellogg Hansen, or

anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final

transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

- 1 -

**Exhibit D24**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: July 19, 2021

Sean Sullivan

- 2 -

**Exhibit D24**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
)
IN RE:  TERRORIST ATTACKS ON                )        Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001                                 )        ECF Case
_____)

This document relates to:

*All cases*

**<u>DECLARATION OF KYLER WHEELER</u>**

I, Kyler Wheeler, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury

that:

1.      I am an IT Specialist with the law firm of Kellogg, Hansen, Todd, Figel &

Frederick, P.L.L.C. ("Kellogg Hansen").

2.      I have received copies of the rough and final transcripts of the depositions of

Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and

Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's

representation of Saudi Arabia in the above-captioned case.

3.      I have never provided copies of the rough or final transcripts of these depositions

to anyone outside of Kellogg Hansen.

4.      I have not had any written or oral communication with Michael Isikoff and have

never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al

Thumairy depositions with Mr. Isikoff.  I have no knowledge of anyone at Kellogg Hansen, or

anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final

transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

- 1 -

**Exhibit D25**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  July 19, 2021

_____

Kyler Wheeler

**Exhibit D25**

FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE: TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

)
)
)
)
)

Civil Action No. 03 MDL 1570 (GBD) (SN)
ECF Case

This document relates to:

*All cases*

## DECLARATION OF MARILYN R. WILLIAMS

I, Marilyn R. Williams, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

1. I am the Secretary Director with the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen").

2. I have received copies of the rough and final transcripts of the depositions of Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's representation of Saudi Arabia in the above-captioned case.

3. I have never provided copies of the rough or final transcripts of these depositions to anyone outside of Kellogg Hansen.

4. I have not had any written or oral communication with Michael Isikoff and have never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff. I have no knowledge of anyone at Kellogg Hansen, or anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

- 1 -

**Exhibit D26**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge and belief.

Dated:  July 20, 2021

Marilyn R. Williams

Marilyn R. Williams

**Exhibit D26**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

—————————————————————

)

IN RE:  TERRORIST ATTACKS ON          )          Civil Action No. 03 MDL 1570 (GBD) (SN)

SEPTEMBER 11, 2001                              )          ECF Case

—————————————————————

)

This document relates to:

*All cases*

## <u>DECLARATION OF CHRISTOPHER M. YOUNG</u>

I, Christopher M. Young, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of

perjury that:

1.          I am an attorney with the law firm of Kellogg, Hansen, Todd, Figel & Frederick,

P.L.L.C. ("Kellogg Hansen").

2.          I have received copies of the rough and final transcripts of the depositions of

Mussaed Al Jarrah (on June 17 & 18, 2021), Omar Al Bayoumi (June 9, 10, & 11, 2021), and

Fahad Al Thumairy (June 28, 29, and 30, 2021) in connection with Kellogg Hansen's

representation of Saudi Arabia in the above-captioned case.

3.          I have never provided copies of the rough or final transcripts of these depositions

to anyone outside of Kellogg Hansen.

4.          I have not had any written or oral communication with Michael Isikoff and have

never shared any copy of the rough or final transcripts of the Al Jarrah, Al Bayoumi, or Al

Thumairy depositions with Mr. Isikoff.  I have no knowledge of anyone at Kellogg Hansen, or

anyone working at Kellogg Hansen's direction, who has shared copies of the rough or final

transcript of the Al Jarrah, Al Bayoumi, or Al Thumairy depositions with Mr. Isikoff.

**Exhibit D27**

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  July 19, 2021

_____<br>Christopher M. Young

**Exhibit D27**



July 29, 2021

**Sean P. Carter**
Direct Phone 215-665-2105
Direct Fax 215-701-2105
scarter1@cozen.com

**UNDER SEAL – SUBJECT TO MDL PROTECTIVE
ORDER**

**VIA ECF (UNDER SEAL) AND EMAIL**

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

Re:     *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

Further to the Plaintiffs' Executive Committees' letter of July 27, 2021 at ECF No. 6988, I write to communicate to the Court certain details concerning Cozen O'Connor's internal investigation in response to Michael Isikoff's July 15, 2021 article in Yahoo! News, entitled "*FBI tried to flip Saudi official in 9/11 investigation.*"

As reflected in the e-mail communications accompanying the PECs' July 27, 2021 letter, Cozen O'Connor initiated an internal investigation on the day Mr. Isikoff's story was published, to verify that the apparent release of the confidential Musaed al Jarrah deposition transcript to Mr. Isikoff had no link whatsoever to Cozen O'Connor.

While we remain of the view that the proposal submitted to the Court by the Kingdom of Saudi Arabia is flawed, for the reasons discussed in the PECs' July 27, 2021 letter, we are eager to share with the Court the results of our internal investigation and have concluded that we can do so without unduly infringing on any key privileges. Accordingly, subject to the positions set forth in the PECs' July 27, 2021 letter, and without waiving any privileges, we are enclosing the following declarations concerning Cozen O'Connor's investigation:

• Declaration of Sean P. Carter;

• Declaration of J. Scott Tarbutton;

• Declaration of Thomas Markward;

• Declaration of Marc Adler; and

• Declaration of Coleen D. Williams.

The Honorable Sarah Netburn
July 29, 2021
Page 2

_____

   We respectfully submit that these declarations make clear that the apparent leak of the deposition transcript to Mr. Isikoff has no possible linkage to Cozen O'Connor.

   We thank Your Honor in advance for the Court's attention to this matter, and of course stand ready to answer any further questions the Court may have.

Respectfully submitted,

_____
 Sean P. Carter, Esq.
 COZEN O'CONNOR
 1650 Market Street, Suite 2800
 Philadelphia, PA  19103
 Tel: (215) 665-2000
 Fax: (215) 665-2013

SPC/:bdw

LEGAL\53544668\1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br><br>ECF Case |

This document relates to:  *All Cases*

## <u>DECLARATION OF SEAN P. CARTER</u>

I, Sean P. Carter, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury the following:

1.      I am an attorney admitted to practice *pro hac vice* in the above-captioned matter, a member of the law firm Cozen O'Connor, and co-chair of the Plaintiffs' Executive Committee for Commercial Claims in the above referenced multi-district litigation proceeding *In Re: Terrorist Attacks on September 11, 2001,* Civil Action 03 MDL 1570 (GBD) (SN) (hereinafter "September 11th litigation").

2.      On the morning of July 15, 2021, I learned that Yahoo! News published an article authored by journalist Michael Isikoff, reporting that he had obtained a copy of a transcript of Mussaed al Jarrah's recent deposition in the September 11th litigation.  *See* Michael Isikoff, *FBI Tried to Flip Saudi Official in 9/11 Investigation*, Yahoo! News, July 15, 2021 ("A copy of the deposition – with some redactions for law-enforcement sensitive material – was obtained exclusively by Yahoo news.").

3.      I immediately called my colleague, Scott Tarbutton, and informed him of Mr. Isikoff's article.  While Mr. Tarbutton and I were confident that no one with potential access to the transcripts from or through Cozen O'Connor was responsible for transmitting the confidential Jarrah deposition transcript to Mr. Isikoff, we viewed the apparent release of the transcript to be

a serious matter, and therefore initiated an internal investigation that same morning to determine relevant facts concerning persons who had access to the Jarrah deposition transcript and any activity in relation to the transcript.

4.     I asked Mr. Tarbutton to oversee the internal investigation and conduct all relevant inquiries.  *See* Declaration of J. Scott Tarbutton at ¶¶ 4-11.

5.     As part of that investigation, I searched my emails to determine when I personally received copies of the Jarrah deposition transcript and discovered that Golkow Global Litigation Services ("Golkow") sent an email to certain representatives of the Plaintiffs' Executive Committees firms on June 28, 2021, attaching the FINAL e-transcript and PDF bundle transcript of the Jarrah deposition.  I was the only individual at Cozen O'Connor who received that email from Golkow.

6.     The June 28, 2021 email from Golkow was sent during the course of the three-day deposition of Fahad al Thumairy, which was conducted on June 28, 29, and 30, 2021.  I did not open the attachments to the June 28, 2021 email at any time, and I did not print, email, forward, or copy the email or any of the attachments to the email at any time.  *See also* Declaration of Thomas Markward at ¶ 10.

7.     Additionally, I received two separate emails from Golkow on July 7, 2021 with links to the final Jarrah deposition transcript.  Cozen O'Connor employees Coleen Williams and Marc Adler, who work with me on the September 11th litigation, also received the July 7, 2021 emails from Golkow.

8.     I understand that Mr. Adler verified that he accessed the Golkow links sent on July 7, 2021, downloaded the final Jarrah deposition transcripts, and saved them to three secure, internal Cozen O'Connor databases.

2

9.     I further understand that Ms. Williams explained that she never opened the links to the Jarrah deposition transcripts sent by Golkow on July 7, 2021, and has never accessed or reviewed the final Jarrah deposition transcripts that were downloaded and saved by Mr. Adler in the firm's internal databases.

10.     I also never opened the links to the Jarrah deposition transcripts sent by Golkow on July 7, 2021, and did not access the transcripts at any time between the date when Mr. Adler downloaded them on July 7, 2021 and July 15, 2021, when Mr. Isikoff published his story.

11.     Between the date I first received a copy of the final Jarrah deposition transcripts on June 28, 2021 and July 15, 2021, the date on which Mr. Isikoff published his story, I did not copy, print, forward, or otherwise provide electronic or hard copies of the Jarrah deposition transcripts to anyone within Cozen O'Connor, or individuals outside the firm, via email or other delivery methods.

12.     I also received rough copies of Volumes I and II of the Jarrah deposition transcripts on June 17 and 18, 2021, respectively.  Although I understand those are not in issue, I also have not copied, printed, forwarded, or otherwise provided electronic or hard copies of the rough transcripts to anyone within or outside of Cozen O'Connor.

13.     I cannot recall whether I have ever spoken with Mr. Isikoff since entering my appearance in the September 11th litigation in 2003, but I am certain I have not had any written or oral communications with Mr. Isikoff in the past several years.

14.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Philadelphia, Pennsylvania on July 29, 2021.


_____

Sean P. Carter


LEGAL\53524654\1

4

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br><br>ECF Case |

This document relates to: *All Cases*

## DECLARATION OF J. SCOTT TARBUTTON

I, J. Scott Tarbutton, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury the following:

1.      I am an attorney admitted to practice *pro hac vice* in the above-captioned matter, and a member of the law firm Cozen O'Connor.

2.      On July 15, 2021, my colleague Sean Carter called and informed me that Yahoo! News published an article earlier that morning by journalist Michael Isikoff, *FBI Tried to Flip Saudi Official in 9/11 Investigation*, reporting that Mr. Isikoff had obtained a copy of a transcript of Mussaed al Jarrah's deposition ("A copy of the deposition – with some redactions for law-enforcement sensitive material – was obtained exclusively by Yahoo news.").

3.      While Mr. Carter and I were confident that no one with potential access to the transcripts from or through Cozen O'Connor was responsible for transmitting the confidential Jarrah deposition transcript to Mr. Isikoff, we viewed the apparent release of the transcript to be a serious matter, and therefore initiated an internal investigation that same morning to determine relevant facts concerning persons who had access to the Jarrah deposition transcripts and any activity in relation to the transcripts.

4.      As part of that investigation, I first spoke with Cozen O'Connor employees Coleen Williams and Marc Adler who serve as paralegals on the 9/11 litigation, and they advised

that Golkow Global Litigation Services ("Golkow") transmitted two separate emails to Mr. Carter, Ms. Williams, and Mr. Adler on July 7, 2021 with links to the final Jarrah deposition transcripts, dated June 17 & 18, 2021, for downloading.  I never received the July 7, 2021 emails directly from Golkow, and they were never forwarded to me.

5.      Mr. Adler explained that he subsequently accessed the Golkow links and downloaded the final Jarrah deposition transcripts and placed them in secure, internal Cozen O'Connor databases that operate with electronic safeguards and firewalls limiting access to the materials to a very select group of Cozen O'Connor attorneys, paralegals, and other employees that work on the September 11, 2001 litigation.  *See* Declaration of Marc Adler at ¶¶ 3-5.

6.      Ms. Williams stated that she never opened the links provided by Golkow on July 7, 2021, and has never accessed or reviewed the final Jarrah deposition transcripts that were downloaded and saved by Mr. Adler in the firm's internal databases.  *See* Declaration of Coleen D. Williams at ¶ 3.

7.      I also spoke with Thomas Markward, Cozen O'Connor's Director of User Support, on July 15, 2021, and informed him about the apparent disclosure of the Jarrah deposition transcripts to the media, as well as my conversations with Ms. Williams and Mr. Adler regarding same.  *See* Declaration of Thomas Markward at ¶¶ 2-3.

8.      I asked Mr. Markward to conduct a thorough investigation of the firm's internal databases that contain the final Jarrah deposition transcripts, as indicated by Mr. Adler, to determine the identity of any persons who had accessed the Jarrah deposition transcripts, and any activity with respect to those transcripts via our systems.  *Id.* at ¶ 4.

9.      I also asked Mr. Markward to conduct a review of the firm's email network to determine whether any Cozen O'Connor employee corresponded with Mr. Isikoff.  *Id.*

2

10.     Mr. Markward conducted his comprehensive review of the firm's internal databases and access logs as requested and concluded that Mr. Adler was the *only* Cozen O'Connor employee who had accessed the Jarrah deposition files since July 7, 2021, the date on which Golkow forwarded the invitation to download the transcripts, and that Mr. Adler did not share, forward, email, or transfer the transcripts at any time.  *Id.* at ¶¶ 5-9.

11.     Mr. Markward also concluded that there has not been a single email exchange between Mr. Isikoff and any Cozen O'Connor employee from June 17, 2021 to the present.  *Id.* at ¶ 11.

12.     Since Mr. Adler downloaded the Jarrah deposition transcripts on July 7, 2021, I have never personally reviewed or seen copies of the final Jarrah deposition transcripts, nor have I copied, printed, forwarded, or otherwise provided electronic or hard copies of the Jarrah deposition transcripts to anyone within Cozen O'Connor, or individuals outside the firm, via email or other delivery methods.

13.     I have never personally reviewed or seen rough drafts of the Jarrah deposition transcripts.

14.     I have never had any written or oral communications with Mr. Isikoff, and have never provided electronic or hard copies of the Jarrah deposition transcripts to Mr. Isikoff or anyone associated with him.

15.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Philadelphia, Pennsylvania on July 29, 2021.

_____

J. Scott Tarbutton

LEGAL\53518994\1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br><br>ECF Case |

This document relates to: *All Cases*

## <u>DECLARATION OF THOMAS MARKWARD</u>

I, Thomas Markward, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of

perjury the following:

1.      I am the Director of User Support at the law firm of Cozen O'Connor.

2.      On July 15, 2021, I was contacted by Cozen O'Connor employees Scott Tarbutton

and Coleen Williams and informed that a journalist named Michael Isikoff had reportedly

obtained a copy of a confidential deposition transcript for a witness in the September 11, 2001

case, Mussaed al Jarrah, from an unknown source.

3.      I was also informed that Cozen O'Connor was in possession of the Jarrah

deposition transcripts given the firm's participation in Mr. Jarrah's deposition on June 17-18,

2021.  According to Mr. Tarbutton, Cozen O'Connor employee Marc Adler downloaded and

saved copies of the final Jarrah deposition transcripts to certain Cozen O'Connor databases after

receiving an invitation to download them from Golkow Global Litigation Services on July 7,

2021.

4.      In light of that information, I was asked to conduct an internal review of Cozen

O'Connor's electronic systems, databases, and safeguards to ascertain facts concerning the

identity of persons who had in fact accessed the Jarrah deposition transcripts and whether any of

the transcripts had been shared, forwarded, emailed, or transferred. I was also asked to

determine whether any firm employees had been in email contact with Mr. Isikoff.

5.      First, Mr. Adler has confirmed that he downloaded the final Jarrah deposition

transcripts to an internal Cozen O'Connor database that was created strictly for safely and

securely downloading confidential deposition materials relating to the September 11, 2001 case.

The only individuals at Cozen O'Connor who have access to that database are Mr. Adler and Ms.

Williams.

6.      After conducting a review of the access logs for that database, I can confirm that

Mr. Adler is the *only* person at Cozen O'Connor who has accessed that internal database since

July 7, 2021, the date on which Golkow Global Litigation Services circulated the invitation to

download the Jarrah deposition transcripts, and there has been no activity with respect to the

Jarrah deposition transcripts contained therein. By no activity, I mean that the transcripts were

not shared, forwarded, emailed, or transferred between July 7, 2021 and July 15, 2021, the date

on which I understand Mr. Isikoff published his story.

7.      Second, Mr. Adler confirmed that he then saved copies of the final Jarrah

deposition transcripts to a second internal Cozen O'Connor database that was created many years

ago to securely store and manage all discovery materials relating to the Kingdom of Saudi

Arabia and other defendants in the September 11, 2001 case. Access to that database is limited

solely to the Cozen O'Connor attorneys, paralegals, and staff that work on the September 11,

2001 case. All other employees of the firm are prohibited from accessing that database as a

result of firewalls that have been implemented, and file server permissions.

8.      After conducting a review of the access logs for that second internal database, I

can confirm that Mr. Adler is the *only* person at Cozen O'Connor who has accessed the Jarrah

deposition file within that database since the deposition materials were downloaded on July 7, 2021, and there has been no activity with respect to the Jarrah deposition transcripts contained therein.

9.      Third, Mr. Adler has also verified that he saved copies of the final Jarrah deposition transcripts to an internal Cozen O'Connor TextMap database.  The only individuals at Cozen O'Connor who have access to that database are Mr. Adler, Ms. Williams, Sean Carter, and Stephen Cozen, and Mr. Adler is the *only* person who has accessed TextMap since July 7, 2021.

10.      In addition, Mr. Carter informed me that he received an email from Golkow Global Litigation Services on June 28, 2021, with copies of the Jarrah deposition transcripts attached.  Based on my internal review of Mr. Carter's emails, I can confirm that Mr. Carter is the only Cozen O'Connor employee who received the June 28, 2021 email from Golkow Global Litigation Services, and Mr. Carter did not forward that email or the attachments to anyone.

11.      Finally, I was asked to conduct a review of Cozen O'Connor's email system to determine whether any individual from the firm corresponded with Mr. Isikoff.  After conducting my review, I can confirm that no one at Cozen O'Connor corresponded with Mr. Isikoff via email between June 17, 2021 (which I understand to be the first day of Mr. Jarrah's deposition) and the present date.

12.      I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Philadelphia, Pennsylvania on July 29, 2021.

_____

Thomas Markward

LEGAL\53519967\1

3

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |
| | ECF Case |

This document relates to: *All Cases*

## <u>DECLARATION OF MARC ADLER</u>

I, Marc Adler, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury the following:

1.      I am a paralegal with the law firm of Cozen O'Connor.

2.      On July 7, 2021, Golkow Global Litigation Services ("Golkow") transmitted two separate emails to Sean Carter, Coleen Williams, and myself with links to the final Mussaed al Jarrah deposition transcripts, dated June 17 & 18, 2021, for review and downloading.  I have never received or seen rough copies of the Jarrah deposition transcripts.

3.      Upon receiving the two Golkow emails on July 7, 2021, I accessed the Golkow links and downloaded the final Jarrah deposition transcripts and placed them in a secure, internal Cozen O'Connor database that was created primarily for downloading confidential deposition materials from the September 11, 2001 litigation.  The only individuals at Cozen O'Connor that have access to that database are Ms. Williams and me.

4.      I then saved the final Jarrah deposition transcripts to another secure, internal Cozen O'Connor database that contains all discovery documents relating to defendant Saudi Arabia and other defendants in the litigation.  I understand that database is accessible only to a very limited number of Cozen O'Connor attorneys, paralegals, and staff members that work on the September 11, 2001 litigation.

5.      I also saved the final Jarrah deposition transcripts to a secure, internal Cozen O'Connor TextMap database that also has very limited access.

6.      Since completing the downloads of the final Jarrah deposition transcripts to those internal Cozen O'Connor databases, I have not accessed those transcripts again.

7.      I have never copied, printed, forwarded, or otherwise provided electronic or hard copies of the Jarrah deposition transcripts to anyone within Cozen O'Connor, or individuals outside the firm, via email or other delivery methods.

8.      I have never had any written or oral communications with Mr. Michael Isikoff, and have never provided electronic or hard copies of the Jarrah deposition transcripts to Mr. Isikoff or anyone associated with him.

9.      I did not know who Mr. Isikoff was until his July 15, 2021 article published by Yahoo! News was brought to my attention.

10.      I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Glenside, Pennsylvania on July 29, 2021.


_____
Marc Adler

LEGAL\53509967\1

2

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |
|---|---|
| | ECF Case |

This document relates to: *All Cases*

## <u>DECLARATION OF COLEEN D. WILLIAMS</u>

I, Coleen D. Williams, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury the following:

1.      I am a paralegal with the law firm of Cozen O'Connor.

2.      On July 7, 2021, Golkow Global Litigation Services ("Golkow") transmitted two separate emails to Sean Carter, Marc Adler, and myself with links to the final Mussaed al Jarrah deposition transcripts, dated June 17 & 18, 2021, for review and downloading. I have never received or seen rough copies of the Jarrah deposition transcripts.

3.      I never accessed those links provided by Golkow on July 7, 2021, nor have I ever accessed or reviewed the final Jarrah deposition transcripts that were downloaded to the internal Cozen O'Connor databases by my colleague, Mr. Adler.

4.      I have never copied, printed, forwarded, or otherwise provided electronic or hard copies of the Jarrah deposition transcripts to anyone within Cozen O'Connor, or individuals outside the firm, via email or other delivery methods.

5.      I have never had any written or oral communications with Mr. Michael Isikoff, and have never provided electronic or hard copies of the Jarrah deposition transcripts to Mr. Isikoff or anyone associated with him.

6. I did not know who Mr. Isikoff was until Scott Tarbutton of our firm brought to my attention Mr. Isikoff's July 15, 2021 article published by Yahoo! News.

7. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Philadelphia, Pennsylvania on July 28, 2021.

Coleen D. Williams

MotleyRice®
ATTORNEYS AT LAW
www.motleyrice.com

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
**o.** 843.216.9000  **f.** 843.216.9450

**Robert T. Haefele**
*Licensed in DC, NJ, NY, PA, SC*
direct: 843.216.9184
rhaefele@motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."
–Ron Motley (1944–2013)

July 29, 2021

## FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER

*Via ECF (under seal) and electronic mail*

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District Court for the S.D.N.Y.
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

      Re:    *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD)(SN)

Dear Judge Netburn:

      I write on behalf of Motley Rice in further response to the Kingdom of Saudi Arabia's under seal request (ECF No. 6981) for judicial intervention regarding the apparent release of the transcript of Mussaed al Jarrah,[1] and to offer the Court additional information from the internal investigation Motley Rice conducted immediately upon learning of Michael Isikoff's July 15, 2021 article in Yahoo! News, entitled "FBI tried to flip Saudi official in 9/11 investigation." Based on our internal review of the facts, as supported by the declarations accompanying this submission, Motley Rice remains confident that no one at Motley Rice, or at Motley Rice's direction, caused any disclosure of the transcript referenced in Mr. Isikoff's article.

      Although Motley Rice continues to view the Kingdom's proposal as flawed (*see* ECF No. 6988), in the interest of promptly advancing the leak investigation and to ensure that Motley Rice is not wrongly implicated, we offer the following declarations from all individuals at Motley Rice (attorneys and staff) who received the transcripts and from the Motley Rice Compliance and Security Specialist within the Information Technology Support Center who promptly reviewed the matter on the day that the Isikoff article was published, subject to the positions asserted in the PECs' letter and without infringing any privilege:

- Declaration of Jodi Westbrook Flowers;
- Declaration of Robert T. Haefele;
- Declaration of Jade Haileselassie;

---

[1] Our reference to an "apparent" release is not intended, as the Kingdom suggests, to signal any diminished concern for whether there was a release, only that we are cautious in approaching the serious allegations raised.



Hon. Sarah Netburn, U.S.M.J.
July 29, 2021
Page 2

- Declaration of C. Ross Heyl;
- Declaration of Richard J. Cashon, Jr.;
- Declaration of David Kappler; and
- Declaration of James Stewart.

Consistent with the positions explained in the PECs' letter, we continue to ask that any order that the Court may enter: (1) prevent unnecessary disclosure of information protected under Fed. R. Civ. P. 26, including in particular any identification of testifying *or non-testifying* experts and consultants; (2) even-handedly account for all persons who received the transcript of the Jarrah deposition, whether directly or indirectly; and (3) be narrowly tailored to identify who disclosed information in violation of the Court's order.

Although we anticipate that the accompanying declarations show that Motley Rice was not the source of any leak, we are prepared to address any additional inquiries that the Court may have and thank the Court for its attention to this matter.

Respectfully submitted,

ROBERT T. HAEFELE

Attachments

FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| | : |
| IN RE: TERRORIST ATTACKS ON | : Civil Action No. 03 MDL 1570 (GBD) (SN) |
| SEPTEMBER 11, 2001 | : ECF Case |
| | : |

This document relates to:

*All cases*

## DECLARATION OF JODI WESTBROOK FLOWERS

     I, Jodi Westbrook Flowers, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of

perjury that:

     1.     I am a member attorney with the law firm of Motley Rice LLC ("Motley Rice").

I represent plaintiffs in the above-captioned action, and I serve on the Plaintiffs' Executive

Committee for Personal Injury and Death Claims, and as a Co-Chair for the Personal Injury and

Death Claims Committee. I am a member in good standing of the South Carolina Bar since 1993

and I am admitted *pro hac vice* before this Court.

     2.     I personally (remotely) attended and participated in the three days of Omar Al

Bayoumi's deposition (on June 9, 10 and 11, 2021), the two days of Mussaed Al Jarrah's

deposition (on June 17 and 18, 2021), and three days of Fahad Al Thumairy's deposition (on

June 28, 29, and 30, 2021). I was not able to attend the entire third day of Omar Al Bayoumi's

deposition (on June 11, 2021) nor the entire two days of Mussaed Al Jarrah's deposition (on June

17 and 18, 2021), however I was kept apprised of the substance and conduct in the depositions

by lawyers from my office who were able to attend and participate the entire time.

     3.     After each day of deposition testimony from the above witnesses, I received a

copy of the rough transcript of the deposition testimony by email from the court reporter who attended and transcribed each deposition. Specifically, I received rough transcripts via emails on the following dates:

- Omar Al Bayoumi – on June 9, 2021, I received an email containing a rough transcript of the June 9, 2021 deposition testimony of Omar al Bayoumi in a file titled "june92021.txt"; on June 10, 2021, I received an email containing a rough transcript of the June 10, 2021 deposition testimony of Omar al Bayoumi in a file titled "june102021B.txt"; on June 11, 2021, I received an email containing a rough transcript of the June 11, 2021 deposition testimony of Omar al Bayoumi in a file titled "june112021rough.txt".

- Mussaed Al Jarrah – on June 17, 2021, I received an email containing a rough transcript of the June 17, 2021 deposition testimony of Mussaed Al Jarrah in a file titled "june172021unredacted.txt"; on June 18, 2021, I received an email containing a rough transcript of the June 18, 2021 deposition testimony of Mussaed Al Jarrah in a file titled "june182021.txt".

- Fahad Al Thumairy – on June 28, 2021, I received an email containing a rough transcript of the June 28, 2021 deposition testimony of Fahad Al Thumairy in a file titled "june282021.txt"; on June 29, 2021, I received an email containing a rough transcript of the June 29, 2021 deposition testimony of Fahad Al Thumairy in a file titled "june292021.txt"; on June 30, 2021, I received an email containing a rough transcript of the June 30, 2021 deposition testimony of Fahad Al Thumairy in a file titled "june302021.txt".

4. Following the conclusion of each of the above depositions, I received final transcripts for each deposition by email from a case manager for Golkow Litigation Services, the court reporting agency for each of the depositions. Specifically, I received via email files of the final transcripts on the following dates:

- Omar Al Bayoumi – on June 23, 2021, I received an email that had attached to it the final transcripts of the June 9, 10, and 11, 2021 deposition testimony of Omar al Bayoumi in files entitled: "oab060921.pdf"; "oab060921.ptx"; "oab060921.txt"; "oab060921IRedacted.pdf"; "oab060921Redacted.ptx"; "oab06092Redacted.txt"; "oab061021.pdf"; "oab061021.ptx"; "oab061021.txt"; "oab061021Redacted.pdf"; "oab061021Redacted.ptx"; "oab06102Redacted.txt"; "oab061121.pdf"; "oab061121.ptx"; "oab061121.txt"; "oab061121Redacted.pdf"; "oab061121Redacted.ptx"; "oab061121Redacted.txt".

- Mussaed Al Jarrah – on June 28, 2021, I received two emails that appeared to me to be identical and both attached to them the final transcripts of the June 17 and 18, 2021

deposition testimony of Mussaed Al Jarrah in files entitled: "mj061721.pdf";
"mj061721.ptx"; "mj061721.txt"; "mj061721Redacted.pdf"; "mj061721Redacted.ptx";
"mj061721Redacted.txt"; "mj061821.pdf"; "mj061821.ptx"; "mj061821.txt";
"mj06182Redacted.pdf"; "mj061821Redacted.ptx"; "mj061821Redacted.txt".

- Fahad Al Thumairy – on July 14, 2021, I received two emails that had attached to them
  the final transcripts of the June 28 and 29, 2021 deposition testimony of Fahad al
  Thumairy in files entitled: "fat062821.pdf"; "fat062821.ptx"; "fat062821.txt";
  "fat062821Redacted.pdf"; "fat062821Redacted.ptx"; "fat062821Redacted.txt";
  "fat062921.pdf"; "fat062921.ptx"; "fat062921.txt"; "fat062921Redacted.pdf";
  "fat062921Redacted.ptx"; "fat062921Redacted.txt". On July 15, 2021, I received an
  email that had attached to it the final transcripts of the June 30, 2021 deposition
  testimony of Fahad al Thumairy in files entitled: "fat063021.pdf"; "fat063021.ptx";
  "fat063021.txt"; "fat063021Redacted.pdf"; "fat063021Redacted.ptx";
  "fat063021Redacted.txt".

5.      After receiving the transcripts of the Jarrah deposition on June 28, 2021, I forward
the email on that same date to only two people in a single email. I forwarded the email to
Motley Rice paralegal David Kappler for Mr. Kappler to download the files to the secure file
location where Motley Rice stores the transcripts. I also copied that email to my long-time
senior Motley Rice paralegal Richard Cashon.

6.      Other than that email to Messrs. Kappler and Cashon, I have never shared any
electronic or hard copy of the final transcripts of the Jarrah deposition. In addition, I have not
sent electronic copies or hard copies of the rough transcripts of Jarrah's deposition or the rough
or final transcripts of Bayoumi's or Thumairy's depositions to anyone other than the Motley Rice
individuals listed in the paragraphs above. I have no reason to believe that those other transcripts
were sent from any Motley Rice recipient to anyone else.

7.      Finally, I have not had any written or oral communication with Michael Isikoff
since before June 2021 and have never shared with Mr. Isikoff any copy – either in electronic or
hard copy – of the rough or final transcripts of the Jarrah, Bayoumi, or Thumairy depositions. I
have no knowledge of anyone at Motley Rice LLC, or anyone working at Motley Rice's

direction, or anyone else, who has shared copies of the rough or final transcripts of the Jarrah,
Bayoumi, or Thumairy depositions with Mr. Isikoff.

I declare under penalty of perjury that the foregoing is true and correct to the best of my
knowledge and belief.

Dated: July 28, 2021

Jodi Westbrook Flowers

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | : Civil Action No. 03 MDL 1570 (GBD) (SN)<br>: ECF Case<br>: |

This document relates to:

*All cases*

## DECLARATION OF ROBERT T. HAEFELE

I, Robert T. Haefele, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

1. I am an attorney with the law firm of Motley Rice LLC ("Motley Rice"). I represent plaintiffs in the above-captioned action, and am a member of the Plaintiffs' Executive Committee for Personal Injury and Death Claims, on which I have acted as a liaison counsel for the Committee. I am admitted to practice in this Court.

2. I personally attended and participated in the two days of Mussaed Al Jarrah's deposition (on June 17 and 18, 2021), three days of Omar Al Bayoumi's deposition (June 9, 10, and 11, 2021), and two days of Fahad Al Thumairy's deposition (June 28, 29, and 30, 2021).

3. It is my understanding that, at the conclusion of each of these depositions, the defendant designated the entire transcript of each deposition as Confidential under the MDL Protective Order (*see also* ECF No. 1900, Section G. "Deposition Testimony").

4. After each day of deposition testimony from the above witnesses, I received a copy of the rough transcript of the deposition testimony by email from the court reporter who attended and transcribed each deposition. Specifically, I received rough transcripts via emails on the following dates:

- Omar Al Bayoumi – on June 9, 2021, I received an email containing a rough transcript of the June 9, 2021 deposition testimony of Omar al Bayoumi in a file titled "june92021.txt"; on June 10, 2021, I received an email containing a rough transcript of the June 10, 2021 deposition testimony of Omar al Bayoumi in a file titled "june102021B.txt"; on June 11, 2021, I received an email containing a rough transcript of the June 11, 2021 deposition testimony of Omar al Bayoumi in a file titled "june112021rough.txt".

- Mussaed Al Jarrah – on June 17, 2021, I received an email containing a rough transcript of the June 17, 2021 deposition testimony of Mussaed Al Jarrah in a file titled "june172021unredacted.txt"; on June 18, 2021, I received an email containing a rough transcript of the June 18, 2021 deposition testimony of Mussaed Al Jarrah in a file titled "june182021.txt".

- Fahad Al Thumairy – on June 28, 2021, I received an email containing a rough transcript of the June 28, 2021 deposition testimony of Fahad Al Thumairy in a file titled "june282021.txt"; on June 29, 2021, I received an email containing a rough transcript of the June 29, 2021 deposition testimony of Fahad Al Thumairy in a file titled "june292021.txt"; on June 30, 2021, I received an email containing a rough transcript of the June 30, 2021 deposition testimony of Fahad Al Thumairy in a file titled "june302021.txt".

5.      Following the conclusion of each of the above depositions, I received final transcripts for each deposition by email from a case manager for Golkow Litigation Services, the court reporting agency for each of the depositions.  Specifically, I received via email files of the final transcripts on the following dates:

- Omar Al Bayoumi – on June 23, 2021, I received an email that had attached to it the final transcripts of the June 9, 10, and 11, 2021 deposition testimony of Omar al Bayoumi in files entitled:  "oab060921.pdf"; "oab060921.ptx"; "oab060921.txt"; "oab060921IRedacted.pdf"; "oab060921Redacted.ptx"; "oab06092Redacted.txt"; "oab061021.pdf"; "oab061021.ptx"; "oab061021.txt"; "oab061021Redacted.pdf"; "oab061021Redacted.ptx"; "oab06102Redacted.txt"; "oab061121.pdf"; "oab061121.ptx"; "oab061121.txt"; "oab061121Redacted.pdf"; "oab061121Redacted.ptx"; "oab061121Redacted.txt".

- Mussaed Al Jarrah – on June 28, 2021, I received two emails that appeared to me to be identical and both attached to them the final transcripts of the June 17 and 18, 2021 deposition testimony of Mussaed Al Jarrah in files entitled:  "mj061721.pdf"; "mj061721.ptx"; "mj061721.txt"; "mj061721Redacted.pdf"; "mj061721Redacted.ptx"; "mj061721Redacted.txt"; "mj061821.pdf"; "mj061821.ptx"; "mj061821.txt"; "mj06182Redacted.pdf"; "mj061821Redacted.ptx"; "mj061821Redacted.txt".

- Fahad Al Thumairy – on July 14, 2021, I received two emails email that had attached to them the final transcripts of the June 28 and 29, 2021 deposition testimony of Fahad al Thumairy in files entitled: "fat062821.pdf"; "fat062821.ptx"; "fat062821.txt"; "fat062821Redacted.pdf"; "fat062821Redacted.ptx"; "fat062821Redacted.txt"; "fat062921.pdf"; "fat062921.ptx"; "fat062921.txt"; "fat062921Redacted.pdf"; "fat062921Redacted.ptx"; "fat062921Redacted.txt". On July 15, 2021, I received an email that had attached to it the final transcripts of the June 30, 2021 deposition testimony of Fahad al Thumairy in files entitled: "fat063021.pdf"; "fat063021.ptx"; "fat063021.txt"; "fat063021Redacted.pdf"; "fat063021Redacted.ptx"; "fat063021Redacted.txt".

6.      As for myself, after receiving the transcripts of the Jarrah deposition on June 28, 2021, I did not forward the transcripts to anyone. I did not provide any access to those transcripts to anyone, either electronically or in hard copy form.

7.      Moreover, during the period in question (whether that period is determined to be June 1, 2021 or June 28, 2021 through July 15, 2021), I have not had any communication with Michael Isikoff. Specifically, I did not provide Mr. Isikoff with an electronic copy or hard copy of any of the transcripts at issue here.

8.      On July 15, 2021, immediately after becoming aware of the Isikoff article, I spoke directly with each of the other Motley Rice lawyers who I understood to have attended all or parts of Jarrah's deposition and who had also received the June 28, 2021 email from Golkow sending us the June 18, 2021 transcript of Jarrah. Those Motley Rice lawyers included Jodi Westbrook Flowers, Jade Haileselassie, and C. Ross Heyl. I asked each of them whether they had forwarded the transcript to anyone. Both Ms. Haileselassie and Mr. Heyl indicated that they had not forwarded the transcripts to anyone, nor had they sent hard copies to anyone.

9.      Ms. Flowers indicated that, although she had not provided anyone with access to a hard copy of the transcript, she had forwarded the email with the attached electronic files to Motley Rice paralegal David Kappler so that Mr. Kappler could download the transcript to the

secure file location where Motley Rice stores the transcripts. Ms. Flowers also copied that email

to Motley Rice paralegal Richard Cashon.

      10.    I also inquired of Mr. Kappler and Mr. Cashon as to whether they had sent the

files in either electronic or hard copy to anyone. Mr. Kappler confirmed that he had downloaded

the files to the secure location where Motley Rice stores the transcripts. Both Messrs. Kappler

and Cashon indicated that they had not sent any electronic or hard copies of the transcripts to

anyone.

      11.    In addition to making inquiries to anyone known to have received the transcript,

also on the same day, I asked the Motley Rice Information Technology Support Center ("the MR

ITSC") to conduct a thorough analysis of Motley Rice's IT systems to identify any electronic

mail traffic moving the transcript that the Isikoff article suggested had been disclosed.

Specifically, I asked the MR ITSC to identify any email traffic of the transcripts of the June 18,

2021 testimony of Jarrah. I also asked MR ITSC to identify anyone who had downloaded the

transcript to the secure location where Motley Rice protects the transcripts, and to identify any

email communication from any Motley Rice email address with Michael Isikoff between June

28, 2021 (the date the Jarrah transcripts were received) and July 15, 2021 (the date the Isikoff

article was published).

      12.    On July 16, 2021, Motley Rice Compliance and Security Specialist James

Stewart, responding to my request to the MR ITSC, reported back to me the results of the

investigation. Based on his review, the Jarrah transcript had been downloaded by Motley Rice

Paralegal David Kappler to the secure location on June 29, 2021; after the transcript was placed

in the secure network location, it was not accessed or changed; he found no outbound traffic to

have contained the transcript; the only inbound and internal electronic traffic that included the

Jarrah transcript were the emails from Golkow to Ms. Flowers, Ms. Haileselassie, Mr. Heyl, and me (and other people affiliated with the court reporting agency and other law firms representing plaintiffs), and the email from Ms. Flowers forwarding the transcripts to Messrs. Kappler and Cashon; and no emails had been sent to any known email addresses for Mr. Isikoff (two were searched: misikoff@yahoo-inc.com and misikoff@oath.com).

13.     To avoid any ambiguity, I have never shared any electronic or hard copy of the final transcripts of the Jarrah deposition. In addition, although I have not conducted a similar analysis of the rough transcripts from the Jarrah deposition or the rough or final transcripts of the Bayoumi or Thumairy depositions, I know that I have not sent electronic copies or hard copies of those transcripts to anyone other than, perhaps, the Motley Rice individuals listed in the paragraphs above. I have no reason to believe that those other transcripts were sent from any Motley Rice recipient to anyone else.

14.     Finally, I have not had any written or oral communication with Michael Isikoff since before June 2021 and have never shared with Mr. Isikoff any copy – either in electronic or hard copy – of the rough or final transcripts of the Jarrah, Bayoumi, or Thumairy depositions. I have no knowledge of anyone at Motley Rice LLC, or anyone working at Motley Rice's direction, or anyone else, who has shared copies of the rough or final transcripts of the Jarrah, Bayoumi, or Thumairy depositions with Mr. Isikoff.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: July 28, 2021

_____

Robert T. Haefele

FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|   |   |
|---|---|
| | : |
| IN RE: TERRORIST ATTACKS ON | : Civil Action No. 03 MDL 1570 (GBD) (SN) |
| SEPTEMBER 11, 2001 | : ECF Case |
| | : |

This document relates to:

*All cases*

### DECLARATION OF JADE HAILESELASSIE

I, Jade Haileselassie, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of

perjury that:

1.      I am an attorney with the law firm of Motley Rice LLC ("Motley Rice").  I

represent plaintiffs in the above-captioned action and am admitted *pro hac vice* to practice in this

Court.

2.      I personally attended two days of Mussaed Al Jarrah's deposition (on June 17 and

18, 2021), three days of Omar Al Bayoumi's deposition (June 9, 10, and 11, 2021), and three

days of Fahad Al Thumairy's deposition (June 28, 29, and 30, 2021).

3.      After each day of deposition testimony from the above witnesses, I received a

copy of the rough transcript of the deposition testimony by email from the court reporter who

attended and transcribed each deposition. Specifically, I received rough transcripts via emails on

the following dates:

- Omar Al Bayoumi – on June 9, 2021, I received an email containing a rough transcript of the June 9, 2021 deposition testimony of Omar al Bayoumi in a file titled "june92021.txt"; on June 10, 2021, I received an email containing a rough transcript of the June 10, 2021 deposition testimony of Omar al Bayoumi in a file titled "june102021B.txt"; on June 11, 2021, I received an email containing a rough transcript of the June 11, 2021 deposition testimony of Omar al Bayoumi in a file titled "june112021rough.txt".

- Mussaed Al Jarrah – on June 17, 2021, I received an email containing a rough transcript of the June 17, 2021 deposition testimony of Mussaed Al Jarrah in a file titled "june172021unredacted.txt"; on June 18, 2021, I received an email containing a rough transcript of the June 18, 2021 deposition testimony of Mussaed Al Jarrah in a file titled "june182021.txt".

- Fahad Al Thumairy – on June 28, 2021, I received an email containing a rough transcript of the June 28, 2021 deposition testimony of Fahad Al Thumairy in a file titled "june282021.txt"; on June 29, 2021, I received an email containing a rough transcript of the June 29, 2021 deposition testimony of Fahad Al Thumairy in a file titled "june292021.txt"; on June 30, 2021, I received an email containing a rough transcript of the June 30, 2021 deposition testimony of Fahad Al Thumairy in a file titled "june302021.txt".

4.      Following the conclusion of each of the above depositions, I received final

transcripts for each deposition by email from a case manager for Golkow Litigation Services, the

court reporting agency for each of the depositions.  Specifically, I received via email files of the

final transcripts on the following dates:

- Omar Al Bayoumi – on June 23, 2021, I received an email that had attached to it the final transcripts of the June 9, 10, and 11, 2021 deposition testimony of Omar al Bayoumi in files entitled:  "oab060921.pdf"; "oab060921.ptx"; "oab060921.txt"; "oab060921IRedacted.pdf"; "oab060921Redacted.ptx"; "oab06092Redacted.txt"; "oab061021.pdf"; "oab061021.ptx"; "oab061021.txt"; "oab061021Redacted.pdf"; "oab061021Redacted.ptx"; "oab06102Redacted.txt"; "oab061121.pdf"; "oab061121.ptx"; "oab061121.txt"; "oab061121Redacted.pdf"; "oab061121Redacted.ptx"; "oab061121Redacted.txt".

- Mussaed Al Jarrah – on June 28, 2021, I received two emails that appeared to me to be identical and both attached to them the final transcripts of the June 17 and 18, 2021 deposition testimony of Mussaed Al Jarrah in files entitled:  "mj061721.pdf"; "mj061721.ptx"; "mj061721.txt"; "mj061721Redacted.pdf"; "mj061721Redacted.ptx"; "mj061721Redacted.txt"; "mj061821.pdf"; "mj061821.ptx"; "mj061821.txt"; "mj06182Redacted.pdf"; "mj061821Redacted.ptx"; "mj061821Redacted.txt".

- Fahad Al Thumairy – on July 14, 2021, I received two emails that had attached to them the final transcripts of the June 28 and 29, 2021 deposition testimony of Fahad al Thumairy in files entitled: "fat062821.pdf"; "fat062821.ptx"; "fat062821.txt"; "fat062821Redacted.pdf"; "fat062821Redacted.ptx"; "fat062821Redacted.txt"; "fat062921.pdf"; "fat062921.ptx"; "fat062921.txt"; "fat062921Redacted.pdf"; "fat062921Redacted.ptx"; "fat062921Redacted.txt".  On July 15, 2021, I received an email that had attached to it the final transcripts of the June 30, 2021 deposition testimony of Fahad al Thumairy in files entitled:  "fat063021.pdf"; "fat063021.ptx";

"fat063021.txt"; "fat063021Redacted.pdf"; "fat063021Redacted.ptx"; "fat063021Redacted.txt".

5.      After receiving the transcripts of the Jarrah deposition on June 28, 2021, I did not forward the transcripts to anyone.

6.      I have never shared any electronic or hard copy of the final transcripts of the Jarrah deposition.  In addition, I have not sent electronic copies or hard copies of the rough transcripts of Jarrah's deposition or the rough or final transcripts of Bayoumi's or Thumairy's depositions to anyone.  I have no reason to believe that those other transcripts were sent from any Motley Rice recipient to anyone else.

7.      Finally, I have not had any written or oral communication with Michael Isikoff since before June 2021 and have never shared with Mr. Isikoff any copy – either in electronic or hard copy – of the rough or final transcripts of the Jarrah, Bayoumi, or Thumairy depositions. I have no knowledge of anyone at Motley Rice LLC, or anyone working at Motley Rice's direction, or anyone else, who has shared copies of the rough or final transcripts of the Jarrah, Bayoumi, or Thumairy depositions with Mr. Isikoff.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Dated: July 28, 2021

_____
Jade Haileselassie

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | : <br> : Civil Action No. 03 MDL 1570 (GBD) (SN) <br> : ECF Case <br> : |

This document relates to:

*All cases*

### DECLARATION OF C. ROSS HEYL

I, C. Ross Heyl, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

1.      I am an attorney with the law firm of Motley Rice LLC ("Motley Rice").  I represent plaintiffs in the above-captioned action and am admitted *pro hac vice* to practice in this Court.

2.      I personally attended two days of Mussaed Al Jarrah's deposition (on June 17 and 18, 2021), three days of Omar Al Bayoumi's deposition (June 9, 10, and 11, 2021), and three days of Fahad Al Thumairy's deposition (June 28, 29, and 30, 2021).

3.      After each day of deposition testimony from the above witnesses, I received a copy of the rough transcript of the deposition testimony by email from the court reporter who attended and transcribed each deposition. Specifically, I received rough transcripts via emails on the following dates:

- Omar Al Bayoumi – on June 9, 2021, I received an email containing a rough transcript of the June 9, 2021 deposition testimony of Omar al Bayoumi in a file titled "june92021.txt"; on June 10, 2021, I received an email containing a rough transcript of the June 10, 2021 deposition testimony of Omar al Bayoumi in a file titled "june102021B.txt"; on June 11, 2021, I received an email containing a rough transcript of the June 11, 2021 deposition testimony of Omar al Bayoumi in a file titled "june112021rough.txt".

- Mussaed Al Jarrah – on June 17, 2021, I received an email containing a rough transcript of the June 17, 2021 deposition testimony of Mussaed Al Jarrah in a file titled "june172021unredacted.txt"; on June 18, 2021, I received an email containing a rough transcript of the June 18, 2021 deposition testimony of Mussaed Al Jarrah in a file titled "june182021.txt".

- Fahad Al Thumairy – on June 28, 2021, I received an email containing a rough transcript of the June 28, 2021 deposition testimony of Fahad Al Thumairy in a file titled "june282021.txt"; on June 29, 2021, I received an email containing a rough transcript of the June 29, 2021 deposition testimony of Fahad Al Thumairy in a file titled "june292021.txt"; on June 30, 2021, I received an email containing a rough transcript of the June 30, 2021 deposition testimony of Fahad Al Thumairy in a file titled "june302021.txt".

4.      Following the conclusion of each of the above depositions, I received final

transcripts for each deposition by email from a case manager for Golkow Litigation Services, the

court reporting agency for each of the depositions.  Specifically, I received via email files of the

final transcripts on the following dates:

- Omar Al Bayoumi – on June 23, 2021, I received an email that had attached to it the final transcripts of the June 9, 10, and 11, 2021 deposition testimony of Omar al Bayoumi in files entitled:  "oab060921.pdf"; "oab060921.ptx"; "oab060921.txt"; "oab060921IRedacted.pdf"; "oab060921Redacted.ptx"; "oab06092Redacted.txt"; "oab061021.pdf"; "oab061021.ptx"; "oab061021.txt"; "oab061021Redacted.pdf"; "oab061021Redacted.ptx"; "oab06102Redacted.txt"; "oab061121.pdf"; "oab061121.ptx"; "oab061121.txt"; "oab061121Redacted.pdf"; "oab061121Redacted.ptx"; "oab061121Redacted.txt".

- Mussaed Al Jarrah – on June 28, 2021, I received two emails that appeared to me to be identical and both attached to them the final transcripts of the June 17 and 18, 2021 deposition testimony of Mussaed Al Jarrah in files entitled:  "mj061721.pdf"; "mj061721.ptx"; "mj061721.txt"; "mj061721Redacted.pdf"; "mj061721Redacted.ptx"; "mj061721Redacted.txt"; "mj061821.pdf"; "mj061821.ptx"; "mj061821.txt"; "mj06182Redacted.pdf"; "mj061821Redacted.ptx"; "mj061821Redacted.txt".

- Fahad Al Thumairy – on July 14, 2021, I received two emails that had attached to them the final transcripts of the June 28 and 29, 2021 deposition testimony of Fahad al Thumairy in files entitled: "fat062821.pdf"; "fat062821.ptx"; "fat062821.txt"; "fat062821Redacted.pdf"; "fat062821Redacted.ptx"; "fat062821Redacted.txt"; "fat062921.pdf"; "fat062921.ptx"; "fat062921.txt"; "fat062921Redacted.pdf"; "fat062921Redacted.ptx"; "fat062921Redacted.txt".  On July 15, 2021, I received an email that had attached to it the final transcripts of the June 30, 2021 deposition testimony of Fahad al Thumairy in files entitled:  "fat063021.pdf"; "fat063021.ptx";

"fat063021.txt"; "fat063021Redacted.pdf"; "fat063021Redacted.ptx"; "fat063021Redacted.txt".

5.      After receiving the transcripts of the Jarrah deposition on June 28, 2021, I did not forward the transcripts to anyone.

6.      I have never shared any electronic or hard copy of the final transcripts of the Jarrah deposition.  In addition, I have not sent electronic copies or hard copies of the rough transcripts of Jarrah's deposition or the rough or final transcripts of Bayoumi's or Thumairy's depositions to anyone.  I have no reason to believe that those other transcripts were sent from any Motley Rice recipient to anyone else.

7.      Finally, I have not had any written or oral communication with Michael Isikoff since before June 2021 and have never shared with Mr. Isikoff any copy – either in electronic or hard copy – of the rough or final transcripts of the Jarrah, Bayoumi, or Thumairy depositions. I have no knowledge of anyone at Motley Rice LLC, or anyone working at Motley Rice's direction, or anyone else, who has shared copies of the rough or final transcripts of the Jarrah, Bayoumi, or Thumairy depositions with Mr. Isikoff.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Dated: July 28, 2021

_____

C. Ross Heyl

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | : Civil Action No. 03 MDL 1570 (GBD) (SN) : ECF Case : |

This document relates to:

*All cases*

### DECLARATION OF RICHARD J. CASHON, JR.

I, Richard J. Cashon, Jr., pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

1.      I am a Senior Paralegal at the law firm of Motley Rice LLC ("Motley Rice"), which represents plaintiffs in the above-captioned action.

2.      I was personally present at the two days of Mussaed Al Jarrah's deposition (on June 17 and 18, 2021), three days of Omar Al Bayoumi's deposition (June 9, 10, and 11, 2021), and three days of Fahad Al Thumairy's deposition (June 28, 29, and 30, 2021).

3.      I did receive copies of the rough transcripts from the court reporter following each of the depositions.  I did not receive copies of the final transcripts from the court reporter or court reporter agency following each of the depositions.

4.      On June 28, 2021, Motley Rice attorney Jodi Westbrook Flowers forwarded to me an email that included as attachment files that were the transcripts of the Jarrah deposition. I was copied on an email that was sent to Motley Rice paralegal David Kappler.

5.      After receiving the transcripts of the Jarrah deposition on June 28, 2021, I did not forward the transcripts to anyone.

6.      I have never shared any electronic or hard copy of the final transcripts of the Jarrah deposition.  In addition, I have not sent electronic copies or hard copies of the rough transcripts of Jarrah's deposition or the rough or final transcripts of Bayoumi's or Thumairy's depositions to anyone.  I have no reason to believe that those other transcripts were sent from any Motley Rice recipient to anyone else.

7.      Finally, I have not had any written or oral communication with Michael Isikoff since before June 2021 and have never shared with Mr. Isikoff any copy – either in electronic or hard copy – of the rough or final transcripts of the Jarrah, Bayoumi, or Thumairy depositions. I have no knowledge of anyone at Motley Rice LLC, or anyone working at Motley Rice's direction, or anyone else, who has shared copies of the rough or final transcripts of the Jarrah, Bayoumi, or Thumairy depositions with Mr. Isikoff.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Dated: July 28, 2021

Richard J. Cashon, Jr.

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____ :
IN RE: TERRORIST ATTACKS ON      : Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001               : ECF Case
_____ :

This document relates to:

_All cases_

## DECLARATION OF DAVID KAPPLER

I, David Kappler, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury

that:

1.      I am a Paralegal at the law firm of Motley Rice LLC ("Motley Rice"), which

represents plaintiffs in the above-captioned action.

2.      I was not present at any of the depositions of Mussaed Al Jarrah (on June 17 and

18, 2021), Omar Al Bayoumi (June 9, 10, and 11, 2021), or Fahad Al Thumairy (June 28, 29,

and 30, 2021).

3.      I did not receive copies of the rough or final transcripts from the court reporter or

court reporter agency following each of the depositions.

4.      On June 28, 2021, Motley Rice attorney Jodi Westbrook Flowers forwarded to me

an email that included as attachments files that were the transcripts of the Jarrah deposition.  Ms.

Flowers also copied that email to Motley Rice paralegal Richard Cashon.

5.      I received the email and the attachments from Ms. Flowers to download the files

to the secure file location where Motley Rice stores the transcripts.

6.      On June 29, 2021, I downloaded the Jarrah transcript from the email I received

from Ms. Flowers to the secure file location where Motley Rice stores the transcripts.

7.    After receiving the transcripts of the Jarrah deposition on June 28, 2021, and other than downloading them as referenced above, I did not forward the transcripts to anyone.

8.    I have never shared any electronic or hard copy of the final transcripts of the Jarrah deposition.  In addition, I have not sent electronic copies or hard copies of the rough transcripts of Jarrah's deposition or the rough or final transcripts of Bayoumi's or Thumairy's depositions to anyone.  I have no reason to believe that those other transcripts were sent from any Motley Rice recipient to anyone else.

9.    Finally, I have never had any written or oral communication with Michael Isikoff and have never shared with Mr. Isikoff any copy – either in electronic or hard copy – of the rough or final transcripts of the Jarrah, Bayoumi, or Thumairy depositions. I have no knowledge of anyone at Motley Rice LLC, or anyone working at Motley Rice's direction, or anyone else, who has shared copies of the rough or final transcripts of the Jarrah, Bayoumi, or Thumairy depositions with Mr. Isikoff.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: July 28, 2021

David Kappler

**FILED UNDER SEAL – SUBJECT TO MDL PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | : : Civil Action No. 03 MDL 1570 (GBD) (SN) : ECF Case : |

This document relates to:

*All cases*

### DECLARATION OF JAMES STEWART

I, James Stewart, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

1.     I am a Compliance and Security Specialist within the Information Technology Support Center at the law firm of Motley Rice LLC ("Motley Rice"), which I understand represents plaintiffs in the above-captioned action.

2.     I was not present at any of the depositions of Mussaed Al Jarrah (on June 17 and 18, 2021), Omar Al Bayoumi (June 9, 10, and 11, 2021), or Fahad Al Thumairy (June 28, 29, and 30, 2021), and did not receive copies of the rough or final transcripts from the court reporter or court reporter agency following each of the depositions.

3.     On July 15, 2021, I received a request from Robert Haefele, one of the attorneys at Motley Rice, asking the Motley Rice Information Technology Support Center ("the MR ITSC") to conduct an analysis of Motley Rice's IT systems to identify any electronic mail traffic moving a transcript that was identified in an article by Michael Isikoff.  The article was included as a link within the request.  Specifically, Mr. Haefele asked the MR ITSC to identify any email traffic of the transcripts of the June 18, 2021 testimony of Mussaed al Jarrah.  The request

included the names of the files that had been received and asked if the January 18, 2021 file had

been attached to any other email.

4.    Mr. Haefele also asked MR ITSC to identify anyone who had downloaded the

transcript to the secure location where Motley Rice protects the transcripts, and to identify any

email communication from any Motley Rice email address with Michael Isikoff between June

28, 2021 (the date the Jarrah transcripts were received at Motley Rice) and July 15, 2021 (the

date of the article that Michael Isikoff published).

5.    On July 16, 2021, after conducting a review of the data on Motley Rice's systems,

I reported back to Mr. Haefele the results of my investigation.  Based on my review, the Jarrah

transcript had been downloaded by Motley Rice Paralegal David Kappler to the secure location

on June 29, 2021; the only electronic traffic that included the Jarrah transcript as an attachment

were emails on June 28, 2021 from Golkow Litigation Services to Robert Haefele, Jodi

Westbrook Flowers, Jade Haileselassie, and C. Ross Heyl, and an email from Mr. Flowers

forwarding the transcripts to Mr. Kappler and copying Motley Rice Senior Paralegal Richard

Cashon.  My investigation also concluded that no emails had been sent to any known email

addresses for Mr. Isikoff (I searched two email addresses: misikoff@yahoo-inc.com and

misikoff@oath.com).

6.    I have never shared any electronic or hard copy of any rough or final transcript of

the Jarrah deposition or from the depositions of Omar al Bayoumi or Fahad al Thumairy.  I have

no reason to believe that those transcripts were sent from any Motley Rice recipient to anyone

else.

7.    Finally, I have never had any written or oral communication with Michael Isikoff

and have never shared with Mr. Isikoff any copy – either in electronic or hard copy – of the

rough or final transcripts of the Jarrah, Bayoumi, or Thumairy depositions. I have no knowledge of anyone at Motley Rice LLC, or anyone working at Motley Rice's direction, or anyone else, who has shared copies of the rough or final transcripts of the Jarrah, Bayoumi, or Thumairy depositions with Mr. Isikoff.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: July 28, 2021

_____

James Stewart

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

In re:

      TERRORIST ATTACKS ON
      SEPTEMBER 11, 2001

------------------------------------------------------------------X

03-MD-1570 (GBD)(SN)

**ORDER**

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: __8/12/2021__

**SARAH NETBURN, United States Magistrate Judge:**

On July 15, 2021, Yahoo! News published an article entitled *FBI Tried to Flip Saudi Official in 9/11 Investigation*, written by reporter Michael Isikoff. The article states that Yahoo! News "obtained exclusively" a copy of the deposition of Musaed Al Jarrah, subject to "some redactions for law-enforcement sensitive material." The Al Jarrah deposition was conducted by the Plaintiffs' Executive Committees ("PECs") on June 17 and 18, 2021, and was designated as confidential pursuant to the parties' Protective Order; certain material addressed during the deposition was also protected by the FBI Protective Order. There has plainly been a breach of, at a minimum, the Protective Order.

The Kingdom of Saudi Arabia moves the Court to investigate this breach or to authorize the Kingdom to investigate the breach. ECF No. 6981. As part of its motion, the Kingdom filed 27 declarations from everyone at its counsel, Kellogg Hansen, who received or accessed the depositions of Al Jarrah, or the depositions of Al Bayoumi and Al Thumairy, two other highly sensitive deponents. The PECs oppose the Kingdom's motion and recommended that the parties "meet and confer to address the apparent wrongful disclosure." ECF No. 6988 at 3. At the same time, two of the leading PEC law firms—Cozen O'Connor and Motely Rice—voluntarily filed declarations. See generally, ECF Nos. 6991 & 6992. Those 12 PECs declarations broadly affirm under penalty of perjury that no one from those firms leaked the Al Jarrah deposition transcripts

(most also affirm that they have not shared the Al Bayoumi or Al Thumairy transcripts) or communicated with Mr. Isikoff.

Missing from this record is any statement from lead law firm Kreindler & Kreindler. Circumstantial evidence suggests that this firm may be responsible for the leak. When seeking a pre-publication comment from the Kingdom, the journalist asked for "any comments you can make in response to what Jim Kreindler had to say about where things stand – and how the depositions went." ECF No. 6981, Ex. D3, attach. A. Mr. Kreindler also appeared on Mr. Isikoff's podcast *Conspiracyland* to discuss the status of the case in general and the depositions in particular. ECF No. 6990 at 2, While the Court has repeatedly admonished Mr. Kreindler from litigating his case in the press, see, e.g., ECF No. 3619, at 9:21-10:5, standing alone there is nothing wrong with such communications. But the evidence certainly suggests an opportunity for Mr. Kreindler to have breached the Protective Order.

Considering the status of this issue, the Court directs the law firm of Kreindler & Kreindler to follow the lead of Cozen O'Conner and Motely Rice and to file declarations, under penalty of perjury, as to whether anyone with the firm or anyone acting on its direction shared the Al Jarrah deposition transcript with anyone unauthorized by the Protective Order and the FBI Protective Order. At a minimum, the Court expects declarations to be filed by James P. Kreindler, Steven R. Pounian, Andrew J. Maloney, and Megan Benett. These declarations shall be filed on August 16, 2021.

**CONCLUSION**

Saudi Arabia's motion is GRANTED. The Clerk of Court is respectfully directed to

terminate the order at ECF No. 6981. Separately, the parties are directed to file their applications

on the public record with whatever limited redactions, if any, are required by the Protective

Order and FBI Protective Order.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:    New York, New York
              August 12, 2021

# ANDERSON KILL P.C.

Attorneys and Counselors at Law

1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020
TELEPHONE: 212-278-1000 ■ FAX: 212-278-1733
www.andersonkill.com

Jerry S. Goldman, Esq.
jgoldman@andersonkill.com
212-278-1569

Via ECF

August 13, 2021

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

Re:     In Re: Terrorist Attacks on September 11, 2001, 03 MDL 1570 (GBD)(SN)

Dear Judge Netburn:

I write on behalf of Anderson Kill P.C. ("Anderson Kill"), in response to the Kingdom of
Saudi Arabia's under seal request (ECF No. 6981) for judicial intervention and the Court's August
12, 2021 Order (ECF No. 7011) regarding the apparent release of the transcript of Mussaed al
Jarrah. While not directed to do so, we had previously prepared declarations[1] and are voluntarily
submitting them to the Court to offer the Court additional information from the internal
investigation Anderson Kill conducted immediately upon learning of Michael Isikoff's July 15,
2021 article in Yahoo! News, entitled "FBI tried to flip Saudi official in 9/11 investigation." Based
on our internal review, Anderson Kill remains confident that no one at Anderson Kill, or at
Anderson Kill's direction, disclosed the redacted transcript referenced in Mr. Isikoff's article.

Without waiving any right, privilege, immunity, or other protection, the following
declarations were executed by individuals at Anderson Kill (three attorneys and a paralegal) who
received and/or had access to the transcripts and from the Anderson Kill IT department director
who promptly reviewed the matter commencing on the day that the Isikoff article was published:

- Declaration of Jerry S. Goldman, Esq.;
- Declaration of Robert M. Horkovich, Esq.;
- Declaration of Bruce Strong, Esq.;
- Declaration of Emily Rybicki (paralegal); and,
- Declaration of Robin Pramanand (IT Director).

---

[1] I arranged for the declarations to be prepared and executed on July 29 and 30, 2021, prior to my
departure on a vacation outside of the country.

New York, NY ■ Los Angeles, CA ■ Denver, CO ■ Stamford, CT ■ Washington, DC ■ Newark, NJ ■ Philadelphia, PA
docs-100399759.2

**Anderson Kill P.C.**

August 13, 2021
Page 2

Although we anticipate that the accompanying declarations show that Anderson Kill was not the source of any unauthorized disclosure, we are prepared to address any additional inquiries that the Court may have and thank the Court for its attention to this matter.

Very truly yours,

Jerry S. Goldman

Enclosures

cc: All Counsel by ECF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN) |
|---|---|

This document relates to: *All Cases*

## **DECLARATION OF JERRY S. GOLDMAN, ESQ.**

I, Jerry S. Goldman, Esq., declare under penalty of perjury, as provided for by 28 U.S.C. § 1746, that the following statements are true and correct:

1.      I am a shareholder with the law firm Anderson Kill P.C. ("Anderson Kill"). I serve on the Plaintiffs Executive Committee for Personal Injuries and Wrongful Deaths in the above-captioned matter and have served as lead counsel for the *O'Neill* plaintiffs since 2004.

2.      On the morning of July 15, 2021, I learned that Yahoo! News published an article authored by journalist Michael Isikoff, reporting that he had obtained a copy of a transcript of Mussaed al Jarrah's ("Jarrah") recent deposition in the September 11th litigation. *See* Michael Isikoff, FBI Tried to Flip Saudi Official in 9/11 Investigation, Yahoo! News, July 15, 2021.

3.      That same day I had communications with members of the Plaintiffs Executive Committees and internal telephone calls with Emily Rybicki (the lead paralegal at my firm assigned to this matter and specifically tasked with handling incoming deposition materials) and Robin Pramanand (the director of Anderson Kill's IT department), along with other communications with other Anderson Kill attorneys and staff working on the case.

4.     Following these inquiries and follow up communications over the next several days, I was confident Anderson Kill had nothing to do with transmitting the Jarrah deposition transcript but that this was a serious matter, necessitating a thorough investigation.

5.     In communications with Ms. Rybicki and Mr. Pramanand, and in reviewing documentation, I learned that on June 28, 2021, Ms. Rybicki received via email the final transcripts of the Jarrah deposition from the court reporter. In a subsequent communication, I learned that on July 7, 2021, Ms. Rybicki received a link to the videos of the deposition from the court reporting company.

6.     I understand that at the time Ms. Rybicki received the transcripts, she was working on other time-sensitive projects, so she did not immediately file the transcripts in our electronic file system. I understand from speaking to Ms. Rybicki and Mr. Pramanand that her computer and email are password-protected and secure and there is no evidence of any unauthorized access to her computer or email between June 28, 2021 and the present.

7.     I understand that from July 1, 2021 through July 6, 2021, Ms. Rybicki was out of the office on vacation. I understand the Ms. Rybicki returned to work on July 7, 2021. That day, I understand that Ms. Rybicki received an email from the court reporter with a link to the videos of the Jarrah deposition. I understand that at the time Ms. Rybicki received the videos, she was working on other time-sensitive projects, so she did not immediately file the videos in our electronic file system.

8.     On July 13, 2021, a few days after Ms. Rybicki returned from vacation, I understand that she moved the Jarrah transcripts and videos into a secure shared folder

2

docs-100399642.5

on our electronic file system that was created primarily for downloading confidential deposition materials from the September 11, 2001 litigation. Only Ms. Rybicki, two (2) members of our IT department (Robin Pramanand and Mark Guercio),[1] Robert Horkovich, Esq., Bruce Strong, Esq. and I have access.

9. At no time did I copy, print, forward, or otherwise provide electronic or hard copies of the final Jarrah deposition transcripts to anyone within Anderson Kill, or individuals outside the firm, via email or other delivery methods. I do not recall even reading the Jarrah transcript or viewing the video, in either rough or final form.

10. As part of our internal investigation, I confirmed in writing that neither Bruce Strong nor Robert Horkovich had accessed the final Jarrah transcripts.

11. On July 16, 2021, I also reviewed, with Mr. Pramanand, the file directory and confirmed that no one had accessed the Jarrah deposition transcripts since Ms. Rybicki moved them to the secure folder on July 13, 2021.

12. My personal practice is to rarely look at the deposition transcripts, except if I did not attend a particular deposition, and since I attended the Jarrah deposition, I had not accessed the Jarrah transcripts.

13. On June 17 and 22, 2021, I received via email from Emily Rybicki, rough transcripts of the deposition of Mussaed al Jarrah. Although I understand those are not in issue, I also have not copied, printed, forwarded, or otherwise provided electronic or hard copies of the rough transcripts to anyone within or outside of Anderson Kill, except that I had a copy forwarded to Robert Horkovich, Esq., the managing shareholder of Anderson Kill, who is also an attorney of record in this case on behalf of the O'Neill plaintiffs.

---

[1] I have been advised that Mr. Guercio, Anderson Kill's system administrator, has 'back up' access to the secure folder, but has not used it.

docs-100399642.5

14.     To the best of my knowledge, I have never spoken to or contacted Michael Isikoff in any way about anything, I have checked my contacts, and his name does not appear there. I know for a fact that I have not spoken with Mr. Isikoff about the Jarrah deposition or the transcripts. I was provided with certain email addresses of Mr. Isikoff in the course of this investigation and directed our IT department to verify if any emails were sent to him from Mr. Horkovich, Mr. Strong, Ms. Rybicki or myself. Their inquiry advised that there were no such emails in the Anderson Kill system.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed in New York, N.Y. on July 30, 2021

Jerry S. Goldman, Esq.

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN) |
|---|---|

This document relates to: *All Cases*

## DECLARATION OF ROBERT M. HORKOVICH, ESQ.

I, Robert M. Horkovich, Esq., declare under penalty of perjury, as provided for by 28 U.S.C. § 1746, that the following statements are true and correct:

1.      I am the managing shareholder of the law firm Anderson Kill P.C. ("Anderson Kill") and have entered an appearance in the above-reference matter.

2.      On July 15, 2021, I learned from Jerry S. Goldman, Esq. that Yahoo! News published an article authored by journalist Michael Isikoff, reporting that he had obtained a copy of a transcript of Mussaed al Jarrah's recent deposition in the September 11th litigation. *See* Michael Isikoff, FBI Tried to Flip Saudi Official in 9/11 Investigation, Yahoo! News, July 15, 2021.[1]

3.      I understand that on June 28, 2021, a paralegal at my firm, Emily Rybicki, received via email, the final transcripts of the Jarrah deposition from the court reporter. I understand that on July 7, 2021, Ms. Rybicki received a link to the videos of the deposition.

4.      On July 13, 2021, a few days after Ms. Rybicki returned from vacation, I understand that she moved the transcripts and videos into a secure shared folder on our electronic file system that was created primarily for downloading confidential deposition

---

[1]      I did attend substantial portions of the deposition.

materials from the September 11, 2001 litigation. Only she, Jerry Goldman, Esq., Bruce Strong, Esq., two (2) members of our IT department (Robin Pramanand and Mark Guercio), and I have access.

5.     At no time did I copy, print, forward, or otherwise provide electronic or hard copies of the Jarrah deposition transcripts to anyone within Anderson Kill, or individuals outside the firm, via email or other delivery methods.

6.     On June 17 and 18, 2021, I understand that Ms. Rybicki received via email from the court reporter, rough transcripts of the deposition of Mussaed al Jarrah. I understand that she forwarded me the rough transcripts on June 22, 2021 by email. Although I understand the rough drafts of the Jarrah deposition transcripts are not in issue, I also have not copied, printed, forwarded, or otherwise provided electronic or hard copies of the rough transcripts to anyone within or outside of Anderson Kill.

7.     I have never spoken to or contacted Michael Isikoff in any way about anything, including the Jarrah deposition or the transcripts.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Executed in ____Westport CT____ on __7/30/21__

Robert M. Horkovich, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN) |
| --- | --- |

This document relates to: *All Cases*

## DECLARATION OF BRUCE STRONG, ESQ.

I, Bruce Strong, Esq., declare under penalty of perjury, as provided for by 28 U.S.C. § 1746, that the following statements are true and correct:

1.     I am an associate with the law firm Anderson Kill P.C. ("Anderson Kill"). I am one of the attorneys working on and have entered an appearance in the above-referenced matter.

2.     On the morning of July 15, 2021, I learned that Yahoo! News published an article authored by journalist Michael Isikoff, reporting that he had obtained a copy of a transcript of Mussaed al Jarrah's recent deposition in the September 11th litigation. *See* Michael Isikoff, FBI Tried to Flip Saudi Official in 9/11 Investigation, Yahoo! News, July 15, 2021.

3.     I understand that on June 28, 2021, a paralegal at my firm, Emily Rybicki, received via email, the final transcripts of the Jarrah deposition from the court reporter. I understand that on July 7, 2021, Ms. Rybicki received a link to the videos of the deposition.

4.     On July 13, 2021, a few days after Ms. Rybicki returned from vacation, I understand that she moved the transcripts and videos into a secure shared folder on our electronic file system that was created primarily for downloading confidential deposition materials from the September 11, 2001 litigation. Only Ms. Rybicki, Jerry S. Goldman,

Esq., Robert Horkovich, Esq., two (2) members of our IT department (Robin Pramanand and Mark Guercio), and I have access.

5.    At no time did I copy, print, forward, or otherwise provide electronic or hard copies of the Jarrah deposition transcripts to anyone within Anderson Kill, or individuals outside the firm, via email or other delivery methods.

6.    On June 17 and 22, 2021, I received via email from Emily Rybicki, rough transcripts of the deposition of Mussaed al Jarrah. Although I understand those are not in issue, I also have not copied, printed, forwarded, or otherwise provided electronic or hard copies of the rough transcripts to anyone within or outside of Anderson Kill.

7.    I have never spoken to or contacted Michael Isikoff in any way about anything, including the Jarrah deposition or the transcripts.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Executed in _Ventnor, NJ_____ on _7/30/21___

Bruce Strong, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN) |
|---|---|

This document relates to: *All Cases*

### DECLARATION OF EMILY RYBICKI

I, Emily Rybicki, declare under penalty of perjury, as provided for by 28 U.S.C. § 1746, that the following statements are true and correct:

1.      I am a paralegal with the law firm Anderson Kill P.C.

2.      I am the lead paralegal at this firm working on the above-referenced case on behalf of the *O'Neill* plaintiffs.

3.      On June 17 and 18, 2021, I received via email from the court reporter, rough transcripts of the deposition of Mussaed al Jarrah. Although I understand those are not in issue, I promptly forwarded the rough transcripts to Jerry S. Goldman, Esq., Bruce Strong, Esq., and Robert Horkovich, Esq. by email. I have not otherwise copied, printed, forwarded, or otherwise provided electronic or hard copies of the rough transcripts to anyone within or outside of Anderson Kill.

4.      On June 28, 2021, I received via email the final transcripts of the Mussaed al Jarrah deposition from the court reporter. At that time, I was working on other time-sensitive projects, so I did not immediately file the transcripts in our electronic file system. My computer and email are password-protected and secure and there is no evidence of any unauthorized access to my computer or email between June 28, 2021 and the present. My computer is set, by default, to lock, upon a period of inactivity and cannot be accessed without the use of a password.

5.      From July 1, 2021 through July 6, 2021, I was out of the office on vacation. I returned to work on July 7, 2021. That day, I received an email from the court reporter with a link to the videos of the Jarrah deposition. I was working on other time-sensitive projects at that time so I did not immediately file the videos in our electronic file system.

6.      Early in the morning on July 13, 2021, I moved the transcripts and the videos of the Jarrah deposition into a secure shared folder on our electronic file system that was created primarily for downloading confidential deposition materials from the September 11, 2001 litigation. Only Jerry S. Goldman, Esq., Bruce Strong, Esq., Robert Horkovich, Esq., two members of our IT department (Robin Pramanand and Mark Guercio), and I have access to the folder.

7.      Except as noted above, at no time did I copy, print, forward, or otherwise provide electronic or hard copies of the Jarrah deposition transcripts to anyone at Anderson Kill, or individuals outside the firm, via email or other delivery methods.

8.      I have never spoken to or contacted Michael Isikoff in any way about anything, including the Jarrah deposition or the transcripts.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Warrington, Pennsylvania on July 29, 2021.

Emily Rybicki
Emily Rybicki

docs-100399634.3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN) |
| --- | --- |

This document relates to: *All Cases*

### DECLARATION OF ROBIN PRAMANAND

I, Robin Pramanand, declare under penalty of perjury, as provided for by 28 U.S.C. § 1746, that the following statements are true and correct:

1.      I am the director of the IT department at the law firm Anderson Kill P.C. ("Anderson Kill").

2.      On the morning of July 15, 2021, I learned from Jerry S. Goldman, Esq. that Yahoo! News published an article authored by journalist Michael Isikoff, reporting that he had obtained a copy of a transcript of Mussaed al Jarrah's ("Jarrah") recent deposition in the September 11 litigation. *See* Michael Isikoff, FBI Tried to Flip Saudi Official in 9/11 Investigation, Yahoo! News, July 15, 2021.

3.      In communications with Ms. Rybicki (the lead paralegal at the firm assigned to this matter and tasked with handling incoming deposition material) and Mr. Goldman, and in reviewing electronic documentation, I learned that on June 28, 2021, Ms. Rybicki received via email the final transcripts of the Jarrah deposition from the court reporter. In subsequent communications and investigations, I learned that on July 7, 2021, Ms. Rybicki received a link to the videos of the deposition from the court reporting company.

4.      I was informed that at the time Ms. Rybicki received the transcripts, she was working on other time-sensitive projects, so she did not immediately file the transcripts in our electronic file system. Ms. Rybicki's computer and email are password-protected and

secure and there is no evidence of any unauthorized access to her computer or email between June 28, 2021 and the present. Ms. Rybicki's computer is set, by default, to lock, upon a period of inactivity and cannot be accessed without the use of a password.

5.      I was informed that from July 1, 2021 through July 6, 2021, Ms. Rybicki was out of the office on vacation. I was advised that Ms. Rybicki returned to work on July 7, 2021. That day, I understand that Ms. Rybicki received an email from the court reporter with a link to the videos of the Jarrah deposition. I understand that at the time Ms. Rybicki received the videos, she was working on other time-sensitive projects, so she did not immediately file the videos in our electronic file system.

6.      On July 13, 2021, a few days after Ms. Rybicki returned from vacation, I was informed that she moved the transcripts and videos into a secure, shared folder on our electronic file system that the IT department created primarily for downloading confidential deposition materials from the September 11, 2001 litigation. This was corroborated by our electronic information. Only Ms. Rybicki, two (2) members of our IT department (myself and Mark Guercio),[1] Robert Horkovich, Esq., and Bruce Strong, Esq. have access to those documents.

7.      At no time did I copy, print, forward, or otherwise provide electronic or hard copies of the Jarrah deposition transcripts to anyone within Anderson Kill or individuals outside the firm via email or other delivery methods.

8.      On July 16, 2021, I reviewed, with Mr. Goldman, the file directory and confirmed that no one had accessed the Jarrah deposition transcripts since Ms. Rybicki moved them to the secure folder on July 13, 2021.

---

[1] Mr. Guercio, Anderson Kill's system administrator, has 'back up' access to the secure folder, but has not used it.

9.     On June 17 and 18, 2021, I understand that Emily Rybicki received by email from the court reporter rough transcripts of the deposition of Mussaed al Jarrah. Although I understand those are not an issue, I also have not copied, printed, forwarded, or otherwise provided electronic or hard copies of the rough transcripts to anyone within or outside of Anderson Kill.

10.    I have never spoken to or contacted Michael Isikoff in any way about anything, including the Jarrah deposition or the transcripts. I was provided with certain email addresses of Mr. Isikoff in the course of this investigation and directed our IT department to verify if any emails were sent to him from Mr. Horkovich, Mr. Strong, Ms. Rybicki or Mr. Goldman. Our inquiry advised that there were no such emails in the Anderson Kill system.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed in __Old Bridge, New Jersey___ on _7/30/21_____

_Robin Pramanand_____

Robin Pramanand



KREINDLER & KREINDLER LLP | 485 Lexington Avenue | New York, NY 10017-2629

office: 212.687.8181 | fax: 212.972.9432 | www.kreindler.com

August 16, 2021

<u>VIA ECF</u>
The Honorable Sarah Netburn
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

     Re:    *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

    In response to this Court's August 12, 2021 Order, please see the following declarations of Megan Wolfe Benett, James P. Kreindler, Andrew J. Maloney and Steven R. Pounian.

                                          Respectfully,

                                          /s/ Megan Wolfe Benett
                                        KREINDLER & KREINDLER LLP
                                        485 Lexington Avenue
                                        New York, New York 10017
                                        Tel.: 212-687-8181
                                        Email: mbenett@kreindler.com

Enclosures

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |

*This document relates to*:
All Actions

### DECLARATION OF MEGAN WOLFE BENETT

I, Megan Wolfe Benett, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury the following:

1.   I am an attorney admitted to practice in this Court in the above-captioned matter, a partner at Kreindler & Kreindler LLP and counsel to Plaintiffs in the above referenced multi-district litigation proceeding In Re: Terrorist Attacks on September 11, 2001, Civil Action 03 MD 1570 (GBD) (SN) ("September 11th Terrorist Attacks Lawsuit") and submit this declaration in response to the Court's August 12, 2021 Order (ECF No. 7011).

2.   In connection with the September 11th Terrorist Attacks Lawsuit, I signed the FBI Protective Order (ECF No. 4255 at 10) and am aware of and have reviewed the Protective Order (ECF No. 1900).  For the past four years, I have been one of the primary attorneys at Kreindler and Kreindler LLP representing the family members of those murdered in the September 11th Terrorist Attacks in this lawsuit against the Kingdom of Saudi Arabia ("Kingdom"), alleging that the Kingdom and its agents conspired with and provided material support to the September 11th hijackers.

3.   As part of the September 11th Terrorist Attacks Lawsuit, I deposed the Kingdom of Saudi Arabia's former Ministry of Foreign Affairs, Islamic Affairs Division employee Musaed al-Jarrah on June 17 and 18, 2021.

1

4.  I obtained a copy of the rough transcript of the Jarrah deposition at the end of each day that he was deposed and a final copy of the transcript from both days of the Jarrah deposition on June 28, 2021 from Golkow Litigation Services, both an unredacted and a redacted copy.  The only individuals at Kreindler and Kreindler LLP on that email were myself, Steven R. Pounian, Jim Kreindler, Andrew J. Maloney and a paralegal in our office.

5.  On July 7, 2021, Golkow Litigation Services sent an email with links to the video of the Jarrah deposition.  Again, the only individuals at Kreindler and Kreindler LLP on that email were myself, Steven R. Pounian, Jim Kreindler, Andrew J. Maloney and a paralegal in our office.

6.  At no time did I share the Jarrah deposition transcript or videos with anyone unauthorized to see it under the Protective Order and the FBI Protective Order.

7.  At no time did I direct anyone to share the Jarrah deposition transcript or videos with anyone unauthorized to see it under the Protective Order and the FBI Protective Order.

8.  Following publication of the Michael Isikoff article, our firm conducted a review of the handling of the Jarrah deposition transcript after its receipt by the firm, including searches performed by the firm's information technology director of all outgoing emails.

9.  Based on that review, and to my knowledge, no one with the firm or anyone acting on its direction shared the Jarrah deposition transcript with anyone unauthorized by the Protective Order and the FBI Protective Order.

10. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  New York, New York
      August 16, 2021

                                    KREINDLER & KREINDLER LLP

                                    By: */s/ Megan Wolfe Benett*
                                    MEGAN WOLFE BENETT
                                    485 Lexington Avenue
                                    New York, New York 10017
                                    Tel.: 212-687-8181
                                    Email: mbenett@kreindler.com

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |

*This document relates to*:
All Actions

## DECLARATION OF JAMES P. KREINDLER

I, James P. Kreindler, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury the following:

1.  I am an attorney admitted to practice in this Court in the above-captioned matter, a partner at Kreindler & Kreindler LLP and represent Plaintiffs in the above referenced multi-district litigation proceeding In Re: Terrorist Attacks on September 11, 2001, Civil Action 03 MD 1570 (GBD) (SN) ("September 11th Terrorist Attacks Lawsuit").  I submit this declaration in response to the Court's August 12, 2021 Order (ECF No. 7011).

2.  In connection with the September 11th Terrorist Attacks Lawsuit, I signed the FBI Protective Order (ECF No. 4255 at 10) and am aware of and have reviewed the Protective Order (ECF No. 1900).  I am co-lead counsel to the family members of those murdered in the September 11th Terrorist Attacks in this lawsuit against the Kingdom of Saudi Arabia ("Kingdom"), alleging that the Kingdom and its agents conspired with and provided material support to the September 11th hijackers.

3.  I obtained a copy of the rough transcript of the Jarrah deposition at the end of each day that he was deposed and a final copy of the transcript from both days of the Jarrah deposition on June 28, 2021 from Golkow Litigation Services, both an unredacted and a redacted copy.

1

4.   On July 7, 2021, Golkow Litigation Services sent an email with links to the video of the Jarrah deposition.

5.   At no time did I share the Jarrah deposition transcript or videos with anyone unauthorized to see it under the Protective Order and the FBI Protective Order.

6.   At no time did I direct anyone to share the Jarrah deposition transcript or videos with anyone unauthorized to see it under the Protective Order and the FBI Protective Order.

7.   To my knowledge, no one with the Kreindler firm or anyone acting on its direction shared the Jarrah deposition transcript with anyone unauthorized by the Protective Order and the FBI Protective Order.

8.   I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  New York, New York
        August 16, 2021

                                KREINDLER & KREINDLER LLP


                                By: */s/ James P. Kreindler*
                                JAMES P. KREINDLER
                                485 Lexington Avenue
                                New York, New York 10017
                                Tel.: 212-687-8181
                                Email: jkreindler@kreindler.com

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |

*This document relates to*:
All Actions

### DECLARATION OF ANDREW J. MALONEY

I, Andrew J. Maloney, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury the following:

1.  I am an attorney admitted to practice in this Court in the above-captioned matter, a partner at Kreindler & Kreindler LLP and represent Plaintiffs in the above referenced multi-district litigation proceeding In Re: Terrorist Attacks on September 11, 2001, Civil Action 03 MD 1570 (GBD) (SN) ("September 11th Terrorist Attacks Lawsuit").  I submit this declaration in response to the Court's August 12, 2021 Order (ECF No. 7011).

2.  In connection with the September 11th Terrorist Attacks Lawsuit, I signed the FBI Protective Order (ECF No. 4255 at 10) and am aware of and have reviewed the Protective Order (ECF No. 1900).  I am co-liaison counsel to the family members of those murdered in the September 11th Terrorist Attacks in this lawsuit against the Kingdom of Saudi Arabia ("Kingdom"), alleging that the Kingdom and its agents conspired with and provided material support to the September 11th hijackers.

3.  I obtained a copy of the rough transcript of the Jarrah deposition at the end of each day that he was deposed and a final copy of the transcript from both days of the Jarrah deposition on June 28, 2021 from Golkow Litigation Services, both an unredacted and a redacted copy.

1

4. On July 7, 2021, Golkow Litigation Services sent an email with links to the video of the Jarrah deposition.

5. At no time did I share the Jarrah deposition transcript or videos with anyone unauthorized to see it under the Protective Order and the FBI Protective Order.

6. At no time did I direct anyone to share the Jarrah deposition transcript or videos with anyone unauthorized to see it under the Protective Order and the FBI Protective Order.

7. To my knowledge, no one with the Kreindler firm or anyone acting on its direction shared the Jarrah deposition transcript with anyone unauthorized by the Protective Order and the FBI Protective Order.

8. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: New York, New York
       August 16, 2021

                                        KREINDLER & KREINDLER LLP


                                        By: _/s/ Andrew J. Maloney_____
                                        ANDREW J. MALONEY
                                        485 Lexington Avenue
                                        New York, New York 10017
                                        Tel.: 212-687-8181
                                        Email: amaloney@kreindler.com

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |

*This document relates to*:
All Actions

## DECLARATION OF STEVEN R. POUNIAN

I, Steven R. Pounian, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury the following:

1.   I am an attorney admitted to practice in this Court in the above-captioned matter, of counsel at Kreindler & Kreindler LLP and represent Plaintiffs in the above referenced multi-district litigation proceeding In Re: Terrorist Attacks on September 11, 2001, Civil Action 03 MD 1570 (GBD) (SN) ("September 11th Terrorist Attacks Lawsuit").  I submit this declaration in response to the Court's August 12, 2021 Order (ECF No. 7011).

2.   In connection with the September 11th Terrorist Attacks Lawsuit, I signed the FBI Protective Order (ECF No. 4255 at 10) and am aware of and have reviewed the Protective Order (ECF No. 1900).  For the past four years, I have been one of the primary attorneys at Kreindler and Kreindler LLP representing the family members of those murdered in the September 11th Terrorist Attacks in this lawsuit against the Kingdom of Saudi Arabia ("Kingdom"), alleging that the Kingdom and its agents conspired with and provided material support to the September 11th hijackers.

3.   I obtained a copy of the rough transcript of the Jarrah deposition at the end of each day that he was deposed and a final copy of the transcript from both days of the Jarrah deposition on June 28, 2021 from Golkow Litigation Services, both an unredacted and a redacted copy.

1

4.   On July 7, 2021, Golkow Litigation Services sent an email with links to the video of the Jarrah deposition.

5.   At no time did I share the Jarrah deposition transcript or videos with anyone unauthorized to see it under the Protective Order and the FBI Protective Order.

6.   At no time did I direct anyone to share the Jarrah deposition transcript or videos with anyone unauthorized to see it under the Protective Order and the FBI Protective Order.

7.   To my knowledge, no one with the Kreindler firm or anyone acting on its direction shared the Jarrah deposition transcript with anyone unauthorized by the Protective Order and the FBI Protective Order.

8.   I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: New York, New York
        August 16, 2021

                           KREINDLER & KREINDLER LLP


                           By: /s/ Steven R. Pounian
                           STEVEN R. POUNIAN
                           485 Lexington Avenue
                           New York, New York 10017
                           Tel.: 212-687-8181
                           Email: spounian@kreindler.com

2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

In re:

TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

-------------------------------------------------------------X

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #:                      │
│ DATE FILED:   8/30/2021     │
└─────────────────────────────┘
```

03-MD-1570 (GBD)(SN)

**ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

The Court has reviewed the declarations submitted regarding the breach of the Protective

Orders. Based on that review, the Court orders that supplemental declarations and additional

declarations be filed.

### A. Kreindler & Kreindler

The four attorneys from Kreindler & Kreindler identified in the Court's Order at ECF No.

7011 are directed to file supplemental declarations that:

1. identify all communications with Michael Isikoff or anyone acting on his behalf, whether oral or written, from June 1, 2021, to August 1, 2021. Any written communication must be provided to the Court;

2. declare whether they have ever discussed the contents of the Musaed Al Jarrah deposition with Michael Isikoff or anyone acting on his behalf. Any communication must be described in detail, including whether portions of the transcript were read or testimony was described;

3. state every person with whom they shared the Al Jarrah deposition transcript who has not already supplied the Court with a declaration in this investigation; and

4. state every person that they know had access to the deposition transcripts who has not already supplied a declaration in this investigation.

At least one of these declarations must describe, in detail, the firm's internal investigation

that was undertaken in response to the breach of the Protective Orders.

In addition, the Court orders that the following additional declarations be provided:

1. a declaration from any party identified in the supplemental declarations described above employed by or acting at the direction of Kreindler & Kreindler. This shall include the paralegal identified in Paragraph Four of the Megan Wolfe Benett Declaration, ECF No. 7016 at 3. These declarations shall (i) address whether the declarant shared with anyone any portion of the Al Jarrah deposition transcript (either by providing copies of any portion of the transcript, reading any portion of the transcript, or describing it); and (ii) identify and describe all communications with Michael Isikoff or anyone acting on his behalf, whether oral or written, from June 1, 2021, to August 1, 2021. Any written communication must be provided to the Court; and

2. a declaration from the head of the law firm's information technology group or other comparable figure describing the investigation that was undertaken in response to the breach of the Protective Order. That declaration should demonstrate that a forensic analysis was done to identify who accessed the deposition transcripts, determine the dates of any access, and assess whether anyone from the firm emailed either of the two known Isikoff email addresses (*i.e.*, misikoff@yahoo-inc.com or misikoff@oath.com) or any other email addresses known to be associated with Isikoff. If the investigation revealed such emails sent or received between June 1, 2021, and August 1, 2021, those must be provided.

## B. Other Entities

The Court also directs the submission of declarations from:

1. Golkow Litigation Services. The Court requests that counsel for Saudi Arabia facilitate the collection of declarations from Golkow as part of this investigation, which it has offered to do. ECF No. 6982 at 1. Counsel shall provide a copy of this Order to Golkow, collect the declarations from Golkow required by this Order, and file those declarations with the Court;

2. Plaintiff Law Firms. The Plaintiffs' Executive Committee shall identify every law firm that attended the Al Jarrah deposition on behalf of a plaintiff or any firm representing a plaintiff that otherwise had access to the deposition transcript, ensure that those firms receive a copy of this Order, and make a single filing consisting of all declarations submitted by any additional plaintiff law firms in response to this Order; and

3. Defendant Law Firms: Counsel for Saudi Arabia shall identify any law firm that attended the Al Jarrah deposition on behalf of a defendant or any firm representing a defendant that otherwise had access, ensure that those firms receive a copy of this Order, and make a single filing consisting of all declarations submitted by defendant law firms in response to this Order.

Each entity shall submit a declaration(s) under penalty of perjury that provides:

1. Whether anyone employed by or acting at the direction of that entity shared the Al Jarrah deposition transcript with Isikoff, anyone acting on his behalf, or anyone not authorized to receive the deposition under the terms of the Protective Orders;

2. Whether anyone employed by or acting at the direction of that entity communicated with Isikoff or anyone acting on his behalf regarding the contents of the Al Jarrah deposition from June 1, 2021, to August 1, 2021. If communication took place, the substance of those communications must be described, and copies of any written communications must be provided to the Court; and

3. What investigative steps were taken to investigate the breach of the Protective Orders.

The submissions directed by the Court in this Order shall be provided by September 10, 2021.

**SO ORDERED.**

DATED:    New York, New York
             August 30, 2021

SARAH NETBURN
United States Magistrate Judge

3