

Aisha E. R. Bembry
202 659 6752
aisha.bembry@lbkmlaw.com

January 25, 2022

**VIA ECF**

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

Re:    In re Terrorist Attacks of September 11, 2001,
       <u>03 MDL 1570 (S.D.N.Y) (GBD) (SN)</u>

Dear Judge Netburn:

  Defendants[1] respectfully submit this letter-motion requesting that the Court hold a conference to address Defendants' objection to the declaration of Jonathan Winer, Esquire, one of Plaintiffs' experts ("Winer Declaration" or "Winer Dec."),[2] filed by Plaintiffs in opposition to Defendants' "*Daubert*" motion to bar the testimony of Jonathan Winer and Brian Jenkins. The Winer Declaration violates the Court's Order entered September 30, 2021 (ECF 7160), in that it contains improper legal arguments and is an "end run" around the page limits set by this Court for the parties' bellwether *Daubert* motions. As a consequence of Plaintiffs' decision to flout the Court-imposed page limit, Defendants seek a conference and request that the Court exclude the Winer Declaration from its consideration of the briefing on Defendants' bellwether *Daubert* motion. In the alternative, Defendants seek an expansion by 10 pages (for a total of 30 pages) of the page limit currently in effect for their reply memorandum of law, as well as 4 additional business days, in order to address Mr. Winer's arguments. Reply memoranda of law currently are due February 14, 2022.[3]

Background

  Expert depositions concluded in August 2021 and this Court held a conference on September 29, 2021 to discuss next steps in this litigation, specifically *Daubert* motions. After considering the parties' joint proposal regarding, *inter alia,* page and time limits,[4] the Court entered

---

[1] "Defendants" means Dubai Islamic Bank, World Assembly of Muslim Youth and World Assembly of Muslim Youth International (collectively, "WAMY"), International Islamic Relief Organization ("IIRO"), Muslim World League ("MWL"), Dr. Abdullah Omar Naseef, Dr. Abdullah bin Saleh Al Obaid, Dr. Abdullah Abdelmohsen Al Turki, Dr. Adnan Basha, and Yassin Kadi.

[2] ECF 7609, attached hereto as Exhibit 1.

[3] Defendants' request for additional time, in the alternative, should be limited to Defendants' reply only and should not provide additional time for Plaintiffs to file their reply memorandum of law. Accordingly, if Defendants' alternative request is granted, Plaintiffs' reply would be due February 14 and Defendants' reply due on February 18.

[4] ECF 7118, filed Sep. 17, 2021.



an order requiring the parties to file "bellwether" *Daubert* motions addressed to a sample of the experts proffered, and allowing Plaintiffs 50 pages for their memorandum of law in support of their motion, and 40 pages for their memorandum of law in opposition to Defendants' motion. (ECF 7160, entered Sept. 30, 2021).

Pursuant to the schedule set by the Court, *Daubert* motions were filed simultaneously by both sides on November 15, 2021. On January 14, 2022 the parties filed their opposition papers. In support of their opposition, Plaintiffs filed a declaration of Robert Haefele, one of Plaintiffs' counsel, attaching exhibits (ECF 7608); a 40-page memorandum of law (ECF 7606); and the 20-page Winer Declaration that is the subject of this letter-motion (ECF 7609).

Discussion

<u>The Applicable Law</u>

Experts are not permitted to submit declarations advancing legal arguments, which properly are confined to memoranda of law. *Phoenix Light SF Ltd. v. Bank of New York Mellon*, No. 14-CV-10104 (VEC), 2019 WL 5957221, at *4 n.4 (S.D.N.Y. Nov. 13, 2019) (striking portions of expert declaration for "usurping counsel's role in responding to Defendant's *Daubert* motion"); *Pacific Life Ins. Co. v. Bank of New York Mellon*, No. 17-CV-1388 (KPF)(RWL), 2021 WL 673479, at *5 (S.D.N.Y. Feb. 22, 2021) (same) (*quoting Phoenix Light*), *aff'd*, 2021 WL 5299193 (S.D.N.Y. Nov. 15, 2021). Such declarations are improper not only because witnesses should not be making legal arguments, but also because, as with Mr. Winer's declaration, the document itself constitutes an evasion of the Court-imposed page limit on the memorandum of law. *Phoenix Light*, 2019 WL 5957221, at *3 n.3, *4 n.6; *Globespanvirata, Inc. v. Texas Instruments, Inc.*, No. Civ. 03-2854, 2005 WL 3077915, at *1 (D.N.J. Nov. 15, 2005). Indeed, no declaration containing legal argument belonging in a memorandum of law is acceptable. *Phillips v. City of Middletown*, No. 17-CV-5307 (CS), 2021 WL 4462821, at *4 (S.D.N.Y. Sept. 29, 2021) (declining to consider counsel's declaration that went beyond attaching and identifying exhibits as an improper attempt "to bypass the page limits on memoranda of law"); *Clark v. Kitt*, No. 12-CV-8061, 2014 WL 4054284, at *7 (S.D.N.Y. Aug. 15, 2014) (same), *aff'd*, 619 F. App'x 34 (2d Cir. 2015); *East End Eruv Ass'n v. Town of Southampton*, No. CV 13-4810 (AKT), 2014 WL 4826226, at *9 (E.D.N.Y. Sept. 24, 2014) (same but striking declaration). So, whether acting as an expert witness or an attorney, it was improper for Mr. Winer to submit an argumentative declaration in opposition to Defendants' motion.

<u>The Winer Declaration</u>

The Winer Declaration is a blatant attempt to add material that normally would be in a party's memorandum of law. Winer begins his declaration by noting that he is an attorney (Winer Dec., Ex. 1, ¶ 1), and states under penalty of perjury that he is "providing this declaration in opposition to the motion to exclude my testimony … as argued in [Defendants'] Memorandum of



Law ….*"* (*Id*. ¶ 4). He does not say that he is providing the declaration to clarify his expert reports or his deposition testimony. He says:

> "This declaration is necessitated by defense counsel's failure to question me in adequate depth about my relevant experience during the 17 ½ hours of my deposition, despite the fact that it was all reflected on my CV." (*Id*. ¶ 5)

Lawyer Winer appears to be under the misapprehension that it is the duty of defense counsel deposing him and, in effect, cross-examining him about his expert reports, to elicit fully and to Plaintiffs' satisfaction all the testimony that he would give on direct examination at trial. Contrary to Winer's argument, at the discovery stage, the proper vehicles for setting forth Plaintiffs' depiction of the expert's qualifications are the expert's reports and re-direct examination by Plaintiffs' counsel. At Mr. Winer's deposition, Plaintiffs' counsel had the opportunity to question him after Defendants' examination and elicit embellishments to his qualifications. They chose not to question him on this or any other topic at all.[5]

The Winer Declaration is replete with arguments in opposition to those made by Defendants in their Memorandum of Law.[6] For example, in addition to the language from paragraphs 4 and 5 quoted above, the Winer Declaration states:

> "Whether counsel chose not to fully explore these issues in my testimony for strategic reasons or otherwise, I do not believe the defendants should be permitted to capitalize on those failures by mischaracterizing my work and experience." (Winer Dec. ¶ 5)

> "Defendants' arguments are premised on a number of (often vitriolic) assertions about me, my experience, and my expertise that are factually untrue …." (*Id*. ¶ 6)

> "For example, defendants are wrong where they indicate that my expertise is constrained to macro-level policy analysis …." (*Id*. ¶ 7)

> "Defendants are also wrong where they argue that I do not have the requisite expertise to testify about financial record-keeping …." (*Id*. ¶ 8)

> "Defendants have mischaracterized my testimony and used their mischaracterizations of me and of my work to mislead." (*Id*. ¶ 9)

> "Throughout their arguments, defendants understate my professional experience, expertise, work, and status." (*Id*. ¶ 10)

---

[5] *See* Excerpt of Transcript of Winer deposition (July 14, 2021), at 575, attached hereto as Exhibit 2.
[6] *See e.g.*, Winer Dec., Ex. 1, ¶¶ 4-10, 12, 21, 76, 81, 86-88, 91, 96.

Lewis
Baach
Kaufmann
Middlemiss
PLLC

The Honorable Sarah Netburn
January 25, 2022
Page 4

"Defendants mischaracterize my position at the United States Department of State as "mid-level" and strictly policy focused." (*Id*. ¶ 12)

"Defendants are wrong where they assert that my extensive experience concerning terrorist finance issues is not applicable to al Qaeda and Saudi charities." (*Id*. ¶ 21)

"Defendants are wrong where they assert that I do not have the requisite expertise to testify about accounting standards." (*Id*. ¶ 76)

"Defendants are wrong where they assert that I do not have the requisite expertise to testify on the OFAC designation process and other OFAC-related issues." (*Id*. ¶ 81)

"To undertake that work, I had to have sufficient experience and expertise in the criteria for listing and for delisting in order to represent the clients." (*Id*. ¶ 86)

"Finally, the defendants grossly mischaracterize my statements and views, alleging that I am peddling 'bigoted tropes' and 'race-baiting.'" (*Id*. ¶ 87)

"Key to showing the fallacy in defendants' arguments is that I did not make the statement that Middle Easterners (or any other group) are generally 'duplicitous' — indeed, at no time did I use in my reports or my deposition the word defendants have placed in 'quotes' and attribute to me." (*Id*. ¶ 88)

"Contrary to the defendants' willful misinterpretation of this statement, I did not refer to any particular religious, ethnic, or racial group in my statement about the practice of people in the region providing different messages to different audiences to avoid confrontation." (*Id*. ¶ 91)

"I would never have received this award if there was any factual basis for the defendants' false contention that I am prejudiced against any group." (*Id*. ¶ 96)

Particularly striking are the 3½ pages of argument that Lawyer Winer includes in his declaration after his charge that "defendants grossly mischaracterize my statements and views, alleging that I am peddling 'bigoted tropes' and 'race-baiting.'" *Id.* ¶ 87. Attempting to persuade the Court of the "fallacy in defendants' arguments", Lawyer Winer quotes nearly 20 lines from his report,[7] and spends 3½ pages attempting to rebut points asserted in Defendants' moving brief. *Id.* ¶¶ 87-100. These arguments by Winer could have been made in Plaintiffs' opposition brief.

---

[7] Interestingly, Lawyer Winer avoids quoting the very language from his report that is at issue, which he refers to as a mere "header", apparently seeking to distance himself from his problematic words. But the words in the "header" that Lawyer Winer now seeks to evade are indeed *his* words and they read: "*The intent to avoid direct conflict with the West through duplicity, or engaging in a double game*." Excerpted Expert Report of Jonathan M. Winer, at p. 59, ¶ 9.5 (emphasis in original), attached hereto as Exhibit 3.



The Honorable Sarah Netburn
January 25, 2022
Page 5

The foregoing are just a few examples of the self-serving arguments that litter the Winer Declaration. Lawyer Winer's assertions and arguments effectively give Plaintiffs 20 more pages than the Court allowed.

This Court's September 30, 2021 Order sets out the page limit for Plaintiffs' opposition memorandum. That Order, and the conference that preceded it on September 29, made clear that the Court had carefully considered the parties' arguments as to the logistics of bellwether *Daubert* motions, including page limits. It would be unfair to allow Plaintiffs in effect to increase by 20 pages (or 50%) their allotment for an opposition memorandum by having an attorney-expert submit a declaration consisting of material that normally would be argued in a memorandum of law.[8] Defendants complied with their page limit and will suffer prejudice if Plaintiffs, alone, are permitted to add 20 pages to their allotment by having the Court consider the Winer Declaration.

Therefore, Defendants respectfully request that the Court not consider the Winer Declaration when ruling on Defendants' bellwether *Daubert* motion or, in the alternative, that Defendants be given an additional 10 pages (30 in total) and 4 business days for our Reply Memorandum so that we may address Mr. Winer's arguments.

On Thursday, January 20, 2022, I spoke by telephone with Robert Haefele, one of the Plaintiffs' counsel, explaining Defendants' position that the Winer Declaration violates the Court-imposed page limits for *Daubert* briefing and requested that Plaintiffs withdraw the Winer Declaration. I requested a response to Defendants' request by Monday, January 24, at 9:00 a.m. At 10:00 am on January 24, Mr. Haefele responded by email indicating that the Plaintiffs "do not agree that the declaration violates the Court's order setting page limits for the *Daubert* briefing and will not agree to withdraw the declaration."[9]

We thank the Court for its attention to this request.

Respectfully submitted,

*[signature: Aisha B.]*

Aisha E. R. Bembry (admitted *pro hac vice*)
*Counsel for Defendants MWL and IIRO*

---

[8] The absence of case citations in the Winer Declaration does not undermine the fact that the declaration is argument about facts that, as Winer states (at ¶ 5 of the Winer Declaration), are already in the record as part of his expert report.

[9] A true and correct copy of Mr. Haefele's email is attached hereto as Exhibit 4.