**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) <br> ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army*, *et. al.*, 02-cv-6977 (GBD)(SN) (and member case *Burlingame v. Bin Laden, et al.,* 02-cv-7230 (GBD)(SN))

### The *Burlingame II* Wrongful Death Plaintiffs' Motion for Final Judgments Against the Taliban and Muhammad Omar

For the reasons set forth below, and the statements contained in the declaration of Frank H. Granito III, Esq. ("Granito Declaration"), the *Burlingame II* plaintiffs, a second subset of *Ashton* plaintiffs,[1] reflected on the annexed Exhibits A-1 and A-2 to the Granito Declaration by and through their counsel, Speiser Krause, PC, respectfully move for an Order for final damages judgments in connection with the losses and injuries they suffered as a result of the deaths of the decedents in the September 11, 2001 Terrorist Attacks set forth in the exhibits, in light of the default liability judgment the *Ashton* plaintiffs (including all *Burlingame* plaintiffs listed on Exhibits A1 and A-2 to the Granito Declaration) previously obtained against, among others, the Taliban and the founder and former leader of the Islamic Emirate of Afghanistan, emir Muhammad Omar (hereinafter the "*Taliban* and *Omar* Defendants"), specifically:

---

[1] A prior subset of *Burlingame* plaintiffs, which included the within named estates as well as others, previously moved the Court for damage judgments against the Taliban and Muhammad Omar in this matter. *See* 03-md-1570, ECF 7594, 7595. That motion has yet to be decided. With respect to the current *Burlingame II* plaintiffs, the previous motion sought only non-economic damages for the pre-death pain and suffering of the decedents named in the instant motion and requested leave for all *Burlingame* plaintiffs to subsequently move the Court for economic damages, and other appropriate damages, to the extent not sought therein. The current motion seeking only economic damages on behalf of the *Burlingame II* plaintiffs is filed pursuant to that request. *See id.*

1.    Awarding each estate of the *Burlingame* 9/11 Decedents listed in Exhibits A-1 and A-2 damages for economic loss against the *Taliban* and *Omar* Defendants as supported by the attached economic expert reports and analyses;

2.    Awarding these plaintiffs pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001, until the date of the judgment for damages;

3.    Granting the *Burlingame* Plaintiffs permission to seek punitive damages, economic damages (if not sought herein), and other appropriate damages at a later date; and

4.    Granting permission for all other plaintiffs in this action not appearing on Exhibits A-1 and A-2 to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

As the plaintiffs listed in Exhibits A-1 and A-2 have previously moved this Court to award non-economic damages for the pre-death conscious pain and suffering of their decedents, the proposed Order will constitute partial final awards and judgments against the Taliban and Omar for those Plaintiffs listed in Exhibits A-1 and A-2 to the Granito Declaration.

## I.    Procedural Background

On September 10, 2002, the *Burlingame* Plaintiffs filed their first complaint against the alleged sponsors of the September 11, 2001 terrorist attacks, which included claims against defendants al Qaeda Islamic Army, the Taliban, and Muhammad Omar, among others. *See* 02-cv-7230 (S.D.N.Y.) ECF 1.[2]  The *Burlingame* (02-cv-7230) and *Ashton* (02-cv-6977) matters were Ordered consolidated for liability purposes and mandated to proceed under the *Ashton, et al. v. al*

---

[2] References to MDL docket entries found at 03-md-1570 (S.D.N.Y.) are noted only by ECF number; references to individual civil case docket entries are preceded by the case number.

*Qaeda Islamic Army, et al.* (hereinafter "Ashton") master docket number 02-cv-6977, with the filing of a consolidated master complaint, and attorney James Kreindler was appointed Liaison Counsel for the consolidated actions within the *Ashton* master complaint. See 02-cv-6977, ECF No. 5, Entered 11/19/2002. The *Burlingame* plaintiffs remain segregated within all consolidated *Ashton* filings and are identified therein according to their separate docket number and counsel. See, e.g., 02-cv-6977, ECF No. 465, filed 03/30/2005. The master complaint was amended several times. *See, e.g.,* 02-cv-6977 (S.D.N.Y.) ECF 2, 11, 32, 38, 111, 465.[3]

In their complaints, the *Ashton* Plaintiffs (including the *Burlingame II* plaintiffs listed on Exhibits A-1 and A-2), both United States nationals and non-nationals, asserted federal jurisdiction against the *Taliban* and *Omar* Defendants pursuant to, among other provisions, the Alien Tort Statute (28 U.S.C. § 1350) ("ATS"), the Foreign Sovereign Immunities Act (28 U.S.C. § 1605(a)(7)) ("FSIA") and the Torture Victim Protection Act (28 U.S.C. § 1350 note) ("TVPA"), and made claims for damages against those defendants under those provisions as well as under the Anti-Terrorism Act (18 U.S.C. § 2333) ("ATA") and state law for the deaths, injuries and losses suffered in the September 11th Terrorist Attacks. *See, e.g.* ECF 447; *Ashton v. al Qaeda et al.*, 02-cv-6977, ECF 465 at ¶¶ 2-3, 10-12, 464-466, 469-70, 473-74, 477-78, 481-82, 486-89.

This Court issued an order authorizing service of process by publication on certain defendants, including the *Taliban* and *Omar* Defendants. ECF 445 at 1, 8, 11.  The *Ashton* Plaintiffs (including the *Burlingame* plaintiffs listed on Exhibits A-1 and A-2), and others, served the *Taliban* and *Omar* Defendants by publication with verification of publication filed on March

---

[3] In a Case Management Order, this Court set forth a process for adding plaintiffs by listing their names and filing as supplemental pleadings under Fed.R.Civ.P. 15(d) and ordering that "[p]laintiffs added by this procedure need not re-serve defendants who have already been served." ECF 247 at ¶ 12.

16, 2005 and March 31, 2005. ECF 709, 735.[4]  The *Taliban* and *Omar* Defendants never answered and the *Ashton* Plaintiffs (including the *Burlingame* plaintiffs listed on Exhibits A-1 and A-2) thereafter moved for a Certificate of Default and a default judgment, which this Court granted on May 12, 2006. ECF 1782 *et seq.*, 1797 (referring to the defendants listed in Exhibit B to the *Ashton* Plaintiffs' motion, including the *Taliban* and *Omar* Defendants).[5]

Previously, in connection with their claims against defendant Islamic Republic of Iran, another defendant in the complaints naming the *Taliban* and *Omar* Defendants, this Court granted the *Ashton* Plaintiffs (including the *Burlingame* plaintiffs listed on Exhibits A-1 and A-2) a default liability judgment. ECF 3021.  Thereafter, in connection with the damages assertions set forth in the *Ashton* complaints, in a series of orders this Court issued final damages judgments against Iran, granting the *Burlingame* Plaintiffs' motions for:

- Compensatory damages for the conscious pain and suffering of the *Ashton* and *Burlingame* 9/11 Decedents (*e.g.*, ECF 3226, 3229);

- Economic damages for the estates of the *Burlingame* 9/11 Decedents *(e.g.,* ECF 5857), which damages claims were supported by the expert analysis, reports or other economic loss calculations that the *Burlingame* Plaintiffs previously filed with this Court. (*See, e.g.,* ECF 5486-2);

- Solatium damages for the immediate family members (and their functional equivalents) of the *Burlingame* 9/11 Decedents (*e.g.* ECF 3987, 4087, 4156, 4707, 5058, 5453, 5974).

---

[4] The publication notices directed the named defendants to the MDL docket and advised them in both English and Arabic that they were required to answer the complaints on that docket, which sought, among other things, compensatory, treble and punitive damages, within 60 days. ECF 709 at 2; 735 at 2.  The jurisdictional and factual allegations against the *Taliban* and *Omar* Defendants as set forth in the operative complaint at the time of service did not change in subsequent amendments. *Compare* 02-cv-6977 (S.D.N.Y.) (*Ashton* Consolidated Master Complaint, Filed 03/06/2003), ECF 11 at ¶¶ 2, 10-12, 112-14, 178-79, 600, 602-03, 605-06, 608-09, 610-12, 615-19 *with* 02-cv-6977 (S.D.N.Y.) (Sixth Amended Complaint, Filed 09/03/2005) ECF 465 at ¶¶ 2, 10-12, 78-79, 123-25, 464-66, 469-70, 473-74, 477-78, 481-82.

[5] This Court's default liability judgment was issued on May 12, 2006 and stated that it applied to all claims, plaintiffs and defendants that were included up to and through the Sixth Amended Complaint. ECF 1797.

The *Burlingame* Plaintiffs listed in Exhibits A-1 (U.S. nationals) and A-2 (non-U.S. nationals) to the Granito Declaration now move this Court to grant the proposed Order awarding them damages for, as noted on the Exhibit, economic loss arising out of the deaths of those individuals killed in the September 11th Terrorist Attacks and directing that pre-judgment interest be assessed at 4.96 percent per annum and finding that service of process was properly effectuated. The *Burlingame* Plaintiffs set forth in Exhibits A-1 and A-2 are asserting damage claims for the estates of those individuals killed in the Sept. 11 Terrorist Attacks.  The *Burlingame* Plaintiffs also ask for permission to continue to submit applications in subsequent stages on behalf of those claimants not included in the attached exhibits, should any other applications be warranted.

## II.    Damages

The *Ashton* Plaintiffs (including the *Burlingame* plaintiffs listed on Exhibits A-1 and A-2) claimed damages, as relevant here, pursuant to the ATA's civil damages provision, the TVPA, the FSIA (if the Taliban are determined to be the governing body for the nation state of Afghanistan) and state law. 02-cv-6977 (S.D.N.Y.), ECF 465 at 235-240.

According to the caselaw governing terrorism litigation, the "estates of those who did not survive can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." *Valore v. Islamic Republic of Iran*, 700 F.Supp.2d 52, 83 (D.D.C. 2010) (concerning damages under FSIA); *Ests. of Ungar ex rel. Strachman v. Palestinian Auth.,* 304 F. Supp. 2d 232, 267 (D.R.I. 2004) (finding that under ATA plaintiffs can recover "both pecuniary damages … and also for non-economic damages, including loss of companionship, society, and mental anguish experienced by the victim's surviving family members, including his siblings … ."); *see also Miller v. Arab Bank, PLC,* 372 F. Supp. 3d 33, 41 (E.D.N.Y. 2019) (ruling that plaintiffs were entitled to

solatium damages under the ATA);  *Lelchook v. Commerzbank AG*, 2011 WL 4087448, at *2 (S.D.N.Y. Aug. 2, 2011) ("permitting plaintiffs to pursue claims for solatium damages is consistent with both the purpose of the ATA, and Congress's intention to incorporate traditional tort-law principles into the statute."); *Goldberg v. UBS AG*, 660 F.Supp.2d 410, 426 (E.D.N.Y. 2009) ("every court that has construed § 2333(a)" has found that it permits both emotional and pecuniary damages); *Smith ex rel. Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 240 (S.D.N.Y. 2003) (while punitive damages are not available under ATA, its civil action provision "provides for treble damages").

Even if there is a question as to whether the Taliban is considered the governing body of a foreign sovereign, and though a claim under the FSIA is available only to a "claimant or … victim [who] was … a national of the United States; a member of the armed forces; or otherwise an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment," under the Alien Tort Statute, which was another source of jurisdiction the *Ashton* Plaintiffs asserted, district courts have authority to hear claims brought against non-sovereign defendants by both U.S. nationals and non-U.S. nationals. *See* 28 U.S.C. § 1350.  Further, the ATA (for U.S. nationals) and state law remedies (for U.S. nationals and non-U.S. nationals) also provide remedies against a non-sovereign defendant for those killed or injured in an attack on United States.

Those *Burlingame* Plaintiffs set forth in Exhibits A-1 and A-2 are all representatives of the estates of victims who were murdered on September 11, 2001 (*Burlingame* 9/11 Decedents) and the claims on behalf of the *Burlingame* 9/11 Decedents are asserted by those estate representatives. As liability has been established against the *Taliban* and *Omar* Defendants, each of those moving plaintiffs is now seeking a final order of damages in the amounts set forth on Exhibits A-1 and A-

2, which reflect the economic loss suffered by the Estates of the *Burlingame* 9/11 Decedents supported by the expert economic analysis and reports attached to the Granito Declaration as Exhibits B-1 through B-19.

### A. Economic Damages

Economic damages are specifically contemplated in terrorism litigation, whether under the FSIA, the ATA or otherwise. The economic damages provision is "designed to compensate [a] decedent's heirs-at-law for economic losses which result from [the] decedent's premature death." *Flatow v. Islamic Republic of Iran,* 999 F. Supp. 1, 27 (D.D.C. 1998); *see also Ungar*, 304 F.Supp.2d at 264-65 (its legislative history "indicates that the ATA was to be construed broadly" and giving weight to its co-sponsor's statement that the ATA "'empowers victims with all the weapons available in civil litigation,'" suggesting "that Congress intended that the full range of damages should be available to persons entitled to bring actions pursuant to § 2333(a).") Accordingly, "the beneficiaries of each decedent's estate [are] … entitled to recover the present value of economic damages, including lost wages that the decedents might reasonably have been expected to earn but for their wrongful deaths." *Valore,* 700 F. Supp. 2d at 81-82, citing *Heiser v. Islamic Republic of Iran,* 466 F.Supp.2d 229 (D.D.C. 2006.)  Thus, for example, United States District Court Royce C. Lambreth of the District of Columbia, in a series of decisions issuing final judgments against Iran, has held Iran "liable for the economic damages caused to decedents' estates." *Roth v. Islamic Republic of Iran,* 78 F. Supp. 3d 379, 399-400 (D.D.C. 2015), quoting *Valore,* 700 F.Supp.2d at 78.[6]

---

[6] In adopting this estate-accumulations calculation, Judge Lambreth recognized that case law under the FSIA was "develop[ing] … a federal standard" and looked to the law of the District of Columbia, which it concluded was "an appropriate model" to adopt and which calculated economic damages as the loss of accretions to the decedent's estate. *Roth,* 78 F.Supp.3d at 82.

Previously, this Court awarded economic damages to certain *Ashton* plaintiffs, including *Burlingame* plaintiffs, for the "economic losses stemming from the wrongful death of the decedent[.]" See 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), Doc. No. 3386, Entered 10/31/2016. In doing so, it adopted the economic loss calculations set forth in the plaintiffs' economic expert reports. The *Burlingame II* Plaintiffs respectfully ask that this Court award economic damages set forth in the attached Exhibits A-1 and A-2 to the Granito Declaration and supported by the economic expert reports attached as Exhibits B1-B19 to the Granito Declaration. The Estates listed in Exhibits A-1 and A-2 opted to seek compensation through the September 11 Victim Compensation Fund of 2001 (the "VCF") and in connection with that claim, gathered information relevant to the economic losses suffered as result of the decedent's wrongful death, which included both documentary evidence of decedent's earnings as well as interviews with decedent's surviving family members, colleagues and other witnesses.  The Estates retained an expert who has rendered opinions as to the economic losses that resulted from their decedents' wrongful deaths.  Submitted as Exhibits B1-B19 to the Granito Declaration are copies of that economic expert's reports.  The expert reports also include a description of methodology used and the expert's curriculum vitae. Because of their sheer size and the confidential nature of their contents, in accordance with the previous order of this Court (ECF 7067), the individual expert economic reports for the *Burlingame II* Plaintiffs are being provided to the Court on disc as Exhibit B.

Accordingly, the *Burlingame II* plaintiffs respectfully request that the economic damages as set forth in the attached Exhibits A-1 and A-2 be awarded here, which are the figures calculated by the plaintiffs' economic expert as the economic losses suffered as a result of the wrongful deaths of their decedents and brought to present value.

Accordingly, the *Burlingame v. Taliban and Omar* Plaintiffs now respectfully request that this Court order economic loss awards to those 9/11 Decedents listed in the attached Exhibits A-1 and A-2 to the Granito Declaration and supported by the economic expert reports attached as Exhibits B-1 through B-19 to the Granito Declaration and as were previously awarded to other *Burlingame* Plaintiffs by this Court as final judgments against Iran.

## B. Conscious Pain and Suffering

Plaintiffs identified in Exhibits A-1 and A-2 are all estates of *Burlingame* 9/11 Decedents, who suffered through the September 11, 2001 terrorist attacks and were murdered on that day. This Court has previously assessed claims for the extraordinary conscious pain and suffering experienced by those who lost their lives or were physically injured on September 11, 2001, including for those *Burlingame* 9/11 Decedents identified on Exhibits A-1 and A-2. ECF Nos. 2618 at 7 – 9, 5971.  The *Burlingame* Plaintiffs listed on Exhibits A-1 and A-2 made an earlier motion to this Court for the pre-death conscious pain and suffering in the same amounts previously awarded of $2,000,000 for each 9/11 Decedent. ECF No. 7594, 7595-1, 7595-2. Accordingly, the *Burlingame II* Plaintiffs now respectfully request that this Court grant those *Burlingame* 9/11 Decedents whose estates are set forth in Exhibits A-1 and A-2 compensatory damages judgment that reflects the economic losses listed for each 9/11 Decedent.  The total final damages amount for each *Burlingame* 9/11 Decedent listed in Exhibits A-1 and A-2 herein do not include, and are in addition to, the non-economic damages against the Taliban and Omar defendants sought on behalf of the *Burlingame II* decedents in plaintiffs' prior motion. *See* ECF 7595-1, 7595-2.

## C. Punitive Damages

While *Burlingame II* Plaintiffs are also entitled to punitive damages, in light of prior differing decisions on the proper punitive multiplier (*compare* ECF No. 2623 at 5, ECF No. 3175 at 3, ECF No. 3229 at 1, ECF No. 3300 at 1 *with* ECF No. 3363 at 28 and ECF No. 3384 at 6), the

*Burlingame II* Plaintiffs request permission to address the issue of punitive damages at a later date. *See, e.g.*, ECF No. 3666 (Judge Daniels' order authorizing plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

### D. Prejudgment Interest

On the issue of prejudgment interest, a December 28, 2015, Report and Recommendation, adopted by this Court, concluded that to the extent the *Burlingame* wrongful death plaintiffs' claims arose out of injuries in New York State, the rate of prejudgment interest was 9 percent per annum from September 11, 2001, until the date judgment was entered, and to the extent the injuries arose elsewhere, 4.96 percent interest per annum compounded annually was appropriate. *See* ECF No. 3175 at 1 – 2. Subsequently, however, this Court concluded that the rate of prejudgment interest of 4.96 percent was more appropriate. ECF No. 3384 at 6. *See* 03-md-1570 (11-cv-7550).

Accordingly, the *Burlingame II* Plaintiffs ask that this Court direct that prejudgment interest of 4.96 percent per annum on their awards running from September 11, 2001, until the date of judgment, as was done previously done in this consolidated litigation.

### III. Conclusion

For all of the reasons herein, as well as those set forth in the previous submissions, the *Burlingame II* Plaintiffs respectfully request that this Court grant the proposed order:

1. Awarding each estate of the *Burlingame* 9/11 Decedents damages listed in Exhibits A-1 and A-2 damages for economic loss against the *Taliban* and *Omar* Defendants as supported by the attached economic expert reports and analyses;

2. Awarding the *Burlingame II* plaintiffs pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001, until the date of the judgment for damages;

3.      Granting the *Burlingame II* Plaintiffs permission to seek punitive damages, economic damages (if not sought herein), and other appropriate damages at a later date; and

4.      Granting permission for all other Plaintiffs not appearing on Exhibits A-1 and A-2 to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Dated: Rye Brook, New York
        January 28, 2022

Respectfully submitted,

SPEISER KRAUSE, PC

By: /s/ Frank H. Granito
Frank H. Granito, III, Esq. (FG9760)
Douglas A. Latto, Esq. (DL3649)
Jeanne M. O'Grady, Esq. (JO3362)
Speiser Krause, PC
800 Westchester Avenue, Suite S-608
Rye Brook, New York 10573
Tel: (914) 220-5333
Fax: (914) 220-5334
f3g@speiserkrause.com
dal@speiserkrause.com
jog@speiserkrause.com
*Attorneys for the Burlingame Plaintiffs*