# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                             )
IN RE: TERRORIST ATTACKS ON       )      Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001                 )      ECF Case
_____ )

This document relates to: *All Actions*

## SAUDI ARABIA'S OPPOSITION TO PLAINTIFFS' MOTIONS TO REVISE THIS COURT'S MARCH 28, 2018 ORDER

Michael K. Kellogg
Mark C. Hansen
Gregory G. Rapawy
Andrew C. Shen
KELLOGG, HANSEN, TODD, FIGEL
   & FREDERICK, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900
(202) 326-7999 (fax)

*Attorneys for the Kingdom of Saudi Arabia*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................1

STANDARD OF REVIEW ...............................................................................................3

ARGUMENT ...................................................................................................................4

I.     The Court Should Not Reconsider Its Rejection of Plaintiffs' Allegations
Based on Saudi Arabia's Support for Islamic Charities ....................................4

       A.      *Kaplan* and *Honickman* Do Not Disturb This Court's Conclusion
That Plaintiffs' Charity Allegations Fail To State a Basis for
Jurisdiction ................................................................................................4

       B.      The Principles the CAC Plaintiffs Purport To Derive from *Kaplan*
and *Honickman* Do Not Justify Reconsideration as to the Charity
Allegations ..............................................................................................10

II.    The Court Should Not Reconsider Its Rejection of Plaintiffs' Allegations
Based on the Acts of Individuals Allegedly Associated with Saudi Arabia....................12

III.   Plaintiffs Fail To Show That They Can State Any Claim Against
Saudi Arabia.....................................................................................................16

       A.      JASTA Does Not Create Aiding-and-Abetting Claims Against
Foreign States............................................................................................17

       B,      Plaintiffs Fail To Allege the General Awareness or Knowledge
Required for an Aiding-and-Abetting Claim ............................................18

       C.      Plaintiffs Fail To Justify Reconsideration as to Their Primary-
Liability Claims .......................................................................................22

CONCLUSION.................................................................................................................23

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................14

*Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204 (D.C. Cir. 2022) ...........................................21, 22

*Bergerson v. N.Y. State Off. of Mental Health*, 652 F.3d 277 (2d Cir. 2011) .................................3

*Breard v. Greene*, 523 U.S. 371 (1998) ........................................................................17

*Breitman v. Xerox Educ. Servs., LLC*, 2015 WL 13652883 (S.D.N.Y. Jan. 7, 2015) ....................3

*Cohen v. UBS Fin. Servs., Inc.*, 2014 WL 240324 (S.D.N.Y. Jan. 22, 2014), *aff'd*,
  799 F.3d 174 (2d Cir. 2015)........................................................................3, 8

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005)................................................7

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611
  (1983)........................................................................................................5

*Fogel v. Chestnutt*, 668 F.2d 100 (2d Cir.1981) .....................................................................3

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) ..........................................................2, 6, 9

*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017) ..............................................9

*Honickman v. BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021) .................................1, 2, 4, 5, 6, 7, 9,
  10, 11, 12, 16, 22, 23

*Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021) .........1, 2, 4, 5, 6, 7, 9, 10,
  11, 12, 16, 18, 21, 22, 23

*Kingdomware Techs., Inc. v. United States*, 579 U.S. 162 (2016) ................................................9

*LIBOR-Based Fin. Instruments Antitrust Litig., In re*, 2018 WL 3222518
  (S.D.N.Y. July 2, 2018) ........................................................................3, 23

*MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 138 F.3d 33 (2d Cir. 1988).................................12

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) ......................................................12

*McCardle, Ex parte*, 74 U.S. (7 Wall.) 506 (1869) ...............................................................7

*North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160 (2d Cir. 1995) .............3, 23

*Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v.
  Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705 (2d Cir. 2013) ..................................11-12

*Rodriguez v. United States*, 480 U.S. 522 (1987) .......................................................................9

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995) ..........................................................3

*Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217 (2d Cir. 2019) ........................................22

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)........................................................7

*Sturdza v. United Arab Emirates*, 281 F.3d 1287 (D.C. Cir. 2002)...........................................17

*Terrorist Attacks on September 11, 2001, In re*:

    714 F.3d 118 (2d Cir. 2013)...............................................................................................10

    134 F. Supp. 3d 774 (S.D.N.Y. 2015), *vacated and remanded*,
    Nos. 15-3426-cv(L) et al., 2017 WL 8776686 (2d Cir. Feb. 7, 2017).........................13, 19

*Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49 (2d Cir. 2019) ..........................................3, 6, 16

*Zdanok v. Glidden Co.*, 327 F.2d 944 (2d Cir. 1964) ...................................................................3

## STATUTES

Anti-Terrorism Act, 18 U.S.C. § 2331 *et seq.* ...............................................................1, 4, 6, 8, 17

    18 U.S.C. § 2333......................................................................................................8, 17

    18 U.S.C. § 2333(d)...............................................................................................17, 23

    18 U.S.C. § 2333(d)(1)................................................................................................17

    18 U.S.C. § 2333(d)(2).........................................................................................1, 2, 17

    18 U.S.C. § 2337.......................................................................................................1, 8

    18 U.S.C. § 2337(2)......................................................................................................17

Dictionary Act, 1 U.S.C. § 1 .......................................................................................................17

Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 852
(2016).............................................................................................................1, 2, 5, 7, 8,
                                  9, 11, 12, 17

    § 2(b), 130 Stat. 853.....................................................................................................9

    28 U.S.C. § 1605B .........................................................................................1, 8, 9, 12

28 U.S.C. § 1605B(b) ................................................................2, 4, 5, 6, 7, 8, 9, 11, 12, 15, 17

28 U.S.C. § 1605B(c)................................................................................8, 17

42 U.S.C. § 1985................................................................................17

## INTRODUCTION

In March 2018, this Court rejected most of Plaintiffs' allegations against the Kingdom of Saudi Arabia ("Saudi Arabia") as failing to show subject-matter jurisdiction under the Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 852 (2016) ("JASTA"). *See* ECF No. 3946 ("March 2018 Order"). The Court ordered "[l]imited jurisdictional discovery on specific factual allegations critical to the immunity determination [to] proceed promptly and expeditiously . . . as to the alleged tortious acts by alleged Saudi agents Fahad al Thumairy and Omar al Bayoumi." *Id.* at 41. Jurisdictional written discovery closed in January 2020, all other non-expert discovery closed in June 2021, and expert discovery will close in July 2022. Saudi Arabia will then renew its motion to dismiss and will show that no evidence supports Plaintiffs' allegation that Al Thumairy, Al Bayoumi, or any agent of theirs "took actions in 2000, at the direction of more senior Saudi officials, to provide assistance" to two 9/11 hijackers. *Id.* at 23.

Plaintiffs now ask the Court to revisit its March 2018 Order and order far broader discovery or permit their claims to proceed on the merits. Their proffered justification for that request consists of *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021), and *Honickman v. BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021). Those cases considered whether plaintiffs stated Anti-Terrorism Act ("ATA") claims against private banks under 18 U.S.C. § 2333(d)(2), the aiding-and-abetting provision JASTA added to the ATA. Neither decision involved an action against a foreign sovereign. Neither considered any issue of subject-matter jurisdiction. Neither applied 28 U.S.C. § 1605B, the sovereign-specific jurisdictional provision this Court construed in March 2018. Neither addressed 18 U.S.C. § 2337, which bars ATA claims against foreign sovereigns subject only to a limited exception set forth in § 1605B. Far from controlling, *Kaplan* and *Honickman* are not even relevant.

The case-specific disputes resolved by the March 2018 Order do not resemble any issues raised in *Kaplan* and *Honickman*.  Neither decision affects this Court's determination that Plaintiffs failed to allege facts that would support treating certain Islamic charities as Saudi Arabia's alter egos, agents, or component parts; or facts to suggest that the charities' actions proximately caused Plaintiffs' injuries, as JASTA's jurisdictional causation element requires. Similarly, neither *Kaplan* nor *Honickman* affects this Court's determination that Plaintiffs did not sufficiently allege that various individuals acted within the scope of any official, employment, or agency relationships with Saudi Arabia; or that the individuals' actions, like the charities', did not meet even the version of causation that Plaintiffs themselves proposed.

Plaintiffs rely on the erroneous contention that, if they can state a claim under JASTA's aiding-and-abetting provision, this Court has jurisdiction over that claim – because, they say, Congress passed JASTA for their benefit.  The March 2018 Order duly considered JASTA's purpose, but properly gave dispositive effect to the text of § 1605B(b).  That text creates specific jurisdictional requirements.  *Kaplan* and *Honickman* do not address those requirements or any issue of jurisdiction at all.  Accordingly, the March 2018 Order should stand as law of the case.

Finally, even if the Court were to reach the question whether Plaintiffs could state a claim for aiding-and-abetting terrorism under JASTA, it should rule that they cannot.  JASTA creates a cause of action only against "person[s]" who aid and abet terrorism, 18 U.S.C. § 2333(d)(2), using a definition of "person" that excludes sovereigns.  Plaintiffs also lack factual allegations to support their contentions that Saudi Arabia was "'generally aware'" of its purported role in terrorism or "'knowingly'" assisted others in engaging in terrorism. *Kaplan*, 999 F.3d at 856 (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)).  For those reasons as well, the Court should reject Plaintiffs' overreaching effort to render moot four years of discovery.

## STANDARD OF REVIEW

The "'standard'" for reconsideration is "'strict'"; it "'will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 54 (2d Cir. 2019) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); *see Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964) (Friendly, J.) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.").

A purported change in law warrants reconsideration only where new authority leaves a court with a "'clear conviction of error with respect to a point of law on which its previous decision was predicated.'" *North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995) (quoting *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir.1981) (Friendly, J.)). Courts in this District apply the "clear conviction of error" requirement to motions for reconsideration of an interlocutory decision. *See, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2018 WL 3222518, at *1 (S.D.N.Y. July 2, 2018); *Breitman v. Xerox Educ. Servs., LLC*, 2015 WL 13652883, at *1 (S.D.N.Y. Jan. 7, 2015); *Cohen v. UBS Fin. Servs., Inc.*, 2014 WL 240324, at *2 (S.D.N.Y. Jan. 22, 2014), *aff'd*, 799 F.3d 174 (2d Cir. 2015). "The moving party bears the burden of demonstrating the need for reconsideration," and, "'generally, there is a strong presumption against amendment of prior orders.'" *Breitman*, 2015 WL 13652883, at *1 (quoting *Bergerson v. N.Y. State Off. of Mental Health*, 652 F.3d 277, 288 (2d Cir. 2011)). An intervening legal decision that is "inapplicable to the question currently before this Court" because it concerns a different legal issue "cannot be considered controlling" so as to warrant reconsideration. *Cohen*, 2014 WL 240324, at *4.

# ARGUMENT

I.   **The Court Should Not Reconsider Its Rejection of Plaintiffs' Allegations Based on Saudi Arabia's Support for Islamic Charities**

A.   ***Kaplan*** **and** ***Honickman*** **Do Not Disturb This Court's Conclusion That Plaintiffs' Charity Allegations Fail To State a Basis for Jurisdiction**

This Court's March 2018 Order correctly determined that Plaintiffs' allegations concerning Saudi Arabia's support for Islamic charities did not establish a reasonable basis for jurisdiction over Saudi Arabia.  To reach that conclusion, the Court applied 28 U.S.C. § 1605B(b), which creates an exception to a foreign state's jurisdictional immunity for

> any case in which money damages are sought against a foreign state for physical injury to person or property or death occurring in the United States and caused by –
>> (1) an act of international terrorism in the United States; and
>> (2) a tortious act or acts of the foreign state, or of any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, regardless where the tortious act or acts of the foreign state occurred.

Analyzing that language, the Court explained that § 1605B(b)

> has four discrete elements, each of which must be satisfied before this Court can exercise subject matter jurisdiction over Plaintiffs' claims against the Moving Defendants:  (1) physical injury to a person or property or death occurring in the United States; (2) an act of international terrorism in the United States, *and* a tortious act or acts by a foreign state, or *any* official, employee, or agent of that state taken while acting within the scope of that person's office, employment, or agency; (3) causation; and (4) damages.

March 2018 Order 9.  Neither of the cases that Plaintiffs contend support reconsideration involved any foreign state, any discussion of foreign sovereign immunity, any issue of subject-matter jurisdiction, or any analysis of § 1605B(b).  Instead, both cases addressed the allegations needed to state claims against private sector banks for aiding-and-abetting violations of the ATA. *See Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 845, 849 (2d Cir. 2021); *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 490-91 (2d Cir. 2021).

The March 2018 Order found that Plaintiffs failed to plead a reasonable basis for jurisdiction under § 1605B(b) for two reasons. *First*, the Court reasoned that "Plaintiffs do not articulate a valid basis for holding Saudi Arabia vicariously liable for the acts of the charity organizations." March 2018 Order 31. The Court relied on the Supreme Court's teaching that "'government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such.'" *Id.* (quoting *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 626-27 (1983)). It rejected Plaintiffs' contentions that "the charity organizations were alter-egos of Saudi Arabia," *id.* at 33 (internal quotation marks omitted), that the charities "perform[ed] core functions of the Saudi state," *id.* at 35, and that their acts could be attributed to Saudi Arabia "under ordinary agency principles," *id.* at 36. Accordingly, allegations that the charities provided funds or material support to Al Qaeda could not satisfy JASTA's requirement of "a tortious act or acts of the foreign state." Neither *Kaplan* nor *Honickman* provides any reason to reconsider that ruling because neither addressed any issue of alter-ego liability, agency principles, or any other attempt to attribute the acts of a separate juridical entity to a foreign state to overcome foreign sovereign immunity.

*Second*, the Court reasoned that, "[b]ecause the alleged tortious acts by the charities did not proximately cause Plaintiffs' injuries, they provide no basis under JASTA for this Court to exercise jurisdiction over the claims asserted against Saudi Arabia." *Id.* at 37. The Court adopted the definition of proximate causation urged by Plaintiffs, which "only requires . . . 'some reasonable connection between the act or omission of defendant and the damages which the plaintiff has suffered.'" *Id.* at 13 (quoting ECF No. 3782, at 18-19).[1] Applying that standard,

---

[1] Saudi Arabia had contended that the ordinary meaning of the phrase "caused by" in § 1605B(b) required a showing of (1) but-for causation and (2) a tighter connection between act and injury. The Court rejected those contentions. *See* March 2018 Order 12-14. Saudi Arabia does not seek reconsideration of that ruling but respectfully preserves the issue for any appeal.

the Court concluded that "Plaintiffs' allegations are conclusory, largely boilerplate, and concern conduct too temporally and geographically remote from the 9/11 Attacks to have proximately caused Plaintiffs' injuries." *Id.* at 37.  It further explained that "the vast majority of Plaintiffs' allegations involve alleged acts by the charities to aid and support al Qaeda's efforts in Europe, Africa, the Middle East, and the Far East during the 1980s and 1990s" without "any definite and specific, articulable connection to the 9/11 Attacks or those who carried them out." *Id.*

Neither *Kaplan* nor *Honickman* addressed jurisdictional causation, or any form of causation at all.  As the CAC Plaintiffs acknowledge (at 6-7), aiding-and-abetting claims do not require that the defendant proximately cause injury.  The only causation element of an aiding-and-abetting claim is that "'the party whom the defendant aids must perform a wrongful act that causes an injury.'" *Kaplan*, 999 F.3d at 856 (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)).  Thus, in *Kaplan* and *Honickman* the only causation requirements were that the terrorist organizations (Hizbollah in *Kaplan* and Hamas in *Honickman*), which the defendant banks had allegedly aided, had caused the plaintiffs' injuries.  That element was not even disputed in those appeals.  In this litigation, the Court has already ruled – as Plaintiffs conceded in the initial briefing – that the § 1605B(b) exception requires Plaintiffs to show that *Saudi Arabia's* actions proximately caused Plaintiffs' injuries.  Because *Kaplan* and *Honickman* do not change that requirement, neither is a "controlling decision[ ]," *Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 54 (2d Cir. 2019), that could warrant reconsideration.

Both the CAC and the *Ashton* Plaintiffs' motions focus on the misplaced contention that, under *Kaplan* and *Honickman*, Plaintiffs have stated a valid claim under the aiding-and-abetting provisions of the ATA.  The Court did not decide in the March 2018 Order whether Plaintiffs had or had not stated a claim on any of their federal or state causes of action.  Instead, the "sole issue" the Court resolved was "whether JASTA provides a basis . . . to exercise subject matter

jurisdiction over claims asserted against Saudi Arabia and its instrumentality, the [Saudi High Commission], where none existed before."  March 2018 Order 8.  That approach was correct under the basic principle that "[f]ederal district courts are courts of limited jurisdiction" and "'possess only that power authorized by [the] Constitution and [by] statute.'"  *Id.* at 5 (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)) (first alteration added); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("'Without jurisdiction the court cannot proceed at all in any cause.'") (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869)).  Because almost all of Plaintiffs' arguments focus on whether they have stated a claim rather than on whether the Court has subject-matter jurisdiction, they are irrelevant to the basis for the Court's decision.

The CAC Plaintiffs' only attempt to address jurisdiction is their erroneous contention (at 11) that Plaintiffs have made "adequa[te] . . . allegations related to both secondary and primary liability claims that the Kingdom provided material support to al Qaeda" and that "Congress designed JASTA's exception to sovereign immunity to ensure that all such claims (and specifically, Plaintiffs' claims) would be able to proceed in U.S. courts."  That is, they ask the Court to determine whether they have stated claims before determining its own jurisdiction; to disregard the language of JASTA that governs jurisdiction over foreign sovereigns (§ 1605B(b)), which they discuss only partially in a footnote (at 16 n.15); and to infer from Congress's general purpose of helping plaintiffs generally and these Plaintiffs specifically that there must be jurisdiction over any claim they can purportedly state.  The Court should do none of those things.

*First*, the CAC Plaintiffs' argument that JASTA should be construed to extend jurisdiction over all material-support claims against foreign sovereigns has nothing to do with *Kaplan* or *Honickman*.  Neither of those cases says anything about jurisdiction at all.  They "do[]

not compel the result that Plaintiffs seek, and cannot be considered controlling." *Cohen v. UBS Fin. Servs., Inc.*, 2014 WL 240324, at *4 (S.D.N.Y. Jan. 22, 2014), *aff'd*, 799 F.3d 174 (2d Cir. 2015). For that reason alone, they do not warrant "revision" of the March 2018 Order, which should continue to "stand[] as law of the case." *Id.*

*Second*, the CAC Plaintiffs' argument is foreclosed by § 1605B. As this Court's previous order sets out, "a tortious act or acts" is only part of one of "four discrete elements, each of which must be satisfied before this Court can exercise subject matter jurisdiction." March 2018 Order 9. "[C]ausation," *id.*, is another discrete element. Even if a particular cause of action – such as aiding-and-abetting – may not itself require that the plaintiff's injuries be "caused by" the "tortious act or acts of the foreign state, or of any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency," 28 U.S.C. § 1605B(b), the statutory text requires such "jurisdictional causation," March 2018 Order 13-14 n.8, before this Court has authority to proceed.

That reading of the statute is reinforced by § 1605B(c), on which Plaintiffs rely for their ATA cause of action. Before Congress passed JASTA in 2016, the ATA created no cause of action against a foreign state at all. *See* March 2018 Order 8 n.6 (discussing 18 U.S.C. § 2337). JASTA now permits "a national of the United States [to] bring a claim against a foreign state in accordance with [18 U.S.C. §] 2333 . . . *if* the foreign state would not be immune under subsection (b)." 28 U.S.C. § 1605B(c) (emphasis added). That is, a showing of jurisdiction under § 1605B is a prerequisite to any cause of action against a foreign state under § 2333. When the CAC Plaintiffs contend that, if they can plead a cause of action under § 2333, the Court must therefore have jurisdiction under § 1605B, they get the statute backwards.

*Third*, this Court's previous order considered JASTA's overall purpose "'to provide . . .

the broadest possible basis'" for "'civil litigants . . . to seek relief'" against a range of

defendants including "'foreign countries,'" March 2018 Order 8 (quoting JASTA § 2(b), 130

Stat. 853), but properly refused to treat that general purpose as overriding the need to prove the

specific jurisdictional elements that § 1605B(b) sets out in clear language.  In doing so, the Court

correctly applied fundamental principles of statutory construction.  *See Kingdomware Techs.,*

*Inc. v. United States*, 579 U.S. 162, 173 (2016) (explaining that a "prefatory clause" that

"announces an objective . . . does not change the plain meaning of the operative clause"); *see*

*also Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017) ("Legislation is,

after all, the art of compromise, the limitations expressed in statutory terms often the price of

passage, and no statute yet known 'pursues its [stated] purpose[] at all costs.'") (quoting

*Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987) (per curiam)) (alterations in *Henson*).

*Kaplan* and *Honickman* are not to the contrary.  For example, *Kaplan*'s reasoning that assistance

may be indirect relied on the specific language of the aiding-and-abetting provision, focusing on

the omission of the word "to" after the phrase "substantial assistance."  *See* 999 F.3d at 855-56.

That analysis does not suggest, much less require, that this Court disregard the text of § 1605B.

The *Ashton* Plaintiffs likewise make no attempt to show that either *Kaplan* or *Honickman*

affect (much less control) the Court's jurisdictional analysis.  They merely assert (at 17) that,

> upon a proper application of the *Halberstam* elements, there is jurisdiction under
> JASTA based on Plaintiffs' claims that the Kingdom knowingly provided
> substantial financial and logistical assistance to al Qaeda and its affiliates and was
> sufficiently aware that it was playing a role in al Qaeda's acts of terrorism.

Neither *Kaplan* nor *Honickman* supports that attempt to conflate the *Halberstam* factors for an

aiding-and-abetting claim with the separate jurisdictional inquiry that the statute sets out in

§ 1605B(b) and that this Court correctly applied in March 2018.

**B.      The Principles the CAC Plaintiffs Purport To Derive from *Kaplan* and *Honickman* Do Not Justify Reconsideration as to the Charity Allegations**

The CAC Plaintiffs purport (at 6-10) to derive five abstract "principles" from *Kaplan* and *Honickman*.  None of those principles justifies reconsideration because none cures the flaws that this Court found in Plaintiffs' jurisdictional allegations.

*First*, the CAC Plaintiffs' assertion (at 6) that they can state claims based on "[i]ndirect assistance" does not help them.  Relying (at 13-14 & n.8) on allegations that this Court previously rejected as a showing that the charities were alter egos, agents, or components of the Kingdom of Saudi Arabia, Plaintiffs now describe the charities as "intermediaries" that received "very significant support" from Saudi Arabia and assert that the Court "did not recognize the significance and adequacy of th[eir] allegations."  The Court's opinion addressed Plaintiffs' alter ego, agency, and component theories using those terms because Plaintiffs used those terms in the CAC, ECF No. 3463, ¶¶ 54-133, and in the *Ashton* Complaint, No. 17-2003, ECF No. 1, ¶¶ 45-51.  Plaintiffs cannot reasonably complain that the Court addressed their primary arguments in the terms Plaintiffs themselves chose.

In any event, labeling the charities as intermediaries for alleged indirect support to terrorism – as opposed to alleged alter egos or agents providing alleged support directly – should change neither the Court's reasoning nor its result.  The label does not affect the Court's ruling that "allegations that the charities provided funding to entities that are known to support terrorism that, in turn, provided funding to al Qaeda and other terrorist organizations are insufficient for proximate causation purposes."  March 2018 Order 37 (citing *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013)).  Viewing the charities as intermediaries and the alleged "tortious act" as Saudi Arabia's funding of them only adds another step to that alleged causal chain, attenuating it further.

*Second*, the CAC Plaintiffs err in contending (at 6-8, 14) that, "under *Kaplan* and *Honickman*," Plaintiffs "need not establish a link to the particular attacks giving rise to Plaintiffs' claims." This Court properly required Plaintiffs to show a "definite and specific, articulable connection" between their allegations of material support and "the 9/11 Attacks or those who carried them out." March 2018 Order 37. That requirement came not from the aiding-and-abetting (or any other) cause of action, but from JASTA's requirement that the plaintiff's "injury" have been "caused by" the "tortious act or acts of the foreign state" or its official, employee, or agent, 28 U.S.C. § 1605B(b), which *Kaplan* and *Honickman* did not address.

*Third*, the CAC Plaintiffs misplace reliance on the point (at 8-9, 14-15) that an aiding-and-abetting claim requires "knowledge," but "need not establish intent." Although Saudi Arabia vigorously disputes that Plaintiffs have properly alleged either knowledge of assistance or intent to assist Al Qaeda, that dispute is irrelevant to the March 2018 Order. The Court did not dismiss Plaintiffs' charity-based claims (or any other claims) for failure to allege intent. It dismissed them for failure to allege any basis to hold Saudi Arabia vicariously liable for the charities' actions and for failure to allege proximate cause.

*Fourth*, the CAC Plaintiffs' contention (at 9-10, 15-16) that "general awareness" can support an aiding-and-abetting claim likewise falls short. Although Plaintiffs fail properly to allege any form of awareness at all, *see infra* Part III.B, lack of awareness was not the basis for the March 2018 Order's jurisdictional rulings.

*Fifth*, the CAC Plaintiffs' contention (at 10, 16) that *Kaplan* and *Honickman* require a "holistic" reading of their allegations neither describes a change in the law nor suggests any error in the March 2018 Order. It has long been settled law that on a motion to dismiss a court "assess[es] 'the allegations of the complaint as a whole.'" *Pension Benefit Guar. Corp. ex rel.*

*St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 47 (2011)).  *Kaplan* and *Honickman* did not change that principle.  But that principle has never required a court faced with many insufficient allegations to treat them collectively as sufficient.  *Cf. MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 138 F.3d 33, 38 (2d Cir. 1988) ("Zero plus zero is zero.").  The March 2018 Order did not fail to read the CAC or the *Ashton* Complaint as a whole.  Instead, the Court assessed those complaints in their entirety in a detailed opinion and concluded that the charity-based claims failed to plead a reasonable basis for subject-matter jurisdiction.[2]

## II.    The Court Should Not Reconsider Its Rejection of Plaintiffs' Allegations Based on the Acts of Individuals Allegedly Associated with Saudi Arabia

Similarly, neither *Kaplan* nor *Honickman* calls into question this Court's conclusion that it lacked jurisdiction over Plaintiffs' allegations concerning individuals other than Al Bayoumi and Al Thumairy.  As to each individual, the Court concluded that Plaintiffs' allegations failed to meet the statute's requirement that any allegedly tortious acts be committed by an "official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency"; that Plaintiffs' injuries be "caused by" such acts; or both.  28 U.S.C. § 1605B(b).  *Kaplan* and *Honickman* did not involve either requirement and do not alter the analysis as to either requirement.

**Osama Basnan.**  The Court ruled that "Plaintiffs' allegations as to Osama Basnan are insufficient to permit jurisdiction under JASTA" because Plaintiffs failed to "adequately allege that Basnan was an employee or agent of the Saudi government, or that he provided material

---

[2] The CAC Plaintiffs also include in their fifth "principle" the contention (at 10) that Congress's instruction to read JASTA broadly is its "lodestar," a term that *Kaplan* itself does not use.  That merely repeats their argument from JASTA's general purpose, which does not override the specific text of § 1605B.  *See supra* Part I.A.

assistance to Nawaf Al Hazmi, Khalid Al Mihdhar, or any of the other 9/11 hijackers within the scope of his employment or agency"; and presented "no allegation or evidence that [certain] funds [allegedly] transferred to Basnan and his wife were used to aid the hijackers or otherwise help facilitate the 9/11 Attacks."  March 2018 Order 25.

**Mohammed Al Qudhaeein and Hamdan Al Shalawi.**  The Court ruled that Plaintiffs' allegations that these two individuals participated in a "dry run" for the 9/11 attacks on a 1999 flight "fail[ed] to support jurisdiction over the claims asserted against Saudi Arabia for two independent, but related, reasons."  March 2018 Order 25-26.  *First*, Plaintiffs failed to allege that the individuals "were acting as officials, employees, or even agents of Saudi Arabia."  *Id.* at 26.  Second, even assuming the truth of Plaintiffs' allegations that the individuals conducted a "dry run," Plaintiffs failed to allege that "any of their actions provided material assistance to the 9/11 hijackers or otherwise caused the 9/11 Attacks."  *Id.*

**Saleh Al Hussayen.**  The Court ruled that Plaintiffs' allegations as to Al Hussayen "'d[id] not permit the court to infer more than the mere possibility of misconduct.'"  March 2018 Order 27 (quoting *In re Terrorist Attacks on September 11, 2001*, 134 F. Supp. 3d 774, 785 (S.D.N.Y. 2015), *vacated on other grounds and remanded*, Nos. 15-3426-cv(L) et al., 2017 WL 8776686 (2d Cir. Feb. 7, 2017)).  It found insufficient Plaintiffs' allegations that Al Hussayen stayed at the same hotel with some of the hijackers before the 9/11 attacks because Plaintiffs failed to "allege that he provided any of the 9/11 hijackers with any form of material assistance during his stay at their hotel."  *Id.*

**Muhammed Jaber Fakihi.**  The Court ruled that Plaintiffs' allegations that Fakihi had contacts with Al Qaeda in Germany failed to support jurisdiction because Plaintiffs failed to allege or show that Fakihi's alleged contacts with Al Qaeda "consisted of assistance that he

provided as an agent or employee of the Saudi Embassy," and because "there is no allegation or evidence" that his alleged financial support was "in any way used to help plan or facilitate the 9/11 Attacks."  March 2018 Order 28.

**Omar Abdi Mohamed.**  The Court rejected Plaintiffs' allegations as to Abdi Mohamed for failure to allege that any fundraising support he allegedly provided to Al Qaeda was "within the scope of his employment as a missionary" for the Saudi government.  March 2018 Order 30.

None of Plaintiffs' arguments concerning those individuals withstands scrutiny.  *First*, the CAC Plaintiffs erroneously argue (at 18-19) that a "'holistic' interpretive principle" supports liability because they make allegations against "an astounding number of persons" who they claim were "closely affiliated" with Saudi Arabia and whom they accuse of providing one form or another of assistance to Al Qaeda.  Even if that self-serving characterization of Plaintiffs' allegations were accurate (which it is not),[3] it fails to address the deficiencies that the Court identified in Plaintiffs' allegations.  Accusations against other individuals purportedly connected

---

[3] The footnote with which the CAC Plaintiffs attempt to support their point (at 19 n.17) cites primarily to their allegations against charity officials or employees.  *See* CAC ¶¶ 64-69 (MWL, IIRO, and other charity officials); *id.* ¶¶ 90-91 (IIRO); Aver. ¶¶ 345-361 (MWL and IIRO); *id.* ¶¶ 375-376, 380-396, 403-406 (IIRO); *id.* ¶¶ 454-455 (WAMY).  The March 2018 Order properly declined to attribute those individuals' alleged actions to Saudi Arabia.  To the extent the allegations refer to Saudi Arabia or to its agencies or officials, they are vague and conclusory.  *See* CAC ¶¶ 33, 140-144, 148, 152-154, 263 (general allegations concerning the Ministry of Islamic Affairs); Aver. ¶¶ 115-129 (same); CAC ¶ 65 (statement that charity officials were appointed by "Saudi government officials"); *id.* ¶ 145 (conclusory assertion of Ministry "control and influence" over mosques engaged in money laundering); *id.* ¶ 146 (alleged donations to a purported "al Qaeda" front by unspecified "Saudi embassies in the Far East"); *id.* ¶ 147 (allegation that the Taliban distributed "Saudi aids" to a bin Laden "associate"); *id.* ¶ 149 (discredited Moussaoui testimony); *id.* ¶¶ 150-151 (general allegations about unnamed "Saudi government imams" and "clerics"); Aver. ¶¶ 294-295 (allegation that Saudi Arabian official "endorsed al Qaeda's jihad in Bosnia" in 1992 because an Al Qaeda member allegedly quoted a statement the official made that did not refer to Al Qaeda).  Whether considered individually or together, such allegations are "not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

to Saudi Arabia cannot show that Basnan, Al Qudhaeein, or Al Shalawi were officials, employees, or agents of Saudi Arabia at the relevant time; that Fakihi or Abdi Mohamed acted within the scope of any relationship with Saudi Arabia they might have had; or that any of the individuals' alleged actions proximately caused the 9/11 attacks.

*Second*, the CAC Plaintiffs repeat (at 20) their incorrect contention that "*Kaplan* establishes that the allegations need focus only on support provided to al Qaeda, not support for the [9/11] attacks." That argument confuses the requirements for an aiding-and-abetting claim with the requirements for subject-matter jurisdiction under § 1605B(b). *See supra* Part I.B. Regardless of whether allegations of general support for Al Qaeda that did not proximately cause the 9/11 attacks could state an aiding-and-abetting claim against a private defendant, such allegations cannot establish jurisdiction over Saudi Arabia.

*Third*, the CAC Plaintiffs erroneously contend (at 20-21) that their allegations against the individuals should be "evaluated based on an aiding and abetting theory." The argument appears to be that, even if the individuals acted outside their scopes of office, employment, or agency when they supposedly aided Al Qaeda, Plaintiffs can still show that "support the Kingdom provided to [the individuals] in turn facilitated al Qaeda's activities." CAC Mot. 20. Plaintiffs raised no such theory in their opposition to Saudi Arabia's motion to dismiss, which focused on the individuals' purportedly "direct furtherance of the September 11th operation" as "employees and agents of the Saudi government." ECF No. 3782, at 49; *see id.* at 49-56. Even if preserved, Plaintiffs' argument has the same fatal flaw as their similar argument about the charities. Because Plaintiffs cannot show that their injuries were "caused by," 28 U.S.C. § 1605B(b), Saudi Arabia's acts, it does not matter whether they can or cannot state a claim for aiding and abetting. That is illustrated by Plaintiffs' only proffered example (at 20-21 & n.20): Fakihi, who was a

Saudi government employee when he allegedly diverted funds to Al Qaeda.  Because there is "no allegation or evidence" that those funds were "in any way used to help plan or facilitate the 9/11 Attacks," March 2018 Order 28, no causal chain links Saudi Arabia's "support" for Fakihi (presumably, providing him with the allegedly diverted funds) to Plaintiffs' injuries.

The Court should likewise reject the *Ashton* Plaintiffs' argument (at 12 & n.25) that *Kaplan* supports their renewed request for discovery concerning Abdi Mohamed because it "stressed" that "the facts should be viewed as a whole and . . . evaluated in the overall context." Leaving aside the *Ashton* Plaintiffs' misstatements concerning various documents recently released by the FBI, which Saudi Arabia has addressed separately, *see* ECF No. 7584, those Plaintiffs err in suggesting that this Court failed to view their allegations in context.  To the contrary, the context of Plaintiffs' allegations – specifically, their reliance on an Immigration and Customs Enforcement memorandum that described Abdi Mohamed's work as that of a "'propagator,'" that is, a "missionary," March 2018 Order 30 (quoting ECF No. 3930-1, at 4) – helped support the Court's reasoning.  Reliance on context that "undermine[d] the plausibility of Plaintiffs' theory" was fully consistent with the Second Circuit's recent guidance.  *Honickman*, 6 F.4th at 502 (rejecting the *Honickman* plaintiffs' "theory that [the defendant bank] understood [its customers] true nature and activities from the public record" as inconsistent with the same plaintiffs' reliance on documents stating that the customers "maintained a 'cover' in public").

## III.  Plaintiffs Fail To Show That They Can State Any Claim Against Saudi Arabia

For the reasons set forth above, Plaintiffs have come forward with no new "controlling decisions," *Van Buskirk*, 935 F.3d at 54, to warrant revisiting the Court's March 2018 jurisdictional rulings.  The Court therefore need not and should not reach the question whether Plaintiffs have stated claims on either secondary- (aiding-and-abetting) or primary-liability theories.  But if the Court considers that question, it should rule that they have not.

- 16 -

### A.    JASTA Does Not Create Aiding-and-Abetting Claims Against Foreign States

As Saudi Arabia explained in support of its motion to dismiss, the ATA does not create a cause of action against a sovereign, such as Saudi Arabia, for aiding-and-abetting terrorism. *See* ECF No. 3851, at 8-9. Instead, the ATA confers a cause of action against "any *person* who aids and abets" certain "act[s] of international terrorism," 18 U.S.C. § 2333(d)(2) (emphasis added), and defines "person" as having "the meaning given the term in section 1 of title 1," *id.* § 2333(d)(1). That statute, the Dictionary Act, defines "person" to "include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1. Under that Act, a "person" does not include a sovereign (foreign or otherwise). *See Sturzda v. United Arab Emirates*, 281 F.3d 1287, 1307 (D.C. Cir. 2002) (relying on the Dictionary Act to hold a foreign sovereign is not a "person" under 42 U.S.C. § 1985); *see also Breard v. Greene*, 523 U.S. 371, 378 (1998) (per curiam) (a foreign sovereign is not a "'person' as that term is used in [42 U.S.C.] § 1983").

That conclusion is reinforced by JASTA's provision that, "[n]otwithstanding [18 U.S.C. §] 2337(2) . . . , a national of the United States may bring a claim against a foreign state *in accordance with [§] 2333* . . . if the foreign state would not be immune under subsection (b)." 28 U.S.C. § 1605B(c) (emphasis added). That is, § 2337(2) generally bars ATA claims against foreign states. Where jurisdiction has been established, § 1605B(c) makes a specific exception to that bar. But § 1605B(c) does not change the requirements of § 2333; instead, it requires that claims be brought "in accordance with" that section. A claim for aiding-and-abetting against a defendant that is not a "person" within the meaning of § 2333(d) is not a claim "in accordance with" § 2333(d). Accordingly, § 1605B(c) does not authorize such a claim even where the requirements of § 1605B(b) have been met – as, here, they have not.

### B.  Plaintiffs Fail To Allege the General Awareness or Knowledge Required for an Aiding-and-Abetting Claim

Plaintiffs also fail to show that their allegations support a reasonable inference that Saudi Arabia, as an institution, was "generally aware" that it was "playing a role in" Al Qaeda's "terrorist activities." *Kaplan*, 999 F.3d at 865.  As it has in the past, Saudi Arabia categorically denies any such involvement, with or without awareness or knowledge.  Saudi Arabia has long been an ally of the United States against terror.  In 1998, as the 9/11 Commission recognized, "the Saudi government . . . quietly disrupted Bin Ladin cells in its country that were planning to attack U.S. forces," and its most senior officials worked hand-in-hand with the CIA in "an all-out secret effort to persuade the Taliban to expel Bin Ladin [from Afghanistan] so that he could be sent to the United States or to another country for trial."  ECF No. 3669-1, at 115.  The Court is also well familiar with the Commission's finding of "no evidence that the Saudi government as an institution or senior Saudi officials individually funded" Al Qaeda, despite "the likelihood that charities with significant Saudi government sponsorship diverted funds" to that destination.  *Id.* at 171.  The CAC's and the *Ashton* Complaint's contrary allegations are insufficient as a matter of law to support Plaintiffs' baseless claims that the Saudi government as an institution played any role in Al Qaeda's terrorist crimes.

*First*, the CAC Plaintiffs fail to establish Saudi Arabia's general awareness or knowledge of the charities' alleged support for Al Qaeda by pointing (at 13-15 nn.8, 11-12) to the CAC's allegations that some Saudi Arabian government officials were also senior charity officials. Most of the cited allegations are generalized, conclusory assertions that do not refer to particular Saudi government officials at all.[4]  Where Plaintiffs cite CAC allegations that quote or refer to

---

[4] *See* CAC ¶¶ 30-33, 105-107, 109-116, 118, 120-122, 128-130, 132-139; Aver. ¶¶ 116, 118, 121-129, 333-335, 341, 371-372, 374, 477, 479, 520, 543-544, 559, 575-577. 581-582; *see also* CAC ¶¶ 140-154 (similar conclusory assertions directed at unidentified officials and

charity officials who also held (or allegedly held) positions in the Saudi government, almost none suggests those individuals had any involvement in or knowledge of alleged support for Al Qaeda.[5]  The few exceptions fail to allege action in an official capacity.[6]

*Second*, the CAC's allegations fail to establish such general awareness or knowledge by pointing (at 13 & n.9) to allegations that Al Qaeda and the charities had "very close ties" and "intertwined personnel, financing, and operations."  Saudi Arabia concedes neither the sufficiency nor the accuracy of those allegations.  Nevertheless, even taken at face value, Plaintiffs' own allegations repeatedly state that before the September 11 attacks the purported relationship between Al Qaeda and the charities was "secret" and "concealed," and that charities provided "cover" for terrorist activities.[7]

*Third*, the CAC Plaintiffs fail to establish Saudi Arabia's general awareness or knowledge by asserting (at 15 & n.14) that Saudi Arabia "was repeatedly informed that the charitable organizations were assisting al Qaeda."  The only CAC allegation that they cite is a

---

employees of the Ministry of Islamic Affairs).  Plaintiffs also misplace reliance on two declarations from Evan Kohlmann, whose analysis this Court rejected in a pre-JASTA opinion because of its "conclusory, largely boilerplate, allegations."  *In re Terrorist Attacks*, 134 F. Supp. 3d at 784 n.9.

[5] *See* CAC ¶¶ 108, 117, 119, 121, 123-127, 131; Aver. ¶¶ 115, 336-340, 373, 440-442, 478, 519, 521-522, 545, 560.

[6] *See* CAC ¶¶ 64-67; Aver. ¶¶ 345-346 (alleging that Abdullah Omar Naseef acted in his former "capacity as the Secretary General of the MWL" rather than in his capacity as a member of the "Majlis al Shura, the advisory body to the Saudi King").

[7] *See*, *e.g.*, Aver. ¶ 298 (alleging that the charities provided "ostensible employment" to Al Qaeda members in Bosnia); *id.* ¶¶ 305-306 (alleging that an IIRO official trained students in the Phillipines to act "as members of a covert organization" and gave certain individuals "ghost positions"); *id.* ¶ 312 (alleging that the SJRC was used "as a front"); *id.* ¶ 314 (accusing the charities of "providing cover" for Al Qaeda); *id.* ¶ 345 (alleging a "secret" agreement involving the MWL); *id.* ¶ 395 (quoting a post-9/11 cable stating that in the Philippines the IIRO " 'served as a legal front to conceal' " funds transfers); *id.* ¶ 425 (alleging that the IIRO office in Kosovo "served as a cover").

conclusory assertion that the charities "were repeatedly implicated in terrorist activities and the sponsorship of al Qaeda during the years preceding the September 11th attacks."  CAC ¶ 32. They also cite (at 15 n.14) two paragraphs from their so-called "Averment of Facts and Evidence," which refer to general warnings about the charities' purported "sponsorship and funding of terrorist organizations."  Aver. ¶¶ 584-585.  Neither even mentions Al Qaeda.  *See id.*

*Fourth*, the CAC Plaintiffs fail to establish Saudi Arabia's general awareness or knowledge of alleged support for Al Qaeda by individuals such as Basnan, Al Qudhaeein, Al Shalawi, Al Hussayen, Fakihi, or Abdi Mohamed.  The CAC's allegations are premised on the now-rejected theory that those individuals themselves were acting within the scope of alleged official, employment, or agency relationships with Saudi Arabia.  Other than in conclusory form, the CAC does not allege – as Plaintiffs' new aiding-and-abetting-centered argument would require – that others within the Saudi Arabian government knew of those individuals' support for Al Qaeda and provided those individuals with resources that were used to support Al Qaeda, or were generally aware that providing such support would be playing a role in terrorism.[8]

The *Ashton* Plaintiffs do not identify any particular allegation to support their claim that their Complaint properly alleges Saudi Arabia's general awareness or knowledge.  Instead, they rely generally (at 14-15 nn.30-37) on paragraphs 11-12, 39-44, and 45-51 of their Complaint. On a motion to reconsider, it is neither Saudi Arabia's burden nor the Court's to pick through the

---

[8] *See* CAC ¶¶ 36, 197-207, 210-211, 214, 218, 249-257, 264-265 (allegations as to Basnan); *id.* ¶¶ 36, 158, 246-248, 265, 267-280 (Al Qudhaeein and Al Shalawi); *id.* ¶¶ 36, 265, 281-287 (Al Hussayen); *id.* ¶¶ 36, 265, 288-301 (Fakihi); *id.* ¶¶ 36, 265, 302-306 (Abdi Mohamed).  As to Basnan, the CAC includes conclusory allegations that he received funds from "a charity under the control of . . . extremists in the Kingdom's embassy in Washington, D.C.," *id.* ¶ 254; *see also id.* ¶¶ 204-206, but does not allege that the unnamed embassy employees had any awareness or knowledge that those funds would supposedly make their way to Al Qaeda – nor, to be clear, that any such funds actually did.  *See* March 2018 Order 24-25.

*Ashton* Plaintiffs' allegations and determine which, if any, those Plaintiffs contend are relevant to any supposed change in controlling law.  Even if the Court were to do so, it would find no such allegations.  The cited paragraphs merely mix together generic conclusory assertions about what Saudi Arabia and its officials or employees (or alleged officials or employees) purportedly did or knew;[9] allegations about actions taken by charities,[10] which this Court has already rejected as not attributable to Saudi Arabia itself; allegations about Al Bayoumi and Al Thumairy, as to whom the Court has already ordered limited jurisdictional discovery;[11] and allegations about individuals who the Court has already found were not acting within the scope of any properly alleged official, employment, or agency relationship with Saudi Arabia.[12]

Plaintiffs' allegations fall well short of those found sufficient to state general awareness and knowledge in other cases.  For example, in *Kaplan*, the defendant bank had provided services to entities that the terrorist organization itself (Hizbollah) had "openly, publicly, and repeatedly acknowledged" as its "integral constituent parts."  999 F.3d at 864.  Similarly, in *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204 (D.C. Cir. 2022), a recent case alleging bribes by

---

[9] *See Ashton* Compl. ¶¶ 11-12. 39(b), (d)-(e), (h), (p), (y), (dd).

[10] *See id.* ¶¶ 11-12, 39(a), (cc), 45 (all charities); *id.* ¶¶ (39(v), 49(a)-(j) (SHC); *id.* ¶¶ 39(w)-(x), 50(a)-(g) (SJRC); *id.* ¶ 51(a)-(g) (Saudi Red Crescent); *id.* ¶¶ 39(bb), 42(c)-(e), 46(a)-(bb) (MWL); *id.* ¶¶ 39(r)-(t), (bb), 42(a), (c)-(e), 46(a)-(c), (e)-(f), (i)-(y), (bb) (IIRO); *id.* ¶¶ 39(u), 47(a)-(t) (WAMY); *id.* ¶¶ 39(n)-(o), (q), (aa), 42(b)-(e), 48(a)-(p) (Al Haramain); *id.* ¶¶ 39(z), 47(b)-(f), (h)-(*l*), (n)-(o), (q), (s)-(t) (BIF); *id.* ¶ 46(b), (d)-(f), (i)-(o), (q), (s), (bb) (Rabita Trust); *see also id.* ¶¶ 40-41 (general allegations about training camps in Afghanistan that serve as background for the charity allegations in ¶ 42).  Paragraph 39(aa) contends that Al Haramain official Soliman Al Buthe also served as "a senior member of the Saudi government for the city of Riyadh" but does not allege any actions in that alleged capacity.

[11] *See id.* ¶ 39(f)-(g) (Al Thumairy); *id.* ¶ 39(i)-(k) (Al Bayoumi).

[12] *See id.* ¶ 39(c) (Abdi Mohamed); *id.* ¶ 39(i), (*l*) (Basnan); *id.* ¶ 39(m)-(o) (Fakihi).  In addition to Fakihi, ¶ 39(m) and ¶ 39(n) also allege that Ahmed Al Dubayan participated in the same conduct, but provide no more facts about Al Dubayan than the conclusory assertions this Court rejected as to Fakihi.

pharmaceutical companies to a terrorist organization that allegedly controlled the Iraqi Ministry of Health, the court found sufficient a combination of allegations that the defendants "were aware of reports extensively documenting" terrorist control of the Ministry, *id.* at 221; that they "sent their agents into the Ministry to finalize deals on their behalf," *id.*; and that, within the Ministry's headquarters, "armed terrorist fighters circulated openly" and "display[ed]" a "distinctive flag, weapons, . . . posters, and 'Death to America' slogans," *id.*

In contrast, the Second Circuit found insufficient the allegations of general awareness and knowledge in *Honickman*, where the defendant bank provided services to customers who "maintained a 'cover' in public," 6 F.4th at 502, just as Plaintiffs allege here that corrupt charity employees provided Al Qaeda with a cover for its own activities.  The court of appeals likewise rejected the allegations in *Siegel v. HSBC North America Holdings, Inc.*, 933 F.3d 217 (2d Cir. 2019), where the defendant bank (HSBC) provided services to another bank (Al Rajhi) despite alleged awareness of "public reports that [Al Rajhi] and some of its senior officials supported terrorist organizations, including al-Qaeda."  *Id.* at 224 & n.6.  As the Second Circuit explained, those allegations suggested that HSBC was "[a]t most . . . aware that [Al Rajhi] was *believed by some* to have links to [Al Qaeda] and other terrorist organizations."  *Id.* at 224 (emphasis added). The general allegations of "warnings" on which Plaintiffs rely here are likewise insufficient.

### C.    Plaintiffs Fail To Justify Reconsideration as to Their Primary-Liability Claims

The CAC Plaintiffs briefly suggest (at 21), but fail to show, that *Kaplan* and *Honickman* should also prompt the Court to reconsider its ruling as to Plaintiffs' primary-liability claims against Saudi Arabia.  Even if the elements of particular causes of action were relevant here (which they are not, as shown in Parts I and II), that suggestion would still be wrong.  *Kaplan* and *Honickman* addressed secondary-liability claims for aiding and abetting terrorism, not

primary-liability claims for material support of terrorism.  *See Kaplan*, 999 F.3d at 845 ("we address only [plaintiffs'] JASTA aiding-and-abetting claims" because plaintiffs "abandoned" their other claims); *Honickman*, 6 F.4th at 490 (plaintiffs claimed "BLOM Bank aided and abetted Hamas's attacks in violation of JASTA").  Because *Kaplan* and *Honickman* do not address primary liability, they cannot constitute "an intervening change in controlling law," *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2018 WL 3222518, at *1 (S.D.N.Y. July 2, 2018) (citing *North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995)), as to such claims.

Although the CAC Plaintiffs assert (at 21) that the Second Circuit's reasoning concerning the elements of an aiding-and-abetting claim "applies equally to a claim of primary liability as to one for aiding and abetting," they do not explain why.  *Kaplan*'s reasoning that an aiding-and-abetting claim can be based on indirect "substantial assistance" relies on the text of 18 U.S.C. § 2333(d) – in particular, the lack of a textual requirement that the assistance be provided "to" the terrorist.  *See* 999 F.3d at 855-56 (relying on "Congress's use of the uncabined phrase 'providing substantial assistance' without adding the word 'to'").  The material-support provisions on which Plaintiffs rely for their primary-liability claims are differently worded, and Plaintiffs fail to discuss or even quote their text.  *Honickman*'s reasoning – that "knowing and substantial assistance to the actual injury-causing act . . . is unnecessary," 6 F.4th at 499 – is explicitly tied to the "analysis in *Halberstam*" of aiding-and-abetting liability, *id.*, which does not apply to primary-liability claims.  Finally, Plaintiffs' generalities (at 21) about "the need for a holistic assessment of all allegations together" are not a substitute for analysis.

## CONCLUSION

The Court should deny the CAC and *Ashton* Plaintiffs' motions.

Dated:  February 7, 2022                    Respectfully submitted,


                                            /s/ *Michael K. Kellogg*
                                            Michael K. Kellogg
                                            Mark C. Hansen
                                            Gregory G. Rapawy
                                            Andrew C. Shen
                                            KELLOGG, HANSEN, TODD, FIGEL
                                              & FREDERICK, P.L.L.C.
                                            Sumner Square
                                            1615 M Street, N.W., Suite 400
                                            Washington, D.C. 20036-3209
                                            (202) 326-7900
                                            (202) 326-7999 (fax)

                                            *Attorneys for the Kingdom of Saudi Arabia*

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 7, 2022, I caused a copy of the foregoing Opposition to Plaintiffs' Motions To Revise This Court's March 28, 2018 Order to be served electronically via the Court's ECF system.

 /s/ *Michael K. Kellogg*          
Michael K. Kellogg
*Attorney for the Kingdom of Saudi Arabia*