## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

February 11, 2022

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

RE:  *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

The *Faulkner* Plaintiff and the Plaintiffs' Executive Committees ("PECs") jointly write in furtherance of the Court's Orders dated November 15, 2021 (ECF No. 7354) and December 3, 2021 (ECF No. 7423), directing the *Faulkner* Plaintiff and the PECs (together, "Plaintiffs") to submit a supplemental letter addressing how this litigation should proceed given the apparent collapse of the Islamic Republic of Afghanistan government and the withdrawal of the Republic's counsel.[1]

Plaintiffs respectfully submit that the relevant legal authority, informed by principles of international law and notions expressed in the Restatement (Third) of the Foreign Relations of the United States, establishes that it is appropriate for the claims against the state of Afghanistan (previously governed by the Islamic Republic of Afghanistan government and now under the de facto governance of the Islamic Emirate of Afghanistan government) to proceed immediately to a default judgment in accordance with the Foreign Sovereign Immunities Act ("FSIA"). Given the refusal of the current Afghanistan leadership to participate in the litigation, Plaintiffs further submit that the pending motion for summary judgment presented by Afghanistan's prior leadership should be dismissed as moot. Plaintiffs offer three principal lines of reasoning in support of these conclusions.

---

[1] Although the clients represented by the PECs do not have claims pending against Afghanistan, the PECs have an interest in the Court's resolution of these issues given the broader implications that the Court's rulings may have on other claims against state sovereigns in the context of this multi-district litigation.

*First,* and as a general premise underpinning all of the points raised herein, the takeover of the Taliban has no effect on the liabilities or responsibilities of the state of Afghanistan, or the claims pending in this litigation against the Afghan state. International law distinguishes between succession of state and succession of government. *See* RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES § 208. "It is generally accepted that a change in government, regime or ideology has no effect on that state's international rights and obligations because the state continues to exist despite the change…." *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 731 F. Supp. 619, 621 (S.D.N.Y. 1990).

The particular circumstances leading to the change in regime do not provide a basis to relieve the sovereign from its liability. For example, in *Trans-Orient*, the United States District Court for the Southern District of New York considered the sovereignty of the Sudanese government in the late 1980s and found that the revolutionary nature of the changes in government did not create a "discontinuity of statehood." *Id.* at 621-622. In April 1985, a Sudanese military coup deposed the head of state and suspended the constitution, after which a transitional military regime governed for twelve months and later was replaced by a civilian coalition government. The name of the state was changed from Sudan to the Republic of Sudan. In June 1989, there was a military coup and the military regime overthrew the civilian administration and suspended the constitution. The district court held that the statehood of Sudan was "unaffected" by these events and the Sudanese government consistently was bound to the rights and obligations of the prior government. *Id.*; *see also United States v. Nat'l City Bank of N.Y.*, 90 F. Supp. 448, 452 (S.D.N.Y. 1950) (binding post-revolutionary Russia to treasury notes of pre-revolutionary state); *Jackson v. People's Republic of China*, 550 F. Supp. 869 (N.D. Ala. 1982) (finding People's Republic a successor Imperial Chinese Government for purposes of establishing payment of principal due on government bonds).

The regime change that resulted in the government known as the Islamic Emirate of Afghanistan did not create a new state, independent from the former territory. Rather, the August 2021 takeover marked a return to power for the Taliban, which is an existing government movement founded in the 1990s. After a nationwide military advance beginning in May 2021 and preceding the complete withdrawal of United States forces from the Afghan state, the Taliban entered Kabul and shortly thereafter announced a "caretaker government" to rule Afghanistan. *See* Clayton Thomas, CONG. RSCH. SERV., R46955, *Taliban Government in Afghanistan: Background and Issues for Congress* (2021).[2] In September 2021, Secretary Antony J. Blinken, testifying before the House Foreign Affairs Committee, described the Taliban as the "de facto government of Afghanistan."[3] *Id.*

The fact that the current government has designated itself the Islamic Emirate of Afghanistan, as the entity presently representing the Afghan state, does not alter that the state of Afghanistan (however denominated) remains the proper target of the previously-filed claims of the *Faulkner* Plaintiff. "[T]he rights of a sovereign state are vested in the state rather than in any particular government which may purport to represent it." *Republic of Iraq v. ABB AG*, 920 F. Supp. 2d 517, 536 (S.D.N.Y. 2013) (citations omitted) (questioned on other grounds) (holding Republic of Iraq bears responsibility for conduct of Hussein Regime notwithstanding change in

---

[2] Available at https://crsreports.congress.gov/product/pdf/R/R46955.
[3] The United States has not formally recognized the Taliban as Afghanistan's new government.

government over time). The fundamental nature of the claims against the Afghan state are unchanged by the new regime and formal name of the state.[4]

*Second*, in view of the Islamic Emirate of Afghanistan's failure to participate in the litigation, it is appropriate for the *Faulkner* Plaintiff's claims to proceed immediately to default judgment in accordance with the FSIA. The two-step procedure for a default judgment requires entry of default based on the defendant's failure to answer *or otherwise defend* and default judgment where the moving party presents "evidence satisfactory of the Court." *See Pharo Gaia Fund, Ltd. v. Bolivarian Republic of Venez.*, 2021 WL 5322968, *4 (S.D.N.Y. Oct. 7, 2021) (citing FED. R. CIV. P. 55(a) and 28 U.S.C. § 1608(e)).

The Second Circuit confers a broad interpretation on the "otherwise defend" language for purposes of entry of default. *See, e.g., City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129-130 (2d Cir. 2011) (collecting cases where court entered default after defendant initially appeared in litigation). Even where a defendant initially answers or moves to dismiss a complaint, entry of default is appropriate if the defendant subsequently withdraws or ceases to participate in the litigation. *See Gao v. Jian Song Shi,* 2021 WL 1949275, *4 (E.D.N.Y. Apr. 30, 2021) (holding "failure to continue its participation in a case" after initially appearing in case qualifies as failure to "otherwise defend" warranting entry of default); *Am. Empire Surplus Lines Ins. Co. v. Barca Restoration Corp.*, 2020 WL 1853227, *1 (E.D.N.Y. Mar. 4, 2020) (finding defendant defaulted after initially appearing to file answer, where counsel withdraw when he was no longer in contact with client); *USHA Holdings, LLC v. Franchise India Holdings, Ltd.*, 2015 WL 13741743, *6 (E.D.N.Y. Sept. 11, 2015) (finding it "beyond dispute that defendants are in default" where defendants initially appeared in case to move for lack of jurisdiction, and then failed to answer or otherwise participate).

On November 1, 2021, Hogan Lovells moved to withdraw as counsel for Afghanistan because they have been unable to contact their clients or obtain any instructions on the matter. The current representatives of Afghanistan have not appeared in the litigation, nor have they provided any indication that they will adhere to (or disavow) the positions previously asserted by the former government.[5] The state's default effectively moots the pending summary judgment motion. *See City of New York*, 645 F.3d at 128 (entering default where defendant "affirmatively signaled" its intent to withdraw from litigation). Given the posture of the case, the appropriate procedure is for the Court to move forward with the default judgment proceedings pursuant to the FSIA, and not to resolve the pending motion for summary judgment.

*Finally*, the Court previously raised the possibility that the default proceedings "might still require consideration of the questions raised in th[e] summary judgment motion," (ECF No. 7354 at 1), but the controlling authorities confirm that is not the case. To prevail in a FSIA default proceeding, a plaintiff need only present "evidence satisfactory to the Court." 28 U.S.C. § 1608(e).

---

[4] Plaintiffs properly served Afghanistan with the complaint, *see* Case No. 1:01-cv-02516, ECF No. 11. The change in government provides no basis for Plaintiffs to re-serve an existing defendant, particularly given the state's express and public recognition of the claims against it, and the impact those claims may have on its frozen assets in the United States.

[5] Given these circumstances, Plaintiffs believe it to be unlikely that the current government of Afghanistan would comply with or honor any obligations the Court may impose upon them in deciding the summary judgment motion, further illustrating that it would be improper to reach a resolution on the merits.

Courts in the Second Circuit hold that the proper standard for establishing liability under the FSIA is "less than normally required." *Smith v. Islamic Emirate of Afghanistan,* 262 F. Supp. 2d 217 (S.D.N.Y. 2003).  This minimal burden simply requires the plaintiff to present a *prima facie* case, or a "legally sufficient evidentiary basis for a reasonably jury to find for plaintiff."  *Smith*, 262 F. Supp. 2d at 224 (citing *Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91 (D.D.C. 2002).  The inquiry thus focuses solely on whether the Plaintiffs' evidence is sufficient to make a prima facie showing.

Section 1608(e) does not require an evidentiary hearing, and the *Faulkner* Plaintiff already has secured and is prepared to offer documentary evidence and expert reports by affidavit to satisfy the applicable standard.  *See Comm. Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 242 (2d Cir. 1994) (finding no need for evidentiary hearing where record shows sufficient evidence in support of claim).  It would be improper under these circumstances to credit or even consider the summary judgment arguments of a defendant that has defaulted in the proceedings, especially where, as here, it is doubtful that the current government of Afghanistan would even adhere to the positions advocated by the prior government.  In any case, Afghanistan has withdrawn from the action.

Based on the foregoing, Plaintiffs respectfully submit that the *Faulkner* Plaintiff's claims against the state of Afghanistan are unaffected by the emergence of the government of the Islamic Emirate of Afghanistan, and that it is appropriate for those claims to proceed immediately to default judgment in accordance with the FSIA.

Respectfully submitted,

JUDICIAL WATCH, INC.

By:   */s/  James F. Peterson*
    James F. Peterson
    Judicial Watch, Inc.
    425 Third Street, S.W.
    Suite 800
    Washington, D.C. 20024
    Tel: (202) 646-5175
    E-mail: jpeterson@judicialwatch.com

*On behalf of Plaintiff Lynn Faulkner*

COZEN O'CONNOR

By:   */s/  Sean P. Carter*
    Sean P. Carter
    Cozen O'Connor
    One Liberty Place
    1650 Market Street, Suite 2800
    Philadelphia, PA 19103
    Tel: (215) 665-2105
    E-mail: scarter1@cozen.com

*On behalf of the MDL 1570 Plaintiffs' Exec. Committees*

| | |
|---|---|
| MOTLEY RICE LLC | KREINDLER & KREINDLER LLP |
| By: _/s/ Robert T. Haefele_ | By: _/s/ Andrew J. Maloney_ |
| Robert T. Haefele | Andrew J. Maloney III |
| Motley Rice LLC | Kreindler & Kreindler LLP |
| 28 Bridgeside Boulevard | 485 Lexington Ave, 28th Floor |
| Mount Pleasant, SC 29465 | New York, NY 10017 |
| Tel: (843) 216-9184 | Tel: (212) 687-8181 |
| E-mail: rhaefele@motleyrice.com | E-mail: amaloney@kreindler.com |
| | |
| *On behalf of the MDL 1570 Plaintiffs' Exec. Committees* | *On behalf of the MDL 1570 Plaintiffs' Exec. Committees* |

cc:     All MDL Counsel of Record (via ECF)

LEGAL\56133815\1