UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army*, et al., 02-cv-6977 (GBD)(SN) (and member case *Burlingame v. Bin Laden, et al.,* 02-cv-7230 (GBD)(SN))

## *Ashton* Plaintiffs' Amended Motion for Final Judgments Against the Taliban and Muhammad Omar

For the reasons set forth below, and in the statements contained in the Declaration of John F. Schutty, Esq. ("Schutty Declaration"), and the record in this case, those plaintiffs in the above-captioned *Ashton* matter (a subset of original *Burlingame* plaintiffs[1]) who are represented by the Law Office of John F. Schutty, P.C.,[2] described within the exhibits to the Schutty Declaration ("*Ashton* Plaintiffs"), respectfully file this amended motion (original motion – MDL ECF#7577 (Motion), 7578 (Declaration) and 7579 (Proposed Order) in 1:03-md-01570-GBD-SN, and ECF#1584, 1585 and 1586 in 1:02-cv-06977-GBD-SN), for an Order for final damages judgments in connection with the losses and injuries they suffered as a result of the deaths of their decedents in the September 11, 2001

---

[1] The *Burlingame* (02-cv-7230) and *Ashton* (02-cv-6977) matters were ordered consolidated for liability purposes and mandated to proceed under the *Ashton, et al. v. al Qaeda Islamic Army, et al.* master docket number 02-cv-6977, with the filing of a consolidated master complaint. *See* 02-cv-6977, Doc. No. 15, entered 11/19/2002. There were 167 *Burlingame* Plaintiffs who brought claims for themselves and/or as representatives of their respective decedents' estates. 108 *Burlingame* Plaintiffs were named in the original *Burlingame* complaint (02-cv-7230). The *Burlingame* plaintiffs remain segregated within all consolidated *Ashton* filings and are identified therein according to their separate docket number and counsel. *See, e.g*., 02-cv-6977, Doc. No. 465, filed 03/30/2005.

[2] The *Ashton* Complaints include the Plaintiffs represented by the Law Office of John F. Schutty P.C. Each of the Plaintiffs' claims identified in Exhibits A through H to the Declaration of John F. Schutty accompanying the instant motion were included in the *Ashton* 6th Amended Complaint filed September 30, 2005 (ECF 1463), which was the operative pleading at the time this Court issued a liability judgment for the consolidated *Ashton* plaintiffs against the *Taliban* and *Omar* Defendants (and others) on May 12, 2006, ECF 1797.

terrorist attacks, in light of the default liability judgment they previously obtained against, among others, the Taliban and the founder and former leader of the Islamic Emirate of Afghanistan, Emir Muhammad Omar (hereinafter the "*Taliban* and *Omar* Defendants"), specifically:

1. Clarifying that the liability judgment against the *Taliban* and *Omar* Defendants are based on claims against "non-foreign-sovereign" defendants (the Foreign Sovereign Immunities Act has no applicability) that are governed by the Anti-Terrorism Act (the "ATA"), 18 U.S.C. § 2333, and traditional wrongful death causes of action (*see infra*, pp. 4-11).

2. Awarding each Estate of the individuals killed in the September 11 terrorist attacks listed in Exhibits I (the "*Ashton* 9/11 Decedents") damages for conscious pain and suffering against the *Taliban* and *Omar* Defendants in the amount of $2,000,000 per decedent, which is the same amount this Court previously awarded to them in a default judgment against the Defendant Islamic Republic of Iran;

3. Awarding each Estate of the *Ashton* 9/11 Decedents herein damages as set forth in Exhibits I for economic loss against the *Taliban* and *Omar* Defendants in the same amounts that this Court awarded to those Estates on the basis of the expert analysis and reports that these *Ashton* Plaintiffs previously filed in their default judgment application against Iran (those same expert reports are filed here);

4. Awarding the Estate Personal Representatives listed in Exhibit I, who are named as such in the original Complaints, and who are also the widows of *Ashton* 9/11 Decedents (qualified heirs of each estate under New York State law), solatium damages in the same amount that this Court has previously awarded to these widows;

5. Awarding the children of the *Ashton* 9/11 Decedents listed in Exhibit I (qualified heirs of each estate under New York State law), whose 9/11 Decedents were named in the original Complaints, solatium damages in the same amounts that this Court has previously awarded to these

children;

6. Awarding these *Ashton* Plaintiffs pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

7. Granting these *Ashton* Plaintiffs permission to seek punitive damages (treble damages) and other appropriate damages at a later date; and

8. Granting permission for all other *Ashton* plaintiffs in this action not appearing within the Exhibits to the Schutty Declaration to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

As the awards set forth in the accompanying Proposed Order will represent the only direct recovery by these *Ashton* Plaintiffs against the *Taliban* and *Omar* Defendants, the Proposed Order will constitute final awards and judgments against the *Taliban* and *Omar* Defendants for these *Ashton* Plaintiffs.

I. **Procedural Background**

On September 4, 2002, the original *Ashton* Plaintiffs filed their first Complaint against the alleged sponsors of the September 11, 2001 terrorist attacks, which included claims against defendants al Qaeda Islamic Army, the Taliban and Muhammad Omar, among others. *See* 02-cv-6977 (S.D.N.Y.) ECF 1.[3] That Complaint was consolidated and amended several times. *See, e.g.,* 02-cv-6977 (S.D.N.Y.) ECF 2, 11, 32, 38, 111, 465.[4]

In their Complaints, the *Ashton* Plaintiffs asserted federal jurisdiction against the *Taliban* and

---

[3] References to MDL docket entries found at 03-md-1570 (S.D.N.Y.) are noted only by ECFnumber; references to individual civil case docket entries are preceded by the case number.

[4] In a Case Management Order, this Court set forth a process for adding plaintiffs by listing theirnames and filing as supplemental pleadings under Fed.R.Civ.P. 15(d) and ordering that "[p]laintiffs added by this procedure need not re-serve defendants who have already been served." ECF 247 at ¶ 12.

*Omar* Defendants pursuant to, among other things, the Alien Tort Statute (28 U.S.C. § 1350) ("ATS"), the Foreign Sovereign Immunities Act (28 U.S.C. § 1605(a)(7)) ("FSIA") and the Torture Victim Protection Act (28 U.S.C. § 1350 note) ("TVPA"), and made claims for damages against those defendants under those provisions as well as under the Anti-Terrorism Act (18 U.S.C. § 2333) and state law for the deaths, injuries and losses suffered in the Sept. 11 terrorist attacks. *See, e.g.* 02-cv-6977, ECF 465 at ¶¶ 2-3, 10-12, 464-466, 469-70, 473-74, 477-78, 481-82, 486-89. In fact, the FSIA has no applicability as against the *Taliban* and *Omar* Defendants since neither is a "foreign sovereign" recognized by the United States Government.

This Court issued an order authorizing service of process by publication on certain defendants, including the *Taliban* and *Omar* Defendants. ECF 445 at 1, 8, 11. The *Ashton* Plaintiffs, and others, served the *Taliban* and *Omar* Defendants by publication with verification of publication filed on March 16, 2005 and March 31, 2005. ECF 709, 735.[5] The *Taliban* and *Omar* Defendants never answered and the *Ashton* Plaintiffs thereafter moved for a Certificate of Default and a default judgment, which this Court granted on May 12, 2006. ECF No. 1782 *et seq.*, (referring to the defendants listed in Exhibit B to the *Ashton* Plaintiffs liability default motion, including the *Taliban* and *Omar* Defendants).

## II.     Liability of the *Taliban* and *Omar* Defendants

The Anti-Terrorism Act (the "ATA"), 18 U.S.C. § 2333 provides (emphasis added):

> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may

---

[5] The publication notices directed the named defendants to the MDL docket, both in English and in Arabic, to answer the Complaints on that docket, which sought, among other things, compensatory, treble and punitive damages, within 60 days. ECF 709 at 2; 735 at 2. The jurisdictional and factual allegations against the *Taliban* and *Omar* Defendants as set forth in the operative complaint at the time of service did not change in subsequent amendments. *Compare* 02-cv-6977 (S.D.N.Y.) (*Ashton* Consolidated Master Complaint, Filed 03/06/2003), ECF 11 at ¶¶ 2, 10-12, 112-14, 178-79, 600, 602-03, 605-06, 09, 610-12, 615-19, *with* 02-cv-6977 (S.D.N.Y.) (Sixth Amended Complaint, Filed 09/03/2005) ECF 465 at ¶¶ 2, 10-12, 78-79, 123-25, 464-66, 469-70, 473-74, 477-78, 481-82.

sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.[6]

In the event of a death resulting from an act of international terrorism, this ATA cause of action is *not* clear as to which individuals fit within the scope of the phrase "his or her estate, survivors, or heirs." In this MDL litigation, plaintiffs claiming on behalf of 9/11 decedents have asserted causes of action based on both state wrongful death law and the ATA.

In the default judgment filings sought against Iran, many of the plaintiffs were parents and siblings of 9/11 decedents who asserted individual and personal claims as plaintiffs asserting the ATA cause of action (these individuals were not court-appointed personal representatives) and they were belatedly added to the litigation in amended pleadings; most of these parents-siblings of decedents were not within the "estate" of their 9/11 decedent, as that "estate" is defined by governing state law.

In claiming money damages for this class of plaintiffs under the ATA, the Plaintiffs' Executive Committee ("PEC") has claimed that precedent issued by a different jurisdiction (the District of Columbia – a federal jurisdiction that applied "federal common law" in interpreting who may recover for a decedent's death under the ATA) is applicable; in turn, the PEC implicitly suggested that the MDL court here could wholly ignore the interests and laws of the decedents' domiciles (state law) regarding wrongful death estate administration.[7] No precedent existed within

---

[6] The Justice Against Sponsors of Terrorism Act ("JASTA"), S. 2040, 114th Cong. (2016), removes the sovereign immunity of the nations who support terror attacks on American soil. JASTA amends the Anti-Terrorism Act to permit claims against foreign nations.

[7] *See, e.g., Tex. Indus. v. Radcliff Materials*, 451 U.S. 630, 640–41 (1981) (Burger, C.J.) ("The vesting of jurisdiction in the federal courts does not in and of itself give rise to authority to formulate federal common law."). "The Supreme Court has put increasing emphasis on the notion that when determining the content of federal common law, forum state law should be adopted as federal law absent some good reason to displace it." 19 Fed. Prac. & Proc. § 4518 (3d ed. August 2019 update). A federal court has discretion to borrow from state law when there are deficiencies or lacunae in the federal statutory scheme. *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789 (2d Cir. 1999). *U.S. v. Smith*, 832 F.2d 774 (2d Cir. 1987) (state commercial law furnished convenient solutions that in no way were inconsistent with adequate protection of federal interests). When federal law does not expressly establish the legal rule for a federal question case, a federal court may

the District Court (S.D.N.Y.) or the governing Circuit (Second) on the issue at that time.

In fact, each American *state* has different laws surrounding the distribution of wrongful death proceeds in administering the estates of decedents. In New York, for example, wrongful death damages are distributed *only* to members of a decedent's defined "estate," *i.e.,* immediate family members explicitly described within a statute, in proportion to their financial loss. *See* N.Y. Estate Powers & Trusts Law ("EPTL) § 5-4.4. Where a 9/11 decedent is survived by a spouse and children, for example, parents and siblings of the decedent are denied wrongful death damages under New York law, regardless of any claimed injury. *Id*. This fact has been given no regard in the MDL litigation to date. Also, New York State law gives the court-appointed personal representative of an estate the exclusive authority to bring an action for a wrongful death arising to a decedent's estate.[8] *See* EPTL, Section 5-4.1. New York law "estate" and wrongful death law, which requires a result different than that previously reached by this Court, was not only ignored, it was violated – by

---

borrow state law to fill the gap in the statutory scheme so long as the state rule does not impinge upon any federal interest. Particularly in the area of family relationships and domestic relations, a federal court should defer to the well-established law of the several states. *Nice v. Centennial Area School Dist*., 98 F. Supp. 2d 665 (E.D. Pa. 2000). *See also De Sylva v. Ballentine*, 351 U.S. 570, 580–581, 76 S. Ct. 974, 980, 100 L. Ed. 1415 (1956), where the issue was whether the illegitimate son of a copyright owner is one of the owner's "children" within the meaning of the copyright statute, the Supreme Court said: "The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law. … This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern. … We think it proper, therefore, to draw on the ready-made body of state law to define the word 'children' …." (Harlan, J.); *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1326 (5th Cir. 1994) ("[t]he law of family relations has been a sacrosanct enclave, carefully protected against federal intrusion") (abrogated on other grounds by, *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285, 129 S. Ct. 865, 172 L. Ed. 2d 662 (2009)). "[T]here is no federal common-law or statutory rule that explicitly prohibits the application of state common-law remedies to cases of wrongful death." S. Speiser, *Recovery for Wrongful Death*, § 6:61 (4th ed. July 2018 update).

[8] "It is settled beyond any doubt that under the New York wrongful death statute the right to prosecute, settle and compromise the wrongful death claim lies exclusively with the personal representative of the estate, who brings the suit in his or her representative capacity as statutory trustee for all of the statutory beneficiaries." https://www.kreindler.com/Publications/Aviation-Law-10.shtml.

awarding money damages to individuals outside the state-prescribed and statutorily-defined "heirs of the estate."[9]

In the event of a death by an act of international terrorism, the ATA is patently: (1) *silent* as to which individuals fit within the scope of the decedent's "estate, survivors, or heirs" (how that phrase should be interpreted), (2) *silent* as to whom may assert a claim for the decedent's "estate, survivors, or heirs" on their behalf, and (3) *silent* as to what damages may be awarded to surviving family members.[10] Typically, where a federal statute does not provide guidance on an issue relating to estate law, reference is made to state law.[11] Federal law is interstitial and federal courts often look to the law of the forum state to fill gaps in federal statutes, usually under the general mandate of the Rules of Decision Act.[12]

---

[9] In fact, the probate exception to federal jurisdiction prohibits federal courts from hearing cases involving matters related to the probate of wills or administration of estates. *Markham v. Allen*, 326 U.S. 490, 494 (1946). It is a doctrine that has been described as "one of the most mysterious and esoteric branches of the law of federal jurisdiction." *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982). Yet, here, the court failed to give any regard to the interests of the states where the 9/11 decedents were domiciled – states left responsible for the future welfare and support of surviving widows and children. These states are undeniably responsible for administering the estates of decedents in this country and they therefore have a far greater interest in the administration of the decedents' estates than the federal government.

[10] When there are no well-established federal policies and no reasonable body of federal law, "as compared to the relative order and clarity of law established in state courts, the common law rule to be applied in federal court is thus uncertain and almost impossible to predict," which "combined with the substantive advantages to be gained by allowing states to formulate their own policies where feasible creates the presumption that state law should be applied." Note, "The Federal Common Law," 82 Harv.L.Rev. 1512, 1519 (1969).

[11] The District Court, when and if it reaches the merits of this issue, will have to decide how the ATA should be applied as a wrongful death remedy. It will have to address the applicable damage policies and, if state wrongful death causes of action are incorporated into the ATA, whether state damage limitations, such as ceilings on recoveries or prohibitions on awards for nonpecuniary losses, are also incorporated.

[12] 28 U.S.C. § 1652. The Rules of Decision Act applies to federal question as well as diversity cases, and requires the use of state law in certain cases in which the underlying statute is silent. *See* Hill, *State Procedural Law in Nondiversity Litigation*, 69 Harv. L. Rev. 66 (1955). There are also more specific federal statutes that require the use of state law on both procedural and substantive matters. *See, e.g.*, 28 U.S.C. § 1738 (federal courts required to give state court judgments the same full faith and credit that state courts would give them); Federal Tort Claims Act, 28 U.S.C. § 1346(b).

Here, the laws of the domiciles of the decedents have apparently been given little regard in evaluating the wrongful death claims of individuals outside the "estate, survivors, or heirs" explicitly recognized by state law. On matters of estate law and wrongful death damages distribution, the laws of the domiciles of the decedents should have been addressed, especially if an award of wrongful death damages is requested on behalf of a family member in direct disregard of state law, state interests and state policy on estate proceeds distribution.

In seeking wrongful death damages in this litigation, the Law Firm of John F. Schutty P.C. presently represents only court-appointed personal representatives and members of 9/11 decedent "estates," as that latter term is defined by New York State law. This law firm has chosen to represent these limited family members (spouses and children) of 9/11 decedent estates, to avoid a conflict of interest (a battle over the distribution of wrongful death proceeds).[13] This law firm has rejected offers to represent parents and siblings of these decedents, who would be denied a distribution of wrongful death proceeds under New York law, and who might reduce distributions to surviving spouses and children. The spouses and children of 9/11 decedent estates who have previously received awards from the Victim Compensation Fund have only recently been allowed to seek compensation from the "Justice For United States Victims of State Sponsored Terrorism Act Fund" ["Iran Fund"], 42 U.S.C. § 10609(b)(2) a/k/a "USVSST." Plaintiffs herein zealously claim that they are the only recipients worthy of wrongful death proceeds of distributions in this MDL litigation under applicable law (and within the USVSST (where parents and siblings are siphoning large sums of money away from the decedent's qualified "heirs" because only a shared, limited fund of money exists).

In requesting wrongful death solatium damages on behalf of individuals who are not within a defined "estate" under state law, the attorneys who have been seeking these awards (presently the

---

[13] *See* Rule 1.7(1)(a) of the New York State "Rules of Professional Conduct" for lawyers ("a lawyer shall not represent a client if a reasonable lawyer would conclude that…the representation will involve the lawyer in representing differing interests….").

PEC attorneys) have relied on ATA case law precedent originating in the District of Columbia, precedent that has not been fully evaluated in the Second Circuit where state law is present (with a limiting effect on who is entitled to recover wrongful death damages[14]).

Case law in the Second Circuit has yet to resolve these thorny ATA issues properly and yet awards issued against the Republic of Iran have been awarded hastily, without a determination of whether the ATA cause of action is being properly applied. This Court, without challenge by the defendant-in-default (Iran), has issued judgments against the Republic of Iran in disregard of these yet-to-be-litigated-properly issues; this is having a dramatic effect on widows and surviving children of 9/11 decedents, through the conversion of the Iran default judgments into one-sided distributions by the USVSST Fund, where parents and siblings thus far have received more than twice what widows and children have received.

Virtually all of the PEC law firms representing personal representatives have engaged in a "follow the leader" process and have "urged/compelled" their original personal representative clients to allow their firms also to represent "all immediate family members" without advising the personal representatives of the consequences of such an acquiescence; these law firms now have proceeded to present claims broadly on behalf of two separate classes of survivors against Sudan, Iran, Saudi Arabia, the *Taliban* and *Omar* Defendants: (1) all alleged "survivors and heirs" of 9/11 decedents (liberally construed without regard to state law) under the ATA, for solatium and other damages, and

---

[14] *See, e.g., Sager v. City of Woodland Park*, 543 F. Supp. 282, 290 (D. Colo. 1982) (rejecting constitutional claim of siblings); *Carter v. City of Emporia*, 543 F. Supp. 354 (D. Kan. 1982) (only heirs may bring wrongful death actions under Kansas law). For example, courts that have considered the availability of § 1983 wrongful death claims by siblings who do not possess the right to sue under state law have generally refused to recognize a constitutional interest that can be enforced through a § 1983 wrongful death damage suit. *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1245-48 (7th Cir. 1984); *Sager v. City of Woodland Park*, 543 F. Supp. 282, 290 (D. Colo. 1982); *Sanchez v. Marquez*, 457 F. Supp. 359, 362-63 (D. Colo. 1978); *Brazier v. Cherry*, 293 F.2d 401, 409 (5th Cir. 1961)) ("Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits. Therefore, a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988." (citations omitted)). *But see Trujillo v. Board of County Comm'rs*, 768 F.2d 1186 (10th Cir. 1985).

(2) court-appointed personal representatives and defined "heirs," under state law, for traditional wrongful death and survival damages.

As a great majority of the PEC law firms are collecting attorneys' fees from these two classes of clients with very different interests, these firms have chosen *not* take a position on the very vital question of whether state wrongful death and survival law (based on the domicile of the 9/11 decedent) has any applicability when seeking recover wrongful death damages under the ATA.

Finally, an issue has arisen here as to whether a filing of a Complaint herein by a "personal representative" appointed under state law constitutes a timely filing for claims belatedly asserted by parents and siblings (among others) of 9/11 decedents who are not within their 9/11 decedent's defined "estate" under state law. The statute of limitations here required claimants to file suits against the "foreign states" in this litigation by January 2, 2019, because Congress extended the ATA statute of limitations to that date. 18 U.S.C. § 2335; H.R. 4310, 112th Cong. §1251(c)(2013).

The PEC has argued that one lawsuit, filed broadly on behalf of an "estate," should be deemed an action filed on behalf of "all survivors" (undefined) of the decedent. *See, e.g.*, MDL ECF#5095 at 1, 5096 at 1 and 5097 at 1. Plaintiffs herein have objected to this suggestion contending that a "personal representative" appointed under New York State law is *only* authorized to represent those individuals expressly within the "estate" of their decedent as defined in N.Y. Estate Powers & Trusts Law § 5-4.4. This objection has, thus far, been ignored. Individuals "outside" the defined "estate," cannot claim that they are protected by a wrongful death filing by the "personal representative" appointed by the State of New York, *or by any other family member for that matter*.

Under New York law, there is no question that a "personal representative" appointed under applicable state law is the only person who can commence and ultimately resolve litigation against the defendants in this litigation. Under New York law, for example, when someone dies leaving a spouse and children, only the spouse and children are entitled to receive wrongful death damages as a result

of their loved one's death.  Finally, under New York law, it does not matter if the decedent and his parents and/or siblings had a great relationship with the decedent, or whether the decedent provided them with financial support, etc., because the extended family members are not within the legal class of beneficiaries entitled to share in damages.  Thus, regardless of their relationship with the decedent, New York law does not allow those individuals (extended family members) to recover.  Thus, the filing of a timely lawsuit by a personal representative (or other family member) does not protect an untimely filing by a parent or sibling of the decedent.

### III.     Damages

Previously, in connection with their claims against the Islamic Republic of Iran ("Iran"), another defendant in the Complaints naming the *Taliban* and *Omar* Defendants, this Court granted the *Ashton* Plaintiffs a default liability judgment.  ECF 3014.  Thereafter, in connection with the damages assertions set forth in the *Ashton* Complaints, in a series of Orders this Court issued final damages judgments against Iran, granting the various *Ashton* Plaintiffs' motions for:

- Compensatory damages for the conscious pain and suffering of the *Ashton* 9/11 Decedents (*e.g.*, ECF 5376, 5449);

- Economic damages for the Estates of the *Ashton* 9/11 Decedents (*e.g.,* ECF 5376, 5449), which damages claims were supported by the expert analysis, reports or other economic loss calculations that these same *Ashton* Plaintiffs filed with this Court (ECF 5376, 5449); and

- *Solatium* damages for the widows and children of these *Ashton* 9/11 Decedents (*e.g,*. ECF 5376, 5449).

The *Ashton* Plaintiffs described within the Exhibits to the accompanying Schutty Declaration now move this Court to grant the proposed Order awarding them damages for, as noted on those exhibits, conscious pain and suffering, economic loss, and solatium damages arising out of the deaths of those individuals killed in the Sept. 11 terrorist attacks in the same amounts as awarded previously against defaulting Defendant Iran and directing that pre-judgment interest be assessed at 4.96 percent

per annum.

The damages of the *Ashton* Plaintiffs herein are set forth in chart form in Exhibit I to the accompanying Schutty Declaration.

The *Ashton* Plaintiffs claimed damages, as relevant here, pursuant to the ATA's civil damages provision, the TVPA, and state law. *See, e.g.,* 02-cv-6977 (S.D.N.Y.), ECF 465 at ¶¶ 463-90.

According to the case law governing terrorism litigation, the "estates of those who [died] can recover economic losses stemming from wrongful death of the decedent; [qualifying] family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." *Valore v. Islamic Republic of Iran*, 700 F.Supp.2d 52, 83 (D.D.C. 2010) (concerning damages under FSIA); *see also Miller v. Arab Bank, PLC,* 372 F. Supp. 3d 33, 41 (E.D.N.Y. 2019) (ruling that plaintiffs were entitled to solatium damages under the ATA); *Lelchook v. Commerzbank AG*, 2011 WL 4087448, at *2 (S.D.N.Y. Aug. 2, 2011) (allowing plaintiffs to pursue claims for solatium damages is consistent with Congress's incorporation of traditional tort-law principles, under which such damages are available, into the ATA.); *Smith ex rel. Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 240 (S.D.N.Y. 2003) (while punitive damages are not available under ATA, its civil action provision "provides for treble damages").

A. **Economic Damages**

Economic damages are specifically contemplated in terrorism litigation, whether under the ATA or state law. The economic damages provision is "designed to compensate [a] decedent's heirs-at-law for economic losses which result from [the] decedent's premature death." *Flatow v. Islamic Republic of Iran,* 999 F. Supp. 1, 27 (D.D.C. 1998); *see also Ungar*, 304 F.Supp.2d at 264-65 (its legislative history "indicates that the ATA was to be construed broadly" and giving weight to its co-sponsor's statement that the ATA "'empowers victims with all the weapons available in civil litigation,'" suggesting "that Congress intended that the full range of damages should be available to

-12-

persons entitled to bring actions pursuant to § 2333(a).") (emphasis in original).  Accordingly, "the beneficiaries of each decedent's estate [are] … entitled to recover the present value of economic damages, including lost wages that the decedents might reasonably have been expected to earn but for their wrongful deaths."  *Valore,* 700 F. Supp. 2d at 81-82, citing *Heiser v. Islamic Republic of Iran,* 466 F.Supp.2d 229 (D.D.C. 2006.)  Thus, sponsors of terrorist attacks that kill victims are routinely "liable for the economic damages caused to decedents' estates."  *Roth v. Islamic Republic of Iran,* 78 F. Supp. 3d 379, 399-400 (D.D.C. 2015), quoting *Valore,* 700 F.Supp.2d at 78.

The *Ashton* Plaintiffs described within Exhibit I are: (1) the appointed personal representatives of the estates of decedents who were murdered on September 11, 2001 (*Ashton* 9/11 Decedents), and (2) heirs of those estates recognized by New York State law as such.  Schutty Decl. at ¶¶ 15-16, 44-45.  As liability has been established against the *Taliban* and *Omar* Defendants, the moving Plaintiffs herein now seek a final order of damages in the amounts set forth on Exhibit I on behalf of themselves and other heirs qualified to recover under applicable New York law.

Previously, this Court awarded economic damages, in prior claims against Iran, for the "economic losses stemming from the wrongful death of the decedent[.]"  ECF No. 2623 at 2-3.  In doing so, it adopted the economic loss calculations set forth in each plaintiff's economic expert reports.  Schutty Decl. at ¶ 42.  The economic loss amount was calculated in each case based on updated, present-value figures of either the economic damages provided by an economic expert, or that generated by the September 11 Victim Compensation Fund ("VCF"); this Court previously found that those economic damage amounts were proper.  Schutty Decl. at ¶ 42.

In their prior motion for economic damages as to Defendant Iran, these same *Ashton* Plaintiffs presented reports prepared by their economic expert who, relying on materials provided by these Plaintiffs (economic expert reports, VCF applications, VCF work-papers and distribution plans, VCF determinations, underlying economic documents, VCF valuation files, tax submissions and other

earnings information), applied generally accepted methodologies and assumptions and calculated the present value of economic losses to a reasonable degree of accounting and actuarial certainty. Schutty Decl. at ¶ 42. These expert reports were filed with this Court (ECF 3433) and the Court credited those reports and granted the motion as to each Estate's individual economic and other damages as to Iran (ECF 3435).

Accordingly, these *Ashton* Plaintiffs now respectfully request that this Court order economic loss awards to those 9/11 Decedents listed in Exhibit I in the amounts set forth therein, the same amounts that were previously awarded to these estates by this Court in the final judgments against Iran.

### B. Conscious Pain and Suffering

Plaintiffs' decedents identified in Exhibit I to the Schutty Declaration all experienced agonizing suffering prior to their deaths in the September 11, 2001 terrorist attacks. Schutty Decl. at ¶ 11. This Court has previously assessed claims for the extraordinary conscious pain and suffering experienced by those who lost their lives on September 11, 2001. ECF Nos. 2618 at 7–9. Accordingly, the *Ashton* Plaintiffs now respectfully request that this Court grant those *Ashton* 9/11 Decedents, whose estates are set forth in Exhibit I, total compensatory damages judgments that reflect the previously awarded $2,000,000 for each 9/11 Decedent. That total final damages amount sought for each *Ashton* 9/11 Decedent is listed in Exhibit I (Exhibit A to the accompanying Proposed Order).

### C. Solatium Damages

"Acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22. Reflecting the nature of terrorist attacks, which are intended to cause emotional damages to those closest to the physically injured party, family members of the decedents may recover for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a

result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort." *Dammarell v. Islamic Republic of Iran*, 281 F. Supp. 2d 105, 196 (D.D.C. 2003) (solatium damages available), *vacated on other grounds*, 404 F. Supp. 2d 261 (D.D.C. 2005); *Ungar*, 304 F.Supp.2d at 264-65 (fullest range of damages should be available to plaintiffs in terrorism litigation, including "all the weapons available in civil litigation"); *Lelchook*, 2011 WL 4087448, at *2 (plaintiffs may "'pursue claims for solatium [emotional] damages' under the ATA") (brackets in original); *Henkin v. Kuveyt Turk Katilim Bankasi*, 495 F.Supp.3d 144, 152 (E.D.N.Y. 2020) ("[c]ourts permit "[p]laintiffs to pursue claims for solatium [emotional] damages" under the ATA.") *citing Lelchook*, 2011 WL 4087448, at *2

To this end, "[s]pouses and relative[s] in direct lineal relationships" are presumed to suffer damages for mental anguish. *Knox v. Palestine Liberation Org.*, 442 F. Supp. 2d 62, 78 (S.D.N.Y. 2006); *Morris*, 415 F.Supp.2d 1323, 1337 (D. Utah 2006) (holding that "victim's family may recover under § 2333 for the victim's lost wages and pain and suffering, and for the victim's wife and children's loss of companionship, society, and guidance, and mental anguish); *Ungar*, 304 F. Supp 2d at 267 (holding plaintiffs entitled under § 2333 to economic and non- economic damages, including loss of companionship and society, and mental anguish experienced by the victim's surviving family members).

Solatium claims have been treated as comparable to claims for intentional infliction of emotional distress, in which the immediate family members of the decedent are treated as direct victims. *See, e.g., Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 115 n.12 (D.D.C. 2005)("[c]ourts have uniformly held that a terrorist attack—by its nature—is directed not only at the victims but also at the victims' families."); *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (treating solatium claim as "'indistinguishable' from the claim of intentional infliction of emotional distress.") (quoting *Wagner v. Islamic Republic of Iran*, 172 F.Supp. 2d 128,

135 n.11 (D.D.C. 2001)). Thus, this Court has previously awarded solatium damages to "immediate family members" – that is, qualified heirs of the Estate of those killed in the September 11, 2001 terrorist attacks, ECF 3363 – who, though not physically present at the site of the terrorist attacks, were nevertheless intended victims of the terrorist activities. *See e.g.* ECF 3396, 3300, 3387, 3394, 3706, 3979, 4052, 4106, 4152, 4170, 4497, 4880, 4902, 5101, 5145, 5920, 5947, 5950, 5976, 7170, 7172, 7190. Two of the established categories of family relationships – spouses and children – do not require any additional showing of the nature of the underlying relationship.

To fashion a solatium award adequately compensating the surviving family members in the litigation when issuing solatium damages as against defendant Iran, this Court looked to the analysis undertaken by District Court Judge Royce Lambert in the *Heiser* case. 466 F. Supp. 2d 229. There, Judge Lamberth concluded that solatium damages should be awarded to each spouse of a deceased victim in the amount of $8 million, to each parent in the amount of $5 million, and to each sibling in the amount of $2.5 million. *Id*.

Recognizing that the immediate family members of those killed in the September 11 terrorist attacks suffered and continue to suffer "profound agony and grief and, "[w]orse yet, …are faced with frequent reminders of the events of that day," ECF 2618 at 10 – 12, this Court adopted the following solatium damages framework:

| **Relationship to Decedent** | **Solatium Award** |
|---|---|
| Spouse | $12,500,000 |
| Child | $8,500,000 |

The losses claimed in this motion are identical to those that this Court ordered in connection with the final judgment against Iran. The amount of solatium damages previously adopted in the judgments against Iran should apply equally to the *Taliban* and *Omar* Defendants.

The relationships between each decedent and each *Ashton* Plaintiff herein are set forth in Exhibit I attached to the Schutty Declaration.  These *Ashton* Plaintiffs have direct relationships previously recognized as being presumptively qualified for solatium damages; the relationships between these *Ashton* Plaintiffs and the decedents killed in the September 11, 2001 terrorist attacks have been verified; these *Ashton* Plaintiffs survived the death of their husband or father on September 11, 2001; these *Ashton* Plaintiffs do not have another known claim pending before this Court for compensation against the *Taliban* or *Omar* Defendants; these *Ashton* Plaintiffs have not recovered against the *Taliban* or *Omar* Defendants; these *Ashton* Plaintiffs have not come close to satisfying their judgments against Iran; and, this Court previously granted solatium damages in the amounts sought here.  Schutty Decl. at ¶¶ 43-44.

The Plaintiffs described in Exhibit I are all individuals were either identified by name as the personal representatives of the Estate of an *Ashton* 9/11 Decedents, or were added as qualified heirs to the estate via Notice of Amendment as to defendants Iran and Sudan.  Schutty Decl. at ¶¶ 44-45.  The Plaintiffs here, other than the personal representatives identified in Exhibit I, are the children of the of *Ashton* 9/11 Decedents on the Sixth Amended Complaint, a Complaint that asserted claims for all qualified heirs of the *Ashton* 9/11 Decedents and that expressly identified claims for solatium damages; these children were not included by name in that original pleading; and have now been added via Notice of Amendment as to defendants Iran and Sudan.  *Id*.

These *Ashton* Plaintiffs therefore respectfully request that this Court issue a final judgment ordering payment of solatium damages to the *Ashton* Plaintiffs listed in Exhibit I, in the amounts set forth in that Exhibit.

### D. Punitive Damages

While *Ashton* Plaintiffs are also entitled to punitive damages, in light of prior differing decisions on the proper punitive multiplier (*compare*, *e.g.,* ECF 3175 at 3 *with* ECF 3384 at 6), they

request permission to address the issue of punitive damages (and/or treble damages) at a later date, as this Court has previously allowed. ECF No. 3666.

### E. Prejudgment Interest

On the issue of prejudgment interest, a December 28, 2015 Report and Recommendation, adopted by this Court, concluded that to the extent the *Ashton* wrongful death plaintiffs' claims arose out of injuries in New York State, the rate of prejudgment interest was 9 percent per annum from September 11, 2001 until the date judgment was entered, and to the extent the injuries arose elsewhere, 4.96 percent interest per annum compounded annually was appropriate. ECF No. 3175 at 1 – 2. Subsequently, however, this Court concluded that the rate of prejudgment interest of 4.96 percent was more appropriate. ECF No. 3384 at 6.

Accordingly, these *Ashton* Plaintiffs asks that this Court direct that prejudgment interest of 4.96 percent per annum be awarded on their awards running from September 11, 2001 until the date of judgment, as was done previously done in this consolidated litigation.

### IV. Conclusion

For all of the reasons herein, as well as those set forth in the previous submissions, these *Ashton* Plaintiffs respectfully request that this Court grant the Proposed Order (and Exhibit A thereto) filed simultaneously with this motion:

1. Awarding the Estates of the individuals killed in the September 11 Terrorist Attacks listed in Exhibit I damages for conscious pain and suffering against the *Taliban* and *Omar* Defendants in the amount of $2,000,000 per decedent, which is the same amount this Court previously awarded to these Estates against Iran;

2. Awarding the Estates of the *Ashton* 9/11 Decedents listed in Exhibit I damages for economic loss against the *Taliban* and *Omar* Defendants (as established in the accompanying expert reports) in the same amounts that this Court previously awarded to these Estates against Iran;

3. Awarding the widows and children of the *Ashton* 9/11 Decedents listed in Exhibit I (heirs of each estate under New York State law), who are also named in the Complaints, solatium damages in the same amounts that this Court has previously awarded to them against Iran;

4. Awarding these *Ashton* plaintiffs pre-judgment interest at the rate of 4.96 percent perannum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

5. Granting these *Ashton* Plaintiffs permission to seek punitive damages and other appropriate damages at a later date; and

6. Granting permission for any other *Ashton* Plaintiffs to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Dated:  New York, New York
        February 17, 2022

Respectfully submitted,

LAW OFFICE OF JOHN F. SCHUTTY, P.C.

BY:  /s/ *John F. Schutty*
John F. Schutty, Esq. (JS2173)
445 Park Ave., 9th Floor
New York, New York 10022
Tel: (212) 745-1157
*Counsel for Certain Ashton Plaintiffs*