UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |
|---|---|

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977 (GBD)(SN) (and member case *Burlingame v. Bin Laden, et al.,* 02-cv-7230 (GBD)(SN))

### Declaration of John F. Schutty in Support of Certain *Ashton* Wrongful Death Plaintiffs' Amended Motion for Final Judgments Against the Taliban and Muhammad Omar

I, JOHN F. SCHUTTY, ESQ., pursuant to 28 U.S.C. § 1746, hereby state under the penalty of perjury that:

1. I am an attorney representing certain Plaintiffs in the above-referenced matter (the "*Ashton* Plaintiffs").

2. I submit this declaration in support of the present amended motion for final judgment (original motion – MDL ECF#7577 (Motion), 7578 (Declaration) and 7579 (Proposed Order) in 1:03-md-01570-GBD-SN, and ECF#1584, 1585 and 1586 in 1:02-cv-06977-GBD-SN) on behalf of various Estates of decedents described below, all of whom perished at the World Trade Center as a result of the terrorist acts perpetrated on September 11, 2001. *This motion is amended to clarify the basis for Plaintiffs' liability and damages in this action.* In support of this application, and for the convenience of this Court, I am separately filing a "Proposed Order for the Entry of Partial Final Judgments Against the Taliban and Muhammad Omar Defendants" on behalf of the following Estates:

    a.    The Estate of Joseph D. Dickey (described within the Irene Dickey Declaration and accompanying economist report, both attached hereto as Exhibit A);

b. The Estate of Robert D. Eaton (described within the Jacqueline Eaton Declaration and accompanying economist report, both attached hereto as Exhibit B);

c. The Estate of James J. Kelly (described within the Joanne Kelly Declaration and accompanying economist report, both attached hereto as Exhibit C);

d. The Estate of Timothy M. O'Brien (described within the Lisa O'Brien Declaration and accompanying economist report, both attached hereto as Exhibit D);

e. The Estate of Michael H. Seaman (described within the Dara Seaman Declaration and accompanying economist report, both attached hereto as Exhibit E);

f. The Estate of Robert F. Sliwak (described within the Susan Sliwak Declaration and accompanying economist report, both attached hereto as Exhibit F);

g. The Estate of John Wallice, Jr. (described within the Allison Wallice Declaration and accompanying economist report, both attached hereto as Exhibit G); and

h. The Estate of Farrell Lynch (described within the Eileen Lynch Declaration and accompanying economist report, both attached as Exhibit H).

3. The form of this amended motion and the relief requested herein are intended to comply with the prior orders of this Court. ECF 3433, 3435 (requiring sworn declaration of due

diligence safeguards and verification regarding any prior relief).[1]

**Procedural Background**

4.      On September 4, 2002, the *Ashton* Plaintiffs filed their first Complaint against the sponsors of the September 11, 2001 terrorist attacks, which included claims against defendants al Qaeda Islamic Army, the Taliban and Muhammad Omar (hereinafter the "*Taliban* and *Omar* Defendants"), among others. See 02-cv-6977 (S.D.N.Y.) ECF 1. That Complaint was consolidated and amended several times. *See, e.g.,* 02-cv-6977 (S.D.N.Y.) ECF 2, 11, 32, 38, 111, 465.

5.      The Law Office of John F. Schutty, P. C. represents some, but not all, of the plaintiffs identified on the *Ashton* Complaints (formerly *Burlingame* plaintiffs). I anticipate additional plaintiffs on the *Ashton* Complaints to move shortly for relief similar to that sought on this motion (the law office of Kreindler & Kreindler has already filed a similar motion, but without a renewed filing of economists' reports in support of the economic losses claimed).

6.      Pursuant to this Court's Order, the *Ashton* Plaintiffs served the *Taliban* and *Omar* Defendants by publication. ECF 445 at 1, 8, 11. Verification of service by publication on among others, the *Taliban* and *Omar* Defendants, was provided on March 16, 2005 and March 31, 2005, for publication in both English and Arabic, consistent with the service Order. ECF 709, 735.[2] The *Taliban* and *Omar* Defendants never answered and the *Ashton* Plaintiffs thereafter moved for a Certificate of Default and a default judgment, which this Court granted on May 12, 2006. ECF 1782 *et seq.*, 1797 (referring to the defendants listed in Exhibit B to the *Ashton* Plaintiffs motion, including

---

[1]     References to MDL docket entries found at 03-md-1570 (S.D.N.Y.) are noted only by the MDL ECF number; references to individual civil case docket entries are preceded by the case number.

[2]     The publication notices were directed at the named defendants to the MDL docket and advised them in both English and Arabic that they were required to answer the Complaints on that docket, which sought, among other things, compensatory, treble and punitive damages, within 60 days. ECF 709 at 2; 735 at 2.

the *Taliban* and *Omar* Defendants).³  That is, as of May 12, 2006, the *Ashton* Plaintiffs had a liability default judgment against the *Taliban* and *Omar* Defendants, among others.

7.  The *Ashton* Plaintiffs herein now seek final damage judgments against the *Taliban* and *Omar* Defendants.

8.  This amended motion and declaration are being filed to clarify the liability and damage claims of these Plaintiffs, as they differ in several significant ways from the claims sought by virtually every other member of the Death and Injury Plaintiff's Executive Committee.

9.  The Anti-Terrorism Act (the "ATA"), 18 U.S.C. § 2333 provides (emphasis added):

> *Any national* of the United States injured in his or her person, property, or business by reason of an act of international terrorism, *or his or her estate, survivors, or heirs*, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

10.  In the event of a death resulting from an act of international terrorism, this ATA cause of action is *not* clear as to which individuals fit within the scope of the phrase "his or her estate, survivors, or heirs."

11.  In this MDL litigation, plaintiffs claiming on behalf of 9/11 decedents have asserted causes of action based on both state wrongful death law and the ATA.

12.  In the default judgment filings sought against Iran, many of the plaintiffs were parents and siblings of 9/11 decedents who asserted individual and personal claims as plaintiffs asserting the ATA cause of action (these individuals were not court-appointed personal representatives) and many were belatedly added to the litigation in amended pleadings; most of these parents-siblings of decedents were not within the "estate" of their 9/11 decedent, as that "estate" is defined by governing state law.

---

³   This Court's default liability judgment was issued on May 12, 2006 and stated that it applied to all claims, between plaintiffs and defendants, included up to and through the Sixth Amended Complaint.  ECF 1797.

13. In claiming money damages for this class of plaintiffs under the ATA, the Death & Injury Plaintiffs' Executive Committee ("D&I PEC") has claimed that precedent issued by a different jurisdiction (the District of Columbia – a federal jurisdiction that applied "federal common law" in interpreting who may recover for a decedent's death under the ATA) is relevant; in turn, the PEC implicitly suggested that the MDL court here could wholly ignore the interests and laws of the decedents' domiciles (state law) regarding wrongful death estate administration.[4] No precedent existed within the District Court (S.D.N.Y.) or the governing Circuit (Second) on this novel issue at that time.

14. In fact, each American *state* has different laws surrounding the distribution of wrongful death proceeds in administering the estates of decedents. In New York, for example, which governs the claims of the Plaintiffs on this motion, wrongful death damages are distributed *only* to members of a decedent's defined "estate," *i.e.,* immediate family members explicitly described within

---

[4] *See, e.g., Tex. Indus. v. Radcliff Materials*, 451 U.S. 630, 640–41 (1981) (Burger, C.J.) ("The vesting of jurisdiction in the federal courts does not in and of itself give rise to authority to formulate federal common law."). "The Supreme Court has put increasing emphasis on the notion that when determining the content of federal common law, forum state law should be adopted as federal law absent some good reason to displace it." 19 Fed. Prac. & Proc. § 4518 (3d ed. August 2019 update). A federal court has discretion to borrow from state law when there are deficiencies or lacunae in the federal statutory scheme. *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789 (2d Cir. 1999). *U.S. v. Smith*, 832 F.2d 774 (2d Cir. 1987) (state commercial law furnished convenient solutions that in no way were inconsistent with adequate protection of federal interests). When federal law does not expressly establish the legal rule for a federal question case, a federal court may borrow state law to fill the gap in the statutory scheme so long as the state rule does not impinge upon any federal interest. Particularly in the area of family relationships and domestic relations, a federal court should defer to the well-established law of the several states. *Nice v. Centennial Area School Dist.*, 98 F. Supp. 2d 665 (E.D. Pa. 2000). *See also De Sylva v. Ballentine*, 351 U.S. 570, 580–581, 76 S. Ct. 974, 980, 100 L. Ed. 1415 (1956), where the issue was whether the illegitimate son of a copyright owner is one of the owner's "children" within the meaning of the copyright statute, the Supreme Court said: "The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law. … This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern. … We think it proper, therefore, to draw on the ready-made body of state law to define the word 'children' …." (Harlan, J.); *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1326 (5th Cir. 1994) ("[t]he law of family relations has been a sacrosanct enclave, carefully protected against federal intrusion") (abrogated on other grounds by, *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285, 129 S. Ct. 865, 172 L. Ed. 2d 662 (2009)). "[T]here is no federal common-law or statutory rule that explicitly prohibits the application of state common-law remedies to cases of wrongful death." S. Speiser, *Recovery for Wrongful Death*, § 6:61 (4th ed. July 2018 update).

a statute, in proportion to their financial loss. *See* N.Y. Estate Powers & Trusts Law ("EPTL) § 5-4.4. Where a 9/11 decedent is survived by a spouse and children, for example, parents and siblings of the decedent are denied wrongful death damages under New York law, regardless of any claimed injury. *Id*. This fact has been given no regard in the MDL litigation to date. Also, New York State law gives the court-appointed personal representative of an estate the exclusive authority to bring an action for a wrongful death arising to a decedent's estate.[5] *See* EPTL, Section 5-4.1.

15.  New York "estate distribution" law and wrongful death law, which require a result different than that reached by this Court, was not only ignored, it was violated – by awarding money damages to individuals outside the state-prescribed and statutorily-defined "heirs of the estate."[6]

16.  In the event of a death by an act of international terrorism, the ATA is patently: (1) *silent* as to which individuals fit within the scope of the decedent's "estate, survivors, or heirs" (how that phrase should be interpreted), (2) *silent* as to whom may assert a claim for the decedent's "estate, survivors, or heirs" on their behalf, and (3) *silent* as to what damages may be awarded to surviving family members.[7]

---

[5]  "It is settled beyond any doubt that under the New York wrongful death statute the right to prosecute, settle and compromise the wrongful death claim lies exclusively with the personal representative of the estate, who brings the suit in his or her representative capacity as statutory trustee for all of the statutory beneficiaries." https://www.kreindler.com/Publications/Aviation-Law-10.shtml.

[6]  In fact, the probate exception to federal jurisdiction prohibits federal courts from hearing cases involving matters related to the probate of wills or administration of estates. *Markham v. Allen*, 326 U.S. 490, 494 (1946). It is a doctrine that has been described as "one of the most mysterious and esoteric branches of the law of federal jurisdiction." *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982). Yet, here, the court failed to give any regard to the interests of the states where the 9/11 decedents were domiciled – states left responsible for the future welfare and support of surviving widows and children. These states are undeniably responsible for administering the estates of decedents in this country and they therefore have a far greater interest in the administration of the decedents' estates than the federal government.

[7]  When there are no well-established federal policies and no reasonable body of federal law, "as compared to the relative order and clarity of law established in state courts, the common law rule to be applied in federal court is thus uncertain and almost impossible to predict," which "combined with the substantive advantages to be gained by allowing states to formulate their own policies where feasible creates the presumption that state law should be applied." Note, "The Federal Common Law," 82 Harv.L.Rev. 1512, 1519 (1969).

17. Typically, where a federal statute does not provide guidance on an issue relating to estate law, reference is made to state law.[8]

18. Federal law is interstitial and federal courts often look to the law of the forum state to fill gaps in federal statutes, usually under the general mandate of the Rules of Decision Act.[9]

19. Here, the laws of the domiciles of the decedents have apparently been given little regard in evaluating the wrongful death claims of individuals outside the "estate, survivors, or heirs" explicitly defined by state law.

20. On matters of estate law and wrongful death damages distribution, the laws of the domiciles of the decedents should have been addressed, especially if an award of wrongful death damages is requested on behalf of a family member in direct disregard of state law, state interests and state policy.

21. In seeking wrongful death damages in this litigation, my firm presently represents only court-appointed personal representatives and members of 9/11 decedent "estates," as that latter term is defined by New York State law; my law firm has chosen to represent these limited family members (spouses and children) of 9/11 decedent estates, to avoid a conflict of interest (a battle over the distribution of wrongful death damages).[10] My firm has rejected offers to represent parents and

---

[8] The District Court, when and if it reaches the merits of this issue again, will have to decide how the ATA should be applied as a wrongful death remedy. It will have to address the applicable damage policies and, if state wrongful death causes of action are incorporated into the ATA, whether state damage limitations, such as ceilings on recoveries or prohibitions on awards for nonpecuniary losses, are also incorporated.

[9] 28 U.S.C. § 1652. The Rules of Decision Act applies to federal question as well as diversity cases, and requires the use of state law in certain cases in which the underlying statute is silent. *See* Hill, *State Procedural Law in Nondiversity Litigation*, 69 Harv. L. Rev. 66 (1955). There are also more specific federal statutes that require the use of state law on both procedural and substantive matters. *See, e.g.*, 28 U.S.C. § 1738 (federal courts required to give state court judgments the same full faith and credit that state courts would give them); Federal Tort Claims Act, 28 U.S.C. § 1346(b).

[10] *See* Rule 1.7(1)(a) of the New York State "Rules of Professional Conduct" for lawyers ("a lawyer shall not represent a client if a reasonable lawyer would conclude that…the representation will involve the

siblings of these decedents (who would be denied a distribution of wrongful death proceeds under New York law), who might affect distributions to surviving spouses and children by diminishing their recoveries.

22. The clients that I represent were allowed to seek compensation under the "Justice For United States Victims of State Sponsored Terrorism Act Fund" ["Iran Fund"], 42 U.S.C. § 10609(b)(2) a/k/a "USVSST," only after parents and siblings of 9/11 decedents had already received a distribution from the USVSST (and, thereafter, my clients received a smaller overall distribution than the parents and siblings).

23. I continue to represent my clients zealously in claiming that they are the only recipients worthy of wrongful death proceeds of distributions in this MDL litigation under applicable law (and within the USVSST, where parents and siblings are siphoning large sums away from the decedent's true "heirs" because only a shared, limited fund exists).

24. In requesting wrongful death solatium damages on behalf of individuals who are not within a defined "estate" under state law, the attorneys who have been seeking these awards (presently the D&I PEC attorneys) have relied on ATA case law precedent rendered in the District of Columbia Circuit courts, precedent that has not been fully evaluated in the Second Circuit where state law is present (with a limiting effect on who is entitled to recover wrongful death damages[11]).

---

lawyer in representing differing interests….").

[11] *See, e.g., Sager v. City of Woodland Park*, 543 F. Supp. 282, 290 (D. Colo. 1982) (rejecting constitutional claim of siblings); *Carter v. City of Emporia*, 543 F. Supp. 354 (D. Kan. 1982) (only heirs may bring wrongful death actions under Kansas law). For example, courts that have considered the availability of § 1983 wrongful death claims by siblings who do not possess the right to sue under state law have generally refused to recognize a constitutional interest that can be enforced through a § 1983 wrongful death damage suit. *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1245-48 (7th Cir. 1984); *Sager v. City of Woodland Park*, 543 F. Supp. 282, 290 (D. Colo. 1982); *Sanchez v. Marquez*, 457 F. Supp. 359, 362-63 (D. Colo. 1978); *Brazier v. Cherry*, 293 F.2d 401, 409 (5th Cir. 1961)) ("Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits. Therefore, a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988." (citations omitted)). *But see Trujillo v. Board of County Comm'rs*, 768

25. Case law in the Second Circuit has yet to resolve these thorny ATA issues properly, and yet awards issued against the Republic of Iran have been awarded hastily and liberally, without a determination of whether the ATA is being properly interpreted in light of the applicability of state law.

26. This Court, without challenge by the first defendant-in-default (Iran), has issued judgments against the Republic of Iran in disregard of these yet-to-be-litigated-properly issues; this is having a dramatic effect on widows and surviving children of 9/11 decedents, through the conversion of these default judgments into distributions by the USVSST Fund, where parents and siblings thus far have received more than twice what widows and children have received.

27. Virtually all of the D&I PEC law firms representing personal representatives have engaged in a "follow the leader" process and have "compelled" their personal representative clients to allow their firms also to represent "all immediate family members," apparently without advising the personal representatives of the consequences of such an acquiescence (dilution of fixed USVSST proceeds if state law "non-heirs" also recover); these D&I PEC law firms now have proceeded to present claims broadly on behalf of two separate classes of survivors against Sudan, Iran, Saudi Arabia and the *Taliban* and *Omar* Defendants: (1) all broadly alleged "survivors and heirs" of 9/11 decedents, under the ATA, for solatium and other damages, and (2) court-appointed personal representatives and "heirs," under state law, for traditional wrongful death and survival damages.

28. As a great majority of these D&I PEC law firms are collecting attorneys' fees from these two classes of clients with very different interests, these firms have chosen *not* take a position on the very vital question of whether state wrongful death and survival law (based on the domicile of the 9/11 decedent) has any applicability when seeking recover wrongful death damages under the ATA.

F.2d 1186 (10th Cir. 1985).

29. Moreover, an issue has arisen here as to whether a filing by a "personal representative" appointed under state law constitutes a timely filing for claims belatedly asserted by parents and siblings (among others) of 9/11 decedents who are not within their 9/11 decedent's defined "estate" under state law.

30. The statute of limitations here required claimants to file suits against the "foreign states" in this litigation by January 2, 2019, because Congress extended the ATA statute of limitations to that date. 18 U.S.C. § 2335; H.R. 4310, 112th Cong. §1251(c)(2013).

31. The D&I PEC has argued that one lawsuit, filed broadly on behalf of an "estate," should be deemed an action filed on behalf of "all survivors" (undefined) of the decedent. *See, e.g.*, ECF#5095 at 1, 5096 at 1 and 5097 at 1; *see also* recent, belated filing by 2,900 plaintiffs seeking to be added to the litigation against The Taliban – MDL ECF#7654, 7657 and 7660.

32. My clients have objected to this suggestion, contending that a "personal representative" appointed under New York State law (or other domicile state law) is *only* authorized to represent those individuals expressly within the "estate" of their decedent as defined in N.Y. Estate Powers & Trusts Law § 5-4.4. This objection has, thus far, been ignored (and thousands of parents and siblings have been added belatedly to this litigation).

33. Individuals "outside" the state-defined "estate," cannot claim that they are protected by a wrongful death filing by the "personal representative" appointed by the State of New York, *or by any other family member for that matter*.

34. Under New York law, there is no question that the appointed personal representative under state law is the only person who can commence and ultimately resolve litigation against the defendants here.

35. Finally, under New York law, it does not matter if the decedent and his parents and/or siblings had a great relationship with the decedent, or whether the decedent provided them with

financial support, etc., because the extended family members are not within the legal class of beneficiaries entitled to share in damages. Thus, regardless of their relationship with the decedent, New York law does not allow those individuals (extended family members) to recover. Thus, the filing of a timely lawsuit by a personal representative (or other family member) does not protect an untimely filing by a parent or sibling of the decedent.

36. My law office feels compelled to make this issue clearly at this time because the undersigned attorney was retained precisely because the Plaintiff families that I represent did not want to be forced to add their in-laws as party-plaintiffs at the urgings of their then-attorneys.

37. As the default judgments entered by this Court are having a dramatic effect on the distributions already made by the USVSST, and any future distributions made from the judgments against the *Taliban* and *Omar* Defendants will likely have a serious effect on future distributions from any future-created limited fund, the Plaintiffs on this motion urge the Court to reconsider the effect of state law in interpreting the damages recoverable under the ATA, and the individuals who may claim damages within this precedent-setting litigation.

**Damages Due Diligence:**

38. As to the damages claimed herein, the sources of my information and the basis for my belief in my statements contained herein are: (a) my personal involvement in this litigation and my regular review of the MDL docket; (b) my representation of the *Ashton* Plaintiffs in connection with this litigation; (c) my communications directly with family members of the *Ashton* 9/11 Decedents listed in Exhibit A through Exhibit H; (d) my communications with counsel for other plaintiffs in the *In re Terrorist Attack on September 11, 2001* multidistrict litigation; and, (e) documents and records contained in my firm's files and other court records relating to the multi-district litigation to which the *Ashton* Plaintiffs are parties. Any matters about which I lack personal knowledge are asserted herein upon information and belief.

39. All of the *Ashton* 9/11 Decedents listed in the accompanying Proposed Order and attached Exhibit I died in the September 11, 2001 terrorist attacks. My law firm has been retained by the representatives of the Estates of the *Ashton* 9/11 Decedents listed in Exhibit A through Exhibit H to represent those Estates.

40. For the *Ashton* 9/11 Decedents listed in Exhibit I, we have confirmed that the decedent was a United States national as of September 11, 2001, based on documentary evidence (such as copies of birth certificates, passports and /or verified applications to the September 11, 2001 Victim Compensation Fund ("VCF")), or personal interviews and/or written communications with the Personal Representatives of the Estates of those 9/11 Decedents.

41. Exhibit I sets forth the same compensatory damages amount this Court previously awarded to the Estates of the *Ashton* 9/11 Decedents herein for conscious pain and suffering in connection with claims asserted against the Defendant Islamic Republic of Iran ("Iran").

42. Exhibit I also sets forth claims by the Personal Representatives of the Estates of the *Ashton* 9/11 Decedents for an award of economic damages in the amounts listed therein. For all of these Estates who are seeking economic damages, such amounts are based upon reports prepared by an economic expert who, relying on materials provided by the Plaintiffs herein (economic expert reports, VCF applications, VCF work-papers and distribution plans, VCF determinations, underlying economic documents, VCF valuation files, tax submissions and other earnings information), applied generally accepted methodologies and assumptions and calculated the present value of economic losses to a reasonable degree of accounting and actuarial certainty. The underlying materials included economic expert reports, VCF files and other documentary evidence and include damages calculations that, when calculated soon after the September 11, 2001 terrorist attacks, have now been brought up to present value, as explained in connection with our prior motion for economic damages on behalf of the Estates of the *Ashton* 9/11 Decedents herein, and are the same amounts that this Court

granted following prior motions for economic damages in connection with claims asserted against the Defendant Islamic Republic of Iran.

43.     This Court previously awarded *solatium* damages to immediate family members to the individuals listed in Exhibit I in the following amounts:

| Relationship to Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Child | $8,500,000 |

44.     The *Ashton* Plaintiffs herein, described within Exhibit A through Exhibit H, are the Personal Representatives of the Estates of the *Ashton* 9/11 Decedents named in the *Ashton* Complaints underlying the default judgment against the *Taliban* and *Omar* Defendants, which asserted claims for all members of the Estate of the *Ashton* 9/11 Decedents – the widows and children of the *Ashton* 9/11 Decedents named in those Complaints (and recognized heirs of these Estates under New York State law). *See, e.g.,* 02-cv-6977 (S.D.N.Y.), ECF 485 at ¶ 482 (seeking, among other things, solatium damages). These individuals have been added by name via Notice of Amendment by the process this Court established concerning the claims against Iran and Sudan. We have confirmed the relationship between the *Ashton* 9/11 Decedent and the individuals listed in Exhibit I through documentary evidence (attached Declarations) and interviews with and written confirmation with my clients.

45.     The *Ashton* Plaintiffs listed in Exhibit I are qualified heirs (widows and children) of the *Ashton* 9/11 Decedents named in the *Ashton* Complaints (underlying the default judgment against the *Taliban* and *Omar* Defendants), which asserted claims for all the recognized heirs of the Estates of the *Ashton* 9/11 Decedents (even those not set forth by name individually in those Complaints as these individuals are represented by the appointed Personal Representative of each Estate). The latter individuals (children of the decedent) have been added by name via Notice of Amendment of the

Master Complaint by the process this Court established concerning the claims against Iran and Sudan. We have confirmed the relationship between each *Ashton* 9/11 Decedent and the individuals listed in Exhibit I through documentary evidence (attached Declarations) and interviews with and written confirmation with my clients.

46. The *Ashton* Plaintiffs described within the Exhibits to this declaration have received final judgments against Iran but have received no final judgment against the *Taliban* or *Omar* Defendants, nor have they collected anything close to the full amounts of their judgments against Iran.

47. In order to allow the Plaintiffs described herein to attempt to satisfy any portion of the outstanding judgment amounts against the *Taliban* or *Omar* Defendants, the *Ashton* Plaintiffs respectfully request that the Court issue the same damage awards for these Plaintiffs that the Court ordered in the final judgments against Iran (as is reflected in Exhibits I, and A through H).

48. For any *Ashton* Plaintiffs not set forth in the attached exhibits, including those represented by other *Ashton* counsel but consolidated on the *Ashton* Complaint, and for any damages not included herein, we expect additional claims to be asserted.

49. For all of the reasons set forth in this Declaration and within the *Ashton* Plaintiffs' Motion for Final Judgments against the *Taliban* and *Omar* Defendants, I respectfully request that this Court grant the instant motion and sign the Proposed Order filed herewith.

Dated: February 17, 2022
      New York, New York

                                             /s/ *John F. Schutty*
                                                   John F. Schutty