This Transcript Contains Confidential Material

1          UNITED STATES DISTRICT COURT

           SOUTHERN DISTRICT OF NEW YORK

2                    - - -

3

4    IN RE: TERRORIST ATTACKS    : 03-MDL-1570

     ON SEPTEMBER 11, 2001       : (GBD)(SN)

5

6

7

                     - - -

8                JULY 22, 2021

           THIS TRANSCRIPT CONTAINS

9           CONFIDENTIAL MATERIAL

                     - - -

10

11

12           Remote Videotaped

13   Deposition, taken via Zoom, of JONATHAN

14   MARKS, commencing at 9:00 a.m., on the

15   above date, before Amanda

16   Maslynsky-Miller, Certified Realtime

17   Reporter and Notary Public in and for the

18   Commonwealth of Pennsylvania.

19

20                   - - -

21       GOLKOW LITIGATION SERVICES

         877.370.3377 ph| 917.591.5672 fax

22           deps@golkow.com

23

24

This Transcript Contains Confidential Material

```
 1   APPEARANCES:
 2

 3          KREINDLER & KREINDLER LLP
            BY: ANDREW J. MALONEY III, ESQUIRE
            485 Lexington Avenue, 28th Floor
 4          New York, New York 10017
            (212) 687-8181
 5          amaloney@kreindler.com
            Representing the Ashton, et al.,
 6          Plaintiffs
 7

 8

 9          COZEN O'CONNOR P.C.
            BY: SEAN P. CARTER, ESQUIRE
10          BY: J. SCOTT TARBUTTON, ESQUIRE
            One Liberty Place
11          1650 Market Street
            Suite 2800
12          Philadelphia, Pennsylvania 19103
            (215) 665-2000
13          scarter1@cozen.com
            starbutton@cozen.com
14          Representing the Plaintiffs
15

16

17          ANDERSON KILL P.C.
            BY: JERRY S. GOLDMAN, ESQUIRE
18          1251 Avenue of the Americas
            New York, New York 10020
19          (212) 278-1000
            jgoldman@andersonkill.com
20          Representing the Plaintiffs'
            Steering Committee
21

22

23

24
```

This Transcript Contains Confidential Material

```
 1   APPEARANCES:  (Continued)
 2
 3          MOTLEY RICE LLC
            BY: ROBERT T. HAEFELE, ESQUIRE
 4          BY: JODI WESTBROOK FLOWERS, ESQUIRE
            BY: C. ROSS HEYL, ESQUIRE
 5          28 Bridgeside Boulevard
            Mount Pleasant, South Carolina 29464
 6          (843) 216-9000
            rhaefele@motleyrice.com
 7          jflowers@motleyrice.com
            rheyl@motleyrice.com
 8          Representing the Plaintiffs' Steering
            Committee and the Burnett Plaintiffs
 9
10
11
            JONES DAY
12          BY: ERIC SNYDER, ESQUIRE
            BY: GABRIELLE PRITSKER, ESQUIRE
13          51 Louisiana Avenue, N.W.
            Washington, D.C. 20001
14          (202) 879-3939
            esnyder@jonesday.com
15          gpritsker@jonesday.com
            Representing the Defendant,
16          Dubai Islamic Bank
17
18          LEWIS BAACH KAUFMANN MIDDLEMISS PLLC
            BY: SUMAYYA KHATIB, ESQUIRE
19          1101 New York Avenue, N.W.
            Suite 1000
20          Washington, DC 20005
            (202) 833-8900
21          sumayya.khatib@lbkmlaw.com
            Representing the Defendants,
22          Muslim World League, the
            International Islamic Relief
23          Organization, and
            Drs. Turki, Al-Obaid, Naseef and Basha
24
```

This Transcript Contains Confidential Material

```
 1   APPEARANCES: (Continued)
 2
 3        LAW FIRM OF OMAR T. MOHAMMEDI, LLC
          BY: OMAR T. MOHAMMEDI
 4        BY: JILL L. MANDELL, ESQUIRE
          233 Broadway
 5        Suite 820
          New York, New York 10279
 6        (212) 725-3846
          omohammedi@otmlaw.com
 7        jmandell@otmlaw.com
          Representing the Defendant,
 8        WAMY and WAMY International
 9
10
11        GOETZ & ECKLAND P.A.
          BY: FREDERICK J. GOETZ, ESQUIRE
12        615 1st Avenue NE
          Suite 425
13        Minneapolis, Minnesota 55413
          (612) 874-1552
14        fgoetz@goetzeckland.com
          Representing the Defendant,
15        WAMY and WAMY International
16
17   ALSO PRESENT:
18   David Lane, Videographer
     Dianne Int-Hout, Trial Technician
19
20   Linde Hoffman, Legal Assistant, Jones Day
21
22
23
24
```

This Transcript Contains Confidential Material

```
 1                     -  -  -
 2                 I N D E X
 3                     -  -  -
 4
    Testimony of:   JONATHAN MARKS
 5
 6      By Mr. Carter                    9
        By Mr. Haefele                 282
 7      By Mr. Goetz                   309
 8
                        -  -  -
 9
                E X H I B I T S
10
                        -  -  -
11
12  NO.              DESCRIPTION                 PAGE
13  Marks-959        No Bates
                     Notice of Oral Deposition
14                   of Jonathan Marks           12
15  Marks-960        No Bates
                     Curriculum Vitae of
16                   Jonathan Marks              13
17  Marks-961        No Bates
                     Expert Report of
18                   Jonathan Marks              52
19  Marks-962        No Bates
                     Baker Tilly Invoices        54
20
    Marks-963        No Bates
21                   Jonathan Marks: Appendix B:
                     Documents Considered        74
22
    Marks-964        WAMYSA082520-2521
23                   6/11/97 Letter             115
24
```

This Transcript Contains Confidential Material

```
1                  -  -  -

2              E X H I B I T S

3                  -  -  -

4

   NO.           DESCRIPTION                    PAGE
5

   Marks-965    WAMYSA018579-8755
6               Brief Information About
                WAMY/LBI Office Activities
7               During (1992-2002)            207

8  Marks-966    WAMYSA066752-6802
                Audit Accounts and Reports,
9               Bangladesh Office             223

10 Marks-967    WAMYSA066717-6751
                1997 E-mail and Attached
11              Documents                     227

12 Marks-968    WAMYSA066972-7030
                Independent Auditor Report,
13              Indonesia Office              236

14 Marks-969    WAMYSA067482-7515
                8/31/05 Financial Report
15              Review Audit                  250

16 Marks-970    No Bates
                A Violation of Trust: Fraud
17              Risk in Nonprofit
                Organizations, Marks         278

18

19

20

21

22

23

24
```

This Transcript Contains Confidential Material

```
 1                        -   -   -

 2           DEPOSITION SUPPORT INDEX

 3                        -   -   -

 4

 5   Direction to Witness Not to Answer

 6   Page Line      Page Line      Page Line

 7   None

 8

 9

10   Request for Production of Documents

11   Page     Line    Page Line      Page Line

12   58       4

13

14

15   Stipulations

16   Page Line      Page Line      Page Line

17   8        1

18

19

20   Question Marked

21   Page Line      Page Line      Page Line

22   None

23

24
```

This Transcript Contains Confidential Material

```
 1                    -  -  -

 2              (It is hereby stipulated and

 3         agreed by and among counsel that

 4         sealing, filing and certification

 5         are waived; and that all

 6         objections, except as to the form

 7         of the question, will be reserved

 8         until the time of trial.)

 9                    -  -  -

10              VIDEO TECHNICIAN:  We are

11         now on the record.  My name is

12         David Lane, videographer for

13         Golkow Litigation Services.

14         Today's date is July 22nd, 2021.

15         Our time is 9:00 a.m.

16              This remote video deposition

17         is being held in the matter of the

18         Terrorist Attacks on September

19         11th, 2001.  The deponent today is

20         Jonathan Marks.

21              All parties to this

22         deposition are appearing remotely

23         and have agreed to the witness

24         being sworn in remotely.
```

This Transcript Contains Confidential Material

1  in that case was an entirely theoretical

2  possibility, correct?

3          MR. GOETZ:  Same objection.

4          THE WITNESS:  Like all

5      investigations, Mr. Carter,

6      there's a lot of theory involved

7      and speculation.

8  BY MR. CARTER:

9      Q.    Well, I'm just trying to

10  assess whether or not you've ever

11  actually been involved, in a professional

12  capacity, in any investigation that

13  actually involved terrorist financing.

14          Have you been?

15      A.    I have never been involved

16  in an investigation that has led to

17  anything related to terrorist financing,

18  no, that's correct.

19      Q.    And have you ever worked on

20  any matter involving the possible funding

21  of al-Qaeda in particular, before this

22  litigation?

23      A.    Not to my knowledge.

24      Q.    And have you ever worked in

This Transcript Contains Confidential Material

1    any counterterrorism capacity for any

2    government?

3          A.    No.

4          Q.    And do you have any

5    expertise pertaining to the history of

6    al-Qaeda?

7          A.    I wouldn't say I'm an

8    expert.

9          Q.    And do you have any

10   expertise on any other designated

11   terrorist organizations?

12         A.    I wouldn't say I'm an

13   expert, no.

14         Q.    And do you have any

15   professional background, prior to this

16   case, studying the funding of al-Qaeda?

17         A.    No.

18         Q.    Have you ever worked on any

19   matter relating to activities conducted

20   in the Middle East?

21         A.    Yes.

22         Q.    And what countries were

23   implicated by that work?

24         A.    Saudi Arabia is one of them.

1    hours, correct?

2         A.    If that's what it says, then

3    that's correct.

4         Q.    And all of the 14 hours that

5    include descriptions of reviewing

6    documents are included in the September

7    4, 2020, invoice covering the period July

8    1, 2020, through August 31, 2020.

9              Does that sound accurate?

10        A.    It does.

11        Q.    And the invoice for the

12   prior period covering June 1, 2020,

13   through June 30, 2020, indicates that you

14   were already involved, during that

15   period, in preparing your report,

16   correct?

17        A.    Right.

18        Q.    So according to the invoices

19   that we have, you began working on your

20   report before you entered any time for

21   reviewing any documents, correct?

22        A.    Well, part of putting my

23   report together would be reviewing

24   documents, so, yes.

This Transcript Contains Confidential Material

1      A.    I wouldn't say I reviewed

2  tens of thousands of documents, no.  Like

3  I said, that's not the process that we

4  went through -- go ahead.

5      Q.    So you review -- you relied

6  on other people to review documents and

7  they provided their analysis to you; is

8  that correct?

9      A.    Yes.

10     Q.    And how did they provide

11  that analysis to you?

12     A.    We would have regular and

13  ongoing discussions.

14     Q.    And did they provide any

15  summaries to you relating to their

16  review, analysis or findings?

17     A.    I'm sure they summarized it

18  to me, otherwise -- yes.  Absolutely,

19  yes.  They summarized information for me.

20     Q.    And so you relied on those

21  summaries for purposes of developing your

22  opinions and writing your report,

23  correct?

24     A.    I relied on those summaries

This Transcript Contains Confidential Material

1    to evaluate whether I believed that those

2    were complete and accurate.  And if I

3    thought that we needed more information,

4    I would -- I asked my staff to go back

5    and get me more details.

6              So placing reliance on them,

7    it all depended on many different

8    factors.

9        Q.    Well, you considered them in

10   the context of developing your opinions

11   and report in the case, correct?

12       A.    Yes.

13       Q.    And do you list any of those

14   summaries or any analyses provided by

15   your staff in the documents considered

16   section of your report?

17             MR. GOETZ:  Objection.

18       Form.

19             THE WITNESS:  I don't have

20       any written summaries.  So the

21       answer to that is no.

22   BY MR. CARTER:

23       Q.    Well, they didn't provide

24   you any information in writing relating

This Transcript Contains Confidential Material

1    others under your supervision.

2           Do you see that?

3       A.    I do.

4       Q.    And those two statements

5    together, do they describe your

6    methodology for developing your opinions

7    and preparing your report in this matter?

8       A.    I don't think they describe

9    my methodology.  I think they outline my

10   qualifications and the documents that I

11   considered, not the complete methodology

12   for formulating my opinions and

13   conclusions.

14      Q.    So your report does not

15   describe in full your methodology for

16   developing your opinions and conclusions?

17      A.    There's not a methodology

18   section in here, no.  That's correct.

19      Q.    Just turning to the content

20   of your report and some general issues.

21           Do you agree that auditors

22   and forensic accountants should use terms

23   of art carefully and only where

24   appropriate?

1    BY MR. CARTER:

2         Q.    Yes.

3               Were you asked to perform a

4    comprehensive review to identify any and

5    all red flags relating to WAMY and its

6    branch offices during the period in

7    question?

8         A.    We were asked to perform a

9    review.

10        Q.    And as part of that review,

11   were you asked to identify any things

12   that you saw as potential red flags?

13        A.    We were.

14        Q.    And did you develop a

15   comprehensive list of things that you saw

16   as red flags?

17        A.    That list would be small.

18        Q.    Okay.  But did you develop

19   one?

20        A.    Not a formal list, no.

21        Q.    On that same page of your

22   report, you say that the opposing experts

23   are not auditors, accountants, financial

24   experts, certified fraud examiners or

This Transcript Contains Confidential Material

1  oversight?

2      A.    I think there's always an

3  opportunity to improve the control

4  environment.

5      Q.    And WAMY recognized that

6  need in 1997, in your opinion, correct?

7      A.    I believe they recognized

8  the need to maintain a control

9  consciousness and to implement adequate

10  internal controls from the beginning.

11      Q.    But in 1997 they recognized

12  a need for improvement; that's what you

13  say in your report, correct?

14      A.    Right.

15      Q.    And in support of that and

16  your opinion that WAMY took action at

17  that time, you cite a document that was

18  produced at WAMY -- by WAMY at Bates

19  82520.

20          MR. CARTER:  Which, if we

21      can pull it out, it's at Tab 25.

22      Let's mark this as the next

23      exhibit.

24                  -  -  -

This Transcript Contains Confidential Material

```
 1            (Whereupon, Exhibit

 2       Marks-964, WAMYSA082520-2521,

 3       6/11/97 Letter, was marked for

 4       identification.)

 5                 -  -  -

 6  BY MR. CARTER:

 7       Q.    And, Mr. Marks, am I

 8  correct, this is the document you cite as

 9  evidence that WAMY recognized the need

10  for and began to implement more rigorous

11  controls in 1997?

12       A.    I'm reviewing it.  Hold on.

13  Give me one second.  I'm just double

14  checking.

15            Yes.

16       Q.    What do you understand this

17  document to be?

18       A.    It looks like an outline to

19  improve controls related to their system.

20       Q.    Who authored it?

21       A.    Well, it's a WAMY document.

22  I don't know specifically who authored

23  it.

24       Q.    Okay.  And to whom was it
```

1    Q.    Do you see any of those

2    people referenced or copied on this

3    document?

4    A.    I don't.

5    Q.    Does this document say

6    anything about auditing or financial

7    controls at all?

8    A.    Well, the mere fact that

9    they're putting in a computer system is a

10   control.  They're enhancing their

11   computer system.

12   Q.    Okay.  So the establishment

13   of a computer system, you believe,

14   reflected an effort on the part of WAMY

15   to implement more robust auditing and

16   financial controls?

17   A.    I do.

18   Q.    Does the document say

19   anything about using that computer system

20   for purposes of centralizing financial

21   reporting or auditing?

22   A.    I think it's inherent in

23   what they're trying to achieve.  They

24   link together.  To better -- it's

1      Form.

2              THE WITNESS:  I don't know

3          that -- I don't know that to be

4          true or not.

5  BY MR. CARTER:

6          Q.    Well, you described this as

7  an initiative to implement more robust

8  controls.

9              Do you know whether this

10  actually happened?

11         A.    I don't know specifically

12  whether it happened or not.

13         Q.    Okay.  Well, do you agree

14  that if this never happened, this memo

15  wouldn't really provide a firm basis for

16  you to opine that WAMY began implementing

17  more rigorous controls in 1997?

18         A.    That would be true.  But I

19  haven't seen any evidence to the

20  contrary.

21         Q.    And in terms of what this

22  document is and what it isn't, is this a

23  directive or is this an outline of a

24  proposal?

This Transcript Contains Confidential Material

1  document?

2      A.    I'm sorry, you just cut out.

3  I didn't hear what you said.

4      Q.    Aside from this document,

5  what evidence do you have of

6  implementation of new processes and

7  controls?

8          MR. GOETZ:  Objection.

9      Form.

10         THE WITNESS:  The project

11     reports are new processes that

12     they put in place and continue to

13     enhance.

14  BY MR. CARTER:

15     Q.    Anything else?  Anything

16  from the management of the organization

17  discussing new financial and auditing

18  controls?

19     A.    I don't know what was

20  discussed with regards to new financial,

21  auditing or management controls.

22     Q.    Again, with regard to this

23  initiative to implement an IT control

24  system and whether it actually happened,

This Transcript Contains Confidential Material

1    did you review any information WAMY

2    provided to the court about what its

3    document collection process involved in

4    this case?

5         A.    No.

6         Q.    And to the extent that WAMY

7    indicated that its document collection

8    involved the collection of physical hard

9    copy documents from the offices and

10   warehouses and did not involve searches

11   of computer-based systems, would that

12   lead you to believe that this IT project

13   didn't happen?

14            MR. GOETZ:  Objection.

15        Form.

16            THE WITNESS:  I don't know

17        that I can make that particular

18        assumption.

19   BY MR. CARTER:

20        Q.    So you don't know whether

21   this actually happened, do you?

22        A.    I don't.

23        Q.    And, yet, you cite it in

24   your report as evidence of WAMY

This Transcript Contains Confidential Material

1    implementing greater control systems,

2    correct?

3                MR. GOETZ:  Objection.

4         Form.

5                THE WITNESS:  Can I answer?

6                MR. GOETZ:  Go ahead, you

7         can answer if you can.

8                THE WITNESS:  I think the

9         fact that they talk about

10        continuously enhancing their

11        overall control environment is a

12        control all in itself.

13               Having a control

14        consciousness and a proper tone

15        from the top, whereby you have an

16        organization that is constantly

17        looking to maintain control, I

18        think that is very important.

19   BY MR. CARTER:

20        Q.   Okay.  But what you cite in

21   support of that is a single document

22   referring to a possible IT initiative

23   from 1997.

24        A.   Well, it's more than a

This Transcript Contains Confidential Material

1    single --

2              MR. GOETZ:  Objection.

3         Form.

4              Go ahead and answer.

5              THE WITNESS:  It's more than

6         a single document.  It's the

7         entire -- it's looking at the

8         entire organization and what they

9         were doing and how they were doing

10        it.

11   BY MR. CARTER:

12        Q.   But, again, your report

13   cites this as the -- as the beginning of

14   a process of implementing a more robust

15   centralized organizational accounting

16   system.

17             MR. GOETZ:  Objection.

18        Repetitive.

19   BY MR. CARTER:

20        Q.   Do you believe it would be

21   appropriate to cite this as the beginning

22   of a process that involved implementation

23   of greater controls if it didn't even

24   happen?

This Transcript Contains Confidential Material

```
 1              MR. GOETZ:  Objection.
 2        Repetitive.
 3              THE WITNESS:  If it didn't
 4        happen, if you have evidence to
 5        show me that it didn't happen,
 6        that's fine.  I didn't see any
 7        evidence to the contrary.
 8  BY MR. CARTER:
 9        Q.    Well, did you see any
10  evidence that it did happen?
11        A.    I cited that in my report.
12  I -- what you referred to, what this
13  document is on the screen here right now,
14  that's what I saw.
15        Q.    On Page 9 of your report,
16  you referenced what you describe as some
17  statements from plaintiffs' expert
18  reports.
19              Do you see that in the first
20  paragraph?
21        A.    Yes.
22              Specifically which are you
23  referring to?
24        Q.    The first paragraph,
```

This Transcript Contains Confidential Material

1   is on Page 8, where I talk about

2   implementing financial controls is in

3   line with practices of large

4   international and not-for-profit

5   organizations.

6        Q.    I'm sorry, Mr. Marks, I'm

7   focused on this paragraph because I don't

8   understand -- I don't fully understand

9   it.  And I'm just asking very specific

10  questions.

11           Do you take issue with Mr.

12  Winer's statement that there was a fatwa

13  issued to kill Americans in 1998?

14       A.    I'm not disputing that.

15       Q.    Do you take issue with Mr.

16  Levitt's statement that by 1999 al-Qaeda

17  had the capacity to conduct major

18  terrorist attacks?

19       A.    I'm not disputing that

20  either.

21       Q.    And are you disputing Mr.

22  Levitt's opinion that bin Laden used the

23  resources of international Islamic

24  non-governmental organizations to finance

This Transcript Contains Confidential Material

1    terrorist activities?

2         A.    I'm not disputing that.

3         Q.    Now, the next sentence of

4    your report states, According to the

5    opposing experts, quote, terrorist abuse

6    of such NGOs took place at the local

7    branch office rather than at the

8    organization's headquarters, period, end

9    quote.

10              Do you see that?

11        A.    I do.

12        Q.    And you attribute that

13   statement in quotes to plaintiffs'

14   experts, correct?

15        A.    Yes.

16        Q.    Where does that quoted

17   language appear in the text of any of

18   their reports?

19        A.    You're referring to,

20   Terrorist abuse of such NGOs took place

21   at the local branch rather than at the

22   organization's headquarters?

23        Q.    Correct.

24        A.    Where does it appear?  I

This Transcript Contains Confidential Material

```
 1        A.    It's a contract.  You know,
 2   anybody can sign a contract.  It's what
 3   you do after that, which is the
 4   monitoring of that, which I think is
 5   really important.
 6        Q.    Right.  And you told me you
 7   didn't know whether or not the contract
 8   was enforced.
 9        A.    Well, if the contract was
10   enforced or not, the fact that they were
11   monitoring would be a really good
12   indication on whether they were following
13   the terms and conditions.
14        Q.    In the context of that
15   particular program, right?
16        A.    Correct.  Correct.
17        Q.    The next sentence of your
18   report says that, Supporting refugees and
19   orphans affected by wars does not equate
20   to terrorism and is in line with WAMY's
21   stated charitable goals.
22              Do you see that?
23        A.    I do.  It's on Page 10.
24        Q.    And I think we can agree
```

This Transcript Contains Confidential Material

1  that supporting refugees and orphans does

2  not necessarily equate to terrorism.

3           But do you know whether

4  refugee and orphan support programs have

5  ever been used to disguise and conceal

6  funding for terrorism?

7           MR. GOETZ:  Objection to

8      form.

9           THE WITNESS:  Repeat the

10      question.  I'm sorry.

11  BY MR. CARTER:

12      Q.   Well, do you know whether

13  refugee and orphan support programs have

14  ever been used to disguise and conceal

15  funding for terrorism?

16           MR. GOETZ:  Object to the

17      form.  Scope.

18           THE WITNESS:  That was not

19      my charge here.

20  BY MR. CARTER:

21      Q.   So it's not something that's

22  within your area of expertise?

23      A.   No.  I think we established

24  that.

1   government has identified as having

2   supported al-Qaeda?

3          MR. GOETZ:  Objection.

4       Scope.

5          THE WITNESS:  Repeat the

6       question one more time.

7   BY MR. CARTER:

8       Q.   What organizations can you

9   name that the United States government

10  has identified as having supported

11  al-Qaeda?

12      A.   Not WAMY.

13      Q.   Okay.  Well, can you name

14  any?

15      A.   I don't know of any other

16  specific organizations by name.

17      Q.   And, again, here you

18  indicate that the initiative referenced

19  in the 1997 memo would not be in line

20  with organizations that supported

21  al-Qaeda.

22          And we agree that the 1997

23  document relates to IT processes and

24  greater uses of computers?

This Transcript Contains Confidential Material

1          review.

2     BY MR. CARTER:

3          Q.    You mention here that the

4     matter relating to Adel Batterjee was

5     referred to Prince Salman, who is now

6     King Salman.

7                Do you see that?

8          A.    Where are you referring?

9     Page 12?

10         Q.    Yes.

11         A.    On May 11th -- I see that,

12    yes.

13         Q.    Do you know who Prince

14    Salman was during that time period?

15         A.    I don't know his title.

16         Q.    Do you know whether he had

17    any role for the Kingdom, during the

18    period preceding these events, in

19    implementing the Kingdom's support for

20    the Afghan jihad?

21              MR. GOETZ:  Objection.

22         Scope.

23              THE WITNESS:  That's not

24         part of my scope.

BY MR. CARTER:

Q.   Do you know if he had an official role with WAMY?

A.   Official role?  I don't know if he had an official role.  I don't believe so.

Q.   Did you undertake any effort to determine why WAMY was referring this particular matter to a senior Saudi official?

A.   They were trying to be accountable here.

Q.   It's fine for the organization to be accountable.

But the question is why were they -- why were they involving a senior Saudi official who had no formal role at WAMY at all?

MR. GOETZ:  Objection. Form.

THE WITNESS:  It's complete transparency with regards to how they act.  And the reason I believe that they were notifying a

This Transcript Contains Confidential Material

1           Saudi official is due to the

2           nature of the way that charitable

3           organizations in Saudi Arabia were

4           set up and the accountability and

5           laws associated with that.

6    BY MR. CARTER:

7           Q.    So it's your understanding

8    that the regulatory regime required them

9    to report on matters of this nature to

10   Saudi officials?

11          A.    Yes.

12          Q.    And is it your understanding

13   that Saudi officials had influence over

14   their activities?

15          MR. GOETZ:  Objection to

16          scope.

17          THE WITNESS:  I don't

18          believe they had influence over

19          their activities.  I didn't see

20          any evidence of that.

21   BY MR. CARTER:

22          Q.    Did you consider whether the

23   reporting of this matter to Prince Salman

24   may have indicated that the government of

This Transcript Contains Confidential Material

1    A.    There are reports that were
2  submitted.  I don't recall whether there
3  were actual audits or not.
4    Q.    Do you recall whether you
5  received any audits or audited financial
6  statements pertaining to WAMY's office in
7  Sudan?
8    A.    Pardon me?  You cut out for
9  one second.  Can you just repeat that?
10    Q.    Do you recall seeing any
11  audits or audited financial statements
12  for WAMY's office in Sudan?
13    A.    I'm not sure.  I'd have to
14  go back and double check.
15    Q.    Do you recall whether you
16  received any audit reports or audited
17  financial statements pertaining to WAMY's
18  office in Russia?
19    A.    Same, I'd have to go back
20  and double check.
21    Q.    Do you recall whether you
22  received any audits or audited financial
23  statements for WAMY's office in the
24  Philippines?

This Transcript Contains Confidential Material

1     A.    Not certain.

2     Q.    Do you recall whether you

3 received any audits or audited financial

4 statements for WAMY's office in Austria?

5     A.    Austria not Australia,

6 right?

7     Q.    Austria.

8     A.    I don't remember seeing any.

9     Q.    What about Kenya?

10     A.    I don't remember seeing any

11 from Kenya either.

12     Q.    What about Kosovo?

13     A.    I'm not sure.

14           MR. MOHAMMEDI:  Objection.

15           THE WITNESS:  Sorry.

16           MR. GOETZ:  Object to the

17        form of these questions.  It's

18        assuming that there are offices in

19        all of these entities.  So with

20        that objection noted.

21           MR. CARTER:  Relative to

22        that objection, I verified that

23        you described these as all -- as

24        existing offices in one of your

This Transcript Contains Confidential Material

```
1            filings to the court.

2                 MR. GOETZ:  Okay.  I'm just

3            preserving the objection for the

4            record in case that's not

5            accurate.

6   BY MR. CARTER:

7            Q.    I'm sorry, what about WAMY's

8   office in Nigeria?

9            A.    I don't recall seeing

10  anything from Nigeria.

11           Q.    What about WAMY's office in

12  Yemen?

13           A.    I don't recall seeing

14  anything in Yemen.

15           Q.    What about WAMY's office in

16  Kyrgyzstan?

17           A.    I don't know.  I'd have to

18  check.  I'm not sure.

19           Q.    Is it fair to say that you

20  don't recall seeing any audits for a

21  number of WAMY offices I just listed?

22           A.    I don't know that I can

23  answer that question.

24                 MR. GOETZ:  Objection to
```

This Transcript Contains Confidential Material

```
 1              MR. GOETZ:  Objection.

 2         Form.  Misstates his testimony.

 3  BY MR. CARTER:

 4         Q.    Mr. Marks, if we can, turn

 5  for a minute to the discussion beginning

 6  on Page 14 of your report about the

 7  audits and audited financial statements

 8  you reviewed.

 9              And as I understand it, you

10  refer in this section of your report to

11  14 audit reports for the WAMY Pakistan

12  office covering the years 1994 to 2002.

13              Does that sound right?

14         A.    Yes.

15         Q.    And three audit reports that

16  were produced by WAMY in Arabic for the

17  WAMY Eastern Province office?

18         A.    You're on Page 14?  Just

19  show me --

20         Q.    The discussion continues.

21  I'm in the section --

22         A.    Right, right.

23         Q.    -- that covers 14 to 16.

24         A.    Right.  That's on Page 15.
```

This Transcript Contains Confidential Material

1    Q.    Correct.

2          And with regard to those

3    audit reports that were produced in

4    Arabic, do you speak Arabic or read

5    Arabic?

6    A.    No.  But members of my team

7    do.

8    Q.    Did you receive translations

9    of those documents?

10   A.    No.

11   Q.    So am I correct that you did

12   not actually review those audits

13   yourself?

14   A.    Not true.

15   Q.    Okay.  Given that they were

16   in Arabic, I'm just trying to understand

17   how you personally reviewed them.

18   A.    My team members walked us

19   through those documents.

20   Q.    But you didn't receive an

21   actual translation, correct?

22   A.    I didn't need to.

23   Q.    I'm just asking a simple

24   question.

This Transcript Contains Confidential Material

1    there's a statement, Over the course of

2    centralizing recordkeeping, WAMY

3    gradually became aware of issues in their

4    internal controls and made a

5    conscientious effort to improve any

6    control issues.

7              Do you see that?

8         A.   I do.

9              But, Mr. Carter, before we

10   get there, I had mentioned to you

11   previously, when we were talking about a

12   specific -- hold on.  Let me pull this up

13   real quick.  I apologize.

14             We were talking about the

15   directive, and I told you that we would

16   have a conversation about that particular

17   document.  I'm just trying to get you the

18   Bates number.

19             My computer just froze.  So

20   just bear with me for one second.  It's

21   Bates number WAMYSA082521.

22        Q.   Thank you.

23        A.   If you just mind -- just

24   noting here, if you look at -- I was

This Transcript Contains Confidential Material

1  trying to find it on the document, it

2  does say office of the assistant

3  secretary general.

4            And my conversations from --

5  you know, with my team in that region

6  told me that because it came from the

7  office of the assistant secretary

8  general, that this does act like a

9  directive.  So I just wanted to clarify

10  my response.

11      Q.    So it's your understanding,

12  from discussions with your team in Saudi

13  Arabia, that the assistant secretary

14  general for planning at the World

15  Assembly of Muslim Youth had the

16  authority to issue directives on behalf

17  of the secretary general?

18      A.    Yes.

19      Q.    Okay.  And in terms of

20  whether or not this is a directive, he

21  actually asked that the recipient of the

22  document provide suggestions on the

23  project and notes that it will be

24  discussed in the coordination meeting.

This Transcript Contains Confidential Material

1    team and there is reference to the WAMY

2    team.

3              My question is, is there an

4    outside team that is a WAMY team and an

5    inside Baker Tilly team that's the Baker

6    Tilly team?

7         A.    No.  It's the same thing.

8         Q.    And in the 2/28 entry --

9         A.    Hold on.  I'm sorry.

10        Q.    In the 2/28 entry by Paul

11   Zikmund, there's a reference to a call to

12   A-M-I-R.

13             Who is that?

14        A.    I don't know.

15        Q.    And there's also a reference

16   to -- never mind.

17             Looking at Page 10 of the

18   PDF.

19        A.    Hold on.  I apologize, my

20   PDFs are not numbered.  So if you can

21   give me the dates, that would just be

22   easier.

23             I'm right with you now, Mr.

24   Haefele.

This Transcript Contains Confidential Material

```
 1                 INSTRUCTIONS TO WITNESS

 2

 3              Please read your deposition

 4    over carefully and make any necessary

 5    corrections.  You should state the reason

 6    in the appropriate space on the errata

 7    sheet for any corrections that are made.

 8              After doing so, please sign

 9    the errata sheet and date it.

10              You are signing same subject

11    to the changes you have noted on the

12    errata sheet, which will be attached to

13    your deposition.

14              It is imperative that you

15    return the original errata sheet to the

16    deposing attorney within sixty (60) days

17    of receipt of the deposition transcript

18    by you.  If you fail to do so, the

19    deposition transcript may be deemed to be

20    accurate and may be used in court.

21

22

23

24
```

This Transcript Contains Confidential Material

```
1                    - - - - - -

                  E  R  R  A  T  A

2                    - - - - - -

3     PAGE    LINE    CHANGE

4     _____   _____   _____

5     _____   _____   _____

6     _____   _____   _____

7     _____   _____   _____

8     _____   _____   _____

9     _____   _____   _____

10    _____   _____   _____

11    _____   _____   _____

12    _____   _____   _____

13    _____   _____   _____

14    _____   _____   _____

15    _____   _____   _____

16    _____   _____   _____

17    _____   _____   _____

18    _____   _____   _____

19    _____   _____   _____

20    _____   _____   _____

21    _____   _____   _____

22    _____   _____   _____

23    _____   _____   _____

24    _____   _____   _____
```

This Transcript Contains Confidential Material

```
 1              ACKNOWLEDGMENT OF DEPONENT

 2

               I,_____, do

 3   hereby certify that I have read the

     foregoing pages,  1 - 316, and that the

 4   same is a correct transcription of the

     answers given by me to the questions

 5   therein propounded, except for the

     corrections or changes in form or

 6   substance, if any, noted in the attached

     Errata Sheet.

 7

 8   _____

      JONATHAN MARKS                DATE

 9

10

     Subscribed and sworn

11   to before me this

     _____ day of _____, 20____.

12

     My commission expires:_____

13

14   _____

     Notary Public

15

16

17

18

19

20

21

22

23

24
```

This Transcript Contains Confidential Material

```
1                        LAWYER'S NOTES

2      PAGE   LINE

3      _____  _____   _____

4      _____  _____   _____

5      _____  _____   _____

6      _____  _____   _____

7      _____  _____   _____

8      _____  _____   _____

9      _____  _____   _____

10     _____  _____   _____

11     _____  _____   _____

12     _____  _____   _____

13     _____  _____   _____

14     _____  _____   _____

15     _____  _____   _____

16     _____  _____   _____

17     _____  _____   _____

18     _____  _____   _____

19     _____  _____   _____

20     _____  _____   _____

21     _____  _____   _____

22     _____  _____   _____

23     _____  _____   _____

24     _____  _____   _____
```