UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOHN DOES 1 THROUGH 7,                          :
                                                :
Plaintiffs,                                     :
                                                :
- against -                                     : No. 20 Misc. 740 (GBD)
                                                :
THE TALIBAN *et al.*,                           :
                                                :
Defendants.                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                :
IN RE: TERRORIST ATTACKS ON                     : No. 03 MD 1570 (GBD) (SN)
SEPTEMBER 11, 2001                              :
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
FIONA HAVLISH *et al.*,                         :
                                                :
Plaintiffs,                                     :
                                                :
- against -                                     : No. 03 Civ. 9848 (GBD) (SN)
                                                :
SHEIKH USAMAH BIN-MUHAMMED                      :
BIN-LADEN, a.k.a. OSAMA BIN-LADEN *et al.*,     :
                                                :
Defendants.                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### INTERVENORS' OBJECTIONS TO THE MAGISTRATE JUDGE'S DENIAL OF THEIR MOTION TO INTERVENE

Pursuant to Fed. R. Civ. P. 72, 157 U.S. Government employees killed or injured in the August 7, 1998, Al Qaeda bombings of the U.S. Embassies in Nairobi, Kenya and Dar-es-Salaam, Tanzania, their family members, and the personal representatives of their estates, (the "Intervenors"), hereby make the following objections to the Magistrate Judge's Opinion and Order of February 22, 2022 ("Feb. 22 Order").

The Magistrate Judge's Order does not address Intervenors' central point, which is that Plaintiffs have no entitlement to the funds of the foreign state of Afghanistan and the Central Bank of Afghanistan (Da Afghanistan Bank, "DAB") currently held in a consolidated account held at the

Federal Reserve Bank of New York ("Afghan funds"), thus Intervenors have an equal interest in the funds to that of Plaintiffs.  Plaintiffs do not have a judgment against the sovereign government of Afghanistan, which creates a myriad of dispositive legal obstacles, such as lack of proper service on the government of Afghanistan.  As evidenced by the U.S. Statement of Interest, which makes all the necessary observations regarding the invalidity of Plaintiffs' execution rights, but nonetheless suggests the Court allow Plaintiffs a clear shot at the Afghan funds; there is no other party to these proceedings able or willing to make this argument.  While the other Plaintiffs aside from *Havlish* and *John Doe* will oppose their efforts at a speedy distribution of the Afghan funds, they will not press the central point—there is no party to these proceedings with a legal right to the Afghan funds.

## PROCEDURAL POSTURE

Intervenors filed a motion to intervene in these proceedings on February 16, 2022.  The Magistrate Judge denied the motion on February 22, 2022, before requiring any of the parties to this proceeding to rebut the central argument to Intervenors' Motion—the invalidity of any Plaintiffs' execution rights against the Afghan funds.

## STANDARD OF REVIEW

The Magistrate Judge's Opinion and Order of February 22, 2022 is dispositive of Intervenors' claims, thus Fed. R. Civ. P. 72(b)(3) requires *de novo* review of the Special Master's factual determinations and legal conclusions: "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."

## ARGUMENT

The Magistrate Judge erred by finding that "the interest they proffer is adequately represented

2

by parties already before the Court." Feb. 22 Order at 6.  The Magistrate Judge also found that the "Amduso Plaintiffs have no cognizable interest in these funds", *id.* at 6, yet the current Plaintiffs suffer from the same infirmity.

## OBJECTIONS

### I.   THE MAGISTRATE JUDGE ERRED

The Magistrate Judge erred by ruling that "the interests that the Amduso Plaintiffs have asserted are well represented by numerous parties already before the Court."  Feb. 22 Order at 9. The Magistrate Judge founded this ruling on three findings:

1. "several existing parties have the same objective as the Amduso Plaintiffs: to limit or void the Havlish and Doe Plaintiffs' entitlement to the DAB funds."

2. "while these groups may have different views on what constitutes an "equitable distribution" of DAB Funds to a broad array of victims, the view that there *should* be a broad and equitable distribution is well represented."

3. "Finally, the public-minded motives asserted by the Amduso Plaintiffs are also represented by no less an authority than the United States."

Feb. 22 Order at 10.  Unfortunately, none of these premises are correct.

First, none of the existing parties will admit the incontrovertible truth, that none of the named Plaintiffs have any right to the Afghan funds.  The existing parties instead will contrive a connection between the Taliban and the Afghan funds, even though the funds belong not only to the sovereign government of Afghanistan, but also the Afghan Central Bank, and the Plaintiffs have not proceeded under the Foreign Sovereign Immunities Act ("FSIA"), *see* 28 U.S.C. § 1602 *et seq.*, to file a lawsuit and obtain a judgment against either entity.

Second, the Plaintiffs all have a vested interest in maintaining the fiction that a judgment

3

against the Taliban is a right and entitlement to the Afghan funds.  This goal is at odds with the interests of any other victims of Taliban terrorism and there are no parties to these proceedings who will argue otherwise.

Third, on February 11, 2022, while the U.S. government has filed a Statement of Interest which admits "[t]o the extent the assets of a foreign central bank represent the foreign state's reserves, such assets belong necessarily to the foreign state and thus would not be the assets of a private party . . . .", U.S. Statement at 25, it nonetheless concludes:  [t]he Court should afford the Judgment Plaintiffs a full opportunity—in keeping with the statutory framework Congress enacted in TRIA—to make submissions addressing the legal requirements of TRIA and setting forth their arguments regarding the attachability of the unlicensed DAB Assets." *Id.* at 5.  Judging from the Statement of Interest, there is no guarantee that the U.S. government will raise with the Court the incontrovertible truth:  the invalidity of any execution rights of Plaintiffs against the Afghan funds.

Plaintiffs do not have a judgment against either the funds or the government of Afghanistan.  Plaintiffs have neither served the complaint nor any judgment on the government of Afghanistan, which must be conducted pursuant to the FSIA, *see* 28 U.S.C. § 1608(a).  Section 1608(a) governs service of process on foreign government and contains a rigid set of options for accomplishing service.  And then, "[o]nce served, a foreign state or political subdivision has 60 days to file a responsive pleading. §1608(d)." *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1054 (2019) (vacating three turnover orders by the Southern District of New York against property of Sudanese Government where plaintiffs served their complaint and default judgment upon the Sudanese Embassy in Washington, D.C. rather than according to the specific requirements of the FSIA).  Plaintiffs here have not served any paperwork on the government of Afghanistan, which is responsible for the Afghan funds, under the FSIA.

Finally, the Magistrate Judge also found that the "Amduso Plaintiffs have no cognizable

interest in these funds", *id.* at 6, yet the current Plaintiffs suffer from the same infirmity, thus Intervenors' purported lack of interest hardly disqualifies their participation.

For all the following reasons, the Magistrate Judge erred and Intervenors have a right to intervene in this action.

## II.   INTERVENORS HAVE THE SAME INTEREST AS PLAINTIFFS IN THE AFGHAN FUNDS

The Court cannot dismiss Intervenors' motion as they have the same right to the Afghan funds as do Plaintiffs.  If the Court dismisses Intervenors' motion, then it must also rule that Plaintiffs have no right to the Afghan funds as well.

Intervenors have the same connection and interest in the assets held in the name of the Central Bank and foreign state of Afghanistan at the Federal Reserve of New York as do Plaintiffs in this case.  Plaintiffs do not hold judgment against the assets, the Afghanistan Central Bank, or the foreign state of Afghanistan. Such action would have required that they proceed under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.* and satisfy the requirements of the FSIA, (i) in obtaining jurisdiction against the foreign state of Afghanistan, *see* 28 U.S.C. §§ 1605, 1605A, 1605B; (ii) in completing service of their complaint, *see* 28 U.S.C. § 1608(a); (iii) in completing service of their judgment, *see* 28 U.S.C. § 1608(e); and (iv) in satisfying the burden of proof necessary to obtain the judgment, *see* 28 U.S.C. § 1608(e). Instead, the Plaintiffs sought and obtained a judgment against the Taliban as "a non-sovereign party"[1] even though the Taliban controlled and directed the government of Afghanistan in the years leading to, and at the time of, the September 2001 attacks.[2]

---

[1] Memorandum Decision and Order, No. 03-cv-09848 (GBD), Dkt. #316, at 1 (Oct. 3, 2012); Order and Judgment, No. 03-cv-09848 (GBD), Dkt. #317 (filed Oct. 16, 2012).

[2] *See also* Order of Judgment, No. 03-cv-09848 (GBD), Dkt. #295 at 3 (Dec. 22, 2011) (entering default judgment on liability against "Non-Sovereign Defendants," including "The Taliban, a/k/a The Islamic

The Plaintiffs sought and the Court directed that judgment be entered against "certain non-sovereign defendants, including Osama bin [L]aden, the Taliban, and al Qaeda."[3]  Yet, the Plaintiffs now rely on that October 2012 judgment against the non-sovereign Taliban to attach the funds of the foreign state of Afghanistan and its central bank currently held by the Federal Reserve System.[4]  Even if the Plaintiffs had followed the FSIA in obtaining their judgment against the non-sovereign Taliban, the FSIA prohibits all judgment creditors from attachment and execution upon the property or funds of a foreign state where the subject "property is that of a foreign central bank or monetary authority held for its own account." 28 U.S.C. § 1611(b)(1).

Further, the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 (2002) ("TRIA"), does not authorize and support judgment execution against the blocked assets of the Central Bank of Afghanistan and the foreign state of Afghanistan because they have never been a "terrorist party" within of the meaning of TRIA, § 201(d)(4). "The State of Afghanistan has not been designated as a state sponsor of terrorism, nor have its agencies or instrumentalities been designated under other counterterrorism sanctions authorities." Statement of Interest of the United States of America, Dkt. #563 at 20 (Feb. 11, 2022).  Under like circumstances, the Court of Appeals for the Second Circuit denied an attempt to execute against the property of a foreign state.  In *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993, 999 (2d Cir. 2014), *cert. denied*, 577 U.S. 1113 (2016), the Court of Appeals rejected an effort to attach North Korean funds pursuant to TRIA because North Korea was not a designated state sponsor

---

Emirate of Afghanistan").
[3] Memorandum Decision and Order, Dkt. #316 at 1.  The Plaintiffs at the same time sought and the Court directed that judgment be entered against "certain sovereign defendants, including the Islamic Republic of Iran" and other Iranian agents, agencies and instrumentalities. *Id.*  Neither the foreign state of Afghanistan nor any agency or instrumentality of Afghanistan was among those "certain sovereign defendants."
[4] *See* Feb. 14, 2022 Declaration by Plaintiffs' Counsel in Support of Motion to Lift Stay of Judicial Enforcement of Writ of Execution and Exhibit 1, No. 03-cv-09848, Dkt. #556, #556-1 (attaching Writ of Execution in reliance on the October 16, 2012 Judgment).

of terrorism at the time the judgment was entered and, thus, not a "terrorist party" within the meaning of TRIA.

Plaintiffs' justification for their seizure of the assets lies in their injuries caused by Al Qaeda, which the then-government of Afghanistan sheltered and provided with safe harbor prior to, at the time of, and for a short period after the September 2001 terrorist attacks. Intervenors have the same claim.

Intervenors therefore seek a declaration from the Court. In view of the fact that neither Plaintiffs, the Intervenors, nor other judgment creditors have an explicit right to the Afghan funds, the only equitable solution would be that a distribution, if any, of the Afghan Funds be to all victims of state-sponsored terrorism holding valid final judgments via the United States Victims of State Sponsored Terrorism Fund (USVSST Fund).[5]

Pursuant to Federal Rule of Civil Procedure 24(a)(2), the Intervenors are entitled to intervene in this action under Federal Rule ofCivil Procedure 24(a)(2). That rule provides:

> On timely motion, the court must permit anyone to intervene who: … (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the mov'nt's ability to protect its interests, unless parties adequately represent that interest.

Thus, Rule 24(a)(2) contains four elements: (1) timeliness; (2) a cognizable interest; (3) the possible impairment of that interest; and (4) a lack of adequate representation. *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). The Intervenors demonstrably satisfyall of the criteria for intervention as of right.

"Motions to intervene are highly fact-specific and tend to resist comparison to prior cases." *Floyd v. City of New York*, 302 F.R.D. 69, 83 (S.D.N.Y. 2014), *aff'd in part, appeal dismissed in*

---

[5] *See generally,* http://www.usvsst.com/

*part*, 770 F.3d 1051 (2d Cir. 2014) (citing *Bay Casino, LLC v. M/V Royal Empress*, 199 F.R.D. 464, 466 (E.D.N.Y. 1999)). In deciding whether an applicant possesses a right to intervene, "courts are guided by practical and equitable considerations in an effort to balance 'efficiently administrating legal disputes by resolving all related issues in one lawsuit, on the onehand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand.'" *Floyd*, 302 F.R.D. at 83 (quoting *Pitney Bowes*, 25 F.3d at 69).

In this case, those equitable considerations counsel strongly in favor of granting Intervenors' request to intervene as of right.

### 1. <u>The Motion to Intervene is Timely</u>

Not until February 11, 2022, and the actions of the President and United States on that day, did there exist a plausible avenue of recovery against the Afghan funds. Although an intervention as of right is generally mandatory if its requirements are satisfied, "the determination of the timeliness of a motion to intervene is within the discretion of the district court." *Farmland Dairies v. Comm'r of the N.Y. State Dep't of Agric. & Mkts.*, 847 F.2d 1038, 1043–44 (2d Cir. 1988); *see also In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198 (2d Cir. 2000) ("A district court has broad discretion in assessing the timeliness of a motion to intervene, which defies precise definition." (internal quotation marks and citation omitted)). The timeliness requirement "is flexible," *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594–95 (2d Cir. 1986), and should be determined "from all the circumstances," *Pitney Bowes*, 25 F.3d at 70. Accordingly, a district court "must not consider merely the length of time the litigation or proceeding has been pending." *Yonkers Bd. of Educ.*, 801 F.2d at 594–95; *see also Cook v. Bates*, 92 F.R.D. 119, 122 (S.D.N.Y. 1981) ("While an application for intervention of right must be 'timely' [, i]n the absence of prejudice to the opposing party, even significant tardiness will not foreclose intervention."). "Since in situations in which intervention as of right the would-be intervenor may be seriously harmed if

intervention is denied, courts should be reluctant to dismiss such a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive." Wright *et al.*, 7C Fed. Prac. & Proc. Civ. at § 1916.

To assist trial courts in determining the timeliness of a motion to intervene, the Second Circuit has developed the following four nonexclusive factors that courts should consider: "(1) how long the applicant had notice of the interest before [he] made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (internal quotation marks and citation omitted). Of these four factors, "the most significant criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties." *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y. 2000) (internal quotation marks and citation omitted). All of these factors support Intervenors' Motion.

Intervenors would suffer substantial prejudice if their motion to intervene is denied. Their total final judgments are worth more than $4.3 billion in compensatory damages, and it is unlikely that sufficient collectible assets will become available in the future. Accordingly, if this Court were to deny Intervenors' motion to intervene, this Court would likely forever deny justice to many victims of terrorism, who are equally deserving of justice as the 9/11 plaintiffs.

In contrast to the substantial prejudice that Intervenors would suffer if their motion to intervene were denied, if the motion to intervene is granted, any prejudice to the existing parties would be minimal. Intervenors all have final judgments and their damages have been reduced to a final number, thus granting the motion to intervene would not raise new or distinct factual issues for resolution.

The strength of the equities at issue here constitutes an unusual circumstance that weighs

strongly in favor of granting Intervenors' motion to intervene as of right.  *See Dow Jones & Co. v. U.S. Dep't of Justice*, 161 F.R.D. 247, 253 (S.D.N.Y. 1995) (holding that "unusual circumstances" justified granting a motion by a widow to intervene as of right in a Freedom of Information Act case seeking to compel disclosure of her husband's suicide note due to the amount of pain that such a disclosure would cause their family).  Denying the motion to intervene is likely tantamount to permanently denying Intervenors' ability to assert its interests.  Moreover, granting the motion to intervene serves an important public policy function by signaling that, in cases like this one involving the property of a foreign state which has not previously been held liable, compensation (a) should be allocated, if at all, equitably to all terrorism victims but only consistent with law and (b) should not be determined by a race to the courthouse where the Government agrees or determines not to take an ultimate position "at this stage."

      **2.**      **<u>Intervenors Have a Substantial Interest in the Distribution of the Funds Subject to this Litigation and that Interest Would Be Impaired Were Their Intervention Motion Denied</u>**

"The right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers of Am*., 473 F.2d 118, 130 (D.C. Cir. 1972). An applicant possesses an interest sufficient to intervene by right if that interest is "direct, substantial, and legally protectable."  *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (internal quotation marks and citation omitted). Nevertheless, Rule 24's "interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Cnty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (internal quotation marks and citation omitted). Accordingly, an applicant's interest in intervention is sufficient, for instance, "when the intervenor claims an identifiable interest in funds that are the subject of litigation."  7C Charles

Alan Wright *et al*., *Federal Practice & Procedure* § 1908.1 (3d ed. 2014). Rule 24's impairment requirement is similarly based on "the practical disadvantage suffered, and does not require the would-be intervenor to go so far as to show that res judicata *principles* would affect any later suit they might bring." *Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 87 (D. Conn. 2014) (internal quotation marks and citation omitted).[6]

Whatever the ultimate nature and extent of their interest in funds of the foreign state of Afghanistan and its central bank, the interest of the Intervenors and Plaintiffs is the same. Both groups of victims were injured as a result of the provision of safe harbor and support to Al Qaeda by the Taliban-led government of Afghanistan and therefore have the same interest in the subject Afghan funds. Neither the Plaintiff nor the Intervenors secured a judgment against the foreign state of Afghanistan.

### 3.    Impairment

Moreover, Intervenors' interest in the limited funds would be significantly impaired were their intervention motion denied. As discussed above, the total value of the final judgments resulting from Al Qaeda terrorism far exceeds the value of the available collectible assets. Intervenors' final judgments exceed $4 billion in compensatory damages. Accordingly, denying Intervenors' motion, and distributing the Afghan funds in their absence, would impair their ability to achieve redress—through any mechanism—for the injuries they and other similarly situated judgment creditors have

---

[6] "In *Restor–A–Dent Dental Lab., Inc*., [725 F.2d 871, 874 (2d Cir. 1984),] the [Second Circuit] concluded that the 1966 amendments to Fed. R. Civ. P. 24(a) were intended to expand the right to intervene beyond those situations where the proposed intervenor 'is or may be bound by a judgment in the action' or where the 'applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof.'" *Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 100 (E.D.N.Y. 1996) (quoting original Fed. R. Civ. P. 24(a)(2) and (3)). After the 1966 amendments, an applicant need only show that she "would be substantially affected in a practical sense by the determination made in an action." Fed. R. Civ. P. 24 advisory committee's note, 1966 Amendment, Federal Civil Judicial Procedure and Rules, at 104.

suffered at the hands of Al Qaeda.  Intervenors have shown that Rule 24(a)'s impairment prong is satisfied.

### 4.    Intervenors' Interests Are Not Adequately Represented by the Existing Parties

Although the burden to demonstrate the inadequacy of representation of interests is on the intervenor, that burden is minimal and not onerous.        *Hoblock v. Albany Cnty. Bd. Of Elections*, 233 F.R.D. 95, 99 (N.D.N.Y. 2005); *see also U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978). In determining whether a proposed intervenor's interest is being adequately represented by existing parties, courts in this Circuit often look to whether there is evidence of "(1) collusion; (2) adversity of interest; (3) possible nonfeasance; or (4) incompetence." *Dorsett v. Cnty. of Nassau*, 283 F.R.D. 85, 93 (E.D.N.Y. 2012) (internalquotation marks and citation omitted); *see also British Airways Bd. v. Port Auth. of N.Y. & N.J.*, 71 F.R.D. 583, 585 (S.D.N.Y. 1976).

Here, while the Intervenors' claims are substantially similar to those in the original action and arise out of similar incidents, the current Plaintiff victims are represented by separate counsel who represent only the interests of their clients.  The existing parties seek to further their individual interests in recovery.  Given the limited fundsavailable, those efforts necessarily come at the expense of other victims of the Iran-sponsored Al Qaeda terrorism. By contrast, Intervenors are pursuing a fair and equitable distribution of Afghan funds that ensures that all of Al Qaeda's victims are compensated for their injuries. This Court should conclude that because an "adversity of interests" exists between Intervenors and the existing parties, Intervenors have adequately demonstrated that they are not adequately represented in thislitigation.

### III.    THIS COURT SHOULD PERMIT THESE VICTIMS OF TERRORISM TO INTERVENE IN THIS ACTIONUNDER RULE 24(B).

Even if this Court denies Intervenors' motion to intervene as of right under Rule 24(a), it should grant their request for permissive intervention pursuant to Rule 24(b). Permissive

intervention may be granted when an intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).  In analyzing Rule 24(b)(1), "the words claim or defense are not to be read in a technical sense, but only require some interest on the part of the applicant." *Dow Jones*, 161 F.R.D. at 254. A district court has "broad discretion" in deciding whether to grant permissive intervention.  *N.Y. News, Inc. v. Kheel*, 972 F.2d 482, 487 (2d Cir. 1992). "The principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Pitney Bowes*, 25 F.3d at 73 (quoting former Fed. R. Civ. P. 24(b)(2)).

Permissive intervention is warranted here because Intervenors have the same or similar interest in the Afghan funds as the Plaintiffs  and both Intervenors and Plaintiffs were injured by the same party which facilitated the August 1998 and September 2001 acts of terrorism. Moreover, as previously explained, Intervenors' intervention motion is timely and prompted by The President's recent Executive Order and Justice Department's Statement of Interest.  Accordingly, if this court denies Intervenors' request to intervene as of right, it should nonetheless grant their request for permissive intervention.

## **CONCLUSION**

For the reasons set forth above, the Intervenors respectfully object to the Magistrate Judge's Order and request this Court grant their Motion to Intervene and declare that neither Intervenors nor Plaintiffs have an explicit right to the Afghan funds, thereby leaving any equitable distribution of the Afghan funds to victims of state-sponsored terrorism holding valid final judgments to the USVSST Fund.

Respectfully submitted,

Dated: March 7, 2022

/s/ Joh Arthur Eaves, Jr. *pro hac vice*
John Arthur Eaves, Jr. (MS Bar #8843)
Eaves Law Firm, LLC
101 North State Street
Jackson, MS 39201
(601) 355-7961
johnjr@eaveslawmail.com

Harry Rothenberg (HR 6795)
Adam Drexler      (AMD 7743)
The Rothenberg Law Firm LLP
450 7th Avenue, 44th Floor
New York, New York 10123
(212) 563-0100
harry@injurylawyer.com,
adrexler@injurylawyer.com

Nancy Guy Armstrong Miller
David Dickens
The Miller Firm, LLC
108 Railroad Avenue
Orange, VA 22960
(540) 672-4224

Steven R. Perles
Perles Law Firm, P.C.
816 Connecticut Avenue, N.W., 12th Floor
Washington, DC 20006
 (202) 955-9055

Gavriel Mairone
MM-Law LLC
980 North Michigan Avenue, Suite 1400
Chicago, IL 60611
(312) 253-7444

William Wheeler
Wheeler & Franks Law Firm, P.C.
114 S. Broadway
Tupelo, MS 38804
(662) 636-6055