# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br><br>ECF Case |

This document relates to:  *All Consolidated Amended Complaint (ECF No. 3463) Cases*

### PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION PURSUANT TO FED. R. CIV. P. 54(b) AND THE COURT'S INHERENT POWERS TO REVISE THIS COURT'S MARCH 28, 2018 ORDER (ECF NO. 3946)

March 9, 2022

# **TABLE OF CONTENTS**

I.  Section 1605B Provides Jurisdiction Over Aiding and Abetting Claims Defined by
    *Kaplan* and *Honickman*...................................................................................................1

II. *Kaplan* and *Honickman* Require Reconsideration of Principal Holdings Regarding
    Support to al Qaeda Provided Via the Charities and Individuals ..............................7

CONCLUSION.................................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atchley v. AstraZeneca UK Ltd.*,
22 F.4th 204 (D.C. Cir. 2022) ........................................................................ *passim*

*Doe v. Bin Laden*,
580 F. Supp. 2d 93 (D.D.C. 2008), *aff'd per curiam*, 663 F.3d 64 (2d Cir.
2011) ..............................................................................................................4, 6

*Doe v. Bin Laden*,
663 F.3d 64 (2d Cir. 2011)....................................................................................4

*Halberstam v. Welch*,
705 F.2d 472 (D.C. Cir. 1983) ....................................................................... *passim*

*Hibbs v. Winn*,
542 U.S. 88 (2004).................................................................................................3

*Honickman v. BLOM Bank SAL*,
6 F.4th 487 (2d Cir. 2021) ............................................................................. *passim*

*Kaplan v. Lebanese Canadian Bank, SAL*,
999 F.3d 842 (2d Cir. 2021)........................................................................... *passim*

*Kilburn v. Socialist People's Libyan Arab Jamahiriya*,
376 F.3d 1123 (D.C. Cir. 2004) ...........................................................................5

*Linde v. Arab Bank, PLC*,
882 F.3d 314 (2d Cir. 2018).................................................................7, 8, 12, 14

*Owens v. Republic of Sudan*,
864 F.3d 751 (D.C. Cir. 2017), *vacated sub nom. Opati v. Republic of Sudan*,
140 S. Ct. 1601 (2020)....................................................................................9, 10

*Pfizer, Inc. v. Gov't of India*,
434 U.S. 308 (1978)...........................................................................................3, 4

*In re Platinum-Beechwood Litig.*,
453 F. Supp. 3d 645 (S.D.N.Y. 2020)..................................................................9

*Price v. Socialist People's Libyan Arab Jamahiriya*,
389 F.3d 192 (D.C. Cir. 2004) ...........................................................................15

*Primavera Familienstifung v. Askin*,
   130 F. Supp. 2d 450 (S.D.N.Y.), *amended on recons. in part*, 137 F. Supp. 2d
   438 (S.D.N.Y. 2001) ...................................................................................................9

*Rowland v. Cal. Men's Colony*,
   506 U.S. 194 (1993) ...................................................................................................4

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995) .......................................................................................14

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*,
   346 F. Supp. 3d 473 (S.D.N.Y. 2018) .......................................................................9

*In re Terrorist Attacks on September 11, 2001*,
   392 F. Supp. 2d 539 (S.D.N.Y. 2005) .....................................................................14

*USAA Cas. Ins. Co. v. Perm. Mission of the Republic of Namibia*,
   681 F.3d 103 (2d Cir. 2012) .....................................................................................15

*U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*,
   352 F. Supp. 3d 242 (S.D.N.Y. 2019) .....................................................................14

*United States v. LoRusso*,
   695 F.2d 45 (2d Cir. 1982) .......................................................................................14

**Statutes**

1 U.S.C. § 1 ...................................................................................................................3

18 U.S.C. § 1605(a)(5) ...............................................................................................4, 5

18 U.S.C. § 2331 .........................................................................................................3, 4

18 U.S.C. § 2333 ......................................................................................................3, 5, 6

28 U.S.C. § 1605B ................................................................................................. *passim*

28 U.S.C. § 1605B(b)(2) ............................................................................................5, 8

Justice Against Sponsors of Terrorism Act ("JASTA"), Pub. L. No. 114-222, 130
   Stat. 852 (2016) ................................................................................................. *passim*

**Legislative Materials**

162 Cong. Rec. 6093 (2016) ......................................................................................3, 5

162 Cong. Rec. 12,170 (2016) ......................................................................................2

162 Cong. Rec. 13,803 (2016) ......................................................................................2

162 Cong. Rec. 13,809 (2016) ...................................................................................2

162 Cong. Rec. 13,913 (2016) ...................................................................................2

**Other Authorities**

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* (5th ed. 1984) ............................6

*Restatement (Second) of Torts* (1979) ...........................................................................6

*Restatement (Third) of Torts: Intentional Torts to Persons* (Am. L. Inst. Tentative
    Draft No. 3, Apr. 6, 2018) ...................................................................................6

Plaintiffs respectfully submit this Reply to Saudi Arabia's Opposition to Plaintiffs' Motions to Revise This Court's March 28, 2018 Order (ECF No. 7648) ("Opp'n" to Plaintiffs' Memo of Law in Support of its Reconsideration Motion (ECF No. 7432) ("Recons. Mot.")).

For the reasons described below, *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021), *Honickman v. BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021), and related recent cases require reconsideration of this Court's March 28, 2018 Order (ECF No. 3946).  Congress designed Section 1605B to provide jurisdiction over aiding and abetting claims such as plaintiffs', and *Kaplan* and *Honickman* show the adequacy of plaintiffs' primary and secondary liability claims including for purposes of establishing jurisdiction.  Thus, granting reconsideration is necessary to give effect to controlling Second Circuit decisions and to advance interests in judicial efficiency by avoiding unnecessary and resource-depleting disputes related to jurisdictional discovery and proof.

## I.   Section 1605B Provides Jurisdiction Over Aiding and Abetting Claims Defined by *Kaplan* and *Honickman*.

The Kingdom's effort to sidestep the jurisdictional implications of *Kaplan* and *Honickman* rests on a basic, erroneous premise:  even though Congress unquestionably sought to empower federal courts to address the broadest range of claims against foreign states that support terrorists who cause damage in the United States, Congress's pen slipped terribly in drafting Section 1605B. According to the Kingdom, Congress's drafting failed to provide jurisdiction over the principal claims JASTA expressly authorized:  ATA claims against foreign states and particularly the Kingdom for aiding and abetting terrorism.  *See* Opp'n at 2, 7-9.  As a result, the scope of liability for aiding and abetting acts of terrorism, as defined by *Kaplan* and related cases, is "irrelevant" to the scope of Section 1605B.  *Id.* at 7; *see id.* at 1 ("not even relevant").

The short answer to the Kingdom's claim lies in this Court's prior, correct determination

and in the Kingdom's own pleadings.  The March 28, 2018 Order recognized that Section 1605B's "jurisdictional causation under the FSIA is distinct from and more liberal than the substantive causation elements of any one claim" and that 1605B imposes a "lighter burden" than the causation "necessary to state claims under the ATA."  ECF No. 3946 at 13 n.8; *see id.* at 13-14 (legislative history).  This principle simply reflects Congress's design to have Section 1605B facilitate all potential claims against foreign states that support terrorist organizations that cause damage in the United States.  *See infra* pp. 2-4; Justice Against Sponsors of Terrorism Act ("JASTA"), Pub. L. No. 114-222, § 2(b), 130 Stat. 852, 853 (2016).  Plaintiffs' ATA and common law aiding and abetting claims are among such claims.  *Kaplan* and related cases authoritatively address what constitutes a valid ATA aiding and abetting claim, including for purposes of causation, and thus bear directly on what claims Section 1605B authorizes to proceed.[1]  In addition, the Kingdom had argued at length that the standards reflected in ATA claims should guide the construction of Section 1605B, *see* Mem. Supp. Renewed Mot. to Dismiss of the Kingdom of Saudi Arabia (ECF No. 3668) ("MTD") at 14-18, Reply Mem. Supp. MTD (ECF No. 3851) at 9-12, yet it now argues that such ATA claim standards are "irrelevant" to applying Section 1605B.

The more detailed answer begins with the fact that Congress clearly designed Section 1605B to ensure "that foreign states may be brought to justice for aiding and abetting acts of international terrorism that occur on American soil."  162 Cong. Rec. 12,170 (2016) (Rep. Nadler, a leading House co-sponsor of JASTA).[2]  The purpose of the *entire* statute, including the provision

---

[1] Contrary to the Kingdom's claim (Opp'n at 11), plaintiffs' Reconsideration Motion from the outset clearly made this connection between *Kaplan* and *Honickman*, the scope of aiding/abetting liability, and jurisdiction under Section 1605B.  *See* Recons. Mot. at 1 (JASTA "as previously canvassed clearly extended the exception to foreign sovereign immunity to circumstances where a claim of aiding and abetting terrorist attacks in the United States is adequately pled"); *id.* at 2, 3; *see also* Pls.' Opp'n to Renewed Mot. to Dismiss of the Kingdom of Saudi Arabia and Saudi High Commission for Relief of Bosnia & Herzegovina (ECF No. 3782) ("Opp'n to MTD") at 4-9, 17-18.

[2] *See also* 162 Cong. Rec. 13,913 (2016) (JASTA subjects a foreign state to suit if it "aids and abets from outside the United States") (Rep. Goodlatte); *id.* at 13,809 (JASTA designed "to make sure Saudi Arabia or any other country" is subject to suit "if they aid and abet terrorism") (Sen. Schumer); *id.* at 13,803 (JASTA ensures courts will determine

2

adding Section 1605B to the FSIA, is to "provide civil litigants with the broadest possible basis …
to seek relief against … foreign countries … that have provided material support, directly or
indirectly, to foreign organizations or persons that engage in terrorist activities against the United
States."  JASTA § 2(b); *see id.* § 2(a)(6) (Act designed to provide remedies against "[p]ersons,
entities, or *countries*" that provide aid to foreign terrorist organizations threatening the United
States (emphasis added)).  Indeed, subjecting foreign states to such aiding and abetting claims, and
reversing the outcome of prior court decisions to the contrary, was the point of JASTA's two
principal provisions.  *See id.* § 3 (FSIA jurisdiction); *id.* § 4 (ATA aiding and abetting).  Any
statute must be read to harmonize and give effect to all of its provisions, *Hibbs v. Winn*, 542 U.S.
88, 101 (2004), and *Kaplan* instructs that the Act's remedial purpose is the touchstone for
construing JASTA, which of course includes Section 1605B.  *See Kaplan*, 999 F.3d at 854-56.

That Congress intended to facilitate aiding and abetting claims against foreign states and
crafted Section 1605B to that end also makes nonsense of the Kingdom's argument that Congress
used the Dictionary Act to protect foreign states from ATA aiding and abetting and conspiracy
liability altogether (Opp'n at 17) when, in fact, Congress employed the Act to *expand* such liability.
Congress referred to the Dictionary Act to ensure that terrorist organizations are included within
the scope of "person[s]" to whom the provision of support gives rise to liability.  *See* 18 U.S.C. §
2333(d); *compare* 18 U.S.C. § 2331(3) (limiting definition of person to those "capable of holding
a legal or beneficial interest in property").  The Dictionary Act is generally used, non-exhaustively,
to expand the scope of referenced entities, as its term "includ[ing]" and its qualification "unless
the context indicates otherwise" confirm.  1 U.S.C. § 1; *see Pfizer, Inc. v. Gov't of India*, 434 U.S.

---

whether "the Saudi Government . . . aided and abetted one of the most massive crimes") (Sen. Blumenthal); *id.* at
6093 ("I want to make clear beyond a shadow of a doubt that every entity, including foreign states, will be held
accountable if they are found to be sponsors of the heinous act of 9/11," and JASTA addresses "[t]he fact that some
foreign governments may have aided and abetted terrorism" leading to the attacks) (Sen. Schumer).

308, 312 n.9 (1978) (antitrust laws apply to foreign states because those laws' similar definition of "person" is "inclusive" and "does not by itself imply that a foreign government ... falls without its bounds"). For this and related reasons, the Act will not be applied to limit a statute contrary to its intended purpose. *See Rowland v. Cal. Men's Colony*, 506 U.S. 194, 209-10 (1993) (Dictionary Act not to be applied to "frustrate th[e] purpose" of a statute). In any event, the Kingdom's argument, even if valid, would not apply to plaintiffs' state and federal common law claims, which also include secondary liability claims informed by *Kaplan* and *Honickman*.

The Kingdom invites this Court to find a conflict between JASTA's remedial purpose and Section 1605B's terms, and indeed its entire argument rests on the existence of this conflict. *See* Opp'n at 2, 9. But no such conflict exists. Elementary canons of statutory construction and *Kaplan*'s direction to construe JASTA to achieve its broad remedial purpose suffice to defeat the argument. In addition, Section 1605B's general, open-ended terms "tortious act" and "caused by" are naturally read to encompass the acts and causation reflected in all tort claims that plaintiffs might seek to pursue, including aiding and abetting claims. These terms track the "caused by" and "tortious acts" language of the parallel FSIA immunity exception for torts that Section 1605B was designed to expand, 18 U.S.C. § 1605(a)(5), which "is cast in general terms pertaining to all tort actions for money damages." *Doe v. Bin Laden*, 580 F. Supp. 2d 93, 97 (D.D.C. 2008), *aff'd per curiam*, 663 F.3d 64 (2d Cir. 2011) (addressing 9/11 attacks). Indeed, the Second Circuit's conclusion in *Doe* that secondary liability claims related to the 9/11 attacks fell within Section 1605(a)(5)'s scope, and its endorsement of Ninth Circuit cases permitting secondary liability claims under that provision, should alone resolve the matter here against the Kingdom. *See Doe*, 663 F.3d at 68-71.

Sections 1605(a)(5) and 1605B both provide for jurisdiction over the full range of potential

4

tort claims, subject only to specified exceptions.  Congress intended this result to be achieved through "doctrines such as … secondary liability."  162 Cong. Rec. 6093 (2016) (leading Senate co-sponsors).  And, as noted, the "caused by" language reflects a low, "*jurisdictional* causation" standard facilitating all potential "state, federal, foreign, and international law" claims, where each such claim "carr[ies] with it – as a matter of substantive law – its own rules of causation" to be addressed only at the merits stage.  *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1129 (D.C. Cir. 2004); *see* 162 Cong. Rec. 6093 (2016) (Sen. Cornyn, with Sen. Schumer concurring) (Section 1605B's "caused by" language intended to be governed by "cases like *Kilburn* … the analysis of which we intend to incorporate here"); *supra* p. 2.

Accordingly, Section 1605B's terms readily support jurisdiction over claims for aiding and abetting and conspiracy (using their causation standards).[3]  The phrase "[t]ortious act or acts of the foreign state, or of any official, employee, or agent, of that foreign state," 28 U.S.C. § 1605B(b)(2), naturally includes providing material support and other acts that constitute aiding and abetting terrorist organizations.  Providing material support that facilitates a terrorist attack is itself a tortious act, *see* 18 U.S.C. § 2333(a) & (d), and an ATA aiding and abetting claim is "a private right of action in tort."  *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 214 (D.C. Cir. 2022).  Moreover, the acts of all parties engaged in concerted action leading to a terrorist attack, including those of the 9/11 hijackers, are attributed to the other parties, including those, like the Kingdom, alleged to have aided and abetted the attack.  An aiding and abetting claim is a "joint tort" reflecting "concerted action" whereby "[e]ach [participant] was responsible for the others' actions."

---

[3] Contrary to the Kingdom's claim (Opp'n at 2), plaintiffs previously argued for a "reasonable connection" standard tied to *Halberstam* and a more direct secondary liability theory of causation:  that Section 1605B's causation standard is satisfied for aiding and abetting claims "because those who … aid and abet the attack are part of the broader enterprise causing harm, and have just as much caused the attack as the attackers themselves."  Opp'n to MTD at 20-21.

*Halberstam v. Welch*, 705 F.2d 472, 476-77 (D.C. Cir. 1983); *id.* at 482 ("joint tort liability").  For such secondary liability claims, "the acts of one defendant may be imputed to another."  *Doe*, 580 F. Supp. 2d at 98 (conspiracy).  Indeed, *Halberstam* focused on the abettor's "aware[ness] of his role as part of *an overall illegal or tortious activity*," indicating that the abettor participates in the entire concerted activity, and holds the abettor "responsible for other foreseeable acts" undertaken as part of that concerted activity.  *Halberstam*, 705 F.2d at 477, 483 (emphasis added).  *Halberstam* applied the *Restatement (Second) of Torts* § 876(b) (1979), which provides that "[i]f the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act."  *Id.* cmt. d.  The current draft of the *Third Restatement* explains that, under that approach, "when defendants acted in concert, they will each be deemed *factual causes* of all torts committed in the context of their participation without regard to the normal rules of causation."  *Restatement (Third) of Torts: Intentional Torts to Persons* § 10 cmt. g (Am. L. Inst., Tentative Draft No. 3, Apr. 6, 2018) (emphasis added).  *Halberstam* also invoked *Prosser on Torts*, which instructs that for such secondary liability claims, "there is a … mutual agency, so that the act of one is the act of all."  W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 52, at 346 (5th ed. 1984).  Likewise, an adequately pled aiding and abetting claim can be viewed as establishing the "reasonable connection," for purposes of proximate causation, between the abettor's material support for terrorists and the resulting attacks.  *See infra* pp. 9-12; Opp'n to MTD at 20-21.

Under any of these formulations, the result is the same:  damage resulting from a terrorist attack is "caused by" those who act in concert with the terrorists by providing material support to them.  That is, Section 1605B's "tortious acts" and "caused by" terms are satisfied if the claim qualifies as one for aiding and abetting under *Halberstam*, as further construed by *Kaplan* and

related cases.  Congress clearly intended this result and drafted language to achieve it.  That result makes those decisions directly relevant to construing Section 1605B.

## II.   *Kaplan* and *Honickman* Require Reconsideration of Principal Holdings Regarding Support to al Qaeda Provided Via the Charities and Individuals.

For reasons set out in Part I, *Kaplan* and *Honickman* require, contrary to the Kingdom's claims (Opp'n at 10-16), reconsideration of holdings of the March 28, 2018 Order regarding support to al Qaeda provided by the Kingdom both via the charities and via particular individuals associated with the Kingdom.

The Charities.  Because Congress intended Section 1605B to facilitate aiding and abetting claims and Section 1605B's language readily supports that result, *see supra* Part I, *Kaplan* and *Honickman* show that claims based on the Kingdom's direct or indirect provision of material support to al Qaeda, including via the charities, fall within Section 1605B.

In particular, the March 28, 2018 Order faulted plaintiffs' pleadings for not establishing attribution of the attacks to the Kingdom (ECF No. 3946 at 31-36) or causation (*id.* at 36-37).  However, for both conclusions, the decision did not analyze the aiding and abetting and other implications of the extensive factual allegations establishing the Kingdom's provision of material support to the charities that amounted to direct and indirect support to al Qaeda – in the form of money, logistical support, the efforts of Saudi officials working directly with and for the charities and its al Qaeda members and beneficiaries, and otherwise.  *See id.* at 17-18 (considering support only in the form of "passport assistance"); *compare* Opp'n to MTD at 56-65 (collecting allegations of support); Plfs.' Averment of Facts and Evid. Supp. Their Claims ¶¶ 115-29, 285-580 (ECF No. 3463-1) ("Aver.").  Aiding and abetting liability, as set out in *Kaplan*, *Honickman*, *Atchley,* and *Linde v. Arab Bank, PLC*, 882 F. 3d 314 (2d Cir. 2018), arises from that full scope of support to al Qaeda undertaken by or otherwise attributed to the Kingdom, including through intermediaries.

7

*See* Recons. Mot. at 11-21.  Section 1605B provides jurisdiction over claims based on the "act or acts of the foreign state" *in addition to* acts of individuals associated with the state.  28 U.S.C. § 1605B(b)(2).  Acts of individuals affiliated with the Kingdom and working with and for the charities (and thus directly with al Qaeda) also readily support the aiding and abetting claims.[4]

*Kaplan* and related cases in particular require reconsideration of the Court's conclusion that the Kingdom's and associated individuals' material support provided to al Qaeda was "too temporally and geographically remote" from the 9/11 attacks themselves.  ECF No. 3946 at 37; *see id.* at 25, 26.  An adequately pled aiding and abetting claim establishes the requisite causation between the provision of support to al Qaeda and the 9/11 attacks.  *See Kaplan*, 933 F.3d at 856-57, 860 (*Halberstam* elements plus foreseeability of harm provide requisite connection).  This is so whether the Kingdom's support is viewed as "joint action" directly causing the attack; "mutual agency" (underscored by the addition of "agent" to Section 1605B); or other attribution to the Kingdom of all acts undertaken as part of the concerted activity.  *See supra* pp. 1-6.  *Linde* is especially clear on this point, holding that with respect to an ATA aiding and abetting claim against the provider of material support to terrorists, the terrorists' attack satisfies causation for all parties to the concerted action, including the providers of material support.  *See Linde*, 882 F.3d at 331. The March 28, 2018 Order's recognition that Section 1605B's "jurisdictional causation under the FSIA is distinct from and more liberal than the substantive causation elements of any one claim," ECF No. 3946 at 13 n.8, also requires a finding that causation has been adequately pled, because Section 1605B's causation cannot be more rigorous than the causation standard associated with an aiding and abetting claim.

---

[4] *See* Aver. ¶¶ 82, 83, 115-29, 294-95, 304-06, 312, 345-61, 375-78, 380-96, 403-06, 410-14, 417, 421-23, 450, 454-55, 459-61, 470, 490-92, 526-28, 530, 535-41, 548-51, 553, 564-67, 578-80 (Kingdom and al Qaeda personnel working at senior and operational levels in charities).

As an alternative basis for this conclusion, causation also arises from the "reasonable connection" or proximate cause that exists between the support to al Qaeda and the attack.  The Kingdom's provision of "substantial assistance" to al Qaeda for purposes of aiding and abetting was plainly alleged adequately under *Kaplan* (and is undisputed here by the Kingdom).  Establishing "substantial assistance" also provides the requisite connection for proximate cause, because "[t]he substantial assistance element has been construed as a causation concept," *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 510 (S.D.N.Y. 2001), *amended*, 137 F. Supp. 2d 438 (S.D.N.Y. 2001), and "embedded in the substantial assistance element is the concept of proximate causation," *In re Platinum Beechwood Litig.*, 453 F. Supp. 3d 645, 650 (S.D.N.Y. 2020) (Rakoff, J.); *see Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 487 (S.D.N.Y. 2018) (Oetken, J.) (same).  That is clearly so because the *Halberstam* analysis assesses whether support to the terrorist organization's activities is sufficiently linked to the resulting harm (the "general awareness" and "substantially assist" elements), and holds the abettor liable for harm "foreseeably" resulting from the concerted action.  *See Kaplan*, 999 F.3d at 856-57; *id.* at 860-61 (terrorist attack the natural and foreseeable result of supporting terrorists); *compare Owens v. Republic of Sudan*, 864 F.3d 751, 794 (D.C. Cir. 2017) (proximate cause if support to terrorists a substantial factor and harm is foreseeable).  Because substantial assistance under *Kaplan* is clear here, so is proximate cause.

Furthermore, the March 28, 2018 Order applied the causation test of *Owens*, ECF No. 3946 at 14, and *Atchley* also applied that test and shows why it is met here.  In *Atchley*, the D.C. Circuit adopted the proximate cause analysis and other points urged on it by plaintiffs' counsel there, who are also the Kingdom's counsel here.  *See* Attachments A & B to Affirmation of J. Scott Tarbutton ("Affirm.").  Under that test, to establish the "reasonable connection," or proximate causation,

between support for terrorism and the terrorist attack, the support must have been a "substantial factor in the sequence of events" and the resulting injuries "reasonably foreseeable … as a natural consequence" of such support. *Owens*, 864 F.3d at 794 (citations omitted); *Atchley*, 22 F.4th at 226. In the terrorism context, the "substantial factor" element is satisfied by a defendant's provision of "cash and cash equivalents to the terrorist organization that harmed plaintiffs, which allowed that organization to grow." *Atchley*, 22 F.4th at 227. And, as for the second element, the standard is met if "[i]t was reasonably foreseeable that financially fortifying [the terrorists] would lead to the attacks," for example, because the aid assisted "a known terrorist group, led by an anti-American cleric." *Id.* No nexus to the particular attack is required, and causation is satisfied even by "indirect" support, *id.* at 226-27, which matches *Kaplan*'s conclusions for aiding and abetting. *See* Recons. Mot. at 6-7. The Kingdom's support to al Qaeda was much more extensive and direct than the defendants' support to the terrorist organization in *Atchley*, so proximate cause follows *a fortiori*.

And finally, in orders denying the Rule 12(b)(6) motions of IIRO, Al Haramain, and WAMY, this Court concluded that proximate cause was established by material support those organizations provided to al Qaeda, with no further link to the 9/11 attacks required. *See* ECF No. 1256 at 25 (IIRO); ECF No. 2312 at 29-30 (WAMY), 30-32 (Al Haramain). That the Kingdom worked hand-in-glove with and for these entities and several other fronts for al Qaeda, and had Kingdom officials working as officers of these organizations, requires the same result for the Kingdom itself.

Other than mistakenly claiming that aiding and abetting claims cannot satisfy Section 1605B, the Kingdom's only argument on this point is that the complaint failed to establish the "general awareness" of the Kingdom as an "institution." Opp'n at 18. Section 1605B makes clear,

however, that participation in concerted tortious action by any affiliated employee, official, or agent provides jurisdiction over the Kingdom, and so the "general awareness" of any such affiliated individual is sufficient.  In any event, Saudi officials extensively worked in official roles within the charities[5] and were otherwise intimately familiar with the charities' function as conduits for al Qaeda through the Ministry of Islamic Affairs' own work with the charities,[6] local and international press reports,[7] the charities' own publications,[8] and reports from U.S. and other foreign officials that the charities were intertwined with al Qaeda and its terrorist activities.[9]  *See* Opp'n to MTD at 56-69 (collecting allegations).  More broadly, the pleadings document that the Kingdom created and supported the charities as platforms to support al Qaeda as an accommodation to the very extremists who were intertwined with al Qaeda.  Aver. ¶¶ 106-29.  These facts establish "general awareness of a pattern of illegal or tortious activity" far more

---

[5] *See* CAC ¶ 131 (leadership positions in the key charities are dominated by high-ranking Saudi officials); *id.* (senior Saudi officials in the charities' governing bodies); Aver. ¶ 479 (Saudi government ministers held supervisory roles over Al Haramain); Affirmation of Evan Francois Kohlmann (Nov. 9, 2017) (ECF No. 3738-9) ("Kohlmann II") at ¶ 88 (senior Saudi officials inserted into IIRO's governing bodies).

[6] *See* CAC ¶ 131 (Ministry of Islamic Affairs' supervisory role in the global operations of the charities); Aver. ¶¶ 115-29 (detailing the Ministry of Islamic Affairs' control and supervision over the activities of the charities); Aver. ¶¶ 440, 478 (Saudi Minister of Islamic Affairs served as the head of Al Haramain and WAMY); Kohlmann II ¶¶ 30, 88, 89 (the MWL, IIRO, Al Haramain, WAMY, and other charities act under the supervision and direction of the Ministry of Islamic Affairs and the Islamic Affairs offices of the local Saudi embassies and consulates); Kohlmann II ¶ 98 (Minister of Islamic Affairs appointed Al Haramain's Board of Directors and senior management personnel).  *See also* Opp'n to MTD at 61 (Saudi officials' role in al Haramain and IIRO at times of terrorist attacks).

[7] *See* Opp'n to MTD at 61 (citing ECF No. 2241-7 at ¶ 94 (international media organizations reporting that IIRO and Al Haramain offices in Kenya were banned in 1998 for supporting terrorism)); Kohlmann II at ¶ 176 (1999 Al Jazeera interview with Osama bin Laden identifying Wa'el Jelaidan, then an official of the Saudi Joint Relief Committee ("SJRC") and Rabita Trust (later designated as a Specially Designated Global Terrorist ("SDGT") entity pursuant to E.O. 13224), as one of al Qaeda's brothers); ¶ 178 (1999 New York Times article discussing IIRO director's orders to terrorists to attack U.S. Consulates); ¶ 204 (1998 AP report that Al Haramain was banned from Kenya for links to the 1998 U.S. Embassy bombings).

[8] *See* Kohlmann II at ¶¶ 205, 206, 208 (Al Haramain's English and Arabic newsletters, dated 1998-2000).

[9] *See* Opp'n to MTD at 60 (citing to Aver. ¶ 585 (foreign government officials from France, Egypt, and the United States repeatedly raised concerns about the activities of the al Qaeda charity fronts with the Saudi government in 1994, 1998, 1999, and 2000)), 60-61 (citing to 9/11 Commission Staff Monograph at 12 ("Since at least 1996 the U.S. intelligence community has developed information that various al Haramain branches supported jihadists and terrorists, including al Qaeda … .  The United States has raised al Haramain's involvement in terrorist financing with the Saudi government repeatedly, in different forms and through different channels, since 1998.")).

strongly than the smattering of public reports found sufficient in *Kaplan*, *Honickman*, and *Linde* or successfully advanced by the Kingdom's counsel in *Atchley*.  Consideration of all the alleged facts on a holistic basis, *see Kaplan*, 999 F.3d at 854, 865, makes this conclusion inescapable. Indeed, in its motion to dismiss, the Kingdom relied on a heavily redacted 2005 CIA assessment as key admissible "evidence" somehow exonerating the Kingdom.  *See* MTD at 5, 26.  Yet the U.S. government has recently released a less redacted version of that same document, placing the Ministry of Islamic Affairs and affiliated charities at the center of the activities supporting al Qaeda and further confirming the Kingdom's "general awareness" of the role it was playing in al Qaeda's activities.  *See* Attachment C to Affirm. (document as relied upon by the Kingdom, and declassified version with fewer redactions).

  <u>The Individuals</u>.  The result is the same for the Kingdom's material support to al Qaeda undertaken directly and indirectly through and by the individuals at issue.  As to the Kingdom's arguments regarding agency and attribution (Opp'n at 12-15), where the individuals are agents, employees, or officials, their acts are attributed to the Kingdom, and even where they are not (or are not acting within the scope of employment or agency), it is enough that the Kingdom supported them with a general awareness that they were using those resources to aid and abet al Qaeda (as would be the case when an individual acts closely or in concert with the Ministry of Islamic Affairs).  *See Kaplan*, 999 F.3d at 855-57; Recons. Mot. at 18-21.  Contrary to the Kingdom's claim (Opp'n at 15), plaintiffs have asserted secondary liability theories for some time, *see* Opp'n to MTD at 27, 32, 71; and in any event the facts alleged with respect to the individuals support jurisdiction on this basis whether or not they are agents or employees (given the Kingdom's knowing support), and *Kaplan's* focus on indirect support and the scope of aiding and abetting liability makes clear and provides a separate basis for their legal sufficiency.  And, whether or not

there is a direct connection between the individuals and the attacks, causation is, contrary to the Kingdom's claim (Opp'n at 15), satisfied by their participation in the adequately pled concerted action, *see supra* pp. 4-7, 8-9, or by the "reasonable connection" between their provision of material support to al Qaeda, *see supra* pp. 9-10. All the individuals at issue worked for or closely with the Ministry of Islamic Affairs and were, directly or indirectly, conduits for its support to al Qaeda,[10] ensuring that they and the Kingdom were "generally aware" of their role in advancing al Qaeda's activities. No more is needed to establish an aiding and abetting claim or the requisite acts and causation required by Section 1605B.

      <u>Primary Liability</u>. The Kingdom is also quite wrong in claiming (Opp'n at 22-23) that *Kaplan* is irrelevant for plaintiffs' primary liability claims. Because *Kaplan* bears directly on the assessment of proximate causation, *see supra* pp. 9-10, its analysis supports reconsideration of the Court's holdings faulting plaintiffs' primary liability claims for insufficiently linking the provision of support to the attacks, *see* ECF No. 3946 at 37. In addition, *Kaplan*'s emphasis on the importance of JASTA § 2(b) to interpreting Section 1605B (applicable to both primary and secondary liability), its reliance on cases extending beyond *Halberstam*, its recognition of the importance of indirect support, and its guidance regarding inferences to be drawn from a complaint in the terrorism context all support reconsideration for the primary liability claims as well. *See Kaplan*, 999 F.3d at 855-56, 865.

      *Atchley*, too, drew on *Kaplan* and directly supports the adequacy of plaintiffs' primary liability claims. *Atchley* provides an authoritative application of the D.C. Circuit's own test in *Owens* to primary liability claims in the terrorism context and to violations of the underlying material support statutes that the Kingdom claims are unaddressed (Opp'n at 23). The decision

---

[10] *See, e.g.*, CAC ¶¶ 33, 140-54, 263; Aver ¶¶ 115-29. *See also* Recons. Mot. at 18-19, n.17 and 18.

confirms that proximate cause exists when a defendant provides material support to an entity intertwined with a terrorist organization, without requiring any further link to the particular attack – because such attacks are the natural and foreseeable result of providing that support. *See Atchley*, 22 F.4th at 226-30; *see also Kaplan*, 999 F.3d at 860-61 (attack the foreseeable result of aiding terrorists); *Linde*, 882 F.3d at 329-30 (same). Plaintiffs allege a much closer tie between the provider of support and the recipient terrorist organization than existed in *Atchley*, *compare* Aver. ¶¶ 39-48, 116-129, 286-587 (charities controlled by al Qaeda), *with Atchley*, 22 F.4th at 228-29 (entity receiving aid controlled by members of separate terrorist organization), further confirming the adequacy of plaintiffs' allegations.

* * * * *

This Court clearly has the power to reconsider its earlier order, *see United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982), and doing so is warranted here. Second Circuit decisions such as *Kaplan*, *Honickman*, and *Linde* are clearly "controlling" in this Court, and the "controlling decisions" language of *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), is not as constraining as the Kingdom suggests. *Compare* Opp'n at 3, *with Shrader*, 70 F.3d at 257 ("additional relevant case law" and legislative history warrant reconsideration). This Court, in this case, has granted reconsideration on like grounds. *See In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 573-75 (S.D.N.Y. 2005) (Casey, J.) (applying *Shrader*'s "additional relevant case law" standard).

The reconsideration standard is sensitive to the need for the "conservation of scarce judicial resources," *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 352 F. Supp. 3d 242, 246 (S.D.N.Y. 2019) (citation omitted), and here even that factor favors *granting* the motion. The Court is empowered now to conclude that the complaint and related allegations establish jurisdiction under

14

Section 1605B, and to order that the parties proceed to address the merits of the claims – just as it was in considering the Kingdom's motion to dismiss.[11]   Doing so would resolve the jurisdictional phase without further consumption of this Court's resources.   The Kingdom would then be free if it so chose to seek the Second Circuit's views on the jurisdictional matters, securing prompt determinations and guidance from the Second Circuit concerning the import of its recent decisions. *USAA Cas. Ins. Co.,* 681 F.3d at 107 (immediate appeal of order denying immunity).   Even if no appeal followed, granting the motion would avoid the duplication and legal complexities related to the overlap of the jurisdiction and merits phases of the case.   This result also would avoid the need for the Court to decide complicated issues surrounding the limited scope of jurisdictional discovery afforded to date and the processes and disputed standards associated with addressing experts, testimony, and evidence in the context of a jurisdictional hearing.   Those latter issues are made even more difficult by *Kaplan*'s insistence that aiding and abetting claims in the terrorism context be evaluated holistically in light of the full range of facts that may support relevant inferences*, see Kaplan*, 999 F.3d at 854, 865, requiring a commensurate scope of jurisdictional discovery.

## **CONCLUSION**

For the foregoing reasons and those presented in the motion for reconsideration, that motion should be granted.

---

[11] *See, e.g., USAA Cas. Ins. Co. v. Perm. Mission of the Republic of Namibia,* 681 F.3d 103, 114 (2d Cir. 2012) (allegations established jurisdiction); *Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 199 (D.C. Cir. 2004) (rejecting sovereign defendant's effort to create a factual dispute and finding allegations established jurisdiction).

Dated: March 9, 2022                    Respectfully submitted,

                                        COZEN O'CONNOR

                                        By:   /s/  Sean P. Carter
                                        Sean P. Carter
                                        Stephen A. Cozen
                                        J. Scott Tarbutton
                                        Cozen O'Connor
                                        One Liberty Place
                                        1650 Market Street, Suite 2800
                                        Philadelphia, PA 19103
                                        Tel: (215) 665-2000
                                        scarter1@cozen.com
                                        scozen@cozen.com
                                        starbutton@cozen.com

                                        *On behalf of the CAC Plaintiffs*


                                        MOTLEY RICE LLC

                                        By:   /s/  Robert T. Haefele
                                        Robert T. Haefele
                                        Jodi Westbrook Flowers
                                        Donald A. Migliori
                                        Motley Rice LLC
                                        28 Bridgeside Boulevard
                                        Mount Pleasant, SC 29465
                                        Tel: (843) 216-9184
                                        rhaefele@motleyrice.com
                                        jflowers@motleyrice.com
                                        dmigliori@motleyrice.com

                                        *On behalf of the CAC Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of Plaintiffs' Reply Memorandum of Law in Support of Their Motion Pursuant to Fed. R. Civ. P. 54(b) and the Court's Inherent Powers to Revise This Court's March 28, 2018 Order (ECF No. 3946), was electronically filed this 9th day of March 2022. Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system.

_____

J. Scott Tarbutton, Esq.

17