# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

VIA ECF

March 11, 2022

The Honorable Sarah Netburn
United States Magistrate Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

  RE: *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

  Plaintiffs respectfully request a two-month extension of the deadline set forth at ECF No. 7117 (Sept. 17, 2021) for Plaintiffs to serve their expert reports, from April 1, 2022 to June 1, 2022, with a corresponding extension of time for each of the related expert deadlines. The Department of Justice acknowledged that an extension was consistent with the objectives of the Executive Order to give the 9/11 Families "transparency" by sharing access to the evidence collected by the U.S. government about the Saudi government's involvement in providing support to the 9/11 hijackers. ECF No. 7743 at 2. As explained more fully below, the documents the government has released to date have confirmed the paramount importance of this newly available evidence. The circumstances warranting an extension are of an extraordinary nature and are not a result of the kind of delay about which the Court has expressed concern. Moreover, the modest adjustment will not stall progress in the MDL as a whole. The Court and the parties can make important progress on other fronts, while meeting the government's and the parties' interests in affording the experts an opportunity to examine the newly released evidence.

  *First*, the circumstances warranting the modest adjustment are extraordinary. In its September 17, 2021 Order, when this Court reset the deadline for affirmative expert reports to April 1, 2022, the Court stated that it did not "expect to modify this schedule barring extraordinary circumstances." As canvassed below, the documents that the government has recently disclosed publicly and under the FBI Protective Order have confirmed that the newly available evidence is singularly relevant to the inquiry authorized in the Court's March 28, 2018 Order, and in particular to the experts' review of the case. The outstanding grand jury materials identified under the Executive Order are of paramount importance. These include telephone, banking, financial, credit and communications records, the production of which the Court authorized on March 2, 2022

March 11, 2022
Page 2

(ECF No. 7718) but which have not yet been released.[1] The Plaintiffs would suffer severe prejudice if their experts were deprived of the opportunity to review and analyze some of the most relevant evidence, especially where defense experts will have ample time to consider the materials before offering their own opinions. Finally, as the United States has acknowledged, an adjustment is necessary to fulfill the President's goals and policy objectives pursuant to Executive Order No. 14040, including ensuring that Plaintiffs' rights are determined on the basis of the fullest record possible.

*Second*, the circumstances warranting the modest adjustment are not a result of the kind of delay about which the Court expressed concern. In the Court's September 17, 2021 Order, when this Court indicated it would consider modifying the deadlines in the event of "extraordinary circumstances," the Court added that "[s]uch circumstances shall not include delays in the Government's compliance with the President's September 3, 2021 Executive Order." ECF No. 7117. Plaintiffs understood that the Court was admonishing the government that any inattention to the President's mandate or failure on the part of the responding agencies to dedicate adequate resources to the declassification reviews would not support an extension. However, as the government's submission in support of an extension evidences, that kind of delay is not at issue here. Indeed, the Plaintiffs have been engaging with the DOJ through regular correspondence and seven separate video conferences to keep the government's productions on track. Plaintiffs understand that the difficulties arose principally from a higher volume of responsive documents than the government anticipated and that the review was further complicated by interagency and foreign government processes.

*Third*, the relatively short adjustment will not stall progress in the MDL as a whole. The extension is modest and, while affording the experts the opportunity to conduct the essential review of relevant evidence, the Court and parties can make important progress on a number of other fronts during the short window. For example, the Court has Plaintiffs' fully briefed Rule 54(b) motion and today submitted their request for oral argument on that motion. Likewise, the window may permit the Plaintiffs' Executive Committees and counsel for the *Havlish* plaintiffs to continue their ongoing discussions toward simplifying or narrowing the issues before the Court regarding the Taliban claims. The issues are admittedly difficult, but the parties have already held one in person meeting, attended by a dozen counsel, and have engaged in numerous additional phone and video conferences. Continuing these discussions will be difficult absent an adjustment in the expert deadline.

Plaintiffs offer the following summary of the newly available evidence to underscore the extraordinary nature of the circumstances and to provide insight into the need for the experts to be able to consider the evidence. In the tranches released under the Executive Order to date, the U.S. government has finally produced long-withheld FBI reports addressing the Saudi government's role in providing support to the 9/11 hijackers. As detailed below, however, much of the key additional related evidence has not yet been produced. Yesterday, the DOJ reported to the Court that all documents will be produced in the next six weeks by mid-April. ECF No. 7743 at 1. Also, the DOJ is preparing for release additional MDL versions of documents with privacy

---

[1] Despite Plaintiffs' repeated efforts to have the DOJ petition this Court to permit the disclosure of grand jury material, the DOJ was not ready to file its petition until March 1, 2022.

March 11, 2022
Page 3

redactions removed, subject to the FBI Protective Order. The unredacted documents are necessary to understand and use the documents.

Based on the evidence and information that the government has disclosed to date, and what remains to be produced over the coming six weeks, there are extraordinary circumstances for the expert schedule to be modified. To enforce a deadline now would only disadvantage and severely prejudice the Plaintiffs. Plaintiffs' experts need time to review, analyze, and reach their opinions about the contents of the production. Cutting off that process now on the cusp of its completion would result in needless, time-consuming motion practice after the government's releases are complete.

We set forth below several examples of the new evidence from the government's production to date, together with a summary of the highly relevant, related evidence that will be produced by the government over the next six weeks.

**New evidence about Omar al Bayoumi's involvement working for the Saudi government intelligence service and his reporting to Ambassador Bandar.** As this Court is aware, since the start of discovery in April 2018, Plaintiffs sought documents from Saudi Arabia and the FBI about the intelligence role of Omar al Bayoumi, a Saudi government employee working undercover in San Diego for the Saudi government. In its March 3, 2022 production, the FBI released for the very first time a June 2017 Report from the FBI's Washington Field Office confirming Bayoumi's "involvement with Saudi intelligence" and that Bayoumi was making reports to Saudi Ambassador Prince Bandar. The 2017 Report details source information that

> In the late 1990's and up to September 11, 2001, Omar Albayoumi was paid a monthly stipend as a cooptee of the Saudi General Intelligence Presidency (GIP) via then Ambassador Prince Bandar bin Sultan Alsaud. The information Albayoumi obtained on persons of interest in the Saudi community in Los Angeles and San Diego and other issues, which met certain GIP intelligence requirements, would be forwarded to Bandar. Bandar would then inform the GIP of items of interest to the GIP for further investigation/vetting or follow up.

Exhibit 1, EO 14040-002638-39.[2] Another FBI source report states that there was "a 50/50 chance that Omar A M Al Bayoumi had advanced knowledge that the 9/11 terrorist attacks were to occur… ." *Id.* at 2584.

*Among other evidence, the FBI will release by mid-April: (a) Bayoumi's cell phone records from before January 9, 2000; (b) the records of calls to Bayoumi by Thumairy from his cell phone, and calls of Aulaqi, and others involved in the support network for the hijackers; and (c) the records of Bayoumi's use of rental cars to make his work trips to Los Angeles.*

**New evidence that Thumairy received advance notice of the arrival of the two 9/11 hijackers, sent an individual to LAX to pick them up, and asked Anwar Aulaqi and Omar al**

---

[2] The FBI has not yet produced the unredacted version of this document under the FBI Protective Order.

March 11, 2022
Page 4

**Bayoumi to help them.** An FBI Report[3] filed in September 2017 details source information about Fahad al Thumairy, the Saudi Ministry of Islamic Affairs propagator and diplomat working in Los Angeles.  Exhibit 2.[4]  The Report shows that:

- Thumairy received a phone call at the King Fahad Mosque at the end of 1999 from Malaysia — where 9/11 hijackers Nawaf al Hazmi and Khalid al Midhar travelled before coming to the U.S. — about the upcoming "imminent arrival" of Hazmi and Mihdhar in California;

- Thumairy gave an individual the flight arrival information and sent that individual to pick up Hazmi and Mihdhar at LAX on January 15, 2000 and bring them to the Saudi government operated King Fahad Mosque, where Thumairy had been installed by the Kingdom as the Imam[5];

- Thumairy contacted Anwar Aulaqi, then an Imam in San Diego (who was identified as an Al Qaeda operative and later killed in a U.S. drone strike), about providing assistance to Hazmi and Mihdhar (and Aulaqi provided the two hijackers with assistance in San Diego);

- Thumairy was also in contact with Bayoumi, who regularly visited the King Fahad Mosque in Los Angeles, about providing assistance to Hazmi and Mihdhar (and Bayoumi met with the hijackers in Los Angeles and provided them with assistance in San Diego).

Exhibit 2, EO14040-000520-21.

*Among other evidence, the FBI will release by mid-April: (a) the records from the cell phone that Thumairy was known to be using during this period; (b) the phone records of the individual that Thumairy sent to LAX to pick up the hijackers; and (c) the FBI interview records from 2001 of persons associated with the King Fahad Mosque, including various reports cited by the 9/11 Commission in its 2004 Report.*

**There is new evidence of phone calls between two individuals involved in the support network for the hijackers.**  The Operation Encore 2016 report produced by the FBI states that there is "significant phone connectivity between REDACTED and REDACTED prior to and directly following the key events of logistic assistance provided by REDACTED to Hazmi and Mihdhar."  Ex. 3, April 6, 2016 Operation Encore Report at 6.[6]

*Among other evidence, the FBI will shortly release the records of calls made by these individuals.*

---

[3] The form filed by the FBI was an FD-542, an "Investigative Accomplishment Report" submitted to give an FBI agent credit for obtaining the information and/or to substantiate a financial or other reward provided to the source. The filing of such a report is necessarily based on an FBI determination that the source information is credible.

[4] The unredacted copies of this and other exhibits released by the FBI pursuant to the MDL Protective Order are submitted in a separate under seal letter to the Court.

[5] The name of the individual is in the unredacted copy of the exhibit submitted separately under seal.

[6] The individuals are named in the unredacted copy of the exhibit submitted separately to the Court.

March 11, 2022
Page 5

**There is new evidence from the FBI and CIA about the role of the Saudi Ministry of Islamic Affairs in providing support for terrorism and Al Qaeda inside the U.S.** The newly produced unredacted Executive Summary of the December 2004 "FBI/CIA Joint Assessment of Saudi Arabian Support to Terrorism and the Counterintelligence Threat to the United States" now states that "official Saudi entities, *chiefly the Ministry of Islamic Affairs* and associated nongovernmental organizations (NGOs), *provide financial and logistical support to individuals in the United States…some of whom are associated with terrorism-related activity.*" Ex. 4 EO14040-000491 (emphasis added).[7] This newly unredacted language from the Executive Summary naming the Ministry of Islamic Affairs places the previously released sections of that Summary in a new light. It is now clear that it was the Saudi Ministry of Islamic Affairs that sent to "Saudi funded clerics" to do intelligence work in the U.S. and that it was "infiltrated" by Al Qaeda and gave Al Qaeda "special consideration."

*The government will release the remainder of the report by mid-April, with the Report's detailed findings about the support provided by the Ministry of Islamic Affairs for terrorism inside the U.S.*

\* \* \*

Prior to filing this motion, Plaintiffs contacted counsel for Saudi Arabia and were informed that the Kingdom will oppose this motion for an extension. Defendant Dallah Avco has similarly indicated that it opposes this extension request.

We anticipate that Saudi Arabia will argue that this Court should maintain a strict deadline at all costs. But there is no possibility of unfair prejudice to Saudi Arabia. The defendants will have ample time and opportunity to review the newly released FBI evidence in its entirety. Safe in this knowledge, Saudi Arabia is trying to gain an improper advantage to prevent the Plaintiffs from relying on this key new evidence in their expert reports.[8] It is only fair that Plaintiffs should have the same opportunity to rely on this same evidence as Saudi Arabia and Dallah Avco. *See S.E.C. v Rajaratnam*, 622 F.3d 159, 179 (2d Cir. 2010) (discovery rules should be interpreted "to create a level playing field" for the parties).

We also note that Ramadan starts this year on April 2 and ends on May 2, 2022. This Court previously suspended depositions and Saudi Arabia's discovery obligations during this Ramadan period. Plaintiffs can and will continue to work through this period to address the new Government production.

In sum, Plaintiffs' motion is based on tangible new evidence from the existing Executive Order production about the Saudi government's involvement, coupled with the U.S. Government's commitment to produce the outstanding information within a reasonable and foreseeable period. This evidence shows that the additional outstanding evidence that the government will produce over the coming six weeks is highly relevant, and that a further two-month extension for submission of the expert reports is appropriate and necessary in the interests of justice.

---

[7] The redacted version of this Executive Summary was previously cited by Saudi Arabia as evidence supporting its Motion to Dismiss. ECF No. 3668 at 20.

[8] We note that phone records are among the key documents still awaiting production, and that despite Saudi Arabia's 2018 agreement to produce relevant documents from its Embassy and Los Angeles Consulate, the Kingdom refused to produce *any* of its phone records from the relevant time period in 1999-2001.

March 11, 2022
Page 6

Respectfully submitted,

KREINDLER & KREINDLER LLP

By: /s/ Steven R. Pounian
Steven R. Pounian, Esq.
James P. Kreindler, Esq.
Andrew J. Maloney, III, Esq.
Megan W. Benett, Esq.
James Gavin Simpson, Esq.
485 Lexington Avenue
New York, New York 10017
Tel: (212) 687-8181
E-mail: spounian@kreindler.com

*On behalf of the Plaintiffs Exec. Committees*

MOTLEY RICE LLC

By: /s/ Robert T. Haefele
Robert T. Haefele, Esq.
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*On behalf of the Plaintiffs Exec. Committees*

COZEN O'CONNOR

By: /s/ Sean P. Carter
Sean P. Carter, Esq.
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel.: (215) 665-2105
Email: scarter1@cozen.com

*On behalf of the Plaintiffs Exec. Committees*

cc:  Honorable George B. Daniels (via ECF)
     All MDL Counsel of Record (via ECF)