# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

JAMES OWENS, THE ESTATE OF BETTY
OWENS EVELY, GARY ROBERT OWENS,
BARBARA GOFF, THE ESTATE OF JESSE
NATHANAEL ALIGANGA, LEAH ANN
COLSTON-BAKER, CLARA LEAH
ALIGANGA, THE ESTATE OF JULIAN
LEOTIS BARTLEY, JR., THE ESTATE OF
JULIAN LEOTIS BARTLEY, SR., EDITH
LYNN BARTLEY, THE ESTATE OF
GLADYS BALDWIN, MARY LINDA SUE
BARTLEY, DANIEL BRIEHL, GARY
CROSS, THE ESTATE OF JEAN ROSE
DALIZU, EGAMBI FRED KIBUHIRU
DALIZU, THE ESTATE OF GWENDOLYN
TAUWANA GARRETT, THE ESTATE OF
JAMES HERBERT FREEMAN, THE
ESTATE OF JEANETTE ELLA MARIE
GOINES, JEWELL PATRICIA NEAL, THE
ESTATE OF JOYCE MCCRAY, JUNE
BEVERLY FREEMAN, LAWRENCE
ANTHONY HICKS, LORI ELAINE DALIZU,
MANGAIRU VIDIJA DALIZU, THE
ESTATE OF ROSE BANKS FREEMAN, THE
ESTATE OF SHEILA ELAINE FREEMAN,
TEMINA ENGESIA DALIZU, THE ESTATE
OF MOLLY HUCKABY HARDY, BRANDI
HARDY PLANTS, THE ESTATE OF JANE
HUCKABY, LYDIA HICKEY, TABITHA
CARTER, LAURA HARRIS, THE ESTATE
OF LEROY MOOREFIELD, THE ESTATE
OF RODNEY MOOREFIELD, THE ESTATE
OF ROGER MOOREFIELD, LORA
MURPHY, LORETTA PAXTON, LINDA
SHOUGH, THE ESTATE OF HOWARD
SPARKS, SR., HOWARD SPARKS, JR.,
MICHAEL RAY SPARKS, THE ESTATE OF
CLYDE M. HIRN, MARGARET BAKER,
THE ESTATE OF INEZ HIRN, PAUL HIRN,
ELOISE HUBBLE, PATRICIA K. FAST, THE
ESTATE OF KENNETH RAY HOBSON II,
BONNIE SUE HOBSON, DEBORAH
HOBSON-BIRD, THE ESTATE OF

Civil Action No. 22-___cv-1949

JURY TRIAL DEMANDED

KENNETH RAY HOBSON, MEGHAN
ELIZABETH HOBSON, VALENTINE
MATHEW KATUNDA, ABELLA
VALENTINE KATUNDA, DESIDERY
VALENTINE MATHEW KATUNDA,
DIANA VALENTINE KATUNDA, EDWIN
VALENTINE MATHEW KATUNDA,
VENANT VALENTINE MATHEW
KATUNDA, THE ESTATE OF HOWARD
CHARLES KAVALER, THE ESTATE OF
LEON KAVALER, MAYA PIA KAVALER,
THE ESTATE OF PEARL DANIELS
KAVALER, THE ESTATE OF PRABHI
GUPTARA KAVALER, RICHARD MARTIN
KAVALER, TARA LIA KAVALER,
RIZWAN KHALIQ, JENNY CHRISTINA
LOVBLOM, IMTIAZ BEGUM, YASIR AZIZ,
IMRAN KHALIQ, KAMRAN KHALIQ,
NAURIN KHALIQ, IRFAN KHALIQ,
TEHSIN KHALIQ, THE ESTATE OF
ARLENE BRADLEY KIRK, DENNIS
ARTHUR BRADLEY, KATHERINE
BRADLEY WRIGHT, THE ESTATE OF
KENNETH ALVA BRADLEY, MAISHA
KIRK HUMPHREY, THE ESTATE OF
MARY KATHERINE BRADLEY, NEIL
ALAN BRADLEY, THE ESTATE OF
PATRICIA ANNE BRADLEY WILLIAMS,
ROBERT KIRK, JR., ROBERT MICHAEL
KIRK, GARY LONNQUIST, THE ESTATE
OF SAMUEL THOMAS MARCUS,
CORONELLA SAMUEL MARCUS, TIRISA
GEORGE THOMAS, THE ESTATE OF
MARY LOUISE MARTIN, DOUGLAS
NORMAN KLAUCKE, JAMES ROBERT
KLAUCKE, THE ESTATE OF JOSEPH
DENEGRE MARTIN III, THE ESTATE OF
JOSEPH DENEGRE MARTIN, JR., KAREN
MARIE KLAUCKE, THE ESTATE OF
KATHLEEN MARTIN BOELLERT,
MARTHA MARTIN OURSO, MICHAEL
HAWKINS MARTIN, STEPHEN HARDING
MARTIN, SUSAN ELIZABETH MARTIN
BRYSON, WILLIAM RUSSELL KLAUCKE,
THE ESTATE OF MTENDEJE RAJABU
MTULYA, SHABANI SAIDI MTULYA,

ABDUL SHABANI MTUYLA, SAIDI
SHABANI MTUYLA, DONTI AKILI
MWAIPAPE, THE ESTATE OF VICTORIA
DONTI MWAIPAPE, ELISHA DONTI
MWAIPAPE, JOSEPH DONTI MWAIPAPE,
NICHOLAS MWAIPAPE, THE ESTATE OF
WILLIAM ABBAS MWILA, JUDITH ABASI
MWILA, EDWINA ABASI MWILA,
HAPPINESS ABASI MWILA, WILLIAM
ABASI MWILA, THE ESTATE OF YUSUF
SHAMTE NDANGE, HANUNI
RAMADHANI NDANGE, ABDUL YUSUPH
SHAMTE NDANGE, JUMA YUSUPH
SHAMTE NDANGE, MWAJABU YUSUPH
SHAMTE NDANGE, MAUA NDANGE,
HALIMA NDANGE, RAMADHANI
NDANGE, THE ESTATE OF ANN
MICHELLE O'CONNOR, JENNIFER ERIN
PEREZ, MICAELA ANN O'CONNOR,
TARA COLLEEN O'CONNOR, JAMES
PAUL O'CONNOR, GWENDOLYN
FREDERIC DENEY, THE ESTATE OF
SHERRY LYNN OLDS, CHRISTA GAY
DEGRACIA, DELBERT RAYMOND OLDS,
KIMBERLY ANN ZIMMERMAN, MARSEY
GAYLE CORNETT, THE ESTATE OF
MARY EVELYN FREEMAN OLDS, FRANK
B. PRESSLEY, JR., YASEMIN B.
PRESSLEY, BERK F. PRESSLEY, THE
ESTATE OF FRANK PRESSLEY, SR.,
DAVID A. PRESSLEY, JON B. PRESSLEY,
MARC Y. PRESSLEY, MICHAEL F.
PRESSLEY, THOMAS C. PRESSLEY, THE
ESTATE OF MONTINE BOWEN,
DOROTHY WILLARD, AHMET BUYUK,
TULAY BUYUK, SERPIL BUYUK,
SUNDUS BUYUK, BAHAR BUYUK, THE
ESTATE OF DOTIO RAMADHANI,
KULWA RAMADHANI, RENEMA
RAMADHANI, UPENDO RAMADHANI,
MENGO RAMADHANI, WORLEY LEE
REED, JOYCE REED, CHERYL L. BLOOD,
BRET W. REED, LINDA WHITESIDE
O'DONNELL, THE ESTATE OF RUTH ANN
WHITESIDE, THE ESTATE OF FLOSSIE
VARNEY, ELLEN RICHARD, THE ESTATE

3

OF DONALD G. BOMER, MICHAEL JAMES CORMIER, THE ESTATE OF PATRICIA FEORE, GEORGE KARAS, THE ESTATE OF NICHOLAS KARAS, EDWARD MATHEW RUTAHESHELWA, ELIZABETH MATHEW RUTAHESHELWA, ANGELINA MATHEW RUTAHESHELWA, ERIC MATHEW RUTAHESHELWA, HAPPINESS MATHEW RUTAHESHELWA, THE ESTATE OF ROGATH SAIDI SAIDI, THE ESTATE OF VERONICA ALOIS SAIDI, THE ESTATE OF AISHA MAWAZO, THE ESTATE OF ADABETH SAIDI NANG'OKO, DANIEL ROGATH SAIDI, IDIFONCE ROGATH SAIDI, JOHN ROGATH SAIDI, SELINIA ROGATH SAIDI, GARY SPIERS, VICTORIA Q. SPIERS, VICTORIA J. SPIERS, RICHARD DAVID PATRICK, ROLANDO QUILACIO, THE ESTATE OF CANDELARIA QUILACIO FRANCISCO, SUSAN QUILACIO NICHOLAS, THE ESTATE OF JULITA A. QUILACIO, THE ESTATE OF EULOGIO QUILACIO, THE ESTATE OF EDILBERTO QUILACIO, TIMOTHY TESKE, SHARON TESKE, JONATHAN TESKE, and TAYLOR TESKE,

*Plaintiffs,*

v.

TALIBAN A/K/A ISLAMIC EMIRATE OF AFGHANISTAN,

*Defendant.*

## **COMPLAINT**

## **I. INTRODUCTION**

1.　　On August 7, 1998, simultaneous suicide bombings occurred at United States embassies in Nairobi, Kenya and Dar es Salaam, Tanzania, resulting in hundreds of deaths and thousands of injuries to both United States and foreign citizens.  The bombings were masterminded

4

by Osama Bin Laden ("Bin Laden") and carried out by members of al-Qaeda, who were supported by the Taliban, a/k/a Islamic Emirate of Afghanistan. The Taliban offered safe haven to Bin Laden and al-Qaeda during the planning of the attacks and provided weapons, equipment, transport, and training camps with full knowledge that Bin Laden and al-Qaeda intended to commit acts of terror on United States targets overseas. Before and after the embassy bombings, the Taliban denied the United States' requests to turn over Bin Laden. As a result, the Taliban is directly and proximately liable for the attacks.

2.     Plaintiffs are United States and foreign citizens (or their estates) who were injured or killed in the embassy bombings, and the family members of these victims. They suffered severe and substantial physical and emotional injuries with lasting and permanent effects—or death—as a result of the attacks.

3.     Plaintiffs bring claims against the Taliban under the Anti-Terrorism Act, Alien Tort Statute, and state tort law. They seek compensatory and punitive damages, interest, fees, and costs for their injuries.

## II. JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, because Plaintiffs bring claims under the Anti-Terrorism Act, 18 U.S.C. § 2333, and it further has jurisdiction over Plaintiffs' claims under the Alien Tort Statute, 28 U.S.C. § 1350.

5.     The Court has pendent jurisdiction over Plaintiffs' state-law claims, which arise from the same nucleus of operative facts as Plaintiffs' federal-law claims under 28 U.S.C. § 1367(a). *See IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993).

6.     Separately, the Court has diversity jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1332 because the Plaintiffs and Defendant are residents of different domestic and foreign states, and the amount in controversy exceeds $75,000.

7.     Because the embassy bombings occurred overseas, and the Taliban is a foreign defendant, venue is proper under 28 U.S.C. § 1391(b)(3).

### III.  PARTIES

#### a.     American Plaintiffs

8.     Plaintiff James Owens is a citizen of the United States who suffered severe physical, mental, and emotional injuries as a result of the bombing of the United States Embassy in Dar es Salaam, Tanzania, on August 7, 1998.  He suffered a permanent loss of hearing, blast burns, severe lacerations that have resulted in scarring, and severe post-traumatic stress disorder. He has been required to undergo extensive medical treatment, nursing care, and other treatment and has endured great pain and suffering.

9.     Plaintiff The Estate of Betty Owens Evely is the successor of Betty Owens Evely, the mother of James Owens.  Gary Robert Owens is the brother of James Owens.  Barbara Goff is the sister of James Owens.  All are citizens of the United States who have suffered extreme mental anguish and emotional distress as a result of the injuries to James Owens.

10.     Plaintiff The Estate of Jesse Nathanael Aliganga is the successor of Jesse Nathanael Aliganga, a United States citizen, who was killed in the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998.

11.     Plaintiff Clara Leah Aliganga is the mother of Jesse Nathanael Aliganga.  Plaintiff Leah Ann Colston-Baker is the sister of Jesse Nathanael Aliganga.  Both are United States citizens who have suffered extreme mental anguish and emotional distress as a result of Jesse Nathanael Aliganga's death.

12.     Plaintiff The Estate of Julian Leotis Bartley, Sr., is the successor of Julian Leotis Bartley, Sr., a United States citizen, who was killed in the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998.

13.     Plaintiff The Estate of Julian Leotis Bartley, Jr., is the successor of Julian Leotis Bartley, Jr., a United States citizen, who was killed in the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998.

14.     Plaintiff Mary Linda Sue Bartley is the wife of Julian Leotis Bartley, Sr., and the mother of Julian Leotis Bartley, Jr.  Plaintiff Edith Lynn Bartley is the daughter of Julian Leotis Bartley, Sr., and the sister of Julian Leotis Bartley, Jr.  Plaintiff The Estate of Gladys Baldwin is the successor of Gladys Baldwin, the mother of Julian Leotis Bartley, Sr., and the grandmother of Julian Leotis Bartley, Jr.  All are United States citizens who have suffered extreme mental anguish and emotional distress as a result of the deaths of Julian Leotis Bartley, Sr., and Julian Leotis Bartley, Jr.

15.     Plaintiff The Estate of Jean Rose Dalizu is the successor of Jean Rose Dalizu, a United States citizen, who was killed in the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998.

16.     Plaintiffs Mangairu Vidija Dalizu, Lawrence Anthony Hicks, Lori Elaine Dalizu, and Temina Engesia Dalizu are the children of Jean Rose Dalizu.  Plaintiff The Estate of Rose Banks Freeman is the successor of Rose Banks Freeman, the mother of Jean Rose Dalizu.  Plaintiffs The Estate of James Herbert Freeman, The Estate of Gwendolyn Tauwana Garrett, The Estate of Jeanette Ella Marie Goines, The Estate of Joyce McCray, The Estate of Sheila Elaine Freeman, Jewell Patricia Neal, and June Beverly Freeman are the siblings, or successors of the siblings, of Jean Rose Dalizu.  All are United States citizens who have suffered extreme mental anguish and emotional distress as a result of Jean Rose Dalizu's death.

7

17.     Plaintiff The Estate of Molly Huckaby Hardy is the successor of Molly Huckaby Hardy, a United States citizen, who was killed in the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998.

18.     Plaintiff Brandi Hardy Plants is the daughter of Molly Huckaby Hardy.  Plaintiff The Estate of Jane Huckaby is the successor of Jane Huckaby, the mother of Molly Huckaby Hardy.  All are United States citizens who have suffered extreme mental anguish and emotional distress as a result of Molly Huckaby Hardy's death.

19.     Plaintiff The Estate of Kenneth Ray Hobson II is the successor of Kenneth Ray Hobson II, a United States citizen, who was killed in the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998.

20.     Plaintiff Deborah Hobson-Bird is the wife of Kenneth Ray Hobson II.  Plaintiff Meghan Elizabeth Hobson is the daughter of Kenneth Ray Hobson II.  Plaintiff The Estate of Kenneth Ray Hobson is the successor of Kenneth Ray Hobson, the father of Kenneth Ray Hobson II.  Plaintiff Bonnie Sue Hobson is the mother of Kenneth Ray Hobson II.  All are United States citizens who have suffered extreme mental anguish and emotional distress as a result of Kenneth Ray Hobson II's death.

21.     Plaintiff The Estate of Prabhi Guptara Kavaler is the successor of Prabhi Guptara Kavaler, a United States citizen, who was killed in the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998.

22.     Plaintiff The Estate of Howard Charles Kavaler is the successor of Howard Charles Kavaler, who was the husband of Prabhi Guptara Kavaler.  Howard Charles Kavaler was a citizen of the United States who suffered severe and permanent injuries as a result of the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998.  These injuries included but were

not limited to severe post-traumatic stress disorder and depression, which caused debilitating flashbacks and panic attacks, and which required many years of therapy and medication. Howard Charles Kavaler also suffered extreme mental anguish and emotional distress as a result of Prabhi Guptara Kavaler's death.

23.     Plaintiffs Maya Pia Kavaler and Tara Lia Kavaler are the children of Prabhi Guptara Kavaler and Howard Charles Kavaler. Both are United States citizens who have suffered extreme mental anguish and emotional distress as a result of Prabhi Guptara Kavaler's death and the injuries to Howard Charles Kavaler.

24.     Plaintiff The Estate of Pearl Daniels Kavaler is the successor of Pearl Daniels Kavaler, the mother of Howard Charles Kavaler. Plaintiff The Estate of Leon Kavaler is the successor of Leon Kavaler, the father of Howard Charles Kavaler. Plaintiff Richard Martin Kavaler is the brother of Howard Charles Kavaler. All are United States citizens who have suffered extreme mental anguish and emotional distress as a result of the injuries to Howard Charles Kavaler.

25.     Plaintiff The Estate of Arlene Bradley Kirk is the successor of Arlene Bradley Kirk, a United States citizen, who was killed in the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998.

26.     Plaintiff Robert Kirk, Jr., is the husband of Arlene Bradley Kirk. Plaintiffs Robert Michael Kirk and Maisha Kirk Humphrey are the children of Arlene Bradley Kirk. Plaintiff The Estate of Mary Katherine Bradley is the successor of Mary Katherine Bradley, the mother of Arlene Bradley Kirk. Plaintiffs The Estate of Kenneth Alva Bradley, Neil Alan Bradley, Dennis Arthur Bradley, The Estate of Patricia Anne Bradley Williams, and Katherine Bradley Wright are the siblings, or successors of the siblings, of Arlene Bradley Kirk. All are United States citizens

who have suffered extreme mental anguish and emotional distress as a result of Arlene Bradley Kirk's death.

27.     Plaintiff The Estate of Mary Louise Martin is the successor of Mary Louise Martin, a United States citizen, who was killed in the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998.

28.     Plaintiff Douglas Norman Klaucke is the husband of Mary Louise Martin. Plaintiffs James Robert Klaucke, William Russell Klaucke, and Karen Marie Klaucke are the children of Mary Louise Martin.  Plaintiff The Estate of Joseph Denegre Martin, Jr., is the successor of Joseph Denegre Martin, Jr., the father of Mary Louise Martin.  Plaintiffs The Estate of Joseph Denegre Martin III, Michael Hawkins Martin, Stephen Harding Martin, The Estate of Kathleen Martin Boellert, Martha Martin Ourso, and Susan Elizabeth Martin Bryson are the siblings, or successors of the siblings, of Mary Louise Martin.  All are United States citizens who have suffered extreme mental anguish and emotional distress as a result of Mary Louise Martin's death.

29.     Plaintiff The Estate of Ann Michelle O'Connor is the successor of Ann Michelle O'Connor, a United States citizen, who was killed in the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998.

30.     Plaintiff James Paul O'Connor is the husband of Ann Michelle O'Connor. Plaintiffs Micaela Ann O'Connor, Tara Colleen O'Connor, and Jennifer Erin Perez are the children of Ann Michelle O'Connor.  Plaintiff Gwendolyn Frederic Deney is the mother of Ann Michelle O'Connor.  All are United States citizens who have suffered extreme mental anguish and emotional distress as a result of Ann Michelle O'Connor's death.

10

31. Plaintiff The Estate of Sherry Lynn Olds is the successor of Sherry Lynn Olds, a United States citizen, who was killed in the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998.

32. Plaintiff Delbert Raymond Olds is the father of Sherry Lynn Olds. Plaintiff The Estate of Mary Evelyn Freeman Olds is the successor of Mary Evelyn Freeman Olds, the mother of Sherry Lynn Olds. Plaintiffs Christa Gay DeGracia, Kimberly Ann Zimmerman, and Marsey Gayle Cornett are the siblings of Sherry Lynn Olds. All are United States citizens who have suffered extreme mental anguish and emotional distress as a result of Sherry Lynn Olds's death.

33. Plaintiff Ellen Richard is a citizen of the United States who suffered severe physical, mental, and emotional injuries as a result of the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998. Her injuries include, but are not limited to, extensive penetration to both eyes resulting in permanent blindness, perforation of the left eye, detached retinas as to both eyes, shrapnel wounds, ruptured eardrums, permanent partial loss of hearing, severe lacerations over her entire body resulting in permanent scarring, acquired immunodeficiency syndrome ("AIDS") as a result of rescue efforts and medical treatment, and severe post-traumatic stress disorder. She has been required to undergo extensive medical treatment, nursing care, and other treatment and has endured great pain and suffering, humiliation, and embarrassment.

34. Plaintiff The Estate of Donald G. Bomer is the successor of Donald G. Bomer, the then-husband of Ellen Richard. Plaintiff Michael James Cormier is the son of Ellen Richard. The Estate of Patricia Feore is the successor of Patricia Feore, the mother of Ellen Richard. George Karas and The Estate of Nicholas Karas are the sibling and successor of the sibling of Ellen

Richard.  All are citizens of the United States who have suffered extreme mental anguish and emotional distress as a result of the injuries to Ellen Richard.

35.     Plaintiffs Frank B. Pressley, Jr. and Yasemin B. Pressley are husband and wife and citizens of the United States who suffered severe physical, mental, and emotional injuries as a result of the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998.  Frank B. Pressley, Jr. received severe and permanent injuries including, but not limited to, destruction of his left shoulder joint, blast burns, facial fractures and lacerations, loss of teeth, nerve damage in the hands, spinal fractures, laceration and connective tissue damage to both knees, permanent scarring, and severe post-traumatic stress disorder.  He has been required to undergo extensive medical and other treatment has endured great pain and suffering, humiliation, and embarrassment. Yasemin B. Pressley suffered severe and permanent injuries, including but not limited to severe lacerations, glass and other shrapnel wounds, and severe post-traumatic stress disorder.  She has been required to undergo extensive medical treatment, nursing care, and other treatment and has endured great pain and suffering, humiliation, and embarrassment.

36.     Plaintiff The Estate of Montine Bowen is the successor of Montine Bowen, the mother of Frank B. Pressley, Jr.  Plaintiff The Estate of Frank Pressley, Sr. is the successor of Frank Pressley, Sr., the father of Frank B. Pressley, Jr.  Plaintiff Dorothy Willard is the sister of Frank B. Pressley, Jr.  Plaintiffs Michael F. Pressley, Thomas C. Pressley, and David A. Pressley are the children of Frank B. Pressley, Jr., and Plaintiffs Berk F. Pressley, Jon B. Pressley, and Marc Y. Pressley are the children of Frank B. Pressley, Jr. and Yasemin B. Pressley.  All are citizens of the United States and relatives of Frank B. Pressley, Jr. and Yasemin B. Pressley who have suffered extreme mental anguish and emotional distress as a result of the injuries to Frank B. Pressley, Jr. and Yasemin B. Pressley.

37.     Ahmet Buyuk is the brother of Yasemin B. Pressley.  He is a citizen of the United States and a relative of Frank B. Pressley, Jr. and Yasemin B. Pressley who has suffered extreme mental anguish and emotional distress as a result of the injuries to Frank B. Pressley, Jr. and Yasemin B. Pressley.

38.     Plaintiff The Estate of Clyde M. Hirn is the successor of Clyde M. Hirn, a United States citizen who suffered severe physical, mental, and emotional injuries as a result of the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998.  His injuries included, but were not limited to, brain injury and concussion, nerve damage to his legs and feet, a fractured shoulder, blast burns, severe lacerations of his entire body resulting in permanent scarring, a shoulder fracture, loss of memory and mental ability, and severe post-traumatic stress disorder.  He was required to undergo extensive medical treatment, nursing care, and other treatment and endured great pain and suffering, humiliation, and embarrassment.

39.     Plaintiff The Estate of Inez Hirn is the successor of Inez Hirn, the mother of Clyde M. Hirn.  Plaintiffs Margaret Baker, Paul Hirn, and Eloise Hubble are the siblings of Clyde M. Hirn.  Plaintiff Patricia K. Fast is the daughter of Clyde M. Hirn.  All are citizens of the United States who have suffered extreme mental anguish and emotional distress as a result of the injuries to Clyde M. Hirn.

40.      Plaintiffs Worley Lee Reed and Joyce Reed are husband and wife and citizens of the United States who suffered severe physical, mental, and emotional injuries as a result of the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998.  Worley Lee Reed suffered severe and permanent injuries, including but not limited to injury to both lungs, rotator cuff injury to both shoulders with severe loss of movement and strength, spinal injuries, and severe post-traumatic stress disorder.  He has been required to undergo extensive medical treatment,

nursing care, and other treatment and has endured great pain and suffering, humiliation, and embarrassment. Joyce Reed suffered severe and permanent injuries, including but not limited to lacerations to her entire body and post-traumatic stress disorder. She has been required to undergo extensive medical treatment, nursing care, and other treatment and has endured great pain and suffering, humiliation, and embarrassment.

41.     Plaintiffs Cheryl L. Blood and Bret W. Reed are the children of Worley Lee Reed and Joyce Reed. They are citizens of the United States who have suffered extreme mental anguish and emotional distress as a result of the injuries to Joyce Reed and Worley Lee Reed.

42.     Plaintiff Linda Whiteside O'Donnell is the sister of Joyce Reed. Plaintiff The Estate of Ruth Ann Whiteside is the successor of Ruth Ann Whiteside, the mother of Joyce Reed. They are citizens of the United States who have suffered extreme mental anguish and emotional distress as a result of the injuries to Joyce Reed and Worley Lee Reed.

43.     Plaintiff The Estate of Flossie Varney is the successor of Flossie Varney, the mother of Worley Lee Reed. She was a citizen of the United States and a relative of Joyce Reed and Worley Lee Reed who suffered extreme mental anguish and emotional distress as a result of the injuries to Joyce Reed and Worley Lee Reed.

44.     Plaintiff The Estate of Howard Sparks, Sr. is the successor of Howard Sparks, Sr. He and Plaintiff Lydia Hickey were husband and wife at the time of the bombing. They were employed at the Embassy in Nairobi with their son, Plaintiff Howard Sparks, Jr., who was interning there for the summer. All are citizens of the United States who suffered severe physical, mental, or emotional injuries as a result of the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998. Lydia Hickey's permanent injuries include, but are not limited to, lacerations to her body, shrapnel and glass wounds, injury to facial nerves, and severe post-traumatic stress

14

disorder.  She has been required to undergo extensive medical treatment, nursing care, and other treatment.  Howard Sparks, Sr. was on his way home from the Embassy when he heard the blast. He immediately returned to the Embassy and began search and rescue efforts.  He fell down a flight of concrete steps and experienced pain in his hip and knee almost daily from the time of the bombing until his death.  He was treated for post-traumatic stress disorder and experienced panic attacks.  Howard Sparks, Jr. was a college student at the time of the bombing.  His team was offsite at the time of the bombing, and he rushed back to look for his parents.  He found his father and they worked their way through the blast site in search of survivors.  He found the body of his best friend and saw countless dead bodies and body parts.  He has experienced anxiety and depression ever since the attack.

45.     Plaintiff The Estate of Leroy Moorefield is the successor of Leroy Moorefield, the father of Lydia Hickey.  Plaintiffs Tabitha Carter and Michael Ray Sparks are the children of Lydia Hickey and Howard Sparks, Sr.  Plaintiffs Laura Harris, The Estate of Rodney Moorefield, The Estate of Roger Moorefield, Lora Murphy, Loretta Paxton, and Linda Shough are the siblings, or successors of the siblings, of Lydia Hickey.  All are citizens of the United States who have suffered extreme mental anguish and emotional distress as a result of the injuries to Lydia Hickey.

46.     Plaintiffs Gary Spiers and Victoria Q. Spiers are husband and wife and citizens of the United States who suffered severe physical, mental, and emotional injuries as a result of the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998.  Gary Spiers suffered severe and permanent injuries, including, but not limited to, a fractured right arm, dislocated right shoulders, shrapnel injuries, punctured eardrums, lacerations, loss of balance, erectile dysfunction, ringing in the ears, and severe post-traumatic stress disorder.  He has been required to undergo extensive medical treatment, nursing care, and other treatment.  Victoria Q. Spiers suffered from

multiple cuts, abrasions, and bruises and post-traumatic stress disorder.  She has been required to undergo medical treatment, nursing care, and other treatment.

47.    Plaintiff Richard David Patrick is the son of Gary Spiers.  He is a citizen of the United States who has suffered extreme mental anguish and emotional distress as a result of the injuries to Gary Spiers and Victoria Q. Spiers.

48.    Plaintiff Rolando Quilacio is the brother of Victoria Q. Spiers.  He is a citizen of the United States who has suffered extreme mental anguish and emotional distress as a result of the injuries to Gary Spiers and Victoria Q. Spiers.

49.    Plaintiff Victoria J. Spiers is the daughter of Gary Spiers and Victoria Q. Spiers.  She is a citizen of the United States who has suffered extreme mental anguish and emotional distress as a result of the injuries to Gary Spiers and Victoria Q. Spiers.

50.    Plaintiff Rizwan Khaliq is a citizen of the United States and husband of Plaintiff Jenny Christina Lovblom who suffered severe mental, emotional, and physical injuries as a result of the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998.  At the time of the bombing, Rizwan Khaliq was a United States Foreign Service Officer meeting with the U.S. Ambassador to Kenya Prudence Bushnell and the Kenyan Minister of Trade in the Cooperative Bank Building next door to the Embassy.  The blast was so severe that he was thrown across the room and knocked unconscious.  He woke up in a pool of blood surrounded by dead bodies.  Despite suffering himself from intense pain, Rizwan Khaliq heroically carried Ambassador Bushnell down 21 flights of stairs, encountering the wounded and dead in the staircase.  He made sure that Ambassador Bushnell was taken care of before allowing himself to be taken to the local hospital.  Rizwan Khaliq's injuries include, but are not limited to, permanent loss of hearing, blast burns, a severed ear that had to be sewn back on, lacerations that resulted in permanent scarring,

16

hospitalization for at least one week, shrapnel wounds, a dislocated jaw, and a concussion.  His jaw was so swollen he could not speak.  To this day he continues to have glass coming out of his face, which is excruciatingly painful and causes severe headaches.  He suffered and continues to suffer from severe post-traumatic stress disorder including extreme shock to his nervous system, which has manifested itself in both severe emotional and physical distress.  He has had to undergo psychotherapy and counseling as a result of the ongoing post-traumatic stress disorder, yet his nightmares and other symptoms of post-traumatic stress disorder have not abated.

51.  Plaintiff Jenny Christina Lovblom is a citizen of the United States who suffered severe mental, emotional, and physical injuries as a result of the bombing in Nairobi, Kenya, on August 7, 1998.  At the time of the bombing, Jenny Christina Lovblom was, and still is, the wife of Plaintiff Rizwan Khaliq.  She was living with Rizwan Khaliq in Nairobi, Kenya and was physically present near the United States Embassy in Nairobi, Kenya on August 7, 1998 at the time of the bombings.  Jenny suffered physical injuries including, but not limited to, being physically shaken by the blast of the bombing and further suffered severe shock to her nervous system, by the horrors of both seeing her husband and Ambassador Bushnell covered in blood and subsequent horrors in the Nairobi hospital where the floors were covered with blood, in which she stepped and slipped, people were dying and screaming for lack of medical care, and she saw a young child choking to death on a piece of glass.  Although not a registered nurse, she pitched in and helped medical staff with the wounded and dying as best she could.  The extreme shock to her nervous system has manifested itself in both severe emotional and physical distress resulting in post-traumatic stress disorder, which she continues to suffer from today.  She also suffers from severe emotional distress as a result of the change in Rizwan Khaliq's personality, as he is now more irritable and short tempered than before the bombing.

52.     Plaintiff Imtiaz Begum is the mother of Rizwan Khaliq.  Plaintiffs Yasir Aziz, Imran Khaliq, Kamran Khaliq, Irfan Khaliq, Naurin Khaliq, and Tehsin Khaliq are siblings of Rizwan Khaliq.  All are citizens of the United States who have suffered extreme mental anguish and emotional distress as a result of the injuries to Rizwan Khaliq.  At the time of the embassy bombings, the mother and siblings of Rizwan Khaliq, all of whom are very close, were living in Virginia.  They heard about the bombing and watched the television to see if they could learn anything about their son and brother Rizwan.  They could only see the horrible scenes of devastation of the Embassy in ruins and dead bodies being carried out.  They could not get any information from the Embassy.  Rizwan's family suffered horrible emotional distress not knowing if Rizwan was dead or alive.  Ten to 12 hours later, Jenny Christina Lovblom called Imtiaz Begum to let her know that Rizwan was in the hospital, but she did not know if he was going to survive.  Imtiaz Begum flew two days to South Africa to visit Rizwan in the hospital there.  Seeing him so badly wounded with his jaw too swollen to speak was horrible for her.  Not knowing if Rizwan was dead or alive, and then not knowing if he would survive was a severe shock to the nervous systems of Plaintiffs Imtiaz Begum, Yasir Aziz, Imran Khaliq, Kamran Khaliq, Irfan Khaliq, Naurin Khaliq, and Tehsin Khaliq, and has caused them to suffer from severe post-traumatic stress disorder manifesting itself in both extreme psychological and physical injuries, which continue to this day.  They also suffer from severe emotional distress as a result of the change in Rizwan's personality as he is now more irritable and short tempered than before the bombing.

53.     Plaintiff Gary Lonnquist is a citizen of the United States who suffered severe and permanent physical, mental, and emotional injuries as a result of the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998.  Gary Lonnquist was working in the Embassy at the time of the bombing.  He sustained severe injuries to his face, head, and upper body.  He

required in excess of 15 surgeries to repair his jaw, teeth, and lacerations to his face, for which he has been required to receive extensive medical treatment, nursing care, and other treatment.

54.     Plaintiff Timothy Teske is a citizen of the United States who suffered severe and permanent physical, mental, and emotional injuries as a result of the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998.  His injuries include, but are not limited to, severe lacerations that have resulted in scarring and severe post-traumatic stress disorder, for which he has been required to receive extensive medical treatment, nursing care, and other treatment.

55.     Plaintiff Sharon Teske is the wife of Timothy Teske.  Plaintiffs Jonathan Teske and Taylor Teske are the sons of Timothy Teske and Sharon Teske.  All are citizens of the United States who have suffered extreme mental anguish and emotional distress as a result of the injuries to Timothy Teske.

56.     Plaintiff Gary Cross is a citizen of the United States who suffered severe and permanent physical, mental, and emotional injuries as a result of the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998.  Gary Cross was a Gunnery Sergeant in the Marine Corps at the time of the bombing.  He helped with search and rescue efforts in the aftermath of the attack.  His office was stacked with body parts and corpses.  His injuries include, but are not limited to, loss of hearing, a shoulder injury, severe facial lacerations, a damaged kneecap, and severe post-traumatic stress disorder, for which he has been required to receive extensive medical treatment, nursing care, and other treatment.   Gary Cross has never recovered from the psychological damage caused by the bombing.

57.     Plaintiff Daniel Briehl is a citizen of the United States who suffered severe and permanent physical, mental, and emotional injuries as a result of the bombing of the United States Embassy in Nairobi, Kenya, on August 7, 1998.  He was a sergeant in the Marine Corps who

worked at the Embassy as a Marine Security Guard and rescued other people injured in the bombing. His injuries include, but are not limited to, several broken ribs, severe lacerations that have resulted in scarring, and severe post-traumatic stress disorder, for which he has been required to receive extensive medical treatment, nursing care, and other treatment.

**b.      Foreign Plaintiffs**

58.      Plaintiff The Estate of William Abbas Mwila is the successor of William Abbas Mwila, a Tanzanian national and contractor for the United States, who was killed in the bombing of the United States Embassy in Dar es Salaam, Tanzania, on August 7, 1998.

59.      Plaintiff Judith Abasi Mwila is the wife of William Abbas Mwila. Plaintiffs Edwina Abasi Mwila, Happiness Abasi Mwila, and William Abasi Mwila are the children of William Abbas Mwila. All are Tanzanian nationals who have suffered extreme mental anguish and emotional distress as a result of William Abbas Mwila's death.

60.      Plaintiff The Estate of Mtendeje Rajabu Mtulya is the successor of Mtendeje Rajabu Mtulya, a Tanzanian national and contractor for the United States, who was killed in the bombing of the United States Embassy in Dar es Salaam, Tanzania, on August 7, 1998.

61.      Plaintiff Shabani Saidi Mtulya is the husband of Mtendeje Rajabu Mtuyla. Plaintiffs Abdul Shabani Mtuyla and Saidi Shabani Mtuyla are the children of Mtendeje Rajabu Mtuyla. All are Tanzanian nationals who have suffered extreme mental anguish and emotional distress as a result of Mtendeje Rajabu Mtuyla's death.

62.      Plaintiff The Estate of Yusuf Shamte Ndange is the successor of Yusuf Shamte Ndange, a Tanzanian national and employee of the United States, who was killed in the bombing of the United States Embassy in Dar es Salaam, Tanzania, on August 7, 1998.

63.     Plaintiff Hanuni Ramadhani Ndange is the wife of Yusuf Shamte Ndange. Plaintiffs Abdul Yusuph Shamte Ndange, Juma Yusuph Shamte Ndange, Mwajabu Yusuph Shamte Ndange, Halima Ndange, Maua Ndange, and Ramadhani Ndange are the children of Yusuf Shamte Ndange.  All are Tanzanian nationals who have suffered extreme mental anguish and emotional distress as a result of Yusuf Shamte Ndange's death.

64.     Plaintiffs The Estate of Julita A. Quilacio and The Estate of Eulogio Quilacio are the successors of Julita A. Quilacio and Eulogio Quilacio, the mother and father of Victoria Q. Spiers.  They were citizens of the Philippines who suffered extreme mental anguish and emotional distress as a result of the injuries to Gary Spiers and Victoria Q. Spiers.

65.     Plaintiffs The Estate of Candelaria Quilacio Francisco, Susan Quilacio Nicholas, and The Estate of Edilberto Quilacio are the siblings, or successors of the siblings, of Victoria Q. Spiers.  They are, or were at the time of death, citizens of the Philippines who suffered extreme mental anguish and emotional distress as a result of the injuries to Gary Spiers and Victoria Q. Spiers.

66.     Plaintiff The Estate of Dotio Ramadhani is the successor of Dotio Ramadhani, a Tanzanian national and employee of the United States, who was killed in the bombing of the United States Embassy in Dar es Salaam, Tanzania, on August 7, 1998.

67.     Plaintiffs Kulwa Ramadhani, Renema Ramadhani, and Upendo Ramadhani are the siblings of Dotio Ramadhani.  Plaintiff Mengo Ramadhani is the child of Dotio Ramadhani.  All are Tanzanian nationals who have suffered extreme mental anguish and emotional distress as a result of Dotio Ramadhani's death.

68. Plaintiff The Estate of Rogath Saidi Saidi is the successor of Rogath Saidi Saidi, a Tanzanian national and employee of the United States, who was killed in the bombing of the United States Embassy in Dar es Salaam, Tanzania, on August 7, 1998.

69. Plaintiff The Estate of Veronica Alois Saidi is the successor of Veronica Alois Saidi, the wife of Rogath Saidi Saidi. Plaintiff The Estate of Aisha Mawazo is the successor of Aisha Mawazo, the mother of Rogath Saidi Saidi. Plaintiff The Estate of Adabeth Saidi Nang'oko is the successor of Adabeth Saidi Nang'oko, the brother of Rogath Saidi Saidi. Plaintiffs Daniel Rogath Saidi, Idifonce Rogath Saidi, John Rogath Saidi, and Selinia Rogath Saidi are the children of Rogath Saidi Saidi. All are Tanzanian nationals who have suffered extreme mental anguish and emotional distress as a result of Rogath Saidi Saidi's death.

70. Plaintiff Valentine Mathew Katunda is a Tanzanian national and former contractor for the United States who suffered severe physical, mental, and emotional injuries as a result of the bombing of the United States Embassy in Dar es Salaam, Tanzania, on August 7, 1998. His injuries include, but are not limited to, a concussion, broken teeth, permanent partial loss of hearing, right shoulder injury, headaches, blast burns, severe lacerations, scarring, and permanent and severe post-traumatic stress disorder with nightmares, phobias, and constant fear. He has been required to undergo extensive medical treatment, nursing care, and other treatment.

71. Plaintiff Abella Valentine Katunda is the wife of Valentine Mathew Katunda. Plaintiffs Desidery Valentine Mathew Katunda, Diana Valentine Katunda, Edwin Valentine Mathew Katunda, and Venant Valentine Mathew Katunda, are the children of Valentine Mathew Katunda. All are Tanzanian nationals who have suffered extreme mental anguish and emotional distress as a result of the injuries to Valentine Mathew Katunda.

72.     Plaintiff The Estate of Samuel Thomas Marcus is the successor of Samuel Thomas Marcus, a Tanzanian national and former employee of the United States who suffered severe physical, mental, and emotional injuries as a result of the bombing of the United States Embassy in Dar es Salaam, Tanzania, on August 7, 1998.  His injuries included, but were not limited to, concussion, permanent partial loss of hearing, permanent partial loss of sight, back injury, headaches, blast burns, severe lacerations, particularly to his right leg with glass particles embedded in his body, which continued to cause severe right leg pain, scarring, and permanent and severe post-traumatic stress disorder with nightmares, phobias, and constant fear.  He was required to undergo extensive medical treatment, nursing care, and other treatment.

73.     Plaintiff Coronella Samuel Marcus is the son of Samuel Thomas Marcus.  Plaintiff Tirisa George Thomas is the sister of Samuel Thomas Marcus.  Both are Tanzanian nationals who have suffered extreme mental anguish and emotional distress as a result of the injuries to Samuel Thomas Marcus.

74.     Plaintiff Donti Akili Mwaipape is a Tanzanian national and former contractor for the United States who suffered severe physical, mental, and emotional injuries as a result of the bombing of the United States Embassy in Dar es Salaam, Tanzania, on August 7, 1998.  His injuries include, but are not limited to, concussion, permanent partial loss of hearing, blast burns, severe lacerations, partial loss of vision, swelling of feet, permanent scarring, and severe post-traumatic stress disorder.  He has been required to undergo extensive medical treatment, nursing care, and other treatment.

75.     Plaintiff The Estate of Victoria Donti Mwaipape is the successor of Victoria Donti Mwaipape, the wife of Donti Akili Mwaipape.  Plaintiffs Elisha Donti Mwaipape, Joseph Donti Mwaipape, and Nicholas Mwaipape are the children of Donti Akili Mwaipape.  All are Tanzanian

nationals who have suffered extreme mental anguish and emotional distress as a result of the injuries to Donti Akili Mwaipape.

76.     Plaintiff Edward Mathew Rutaheshelwa is a Tanzanian national and former contractor for the United States who suffered severe physical, mental, and emotional injuries as a result of the bombing of the United States Embassy in Dar es Salaam, Tanzania, on August 7, 1998.  His injuries include, but are not limited to, concussion, permanent partial loss of hearing, permanent partial loss of sight, back injury, headaches, blast burns, severe lacerations, scarring and permanent and severe post-traumatic stress disorder with nightmares, phobias, and constant fear.  He also continues to suffer severe back pain, a recurrent cough, and respiratory distress.  He has been required to undergo extensive medical treatment, nursing care, and other treatment.

77.     Plaintiff Elizabeth Mathew Rutaheshelwa is the wife of Edward Mathew Rutaheshelwa.  Plaintiffs Angelina Mathew Rutaheshelwa, Eric Mathew Rutaheshelwa, and Happiness Mathew Rutaheshelwa are the children of Edward Mathew Rutaheshelwa.  All are Tanzanian nationals who have suffered extreme mental anguish and emotional distress as a result of the injuries to Edward Mathew Rutaheshelwa.

78.     Plaintiff Sundus Buyuk is the mother of Yasemin B. Pressley.  Plaintiffs Tulay Buyuk, Serpil Buyuk, and Bahar Buyuk are the siblings of Yasemin B. Pressley.  All are citizens of Turkey and relatives of Frank B. Pressley, Jr. and Yasemin B. Pressley who have suffered extreme mental anguish and emotional distress as a result of the injuries to Frank B. Pressley, Jr. and Yasemin B. Pressley.

79.     Plaintiff Egambi Fred Kibuhiru Dalizu is a Kenyan national and the husband of Jean Rose Dalizu.  He has suffered extreme mental anguish and emotional distress as a result of the death of Jean Rose Dalizu.

### c.    Defendant

80.    Defendant the Taliban a/k/a Islamic Emirate of Afghanistan is a citizen of Afghanistan and a militant, Islamic fundamentalist organization that seeks to establish a Shariah-governed state in Afghanistan.  The Taliban is a Specially Designated Global Terrorist pursuant to Executive Order 13224 and has long committed and supported terrorist acts, including the embassy bombings at issue in this suit.

## IV.  FACTUAL ALLEGATIONS

81.    The Taliban was established by cleric Mullah Mohammad Omar ("Omar") in 1994, following the Soviet Union's withdrawal from Afghanistan and in the midst of a subsequent civil war.  Its original members largely consisted of mujahedeen fighters, insurgent forces that had contested the Soviet occupation of Afghanistan from 1969–1989.  Among the mujahedeen was the Saudi-born Osama Bin Laden, who founded the international terrorist group known as al-Qaeda in Afghanistan.

82.    By 1996, the Taliban had seized control of much of Afghanistan and established the Islamic Emirate of Afghanistan with Omar serving as head of state.  The Taliban imposed strict Sharia law in the areas it controlled.  That same year, the Taliban welcomed the return of Bin Laden, who came back to Afghanistan from Sudan and set up al-Qaeda's base of operations in the country.

83.    After the Taliban wrested control of Afghanistan, only three countries—Pakistan, Saudi Arabia, and the United Arab Emirates—recognized the Taliban as the legitimate government of Afghanistan.

84.     The Taliban ruled Afghanistan until 2001, when an American-led coalition invaded Afghanistan following the September 11 terrorist attacks and removed the Taliban from power. The Taliban maintained an insurgency for the next two decades.

85.     In 2003, the people of Afghanistan ratified a new constitution and elected a civilian government recognized by the United States and the international community at large.  The Taliban, operating as an insurgency, continued to control parts of Afghanistan.

86.     In 2020, the United States entered an agreement to withdraw U.S. troops from Afghanistan.

87.     Following the withdrawal of U.S. troops from Afghanistan in the summer of 2021, the Taliban commenced a major offensive, and on August 15, 2021, the Taliban captured Afghanistan's capital of Kabul.

88.     The Taliban's offensive created a humanitarian crisis.  After the collapse of Afghanistan's elected government, hundreds of thousands of civilians fled the country.

89.     Although the Taliban has de facto control over most of Afghanistan, not a single country has recognized the Taliban as Afghanistan's legitimate government.

90.     Executive Order 13224, which was signed by President Bush on September 23, 2001, and remains in effect, imposes significant sanctions on the Taliban.  The Order allows the federal government to block the assets of the Taliban and prohibits anyone in the United States from providing the Taliban with funds, goods, or services.

91.     The Taliban is also subject to significant United Nations sanctions barring anyone from supplying weapons, technical or financial assistance, or assets to the Taliban or its members.

92.     Al-Qaeda is a radical Islamist terrorist organization founded by Osama Bin Laden and Muhammad Atef in Afghanistan in 1989.  The Department of State has designated al-Qaeda

26

a Foreign Terrorist Organization pursuant to Section 219 of the Immigration and Nationality Act, 8 U.S.C. § 1189.

93.     Al-Qaeda's objectives include purging the Islamic world of American and Western influences, the destruction of the State of Israel, and the creation of an Islamic caliphate governed under a Sunni interpretation of Shariah law.  At all times relevant to this action, al-Qaeda was given extensive support by the Taliban.

94.     Various other terrorist organizations have functioned under al-Qaeda's broad umbrella, including Egyptian Islamic Jihad, which was led by Ayman al-Zawahiri ("Zawahiri").

95.     Al-Qaeda was based in Afghanistan and Pakistan from 1989 until 1991, at which point its leadership—including Osama Bin Laden—relocated to Sudan.  The Sudanese government provided al-Qaeda with shelter and freedom from interference while preparing for the embassy bombings.

     (a)     In the early 1990s, the government of Sudan invited al-Qaeda to relocate from Afghanistan to Sudan.  Al-Qaeda used Sudanese Airways to transport rockets and missiles from Afghanistan to Sudan.

     (b)     Bin Laden maintained a large villa in Sudan's capital city of Khartoum.

     (c)     The Sudanese government provided security for al-Qaeda and facilitated the movement of weapons in and out of Sudan, on at least one occasion using a Sudanese military base and a port facility owned by the Sudanese government.

     (d)     Sudanese President Omar al-Bashir allowed al-Qaeda members to bypass tax and customs duties on international shipments.  He also guaranteed that their shipments would not be inspected.

(e)     The Sudanese government employed al-Qaeda to manufacture chemical weapons.  Al-Qaeda also provided communications equipment and rifles to the Sudanese military.

96.     Beginning in 1989 and continuing throughout the events alleged in this Complaint, al-Qaeda maintained and funded terrorist training camps throughout Afghanistan with the support of the Taliban.  The camps taught members of al-Qaeda and allied terrorist groups to use firearms, explosives, chemical weapons, and weapons of mass destruction.

97.     In 1996, after Bin Laden was expelled from Sudan, Bin Laden and other members of al-Qaeda's leadership returned to Afghanistan and assisted the Taliban in its conquest of the country.  Bin Laden gave the Taliban $3 million to fund attacks on Kabul and Jalalabad.  The Taliban provided Bin Laden and al-Qaeda their new headquarters.

98.     Following its takeover of Afghanistan, the Taliban continued close relations with al-Qaeda and gave al-Qaeda the same type of support, including geographic safe haven, that Sudan had previously provided.

(a)     The Taliban provided al-Qaeda with weapons, equipment, and training facilities and allowed al-Qaeda to use Afghanistan's national airline to transport members, recruits, and weapons from overseas.

(b)     In return, al-Qaeda paid the Taliban $10–20 million a year for protection.

(c)     Al-Qaeda developed a guerilla network called the 055 brigade, which consisted of 1,500–2,000 soldiers who fought and trained alongside the Taliban.

(d)     Bin Laden reportedly built a house for Omar, who may have married one of Bin Laden's daughters.

99.     The 9/11 Commission Report detailed the close ties between the Taliban and al-Qaeda:

> Bin Laden appeared to have in Afghanistan a freedom of movement that he had lacked in Sudan. Al Qaeda members could travel freely within the country, enter and exit it without visas or any immigration procedures, purchase and import vehicles and weapons, and enjoy the use of official Afghan Ministry of Defense license plates. Al Qaeda also used the Afghan state-owned Ariana Airlines to courier money into the country.
>
> The Taliban seemed to open the doors to all who wanted to come to Afghanistan to train in [al-Qaeda's] camps. The alliance with the Taliban provided al Qaeda a sanctuary in which to train and indoctrinate fighters and terrorists, import weapons, forge ties with other jihad groups and leaders, and plot and staff terrorist schemes.[1]

100.    In August 1996, while located in Taliban-controlled territory in Afghanistan, Bin Laden declared war on the United States via fatwa. He called on all "his Muslim Brothers across the world" to "raise the banner of *jihad* up high against the Judeo-American alliance that has occupied the holy places of Islam."[2] Bin Laden sent copies of his declaration of war to Arabic newspapers across the world. It was first published in the London paper *Al Quds Al-Arabi*.

101.    In 1997, Zawahiri returned to Afghanistan. He remained in command of Egyptian Islamic Jihad and continued to direct terrorist attacks in Egypt. By February 1998, al-Qaeda and Egyptian Islamic Jihad had effectively merged, and Zawahiri became Bin Laden's deputy.

102.    Thousands of Islamic fighters trained at Bin Laden's camps in Taliban-controlled territory in Afghanistan.

---

[1]  The 9/11 Commission Report: Final Report of the National Commission on Terrorist Attacks Upon the United States, at 66 (July 22, 2004).

[2]  Osama Bin Laden's Declaration of Jihad Against Americans *in* 4 *Milestone Documents in World History: Exploring the Primary Sources That Shaped the World* (Brian Bonhomme & Cathleen Boivin eds., 2010).

### a. Planning the Embassy Attacks

103.    In or about 1994, three key perpetrators of the Nairobi attacks relocated to Kenya.

(a)    Wadih El Hage ("El Hage") was formerly Bin Laden's personal secretary and had previously resided in Afghanistan.  He established non-governmental organizations that enabled al-Qaeda members to obtain documentation and identification papers.  He went on to lead al-Qaeda's East African cell and plan the embassy attacks.

(b)    Muhammed Sadiq Odeh ("Odeh") designed the explosives used in the Nairobi attack.

(c)    Fazul Abdullah Mohamed (also known as "Harun") rented a house used for bomb manufacturing.

104.    In January 1997, El Hage met with senior al-Qaeda members in Pakistan and Afghanistan.  He returned to Kenya with instructions from Bin Laden to militarize al-Qaeda's operations in East Africa.

105.    After Kenyan authorities and the Federal Bureau of Investigation searched El Hage's Kenya residence in August 1997, Abdullah Ahmed Abdullah (also known as "Saleh") became the leader of al-Qaeda's Kenya cell.

106.    In February 1998, Bin Laden issued a fatwa from Taliban-controlled territory in Afghanistan declaring it to be the "individual duty for every Muslim who can do it in any country in which it is possible to do it" to "kill the Americans and their allies—civilians and military."[3] The fatwa was widely published and circulated throughout the Islamic world.

---

[3]  Jihad Against Jews and Crusaders: World Islamic Front Statement (Feb. 23, 1998), https://irp.fas.org/world/para/docs/980223-fatwa.htm.

30

107.    In April 1998, the U.S. Ambassador to the United Nations William ("Bill") Richardson went to Afghanistan and asked the Taliban to surrender Bin Laden.  The Taliban refused.

108.    Shortly after the issuance of the February 1998 fatwa, al-Qaeda and Egyptian Islamic Jihad began to plan the attacks on the United States Embassies in Nairobi and Dar es Salaam.

(a)    Bin Laden and Zawahiri, both of whom were located in Afghanistan and sheltered by the Taliban, were responsible for the overall planning of the attacks together with Saleh, who was located in Kenya.

(b)    Odeh constructed the explosive devices in the Nairobi attack.

(c)    Other members of al-Qaeda obtained equipment, reconnoitered the United States Embassy, and fled Kenya prior to the bombing.

(d)    Al-Qaeda members in Tanzania took similar measures to obtain equipment and reconnoiter the United States Embassy.

(e)    All but two al-Qaeda members fled Dar es Salaam prior to the bombing.

(f)    Prior to the bombings, Bin Laden and al-Qaeda leadership left their headquarters in Kandahar, Afghanistan for the Afghanistan countryside in anticipation of U.S. retaliation.

109.    Iran also aided the Taliban and al-Qaeda in planning and carrying out the bombings of the United States Embassies.

(a)    Iran had long trained, armed, and funded Hezbollah, a radical Islamist terrorist organization responsible for killing 63 people in the 1983 attacks on the United States Embassy and Marine Corps barracks in Beirut, Lebanon.

31

(b)      Throughout the 1990s, Hassan al-Turabi, the head of the ruling party in Sudan, hosted numerous meetings with terrorist groups including al-Qaeda, Egyptian Islamic Jihad, and Hezbollah.  Iranian governmental officials attended these meetings.

(c)      The Iranian and Sudanese governments maintained extensive military and intelligence ties.  Iran enabled Hezbollah to maintain a presence in Sudan and trained al-Qaeda members in Sudan.

(d)      In or about the mid-1990s, Hezbollah and Iran cooperated in providing advanced training to al-Qaeda members at Hezbollah training camps in Iran and Lebanon on the use of "sophisticated and powerful explosives" "to destroy large buildings."  Prior to this training, "al-Qaeda did not possess the technical expertise required to carry out the embassy bombings."[4]

### b.  The Bombings of the United States Embassies

110.     On August 7, 1998, the eighth anniversary of the United States deployment of troops to Saudi Arabia, al-Qaeda nearly simultaneously detonated bombs at the United States Embassies in Nairobi, Kenya and Dar es Salaam, Tanzania.

111.     The Nairobi bombing was executed by Jihad Muhammed Ali ("Ali") and Mohammed Rashed Daoud al-Owhali ("al-Owhali").

112.     Prior to the bombing, al-Owhali spent time at al-Qaeda's camps in Afghanistan, where he was trained in explosives, hijacking, and kidnapping.  He personally requested a jihad mission from Bin Laden, who told him to be patient.  Al-Owhali was then sent to fight alongside the Taliban against an American-backed military group.  After he distinguished himself in battle with the Taliban, in or about late 1997 or early 1998, he was approached by an al-Qaeda leader

---

[4]  *Owens v. Republic of Sudan*, 826 F. Supp. 2d. 128, 139 (D.D.C. Nov. 28, 2011).

and offered a mission—the embassy bombing—for which he received additional training in Afghanistan.

113.    Ali detonated a truck bomb in front of the United States Embassy in Nairobi using a gas-enhanced explosive device at 10:30 a.m., killing himself and 213 people, including 12 Americans (11 of whom are Plaintiffs in this suit).  Over 4,000 other people were injured, including 16 of the American Plaintiffs.

114.    The Dar es Salaam bombing occurred concurrently.   Two al-Qaeda members detonated a truck bomb outside the United States Embassy.  One was killed in the blast.  The other, Khalfan Khamis Mohamed, had previously received explosives training in an al-Qaeda training camp in Afghanistan.  The bomb was made from TNT, acetylene cylinder tanks, nitrate fertilizer, and a detonator.  Eleven people, including five of the Foreign Plaintiffs, were killed.  Eighty-five individuals were injured, including four of the Foreign Plaintiffs and one of the American Plaintiffs.

### c.  Aftermath of the Embassy Bombings

115.    The American government immediately linked the embassy bombings to al-Qaeda and the Taliban.

(a)    On August 20, 1998, President Clinton signed Executive Order 13099, which froze all assets of al-Qaeda and Bin Laden in the United States, banned the import of Afghan goods, and prohibited the sale of goods and services to the Taliban.

(b)    President Clinton ordered airstrikes on terrorist training camps throughout Taliban-controlled territory in Afghanistan.  The strikes began on August 20, 1998, and were intended to persuade the Taliban to hand over Bin Laden.  The initial strikes killed 20–30 people but missed Bin Laden by a few hours.

(c)     The United States issued a formal warning to the Taliban, vowing to hold it responsible for any attacks on Americans carried out by al-Qaeda.

(d)     American diplomats unsuccessfully attempted to convince the Taliban to surrender Bin Laden.  Omar refused to do so and vowed to protect Bin Laden "at any cost."[5]

116.    On October 15, 1999, the United Nations Security Council adopted Resolution 1267, which declared both the Taliban and al-Qaeda to be terrorist organizations and imposed sanctions on their funding, travel, and purchases.  The Resolution condemned "the continuing use of Afghan territory, especially areas controlled by the Taliban, for the sheltering and training of terrorists and planning of terrorist acts" and "the fact that the Taliban continues to provide safe haven to Usama bin Laden . . . and others associated with him to operate a network of terrorist training camps from Taliban-controlled territory and to use Afghanistan as a base from which to sponsor international terrorist operations."[6]  The Resolution further demanded that the Taliban surrender Bin Laden.

117.    On May 8, 2000, federal prosecutors indicted 17 members of al-Qaeda in conjunction with their role in the bombings.  The charges included conspiracy to kill United States nationals, bombing the United States Embassies, use of weapons of mass destruction, and murder.  Many of those indicted relied on the Taliban's protection of and support for al-Qaeda to carry out the embassy bombings:

(a)     Osama Bin Laden had intimate ties with Omar and the Taliban, as alleged above.  *See supra* ¶¶ 97–100, 106–107.  Before, during, and after the embassy bombings, Bin Laden resided in Afghanistan under the formal protection of the Taliban.  According

---

[5]  *Taliban Vows to Protect Suspect in U.S. Embassy Blasts 'At Any Cost'*, HOUSTON CHRONICLE, Nov. 6, 1998.

[6]  S.C. Res. 1267 (Oct. 15, 1999).

to American intelligence reports, Omar would defend Bin Laden, even when other Taliban leaders voiced objections, and gave Bin Laden "a completely free hand to act [*i.e.*, carry out attacks] in any country."[7]

(b)     Ayman al Zawahiri, the al-Qaeda deputy, resided in Afghanistan under the protection of the Taliban during the planning of the embassy bombings, and his Egyptian Islamic Jihad merged with al-Qaeda and was therefore hosted in Afghanistan by Omar, and the Taliban, as alleged above.  *See supra* ¶¶ 101, 108.

(c)     Wadih El Hage met with unknown members of al-Qaeda's leadership in Afghanistan, under the protection of the Taliban, to plan the embassy bombings, as alleged above.  *See supra* ¶ 104.

(d)     Muhammed Sadiq Odeh received military training at terrorist camps in Afghanistan, under the protection of the Taliban.  The night before the embassy bombings, he was told that Bin Laden and other Taliban leaders in Afghanistan had abandoned their terrorist camps out of fear of U.S. retaliation.

(e)     Fazul Abdullah Mohamed received military training at terrorist camps in Afghanistan, under the protection of the Taliban.

(f)     Ali Mohamed provided military and intelligence training to terrorists, including Fazul Abdullah Mohamed, in Afghanistan under the protection of the Taliban.

(g)     Khalfan Khamis Mohammed received military training at terrorist camps in Afghanistan, under the protection of the Taliban.

(h)     As alleged above, Mohammed Rashid Daoud Al-Owhali received military training at terrorist camps in Afghanistan, under the protection of the Taliban, and fought

---

[7]  9/11 Report at 66, 123.

alongside the Taliban in battle.  While at the training camps in or about 1996, he met with Bin Laden and asked for a mission.  *See supra* ¶ 112.

118.    Notwithstanding Resolution 1267 and the federal government's request that the Taliban surrender them for trial, Omar and the Taliban refused to extradite Bin Laden and the other al-Qaeda leaders.

119.    The Taliban rebuffed American diplomatic efforts to secure the extradition of Bin Laden.

      (a)    Taliban delegates informed State Department officials that it was "against their culture to expel someone seeking sanctuary."[8]

      (b)    Omar informed Prince Turki al-Faisal of Saudi Arabia that he would not expel Bin Laden, leading Saudi Arabia to suspend diplomatic relations with the Taliban.

      (c)    In a January 2, 1999 interview, Bin Laden credited "the Grace of God [and] the Taliban State" for not "expelling us or handing us over."  He praised Omar as the "emir of the faithful," said al-Qaeda had no plans to leave Afghanistan and described the Taliban as "firm, right, and principled."[9]

      (d)    In summer 1999, a Taliban spokesman said that Bin Laden would never be forcibly removed from Afghanistan.

      (e)    In late 1999, the Taliban Council of Ministers unanimously reaffirmed their intention to continue to defend Bin Laden.

---

[8]  9/11 Report at 121.

[9]  World's Most Wanted Terrorist: An Interview with Osama Bin Laden (Jan. 2, 1999), https://scholarship.tricolib.brynmawr.edu/bitstream/handle/10066/4720/OBL19981222.pdf?sequence=4&isAllowed=y.

(f)     Omar executed at least one Taliban official who opposed his relationship with Bin Laden.

120.    On December 19, 2000, the United Nations Security Council adopted Resolution 1333, which again condemned the Taliban for "continu[ing] to provide safe-haven to Usama bin Laden and to allow him and others associated with him to operate a network of terrorist training camps from Taliban-controlled territory and to use Afghanistan as a base from which to sponsor international terrorist operations."  The Security Council described these actions as "a threat to international peace and security" and demanded that the Taliban extradite Bin Laden and close all terrorist camps.[10]

121.    In a September 23, 2001 interview, Omar said that he would not expel Bin Laden because "Islam's prestige is at stake.  So is Afghan's [sic] tradition."  He said that if he surrendered Bin Laden, "it means we are not Muslims."[11]

122.    The Taliban continues to stand by its actions.  In an April 23, 2020 statement, the Taliban praised Omar's decision not to surrender Bin Laden.

123.    Both Iran and Sudan previously have been found liable for their roles in facilitating the embassy bombings, and the overwhelming majority of Plaintiffs have received judgments and damage awards against Iran or Sudan for the injuries they sustained in the attacks.  *See* Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) (awarding compensatory damages of $487,687,665.78); Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) (awarding compensatory damages of

---

[10]  S.C. Res. 1333 (Dec. 19, 2000).

[11]  Washington Post Staff, *Transcript: VOA Interview With Taliban Leader*, Wash. Post (Sept. 23, 2001),        https://www.washingtonpost.com/wp-srv/nation/attack/transcripts/omarinterview 092301.htm.

$419,752,640.49); Order, *Khaliq v. Republic of Sudan*, No. 1:10-cv-356, Dkt. No. 40 (D.D.C. Mar. 28, 2014) (awarding compensatory damages of $49,761,544.86); Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) (awarding compensatory damages of $622,301,129.50); Order, *Lonnquist v. Islamic Republic of Iran*, No. 1:17-cv-1630, Dkt. 44 (D.D.C. Aug. 31, 2020) (awarding compensatory damages of $454,136,349.58 and punitive damages of $112,939,307.00).  Collecting on these judgments has been difficult and over a billion dollars remains unpaid.

## V.  LEGAL BACKGROUND

124.    The Anti-Terrorism Act ("ATA"), codified at 18 U.S.C. § 2333, authorizes civil suits for United States nationals injured by acts of international terrorism.  The Act "removes the jurisdictional hurdles in the courts confronting victims and it empowers victims with all the weapons available in civil litigation."  *Litle v. Arab Bank, PLC*, 611 F. Supp. 2d 233, 245 (E.D.N.Y. 2009) (quotation marks and emphases omitted).  To recover under the Act, a plaintiff must demonstrate that the defendant, while acting with terroristic intent, engaged in an act of international terrorism that injured the plaintiff.  The ATA allows plaintiffs to recover "threefold the damages" they "sustai[n]," 18 U.S.C. § 2333(a), and courts in the Second Circuit have explained that ATA damages are thus punitive in nature.  *See, e.g.*, *Smith ex rel. Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 240 & n.38 (S.D.N.Y. 2003).

125.    The Alien Tort Statute ("ATS"), codified at 28 U.S.C. § 1350, began as a provision in the Judiciary Act of 1789.  The ATS provides district courts with "original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of the nations or a treaty of the United States."  28 U.S.C. § 1350.  Although the ATS simply confers jurisdiction and does not create causes of action, the Supreme Court has explained that the jurisdictional grant "is best

read as having been enacted on the understanding that the common law would provide a cause of action for the modest number of international law violations" that at the time bore "a potential for personal liability." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 724 (2004). "[I]nfringement of the rights of ambassadors" is the paradigmatic example of an "offens[e] against the law of nations," which the Supreme Court has long recognized as a cognizable violation that may be brought under the ATS. *Id.* at 715; *see also id.* at 720. Claims for infringement on the rights of ambassadors are not limited to ambassadors: "victims, survivors, [and] relatives" of the deceased or wounded from an embassy attack have standing to bring the claim. *Ofisi v. BNP Paribas, S.A.*, 278 F. Supp. 3d 84, 106–07 (D.D.C. 2017) (so holding in the context of the same 1998 embassy bombings), *vacated on other grounds by Ofisi v. BNP Paribas, S.A.*, 285 F. Supp. 3d 240 (D.D.C. 2018); *see also Mwani v. Bin Laden*, 2006 WL 3422208, at *1 (D.D.C. Sept. 28, 2006). Aiding and abetting in a violation of the law of nations—like infringement of the rights of ambassadors—is also a cognizable violation under the ATS. *See Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254, 260 (2d Cir. 2007) (per curiam). Aiding-and-abetting liability exists when an entity purposefully assists another in committing a violation of the law of nations. *See In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 265 (S.D.N.Y. 2009).

126. Punitive damages may be awarded on claims brought under the ATS. *See, e.g.*, *Doe v. Constant*, 354 F. App'x 543, 547 (2d Cir. 2009) (summary order) (affirming award of punitive and compensatory damages entered on a default judgment for ATS and TVPA claims); *Tachiona v. Mugabe*, 234 F. Supp. 2d 401, 441 (S.D.N.Y. 2002) (awarding punitive damages on ATS claims).

127.   State tort law has long provided causes of action for the types of injuries Plaintiffs have suffered here, including assault and battery, intentional infliction of emotional distress, wrongful death, survival, loss of consortium, or aiding and abetting any of these acts.

128.   Plaintiffs may recover punitive damages on these state tort claims.  *See, e.g.*, *Carvel Corp. v. Noonan*, 350 F.3d 6, 24 (2d Cir. 2003) (allowing for punitive damages in "ordinary tort actions" when the plaintiff can demonstrate "the existence of 'circumstances of aggravation or outrage, such as spite or "malice," or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton.'"); *Dickerson v. USAir, Inc.*, 2001 WL 12009, at *9 n.8 (S.D.N.Y. Jan. 4, 2001) (explaining that New York law allows for recovery of punitive damages on survival claims and wrongful death claims); *see also* N.Y. Est. Powers & Trusts Law § 5-4.3(b); *id.* § 11-3.2(b).

## COUNT I
### (Violation of the Anti-Terrorism Act, 18 U.S.C. § 2333)

129.   The previously named American Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

130.   The Anti-Terrorism Act ("ATA") provides that "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs may sue thereof in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees."  18 U.S.C § 2333(a).  Liability under the ATA exists when three elements are satisfied—first, an American national must have suffered an injury; second, there must have been an unlawful act of international terrorism; and third, the injury must have been caused by that act. *See Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 270 (D.C. Cir. 2018); *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335–36 (2d Cir. 2016).

131.     The Taliban is liable under the ATA for the harm that the American victims listed above suffered from the embassy bombings.  By harboring and providing material support to Bin Laden and al-Qaeda and their plot to murder American nationals abroad, the Taliban independently engaged in an act of international terrorism that caused the embassy bombings.

INJURY

132.     As alleged *supra* ¶¶ 8–57, American Plaintiffs were killed or injured by the embassy bombings, or they suffered injury as family members of victims of the bombings.

INTERNATIONAL TERRORISM

133.     Conduct qualifies as "international terrorism" when three components are met. First, the conduct must violate the criminal laws of the United States and pose a danger to human life.  18 U.S.C. § 2331(1)(A).  Second, the conduct must be carried out with a terroristic intent. *Id.* § 2331(1)(B).  And finally, the conduct must "occur primarily outside the territorial jurisdiction of the United States."  *Id.* § 2331(1)(C).

134.     The Taliban committed international terrorism by providing safe haven and material support to Bin Laden and al-Qaeda in Afghanistan with the goal of causing intimidation or coercion.

*First Component—Dangerous Criminal Acts*

135.     Conduct qualifies as "international terrorism" if it involves "violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State."  18 U.S.C. § 2331(1)(A).

136.     The Taliban's conduct before and after the embassy bombings undoubtedly put human lives in danger and violated multiple federal criminal statutes, including 18 U.S.C. § 2339,

41

18 U.S.C. § 2339A, and 18 U.S.C. § 2332.  Each predicate offense provides an independent basis for concluding that this element of the definition of "international terrorism" is satisfied.

137.    The first predicate criminal offense that the Taliban committed was harboring or concealing terrorists under 18 U.S.C. § 2339.

(a)      Section 2339 of Title 18 criminalizes harboring or concealing persons when an individual "knows" or "has reasonable grounds to believe" that person is about to commit certain violent crimes, including arson or bombing of government property that causes injury or death, use of weapons of mass destruction, or acts of terrorism transcending national boundaries.

(b)      The Taliban deliberately harbored and concealed Bin Laden and al-Qaeda operatives despite knowing that Bin Laden and al-Qaeda were preparing for imminent terrorist attacks on United States targets overseas.  *See, e.g.*, *Sokolow v. Palestine Liberation Org.*, 60 F. Supp. 3d 509, 521 (S.D.N.Y. 2014) (finding a triable fact question about whether the defendant committed an ATA predicate offense under § 2339 by "providing material support" to Hamas "in the form of money, a phone, weapons, bomb-making supplies, and a safehouse" to a "Hamas operative and known terrorist").

(i)      <u>Actus Reus</u>.  Bin Laden and al-Qaeda sought refuge and set up their headquarters in Afghanistan shortly after the Taliban seized control of the country. The Taliban maintained a close relationship with Bin Laden and al-Qaeda before and after the embassy bombings.  As explained in more detail *supra* ¶¶ 81–94, 96– 108, 110–122, the Taliban provided al-Qaeda the safe haven and resources— including weapons and training facilities—that it needed to plan and execute the embassy bombings.  The Taliban allowed al-Qaeda operatives to roam freely

throughout the country without visas or immigration documentation. And, with the Taliban's blessing, al-Qaeda used Afghanistan's national aircraft to transport members, recruits and supplies from overseas for the purpose of engaging in acts of terror.

(ii) <u>Mens Rea</u>. As explained in more detail *supra* ¶¶ 81–94, 96–108, 110–122, the Taliban knew of Bin Laden's plan to commit terrorist attacks against the United States generally and had ample reason to know of the plot to bomb the embassies specifically. The Taliban also knew or had reasonable grounds to know that Bin Laden and al-Qaeda were committing other acts of terror before and after the 1998 embassy bombings during the time when the Taliban provided them safe haven. The Taliban chose to provide Bin Laden and al-Qaeda with safe haven, training camps, and weapons, notwithstanding Bin Laden's public fatwas calling for war against the United States, and denied the United States' request to turn over Bin Laden before the embassy bombings.

138. The second predicate criminal offense that the Taliban committed was providing material support to terrorists under 18 U.S.C. § 2339A.

(a) Section 2339A of Title 18 criminalizes providing "material support or resources" while "knowing or intending that they are to be used in preparation for, or in carrying out," of certain violent crimes, such as the arson or bombing of government property which causes injury or death under 18 U.S.C. § 844(f). "Material support or resources" includes giving property, financial support, lodging, training, safehouses, facilities, weapons, or transportation. *Id.* § 2339A(b)(1).

(b)      The Taliban provided material support and resources to Bin Laden and al-Qaeda operatives despite knowing or intending that they would be used to perpetrate violent crimes, including the 1998 embassy bombings.  *See, e.g.*, *Owens v. Republic of Sudan*, 826 F. Supp. 2d 128, 151 (D.D.C. 2011) (finding that Sudan knowingly or intentionally provided "material support and resources" under § 2339A for the 1998 embassy bombings by allowing or encouraging al-Qaeda to operate terrorist enterprises within its borders and "thus provided a base of operations for the planning and execution of terrorist attacks") (quotation marks omitted); *see also Force v. Islamic Republic of Iran*, 464 F. Supp. 3d 323, 365 (D.D.C. 2020) (finding that Iran provided "material support" to terrorists under § 2339A by offering financial support and "substantial operational capacity" in the form of weapons and training).

(i)      Actus Reus.  The Taliban provided multiple forms of "material support" to Bin Laden and al-Qaeda.   It provided a "safehouse" under § 2339A(b)(1) by allowing Bin Laden and al-Qaeda to operate from its territory in Afghanistan.  *Owens*, 826 F. Supp. 2d at 150–51.  It provided "training, expert advice or assistance" under § 2339A(b) through training camps.  *Id.*  It also provided transportation, weapons, and other resources that qualify as material support under § 2339A.

(ii)      Mens Rea.  Section 2339A requires only "knowledge or intent that the resources given to terrorists are to be used in the commission of terrorist acts"; it does not require "the specific intent to aid or encourage the particular attacks that injured plaintiffs."  *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 586 n.9 (E.D.N.Y. 2005); *see also Schansman v. Sberbank of Russia PJSC*, 2021 WL

4482172, at *7 (S.D.N.Y. Sept. 30, 2021) (same).  The Taliban knew or had reason to know that the training camps and other resources it provided were being used to commit acts of terror.  The Taliban nevertheless continued to provide material support to Bin Laden and al-Qaeda.  *See, e.g.*, *Schansman*, 2021 WL 4482172, at *8 (finding the mens rea requirement under § 2339A satisfied when the defendants provided material support for terrorist activities despite being on notice of those activities).

139.     The third predicate criminal offense that the Taliban committed was conspiring to kill United States nationals under 18 U.S.C. § 2332(b).

(a)     Section 2332(b) of Title 18 criminalizes conspiring to murder or cause serious bodily injury to United States nationals abroad.  "Proof of a conspiracy under § 2232(b) requires a plaintiff to establish that the defendant '(1) knew about the aims and objectives of the [alleged] criminal conspirac[y], (2) agreed to the essence of these objectives, and (3) performed acts . . . intended to further these objectives.'"  *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 554 (E.D.N.Y. 2012).

(b)     The Taliban conspired with Bin Laden and al-Qaeda to plan and execute the embassy bombings.  As explained in more detail *supra* ¶¶ 81–94, 96–108, 110–122, the Taliban knew about Bin Laden and al-Qaeda's intent to kill United States nationals and agreed to participate in their plots as evidenced by their provision of the resources and refuge that Bin Laden and al-Qaeda needed to carry out the objective of killing Americans abroad.

140.     The Taliban's conduct likewise posed a danger to human life.  The Taliban provided one of the most notorious terrorist organizations with weapons, training facilities,

transportation, and a base of operations from which to mastermind deadly terrorist attacks. That support helped al-Qaeda and Bin Laden accomplish the goal that they publicly announced mere months before the embassy bombings—the mass murder of Americans and their allies. *Cf. Lelchook v. Islamic Republic of Iran*, 393 F. Supp. 3d 261, 266 (E.D.N.Y. 2019) (finding that providing financial support to known terrorist groups constituted acts "'dangerous to human life'").

### *Second Component—Terroristic Intent*

141.    Conduct does not qualify as "international terrorism" unless it appears intended "to intimidate or coerce a civilian population," "to influence the policy of a government by intimidation or coercion," or "to affect the conduct of a government by mass destruction, assassination, or kidnapping." 18 U.S.C. § 2331(1)(B).

142.    The Taliban acted with terroristic intent by providing resources and refuge to Bin Laden and al-Qaeda knowing they would use that support to commit acts of terror. Bin Laden issued fatwas specifically calling for acts of violence against the United States in an effort to intimidate the United States and affect U.S. foreign policy. The Taliban's decision to provide refuge and resources to Bin Laden and al-Qaeda, even after those fatwas were issued, made the Taliban a part of their conspiracy, which necessarily means that the Taliban's actions were intended to "intimidate or coerce a civilian population," to "influence the policy of a government by intimidation or coercion," or to "affect the conduct of a government" by various means. *See Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 693–94, 708 (7th Cir. 2008) (quotation marks omitted); *see also Abecassis v. Wyatt*, 7 F. Supp. 3d 668, 676 (S.D. Tex. 2014) ("Donations appear to be intended to intimidate or coerce a civilian population, influence the policy of a government by intimidation or coercion, or affect the conduct of a government by mass

destruction, assassination or kidnaping when a donor knows the terroristic aims and activities of its recipient and when it is foreseeable that the donations will advance such terroristic aims."). The Taliban's conduct after the attacks—including its continued provision of support to al-Qaeda and its refusal to surrender Bin Laden and al-Qaeda operatives despite being presented with evidence of their role in international terrorism—further confirms that it acted with terroristic intent.

*Third Component—Outside the United States*

143.   The final component of international terrorism requires the relevant conduct to occur outside the territorial jurisdiction of the United States. 18 U.S.C. § 2331(1)(C). All the relevant conduct took place outside the United States—the Taliban provided refuge and resources to Bin Laden and al-Qaeda in Afghanistan where the attacks were planned, and the bombings themselves occurred in Kenya and Tanzania.

CAUSATION

144.   ATA liability exists when injuries are caused "by reason of" international terrorism. That causation requirement is met when injuries are proximately caused by the defendant's conduct. *See Rothstein v. UBS AG*, 708 F.3d 82, 95 (2d Cir. 2013). "[P]roximate cause requires a showing that Defendant's actions were 'a substantial factor in the sequence of responsible causation,' and that the injury was 'reasonably foreseeable or anticipated as a natural consequence.'" *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 432 (E.D.N.Y. 2013) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003)).

145.   The D.C. Circuit held in *Owens v. Republic of Sudan* that Sudan's conduct proximately caused the 1998 embassy bombings. 864 F.3d 751, 797 (D.C. Cir. 2017), *vacated and remanded sub nom. on other grounds*, *Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020). Sudan's conduct was a substantial factor in bringing about the attacks because Sudan fostered al-

Qaeda's economic growth, sheltered the terrorist group from local police, and provided it with critical financial support. *Id.* at 794. The injuries from the bombing were reasonably foreseeable because it was obvious that al-Qaeda "would attack American interests wherever it could find them." *Id.* at 798. Notably, the court found that Sudan caused the embassy bombings despite the fact that Sudan cut ties with Bin Laden in 1996 by expelling him from the country. *Id.* at 796.

146.   Like Sudan's conduct in *Owens*, the Taliban's actions were a substantial factor in causing the embassy bombings. *See supra* ¶¶ 81–94, 96–108, 110–122. The Taliban gave Bin Laden and al-Qaeda the safe haven they needed to establish a base of operations from which to plan and prepare for their acts of terror—including the embassy bombings. The Taliban likewise gave Bin Laden and al-Qaeda the material support they needed to conduct the bombings—including the camp where one of the bombers extensively trained, weapons and resources needed to develop and sustain the terrorist organization, the ability to freely travel in and out of the country in planning for the embassy attacks, and cover from foreign intelligence services that could have prevented the attacks from happening. Furthermore, the Taliban's refusal to hand Bin Laden over to the United States months before the embassy bombings occurred had a direct and substantial effect on the embassy bombings. If anything, the Taliban is more culpable than Sudan because, unlike Sudan, the Taliban provided refuge and resources to Bin Laden and al-Qaeda in the immediately preceding days, months, and years before the attacks.

147.   The death and severe physical, mental, emotional injuries that the American Plaintiffs suffered were the reasonably foreseeable and natural result of the embassy bombings. The Taliban anticipated and intended that that al-Qaeda's terrorist acts would cause serious injuries and death.

148.    WHEREFORE, the previously named American Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

### COUNT II
### (Violation of the Law of Nations)

149.    The previously named Foreign Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

150.    "Violations of the law of nations" include "those 'violations of . . . international law norm[s] with [as] definite content and acceptance among civilized nations [as] the historical paradigms familiar when [the ATS] was enacted [in 1789].'" *Mastafa v. Chevron Corp.*, 770 F.3d 170, 180 (2d Cir. 2014).  Conduct that infringes upon the rights of ambassadors has long been recognized as an actionable violation of the law of nations.  *See, e.g.*, *Sosa*, 542 U.S. at 715, 719–20 (explaining that Congress intended the ATS to give courts jurisdiction to adjudicate tort actions for offenses against ambassadors).

151.    The Taliban infringed on the rights of ambassadors by proximately causing the embassy bombings through the provision of material support to Bin Laden and al-Qaeda with full knowledge that they intended to attack the United States.  *See supra* ¶¶ 81–94, 96–108, 110–122, 144–147.  The embassy bombings destroyed the embassy buildings, killed hundreds of embassy employees, visitors, and bystanders, and wounded thousands more.  The Taliban's actions risked serious injury or death to ambassadors and impinged upon the diplomatic mission of the United States in Kenya and Tanzania, thereby violating the law of nations.

152.    As alleged *supra* ¶¶ 58–79, the Foreign Plaintiffs were killed or injured by the embassy bombings, or they suffered injury as family members of victims of the bombings.

49

153.    WHEREFORE, the previously named Foreign Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

## COUNT III
### (Aiding & Abetting a Violation of the Law of Nations)

154.    The previously named Foreign Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

155.    The Taliban is also liable for aiding and abetting in the commission of the embassy bombings, which violated the law of nations.  Because it purposely provided Bin Laden and al-Qaeda with substantial support to bomb the embassies, it is liable for the injuries of Foreign Plaintiffs.

PREDICATE OFFENSE

156.    As alleged above, the embassy bombings perpetrated by Bin Laden and al-Qaeda unquestionably interfered with the rights of ambassadors in violation of the law of nations.  Bin Laden and al-Qaeda's actions risked serious injury or death to ambassadors and impinged upon the diplomatic mission of the United States in Kenya and Tanzania, thereby violating the law of nations.  *See, e.g.*, *Ofisi v. BNP Paribas, S.A.*, 278 F. Supp. 3d 84, 106–07 (D.D.C. 2017) (finding the plaintiffs adequately pled a violation of the law of nations based on the 1998 embassy bombings); *Mwani v. Bin Ladin*, 2006 WL 3422208, at *4 (D.D.C. Sept. 28, 2006) (same).

157.    The bombings killed or injured all of the previously named Foreign Plaintiffs.

*Aiding & Abetting*

158.    "A defendant may be held liable under an aiding and abetting theory of liability under international law if the defendant '(1) provide[d] practical assistance to the principal which has a substantial effect on the perpetration of the crime, and (2) d[id] so with the purpose of

facilitating the commission of that crime.'" *Licci by Licci v. Lebanese Canadian Bank, SAL*, 834 F.3d 201, 213, 217 (2d Cir. 2016).

159.    The Taliban's support to Bin Laden and al-Qaeda had "a substantial effect" on the commission of the embassy bombings that violated the law of nations.  The Taliban gave al-Qaeda substantial support in the form of weapons, training camps, and a base of operations in Taliban-controlled territory.  The refuge and resources that the Taliban provided facilitated in the planning and execution of the embassy bombings, allowing al-Qaeda to train and organize its members for acts of terrorism, while being sheltered from United States intelligence services.  Moreover, the Taliban aided in the preparation and execution of the bombings by allowing the conspirators to travel freely into and out of Afghanistan and Africa.  The Taliban's participation and support were necessary to the successful execution of the embassy bombings.

160.    The Taliban acted with the purpose of facilitating those embassy bombings.  To begin with, the Taliban knew about Bin Laden's plans to commit acts of terror against the United States and its allies and deliberately chose to shelter and support Bin Laden and al-Qaeda, refusing to hand over Bin Laden to the United States before the attacks.  Bin Laden issued the public fatwa that precipitated the embassy bombings from Taliban-controlled territory.  During the relevant time period, the Taliban worked closely with Bin Laden and al-Qaeda to provide the cover and resources needed to bomb the embassies.  The embassy bombings were planned in Taliban territory and carried out in part by an operative that both trained extensively at al-Qaeda's camps in Taliban territory and fought alongside the Taliban in Afghanistan.  After the attacks in Africa had been set in motion, key members of the plot received refuge from the Taliban—the Taliban refused to hand them or Bin Laden over to U.S. authorities.

161.    WHEREFORE, the previously named Foreign Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

## COUNT IV
### (Assault and Battery)

162.    Plaintiffs James Owens, Frank B. Pressley, Jr., Yasemin B. Pressley, Ellen Richard, The Estate of Clyde M. Hirn, Joyce Reed, Worley Lee Reed, Lydia Hickey, Gary Spiers, Victoria Q. Spiers, Donti Akili Mwaipape, Valentine Mathew Katunda, Edward Mathew Rutaheshelwa, The Estate of Samuel Thomas Marcus, Rizwan Khaliq, Jenny Christina Lovblom, The Estate of Howard Charles Kavaler, Gary Lonnquist, Timothy Teske, Gary Cross, and Daniel Briehl incorporate the preceding paragraphs as if fully set forth herein.

163.    On August 7, 1998, when the explosive devices described above were detonated at Dar es Salaam, Tanzania and Nairobi, Kenya, Plaintiffs suffered severe and permanent injuries, including but not limited to brain injuries, concussions, internal bleeding, lung injuries, spinal injuries, shoulder injuries, destruction of joints, blast burns, severe lacerations that have resulted in permanent scarring, permanent blindness, detached retinas, partial loss of vision, permanent total or partial loss of hearing, punctured eardrums, loss of teeth, broken teeth, tissue damage, nerve damage, shrapnel and glass wounds, fractures, multiple cuts, abrasions, and bruises, swelling of feet, headaches, loss of balance, erectile dysfunction, loss of memory and mental ability, and severe post-traumatic stress disorder.

164.    The explosions described above were intended to cause offensive or harmful bodily contact with the above-named Plaintiffs without their consent and to put them in apprehension of imminent offensive or harmful bodily contact without their consent. The explosions and resulting injuries were caused by the willful and deliberate acts of persons to whom Defendant provided

material support, shelter, and protection. Defendant did so for the purpose of inflicting physical injuries upon the above-named Plaintiffs and others, or believed that such infliction of physical injuries was substantially certain to result from its acts.

165. As a direct and proximate consequence of the acts of Defendant as set forth above and the injuries thereby inflicted, the above-named Plaintiffs have been required to undergo extensive medical treatment, nursing care, and other treatment, for which they have been required to expend funds, have occasioned a loss of wages, and have endured great pain and suffering, humiliation, and embarrassment, and have thereby suffered damages as set forth below.

166. WHEREFORE, the above-named Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

## COUNT V
### (Aiding and Abetting Assault and Battery)

167. Plaintiffs James Owens, Frank B. Pressley, Jr., Yasemin B. Pressley, Ellen Richard, The Estate of Clyde M. Hirn, Joyce Reed, Worley Lee Reed, Lydia Hickey, Gary Spiers, Victoria Q. Spiers, Donti Akili Mwaipape, Valentine Mathew Katunda, Edward Mathew Rutaheshelwa, The Estate of Samuel Thomas Marcus, Rizwan Khaliq, Jenny Christina Lovblom, The Estate of Howard Charles Kavaler, Gary Lonnquist, Timothy Teske, Gary Cross, and Daniel Briehl incorporate the preceding paragraphs as if fully set forth herein.

168. As described above, Plaintiffs suffered severe and permanent injuries from the explosive devices detonated on August 7, 1998.

169. The explosions described above were intended to cause offensive or harmful bodily contact with the above-named Plaintiffs without their consent and to put them in apprehension of imminent offensive or harmful bodily contact without their consent. The explosions were caused

by the willful and deliberate acts of persons who were knowingly and substantially assisted by Defendant. At the time Defendant provided this substantial assistance, Defendant was aware of its role in illegal or tortious activity.

170. As a direct and proximate consequence of the acts of Defendant as set forth above and the injuries thereby inflicted, the above-named Plaintiffs have been required to undergo extensive medical treatment, nursing care, and other treatment, for which they have been required to expend funds, have occasioned a loss of wages, and have endured great pain and suffering, humiliation, and embarrassment, and have thereby suffered damages as set forth below.

171. WHEREFORE, the above-named Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

## COUNT VI
### (Intentional Infliction of Emotional Distress)

172. Plaintiffs James Owens, Gary Robert Owens, The Estate of Betty Owens Evely, Barbara Goff, Frank B. Pressley, Jr., Yasemin B. Pressley, David A. Pressley, Thomas C. Pressley, Michael F. Pressley, Berk F. Pressley, Jon B. Pressley, Marc Y. Pressley, Sundus Buyuk, The Estate of Montine Bowen, The Estate of Frank Pressley, Sr., Bahar Buyuk, Serpil Buyuk, Tulay Buyuk, Ahmet Buyuk, Dorothy Willard, Ellen Richard, The Estate of Donald G. Bomer, Michael James Cormier, The Estate of Patricia Feore, George Karas, The Estate of Nicholas Karas, The Estate of Clyde M. Hirn, Patricia K. Fast, The Estate of Inez Hirn, Paul Hirn, Eloise Hubble, Margaret Baker, Joyce Reed, Worley Lee Reed, Cheryl L. Blood, Bret W. Reed, The Estate of Ruth Ann Whiteside, The Estate of Flossie Varney, Linda Whiteside O'Donnell, Lydia Hickey, The Estate of Howard Sparks, Sr., Tabitha Carter, Howard Sparks, Jr., Michael Ray Sparks, The Estate of Leroy Moorefield, The Estate of Roger Moorefield, Linda Shough, Laura Harris, Lora

Murphy, Loretta Paxton, The Estate of Rodney Moorefield, Gary Spiers, Victoria Q. Spiers, Victoria J. Spiers, Richard David Patrick, The Estate of Julita A. Quilacio, The Estate of Eulogio Quilacio, The Estate of Edilberto Quilacio, The Estate of Candelaria Quilacio Francisco, Rolando Quilacio, Susan Quilacio Nicholas, Rizwan Khaliq, Jenny Christina Lovblom, Imtiaz Begum, Yasir Aziz, Imran Khaliq, Kamran Khaliq, Irfan Khaliq, Naurin Khaliq, Tehsin Khaliq, Clara Leah Aliganga, Leah Ann Colston-Baker, Mary Linda Sue Bartley, Edith Lynn Bartley, The Estate of Gladys Baldwin, Mangairu Vidija Dalizu, Egambi Fred Kibuhiru Dalizu, Lawrence Anthony Hicks, Lori Elaine Dalizu, Temina Engesia Dalizu, The Estate of Rose Banks Freeman, The Estate of James Herbert Freeman, The Estate of Gwendolyn Tauwana Garrett, The Estate of Jeanette Ella Marie Goines, The Estate of Joyce McCray, The Estate of Sheila Elaine Freeman, Jewell Patricia Neal, June Beverly Freeman, Brandi Hardy Plants, The Estate of Jane Huckaby, Deborah Hobson-Bird, Meghan Elizabeth Hobson, The Estate of Kenneth Ray Hobson, Bonnie Sue Hobson, The Estate of Howard Charles Kavaler, Maya Pia Kavaler, Tara Lia Kavaler, The Estate of Pearl Daniels Kavaler, The Estate of Leon Kavaler, Richard Martin Kavaler, Robert Kirk, Jr., Robert Michael Kirk, Maisha Kirk Humphrey, The Estate of Mary Katherine Bradley, The Estate of Kenneth Alva Bradley, Neil Alan Bradley, Dennis Arthur Bradley, The Estate of Patricia Anne Bradley Williams, Katherine Bradley Wright, Douglas Norman Klaucke, James Robert Klaucke, William Russell Klaucke, Karen Marie Klaucke, The Estate of Joseph Denegre Martin, Jr., The Estate of Joseph Denegre Martin III, Michael Hawkins Martin, Stephen Harding Martin, The Estate of Kathleen Martin Boellert, Martha Martin Ourso, Susan Elizabeth Martin Bryson, James Paul O'Connor, Micaela Ann O'Connor, Tara Colleen O'Connor, Jennifer Erin Perez, Gwendolyn Frederic Deney, Delbert Raymond Olds, The Estate of Mary Evelyn Freeman Olds, Christa Gay DeGracia, Kimberly Ann Zimmerman, Marsey Gayle Cornett, Gary Lonnquist, Timothy Teske,

Sharon Teske, Jonathan Teske, Taylor Teske, Gary Cross, Daniel Briehl, Judith Abasi Mwila, Edwina Abasi Mwila, Happiness Abasi Mwila, William Abasi Mwila, Shabani Saidi Mtulya, Abdul Shabani Mtulya, Saidi Shabani Mtulya, Hanuni Ramadhani Ndange, Abdul Yusuph Shamte Ndange, Juma Yusuph Shamte Ndange, Mwajabu Yusuph Shamte Ndange, Halima Ndange, Maua Ndange, Ramadhani Ndange, Kulwa Ramadhani, Renema Ramadhani, Upendo Ramadhani, Mengo Ramadhani, The Estate of Veronica Alois Saidi, The Estate of Aisha Mawazo, The Estate of Adabeth Saidi Nang'oko, Daniel Rogath Saidi, Idifonce Rogath Saidi, John Rogath Saidi, Selinia Rogath Saidi, Valentine Mathew Katunda, Abella Valentine Katunda, Desidery Valentine Mathew Katunda, Diana Valentine Katunda, Edwin Valentine Mathew Katunda, Venant Valentine Mathew Katunda, The Estate of Samuel Thomas Marcus, Coronella Samuel Marcus, Tirisa George Thomas, Donti Akili Mwaipape, The Estate of Victoria Donti Mwaipape, Elisha Donti Mwaipape, Joseph Donti Mwaipape, Nicholas Mwaipape, Edward Mathew Rutaheshelwa, Elizabeth Mathew Rutaheshelwa, Angelina Mathew Rutaheshelwa, Eric Mathew Rutaheshelwa, and Happiness Mathew Rutaheshelwa incorporate the preceding paragraphs as if fully set forth herein.

173.     The explosions described above were done with intent to cause severe emotional distress to the above-named Plaintiffs, or with disregard of a substantial probability of causing severe emotional distress to the above-named Plaintiffs. The explosions and resulting severe emotional distress were caused by the willful and deliberate acts of persons to whom Defendant provided material support, shelter, and protection. Defendant did so with intent to cause severe emotional distress upon the above-named Plaintiffs and others, or believed that such infliction of severe emotional distress was substantially certain to result from its acts, or with disregard of a substantial probability of causing severe emotional distress to the above-named Plaintiffs. The explosions and Defendant's material support, shelter, and protection constitute conduct so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

174. As a direct and proximate consequence of the acts of Defendant as set forth above and the severe emotional distress thereby inflicted, the above-named Plaintiffs have endured and continue to endure extreme mental anguish and despair, emotional and psychological distress and anxiety, and have thereby suffered solatium damages as set forth below.

175. WHEREFORE, the above-named Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

## COUNT VII
### (Aiding and Abetting Intentional Infliction of Emotional Distress)

176. Plaintiffs James Owens, Gary Robert Owens, The Estate of Betty Owens Evely, Barbara Goff, Frank B. Pressley, Jr., Yasemin B. Pressley, David A. Pressley, Thomas C. Pressley, Michael F. Pressley, Berk F. Pressley, Jon B. Pressley, Marc Y. Pressley, Sundus Buyuk, The Estate of Montine Bowen, The Estate of Frank Pressley, Sr., Bahar Buyuk, Serpil Buyuk, Tulay Buyuk, Ahmet Buyuk, Dorothy Willard, Ellen Richard, The Estate of Donald G. Bomer, Michael James Cormier, The Estate of Patricia Feore, George Karas, The Estate of Nicholas Karas, The Estate of Clyde M. Hirn, Patricia K. Fast, The Estate of Inez Hirn, Paul Hirn, Eloise Hubble, Margaret Baker, Joyce Reed, Worley Lee Reed, Cheryl L. Blood, Bret W. Reed, The Estate of Ruth Ann Whiteside, The Estate of Flossie Varney, Linda Whiteside O'Donnell, Lydia Hickey, The Estate of Howard Sparks, Sr., Tabitha Carter, Howard Sparks, Jr., Michael Ray Sparks, The Estate of Leroy Moorefield, The Estate of Roger Moorefield, Linda Shough, Laura Harris, Lora Murphy, Loretta Paxton, The Estate of Rodney Moorefield, Gary Spiers, Victoria Q. Spiers, Victoria J. Spiers, Richard David Patrick, The Estate of Julita A. Quilacio, The Estate of Eulogio

Quilacio, The Estate of Edilberto Quilacio, The Estate of Candelaria Quilacio Francisco, Rolando

Quilacio, Susan Quilacio Nicholas, Rizwan Khaliq, Jenny Christina Lovblom, Imtiaz Begum,

Yasir Aziz, Imran Khaliq, Kamran Khaliq, Irfan Khaliq, Naurin Khaliq, Tehsin Khaliq, Clara Leah

Aliganga, Leah Ann Colston-Baker, Mary Linda Sue Bartley, Edith Lynn Bartley, The Estate of

Gladys Baldwin, Mangairu Vidija Dalizu, Egambi Fred Kibuhiru Dalizu, Lawrence Anthony

Hicks, Lori Elaine Dalizu, Temina Engesia Dalizu, The Estate of Rose Banks Freeman, The Estate

of James Herbert Freeman, The Estate of Gwendolyn Tauwana Garrett, The Estate of Jeanette Ella

Marie Goines, The Estate of Joyce McCray, The Estate of Sheila Elaine Freeman, Jewell Patricia

Neal, June Beverly Freeman, Brandi Hardy Plants, The Estate of Jane Huckaby, Deborah Hobson-

Bird, Meghan Elizabeth Hobson, The Estate of Kenneth Ray Hobson, Bonnie Sue Hobson, The

Estate of Howard Charles Kavaler, Maya Pia Kavaler, Tara Lia Kavaler, The Estate of Pearl

Daniels Kavaler, The Estate of Leon Kavaler, Richard Martin Kavaler, Robert Kirk, Jr., Robert

Michael Kirk, Maisha Kirk Humphrey, The Estate of Mary Katherine Bradley, The Estate of

Kenneth Alva Bradley, Neil Alan Bradley, Dennis Arthur Bradley, The Estate of Patricia Anne

Bradley Williams, Katherine Bradley Wright, Douglas Norman Klaucke, James Robert Klaucke,

William Russell Klaucke, Karen Marie Klaucke, The Estate of Joseph Denegre Martin, Jr., The

Estate of Joseph Denegre Martin III, Michael Hawkins Martin, Stephen Harding Martin, The

Estate of Kathleen Martin Boellert, Martha Martin Ourso, Susan Elizabeth Martin Bryson, James

Paul O'Connor, Micaela Ann O'Connor, Tara Colleen O'Connor, Jennifer Erin Perez, Gwendolyn

Frederic Deney, Delbert Raymond Olds, The Estate of Mary Evelyn Freeman Olds, Christa Gay

DeGracia, Kimberly Ann Zimmerman, Marsey Gayle Cornett, Gary Lonnquist, Timothy Teske,

Sharon Teske, Jonathan Teske, Taylor Teske, Gary Cross, Daniel Briehl, Judith Abasi Mwila,

Edwina Abasi Mwila, Happiness Abasi Mwila, William Abasi Mwila, Shabani Saidi Mtulya,

Abdul Shabani Mtulya, Saidi Shabani Mtulya, Hanuni Ramadhani Ndange, Abdul Yusuph Shamte Ndange, Juma Yusuph Shamte Ndange, Mwajabu Yusuph Shamte Ndange, Halima Ndange, Maua Ndange, Ramadhani Ndange, Kulwa Ramadhani, Renema Ramadhani, Upendo Ramadhani, Mengo Ramadhani, The Estate of Veronica Alois Saidi, The Estate of Aisha Mawazo, The Estate of Adabeth Saidi Nang'oko, Daniel Rogath Saidi, Idifonce Rogath Saidi, John Rogath Saidi, Selinia Rogath Saidi, Valentine Mathew Katunda, Abella Valentine Katunda, Desidery Valentine Mathew Katunda, Diana Valentine Katunda, Edwin Valentine Mathew Katunda, Venant Valentine Mathew Katunda, The Estate of Samuel Thomas Marcus, Coronella Samuel Marcus, Tirisa George Thomas, Donti Akili Mwaipape, The Estate of Victoria Donti Mwaipape, Elisha Donti Mwaipape, Joseph Donti Mwaipape, Nicholas Mwaipape, Edward Mathew Rutaheshelwa, Elizabeth Mathew Rutaheshelwa, Angelina Mathew Rutaheshelwa, Eric Mathew Rutaheshelwa, and Happiness Mathew Rutaheshelwa incorporate the preceding paragraphs as if fully set forth herein.

177.    The explosions described above were done with intent to cause severe emotional distress to the above-named Plaintiffs, or with disregard of a substantial probability of causing severe emotional distress to the above-named Plaintiffs.  The explosions and resulting severe emotional distress were caused by the willful and deliberate acts of persons who were knowingly and substantially assisted by Defendant.  At the time Defendant provided this substantial assistance, Defendant was aware of its role in illegal or tortious activity.  The explosions constitute conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

178.    As a direct and proximate consequence of the acts of Defendant as set forth above and the severe emotional distress thereby inflicted, the above-named Plaintiffs have endured and

continue to endure extreme mental anguish and despair, emotional and psychological distress and anxiety, and have thereby suffered solatium damages as set forth below.

179.    WHEREFORE, the above-named Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

## COUNT VIII
### (Wrongful Death)

180.    Plaintiffs The Estate of Jesse Nathanael Aliganga, The Estate of Julian Leotis Bartley, Sr., The Estate of Julian Leotis Bartley, Jr., The Estate of Jean Rose Dalizu, The Estate of Molly Huckaby Hardy, The Estate of Kenneth Ray Hobson II, The Estate of Prabhi Guptara Kavaler, The Estate of Arlene Bradley Kirk, The Estate of Mary Louise Martin, The Estate of Ann Michelle O'Connor, The Estate of Sherry Lynn Olds, The Estate of William Abbas Mwila, The Estate of Yusuf Shamte Ndange, The Estate of Mtendeje Rajabu Mtulya, The Estate of Rogath Saidi Saidi, and The Estate of Dotio Ramadhani, each of which is represented by a personal representative appointed on behalf of the decedents, incorporate the preceding paragraphs as if fully set forth herein.

181.    On August 7, 1998, when the explosive devices described above were detonated at Dar es Salaam, Tanzania and Nairobi, Kenya, the decedents suffered fatal injuries.

182.    The explosions described above were intended to cause offensive or harmful bodily contact with the decedents without their consent and to put them in apprehension of imminent offensive or harmful bodily contact without their consent.  The explosions and resulting fatal injuries were caused by the willful and deliberate acts of persons to whom Defendant provided material support, shelter, and protection.  Defendant did so for the purpose of inflicting fatal injuries upon the decedents and others, or believed that such infliction of fatal injuries was

substantially certain to result from its acts.  By reason of such wrongful conduct, Defendant would have been liable to the decedents if death had not ensued.

183.    As a direct and proximate consequence of the acts of Defendant as set forth above and the deaths of the decedents thereby resulting, the heirs and beneficiaries who survive the decedents have suffered pecuniary loss, including but not limited to loss of future aid, assistance, financial support, loss of accretions to the decedents' estates, and loss of care, parental assistance, services, and comfort, and have thereby suffered damages as set forth below.

184.    WHEREFORE, the above-named Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

### COUNT IX
### (Aiding and Abetting Wrongful Death)

185.    Plaintiffs The Estate of Jesse Nathanael Aliganga, The Estate of Julian Leotis Bartley, Sr., The Estate of Julian Leotis Bartley, Jr., The Estate of Jean Rose Dalizu, The Estate of Molly Huckaby Hardy, The Estate of Kenneth Ray Hobson II, The Estate of Prabhi Guptara Kavaler, The Estate of Arlene Bradley Kirk, The Estate of Mary Louise Martin, The Estate of Ann Michelle O'Connor, The Estate of Sherry Lynn Olds, The Estate of William Abbas Mwila, The Estate of Yusuf Shamte Ndange, The Estate of Mtendeje Rajabu Mtulya, The Estate of Rogath Saidi Saidi, and The Estate of Dotio Ramadhani, each of which is represented by a personal representative appointed on behalf of the decedents, incorporate the preceding paragraphs as if fully set forth herein.

186.    On August 7, 1998, when the explosive devices described above were detonated at Dar es Salaam, Tanzania and Nairobi, Kenya, the decedents suffered fatal injuries.

187.   The explosions described above were intended to cause offensive or harmful bodily contact with the decedents without their consent and to put them in apprehension of imminent offensive or harmful bodily contact without their consent.   The explosions were caused by the willful and deliberate acts of persons who were knowingly and substantially assisted by Defendant. At the time Defendant provided this substantial assistance, Defendant was aware of its role in illegal or tortious activity.   By reason of such wrongful conduct, Defendant would have been liable to the decedents if death had not ensued.

188.   As a direct and proximate consequence of the acts of Defendant as set forth above and the deaths of the decedents thereby resulting, the heirs and beneficiaries who survive the decedents have suffered pecuniary loss, including but not limited to loss of future aid, assistance, financial support, loss of accretions to the decedents' estates, and loss of care, parental assistance, services, and comfort, and have thereby suffered damages as set forth below.

189.   WHEREFORE, the above-named Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

## COUNT X
### (Survival)

190.   Plaintiffs The Estate of Jesse Nathanael Aliganga, The Estate of Julian Leotis Bartley, Sr., The Estate of Julian Leotis Bartley, Jr., The Estate of Jean Rose Dalizu, The Estate of Molly Huckaby Hardy, The Estate of Kenneth Ray Hobson II, The Estate of Prabhi Guptara Kavaler, The Estate of Arlene Bradley Kirk, The Estate of Mary Louise Martin, The Estate of Ann Michelle O'Connor, The Estate of Sherry Lynn Olds, The Estate of William Abbas Mwila, The Estate of Yusuf Shamte Ndange, The Estate of Mtendeje Rajabu Mtulya, The Estate of Rogath Saidi Saidi, and The Estate of Dotio Ramadhani, each of which is represented by a personal

representative appointed on behalf of the decedents, incorporate the preceding paragraphs as if fully set forth herein.

191.    On August 7, 1998, when the explosive devices described above were detonated at Dar es Salaam, Tanzania and Nairobi, Kenya, the decedents suffered extreme bodily pain and suffering prior to death.

192.    The explosions described above were intended to cause offensive or harmful bodily contact with the decedents without their consent and to put them in apprehension of imminent offensive or harmful bodily contact without their consent.  The explosions and resulting extreme bodily pain and suffering were caused by the willful and deliberate acts of persons to whom Defendant provided material support, shelter, and protection.  Defendant did so for the purpose of inflicting extreme bodily pain and suffering upon the decedents and others, or believed that such infliction of extreme bodily pain and suffering was substantially certain to result from its acts.

193.    The explosions described above were done with intent to cause severe emotional distress to the decedents, or with disregard of a substantial probability of causing severe emotional distress to the decedents.  The explosions and resulting severe emotional distress were caused by the willful and deliberate acts of persons to whom Defendant provided material support, shelter, and protection.  Defendant did so with intent to cause severe emotional distress upon the decedents and others, or believed that such infliction of severe emotional distress was substantially certain to result from its acts, or with disregard of a substantial probability of causing severe emotional distress to the decedents.  The explosions and Defendant's material support, shelter, and protection constitute conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

194.    As a direct and proximate consequence of the acts of Defendant as set forth above and the injuries thereby inflicted on the decedents prior to death, the decedents suffered damages, including but not limited to pain and suffering, trauma, emotional distress, loss of life and life's pleasures, loss of earnings and earning capacity, and loss of accretions to their estates, as set forth below.

195.    WHEREFORE, the above-named Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

## COUNT XI
### (Aiding and Abetting Survival Claim)

196.    Plaintiffs The Estate of Jesse Nathanael Aliganga, The Estate of Julian Leotis Bartley, Sr., The Estate of Julian Leotis Bartley, Jr., The Estate of Jean Rose Dalizu, The Estate of Molly Huckaby Hardy, The Estate of Kenneth Ray Hobson II, The Estate of Prabhi Guptara Kavaler, The Estate of Arlene Bradley Kirk, The Estate of Mary Louise Martin, The Estate of Ann Michelle O'Connor, The Estate of Sherry Lynn Olds, The Estate of William Abbas Mwila, The Estate of Yusuf Shamte Ndange, The Estate of Mtendeje Rajabu Mtulya, The Estate of Rogath Saidi Saidi, and The Estate of Dotio Ramadhani, each of which is represented by a personal representative appointed on behalf of the decedents, incorporate the preceding paragraphs as if fully set forth herein.

197.    On August 7, 1998, when the explosive devices described above were detonated at Dar es Salaam, Tanzania and Nairobi, Kenya, the decedents suffered extreme bodily pain and suffering prior to death.

198.    The explosions described above were intended to cause offensive or harmful bodily contact with the decedents without their consent and to put them in apprehension of imminent

offensive or harmful bodily contact without their consent. The explosions were caused by the willful and deliberate acts of persons who were knowingly and substantially assisted by Defendant. At the time Defendant provided this substantial assistance, Defendant was aware of its role in illegal or tortious activity.

199. The explosions described above were done with intent to cause severe emotional distress to the decedents, or with disregard of a substantial probability of causing severe emotional distress to the decedents. The explosions and resulting severe emotional distress were caused by the willful and deliberate acts of persons who were knowingly and substantially assisted by Defendant. At the time Defendant provided this substantial assistance, Defendant was aware of its role in illegal or tortious activity. The explosions constitute conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

200. As a direct and proximate consequence of the acts of Defendant as set forth above and the injuries thereby inflicted on the decedents prior to death, the decedents suffered damages, including but not limited to pain and suffering, trauma, emotional distress, loss of life and life's pleasures, loss of earnings and earning capacity, and loss of accretions to their estates, as set forth below.

201. WHEREFORE, the above-named Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

### COUNT XII
### (Loss of Consortium)

202. Plaintiffs Yasemin B. Pressley, Frank B. Pressley, Jr., The Estate of Donald G. Bomer, Worley Lee Reed, Joyce Reed, The Estate of Howard Sparks, Sr., Victoria Q. Spiers, Gary

Spiers, Mary Linda Sue Bartley, Deborah Hobson-Bird, The Estate of Howard Charles Kavaler, Robert Kirk, Jr., Douglas Norman Klaucke, James Paul O'Connor, Lydia Hickey, Jenny Christina Lovblom, Rizwan Khaliq, Sharon Teske, Judith Abasi Mwila, Hanuni Ramadhani Ndange, Shabani Saidi Mtulya, The Estate of Veronica Alois Saidi, Abella Valentine Katunda, The Estate of Victoria Donti Mwaipape, Elizabeth Mathew Rutaheshelwa, and Egambi Fred Kibuhiru Dalizu incorporate the preceding paragraphs as if fully set forth herein.

203. On August 7, 1998, when the explosive devices described above were detonated at Dar es Salaam, Tanzania and Nairobi, Kenya, individuals married to the above-named Plaintiffs at the time were killed or suffered severe and permanent injuries, including but not limited to brain injuries, concussions, internal bleeding, lung injuries, spinal injuries, shoulder injuries, destruction of joints, blast burns, severe lacerations that have resulted in permanent scarring, permanent blindness, detached retinas, partial loss of vision, permanent total or partial loss of hearing, punctured eardrums, loss of teeth, broken teeth, tissue damage, nerve damage, shrapnel and glass wounds, fractures, multiple cuts, abrasions, and bruises, swelling of feet, headaches, loss of balance, erectile dysfunction, loss of memory and mental ability, and severe post-traumatic stress disorder.

204. The explosions described above were intended to cause offensive or harmful bodily contact with the individuals married to the above-named Plaintiffs at the time without the consent of those individuals and to put those individuals in apprehension of imminent offensive or harmful bodily contact without their consent. The explosions and resulting injuries were caused by the willful and deliberate acts of persons to whom Defendant provided material support, shelter, and protection. Defendant did so for the purpose of inflicting physical injuries or death upon the

individuals married to the above-named Plaintiffs at the time and others, or believed that such infliction of physical injuries or death was substantially certain to result from its acts.

205.     As a direct and proximate consequence of the acts of Defendant as set forth above and the injuries thereby inflicted, the above-named Plaintiffs were caused to sustain injuries including but not limited to a loss of support and services, love, companionship, affection, society, sexual relations, and solace, and suffered a loss of consortium to the detriment of their marital relationships, and have thereby suffered damages as set forth below.

206.     WHEREFORE, the above-named Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

### COUNT XIII
### (Aiding and Abetting Loss of Consortium)

207.     Plaintiffs Yasemin B. Pressley, Frank B. Pressley, Jr., The Estate of Donald G. Bomer, Worley Lee Reed, Joyce Reed, The Estate of Howard Sparks, Sr., Victoria Q. Spiers, Gary Spiers, Mary Linda Sue Bartley, Deborah Hobson-Bird, The Estate of Howard Charles Kavaler, Robert Kirk, Jr., Douglas Norman Klaucke, James Paul O'Connor, Lydia Hickey, Jenny Christina Lovblom, Rizwan Khaliq, Sharon Teske, Judith Abasi Mwila, Hanuni Ramadhani Ndange, Shabani Saidi Mtulya, The Estate of Veronica Alois Saidi, Abella Valentine Katunda, The Estate of Victoria Donti Mwaipape, Elizabeth Mathew Rutaheshelwa, and Egambi Fred Kibuhiru Dalizu incorporate the preceding paragraphs as if fully set forth herein.

208.     As described above, when the explosive devices detonated on August 7, 1998, individuals married to the above-named Plaintiffs at the time were killed or suffered severe and permanent injuries from these explosions.

209.    The explosions described above were intended to cause offensive or harmful bodily contact with the individuals married to the above-named Plaintiffs at the time without the consent of those individuals and to put those individuals in apprehension of imminent offensive or harmful bodily contact without their consent.  The explosions were caused by the willful and deliberate acts of persons who were knowingly and substantially assisted by Defendant for the purpose of inflicting physical injuries or death upon the individuals married to the above-named Plaintiffs at the time and others.  At the time Defendant provided this substantial assistance, Defendant was aware of its role in illegal or tortious activity.

210.    As a direct and proximate consequence of the acts of Defendant as set forth above and the injuries thereby inflicted, the above-named Plaintiffs were caused to sustain injuries including but not limited to a loss of support and services, love, companionship, affection, society, sexual relations, and solace, and suffered a loss of consortium to the detriment of their marital relationships, and have thereby suffered damages as set forth below.

211.    WHEREFORE, the above-named Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

212.    Grant judgment to Plaintiffs on all counts,

213.    Order compensatory damages in the amount of **$1,373,761,042.95**, which represents the amount of injuries Plaintiffs have sustained minus prior recoveries from other sources, as set forth in the Appendix below,

214.    Order punitive damages in the amount of **$3,295,249,969.26**, which is two times the amount of compensatory damages to which Plaintiffs were originally entitled, as set forth in the Appendix below,

215.    Award reasonable attorneys' fees, costs of suit, and prejudgment interest, and

216.    Provide such other further monetary or equitable relief as the Court may deem just and proper.

217.    Plaintiffs demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: March 8, 2022

Respectfully submitted,

/s/ Matthew D. McGill

Rebecca Monck Ricigliano
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
Telephone: (212) 895-4000
Facsimile: (212) 223-4134
rricigliano@crowell.com

Matthew D. McGill
Jessica L. Wagner
(*pro hac vice* application forthcoming)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 530-9522
mmcgill@gibsondunn.com

John L. Murino
(*pro hac vice* application forthcoming)
Stuart H. Newberger
(*pro hac vice* application forthcoming)
Emily M. Alban
(*pro hac vice* application forthcoming)
CROWELL & MORING LLP
1001 Pennsylvania Ave. NW
Washington, DC 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

Robert L. Wiegel
Jason W. Myatt
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
rweigel@gibsondunn.com
jmyatt@gibsondunn.com

Caragh Glenn Fay
(*pro hac vice* application forthcoming)
Amanda Fox Perry
(*pro hac vice* application forthcoming)
FAY LAW GROUP, P.A.
6205 Executive Boulevard
Rockville, MD 20852
Telephone: (202) 589-1300
Facsimile: (202) 216-0298

*Counsel for Plaintiffs*

## APPENDIX

### DAMAGES CHART[1]

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| The Estate of Clyde M. Hirn | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $15,877,231.00 | $6,708,431.14 | $31,754,462.00 |
| Patricia K. Fast | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $4,848,678.07 | $11,309,250.00 |
| The Estate of Inez Hirn | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $4,848,678.07 | $11,309,250.00 |

---

[1] All but two of the Plaintiffs have previously had the amount of their injuries from the embassy bombings adjudicated in actions against Iran or Sudan and corresponding compensatory damages awarded. Plaintiffs request that this Court accept the prior compensatory damages that they have been awarded as conclusive of the amount of their injuries. In this action, Plaintiffs request compensatory damages only in the amount of injuries for which they have not previously recovered. They request punitive damages that are two times the amount of their original compensatory damage awards, which represent the sum total of their injuries, rather than punitive damages that are twice the amount of compensatory damages they are seeking in this suit. The two Plaintiffs who have not previously received judgments awarding compensatory damages, both of whom were physically and emotionally injured in the embassy bombings, request compensatory damages in the amount of $5 million, which prior courts have determined is an appropriate amount for individuals who suffered severe physical and emotional injuries resulting from the 1998 embassy bombings. *See, e.g.*, *Wamai v. Republic of Sudan*, 60 F. Supp. 3d 84, 91 (D.D.C. 2014), *aff'd in part, vacated in part sub nom. Owens v. Republic of Sudan*, 864 F.3d 751 (D.C. Cir. 2017).

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| Paul Hirn | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,424,339.04 | $5,654,625.00 |
| Eloise Hubble | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,424,339.04 | $5,654,625.00 |
| Margaret Baker | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,424,339.04 | $5,654,625.00 |
| Joyce Reed | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $14,560,491.00 | $9,904,694.66 | $29,120,982.00 |
| Worley Lee Reed | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $15,781,747.36 | $8,836,633.79 | $31,563,494.72 |
| Cheryl L. Blood | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $50,431,254.00 | $48,819,360.15 | $100,862,508.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| Bret W. Reed | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $9,697,356.15 | $22,618,500.00 |
| The Estate of Ruth Ann Whiteside | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $4,848,678.07 | $11,309,250.00 |
| Linda Whiteside O'Donnell | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,424,339.04 | $5,654,625.00 |
| The Estate of Flossie Varney | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $4,848,678.07 | $11,309,250.00 |
| Lydia Hickey | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $22,021,698.00 | $15,324,718.69 | $44,043,396.00 |
| The Estate of Howard Sparks, Sr. | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $19,560,362.00 | $15,066,240.77 | $39,120,724.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| Tabitha Carter | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $14,136,562.50 | $12,527,441.28 | $28,273,125.00 |
| Howard Sparks, Jr. | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $15,860,624.00 | $11,565,395.30 | $31,721,248.00 |
| Michael Ray Sparks | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $14,136,562.50 | $12,527,441.28 | $28,273,125.00 |
| Linda Shough | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,505,488.26 | $5,654,625.00 |
| Laura Harris | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,505,488.26 | $5,654,625.00 |
| Lora Murphy | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,505,488.26 | $5,654,625.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| Loretta Paxton | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,505,488.26 | $5,654,625.00 |
| The Estate of Leroy Moorefield | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $5,010,976.51 | $11,309,250.00 |
| The Estate of Roger Moorefield | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,505,488.26 | $5,654,625.00 |
| The Estate of Rodney Moorefield | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,505,488.26 | $5,654,625.00 |
| Gary Spiers | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $15,678,925.00 | $6,907,637.11 | $31,357,850.00 |
| Victoria Q. Spiers | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $12,900,890.00 | $8,488,788.42 | $25,801,780.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| Victoria J. Spiers | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $9,047,400.00 | $7,757,884.92 | $18,094,800.00 |
| Richard David Patrick | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $4,848,678.07 | $11,309,250.00 |
| The Estate of Candelaria Quilacio Francisco | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,531,185.78 | $5,654,625.00 |
| Susan Quilacio Nicolas | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,424,339.04 | $5,654,625.00 |
| The Estate of Edilberto Quilacio | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,424,339.04 | $5,654,625.00 |
| Rolando Quilacio | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,424,339.04 | $5,654,625.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| The Estate of Julita A. Quilacio | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $3,392,775.00 | $2,909,206.85 | $6,785,550.00 |
| The Estate of Eulogio Quilacio | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $3,392,775.00 | $2,909,206.85 | $6,785,550.00 |
| James Owens | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $5,124,743.12 | $22,618,500.00 |
| The Estate of Betty Owens Evely | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $4,848,678.07 | $11,309,250.00 |
| Barbara Goff | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,424,339.04 | $5,654,625.00 |
| Gary Robert Owens | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,424,339.04 | $5,654,625.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| Frank B. Pressley, Jr. | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $27,785,984.92 | $15,919,295.98 | $55,571,969.84 |
| Yasemin B. Pressley | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $20,444,029.00 | $13,885,360.68 | $40,888,058.00 |
| Berk F. Pressley | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $10,188,996.46 | $22,618,500.00 |
| Jon B. Pressley | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $10,188,996.46 | $22,618,500.00 |
| The Estate of Montine Bowen | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $5,094,498.23 | $11,309,250.00 |
| Marc Y. Pressley | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $10,188,996.46 | $22,618,500.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| David A. Pressley | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $5,094,498.23 | $11,309,250.00 |
| Thomas C. Pressley | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $5,094,498.23 | $11,309,250.00 |
| Michael F. Pressley | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $5,094,498.23 | $11,309,250.00 |
| The Estate of Frank Pressley, Sr. | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $5,094,498.23 | $11,309,250.00 |
| Dorothy Willard | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,547,249.11 | $5,654,625.00 |
| Ahmet Buyuk | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,547,249.11 | $5,654,625.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| Tulay Buyuk | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,547,249.11 | $5,654,625.00 |
| Serpil Buyuk | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,547,249.11 | $5,654,625.00 |
| Sundus Buyuk | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $5,094,498.23 | $11,309,250.00 |
| Bahar Buyuk | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,547,249.11 | $5,654,625.00 |
| The Estate of Donald G. Bomer | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $9,047,400.00 | $7,757,884.92 | $18,094,800.00 |
| Michael James Cormier | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $4,848,678.07 | $11,309,250.00 |

App'x 10

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| Ellen Richard | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $36,359,146.00 | $21,621,118.50 | $72,718,292.00 |
| The Estate of Patricia Feore | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $4,848,678.07 | $11,309,250.00 |
| The Estate of Nicholas Karas | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,424,339.04 | $5,654,625.00 |
| George Karas | Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 301 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,424,339.04 | $5,654,625.00 |
| The Estate of William Abbas Mwila | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $75,078.89 | $0 | $150,157.78 |
| Judith Abasi Mwila | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $18,094,800.00 | $16,199,589.00 | $36,189,600.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| William Abasi Mwila | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $10,124,743.12 | $22,618,500.00 |
| Edwina Abasi Mwila | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $10,124,743.12 | $22,618,500.00 |
| Happiness Abasi Mwila | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $10,124,743.12 | $22,618,500.00 |
| Donti Akili Mwaipape | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $11,357,565.38 | $9,761,612.52 | $22,715,130.76 |
| The Estate of Victoria Donti Mwaipape | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $9,047,400.00 | $8,065,794.50 | $18,094,800.00 |
| Elisha Donti Mwaipape | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $5,028,371.56 | $11,309,250.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| Joseph Donti Mwaipape | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $5,028,371.56 | $11,309,250.00 |
| Nicholas Mwaipape | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $5,028,371.56 | $11,309,250.00 |
| Valentine Mathew Katunda | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $11,319,370.52 | $9,732,466.08 | $22,638,741.04 |
| Abella Valentine Katunda | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $9,047,400.00 | $8,065,794.50 | $18,094,800.00 |
| Diana Valentine Katunda | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $5,028,371.56 | $11,309,250.00 |
| Venant Valentine Mathew Katunda | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $5,028,371.56 | $11,309,250.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| Edwin Valentine Mathew Katunda | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $5,028,371.56 | $11,309,250.00 |
| Desidery Valentine Mathew Katunda | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $5,028,371.56 | $11,309,250.00 |
| Edward Mathew Rutaheshelwa | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $5,663,080.66 | $4,668,824.06 | $11,326,161.32 |
| Elizabeth Mathew Rutaheshelwa | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $5,028,371.56 | $11,309,250.00 |
| Angelina Mathew Rutaheshelwa | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $5,028,371.56 | $11,309,250.00 |
| Happiness Mathew Rutaheshelwa | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $5,028,371.56 | $11,309,250.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| Eric Mathew Rutaheshelwa | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $5,028,371.56 | $11,309,250.00 |
| The Estate of Samuel Thomas Marcus | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $11,343,424.09 | $9,750,821.33 | $22,686,848.18 |
| Coronella Samuel Marcus | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $5,028,371.56 | $11,309,250.00 |
| Tirisa George Thomas | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,497,185.78 | $5,654,625.00 |
| The Estate of Yusuf Shamte Ndange | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $51,352.76 | $0 | $102,705.52 |
| Hanuni Ramadhani Ndange | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $18,094,800.00 | $16,351,566.71 | $36,189,600.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| Maua Ndange | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $10,219,729.19 | $22,618,500.00 |
| Halima Ndange | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $10,219,729.19 | $22,618,500.00 |
| Juma Yusuph Shamte Ndange | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $10,219,729.19 | $22,618,500.00 |
| Mwajabu Yusuph Shamte Ndange | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $10,219,729.19 | $22,618,500.00 |
| Abdul Yusuph Shamte Ndange | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $10,219,729.19 | $22,618,500.00 |
| Ramadhani Ndange | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $10,219,729.19 | $22,618,500.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| The Estate of Mtendeje Rajabu Mtulya | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $127,519.23 | $0 | $255,038.46 |
| Shabani Saidi Mtulya | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $18,094,800.00 | $16,199,589.00 | $36,189,600.00 |
| Saidi Shabani Mtulya | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $10,124,743.12 | $22,618,500.00 |
| Abdul Shabani Mtulya | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $10,124,743.12 | $22,618,500.00 |
| The Estate of Rogath Saidi Saidi | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $76,894.84 | $0 | $153,789.68 |
| The Estate of Veronica Alois Saidi | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $18,094,800.00 | $16,130,320.67 | $36,189,600.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| John Rogath Saidi | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $10,143,950.42 | $22,618,500.00 |
| Daniel Rogath Saidi | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $10,143,950.42 | $22,618,500.00 |
| Selinia Rogath Saidi | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $10,143,950.42 | $22,618,500.00 |
| Idifonce Rogath Saidi | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $10,143,950.42 | $22,618,500.00 |
| The Estate of Aisha Mawazo | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $10,043,950.42 | $22,618,500.00 |
| The Estate of Adabeth Saidi Nang'oko | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $4,971,975.21 | $11,309,250.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| The Estate of Dotio Ramadhani | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $313,016.62 | $0 | $626,033.24 |
| Mengo Ramadhani | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $11,309,250.00 | $10,124,743.12 | $22,618,500.00 |
| Kulwa Ramadhani | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $9,047,400.00 | $8,099,794.50 | $18,094,800.00 |
| Rehena Ramadhani | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $5,062,371.56 | $11,309,250.00 |
| Upendo Ramadhani | Order, *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-1377, Dkt. No. 88 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $5,062,371.56 | $11,309,250.00 |
| Rizwan Khaliq | Order, *Khaliq v. Republic of Sudan*, No. 1:10-cv-356, Dkt. No. 40 (D.D.C. Mar. 28, 2014) | $14,702,869.86 | $7,162,840.35 | $29,405,739.72 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| Jenny Christina Lovblom | Order, *Khaliq v. Republic of Sudan*, No. 1:10-cv-356, Dkt. No. 40 (D.D.C. Mar. 28, 2014) | $12,440,175.00 | $11,137,217.44 | $24,880,350.00 |
| Imtiaz Bedum | Order, *Khaliq v. Republic of Sudan*, No. 1:10-cv-356, Dkt. No. 40 (D.D.C. Mar. 28, 2014) | $5,654,625.00 | $4,892,371.56 | $11,309,250.00 |
| Yasir Aziz | Order, *Khaliq v. Republic of Sudan*, No. 1:10-cv-356, Dkt. No. 40 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,361,185.78 | $5,654,625.00 |
| Imran Khaliq | Order, *Khaliq v. Republic of Sudan*, No. 1:10-cv-356, Dkt. No. 40 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,361,185.78 | $5,654,625.00 |
| Kamran Khaliq | Order, *Khaliq v. Republic of Sudan*, No. 1:10-cv-356, Dkt. No. 40 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,361,185.78 | $5,654,625.00 |
| Naurin Khaliq | Order, *Khaliq v. Republic of Sudan*, No. 1:10-cv-356, Dkt. No. 40 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,361,185.78 | $5,654,625.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| Irfan Khaliq | Order, *Khaliq v. Republic of Sudan*, No. 1:10-cv-356, Dkt. No. 40 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,361,185.78 | $5,654,625.00 |
| Teshin Khaliq | Order, *Khaliq v. Republic of Sudan*, No. 1:10-cv-356, Dkt. No. 40 (D.D.C. Mar. 28, 2014) | $2,827,312.50 | $2,361,185.78 | $5,654,625.00 |
| Clara Leah Aliganga | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $10,124,743.12 | $22,618,500.00 |
| The Estate of Jesse Nathanael Aliganga | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $914,061.00 | $0 | $1,828,122.00 |
| Leah Ann Colston-Baker | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,562,371.56 | $11,309,250.00 |
| Edith Lynn Bartley | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $16,963,875.00 | $14,187,114.69 | $33,927,750.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| The Estate of Gladys Baldwin | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $9,624,743.12 | $22,618,500.00 |
| The Estate of Julian Leotis Bartley, Jr. | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $4,783,376.00 | $0 | $9,566,752.00 |
| The Estate of Julian Leotis Bartley, Sr. | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $1,686,985.00 | $0 | $3,373,970.00 |
| Mary Linda Sue Bartley | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $29,404,050.00 | $26,324,332.12 | $58,808,100.00 |
| Egambi Fred Kibuhiru Dalizu | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $18,094,800.00 | $16,787,167.52 | $36,189,600.00 |
| The Estate of Gwendolyn Tauwana Garrett | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,745,989.85 | $11,309,250.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| The Estate of James Herbert Freeman | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,745,989.85 | $11,309,250.00 |
| The Estate of Jean Rose Dalizu | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $227,086.00 | $0 | $454,172.00 |
| The Estate of Jeanette Ella Marie Goines | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,745,989.85 | $11,309,250.00 |
| Jewell Patricia Neal | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,745,989.85 | $11,309,250.00 |
| The Estate of Joyce McCray | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,745,989.85 | $11,309,250.00 |
| June Beverly Freeman | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,745,989.85 | $11,309,250.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| Lawrence Anthony Hicks | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $10,491,979.70 | $22,618,500.00 |
| Lori Elaine Dalizu | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $10,491,979.70 | $22,618,500.00 |
| Mangairu Vidija Dalizu | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $10,491,979.70 | $22,618,500.00 |
| The Estate of Rose Banks Freeman | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $9,991,979.70 | $22,618,500.00 |
| The Estate of Sheila Elaine Freeman | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,745,989.85 | $11,309,250.00 |
| Temina Engesia Dalizu | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $10,491,979.70 | $22,618,500.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| Brandi Hardy Plants | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $10,124,743.12 | $22,618,500.00 |
| The Estate of Jane Huckaby | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $9,624,743.12 | $22,618,500.00 |
| The Estate of Molly Huckaby Hardy | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $1,234,785.00 | $0 | $2,469,570.00 |
| Bonnie Sue Hobson | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $9,624,743.12 | $22,618,500.00 |
| Deborah Hobson-Bird | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $18,094,800.00 | $16,199,589.00 | $36,189,600.00 |
| The Estate of Kenneth Ray Hobson | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $9,624,743.12 | $22,618,500.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| The Estate of Kenneth Ray Hobson II | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $965,530.00 | $0 | $1,931,060.00 |
| Meghan Elizabeth Hobson | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $10,124,743.12 | $22,618,500.00 |
| The Estate of Howard Charles Kavaler | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $21,487,575.00 | $16,237,011.94 | $42,975,150.00 |
| The Estate of Leon Kavaler | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $3,392,775.00 | $2,861,560.87 | $6,785,550.00 |
| Maya Pia Kavaler | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $14,702,025.00 | $12,986,303.99 | $29,404,050.00 |
| The Estate of Pearl Daniels Kavaler | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $3,392,775.00 | $2,861,560.87 | $6,785,550.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| The Estate of Prabhi Guptara Kavaler | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $1,775,096.00 | $0 | $3,550,192.00 |
| Richard Martin Kavaler | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $2,827,312.50 | $2,384,634.06 | $5,654,625.00 |
| Tara Lia Kavaler | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $14,702,025.00 | $12,986,303.99 | $29,404,050.00 |
| The Estate of Arlene Bradley Kirk | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $543,426.00 | $0 | $1,086,852.00 |
| Dennis Arthur Bradley | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,579,516.79 | $11,309,250.00 |
| Katherine Bradley Wright | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,579,516.79 | $11,309,250.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| The Estate of Kenneth Alva Bradley | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,579,516.79 | $11,309,250.00 |
| Maisha Kirk Humphrey | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $10,159,033.57 | $22,618,500.00 |
| The Estate of Mary Katherine Bradley | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $9,659,033.57 | $22,618,500.00 |
| Neil Alan Bradley | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,579,516.79 | $11,309,250.00 |
| The Estate of Patricia Anne Bradley Williams | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,579,516.79 | $11,309,250.00 |
| Robert Kirk, Jr. | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $18,094,800.00 | $16,254,453.72 | $36,189,600.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| Robert Michael Kirk | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $10,159,033.57 | $22,618,500.00 |
| Douglas Norman Klaucke | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $18,094,800.00 | $16,631,774.12 | $36,189,600.00 |
| James Robert Klaucke | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $10,394,858.82 | $22,618,500.00 |
| The Estate of Joseph Denegre Martin III | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,697,429.41 | $11,309,250.00 |
| The Estate of Joseph Denegre Martin, Jr. | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $9,894,858.82 | $22,618,500.00 |
| Karen Marie Klaucke | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $10,394,858.82 | $22,618,500.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| The Estate of Kathleen Martin Boellert | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,697,429.41 | $11,309,250.00 |
| Martha Martin Ourso | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,697,429.41 | $11,309,250.00 |
| The Estate of Mary Louise Martin | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $2,339,174.00 | $0 | $4,678,348.00 |
| Michael Hawkins Martin | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,697,429.41 | $11,309,250.00 |
| Stephen Harding Martin | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,697,429.41 | $11,309,250.00 |
| Susan Elizabeth Martin Bryson | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,697,429.41 | $11,309,250.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| William Russell Klaucke | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $10,394,858.82 | $22,618,500.00 |
| The Estate of Ann Michelle O'Connor | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $2,195,655.00 | $0 | $4,391,310.00 |
| Gwendolyn Frederic Deney | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $9,624,743.12 | $22,618,500.00 |
| James Paul O'Connor | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $18,094,800.00 | $16,199,589.00 | $36,189,600.00 |
| Jennifer Erin Perez | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $10,124,743.12 | $22,618,500.00 |
| Micaela Ann O'Connor | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $10,124,743.12 | $22,618,500.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| Tara Colleen O'Connor | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $10,124,743.12 | $22,618,500.00 |
| Christa Gay DeGracia | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,562,371.56 | $11,309,250.00 |
| Delbert Raymond Olds | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $10,124,743.12 | $22,618,500.00 |
| Kimberly Ann Zimmerman | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,562,371.56 | $11,309,250.00 |
| Marsey Gayle Cornett | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $5,654,625.00 | $4,562,371.56 | $11,309,250.00 |
| The Estate of Mary Evelyn Freeman Olds | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $11,309,250.00 | $10,124,743.12 | $22,618,500.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| The Estate of Sherry Lynn Olds | Amended Order, *Owens v. Republic of Sudan*, No. 1:01-cv-2244, Dkt. No. 349 (D.D.C. Oct. 24, 2014) | $1,156,543.00 | $0 | $2,313,086.00 |
| Gary Lonnquist | Order, *Lonnquist v. Islamic Republic of Iran*, No. 1:17-cv-1630, Dkt. No. 44 (D.D.C. Aug. 31, 2020) | $5,000,000.00 | $5,000,000.00 | $10,000,000.00 |
| Timothy Teske | Order, *Lonnquist v. Islamic Republic of Iran*, No. 1:17-cv-1630, Dkt. No. 44 (D.D.C. Aug. 31, 2020) | $5,000,000.00 | $5,000,000.00 | $10,000,000.00 |
| Sharon Teske | Order, *Lonnquist v. Islamic Republic of Iran*, No. 1:17-cv-1630, Dkt. No. 44 (D.D.C. Aug. 31, 2020) | $4,000,000.00 | $4,000,000.00 | $8,000,000.00 |
| Jonathan Teske | Order, *Lonnquist v. Islamic Republic of Iran*, No. 1:17-cv-1630, Dkt. No. 44 (D.D.C. Aug. 31, 2020) | $2,500,000.00 | $2,500,000.00 | $5,000,000.00 |
| Taylor Teske | Order, *Lonnquist v. Islamic Republic of Iran*, No. 1:17-cv-1630, Dkt. No. 44 (D.D.C. Aug. 31, 2020) | $2,500,000.00 | $2,500,000.00 | $5,000,000.00 |

| Plaintiff | Prior Action Where Damages Were Awarded | Prior Compensatory Damages Awarded | Compensatory Damages Sought in This Action | Punitive Damages Sought in This Action |
|---|---|---|---|---|
| Daniel Briehl | N/A | N/A | $5,000,000.00 | $10,000,000.00 |
| Gary Cross | N/A | N/A | $5,000,000.00 | $10,000,000.00 |
| | | **TOTAL:** | **$1,373,761,042.95** | **$3,295,249,969.26** |

App'x 34