UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
*IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001 :
:
:    **1:03 MDL 1570 (GBD)(SN)**
:
-------------------------------------------------------------------X

**This Document Relates to**
*Havlish, et al. v. the Taliban, et al.*
**1:03-cv-9848 (GBD)(SN)**

**HAVLISH CREDITORS' RESPONSE IN OPPOSITION TO THE AMDUSO PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE NETBURN'S DENIAL OF THEIR MOTION TO INTERVENE**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 3

LEGAL STANDARDS ............................................................................................................. 7

I.  Standard of Review ......................................................................................................... 7

II. Motions to Intervene ....................................................................................................... 7

ARGUMENT ............................................................................................................................. 8

I.  The Amduso Plaintiffs Lack Standing to Intervene of Right ......................................... 8

II. The Amduso Plaintiffs May Not Intervene in This Action As of Right ...................... 10

III. Permissive Intervention Is Not Warranted .................................................................. 14

CONCLUSION ........................................................................................................................ 15

**INTRODUCTION**

Judgment Creditors Fiona Havlish, *et al*. (the "Havlish Creditors"), respectfully submit this response in opposition to the objection of the Amduso, Wamai, Onsongo, and Opati plaintiffs (collectively, "the Amduso Plaintiffs") to Magistrate Judge Netburn's denial of their motion to intervene. Judge Netburn's Opinion and Order of February 22, 2022—issued within one week of the Amduso Plaintiffs' motion, after the Court determined that it was unnecessary to receive briefing from any other party before ruling—makes plain that the Amduso Plaintiffs "have no interest in this action that supports their motion to intervene as of right" and that "complication, prejudice, and delay" would result from allowing a permissive intervention. *See* Dkt. 7696 ("Feb. 22 Op.") at 1. Judge Netburn correctly held that the Amduso Plaintiffs have "no cognizable interest" in the funds held at the Federal Reserve Bank of New York in the name of Da Afghanistan Bank ("DAB"). *Id*. at 6. She therefore did not err in denying the motion and her Opinion and Order should be affirmed.

The Amduso Plaintiffs have neither a judgment against the Taliban nor even a complaint on file seeking one. Remarkably, the Amduso Plaintiffs themselves admit that they have no "explicit right" to or interest in the DAB funds. *See* Dkt. 7676-2 ("Amduso Mot.") at 8. This is reason enough to deny their motion. The Amduso Plaintiffs nonetheless seek a declaratory judgment that "the current Plaintiffs suffer from the same infirmity" as they do. Dkt. 7734 ("Objection") at 3. As Judge Netburn recognized, however, this argument rests on several dubious premises, and in any event would not bestow on the Amduso Plaintiffs a cognizable interest that intervention would protect.

First, the Amduso Plaintiffs are wrong that they "have the same connection and interest in the assets" as the Havlish Creditors. *See* Amduso Mot. at 6. Like the Havlish Creditors, the Amduso Plaintiffs were also victims of horrific terrorist acts perpetrated by al Qaeda. But the

1

similarities end there. The Amduso Plaintiffs, who filed suit and obtained judgments against the governments of *Iran* and *Sudan*, never obtained a judgment against the Taliban—the terrorist entity that now directs and operates Da Afghanistan Bank. Nor have they obtained judicial writs of execution against DAB's assets.

In an attempt to elide these dispositive deficiencies, the Amduso Plaintiffs try to paint the Havlish Creditors' legitimate claim to the DAB funds as being as "nonexistent" as their own. Feb. 22 Op. at 6. They attack the merits of the Havlish Creditors' turnover motion before it had even been filed, observing principally that the Havlish Creditors have not obtained a judgment against the State of Afghanistan under the Foreign Sovereign Immunities Act (FSIA). *See* Objection at 3. But as the Havlish Creditors' motion for turnover explains in detail, *see* MDL Dkt. 7764, this is no obstacle: the Havlish Creditors have a straightforward legal basis under the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107–297, 116 Stat. 2322, for attaching the DAB assets to satisfy their judgment against the Taliban.[1] Other MDL parties will have the opportunity to be heard concerning the Havlish Creditors' turnover motion, and the Court will carefully scrutinize it. But as Judge Netburn recognized, there will be a time and place for such scrutiny, and it is inappropriate here in the context of a motion filed by parties who themselves admit to

---

[1] Briefing in connection with an objection to the denial of a motion to intervene is not the proper vehicle to adjudicate the merits questions in these post-judgment proceedings. But as demonstrated comprehensively in their turnover motion and its supporting expert declaration, *see* MDL Dkts. 7764, 7766, the Havlish Creditors' basis for executing on the DAB funds is as follows: The Havlish Creditors have a judgment against the Taliban arising out of an act of terrorism. The Taliban is a terrorist party within the meaning of TRIA § 201(a). DAB's assets are blocked by Executive Order 14064. DAB is fully controlled and directed by the Taliban, rendering it an agency or instrumentality of the Taliban within the meaning of TRIA § 201(a). Accordingly, DAB's funds are now the "blocked assets of [an] agency or instrumentality of [a] terrorist party," such that "notwithstanding any other provision of law"—including the immunity provisions of the FSIA, *see* Dkt. 7661 (U.S. Statement of Interest) at 10—the Havlish Creditors are entitled to execute against those assets to the extent of their compensatory damages. TRIA § 201(a).

lacking any rights to the funds in question. *See* Feb. 22 Op. at 11 ("Adjudicating the Havlish Plaintiffs' right to these assets, as the Amduso Plaintiffs seek to do here, will already be an inextricable part of this [litigation].").

Second, the Amduso Plaintiffs' desire to see the DAB funds distributed "equitably to all terrorism victims" via the United States Victims of State Sponsored Terrorism Fund (the "VSST Fund") cannot support their motion to intervene. Amduso Mot. at 11; Feb. 22 Op. at 7. Nowhere in their motion or their objection to Judge Netburn's order do the Amduso Plaintiffs provide a shred of legal authority for the proposition that the Court can simply transfer assets into that fund or declare that the funds should be so moved. And no such authority exists. *See* 34 U.S.C. § 20144(e)(2) (enumerating specific sources of VSST funding, none of which are relevant here). As Judge Netburn correctly noted, the Amduso Plaintiffs have "no right . . . that empowers them to police all possible sources of terrorism funds, including those to which they profess to have no entitlement, and demand that those funds be deposited in the [VSST Fund]." Feb. 22 Op. at 7.

Because the Amduso Plaintiffs have no cognizable interest in this proceeding and seek a remedy that the Court has no authority to provide, the Court should reject their attempt to muddy the waters of this already complicated MDL. Judge Netburn's February 22, 2022 Opinion and Order should be affirmed in its entirety.[2]

## BACKGROUND

The factual background relevant to this proceeding, including recent developments involving the Da Afghanistan Bank funds, is detailed in Judge Netburn's opinion denying the

---

[2] To the extent the Court determines that it should treat Judge Netburn's February 22, 2022 order as a report and recommendation, *see New York Chinese TV Programs, Inc. v. U.E. Enterprises, Inc.*, 996 F.2d 21, 25 (2d Cir. 1993), Judge Netburn's recommended disposition should be adopted in its entirety.

Amduso Plaintiffs' motion to intervene, Feb 22. Op. at 2–5, and is also set forth at length in the Havlish Creditors' turnover motion, *see* MDL Dkt. 7764 at 4–13. For purposes of this submission, the Havlish Creditors briefly recount only the procedural background of the instant motion to intervene.

On February 16, 2022, the Amduso Plaintiffs—157 U.S. government employees killed or injured in the 1998 al Qaeda bombings of U.S. embassies in Africa, as well as their family members and representatives—moved pursuant to Rule 24 of the Federal Rules of Civil Procedure to intervene in this action. The Amduso Plaintiffs hold final judgments against the governments of Sudan and Iran based on those governments' provision of material support to al Qaeda in connection with the 1998 terrorist attacks. The Amduso Plaintiffs' motion sought intervention "to secure their interests in the subject funds and an equitable distribution of any such funds through the U.S. Victims of State Sponsored Terrorism Fund." Amduso Mot. at 5. But in the same breath, the Amduso Plaintiffs admit that they do not really have an "interest[] in the subject funds," and are instead seeking a declaration from the Court that neither they nor the existing plaintiffs in the MDL "have an explicit right to the Afghan funds." *Id*. at 8. Not even attempting to claim an entitlement to the funds, the intervention motion asserted the *ipse dixit* that "whatever the ultimate nature and extent of their interest in the funds . . ., the interest of [the Amduso Plaintiffs] and [the Havlish Creditors] is the same," because both are victims of al Qaeda terrorism and neither have judgments against the state of Afghanistan. *Id*. at 12.

Two days later, on February 18, 2022, with no party having yet responded to the Amduso Plaintiffs' motion, Judge Netburn issued an order stating that she had "reviewed the motion and determined that further briefing on the issues presented [was] not required," and further directed that no papers responding to the motion could be submitted without leave of Court. Dkt. 7687. On

4

February 22, 2022, Judge Netburn issued an opinion and order denying the motion to intervene. Noting that the Amduso Plaintiffs "do not have judgments against Afghanistan," "do not have judgments against the Taliban," and "have not attached the contested assets," Judge Netburn concluded that the Amduso Plaintiffs have "no interest in this action that supports their motion to intervene as of right." Feb. 22. Op. at 1. Pointing out that the Amduso Plaintiffs seek to intervene "based on a right they wish to declare nonexistent," Judge Netburn held that the Amduso Plaintiffs' interest in the DAB funds is not the kind of "direct, substantial, and legally protectable" interest that the Second Circuit has held can support intervention. *Id*. at 6 (quoting *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010)). Judge Netburn rejected the Amduso Plaintiffs' claim to be "on equal footing with the *Havlish* and *Doe* Plaintiffs," because "the *Havlish* and *Doe Plaintiffs* have judgments against the Taliban; the Amduso Plaintiffs do not." *Id*. at 7. Adverse parties may "contest the *Havlish* and *Doe* Plaintiffs' claims to the DAB Funds" in the forthcoming turnover proceedings, and "[a]djudicating the Havlish Plaintiffs' right to these assets . . . will already be an inextricable part of this process" even without the Amduso Plaintiffs' intervention. *Id*. at 11.

Judge Netburn also found that the Amduso Plaintiffs' general interest in the equitable distribution of funds to terror victims via the VSST Fund is too "speculative and indirect" to support intervention. Even if the Court were to declare that the DAB assets could not be used to satisfy the Havlish and Doe judgments against the Taliban, "there is no certainty that [the DAB Funds] will be placed in" the VSST Fund, which draws on specific, statutorily enumerated funding sources, none of which "implicate[] the DAB Funds." *Id*. at 7-8 (quoting 34 U.S.C. § 20144(e)(2)).

Judge Netburn next held that permissive intervention is not warranted because it would result in "prejudice and delay." *Id*. at 11. In an "already complex MDL proceeding that has gone

5

on for almost two decades," "devising and executing an inefficient alternative to a turnover proceeding at the behest of a party that self-avowedly has no right to the DAB Funds" would result in significant delay of the Court's adjudication of the issues currently before it. *Id*. at 12. Finally, noting that the Amduso Plaintiffs' intervention would "prolong and complicate" the resolution of this litigation and jeopardize an already "effective" mechanism for adjudicating the parties' rights, Judge Netburn held that "[e]ven if the Court determined that intervention was viable, it would still, in its discretion, decline to exercise jurisdiction over this declaratory judgment." *Id*.

On March 7, 2022, the Amduso Plaintiffs' lodged an objection to Judge Netburn's denial of their intervention motion, largely rehashing arguments made in their initial motion. Indeed, the majority of their submission is a direct copy-and-paste from the original motion. *Compare* Amduso Mot. at 6-14 *with* Objection at 5-13 (containing identical text). Like the motion, the objection once again admits that the Amduso Plaintiffs have no real interest in the DAB funds, focusing its arguments on the claim that "the current Plaintiffs suffer from the same infirmity." Objection at 3. The objection argues that the Havlish and Doe Creditors are not entitled to satisfy their judgments against the Taliban by way of the DAB funds—arguments that the Havlish Creditors are fully prepared to rebut in the pending turnover proceedings—and asserts that only their intervention will ensure that a party to this litigation will take the position that the Havlish and Doe Creditors are not entitled to the DAB funds. But nowhere do the Amduso Plaintiffs rebut Judge Netburn's central conclusion: that the Amduso Plaintiffs' interest in the DAB funds is "nonexistent." Feb. 22 Op. at 6. Indeed, their one paragraph purporting to explain why they have an interest in the funds is copied verbatim from their initial motion. *See* Amduso Mot. at 12, Objection at 11.

## LEGAL STANDARDS

### I. Standard of Review

Generally, a magistrate judge's order denying a motion to intervene "has the effect . . . of a report and recommendation to the district judge, who upon the filing of objections must review *de novo* the recommendation." *New York Chinese TV Programs, Inc. v. U.E. Enterprises, Inc.*, 996 F.2d 21, 25 (2d Cir. 1993); *see also Stackhouse v. McKnight*, 168 F. App'x 464, 467 (2d Cir. 2006) (treating magistrate judge's order denying a motion to intervene as "the equivalent of a report and recommendation subject to [the district court's] *de novo* review").[3] Rule 72 provides that a district court reviews "de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). As here, however, "when a party makes conclusory or general objections, or simply reiterates [its] original arguments, the Court reviews the Report and Recommendation only for clear error." *Alaimo v. Bd. of Educ. of the Tri-Valley Cent. Sch. Dist.*, 650 F. Supp. 2d 289, 291 (S.D.N.Y. 2009). Because the majority of the Amduso Plaintiffs' objection is copied and pasted directly from their intervention motion, *compare* Amduso Mot. at 6-14 *with* Objection at 5-13, and because the Amduso Plaintiffs did not object to Judge Netburn's central finding that they lack a cognizable interest in the proceeding, *see* Objection at 4-5, Judge Netburn's decision should be reviewed for clear error.

### II. Motions to Intervene

Rule 24(a) of the Federal Rules of Civil Procedure provides for intervention as of right, stating in relevant part:

---

[3] *But see Chen-Oster v. Goldman, Sachs & Co.*, No. 10-CV-6950 (AT), 2016 WL 11645644, at *2 (S.D.N.Y. June 6, 2016) (distinguishing *New York Chinese TV*, collecting cases for the proposition that "motions to intervene are not dispositive," and reviewing magistrate judge's adjudication of a motion to intervene for clear error).

7

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2); *see Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014). Rule 24(b) governs permissive intervention, and authorizes a court to permit intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "To be granted intervention as of right or by permission, an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Floyd*, 770 F.3d at 1057 (internal quotation marks and citations omitted). A "failure to satisfy *any one* of these four requirements is a sufficient ground to deny the application." *Id*.

**ARGUMENT**

**I.    The Amduso Plaintiffs Lack Standing to Intervene of Right**

As a threshold matter, the Amduso Plaintiffs lack standing to intervene. In *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 137 S. Ct. 1645 (2017), the Supreme Court clarified that "an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests." *Id*. at 1651. Such standing, the Court reiterated, requires that the party "have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Id*. at 1650 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).

Here, the relief sought by the Amduso Plaintiffs is a judicial declaration that "neither Intervenors nor Plaintiffs have an explicit right to the Afghan funds, thereby leaving any equitable distribution of the Afghan funds to victims of state-sponsored terrorism holding valid

final judgments to the USVSST Fund." Mot. at 14. By their own admission, the Amduso Plaintiffs have no plausible claim to the Da Afghanistan Bank assets in question, and they do not seek to satisfy their judgments against Sudan and Iran from DAB assets. They ask only for a judicial declaration that the funds should *not* be distributed to the Taliban's judgment creditors (like the Havlish and Doe Plaintiffs), and should instead go into the VSST Fund.

The declaration they seek, however, would not provide them with anything tangible, nor would it have any impact whatsoever on whether DAB funds could be distributed through the VSST Fund. As Judge Netburn found, the Amduso Plaintiffs "identify no right (nor is the Court aware of any) that empowers them to police all possible sources of terrorism funds, including those to which they profess to have no entitlement, and demand that those funds be deposited in the VSSTF." Feb. 22 Op. at 7. The statute governing the composition of the VSST Fund, 34 U.S.C. § 20144I(2), enumerates particular sources of money for the fund, namely "fines and penalties assessed for criminal and civil violations of the International Emergency Economic Powers Act . . . and the Trading with the Enemy Act, . . . as well as assets targeted by the Government in specific, statutorily-designated cases, none of which is this MDL or its member cases." *Id*. at 7-8. Nowhere in their motion or objection do the Amduso Plaintiffs identify how a declaration from the Court would result in funds being transferred to the VSST, nor do they assert that the Court itself has the power to order that the funds should be so transferred. (And it does not.) Because the judicial declaration sought by the Amduso Plaintiffs would have no bearing on whether the DAB assets could go into the VSST Fund, it would not stand to benefit the Amduso Plaintiffs in any way or redress any injuries they purport to suffer. Their pursuit of a declaratory judgment which cannot affect their own rights reflects, at most, "nothing more than a common concern for obedience to law," which is wholly insufficient to confer standing. *Cross*

*Sound Cable Co., LLC, v. Long Island Lighting Co.*, No. 21-CV-2771 (KAM), 2022 WL 247996, at *10 (E.D.N.Y. Jan. 27, 2022) (internal quotation marks and citation omitted) (would-be intervenor did not have standing to seek declaratory judgment where he lacked "a concrete, legally protectable interest" in the litigation). The Amduso Plaintiffs thus lack standing to intervene. *See Latino Officers Ass'n v. Safir*, 170 F.3d 167, 170 (2d Cir. 1999) (to have standing, a plaintiff must demonstrate that his "injury is apt to be redressed by a remedy the court is prepared to give.").

**II.     The Amduso Plaintiffs May Not Intervene in This Action As of Right**

For similar reasons, even if the Amduso Plaintiffs had Article III standing, they could not satisfy Rule 24(a), because they lack "an interest in the action." *Floyd*, 770 F.3d at 1057. The Second Circuit has made clear that "for an interest to be cognizable under Rule 24, it must be direct, substantial, and legally protectable. In other words, an interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Id.* at 1060 (citations omitted). As explained above, the Amduso Plaintiffs do not have a judgment against the Taliban and, therefore, have no legal right to execute against the DAB assets. Consequently, as Judge Netburn found, and as they themselves concede, the Amduso Plaintiffs have no cognizable interest in this action, which is sufficient to defeat their motion. *See id.* at 1057 (failure to satisfy any one of the four requirements for intervention "is a sufficient ground to deny the application").

The Amduso Plaintiffs' sole response to Judge Netburn's finding that they lack a cognizable interest in the litigation is to state that "the current Plaintiffs suffer from the same infirmity," such that the Amduso Plaintiffs' "purported lack of interest hardly disqualifies their participation." Objection at 5. This is wrong on multiple levels.

First, the Amduso Plaintiffs are wrong that the Havlish Creditors' interest in the DAB funds is as "nonexistent" as their own. Feb. 22 Op. at 8. The Havlish Creditors, as judgment creditors of the Taliban, have a firm, recognized basis in law to seek turnover of the DAB assets, whereas the Amduso Plaintiffs' interest in the DAB funds is, "by their own lights, non-existent." *Id.* The Havlish Creditors have obtained final judgments *against the Taliban* for materially supporting al Qaeda; the Amduso Plaintiffs have obtained final judgments *against Iran and Sudan*, but not the Taliban, based on those governments' provision of material support to al Qaeda.

On February 11, 2022, President Biden blocked the DAB assets. *See* Exec. Order No. 14,064. Under TRIA, because the Taliban is a U.S.-designated terrorist party against whom the Havlish Creditors have terrorism-based judgments, "the blocked assets of that terrorist party (*including the blocked assets of any agency or instrumentality of that terrorist party*) [are] subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable." TRIA § 201(a) (emphasis added). DAB, as the Havlish Creditors' turnover motion and expert declaration comprehensively demonstrate, is now fully controlled by the Taliban, making it an agency or instrumentality of the Taliban under Second Circuit precedent. *See* MDL Dkt. 7764 at 18–24 (turnover motion); MDL Dkt. 7766 ¶¶ 49–143 (expert declaration); *Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107, 135 (2d Cir. 2016), *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018) (entity that is "owned, controlled, or directed" by a terrorist party is that party's agency or instrumentality under TRIA). The Da Afghanistan Bank assets are thus the blocked assets of an agency or instrumentality of the Taliban. *See* TRIA § 201(a). As a result, "notwithstanding any other provision of law," the Taliban's judgment

creditors are entitled to execute on the DAB funds under TRIA in order to satisfy their judgments based on terrorism-related claims.[4]

In short, the Havlish Creditors are entitled to seek the DAB assets by dint of their final judgments against the Taliban. The Amduso Plaintiffs do not have such judgments and thus have no stake in the matter. *See Smith ex rel. Est. of Smith v. Fed. Rsrv. Bank of New York*, 346 F.3d 264, 271 (2d Cir. 2003) ("[A]lthough [TRIA] applies broadly to 'every case in which a person has obtained a judgment,' it confers no entitlement on victims who have not yet obtained judgments."). Contrary to the Amduso Plaintiffs' suggestion, the Havlish Creditors' basis for seeking turnover of the assets is not that they have suffered, like the Amduso Plaintiffs, "injuries caused by al Qaeda," Amduso Mot. at 7; it is that they have obtained a final judgment against the particular terrorist party—the Taliban—whose agency or instrumentality holds the blocked assets in question.

Nor does the Amduso Plaintiffs' purported interest in an equitable distribution of the funds on behalf of "all victims of state-sponsored terrorism holding valid final judgments" regardless of who their judgments are against, Mot. at 8, constitute a cognizable interest sufficient to support their intervention in a turnover proceeding involving judgments specifically against the Taliban. Their abstract goal is not a basis for intervention. *See Person v. New York State Bd of Elections*, 467 F.3d 141, 144 (2d Cir. 2006) (finding "abstract interest in the democratic process in New York

---

[4] As the United States has acknowledged in this litigation, TRIA "permits attachment of property even if attachment might otherwise be precluded by the FSIA." Dkt. 7661 at 10 (citing *Bennett v. Islamic Repub. of Iran*, 618 F.3d 19, 21 (D.C. Cir. 2010); *Weininger v. Castro*, 462 F. Supp. 2d 457, 499 (S.D.N.Y. 2006)). Nowhere does TRIA address State assets, and the statute imposes no limits on the attachments of State assets that otherwise belong to an agency or instrumentality of a terrorist party. *See Caballero v. FARC*, No. 20-MC-0040, 2021 WL 307558 (W.D.N.Y. Jan. 29, 2021) (Venezuelan state oil company was agency or instrumentality of Colombian terrorist group pursuant to TRIA).

State" was not cognizable for purposes of Rule 24); *U.S. ex rel. Anti-discrimination Ctr. of Metro New York, Inc. v. Westchester Cty., N.Y.*, No. 06 CIV. 2860 (DLC), 2012 WL 13777, at *6 (S.D.N.Y. Jan. 4, 2012) (organization could not intervene in action based on its "organizational purpose" of "ending segregation in Westchester," which gave the organization "no greater status than any other stranger to this litigation"). The Amduso Plaintiffs' intervention, moreover, would not stand to benefit them in any tangible way, because, as discussed above, the Court has no authority to transfer the DAB assets to the VSST Fund. Even if some of the Amduso Plaintiffs would stand to benefit from the addition of money to the VSST Fund, their suggestion that, should the Court deny the Havlish Creditors the portion of the DAB assets to which they are entitled, the money will go into the VSST fund, is entirely remote and speculative. Such speculation cannot form the basis of an intervention. *See Bridgeport Guardians*, 602 F.3d at 475 (internal quotation marks and citation omitted) ("An interest that is . . . contingent upon the occurrence of a sequence of events before it becomes colorable is not sufficient for intervention under Rule 24(a)(2).").

Finally, even if the Amduso Plaintiffs were somehow able to demonstrate that they, too, could eventually obtain final judgments against the Taliban or Afghanistan for their al Qaeda-inflicted injuries, that would not justify intervention in this matter. The Courts of Appeals have "generally concluded that a party may not intervene in support of a defendant solely to protect judgment funds that the party wishes to recover itself." *Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*, 717 F.3d 189, 195 (D.C. Cir. 2013). *See id.*; *Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1008–09 (8th Cir. 2007); *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005); *United States v. Alisal Water Corp.*, 370 F.3d 915, 920 (9th Cir. 2004) ("[A]n allegedly impaired ability to collect judgments arising from past claims does not, on its own, support a right to intervention. To hold otherwise would create an open invitation for virtually

any creditor of a defendant to intervene in a lawsuit where damages might be awarded."); *see also Doe v. Ejercito De Liberacion Nacional*, No. 10-CV-21517-HUCK, 2012 WL 10713165, at *2 (S.D. Fla. Aug. 2, 2012) (denying motion to intervene where intervenor, like plaintiff, also had a final judgment against the FARC based on similar "patterns of reprehensible conduct," because the intervenors did not have a cognizable interest in the particular proceeding at hand). There is no support for the notion that a judgment creditor's "general economic interest in . . . funds, even if sufficient to support Article III standing, would necessarily be an interest relating to any action that threatens those funds." *Deutsche Bank*, 717 F.3d at 195. In these cases, even where—unlike here—the would-be-intervenor had a valid judgment against the defendants, the courts held that such a judgment did not confer a legally cognizable interest in the particular proceeding.

### III.  Permissive Intervention Is Not Warranted

For largely the same reasons, the Amduso Plaintiffs should also be denied permissive intervention under Rule 24(b). Like intervention of right under Rule 24(a), permissive intervention under Rule 24(b) also requires that an intervenor establish a cognizable interest in the action. *See Floyd*, 770 F.3d at 1057 (whether party seeks intervention by right or by permission, intervenor must make the same four-part showing, and failure to satisfy any one of the elements is "a sufficient ground to deny the application"); *In re Bank of New York Derivative Litig.*, 320 F.3d 291, 300 n.5 (2d Cir. 2003) ("Substantially the same factors [that govern intervention of right] are considered in determining whether to grant an application for permissive intervention."). The Amduso Plaintiffs admit they have no interest in the action; the very relief they seek is a declaration that "neither they nor another set of plaintiffs in this case are entitled to [the DAB] assets." Feb. 22 Op. at 1. Their desire to see the DAB assets distributed to all terror victims via the VSST Fund is a remedy this Court has no authority to bring about. *See* Feb. 22 Op. at 7-8. Moreover, even if it could be shown that some of the intervenor-plaintiffs

14

might benefit marginally from an addition of money to the VSST Fund, should that result be possible, that does not make their interest in this action any more cognizable. *See Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) ("An interest that is . . . contingent upon the occurrence of a sequence of events before it becomes colorable[] will not satisfy the rule.").

Finally, as Judge Netburn correctly recognized, the Amduso Plaintiffs should not be allowed permissive intervention as it would "make an already complicated MDL even more unwieldy," causing delay and prejudice to existing parties. *See* Feb. 22 Op. at 11-12; Fed. R. Civ. P. 24(b)(3) ("In exercising its discretion [to allow permissive intervention], the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."). New York law provides an adequate mechanism for claimants to assert their rights in response to a turnover motion. *See* Feb. 22 Op. at 8 (citing NY CPLR § 5225(b)). Now that the Havlish and Doe turnover proceedings have commenced, legitimate adverse parties with a cognizable interest in the DAB funds will have the opportunity to raise arguments such as those that the Amduso Plaintiffs discuss in their motion and objection.

## CONCLUSION

For the foregoing reasons, Judge Netburn's order denying the Amduso Plaintiffs' motion to intervene should be affirmed. To the extent that the Court construes Judge Netburn's order as a report and recommendation, it should be adopted in its entirety.

Dated: March 21, 2022

    Respectfully submitted,

/s/ Lee S. Wolosky
Lee S. Wolosky
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1628
lwolosky@jenner.com

Douglass A. Mitchell (pro hac vice)
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 639-6090
dmitchell@jenner.com

Robert M. Foote (IL Bar No. 03124325)
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL 60134
(630) 232-7450

Richard D. Hailey (IN Bar No. 7375-49)
RAMEY & HAILEY
9333 North Meridian Street, Suite 105
Indianapolis, IN 46260
(317) 582-0000

Dennis G. Pantazis
(AL Bar No. ASB-2216-A59D)
WIGGINS CHILDS PANTAZIS FISHER GOLDFARB, LLC (Lead Counsel)
301 19th Street
North Birmingham, AL 35203
(205) 314-0500

Timothy B. Fleming (DC Bar No 351114)
WIGGINS CHILDS PANTAZIS FISHER GOLDFARB PLLC
2202 18th Street, NW, #110 Washington, DC 20009-1813
(202) 467-4489

Stuart H. Singer
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Phone 954 356 0011
Fax 954 356 0022

David A. Barrett
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Phone 212 446 2310

*Counsel for the Havlish Creditors*