## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Case No. 03-md-1570 (GBD)(SN) |

| | |
|---|---|
| FIONA HAVLISH, individually and on behalf of the ESTATE OF DONALD G. HAVLISH, JR., Deceased, *et al.*, | Case No. 03-cv-9848 (GBD)(SN) |
|       Creditors, | |
| v. | |
| THE TALIBAN, *et al.*, | |
|       Debtors, | |
| FEDERAL RESERVE BANK OF NEW YORK, | |
|       Garnishee. | |

### MEMORANDUM OF LAW IN SUPPORT OF THE HAVLISH CREDITORS' MOTION FOR AN ORDER DIRECTING ALTERNATIVE SERVICE UPON THE TALIBAN AND DA AFGHANISTAN BANK

## <u>TABLE OF CONTENTS</u>

BACKGROUND ...................................................................................................................2

LEGAL STANDARD............................................................................................................2

ARGUMENT .......................................................................................................................4

I. Service by Publication is Warranted for the Taliban .........................................4

II. Service on Da Afghanistan Bank ........................................................................8

  A. To the Extent FSIA Section 1608 Applies to DAB, The Applicable
   Subsection is 1608(b)................................................................................9

  B. Methods of Service Under Section 1608(b), to the Extent It Applies .................10

  C. The Havlish Creditors Have Already Completed Service of DAB via its
   Officer or Agent, in Satisfaction of Both Rule 4 and Section 1608(b).................11

  D. Supplemental Means of Service.................................................................14

III. Form of Service by Publication .........................................................................19

CONCLUSION....................................................................................................................19

Judgment Creditors Fiona Havlish, *et al*. (the "Havlish Creditors"), by and through their undersigned counsel, respectfully submit this memorandum of law in support of their Motion for an Order Directing Alternative Service Upon the Taliban and Da Afghanistan Bank.

On March 20, 2022, the Havlish Creditors filed a motion for an order compelling the Federal Reserve Bank of New York ("FRBNY") to turnover to them a portion of the assets of Da Afghanistan Bank ("DAB") in its possession ("the Turnover Motion"). *See* Dkt. 7764. Pursuant to Rule 4(f)(3), the Havlish Creditors seek permission to serve the Taliban with the Turnover Motion papers by publication in newspapers of general circulation worldwide, namely *Al-Quds Al-Arabi*, *Financial Times*, and *the New York Times*. No other practicable means are available for serving the Turnover Motion papers on the Taliban—a designated terrorist entity without a known address. Indeed, in this very litigation, the Court has repeatedly approved of service of process by publication upon the Taliban. *See Havlish v. Bin-Laden (In re Terrorist Attacks on Sept. 11, 2001)*, No. 03-CV-9848, 2011 U.S. Dist. LEXIS 155899, at *192 (S.D.N.Y. Dec. 22, 2011) (noting that the Taliban was served by publication), MDL Dkt. 2515 at 48; *see also* MDL Dkt. 445 (Judge Casey's September 16, 2004 order approving service by publication on, *inter alia*, the Taliban in Case Nos. 02-CV-6977, 03-CV-9849; and 03-CV-6978); MDL Dkt. 468 (Judge Casey's September 30, 2004 order allowing "all parties in MDL 1570 to join the [service by] publication Order"). This Court should once again authorize such service for the Havlish Creditors' Turnover Motion papers.

In addition, the Havlish Creditors have completed service on DAB by personally serving a member of its Supreme Council located in the United States. *See* Dkt. 7776. As explained below, however, and out of an abundance of caution and without prejudice to the arguments set forth in their Turnover Motion, the Havlish Creditors seek leave of court to pursue several alternative

methods of service for DAB.

## BACKGROUND

The factual and procedural background to this matter is documented in the Memorandum of Law accompanying the Turnover Motion, MDL Dkt. 7764. The Havlish Creditors respectfully refer this Court to that memorandum, which is incorporated herein.

## LEGAL STANDARD

Where, as here, a judgment creditor moves pursuant to Federal Rule of Civil Procedure 69(a) and Section 5225(b) of the N.Y. C.P.L.R. for the turnover of assets in which a judgment debtor has an interest, "[n]otice of the proceeding shall . . . be served upon the judgment debtor in the same manner as a summons." N.Y. C.P.L.R. § 5225(b).

Rule 4(h)(2) of the Federal Rules of Civil Procedure provides that foreign parties, including associations like the Taliban, are to be served pursuant to Rule 4(f), which permits service in the following manners:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by [certain other specified methods] reasonably calculated to give notice …; or

(3) by other means not prohibited by international agreement, as the court orders.

See Fed. R. Civ. P. 4(f)(1)-(3); S.E.C. v. Anticevic, No. 05 CV 6991, 2009 WL 361739, at *2-3 (S.D.N.Y. Feb. 13, 2009).

Rule 4(f)(3) allows a court wide discretion to "fashion means of service" on a foreign entity, "so long as the ordered means of service (1) is not prohibited by international agreement, . . . and (2) comports with constitutional notions of due process." Id. at *3 (internal citations omitted); see also In re S. African Apartheid Litig., 643 F. Supp. 2d 423, 433 (S.D.N.Y. 2009) ("A court is

'afforded wide discretion in ordering service of process under Rule 4(f)(3).'") (citation omitted); *BP Prods. N. Am., Inc. v. Dagra*, 236 F.R.D. 270, 271 (E.D. Va. 2006) (Rule 4(f)(3) "provides the Court with … flexibility and discretion … to fit the manner of service utilized to the facts and circumstances of the particular case.") (citation omitted). To obtain a court order directing alternative service pursuant to Rule 4(f)(3), a plaintiff need not establish that he attempted service under the other provisions of Rule 4(f). *See Smith v. Islamic Emirate of Afg.*, No. 01 CIV 10132, 2001 WL 1658211, at *2 (S.D.N.Y. Dec. 26, 2001) (authorizing service of process by publication on Osama bin Laden where the methods of service described in Rule 4(f)(2) "would be futile"); *KPN B.V. v. Corcyra D.O.O.*, No. 08 Civ. 1549, 2009 WL 690119, at *1 (S.D.N.Y. Mar. 16, 2009) ("Service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant.") (citations omitted); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) ("[T]he advisory notes [to Rule 4] indicate the availability of alternate service of process under Rule 4(f)(3) without first attempting service by other means."); *see also F.T.C. v. PCCare247 Inc.*, No. 12 Civ. 7189, 2013 WL 841037, at *3 (S.D.N.Y. Mar. 7, 2013) (noting that district courts "may [also] require parties to show that they have reasonably attempted to effectuate service on the defendant(s) and that the circumstances are such that the district court's intervention is necessary") (citations omitted).

Under circumstances where a foreign defendant's address is unknown or where traditional methods of service are otherwise unfeasible, courts in this Circuit regularly employ Rule 4(f)(3) to authorize service by publication on a foreign entity. *See S.E.C. v. Tome*, 833 F.2d 1086, 1094 (2d Cir. 1987) (service by publication in international circulation was adequate where the parties' names and addresses could not be obtained with "reasonable diligence "); *Hausler v. JP Morgan*

*Chase Bank, N.A.*, 141 F. Supp. 3d 248, 252 (S.D.N.Y. 2015) (publication of "summons and complaint once a week for four successive weeks" "satisfied the requirements of notice to an individual in a foreign country under" Rule 4(f)(3)). Service by publication may be carried out in accordance with "forum state law." *Anticevic*, 2009 WL 361739, at *5. In New York, Rule 316 of the Civil Practice Law & Rules provides that:

> An order for service of a summons by publication shall direct that the summons be published together with the notice to the defendant, a brief statement of the nature of the action and the relief sought, and . . . the sum of money for which judgment may be taken in case of default . . . in two newspapers, at least one in the English language, designated in the order as most likely to give notice to the person to be served, for a specified time, at least once in each of four successive weeks.

N.Y. C.P.L.R. 316(a). Rule 316 also provides that the first publication be made "within thirty days" of the granting of the order, and deems service by publication to be "complete on the twenty-eighth day after the day of first publication." *Id*. 316(c).

## ARGUMENT

### I.     Service by Publication is Warranted for the Taliban

Service by publication of the Turnover Motion papers on the Taliban is warranted under the circumstances of this case because the means of service outlined in Rule 4(f)(1)-(2) "would be futile," *Smith*, 2001 WL 1658211, at *2, and because service by publication will be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 314 (1950). This Court has itself on multiple occasions approved service by publication on the Taliban in the context of the 9/11 MDL (and the *Havlish* case in particular), finding that the Taliban would be reasonably likely to learn of the pending litigation via publication. *See Havlish*, 2011 U.S. Dist. LEXIS 155899, at *192 (MDL Dkt. 2515); *see also* MDL Dkts. 445, 468. Outside of this District, other courts have also in recent years ordered that the

Taliban be served by publication. *See, e.g.,* Order, *John Does 1 through 7 v. The Taliban, et al.*, No. 20-cv-00605 (N.D. Tex. June 17, 2020), ECF No. 10; Mem. Op. and Order, *Strange v. Islamic Republic of Iran, et al.,* Civ. No. 14-435 (D.D.C. Nov. 12, 2014), ECF No. 26 at 3; Order, *Doe v. Bin Laden, et al.*, Civ. No. 01-2516 (D.D.C. May 30, 2003), ECF No. 19. These cases support the straightforward proposition that "traditional means" of service, *BP Prods.*, 236 F.R.D. at 272, are generally not feasible or adequate for apprising a terrorist entity of litigation against it.

In this case, the Court should again order such service with respect to the Turnover Motion papers. Although, as noted earlier, Rule 4(f)(3) is not limited to "last resort" methods of service, *KPN B.V.*, 2009 WL 690119, at *1 (citation omitted), the Havlish Creditors can readily demonstrate that the other means of service outlined in Rule 4(f) are unfeasible. To begin with, Rule 4(f)(1) provides for service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." However, Afghanistan is not a party to the Hague Convention,[1] and at this time neither the United States nor any other country has recognized any group or entity as the legitimate government of Afghanistan. Accordingly, there are no international conventions that govern service of process here, and the Havlish Creditors are aware of no other agreed means of service applicable to these circumstances.[2]

Service on the Taliban by the methods specified in Rule 4(f)(2) is similarly unfeasible. Although Rule 4(f)(2)(B) authorizes service "as the foreign authority directs in response to a letter

---

[1] *See* HCCH, Status Table 14: *Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last updated June 17, 2021).

[2] By the same token, the Havlish Creditors are aware of no international agreement prohibiting service by publication. *See* Fed. R. Civ. P. 4(f)(3).

rogatory," the United States has no formal diplomatic relations with the current authorities in Afghanistan, making letters rogatory unavailable. *See* U.S. Dep't of Just. Archives, Crim. Res. Manual § 275 ("Letters rogatory are customarily transmitted via the diplomatic channel, a time-consuming means of transmission."), https://www.justice.gov/archives/jm/criminal-resource-manual-275-letters-rogatory (updated Jan. 22, 2020). Next, Rule 4(f)(2)(C) authorizes service by hand delivery (on an individual) or by mail. But even if an address could be identified for the Taliban or its agent, such methods would be infeasible. There are currently no postal, FedEx, UPS, DHL, or similar services from the United States to Afghanistan. *See* Mitchell Decl. Exs. 1-4 (notices from United States Postal Service, United Parcel Service, FedEx, and DHL). And given the precarious security situation in Afghanistan, it would likely prove challenging for a process server to attempt to personally deliver adverse papers to an agent of the Taliban, which remains a Specially Designated Global Terrorist. *See* Mitchell Decl. Ex. 5 (U.S. Department of State's travel advisory for Afghanistan, which advises Americans "not [to] travel to Afghanistan due to civil unrest, armed conflict, crime, terrorism, kidnapping, and COVID-19.").

Given the futility of otherwise effecting service on the Taliban, service by publication is the most appropriate method. *See BP Prods*, 236 F.R.D. at 272-73. Service by publication comports with due process "so long as a plaintiff reasonably calculates that the published notice is likely to come to the defendant's attention," and especially where "the defendant already has actual knowledge of the suit." *Anticevic*, 2009 WL 361739, at *4 (citing *Smith*, 2001 WL 1658211, at *3 (approving service by publication of Osama bin Laden when he was likely "aware that suits would be filed against him")); *see also Marvici v. Roche Facilities Maint. LLC*, No. 21 Civ. 4259, 2021 WL 5323748, at *5 (S.D.N.Y. Oct. 6, 2021) ("Service by alternative means is all the more reasonable where a defendant demonstrably already has knowledge of the lawsuit.").

6

Here, the Taliban certainly has actual knowledge of this nearly twenty-year-old litigation, which has resulted in a multi-billion dollar judgment against it. The litigation has been covered extensively in the press, especially in recent months as the Havlish Creditors and other families of terror victims have sought to satisfy their judgments with the DAB assets held at FRBNY, and as the Taliban has itself publicly lobbied to retain the funds. *See, e.g.,* Charlie Savage, *Taliban and 9/11 Families Fight for Billions in Frozen Afghan Funds*, N.Y. Times, Nov. 29, 2021, Mitchell Decl. Ex. 6 (noting that the "acting Taliban foreign affairs minister released a public letter to the United States Congress imploring it to release the funds"). In February 2022, following the President's executive actions with respect to the DAB assets, Taliban leaders publicly and directly commented on the instant litigation. *See* Karen DeYoung, *Biden Proposes Splitting Billions in Afghanistan Funds Between 9/11 Victims and Humanitarian Aid*, Wash. Post, Feb. 11, 2022, Mitchell Decl. Ex. 7 (reporting that "Abdullah Azzam, secretary to Taliban acting first deputy prime minister Abdul Ghani Baradar, said on Twitter that 'Biden doesn't have the right to pay from Afghans' assets the ransoms of those whom the Afghans have not killed'"); Aamer Madhani & Kathy Gannon, *Biden Frees Frozen Afghan Billions for Relief, 9/11 Victims*, AP News, Feb. 11, 2022, Mitchell Decl. Ex. 8 (reporting that "Taliban political spokesman Mohammad Naeem criticized the Biden administration for not releasing all the funds to Afghanistan" and commenting on Twitter that the United States was "[s]tealing the blocked funds of [the] Afghan nation").[3] Given

---

[3] Should the Court, in its discretion, determine that additional means of alternative service on the Taliban would be appropriate, the Havlish Creditors are prepared to attempt service of the Turnover Motion papers via Twitter on the accounts described above or other accounts reported to belong to Taliban spokespeople. *See* Mem. Endorsed Order, *Democratic Nat'l Comm. v. Russian Federation*, No. 18-cv-03501 (S.D.N.Y. Aug. 6, 2018), ECF No. 156 (approving service by Twitter against organization that disseminated leaked information through Twitter); *St. Francis Assisi v. Kuwait Fin. House*, No. 16-cv-3240, 2016 WL 5725002, at *1 (N.D. Cal. Sept. 30, 2016) (approving service through Twitter where the defendant had used Twitter to raise funds for terrorist organizations).

that the Taliban already has actual knowledge of this litigation, and given that service by publication on the Taliban has been repeatedly approved by this Court in the MDL, service on the Taliban by publication of the Turnover Motion papers is appropriate and comports with Rule 4(f)(3).

## II.     Service on Da Afghanistan Bank

The Havlish Creditors have already effectuated service of their Turnover Motion on Da Afghanistan Bank via personal service on Dr. Shah Mehrabi, a U.S.-based member of DAB's Supreme Council, the Bank's "highest decision-making and policy-making body." *See* MDL Dkt. 7776 (affidavit of service); *see* Mitchell Decl. Ex. 9 (DAB website). Such service on an officer or agent satisfies all applicable rules, laws, and procedures governing service on DAB, including, as more fully explained below, Section 1608(b)(2) of the Foreign Sovereign Immunities Act, Rule 4 of the Federal Rules of Civil Procedure, and New York law, to the extent any of them are applicable.

For the reasons described below, the Havlish Creditors also seek leave of court to supplement their service on DAB in several ways that require the Court's approval. The Havlish Creditors seek to do so out of an abundance of caution, and in particular to serve DAB through additional means that also comport with New York law, the Federal Rules of Civil Procedure, and Section 1608 of the Foreign Sovereign Immunities Act, in the event the Court were to determine that it applies to this enforcement action under TRIA. *See* 28 U.S.C. 1608.[4]

As discussed more fully in their Turnover Motion, TRIA preempts the FSIA in all respects relevant to this proceeding. *See* Dkt. 7764. The Havlish Creditors, however, acknowledge that they

---

[4] As set forth below, the Havlish Creditors make this application without prejudice to the position set forth in their Turnover Brief that the FSIA is preempted in all respects relevant to these proceedings by TRIA.

must provide DAB with notice and an opportunity to be heard and that multiple procedures could potentially govern the sufficiency of notice in a TRIA proceeding.  The United States, for example, has taken the position in this litigation that Da Afghanistan Bank—regardless of whether it is an agency or instrumentality of *the Taliban*—remains, as the Afghan central bank, "an agency or instrumentality of the State of Afghanistan" under the FSIA and that, as a consequence, the parties should consider providing notice using procedures contained in 28 U.S.C. § 1608. *See* MDL Dkt. 7661 ("Gov. SOI") at 21, 25 n. 8.

Accordingly, without conceding that the Government's position is correct as to either applicable substantive or procedural rights, and without prejudice to the arguments set forth in their Turnover Brief, the Havlish Creditors seek the Court's approval to employ several methods of alternative service to ensure that (1) DAB receives actual notice of these turnover proceedings and (2) their service upon DAB comports with not only CPLR Sections 5225 and 5227 and Rule 4 of the Federal Rules of Civil Procedure, but also other potentially applicable procedures, including those set forth in 28 U.S.C. § 1608(b), which govern service on agencies and instrumentalities of foreign states.

## A.    To the Extent FSIA Section 1608 Applies to DAB, The Applicable Subsection is 1608(b)

To the extent the FSIA applies at all in this enforcement proceeding, Section 1608(b) sets forth the procedures that might apply to service on DAB. Central banks are generally deemed agencies or instrumentalities of the foreign state. *See Holladay v. Islamic Republic of Iran*, 523 F. Supp. 3d 100, 114 (D.D.C. 2021) (Iran's central bank was an "agency or instrumentality" properly served under Section 1608(b)); *Williams v. Islamic Republic of Iran*, No. 18-CV-2425 (RDM), 2021 WL 1820263, at *4 (D.D.C. May 6, 2021) (same); *Davoyan v. Republic of Turkey*, No. 10 - CV-5636 (DMG), 2010 WL 11507885, at *3 (C.D. Cal. Dec. 7, 2010) (same with respect to the

Turkish central bank); *Gates v. Victor Fine Foods*, 54 F.3d 1457, 1460 (9th Cir. 1995) (quoting H.R.Rep. No. 94–1487, 94th Cong. 2nd Sess. (1976), *reprinted at* 1976 U.S.C.C.A.N. 6604, 6614) (noting the legislative history of the FSIA, in which the House Report listed "a central bank" as an example of an "entit[y] which meet[s] the definition of an 'agency or instrumentality' of a foreign state"). Da Afghanistan Bank, then, to the extent it continues to be the central bank of Afghanistan, or to the extent it must be served pursuant to Section 1608, would constitute an "agency or instrumentality" within the meaning of Section 1608(b).

### B.    Methods of Service Under Section 1608(b), to the Extent It Applies

Under § 1608(b), "an agency or instrumentality of a foreign state" must be served:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—

(A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or

(B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

(C) as directed by order of the court consistent with the law of the place where service is to be made.

28 U.S.C. § 1608(b). These methods are listed "in order of precedence," such that "if the first-listed method is unsuccessful or unavailable, then a plaintiff may move to the second, and so on." *Holladay*, 523 F. Supp. 3d at 105 (quoting *Worley v. Islamic Republic of Iran*, 75 F. Supp. 3d 311, 327 (D.D.C. 2014)).

### C. The Havlish Creditors Have Already Completed Service of DAB via its Officer or Agent, in Satisfaction of Both Rule 4 and Section 1608(b)

On March 20, 2022, Dr. Shah Mehrabi—one of seven members of DAB's highest decision-making body—was served personally in Arlington, Virginia with the Turnover Motion papers. *See* MDL Dkt. 7776 (affidavit of service); *see also* Mitchell Decl. Ex. 12. Accompanying the motion papers was a cover letter making clear to Dr. Mehrabi that the papers were directed to DAB and that he was "being served with these papers in [his] capacity as a member of Da Afghanistan Bank's Supreme Council." Mitchell Decl. Ex. 12. Dr. Mehrabi was also provided with a USB drive containing digital copies of the motion papers, for ease of transferring the files.

To the extent either rule applies, such service constituted effective service of DAB under both Fed. R. Civ. P. 4 and Section 1608(b). *See* Fed. R. Civ. P. 4(h)(1)(B) (authorizing service of a foreign corporation or association by service within the United States to "an officer, a managing or general agent or any other agent authorized by appointment or by law to receive service of process"); 28 U.S.C. § 1608(b)(2) (if no "special arrangement for service between the plaintiff and the agency or instrumentality" of a foreign state exists, authorizing service by "delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States").[5]

As a member of DAB's "Supreme Council," Dr. Mehrabi readily qualifies as "an officer, a managing [agent,] or [a] general agent" of DAB within the meaning of both Section 1608(b)(2) and Rule 4(h). To begin with, both provisions employ the same standard, and are similarly

---

[5] No "special arrangement for service" between the Havlish Creditors and DAB exists, such that FSIA Section 1608(b)(1) is inapplicable. Accordingly, the Havlish Creditors "may move to the second" method of service under the statute, Section 1608(b)(2). *Holladay*, 523 F. Supp. 3d at 105.

interpreted by courts. In allowing for service on "an officer, a managing or general agent, or [on] any other agent authorized by appointment or by law to receive service of process in the United States," FSIA Section 1608(b)(2) "borrow[ed] language from Federal Rule of Civil Procedure 4 for service on a corporation, partnership, or association." *Davoyan*, 2010 WL 11507885, at *6 (citing Fed. R. Civ. P. 4 (using the same language)). Courts have interpreted Rule 4(h)(1)(B) to allow for service on a corporation by delivery to someone "who operates at the organization's highest levels, or has overall authority to make high-level decisions on the part of the enterprise." *d'Amico Dry d.a.c. v. McInnis Cement Inc.*, 469 F. Supp. 3d 185, 190 (S.D.N.Y. 2020) (internal citations and quotation marks omitted). *See also Grammenos v. Lemos*, 457 F.2d 1067, 1073 (2d Cir. 1972) ("A general or managing agent must be invested with powers of discretion and must exercise judgment in his duties."). Such service is "not limited solely to officially designated officers, managing agents, or agents appointed by law for the receipt of process," so long as service is made upon "a representative so integrated with the organization that he will know what to do with the papers." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) (internal citations omitted). These standards must be "liberally construed . . . in cases in which the party has received actual notice." *Grammenos*, 457 F.2d at 1070. And in incorporating these standards into 28 U.S.C. § 1608, "Congress was well aware of the liberal construction afforded Rule 4." *Davoyan*, 2010 WL 11507885, at *6.

Based on DAB's own description of its "Supreme Council" and Dr. Mehrabi's role on it, Dr. Mehrabi qualifies as an "officer" or "agent" of the bank within the meaning of Section 1608(b)(2) and Rule 4. DAB's website declares the Supreme Council to be its "highest decision-making and policy-making body," which is "responsible [for] develop[ing] overall policies of DAB and supervis[ing] administration and its operations." *See* Mitchell Decl. ex. 9. DAB's

website states that the Supreme Council is composed of seven members, but lists only four, including Dr. Mehrabi, as current members of the council. *Id*. Dr. Mehrabi has continued to identify himself, as recently as January 2022, using the present tense, as "a member of the Supreme Council of the Central Bank of Afghanistan."[6] In a December 2021 interview, Dr. Mehrabi stated that he "[has] spent close to 20 years on what is called the Supreme Council, the governing board of the Central Bank of Afghanistan" and "[is] also chairman of the Audit Committee of the Central Bank of Afghanistan."[7] As a member of the bank's "highest decision-making and policy-making body," Dr. Mehrabi plainly operates at DAB's highest levels, is invested with powers of discretion, and has the authority to make high-level decisions. *See d'Amico Dry*, 469 F. Supp. 3d at 185. *See also Tachiona v. United States*, 386 F.3d 205, 222 (2d Cir. 2004) (describing the "president of a foreign bank" as the type of agent or officer of an agency or instrumentality of a foreign state that could properly be served under Section 1608(b)(2)). And he is certainly someone who is "so integrated with the organization that he will know what to do with the papers." *Direct Mail Specialists*, 840 F.2d at 688. Therefore, Dr. Mehrabi is an agent or officer of DAB and service directed to him constitutes adequate service of DAB under both Rule 4 and Section 1608(b)(2) of the FSIA, to the extent it is applicable.[8]

---

[6] *See* Shah Mehrabi, *Afghanistan's economy is collapsing, the US can help stop it* (January 29, 2022), available at https://www.aljazeera.com/opinions/2022/1/29/afghanistans-economy-is-collapsing-the-us-can-help-stop-it.

[7] *See* the International Schiller Institute, *Interview with Dr. Shah Mehrabi* (December 18, 2021), available at https://schillerinstitute.com/blog/2021/12/18/interview-with-dr-shah-mehrabi-u-s-policy-is-suffocating-the-afghan-people/.

[8] The fact that Dr. Mehrabi is located in the United States does not change the analysis. *See Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1058 (2019) (Section 1608(b) makes clear that "service on the agent may occur in the United States if an agent here falls within the provision's terms").

### D.     Supplemental Means of Service

Out of an abundance of caution, the Havlish Creditors nonetheless ask the Court to authorize their proposed supplemental methods of alternative service. Supplemental court-ordered service is available under both Rule 4(f) and under Section 1608(b). As discussed above, Rule 4(f) allows for service on a foreign party "by [any] means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). And Section 1608(b)(3)(C) allows for means of service that are "reasonably calculated to give notice" and "directed by order of the court consistent with the law of the place where service is to be made." Under these provisions, and in the interest of making every effort to apprise interested parties of these proceedings, the Havlish Creditors seek the Court's approval to employ the following supplemental methods of service on DAB. *See Marvici*, 2021 WL 5323748, at *1 (approving of plaintiffs' "proposed alternative methods [of service], undertaken *in combination*") (emphasis added).

Alternative methods of service are appropriate under the circumstances of this case given the difficulties of other methods of service. As noted above, there are (1) no "internationally agreed means of service" applicable, *see* Fed. R. Civ. P. 4(f)(1); *see supra* note 1; (2) no "special arrangements for service between [the Havlish Creditors] and [DAB]," *see* 28 U.S.C. §1608(b)(1); (3) no letters rogatory since formal diplomatic channels are unavailable given the absence of formal diplomatic relations between the United States and Afghanistan, *see* Fed. R. Civ. P. 4(f)(2)(B); 28 U.S.C. § 1608(b)(3)(A); and (4) mail delivery from the United States to Afghanistan is currently suspended, *see* Fed. R. Civ. P. (4)(f)(2)(C)(ii); 28 U.S.C. § 1608(b)(3)(B); Mitchell Decl. Exs. 1-4.

### i.     <u>Service by Publication</u>

For the same reasons discussed above with respect to the Taliban, service by publication is also warranted with respect to DAB. Like the Taliban, DAB itself already has actual knowledge

of the attachment of its accounts at the Federal Reserve Bank of New York and President Biden's February 11, 2022 Executive Order, and it has publicly commented on related matters. *See* Mitchell Decl. Ex. 11, Da Afghanistan Bank, "Press Release Of Da Afghanistan Bank On The Decision Of United States Of America Regarding The Foreign Exchange Reserves Of Afghanistan" (February 12, 2022) ("DAB considers the latest decision of USA on blocking FX reserves and allocating them to irrelevant purposes, injustice to the people of Afghanistan and will never accept if the FX reserves of Afghanistan is paid under the name of compensation or humanitarian assistance to others."). Service by publication in the newspapers proposed by the Havlish Creditors will be an appropriate means of "appris[ing] [DAB] of the pendency of the action and afford[ing] [it] an opportunity to present [its] objections." *Mullane*, 339 U.S. at 314. As detailed below, the Havlish Creditors propose to direct publication in three newspapers to both the Taliban and DAB simultaneously.

  ii.   <u>Email</u>

In addition to service by publication, the Havlish Creditors ask for leave to serve DAB by email to DAB's public email address. The Havlish Creditors are aware that info@dab.gov.af is an email address associated with DAB.  DAB displays the address prominently on the bank's website (https://www.dab.gov.af/). *See* Mitchell Decl. ex 10. Email delivery of the motion papers to DAB's public email address would satisfy both Rule 4 and FSIA Section 1608(b)(3)(C).

It is well settled that email service on a foreign defendant can satisfy Rule 4(f)(3) and constitutional standards of due process. *See Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 379 (S.D.N.Y. 2018); *see also Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 331 (S.D.N.Y. 2015); *PCCare247 Inc.*, 2013 WL 841037, at *4–5 (ordering service by email and Facebook). In this case, email service is reasonably calculated to apprise DAB of the pendency of

the Turnover Motion. As in *Sulzer Mizpac*, "[t]he email address in question is listed prominently [DAB's] Internet homepage," making it "reasonable to expect [DAB] to learn of the [motion] through this email address." *Sulzer Mixpac AG*, 312 F.R.D. at 332.

Email service would also be appropriate under FSIA Section 1608(b), which is concerned with giving "actual notice." *See First City, Texas Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 55 (2d Cir. 2002) ("Rather than making service of foreign instrumentalities a rigid, technical, or cumbersome procedure, Congress . . . wished to insure that the sovereign owner would receive actual notice." (citation omitted)); *Finamar Invs. Inc. v. Republic of Tadjikistan*, 889 F. Supp. 114, 117 (S.D.N.Y. 1995) (Section 1608(b) "relax[es] the required procedures [for service of an agency or instrumentality of a foreign state] in the event actual notice is conveyed."). Here, as discussed above, DAB has actual notice of these proceedings, and an email to the bank's publicly listed address is a straightforward way of ensuring that DAB receives additional notice of the Turnover Motion.

A number of courts have authorized service by email or fax on an agency or instrumentality of a foreign state pursuant to the Section 1608(b)(3)(C) catchall provision, particularly where, as here, more traditional methods of service are not feasible due to conditions on the ground in the foreign state. For example, in *Janvey v. Libyan Inv. Auth.*, No. 3:11-CV-1177-N, 2011 WL 13299659 (N.D. Tex. June 6, 2011), the court authorized service by email and fax upon an instrumentality of the Libyan state under Section 1608(b)(3)(C). That case arose against the backdrop of an "ongoing Libyan civil war," which "rendered communicating with the Libyan Defendants and other Libyan authorities via mail or courier impossible." *Id*. at *2, *5. The court also noted that the Libyan embassy in Washington, D.C. "may not [have been] fully functional" at the time. *Id*. at *5. Under these circumstances, the court accepted that email and fax service would

be appropriate and "reasonably calculated to give the Libyan Defendants actual notice." *Id*. at \*5. Similar cases arose in the months following the Iranian Revolution where a volatile political and security situation and a lack of formal diplomatic channels made it difficult to serve process on foreign government entities in accordance with Section 1608's enumerated methods. In *New England Merchants Nat. Bank v. Iran Power Generation & Transmission Co.*, 495 F. Supp. 73 (S.D.N.Y. 1980), Judge Duffy ordered service on Iran and its instrumentalities via a telex message, agreeing with the plaintiffs that "the present political situation in Iran together with the severance of diplomatic relations between the United States and Iran has rendered service under the terms of the FSIA impossible." *Id*. at 78. Judge Duffy found "nothing … in the FSIA restricting the court's otherwise unfettered authority under Rule 4 . . . of the Federal Rules of Civil Procedure to fashion a mode of service upon those not found within the United States." *Id*. at 80. *See also Harris Corp. v. Nat'l Iranian Radio & Television*, 691 F.2d 1344 (11th Cir. 1982) (affirming the propriety of telex service upon Iran's national broadcaster); *Int'l Sch. Serv. v. Gov't of Iran*, 505 F. Supp. 178, 179 (D.N.J. 1981) (ordering telex service on Government of Iran). As these cases suggest, the FSIA and the Federal Rules of Civil Procedure are not blind to the difficulties of serving process upon instrumentalities of foreign states during times of volatility and a breakdown in diplomatic relations. Particularly given the evidence that DAB already has actual notice of these proceedings, email service is an appropriate supplement under Section 1608(b)(3)(C).[9]

---

[9] The Havlish Creditors are aware of no law or rules of procedure in Afghanistan that would preclude service by email. *See* 28 U.S.C. § 1608(b)(3)(C) (authorizing any method of service that is "reasonably calculated to give actual notice" so long as it is "directed by order of the court consistent with the law of the place where service is to be made"). Courts have interpreted "consistent with the law" under this subsection to mean in a manner not expressly prohibited by the law. *See New England Merchants National Bank v. Iran Power Generation & Transmission Co.*, 495 F.Supp. 73 at 79. In circumstances where the law of the jurisdiction where service to be made is unclear, courts have generally allowed alternative methods of service. *See Janvey*, 2011

iii.     Personal Delivery in Afghanistan

Pursuant to Rule 4(f)(2)(A) and Rule 4(f)(3), as well as pursuant to the catchall provision of 28 U.S.C. § 1608(b)(3)(C), the Havlish Creditors also seek approval for service by personal delivery of the Turnover Motion papers to DAB headquarters in Kabul, Afghanistan. Generally, service on a foreign corporation or association by personal delivery outside of the United States is not available as a means of service under the federal rules. *See* Fed. R. Civ. P. 4(h)(2). However, Rule 4(f) and Section 1608(b) specifically authorize a court to order alternative methods of service that are not otherwise available under the rules. *See* Fed. R. Civ. P. 4(f)(3) (the court may order other means of service so long as they are not "prohibited by international agreement"); 28 U.S.C. § 1608(b)(3)(C) (authorizing any method of service that is "reasonably calculated to give actual notice" so long as it is "directed by order of the court consistent with the law of the place where service is to be made"). Under the circumstances of this case, the Court should authorize personal delivery of papers to DAB in Afghanistan. *See Smith*, 2001 WL 1658211, at *4 (authorizing service under Rule 4(f)(3) of the Taliban by personal service on "a high-ranking member of the Taliban"). The Havlish Creditors understand that service by personal delivery comports with the laws of Afghanistan.

iv.     Twitter

---

WL 13299659, at *5 (approving email service on instrumentality of Libyan state where the court had "been unable to discern the particulars of Libyan service of process law"); *New England Merchants*, 495 F. Supp at 78 (approving telex service on Iranian entities despite the fact the parties had "been unable to provide the court with a definitive statement with respect to the present state of Iranian law"). Accordingly, in the absence of any information that Afghan law prohibits it, service upon DAB by email would comport with Section 1608(b)(3)(C).

As noted above with respect to the Taliban, if the Court deems it appropriate, the Havlish Creditors are prepared to attempt service on DAB via Twitter at its main account, @AFGCentralBank. *See supra* n. 3.

## III.   Form of Service by Publication

As noted above, federal courts authorizing service by publication determine how that publication should be effectuated with reference to the law of the forum state, which in this case is N.Y. C.P.L.R. Rule 316. *See Anticevic*, 2009 WL 361739, at *5 (citing *BP Prods.*, 236 F.R.D. at 273); N.Y. C.P.L.R. 316. The Havlish Creditors propose to effectuate service on the Taliban and DAB, as provided in Rule 316, in the following publications: (1) *Al Quds Al-Arabi,* a newspaper circulated in Europe, the Middle East, North Africa, and North America, which has been regularly found by courts to be an appropriate outlet for legal notices regarding the Taliban*, see, e.g.*, MDL Dkt. 2515; Order, *John Does 1 through 7*, *supra* p. 5, ECF No. 10; Mem. Op. and Order, *Strange*, *supra* p. 5, ECF No. 26 at 5; (2) *Financial Times*, a U.K.-based newspaper with worldwide print circulation; and (3) the *New York Times*.

## CONCLUSION

For the foregoing reasons, the Havlish Creditors respectfully ask the Court to grant their motion to serve the Turnover Motion papers on the Taliban and DAB by alternative means of service.

Dated: March 21, 2022

Respectfully submitted,

/s/ Lee S. Wolosky
Lee S. Wolosky
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1628
lwolosky@jenner.com

Douglass A. Mitchell (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 639-6090
dmitchell@jenner.com


Richard D. Hailey (IN Bar No. 7375-49)
RAMEY & HAILEY
9333 North Meridian Street, Suite 105
Indianapolis, IN 46260
(317) 582-0000

Robert M. Foote (IL Bar No. 03124325)
FOOTE, MIELKE,
CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL 60134
(630) 232-7450

Dennis G. Pantazis
(AL Bar No. ASB-2216-A59D)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, LLC (Lead Counsel)
301 19th Street
North Birmingham, AL 35203
(205) 314-0500

Timothy B. Fleming (DC Bar No 351114)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB PLLC
2202 18th Street, NW, #110
Washington, DC 20009-1813
(202) 467-4489

Stuart H. Singer
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011

David A. Barrett
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
(212) 446-2310

*Counsel for Judgment Creditors Fiona Havlish, et al.*