

March 22, 2022

**Sean P. Carter**
Direct Phone   215-665-2105
Direct Fax       215-701-2105
scarter1@cozen.com

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

   RE: *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

   We write on behalf of Plaintiffs in the *Burnett, O'Neill*, *Havlish*, *Hoglan*, *Grazioso*, and *Federal Insurance* actions to advise the Court that we have reached agreement in principle on a framework (to be finalized this week) that will provide a straightforward, prompt, and largely frictionless path for the Court to resolve virtually all the issues raised by the Taliban judgment applications and Da Afghanistan Bank ("DAB") turnover proceedings.  To facilitate this framework, and as urgently necessary given the active, opportunistic efforts by claimants outside of this MDL to jump the line,[1] Plaintiffs in all of these cases respectfully request that the Court undertake the final, ministerial action needed to enter a final judgment in favor of the *Federal Insurance* Plaintiffs against the Taliban, as soon as possible.  A revised proposed form of Order of judgment is being submitted contemporaneously for the Court's consideration.

   Entry of that judgment is essentially an administrative matter, would resolve a motion pending since 2007, and will be used to serve an additional writ of execution against the blocked DAB funds.  At least $1.3 billion of those funds are unsecured by any valid post-judgment writ of execution for compensatory damages, and thus attracting aggressive, opportunistic execution efforts by claimants from outside of this MDL.  Service of a writ of execution based on the requested *Federal Insurance* final judgment will be used to secure them for purposes of facilitating the agreed omnibus distribution framework described below.  Upon service of that writ, the *Burnett, O'Neill, Hoglan, Grazioso*, and *Federal Insurance* Plaintiffs would join in the turnover proceedings, adopting the arguments already presented by the *Havlish* and *Doe* Plaintiffs.

   Moving Plaintiffs' framework agreement presents the best approach available under the circumstances to secure relief for all 9/11 plaintiffs who have asserted interests in the turnover proceedings; eliminates the risk many of them may otherwise face of having no basis to participate in distributions of blocked DAB funds found subject to turnover; provides moving

---

[1] This morning, plaintiffs in the *Owens* action were granted a prejudgment writ of attachment, a circumstance that moving Plaintiffs respectfully submit underscores the urgency of the present request.  *See Owens v. Taliban, et al.,* Civ. No. 22-1949 (S.D.N.Y.), ECF Nos. 32, 33.

Honorable Sarah Netburn
March 22, 2022
Page 2

_____

Plaintiffs with the means to prevent (or at least try to prevent) other claimants from outside of this MDL from seeking to jump the line in the hope of taking the blocked funds; and provides this Court with a straightforward and manageable path for resolving these issues on a comprehensive, very prompt basis.

      To those ends, we respectfully submit that entry of the requested final judgment in favor of the *Federal Insurance* Plaintiffs is urgently necessary and appropriate.

1.    <u>The Framework Agreement Will Dramatically Simplify the Turnover Proceedings and Broadly Protect the Interests of the 9/11-Taliban Stakeholders</u>

      As suggested during the hearing on February 22, 2022 and in the PECs' letter of March 11, 2022 (ECF No. 7747), counsel for the *Havlish* Plaintiffs and counsel for the remaining 9/11 plaintiffs asserting interests in the turnover proceedings (collectively, the "9/11-Taliban Stakeholders") have been proceeding to reach an agreement to streamline and simplify the path for resolving the range of issues raised by the turnover proceedings and related applications. Very simply, the parties recognized that if they agree on a sharing framework for distributing blocked DAB assets subject to turnover, and a simple mechanism to secure the blocked funds, the sole near-term issue remaining for the Court to decide would be whether the funds are subject to turnover pursuant to the Terrorism Risk Insurance Act ("TRIA"). And on that issue, an agreement would allow the parties to be united on a common position and arguments.

      As a result of a series of discussions, moving Plaintiffs have in fact reached an agreement in principle, to be finalized this week, on an allocation framework that would govern distribution of the blocked DAB funds, in the event the Court concludes they are subject to turnover, and agree that a final judgment in favor of the *Federal Insurance* Plaintiffs would provide the simplest mechanism to secure and facilitate any authorized distribution of the remaining funds not already covered by the *Doe* or *Havlish* writs. As indicated above, that judgment would provide the basis to serve an additional writ of execution against the blocked DAB funds, thereby protecting portions of those funds currently unsecured by any valid post-judgment writ of attachment for compensatory damages, and allowing moving Plaintiffs simply to join in the ongoing turnover proceedings and adopt or elaborate the arguments already presented to the Court by the *Havlish* and *Doe* Plaintiffs.

      This Court could then turn its focus to resolving the core TRIA execution issues. In the event the Court concludes the blocked DAB funds are subject to turnover pursuant to TRIA, as we believe the Court should, all of the blocked funds would then be distributed pursuant to the allocation framework among the different groups of moving Plaintiffs. This outcome would result in broad-based participation by the 9/11-Taliban Stakeholders in a distribution of approximately $3.5 billion, and eliminate a range of complexities the Court would otherwise need to navigate in lengthy, contested proceedings.

      In proposing this approach, moving Plaintiffs are mindful of the complexities and uncertainties raised by other applications for judgments currently pending in anticipation of seeking to initiate turnover proceedings, and the inherent challenges they would raise for the Court in the absence of this agreed-upon approach. In short, many thousands of the 9/11-Taliban

Honorable Sarah Netburn
March 22, 2022
Page 3

_____

Stakeholders are seeking, but have not yet obtained, monetary judgments against the Taliban, meaning that their interests are unsecured. Further, the procedural status of the Taliban claims of those plaintiffs varies significantly, and in the absence of an allocation agreement, the parties would have disagreed as to how the Court should proceed and would have inevitably asserted differing views on issues of priority. Such disparate proposals would present inherent risks for the various stakeholders, including that some or many may have been left without a basis to participate in distributions of any blocked funds deemed subject to turnover. Meanwhile, the Court has indicated its view that it would require a "Herculean" effort to decide all of the pending applications individually, in the absence of such an agreed approach, and claimants from outside this MDL and unrelated to the 9/11 attacks are bringing new claims and unjustifiably attempting to cut in line ahead of the 9/11 plaintiffs. These complexities and uncertainties can and in our view should be avoided by taking advantage of this proposed approach by entering judgment in favor of the *Federal Insurance* Plaintiffs.

2.    Entry of the *Federal Insurance* Plaintiffs' Final Judgment Without Further Delay Will Protect the Blocked Assets for the Benefit of Moving Plaintiffs, Will Enable the Parties and Court to Take Advantage of the Plaintiffs' Omnibus Agreement, and is Clearly Appropriate

Entry of a final judgment in favor of the *Federal Insurance* Plaintiffs against the Taliban provides a straightforward and simple mechanism to protect the blocked funds for the benefit of all moving Plaintiffs, and is both procedurally appropriate and in the interests of justice.

As more fully detailed in the undersigned's December 22, 2021 letter to the Court and exhibits thereto, ECF No. 7498, Plaintiffs in the *Federal Insurance* case moved in early 2007 for an assessment of damages against the Taliban and other defendants already subject to judgments of default. The Court issued substantive rulings on that motion in 2011 that apply with respect to all of those defendants and which supported entry of damage awards with respect to the defendants other than the Taliban. All that remains is for the Court to formally extend those determinations to the Taliban, pursuant to the procedure the Court has already deemed proper when execution opportunities arise for particular defaulted defendants subject to the 2007 motion (a group that includes the Taliban). It is entirely appropriate for the Court to enter the requested judgment without further delay, all the more so now that the judgment would be used to broadly advance the interests of relevant stakeholder plaintiffs and allow for the efficient resolution of the issues before the Court.

The proposed form of order awarding the judgment is three pages long and directly tracks the underlying orders and judgments that this Court has already issued and on which it is based. Thus, entering the judgment should require minimal additional determinations. The only alteration requested in the current form of order is the addition of language lifting the automatic stay under Rule 62(a), to allow moving Plaintiffs to immediately protect the unsecured portion of the funds and promptly join the turnover proceedings. *See Off-White LLC v. Ali,* 2021 U.S. Dist. LEXIS 137947 (S.D.N.Y. July 23, 2021). For purposes of the clerk's final judgment, it would be appropriate, we submit, for the Clerk to include the calculation of prejudgment interest on the face of the judgment. For judgments on federal law claims in this MDL, the Court has consistently applied a 4.96% prejudgment interest rate, compounded annually and running from

Honorable Sarah Netburn
March 22, 2022
Page 4

_____

September 11, 2001. *See* ECF No. 2623 at 5 (awarding *Havlish* Plaintiffs prejudgment interest at the rate of 4.96%); ECF No. 3175 at 9 (recommending "for the sake of consistency that this same 4.96 percent rate" be applied to any federal law claims of the *Federal Insurance* Plaintiffs against Iran); ECF No. 3229 at 2 (adopting recommendation of 4.96% prejudgment interest, compounded annually); ECF No. 4062 at 2 (holding that prejudgment interest for insurers' claims runs from September 11, 2001). A worksheet reflecting that calculation, through each of the next seven days, is enclosed for the Clerk's consideration and convenience. *See* Attachment A.

3. <u>Attachment Efforts by New Claimants Require Prompt Action to Protect the 9/11-Taliban Stakeholders' Interests</u>

As the Court is aware, new claimants are advancing opportunistic and novel theories in an eleventh-hour effort to secure judgments and establish priority entitlement to the unsecured portion of the blocked funds. In the past few weeks, two groups of U.S. Embassy bombing plaintiffs announced their intent to intervene or file actions against the Taliban to accomplish just that. One of those groups sought, and this morning received, a prejudgment writ of attachment against the blocked assets, which they presumably hope to use to displace the plaintiffs in this MDL who have long been seeking entry of judgment against the Taliban.

As indicated previously, the Plaintiffs' Executive Committees submit that the prejudgment attachment efforts of the U.S Embassy bombing plaintiffs are invalid as a matter of law, for several reasons. First, as the United States has indicated, any efforts to attach the blocked DAB assets must be based on TRIA, and the Second Circuit has directly held that TRIA does not permit prejudgment attachment of blocked assets. *Smith ex rel. Est. of Smith v. Fed. Rsrv. Bank of New York,* 346 F.3d 264, 270-271 (2d Cir. 2003). Second, the assets at issue are blocked, and it is not possible for the Taliban to move them out of the jurisdiction, the supposed basis for the new competing claims. Third, the U.S Embassy bombing plaintiffs are only now initiating claims against the Taliban, 23 years after the attacks giving rise to their injuries, and no basis exists to assume for purposes of a prejudgment attachment request that a defendant (not yet served) will waive a statute of limitations defense.[2]

Even so, these recent efforts of claimants from outside of the MDL underscore the potential complications and burden on the Court arising from dueling proceedings absent prompt action here, as well as the severe prejudice plaintiffs seeking judgment against the Taliban in this MDL could suffer – absent entry of judgment as proposed and then service of an additional writ of attachment to protect their interests in the unsecured portion of the blocked assets. The plaintiffs from outside of this MDL have procedural mechanisms in place that could, in theory,

_____

[2] For these reasons, and because the writ of attachment issued on a prejudgment basis, moving Plaintiffs believe the *Owens*' plaintiffs will not be able to establish their position until they secure a final judgment, which will require them to serve the Taliban and go through required procedures to obtain a default judgment, which they and others will no doubt race to do. However, the issues and complexities raised by their eleventh-hour gambit will fall away once an additional writ of attachment is served based on the requested judgment in favor of the *Federal Insurance* Plaintiffs.

Honorable Sarah Netburn
March 22, 2022
Page 5

_____

permit them to swiftly obtain judgments, even though they are only now initiating their claims. The requested final judgment in favor of the *Federal Insurance* Plaintiffs is thus urgently needed to fend off these collateral attacks.[3]

4.    The Potential That the *Ashton* Plaintiffs May Wish to Press Their Equity Arguments Should Not Delay Entry of the Requested Judgment

Finally, the structure that the moving Plaintiffs have negotiated contemplates and allows for the participation of the Plaintiffs in the *Ashton* case, on the same basis as the *Burnett*, *O'Neill*, *Hoglan*, and *Grazioso* Plaintiffs.  We have urged the *Ashton* Plaintiffs to join in the agreement and this letter application, and believe that it would be in their best interest to do so.  They have not yet determined whether to choose that path, but that provides no reason for the Court to further delay entry of judgment in favor of the *Federal Insurance* Plaintiffs against the Taliban. Any such delay would imperil the asset pool, risk deeply complicating these proceedings and resolution of this issue, and deeply prejudice all of the other 9/11 plaintiffs who have compromised to reach the omnibus agreement as the most just and expeditious means of seeking to perfect their interests as to the blocked Taliban funds.

Further, we understand the *Ashton* Plaintiffs primarily may be considering pursuing their theory that CPLR § 5240 provides equitable authority for the Court to disregard the priority rules in favor of a pro-rata distribution of the funds.[4]  Entry of the *Federal Insurance* final judgment and service of the additional writ of execution would in no way prevent them from making those arguments, and would instead merely ensure that the currently unsecured portion of the funds are not seized by other creditors from outside this MDL or pulled into protracted disputes by them while the Court considers any arguments the *Ashton* Plaintiffs may choose to present.

Respectfully submitted,

COZEN O'CONNOR

SEAN P. CARTER

_____

[3] The continuing, unsecured status of a significant portion of the funds is incentivizing these efforts, and thereby complicating matters and consuming scarce judicial resources.  Entry of the *Federal Insurance* judgment and service of an additional writ of execution would remove this incentive.

[4] The Court's potential need to address this discrete argument does not eliminate the efficiencies that will flow from moving Plaintiffs' proposal, given the alignment of all other stakeholders.  The Court could still turn its focus to the core TRIA issues, and then decide the *Ashton* Plaintiffs' discrete (and, in our view, readily resolved) equity argument, free of the complexities of other competing proposals as to how the Court should proceed and arguments on priority.

Honorable Sarah Netburn
March 22, 2022
Page 6

_____

cc:    The Honorable George B. Daniels (via ECF)
       All MDL Counsel of Record (via ECF