

140 Broadway, 46th Floor  
New York, NY 10005

MICHEL F. BAUMEISTER  
mbaumeister@baumeisterlaw.com

212-363-1200  
866-363-1200  
212-363-1346 Fax  
www.baumeisterlaw.com

March 22, 2022

<u>*VIA ELECTRONIC CASE FILING*</u>

The Honorable Sarah Netburn  
Thurgood Marshall United States Courthouse  
40 Foley Square, Room 430  
New York, New York 10007

  Re: *In Re: Terrorist Attacks on September 11, 2001*  
     03 MDL 1570 (GBD)(SN)

Dear Magistrate Judge Netburn:

  Our firm represents the estates of approximately 50 victims of the 9/11 terror attacks and their immediate family members whose claims were initially filed before this Court in 2002 in the case entitled *Bauer v. al Qaeda Islamic Army, et al.*, Civil Action No. 02-7236, (DE 1). The claims of these estates and individuals were consolidated on November 19, 2002 into an action entitled *Ashton v. al Qaeda Islamic Army, et al.*, Civil Action No. 02-6977 (DE 5). My firm filed a Motion for Final Judgment against the Taliban and Mohammed Omar on December 31, 2021 and we are awaiting an Order from the Court on this request. (DE 7516).

  We write in response to the letter filed this afternoon by Sean Carter writing on behalf of the *Federal Insurance, Burnett, O'Neill,* and *Havlish* plaintiffs[1] advising the Court of an "agreement in principle" amongst counsel representing these plaintiffs to resolve issues related to pending Taliban judgment applications and the distribution of blocked assets of the Da Afghanistan Bank (DAB), and requesting that the Court issue a final judgment in favor of the *Federal Insurance* plaintiffs to facilitate the agreement these parties have reached.

  Early this morning we were made aware that counsel representing the *Federal Insurance*,

---

[1] Mr. Carter's March 22, 2022 letter refers to additional plaintiffs identified as *Hoglan* and *Grazioso*. Since these cases involve the same attorneys as those identified as counsel of record in the *Havlish* cases, we refer to them collectively in this letter as *Havlish* plaintiffs.

*Burnett, O'Neill* and *Havlish* plaintiffs have been engaged in discussions as to the distribution of approximately $3.5 billion dollars held by the Federal Reserve Bank of New York (FRBNY) that remain blocked by President Biden's Executive Order issued February 11, 2022.[2]  At no time was my firm consulted or contacted by any the lawyers from the law firms representing these plaintiffs to discuss the terms of this "agreement" or to seek our input, and we are not aware of its exact terms.   It has come to our attention, however, that the attorneys representing these plaintiffs may seek to divide this money in a way that does not consider the fair and equitable distribution of these limited funds to all the 9/11 victims and their families.   Our firm and its clients have significant concerns about this issue and raise these concerns for the Court's consideration.

As Your Honor is well aware, counsel representing the *Havlish* plaintiffs filed a motion on March 20, 2022 seeking a partial turnover of blocked assets of the DAB from the FRBNY to satisfy approximately $2 billion dollars of compensatory judgments held by those plaintiffs together with interest.   After much discussion and following careful consideration of a number of competing interests, Your Honor established a briefing schedule by Order dated March 14 2022[3] to permit interested parties to submit briefs for consideration on the ability of a party to attach these Afghani assets under TRIA[4] and, of particular importance now, the equitable distribution of these assets should it ultimately be determined that they are reachable and can be used to answer for the actions of the Taliban.   The parties were proceeding in accordance with this schedule and expected to provide the Court with briefs over the next several weeks laying out their positions for consideration.

Mr. Carter's letter suggests that the briefing on these issues may be rendered moot under the agreement reached by the *Federal Insurance, Burnett, O'Neill,* and *Havlish* plaintiffs but states that the *Ashton* plaintiffs may wish to preserve their arguments that New York CPLR §5240 provides equitable authority for the Court to disregard the state's rigid priority rules in this unprecedented situation in favor of a pro-rata distribution of the blocked assets.   Mr. Carter goes on to state that the raising of these arguments should not prevent the Court from executing the *Federal Insurance* plaintiffs' motion for final judgment now.   We believe that the issue of equity lies at the heart of all issues arising out of the Afghani blocked assets, and these principles must apply with even more force to any agreement reached by counsel for the *Federal Insurance, Burnett, O'Neill,* and *Havlish* to distribute a limited pool of money equitably to all members of the 9/11 community.

As pointed out by Mr. Carter, there is a diversity of procedural positions amongst the 9/11 family members which cry out for the equitable treatment of all.   Some, like the family members represented by our firm, have liability default judgments in place and simply are awaiting the Court's approval of their motions for damages awards to move to final judgments.   Others have yet to secure liability defaults against the Taliban, and there are some 9/11 family members who were unaware of the ongoing litigation related to the terror attacks for many years and never filed actions against the Taliban.   Contrasted with these claims are those raised by the small group of *Havlish* plaintiffs who secured their

---

[2] Exec. Order No. 14064, 87 Fed. Reg. 8391 (Feb. 11, 2022).

[3] DE 7750.

[4] Terrorism Risk Insurance Act of 2002 §201, Pub. L. No. 107-297, 116 Stat. 2322.

final judgments many years ago while some of their counsel's "newer" clients who are collectively part of the *Havlish* group recently filed motions relying on the liability default judgments obtained by their prior counsel years ago as the basis to seek damage awards against the Taliban now.[5]

      I have personally been involved in other MDL mass disaster proceedings in which a defendant tendered the entirety of its settlement proceeds with the recognition that the members of the lawyers could not fairly make determinations as to the proper and appropriate distribution of the proceeds to the plaintiff stakeholders.  In each of these circumstances, the Court appointed a Special Master to oversee the distribution process and ensure that all plaintiffs were treated fairly.  Should it be held that the blocked assets are eligible to be attached, the appointment of one or more Special Masters by the Court to oversee the distribution of the blocked assets would lift the administrative burden of managing the processing of claims off of Your Honor and your staff.  Alternatively, to ensure the fair treatment and to protect all members of the 9/11 community, it is respectfully suggested that the Court might consider a procedure whereby the limited pool of blocked assets could be deposited into the U.S. Victims of State Sponsored Terrorism Fund or a similar vehicle that is established to treat the victims and their immediate family members the same without regard for when some filed their motions.

      As stated previously, we believe that fairness and equity lie at the heart of the issues related to the blocked assets held at the FRBNY.  For decades there was no opportunity or avenue through which the *Havlish* or any other plaintiffs could seek to satisfy their outstanding judgments against the Taliban. That changed when the terror group seized control of the Afghan government on August 15, 2021.  The U.S. government responded by seizing the assets of the DAB, and when it became clear to the world that a humanitarian crisis was occurring in Afghanistan, President Biden elected to divert roughly half of the $7 billion dollars in blocked DAB assets to help the Afghani people.  In recognition of the legal claims asserted by thousands of victims of terror attacks, the President's Executive Order directed that approximately half of these blocked assets remain blocked pending continued litigation in the court system.  It was not, and could never be, the position of the Biden Administration, that some 9/11 family members would receive greater compensation for their losses from these blocked assets than others do measured merely by the date they received their final judgments.

      In conclusion, it is respectfully requested that the Court consider the interests of all of the victims of the 9/11 terror attacks and their immediate family members as it considers the request made by the *Federal Insurance, Burnett, O'Neill* and *Havlish* plaintiffs to enter a final judgment in favor of the *Federal Insurance* plaintiffs against the Taliban and to exercise its equitable power to insure that any agreement made by counsel treat all members of the 9/11 community fairly and equitably.

      Respectfully submitted,

      */s/ Michel F. Baumeister*
      Michel F. Baumeister

cc:    Honorable George B. Daniels (via ECF)
       All MDL Counsel of Record (via ECF)

---

[5] DE 7756, 7758.