UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Case No. 03-md-1570 (GBD)(SN) |
| ESTATE OF ALICE HOGLAN, BY ITS PERSONAL REPRESENTATIVE CANDYCE S. HOGLAN, ET AL., <br><br> Plaintiffs-Judgment Creditors, <br><br> v. <br><br> OAKTREE CAPITAL MANAGEMENT, LP; FLEETSCAPE CAPITAL HOLDINGS LIMITED; AND FLEETSCAPE SUEZ RAJAN LLC; <br><br> Garnishees. | Case No. 11-cv-7550 (GBD)(SN) |

**MEMORANDUM OF LAW OF RESPONDENTS OAKTREE CAPITAL MANAGEMENT, LP, FLEETSCAPE CAPITAL HOLDINGS LIMITED, AND FLEETSCAPE SUEZ RAJAN LLC IN OPPOSITION TO HOGLAN CREDITORS' MOTION FOR TURNOVER OF ASSETS**

# TABLE OF CONTENTS

Preliminary Statement ................................................................................................. 1

FACTS ........................................................................................................................ 2

ARGUMENT .............................................................................................................. 7

I.   STANDARDS OF REVIEW ................................................................................ 7

    A.  Turnover Proceedings ................................................................................... 7

    B.  Personal Jurisdiction .................................................................................... 8

    C.  The Foreign Sovereign Immunities Act and Terrorism Risk Insurance Act ...................... 9

II.  RESPONDENTS DO NOT POSSESS OR HAVE CUSTODY OF THE VESSEL OR ITS CARGO AND THE HOGLAN CREDITORS HAVE ALSO NOT SATISFIED THE OTHER REQUIREMENTS OF CPLR § 5225(b) ................................................................ 10

    A.  Applicable Law ........................................................................................... 10

    B.  The Hoglan Creditors Have Not Established that Respondents are In Possession or Custody of the Cargo Aboard the Vessel .................................................................... 12

    C.  The Hoglan Creditors Do Not Sufficiently Allege Personal Jurisdiction Over Respondents .................................................................................................... 13

    D.  The Hoglan Creditors Have Not Established that the Judgment Debtors Have an Interest in the Oil Cargo Aboard the Vessel ................................................................. 14

III. THE PROPERTY AT ISSUE IS NOT ATTACHABLE UNDER THE TRIA ................... 15

    A.  The FSIA and TRIA Do Not Permit Attachment or Execution Over Property Located Outside of the United States .................................................................................. 15

    B.  The Hoglan Creditors Have Not Shown that the Property is a "Blocked Asset" Because They Have Not Shown it is Subject to U.S. Jurisdiction .......................................... 16

CONCLUSION ........................................................................................................... 17

## **TABLE OF AUTHORITIES**

### **Cases**

*Bass v. Bass*,
140 A.D.2d 251 (1st Dep't 1988) ......................................................................... 14

*Berdeaux v. OneCoin Ltd.*,
No. 19-CV-4074, 2021 U.S. Dist. LEXIS 178816 (S.D.N.Y. Sep. 20, 2021).................... 8, 14

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007).............................................................................. 8, 9

*Commonwealth of the N. Mariana Islands v. Canadian Imperial Bank of Commerce*,
717 F.3d 266 (2d Cir. 2013)............................................................................ 11, 12

*Commonwealth of the N. Mariana Islands v. Canadian Imperial Bank of Commerce*,
21 N.Y.3d 55 (2013) .................................................................................... 11, 12

*Commonwealth of the N. Mariana Islands v. Millard*,
287 F.R.D. 204 (S.D.N.Y. 2012) ........................................................................... 11

*CSX Transp., Inc. v. Island Rail Terminal, Inc.*,
879 F.3d 462 (2d Cir. 2018)............................................................................. 7, 10

*Forrester v. Ocean Marine Indemnity Co.*,
11 F.3d 1213 (5th Cir. 1993) ............................................................................... 13

*Gonzalez v. City of New York*,
127 A.D.3d 632 (1st Dep't 2015) ........................................................................... 7

*In re Aegean Marine Petroleum Network, Inc. Sec. Litigation*,
529 F. Supp. 3d 111 (S.D.N.Y. Mar. 29, 2021)............................................................ 8

*In re Lyman Good Dietary Supplements Litigation*,
No. 17-CV-8047, 2020 U.S. Dist. LEXIS 109318 (S.D.N.Y. June 22, 2020) .......................... 8

*Jazini v. Nissan Motor Co., Ltd.*,
148 F.3d 181 (2d Cir. 1998)................................................................................. 9

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.*,
295 F. Supp. 2d 366 (S.D.N.Y. 2003)................................................................... 14-15

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
313 F.3d 70 (2d Cir. 2002).................................................................................. 14

*KLS Diversified Master Fund, L.P. v. McDevitt*,
   No. 19-cv-3774, 2022 U.S. Dist. LEXIS 13345 (S.D.N.Y. January 25, 2022) ...................... 14

*Koehler v. Bank of Bermuda Ltd.*,
   12 N.Y. 3d 533 (2009) ........................................................................................................ 11

*Levin v. Bank of New York*,
   No. 09-CV-5900, 2022 U.S. Dist. LEXIS 30463 (S.D.N.Y. Feb. 22, 2022).............. 10, 11, 15

*Nat'l Union Fire Insurance Co. of Pittsburgh, Pa. v. BP Amoco P.L.C.*,
   319 F. Supp. 2d 352 (S.D.N.Y. 2004)..................................................................................... 9

*Payne v. Garnett McKeen Laboratory*,
   232 A.D.2d 419 (2d Dep't 1996) .......................................................................................... 11

*Port of New York Auth. v. 62 Cortlandt St. Realty Co.*,
   18 N.Y.2d 250 (1966) ............................................................................................................ 7

*Tamam v. Fransabank SAL*,
   677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) ............................................................................ 8

*Thomas v. Ashcroft*,
   470 F.3d 491 (2d Cir. 2006).................................................................................................... 8

*Tire Eng'g & Distrib., LLC v. Bank of China*,
   740 F.3d 108 (2d Cir. 2014).................................................................................................. 11

*Washington v. Detective*,
   No. 20-455, 2022 U.S. App. LEXIS 7638 (2d Cir. Mar. 23, 2022).......................................... 7

## Statutes, Rules and Regulations

22 U.S.C. §§ 287 *et seq.*....................................................................................................... 10

28 U.S.C. § 1605a .................................................................................................................... 9

28 U.S.C. § 1610 ...................................................................................................................... 9

50 U.S.C. §§ 1701 *et seq.*...................................................................................................... 10

50 U.S.C. § 4305(b) ................................................................................................................ 10

CPLR §301 .............................................................................................................................. 9

CPLR §302(a)........................................................................................................................... 9

CPLR § 5225(b)...................................................................................................... *passim*

Fed. R. Civ. P. 69(a)(1)................................................................................................ 10

Respondents Oaktree Capital Management, L.P. ("OCM"), Fleetscape Capital Holdings Limited ("Fleetscape Holdings"), and Fleetscape Suez Rajan, LLC ("FSR" and collectively, "Respondents"), respectfully submit this memorandum of law in opposition to the motion for turnover of assets filed by the plaintiff-judgment creditors in this action (the "Hoglan Creditors").[1]

## Preliminary Statement

Respondents have no quarrel with the Hoglan Creditors, but Respondents are also not in possession, custody, or control of the property of any judgment debtor herein. On that ground, and for the other reasons set forth below, the Hoglan Creditors' motion must be denied.

The Hoglan Creditors' motion is premised on public reports indicating that there is Iranian-origin cargo aboard the *Suez Rajan* (IMO No. 9524475) (the "Vessel"). Based on those public reports, the U.S. government has commenced an investigation into the origin of the cargo aboard the Vessel, and Respondents are cooperating with that investigation, which remains ongoing. But the Hoglan Creditors' motion, seeking a turnover order merely by alleging that "Oaktree" collectively owns or has some level of control over the Vessel or its cargo, and suggesting that all Respondents are subject to the jurisdiction of this Court, is insufficient.

First, and perhaps most critically, the cargo the Hoglan Creditors seek is not in the possession or custody of any Respondent. A turnover motion seeking a judgment debtor's property in the hands of a third party can only be sought against one who is in "possession or custody" of that property. Specifically, the Vessel is subject to a bareboat charter agreement, a copy of which is submitted with these papers, under which full possession and control of the Vessel is in the

---

[1] The Hoglan Creditors' motion, memorandum of law, and accompanying declaration of Douglass A. Mitchell ("Mitchell Decl.") are filed as Dkts. 7721-7723 in *In re Terrorist Attacks on September 11, 2001* (Case No. 03-md-1570) (the "MDL") and Dkts. 370-372 in *Hoglan v. Islamic Republic of Iran* (Case No. 11-cv-7550) ("Hoglan"). References to "Mov. Mem." are to the Hoglan Creditors' memorandum of law filed in support of their motion on March 3, 2022 in these proceedings.

hands of Suez Rajan Limited ("Suez Rajan").  Suez Rajan is a third party that is neither owned, operated, managed, affiliated, nor otherwise controlled by any Respondent.

Accordingly, as demonstrated in detail below, the Hoglan Creditors' motion should be dismissed as against Respondents because: (i) personal jurisdiction is insufficiently alleged, as the Hoglan Creditors' motion engages in group pleading and has not made out a *prima facie* case that any Respondent has sufficient forum-related contacts related to the oil cargo aboard the Vessel; (ii) even if there were personal jurisdiction over any Respondent, none of the Respondents has possession or custody of the oil cargo aboard the Vessel, and accordingly has no ability to turn over or cause such oil cargo to be turned over to the Hoglan Creditors; (iii) the Hoglan Creditors have not submitted evidence establishing that any judgment debtor has an interest in the cargo aboard the Vessel, or that the cargo is a "blocked asset" subject to attachment or execution under the Terrorism Risk Insurance Act ("TRIA"); and (iv) as it is undisputed that the oil cargo is not located within the United States, the property is not subject to attachment under the TRIA.

## FACTS

*The Respondents*

FSR is a Marshall Islands limited liability company.  Graham Decl. ¶ 2.[2]  FSR is a subsidiary of Fleetscape Capital Limited, a Cayman Islands limited company; Fleetscape Capital has not been named in this turnover proceeding ("Fleetscape Capital").  *Id.* ¶ 3.  Fleetscape Capital is a subsidiary of Fleetscape Holdings, a Cayman Islands limited company.  *Id.* ¶ 4.  Neither FSR nor Fleetscape Holdings have any offices or operations in the state of New York; nor do those entities conduct any business within the state of New York.  *Id.* ¶¶ 5-6.

---

[2]   The "Graham Decl." refers to the Declaration of Martin Graham filed March 28, 2022 in support of Respondents' opposition to the Hoglan Creditors' motion.

OCM is a Delaware limited partnership with its principal place of business in California. *Id.* ¶ 7.   OCM is an investment adviser which may at times provide investment services to investment vehicles, of which FSR and Fleetscape Holdings are indirect foreign subsidiaries. *Id.* ¶ 8.  None of the Respondents have any ownership interest whatsoever in the cargo or anything else aboard the Vessel, be it oil or otherwise.  *Id.* ¶ 9.

*History of the Vessel*

Prior to the sale-leaseback financing described below, the Vessel was owned by Suez Rajan.  Graham Decl. ¶ 10.  Suez Rajan is neither owned, operated, managed, affiliated nor otherwise controlled by any Respondent.  *Id.* ¶ 11. The Vessel is an oil tanker that was built in 2011 and has been under the operation and management of Empire Navigation Inc. ("Empire") (an entity headquartered in Greece) since that time.  *See id.* ¶ 12 and *e.g.*, Exs. 1-4.

*The Sale-Leaseback Financing Involving the Vessel*

FSR was established as of October 8, 2020 and holds title to the Vessel as registered owner as part of a sale-leaseback financing and bareboat charter agreement to Suez Rajan.  Graham Decl. ¶ 13 and Ex. 5.  In the sale-leaseback financing involving the Vessel, FSR purchased the Vessel but, as a condition of that purchase, FSR agreed immediately after the sale to bareboat charter the Vessel back to Suez Rajan, enabling Empire's uninterrupted operation and management of the Vessel.  *Id.* ¶ 14 and Exs. 6-7.  Accordingly, Suez Rajan is in full possession, custody, and control of the Vessel, under the terms of the bareboat charter agreement entered into between FSR and Suez Rajan on March 3, 2021 (the "Bareboat Agreement").  Graham Decl. ¶ 15 and Ex. 8.

In exchange for immediately reclaiming possession and control of the Vessel from FSR, Suez Rajan obtained capital and, under the Bareboat Agreement, agreed to remit periodic charter hire payments to FSR ("Hire").  *See id.* ¶ 16 and Ex. 8 at Clause 43.2.  In addition, as a condition

of entering into the Bareboat Agreement, Empire provided a Manager's Undertaking, in which Empire confirmed to FSR, among other things, that it had been appointed by Suez Rajan as the commercial and technical manager of the Vessel, and that Empire would not, without FSR's prior written consent, sub-contract or delegate the commercial and technical management of the Vessel to any third party.  *See id.* ¶ 17 and Ex. 9 (Manager's Undertaking and Management Agreement).

Under the Management Agreement, Empire is required to carry out management services as agents for and on behalf of Suez Rajan, including technical management, commercial management, and insurance arrangements, among other things.  *See id.* Ex. 9 at App. A (Management Agreement) at Clause 3 (Authority of the Managers).  With respect to Empire's commercial management responsibilities, this includes "seeking and negotiating employment for the Vessel and the conclusion (including the execution thereof) of charter parties or other contracts relating to the employment of the Vessel."  *See id.* Ex. 9 at App. A (Management Agreement) at Box 8 and Clause 6(a) (Commercial Management).  In short, Empire does all that is required to operate the Vessel on a day-to-day basis and also arranges for its employment.

*The Bareboat Agreement and its Terms*

The Bareboat Agreement for the Vessel in this case was agreed on a BIMCO Standard Bareboat Charterparty form (BARECON 2017), with modifications in the Additional Clauses as agreed by the parties, for a period of five years commencing from the date of the Vessel's delivery to Suez Rajan on March 4, 2021 (the "Charter Period").[3]  Graham Decl. ¶ 20 and Ex. 8.  Subject

---

[3]     BARECON 2017 is the most recently published bareboat charter agreement form published by The Baltic and International Maritime Council ("BIMCO"). As described by BIMCO, "[i]t is a lease agreement whereby the charterer obtains possession and full control of the ship along with the legal and financial responsibility for it. The charterer generally pays for all operating expenses, including fuel, crew, maintenance, repairs, and P&I and hull insurance."  BARECON 2017 Overview (*available at:* https://www.bimco.org/contracts-and-clauses/bimco-contracts/barecon-2017).

to the terms and conditions of the Bareboat Agreement, "during the Charter Period the Vessel shall be *in the full possession and at the absolute disposal for all purposes of [Suez Rajan] and under their complete control in every respect.*" *See* Graham Decl. ¶ 21 and Ex. 8 at Clause 2 (emphasis added); *see also* Clause 13(d) (Suez Rajan shall "at their own expense crew, victual, navigate, operate, supply, fuel, maintain and repair the Vessel during the Charter Period and they shall be responsible for all costs and expenses whatsoever relating to their use and operation of the Vessel. . .").

FSR, in the Bareboat Agreement, notably required extensive U.S. sanctions-related representations, warranties, and covenants from Suez Rajan that restrict Suez Rajan (and any sub-charterers) from engaging in any activities or otherwise using the Vessel in a manner that violates U.S. sanctions laws, even if those laws do not expressly apply to Suez Rajan. *See* Graham Decl. ¶ 22 and  Ex. 8 at Clauses 51.25 (sanctions representations); 55.2.2 (providing that "the Charterers shall comply. . .in all respects with all Sanctions."); 55.22 (sanctions undertakings); 57.17 (use of Vessel against Sanctions); 57.20.1 (compliance with laws).

As is clear from the foregoing, none of the Respondents has possession, custody, or control of the cargo aboard the Vessel, and accordingly cannot turn over or cause such cargo to be turned over to the Hoglan Creditors.  Graham Decl. ¶ 23.

*The Turnover Motion*

The instant motion relies on third-party public reports alleging that the Vessel received Iranian-origin oil as part of a ship-to-ship transfer on February 13, 2022 with a vessel called the VIRGO.  In a February 15, 2022 letter from United Against Nuclear Iran ("UANI") sent to OCM, UANI stated that "[p]rior to the STS, we suspect VIRGO loaded Iranian oil on January 22 at Kharg Island, Iran."  Mitchell Decl. Ex. 1.  News reports subsequently reported on UANI's suspicions.

*See id.* Ex. 6 (Reuters, Feb. 18, 2022); Ex. 17 (Associated Press, Feb. 17, 2022).  As noted in those same public reports, a spokesperson for Fleetscape stated that "Fleetscape is a provider of lease financing to Empire Navigation, and has no role in the operation of Empire's fleet."  *See id.* Ex. 6. In the wake of the public reports, the U.S. government also commenced an investigation into the origin of the oil aboard the Vessel.  As noted above, Respondents are cooperating with that investigation and understand that the government's investigation remains ongoing.

With respect to Respondents' connection to the Vessel or its cargo, the Hoglan Creditors refer collectively to "Oaktree" without specifying to which entity they are referring.  *See, e.g.*, Mov. Mem. at 1 (alleging without support that "Oaktree" collectively owns and "ultimately controls" the Vessel); *id.* at 4 (alleging without support that Respondents collectively "are the ultimate owners and financial backers of the Suez Rajan").  Respondents likewise suggest that the Court has personal jurisdiction over "Oaktree" collectively without distinguishing between Respondents or their business functions.  With respect to FSR, for example, the Hoglan Creditors only attach a document suggesting a Uniform Commercial Code filing was made in California. *See* Mitchell Decl. Ex. 24.  Further, the reference to a New York mobile phone number of one of Fleetscape's personnel, who lives in London, or the other third-party database references offered by the Hoglan Creditors does not sufficiently allege either FSR or Fleetscape Holdings is in New York or that those New York contacts have anything to do with the oil cargo aboard the Vessel. *See* Backer Decl. ¶¶ 1-3.

With respect to the property sought to be obtained, the Hoglan Creditors have not submitted evidence showing that any Respondent has possession or custody of that cargo, or any control over the Vessel or its movements.  The Hoglan Creditors also have not submitted any evidence to show

that any of the judgment debtors have an attachable interest in the oil cargo aboard the Vessel, or who currently has title to the oil cargo aboard the Vessel.

It is undisputed that the Vessel is presently located in international waters near Singapore, and that the cargo that is the subject of the turnover motion is not located in the United States.

## ARGUMENT

### I.      STANDARDS OF REVIEW

#### A.      Turnover Proceedings

The Second Circuit has held that "a party seeking a money judgment against a non-party garnishee may proceed by motion and need not commence a special proceeding, as long as the court has personal jurisdiction over the garnishee." *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 469 (2d Cir. 2018).  If personal jurisdiction were sufficiently alleged, a motion for turnover of assets brought under New York Civil Practice Law and Rules ("CPLR") § 5225(b) is treated like a motion for summary judgment.  *Id.* at 473; *see also Port of New York Auth. v. 62 Cortlandt St. Realty Co.*, 18 N.Y.2d 250, 255 (1966) (standards of summary judgment apply to special proceedings); *Gonzalez v. City of New York*, 127 A.D.3d 632, 632 (1st Dep't 2015) ("It is settled that a special proceeding is subject to the same standards and rules of decision as apply on a motion for summary judgment, requiring the court to decide the matter 'upon the pleadings, papers and admissions to the extent that no triable issues of fact are raised.'") (citations omitted); *see also id.* at 633 ("where . . . a petition is unsupported by sufficient evidentiary proof, the petitioning party will not be entitled to remedy those deficiencies, thereby extending a procedure providing for summary disposition through 'unnecessary and unauthorized elaboration' . . . no consideration is to be accorded to novel arguments raised in reply papers."); *cf. Washington v. Detective*, No. 20-455, 2022 U.S. App. LEXIS 7638, at *7-8 (2d Cir. Mar. 23, 2022) ("In the context of a summary judgment motion, the evidence must be viewed in the light most favorable

to . . . the non-moving party, including all reasonable inferences being drawn in his favor."); *In re Lyman Good Dietary Supplements Litig.*, No. 17-CV-8047, 2020 U.S. Dist. LEXIS 109318, at \*6 (S.D.N.Y. June 22, 2020) (noting that "[b]ecause hearsay evidence that fails to satisfy a hearsay exception is inadmissible at trial, the Court will not consider it in ruling on a motion for summary judgment" and finding that Plaintiff's claims failed where it lacked admissible evidence on which to rule).[4]

### B. Personal Jurisdiction

The Hoglan Creditors bear the burden of establishing that personal jurisdiction exists over each Respondent. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007); *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). To meet this burden, the Hoglan Creditors "must plead facts which, if true, are sufficient in themselves to establish jurisdiction." *Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010).

In order to establish personal jurisdiction, a plaintiff "must make allegations establishing jurisdiction with some 'factual specificity' and cannot establish jurisdiction through conclusory assertions alone." *Berdeaux v. OneCoin Ltd.*, No. 19-CV-4074, 2021 U.S. Dist. LEXIS 178816, at \*13 (S.D.N.Y. Sep. 20, 2021) (quoting *Cont'l Indus. Grp. v. Equate Petrochemical Co.*, 586 F. App'x 768, 769 (2d Cir. 2014)). In addition, "[a] plaintiff must carry his burden with respect to each defendant individually." *Id.*; *see also, e.g.*, *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021) ("To allege personal jurisdiction over a

---

[4] Subject matter jurisdiction to attach or execute over the assets in question under FSIA and the TRIA is also lacking as set out below because the Hoglan Creditors have not established that the oil cargo at issue is a "blocked asset" and it is undisputed that the oil cargo is not located within the United States. *See infra* Point III.B.

defendant, group pleading is not permitted. Instead, the plaintiff is required to establish personal jurisdiction separately over each defendant.").

For a claim arising under New York law over a non-resident defendant, a federal district court must look to jurisdiction under New York's long-arm statutes, CPLR § 301 and 302(a). Where jurisdiction under the long-arm statute is found, the court must then analyze whether personal jurisdiction comports with the basic requirements of due process. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. BP Amoco P.L.C.*, 319 F. Supp. 2d 352, 357 (S.D.N.Y. 2004).

General jurisdiction under New York's long-arm statute is governed by CPLR § 301. Under that statute, the court will have personal jurisdiction over a defendant where that defendant is "engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of its 'presence' in [the state].'" *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998). Specific jurisdiction for a non-domiciliary alleged to have transacted business in the state is governed under CPLR § 302(a)(1). Under CPLR § 302(a)(1), two requirements must be met to establish personal jurisdiction over the non-domiciliary: "(1) whether the defendant 'transacts any business' in [the state]"; and "(2) whether [the claim asserted] 'arises from' such a business transaction." *See* CPLR 302(a)(1); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007).

### C.     The Foreign Sovereign Immunities Act and Terrorism Risk Insurance Act

The Hoglan Creditors argue that the oil cargo is "attachable under the Terrorism Risk Insurance Act of 2002" (28 U.S.C. § 1610 note) ("TRIA"). Section 201(a) of the TRIA, codified as a note to 28 U.S.C. § 1610 within the Foreign Sovereign Immunities Act ("FSIA"), provides in relevant part that "in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under 28 U.S.C. § 1605a or 1605(a)(7). . .the "blocked assets" of a terrorist party (including the blocked

assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable." The FSIA's exceptions to sovereign immunity extend at most to property located within the United States. *Levin v. Bank of N.Y.*, No. 09-CV-5900, 2022 U.S. Dist. LEXIS 30463, at *89 (S.D.N.Y. Feb. 22, 2022) (finding that "a foreign state's property located abroad is immune under the FSIA and TRIA") (collecting cases).

Under Section 201(d)(2) of the TRIA, a "blocked asset" means "(A) any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act (50 U.S.C. App. § 5(b) now 50 U.S.C. § 4305(b)) or under sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. §§ 1701; 1702), and (B) does not include property that- (i) is subject to a license issued by the United States Government for final payment, transfer, or disposition by or to a person subject to the jurisdiction of the United States in connection with a transaction for which the issuance of such license has been specifically required by statute other than the International Emergency Economic Powers Act (50 U.S.C. 1701 *et seq.*) or the United Nations Participation Act of 1945 (22 U.S.C. § 287 *et seq.*)."

## II.  RESPONDENTS DO NOT POSSESS OR HAVE CUSTODY OF THE VESSEL OR ITS CARGO AND THE HOGLAN CREDITORS HAVE ALSO NOT SATISFIED THE OTHER REQUIREMENTS OF CPLR § 5225(b)

### A.  Applicable Law

Under Rule 69(a)(1) of the Federal Rules of Civil Procedure, a motion to enforce a money judgment "must accord with the procedure of the state where the court is located." *CSX Transp., Inc. v. Island Rail Terminal, Inc*., 879 F.3d 462, 468 (2d Cir. 2018). Under New York law, CPLR § 5225(b) governs a motion for turnover of property of a judgment debtor that is in

the possession of a third party.  *Tire Eng'g & Distrib., LLC v. Bank of China*, 740 F.3d 108, 110

(2d Cir. 2014).  CPLR § 5225(b) provides in relevant part:

> (b) **Property Not in the Possession of Judgment Debtor.** Upon a
> special proceeding commenced by the judgment creditor, *against a
> person in possession or custody of money or other personal property
> in which the judgment debtor has an interest*, or against a person
> who is a transferee of money or other personal property from the
> judgment debtor, *where it is shown that the judgment debtor is
> entitled to the possession of such property or that the judgment
> creditor's rights to the property are superior to those of the
> transferee*, the court shall require such person to pay the money, or
> so much of it as is sufficient to satisfy the judgment, to the judgment
> creditor and, if the amount to be so paid is insufficient to satisfy the
> judgment, to deliver any other personal property, or so much of it as
> is of sufficient value to satisfy the judgment, to a designated sheriff
> . . .

(emphasis added).  In general, unless preempted by federal law a turnover order concerning out-

of-state property is valid only if the court has personal jurisdiction over the garnishee.  *Koehler v.

Bank of Bermuda Ltd.*, 12 N.Y. 3d 533, 540-41 (2009); *but see Levin*, 2022 U.S. Dist. LEXIS

30463, at *92 (holding that even where there is personal jurisdiction over a garnishee, the FSIA

does not permit the turnover of the property of a foreign sovereign pursuant to § 5225(b) where

the property in question is located outside of the United States).

 Importantly, the person against whom turnover is sought must be in "possession or

custody" of the property at issue.  *See Commonwealth of the N. Mariana Islands v. Millard,* 287

F.R.D. 204, 208 (S.D.N.Y. 2012), *aff'd* 717 F.3d 266 (2d Cir. 2013); *Payne v. Garnett McKeen

Lab.,* 232 A.D.2d 419, 420 (2d Dep't 1996) (holding that in an action brought pursuant to CPLR

§ 5225(b) the judgment creditor has the burden of proof of establishing that the garnishee is in

possession or custody of the property).  Under CPLR § 5225(b) "possession or custody" means

*actual* possession or custody. *See Commonwealth of the N. Mariana Is. v. Canadian Imperial

Bank of Commerce*, 21 N.Y.3d 55, 61 (2013).  In *Commonwealth of North Mariana Islands v.*

*Canadian Imperial Bank of Commerce*, the New York Court of Appeals determined the scope of the phrase "possession or custody" within Section 5225(b) of the New York Civil Practice Law and Rules in response to a question certified from the Second Circuit.  21 N.Y.3d at 60.  The New York Court of Appeals noted that the statute excludes any reference to control and that its absence was "meaningful and intentional." *Id.*  That court "interpret[ed] the omission of 'control' . . . as an indication that 'possession or custody' requires actual possession." *Id.* at 61. Constructive possession or custody of the property is insufficient. *Id.* at 64. The New York Court of Appeals also noted that the statute does not require that "a garnishee be compelled to direct another entity, which is not subject to this state's personal jurisdiction, to deliver assets held in a foreign jurisdiction." *Id.*; *see also Commonwealth of the N. Mariana Islands v. Canadian Imperial Bank of Commerce*, 717 F.3d 266 (2d Cir. 2013) (same).

### B. The Hoglan Creditors Have Not Established that Respondents are In Possession or Custody of the Cargo Aboard the Vessel

The Hoglan Creditors have not shown that Respondents possess or have custody over the cargo aboard the Vessel. *See* Mov. Mem. at 3-5.  The Hoglan Creditors' attempts to demonstrate that Respondents "ultimately control" the Vessel or have a role in its financing – even if true – do not suffice to permit the turnover of property aboard the Vessel that Respondents do not possess. *See*, *e.g.*, *Commonwealth of the N. Mariana Is.*, 21 N.Y.3d at 64 (holding that mere control is insufficient under CPLR § 5225(b)).

Here, because the Vessel was contracted to Suez Rajan under the Bareboat Agreement (*see* Graham Decl. Ex. 8), Respondents not only lack possession or custody of the Vessel or its cargo, but also lack control over the Vessel or its movements.  This is unsurprising given the nature of the Bareboat Agreement, because charter agreements "vary in categories depending on the interest and rights conveyed by the owner to the charterer."  3 Equipment Leasing P 34.07

(2021). "A bareboat or demise charter conveys a right of possession for a term and is the functional equivalent of a dry land lease . . . . [under which] the owner of the vessel must completely and exclusively relinquish possession, command, and navigation . . . [i]t is therefore tantamount to, though just short of, an outright transfer of ownership." *Id.* (internal citation and quotations omitted); *see also Forrester v. Ocean Marine Indem. Co.*, 11 F.3d 1213, 1215 (5th Cir. 1993) ("In a demise charter, the vessel owner transfers full possession and control to the charterer, who in turn furnishes the crew and maintenance for the vessel (thus the term 'bareboat'). Consequently, the bareboat charterer as a demise charterer is the owner *pro hac vice* of the vessel for the duration of the contract.").

The Hoglan Creditors neither allege nor provide evidence that any of the Respondents are in actual possession or custody of the Vessel or its cargo. *See e.g.*, Mov. Mem. at 4-5 (referring to Respondents collectively as the "ultimate owners" of the Vessel with "ultimate control" over it). And, as stated in the Bareboat Agreement, the Vessel is in the possession, custody, and control of Suez Rajan. Ex. 8 at Clause 2 ("during the Charter Period the Vessel shall be *in the full possession and at the absolute disposal for all purposes of [Suez Rajan] and under their complete control in every respect.*") (emphasis added). Suez Rajan is neither owned, operated, managed, affiliated or otherwise controlled by any Respondent. Graham Decl. ¶ 11.

Respondents' lack of possession or custody over the Vessel or its cargo is fatal to the Hoglan Creditors' motion as against Respondents.

### C.     The Hoglan Creditors Do Not Sufficiently Allege Personal Jurisdiction Over Respondents

The Hoglan Creditors also do not sufficiently establish personal jurisdiction over any Respondent, because their Motion engages in improper group pleading. *See, e.g.,* Mov. Mem. at 10 (alleging that the court has personal jurisdiction over "Oaktree" collectively without

distinguishing between entities or explaining their connection to the oil cargo aboard the Vessel). The Hoglan Creditors' conclusory statement that Respondents "have transacted their maritime business in the state of New York" is without support and does not sufficiently connect Respondents, individually or collectively, to the oil cargo aboard the Vessel – particularly in light of Respondents' demonstrated lack of possession, custody, or control of that cargo.  *See supra* Point II.B.  Nor have the Hoglan Creditors sufficiently shown with respect to each Respondent that the entities conduct business within New York or have purposefully availed themselves of the laws of New York.  *See Berdeaux*, 2021 U.S. Dist. LEXIS 178816, at *16 (finding that "the Court is unable to exercise personal jurisdiction over a particular defendant based on allegations that fail to distinguish among [each of them], leaving the Court no basis to discern who did what.").  And as explained in Respondents' papers, neither FSR nor Fleetscape Holdings have any offices or operations in the state of New York, and those entities do not conduct any business within the state of New York.  Graham Decl. ¶¶ 5-6; Backer Decl. ¶ 3.

### D.      The Hoglan Creditors Have Not Established that the Judgment Debtors Have an Interest in the Oil Cargo Aboard the Vessel

Under New York law, a judgment creditor "stand[s] in the shoes of the judgment debtor in relation to any debt owed him or a property interest he may own, petitioner cannot, however, reach assets in which the judgment debtor has no interest." *Bass v. Bass*, 140 A.D.2d 251, 253 (1st Dep't 1988); *see also Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 83 (2d Cir. 2002) (same); *KLS Diversified Master Fund, L.P. v. McDevitt*, No. 19-cv-3774, 2022 U.S. Dist. LEXIS 13345, at *17 (S.D.N.Y. Jan. 25, 2022) (same). For the property to be subject to turnover, the judgment debtor's interest in the property must be a direct interest which is "leviable and not an indirect interest in the proceeds of the property." *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.*, 295 F. Supp.

2d 366, 391-92 (S.D.N.Y. 2003) (quoting *Sumitomo Shoji New York, Inc. v. Chemical Bank New York Trust Co.*, 47 Misc. 2d 741, 744 (N.Y. Sup. Ct. 1965)).

Here, the Hoglan Creditors allege that the oil "appears to be owned by NIOC" but have not sufficiently alleged or evidenced that any judgment debtor has an interest in the oil in question (*see* Mov. Mem. at 11) and therefore have not carried their burden to satisfy the interest requirement of CPLR § 5225(b).

## III.   THE PROPERTY AT ISSUE IS NOT ATTACHABLE UNDER THE TRIA

### A.   The FSIA and TRIA Do Not Permit Attachment or Execution Over Property Located Outside of the United States

The Hoglan Creditors' motion cannot be maintained over oil cargo located outside of the United States because the statutes under which they are proceeding (the FSIA and TRIA) do not permit execution over assets located outside of the United States.  *See Levin*, 2022 U.S. Dist. LEXIS 30463, at *92.  In *Levin*, the Court dismissed the judgment creditors' claim for turnover of assets held in a bank account located at JPMorgan Chase Bank's London branch. *Id.* at *85, 88-89.  Judge Oetken held that the presumption against extraterritorial application barred execution of the foreign bank account under the FSIA and TRIA, and to the extent that CPLR § 5225(b) allowed execution of any foreign sovereign's property located abroad, it was preempted by federal law.  *Id.* at *92. Specifically, Judge Oetken found that the TRIA's "silence on whether blocked assets have to be in the United States, with nothing more, falls short of the 'clear indication' needed to apply it to an extraterritorial asset." *Id.* at *89; *see id.* (finding that "courts in [the Second Circuit] and elsewhere have uniformly held or confirmed that a foreign state's property located abroad is immune under the FSIA and TRIA.") (collecting cases).

Here, the Hoglan Creditors seek turnover of property which is located outside the United States.  It is undisputed that the Vessel is currently in international waters near Singapore.  Mov.

Mem. at 2 (the Vessel is "idling in waters in Southeast Asia").  Accordingly, even if

Respondents had possession, custody or control of the Vessel or its cargo (which they do not),

the extraterritorial property at issue in this case is not subject to attachment and execution under

the TRIA.

> **B.     The Hoglan Creditors Have Not Shown that the Property is a "Blocked Asset" Because They Have Not Shown it is Subject to U.S. Jurisdiction**

The Hoglan Creditors suggest, but do not provide evidence, that the oil belongs to the

National Iranian Oil Company ("NIOC").  *See* Mov. Mem. at 3 (alleging that the oil "appears to

be owned by NIOC").  But, even if the oil were owned by NIOC, the Hoglan Creditors have not

properly alleged that the cargo is a "blocked asset" within the meaning of the TRIA.  The Hoglan

Creditors allege that the oil is blocked because all "property and interests in property of [NIOC]

*subject to U.S. jurisdiction* are blocked."  *See* Mitchell Decl. Ex. 3 (emphasis added).  Because

Respondents do not have possession, custody, or control of the Vessel or its cargo, the Hoglan

Creditors have not shown the cargo aboard the vessel is a "blocked asset" subject to U.S.

jurisdiction that has been seized or frozen within the meaning of the TRIA.

## CONCLUSION

The Hoglan Creditors' motion should be denied and Respondents should be dismissed from this proceeding.

March 28, 2022
New York, New York

SEWARD & KISSEL LLP

By:  s/ Bruce G. Paulsen_____
     Bruce G. Paulsen (paulsen@sewkis.com)
     Brian P. Maloney (maloney@sewkis.com)
     One Battery Park Plaza
     New York, New York 10004
     (212) 574-1200

*Attorneys for Respondents Oaktree Capital*
*Management, L.P., Fleetscape Capital Holdings*
*Limited, and Fleetscape Suez Rajan LLC*