Exhibit 7

**MEMORANDUM OF AGREEMENT**

# SALEFORM 2012

**Norwegian Shipbrokers' Association's**
**Memorandum of Agreement for sale and purchase of ships**

1    Dated:    18 February  2021

2    **Suez Rajan Shipping Limited** (Name of sellers), hereinafter called the "Sellers", have agreed to sell, and

3    **Fleetscape Suez Rajan, LLC** (Name of buyers), hereinafter called the "Buyers", have agreed to buy:

4    Name of vessel: **SUEZ RAJAN**

5    IMO Number: **9524475**

6    Classification Society: **American Bureau of Shipping**

7    Class Notation: **A1, Oil Carrier, ESP, E, AMS, ACCU, CPS, CSR AB-CM**

8    Year of Build: **2011** Builder/Yard: **Hyundai Heavy Industries Co., Ltd.**

9    Flag: **Marshall Islands**    Place of Registration: **Majuro**    GT/NT: **81,282 / 52,295**

10    hereinafter called the "Vessel", on the following terms and conditions:

11    **Definitions (see also Additional Clause 24 (Further definitions))**

12    "Banking Days" are days on which banks are open both in the country of the currency stipulated for
13    the Purchase Price in Clause 1 (Purchase Price) and in the place of closing stipulated in Clause 8
14    (~~Documentation~~**Conditions Precedent**) and **Germany and United Kingdom** (add additional jurisdictions as
       appropriate).

15    "Buyers' Nominated Flag State" means **Marshall Islands** (state flag state).

16    "Class" means the class notation referred to above.

17    "Classification Society" means the Society referred to above.

18    ~~"Deposit" shall have the meaning given in Clause 2 (Deposit)~~

19    ~~"Deposit Holder" means          (state name and location of Deposit Holder) or, if left blank, the~~
20    ~~Sellers' Bank, which shall hold and release the Deposit in accordance with this Agreement.~~

21    "In writing" or "written" means a letter handed over from the Sellers to the Buyers or vice versa, a
22    registered letter, e-mail or telefax.

23    "Parties" means the Sellers and the Buyers.

24    "Purchase Price" means the price for the Vessel as stated in Clause 1 (Purchase Price).

25    ~~"Sellers' Account" means          (state details of bank account) at the Sellers' Bank.~~

26    ~~"Sellers' Bank" means          (state name of bank, branch and details) or, if left blank, the bank~~
27    ~~notified by the Sellers to the Buyers for receipt of the balance of the Purchase Price.~~

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

28  **1.**    **Purchase Price**

29        The Purchase Price is **USD25,359,000/twenty five million three hundred and fifty nine thousand United States Dollars** (state currency and amount both in words and figures).

30  **2.**    ~~Deposit~~

31        ~~As security for the correct fulfilment of this Agreement the Buyers shall lodge a deposit of~~
32        ~~% (        per cent) or, if left blank, 10% (ten per cent), of the Purchase Price (the~~
33        ~~"Deposit") in an interest bearing account for the Parties with the Deposit Holder within three (3)~~
34        ~~Banking Days after the date that:~~

35        ~~(i) this Agreement has been signed by the Parties and exchanged in original or by~~
36        ~~e-mail or telefax; and~~

37        ~~(ii) the Deposit Holder has confirmed in writing to the Parties that the account has been~~
38        ~~opened.~~

39        ~~The Deposit shall be released in accordance with joint written instructions of the Parties.~~
40        ~~Interest, if any, shall be credited to the Buyers. Any fee charged for holding and releasing the~~
41        ~~Deposit shall be borne equally by the Parties. The Parties shall provide to the Deposit Holder~~
42        ~~all necessary documentation to open and maintain the account without delay.~~

43  **3.**    ~~Payment~~

44        ~~On delivery of the Vessel, but not later than three (3) Banking Days after the date that Notice of~~
45        ~~Readiness has been given in accordance with Clause 5 (Time and place of delivery and~~
46        ~~notices):~~

47        ~~(i) the Deposit shall be released to the Sellers; and~~

48        ~~(ii) the balance of the Purchase Price and all other sums payable on delivery by the Buyers~~
49        ~~to the Sellers under this Agreement shall be paid in full free of bank charges to the~~
50        ~~Sellers' Account.~~ **(Please see Additional Clause 22 (Payment))**

51  **4.**    ~~Inspection~~

52        ~~(a)* The Buyers have inspected and accepted the Vessel's classification records. The Buyers~~
53        ~~have also inspected the Vessel at/in        (state place) on        (state date) and have~~
54        ~~accepted the Vessel following this inspection and the sale is outright and definite, subject only~~
55        ~~to the terms and conditions of this Agreement.~~

56        ~~(b)* The Buyers shall have the right to inspect the Vessel's classification records and declare~~
57        ~~whether same are accepted or not within        (state date/period).~~

58        ~~The Sellers shall make the Vessel available for inspection at/in        (state place/range) within~~
59        ~~(state date/period).~~

60        ~~The Buyers shall undertake the inspection without undue delay to the Vessel. Should the~~
61        ~~Buyers cause undue delay they shall compensate the Sellers for the losses thereby incurred.~~

62        ~~The Buyers shall inspect the Vessel without opening up and without cost to the Sellers.~~

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

63  During the inspection, the Vessel's deck and engine log books shall be made available for
64  examination by the Buyers.

65  The sale shall become outright and definite, subject only to the terms and conditions of this
66  Agreement, provided that the Sellers receive written notice of acceptance of the Vessel from
67  the Buyers within seventy-two (72) hours after completion of such inspection or after the
68  date/last day of the period stated in Line 59, whichever is earlier.

69  Should the Buyers fail to undertake the inspection as scheduled and/or notice of acceptance of
70  the Vessel's classification records and/or of the Vessel not be received by the Sellers as
71  aforesaid, the Deposit together with interest earned, if any, shall be released immediately to the
72  Buyers, whereafter this Agreement shall be null and void.

73  *4(a) and  4(b)  are alternatives;  delete whichever is not applicable. In the absence of deletions,
74  alternative 4(a) shall apply.

75  **5.    Time and place of delivery and notices**

76  (a) **Subject to Clause 8(xiii),** Tthe Vessel shall be delivered and taken over safely afloat at a safe and
    accessible berth or
77  anchorage at/in **a location where no VAT, tax or other customs duty will apply to the sale of the Vessel,
    such location to be nominated by the Sellers no later than five (5) Banking Days before the date of
    delivery and to be acceptable to the Buyers (acting reasonably)** (state place/range) in the Sellers' option.

78  Notice of Readiness shall not be tendered before: **subject always to compliance with clause 5(b), the date
    falling three (3) Banking Days after the date of this Agreement or such earlier date as the Buyers may
    agree in their sole discretion**(date)

79  Cancelling Date (see Clauses 5(c), 6 (a)(i), 6 (a) (iii) and 14): **the date falling 90 days after the date of this
    Agreement or such later date as the Buyers may agree.**

80  **(b) The Sellers shall keep the Buyers well informed of the Vessel's itinerary and estimated delivery date
    under this Agreement and the Sale Agreement and shall provide the Buyers with twenty (20), ten (10),
    five (5) and three (3) Banking Days' notice of the intended date provided that (i) if the actual date of
    delivery of the Vessel falls after the date specified in any notice which provides ten Banking Days' or less
    notice then the Sellers shall pay the Buyers delayed delivery compensation in an amount equal to the
    finance costs incurred by the Buyers or its Affiliates during the period of this delay and (ii) the Buyers may
    agree in their sole discretion to waive the requirement for any notice of delivery to be provided by the
    Sellers under this clause.  This Clause 5(b) is subject to the agreement of payment mechanics.**(b) The
    Sellers shall keep the Buyers well informed of the Vessel's itinerary and shall
81  provide the Buyers with twenty (20), ten (10), five (5) and three (3) days' notice of the date the
82  Sellers intend to tender Notice of Readiness and of the intended place of delivery.
83  When the Vessel is at the place of delivery and physically ready for delivery in accordance with
84  this Agreement, the Sellers shall give the Buyers a written Notice of Readiness for delivery.

85  (c) If the Sellers anticipate that, notwithstanding the exercise of due diligence by them, the
86  Vessel will not be ready for delivery by the Cancelling Date they may notify the Buyers in writing
87  stating the date when they anticipate that the Vessel will be ready for delivery and proposing a
88  new Cancelling Date. Upon receipt of such notification the Buyers shall have the option of
89  either cancelling this Agreement in accordance with Clause 14 (Sellers' Default) within three (3)
90  Banking Days of receipt of the notice or of accepting the new date as the new Cancelling Date.
91  If the Buyers have not declared their option within three (3) Banking Days of receipt of the
92  Sellers' notification or if the Buyers accept the new date, the date proposed in the Sellers'

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

93    notification shall be deemed to be the new Cancelling Date and shall be substituted for the
94    Cancelling Date stipulated in line 79.

95    If this Agreement is maintained with the new Cancelling Date all other terms and conditions
96    hereof including those contained in Clauses 5(b) and 5(d) shall remain unaltered and in full
97    force and effect.

98    (d) Cancellation, failure to cancel or acceptance of the new Cancelling Date shall be entirely
99    without prejudice to any claim for damages the Buyers may have under Clause 14 (Sellers'
100   Default) for the Vessel not being ready by the original Cancelling Date.

101   (e) Should the Vessel become an actual, constructive or compromised total loss before delivery
102   the Deposit together with interest earned, if any, shall be released immediately to the Buyers
103   whereafter this Agreement shall be null and void.

104   **6.    Divers Inspection / Drydocking**

105   (a)*
106   (i) The Buyers shall have the option at their cost and expense to arrange for an underwater
107   inspection by a diver approved by the Classification Society prior to the delivery of the
108   Vessel. Such option shall be declared latest nine (9) days prior to the Vessel's intended
109   date of readiness for delivery as notified by the Sellers pursuant to Clause 5(b) of this
110   Agreement. The Sellers shall at their cost and expense make the Vessel available for
111   such inspection. This inspection shall be carried out without undue delay and in the
112   presence of a Classification Society surveyor arranged for by the Sellers and paid for by
113   the Buyers. The Buyers' representative(s) shall have the right to be present at the diver's
114   inspection as observer(s) only without interfering with the work or decisions of the
115   Classification Society surveyor. The extent of the inspection and the conditions under
116   which it is performed shall be to the satisfaction of the Classification Society. If the
117   conditions at the place of delivery are unsuitable for such inspection, the Sellers shall at
118   their cost and expense make the Vessel available at a suitable alternative place near to
119   the delivery port, in which event the Cancelling Date shall be extended by the additional
120   time required for such positioning and the subsequent re-positioning. The Sellers may
121   not tender Notice of Readiness prior to completion of the underwater inspection.

122   (ii) If the rudder, propeller, bottom or other underwater parts below the deepest load line are
123   found broken, damaged or defective so as to affect the Vessel's class, then (1) unless
124   repairs can be carried out afloat to the satisfaction of the Classification Society, the
125   Sellers shall arrange for the Vessel to be drydocked at their expense for inspection by
126   the Classification  Society of  the Vessel's underwater parts below the deepest load line,
127   the extent of the inspection being in accordance with the Classification Society's rules (2)
128   such defects shall be made good by the Sellers at their cost and expense to the
129   satisfaction of the Classification Society without condition/recommendation** and (3) the
130   Sellers shall pay for the underwater inspection and the Classification Society's
131   attendance.

132   Notwithstanding anything to the contrary in this Agreement, if the Classification Society
133   do not require the aforementioned defects to be rectified before the next class
134   drydocking survey, the Sellers shall be entitled to deliver the Vessel with these defects
135   against a deduction from the Purchase Price of the estimated direct cost (of labour and
136   materials) of carrying out the repairs to the satisfaction of the Classification Society,
137   whereafter the Buyers shall have no further rights whatsoever in respect of the defects
138   and/or repairs. The estimated direct cost of the repairs shall be the average of quotes

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

139   for the repair work obtained from two reputable independent shipyards at or in the
140   vicinity of the port of delivery, one to be obtained by each of the Parties within two (2)
141   Banking Days from the date of the imposition of the condition/recommendation, unless
142   the Parties agree otherwise. Should either of the Parties fail to obtain such a quote within
143   the stipulated time then the quote duly obtained by the other Party shall be the sole basis
144   for the estimate of the direct repair costs. The Sellers may not tender Notice of
145   Readiness prior to such estimate having been established.

146   (iii) If the Vessel is to be drydocked pursuant to Clause 6(a)(ii) and no suitable dry-docking
147   facilities are available at the port of delivery, the Sellers shall take the Vessel to a port
148   where suitable drydocking facilities are available, whether within or outside the delivery
149   range as per Clause 5(a). Once drydocking has taken place the Sellers shall deliver the
150   Vessel at a port within the delivery range as per Clause 5(a) which shall, for the purpose
151   of this Clause, become the new port of delivery. In such event the Cancelling Date shall
152   be extended by the additional time required for the drydocking and extra steaming, but
153   limited to a maximum of fourteen (14) days.

154   (b)* The Sellers shall place the Vessel in drydock at the port of delivery for inspection by the
155   Classification Society of the Vessel's underwater parts below the deepest load line, the extent
156   of the inspection being in accordance with the Classification Society's rules. If the rudder,
157   propeller, bottom or other underwater parts below the deepest load line are found broken,
158   damaged or defective so as to affect the Vessel's class, such defects shall be made good at the
159   Sellers' cost and expense to the satisfaction of the Classification Society without
160   condition/recommendation**. In such event the Sellers are also to pay for the costs and
161   expenses in connection with putting the Vessel in and taking her out of drydock, including the
162   drydock dues and the Classification Society's fees. The Sellers shall also pay for these costs
163   and expenses if parts of the tailshaft system are condemned or found defective or broken so as
164   to affect the Vessel's class. In all other cases, the Buyers shall pay the aforesaid costs and
165   expenses, dues and fees.

166   (c) If the Vessel is drydocked pursuant to Clause 6 (a)(ii) or 6 (b) above:

167   (i) The Classification Society may require survey of the tailshaft system, the extent of the
168   survey being to the satisfaction of  the Classification surveyor. If such survey is
169   not required by the Classification Society, the Buyers shall have the option to require the
170   tailshaft to be drawn and surveyed by the Classification Society, the extent of the survey
171   being in accordance with the Classification Society's rules for tailshaft survey and
172   consistent with the  current  stage of the Vessel's survey cycle. The Buyers shall declare
173   whether they require the tailshaft to be drawn and surveyed not later than by the
174   completion of the inspection by the Classification Society. The drawing and refitting of
175   the tailshaft shall be arranged by the Sellers. Should any parts of the tailshaft system be
176   condemned or found defective so as to affect the Vessel's class, those parts shall be
177   renewed or made good at the Sellers' cost and expense to the satisfaction of
178   Classification Society without condition/recommendation**.

179   (ii) The costs and expenses relating to the survey of the tailshaft system shall be borne by
180   the Buyers unless the Classification Society requires such survey to be carried out or if
181   parts of the system are condemned or found defective or broken so as to affect the
182   Vessel's class, in which case the Sellers shall pay these costs and expenses.

183   (iii) The Buyers' representative(s) shall have the right to be present in the drydock, as
184   observer(s) only without interfering with the work or decisions of the Classification
185   Society surveyor.

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

186  (iv) The Buyers shall have the right to have the underwater parts of the Vessel cleaned
187  and painted at their risk, cost and expense without interfering with the Sellers' or the
188  Classification Society surveyor's work, if any, and without affecting the Vessel's timely
189  delivery. If, however, the Buyers' work in drydock is still in progress when the
190  Sellers have completed the work which the Sellers are required to do, the additional
191  docking time needed to complete the Buyers' work shall be for the Buyers' risk, cost and
192  expense. In the event that the Buyers' work requires such additional time, the Sellers
193  may upon completion of the Sellers' work tender Notice of Readiness for delivery whilst
194  the Vessel is still in drydock and, notwithstanding Clause 5(a), the Buyers shall be
195  obliged to take delivery in accordance with Clause 3 (Payment), whether the Vessel is in
196  drydock or not.

197  *6 (a) and 6 (b) are alternatives; delete whichever is not applicable. In the absence of deletions,
198  alternative 6 (a) shall apply.

199  **Notes or memoranda, if any, in the surveyor's report which are accepted by the Classification
200  Society without condition/recommendation are not to be taken into account.

201  **7.    Spares, bunkers and other items**

202  The Sellers shall deliver the Vessel to the Buyers with everything belonging to her on board
203  and on shore. All spare parts and spare equipment including spare tail-end shaft(s) and/or
204  spare propeller(s)/propeller blade(s), if any, belonging to the Vessel at the time of inspection**delivery**
205  used or unused, whether on board or not shall become the Buyers' property~~, but spares on~~
206  ~~order are excluded. Forwarding charges, if any, shall be for the Buyers' account~~. The Sellers
207  are not required to replace spare parts including spare tail-end shaft(s) and spare
208  propeller(s)/propeller blade(s) which are taken out of spare and used as replacement prior to
209  delivery, but the replaced items shall be the property of the Buyers. Unused stores and
210  provisions shall be included in the sale and be taken over by the Buyers without extra payment.

211  Library and forms exclusively for use in the Sellers' vessel(s) and captain's, officers' and crew's
212  personal belongings including the slop chest are excluded from the sale without compensation,
213  as well as the following additional items:        (include list)

214  Items on board which are on hire or owned by third parties, listed as follows, are excluded from
215  the sale without compensation:        (include list)

216  Items on board at the time of inspection which are on hire or owned by third parties, not listed
217  above, shall be replaced or procured by the Sellers prior to delivery at their cost and expense.
218  **Any remaining bunkers and unused lubricating and hydraulic oils and greases in storage tanks and
     unopened drums are the property of the Original Seller and shall not form part of the sale.**
The Buyers shall take over remaining bunkers and unused lubricating and hydraulic oils and
219  greases in storage tanks and unopened drums and pay either:

220  (a) *the actual net price (excluding barging expenses) as evidenced by invoices or vouchers; or

221  (b) *the current net market price (excluding barging expenses) at the port and date of delivery
222  of the Vessel or, if unavailable, at the nearest bunkering port,

223  for the quantities taken over.

224  Payment under this Clause shall be made at the same time and place and in the same
225  currency as the Purchase Price.

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

226     "inspection" in this Clause 7, shall mean the Buyers' inspection according to Clause 4(a) or 4(b)
227     (Inspection), if applicable. If the Vessel is taken over without inspection, the date of this
228     Agreement shall be the relevant date.

229     *(a) and (b) are alternatives, delete whichever is not applicable. In the absence of deletions
230     alternative (a) shall apply.

231  **8.**   ~~Documentation~~**Conditions Precedent**

232     The place of closing: **London**

233     (a) ~~In exchange for p~~**P**ayment of the Purchase Price **is conditional upon** the Sellers ~~shall~~ provid**ing**~~e~~ the Buyers with the
        following delivery documents:
234     following delivery documents:

235     (i) Legal Bill(s) of Sale in a form recordable in the Buyers' Nominated Flag State,
236     transferring title of the Vessel and **from (i) the Original Seller to the Sellers and (ii) the Sellers to the Buyers,** stating that the Vessel is free from all mortgages,
237     encumbrances and maritime liens or any other debts whatsoever, duly notarially attested
238     and legalised or apostilled, as required by the Buyers' Nominated Flag State;

239     (ii) Evidence that all necessary corporate, shareholder and other action has been taken by
240     the Sellers to authorise the execution, delivery and performance of this Agreement;

241     (iii) **A copy of the** Power of Attorney of the Sellers appointing one or more representatives to act on behalf
242     of the Sellers in the performance of this Agreement,~~ duly notarially attested and legalised~~
243     ~~or apostilled (as appropriate)~~;

244     (iv) **A copy of a c**~~C~~ertificate or Transcript of Registry issued by the competent authorities of the flag state
245     on the date of delivery evidencing the **Original** Sellers' ownership of the Vessel and that the
246     Vessel is free from registered encumbrances and mortgages, to be faxed or e-mailed by
247     such authority to the closing meeting with the original to be sent to the Buyers as soon as
248     possible after delivery of the Vessel;

249     (v) **A copy of** Declaration of Class or (depending on the Classification Society) a Class Maintenance
250     Certificate issued within three (3) Banking Days prior to delivery confirming that the
251     Vessel is in Class free of condition/recommendation;

252     ~~(vi) Certificate of Deletion of the Vessel from the Vessel's registry or other official evidence of~~
253     ~~deletion appropriate to the Vessel's registry at the time of delivery, or, in the event that~~
254     ~~the registry does not as a matter of practice issue such documentation immediately, a~~
255     ~~written undertaking by the Sellers to effect deletion from the Vessel's registry forthwith~~
256     ~~and provide a certificate or other official evidence of deletion to the Buyers promptly and~~
257     ~~latest within four (4) weeks after the Purchase Price has been paid and the Vessel has~~
258     ~~been delivered;~~

259     (vii) A copy of the Vessel's Continuous Synopsis Record certifying the date on which the
260     Vessel ceased to be registered ~~with the Vessel's registry~~**in the name of the Sellers**, or, in the event that the registry
261     does not as a matter of practice issue such certificate immediately, a written undertaking
262     from the Sellers to provide the copy of this certificate promptly upon it being issued
263     ~~together with evidence of submission by the Sellers of a duly executed Form 2 stating~~
264     ~~the date on which the Vessel shall cease to be registered with the Vessel's registry~~;

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

265        (viii) **A copy of the Commercial Invoice for the Vessel with the original to be sent to the Buyers as soon as possible after delivery of the Vessel;** ~~Commercial Invoice for the Vessel;~~

266        ~~(ix) Commercial Invoice(s) for bunkers, lubricating and hydraulic oils and greases;~~

267        ~~(x) A copy of the Sellers' letter to their satellite communication provider cancelling the~~
268        ~~Vessel's communications contract which is to be sent immediately after delivery of the~~
269        ~~Vessel;~~

270        (**viii**~~xi~~) Any additional documents as may reasonably be required by the competent authorities of
271        the Buyers' Nominated Flag State for the purpose of registering the Vessel, provided the
272        Buyers notify the Sellers of any such documents as soon as possible after the date of
273        this Agreement; ~~and~~

274        (**ix**~~ii~~) **A copy of the Sellers' letter of confirmation that to the best of their knowledge, the Vessel is not black listed by any nation or international organisation with the original to be sent to the Buyers as soon as possible after delivery of the Vessel;** ~~The Sellers' letter of confirmation that to the best of their knowledge, the Vessel is not~~
275        ~~black listed by any nation or international organisation.~~(x) An original certificate from a director / officer of the Sellers confirming that all copies of documents provided under this Agreement are true copies of such documents;

(xi) To the extent an original is received by the Sellers under the Sale Agreement, copies certified as true by a duly authorised signatory of the Sellers of, otherwise copies of, any and all documents to be provided by the Original Seller to the Sellers under the Sale Agreement including, without limitation, the Commercial Invoice for the Vessel issued by the Original Seller to the Sellers under the Sale Agreement and other evidence as the Buyers may require of the payment of all sums payable by the Sellers to the Original Seller under the Sale Agreement but excluding the Bills of Sale referred to in Clause 8(a)(i) which, for the avoidance of doubt, shall be provided in original;

(xii) To the extent an original is received by the Sellers under the Sale Agreement, a copy certified as true by a duly authorised signatory of the Sellers of, otherwise a copy of, the protocol of delivery and acceptance made between the Original Seller (as sellers) and the Sellers (as buyers) under the Sale Agreement confirming the date and time of delivery of the Vessel from the Original Seller to the Sellers; and

(xiii) The Buyers being satisfied that, in their sole opinion, the conditions precedent set out in Part II of Schedule 1 (Conditions precedent to delivery) and Part I of Schedule 1 (Conditions precedent to Charter) of the Bareboat Charter have been satisfied on the Delivery Date;

The conditions set out in this Clause 8(a) are for the sole benefit of the Buyers and may be waived or deferred by the Buyers in whole or in part and with or without conditions. The foregoing is without prejudice to the Buyers' rights to require fulfilment of any such conditions by the Sellers in whole or in part at any time after the date of payment or release of the Purchase Price.

276        (b) At the time of delivery the Buyers shall provide the Sellers with:

277        (i) Evidence that all necessary corporate, shareholder and other action has been taken by
278        the Buyers to authorise the execution, delivery and performance of this Agreement; and

279        (ii) **A copy of the** Power of Attorney of the Buyers appointing one or more representatives to act on behalf
280        of the Buyers in the performance of this Agreement ~~, duly notarially attested and legalised~~
281        ~~or apostilled (as appropriate)~~**; and**

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

**(iii) Written confirmation from the Buyers addressed to the Sellers that the conditions precedent set out in the Bareboat Charter have been satisfied on the Delivery Date provided that, in the Buyers' opinion, Clause 8(a)(xii) above has been satisfied at the time of delivery.**

282    (c) If any of the documents listed in Sub-clauses (a) and (b) above are not in the English
283    language they shall be accompanied by an English translation by an authorised translator or
284    certified by a lawyer qualified to practice in the country of the translated language.

285    (d) The Parties shall to the extent possible exchange copies, drafts or samples of the
286    documents listed in Sub-clause (a) and Sub-clause (b) above for review and comment by the
287    other party not later than **3 Banking Days** (state number of days), or if left blank, nine (9) days prior to the
288    Vessel's intended date of readiness for delivery as notified by the Sellers pursuant to
289    Clause 5(b) of this Agreement.

290    (e) Concurrent with the exchange of documents in Sub-clause (a) and Sub-clause (b) above,
291    ~~the Sellers shall also hand to~~ the Buyers **shall gain title and ownership to** the classification certificate(s) **and other certificates** as well as all plans,
292    drawings  and manuals~~, (excluding ISM/ISPS manuals),~~ which are on board the Vessel **and shall remain on board the Vessel**. ~~Other~~
293    ~~certificates which are on board the Vessel shall also be handed over to the Buyers unless~~
294    ~~the Sellers are required to retain same, in which case the Buyers have the right to take copies.~~

295    (f) **The Buyers shall gain title and ownership to** ~~O~~ **o**ther technical documentation which may be in the
    Sellers' possession **and such documentation shall remain on board the Vessel.** ~~shall promptly after~~
296    ~~delivery be forwarded to the Buyers at their expense, if they so request.~~ The Sellers may keep
297    the Vessel's log books but the Buyers have the right to take copies of same.

298    (g) The Parties shall sign and deliver to each other a Protocol of Delivery and Acceptance
299    confirming the date and time of delivery of the Vessel from the Sellers to the Buyers.

300  **9.**   **Encumbrances**

301    The Sellers warrant that the Vessel, at the time of delivery, is free from all charters **(other than the Bareboat Charter and the Time Charter**,
302    encumbrances, mortgages and maritime liens or any other debts whatsoever, and is not subject
303    to Port State or other administrative detentions. The Sellers hereby undertake to indemnify the
304    Buyers against all consequences of claims made against the Vessel which have been incurred
305    prior to the time of delivery **including without limitation, any demands, assertions or claims relating to any maritime liens arising prior to the time of delivery.**

306  **10.**  **Taxes, fees and expenses**

307    Any taxes, fees and expenses in connection with the purchase and registration in the Buyers'
308    Nominated Flag State ~~shall be for the Buyers' account, whereas~~ **and** similar charges in connection
309    with the closing of the Sellers' register shall **each** be for the Sellers' account.

310  **11.**  **Condition on delivery**

311    The Vessel with everything belonging to her shall be at the Sellers' risk and expense until she is
312    delivered to the Buyers, but subject to the terms and conditions of this Agreement she shall be
313    delivered and taken over **"**as ~~she was~~**is where is"** at the time of ~~inspection, fair wear and tear excepted~~**delivery**.

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

314 However, the Vessel shall be delivered ~~free of cargo and~~ free of stowaways with her Class
315 maintained without condition/recommendation*, free of average damage affecting the Vessel's
316 class, and with her classification certificates and national certificates, as well as all other
317 certificates the Vessel had at the time of ~~inspection~~**delivery**, valid and unextended without
318 condition/recommendation* by the Classification Society or the relevant authorities at the time
319 of delivery.

320 ~~"inspection" in this Clause 11, shall mean the Buyers' inspection according to Clause 4(a) or~~
321 ~~4(b) (Inspections), if applicable. If the Vessel is taken over without inspection, the date of this~~
322 ~~Agreement shall be the relevant date.~~

See also Additional Clause 21 (Delivery under Sale Agreement and Bareboat Charter)

323 *Notes and memoranda, if any, in the surveyor's report which are accepted by the Classification
324 Society without condition/recommendation are not to be taken into account.

325 **12.** ~~Name/markings~~

326 ~~Upon delivery the Buyers undertake to change the name of the Vessel and alter funnel~~
327 ~~markings.~~

328 **13. Buyers' default**

329 ~~Should the Deposit not be lodged in accordance with Clause 2 (Deposit), the Sellers have the~~
330 ~~right to cancel this Agreement, and they shall be entitled to claim compensation for their losses~~
331 ~~and for all expenses incurred together with interest.~~
332 Should the Purchase Price not be paid in accordance with ~~Clause 3~~ **Additional Clause 22** (Payment), the
Sellers
333 have the right to cancel this Agreement**.**~~, in which case the Deposit together with interest~~
334 ~~earned, if any, shall be released to the Sellers.  If the Deposit does not cover their loss, the~~
335 ~~Sellers shall be entitled to claim further compensation for their losses and for all expenses~~
336 ~~incurred together with interest.~~

337 **14. Sellers' default**

338 Should the Sellers fail to give Notice of Readiness in accordance with Clause 5(b) or fail to be
339 ready to validly complete a legal transfer by the Cancelling Date the Buyers shall have the
340 option of cancelling this Agreement. If after Notice of Readiness has been given but before
341 the Buyers have taken delivery, the Vessel ceases to be physically ready for delivery and is not
342 made physically ready again by the Cancelling Date and new Notice of Readiness given, the
343 Buyers shall retain their option to cancel. ~~In the event that the Buyers elect to cancel this~~
344 ~~Agreement, the Deposit together with interest earned, if any, shall be released to them~~
345 ~~immediately.~~

346 Should the Sellers fail to give Notice of Readiness by the Cancelling Date or fail to be ready to
347 validly complete a legal transfer as aforesaid they shall make due compensation to the Buyers
348 for their loss and for all expenses together with interest if their failure is due to proven
349 negligence and whether or not the Buyers cancel this Agreement **including without limitation, any and all**
**losses, liabilities, costs and expenses incurred or suffered by the Buyers or the Issuer as a result of the**
**termination of this Agreement prior to the Delivery Date (including any Break Costs and other costs,**
**losses, liabilities and expenses incurred or suffered by the Buyers or the Issuer under (i) the Senior**
**Finance Documents or (ii) in connection with ensuring the availability of the Underlying Loan (including**

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

**without limitation the costs, losses, liabilities and expenses incurred or suffered by the Issuer pursuant to the Securitisation Loans) as a result of the termination of this Agreement).**

350 **15.** ~~Buyers' representatives~~

351   ~~After this Agreement has been signed by the Parties and the Deposit has been lodged, the~~
352   ~~Buyers have the right to place two (2) representatives on board the Vessel at their sole risk and~~
353   ~~expense.~~

354   ~~These representatives are on board for the purpose of familiarisation and in the capacity of~~
355   ~~observers only, and they shall not interfere in any respect with the operation of the Vessel. The~~
356   ~~Buyers and the Buyers' representatives shall sign the Sellers' P&I Club's standard letter of~~
357   ~~indemnity prior to their embarkation.~~

358 **16.   Law and Arbitration**

359   (a) *This Agreement **and any non-contractual obligations arising out of or in connection with it** shall be governed by and construed in accordance with English law and
360   any dispute arising out of or in connection with this Agreement shall be referred to arbitration in
361   London in accordance with the Arbitration Act 1996 or any statutory modification or re-
362   enactment thereof save to the extent necessary to give effect to the provisions of this Clause.

363   The arbitration shall be conducted in accordance with the London Maritime Arbitrators
364   Association (LMAA) Terms current at the time when the arbitration proceedings are
365   commenced.

366   The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall
367   appoint its arbitrator and send notice of such appointment in writing to the other party requiring
368   the other party to appoint its own arbitrator within fourteen (14) calendar days of that notice and
369   stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own
370   arbitrator and gives notice that it has done so within the fourteen (14) days specified. If the
371   other party does not appoint its own arbitrator and give notice that it has done so within the
372   fourteen (14) days specified, the party referring a dispute to arbitration may, without the
373   requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator
374   and shall advise the other party accordingly. The award of a sole arbitrator shall be binding on
375   both Parties as if the sole arbitrator had been appointed by agreement.

376   In cases where neither the claim nor any counterclaim exceeds the sum of US$100,000 the
377   arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at
378   the time when the arbitration proceedings are commenced.

379   ~~(b) *This Agreement shall be governed by and construed in accordance with Title 9 of the~~
380   ~~United States Code and the substantive law (not including the choice of law rules) of the State~~
381   ~~of New York and any dispute arising out of or in connection with this Agreement shall be~~
382   ~~referred to three (3) persons at New York, one to be appointed by each of the parties hereto~~,
383   ~~and the third by the two so chosen; their decision or that of any two of them shall be final, and~~
384   ~~for the purposes of enforcing any award, judgment may be entered on an award by any court of~~
385   ~~competent jurisdiction. The proceedings shall be conducted in accordance with the rules of the~~
386   ~~Society of Maritime Arbitrators, Inc.~~

387   ~~In cases where neither the claim nor any counterclaim exceeds the sum of US$ 100,000 the~~
388   ~~arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the~~
389   ~~Society of Maritime Arbitrators, Inc.~~

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

| | |
|---|---|
| 390 | (c) This Agreement shall be governed by and construed in accordance with the laws of |
| 391 | (state place) and any dispute arising out of or in connection with this Agreement shall be |
| 392 | referred to arbitration at          (state place), subject to the procedures applicable there. |
| | |
| 393 | *16(a), 16(b) and 16(c) are alternatives; delete whichever is not applicable. In the absence of |
| 394 | deletions, alternative 16(a) shall apply. |

**395  17.  Notices**

396       All notices to be provided under this Agreement shall be in writing.

397       Contact details for recipients of notices are as follows:

398       For the Buyers: **c/o Oaktree Capital Management, L.P.**
          **333 South Grand Avenue**
          **Los Angeles**
          **CA 90071**
          **United States of America**

          **with a copy to:**

          **Oaktree Capital Management (Europe) LLP of Verde**
          **10 Bressenden Place**
          **London**
          **England**
          **SW1E 5DH**

          **Email: info@fleetscape.com / accounting@fleetscape.com / jbaker@fleetscape.com**

399       For the Sellers:
          **88 Vouliagmenis Avenue**
          **16777 Elliniko**
          **Greece**
          **Email: vkoutsolakos@empirenavigation.com**
          **Attention: Mr Vasileios Koutsolakos**

**400  18.  Entire Agreement**

| | |
|---|---|
| 401 | The written terms of this Agreement comprise the entire agreement between the Buyers and |
| 402 | the Sellers in relation to the sale and purchase of the Vessel and supersede all previous |
| 403 | agreements whether oral or written between the Parties in relation thereto. |
| | |
| 404 | Each of the Parties acknowledges that in entering into this Agreement it has not relied on and |
| 405 | shall have no right or remedy in respect of any statement, representation, assurance or |
| 406 | warranty (whether or not made negligently) other than as is expressly set out in this Agreement. |
| | |
| 407 | Any terms implied into this Agreement by any applicable statute or law are hereby excluded to |
| 408 | the extent that such exclusion can legally be made. Nothing in this Clause shall limit or exclude |
| 409 | any liability for fraud. |

      19.  Additional Clauses

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

The Additional Clauses 20 to 24 attached hereto are incorporated into this Agreement and form part of this Agreement.

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

For and on behalf of the Sellers             For and on behalf of the Buyers

Suez Rajan Shipping Limited                  Fleetscape Suez Rajan, LLC

Name:                                         Name:

Title      :    **Effie P. Paraskevopoulou**   Title:
                **Attorney-in-Fact**

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this BIMCO SmartCon document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

For and on behalf of the Sellers

Suez Rajan Shipping Limited

Name:            _____

Title      :

For and on behalf of the Buyers

Fleetscape Suez Rajan, LLC

Name:

Title:

AUTHORIZED    SIGNATORY

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

**ADDITIONAL CLAUSES**
**TO MEMORANDUM OF AGREEMENT FOR**
**m.v. "SUEZ RAJAN"**

**20      Sellers' representations**

20.1    The Sellers represent and warrant as at the date hereof and on the Delivery Date that no Termination Event or Potential Termination Event is continuing and that there is no default under the Sale Agreement.

20.2    The Sellers make the representations and warranties set out in clause 51.25 (*Sanctions Representations*) of the Bareboat Charter to the Buyers on the date hereof and on the Delivery Date.

**21      Delivery under Sale Agreement and Bareboat Charter**

21.1    The Vessel is at the date of this Agreement legally and beneficially owned by the Original Seller.  The Vessel will, subject to the terms and conditions of this Agreement, be delivered by the Sellers to the Buyers under this Agreement simultaneously upon the delivery of the Vessel by the Original Seller to the Sellers under the Sale Agreement.

21.2    Any additional cost over and above the Purchase Price payable by the Sellers to the Original Seller under the Sale Agreement shall be paid directly by the Sellers to the Original Seller and the Buyers shall have no liability therefor.

21.3    Immediately after the delivery of the Vessel under this Agreement, the Vessel shall be delivered to the Original Seller as charterers pursuant to a bareboat charter party dated on or about the date of this Agreement (the "**Bareboat Charter**") made between the Buyers (as owners) and the Original Seller (as charterers).

21.4    The Sellers shall be fully responsible for the Buyers' fulfilment of physical delivery as new owner of the Vessel to the Original Seller (as charterers) under the Bareboat Charter. The Buyers' obligation to take delivery of the Vessel under this Agreement is subject to the Original Seller (as charterers) taking delivery of the Vessel immediately thereafter under the Bareboat Charter and:

(a)      the Sellers taking delivery of the Vessel under the Sale Agreement as set out in Clause 21.1;

(b)      the Original Seller (as charterers) taking delivery of the Vessel under the Bareboat Charter immediately after delivery of the Vessel to the Buyers under this Agreement; and

(c)      the Sellers' physical acceptance of the Vessel under the Sale Agreement shall be deemed to satisfy the requirement of the Buyers (as owners) to physically deliver the Vessel to the Original Seller (as charterers) under the Bareboat Charter.

Without prejudice to the foregoing, the Sellers' obligation to deliver the Vessel under this Agreement is subject to the Buyers delivering the same under the Bareboat Charter immediately after taking delivery of the Vessel under this Agreement.

21.5     If:

    21.5.1     the Sale Agreement or the Bareboat Charter is cancelled, terminated or otherwise ceases to be in full force and effect or the obligation to charter the Vessel to the Original Seller pursuant to the Bareboat Charter is otherwise terminated prior to the delivery of the Vessel under this Agreement; or

    21.5.2     the delivery of the Vessel does not take place under the Sale Agreement or the Bareboat Charter by the Cancelling Date,

this Agreement shall be null and void, provided however that (i) Clause 13 (*Buyers' default*) shall survive and entitle the Sellers to compensation for its direct and documented losses and expenses due to any default of the Buyers and (ii) Clause 14 (*Sellers' default*) shall survive and entitle the Buyers to compensation for its losses and expenses due to any default of the Sellers.

## 22     Payment

22.1     The Sellers and the Buyers agree that the Purchase Price shall be deemed paid by the Buyers upon the payment on the Delivery Date of the Sale Agreement Purchase Price free of bank charges, any deduction, Taxes or withholding whatsoever by, or on behalf of, the Buyer to or to the order of the Original Seller's Bank on the last Banking Day prior to the Delivery Date provided that prior to such transfer the Buyers have received:

    22.1.1     the conditions precedent required under Clause 8 (*Conditions Precedent*) of this Agreement (other than the conditions precedent required under paragraphs (a)(i), (iv), (v), (vi), (vii), (viii), (ix), (x), (xi), (xii) and (xiii), together the "Delivery Date CPs") have been received by the Buyers, provided that the Buyers are satisfied that the Delivery Date CPs will be received by the Buyers on or before the Delivery Date; and

    22.1.2     evidence from the Original Seller's Bank that, immediately upon receipt by the Original Seller's Bank of the Sale Agreement Purchase Price, the Original Seller's Bank shall procure that any Existing Security shall be unconditionally and irrevocably discharged,

or, if such manner is not agreed by the Original Seller's Bank, in such other manner as may be agreed between the Buyers, the Sellers and the Original Seller's Bank provided that if the Sale Agreement Purchase Price exceeds the Cash Purchase Price the Sellers shall pay to or to the order of the Original Seller's Bank an amount equal to such shortfall.

22.2     The Sellers agree to release, discharge, defend, indemnify, waive and hold harmless the Buyers from and against any direct and documented liability, obligation or claim which may be asserted, claimed or recovered against the Buyers for any reason directly arising out of or in any manner connected with the release or return or the failure to release or return the Sale Agreement Purchase Price by the Original Seller's Bank except if the same solely results from or is a direct consequence of the Buyers' failure to perform their obligations under or in breach of any provisions under this Agreement or the Bareboat Charter.

**23      Miscellaneous**

23.1    Other than the Issuer, a person who is not a party to this Agreement has no right under the Contract (Rights of Third Parties) Act 1999 to enforce or to enjoy the benefit of any term of this Agreement.

23.2    Notwithstanding that this Agreement, due to a word processing issue, retains the watermark "Working copy" on one or more of its pages this Agreement is intended to, and does hereby, take effect on and from its execution on this day of 18 February 2021 on the terms set out in this Agreement and accordingly the Parties agree that this Agreement constitutes the final, concluded and agreed terms, and a formal binding agreement, between the Parties and neither Party shall seek to allege that the content of this Agreement is other than final, binding and unconditional.  Without prejudice to the foregoing, if either Party so wishes for the purposes of retaining copies on its records, the Parties shall cooperate with each other to sign further conformed copies of this Agreement.

**24      Further definitions**

24.1    In this Agreement:

"**Affiliate**" has the meaning given to it in the Bareboat Charter.

"**Bareboat Charter**" has the meaning given to the term in Clause 21.3.

"**Break Costs**" has the meaning given to it in the Bareboat Charter.

"**Cash Purchase Price**" means an amount equal to:

(a)      the Purchase Price, less

(b)      the fees payable on the Delivery Date pursuant to the Fee Letter.

"**Delivery Date**" means the date of delivery of the Vessel by the Sellers to the Buyers pursuant to this Agreement.

"**Earnings**" has the meaning given to it in the Bareboat Charter.

"**Existing Security**" means any Security which exists over the Vessel and her Earnings, Insurances and Requisition Compensation.

"**Fee Letter**" has the meaning given to it in the Bareboat Charter.

"**Insurances**" has the meaning given to it in the Bareboat Charter.

"**Issuer**" means Fleetscape Finance I, Inc. of Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro MH96960, Marshall Islands.

"**Obligors**" has the meaning given to it in the Bareboat Charter.

"**Original Seller**" means Suez Rajan Limited, a company incorporated according to the laws of the Marshall Islands whose registered office is at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro MH96960, Marshall Islands.

"**Original Seller's Bank**" means DVB Bank SE.

"**Potential Termination Event**" has the meaning given to it in the Bareboat Charter.

"**Requisition Compensation**" has the meaning given to it in the Bareboat Charter.

"**Sale Agreement**" means the memorandum of agreement in respect of the Vessel dated        16 February 2021    and made between the Sellers (as buyers) and the Original Seller (as sellers) in relation to the sale and purchase of the Vessel, as amended, supplemented and/or varied from time to time.

"**Sale Agreement Purchase Price**" means twenty five million United States Dollars (US$25,000,000).

"**Securitisation Loan**" means any loans made available to the Issuer as borrower under a Securitisation Loan Agreement.

"**Securitisation Loan Agreement**" means any loan agreement entered into between, among others, the Issuer as borrower pursuant to which a loan will be made available to the Issuer to finance an Underlying Loan (as such agreement may be amended, restated, supplemented or varied from time to time).

"**Security**" has the meaning given to it in the Bareboat Charter.

"**Tax**" or "**tax**" means any present and future tax (including, without limitation, value added tax, consumption tax or any other tax in respect of added value or any income), levy, impost, duty or other charge or withholding of any nature (including any penalty or interest payable in connection with any failure to pay or any delay in paying any of the same); and "**Taxes**", "**taxes**", "**Taxation**" and "**taxation**" shall be construed accordingly.

"**Termination Event**" has the meaning given to it in the Bareboat Charter.

"**Time Charter**" has the meaning given to it in the Bareboat Charter.

"**Time Charterers**" has the meaning given to it in the Bareboat Charter.

"**Underlying Loan**" means any loan made available by the Issuer to, amongst others, the Buyers under the Underlying Loan Agreement.

"**Underlying Loan Agreement**" means an agreement dated on or around the date of this Agreement entered into between, among others, the Buyers and another as borrowers and the Issuer as lenders pursuant to which a loan will be made available to, among others, the Buyers to finance, amongst other things, the Vessel (as such agreement may be amended, restated, supplemented or varied from time to time).

24.2   Unless otherwise specified in this Agreement, or unless the context otherwise requires, all words and expressions defined or explained in the Bareboat Charter shall have the same meanings when used in this Agreement.

**In witness** of which the parties to this Agreement have executed this Agreement the day and year first before written.

**The sellers**                                    **The buyers**

**Suez Rajan Shipping Limited**                    **Fleetscape Suez Rajan, LLC**

by:                                                by:

Name:                                              Name:

Effie P. Paraskevopoulou
Attorney-in-Fact

Title:                                             Title:

Date:                                              Date:

**In witness** of which the parties to this Agreement have executed this Agreement the day and year first before written.

| The sellers | The buyers |
|---|---|
| **Suez Rajan Shipping Limited** | **Fleetscape Suez Rajan, LLC** |

by:                                          by:

_____          _____

Name:                                        Name:   M  GRAHAM

Title:                                       Title:   AUTHORIZED   SIGNATORY

Date:                                        Date: