UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

In re:

      **TERRORIST ATTACKS ON**
      **SEPTEMBER 11, 2001**

-------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___4/5/2022___
```

**03-MD-01570 (GBD)(SN)**

<u>**OPINION & ORDER**</u>

**SARAH NETBURN, United States Magistrate Judge:**

This document relates to:

    <u>Havlish, et al. v. Bin Laden, et al.</u>, No. 03-cv-9848
    <u>John Does 1 through 7 v. The Taliban et al.</u>, No. 20-mc-740

    Plaintiffs in <u>Havlish, et al. v. Bin Laden, et al.</u>, No. 03-cv-9848 ("<u>Havlish</u>"), and <u>John Does 1 through 7 v. The Taliban et al.</u>, No. 20-mc-740 ("<u>Doe</u>"), move this Court to authorize alternative service on the Taliban. ECF Nos. 7779, 7815 (<u>Doe</u>), 7783 (<u>Havlish</u>).[1] The <u>Havlish</u> Plaintiffs also move for supplemental service on Da Afghanistan Bank ("DAB"). These motions are granted in part. Alternative and supplemental service on the Taliban and DAB shall be carried out in accordance with this Opinion and Order.

## BACKGROUND

    The Court assumes familiarity with the history of this multidistrict litigation. It discusses only those elements germane to the parties' motion for alternative service. The <u>Havlish</u> Plaintiffs secured a final judgment against the Taliban on October 16, 2012. ECF No. 2624. A large portion of that judgment remains unsatisfied. The <u>Doe</u> Plaintiffs obtained a 2020 judgment against the Taliban in the Northern District of Texas and registered it in this District. <u>Doe</u>, No.

---

[1] Unless otherwise noted, all "ECF No." citations are to the docket of <u>In Re Terrorist Attacks on September 11, 2001</u>, 03-md-1570.

20-mc-740, ECF No. 1. That judgment remains unsatisfied as well. Both parties allege that DAB is an agent or instrumentality of the Taliban. Based on this, they have filed turnover motions targeting DAB assets currently held in the Federal Reserve Bank of New York. ECF Nos. 7763, 7764 (Havlish), 7767, 7769 (Doe). In support of those turnover motions, the Havlish Plaintiffs move for leave to serve the Taliban by substitute service as provided for by court order. They also seek leave to conduct additional supplemental service as provided for by court order on DAB. The Doe Plaintiffs initially sought leave for supplemental service as well. ECF No. 7779. Then, however, they filed a supplemental letter indicating that they attempted to serve the Taliban using Twitter. They request that the Court authorize this method of service *nunc pro tunc*. ECF No. 7815.

## DISCUSSION

Because both the Havlish and Doe Plaintiffs' motions are governed by the same framework, the Court considers them together, addressing divergences in their positions as appropriate.

## I. Alternative Service on the Taliban by Publication and Social Media is Proper

The Havlish and Doe Plaintiffs may serve the Taliban by publication and social media under Federal Rule of Civil Procedure 4(f)(3). The procedure for executing judgments is governed by Federal Rule of Civil Procedure 69. This provides that execution "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1).

Under New York's procedures "[n]otice of the [execution] proceeding shall . . . be served upon the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested." CPLR § 5225(b); see also Off-White, LLC v. Alins, No. 19-cv-9593

(AT), 2021 WL 4710785, at *6 (S.D.N.Y. Oct. 8, 2021) (internal citation omitted). ("[A]ny post-judgment relief available to Plaintiff is ruled by state law. . . In New York, the applicable procedure is found in N.Y. C.P.L.R. §§ 5222 and 5225.") The notice procedure for a summons is set out by Federal Rule of Civil Procedure 4. See, e.g., Hausler v. JP Morgan Chase Bank, N.A., 141 F. Supp. 3d 248, 252 (S.D.N.Y. 2015) (using Federal Rule of Civil Procedure 4 as the framework for evaluating the adequacy of notice to an impleaded third party).

The Doe Plaintiffs suggest that because this is a *quasi in rem* proceeding, Federal Rule of Civil Procedure 4 is inapposite. ECF No. 7815 at 2. Rule 4(n), however, provides procedures for *quasi in rem* actions. Where jurisdiction over property in an action is authorized by federal statue, Rule 4(n)(1) requires that "[n]otice to claimants of the property . . . be given as provided in the statute or by serving a summons under this rule." Alternatively, Rule 4(n)(2) provides that jurisdiction over property may sometimes be acquired under state law using state law procedures. New York's procedures require notice in the same manner as a summons, which is governed by Rule 4.

Federal Rule of Civil Procedure 4(h) sets out the summons procedure for corporate entities. Under this Rule, when such an entity cannot be served in a judicial district of the United States, they may be served in the manner provided for in Rule 4(f). Fed. R. Civ. P. 4(h)(2). Rule 4(f) offers three options for service:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

(A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

(B) as the foreign authority directs in response to a letter rogatory or letter of request; or

(C) unless prohibited by the foreign country's law, by:

…

    (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).[2]

Only the last option is viable. Afghanistan is not part of any relevant international convention on the service of documents. See ECF No. 7784 at 7. As the U.S. Government has noted in other filings in this case, Afghanistan currently has no government recognized by the United States that could aid in the methods of service provided for by Rule 4(f)(2). ECF No. 7661 at 34. Certified mail services are not operating there. See ECF Nos. 7781 at ¶ 3 (Doe declaration indicating that mail service to Afghanistan was broadly unavailable), 7785 at ¶ 3 (Havlish declaration indicating the same). As the other methods of service are not viable, Rule 4(f)(3) provides the proper framework. See, e.g., Smith v. Islamic Emirate of Afghanistan, No. 01-cv-10132 (HB), 2001 WL 1658211, at *2 (S.D.N.Y. Dec. 26, 2001) (authorizing alternative services where "the other methods set forth in FRCP(f)(2), would be futile . . . .")

"Service under Rule 4(f)(3) is proper as long as it (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." Washington State Inv. Bd. v. Odebrecht S.A., No. 17-cv-8118 (PGG), 2018 WL 6253877, at *4 (S.D.N.Y. Sept. 21, 2018) (quoting Stream SICAV v. Wang, 989 F. Supp. 2d 264, 278 (S.D.N.Y. 2013)) (internal quotations omitted). "Service by substitute . . . comports with due process by being 'reasonably

---

[2] For foreign corporations, Federal Rule of Civil Procedure 4(h)(2) prohibits the use of personal service.

calculated, under the circumstances, to apprise interested parties of the pendency of the action

and afford them an opportunity to present their objections.'" Bozza v. Love, No. 15-cv-3271

(LGS), 2015 WL 4039849, at *2 (S.D.N.Y. July 1, 2015) (quoting S.E.C. v. Tome, 833 F.2d

1086, 1093 (2d Cir.1987)).[3]

So long as substitute service achieves these goals, "[a] court is 'afforded wide discretion

in ordering service of process under Rule 4(f)(3).'" S.E.C. v. Anticevic, No. 05-cv-6991 (KMW),

2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009) (quoting BP Prods. N. Am., Inc. v. Dagra, 236

F.R.D. 270, 271 (E.D.Va.2006)). Thus, for example, service by publishing notice in a prominent

international financial journal for four successive weeks was deemed sufficient where the

defendant already had actual knowledge of the suit against him. Tome, 833 F.2d at 1093 (2d Cir.

1987). Similarly, in Anticevic, service by publication in three newspapers likely to be read by the

defendant, combined with the defendant's actual knowledge of the suit was deemed sufficient.

2009 WL 361739, at *4. Service on the Taliban was permitted in this case by publication in the

*International Herald Tribune*, *USA Today*, and an Arabic language newspaper circulated in the

Middle East, supplemented by a posting on a website. In re Terrorist Attacks on Sept. 11, 2001,

No. 03-md-1570 (GBD)(SN) (Dec. 10, 2003), ECF No. 445.

Courts have also permitted the use of social media and email as an alternative means of

service. See, e.g., F.T.C. v. PCCare247 Inc., No. 12-cv-7189 (PAE), 2013 WL 841037, at *6

---

[3] In normal circumstances, "courts in the Southern District of New York 'generally impose two additional
threshold requirements before authorizing service under Rule 4(f)(3): (1) a showing that the plaintiff has
reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are
such that the court's intervention is necessary.'" Hardin v. Tron Found., No. 20-cv-2804 (VSB), 2020 WL
5236941, at *2 (S.D.N.Y. Sept. 1, 2020) (quoting Devi v. Rajapaska, No. 11-cv-6634, 2012 WL 309605,
at *1 (S.D.N.Y. Jan. 31, 2012)). These are sound prudential considerations, but, as S.E.C. v. Anticevic,
makes clear, they are discretionary. No. 05-cv-6991 (KMW), 2009 WL 361739, at *4 (S.D.N.Y. Feb. 13,
2009). Because attempting service under Rules 4(f)(1) and (2) would be futile, the Court declines to
invoke these discretionary factors.

(S.D.N.Y. Mar. 7, 2013) (authorizing service by Facebook and email); Hardin v. Tron Found., No. 20-cv-2804 (VSB), 2020 WL 5236941, at *2 (S.D.N.Y. Sept. 1, 2020) (authorizing service by email and LinkedIn). This manner of service is reasonable where the defendants already have actual knowledge of the suit. See, e.g., PCCare247 Inc., 2013 WL 841037, at *5 (determining that service by social media and email was particularly appropriate where the defendants have actual knowledge of the lawsuit).

Service by social media and email, without additional means, however, is generally authorized only after a showing of some additional factor. In the case of email, for example, a party may be expected to show that the target for service is likely to receive the communication. Thus, in Philip Morris USA Inc. v. Veles Ltd., email and fax service was authorized after the plaintiffs showed that "defendants conduct business extensively, if not exclusively, through their Internet websites and correspond regularly with customers via email." No. 06-cv-2988 (GBD), 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007). Alternatively, a party may show that they are resorting to email and social media service after other methods have been attempted and proven unsuccessful. See, e.g., Sirius XM Radio Inc. v. Aura Multimedia Corp., 339 F.R.D. 592, 593 (S.D.N.Y. 2021) (email service authorized after "numerous attempts" at service failed), In re Bystolic Antitrust Litig., No. 20-cv-5735 (LJL), 2021 WL 4296647, at *1 (S.D.N.Y. Sept. 20, 2021) (authorizing service by email after service under the Hague Convention failed); Day v. Slothower, No. 21-cv-1188 (PAE), 2021 WL 6427556, at *1 (S.D.N.Y. Apr. 27, 2021) (authorizing service by email after service by mail failed). For social media in particular, courts in this District have treated such service as a "backstop" for other methods, not a standalone option. Kesten v. Broad. Music, Inc., No. 20-cv-8909 (LJL), 2021 WL 1740806, at *2 (S.D.N.Y. Mar. 3, 2021) (collecting cases).

While the Doe and Havlish Plaintiffs agree that alternative service is proper, they disagree on the means. The Havlish Plaintiffs propose substitute service by two means. First, in accordance with New York's procedure for service by publication under CPLR § 316, they propose to publish notice of this action for four consecutive weeks in three publications: *Al Quds Al-Arabi,* the *Financial Times*, and *The New York Times*. ECF No. 7786 at 1. The content and timing of this notice will follow the requirements of CPLR § 316 and include publication of the relevant motion papers in that advertisement. ECF No. 7784 at 10. Second, they propose to serve the Taliban by Twitter through communications to accounts associated with Taliban First Deputy Prime Minister Abudllah Azzam, purportedly tweeting as @Abdullah_azzam7, Taliban politician spokesman Mohammad Naeem, purportedly tweeting as @IeaOffice, and any other Twitter accounts associated with the Taliban. ECF No. 7786 at 2.

The Doe Plaintiffs ask the Court to determine *nunc pro tunc* that they have achieved service on the Taliban through tweets directed to five Twitter accounts purportedly run by senior Taliban officials. ECF No. 7815. They assert that service under CPLR § 316 would be unnecessarily expensive and time-consuming. ECF No. 7780 at 6.

In determining the proper service method, the Court accounts for the fact that the Taliban has actual notice of this case. Its representatives have repeatedly issued press statements demonstrating that they are aware that the DAB Funds in this case are currently being held and targeted in this litigation. ECF Nos. 7785-6, 7785-7, 7785-8 (copies of *The New York Times*, *The Washington Post*, and *Associated Press* articles in which high-ranking Taliban representatives discuss this case and the freezing of funds held by DAB).

Given the Taliban's actual notice, service by publication is appropriate. The Court is not aware of any international agreement that would foreclose this option and indeed, has permitted

7

service by publication on the Taliban in this case previously. See In re Terrorist Attacks on Sept. 11, 2001, No. 03-md-1570, ECF No. 445.

The Doe Plaintiffs' proposal for retroactive service is denied for two reasons. First, courts in this District have generally found that Rule 4 does not permit *nunc pro tunc* service. See, e.g., In re Coudert Bros. LLP, No. 16-cv-8237 (KMK), 2017 WL 1944162, at *13 (S.D.N.Y. May 10, 2017) ("[A]lternative service under Rule 4(f)(3) is available only where ordered by the court . . . the Court cannot, after the fact, provide such authorization."); see also Integr8 Fuels, Inc. v. OW Bunker Panama SA, No. 16-cv-4073 (VSB), 2017 WL 11455309, at *3 (S.D.N.Y. Feb. 2, 2017) (collecting cases). Two circuit courts have also ruled that *nunc pro tunc* alternative service under Rule 4(f)(3) is not permissible. See Brockmeyer v. May, 383 F.3d 798, 806 (9th Cir. 2004), De Gazelle Grp., Inc. v. Tamaz Trading Establishment, 817 F.3d 747, 750 (11th Cir. 2016). The Court finds those opinions compelling.

Second, even assuming that *nunc pro tunc* service was allowed, notice by Twitter alone, in the absence of any prior efforts at service, and without sufficient factual support does not comport with the requirements of due process. The Doe Plaintiffs have not provided evidence that the Taliban engages with people using Twitter, as opposed to just posting announcements or otherwise using it solely to send, but not receive messages. There is no evidence that Twitter has been used to communicate with the Taliban or serve process on them successfully before. Finally, service by Twitter would be the Doe Plaintiffs' first, and if the Court granted their request, only means of serving notice. They have proffered no case in which a court has authorized the use of a social media service as the exclusive means of attempting service. Thus, the Court does not find that service by Twitter alone is "reasonably calculated" to afford the Taliban notice of this action. Bozza, 2015 WL 4039849, at *2.

The Court, though, is sensitive to the <u>Doe</u> Plaintiffs' concerns about the cost and expense associated with running a substantial ad in multiple papers for four weeks. As both the <u>Doe</u> and <u>Havlish</u> Plaintiffs are involved in the same multidistrict litigation, requiring both parties to post separate announcements of their suits in the papers and by Twitter will be expensive, duplicative, and unnecessary.

Accordingly, the <u>Doe</u> and <u>Havlish</u> Plaintiffs shall serve the Taliban by publication in the following manner. They shall publish notice in *Al Quds Al-Arabi*[4] and *The New York Times*.[5] These notices shall run once a week for at least four weeks. That notice shall conform to the requirements of CPLR § 316. As an alternative to publishing the full motion papers, however, the parties may, at their choosing, include an electronic address such as a URL or a QR code that directs the reader to easily accessible online versions of those papers. The notice must still, per CPLR § 316, include "a brief statement of the nature of the action and the relief sought." Finally, the <u>Doe</u> and <u>Havlish</u> Plaintiffs may, at their option, run a single notice together, so long as the statement covers the nature of both of their actions and provides either both of their papers or the electronic means to see their papers as described above.

In addition, as a supplement to these publications, the parties shall serve the Taliban by communications to the Twitter accounts of Taliban First Deputy Prime Minister Abudllah Azzam (@Abdullah_azzam7) and Taliban political spokesman Mohammad Naeem (@IeaOffice), or to any other Twitter accounts reported to belong to Taliban spokespersons.

---

[4] Al Quds Al-Arabi has been used to achieve service on the Taliban and other groups in prior terrorism cases. <u>See, e.g.</u>, <u>Smith v. Islamic Emirate of Afghanistan</u>, No. 01-cv-10132 (HB), 2001 WL 1658211, at *3 (S.D.N.Y. Dec. 26, 2001); <u>Mwani v. bin Laden</u>, 417 F.3d 1, 5 (D.C. Cir. 2005).

[5] This is one less newspaper than the <u>Havlish</u> Plaintiffs requested. If, out of an abundance of caution, they wish to publish in additional papers, they may, but that is not required to satisfy the notice authorized by the Court.

While the <u>Doe</u> Plaintiffs have already made certain Twitter communications to Taliban accounts, ECF No. 7815 at 1, they shall make further communications in accordance with the terms of this Order.

## II. Supplemental Service on Da Afghanistan Bank By Publication, Email, Social Media and Personal Service Is Authorized

The <u>Havlish</u> and <u>Doe</u> Plaintiffs report that they completed service on DAB through personal service on Dr. Shah Mehrabi. They assert that this satisfies the requirements for service imposed by Rule 4, CPLR §§ 2552 and 2557, and Section 1608(b)(2) of the Foreign Sovereign Immunities Act (FSIA), in the event that the FSIA applies to DAB as an agent or instrumentality of a foreign state. ECF No. 7784 at 10–11, 13–15. Without conceding any argument as to the proper status of DAB, the <u>Havlish</u> Plaintiffs ask for authorization to supplement this service by publication, email, social media, and personal service on DAB in Afghanistan. The <u>Doe</u> Plaintiffs do not seek any further service on DAB and believe the Court need not authorize further service. ECF No. 7780 at 7.

The question of DAB's status is being briefed as part of the <u>Havlish</u> and <u>Doe</u> Plaintiffs' turnover motions. <u>See, e.g.</u>, ECF No. 7764 at 23–30. This Opinion and Order does not address DAB's status and there is no need to do so because the procedures for supplemental service are, for practical purposes, identical regardless of whether service on DAB must be authorized under the Rule 4 procedures for a foreign entity or the 28 U.S.C. § 1608(b) procedures for service on the instrumentality of a foreign sovereign.

As discussed, the procedure for service on foreign entities is contained at Federal Rule of Civil Procedure 4(h), which is applicable even in a *quasi in rem* proceeding. Where the entity is an agency or instrumentality of a foreign state, however, Rule 4(j) provides that service must be

carried out under the FSIA's procedures at 28 U.S.C. § 1608 ("§ 1608"). Section 1608(b)

provides that service may be made on an agency or instrumentality of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special
arrangement for service between the plaintiff and the agency or instrumentality; or

(2) if no special arrangement exists, by delivery of a copy of the summons and
complaint either to an officer, a managing or general agent, or to any other agent
authorized by appointment or by law to receive service of process in the United
States; or in accordance with an applicable international convention on service of
judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated
to give actual notice, by delivery of a copy of the summons and complaint, together
with a translation of each into the official language of the foreign state—

(A) as directed by an authority of the foreign state or political subdivision in
response to a letter rogatory or request or

(B) by any form of mail requiring a signed receipt, to be addressed and dispatched
by the clerk of the court to the agency or instrumentality to be served, or

(C) as directed by order of the court consistent with the law of the place where
service is to be made.

Thus, unlike the procedures of Rule 4, where "[s]ervice of process under Rule 4(f)(3) is

neither a last resort nor extraordinary relief," KPN B.V. v. Corcyra D.O.O., No. 08-cv-1549

(JGK), 2009 WL 690119, at *1 (S.D.N.Y. Mar. 16, 2009) (internal citation and quotations

omitted), the § 1608(b) options are in descending order of preference. Service must be

unavailable under § 1608(b)(1) to attempt service under § 1608(b)(2), and both must be

unavailable to attempt service under § 1608(b)(3).

Despite this, court-ordered service on DAB remains the only viable mechanism, whether

under the auspices of Rule 4(f) or § 1608(b)(3)(C). Starting with Rule 4(f), Afghanistan is not, as

discussed, part of any relevant convention. It has no certified mail services or recognized

government. That makes service on DAB under Rules 4(f)(1) and Rule 4(f)(2) futile and leaves

only court-ordered means under Rule 4(f)(3). Turning to § 1608(b), there is no special agreement

between the <u>Havlish</u> Plaintiffs and DAB for service, ECF No. 7784 at 16, and Afghanistan lacks

either certified mail or a recognized government that could aid in the execution of letters

rogatory. That makes service under § 1608(b)(1), § 1608(b)(3)(A), and § 1608(b)(3)(B) futile.

As noted, the <u>Havlish</u> Plaintiffs have already attempted service on Dr. Mehrabi pursuant to §

1608(b)(2). If, and the Court issues no opinion on the question, that service was not effective,

that would leave § 1608(b)(3)(C), authorizing service as directed by court order. In short,

regardless of whether service on DAB is properly executed under Rule 4(f) or § 1608(b)(3)(C),

service as directed by court order is the only viable option.

Service by court order under § 1608(b)(3)(C) is not the norm, likely owing to the relative

ease by which one may satisfy § 1608(b)(3) using § 1608(b)(3)(B)'s method of service by

registered mail as directed by the clerk of the court. <u>See, e.g.</u>, <u>Est. of Hartwick v. Islamic</u>

<u>Republic of Iran</u>, No. 18-cv-1612 (CKK), 2021 WL 6805391, at *8 (D.D.C. Oct. 1, 2021)

(service on Iranian instrumentalities by certified mail was proper); <u>Hawkeye Gold, L.L.C. v.</u>

<u>China Nat'l Materials Indus. Imp. & Exp. Corp.</u>, No. 16-cv-00355 (JAJ)(SBJ), 2020 WL

11028006, at *3 (S.D. Iowa Oct. 22, 2020) (permitting service on Chinese instrumentalities using

the same method).

Indeed, service on instrumentalities under § 1608(b)(3)(C) appears to occur only when

notice must be achieved despite a near-total breakdown in a country's services. In <u>Janvey v.</u>

<u>Libyan Inv. Auth.</u>, for example, the Court authorized service on Libyan government

instrumentalities where "[t]he ongoing strife in Libya apparently has rendered communicating

with the Libyan Defendants and other Libyan authorities via mail or courier impossible." No. 11-

cv-1177-N, 2011 WL 13299660, at *6 (N.D. Tex. June 16, 2011). Similarly, in <u>Harris Corp. v.</u>

<u>Nat'l Iranian Radio & Television</u>, the Court of Appeals for the Eleventh Circuit accepted, albeit

with reservation, service on Iranian instrumentalities using a combination of Telex, registered

mail, and delivery of papers to the instrumentalities' law firm. 691 F.2d 1344, 1352 n.15 (11th

Cir. 1982).

Afghanistan is facing such a breakdown. The Court is thus left to order a suitable means

"reasonably calculated to give actual notice, by delivery of a copy of the summons and

complaint, together with a translation of each into the official language of the foreign state . . . ."

§ 1608(b)(3). Because both this statute and the standard for Rule 4(f)(3) require that service be

"reasonably calculated" to provide notice, Bozza, 2015 WL 4039849, at *2, comparable methods

of service would be viable under each. Furthermore, Janvey, 2011 WL 13299660, at *6, and

Harris Corp., 691 F.2d 1352 n.15, countenanced an array of service methods (*e.g.*, email, fax,

Telex) comparable to the email and social media methods permitted by Rule 4(f)(3). This further

confirms that comparable methods are permissible under § 1608(b)(3) and Rule 4. Thus,

notwithstanding the Doe Plaintiffs' dissent, if the Havlish Plaintiffs wish, out of an abundance of

caution, to alert DAB to this action through additional forms of notice, there is no reason not to

permit them to do so.

Additionally, in setting the method of service, the Court notes that DAB has actual notice

of this suit. It has publicly commented on the fact that its assets are frozen by an Executive

Order. ECF No. 7785-11 at 3 (DAB press release opposing the blocking of DAB assets). That

Executive Order acknowledges that DAB assets are being targeted in litigation. ECF No. 7661-1.

Taking this into account, the Court authorizes supplemental service on DAB by the

following methods:

1. **Publication**: notice shall be published in *Al Quds Al-Arabi* and *The New York Times*. [6] These notices shall run once a week for four weeks and shall conform to the requirements of CPLR § 316.

2. **Email**: notice and supporting papers shall be emailed to info@dab.gov.af, a general-purpose email address listed on DAB's website, https://dab.gov.af/.

3. **Twitter**: notice shall be provided by Twitter communication to @AFGCentralbank, the Twitter account to which DAB's website is linked.

4. **Personal Service**: per the Havlish Plaintiffs' request, the Court authorizes personal service on DAB at its offices in Ibni-Sina Watt, Kabul, Afghanistan. Given the precarious security situation in Afghanistan, personal service on DAB appears neither viable nor advisable. See ECF No. 7781-5 at 1 (U.S. State Department Travel Advisory warning that "the risk of kidnapping or violence against U.S. citizens in Afghanistan is high . . . .") If it can be safely carried out, however, the Court will not deny the Havlish Plaintiffs the opportunity to supplement their service by this method. Any failure to achieve personal service on DAB will not negatively affect the validity of service on DAB.

Per § 1608(b)(3), notice shall be accompanied by a translation of the relevant documents "into the official language of the foreign state. . . ." § 1608(b)(3). This requirement may be impractical because Afghanistan may not have an official language. Recognizing that "substantial compliance" is the touchstone for effective service under § 1608(b), the Court authorizes the Havlish Plaintiffs to satisfy this requirement by providing a translation in any language spoken by a substantial percentage of Afghanistan's population. Trans Commodities,

---

[6] In conformity with service on the Taliban, the Court orders one less newspaper than the Havlish Plaintiffs requested. If, out of an abundance of caution, they wish to publish in additional papers, they may, but that is not required to satisfy the notice authorized by the Court.

Inc. v. Kazakstan Trading House, No. 96-cv-9782 (BSJ), 1997 WL 811474, at *4 n.7 (S.D.N.Y. May 28, 1997) ("In considering service under section 1608(b), courts apply a substantial compliance test, not the strict compliance test applicable under section 1608(a).")

Finally, in the absence of a recognized Afghan government to promulgate laws, it does not appear that this method of service will offend any law that could be applied to these circumstances. Should the Doe Plaintiffs wish to supplement their service on DAB, they may do so by the same mechanisms without further application to the Court. As discussed, however, the Court will not authorize other methods of service *nunc pro tunc*.[7]

## CONCLUSION

The Court grants in part the Doe and Havlish Plaintiffs' motion for alternative service on the Taliban and the Havlish Plaintiffs' motion for supplemental service on Da Afghanistan Bank. The Doe Plaintiffs' motion for *nunc pro tunc* approval of their service is denied. The Doe and Havlish Plaintiffs shall serve the Taliban according to the procedures set out in Section I of this Opinion and Order. The Havlish Plaintiffs shall conduct supplemental service on Da Afghanistan Bank according to the procedures set out in Section II of this Opinion and Order. Should the Doe Plaintiffs wish to supplement their service on DAB, they may do so by the same mechanisms without further application to the Court.

---

[7] While the Doe Plaintiffs did not move for supplemental service on DAB, and do not seek further supplemental service on DAB presently, they note that they may seek such supplemental service in the future. ECF No. 7780 at 7.

The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 7779 and 7783, as well as ECF No. 85 in <u>Doe</u>, No. 20-mc-740, and ECF No. 605 in <u>Havlish</u>, No. 03-cv-9848.

**SO ORDERED.**

Dated: April 5, 2022
      New York, New York

SARAH NETBURN
United States Magistrate Judge