# EXHIBIT A

1. Filed on behalf of the Respondent
2. Name: David McGillicuddy
3. Statement - One
4. Dated: 01/03/2022

**FOREIGN PROCESS REFERENCE QF 2021 007252**

IN THE HIGH COURT OF JUSTICE

QUEENS BENCH DIVISION

IN THE MATTER OF THE EVIDENCE (PROCEEDINGS IN OTHER JURISDICTIONS) ACT 1975

B E T W E E N:

ASHTON ET AL

*Survivors and estate representatives of the victims of the September 11th Attacks*

**Plaintiffs**

-and-

(1) KINGDOM Of SAUDI ARABIA
(2) DALLAH AVCO ET AL

**Defendants**

and

THE COMMISSIONER OF POLICE

OF THE METROPOLIS

**Respondent**

## Witness Statement of
## David McGillicuddy

1. I am a Detective Superintendent in the Metropolitan Police Service (MPS).

2. This statement is provided to explain to the Court, and the Applicant claimants, the approach, allocated resources and methodology used by the MPS in relation to the 'Request' dated 12/07/2021 for the MPS to disclose copies of "evidential holdings (historical)" in connection with Omar Al-Bayoumi.

   Documentation relevant to the Request

3. As DLS lawyer Andrew Fairbrother has previously explained in his witness statement dated 3rd September 2021 and his email dated 26th January 2021; the material that was potentially relevant to this Request was held amongst archived MPS documentation from Operation Exchange, the MPS investigation following the 9/11 attacks.

4. This material, which was protectively marked "secret", was located at a storage facility in Derby (having been archived there around 15-years ago). It was considered likely that most of it would have no relevance to the Request. However, as there was no real way of easily identifying, *in situ*, which document was relevant to the Request and which was not, a decision was made by the MPS that the (104) boxes of Operation Exchange material should be transported from Derby to London.

5. This was done in early November 2021.

The Review

6. Since early November 2021, a team of eight police officers and staff, comprising: one Detective Sergeant (DS) who was the process lead; two Detective Constables (DC) who were disclosure trained to review material; two Police Staff to process the material; and three Forensic Management Experts (FME) dealing with exhibits, have been working full time on this exercise.

7. I have overseen and approved the process and strategy devised by DS Jon Brinkman, the process lead.

8. After the material had been moved to London, there was an agreed two stage review process.

Phase 1

9. Phase 1 was to review <u>all</u> the Operation Exchange material in order to separate potentially relevant material, i.e. documents that related in any way to Mr Al-Bayoumi; and non-relevant material, i.e. documents that related to other subjects or strands of the MPS post-9/11 investigation.

10. In total, the team reviewed a total of **26,570** items, primarily comprising documents, digital media and physical exhibits.

11. Phase 1 was completed towards the end of January 2022.

Phase 2

12. Phase 2 was to review and redact the potentially relevant material, and determine what fell to be disclosed pursuant to the Request.

13. As stated at para 2 above, the Request sought disclosure of "evidential holdings" held by the MPS. Therefore, the review strategy was to identify material that broadly fell within that definition. This was primarily, but not limited to, witness statements, documentary and physical exhibits. Material that would form the basis of a prosecution in UK criminal court proceedings.

14. The Phase 2 review also sought to redact sensitive information, which largely comprised personal details (names, addresses, phone numbers, email addresses etc) of people named in the documents.

15. The Applicant's attorney, Mr Simpson, has confirmed that his clients' had no objection to this material being redacted in this way.

16. The review team has identified **327** documents, meeting the criteria of 'evidential holdings', as being relevant to the Request and therefore (subject to a Court Order) disclosable to the Applicants.

17. This includes third party documentation, i.e. documentation that is in the possession of the MPS but 'belongs' to partner agencies.

18. These documents have been scheduled. This schedule has been provided to the Applicants' and is appended to the agreed Consent Order.

Reclassification

19. As I have said at para 4 above, when the Operation Exchange material was archived, it was, collectively, marked "secret".

20. With the appropriate authority to do so, I have, as part of the review, authorised the material to be disclosed to the Applicants and it is no longer classified.

Public Interest Immunity (PII)

21. I can confirm there is no claim made by the MPS for PII in relation either to any redacted part of the documents that are listed on the schedule (the Applicants' have agreed for this material to be redacted), nor to any other document that might be in our possession that is not on the schedule.

<u>Conclusion</u>

22. As the senior officer in charge of this process, I am content that the MPS has worked diligently and expeditiously to identify all material in possession of the MPS that falls to be disclosed pursuant to the Request.

## **Statement of Truth**

I believe that the facts stated in this witness statement are true. I understand that proceedings for contempt of court may be brought against anyone who makes, or causes to be made, a false statement in a document verified by a statement of truth without an honest belief in its truth.

Signed…D.McGILLICUDDY……………………………………….

Position: Detective Superintendent – SO15 Investigations

Date: 01/03/2022