UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN)<br>ECF Case |

**This Document relates to:**
*Burnett, et al. v. Al Baraka Inv. & Dev. Corp.*, et al., No. 03-cv-9849 (GBD)(SN)

### *Burnett* Plaintiffs' Memorandum In Support of Their Motion for Entry of Default Judgments Against The Taliban for Certain *Burnett* Plaintiffs

For the reasons stated herein and as set forth in the accompanying Declaration of John M. Eubanks (hereinafter "Eubanks Decl."), the *Burnett* Plaintiffs seek an Order entering judgment against the Taliban and in favor of the indicated plaintiffs in the values set forth in Exhibits B-1, B-2, D-1, and D-2[1]. Furthermore, Plaintiffs seek the establishment of a method for entering judgments on behalf of Plaintiffs included on Exhibits C and D-3 which include the claims of (1) individuals who sustained injuries arising out of the terrorist attacks on September 11, 2001 but who were not killed as a result of their injuries and who have not already moved the Court in other proceedings for judgment against other defendants in the litigation, and (2) individuals who assert claims as the functional equivalent of close family members to 9/11 decedents and whose claims have not already been addressed by the Court against the Iran Defendants. Finally, to the extent that the Court does not order judgment on behalf of the Plaintiffs listed in Exhibits D-1 and D-2, Plaintiffs seek, in the alternative, the establishment of a method for entering judgment on behalf of Plaintiffs who became Plaintiffs in this litigation after the liability default against the Taliban was entered by the Court on April 7, 2006 ("2006 Order").

---

[1] Exhibits referenced herein are exhibits to the Eubanks Decl. that accompanies this motion.

The Plaintiffs identified in Exhibit B, which is divided into two parts, constitute a subset of Plaintiffs included in the 2006 Order who have not obtained default judgments against the Iran Defendants previously. These Plaintiffs seek the relief set forth below. Specifically, Exhibit B-1 sets forth those wrongful-death Plaintiffs on whose behalf their personal representatives have not yet obtained default damages judgments against the Iran Defendants to date. Exhibit B-2 sets forth those solatium Plaintiffs who have not yet obtained default damages judgments against the Iran Defendants to date.

The plaintiffs identified in Exhibit C constitute a subset of Plaintiffs included in the 2006 Order whose claims require a case-by-case determination by the Court for purposes of attributing damages in these cases. Specifically, Exhibit C-1 sets forth those Plaintiffs who sustained injuries arising out of the terrorist attacks on September 11, 2001 but who did not succumb to those injuries and who have not yet obtained a judgment for pain-and-suffering damages against the Iran Defendants. These Plaintiffs seek the establishment of a method of calculating their damages values given the complexities involved in addressing personal-injury claims in this litigation. Exhibit C-2 sets forth those Plaintiffs who assert status as the functional equivalents of close family members who have not yet sought or obtained a judgment from the Court determining whether they qualify as functional equivalents and the value of their solatium claims. These Plaintiffs seek a method of expediting a review of their claims to allow for entry of judgment in those cases where the Court deems that it would be appropriate.

Finally, the Plaintiffs identified in Exhibit D includes those individuals who became Plaintiffs in these MDL proceedings after the entry of the 2006 Order, and whose claims arguably are encompassed within the default judgment as to liability against The Taliban as set forth below but who were not explicitly included in the prior judgment. Specifically, Exhibit D-1 sets forth

wrongful-death Plaintiffs on whose behalf their personal representatives have obtained prior judgments against the Iran Defendants, solatium Plaintiffs who have obtained prior judgments against the Iran Defendants, and personal-injury Plaintiffs who have obtained prior judgments for pain and suffering damages against the Iran Defendants including the value of those prior judgments. Exhibit D-2 sets forth wrongful-death Plaintiffs on whose behalf their personal representatives have not obtained prior judgments against the Iran Defendants and solatium Plaintiffs who have not obtained prior judgments against the Iran Defendants. Exhibit D-3 sets forth Plaintiffs who sustained injuries arising out of the terrorist attacks on September 11, 2001 but who did not succumb to those injuries and who have not yet obtained a judgment for pain-and-suffering damages against the Iran Defendants. The Plaintiffs on Exhibit D-3 seek the same relief as that sought for the Plaintiffs included on Exhibit C-1.

## ARGUMENT

**I.  Entry of Default Judgments Against The Taliban for Plaintiffs on Exhibits B-1, B-2, and D-2**

The 2006 Order expressly included the plaintiffs identified in Exhibits B-1 and B-2. *See* ECF No. 1756 and Exhibit A to the Eubanks Declaration. Although the *Burnett* plaintiffs listed on Exhibits B-1 and B-2, hold a liability judgment against The Taliban (and others), they have no previous default judgment against the Iran Defendants that can be extended to The Taliban.[2] However, this Court has determined the appropriate measure of compensatory damages for

---

[2] Furthermore, not all 9/11 decedent estates included on Exhibit B-1 seek claims for a decedent who was a United States national at the time of his or her death. While 18 U.S.C. § 2333(a) limits claims to those of United States nationals injured by reason of an act of international terrorism, the terrorist attacks on September 11, 2001 took place inside the United States, and those non-national victims' claims arise against The Taliban pursuant to the common law and principles of wrongful death. The same is true for non-U.S. national solatium claimants who claims sound in common-law principles of intentional infliction of emotional distress. *See* ECF No. 3358, p. 8 (Magistrate Judge Netburn noted that "[b]ecause of the extreme and outrageous conduct inherent in acts of terrorism, courts have held that solatium claims in FSIA terrorism cases are 'indistinguishable' from claims of international infliction of emotional distress (citing *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002)).

Plaintiffs in this MDL in numerous prior instances as such judgments relate to the Iran Defendants. For those 9/11 decedent estates included on Exhibit B-1, Plaintiffs submit that they are each entitled to pain-and-suffering damages in the amount of $2 million based on the prior decisions of this Court vis-à-vis the Iran Defendants. While these Plaintiffs reserve the right to seek additional damages for economic loss at a later time, they are nevertheless entitled to judgment for pain-and-suffering damages in the amount of $2 million for each 9/11 decedent estate.[3] The solatium amounts set forth in Exhibit B-2 are the figures the Court has previously awarded to immediate family members.[4] The rights of plaintiffs identified on Exhibits B-1 and B-2 will be prejudiced if judgments are not entered for them at this time given the large volume of judgments sought for default damages for plaintiffs throughout this MDL.

In addition to the Plaintiffs included in Exhibits B-1 and B-2, Plaintiffs also submit that this Court should extend the default judgments against the Iran Defendants to The Taliban for Plaintiffs included on Exhibit D-2. The 2006 Order included the names of all real parties in interest asserting claims in the litigation whose claims were included in the default judgment, but it also included language that would incorporate future-filed claims in the litigation. Plaintiffs Third Amended Complaint, which was filed on November 22, 2002 in the U.S. District Court for the District of Columbia (Case No. 02-1616) prior to this case's transfer to the Southern District of New York by the Judicial Panel on Multidistrict Litigation, included the following in the caption listing Plaintiffs in the case: "ADDITIONAL PLAINTIFFS #1 THRU #5,000 (AP200 thru AP5,200)." *See* ECF No. 29, Case No. 1:02-cv-01616-JR (D.D.C.), at 189. This listing of "additional plaintiffs" was also included in the 2006 Order. Plaintiffs submit that this set-aside

---

[3] Plaintiffs submit that the nationality of the victim should be immaterial where the perpetrators targeted the United States regardless of the nationality of those who were murdered on September 11, 2001.
[4] *See, e.g.,* 03-md-1570, ECF Nos. 3175 at 2; 330 at 1; 3358 at 9; 3363 at 16; 3399, 3666, 4023, and 4126.

language for additional plaintiffs foresaw the inclusion of additional claims going forward, and, in fact, additional claims were filed in this case even beyond the entry of the default judgment as set forth in Exhibits D-1, D-2, and D-3. Plaintiffs submit that the Plaintiffs included on these three exhibits are, effectively, included in the 2006 Order based on the inclusive language in the Plaintiff list accompanying the original 2006 default judgment. For purposes of this section, the Plaintiffs on Exhibit D-2 are those wrongful death and solatium Plaintiffs who do not currently have judgments in place against the Iran Defendants. Plaintiffs submit that, like the Plaintiffs on Exhibits B-1 and B-2, Plaintiffs on Exhibit D-2 should have default judgments entered against The Taliban for $2 million for pain-and-suffering damages for wrongful death cases while judgments for solatium should be awarded in accordance with the familial relationships asserted in Exhibit D-2.

For the reasons stated herein and in the Eubanks Declaration, Plaintiffs identified in Exhibits B-1, B-2, and D-2 move the Court now for default judgments in the amounts set out in Exhibits B-1, B-2, and D-2 including trebling of damages pursuant to the ATA.[5]

## II. The Court Should Extend to The Taliban Previous Default Judgments Against the Iran Defendants for Plaintiffs with Judgments Against the Iran Defendants who were included in the Default Liability Judgment Against The Taliban (Exhibit D-1)

On April 7, 2006, this Court entered default judgment as to liability against the Taliban (and 132 other defaulting defendants) in the case captioned *Burnett, et al. v. Al Baraka Inv. & Dev. Corp.,* et al., No. 03-cv-9849 (GBD)(SN). ECF No. 1756. That April 7, 2006 default judgment was entered in favor of 5,612 real parties in interest[6] in the *Burnett* action at the time. The specific

---

[5] To the extent that a plaintiff's claims arise under the common law and not under the ATA, Plaintiffs submit that equitable principles dictate that punitive damages should be awarded consistent with the trebling provision of the ATA for non-U.S. national plaintiffs.

[6] The plaintiffs included 5,513 named plaintiffs (many of whom were pursuing claims in multiple capacities—i.e.,

plaintiffs with judgments against The Taliban are identified in Exhibit A which represents not only the real parties in interest, but also claimants on whose behalf these real parties in interest were pursuing claims in addition to their individual claims. Of note for the Plaintiffs appearing on Exhibit D-1, the list of Plaintiffs appended to the April 7, 2006 default judgment included an entry for "ADDITIONAL PLAINTIFFS #1 THRU #5,000 (AP200 thru AP5,200)" that would encompass the claims of those individuals included in Exhibits D-1, D-2, and D-3, but more specifically for this argument, those Plaintiffs included on Exhibit D-1.

The April 7, 2006 liability default judgment in *Burnett* was not reduced previously to a final judgment because individual damages assessments of the Plaintiffs' claims had not been conducted, and other appearing (non-defaulting) defendants in the active MDL thereafter opposed the process. In 2007, certain other plaintiffs in this MDL with similar default judgments against The Taliban sought monetary awards in relation to their judgments. Procedural objections by appearing (non-defaulting) defendants at that time frustrated the process of reducing the default judgments as to liability to final damage judgments. *See, e.g.,* ECF No. 688 (Federal Insurance Docket) and undocketed March 2, 2007 letter from the Defendants' Executive Committee to Judge Casey. The position espoused by these appearing (non-defaulting) defendants and the Court's inaction with regard to the motion seeking monetary damages against The Taliban, caused these moving Plaintiffs to understand that seeking final judgment under these circumstances was futile given this stalemate.[7]

---

individually, and as personal representative of the estate of the 9/11 decedent or as next of kin of minor children of the 9/11 decedent) and 99 plaintiffs who were, at the time, proceeding pseudonymously (many of whom were also pursuing their claims in dual or multiple capacities).

[7] Similar issues were not encountered through opposition to the *Havlish* Plaintiffs' default motions likely because

In 2011 and 2012, this Court ordered default damages to be awarded as to a specific defaulting defendant (Al Qaeda) on a discrete motion that arose due to exigent circumstances in the *Federal Insurance* case and then extended that order on damages to another specific defaulting defendant (Hezbollah) on another discrete motion that arose due to exigent circumstances. *See* ECF No. 2502 (Al Qaeda judgment); 2582 (Hezbollah judgment). The Court has also extended judgment against one defaulting defendant to other defaulting defendants in the *Havlish* case. *See* ECF No. 2623 (extending *Havlish* damage assessment against Iran to defaulting Non-Sovereign Defendants who were determined to be jointly and severally liable with Iran under traditional tort principles).

Here, the Court has developed a specific mechanism for assessing damages as to one group of defaulting defendants in the wrongful death and personal injury context, the Iran Defendants, that should be applicable to other defaulting defendants under traditional tort principles. Plaintiffs here seek to obtain a default judgment against The Taliban; however, like the *Federal Insurance* plaintiffs in their motion for default judgment against Hezbollah, Plaintiffs here ask that any judgment or award of damages against The Taliban made pursuant to this Motion will neither be binding upon nor admissible to establish any damages amount related to any Defendant other than The Taliban. *See* ECF No. 2582 at 3.

Plaintiffs submit that this Court should extend the default judgments against the Iran Defendants to The Taliban for Plaintiffs included on Exhibit D-1. The default judgment as to liability entered by the Court against The Taliban in the 2006 Order included the names of all real parties in interest asserting claims in the litigation whose claims were included in the default judgment, but it also included language that would incorporate future-filed claims in the litigation.

---

there were no appearing (non-defaulting) defendants at issue in the *Havlish* case. Furthermore, a significant number of filings made in the *Havlish* case were not also included on the MDL Docket.

Plaintiffs Third Amended Complaint, which was filed on November 22, 2002 in the U.S. District Court for the District of Columbia (Case No. 02-1616) prior to this case's transfer to the Southern District of New York by the Judicial Panel on Multidistrict Litigation, included the following in the caption listing Plaintiffs in the case: "ADDITIONAL PLAINTIFFS #1 THRU #5,000 (AP200 thru AP5,200)." *See* ECF No. 29, Case No. 1:02-cv-01616-JR (D.D.C.), at 189. This listing of "additional plaintiffs" was also included in the default judgment as to liability entered against The Taliban in the 2006 Order. Plaintiffs submit that this set-aside language for additional plaintiffs foresaw the inclusion of additional claims going forward, and, in fact, additional claims were filed in this case even beyond the entry of the default judgment as set forth in Exhibits D-1, D-2, and D-3. Plaintiffs submit that the Plaintiffs included on these three exhibits are, effectively, included in the default against the Taliban from 2006 based on the inclusive language in the Plaintiff list accompanying the original 2006 default judgment. For purposes of this section, the Plaintiffs on Exhibit D-1 are those with judgments in place against the Iran Defendants, and Plaintiffs submit that the judgments entered against the Iran Defendants should be extended to the default judgment against The Taliban.

      Here, consistent with the Court's practice, each of the Plaintiffs with existing liability default judgments against The Taliban, and who have secured monetary damage awards in the way of judgments against another defendant—namely, the Iran Defendants—ask that the Court extend their existing default damages assessments to The Taliban and enter final judgment against The Taliban. To the extent the Court has already conducted damages inquests for Plaintiffs with default liability judgments against the Taliban, in the context of default proceedings against the Iran Defendants, the *Burnett* Plaintiffs identified in Exhibit D-1 ask that the Court extend those awards

to The Taliban consistent with this Court's practice with regard to other defendants.[8] The Court's prior ruling, regarding the joint and several liability of The Taliban, applies with equal force to further final judgments by this Court on the default judgments of liability held by Plaintiffs who were also awarded monetary damages against the Iran Defendants. The extension of those prior judgments against the Iran Defendants to The Taliban, and entry of a final judgment pursuant to Rule 54(b) as to The Taliban, is both appropriate and the most efficient means of safeguarding the Plaintiffs' rights.

Furthermore, Plaintiffs submit that, under the express terms of the ATA, they "*shall* recover threefold the damages" awarded. *See* 18 U.S.C. § 2333(a) (emphasis added). The trebling of the damages award in these circumstances is mandated by the use of the world "shall". *See United States v. Kahn,* 5 F.4th 167, 174 (2d Cir. 2021) (holding "[t]he word 'shall,' in a statute, indicates a command; what follows the word 'shall' is 'mandatory, not precatory'"). Therefore, Plaintiffs submit that each of the values awarded for compensatory damages should be trebled to accord with the mandatory trebling language in the ATA. A separate column is included on Exhibit D-1 indicating the final judgment after trebling of the damages values.

Based on recent events, specifically, the recent sudden collapse of the Government of Afghanistan, entry of a final monetary judgment is important to protect Plaintiffs' rights as to the potentially available assets of the designated foreign terrorist organization The Taliban. As the Court has already ruled on these matters in multiple instances as to similarly situated defendants, to avoid any potential prejudice to their rights and interests, the *Burnett* Plaintiffs, identified in Exhibit D-1, respectfully request the Court's prompt attention to this administrative request.

---

[8] *See, e.g.* ECF No. 2582 (extending *Federal Insurance's* damages assessment against Al Qaeda at ECF No. 2502 to Hezbollah); ECF No. 2623 (extending *Havlish* damages assessment against Iran to defaulting Non-Sovereign Defendants.

**III.     Plaintiffs on Exhibits C-1, C-2, and D-3 seek the establishment of a streamlined process for the Court to address their claims for default damages as to The Taliban**

Plaintiffs on Exhibits C-1 and C-2 require special attention because they have existing liability defaults against The Taliban but no judgment against the Iran Defendants, and their damages values are more factually determined on a case-by-case basis than those wrongful death and standard solatium cases. Plaintiffs on Exhibit C-1 are Plaintiffs with an existing default liability judgment against The Taliban who nevertheless require the Court to address damages on their claims in the first instance as their claims arise from personal injuries sustained as a result of the terrorist attacks on September 11, 2001 and no damage assessment has been previously conducted. Plaintiffs on Exhibit C-2 are Plaintiffs seeking to be recognized as the functional equivalent of a close family member of a 9/11 decedent including, but not limited to, fiancés, domestic partners, stepchildren, stepsiblings, stepparents, and so forth. In the situation of each of these groups of Plaintiffs, Court intervention is needed to address their claims to allow them to obtain default damages judgments as to The Taliban going forward.

With regard to the personal-injury claimants on Exhibit C-1, the Court has established a mechanism for addressing the claims of personal-injury claimants for damages within the context of judgments sought against the Iran Defendants. *See* ECF No. 5879 (Judge Netburn's Report and Recommendation addressing the first set of motions for personal-injury damages against the Iran Defendants establishing the Court's parameters for such judgments); 5946 (Judge Daniels' Order endorsing Judge Netburn's approach as set forth in the Report and Recommendation). Given the number of claims and variety of manners in which these claims arise, Plaintiffs seek the Court's direction on how to proceed on these claims. The Plaintiffs' Executive Committee for Personal Injury and Death Claims submitted a letter to the Court on November 28, 2019 when the U.S.

Victims of State Sponsored Terrorism Fund was expanded to incorporate claims of individuals who were previously compensated through the September 11 Victim Compensation Fund of 2001. *See* ECF No. 5315. In that letter, the PEC proposed a number of possibilities including the appointment of a Special Master or having the Court address test cases in an effort to minimize the burden on the Court and to streamline the process. A complicating factor in this analysis is that these personal-injury claims incorporate the claims of those injured on September 11, 2001 along with those injured in the aftermath of the attacks on September 11, 2001 (those diagnosed with cancers, PTSD, respiratory damage, and other injuries due to toxic World Trade Center dust exposure). This issue is flagged for the Court's consideration because these Plaintiffs continue to pursue their claims within this MDL and ask to be heard on their claims for damages—especially in light of the current potential availability of collectible assets for The Taliban as a result of the freeze of assets held by Da Afghanistan Bank in certain accounts at the Federal Reserve Bank of New York. *See, e.g.,* ECF No. 7390.

Similar to the Plaintiffs on Exhibit C-1, the Plaintiffs on Exhibit D-3 are also personal-injury Plaintiffs for whom no judgment has been obtained to date against the Iran Defendants. The Plaintiffs on Exhibit D-3 differ to the extent that they are not expressly included on Exhibit A. The 2006 Order included the names of all real parties in interest asserting claims in the litigation whose claims were included in the default judgment, but it also included language that would incorporate future-filed claims in the litigation. Plaintiffs Third Amended Complaint, which was filed on November 22, 2002 in the U.S. District Court for the District of Columbia (Case No. 02-1616) prior to this case's transfer to the Southern District of New York by the Judicial Panel on Multidistrict Litigation, included the following in the caption listing Plaintiffs in the case: "ADDITIONAL PLAINTIFFS #1 THRU #5,000 (AP200 thru AP5,200)." *See* ECF No. 29, Case

No. 1:02-cv-01616-JR (D.D.C.), at 189. This listing of "additional plaintiffs" was also included in the 2006 Order. Plaintiffs submit that this set-aside language for additional plaintiffs foresaw the inclusion of additional claims going forward, and, in fact, additional claims were filed in this case even beyond the entry of the default judgment as set forth in Exhibits D-1, D-2, and D-3. Plaintiffs submit that the Plaintiffs included on these three exhibits are, effectively, included in the 2006 Order based on the inclusive language in the Plaintiff list accompanying the original 2006 default judgment. For purposes of this section, the Plaintiffs on Exhibit D-3 require the Court to address damages on their claims in the first instance as their claims arise from personal injuries sustained as a result of the terrorist attacks on September 11, 2001 and no damage assessment has been previously conducted. Therefore, they seek the same relief as the Plaintiffs included on Exhibit C-1. With regard to the functional-equivalent claims Plaintiffs on Exhibit D-2, the Court has also established a mechanism for addressing those claims that is case-specific within a defined set of parameters. *See* ECF Nos. 3363 and 3676. Plaintiffs submit that referral to a Special Master may provide the most efficient manner of addressing these claims while not burdening the Court with the requirement to engage in a case-by-case determination of these claims. also seek to be heard by the Court as they are Plaintiffs within the MDL; however, their claims had not yet been filed with the Court at the time that the 2006 Order was entered. While Plaintiffs submit that these claims should be included in the default liability judgment by virtue of the inclusion of certain groups of "Doe" entries included in Plaintiffs' Third Amended Complaint that were incorporated in the list of Plaintiffs included in the default liability judgment (page 48 of Plaintiffs' original Exhibit A appended to their request for entry of default includes an entry stating "ADDITIONAL PLAINTIFFS #1 THRU #5,000 (AP200 thru AP5,200)"), should the Court disagree, Plaintiffs submit that they should be permitted to append the liability judgment with those Plaintiffs who are

currently Plaintiffs within this MDL in this case who were not initially included either by their name on through the real party in interest for their claim. A subset of these Plaintiffs have already obtained a partial final default judgment as to the Iran Defendants, while others have not. To the extent that these plaintiffs have obtained prior judgments against Iran, they are identified on Exhibit D-1, along with the value of the judgment. To the extent that no judgment has yet been entered, Plaintiffs have included on Exhibit D the value of the putative judgment for each Plaintiff based on their relationship to the 9/11 decedent, or, in the case of 9/11 decedents, with the pain-and-suffering damages value included.

### IV. In the alternative, a means of appending the liability judgment against The Taliban should be adopted to allow the inclusion of the claims appearing on Exhibits D-1, D-2, and D-3 to be awarded damages judgments against The Taliban

As set forth in Sections I-III, *supra.*, Plaintiffs submit that those Plaintiffs included on Exhibits D-1 and D-2 should be included now in any default damages judgment entered against The Taliban, and Plaintiffs on Exhibit D-3 should be including in assessing a mechanism to establish personal-injury damages for their claims. In the alternative, should the Court refuse to include them within the inclusive language from the original default liability judgment as additional plaintiffs included by virtue of the caption "ADDITIONAL PLAINTIFFS #1 THRU #5,000 (AP200 thru AP5,200)", these Plaintiffs seek to be heard by the Court. While they may not have been Plaintiffs on April 7, 2006, they are Plaintiffs within the MDL now. These Plaintiffs seek leave of the Court to append the liability judgment with those Plaintiffs who are currently Plaintiffs within this MDL in this case who were not initially included either by their name on through a real party in interest for their claim. A subset of these Plaintiffs have already obtained a partial final default judgment as to the Iran Defendants (Exhibit D-1), while others have not (Exhibits D-2 and D-3). To the extent that these plaintiffs have obtained prior judgments against Iran, they are identified on Exhibit D-1, along with the value of the judgment. To the extent that

no judgment has yet been entered, Plaintiffs have included on Exhibit D-2 the value of the putative judgment for each Plaintiff based on their relationship to the 9/11 decedent, or, in the case of 9/11 decedents, with the pain-and-suffering damages value included. Therefore, in the alternative, Plaintiffs on Exhibits D-1 and D-2 seek the prompt adoption of a mechanism by which they may be added to the current default judgment as to liability against *inter alia* The Taliban to allow the entry of damages judgments consistent with the values set forth in Exhibits D-1 and D-2.

### V. Prejudgment Interest

On the issue of prejudgment interest, this Court previously ruled that the rate of prejudgment interest of 4.96 percent interest per annum compounded annually was appropriate. *See, e.g.,* ECF No. 3384 at 6. Accordingly, the *Burnett* Plaintiffs identified in Exhibits B-1, B-2, D-1, and D-2 ask that this Court direct that prejudgment interest of 4.96 percent, compounded annually,be awarded on their awards running from September 11, 2001.

### VI. Plaintiffs seek to reserve their rights to seek economic damages, punitive damages, or other damages at a later time to the extent appropriate, but trebling under the ATA should be applied

As has been the practice of the Court in addressing many of the motions for default judgments, Plaintiffs herein seek the Court's permission to apply for economic damages, punitive damages, or other damages later, consistent with any applicable future rulings and to supplement the record as part of applications for those damages. This relief was recently granted to the Latent Injury Plaintiffs by the Court, and Plaintiffs seek to retain the ability to seek such other damages as are appropriate at a later time to the extent they are not addressed in this motion. Notwithstanding the deferral of the Court's determination of economic damages, punitive damages, or other damages until a later time, Plaintiffs submit, as set forth in Section I, *supra.,* the Court should treble each compensatory-damages judgment in accordance with the mandatory language of 18 U.S.C. § 2333(a) ("shall recover threefold the damages he or she sustains and the

cost of the suit, including attorney's fees"). While Plaintiffs would defer damages for the cost of suit and attorney's fees to a later date, they believe that trebling of the compensatory-damages award in this context would be appropriate.

### VII.     Proposed Order

For the Court's convenience and consideration, a proposed form of Order, extending the prior rulings regarding partial final judgments in *Burnett et al. v. The Islamic Republic of Iran et al.,* is being provided to the Court. The proposed Order tracks the language of the 2006 Order, including against The Taliban, and July 31, 2017 Order directing entry of final judgment against the Iran Defendants.

## CONCLUSION

For the foregoing reasons, Plaintiffs submit that the Court should enter a judgment awarding default damages judgments for the Plaintiffs included on Exhibits B-1, B-2, D-1, and D-2 against defaulting Defendant The Taliban in the values set forth in those exhibits including the trebling of damages. Plaintiffs further request that an expedited procedure be initiated to address the damages claims of the Plaintiffs included on Exhibits C-1, C-2, and D-3. To the extent the Court denies the immediate relief of the Plaintiffs included on Exhibits D-1, D-2, and D-3, Plaintiffs request that the Court initiate a procedure to incorporate the claims of these Plaintiffs under the 2006 Order against *inter alia* The Taliban to permit them to seek and obtain default judgments as to damages against The Taliban.

Dated: April 7, 2022

Respectfully submitted,

MOTLEY RICE LLC

*/S/ John M. Eubanks*
John M. Eubanks, Esq.
Jodi Westbrook Flowers, Esq.
Robert T. Haefele, Esq.
Jade Haileselassie, Esq.
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Tel: (843) 216-9000
Fax: (843) 216-9450
Email: jeubanks@motleyrice.com