**SHER TREMONTE LLP**

April 25, 2022

**BY ECF**

The Honorable George B. Daniels
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *In re Terrorist Attacks on September 11, 2001,* Case No. 03-md-1570 (GBD)(SN)
      *In re Approximately $3.5 Billion of Assets on Deposit at the Federal Reserve Bank of New York in the Name of Da Afghanistan Bank*, Case No. 22-cv-03228 (GBD)

Dear Judge Daniels:

We write on behalf of the Wodensheks ("Class Plaintiffs") concerning the Court's April 21, 2022 Order (the "Order") to (1) address the propriety of Class Plaintiffs' filing of their April 20, 2022 limited fund Rule 23(b)(1)(B) Class Action Complaint (the "Class Complaint" or "Class Action") and their seeking to relate the Class Action to the *Owens* action, and (2) respectfully request that the Court clarify certain aspects of the Order during tomorrow's conference.

*The Class Action*

Class Plaintiffs' sole goal in filing the Class Action was to ensure that a single court has jurisdiction over the entire $3.5 billion in Da Afghanistan Bank funds (the "DAB Assets") and to establish a clear mechanism for that court to provide for an equitable distribution of the funds to all victims of Taliban terrorism. Class Plaintiffs requested a temporary restraining order and a preliminary injunction to protect the DAB Assets from dissipation prior to adjudication of the Class Complaint. To understand why a limited fund class action is necessary, and to explain why Class Plaintiffs sought to relate the Class Action to the *Owens* action, we provide a brief summary of the DAB Assets' recent but complex history.

On February 11, 2022, President Biden issued an extraordinary Executive Order unexpectedly announcing that the availability of $3.5 billion of the DAB Assets to satisfy terrorism claims should be adjudicated by the courts. Shortly thereafter, the *Havlish* Plaintiffs moved to lift the stays on judicial enforcement of the execution of their and the *Doe* Plaintiffs' August 2021 writs of execution. Five days later, on February 16, the Court accepted *Does 1 through 7 v. The Taliban* as related to the MDL, notwithstanding that the underlying claims do not arise out of the 9/11 Attacks. The Court explained it did so

because the *Doe* Plaintiffs possess a compensatory damages judgment against the Taliban.[1] That same day, "157 U.S. Government employees killed or injured in the August 7, 1998, Al Qaeda bombings of the U.S. Embassies in Nairobi, Kenya and Dar-es-Salaam, Tanzania, their family members, and the personal representatives of their estates" (the "*Amduso* Intervenors") moved to intervene in the 9/11 MDL and the *Doe* action "for the purpose of defending an interest in" the DAB Assets (the "Amduso Motion").[2]

On February 22, 2022, Magistrate Judge Netburn presided over a hearing at which counsel for the United States and the *Havlish*, *Doe*, *Ashton*, *O'Neill*, and *Federal Insurance* Plaintiffs, among others, apprised the court of their respective positions on lifting the stays.[3] Counsel for the *Ashton* Plaintiffs urged the Court to exercise its equitable powers to ensure fair treatment of all 9/11 MDL plaintiffs.[4] Judge Netburn, however, expressed skepticism even as to the *Ashton* Plaintiffs' standing[5] "to challenge the procedural mechanism by which the *Havlish* and *Doe* [P]laintiffs seek to proceed on their execution"[6] because the *Ashton* Plaintiffs (and others) did not yet have liquidated damages judgments.[7] Judge Netburn also suggested that she was likely bound to apply New York's standard priority rules—though their application would result in grossly inequitable treatment amongst 9/11 families.[8] Later that day, the Court issued an Opinion and Order denying the Amduso Motion,[9] reasoning that because the *Amduso* Intervenors had neither a judgment against the Taliban nor an attachment of the DAB Assets, "they ha[d] no interest in [the 9/11 MDL]."[10]

Shortly thereafter, on March 8, 2022, plaintiffs in the *Owens* action—individuals allegedly injured or killed in the same U.S. Embassy bombings of which the *Amduso* Intervenors were victims—filed a complaint seeking to extend compensatory damages claims they previously obtained against others to the Taliban, along with an emergency

---

[1] *Does 1 through 7 v. The Taliban*, 20-mc-740 (S.D.N.Y. Feb. 16, 2022), ECF 54.

[2] *In re Terrorist Attacks on September 11, 2001*, 03-md-1570 (S.D.N.Y. Feb. 16, 2022), ECF 7676-2.

[3] *Ashton v. Al Qaeda Islamic Army et al.*, 02-cv-6977 (S.D.N.Y.), Feb. 22, 2022 Hr'g Tr.

[4] *Ashton v. Al Qaeda Islamic Army et al.*, 02-cv-6977 (S.D.N.Y.), Feb. 22, 2022 Hr'g Tr. at 27:9-10.

[5] And, by extension, the standing of any 9/11 MDL plaintiffs with pending motions for confirmation of damages awards.

[6] *Ashton v. Al Qaeda Islamic Army et al.*, 02-cv-6977 (S.D.N.Y.), Feb. 22, 2022 Hr'g Tr. at 24:20-23; 25:17-26:2.

[7] The first *Ashton* motion for such damages on behalf of 580 estates and survivors of 9/11 victims in the same amounts as previously awarded to them against co-defendant Iran have been pending before this Court since December 20, 2021. *In re Terrorist Attacks*, 03-md-1570 (S.D.N.Y. Dec. 20, 2021), ECF 7489 *et seq.*

[8] *See Ashton v. Al Qaeda Islamic Army et al.*, 02-cv-6977 (S.D.N.Y.), Feb. 22, 2022 Hr'g Tr. at 27:17-28:5.

[9] *In re Terrorist Attacks*, 03-md-1570 (S.D.N.Y. Feb. 22, 2022), ECF 7696; *Doe*, 20-mc-740 (S.D.N.Y. Feb. 22, 2022), ECF 60.

[10] *In re Terrorist Attacks*, 03-md-1570 (S.D.N.Y. Feb. 22, 2022), ECF 7696; *Doe*, 20-mc-740 (S.D.N.Y. Feb. 22, 2022), ECF 60.

motion seeking prejudgment attachment against the DAB Assets.[11] That action was assigned to Judge Caproni the following day.

Anticipating complications all but certain to arise with judgment enforcement proceedings against the DAB Assets occurring contemporaneously in two different courts, the Wrongful Death and Commercial Claims PECs—including counsel for Class Plaintiffs—filed a letter motion in the MDL and *Owens* action requesting a stay of the *Owens* Plaintiffs' attachment motion and for *Owens*'s acceptance by the MDL "for consolidated judgment enforcement proceedings against the Taliban" so that such proceedings could "continue in a coordinated fashion."[12] Judge Netburn denied the PECs' request the following day, distinguishing the MDL's acceptance of the *Doe* action from its rejection of the *Owens* action on the grounds that, although the *Owens* Plaintiffs had moved for an order of attachment against the same DAB Assets subject to then-stayed writs of execution possessed by the *Doe* and *Havlish* Plaintiffs, the *Owens* Plaintiffs had neither a judgment against the Taliban nor an attachment order, so the *Owens* action was too "legally and factually distinct" for there to be "efficiencies . . . gained through their consolidation."[13]

Such distinctions became irrelevant, however, when Judge Caproni granted the *Owens* Plaintiffs' motion for prejudgment attachment as to approximately $1.3 billion of the $3.5 billion in DAB Assets.[14] In a subsequent Opinion and Order strictly applying New York rules, Judge Caproni reasoned that the only question was "whether [the *Owens*] Plaintiffs have proven a need to secure" those DAB Assets not already subject to the *Doe* and *Havlish* Plaintiffs' writs.[15] Judge Caproni acknowledged that "<u>establishing priority over other creditors is clearly a motivating factor</u> behind Plaintiffs' motion," referring to the *Doe* and *Havlish* Plaintiffs, but concluded that because the statutory grounds for prejudgment attachment are met, the court was compelled to grant the relief.[16] A day prior, on March 20, 2022, the *Havlish* and *Doe* Plaintiffs moved for partial turnover of the DAB Assets in the combined amount of approximately $2.22 billion.[17]

Accordingly, since March 21, 2022, if strict priority rules are applied, the DAB Assets have been spoken for in their entirety. And, notwithstanding the PECs' and others' efforts to bring the *Doe*, *Havlish*, and *Owens* Plaintiffs together into a single proceeding, judgment enforcement efforts as to the DAB Assets continue across both the 9/11 MDL

---

[11] *Owens v. Taliban*, 22-cv-1949 (S.D.N.Y. Mar. 8, 2022), ECF 1, 4-6; *id.* (Mar. 9, 2022), ECF 7 (refiled complaint).

[12] *In re Terrorist Attacks*, 03-md-1570 (S.D.N.Y. Mar. 14, 2022), ECF 7751.

[13] *In re Terrorist Attacks*, 03-md-1570 (S.D.N.Y. Mar. 15, 2022), ECF 7754. Judge Netburn's decision was also strongly informed by interbranch comity concerns and the need to unencumber certain DAB assets subject to attachment in the MDL and *Doe* actions, issues not implicated by the *Owens* action. *Id.* at 2-3.

[14] *Owens*, 22-cv-1949 (S.D.N.Y. Mar. 21, 2022), ECF 33.

[15] *Owens*, 22-cv-1949 (S.D.N.Y. Apr. 11, 2022), ECF 38 at 11-12.

[16] *Owens*, 22-cv-1949 (S.D.N.Y. Apr. 11, 2022), ECF 38 at 12 (emphasis added).

[17] *In re Terrorist Attacks*, 03-md-1570 (S.D.N.Y. Mar. 20, 2022), ECF 7763–71.

and *Owens* action. Further, in the course of these proceedings, both this Court and the *Owens* court suggested that they are bound by ordinary New York priority rules. Consequently, Class Plaintiffs reasonably believe that a limited fund class action, which gives a single court jurisdiction over all DAB Assets and requires their equitable distribution, is the proper, and indeed, necessary, mechanism for ensuring fair treatment of all victims of Taliban terrorism—not just in this MDL but in the *Owens* action too.[18] State priority rules did not contemplate and have no application to the extraordinary situation here. Victims of mass terror attacks suffering common losses (the deaths of their loved ones) and holding common liability judgments should not be denied their right to a fair share of a limited fund (should the DAB Assets be available to satisfy judgments against the Taliban) based on the sequence in which damages judgments are issued by an MDL court.[19]

As for relating the Class Action to *Owens* rather than the MDL, the *Owens* court recently imposed a judicial restraint on approximately one-third of the DAB Assets. Class Plaintiffs certainly do not intend to undermine either court's jurisdiction; rather, Class Plaintiffs simply seek to have all issues related to the limited DAB Assets adjudicated by a single court. Further, Class Plaintiffs were entirely transparent and immediately alerted both courts to the Class Action's filing.[20]

*Request for Clarification*

Lastly, Class Plaintiffs respectfully request that during tomorrow's conference, the Court clarify the following issues related to the Order:

1. The Order denies Plaintiffs' request for a temporary restraining order, but does not specifically address the request for a preliminary injunction. Is it the Court's intent that the Order also deny Plaintiffs' request for a preliminary injunction pursuant to the All Writs Act?

2. The Order states, "Any claims arising out of the MDL, and arguably related to the distribution of the DAB assets, shall be heard in the pending turnover proceedings within the context of the MDL." Is it the intent of the Court that the Order summarily dismisses the Class Complaint?

3. How does the Court propose to use the turnover proceedings (rather than the Class Action) to adjudicate all claims related to the distribution of the

---

[18] Class Plaintiffs' equity concerns are not limited to the MDL. It would be profoundly inequitable should the *Owens* Plaintiffs receive $1.3 billion of the DAB Assets while thousands of terror victims with claims against the Taliban who are not members of the *Havlish* and *Doe* Plaintiffs are all but certain to recover either very little or nothing from the DAB Assets.

[19] If strict priority rules apply, the Court has already determined which party is next in line by granting *Federal Insurance* Plaintiffs' motion for partial final default judgment against the Taliban. *See In re Terrorist Attacks*, 03-md-1570 (S.D.N.Y. Apr. 6, 2022), ECF 7833.

[20] *In re Terrorist Attacks*, 03-md-1570 (S.D.N.Y. Apr. 20, 2022), ECF 7892 (attaching Complaint); *Owens*, 22-cv-1949 (S.D.N.Y. Apr. 20, 2022), ECF 39 (same).

4

DAB Assets given that *Owens* is not part of the MDL and given that more than one-third of the DAB Assets are subject to attachment by the *Owens* court?

Respectfully submitted,

| KREINDLER LLP | SHER TREMONTE LLP |
|---|---|
| */s/ Megan Benett* | */s/ Theresa Trzaskoma* |
| Megan Benett | Theresa Trzaskoma |

cc:    Judge Valerie E. Caproni (by ECF in *Owens*)