April 25, 2022

VIA ECF

The Honorable George B. Daniels
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

The Honorable Sarah Netburn
United States Magistrate Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *In re Terrorist Attacks on September 11, 2001*, No. 03-md-1570 (GBD) (SN)
      *Havlish, et al., v. Bin-Laden, et al.*, No. 03-cv-9848 (GBD) (SN)

Dear Judges Daniels and Netburn:

On behalf of Judgment Creditors Fiona Havlish, *et al.* (the "Havlish Creditors"), and the O'Neill, Burnett, Hoglan, Federal Insurance, Ray, Ryan and Grazioso plaintiffs (collectively, the "Framework Agreement Plaintiffs"), we write in advance of tomorrow's conference before Judge Daniels.

**The Turnover Proceedings**

As the Court is aware, turnover motions (the "Turnover Motions") have been filed by the Havlish Creditors and John Does 1 through 7 (the "Doe Creditors") pertaining to Da Afghanistan Bank ("DAB") assets held at the Federal Reserve Bank of New York (the "DAB Assets"). The Federal Insurance Creditors are in the process of joining the pending turnover proceedings. An opposition to the Turnover Motions was filed by the Ashton plaintiffs on April 20, 2022. That opposition will be fully addressed by Wednesday, April 27, 2022.

The Havlish and Doe Creditors served DAB on March 21, 2022 by personally serving Dr. Shah Mehrabi, a U.S.-based member of DAB's Supreme Council. *See* Dkts. 7776, 7777. The Havlish and Doe Creditors have also completed various forms of alternate and supplemental service as authorized by Judge Netburn's April 5, 2022 Opinion and Order. *See* Dkt. 7830. The Havlish Creditors have now served DAB by email and Twitter, and served the Taliban by Twitter (via four of its officials and spokespersons). *See* Dkt. 7904. The Doe Creditors' service via electronic means is also progressing. *See* Dkt. 7910. The Havlish and Doe Creditors' joint service by publication in the *New York Times* and *Al-Quds al-Arabi* is also underway, with the first

April 25, 2022
Page 2

publication expected tomorrow. The Havlish and Doe Creditors expect service by publication (and thus all alternate service) to be completed by mid-May.

The Havlish Creditors also note the motions for leave to file several amicus briefs in connection with the Turnover Motions. *See* Dkt. 7823 (Women's Forum on Afghanistan); Dkt. 7896 (Afghan Civil Society Organizations); Havlish Dkt. 617 (Unfreeze Afghanistan); Dkt. 7899 (Peaceful Tomorrows); Dkt. 7903 (Nasser Faiq). The Havlish Creditors may wish to respond to those briefs if the motions for leave are granted, and, therefore, seek a Court-ordered schedule by which to do so.  For the sake of judicial efficiency and closure, the Havlish Creditors propose that (1) the Court set a deadline of May 6, 2022 by which all amicus briefs regarding the Turnover Motions shall be filed; and (2) the Court permit the Havlish and Doe Creditors to respond, if they elect to do so, to any such briefs by June 3, 2022. The Doe Creditors are in agreement with this briefing schedule, should the Court allow amici.

### **The Framework Agreement**

The Havlish Creditors obtained an enforceable money judgment against the Taliban on October 16, 2012 and issued a writ of execution to the Federal Reserve Bank of New York ("FRBNY") on August 27, 2021.  The Doe Creditors obtained an enforceable money judgment against the Taliban on December 14, 2020 and issued a writ of execution to the FRBNY on September 27, 2021.  Finally, the Federal Insurance Creditors obtained an enforceable money judgment against the Taliban on April 6, 2022 and issued a writ of execution to the FRBNY on April 20, 2022.  The compensatory damages still outstanding on the Havlish, Doe, and Federal Insurance Creditors' judgments collectively exceed the entire $3.5 billion in blocked DAB Assets held by the FRBNY.

At the direction of Judge Netburn, the MDL plaintiffs have met and conferred on an intensive basis since late February in order to try to resolve issues pertaining to the distribution of funds should the Court grant the Turnover Motions.[1]  Out of the entire 9/11 community, only the Ashton plaintiffs (who include the Wodenshek plaintiffs) have objected to the Framework Agreement governing the distribution of the DAB Assets in the event the Court grants turnover. As described in previous communications to the Court, the Framework Agreement among the Havlish Creditors, the Federal Insurance Creditors, the Burnett Plaintiffs, the O'Neill Plaintiffs, the Hoglan Plaintiffs, the Ray Plaintiffs, the Ryan Plaintiffs, and the Grazioso Plaintiffs contemplates the contribution of substantial funds by the Havlish Creditors and the Federal Insurance Creditors for distribution to the broader 9/11 community assuming certain conditions are met.  *See* Dkt. 7790.  By our estimate, counsel representing more than 9,400 9/11 plaintiffs participating in the MDL have agreed to the Framework Agreement.

### **Wodenshek Action**

The Ashton plaintiffs are the only members of the 9/11 MDL community who have opposed the Framework Agreement.  They argue that the Framework Agreement is unfair, despite

---

[1] *See* Dkt. 7713 at 34 (transcript of February 22, 2022 conference before Judge Netburn).

April 25, 2022
Page 3

the fact that every other 9/11 plaintiff group has concluded otherwise. On April 20, 2022, the deadline for any 9/11 MDL plaintiff to oppose the Turnover Motions, *see* Dkt. 7750, the Ashton plaintiffs filed a brief in opposition to the Turnover Motion, and their counsel simultaneously initiated a putative class action (the "Wodenshek Action").[2] *See In re Approximately $3.5 Billion of Assets on Deposit at the Federal Reserve Bank of New York in the Name of Da Afghanistan Bank*, No. 22-cv-03228 (GBD) (SN). Through the Wodenshek Action, counsel for the Ashton plaintiffs seek to circumvent long-established New York law governing the enforcement of judgments and ask to be appointed lead class counsel so they can control the disposition of the same DAB assets that are already subject to the Turnover Motions. And, they seek to do all of that without a judgment that gives them legal authority to execute against the DAB Assets. The Court has already related the Wodenshek Action to the MDL and denied the plaintiffs' emergency request to enjoin resolution of the Turnover Motions. *See* Dkt. 7900.

In compliance with Judge Netburn's March 14, 2022 scheduling order, Dkt. 7750, the Havlish and Doe Creditors intend to reply to the Ashton opposition brief by April 27, 2022. The Havlish Creditors, Doe Creditors, and the Framework Agreement Plaintiffs are prepared to address in due course the meritless Wodenshek class action complaint. We seek the Court's guidance in how to proceed in that regard because, among other considerations, the Wodenshek complaint names no Defendants, yet seeks to control the distribution of the blocked DAB assets, and the Wodenshek plaintiffs lack a judgment against any party relevant to the disposition of the DAB Assets, which suggests they may lack standing. The Havlish Creditors, the Doe Creditors, and the Framework Agreement Plaintiffs can address these and other fatal deficiencies in the Wodenshek complaint if and when the Court deems it necessary and appropriate. Regardless of how the Court proceeds with respect to the Wodenshek Action, the Havlish Creditors, the Doe Creditors and the

---

[2] The court rejected the Wodenshek plaintiffs' attempt to relate their putative class action to *Owens v. Taliban*, No. 22-cv-1949-VEC (S.D.N.Y.). While the Wodenshek plaintiffs claim that Judge Caproni's entry of a prejudgment attachment order in *Owens* frustrates the Framework Agreement, that is not so. Because they lack a judgment and have not yet served their complaint, the Owens plaintiffs will be unable to execute on the DAB Assets any time soon. Judge Caproni noted *sua sponte* that statute of limitations problems infect the Owens plaintiffs' claims, given that their complaint was filed almost 24 years after the relevant terrorist attacks. *See* Owens Dkt. 34 at 6 (transcript of March 28, 2022 hearing). The pre-judgment order of attachment also appears contrary to controlling law. This is because the order permits pre-judgment attachment against the DAB Assets—assets which have been blocked by the President pursuant to his authority under IEEPA. *See* Exec. Order No. 14,064 § 1(a), 87 Fed. Reg 8391 (Feb. 11, 2022) (DAB assets may not be transferred or dealt with in any way). Blocked assets are not subject to orders of attachment. *See, e.g.*, 31 C.F.R. § 594.312 ("The term *transfer* . . . shall include . . . the issuance, docketing, filing, or levy of or under any judgment, decree, attachment, injunction, execution, or other judicial or administrative process or order, or the service of any garnishment[.]"). While TRIA creates a narrow exception for writs of execution against blocked assets, the Second Circuit has squarely held that this exception is not available to litigants, like the *Owens* plaintiffs, without enforceable final judgments. *Smith v. Federal Rsrv. Bank of N.Y.*, 346 F.3d 264, 271 (2d Cir. 2003).

April 25, 2022
Page 4

Framework Agreement Plaintiffs believe that Action should not impact the Court's adjudication of the turnover proceedings.

      We look forward to the opportunity to address these and any other issues as the Court may desire.

Respectfully submitted,

/s/ Lee Wolosky
Lee Wolosky
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1628
lwolosky@jenner.com

Douglass A. Mitchell *(pro hac vice)*
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 639-6090
dmitchell@jenner.com

*Counsel for Judgment Creditors Fiona Havlish, et al.*

cc: All counsel of record (by ECF)