UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Case No. 03-md-1570 (GBD)(SN) |
| ESTATE OF ALICE HOGLAN, BY ITS PERSONAL REPRESENTATIVE CANDYCE S. HOGLAN, ET AL.,<br><br>     Plaintiffs-Judgment Creditors,<br><br>*v.*<br><br>OAKTREE CAPITAL MANAGEMENT, LP; FLEETSCAPE CAPITAL HOLDINGS LIMITED; AND FLEETSCAPE SUEZ RAJAN LLC;<br><br>     Garnishees. | Case No. 11-cv-7550 (GBD)(SN) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE
HOGLAN CREDITORS' MOTION FOR TURNOVER OF ASSETS FROM
GARNISHEES OAKTREE CAPITAL MANAGEMENT, LP, FLEETSCAPE CAPITAL
HOLDINGS LIMITED, AND FLEETSCAPE SUEZ RAJAN LLC**

## **TABLE OF CONTENTS**

I. CPLR § 5225 Proceedings Are Plenary and Allow for Discovery and a Hearing ..............2

II. The Motion Sufficiently Alleges Personal Jurisdiction .......................................................3

III. The Motion Sufficiently Alleges Respondents' Possession or Custody.............................5

IV. The Motion Sufficiently Alleges the Judgment Debtors' Interest in the Cargo .................7

V. TRIA Applies to Extraterritorial Assets ............................................................................8

CONCLUSION...............................................................................................................................10

The Hoglan Creditors initiated this turnover proceeding by way of a motion, a procedure endorsed by the Second Circuit. They did so on an exigent basis, given reports that the Suez Rajan was traveling to China "for orders" and that its cargo of illicit Iranian crude oil could quickly be placed beyond the reach of this or any U.S. court. They had no time for discovery and had received no response to a letter and restraining notice sent to OCM two weeks prior. Dkt. 7723 ("Mitchell Decl."), Ex. 2. To the extent Respondents' opposition has put material facts in dispute, the Hoglan Creditors are prepared to conduct additional discovery and, if warranted, an evidentiary hearing.

In opposing the motion, Respondents correctly observe that CPLR § 5225 motions are evaluated using the familiar summary judgment standard. *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 473 (2d Cir. 2018). But the law is equally clear that additional proceedings are warranted when there are disputed issues of fact. *Id*. As the leading New York treatise notes, although CPLR special proceedings approximate the "ease, speed, and economy of a mere motion," David D. Siegel, *New York Practice* § 547 (6th ed. 2021), a turnover proceeding under § 5225 "is plenary and can try any fact issues arising between and among all those properly before the court," Siegel, *New York Practice* § 510.

Respondents dispute the motion's claims regarding (1) personal jurisdiction; (2) their "possession or custody" over the Suez Rajan and its cargo, and (3) the judgment debtors' ownership interest in the oil. On each of these issues, the Hoglan Creditors have presented evidence and allegations that are—at the very least—sufficient to merit further fact finding. Notably, Respondents have declined to participate meaningfully in discovery propounded after the commencement of this turnover proceeding, producing just a single document.[1] If the Court is not

---

[1] On March 11, 2022, the Hoglan Creditors served information and document subpoenas on Respondents pursuant to Fed. R. Civ. P. 69(a)(2) and N.Y.C.P.L.R. § 5224. See *EM Ltd. v. Republic of Argentina*, 695 F.3d 201 (2d Cir. 2012) ("[B]road post-judgment discovery in aid of execution is the norm in federal and New York state courts.").

prepared to grant their motion for turnover on the existing record, the Hoglan Creditors ask the Court to (1) grant the parties leave to exchange discovery for a period of 60 days to resolve or narrow remaining factual disputes, (2) permit the filing of supplemental briefs following discovery, and (3) if warranted at that point, hold an evidentiary hearing.

## I.     CPLR § 5225 Proceedings Are Plenary and Allow for Discovery and a Hearing

Turnover motions are treated like motions for summary judgment, and can be granted only absent disputed issues of material fact. *See HBE Leasing Corp. v. Frank*, 48 F.3d 623, 633 (2d Cir. 1995). Yet a court must "conduct a trial on disputed issues of fact on adverse claims in a turnover matter." *CSX*, 879 F.3d at 473 (citations omitted). Accordingly, courts often hold hearings to resolve disputed issues of fact in turnover proceedings. *See, e.g., Advanced Video Techs. LLC v. HTC Corp.*, 2019 WL 4198769, at *13-14 (S.D.N.Y. Aug. 12, 2019) (ordering an evidentiary hearing where the court did "not have enough evidence to assess" every issue); *Disney Enters., Inc. v. Finanz St. Honore, B.V.*, 2020 WL 489530, at *5 (E.D.N.Y. Jan. 30, 2020) (deferring ruling, directing parties to confer regarding discovery, and stating that "an evidentiary hearing may be necessary"); *Mitchell v. Lyons Pro. Servs., Inc.*, 109 F. Supp. 3d 555, 566 (E.D.N.Y. 2015) (discovery and trial necessary to resolve factual issues); *In re Gaming Lottery Sec. Litig.*, 2000 WL 1801840, at *1 (S.D.N.Y. Dec. 7, 2000) (ordering hearing to determine personal jurisdiction and merits); *Universitas Educ., LLC v. Nova Grp., Inc.*, 2014 WL 3883371, at *1 (S.D.N.Y. Aug. 7, 2014). Courts also allow discovery, including jurisdictional discovery, in a turnover proceeding. *See Disney*, 2020 WL 489530, at *5; *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 2013 WL 4647194, at *1 (S.D.N.Y. Aug. 29, 2013) (jurisdictional discovery).[2]

---

Although the subpoenas sought documents in five categories from each entity, the only document Respondents produced was the Bareboat Charter filed at Dkt. 7803-8.

[2]   *See Republic of Arg. v. NML Cap., Ltd.*, 573 U.S. 134, 139 (2014) (quoting CPLR § 5223) (CPLR "entitles judgment creditors to discover 'all matter relevant to the satisfaction of [a] judgment.'").

These cases bely the suggestion that the development of a factual record amounts to "unnecessary and unauthorized elaboration." Opp. at 7 (quoting *Gonzalez v. City of N.Y.*, 127 A.D.3d 632, 633 (1st Dep't 2015)). Neither *Gonzalez* nor the opinion it relied on, *Karr v. Black*, 55 A.D.3d 82, 86 (1st Dep't 2008), arose in a turnover proceeding. As set forth below, limited discovery is warranted in the following areas to resolve or narrow disputed factual contentions.

## II.     The Motion Sufficiently Alleges Personal Jurisdiction

The Hoglan Creditors have adequately set forth a *prima facie* case for personal jurisdiction based on the presence of OCM's offices, leadership, and business in NY, *see* Mitchell Decl. ¶¶ 14, 15; Fleetscape Holdings' office and business in NY (at least until recently) and ongoing use of a NY phone number to conduct business, *id*. ¶¶ 12, 17, 18; the public advertisement and promotion of that address and business, *id*. ¶¶ 12, 17; and the reasonable inference that, because Respondents were undisputedly engaged in a maritime business of which owning the Suez Rajan was part, at least some of that business took place in NY, *see* Mot. at 11. Respondents seek to avoid personal jurisdiction by insisting that neither FSR nor Fleetscape Holdings *currently* have offices or conduct business in NY. But they ignore the motion's evidence that Fleetscape Holdings has, or had until recently, a NY office that, to this day, is advertised in the premier maritime business directory. *See* Mitchell Decl. ¶ 17 (Lloyd's List directory showing Fleetscape Holdings' NY office address and phone number). This evidence is relevant because it makes it plausible that Respondents were transacting maritime business in NY during time periods relevant to this motion, including when FSR was established (Oct. 2020), when FSR purchased the vessel (Feb. 2021), and when FSR entered the Bareboat Charter (March 2021), *see* Graham Decl. ¶¶ 13-15; Dkt. 7803-7. Discovery will confirm whether there is an "articulable nexus" between Respondents' clear NY contacts and the turnover claim sufficient to confer jurisdiction. *See Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (N.Y. 2012).

Respondents' arguments about improper group pleading are both wrong and inapplicable. To begin with, the motion included jurisdictional allegations specific to OCM and Fleetscape Holdings as distinct entities. Mot. at 10-11. The motion also alleged that Fleetscape Holdings is an "alter ego" of OCM, given the near-total overlap in their employees and the fact that OCM created Fleetscape Holdings from funds it managed. *Id*. at 4, 11; Mitchell Decl. ¶¶ 9, 11. Respondents' opposition further makes clear that FSR—a subsidiary of both Fleetscape Holdings, *see* Graham Decl. ¶¶ 3-4, and OCM, *see* Supplemental Declaration of Douglass A. Mitchell ("Supp. Decl."), Ex. A—is also an alter ego of OCM. FSR, whose UCC filing uses OCM's address in Los Angeles, *see* Supp. Decl. Ex. B, was established as a Marshall Islands LLC in 2020, seemingly for the sole purpose of owning and leasing the Suez Rajan via the 2021 Bareboat Charter. *See* Graham Decl. ¶¶ 13-15; *In re Lyondell Chem. Co.*, 543 B.R. 127, 144-45 (Bankr. S.D.N.Y. 2016) (a "mere[] holding company" is likely an alter ego of its parent). This evidence supports the exercise of personal jurisdiction over each Respondent, because "jurisdiction over one company constitutes jurisdiction over its alter egos." *Am. Inst. of Certified Pub. Accts. v. Affinity Card, Inc.*, 8 F. Supp. 2d 372, 377 (S.D.N.Y. 1998); 4A Charles Alan Wright et al., *Federal Practice & Procedure* § 1069.4 (4th ed. 2022) (collecting cases conferring personal jurisdiction through subsidiaries, parents, alter egos, and other affiliated entities); *Hartshorne v. Roman Cath. Diocese of Albany*, 129 N.Y.S.3d 268, 282 (N.Y. Sup. Ct. 2020) (no violation of CPLR § 3016(b)'s group pleading rule where alter ego liability was sufficiently alleged).[3]

Additional information can be developed through discovery regarding: (1) OCM's and Fleetscape Holdings' NY business transactions, including whether and when Fleetscape Holdings vacated its NY office and what Suez Rajan-related business took place there; and (2) the extent to

---

[3] Notably, "[e]stablishing . . . personal jurisdiction over an alleged alter ego requires application of a less stringent standard than that necessary to pierce the corporate veil for purposes of liability." *Lyondell Chem*, 543 B.R. at 143.

which Respondents are alter egos of each other. *See* 4A Wright et al., § 1069.4 (imputing one entity's contacts to a related entity is an "extremely fact dependent" inquiry). At the very least, the Hoglan Creditors have made a "sufficient start" to merit discovery. *See Peterson v. Spartan Indus., Inc.*, 33 N.Y.2d 463, 466-67 (N.Y. 1974). Jurisdictional discovery

> protects the party to whom essential jurisdictional facts are not presently known, especially where those facts are within the exclusive control of the moving party. . . .[Where] the plaintiffs have made a sufficient start, and shown their position not to be frivolous[,] . . . [t]hey should have further opportunity to prove other contacts and activities of the defendant in New York as might confer jurisdiction under the long-arm statute[.]

*Id. See also* Hr'g Tr. at 11, 43, *E.I. Du Pont De Nemours v. Kolon Indus., Inc.,* No. 12 Civ. 8435 (S.D.N.Y. June. 12, 2012), ECF No. 77 (ordering jurisdictional discovery in turnover proceeding regarding "the nature and scope of [defendant's] contacts with New York" where claimants "made some showing with respect to jurisdiction in New York"). Because the Hoglan Creditors have made such a threshold showing, discovery is appropriate. *Blockchain Mining Supply & Servs. Ltd. v. Super Crypto Mining, Inc.*, 2020 WL 7128968, at *1 (S.D.N.Y. Dec. 4, 2020) (citation omitted).

### III.   The Motion Sufficiently Alleges Respondents' Possession or Custody

Respondents, who own the Suez Rajan, maintain that they could not be ordered to turn over its cargo because (1) the Bareboat Charter vests third-party charterers with control of the vessel, Graham Decl. ¶¶ 21-23, and (2) even if they controlled the vessel, such control is insufficient to constitute "possession or custody" under CPLR § 5225. *See N. Mariana Islands v. Canadian Imperial Bank of Com.*, 21 N.Y.3d 55, 57-58 (N.Y. 2013). The Charter notwithstanding, however, there are disputed issues of material fact regarding Respondents' "possession or custody" over the vessel and its cargo.[4] And in any event, as described below, the Hoglan Creditors are entitled to

---

[4] For the same reasons, there is a dispute of material fact regarding whether the Iranian oil aboard the Suez Rajan is a "blocked asset" under TRIA. *See* Opp. at 16, 21 (arguing the oil is not subject to U.S. jurisdiction, and thus not blocked, because "Respondents do not have possession, custody, or control" of the oil). Iranian oil need only be in the "control" of a U.S. person to be automatically blocked. *See* Exec. Order No. 13,599, 77 Fed. Reg. 6659 (Feb. 5,

5

turnover notwithstanding "possession or control" upon showing that Respondents are transferees of property of the judgment debtor and their interest is superior to that of Respondents.

First, the *Mariana Islands* case is distinguishable. That case precludes a finding of a parent company's "possession or custody" of assets on the basis of its "practical ability" to order a subsidiary to turn over assets that the parent company does not itself hold. *See Mariana Islands*, 21 N.Y.3d at 58. But no subsidiaries are involved here and Respondents have something far more than the would-be garnishee in *Mariana Islands*: undisputed ownership. OCM is the "group owner" of the Suez Rajan, and FSR—a subsidiary of OCM and Fleetscape Holdings—is its "registered owner." Mot. at 4-5; Graham Decl. ¶ 13.[5] Respondents can be ordered to turn over the subject property not because of a practical ability to cause a subsidiary to do something, but because they own the vessel. "Ownership implies the right to possess a thing, regardless of any actual or constructive control." *Ownership*, Black's Law Dictionary (11th ed. 2019); *see also Possession* (defined as "[s]omething that a person owns or controls"). Respondents thus retain possessory rights over the vessel even as it is chartered to another entity.[6]

And this is affirmed by the Bareboat Charter itself, which provides that the sanctions violations at issue here involving illicit Iranian crude oil constitute a "Termination Event," and that Respondents thus do, in fact, retain decision-making authority over custody and possession of

---

2012) ("property and interests in property of the Government of Iran" that "are or hereafter come within the possession or control of any United States person … are blocked"); *Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107, 137 (2d Cir. 2016), *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018) (such assets are "automatically blocked, regardless of whether" the entity owning the assets is itself on the SDN List).

[5] Press reports have also described Fleetscape as an owner of the vessel. Mitchell Decl. Exs. 17, 16.

[6] There is also reason to doubt Respondents' assertions regarding their total lack of control over the Suez Rajan. In correspondence between counsel, Respondents have exhibited considerable knowledge and understandings regarding the vessel's operations, including the reasons behind its particular movements and assurances related thereto. *See, e.g.*, Supp. Decl. Ex. D. (email exchange).

the vessel.[7] The Hoglan Creditors are entitled to discovery regarding the "Termination Event" and whether Respondents have exercised or will exercise their clear rights to end the charter agreement and repossess the vessel. If, as it appears, Respondents have willfully declined to repossess the vessel in connection with this Termination Event, that exercise of control should hardly constitute a defense to turnover. Indeed, the Hoglan Creditors are aware of at least one similar case in which OCM-managed shipowners exercised similar rights under similar bareboat charters following a sanctions violation. *See* Supp. Decl. Ex. C (describing UK litigation involving OCM-financed ships repossessed by OCM or affiliates after sanctions-related termination).

A turnover order under CPLR § 5225(b) can also be directed against "a transferee of money or other personal property from the judgment debtor," so long as the "debtor is entitled to the property or . . . the creditor's interest is superior to that of the transferee." *F.D.I.C. v. Conte*, 204 A.D.2d 845, 846 (3d Dep't 1994). Significantly, turnover under this provision is not limited "to instances when a respondent has custody or possession" over the property. *Id*. Moreover, "even without a showing that the judgment debtor 'has an interest' in the property in question, Section 5225(b) still permits recovery from [a transferee] if it can be demonstrated that the debtor is entitled to the property or that the creditor's interest is superior to that of the transferee." *Cortes v. Juquila Mexican Cuisine Corp.*, 2022 WL 970726, at *6 (E.D.N.Y. Mar. 31, 2022) (citations omitted). Discovery will clarify whether Respondents are "transferees" within the meaning of § 5225(b) and whether the Hoglan Creditors' interest is superior to that of Respondents.

### IV. The Motion Sufficiently Alleges the Judgment Debtors' Interest in the Cargo

---

[7] *See* Bareboat Charter, Dkt. 7803-8, ¶ 44.2.1 (providing for automatic termination of the charter if it "becomes unlawful for either the Owners or the Charterers to charter the vessel…due to Sanctions"); ¶ 55.22 (sanctions undertaking, by which charterers pledge sanctions compliance); ¶ 62.2 (failing to comply with sanctions undertaking is a "Termination Event"); ¶ 63.1 (a "Termination Event" constitutes breach entitling the owners to exercise remedies in clause 63); ¶ 63.2 ("Termination Event" entitles owners to issue notice terminating the charter, "whereupon the Vessel shall no longer be in the possession of the Charterers with the consent of the Owners"); ¶ 63.6 (the owners may "retake possession" of the vessel).

The motion alleged that the oil "appears to be owned by NIOC or a front company under NIOC's control." Mot. at 3. The bases for this allegation, none of which are disputed, are that: (1) the oil was transferred to the Suez Rajan from the Virgo, which obtained the oil from the Iranian port at Kharg Island, *see* Mitchell Decl. Ex. 1; (2) the Kharg Island oil terminal is operated by the Iranian Oil Terminals Company (IOTC), *see id*. Ex. 4, and IOTC is "under [the] umbrella of [NIOC]," *id*. Ex. 5; and (3) NIOC is "responsible for the . . . export of oil and petroleum products in Iran," *id*. Ex. 3. Respondents do not dispute this allegation; they argue only that the Hoglan Creditors "have not sufficiently alleged or evidenced that any judgment debtor has an interest in the oil[.]" Opp. at 15. But "[a]t this stage, of course, a creditor need not prove" that the judgment debtor "'has an interest' in the property"; rather, "similar to the standards for filing a complaint, a creditor must plausibly allege that it can meet its burden." *N. Mariana Islands v. Millard*, 845 F. Supp. 2d 579, 583-84 (S.D.N.Y. 2012) (citation omitted). The Hoglan Creditors have more than done so. To the extent more information is needed, this issue can be resolved through further discovery and through the subsequent presentation of more specific evidence.

## V.   TRIA Applies to Extraterritorial Assets

Finally, Respondents are wrong that the Terrorism Risk Insurance Act of 2002 ("TRIA") cannot be used to execute on property located outside the United States.[8] They rely entirely on Judge Oetken's recent decision—now being appealed (ECF 1397)—in *Levin v. Bank of N.Y.*, No. 09-CV-5900, 2022 WL 523901, at *3 (S.D.N.Y. Feb. 21, 2022), which employed the presumption against extraterritorial application of a statute to read into TRIA an implied prohibition on the

---

[8] The location of a ship and its cargo is not, of course, fixed. Despite Respondents' previous assurances that the Suez Rajan was "not going anywhere while the [U.S. Government's] investigation is under way," the Hoglan Creditors recently raised with Respondents information showing that the vessel had moved from its previous location to the vicinity of Singapore. Respondents insist that they have no control over the movements of the vessel, and even suggested that "the cargo could be sold." *See* Supp. Decl. Ex. D. While the Suez Rajan and its cargo are plainly outside of the United States *now*, they may not remain that way for the duration of this turnover proceeding.

attachment of property located abroad. But *Levin* is not persuasive and should not be followed.

Federal Rule of Civil Procedure 69(a) provides that state law governs judgment enforcement proceedings in federal court, and Article 52 of the CPLR allows a judgment creditor to execute on extraterritorial property if the court has personal jurisdiction over the garnishee. *See Koehler v. Bank of Bermuda Ltd.,* 12 N.Y.3d 533, 539-40 (N.Y. 2009). Judge Oetken held that to the extent *Koehler* applied, TRIA "would preempt" state law. *Levin*, 2022 WL 523901, at *4. But TRIA contains no express limitation on where attachable property must be located, and a federal statute's silence is not a basis to preempt state law. *See U.S. Smokeless Tobacco Mfg. Co. v. City of N.Y.*, 703 F. Supp. 2d 329, 336 (S.D.N.Y. 2010). Through TRIA, moreover, Congress intended to make collection of judgments against terrorist parties *easier* and to broaden the scope of assets available for attachment, including the assets of foreign states. *See Weininger v. Castro,* 462 F. Supp. 2d 457, 483 (S.D.N.Y. 2006). It would thus gravely undermine the statute's purpose to read into it an implied territorial limitation when property is controlled by an individual or entity subject to the court's jurisdiction. This is especially so given that Congress included express territorial limitations to provisions codified in the same statutory scheme: whereas TRIA "strips immunity from blocked assets without reference to whether the assets must be in the United States," other provisions in 28 U.S.C. § 1610 "explicitly strip immunity from kinds of property 'in the United States.'" *Levin*, 2022 WL 523901, at *3 (citation omitted).

Persuasive authority from the Second Circuit also undermines Respondents' argument. As Judge Oetken recognized, in an opinion vacated on other grounds, the Second Circuit "allowed execution against an extraterritorial asset" under FSIA and TRIA in *Peterson v. Islamic Republic of Iran*, 876 F.3d 63, 92 (2d Cir. 2017) (*Peterson II*), *cert. granted, judgment vacated sub nom. Clearstream Banking S.A. v. Peterson*, 140 S. Ct. 813 (2020). *See Levin*, 2022 WL 523901, at *3.

The Second Circuit held in *Peterson II* that "a court sitting in New York with personal jurisdiction over a non-sovereign third party [is authorized] to recall to New York extraterritorial assets owned by a foreign sovereign," notwithstanding the immunity provisions of FSIA, "because the FSIA's grant of execution immunity does not extend to assets located abroad." *Peterson II*, 876 F.3d at 92, 95 (citing *NML Capital*, 573 U.S. at 143-45). *Peterson II* was vacated by the Supreme Court in a one paragraph order so that the Second Circuit could consider the effect of an act of Congress enacted subsequent to its decision—a statute that explicitly made the specific extraterritorial funds at issue in the *Peterson* case available for collection. *Clearstream*, 140 S. Ct. 813. With its initial holding rendered moot, the Second Circuit on remand declined to reinstate its analysis regarding extraterritoriality. *See Peterson v. Islamic Republic of Iran*, 963 F.3d 192, 195 (2d Cir. 2020). Judge Oetken brushed aside *Peterson II* as "no longer controlling law." *Levin*, 2022 WL 523901, at *3. But given that the Supreme Court said or did nothing to undermine *Peterson II*'s analysis, that analysis is still persuasive, and still the best guidance as to how the Circuit would approach the issue. *See Brown v. Kelly*, 609 F.3d 467, 477 (2d Cir. 2010) (recognizing that prior circuit opinion vacated on other grounds was no longer binding, but continuing to adhere to it as persuasive authority, noting that it "addressed a difficult question of statutory interpretation" on which the Supreme Court had "not offered guidance"). The presence of the Iranian oil outside the United States but under the control of U.S. persons is thus no obstacle to turnover under TRIA.

## CONCLUSION

For the foregoing reasons, the Hoglan Creditors ask the Court to grant their motion or, in the alternative, authorize a short period of limited discovery to supplement the record. The Hoglan Creditors propose a period of 60 days to complete discovery, followed by the submission of supplemental briefs and, if the Court deems it appropriate, an evidentiary hearing.

Dated: April 25, 2022

                                           Respectfully submitted,

                                           <u>/s/ Lee S. Wolosky</u>
                                           Lee S. Wolosky
                                           JENNER & BLOCK LLP
                                           1155 Avenue of the Americas
                                           New York, NY 10036
                                           (212) 891-1628
                                           lwolosky@jenner.com

                                           Douglass A. Mitchell *(pro hac vice)*
                                           JENNER & BLOCK LLP
                                           1099 New York Avenue, NW, Suite 900
                                           Washington, DC 20001
                                           (202) 639-6090
                                           dmitchell@jenner.com

                                           *Counsel for Judgment Creditors Estate of Alice Hoglan et al.*