# EXHIBIT C

# *Court considers termination provisions and equitable relief against forfeiture under bareboat charters*

Impact Financial News

April 11, 2022 Monday

Copyright 2022 Impact Media Limited All Rights Reserved



**Length:** 1109 words

## Body

London: Ince & Co. has issued the following press release:

OCM Maritime Nile LLC & Anor v. **Courage** Shipping Co Ltd & Others (**Courage** and **Amethyst**) [2022] EWHC 452 (Comm)

If a financier, as owner, bareboat charters a vessel to a charterer with a purchase obligation upon conclusion of the charter and the owner lawfully withdraws the vessel during the charter period, questions may arise as to whether: 1) the financier is entitled to re-take possession after termination; 2) whether, upon termination, a contractual forfeiture of a substantial advance of the purchase price constitutes a penalty, and is void and unenforceable; and 3) the extent to which a charterer may obtain equitable relief from forfeiture of the charter by way of either: i) restitution of the charter; or ii) restitutionary relief in respect of payments made to the owners.

The background facts

This case concerned two vessels that were owned by two SPVs controlled by the financier, Oaktree and demise chartered to the defendants. The charters contained rights and obligations to purchase the vessels, as is common in this type of transaction. The defendants, at all times before June 2021, were legally and beneficially owned by a Mr **Mallah**.

In June 2021, the United States designated Mr **Mallah** a "Specially Designated Global Terrorist" and the defendants' assets were blocked. The claimants served various notices of Events of Default, terminated the charters and claimed possession of the vessels. The grounds in the notices included the status of Mr **Mallah**, various changes of ownership of the charterers, and failures to maintain insurances.

The defendants admitted that some Events of Default had occurred, but denied that the claimants were entitled to possession on a proper construction of the charters (the 'Construction Defence'). Secondly, they submitted that the claim for possession relied on provisions that were penal, and so void and unenforceable (the 'Penalty Defence'). Thirdly, they brought a counterclaim for relief from forfeiture.

The Commercial Court decision

Court considers termination provisions and equitable relief against forfeiture under bareboat charters

All the defences failed. The construction defence turned on the bespoke clauses of the charters but the other defences raised issues of more general importance.

The Penalty Defence

The argument was that if the claimants were entitled to immediate possession, this would cause the defendants to lose their right to purchase the vessels. The value of the vessels was significantly more than the debt. The loss the defendants would suffer if they lost their purchase rights would, they submitted, be disproportionate to any legitimate interest that the claimants may have in enforcing the defendants' primary contractual obligations and was, therefore, void as a penalty.

However, following a past Supreme Court decision, it is not enough that a provision will result in disproportionate detriment to make it unenforceable as a penalty. As the Court said: "the legal rules about penalties do not regulate the fairness of contractual rights and obligations, but regulate the remedies available for breach of obligations". To be capable of being a penalty, the term complained of must impose a secondary obligation that arises upon breach of a primary obligation. In this case, the options and rights to purchase only arose providing that "no Event of Default had occurred and is continuing". The Court held that in these circumstances, the loss of the purchase option was not an obligation that arose as a result of the breach of another obligation but that the purchase option was simply a qualified right that arose in certain circumstances.

The defendants' argument, therefore, failed on this basis.

Relief from forfeiture

Relief against forfeiture is a long-standing equitable remedy. It evolved in the context of real property and enabled courts to stop landlords retaking possession in accordance with the terms of the lease when the Court considered it unjust to allow this to happen. It is only available in relation to contracts that involve the transfer of proprietary or, in some circumstances, possessory rights. Therefore, it is not available, for example, in relation to time charters. As the bareboat charters involved the transfer of possessory rights, the remedy was potentially available but the Court had to decide if this was an appropriate case for relief from forfeiture.

As with all equitable remedies, relief against forfeiture is discretionary. Having decided that it could grant the relief, the Court went on to consider whether the defendants had by misconduct before and during the proceedings precluded themselves from seeking such relief. Among other things, the defendants had switched off the vessels' AIS and other tracking systems, which was a breach of the charters and of SOLAS. They had also breached a court order and a charter when one of the vessels had remained in Syrian waters. Moreover, the defendants had provided misleading information to the Court, and were dishonest about when Mr **Mallah**'s relationship with the defendants had ended. They had also not informed the claimants about the termination of insurance cover, and the replacement cover was not in accordance with the charter. These were sufficient reasons for the Court to hold that the defendants were debarred from seeking relief.

The Court added that relief should only be granted in appropriate and limited cases and that this involved consideration not only of any disparity of the value of property under threat of forfeiture and damage resulting from the breach, but also of whether the breach was deliberate and the gravity of the breaches. Courts should be wary of interfering with the parties' bargain.

On the facts, the Court stated that the application for relief would have failed. Interestingly, the Court considered not only whether the evidence really established that the windfall the claimants would make was disproportionate, but it also took into account whether an order would place the claimant owners in breach of sanctions. It concluded that the risk of penalties that the claimants would suffer was in itself sufficient reason to refuse relief.

Comment

The Court's analysis of the penalty defence highlights the narrow limits of the modern law against penalties. However, the decision confirms that relief against forfeiture is in principle available in these types of arrangements

to mitigate the losses resulting from the loss of purchase rights and obligations on termination. However, it is a discretionary remedy and an applicant may by their conduct disentitle themselves from obtaining relief. The case also demonstrates the need to put convincing evidence before the Court.

**Load-Date:** April 12, 2022

---

**End of Document**