**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Case No. 03-md-1570 (GBD)(SN) |

| | |
|---|---|
| FIONA HAVLISH, individually and on behalf of the ESTATE OF DONALD G. HAVLISH, JR., Deceased, *et al.*, | Case No. 03-cv-9848 (GBD)(SN) |
|     Creditors, | |
| v. | |
| THE TALIBAN, *et al.*, | |
|     Debtors, | |
| FEDERAL RESERVE BANK OF NEW YORK, | |
|     Garnishee. | |

| | |
|---|---|
| JOHN DOES 1 THROUGH 7, | Case No. 20-mc-0740 (GBD)(SN) |
|     Creditors, | |
| v. | |
| THE TALIBAN, *et al.*, | |
|     Debtors, | |
| FEDERAL RESERVE BANK OF NEW YORK, | |
|     Garnishee. | |

**HAVLISH AND DOE CREDITORS' JOINT REPLY**
**TO THE ASHTON PLAINTIFFS' OPPOSITION**
**TO THEIR MOTIONS FOR TURNOVER OF ASSETS**
**FROM GARNISHEE FEDERAL RESERVE BANK OF NEW YORK**

## <u>TABLE OF CONTENTS</u>

Table of Authorities .................................................................................................. ii

I.   Introduction.................................................................................................1

II.  Argument ....................................................................................................4

    A.   The Havlish And Doe Creditors Have Priority ..................................4

    B.   C.P.L.R. § 5240 Cannot Supersede New York Priority Law ............6

    C.   The All Writs Act Is Unavailable And Irrelevant ............................8

    D.   The Frivolous Ashton/Wodenshek "Class Action" Is Not A Basis For Deferring Consideration Of The Turnover Motion.............................................................9

    E.   Collateral Attacks On The *Havlish* Judgment And Writ Are Fatally Infirm .................12

    F.   The Ashton Plaintiffs' Other Mischaracterizations Cannot Go Unaddressed................14

III. Conclusion ................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*78-14 Roosevelt, LLC v. Hamilton-Madison House, Inc.*,
    100 N.Y.S.3d 611 (App. Term. 2018) ...................................................................14

*Aetna Cas. & Sur. Co. v. Markarian*,
    114 F.3d 346 (1st Cir. 1997)...............................................................................8

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997)............................................................................................5

*Borges v. Placeres*,
    111 N.Y.S.3d 517 (Civ. Ct. 2018) .....................................................................7

*Cablevision Systems Corp. v. 45 Midland Enterprises*,
    858 F. Supp. 42 (S.D.N.Y. 1994) .......................................................................7

*Chevron Corp. v. Naranjo*,
    667 F.3d 232 (2d Cir. 2012)..............................................................................12

*City of New York v. Panzirer*,
    259 N.Y.S.2d 284 (App. Div. 1965) .............................................................4–5, 6

*Commodity Futures Trading Comm'n v. Amaranth Advisors, LLC*,
    523 F. Supp. 2d 328 (S.D.N.Y. 2007)................................................................9

*Cook v. H. R. H. Const. Corp.*,
    302 N.Y.S.2d 364 (App. Div. 1969) ...............................................................6, 8

*Corwin Consultants, Inc. v. Interpublic Grp. of Cos., Inc.*,
    375 F. Supp. 186 (S.D.N.Y. 1974),
    *rev'd on other grounds*, 512 F.2d 605 (2d Cir. 1975)............................................6

*Cruz v. TD Bank, N.A.*,
    2 N.E.3d 221 (N.Y. 2013)....................................................................................7

*Davis v. United States*,
    499 F.3d 590 (6th Cir. 2007) ............................................................................12

*Doe v. Blum*,
    729 F.2d 186 (2d Cir. 1984)..............................................................................12

*Guardian Loan Co. v. Early*,
    392 N.E.2d 1240 (N.Y. 1979)..............................................................................7

*Hunt v. Loucks,*
   38 Cal. 372 (1869) ...............................................................................................................14

*Ice Flake Maritime Ltd. v. Westcoast AS,*
   No. 07-CV-2002, 2007 WL 2979471 (S.D.N.Y. Oct. 11, 2007)...............................................13

*Kantrowitz, Goldhamer & Graifman, P.C. v. Spivack,*
   93 N.Y.S.3d 909 (App. Div. 2019) ..........................................................................................7

*Kaplan v. Supak & Sons Mfg. Co.,*
   260 N.Y.S.2d 374 (Civ. Ct. 1965) ...................................................................................6–7, 8

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,*
   305 F. Supp. 2d 304 (S.D.N.Y. 2004)................................................................................13–14

*Kolortron Sys., Inc. v. Casey,*
   500 N.Y.S.2d 36 (App. Div. 1986) .........................................................................................7

*L.I. Head Start Child Dev. Services, Inc. v. Economic Opportunity Comm. of Nassau,*
   956 F. Supp. 2d 402 (E.D.N.Y. 2013) ...................................................................................7

*Midlantic Nat. Bank v. Reif,*
   732 F. Supp. 354 (E.D.N.Y. 1990) ........................................................................................7

*Moskin v. Midland Bank & Tr. Co.,*
   409 N.Y.S.2d 327 (Sup. Ct. 1978)..........................................................................................7

*Ortiz v. Fibreboard Corp.,*
   527 U.S. 815 (1999)...............................................................................................................10

*Pennsylvania Bureau of Correction v. U.S. Marshals Serv.,*
   474 U.S. 34 (1985).................................................................................................................8

*Plymouth Venture Partners, II, L.P. v. GTR Source, LLC,*
   183 N.E.3d 1185 (N.Y. 2021).................................................................................................7

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.,*
   721 F.3d 95 (2d Cir. 2013)......................................................................................................8

*Ruiz v. Citibank, N.A.,*
   No. 10-CV-5950, 2015 WL 4629444 (S.D.N.Y. Aug. 4, 2015),
   *aff'd,* 687 F. App'x 39 (2d Cir. 2017)...................................................................................11

*Schneider v. National R.R. Passenger Corp.,*
   72 F.3d 17 (2d Cir. 1995).......................................................................................................5

*S.E.C. v. Pentagon Capital Management PLC,*
   No. 08-CV-3324, 2013 WL 5815374 (S.D.N.Y. Oct. 29, 2013)..............................................7

*Sirotkin v. Jordan, LLC*,
    35 N.Y.S.3d 443 (App. Div. 2016) ........................................................................7

*Skelly Oil Co. v. Phillips Petroleum Co.*,
    339 U.S. 667 (1950) ...........................................................................................12

*Smith v. Federal Rsrv. Bank of N.Y.*,
    346 F.3d 264 (2d Cir. 2003) .........................................................................11, 15

*Townsend Farms, Inc. v. Goknur Gida Maddeleri Enerji Imalate Ithalat Ihracat Ticaret*,
    No. 20-MC-75, 2020 WL 7260513 (S.D.N.Y. Dec. 9, 2020) ...............................7

*Truskoski v. ESPN, Inc.*,
    60 F.3d 74 (2d Cir. 1995) ...................................................................................13

*Wandschneider v. Bekeny*,
    346 N.Y.S.2d 925 (Sup. Ct. 1973) .......................................................................7

**STATUTES AND RULES**

28 U.S.C. § 1407 ........................................................................................................5

28 U.S.C. § 1651 ....................................................................................................8, 9

28 U.S.C. § 2072 ..................................................................................................8, 10

Fed. R. Civ. P. 23(b)(1)(B) ......................................................................................10

Fed. R. Civ. P. 60 .....................................................................................................13

Fed. R. Civ. P. 69(a) ..........................................................................................*passim*

N.Y. C.P.L.R. § 5232 .................................................................................................1

N.Y. C.P.L.R. § 5234 ....................................................................................2, 4, 5, 8

N.Y. C.P.L.R. § 5240 ...................................................................................4, 6, 7, 13

**ADMINISTRATIVE AND EXECUTIVE MATERIALS**

31 C.F.R. § 594.202 ..................................................................................................13

31 C.F.R. § 594.312 ............................................................................................11, 15

Executive Order 14,064, 87 Fed. Reg 8391 (Feb. 11, 2022) ..............................*passim*

Notice of Estimated Lump Sum Catch-Up Payments to Eligible 9/11 Victims, 9/11
    Spouses, and 9/11 Dependents, 86 Fed. Reg. 31,312, 31,314 (June 11, 2021) .....................3

*Press Briefing by Press Secretary Jen Psaki, December 13, 2021*, The White House (Dec. 13, 2021), https://www.whitehouse.gov/briefing-room/press-briefings/2021/12/13/press-briefing-by-press-secretary-jen-psaki-december-13-2021/ ...........................................................................................................1

## OTHER AUTHORITIES

1 Newberg on Class Actions § 4.09 ...........................................................................10

Charlie Savage, *European Court Rules Against 9/11 Victims Seeking $1.6 Billion From Iran*, N.Y. Times (March 28, 2019), https://www.nytimes.com/2019/03/28/us/politics/iran-september-11th-victims.html ...................................................................................................................3

Charlie Savage, *Iran Nuclear Deal Could Be Gateway for Terrorism Legal Claims*, N.Y. Times (March 6, 2017), https://www.nytimes.com/2017/03/06/us/politics/terrorism-foreign-governments-lawsuits-iran-nuclear-deal.html ...........................................................3

Charlie Savage, *Taliban and 9/11 Families Fight for Billions in Frozen Afghan Funds*, N.Y. Times (Nov. 29, 2021), https://www.nytimes.com/2021/11/29/us/politics/taliban-afghanistan-911-families-frozen-funds.html.................................................................................1

VSST, SPECIAL MASTER'S REPORT REGARDING THE THIRD DISTRIBUTION 6 (June 2020), http://www.usvsst.com/docs/USVSST%20Fund%20Congressional%20Report%20June%202020.pdf .....................................................3

## I.      Introduction

In the summer and fall of 2021, the Havlish and Doe Creditors levied writs of execution against the DAB Assets in satisfaction of their judgments against the Taliban. The Havlish Creditors were the only parties in the September 11 MDL pursuing Taliban claims (collectively, the "9/11 Community" or "9/11 Families") who were able to attach the DAB Assets, since only they had final, enforceable damages judgments against the Taliban. Their writ restrained the $7 billion in DAB Assets held at the Federal Reserve Bank of New York ("FRBNY").[1]

After restraining the DAB Assets, the Havlish Creditors worked, first with the United States and later with representatives of the Plaintiffs' Executive Committees ("PECs"), to develop a distribution plan that both accorded with governing law and enabled broad participation by as many MDL plaintiffs as possible (including widows and orphans excluded from earlier VSST payouts).[2] Later, consistent with the Court's guidance,[3] the proposed distribution plans also aimed to reduce the administrative burden associated with parsing thousands of claims before the Court. Those efforts culminated in an agreement between the Havlish Creditors, on the one hand, and the Federal Insurance Creditors, the Burnett, O'Neill, Ray, Ryan, and Grazioso Plaintiffs, on the other

---

[1] N.Y. C.P.L.R. § 5232 (service of writ of execution restrains subject property from transfer). The White House acknowledged as much on December 13, 2021. *Press Briefing by Press Secretary Jen Psaki, December 13, 2021*, The White House (Dec. 13, 2021), https://www.whitehouse.gov/briefing-room/press-briefings/2021/12/13/press-briefing-by-press-secretary-jen-psaki-december-13-2021/ ("[T]he status of the funds is the subject of ongoing litigation, brought by certain victims of 9/11 and other terrorist attacks to hold judgments against the Taliban. These legal proceedings cannot be disregarded and have led to the temporary suspension of any movement of the funds through at least the end of the year and quite possibly longer.").

On February 25, 2022, the Court entered an Order implementing Executive Order 14,064, 87 Fed. Reg 8391 (Feb. 11, 2022) and the Office of Foreign Assets Control's License No. DABRESERVES-EO-2022-886895-1, which released $3.5 billion of the DAB Assets for humanitarian relief for the people of Afghanistan. MDL Dkt. 7701. At the same time, the Court expressly provided that the *Havlish* and *Doe* Writs continued to restrain the $3.5 billion remaining at the FRBNY. *Id*. On April 20, 2022, the Federal Insurance Creditors issued a writ of execution to the FRBNY, which now joins the *Havlish* Writ in restraining the remaining funds.

[2] *See* Charlie Savage, *Taliban and 9/11 Families Fight for Billions in Frozen Afghan Funds*, N.Y. Times (Nov. 29, 2021), https://www.nytimes.com/2021/11/29/us/politics/taliban-afghanistan-911-families-frozen-funds.html. The term "VSST" refers to the U.S. Victims of State Sponsored Terrorism Fund.

[3] MDL Dkt. 7713 at 34 (Feb. 22, 2022 Conf. Tr.).

hand (the "Framework Agreement", with such plaintiffs referred to herein as the "Framework Agreement Plaintiffs"). *See* MDL Dkt. 7790.[4]

Every group of MDL plaintiffs pursuing Taliban judgments was provided the opportunity to participate in this Framework Agreement, and the vast majority of plaintiffs (over 9,400, by the estimation of the Framework Agreement Plaintiffs) have agreed to do so. Only plaintiff groups consolidated with the Ashton Plaintiffs (collectively, the "Ashton Plaintiffs") refused to participate. The Ashton Plaintiffs chose to eschew cooperation and instead lodged a flurry of filings before three different judges—some merely frivolous, some likely sanctionable—but, in their key commonality, all of them lacking any basis in law or fact.

To implement the Framework Agreement, it is necessary that the Court grant the Havlish Creditors' turnover motion. That motion should be granted not only because the implementation of the Framework Agreement will lead to an equitable and fair result, but also because, as a matter of governing law, the Havlish Creditors are entitled to satisfy their compensatory damages before other creditors pursuant to Federal Rule of Civil Procedure 69(a) and N.Y. C.P.L.R. § 5234(b). As a matter of law, nothing in the Ashton Plaintiffs' opposition brief (MDL Dkt. 7894, or the "Opposition") counsels otherwise.

Under the totality of circumstances, it is entirely equitable and just that the Havlish Creditors receive priority to the DAB Assets—especially when considered in light of their

---

[4] The Doe Creditors are not privy to the Framework Agreement and so cannot speak to its history or terms. The Doe Creditors join in this reply insofar as it addresses the legal deficiencies of the Ashton Plaintiffs' filings. The Doe Creditors have a straightforward TRIA collection; assume that settled law applies to this collection; and that that law mandates priority recovery. The Doe Creditors, however, point to an additional undeniable truth: the Doe Creditors (especially if they were only still plaintiffs, and not judgment creditors) would never have been able to intervene and claim a share of funds secured by the Ashton Plaintiffs (if they were in fact Taliban judgment creditors who had perfected a writ). This Court, rightly, never would have allowed the Doe Creditors (especially prior to becoming judgment creditors) to intervene in this action, and would never have expected the Ashton Plaintiffs (if they had secured a recovery), to share it with the Doe Creditors. It would be an act of shameless mendacity for the Ashton Plaintiffs' counsel to argue that they ever would have considered sharing their recovery with the Doe Creditors if the situation were reversed.

historical decision to eschew millions of dollars in compensation from government funds and their more recent efforts to share any DAB Assets recovery with the entirety of the 9/11 Community.

Unlike the Ashton Plaintiffs, the Havlish Creditors overwhelmingly elected not to participate in the VSST, choosing instead to pursue justice and compensation by enforcing their judgments directly against those found liable for the September 11 terrorist attacks (and their agencies and instrumentalities, as provided by law) on a worldwide basis.[5] Of the $1.6 billion distributed to the 9/11 Community from the VSST, eight Havlish Creditors have received $9.8 million—or 0.5 percent of the total funds distributed from the VSST.[6] The Ashton Plaintiffs have not disclosed how many millions of dollars they and their attorneys have received from the VSST, but it is believed to be in the hundreds of millions. And the Ashton Plaintiffs were able to collect their hundreds of millions in compensation from the VSST only because of the Havlish Creditors' dogged work to hold the Islamic Republic of Iran (and its instrumentalities) liable for their participation in, and material support for, the September 11 terrorist attacks.[7] Relying on a government fund as a source of compensation is a perfectly legitimate choice, but it is also a factor appropriately considered in any discussion of equity concerning the *Havlish* Writ, the writ's

---

[5] The Havlish Creditors have for almost a decade pursued a worldwide campaign to enforce their judgments not only against the Taliban, but against Iran. Not all of these efforts are public, and none of them have yet yielded a recovery. *See, e.g.,* Charlie Savage, *Iran Nuclear Deal Could Be Gateway for Terrorism Legal Claims*, N.Y. Times (March 6, 2017), https://www.nytimes.com/2017/03/06/us/politics/terrorism-foreign-governments-lawsuits-iran-nuclear-deal.html; Charlie Savage, *European Court Rules Against 9/11 Victims Seeking $1.6 Billion From Iran*, N.Y. Times (March 28, 2019), https://www.nytimes.com/2019/03/28/us/politics/iran-september-11th-victims.html.

[6] VSST, Special Master's Report Regarding The Third Distribution 6 (June 2020), http://www.usvsst.com/docs/USVSST%20Fund%20Congressional%20Report%20June%202020.pdf; Notice of Estimated Lump Sum Catch-Up Payments to Eligible 9/11 Victims, 9/11 Spouses, and 9/11 Dependents, 86 Fed. Reg. 31,312, 31,314 (June 11, 2021); Mitchell Decl. ¶ 11, MDL Dkt. 7765.

[7] Claimants can recover from the VSST only if they have a judgment against a state sponsor of terrorism. The Havlish Creditors, and the Havlish Creditors alone, developed the evidence to establish that Iran was liable for the 9/11 terrorist attacks. *See* MDL Dkt. 5180 at 10 (the Court's finding that "*Havlish* counsel performed a substantial amount of work that benefited all Plaintiffs and allowed them to receive compensation from the VSST."); *id.* at 10–11.

priority, and the Framework Agreement. Indeed, when it comes to the DAB Assets, discussions of equity cannot leave out twenty years of decisions made by the 9/11 Community and their lawyers.

In any event, the legal arguments raised in the Opposition are meritless. The Court has already recognized that the Ashton Plaintiffs' first argument—that their so-called "class action" must take precedence over these turnover proceedings—is utterly baseless. *See* MDL Dkt. 7923, 7900 at 2 (Wodenshek Plaintiffs "fail[ed] to come close" to satisfying standard for preliminary relief); April 26, 2022 Conf. Tr. at 6 (JUDGE DANIELS: "There's no legal basis to file a separate complaint."); *see also id.* at 4, 14, 20–21, 35.[8] The Ashton Plaintiffs' backup theory—that N.Y. C.P.L.R. § 5240 empowers the Court to ignore the statutory requirements of New York priority law—has been rejected under longstanding case law. So too for their even stranger All Writs Act theory. Their collateral attacks on a ten-year-old judgment and on the underlying writ go nowhere, either. For these purely legal reasons, the Opposition should be set aside.

## II.   Argument

### A.   The Havlish And Doe Creditors Have Priority

The Havlish and Doe Creditors have priority under New York law to satisfy their judgments against the DAB Assets. The Ashton Plaintiffs do not dispute that. Opp. 11; *see also* Havlish Mot. 25; Doe Mot. 24. Nor do they dispute that, with the law applied as written, this priority entitles the Havlish Creditors to satisfy their writ of execution first and the Doe Creditors to satisfy their writ second.[9] *See* N.Y. C.P.L.R. § 5234(b) (writs of execution or orders of attachment shall be satisfied "in the order in which they were delivered" to marshal); *City of New*

---

[8] Hours before this reply was filed, the Court rightly dismissed the Wodenshek Plaintiffs' putative class action complaint as duplicative. MDL Dkt. 7923 (April 27, 2022 Order). This reply nevertheless highlights additional key defects in the complaint not addressed by the Court in the event further briefing on the merits is required at any point.

[9] Now that the Federal Insurance Creditors have issued their writ of execution, they are entitled to satisfy their judgment after the Havlish and Doe Creditors pursuant to Section 5234(b).

*York v. Panzirer*, 259 N.Y.S.2d 284, 286 (App. Div. 1965) ("[T]he order of priority among judgments is to be determined strictly in accordance with the chronological service of execution levies and the filing of orders for turnover or receiverships, as the case may be."). Indeed, the Ashton Plaintiffs concede that the "normal rules of priority" preclude each argument in the Opposition. Opp. 18. This is why they ask the Court to "modify the enforcement procedures set forth in CPLR § 5234" to establish a distribution of assets not "governed by priority rules" laid out in the statutes of the State of New York and made binding here by Rule 69(a). *See* Opp. 15.

As explained below, the Court cannot depart from the "normal rules of priority," nor—given the Framework Agreement—need it do so to ensure an equitable result consistent with applicable law. Indeed, while the Ashton Plaintiffs argue that the very "concept" of priority should not be applied here for a series of internally contradictory and factually unsupported reasons, Opp. 12–13, they nowhere address the reality that the application of New York procedures on execution—including the determination of priority—is *required* by the mandatory language of Rule 69(a).[10] Needless to say, this Court lacks the discretion to disregard the Federal Rules of Civil Procedure. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). And at every stage of these proceedings, the Havlish and Doe Creditors have complied with these procedural requirements completely and conspicuously.[11] *See* Havlish Mot. 9–10, 25; Doe Mot. 8–9. At the same time,

---

[10] The Ashton Plaintiffs' suggestion (in a footnote) that "[t]he Court . . . is not bound to accept the conclusion that New York priority rules apply" because this is a federal case dealing with federal issues is facially absurd. *See* Opp. 17 n.63. Rule 69(a) provides that procedures on execution "*must* accord with the procedure of" New York state law, unless a federal statute governs "to the extent it applies." This means that state law governs unless there is a federal law that poses a "conflict." *Schneider v. National R.R. Passenger Corp.*, 72 F.3d 17, 19 (2d Cir. 1995). None of the smorgasbord of federal statutes the Ashton Plaintiffs cite—including 28 U.S.C. § 1407—have any application to the *procedure* on execution, much less pose a conflict with N.Y. C.P.L.R. § 5234.

[11] The Ashton Plaintiffs repeatedly insinuate that the Havlish Creditors acted via subterfuge to obtain and serve their writ. This is simply false. Issuance of the writ appears on the *Havlish* and MDL dockets in an August 27, 2021 minute entry *created by the Court itself*, and the FRBNY's receipt of the writ was published by the United States within 48 hours of its levy. *Havlish* Dkt. 526. The background section of the Opposition is rife with similar mischaracterizations and innuendos, most of them irrelevant. Opp. 3–11.

pursuant to the Framework Agreement, the Havlish Creditors have also agreed to pass on a substantial portion of any recovery to the broader 9/11 Community to facilitate an equitable result.

**B.      C.P.L.R. § 5240 Cannot Supersede New York Priority Law**

The Ashton Plaintiffs submit that the Court may rely on Section 5240 to bypass New York priority law and impose a more "equitable" scheme for distribution of the DAB Assets than the one the Legislature has provided. It cannot. This argument is squarely precluded by decades of state and federal case law. The Ashton Plaintiffs do not even bother to try to distinguish these cases; instead, they ignore their existence. But try as they might, they cannot wish the law away.

Under the laws of New York, Section 5240 may not be used as "an alternate procedure for achieving priority." *Cook v. H. R. H. Const. Corp.*, 302 N.Y.S.2d 364, 366 (App. Div. 1969). The "priority requirements of article 52 ha[ve] to be satisfied for [judgment creditors] to achieve priority. Any other measure employed by [them], no matter how diligent, is insufficient to qualify for priority." *Id.* (citing *Panzirer*, 259 N.Y.S.2d 284). This has been restated as the rule by federal courts in this District: "It is clear after *Cook v. H.R.H. Construction Corp.* that § 5240 is not an alternative procedure for achieving . . . priority." *Corwin Consultants, Inc. v. Interpublic Grp. of Cos., Inc.*, 375 F. Supp. 186, 195 (S.D.N.Y. 1974) (internal citation omitted), *rev'd on other grounds*, 512 F.2d 605 (2d Cir. 1975). The Ashton Plaintiffs ask this Court to strip the Havlish and Doe Creditors (and now the Federal Insurance Creditors) of their lawful status and to instead order turnover of the DAB Assets to other parties (including parties without final enforceable judgments or even, in some instances, lawsuits against the Taliban) by nullifying New York priority statutes and Rule 69(a). As Judge Edward Greenfield, one of the leading New York state trial judges of his day, wrote shortly after the enactment of the relevant provisions of law:

> Th[e] broad discretionary power [of § 5240] gives the court a certain degree of leeway in applying the procedures set forth in Article 52, but surely it does not empower the court to ignore those procedures

> or issue an order contrary to the statute. It is one thing to modify or limit a provision. It is another thing entirely to ignore one provision and create a wholly new one in its place. Section 5240 permits a certain amount of tinkering on the structure by the judicial handyman, but it does not permit the construction of an entirely new wing using jurisprudential architecture.

*Kaplan v. Supak & Sons Mfg. Co.*, 260 N.Y.S.2d 374, 378 (Civ. Ct. 1965) (Greenfield, J.), *cited with approval in In re Persky*, 893 F.2d 15, 19 (2d Cir. 1989). The Ashton Plaintiffs seek such "an order contrary to the statute" and their request must be rejected.

Not one of the cases cited by the Ashton Plaintiffs contradicts the inescapable reality that they seek an unprecedented and impermissible remedy. In *none* of them was one judgment creditor deprived of priority over another.[12] Instead, each case stands for the uncontroversial proposition that a court may employ Section 5240 to "tinker" with the enforcement process—to implement installment payments, for instance, rather than seizing a debtor's income-generating property (thus imperilling the debtor's ultimate ability to satisfy the judgment).[13] "Its use is strictly to aid a party inequitably burdened by the use of enforcement procedures by his adversary and to allow him an opportunity to either meet his legal obligation or postpone the enforcement of a judgment until such time that its enforcement is more properly sought." *Kolortron Sys., Inc. v. Casey*, 500 N.Y.S.2d 36, 36 (App. Div. 1986). Such considerations do not apply here.

The Ashton Plaintiffs conclude their ill-fated argument for a Section 5240 protective order

---

[12] *See Wandschneider v. Bekeny*, 346 N.Y.S.2d 925 (Sup. Ct. 1973) (no alteration of priority); *Midlantic Nat. Bank v. Reif,* 732 F. Supp. 354 (E.D.N.Y. 1990) (same); *Cablevision Systems Corp. v. 45 Midland Enterprises,* 858 F. Supp. 42 (S.D.N.Y. 1994) (same); *S.E.C. v. Pentagon Capital Management PLC,* No. 08-CV-3324, 2013 WL 5815374 (S.D.N.Y. Oct. 29, 2013) (same); *Townsend Farms, Inc. v. Goknur Gida Maddeleri Enerji Imalate Ithalat Ihracat Ticaret,* No. 20-MC-75, 2020 WL 7260513 (S.D.N.Y. Dec. 9, 2020) (same); *Cruz v. TD Bank, N.A.,* 2 N.E.3d 221 (N.Y. 2013) (same); *Borges v. Placeres,* 111 N.Y.S.3d 517 (Civ. Ct. 2018) (same); *Guardian Loan Co. v. Early,* 392 N.E.2d 1240 (N.Y. 1979) (same); *Kantrowitz, Goldhamer & Graifman, P.C. v. Spivack,* 93 N.Y.S.3d 909 (App. Div. 2019) (same); *Sirotkin v. Jordan, LLC,* 35 N.Y.S.3d 443 (App. Div. 2016) (same); *L.I. Head Start Child Dev. Services, Inc. v. Economic Opportunity Comm. of Nassau,* 956 F. Supp. 2d 402 (E.D.N.Y. 2013) (same); *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC,* 183 N.E.3d 1185 (N.Y. 2021) (same).

[13] *E.g., Sirotkin*, 35 N.Y.S.3d at 445; *Moskin v. Midland Bank & Tr. Co.*, 409 N.Y.S.2d 327 (Sup. Ct. 1978).

with a plea that "there is not a single case that obligates this Court to enforce standard rules of priority in the context of" this case. Opp. 18. That is false as a matter of law. *Cook* is one such case, 302 N.Y.S.2d at 366, and *Kaplan* another, 260 N.Y.S.2d at 378. But it is also profoundly wrong as a matter of first principles. The relevant judgment enforcement rules set out in Section 5234(b), made binding on this enforcement proceeding by Rule 69(a), apply to all cases— that is, after all, how legal rules work. It is not for this Court (or any other) to decide whether to modify mandatory rules to accommodate the varying facts of individual cases; to do so would undermine the foundation of our system of law.

### C.    The All Writs Act Is Unavailable And Irrelevant

The All Writs Act cannot be employed to overcome the binding requirements of applicable statutory law. As the Supreme Court has said,

> The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate.

*Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). In this case, there is a statute which addresses the issue at hand—Rule 69(a), which incorporates C.P.L.R. Article 52. *See* 28 U.S.C. § 2072 (Rules Enabling Act); *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 108 n.14 (2d Cir. 2013) ("The Federal Rules of Civil Procedure have the force and effect of a federal statute." (formatting modified)). That statute controls, full stop. *Aetna Cas. & Sur. Co. v. Markarian*, 114 F.3d 346, 350 (1st Cir. 1997) ("[T]here is every reason not to reach to find the All Writs Act applicable where the courts have consistently read Rule 69(a) as limiting all federal process on money judgments to the type of process available under state law.") (citation omitted)).

This is the right outcome in view of the underlying purpose of the All Writs Act: To protect the jurisdiction of the federal courts. *See* 28 U.S.C. § 1651 (courts may issue writs "necessary or appropriate in aid of their respective jurisdictions"); *Commodity Futures Trading Comm'n v. Amaranth Advisors, LLC*, 523 F. Supp. 2d 328, 335 (S.D.N.Y. 2007) (purpose of an All Writs Act injunction "must be to aid the court's jurisdiction"). The Ashton Plaintiffs are, in effect, asking this Court to protect its jurisdiction from itself, from its own turnover proceedings, and from the requirements of well-settled law. That is not a colorable basis for the Act's invocation.

### D.    The Frivolous Ashton/Wodenshek "Class Action" Is Not A Basis For Deferring Consideration Of The Turnover Motion

In a "wholly inappropriate" gambit designed to deprive this Court of control over its own docket, *see* MDL Dkt. 7900 at 2, the Ashton Plaintiffs sought to stay these turnover proceedings pending the resolution of their frivolous and potentially sanctionable new putative "class action," which they instituted as a collateral attack on these proceedings and the Framework Agreement to which the rest of the 9/11 Community has agreed. The Court has already concluded that the collateral attack is absolutely baseless. MDL Dkt. 7923; *see also* MDL Dkt. 7900 at 2 (Wodenshek Plaintiffs "fail[ed] to come close" to demonstrating their entitlement to preliminary relief); April 26, 2022 Conf. Tr. at 4, 6, 14, 20–21, 35. The Havlish and Doe Creditors remain ready to oppose the Wodenshek Complaint[14] should it ever be revived, and to explain fulsomely and completely why that complaint is as broken as a lawsuit can possibly be. But in the interest of explaining why Part I of the Opposition has negative persuasive value, a few brief notes on some of the many failings of that complaint are presented here.

First, the Wodenshek Complaint represents an unprecedented and impermissible expansion

---

[14] Complaint, *In re Approximately $3.5 Billion of Assets on Deposit at the Federal Reserve Bank of New York in the Name of Da Afghanistan Bank*, No. 22-cv-3228 (S.D.N.Y. April 20, 2022), ECF No. 1. The Ashton/Wodenshek Plaintiffs declined the Court's invitation to voluntarily dismiss the complaint without prejudice. MDL Dkt. 7920.

of Rule 23(b)(1)(B). It is squarely precluded by the Supreme Court's decision in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), which held that the rule cannot be "used to aggregate unliquidated tort claims on a limited fund rationale." *Id.* at 843; *see also id.* at 843–845.[15] Moreover, the Ashton/Wodenshek Plaintiffs have cited no precedent—and we are aware of none— in which a Rule 23(b)(1)(B) limited fund class was certified *after* some of the putative class members had already obtained final, enforceable judgments and had begun the turnover process. Allowing the Wodenshek Complaint to proceed in this instance would violate Justice Souter's admonition against "adventurous application" of Rule 23(b)(1)(B). *Id.* at 845. And as a final note on this point, the "limited fund" rationale of Rule 23(b)(1)(B) may not be deployed to force unwilling plaintiffs into a class action where, as here, there *is no limited fund*. A limited fund exists where there is no prospect of recovery on class claims except from a finite pool of resources— "'[c]lassic' limited fund class actions 'include claimants to trust assets, a bank account, insurance proceeds, company assets in a liquidation sale, proceeds of a ship sale in a maritime accident suit, and others.'" *Ortiz*, 527 U.S. at 834 (quoting 1 Newberg on Class Actions § 4.09, at 4–33).[16] But as this Court knows, the Ashton/Wodenshek Plaintiffs are pursuing many other avenues to recover on their claims, including through the VSST and ongoing litigation against the Kingdom of Saudi Arabia (among other defendants); moreover, the Taliban itself has more assets that may become subject to future execution. The Ashton/Wodenshek Plaintiffs cannot deny that funds have been,

---

[15] Doing so would contravene not only the Supreme Court's interpretation of Rule 23(b)(1)(B) but also the Rules Enabling Act, which instructs that rules of procedure "shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2072(b).

[16] The rationale that the Ashton/Wodenshek Plaintiffs deploy in defense of their putative class action is particularly dangerous because it has no limiting principle. Under their logic, in every single instance where multiple judgment creditors may compete for priority over the same assets of a judgment debtor—a very common scenario—the clear state rules for how to handle such a case would be rendered null and void by a dilatory creditor's filing of a collateral Rule 23(b)(1)(B) complaint. That cannot be the case given Rule 69(a)'s edict that state procedural law must govern in this circumstance. The Court should not create a loophole which would effectively swallow the entirety of that rule. The Ashton/Wodenshek Plaintiffs have stated clearly that this is their intention. *See* MDL Dkt. 7920 at 2.

and additional funds may yet become, available through those and other presently unknown routes. That one particular asset (in a case where multiple parties controlling substantial assets are jointly and severally liable for all claims) cannot satisfy all available judgments does not reduce this specific proceeding against one particular asset to a mandatory limited fund class.[17]

Second, because it includes putative class members who do not yet have enforceable judgments against the Taliban (and indeed, the same goes for the named class representatives), the Wodenshek Complaint is barred under federal sanctions law. Section 1(a) of Executive Order 14,064 blocks the DAB Assets. 87 Fed. Reg at 8391 ("All property and interests in property of DAB . . . are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in."). With limited exception, blocked assets are not subject to any orders of judicial restraint or transfer. *See, e.g.*, 31 C.F.R. § 594.312 ("The term *transfer* . . . shall include . . . the issuance, docketing, filing, or levy of or under any judgment, decree, attachment, injunction, execution, or other judicial or administrative process or order, or the service of any garnishment[.]"). While TRIA creates a narrow exception for writs of execution, the Second Circuit has squarely held that this exception is not available to those without enforceable final judgments. *Smith v. Federal Rsrv. Bank of N.Y.*, 346 F.3d 264, 271 (2d Cir. 2003). The Court is thus forbidden from providing the class-wide relief the complaint seeks, and as a matter of sanctions law, the Ashton/Wodenshek Plaintiffs are barred from even seeking it. Exec. Order 14,064 § 3.

Third, the class definition is not ascertainable, as it requires adjudication of the underlying damages claims in order to determine class membership. *See* Wodenshek Compl. ¶ 57. This is an impermissible fail-safe class. *See Ruiz v. Citibank, N.A.*, No. 10-CV-5950, 2015 WL 4629444, at *7 (S.D.N.Y. Aug. 4, 2015), *aff'd,* 687 F. App'x 39 (2d Cir. 2017). By limiting the class to "all

---

[17] It bears repeating that the Ashton/Wodenshek Plaintiffs *do not have enforceable judgments against the Taliban*.

persons and/or estates with a compensatory damages claim against the Taliban on file in a U.S. court of record as of April 20, 2022, where such claim arises directly out of an act of terrorism and the injuries suffered were proximately caused by that act of terrorism and the Taliban has been or likely will be adjudged liable for those injuries," the Wodenshek class could also be construed to exclude the Federal Insurance Creditors (who, unlike the Ashton/Wodenshek Plaintiffs, have final enforceable judgments against the Taliban)—thus frustrating the putative purpose of the limited fund action to facilitate final resolution of all claims to the DAB Assets. Wodenshek Compl. ¶ 57.

Fourth, the Wodenshek Complaint alleges no actual legal cause of action—instead asserting a claim for declaratory judgment for equitable relief. But a declaratory judgment action cannot lie absent "a valid legal predicate." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012). That is because the Declaratory Judgment Act is "procedural only," *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671 (1950) (citation omitted), and "does not create an independent cause of action." *Chevron*, 667 F.3d at 244 (quoting *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007)). The Wodenshek Complaint fails to allege any legal predicate.

Fifth, the named plaintiffs in the Wodenshek Complaint lack judgments which would entitle them to possession of the assets at issue. Thus, they lack Article III standing. *See Doe v. Blum*, 729 F.2d 186, 190 n.4 (2d Cir. 1984).

The Havlish and Doe Creditors will reserve a more extensive presentation on these and other defects until such time as may be appropriate. In the interim, however, the Wodenshek Complaint—a failed attempt by counsel to short-circuit this Court's authority (and, through their request for appointment as "class counsel," to take control of the fate of the DAB Assets)—could not bar the consideration and adjudication of these turnover proceedings.

### E.   Collateral Attacks On The *Havlish* Judgment And Writ Are Fatally Infirm

In a lengthy footnote, the Ashton Plaintiffs levy a half-hearted attack on the Havlish

Creditors' ten-year-old underlying judgment against the Taliban and suggest possible issues with the *Havlish* Writ, Opp. 11 n.39, but do not challenge the finality of that judgment under Rule 60 (or any other provision for post-judgment relief).[18]

While the Ashton Plaintiffs do not argue outright that the *Havlish* Writ is defective, their insinuation in the same footnote holds no water. In August 2021, the Havlish Creditors obtained a writ for the full extent of their damages, including punitive damages, because it was unclear at the time whether the United States considered the DAB Assets to be blocked property (and thus subject to TRIA's limitation to execution only on compensatory damages awards). The President resolved that issue only on February 11, 2022, when he blocked the DAB Assets pursuant to Executive Order 14,064. The Havlish Creditors now seek to enforce the writ consistent with TRIA's provisions, *i.e.*, only to the extent of their compensatory damages. Indeed, OFAC's regulations generally provide that writs of execution against property that becomes blocked remain valid only "to the extent otherwise provided by law[.]" *See, e.g.*, 31 C.F.R. § 594.202(e). And to the extent that the Court thinks it necessary and proper to modify the amount of the *Havlish* Writ to reflect solely compensatory damages,[19] the Court may do so under Section 5240 (and the Havlish Creditors would not object).[20]

---

[18] A letter brief moving to vacate the underlying *Havlish* judgment under Rule 60(b) was submitted by separate counsel for a limited subset of the Ashton Plaintiffs on April 20, 2022 (suggesting that lead counsel for the Ashton Plaintiffs are aware of the ultimate futility of this argument). Havlish Dkt. 615. The Court accepted the letter and requested no further briefing on April 22, 2022. Havlish Dkt. 619. The Havlish Creditors stand by to refute fully the contentions in that letter if the Court wishes, but suffice it to say that this motion—brought *ten years* after the entry of the *Havlish* judgment, despite all parties being on notice of the contents and basis of that judgment for the last decade—was not brought within "a reasonable time," as required by Rule 60(c)(1), and on that basis alone must be dismissed. *See, e.g.*, *Truskoski v. ESPN, Inc.*, 60 F.3d 74, 77 (2d Cir. 1995) (where movant was on notice of grounds for error in judgment, 18-month delay in bringing Rule 60(b) motion was unreasonable).

[19] The Havlish Creditors have specified in detail the basis for the amount of compensatory damages they seek in this turnover proceeding. *See* Mitchell Decl. ¶ 10.

[20] *See Ice Flake Maritime Ltd. v. Westcoast AS*, No. 07-CV-2002, 2007 WL 2979471, at *2 (S.D.N.Y. Oct. 11, 2007) (granting motion to modify order of attachment where there was undisputed math error in plaintiff's calculation of principal amount); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 305 F. Supp. 2d

### F.      The Ashton Plaintiffs' Other Mischaracterizations Cannot Go Unaddressed

Throughout their brief, the Ashton Plaintiffs make misleading and irrelevant assertions which are untethered from any substantive legal arguments. For example, the Ashton Plaintiffs' invocation of PEC members' "obligations to the common interest of the MDL"—an entire paragraph written without citation to any applicable law—has no bearing on the Havlish or Doe Creditors' entitlement to turnover of the DAB Assets.[21] Opp. 17. But it bears mention that it is counsel for the Ashton Plaintiffs who are putting their clients' ability to recover from the DAB Assets at risk by refusing (alone among the 9/11 Community) to participate in the Framework Agreement and choosing instead to embark on quixotic misadventures. For another example, the Ashton Plaintiffs' suggestion that Executive Order 14,064 guaranteed any particular party a right to recover is baseless. *See* Opp. 7. Indeed, the United States in its briefing has declined to support any particular turnover petition. MDL Dkt. 7661. Instead, the Government, having filed a Statement of Interest, is now allowing the judicial process to play out and the law to be applied.

The apocalyptic language that permeates the Opposition is thus unwarranted. The case is extraordinary, but applying New York law as written to permit the implementation of the

---

304, 312 (S.D.N.Y. 2004) (noting Second Circuit's use of § 5240 to reduce overbroad restraining notice "to apply only to sufficient funds to satisfy the judgment") (citation omitted); *78-14 Roosevelt, LLC v. Hamilton-Madison House, Inc.*, 100 N.Y.S.3d 611 (App. Term. 2018) (correcting amount of restraining notice). This accords with age-old common law principles relating to such writs. *E.g., Hunt v. Loucks*, 38 Cal. 372, 381 (1869) ("[A]n execution which is amendable is not void, and . . . an execution which merely calls for too much money is amendable.").

[21] The Ashton Plaintiffs misstate the role and functions of the PECs, which are defined in Case Management Order No. 3, MDL Dkt. 248. That CMO imbues the PECs with limited authority to coordinate certain common pretrial proceedings, to promote judicial efficiency and avoid duplication. It says nothing about execution efforts, which have been prioritized and pursued by individual plaintiffs' groups based on their own strategic choices throughout the MDL. *See, e.g.*, MDL Dkt. 7498 (discussing history of execution-related efforts of the Federal Insurance Plaintiffs). The Ashton Plaintiffs have not hesitated to take unilateral and separate action where they believed it in their interest, as in their insistence on filing a separate complaint and brief as to Saudi Arabia in 2017 (Case No. 17-cv-2003 Dkt. 1; MDL Dkt. 3472, 3474); similar refusal to join the PECs' consolidated amended complaint as to Sudan in 2020 (MDL Dkt. 6537, 6359); objection to the PECs' briefing schedule for their Rule 54(b) motion (MDL Dkt. 7443); and unilateral media activities that prompted serious judicial inquiries concerning violations of Court protective orders (which were prejudicial to all other plaintiffs) (MDL Dkt. 7167 (Oct. 4, 2021 Order)).

Framework Agreement would not destroy "decades of labor and cooperation," or "infring[e] on this Court's jurisdiction[.]" Opp. 20; *see also, e.g.*, Opp. 2. The MDL's work goes on, and many 9/11 Families continue to pursue various routes to obtain and satisfy their judgments—including the Havlish Creditors, who will have billions of dollars in unsatisfied judgments even if turnover is granted. As previously noted, the Ashton Plaintiffs are at this very moment working to obtain billions of dollars in damages from the Kingdom of Saudi Arabia and the Republic of the Sudan and are seeking to participate in every new round of distributions from the VSST.

It is the Ashton Plaintiffs who are endangering two decades of cooperation by refusing to join the Framework Agreement.[22] After all, every other plaintiff group in the 9/11 Community has joined. It is the Ashton Plaintiffs, not the Havlish (or Doe or Federal Insurance) Creditors, who are acting to disrupt the otherwise unified efforts of the 9/11 Community.

The truth is that the Havlish and Doe Creditors have followed the law as written and now ask the Court to apply the law as written. Those facts alone are what drive the Ashton Plaintiffs to invite this Court to assume novel powers and rewrite the law—and in doing so, to throw out an equitable distribution plan that has been agreed to by the rest of the 9/11 Community in the event the Court grants turnover. The Court has no choice but to decline their invitation.

## III.   Conclusion

For the foregoing reasons and the reasons stated in the Havlish and Doe Creditors' initial memoranda of law, their motions for turnover should be granted.

---

[22] The Ashton Plaintiffs' concern that the *ex parte* emergency order of attachment recently issued by Judge Caproni in *Owens v. Taliban*, 22-cv-1949 (S.D.N.Y. Mar. 21, 2022), ECF No. 33, might endanger the Framework Agreement is misguided. *See* Opp. 2. While the *Owens* Court was under understandable pressure to make an expeditious decision given the exigent posture of the attachment request, its decision was nevertheless squarely foreclosed by binding Second Circuit caselaw, and we expect the attachment order to be vacated in due course for largely the same sanctions-based reasons that the Wodenshek Complaint cannot issue. That is: (1) it attaches assets which have been blocked by the President pursuant to his authority under IEEPA, Exec. Order No. 14,064 § 1(a); (2) blocked assets are not subject to attachment orders, *see, e.g.*, 31 C.F.R. § 594.312; and (3) TRIA's exception for writs of execution against blocked assets is not available to those (like the Owens litigants) without enforceable final judgments, *Smith*, 346 F.3d at 271.

Dated: April 27, 2022

<u>/s/ Lee S. Wolosky</u>
Lee S. Wolosky
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1628
lwolosky@jenner.com

Douglass A. Mitchell (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 639-6090
dmitchell@jenner.com

Timothy B. Fleming (DC Bar No 351114)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB PLLC
2202 18th Street, NW, #110
Washington, DC 20009-1813
(202) 467-4489

Dennis G. Pantazis
(AL Bar No. ASB-2216-A59D)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, LLC (Lead Counsel)
301 19th Street
North Birmingham, AL 35203
(205) 314-0500

Richard D. Hailey (IN Bar No. 7375-49)
RAMEY & HAILEY
9333 North Meridian Street, Suite 105
Indianapolis, IN 46260
(317) 582-0000

Robert M. Foote (IL Bar No. 03124325)
FOOTE, MIELKE,
CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL 60134
(630) 232-7450

Stuart H. Singer (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Phone 954 356 0011
Fax 954 356 0022

David A. Barrett
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Phone 212 446 2300

*Counsel for the Havlish Creditors*


/s/ Orlando do Campo
Orlando do Campo
DO CAMPO & THORNTON, P.A.
150 S.E. 2nd Avenue, Ste. 602
Miami, FL 33131
Phone 305 358 6600
Email od@dandtlaw.com

/s/ John Thornton
John Thornton (*pro hac vice*)
DO CAMPO & THORNTON, P.A.
150 S.E. 2nd Avenue, Ste. 602
Miami, FL 33131
Phone 305 358 6600
Email jt@dandtlaw.com

Daniela Jaramillo (*pro hac vice*)
DO CAMPO & THORNTON, P.A.
150 S.E. 2nd Avenue, Ste. 602
Miami, FL 33131
Phone 305 358 6600
Email dj@dandtlaw.com

*Counsel for the Doe Creditors*