M4qWashC

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   In re Approximately $3.5 Billion
    of Assets on Deposit at the Federal      22 Civ. 3228 (GBD)(SN)
4   Reserve Bank of New York in the
    Name of Da Afghanistan Bank
5
                                             Conference
6   ------------------------------x
                                             New York, N.Y.
7                                            April 26, 2022
                                             11:00 a.m.
8
    Before:
9
                    HON. GEORGE B. DANIELS,
10
                                        District Judge
11                         -and-

12                  HON. SARAH NETBURN,

13                                      U.S. Magistrate Judge

14

15

16                       APPEARANCES

17

18  KREINDLER & KREINDLER LLP
         Attorneys for Ashton and Wodenshek Plaintiffs
19  BY:  JAMES P. KREINDLER
         MEGAN WOLFE BENETT
20       ANDREW J. MALONEY III
         STEVEN R. POUNIAN
21       JAMES G. SIMPSON
         -and-
22  SHER TREMONTE LLP
    BY: THERESA TRZASKOMA
23

24

25
```

M4qWashC

1                         APPEARANCES (cont'd)

2    BAUMEISTER & SAMUELS P.C.
          Attorneys for Bauer Plaintiffs
3    BY:  MICHEL F. BAUMEISTER
          DOROTHEA M. CAPONE
4
     MOTLEY RICE, LLP
5         Attorneys for Burnett Plaintiffs
     BY:  ROBERT T. HAEFELE
6         WILLIAM H. NARWOLD

7    JOHN F. SCHUTTY
          Attorney for Dickey Plaintiffs
8
     COZEN O'CONNOR
9         Attorneys for Federal Insurance Plaintiffs
     BY:  SEAN P. CARTER
10
     JENNER & BLOCK LLP
11        Attorneys for Havlish Plaintiff
     BY:  LEE WOLOSKY
12        DOUGLASS A. MITCHELL
          -and-
13   WIGGINS, CHILDS, PANTAZIS FISHER & GOLDFARB LLC
     BY:  DENNIS G. PANTAZIS
14        -and-
     FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
15   BY:  ROBERT M. FOOTE
          -and-
16   RAMEY & HAILEY
     BY:  RICHARD D. HAILEY
17
     MELLON & WEBSTER, P.C.
18        Attorneys for Hoglan Plaintiffs
     BY:  JAMES McCOY
19
     ANDERSON KILL P.C.
20        Attorneys for O'Neill Plaintiffs
     BY:  JERRY S. GOLDMAN
21        BRUCE E. STRONG

22   DO CAMPO & THORNTON, P.A.
          Attorneys for Judgment Creditors
23        John Does 1 through 7
     BY:  JOHN THORNTON
24

25

M4qWashC

1          (Case called)

2          JUDGE DANIELS:  All right.

3          Ladies and gentlemen, first, the purpose of this

4   proceeding is so that everyone can get a clear understanding,

5   from your perspective and from our perspective, of how we're

6   proceeding with regard to these funds.  My intent is to resolve

7   whatever issues need to be resolved in the current turnover

8   proceedings.  Anyone who believes they have any interest, who

9   are a part of the MDL or not part of the MDL, in these funds,

10  if they're not already here in this proceeding, should seek to

11  intervene, because this is where we're going to decide this

12  issue.

13         I've spoken with Judge Caproni.  We are in agreement

14  that we will be moving forward, and it is not likely that any

15  other proceeding will interfere or address the issues that we

16  intend to address in the turnover proceedings prior to our

17  moving forward.

18         We have a schedule.  The most recent letters asked

19  about adjusting the schedule.  I'll let Judge Netburn address

20  those issues, but I want to make something really clear.  There

21  is no other proceeding that anyone in this room can initiate

22  that will be appropriate to address the issues that we're going

23  to address in the turnover proceeding.

24         I'll be more direct about this.  The filing that was

25  made before Judge Caproni of a separate complaint by plaintiffs

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

M4qWashC

1   who are already plaintiffs within another case in which they're

2   seeking to obtain funds in support of judgments here is wholly

3   inappropriate.  We can address that further, but I do not

4   intend to spend any more of the Court's time or the lawyers'

5   time addressing those issues.  As far as I'm concerned, that

6   case will not interfere.

7           I will give the lawyers in that case an opportunity to

8   consider immediately whether they wish to, within the next 24

9   hours, move to dismiss that case without prejudice.  If that is

10  not done, if that's not a decision that is made by the lawyers

11  in that case, then I will act independently on that case and

12  dismiss that case on its merits.  I'll give you 24 hours to

13  decide what to do.  It is inappropriate to file a duplicative

14  case that seeks to enforce the same rights based on the same

15  set of facts and to enforce a judgment in a litigation in which

16  the parties have been engaged for years.  It is clearly not

17  appropriate for a class action, a putative class action.

18          The fact is that's one of the reasons why we're all

19  here in an MDL, because presumptively, this is not appropriate

20  for a class action.  These are individual claims, and I do not

21  intend to prejudice any party.  In the turnover proceeding, we

22  intend to resolve certain specific issues.  And I can tell

23  you -- I have my notes here -- one, we're going to first

24  resolve whether or not these subject funds are available to

25  satisfy judgments against the Taliban.  That's the first

M4qWashC

1    question to be resolved.

2            Second, which plaintiffs may recover and obtain money

3    from those funds if those funds are, in fact, legally available

4    to satisfy judgments?

5            And then discuss and determine what is an equitable

6    distribution of those funds given the number of plaintiffs that

7    are outstanding.

8            I can tell you right now my inclination is not that an

9    equitable distribution is first come first served.  My

10   understanding is it will be resolved one of three ways.  If the

11   plaintiffs cannot agree, this Court will independently

12   determine whether these funds are available and what is the

13   appropriate distribution of those funds.

14           If there is a suggestion by the parties, that the

15   parties agree upon -- and my understanding is that pretty much

16   everyone has agreed to some form of distribution, other than

17   the Ashton plaintiffs -- and again, my reaction to the filing

18   of a separate case before another judge to try to obtain those

19   funds is inappropriate not only because there's a case already

20   pending here -- and that's filed to be related to a case that

21   isn't even part of the MDL and isn't even a 9/11 case -- but

22   also, as a class, the relief that the parties sought in that

23   case advantages no one but themselves.  So to say that there is

24   somehow a reasonable representative plaintiff for all the other

25   plaintiffs, quite frankly, from what I've read, I don't know

M4qWashC

1    any other plaintiff in this room who agrees with it.

2              This was what I consider to be a totally inappropriate

3    attempt to simply advantage one set of plaintiffs.  There's no

4    legal basis to do so.  There's no legal basis to file a

5    separate complaint, given there's already litigation here, and

6    there's no legal basis to attempt to make that into a class

7    action to represent a class of plaintiffs.  We have

8    approximately 10,000 plaintiffs here, and I see no advantage to

9    any of the particularly 9,000 of these plaintiffs who already

10   have judgments or are in the process of obtaining judgments.

11             Now, I've spoken with Judge Caproni.  We all know what

12   the status is of the case that's before her.

13             One, it is not a 9/11 case.

14             Two, the plaintiffs don't have a judgment.

15             Three, the plaintiffs haven't even served in that

16   case.

17             So that case is not likely to advance in any way that

18   would interfere with the schedule that we anticipate in

19   efficiently and effectively moving forward with to resolve the

20   turnover proceeding.

21             Judge Caproni and I have been in contact, and we're

22   going to keep in contact with an understanding that if some

23   action needs to be taken in that case that might influence

24   what's going on here, we will discuss it before it happens.

25   But it is not likely that even in a general scenario -- there's

M4qWashC

1    no need for any further orders to prevent that from happening.

2    That case not only is not ripe for this determination of the

3    issues that the second case was attempting to join, there are

4    even questions about whether or not that in and of itself is a

5    viable case.

6         So everybody should understand that we will be

7    proceeding as we intended to proceed.  We will decide those

8    issues in this litigation.  I do not anticipate that it will be

9    decided anywhere else, and I am going to indicate right now

10   that no further filings of new complaints in any other court

11   that address the claims raised in this case and before this

12   Court are to be filed without leave of this Court.  All right?

13        I want to make that clear to everybody.  Most of the

14   concerns that the parties have raised in their letters and in

15   their actions are concerns that both Magistrate Judge Netburn

16   and I have already discussed, have already factored in, have

17   already considered, and we intend to move forward in order to

18   make a determination as to if and how these funds are to be

19   distributed.

20        As I say, my intent is to concentrate, to the extent

21   possible, on what would be an equitable distribution of those

22   funds if those funds are available.  It is not, as I say, first

23   come first served.  If the parties have a suggestion, which is

24   unanimous or which is the majority of the parties, the vast

25   majority, we are willing to consider that.

M4qWashC

1    I don't want to go too far ahead of myself, but I'm

2    even willing to consider, if it's appropriate, appointing a

3    special master to help the parties agree on a proposal that we

4    can consider and determine whether or not it's a reasonable

5    distribution of those funds if those funds are legally

6    appropriate to disburse to the plaintiffs in this case.

7        So I want to make it real clear there should be no

8    more strategic filings in order to advantage any particular

9    plaintiff.  Quite frankly, if I have to make an equitable

10   determination about who gets what, one of the things I may end

11   up factoring in is which parties have been obstructionist with

12   regard to the process and whether or not they should be treated

13   on the same footing with the other plaintiffs.

14       Let me be blunt about it.  The lawyers here are not

15   crabs in a barrel.  All right?  You're all plaintiffs with the

16   same type of claim and similar interests, but the determination

17   of who is to recover, how much is to be recovered, and where

18   that recovery should come from are individual decisions, for

19   the most part, that have to be made.  And we are in the

20   process.  We would be probably a good 25 hours ahead of where

21   we are today if we didn't have to deal with this kind of issue

22   in this case and we could continue to concentrate on moving

23   along with the determination of damage awards and final

24   judgments for the parties.

25       That's my initial statement.

M4qWashC

1            If someone wants to be heard, if you have any

2    questions about that, let me hear it now, because this isn't

3    rocket science that we're dealing with.  We're moving forward

4    efficiently, and to the extent that you have a concern that

5    your interests are not being adequately considered, you can let

6    me know.

7            Yes, Ms. Benett.

8            MS. BENETT:  Megan Benett on behalf of the Ashton

9    plaintiffs and the Wodenshek plaintiffs.

10            First, I'd like to thank the Court for having us

11    appear in person for this conference and for stating your

12    concerns as to equitable treatment and not sort of having this

13    as a first-come-first-served process.

14            I do want to be clear we are the people who filed the

15    class complaint.  I understand the Court's frustration.  I hear

16    what the Court is saying about that.  I want to clarify a

17    couple of points.

18            First of all, the Ashton plaintiffs are not a small

19    minority.  We represent 800-some families, 25 percent of the

20    victims killed in the 9/11 attacks.  The reason that you see

21    that we haven't joined into what has been described as the

22    framework agreement is that because it is our understanding

23    that that framework agreement would put the families of the

24    Havlish plaintiffs in a position of receiving somewhere north

25    of 80 percent of their judgments, the value of their judgments;

M4qWashC

```
1    the insurance companies receiving less than 20 percent of the
2    value of their judgments; and the rest of the 2,900-some
3    families receiving something on the order of 1 or maybe 2
4    percent of the value of their judgments.
5         JUDGE DANIELS:  Well, since it has not been laid out
6    for me or Judge Netburn exactly what that agreement entails, I
7    have not factored any of that in a determination at this point
8    as to whether these funds are available for recovery and how
9    these funds should be distributed.
10        MS. BENETT:  I understand, and that obviously, both in
11   this case and the Owens case, is the major threshold question.
12   And when we had the initial conference in February, I think we
13   had expected that the order, the decision-making would take
14   those dispositive threshold questions first and then the
15   thornier distribution questions as sort of a second-order
16   problem.  It appeared to us, based on the schedule in the
17   turnover proceedings, that there was going to be a
18   determination regarding distribution perhaps simultaneous with
19   the question of whether those assets would be available at all.
20        To be clear, the 23(b)(1)(B) complaint would not
21   advantage the Ashton plaintiffs over anybody else.  In fact,
22   the class definition was defined specifically in a way to
23   include everybody who has a claim against those assets and
24   would allow for transparent -- because to the Court's comment
25   about the terms of this framework agreement, we haven't been
```

M4qWashC

1    presented with a formal term sheet at all either.  So my

2    description to the Court is driven, in part, by the fact that

3    this is somewhat opaque and that the 23(b)(1)(B) class

4    complaint seemed to us the most transparent, equitable and

5    judicially overseen vehicle to consider the distribution,

6    should the Court get to the distribution stage.

7         It also, and I understand that the Court -- I

8    understand the hostility to the vehicle, but it did, to our

9    mind, also provide the Court with a way to take jurisdiction

10   over the entirety of those $3.5 billion in assets.  And I hear

11   the Court's representation regarding the Owens case.  The fact

12   is that the April 11 decision from Judge Caproni granted an

13   order of attachment and stated that the Owens plaintiffs would

14   have priority.

15        It may well be that that is not ultimately the case,

16   but given that posture, I think we were not unreasonable to be

17   concerned that there was an ongoing race to the bank.  The

18   23(b)(1)(B) complaint is not unusual as a sort of settlement

19   vehicle.  It is specifically designed when there is a limited

20   fund.  It is not a question about determination of liability on

21   an individual basis, but it's basically an equitable vehicle

22   that is similar to a bankruptcy proceeding or reverse

23   interpleader.  And so the point about filing was simply to

24   provide a vehicle that would treat all of the victims of

25   Taliban-sponsored terrorism in the fairest, most equitable and

M4qWashC

1   most transparent basis.

2          It was not meant to advantage one family.  It was not

3   meant to advantage one law firm.  To the contrary; we have

4   consistently, throughout this process, been voicing our

5   concerns about any distribution proceeding that would treat one

6   family who suffered similar, if not identical, losses

7   differently from another family who suffered those same losses.

8          I believe that everybody, all of the 9/11 families

9   feel that way.  I know that in statements to the press, that

10  the lawyers for the Havlish group and Ms. Havlish herself

11  stated that they care about fair treatment here.  The

12  23(b)(1)(B) limited class fund, to our mind, given the

13  competing claims in the Owens case -- and to be clear, the

14  Owens plaintiffs would also be able to participate in a limited

15  class fund.  This was not meant to exclude the non-9/11

16  community.  It was meant to be as welcoming as possible to

17  everybody who can establish that they have liability claims

18  against the Taliban and that they've suffered injuries

19  proximately caused by the Taliban's support of mass terrorist

20  attacks.

21         I don't know if the Court wants to hear anything more

22  about that.

23         JUDGE DANIELS:  No, I don't, because I understand your

24  position and I understand what you attempted to do, but I think

25  it's totally inappropriate in this case.

M4qWashC

1          I'll just give you one example.  There's absolutely no

2     reason why that complaint should have been filed before Judge

3     Caproni rather than filed here, and I don't know that there's

4     any party here who is going to say that your filing that,

5     particularly as a class action, somehow advantaged them.  It

6     was an attempt to advantage you and disadvantage everyone else.

7     As I say, unless the parties want to spend some more time

8     briefing it and litigating it, I have determined that it is

9     inappropriate and it is appropriate for dismissal.  It does not

10    add anything to this litigation, and it does not address any

11    issues that are not being addressed in this litigation.  That

12    should settle the issue.

13          I will give you 24 hours to decide whether or not you

14    want to move to dismiss this case, without prejudice, and if

15    you make such an application within the next 24 hours, I will

16    grant that application.  If you do not make such an

17    application, I will move forward to dismiss the case on its

18    merits, because it has no utility.  It has absolutely no

19    utility.

20          Now, if it was motivated out of fear, I understand

21    that; that's what you're basically saying to me.  But I can

22    assure you that the process we have in place, the

23    communications that are almost daily at this point that

24    Magistrate Judge Netburn and I have on this issue and the

25    communications that I am now having directly with Judge

M4qWashC

1    Caproni, having the same conversations we're having here about

2    what's going on over there and what's going on over here and

3    whether or not cases belong over here and whether or not

4    anybody can pick and choose and judge shop where they want to

5    file their next claim, that clearly is to be resolved in this

6    MDL litigation.

7        So the fact is you should let me know whether you want

8    to step aside and focus on the turnover proceeding.  If the

9    Owens plaintiffs want to come in and they think they've got an

10   interest and they want to participate in the turnover

11   proceeding, they can.  But we intend to move forward and

12   resolve this issues expeditiously, step by step, giving

13   everyone an opportunity to be heard.  There's no reason to

14   believe that there's any concern that these issues are going to

15   be resolved somewhere else before they're resolved here.

16       You made your calculation that this was the way that

17   you wanted to proceed, by filing a separate lawsuit related to

18   Owens.  But I want to make clear to you and to everybody else

19   who might want to consider doing the same thing, it's not going

20   to happen.  What you will do is not put yourself at the front

21   of the line; you will end up putting yourself at the back of

22   the line by taking those kind of actions.

23       You know we have a forum to resolve these issues.

24   That is the only forum that exists to resolve these issues

25   currently.  If that changes, then we can address it.  But I

M4qWashC

1    don't anticipate it's going to change, and I don't anticipate

2    that Judge Caproni is going to take any action in that infant

3    case to interfere with a determination that all of you are

4    going to have an opportunity to participate in and will be

5    resolved here and resolved with the availability and the

6    distribution of those funds, if those funds are available to

7    distribute to the parties.

8              I don't want to spend a whole lot more time on this,

9    unless you want to spend a lot more of your time on this.

10             MS. BENETT:  No.  I just want to correct a couple of

11   things.

12             First of all, to be clear, the class complaint -- and

13   I hear the Court on that, but I want to make clear it would not

14   have advantaged the Ashton plaintiffs.  We would not have been

15   driving the process the way the Havlish attorneys suggested in

16   their filing yesterday.  It would have been a judicially

17   overseen process.

18             JUDGE DANIELS:  Well, who would it have advantaged

19   then?

20             MS. BENETT:  All of the families who are victims.

21             JUDGE DANIELS:  Why?  They're perfectly satisfied to

22   have this issue resolved in a turnover proceeding.

23             MS. BENETT:  No, no.  That's not true.  It's not all

24   of the 9/11 families who are perfectly happy to have it

25   satisfied in the turnover proceeding, and it's and it's not all

M4qWashC

1    of the victims of Taliban-sponsored terrorism.

2            JUDGE DANIELS:  Who else are you referring to other

3    than yourself?

4            MS. BENETT:  All of the embassy bombing victims, and

5    to be clear --

6            JUDGE DANIELS:  Who else are you referring to, other

7    than your client?

8            MS. BENETT:  The 25 percent of the 9/11 families that

9    we represent.

10           JUDGE DANIELS:  I'm sorry.  I have not received any

11   communication from any other lawyers saying that they are in

12   agreement with what you did.

13           MS. BENETT:  They aren't.  They made a different,

14   tactical decision.  They wanted to enter into an agreement to

15   hedge their bets and guarantee some modest economic recovery

16   for their clients at a grossly disproportionate value vis-à-vis

17   the insurance companies and the families of a smaller number of

18   victims.  That was a different decision.

19           We made a decision to file this because we thought it

20   wasn't right to disadvantage 2,900 --

21           JUDGE DANIELS:  It should have been filed here.

22   That's my first point.  It should have been filed here.  You

23   don't get to file it in Wyoming.

24           MS. BENETT:  I hear you.

25           JUDGE DANIELS:  We're in the middle of an MDL that's

M4qWashC

1    been going on for years and involves thousands, as you say, of

2    plaintiffs who have a similar interest in these funds.  That is

3    not the appropriate way to proceed.  It's not even the

4    efficient way to proceed.  It's the inefficient way to proceed,

5    given the fact we are engaged in turnover proceedings.

6              MS. BENETT:  I hear you on that point, and I know the

7    Court recognizes this, but I do want to just state on the

8    record we filed with -- in connection with marking it related

9    to Owens for one reason, which is that that was the only case

10   that had a judicial restraint on the funds.  It's an *in rem*

11   proceeding against $3.5 billion.  We sent a copy.  As the Court

12   knows, we sent a copy of our filings.  We filed them the same

13   time in the MDL, and I recognize that this was not how the

14   Court would have --

15             JUDGE DANIELS:  Well, look --

16             MS. BENETT:  But we did not try to hide it.  We

17   provided and we trusted --

18             JUDGE DANIELS:  If you don't want to participate here

19   and you want to go sit over there, maybe I'll consider that.

20   But you know that's not what you want to do.

21             MS. BENETT:  We want all of the claims to the $3.5

22   billion to be consolidated in front of a single court.

23             JUDGE DANIELS:  And that's this Court.

24             MS. BENETT:  And that's fine.

25             JUDGE DANIELS:  There's no reason to believe that

M4qWashC

1      that's supposed to be Judge Caproni.

2              MS. BENETT:  But we only believed that because Judge

3      Caproni had issued the April 11 order restraining the assets

4      and because in connection with the previous effort to have the

5      Owens case brought into the MDL, both courts rejected that.  So

6      we gave both courts the complaint.  Certainly, in retrospect, I

7      wish that we had marked it as related to both.  I'm not sure if

8      that's even an option on the form, now that I'm thinking about

9      it.

10             JUDGE DANIELS:  No, it's not.  It would have been an

11     inappropriate option.

12             MS. BENETT:  We gave both courts, we intended to give

13     both courts notice and trust the courts to decide which venue

14     was proper.  But the point was always that the 3.5 billion

15     should be adjudicated by a single court, including all those

16     threshold questions that are going to be dispositive of whether

17     this money is available to satisfy any judgments in the first

18     place.

19             So the filing of the class complaint was meant to, A,

20     have all the adjudications regarding those assets from a single

21     court; and two, as I said, and I -- you know, I hear the

22     Court's response to this.  But it was truly because we were

23     concerned about a process that was going to so grossly

24     disproportionately treat 9/11 family members in a way that

25     our -- and I speak to our clients all the time.  I know the

M4qWashC

1    same is true even for clients represented by firms that reached

2    a different decision, that the distribution as proposed in the,

3    initially in the turnover proceedings was so deeply troubling

4    to our family members that we did not believe that we could

5    participate in the framework agreement that would have put, you

6    know, treated one person's life as worth 2 percent of the

7    others'.

8         JUDGE DANIELS:  As I usually say, that was a hallway

9    debate that you had with the others.  That was not an issue

10   that this Court raised.  That is not an issue that this Court

11   adopted.  This Court isn't even aware of what the agreement is.

12   The appropriate place to resolve those issues and understand

13   how we were ultimately going to proceed is in this forum, in

14   this courtroom.

15        MS. BENETT:  And I think that that's -- and to the

16   extent that we can do so with judicial oversight and in a

17   transparent manner, that will provide real comfort to the

18   family members.  Before the Court's order on Thursday, we had

19   intended to file something noting that we were -- you know,

20   given that the framework agreement had been discussed in papers

21   but without terms, we did intend, before our attention turned

22   to the hearing this morning, to ask the Court to perhaps

23   explore what the terms of that framework agreement looked like,

24   because like I said, our position has been all along that every

25   single family member, all 2,977 families, should be treated

M4qWashC

```
 1    fairly and equitably; that the agreement, as we understood it,
 2    would not only fail to do so but would fail to do so in a very
 3    dramatic fashion; that the 23(b)(1)(B) class complaint was a
 4    vehicle that could take into consideration certain concerns
 5    that parties have raised previously of those who have not
 6    participated in the USVSST fund, which has made, to be clear,
 7    very modest payments to some of the 9/11 family members, that
 8    their decision not to participate in that fund could be taken
 9    into consideration when fashioning any distribution should the
10    assets be available through the class complaint -- through the
11    limited class fund, rather.
12            JUDGE DANIELS:  And you all have the opportunity to
13    raise those issues before this Court.
14            JUDGE NETBURN:  Right.  I think the thing that's most
15    frustrating here is you could say a lot about this MDL, but you
16    could not say that we haven't given everybody an opportunity to
17    be heard.  We allow everybody to speak up.  We want every
18    family to participate, and filing this class action before
19    Judge Caproni feels like an end run around that process.  And
20    that feels inappropriate.  I understand that you represent a
21    quarter of the families, but the vehicle that you chose to do
22    this feels completely like you're trying to slot out everybody
23    else when you have never been denied an opportunity to be
24    heard.
25            I think there's lots of questions about your class
```

M4qWashC

1   complaint, as evidenced by this conference, as to whether or

2   not you would be adequate counsel, given the opposition so many

3   people have; whether or not your claims are typical; whether or

4   not you can prove that class is a superior method over the MDL.

5   All of those things are very serious questions in my mind and

6   point to a not-well-thought-out choice.  And as a result, we

7   have all spent, as Judge Daniels said, dozens and dozens of

8   hours focusing on this charade instead of focusing on the real

9   issue.

10          So if you want to be heard on what you think is an

11  appropriate distribution, should the Court determine that those

12  funds are available, you will have that opportunity to be

13  heard.  But going about it this way leaves a very off taste in

14  our mouths, and it doesn't feel like it's being done in the

15  interest of the class.  It feels like it's being done in the

16  interest of your clients because your clients feel like they're

17  not going to get what you think is appropriate.  And I'd like

18  to hear about this, but not through this vehicle.

19          MS. BENETT:  Understood.

20          Just to be clear, Judge, at the February 22

21  conference, there was the *sua sponte* questions about how

22  anybody without a liquidated damages judgment would have

23  standing to participate in a turnover proceeding as a sort of

24  the threshold matter, and it was at that point that we became

25  concerned.  And I hear what the Court is saying about the time

M4qWashC

1    and effort spent thinking about an equitable process here.  And

2    again, it's obviously very reassuring to the family members;

3    I'm sure all of them, not just those we represent.  But we did

4    have concerns that there would be -- we didn't know how it was

5    going to unfold.

6           The class complaint was -- and I, again, hear the

7    Court.  I can say it was not meant to be an end run at all.  To

8    the contrary, and it's not meant to be outside of the MDL.  It

9    is a limited class fund that could be available for purposes of

10   resolving claims to the DAB assets within the MDL.  It's not --

11   there are no sort of -- there are no liability questions.  I

12   mean depending on how -- and again, the way the class was

13   crafted was meant to be as fair and reasonable as possible

14   given the nature of the claims already asserted by various

15   parties against the Taliban and against the DAB assets.

16          I don't know that it's worth answering the Court's

17   questions or addressing the Courts' complaints.  I will say

18   it's certainly not meant to be a charade.  It was meant to be a

19   vehicle that would -- you know, we thought that the Court might

20   welcome as a method for this distribution, given also what the

21   Court said at the February 22 conference about being sort of

22   bound by New York State priority rules and the same -- Judge

23   Caproni echoing the same at the March conference of the Owens

24   hearing.

25          And the fact is that the Rule 23(b)(1)(B) limited

M4qWashC

1    class fund would actually take jurisdiction over all of the

2    assets and would provide a way for the Court to not have to

3    worry about the built-in inequity of the priority rules in a

4    case like this, where you have a mass terror attack or several

5    terrorist attacks with sort of predetermined damages, judgments

6    issued against the co-joint tortfeasor, would allow the Court a

7    means by which to address this equitably without having to be

8    concerned with the New York State priority rules, which I think

9    it's fair to say certainly didn't contemplate this particular

10   situation but also don't seem to have fair application in an

11   MDL, where the use of those priority rules would sort of force

12   the Court into the position of choosing, you know, one person,

13   one identically situated person over another.

14          I don't know if it's --

15          JUDGE DANIELS:  Those are tough choices, but this

16   Court is prepared to make those choices.  OK?  And it's not up

17   to you to make those choices, to reframe it to your advantage.

18   Those issues will have to be addressed.  We will address every

19   one of those issues after giving everyone a full opportunity to

20   give their input.  Neither you nor any individual lawyer in

21   this room has the ability or the right to define that for this

22   Court or for the rest of these plaintiffs.

23          All of these plaintiffs have the same interest that

24   you have in making sure that their clients get as much

25   satisfaction of their outstanding damages as you do.  That's to

M4qWashC

1    be decided in the same room at the same time for all of the

2    plaintiffs, not to be decided in a separate courtroom, in a

3    separate litigation, while we're trying to figure out what

4    you're doing across the hall.

5         MS. BENETT:  I hear you, and I know I've said this

6    already.  I just want to be clear.  The proposal that we put

7    forward -- first of all, this Court could oversee a limited

8    fund.

9         JUDGE DANIELS:  You didn't bring it to this Court.

10   You didn't give us any indication --

11        MS. BENETT:  I understand.

12        JUDGE DANIELS:  -- that that was the case.  You gave

13   us the opposite indication.

14        MS. BENETT:  My point is that this Court, of course,

15   could take jurisdiction over that if it chose to, but I just

16   want to clarify that it would not advantage the family members

17   we represent over somebody else.  To the contrary, it is

18   currently the only, the only vehicle, procedural vehicle we see

19   that would not do that.

20        JUDGE DANIELS:  Thank you.

21        MS. BENETT:  I'm sorry.  I just wanted to clarify that

22   the proposed limited class fund would not, in fact,

23   advantage -- well, that's not -- it would advantage -- it would

24   be more advantageous to the 2,930 non-Havlish family members

25   than strict application of New York priority rules, but it

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

M4qWashC

1    would not be more advantageous to the family members we

2    represent vis-à-vis all of the other family members of those

3    killed and injured in Taliban-sponsored terrorist attacks.

4            I understand, and I've heard both of the judges

5    express your displeasure and believe that this was

6    gamesmanship.  I want to be clear.  We filed this in order to

7    treat every family that was a victim of a Taliban-sponsored

8    terrorist attack on an equal and fair basis, not to advantage

9    our clients, not to advantage certain family members over

10   others and not to advantage us.  In fact, a limited class fund

11   would be overseen by the Court.  It would not be overseen by

12   the lawyers.

13           This was not a question about class counsel fees.

14   This was about making sure there was a vehicle, given what we

15   had heard at the two prior hearings, in the Owens case and this

16   case, about the Court's feeling bound by New York State

17   priority rules and given what the contours of this framework

18   agreement, which I understand neither I nor the Court know the

19   specifics of, but I am fairly confident would not have treated

20   family members on a fair and equitable basis.

21           JUDGE NETBURN:  I think Judge Daniels and I both don't

22   want to get too far along on the merits of this class

23   complaint, but to the extent what I'm hearing is that you think

24   filing a class action would obviate the need or the obligation

25   of the Court to consider New York priority rules, why do you

M4qWashC

1    think that?  Wouldn't there still be an application of priority

2    at least within the class complaint, or you think that just

3    disappears then and there wouldn't be subclasses, for instance?

4         MS. BENETT:  Do you mind if I –– my cocounsel, Ms.

5    Trzaskoma, who has more familiarity with this process, can tell

6    you why.  But there could be an equitable way to treat people

7    based on, for example, what category you fall into.  But I do

8    not believe that New York State priority rules would have any

9    application in the –– that basically the $3.5 billion goes into

10   a judicially supervised equitable trust, and then it is for the

11   Court to decide without application.

12        The only reason New York State priority rules are at

13   issue here is because of Federal Rule of Civil Procedure 69,

14   which says that in the execution of judgments, the Court should

15   look to the law of the state where it's situated.  Under a Rule

16   23(b)(1)(B) limited class complaint posture, however, you're

17   not looking at the execution of judgments.  You're looking at

18   the people who have claims.  However the Court would define the

19   class, you're looking at people who fall into that class who

20   have claims against that fund.  That's why it's an *in rem*

21   proceeding.

22        I think in the letter last night, one of the parties

23   had said they don't even know who the defendants are, but

24   that's because it's an *in rem* proceeding against these assets

25   themselves, and so New York State priority rules don't come

M4qWashC

```
 1    into play because you're not looking at execution of judgments.

 2              JUDGE DANIELS:  All right.  Did you want to be heard

 3    further on that?

 4              I don't want to spend a lot of time debating

 5    backwards.  I understand your position.  After we have this

 6    discussion, as far as I'm concerned, as I always say, we start

 7    this litigation anew.  I'm not holding this against the parties

 8    at this point, but I expect you to conform your conduct in the

 9    future consistent with the way this MDL is established and the

10    issues that are supposed to be decided in this MDL.  That

11    filing before Judge Caproni is inconsistent with that for a

12    number of reasons that we just discussed.

13              So as long as you understand and everyone else

14    understands -- this is not just for you; it's for anyone else's

15    benefit who thinks, OK, this is a way that I'm supposed to

16    change the issues that are before the Court and have them

17    decided in the way you want them decided.  That is not the way

18    we're going to proceed.  Due warning to everyone is that you

19    will do nothing but disadvantage your clients by this kind of

20    conduct in the future rather than advancing the possibility of

21    an equitable distribution of these funds if these funds are, in

22    fact, available.

23              Yes.

24              MS. TRZASKOMA:  Yes, your Honor.

25              JUDGE NETBURN:  Could you just state your appearance
```

M4qWashC

1    for the court reporter.

2              MS. TRZASKOMA:  Yes.  Apologies.

3              Theresa Trzaskoma from Sher Tremonte on behalf of the

4    Ashton plaintiffs and the class plaintiffs.

5              I don't want to tread on ground that Ms. Benett

6    already covered, but I do want to explain what the relief was,

7    is, that we are seeking in the 23(b)(1)(B) class.

8              This is with the reverse interpleader.  It doesn't

9    advantage anyone to be the class plaintiffs.  It is seeking an

10   equitable distribution of all the assets, including those that

11   are subject to the attachment order that Judge Caproni issued

12   in Owens.

13             Prior to our filing of that class action, it

14   appeared -- perhaps we were reading tea leaves, but there were

15   comments on the record in both this MDL and by Judge Caproni

16   that strict priority rules were going to apply, and that is not

17   appropriate in these circumstances.

18             A Rule 23(b)(1)(B) class action cuts through all of

19   that.  It allows the Court to do equity, which is what I hear

20   the Court wants to do.  It allows a single court, currently

21   this MDL Court, to take control and jurisdiction over the $3.5

22   billion and then to determine what is an equitable distribution

23   based on whatever factors all of the individual plaintiffs'

24   lawyers want to make arguments to the Court.  It is not

25   controlled by class plaintiffs.  It is solely in the Court's

M4qWashC

1     discretion.

2             And that's the vehicle we brought to -- I realize we

3     brought it to Judge Caproni, which you've made clear was the

4     wrong court.  But it was not intended to circumvent anything.

5     It was intended to provide a mechanism for, a procedural

6     mechanism for dealing with New York priority rules, which were

7     never intended to meet this extraordinary circumstance.

8             Rule 23 makes the New York priority rules irrelevant.

9     It takes us into an equitable process, where New York priority

10    rules don't even have to be considered.  It preempts New York

11    priority rules.

12            So it can argue the right mechanism for this very

13    extraordinary situation.

14            JUDGE DANIELS:  All right.

15            Before I turn to Magistrate Judge Netburn with regard

16    to -- I know there were some questions and requests about the

17    process and the dates of what things are due -- did anyone else

18    want to be heard before we moved into that?

19            MR. KREINDLER:  Good morning, your Honor.

20            Very quickly -- jim Kreindler -- and I'm not saying

21    anything about the class action or the specifics, but I did

22    want to just make one comment, your Honor, because we have been

23    together wrestling with this case for 15 years.  And even

24    before that, it's a long history, starting with the 1996

25    effective death penalty and Antiterrorism Act that was

M4qWashC

1    spearheaded by then Senator Biden and Senator Kennedy.  And

2    from that time on, when it comes to the states who are sponsors

3    or involved with terror, whether it's Libya or Saudi Arabia or

4    Iran, speaking personally, I have one principle in mind.  And

5    that is everyone -- every victim -- should be treated equally.

6    And as your Honors both know, while it took 20 years,

7    ultimately, we got $10 million per death for 270 people from

8    Libya in the Pan Am 103 bombing.  And that's been my approach,

9    and from the day or two after 9/11, it's something I've

10   expressed to the clients.

11            And your Honor is quite right when you identified the

12   fear we have that this approach, equal treatment for everyone,

13   which has been something important to me for these 25, 30

14   years, might be jeopardized by this, you know, race to file

15   first or obtain writs or judgments first.  And while I know

16   it's taken a lot of time, speaking personally, I'm glad we're

17   together, because at least personally, I feel that this

18   commitment that I think we all share is a common theme, and we

19   can achieve it not just with this fund but when we reach the

20   promised land at the end of the case.

21            So I just wanted to thank your Honors for your time

22   and, at least speaking personally, I am reassured that whatever

23   misconceptions were there we've taken care of, and we're on

24   track to do something good and right.

25            So thank you.

M4qWashC

1          JUDGE DANIELS:  Thank you, Mr. Kreindler.

2          Does anyone else want to be heard?

3          MR. CARTER:  Your Honor, very briefly.  Sean Carter

4     from Cozen O'Connor, your Honor.

5          There's been a fair amount of discussion today about

6     the framework agreement, and I just want to provide a brief

7     perspective on that for the Court.

8          There are many of us who recognized that there was a

9     pool of funds here that was unprotected and subject to

10    potential attack from parties outside of the MDL.  And at the

11    same time, we recognized the complexity of the issues facing

12    this Court in trying to deal with the turnover issues,

13    including because the procedural posture of claims on behalf of

14    the various plaintiffs, differed wildly, from people who had

15    actual judgments, who had moved for monetary judgments years,

16    ago to people who had only recently filed claims the.

17         Within all of those issues, many of us sought to reach

18    a range of compromises in that achieving a good result --

19    perhaps not a perfect result, but a good result -- would also

20    have streamlined this entire process for the Court.  So when

21    there's conversations here about what equity demands, what is

22    equitable and what's fair, I think part of the consideration

23    for the rest of us was achieving a good result that simplified

24    issues for the MDL Court and allowing the entire case to go

25    forward.

M4qWashC

1           That's all, your Honor.

2           JUDGE DANIELS:  Yes.

3           MR. BAUMEISTER:  Good morning.  I'll be brief also.

4           JUDGE DANIELS:  Put your appearance on the record.

5           MR. BAUMEISTER:  Mich Baumeister, representing the

6    Bauer plaintiffs.

7           I certainly am responding to Mr. Carter, and while he

8    talks about this was an efficient way, I can tell the Court

9    that my clients -- some of them are listening on the phone

10   today -- were told by other clients that the Havlish plaintiffs

11   would get 1.7 billion, his client would get 500 million.  They

12   were the deal people that would take it, and if you didn't

13   agree to sign on, even though you didn't know what you would

14   get as a client, even though you didn't know if there would be

15   money, especially even Owens, if you didn't do it, at the end

16   of the day you would get zero.

17          Some of my clients have been threatened.  I received a

18   letter threatening me, Do the deal.  It wasn't about

19   efficiency.  It was about lining their pockets and

20   disadvantaging the families.

21          So that's all I wanted to say.

22          JUDGE DANIELS:  Well, the question of what is an

23   equitable distribution, if that question is to be answered,

24   will be answered by this Court.  If all of the plaintiffs have

25   a suggestion or some of the plaintiffs have a suggestion or

M4qWashC

1    some third party has a suggestion for the plaintiffs, the

2    ultimate decision lies with the Court.  So I urge you to agree,

3    to the extent that you can agree, on what is, if you can, a

4    joint position.  If you cannot, those issues, the disputes

5    between the parties with regard to what is an appropriate

6    recovery for each plaintiff is an individual decision that has

7    to be made by this Court.  All right?

8              Anyone else?

9              Yes, sir.

10             MR. SCHUTTY:  Thank you, your Honor.  John Schutty.  I

11   represent a subset of the Ashton plaintiffs.

12             Your Honor, I want to thank you for your reassuring

13   words.  I can advise you that my clients have lived in fear

14   since February 22 when the New York State priority rules were

15   emphasized at that conference, and it was a growing fear among

16   the 9/11 families that the Havlish plaintiffs at that time

17   would take the lion's share of the $3-1/2 billion.  So I want

18   to thank your Honor for clarifying that the Court's intent is

19   to make an equitable distribution.

20             As you may know, I filed a letter, a motion requesting

21   permission to contest the judgment that was entered in favor of

22   the Havlish plaintiffs because that judgment was entered in

23   2012 based on common law, and under the common law of the state

24   of New York, for example, many of those plaintiffs would not

25   recover money.  Many of them would not get solatium damages.

M4qWashC

1    So I'd like the opportunity to address that issue with the

2    Court.

3              And in addition, I just want to tell your Honor that I

4    think the suggestion that a special master here would help to

5    get together with the plaintiffs' attorneys to ensure an

6    equitable distribution is something that should be thoroughly

7    considered.  Both judges sitting on the bench today worked so

8    hard for us, and this issue seems to be a subset of what's

9    going on overall in the litigation.  So I just would like you

10   to consider fairness and equity and remove some of the fear of

11   some of the family members.

12             Thank you.

13             JUDGE NETBURN:  I'll just note that I've received your

14   letter application.  I haven't acted on it.  We will shortly.

15             Anyone else want to be heard?

16             JUDGE DANIELS:  Ms. Benett.

17             MS. BENETT:  Just briefly.

18             JUDGE NETBURN:  Sure.

19             MS. BENETT:  Sorry.  One final suggestion from us.

20             I heard Judge Daniels on the 24 hours with respect to

21   our pending class complaint.  I'd ask if the Court might let us

22   provide a short letter explanation of how that particular

23   vehicle could work in a proceeding like this, specifically

24   thinking of this now in light of Mr. Schutty's concerns raised

25   in his letter and in his statements, that there is --

M4qWashC

1          JUDGE DANIELS:  I have no interest in pursuing that

2     option.

3          MS. BENETT:  OK.  I was going to offer the opportunity

4     to explain a little bit of the procedural aspects of it.

5          JUDGE DANIELS:  There's nothing that you can say that

6     would convince me that rather than proceed in this MDL under

7     this turnover order, that the alternative would be that we

8     adopt the complaint that you have filed.

9          MS. BENETT:  I hear you, Judge.  Thank you.

10          JUDGE NETBURN:  All right.  I'm going to turn down the

11     heat a little bit and talk about briefing schedules.

12          I understand that there's an issue related to the

13     various amici that have filed briefs.  I'm going to set a

14     deadline of this Friday, which is April 29, for any other amici

15     who wishes to be heard to file their leave application.  I

16     think at this point we have about five, and we will be generous

17     in allowing appropriate amici to be heard if they wish.

18          So April 29 will be the deadline for any potential

19     other amici, who might be listening in or here in the

20     courtroom, to file any leave application.  And I know that the

21     Havlish creditors had proposed a more extensive briefing

22     schedule.  The Court really wants to move on this, as I imagine

23     everybody else does.  So my proposal is that any opposition

24     that the Havlish and Doe creditors wish to file or a response

25     be set at May 13.

M4qWashC

1          Any objection to that schedule?

2          All right.  Hearing none, the deadline -- we'll issue

3     an order today.  Just to put it out on the record, the deadline

4     for any amici who wish to file an amicus brief will be April

5     29, and anyone who wishes to respond to those amicis, the

6     merits of their briefs, will be due May 13.

7          All right.  Anything further from anyone?

8          JUDGE DANIELS:  All right.  We're working hard.  We

9     encourage your assistance and your input.  It makes a big

10    difference, particularly -- and it's interesting that by the

11    time we read the letters that you've sent us, we've already

12    discussed half the issues that are in your letters, so it gives

13    me some comfort that we're approaching this in the appropriate

14    way and we'll be able to expeditiously make some decisions

15    about this.

16         Obviously, the Court is not in a position to give any

17    plaintiff a guarantee that they will recover these funds or any

18    funds and the extent to which they will recover.  But I

19    guarantee you that our main goal is to make sure that all

20    plaintiffs can recover as much of the available funds as

21    possible in an equitable way.

22         Now, whether or not we face other legal hurdles with

23    regard to priority or with regard to other issues that might

24    affect that, we will confront them and we will address them.

25    But it is our intent, to the extent, consistent with the law as

M4qWashC

1    we can apply it, to make sure that all plaintiffs get some

2    degree of satisfaction.  Obviously, no plaintiff in any case

3    can be made whole.  Nobody can bring back a deceased relative.

4    Nobody can undo the damage that has been done, but we are

5    focused on figuring out, and we continue to focus on figuring

6    out, what actual funds might be available, what actual funds

7    could be distributed, and what is a reasonable and equitable

8    way to distribute those funds.

9          We still seek your guidance on that.  We'll give

10   further consideration as we go through the turnover proceedings

11   as to whether or not we should initiate at this point a

12   process, if the parties agree they would like a special master

13   to look at those issues, but I can guarantee you that we will

14   give you a full opportunity to be heard, as we have given you a

15   full opportunity to be heard, on these issues -- the issues of

16   the availability of funds and the issue of who is entitled to

17   some of those funds and what would be the appropriate way to

18   distribute available funds, not just the funds at issue here

19   but any funds.

20         We know we're setting a framework for any other funds

21   that might be available in the future and the parties will seek

22   a distribution of those funds.  So be assured that any concerns

23   that you have about certain issues, the appropriate way to

24   address them is to bring them to the attention of this Court

25   and to have the other side -- anyone who disagrees with your

M4qWashC

1    position -- be able to weigh in in this proceeding, in this MDL

2    proceeding.  And we will fairly and, hopefully, efficiently

3    move forward and give you some assurance that although we give

4    no one any guarantees that you will be satisfied with the

5    ultimate result, we can give you assurance that you will all be

6    heard.  Your positions will be considered, and we will make the

7    best decision that we can.

8         My position is always this -- that the best decisions

9    aren't made by smart people.  They're made by informed people.

10   Give us the information that you think is compelling, and we

11   will factor it in.  When we make mistakes, we usually say, Oh,

12   if I'd only known X.  Right?

13        So keep us informed.  To the extent that you genuinely

14   want to assist us, we encourage you to do so.  To the extent

15   that you just want to simply advantage your own client, we are

16   deciding these cases on their merits, not on any other basis.

17   So keep that in mind.

18        I think it was important for us to meet here.  If

19   there are other issues that this raises or that come up, bring

20   them to our attention right away.  As I say, despite everything

21   else that we're doing, literally we're in contact almost on a

22   daily basis at this point with regard to these issues so we can

23   move forward efficiently and give you a result that maybe not

24   everyone will be total satisfied with, but hopefully a result

25   that you can understand, that is a reasoned judgment,

M4qWashC

1    consistent with the law, as to how you should participate in

2    distribution of funds and what the relationship is between the

3    plaintiffs.

4            My final reminder is you are all plaintiffs.  Your

5    clients are all victims.  OK?  That's what should be driving

6    everyone here.  That's what drives us as we're addressing these

7    issues.  Right now, everyone before this Court is on an equal

8    footing, and everyone should consider when you make your

9    arguments whether those arguments support everyone's position

10   or whether those arguments simply support your position or

11   whether those arguments disadvantage some at the expense of

12   others, because that's the first evaluation that I'll have with

13   regard to your conduct, your applications, and your filings.

14           Remember, this is the forum that we're going to

15   resolve these issues.  That's the bottom line of this

16   proceeding.  We're going to resolve it here, not before Judge

17   Caproni, not before some other judge in this court, not in some

18   other duplicative proceeding that is to address the same issues

19   that we are already addressing here.  Regardless of what any

20   party believes, it is a more efficient, effective and

21   advantageous way for us to proceed.

22           We've laid out the process and we're going to stick

23   with that process, and as far as I'm concerned, that process is

24   working.  It will hopefully, and I'm confident it will, give us

25   the best result that we could possibly reach on behalf of the

M4qWashC

 1    plaintiffs and victims that have the true interest in this

 2    litigation.

 3              Thank you very much.

 4              Let's move forward, and we will proceed efficiently.

 5    If there are any other issues that need to be addressed with

 6    regard to any of these claims -- of liability or damages --

 7    obviously, my position is they should be raised with this Court

 8    on notice to all the other parties, either jointly or having an

 9    opportunity to disagree.

10              Thank you all very much.  And we will continue.

11              (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25