# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: Terrorist Attacks on September 11, 2021 | Civil Action No. 03-md-1570 (GBD) (SN) |
| Federal Insurance Company, et al., *Creditors,* v. The Taliban, et al., *Debtors,* Federal Reserve Bank of New York, *Garnishee*. | Civil Action No. 03-cv-6978 (GBD) (SN) |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>LIMITED MOTION TO INTERVENE BY JAMES OWENS, *ET AL*</u>.**

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................... 3

ARGUMENT ..................................................................................................................................... 5

    I.    Limited Intervention Is Warranted Under CPLR § 5225(b). ......................................... 6

    II.   Proposed Intervenors Satisfy the Requirements for Limited Intervention as of Right Under Rule 24(a)(2). ............................................................................................ 9

        A.    Proposed Intervenors Have a Cognizable Interest in the DAB Funds. ................. 9

        B.    Proposed Intervenors' Interest in the DAB Funds Would Be Impaired Absent Intervention and Is Not Adequately Represented by Existing Parties. ................................................................................................................... 11

        C.    This Motion Is Timely. ......................................................................................... 12

CONCLUSION ................................................................................................................................ 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Fid. Fire Ins. Co. v. Paste-Ups Unlimited, Inc.*,
  368 F. Supp. 219, 225 (S.D.N.Y. 1973) ...................................................................................7

*Bionpharma Inc. v. CoreRx, Inc.*,
  2022 WL 580767 (S.D.N.Y. Feb. 24, 2022) .............................................................................6

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
  250 F.3d 171 (2d Cir. 2001) ................................................................................................9, 14

*Chevron Corp. v. Donziger*,
  2011 WL 2150450 (S.D.N.Y. May 31, 2011) ..........................................................................6

*Floyd v. City of New York*,
  770 F.3d 1051 (2d Cir. 2014) ..................................................................................................14

*Fox v. Glickman Corp.*,
  355 F.2d 161 (2d Cir. 1965) ......................................................................................................6

*Giuffre v. Dershowitz*,
  2021 WL 5233551 (S.D.N.Y. Nov. 10, 2021) ..........................................................................6

*Hausler v. JP Morgan Chase Bank, N.A.*,
  740 F. Supp. 2d 525 (S.D.N.Y. 2010) .......................................................................................7

*In re Auction Houses Antitrust Litig.*,
  158 F. Supp. 2d 364 (S.D.N.Y. 2001) .......................................................................................6

*In re Terrorist Attacks on September 11, 2001*,
  2022 WL 522581 (S.D.N.Y. Feb. 22, 2022) .........................................................................5, 8

*LaRouche v. Fed. Bureau of Investigation*,
  677 F.2d 256 (2d Cir. 1982) ..............................................................................................11, 12

*Mancheski v. Gabelli Grp. Cap. Partners*,
  835 N.Y.S.2d 595 (N.Y. App. Div. 2007) ................................................................................6

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
  471 F.3d 377 (2d Cir. 2006) ....................................................................................................12

*Peterson v. Islamic Republic of Iran*,
  290 F.R.D. 54 (S.D.N.Y. 2013) .......................................................................10, 11, 12, 13, 14

*Republic of Philippines v. Pimentel*,
  553 U.S. 851 (2008) ............................................................................................................8, 11

# TABLE OF AUTHORITIES
## (continued)

                                                                                                           **Page(s)**

*Sackman v. Liggett Grp., Inc.*,
   167 F.R.D. 6 (E.D.N.Y. 1996) ............................................................................................. 9

*Swezey v. Merrill Lynch*,
   926 N.Y.S.2d 415 (N.Y. App. Div. 2011) ........................................................................... 8

*Tachiona ex rel. Tachiona v. Mugabe*,
   186 F. Supp. 2d 383 (S.D.N.Y. 2002) ............................................................... 6, 9, 12, 13

*U.S. Commodity Futures Trading Comm'n v. Efrosman*,
   2012 WL 2510338 (S.D.N.Y. June 26, 2012) ................................................................ 2, 7

*United States v. Int'l Bus. Machs. Corp.*,
   62 F.R.D. 530 (S.D.N.Y. 1974) ........................................................................................ 12

*United States v. N.Y. Hous. Auth.*,
   326 F.R.D. 411 (S.D.N.Y. 2018) ........................................................................................ 6

*United States v. Peoples Benefit Life Ins. Co.*,
   271 F.3d 411 (2d Cir. 2001) ............................................................................................. 10

*VFD Consulting, Inc. v. 21st Servs., 21st Holdings, LLC*,
   2005 WL 1115870 (N.D. Cal. May 11, 2005) ................................................................... 6

*WaterLegacy v. EPA*,
   300 F.R.D. 332 (D. Minn. 2014) ........................................................................................ 6

**Statutes**

18 U.S.C. § 2333 ........................................................................................................................ 3

28 U.S.C. § 564 ......................................................................................................................... 8

28 U.S.C. § 1350 ....................................................................................................................... 3

CPLR § 5225(b) ................................................................................................................ 5, 6, 7

CPLR § 5234 ............................................................................................................................ 10

CPLR § 5234(b) ........................................................................................................................ 7

CPLR § 5239 ............................................................................................................................. 5

CPLR § 6226 ......................................................................................................................... 7, 10

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Executive Orders**

Exec. Order No. 14,064, 87 Fed. Reg. 8391 (Feb. 11, 2022) ......................................................... 3

**Rules**

Fed. R. Civ. P. 24(a)(2) ............................................................................................................... 6, 9

Local Civ. R. 6.1(b) ..................................................................................................................... 13

**Treatises**

7C Fed. Prac. & Proc. Civ. (3d ed.) ............................................................................................. 12

**Other Authorities**

Dep't of Treasury, Off. of Foreign Assets Control,
　　License No. DABRESERVES-EO-2022-886895-1 (Feb. 11, 2022) ........................................ 3

# INTRODUCTION

Proposed Intervenors James Owens, *et al.* ("Proposed Intervenors") move to intervene in this litigation ("MDL") for the limited purpose of opposing the *Federal Insurance* creditors' Motion for Partial Turnover of Assets from Garnishee Federal Reserve Bank of New York ("FRBNY") and asserting their priority to the funds at issue. *See* Dkt. 7936.[1]

Proposed Intervenors are victims of the 1998 United States embassy bombings in Nairobi, Kenya and Dar es Salaam, Tanzania who have sued the Taliban for its role in perpetrating the bombings, which were committed by al-Qaeda. *See Owens v. Taliban*, No. 22-cv-1949-VEC (S.D.N.Y.). In that action, Proposed Intervenors have secured an attachment and levy of $1,373,761,042.95 in funds held in the name of Da Afghanistan Bank ("DAB") at the FRBNY. *Id.*, Dkt. 33, at 2; *id.*, Dkt. 49, ¶ 6.

In this MDL, the *Federal Insurance* creditors recently moved for turnover of the same DAB funds at the FRBNY that have been attached by Proposed Intervenors—*i.e.*, the DAB funds not previously levied by the *Havlish* and *Doe* creditors. Dkt. 7936. Proposed Intervenors do not seek that portion of the DAB assets to which the *Havlish* and *Doe* creditors obtained writs and earlier moved for turnover. But the *Federal Insurance* creditors now assert that they, too, have priority over Proposed Intervenors with respect to the DAB funds. That is incorrect as a matter of settled New York law, and Proposed Intervenors therefore seek to intervene in this MDL for the narrow purpose of opposing the *Federal Insurance* creditors' turnover motion on the basis of Proposed Intervenors' priority to the funds.

Critically, intervention "for the limited purpose of opposing [a] claim of priority . . . d[oes]

---

[1] Unless otherwise indicated, "Dkt." citations are references to the docket of this MDL. References to the docket of *Owens v. Taliban*, No. 22-cv-1949-VEC (S.D.N.Y.), are noted as such.

1

not make [Proposed Intervenors] plaintiffs" in this action. *U.S. Commodity Futures Trading Comm'n v. Efrosman*, 2012 WL 2510338, at *3 n.1 (S.D.N.Y. June 26, 2012). Indeed, Proposed Intervenors do not herein seek to participate in any other ongoing proceedings in this MDL, to address any other issues related to turnover, such as the applicability of the Terrorism Risk Insurance Act, or to oppose the turnover motions of the *Havlish* and *Doe* creditors. Proposed Intervenors also do not seek to inject any other issues from their separate suit into the MDL. Importantly, Proposed Intervenors agree with the Court's ruling that the MDL is not the place to litigate their claims against the Taliban—which arise not from the September 11 attacks, but from separate terrorist attacks in East Africa. *See* Dkt. 7754, at 2 (rejecting request to relate or consolidate *Owens* suit with MDL because the cases arise from separate facts and are "in different procedural postures"). The MDL is also not the place to adjudicate the validity of Proposed Intervenors' order of attachment against the blocked DAB funds, which is currently in confirmation proceedings before Judge Caproni. Any such challenges should be brought in that litigation. *Owens*, No. 22-cv-1949-VEC (S.D.N.Y.), Dkt. 47. Proposed Intervenors seek to involve themselves in these turnover proceedings *only* to ensure that their priority over the DAB funds in relation to the *Federal Insurance* creditors—which is indisputable under New York law—is not overlooked.

      Proposed Intervenors are entitled to intervene in the turnover proceedings under New York Civil Practice Law and Rules ("CPLR") § 5225(b) because their claim to the blocked DAB funds is adverse to that of the *Federal Insurance* creditors since Proposed Intervenors have priority in relation to them. Intervention as of right also is warranted under Federal Rule of Civil Procedure 24(a) because Proposed Intervenors have a court-ordered and properly levied interest in the property that is the subject of the *Federal Insurance* creditors' turnover motion—the blocked DAB

funds.

The Court should grant this limited motion to intervene.

## BACKGROUND

The factual and procedural background of Proposed Intervenors' suit against the Taliban, *Owens*, No. 22-cv-1949-VEC (S.D.N.Y.), is documented in Proposed Intervenors' Memorandum of Law in Support of *Ex Parte* Emergency Motion for Order of Attachment filed in that action, *see id.*, Dkt. 5, and Judge Caproni's April 11, 2021 Opinion and Order, *see id.*, Dkt. 38, which Proposed Intervenors incorporate by reference. In short, following the cessation of U.S. hostilities against the Taliban in Afghanistan, Proposed Intervenors brought suit in March 2022 to hold the Taliban responsible for its role in the 1998 embassy bombings in Kenya and Tanzania. Proposed Intervenors allege in that suit that the Taliban, which then controlled Afghanistan, provided safe haven, training, weapons, and use of Afghanistan's national airline to al-Qaeda—who carried out the bombings—in the years, months, and days leading up to the attacks. Proposed Intervenors' claims against the Taliban are based on the Anti-Terrorism Act, 18 U.S.C. § 2333, the Alien Tort Statute, 28 U.S.C. § 1350, and state tort law. *Id.*, Dkt. 7.

On February 11, 2022, President Biden issued Executive Order 14064, which directed U.S. financial institutions holding DAB assets around the country to transfer those assets into a single consolidated account at the FRBNY and blocked further transactions involving those assets absent a license from the Executive Branch. Exec. Order No. 14,064, 87 Fed. Reg. 8391 (Feb. 11, 2022). At the same time, the Office of Foreign Assets Control issued a license instructing the FRBNY to segregate $3.5 billion of the DAB funds into a separate account for foreign policy purposes related to Afghanistan, which left approximately $3.5 billion in blocked funds available to satisfy the Taliban's creditors, as victims of terrorism. *See* Dep't of Treasury, Off. of Foreign Assets Control,

3

License No. DABRESERVES-EO-2022-886895-1 (Feb. 11, 2022).

To preserve their ability to collect damages from the Taliban after judgment, the same day they filed their complaint, Proposed Intervenors moved *ex parte* for an order of attachment of Taliban funds in the amount of $4,669,011,012.21 ($1,373,761,042.95 in compensatory damages and $3,295,249,969.26 in punitive damages), plus prejudgment interest.[2] *See Owens*, No. 22-cv-1949-VEC (S.D.N.Y.), Dkt. 4.

After Proposed Intervenors filed their suit, various MDL Plaintiffs sought to consolidate or relate the *Owens* litigation with the MDL. *See* Dkt. 7753. This Court rejected that request, finding that there was "limited" "factual overlap" between the two suits since they concerned different terrorist attacks, and the parties were "also in different procedural postures." Dkt. 7754, at 1–2. Because the cases were "legally and factually distinct," the Court held there were "no efficiencies to be gained through their consolidation," even though "parties in both cases ha[d] either attached the same assets of Da Afghanistan Bank to satisfy judgments against the Taliban, or ha[d] filed motions to attach those assets." *Id.*

Judge Caproni granted Proposed Intervenors' motion for prejudgment attachment on March 21, 2022. *See Owens*, No. 22-cv-1949-VEC (S.D.N.Y.), Dkt. 33. Judge Caproni's Order of Attachment directed the U.S. Marshals Service to levy, upon service of the Order, $1,373,761,042.95 (*i.e.*, the amount of Proposed Intervenors' compensatory damages), plus prejudgment interest, of the DAB funds at the FRBNY. *Id.* at 2. Proposed Intervenors delivered the Order of Attachment to the Marshals Service on March 22, 2022, and one month later, on April

---

[2] Although Proposed Intervenors sought an attachment order against any and all Taliban assets in New York for the full amount of their damages, similar to other writ holders, they requested a levy only against the DAB funds held at the FRBNY in the amount of their compensatory damages. *See Owens*, No. 22-cv-1949-VEC (S.D.N.Y.), Dkt. 5, at 9 n.3, 25.

4

21, 2022, the Marshals Service levied upon the assets. *See id.*, Dkt. 49, ¶¶ 4, 6. Proposed Intervenors timely filed their motion to confirm the Order of Attachment on May 2, 2022. *See id.*, Dkt. 48.

On April 20, 2022, the *Federal Insurance* creditors obtained a writ of execution against the Taliban in the amount of $14,672,806,120.64, which was also levied upon the same blocked DAB funds at the FRBNY by the U.S. Marshals Service on April 21, 2022. *See* Dkt. 7937, at 9. On April 29, 2022, the *Federal Insurance* creditors filed their turnover motion in this MDL. Dkt. 7936. The motion seeks to compel the FRBNY to turn over the DAB funds that "are not found to be subject to turnover to other creditors with priority." Dkt. 7937, at 2. But the motion erroneously states that the *Federal Insurance* creditors "have priority with respect to any DAB assets not deemed subject to turnover to the *Havlish* and *Doe* [c]reditors." *Id.* at 25. The *Federal Insurance* creditors' only mention of Proposed Intervenors' Order of Attachment against the same funds is in a single footnote, which neglects to address Proposed Intervenors' priority. *Id.* at 25 n.50.

## ARGUMENT

In a turnover proceeding under CPLR § 5225(b), "[t]he court may permit any adverse claimant to intervene," as this Court has previously recognized, *see In re Terrorist Attacks on September 11, 2001*, 2022 WL 522581, at *4 (S.D.N.Y. Feb. 22, 2022) (explaining that CPLR § 5225(b) turnover "process provides an opportunity and procedure for adverse claimants to assert their rights to any disputed property"); *see also* CPLR § 5239 ("Proceeding to determine adverse claims"). And "[o]n timely motion" under Federal Rule of Civil Procedure 24(a), "the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately

5

represent that interest." Fed. R. Civ. P. 24(a)(2). Proposed Intervenors readily satisfy the requirements for intervention under both CPLR § 5225(b) and Rule 24(a)(2).

And both New York and federal courts have long recognized that "limited" intervention for a specific purpose—as Proposed Intervenors seek here—is proper. *See Fox v. Glickman Corp.*, 355 F.2d 161, 164 (2d Cir. 1965) (discussing motion by non-party to intervene for "limited purpose of proving damages"); *United States v. N.Y. Hous. Auth.*, 326 F.R.D. 411, 418 (S.D.N.Y. 2018) ("this Court exercises its informed discretion to grant permissive intervention for [a] limited purpose"); *Chevron Corp. v. Donziger*, 2011 WL 2150450, at *5 (S.D.N.Y. May 31, 2011) ("it is within the Court's discretion to limit the scope of any intervention"); *Mancheski v. Gabelli Grp. Cap. Partners*, 835 N.Y.S.2d 595, 597 (N.Y. App. Div. 2007) ("it was a provident exercise of discretion to permit [non-party] to intervene in the action for [a] limited purpose"); *accord, e.g.*, *In re Auction Houses Antitrust Litig.*, 158 F. Supp. 2d 364, 366 (S.D.N.Y. 2001) (granting motion to intervene for "limited purpos[e]" of "opposing" a motion); *Bionpharma Inc. v. CoreRx, Inc.*, 2022 WL 580767, at *6 (S.D.N.Y. Feb. 24, 2022) (similar); *Giuffre v. Dershowitz*, 2021 WL 5233551, at *4 (S.D.N.Y. Nov. 10, 2021) (similar); *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 394 (S.D.N.Y. 2002) (similar); *see also WaterLegacy v. EPA*, 300 F.R.D. 332, 339 (D. Minn. 2014) ("courts have consistently allowed intervention for a limited purpose, such as intervention to challenge a protective order"); *VFD Consulting, Inc. v. 21st Servs., 21st Holdings, LLC*, 2005 WL 1115870, at *4 (N.D. Cal. May 11, 2005) ("it is well-established that a non-party may intervene for the limited purpose of opposing a motion").

**I.      Limited Intervention Is Warranted Under CPLR § 5225(b).**

CPLR § 5225(b) allows "adverse claimants" to intervene in a turnover "proceeding." Pursuant to the scope of this provision, Proposed Intervenors herein seek to intervene only in the turnover proceeding of the *Federal Insurance* creditors, not the turnover proceedings more

6

generally, let alone the entire MDL. *See Efrosman*, 2012 WL 2510338, at *3 n.1 (intervention "for the limited purpose of opposing [a] claim of priority . . . d[oes] not make [intervenors] plaintiffs").

The only requirement for intervention under CPLR § 5225(b) is that the putative intervenor be an "adverse claimant" with respect to the property that is the subject of a turnover proceeding. *See Hausler v. JP Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, 541 n.15 (S.D.N.Y. 2010) ("where a turnover proceeding is commenced by a judgment creditor pursuant to CPLR § 5225(b) against a person in possession or custody of money in which the judgment debtor has an interest, any adverse claimant may intervene in the proceeding in order to assert a superior claim to the blocked assets in question"). Proposed Intervenors obviously satisfy that requirement. Their court-ordered attachment and the corresponding levy of $1,373,761,042.95, plus prejudgment interest, of the blocked DAB assets gives them a direct and cognizable interest in those assets. And they are an adverse claimant relative to the *Federal Insurance* creditors since Proposed Intervenors "assert a superior claim" in those assets. *Id.*

As more fully explained in Proposed Intervenors' proposed opposition to the *Federal Insurance* creditors' turnover motion, Proposed Intervenors have priority over the *Federal Insurance* creditors. Under settled and well-established New York law, priority among attachment orders and writs of execution is determined based on the date of delivery to the enforcement officer. *See* CPLR § 5234(b) ("Where two or more *executions or orders of attachment* are issued against the same judgment debtor . . . and delivered to the same enforcement officer . . . , they shall be satisfied . . . in the *order in which they were delivered*." (emphases added)); *id.* § 6226; *see also Am. Fid. Fire Ins. Co. v. Paste-Ups Unlimited, Inc.*, 368 F. Supp. 219, 225 (S.D.N.Y. 1973) ("In New York, rival attaching creditors establish priority in the order in which New York executions

or New York Orders of Attachment are *delivered to the New York enforcement officer*, *i.e.*, the appropriate Sheriff." (emphasis added)); 28 U.S.C. § 564 (explaining that "United States marshals . . . in executing the laws of the United States within a State, may exercise the same powers which a sheriff of the State may exercise in executing the laws thereof").  Proposed Intervenors delivered their Order of Attachment to the U.S. Marshals Service nearly one month before the *Federal Insurance* creditors obtained and delivered their writ of execution to the Marshals Service, so Proposed Intervenors have undoubted priority.  *Compare Owens*, No. 22-cv-1949-VEC (S.D.N.Y.), Dkt. 49, ¶¶ 4, 6 (attachment order delivered March 22, 2022), *with* Dkt. 7937, at 9 (writ of execution delivered April 20, 2022).

Because Proposed Intervenors' superior claim to the same DAB funds is adverse to the *Federal Insurance* creditors, it would be an abuse of discretion to deny limited intervention.  Far from being "subject only to permissive joinder," an "adverse claimant" in a turnover proceeding "may, in a proper case, be entitled to intervene in the proceeding as a matter of law."  *Swezey v. Merrill Lynch*, 926 N.Y.S.2d 415, 418 (N.Y. App. Div. 2011).  This is clearly such a case.  *See id.* ("As noted in *Pimentel*, '[c]onflicting claims . . . to a common [fund] present a textbook example of a case where one party may be severely prejudiced by a decision in his absence.'" (alterations in original) (quoting *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870 (2008))).

In fact, the Court has already recognized that those with a "cognizable interest" in the blocked DAB funds have a right to intervene in any turnover proceedings related to those funds.  *See In re Terrorist Attacks on September 11, 2001*, 2022 WL 522581, at *4.  Earlier in the MDL, this Court cited CPLR § 5225(b) in observing that any turnover proceedings would "provid[e] an opportunity and procedure for adverse claimants to assert their rights" to the DAB funds.  *Id.*  Proposed Intervenors unquestionably fall within that category here.

8

**II.     Proposed Intervenors Satisfy the Requirements for Limited Intervention as of Right Under Rule 24(a)(2).**

"As the language of [Rule 24(a)(2)] suggests, a putative intervenor as of right must meet four criteria: the applicant must (1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001). These requirements are no different if intervention as of right is sought for a limited purpose. *See Tachiona ex rel. Tachiona*, 186 F. Supp. 2d at 394 (analyzing same four criteria where putative intervenor sought to intervene as of right for "limited purpose"); *see also Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 20 (E.D.N.Y. 1996) (same).

Proposed Intervenors present a paradigmatic case for intervention as of right under Rule 24(a)(2): They seek to protect their significant interest in property that is the subject of a turnover motion in this action (the blocked DAB funds), and they have no way of protecting that interest short of intervention. Certainly the existing parties will not adequately represent that interest— they have their own claims to the same DAB funds, and the *Federal Insurance* creditors have already disregarded and misstated Proposed Intervenors' priority in those funds. And given the limited purpose for which Proposed Intervenors seek to intervene—opposing the *Federal Insurance* creditors' turnover motion filed just two weeks ago—Proposed Intervenors' motion is unquestionably timely under the Local Rules and Rule 24(a).

   **A.     Proposed Intervenors Have a Cognizable Interest in the DAB Funds.**

The $3.5 billion in blocked DAB funds are "the property" at issue in the *Federal Insurance* creditors' turnover motion. Fed. R. Civ. P. 24(a)(2); *see* Dkt. 7937, at 2. For Proposed Intervenors' interest in these funds "to be cognizable under Rule 24(a)(2), [the interest] must be 'direct,

9

substantial, and legally protectable.'" *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001).

Here, there is no question that Proposed Intervenors' court-ordered attachment and the corresponding levy of $1,373,761,042.95, plus prejudgment interest, of the blocked DAB funds "gives [Proposed Intervenors] a direct interest in the disposition of" those funds. *Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54, 59 (S.D.N.Y. 2013). This interest "is not contingent upon any sequence of future events," because "the existing" Order of Attachment and levy already "entitl[e] them to" a portion of those funds. *Id.* And the fact that Proposed Intervenors have a prejudgment order of attachment, while the *Federal Insurance* creditors have a writ of execution issued after final judgment, is of no moment—New York law treats them both equally. *See* CPLR §§ 5234, 6226. Indeed, "[t]he interest claimed by the [Proposed] Intervenors is, in fact, virtually identical to that of the existing [parties]" in this MDL, except that Proposed Intervenors have priority over the *Federal Insurance* creditors. *Peterson*, 290 F.R.D. at 59.

The *Federal Insurance* creditors' incorrect assertion that they have priority over Proposed Intervenors with respect to the DAB funds in no way diminishes Proposed Intervenors' interest. Proposed Intervenors do not "have a burden of proof on the merits" of the priority question "at th[e] [intervention] stage." *Peterson*, 290 F.R.D. at 59. To achieve intervention, Proposed Intervenors need "only show that they possess a cognizable interest . . . not that they have a compensable interest." *Id.* In any event, as more fully explained in Proposed Intervenors' proposed opposition to the *Federal Insurance* creditors' turnover motion, Proposed Intervenors plainly do have an interest in the DAB funds that is senior to that of the *Federal Insurance* creditors. *See supra*, at 7–8; *cf. Peterson*, 290 F.R.D. at 60 (holding that it sufficed for purposes of intervention that "Intervenors ha[d] a colorable argument that their interest in the $1.75 billion

[wa]s senior to that of at least some existing plaintiffs").

> **B.     Proposed Intervenors' Interest in the DAB Funds Would Be Impaired Absent Intervention and Is Not Adequately Represented by Existing Parties.**

In *Peterson*, it was "undisputed that disposition of th[e] action in the absence of the Intervenors would harm their interests, and that the existing plaintiffs d[id] not adequately represent thos[e] interests" because the existing "plaintiffs wish[ed] to seize the same set of assets." 290 F.R.D. at 57. So too here. The *Federal Insurance* creditors "wish to seize the same set of assets"—the DAB funds—and erroneously claim priority over Proposed Intervenors.

The *Havlish* and *Doe* creditors seek turnover of "$2,224,670,879.26 in aggregate." Dkt. 7937, at 24–25; *see also* Dkt. 7764, at 25; Dkt. 7769, at 25. The *Federal Insurance* creditors seek turnover of whatever DAB funds remain after turnover to the *Havlish* and *Doe* creditors to "partially satisfy" the *Federal Insurance* creditors' writ of execution "in the amount of $14,672,806,120.64." Dkt. 7937, at 25. Obviously, if the *Federal Insurance* creditors obtain turnover, Proposed Intervenors will be prevented from receiving the DAB funds that they have attached. *See Peterson*, 290 F.R.D. at 57; *see also Pimentel*, 553 U.S. at 870 ("'Conflicting claims by beneficiaries to a common trust present a textbook example of a case where one party may be severely prejudiced by a decision in his absence.'"). Thus, there can be no question that disposition of the *Federal Insurance* creditors' turnover motion without Proposed Intervenors would severely prejudice their interests, which are not adequately represented by any existing party. *See LaRouche v. Fed. Bureau of Investigation*, 677 F.2d 256, 258 (2d Cir. 1982) (holding that putative intervenor "ha[d] carried the minimal burden required for a showing that representation by the existing parties may be inadequate" because the existing plaintiffs' interests were "antagonistic" to those of putative intervenor).

Indeed, there are no other parties in the MDL who can represent the interests of Proposed

11

Intervenors. The *Havlish* and *Doe* creditors are represented by entirely separate counsel, are victims of different acts of terrorism, have no connection whatsoever to Proposed Intervenors, and the *Havlish* creditors are party to a "Framework Agreement" with the *Federal Insurance* creditors who are plainly adverse to Proposed Intervenors, *see* Dkt. 7790; Dkt. 7937, at 5, 25 n.49. Other MDL Plaintiffs who do not have a secured interest in the funds are also differently situated from Proposed Intervenors. *See, e.g.*, Dkt. 7894, at 1, 12 (*Ashton* Plaintiffs' opposition to *Havlish* and *Doe* turnover motions arguing that "distribution of the DAB assets should not be determined by 'priority'" but "equitably distributed" (capitalization altered)). Quite simply, without intervention, Proposed Intervenors' distinct, court-ordered interest in the DAB funds will be unrepresented. *See Peterson*, 290 F.R.D. at 57; *see also LaRouche*, 677 F.2d at 258; *United States v. Int'l Bus. Machs. Corp.*, 62 F.R.D. 530, 536 & n.9 (S.D.N.Y. 1974) ("The most important factor in determining adequacy of representation is how the interest of the absentee compares with the interests of the present parties. If the interest of the absentee is not represented at all, or if all existing parties are adverse to him, then he is not adequately represented." (citing 7C Fed. Prac. & Proc. Civ. § 1909 (3d ed.))).

    **C.**    **This Motion Is Timely.**

"Factors to consider in determining timeliness include: '(a) the length of time the applicant knew or should have known of [its] interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to [the] applicant if the motion is denied; and (d) [the] presence of unusual circumstances militating for or against a finding of timeliness.'" *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006). All four factors weigh heavily in favor of timeliness.

The "limited purpose" for which Proposed Intervenors seek to intervene confirms the timeliness of their motion. *See Tachiona ex rel. Tachiona*, 186 F. Supp. 2d at 394 (holding that

12

intervention motion was timely given the "limited purpose" for which intervention was sought). As explained, Proposed Intervenors seek to intervene solely for the purpose of opposing the *Federal Insurance* creditors' turnover motion, which was filed just two weeks ago, on April 29, 2022. *See* Dkt. 7936. Proposed Intervenors currently have no basis to object to the earlier-filed *Havlish* and *Doe* turnover motions, *see* Dkts. 7763, 7767, and thus had no basis to move for intervention sooner. This narrow intervention motion and corresponding proposed opposition to the *Federal Insurance* creditors' turnover motion are being filed within the deadline for opposition under the Local Rules and are obviously timely. *See* Local Civ. R. 6.1(b) ("any . . . answering memoranda shall be served within fourteen days after service of the moving papers").

Proposed Intervenors also would be severely prejudiced if their intervention motion were denied. *See supra*, at 11. They have more than "colorable arguments to entitlement to a portion of the [$3.5 billion in DAB funds]," and "[g]iven the difficulty of locating assets of [the Taliban] subject to execution in the United States, barring the [Proposed] Intervenors from satisfying their [compensatory damages] surely constitutes prejudice." *Peterson*, 290 F.R.D. at 58. "In contrast, the prejudice to the existing parties is minimal." *Id.* Because their proposed opposition is timely, Proposed Intervenors' motion will not "dela[y] the Court's consideration of the merits" of the *Federal Insurance* creditors' turnover motion. *Tachiona ex rel. Tachiona*, 186 F. Supp. 2d at 395.

Nor can the existing plaintiffs in the MDL be "unduly prejudiced by the *potential* that granting the [Proposed] Intervenors' motion will disrupt plaintiffs' agreement as regards the priority of distributing the assets." *Peterson*, 290 F.R.D. at 58 (emphasis added). The *Federal Insurance* creditors point to a "Framework Agreement" governing "distribution in excess of $1 billion to the 9/11 Community members who do not yet have final judgments against the Taliban," Dkt. 7937, at 1, but this "Court has a responsibility to adjudicate the issue of priority on the merits

13

that is of greater import than evading disruption to plaintiffs' private agreement," *Peterson*, 290 F.R.D. at 59.  In short, whatever existing frameworks or purported private agreements exist in this MDL, it would be manifestly unjust and improper for the *Federal Insurance* creditors to proceed with their turnover motion on the premise that they have priority over Proposed Intervenors, when that premise is flatly contrary to governing law.  This Court has a duty to adjudicate turnover proceedings in accordance with the legally correct priority of claims, however "understandably upset" that may make the *Federal Insurance* creditors and any other existing parties in the MDL. *Id.* at 58.

Finally, there are no unusual circumstances here that undermine the clear timeliness of this motion.  *Cf. Floyd v. City of New York*, 770 F.3d 1051, 1058–59 (2d Cir. 2014) (holding that the "years of extensive public filings and intense media scrutiny" that "should have put the [police] unions on notice of the potential political and judicial dangers that these cases posed to their interests" was an unusual circumstance militating against intervention by the police unions); *Butler, Fitzgerald & Potter*, 250 F.3d at 183 (holding that existing party's "indicat[ion] that [it] would not object to working in concert with [putative intervenor]" amounted to "unique circumstances . . . that justified the district court's ultimate denial of the motion [to intervene]").  Proposed Intervenors had no conceivable interest in any turnover proceedings prior to the delivery of their attachment order on March 22, 2022, and no reason to become involved prior to the *Federal Insurance* creditors' improper turnover motion on April 29, 2022.

As a result, Proposed Intervenors are entitled to a limited intervention under Rule 24(a).

## CONCLUSION

Proposed Intervenors respectfully request that the Court grant their motion to intervene for the limited purpose of opposing the *Federal Insurance* creditors' turnover motion.

Dated: May 13, 2022                                          Respectfully submitted,

/s/ Matthew D. McGill

| | |
|---|---|
| Rebecca Monck Ricigliano | Matthew D. McGill |
| CROWELL & MORING LLP | Jessica L. Wagner |
| 590 Madison Avenue, 20th Floor | (admitted *pro hac vice*) |
| New York, NY 10022 | GIBSON, DUNN & CRUTCHER LLP |
| Telephone: (212) 895-4000 | 1050 Connecticut Avenue, N.W. |
| Facsimile: (212) 223-4134 | Washington, D.C. 20036 |
| rricigliano@crowell.com | Telephone: (202) 955-8500 |
| | Facsimile: (202) 530-9522 |
| John L. Murino | mmcgill@gibsondunn.com |
| (*pro hac vice* application forthcoming) | |
| Stuart H. Newberger | Robert L. Weigel |
| (*pro hac vice* application forthcoming) | Jason W. Myatt |
| Emily M. Alban | GIBSON, DUNN & CRUTCHER LLP |
| (admitted *pro hac vice*) | 200 Park Avenue |
| CROWELL & MORING LLP | New York, New York 10166 |
| 1001 Pennsylvania Ave. NW | Telephone: (212) 351-4000 |
| Washington, DC 20004 | Facsimile: (212) 351-5236 |
| Telephone: (202) 624-2500 | rweigel@gibsondunn.com |
| Facsimile: (202) 628-5116 | jmyatt@gibsondunn.com |

Caragh Glenn Fay
(*pro hac vice* application forthcoming)
Amanda Fox Perry
(*pro hac vice* application forthcoming)
FAY LAW GROUP, P.A.
6205 Executive Boulevard
Rockville, MD 20852
Telephone: (202) 589-1300
Facsimile: (202) 216-0298

Jane Carol Norman
(admitted *pro hac vice*)
BOND & NORMAN LAW, PC
6205 Executive Blvd.
Rockville, MD 20852
Telephone: (202) 682-4100
Facsimile: (202) 207-1041
jnorman425@icloud.com

*Counsel for Proposed Intervenors*