# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: Terrorist Attacks on September 11, 2011 | Civil Action No. 03-md-1570 (GBD) (SN) |
| Federal Insurance Company, et al., *Creditors,* v. The Taliban, et al., *Debtors,* Federal Reserve Bank of New York, *Garnishee*. | Civil Action No. 03-cv-6978 (GBD) (SN) |

**[PROPOSED] MEMORANDUM OF LAW BY JAMES OWENS, *ET AL.*,
IN OPPOSITION TO THE *FEDERAL INSURANCE* CREDITORS' MOTION
FOR PARTIAL TURNOVER OF ASSETS FROM GARNISHEE
<u>FEDERAL RESERVE BANK OF NEW YORK</u>**

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

ARGUMENT ............................................................................................................................ 4

    I.    The Court Should Deny the Motion for Partial Turnover Because the Intervenors Have Priority Over the *Federal Insurance* Creditors. ............................... 4

        A.    Judge Caproni's March 2022 Attachment Order Gave the Intervenors a Legally Cognizable Interest in the DAB Funds Held by the Federal Reserve.................................................................................................................... 4

        B.    Under CPLR § 6226, the Intervenors' Claim to the Remaining DAB Funds Has Priority Over the *Federal Insurance* Creditors' Claim...................... 6

        C.    The Validity of the Attachment Order Issued by Judge Caproni Is Not at Issue in These Proceedings. .................................................................................. 9

CONCLUSION........................................................................................................................ 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Fid. Fire Ins. Co. v. Paste-Ups Unlimited, Inc.*,
   368 F. Supp. 219 (S.D.N.Y. 1973)......................................................................................7

*BSH Hausgeräte, GmbH v. Kamhi*,
   282 F. Supp. 3d 668 (S.D.N.Y. 2017)..................................................................................4

*DLJ Mortg. Cap., Inc. v. Kontogiannis*,
   2013 WL 6409960 (N.Y. Sup. Ct. Dec. 6, 2013) ................................................................7

*Hotel 71 Mezz Lender LLC v. Falor*,
   926 N.E.2d 1202 (N.Y. 2010).............................................................................................4

*In re Hypnotic Taxi, LLC*,
   2017 WL 4464876 (Bankr. E.D.N.Y. Oct. 4, 2017) ...........................................................8

*In re IDI Constr. Co.*,
   345 B.R. 60 (Bankr. S.D.N.Y. 2006)..................................................................................8

*In re Int'l Banking Corp. B.S.C.*,
   439 B.R. 614 (Bankr. S.D.N.Y. 2010)................................................................................8

*In re New Life Builders, Inc.*,
   241 B.R. 507 (Bankr. W.D.N.Y. 1999) ..............................................................................7

*SEC v. Elliott*,
   180 F. Supp. 3d 230 (S.D.N.Y. 2016) ................................................................................8

*Siegel v. N. Boulevard & 80th St. Corp.*,
   295 N.Y.S.2d 804 (N.Y. App. Div. 1968) ..........................................................................4

**Statutes**

18 U.S.C. § 2333................................................................................................................2

28 U.S.C. § 564..................................................................................................................8

28 U.S.C. § 1350................................................................................................................2

CPLR § 5234............................................................................................................4, 6, 7, 9

CPLR § 6214..................................................................................................................4, 5

CPLR § 6221......................................................................................................................9

CPLR § 6223......................................................................................................................9

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

CPLR § 6226 .................................................................................................................................. 4, 6

**Regulations**

31 C.F.R. § 594.101 ........................................................................................................................ 10

**Executive Orders**

Exec. Order No. 14,064, 87 Fed. Reg. 8,391 (Feb. 11, 2022) ..................................................... 1, 10

**Rules**

Fed. R. Civ. P. 64 ............................................................................................................................. 4

**Treatises**

12 Carmody-Wait 2d (Apr. 2022 update) ......................................................................................... 5

Siegel, N.Y. Prac. (6th ed. 2021) .................................................................................................. 5, 7

Richard C. Reilly, *Practice Commentaries to McKinney's* CPLR § 5234 ....................................... 9

**INTRODUCTION**

In February 2022, the Biden administration blocked assets held by Da Afghanistan Bank ("DAB") and made $3.5 billion of those assets potentially available to satisfy civil judgments against the Taliban for its involvement in perpetrating acts of terrorism. *See* Exec. Order No. 14,064, 87 Fed. Reg. 8,391, 8,391 (Feb. 11, 2022). Those funds are being held at the Federal Reserve Bank of New York ("FRBNY").

Various groups of terrorism victims, including plaintiffs in this multidistrict litigation ("MDL"), have sought to recover funds from that pool of assets. In March 2022, the *Havlish* and *Doe* creditors moved for turnover of $2,224,670,879.26 in DAB funds. Dkt. 7763; Dkt. 7767. That same month, Plaintiffs in *Owens v. Taliban*, No. 22-cv-1949 (S.D.N.Y.), and Intervenors here, who have claims against the Taliban stemming from the 1998 bombings of U.S. embassies in Kenya and Tanzania, obtained an order of prejudgment attachment against the blocked DAB funds in the amount of $1,373,761,042.95. Order Granting *Ex Parte* Emergency Motion for Order of Attachment, *Owens v. Taliban*, No. 22-cv-1949 (S.D.N.Y. Mar. 21, 2022), Dkt. 33. Then, on April 29, 2022, after obtaining a writ of execution on April 20, the *Federal Insurance* creditors moved for turnover of the DAB funds to satisfy in part a $14 billion default judgment they obtained against the Taliban. *See* Dkt. 7937 ("Mot."). The *Federal Insurance* creditors seek all the funds that remain from the $3.5 billion pool once the *Havlish* and *Doe* creditors have satisfied their approximately $2.2 billion judgments.

But because those remaining funds are already subject to the attachment order issued by Judge Caproni in *Owens v. Taliban*, the *Owens*' Plaintiffs have intervened in these proceedings for the limited purpose of opposing the *Federal Insurance* creditors' turnover motion. Intervenors have a superior interest in the funds that the *Federal Insurance* creditors seek. Under

1

straightforward and settled principles of New York law, Intervenors have priority to those assets because they delivered their order of attachment to the U.S. Marshals Service nearly a month before the *Federal Insurance* creditors obtained and delivered their writ of execution. As a result, unless and until the Intervenors' attachment is satisfied or dissolved, the *Federal Insurance* creditors' turnover motion cannot be granted. Accordingly, the Court should deny that motion or hold it in abeyance. Intervenors do not herein oppose the turnover motions filed by the *Havlish* and *Doe* creditors.

## BACKGROUND

Intervenors are victims of the 1998 United States embassy bombings in Kenya and Tanzania. In March 2022, they filed suit in this District against the Taliban for its role in committing those attacks. *See* Complaint, *Owens v. Taliban*, No. 22-cv-1949 (S.D.N.Y. Mar. 9, 2022), Dkt. 7. Intervenors allege that the Taliban is liable for harm caused by the embassy bombings under the Anti-Terrorism Act, 18 U.S.C. § 2333, the Alien Tort Statute, 28 U.S.C. § 1350, and state tort law. That lawsuit is pending before Judge Caproni.

To preserve their ability to obtain recovery in the face of the Taliban's limited resources and its efforts to avoid U.S. courts, Intervenors filed an *ex parte* motion for an order of attachment against Taliban funds in the amount of $4,669,011,012.21, representing $1,373,761,042.95 in compensatory damages and $3,295,249,969.26 in punitive damages, along with prejudgment interest. *See Ex Parte* Emergency Motion for Order of Attachment, *Owens v. Taliban*, No. 22-cv-1949 (S.D.N.Y. Mar. 8, 2022), Dkt. 4; Memorandum of Law in Support of *Ex Parte* Emergency Motion for Order of Attachment at 9, *Owens v. Taliban*, No. 22-cv-1949 (S.D.N.Y. Mar. 8, 2022), Dkt. 5. Judge Caproni granted that motion on March 21, 2022, *see* Order, *Owens v. Taliban*, No. 22-cv-1949 (S.D.N.Y. Mar. 21, 2022), Dkt. 32, and ordered the U.S. Marshals Service to levy

$1,373,761,042.95 (*i.e.*, the amount of the *Owens* Plaintiffs' compensatory damages) of funds held in DAB's name at the FRBNY, *see* Order Granting *Ex Parte* Emergency Motion for Order of Attachment, *Owens v. Taliban*, No. 22-cv-1949 (S.D.N.Y. Mar. 21, 2022), Dkt. 33.  Intervenors promptly delivered that attachment order to the U.S. Marshals Service on March 22, 2022.  *See* McGill Declaration in Support of Opposition to *Federal Insurance* Creditors' Motion for Partial Turnover of Assets from Garnishee Federal Reserve Bank of New York ("McGill Decl."), Ex. A.

Almost one month later, on April 20, 2022, the *Federal Insurance* creditors obtained a final judgment against the Taliban for its role in the 9/11 attacks.  Dkt. 7888.  They delivered a writ of execution to the U.S. Marshals that same day.  Mot. at 9; *see* McGill Decl., Ex. B.  One day later, on April 21, 2022, the Marshals Service executed the levies for both the Intervenors and the *Federal Insurance* creditors on the FRBNY.  *See* McGill Decl., Exs. A–B.

Shortly after those levies, the *Federal Insurance* creditors moved for an order requiring the FRBNY to "turn over to the *Federal Insurance* Creditors those blocked assets of DAB in its possession (the 'DAB Assets'), which are not found to be subject to turnover to other creditors with priority, to partially satisfy the compensatory damages for which the Taliban has been adjudged liable."  Mot. at 2.  Although the *Federal Insurance* creditors know that the Intervenors obtained a prior order of attachment for the same blocked DAB funds, they nevertheless baldly contend that their writ is "[a]t [w]orst [t]hird [i]n [l]ine" behind the *Havlish* and *Doe* creditors.  *Id.* at 24; *see id.* at 25 n.50.  The *Federal Insurance* creditors' only mention of the *Owens* attachment comes in a footnote suggesting that the Court disregard Judge Caproni's order because they "expect" that it will become void.  *Id.* at 25 n.50.  In light of this position, the *Owens* Plaintiffs moved to intervene and file this opposition to protect their court-ordered interest in the DAB funds.

3

## **ARGUMENT**

**I.     The Court Should Deny the Motion for Partial Turnover Because the Intervenors Have Priority Over the *Federal Insurance* Creditors.**

Whatever the *Federal Insurance* creditors may think of the *Owens* attachment, they are wrong to suggest this Court is free to overlook Judge Caproni's order. *See* CPLR § 6214(b). Instead, the Court must distribute the blocked DAB assets according to New York's settled priority rules as set forth in CPLR § 5234. *See* CPLR § 6226. Under § 5234, Intervenors unquestionably have priority over the *Federal Insurance* creditors because the Intervenors were the first to deliver their order to the U.S. Marshals Service. *Compare* McGill Decl., Ex. A, *with* McGill Decl., Ex. B. As a result, the *Federal Insurance* creditors' turnover motion cannot be granted. To the extent the *Federal Insurance* creditors believe Judge Caproni erred by entering the attachment order, that is a question for Judge Caproni to address; it is not before the Court in these turnover proceedings.

**A.     Judge Caproni's March 2022 Attachment Order Gave the Intervenors a Legally Cognizable Interest in the DAB Funds Held by the Federal Reserve.**

"Federal Rule of Civil Procedure 64 authorizes a federal court to seize 'a person or property to secure satisfaction of [a] potential judgment' in accordance with 'the law of the state where the court is located.'" *BSH Hausgeräte, GmbH v. Kamhi*, 282 F. Supp. 3d 668, 671 (S.D.N.Y. 2017) (quoting Fed. R. Civ. P. 64). Under Article 62 of New York's Civil Practice Law and Rules, a plaintiff may obtain prejudgment attachment of a defendant's property "to conserve it for eventual execution" in the event that the plaintiff prevails in its suit. *Siegel v. N. Boulevard & 80th St. Corp.*, 295 N.Y.S.2d 804, 806 (N.Y. App. Div. 1968); *see also Hotel 71 Mezz Lender LLC v. Falor*, 926 N.E.2d 1202, 1207 (N.Y. 2010) (explaining that attachment effects a "prejudgment seizure" of defendant's property "so as to apply the property to the creditor's judgment if the creditor should prevail in court" (quotation marks omitted)). Once an order of prejudgment attachment issues and a lien is created, the plaintiff retains an interest in the attached property

unless the order dissolves. *See* 12 Carmody-Wait 2d § 76:197 (Apr. 2022 update) ("Since attachment gives the attaching creditor priority in the property to which the creditor can look in satisfaction of a future judgment, an attachment lien continues as security for any judgment the plaintiff may obtain unless the attachment is abandoned, withdrawn, dissolved, discharged, [or] waived." (footnote omitted)). Correspondingly, after the order has been levied, the garnishee—here the FRBNY—"is forbidden to make or suffer any sale, assignment or transfer of, or any interference with any such property, or pay over or otherwise dispose of any such debt . . . except upon direction of the sheriff or pursuant to an order of the court." CPLR § 6214(b); *see* Siegel, N.Y. Prac. § 320 (6th ed. 2021) (a levied order of attachment "precludes the garnishee from disposing of the defendant's property to anyone but the levying sheriff unless and until the court says otherwise").

On March 21, 2022, Judge Caproni granted Intervenors an *ex parte* order of prejudgment attachment for nearly $4.7 billion of Taliban funds. *See* Order Granting *Ex Parte* Emergency Motion for Order of Attachment, *Owens v. Taliban*, No. 22-cv-1949 (S.D.N.Y. Mar. 21, 2022), Dkt. 33. The attachment order directed the U.S. Marshals Service to levy $1,373,761,042.95 of that amount on assets held in the name of DAB at the FRBNY. Intervenors delivered that order to the U.S. Marshals Service on March 22, 2022, creating a lien on the blocked DAB funds under New York law. *See* Siegel, N.Y. Prac. § 326 ("The general way to secure a priority in the defendant's personal property, *i.e.*, to secure a kind of lien superior to later ones of other persons, is to deliver the order of attachment to 'a sheriff.'"); *id.* § 495 ("the mere delivery of the execution [to the sheriff] makes it a lien on the debtor's personal property").

The U.S. Marshals Service executed the levy on April 21, 2022, McGill Decl., Ex. A, and the attachment order remains in full force. Intervenors timely moved to confirm the attachment

5

order on May 2, 2022. Motion to Confirm Order of Attachment, *Owens v. Taliban*, No. 22-cv-1949 (S.D.N.Y. May 2, 2022), Dkt. 47; Memorandum of Law in Support of Motion to Confirm Order of Attachment, *Owens v. Taliban*, No. 22-cv-1949 (S.D.N.Y. May 2, 2022), Dkt. 48 ("Confirmation Mot."). Accordingly, if Intervenors prevail on the merits, as Judge Caproni has already found likely, Opinion and Order at 6–9, *Owens v. Taliban*, No. 22-cv-1949 (S.D.N.Y. Apr. 11, 2022), Dkt. 38 (holding that plaintiffs are likely to succeed on the Anti-Terrorism Act and Alien Tort Statute claims), then the attached funds will be used to satisfy their resulting judgment—exactly as the CPLR intends, *see* CPLR § 6226 ("Where an execution is issued upon a judgment entered against the defendant, the sheriff's duty with respect to custody and disposition of property or debt levied upon pursuant to an order of attachment is the same as if he had levied upon it pursuant to the execution.").

### B. Under CPLR § 6226, the Intervenors' Claim to the Remaining DAB Funds Has Priority Over the *Federal Insurance* Creditors' Claim.

The *Federal Insurance* creditors argue that they "have priority with respect to any DAB assets not deemed subject to turnover to the *Havlish* and *Doe* Creditors." Mot. at 25. That is incorrect. Intervenors have priority to those assets because they delivered their attachment order to the U.S. Marshals Service before the *Federal Insurance* creditors obtained, let alone delivered, their writ of execution. Under New York's first-to-deliver rule, that is sufficient to secure a superior interest in the funds. *See* CPLR § 5234(b).

The CPLR instructs that priority among an attachment order and a writ of execution is decided based on the date of delivery to the enforcement officer. According to § 6226, which is the provision governing priority with respect to prejudgment orders of attachment, "[t]he priority between an order of attachment and an execution" "is set forth in section 5234." Section 5234 in turn provides that, "[w]here two or more executions or orders of attachment are issued against the

6

same judgment debtor . . . and delivered to the same enforcement officer . . . , they shall be satisfied . . . *in the order in which they were delivered*." (emphasis added); *see also* Siegel, N.Y. Prac. § 520 ("When two or more executions are issued in behalf of different judgment creditors against the same judgment debtor and are delivered to the same enforcement officer, priority in the proceeds of the execution sale is determined by the order of delivery of the executions.").

That Intervenors have a prejudgment attachment order, while the *Federal Insurance* creditors have a writ of execution, does not diminish Intervenors' clear rights under New York law. *See DLJ Mortg. Cap., Inc. v. Kontogiannis*, 2013 WL 6409960, at *9 (N.Y. Sup. Ct. Dec. 6, 2013) ("[A] pre-judgment attachment creditor . . . can achieve priority over a judgment creditor with respect to a debtor's property, if the attachment creditor actually levied upon the property, and/or delivers the execution or attachment order to the appropriate enforcement officer, first."); Siegel, N.Y. Prac. § 520 n.1 ("Since a prejudgment order of attachment can seize property to the credit of the attaching plaintiff, a timely attachment will prevail over later levies of post-judgment execution, even on judgments rendered in actions commenced long before the action in which the attachment issued. For this reason, orders of attachment are treated the same as executions in CPLR 5234(b) and (c). The word 'execution' is therefore used in this section of the text as including an attachment, and the words 'judgment creditor' as including an attaching plaintiff.").

Because both groups of plaintiffs delivered their writs to the "same enforcement officer"— the U.S. Marshals Service for the Southern District of New York, *see* McGill Decl., Exs. A–B— priority is thus assigned based on when the writ or order was received by the U.S. Marshals Service. *See, e.g.*, *In re New Life Builders, Inc.*, 241 B.R. 507, 510 (Bankr. W.D.N.Y. 1999) ("Because Perfetti was the first creditor to deliver an execution to the Chautauqua County Sheriff, its lien takes priority over any other execution delivered to the same sheriff."); *Am. Fid. Fire Ins.*

*Co. v. Paste-Ups Unlimited, Inc.*, 368 F. Supp. 219, 225 (S.D.N.Y. 1973) ("In New York, rival attaching creditors establish priority in the order in which New York executions or New York Orders of Attachment are *delivered to the New York enforcement officer*, *i.e.*, the appropriate Sheriff." (emphasis added)); *see also* 28 U.S.C. § 564 (explaining that "United States marshals . . . in executing the laws of the United States within a State, may exercise the same powers which a sheriff of the State may exercise in executing the laws thereof"). Under this settled law, there is no question that the *Owens* Plaintiffs have priority to the remaining funds because they delivered the attachment order to the Marshals Service *almost one month* before the *Federal Insurance* creditors delivered their writ of execution to the same officers. *Compare* McGill Decl., Ex. A, *with* McGill Decl., Ex. B.

Ample authority from courts across New York confirms the applicability of the CPLR rule—priority is established upon the delivery of an execution or attachment order to the enforcing officer. *See, e.g.*, *In re Hypnotic Taxi, LLC*, 2017 WL 4464876, at *15 (Bankr. E.D.N.Y. Oct. 4, 2017) ("To obtain priority with respect to the attached property, the attaching creditor must deliver the order of attachment to the sheriff or marshal."); *SEC v. Elliott*, 180 F. Supp. 3d 230, 233 (S.D.N.Y. 2016) ("Generally, under New York law, executions or orders of attachment on personal property are delivered to the Sheriff and are given priority in the order in which they are delivered to the enforcement officer."); *In re Int'l Banking Corp. B.S.C.*, 439 B.R. 614, 620 (Bankr. S.D.N.Y. 2010) ("An order of attachment, standing alone, gives no greater rights to the attaching creditor. 'Under New York law, an attaching creditor must deliver the order of attachment to the sheriff in order to obtain priority in specific property or a debt.'" (citation omitted)); *In re IDI Constr. Co.*, 345 B.R. 60, 68 (Bankr. S.D.N.Y. 2006) ("Under New York law, an attaching creditor must deliver the order of attachment to the sheriff in order to obtain priority in specific property or a debt.").

8

If the unambiguous text of the CPLR and those supporting authorities were not enough, the CPLR's practice commentaries also make clear that priority is decided by the date of delivery to the enforcement officer—*regardless of which writ or order was levied on the garnishee first*:

> When the competition is among judgment creditors who have issued executions, or plaintiffs who have obtained attachments under Article 62 of the CPLR, or any mixture of the two, and all deliver their executions or attachment orders to the same enforcement officer, *priority is in the order of delivery*. The officer would ordinarily levy first on the execution or attachment delivered first, but even if that officer should levy on the junior one first, the one senior in delivery, and whose priority has not been lost, is *still entitled to a preference in the proceeds*.

Richard C. Reilly, *Practice Commentaries to McKinney's* CPLR § 5234 (emphases added). Thus, the fact that both orders were levied on the FRBNY the same day is irrelevant. Even if the Marshal actually levied the *Federal Insurance* creditors' writ moments before levying the order from Intervenors—of which there is no evidence in any event—Intervenors' interest remains superior.

### C. The Validity of the Attachment Order Issued by Judge Caproni Is Not at Issue in These Proceedings.

The *Federal Insurance* creditors include a short footnote explaining why they "expect that further proceedings will make clear that the *Owens*' plaintiffs prejudgment attachment efforts are prohibited by federal sanctions law and binding Second Circuit precedent." Mot. at 25 n.50. Of course, the Court cannot disregard the CPLR's priority provisions simply because an adverse party "expects" that a group with a superior interest will lose their spot in line. The Intervenors have priority for the reasons already explained. *Supra* Part I.B. And to the extent the *Federal Insurance* creditors actually believe that Judge Caproni's attachment order is invalid, the proper place to raise that issue is before Judge Caproni. *See* CPLR §§ 6221, 6223 (allowing parties with an interest in the property to bring adverse claims or challenge the attachment). In any event, the arguments noted by the *Federal Insurance* creditors are unpersuasive and wrong for the reasons

9

set forth in the confirmation motion filed by the Intervenors.  *See* Confirmation Mot. at 23–25 & n.10.[1]

## CONCLUSION

For the forgoing reasons, the Court should deny or hold in abeyance the *Federal Insurance* creditors' motion for partial turnover at this time.

---

[1] The *Federal Insurance* creditors suggest that Executive Order 14064 forbade courts from issuing attachment orders with respect to the frozen DAB funds. Mot. at 25 n.50. This is a gross misreading. Instead, that order simply prohibits the "transfe[r]" of blocked assets. Exec. Order No. 14,064, 87 Fed. Reg. at 8,391. An order of prejudgment attachment does not run afoul of that provision because it does not transfer *anything* under the ordinary meaning of that word. *See* Confirmation Mot. at 25 n.10. A prejudgment attachment simply creates a lien on the assets. The *Federal Insurance* creditors cite an Office of Foreign Assets Control regulation defining "transfer" more broadly, Mot. at 25 n.50, but by its terms, that regulation does not apply to Executive Order 14064, *see* Confirmation Mot. at 25 n.10; 31 C.F.R. § 594.101. And contrary to the *Federal Insurance* creditors, Mot. at 25 n.50, the Terrorism Risk Insurance Act does not prohibit Intervenors' attachment because it does nothing to displace ordinary prejudgment attachment remedies under state law, Confirmation Mot. at 25 n.10.

Dated:  May 13, 2022                                              Respectfully submitted,

|  |  |
|---|---|
| Rebecca Monck Ricigliano<br>CROWELL & MORING LLP<br>590 Madison Avenue, 20th Floor<br>New York, NY 10022<br>Telephone:  (212) 895-4000<br>Facsimile:  (212) 223-4134<br>rricigliano@crowell.com<br><br>John L. Murino<br>(*pro hac vice* application forthcoming)<br>Stuart H. Newberger<br>(*pro hac vice* application forthcoming)<br>Emily M. Alban<br>(admitted *pro hac vice*)<br>CROWELL & MORING LLP<br>1001 Pennsylvania Ave. NW<br>Washington, DC 20004<br>Telephone:  (202) 624-2500<br>Facsimile:  (202) 628-5116<br><br>Caragh Glenn Fay<br>(*pro hac vice* application forthcoming)<br>Amanda Fox Perry<br>(*pro hac vice* application forthcoming)<br>FAY LAW GROUP, P.A.<br>6205 Executive Boulevard<br>Rockville, MD 20852<br>Telephone:  (202) 589-1300<br>Facsimile: (202) 216-0298<br><br>Jane Carol Norman<br>(admitted *pro hac vice*)<br>BOND & NORMAN LAW, PC<br>6205 Executive Blvd.<br>Rockville, MD 20852<br>Telephone:  (202) 682-4100<br>Facsimile: (202) 207-1041<br>jnorman425@icloud.com | /s/ Matthew D. McGill<br>Matthew D. McGill<br>Jessica L. Wagner<br>(admitted *pro hac vice*)<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, D.C. 20036<br>Telephone:  (202) 955-8500<br>Facsimile:  (202) 530-9522<br>mmcgill@gibsondunn.com<br><br>Robert L. Weigel<br>Jason W. Myatt<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York 10166<br>Telephone:  (212) 351-4000<br>Facsimile: (212) 351-5236<br>rweigel@gibsondunn.com<br>jmyatt@gibsondunn.com |

*Counsel for Intervenors*

11