```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

    TERRORIST ATTACKS ON                                03-MD-01570 (GBD)(SN)
    SEPTEMBER 11, 2001                                  ORDER

-----------------------------------------------------------------X
```

**SARAH NETBURN, United States Magistrate Judge:**

The Kingdom of Saudi Arabia moves to enforce the provisions of the protective order governing discovery in this multidistrict litigation (the "Protective Order"). ECF No. 7950. The plaintiff's firm of Kreindler & Kreindler published a tranche of discovery materials (the "MPS Material") obtained from the Metropolitan Police Service of the United Kingdom (the "MPS"). This MPS Material was published on a publicly accessible website maintained by Kreindler & Kreindler that has since been taken down.

Publicly distributing discovery material produced pursuant to a court order violates the Protective Order. Kreindler & Kreindler has breached the Protective Order and is ordered not to publish or republish the MPS Material except as necessary for the prosecution or defense of this case. Because there is already a pending investigation of Kreindler & Kreindler for a separate breach of the Protective Order, any further remediation will be addressed as part of the resolution of that investigation.

## BACKGROUND

This dispute concerns the application of the Protective Order to the MPS Material. The Protective Order defines "discovery material" and limits how it may be used. ECF No. 1900. The MPS Material was produced in response to a letters rogatory request issued by this Court on June 9, 2021. ECF Nos. 6834, 6834-1, 6858. It focuses on Omar al Bayoumi, whom the PECs allege

was involved in plotting the September 11 Terrorist Attacks.[1] The MPS completed its production by the end of March 2022. ECF No. 7950 at 1.

After obtaining the MPS Material, the PECs proposed "to lodge a complete set of certified copies . . . with the Court via a thumb drive . . . ." ECF No. 7831 at 1. While this was required by the letters rogatory, ECF No. 6834-1 at 8, the logistical challenges of managing this volume of material led the Court to waive the requirement. ECF Nos. 7885, 7922.

The PECs provided this material to Saudi Arabia on April 1, 2022. ECF No. 7996-1 at ¶ 13. Kreindler & Kreindler then published it on a publicly accessible website: the "9/11 Document Archive." ECF No. 7996 at 2. Kreindler & Kreindler also issued a press release about this material and CBS ran a news story about it. ECF No. 7952-4 at 6.

Saudi Arabia contacted Kreindler & Kreindler with concerns about the treatment of the MPS Material on April 28. ECF No. 7996-1 at ¶ 19. After a dialogue in which Kreindler & Kreindler agreed to temporarily secure the 9/11 Document Archive with a password, the parties reached an impasse. ECF No. 7950 at 3–4, ECF No. 7996-1 at ¶¶ 20–23. Saudi Arabia's motion followed. It requests that the Court direct Kreindler & Kreindler not to republish the MPS Material and to consider this conduct as part of a separate investigation into discovery abuses with that firm. Kreindler & Kreindler proposes that Saudi Arabia be required to meet and confer to identify material that is confidential under the terms of the Protective Order.

---

[1] The parties debate the specific nature of the MPS Material, compare ECF No. 7950 at 2 with ECF No. 7996-1 at ¶¶ 11, 12, but the precise content is irrelevant to the central question of whether this material is covered by the Protective Order.

## DISCUSSION

### I. Breach of the Protective Order

The MPS Material is discovery material subject to the Protective Order. It can be used only for the defense or prosecution of this case. The Protective Order was instituted after the Court found that "broad protection during the pretrial stages of litigation" was warranted. ECF No. 1900 at 5. Two concerns informed this assessment. First, the scale and complexity of this case would have made it logistically impossible for the Court to review discovery requests on a case-by-case basis. Second, the Protective Order recognized the severe risk of prejudice and harm to privacy that unrestrained discovery might pose:

> Most, if not all, of the numerous defendants to these consolidated actions are accused of either committing the terrorist acts of September 11, 2001 or providing material support to those who did. Many of these same defendants will be asked to turn over a vast array of private and confidential information during discovery, much of which will have little or no bearing on the resolution of these actions but will be subject to widespread public scrutiny with prejudicial effects in the absence of a protective order.

Id.

To prevent this, the Protective Order created a two-tiered system of protection for discovery materials. The first tier applies to all "Disclosure or Discovery Material." This is "all items or information, regardless of the medium or manner generated, stored, or maintained (including, among other things, testimony, transcripts or tangible things), that are produced or generated in disclosures or responses to discovery in this MDL." Id. at II.B.2. "All Disclosure or Discovery Material . . . produced in the course of the MDL shall be used solely for the purpose of the prosecution or defense of the MDL, or preparation of the MDL for trial." Id. at II.E. A more restrictive set of protections applies to confidential material.

The First Amendment permits this restriction. Seattle Times Co. v. Rhinehart recognizes that "[a] litigant has no First Amendment right of access to information made available only for purposes of trying his suit." 467 U.S. 20, 32 (1984). Thus, while there is a First Amendment presumption of access to "judicial documents," meaning materials "placed before the court by the parties and . . . 'relevant to the performance of the judicial function and useful in the judicial process,'" Mirlis v. Greer, 952 F.3d 51, 59 (2d Cir. 2020) (quoting United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I")), "[d]ocuments . . . passed between the parties in discovery[] lie entirely beyond the presumption's reach . . . ." United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995) ("Amodeo II").

The MPS Materials are not judicial documents. They are not before the Court so they are not "relevant" or "useful" to the judicial process. They would not be judicial documents even if they had been lodged with the Court pursuant to the letters rogatory. "[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." Amodeo I, 44 F.3d at 145.[2]

Thus, the requirement to use discovery materials only for the prosecution or defense of this case respects the First Amendment. Indeed, it is a basic component of most protective orders in this district. See, e.g., In re Gen. Motors LLC Ignition Switch Litig., 477 F. Supp. 3d 170, 188 (S.D.N.Y. 2020) (collecting cases limiting the use of material covered by protective orders).

---

[2] It is not clear if the documents would even have been filed on ECF or in another publicly accessible format. The PECs' proposal was to submit a thumb drive containing the MPS materials. It is unclear how the Court would have managed these records since they included video and audio footage. ECF No. 7831 at 2. These logistic issues alone led the Court to waive the requirement, without further consideration of how the MPS Materials would be handled if they had been lodged. ECF No. 7885. In short, it goes too far to suggest that but for the waiver of this requirement, these materials would have invariably entered the public domain.

The remaining question is whether Kreindler & Kreindler's use of the MPS Material violated this order. This is a two-part inquiry assessing if the MPS Material is "Discovery Material" and, if so, if Kreindler & Kreindler's use of it was permissible.

The MPS Material is discovery material covered by the order. It was "produced . . . in . . . response[] to discovery in this MDL," id. at II.B.2, specifically the Court's June 9 letters rogatory request. The PECs suggest that this language could be overbroad because it could include information they obtain through Freedom of Information Act ("FOIA") requests or other publicly accessible records. ECF No. 7995 at 1. But information obtained through a FOIA request or other public means falls outside the Protective Order because it is not obtained through this Court's processes. Rhinehart recognizes that if a party obtains information both through discovery subject to a protective order and other means, "the party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes." 467 U.S. 20, 34 (1984). In short, so long as the Court's processes are not invoked, as in the case of a FOIA request, the resulting material falls outside the bounds of the Protective Order.

On the basis of the information supplied by Kreindler & Kreindler, the Court cannot say that the MPS Material is public. The firm asserts that the MPS materials "have expressly been declassified by the producing party, the MPS, and published without any restrictions on their use." ECF No. 7996-1 at ¶ 4. They also indicate that the MPS does not object to the publication of these materials. Id. at ¶ 9.

This does not suggest that the MPS Material is available to the general public. While it was given to Kreindler & Kreindler without restrictions on its use, it was provided only pursuant to a court order. Kreindler & Kreindler has offered no evidence that it is otherwise available or

would be released by the MPS to the general public absent a similar order. Moreover, something is not public merely because it is unclassified. In any case governed by a protective order most protected material is likely to be unclassified. Similarly, merely producing something to a litigant cannot render it public or every protective order would be moot. Rather, for something to be public, it must be available to the public generally and without resort to a court's discovery powers.

Comparing this treatment to the FBI's publication of released information is instructive. As Kreindler & Kreindler reports, material about September 11 that the Federal Bureau of Investigation has released pursuant to President Biden's Executive Order 14040 has been publicly posted on the "FBI Vault" website. ECF No. 7996-1 at ¶ 28. This information is available to anyone with no need to resort to the Court's discovery powers. There is no evidence that MPS, or any entity but Kreindler & Kreindler, has similarly released the MPS Materials publicly. Since there is no evidence that the MPS Material is public, it is Discovery Material covered by the Protective Order. This means it may be used only for the prosecution or defense of this case.

Kreindler & Kreindler's use goes beyond this. They acknowledge that the goal of creating the 9/11 Document Archive was "communicating the importance of the MPS Material on a webpage designed to enhance the understanding of the issues among its clients *and the public*." ECF No. 7996-1 at ¶ 25 (emphasis added). Providing clients with materials to facilitate their understanding and governance of their case falls within "the prosecution or defense" provision of the Protective Order. Disgorging an entire tranche of discovery materials to the public for the purposes of general awareness does not. This mass release thus violated the Protective Order.

## II.  Remedy

Normally, a limited response would be appropriate. The materials in the 9/11 Document Archive were not designated confidential for over a month, even though Saudi Arabia had them by April 1. ECF No. 7950 at 1. When Kreindler & Kreindler was alerted to potential issues with this webpage, it removed the site. Its media outreach similarly occurred before it was alerted to the potential issue with the Protective Order. Standing alone then, this incident might be treated as a minor incident.

When evaluating the appropriate response to the violation of a protective order, however, a "district court is free to consider 'the full record in the case in order to select the appropriate sanction.'" S. New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010) (quoting Nieves v. City of New York, 208 F.R.D. 531, 535 (S.D.N.Y. 2002)). Kreindler & Kreindler's conduct is a matter of increasing concern. Jim Kreindler, a firm attorney, breached the Protective Order in 2017. ECF No. 3619 at 9:6–7. The firm and several of its attorneys are the subject of a pending investigation for a more serious breach in which one of their consultants confessed to deliberately leaking protected materials to a reporter. See generally ECF Nos. 7386, 7387, 7389 (party submissions discussing the breach). While the Court has not yet rendered a finding there, it is uncontested that, at minimum, a trusted, long-time consultant to the firm deliberately engineered a breach of the Protective Order. It is concerning that given its prior violation of the Protective Orders and the pending investigation, the firm is still opting to test the boundaries of the Protective Order so aggressively.

Accordingly, the Court orders the following steps to address this breach. No party shall publish or republish the MPS material except as necessary for the prosecution or defense of this case. The parties shall meet and confer to determine if any of the MPS Material is confidential

under the Protective Order. As there is a pending investigation against Kreindler & Kreindler for violations of the Protective Order, the Court will address any future action as part of the resolution of that investigation.

The Court closes by noting its concern with the increasing rate at which violations of the protective orders are accruing. From 2006 to 2017, this was not a major issue. Beginning in 2017, with Kreindler's violation, however, conflicts have becoming increasingly common. The Court warned parties to be sensitive about their public commentary on this case again in 2019, after the Government raised concerns about speeches made by plaintiffs. ECF No. 5334 at 35:4–8. Then in 2021, protected material was deliberately leaked to a journalist. The parties are not quite halfway through 2022, and the present violation has already accrued.

The Court has repeatedly confirmed that parties may talk to the press about this case. ECF No. 3619 at 9:10–11 ("I'm certainly not going to prohibit anyone from speaking to the press . . . ."); ECF No. 7134 at 16 ("[T]he Court has affirmed that parties may talk to [a reporter] or any other member of the press so long as they do not violate the Protective Orders.") It does so again here. All that parties are prohibited from doing is leveraging protected materials in service to this press strategy. If the parties believe that the Protective Order needs modification, the appropriate remedy is to move the Court for such relief, not to continually test the order's limits to see if the Court will enforce them.

## CONCLUSION

The public dissemination of the MPS Material violated the Protective Order. No party shall publish or republish the MPS material except as necessary for the prosecution or defense of this case. The parties shall meet and confer to determine if anything in the MPS Materials is confidential under the Protective Order.

**SO ORDERED.**

Dated: June 2, 2022
       New York, New York

SARAH NETBURN
United States Magistrate Judge