IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

In re: Terrorist Attacks on September 11, 2001     Civil Action No. 03-MD-1570 (GBD)(SN)
ECF Case

------------------------------------------------------------X

**This document relates to:**

*Federal Ins. Co., et al. v. Al Qaida, et al.*, No. 03-cv-06978
*Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03-cv-09849
*Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.*, No. 04-cv-01922
*Cont'l Cas. Co., et al. v. Al Qaeda Islamic Army, et al.*, No. 04-cv-05970
*Estate of John P. O'Neill, Sr., et al. v. Republic of the Sudan, et al.*, No. 18-cv-12114
*Aronow, et al. v. Republic of Sudan*, No. 20-cv-07733

**CONSOLIDATED AMENDED COMPLAINT PLAINTIFFS' MOTION FOR
PARTIAL RECONSIDERATION OF THE COURT'S MAY 3, 2022
REPORT & RECOMMENDATION (ECF No. 7942)**

June 10, 2022

## INTRODUCTION

In an extensive decision, the Court on May 3, 2022 addressed a range of complex factual and legal issues arising from Sudan's motion to dismiss complaints filed by various groups of plaintiffs. *See* Report & Recommendation (ECF No. 7942, "R&R"). A handful of discrete conclusions among the R&R's many determinations rested on errors of fact or failed to take into account relevant law.

As a result, Plaintiffs respectfully seek reconsideration, under Local Rule 6.3 and this Court's inherent powers, of this Court's R&R. As described below, the points for reconsideration concern whether the secondary liability claims of certain plaintiff groups are time-barred, whether the *Federal Insurance* and *Continental Casualty* plaintiffs' trespass claims are time-barred, the existence of subject matter jurisdiction under 28 U.S.C. § 1605(a)(5), and the scope of claims for which the Court has subject matter jurisdiction under 28 U.S.C. § 1605A. As discussed below, certain revisions would enable the Court to not address the last issue at all.

## STANDARD OF REVIEW

The Court has inherent, discretionary power to reconsider and revise its decisions, and, under Local Rule 6.3, reconsideration is warranted if the Court has "overlooked" either factual "matters" or "controlling decisions." The overlooked material must be information that "might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration should not be used to make "repetitive arguments on issues that have been considered fully by the court," *System Mgmt. Arts Inc. v. Avesta Techs., Inc.*, 106 F. Supp. 2d 519, 521 (S.D.N.Y. 2000), or to "advance new facts, issues or arguments not previously presented to the Court," *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990). Reconsideration is appropriate, however, where a party "did not have an opportunity to present all material facts to the Court and . . . those facts would have reasonably altered the Court's finding." ECF No. 4350, at 3.

# ARGUMENT

**Point 1: The secondary liability ATA claims in the *Burnett*, *Federal Insurance*, and *Continental Casualty* cases—in which no new plaintiffs were added—are not time barred and should not be dismissed.**

In the R&R (at 44-47), the Court recommended dismissing the secondary liability ATA claims as time barred in the *Burnett*, *Federal Insurance*, and *Continental Casualty* cases, but not in the *Ashton* and *O'Neill* cases. The Court reasoned that the plaintiffs in the *Burnett*, *Federal Insurance*, and *Continental Casualty* cases could not, unlike the *Ashton* plaintiffs, take advantage of the rule that an amended pleading relates back to a timely filed pleading as long as the defendant has received adequate notice of the claims. R&R at 44-46. The Court based this conclusion on its perception that the *Burnett*, *Federal Insurance*, and *Continental Casualty* Consolidated Amended Complaint as to Sudan ("CAC") had added "many new plaintiffs" to those identified in their earlier, timely filed complaints and had not established that the earlier omissions were due to mistakes. R&R at 47.

However, this conclusion rested on an error of fact. The record shows, instead, that the CAC did <u>not</u> add plaintiffs to the *Burnett*, *Federal Insurance*, and *Continental Casualty* cases, but instead identified plaintiffs who had been included in prior, timely complaints. Sudan did not even argue that plaintiffs were added in these cases. Thus, the secondary liability ATA claims of the *Burnett*, *Federal Insurance*, and *Continental Casualty* plaintiffs in the CAC are timely for the very reasons the Court found secondary liability ATA claims in another amended complaint to be timely.

The CAC identifies the relevant plaintiffs in paragraphs 4 and 5, which are those already identified in the series of earlier pleadings referenced in footnote 1 of the CAC. Specifically, as to the *Burnett*, *Federal Insurance*, and *Continental Casualty* cases, the CAC plaintiffs are those already included in the following, earlier filings that the CAC incorporated by reference: "the *Burnett* Third Amended Complaint, Case No. 02 Civ. 1616 (D.D.C.), ECF No. 29 [Nov. 22, 2002], and *Burnett's* Notice of Consolidation of Pleadings, 03 MDL 1570, ECF No. 1377 [Sept. 20, 2005]; *Federal Insurance* First

2

Amended Complaint with Incorporated More Definite Statements, RICO Statements and Rule 15(d) Supplemental Pleadings, Filed in Accordance with Paragraph 13 of Case Management Order Number 2, Case No. 03 Civ. 6978, ECF No. 772 [Sept. 30, 2005]; *Continental Casualty* Second Amended Complaint, Case No. 04 Civ. 5970, ECF No. 195 [Oct. 6, 2005]." CAC, ECF No. 6539 at 2, n.1. Those earlier pleadings were timely filed within the limitations period. That is, the amended pleadings added no new plaintiffs to the *Burnett*, *Federal Insurance*, or *Continental Casualty* cases. Thus, consistent with this Court's reasoning in the R&R with respect to another amended filing, the amended filings for the *Burnett*, *Federal Insurance*, and *Continental Casualty* plaintiffs related back to the earlier, timely-filed pleadings, providing Sudan with sufficient notice.

Accordingly, the secondary liability ATA claims in the *Burnett*, *Federal Insurance*, and *Continental Casualty* cases should not be dismissed.

> **Point 2:  The *Federal Insurance* and *Continental Casualty* Plaintiffs' trespass claims, which were filed before the September 11, 2004 conclusion of the limitations period, should not be dismissed.**

The Court concluded that the limitations period for trespass claims was three years, and thus that "the trespass claims must be dismissed for all plaintiffs who brought claims after September 11, 2004." R&R at 57-58. In the concluding paragraph of its trespass discussion, the Court recommended dismissal of the "trespass claims for all plaintiffs but the *Ashton* and *Burnett* Plaintiffs" as untimely. *Id.* at 59. Thus, the Court recommended dismissal of the *Federal Insurance* and *Continental Casualty* plaintiffs' trespass claims on this ground.[1]  *Id.* at 57-58, 59.

---

[1] The CAC Plaintiffs note that Sudan did not raise a statute of limitations defense as to any of their common law claims in its motion to dismiss. Ordinarily, a court should not *sua sponte* dismiss a claim on statute of limitations grounds. *David v. Bryan*, 810 F.2d 42, 44 (2d Cir. 1987). This is because the statute of limitations is an affirmative defense that must be asserted by the defendant in its responsive pleading, and because *sua sponte* dismissal deprives the plaintiff of an opportunity to present arguments as to the issue. Accordingly, the CAC plaintiffs respectfully submit that the timeliness of their common law claims has not been brought before the Court for consideration. If Sudan were to raise such issues belatedly, waiver and other arguments would be relevant. *Id.* at 45; *see Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1107-1115 (D.C. Cir. 2019) (concluding Iran had forfeited a statute of limitations defense by failing to assert it in response to the pleadings and that the district court had erred in raising *sua sponte* the forfeited defense).

3

This recommendation rested on an error of fact.  The *Federal Insurance* plaintiffs filed their Complaint against Sudan on September 10, 2003, and thereafter filed the *Federal Insurance* plaintiffs' First Amended Complaint on March 10, 2004, with each containing a trespass claim against Sudan. *See Federal Insurance* Complaint, Case No. 1:03-cv-06978, ECF No. 1 (Sept. 10, 2003), at 67-68 (Count 1); *Federal Insurance* First Amended Complaint, Case No. 1:03-cv-06978, ECF No. 104 (Mar. 10, 2004), at 171-172 (Count 1).  Thus, the *Federal Insurance* plaintiffs unquestionably brought their trespass claims against Sudan within the limitations period identified by the Court.[2]  Indeed, this Court elsewhere acknowledged that the *Federal Insurance* plaintiffs filed their complaint on September 10, 2003.  R&R at 3.  Likewise, the *Continental Casualty* plaintiffs' complaint, filed on September 1, 2004, included a trespass claim as to Sudan.  *See Continental Casualty* Complaint, Case No. 04-cv-5970, ECF No. 1 (Sept. 1, 2004), at 189-90 (First Claim for Relief).

Because the record establishes that the *Federal Insurance* and *Continental Casualty* plaintiffs brought a timely trespass claim, the Court should revise the portion of the R&R that recommends dismissing the trespass claims of the *Federal Insurance* and *Continental Casualty* plaintiffs.

> **Point 3:  If the Court addresses subject matter jurisdiction under § 1605(a)(5), it should find that subject matter exists over secondary liability claims because relevant tortious acts causing harm for those claims occurred entirely within the United States.**

After determining that the immunity exceptions set forth in Sections 1605A and 1605B provided jurisdiction for plaintiffs' claims, the Court also addressed the immunity exception set forth in § 1605(a)(5), commonly referred to as the non-commercial tort exception, and found that it did not apply.  The CAC Plaintiffs respectfully submit that this conclusion was incorrect, based on the Court's own conclusions regarding conspiracy and aiding and abetting.

---

[2] Consistent with the above, Judge Casey found that the *Federal Insurance* Plaintiffs could proceed with their trespass claims in a lengthy decision issued early in the MDL.  *See In Re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 830 (S.D.N.Y. 2005).

4

The Court determined that plaintiffs had adequately established Sudan's secondary liability under both conspiracy and aiding and abetting theories. The pleadings establish, for conspiracy, that "Sudan knew that al Qaeda wanted to commit terrorist acts against the United States, agreed to assist that endeavor, and then took steps to do so." R&R at 52. Likewise, for aiding and abetting, the pleadings establish that Sudan substantially assisted al Qaeda through "a close and enduring relationship between al Qaeda's leadership and the highest levels of the Sudanese government," and Sudan "knowingly assisted" al Qaeda's schemes. R&R at 50.

In light of these findings, and contrary to the report's conclusion, R&R at 35, the "entire tort doctrine" does not bar jurisdiction under 28 U.S.C. § 1605(a)(5). The underlying tort that Sudan allegedly conspired to advance or aided and abetted occurred entirely in the United States: al Qaeda's hijacking of domestic flights ending in the attacks in New York, Pennsylvania, and Virginia. Indeed, the Court's conclusions compel a finding of jurisdiction in this respect, as they make *Doe v. Bin Laden*, 663 F.3d 64 (2d Cir. 2011), binding here. As with Sudan's conspiracy to advance al Qaeda's attacks, *Doe* concluded that Afghanistan's conspiracy with al Qaeda, if ultimately shown after jurisdictional discovery, sufficed to satisfy § 1605(a)(5)'s requirements. *See id.* at 66-70; *id.* at 66-67 (finding the element of "damage … occurring in the United States" to have been established). The Court's aiding and abetting conclusion requires the same result, because aiding and abetting liability simply attributes the consequences of the wholly domestic tort, including causation, to those who act in concert with the tortfeasor. *See Linde v. Arab Bank, PLC*, 882 F.3d 314, 331 (2d Cir. 2018); *see also id.* (aiding abetting analyzed as advancing "acts of terrorism of others").

For purposes of § 1605(a)(5) jurisdiction, these secondary liability claims are quite different from primary liability claims, where the "entire tort" doctrine has been held to apply because the wrongful acts giving rise to primary liability and constituting the underlying tort do occur, at least in part, abroad. This difference accounts for *Doe*'s conclusions regarding § 1605(a)(5) jurisdiction in the

conspiracy context, and is further highlighted by the *Doe* court's reliance on other cases holding that foreign sovereigns who act abroad are subject to claims under § 1605(a)(5) when the act causing harm and the harm itself occur wholly in the United States.  *See Doe v. Bin Laden*, 663 F.3d at 68-69 (citing *Liu v. Republic of China*, 892 F.2d 1419 (9th Cir. 1989), and *Letelier v. Republic of Chile*, 488 F. Supp. 665 (D.D.C. 1980)).

> **Point 4.  If the Court addresses the scope of claims supported by § 1605A, it should conclude that insurer claims under § 1605A are not limited to subrogated claims of U.S. nationals.**

Because the Court concluded that it had subject matter jurisdiction over the *Federal Insurance* and *Continental Casualty* plaintiffs' claims under both § 1605B and § 1605A (ECF No. 7942 at 32-35), for the latter based on its finding that plaintiffs had adequately pled the claims, the Court had no need at this juncture to address the scope of claims that § 1605A supported or to address the related issue of the definition of U.S. nationals.  *Id.* at 32-33.  In any event, the Court's reasoning on this point was in error for two separate reasons described below, and focusing the decision on the existence of subject matter jurisdiction without addressing the U.S. national definition would avoid those errors, avoid creating a conflict with a prior decision of the Court in this case, and avoid the need to file and resolve objections in this respect.

First, § 1605A(d) and the related operation of § 1605A's waiver of sovereign immunity, not the definition of U.S. national or any limitation imposed by that term, provide the basis for the Court's § 1605A subject matter jurisdiction over the entire scope of the Federal Insurers' claims for damages.  That section provides that, "[a]fter an action has been brought under subsection (c)," other "actions may also be brought for reasonably foreseeable property loss … by reason of the same acts on which the action under subsection (c) is based."  28 U.S.C. § 1605A(d).  Those authorized claims extend to "loss claims under life and property insurance policies," *id.*, and are not limited to claims of U.S. nationals.  Here, because U.S. nationals have indisputably brought valid claims under § 1605(c),

6

establishing the required nexus to U.S. interests and bringing the case within the waiver of sovereign immunity, the insurers' claims can proceed because their asserted losses arose "by reason of the same acts on which the action under subsection (c) is based." *Id.*

As various courts have explained, "once a party with valid [statutory] standing has brought an action under [Section] 1605A(c), it is unnecessary for a party filing suit under [Section] 1605A(d) to establish standing separately; [statutory] standing under [Section] 1605A(d) is derivative of that under [Section] 1605A(c)." *Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran*, 313 F. Supp. 3d 50, 58 (D.D.C. 2018) (internal quote omitted; brackets in original). The same reasoning applies for the waiver of immunity. *See id.* at 57 (immunity waiver satisfied "by virtue of the [Section 1605A(c)] claim against Iran"); 28 U.S.C. § 1605A(a)(1) (immunity waiver extends to "any case" involving certain sovereign acts).

Indeed, this Court has previously adopted this reasoning in this case when upholding the *Federal Insurance* and *Continental Casualty* plaintiffs' claim against Iran under Section 1605A(d) and entry of judgment for property and related losses suffered by all of the insured entities. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570 (GBD)(FM), 2015 WL 9468813, at *2-3 (D.D.C., Dec. 28, 2015). As the *Mayanot* court explained in following this Court's 2015 decision, the "federal insurance carriers that made payments in response to property damage and business interruption caused by the September 11, 2001 attacks" could recover damages under § 1605A(d) because an action had already been brought "under Section 1605A(c) by the estates" of the victims of the September 11th attacks. *Friends of Mayanot Inst., Inc.*, 313 F. Supp. 3d at 58.

Second, the Court erred in excluding corporations from the scope of U.S. nationals. In fact, in remedial contexts generally and this one specifically, corporations readily fit within the definition of "national of the United States." 8 U.S.C. § 1101(a)(22). The Immigration and Nationality Act ("INA") provides that "person[s]" include "organization[s]," 8 U.S.C. § 1101(b)(3), and the Supreme

7

Court has long held that corporations are to be treated as "citizens" where that Congressional "intent [is] to be gathered from the context and general purpose of the whole legislation in which it occurs." *Swiss Ins. Co. v. Miller*, 267 U.S. 42, 46 (1925); *see United States v. Northwestern Express Co.*, 164 U.S. 686, 689-90 (1897) (noting "frequent use by Congress of the words 'citizens of the United States' as embracing a corporation of a State," consistent with remedial purposes of statutes). Section 1605A is clearly such a remedial statute. Indeed, Congress had earlier used definitional language regarding U.S. national that is nearly identical to that adopted in the INA and used in § 1605A to define claimants. It did so in the International Claims Settlement Act, *see* 22 U.S.C. § 1621(c), which has provided for corporate relief in various contexts. *See also* Libya Claims Resolution Act, P.L. 110-301 (defining U.S. national using INA definition, for settlement providing relief to corporations). And, the underlying purpose of § 1605A's definition is to provide a nexus of claims to the United States in light of the extraterritorial reach of the section's cause of action, a function completely fulfilled by permitting claims by entities incorporated under U.S. state law. Nor does *Marquez-Alamanzar v. INS*, 418 F.3d 210 (2d Cir. 2005), indicate any different result: that decision concerned only the "allegiance" prong of the definition, 8 U.S.C. § 1101(a)(22)(B), not citizenship, and even if that prong were relevant, state corporation law separately establishes the legal basis for state corporations' allegiance and nationality, consistent with subsection B's operation to recognize or "describe[], rather than confer[], U.S. nationality." *Marquez-Alamanzar v. INS*, 418 F.3d at 218.

## CONCLUSION

For the reasons explained above, Plaintiffs respectfully ask that the Court reconsider and revise the portions of the R&R in the following respects: (1) the Court does not recommend dismissal of the secondary liability ATA claims in the *Burnett*, *Federal Insurance*, and *Continental Casualty* cases, (2) the Court does not recommend *sua sponte* the dismissal of any of plaintiffs' assault, battery, or trespass claims premised on any statute of limitations defense, which Sudan had abandoned, and (3) the Court

8

does not recommend the *Federal Insurance* and *Continental Casualty* plaintiffs' trespass claims are time-barred. In addition, (4) Plaintiffs respectfully submit that the Court should revise the R&R to recommend that subject matter exists over secondary liability claims because relevant tortious acts causing harm for those claims occurred entirely within the United States. Finally, (5) Plaintiffs recommend that the Court revise the R&R to decline to address the scope of claims supported by § 1605A.

Respectfully submitted,

COZEN O'CONNOR

By: /s/ Sean P. Carter
SEAN P. CARTER
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel.: (215) 665-2105
Email: scarter1@cozen.com

*Co-Chair of the Plaintiffs' Executive Committee for Commercial Claims on behalf of the Consolidated Amended Complaint Plaintiffs*

MOTLEY RICE LLC

By: /s/ Robert T. Haefele
ROBERT T. HAEFELE
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*Co-Liaison Counsel for the Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Consolidated Amended Complaint Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the Consolidated Amended Complaint Plaintiffs' Motion for Partial Reconsideration of the Court's May 3, 2022 Report & Recommendation (ECF No. 7942), was electronically filed this 10th day of June 2022. Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system.

                                                        J. Scott Tarbutton, Esq.

LEGAL\58280210\1