UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |

*This document relates to*:
All Actions

### PLAINTIFFS' OBJECTIONS PURSUANT TO FED. R. CIV. P. 72 TO THE MAGISTRATE JUDGE'S JUNE 2, 2022 ORDER (ECF No. 8066)

Pursuant to Fed. R. Civ. P. 72(a), on behalf of the *Ashton* Plaintiffs, Kreindler & Kreindler ("Kreindler") respectfully objects to, and requests that this Court set aside, the Magistrate Judge's Order, ECF No. 8066, barring Plaintiffs from sharing publicly the materials obtained from the Metropolitan Police Service of the United Kingdom ("MPS Materials") through the letters rogatory process. Kreindler also objects to the Magistrate Judge's finding that publishing the MPS Materials on an archival website established to facilitate client and public access violated Judge Richard Conway Casey's October 6, 2006 Protective Order (ECF 1900) (the "2006 Protective Order"). The 2006 Protective Order was never intended to prevent disclosure of publicly released government documents. Kreindler not only properly believed that the MPS Materials were outside the scope of the 2006 Protective Order but the Court's letters rogatory provided for the MPS Materials to be publicly filed on the Court's docket. It was only after the Magistrate Judge informed the parties of the logistical "challenge" posed by filing the MPS Materials on the public docket, ECF 7885, that Kreindler established the archival website and used it to publish the MPS Materials.

**The 2006 Protective Order does not restrict the parties from public discussion of non-confidential information obtained in the course of litigation.** The 2006 Protective Order

is addressed to discovery material involving "confidential, proprietary, or private information for which special protection from public disclosure" the Court found warranted. ECF 1900 at 6. Accordingly, the Court issued its 2006 Protective Order to cover non-"judicial documents," that is, discovery materials that were not "submitted to the Court in connection with trial, other hearings, and motions." *Id.* Rejecting a defense request requiring that all materials be filed under seal, the Court designed a process that allowed "the parties to designate particular discovery material as confidential and subject to heightened protections[.]" *Id.* The procedure set forth by the 2006 Protective Order is for a "Producing Party" (that is, a "Party or non-party that produces Disclosure or Discovery Material in this MDL") to designate items "for protection under this Order" taking "care to limit any such designation to specific material that qualifies under the appropriate standards." *Id.* at 7-8. A party or non-party who believes that a Producing Party failed to designate material that should receive "protection under this Order" as confidential must "promptly notify counsel for all Receiving Parties" of its position. *Id.* at 9.

Never before has the 2006 Protective Order been interpreted to restrain parties or counsel from publicly discussing non-confidential materials obtained in the course of the litigation or other non-confidential, non-protected issues arising in the litigation. To the contrary. For the last 16 years, the 2006 Protective Order was reasonably understood by the Magistrate Judge and the parties to restrict disclosure and public discussion of materials that were *specifically marked as confidential*. The MPS Materials were produced as public documents without restriction and were supposed to be filed publicly. No party or non-party designated any of those documents as confidential.

**Plaintiffs reasonably (and correctly) understood the MPS Materials to be publicly available.** Here, pursuant to a June 2021 Plaintiffs' motion seeking international judicial

assistance pursuant to the Hague Convention, the Court issued letters rogatory concerning the MPS Materials.  The Letters Rogatory provided that the responsive documents were to be filed with the Court without delay upon their receipt.

The MPS production was completed on Friday April 1, 2022 and that day – the same day Plaintiffs' expert reports were due (six out of seven of which the *Ashton* Plaintiffs were responsible for) – the *Ashton* Plaintiffs (who had procured the original letters rogatory) provided the MPS Materials to the Kingdom of Saudi Arabia via Dropbox, making no assertion of confidentiality. *See* ECF 7952-1.  The following Tuesday, April 5, 2022, Plaintiffs updated the Court on the letters rogatory process, stating that the MPS materials had been received and provided to the Kingdom of Saudi Arabia, and specifically and clearly asserting that *"[n]one of the responsive materials are subject to any confidentiality protections or sealing orders."* ECF 7831 at 1 (emphasis added).  Plaintiffs provided the Court with the Witness Statement of MPS Detective Superintendent David McGillicuddy, which confirmed that the MPS determined that the MPS Materials were not secret or classified and that there was no public interest immunity precluding their disclosure.  ECF 7831-1 at ¶¶ 19-21.  Detective McGillicuddy confirmed that the MPS screened the documents and made necessary redactions to the disclosed MPS Materials prior to release.  *Id.* at 14-15.  At that time, Plaintiffs also requested permission to file the MPS Materials with the Court (again, not subject to any confidentiality orders) in electronic format, given their nature and size. ECF 7831 at 1-2.

In its April 19, 2022 Order, the Magistrate Court acknowledged that "the original letters rogatory required filing certified copies of this material." ECF 7885.  The Magistrate Court stated, however, that because of the volume and variety of the MPS Materials, filing them on the docket would "pose a logistical and management challenge for the Court." ECF 7885.  The Court

did not address the issue of *public* disclosure, even though the letters rogatory already specified that the MPS Materials would be filed on the docket. The Court only asked Plaintiffs to state whether they had any objection to waiving "the requirement to file certified copies of the MPS Material[.]" *Id.*

The Magistrate Court also did not address, let alone rule on, Plaintiffs' assertion that the MPS Materials were not subject to protections, nor the clear expectation that but for the "logistical and management challenge," the MPS Materials would have been filed publicly. Plaintiffs, appreciating the challenge the Magistrate Court identified, agreed that they had "no objection to the Court's proposal to waive the requirement to file certified copies" of the MPS Materials. ECF 7919. Neither the Court nor the Kingdom of Saudi Arabia raised any concerns about the public status of the MPS Materials.

All parties and the Court knew as of April 5, 2022 that none of the MPS Material was designated as confidential and that Plaintiffs intended to lodge the material on the Court's public docket. No objections were raised. It was only after the Court cited the technical challenge and asked for another solution that the Kreindler firm made the MPS Materials available by way of an archival website.

The MPS materials were *required* to be filed on the docket pursuant to the letters rogatory. *See, e.g.,* ECF 6834-1 at 8. Their production was the result of this Court's exercise of its authority under the Hague Convention for the Taking of Evidence Abroad, "the performance of [a] judicial function and useful in the judicial process." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995). The Confidentiality Order expressly does not "cover[] all 'judicial documents,'" including those, like the MPS Materials, that have been submitted to the Court in connection with motions (as Plaintiffs would have done with the MPS Materials produced in

connection with their motion to take evidence abroad but for the Magistrate Court's request not to do so due to the Court's "logistical and management challenge").

Under these circumstances – involving materials produced pursuant to a motion before the Court that were to be publicly docketed pursuant to this Court's Order, with prior notice to the Court and the parties that the materials were not subject to any protections and no objection thereto raised – Plaintiffs reasonably (and correctly) understood the responsive MPS Materials to be the sort of judicial documents that the Confidentiality Order did not cover.

The Magistrate Court's finding of a violation of the Confidentiality Order was in error and was contrary to the history and process detailed above. Had the Court or the Kingdom of Saudi Arabia believed the MPS Materials were not to be made publicly available, such a determination or objection should have been raised at the time the June 2021 letters rogatory were issued. The Plaintiffs' April 1 and April 5 communications and filings confirmed the public nature of the items and the intent to publicly docket them in accordance with the letters rogatory. It was unreasonable for the Magistrate Court to conclude in hindsight that the posting of the materials to a publicly available archival website (instead of on the Court's public docket – which Plaintiffs had intended and requested to do) was a violation of the Protective Order. The finding that Plaintiffs violated the 2006 Protective Order was based on an overbroad reading of the Protective Order – a reading that neither the Court nor any of the parties had previously adopted. For these reasons, as well as the additional concerns set forth below, this Court should set aside the finding that Plaintiffs violated the Protective Order here.

- **The Magistrate Court improperly imposed a broad gag order over documents publicly released by the United Kingdom.** The Magistrate Court erred in attempting to distinguish material obtained from a domestic government body through a

5

Freedom of Information Act (necessarily public, even when produced following a court's order) from a foreign government through letters rogatory (the only means by which a U.S. court can assist an effort to obtain foreign government materials). Had the MPS Material been held by the U.S. government, Plaintiffs would have used the FOIA process to obtain them and, as the Magistrate Court acknowledges (ECF 8006 at 5), could have published the material on the public website. But because the material was held by a *foreign* government body, judicial assistance was required to obtain the material.

The Magistrate Court, however, distinguished the MPS Materials from FOIA-produced items because the MPS Materials were "obtained through this Court's processes." ECF 8006 at 5. This was error. If it is the Court's involvement that transforms the MPS Materials from public items to litigation items (even within the overly broad reading of the Confidentiality Order), then that same judicial involvement necessarily gives the public a right of access to the materials under controlling Second Circuit precedent. *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004). The Magistrate Court cannot reasonably claim that the MPS Materials are meaningfully different from FOIA-produced documents obtained from a government body because of the judicial role, and then deny that the materials produced in response to motions practice are judicial documents. If it is the judicial role here that distinguishes the MPS Materials from FOIA material, then the judicial role elevates the MPS Materials to judicial documents not subject to the 2006 Protective Order.

- **The documents are of intense public interest - they contain new information kept hidden for over 20-years which show that investigators including the 9/11 Commission missed key evidence and did not follow important leads.** The 2006 Protective Order was never intended to apply to material produced by a government on a 20-year old investigation

6

where there is intense public interest in learning the truth about those who supported the worst attack and mass murder in U.S. history.  The 2006 Protective Order *rejected* the defendants' request for a blanket sealing requirement in this case.  The Magistrate Court's Order is directly contrary to the letter and the spirit of the 2006 Protective Order and effectively, and without justification, dramatically transforms the 2006 Protective Order into a broad un-Constitutional gag order, restricting public discussion of non-classified materials of serious public interest.

- **To this day, Saudi Arabia has not yet designated a single document from the MPS Materials as confidential – rather, contrary to the very purpose of the 2006 Protective Order, Saudi Arabia has used vague, unsupported claims to keep all the MPS Materials secret.**  Saudi Arabia knew from the time the letters rogatory were issued in June 2021 that Plaintiffs were seeking the MPS Materials and the Kingdom received the MPS Materials on April 1, 2022 knowing that the MPS Materials were public (as expressly explained in Plaintiffs' April 5, 2022 letter to the Court).  It did not raise any issue about the materials for four weeks.

It was not until April 28, 2022 that Saudi Arabia first raised an issue, claiming two categories of information in the MPS Materials that were confidential: (1) Saudi agent Bayoumi's allegedly private information such as 20-year-old bank account details and phone numbers (all of which are believed to be expired); and (2) several images of Bayoumi, his children, and wife. Saudi Arabia, however, did not provide specific designations of the MPS Materials that it claimed were confidential.

The following day, at Saudi Arabia's request, the PECs and the Kellogg firm held a meet and confer conference. Prior to the meet and confer, the Kreindler firm took offline the document archive that housed the MPS Materials to give Saudi Arabia additional time to advise Plaintiffs of any specific materials it believed were confidential on privacy grounds, and Saudi Arabia

agreed to complete its review promptly. ECF 7966. Plaintiffs reasonably believed that they had worked out a solution that would avoid a time-consuming dispute, get the website back online quickly, and spare the need to involve the Court in this matter. Then, however, the Kingdom of Saudi Arabia's position shifted, and they claimed that they were, in fact, seeking to keep *all* MPS Materials shielded from public scrutiny. To this day, the Kingdom has not designated a single document as confidential. No good faith effort has been made to demonstrate that any MPS Materials are genuinely confidential. Rather, Saudi Arabia is relying on the Magistrate Court's Order to avoid any public review or discussion of investigatory materials supporting Plaintiffs' claims about the role that the Kingdom's agent Bayoumi and its other officials played in the 9/11 Attacks.

As set forth in the letters rogatory, the MPS Materials were produced by the United Kingdom to be filed on this Court's public docket. This Court should set aside the Magistrate Court's Order, ECF 8066, and allow the MPS Materials to be public, or direct Saudi Arabia to immediately provide specific privacy designations of MPS Materials, and request that the Magistrate Court rule on those designations, if any.

Dated: New York, New York
June 16, 2022

KREINDLER & KREINDLER LLP

By: /s/ *Steven R. Pounian*
STEVEN R. POUNIAN
JAMES P. KREINDLER
ANDREW J. MALONEY
MEGAN W. BENETT
JAMES GAVIN SIMPSON
485 Lexington Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: spounian@kreindler.com
*Attorneys for Ashton Plaintiffs*