# EXHIBIT 23

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
|  | ) |
|  | ) |
|  | ) |
| In re Terrorist Attacks on September 11, 2001 | ) 03 MDL 1570 (GBD)(SN) |
|  | ) ECF Case |
|  | ) |
|  | ) |
|  | ) |

---

This document relates to:
*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-cv-06978
*Thomas Burnett, Sr., at al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03-cv-09849
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka, et al.*, Case No. 04-cv-01923
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04-cv-05970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, Case No. 04-cv-07065
*Euro Brokers, Inc., et al. v. Al Baraka, et al.*, Case No. 04-cv-07279

**PLAINTIFFS' SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT**
**DUBAI ISLAMIC BANK'S THIRD SET OF REQUESTS FOR ADMISSION**

On March 29, 2022 and April 1, 2022, the Central Intelligence Agency ("CIA") released

evidence pursuant to Executive Order No. 14040.  *See* CIA 00001-864.  The CIA release

included evidence relevant to Plaintiffs' claims against Defendant Dubai Islamic Bank ("DIB"),

which Plaintiffs had sought through both Freedom of Information Act ("FOIA") requests and a

subpoena, but which had previously been withheld by the CIA as classified.  In light of the CIA

release, Plaintiffs in all of the above-captioned related actions, by their undersigned attorneys,

object and respond pursuant to Rule 36 of the Federal Rules of Civil Procedure, to Defendant

DIB's Third Set of Request for Admission to Plaintiffs, dated June 25, 2021 as follows:

**GENERAL OBJECTIONS**

1.      Plaintiffs object to the Defendant's Requests for Admission to the extent they call

for the plaintiffs to identify information in the possession, custody, or control of the Defendant,

including but not limited to any documents drafted, published, or received by the Defendant. Moreover, until Defendant has provided full disclosure in response to the Plaintiffs' discovery requests, Plaintiffs are unable to determine what information is in the possession, custody, or control of the Defendant.

2.      Plaintiffs object to the Defendant's Requests for Admission to the extent they call for the plaintiffs to identify or produce documents or information not within the care, custody or control of the plaintiffs.

3.      Plaintiffs object to the Defendant's Requests for Admission to the extent they call for the plaintiffs to identify information equally or more readily accessible to the Defendant and/or which is readily obtainable independently from the public domain.

4.      Plaintiffs object to the Defendant's Requests for Admission to the extent they call for the plaintiffs to identify information protected by the attorney-client privilege, work product protection, any joint prosecution and/or any other applicable privilege, or which were otherwise prepared in anticipation of litigation or preparation for trial that contains information, conclusions, opinions or legal theories of attorneys, or which are otherwise protected from discovery. Plaintiffs and their counsel hereby assert these privileges. In particular, without limiting the generality of the foregoing, information contained in letters, memoranda, and other writings transmitted by or between plaintiffs and their counsel, or information contained in writings prepared and maintained internally by Plaintiffs' counsel, are privileged and will not be produced.

5.      Plaintiffs object to the Defendant's Requests for Admission to the extent they call for the plaintiffs to identify documents or information that is non-discoverable expert information not required to be disclosed under the Federal Rules of Civil Procedure.

6.      Plaintiffs object to the Defendant's Requests for Admission to the extent they are vague, ambiguous, overly broad, unduly burdensome, do not specify the information sought with sufficient particularity, are not limited to the subject matter of the litigation, seek information in defendant's control, and/or are not relevant to the claims or defenses in this case and are thus creates a burden not proportional to the needs of this case.

7.      Plaintiffs object to the Defendant's Requests for Admission to the extent they purport to characterize plaintiffs' claims, allegations, or contentions in a manner that attempts to mischaracterize or redefine plaintiffs' claims. Plaintiff objects to the identification or production of any information in response to any such Requests for Admission is not intended as nor shall it be deemed to be an admission or representation that plaintiffs concede to Defendant's mischaracterizations or baseless assumptions here.

8.      Irrespective of whether Plaintiff provides information in response to the Requests, Plaintiff further reserves the right to: (i) amend, correct, supplement or clarify the content of this Response in accordance with the Federal Rules; (ii) provide additional responsive information in the future; (iii) object to further discovery in the action; (iv) rely upon any information and documents produced in the action, in any hearing or proceeding, including, without limitation, any hearing, proceeding, or trial in the action; and (v) challenge the authenticity or admissibility in any proceeding, hearing, or trial of any information or documents.

9.      The above-stated General Objections are hereby specifically incorporated into each of the plaintiffs' following responses to discovery requests, whether or not expressly repeated in response to a particular request.

3

## OBJECTIONS AND SUPPLEMENTAL RESPONSES

### REQUEST NO. 1:

Admit that there is no evidence that DIB had any knowledge or awareness, prior to the

September 11 Attacks, of any involvement in Al Qaeda by its customer Ali Abdul Aziz Ali.

#### SUPPLEMENTAL RESPONSE TO REQUEST NO. 1:

Subject to and without waiver of each of the General Objections above, and subject to the

explanation that follows, Plaintiffs object to Request No. 1 to the extent it calls for Plaintiffs to

identify information in possession, custody, and control of the Defendants. Subject to and

without waiver of all objections, following a reasonable inquiry and diligent search, including

the evidence recently produced by the CIA pursuant to Executive Order No. 14040, the Plaintiffs

deny that there is no evidence that DIB had any knowledge or awareness, prior to the September

11 Attacks, of any involvement in Al Qaeda by its customer Ali Abdul Aziz Ali.

The context and focus of the meeting between U.S. and Emirati officials, in addition to

information sourced from a senior U.S. official regarding DIB's involvement with Osama bin

Laden, reported in the New York Times article "U.S. Officials Say Air for Terrorist Came

Through Two Persian Gulf Nations" by James Risen with Benjamin Weiser (produced by

Plaintiffs at PECDIB000839-842 and PECDIB000813-815 and by DIB at DIB000880-884),

indicate that someone at DIB was aware it held accounts being used by Al Qaeda or for Al

Qaeda purposes.

Evidence recently produced by the Central Intelligence Agency ("CIA") pursuant to

Executive Order No. 14040 indicates that Osama Bin Ladin, his Sudan-based companies, his

own financial managers, financial officers of al Qaeda, and other members of al Qaeda

maintained accounts at DIB. *See, e.g.*, CIA 000337 ("Bin Ladin and his companies maintained

[REDACTED] accounts at DIB"); CIA 000722 ("Bin Ladin and his Sudan-based companies

maintain several accounts at DIB"); CIA 000322 ("Bin Ladin, financial officer Madani Al-

Tayyib, and other Al- Qa'ida members held numerous bank accounts at Dubai Islamic Bank").

The evidence further demonstrates that "*Dubai Islamic Bank* (*DIB*) has served as a key financial

conduit for Al-Qa'da and for Bin Ladin's companies in Sudan" CIA 000337; *see also* CIA

000722 (DIB was "a key financial conduit for Usama Bin Ladin's Islamic Army"), and that the

decision by Bin Ladin and al Qaeda to use DIB's banking and financial services to manage Bin

Ladin's and the terrorist organization's money and move funds globally was not by

happenstance, but rather a witting product of a longstanding collaboration between DIB and al

Qaeda, established through DIB Founder and long-term Chairman Saeed Ahmed Lootah's

"personal friendship" with Osama bin Ladin. *See, e.g.*, CIA000736 (Bin Ladin's use of DIB

probably stems from his friendship with DIB Chair Lootah); CIA 000322 (al Qaeda chief

"financial officer Madani al Tayyib, and other Al-Qa'ida members held numerous accounts at

Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman,

Saeed Ahmed Lootah"); CIA 000322 (al Qaeda's "choice of financial institutions has been based

on personal contact within the bank, security concerns, and the bank's adherence to Islamic

law"); *see also* CIA 000337 ("DIB Chairman Saeed Ahmed Lootah is a close friend of Bin

Ladin's"); CIA 000722 ("The bank's chairman, Saeed Ahmed Lootah is a member of the

[Muslim Brotherhood] and a close friend of Bin Ladin's"); CIA 000735 ("Lootah is a close

friend and business associate of Usama Bin Ladin's, head of the Islamic Army").

In a CIA Intelligence Report from its Office of Transnational Issues, titled "Funding

Islamic Extremists Movements: The Role of Islamic Financial Institutions," the CIA assessed

that, of the roughly 130 Islamic financial entities examined by the intelligence agency, Dubai

Islamic Bank "stand[s] out from other Islamic financial institutions because of [it's]

management's apparently *witting involvement* in the financial activities of Egypt's Gama'at al Islamiyya (IG), the Palestinian Islamic Resistance Movement (HAMAS), Usama Bin Ladin's Islamic Army, as well as numerous Muslim Brotherhood factions that are bent on establishing Islamic states." CIA 000728 (emphasis added).

The evidence from the CIA states that Bin Ladin and his associates used contacts inside select banks, including DIB, to facilitate moving funds. CIA 000326. According to the CIA, "Bin Ladin's Sudan-based companies and his financial officers opened bank accounts and letters of credit at Dubai Islamic Bank (DIB) with the active help of DIB Chairman Sa'id Ahmed Lootah." CIA 000045. Indeed, "DIB Chairman Saeed Ahmed Lootah authorize[d]—stamp[ed] and sign[ed]—some of Bin Ladin's letters of credit." CIA 000326; *see also* CIA 000426 (Saeed Ahmed Lootah's businesses cooperate with Bin Ladin's companies; Lootah "authorizes (stamps and signs) some of Bin Ladin's letters of credit"); CIA 000747 ("DIB Chairman Lootah personally authorized, stamped, and signed some letters of credit opened by Bin Ladin's companies in Khartoum through DIB").

The 9/11 Commission Report concluded that Khalid Sheikh Mohammed, Ali Abdul Aziz Ali's uncle and one of the architects of 9/11, ordered the hijackers to travel "through the UAE en route to the United States," where they were primarily assisted by two al Qaeda operatives, one of which was Ali. *See* 9/11 Commission Report at p. 236. It also describes Ali as an "important facilitator in the plot" who "used [a hijacker's] credit card to order a Boeing 747-400 flight simulator program and a Boeing 767 flight deck video, together with attendant literature[.]" p. 168. *See also* Indictment, *U.S. v Khalid Sheikh Mohammed, et al.*, Case No. (S14) 93 Cr. 180 (KTD) (S.D.N.Y.), April 4, 2011, ¶¶ 57-58. In addition, the flight training of the Hamburg operatives was paid for "primarily with funds wired from Dubai by [Ali]" totaling $114,500. The

6

9/11 Commission Report at p. 224. On or about August 8, 2000, during the same period he was carrying out orders for Khalid Sheikh Mohammed, Ali opened an account at the Dubai Islamic Bank. *See* Department of Defense Unclassified Summary of Evidence for Combatant Status Review Tribunal – Al Baluchi, Ammar [ECF No. 2973-16], ¶ 3(c). Khalid Sheikh Mohammed admitted that $81,000, provided to three of the hijackers for flight training, was transferred through Ali and the transfers to the hijackers primarily originated in the UAE. Substitution of Testimony of Khalid Sheikh Mohammed, *U.S. v. Moussaoui*, Cr. No. 01-465-A, Defendant's Exhibit 941, [ECF No. 2973-10], ¶¶ 42, 68, 73. On April 16, 2000, Ali wired $5,000 to a bank in California from Dubai, on June 29, 2000, Ali transferred $5,000 to a hijacker in Manhattan, New York from Dubai, on July 18, 2000, Ali wired $10,000 from Dubai to a Florida bank account shared by two hijackers, on August 5, 2000, Ali transferred $9,500 from Dubai to the Florida bank account, on August 29, 2000, Ali transferred $20,000 from Dubai into the Florida bank account, and on September 17, 2000, Ali made a transfer from Dubai to the Florida bank account in the amount of $70,000. *See* Indictment, *U.S. v Khalid Sheikh Mohammed, et al.*, Case No. (S14) 93 Cr. 180 (KTD) (S.D.N.Y.), April 4, 2011, ¶¶ 75, 78, 79, 81, 82, 83. Institutions in the UAE played a key role in moving resources to the 9/11 planners and hijackers. *See* DIB_001168, NATO Parliamentary Assembly, The Economic Consequences of September 11, 2001 and the Economic Dimension of Anti-Terrorism General Report, p. 8. However, the UAE did not enforce tighter restrictions on its banking system until after September 11, 2001, and al Qaeda used "banks that operate according to Islamic principles, such as the Bank of Dubai." *See* DIB_000792, Al-Qaeda: The Many Faces of an Islamist Extremist Threat, Report of the House Permanent Select Committee on Intelligence, June 2006 (p. 11). Ali was able to use an alias or partial name and show no identification for five of six identified transfers. *See* DIB_001045,

7

National Commission on Terrorist Attacks Upon the United States, Monograph on Terrorist Financing, Staff Report to the Commission, p. 40. On September 10, 2001, Ali withdrew nearly all the money from two bank accounts in the UAE and flew from Dubai to Karachi, Pakistan on a one-way ticket. *See* Indictment, *U.S. v Khalid Sheikh Mohammed, et al.*, Case No. (S14) 93 Cr. 180 (KTD) (S.D.N.Y.), April 4, 2011, ¶ 163. The funds in Ali's DIB account were available for funding of the September 11th Attacks and Ali did, in fact, fund his escape from the UAE the day before the September 11th Attacks using significant funds withdrawn from his DIB account. Al Qaeda members held numerous accounts at DIB because of Bin Ladin's personal friendship with DIB Chairman, Saeed Ahmed Lootah. CIA 000322. Lootah was a close friend and business associate of Bin Ladin. CIA000735.

Evidence produced by the CIA indicates that Ali's decision to use an account at DIB to support his activities was the product of a longstanding collaboration between DIB and al Qaeda, established based on DIB Founder Saeed Lootah's "personal friendship" with Osama bin Ladin. CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact with the bank…"; al Qaeda chief "financial officer Madani al Tayyib, and other Al- Qa'ida financial members held numerous bank accounts at Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000326 (Bin Ladin and his associates used contacts inside select banks to facilitate moving funds).

On March 22, 2005, in a letter from the UAE Central Bank to DIB's Chief Executive, Butti Khalifa bin Darwiah al Falasi, the UAE Central Bank advises that a U.S. Embassy official will visit DIB to obtain a "Certification of Business Records" for "documents relating to one of your clients and/or transactions conducted via your bank on behalf of one of your clients previously provided to us." The letter adds that the "certificate will be used by the concerned US

authorities in an upcoming trial in the Eastern District of Virginia —United States of America."
*See* DIB 03444-3446. On April 26, 2005, a letter from the head of DIB's Anti-Money
Laundering Division, Zohair Said al Rabii, responds to the March 22 letter, informing the UAE
Central Bank that DIB attached "Certification of Business Records" for Account No. xx-xxx-
xxxxx63-01 held in the name of Ali Abdul Aziz Ali. *See* DIB 03464-66 (provided to Plaintiffs in
discovery without attachment despite letter referencing "records attached hereto").

**REQUEST NO. 2:**

Admit that there is no evidence that DIB had any knowledge or awareness, prior to the
September 11 Attacks, of any involvement in Al Qaeda by its customer Fayez Rashid Ahmed
Hassan Al-Qadi.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 2:**

Subject to and without waiver of each of the General Objections above, and subject to the
explanation that follows, Plaintiffs object to Request No. 2 to the extent it calls for Plaintiffs to
identify information in possession, custody, and control of the Defendants. Subject to and
without waiver of all objections, following a reasonable inquiry and diligent search, including
the evidence recently produced by the CIA pursuant to Executive Order No. 14040, the Plaintiffs
deny that there is no evidence that DIB had any knowledge or awareness, prior to the September
11 Attacks, of any involvement in Al Qaeda by its customer Fayez Rashid Ahmed Hassan Al-
Qadi.

The context and focus of the meeting between U.S. and Emirati officials, in addition to
information sourced from a senior U.S. official regarding DIB's involvement with Osama bin
Laden, reported in the New York Times article "U.S. Officials Say Air for Terrorist Came
Through Two Persian Gulf Nations" by James Risen with Benjamin Weiser (produced by

Plaintiffs at PECDIB000839-842 and PECDIB000813-815 and by DIB at DIB000880-884),

indicate that someone at DIB was aware it held accounts being used by Al Qaeda or for Al

Qaeda purposes.

Consistent with the principle that money is fungible, and recognizing that al Qaeda relied

on its entire infrastructure in order to plan and carry out the 9/11 attacks, evidence exists to

indicate that funds in a DIB account of Fayez Rashid Ahmed Hassan Al-Qadi were available for

use in the event that they would have been needed to further al Qaeda's 9/11 plot in which Al

Qadi was an active participant. Plaintiffs were provided 13 pages of bank statements from Al

Qadi's account with dates ranging from January 1996 at the earliest to December 31, 2000 at the

latest. *See* DIB_003367 to DIB_003379. These statements show that the funds in this account

were available to Al Qadi during al Qaeda's period of preparation for the September 11th

Attacks.

Evidence recently produced by the Central Intelligence Agency ("CIA") pursuant to

Executive Order No. 14040 indicates that Osama Bin Ladin, his Sudan-based companies, his

own financial managers, financial officers of al Qaeda, and other members of al Qaeda

maintained accounts at DIB. *See, e.g.*, CIA 000337 ("Bin Ladin and his companies maintained

[REDACTED] accounts at DIB"); CIA 000722 ("Bin Ladin and his Sudan-based companies

maintain several accounts at DIB"); CIA 000322 ("Bin Ladin, financial officer Madani Al-

Tayyib, and other Al- Qa'ida members held numerous bank accounts at Dubai Islamic Bank").

The evidence further demonstrates that "*Dubai Islamic Bank (DIB)* has served as a key financial

conduit for Al-Qa'da and for Bin Ladin's companies in Sudan" CIA 000337; *see also* CIA

000722 (DIB was "a key financial conduit for Usama Bin Ladin's Islamic Army"), and that the

decision by Bin Ladin and al Qaeda to use DIB's banking and financial services to manage Bin

Ladin's and the terrorist organization's money and move funds globally was not by happenstance, but rather a witting product of a longstanding collaboration between DIB and al Qaeda, established through DIB Founder and long-term Chairman Saeed Ahmed Lootah's "personal friendship" with Osama bin Ladin. *See, e.g.*, CIA000736 (Bin Ladin's use of DIB probably stems from his friendship with DIB Chair Lootah); CIA 000322 (al Qaeda chief "financial officer Madani al Tayyib, and other Al-Qa'ida members held numerous accounts at Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact within the bank, security concerns, and the bank's adherence to Islamic law"); *see also* CIA 000337 ("DIB Chairman Saeed Ahmed Lootah is a close friend of Bin Ladin's"); CIA 000722 ("The bank's chairman, Saeed Ahmed Lootah is a member of the [Muslim Brotherhood] and a close friend of Bin Ladin's"); CIA 000735 ("Lootah is a close friend and business associate of Usama Bin Ladin's, head of the Islamic Army").

In a CIA Intelligence Report from its Office of Transnational Issues, titled "Funding Islamic Extremists Movements: The Role of Islamic Financial Institutions," the CIA assessed that, of the roughly 130 Islamic financial entities examined by the intelligence agency, Dubai Islamic Bank "stand[s] out from other Islamic financial institutions because of [it's] management's apparently *witting involvement* in the financial activities of Egypt's Gama'at al Islamiyya (IG), the Palestinian Islamic Resistance Movement (HAMAS), Usama Bin Ladin's Islamic Army, as well as numerous Muslim Brotherhood factions that are bent on establishing Islamic states." CIA 000728 (emphasis added).

The evidence from the CIA states that Bin Ladin and his associates used contacts inside select banks, including DIB, to facilitate moving funds. CIA 000326. According to the CIA, "Bin

Ladin's Sudan-based companies and his financial officers opened bank accounts and letters of credit at Dubai Islamic Bank (DIB) with the active help of DIB Chairman Sa'id Ahmed Lootah." CIA 000045. Indeed, "DIB Chairman Saeed Ahmed Lootah authorize[d]—stamp[ed] and sign[ed]—some of Bin Ladin's letters of credit." CIA 000326; *see also* CIA 000426 (Saeed Ahmed Lootah's businesses cooperate with Bin Ladin's companies; Lootah "authorizes (stamps and signs) some of Bin Ladin's letters of credit"); CIA 000747 ("DIB Chairman Lootah personally authorized, stamped, and signed some letters of credit opened by Bin Ladin's companies in Khartoum through DIB").

In addition, evidence produced by the CIA indicates that Al Qadi's decision to use an account at DIB to support his activities was the product of a longstanding collaboration between DIB and al Qaeda, established based on DIB Founder Saeed Lootah's "personal friendship" with Osama bin Ladin. CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact with the bank…"; al Qaeda chief "financial officer Madani al Tayyib, and other Al- Qa'ida financial members held numerous bank accounts at Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000326 (Bin Ladin and his associates used contacts inside select banks to facilitate moving funds).

**REQUEST NO. 3:**

Admit that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any involvement in Al Qaeda by its customer Khalid Amer Salim Ballayth.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 3:**

Subject to and without waiver of each of the General Objections above, and subject to the explanation that follows, Plaintiffs object to Request No. 3 to the extent it calls for Plaintiffs to identify information in possession, custody, and control of the Defendants. Subject to and without waiver of all objections, following a reasonable inquiry and diligent search, including the evidence recently produced by the CIA pursuant to Executive Order No. 14040, the Plaintiffs deny that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any involvement in Al Qaeda by its customer Khalid Amer Salim Ballayth.

The context and focus of the meeting between U.S. and Emirati officials, in addition to information sourced from a senior U.S. official regarding DIB's involvement with Osama bin Laden, reported in the New York Times article "U.S. Officials Say Air for Terrorist Came Through Two Persian Gulf Nations" by James Risen with Benjamin Weiser (produced by Plaintiffs at PECDIB000839-842 and PECDIB000813-815 and by DIB at DIB000880-884), indicate that someone at DIB was aware it held accounts being used by Al Qaeda or for Al Qaeda purposes.

Account statements for the period 1992-2004 for Khaled Amer Ballaith, Sharjah, P.O. Box 1033, prove his ownership of DIB Account No. xxxxxxxxxx6601. DIB_005024 – DIB_005051, and that the funds in this account were available for use in the years leading up to the September 11 attacks, including the years that Osama bin Ladin and al Qaeda were plotting and preparing for the attacks. Ballayth was the director of the Sana Trading Establishment the holding company of the Binjad Establishment. KADI0015570. Ballayth was found to be a close associate of Osama Bin Ladin who transferred between $200,000 and $250,000 to the Muwafaq Foundation (whose leadership and activities have been tied to terrorist activity) through the

account of the Binjad establishment. RICO Statement Applicable to Talal M. Badkook, Exhibit

"A", RICO Statement Question #2, MDL 1570 – *Federal Insurance Co. v. al Qaida*, 03 CV

06978; *see also* KADI0015570 (described by Swiss authorities as a "close associate of Osama

Bin Ladin"). The Binjad Establishment ordered vehicles for the Muwafaq Foundation which

operated closely with the International Islamic Relief Organization.

Evidence recently produced by the Central Intelligence Agency ("CIA") pursuant to

Executive Order No. 14040 indicates that Osama Bin Ladin, his Sudan-based companies, his

own financial managers, financial officers of al Qaeda, and other members of al Qaeda

maintained accounts at DIB. *See, e.g.*, CIA 000337 ("Bin Ladin and his companies maintained

[REDACTED] accounts at DIB"); CIA 000722 ("Bin Ladin and his Sudan-based companies

maintain several accounts at DIB"); CIA 000322 ("Bin Ladin, financial officer Madani Al-

Tayyib, and other Al- Qa'ida members held numerous bank accounts at Dubai Islamic Bank").

The evidence further demonstrates that "*Dubai Islamic Bank* (*DIB*) has served as a key financial

conduit for Al-Qa'da and for Bin Ladin's companies in Sudan" CIA 000337; *see also* CIA

000722 (DIB was "a key financial conduit for Usama Bin Ladin's Islamic Army"), and that the

decision by Bin Ladin and al Qaeda to use DIB's banking and financial services to manage Bin

Ladin's and the terrorist organization's money and move funds globally was not by

happenstance, but rather a witting product of a longstanding collaboration between DIB and al

Qaeda, established through DIB Founder and long-term Chairman Saeed Ahmed Lootah's

"personal friendship" with Osama bin Ladin. *See, e.g.*, CIA000736 (Bin Ladin's use of DIB

probably stems from his friendship with DIB Chair Lootah); CIA 000322 (al Qaeda chief

"financial officer Madani al Tayyib, and other Al-Qa'ida members held numerous accounts at

Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman,

Saeed Ahmed Lootah"); CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact within the bank, security concerns, and the bank's adherence to Islamic law"); *see also* CIA 000337 ("DIB Chairman Saeed Ahmed Lootah is a close friend of Bin Ladin's"); CIA 000722 ("The bank's chairman, Saeed Ahmed Lootah is a member of the [Muslim Brotherhood] and a close friend of Bin Ladin's"); CIA 000735 ("Lootah is a close friend and business associate of Usama Bin Ladin's, head of the Islamic Army").

In a CIA Intelligence Report from its Office of Transnational Issues, titled "Funding Islamic Extremists Movements: The Role of Islamic Financial Institutions," the CIA assessed that, of the roughly 130 Islamic financial entities examined by the intelligence agency, Dubai Islamic Bank "stand[s] out from other Islamic financial institutions because of [it's] management's apparently *witting involvement* in the financial activities of Egypt's Gama'at al Islamiyya (IG), the Palestinian Islamic Resistance Movement (HAMAS), Usama Bin Ladin's Islamic Army, as well as numerous Muslim Brotherhood factions that are bent on establishing Islamic states." CIA 000728 (emphasis added).

The evidence from the CIA states that Bin Ladin and his associates used contacts inside select banks, including DIB, to facilitate moving funds. CIA 000326. According to the CIA, "Bin Ladin's Sudan-based companies and his financial officers opened bank accounts and letters of credit at Dubai Islamic Bank (DIB) with the active help of DIB Chairman Sa'id Ahmed Lootah." CIA 000045. Indeed, "DIB Chairman Saeed Ahmed Lootah authorize[d]—stamp[ed] and sign[ed]—some of Bin Ladin's letters of credit." CIA 000326; *see also* CIA 000426 (Saeed Ahmed Lootah's businesses cooperate with Bin Ladin's companies; Lootah "authorizes (stamps and signs) some of Bin Ladin's letters of credit"); CIA 000747 ("DIB Chairman Lootah

personally authorized, stamped, and signed some letters of credit opened by Bin Ladin's companies in Khartoum through DIB").

In addition, DIB and Lootah had connections to several Islamic NGOs that funded militant causes. One principal connection was through DIB board member Sheikh Yousif Jassim Al Haji, Chairman of the Kuwait-based International Islamic Charities Organization (IICO) that sent "funds [REDACTED] to the Peshawar, Pakistan-based Maktab-ul Khedamat, an NGO that coordinated activities of Afghanis and supported the Bosnian Mujahaddin." CIA 000737. An August 17, 1995 check was written from Ballaith's above-described DIB account in the amount of 138,249.20 DH to Mohammed A. Bin Mahfouz. KADI0106547. Mohammed Ahmed Obaid Bin Mahfouz, the brother of Khalid Bin Mahfouz, is an associate of Executive Order 13224 designee Yasin al Qadi and was responsible for overseeing the operations of the Muwafaq Foundation's branch office in Islamabad, Pakistan.

A letter found in Afghanistan in 2002 indicates that Adel Batterjee, a close Bin Ladin business associate and Saudi-based donor and fundraiser to al Qaeda, CIA 000149, -198, and Yasin Qadi, a Saudi Arabian merchant who built business ties to Bin Ladin's companies in Sudan, and who also financed extremists, served as Bin Ladin's financial manager in Sudan. CIA 000045, -149. Bin Ladin's Sudan-based companies and his financial officers opened bank accounts and letters of credit at DIB with the active help of DIB Chairman Lootah. CIA 000045.

Yasin Qadi founded the Saudi-based Muwafaq Foundation which he then used to remit funds to al Qaeda and other terrorist groups. CIA 000195. According to the U.S. Treasury Department, the Muwafaq Foundation merged with al Qaeda before the September 11th Attacks. *See* November 29, 2001 letter from David D. Aufhauser, Department of the Treasury General Counsel, to Switzerland's M. Claude Nicati, Substitute du Procureur General, at p. 3 (stating that

the Muwafaq Foundation "also merged with Al-Qa'ida"). KADI0106547 demonstrates Ballayth's association with Mahfouz and the transfer of funds to an individual who was operating a front for al Qaeda's financial activities in the years before the September 11th attacks.

**REQUEST NO. 4:**

Admit that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any involvement in Al Qaeda by its customer Mamdoh Mahmoud Salim.

### SUPPLEMENTAL RESPONSE TO REQUEST NO. 4:

Subject to and without waiver of each of the General Objections above, and subject to the explanation that follows, Plaintiffs object to Request No. 4 to the extent it calls for Plaintiffs to identify information in possession, custody, and control of the Defendants. Subject to and without waiver of all objections, following a reasonable inquiry and diligent search, including the evidence recently produced by the CIA pursuant to Executive Order No. 14040, the Plaintiffs deny that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any involvement in Al Qaeda by its customer Mamdoh Mahmoud Salim.

The context and focus of the meeting between U.S. and Emirati officials, in addition to information sourced from a senior U.S. official regarding DIB's involvement with Osama bin Laden, reported in the New York Times article "U.S. Officials Say Air for Terrorist Came Through Two Persian Gulf Nations" by James Risen with Benjamin Weiser (produced by Plaintiffs at PECDIB000839-842 and PECDIB000813-815 and by DIB at DIB000880-884), indicate that someone at DIB was aware it held accounts being used by Al Qaeda or for Al Qaeda purposes.

When Ahmed, a founding member of al Qaeda responsible for managing terrorist training camps in Afghanistan and Pakistan and undertaking efforts to obtain nuclear weapons for al Qaeda, was arrested on September 16, 1998 by German authorities for his role in the 1998 Embassy bombings, the following were found in his possession: (1) "VISA Card Dubai Islamic Bank fur Mamdoh M S Ahmed, Nr. xxxx 1013;" (2) "Bank Card Dubai Islamic Bank fur Mamdoh M.S. Ahmed, Nr. xxxx 2362;" (3) "Card Dubai Islamic Bank Nr. xxx4008; and (4) "1 Zettel Dubai Islamic Bank" *See, e.g.,* KADI0030668 - KADI0030678 at KADI0030672 and 675. Ahmed had access to funds in DIB accounts which were available to fund terrorist operations, including the 1998 Embassy bombings, in the years before the September 11[th] Attacks.

Evidence recently produced by the Central Intelligence Agency ("CIA") pursuant to Executive Order No. 14040 indicates that Osama Bin Ladin, his Sudan-based companies, his own financial managers, financial officers of al Qaeda, and other members of al Qaeda maintained accounts at DIB. *See, e.g.*, CIA 000337 ("Bin Ladin and his companies maintained [REDACTED] accounts at DIB"); CIA 000722 ("Bin Ladin and his Sudan-based companies maintain several accounts at DIB"); CIA 000322 ("Bin Ladin, financial officer Madani Al-Tayyib, and other Al- Qa'ida members held numerous bank accounts at Dubai Islamic Bank"). The evidence further demonstrates that "*Dubai Islamic Bank* (*DIB*) has served as a key financial conduit for Al-Qa'da and for Bin Ladin's companies in Sudan" CIA 000337; *see also* CIA 000722 (DIB was "a key financial conduit for Usama Bin Ladin's Islamic Army"), and that the decision by Bin Ladin and al Qaeda to use DIB's banking and financial services to manage Bin Ladin's and the terrorist organization's money and move funds globally was not by happenstance, but rather a witting product of a longstanding collaboration between DIB and al Qaeda, established through DIB Founder and long-term Chairman Saeed Ahmed Lootah's

"personal friendship" with Osama bin Ladin. *See, e.g.*, CIA000736 (Bin Ladin's use of DIB probably stems from his friendship with DIB Chair Lootah); CIA 000322 (al Qaeda chief "financial officer Madani al Tayyib, and other Al-Qa'ida members held numerous accounts at Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact within the bank, security concerns, and the bank's adherence to Islamic law"); *see also* CIA 000337 ("DIB Chairman Saeed Ahmed Lootah is a close friend of Bin Ladin's"); CIA 000722 ("The bank's chairman, Saeed Ahmed Lootah is a member of the [Muslim Brotherhood] and a close friend of Bin Ladin's"); CIA 000735 ("Lootah is a close friend and business associate of Usama Bin Ladin's, head of the Islamic Army").

In a CIA Intelligence Report from its Office of Transnational Issues, titled "Funding Islamic Extremists Movements: The Role of Islamic Financial Institutions," the CIA assessed that, of the roughly 130 Islamic financial entities examined by the intelligence agency, Dubai Islamic Bank "stand[s] out from other Islamic financial institutions because of [it's] management's apparently *witting involvement* in the financial activities of Egypt's Gama'at al Islamiyya (IG), the Palestinian Islamic Resistance Movement (HAMAS), Usama Bin Ladin's Islamic Army, as well as numerous Muslim Brotherhood factions that are bent on establishing Islamic states." CIA 000728 (emphasis added).

The evidence from the CIA states that Bin Ladin and his associates used contacts inside select banks, including DIB, to facilitate moving funds. CIA 000326. According to the CIA, "Bin Ladin's Sudan-based companies and his financial officers opened bank accounts and letters of credit at Dubai Islamic Bank (DIB) with the active help of DIB Chairman Sa'id Ahmed Lootah." CIA 000045. Indeed, "DIB Chairman Saeed Ahmed Lootah authorize[d]—stamp[ed] and

sign[ed]—some of Bin Ladin's letters of credit." CIA 000326; *see also* CIA 000426 (Saeed

Ahmed Lootah's businesses cooperate with Bin Ladin's companies; Lootah "authorizes (stamps

and signs) some of Bin Ladin's letters of credit"); CIA 000747 ("DIB Chairman Lootah

personally authorized, stamped, and signed some letters of credit opened by Bin Ladin's

companies in Khartoum through DIB").

      Evidence produced by the CIA indicates that Ahmed's decision to use an account at DIB

to support his activities was the product of a longstanding collaboration between DIB and al

Qaeda, established based on DIB Founder Saeed Lootah's "personal friendship" with Osama bin

Ladin. CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal

contact with the bank…"; al Qaeda chief "financial officer Madani al Tayyib, and other Al-

Qa'ida financial members held numerous bank accounts at Dubai Islamic Bank because of Bin

Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000326

(Bin Ladin and his associates used contacts inside select banks to facilitate moving funds).

**REQUEST NO. 5:**

Admit that there is no evidence that DIB had any knowledge or awareness, prior to the

September 11 Attacks, of any involvement in Al Qaeda by its customer Ahmed Ali Jumale.

           **SUPPLEMENTAL RESPONSE TO REQUEST NO. 5:**

      Subject to and without waiver of each of the General Objections above, and subject to the

explanation that follows, Plaintiffs object to Request No. 5 to the extent it calls for Plaintiffs to

identify information in possession, custody, and control of the Defendants. Subject to and

without waiver of all objections, following a reasonable inquiry and diligent search, including

the evidence recently produced by the CIA pursuant to Executive Order No. 14040, the Plaintiffs

deny that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any involvement in Al Qaeda by its customer Ahmed Ali Jumale.

The context and focus of the meeting between U.S. and Emirati officials, in addition to information sourced from a senior U.S. official regarding DIB's involvement with Osama bin Laden, reported in the New York Times article "U.S. Officials Say Air for Terrorist Came Through Two Persian Gulf Nations" by James Risen with Benjamin Weiser (produced by Plaintiffs at PECDIB000839-842 and PECDIB000813-815 and by DIB at DIB000880-884), indicate that someone at DIB was aware it held accounts being used by Al Qaeda or for Al Qaeda purposes.

Consistent with the principle that money is fungible, and recognizing that al Qaeda relied on its entire infrastructure in order to plan and carry out the 9/11 attacks, evidence exists to indicate that funds in a DIB account of Ahmed Ali Jumale were available for use in the event that they would have been needed to fund al Qaeda's operations. Jumale, who was designated by the U.S. Treasury Department on November 7, 2001 for his close ties to Osama Bin Ladin, held accounts at DIB and, according to Treasury officials, Jumale used the Al Barakaat group of companies "to transmit funds, intelligence and instructions" to al Qaeda and other terrorist organizations" *See* Josh Meyer and Sebastian Rotella, "U.S. Coalition Freezes Assets in Terror War" Los Angeles Times, November 8, 2001 [ECF No. 2973-12]. *See also* DIB_001075-DIB_001085, National Commission on Terrorist Attacks Upon the United States, Monograph on Terrorist Financing, Staff Report to the Commission, pp. 70-80. Jumale held personal accounts at DIB as evidenced by his personal and VISA DIB Account Nos. xxx1192 and xxx-xxx-xxx-960 which were seized pursuant to the instructions of the Central Bank of the UAE "in conjunction with the International efforts to fight terrorism." DIB 3251-3259.

Evidence recently produced by the Central Intelligence Agency ("CIA") pursuant to Executive Order No. 14040 indicates that Osama Bin Ladin, his Sudan-based companies, his own financial managers, financial officers of al Qaeda, and other members of al Qaeda maintained accounts at DIB. *See, e.g.*, CIA 000337 ("Bin Ladin and his companies maintained [REDACTED] accounts at DIB"); CIA 000722 ("Bin Ladin and his Sudan-based companies maintain several accounts at DIB"); CIA 000322 ("Bin Ladin, financial officer Madani Al-Tayyib, and other Al- Qa'ida members held numerous bank accounts at Dubai Islamic Bank"). The evidence further demonstrates that "*Dubai Islamic Bank* (*DIB*) has served as a key financial conduit for Al-Qa'da and for Bin Ladin's companies in Sudan" CIA 000337; *see also* CIA 000722 (DIB was "a key financial conduit for Usama Bin Ladin's Islamic Army"), and that the decision by Bin Ladin and al Qaeda to use DIB's banking and financial services to manage Bin Ladin's and the terrorist organization's money and move funds globally was not by happenstance, but rather a witting product of a longstanding collaboration between DIB and al Qaeda, established through DIB Founder and long-term Chairman Saeed Ahmed Lootah's "personal friendship" with Osama bin Ladin. *See, e.g.*, CIA000736 (Bin Ladin's use of DIB probably stems from his friendship with DIB Chair Lootah); CIA 000322 (al Qaeda chief "financial officer Madani al Tayyib, and other Al-Qa'ida members held numerous accounts at Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact within the bank, security concerns, and the bank's adherence to Islamic law"); *see also* CIA 000337 ("DIB Chairman Saeed Ahmed Lootah is a close friend of Bin Ladin's"); CIA 000722 ("The bank's chairman, Saeed Ahmed Lootah is a member of the

[Muslim Brotherhood] and a close friend of Bin Ladin's"); CIA 000735 ("Lootah is a close friend and business associate of Usama Bin Ladin's, head of the Islamic Army").

In a CIA Intelligence Report from its Office of Transnational Issues, titled "Funding Islamic Extremists Movements: The Role of Islamic Financial Institutions," the CIA assessed that, of the roughly 130 Islamic financial entities examined by the intelligence agency, Dubai Islamic Bank "stand[s] out from other Islamic financial institutions because of [it's] management's apparently *witting involvement* in the financial activities of Egypt's Gama'at al Islamiyya (IG), the Palestinian Islamic Resistance Movement (HAMAS), Usama Bin Ladin's Islamic Army, as well as numerous Muslim Brotherhood factions that are bent on establishing Islamic states." CIA 000728 (emphasis added).

The evidence from the CIA states that Bin Ladin and his associates used contacts inside select banks, including DIB, to facilitate moving funds. CIA 000326. According to the CIA, "Bin Ladin's Sudan-based companies and his financial officers opened bank accounts and letters of credit at Dubai Islamic Bank (DIB) with the active help of DIB Chairman Sa'id Ahmed Lootah." CIA 000045. Indeed, "DIB Chairman Saeed Ahmed Lootah authorize[d]—stamp[ed] and sign[ed]—some of Bin Ladin's letters of credit." CIA 000326; *see also* CIA 000426 (Saeed Ahmed Lootah's businesses cooperate with Bin Ladin's companies; Lootah "authorizes (stamps and signs) some of Bin Ladin's letters of credit"); CIA 000747 ("DIB Chairman Lootah personally authorized, stamped, and signed some letters of credit opened by Bin Ladin's companies in Khartoum through DIB").

Evidence produced by the CIA indicates that Jumale's decision to use an account at DIB to support his activities was the product of a longstanding collaboration between DIB and al Qaeda, established based on DIB Founder Saeed Lootah's "personal friendship" with Osama bin

Ladin. CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact with the bank…"; al Qaeda chief "financial officer Madani al Tayyib, and other Al-Qa'ida financial members held numerous bank accounts at Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000326 (Bin Ladin and his associates used contacts inside select banks to facilitate moving funds). Jumale had access to the funds in his personal DIB accounts and the ability to transmit these funds in the years before the September 11th Attacks.

**REQUEST NO. 6:**

Admit that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any involvement in Al Qaeda by its customer Barakaat Bank of Somalia.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 6:**

Subject to and without waiver of each of the General Objections above, and subject to the explanation that follows, Plaintiffs object to Request No. 6 to the extent it calls for Plaintiffs to identify information in possession, custody, and control of the Defendants. Subject to and without waiver of all objections, following a reasonable inquiry and diligent search, including the evidence recently produced by the CIA pursuant to Executive Order No. 14040, the Plaintiffs deny that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any involvement in Al Qaeda by its customer Barakaat Bank of Somalia.

The context and focus of the meeting between U.S. and Emirati officials, in addition to information sourced from a senior U.S. official regarding DIB's involvement with Osama bin Laden, reported in the New York Times article "U.S. Officials Say Air for Terrorist Came Through Two Persian Gulf Nations" by James Risen with Benjamin Weiser (produced by

Plaintiffs at PECDIB000839-842 and PECDIB000813-815 and by DIB at DIB000880-884), indicate that someone at DIB was aware it held accounts being used by Al Qaeda or for Al Qaeda purposes.

Al Barakaat "has used its global money-transfer business to help terrorists ship large caches of weapons from one country to another, paid for through money transfers that the company indicated was for the use of blankets." Josh Meyer and Sebastian Rotella, "U.S. Coalition Freezes Assets in Terror War" Los Angeles Times, November 8, 2001 [ECF No. 2973-12].

Evidence recently produced by the Central Intelligence Agency ("CIA") pursuant to Executive Order No. 14040 indicates that Osama Bin Ladin, his Sudan-based companies, his own financial managers, financial officers of al Qaeda, and other members of al Qaeda maintained accounts at DIB. *See, e.g.*, CIA 000337 ("Bin Ladin and his companies maintained [REDACTED] accounts at DIB"); CIA 000722 ("Bin Ladin and his Sudan-based companies maintain several accounts at DIB"); CIA 000322 ("Bin Ladin, financial officer Madani Al-Tayyib, and other Al- Qa'ida members held numerous bank accounts at Dubai Islamic Bank"). The evidence further demonstrates that "*Dubai Islamic Bank* (*DIB*) has served as a key financial conduit for Al-Qa'da and for Bin Ladin's companies in Sudan" CIA 000337; *see also* CIA 000722 (DIB was "a key financial conduit for Usama Bin Ladin's Islamic Army"), and that the decision by Bin Ladin and al Qaeda to use DIB's banking and financial services to manage Bin Ladin's and the terrorist organization's money and move funds globally was not by happenstance, but rather a witting product of a longstanding collaboration between DIB and al Qaeda, established through DIB Founder and long-term Chairman Saeed Ahmed Lootah's "personal friendship" with Osama bin Ladin. *See, e.g.*, CIA000736 (Bin Ladin's use of DIB

probably stems from his friendship with DIB Chair Lootah); CIA 000322 (al Qaeda chief

"financial officer Madani al Tayyib, and other Al-Qa'ida members held numerous accounts at

Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman,

Saeed Ahmed Lootah"); CIA 000322 (al Qaeda's "choice of financial institutions has been based

on personal contact within the bank, security concerns, and the bank's adherence to Islamic

law"); *see also* CIA 000337 ("DIB Chairman Saeed Ahmed Lootah is a close friend of Bin

Ladin's"); CIA 000722 ("The bank's chairman, Saeed Ahmed Lootah is a member of the

[Muslim Brotherhood] and a close friend of Bin Ladin's"); CIA 000735 ("Lootah is a close

friend and business associate of Usama Bin Ladin's, head of the Islamic Army").

In a CIA Intelligence Report from its Office of Transnational Issues, titled "Funding

Islamic Extremists Movements: The Role of Islamic Financial Institutions," the CIA assessed

that, of the roughly 130 Islamic financial entities examined by the intelligence agency, Dubai

Islamic Bank "stand[s] out from other Islamic financial institutions because of [it's]

management's apparently *witting involvement* in the financial activities of Egypt's Gama'at al

Islamiyya (IG), the Palestinian Islamic Resistance Movement (HAMAS), Usama Bin Ladin's

Islamic Army, as well as numerous Muslim Brotherhood factions that are bent on establishing

Islamic states." CIA 000728 (emphasis added).

The evidence from the CIA states that Bin Ladin and his associates used contacts inside

select banks, including DIB, to facilitate moving funds. CIA 000326. According to the CIA, "Bin

Ladin's Sudan-based companies and his financial officers opened bank accounts and letters of

credit at Dubai Islamic Bank (DIB) with the active help of DIB Chairman Sa'id Ahmed Lootah."

CIA 000045. Indeed, "DIB Chairman Saeed Ahmed Lootah authorize[d]—stamp[ed] and

sign[ed]—some of Bin Ladin's letters of credit." CIA 000326; *see also* CIA 000426 (Saeed

Ahmed Lootah's businesses cooperate with Bin Ladin's companies; Lootah "authorizes (stamps and signs) some of Bin Ladin's letters of credit"); CIA 000747 ("DIB Chairman Lootah personally authorized, stamped, and signed some letters of credit opened by Bin Ladin's companies in Khartoum through DIB").

Barakaat Bank of Somalia was owned by Ahmed Nour Ali Jumale who headed a group of rich Somali investors. CIA 000785. Jumale and Bin Ladin were so closely linked that Jumale was designated by the U.S. Treasury Department on November 7, 2001 on the basis of his relationship to Bin Ladin and according to Treasury officials, Jumale used the Al Barakaat group of companies "to transmit funds, intelligence and instructions" to al Qaeda and other terrorist organizations" *See* Josh Meyer and Sebastian Rotella, "U.S. Coalition Freezes Assets in Terror War" Los Angeles Times, November 8, 2001 [ECF No. 2973-12]. *See also* DIB_001075-DIB_001085, National Commission on Terrorist Attacks Upon the United States, Monograph on Terrorist Financing, Staff Report to the Commission, pp. 70-80. Barakaat Bank of Somalia Account Nos. xxx339 and xx-xxx-xx-x13-01 were seized pursuant to the instructions of the Central Bank of the UAE "in conjunction with the International efforts to fight terrorism."  DIB 3251-3259. Barakaat Bank of Somalia had access to the funds in these DIB accounts and the ability to transmit these funds in the years before the September 11[th] Attacks.

**REQUEST NO. 7**:

Admit that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any involvement in Al Qaeda by its customer Al Baraka Exchange LLC.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 7:**

Subject to and without waiver of each of the General Objections above, and subject to the explanation that follows, Plaintiffs object to Request No. 7 to the extent it calls for Plaintiffs to identify information in possession, custody, and control of the Defendants. Subject to and without waiver of all objections, following a reasonable inquiry and diligent search, including the evidence recently produced by the CIA pursuant to Executive Order No. 14040, the Plaintiffs deny that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any involvement in Al Qaeda by its customer Al Baraka Exchange LLC.

The context and focus of the meeting between U.S. and Emirati officials, in addition to information sourced from a senior U.S. official regarding DIB's involvement with Osama bin Laden, reported in the New York Times article "U.S. Officials Say Air for Terrorist Came Through Two Persian Gulf Nations" by James Risen with Benjamin Weiser (produced by Plaintiffs at PECDIB000839-842 and PECDIB000813-815 and by DIB at DIB000880-884), indicate that someone at DIB was aware it held accounts being used by Al Qaeda or for Al Qaeda purposes.

Al Baraka Exchange Account Nos. xxx7440 and xxx7483 were seized pursuant to the instructions of the Central Bank of the UAE "in conjunction with the International efforts to fight terrorism." *See* DIB 3251-3259. In addition, an Al Baraka Exchange account statement covering the year 1998 reflects five very large credits and transfer transactions in account no. xxxxxxxxxx4001 totaling exactly two million in UAE Dirham credits and two million in transfers to two separate accounts which appear to also be DIB accounts (particulars of transfers are 981.030.00 to "60029" and 1,018,970.00 to "60030"). DIB_003535. This statement evidences large, unexplained transfers through a DIB account owned by the Al Baraka Exchange in the years before the September 11th Attacks and highly unusual activity in that these large

28

transfers were made within an account reflecting only five total transactions over a period of twelve months.

Evidence recently produced by the Central Intelligence Agency ("CIA") pursuant to Executive Order No. 14040 indicates that Osama Bin Ladin, his Sudan-based companies, his own financial managers, financial officers of al Qaeda, and other members of al Qaeda maintained accounts at DIB. *See, e.g.*, CIA 000337 ("Bin Ladin and his companies maintained [REDACTED] accounts at DIB"); CIA 000722 ("Bin Ladin and his Sudan-based companies maintain several accounts at DIB"); CIA 000322 ("Bin Ladin, financial officer Madani Al-Tayyib, and other Al- Qa'ida members held numerous bank accounts at Dubai Islamic Bank"). The evidence further demonstrates that "*Dubai Islamic Bank* (*DIB*) has served as a key financial conduit for Al-Qa'da and for Bin Ladin's companies in Sudan" CIA 000337; *see also* CIA 000722 (DIB was "a key financial conduit for Usama Bin Ladin's Islamic Army"), and that the decision by Bin Ladin and al Qaeda to use DIB's banking and financial services to manage Bin Ladin's and the terrorist organization's money and move funds globally was not by happenstance, but rather a witting product of a longstanding collaboration between DIB and al Qaeda, established through DIB Founder and long-term Chairman Saeed Ahmed Lootah's "personal friendship" with Osama bin Ladin. *See, e.g.*, CIA000736 (Bin Ladin's use of DIB probably stems from his friendship with DIB Chair Lootah); CIA 000322 (al Qaeda chief "financial officer Madani al Tayyib, and other Al-Qa'ida members held numerous accounts at Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact within the bank, security concerns, and the bank's adherence to Islamic law"); *see also* CIA 000337 ("DIB Chairman Saeed Ahmed Lootah is a close friend of Bin

Ladin's"); CIA 000722 ("The bank's chairman, Saeed Ahmed Lootah is a member of the

[Muslim Brotherhood] and a close friend of Bin Ladin's"); CIA 000735 ("Lootah is a close

friend and business associate of Usama Bin Ladin's, head of the Islamic Army").

In a CIA Intelligence Report from its Office of Transnational Issues, titled "Funding

Islamic Extremists Movements: The Role of Islamic Financial Institutions," the CIA assessed

that, of the roughly 130 Islamic financial entities examined by the intelligence agency, Dubai

Islamic Bank "stand[s] out from other Islamic financial institutions because of [it's]

management's apparently *witting involvement* in the financial activities of Egypt's Gama'at al

Islamiyya (IG), the Palestinian Islamic Resistance Movement (HAMAS), Usama Bin Ladin's

Islamic Army, as well as numerous Muslim Brotherhood factions that are bent on establishing

Islamic states." CIA 000728 (emphasis added).

The evidence from the CIA states that Bin Ladin and his associates used contacts inside

select banks, including DIB, to facilitate moving funds. CIA 000326. According to the CIA, "Bin

Ladin's Sudan-based companies and his financial officers opened bank accounts and letters of

credit at Dubai Islamic Bank (DIB) with the active help of DIB Chairman Sa'id Ahmed Lootah."

CIA 000045. Indeed, "DIB Chairman Saeed Ahmed Lootah authorize[d]—stamp[ed] and

sign[ed]—some of Bin Ladin's letters of credit." CIA 000326; *see also* CIA 000426 (Saeed

Ahmed Lootah's businesses cooperate with Bin Ladin's companies; Lootah "authorizes (stamps

and signs) some of Bin Ladin's letters of credit"); CIA 000747 ("DIB Chairman Lootah

personally authorized, stamped, and signed some letters of credit opened by Bin Ladin's

companies in Khartoum through DIB").

According to evidence produced by the CIA, the Dallah Al Baraka Group "owns several

banking subsidiaries used extensively by extremists" and Albaraka Bank (Sudan) is a financial

conduit used by the Islamic Army. CIA 000723. In addition, DIB Chairman Saeed Ahmed

Lootah is a Director of Albaraka Islamic Investment Bank in Bahrain and may have wielded

"influence through DIB's shareholding in Al Baraka Turkish Finance House[.]" CIA 000749.

Evidence provided by the CIA names Saeed Ahmed Lootah of DIB and Saleh Abdullah Kamel

of Dallah Al Baraka Group, both prominent Muslim Brotherhood members, as two possible

investors in Bank Al Taqwa. CIA 000757. Elsewhere in the CIA documents, Lootah is described

as having ties to Sheikh Youssef Al Qaradawi, Bank al Taqwa's advisor. CIA 000734.

**REQUEST NO. 8:**

Admit that there is no evidence that DIB had any knowledge or awareness, prior to the

September 11 Attacks, of any involvement in Al Qaeda by its customer International Islamic

Relief Organization.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 8:**

Subject to and without waiver of each of the General Objections above, and subject to the

explanation that follows, Plaintiffs object to Request No. 8 to the extent it calls for Plaintiffs to

identify information in possession, custody, and control of the Defendants. Subject to and

without waiver of all objections, following a reasonable inquiry and diligent search, including

the evidence recently produced by the CIA pursuant to Executive Order No. 14040, the Plaintiffs

deny that there is no evidence that DIB had any knowledge or awareness, prior to the September

11 Attacks, of any involvement in Al Qaeda by its customer International Islamic Relief

Organization.

The context and focus of the meeting between U.S. and Emirati officials, in addition to

information sourced from a senior U.S. official regarding DIB's involvement with Osama bin

Laden, reported in the New York Times article "U.S. Officials Say Air for Terrorist Came

Through Two Persian Gulf Nations" by James Risen with Benjamin Weiser (produced by

Plaintiffs at PECDIB000839-842 and PECDIB000813-815 and by DIB at DIB000880-884),

indicate that someone at DIB was aware it held accounts being used by Al Qaeda or for Al

Qaeda purposes.

   According to the U.S. government, "Usama Bin Ladin used the entire IIRO network for

its terrorist activities. *See* FED-PEC 220501-220502. *See also* BUR-PEC014984-14987 (stating

that "the Sharja affiliation of the Saudi 'International Islamic Relief Organization' and the

'Human Appeal International' established the 'Special Chechen Refugees Assistance Fund'

(account number xxxxxxxxxx6101 in the 'Islamic Bank of Dubai.'")); FED-PEC 202110-

212112 (August 3, 2006 Executive Order designation of the IIRO branch offices in the

Philippines and Indonesia and the Executive Director of the IIRO's Eastern Province Branch,

Abd al Hamd Sulaiman al Mujil, "for facilitating fundraising for al Qaida and affiliated terrorist

groups.").

   Evidence recently produced by the Central Intelligence Agency ("CIA") pursuant to

Executive Order No. 14040 indicates that Osama Bin Ladin, his Sudan-based companies, his

own financial managers, financial officers of al Qaeda, and other members of al Qaeda

maintained accounts at DIB. *See, e.g.*, CIA 000337 ("Bin Ladin and his companies maintained

[REDACTED] accounts at DIB"); CIA 000722 ("Bin Ladin and his Sudan-based companies

maintain several accounts at DIB"); CIA 000322 ("Bin Ladin, financial officer Madani Al-

Tayyib, and other Al- Qa'ida members held numerous bank accounts at Dubai Islamic Bank").

The evidence further demonstrates that "*Dubai Islamic Bank (DIB)* has served as a key financial

conduit for Al-Qa'da and for Bin Ladin's companies in Sudan" CIA 000337; *see also* CIA

000722 (DIB was "a key financial conduit for Usama Bin Ladin's Islamic Army"), and that the

32

decision by Bin Ladin and al Qaeda to use DIB's banking and financial services to manage Bin Ladin's and the terrorist organization's money and move funds globally was not by happenstance, but rather a witting product of a longstanding collaboration between DIB and al Qaeda, established through DIB Founder and long-term Chairman Saeed Ahmed Lootah's "personal friendship" with Osama bin Ladin. *See, e.g.,* CIA000736 (Bin Ladin's use of DIB probably stems from his friendship with DIB Chair Lootah); CIA 000322 (al Qaeda chief "financial officer Madani al Tayyib, and other Al-Qa'ida members held numerous accounts at Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact within the bank, security concerns, and the bank's adherence to Islamic law"); *see also* CIA 000337 ("DIB Chairman Saeed Ahmed Lootah is a close friend of Bin Ladin's"); CIA 000722 ("The bank's chairman, Saeed Ahmed Lootah is a member of the [Muslim Brotherhood] and a close friend of Bin Ladin's"); CIA 000735 ("Lootah is a close friend and business associate of Usama Bin Ladin's, head of the Islamic Army").

In a CIA Intelligence Report from its Office of Transnational Issues, titled "Funding Islamic Extremists Movements: The Role of Islamic Financial Institutions," the CIA assessed that, of the roughly 130 Islamic financial entities examined by the intelligence agency, Dubai Islamic Bank "stand[s] out from other Islamic financial institutions because of [it's] management's apparently *witting involvement* in the financial activities of Egypt's Gama'at al Islamiyya (IG), the Palestinian Islamic Resistance Movement (HAMAS), Usama Bin Ladin's Islamic Army, as well as numerous Muslim Brotherhood factions that are bent on establishing Islamic states." CIA 000728 (emphasis added).

The evidence from the CIA states that Bin Ladin and his associates used contacts inside select banks, including DIB, to facilitate moving funds. CIA 000326. According to the CIA, "Bin Ladin's Sudan-based companies and his financial officers opened bank accounts and letters of credit at Dubai Islamic Bank (DIB) with the active help of DIB Chairman Sa'id Ahmed Lootah." CIA 000045. Indeed, "DIB Chairman Saeed Ahmed Lootah authorize[d]—stamp[ed] and sign[ed]—some of Bin Ladin's letters of credit." CIA 000326; *see also* CIA 000426 (Saeed Ahmed Lootah's businesses cooperate with Bin Ladin's companies; Lootah "authorizes (stamps and signs) some of Bin Ladin's letters of credit"); CIA 000747 ("DIB Chairman Lootah personally authorized, stamped, and signed some letters of credit opened by Bin Ladin's companies in Khartoum through DIB").

According to a January 11, 1999 CIA Intelligence Report from the Office of Transnational Issues, all-source intelligence suggests that the IIRO is among the greatest concerns as a funding conduit for al Qaeda. In that Report, the CIA states that IIRO is among the entities with the "strongest links to Usama [Bin Ladin]" and that it funded a military camp associated with Usama Bin Ladin. CIA 000808. According to an April 9, 1999 CIA Intelligence Report, IIRO provided terrorists with funding and cover employment, documentation, and training. CIA 000213. A formerly top-secret November 17, 1998 CIA report stated that Bin Ladin and al Qaeda probably received Gulf funding diverted from offices of Islamic NGOs, including IIRO, Muwafaq Foundation, and Al Haramain, among others. CIA 000330. In the years before the September 11th Attacks, IIRO maintained an account at DIB during a period when high-level officials of the organization were facilitating fundraising for al Qaeda and affiliated terrorist groups.

In addition, DIB and Lootah had connections to several Islamic NGOs that funded militant causes. One principal connection was through DIB board member Sheikh Yousif Jassim Al Haji, Chairman of the Kuwait-based International Islamic Charities Organization (IICO) that sent "funds [REDACTED] to the Peshawar, Pakistan-based Maktab-ul Khedamat, an NGO that coordinated activities of Afghanis and supported the Bosnian Mujahaddin." CIA 000737. DIB was also used by such humanitarian NGOs as Human Appeal International, an alleged financial conduit for HAMAS, and the Dar al-Birr Society which has financed the Bosnian Mujaheddin. CIA 000722. The CIA's assessments indicate that DIB's management was not only aware but was active in facilitating financial transactions for terrorist groups and organizations proceeding under the guise of humanitarian groups that funded terrorist groups.

**REQUEST NO. 9:**

Admit that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any involvement in Al Qaeda by its customer Seedi Al Madani Al-Ghazi Mustafa Al Tayyib.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 9:**

Subject to and without waiver of each of the General Objections above, and subject to the explanation that follows, Plaintiffs object to Request No. 9 to the extent it calls for Plaintiffs to identify information in possession, custody, and control of the Defendants. Subject to and without waiver of all objections, following a reasonable inquiry and diligent search, including the evidence recently produced by the CIA pursuant to Executive Order No. 14040, the Plaintiffs deny that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any involvement in Al Qaeda by its customer Seedi Al Madani Al-Ghazi Mustafa Al Tayyib.

The context and focus of the meeting between U.S. and Emirati officials, in addition to information sourced from a senior U.S. official regarding DIB's involvement with Osama bin Laden, reported in the New York Times article "U.S. Officials Say Air for Terrorist Came Through Two Persian Gulf Nations" by James Risen with Benjamin Weiser (produced by Plaintiffs at PECDIB000839-842 and PECDIB000813-815 and by DIB at DIB000880-884), indicate that someone at DIB was aware it held accounts being used by Al Qaeda or for Al Qaeda purposes.

Consistent with the principle that money is fungible, and recognizing that al Qaeda relied on its entire infrastructure in order to plan and carry out the 9/11 attacks, evidence exists to indicate that the funds in a DIB account of Al Tayyib were available for use in the event that they would have been needed to fund al Qaeda's operations. Tayyib, a "key financial aid to Osama Bin Ladin" was detained by Saudi Arabia in 1997 by which time, the U.S. intelligence community was already familiar with his status as financial overseer for al Qaeda during the organization's operations in Sudan. *See* Risen, James. "State of War: The Secret History of the C.I.A. and the Bush Administration," (2006). p.181.

Evidence recently produced by the Central Intelligence Agency ("CIA") pursuant to Executive Order No. 14040 indicates that Osama Bin Ladin, his Sudan-based companies, his own financial managers, financial officers of al Qaeda, and other members of al Qaeda maintained accounts at DIB. *See, e.g.*, CIA 000337 ("Bin Ladin and his companies maintained [REDACTED] accounts at DIB"); CIA 000722 ("Bin Ladin and his Sudan-based companies maintain several accounts at DIB"); CIA 000322 ("Bin Ladin, financial officer Madani Al-Tayyib, and other Al- Qa'ida members held numerous bank accounts at Dubai Islamic Bank"). The evidence further demonstrates that "*Dubai Islamic Bank* (*DIB*) has served as a key financial

conduit for Al-Qa'da and for Bin Ladin's companies in Sudan" CIA 000337; *see also* CIA 000722 (DIB was "a key financial conduit for Usama Bin Ladin's Islamic Army"), and that the decision by Bin Ladin and al Qaeda to use DIB's banking and financial services to manage Bin Ladin's and the terrorist organization's money and move funds globally was not by happenstance, but rather a witting product of a longstanding collaboration between DIB and al Qaeda, established through DIB Founder and long-term Chairman Saeed Ahmed Lootah's "personal friendship" with Osama bin Ladin. *See, e.g.*, CIA000736 (Bin Ladin's use of DIB probably stems from his friendship with DIB Chair Lootah); CIA 000322 (al Qaeda chief "financial officer Madani al Tayyib, and other Al-Qa'ida members held numerous accounts at Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact within the bank, security concerns, and the bank's adherence to Islamic law"); *see also* CIA 000337 ("DIB Chairman Saeed Ahmed Lootah is a close friend of Bin Ladin's"); CIA 000722 ("The bank's chairman, Saeed Ahmed Lootah is a member of the [Muslim Brotherhood] and a close friend of Bin Ladin's"); CIA 000735 ("Lootah is a close friend and business associate of Usama Bin Ladin's, head of the Islamic Army").

In a CIA Intelligence Report from its Office of Transnational Issues, titled "Funding Islamic Extremists Movements: The Role of Islamic Financial Institutions," the CIA assessed that, of the roughly 130 Islamic financial entities examined by the intelligence agency, Dubai Islamic Bank "stand[s] out from other Islamic financial institutions because of [it's] management's apparently *witting involvement* in the financial activities of Egypt's Gama'at al Islamiyya (IG), the Palestinian Islamic Resistance Movement (HAMAS), Usama Bin Ladin's

Islamic Army, as well as numerous Muslim Brotherhood factions that are bent on establishing Islamic states." CIA 000728 (emphasis added).

The evidence from the CIA states that Bin Ladin and his associates used contacts inside select banks, including DIB, to facilitate moving funds. CIA 000326. According to the CIA, "Bin Ladin's Sudan-based companies and his financial officers opened bank accounts and letters of credit at Dubai Islamic Bank (DIB) with the active help of DIB Chairman Sa'id Ahmed Lootah." CIA 000045. Indeed, "DIB Chairman Saeed Ahmed Lootah authorize[d]—stamp[ed] and sign[ed]—some of Bin Ladin's letters of credit." CIA 000326; *see also* CIA 000426 (Saeed Ahmed Lootah's businesses cooperate with Bin Ladin's companies; Lootah "authorizes (stamps and signs) some of Bin Ladin's letters of credit"); CIA 000747 ("DIB Chairman Lootah personally authorized, stamped, and signed some letters of credit opened by Bin Ladin's companies in Khartoum through DIB").

Al Tayyib was a financial officer for Bin Ladin and held numerous accounts at DIB because of Bin Ladin's personal friendship with DIB Chairman, Saeed Ahmed Lootah. CIA 000322. DIB and Lootah had connections to several Islamic NGOs that funded militant causes. One principal connection was through DIB board member Sheikh Yousif Jassim Al Haji, Chairman of the Kuwait-based International Islamic Charities Organization (IICO) that sent "funds [REDACTED] to the Peshawar, Pakistan-based Maktab-ul Khedamat, an NGO that coordinated activities of Afghanis and supported the Bosnian Mujahaddin." CIA 000737. Lootah was a member of the Muslim Brotherhood and DIB was a key financial conduit for Bin Ladin's Islamic Army. CIA 000722. The Islamic Army was a pan-Islamic militant group established during the Afghan war with a goal of bringing about the return of the Caliphate. CIA 000735. Bin Ladin's Sudan-based companies and his financial officers opened bank accounts and letters

of credit at DIB with the active help of Lootah. CIA 000045. Lootah was anti-Western—
ascribing to various conspiracy theories regarding the intentions of the United States and other
Western countries to control the Islamic world. He was known for deep religious conservatism
and strong support—financial and otherwise—for Islamic political causes.

Lootah also had ties to Bank al Taqwa advisor Sheikh Yousef Al Qaradawi and National
Islamic Front leader Hassan al-Turabi. CIA 000734. Qaradawi was a radical Qatar-based Muslim
Brotherhood member whom Lootah hosted at DIB headquarters sometime in 1995. CIA 000735.
Al Tayyib traveled frequently and had bank accounts all over the world. CIA 000363. Al Tayyib
supervised Abu Khalifa's handling of Bin Ladin's money in the Gulf and was known to have
requested advice on the best places to put Bin Ladin's money in Greece and Turkey. CIA
000426. Al Tayyib was Bin Ladin's senior financial officer until 1997 and headed the financial
and administrative committee, which supervised al Qaeda's overall financials and audited al
Qaeda members. CIA 000510. Most foreign accounts were in Tayyib's names. CIA 000444. Al
Qaeda members held numerous accounts at DIB because of Bin Ladin's personal friendship with
DIB Chairman, Saeed Ahmed Lootah. CIA 000322. Lootah was a close friend and business
associate of Bin Ladin. CIA 000735. Tayyib was also known as Abu Al-Fadl. CIA 000363.

Jamal al Fadl admitted a relationship between Tayyib and Lootah. *See* FBI 302
Interviews with Cooperating Witness Jamal al Fadl, SNY101-0092 - SNY101-0105 [ECF No.
2973-6]. Lootah was a founder, shareholder, and former member of DIB. Al-Fadl further
indicated that (1) "Al-Tayyib became a secretary (in a high ranking manner) in al-Qaida and was
now in charge of most of Osama Bin Ladin's money, including the money located outside of
Sudan;" (2) "Al-Tayyib controlled and monitored Osama Bin Ladin's money and kept portions
of the money in banks under his (Al-Tayyib) own name and in other names;" (3) "Al-Tayyib

basically became the man in charge of most of the finances for the Islamic Army and attended nightly meetings with Osama Bin Ladin to discuss monetary issues;" (4) "Osama Bin Ladin would often designate separate accounts for different terrorist groups" and "al-Tayyib controlled the flow of money to the groups on behalf of Osama Bin Ladin;" and (5) "Money donated to Islamic causes, i.e. from wealthy individuals in the Gulf area, money collected in Europe, and money collected from groups, was sent to Osama Bin Ladin…. This money came to Osama Bin Ladin and was subsequently controlled by al-Tayyib." Al Fadl's admission infers that Lootah's relationship with Tayyib, during the years before the September 11[th] Attacks, was significant regarding the use of DIB by Tayyib in funding Bin Ladin's operations during the period before the September 11[th] Attacks when Bin Ladin was operating in Sudan and funding various terrorist groups. Moreover, his DIB accounts were in existence during the period Tayyib was in control of Bin Ladin's affairs.

**REQUEST NO. 10:**

Admit that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any involvement in Al Qaeda by its customer Ali Saleh Mohammad Kahla Al-Marri.

        **SUPPLEMENTAL RESPONSE TO REQUEST NO. 10:**

      Subject to and without waiver of each of the General Objections above, and subject to the explanation that follows, Plaintiffs object to Request No. 10 to the extent it calls for Plaintiffs to identify information in possession, custody, and control of the Defendants. Subject to and without waiver of all objections, following a reasonable inquiry and diligent search, including the evidence recently produced by the CIA pursuant to Executive Order No. 14040, the Plaintiffs deny that there is no evidence that DIB had any knowledge or awareness, prior to the September

11 Attacks, of any involvement in Al Qaeda by its customer Ali Saleh Mohammad Kahla Al-Marri.

The context and focus of the meeting between U.S. and Emirati officials, in addition to information sourced from a senior U.S. official regarding DIB's involvement with Osama bin Laden, reported in the New York Times article "U.S. Officials Say Air for Terrorist Came Through Two Persian Gulf Nations" by James Risen with Benjamin Weiser (produced by Plaintiffs at PECDIB000839-842 and PECDIB000813-815 and by DIB at DIB000880-884), indicate that someone at DIB was aware it held accounts being used by Al Qaeda or for Al Qaeda purposes.

DIB Account No. xx-xxxxxxxx-580-7 belonged to al-Marri and was evidently opened just before the September 11th Attacks on August 18, 2001 with statements provided up to March 7, 2008. *See* DIB_003380 to DIB_003392. Marri was an al Qaeda member who attended training camps between 1998 and 2001 and was instructed by Khalid Sheikh Mohammed to enter the United States no later than September 10, 2001. Before traveling to the U.S., al Marri went to Dubai to meet with Mustafa Hawsawi pursuant to Mohammed's instructions; Hawsawi provided al-Marri with $10,000 for his mission. *See, e.g.,* Ali Saleh Kahlah al-Marri Plea Agreement and Stipulation of Facts [ECF 2973-11]. Al-Marri had access to funds in his DIB account during the period in which he was operating on the instructions of Khalid Sheikh Mohammed and the purpose of those funds was to further the operations surrounding the September 11th Attacks in which al-Marri was a participant as a member of al Qaeda.

Evidence recently produced by the Central Intelligence Agency ("CIA") pursuant to Executive Order No. 14040 indicates that Osama Bin Ladin, his Sudan-based companies, his own financial managers, financial officers of al Qaeda, and other members of al Qaeda

maintained accounts at DIB. *See, e.g.*, CIA 000337 ("Bin Ladin and his companies maintained [REDACTED] accounts at DIB"); CIA 000722 ("Bin Ladin and his Sudan-based companies maintain several accounts at DIB"); CIA 000322 ("Bin Ladin, financial officer Madani Al-Tayyib, and other Al- Qa'ida members held numerous bank accounts at Dubai Islamic Bank"). The evidence further demonstrates that "*Dubai Islamic Bank* (*DIB*) has served as a key financial conduit for Al-Qa'da and for Bin Ladin's companies in Sudan" CIA 000337; *see also* CIA 000722 (DIB was "a key financial conduit for Usama Bin Ladin's Islamic Army"), and that the decision by Bin Ladin and al Qaeda to use DIB's banking and financial services to manage Bin Ladin's and the terrorist organization's money and move funds globally was not by happenstance, but rather a witting product of a longstanding collaboration between DIB and al Qaeda, established through DIB Founder and long-term Chairman Saeed Ahmed Lootah's "personal friendship" with Osama bin Ladin. *See, e.g.*, CIA000736 (Bin Ladin's use of DIB probably stems from his friendship with DIB Chair Lootah); CIA 000322 (al Qaeda chief "financial officer Madani al Tayyib, and other Al-Qa'ida members held numerous accounts at Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact within the bank, security concerns, and the bank's adherence to Islamic law"); *see also* CIA 000337 ("DIB Chairman Saeed Ahmed Lootah is a close friend of Bin Ladin's"); CIA 000722 ("The bank's chairman, Saeed Ahmed Lootah is a member of the [Muslim Brotherhood] and a close friend of Bin Ladin's"); CIA 000735 ("Lootah is a close friend and business associate of Usama Bin Ladin's, head of the Islamic Army").

In a CIA Intelligence Report from its Office of Transnational Issues, titled "Funding Islamic Extremists Movements: The Role of Islamic Financial Institutions," the CIA assessed

that, of the roughly 130 Islamic financial entities examined by the intelligence agency, Dubai

Islamic Bank "stand[s] out from other Islamic financial institutions because of [it's]

management's apparently *witting involvement* in the financial activities of Egypt's Gama'at al

Islamiyya (IG), the Palestinian Islamic Resistance Movement (HAMAS), Usama Bin Ladin's

Islamic Army, as well as numerous Muslim Brotherhood factions that are bent on establishing

Islamic states." CIA 000728 (emphasis added).

      The evidence from the CIA states that Bin Ladin and his associates used contacts inside

select banks, including DIB, to facilitate moving funds. CIA 000326. According to the CIA, "Bin

Ladin's Sudan-based companies and his financial officers opened bank accounts and letters of

credit at Dubai Islamic Bank (DIB) with the active help of DIB Chairman Sa'id Ahmed Lootah."

CIA 000045. Indeed, "DIB Chairman Saeed Ahmed Lootah authorize[d]—stamp[ed] and

sign[ed]—some of Bin Ladin's letters of credit." CIA 000326; *see also* CIA 000426 (Saeed

Ahmed Lootah's businesses cooperate with Bin Ladin's companies; Lootah "authorizes (stamps

and signs) some of Bin Ladin's letters of credit"); CIA 000747 ("DIB Chairman Lootah

personally authorized, stamped, and signed some letters of credit opened by Bin Ladin's

companies in Khartoum through DIB").

      Evidence produced by the CIA indicates that Al-Marri's decision to use an account at

DIB to support his activities was the product of a longstanding collaboration between DIB and al

Qaeda, established based on DIB Founder Saeed Lootah's "personal friendship" with Osama bin

Ladin. CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal

contact with the bank…"; al Qaeda chief "financial officer Madani al Tayyib, and other Al-

Qa'ida financial members held numerous bank accounts at Dubai Islamic Bank because of Bin

Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000326 (Bin Ladin and his associates used contacts inside select banks to facilitate moving funds).

**REQUEST NO. 11:**

Admit that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any use of Ali Abdul Aziz Ali's DIB account by Al Qaeda or for Al Qaeda's purposes.

### SUPPLEMENTAL RESPONSE TO REQUEST NO. 11:

Subject to and without waiver of each of the General Objections above, and subject to the explanation that follows, Plaintiffs object to Request No. 11 to the extent it calls for Plaintiffs to identify information in possession, custody, and control of the Defendants. Subject to and without waiver of all objections, following a reasonable inquiry and diligent search, including the evidence recently produced by the CIA pursuant to Executive Order No. 14040, the Plaintiffs deny that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any use of Ali Abdul Aziz Ali's DIB account by Al Qaeda of for Al Qaeda purposes.

The context and focus of the meeting between U.S. and Emirati officials, in addition to information sourced from a senior U.S. official regarding DIB's involvement with Osama bin Laden, reported in the New York Times article "U.S. Officials Say Air for Terrorist Came Through Two Persian Gulf Nations" by James Risen with Benjamin Weiser (produced by Plaintiffs at PECDIB000839-842 and PECDIB000813-815 and by DIB at DIB000880-884), indicate that someone at DIB was aware it held accounts being used by Al Qaeda or for Al Qaeda purposes.

DIB stands out from other Islamic financial institutions because of their management's apparently witting involvement in the financial activities of Usama Bin Laden's Islamic Army as well as numerous extremist Muslim Brotherhood factions bent on establishing Islamic states. CIA_000728. Evidence recently produced by the Central Intelligence Agency (CIA) pursuant to Executive Order 14040 indicates that al Qaeda's choice to use DIB for these purposes was not by happenstance, but rather the product of a longstanding collaboration between DIB and al Qaeda, established based on DIB Founder Saeed Lootah's "personal friendship" with Osama bin Laden. *See* CIA_000736 (Bin Laden's use of DIB probably stems from his purported friendship with DIB Chairman Lootah); CIA_000322 (al Qaeda's "choice of financial institutions has been based on personal contact with the bank, security concerns, and the bank's adherence to Islamic law"); *id.* (al Qaeda chief "financial officer Madani al Tayyib, and other Al- Qa'ida financial members held numerous bank accounts at Dubai Islamic Bank because of Bin Laden's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA_000722 (DIB's chairman, Saeed Ahmed Lootah is a member of the Muslim Brotherhood and a close friend of Bin Laden's; DIB was a key financial conduit for Bin Laden's Islamic Army [synonymous with al Qaeda]); and CIA_000735 (Chairman Lootah is a close friend and business associate of Bin Laden, head of the Islamic Army); CIA_000326 ("DIB Chairman Saeed Ahmed Lootah authorizes---stamps and signs—some of Bin Ladin's letters of credit"); *see also* CIA 000426 (for similar statements regarding Lootah's direct involvement through stamping and authorizing Bin Laden's letters of credit) and CIA_000747 (Lootah's purported friendship with Bin Laden suggests greater personal service for this customer).

**REQUEST NO. 12:**

Admit that there is no evidence that DIB had any knowledge or awareness, prior to the

September 11 Attacks, of any use of Fayez Rashid Ahmed Hassan Al-Qadi's DIB account by Al

Qaeda or for Al Qaeda's purposes.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 12:**

Subject to and without waiver of each of the General Objections above, and subject to the

explanation that follows, Plaintiffs object to Request No. 12 to the extent it calls for Plaintiffs to

identify information in possession, custody, and control of the Defendants. Subject to and

without waiver of all objections, following a reasonable inquiry and diligent search, including

the evidence recently produced by the CIA pursuant to Executive Order No. 14040, the Plaintiffs

deny that there is no evidence that DIB had any knowledge or awareness, prior to the September

11 Attacks, of any use of Fayez Rashid Ahmed Hassan Al-Qadi's DIB account by Al Qaeda of

for Al Qaeda purposes.

The context and focus of the meeting between U.S. and Emirati officials, in addition to

information sourced from a senior U.S. official regarding DIB's involvement with Osama bin

Laden, reported in the New York Times article "U.S. Officials Say Air for Terrorist Came

Through Two Persian Gulf Nations" by James Risen with Benjamin Weiser (produced by

Plaintiffs at PECDIB000839-842 and PECDIB000813-815 and by DIB at DIB000880-884),

indicate that someone at DIB was aware it held accounts being used by Al Qaeda or for Al

Qaeda purposes.

Consistent with the principle that money is fungible, and recognizing that al Qaeda relied

on its entire infrastructure in order to plan and carry out the 9/11 attacks, evidence exists to

indicate that funds in a DIB account of Fayez Rashid Ahmed Hassan Al-Qadi were available for

46

use in the event that they would have been needed to further al Qaeda's 9/11 plot in which Al

Qadi was an active participant. Plaintiffs were provided 13 pages of bank statements from Al

Qadi's account with dates ranging from January 1996 at the earliest to December 31, 2000 at the

latest. *See* DIB_003367 to DIB_003379. These statements show that the funds in this account

were available to Al Qadi during al Qaeda's period of preparation for the September 11th

Attacks.

Evidence recently produced by the Central Intelligence Agency ("CIA") pursuant to

Executive Order No. 14040 indicates that Osama Bin Ladin, his Sudan-based companies, his

own financial managers, financial officers of al Qaeda, and other members of al Qaeda

maintained accounts at DIB. *See, e.g.*, CIA 000337 ("Bin Ladin and his companies maintained

[REDACTED] accounts at DIB"); CIA 000722 ("Bin Ladin and his Sudan-based companies

maintain several accounts at DIB"); CIA 000322 ("Bin Ladin, financial officer Madani Al-

Tayyib, and other Al- Qa'ida members held numerous bank accounts at Dubai Islamic Bank").

The evidence further demonstrates that "*Dubai Islamic Bank (DIB)* has served as a key financial

conduit for Al-Qa'da and for Bin Ladin's companies in Sudan" CIA 000337; *see also* CIA

000722 (DIB was "a key financial conduit for Usama Bin Ladin's Islamic Army"), and that the

decision by Bin Ladin and al Qaeda to use DIB's banking and financial services to manage Bin

Ladin's and the terrorist organization's money and move funds globally was not by

happenstance, but rather a witting product of a longstanding collaboration between DIB and al

Qaeda, established through DIB Founder and long-term Chairman Saeed Ahmed Lootah's

"personal friendship" with Osama bin Ladin. *See, e.g.*, CIA000736 (Bin Ladin's use of DIB

probably stems from his friendship with DIB Chair Lootah); CIA 000322 (al Qaeda chief

"financial officer Madani al Tayyib, and other Al-Qa'ida members held numerous accounts at

Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact within the bank, security concerns, and the bank's adherence to Islamic law"); *see also* CIA 000337 ("DIB Chairman Saeed Ahmed Lootah is a close friend of Bin Ladin's"); CIA 000722 ("The bank's chairman, Saeed Ahmed Lootah is a member of the [Muslim Brotherhood] and a close friend of Bin Ladin's"); CIA 000735 ("Lootah is a close friend and business associate of Usama Bin Ladin's, head of the Islamic Army").

In a CIA Intelligence Report from its Office of Transnational Issues, titled "Funding Islamic Extremists Movements: The Role of Islamic Financial Institutions," the CIA assessed that, of the roughly 130 Islamic financial entities examined by the intelligence agency, Dubai Islamic Bank "stand[s] out from other Islamic financial institutions because of [it's] management's apparently *witting involvement* in the financial activities of Egypt's Gama'at al Islamiyya (IG), the Palestinian Islamic Resistance Movement (HAMAS), Usama Bin Ladin's Islamic Army, as well as numerous Muslim Brotherhood factions that are bent on establishing Islamic states." CIA 000728 (emphasis added).

The evidence from the CIA states that Bin Ladin and his associates used contacts inside select banks, including DIB, to facilitate moving funds. CIA 000326. According to the CIA, "Bin Ladin's Sudan-based companies and his financial officers opened bank accounts and letters of credit at Dubai Islamic Bank (DIB) with the active help of DIB Chairman Sa'id Ahmed Lootah." CIA 000045. Indeed, "DIB Chairman Saeed Ahmed Lootah authorize[d]—stamp[ed] and sign[ed]—some of Bin Ladin's letters of credit." CIA 000326; *see also* CIA 000426 (Saeed Ahmed Lootah's businesses cooperate with Bin Ladin's companies; Lootah "authorizes (stamps and signs) some of Bin Ladin's letters of credit"); CIA 000747 ("DIB Chairman Lootah

personally authorized, stamped, and signed some letters of credit opened by Bin Ladin's companies in Khartoum through DIB").

In addition, evidence produced by the CIA indicates that Al Qadi's decision to use an account at DIB to support his activities was the product of a longstanding collaboration between DIB and al Qaeda, established based on DIB Founder Saeed Lootah's "personal friendship" with Osama bin Ladin. CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact with the bank…"; al Qaeda chief "financial officer Madani al Tayyib, and other Al- Qa'ida financial members held numerous bank accounts at Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000326 (Bin Ladin and his associates used contacts inside select banks to facilitate moving funds).

**REQUEST NO. 13:**

Admit that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any use of Khalid Amer Salim Ballayth's DIB account by Al Qaeda or for Al Qaeda's purposes.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 13:**

Subject to and without waiver of each of the General Objections above, and subject to the explanation that follows, Plaintiffs object to Request No. 13 to the extent it calls for Plaintiffs to identify information in possession, custody, and control of the Defendants. Subject to and without waiver of all objections, following a reasonable inquiry and diligent search, including the evidence recently produced by the CIA pursuant to Executive Order No. 14040, the Plaintiffs deny that there is no evidence that DIB had any knowledge or awareness, prior to the September

11 Attacks, of any use of Khalid Amer Salim Ballayth's DIB account by Al Qaeda of for Al Qaeda purposes.

The context and focus of the meeting between U.S. and Emirati officials, in addition to information sourced from a senior U.S. official regarding DIB's involvement with Osama bin Laden, reported in the New York Times article "U.S. Officials Say Air for Terrorist Came Through Two Persian Gulf Nations" by James Risen with Benjamin Weiser (produced by Plaintiffs at PECDIB000839-842 and PECDIB000813-815 and by DIB at DIB000880-884), indicate that someone at DIB was aware it held accounts being used by Al Qaeda or for Al Qaeda purposes.

Account statements for the period 1992-2004 for Khaled Amer Ballaith, Sharjah, P.O. Box 1033, prove his ownership of DIB Account No. xxxxxxxxxx6601. DIB_005024 – DIB_005051, and that the funds in this account were available for use in the years leading up to the September 11 attacks, including the years that Osama bin Ladin and al Qaeda were plotting and preparing for the attacks. Ballayth was the director of the Sana Trading Establishment the holding company of the Binjad Establishment. KADI0015570. Ballayth was found to be a close associate of Osama Bin Ladin who transferred between $200,000 and $250,000 to the Muwafaq Foundation (whose leadership and activities have been tied to terrorist activity) through the account of the Binjad establishment. RICO Statement Applicable to Talal M. Badkook, Exhibit "A", RICO Statement Question #2, MDL 1570 – *Federal Insurance Co. v. al Qaida*, 03 CV 06978; *see also* KADI0015570 (described by Swiss authorities as a "close associate of Osama Bin Ladin"). The Binjad Establishment ordered vehicles for the Muwafaq Foundation which operated closely with the International Islamic Relief Organization.

Evidence recently produced by the Central Intelligence Agency ("CIA") pursuant to Executive Order No. 14040 indicates that Osama Bin Ladin, his Sudan-based companies, his own financial managers, financial officers of al Qaeda, and other members of al Qaeda maintained accounts at DIB. *See, e.g.*, CIA 000337 ("Bin Ladin and his companies maintained [REDACTED] accounts at DIB"); CIA 000722 ("Bin Ladin and his Sudan-based companies maintain several accounts at DIB"); CIA 000322 ("Bin Ladin, financial officer Madani Al-Tayyib, and other Al- Qa'ida members held numerous bank accounts at Dubai Islamic Bank"). The evidence further demonstrates that "*Dubai Islamic Bank* (*DIB*) has served as a key financial conduit for Al-Qa'da and for Bin Ladin's companies in Sudan" CIA 000337; *see also* CIA 000722 (DIB was "a key financial conduit for Usama Bin Ladin's Islamic Army"), and that the decision by Bin Ladin and al Qaeda to use DIB's banking and financial services to manage Bin Ladin's and the terrorist organization's money and move funds globally was not by happenstance, but rather a witting product of a longstanding collaboration between DIB and al Qaeda, established through DIB Founder and long-term Chairman Saeed Ahmed Lootah's "personal friendship" with Osama bin Ladin. *See, e.g.*, CIA000736 (Bin Ladin's use of DIB probably stems from his friendship with DIB Chair Lootah); CIA 000322 (al Qaeda chief "financial officer Madani al Tayyib, and other Al-Qa'ida members held numerous accounts at Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact within the bank, security concerns, and the bank's adherence to Islamic law"); *see also* CIA 000337 ("DIB Chairman Saeed Ahmed Lootah is a close friend of Bin Ladin's"); CIA 000722 ("The bank's chairman, Saeed Ahmed Lootah is a member of the

51

[Muslim Brotherhood] and a close friend of Bin Ladin's"); CIA 000735 ("Lootah is a close friend and business associate of Usama Bin Ladin's, head of the Islamic Army").

In a CIA Intelligence Report from its Office of Transnational Issues, titled "Funding Islamic Extremists Movements: The Role of Islamic Financial Institutions," the CIA assessed that, of the roughly 130 Islamic financial entities examined by the intelligence agency, Dubai Islamic Bank "stand[s] out from other Islamic financial institutions because of [it's] management's apparently *witting involvement* in the financial activities of Egypt's Gama'at al Islamiyya (IG), the Palestinian Islamic Resistance Movement (HAMAS), Usama Bin Ladin's Islamic Army, as well as numerous Muslim Brotherhood factions that are bent on establishing Islamic states." CIA 000728 (emphasis added).

The evidence from the CIA states that Bin Ladin and his associates used contacts inside select banks, including DIB, to facilitate moving funds. CIA 000326. According to the CIA, "Bin Ladin's Sudan-based companies and his financial officers opened bank accounts and letters of credit at Dubai Islamic Bank (DIB) with the active help of DIB Chairman Sa'id Ahmed Lootah." CIA 000045. Indeed, "DIB Chairman Saeed Ahmed Lootah authorize[d]—stamp[ed] and sign[ed]—some of Bin Ladin's letters of credit." CIA 000326; *see also* CIA 000426 (Saeed Ahmed Lootah's businesses cooperate with Bin Ladin's companies; Lootah "authorizes (stamps and signs) some of Bin Ladin's letters of credit"); CIA 000747 ("DIB Chairman Lootah personally authorized, stamped, and signed some letters of credit opened by Bin Ladin's companies in Khartoum through DIB").

In addition, DIB and Lootah had connections to several Islamic NGOs that funded militant causes. One principal connection was through DIB board member Sheikh Yousif Jassim Al Haji, Chairman of the Kuwait-based International Islamic Charities Organization (IICO) that

sent "funds [REDACTED] to the Peshawar, Pakistan-based Maktab-ul Khedamat, an NGO that coordinated activities of Afghanis and supported the Bosnian Mujahaddin." CIA 000737. An August 17, 1995 check was written from Ballaith's above-described DIB account in the amount of 138,249.20 DH to Mohammed A. Bin Mahfouz. KADI0106547. Mohammed Ahmed Obaid Bin Mahfouz, the brother of Khalid Bin Mahfouz, is an associate of Executive Order 13224 designee Yasin al Qadi and was responsible for overseeing the operations of the Muwafaq Foundation's branch office in Islamabad, Pakistan.

A letter found in Afghanistan in 2002 indicates that Adel Batterjee, a close Bin Ladin business associate and Saudi-based donor and fundraiser to al Qaeda, CIA 000149, -198, and Yasin Qadi, a Saudi Arabian merchant who built business ties to Bin Ladin's companies in Sudan, and who also financed extremists, served as Bin Ladin's financial manager in Sudan. CIA 000045, -149. Bin Ladin's Sudan-based companies and his financial officers opened bank accounts and letters of credit at DIB with the active help of DIB Chairman Lootah. CIA 000045.

Yasin Qadi founded the Saudi-based Muwafaq Foundation which he then used to remit funds to al Qaeda and other terrorist groups. CIA 000195. According to the U.S. Treasury Department, the Muwafaq Foundation merged with al Qaeda before the September 11th Attacks. *See* November 29, 2001 letter from David D. Aufhauser, Department of the Treasury General Counsel, to Switzerland's M. Claude Nicati, Substitute du Procureur General, at p. 3 (stating that the Muwafaq Foundation "also merged with Al-Qa'ida"). KADI0106547 demonstrates Ballayth's association with Mahfouz and the transfer of funds to an individual who was operating a front for al Qaeda's financial activities in the years before the September 11th attacks.

**REQUEST NO. 14:**

Admit that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any use of Mamdoh Mahmoud Salim's DIB accounts Al Qaeda or for Al Qaeda's purposes.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 14:**

Subject to and without waiver of each of the General Objections above, and subject to the explanation that follows, Plaintiffs object to Request No. 14 to the extent it calls for Plaintiffs to identify information in possession, custody, and control of the Defendants. Subject to and without waiver of all objections, following a reasonable inquiry and diligent search, including the evidence recently produced by the CIA pursuant to Executive Order No. 14040, the Plaintiffs deny that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any use of Mamdoh Mahmoud Salim's DIB account by Al Qaeda of for Al Qaeda purposes.

The context and focus of the meeting between U.S. and Emirati officials, in addition to information sourced from a senior U.S. official regarding DIB's involvement with Osama bin Laden, reported in the New York Times article "U.S. Officials Say Air for Terrorist Came Through Two Persian Gulf Nations" by James Risen with Benjamin Weiser (produced by Plaintiffs at PECDIB000839-842 and PECDIB000813-815 and by DIB at DIB000880-884), indicate that someone at DIB was aware it held accounts being used by Al Qaeda or for Al Qaeda purposes.

When Ahmed, a founding member of al Qaeda responsible for managing terrorist training camps in Afghanistan and Pakistan and undertaking efforts to obtain nuclear weapons for al Qaeda, was arrested on September 16, 1998 by German authorities for his role in the 1998 Embassy bombings, the following were found in his possession: (1) "VISA Card Dubai Islamic

Bank fur Mamdoh M S Ahmed, Nr. xxxx 1013;" (2) "Bank Card Dubai Islamic Bank fur

Mamdoh M.S. Ahmed, Nr. xxxx 2362;" (3) "Card Dubai Islamic Bank Nr. xxx4008; and (4) "1

Zettel Dubai Islamic Bank" *See, e.g.,* KADI0030668 - KADI0030678 at KADI0030672 and 675.

Ahmed had access to funds in DIB accounts which were available to fund terrorist operations,

including the 1998 Embassy bombings, in the years before the September 11th Attacks.

Evidence recently produced by the Central Intelligence Agency ("CIA") pursuant to

Executive Order No. 14040 indicates that Osama Bin Ladin, his Sudan-based companies, his

own financial managers, financial officers of al Qaeda, and other members of al Qaeda

maintained accounts at DIB. *See, e.g*., CIA 000337 ("Bin Ladin and his companies maintained

[REDACTED] accounts at DIB"); CIA 000722 ("Bin Ladin and his Sudan-based companies

maintain several accounts at DIB"); CIA 000322 ("Bin Ladin, financial officer Madani Al-

Tayyib, and other Al- Qa'ida members held numerous bank accounts at Dubai Islamic Bank").

The evidence further demonstrates that "*Dubai Islamic Bank* (*DIB*) has served as a key financial

conduit for Al-Qa'da and for Bin Ladin's companies in Sudan" CIA 000337; *see also* CIA

000722 (DIB was "a key financial conduit for Usama Bin Ladin's Islamic Army"), and that the

decision by Bin Ladin and al Qaeda to use DIB's banking and financial services to manage Bin

Ladin's and the terrorist organization's money and move funds globally was not by

happenstance, but rather a witting product of a longstanding collaboration between DIB and al

Qaeda, established through DIB Founder and long-term Chairman Saeed Ahmed Lootah's

"personal friendship" with Osama bin Ladin. *See, e.g*., CIA000736 (Bin Ladin's use of DIB

probably stems from his friendship with DIB Chair Lootah); CIA 000322 (al Qaeda chief

"financial officer Madani al Tayyib, and other Al-Qa'ida members held numerous accounts at

Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman,

Saeed Ahmed Lootah"); CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact within the bank, security concerns, and the bank's adherence to Islamic law"); *see also* CIA 000337 ("DIB Chairman Saeed Ahmed Lootah is a close friend of Bin Ladin's"); CIA 000722 ("The bank's chairman, Saeed Ahmed Lootah is a member of the [Muslim Brotherhood] and a close friend of Bin Ladin's"); CIA 000735 ("Lootah is a close friend and business associate of Usama Bin Ladin's, head of the Islamic Army").

In a CIA Intelligence Report from its Office of Transnational Issues, titled "Funding Islamic Extremists Movements: The Role of Islamic Financial Institutions," the CIA assessed that, of the roughly 130 Islamic financial entities examined by the intelligence agency, Dubai Islamic Bank "stand[s] out from other Islamic financial institutions because of [it's] management's apparently *witting involvement* in the financial activities of Egypt's Gama'at al Islamiyya (IG), the Palestinian Islamic Resistance Movement (HAMAS), Usama Bin Ladin's Islamic Army, as well as numerous Muslim Brotherhood factions that are bent on establishing Islamic states." CIA 000728 (emphasis added).

The evidence from the CIA states that Bin Ladin and his associates used contacts inside select banks, including DIB, to facilitate moving funds. CIA 000326. According to the CIA, "Bin Ladin's Sudan-based companies and his financial officers opened bank accounts and letters of credit at Dubai Islamic Bank (DIB) with the active help of DIB Chairman Sa'id Ahmed Lootah." CIA 000045. Indeed, "DIB Chairman Saeed Ahmed Lootah authorize[d]—stamp[ed] and sign[ed]—some of Bin Ladin's letters of credit." CIA 000326; *see also* CIA 000426 (Saeed Ahmed Lootah's businesses cooperate with Bin Ladin's companies; Lootah "authorizes (stamps and signs) some of Bin Ladin's letters of credit"); CIA 000747 ("DIB Chairman Lootah

personally authorized, stamped, and signed some letters of credit opened by Bin Ladin's companies in Khartoum through DIB").

Evidence produced by the CIA indicates that Ahmed's decision to use an account at DIB to support his activities was the product of a longstanding collaboration between DIB and al Qaeda, established based on DIB Founder Saeed Lootah's "personal friendship" with Osama bin Ladin. CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact with the bank…"; al Qaeda chief "financial officer Madani al Tayyib, and other Al-Qa'ida financial members held numerous bank accounts at Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000326 (Bin Ladin and his associates used contacts inside select banks to facilitate moving funds).

**REQUEST NO. 15:**

Admit that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any use of Ahmed Ali Jumale's DIB account by Al Qaeda or for Al Qaeda's purposes.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 15:**

Subject to and without waiver of each of the General Objections above, and subject to the explanation that follows, Plaintiffs object to Request No. 15 to the extent it calls for Plaintiffs to identify information in possession, custody, and control of the Defendants. Subject to and without waiver of all objections, following a reasonable inquiry and diligent search, including the evidence recently produced by the CIA pursuant to Executive Order No. 14040, the Plaintiffs deny that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any use of Ahmed Ali Jumale's DIB account by Al Qaeda of for Al Qaeda purposes.

The context and focus of the meeting between U.S. and Emirati officials, in addition to information sourced from a senior U.S. official regarding DIB's involvement with Osama bin Laden, reported in the New York Times article "U.S. Officials Say Air for Terrorist Came Through Two Persian Gulf Nations" by James Risen with Benjamin Weiser (produced by Plaintiffs at PECDIB000839-842 and PECDIB000813-815 and by DIB at DIB000880-884), indicate that someone at DIB was aware it held accounts being used by Al Qaeda or for Al Qaeda purposes.

Consistent with the principle that money is fungible, and recognizing that al Qaeda relied on its entire infrastructure in order to plan and carry out the 9/11 attacks, evidence exists to indicate that funds in a DIB account of Ahmed Ali Jumale were available for use in the event that they would have been needed to fund al Qaeda's operations. Jumale, who was designated by the U.S. Treasury Department on November 7, 2001 for his close ties to Osama Bin Ladin, held accounts at DIB and, according to Treasury officials, Jumale used the Al Barakaat group of companies "to transmit funds, intelligence and instructions" to al Qaeda and other terrorist organizations" *See* Josh Meyer and Sebastian Rotella, "U.S. Coalition Freezes Assets in Terror War" Los Angeles Times, November 8, 2001 [ECF No. 2973-12]. *See also* DIB_001075-DIB_001085, National Commission on Terrorist Attacks Upon the United States, Monograph on Terrorist Financing, Staff Report to the Commission, pp. 70-80. Jumale held personal accounts at DIB as evidenced by his personal and VISA DIB Account Nos. xxx1192 and xxx-xxx-xxx-960 which were seized pursuant to the instructions of the Central Bank of the UAE "in conjunction with the International efforts to fight terrorism." DIB 3251-3259.

Evidence recently produced by the Central Intelligence Agency ("CIA") pursuant to Executive Order No. 14040 indicates that Osama Bin Ladin, his Sudan-based companies, his

own financial managers, financial officers of al Qaeda, and other members of al Qaeda maintained accounts at DIB. *See, e.g.*, CIA 000337 ("Bin Ladin and his companies maintained [REDACTED] accounts at DIB"); CIA 000722 ("Bin Ladin and his Sudan-based companies maintain several accounts at DIB"); CIA 000322 ("Bin Ladin, financial officer Madani Al-Tayyib, and other Al- Qa'ida members held numerous bank accounts at Dubai Islamic Bank"). The evidence further demonstrates that "*Dubai Islamic Bank* (*DIB*) has served as a key financial conduit for Al-Qa'da and for Bin Ladin's companies in Sudan" CIA 000337; *see also* CIA 000722 (DIB was "a key financial conduit for Usama Bin Ladin's Islamic Army"), and that the decision by Bin Ladin and al Qaeda to use DIB's banking and financial services to manage Bin Ladin's and the terrorist organization's money and move funds globally was not by happenstance, but rather a witting product of a longstanding collaboration between DIB and al Qaeda, established through DIB Founder and long-term Chairman Saeed Ahmed Lootah's "personal friendship" with Osama bin Ladin. *See, e.g.*, CIA000736 (Bin Ladin's use of DIB probably stems from his friendship with DIB Chair Lootah); CIA 000322 (al Qaeda chief "financial officer Madani al Tayyib, and other Al-Qa'ida members held numerous accounts at Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact within the bank, security concerns, and the bank's adherence to Islamic law"); *see also* CIA 000337 ("DIB Chairman Saeed Ahmed Lootah is a close friend of Bin Ladin's"); CIA 000722 ("The bank's chairman, Saeed Ahmed Lootah is a member of the [Muslim Brotherhood] and a close friend of Bin Ladin's"); CIA 000735 ("Lootah is a close friend and business associate of Usama Bin Ladin's, head of the Islamic Army").

In a CIA Intelligence Report from its Office of Transnational Issues, titled "Funding Islamic Extremists Movements: The Role of Islamic Financial Institutions," the CIA assessed that, of the roughly 130 Islamic financial entities examined by the intelligence agency, Dubai Islamic Bank "stand[s] out from other Islamic financial institutions because of [it's] management's apparently *witting involvement* in the financial activities of Egypt's Gama'at al Islamiyya (IG), the Palestinian Islamic Resistance Movement (HAMAS), Usama Bin Ladin's Islamic Army, as well as numerous Muslim Brotherhood factions that are bent on establishing Islamic states." CIA 000728 (emphasis added).

The evidence from the CIA states that Bin Ladin and his associates used contacts inside select banks, including DIB, to facilitate moving funds. CIA 000326. According to the CIA, "Bin Ladin's Sudan-based companies and his financial officers opened bank accounts and letters of credit at Dubai Islamic Bank (DIB) with the active help of DIB Chairman Sa'id Ahmed Lootah." CIA 000045. Indeed, "DIB Chairman Saeed Ahmed Lootah authorize[d]—stamp[ed] and sign[ed]—some of Bin Ladin's letters of credit." CIA 000326; *see also* CIA 000426 (Saeed Ahmed Lootah's businesses cooperate with Bin Ladin's companies; Lootah "authorizes (stamps and signs) some of Bin Ladin's letters of credit"); CIA 000747 ("DIB Chairman Lootah personally authorized, stamped, and signed some letters of credit opened by Bin Ladin's companies in Khartoum through DIB").

Evidence produced by the CIA indicates that Jumale's decision to use an account at DIB to support his activities was the product of a longstanding collaboration between DIB and al Qaeda, established based on DIB Founder Saeed Lootah's "personal friendship" with Osama bin Ladin. CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact with the bank…"; al Qaeda chief "financial officer Madani al Tayyib, and other Al-

Qa'ida financial members held numerous bank accounts at Dubai Islamic Bank because of Bin

Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000326

(Bin Ladin and his associates used contacts inside select banks to facilitate moving funds).

Jumale had access to the funds in his personal DIB accounts and the ability to transmit these

funds in the years before the September 11th Attacks.

**REQUEST NO. 16:**

Admit that there is no evidence that DIB had any knowledge or awareness, prior to the

September 11 Attacks, of any use of Barakaat Bank of Somalia's DIB account by Al Qaeda or

for Al Qaeda's purposes.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 16:**

Subject to and without waiver of each of the General Objections above, and subject to the

explanation that follows, Plaintiffs object to Request No. 16 to the extent it calls for Plaintiffs to

identify information in possession, custody, and control of the Defendants. Subject to and

without waiver of all objections, following a reasonable inquiry and diligent search, including

the evidence recently produced by the CIA pursuant to Executive Order No. 14040, the Plaintiffs

deny that there is no evidence that DIB had any knowledge or awareness, prior to the September

11 Attacks, of any use of Barakaat Bank of Somalia's DIB account by Al Qaeda of for Al Qaeda

purposes.

The context and focus of the meeting between U.S. and Emirati officials, in addition to

information sourced from a senior U.S. official regarding DIB's involvement with Osama bin

Laden, reported in the New York Times article "U.S. Officials Say Air for Terrorist Came

Through Two Persian Gulf Nations" by James Risen with Benjamin Weiser (produced by

Plaintiffs at PECDIB000839-842 and PECDIB000813-815 and by DIB at DIB000880-884),

indicate that someone at DIB was aware it held accounts being used by Al Qaeda or for Al Qaeda purposes.

Al Barakaat "has used its global money-transfer business to help terrorists ship large caches of weapons from one country to another, paid for through money transfers that the company indicated was for the use of blankets." Josh Meyer and Sebastian Rotella, "U.S. Coalition Freezes Assets in Terror War" Los Angeles Times, November 8, 2001 [ECF No. 2973-12].

Evidence recently produced by the Central Intelligence Agency ("CIA") pursuant to Executive Order No. 14040 indicates that Osama Bin Ladin, his Sudan-based companies, his own financial managers, financial officers of al Qaeda, and other members of al Qaeda maintained accounts at DIB. *See, e.g.*, CIA 000337 ("Bin Ladin and his companies maintained [REDACTED] accounts at DIB"); CIA 000722 ("Bin Ladin and his Sudan-based companies maintain several accounts at DIB"); CIA 000322 ("Bin Ladin, financial officer Madani Al-Tayyib, and other Al- Qa'ida members held numerous bank accounts at Dubai Islamic Bank"). The evidence further demonstrates that "*Dubai Islamic Bank* (*DIB*) has served as a key financial conduit for Al-Qa'da and for Bin Ladin's companies in Sudan" CIA 000337; *see also* CIA 000722 (DIB was "a key financial conduit for Usama Bin Ladin's Islamic Army"), and that the decision by Bin Ladin and al Qaeda to use DIB's banking and financial services to manage Bin Ladin's and the terrorist organization's money and move funds globally was not by happenstance, but rather a witting product of a longstanding collaboration between DIB and al Qaeda, established through DIB Founder and long-term Chairman Saeed Ahmed Lootah's "personal friendship" with Osama bin Ladin. *See, e.g.*, CIA000736 (Bin Ladin's use of DIB probably stems from his friendship with DIB Chair Lootah); CIA 000322 (al Qaeda chief

"financial officer Madani al Tayyib, and other Al-Qa'ida members held numerous accounts at Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact within the bank, security concerns, and the bank's adherence to Islamic law"); *see also* CIA 000337 ("DIB Chairman Saeed Ahmed Lootah is a close friend of Bin Ladin's"); CIA 000722 ("The bank's chairman, Saeed Ahmed Lootah is a member of the [Muslim Brotherhood] and a close friend of Bin Ladin's"); CIA 000735 ("Lootah is a close friend and business associate of Usama Bin Ladin's, head of the Islamic Army").

In a CIA Intelligence Report from its Office of Transnational Issues, titled "Funding Islamic Extremists Movements: The Role of Islamic Financial Institutions," the CIA assessed that, of the roughly 130 Islamic financial entities examined by the intelligence agency, Dubai Islamic Bank "stand[s] out from other Islamic financial institutions because of [it's] management's apparently *witting involvement* in the financial activities of Egypt's Gama'at al Islamiyya (IG), the Palestinian Islamic Resistance Movement (HAMAS), Usama Bin Ladin's Islamic Army, as well as numerous Muslim Brotherhood factions that are bent on establishing Islamic states." CIA 000728 (emphasis added).

The evidence from the CIA states that Bin Ladin and his associates used contacts inside select banks, including DIB, to facilitate moving funds. CIA 000326. According to the CIA, "Bin Ladin's Sudan-based companies and his financial officers opened bank accounts and letters of credit at Dubai Islamic Bank (DIB) with the active help of DIB Chairman Sa'id Ahmed Lootah." CIA 000045. Indeed, "DIB Chairman Saeed Ahmed Lootah authorize[d]—stamp[ed] and sign[ed]—some of Bin Ladin's letters of credit." CIA 000326; *see also* CIA 000426 (Saeed Ahmed Lootah's businesses cooperate with Bin Ladin's companies; Lootah "authorizes (stamps

63

and signs) some of Bin Ladin's letters of credit"); CIA 000747 ("DIB Chairman Lootah personally authorized, stamped, and signed some letters of credit opened by Bin Ladin's companies in Khartoum through DIB").

      Barakaat Bank of Somalia was owned by Ahmed Nour Ali Jumale who headed a group of rich Somali investors. CIA 000785. Jumale and Bin Ladin were so closely linked that Jumale was designated by the U.S. Treasury Department on November 7, 2001 on the basis of his relationship to Bin Ladin and according to Treasury officials, Jumale used the Al Barakaat group of companies "to transmit funds, intelligence and instructions" to al Qaeda and other terrorist organizations" *See* Josh Meyer and Sebastian Rotella, "U.S. Coalition Freezes Assets in Terror War" Los Angeles Times, November 8, 2001 [ECF No. 2973-12]. *See also* DIB_001075-DIB_001085, National Commission on Terrorist Attacks Upon the United States, Monograph on Terrorist Financing, Staff Report to the Commission, pp. 70-80. Barakaat Bank of Somalia Account Nos. xxx339 and xx-xxx-xx-x13-01 were seized pursuant to the instructions of the Central Bank of the UAE "in conjunction with the International efforts to fight terrorism." DIB 3251-3259. Barakaat Bank of Somalia had access to the funds in these DIB accounts and the ability to transmit these funds in the years before the September 11[th] Attacks.

**REQUEST NO. 17**:

Admit that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any use of Al Baraka Exchange LLC's DIB account by Al Qaeda or for Al Qaeda's purposes.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 17:**

      Subject to and without waiver of each of the General Objections above, and subject to the explanation that follows, Plaintiffs object to Request No. 17 to the extent it calls for Plaintiffs to

identify information in possession, custody, and control of the Defendants. Subject to and without waiver of all objections, following a reasonable inquiry and diligent search, including the evidence recently produced by the CIA pursuant to Executive Order No. 14040, the Plaintiffs deny that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any use of Al Baraka Exchange LLC's DIB account by Al Qaeda of for Al Qaeda purposes.

The context and focus of the meeting between U.S. and Emirati officials, in addition to information sourced from a senior U.S. official regarding DIB's involvement with Osama bin Laden, reported in the New York Times article "U.S. Officials Say Air for Terrorist Came Through Two Persian Gulf Nations" by James Risen with Benjamin Weiser (produced by Plaintiffs at PECDIB000839-842 and PECDIB000813-815 and by DIB at DIB000880-884), indicate that someone at DIB was aware it held accounts being used by Al Qaeda or for Al Qaeda purposes.

Al Baraka Exchange Account Nos. xxx7440 and xxx7483 were seized pursuant to the instructions of the Central Bank of the UAE "in conjunction with the International efforts to fight terrorism." *See* DIB 3251-3259. In addition, an Al Baraka Exchange account statement covering the year 1998 reflects five very large credits and transfer transactions in account no. xxxxxxxxxx4001 totaling exactly two million in UAE Dirham credits and two million in transfers to two separate accounts which appear to also be DIB accounts (particulars of transfers are 981.030.00 to "60029" and 1,018,970.00 to "60030"). DIB_003535. This statement evidences large, unexplained transfers through a DIB account owned by the Al Baraka Exchange in the years before the September 11th Attacks and highly unusual activity in that these large

transfers were made within an account reflecting only five total transactions over a period of twelve months.

Evidence recently produced by the Central Intelligence Agency ("CIA") pursuant to Executive Order No. 14040 indicates that Osama Bin Ladin, his Sudan-based companies, his own financial managers, financial officers of al Qaeda, and other members of al Qaeda maintained accounts at DIB. *See, e.g.*, CIA 000337 ("Bin Ladin and his companies maintained [REDACTED] accounts at DIB"); CIA 000722 ("Bin Ladin and his Sudan-based companies maintain several accounts at DIB"); CIA 000322 ("Bin Ladin, financial officer Madani Al-Tayyib, and other Al- Qa'ida members held numerous bank accounts at Dubai Islamic Bank"). The evidence further demonstrates that "*Dubai Islamic Bank* (*DIB*) has served as a key financial conduit for Al-Qa'da and for Bin Ladin's companies in Sudan" CIA 000337; *see also* CIA 000722 (DIB was "a key financial conduit for Usama Bin Ladin's Islamic Army"), and that the decision by Bin Ladin and al Qaeda to use DIB's banking and financial services to manage Bin Ladin's and the terrorist organization's money and move funds globally was not by happenstance, but rather a witting product of a longstanding collaboration between DIB and al Qaeda, established through DIB Founder and long-term Chairman Saeed Ahmed Lootah's "personal friendship" with Osama bin Ladin. *See, e.g.*, CIA000736 (Bin Ladin's use of DIB probably stems from his friendship with DIB Chair Lootah); CIA 000322 (al Qaeda chief "financial officer Madani al Tayyib, and other Al-Qa'ida members held numerous accounts at Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact within the bank, security concerns, and the bank's adherence to Islamic law"); *see also* CIA 000337 ("DIB Chairman Saeed Ahmed Lootah is a close friend of Bin

Ladin's"); CIA 000722 ("The bank's chairman, Saeed Ahmed Lootah is a member of the [Muslim Brotherhood] and a close friend of Bin Ladin's"); CIA 000735 ("Lootah is a close friend and business associate of Usama Bin Ladin's, head of the Islamic Army").

In a CIA Intelligence Report from its Office of Transnational Issues, titled "Funding Islamic Extremists Movements: The Role of Islamic Financial Institutions," the CIA assessed that, of the roughly 130 Islamic financial entities examined by the intelligence agency, Dubai Islamic Bank "stand[s] out from other Islamic financial institutions because of [it's] management's apparently *witting involvement* in the financial activities of Egypt's Gama'at al Islamiyya (IG), the Palestinian Islamic Resistance Movement (HAMAS), Usama Bin Ladin's Islamic Army, as well as numerous Muslim Brotherhood factions that are bent on establishing Islamic states." CIA 000728 (emphasis added).

The evidence from the CIA states that Bin Ladin and his associates used contacts inside select banks, including DIB, to facilitate moving funds. CIA 000326. According to the CIA, "Bin Ladin's Sudan-based companies and his financial officers opened bank accounts and letters of credit at Dubai Islamic Bank (DIB) with the active help of DIB Chairman Sa'id Ahmed Lootah." CIA 000045. Indeed, "DIB Chairman Saeed Ahmed Lootah authorize[d]—stamp[ed] and sign[ed]—some of Bin Ladin's letters of credit." CIA 000326; *see also* CIA 000426 (Saeed Ahmed Lootah's businesses cooperate with Bin Ladin's companies; Lootah "authorizes (stamps and signs) some of Bin Ladin's letters of credit"); CIA 000747 ("DIB Chairman Lootah personally authorized, stamped, and signed some letters of credit opened by Bin Ladin's companies in Khartoum through DIB").

According to evidence produced by the CIA, the Dallah Al Baraka Group "owns several banking subsidiaries used extensively by extremists" and Albaraka Bank (Sudan) is a financial

conduit used by the Islamic Army. CIA 000723. In addition, DIB Chairman Saeed Ahmed

Lootah is a Director of Albaraka Islamic Investment Bank in Bahrain and may have wielded

"influence through DIB's shareholding in Al Baraka Turkish Finance House[.]" CIA 000749.

Evidence provided by the CIA names Saeed Ahmed Lootah of DIB and Saleh Abdullah Kamel

of Dallah Al Baraka Group, both prominent Muslim Brotherhood members, as two possible

investors in Bank Al Taqwa. CIA 000757. Elsewhere in the CIA documents, Lootah is described

as having ties to Sheikh Youssef Al Qaradawi, Bank al Taqwa's advisor. CIA 000734.

**REQUEST NO. 18**:

Admit that there is no evidence that DIB had any knowledge or awareness, prior to the

September 11 Attacks, of any use of International Islamic Relief Organization's DIB account by

Al Qaeda or for Al Qaeda's purposes.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 18:**

Subject to and without waiver of each of the General Objections above, and subject to the

explanation that follows, Plaintiffs object to Request No. 18 to the extent it calls for Plaintiffs to

identify information in possession, custody, and control of the Defendants. Subject to and

without waiver of all objections, following a reasonable inquiry and diligent search, including

the evidence recently produced by the CIA pursuant to Executive Order No. 14040, the Plaintiffs

deny that there is no evidence that DIB had any knowledge or awareness, prior to the September

11 Attacks, of any use of International Islamic Relief Organization's DIB account by Al Qaeda

of for Al Qaeda purposes.

The context and focus of the meeting between U.S. and Emirati officials, in addition to

information sourced from a senior U.S. official regarding DIB's involvement with Osama bin

Laden, reported in the New York Times article "U.S. Officials Say Air for Terrorist Came

Through Two Persian Gulf Nations" by James Risen with Benjamin Weiser (produced by

Plaintiffs at PECDIB000839-842 and PECDIB000813-815 and by DIB at DIB000880-884),

indicate that someone at DIB was aware it held accounts being used by Al Qaeda or for Al

Qaeda purposes.

According to the U.S. government, "Usama Bin Ladin used the entire IIRO network for

its terrorist activities. *See* FED-PEC 220501-220502. *See also* BUR-PEC014984-14987 (stating

that "the Sharja affiliation of the Saudi 'International Islamic Relief Organization' and the

'Human Appeal International' established the 'Special Chechen Refugees Assistance Fund'

(account number xxxxxxxxxx6101 in the 'Islamic Bank of Dubai.'")); FED-PEC 202110-

212112 (August 3, 2006 Executive Order designation of the IIRO branch offices in the

Philippines and Indonesia and the Executive Director of the IIRO's Eastern Province Branch,

Abd al Hamd Sulaiman al Mujil, "for facilitating fundraising for al Qaida and affiliated terrorist

groups.").

Evidence recently produced by the Central Intelligence Agency ("CIA") pursuant to

Executive Order No. 14040 indicates that Osama Bin Ladin, his Sudan-based companies, his

own financial managers, financial officers of al Qaeda, and other members of al Qaeda

maintained accounts at DIB. *See, e.g.*, CIA 000337 ("Bin Ladin and his companies maintained

[REDACTED] accounts at DIB"); CIA 000722 ("Bin Ladin and his Sudan-based companies

maintain several accounts at DIB"); CIA 000322 ("Bin Ladin, financial officer Madani Al-

Tayyib, and other Al- Qa'ida members held numerous bank accounts at Dubai Islamic Bank").

The evidence further demonstrates that "*Dubai Islamic Bank* (*DIB*) has served as a key financial

conduit for Al-Qa'da and for Bin Ladin's companies in Sudan" CIA 000337; *see also* CIA

000722 (DIB was "a key financial conduit for Usama Bin Ladin's Islamic Army"), and that the

decision by Bin Ladin and al Qaeda to use DIB's banking and financial services to manage Bin

Ladin's and the terrorist organization's money and move funds globally was not by

happenstance, but rather a witting product of a longstanding collaboration between DIB and al

Qaeda, established through DIB Founder and long-term Chairman Saeed Ahmed Lootah's

"personal friendship" with Osama bin Ladin. *See, e.g.*, CIA000736 (Bin Ladin's use of DIB

probably stems from his friendship with DIB Chair Lootah); CIA 000322 (al Qaeda chief

"financial officer Madani al Tayyib, and other Al-Qa'ida members held numerous accounts at

Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman,

Saeed Ahmed Lootah"); CIA 000322 (al Qaeda's "choice of financial institutions has been based

on personal contact within the bank, security concerns, and the bank's adherence to Islamic

law"); *see also* CIA 000337 ("DIB Chairman Saeed Ahmed Lootah is a close friend of Bin

Ladin's"); CIA 000722 ("The bank's chairman, Saeed Ahmed Lootah is a member of the

[Muslim Brotherhood] and a close friend of Bin Ladin's"); CIA 000735 ("Lootah is a close

friend and business associate of Usama Bin Ladin's, head of the Islamic Army").

In a CIA Intelligence Report from its Office of Transnational Issues, titled "Funding

Islamic Extremists Movements: The Role of Islamic Financial Institutions," the CIA assessed

that, of the roughly 130 Islamic financial entities examined by the intelligence agency, Dubai

Islamic Bank "stand[s] out from other Islamic financial institutions because of [it's]

management's apparently *witting involvement* in the financial activities of Egypt's Gama'at al

Islamiyya (IG), the Palestinian Islamic Resistance Movement (HAMAS), Usama Bin Ladin's

Islamic Army, as well as numerous Muslim Brotherhood factions that are bent on establishing

Islamic states." CIA 000728 (emphasis added).

The evidence from the CIA states that Bin Ladin and his associates used contacts inside select banks, including DIB, to facilitate moving funds. CIA 000326. According to the CIA, "Bin Ladin's Sudan-based companies and his financial officers opened bank accounts and letters of credit at Dubai Islamic Bank (DIB) with the active help of DIB Chairman Sa'id Ahmed Lootah." CIA 000045. Indeed, "DIB Chairman Saeed Ahmed Lootah authorize[d]—stamp[ed] and sign[ed]—some of Bin Ladin's letters of credit." CIA 000326; *see also* CIA 000426 (Saeed Ahmed Lootah's businesses cooperate with Bin Ladin's companies; Lootah "authorizes (stamps and signs) some of Bin Ladin's letters of credit"); CIA 000747 ("DIB Chairman Lootah personally authorized, stamped, and signed some letters of credit opened by Bin Ladin's companies in Khartoum through DIB").

According to a January 11, 1999 CIA Intelligence Report from the Office of Transnational Issues, all-source intelligence suggests that the IIRO is among the greatest concerns as a funding conduit for al Qaeda. In that Report, the CIA states that IIRO is among the entities with the "strongest links to Usama [Bin Ladin]" and that it funded a military camp associated with Usama Bin Ladin. CIA 000808. According to an April 9, 1999 CIA Intelligence Report, IIRO provided terrorists with funding and cover employment, documentation, and training. CIA 000213. A formerly top-secret November 17, 1998 CIA report stated that Bin Ladin and al Qaeda probably received Gulf funding diverted from offices of Islamic NGOs, including IIRO, Muwafaq Foundation, and Al Haramain, among others. CIA 000330. In the years before the September 11th Attacks, IIRO maintained an account at DIB during a period when high-level officials of the organization were facilitating fundraising for al Qaeda and affiliated terrorist groups.

In addition, DIB and Lootah had connections to several Islamic NGOs that funded militant causes. One principal connection was through DIB board member Sheikh Yousif Jassim Al Haji, Chairman of the Kuwait-based International Islamic Charities Organization (IICO) that sent "funds [REDACTED] to the Peshawar, Pakistan-based Maktab-ul Khedamat, an NGO that coordinated activities of Afghanis and supported the Bosnian Mujahaddin." CIA 000737. DIB was also used by such humanitarian NGOs as Human Appeal International, an alleged financial conduit for HAMAS, and the Dar al-Birr Society which has financed the Bosnian Mujaheddin. CIA 000722. The CIA's assessments indicate that DIB's management was not only aware but was active in facilitating financial transactions for terrorist groups and organizations proceeding under the guise of humanitarian groups that funded terrorist groups.

**REQUEST NO. 19:**

Admit that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any use of Seedi Al Madani Al-Ghazi Mustafa Al Tayyib's DIB accounts by Al Qaeda or for Al Qaeda's purposes.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 19:**

Subject to and without waiver of each of the General Objections above, and subject to the explanation that follows, Plaintiffs object to Request No. 19 to the extent it calls for Plaintiffs to identify information in possession, custody, and control of the Defendants. Subject to and without waiver of all objections, following a reasonable inquiry and diligent search, including the evidence recently produced by the CIA pursuant to Executive Order No. 14040, the Plaintiffs deny that there is no evidence that DIB had any knowledge or awareness, prior to the September 11 Attacks, of any use of Seedi Al Madani Al-Ghazi Mustafa Al Tayyib's DIB account by Al Qaeda of for Al Qaeda purposes.

The context and focus of the meeting between U.S. and Emirati officials, in addition to information sourced from a senior U.S. official regarding DIB's involvement with Osama bin Laden, reported in the New York Times article "U.S. Officials Say Air for Terrorist Came Through Two Persian Gulf Nations" by James Risen with Benjamin Weiser (produced by Plaintiffs at PECDIB000839-842 and PECDIB000813-815 and by DIB at DIB000880-884), indicate that someone at DIB was aware it held accounts being used by Al Qaeda or for Al Qaeda purposes.

Consistent with the principle that money is fungible, and recognizing that al Qaeda relied on its entire infrastructure in order to plan and carry out the 9/11 attacks, evidence exists to indicate that the funds in a DIB account of Tayyib were available for use in the event that they would have been needed to fund al Qaeda's operations. Tayyib, a "key financial aid to Osama Bin Ladin" was detained by Saudi Arabia in 1997 by which time, the U.S. intelligence community was already familiar with his status as financial overseer for al Qaeda during the organization's operations in Sudan. *See* Risen, James. "State of War: The Secret History of the C.I.A. and the Bush Administration," (2006). p.181.

Evidence recently produced by the Central Intelligence Agency ("CIA") pursuant to Executive Order No. 14040 indicates that Osama Bin Ladin, his Sudan-based companies, his own financial managers, financial officers of al Qaeda, and other members of al Qaeda maintained accounts at DIB. *See, e.g.*, CIA 000337 ("Bin Ladin and his companies maintained [REDACTED] accounts at DIB"); CIA 000722 ("Bin Ladin and his Sudan-based companies maintain several accounts at DIB"); CIA 000322 ("Bin Ladin, financial officer Madani Al-Tayyib, and other Al- Qa'ida members held numerous bank accounts at Dubai Islamic Bank"). The evidence further demonstrates that "*Dubai Islamic Bank* (*DIB*) has served as a key financial

conduit for Al-Qa'da and for Bin Ladin's companies in Sudan" CIA 000337; *see also* CIA
000722 (DIB was "a key financial conduit for Usama Bin Ladin's Islamic Army"), and that the
decision by Bin Ladin and al Qaeda to use DIB's banking and financial services to manage Bin
Ladin's and the terrorist organization's money and move funds globally was not by
happenstance, but rather a witting product of a longstanding collaboration between DIB and al
Qaeda, established through DIB Founder and long-term Chairman Saeed Ahmed Lootah's
"personal friendship" with Osama bin Ladin. *See, e.g.*, CIA000736 (Bin Ladin's use of DIB
probably stems from his friendship with DIB Chair Lootah); CIA 000322 (al Qaeda chief
"financial officer Madani al Tayyib, and other Al-Qa'ida members held numerous accounts at
Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman,
Saeed Ahmed Lootah"); CIA 000322 (al Qaeda's "choice of financial institutions has been based
on personal contact within the bank, security concerns, and the bank's adherence to Islamic
law"); *see also* CIA 000337 ("DIB Chairman Saeed Ahmed Lootah is a close friend of Bin
Ladin's"); CIA 000722 ("The bank's chairman, Saeed Ahmed Lootah is a member of the
[Muslim Brotherhood] and a close friend of Bin Ladin's"); CIA 000735 ("Lootah is a close
friend and business associate of Usama Bin Ladin's, head of the Islamic Army").

        In a CIA Intelligence Report from its Office of Transnational Issues, titled "Funding
Islamic Extremists Movements: The Role of Islamic Financial Institutions," the CIA assessed
that, of the roughly 130 Islamic financial entities examined by the intelligence agency, Dubai
Islamic Bank "stand[s] out from other Islamic financial institutions because of [it's]
management's apparently *witting involvement* in the financial activities of Egypt's Gama'at al
Islamiyya (IG), the Palestinian Islamic Resistance Movement (HAMAS), Usama Bin Ladin's

Islamic Army, as well as numerous Muslim Brotherhood factions that are bent on establishing Islamic states." CIA 000728 (emphasis added).

The evidence from the CIA states that Bin Ladin and his associates used contacts inside select banks, including DIB, to facilitate moving funds. CIA 000326. According to the CIA, "Bin Ladin's Sudan-based companies and his financial officers opened bank accounts and letters of credit at Dubai Islamic Bank (DIB) with the active help of DIB Chairman Sa'id Ahmed Lootah." CIA 000045. Indeed, "DIB Chairman Saeed Ahmed Lootah authorize[d]—stamp[ed] and sign[ed]—some of Bin Ladin's letters of credit." CIA 000326; *see also* CIA 000426 (Saeed Ahmed Lootah's businesses cooperate with Bin Ladin's companies; Lootah "authorizes (stamps and signs) some of Bin Ladin's letters of credit"); CIA 000747 ("DIB Chairman Lootah personally authorized, stamped, and signed some letters of credit opened by Bin Ladin's companies in Khartoum through DIB").

Al Tayyib was a financial officer for Bin Ladin and held numerous accounts at DIB because of Bin Ladin's personal friendship with DIB Chairman, Saeed Ahmed Lootah. CIA 000322. DIB and Lootah had connections to several Islamic NGOs that funded militant causes. One principal connection was through DIB board member Sheikh Yousif Jassim Al Haji, Chairman of the Kuwait-based International Islamic Charities Organization (IICO) that sent "funds [REDACTED] to the Peshawar, Pakistan-based Maktab-ul Khedamat, an NGO that coordinated activities of Afghanis and supported the Bosnian Mujahaddin." CIA 000737. Lootah was a member of the Muslim Brotherhood and DIB was a key financial conduit for Bin Ladin's Islamic Army. CIA 000722. The Islamic Army was a pan-Islamic militant group established during the Afghan war with a goal of bringing about the return of the Caliphate. CIA 000735. Bin Ladin's Sudan-based companies and his financial officers opened bank accounts and letters

of credit at DIB with the active help of Lootah. CIA 000045. Lootah was anti-Western—ascribing to various conspiracy theories regarding the intentions of the United States and other Western countries to control the Islamic world. He was known for deep religious conservatism and strong support—financial and otherwise—for Islamic political causes.

Lootah also had ties to Bank al Taqwa advisor Sheikh Yousef Al Qaradawi and National Islamic Front leader Hassan al-Turabi. CIA 000734. Qaradawi was a radical Qatar-based Muslim Brotherhood member whom Lootah hosted at DIB headquarters sometime in 1995. CIA 000735. Al Tayyib traveled frequently and had bank accounts all over the world. CIA 000363. Al Tayyib supervised Abu Khalifa's handling of Bin Ladin's money in the Gulf and was known to have requested advice on the best places to put Bin Ladin's money in Greece and Turkey. CIA 000426. Al Tayyib was Bin Ladin's senior financial officer until 1997 and headed the financial and administrative committee, which supervised al Qaeda's overall financials and audited al Qaeda members. CIA 000510. Most foreign accounts were in Tayyib's names. CIA 000444. Al Qaeda members held numerous accounts at DIB because of Bin Ladin's personal friendship with DIB Chairman, Saeed Ahmed Lootah. CIA 000322. Lootah was a close friend and business associate of Bin Ladin. CIA 000735. Tayyib was also known as Abu Al-Fadl. CIA 000363.

Jamal al Fadl admitted a relationship between Tayyib and Lootah. *See* FBI 302 Interviews with Cooperating Witness Jamal al Fadl, SNY101-0092 - SNY101-0105 [ECF No. 2973-6]. Lootah was a founder, shareholder, and former member of DIB. Al-Fadl further indicated that (1) "Al-Tayyib became a secretary (in a high ranking manner) in al-Qaida and was now in charge of most of Osama Bin Ladin's money, including the money located outside of Sudan;" (2) "Al-Tayyib controlled and monitored Osama Bin Ladin's money and kept portions of the money in banks under his (Al-Tayyib) own name and in other names;" (3) "Al-Tayyib

basically became the man in charge of most of the finances for the Islamic Army and attended

nightly meetings with Osama Bin Ladin to discuss monetary issues;" (4) "Osama Bin Ladin

would often designate separate accounts for different terrorist groups" and "al-Tayyib controlled

the flow of money to the groups on behalf of Osama Bin Ladin;" and (5) "Money donated to

Islamic causes, i.e. from wealthy individuals in the Gulf area, money collected in Europe, and

money collected from groups, was sent to Osama Bin Ladin…. This money came to Osama Bin

Ladin and was subsequently controlled by al-Tayyib." Al Fadl's admission infers that Lootah's

relationship with Tayyib, during the years before the September 11th Attacks, was significant

regarding the use of DIB by Tayyib in funding Bin Ladin's operations during the period before

the September 11th Attacks when Bin Ladin was operating in Sudan and funding various terrorist

groups. Moreover, his DIB accounts were in existence during the period Tayyib was in control of

Bin Ladin's affairs.

**REQUEST NO. 20:**

Admit that there is no evidence that DIB had any knowledge or awareness, prior to the

September 11 Attacks, of any use of Ali Saleh Mohammad Kahla Al-Marri's DIB account by Al

Qaeda or for Al Qaeda's purposes.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 20:**

Subject to and without waiver of each of the General Objections above, and subject to the

explanation that follows, Plaintiffs object to Request No. 20 to the extent it calls for Plaintiffs to

identify information in possession, custody, and control of the Defendants. Subject to and

without waiver of all objections, following a reasonable inquiry and diligent search, including

the evidence recently produced by the CIA pursuant to Executive Order No. 14040, the Plaintiffs

deny that there is no evidence that DIB had any knowledge or awareness, prior to the September

11 Attacks, of any use of Ali Saleh Mohammad Kahla Al-Marri's DIB account by Al Qaeda of for Al Qaeda purposes.

The context and focus of the meeting between U.S. and Emirati officials, in addition to information sourced from a senior U.S. official regarding DIB's involvement with Osama bin Laden, reported in the New York Times article "U.S. Officials Say Air for Terrorist Came Through Two Persian Gulf Nations" by James Risen with Benjamin Weiser (produced by Plaintiffs at PECDIB000839-842 and PECDIB000813-815 and by DIB at DIB000880-884), indicate that someone at DIB was aware it held accounts being used by Al Qaeda or for Al Qaeda purposes.

Consistent with the principle that money is fungible, and recognizing that al Qaeda relied on its entire infrastructure in order to plan and carry out the 9/11 attacks, evidence exists to indicate that funds in a DIB account of Ali Saleh Mohammad Kahla Al-Marri were available in the account for use in the event that they would have been needed to fund al Qaeda's operations. DIB Account No. xx-xxxxxxxx-580-7 belonged to al-Marri and was evidently opened just before the September 11th Attacks on August 18, 2001 with statements provided up to March 7, 2008. *See* DIB_003380 to DIB_003392. Marri was an al Qaeda member who attended training camps between 1998 and 2001 and was instructed by Khalid Sheikh Mohammed to enter the United States no later than September 10, 2001. Before traveling to the U.S., al Marri went to Dubai to meet with Mustafa Hawsawi pursuant to Mohammed's instructions; Hawsawi provided al-Marri with $10,000 for his mission. *See, e.g.,* Ali Saleh Kahlah al-Marri Plea Agreement and Stipulation of Facts [ECF 2973-11]. Al-Marri had access to funds in his DIB account during the period in which he was operating on the instructions of Khalid Sheikh Mohammed and the

purpose of those funds was to further the operations surrounding the September 11th Attacks in which al-Marri was a participant as a member of al Qaeda.

Evidence recently produced by the Central Intelligence Agency ("CIA") pursuant to Executive Order No. 14040 indicates that Osama Bin Ladin, his Sudan-based companies, his own financial managers, financial officers of al Qaeda, and other members of al Qaeda maintained accounts at DIB. *See, e.g.*, CIA 000337 ("Bin Ladin and his companies maintained [REDACTED] accounts at DIB"); CIA 000722 ("Bin Ladin and his Sudan-based companies maintain several accounts at DIB"); CIA 000322 ("Bin Ladin, financial officer Madani Al-Tayyib, and other Al- Qa'ida members held numerous bank accounts at Dubai Islamic Bank"). The evidence further demonstrates that "*Dubai Islamic Bank (DIB)* has served as a key financial conduit for Al-Qa'da and for Bin Ladin's companies in Sudan" CIA 000337; *see also* CIA 000722 (DIB was "a key financial conduit for Usama Bin Ladin's Islamic Army"), and that the decision by Bin Ladin and al Qaeda to use DIB's banking and financial services to manage Bin Ladin's and the terrorist organization's money and move funds globally was not by happenstance, but rather a witting product of a longstanding collaboration between DIB and al Qaeda, established through DIB Founder and long-term Chairman Saeed Ahmed Lootah's "personal friendship" with Osama bin Ladin. *See, e.g.*, CIA000736 (Bin Ladin's use of DIB probably stems from his friendship with DIB Chair Lootah); CIA 000322 (al Qaeda chief "financial officer Madani al Tayyib, and other Al-Qa'ida members held numerous accounts at Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact within the bank, security concerns, and the bank's adherence to Islamic law"); *see also* CIA 000337 ("DIB Chairman Saeed Ahmed Lootah is a close friend of Bin

Ladin's"); CIA 000722 ("The bank's chairman, Saeed Ahmed Lootah is a member of the [Muslim Brotherhood] and a close friend of Bin Ladin's"); CIA 000735 ("Lootah is a close friend and business associate of Usama Bin Ladin's, head of the Islamic Army").

In a CIA Intelligence Report from its Office of Transnational Issues, titled "Funding Islamic Extremists Movements: The Role of Islamic Financial Institutions," the CIA assessed that, of the roughly 130 Islamic financial entities examined by the intelligence agency, Dubai Islamic Bank "stand[s] out from other Islamic financial institutions because of [it's] management's apparently *witting involvement* in the financial activities of Egypt's Gama'at al Islamiyya (IG), the Palestinian Islamic Resistance Movement (HAMAS), Usama Bin Ladin's Islamic Army, as well as numerous Muslim Brotherhood factions that are bent on establishing Islamic states." CIA 000728 (emphasis added).

The evidence from the CIA states that Bin Ladin and his associates used contacts inside select banks, including DIB, to facilitate moving funds. CIA 000326. According to the CIA, "Bin Ladin's Sudan-based companies and his financial officers opened bank accounts and letters of credit at Dubai Islamic Bank (DIB) with the active help of DIB Chairman Sa'id Ahmed Lootah." CIA 000045. Indeed, "DIB Chairman Saeed Ahmed Lootah authorize[d]—stamp[ed] and sign[ed]—some of Bin Ladin's letters of credit." CIA 000326; *see also* CIA 000426 (Saeed Ahmed Lootah's businesses cooperate with Bin Ladin's companies; Lootah "authorizes (stamps and signs) some of Bin Ladin's letters of credit"); CIA 000747 ("DIB Chairman Lootah personally authorized, stamped, and signed some letters of credit opened by Bin Ladin's companies in Khartoum through DIB").

Evidence produced by the CIA indicates that Al-Marri's decision to use an account at DIB to support his activities was the product of a longstanding collaboration between DIB and al

Qaeda, established based on DIB Founder Saeed Lootah's "personal friendship" with Osama bin Ladin. CIA 000322 (al Qaeda's "choice of financial institutions has been based on personal contact with the bank…"; al Qaeda chief "financial officer Madani al Tayyib, and other Al-Qa'ida financial members held numerous bank accounts at Dubai Islamic Bank because of Bin Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah"); CIA 000326 (Bin Ladin and his associates used contacts inside select banks to facilitate moving funds).

**REQUEST NO. 21:**

Admit that the document produced at BUR-PEC014984-14987 does not contain the phrase or mention in any way an "Islamic Bank of Dubai."

      **SUPPLEMENTAL RESPONSE TO REQUEST NO. 21:**

      Subject to and without waiver of each of the General Objections above, and subject to the explanation that follows, Plaintiffs admit that the document produced at BUR-PEC014984-14987 does not contain the phrase or mention in any way an "Islamic Bank of Dubai"; however, Plaintiffs deny no such document exists and attach hereto a document inadvertently not produced. Previous references to BUR-PEC014984-14987 intended to cite the attached document (Exhibit 1). As a courtesy, Plaintiffs attach a certified translation of same (Exhibit 2).

**REQUEST NO. 22:**

Admit that the document produced at BUR-PEC014984-14987 does not contain the phrase or mention in any way an account number at any "Islamic Bank of Dubai."

      **SUPPLEMENTAL RESPONSE TO REQUEST NO. 22:**

      Subject to and without waiver of each of the General Objections above, and subject to the explanation that follows, Plaintiffs admit that the document produced at BUR-PEC014984-14987 does not contain the phrase or mention in any way an account number at any "Islamic

\*       \*       \*       \*

[pages omitted]

DATED:  April 23, 2022            Respectfully,

MOTLEY RICE LLC                    ANDERSON KILL

By: /s/_____              By: /s/_____
    Jodi Westbrook Flowers          Jerry S. Goldman
    Donald A. Migliori              Bruce E. Strong
    Robert T. Haefele               ANDERSON KILL
    MOTLEY RICE LLC                 1251 Avenue of the Americas
    28 Bridgeside Boulevard         New York, NY 10020
    Mount Pleasant, SC 29465        Tel: (212) 278-1000
    Tel.: (843) 216-9184            Fax: (212) 278-1733
    Email: jflowers@motleyrice.com  Email: jgoldman@andersonkill.com
    Email: dmigliori@motleyrice.com Email: bstrong@andersonkill.com
    Email: rhaefele@motleyrice.com

*For the Plaintiffs' Executive Committee for Personal Injury and Wrongful Death Plaintiffs*

COZEN O'CONNOR

By: /s/_____
    Sean P. Carter
    Scott Tarbutton
    COZEN O'CONNOR
    One Liberty Place
    1650 Market Street, Suite 2800
    Philadelphia, Pennsylvania 19103
    Tel.: (215) 665-2105
    Email: scarter@cozen.com
    Email: starbutton@cozen.com

*For the Plaintiffs' Executive Committee
for Commercial Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | ) <br> ) <br> ) <br> ) 03 MDL 1570 (GBD)(SN) <br> ) ECF Case <br> ) <br> ) <br> ) |

This document relates to:
*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-cv-06978
*Thomas Burnett, Sr., at al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03-cv-09849
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka, et al.*, Case No. 04-cv-01923
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04-cv-05970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, Case No. 04-cv-07065
*Euro Brokers, Inc., et al. v. Al Baraka, et al.*, Case No. 04-cv-07279

## <u>CERTIFICATE OF SERVICE</u>

I, Robert T. Haefele, hereby certify that I have this 23rd day of April, 2022 caused to be served a

true and correct copy of the foregoing document upon the following counsel for the named

defendants in the above-captioned actions by sending the documents by electronic means to:

| | |
|---|---|
| Steven T. Cottreau | Juan P. Morillo |
| Gabrielle Pritsker | Quinn Emanuel Urquhart & Sullivan LLP |
| Jones Day | 777 Sixth St. NW |
| 51 Louisiana Ave., NW | Washington, DC 20001 |
| Washington, DC 20001 | Tel: (202) 538-8174 |
| Tel: (202) 879-5572 | Email: juanmorillo@quinnemanuel.com |
| Email: scottreau@jonesday.com | |
| Email: gpritsker@jonesday.com | |

*Counsel for Defendant Dubai Islamic Bank*

Alan Kabat
Bernabei & Kabat PLLC
1400 16th St. NW #500
Washington, DC 20036-2223
Tel: (202) 745-1942
Fax: (202) 745-2627
Email: kabat@bernabeiPLLC.com

*Defendants' Liaison Counsel in 03-MDL-1570*

88

*--and—*

I have, also, this 23ʳᵈ day of April, 2022 caused to be served a true and correct copy of the foregoing document upon the following counsel for other plaintiffs in the multidistrict litigation by sending the documents by electronic means to:

James P. Kreindler
Andrew J. Maloney, III
Kreindler & Kreindler, LLP
750 Third Avenue
New York, NY 10017
Tel: (212) 973-3440
Fax: (212) 972-9432
Email: jkreindler@kreindler.com
Email: amaloney@kreindler.com

Edward M. Pinter
Catherine B. Altier
Ford Marrin Esposito
Witmeyer & Gleser, L.L.P.
Wall Street Plaza
New York, NY 10005
Tel:  (212)-269-4900
Fax:  (212) 344-4294
Email: cbaltier@FMEW.com
Email: empinter@FMEW.com

*Counsel for other Plaintiffs in MDL 1570*

/s/ Robert T. Haefele
Robert T. Haefele