IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Case No. 1:03-md-01570-GBD-SN |
| *This document relates to:* *Ashton, et al. v. Al Qaeda, et al.*, No. 02-cv-6977; *Federal Ins. Co., et al. v. Al Qaida, et al.*, No. 03-cv-6978; *Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03-cv-9849; *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.*, No. 04-cv-1922; *Continental Casualty Co., et al. v. Kingdom of Saudi Arabia, et al.*, No. 04-cv-5970; *O'Neill, et al. v. Republic of the Sudan, et al.*, No. 18-cv-12114; *Aronow, et al. v. Republic of Sudan*, No. 20-cv-07733; *Betru, et al. v. The Republic of Sudan*, No. 20-cv-10615; *Parker, et al. v. The Republic of the Sudan*, No. 20-cv-10657; and *Nolan, et al. v. The Republic of the Sudan*, No. 20-cv-10720. | |

**THE REPUBLIC OF THE SUDAN'S OPPOSITION TO THE
CONSOLIDATED-AMENDED-COMPLAINT PLAINTIFFS' MOTION
FOR PARTIAL RECONSIDERATION OF THE COURT'S
<u>MAY 3, 2022 REPORT AND RECOMMENDATION (ECF NO. 7942)</u>**

**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005

June 24, 2022                                   *Counsel for the Republic of the Sudan*

## TABLE OF CONTENTS

ARGUMENT ...................................................................................................................................1

    A.    Point 3: This Court Lacks Subject-Matter Jurisdiction Over this Action Under 28 U.S.C. § 1605(a)(5)..................................................................................2

    B.    Point 4: Section 1605A(d) Does Not Provide Subject-Matter Jurisdiction Over Corporate Plaintiffs' Claims and Corporate Plaintiffs Are Not U.S. Nationals for Purposes of § 1605A(a) ......................................................................4

    C.    Points 1 and 2: Plaintiffs' Arguments Do Not Compel a Different Conclusion by the Court ........................................................................................9

CONCLUSION..............................................................................................................................10

## TABLE OF AUTHORITIES

*Anglo Am. Ins. Group v. CalFed, Inc.*,
    940 F. Supp. 554 (S.D.N.Y. 1996)..................................................................................1

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989)........................................................................................................4

*Bob Jones Univ. v. Simon*,
    416 U.S. 725 (1974)........................................................................................................7

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
    137 S. Ct. 1312 (2017)....................................................................................................5

*Broidy Capital Management, LLC v. State of Qatar*,
    982 F.3d 582 (9th Cir. 2020) ..........................................................................................4

*Cedric Kushner Promotions Ltd. v. King*,
    533 U.S. 158 (2001)........................................................................................................8

*Democratic Nat'l Comm. v. Russian Fed'n*,
    392 F. Supp. 3d 410 (S.D.N.Y. 2019).............................................................................3

*Devil's Advocate, LLC v. Zurich Am. Ins. Co.*,
    666 Fed. App'x 256 (4th Cir. 2016) ...............................................................................9

*Doe v. Bin Laden*,
    663 F.3d 64 (2d Cir. 2010)..........................................................................................3, 4

*Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran*,
    313 F. Supp. 3d 50 (D.D.C. 2018) ..................................................................................6

*In re Terrorist Attacks on Sept. 11, 2001*,
    No. 03-md-1570, 2016 WL 11270527 (S.D.N.Y. Oct. 24, 2016) ...................................6

*In re Terrorist Attacks on Sept. 11, 2001*,
    No. 03-md-1570, 2015 WL 9468813 (S.D.N.Y. Dec. 28, 2015).....................................6

*Jerez v. Republic of Cuba*,
    775 F.3d 419 (D.C. Cir. 2014) ........................................................................................4

*Kansas v. Garcia*,
    140 S. Ct. 791 (2020)......................................................................................................8

*Letelier v. Republic of Chile*,
    488 F. Supp. 665 (D.D.C. 1980) .....................................................................................4

*Linde v. Arab Bank, PLC*,
    882 F.3d 314 (2d Cir. 2018)............................................................................................3

*Liu v. Republic of China*,
 892 F.2d 1419 (9th Cir. 1989) ..................................................................................................4

*Mohammadi v. Islamic Republic of Iran*,
 782 F.3d 9 (D.C. Cir. 2015) .....................................................................................................6

*O'Neill v. Saudi Joint Relief Comm.*
 *(In re Terrorist Attacks on Sept. 11, 2001)*,
 714 F.3d 109 (2d Cir. 2013) ................................................................................................2, 3

*Rafter v. Liddle*,
 288 Fed. App'x 768 (2d Cir. 2008) ..........................................................................................1

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi.*
 *v. Bank of N.Y. Mellon*,
 775 F.3d 154 (2d Cir. 2014) .....................................................................................................2

*Roeder v. Islamic Republic of Iran*,
 742 F. Supp. 2d 1 (D.D.C. 2010) .............................................................................................6

*Rubin v. Islamic Republic of Iran*,
 138 S. Ct. 816 (2018) ...............................................................................................................5

*Schonberger v. Serchuk*,
 742 F. Supp. 109 (S.D.N.Y. 1990) ......................................................................................1, 2

*Schoolcraft v. City of New York*,
 298 F.R.D. 134 (S.D.N.Y. 2014) ............................................................................................1,

*Swiss Nat'l Ins. Co. v. Miller*,
 267 U.S. 42 (1925) ................................................................................................................7, 8

*U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of America*, *Inc.*,
 508 U.S. 439 (1993) .................................................................................................................5

*United States v. Heirs of Boisdore*,
 49 U.S. 113 (1849) ...................................................................................................................5

### STATUTES

8 U.S.C. § 1101 .................................................................................................................................8

8 U.S.C. § 1182 .................................................................................................................................8

8 U.S.C. § 1408 .................................................................................................................................8

28 U.S.C. § 1605 ......................................................................................................................2, 3, 4

28 U.S.C. § 1605A .................................................................................................................. *passim*

28 U.S.C. § 1610 ............................................................................................................................6

**RULES**

Fed. R. Civ. P. 15 ..........................................................................................................................9

Local Civ. R. 6.3 ...........................................................................................................................1

Sudan fundamentally disagrees with much of the Court's Report & Recommendation (ECF No. 7942), but the points of Sudan's disagreements — including as to the Court's conclusions regarding jurisdictional causation and subject-matter jurisdiction generally — are more appropriately made through objections addressed to District Judge Daniels, not through a motion for reconsideration under Local Civil Rule 6.3. With respect to the Consolidated-Amended-Complaint Plaintiffs' motion for reconsideration, this Court should deny Plaintiffs' motion as to Points 3 and 4, both of which are improper arguments on a motion for reconsideration and otherwise meritless. As to Points 1 and 2, Plaintiffs' observations as to certain facts appear to be correct, but nevertheless do not compel a different conclusion by the Court.

## ARGUMENT

Reconsideration under Local Civil Rule 6.3 is warranted only to bring to the Court's attention to "the matters or controlling decisions which counsel believes the Court has overlooked." The movant must demonstrate that there is a "need to correct a clear error" or the Court "overlooked . . . material facts that were before it on the original motion, and that 'might materially have influenced its earlier decision.'" *Schoolcraft v. City of New York*, 298 F.R.D. 134, 136 (S.D.N.Y. 2014) (quoting *Anglo Am. Ins. Group v. CalFed, Inc.*, 940 F. Supp. 554, 557 (S.D.N.Y. 1996)). On a motion for reconsideration, the movant "may neither repeat 'arguments already briefed, considered and decided,' nor 'advance new facts, issues or arguments not previously presented to the court.'" *Schoolcraft*, 298 F.R.D. at 137 (quoting *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990)). Indeed, "[m]otions for reconsideration 'are not vehicles for taking a second bite at the apple,'" and Local Civil Rule 6.3 must be "narrowly construe[d] and strictly appl[ied]." *Schoolcraft*, 298 F.R.D. at 137 (quoting *Rafter v. Liddle*, 288 Fed. App'x 768, 769 (2d Cir. 2008)).

A.  **Point 3: This Court Lacks Subject-Matter Jurisdiction Over this Action Under 28 U.S.C. § 1605(a)(5)**

With respect to Point 3, as this Court observed in its Report & Recommendation (R&R 35), Plaintiffs "d[id] not seriously contest" that the Court lacked subject-matter jurisdiction under the noncommercial-tort exception in § 1605(a)(5). Indeed, in their opposition to Sudan's motion to dismiss, Plaintiffs chose to address the issue only in a footnote. *See* Opp. 8 n.4, ECF No. 6649; *see also Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 168 (2d Cir. 2014) (holding arguments made in footnotes are generally waived). Plaintiffs now use this motion as an improper vehicle to make a brand new argument that should have been raised, if at all, in opposition to Sudan's motion to dismiss. As Plaintiffs themselves recognize, "[r]econsideration should not be used to . . . 'advance new facts, issues or arguments not previously presented to the Court.'" Mot. 1 (quoting *Schonberger*, 742 F. Supp. at 119). This Court should therefore reject Plaintiffs' argument for that reason alone.

Plaintiffs' argument should be rejected in any event because it is meritless. This Court lacks subject-matter jurisdiction under § 1605(a)(5) unless *Sudan* committed *the entire tort* in the United States, and Plaintiffs allege no tortious conduct undertaken by Sudan in the United States. *See* R&R 35 ("Plaintiffs cannot invoke § 1605(a)(5) because they do not allege that the entire tort took place in the United States."); *see also O'Neill v. Saudi Joint Relief Comm. (In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 109, 116 (2d Cir. 2013) (holding court lacked subject-matter jurisdiction under § 1605(a)(5) because "plaintiffs do not claim that the 'torts' allegedly committed by the [defendants] occurred in the United States").

Plaintiffs rely on the Report's conclusions on the sufficiency of Plaintiffs' allegations for conspiracy and aiding and abetting (conclusions with which Sudan disagrees) in an attempt to shoehorn in their entirely new § 1605(a)(5) argument. Even if the Report's conclusions were

–2–

correct — they are not — the conclusions would not provide a basis for subject-matter jurisdiction over this action under § 1605(a)(5). As this Court correctly observed in its Report, the Second Circuit in *O'Neill* adopted the "'entire tort' rule," which requires the sovereign defendant to have committed a tortious act in the United States for the jurisdictional requirements of § 1605(a)(5) to be met. R&R 35; *see also O'Neill*, 714 F.3d at 116-17; *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 428 (S.D.N.Y. 2019) (observing that "[t]he DNC has cited no similar case where the noncommercial tort exception was applied when a portion of the conduct of the foreign government occurred outside the United States"). In *O'Neill*, the Second Circuit found no jurisdiction under § 1605(a)(5) in an action brought against the Saudi Joint Relief Committee and the Saudi Red Crescent Society for alleged material support for the 9/11 Attacks because "*all of the tortious conduct* allegedly committed by [defendants] occurred abroad." *O'Neill*, 714 F.3d at 117. So too here, as this Court recognized in its Report (at 35), Sudan's purported "tortious" acts, i.e., its alleged material support to al Qaeda, occurred abroad.

Plaintiffs do not even address the Second Circuit's holding in *O'Neill*. Plaintiffs instead rely on a passing comment in the Second Circuit's decision in *Doe v. Bin Laden*, 663 F.3d 64 (2d Cir. 2010), which predated the Second Circuit's decision in *O'Neill*. Contrary to Plaintiffs' contention (Mot. 5-6), *Doe* did not come to any "conclusions regarding § 1605(a)(5) jurisdiction in the conspiracy context." Rather, the Second Circuit stated: "Let us be clear: we make no judgment as to whether the allegations in the complaint are sufficient to state a claim or even to provide jurisdiction." *Doe*, 663 F.3d at 70-71. *Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018), is not helpful to Plaintiffs either (Mot. 5), because it did not consider the exception to immunity in § 1605(a)(5), let alone the entire-tort rule. *See Linde*, 882 F.3d at 318 (considering propriety of jury instructions relating to the ATA's "terrorism element").

Plaintiffs' reliance on *Letelier v. Republic of Chile*, 488 F. Supp. 665 (D.D.C. 1980), and *Liu v. Republic of China*, 892 F.2d 1419 (9th Cir. 1989), is also misplaced. As an initial matter, *Doe* referenced *Liu* and *Letelier* as examples of cases where "courts had allowed suits against foreign governments under the noncommercial tort exception for tortious—and arguably 'terrorist'—acts *occurring in the United States*." *Doe*, 663 F.3d at 68-69. The Second Circuit did not, as Plaintiffs assert (Mot. 6), address the relevance of these cases in the "conspiracy context." Moreover, neither *Letelier* nor *Liu* is binding in this Circuit and, in any event, both the District of Columbia and Ninth Circuits apply the entire-tort rule under § 1605(a)(5). *See Broidy Capital Mgmt., LLC v. State of Qatar*, 982 F.3d 582, 590 (9th Cir. 2020) (confirming the Ninth Circuit applies the "entire tort" rule and stating "the Supreme Court has stated that [§ 1605(a)(5)] 'covers only torts occurring within the territorial jurisdiction of the United States'" (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 441 (1989))); *Jerez v. Republic of Cuba*, 775 F.3d 419, 424 (D.C. Cir. 2014) (confirming the D.C. Circuit applies the "entire tort" rule and holding no jurisdiction under § 1605(a)(5) because "none of the defendants sued here was within the United States" and the tortious acts of defendants therefore did not satisfy the "entire tort" rule). The Report's conclusion that subject-matter jurisdiction was lacking under § 1605(a)(5) was therefore correct and Plaintiffs' motion should be denied on this point.

B.  **Point 4:** Section 1605A(d) Does Not Provide Subject-Matter Jurisdiction Over Corporate Plaintiffs' Claims and Corporate Plaintiffs Are Not U.S. Nationals for Purposes of § 1605A(a)

On Point 4, Plaintiffs improperly use their motion to take a "second bite at the apple" on the scope of the claims that corporate Plaintiffs may bring under § 1605A and the issue of whether the corporate Plaintiffs are "nationals of the United States" under § 1605A(a). Not only do Plaintiffs re-raise these issues, but they also have reversed their position on the importance of whether corporate Plaintiffs are U.S. nationals. Plaintiffs previously conceded in their opposition

–4–

to Sudan's motion to dismiss that it is "irrelevant for purposes of § 1605A" whether the insurers are "themselves nationals of the United States, and/or are subrogees of nationals of the United States." *See* Opp. 26 n.13, ECF No. 6649.  Now Plaintiffs argue that nationality *is relevant* and ask this Court to revisit its contrary conclusion in its Report (R&R 32).

Plaintiffs' proposed alternate reasoning on these issues should be rejected both because it is improper re-argument and because it is incorrect.  The Court lacks subject-matter jurisdiction over the corporate Plaintiffs' claims because the corporate Plaintiffs are not "nationals of the United States" and § 1605A(d) does not provide an independent exception to foreign sovereign immunity.

As to Plaintiffs' first disagreement with the Report's reasoning, § 1605A(d) does not provide an independent exception to sovereign immunity and cannot provide a basis for subject-matter jurisdiction over, and thereby expand the scope of, the corporate Plaintiffs' claims. Plaintiffs' argument that § 1605A(d), on its own, provides a basis for subject-matter jurisdiction requires § 1605A(d) to be read in isolation, divorced from the structure and context of § 1605A overall.  *See, e.g.*, *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l. Drilling Co.*, 137 S. Ct. 1312, 1321 (2017) (analyzing provisions of FSIA against the statute's structure and purpose); *U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) ("Over and over we have stressed that 'in expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.'" (quoting *United States v. Heirs of Boisdore*, 49 U.S. 113, 122 (1849)).  Reading § 1605A as a whole, § 1605A(d)'s placement within § 1605A and its title of "Additional Damages" indicate that it is *not* an independent exception to foreign sovereign immunity and cannot provide a basis for subject-matter jurisdiction.  *See Rubin v. Islamic Republic of Iran*, 138

S. Ct. 816, 823-24 (2018) (holding 28 U.S.C. § 1610(g) is not "an independent avenue for abrogation of [sovereign] immunity" where other provisions of the same section "unambiguously revoke the immunity of property of a foreign state" and because § 1610(g) "conspicuously lacks the textual markers . . . that would have shown that it serves as an independent avenue for abrogation of immunity"); *see also Roeder v. Islamic Republic of Iran*, 742 F. Supp. 2d 1, 9 (D.D.C. 2010) (explaining that "text and structure of [§ 1605A] as whole clearly separate jurisdictional prerequisites from the elements of a private right of action").

Instead, the exception to sovereign immunity in § 1605A is provided in § 1605A(a), and jurisdiction exists *only* in certain actions where "the claimant or victim was" "a national of the United States; a member of the armed services; or otherwise an employee of the Government of the United States" or a contractor of the U.S. government. The corporate Plaintiffs do not fit in any of these categories so there is no jurisdiction over their claims. *See, e.g.*, *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 15 (D.C. Cir. 2015) (dismissing action because plaintiffs did not satisfy jurisdictional nationality or employment requirements in § 1605A(a)(2)); *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570, 2016 WL 11270527, at *3-4 (S.D.N.Y. Oct. 24, 2016) (dismissing claims where "[n]either claimant nor victim fit within the jurisdictional requirements of § 1605A(a)" and explaining that "the lack of jurisdiction over a foreign sovereign is as absolute a bar to a cause of action as a lapsed statute of limitations or contractual release").

Plaintiffs assert that decisions from this Court and the U.S. District Court for the District of Columbia support their view. Mot. 7. But those cases lack "precedential weight" because they were decided in the context of a default by a non-appearing foreign sovereign. *See Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran*, 313 F. Supp. 3d 50, 53 (D.D.C. 2018) (acknowledging that "Iran has never entered an appearance in this action"); *In re Terrorist Attacks*

*on Sept. 11, 2001*, No. 03-md-1570, 2015 WL 9468813, at *1 (S.D.N.Y. Dec. 28, 2015) (addressing motion for default judgment filed against Iran); *see also Bob Jones Univ. v. Simon*, 416 U.S. 725, 740 n.11 (1974) (finding decision lacked "precedential weight" where the case did not "involve[e] a truly adversary controversy").  Followed to its logical end, Plaintiffs' proposed interpretation of § 1605A would do away with the U.S.-nexus requirements in § 1605A(a), requirements Plaintiffs themselves acknowledge are important (Mot. 8).  Plaintiffs' proposed interpretation would further allow any allegedly injured party, no matter how tenuous their connection with the United States, to bring actions against foreign states under § 1605A so long as one U.S. national or government contractor or employee was killed or injured by a particular terrorist act.

The corporate Plaintiffs also are incorrect that corporations are "nationals of the United States" under § 1605A(a).  Mot. 7-8.  Again, Plaintiffs ignore the context of the definition of "national of the United States" adopted in § 1605A(h)(5) from the Immigration and Nationality Act ("INA").  Specifically, Plaintiffs seize on the term "citizen" in the INA and argue incorrectly that because corporations have been found to be "citizens" of the United States in other contexts, they must be considered citizens in the context of the INA and § 1605A(a).

As Plaintiffs acknowledge, however, congressional "intent is to be gathered from the context and general purpose of the whole legislation in which it occurs."  Mot. 8 (quoting *Swiss Nat'l Ins. Co. v. Miller*, 267 U.S. 42, 46 (1925)).  Notably, the Supreme Court in *Swiss National Insurance* found that a corporation was *not* a "citizen," as that term was used in the Trading with the Enemy Act, because the context indicated that the term was used to refer to "natural persons" and corporations were covered elsewhere in the statute.  267 U.S. at 46.

The context of the use of the term "citizen" in the definition of "national of the United States" in the INA indicates that the term is used to refer to natural, and not juridical, persons. The INA governs immigration and naturalization procedures for persons immigrating to the United States, it does not govern any process by which a corporation or other business entity would become a U.S. "citizen." *See, e.g.*, *Kansas v. Garcia*, 140 S. Ct. 791, 797 (2020) ("The foundation of our laws on immigration and naturalization is the Immigration and Nationality Act (INA) . . . which sets out the 'terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the country.'" (citation omitted)); *cf. Swiss Nat'l Ins. Co.*, 267 U.S. at 46 (explaining that "a citizen or subject who may change his nationality . . . could hardly refer to a corporation"). The INA repeatedly refers to citizenship in terms of birth, death, and familial status, as opposed to state or country of incorporation, lending further support to the conclusion that under the INA "citizens" are natural and not juridical persons. *See, e.g.*, 8 U.S.C. § 1101(a)(15)(K) (referring to "citizens" in the context of marital status); *id.* § 1408 (describing individuals who are "nationals" but not "citizens" of the United States in terms of birthplace and familial relationships); *id.* § 1182(a)(6)(C)(ii) (referring to "citizens" in context of birth and age); *see also Swiss Nat'l Ins. Co.*, 267 U.S. at 46-47 (explaining that use of the term "citizen" when referring to spouses indicated the term referred to natural persons).

The text of § 1605A(a) itself also indicates that a "national of the United States" is meant to refer only to natural persons. Use of terms like "personal injury or death," "member of the armed forces," "employee," or "individual performing a contract" in § 1605A(a), indicate that Congress intended for immunity to be withdrawn only in actions asserting claims arising from personal injury to or death of natural persons, not claims arising from property damage or other financial injury suffered by corporations. *See, e.g.*, *Cedric Kushner Promotions Ltd. v. King*, 533

U.S. 158, 163 (2001) ("The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status."); *Devil's Advocate, LLC v. Zurich Am. Ins. Co.*, 666 Fed. App'x 256, 262 (4th Cir. 2016) ("The language of § 8.01-40(A) plainly includes only natural persons, as demonstrated by its discussion of the ramifications of the death of the aggrieved person.").

This Court therefore was correct to conclude in its Report that corporations are not "nationals of the United States" under § 1605A(a) (R&R 32), and Plaintiffs' motion on this point should be denied.

### C.     Points 1 and 2:  Plaintiffs' Arguments Do Not Compel a Different Conclusion by the Court

As to Point 1, *no* plaintiff has brought a timely § 1605A action against Sudan and only the *O'Neill* Plaintiffs have filed timely ATA claims.  *See* Mem. 18-21, 34, ECF No. 6575; Reply 16-22, ECF No. 6713.  Although Plaintiffs appear to be correct that the Consolidated Amended Complaint did not add new plaintiffs to the *Burnett*, *Federal Insurance*, and *Continental Casualty* cases, the ATA claims of Plaintiffs in the *Burnett*, *Federal Insurance*, and *Continental Casualty* cases are nevertheless untimely and dismissal of their claims was appropriate.  Specifically, the Court lacked subject-matter jurisdiction over these Plaintiffs' earlier pleaded ATA claims, therefore no Plaintiff (including the *Burnett*, *Federal Insurance*, and *Continental Casualty* Plaintiffs) has a timely ATA claim, even by virtue of relation back under Rule 15(c). *See* Reply 21-22.

As to Point 2, the Report is correct in concluding that the *Federal Insurance* and *Continental Casualty* Plaintiffs' trespass claims should be dismissed.  R&R 57-58.  The Court, however, should have dismissed *all* Plaintiffs' trespass claims because no Plaintiff has pleaded facts that support a plausible claim for trespass against Sudan, as Sudan will make clear in its

objections addressed to District Judge Daniels.  *See* Mem. 40-43; Reply 22-24.  Plaintiffs may be correct in their assessment of when the *Federal Insurance* and *Continental Casualty* Plaintiffs asserted their state-law trespass claims (Mot. 4), but the timing of when these Plaintiffs asserted these claims is irrelevant because no plaintiff has stated a plausible claim for trespass.  *See* Mem. 42-43.

## CONCLUSION

For the foregoing reasons, Sudan respectfully submits that the Court should deny Plaintiffs' motion for partial reconsideration.

Dated:   June 24, 2022
             Washington, DC

Respectfully submitted,

**WHITE & CASE**

 /s/ *Christopher M. Curran*
Christopher M. Curran
Nicole Erb
Claire A. DeLelle
Matthew S. Leddicotte (*pro hac vice*)
Nicolle Kownacki (*pro hac vice*)
Celia A. McLaughlin (admission application
    forthcoming)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone:     + 1 202 626 3600
Facsimile:      + 1 202 639 9355
ccurran@whitecase.com
nerb@whitecase.com
cdelelle@whitecase.com
mleddicotte@whitecase.com
nkownacki@whitecase.com
cmclaughlin@whitecase.com

*Counsel for the Republic of the Sudan*