PLAINTIFFS' MORE DEFINITE STATEMENT/ADDITIONAL ALLEGATIONS AS TO DEFENDANT ERWIN WACHTER

1. The name of the defendant to whom this Statement pertains is Erwin Wachter. The alleged misconduct and basis for liability is set forth below as well as described elsewhere in the Complaint, as amended.

2. All known wrongdoers are named as defendants in this action, as well as the defendants in *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.* (SDNY 04-CV-1922 (RCC)) and *Estate of John P. O'Neill, et al. v. Al Baraka, et al.* (SDNY 04-CV-1923 (RCC)), other cases brought by other plaintiffs in *In Re Terrorist Attacks on September 11, 2001* (03-MDL-1570 (RCC)), and others. Plaintiffs will separately file Statements with respect to the misconduct of certain of the other defendants. Given the vastly complicated nature of the conspiracy and other wrongdoing that led to the events of September 11, 2001, however, much information is unavailable to plaintiffs, and the identities of other wrongdoers may be revealed through discovery or otherwise. Plaintiffs therefore reserve the right to amend this Statement as information is learned and verified and after discovery or other information is obtained.

3. The name of each victim is indicated on the attached hereto as can be found on the More Definite Statement, Victims List ("Victims List"). The victims consist of (1) all spouses, children, parents, siblings, or heirs of any individual who died at the World Trade Center in New York, NY, the Pentagon Building in Arlington County, Virginia, or in the airliner crash in Shanksville, Pennsylvania, as the result of terrorist attacks on September 11, 2001 (with the events at the World Trade Center in New York, N.Y., the Pentagon Building in Arlington County, Virginia, and the airliner crash in Shanksville, Pennsylvania, on September 11, 2001, and activities related thereto, collectively referred to herein as "Attack" or "Attacks"); and (2) all legal representatives (including executors, estate administrators and trustees) entitled to bring legal action on behalf of any individual who died as the result of terrorist attacks on September 11, 2001; but excluding (3) all individuals, and all spouses, children, parents, siblings, and legal representative of individuals identified by the Attorney General of the United States or otherwise shown to have perpetrated, aided and abetted, conspired in regard to, or otherwise supported the terrorist attacks of September 11, 2001. Victims List sets forth the names of the decedents killed by the attackers, with the category of "victims" further including their spouses, children, parents, siblings or heirs as set forth above.

4. The manner in which the victims were injured consists of death, suffering caused by death, and all economic damages resulting from such deaths, and actions of the defendants and their co-conspirators as described herein.

**EXHIBIT B**

5. Please find below a description, in detail, of the pattern of racketeering activity for each RICO claim:

   a. The predicate acts and statutes in question include:

      - Conspiracy to commit murder - NY Penal § 105.15; NY Penal § 125.25 (xi)
      - Conspiracy to commit arson - NY Penal § 105.15; NY Penal § 150.15
      - Fraud with Identification - 18 U.S.C. § 1028
      - Mail Fraud - 18 U.S.C. § 1341
      - Wire Fraud - 18 U.S.C. § 1343
      - Financial Institution Fraud - 18 U.S.C. §1344
      - Illegal Transactions in Monetary Instruments - 18 U.S.C. § 1956
      - Money Laundering - 18 U.S.C. § 1957
      - Defrauding the United States Government - 18 U.S.C. § 371
      - Travel Act - 18 U.S.C. § 1952
      - Filing false or Materially False Tax Returns - 26 U.S.C. § 7206(1),(2)
      - Engaging in a corrupt endeavor to impede and impair the due administration of the internal revenue laws - 26 U.S.C. § 7212(a)
      - Providing Material Support of Terrorism - 18 U.S.C. § 2332(b)(g)(5)(B), 18 U.S.C. § 2339A, 18 U.S.C. § 2339B, 18 U.S.C. § 2339C

   b. In the Mid 1990's to September 11, 2002, Erwin Wachter conducted or participated, directly or indirectly, in the conduct of the Enterprise's, as defined *supra*, affairs and participated in the operation or management of the operation of the Enterprise itself. Erwin Wachter conspired to conduct or participate, directly or indirectly, in the conduct of the Enterprise's affairs and conspired to participate in the operation or management of the operation of the Enterprise itself. Throughout this period, Erwin Wachter conspired to support terrorism and to obfuscate the roles of the various participants and conspirators in Radical Muslim Terrorism, and/or al Qaida and/or the International Islamic Front for the Jihad Against Jews and Crusaders, which conspiracy culminated in the Attack.

X:\Clients\ONeill v. Saudi arabia\Complaints\English\Iraq\Iraq4\Exhibits\B_EWachter- More Definite Statement - Iraqjsg.doc

    c. The individual times, places, and contents of the alleged misconduct are not all particularly known at this time.

    d. The predicate act is not based upon a criminal conviction.

    e. Civil litigation has not yet resulted in a judgment regarding the predicate acts.

    f. The predicate acts form a pattern of racketeering in that they are repeated, ongoing, continuous, and are a part of the Enterprise's regular way of doing business. Other of the defendants consistently, evenly constantly, laundered money, filed false tax returns, and otherwise impeded and impaired the administration of the tax laws as part of their scheme to conduit money to terrorists, and yet obfuscate their support of Radical Muslim Terrorism and/or al Qaida and/or the International Islamic Front for the Jihad Against Jews and Crusaders.

    g. The predicate act relates to each other (horizontal relatedness) as part of a common plan because each act of knowing and intentionally providing financial services and money laundering and tax evasion allowed certain of the defendants, specifically including Erwin Wachter, to surreptiously provide funds to terrorist organizations, including al Qaida, Radical Muslim Terrorism and/or the International Islamic Front for the Jihad Against Jews and Crusaders, which conspiracy culminated in the Attacks.

6. A description of the Enterprise is as follows:

    a. The Enterprise ("Radical Muslim Terrorism" or "al Qaida" or "International Islamic Front for the Jihad Against Jews and Crusaders") ("Enterprise") is comprised of the defendants named in the Original Complaint and any additional complaints filed in this action as well as the defendants in *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.* (SDNY 04-CV-1922 (RCC)) and *Estate of John P. O'Neill, et al. v. Al Baraka, et al.* (SDNY 04-CV-1923 (RCC)), and others, and is a collection of the persons, organizations, businesses, and nations associated in fact.

    b. The Enterprise has its origins in the defeat of the Soviets in Afghanistan in the late 1980s, when Osama Bin Ladin ("Bin Ladin") formed an organization called "The Foundation" or "al Qaida." Al Qaida was intended to serve as a foundation upon which to build a global Islamic army. In February, 1998, a declaration was issued, following the holding of a terrorist summit, announcing the formation of the International Islamic Front for the Jihad Against Jews and Crusaders, the precursor of which was the Muslim Brotherhood and the Islamic Jihad. The structure of the Enterprise is an association in fact with common and complex goals that consist of far more than the mere desire to perpetrate the acts of

Page 3

    racketeering outlined herein. Rather, the Enterprise utilizes acts of racketeering to further its overall common purposes of: (i) spreading a particularly virulent brand of radical, conservative Islam; (ii) eliminating Western influences in Islamic countries, including Western influences that are perceived to keep in power repressive Saudi-American regimes that are not true to Islam; and (iii) punishing Israel, and the United States for its perceived support of Israel. Radical Muslim Terrorism, and/or al Qaida and/or the International Islamic Front for the Jihad Against Jews and Crusaders, does not feature a centralized hierarchy, because the lack of a centralized hierarchy is essential to the Enterprise's clandestine nature and its success. Thus, although al Qaida, for example, had its own membership roster and a structure of "committees" to guide and oversee such functions as training terrorists, proposing targets, financing operations, and issuing edicts, the committees were not a hierarchical chain of command but were instead a means for coordinating functions and providing material support to operations. Erwin Wachter fit neatly into this framework by raising funds for and providing funding to and otherwise providing material support for the members of the Enterprise who engaged in the Attack.

    The Enterprise is a sophisticated global terrorist network which uses a variety of business and financial transactions to further its operations. These transactions include but are not limited to transferring funds between accounts to purchase communications equipment, electronics equipment, and land (for use as training camps and to store explosives and weapons). These transactions are accomplished through, *inter alia*, the use of wire transfers and electronic transmissions.

    On information and belief, at the time of the September 11th attack, the al Qaida's annual income was approximately $50 million and its assets over a ten-year period ranged between $300 and $500 million dollars. The Enterprise relies upon a global network of banks and financial institutions, including Erwin Wachter, and illegal activity to generate material support to continue its terrorist operations.

  c. Erwin Wachter was not an employee, officer or director of the Enterprise, based upon present information available. Erwin Wachter is associated with the alleged Enterprise. Erwin Wachter is a member of the Enterprise, and is separate and distinct from the Enterprise. Erwin Wachter intended to further the Attack and adopted the goal of furthering and/or facilitating that criminal endeavor, which criminal activity culminated in the Attack.

7. The pattern of racketeering activity conducted by Erwin Wachter is separate from the existence of Radical Muslim Terrorism, and/or the Al Qaida, and/or the International Islamic Front for the Jihad Against Jews and Crusaders, but was a necessary component to the Attack.

8. The Enterprise conducts terrorism all over the world; the racketeering activity conducted by Erwin Wachter funds that activity, which activity culminated in the Attack. The usual and daily activities of the Enterprise include recruitment, indoctrination, and the provisioning and operation of training camps, all of which activities are funded by the racketeering activities described herein.

9. The Enterprise benefits by spreading its ideology, by suppressing other forms of Islam, and through the gratification of destroying its perceived enemies.

10. The Enterprise, and the racketeering activities conducted by Erwin Wachter, relies heavily on the American interstate system of commerce for banking, supplies, communications, and virtually all its essential commercial functions, and in that manner affects interstate commerce. The Enterprise and the racketeering activities conducted, engaged in, and/or transacted business within and in the United States and elsewhere, and utilized, possessed, used, transferred, owned, leased, operated, and/or controlled assets in the United States and elsewhere. Furthermore, activities and actions of the Enterprise affect interstate commerce as demonstrated by the Attack itself, which caused damage to the United States economy and property and businesses situate therein. See Rasul v. Bush, 124 S. Ct. 2686, No. 03-334, 2004 U.S. LEXIS 4760, *8 (stating that the Attack "severely damaged the United States economy").

11. Erwin Wachter acquired or maintained an interest or control in the Enterprise.

12. With respect to the alleged violation of 18 U.S.C. § 1962(c), the following is asserted:

    a. Radical Muslim Terrorism, and/or the al Qaida, and/or the International Islamic Front for the Jihad Against Jews and Crusaders "employs" certain individuals, only a few of whose identities are known, including defendant Osama Bin Ladin.

    b. The Enterprise, Radical Muslim Terrorism, and/or al Qaida, and/or the International Islamic Front for the Jihad Against Jews and the Crusaders, is comprised of the defendants named in the Complaint, the First Amended Complaint, the Second Amended Complaint and any additional complaints filed in this action as well as the defendants in *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.* (SDNY 04-CV-1922 (RCC)) and *Estate of John P. O'Neill, et al. v. Al Baraka, et al.* (SDNY 04-CV-1923 (RCC)), among others, and is a collection of the persons, organizations, businesses, and nations associated in fact. The liable persons are the enterprise and that which makes up the enterprise.

13. The conspiracy which violates 18 U.S.C. §1962(d) is described as follows:

    a. The history of the conspiracy, in violation of 18 U.S.C. § 1962(d), behind Radical Muslim Terrorism, or the al Qaida, or the International Islamic

Page 5

Front for the Jihad Against Jews and Crusaders could, and has, filled many books, but for purposes of the present RICO Statement, the following is offered. After being turned out of the Sudan in May 1996, al Qaida established itself in Afghanistan, and relied on well-placed financial facilitators, including Erwin Wachter, who laundered funds from Islamic so-called charities and corporations and raised money from witting and unwitting donors. They also relied heavily on certain imams at mosques who were willing to divert the *Zakat*, the mandatory charitable contributions required of all Muslims. Radical Muslim Terrorism, and/or al Qaida, and/or the International Islamic Front for the Jihad Against Jews and Crusaders also collected money from employees of corrupted charities. The money raised from these various sources (the "Funds"), including Erwin Wachter, were used by the Enterprise to accomplish its goals, with the knowledge and awareness of Erwin Wachter, of both those goals and the uses to which the Funds were put.

b. The Funds were used to organize and conduct a complex international terrorist operation intended to inflict catastrophic harm on the United States. The Funds enabled the Enterprise to identify, recruit, groom and train leaders who were able to evaluate, approve and supervise the planning and direction of the Enterprise. The Funds also provided communications sufficient system that gathered information on and formed assessments of the Enterprise's enemies' strengths and weaknesses.

c. The Funds enabled the Enterprise to establish a personnel system by which, among other things, it recruited and trained persons to inflict the harm (the "Operatives") and provided planning and direction to the Operatives. The funds thus raised were used to, among other things, operate terrorist training camps in Afghanistan, where some recruits were trained in conventional warfare but where the best and most zealous recruits received terrorist training. The curriculum in the camps placed with great emphasis on ideological and religious indoctrination. All trainees and other personnel were encouraged to think creatively about ways to commit mass murder.

d. The camps were able to operate only because of the worldwide network of recruiters, travel facilitators, and document forgers who vetted recruits and helped them get in and out of Afghanistan. From the ranks of these recruits the nineteen perpetrators of the Attack were selected. None of this would have been possible without the funds supplied by participants and conspirators like Erwin Wachter. Indeed, the Enterprise would not have been successful without enthusiastic participation of all of the conspirators, including Erwin Wachter. In order to identify nineteen individuals willing, able and competent to carry out the Attack, Radical Muslim Terrorism, and/or the al Qaida, and/or the International Islamic

Front for the Jihad Against Jews and Crusaders needed to select from a vast pool of recruits and trainees, which pool would not have been available to it without the assistance provided by Erwin Wachter. Erwin Wachter, with knowledge and intent, agreed to the overall objectives of the conspiracy, and agreed to commit at least two predicate acts and all agreed to participate in the conspiracy, either expressly or impliedly. Erwin Wachter conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs and participated in the operation or management of the operation of the Enterprise itself. Erwin Wachter conspired to conduct or participate, directly or indirectly, in the conduct of the Enterprise's affairs and conspired to participate in the operation or management of the operation of the Enterprise itself. Erwin Wachter also, with knowledge and intent, agreed to and did aid and abet all of the above illegal activities, RICO predicate acts, and RICO violations.

14. The injuries to business or property suffered by the O'Neill Plaintiff's resulting from the September 11th attack include economic damages, including but not limited, to pecuniary losses, past and future wage losses and profits, loss of business opportunities, loss of and/or damage to tangible and intangible personal property, loss of currency, loss of support, funeral and burial expenses, loss of prospective inheritance, and loss of other economic contributions to the Plaintiffs'/Decedents' households. Additionally, the Attack itself was intended to destroy the leading symbol of the United States' leadership in world trade – The World Trade Center - and as such, affected the O'Neill Plaintiff's jobs, businesses, and livelihoods.

15. Plaintiffs' damages – the loss of life and the damages to business and property related thereto that resulted from the actions of the defendants and their co-conspirators, are a direct causal relationship to the violation of the RICO statute, and are not a derivative claim of damage to a third party. The Plaintiffs, both named and as a class, as described in the complaint, as amended, were the "reasonably foreseeable victims of a RICO violation" and the "intended victims of the racketeering enterprise," (that is, terrorism, the culmination of which was the Attack).

16. Each defendant is jointly and severally liable for all damages sustained by each plaintiff subject to the description of victims set forth in paragraph 4 hereof, for the loss of life, and the economic damages, including but not limited, to pecuniary losses, past and future wage losses and profits, loss of business opportunities, loss of and/or damage to tangible and intangible personal property, loss of currency, loss of support, funeral and burial expenses, loss of prospective inheritance, and loss of other economic contributions to the Plaintiffs'/Decedents' households. The damages for the plaintiffs' collectively are to be determined at trial, and are in excess of $10,000,000,000.00 prior to trebling, punitive damages, interest, legal fees, and the costs of this suit.

17. The federal causes of action against Erwin Wachter are as follows:  Count Eight, Anti-Terrorism Act, 18 U.S.C. § 2331, 2333, *et. seq.*; Count Nine, RICO, 18 U.S.C. § 1962(b),1962(c), 1962(d).

18. The state causes of action are as follows:  Count One, Wrongful Death; Count Two, Survival; Count Three, Action for Economic Damages; Count Four, Intentional Infliction of Emotional Distress; Count Five, Loss of Consortium; Count Six, Loss of Solatium; Count Seven, Conspiracy; Count Ten, Punitive Damages .

19. Erwin Wachter has long provided financial support and other forms of material support to terrorist organizations including Radical Muslim Terrorism, or the al Qaida, and/or the International Islamic Front for the Jihad Against Jews and Crusaders.  Erwin Wachter conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs and participated in the operation or management of the operation of the Enterprise itself.  Erwin Wachter conspired to conduct or participate, directly or indirectly, in the conduct of the Enterprise's affairs and conspired to participate in the operation or management of the operation of the Enterprise itself.

20. Plaintiffs hereby incorporate all allegations, claims and counts contained in Plaintiff's Complaint, as amended.

21. Erwin Wachter has long provided financial support and other forms of material support to terrorist organizations including Radical Muslim Terrorism, or the al Qaida, and/or the International Islamic Front for the Jihad Against Jews and Crusaders.  Erwin Wachter conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs and participated in the operation or management of the operation of the Enterprise itself.  Erwin Wachter _conspired to conduct or participate, directly or indirectly, in the conduct of the Enterprise's affairs and conspired to participate in the operation or management of the operation of the Enterprise itself.

22. Erwin Wachter is the head of Asat Trust, a co-defendant in the above-referenced cases.[1]  Additionally, available information reveals a pattern of activity over a period of many years of the Wachters, including both Martin Wachter and his father, Erwin Wachter (collectively referred to as "Wachters"), working at the same address registered to Asat Trust.

---

[1] Specific misconduct regarding Asat Trust, a co-defendant herein, is provided via More Definite Statement Applicable to Asat Trust.  Plaintiffs herein incorporate by reference throughout this document the factual averments and arguments which are contained within its More Definite Statement Applicable to Asat Trust, relating to *Estate of John P. O'Neill, et al. v. Al Baraka, et al.*, 04-CV-1923 (RCC) and *Estate of John P. O'Neill, et al. v. Iraq, et al.* 04-CV 1076.

Page 8

23. He is also an owner of Sercor Treuhand Anstalt, a co-defendant in the above-referenced cases.[2]

24. As owner and head of Asat Trust and Secor Treuhand Anstalt, Erwin Wachter oversaw the activities and had knowledge of the activities that supported the al Qaida and/or Radical Muslim Terrorism and/or the International Islamic Front for the Jihad Against Jews and Crusaders.

25. Erwin Wachter has long known that accounts, under his control, which were maintained, and assisted, were being used to solicit and transfer funds to terrorist organizations, including al Qaida and/or Radical Muslim Terrorism and/or the International Islamic Front for the Jihad Against Jews and Crusaders. Despite this knowledge, Erwin Wachter continued to permit, make available, assist, and maintain those accounts.

26. Available information demonstrates that there has been activities between the Wachters and Al Taqwa Bank, a co-defendant in the above- referenced cases who has been significantly linked to activities and supporting the al Qaida, and/or Radical Muslim Terrorism, and/or the International Islamic Front for the Jihad Against Jews and Crusaders. Al Taqwa's assets were frozen by the Office of Foreign Assets Control, as a Designated Terrorist Organization, by Executive Order #13224. Additionally, there is information which places the Wachters at working on behalf of Al Taqwa Bank in Nassau, Bahamas.

27. There is also information which links the Wachters to Al Taqwa and its executives, Youssef M. Nada, Ali Ghaleb Himmat, Nasreddin, and Albert Friedrich Armand Huber, co-defendants in the above-referenced cases which have been linked to funding and supporting the al Qaida, and/or Radical Muslim Terrorism, and/or the International Islamic Front for the Jihad Against Jews and Crusaders.

28. Based upon information and belief, the Wachters were involved in laundering funds on behalf of the Food-for-Oil program and moving the money through Al Taqwa.

29. As the foregoing demonstrates, Erwin Wachter thereby knowingly has, for a period of many years, provided critical financial and logistical support to al Qaida, and/or Radical Muslim Terrorism, and/or the International Islamic Front for the Jihad Against Jews and Crusaders, to support the terrorist organization's

---

[2] Specific misconduct regarding Sercor Treuhand Anstalt, a co-defendant herein, is provided via More Definite Statement Applicable to Sercor Truehand Anstalt. Plaintiffs herein incorporate by reference throughout this document the factual averments and arguments which are contained within its More Definite Statement Applicable to Sercor Truehand Anstalt, relating to *Estate of John P. O'Neill, et al. v. Al Baraka, et al.*, 04-CV-1923 (RCC) and *Estate of John P. O'Neill, et al. v. Iraq, et al.* 04-CV 1076.

Page 9

global jihad.  The September 11th Attack was a direct, intended and foreseeable product of Erwin Wachter's participation in the jihadist campaign for al Qaida, and/or Radical Muslim Terrorism, and/or the International Islamic Front for the Jihad Against Jews and Crusaders.

30. Given the extraordinarily complex nature of the conspiracy and other wrongdoing that led to the events of September 11, 2001, much information is presently unavailable to plaintiffs, absent discovery.  Plaintiffs therefore reserve the right to amend this Statement as information is learned and verified through discovery and otherwise.

Date:  September 29, 2005

LAW OFFICES OF JERRY S. GOLDMAN
& ASSOCIATES, P.C.

BY:_____
GINA M. MAC NEILL, ESQUIRE (GM 0581)
JERRY S. GOLDMAN, ESQUIRE (JG 8445)
FREDERICK J. SALEK, ESQUIRE (FS 8565)
Attorneys for the Plaintiffs
111 Broadway, 13th Floor
New York, N.Y. 10006
212.242.2232