# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

June 28, 2022

VIA ECF
The Honorable Sarah Netburn
United States Magistrate Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn,

The Plaintiffs' Executive Committees ("PECs") write, on behalf of all Plaintiffs, to respond to the Kingdom of Saudi Arabia's June 21, 2022 letter, ECF No. 8131, proposing a briefing schedule for various motions, including motions to dismiss. As discussed below, the Kingdom's proposal would impose an unworkable and unfair deadline for Plaintiffs' statement/averment of jurisdictional facts in order to gain strategic advantage, and departs in numerous important respects from the procedural framework governing the resolution of the present jurisdictional dispute under JASTA and the FSIA. Plaintiffs respectfully submit that a case management conference would be beneficial for purposes of setting protocols and deadlines for any further proceedings as to the Kingdom and Dallah Avco, and offer below an overview of key considerations relevant to those issues, and Plaintiffs' proposal for discussion with the Court.

1.   The Court Should Decide Plaintiffs' Rule 54(b) Motion in the First Instance

Before turning to the substance of the parties' respective proposals, Plaintiffs respectfully submit that resolution in the first instance of their pending Motions Pursuant to Rule 54(b) and the Court's Inherent Powers to Revise This Court's Memorandum Decision and Order of March 28, 2018 (the "Rule 54(b) Motions") would be in the interests of justice and will conserve resources of the Court and parties. As discussed in Plaintiffs' briefs in support of those motions, the Second Circuit's decisions in *Kaplan v. Lebanese Canadian Bank*, 999 F.3d 842 (2d Cir.

June 28, 2022
Page 2

2021) ("*Kaplan*"), and *Honickman v. BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021) ("*Honickman*"), demonstrate that Plaintiffs have established jurisdiction for their statutory and common law secondary and primary liability claims against the Kingdom already.  Resolution of the 54(b) Motions would thus resolve the jurisdictional phase without further consumption of this Court's resources, avoiding the need for the Court to decide complicated issues surrounding the processes and disputed standards and burdens associated with addressing allegations, facts, evidence, experts, and testimony in the context of a jurisdictional hearing.  The Kingdom's own proposal underscores the complexity of those issues and scope of work the parties and Court would need to undertake in such a setting.  Accordingly, Plaintiffs respectfully submit that the Court should resolve the Rule 54(b) Motions in the first instance.

2. <u>The Court Should Hold a Conference to Discuss the Procedures and Framework for Any Additional Jurisdictional Processes That May Be Necessary</u>

With regard to review of the matters for which discovery was authorized by to the Court's March 28, 2018 Decision, further proceedings will involve a range of complex and disputed issues concerning the parties' respective burdens, procedures and standards for evaluating the extensive record, as well as disputes about what constitutes "proof" and questions of  the admissibility of evidence.  Those assessments all involve matters of first impression under JASTA, and will be further complicated by the parallel personal jurisdiction inquiry as to Dallah Avco, which will involve distinct standards that must also be accommodated by the procedures adopted.  The parties and Court will also need to address significant public access issues, given the potentially determinative nature of any such proceedings.  Given the complexity of these issues, and the importance of the claims, Plaintiffs respectfully submit that a conference (whether in person or by phone) would assist the Court in determining the proper framework and schedule for any necessary further proceedings, and ensure that the parties have an opportunity to be fully heard.

3. <u>The Protocol For Any Further Proceedings Must Accord With the Applicable Procedures and Burdens</u>

For obvious reasons, the protocols adopted for any further jurisdictional proceedings must adhere to and reflect the applicable standards and burdens.  The Kingdom's proposal misconstrues the governing procedures and Plaintiffs' rights in that contest in key respects.  For example, the Kingdom's proposal suggests that Plaintiffs have some burden to "prove" each jurisdictional fact they offer via paper submissions, but that is not correct.  To the contrary, the nature of the applicable burden depends, initially, on both the nature of the foreign sovereign's jurisdictional challenge and whether discovery has been permitted on the issue in question.  As to matters for which discovery has not been permitted or for which a competent factual challenge has not been raised, Plaintiffs' factual allegations must be credited.  And as to matters for which discovery has been afforded, Plaintiffs bear only an initial burden of production with the Kingdom bearing the ultimate burden of persuasion. *Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555, 560 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 1069, 208 L. Ed. 2d 531 (2021) ("Once the plaintiff has met its initial burden of production, the defendant bears the burden of proving, by a preponderance of the evidence, that the alleged exception does not apply. In other words, the ultimate burden of persuasion remains on the party seeking sovereign immunity.") (internal citations omitted).  When considering the subject-matter jurisdiction arguments, the Court must

June 28, 2022
Page 3

consider both the factual allegations as well as the evidence proffered in support of jurisdiction. *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 n. 6 (2d Cir. 2001), citing *Cargill Int'l S.A. v M/T Pavel Dybenko*, 991 F.2d 1012, 1019 (2d Cir. 1993) ("In resolving the jurisdictional dispute, the district court *must* review the pleadings and any evidence before it ...."); *see also Filetech S. v. Fr. Telecom S.A.*, 304 180, 183 (2d Cir. 2002) (per curiam) (when key issues "turn[] on questions of [witness] credibility," a jurisdictional hearing is required).[1]

The Kingdom's proposal runs afoul of these standards by misstating the nature of Plaintiffs' burden, presuming the dispute will be subject to resolution based on paper submissions only, and failing to acknowledge Plaintiffs' right to move for an evidentiary hearing and to file additional and customary motions that may be appropriate for such a hearing based on the Kingdom's submissions. Given that the jurisdictional hearing is, essentially, a bench trial on determinative issues, the parties would be entitled to submit motions ordinarily part of the trial process, such as motions for adverse inferences. The Kingdom's expert reports and questioning of Plaintiffs' experts also suggest the Kingdom may seek through its renewed motion and supporting submission to introduce facts and evidence on matters as to which Plaintiffs have not been afforded discovery, which along with other considerations may give rise to issues concerning the scope of discovery or the need for additional limited discovery. *See also Kaplan*, 999 F.3d at 854, 865 (requiring that aiding and abetting claims in the terrorism context be evaluated holistically in light of the full range of facts that may support relevant inferences). The framework adopted for any further proceedings must accommodate all of these issues.

4.  <u>Plaintiffs Should Be Afforded Adequate Time For Their Jurisdictional Statements/Averments</u>

The Kingdom's proposal also fails to afford Plaintiffs with a reasonable time period for submitting their statements/averments of jurisdiction.[2] As discussed with counsel for the Kingdom during the meet and confer, the Kingdom's proposed August 1 deadline for submission of Plaintiffs' statements/averments is entirely unrealistic, given the scope of work required and scheduling challenges for many involved attorneys during July. Over the past month, the parties have been involved in intensive depositions of 10 expert witnesses (whose reports collectively span 1,250 pages), including three this week, concluding just before the 4th of July holiday. The final transcripts for these latter depositions will not even be ready until late July. Further, to be

---

[1] The language Saudi Arabia uses in its proposal to describe the filings, which speaks in terms of an obligation for Plaintiffs to prove each fact requests that the Court impose a Rule 56 burden on Plaintiffs, is in conflict with these controlling standards and should not be endorsed. Plaintiffs' proposal avoids this problem by simply requiring the parties to provide citations to the facts and evidence they will rely upon as to any applicable burden.

[2] A statement or averment of jurisdiction would normally be filed in response to, and thus after, the defendant's renewed motion to dismiss (as has been the approach for personal jurisdiction contests in this MDL). Given the development of the record through discovery and detailed expert reports served by Plaintiffs, the Kingdom has no need for or entitlement to a jurisdictional statement in advance of its motion. As is the regular practice in Federal Court applicable to dispositive motions at the close of discovery (including Rule 56 motions, which the Kingdom invokes in its proposal), the Kingdom can file its motion based on the record, and Plaintiffs can respond to it. Nonetheless, Plaintiffs have agreed to file their statements/averments of jurisdiction in the first instance in this case, so long as they are afforded a reasonable time and opportunity to do so. If the Kingdom's preference is for an accelerated schedule, then the Kingdom should file its motion first with Plaintiffs' jurisdictional statement or averment to follow, as is the ordinary sequence.

June 28, 2022
Page 4

useful to the Court, the jurisdictional statements/averments must synthesize the full record, which is extensive. Completing all of the necessary work by August 1, on the heels of the recent depositions and amidst scheduling difficulties in July, simply is not feasible or fair.

Plaintiffs respectfully submit that September 30 is a reasonable date for Plaintiffs' statements/averment of jurisdiction, and respectfully request that the Court endorse that deadline.[3] Saudi Arabia and Dallah Avco have proposed that they have 60 days to respond after the factual statement is submitted. Plaintiffs agree to this proposal. We also agree with Saudi Arabia and Dallah Avco that Plaintiffs should also have 60 days to submit their oppositions to the defendants' motions — but add that Plaintiffs will at the same time file their own motions, including for a jurisdictional hearing. Plaintiffs further agree that Saudi Arabia and Dallah Avco have 30 days for their reply papers — but add that defendants should submit their oppositions to Plaintiffs' motions along with their reply. Finally, Plaintiffs request 15 days to submit their reply papers on their motions.

Consistent with the above, Plaintiffs propose the following schedule and protocol:

| | |
|---|---|
| September 30, 2022 | Plaintiffs' Fact Statements/Averments in Support of Jurisdiction, with citations to any facts or evidence Plaintiffs will rely upon as to any applicable burden for the point in question; |
| November 30 | Defendants' Renewed Motions to Dismiss or for Summary Judgment and *Daubert* Motions (see below); Defendants' Responses to Plaintiffs' Fact Statements/Averments; Defendants' Fact Statements, with citations to any facts or evidence Defendants will rely upon as to any applicable burden or defense for the point in question; |
| January 30, 2023 | Plaintiffs' Oppositions, Motions, and Responses, including *Daubert* Motions (see below); |
| March 2 | Defendants' Replies and Oppositions; and |
| March 16 | Plaintiffs' Replies. |

5.   The Kingdom's Proposal for *Daubert* Briefing is Excessive and Unnecessary

The Kingdom has proposed that the parties be permitted to file individual *Daubert* briefs of 20 pages *as to each* of the proffered experts. That approach would result in 200 pages of opening briefs, 200 pages of opposition briefs, and 100 pages of reply briefs, solely on the *Daubert* issues. It would also create an unfair imbalance insofar as the Kingdom has only three

---

[3] On this discrete scheduling issue, Plaintiffs had thought the parties would be able to reach agreement, until the Kingdom precipitously terminated the meet and confer process (despite Plaintiffs' request to continue the scheduling discussions). In fact, after Plaintiffs responded to the Kingdom's initial proposal for an August 1 deadline by suggesting an October 1 date, the Kingdom replied with a September 1 proposal, and Plaintiffs offered to meet in the middle at September 16. Given that the parties were only two weeks apart, it seems that they should have been able to resolve that particular issue without Court intervention.

Page 5

experts but those three experts collectively submitted reports of 800 pages to rebut Plaintiffs' experts, who collectively submitted reports of 452 pages. In other words, Plaintiffs would be limited to less than one-half of the Kingdom's briefing, despite the fact that the Kingdom's experts sought to rebut all of Plaintiffs' experts. The Kingdom's proposal is excessive and unreasonable, particularly given that the parties will have far fewer pages to present the facts, evidence, and legal standards in the substantive briefing. In the context of the personal jurisdiction and merits defendants, this Court previously ordered that both parties submit a single *Daubert* brief limited to 50 pages for Plaintiffs to challenge up to four defense experts and 40 pages for all defendants to challenge up to three of Plaintiffs' experts – that is, just over 12 pages per expert. ECF No. 7160.

The *Daubert* issues warrant less extensive briefing in the present context, as the immunity issues will be presented to the Court, not a jury. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 629 (S.D.N.Y. 2007) ("*Daubert* gatekeeping standard is applied more flexibly when the judge is the factfinder"), citing *Deal v. Hamilton County Board of Educ.*, 392 F.3d 840, 852 (6th Cir.2004) ("The 'gatekeeper' doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial."); *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir.2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.").

Given the substantial factual overlap between the *Daubert* and jurisdictional motions, Plaintiffs propose that the Court set a *single* page limit of 80 pages for both Saudi Arabia's Motion and *Daubert* challenges, and Plaintiff's Oppositions and *Daubert* challenges, to be allocated as the parties see fit; 25 pages for Saudi Arabia's Reply and Opposition; and 10 pages for Plaintiffs' Reply. A single brief will streamline and simplify the briefing for the parties and the Court. The *Daubert* issues are linked to the jurisdictional facts and are best addressed together with the substantive matters. A single brief will permit Saudi Arabia and the Plaintiffs to exercise their own judgments about how best to present their arguments.

We further propose the ordinary page limits (25 pages with 10 page reply) for Motions of Dallah Avco and Plaintiffs.

During the meet and confer, Plaintiffs agreed to a page limit of 50 pages for Saudi Arabia's Motion and Plaintiffs' Oppositions and suggested a single *Daubert* brief for each party of 25 pages. Saudi Arabia never responded to Plaintiffs' proposal but instead filed its motion for 200 pages of briefing on *Daubert* issues, and only 50 pages of briefing on substantive issues.

\*\*\*

Finally, during the meet and confer, Plaintiffs advised Saudi Arabia and Dallah Avco that they had not yet decided whether the *CAC* and *Ashton* Plaintiffs would submit separate or joint papers on the motion. While both Saudi Arabia and Dallah Avco did not object to separate submissions, they reserved their rights to request additional pages in the event that Plaintiffs decided to submit separate papers.

June 28, 2022
Page 6

Respectfully submitted,

| COZEN O'CONNOR | MOTLEY RICE |
|---|---|
| /s/ *Sean P. Carter, Esquire* | /s/ *Robert T. Haefele, Esquire* |
| Sean P. Carter, Esquire | Jodi Westbrook Flowers, Esquire |
| 1650 Market Street, Suite 2800 | Robert T. Haefele, Esquire |
| Philadelphia, PA 19103 | 28 Bridgeside Boulevard |
| | Mt. Pleasant, SC 29464 |
| MDL 1570 Plaintiffs' Exec. Committee for Commercial Claims | MDL 1570 Plaintiffs' Exec. Committee for Personal Injury and Death Claims |

KREINDLER & KREINDLER

/s/ *Steven R. Pounian, Esquire*
Steven R. Pounian, Esquire
James P. Kreindler, Esquire
Andrew J. Maloney, Esquire
Megan W Benett, Esquire
James Gavin Simpson, Esquire
485 Lexington Avenue, 28th Fl.
New York, NY 10017

MDL 1570 Plaintiffs' Exec. Committee for Personal Injury and Death Claims