UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                                  )
IN RE: TERRORIST ATTACKS ON    )    Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001                      )    ECF Case
_____)

This document relates to: *All Actions*

# SAUDI ARABIA'S OPPOSITION TO
# PLAINTIFFS' RULE 72 OBJECTIONS TO JUNE 2, 2022 ORDER

Michael K. Kellogg
Mark C. Hansen
Gregory G. Rapawy
Andrew C. Shen
Christopher M. Young
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900
(202) 326-7999 (fax)

*Attorneys for the Kingdom of Saudi Arabia*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .................................................................................................................1

STANDARD OF REVIEW ...................................................................................................2

BACKGROUND ...................................................................................................................2

ARGUMENT .........................................................................................................................6

I.  Judge Netburn's Finding That Kreindler & Kreindler Violated the MDL Protective Order Was Not Clearly Erroneous or Contrary to Law .....................6

    A. The MPS Materials Were "Disclosure or Discovery Material," and Publishing Them Was Not Use for the Purpose of Prosecuting the MDL .........................................................................................................6

    B. The London MPS Did Not Make the MPS Material Public ....................8

    C. The MPS Material Does Not Consist of "Judicial Documents" ..............9

II. Judge Netburn's Directive That Kreindler & Kreindler Not Publish or Republish the MPS Material Was Not Clearly Erroneous or Contrary to Law .................................................................................................................12

CONCLUSION ....................................................................................................................14

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

Page

**CASES**

*Bank of Montreal v. Optionable, Inc.*, 2014 WL 772228 (S.D.N.Y. Feb. 24, 2014) ...................... 2

*Davis v. Karosen*, 1986 WL 1796 (S.D.N.Y. Feb. 6, 1986) ........................................................ 10

*Frydman v. Verschleiser*, 2017 WL 1155919 (S.D.N.Y. Mar. 27, 2017) ....................................... 2

*Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004) ................................................ 11, 12

*Gen. Motors LLC Ignition Switch Litig.*, *In re*, 477 F. Supp. 3d 170
    (S.D.N.Y. 2020) ....................................................................................................................... 13

*Leviton Mfg. Co. v. Greenberg Traurig LLP*, 2011 WL 2946380
    (S.D.N.Y. July 14, 2011) ......................................................................................................... 2

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) ........................................... 11

*Mirlis v. Greer*, 952 F.3d 51 (2d Cir. 2020) ..................................................................... 9, 10, 11

*RMed Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2000 WL 420548
    (S.D.N.Y. Apr. 18, 2000) ......................................................................................................... 2

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) ................................................................ 12, 13

*U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.*, 2007 WL 2327068
    (S.D.N.Y. Aug. 13, 2007) ........................................................................................................ 2

*United States v. Amodeo*:

    44 F.3d 141 (2d Cir. 1995) ..................................................................................................... 11

    71 F.3d 1044 (2d Cir. 1995) ........................................................................................... 9, 11, 12

**STATUTES AND RULES**

Freedom of Information Act, 5 U.S.C. § 552 ................................................................................. 9

28 U.S.C. § 636(b)(1)(A) ............................................................................................................... 2

Fed. R. Civ. P. 72(a) ....................................................................................................................... 2

## INTRODUCTION

The protective order entered by Judge Casey in 2006 directs that "Discovery Material . . . produced in the course of the MDL shall be used solely for the purpose of the prosecution or defense of the MDL, or preparation of the MDL for trial."  ECF No. 1900 ("MDL Protective Order"), § II.E.  On April 27, 2022, Kreindler & Kreindler LLP ("Kreindler & Kreindler") violated that clear directive.  Kreindler & Kreindler did so by creating a public website it called "The 9/11 Document Archive," which it used to publish discovery material received from the London Metropolitan Police Service ("London MPS" or "MPS"), accompanied by a press release soliciting new clients.  The materials published in the "Archive" were documents (the "MPS Material") seized 20 years ago from Omar Al Bayoumi's home in the United Kingdom, including pictures of his minor children and of his wife in the hospital after giving birth.

Judge Netburn ruled that Kreindler & Kreindler violated § II.E of the MDL Protective Order by publishing the "Archive" and accompanying press release, which did not "use[ ]" the MPS Material "for the purpose of the prosecution . . . of the MDL, or preparation . . . for trial."  She also rejected Kreindler & Kreindler's unsupported contention that the London MPS itself had made the MPS Material public.  To enforce the Court's order, she directed Kreindler & Kreindler not to republish the MPS Material.  She has not yet imposed any further consequences.

As Judge Netburn observed, the publication of the MPS Material was Kreindler & Kreindler's third adjudicated violation of the MDL Protective Order.  It occurred while she was still considering the remedy for the second – the intentional leak of a confidential deposition transcript to a reporter.  Her response was measured and appropriate.  Under the deferential standard of review for a magistrate judge's nondispositive rulings, Judge Netburn's order was neither contrary to law nor clearly erroneous.  This Court should affirm it in its entirety.

## STANDARD OF REVIEW

Kreindler & Kreindler bears a "'heavy burden.'" *Leviton Mfg. Co. v. Greenberg Traurig LLP*, 2011 WL 2946380, at *1 (S.D.N.Y. July 14, 2011) (quoting *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.*, 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007)). It must show that Judge Netburn's order was "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a) (review of magistrate judge's nondispositive rulings); *see* 28 U.S.C. § 636(b)(1)(A) (same); *see also Bank of Montreal v. Optionable, Inc.*, 2014 WL 772228, at *1 (S.D.N.Y. Feb. 24, 2014) (Daniels, J.) (applying standard to review of magistrate judge's application of a protective order). Under this "highly deferential standard," *Frydman v. Verschleiser*, 2017 WL 1155919, at *2 (S.D.N.Y. Mar. 27, 2017), an order "'may be overturned only if found to have been an abuse of discretion,'" *Leviton Mfg.*, 2011 WL 2946380, at *1 (quoting *RMed Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2000 WL 420548, at *2 (S.D.N.Y. Apr. 18, 2000)).

## BACKGROUND

On June 1, 2021, Kreindler & Kreindler and other members of the Plaintiffs' Executive Committees (collectively, "Plaintiffs") filed with the Court an application for the issuance of a Letter of Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on Taking of Evidence Abroad in Civil or Commercial Matters ("Letter of Request") to authorities in the United Kingdom. ECF No. 6834-1 (filed under seal); *see* ECF No. 6834 (filed under seal). Plaintiffs insisted that the documents sought "bear[ ] directly on [Omar Al] Bayoumi's role in the 9/11 Attacks." ECF No. 6834 (filed under seal), at 2. On June 9, 2021, Judge Netburn granted Plaintiffs' application and issued a Letter of Request to the United Kingdom's Senior Master of the Royal Courts of Justice. ECF No. 6858. The Letter of Request "directed" Plaintiffs "to lodge" with the Court "certified copies" of materials they received. ECF No. 6834-1 (filed under seal), at 8.

Between March 23 and March 30, 2022, in response to the Letter of Request, the London MPS provided Plaintiffs with "responsive materials." ECF No. 7831, at 2; *see* ECF No. 7832, ¶¶ 9-12. According to a sworn declaration from a Kreindler & Kreindler attorney that Plaintiffs submitted to the Court, the London MPS took measures "to preserve operational and information security in the handover of [its] materials to the Plaintiffs," ECF No. 7832, ¶ 8, including by providing some materials on an "encrypted hard-drive," *id.* ¶ 9, and by "transferr[ing]" the "remaining materials . . . electronically via a secure MPS-approved file-share site, to which [counsel] was given short-term access," *id.* ¶ 10.

On April 1, 2022, Plaintiffs produced to the Kingdom of Saudi Arabia ("Saudi Arabia") the MPS Material they had received. ECF No. 7957-1. The MPS Material includes "360 individual evidential items, including more than 14,000 pages of documents, more than 20 hours of video footage, and multiple hours of audio recordings," ECF No. 7832, ¶ 11, consisting almost entirely of personal and private documents and other files gathered from Al Bayoumi's home in the United Kingdom in 2002. For example, the MPS Material includes Al Bayoumi's private financial and banking information, identification materials, personal contact information, and home videos depicting, among other things, his young children.

On April 5, 2022, Plaintiffs informed Judge Netburn that they had obtained the MPS Material and requested leave "to lodge a complete set of certified copies . . . with the Court via a thumb drive (containing files in a variety of formats, including video)." ECF No. 7831, at 1. On April 19, 2022, Judge Netburn acknowledged that the Letter of Request required lodging certified copies of the MPS Material with the Court, but, in light of the "logistical and management challenge" presented by doing so, proposed "waiving th[at] requirement." ECF No. 7885. On April 26, 2022, Plaintiffs agreed to waive lodging. ECF No. 7919.

The next day, April 27, 2022, Kreindler & Kreindler published almost all of the MPS Material on a public website titled "9/11 Document Archive." *See* ECF No. 7957-2 ("Home" page as of April 28, 2022 at 11:47 AM). The "Home" page of the "Archive" stated that it "contains documents obtained from the Metropolitan Police Service (MPS) in response to a request for international judicial assistance under the Hague Evidence Convention." *Id.* at 2. The "Home" page also stated that the "Archive" was "published by Kreindler & Kreindler LLP." *Id.* In addition, the "Archive" contained a "Contact" page stating: "If you have any questions regarding the content or use of this website, please contact Kreindler & Kreindler LLP." ECF No. 7957-3 ("Contact" page as of April 28, 2022 at 11:48 AM), at 2.

The MPS Material that Kreindler & Kreindler published on the Archive included Al Bayoumi's sensitive personal information, including but not limited to private financial information and including at least two unredacted bank account numbers. It also included Al Bayoumi's home videos and photos, including a personal photo showing Al Bayoumi and his wife in the hospital for the birth of their daughter. *See* ECF No. 7957, ¶ 3. Kreindler & Kreindler edited some photos and videos to exclude some portions depicting Al Bayoumi's children. *See id.* ¶ 4. But the firm published the photo of his wife in the hospital, as well as at least one video clearly showing his then-minor children. *See id.*

That same day, April 27, 2022, Kreindler & Kreindler issued a public press release on its own website concerning the MPS Material with links to particular documents and to the "9/11 Document Archive" website. *See* ECF No. 7957-4 (filed under seal) ("Trove of 9/11 Evidence Seized by U.K. Police in 2001 Now Made Public"; captured on April 29, 2022 at 6:00 AM). That press release featured an arrest photo of Al Bayoumi and a prominent statement attributed to attorney James Kreindler claiming that "[t]he newly released materials point to Saudi government

complicity in the attacks." *Id.* at 11.  The press release further stated that the materials "have been produced during discovery" in this MDL.  *Id.*  At the bottom of the web page containing the press release was a solicitation for potential clients, including an offer of a "FREE, confidential case consultation." *Id.* at 12-13.

Also that same day, CBS News released a story featuring its reporter Catherine Herridge.  The CBS News Story, which remains publicly available, features interviews with Kreindler & Kreindler personnel and discusses some of the MPS Material in a light favorable to Kreindler & Kreindler's allegations.  The public press release on Kreindler & Kreindler's website contained a link to and invited readers to "[w]atch the story on CBS News." *Id.* at 5.

On April 28, 2022, Saudi Arabia and Al Bayoumi[1] wrote to Plaintiffs, including Kreindler & Kreindler, to request that they cease publishing the MPS Material and to designate the materials as provisionally confidential under the MDL Protective Order in order to permit adequate time for a confidentiality review.  *See* ECF No. 7957-5, at 12-13.  During meet-and-confer discussions, Kreindler & Kreindler agreed to remove the press release and website from public view in order to permit time for a confidentiality review.  *See id.* at 2, 7.  Kreindler & Kreindler refused, however, to agree that it would not republish any MPS Material not designated as confidential.  *See id.* at 1-2.  Saudi Arabia alerted Judge Netburn to Kreindler & Kreindler's actions and requested an order prohibiting Kreindler & Kreindler from republishing the MPS Material.  *See* ECF No. 7950.

On June 2, 2022, Judge Netburn issued an order finding the MPS Material was "Discovery Material" under the MDL Protective Order and found that Kreindler & Kreindler had breached

---

[1] Counsel for Saudi Arabia represents Al Bayoumi in this litigation as a witness and former employee of Saudi Arabia.

that order by publishing the MPS Material on the "Archive." *See* ECF No. 8066 ("June 2 Order"), at 5-6. Judge Netburn further ordered Kreindler & Kreindler, and all other parties, not to "publish or republish" materials produced by the MPS "except as necessary for the prosecution or defense of this case." *Id.* at 7. She stated that "any future action" respecting Kreindler & Kreindler's breach would be addressed as part of the resolution of the ongoing investigation into Kreindler & Kreindler's separate breach of the FBI and MDL Protective Orders through the deliberate leak to a Yahoo! News reporter of a confidential deposition transcript. *Id.* at 8.

Judge Netburn further directed the parties to "meet and confer to determine if any of the MPS Material is confidential under the [MDL] Protective Order." *Id.* at 7-8. Judge Netburn "close[d] by noting [her] concern with the increasing rate at which violations of the protective orders are accruing." *Id.* at 8.

On June 30, 2022, counsel for Saudi Arabia completed its confidentiality review of the MPS Material – which included more than 14,000 pages of material in both English and Arabic, as well as 19 audio files and 30 video files – and served confidentiality designations on Plaintiffs. The designated information includes, *inter alia*, family videos, family photographs, birth certificates, birthdates, passports, medical records, telephone numbers, email addresses, bank account numbers, and personal identification numbers (*e.g.*, Social Security numbers).

## ARGUMENT

**I.     Judge Netburn's Finding That Kreindler & Kreindler Violated the MDL Protective Order Was Not Clearly Erroneous or Contrary to Law**

**A.     The MPS Materials Were "Disclosure or Discovery Material," and Publishing Them Was Not Use for the Purpose of Prosecuting the MDL**

The MDL Protective Order provides that "[a]ll Disclosure or Discovery Material (or any copies, summaries or abstracts thereof) produced in the course of the MDL shall be used solely for the purpose of the prosecution or defense of the MDL, or preparation of the MDL for trial."

- 6 -

ECF No. 1900, § II.E.  It further defines "Disclosure or Discovery Material" as "includ[ing], but not limited to, all items or information, regardless of the medium or manner generated, stored, or maintained (including, among other things, testimony, transcripts or tangible things), that are produced or generated in disclosures or responses to discovery in this MDL."  *Id.* § II.B.2.

Judge Netburn correctly found that the MPS Material is Discovery Material because Plaintiffs obtained it through a Letter of Request issued by the Court under the Hague Convention.  *See* ECF No. 8066, at 5.  Indeed, Kreindler & Kreindler's own press release described the MPS Material as "produced during discovery" in this MDL.  ECF No. 7957-4 (filed under seal), at 11.  Because the MPS Material is Discovery Material, the MDL Protective Order required Kreindler & Kreindler to use them "solely" for "the prosecution . . . of the MDL" or for "preparation of the MDL for trial."  ECF No. 1900, § II.E.

Judge Netburn also correctly found that "Kreindler & Kreindler's use" – publication on a public website and in a press release – went "beyond" what the Order permits.  ECF No. 8066, at 6.  She further clarified that, although "[p]roviding clients with materials to facilitate their understanding and governance of their case" would "fall[ ] within the 'prosecution or defense' provision of the Protective Order[,] [d]isgorging an entire tranche of discovery materials to the public for the purposes of general awareness does not."  *Id.*  She might have added that Kreindler & Kreindler's public relations efforts and client solicitations, the other apparent purposes of the "9/11 Document Archive" and accompanying press release, do not qualify either.

Kreindler & Kreindler errs in asserting (at 1-2) that the MDL Protective Order "does not restrict the parties from public discussion of non-confidential information obtained in the course of litigation."  That argument confuses two different provisions of the Order.  The restriction on "use[ ]" in § II.E applies to "[a]ll Disclosure or Discovery Material," whether or not it is

confidential. Disclosure or Discovery Material that a party has specifically designated as "Confidential Material" (also referred to as "Protected Material") under § II.F.3 is a narrower category that receives heightened protection. Among other things, Confidential Material "may be disclosed only to the categories of persons and under the conditions described in th[e] Order." ECF No. 1900, § II.H.1. The distinction between the two types of material appears on the face of the Order. Kreindler & Kreindler's continued assertion that the Order imposes no restraint on its publication of Discovery Material cannot be squared with the Order's clear terms.

   **B.**  **The London MPS Did Not Make the MPS Material Public**

  Judge Netburn correctly found "no evidence that the MPS Material is public," including "no evidence that MPS, or any entity but Kreindler & Kreindler, has . . . released the MPS Materials publicly." ECF No. 8066, at 6. Her finding was not clearly erroneous and is supported by the record. Kreindler & Kreindler did not and still does not point to any publicly available source for the MPS Material other than its own "9/11 Document Archive." Kreindler & Kreindler's earlier sworn description of the London MPS's "operational and information security" measures, including the use of an "encrypted hard-drive" and "a secure MPS-approved file-share site," ECF No. 7832, ¶¶ 8-10, are inconsistent with the London MPS itself making the MPS Material public. Also, Kreindler & Kreindler's decision to edit Al Bayoumi's children out of some (but not all) of his family pictures before publishing them, *see* ECF No. 7957, ¶ 4, provides circumstantial evidence that the firm knew it was making the materials public for the first time.

  Kreindler & Kreindler misplaces reliance (at 3) on the witness statement of a London MPS detective superintendent for its purported belief that the MPS Material was public. The declaration states that the MPS Material, although previously "marked 'secret,'" was "no longer classified," and that the London MPS was not asserting "Public Interest Immunity" against

disclosure of the documents. ECF No. 7832-1, ¶¶ 19-21 (underlining omitted). As Judge Netburn observed, "something is not public merely because it is unclassified," and "merely producing something to a litigant," as the London MPS produced the MPS Material to Plaintiffs, does not "render it public." ECF No. 8066, at 6. Kreindler & Kreindler does not respond to her reasoning, much less show it to be clearly in error.

Kreindler & Kreindler also errs (at 5-6) in arguing that the MPS Material should be treated like documents obtained via Freedom of Information Act ("FOIA") requests. As Judge Netburn accurately pointed out, FOIA releases are not Disclosure or Discovery Material – and so not covered by the MDL Protective Order – because such releases are "not obtained through this Court's processes." ECF No. 8066, at 5; *see* ECF No. 1900, § II.B.2 (covering materials "produced or generated in disclosures or responses to discovery in this MDL"). "[S]o long as the Court's processes are not invoked, as in the case of a FOIA request, the resulting material falls outside the bounds of the Protective Order." ECF No. 8066, at 5. That was not the case with the MPS Material, which Plaintiffs obtained through a Court-issued Letter of Request.

C.  **The MPS Material Does Not Consist of "Judicial Documents"**

Judge Netburn correctly found that the MPS Material does not consist of "judicial documents" subject to any "First Amendment presumption of access." ECF No. 8066, at 4. In doing so, she applied settled principles of law under which "'judicial documents'" are those "'placed before the court by the parties and . . . "relevant to the performance of the judicial function and useful in the judicial process."'" *Id.* (quoting *Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020)) (ellipsis in original). By contrast, documents merely "'passed between the parties in discovery[ ] lie entirely beyond the . . . reach'" of the presumption of access. *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("*Amodeo II*")) (brackets in original).

Here, the MPS Material is "not before the Court" and is "not 'relevant' or 'useful' to the judicial process." *Id.* Kreindler & Kreindler's contrary argument falls short for three reasons.

*First*, Kreindler & Kreindler incorrectly states (at 4) that the MPS Material consists of judicial documents because those materials were "required to be filed on the docket pursuant to the letters rogatory." (Emphasis omitted.) The Letter of Request does not say "filed on the docket." Rather, it "directed" Plaintiffs "to lodge . . . certified copies" of the materials with the Court. ECF No. 6834-1 (filed under seal), at 8. Lodging a document is not the same as filing it publicly on the docket. *See*, *e.g.*, *Davis v. Karosen*, 1986 WL 1796, at *3 n.2 (S.D.N.Y. Feb. 6, 1986) ("Prior to November 18, 1985, the Court had directed the third-party defendants to file an answer. Rather than do this, they chose instead to 'lodge' certain pleadings with the Court, but not file them.").

*Second*, it is undisputed that Plaintiffs never actually filed the MPS Material on the docket or even lodged it with the Court. Instead, they agreed with Judge Netburn's suggestion to "waiv[e] the requirement to file certified copies" of the materials. ECF No. 7885; *see* ECF No. 7919. Accordingly, the MPS Material has never met the baseline requirement to qualify as "judicial documents" – being "placed before the court by the parties." *Mirlis*, 952 F.3d at 59. Kreindler & Kreindler cites no authority to support its assertion that documents can become judicial documents merely based on an "expectation" that they were to be filed, ECF No. 8114, at 4, when no such filing ever occurred.[2]

---

[2] In addition, as Judge Netburn further explained, "[i]t is not clear if the documents would even have been filed on ECF or in another publicly accessible format." ECF No. 8066, at 4 n.2. Plaintiffs themselves originally proposed "submit[ting] a thumb drive containing the MPS materials." *Id.*; *see* ECF No. 7831, at 1. In that format, the MPS Material would not necessarily have been accessible to the public.

*Third*, even if the MPS Material had been filed with the Court, that alone would not have transformed its contents into judicial documents. "[J]udicial document[s]" are only those that are "'relevant to the performance of the judicial function and useful in the judicial process.'" *Mirlis*, 952 F.3d at 59 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*")). "'[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quoting *Amodeo I*, 44 F.3d at 145). Kreindler & Kreindler never explained to Judge Netburn, and does not explain now, why the MPS Material, if filed, would have been "'relevant to the performance of the judicial function and useful in the judicial process.'" *Mirlis*, 952 F.3d at 59 (quoting *Amodeo I*, 44 F.3d at 145).

Kreindler & Kreindler erroneously contends (at 6) that "judicial involvement" in obtaining the MPS Material "necessarily gives the public a right of access to the materials under controlling Second Circuit precedent," citing *Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004). *Gambale* – which Kreindler & Kreindler did not cite to Judge Netburn – says no such thing. That case involved review of a district court order unsealing several sealed documents filed in opposing a motion for summary judgment. *Id.* at 134-35, 137. The Second Circuit affirmed the unsealing of the documents, *id.* at 142, 145, noting that "the presumptive right to 'public observation' [of judicial proceedings] is at its apogee when asserted with respect to documents relating to 'matters that directly affect an adjudication,'" such as "those relating to the decision of a motion for summary judgment." *Id.* at 140 (quoting *Amodeo II*, 71 F.3d at 1049). The Second Circuit said nothing in *Gambale* suggesting that mere "judicial involvement" in obtaining discovery "necessarily gives the public a right of access" to that discovery. The

- 11 -

issuance of the Letter of Request is not like a decision on a summary judgment motion and does not "'directly affect an adjudication.'" *Id.* (quoting *Amodeo II*, 71 F.3d at 1049).

**II.     Judge Netburn's Directive That Kreindler & Kreindler Not Publish or Republish the MPS Material Was Not Clearly Erroneous or Contrary to Law**

As a partial response to Kreindler & Kreindler's violation of the MDL Protective Order by publishing the MPS Material on a public website and in a press release, Judge Netburn ordered that "[n]o party shall publish or republish the MPS [M]aterial except as necessary for the prosecution or defense of this case." ECF No. 8066, at 7. Her June 2 Order merely applied the MDL Protective Order's clear language to the facts of the parties' dispute over the MPS Material. It falls well within Judge Netburn's discretion in overseeing discovery in this case.

The Court should reject Kreindler & Kreindler's false and hyperbolic claims (at 5) that Judge Netburn's June 2 Order is "a broad gag order over documents publicly released by the United Kingdom" or (at 7) an "un-Constitutional gag order, restricting public discussion of non-classified materials of serious public interest." As an initial matter, Kreindler & Kreindler's statement that the documents were "publicly released" is false. As set forth above, Judge Netburn found "no evidence that the MPS Material is public," including "no evidence that MPS, or any entity but Kreindler & Kreindler, has . . . released the MPS Materials publicly." ECF No. 8066, at 6. Kreindler & Kreindler has not shown that finding was clear error. *See supra* Part I.B.

Judge Netburn also correctly explained why the MDL Protective Order and her June 2 Order applying it are constitutional and do not restrict public discussion. *See* ECF No. 8066, at 4. As to constitutionality, she relied on *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), which held that "[a] litigant has no First Amendment right of access to information made available only for purposes of trying his suit," *id.* at 32, and that, "where . . . a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial

civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment," *id.* at 37. Kreindler & Kreindler does not even address *Seattle Times*, much less show error in Judge Netburn's finding that its criteria are met. Nor does it show error in her observation that "the requirement to use discovery materials only for the prosecution or defense of [a] case" forms "a basic component of most protective orders in this district." ECF No. 8066, at 4 (citing *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 188 (S.D.N.Y. 2020)).

As to public discussion, Judge Netburn made clear that she has "repeatedly confirmed that parties may talk to the press about this case," and "d[id] so again" in her June 2 Order. ECF No. 8066, at 8 (quoting examples of earlier statements). They may not, however, "leverag[e] protected materials in service to this press strategy," *id.*, as here, by dumping thousands of pages of discovery material onto the public web and calling it an "Archive." Judge Netburn further indicated that her ruling did not foreclose Plaintiffs generally, or Kreindler & Kreindler specifically, from seeking any "modification" of the MDL Protective Order that they "believe . . . [it] needs." *Id.*[3] Her ruling was measured, correct, and well within her discretion.

* * *

Kreindler & Kreindler makes two other statements that are irrelevant to this Court's review of Judge Netburn's order but that warrant a brief response. *First*, Kreindler & Kreindler asserts (at 8) that the MPS Material "support[s] Plaintiffs' claims" against Saudi Arabia. Saudi Arabia will demonstrate otherwise in its renewed motion to dismiss.

---

[3] In the more than 15 years since Judge Casey entered the MDL Protective Order, Kreindler & Kreindler has never sought to modify its terms.

- 13 -

*Second*, Kreindler & Kreindler erroneously criticizes Saudi Arabia (at 7-8) for not serving its confidentiality designations sooner.  By Plaintiffs' count, the MPS Material includes "360 individual evidential items, including more than 14,000 pages of documents, more than 20 hours of video footage, and multiple hours of audio recordings."  ECF No. 7832, ¶ 11.  Many of those documents and videos are in Arabic, which made it necessary to use Arabic-speaking counsel or translators to review the materials for confidentiality.

In addition, Plaintiffs initially agreed on April 29, 2022 to send Saudi Arabia a link to "the MPS Material as redacted by Plaintiffs" to facilitate Saudi Arabia's confidentially review.  ECF No. 7957-5, at 2.  They never sent the promised link.  When Saudi Arabia concluded that Plaintiffs would not timely provide their proposed redacted set of material, Saudi Arabia undertook a complete review of the full set of MPS Material at reasonable speed – during a period that overlapped with expert discovery and depositions – and, as noted above, has now served its confidentiality designations.

## CONCLUSION

Kreindler & Kreindler's Rule 72 objections should be overruled in their entirety.

Dated:  June 30, 2022

Respectfully submitted,

/s/ *Michael K. Kellogg*

Michael K. Kellogg
Mark C. Hansen
Gregory G. Rapawy
Andrew C. Shen
Christopher M. Young
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900
(202) 326-7999 (fax)

*Attorneys for the Kingdom of Saudi Arabia*

## CERTIFICATE OF SERVICE

      I hereby certify that, on June 30, 2022, I caused a copy of the foregoing Opposition to Plaintiffs' Rule 72 Objections to June 2, 2022 Order filed by the Kingdom of Saudi Arabia to be served electronically pursuant to the Court's ECF system.

/s/ *Michael K. Kellogg*

Michael K. Kellogg
*Attorney for the Kingdom of Saudi Arabia*