IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

In re: Terrorist Attacks on September 11, 2001

Civil Action No. 03-MD-1570 (GBD)(SN)
ECF Case

-----------------------------------------------------------X

**This document relates to:**

*Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03-cv-06978
*Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03-cv-09849
*Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.*, No. 04-cv-01922
*Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, No. 04-cv-05970
*Estate of John P. O'Neill, Sr., et al. v. Republic of the Sudan, et al.*, No. 18-cv-12114
*Aronow, et al. v. Republic of Sudan*, No. 20-cv-07733

**CONSOLIDATED AMENDED COMPLAINT PLAINTIFFS' REPLY BRIEF IN
FURTHER SUPPORT OF THEIR MOTION FOR PARTIAL RECONSIDERATION
OF THE COURT'S MAY 3, 2022 REPORT & RECOMMENDATION (ECF No. 7942)**

June 30, 2022

## TABLE OF CONTENTS

                                                                                                                                                      **Page**

I.   Sudan Admits That The Consolidated Amended Complaint Did Not Add Plaintiffs............. 1

II.  Sudan Does Not Contest That The Trespass Claims Of The *Federal Insurance* And *Continental Casualty* Plaintiffs Are Timely................................................................................ 1

III. Sudan's Entire Tort Arguments Ignore The Secondary Liability Attribution Principles Establishing Jurisdiction Under The Non-Commercial Tort Exception ............................... 2

IV. Sudan's Arguments About The Scope And Operation Of Section 1605A Are Contrary To Law And The Core Purposes Of The Statute ........................................................................... 4

V.  Conclusion................................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bob Jones Univ. v. Simon*,
   416 U.S. 725 (1974) ............................................................................................................5

*Boim v. Holy Land Foundation*,
   549 F.3d 685 (7th Cir. 2008) .............................................................................................6

*Comm. Bank of Kuwait v. Rafidain Bank*,
   15 F.3d 238 (2d Cir. 1994) .................................................................................................5

*Doe v. Bin Laden*,
   663 F.3d 214 (2d Cir. 2010) ...............................................................................................3

*Flanagan v. Islamic Rep. of Iran*,
   190 F. Supp. 3d 138 (D.C Cir. 2016) .................................................................................5

*Hale v. Henkel*,
   201 U.S. 43 (1906) .............................................................................................................9

*Hassett v. Welch*,
   303 U.S. 303 (1938) ...........................................................................................................8

*Inglis v. Trustees of Sailor's Snug Harbor*,
   28 U.S. 99 (1830) ...............................................................................................................9

*Jerez v. Republic of Cuba*,
   775 F.3d 419 (D.C. Cir. 2014) ...........................................................................................4

*Linde v. Arab Bank PLC*,
   882 F.3d 317 (2d Cir. 2018) ...............................................................................................4

*Maupin v. Syrian Arab Republic*,
   405 F. Supp. 3d 75 (D.C. Cir. 2019) ..................................................................................5

*O'Neill v. Saudi Joint Relief Committee*,
   714 F.3d 109 (2d Cir. 2013) ...............................................................................................3

*Opati v. Republic of Sudan*,
   140 S. Ct. 1601 (2020) .......................................................................................................6

*Ret. Bd of the Policemen's Annuity Fund v. Bank of New York*,
   775 F.3d 154 (2d Cir. 2014) ...............................................................................................2

*Swiss Nat'l Ins. Co. v. Miller*,
   267 U.S. 42 (1925) ............................................................................................................ 7, 8

*United States v. CDMG Realty Co.*,
   96 F.3d 706 (3d Cir. 1996) ..................................................................................................... 8

*United States v. Northwestern Express Co.*,
   164 U.S. 686 (1897) ............................................................................................................... 7

**Statutes**

8 U.S.C. § 1101 ............................................................................................................... 7, 8, 9, 10

22 U.S.C. § 1621 .................................................................................................................................... 7

28 U.S.C. § 1605(a) ..................................................................................................................... 2, 3, 4

28 U.S.C. § 1605A .................................................................................................................. *passim*

28 U.S.C. § 1605B ............................................................................................................................... 10

28 U.S.C. § 1608(e) .............................................................................................................................. 5

**Rules and Other Authorities**

Fed. R. Civ. P. 15 .................................................................................................................................. 1

Fed R. Civ. P. 72 ................................................................................................................................... 2

2B Sutherland Statutory Construction § 51:8 (7th ed.) ................................................................ 8

16 Couch on Insurance § 222:27 (3d ed. 2015) ............................................................................... 6

46A C.J.S. Insurance § 2027 ............................................................................................................. 6

## I.     <u>Sudan Admits That The Consolidated Amended Complaint Did Not Add Plaintiffs</u>

Sudan admits that "Plaintiffs appear to be correct that the Consolidated Amended Complaint did not add new plaintiffs to the *Burnett*, *Federal Insurance*, and *Continental Casualty* cases." Sudan Opp. Br. 9. Because the Court's mistaken belief that the Consolidated Amended Complaint ("CAC") had added new plaintiffs to those cases was the sole basis for its recommendation that the ATA secondary liability claims in those cases should be dismissed, Report & Recommendation at 44-47 (ECF No. 7942, "R&R"), Sudan's acknowledgement settles the matter and confirms that the CAC Plaintiffs' Motion for Reconsideration should be granted on this point.

Rather than simply acknowledging this result, Sudan instead reiterates arguments the R&R already rejected, erroneously urging that "the Court lacked subject-matter jurisdiction over these Plaintiffs' earlier pleaded ATA claims, therefore no Plaintiff (including the *Burnett*, *Federal Insurance*, and *Continental Casualty* Plaintiffs) has a timely ATA claim, even by virtue of relation back under Rule 15(c)." Sudan Opp. Br. 9. Initially, this line of argument is entirely improper in the present context, as it was rejected by the Court in the R&R and Sudan has not sought reconsideration. The only question at issue here is whether the Court was mistaken in concluding that the CAC had added plaintiffs in the cases at issue, and on that point there is no dispute. In any case, Sudan is entirely wrong, for the reasons discussed in the Court's R&R at 44-47.

## II.     <u>Sudan Does Not Contest That The Trespass Claims Of The *Federal Insurance* And *Continental Casualty* Plaintiffs Are Timely</u>

Sudan likewise does not contest that the *Federal Insurance* and *Continental Casualty* Plaintiffs filed their trespass claims within the applicable limitations period, admitting that "Plaintiffs may be correct in their assessment of when the *Federal Insurance* and *Continental Casualty* Plaintiffs asserted their state-law trespass claims." Sudan Opp. Br. 10. Here again,

Sudan's admission settles the matter, as the R&R's mistake as to the timing of the filing of the trespass claims in the *Federal Insurance* and *Continental Casualty* cases was the sole basis for the recommendation that they be dismissed. R&R at 57-58. As the record clearly establishes and Sudan admits, the *Federal Insurance* and *Continental Casualty* Plaintiffs unquestionably filed their trespass claims within the limitations period, and thus the R&R's undisputed mistake on this point should be corrected.

Sudan's claim that the Court "should have dismissed *all* Plaintiffs' trespass claims because no Plaintiff has pleaded facts that support a plausible claim for trespass against Sudan" is, like the arguments it offers as to the ATA, improper and irrelevant in this context, and wrong in any case. Sudan Opp. Br. 9. The Court correctly concluded in the R&R that the CAC properly and adequately alleged common law trespass claims, and Sudan has not sought reconsideration of those determinations. Having not moved for reconsideration, any quarrel Sudan may have with the Court's ruling is properly raised only through objections pursuant to Rule 72, as Sudan appears to acknowledge. *Id.* at 9-10. Again, the sole question raised by the present Motion for Reconsideration is whether the Court was mistaken as to the timeliness of the filing of the trespass claims in the *Federal Insurance* and *Continental Casualty* cases, and on that point there is no dispute.

### III.   Sudan's Entire Tort Arguments Ignore The Secondary Liability Attribution Principles Establishing Jurisdiction Under The Non-Commercial Tort Exception

Initially, the prominence Plaintiffs originally gave to their Section 1605(a)(5) argument provides no basis to avoid addressing Plaintiffs' argument on reconsideration. Sudan relies on *Ret. Bd of the Policemen's Annuity Fund v. Bank of New York*, 775 F.3d 154, 168 (2d Cir. 2014), yet that decision establishes only that a court has "discretion to consider [an argument] waived" if

it is presented initially in a footnote. But here, the Court did not exercise its discretion in that manner, and addressed the point on the merits. Plaintiffs seek reconsideration of that reasoning.

As to the merits, Sudan simply does not address the argument that Plaintiffs' secondary liability theory satisfies the "entire tort" limitation on Section 1605(a)(5).[1] *O'Neill v. Saudi Joint Relief Committee*, 714 F.3d 109, 117 (2d Cir. 2013), supports Plaintiffs on this point and shows the importance of the distinction between primary and secondary theories of liability. *O'Neill* addressed only a theory of primary liability. The Court found that Section 1605(a)(5) did not apply because, under a primary liability theory, plaintiffs did "not allege that [the state defendants] participated in the September 11, 2001 attack," or allege that the defendants "committed any tortious act in the United States." *Id.* The Court underscored that "[a]lthough the September 11, 2001 attacks constitute a 'tort,' the [state defendants] are not alleged to have participated in that 'tort,'" which was "distinct and separate from the 'torts' allegedly committed by the [defendants]." *Id.* at n.10.

This reasoning points to why Plaintiffs' secondary liability claim is within the scope of Section 1605(a)(5). Through their secondary liability claim, Plaintiffs <u>do</u> allege that Sudan, as one of the participants in the concerted action along with al Qaeda, did jointly "participate[] in the attacks of September 11, 2001." *O'Neill*, 714 F.3d at 116. Sudan's actions were not "distinct and separate" from the 9/11 attackers' actions, but rather were part of the same concerted action undertaken in the United States, just as Afghanistan's actions were for purposes of the Court's conclusion in *Doe v. Bin Laden*, 663 F.3d 214 (2d Cir. 2010). In addition, Plaintiffs do allege that Sudan "committed [a] tortious act in the United States," *O'Neill*, 714 F.3d at 117, because the 9/11

---

[1] As Plaintiffs show, their claim satisfies the "entire tort" limitation as applied in this Circuit, but they also preserve for appeal the argument that Section 1605(a)(5) is not limited in such a manner.

3

attackers' actions, undertaken in the United States, are attributed to all parties engaged in the concerted action. *Linde v. Arab Bank PLC*, 882 F.3d 317 (2d Cir. 2018), illustrates the point. There, due to the operation of the aiding and abetting claim, the terrorist attack itself was attributed to all who undertook concerted action, including those who aided and abetted the attackers, and all those who acted in concert equally "caused" the terrorist attack. *See id.* at 331. Another principal case invoked by Sudan, *Jerez v. Republic of Cuba*, 775 F.3d 419, 424 (D.C. Cir. 2014), shows the importance of the link *Linde* confirms between aiding and abetting and the terrorist attack. In *Jerez*, the court concluded that Section 1605(a)(5) did not apply because none of the acts that "caused" or "precipitated" the injury occurred in the United States. *Linde*, of course, held that the terrorists' attack (which, for al Qaeda's, occurred within the United States) serves as the act that "causes" the harm for purposes of claims against the aider and abettor of the attack, as well. *See Linde*, 882 F.3d at 331.

As a result, because the concerted action alleged by Plaintiffs involved a tort in the United States and causing harm here, and Sudan jointly participated in those U.S. actions, Section 1605(a)(5) provides jurisdiction over Plaintiffs' claim.

## IV. Sudan's Arguments About The Scope And Operation Of Section 1605A Are Contrary To Law And The Core Purposes Of The Statute

Sudan does not quibble with Plaintiffs' understanding of the cases they cited and which support finding jurisdiction over Plaintiffs' claims under Section 1605A as a result of the operation of Section 1605A(d). Those cases include, of course, a decision of this Court in this very case. *See* Mot. at 7. Nor does Sudan point to any case that offers a contrary understanding of Section 1605A(d). Instead, Sudan argues that cases supporting jurisdiction here have insufficient "precedential weight" and that Section 1605A(d)'s terms cannot be read in "isolation" or to support

4

actions without a sufficient nexus to U.S. interests. *See* Sudan Opp. Br. 4-7.  None of those points has merit.

Sudan does not argue that cases construing Section 1605A(d) are invalid or fail to reflect the full judgment and reasoning of the courts that issued them.  Instead, it claims only that they carry something short of full "precedential weight," based on a footnote reference in *Bob Jones Univ. v. Simon*, 416 U.S. 725, 740 n.11 (1974).  There, the court simply characterized its own action in a prior tax case, which had affirmed without opinion a lower court decision that both parties agreed was correct (following a change in the United States' position).  This has nothing to do with default judgments under the FSIA, which Congress made subject to a hearing and evidentiary burden as well as notice to the defendant state, *see* 28 U.S.C. § 1608(e), or with the status of decisions supporting those default judgments.  Indeed, the Federal Reporter is replete with such FSIA opinions routinely given full precedential effect.[2]

Nor should the plain meaning of Section 1605A(d) be disregarded to avoid a construction undertaken in "isolation" of the balance of the section or without accounting for U.S. interests. Sudan points to nothing in the balance of Section 1605A that contradicts Section 1605A(d)'s terms, and in fact a holistic reading of Section 1605A confirms that jurisdiction is appropriate.  Section 1605A(a)(i) sets forth the limitation on sovereign immunity, which applies to various "cases" against a state and makes no mention of the particular classes of plaintiffs or actions that may benefit from the limitation.  The balance of the section indicates various claims and actions that may be pursued.  "After an action has been brought under subsection (c)," which is limited to

---

[2] *See, e.g., Comm. Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238 (2d Cir. 1994) (affirming grant of default judgment in favor of Kuwaiti bank); *Maupin v. Syrian Arab Republic*, 405 F. Supp. 3d 75 (D.C. Cir. 2019) (granting default judgment under FSIA based on adoption of factual findings and conclusions following liability hearing in similar case against Syria and Syrian Military Intelligence); *Flanagan v. Islamic Rep. of Iran*, 190 F. Supp. 3d 138 (D.C Cir. 2016) ("Sudan has cast no doubt on the sufficiency of the Plaintiffs' evidence for purposes of the default judgment").

5

particular plaintiffs with a clear nexus to the United States and its interests," then other "actions may also be brought for reasonably foreseeable property loss ... by reason of the same acts" underpinning the initial action. 28 U.S.C. § 1605A(d). Section 1605A(d) is thus naturally read in conjunction with the balance of the section in a way that supports jurisdiction here, and the nexus to U.S. interests and Congress's related purpose are quite clear. Where a state sponsor of terrorism such as Sudan supports an attack harming certain persons with a strong nexus to the United States, imposing liability for such "additional damages" (the title of subsection 1605A(d)) arising from such attacks serves as a strong deterrent to providing future support. *Cf. Boim v. Holy Land Foundation*, 549 F.3d 685, 692 (7th Cir. 2008) (en banc) (damages liability serves to deter financing and support of terrorism).

In this way, it is Sudan that fails to construe Section 1605A(d) in light of the balance of the section and its deterrent purpose. Sudan is also asking the Court to disregard the subsection's plain terms and to read into it a limitation that does not exist, just as it unsuccessfully attempted to do for other aspects of Section 1605A in an effort unanimously rejected by the U.S. Supreme Court in *Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020). And, to the extent Sudan also claims (incorrectly) that even U.S.-incorporated life insurance companies cannot be "U.S. national" claimants, the absence of any right of subrogation as to life insurance payments would read out of the statute Congress's provision that "additional damages" include those arising from "loss claims under life … insurance policies." 28 U.S.C. § 1605A(d); *see, e.g.*, 16 Couch on Insurance § 222:27 (3d ed. 2015) ("No right of subrogation arises by operation of law under life and accident insurance because the indemnity feature is not present."); 46A C.J.S. Insurance § 2027 ("It is well settled that the doctrine of subrogation has no application to accident or life insurance, for the reason that accident and life insurance are not contracts of indemnity, but are investment contracts."). From

this it necessarily follows that insurance companies have standing to bring claims under Section 1605A(d) for losses under property or life insurance policies, once a claim for injury or death has been asserted under Section 1605A(c).

In any event, although the Court need not have reached this legal issue of first impression at all (*see* below), Section 1605A jurisdiction and liability for the vast majority of the claims here exists under any view of Section 1605A(d) because U.S.-incorporated companies are "national[s] of the United States." 28 U.S.C. § 1605A(h)(5) (incorporating definition from 8 U.S.C. § 1101(a)(22)); *see* Mot. at 7-8. Sudan's arguments to the contrary disregard many of Plaintiffs' points and are otherwise without merit.

Sudan does not dispute or wholly ignores the core elements of Plaintiffs' argument that corporations are U.S. nationals because they are "citizen[s] of the United States." 8 U.S.C. § 1101(a)(22)(A). As Sudan concedes, whether the word "citizen" includes corporations depends on "the context and purpose of the whole legislation." *Swiss Nat'l Ins. Co. v. Miller*, 267 U.S. 42, 46 (1925); Sudan Opp. Br. at 7. The FSIA is a remedial statute, and as Plaintiffs' motion explained (and Sudan does not contest), in remedial statutes with an international focus, corporations have been deemed U.S. nationals under definitions that use language nearly identical to that incorporated into Section 1605A. *See* International Claims Settlement Act, 22 U.S.C. § 1621(c); Libya Claims Resolution Act, P.L. 110-301; *see also* Mot. at 8. "[T]he nature of the remedy" provided in Section 1605A compels the same result here. *United States v. Northwestern Express Co.*, 164 U.S. 686, 689 (1897) (considering the "nature of the remedy" in construing the statutory term "citizen"). Congress enacted the terrorism exception to deter acts of terrorism and to grant relief for injuries caused by state-sponsored terrorist acts. Those purposes are best served by permitting corporations to recover for such injuries.

7

Rather than engage with Plaintiffs' analysis, Sudan erroneously looks to how "citizen" is used in the INA and to that statute's regulatory scope. Sudan Opp. Br. at 8. Definitions incorporated by reference "become part of the adopting statute as though written therein." 2B Sutherland Statutory Construction § 51:8 (7th ed.); *see Hassett v. Welch*, 303 U.S. 303, 314 (1938) ("Where one statute adopts the particular provisions of another by" cross-reference "the effect is the same as though the … provisions adopted had been incorporated bodily into the adopting statute."). The INA's definition of "national of the United States" is incorporated into Section 1605A(h)(5). That definition is therefore part of the FSIA's terrorism exception to sovereign immunity, and it must be interpreted in light of that exception's aims. *See, e.g.*, *United States v. CDMG Realty Co.*, 96 F.3d 706, 717 (3d Cir. 1996) (interpreting a definition incorporated from another statute based only on the context and purpose of the adopting statute). The INA's scope and purpose are irrelevant and cannot be the basis for imposing an extra-textual limit on the parties who can seek relief under Section 1605A.

Sudan's argument about the INA is unpersuasive even on its own terms. Citing a smattering of INA provisions about "citizenship," Sudan insists that the law's definition of "national of the United States" excludes corporations because the INA "governs" only "immigration and naturalization procedures for persons." Sudan Opp. Br. at 8. However, as Plaintiffs' motion pointed out and Sudan never mentions, adjacent INA definitions suggest the opposite. The statute's definition of "person" includes an "organization," 8 U.S.C. § 1101(b)(3), denoting that the INA reaches beyond "natural persons."[3] Sudan Opp. Br. at 8.

---

[3] *Swiss National Insurance Co. v. Miller*, 267 U.S. 42 (1925), does not support Sudan's reading. That case did not involve an incorporated definition, so it cannot bolster Sudan's theory that the INA's purpose should matter in interpreting Section 1605A. Moreover, *Swiss National* held that one statute's definition of "citizen" did not encompass corporations primarily because the statute elsewhere made "especial mention of partnerships, associations, and corporations" as "a different class" from citizens. *Id.* at 46 (calling this "the strongest and to us the convincing argument"). Neither the GBA nor Section 1605A contains a similar provision that specifically addresses corporations.

8

Sudan is similarly selective in its attempt to read Section 1605A itself to "indicate" that only "natural persons" may bring suit to recover for state-sponsored acts of terrorism. *Id*. Sudan observes that, in listing those who may bring a private right of action, Section 1605A(c) places alongside "national[s] of the United States" several categories of individuals. Those additional categories are just that, additional. They do not purport to restrict, or even to inform, the definition of "national of the United States." Sudan further claims that Section 1605A(c)'s reference to liability for "personal injury or death" means that Congress withdrew immunity "only in actions asserting claims arising from personal injury or deaths of natural persons." Sudan Opp. Br. at 8. Blatantly, Sudan ignores that in the next breath Congress authorized actions "for reasonably foreseeable property loss," confirming that it was concerned not just about personal injuries but also about property damage caused by state-sponsored acts of terrorism. 28 U.S.C. § 1605A(d).

Finally, Sudan has no response to Plaintiffs' alternative argument that corporations are U.S. nationals under the "allegiance" prong of the incorporated definition. 8 U.S.C. § 1101(a)(22)(B) ("U.S. national" includes a "person" that "owes permanent allegiance to the United States"); *see* Mot. at 8. "[A]llegiance is nothing more than the tie or duty of obedience of a subject to the sovereign under whose protection [the subject] is." *Inglis v. Trustees of Sailor's Snug Harbor*, 28 U.S. 99, 155 (1830). And a corporation, because "[i]ts rights to act as a corporation are only preserved to it so long as it obeys the laws of its creation," owes a duty of obedience and allegiance to the United States and its state of incorporation. *Hale v. Henkel*, 201 U.S. 43, 74-75 (1906). The United States' longstanding practice of treating U.S. corporations as nationals of the United States for purposes of international claims settlements and diplomatic protection underscores this allegiance principle. Indeed, as the United States explained in advocating for American corporate recovery under an early international claims process, a corporation "owes allegiance" to the United

9

States and "to the state that created it … exactly as an individual owes allegiance to the country of his birth." *See* Exhibit 1, Reply Brief of the United States, *United States v. Germany*, Before the Mixed Claims Commission, United States and Germany (1924) at 10.  Thus, even if corporations are not "citizen[s] of the United States," they are still "national[s]" because they "ow[e] permanent allegiance to the United States."  8 U.S.C. § 1101(a)(22)(B).

In the end, the Court need not resolve either the question of Section 1605A's scope or the meaning of "national of the United States."  Because the Court concluded that it had subject matter jurisdiction over the *Federal Insurance* and *Continental Casualty* Plaintiffs' claims under both Sections 1605B and 1605A, R&R at 32-35, the Court may leave those two issues for another day.  Sudan misguidedly alleges that Plaintiffs are trying to take a "second bite at the apple" and that reconsideration on these important issues is inappropriate.  Sudan Opp. Br. at 4.  As Plaintiffs have discussed, however, reconsideration on the question of Section 1605A's scope is warranted because the Court overlooked legal authorities that could have reasonably altered its conclusion, including prior decisions in this MDL that conflict with the determination that insurer claims are limited to subrogated claims of U.S. nationals.  Reconsideration on that point is all the more prudent because, if reconsideration is granted, the Court need not reach the question of first impression concerning corporations' status as U.S. nationals.  That novel issue is particularly difficult and complex, and it deserves more fulsome treatment than was possible in the parties' briefs on this motion or on Sudan's sprawling motion to dismiss.

**V.      Conclusion**

For the reasons explained above, and in the CAC Plaintiffs' June 10, 2022 Motion at ECF No. 8090, Plaintiffs respectfully ask that the Court reconsider and revise it May 3, 2022 R&R.

Respectfully submitted,

COZEN O'CONNOR

By:  /s/  Sean P. Carter
SEAN P. CARTER
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel.: (215) 665-2105
Email: scarter1@cozen.com

*Co-Chair of the Plaintiffs' Executive Committee for Commercial Claims on behalf of the Consolidated Amended Complaint Plaintiffs*


MOTLEY RICE LLC

By:  /s/  Robert T. Haefele
ROBERT T. HAEFELE
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*Co-Liaison Counsel for the Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the* Consolidated Amended Complaint Plaintiffs

## CERTIFICATE OF SERVICE

  I hereby certify that a true and correct copy of the Consolidated Amended Complaint Plaintiffs' Reply Brief in Further Support of Their Motion for Partial Reconsideration of the Court's May 3, 2022 Report & Recommendation (ECF No. 7942), was electronically filed this 30th day of June 2022. Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system.

                J. Scott Tarbutton, Esq.

LEGAL\58517017\1