# LAW OFFICE OF JOHN F. SCHUTTY, P.C.
445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (212) 745-1157  Fax: (917) 591-5980
john@johnschutty.com

July 8, 2022                                                                 **Via ECF**

Honorable George B. Daniels
United States District Court Judge
Honorable Sarah Netburn
United States Magistrate Judge
Southern District of New York

> Re:   *In re Terrorist Attacks on September 11, 2001*
> MDL No. 03-MDL-1570 (GBD) (SN)
> *Ashton et al. v. al Qaeda Islamic Army*, et al., 02-cv-6977 (GBD)(SN)
> (and member case *Burlingame v. Bin Laden, et al.,* 02-cv-7230 (GBD)(SN))

Your Honors:

I represent the personal representatives (all widows) and "heirs" (qualified by applicable state law) of eight decedents killed within the World Trade Center on September 11, 2001.

On behalf of my clients, I write to protect their interests since numerous new "adversarial" claims are being filed against the Taliban; many of these claims appear to be invalid and, yet, there is a risk that these claimants will be awarded default judgments that will diminish my clients' recovery from what is now a limited fund of money held by the Federal Reserve Bank of New York.  This Court appeared to be aware of this potential when it issued MDL ECF#7870 dated April 11, 2022 (Order re: information required from plaintiffs when filing future default judgments against the Taliban).

With the Taliban in default, some "adversary" party needs to advise the Court when certain plaintiffs, lacking standing and timely claims, seek money from a "limited fund," or those invalid claims will take money from court-authorized plaintiffs with timely, long-standing claims.  Specifically, I am asking the Court not to "rubber stamp" future requests for default judgments against defaulting defendants, without investigating the merits of individual claims due to the limited fund of money available.

The claims asserted against the Taliban are *not* governed by the Foreign Sovereign Immunities Act, like those previously adjudicated against the Islamic Republic of Iran. To ensure that this Court is properly apprised of the law in rendering justice against the Taliban, I ask the Court to require briefing on the law applicable to recovery from the Taliban – the Plaintiff's Executive Committee on Personal Injury & Death can state its position on which plaintiffs are entitled to recover damages, and any party who disagrees

Honorable George P. Daniels & Magistrate Judge Sarah Netburn
July 8, 2022, Page 2

with the PEC's assessment should, in turn, be entitled to brief and challenge what the PEC claims is applicable law. In this manner the Court will hear from all "adversarial" parties with an interest in the limited fund of money that may be disbursed.

I ask the Court to ensure, at the very outset, that any plaintiff seeking relief against a defendant in default (for the death of a 9/11 victim) be required to answer three basic questions: (1) does this plaintiff have "standing" (is this person an appointed personal representative of a decedent's estate), (2) is this person a qualified "heir" under applicable law,[1] and (3) has this claim been timely filed (*viz.*, is it barred by the applicable statute of limitations or by the equitable doctrine of laches)?

For example and for illustrative purposes, I refer the court to a recently-filed Second Amended Complaint against the Taliban (MDL ECF#8115) adding over 3,000 new Taliban plaintiffs (MDL ECF#8115-1). Are all of these newly-added wrongful death plaintiffs appointed personal representatives, properly qualified to pursue wrongful death damages (no), are all these new plaintiffs qualified "heirs" of a decedent's estate under applicable local/state law (no), and are these claims timely after the passage of 21 years since the 9/11 event (no)?

And as to the *Owens* plaintiffs recently transferred to this MDL litigation (*Owens v. Taliban*, No. 22-cv-1949-VEC (S.D.N.Y.)) – plaintiffs claiming to be the alleged victims of the 1998 United States embassy bombings in Nairobi, Kenya and Dar es Salaam, Tanzania – plaintiffs who only this year asserted claims against the Taliban, are their decades-old causes of action timely? Should these *Owen* plaintiffs recover on equal footing with 9/11 widows and children who filed timely claims against the Taliban, shortly after the events of 9/11? The *Owens* plaintiffs have reportedly already received more significant sums of money from the USVSST fund than the widows and children of 9/11 decedents, since the *Owens* plaintiffs received large sums from the USVSST before 9/11 widows and children were allowed to enter that fund (at a later time, when the fund's assets were far more limited).

As you know, this Court's docket has been inundated with new plaintiffs asserting new claims more than two decades after the tortious acts in question. Will there be no policing of who may bring suit and when the filing of new claims must end? *See, e.g., Shiekh v. Republic of Sudan*, 308 F.Supp.3d 46, 55 (D.D.C. 2018) ("The possibility of nearly endless litigation takes on a new and more troubling dimension when paired with the murky public policy consequences of enabling untimely judgments"), and *Maalouf v.*

---

[1] The Court will recall that my office has sought leave to file a Fed. R. Civ. P. 60(b) motion to vacate the default judgment obtained by the *Havlish* plaintiffs – on the ground that this default judgment was rendered without regard to the actual scheme of liability pled by those plaintiffs (common law, and not the FSIA). For the convenience of the Court, I am attaching a copy of my prior letter to the Court on this subject as Exhibit A (Case 1:03-cv-09848-GBD-SN Document 615 Filed 04/20/22).

Honorable George P. Daniels & Magistrate Judge Sarah Netburn
July 8, 2022, Page 3

*Republic of Iran*, 306 F.Supp.3d 203, 211 (D.D.C. 2018) ("without some policing of time limits, plaintiffs may seek to exploit prior decisions finding nations liable for certain conduct to later pursue large damage awards decades after the fact . . . In this way, plaintiffs can continue piggybacking off of older decisions for decades to extract multimillion dollar judgments from absent sovereigns . . . As long as each crop of plaintiffs could show that they were victims or proper third-party claimants, they could continue racking up sizeable damage awards for decades in response to a single act."), *both rev'd on other grounds, Maalouf v. Republic of Iran*, 923 F.3d 1095 (D.C. Cir. 2019) (holding: district court may not raise a statute of limitations defense *sua sponte* against a defendant in default). Here, an adversary group of plaintiffs is raising defenses to the assertion of untimely claims by unqualified heirs; this Court will not be acting in a *sua sponte* manner. It is time to stop the seemingly never-ending filing of new claims.

I write at this time (apart from the PEC) because I have no choice – the attorneys within the PEC disagree with my office as to the applicability of state law in this litigation; this compels me to write separately to the Court about defects in recent filings.

My clients are within the *Ashton* and *Burlingame* actions, but their claims differ in one serious respect from the claims set forth by other lawyers within the *Ashton* and *Burlingame* actions (claims pursued by the leaders of the Plaintiff's Executive Committee ("PEC") for Personal Injury & Death) – my clients allege that the state administration of estates and state wrongful death law have been wrongfully ignored in awarding wrongful death damages to certain plaintiffs within this multidistrict litigation (my clients claim that awards have been made to individuals who have filed individual claims in an untimely manner and individuals who are not entitled to wrongful death damage award distributions under applicable state law). Since all of the PEC law firms represent both "heirs" and "non-heirs" (under state law) within this litigation, the PEC attorneys cannot properly represent my clients (who are all state-appointed personal representatives and "heirs" under state law: widows and children of 9/11 decedents); a conflict of interest exists. In short, my clients are presently deprived of a proper representation of their interests within the existing "PEC for Personal Injury & Death."

In the interest of justice, I ask the Court to consider the above in resolving the difficult issues now before the Court.

Sincerely yours,

*John F. Schutty*