UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |

*This document relates to*:
All Actions

### PLAINTIFFS' REPLY TO SAUDI ARABIA'S OPPOSITION AND IN FURTHER SUPPORT OF PLAINTIFFS' FED. R. CIV. P. 72 OBJECTIONS

The *Ashton* Plaintiffs reply to the Kingdom of Saudi Arabia's Opposition, ECF No. 8168, to Plaintiffs' Rule 72 Objections, ECF No. 8114, to the Magistrate Court's Order, ECF No. 8066, and also address the Kingdom's newly served June 30, 2022 table of "Confidentiality Designations" to the materials released by the Metropolitan Police Service ("MPS Materials"). Exhibit 1, attached. This Court should set aside the Magistrate Court's Order, ECF No. 8066, and allow the U.K. Metropolitan Police ("MPS") Materials to be public. Alternatively, this Court should return the matter to the Magistrate Court to rule on the Confidentiality Designations of the MPS Materials recently filed by Saudi Arabia.

**After having the MPS Materials for a month, the Kingdom of Saudi Arabia identified only a few fleeting images and 20+ year old bank records in asserting privacy concerns. Now, however, Saudi Arabia has reversed its position and claims that nearly all the MPS Materials are confidential and must be hidden from public view.** The Kingdom's newly filed Confidentiality Designations do not provide a justification for any of those designations. Moreover, at the meet-and-confer with Plaintiffs before its motion was filed, the Kingdom identified only certain family photographs and personal banking information in the MPS Materials as confidential. But after Plaintiffs agreed to work with Saudi Arabia to protect

any such documents from disclosure, the Kingdom refused to do so and filed its motion claiming that making available to the public the MPS Materials, which the MPS had declassified, was a violation of the protective order in this case. In doing so, the Kingdom now falsely characterizes the MPS Materials as "consisting almost entirely of personal and private documents and other files gathered from Al Bayoumi's home in the United Kingdom." ECF No. 8168, at 3.[1]

Contrary to the Kingdom's claims, the Metropolitan Police described the MPS Materials as "evidential holdings" that are "primarily, but not limited to, witness statements, documentary and physical exhibits"; in short, "[m]aterial that would form the basis of a prosecution in UK criminal court proceedings." ECF No. 7832-1, ¶ 13.

While a large quantity of the MPS materials were seized during searches carried out by British police, they have nothing to do with Bayoumi's life in the United Kingdom. Rather, the vast bulk of MPS Materials comprise documents, photographs, correspondence, artifacts and videos concerning Bayoumi's activities in San Diego, California, where he was sent to work for Saudi Arabia, and where he hosted and assisted the 9/11 hijackers. In addition, the MPS materials include audio files and accompanying transcripts of interviews with Bayoumi in British police custody.

**The MPS materials are public, and Plaintiffs have been consistent in upholding that fact**. The Kingdom repeats its misleading argument that that the MPS' "operational and information security measures" described in Plaintiffs' sworn affidavit of April 5, 2022, ECF No. 7832, ¶¶ 8-10, are "inconsistent with the London MPS itself making the MPS material public." ECF No. 8168, at 11. The Kingdom also ignores the fact that the MPS itself already made

---

[1] The examples of items in the MPS collection on which the Kingdom draws to justify its mischaracterization include "Al Bayoumi's private financial and banking information, identification materials, personal contact information, and home videos depicting, among other things, his young children."

substantial redactions to the MPS Materials for the very reason that the documents were being made public.

The Kingdom mischaracterizes the actions taken by Plaintiffs in discharging their duties under the letters rogatory process to: secure the MPS Materials as evidence; preserve and document the chain of custody; ensure that the MPS Materials were shared with the other parties; and notify the Court in accordance with the terms of the Court's Hague Convention Request. None of these actions affected the public status of the MPS Materials.

Further, after the Court asked Plaintiffs to waive the requirement to file certified copies of the MPS Materials on the Court docket, Plaintiffs placed the MPS Materials on Document Archive website for access by the 9/11 clients and the public.

Contrary to the Kingdom's insinuations, Kreindler's painstaking review and redaction of the MPS Materials prior to posting is not "circumstantial evidence that the firm knew it was making the materials public for the first time." ECF No. 8168, at 11.  Rather the firm took responsible measures to remove from the MPS Materials hosted on the website images of children (who are now all adults) from videos and still photographs.  Since the materials had already been reviewed by the MPS and made public, Plaintiffs undertook their voluntary review "out of an abundance of caution," ECF No. 7996 at 2.

Nevertheless, the Kingdom claims "any [redaction] review failed to identify (among other things) images of Omar Al Bayoumi's children and of his wife in the hospital after their daughter's birth." ECF No. 8004, at 2.[2]  But from the very outset of this dispute, Plaintiffs agreed to delete any such materials.  The Kingdom could have assisted in the process and pointed out

---

[2] The Kingdom renews this claim in its Opposition brief, stating that: "Kreindler edited some photos and videos to exclude some portions depicting Al Bayoumi's children. See ECF No. 7957, ¶ 4. But the firm published the photo of his wife in the hospital, as well as at least one video clearly showing his then-minor children. See *id*."

any oversights but refused to participate.  Instead, the Kingdom cites this single example (while ignoring all of the edits made by Plaintiffs to the documents) and demands unprecedented, blanket censorship of *all* video exhibits produced by the MPS – most of which have nothing to do with Bayoumi's family.

Despite Saudi Arabia's claims, Plaintiffs have no interest in posting photos or personal information that are unrelated to the issues at stake in the litigation.   Plaintiffs invited Saudi Arabia to contribute its own proposals for confidentiality designations – indeed, the basis on which Kreindler agreed to a "temporary removal" of its public-access document archive was to permit Saudi Arabia to particularize its designations and enable "appropriate redactions" to be applied. ECF No. 7957 at 2.  Plaintiffs agreed to work with Saudi Arabia to remove any remaining personal materials by means of further redactions.  Rather than genuinely working together, Saudi Arabia sandbagged Plaintiffs and went to the Court claiming a Protective Order violation. The Kingdom repeats its abuse of the meet-and-confer process in its demand for blanket censorship under the guise of its June 30, 2022, Confidentiality Designations.

The Magistrate Court erred by not ordering Saudi Arabia to serve its particularized confidentiality designations, and then undertaking a review of those designations, before issuing its June 2, 2022, Order.

**Instead of addressing the real issue, Saudi Arabia creates a smokescreen by attacking the Kreindler firm**.  The Kingdom's mischaracterization of Kreindler's client-information webpage as a "press release" is an improper attempt to stymie legitimate communication between the 9/11 Families and their attorneys.  Judge Netburn confirmed that though the MPS Materials would ordinarily have been lodged on the public docket, available for anyone to review, the handling of the MPS Materials posed "logistical" challenges.  Similarly,

those same challenges led Kreindler to share the MPS Materials with their clients through a webpage.[3]

The Kingdom improperly claims that the MPS Materials were not judicial documents because the Court's June 9, 2021 Letters Rogatory Request described a process of "lodging" the pleadings. ECF No. 8168, at 13. The Court's Request, however, clearly foresaw that whatever materials were obtained from the MPS would be "lodged" with the Court in the sense that they would be *docketed* for access and use by all parties in open pursuit of the litigation and available for public inspection. *See, e.g.,* ECF 6834-1 at 8. The MPS, as the producing entity and originator of these materials, and in full knowledge of Plaintiffs' docketing requirement, devoted considerable resources to resolving questions of privacy and legitimate data protection. The MPS inserted redactions specifically for the redacted versions to be made public. Having completed its own declassification review in accordance with the law and under the judicial supervision of the United Kingdom High Court, the MPS confirmed that the MPS Materials were authorized to be "disclosed" and were "no longer classified." ECF No. 7832-1, ¶ 13. The release of the MPS Materials made them public.

Saudi Arabia misreads the confidentiality order to apply to the United Kingdom government's release of material. The confidentiality clauses in the Protective Order were never meant to apply to documents such as the MPS Materials after their official review and formal release by the United Kingdom authorities. Insofar as the Magistrate Court relies on the fact that the MPS Materials were produced in response to the letters rogatory and therefore involved

---

[3] In a further mischaracterization, the Kingdom states that "[a]t the bottom of the web page containing the press release was a solicitation for potential clients, including an offer of a "FREE, confidential case consultation." ECF No. 8168 at 5. The Kingdom fails to reveal that the language is part of a banner that appears at the bottom of every webpage of Kreindler's website. Further, the Kingdom's characterization of the posting as a solicitation for clients is incorrect, as Kreindler is not accepting any new clients in this case.

judicial action, the same judicial action required public lodging and docketing of the MPS Materials. It is inconsistent to invoke the judicial role for purposes of hiding the MPS Materials from public scrutiny while ignoring the command in the letters rogatory that those same items be available to the public. The Magistrate Court's finding that Kreindler violated the protective order by following the very command in the letters rogatory after the Magistrate Court identified only "logistical" problems in docketing those items is clearly erroneous and contrary to the express terms of the protective order and the case law concerning public access to judicial filings.

## CONCLUSION

This Court should set aside the Magistrate Court's Order, ECF No. 8066, and allow the MPS Materials to be public, or in the alternative, return the matter to the Magistrate Court to rule on the privacy designations of MPS Materials recently filed by Saudi Arabia to expedite the 9/11 Families' challenge to the Kingdom's audacious effort to keep under seal nearly all MPS Materials — items of critical importance in this litigation.

Dated: New York, New York
July 8, 2022

KREINDLER & KREINDLER LLP

By: /s/ *Steven R. Pounian*
STEVEN R. POUNIAN
JAMES P. KREINDLER
ANDREW J. MALONEY
MEGAN W. BENETT
JAMES GAVIN SIMPSON
485 Lexington Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: spounian@kreindler.com
*For the Ashton Plaintiffs*