UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Case No. 03-md-1570 (GBD)(SN) |
| ESTATE OF ALICE HOGLAN, BY ITS PERSONAL REPRESENTATIVE CANDYCE S. HOGLAN, ET AL., <br><br> Plaintiffs-Judgment Creditors, <br><br> v. <br><br> OAKTREE CAPITAL MANAGEMENT, LP; FLEETSCAPE CAPITAL HOLDINGS LIMITED; AND FLEETSCAPE SUEZ RAJAN LLC; <br><br> Garnishees. | Case No. 11-cv-7550 (GBD)(SN) |

**MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENTS' MOTION TO QUASH THE HOGLAN CREDITORS' DEPOSITION SUBPOENA**

## **TABLE OF CONTENTS**

I. Preliminary Statement ................................................................................................................1

II. Argument .....................................................................................................................................5

 A. The Hoglan Creditors Have Adequately Alleged Personal Jurisdiction, and the Disputed Deposition Could Fully Resolve the Issue ..........................................5

 B. Respondents' Rule 45(c) Objection Lacks Merit.......................................................9

 C. There Remains a Significant Dispute of Fact Regarding Respondents' Possession or Custody Over the Oil Cargo............................................................11

III. Conclusion .................................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
  2021 WL 2605957 (N.D. Fla. May 28, 2021) ...........................................................................11

*CSX Transportation, Inc. v. Island Rail Terminal, Inc.*,
  879 F.3d 462 (2d Cir. 2018).........................................................................................................2

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
  2013 WL 4647194 (S.D.N.Y. Aug. 29, 2013) .............................................................................9

*Ehrenfeld v. Mahfouz*,
  489 F.3d 542 (2d Cir. 2007).........................................................................................................6

*EM Ltd. v. Republic of Argentina*,
  695 F.3d 201 (2d Cir. 2012).....................................................................................................2, 7

*In re Gaming Lottery Sec. Litig.*,
  2000 WL 1801840 (S.D.N.Y. Dec. 7, 2000) ...............................................................................9

*Haber v. United States*,
  823 F.3d 746 (2d Cir. 2016).........................................................................................................7

*Int'l Seaway Trading Corp. v. Target Corp.*,
  2021 WL 672990 (D. Minn. Feb. 22, 2021) ..............................................................................10

*Jazini v. Nissan Motor Co.*,
  148 F.3d 181 (2d Cir. 1998).........................................................................................................6

*Koehler v. Bank of Bermuda, Ltd.*,
  2003 WL 289640 (S.D.N.Y. Feb. 11, 2003)............................................................................8, 9

*Linde v. Arab Bank, PLC*,
  262 F.R.D. 136 (E.D.N.Y. 2009) .................................................................................................6

*N. Mariana Islands v. Canadian Imperial Bank of Com.*,
  21 N.Y.3d 55 (N.Y. 2013) .........................................................................................................12

*Nasuti v. Walmart, Inc.*,
  2021 WL 2336935 (D.S.D. June 8, 2021) .................................................................................10

*In re Newbrook Shipping Corp.*,
  498 F. Supp. 3d 807 (D. Md. 2020), *vacated and remanded on other grounds*,
  31 F.4th 889 (4th Cir. 2022) ......................................................................................................10


*Peterson v. Spartan Indus., Inc.*,
　33 N.Y.2d 463 (N.Y. 1974) ................................................................................................6

*Probulk Carriers Ltd. v. Marvel Int'l Mgmt. & Transp.*,
　180 F. Supp. 3d 290 (S.D.N.Y. 2016) ............................................................................9, 10

*Estate of Ungar v. The Palestinian Auth.*,
　2009 N.Y. Misc. LEXIS 4490, 2009 NY Slip Op 32938(U) (N.Y. Sup. Ct.
　Dec. 17, 2009) ....................................................................................................................8

*United States v. $110,000 in United States Currency*,
　No. 21 C 981, 2021 WL 2376019 (N.D. Ill. June 10, 2021) .........................................9, 11

**Other Authorities**

N.Y. CPLR § 5224 ........................................................................................................................4

N.Y. CPLR § 5223 ........................................................................................................................7

Fed R. Civ. P. 26 .......................................................................................................................8, 9

Fed. R. Civ. P. 30 ...................................................................................................................10, 11

Fed. R. Civ. P. 69 .....................................................................................................................2, 7

Fed. R. Civ. P. 45 ............................................................................................................9, 10, 11

9 James Wm. Moore, *Moore's Federal Practice* § 45.50 (2022) ................................................10

Siegel, *New York Practice* § 509 (6th ed. 2022) ...........................................................................8

Judgment Creditors Estate of Alice Hoglan et al. ("the Hoglan Creditors"), by and through their undersigned counsel, respectfully submit this memorandum of law in opposition to the motion of Oaktree Capital Management, LP ("OCM"), Fleetscape Capital Holdings Limited ("FCHL"), and Fleetscape Suez Rajan ("FSR")—collectively, "Respondents"—to quash a subpoena to testify at a deposition dated June 23, 2022.

## I.     Preliminary Statement

The Hoglan Creditors—terror victims and their families and estates with long-unpaid judgments against Iran and its instrumentalities—initiated the above-captioned turnover proceeding in March 2022, shortly after reports emerged that Iranian-owned crude oil had come aboard the Suez Rajan, a vessel owned by Respondents. Because of Respondents' minimal and selective cooperation with the Hoglan Creditors and these proceedings, many relevant facts remain unknown. But this much appears beyond dispute: the Respondents conduct business or until recently conducted business from offices in New York; the Respondents continue to hold themselves out as conducting business from New York; the Suez Rajan is currently loaded with oil originating from the Iranian port at Kharg Island; the Respondents directly and indirectly own the Suez Rajan; the Respondents are currently directing the movements of the Suez Rajan[1]; a "Termination Event" has occurred under the Respondents' contract with the vessel's charterers; the Respondents are now contemplating the sale of the Suez Rajan in the midst of these proceedings, *see* Maloney Decl. Ex. 3; and despite Respondents' repeated invocation of a United

---

[1] Respondents' limited document production of June 21, 2022, *see* Mot. at 5, contained multiple emails from February 2022 evidencing that Respondents issued express directives concerning the Suez Rajan's movements and operations in the wake of reports that Iranian oil had come aboard the vessel. Respondents have declined to provide similar documents from subsequent periods, which the Hoglan Creditors anticipate being the subject of a future motion to compel. The Hoglan Creditors are prepared to make those limited documents available to the Court, under seal if necessary, at the appropriate time, and they demonstrate beyond cavil that Respondents at a minimum exercise control over the movement and operations of the vessel.

1

States investigation into matters related to these proceedings, the United States, which has appeared in the MDL, has declined to move to stay or otherwise be heard in connection with the Hoglan Creditors' turnover motion.

At the time the Hoglan Creditors served a restraining notice and commenced these proceedings, the Iranian oil aboard the Suez Rajan was en route to be sold in China. Given the exigent nature of the proceeding, there was no time for discovery prior to the filing of the motion. Instead, in moving for turnover, the Hoglan Creditors harnessed publicly available information concerning the Iranian origin of the oil, Respondents' control over it, and Respondents' amenability to personal jurisdiction in this Court.

The turnover motion is now fully briefed. *See* Dkt. 7722 ("Turnover Mot."); Dkt. 7801 ("Turnover Opp."); Dkt. 7915 ("Turnover Reply Mem.").[2] As the Hoglan Creditors emphasized in their reply brief, the parties' principal submissions made apparent the existence of several disputed issues of fact requiring the development of an evidentiary record through discovery. During the pendency of the turnover motion, in order to prevent a rare opportunity to enforce their judgments from slipping away, the Hoglan Creditors have continued to propound limited discovery requests, relying on the "broad post-judgment discovery in aid of execution" provided for in Fed. R. Civ. P. 69 and Article 52 of the CPLR, *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), to obtain information from Respondents that would clarify the disputed issues before the Court and narrow or eliminate the need for an evidentiary hearing.[3] All discovery requests have been "calculated to assist in collecting on a judgment," thereby

---

[2] Unless otherwise indicated, all docket citations refer to the MDL docket, No. 03-MD-1570.
[3] *See CSX Transportation, Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 473 (2d Cir. 2018) (internal quotation marks and citations omitted) ("A court may grant summary relief where there are no questions of fact, but it must conduct a trial on disputed issues of fact on adverse claims in a turnover matter.").

complying with the principal constraint on the scope of such broad discovery. *Id*.

A key issue in dispute in the turnover proceeding is the amenability of Respondents to personal jurisdiction. The turnover motion alleged personal jurisdiction over the Respondent entities on the basis of, *inter alia*, OCM's office location at 1301 Avenue of the Americas, Dkt. 7723-18, and a listing in the premier maritime business directory showing that FCHL has a New York office on Park Avenue in Manhattan and a New York area phone number, Dkt. 7723-22. A LinkedIn page for Fleetscape also promotes a New York office. Dkt. 7723-16. Rather than address the turnover motion's evidence concerning Fleetscape's New York presence and the likelihood that Suez Rajan-related business took place there, Respondents simply stated, via the declaration of the Oaktree and Fleetscape managing director Martin Graham dated March 28, 2022 that accompanied their opposition memorandum, that "neither FSR nor [FCHL] conduct"—in the present tense—"any business within the state of New York" or have any offices or operations in the state of New York." Dkt. 7803 ("Graham Decl."), ¶¶ 5-6.

This response raised more questions than it answered. Namely, if the Fleetscape Respondents do not conduct any business in New York, then how to account for the Lloyd's List advertisement of the Park Avenue office or Fleetscape's own LinkedIn profile advertising a New York office? And if Fleetscape's New York office previously existed but is no longer in use, when did it stop being used, and was it in use during the time periods and for purposes relevant to this turnover proceeding?

It would be straightforward and unburdensome—hardly a "fishing expedition"—for Respondents to answer these simple questions about their New York contacts that flow directly from contradictions between the public record and their own sworn submissions to the Court. To that end, the Hoglan Creditors issued three limited discovery subpoenas to each Respondent on

3

June 23, 2022, invoking the authority of CPLR § 5224. A two-question information subpoena ("the Second Information Subpoena") simply asked whether—and if so, when—Respondents have used office space at 277 Park Avenue. *See* Declaration of Douglass A. Mitchell (Mitchell Decl.), Ex. A. Respondents objected. *See id.* Ex. C.[4] A document subpoena ("the Second Document Subpoena") contained a single request for records of Respondents' leases for use of office space in New York from October 8, 2020 (the date Fleetscape Suez Rajan LLC was created as a vehicle to own the Suez Rajan, *see* Graham Decl. ¶ 13) to the present, including office space at 277 Park Avenue. Mitchell Decl. Ex. B. Respondents again objected. *Id*. Ex. C. And finally, a deposition subpoena ("the Graham Deposition Subpoena") sought on-the-record questioning of the dual-hatted Fleetscape and Oaktree director Martin Graham[5]—whether in person or by remote means—about his sworn statements that the Fleetscape entities do not conduct business in New York, in light of the publicly available evidence to the contrary. Maloney Decl. Ex. 1. Respondents moved to quash.

Respondents' motion to quash argues that the Hoglan Creditors have failed to make a sufficient threshold showing of personal jurisdiction—an issue that is addressed in the turnover motion papers—once again omitting key pieces of evidence. They further assert that discovery concerning personal jurisdiction is unnecessary because they view it as undisputed that they purport to lack possession or custody over the oil cargo, overlooking the significant open factual questions regarding that issue. And they baselessly assert that Mr. Graham cannot be deposed from London because of Rule 45(c)'s geographic limits, ignoring that a remote deposition would

---

[4] The Hoglan Creditors are currently planning to meet and confer with Respondents concerning their responses and objections to the Second Document and Information Subpoenas.
[5] *See* Dkt. 7723-9 at 2 (Fleetscape website listing Martin Graham as a Managing Director); Graham Decl. ¶ 1 (identifying himself as "a managing director with Oaktree Capital Management").

4

obviate any such problems. For these reasons, the Court should deny the motion to quash, and—as the Hoglan Creditors requested in their turnover reply brief—set a schedule for the taking of further discovery and an evidentiary hearing that would enable the Court to fully resolve the turnover proceeding.

**II.     Argument**

    **A.     The Hoglan Creditors Have Adequately Alleged Personal Jurisdiction, and the Disputed Deposition Could Fully Resolve the Issue**

Respondents' motion to quash asserts that the Hoglan Creditors have failed to make a sufficient threshold showing of personal jurisdiction, such that Respondents should not be made to engage in jurisdictional discovery, and indeed cannot be obligated to engage in any discovery. Not so. As the Hoglan Creditors' turnover motion papers show, they have adequately alleged personal jurisdiction based on the presence of OCM's offices, leadership, and business in New York, *see* Dkt. 7723 ¶¶ 14, 15; FCHL's office in New York (at least until recently) and its ongoing use of a New York phone number to conduct business, *id.* ¶¶ 12, 17, 18; the public advertisement and promotion of FCHL's New York address and business in Lloyd's List and LinkedIn, *id.* ¶¶ 12, 17; and the reasonable inference that, because Respondents were undisputedly engaged in a maritime business of which owning the Suez Rajan was part, at least some of that business took place in their New York offices, *see* Turnover Mot. at 11. *To this day*, four months after the turnover motion was filed, the authoritative Lloyd's List directory continues to list an office for FCHL at 277 Park Avenue in Manhattan, and Fleetscape Capital's page on LinkedIn continues to mention its "offices in London, Frankfurt, and New York." Mitchell Decl. Exs. D & E. At the very least, this evidence constitutes a "sufficient start" to merit jurisdictional discovery, particularly given that additional jurisdictional "facts are within the

exclusive control" of Respondents. *Peterson v. Spartan Indus., Inc.,* 33 N.Y.2d 463, 466-67 (N.Y. 1974).[6]

In moving to quash, Respondents imply that none of the Hoglan Creditors' evidence matters, because Respondents have submitted declarations in response to the turnover motion asserting that FCHL and FSR do not presently conduct business in New York. *See* Mot. at 3, n.2 (arguing that the declarations "confirm[ed] the lack of any sufficient forum-related contacts by any Respondent with respect to this matter."). But the declarations of Tobias Backer (Dkt. 7802) and Martin Graham (Dkt. 7803) do not bear the weight Respondents place on them. They merely state that, as of the time they were submitted on March 28, 2022, the Fleetscape Respondents do not "have any offices or operations in the state of New York" and do not "conduct any business" in the state. The declarations, like Respondents' opposition memorandum, curiously ignore the contemporaneous evidence from LinkedIn and Lloyd's List regarding Fleetscape's New York office. The strictly present-tense wording of the declarations, combined with the evidence of a New York office at 277 Park Avenue—at least until the commencement of these proceedings—make it eminently plausible if not likely that at times relevant to the Hoglan Creditors' turnover

---

[6] Respondents cite the Second Circuit's decision in *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998) for the proposition that absent a *prima facie* showing of personal jurisdiction over a foreign corporation, a party is not entitled to take jurisdictional discovery. Mot. at 10. But since *Jazini*, "[the] Second Circuit has made clear . . . that a *prima facie* case is not absolutely necessary for a court to grant jurisdictional discovery." *Linde v. Arab Bank, PLC*, 262 F.R.D. 136, 145 (E.D.N.Y. 2009). In *Ehrenfeld v. Mahfouz*, 489 F.3d 542 (2d Cir. 2007), the Circuit clarified that it would be "legal error" for a district court to "under[stand] *Jazini* as forbidding jurisdictional discovery any time a plaintiff does not make a *prima facie* showing of jurisdiction." *Id*. at 550, n.6. Instead, whether to grant jurisdictional discovery is a determination "committed to the sound discretion of the district court on a case-by-case basis without 'bright-line' limits." *Linde*, 262 F.R.D. at 145 (*quoting Mahfouz*, 489 F.3d at 550, n.6). And, as explained herein and in their turnover briefs, the Hoglan Creditors have made a *prima facie* case for asserting personal jurisdiction over Respondents in any event.

6

proceeding, Respondents were conducting Suez Rajan-related business transactions out of their New York offices. *See* Turnover Reply Mem. at 3.

Seeking clarification, counsel for the Hoglan Creditors raised this issue on a meet-and-confer phone call with counsel for Respondents on June 2, 2022. *See* Maloney Decl. Ex. 2 (Letter from L. Wolosky to B. Maloney noting that the parties discussed "the apparent inconsistencies between [Graham's] declaration and the public record"). But Respondents have continued to refuse to explain the circumstances surrounding Fleetscape's advertised office at 277 Park Avenue and the relationship of any Suez Rajan-related business to that office. This failure to address a straightforward question about their New York contacts is precisely why the Hoglan Creditors noticed the deposition of Mr. Graham and issued the Second Information and Document Subpoenas. *See id.* (explaining that the proposed deposition of Mr. Graham would "cover, at a minimum, issues relating to personal jurisdiction in light of the apparent inconsistencies between his declaration and the public record"). A deposition of Mr. Graham would thus, at the very least, help resolve one of the key issues pending before the Court. *See Haber v. United States*, 823 F.3d 746, 750 (2d Cir. 2016) (plaintiff's burden in obtaining jurisdictional discovery is to show that "the requested discovery is likely to produce the facts needed to establish jurisdiction").

Contrary to Respondents' suggestions, there is nothing improper about jurisdictional discovery in the post-judgment enforcement context. The Federal Rules of Civil Procedure provide that "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery *from any person*," Fed. R. Civ. P. 69(a)(2) (emphasis added), a permissive rule that is "constrained principally in that [the discovery] must be calculated to assist in collecting on a judgment." *EM Ltd.*, 695 F.3d at 207. Similarly, CPLR Section 5223 authorizes a "judgment

7

Case 1:03-md-01570-GBD-SN   Document 8196   Filed 07/08/22   Page 12 of 17

creditor [to] compel disclosure of all matter relevant to the satisfaction of the judgment," a similarly "broad criterion authorizing investigation *through any person* shown to have any light to shed on the subject of the judgment debtor's assets or their whereabouts." Siegel, *New York Practice* § 509 (6th ed. 2022) (emphasis added). These broadly worded provisions do not contain any limitation that would bar discovery regarding a garnishee's amenability to personal jurisdiction in New York. To the contrary, they suggest the opposite. And indeed, the only case Respondents cite for their proposed rule that jurisdictional discovery directed to a garnishee is inherently beyond the scope of post-judgment discovery is a single New York trial court decision that did not itself cite any direct authority for that proposition. *See Estate of Ungar v. The Palestinian Auth.*, 2009 N.Y. Misc. LEXIS 4490, *10, 2009 NY Slip Op 32938(U) (N.Y. Sup. Ct. Dec. 17, 2009). In that case, significantly, the court expressly noted that, in reaching the decision to quash subpoenas, it had considered the fact that plaintiffs had already had an opportunity to take jurisdictional discovery in federal court, and that the federal court had already determined that the turnover defendant was not subject to personal jurisdiction. *Id*. at *10-*11. That is not the case here.

In any event, Respondents' arguments concerning Rule 69 and Article 52 of the CPLR are beside the point. The Hoglan Creditors and Respondents are now parties to federal litigation, allowing them to take "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed R. Civ. P. 26(b)(1). This general rule plainly encompasses discovery relevant to a personal jurisdiction defense raised by a garnishee in a federal court turnover proceeding. *See Koehler v. Bank of Bermuda, Ltd.*, 2003 WL 289640, at *2 (S.D.N.Y. Feb. 11, 2003) (noting that plaintiff in turnover proceeding was authorized "to pursue discovery limited to issues raised by the [third party garnishee] Bank's

8

personal-jurisdiction defense"); *see also NML Cap.*, 573 U.S. at 139 (noting the applicability of Rule 26(b)(1)'s general rule to "discovery in postjudgment execution proceedings").

The Hoglan Creditors have made a sufficient threshold showing of personal jurisdiction, and the Court plainly has the authority to provide for jurisdictional discovery under these circumstances. *See Koehler*, 2003 WL 289640, at *2; *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, No. 12 CIV. 8435 (AJN), 2013 WL 4647194, at *1 (S.D.N.Y. Aug. 29, 2013); Hr'g Tr. at 11, 43, *E.I. Du Pont De Nemours*, ECF No. 77 (ordering jurisdictional discovery in turnover proceeding regarding "the nature and scope of [defendant's] contacts with New York" where claimants "made some showing with respect to jurisdiction in New York"); *see also In re Gaming Lottery Sec. Litig.*, No. 96 CIV. 5567 RPP, 2000 WL 1801840, at *5 (S.D.N.Y. Dec. 7, 2000) (ordering evidentiary hearing to determine whether garnishee in turnover proceeding was subject to personal jurisdiction in New York). The Court should accordingly permit the Hoglan Creditors to depose Mr. Graham regarding, at a minimum, Respondents' New York contacts.

### B.   Respondents' Rule 45(c) Objection Lacks Merit

Respondents also assert that the Graham Deposition Subpoena contravenes Federal Rule of Civil Procedure 45(c)(1)(A), which provides that a subpoena "may command a person to attend a . . . deposition only . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person." This limitation was "crafted to protect third parties from the undue burden of traveling more than 100 miles to provide testimony." *United States v. $110,000 in United States Currency*, No. 21 C 981, 2021 WL 2376019, at *3 (N.D. Ill. June 10, 2021); *see also Probulk Carriers Ltd. v. Marvel Int'l Mgmt. & Transp.*, 180 F. Supp. 3d 290, 294 (S.D.N.Y. 2016) ("The point of the addition of those provisions is to avoid imposition of unreasonable travel burdens."). Because a deposition of Mr. Graham can proceed remotely, as

9

the Hoglan Creditors have offered, he need not travel at all to be deposed, and Rule 45(c) does not furnish a basis to quash the subpoena. *Id*.

As Respondents note, the deposition subpoena identified two options as the place for the deposition: either Jenner & Block's New York office, or, "pursuant to Fed. R. Civ. P. 30(b)(4), via remote means." Maloney Decl. Ex. 1. To the extent there is an ambiguity in the subpoena's identification of both a physical and a remote location, the Court has the authority to modify the subpoena such that it provides for only a remote deposition. *See Probulk Carriers*, 180 F. Supp. 3d at 294 ("Rule 45(d)(3) permits a court to modify a subpoena that requires a person to comply beyond the geographical limits specified in Rule 45(c)."); *In re Newbrook Shipping Corp.*, 498 F. Supp. 3d 807, 815 (D. Md. 2020), *vacated and remanded on other grounds*, 31 F.4th 889 (4th Cir. 2022) (modifying deposition subpoena to provide that the deposition would be conducted remotely, and therefore declining to address Rule 45(c) objection); *see also* 9 James Wm. Moore, *Moore's Federal Practice* § 45.50 (2022) ("[M]odification is generally preferred over quashing of a subpoena."). Such a modification by the Court would, moreover, obviate the supposed problem identified by Respondents, namely that only the Court can order a remote deposition to proceed. *See* Mot. at 6; *but see Nasuti v. Walmart, Inc.*, No. 5:20-CV-05023-LLP, 2021 WL 2336935, at *3 (D.S.D. June 8, 2021) (rejecting argument "that Rule 30(b)(4) prohibits the unilateral noticing of a remote deposition").

If the Graham Deposition were to be held remotely, the witness's physical location in London would not present any issues under Rule 45(c), as a number of recent cases have confirmed. *See Int'l Seaway Trading Corp. v. Target Corp.*, No. 20-MC-86 (NEB) (KMM), 2021 WL 672990, at *5 (D. Minn. Feb. 22, 2021) (rejecting argument that subpoena for virtual deposition must be quashed because of territorial limits of Rule 45, since the witness could

"comply with the deposition from his home or anywhere else he chooses that is within 100 miles of his residence"); *$110,000 in United States Currency*, 2021 WL 2376019, at *3 (noting that Rule 45(c) "does not limit the reach of a subpoena to only those residing within 100 miles of the pending litigation," and declining to quash subpoena for witness to be deposed remotely in Chicago by government attorneys in Nebraska); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885, 2021 WL 2605957, at *4 (N.D. Fla. May 28, 2021) ("[A] party may use a Rule 45 subpoena to compel remote testimony by a witness from anywhere so long as the place of compliance (where the testimony will be given by the witness and not where the trial will take place) is within the geographic limitations of Rule 45(c)."); *see also* Fed. R. Civ. P. 30(b)(4) (a remote deposition "takes place where the deponent answers the questions"). Accordingly, to the extent the Court agrees with the Hoglan Creditors that a deposition of Mr. Graham is warranted, it should direct the parties to identify a mutually agreeable time for a remote deposition.

### C. There Remains a Significant Dispute of Fact Regarding Respondents' Possession or Custody Over the Oil Cargo

Finally, Respondents argue several times in passing that "[a] deposition of Mr. Graham would provide no additional information of consequence, given among other things that the property the Hoglan Creditors seek is not in the possession or custody of any Respondent." Mot. at 9; *see also id*. at 1-2 ("the discovery that the Hoglan Creditors seek is effectively moot in light of Respondents' undisputed lack of possession, custody, or control of the property of any judgment debtor.").

That is not the case. As the Hoglan Creditors' turnover reply brief argues at length, the turnover motion sufficiently alleges Respondents' ownership and possession or custody of the vessel, and remaining factual disputes can be resolved through merits discovery. *See* Turnover

11

Reply Mem. at 5-7. Respondents have undisputed ownership of the vessel, Turnover Mot. at 4-5; Graham Decl. ¶ 13, and notwithstanding the purported bareboat charter arrangement (which is subject to termination, if it has not been terminated already)[7], they control its movement, operations, and disposition. *See* Turnover Reply Mem at 6, n.6; *see also supra* n.1. The Hoglan Creditors also demonstrated in their reply brief that a case relied on by Respondents, *N. Mariana Islands v. Canadian Imperial Bank of Com.,* 21 N.Y.3d 55 (N.Y. 2013), a case about banking, is distinguishable and does not preclude a finding that they have possession or custody of the vessel and its cargo. *See* Turnover Reply Mem. at 5. Respondents are therefore simply wrong to claim that they have an "undisputed lack of possession, custody, or control" of the Iranian oil at issue in this proceeding, and only through further discovery can the parties establish an evidentiary record sufficient to permit the Court to adjudicate the issue. Indeed, although the Hoglan Creditors' primary goal in issuing the deposition subpoena at issue here was to seek clarification on issues relating to personal jurisdiction, such a deposition could also help efficiently establish whether and to what extent Respondents control or possess the vessel and its cargo.

## III.    Conclusion

For the foregoing reasons, the Court should deny Respondents' motion to quash the subpoena, direct that a remote deposition of Martin Graham proceed on a mutually agreeable schedule, and set a more general schedule for the parties' to exchange the discovery necessary to facilitate the Court's adjudication of this turnover proceeding.

---

[7] The bareboat charter provides that sanctions violations, such as the ones at issue here involving illicit Iranian oil, constitute a "Termination Event." *See* Turnover Reply Mem. at 7 & n.7 (excerpting clauses from the Bareboat Charter).

Dated: July 8, 2022

        Respectfully submitted,

        <u>/s/ Lee Wolosky</u>
        Lee Wolosky
        JENNER & BLOCK LLP
        1155 Avenue of the Americas
        New York, NY 10036
        (212) 891-1628
        lwolosky@jenner.com

        Douglass A. Mitchell *(pro hac vice)*
        JENNER & BLOCK LLP
        1099 New York Avenue, NW, Suite 900
        Washington, DC 20001
        (202) 639-6090
        dmitchell@jenner.com

        *Counsel for Judgment Creditors Estate of Alice Hoglan et al.*