# Exhibit 1

**EXECUTION VERSION**

## AMENDED AND RESTATED SUBLEASE

This Amended and Restated Sublease is made as of the 10th day of April 2019, (hereinafter referred to as "**Sublease**") by and between PineBridge Investments Holdings US LLC (f/k/a PineBridge Global Investments LLC), a Delaware limited liability company (hereinafter referred to as "**Sublandlord**"), and Oaktree Capital Management, L.P., a Delaware limited partnership (hereinafter referred to as "**Subtenant**") with regard to the following facts.

## RECITALS

A.    Sublandlord is the Subtenant under that certain Sub-Sublease Agreement, dated as of January 6, 2010, between AIG Global Asset Management Holdings Corp. ("**AIGGAMHC**") as sublandlord and Sublandlord as subtenant (hereinafter referred to as the "**PineBridge Sublease**") (a copy of which PineBridge Sublease is attached hereto as Exhibit A and by this reference made a part hereof) concerning approximately 71,543 rentable square feet ("**RSF**") of office space (hereinafter referred to as the "**Premises**") located on the entire 42nd, 43rd and 45th floors of the building (hereinafter referred to as the "**Building**") located at 277 Park Avenue, New York, New York.

B.    AIGGAMHC is the Subtenant under that certain Agreement of Sublease, dated April 16, 2007, between JPMorgan Chase Bank, National Association (hereinafter referred to as the "**Landlord**") as sublandlord and AIGGAMHC as subtenant, as modified by a Letter dated April 27, 2008 between Landlord and AIGGAMHC (hereinafter collectively referred to as the "**Master Sublease**") (a copy of which Master Sublease is attached hereto as Exhibit B and by this reference made a part hereof) concerning approximately 142,841 RSF of office space (hereinafter referred to as the "**Master Premises**") located on the entire 41st, 42nd, 43rd, 44th, 45th and 46th floors of the Building.

C.    Landlord is the tenant under that certain Lease, dated as of April 1, 2002, by and between 277 Park Avenue, LLC ("**Building Owner**"), as landlord, and Landlord (formerly JPMorgan Chase Bank, a New York banking corporation), as tenant, as amended by a First Amendment of Agreement of Lease and Memorandum of First Amendment of Lease dated April 29, 2003 (as so amended and as otherwise or hereafter amended, collectively, the "**Prime Lease**") concerning certain space in the Building as more particularly described in the Prime Lease, including the Master Premises.

D.    Sublandlord and Highstar Capital LP, a Delaware limited partnership ("**Original Subtenant**"), entered into that certain Sublease, dated as of July 15, 2010, as amended by that certain First Amendment to Sublease, dated as of April 29, 2011 (as amended, the "**Original Sublease**"), pursuant to which Original Subtenant subleased a portion of the Premises consisting of approximately 23,889 RSF and comprising the entire 45th floor of the Building (which portion shall be hereinafter referred to as the "**Subleased Premises**") as more particularly set forth on Exhibit C attached hereto.

E.    The Original Sublease was assigned by Original Subtenant to Subtenant pursuant to that certain Assignment and Assumption of Sublease between Original Subtenant and Subtenant, dated as of the date hereof (the "**Assignment**").

28034832.7

F.      Sublandlord and Subtenant desire to amend and restate the Original Sublease in its entirety upon the terms, covenants and conditions herein set forth.

## AGREEMENT

In consideration of the mutual covenants contained herein, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.      **Sublease**.  Sublandlord hereby subleases and demises to Subtenant and Subtenant hereby hires and takes from Sublandlord the Subleased Premises.  Subtenant is familiar with the condition of the Subleased Premises and is in possession of the Subleased Premises.

2.      **Term; Expansion Option**

2.1.      **Term**. The term of this Sublease (hereinafter referred to as the "**Term**") commenced as of the Sublease Commencement Date (as defined in the Original Sublease), and shall end, unless sooner terminated in accordance with the terms hereof, on December 30, 2020 (the "**Sublease Expiration Date**").

3.      **Operating Expenses / Real Estate Taxes**.  Subtenant shall pay to Sublandlord as additional rent on a monthly basis Subtenant's Proportionate Share (33.39%) of operating expenses and real estate taxes payable by Sublandlord under the PineBridge Sublease (and Sublandlord shall forward to Subtenant copies of any applicable bills, statements, or other documentation actually received by Sublandlord from AIGGAMHC, Landlord, or Building Owner with respect to such charges); provided, however, that, except to the extent otherwise agreed in writing prior to, on, or after the Effective Date (as defined below), Subtenant shall not be responsible for payment of operating expenses or real estate taxes to the extent such charges relate to periods prior to the Effective Date.  "**Subtenant's Proportionate Share**" as of the date hereof is 33.39% (23,889 ÷71,543).  If the RSF covered by this Sublease or the PineBridge Sublease is changed during the Term, Subtenant's Proportionate Share shall be adjusted proportionately and equitably from and after the date of any such adjustment.  Subtenant shall be entitled to receive Subtenant's Proportionate Share of the amount of any refunds, if any, received by Sublandlord from AIGGAMHC on account of any overpayment under the PineBridge Sublease with respect to which Subtenant has paid additional rent to Sublandlord under this Sublease, net of Subtenant's Proportionate Share of Sublandlord's actual out-of-pocket cost of obtaining such refunds (the "**Overages**").  Sublandlord's obligations to refund any Overage shall survive the expiration or earlier termination of this Sublease.  Subtenant's obligations to pay any amounts due pursuant to this Section 3 shall survive the expiration or earlier termination of this Sublease (it being understood that Subtenant shall be responsible for the payment of all such amounts, regardless of whether or not same are invoiced to Subtenant after the Sublease Expiration Date).  In addition, Subtenant shall be liable for any New York City Commercial Rent tax payable as a result of Subtenant's lease of the Subleased Premises contemplated hereby.

4.      **Utilities**.

4.1.      **Electricity; HVAC**.  Subtenant shall pay to Sublandlord as additional rent on a monthly basis (i) Subtenant's Proportionate Share of all electric charges payable by Sublandlord under the PineBridge Sublease, (ii) any excess electric charges incurred by

28034832.7

Sublandlord as a result of Subtenant's use and occupancy of the Subleased Premises, and (iii) any overtime HVAC charges incurred by Subtenant for overtime HVAC supplied to the Subleased Premises at Subtenant's request, in accordance with the terms and conditions of the Master Sublease; provided, however, that, except to the extent otherwise agreed in writing prior to, on, or after the Effective Date, Subtenant shall not be responsible for payment of the foregoing items (i) through (iii) to the extent such charges relate to periods prior to the Effective Date. Sublandlord shall forward to Subtenant copies of any applicable bills, statements, or other documentation actually received by Sublandlord from AIGGAMHC, Landlord, or Building Owner in respect of the charges set forth in the preceding sentence. Subtenant's obligations to pay any amounts due pursuant to this Section 4.1 shall survive the expiration or earlier termination of this Sublease (it being understood that Subtenant shall be responsible for the payment of all such amounts, regardless of whether or not same are invoiced to Subtenant after the Sublease Expiration Date).

    4.2.  **Telephone**.   [Intentionally omitted].

    4.3.  **Telecommunications**.  Subject to the terms and provisions of the Prime Lease, the Master Sublease and the PineBridge Sublease, Sublandlord will permit Subtenant to make its own arrangements for all telecommunications services required by it connection with its business conducted from the Subleased Premises, and for related human resource functions, all of which shall be for the account of Subtenant, without any obligation or liability on the part of Sublandlord.

    4.4.  **IT Closet**.  The parties acknowledge that the IT Closet on the 45th floor which contains Subtenant's information technology equipment is part of the Subleased Premises. Sublandlord shall have no responsibility to insure, maintain or protect the IT Closet and hereby disclaims any liability for loss, damage to, or injury to the IT Closet or to Subtenant or its agents, representatives, contractors, and employees in connection with any access, inspection, operation, or maintenance of the IT Closet.

    5.  **Rent**.  Subtenant shall pay base rent ("**Base Rent**") during the Term of this Sublease in the amount equal to $167,183.18 per month.  Such Base Rent shall be payable monthly in advance on the first day of each month.  In the event that the term of this Sublease shall end on a date which is not the last day of a month, Base Rent shall be prorated as of such date.  In addition to Base Rent, Subtenant shall pay all other amounts required to be paid as additional rent to Sublandlord pursuant to this Sublease (including, for the avoidance of doubt, pursuant to any applicable provisions of the PineBridge Sublease, the Master Sublease, and/or the Prime Lease that are incorporated herein by reference with respect to the Subleased Premises), including, without limitation, any amounts due as a result of any work orders requested from and after the Effective Date by Subtenant or any assignee or subtenant of Subtenant.  With respect to non-recurring additional rent items, Subtenant shall make any such payments prior to the date that is fifteen (15) days following delivery of written demand therefor by Sublandlord (accompanied by reasonably detailed supporting documentation, including any applicable documentation actually received by Sublandlord from AIGGAMHC, Landlord, or Building Owner with respect to such additional rent item); provided, however, that in all events Subtenant shall pay any additional rent payable under this Sublease directly to Sublandlord at least five (5) business days prior to the due date for such additional rent under the PineBridge Sublease.

28034832.7

6.     **Security Deposit**.  [Intentionally omitted].

7.     **Use**.  Subtenant covenants and agrees to use the Subleased Premises in accordance with the provisions of the PineBridge Sublease and for no other purpose and otherwise in accordance with the terms and conditions of the PineBridge Sublease and this Sublease.

8.     **PineBridge Sublease**.  As applied to this Sublease, the words "Sublandlord" and "Subtenant" as used in the PineBridge Sublease shall be deemed to refer to Sublandlord and Subtenant hereunder, respectively.  Subtenant and this Sublease shall be subject in all respects to the terms of, and the rights of the Sublandlord under, the PineBridge Sublease.  Except as otherwise expressly provided in Section 9 hereof, the covenants, agreements, terms, provisions and conditions of the PineBridge Sublease insofar as they relate to the Subleased Premises and insofar as they are not inconsistent with the terms of this Sublease or inapplicable to the Subleased Premises are made a part of and incorporated into this Sublease as if recited herein in full, and the rights and obligations of the Sublandlord and the Subtenant under the PineBridge Sublease shall be deemed the rights and obligations of Sublandlord and Subtenant respectively hereunder and shall be binding upon and inure to the benefit of Sublandlord and Subtenant respectively.  The time limits contained in the PineBridge Sublease for the giving of notices, making of demands or performing of any act, condition or covenant on the part of the tenant thereunder, or for the exercise by the tenant thereunder of any right, remedy or option, except for the failure to pay any installment of Base Rent and additional rent which shall not be so changed, are changed for the purposes of incorporation herein by reference by shortening the same in each instance by seven (7) business days, so that in each instance Subtenant shall have seven (7) business days less time to observe or perform hereunder than Sublandlord has as the tenant under the PineBridge Sublease.  As between the parties hereto only, in the event of a conflict between the terms of the PineBridge Sublease and the terms of this Sublease, such conflict shall be resolved in every instance in favor of the provisions of this Sublease.  Subtenant hereby assumes and agrees to observe and perform fully and promptly all of the terms, covenants, conditions and obligations provided in the PineBridge Sublease (to the extent incorporated herein by reference) intended to bind and/or be observed and/or performed by Sublandlord, as Tenant, thereunder with respect to Subtenant's use and occupancy of the Subleased Premises in accordance with the terms of this Sublease.

9.     **Variations from PineBridge Sublease**.  The following covenants, agreements, terms, provisions and conditions of the PineBridge Sublease are hereby modified or not incorporated herein:

9.1.    Notwithstanding anything to the contrary set forth in Sections 2, 3 and 5 of the PineBridge Sublease, the Base Rent, operating expenses and real estate taxes payable under this Sublease and the Term of this Sublease shall be as set forth in Sections 2, 3 and 5, above.

9.2.    The parties hereto represent and warrant to each other that neither party dealt with any broker or finder in connection with the consummation of this Sublease, and each party agrees to indemnify, hold and save the other party harmless from and against any and all claims for brokerage commissions or finder's fees arising out of either of their acts in connection with this Sublease.  The provisions of this Section 9.2 shall survive the expiration or earlier termination of this Sublease.

9.3.     Notwithstanding anything contained in the PineBridge Sublease to the contrary, as between Sublandlord and Subtenant only, all insurance proceeds or condemnation awards received by Sublandlord under the PineBridge Sublease shall be deemed to be the property of Sublandlord.  Subtenant shall be entitled to receive any insurance proceeds or condemnation awards, as its interest may appear, relating to Subtenant's personal property, fixtures and improvements.

9.4.     Any notice which may or shall be given by either party hereunder shall be either delivered personally, sent by certified mail, return receipt requested, or by overnight express delivery, addressed to the party for whom it is intended at the Subleased Premises (if to the Subtenant), or to PineBridge Investments Holdings US LLC, 399 Park Avenue, 4th Floor, New York, New York 10022 Attn: Arthur Latz-Hall. Head of Client Relations, and a copy to PineBridge Investments Europe Ltd., Plantation Place South, 60 Great Tower Street, London EC3R  5AZ Attn: General Counsel (if to the Sublandlord), or to such other address as may have been designated in a notice given in accordance with the provisions of this Section 9.4.

9.5.     All amounts payable hereunder by Subtenant shall be payable directly to Sublandlord, as follows:

|  |  |
|---|---|
| Checks made payable to: | PineBridge Investments Holdings US LLC |
| Checks mailed to: | PineBridge Investments Holdings US LLC |
|  | 399 Park Avenue, 4th Floor |
|  | New York, New York 10022 |

At Sublandlord's election, upon notice to Subtenant, all amounts payable hereunder by Subtenant shall be paid by wire transfer or ACH transfer in accordance with routing and payment instructions provided by Sublandlord.

9.6.     The provisions of Sections 2, 3, 4, 5, 9, 10 and 13 of the PineBridge Sublease shall not apply to this Sublease.

9.7.     Sublandlord has delivered and Subtenant has accepted the Subleased Premises in their presently existing, "AS-IS, WITH ALL FAULTS" condition.  Sublandlord has had and shall have no obligation to do any work in order to make the Subleased Premises suitable and ready for occupancy and use by Subtenant.

9.8.     Subtenant shall not have the right, without the prior written consent of Sublandlord, which consent shall not be unreasonably withheld, to alter and construct improvements in the Subleased Premises and any such right shall be subject to the consent of AIGGAMHC under the terms of Section 9.8 of the PineBridge Sublease and the consent of Landlord under the provisions of Section 9 of the Master Sublease.  Any and all alterations or improvements must comply with all federal, state, local, and municipal laws, ordinances and regulations, including the ADA.

9.9.     Subtenant, at its sole cost and expense, shall remove any Subtenant improvements installed or made by Subtenant or Original Subtenant in the Subleased Premises

28034832.7

and restore the Subleased Premises to the same condition existing on the date of Sublandlord's delivery of the Subleased Premises to Original Subtenant as of the date of the Sublease Commencement Date (as defined in the Original Sublease), upon the expiration of the Term hereof, which restoration of the Subleased Premises shall be pursuant to the floor plan in Exhibit C attached hereto.  Subtenant shall have no obligation to remove any improvements existing in the Subleased Premises as of the date of such Sublease Commencement Date.  At the expiration or earlier termination of this Sublease, Subtenant shall remove all of Subtenant's personal property, equipment and trade fixtures and work stations from the Subleased Premises.

9.10.    [Parking Intentionally Omitted - there are no parking rights under this Sublease]

9.11.    Subtenant shall comply with all insurance requirements as required under Section 11 in the Master Sublease and shall name Sublandlord, AIGGAMHC and its agents as additional insureds; provided, however, notwithstanding the terms of the Master Sublease or the Prime Lease (as such term is defined in the Master Sublease), the amount of commercial general liability insurance (including coverage Subtenant may have under any umbrella policies) Subtenant shall be required to obtain shall be only $10,000,000.

9.12.    In the event Subtenant holds over at the expiration or earlier termination of this Sublease without Sublandlord's and Landlord's consent, Subtenant shall indemnify, defend and Sublandlord free and harmless from and against all costs, liabilities, damages, claims and expenses, including without limitation, reasonable attorneys' fees and expenses, arising from any claim made by Building Owner, Landlord, or AIGGAMHC as a result of any holdover under this Sublease.  Nothing contained in this Sublease shall be deemed a consent by Sublandlord, AIGGAMHC, Building Owner or Landlord to the holding over by Subtenant, nor a waiver of any remedy which may be available to Sublandlord, AIGGAMHC, Building Owner or Landlord.  The provisions of this Section 9.12 shall survive the expiration or earlier termination of this Sublease.

9.13.    Subtenant shall have the right during the Term of this Sublease to use (and during such Term Sublandlord will not remove) any furniture, fixtures, cabinets, PBX systems and equipment (including without limitation, all existing conference room, pantry appliances, and similar equipment), located in the Subleased Premises as of the date of this Sublease (hereinafter referred to as "**FF&E**").  The parties acknowledge that title to all such FF&E that is owned by Sublandlord as of the date hereof is hereby transferred to Subtenant, and Subtenant shall remove all FF&E from the Subleased Premises at the expiration of the Term to the extent any such FF&E would otherwise be required to be removed from the Subleased Premises under the terms of the PineBridge Sublease. Sublandlord is providing the FF&E and Subtenant hereby accepts the FF&E in its "as is, where is" condition including any and all faults.  Sublandlord makes no representation or warranty that the FF&E is fit for any particular purpose, and is providing the FF&E for use by the Subtenant without representation or warranty of any kind, express, implied or statutory. Subtenant shall be responsible for maintaining the FF&E and shall maintain the FF&E in good condition during the term of this Sublease, reasonable wear and tear excepted.  Subtenant shall be responsible for any replacement, maintenance, insurance and any other costs of the FF&E, and shall maintain insurance for the FF&E covering its full replacement value and insuring against claims and liability arising out of any use of the FF&E by Subtenant and its employees, officers, directors and invitees.

- 6 -

28034832.7

9.14.   Subtenant shall be permitted to display any signage in the Subleased Premises permitted by AIGGAMHC, Landlord, and Building Owner.

10.   **Tenant's Performance Under PineBridge Sublease**.

10.1.   Subtenant recognizes that Sublandlord is not in a position nor obligated to render any of the services or to perform any of the obligations required of Landlord under the Master Sublease with respect to the furnishing of any services or utilities to the Subleased Premises or the maintenance, repair or restoration of the Subleased Premises.  Therefore, Subtenant shall rely upon and look solely to the Landlord for the performance of such obligations under the Master Sublease and Sublandlord shall not be liable to Subtenant for any default of the Landlord under the Master Sublease and/or default of AIGGAMHC under the PineBridge Sublease.  Subtenant shall not have any claim against Sublandlord by reason of the Landlord's failure or refusal to comply with any of the provisions of the Master Sublease and/or AIGGAMHC's failure or refusal to comply with any of the provisions of the PineBridge Sublease unless such failure or refusal is a result of Sublandlord's act or failure to act.  This Sublease shall remain in full force and effect notwithstanding the Landlord's failure or refusal to comply with any such provision of the Master Sublease and/or AIGGAMHC's failure or refusal to comply with any of the provisions of the PineBridge Sublease and Subtenant shall pay the Base Rent and additional rent and all other charges provided for herein without any abatement, deduction or setoff whatsoever. Notwithstanding the foregoing, if Landlord defaults in any of its obligations under the Master Sublease, Subtenant shall be entitled to participate with Sublandlord in any action undertaken by Sublandlord in the enforcement of Sublandlord's rights against Landlord.   In addition, if AIGGAMHC has abated any of the base rent payable by Sublandlord as subtenant under the PineBridge Sublease, then Sublandlord shall (x) promptly provide written notice of such abatement to Subtenant which such notice shall contain reasonable evidence of the amount, date and terms of such abatement, and (y) correspondingly abate the Base Rent payable under this Sublease as to all or part of the Subleased Premises, as applicable under the PineBridge Sublease, as to which rent is abated under the PineBridge Sublease and for so long as such abatement, offset or reduction shall continue under the PineBridge Sublease.  If Sublandlord elects not to take action, whether legal action or otherwise, for the enforcement of Sublandlord's rights against Landlord, Subtenant shall have the right to take such action in its own name and, for that purpose and only to such extent, all the rights of Sublandlord under the PineBridge Sublease with respect to the Subleased Premises shall be and are hereby conferred upon and assigned to Subtenant, and Subtenant shall be subrogated to such rights to the extent they apply to the Subleased Premises.  If any such action in Subtenant's name against Landlord be barred by reason of lack of privity, non-assignability or otherwise, Sublandlord agrees that Subtenant may take such action in Sublandlord's name, and Sublandlord agrees to cooperate with Subtenant in connection therewith, provided the taking of such action is without cost to Sublandlord.  Subtenant shall protect, defend, indemnify and hold Sublandlord harmless from all claims, costs and liabilities, including attorneys' fees and costs, arising out of or in connection with any such action by Subtenant.  Subtenant covenants and warrants that it fully understands and agrees to be subject to and bound by all of the covenants, agreements, terms, provisions and conditions of the PineBridge Sublease, except as modified herein.  Furthermore, Subtenant and Sublandlord further covenant not to take any action or do or perform any act or fail to perform any act which would result in the failure or breach of any of the covenants, agreements, terms, provisions or conditions of the PineBridge Sublease on the part of the subtenant thereunder.

28034832.7

10.2.    Whenever the consent of Landlord and/or AIGGAMHC shall be required by, or Landlord or AIGGAMHC shall fail to perform their obligations under the Master Sublease and/or PineBridge Sublease, as applicable, Sublandlord agrees to use its reasonable efforts to obtain, at Subtenant's sole cost and expense, such consent and/or performance on behalf of Subtenant.  Subtenant shall reimburse Sublandlord for Sublandlord's actual out-of-pocket costs incurred in obtaining such consent and/or performance on behalf of Subtenant.  In addition, Subtenant shall reimburse Sublandlord actual out-of-pocket costs associated with Landlord's and AIGGAMHC's review of Subtenant's plans and specifications for improvements in the Subleased Premises and all costs incurred by Sublandlord in obtaining Landlord's consent with respect to any amendments to this Sublease, if and to the extent the consent of Landlord and/or AIGGAMHC is required for the same.

In addition to the foregoing, any and all fees incurred to obtain Building Owner's and/or Landlord's and/or AIGGAMHC's consent to a further assignment or subletting of the Subleased Premises shall be borne solely by Subtenant.

10.3.    Sublandlord represents and warrants to Subtenant that the PineBridge Sublease is in full force and effect and that there are no uncured defaults thereunder by Sublandlord or, to Sublandlord's knowledge, by AIGGAMHC.

11.    **Indemnity and Release**.

11.1.    Subtenant hereby agrees to protect, defend, indemnify and hold Sublandlord harmless from and against any and all liabilities, claims, expenses, losses and damages, including, without limitation, reasonable attorneys' fees and disbursements, which may at any time be asserted against Sublandlord by (a) the Building Owner, Landlord and/or AIGGAMHC for failure of Subtenant to perform any of the covenants, agreements, terms, provisions or conditions contained in the PineBridge Sublease which by reason of the provisions of this Sublease Subtenant is obligated to perform, or (b) any person by reason of Subtenant's use and/or occupancy of the Subleased Premises or negligent or intentional acts in or about the Building.  The provisions of this Section 11.1 shall survive the expiration or earlier termination of the PineBridge Sublease and/or this Sublease.

11.2.    Sublandlord hereby agrees to protect, defend, indemnify and hold Subtenant harmless from and against any and all actual costs, expenses, losses and damages, including, without limitation, reasonable attorneys' fees and disbursements, which may at any time be incurred by Subtenant that are caused by the termination of the PineBridge Sublease prior to its original expiration date by reason of the default of Sublandlord to perform any of the covenants, agreements, terms, provisions or conditions contained in the PineBridge Sublease, provided however, that such termination was not the result of any action or inaction by Subtenant and Subtenant is not otherwise in default of this Sublease beyond the expiration date of any applicable cure period at the time of such termination of the PineBridge Sublease, and under no circumstances shall Sublandlord be liable for any consequential, punitive or special damages.  The provisions of this Section 11.2 shall survive the expiration or earlier termination of the PineBridge Sublease and/or this Sublease.

28034832.7

11.3.   In consideration of the amounts payable by Subtenant to Sublandlord in respect of Base Rent, and such other covenants and considerations payable by Subtenant as contemplated hereby (which Sublandlord acknowledges and agrees are fair and sufficient), Sublandlord hereby forever waives, releases and discharges the Subtenant, its parent and affiliate companies, successors and assigns and its and their respective officers, directors, employees, consultants and agents from any and all amounts that are, or that may become, due and payable in respect of Subtenant's use of the Subleased Premises prior to the Sublease Commencement Date (as defined in the Original Sublease), including, but not limited to, base rent, operating expenses, utilities (including, without limitation, electricity and HVAC) and real estate property taxes (excluding for the purposes hereof New York City Commercial Rent tax) arising out of Subtenant's subletting of and/or use of the Subleased Premises.

12.   **Certificates**.  Subtenant and Sublandlord shall at any time and from time to time as requested by the other party upon not less than ten (10) days' prior written notice, execute, acknowledge and deliver to the other party a statement in writing certifying that this Sublease is unmodified and in full force and effect (or if there have been modifications that the same is in full force and effect as modified and stating the modifications, if any), certifying the dates to which rent and any other charges have been paid and stating whether or not, to the knowledge of the person signing the certificate, the other party is in default beyond any applicable grace period provided herein in performance of any of its obligations under this Sublease, and if so, specifying each such default of which the party executing such certificate may have knowledge, it being intended that any such statement delivered pursuant hereto may be relied upon by others with whom the requesting party may be dealing.

13.   **Assignment or Subletting**.  Subject further to all of the rights of the Landlord under the Master Sublease and AIGGAMHC under the PineBridge Sublease and the restrictions contained in the Master Sublease and PineBridge Sublease, Subtenant shall not be entitled to assign this Sublease or to sublet all or any portion of the Subleased Premises without the prior written consent of Sublandlord, which consent may be withheld in Sublandlord's sole and absolute discretion, provided, however, that Sublandlord shall not unreasonably withhold its consent to a sublease of all of the Subleased Premises to one single subtenant occupant upon Subtenant moving out of the Building.

Within twenty (20) business days after Subtenant provides Sublandlord and Landlord of written notification of Subtenant's desire to sub-sublease or assign the Subleased Premises, Sublandlord shall provide such written consent or disapproval to Subtenant.  The written notification shall contain the following:

- proposed terms and conditions of the sub-sublease or assignment;
- identity of the proposed sub-subtenant or assignee;
- financial statements of proposed sub-subtenant or assignee;
- and any additional information Sublandlord or Landlord may request.

Subtenant shall reimburse Sublandlord on written demand for all out-of-pocket costs (including, without limitation, all reasonable legal fees and disbursements, as well as the reasonable costs of making investigations as to the acceptability of the proposed subtenant) which

28034832.8

may be incurred by Sublandlord in connection with a request by Subtenant that Sublandlord consent to any proposed assignment or sublease.

Any excess consideration associated with said sub-sublease or assignment which exceeds the base rent payable under the Master Sublease on a per square foot basis and which must be shared with the Landlord shall be split as follows: first, the amount of any such excess consideration payable to Landlord shall be paid by Subtenant to Landlord for the account of AIGGAMHC; then, any remaining portion of such Excess Consideration shall be split 50/50 between Sublandlord and Subtenant.

14.     **Severability**.  If any term or provision of this Sublease or the application thereof to any person or circumstances shall, to any extent, be invalid and unenforceable, the remainder of this Sublease or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term or provision of this Sublease shall be valid and be enforced to the fullest extent permitted by law.

15.     **Entire Agreement; Waiver**.  This Sublease contains the entire agreement between the parties hereto and shall be binding upon and inure to the benefit of their respective heirs, representatives, successors and permitted assigns.  Any agreement hereinafter made shall be ineffective to change, modify, waive, release, discharge, terminate or effect an abandonment hereof, in whole or in part, unless such agreement is in writing and signed by the parties hereto.

16.     **Captions**.  Captions to the Sections in this Sublease are included for convenience only are not intended and shall not be deemed to modify or explain any of the terms of this Sublease.

17.     **Further Assurances**.  The parties hereto agree that each of them, upon the request of the other party, shall execute and deliver, in recordable form if necessary, such further documents, instruments or agreements and shall take such further action that may be necessary or appropriate to effectuate the purposes of this Sublease.

18.     **Subtenant Liability**.  Notwithstanding anything to the contrary contained in this Sublease or the Assignment, from and after the date hereof, as between Sublandlord, on the one hand, and Subtenant, on the other hand, Subtenant shall be liable to Sublandlord for all obligations and liabilities of Original Subtenant and/or Subtenant under the Original Sublease and/or this Sublease, whether arising or accruing prior to the date hereof or from and after the date hereof, and irrespective of any release of any such obligations or liabilities in favor of Original Subtenant.

19.     **Governing Law**.  This Sublease shall be governed by and in all respects construed in accordance with the internal laws of the State of New York.

20.     **Consent of Landlord**.  The validity of this amendment and restatement of the Original Sublease pursuant to the terms hereof shall be subject to Landlord's prior written consent hereto pursuant to the terms of the Master Sublease and AIGGAMHC's prior written consent hereto pursuant to the terms of the PineBridge Sublease (each such consent, an "**Overlandlord Consent**").  Such amendment and restatement of the Original Sublease shall have no effect until each such Overlandlord Consent has been granted (the date on which each of the Overlandlord

28034832.8

Consents has been granted, the "**Effective Date**"), it being understood that in the event any such Overlandlord Consent is not granted, the Original Sublease shall remain in full force and effect.

DocuSign Envelope ID: 42D45813-0548-45BE-B2EF-2071431N67FF

IN WITNESS WHEREOF, the parties hereto have caused this Sublease to be executed as of the day and year first above written.

"Sublandlord":

**PINEBRIDGE INVESTMENTS HOLDINGS US LLC**, a Delaware limited liability company

By: _____

Name: Michael Karpik

Title: Chief Operating Officer

[Signature Page to Amended and Restated Sublease]

"Subtenant":

**OAKTREE CAPITAL MANAGEMENT, L.P.,**
a Delaware limited partnership

By: _____

Name:     **Jay Wintrob**
Title:     **Chief Executive Officer**


By: _____

Name:
Title:     **Henry Orren**
           **Vice President**

[Signature Page to Amended and Restated Sublease]

**EXHIBIT A**

**PINEBRIDGE SUBLEASE**

EXHIBIT A

## SUB-SUBLEASE AGREEMENT

This Sub-Sublease Agreement is made as of the ..6ᵗʰ... day of ..January.. 2010, (hereinafter referred to as "Sublease") by and between AIG ~~Global Asset Management Holdings~~ Corp., a Delaware corporation (hereinafter referred to as "Sublandlord") and PineBridge Global Investments LLC, a Delaware limited liability company (hereinafter referred to as "Subtenant") with regard to the following facts.

## RECITALS

A.     Sublandlord is the Subtenant under that certain Agreement of Sublease, dated April 16, 2007, between JPMorgan Chase Bank, National ~~Association (hereinafter referred to as~~ the "Landlord") as sublandlord and Sublandlord as subtenant, as modified by a Letter dated April 27, 2008 between Landlord and Sublandlord (hereinafter ~~collectively referred to as the~~ "Master Sublease") (a copy of which Master Sublease is attached hereto as Exhibit **A** and by this reference made a part hereof) concerning approximately 142,841 rentable square feet ("RSF") of office space (hereinafter referred to as the "Master Premises") located on the entire 41st, 42ⁿᵈ, 43ʳᵈ, 44ᵗʰ, 45ᵗʰ and 46ᵗʰ floors of the building (hereinafter referred to as the "Building") located at 277 Park Avenue, New York, New York.

B.     Landlord is the tenant under that certain Lease, dated as of April 1, 2002, by and between 277 Park Avenue, LLC, as landlord and Landlord (formerly JPMorgan Chase Bank, a New York banking corporation, as tenant, as amended by a First Amendment of Agreement of Lease and Memorandum of First Amendment of Lease dated April 29, 2003 (the "First Amendment") and as it may hereafter be amended (collectively, the "Prime Lease") concerning certain space in the Building as more particularly described ~~in the Prime Lease, including the~~ Master Premises.

C.     Subtenant desires to sublease from Sublandlord a portion of the Master Premises consisting of approximately 71,543 RSF of space (which portion shall be hereinafter referred to as the "Subleased Premises") comprising the entire ~~42nd, 43ʳᵈ and 45ᵗʰ floors of the Building and~~ more particularly set forth on Exhibit **B** attached hereto, and Sublandlord has agreed to sublease the Subleased Premises to Subtenant upon the terms, covenants and conditions herein set forth.

D.     On the date of execution of this Sublease, Subtenant is a Related Entity of Sublandlord (as defined in the Master Sublease).

## AGREEMENT

In consideration of the mutual covenants contained herein, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows:.

1.     **Sublease**  Sublandlord hereby subleases and demises to Subtenant and Subtenant hereby hires and takes from Sublandlord the Subleased Premises.  Subtenant is familiar with the condition of the Subleased Premises and is in possession of the Subleased Premises.

2.     **Term**  The term of this Sublease (hereinafter referred to as the "Term") shall commence on the later date (hereinafter referred to as the "Sublease Commencement Date") to occur of all of the following (i) execution of Sublease by Sublandlord and Subtenant, (ii) payment of first month's rent, and (iii) receipt of Certificate of Insurance, and shall end, unless sooner terminated as provided in the Master Sublease, on December 30, 2020 (the "Sublease Expiration Date").

Within thirty (30) days after Sublease Commencement Date, Subtenant and Sublandlord shall execute a Sublease Commencement Date Agreement confirming the Sublease Commencement Date.

3.     **Operating Expenses / Real Estate Taxes / Subtenant's Share**     Subtenant shall pay to Sublandlord as additional rent on a monthly basis Subtenant's Proportionate Share (50.09%) of operating expenses and real estate taxes payable by Sublandlord under the Master Sublease. Subtenant's Proportionate Share is (50.09%) (71,543 ÷ 142,841). Subtenant shall be entitled to receive Subtenant's Proportionate Share of the amount of any refunds, if any, received by Sublandlord from Landlord on account of any overpayment under the Master Sublease with respect to which Subtenant has paid additional rent to Sublandlord under this Sublease, net of Subtenant's Proportionate Share of Sublandlord's actual out-of-pocket cost of obtaining such refunds (the "Overage").   Sublandlord's obligation to refund any Overage shall survive the expiration or earlier termination of this Sublease.

4.     **Utilities.**

4.1     **Electricity**     Subtenant shall pay its proportionate share of Sublandlord's electric charges as additional rent on a monthly basis. Subtenant shall pay any excess electric charges as additional rent on a monthly basis incurred by Sublandlord as a result of Subtenant's use and occupancy of the Subleased Premises.  Subtenant shall pay any overtime HVAC charges incurred by Subtenant for overtime HVAC supplied to the Subleased Premises at Subtenant's request as additional rent on a monthly basis to Sublandlord, in accordance with the terms and conditions of the Master Sublease.

4.2     **Telephone**     [Intentionally omitted]

5.     **Rent**  Subtenant shall pay base rent during the Term of this Sublease in the amount equal to Sublandlord's base rent under the Master Sublease for the Subleased Premises,

provided however, that the base rent payable by Subtenant under this Sublease shall be reduced by the amount shown on Exhibit **C** attached hereto and by reference made a part hereof, payable monthly in advance on the first day of each month.  In the event that the term of this Sublease shall begin or end on a date which is not the first day of a month, base rent shall be prorated as of such date.

Concurrent with Subtenant's execution of this Sublease, Subtenant shall deliver to Sublandlord the first month's base rent in the amount of Four Hundred Forty-One Thousand Fifty-Nine and 77/₁₀₀ Dollars ($441,059.77).

6.     **Security Deposit**     [Intentionally omitted].

7.     **Use**     Subtenant covenants and agrees to use the Subleased Premises in accordance with the provisions of the Master Sublease and for no other purpose and otherwise in accordance with the terms and conditions of the Master Sublease and this Sublease.

8.     **Master Sublease**          As applied to this Sublease, the words "Sublandlord" and "Subtenant" as used in the Master Sublease shall be deemed to refer to Sublandlord and Subtenant hereunder, respectively.  Subtenant and this Sublease shall be subject in all respects to the terms of, and the rights of the Landlord under, the Master Sublease.  Except as otherwise expressly provided in Section **9** hereof, the covenants, agreements, terms, provisions and conditions of the Master Sublease insofar as they relate to the Subleased Premises and insofar as they are not inconsistent with the terms of this Sublease or inapplicable to the Subleased Premises are made a part of and incorporated into this Sublease as if recited herein in full, and the rights and obligations of the Landlord and the Tenant under the Master Sublease shall be deemed the rights and obligations of Sublandlord and Subtenant respectively hereunder and shall be binding upon and inure to the benefit of Sublandlord and Subtenant respectively. The time limits contained in the Master Sublease for the giving of notices, making of demands or performing of any act, condition or covenant on the part of the tenant thereunder, or for the exercise by the tenant thereunder of any right, remedy or option, are changed for the purposes of incorporation herein by reference by shortening the same in each instance by three (3) business days, so that in each instance Subtenant shall have three (3) business days less time to observe or perform hereunder than Sublandlord has as the tenant under the Master Sublease. As between the parties hereto only, in the event of a conflict between the terms of the Master Sublease and the terms of this Sublease, such conflict shall be resolved in every instance in favor of the provisions of this Sublease.  Subtenant hereby assumes and agrees to observe and perform fully and promptly all of the terms, covenants, conditions and obligations provided in the Master Sublease (to the extent incorporated herein by reference) intended to bind and/or be observed and/or performed by Sublandlord, as Tenant, thereunder with respect to Subtenant's use and occupancy of the Subleased Premises in accordance with the terms of this Sublease.

9.     **Variations from Master Sublease**  The following covenants, agreements, terms, provisions and conditions of the Master Sublease are hereby modified or not incorporated herein:

9.1     Notwithstanding anything to the contrary set forth in Section 3 of the Master Sublease, the base rent, operating expenses and real estate taxes payable under this Sublease and the Term of this Sublease shall be as set forth in Sections **2**, **3** and **5**, above.

9.2    The parties hereto represent and warrant to each other that neither party dealt with any broker or finder in connection with the consummation of this Sublease, and each party agrees to indemnify, hold and save the other party harmless from and against any and all claims for brokerage commissions or finder's fees arising out of either of their acts in connection with this Sublease. The provisions of this Section **9.2** shall survive the expiration or earlier termination of this Sublease.

9.3    Notwithstanding anything contained in the Master Sublease to the contrary, as between Sublandlord and Subtenant only, all insurance proceeds or condemnation awards received by Sublandlord under the Master Sublease shall be deemed to be the property of Sublandlord.  Subtenant shall be entitled to receive any insurance proceeds or condemnation awards, as its interest may appear, relating to Subtenant's personal property, fixtures and improvements.

9.4    Any notice which may or shall be given by either party hereunder shall be either delivered personally, sent by certified mail, return receipt requested, or by overnight express delivery, addressed to the party for whom it is intended at the Subleased Premises with copies to PineBridge Global Investments LLC, 70 Pine Street, 11th Floor, New York, New York 10270 Attn: Karen Teffeau, Head of Client Relations, and to PineBridge Investments Europe Ltd., Plantation Place South, 60 Great Tower Street, London EC3R 5AZ Attn: General Counsel (if to the Subtenant), or to American International Realty Corp., 180 Maiden Lane, 23rd Floor, New York, New York 10038, <u>Attention</u>: Rosemarie Sailer, Vice President and General Counsel (if to the Sublandlord), or to such other address as may have been designated in a notice give in accordance with the provisions of this Section **9.4**.

9.5    All amounts payable hereunder by Subtenant shall be payable directly to Sublandlord, as follows:

| Checks made payable to: | AIG Global Asset Management Holdings Corp. |
|---|---|
| Checks mailed to: | American International Realty Corp. P.O. Box 1502 New York, NY 10268-1502 |

9.6    The provisions of Sections 13(f), 13(k), 27 and 28 and Exhibits D and E of the Master Sublease shall not apply to this Sublease. With respect to Section 4(b) of the Master Sublease, twenty (20) tons is substituted for forty (40) tons of allocation of chilled water for Subtenant's operation of supplemental air conditioning units. With respect to Section 13(h) of the Master Sublease as incorporated herein, it is understood and agreed that the signage referred to in Section 13(h) and Exhibit F of the Master Sublease, as applied to this Sublease, shall be a sign bearing Subtenant's name and/or logo, which shall be of similar size and shape as the sign shown on Exhibit F or other signage of Sublandlord displayed in the Building lobby from time to time, provided, however, that (i) all of Subtenant's signage in the Building lobby shall be subject to the prior approval of Landlord and (ii) each of Subtenant and Sublandlord, together with all

subtenants, if any, claiming through each of them, shall never be entitled to more than one-half of the signage space allowable under the Master Sublease. Subtenant shall be entitled to all signage rights on the 42nd, 43rd and 45th floors consisting of the Subleased Premises. At the request of Subtenant, Sublandlord shall cooperate with Subtenant in obtaining from Landlord consent for Subtenant to install a second antenna or satellite dish on the roof.

9.7     Sublandlord shall deliver and Subtenant shall accept the Subleased Premises in their presently existing, "AS-IS, WITH ALL FAULTS" condition. Sublandlord has had and shall have no obligation to do any work in order to make the Subleased Premises suitable and ready for occupancy and use by Subtenant.

9.8     Subtenant shall have the right, at Subtenant's sole cost and expense, subject to the prior written approval of Sublandlord and pursuant to the terms of Section 9 of the Master Sublease, to alter and construct improvements in the Subleased Premises. Any and all alterations or improvements must comply with all Federal, State, Local, Municipal, Laws, Ordinances and Regulations, including ADA. Subtenant and Sublandlord agree to share during the Term of this Sublease the systems in the manner and as shown on Exhibit **D** attached hereto and by reference made a part hereof.

9.9     Subtenant, at its sole cost and expense, shall remove any Subtenant improvements installed or made by Subtenant in the ~~Subleased Premises and restore the~~ Subleased Premises to the same condition existing on the date of Sublandlord's delivery of the Subleased Premises to Subtenant upon the expiration ~~of the~~ Term ~~hereof, which restoration of~~ the Subleased Premises shall be pursuant to the floor plan exhibit in Exhibit **B** attached hereto. Notwithstanding anything to the contrary contained herein. Subtenant shall not be responsible for improving the condition of the Subleased Premises, nor for repair of any wear and tear that may occur from the reasonable use by Subtenant whatsoever. Subtenant shall have no obligation to remove any improvements existing in the Subleased Premises as of the date of this Sublease.

9.10     [Parking Intentionally Omitted – there are no parking rights under this Sublease]

9.11     Subtenant shall comply with all insurance requirements as required under Section 11 in the Master Sublease and shall name Sublandlord, American International Group, Inc. and its agents as additional insureds.

9.12     In the event Subtenant holds over at the expiration or earlier termination of this Sublease without Sublandlord's and Landlord's consent, Subtenant shall indemnify, defend and Sublandlord free and harmless from and against all costs, liabilities, damages, claims and expenses, including without limitation, reasonable attorney's fees and expenses, arising from any claim made by Landlord as a result of any holdover under this Sublease. Nothing contained in this Sublease shall be deemed a consent by Sublandlord or Landlord to the holding over by Subtenant, nor a waiver of any remedy which may be available to Sublandlord or Landlord. The provisions of this Section **9.12** shall survive the expiration or earlier termination of this Sublease.

9.13     Title to all existing furniture, fixtures and equipment (hereinafter referred to as "FF&E") in the Subleased Premises will be transferred to Subtenant on or before the

Commencement Date pursuant to separate agreements.  Sublandlord provided the FF&E and Subtenant accepted the FF&E in an "as is, where is" condition including any and all faults. Sublandlord makes no warranty that the FF&E is fit for any particular purpose, and that the FF&E can be used by the Subtenant without representation or warranty of any kind, express, implied or statutory. Subtenant shall be responsible for maintaining the FF&E.  Subtenant shall be responsible for any replacement, maintenance, insurance and any other costs of the FF&E. At the expiration or earlier termination of this Sublease, Subtenant shall remove Subtenant's personal property, equipment and trade fixtures and the work stations from the Subleased Premises.

10.   **Tenant's Performance Under Master Sublease**

10.1   Subtenant recognizes that Sublandlord is not in a position nor obligated to render any of the services or to perform any of the obligations required of Landlord under the Master Sublease with respect to the furnishing of any services or utilities to the Subleased Premises or the maintenance, repair or restoration of the Subleased Premises.  Therefore, Subtenant shall rely upon and look solely to the Landlord for the performance of such obligations under the Master Sublease and Sublandlord shall not be liable to Subtenant for any default of the Landlord under the Master Sublease.  Subtenant shall not have any claim against Sublandlord by reason of the Landlord's failure or refusal to comply with any of the provisions of the Master Sublease unless such failure or refusal is a result of Sublandlord's act or failure to act.  This Sublease shall remain in full force and effect notwithstanding the Landlord's failure or refusal to comply with any such provision of the Master Sublease and Subtenant shall pay the base rent and additional rent and all other charges provided for herein without any abatement, deduction or setoff whatsoever.  Notwithstanding the foregoing, if Landlord defaults in any of its obligations under the Master Sublease, Subtenant shall be entitled to participate with Sublandlord in any action undertaken by Sublandlord in the enforcement of Sublandlord's rights against Landlord.  In addition, if Landlord has abated any of the base rent, operating expenses or other charges payable by Sublandlord as subtenant under the Master Sublease, then Sublandlord shall correspondingly abate the base rent, operating expenses or other charges payable under this Sublease as to all or part of the Subleased Premises, as applicable under the Master Sublease, as to which rent or other amount is abated under the Master Sublease and for so long as such abatement, offset or reduction shall continue under the Master Sublease.  If Sublandlord elects not to take action, whether legal action or otherwise, for the enforcement of Sublandlord's rights against Landlord, Subtenant shall have the right to take such action in its own name and, for that purpose and only to such extent, all the rights of Sublandlord under the Master Sublease with respect to the Subleased Premises shall be and are hereby conferred upon and assigned to Subtenant, and Subtenant shall be subrogated to such rights to the extent they apply to the Subleased Premises. If any such action in Subtenant's name against Landlord be barred by reason of lack of privity, non-assignability or otherwise, Sublandlord agrees that Subtenant may take such action in Sublandlord's name, and Sublandlord agrees to cooperate with Subtenant in connection therewith, provided the taking of such action is without cost to Sublandlord. Subtenant shall protect, defend, indemnify and hold Sublandlord harmless from all claims, costs and liabilities, including attorney' fees and costs, arising out of or in connection with any such action by Subtenant.  Subtenant covenants and warrants that it fully understands and agrees to be subject to and bound by all of the covenants, agreements, terms, provisions and conditions of the

Master Sublease, except as modified herein.  Furthermore, Subtenant and Sublandlord further covenant not to take any action or do or perform any act or fail to perform any act which would result in the failure or breach of any of the covenants, agreements, terms, provisions or conditions of the Master Sublease on the part of the Lessee thereunder.

10.2   Whenever the consent of Landlord shall be required by, or Landlord shall fail to perform its obligations under the Master Sublease, Sublandlord agrees to use its reasonable efforts to obtain, at Subtenant's sole cost and expense, such consent and/or performance on behalf of Subtenant.  Subtenant shall reimburse Sublandlord for Sublandlord's actual out-of pocket costs incurred in obtaining such consent and/or performance on behalf of Subtenant.  In addition, Subtenant shall reimburse Sublandlord actual out-of-pocket costs associated with Landlord's review of Subtenant's plans and specifications for improvements in the Subleased Premises and all costs incurred by Sublandlord in obtaining Landlord's consent with respect to any amendments to this Sublease, if and to the extent the consent of Landlord is required for the same.  In addition to the foregoing, any and all fees incurred to obtain Landlord's Consent to a further assignment or subletting of the Subleased Premises shall be borne solely by Subtenant.

10.3   Sublandlord represents and warrants to Subtenant that the Master Sublease is in full force and effect and there are no uncured defaults thereunder.

11.   **Indemnity**   Subtenant hereby agrees to protect, defend, indemnify and hold Sublandlord harmless from and against any and all liabilities, claims expenses, losses and damages, including, without limitation, reasonable attorneys' fees and disbursements, which may at any time be asserted against Sublandlord by (a) the Landlord for failure of Subtenant to perform any of the covenants, agreements, terms, provisions or conditions contained in the Master Sublease which by reason of the provisions of this Sublease Subtenant is obligated to perform, or (b) any person by reason of Subtenant's use and/or occupancy of the Subleased Premises or negligent or intentional acts in or about the Building.  The provisions of this Section 11 shall survive the expiration or earlier termination of the Master Sublease and/or this Sublease.

12.   **Certificates**   Subtenant and Sublandlord shall at any time and from time to time as requested by the other party upon not less than ten (10) days' prior written notice, execute, acknowledge and deliver to the other party a statement in writing certifying that this Sublease is unmodified and in full force and effect (or if there have been modifications that the same is in full force and effect as modified and stating the modifications, if any) certifying the dates to which rent and any other charges have been paid and stating whether or not, to the knowledge of the person signing the certificate, the other party is in default beyond any applicable grace period provided herein in performance of any of its obligations under this Sublease, and if so, specifying each such default of which the party executing such certificate may have knowledge, it being intended that any such statement delivered pursuant hereto may be relied upon by others with whom the requesting party may be dealing.

13.   **Assignment or Subletting**   Subject further to all of the rights of the Landlord under the Master Sublease and the restrictions contained in the Master Sublease, Subtenant shall not be entitled to assign this Sublease or to sublet all or any portion of the Subleased Premises

without the prior written consent of Sublandlord, which consent shall not be unreasonably withheld, delayed or conditioned. Notwithstanding the foregoing, Subtenant shall have the right to assign this Sublease or sublet all or a portion of the Subleased Premises to an affiliate of Subtenant (an entity which is controlled by, controls, or is under common control with Subtenant), subject to the terms and provision of Section **8** of the Master Sublease. "Control", as used in this Section **13**, shall mean the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person or entity, whether through the ownership of voting securities, by contract or otherwise. Notwithstanding any assignment or subletting or any acceptance of rent or additional rent by Sublandlord from any assignee or sub-subleasee, Subtenant shall remain fully and primarily liable for the payment of all rent and additional rent and for the performance of all other terms, ~~covenants and conditions contained in~~ this Sublease on Subtenant's part to be performed. Notwithstanding the foregoing or anything else contained in this Section **13**, no assignment, sublease, sub-subletting of any degree, use or occupancy shall result in there being more than three (3) occupants in the Subleased Premises at any one time.

For purposes of this Section **13**, and without limiting the basis ~~upon which~~ Sublandlord may withhold its consent to any proposed assignment or Subsublease, the parties agree that it shall not be unreasonable for Sublandlord to withhold its consent to such assignment or Subsublease if: (i) the proposed assignee or SubSubtenant does not satisfy the conditions set forth in Section 8(d) of the Master Sublease; or ~~(ii) said assignee or SubSubtenant is a~~ commercial property insurance company or life insurance company.

Within twenty (20) business days after Subtenant provides Sublandlord and Landlord of written notification of Subtenant's desire to sub-sublease or assign the Subleased Premises, Sublandlord shall provide such written consent or disapproval to Subtenant. The written notification shall contain the following:

- proposed terms and conditions of the ~~sub-sublease or assignment;~~
- identity of the proposed sub-Subtenant or assignee;
- financial statements of proposed sub-Subtenant or assignee;
- and any additional information Sublandlord or Landlord may request.

Subtenant shall reimburse Sublandlord on written demand for all out-of-pocket costs (including, without limitation, all reasonable legal fees ~~and disbursements, as well as the~~ reasonable costs of making investigations as to the acceptability of the proposed subtenant) which may be incurred by Sublandlord in connection with a request by Subtenant that Sublandlord consent to any proposed assignment or sublease.

Any Excess Consideration associated with ~~said Sub-Sublease or Assignment which~~ exceeds the base rent payable under the Master Sublease on a per square foot basis and which must be shared with the Landlord shall be split 50/50 between Sublandlord (who shall pay to Landlord any amount required to be so paid) and ~~Subtenant.~~

Subject to obtaining the consent of Landlord to that certain Sub-Lease between Subtenant and Highstar Capital, L.P. relating to a portion of the 45th Floor of the Building (the "Highstar

Sublease"), Sublandlord hereby consents to the Highstar Sublease and to the exercise by Highstar Capital L.P. from time to time of additional portions or all of the remaining portion of the 45[th] Floor. Subtenant agrees to provide Sublandlord prompt written notice of any exercise by Highstar of additional portions of the 45[th] Floor, together with a copy of all amendments or other documents evidencing such expansion. Notwithstanding anything contained herein seemingly to the contrary, Sublandlord disclaims and makes no representation or warranty in this Sublease or otherwise to Subtenant with respect to the occupancy of a portion of Subleased Premises by Highstar Capital, L.P.

14. **Severability**  If any term or provision of this Sublease or the application thereof to any person or circumstances shall, to any extent, be invalid and unenforceable, the remainder of this Sublease or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term or provision of this Sublease shall be valid and be enforced to the fullest extent permitted by law.

15. **Entire Agreement; Waiver**  This Sublease contains the entire agreement between the parties hereto and shall be binding upon and inure to the benefit of their respective heirs, representatives, successors and permitted assigns. Any agreement hereinafter made shall be ineffective to change, modify, waive, release, discharge, terminate or effect an abandonment hereof, in whole or in part, unless such agreement is in writing and signed by the parties hereto.

16. **Captions**  Captions to the Sections in this Sublease are included for convenience only are not intended and shall not be deemed to modify or explain any of the terms of this Sublease.

17. **Further Assurances**  The parties hereto agree that each of them, upon the request of the other party, shall execute and deliver, in recordable form if necessary, such further documents, instruments or agreements and shall take such further action that may be necessary or appropriate to effectuate the purposes of this Sublease.

18. **Governing Law**  This Sublease shall be governed by and in all respects construed in accordance with the internal laws of the State of New York.

IN WITNESS WHEREOF, the parties hereto have caused this Sublease to be executed as of the day and year first above written.

"Sublandlord":

AIG    GLOBAL    ASSET    MANAGEMENT
HOLDINGS CORP.
a Delaware corporation

By: _____
        Its: Gerald Melin , CFO

By: _____
        Its: Ed Holmes , General Counsel

"Subtenant":

PINEBRIDGE GLOBAL INVESTMENTS LLC
a Delaware limited liability company

By: AIG Global Asset Management Holdings Corp.,
its sole member

By: _____
        Its: Timan A. Pappas, CFO

By: _____
        Its: Hans Danielsson
              Senior Managing Director

## **EXHIBIT B**

## **MASTER SUBLEASE**

# AGREEMENT OF SUBLEASE

**JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,**

**AS SUBLANDLORD**

**AND**

**AIG GLOBAL ASSET MANAGEMENT HOLDINGS CORP.,**

**AS SUBTENANT**

**APRIL 16, 2007**

NYI-3959522v11

# TABLE OF CONTENTS

**Page**

SECTION 1.   Subleased Premises ................................................................................ 1

SECTION 2.   Term ......................................................................................................... 2

SECTION 3.   Base Rent and Additional Rent ............................................................. 2

SECTION 4.   Electrical Energy; Supplemental HVAC ............................................... 5

SECTION 5.   Use ........................................................................................................... 6

SECTION 6.   Incorporation of Prime Lease ................................................................ 6

SECTION 7.   Condition of Subleased Premises .......................................................... 9

SECTION 8.   Assignment, Mortgaging, Subletting ................................................... 9

SECTION 9.   Alterations and Improvements ............................................................ 16

SECTION 10.   Indemnification and Release from Liability ....................................... 17

SECTION 11.   Insurance. ............................................................................................. 18

SECTION 12.   Destruction, Fire and other Casualty/Condemnation ......................... 19

SECTION 13.   Sublandlord's Obligations ................................................................... 21

SECTION 14.   Environmental ...................................................................................... 23

SECTION 15.   Remedies, Right to Cure and Submission to Jurisdiction .................. 24

SECTION 16.   Notices .................................................................................................. 24

SECTION 17.   Integration; Successors and Assigns, etc ............................................ 25

SECTION 18.   Successors and Assigns ....................................................................... 25

SECTION 19.   No Other Agreements .......................................................................... 26

SECTION 20.   Execution of Sublease .......................................................................... 26

SECTION 21.   Broker ................................................................................................... 26

SECTION 22.   Consents ............................................................................................... 26

SECTION 23.   Time Limits .......................................................................................... 26

SECTION 24.   Governing Law ..................................................................................... 27

SECTION 25.   Quiet Enjoyment .................................................................................. 27

SECTION 26.   Miscellaneous ....................................................................................... 27

SECTION 27.   Expansion Option ................................................................................. 28

SECTION 28.   Right of First Offer .............................................................................. 29

Exhibits

Exhibit A      Floor Plan of Subleased Premises
Exhibit B      Delivery Condition
Exhibit C      Exclusions from Incorporated Provisions
Exhibit D      Sublandlord's Contribution
Exhibit E      Roof Rights Area
Exhibit F      Desktop Signage

Schedule 1     Inventory of Furniture and Fixtures

## AGREEMENT OF SUBLEASE

AGREEMENT OF Sublease ("Sublease"), made as of this 16th day of April, 2007, between JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, a national banking association, with offices at 270 Park Avenue, New York, New York 10172 ("Sublandlord"), and AIG GLOBAL ASSET MANAGEMENT HOLDINGS CORP., a Delaware corporation, with offices c/o American International Realty Corp., 72 Wall Street, 16th Floor, New York, New York 10005, Attn: Vice President ("Subtenant").

## W I T N E S S E T H :

WHEREAS, by Lease dated as of April 1, 2002, by and between 277 Park Avenue, LLC, as Landlord ("Landlord"), and Sublandlord (formerly JPMorgan Chase Bank, a New York banking corporation), as Tenant, as amended by a First Amendment of Agreement of Lease and Memorandum of First Amendment of Lease dated April 29, 2003 (the "First Amendment") and as it may hereafter be amended (collectively, the "Prime Lease"), Landlord leased to Sublandlord certain space (the "Leased Premises") in the building known as 277 Park Avenue, New York, New York 10017 (the "Building"), which Leased Premises are more particularly described in the Prime Lease, a redacted copy of which has been delivered to Subtenant (capitalized terms not otherwise defined herein shall have the meanings specified in the Prime Lease); and

WHEREAS, Sublandlord desires to sublease to Subtenant, and Subtenant desires to hire from Sublandlord, a portion of the Leased Premises consisting of the entire rentable area on the 41st, 42nd, 43rd, 44th, 45th and 46th Floors (the "Subleased Premises"), which Subleased Premises are more particularly described below.

NOW, THEREFORE, in consideration of the mutual terms, covenants and conditions hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Sublandlord and Subtenant hereby agree as follows:

SECTION 1. Subleased Premises. (a) As of the Commencement Date (defined below), Sublandlord hereby subleases to Subtenant, and Subtenant hereby hires from Sublandlord, the Subleased Premises, consisting of approximately 142,841 rentable square feet comprising the rentable areas of the Building on the 41st Floor (23,823 rentable square feet), 42nd Floor (23,827 rentable square feet), 43rd Floor (23,827 rentable square feet), 44th Floor (23,825 rentable square feet), 45th Floor (23,889 rentable square feet) and 46th Floor (23,650 rentable square feet), shown on the floor plans annexed hereto and made a part hereof as Exhibit A. The attachment of a floor plan of the Subleased Premises or the reference to approximate rentable square footage of the Subleased Premises does not constitute a representation by Sublandlord that said floor plan or square footage is exact or correct, and Sublandlord makes no representation or warranty with respect to the accuracy of the layout or dimensions or square footage of the Subleased Premises as shown on said floor plan or otherwise. The telephone and security closets indicated in Exhibit A are indicated for Subtenant's non-exclusive use. With prior reasonable notice, except in an emergency when no prior notice will be necessary, Sublandlord shall have access to such closets to access its wiring and cabling serving other floors of the Lease Premises. Sublandlord, where such closet is shared with Subtenant, shall enclose or otherwise protect its wiring and

cabling in said closets. Sublandlord will exercise such right of access in a manner that will not impair Tenant's use of the Subleased Premises.

SECTION 2. Term.

(a)     The term of this Sublease shall commence on the date of execution and delivery of this Sublease (the "Commencement Date") and shall expire, at midnight on December 31, 2020 (the "Term"), or on such earlier date on which the Term may terminate pursuant to the provisions of this Sublease (the "Expiration Date"). If the Commencement Date is not the first day of a month or the Expiration Date of this Sublease is not the last day of a month, rent for the month in which the Commencement Date or the Expiration Date occurs shall be pro-rated on a *per diem* basis.

(b)     Delivery of possession of the Subleased Premises by Sublandlord to Subtenant shall occur in phases. Sublandlord shall deliver to Subtenant vacant, broom clean possession of the 41st, 44th and 46th floors of the Subleased Premises (the "Initial Subleased Premises") in the Delivery Condition (as defined in Exhibit B annexed hereto and made a part thereof), by no later than June 1, 2007 (the "Initial Possession Date"). Sublandlord shall deliver to Subtenant vacant, broom clean possession of the 42nd, 43rd and 45th floors (the "Remaining Subleased Premises") in the Delivery Condition no later than June 15, 2007, but not earlier than May 1, 2007.

(c)     If the Initial Subleased Premises are not delivered to Subtenant in the condition required hereby on or before July 1, 2007, then the "Rent Commencement Date" (defined below) with respect to the Initial Subleased Premises shall be deferred by one and one-half days for every day of such delay for the first 30 days of delay and by two (2) days for every day of delay thereafter.

(d)     If the Remaining Subleased Premises are not delivered to Subtenant in the condition required hereby on or before July 15, 2007, then the Rent Commencement Date with respect to the Remaining Subleased Premises shall be deferred by one and one half days for every day of such delay for the first 30 days of such delay and by two (2) days for every day of delay thereafter.

(e)     If the Rent Commencement Date is not the first day of a month, rent for the month in which the Rent Commencement Date occurs shall be pro-rated on a per diem basis.

(f)     If Sublandlord is late in delivering possession of the Subleased Premises, Sublandlord shall not be liable for failure to give possession on said date, other than as provided in Paragraphs 2(c) and 2(d) above and the validity of this Sublease shall not be impaired under such circumstances, nor shall the same be construed to extend the Term. The provisions of this Section 2(f) are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

SECTION 3. Base Rent and Additional Rent.

(a)     Basic Rent (hereinafter defined) with respect to the Initial Subleased Premises shall commence on the date seven (7) months after Sublandlord delivers possession of

the Initial Subleased Premises to Subtenant and Base Rent with respect to the Remaining Subleased Premises shall commence on the date seven (7) months after Sublandlord delivers possession of the Remaining Subleased Premises to Subtenant (each a "Rent Commencement Date", respectively).

(b)     The <u>Average Rent Commencement Date</u> shall be the average date of the following dates: (i) the date seven (7) months after the Initial Subleased Premises are delivered in "Delivery Condition" and (ii) the date seven (7) months after the Remaining Subleased Premises are delivered in Delivery Condition. For example, if the Initial Subleased Premises are delivered on June 1, 2007 and the Remaining Subleased Premises are delivered on July 1, 2007, the Rent Commencement Date will be January 15, 2008. Except as expressly provided to the contrary herein, Subtenant covenants to pay Sublandlord, at the office of Sublandlord, or at such other place as Sublandlord may from time to time designate in writing, a fixed annual rental ("<u>Base Rent</u>") as follows:

(i)     for the period from the applicable Rent Commencement Date through the day preceding the fifth (5th) anniversary of the Average Rent Commencement Date, THIRTEEN MILLION TWO HUNDRED EIGHTY-THREE THOUSAND THREE HUNDRED AND SEVENTY-SIX AND 00/100 DOLLARS ($13,284,213.00) per annum ($93.00 per rentable square foot), payable in equal monthly installments of $1,107,017.75;

(ii)     for the period from the fifth (5th) anniversary of the Average Rent Commencement Date through the day preceding the tenth (10th) anniversary of the Rent Commencement Date, THIRTEEN MILLION NINE HUNDRED NINETY-EIGHT THOUSAND FOUR HUNDRED EIGHTEEN AND 00/100 DOLLARS ($13,998,418.00) per annum ($98.00 per rentable square foot), payable in equal monthly installments of $1,166,534.83; and

(iii)     for the period from the eleventh (11th) anniversary of the Average Rent Commencement Date through December 31, 2020, FOURTEEN MILLION SEVEN HUNDRED TWELVE THOUSAND SIX HUNDRED AND TWENTY-THREE AND 00/100 DOLLARS ($14,712,623.00) per annum ($103.00 per rentable square foot), payable in equal monthly installments of $1,226,051.92.

(c)     Each monthly installment of Base Rent shall be due in advance on the first (1st) day of each month during the Term without any set-off or deduction of any kind whatsoever, except as may be expressly provided herein.

(d)     (i)     Subtenant shall pay to Sublandlord, as additional rent hereunder: (A) subject to the adjustments referred to in Sections 3(e) and 3(f) below, Subtenant's Proportionate Share (defined below) of increases in Tenant's Tax Payment (as defined in Section 13.2 of the Prime Lease) and increases in Tenant's Operating Payment (as defined in Section 13.4 of the Prime Lease) payable by Sublandlord with respect to the Leased Premises pursuant to Sections 13.2 and 13.4 of the Prime Lease over the "Base Tax Payment" and "Base Operating Payment" described below, and (B) one-hundred percent (100%) of any amounts payable by Sublandlord to Landlord under the Prime Lease which are requested by Subtenant

and/or attributable solely to Subtenant's use or manner of use of the Subleased Premises, or manner of use of the portions of the Building other than the Subleased Premises.

(ii)     Such demand for additional rent shall be accompanied by appropriate invoices and other backup as to the nature and amount of the charges in question (it being understood that Sublandlord shall only be required to provide invoices for Subtenant's Proportionate Share of increases in Tenant's Tax Payment and Tenant's Operating Payment to the extent, and at the same intervals as, Landlord provides invoices under the Prime Lease).

(iii)     For purposes of this Sublease, the following terms shall have the meanings set forth below:

"Base Tax Payment" shall mean the Tax Payments made by Sublandlord to Landlord, with respect to the Leased Premises under the Prime Lease with respect to the Tax Year July 1, 2007 through June 30, 2008; and

"Base Operating Payment" shall mean the Operating Payment made by Sublandlord to Subtenant, with respect to the Leased Premises under the Prime Lease with respect to the Calendar Year 2007.

(i)     Items of additional rent shall be due at the times specified in this Sublease and the Prime Lease as incorporated herein by reference (as modified by Section 23 hereof).

(e)     For the purposes of this Sublease, "Subtenant's Proportionate Share" shall mean percent 9.82%.  If the rentable area covered by the Prime Lease or Sublease is changed during the Term of the Sublease, Subtenant's Proportionate Share will be adjusted proportionately and equitably from and after the date of any such adjustment.

(f)     Subtenant shall be entitled to receive Subtenant's Proportionate Share of the amount of any refunds, if any, received by Sublandlord from Landlord on account of any overpayment under the Prime Lease with respect to which Subtenant has paid additional rent to Sublandlord under this Sublease, net of Subtenant's Proportionate Share of Sublandlord's actual out-of-pocket cost of obtaining such refunds (the "Overage").  Sublandlord's obligation to refund the Overage shall survive expiration or earlier termination of this Sublease.

(g)     Subtenant's obligation to pay additional rent hereunder shall (i) relate to the period from and after the Commencement Date for the remainder of the Term and (ii) survive the expiration or earlier termination of this Sublease.

(h)     All amounts payable by Subtenant to Sublandlord pursuant to this Sublease, including, without limitation, Base Rent and all items of additional rent specified in this Section 3 (collectively, "Rent"), shall be deemed and constitute rent and, in the event of any non-payment thereof, Sublandlord shall have all of the rights and remedies provided herein and in the Prime Lease or in law or at equity for non-payment of rent.

(i)     Any Rent due from Subtenant to Sublandlord and any amount payable by Sublandlord to Subtenant pursuant to this Sublease which are not paid within five (5) days of the

date due shall bear interest at a rate per annum equal to the lesser of (i) two percent (2%) in excess of the rate announced from time to time as the prime rate of JPMorgan Chase Bank, and (ii) the maximum rate allowable by law, from the due date until paid to Sublandlord (the "Applicable Rate").

(j)     In the event Sublandlord or Subtenant commences any action or proceeding against the other party under this Sublease, the prevailing party in the action shall be paid by the other party, in addition to any damages to which the prevailing party is entitled, all reasonable out-of-pocket expenses of the action including reasonable costs and expenses of attorneys, accountants and other consultants.

SECTION 4.  Electrical Energy; Supplemental HVAC.

(a)     Subtenant acknowledges that electricity is furnished to the Subleased Premises by Landlord under the Prime Lease on a submetered basis and that Subtenant shall pay all charges payable by Sublandlord for electricity with respect to the Subleased Premises during the Term pursuant to the provisions of Article 14 of the Prime Lease. Subject to the terms of the Prime Lease , the Subleased Premises shall be provided with not less than 5.65 watts demand load per rentable square foot, exclusive of base building air conditioning. Sublandlord represents that the submeters measuring electric consumption to the Subleased Premises measure electricity to the Subleased Premises and do not include electricity furnished to the base building systems.

(b)     At Subtenant's election Sublandlord shall provide Subtenant with an average of up to forty (40) tons of chilled water for Subtenant's operation of supplemental air-conditioning units in the Subleased Premises and the chilled water fed air conditioning unit located in the ceiling of each IDF Room in the Subleased Premises (the "Ceiling Units"), at a cost of $900.00 per ton per annum to which amount shall be subject to increase, based upon the percentage increase in the Index (as defined in Section 26(f) below) on the Rent Commencement Date to the Index on each succeeding anniversary of the Rent Commencement Date. Sublandlord shall operate and maintain the cooling system supplying such chilled water during the Term.   Subtenant, at its expense, shall maintain the supplemental air conditioning units located in the Subleased Premises in good working order.   Only if Subtenant utilizes the supplemental air-conditioning units in the Subleased Premises, Subtenant shall pay Sublandlord's actual cost for overtime air conditioning requested by Subtenant and provided by the Landlord in accordance with Article 9 of the Prime Lease.   Only if Subtenant utilizes the supplemental air-conditioning units in the Subleased Premises, Subtenant will also pay Subtenant's equitable share of the Landlord's charges to Sublandlord for Landlord's labor and maintenance charges for the chiller plant that provides chilled water to such supplemental units. Subtenant will pay for electrical service to the Ceiling Units which will be connected to Subtenant's submeter.   Subtenant will keep and maintain the Ceiling Units in good working order at Subtenant's cost and expense.

(c)     Subtenant acknowledges that the perimeter fan coil air conditioning units located on floors 41 through 44 of the Subleased Premises are presently capable of being individually controlled and can be operated to supplement the Building standard air conditioning. Landlord furnishes chilled water to the perimeter fan coil units and to the extent they are set to a cooler temperature than Landlord is providing in accordance with the Prime Lease specifications,

there is a supplemental charge from Landlord to Sublandlord for the additional chilled water serving such perimeter fan coil units, together with Subtenant's equitable share of the Landlord's charges to Sublandlord for Landlord's labor and maintenance charges for the chiller plant that provides supplemental chilled water to such perimeter units.. The perimeter fan coil units can be modified so that they cannot be individually controlled and therefore not use any supplemental chilled water from Landlord. Subtenant will notify Sublandlord prior to May 15, 2007 if Subtenant elects to have the perimeter fan coil units modified so that they cannot be controlled individually and therefore not use any supplemental chilled water from Landlord, in which event Sublandlord will perform such work at Sublandlord's cost and expense. If Subtenant elects to retain the current configuration of the perimeter fan coil units Subtenant shall pay for the additional chilled water charges that are billed by Landlord for such supplemental chilled water consumption on floors 41 through 44. If after May 15, 2007 Subtenant desires the perimeter fan coil units to be modified so they cannot be individually controlled and therefore not use any supplemental chilled water from Landlord, Sublandlord will perform such work at Subtenant's cost and expense. Any bill from Sublandlord for supplemental chilled water charges or work performed pursuant to this sub-paragraph (c) shall be paid within twenty (20) days of Subtenant's receipt of a bill therefore, together with back-up documentation.

    SECTION 5. Use. Subtenant shall use and occupy the Subleased Premises for general, administrative and executive offices and uses incidental thereto permitted by the Prime Lease and for no other purposes.

    SECTION 6. Incorporation of Prime Lease.

        (a)    This Sublease is in all respects subject and subordinate to the Prime Lease and all of the terms, covenants, agreements, provisions and conditions thereof, and the Prime Lease is hereby incorporated into this Sublease in its entirety except as expressly set forth in Section 6(c) below and except to the extent any provisions thereof do not relate to the Subleased Premises or are inapplicable to, inconsistent with, or modified by the terms of this Sublease. By virtue of the incorporation of the Prime Lease, the terms "Landlord" and "Tenant" in the Prime Lease shall be deemed for purposes of this Sublease to refer to Sublandlord and Subtenant, respectively, and the term "Premises" shall be deemed for purposes of this Sublease to refer to the Subleased Premises, the terms "Fixed Rent", "Additional Rent" and Rent in the Prime Lease shall be deemed for the purposes of this Sublease to refer to the "Base Rent," the additional rent pursuant to Section 3 herein and the Rent pursuant to Section 3 herein, respectively, the term "Lease," or words of similar import, in the Prime Lease shall be deemed for the purposes of this Sublease to refer to this Sublease and the terms Commencement Date, Expiration Date and Term shall have the meanings given to such terms in this Sublease. The terms "Tenant's Tax Share" and "Tenant's Operating Share" as used in the Lease shall be deemed for purposes of this Sublease to refer to "Subtenant's Proportionate Share."

        (b)    Subtenant hereby assumes and agrees to be bound by and observe, fulfill and perform, fully, faithfully and promptly, all of the provisions, terms, covenants, conditions and obligations provided in the Prime Lease (to the extent incorporated herein by reference intended) to bind and/or be observed,  fulfilled and/or performed by Sublandlord, as Tenant, thereunder with respect to Subtenant's use and occupancy of the Subleased Premises in accordance with the terms of this Sublease, and Sublandlord shall have, for the purposes of this

Sublease, all of the rights, remedies, privileges and benefits granted to or conferred upon Landlord, as landlord, under the Prime Lease (but not the obligations of Landlord).

(c)     The following provisions and terms of the Prime Lease are not incorporated herein by reference: those Definitions not pertaining to the Subleased Premises and referring to or being used in paragraphs which are not incorporated by reference in this Sublease; Article 1 (except the first sentence of Section 1.1; Section 1.1(B); Section 1.1(C)); and reference to Section 2.4 in the first sentence of Section 2.1; Section 2.2, the last two sentences of Section 2.3(A), Sections 2.4(ii), (vi), (viii), (x) and (xii), 2.5; Article 3; any reference in Article 4 that Tenant could perform an alteration outside the Premises, or that Landlord's approval to an alteration would in any event be deemed approved, the last two sentences of Section 4.1; Sections 4.2(A), 4.2(B), 4.2(C); the last sentence of Section 4.3; Section 4.4 (D) Sections 4.6, 4.7, 4.8, 4.10, 5.2; Articles 6, 7; Section 8.1(A) (except to the extent of the elevators serving the 41st, 42nd, 43rd, 44th, 45th and 46th Floors, Section 8.1(C), (D), (F), (G), (H), (I), 8.2, 8.3, 9.3, 9.6, 9.7, 9.10, 9.11, 10.1(C), (E), (F), (G), (H), (J), (K), (L), the penultimate sentence of Section 10.4, the second sentence of Section 10.5 10.6 (except for the first three (3) sentences thereof); 10.7, 10.8, 10.9, 10.10, 10.11, 10.12, 10.13, 10.15, 10.18, 10.19, 11.8; Article 12; Sections 13.5, 14.5, 14.6, 14.8, the last sentence of Section 15.4, 15.5, 16.1(C), 17.1, 17.2, 17.5, 17.7, the second, third and fourth sentences of Article 18; the provisions of section 19.2 applicable only to JPMC or a JPMC Affiliate, Articles 22, 24, 28, 35, 40, 41, 46, 47, 48, 49, 50, 51.2; Exhibits C, F, I, J, K, N, O, P, S, T, Y, BB, CC, the First Amendment and the items mentioned on Exhibit B hereto. Notwithstanding the foregoing, to the extent Tenant is permitted to install an antenna pursuant hereto, then Article 6 and Section 10.10 will be applicable to that extent.

(d)     Subject to paragraph 6(g) hereof, in the event of termination, re-entry or dispossess of Tenant by Landlord under the Lease, Landlord may, at its option, take over all of the right, title and interest of Tenant, as Sublandlord under such sublease, and such subtenant, at Landlord's option, shall attorn to Landlord pursuant to the then executory provisions of such sublease, except that Landlord shall not be:

(i)     liable for any act or omission of Tenant under such sublease, or

(ii)     subject to any defense or offsets which such subtenant may have against Tenant, or

(iii)     bound by any previous payments which such subtenant may have made to Tenant more than thirty (30) days in advance of the date upon which such payment was due, unless previously approved by Landlord, or

(iv)     bound by any obligation to make any payment to or on behalf of such subtenant, or

(v)     except as specifically set forth in this Lease, bound by any obligation to perform any work or to make improvements to the Premises, or portion thereof demised by such sublease, or

(vi)     bound to return such subtenant's security deposit, if any, until such deposit has come into its actual possession and such subtenant would be entitled to such security deposit pursuant to the terms of such sublease.

(e)     If for any reason the Prime Lease is terminated prior to the Expiration Date of this Sublease, this Sublease shall be deemed to have been terminated on the date that is one (1) day prior to the date of termination of the Prime Lease and provided the Prime Lease has not been terminated by (i) the voluntary surrender thereof by Sublandlord or (ii) Sublandlord's default thereunder (not caused by Subtenant's default hereunder beyond any applicable notice and cure period) then Sublandlord shall not be liable to Subtenant by reason thereof for damages or otherwise, except that Sublandlord shall return to Subtenant the security deposit and that portion of any Rent paid in advance by Subtenant, if any, which is applicable to the period following the date of such termination.

(f)     Without limiting the generality of the foregoing, Subtenant will keep the terms of the Prime Lease confidential, subject to the provisions of Section 51.1 thereof.

(g)     Sublandlord will request and use commercially reasonable efforts to obtain a Non-Disturbance Agreement from Landlord for Subtenant, pursuant to Section 22.8 of the Prime Lease.  To the best of Sublandlord's knowledge, Landlord is required to provide Subtenant with a Non-Disturbance Agreement, pursuant to the terms and provisions of Section 22.8.  If Landlord fails to provide a Non-Disturbance Agreement, that will not affect this Sublease or Subtenant's rights hereunder.

(h)     Subtenant's right to contest legal requirements pursuant to Section 16.2 of the Prime Lease may only be exercised (i) so long as at the time of such contest there remains no uncured default hereunder for which Subtenant has received written notice and (ii) the existence of such contest or failure to comply with the applicable legal requirement does not constitute a default under the Prime Lease or Sublandlord has not received a notice of default from Landlord with respect thereto.

(i)     Section 4.7 of the Prime Lease has not been incorporated by reference in this Sublease.  Sublandlord will request that Landlord permit Subtenant to utilize the fire stairway as contemplated by section 4.7 of the Prime Lease.  If Landlord permits that use, then Subtenant at its sole cost will perform all work, which shall be deemed an Alteration for purposes of this Sublease, necessary to comply with Legal Requirements and Insurance Requirements applicable to Sublandlord's use of the fire stairways pursuant to the Prime Lease and Section 4.7 of the Prime Lease shall apply to Subtenant's use thereof.  If Subtenant is permitted to use the fire stairways, Subtenant will maintain the stairways and stairwells in clean condition and paint as necessary.  If Landlord refuses to permit such use, Sublandlord will not be in default hereunder and will have no obligation to act to enforce Sublandlord's rights under Section 4.7 of the Prime Lease.

(j)     Section 16.1(C) of the Prime Lease is incorporated herein solely to the extent that Landlord is indemnifying Sublandlord for a breach of Landlord's obligation to comply with Legal Requirements.  Should Subtenant suffer damage or loss due to Landlord's failure to comply with Legal Requirements under the Prime Lease for which Landlord's

indemnity under Section 16.1(C) would apply for the benefit of Sublandlord, Sublandlord upon request by Subtenant and at Subtenant's sole cost and expense will seek to enforce Landlord's indemnity obligation for the benefit of Subtenant.  Subtenant will indemnify, defend and hold Sublandlord harmless from any liability, cost or expense arising out of any attempt to enforce Landlord's indemnity under section 16.1(C) on behalf of Subtenant.  Subtenant's obligations under this subparagraph (j) shall survive expiration or earlier termination of this Sublease.

SECTION 7.  Condition of Subleased Premises.  Except as otherwise expressly set forth herein, no warranties or representations, expressed or implied, are made or intended to be made by Sublandlord in respect of the Subleased Premises, its physical condition, the uses to which the Subleased Premises may be put, or any other matter pertaining thereto.  Subtenant has inspected and is fully familiar with the Subleased Premises.  Except to perform the work necessary to achieve the Delivery Condition, Sublandlord shall have no obligation to perform any alterations, repairs, decoration or other work in or about the Subleased Premises to prepare the Subleased Premises for Subtenant's occupancy or for any other purpose.  The furniture and fixtures more particularly defined in the Inventory set forth on Schedule 1 attached hereto and made a part hereof will be delivered in an "as is" condition.

SECTION 8.  Assignment, Mortgaging, Subletting.

(a)     Except as otherwise expressly set forth herein, Subtenant shall not assign, mortgage, pledge, encumber, or otherwise transfer this Sublease, whether by operation of law or otherwise, and shall not sub-sublet (or underlet), or permit or suffer the Subleased Premises or any part thereof to be used or occupied by others (whether for desk space, mailing privileges or otherwise), without the Landlord and Sublandlord's prior consent in each instance.  Any assignment, sub-sublease, mortgage, pledge, encumbrance or transfer in contravention of the provisions of this Section 8 shall (i) constitute an Event of Default under this Sublease and (ii) be null and void.

(b)     If Subtenant desires to assign this Sublease or sub-sublet all or any portion of the Subleased Premises, Subtenant shall give notice thereof to Sublandlord, which shall be accompanied by (i) with respect to a proposed assignment of this Sublease, the date Subtenant desires the assignment to be effective, and (ii) with respect to a proposed sub-sublet of all or a part of the Subleased Premises, (A) the material business terms on which Subtenant would sub-sublet such premises and (B) a description of the portion of the Subleased Premises proposed to be sub-sublet.  If Subtenant desires to assign this Sublease or to sub-sublet all or any portion of the Subleased Premises for substantially all of the then remaining balance of the Term, such notice shall be deemed an offer from Subtenant to Sublandlord whereby Sublandlord (or Sublandlord's designee) shall be granted the right, at Sublandlord's sole option, to terminate this Sublease with respect to the entire Subleased Premises or the relevant portion thereof, or, in the case of a proposed sub-sublease of a portion of the Subleased Premises at Sublandlord's option to sublet (in its own name or that of its designees) from Subtenant on the terms and conditions set forth in the notice from Subtenant such portion of the Subleased Premises (the "Recapture Space") from Subtenant subject to the further provisions of paragraph 8(c)(ii) hereof.  Either option may be exercised by notice from Sublandlord to Subtenant within forty-five (45) days after Sublandlord's receipt of Subtenant's notice.

(c)     (i)     If Sublandlord exercises its option to terminate this Sublease pursuant to Section 8(b):  (A) this Sublease shall end and expire with respect to all of the Subleased Premises or the relevant portion thereof on the date that such assignment or sub-sublease was to commence, (B) Base Rent and Additional Rent shall be apportioned, paid or refunded and, in the event of termination of less than the entire Subleased Premises, proportionately reduced as of such date, (C) Subtenant, upon Sublandlord's request, shall enter into an amendment of this Sublease ratifying and confirming such total or partial termination, and (D) Sublandlord shall be free to lease the Subleased Premises (or any part thereof) or the relevant portion thereof terminated (or any part thereof) to Subtenant's prospective assignee or sub-subtenant.

(ii)     If Sublandlord shall exercise its option to sub-sublet the Recapture Space pursuant to Section 8(b), then, notwithstanding the terms contained in the notice from Subtenant to Sublandlord, such sub-sublease (a "Recapture Sublease") to Sublandlord or its designee as subtenant (the "Recapture Subtenant") or assignee shall:

(A)     be at a rate, at all times throughout the term of the Recapture Sublease, equal to (if Subtenant had proposed to sub-sublet the Subleased Premises) the lesser of (x) the rate set forth in the notice to Sublandlord and (y) the Base Rent set forth in this Sublease;

(B)     otherwise be upon the same terms and conditions as those contained in the notice (other than, in the case of an assignment, payment of consideration therefor to Subtenant) and (except as modified by the notice) the terms and conditions contained in this Sublease, except such as are irrelevant or inapplicable and except as otherwise expressly set forth to the contrary in this section (c)(ii);

(C)     give the Recapture Subtenant the unqualified and unrestricted right, without Subtenant's permission, to assign such sub-sublease and to further sub-sublet the Recapture Space or any part thereof and to make any and all changes, alterations, and improvements in and to the Recapture Space;

(D)     provide in substance that any such changes, alterations, and improvements made in the Recapture Space may be removed, in whole or in part, prior to or upon the expiration or other termination of the Recapture Sublease provided that any material damage and injury caused thereby shall be repaired;

(E)     provide that (i) the parties to such Recapture Sublease expressly negate any intention that any estate created under the Recapture Sublease be merged with any estate held by either of said parties, (ii) prior to the commencement of the term of the Recapture Sublease, Subtenant, at its expense, shall make such alterations as may be required or reasonably deemed necessary by the Recapture

Subtenant to physically separate the Recapture Space from the balance of the Subleased Premises and to provide appropriate means of access thereto and to the public portions of the balance of the floor such as toilets, janitor's closets, telephone and electrical closets, fire stairs, elevator lobbies, etc., and (iii) at the expiration of the term of such Recapture Sublease, Subtenant will accept the Recapture Space in its then existing condition, broom clean; and

(F)     provide that the Recapture Subtenant or occupant shall use and occupy the Recapture Space for any purpose approved by Sublandlord.

(iii)     Until the expiration of a Recapture Sublease, performance by Recapture Subtenant under a Recapture Sublease shall be deemed performance by Subtenant of any similar obligation under this Sublease and Subtenant shall not be liable for any default under this Sublease or deemed to be in default hereunder if such default is occasioned by or arises from any act or omission of Recapture Subtenant under the Recapture Sublease or is occasioned by or arises from any act or omission of any occupant under the Recapture Sublease.

(iv)     If Recapture Subtenant is unable to give Subtenant possession of the Recapture Space at the expiration of the term of the Recapture Sublease by reason of the holding over or retention of possession of any tenant or other occupant, then (w) until the date upon which Recapture Subtenant gives Subtenant possession of such Recapture Space free of occupancies, Recapture Subtenant shall continue to pay all charges previously payable, and comply with all other obligations under the Recapture Sublease, (x) neither the Expiration Date nor the validity of this Lease shall be affected, (y) Subtenant waives any rights under Section 223a of the Real Property Law of New York, or any successor statute of similar import, to rescind this Sublease and further waives the right to recover any damages from Sublandlord or Recapture Subtenant that may result from the failure of Sublandlord to deliver possession of the Recapture Space at the end of the term of the Recapture Sublease, and (z) Recapture Subtenant, at Recapture Subtenant's expense, shall use its reasonable efforts to deliver possession of such Recapture Space to Subtenant and in connection therewith, if necessary, shall institute and diligently and in good faith prosecute holdover and any other appropriate proceeding against the occupant of such Recapture Space.

(d)     If Sublandlord does not exercise (or fails to exercise) its option to terminate this Sublease with respect to the entire Subleased Premises or with respect to the relevant portion thereof pursuant to Section 8(b) or does not have an option to terminate this Sublease pursuant to Section 8(b) above and if Sublandlord does not exercise its right to enter into a Recapture Sublease pursuant to Section 8(b) above, and provided that no Event of Default then exists, Sublandlord's consent to the proposed assignment or sub-subletting shall not be unreasonably withheld or delayed, provided that the following conditions are satisfied:

(i)     in Sublandlord's reasonable judgment, the proposed assignee or sub-sublessee is engaged in a business or activity, and the sub-subleased premises will be used in a manner, which (A) is in keeping with the then standards of the Building, (B) limits the use of

the sub-subleased premises to general and executive offices, and (C) does not violate any restrictions set forth in the Prime Lease or this Sublease;

       (ii)    the proposed assignee or sub-sublessee is a reputable person of good character with sufficient financial means to perform all of its obligations under this Sublease or the sub-sublease, as the case may be, and Sublandlord has been furnished with reasonable proof thereof, and Sublandlord or any Affiliate of Sublandlord is not litigating against or has been threatened with litigation by such proposed assignee or sub-sublessee or its Affiliates within the prior twelve (12) months;

       (iii)    Subtenant shall, within thirty (30) days, reimburse Sublandlord for all expenses incurred by Sublandlord in connection with such assignment or sub-sublease, including any investigations as to the acceptability of the proposed assignee or sub-sublessee, reviewing any plans and specifications for Alterations proposed to be made in connection therewith, and all legal costs reasonably incurred in connection with the granting of any requested consent;

       (iv)    Subtenant has not and shall not (A) publicize the availability of the sub-sublease space, or (B) list the space to be assigned or sub-sublet with a broker, agent or other entity at a rental rate of less than the rate Sublandlord is offering to sublease space in the Building;

       (v)    the proposed assignee or sub-sublessee shall not be entitled, directly or indirectly, to diplomatic or sovereign immunity, regardless of whether the proposed assignee or sub-sublessee agrees to waive such diplomatic or sovereign immunity, and shall be subject to the service of process in, and the jurisdiction of the courts of, the City and State of New York; and if the proposed assignee or sub-sublessee is an entity organized under the laws of any jurisdiction other than the United States or any state thereof, or is not a United States citizen, if an individual, such Person shall waive any immunity to which it may be entitled, and shall be subject to the service of process in, and the jurisdiction of the courts of, the City and State of New York; and

       (vi)    in Sublandlord's reasonable judgment, the proposed assignee or sub-sublessee shall not be of a type or character, or engaged in a business or activity, or owned or Controlled by or identified with any entity, which may result in protests or civil disorders or commotions or other disruptions of the normal business activities at the property.

       (vii)    the form of the proposed assignment or sub-sublease shall be reasonably satisfactory to Sublandlord and shall comply with the provisions of this Sublease;

       (viii)    no sub-sublease shall be for a term ending later than one (1) day prior to the Expiration Date of this Sublease;

       (ix)    no sub-sublease shall be delivered to any sub-sublessee, and no sub-sublessee shall take possession of any part of the Subleased Premises, until an executed counterpart of such sublease has been delivered to Sublandlord and approved in writing by Sublandlord as provided in this Section 8;

(x)     if an Event of Default shall occur at any time prior to the effective date of such assignment or sub-subletting, then Sublandlord's consent thereto, if previously granted, shall be immediately deemed revoked without further notice to Subtenant, and if such assignment or subletting would have been permitted without Sublandlord's consent pursuant to this Section 8, such permission shall be void and without force and effect, and in either such case, any such assignment or subletting shall constitute a further Event of Default hereunder;

(xi)     each sub-sublease shall be subject and subordinate to this Sublease and to the matters to which this Sublease is or shall be subordinate, it being the intention of Sublandlord and Subtenant that Subtenant shall assume and be liable to Sublandlord for any and all acts and omissions of all sub-sublessees and anyone claiming under or through any sub-sublessees which, if performed or omitted by Subtenant, would be a default under this Sublease; and Subtenant and each sub-sublessee shall be deemed to have agreed that upon the occurrence and during the continuation of an Event of Default hereunder, Subtenant has hereby assigned to Sublandlord, and Sublandlord may, at its option, accept such assignment of, all right, title and interest of Subtenant as sublandlord under such subsublease, together with all modifications, extensions and renewals thereof then in effect, and such sub-sublessee shall, at Sublandlord's option, attorn to Sublandlord pursuant to the then executory provisions of such sub-sublease, except that Sublandlord shall not be (A) liable for any previous act or omission of Subtenant under such sub-sublease, (B) subject to any counterclaim, offset or defense not expressly provided in such sub-sublease, which theretofore accrued to such sub-sublessee against Subtenant, (C) bound by any previous modification of such sub-sublease not consented to by Sublandlord, or by any prepayment of more than one (1) month's rent and additional rent under such sub-sublease, (D) bound to return such sub-sublessee's security deposit, if any, except to the extent that Sublandlord shall receive actual possession of such deposit and such sub-sublessee shall be entitled to the return of all or any portion of such deposit under the terms of its sub-sublease, or (E) obligated to make any payment to or on behalf of such sub-sublessee, or to perform any work in the subleased space or the Building, or in any way to prepare the subleased space for occupancy, beyond Sublandlord's obligations under this Sublease. The provisions of this Section 8 shall be self-operative, and no further instrument shall be required to give effect hereto, provided that the sub-sublessee shall execute and deliver to Sublandlord any instruments Sublandlord may reasonably request to evidence and confirm such subordination and attornment; and

(xii)     no sublease shall result in there being more than six (6) occupants in the Subleased Premises at any one (1) time, including Subtenant or a Related Entity, as one (1) occupant, provided any Related Entity occupying the Subleased Premises with Subtenant does not occupy separately demised space or pay rent.

(e)     Any consent pursuant to Section 8(d) shall be granted or declined, as the case may be, within fifteen (15) days after Sublandlord's receipt of (1) a true and complete statement reasonably detailing the identity of the proposed assignee or sub-sublessee, the nature of its business and its proposed use of the space, (2) current financial information with respect to the proposed assignee or sub-sublessee, including its most recent financial statements, and (3) any other information Sublandlord may reasonably request.

(f)     If Subtenant is a corporation, the transfer by one or more transfers, directly or indirectly, by operation of law or otherwise, of a majority of the stock of Subtenant shall be deemed a voluntary assignment of this Sublease; provided, however, that the provisions of this Section 8(f) shall not apply to the transfer of shares of stock of Subtenant if and so long as Subtenant is publicly traded on a nationally recognized stock exchange.  For purposes of this Section the term "transfers" shall be deemed to include the issuance of new stock or of treasury stock which results in a majority of the stock of Subtenant being held by a Person or Persons, that do not hold a majority of the stock of Subtenant on the date hereof.  If Subtenant is a partnership, the transfer by one or more transfers, directly or indirectly, by operation of law or otherwise, of a majority interest in the partnership shall be deemed a voluntary assignment of this Sublease.  If Subtenant is a limited liability company, trust, or any other legal entity (including a corporation or partnership), the transfer by one or more transfers, directly or indirectly, of Control of such entity, however characterized, shall be deemed a voluntary assignment of this Lease.  The provisions of Section 8(a) shall not apply to (i) transactions with an entity into or with which Subtenant is merged or consolidated or to which substantially all of Subtenant's assets are transferred or (ii) the conversion of Subtenant into a public company by an initial public offering of its stock for trade on a nationally recognized stock exchange, so long as, in each such instance  (A) such transfer or public offering was made for a legitimate independent business purpose and not for the purpose of transferring this Sublease, (B) the successor to Subtenant (or the public company which Subtenant has thereby become) has a net worth computed in accordance with generally accepted accounting principles at least equal to the net worth of the original Subtenant on the date of this Sublease, and (C) proof satisfactory to Sublandlord of such net worth is delivered to Sublandlord at least ten (10) days prior to the effective date of any such transaction;  provided, however, that if such successor to Subtenant (or the public company which Subtenant has thereby become) does not have net worth which satisfies the foregoing requirements, Sublandlord may require, in Sublandlord's sole and absolute discretion, in lieu of such net worth, a security deposit by Subtenant (additional to any other security deposit provided by Subtenant) in form, substance and amount satisfactory to Sublandlord in its sole discretion.  The limitations set forth in this Section 8(f) shall apply to sub-subtenant(s), assignee(s) and guarantor(s) of this Sublease, if any, and any transfer by any such entity in violation of this Section 8(f) shall be a transfer in violation of Section 8(a).

(g)     Subtenant may also, upon prior notice to but without the consent of Sublandlord, assign this Sublease to, or sub-sublease all or any portion of the Subleased Premises to, any Person which Controls, is Controlled by, or is under common Control with the original Subtenant named herein (a "Related Entity").  Such assignment or sub-sublease shall not relieve, release, impair or discharge any of Subtenant's obligations hereunder.

(h)     Any modification, amendment or extension of a sub-sublease other than one of solely ministerial in nature shall be deemed a sub-sublease for the purposes of Section 8(a) hereof.  Subtenant will deliver to Sublandlord with five (5) business days after execution thereof any modification or amendment of a sub-Sublease.

(i)     Notwithstanding anything in this Sublease to the contrary, no assignment or subletting, whether made with Sublandlord's consent or without Sublandlord's consent, if and to the extent permitted hereunder, shall be effective unless and until: (A) in the case of an assignment or a deemed assignment, the assignee executes, acknowledges and delivers to

Sublandlord (i) an agreement in form and substance reasonably satisfactory to Sublandlord whereby the assignee (1) assumes Subtenant's obligations under this Sublease, and (2) agrees that, notwithstanding such assignment or transfer, the provisions of Section 8(a) hereof shall be binding upon it in respect of all future assignments and deemed assignments, and (ii) certificates or policies of insurance as required under this Sublease; and (B) in the case of a sub subletting of all or any portion of the Subleased Premises, Subtenant delivers to Sublandlord an executed counterpart of such sub-sublease.

(j)     Notwithstanding any assignment or subletting or any acceptance of rent or additional rent by Sublandlord from any assignee or sub-sublessee, Subtenant shall remain fully and primarily liable for the payment of all rent and additional rent due and for the performance of all other terms, covenants and conditions contained in this Sublease on Subtenant's part to be observed and performed, and any default under any term, covenant or condition of this Sublease by any sub-sublessee shall be deemed a default under this Sublease by Subtenant subject to whatever notice and cure periods as are provided herein. Subtenant shall indemnify, defend, protect and hold harmless Sublandlord from and against any and all actual losses, liabilities, damages, claims, judgments, fines, suits, demands, costs, interest and expenses of any kind or nature (including reasonable attorneys' fees and disbursements) incurred in connection with any claim, proceeding or judgment and the defense thereof, resulting from any claims that may be made against Sublandlord by the proposed assignee or sub-sublessee or by any brokers or other persons or entities claiming a commission or similar compensation in connection with the proposed assignment or sub-sublease, irrespective of whether Sublandlord shall give or decline to give its consent to any proposed assignment or sublease, or if Sublandlord shall exercise any of its options under this Section 8.

(k)     If Subtenant shall enter into any assignment or sublease permitted hereunder or consented to by Sublandlord, Subtenant shall, within sixty (60) days of Sublandlord's consent to such assignment or sublease, deliver to Sublandlord a complete list of Subtenant's reasonable third party brokerage fees, legal fees and architectural fees paid or to be paid in connection with such transaction, together with a list of all of Subtenant's property to be transferred to such assignee or sublessee and shall deliver to Sublandlord evidence of the payment of such fees promptly after the same are paid. In consideration of such assignment or subletting, Subtenant shall pay to Sublandlord.

(l)     In the case of an assignment, on the effective date of the assignment, an amount equal to fifty percent (50%) of all sums and other consideration paid to Subtenant by the assignee for or by reason of such assignment (including sums paid for the sale or rental of Subtenant's property, less, in the case of a sale thereof, the unamortized costs of such Subtenant's property and leasehold improvements determined based on Subtenant's tax records net of all reasonable actual out-of-pocket costs and expenses in connection with such assignment which include but are not limited to brokerage fees, legal fees, cash allowances, free rent or other economic concessions.

(m)     In the case of a sublease, fifty percent (50%) of all consideration payable under the sublease to Subtenant by the subtenant which exceeds, on a per square foot basis, Annual Base Rent and Additional Rent accruing during the term of the sublease in respect of the subleased space (together with any sums paid for the sale or rental of Subtenant's property, less,

in the case of the sale thereof, the unamortized costs of such Subtenant's property and leasehold improvements determined based on Subtenant's tax records net of all reasonable actual out-of-pocket costs and expenses in connection with such sublease which include but are not limited to brokerage fees, legal fees, cash allowances, free rent or other economic concessions. The sums payable under this clause shall be paid by Subtenant to Sublandlord as and when paid by the sub-subtenant to Subtenant.

(n)     Subtenant shall not permit or suffer to occur any assignment, mortgage, pledge, encumbrance, or other transfer of any sub-sublease, whether by operation of law or otherwise, and shall not permit or suffer to occur any sub-sub-subletting, or permit or suffer the Subleased Premises or any part thereof to be used or occupied by others (whether for desk space, mailing privileges or otherwise), without Subtenant's prior consent in each instance, except as may be otherwise specifically provided in this Sublease. Any such assignment, sub-sub-sublease, mortgage, pledge, encumbrance or transfer in contravention of the provisions of this Section 8 shall (i) constitute an Event of Default under this Sublease and (ii) be null and void.

(o)     In reviewing any request for consent by Subtenant to assign or sublet any portion of the Subleased Premises, Sublandlord agrees to forward any such request for consent to the Landlord upon receipt of same so that Sublandlord and Landlord can concurrently review the request for consent

SECTION 9.   Alterations and Improvements.

(a)     Subtenant shall not make any "Alterations" to the Subleased Premises except in strict compliance with Article 4 of the Prime Lease as incorporated herein by reference. Subtenant may not make any Alterations that would require the filing of plans with the Department of Buildings (or a successor agency) or affect other floors leased by Sublandlord (including vertical risers and other infrastructure) without first obtaining the prior written approval of Sublandlord, which approval shall not be unreasonably withheld, conditioned or delayed. Notwithstanding the foregoing, Sublandlord's consent is not required with respect to purely decorative Alterations or non-structural Alterations that do not affect Building Systems costing less than $100,000.00 for any single proposed Alteration (all other provisions of the Sublease apply to all such Alterations). If any Alterations proposed by Subtenant require the approval of Landlord pursuant to Article 4 of the Prime Lease, no such Alterations shall be commenced until such approval has been received by Sublandlord on Subtenant's behalf. If proposed Alterations affect Building systems, including without limitation electrical or mechanical infrastructure, or structure of other parts of the Leased Premises, Sublandlord's consent shall be required to such Alterations, which consent shall not be unreasonably withheld, conditioned or delayed. If Sublandlord's consent is being denied, Sublandlord shall provide a description of why such consent is being denied. Sublandlord shall respond to Subtenant's request for approval of Alterations as and when provided in Section 4.1 of the Prime Lease as incorporated herein by reference, provided, however, except for the Initial Alterations, that each of the time periods for such review shall be lengthened by five (5) Business Days in the case of a fifteen (15) Business Days' review period, and by two (2) Business Days in the case of a three (3) Business Days' review period. All materials required to be submitted in connection with proposed Alterations under Article 4.1 of the Prime Lease shall be submitted by Subtenant to Sublandlord in duplicate. Sublandlord shall promptly forward Subtenant's request for

approval and/or the materials submitted by Subtenant in connection therewith to Landlord for contemporaneous review thereof by Landlord and Sublandlord. Subtenant, at its sole cost and expense, shall comply with all of the applicable provisions of the Prime Lease relating to such Alterations and, within thirty (30) days after receipt or written invoice with supporting documentation (which may simply be Landlord's bill therefor) by Sublandlord, Subtenant shall pay, as additional rent hereunder, any amounts payable to Landlord by Sublandlord pursuant to the Prime Lease in connection with such Alterations. Subtenant shall reimburse Sublandlord, within thirty (30) days of demand including supporting documentation, for any actual out-of-pocket costs incurred by Sublandlord in reviewing Subtenant's initial Alteration plans which require Sublandlord's consent or to determine if such consent is required pursuant to this paragraph, or inspecting the Alterations. After the initial Alterations, Subtenant shall reimburse Sublandlord for any costs incurred by employees of Sublandlord in reviewing Subtenant's plans in connection with such Alterations, to the extent such costs do not exceed the costs a third-party would charge for similar services. For purposes of this Sublease, the "sixty (60)" day period referred to in Section 4.1 of the Prime Lease shall be "forty-five (45)" days. Alterations that may be performed by Sublandlord without Landlord's consent under the Prime Lease may be performed by Subtenant without Sublandlord's consent, but all other conditions applying to Alterations, shall apply thereto.

(b)     Notwithstanding anything to the contrary contained in the Prime Lease, at the expiration or earlier termination of this Sublease, Subtenant shall quit and surrender possession of the Subleased Premises to Sublandlord, in the same condition as Sublandlord is required to deliver the Leased Premises to Landlord pursuant to the Prime Lease upon expiration of the Prime Lease; provided, however, if Sublandlord agreed in writing prior to the Commencement Date that Sublandlord would remove a particular alteration at the end of the term and Landlord requires such removal, the removal of such alteration will be performed by Sublandlord, at its sole cost and expense. Notwithstanding the foregoing, at the expiration or earlier termination of the Sublease, Subtenant shall remove Subtenant's personal property, equipment and trade fixtures and the work stations and other items listed on Schedule 1 attached hereto.

(c)     As more particularly provided in Exhibit E annexed hereto and made a part hereof, Sublandlord shall provide Subtenant with "Sublandlord's Contribution" for Subtenant's "Initial Alterations" (as such terms are defined in Exhibit E).

(d)     Subject to the terms of the Prime Lease, in connection with Subtenant's Initial Alterations, Subtenant shall pay as Additional Rent (1) Sublandlord's actual cost to provide temporary power to the Subleased Premises during performance of the Initial Alterations; (2) any costs incurred by reason of Subtenant's hoisting of personnel and materials on the freight elevators; and (3) any incremental cost and overtime costs charged by Landlord to Sublandlord relating to Subtenant's Initial Alterations, including, without limitation, elevator operators, standby trades, security and temporary HVAC.

(e)     To the extent inspections of areas of the Building outside the Subleased Premises are necessary for Subtenant in connection with a proposed Alteration of the Subleased Premises, Sublandlord shall use commercially reasonable efforts to exercise its rights under Section 24 of the Prime Lease to allow Subtenant to make such inspections.

SECTION 10.  Indemnification and Release from Liability.

(a)    Subject to the terms of Section 11(b) and(c) hereof relating to waivers of subrogation (to the extent that such waivers of subrogation shall be applicable in any case), Subtenant shall indemnify and hold harmless Sublandlord, Landlord and all Superior Lessors and Superior Mortgagees and its and their respective partners, directors, officers, principals, shareholders, agents and employees from and against any and all claims arising from or in connection with (a) the conduct or management of the Subleased Premises or of any business therein, or any work or thing whatsoever done, or any condition created or originating in the Subleased Premises during the term of this Sublease; (b) any act, omission (where there is an affirmative duty to act) or negligence of Subtenant or any of its subtenants or licensees or its or their respective partners, directors, principals, shareholders, officers, agents, employees or contractors (collectively, the "Subtenant Parties" or individually a "Subtenant Party"); (c) any accident, injury or damage whatsoever occurring in, at or upon the Subleased Premises; (d) the performance of Alterations by or on behalf of Subtenant and (e) Subtenant's contesting any legal requirements, pursuant to Section 16.2 of the Prime Lease; together with all reasonable, actual out-of-pocket costs, expenses and liabilities incurred in or in connection with each such claim or action or proceeding brought thereon, including, without limitation, all reasonable attorneys fees and expenses.  In case any action or proceeding be brought against Sublandlord, Landlord and/or any Superior Lessor or Superior Mortgagee and/or its or their respective partners, directors, officers, principals, shareholders, agents and/or employees by reason of any such claim, Sublandlord, Landlord or such Superior Lessor or Superior Mortgagee, as applicable, shall give Subtenant prompt notice thereof, and Subtenant shall resist and defend such action or proceeding (by counsel reasonably satisfactory to Sublandlord, Landlord or such Superior Lessor or Superior Mortgagee, as applicable).  Sublandlord shall have the right to employ separate counsel, at its own expense, in any such action and to participate in the defense thereof.

(b)    Nothing contained in this Section 10 shall modify or affect the provisions of Section 11 below.

(c)    This Section 10 and the obligations set forth herein shall survive the Expiration Date.

(d)    Neither Sublandlord nor any of its officers, agents or employees shall be liable for any injury, loss or damage to persons or property, sustained by Subtenant or any other person or other entity which may relate directly or indirectly to Subtenant due to (i) the Subleased Premises, the Building or any part or appurtenances of either being or becoming out of repair, (ii) the happening of any accident in or about the Subleased Premises or the Building, (iii) any act or neglect of any tenant or occupant of the Building or of any other person or other entity, or (iv) any other reason whatsoever.  Nothing herein shall release Sublandlord for injury, loss or damage to persons or property to the extent caused solely by Sublandlord's gross negligence or wilful misconduct.  Sublandlord and any successor-in-interest to Sublandlord shall be under no personal liability with respect to any of the provisions of this Sublease, and if Sublandlord or any successor-in-interest to Sublandlord is in breach or default with respect to its obligations under this Sublease.

SECTION 11.  Insurance.

(a)     Except for the limits on the policy of commercial general liability insurance set forth in the next succeeding sentence, Subtenant shall obtain and keep in full force and effect during the term of this Sublease at its own cost and expense insurance with respect to the Subleased Premises and Subtenant's use and occupancy thereof meeting all of the requirements of Article 19 of the Prime Lease protecting as insureds Landlord and Sublandlord and any other parties designated by Landlord pursuant to Article 19 of the Prime Lease.  For purposes of this Sublease, the minimum amount of commercial general liability insurance required to be carried by Subtenant shall be $20,000,000.00 as such amount may be subject to increase from time to time in the reasonable judgment of Sublandlord.  Subtenant shall pay all premiums and charges therefor and upon failure to do so Landlord or Sublandlord, as the case may be, may after notice to Subtenant, but shall not be obligated to, make such payments, and in such event Subtenant agrees to pay the amount thereof to Sublandlord within five (5) days after demand and said sum shall be deemed to be additional rent and in each instance collectible on the first day of any month following the date of notice to Subtenant in the same manner as though it were Rent originally reserved hereunder.

(b)     Commencing on the Commencement Date, the original insurance policies or appropriate certificates shall be deposited with Sublandlord together with any renewals, replacements or endorsements to the end that said insurance shall be in full force and effect for the benefit of Subtenant with coverage extended to Landlord and Sublandlord as an additional insured during the Term for claims arising from the acts or omissions of Subtenant or a Subtenant Party hereunder and in connection with the Subleased Premises.  In the event Subtenant shall fail to procure and place such insurance, Landlord or Sublandlord may after written notice to Subtenant, but shall not be obligated to, procure and place same, in which event the amount of the premium paid shall be refunded by Subtenant to Sublandlord or Landlord, as the case may be, within ten (10) business days of a receipt by Subtenant of an invoice therefor together with supporting documentation.

(c)     Subtenant hereby releases Sublandlord from any liability for and waives its right of recovery against Sublandlord for loss or damage to Subtenant's equipment, improvements, trade fixtures or other property whatsoever, *provided, however,* that the release contained herein shall be limited by and be coextensive with the waiver of subrogation clause or clauses or endorsements consenting to the waiver of subrogation.  If any of Subtenant's property insurance policies require an endorsement to effect a waiver of subrogation by such insurer, Subtenant shall cause such policies to be so endorsed.  To the extent permitted under such policies, Subtenant hereby waives on behalf of such insurer all rights of subrogation against Sublandlord for any such loss or damage.

(d)     Sublandlord hereby releases Subtenant from any liability for and waives its right of recovery against Subtenant for loss or damage to Sublandlord's equipment, improvements, trade fixtures or other property whatsoever , *provided, however,* that the release contained herein shall be limited by and be coextensive with the waiver of subrogation clause or clauses or endorsements consenting to the waiver of subrogation.  If any of Sublandlord's property insurance policies require an endorsement to effect a waiver of subrogation by such insurer, Sublandlord shall cause such policies to be so endorsed.  To the extent permitted under such policies, Sublandlord hereby waives on behalf of such insurer all rights of subrogation against Subtenant for any such loss or damage.

SECTION 12. <u>Destruction, Fire and other Casualty/Condemnation</u>.

(a)     Except as provided in subsection (b) below, if the whole or any part of the Subleased Premises shall be damaged by fire or other casualty and the Prime Lease is not terminated on account thereof by either Landlord or Sublandlord pursuant to Article 20 thereof, this Sublease shall remain in full force and effect and Rent shall not abate except to the extent Sublandlord is entitled to an abatement of Rent under the terms of the Prime Lease for the portion of the Subleased Premises so damaged.

(b)     If (i) all or a material portion of the Subleased Premises (consisting of forty percent (40%) or more of the rentable area thereof, is damaged or rendered untenantable by fire or other casualty, (ii) the Prime Lease has not been terminated pursuant to any provision of Article 20 thereof, and (iii) Sublandlord shall have notified Subtenant that the time period estimated to substantially complete Landlord's restoration work, as determined pursuant to Section 20.3 of the Prime Lease, exceeds twelve (12) months from the date of such fire or casualty, then Subtenant shall have the right to terminate this Sublease, but only by giving written notice thereof to Sublandlord within thirty (30) days after receipt of notice from Sublandlord pursuant to clause (iii) of this Section 12(b). If Subtenant shall exercise such right to terminate this Sublease, then: (x) this Sublease and the term and estate hereby granted shall expire (A) with respect to the portion of the Subleased Premises so damaged, on the thirtieth (30th) day after Sublandlord's receipt of such notice and (B) with respect to the balance of the Subleased Premises as of the termination date set forth in Subtenant's notice to Sublandlord, provided that Subtenant, subject to any abatement as may apply pursuant to the terms hereof, shall continue to pay all Base Rent and additional charges and perform all of its obligations with respect to the balance of the Subleased Premises through the termination date, in each case, with the same effect as if that were the date hereinbefore set for the expiration of the Term, and (y) the Base Rent and additional rent shall be apportioned as of such dates. If Subtenant elects to terminate this Sublease pursuant to the terms of this Section 12(b), Subtenant shall make available (or pay over) to Sublandlord a portion of the proceeds of the property insurance required to be carried by Subtenant pursuant to Section 11 with respect to leasehold improvements in the Subleased Premises, (as and when such proceeds are received from Subtenants insurer(s), it being expressly understood that Subtenant shall be liable for the full amount payable under this subsection (b) if Subtenant's inability to timely collect insurance proceeds is due to Subtenant's failure to properly maintain insurance or to diligently and in good faith pursue collection of insurance proceeds), equal to the then unamortized balance of the Sublandlord's Contribution (as such term is defined in <u>Exhibit C</u> hereto) allocable to the portion of the Subleased Premises damaged by such casualty.

(c)     If the whole or any part of the Subleased Premises shall be lawfully condemned or taken in any manner for any public or quasi-public use and the Prime Lease is not terminated on account thereof pursuant to Article 20 thereof, this Sublease shall remain in full force and effect and Rent shall not abate except to the extent Sublandlord is entitled to an abatement of Rent under the terms of the Prime Lease for the portion of the Subleased Premises so affected; provided, however, that if (i) all or a material portion of the Subleased Premises (consisting of forty percent (40%) or more of the rentable area thereof) is rendered untenantable as a result of such condemnation, (ii) the Prime Lease has not been terminated pursuant to any provision of Article 20 thereof, and (iii) Sublandlord shall have notified Subtenant that the time

period estimated to substantially complete restoration to a tenantable condition of the area of the Subleased Premises affected by such condemnation, (which notice shall be given by no later than thirty (30) days following the effective date of such condemnation), exceeds twelve (12) months from the date of such condemnation, then Subtenant shall have the right to terminate this Sublease, but only by giving written notice thereof to Sublandlord within thirty (30) days after receipt of notice from Sublandlord pursuant to clause (iii) of this Section 12(c). If Subtenant shall exercise such right to terminate this Sublease, then: (x) this Sublease and the term and estate hereby granted shall expire on the date of the taking or earlier date specified in Subtenant's notice to Sublandlord with the same effect as if that were the date hereinbefore set for the expiration of the Term, and (y) the Base Rent and additional rent shall be apportioned as of such date. Without limiting the terms of the Prime Lease as incorporated herein by reference, nothing contained herein shall prevent Subtenant from seeking a condemnation award for any taking in connection with its personal property, or relocation costs and expenses to the extent permitted by the Prime Lease.

SECTION 13. Sublandlord's Obligations.

(a)     Subtenant agrees that to the extent Landlord fails or refuses to perform its obligations under the Prime Lease to supply services or to make repairs and replacements or to take any action whatsoever with respect to the Subleased Premises or the Building, Sublandlord shall not be obligated to perform such obligations and Sublandlord shall have no liability or obligation with respect thereto. Sublandlord agrees to use its good faith commercially reasonable efforts to cause Landlord to comply with the Terms of the Premises Lease. Subtenant agrees that no failure or delay on the part of Landlord in the performance of any such obligation shall give rise to any claim against Sublandlord for damages or constitute a total or partial eviction, nor shall this Sublease or the obligations of the Subtenant hereunder to pay Rent hereunder and to perform and observe all of the other obligations, covenants, conditions and agreements on the part of Subtenant contained in this Sublease be thereby affected in any manner whatsoever.

(b)     Sublandlord shall not be obligated to perform and shall not be liable for the performance by Landlord of any of the obligations of Landlord under the Prime Lease, including, without limitation, Landlord's obligations under the Prime Lease with respect to asbestos and Hazardous Materials. Sublandlord agrees to use its good faith commercially reasonable efforts to cause Landlord to comply with the Terms of the Premises Lease. Subtenant shall have no claim against Sublandlord by reason of any default upon the part of Landlord and nothing herein contained shall be deemed to authorize Subtenant to represent Sublandlord in connection with any suit or claim by or against Landlord.

(c)     (i)     Except for those services expressly agreed to be provided by Sublandlord pursuant to the terms of this Sublease, Sublandlord shall have no obligation during the Term of this Sublease to render any services to Subtenant in or to the Subleased Premises of any nature whatsoever or to expend any money for the preservation or repair of the Subleased Premises. Subtenant agrees to look solely to the Landlord for the furnishing of any services or the performance of any work to which Sublandlord may be entitled under the Prime Lease. Sublandlord agrees to cooperate with Subtenant, and to use its good faith and commercially

reasonable efforts, without, however, incurring any liabilities or expenses not otherwise provided for in the Prime Lease or this Sublease, by taking whatever action shall be reasonably required, to enforce for the benefit of Subtenant the obligations of Landlord to Sublandlord under the Prime Lease.

(ii)     Upon Sublandlord's receipt of a notice from Subtenant that the Landlord has failed to perform an obligation under the Prime Lease which impairs Subtenant's ability to conduct its business in the Subleased Premises, Sublandlord shall, at its sole option either: (A) timely institute and diligently prosecute any action or proceeding or take such other action (including without limitation, in Sublandlord's sole discretion, exercising any right of self-help under the Prime Lease) to cause Landlord to observe and perform the observance of or compliance with any obligation of Landlord under the Prime Lease, in which case Subtenant shall be entitled to participate with Sublandlord in any recovery or relief obtained in connection with the enforcement of Sublandlord's rights against Landlord to the extent it relates to the Subleased Premises; or (B) provided there is no uncured default hereunder with respect to which Subtenant has received a notice of default, direct Subtenant to pursue its claim directly against Landlord, in which event, Sublandlord assigns to Subtenant all rights and remedies it may have against Landlord, unless Subtenant is barred from instituting an action due to lack of privity, to perform such obligations. In no event, can Subtenant require Sublandlord to institute an action against Landlord. Subtenant agrees to indemnify, defend and hold Sublandlord harmless from and against any actual costs, liabilities, claims, penalties and expenses (including, without limitation, reasonable attorney's fees and disbursements) arising from Subtenant's attempted enforcement of such obligations of Landlord.

(iii)    All actual, out-of-pocket expenses of Sublandlord (including but not limited to reasonable attorneys fees and disbursements) arising from Sublandlord's action taken pursuant to the preceding subparagraph (ii) shall be reimbursed by Subtenant within thirty (30) business days after demand together with reasonable back-up documentation therefor, provided, that to the extent other portions of the Leased Premises are benefited by such action, such expenses shall be apportioned so that Subtenant shall be responsible only for its equitable share of such expenses.

(d)     Nothing contained in this Section 13 shall require Sublandlord to institute any suit or action to enforce any such obligations of Landlord. Subtenant acknowledges that the failure of Landlord to provide any services or comply with any obligations under the Prime Lease shall not entitle Subtenant to any abatement or reduction in Rent payable hereunder, unless Fixed Rent and/or Additional Charges coming due under the Prime Lease that is attributable to the Subleased Premises is abated or reduced in respect thereof, in which case Subtenant shall be entitled to an appropriate abatement or reduction in Base Rent payable hereunder.

(e)     Provided Subtenant notifies Sublandlord not less than twenty-five (25) months prior to the end of the Term of Subtenant's desire to occupy the Subleased Premises, so long as the named Subtenant (including a successor entity or Related Entity) occupies not less than seventy-five percent (75%) of the Subleased Premises, and Subtenant is not in default beyond any applicable grace period after notice, Sublandlord shall not re-occupy the Subleased Premises and shall not take any action or exercise its renewal right with respect to the Subleased

Premises such that Subtenant would be precluded from being able to negotiate with Landlord to remain in the Subleased Premises beyond the Expiration Date.

(f)     On or before June 1, 2007, Subtenant will notify Sublandlord of the number of parking spaces in the Building garage that Subtenant shall rent beginning on June 1, 2007, at the monthly rate payable from time to time under the Parking Agreement (as defined in the Prime Lease), or under the Prime Lease, which rate is presently $500.00 per month, per space.

(g)     Subtenant, for its own use, may use the cafeteria currently operated by Sublandlord in the Building at no additional cost or mark-up, so long as such cafeteria remains open to employees of Sublandlord. Sublandlord is not obligated to continue operating a cafeteria in the Building.

(h)     Subject to approval of Landlord under the Prime Lease, Sublandlord shall cooperate with Subtenant in obtaining permission to place a directional name plate for Subtenant on the Sublandlord's lobby security desk, which nameplate Subtenant would like to be in the form of the nameplate illustrated on Exhibit F attached hereto. Sublandlord approves the form of nameplate illustrated on Exhibit F, use of which is subject to Landlord's approval as indicated above. If Sublandlord obtains permission for a directional name plate, Sublandlord will not seek permission for a larger directional name or other signage plate for a subtenant occupying less space than Subtenant.

(i)     Sublandlord shall provide cleaning as contemplated by Section 10.1(I) of the Prime Lease, subject to Sublandlord's right to discontinue cleaning the Leased Premises, in which event Landlord will be required to provide cleaning to the Subleased Premises as part of the Leased Premises and pursuant to the Prime Lease.

(j)     Sublandlord will provide, or arrange for, at no additional cost to Subtenant shaft for Tenant to run three (3) two inch (2″) conduits running from the telecom points of entry room in the Building to the Subleased Premises and one (1) two inch (2″) conduit from the Subleased Premises to the roof.

(k)     Subject to applicable provisions of the Prime Lease, including, without limitation, Article 6 thereof, Sublandlord will provide sufficient space on the roof of the Building for an antenna or satellite dish measuring no more than three (3) feet in diameter, in a location to be agreed to by Sublandlord and Subtenant in the area shown on Exhibit G annexed hereto and made a part hereof for a satellite dish or antenna and other equipment/infrastructure related thereto supporting Subtenant's operations.

(l)     It is expressly acknowledged and agreed that cleaning shall be provided pursuant to Section 10.1 of the Prime Lease and the Cleaning Specifications annexed to the Prime Lease as Exhibit M. Subtenant shall be solely responsible for any amounts incurred in connection with additional cleaning of the Subleased Premises, which are payable by Sublandlord to Landlord.

(m)     Sublandlord shall not exercise its right under the Prime Lease to modify elevator stops that would reduce elevator service to the Subleased Premises to less than the service to similar space in comparable Class A office buildings.

(n)     Sublandlord will arrange with Landlord that Subtenant will receive Subtenant's Proportionate Share of Sublandlord's lobby directory listings.

SECTION 14.  Environmental.  Except in accordance with the terms of the Prime Lease, Subtenant shall not use, generate, manufacturer, store or dispose of on or about the Subleased Premises or Building or cause or permit any Hazardous Materials to be brought upon, stored, manufactured, or used in violation of any Legal Requirement or the Prime Lease in or about the Subleased Premises or Building for any purpose.

SECTION 15.  Remedies, Right to Cure and Submission to Jurisdiction.  (a)  Sublandlord shall have the same rights and remedies with respect to a breach of this Sublease by Subtenant as Landlord has with respect to a breach of the Prime Lease, as if the same were more fully set forth at length herein, and Sublandlord shall have, with respect to Subtenant, this Sublease and the Subleased Premises, all of the rights, powers, privileges and immunities as are had by Landlord under the Prime Lease.

(b)     If Landlord, in writing, shall claim or otherwise allege that a use of, action or inaction involving, or other circumstances concerning, the Subleased Premises is in violation of any provision of or may become a default under the Prime Lease, in addition to Sublandlord's other rights hereunder and at law, Subtenant, promptly after written notice from Sublandlord, shall cease such use or action, take such action or cause such circumstance to be changed so that the basis for such claim shall no longer exist.

(c)     If Subtenant fails to fulfill any of its obligations under this Sublease including, but not limited to, its obligations to maintain and repair the Subleased Premises or the Building within a reasonable time period (considering the nature and type of repair or maintenance) then Sublandlord or Landlord may, at its option, fulfill such obligation on Subtenant's behalf and Subtenant shall within thirty (30) business days of demand (including supporting documentation) reimburse Sublandlord or Landlord (as the case may be) for the cost of such repair.  Subtenant shall also reimburse Sublandlord and/or Landlord upon demand for all expenditures, fines or damages sustained by Sublandlord and/or Landlord due to Subtenant's non-compliance with or non-performance or breach of any of the terms, covenants or conditions of this Sublease or of the Lease as incorporated herein.

(d)     Subtenant and Sublandlord irrevocably submit to the jurisdiction of any New York State or Federal court sitting in the City or State of New York over any suit, action or proceeding arising out of or relating to this Sublease.  Subtenant and Sublandlord hereby agree that either party shall have the option, in its sole discretion, to lay the venue of any such suit, action or proceeding, in the courts of the State of New York or the United States of America for the Southern District of New York.

SECTION 16.  Notices.  Any notice required or desired to be given to any party hereto shall be given in writing and by hand delivery (provided a signed receipt therefor has been

obtained), by Federal Express or other nationally recognized overnight courier for next Business Day delivery (in which case such notice shall be deemed given on the next Business Day after being deposited with the courier) or by certified mail, return receipt requested (in which case, such notice shall be deemed given on the date of receipt or refusal to accept delivery thereof and shall be addressed to the parties hereto at their addresses as set forth below or to such other address as any party may designate by written notice:

    (a)    If to Sublandlord:

    JPMorgan Chase Bank, National Association
    270 Park Avenue, 35th floor
    New York, New York  10017
    Attention:  Corporate Real Estate

    with a copy to:

    JPMorgan Chase Bank, National Association
    Legal Department
    270 Park Avenue, 39th Floor
    New York, New York 10017
    Attention:  Real Estate Counsel

    with a copy to:

    Jones Day
    222 East 41st Street
    New York, New York  10017
    Attention:   Andrew J. Green, Esq.
              and Robert J. Shansky, Esq.

    (b)    If to Subtenant:

    AIG Global Asset Management Holdings Corp.
    c/o American International Realty Corp.
    72 Wall Street - 16th floor
    New York, New York  10005
    Attention:  Rosemarie Sailer, Esq.
    Vice President and General Counsel
    Telephone:  (212) 770-7789

Either party may, by notice as aforesaid, designate a difference address or addresses for notices intended to it.

    SECTION 17. Integration; Successors and Assigns, etc.  This Sublease and the Exhibits attached hereto, and the Landlord Consent executed and delivered by each of the parties thereto, contain the entire agreement between the parties with respect to the use and occupancy of the Subleased Premises, and any agreement hereafter made shall be ineffective to change, modify or discharge it in whole or in part unless such agreement is in writing and signed by the party

against whom enforcement of the change, modification or discharge is sought. Neither Sublandlord nor Subtenant shall record this Sublease.

SECTION 18. Successors and Assigns. The covenants, conditions and agreements contained in this Sublease shall bind and inure to the benefit of Sublandlord and Subtenant and their respective successors and assigns.

SECTION 19. No Other Agreements. This Sublease (including the Prime Lease to the extent expressly incorporated herein) constitutes the entire agreement between the parties hereto and no earlier statements or prior written matter shall have any force or effect. Sublandlord and Subtenant each agree that neither is relying on any representations or agreements other than those contained in this Sublease. This Sublease shall not be modified or canceled or amended except by written instrument subscribed by both parties and consented to by Landlord if required pursuant to the terms of the Sublease.

SECTION 20. Execution of Sublease. This Sublease is submitted to Subtenant for signature with the understanding that it shall not bind Sublandlord or Subtenant unless and until it is duly executed by both Subtenant and Sublandlord and an executed copy of this Sublease is delivered to Subtenant.

SECTION 21. Broker. Subtenant represents and warrants that it has not hired, retained or dealt with any finder, consultant, broker, firm or salesman in connection with this Sublease other than CB Richard Ellis, Inc. (the "Broker"). Each party shall defend, indemnify and hold the other party harmless from and against any and all claims for brokerage fees or other commissions or fees which may at any time be asserted against the other party founded upon a claim that the aforesaid representation and warranty of such other party is untrue, together with any and all actual losses, damages, costs and expenses (including reasonable attorneys' fees and disbursements) relating to such claims or arising therefrom or incurred by the indemnified party in connection with the enforcement of this indemnification provision. Sublandlord shall pay Broker a commission in connection with this Sublease, pursuant to a separate agreement.

SECTION 22. Consents. Except as expressly provided to the contrary in this Sublease, in all provisions of the Prime Lease requiring the approval or consent of Landlord, Subtenant shall be required to obtain the approval or consent of both Landlord and Sublandlord. Sublandlord's refusal to consent to or approve any matter or thing, whenever Landlord's consent or approval is required under this Sublease or under the Prime Lease as incorporated herein (including, without limitation, the consent of Sublandlord required in connection with any alterations or improvements which may be proposed by Subtenant to prepare the Subleased Premises for Subtenant's occupancy) shall be deemed reasonable if Landlord has refused or failed to give its consent or approval to such matter or thing and is not deemed to have consented thereto under the terms of the Prime Lease. Sublandlord shall co-operate with obtaining any required consents of Landlord reasonably sought to be obtained by Subtenant, at no cost or expense to Sublandlord.

SECTION 23. Time Limits. The parties agree that the time limits set forth in the Prime Lease for the giving of notices, making demands, performance of any act, condition or covenant (including the making of payments), or the exercise of any right, remedy or option, are modified

for the purposes of this Sublease by lengthening or shortening the same in each instance by three (3) Business Days, as the case may be, so that notices may be given, demands made, any act, condition or covenant performed, and any right or remedy hereunder exercised, by Sublandlord or Subtenant, as the case may be, within the time limits relating thereto contained in the Prime Lease but in no event shall Subtenant have less than three (3) Business Days to make any payments or perform any non-monetary covenant. Subtenant and Sublandlord shall, not later than three (3) Business Days after receipt thereof, each furnish to the other a copy of each notice, demand or other written communication received from Landlord which relates to the Subleased Premises or any portion of the Building that would reasonably be expected to affect Subtenant.

SECTION 24. Governing Law. This Sublease shall be governed by and construed under the laws and the State of New York.

SECTION 25. Quiet Enjoyment. Sublandlord covenants that if, and so long as, Subtenant pays all of the Rent due hereunder, and keeps and performs each and every covenant, agreement, term, provision and condition herein contained on the part and on behalf of Subtenant to be kept and performed herein within all applicable notice and cure periods, Subtenant shall quietly enjoy the Subleased Premises without hindrance or molestation by Sublandlord or by any other person lawfully claiming the same, subject to the covenants, agreements, terms, provisions and conditions of this Sublease.

SECTION 26. Miscellaneous. (a) Sublandlord and Subtenant each represents and warrants to the other that the execution, delivery and performance by such party of this Sublease are within its powers, have been duly authorized by all necessary corporate or limited liability company actions and do not contravene such party's organizational documents.

(b) Submission of this Sublease for examination shall not bind Sublandlord in any manner nor be construed as an offer to sublease, and no agreement or obligations of Sublandlord or Subtenant shall arise until this Sublease is executed by both Sublandlord and Subtenant and delivery is completed.

(c) Sublandlord represents that (i) Subtenant has been provided with a true and complete redacted copy of the Prime Lease (with only provisions that do not affect Subtenant's obligations hereunder having been redacted); and (ii) to the best of Sublandlord's knowledge, without inquiry, the Prime Lease is in full force and effect.

(d) Each party represents to the other that it is authorized to enter into this Sublease and that this Sublease and the consummation of the transactions contemplated thereby, shall be valid and binding on it.

(e) Except as expressly provided herein, or pursuant to Articles 20 and 21 of the Prime Lease, or with Subtenant's prior written consent, Sublandlord agrees that it will not voluntarily terminate the Prime Lease, or modify or amend the Prime Lease so as to reduce Subtenant's rights, or increase its obligations hereunder, in either case, except to a *de minimus*, provided, however, that Sublandlord shall have the right to terminate or cause a termination of the Prime Lease without Subtenant's consent and without liability to Subtenant if as a condition to such termination Landlord agrees to recognize Subtenant as its direct tenant on all of the then

executory terms of this Sublease.  Subject to the foregoing, Sublandlord may, from time to time, modify or amend the Prime Lease without the consent of Subtenant.  Sublandlord shall promptly furnish Subtenant with a copy of any amendment to the Prime Lease.

(f)     Sublandlord represents that the Prime Lease is in full force and effect and Sublandlord will perform its obligations thereunder, except to the extent Sublandlord's default is caused by Subtenant's default hereunder.

SECTION 27.  <u>Expansion Option</u>.

(a)     Provided Subtenant (including a successor corporation or Related Entity) is occupying not less than seventy-five percent 75%) of the Subleased Premises and subject to the provisions of this Section 28, and no later than three (3) years and (six) months following the Initial Possessions Date ("Outside Exercise Date"), Subtenant will have the option (the "Expansion Option") to subsublease between 20,000 and 30,000 rentable square feet of space in a single block of space to be located on any floor between 18 and 50 of the Building (the "Expansion Space").

(b)     The following are conditions to the exercise of Subtenant's rights under this Section 28: (i) that at the time Subtenant exercises its option to sublease the Expansion Space, there shall be no default that remains uncured after the expiration of any applicable notice and/or cure period hereunder and (ii) this Expansion Option is exercised by notice from Subtenant to Sublandlord (the "Exercise Notice") given on or before the date which is twelve (12) months prior to the Outside Exercise Date.

(c)     If Subtenant timely exercises its Expansion Option, Sublandlord shall deliver the Expansion Space no earlier than four (4) years and six (6) months following the Initial Possession Date and no later than five (5) years and (6) months following the Initial Possession Date.  Sublandlord shall notify Subtenant of the location and size of the Expansion Space no later than six (6) months prior to delivery of the Expansion Space.

(d)     The Base Rent payable with respect to the Expansion Space shall be equal to one hundred percent (100%) of the Fair Market Rental Value (hereinafter defined) of the designated space prevailing six months prior to the commencement of the term with respect to the Expansion Space if the Expansion Space is located below the 39th floor of the Building.  If the Expansion Space is located on or above the 39th floor of the Building then the Base Rent shall be equal to the greater of the Building's Fair Market Rental Value or Subtenant's then escalated rent (plus a Sublandlord's Contribution and a free rent period equal to that granted in connection with the Initial Premises, pro-rated based on the then remaining Sublease Term relative to the initial Sublease Term, the parties agreeing that the Sublandlord's Contribution was $25.00 per rentable square foot and the free rent period is equal to seven (7) months).  Fair Market Rental Value shall be determined by taking into account all relevant factors.  Disputes will be resolved by baseball arbitration as per Article 45 of the Prime Lease.

(e)     If Subtenant does not exercise the option described in this Section 28, then Subtenant shall have no further right or option under this Section 28 with respect to the Expansion Space.

(f)     If Subtenant exercises the Expansion Option contained herein, the parties will execute a mutually agreeable letter confirming the date the Expansion Space is added to the Sub-subleased Premises. The refusal or failure of either party to sign such letter will not affect the inclusion of the Expansion Space to the Subleased Premises if Subtenant has properly and timely exercised the Expansion Option as provided in this Section 28.

(g)     This Expansion Option is personal to the named Subtenant (including a successor corporation or a Related Entity) and may not be exercised by any assignee or for the benefit of a sub-subtenant of Subtenant.

SECTION 28. Right of First Offer. (a) Provided Subtenant (including a successor corporation or a Related Entity) is occupying not less than seventy-five percent (75%) of the Subleased Premises and provided there exists no outstanding default by Subtenant beyond any applicable grace period after notice, subject to the terms and provisions of this Section 29 Subtenant shall have the first offer to sublease the first two floors currently part of the Leased Premises and located on floors 18-50 of the Building that Sublandlord determines to offer to Sublease to third parties (after the initial leasing of the 45th and 48th floors) (the "ROFO Space") for delivery at any time after the third anniversary of the Initial Possession Date.

(b)     Sublandlord shall provide Subtenant with no more than twelve (12) months prior written notice and no less than three (3) months prior written notice of the anticipated delivery date of the ROFO Space ("ROFO Availability Notice").

(c)   ·  Subtenant shall have thirty (30) days from receipt of the ROFO Availability Notice (the "ROFO Notice Period") to give Sublandlord notice that Subtenant will lease the ROFO Space that is proposed to be offered to third parties for sublease (the "Right of First Offer").

(d)     (a)     If Subtenant chooses to exercise the Right of First Offer, then after thirty (30) days from the date that Sublandlord receives notice from Subtenant that Subtenant has exercised the Right of First Offer within the ROFO Notice Period (without the necessity of additional documentation) the Sublease shall be deemed to be amended to include such ROFO Space as part of the Subleased Premises, and commencing ninety (90) days after the actual date such ROFO Space is available for occupancy by Subtenant, the Base Rent shall be increased by the product of the rentable square footage of such ROFO Space and the Fair Market Rental Value rate per square foot of Base Rent (as determined pursuant to Section 28 above) and Subtenant's Proportionate Share shall also be equitably increased to reflect such ROFO Space.

(e)     Within thirty (30) days after the request by either party, the Sublandlord and the Subtenant shall enter into a mutually agreeable written amendment of this Sublease confirming the location, configuration, rentable area and any other relevant provisions applicable to such ROFO Space. If (i) Subtenant fails to notify Sublandlord of Subtenant's intention to exercise the Right of First Offer within the ROFO Notice Period, or (ii) Subtenant notifies Sublandlord within the ROFO Notice Period that it elects not to exercise the Right of First Offer with respect to such ROFO Space, then Sublandlord shall have the right to enter into a Sublease for such ROFO Space with any third party and the Subtenant shall have no further right of first offer.

(f)     This first offer right is personal to the named Subtenant (including a successor corporation or a Related Entity) and may not be exercised by any assignee or for the benefit of a sub-subtenant of Subtenant.

*Remainder of Page Intentionally Left Blank.*
*Signature Page Follows.*

IN WITNESS WHEREOF, this Sublease has been duly executed the day and year first above written.

**SUBLANDLORD:**          **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION**

By: _____
    Name;
    Title:

**SUBTENANT:**          **AIG GLOBAL ASSET MANAGEMENT HOLDINGS CORP.**

By: _____
    Name: Win Neuger
    Title CEO

By: _____
    Name: Elizabeth M Tuck
    Title Secretary

NYI-3959522v11

EXHIBIT A

FLOOR PLAN OF SUBLEASED PREMISES

NYI-3959522v11













## EXHIBIT B

### DELIVERY CONDITION

1.      Each floor will be delivered in vacant, broom clean condition.

2.      Landlord will provide an ACP-5 for each floor.

3.      Sublandlord's furniture, fixtures and equipment listed on the attached Schedule 1 will be left in the Subleased Premises, as-is, where-is.  Notwithstanding the inclusion of this paragraph 3 in Exhibit B, this Delivery Condition will be deemed satisfied and not delay Rent Commencement despite the fact that item(s) of furniture, fixtures and equipment are not in the Subleased Premises. Sublandlord will replace any such missing item(s) with comparable or similar items within ten(10) days of Sublandlord's reciept of notice from Subtenant identifying any such missing item(s).

4.      All systems serving the Subleased Premises will be segregated from those serving the balance of the Leased Premises, other than chilled water.

5.      All wiring and cabling serving the Subleased Premises will be left in place in a manner that will enable Subtenant to reutilize such wiring and cabling.

6.      Sublandlord acknowledges that Subtenant intends to reutilize the existing fit-out and Sublandlord will vacate the Subleased Premises in a manner that will permit such reutilization.

## SCHEDULE 1

### INVENTORY OF FURNITURE AND FIXTURES

<u>Schedule 1</u>
<u>277 Park Avenue Inventory List for floors 41-46</u>

| Product Description | 41st Floor | 42nd Floor | 43rd floor | 44th floor | 45th floor | 46th floor |
|---|---|---|---|---|---|---|
| Single Offices | 13 | 28 | 19 | 24 | 18 | 9 |
| Single Offices with no hutch units | 2 | 2 | 1 | 0 | 1 | 1 |
| Double Offices with (2) hutches | 0 | 0 | 0 | 0 | 6 | 7 |
| Double Offices (L-Shape) | 0 | 0 | 2 | 0 | 0 | 2 |
| Cubicles | 89 | 45 | 67 | 66 | 66 | 52 |
| Two-High Metal 30" files | 3 | 4 | 4 | 4 | 0 | 4 |
| Two-High Metal 36" files | 1 | 0 | 0 | 4 | 3 | 0 |
| Two-High Wood 30" files | 18 | 28 | 18 | 24 | 24 | 15 |
| Two-High Wood 36" files | 1 | 1 | 1 | 1 | 0 | 0 |
| Three-High Wood 30" files | 12 | 0 | 9 | 23 | 0 | 0 |
| Three-High Wood 36" files | 2 | 0 | 1 | 0 | 0 | 0 |
| Five-High Metal 30" files | 16 | 6 | 22 | 3 | 8 | 7 |
| 30" Overhead Metal file unit | 12 | 6 | 20 | 3 | 8 | 7 |
| Five-High Metal 36" files | 13 | 8 | 22 | 12 | 11 | 6 |
| 36" Overhead Metal file unit | 13 | 8 | 21 | 12 | 11 | 6 |
| 30" Steel Shelving Units | 0 | 0 | 0 | 0 | 0 | 4 |
| 42" Steel Shelving Units | 0 | 0 | 0 | 0 | 0 | 2 |
| 30" x 60" White Table | 0 | 0 | 0 | 0 | 10 | 8 |
| Conference room with 48" table | 0 | 1 | 2 | 0 | 2 | 0 |
| Conference room with 4' x 10' table | 3 | 1 | 2 | 2 | 2 | 3 |
| Conference room with 42" x 84" table | 0 | 0 | 0 | 1 | 0 | 0 |
| Credenza for Conference room | 3 | 1 | 2 | 1 | 2 | 3 |
| Conference room with 48" x 90" conference table | 0 | 1 | 0 | 0 | 0 | 0 |
| Conference room with 42' table | 0 | 0 | 2 | 0 | 0 | 0 |

## EXHIBIT C

### EXCLUSIONS FROM INCORPORATED PROVISIONS

Without limiting the provisions of Section 6 of the Sublease, the following provisions of the Prime Lease are not incorporated into this Sublease:

1.     Any provisions requiring Landlord to deliver non-disturbance agreements from superior lessors or mortgagees, provided that Subtenant shall nevertheless be required to subordinate this sublease to any such superior lessors or mortgagees in the manner required by the Prime Lease and this Sublease.

2.     The provisions of the Prime Lease granting a right, option or benefit expressly to JPMC or a JPMC Affiliate.

3.     Any provision giving Tenant the right of self-help.

C-1

EXHIBIT D

INITIAL ALTERATION ALLOWANCE

CASH CONTRIBUTION BY SUBLANDLORD TO
SUBTENANT'S INITIAL ALTERATIONS

Subject to the terms and conditions hereinafter set forth, Sublandlord agrees to provide to Subtenant an allowance ("Sublandlord's Contribution") for construction costs incurred by Subtenant in preparing the Subleased Premises for Subtenant's initial occupancy (the "Initial Alterations"), in an aggregate maximum amount not to exceed $3,571,025.00 ($25.00 per rentable square foot), equal to the amount actually paid by Subtenant to its contractors, subcontractors, suppliers and vendors for work and materials incorporated into the Subleased Premises in connection with the Initial Alterations (for permanent leasehold improvements, computers and communications infrastructure, furniture, fixtures, relocation costs, design fees, engineering fees and for soft costs). Subtenant shall submit to Sublandlord the plans and specifications depicting the proposed Initial Alterations (which shall be in reasonable form and, in any event, in the form required by the Prime Lease) and which have been reviewed by Sublandlord and forwarded to Landlord for review in accordance with Section 9 hereof. Subtenant agrees that upon receiving Landlord's and Sublandlord's consent to such plans and specifications (as consented to, the "Approved Plans and Specifications"), Subtenant shall cause the Initial Alterations to be constructed pursuant to the Approved Plans and Specifications.

(i)     Sublandlord shall have the obligation to provide the Sublandlord's Contribution in installments as Subtenant's work progresses when the following conditions are satisfied:

(a)     at all times during Subtenant's construction period, Subtenant shall be in compliance with, and not in default under, beyond applicable notice and cure periods with respect to, applicable law and the provisions of the Prime Lease and/or this Sublease;

(b)     at all times during Subtenant's construction period, Subtenant shall have obtained, and shall maintain, all necessary and appropriate permits, licenses, authorizations and approvals from all governmental authorities having or asserting jurisdiction, and shall have delivered true copies thereof to Sublandlord, it being agreed that Sublandlord, at Subtenant's sole cost and expense, shall cooperate with Subtenant, in obtaining all signatures, information and other involvement of Landlord necessary to obtain such permits, licenses authorizations and approvals;

(c)     Subtenant shall have delivered to Sublandlord, for reasonable approval by Sublandlord, a completed requisition for advance (in form issued by the American Institute of Architects), certified and sworn to by Subtenant's architect (which certification shall be made expressly for the benefit of Sublandlord), to the effect that the value of the labor and materials in place equals the total amount of Sublandlord's Contribution to date plus the amount of the advance then being requested and that the work completed to date has been performed in a good and workmanlike manner, to the

D-1

satisfaction of Subtenant's architect, in all material respects in accordance with the Approved Plans and Specifications, the requirements of the Prime Lease (as incorporated in this Sublease) and this Sublease and in compliance with all laws, orders, rules and regulations of all federal, state, municipal and local governments, departments, commissions and boards, which certification shall be accompanied by Subtenant's general contractor's invoice(s) for work performed and covered by the requisition for advance for the payment being requested; and

(d)    Subtenant shall have delivered to Sublandlord conditional waivers of lien from all contractors, first tier subcontractors, vendors, suppliers and materialmen who shall have furnished materials or supplies or performed work or services covered by such requisition and full lien waivers for all previous work performed, completed and paid for.

(ii)    Within thirty (30) days after the date Subtenant shall have complied with all of the foregoing conditions that portion of the Sublandlord's Contribution covered by a particular requisition for advance shall be paid by Sublandlord to Subtenant; provided, however, that (I) Sublandlord shall not be required to make more than one payment during any calendar month and (II) any such payment shall be in an amount equal to the aggregate amounts theretofore paid or payable (as certified by Subtenant's architect) to Subtenant's contractors, subcontractors and materialmen which have not been the subject of a previous disbursement from Sublandlord's Contribution. In the event any mechanic's lien shall have been filed relating to any of the Initial Alterations, the amount thereof may be withheld from payment until such lien has been removed by bond or otherwise.

(iii)    Each payment by Sublandlord of portions of the Sublandlord's Contribution shall be in the amount properly requisitioned in accordance with the foregoing, less a retainage of ten percent (10%) of the amounts requisitioned. Upon the completion of the Initial Alterations and the taking of occupancy by Subtenant of the Subleased Premises for Subtenant's normal business operations, the final payment and any retainage held by Sublandlord shall be paid to Subtenant upon receipt of: (w) the certificate of Subtenant's architect stating that the Initial Alterations have been finally completed in all material respects in compliance with the Approved Plans and Specifications and in accordance with the provisions of the Prime Lease and this Sublease, (x) an affidavit from Subtenant's general contractor or construction manager stating that all subcontractors, laborers and material suppliers who supplied labor and/or materials for the Initial Alterations (whose names and addresses shall be recited in such affidavit) have been paid in full and that all liens therefor that have been, or might be, filed have been discharged or record or waived, (y) a complete final release and waiver of lien with respect to the Subleased Premises and the Building executed by Subtenant's general contractor or construction manager and all contractors, subcontractors or material suppliers and (z) Subtenant has delivered to Sublandlord and Landlord copies of the final, marked drawings and field notes for such Initial Alterations and any other documentation or instruments required by the Prime Lease.

(iv)    Subtenant shall not sell, transfer, assign, encumber or create a security interest in Sublandlord's Contribution.

D-2

# EXHIBIT E

## ROOF RIGHTS

NYI-3959522v11

EXHIBIT "I" (1 Page)



PLAN VIEW

277 PARK AVENUE

N

Dish/Antennas

ACCESS STAIRWAY

EXISTING TOWERS

JPMC PLATFORM and Tower

A/C UNIT

A/C UNIT

Fan System

COOLING TOWERS

WINDOW WASHING TRACK

EAST 47th STREET

Dish/Antennas

PARK AVENUE

Various Monopoles and Antennas around Railing

NOT TO SCALE

# EXHIBIT F

## DESKTOP SIGNAGE

NY1-3959522v11



**4.5" X 8" DESK TOP SIGN**

Full Scale

PHONE (718) 706-6400   FAX (718) 786-2863

DURA Architectural Signage Corp.

## EXHIBIT C

## SUBLEASED PREMISES

EXHIBIT C



EXHIBIT C