USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/25/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

    TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001

-----------------------------------------------------------------X

03-MD-01570 (GBD)(SN)

**REPORT &
RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge:**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:

    <u>Burnett et al., v. The Islamic Republic of Iran, et al.</u>, No. 15-cv-9903

On January 31, 2017, the Honorable George B. Daniels granted the Plaintiffs in <u>Burnett</u> an Order of Judgment by default against the Islamic Republic of Iran. ECF No. 3443.[1] Since then, the Court has issued recommendations on five motions seeking entries of partial default judgment for personal injuries suffered by the <u>Burnett</u> Plaintiffs in the September 11 Attacks. Sixteen additional Plaintiffs now bring the sixth such motion. ECF No. 7987. The Court recommends that the Plaintiffs' motion be granted in part as described in this Report and Recommendation.

## DISCUSSION

The Court assumes familiarity with the background of this case and discusses only those aspects relevant to this Report and Recommendation. Since Judge Daniels issued the default judgment against Iran in January 2017, ECF No. 3443, this Court has issued reports and recommendations in favor of granting five of the <u>Burnett</u> Plaintiffs' motions for personal injury damages, starting on February 7, 2020. ECF No. 5879 ("<u>Burnett I</u>"). <u>Burnett I</u> defined a

---

[1] Unless otherwise noted, all ECF citations are to the main MDL docket: 03-md-1570.

framework for assessing personal injury damage claims brought under 28 U.S.C. § 1605A. Id. at 2–10. This framework divides injuries into three categories with expected damages for each: the baseline "severe" injuries ($7,000,000), a "significant" injuries downward departure category ($5,000,000), and an upward departure "devastating" injuries category ($10,000,000). Id. at 6–10. For rare individuals with exceptionally traumatic injuries, the Court has recommended damages above $10 million. See, e.g., ECF No. 5909 at 12–13 (awarding damages of $25,000,000 where the plaintiff's injuries were "beyond devastating"). Conversely,"[t]he absence of medical records supporting and providing further information regarding an affiant's claims may support a downward departure in an award determination." ECF No. 5879, at 9.

The Court has used this framework to analyze five subsequent motions for personal injury damages made by the Burnett Plaintiffs: Burnett II, ECF No. 5888 at 2, Burnett III, ECF No. 5909 at 2, Burnett IV, ECF No. 5932 at 2, and Burnett V, ECF No. 7323 at 2. The Burnett I framework was also employed to assess a similar motion for default judgment made by the plaintiffs in Ashton et al. v. al Qaeda Islamic Army, et al., 02-cv-6977 (GBD)(SN). ECF No. 5914 at 2. Having reviewed Burnett I, the Court determines that it remains the proper framework for evaluating personal injury claims.

The current motion ("Burnett VI") seeks (1) compensatory damages for pain and suffering inflicted during the September 11, 2001 Terrorist Attacks, (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001, until the date of the judgment, (3) leave for these 16 Plaintiffs to seek punitive damages, economic damages, or other damages at a later date, and (4) leave for other Burnett personal injury plaintiffs to file applications for damages awards later if such awards have not been addressed already. See ECF No. 7993 at 25–26.

2

## I. <u>BURNETT VI</u> PERSONAL INJURY PLAINTIFFS

The Court analyzes each of these 16 Plaintiffs' claims for pain and suffering individually based on the framework laid out in <u>Burnett I</u>. All of these Plaintiffs were added to this action through an amended complaint. <u>Burnett</u>, No. 15-cv-09903, ECF No. 53.

**1. Douglas W. Anderson**

Douglas W. Anderson was a FDNY firefighter with Ladder 2. ECF No. 7989-2 at ¶ 3. He was not scheduled to be on duty the morning of the attacks but drove down to the firehouse to assist anyway. <u>Id.</u> at ¶ 4. On his way to help, he was stopped at the Battery Tunnel just moments before the South Tower of the World Trade Center Towers collapsed. <u>Id.</u> at ¶ 5. The collapse sent a huge cloud of dust through the Tunnel, which Mr. Anderson inhaled. <u>Id.</u> Despite this, he rendered first aid to as many other victims as possible before getting a ride into Manhattan with another group of firefighters. <u>Id.</u> at ¶ 6. He arrived just after the North Tower collapsed. Even though he had inhaled a large amount of toxic debris, he worked through midnight to assist the many victims in the area. <u>Id.</u> at ¶ 7.

As a result of the attack, Mr. Anderson suffered numerous respiratory ailments including an upper respiratory disease, obstructive airway disease, gastroesophageal reflex disease (GERD), chronic tracheitis and rhinosinusitis, obstructive sleep apnea, and a deviated septum. <u>Id.</u> at ¶ 8. His medical records confirm these injuries. ECF No. 7994-2 at 9–13, 17, 22, 41, 45. The Court finds these injuries are significant and accordingly recommends and an award of $5,000,000.

2. **Desiret Carvache**

On September 11, Desiret Carvache was working as a financial manager at Citigroup in Five World Trade Center. ECF No. 7989-3 at ¶ 3. When she heard that the North Tower had been struck, she decided to evacuate. Id. at ¶ 4. She tried to assist another woman escape as well but tripped and injured herself in the process. Id. at ¶ 5. The two finally made it outside but were hit by debris, and Ms. Carvache injured her back, neck, and side. Id. at ¶ 6. She was then knocked down by a blast of hot air as she tried to escape and inhaled a large amount of debris. Id. at ¶ 7. Overcome, she passed out and woke up in a New Jersey hospital, not knowing how she got there. Id. In all, she suffered left knee sprains, neck and back injuries, a hernia, and inhalation injuries, including asthma, an obstructive airway disease, and GERD. She was also diagnosed with PTSD. Id. at ¶ 8. She has supplied medical records confirming these injuries. ECF No. 7994-3 at 10–13, 23, 26, 27. These sprains and respiratory injuries are significant, so the Court recommends an award of $5,000,000.

3. **Jose M. Contes**[2]

Jose Contes was working as a groundskeeper when the terrorist attacked the World Trade Center. ECF No. 7989-4 at ¶ 3. When the North Tower was hit, he left his building and began to evacuate. He emerged just in time to see the second plane crash into the South Tower. Id. at ¶ 4. He tried to escape but was enveloped by a dust cloud, limiting his vision. Id. at ¶ 6. Unable to see, he slammed into a large concrete planter as he fled before finally making it to safety. Id. at ¶ 7. He suffered right shoulder derangement with a torn rotator cuff, right knee derangement with a torn ligament, and herniated disks. He underwent two surgeries in 2002 to address these injuries. Id. A review of his medical records confirms this account. ECF No. 7994-4 at 11. Accordingly,

---

[2] Mr. Contes is also referred by the last name Contes Rosado. ECF No. 9771-1.

the Court finds that these injuries, which required two surgeries to address, are severe. It recommends a $7,000,000 award.

4. **Enrique Cruz**

Enrique Cruz was working as an Elevator Starter for American Building Maintenance in the South Tower. ECF No. 7989-5 at ¶ 3. When he heard the explosions, he joined the mass of people fleeing the area. During this flight, he fell several times and was pushed or jostled in the fleeing crowd. Id. at ¶¶ 5–6. When the South Tower collapsed, he was enveloped in the cloud of dust and debris. Inhaling this toxic cloud caused him to begin vomiting. Id. at ¶ 6. He fell again but someone helped him up and he eventually made it to a hospital. Id. at ¶¶ 7–8. In all, he suffered injuries to his right knee, a back injury, injuries to his right foot, and inhalation injuries from the dust and debris he inhaled. He was also diagnosed with PSTD. Id. at ¶ 9. His medical records support these injuries. ECF No. 7994-5 at 8, 12, 15–17, 19, 24. The Court finds these injuries to be significant and recommends a $5,000,000 award.

5. **Juan Alberto Cruz-Santiago**[3]

Juan Alberto Cruz-Santiago was working in his office in the E-Ring of the Pentagon when the terrorists crashed the hijacked Flight 77 into the building. ECF No. 7989-6 at ¶¶ 3–5. The room quickly filled with jet fuel and fire. Id. at ¶ 5. He was trying to crawl to safety when he notices his right sleeve had caught on fire. Id. at ¶ 6. That was the last thing he remembered before passing out. Id. He awoke to emergency personnel airlifting him to a hospital. Id. at ¶ 7. For the next 88 days, he was hospitalized, first at Washington Hospital Center's Burn Intensive Care Unit and then at its Burn Rehabilitation Unit. For most of his stay, he was intubated and so unable to speak. His eyelids were stitched shut, all ten of his fingertips were amputated, and he

---

[3] Mr. Cruz-Santiago was substituted into this action through an order at ECF No. 7980.

had to endure a total of 30 surgeries. He lost the use of his right eye and has only partial vision in his left. Id. at ¶ 8. In total, he suffered third degree burns over seventy percent of his body. Id. at ¶ 9. This is corroborated by his medical records. ECF No. 7994-6 at 10–15. Mr. Cruz-Santiago has requested an upward departure from the damage award associated with the "devastating" category. This is appropriate given the severe and permanently disabling third degree burns that he suffered, along with the brutal and protracted recover period. Mr. Cruz-Santiago's wounds are comparable to the harms suffered by Elaine Duch, who similarly suffered massive burns over more than 70 percent of her body. See ECF No. 7323 at 12–13. The Court found that Ms. Duch merited a $15,000,000 award. Accordingly, it recommends that Mr. Cruz-Santiago be awarded the same amount.

6. Cynthia A. Delancey[4]

Cynthia Delancey was a billing processor for Empire Blue Cross/Blue Shield. ECF No. 7989-7 at ¶ 3. After the North Tower was hit, she and some coworkers were escorted out of the building and across the street from the South Tower. Id. at ¶¶ 4–5. There, she watched the second plane strike. She began to flee the area but was battered by the retreating crowd. Id. at ¶¶ 5–6. As the South Tower began to collapse, she took refuge under a parked car. Id. at ¶ 7. She inhaled a large amount of debris and dust caused by the collapse. Id. Eventually, emergency personnel found her and escorted her away from the area, but she had to make a 12-hour walk home to Queens. Id. at ¶ 9. During her ordeal, she suffered headaches and lower back pain, asthma, obstructive airway disease, and GERD. Id. at ¶ 10. She was also diagnosed with PTSD. Id. at ¶ 11. Her medical records confirm these injuries. ECF No. 7994-7 at 8–11. These injuries are significant, and the Court recommends a $5,000,000 award.

---

[4] Ms. Delancey previously went by the last name Warren. ECF No. 9771-1.

7. **Patricia A. Farrar**

Patricia Farrar had been assigned to work for Dunn & Bradstreet in the World Trade Center by her employer, a temp agency. ECF No. 7989-8 at ¶ 3. She was working in the North Tower when it was struck and evacuated along with many other people. Id. at ¶ 4. In the chaotic exodus she fell and received numerous cuts and bruises. Id. at ¶ 5. As she reached the outside, she saw Flight 175 strike the South Tower and watched people jump from the building. Id. at ¶ 6. She fled the area but was engulfed in the debris cloud from the collapsing buildings. Id. at ¶ 7. Eventually she managed to escape the area and made her way to a New Jersey hospital. Id. at ¶ 8. She reports suffering a respiratory airway disorder, asthma, back pain, numerous contusions, and GERD. Id. at ¶ 9. She also reports suffering from PTSD, panic attacks, and depression. Id. at ¶ 10. Ms. Farrar's records show evidence of injuries from the inhalation of smoke, anxiety, and panic attacks. ECF No. 7994-8 at 22, 26–27. These injuries are significant and the Court recommends an award of $5,000,000.

8. **Charles M. Freeman**

Charles Freeman worked as a janitorial worker and on the morning of the attack, he was cleaning the area around the Twin Towers. ECF No. 7989-9 at ¶¶ 3–4. He was outside when the first plane struck the North Tower and the area began to fill with falling debris. Id. at ¶ 5. Initially, he ran into the North Tower, but a massive explosion rattled the building and blew him outside, slamming him onto the concrete. In the blast, he injured his left knee, and his right thumb, wrist, and elbow. Id. at ¶ 6. Rescue workers found him and transported him away from the area for medical care. Id. at ¶ 7. In addition to his physical injuries, he also indicates that he suffered from bouts of anxiety and depression. Id. at ¶ 9. His medical records confirm the physical injuries. ECF No. 7994-9 at 8, 16, 18–20, but the Court has not been able to confirm the

depression or anxiety. Regardless, his physical injuries fall into the significant category. The Court thus recommends an award of $5,000,000.

### 9. Racquel K. Kelley

Racquel Kelley was working in the Pentagon on September 11—she was just 700 feet from the point of impact. ECF No. 7989-10 at ¶ 5. The force of the blast knocked her unconscious. When she awoke, her cloths were ablaze and her office was filled with smoke and fire. Id. at ¶ 6. She was partially buried by debris and could see virtually nothing. Her shoes were so burnt that they actually stuck to her feet. Id. at ¶¶ 7–8. Eventually, two co-workers dug her out and they tried to escape. As they did, they witnessed more horrors. One person had been decapitated while still holding a piece of burnt paper. Id. at ¶ 9. She made it outside but had inhaled so much dust and smoke that she stopped breathing and had to be resuscitated by emergency personnel. Id. at ¶ 10. All told, she suffered coin-sized second degree burns to her hands and feet, asthma, bibasal atelectasis (a partially collapsed lung), and an upper airway injury. She was also diagnosed with PTSD. Id. at ¶ 11. Her medical records reflect these injuries. ECF No. 7994-10 at 10, 12–14, 16, 22. The burns, however, appear to have been contained to a relatively limited area of her body, see, e.g., id. at 26, and it does not appear from these records that any of her injuries required surgery to address. Accordingly, the Court recommends that her injuries be classified as significant and be awarded $5,000,000.

### 10. Emanuel A. Lipscomb

Emanuel Lipscomb had arrived at a condo building across from the Twin Towers on the morning of September 11 to retrieve a business contract. ECF No. 7989-11 at ¶ 4. He watched both planes hit the towers, id., then joined a group of people helping others to escape from the area. Id. at ¶ 6. He kicked in a door to free a group of people and directed them and others to the river edge to escape. Id. Then the South Tower began to collapse and he took refuge in a hole in

a building. Id. at ¶ 7. Eventually he led a group of people out of a building and then into another, id. at ¶ 10, until a group of rescue workers found him and helped him to board a boat across the river. Id. at ¶ 11. His speech was slurred, and his doctor later told him that he had suffered a minor stroke. Id. He also suffered headaches, sinusitis, PTSD, anxiety, and depression. Id. at ¶ 12. His medical records confirm these injuries. ECF No. 7994-11 at 13, 15, 17, 20. As none of these issues appears to have required surgery or substantial hospitalization to address, the Court finds that these injuries are significant and recommends an award of $5,000,000.

    11. **David M. Moriarty**

David Moriarty was an FDNY firefighter with a Bronx engine company. ECF No. 7989-12 at ¶ 3. By the time his team arrived at Ground Zero, the South Tower had collapsed and he stated to make his way to the command post in the North Tower lobby. Id. at ¶ 5. Then, that tower began to collapse too. Mr. Moriarty and a rookie firefighter took cover under an ambulance as a black cloud of dust overtook them. He could not reach his oxygen mask and breathed in a large amount of dust, toxic fumes, and debris. Id. at ¶ 6. When the cloud lifted, he returned to rescuing people at the attack site. He only sought medical attention for himself later. Id. at ¶ 7. As a result, he suffered airway hyperactivity, nasal deviation, lung scarring, chronic rhinitis, asthma, chronic tracheitis, scarred lungs, and PTSD. Id. at ¶¶ 8–9. The Court has been able to verify the physical injuries but has not found any evidence for the PTSD or other mental health injuries. ECF No. 7994-12 at 8, 11, 15, 16. Regardless, his physical injuries are sufficient for the Court to find his injuries significant and recommend an award of $5,000,000.

    12. **Victor D. Panzella**

Victor Panzella was the Chief of Ambulance Services at Staten Island's St. Vincent Medical Center. ECF No. 7989-13 at ¶ 3. When the terrorists stuck, he and his team traveled to the attack site. The South Tower had already collapsed by the time he arrived, and he was

present for the North Tower's fall. Id. at ¶ 4. When 7 World Trade Center collapsed, he began trying to escape the area but injured his knee. He was then engulfed in a debris cloud. Despite this, he returned to aid others until late in the evening. Id. at ¶¶ 5–6. As a result of the attacks, he suffered an injury to the cartilage of his left knee that eventually required surgery to correct. He also suffered COPD and asthma, id. at ¶ 7, as well as PTSD, and depressive and anxiety disorders. Id. at ¶ 8. His medical records confirm the respiratory and psychological injuries, and indicate that he had a relatively non-invasive arthroscopic surgery for a torn meniscus. ECF No. 7994-13 at 17, 20, 23, 25, 28, 33, 37. These respiratory issues, knee injury, and the psychological injuries, are significant injuries for which the Court recommends an award of $5,000,000.

13. **Wilston L. Parris**

Wilston Parris was a server in the Greenhouse Restaurant at Three World Trade Center. ECF No. 7989-14 at ¶ 3. When the North Tower was struck, debris crashed through the glass ceiling of the restaurant, killing two people near Mr. Parris. Id. at ¶ 4. More debris fell and struck him. Id. at ¶ 5. As he fled, he saw a dead body still strapped into an airline seat. Id. at ¶ 6. He started to flee the area, but as he did, the second plane crashed into the South Tower. As it began to collapse, he was enveloped in a large cloud of dust and debris. Id. at ¶ 7. He continued to crawl through the debris cloud until he was found by a security guard. Id. at ¶ 8. Another survivor then helped him away and a police officer took him to New York University Hospital for treatment. Id. at ¶ 9. In all, he suffered injuries to his right knee, neck, and back, chronic rhinitis, asthma, obstructive airway disease, GERD, and PTSD. Id. at ¶ 10. These injuries are confirmed by his medical records, ECF No. 7994-14 at 12–14, 18, 20, 23–24, 28, 36, 58. It does not appear that any of these injuries required surgery or other invasive interventions to resolve.

Accordingly the Court finds that Mr. Parris's injuries are significant and recommends a $5,000,000.[5]

### 14. Filomena Roman

Filomena Roman worked at the Center for Employment Opportunities, which had offices near the World Trade Center. ECF No. 7989-15 at ¶¶ 3–4. When the South Tower collapsed, the NYPD evacuated her building. The surrounding area was thick with dust making it hard to see, and she inhaled a large volume of these particles as she escaped. Id. at ¶ 4. She also slipped on something and heard a snap in her left foot. Despite this, she pressed on towards the Brooklyn Bridge and eventually made it to Queens where she received medical treatment. Id. at ¶¶ 6–7. She reports a fractured left foot, spine pain, asthma, reactive airway disease, Reflex Sympathetic Dystrophy, spine pain, GERD, and PTSD. Id. at ¶¶ 7–8. Her medical records confirm these injuries. ECF No. 7994-15 at 22, 27–28, 35, 38–40. She requests her injuries be classified as significant, ECF No. 7993 at 22, and the Court agrees with this assessment. It accordingly recommends an award of $5,000,000.

---

[5] Mr. Parris also reports being diagnosed with prostate cancer. ECF No. 7989-14 at ¶ 10. The treatment of cancers in personal injury defaults remains a challenging issue in this case and parties have raised the question of whether cancer injuries can be evaluated using the same framework as has been developed for other plaintiffs. See, e.g., ECF Nos. 5484, 5704. The Court acknowledges these issues and Mr. Parris's cancer but need not resolve the question here. Even if it were to credit Mr. Parris's prostate cancer as being attributable to the attacks, the Court finds, on the specific facts presented here, that his injuries would merit the award associated with significant injuries regardless.

15. Robert "Bobby" Senn

Robert Senn was a FDNY firefighter who responded to the attacks on September 11. ECF No. 7989-16 at ¶¶ 3–4. He arrived before the Towers collapsed and began to make his way towards the North Tower. Id. at ¶ 4. As he did so, he saw people jumping from the towers and bodies began crashing into their firetrucks and landing all around them. Id. at ¶ 5. He made his way into the North Tower lobby but when the South Tower collapsed, the windows and doors of the lobby exploded inward. He was thrown into a wall, knocked unconscious, and buried under a pile of debris. Id. at ¶ 6. He went in and out of consciousness, breathing in the cloud of debris, until he was finally able to dig himself out and crawl out of the building. Id. at ¶¶ 7–9. Then the North Tower collapsed and he was buried under a new pile of debris. He climbed out and someone pulled him into a building. Id. at ¶ 10. He tried to return to assisting people and made his way back to the attack site, but given his injuries, had to be evacuated for medical treatment. Id. at ¶ 11. In all, Mr. Senn suffered a fracture of the right hand, a right shoulder injury requiring surgery to correct, sinus injuries requiring multiple sinus surgeries to correct, asthma, chronic rhinosinusitis, and GERD. Id.  These injuries are confirmed by his medical records. ECF No. 7994-16 at 9–11, 12, 39–40. Mr. Senn's injuries, which involved numerous corrective surgeries, are severe and the Court recommends a $7,000,000 award.

16. Christopher L. Young

Christopher Young worked for the Traffic Division of the NYPD. ECF No. 7989-17 at ¶ 3. When the Towers were attacked, he was directed to the area to assist with the evacuation. Id. at ¶ 4. The North Tower had been struck by the time he got there, but he arrived in time to see the South Tower attacked and he witnessed the chaos as people jumped from the buildings to their death. Id. at 5–6. When the North Tower collapsed, he was hit by flying debris and inhaled a large amount of smoke. Id. at 7–8. A fellow officer lifted him up and helped him escape. Id. at

¶ 9. Because of the attacks, he suffered asthma, bronchitis, lacerations to his eyes, a leg injury, peripheral neuropathy, GERD, depression, and PTSD. Id. at ¶ 10. His medical records confirm these injuries, ECF No. 7994-17 at 9, 21–22, 27, 31, 46, which the Court finds to be significant. Accordingly, it recommends a $5,000,000 award.

## CONCLUSION

The Court recommends granting pain and suffering damages as set out in Table 1

| Table 1: Plaintiff Damages | |
|---|---|
| **Plaintiff** | **Pain and Suffering Damages** |
| Douglas W. Anderson | $5,000,000 |
| Desiret Carvache | $5,000,000 |
| Jose M. Contes | $7,000,000 |
| Enrique Cruz | $5,000,000 |
| Juan Alberto Cruz-Santiago | $15,000,000 |
| Cynthia A. Delancey | $5,000,000 |
| Patricia A. Farrar | $5,000,000 |
| Charles M. Freeman | $5,000,000 |
| Raquel K. Kelley | $5,000,000 |
| Emanuel A. Lipscomb | $5,000,000 |
| David M. Moriarty | $5,000,000 |
| Victor D. Panzella | $5,000,000 |
| Wilston L. Parris | $5,000,000 |
| Filomena Roman | $5,000,000 |
| Robert Senn | $7,000,000 |
| Christopher L. Young | $5,000,000 |

These Plaintiffs should also be awarded prejudgment interest on these damages from September 11, 2001, to the date of judgment, at a rate of 4.96 percent per annum, compounded annually. ECF No. 3358, adopted by, ECF No. 3383.

Plaintiffs may apply for punitive, economic, and other damages at a later date and in a manner consistent with any applicable future Court rulings on the issue. Additionally, any Burnett personal injury plaintiffs not appearing in this motion who were not previously awarded damages may still submit applications for damages awards in later stages. In light of the August

1, 2022 deadline to file with the United States Victims of State Sponsored Terrorism Fund, parties are encouraged to notify the Court as soon as possible if any objections will be filed. Upon resolution of this motion, the Court should terminate the motion at ECF No. 7987, and the related motion in Burnett, No. 15-cv-9903, ECF No. 583.

Dated: July 25, 2022
New York, New York

_____
SARAH NETBURN
United States Magistrate Judge

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). These objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).