```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

    TERRORIST ATTACKS ON                             03-MD-01570 (GBD)(SN)
    SEPTEMBER 11, 2001
                                                     REPORT &
                                                     RECOMMENDATION
-----------------------------------------------------------------X
```

**SARAH NETBURN, United States Magistrate Judge:**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:

    Ashton et al., v. al Qaeda Islamic Army, et al., No. 02-cv-6977

    Two plaintiffs in Ashton et al., v. al Qaeda Islamic Army, et al., No. 02-cv-6977, seek a partial default judgment for personal injuries suffered in the September 11 Attacks. ECF No. 8225. The Court recommends that the Plaintiffs' motion be granted in part as described in this Report and Recommendation.

## DISCUSSION

The Court assumes familiarity with the background of this case and discusses only those aspects relevant to this Report and Recommendation. Both Plaintiffs were added to Ashton by the filing of the sixth amended complaint in that case. ECF No. 1463.[1] A default judgment as to liability was granted in these Plaintiffs' favor and against the Islamic Republic of Iran. ECF No. 3021. The only outstanding question is their damages.

The Court first addressed the question of personal injury damages in response to a motion brought by the plaintiffs in Burnett et al., v. The Islamic Republic of Iran, et al., No. 15-cv-9903.

---

[1] John F. Jermyn passed in 2019. His son, John F. Jermyn, Jr., was substituted into the case as the personal representative of his estate. ECF No. 8263.

That Report and Recommendation, Burnett I, ECF No. 5879, defined a framework for assessing personal injury damage claims brought under 28 U.S.C. § 1605A. Id. at 2–10. This framework divides injuries into three categories with expected damages for each: the baseline "severe" injuries ($7,000,000), a "significant" injuries downward departure category ($5,000,000), and an upward departure "devastating" injuries category ($10,000,000). Id. at 6–10. For rare individuals with exceptionally traumatic injuries, the Court has recommended damages above $10 million. See, e.g., ECF No. 5909 at 12–13 (awarding damages of $25,000,000 where the plaintiff's injuries were "beyond devastating"). Conversely,"[t]he absence of medical records supporting and providing further information regarding an affiant's claims may support a downward departure in an award determination." ECF No. 5879 at 9.

The Court has used this framework to analyze five subsequent motions for personal injury damages made by the Burnett Plaintiffs: Burnett II, ECF No. 5888 at 2, Burnett III, ECF No. 5909 at 2, Burnett IV, ECF No. 5932 at 2, and Burnett V, ECF No. 7323 at 2. The Burnett I framework was also employed to assess a similar motion for default judgment made by a prior group of Ashton plaintiffs. ECF No. 5914 at 2. Having reviewed Burnett I, the Court determines that it remains the proper framework for evaluating personal injury claims.

The current motion ("Ashton II") seeks (1) compensatory damages for pain and suffering inflicted during the September 11, 2001 Terrorist Attacks, (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001, until the date of the judgment, (3) leave for these two Plaintiffs to seek punitive damages, economic damages, or other damages at a later date, and (4) leave for other Ashton personal injury plaintiffs to file applications for damages awards later if such awards have not been addressed already. See ECF No. 8225 at 15–16.

I. <u>ASHTON II</u> PERSONAL INJURY PLAINTIFFS

The Court analyzes both Plaintiffs' claims for pain and suffering individually based on the <u>Burnett I</u> framework.

**1. Timothy "Tim" Frolich**

Timothy Frolich worked at Fuji Corporate Bank on the 80th floor of the South Tower. ECF No. 8226-2 at ¶¶ 3–4. Though he heard the sound of the first plane hitting the North Tower, the Port Authority informed them that the situation was controlled and that everyone should return to their desks. Id. at ¶¶ 4–5. Despite this, Mr. Frolich and his fellow volunteer fire wardens decided to tell everyone to evacuate and began looking for people who remained behind. Id. at ¶¶ 6–7. They began descending by a stairwell but when he reached the 70th floor and paused to rest he heard an explosion and was thrown across the room. He later learned he was only eight stories below the impact point of the second hijacked flight. Id. at ¶¶ 8–9. Before he continued trying to flee, he saw an older man on his floor stare out of shattered window, then jump to his death. Id. at ¶ 10. He continued down the stairs, pulling a woman named Tiffany with him. She had insisted that she could not make it down the stairs but he refused to leave without her. Id. at ¶ 11. He managed to safely exit the building and stopped about 150 yards away. Then he heard the South Tower start to rumble. He tried to flee but was consumed by the debris cloud, where he stood motionless, waiting to die. Id. at ¶ 12. Someone pulled him to safety but he injured his foot in the process. Id. at ¶ 13. He was rushed to a hospital for medical treatment but initially informed that he only had a sprain. This proved not to be the case—he was rushed back to the hospital the next day for emergency surgery. Id. at ¶¶ 16, 17.

In all, Mr. Froelich suffered multiple fractures in his left foot and developed Reflex Sympathetic Dystrophy, a condition causing chronic pain. Id. at ¶¶ 17, 21. He has also been diagnosed with posttraumatic stress disorder (PTSD), anxiety, and depression. Id. at ¶ 23. The

Court's review of his medical records has confirmed these injuries. ECF No. 8226-3 at 2, 5–6, 8. This injury is the kind of "severe orthopedic trauma requiring significant or multiple surgeries and/or causing severe constant pain or debilitation . . . [and] mental health trauma and disorders" that <u>Burnett I</u> classifies as severe. ECF No. 5879 at 7. The Court therefore recommends an award of $7,000,000.

**2.  John F. Jermyn**

John F. Jermyn[2] was an FDNY firefighter working on light duty at the New York City Fire Museum ECF No. 8226-4 at ¶ 5. He had sustained a work-related back injury in 1997 but when he heard about the attack, he made his way to the World Trade Center to assist his former fire company. <u>Id.</u> They arrived and were just about to enter the South Tower when it collapsed. Mr. Jermyn was pelted with debris and sustained serious hearing damage from the sound of the tower collapsing. He tried to extract himself from the debris, twisting his knees and back in the process. <u>Id.</u> at ¶ 6. He tried to continue to assist his colleagues but eventually fell to the ground in extreme paid. <u>Id.</u> at ¶ 7. It was later revealed that he had a herniated disc, and degenerative disc desiccation, causing him chronic pain. <u>Id.</u> at ¶ 12. He never received a psychological diagnosis but his son believes that he likely suffered PTSD, depression, and anxiety for the rest of his life. <u>Id.</u> at ¶ 14. The Court has reviewed Mr. Jermyn's medical records which confirm the back injury, <u>id.</u>at 15–16, but which suggest a positive recovery prognosis by November 2001. <u>Id.</u> at 13. The Court has not been able to substantiate the long-term pain, hearing damages, or the psychological injuries with the medical records supplied.

---

[2] Mr. Jermyn passed away in 2019. His son, John F. Jermyn, Jr., submitted a declaration attesting to his father's experiences and authenticating his medical records. ECF No. 8226-4 at ¶¶ 1–2.

While the Court has awarded damages associated with the severe injury classification for back injuries, those awards have typically been made on a showing that the back injury required surgical intervention to address, see, e.g., ECF No. 5879 at 19 (severe damages award for back injury requiring surgery), or other injuries alongside the back injuries, id. at 16 (herniated discs along with brain and nerve injury from being trampled). In the absence of these injuries, the Court recommends an award of $5,000,000, the amount associated with significant injuries.

## CONCLUSION

The Court recommends granting pain and suffering damages as set out in Table 1.

| Table 1: Plaintiff Damages | |
|---|---|
| **Plaintiff** | **Pain and Suffering Damages** |
| Timothy Frolich | $7,000,000 |
| John F. Jermyn | $5,000,000 |

These plaintiffs should also be awarded prejudgment interest on these damages from September 11, 2001, to the date of judgment, at a rate of 4.96 percent per annum, compounded annually. ECF No. 3358, adopted by, ECF No. 3383.

Plaintiffs may apply for punitive, economic, and other damages at a later date and in a manner consistent with any applicable future Court rulings on the issue. Additionally, any Burnett personal injury plaintiffs not appearing in this motion who were not previously awarded damages may still submit applications for damages awards in later stages.

In light of the August 1, 2022 deadline to file with the United States Victims of State Sponsored Terrorism Fund, parties are encouraged to notify the Court as soon as possible if any objections will be filed. Upon resolution of this motion, the Court should terminate the motion at ECF No. 8225, and the related motion in Ashton, No. 02-cv-6977, ECF No. 1673.

Dated: July 26, 2022
New York, New York

SARAH NETBURN
United States Magistrate Judge

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). These objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).