UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army*, et al., 02-cv-6977 (GBD)(SN) (and member case *Burlingame v. Bin Laden, et al.,* 02-cv-7230 (GBD)(SN))

### *Burlingame* Plaintiffs' Motion for Final Judgments
### Against the Taliban and Muhammad Omar

For the reasons set forth below, the statements contained in the declaration of Frank H. Granito, III, Esq. ("Granito Declaration") and the record in this case, those plaintiffs in the above-captioned *Burlingame* matter, a subset of the *Ashton* plaintiffs, who are represented by Speiser Krause, PC, and are listed in the exhibits to the Granito Declaration ("*Burlingame* Plaintiffs") respectfully move for an Order for final judgments for their losses and injuries arising out of the injuries and deaths of those individuals listed in the exhibits, all of whom were murdered or seriously injured in the September 11, 2001 Terrorist Attacks. They previously obtained a default liability judgment against, among others, the Taliban and the founder and former leader of the Islamic Emirate of Afghanistan Emir Muhammad Omar (hereinafter the "*Taliban* and *Omar* Defendants") and now move for damages. They seek an Order:

1. Awarding each estate of the individuals killed in the September 11 Terrorist Attacks listed in Exhibits A-1 and A-2 to the Granito Declaration (the "*Burlingame* 9/11 Decedents") damages for conscious pain and suffering against the *Taliban* and *Omar* Defendants in the amount of $2,000,000 per decedent, which is the same amount this Court previously awarded to them;

2. Awarding each estate of the *Burlingame* 9/11 Decedents listed in Exhibits A-1 and A-2 to the Granito Declaration damages for economic loss against the *Taliban* and *Omar* Defendants based on the same amounts that this Court awarded to those estates;

3. Awarding the victims listed on Exhibit A-1, the *Burlingame* personal injury Plaintiffs, persons who suffered severe and permanent physical injuries at the World Trade Center or Pentagon on the day of September 11, 2001 and survived, damages for pain and suffering in the same amounts that this Court has previously awarded to those individuals;

4. Awarding each of the immediate family members of the *Burlingame* 9/11 Decedents listed in Exhibits B-1 and B-2 (who are each named individually in the complaints underlying the relevant default judgment) solatium damages in the same amounts that this Court has previously awarded to those immediate family members;

5. Awarding those *Burlingame* Plaintiffs identified on Exhibits A-1 and B-1 who have asserted claims under the Anti-Terrorism Act, 18 U.S.C. § 2333, treble damages;

6. Awarding these plaintiffs pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

7. Granting the *Burlingame* Plaintiffs permission to seek punitive damages, economic damages, to the extent not sought herein, and other appropriate damages at a later date; and

8. Granting permission for all other plaintiffs in this action not appearing on the exhibits to the Granito Declaration to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

As the awards set forth in the proposed order represent the only direct recovery for the damages claimed herein by these *Burlingame* Plaintiffs against the *Taliban* and *Omar* Defendants,

the proposed order would constitute final awards and judgments against the *Taliban* and *Omar* Defendants for the *Burlingame* Plaintiffs.

I. **Procedural Background**

On September 10, 2002, the *Burlingame* Plaintiffs filed their first complaint against the alleged sponsors of the September 11, 2001 terrorist attacks, which included claims against defendants al Qaeda Islamic Army, the Taliban, and Muhammad Omar, among others. See 02-cv-7230 (S.D.N.Y.) ECF 1. The *Burlingame* (02-cv-7230) and *Ashton* (02-cv-6977) matters were Ordered consolidated for liability purposes and mandated to proceed under the Ashton, et al. v. al Qaeda Islamic Army, et al. (hereinafter "*Ashton*") master docket number 02-cv-6977, with the filing of a consolidated master complaint, and attorney James Kreindler was appointed Liaison Counsel for the consolidated actions within the Ashton master complaint. See 02-cv-6977, Doc. No. 5, Entered 11/19/2002. The *Burlingame* plaintiffs remain segregated within all consolidated *Ashton* filings and are identified therein according to their separate docket number and counsel. See, e.g., 02-cv-6977, Doc. No. 465, filed 03/30/2005. The master complaint was amended several times. See, e.g., 02-cv-6977 (S.D.N.Y.) ECF 2, 11, 32, 38, 111, 465[1]

In their complaints, the *Ashton* Plaintiffs (including the *Burlingame* plaintiffs listed on Exhibits (A-1, A-2, B-1, B-2), both United States nationals and non-nationals, asserted federal jurisdiction against the *Taliban* and *Omar* Defendants pursuant to, among other provisions, the Alien Tort Statute (28 U.S.C. § 1350) ("ATS"), the Foreign Sovereign Immunities Act (28 U.S.C. §§ 1605(a)(5) and (a)(7)) ("FSIA") and the Torture Victim Protection Act (28 U.S.C. § 1350 note) ("TVPA"), and made claims for damages against those defendants under those provisions as well

---

[1] References to MDL docket entries found at 03-md-1570 (S.D.N.Y.) are noted only by ECF number; references to individual civil case docket entries are preceded by the case number.

as under the Anti-Terrorism Act (Anti-Terrorism Act (18 U.S.C. § 2333) ("ATA") and state law for the deaths, injuries and losses suffered in the September 11th Terrorist Attacks. *Ashton v. al Qaeda et al.*, 02-cv-6977, ECF 465 at ¶¶ 2-3, 10-12, 464-466, 469-70, 473-74, 477-78, 481-82, 486-89.

The causes of action asserted against the *Taliban* and *Omar* Defendants, among others, were based on state law (Counts One through Three), the Anti-Terrorism Act, 18 U.S.C. § 2333 ("ATA") (Count Four) and the Torture Victim Protection Act (Count Five). *See, e.g.* 02-cv-6977, ECF 465 at ¶¶ 464-466, 469-70, 473-74, 477-78, 481-82, 486-89. Under the Anti-Terrorism Act, only a plaintiff who is a "national of the United States injured … by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue … and shall recover threefold the damages he or she sustains … ." 18 U.S.C. § 2333(a).

Included in these counts were claims for wrongful death damages (economic loss and pain and suffering, among other things), personal injuries (both physical and mental), and solatium losses (along with loss of consortium, loss of support, loss of society and companionship, loss of parental care and guidance, and more). *Id.*

This Court issued an order authorizing service of process by publication on certain defendants, including the *Taliban* and *Omar* Defendants. ECF 445 at 1, 8, 11. The *Ashton* Plaintiffs (including the *Burlingame* plaintiffs listed on Exhibits A-1 and A-2), and others, served the *Taliban* and *Omar* Defendants by publication with verification of publication filed on March 16, 2005 and March 31, 2005. ECF 709, 735; Granito Decl. at ¶ 5.[2] The *Taliban* and *Omar*

---

[2] The publication notices directed the named defendants to the MDL docket and advised them in both English and Arabic that they were required to answer the complaints on that docket, which sought, among other things, compensatory, treble and punitive damages, within 60 days. ECF 709 at 2; 735 at 2. The jurisdictional and factual allegations against the *Taliban* and *Omar* Defendants as set forth in the operative complaint at the time of service did not change in subsequent amendments. *Compare* 02-cv-6977 (S.D.N.Y.) (*Ashton* Consolidated Master Complaint, Filed

Defendants never answered and the *Ashton* Plaintiffs (including the *Burlingame* plaintiffs listed on Exhibits A-1 and A-2) thereafter moved for a Certificate of Default and a default judgment, which this Court granted on May 12, 2006. ECF 1782 *et seq.*, 1797 (referring to the defendants listed in Exhibit B to the *Ashton* Plaintiffs motion, including the *Taliban* and *Omar* Defendants); Granito Decl. at ¶ 5 and Exhibits C and D (listing the plaintiffs and defendants for and against whom, respectively, a default liability judgment was sought). This Court entered a default liability judgment on May 12, 2006, stating that it applied to all claims, plaintiffs and defendants up to and through the Sixth Amended Complaint. ECF 1797.

Previously, in connection with their claims against the Islamic Republic of Iran ("Iran"), another defendant in the complaints naming the *Taliban* and *Omar* Defendants, this Court granted the *Ashton* Plaintiffs (including the *Burlingame* plaintiffs listed on Exhibits A-1 and A-2) a default liability judgment. ECF 3021.  Thereafter, in connection with the damages assertions set forth in the *Ashton* complaints, in a series of orders this Court issued final damages judgments against Iran, granting the *Burlingame* Plaintiffs' motions for:

- Compensatory damages for the conscious pain and suffering of the *Ashton* and *Burlingame* 9/11 Decedents (*e.g.*, ECF 3226, 3229);

- Economic damages for the estates of the *Burlingame* 9/11 Decedents (*e.g.,* ECF 5857), which damages claims were supported by the expert analysis, reports or other economic loss calculations that the *Burlingame* Plaintiffs previously filed with this Court. (*See, e.g.,* ECF 5486-2);

- Compensatory damages for the pain and suffering of the *Burlingame* personal injury Plaintiffs who suffered severe and permanent physical injuries at the World Trade Center or Pentagon on September 11th (e.g., ECF 5954; 5971); and

---

03/06/2003), ECF 11 at ¶¶ 2, 10-12, 112-14, 178-79, 600, 602-03, 605-06, 608-09, 610-12, 615-19 *with* 02-cv-6977 (S.D.N.Y.) (Sixth Amended Complaint, Filed 09/03/2005) ECF 465 at ¶¶ 2, 10-12, 78-79, 123-25, 464-66, 469-70, 473-74, 477-78, 481-82.

- Solatium damages for the immediate family members (and their functional equivalents) of the *Burlingame* 9/11 Decedents (*e.g.* ECF 3987, 4087, 4156, 4707, 5058, 5453, 5974).

The *Burlingame* Plaintiffs listed in the Exhibits to the Granito Declaration now move this Court to grant the proposed Order awarding them damages for, as noted on those exhibits, conscious pain and suffering, economic loss and solatium losses arising out of the deaths of those individuals killed in the September 11 Terrorist Attacks in the same amounts as awarded previously to them. Granito Decl. at ¶¶ 10-16.  They also seek treble damages under the Anti-Terrorism Act for United States nationals whose claim for such damages this Court has jurisdiction to consider (*see* 18 U.S.C. § 2333(a) and Granito Declaration Exhibits A-1 and B-1) and directing that pre-judgment interest be assessed at 4.96 percent per annum.

The *Burlingame* Plaintiffs are set forth in the exhibits as follows:

- Exhibits A-1 (U.S. nationals) and A-2 (non-U.S. nationals or nationality unconfirmed), asserting damages claims for the estates of those individuals killed in the Sept. 11 Terrorist Attacks;

- Exhibit A-1 (U.S. nationals), asserting damage claims for the severe and permanent physical and emotional injuries suffered by those individuals in the Sept. 11 Terrorist Attacks; and

- Exhibits B-1 (U.S. nationals) and B-2 (non-U.S. nationals or nationality unconfirmed), asserting claims for solatium damages of those immediate family members listed in the Sixth Amended Complaint (or earlier), which was the operative pleading at the time this Court issued a liability judgment against the *Taliban* and *Omar* Defendants.

The *Burlingame* Plaintiffs also ask for permission to continue to submit applications in subsequent stages on behalf of those claimants not included in the attached exhibits, should any other applications be warranted.

II.     **Damages**

The *Ashton* Plaintiffs (including the *Burlingame* plaintiffs listed on Exhibits A-1 and A-2) claimed jurisdiction and damages, as relevant here, pursuant to the ATA's civil damages provision,

the TVPA, the FSIA and state law. *See, e.g.,* 02-cv-6977 (S.D.N.Y.), ECF 465 at ¶¶ 463-90. They sought treble damages under the ATA, which applies to claims brought by United States nationals. 02-cv-6977 (S.D.N.Y.), ECF 465 at ¶ 479, 242.

According to the caselaw governing terrorism litigation, the "those who survived the attack can recover damages for their pain and suffering, as well as any other economic losses caused by their injuries; estates of those who did not survive can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." *Valore v. Islamic Republic of Iran*, 700 F.Supp.2d 52, 83 (D.D.C. 2010) (concerning damages under FSIA); *Ests. of Ungar ex rel. Strachman v. Palestinian Auth.,* 304 F. Supp. 2d 232, 267 (D.R.I. 2004) (finding that under ATA plaintiffs can recover "both pecuniary damages … and also for non-economic damages, including loss of companionship, society, and mental anguish experienced by the victim's surviving family members, including his siblings … ."); *see also Miller v. Arab Bank, PLC,* 372 F. Supp. 3d 33, 41 (E.D.N.Y. 2019) (ruling that plaintiffs were entitled to solatium damages under the ATA); *Lelchook v. Commerzbank AG*, 2011 WL 4087448, at *2 (S.D.N.Y. Aug. 2, 2011) (allowing plaintiffs to pursue claims for solatium damages is consistent with Congress's incorporation of traditional tort-law principles, under which such damages are available, into the ATA.); *Smith ex rel. Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 240 (S.D.N.Y. 2003) (while punitive damages are not available under ATA, its civil action provision "provides for treble damages"). And of course, the injured can recover damages "for personal injury," 28 U.S.C. § 1605A(a)(1) and (c)(4), including "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c)(4). The award of damages for physical injuries "assume[s] severe psychological injuries." *Schertzman Cohen v. Islamic Republic of Iran*, No. 17-CV-1214 (JEB),

2019 WL 3037868, at *6 (D.D.C. July 11, 2019) (citing Wamai v. Republic of Sudan, 60 F. Supp. 3d 84, 92-93 (D.D.C. 2014); ECF 5879.

Though a claim under the FSIA is available only to a "claimant or … victim [who] was … a national of the United States; a member of the armed forces; or otherwise an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment," and the same is true with respect to the ATA, under the Alien Tort Statute, which was another source of jurisdiction the *Ashton* Plaintiffs asserted, district courts have authority to hear claims brought against non-sovereign defendants by both U.S. nationals and non-U.S. nationals. *See* 28 U.S.C. § 1350. Further, the ATA (for U.S. nationals) and state law remedies (for U.S. nationals and non-U.S. nationals) also provide remedies against a non-sovereign defendant for those killed or injured in an attack in the United States.

Those *Burlingame* personal injury Plaintiffs set forth in Exhibit A-1 are all individuals who suffered severe and permanent physical and emotional injuries at the World Trade Center or Pentagon on September 11, 2001 and survived. As liability has been established against the *Taliban* and *Omar* Defendants, each of those moving plaintiffs is now seeking a final order of damages in the amounts set forth on Exhibit A-1, which reflect the damage amounts previously awarded by this Court for the pain and suffering suffered by each of those *Burlingame* 9/11 Plaintiffs.

**A. Economic Damages**

Economic damages are specifically contemplated in terrorism litigation, whether under the FSIA, the ATA, state law or otherwise. The economic damages provision is "designed to compensate [a] decedent's heirs-at-law for economic losses which result from [the] decedent's premature death." *Flatow v. Islamic Republic of Iran,* 999 F. Supp. 1, 27 (D.D.C. 1998); *see also*

8

*Ungar*, 304 F.Supp.2d at 264-65 (its legislative history "indicates that the ATA was to be construed broadly" and giving weight to its co-sponsor's statement that the ATA "'empowers victims with all the weapons available in civil litigation,'" suggesting "that Congress intended that the full range of damages should be available to persons entitled to bring actions pursuant to § 2333(a).") (emphasis in original). Accordingly, "the beneficiaries of each decedent's estate [are] … entitled to recover the present value of economic damages, including lost wages that the decedents might reasonably have been expected to earn but for their wrongful deaths." *Valore,* 700 F. Supp. 2d at 81-82, citing *Heiser v. Islamic Republic of Iran,* 466 F.Supp.2d 229 (D.D.C. 2006.) Thus, sponsors of terrorist attacks that kill victims are routinely "liable for the economic damages caused to decedents' estates." *Roth v. Islamic Republic of Iran,* 78 F. Supp. 3d 379, 399-400 (D.D.C. 2015), quoting *Valore,* 700 F.Supp.2d at 78.

Those *Burlingame* Plaintiffs set forth in Exhibits A-1 and A-2 are all representatives of estates of victims who were murdered on September 11, 2001 (*Burlingame* 9/11 Decedents) and claims on behalf of the *Burlingame* 9/11 Decedents are asserted by those estate representatives. Granito Decl. at ¶ 8. As liability has been established against the *Taliban* and *Omar* Defendants, those moving plaintiffs now seek a final order of damages in the amounts set forth on Exhibits A-1 and A-2.

Previously, this Court awarded economic damages against co-tortfeasor Iran for the "economic losses stemming from the wrongful death of the decedent[.]" ECF No. 2623 at 2-3. In doing so, it adopted the economic loss calculations set forth in the plaintiffs' economic expert reports. Granito Decl. at ¶ 11; *see also* ECF 5486-2 (updated reports supporting economic loss motions). For those *Burlingame* 9/11 Decedents on Exhibits A-1 and A-2 for whom economic damages are sought, the economic loss amount was calculated based on updated, present-value figures of either the economic damages previously provided by an economic expert or generated

by the September 11 Victim Compensation Fund ("VCF") and this Court previously found that those economic damages amounts were proper. Granito Decl. at ¶ 11; *see also* ECF 5857 (orders crediting those reports).[3]

Accordingly, the *Burlingame* Plaintiffs now respectfully request that this Court order economic loss awards to those the estates listed in Exhibits A-1 (trebled pursuant to the ATA for U.S. nationals) and A-2 (not trebled) in the amounts set forth therein.

B. **Conscious Pain and Suffering**

Plaintiffs identified in Exhibits A-1 and A-2 are estates of *Burlingame* 9/11 Decedents, who were murdered in the September 11, 2001 terrorist attacks and who all experienced the agonizing suffering prior to their deaths that has previously formed the basis of pain and suffering damages awards. Granito Decl. at ¶¶ 8-9; ECF 2618 at 7 – 9. Certain Plaintiffs identified in Exhibit A-1 are *Burlingame* 9/11 Plaintiffs who were present at either the World Trade Center or the Pentagon during the September 11, 2001 terrorist attacks and suffered significant and permanent physical injuries as a direct result of the airplane crash impact at each of those locations on that day. This Court has previously assessed claims for the extraordinary conscious pain and suffering experienced by those who lost their lives or were physically injured on September 11, 2001, including for those *Burlingame* 9/11 Decedents identified on Exhibits A-1 and A-2 and those *Burlingame* Personal Injury Plaintiffs identified on Exhibit A-1. ECF Nos. 2618 at 7 – 9, 5971. Accordingly, the *Burlingame* Plaintiffs now respectfully request that this Court grant those *Burlingame* 9/11 Decedents whose estates are set forth in Exhibits A-1 and A-2 total compensatory damages judgment that reflects the previously awarded $2,000,000 for each 9/11 Decedent, with

---

[3] In some cases, because of long delays in production of economic loss materials, the Estates of the *Burlingame* 9/11 Decedents are currently seeking only damages for conscious pain and suffering and will move for economic damages as soon as supporting materials are received.

that amount trebled pursuant to the ATA for the estates of U.S. nationals listed in Exhibit A-1. That total final damages amount for each *Burlingame* 9/11 Decedent is listed in Exhibits A-1 and A-2. The *Burlingame* Personal Injury Plaintiffs further request that the Court award damages to those physically injured who are set forth on Exhibit A-1 in the amounts which reflect the damage amounts previously awarded by this Court for the extraordinary pain and suffering endured by each of those injured *Burlingame* 9/11 Plaintiffs.

### C. Solatium Damages

"Acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22. Reflecting the nature of terrorist attacks, which are intended to cause emotional damages to those closest to the physically injured party, family members of the decedents may recover for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort." *Dammarell v. Islamic Republic of Iran*, 281 F. Supp. 2d 105, 196 (D.D.C. 2003) (solatium damages available under FSIA), *vacated on other grounds*, 404 F. Supp. 2d 261 (D.D.C. 2005); *Ungar*, 304 F.Supp.2 at 264-65 (fullest range of damages should be available to plaintiffs in terrorism litigation, including "all the weapons available in civil litigation"); *Lelchook*, 2011 WL 4087448, at *2 (plaintiffs may " 'pursue claims for solatium [emotional] damages' under the ATA") (brackets in original); *Henkin v. Kuveyt Turk Katilim Bankasi*, 495 F.Supp. 3d 144, 152 (E.D.N.Y. 2020) ("[c]ourts permit "[p]laintiffs to pursue claims for solatium [emotional] damages" under the ATA.") *citing Lelchook*, 2011 WL 4087448, at *2.

To this end, "[s]pouses and relative[s] in direct lineal relationships are presumed to suffer damages for mental anguish[.]" *Knox v. Palestine Liberation Org.*, 442 F. Supp. 2d 62, 78 (S.D.N.Y. 2006); *Morris*, 415 F.Supp.2d 1323, 1337 (D.Utah 2006) (holding that "victim's family

11

may recover under § 2333 for the victim's lost wages and pain and suffering, and for the victim's wife and children's loss of companionship, society, and guidance, and mental anguish); *Ungar*, 304 F. Supp 2d at 267 (holding plaintiffs entitled under § 2333 to economic and non-economic damages, including loss of companionship and society, and mental anguish experienced by the victim's surviving family members).

Solatium claims have been treated as comparable to claims for intentional infliction of emotional distress, in which the immediate family members of the decedent are treated as direct victims. *See, e.g., Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 115 n.12 (D.D.C. 2005)( "[c]ourts have uniformly held that a terrorist attack—by its nature—is directed not only at the victims but also at the victims' families."); *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (treating solatium claim as "'indistinguishable' from the claim of intentional infliction of emotional distress.") (quoting *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001)).  Thus, this Court has previously awarded solatium damages to "immediate family members" – that is, the spouses, children, parents and siblings of those killed in the September 11, 2001 Terrorist Attacks (or their functional equivalents), ECF 3363 – who, though not physically present at the site of the terrorist attacks, were nevertheless intended victims of the terrorist activities. *See e.g.* ECF 3987, 4087, 4156, 4707, 5058, 5453, 5974. The four established categories of family relationships – spouses, parents, children and siblings – do not require any additional showing of the nature of the underlying relationship.

To fashion a solatium award adequately compensating the surviving family members in the litigation when issuing solatium damages as against defendant Iran, this Court looked to the analysis undertaken by District Court Judge Royce Lambert in the *Heiser* case. 466 F. Supp. 2d 229.  There, Judge Lamberth concluded that solatium damages should be awarded to each spouse

12

of a deceased victim in the amount of $8 million, to each parent in the amount of $5 million, and to each sibling in the amount of $2.5 million. *Id*.

Recognizing that the immediate family members of those killed in the September 11 terrorist attacks suffered and continue to suffer "profound agony and grief and, "[w]orse yet, … are faced with frequent reminders of the events of that day," ECF 2618 at 10 – 12, this Court adopted the following solatium damages framework:

| Relationship to Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

The losses claimed in this motion are identical to those that this Court ordered in connection with the final judgment against Iran. The amount of solatium damages previously adopted in the judgments against Iran should apply equally to the *Taliban* and *Omar* Defendants.

The relationships between the decedent and the *Burlingame* Plaintiffs are set forth in Exhibits B-1 and B-2 accompanying the Granito Declaration. The *Burlingame* Plaintiffs have direct relationships previously recognized as being presumptively qualified for solatium damages; the relationships between the *Burlingame* Plaintiffs and the immediate family members killed in the September 11, 2001 terrorist attacks have been verified; the *Burlingame* Plaintiffs survived the death of their immediate family members on September 11, 2001; the *Burlingame* Plaintiffs do not have another known claim pending before this Court for compensation against the *Taliban* or *Omar* Defendants; the *Burlingame* Plaintiffs have not recovered against the *Taliban* or *Omar* Defendants; the *Burlingame* Plaintiffs have not come close to satisfying their judgments against

Iran; and, this Court previously granted solatium damages in the amounts sought here. Granito Decl. at ¶¶ 16-18.

The plaintiffs in Exhibits B-1 and B-2 are all individuals who were identified in a complaint against, among others, the Taliban and Omar Mohammad no later than the filing of the Sixth Amended Complaint (the underlying basis for the liability judgment against those defendants); the Sixth Amended Complaint expressly identified claims for solatium damages; and they are the immediate family members of *Burlingame* 9/11 Decedents. Granito Decl. at ¶ 17.

The *Burlingame* Plaintiffs therefore respectfully request that this Court issue a final judgment ordering payment of solatium damages to the *Burlingame* Plaintiffs listed in Exhibits B-1 and B-2, in the amounts set forth in those exhibits.

### D. Treble Damages

As discussed above, for those *Burlingame* Plaintiffs set forth in Exhibits A-1 and B-1 who have claims under the Anti-Terrorism Act that this Court has jurisdiction to determine (18 U.S.C. § 2333(a)), they make claims for damages threefold their compensatory damages amounts for pain and suffering and economic loss on behalf of the estates of the *Burlingame* 9/11 Decedents (Exhibit A-1) and solatium damages for their immediate family members (Exhibits B-1).

### E. Punitive Damages

While *Burlingame* Plaintiffs are also entitled to punitive damages, in light of prior differing decisions on the proper punitive multiplier, (*compare*, *e.g.,* ECF 3175 at 3 *with* ECF 3384 at 6) they request permission to address the issue of punitive damages at a later date, as this Court has previously allowed. ECF No. 3666.

### F. Prejudgment Interest

On the issue of prejudgment interest, a December 28, 2015 Report and Recommendation, adopted by this Court, concluded that to the extent the *Ashton* wrongful death plaintiffs' claims

arose out of injuries in New York State, the rate of prejudgment interest was 9 percent per annum from September 11, 2001 until the date judgment was entered, and to the extent the injuries arose elsewhere, 4.96 percent interest per annum compounded annually was appropriate. ECF No. 3175 at 1 – 2.  Subsequently, however, this Court concluded that the rate of prejudgment interest of 4.96 percent was more appropriate. ECF No. 3384 at 6.

Accordingly, the *Burlingame* Plaintiffs asks that this Court direct that prejudgment interest of 4.96 percent per annum be awarded on their awards running from September 11, 2001 until the date of judgment, as was done previously done in this consolidated litigation.

### III.     Conclusion

For all of the reasons herein, as well as those set forth in the previous submissions, the *Burlingame* Plaintiffs respectfully request that this Court grant the proposed order:

1.     Awarding each estate of the individuals killed in the September 11 Terrorist Attacks listed in Exhibits A-1 and A-2 damages for conscious pain and suffering against the *Taliban* and *Omar* Defendants in the amount of $2,000,000 per decedent, which is the same amount this Court previously awarded to them, with that amount trebled for the estates listed in Exhibit A-1;

2.     Awarding the estates of the *Burlingame* 9/11 Decedents damages listed in Exhibits A-1 and A-2 damages for economic loss against the *Taliban* and *Omar* Defendants in the same amounts that this Court previously awarded to them, with that amount trebled for the estates listed in Exhibit A-1;

3.     Awarding the *Burlingame* personal injury Plaintiffs listed in Exhibit A-1, persons who suffered severe and permanent physical injuries on the day of September 11, 2001, damages for pain and suffering in the same amounts that this Court has previously awarded to those individuals;

4.    Awarding the immediate family members of the *Burlingame* 9/11 Decedents listed in Exhibits B-1 and B-2, who are also named in the complaints as the representatives of the estates of the *Burlingame* 9/11 Decedents, solatium damages in the same amounts that this Court has previously awarded to them, with that amount trebled for the plaintiffs listed in B-1;

5.    Awarding these plaintiffs pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

6.    Granting the *Burlingame* Plaintiffs permission to seek economic damages and punitive damages, to the extent not sought herein, and other appropriate damages at a later date; and

7.    Granting permission for any other *Burlingame* Plaintiffs to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Dated:  Rye Brook, New York
        August 12, 2022

Respectfully submitted,

SPEISER KRAUSE, PC

By: /s/ Frank H. Granito
Frank H. Granito, III, Esq. (FG9760)
Douglas A. Latto, Esq. (DL3649)
Jeanne M. O'Grady, Esq. (JO3362)
Speiser Krause, PC
800 Westchester Avenue, Suite S-608
Rye Brook, New York 10573
Tel: (914) 220-5333
Fax: (914) 220-5334
f3g@speiserkrause.com
dal@speiserkrause.com
jog@speiserkrause.com
*Attorneys for the Burlingame Plaintiffs*