**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN) (and member case *Burlingame v. Bin Laden, et al.,* 02-cv-7230 (GBD)(SN))

## *Burlingame II* Plaintiffs' Motion for Final Judgments Against the Taliban and Muhammad Omar

For the reasons set forth below, the statements contained in the declaration of Frank H. Granito, III, Esq. ("Granito Declaration") and the record in this case, those plaintiffs in the above-captioned *Burlingame* matter, a subset of the *Ashton* plaintiffs, who are represented by Speiser Krause, PC, and are listed in the exhibits to the Granito Declaration ("*Burlingame II* Plaintiffs") respectfully move for an Order for final judgments for their losses and injuries arising out of the deaths of those individuals listed in the exhibits, all of whom were murdered in the September 11, 2001 Terrorist Attacks.  They previously obtained a default liability judgment against, among others, the Taliban and the founder and former leader of the Islamic Emirate of Afghanistan Emir Muhammad Omar (hereinafter the "*Taliban* and *Omar* Defendants") and now move for damages judgments.  They seek an Order:

1.      Awarding each estate of the individuals killed in the September 11 Terrorist Attacks listed in Exhibits A-1 and A-2 to the Granito Declaration (the "*Burlingame II* 9/11 Decedents") damages for economic loss against the *Taliban* and *Omar* Defendants as supported by the expert economic analyses and reports attached to the Granito Declaration as Exhibits B-1 through B-19;

2.      Awarding those *Burlingame II* Plaintiffs identified on Exhibits A-1 who have asserted claims under the Anti-Terrorism Act, 18 U.S.C. § 2333, treble damages;

3.     Awarding the *Burlingame II* Plaintiffs pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

4.     Granting the *Burlingame II* Plaintiffs permission to seek punitive damages, economic damages, to the extent not sought herein, and other appropriate damages at a later date; and

5.     Granting permission for all other plaintiffs in this action not appearing on the exhibits to the Granito Declaration to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

As the Plaintiffs listed in Exhibits A-1 and A-2 have previously moved this Court to award non-economic damages for the pre-death conscious pain and suffering of their decedents, the proposed Order will constitute partial final awards and judgments against the Taliban and Omar for those Plaintiffs listed in Exhibits A-1 and A-2 to the Granito Declaration.

## I.     Procedural Background

On September 10, 2002, the *Burlingame* Plaintiffs filed their first complaint against the alleged sponsors of the September 11, 2001 terrorist attacks, which included claims against defendants al Qaeda Islamic Army, the Taliban, and Muhammad Omar, among others. See 02-cv-7230 (S.D.N.Y.) ECF 1.   The *Burlingame* (02-cv-7230) and *Ashton* (02-cv-6977) matters were Ordered consolidated for liability purposes and mandated to proceed under the *Ashton, et al. v. al Qaeda Islamic Army, et al.* (hereinafter "*Ashton*") master docket number 02-cv-6977, with the filing of a consolidated master complaint, and attorney James Kreindler was appointed Liaison Counsel for the consolidated actions within the *Ashton* master complaint. See 02-cv-6977, Doc. No. 5, Entered 11/19/2002. The *Burlingame* plaintiffs remain segregated within all consolidated *Ashton* filings and are identified therein according to their separate docket number and counsel.

2

See, e.g., 02-cv-6977, Doc. No. 465, filed 03/30/2005. The master complaint was amended several times. See, e.g., 02-cv-6977 (S.D.N.Y.) ECF 2, 11, 32, 38, 111, 465.[1]

In their complaints, the *Ashton* Plaintiffs (including the *Burlingame II* plaintiffs listed on Exhibits (A-1 and A-2)), both United States nationals and non-nationals, asserted federal jurisdiction against the *Taliban* and *Omar* Defendants pursuant to, among other provisions, the Alien Tort Statute (28 U.S.C. § 1350) ("ATS"), the Foreign Sovereign Immunities Act (28 U.S.C. §§ 1605(a)(5) and (a)(7)) ("FSIA") and the Torture Victim Protection Act (28 U.S.C. § 1350 note) ("TVPA"), and made claims for damages against those defendants under those provisions as well as under the Anti-Terrorism Act (Anti-Terrorism Act (18 U.S.C. § 2333) ("ATA") and state law for the deaths, injuries and losses suffered in the September 11th Terrorist Attacks. *Ashton v. al Qaeda et al.*, 02-cv-6977, ECF 465 at ¶¶ 2-3, 10-12, 464-466, 469-70, 473-74, 477-78, 481-82, 486-89.

The causes of action asserted against the *Taliban* and *Omar* Defendants, among others, were based on state law (Counts One through Three), the Anti-Terrorism Act, 18 U.S.C. § 2333 ("ATA") (Count Four) and the Torture Victim Protection Act (Count Five). *See, e.g.* 02-cv-6977, ECF 465 at ¶¶ 464-466, 469-70, 473-74, 477-78, 481-82, 486-89.  Under the Anti-Terrorism Act, only a plaintiff who is a "national of the United States injured … by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue … and shall recover threefold the damages he or she sustains …." 18 U.S.C. § 2333(a).

Included in these counts were claims for wrongful death damages (economic loss and pain and suffering, among other things), personal injuries (both physical and mental), and solatium

---

[1] References to MDL docket entries found at 03-md-1570 (S.D.N.Y.) are noted only by ECF number; references to individual civil case docket entries are preceded by the case number.

losses (along with loss of consortium, loss of support, loss of society and companionship, loss of parental care and guidance, and more). *Id.*

This Court issued an order authorizing service of process by publication on certain defendants, including the *Taliban* and *Omar* Defendants. ECF 445 at 1, 8, 11.   The *Ashton* Plaintiffs (including the *Burlingame II* plaintiffs listed on Exhibits A-1 and A-2), and others, served the *Taliban* and *Omar* Defendants by publication with verification of publication filed on March 16, 2005 and March 31, 2005. ECF 709, 735; Granito Decl. at ¶ 5.[2]  The *Taliban* and *Omar* Defendants never answered and the *Ashton* Plaintiffs (including the *Burlingame II* plaintiffs listed on Exhibits A-1 and A-2) thereafter moved for a Certificate of Default and a default judgment, which this Court granted on May 12, 2006. ECF 1782 *et seq.*, 1797 (referring to the defendants listed in Exhibit B to the *Ashton* Plaintiffs motion, including the *Taliban* and *Omar* Defendants); Granito Decl. at ¶ 5 and Exhibits C and D (listing the plaintiffs and defendants for and against whom, respectively, a default liability judgment was sought). This Court entered a default liability judgment on May 12, 2006, stating that it applied to all claims, plaintiffs and defendants up to and through the Sixth Amended Complaint. ECF 1797.

Previously, in connection with their claims against the Islamic Republic of Iran ("Iran"), another defendant in the complaints naming the *Taliban* and *Omar* Defendants, this Court granted the *Ashton* Plaintiffs (including the *Burlingame II* plaintiffs listed on Exhibits A-1 and A-2) a

---

[2] The publication notices directed the named defendants to the MDL docket and advised them in both English and Arabic that they were required to answer the complaints on that docket, which sought, among other things, compensatory, treble and punitive damages, within 60 days. ECF 709 at 2; 735 at 2.  The jurisdictional and factual allegations against the *Taliban* and *Omar* Defendants as set forth in the operative complaint at the time of service did not change in subsequent amendments. *Compare* 02-cv-6977 (S.D.N.Y.) (*Ashton* Consolidated Master Complaint, Filed 03/06/2003), ECF 11 at ¶¶ 2, 10-12, 112-14, 178-79, 600, 602-03, 605-06, 608-09, 610-12, 615-19 *with* 02-cv-6977 (S.D.N.Y.) (Sixth Amended Complaint, Filed 09/03/2005) ECF 465 at ¶¶ 2, 10-12, 78-79, 123-25, 464-66, 469-70, 473-74, 477-78, 481-82.

default liability judgment. ECF 3021.  Thereafter, in connection with the damages assertions set forth in the *Ashton* complaints, in a series of orders this Court issued final damages judgments against Iran, granting the *Burlingame* Plaintiffs' motions for:

- Compensatory damages for the conscious pain and suffering of the *Ashton* and *Burlingame* 9/11 Decedents (*e.g.*, ECF 3226, 3229);

- Economic damages for the estates of the *Burlingame* 9/11 Decedents *(e.g.,* ECF 5857), which damages claims were supported by the expert analysis, reports or other economic loss calculations that the *Burlingame* Plaintiffs previously filed with this Court. (*See, e.g.,* ECF 5486-2); and

- Solatium damages for the immediate family members (and their functional equivalents) of the *Burlingame* 9/11 Decedents (*e.g.* ECF 3987, 4087, 4156, 4707, 5058, 5453, 5974).

The *Burlingame II* Plaintiffs listed in the Exhibits to the Granito Declaration now move this Court to grant the proposed Order awarding them damages for, as noted on those exhibits, economic loss arising out of the deaths of those individuals killed in the September 11 Terrorist Attacks as supported by the expert economic analyses and reports attached to the Granito Declaration as Exhibits B-1 through B-19.  They also seek treble damages under the Anti-Terrorism Act for United States nationals whose claim for such damages this Court has jurisdiction to consider (*see* 18 U.S.C. § 2333(a) and Granito Declaration Exhibits A-1) and an order directing that pre-judgment interest be assessed at 4.96 percent per annum.

The *Burlingame II* Plaintiffs are set forth in the exhibits as follows:

- Exhibits A-1 (U.S. nationals) and A-2 (non-U.S. nationals), asserting damages claims for the estates of those individuals killed in the Sept. 11 Terrorist Attacks;

The *Burlingame* Plaintiffs also ask for permission to continue to submit applications in subsequent stages on behalf of those claimants not included in the attached exhibits, should any other applications be warranted.

## II.    Damages

The *Ashton* Plaintiffs (including the *Burlingame II* plaintiffs listed on Exhibits A-1 and A-2) claimed jurisdiction and damages, as relevant here, pursuant to the ATA's civil damages provision, the TVPA, the FSIA and state law. *See, e.g.,* 02-cv-6977 (S.D.N.Y.), ECF 465 at ¶¶ 463-90.  They sought treble damages under the ATA, which applies to claims brought by United States nationals. 02-cv-6977 (S.D.N.Y.), ECF 465 at ¶ 479, 242.

According to the caselaw governing terrorism litigation, the "estates of those who [died] can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." *Valore v. Islamic Republic of Iran*, 700 F.Supp.2d 52, 83 (D.D.C. 2010) (concerning damages under FSIA); *Ests. of Ungar ex rel. Strachman v. Palestinian Auth.,* 304 F. Supp. 2d 232, 267 (D.R.I. 2004) (finding that under ATA plaintiffs can recover "both pecuniary damages … and also for non-economic damages, including loss of companionship, society, and mental anguish experienced by the victim's surviving family members, including his siblings … ."); *see also Miller v. Arab Bank, PLC,* 372 F. Supp. 3d 33, 41 (E.D.N.Y. 2019) (ruling that plaintiffs were entitled to solatium damages under the ATA);  *Lelchook v. Commerzbank AG*, 2011 WL 4087448, at *2 (S.D.N.Y. Aug. 2, 2011) (allowing plaintiffs to pursue claims for solatium damages is consistent with Congress's incorporation of traditional tort-law principles, under which such damages are available, into the ATA.); *Smith ex rel. Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 240 (S.D.N.Y. 2003) (while punitive damages are not available under ATA, its civil action provision "provides for treble damages").

Though a claim under the FSIA is available only to a "claimant or … victim [who] was … a national of the United States; a member of the armed forces; or otherwise an employee of the Government of the United States, or of an individual performing a contract awarded by the United

States Government, acting within the scope of the employee's employment," and the same is true with respect to the ATA, under the Alien Tort Statute, which was another source of jurisdiction the *Ashton* Plaintiffs asserted, district courts have authority to hear claims brought against non-sovereign defendants by both U.S. nationals and non-U.S. nationals. *See* 28 U.S.C. § 1350. Further, the ATA (for U.S. nationals) and state law remedies (for U.S. nationals and non-U.S. nationals) also provide remedies against a non-sovereign defendant for those killed or injured in an attack in the United States.

### A. Economic Damages

Economic damages are specifically contemplated in terrorism litigation, whether under the FSIA, the ATA, state law or otherwise. The economic damages provision is "designed to compensate [a] decedent's heirs-at-law for economic losses which result from [the] decedent's premature death." *Flatow v. Islamic Republic of Iran,* 999 F. Supp. 1, 27 (D.D.C. 1998); *see also Ungar*, 304 F.Supp.2d at 264-65 (its legislative history "indicates that the ATA was to be construed broadly" and giving weight to its co-sponsor's statement that the ATA "empowers victims with all the weapons available in civil litigation," suggesting "that Congress intended that the full range of damages should be available to persons entitled to bring actions pursuant to § 2333(a).") (emphasis in original). Accordingly, "the beneficiaries of each decedent's estate [are] … entitled to recover the present value of economic damages, including lost wages that the decedents might reasonably have been expected to earn but for their wrongful deaths." *Valore,* 700 F. Supp. 2d at 81-82, citing *Heiser v. Islamic Republic of Iran,* 466 F.Supp.2d 229 (D.D.C. 2006.)  Thus, sponsors of terrorist attacks that kill victims are routinely "liable for the economic damages caused to decedents' estates." *Roth v. Islamic Republic of Iran,* 78 F. Supp. 3d 379, 399-400 (D.D.C. 2015), quoting *Valore,* 700 F.Supp.2d at 78.

7

Those *Burlingame II* Plaintiffs set forth in Exhibits A-1 and A-2 are all representatives of estates of victims who were murdered on September 11, 2001 (*Burlingame II* 9/11 Decedents) and claims on behalf of the *Burlingame II* 9/11 Decedents are asserted by those estate representatives. Granito Decl. at ¶ 8.  As liability has been established against the *Taliban* and *Omar* Defendants, those moving plaintiffs now seek a final order of damages in the amounts set forth on Exhibits A-1 and A-2, which reflect the economic loss suffered by the Estates of the *Burlingame II* 9/11 Decedents as supported by the expert economic analysis and reports attached to the Granito Declaration as Exhibits B-1 through B-19.

Previously, this Court awarded economic damages against co-tortfeasor Iran for the "economic losses stemming from the wrongful death of the decedent[.]" ECF No. 2623 at 2-3.  In doing so, it adopted the economic loss calculations set forth in the plaintiffs' economic expert reports. Granito Decl. at ¶ 11; *see also* ECF 5486-2 (updated reports supporting economic loss motions).  The *Burlingame II* Plaintiffs respectfully ask that this Court award economic damages set forth in the attached Exhibits A-1 and A-2 to the Granito Declaration and supported by the economic expert reports attached as Exhibits B1-B19 to the Granito Declaration. The Estates listed in Exhibits A-1 and A-2 opted to seek compensation through the September 11 Victim Compensation Fund of 2001 (the "VCF") and in connection with that claim, gathered information relevant to the economic losses suffered as result of the decedent's wrongful death, which included both documentary evidence of decedent's earnings as well as interviews with decedent's surviving family members, colleagues and other witnesses.   The Estates retained an expert who has rendered opinions as to the economic losses that resulted from their decedents' wrongful deaths.  Submitted as Exhibits B-1 through B-19 to the Granito Declaration are copies of that economic expert's reports.   The expert reports also include a description of methodology used and the expert's curriculum vitae. Because of their sheer size and the confidential nature of their contents, and in

accordance with the January 22, 2020 Order of Magistrate Judge Sarah Netburn, ECF Doc. No. 7067, the individual expert economic reports for the *Burlingame II* Plaintiffs are being provided to the Court on disc as Exhibit B.

Accordingly, the *Burlingame II* Plaintiffs now respectfully request that this Court order economic damages to those the 9/11 Decedents listed in the attached Exhibits A-1 (trebled pursuant to the ATA for U.S. nationals) and A-2 (not trebled) in the amounts set forth therein, as supported by the economic expert reports attached as Exhibits B-1 through B-19 to the Granito Declaration.

### B.  Conscious Pain and Suffering

Plaintiffs identified in Exhibits A-1 and A-2 are estates of *Burlingame II* 9/11 Decedents, who were murdered in the September 11, 2001 terrorist attacks and who all experienced the agonizing suffering prior to their deaths that has previously formed the basis of pain and suffering damages awards, including for those *Burlingame II* 9/11 Decedents identified on Exhibits A-1 and A-2. Granito Decl. at ¶¶ 8-9; ECF 2618 at 7 – 9. The *Burlingame II* Plaintiffs listed on Exhibits A-1 and A-2 have a pending motion before this Court for the pre-death conscious pain and suffering of each 9/11 Decedent, seeking the same $2,000,000 amounts previously awarded. ECF No. 8335, 8337-1, 8337-2. Accordingly, the *Burlingame II* Plaintiffs now respectfully request that this Court grant those *Burlingame II* 9/11 Decedents whose estates are set forth in Exhibits A-1 and A-2 compensatory damages judgment that reflects the economic losses listed for each 9/11 Decedent.  The partial final damages amount for each *Burlingame II* 9/11 Decedent listed in Exhibits A-1 and A-2 herein do not include, and are in addition to, the non-economic damages against the Taliban and Omar defendants sought on behalf of the *Burlingame II* Decedents in plaintiffs' prior motion.  *See* ECF 8335, 8337-1, 8337-2.

### C. Treble Damages

As discussed above, for those *Burlingame* Plaintiffs set forth in Exhibits A-1 who have claims under the Anti-Terrorism Act that this Court has jurisdiction to determine (18 U.S.C. § 2333(a)), they make claims for damages threefold their compensatory damages amounts for economic loss on behalf of the estates of the *Burlingame II* 9/11 Decedents (Exhibit A-1).

### D. Punitive Damages

While the *Burlingame II* Plaintiffs are also entitled to punitive damages, in light of prior differing decisions on the proper punitive multiplier (*compare*, *e.g.,* ECF 3175 at 3 *with* ECF 3384 at 6), they request permission to address the issue of punitive damages at a later date, as this Court has previously allowed. ECF No. 3666.

### E. Prejudgment Interest

On the issue of prejudgment interest, a December 28, 2015 Report and Recommendation, adopted by this Court, concluded that to the extent the *Burlingame* wrongful death plaintiffs' claims arose out of injuries in New York State, the rate of prejudgment interest was 9 percent per annum from September 11, 2001 until the date judgment was entered, and to the extent the injuries arose elsewhere, 4.96 percent interest per annum compounded annually was appropriate. ECF No. 3175 at 1 – 2.  Subsequently, however, this Court concluded that the rate of prejudgment interest of 4.96 percent was more appropriate. ECF No. 3384 at 6.

Accordingly, the *Burlingame II* Plaintiffs asks that this Court direct that prejudgment interest of 4.96 percent per annum be awarded on their awards running from September 11, 2001 until the date of judgment, as was done previously done in this consolidated litigation.

### III.   Conclusion

For all of the reasons herein, as well as those set forth in the previous submissions, the *Burlingame II* Plaintiffs respectfully request that this Court grant the proposed order:

1.      Awarding each estate of the *Burlingame II* 9/11 Decedents damages listed in Exhibits A-1 and A-2 damages for economic loss against the *Taliban* and *Omar* Defendants as supported by the attached economic expert reports and analyses;

2.      Awarding those *Burlingame II* Plaintiffs identified on Exhibit A-1 who have asserted claims under the Anti-Terrorism Act, 18 U.S.C. § 2333, treble damages;

3.      Awarding the *Burlingame II* Plaintiffs pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001, until the date of the judgment for damages;

4.      Granting the *Burlingame II* Plaintiffs permission to seek economic damages and punitive damages, to the extent not sought herein, and other appropriate damages at a later date; and

5.      Granting permission for all other Plaintiffs to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Dated: Rye Brook, New York
      August 16, 2022

Respectfully submitted,

SPEISER KRAUSE, PC

By: /s/ Frank H. Granito
Frank H. Granito, III, Esq. (FG9760)
Douglas A. Latto, Esq. (DL3649)
Jeanne M. O'Grady, Esq. (JO3362)
Speiser Krause, PC
800 Westchester Avenue, Suite S-608
Rye Brook, New York 10573
Tel: (914) 220-5333
Fax: (914) 220-5334
f3g@speiserkrause.com
dal@speiserkrause.com
jog@speiserkrause.com
*Attorneys for the Burlingame Plaintiffs*