**Exhibit N**

# Amanda Rae Guthrie

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
In Re:

TERRORIST ATTACKS ON                                    03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

--------------------------------------------------------------X      **AFFIDAVIT OF**
GEORGIA M. ASCIUTTO, et al.,                            **AMANDA RAE GUTHRIE**

                                    Plaintiffs,          20-CV-00411 (GBD)(SN)

                    v.

ISLAMIC REPUBLIC OF IRAN,

                                    Defendant.
--------------------------------------------------------------X
STATE OF FLORIDA        )
                        : SS.:
COUNTY OF ESCAMBIA  )

AMANDA RAE GUTHRIE, being duly sworn, deposes and says:

1.      I am a plaintiff in the within action, am over 18 years of age, and reside at 13646
Canal Drive, Pensacola, Florida 32507.

2.      I am currently 38 years old, having been born on May 7, 1984.

3.      I am the daughter of Larry Ordell Rappe, upon whose death my claim is based,
and submit this Affidavit in connection with the pending motion for a default judgment and in
support of my solatium claim.

4.      My father passed away from pulmonary fibrosis on October 21, 2017. It was
medically determined that this illness was causally connected to his exposure to the toxins
resulting from the September 11, 2001, terrorist attacks.

5.      My dad was my superhero and a huge part of my life. He was very active in my
life. We did so many outdoor activities together. We started scuba diving together when I was
14 years old. We loved hiking, traveling and boating. We did so many outdoor things together –
hiking and traveling. Any time I needed something, or I needed help, I turned to my dad. My
husband and I moved away when we first got married, and my dad helped us to pack up the

house. He was able to build and repair things. Whenever I needed him, he would hop in the car and come to my house as soon as he could. He was my sounding board, and he was the reason I chose my career path.

6.  My father was a social worker with the National Disaster Medical Assistance Team. He responded to the World Trade Center a day or two after 9/11/2001. He led a team of individuals to assist in search and recovery, as well as to act as a therapist for first responders. He was at Ground Zero for about a week to two weeks, in total. They told him he didn't need to wear a mask.

7.  Since 2001, I knew there was a possibility my father could have been sick from his exposure at Ground Zero. He went for yearly checkups with the World Trade Center Health Program. During a road trip down to Orlando, he told me he had gone for his checkups, and they found problems with his breathing. A few tests later, the doctors revealed that he had pulmonary fibrosis. They told him there were three kinds of pulmonary fibrosis and that he had the most severe type. The doctors gave him only two years to live.

8.  At the time my father became ill, I was living in Auburn, Alabama getting my master's degree at Auburn University. I had great professors who let me take the semester off while still giving me credit, but it was really hard to juggle taking care of my dad and my studies. I would drive down to Florida weekly to help out my father. I wanted to spend as much time with him as I could. My mom was his primary caregiver, but from the moment my dad told me he was sick, I put my life on hold for him. I was in charge of his medication. My husband and I spent every holiday with him until he passed.

9.  It was very emotionally draining, taking care of my father. I coordinated most of my father's care. As he started to lose oxygen, you could really see how much the disease was affecting him. I didn't want to be sad in front of my father, because then he would be sad. I didn't want to vent to my mom, because she was already going through a lot, and I didn't want to put more stress on her. It wasn't until I got back to Auburn that I was able to cry. Even when my father died, I had to plan the funeral and take care of everything. So, I didn't really get a chance to grieve.

10.  One of the hardest conversations I ever had with my father was when he pulled me aside and asked me if my husband and I were going to have children. My father never got to

2

know his own grandfather, and he wanted to be able to know his grandchildren. But I was in grad school at the time, and I couldn't give him a grandchild. I have a son now and knowing that my son will never get to meet him really hurts. It also hurts knowing that my father is no longer here—there's so many memories that I want to share with him, but I just can't. I miss him.

11.  My dad was so humble. He had so many amazing accomplishments. He was a founding member of Homeland Security, and he responded to so many national disasters. He went through so much in Vietnam, and then coming back from that and dedicating his life to helping veterans. He founded a summer camp to help children in juvenile detention. He has worked with veterans and people with PTSD. He never had a question of whether he should help people, or how. He just did. He never even talked about all his amazing feats. The world needs more people like him. I hope to be like him, and to teach my son to be like him.

AMANDA RAE GUTHRIE

Sworn to before me this 11 day of July, 2022

Notary Public

VICKY JO CHANDLER
Notary Public - State of Florida
Commission # GG 950952
My Comm. Expires May 9, 2024

3

# Charles Frederick Rappe

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In Re:

TERRORIST ATTACKS ON                    03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

-----------------------------------------------------------X    **AFFIDAVIT OF**
GEORGIA M. ASCIUTTO, et al.,                                    **CHARLES FREDERICK RAPPE**


                                    Plaintiffs,        20-CV-00411 (GBD)(SN)

                        v.

ISLAMIC REPUBLIC OF IRAN,

                                    Defendant.
-----------------------------------------------------------X
STATE OF FLORIDA          )
                          : SS.:
COUNTY OF ESCAMBIA        )

CHARLES FREDERICK RAPPE, being duly sworn, deposes and says:

1.      I am a plaintiff in the within action, am over 18 years of age, and reside at 13715
Canal Drive, Pensacola, Florida 32507.

2.      I am currently 35 years old, having been born on June 24, 1987,

3.      I am the son of Larry Ordell Rappe, upon whose death my claim is based, and
submit this Affidavit in connection with the pending motion for a default judgment and in
support of my solatium claim.

4.      My father passed away from pulmonary fibrosis on October 21, 2017. It was
medically determined that this illness was causally connected to his exposure to the toxins
resulting from the September 11, 2001, terrorist attacks.

5.      My father was everything to me. I went to him for advice, and he shared all his
life adventures with me. We traveled all over the world together. He was my hero, my role
model, and my best friend.

6.      On 9/11/2001, my father was still at home with us in Florida. He soon responded
to the World Trade Center attacks as a member of the National Disaster Medical Assistance

Team. He arrived at Ground Zero a day or two later, as part of the clean-up and recovery operations. He saw a lot of destruction and many heartbroken people. He was there for about a week, providing therapy services for first responders and helping with the clean-up.

7.      Back in 2015, my father told me that he was diagnosed with pulmonary fibrosis and that there was no cure. Before his diagnosis, he seemed like a perfectly healthy man. However, I recall that he complained of breathing issues immediately after 9/11.

8.      By the time my father became ill, I had moved to Alabama. I was about a six-hour drive from Pensacola where my father lived. I would visit him once a week to spend time with him. It was a long drive but always worth it to have those moments with my father. I would accompany my dad to doctors' visits, and I also attended his breathing treatments. I was with him until the very end, staying with him in the hospital when he died. After he passed away, I eventually moved back to Florida to support my mother.

9.      It was extremely painful watching my father suffer from pulmonary fibrosis. It was like watching him slowly suffocate to death. There are no words that can describe the emotional impact of my father's illness on my life. He died nearly five years ago, and I still get choked up about his death to this day. I will never not feel the pain of his loss.

10.     My father was the greatest man I ever knew. He was extremely brave and selfless. He dedicated over half his life to the service of others. It's just not fair knowing that he died because he tried to help people.

CHARLES FREDERICK RAPPE

Sworn to before me this
_11_ day of July, 2022

Notary Public

VICKY JO CHANDLER
Notary Public - State of Florida
Commission # GG 950952
My Comm. Expires May 9, 2024

2

# Paula Rappe

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————X

In Re:

TERRORIST ATTACKS ON                                  03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

————————————————————————X        **AFFIDAVIT OF**
GEORGIA M. ASCIUTTO, et al.,                          **PAULA RAPPE**


                                        Plaintiffs,   20-CV-00411 (GBD)(SN)


                    v.


ISLAMIC REPUBLIC OF IRAN,


                                        Defendant.
————————————————————————X
STATE OF FLORIDA          )
                          : SS.:
COUNTY OF ESCAMBIA        )

PAULA RAPPE, being duly sworn, deposes and says:

1.     I am a plaintiff in the within action, am over 18 years of age, and reside at 13715
Canal Drive, #B, Pensacola Florida 32507.

2.     I am currently 69 years old, having been born on September 8, 1952.

3.     I am the wife of Larry Ordell Rappe, upon whose death my claim is based, and
submit this Affidavit in connection with the pending motion for a default judgment and in
support of my solatium claim.

4.     My husband passed away from pulmonary fibrosis on October 21, 2017. It was
medically determined that this illness was causally connected to his exposure to the toxins
resulting from the September 11, 2001, terrorist attacks.

5.     Larry and I were married for 37 years. We were very family-oriented; all of our
activities involved family. We loved boating and had a few boats. We would go scuba-diving,
and we brought our kids along once they were old enough to scuba-dive themselves. We had
planned to travel the great loop once both of us had retired.

6.      Larry was a social worker and a member of the National Disaster Medical Assistance Team (DMAT). When the attacks on the World Trade Center happened on 9/11/2001, Larry responded almost immediately. He arrived in Manhattan on 9/13/2001 from Florida. He worked at the medical center at Ground Zero, counseling first responders. He worked there for about a week. Larry told me about the destruction he saw at Ground Zero—how despite the World Trade Center being tons of offices, he only ever saw one computer monitor intact.

7.      Larry enrolled early on in the World Trade Center Health Program. He went dutifully every year for his physical. One year, the doctor recommended he see a pulmonary specialist. The specialist told him he had pulmonary fibrosis, and he was given two years to live. We were heartbroken. Our normal life and routine were blown out of the water as Larry's condition worsened. It was difficult to watch him—he was always out and about fixing things, but, as he became weaker, he could hardly get out of a chair.

8.      I was Larry's primary caretaker. I took Larry to all his appointments and doctor visits. We put ramps on our home to help Larry get around once he needed a scooter. I was always on high alert about what I could do and how I could help him. Larry had an oxygen machine. One day we lost power, and I panicked thinking about how Larry might run out of oxygen if the power didn't come back on. Sometimes, Larry would wake me up in the middle of the night gasping for air. I had to leave work at the university I worked at to take care of Larry. I was away from work for three semesters. I had to take leave under the Family and Medical Leave Act. I tried to go back to work after he passed, but I realized I was in no shape to be working and had to go to therapy instead.

9.      Larry hung on as long as he could for his family. When we found out he had two weeks to live, we had everyone come to see him at the house. Every day was precious. When he died, I had to figure out what to do with his estate. The taxes on my house went up, because Larry was a disabled veteran, and we no longer reaped those benefits after his death. I lost a lot of earnings as well, because we were no longer receiving Larry's disability payments. I had to hire handymen to fix the house because Larry used to do all that, but no one could do the work as well as Larry could.

2

10.     It was heartbreaking to lose Larry. He spent half or more of his life helping others. He was the team leader at the Vet Center until he retired. He was a Vietnam War veteran. He and I both got involved in disaster relief efforts. He helped after 9/11 and responded to the aftermath of many hurricanes. He left a big footprint on the world by helping others. I miss him terribly

PAULA RAPPE

Sworn to before me this
_11_ day of July, 2022

Notary Public

VICKY JO CHANDLER
Notary Public - State of Florida
Commission # GG 950952
My Comm. Expires May 9, 2024

3

**Debra J. Relyea**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In Re:

TERRORIST ATTACKS ON                          03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

-------------------------------------------------------------X    **AFFIDAVIT OF**
GEORGIA M. ASCIUTTO, et al.,                       **DEBRA J. RELYEA**


                                    Plaintiffs,        20-CV-00411 (GBD)(SN)

                    v.

ISLAMIC REPUBLIC OF IRAN,

                                    Defendant.
-------------------------------------------------------------X
STATE OF NEW YORK       )
                                        : SS.:
COUNTY OF CHENANGO  )

DEBRA J. RELYEA, being duly sworn, deposes and says:

1.      I am a plaintiff in the within action, am over 18 years of age, and reside at 29 Elm
Street, Norwich New York 13815.

2.      I am currently 68 years old, having been born on November 4, 1953.

3.      I am the wife of Larry Scott Relyea, upon whose death my claim is based, and
submit this Affidavit in connection with the pending motion for a default judgment and in
support of my solatium claim.

4.      My husband passed away from Chronic Obstructive Pulmonary Disease (COPD)
on October 8, 2015, at age 55. It was medically determined that this illness was causally
connected to his exposure to the toxins resulting from the September 11, 2001, terrorist attacks.

5.      Larry and I were married in 1989, and we had a very good marriage. He was a
military recruiter. We adopted a little girl who was about six years old, but we had been taking
care of her since she was ten weeks old. Larry had a great relationship with our adopted
daughter. We had to fight really hard to adopt her. After our first daughter, we adopted another
child into our family, plus a (biological) grandchild. Larry was "dad" to all of them. When

Larry was home from work, he'd spend every minute with our kids. We loved to do all sorts of recreational activities as a family. Larry would always drive.

6.      Larry always worked with the National Guard. On 9/11/2001, minutes after the attacks began, he received a phone call to respond to Oneonta, New York. From there, he was dispatched to New York City. He was on-site at Ground Zero from the day it happened until the end of November 2001. He was quite close to the towers themselves. I know he wasn't given any type of facial mask or proper equipment. Before 9/11, Larry didn't have any health issues.

7.      Larry had a part-time job teaching X-Ray technicians. He agreed to have a chest X-Ray done, and the technicians started to notice something wrong with his lungs. From there, it went downhill. In 2009 or 2010, he started having minor heart attacks and breathing problems. Many times, we had to have the ambulance come. He was on many, many medications and inhalers. If those medications didn't work, we had to transfer Larry to the hospital. We even had to send him to the VA Hospital in Syracuse.

8.      He tried to stay in the military, but they would call me from his job because a few times they had to take him to the hospital. It got to the point where he couldn't even go to work. He was going to retire soon anyway, but they asked him to retire sooner. He was out on medical retirement, an honorable discharge.

9.      In the last two years before his death, his illness affected his brain. He became despondent, and he didn't want to do anything. It was difficult for him to breathe, and he had heart problems. Larry became mean—he never, in our marriage, had a mean bone in his body. He was never verbally mean until the last two years. I attributed this to the fact that oxygen couldn't get to his brain, and he was irritated. He really had a significant personality change. We would argue, which was very abnormal. He would yell, argue, and take everything I said the wrong way. He pulled away from the kids, who were younger at the time. They were five, six, and seven years old. The kids would get on his nerves very easily. We couldn't do any of the recreational activities we usually did.

10.      I didn't know the full extent of Larry's illness. If he needed me to bring home some medication, I would bring it. But he didn't complain, so I never knew the true extent of his suffering until I got the death certificate. Two weeks before his death, Larry was rushed to the emergency room for a heart attack, which I never knew happened. Larry demanded to be

2

released from the hospital—he wanted to be at home with family. Ultimately, he died at home. Unfortunately, our three young daughters saw him the moment he died and that really impacted them mentally.

11.     Our home payments were expensive, and after he was medically discharged from the National Guard, we struggled a bit financially. After Larry's death, I almost lost the house due to taxes. Our daughters struggle. Our 16-year-old daughter wants to drop out of school because she has a lot of emotional issues, and I'm nervous that she won't be able to work. I no longer own a vehicle, because I can't afford it. I have some health problems of my own, so I can't work. I have my hands full raising my three daughters. With Larry gone, I have to do all the work around the house. I now have to hire people to do the different jobs that he'd usually do. He is greatly missed by his family and community.

DEBRA J. RELYEA

Sworn to before me this
25th day of July, 2022

Notary Public

JACKIE M. BRUNSCHMID
Notary Public - State of New York
No. 01BR6013020
Qualified in Chenango County
My Commission Expires Sept. 8, 2026

3

**Jay Relyea**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In Re:

TERRORIST ATTACKS ON                           03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

------------------------------------------------------------X     **AFFIDAVIT OF**
GEORGIA M. ASCIUTTO, et al.,                                      **JAY RELYEA**


                                    Plaintiffs,          20-CV-00411 (GBD)(SN)


                       v.


ISLAMIC REPUBLIC OF IRAN,

                                    Defendant.
------------------------------------------------------------X
STATE OF NEW YORK        )
                         : SS.:
COUNTY OF CHENANGO )

     JAY RELYEA, being duly sworn, deposes and says:

     1.    I am a plaintiff in the within action, am over 18 years of age, and reside at 29 Elm Street, Norwich, New York 13815.

     2.    I am currently 47 years old, having been born on April 20, 1975.

     3.    I am the son of Larry Scott Relyea, upon whose death my claim is based, and submit this Affidavit in connection with the pending motion for a default judgment and in support of my solatium claim.

     4.    My father passed away from Chronic Obstructive Pulmonary Disease (COPD) on October 8, 2015, at the age of 55. It was medically determined that this illness was causally connected to his exposure to the toxins resulting from the September 11, 2001, terrorist attacks.

     5.    My dad and I were really close and spent a lot of time together. I would often drive him to work, and we would do a lot of errands together—shopping and things like that. We would always joke with each other and have a good time. We did a lot of family picnics. My father worked as an X-Ray technician for many years. He would share stories of his time in the military and in the National Guard. He told me about his years in school. He loved to work

and didn't want to retire, until the respiratory illness forced him to retire. I also had a sister, who I was very close with. In 2004, she tragically died in a car crash. That hit me very hard. It was a lot to handle. After she passed away, and then my father, it seemed like so many people in my life were dying.

6.     My dad worked on the clean-up efforts after the World Trade Center attacks. I'm not 100% sure how long he was there for. He participated in the recovery through the National Guard. My father worked at Ground Zero from 9/11/2001 through November 2001.

7.     Days after 9/11/2001, my father started to have a nagging cough. He would tell me that something felt wrong. Soon after, maybe a week or so, he called me and said that he needed to go to the hospital. We brought him to the hospital, and he was diagnosed with COPD. After that, his breathing issues worsened.

8.     My father needed special inhalers and medications for his COPD. He also used a nebulizer.

9.     I was worried about the financial burden on my family after my father passed. I also thought we would receive some sort of benefit from the government after my father's passing, but we didn't get that. My father had told me I could receive thousands of dollars in benefits. Now, I have to support myself and my mother. It's very difficult financially.

10.     I became very depressed when my father got sick. It's hard to know the full emotional impact of his illness on my life. I was one of my dad's primary caretakers, and I was so close with my dad. All the activities we would do together pretty much stopped. I'm still suffering, depressed, and sad about my father's passing.

_____
JAY RELYEA

Sworn to before me this
27th day of July, 2022

_____
Notary Public   SHERI L. FOWLSTON
Notary Public, State of New York
Residing in Chenango County
My commission expires 5/24/23

2

**Victor Joseph Cino**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In Re:

TERRORIST ATTACKS ON                                    03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

------------------------------------------------------------X    **AFFIDAVIT OF**
                                                        **RICHARD RIZZO on behalf of**
GEORGIA M. ASCIUTTO, et al.,                            **VICTOR JOSEPH CINO'S**
                                                        **ESTATE**


                                        Plaintiffs,     20-CV-00411 (GBD)(SN)

                v.

ISLAMIC REPUBLIC OF IRAN,

                                        Defendant.
------------------------------------------------------------X

STATE OF NEW YORK        )
                         : SS.:
COUNTY OF NEW YORK       )


        RICHARD RIZZO on behalf of VICTOR JOSEPH CINO's ESTATE, being duly sworn,

deposes and says:

        1.      I am over 18 years of age and reside at 15 West 24th Street, Apt. 2, New York, New

York 10010.

        2.      I am the son of Anita Rizzo-Cino, upon whose death her husband, Victor Joseph

Cino's claim is based.

        3.      My mother's husband, Victor Joseph Cino, was a plaintiff in the within action and

was pursuing his own solatium claim based on the illness and death of his wife, Anita Rizzo-

Cino.

        4.      Victor passed away on July 2, 2022, subsequent to the commencement of the

within action. Victor's family is currently working on having a representative of his estate

appointed. In the meantime, I submit this affidavit on behalf of Victor's estate in connection

with the pending motion for a default judgment and in support of his solatium claim. I am fully familiar with and personally observed what Victor experienced during the time of my mother's illness and death.

5.        Victor's wife, Anita Rizzo-Cino, passed away from ovarian cancer on August 25, 2013. It was medically determined that this illness was causally related to her exposure to the toxins resulting from the September 11, 2001, terrorist attacks.

6.        Victor married my mother around the time I was finishing high school and starting college. As a result, I didn't witness their life together on a daily basis once I went to college. However, over the years I came to know Victor quite well. My mother and Victor had a very close relationship and shared many common interests. They both liked traveling and would take many trips, although not as often as they would have liked. Victor very quickly became an integral part of our family, and we spent a lot of time together. After I had children of my own, my mother was a loving grandmother and Victor became involved in their lives as well. I recall many occasions when Victor and my mother would take trips to Florida, and he would play golf with my uncle and me. Seeing Victor get along with her family made my mother quite happy. During their time off, my mother and Victor liked to vacation in Jamaica and the Caribbean. A number of times they invited me and my children to join them, and everyone had a great time. Victor was quite a movie buff and often took my mother out to dinner and a movie. Together, Victor and Anita cherished building a home and spending time with family.

7.        My mother worked as a court reporter just northeast of the World Trade Center site. She worked for over ten years in the New York State Court System in lower Manhattan. This required her to commute to lower Manhattan on a daily basis. After 9/11, my mom continued her work as a court reporter for several years, up until the time of her cancer diagnosis.

8.        My mother and Victor didn't share too much about her initial cancer diagnosis with me until right before her first surgery. This was sometime around 2008. Following her surgery, her doctors were optimistic and told her that women with ovarian cancer would be in the clear for three to five years before a recurrence. Unfortunately, right around that time, three to four years later, her cancer reappeared. She went through some very difficult chemotherapy.

The chemotherapy was rife with painful side effects, which left her tired and weak. At that time, Victor worked tirelessly to make sure that she received the most effective care possible. In conjunction with me and my aunt, Victor was instrumental in finding and taking my mother to doctors and treatments that we felt could offer the best care. When things didn't seem to be helping her, my mom was essentially ready to give up and let things take their course. She was experiencing so much suffering, and her condition continued to deteriorate.

9.      This was an especially difficult time for Victor. In addition to considering his wife's care and administering various aspects of her treatment, he was now responsible for the upkeep of their household as well. When my mother was healthy, she took care of the daily cooking and cleaning. Following her surgery, she was no longer able to do those things and became dependent on Victor to do them, in addition to driving her to all of her doctor appointments. Eventually, Victor hired a housekeeper and engaged other contractors to make sure their home was being maintained. My mom was in so much discomfort during this time, and Victor often stated that it was difficult to see her in so much pain.

10.      Victor was an optimist when it came to my mother's illness. Unfortunately, with so many drastic decisions related to her care as the cancer progressed, there was a toll on him mentally and emotionally. This was especially evident in the months and years after my mother passed away. Victor became quite angry with some of the decisions made by her doctors and believed that they could have done more for her. Much of this anger translated to additional problems in Victor's life, and he began to argue with other residents in his co-op building. Ultimately, this led to Victor being ousted from the home that he had shared with my mother. Under my mother's will, the co-op was not left to Victor; and as a result of his anger, frustration and behavior triggered by my mother's death, the co-op board opted to remove him.

11.      When my mother became ill, Victor was dedicated to her care. He spent most of his time assisting her with doctor's appointments and treatments, all while maintaining his job as a real estate agent. Unfortunately, my mother's illness didn't afford him much time to prepare listings and show properties. As a result, this impacted him financially. He was also forced to incur additional costs related to the upkeep of their apartment.

12.      The loss of my mother was very hard on Victor. He was a good man who truly loved her and was dedicated to her. Following her death, Victor struggled with grief and rage

3

for the remainder of his life, some of which had negative consequences. It truly was a tragedy all the way around.

_____
RICHARD RIZZO on behalf of
VICTOR JOSEPH CINO's ESTATE

Sworn to before me this
28 day of July, 2022

_____
Notary Public

NICOLE E PELLETIER
Notary Public - State of New York
NO. 01PE6433522
Qualified in Suffolk County
My Commission Expires May 16, 2026

4

Tracey Lin Jackson

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

In Re:

TERRORIST ATTACKS ON                                    03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

-------------------------------------------------------------X    **AFFIDAVIT OF**
                                                                  **TRACEY LIN JACKSON**
GEORGIA M. ASCIUTTO, et al.,

                                      Plaintiffs,          20-CV-00411 (GBD)(SN)

              v.

ISLAMIC REPUBLIC OF IRAN,

                             Defendant.
-------------------------------------------------------------X

STATE OF NEW YORK   )
                    : SS.:

COUNTY OF ERIE      )

      TRACEY LIN JACKSON, being duly sworn, deposes and says:

      1.      I am a plaintiff in the within action, am over 18 years of age, and reside at 185 Bielak Road, Orchard Park, New York 14127.

      2.      I am currently 46 years old, having been born on September 18, 1975.

      3.      I am the daughter of Gregory Alan Waters, upon whose death my claim is based, and submit this Affidavit in connection with the pending motion for a default judgment and in support of my solatium claim.

      4.      My father passed away from tongue cancer on July 4, 2013, at age 60. It was medically determined that this illness was causally connected to his exposure to the toxins resulting from the September 11, 2001, terrorist attacks.

      5.      My father and I were very close, and we did many things together. He was a big part of my life and my kids' lives. Family is very important to all of us, and so we always lived close to each other and tried to do family activities together. For example, if any of the kids had a sports game, he would always try to be there with my mom and the rest of us. My daughter was the first of the grandchildren and the only one for a while, and so they had a very close

bond. She loved her papa, and he made her a priority in his life for many years. Even since his passing, she still does not forget the close relationship she had with my father and thinks about him all the time. My son, like the rest of us, had a good relationship with my father as well, even though he was younger at the time my father was sick.

6.      My father was an ironworker working in New York on the Williamsburg Bridge at the time of the September 11, 2001, terrorist attacks. We were on the phone together discussing what happened when the second plane hit the South Tower. We both realized at that time what was happening. He continued to work in the Ground Zero area in the aftermath of the attacks, and I remember him telling me horrible stories of his experience and the things that were found in the area. It was a very emotionally challenging experience for him.

7.      I remember the day that my parents came over to my house together to tell me that my father had been diagnosed with cancer. It was a hard pill to swallow for me. I had been worried about his health for a few weeks since he had been sick with a sore throat and cough. He was unable to find a reason or get answers until he ultimately got the cancer diagnosis. This was a blow to the whole family, me included.

8.      I never missed one of my father's doctor's appointments. My mother was still working at that time and had to stay employed to afford the various copays, and so I would go to all the appointments with him. I had constant worry whenever we would go to his radiation or chemotherapy treatments, and I would wonder how he would be before we would leave together for any of his appointments. Some days, we would meet, and he would be happy. But other days, he would be irate and upset. It was an emotional and mental drain on me, but despite this, I would still stay with him during his appointments because I felt it was something I needed to do.

9.      My father was worried about how my mother and the family would be if he passed away, and so he underwent his treatments and fought his cancer. I would support and encourage him throughout his whole fight. However, his health continued to get progressively worse, and eventually he ended up on oxygen. After undergoing his chemotherapy treatments for some time, he told the doctor that he had had enough. I remember crying in the room with him and telling him that he could not give up. He told me that he had been through enough and that he could not do it anymore. We all realized at that point that he could not continue with his treatments.

10.     My father's cancer diagnosis had a huge emotional impact on me. We were very close to each other, and he was only 60 years old when he passed away. I feel like we all missed out on a lot of time with him and are still missing out.

11.     I spent much of my time caring for and helping my dad while he was sick and fighting his cancer. Despite the many chemotherapy and radiation treatments we went to together, he would ultimately pass away from his cancer. I still get upset thinking back on this experience and time in my life.

TRACEY LIN JACKSON

Sworn to before me this
*11th* day of July, 2022

Notary Public

BARBARA A. DIANGELO
No. 01DI6205235
Notary Public, State of New York
Qualified in Erie County
My Commission Expires 05/04/20 *25*

**Gregory Alan Waters Jr.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In Re:

TERRORIST ATTACKS ON                               03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

-------------------------------------------------------------X   **AFFIDAVIT OF**
GEORGIA M. ASCIUTTO, et al.,                       **GREGORY ALAN WATERS, JR.**

                                    Plaintiffs,         20-CV-00411 (GBD)(SN)

                    v.

ISLAMIC REPUBLIC OF IRAN,

                                    Defendant.
-------------------------------------------------------------X
STATE OF NEW YORK        )
                                          : SS.:
COUNTY OF ERIE             )

GREGORY ALAN WATERS, JR., being duly sworn, deposes and says:

1.      I am a plaintiff in the within action, am over 18 years of age, and reside at 1728 Lakeview Road, Lake View, New York 14085.

2.      I am currently 43 years old, having been born on May 8, 1979.

3.      I am the son of Gregory Alan Waters, upon whose death my claim is based, and submit this Affidavit in connection with the pending motion for a default judgment and in support of my solatium claim.

4.      My father passed away from tongue cancer on July 4, 2013, at the age of 60. It was medically determined that this illness was causally connected to his exposure to the toxins resulting from the September 11, 2001, terrorist attacks.

5.      I was very close with my father, and he was more of a best friend to me. We did everything together, and he taught me everything I know. I played football my whole life, and he never missed a game of mine. He was constantly walking up and down the sideline cheering me on. He was a strong man with many great qualities, and he always wanted to provide for his family. He would always be down working in the city and taking extra side jobs when back

home – whatever it took. Even though my parents' financial situation was tight while we were all growing up, he made sure that we still took a family vacation together. For example, we took a trip to Myrtle Beach as a family. He made me the person I am today. He is a hero to me, and it is an honor to be Gregory Alan Waters, Jr. I continued this tradition and named my son after him. I am super thankful for what he taught me and how he provided for our family.

6.      On the day of the September 11, 2001, terrorist attacks, my father was working on the Williamsburg Bridge and watched the second plane hit the South Tower. His first thought was to call home and talk to his family, but he then went to help right away. I remember him telling me stories of the generosity and outpouring of help from people in the aftermath of the attacks, but also the emotional difficulties of seeing people crying and the physical difficulties of all the dust and smell. There were so many emotions and, every time we spoke with him, it was hard to believe what he was telling us.

7.      I remember I was hunting and sitting in my tree stand when my father called to tell me that he had been diagnosed with cancer. He would normally text me when I was hunting, and so I immediately knew that it was an important phone call that I needed to answer. That call was the end of my hunting that night – I immediately climbed out of my tree stand and went home. It was a long ride home that night, and I will never forget it. It was a very sad moment for me, and my heart sunk.

8.      My father began undergoing treatments after his diagnosis. I remember one operation he had distinctly because, when they wheeled him out of the operating room, he looked like a completely different person. Half of his face looked like it was missing. It was awful, and I wish I was not there to see that. Throughout all the operations and procedures I saw him go through, that was by far the worst. It is not something I want to remember.

9.      He also became moody while undergoing his treatments. You never knew what mood he might be in when going to visit his house. I would still go though, because I wanted to be with him, regardless of what mood he might be in on any given day. It was difficult to experience seeing him go through chemotherapy treatments - losing his hair, the weakness, and how he was always sleeping. You could see him deteriorating physically from the outside. He was no longer the big strong iron worker who we grew up knowing. It was a struggle and very sad for all of us to witness his health decline.

10.    It killed me to watch my father suffer and endure the chemotherapy and other treatments. He had always told me that he did not want to suffer through his illness or have to undergo chemotherapy and radiation treatments. But because he wanted to be there for his family, he tried his hardest to be around as long as possible. I feel we got ripped off as I think he should still be here with us.

11.    My father was always worried about my mom, and he would ask me to make sure she was taken care of after he passed. He had always done whatever he could to make sure she was taken care of, and I promised him that we would all take care of her, and we do. We all live close together now.

12.    My father and I bonded over, among other things, our love for football and our name. My son, who shares our name, is now old enough to play football. It is like it has come full circle for me. However, my father was not around for my son's first football game. That was a very emotional day for me. I could feel that he was there with us even if he was not physically present. I also wish we had more photos of us three Gregs together. In the few we do have, you are reminded of my father's illness because you can see the marks on his face and neck from the cancer and surgeries that he had to undergo.

13.    The impact of my father's cancer on my life has been huge. We all wish my father could still be here with us. And because of my dad's illness, I find myself constantly looking at the clock whenever the time is 9:11, every morning and evening. It serves as a reminder for me of my father and what he means to me. He is missed dearly.

GREGORY ALAN WATERS, JR.

Sworn to before me this
12th day of July, 2022

Notary Public

DENISE L. ERNST
Lic. #01ER5030646
Notary Public-State of New York
Qualified in   Erie County
My Commission Expires   JULY 18, 2026

# Peggy Waters

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In Re:

TERRORIST ATTACKS ON                              03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

-------------------------------------------------------------------X          **AFFIDAVIT OF**
GEORGIA M. ASCIUTTO, et al.,                       **PEGGY WATERS**


                                    Plaintiffs,        20-CV-00411 (GBD)(SN)


                        v.


ISLAMIC REPUBLIC OF IRAN,


                                    Defendant.
-------------------------------------------------------------------X
STATE OF NEW YORK        )
                         : SS.:
COUNTY OF ERIE           )

        PEGGY WATERS, being duly sworn, deposes and says:

        1.        I am a plaintiff in the within action, am over 18 years of age, and reside at 12 Faahs

Drive, Orchard Park, New York 14127.

        2.        I am currently 68 years old, having been born on December 2, 1953.

        3.        I am the wife of Gregory Alan Waters, upon whose death my claim is based, and

submit this Affidavit in connection with the pending motion for a default judgment and in

support of my solatium claim.

        4.        My husband passed away from tongue cancer on July 4, 2013, at age 60. It was

medically determined that this illness was causally connected to his exposure to the toxins

resulting from the September 11, 2001, terrorist attacks.

        5.        My husband and I met when I was eight years old. My family moved to the street

he was living on, and so we grew up together only three houses apart. We became high school

sweethearts and were married as soon as I graduated. We were friends and a couple for a very

long time and did everything together. For example, we would go on vacation together every

year. We owned a camper and would use it to camp all summer long. We also had a boat and

would go boating on Lake Erie together.

6.      On the day of the September 11, 2001, terrorist attacks, Gregory was working on the Williamsburg Bridge and watched the planes hit the towers. He immediately left work and went toward the World Trade Center area after witnessing this, and he continued to work in the Ground Zero area for about a month in the aftermath of the attacks. He did not feel sick at the time, but he was breathing in a lot of the dust and debris that was in the area.

7.      One weekend about three years after the attacks, Gregory came back from New York and was not feeling well. He was very weak and had a difficult time breathing, so I took him to the emergency room, where they began conducting various tests. It was there that he was diagnosed with cancer. He had been feeling fine in the interim period.

8.      Gregory underwent many treatments and procedures in an attempt to treat his cancer. He had radiation and chemotherapy treatments for four years. He also made eight trips to the emergency room and underwent three surgeries. He had trouble breathing and was on oxygen, and overall, he became very sick.

9.      One thing led to another with his illness. It began with cancer in his throat, which then led to cancer in his neck and then later in his lungs. Eventually, the doctor told him he only had about two months to live. This was devasting for him, and he became very mad at the world as a result.

10.     My husband was a strong man, and he tried his best to recover and continue doing things. For example, coming back from his chemotherapy treatments, he would try and cut the grass. But he was sick and was suffering through a lot of pain. He broke out in rashes and had a lot of bleeding and coughing. In the final months of his life, he was undergoing hospice care in our home and was confined to a hospital bed.

11.     Gregory also had to take a lot of different pain medications and in the end, he was on morphine, which I had to give to him every two hours, including throughout the night. My sister-in-law would help me with this. Gregory would become combative during this and would try to fight us. He would even try and get out of his bed but would fall. This was a horrible experience for me, and Gregory had become downright mean in the final months of his life due to his anger and frustration with his terminal cancer diagnosis.

12.     As a result of these issues, I had to call hospice for help one night, and they came to pick him up. Our entire family followed him to hospice that night and stayed on cots in the

2

room with him. He passed away that very next morning.

13.    Our children were adults by the time of Gregory's illness, and they had all married and moved out. They would come visit often though, and they would bring the new grandchildren they were having at the time. Gregory would try to hold the grandchildren and be with them. Because Gregory knew that his cancer was terminal, he would have difficult conversations with us all and would tell us how proud he was.

14.    We had health insurance while Gregory was sick, but our plan did not cover his radiation treatments. The bills for this treatment had a negative financial impact on us, and so our kids organized a benefit for him to try and raise money. This did help us a lot. But when Gregory passed away, I was not yet old enough to receive his pension or social security. This led to months of no income for me following his passing. I did the best I could with making the payments for our home.

15.    Gregory's illness had a negative emotional impact on my life, and it was a very difficult experience for me. Our children and I went through years of his suffering.

_Peggy Waters_   7-12-2022
PEGGY WATERS

Sworn to before me this
_12_ day of July, 2022

_Barbara A. Diangelo_
Notary Public

BARBARA A. DIANGELO
No. 01DI6205235
Notary Public, State of New York
Qualified in Erie County
My Commission Expires 05/04/20_25_

3