# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| *In re Terrorist Attacks on September 11, 2001* | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977 (GBD) (SN)
*Bauer et al. v. al Qaeda Islamic Army, et al.*, 02-cv-7236 (GBD) (SN)
*Burlingame v. Bin Laden, et al.*, 02-cv-7230 (GBD) (SN)
*Schneider et al. v. Islamic Republic of Iran*, 02-cv-7209 (GBD) (SN)

# MEMORANDUM OF LAW IN SUPPORT OF MOVANTS'
# *EX PARTE* EMERGENCY MOTION FOR ORDER OF ATTACHMENT

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT .................................................................................................. 2

BACKGROUND ........................................................................................................................ 4

ARGUMENT ............................................................................................................................. 8

I.      MOVANTS ARE ENTITLED TO AN ATTACHMENT ORDER AGAINST TALIBAN
        ASSETS ........................................................................................................................ 9

II.     THE DAB ASSETS ARE SUBJECT TO ATTACHMENT UNDER TRIA ................... 12

III.    THIS COURT SHOULD GRANT MOVANTS' EMERGENCY MOTION *EX PARTE* 16

CONCLUSION ......................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Banco Internacional, S.A. v. Vilaseca*,
631 N.Y.S.2d 468 (N.Y. Sup. Ct. 1994) ........................................................................ 17

*Calderon-Cardona v. Bank of N. Y. Mellon*,
770 F.3d 993 (2d Cir. 2014) ............................................................................................ 12

*Cap. Ventures Int'l v. Republic of Argentina*,
443 F.3d 214 (2d Cir. 2006) .......................................................................................... 8, 9

*Concord Asset Mgmt., Inc. v. Intercredit Corp.*,
No. 92 CIV. 7756 (JFK), 1992 WL 373477 (S.D.N.Y. Dec. 3, 1992) ........................... 16

*Correspondent Servs. Corp. v. J.V.W. Investments Ltd.*,
No. 99 CIV. 8934 (RWS), 2000 WL 1718785 (S.D.N.Y. Nov. 14, 2000) ...................... 12

*Cty. of Oswego Indus. Dev. Agency v. Fulton Cogeneration Assocs.*,
05-cv-926, 2006 WL 752772 (N.D.N.Y. Mar. 22, 2006) ................................................ 11

*Elton Leather Corp. v. First Gen. Res. Co.*,
138 A.D.2d 132 (1st Dep't 1988) ................................................................................... 11

*Herzi v. Ateliers De La Haute-Garonne*,
15-cv-7702, 2015 WL 8479676 (S.D.N.Y. Oct. 13, 2015) ............................................. 16

*ITC Entm't v. Nelson Film Partners*,
714 F.2d 217 (2d Cir. 1983) ........................................................................................... 10

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.*,
306 F. Supp. 2d 482 (S.D.N.Y. 2004) ............................................................................... 8

*Kirschenbaum v. 650 Fifth Ave. & Related Props.*,
830 F.3d 107 (2d Cir. 2016) ...................................................................................... 14, 15

*Levin v. Bank of N.Y.*,
No. 09-CV-5900, 2011 WL 812032 (S.D.N.Y. Mar. 4, 2011) ....................................... 13

*Levinson v. Kuwait Finance House (Malaysia) Berhad*,
No. 21-2043, 2022 WL 3269083, (2d Cir. July 21, 2022) .......................................... 8, 13

*Owens v. Taliban*,
22-cv-1949,2022 WL 1090618 (S.D.N.Y. Apr. 11, 2022) ...................................... passim

*Smith v. Islamic Emirate of Afghanistan,*
    No. 03-mc-2169, 2005 WL 3518010 (D.D.C. Feb. 2, 2005) ........................................... 13

*TAGC Mgmt., LLC v. Lehman,*
    842 F. Supp. 2d 575 (S.D.N.Y. 2012) ............................................................... 10

*Thornapple Assocs., Inc. v. Sahagen,*
    06-cv-6412 (JFK), 2007 WL 747861 (S.D.N.Y. Mar. 12, 2007) .................................... 11

*Unitrans Int'l, Inc. v. Gulf & Orient S.S. Lines, Inc.,* 97-cv-801 (WK),
    2002 WL 1205744 (S.D.N.Y. Mar. 6, 2002) ...................................................... 16

**Statutes**

18 U.S.C. § 2331 ....................................................................................... 13

22 U.S.C. § 2556f ...................................................................................... 14

**Rules**

CPLR § 6201(1) ........................................................................................ 10

CPLR § 6211(b) ........................................................................................ 17

CPLR § 6212(a) ......................................................................................... 8

**Regulations**

31 C.F.R. §§ 594.310, 594.311 .......................................................................... 13

Blocked Persons,Specially Designated Nationals, Specially Designated Terrorists,
    ForeignTerrorist Organizations, and Specially Designated Narcotics Traffickers; Addition
    of Persons Blocked Pursuant to 31CFR Part 538, 31 CFR Part 597, or Exec. Order 13129,
    ............................................................................................... 14

**Executive Orders**

Exec. Order No. 13268 § 1 .............................................................................. 13

Exec. Order 13129, 64 Fed. Reg. 36,759 (July 4, 1999) ................................................ 14

**Other Authorities**

Justice for American Victims of Terrorism Act of 2022, H.R. 8219, 177th Cong. (2022) .......... 12

Ned Price (Department of State Spokesperson), Department Press Briefing-February 14, 2022,
    U.S. Department of State Press Briefing (February 14, 2022),
    https://www.state.gov/briefings/department-press-briefing-february-14-2022/ ................ 6

Plaintiffs in *Ashton v. al Qaeda Islamic Army*, 02-cv-6977 (GBD) (SN) ("Movants"),[1] respectfully submit this Memorandum of Law in support of their *Ex Parte* Emergency Motion to Attach funds of Da Afghanistan Bank ("DAB" and the "DAB Assets") currently held at the Federal Reserve Bank of New York ("FRBNY").

Movants continue to support the equitable distribution of the DAB Assets and the filing of *In re Approximately $3.5 Billion of Assets on Deposit at the Federal Reserve Bank of New York in the Name of Da Afghanistan Bank*, 22-cv-3228 (GBD) (SN). In the alternative, as articulated in the *Ashton* Plaintiffs' Memorandum of Law in Opposition to the *Havlish* and *Doe* Creditors' Motion for Partial Turnover, (Apr. 20, 2022), ECF No. 7894, Movants believe that the Court can and should fashion an equitable remedy for the division of the DAB Assets that would not unreasonably privilege a small group of terrorism victims over hundreds of other identically situated victims.[2] Movants seek this Attachment Order to protect their rights and ensure that they are not foreclosed by other creditors from obtaining recovery. Movants are not seeking an advantage but rather continue to support an equitable distribution of the DAB Assets to all victims of Taliban-sponsored terrorism. To this end, if other claimants seek similar relief, Movants

---

[1] This motion is made on behalf of all *Ashton* Plaintiffs to which this Court's May 12, 2006 default liability judgment against the Taliban applied. This includes all defendants included up to and through the Sixth Amended Consolidated Master Complaint. ECF No. 1797. All of the *Ashton* Plaintiffs now seeking an order of attachment—Movants—were included in the suit as of the filing of the Sixth Amended Consolidated Master Complaint. *Ashton*, 02-cv-6799 (GBD) (SN) (S.D.N.Y.), ECF No. 465.

[2] Movants note, again, that while a "Framework Agreement" has been discussed on the record, *see, e.g.,* ECF No. 7893, none of the parties to this putative agreement have ever affirmatively disclosed its terms, or denied Movants' understanding of that agreement's terms—that the families of 47 out of 2,977 of the victims murdered in the terrorist attacks on September 11, 2001, would receive $1.8 billion of the DAB assets; insurance companies would receive $600 million of the DAB assets; and the remaining 2,930 9/11 Families would have to divide up the remainder, with each family receiving about one percent of what the "first in priority" 47 families would obtain. ECF No. 7962, at 3.

respectfully request that the Court grant attachment or writs of execution simultaneously so as to preclude any potential claims to priority.

## PRELIMINARY STATEMENT

Movants are individuals harmed as a consequence of the 9/11 terror attacks, including individuals harmed themselves, and the estates and surviving family members of over 800 victims of the attacks. They consist of plaintiffs in the *Ashton* action, which was consolidated with the *Bauer*, 02-cv-7236, *Burlingame*, 02-cv-7230, and *Schneider*, 02-cv-7209, actions, and the plaintiffs in each of those actions join in this motion under the *Ashton* caption. Movants brought their lawsuits to hold the Taliban accountable for its conspiracy, aiding and abetting, and provision of material support to al Qaeda and the 9/11 hijackers and the harm caused on September 11, 2001, including the murder of Movants' family members.

Since 2003, Movants have litigated their claims as part of this multi-district litigation action, *In re Terrorist Attacks on September 11, 2001*, 03-md-1570 (GBD) (SN), in which many 9/11-related actions have been consolidated (the "9/11 MDL"). After obtaining liability judgments against the Taliban and Omar in May 2006, and final damages judgments against the Taliban's co-tortfeasor, Iran, Movants began moving in December 2021 for final damages judgments against the Taliban—seeking to extend to the Taliban those damages judgments the Court has already awarded them against Iran. Those motions for final damages judgments were dismissed in July 2022, without prejudice and with leave to refile in accordance with the dismissal order. And on July 27, 2022, Movants began refiling their motions for final damages judgments. *See, e.g.*, ECF Nos. 8274-75; 8278. The *Ashton* Plaintiffs' motion for final damages judgments, which is pending, alone seeks final compensatory damages awards against the Taliban in the amount of $10,491,535,243. *Id.* Movants now seek, in the interim, an order of attachment against the approximately $3.5 billion in DAB Assets blocked by Executive Order 14064 (the "Executive

2

Order").[3] Exec. Order 14064, 87 Fed. Reg. 8391 (2022). Movants easily meet the requirements for attachment under Article 62 of New York's CPLR.

*First*, Movants are likely to succeed on the merits of their claims. Indeed, they have more than mere causes of action—they have liability judgments against the Taliban. All that remains for the Court to determine is the precise quantum of damages to which each Movant is entitled. But even that should be a straightforward exercise, as Movants merely seek to obtain damages judgments in the same amounts already granted against Iran extended to the Taliban, Iran's joint tortfeasor. Movants also satisfy CPLR § 6201(1) because the Taliban is a nondomiciliary of New York. *See Owens v. Taliban*, 22-cv-1949, 2022 WL 1090618, *5 (S.D.N.Y. Apr. 11, 2022). Further, Movants have good reason to believe that the DAB Assets may be distributed imminently to other creditors and/or moved or unblocked by the United States, constituting another basis for the DAB Assets' prompt attachment.

*Second*, under § 201 of the Terrorism Risk Insurance Act ("TRIA"), the DAB Assets are subject to attachment in connection with Movants' claims against the Taliban. Movants possess liability judgments against the Taliban, which is a terrorist party, and the claims underlying those judgments arise from the terrorist attacks on September 11, 2001. Further, the DAB Assets in particular are available for attachment in satisfaction of Movants' judgments because DAB is an

---

[3] Movants seek attachment of the entirety of the approximately $3.5 billion in blocked DAB Assets. The *Ashton* Plaintiffs alone have moved for approximately $10 billion in compensatory damages. However, as discussed above, the *Ashton-Bauer*, *Ashton-Burlingame*, and *Ashton-Schneider* Plaintiffs join in this motion (as Movants) as liability judgment holders. They have refiled and/or are refiling their motions for final damages judgments in which they seek compensatory damages totaling approximately $5.7 billion. *See* ECF Nos. 8298-8300-4; 8376; 8379-8380-2; 8382 (*Ashton-Bauer* Plaintiffs' refiled motions); ECF Nos. 8335; 8337-1; 8337-2; 8341; 8363; 8364-1; 8364-2; 8366 (*Ashton-Burlingame* refiled motions); ECF Nos. 7805; 7806; 7815 (*Ashton-Schneider* original motions).

agency or instrumentality of the Taliban under TRIA, and the Assets are blocked pursuant to the Executive Order.

*Lastly*, Movants are entitled to an order of attachment *ex parte* under CPLR § 6211(a). Service upon the Taliban is impractical, as this Court has previously determined in connection with the *Havlish* and *Doe* Plaintiffs' turnover motions. Further, District Judge Valerie E. Caproni granted the *Owens* Plaintiffs an *ex parte* temporary order of attachment as to the DAB Assets, *Owens*, 2022 WL 1090618, at *3-5, and her Opinion and Order granting the *Owens* Plaintiffs' *ex parte* application for a pre-judgment order of attachment is highly persuasive authority supportive of Movants' factually and legally similar application here.

For these reasons, which are set forth more fully below, Movants satisfy the statutory criteria for an Attachment Order and the attached funds should be subject to levy until this action is fully adjudicated.

## **BACKGROUND**

On September 4, 2002, the *Ashton* Plaintiffs filed their first complaint against the alleged sponsors of the September 11, 2001 terrorist attacks, which included claims against defendants al Qaeda Islamic Army, the Taliban, and Muhammad Omar, among others. *See* 02-cv-6977 (S.D.N.Y.), ECF No. 1. That complaint was consolidated and amended several times. *See, e.g.*, 02-cv-6977 (S.D.N.Y.), ECF Nos. 2; 11; 32; 38; 111; 465. As reflected in the accompanying Declaration of Andrew J. Maloney, III ("Maloney Decl."), Movants are composed of a consolidated group of complainants represented by separate counsel, some of whom are also on the 9/11 MDL's Plaintiffs' Executive Committee. *See* Maloney Decl. ¶¶1-3.

Pursuant to this Court's order, Movants served the Taliban and Omar by publication. ECF No. 445, at 1, 8, 11. Verification of service was provided on March 16, 2005, and March 31, 2005,

for publication in both English and Arabic. ECF Nos. 709; 735.[4] The Taliban and Omar never answered, and Movants thereafter moved for a Certificate of Default and a default judgment, which this Court granted on May 12, 2006. ECF Nos. 1782-97 (referring to the defendants listed in Exhibit B to the *Ashton* Plaintiffs' motion, including the Taliban and Omar).[5] In other words, since May 12, 2006, Movants have possessed a liability default judgment against the Taliban and Omar, among others.

In 2015, Movants, among others, obtained default judgments against Iran, and the Court began issuing final damages judgments on a rolling basis, beginning on March 8, 2016. *See, e.g.*, ECF No. 3226. Beginning in December 2021, Movants then filed motions for final damages judgments against the Taliban, seeking to extend to the Taliban damages awarded against the Taliban's co-tortfeasor, Iran. *See, e.g.*, ECF Nos. 7489-91 (*Ashton* Plaintiffs). While Movants' motions for final damages judgments were pending, on February 11, 2022, President Joseph R. Biden issued the Executive Order, which blocked approximately $3.5 billion of DAB's assets at the FRBNY and directed that it be preserved to benefit "victims of terrorism". The express intention of the Biden Administration's directive was to provide all human "[v]ictims of terrorism,

---

[4] The publication notices directed the named defendants to the 9/11 MDL docket and advised them in both English and Arabic that they were required to answer the complaints on that docket, which sought, among other things, compensatory, treble, and punitive damages within 60 days. ECF Nos. 709, at 2; 735, at 2.

[5] This Court's default liability judgment was issued on May 12, 2006, and stated that it applied to all claims, plaintiffs, and defendants included up to and through the Sixth Amended Consolidated Master Complaint. ECF No. 1797. All of the Plaintiffs comprising Movants and now seeking an Order of attachment were included in the suit as of the filing of the Sixth Amended Consolidated Master Complaint.

5

including of the September 11, 2001 terrorist attacks," with "a full opportunity to set forth their arguments in court[.]"[6]

On July 11, 2022, this Court denied Movants' initial motions for final damages judgments (and related, later-filed motions seeking similar relief) without prejudice and with leave to refile, pursuant to the terms and procedures set forth in that dismissal order. ECF No. 8198. On July 27, 2022, Movants began refiling their motions for final damages judgments in a manner designed to comply with those procedures, along with a proposed order. *See*, e.g.*, ECF Nos. 8274-76; 8278 (*Ashton* Plaintiffs' refiled motion for final damages judgments).[7] The total compensatory damages for which Movants have moved (or will soon move) significantly exceeds the value of the blocked DAB Assets. For example, the *Ashton* Plaintiffs' motion for final damages judgments, which is pending, alone seeks final compensatory damages awards against the Taliban in the amount of $10,491,535,243. ECF Nos. 8274-75; 8278.[8]

This Court has already reviewed the *Ashton* Plaintiffs' (i) documentary evidence (such as copies of birth certificates, passports, and/or verified applications to the September 11, 2001 Victim Compensation Fund ("VCF")), or summaries of counsel; (ii) personal interviews and/or

---

[6] Ned Price (Department of State Spokesperson), *Department Press Briefing-February 14, 2022*, U.S. Department of State Press Briefing (February 14, 2022), https://www.state.gov/briefings/department-press-briefing-february-14-2022/.

[7] Counsel for the *Ashton-Schneider* Plaintiffs has not yet filed a motion for final judgment on damages following this Court's July 11, 2022 Order denying motions without prejudice to renew. ECF No. 8198. They will be refiling and again, as with the other *Ashton* Plaintiffs, seeking to extend to the Taliban damages judgements already granted against Iran.

[8] As previously referenced, the *Ashton-Bauer*, *Ashton-Burlingame*, and *Ashton-Schneider* Plaintiffs have refiled and/or are refiling their motions for final damages judgments in which they seek compensatory damages totaling approximately $5.7 billion. *See* ECF Nos. Nos. 8298-8300-4; 8376; 8379-8380-2; 8382 (*Ashton-Bauer* Plaintiffs' refiled motions); ECF Nos. 8335; 8337-1; 8337-2; 8341; 8363; 8364-1; 8364-2; 8366 (*Ashton-Burlingame* refiled motions); ECF Nos. 7805; 7806; 7815 (*Ashton-Schneider* original motions).

written communications; and (iii) expert economist reports in connection with the damages awards against co-defendant Iran. Movants' expert economist relied on documentary evidence, including economic expert reports, VCF applications, VCF work-papers and distribution plans, VCF determinations, underlying economic documents, VCF valuation files, tax submissions, and other earnings information, and applied generally accepted methodologies and assumptions to calculate the present value of economic losses to a reasonable degree of accounting and actuarial certainty. *See* Maloney Decl. ¶ 13. This Court also previously awarded damages to the estates of those *Ashton* Plaintiffs killed in the 9/11 terror attacks for conscious pain and suffering of each decedent in connection with claims asserted against defendant Iran at a value of $2,000,000. *Id.*

In addition, those *Ashton* Plaintiffs named in the Sixth Amended Complaint have asserted claims for solatium damages against the Taliban in the same amounts this Court granted them against Iran. This Court previously established the following schedule for solatium damages in this MDL:

| Relationship to Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

Counsel has confirmed the relationship between each decedent and the immediate family for whom solatium damages are sought and those *Ashton* Plaintiffs have liability judgments and pending damages judgments against the Taliban in the same amounts previously awarded against Iran. The continuing pendency of the *Ashton* Plaintiffs' refiled motion for final judgments, the efforts by insurance companies and a group representing only two percent of 9/11 Families to seize

all of the DAB assets (as part of their proposal for a highly inequitable distribution) and the Second

Circuit's recent decision in *Levinson v. Kuwait Finance House (Malaysia) Berhad*, No. 21-2043,

2022 WL 3269083, (2d Cir. July 21, 2022), stating that a district court can issue a pre-judgment

attachment order (as opposed to a writ of execution) prior to reaching decisions on other threshold

legal issues compels Movants to act to protect their interests in the DAB Assets—and the interests

of all of the 9/11 Families who could be severely and unduly prejudiced by the pending turnover

proceedings.

## ARGUMENT

Under Federal Rule of Civil Procedure 64, which incorporates the New York state

procedures set forth in Article 62 of the CPLR, Movants are entitled to attachment of the Taliban's

assets because: (1) "there is a cause of action"; (2) "it is probable that the plaintiff will succeed on

the merits"; (3) "one or more grounds for attachment provided in section 6201 exist"; and (4) "the

amount demanded from the defendant exceeds all counterclaims known to the plaintiff." CPLR

§ 6212(a); *see JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.*, 306 F.

Supp. 2d 482, 484–85 (S.D.N.Y. 2004). Movants easily satisfy each element. And "[a]lthough the

remedy [of attachment] is discretionary, the Second Circuit has made clear that where all the

statutory requirements have been satisfied, a district court has no option but to grant pre-judgment

attachment." *Owens*, 2022 WL 1090618, at *2 (citing *Cap. Ventures Int'l v. Republic of Argentina*,

443 F.3d 214, 222 (2d Cir. 2006)).

The DAB Assets are the proper subject of attachment because those funds may be available

under TRIA § 201 to satisfy Movants' judgments against the Taliban. TRIA § 201 provides,

"Notwithstanding any other provision of law, and except as provided in subsection (b), in every

case in which a person has obtained a judgment against a terrorist party on a claim based upon an

act of terrorism, . . . the blocked assets of that terrorist party (including the blocked assets of any

agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable." *Id*. Movants here have a liability judgment against the Taliban, the Taliban is a terrorist party, Movants' claims are based on an act of terrorism, DAB is an agency or instrumentality of the Taliban, and the DAB Assets have been blocked by the Executive Order.

Finally, pursuant to Local Civil Rule 6.1(d) and CPLR § 6211(a), Movants are entitled to obtain the requested order of attachment *ex parte*. The Taliban is a designated terrorist entity without a known address, and, as this Court and Judge Caproni have already recognized, it is especially difficult to serve. Further, the Taliban has acknowledged the various proceedings against the DAB Assets and declined to participate. Movants therefore have good and sufficient reasons for proceeding against the Taliban *ex parte*.

## I.   MOVANTS ARE ENTITLED TO AN ATTACHMENT ORDER AGAINST TALIBAN ASSETS

Movants' likelihood of success on the merits of their damages claims against the Taliban is high. Movants already possess liability judgments against the Taliban. *See* ECF Nos. 1782-97. The merits of Movants' claims against the Taliban, therefore, have already been adjudicated and resolved. Nor is there any reason to doubt that Movants will prevail on their damages claims. They have refiled, or will soon refile, their motions for final damages judgments. *See, e.g.* ECF Nos. 7489-91 (*Ashton* Plaintiffs' refiled motion). This Court already awarded damages to Movants against the Taliban's joint tortfeasor—Iran—and the pending (and/or soon-to-be refiled) motions merely request that the same damages be applied to the Taliban. Moreover, this Court has granted substantially similar motions for final judgments filed by the *Havlish* and *Federal Insurance* Plaintiffs and should do the same for Movants here.

Movants also have a basis for attachment under CPLR § 6201. "An order of attachment may be granted . . . where the plaintiff has demanded and would be entitled, in whole or in part, . . . to a money judgment" against a "nondomiciliary residing without the state." CPLR § 6201(1). "[A]ttachment under New York law solely for security purposes is appropriate only when it appears likely that a plaintiff will have difficulty enforcing a judgment." *TAGC Mgmt., LLC v. Lehman*, 842 F. Supp. 2d 575, 586–87 (S.D.N.Y. 2012) (citation omitted). Accordingly, in invoking CPLR § 6201(1), Movants must show that the foreign "defendant has assets within the State that could satisfy a judgment" and that their "fear that the judgment will not be satisfied" absent attachment of those assets "is reasonable." *Id.* at 586 (citation omitted). Those requirements are fully met here.

The Taliban plainly is a non-domiciliary of New York. *See Owens*, 2022 WL 1090618, at *5 (agreeing that the "non-domiciliary residing without the state . . . description aptly fits the Taliban") (internal quotation marks omitted). Additionally, "New York courts have long recognized" that the rationale for § 6201(1) is, in relevant part, "based on the assumption that there is much more propriety in requiring a debtor, whose domicile is without the state, *to give security for the debt*, than on one whose domicile is within." *ITC Entm't v. Nelson Film Partners*, 714 F.2d 217, 220 (2d Cir. 1983) (internal quotation marks omitted).

Movants' need to obtain security for the Taliban's debts cannot be overstated. For the past two decades, Movants and thousands of other victims have sought to hold the Taliban accountable for its role in sponsoring and facilitating the 9/11 attacks. Because the Taliban and its leadership are and have been subject to strict economic sanctions by the United States and others (including the United Nations Security Council), however, Movants and other victims of Taliban-enabled terrorism previously had little to no hope of identifying any assets that could be used to satisfy

their judgments against the Taliban. It was only as an extraordinary consequence of the Taliban's recapture of Afghanistan and the Executive Order that the DAB Assets were blocked and made subject to attachment under TRIA.

While the Executive Order has made the DAB Assets available, Movants will have difficulty enforcing their judgments against the Taliban as a consequence of the many judgments the Taliban owes to other creditors. And a defendant's deleterious financial position "may justify a plaintiff's fear that a potential judgment will not be satisfied and thus provide a ground for an attachment." *Thornapple Assocs., Inc. v. Sahagen*, 06-cv-6412 (JFK), 2007 WL 747861, at *8 (S.D.N.Y. Mar. 12, 2007). Indeed, courts routinely order attachment where a defendant owes "significant sums to other creditors" and lacks sufficient assets to satisfy a potential judgment. *Cty. of Oswego Indus. Dev. Agency v. Fulton Cogeneration Assocs.*, 05-cv-926, 2006 WL 752772, at *1–2 (N.D.N.Y. Mar. 22, 2006); *see also Elton Leather Corp. v. First Gen. Res. Co.*, 138 A.D.2d 132, 134 (1st Dep't 1988) (upholding attachment where defendants had failed to make payments to two secured creditors). As recognized by Judge Caproni, that is certainly the case here, where, across the 9/11 MDL and the *Owens* action, five different groupings of plaintiffs with claims against the Taliban have been vying in turnover proceedings to recover the DAB Assets in satisfactions of judgments against the Taliban that exceed the approximately $3.5 billion in DAB Assets. *See Owens*, 2022 WL 1090618, at *5 ("The unfortunate reality that the numerous victims of acts of terror perpetrated by the Taliban may not collect on judgments is not lost on the Court[.]"). Movants are entitled under these circumstances to protect their rights with respect to the DAB Assets via attachment, just as others have done.

Additionally, although approximately $3.5 billion in DAB Assets has been blocked and made available to satisfy claims by U.S. victims of terrorism, it is entirely possible that these funds

could be dissipated absent judicial attachment. The U.S. House of Representatives is currently considering legislation which would transfer "[a]ll funds of Da Afghanistan Bank that have been transferred or have been directed to be transferred into the consolidated account held at the Federal Reserve Bank of New York" pursuant to the Executive Order into the U.S. Victims of State Sponsored Terrorism Fund (the "USVSST"). *See* Justice for American Victims of Terrorism Act of 2022, H.R. 8219, 177th Cong. (2022). This uncertainty confirms the need for immediate attachment. *See Correspondent Servs. Corp. v. J.V.W. Investments Ltd.,* No. 99 CIV. 8934 (RWS), 2000 WL 1718785, at *4 (S.D.N.Y. Nov. 14, 2000) (continuing levy is appropriate where it is needed "to avert the chance that the funds will be transferred out of the jurisdiction"). Thus, the difficulty of enforcing their judgments against the Taliban, and Movants' justifiable concerns that the DAB Assets could be dissipated in the absence of their judicial attachment, necessitate Movants' application for their Attachment Order.

## II.   THE DAB ASSETS ARE SUBJECT TO ATTACHMENT UNDER TRIA

Under TRIA § 201, the DAB Assets are subject to attachment to satisfy Movants' claims against the Taliban. Specifically, § 201 provides, "Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, . . . the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable." *See also Calderon-Cardona v. Bank of N. Y. Mellon*, 770 F.3d 993, 998-99 (2d Cir. 2014). Under TRIA, attachment requires a likelihood of success in showing (i) a judgment, (ii) against a terrorist

party, (iii) related to an act of terrorism, (iv) against blocked assets that belong to an agency or instrumentality of that terrorist party. Movants meet each of TRIA's requirements.[9]

*First*, as discussed above, since 2006, Movants have held judgments against the Taliban for compensatory damages. *See* ECF No. 1797. Movants await the Court's determination as to the precise quantum of compensatory damages to which they are entitled, but there is no prohibition against—nor justification for denying—attachment under CPLR § 6201 where a movant has a judgment and only the quantum is yet to be determined.

*Second*, the Taliban is unquestionably a "terrorist party" within the meaning of TRIA. The United States has classified the Taliban as a Specially Designated Global Terrorist since July 2, 2002. *See* Exec. Order No. 13268 § 1; 31 C.F.R. §§ 594.310, 594.311. Consistent with that designation, the United States has represented to courts in other matters both that the Taliban is a "terrorist party" and that its assets are subject to attachment under TRIA. *See* Br. of the United States in Resp. to Pls' Mot. to Compel at 3–4, *Smith v. Islamic Emirate of Afghanistan*, No. 03-mc-2169, 2005 WL 3518010 (D.D.C. Feb. 2, 2005), ECF No. 4.

*Third*, Movants' claims against the Taliban arise out of the 9/11 terrorist attacks, unquestionably an act of terrorism. *See, e.g.*, *Ashton*, 02-cv-6799 (GBD) (SN) (S.D.N.Y.), ECF No. 465 (Sixth Amended Consolidated Master Complaint); 18 U.S.C. § 2331 (defining

---

[9] As articulated by the Second Circuit in *Levinson*, "[B]efore ordering assets to be seized under TRIA, a district court must make findings as to whether TRIA indeed permits those assets to be seized." No. 21-2043, 2022 WL 3269083, at *4 (citing *Levin v. Bank of N.Y.*, No. 09-CV-5900, 2011 WL 812032, at *13 (S.D.N.Y. Mar. 4, 2011)). However, such requirement does not extend to "pre-execution attachment procedures" pursuant to which Movants here move. *Id.* at *5 ("The Levinsons were therefore, consistent with state law, entitled to pursue pre-execution attachment proceedings here, *see* Fed. R. Civ. P. 64, 'an order of attachment may be granted in any action . . . when . . . the cause of action is based on a judgment, decree or order of a court of the United States.'") (quoting CPLR § 6201(5)).

"terrorism"); 22 U.S.C. § 2556f (same). Indeed, the Secretary of the Treasury has certified the 9/11 terrorist attacks as an act of terrorism for purposes of TRIA.

*Finally*, the DAB Assets are blocked pursuant to the Executive Order and are the property of DAB. The DAB Assets are held at FRBNY in an account under DAB's name and are identified as such in the Executive Order, which directed that "[a]ll property and interest in property of DAB that are held as of the date of this order" be consolidated in the blocked FRBNY account. Executive Order § 1(a)–(b). Accordingly, the DAB Assets may be attached even though DAB is not named in the complaint or judgment. *See Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107, 132 (2d Cir. 2016) (permitting attachment of assets belonging to "an agency or instrumentality of the terrorist party, even if the agency or instrumentality is not itself named in the judgment.").

DAB is an agency or instrumentality of the Taliban. When the Taliban controlled Afghanistan as the Islamic Emirate of Afghanistan, the United States recognized that DAB was "owned or controlled by" or "act[s] for or on behalf of, the Taliban." *See* Blocked Persons, Specially Designated Nationals, Specially Designated Terrorists, Foreign Terrorist Organizations, and Specially Designated Narcotics Traffickers; Addition of Persons Blocked Pursuant to 31 CFR Part 538, 31 CFR Part 597, or Exec. Order 13129, 65 Fed. Reg. 39,100 (June 23, 2000). After President Clinton blocked "all property and interests in property of the Taliban" under the International Emergency Economic Powers Act ("IEEPA") in the aftermath of the 1998 embassy bombings in Dar es Salaam and Nairobi, Exec. Order 13129, 64 Fed. Reg. 36,759 (July 4, 1999), the Department of the Treasury's Office of Foreign Assets Control issued orders determining that DAB's funds were also properly blocked as, in effect, property of the Taliban. *E.g.*, 65 Fed. Reg. at 39,100.

As President Biden's Executive Order illustrates, the same is true now that the Taliban has once again seized control of Afghanistan. The United States has not recognized the Taliban as the rightful government of Afghanistan, but in blocking the funds, it has acknowledged that the Taliban effectively controls DAB. This is further evidenced by the fact that the Taliban has installed senior Taliban leaders as DAB leadership,[10] and caused DAB to implement Taliban edicts.[11] *See Kirschenbaum*, 830 F.3d. at 135 (deeming an entity an agency or instrumentality if it is "a means through which a material function of the terrorist party is accomplished," if it provides "material services to, on behalf of, or in support of the terrorist party," or if it is "owned, controlled, or directed by the terrorist party"). Other creditors of the Taliban have argued persuasively before this Court that DAB is an agency and instrumentality of the Taliban. *See e.g.*, ECF No. 7764, at 18-21 ("Because DAB is an agency or instrumentality of the Taliban under governing Second Circuit precedent, its assets—including at the FRBNY—are subject to execution under TRIA.").

Accordingly, the DAB Assets are subject to attachment under TRIA.

---

[10] *See, e.g.*, Ian Talley, et al., *Sanctioned Taliban Finance Leader Holds Leadership Post at Afghan Central Bank*, WALL ST. J. (Mar. 11, 2022), https://www.wsj.com/articles/sanctioned-taliban-financier-tapped-to-help-lead-afghan-central-bank-11647003720?mod=newsviewer_click (appointing Noor Ahmad Agha as DAB first deputy governor); Eltaf Najafizada, *Taliban Name Obscure Official as Central Bank Chief with Crisis Looking*, BLOOMBERG (Aug. 23, 2021), https://www.bnnbloomberg.ca/taliban-name-obscure-official-central-bank-chief-as-crisis-looms-1.1643238 (appointing Haji Mohammed Idris DAB Acting Governor); Da Afghanistan Bank, *DAB Leadership Holds Meeting with the High Ranking Officials of Commercial Banks* (Sept. 11, 2021), https://www.dab.gov.af/dab-leadership-holds-meeting-high-ranking-officials-commercial-banks (announcing Taliban takeover of Da Afghanistan Bank).

[11] *See* James Mackenzie and Mohammad Yunus Yawar, *Afghan Central Bank Moves to Halt Currency Slide as Crisis Deepens*, REUTERS (Dec. 14, 2021), https://www.reuters.com/markets/currencies/afghanistan-central-bank-says-it-is-acting-halt-currency-slide-2021-12-14/ (describing Taliban efforts to utilize the DAB, among other entities, to stabilize Afghanistan's currency).

## III. THIS COURT SHOULD GRANT MOVANTS' EMERGENCY MOTION *EX PARTE*

Pursuant to Local Civil Rule 6.1(d), this Court may grant an "ex parte order . . . upon a clear and specific showing by affidavit of good and sufficient reasons why a procedure other than by notice of motion is necessary, and stating whether a previous application for similar relief has been made." This is Movants' first request for such relief. Maloney Decl. ¶ 7.

CPLR § 6211(a) likewise provides for an order of immediate attachment "without notice." The substantive "standard [in CPLR § 6212] applies regardless of whether a plaintiff is seeking an order of attachment pursuant to an ex parte—that is, without notice—application or a motion on notice." *Herzi v. Ateliers De La Haute-Garonne*, 15-cv-7702, 2015 WL 8479676, at *1 (S.D.N.Y. Oct. 13, 2015). Because an *ex parte* order of attachment under CPLR § 6211 provides urgent, temporary relief, courts have characterized it as the "practical equivalent" of a temporary restraining order. *Concord Asset Mgmt., Inc. v. Intercredit Corp.*, No. 92 CIV. 7756 (JFK), 1992 WL 373477, at *2 (S.D.N.Y. Dec. 3, 1992).

Here, *ex parte* disposition of Movants' application is necessary because of the severe challenges posed by serving process on the Taliban, which has already declined to participate in these proceedings despite having acknowledged its awareness of them. *See* ECF No. 7830, at 7 (noting that the Taliban's "representatives have repeatedly issued press statements demonstrating that they are aware that the DAB [Assets] in this case are currently being held and targeted in this litigation"). The Taliban is a designated terrorist entity without a known address, and the difficulty of identifying an official representative of the Taliban on whom process could be served provides "good and sufficient reasons," Local Civil Rule 6.1(d), to permit Movants to proceed *ex parte*. *Cf. Unitrans Int'l, Inc. v. Gulf & Orient S.S. Lines, Inc.*, 97-cv-801 (WK), 2002 WL 1205744, at *1 (S.D.N.Y. Mar. 6, 2002) (permitting plaintiff to seek release of security *ex parte* because defendant

had gone out of business and "there [was] no new address or phone number available"). As this Court has recognized in connection with the *Havlish* and *Doe* Plaintiffs' turnover motions, normal methods of service are not practicable here. *See* ECF No. 7830 (permitting alternative service on the Taliban).

Once attachment is granted, the requesting party has "ten days after levy" to move "for an order confirming the order of attachment." CPLR § 6211(b). "Upon the motion to confirm," the burden-of-proof provisions in CPLR § 6223(b) "shall apply." *Id*. Thus, Movants will ultimately bear "the burden of establishing the grounds for the attachment, the need for continuing the levy and the probability that [they] will succeed on the merits." CPLR § 6223(b). To obtain an *ex parte* order of attachment, however, Movants must merely demonstrate a "prima facie case." *Banco Internacional, S.A. v. Vilaseca*, 631 N.Y.S.2d 468, 469–70 (N.Y. Sup. Ct. 1994). Movants have done so here.[12]

## **CONCLUSION**

For the foregoing reasons, the requirements of CPLR §§ 6201, 6211-12 and TRIA § 201 have been met. Accordingly, the Court should grant Movants' *ex parte* emergency motion for an order of attachment for compensatory damage against DAB in the full amount of the approximately $3.5 billion in blocked assets. This amount does not include any award for punitive damages.

---

[12] CPLR § 6212(b) requires a plaintiff moving for an order of attachment to post an undertaking in an "amount fixed by the court" of "not less than five hundred dollars" to provide surety for any damages a defendant might suffer as a result of the attachment. Here, Movants, who are individual victims of terrorism, request this requirement be waived or in the alternative, an undertaking of not more than $10,000 in total. The DAB funds they seek to levy are already blocked by Executive Order, so attachment will not cause any additional harm to the Taliban.

Date: August 19, 2022
        New York, New York

Respectfully submitted,

**KREINDLER & KREINDLER LLP**

BY: ___/s/ Andrew J. Maloney, III _
Andrew J. Maloney, III, Esq.
485 Lexington Ave., 28th Floor
New York, New York 10017
Tel: (212) 687-8181

*Counsel for Movants*

– and –

**SHER TREMONTE LLP**

Theresa Trzaskoma
Noam Biale
Kathryn E. Ghotbi
90 Broad Street, 23rd Floor
New York, New York 10004
Telephone: (212) 202-2600
Facsimile: (212) 202-4156
ttrzaskoma@shertremonte.com
nbiale@shertremonte.com
kghotbi@shertremonte.com

*Counsel for Movants*