1155 AVENUE OF THE AMERICAS, NEW YORK, NY 10036-2711

JENNER&BLOCK LLP

August 21, 2022

VIA ECF

The Honorable George B. Daniels
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

The Honorable Sarah Netburn
United States Magistrate Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *In re Terrorist Attacks on September 11, 2001*, No. 03-md-1570 (GBD) (SN)
      *Havlish, et al. v. Bin Laden, et al.*, No. 03-cv-9848 (GBD) (SN)
      *John Does 1 through 7 v. the Taliban, et al.*, No. 20-mc-740 (GBD) (SN)
      *Federal Insurance Co., et al. v. al Qaida, et al.*, No. 03-cv-6978 (GBD) (SN)
      *Smith v. the Islamic Republic of Iraq*, No. 01-cv-10132 (GBD) (SN)
      *Ashton et al. v. al Qaeda Islamic Army, et al.*, No. 02-cv-6977 (GBD) (SN)
      **Ashton Plaintiffs' Motion for Attachment & Mem. of Law (Dkts. 8412 & 8413)**

Dear Judges Daniels and Netburn:

      On behalf of Judgment Creditors Fiona Havlish, *et al*. (the "Havlish Creditors"), Judgment Creditors John Does 1 through 7 (the "Doe Creditors"), Judgment Creditors Federal Insurance Co., *et al.* (the "Federal Insurance Creditors"), and Judgment Creditors Estate of Smith, *et al.* (the "Smith Creditors")—collectively, the "Joint Creditors"—we write in response to the Ashton Plaintiffs' "Emergency Motion for an Order of Attachment," which is yet another futile gambit designed to obstruct our clients' turnover proceedings and the Framework Agreement reached among every other 9/11 plaintiff group. As litigants with final, enforceable judgments against the Taliban, whose writs of execution already restrain (and have restrained for many months) the blocked assets the Ashton Plaintiffs seek to attach (thus rendering the purported "emergency" nature of their motion a puzzlement), we are prepared to oppose the motion. By this letter, the Joint Creditors offer several points as to why the relief sought by the Ashton Plaintiffs is legally unavailable and can be summarily denied. Should the Court desire more fulsome briefing, the Joint Creditors request that the Court set a schedule by which the Joint Creditors may formally oppose the motion.

      **First**, the Ashton Plaintiffs by their own admission lack a final, enforceable judgment against the Taliban, such that TRIA does not provide them with a legal basis to attach the blocked DAB assets. TRIA applies only to cases "in which a person has obtained a judgment against a terrorist party" and allows "execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been

Page 2

adjudged liable." TRIA § 201(a). The Ashton Plaintiffs lack a compensatory damage award as against the Taliban. The Second Circuit expressly held in *Smith v. Fed. Rsrv. Bank of New York*, 346 F.3d 264 (2d Cir. 2003) that the "plain meaning" of TRIA § 201(a) is "to give terrorist victims who actually receive favorable judgments a right to execute against assets that would otherwise be blocked," and "confers no entitlement on victims who have not yet obtained judgments." *Id.* at 271.[1] As plaintiffs without final judgments, the Ashton Plaintiffs simply cannot rely on TRIA to attach the DAB Assets.[2]

Attempting to get around this fundamental obstacle, the Ashton Plaintiffs inaccurately claim that they do in fact have "judgments against the Taliban for compensatory damages," Dkt. 8413 ("Mot.") 13, referring to this Court's entry of default judgments solely as to liability on May 12, 2006. Those "judgments" were awarded subject to "a hearing . . . to establish the aggregate value of the [Ashton] Plaintiffs' unliquidated damages." *See* Dkt. 1797. But the law is crystal clear that "a default judgment cannot be entered until the amount of damages has been ascertained." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 97 (2d Cir. 1993); *see also Swarna v. Al-Awadi*, 622 F.3d 123, 140 (2d Cir. 2010) ("Because the inquest on damages was pending, the District Court's order, though styled a default judgment, was a non-final order."); *Dow Chem. Pac. v. Rascator Mar. S.A.*, 782 F.2d 329, 336 (2d Cir. 1986) (where damages had not been determined, the default judgment "was in fact no more than another interlocutory entry of default"); *Henry v. Bristol Hosp., Inc.*, 2020 WL 7773418, at *2 (D. Conn. Dec. 30, 2020) ("Although a default judgment with regard to liability may be entered prior to award of damages, a default judgment is not considered an entry of final judgment until damages have been awarded."); *Curtis v. Gates Cmty. Chapel of Rochester, Inc.*, 2022 WL 2037817, at *2 (W.D.N.Y. June 6, 2022) ("Where the amount of damages remains to be calculated, a default judgment is not considered final."). The Ashton Plaintiffs concede that the "precise quantum of compensatory damages" they may one day be owed by the Taliban has yet to be determined. Mot. 13. *See also Owens* Dkt. 34 at 35 (Mr. Maloney, the lead attorney bringing the "Emergency Motion," acknowledging earlier this year that the Ashton Plaintiffs "don't have . . . a final judgment with liquidated damages"). What the Ashton Plaintiffs

---

[1] In *Smith*, the plaintiffs could not rely on TRIA to execute on certain assets held at the FRBNY, because, in March 2003, "well before" they "obtained a *final judgment*" against Iraq, the President ordered the assets in question to be confiscated, such that they were no longer blocked and thus no longer available for attachment under TRIA. *Id.* at 272 (emphasis added). Notably, at the time of the President's March 2003 confiscation order, the *Smith* plaintiffs had already received non-final default judgments as to liability, subject to an inquest on damages. *See Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 220 (S.D.N.Y. 2003). The Second Circuit considered it relevant that "final judgment" was not entered until July 2003, after the assets in question were no longer blocked. *Smith*, 346 F.3d at 366.

[2] The Ashton Plaintiffs themselves have previously conceded this principle of law and raised it in opposition to the motion for attachment in *Owens v. Taliban*, No. 22-cv-1949 (S.D.N.Y.). *See Owens* Dkt. 29 at 4-5 (letter signed by Kreindler & Kreindler citing *Smith v. Federal Reserve Bank* for the proposition that TRIA precluded issuing a prejudgment writ of attachment to the Owens Plaintiffs because they lacked a judgment against the Taliban).

Page 3

possess, then, is not a judgment but merely a non-enforceable order establishing certain defendants' liability, such that TRIA is categorically unavailable to them.[3]

Nothing about the Second Circuit's recent decision in *Levinson v. Kuwait Fin. House (Malaysia) Berhad*, No. 21-2043, 2022 WL 3269083 (2d Cir. July 21, 2022), changes this analysis. Although the *Levinson* court suggested that attachment under Article 62 of the New York C.P.L.R. might have been available to secure the plaintiffs' potential turnover judgment under TRIA, those plaintiffs had already obtained a final judgment against Iran, with damages ascertained in the amount of $1.5 billion. Only because the plaintiffs possessed "a money judgment against Iran" did the Second Circuit conclude that attachment was a "possible remedy" in aid of a TRIA enforcement proceeding to prevent assets that were not already restrained by the executive branch from leaving the jurisdiction.[4] *Id.* at *5.

**Second**, absent any ability to rely on TRIA, federal law prohibits the Ashton Plaintiffs from obtaining an order of attachment. When, on February 11 of this year, President Biden blocked the DAB Assets by issuing Executive Order 14,064, he decreed that the assets "may not be *transferred*, paid, exported, withdrawn, or *otherwise dealt in*," *id.* § 1(a) (emphasis added), "except to the extent provided by statutes" (such as TRIA) or regulations, *id.* § 1(c). The term "transfer" is a term of art under federal sanctions law which is universally understood to include an order of attachment. For example, terrorism sanctions regulations promulgated by the Treasury Department's Office of Foreign Assets Control ("OFAC") provide, in relevant part, that "[t]he term transfer . . . include[s] . . . the issuance, docketing, filing, or levy of or under any judgment, decree, *attachment*, injunction, execution, or other judicial or administrative process or order, or the service of any garnishment." *See* 31 CFR § 594.312 (emphasis added).[5] A party without a final judgment and who cannot rely on TRIA plainly lacks the authority to restrain the blocked DAB assets by seeking a writ of attachment. *See Ministry of Def. & Support for the Armed Forces of the Republic of Iran v. Elahi*, 556 U.S. 366, 369 (2009) (TRIA is the sole mechanism to "attach . . . assets that the United States has '*blocked*.'" (emphasis in original)).

**Third**, the Ashton Plaintiffs effectively admit that they seek attachment for a legally impermissible purpose—not to restrain assets which could otherwise be dissipated, but as a ploy

---

[3] Indeed, without having a "precise quantum of compensatory damages," a court could not meaningfully apply TRIA's command that a terrorist party's assets "shall be subject to . . . attachment in aid of execution in order to satisfy such judgment *to the extent of any compensatory damages for which such terrorist party has been adjudged liable*." TRIA § 201(a).

[4] The Second Circuit recognized in *Levinson* that attachment might be an appropriate remedy because the assets at issue there had not actually been "frozen or seized" by the United States. *See* 2022 WL 3269083, at *5 & n.6. Here, of course, the DAB Assets are affirmatively frozen by the United States, and there is no risk that they will be "withdraw[n] [by the judgment debtor] . . . before they could be" ordered delivered to the Joint Creditors (or anyone else). *See id.* at *5.

[5] As the Federal Insurance Creditors documented in their motion to vacate the writ of attachment issued in *Owens*, "[a]ll extant blocking sanctions programs include identical or similar language and have done so for the last sixty years." *See* Dkt. 8056 & 8056-1 (collecting sanctions regulations defining the word "transfer").

for priority. *See* Mot. 1 ("[Ashton Plaintiffs] seek this Attachment Order to protect their rights and ensure that they are not foreclosed by other creditors from obtaining recovery."). An order of attachment cannot issue on this basis, as Judge Caproni found. *Owens v. Taliban*, 2022 WL 1090618, at *5 (S.D.N.Y. Apr. 11, 2022) ("Allowing plaintiffs who have not obtained a judgment to jump the line cannot be the reason for granting pre-judgment attachment[.]"); *see also Ames v. Clifford*, 863 F. Supp. 175, 178 (S.D.N.Y. 1994); *J.V.W. Inv. Ltd. v. Kelleher*, 837 N.Y.S.2d 650, 651 (App. Div. 2007). What is more, the Ashton Plaintiffs opposed the *Owens* motion for attachment on precisely these grounds, *Owens* Dkt. 29 at 4 ("What the Owens plaintiffs are in truth seeking to do is to use the prejudgment attachment process not for security purposes, but to obtain priority over the many MDL litigants who already have claims pending against the Taliban in the MDL proceeding."), and urged Judge Caproni not to grant it because there was no risk that the DAB Assets would be moved outside of this Court's jurisdiction.[6] The Ashton Plaintiffs were right to oppose attachment then and they are wrong to seek it now.

For these reasons, the Ashton Plaintiffs' attachment motion—a stunt with no basis in law—can be summarily rejected. Although the Second Circuit's *Levinson* decision has spurred a flurry of filings in the MDL, as the Joint Creditors noted in their letter of August 18, 2022, *Levinson* does not meaningfully change anything about the pending turnover motions. *See* Dkt. 8399. The Joint Creditors' writs of execution continue to restrain the DAB Assets (and are not, in any case, prerequisites to turnover), their turnover motions are ripe for adjudication (nearly a year after the first executions were levied upon the DAB Assets), and no other party holds a final enforceable judgment against the Taliban. *Id.* To the extent the Court would like to receive more extensive briefing on the Ashton Plaintiffs' latest attempt to derail the turnover proceedings and the Framework Agreement, the Joint Creditors would welcome the opportunity to formally oppose the motion on whatever schedule the Court finds appropriate.[7]

---

[6] Moreover, attachment is a "discretionary" remedy that courts can and should withhold, even if a movant has established grounds for its issue under C.P.L.R. § 6201, where the movant has not shown that it is actually "needed to secure payment." *Cap. Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 221–22 (2d Cir. 2006); *see also Katz Agency, Inc. v. Evening News Ass'n*, 514 F. Supp. 423, 429 (S.D.N.Y. 1981) ("[A]n attachment under New York law solely for security purposes is appropriate only when it appears likely that a plaintiff will have difficulty enforcing a judgment. . . . [A] plaintiff is never entitled to an attachment as a matter of right. Rather, the remedy is discretionary with the Court and should be used sparingly."), *aff'd*, 705 F.2d 20 (2d Cir. 1983). As the Court knows, the DAB Assets are already restrained by both prior executive and judicial order.

[7] In their motion, the Ashton Plaintiffs persist in their efforts to denigrate the Framework Agreement reached by every other 9/11 plaintiff group, *see* Mot. at 1 n.2. Their characterization of the agreement's terms in that footnote is inaccurate, as they would know if they had not declined multiple invitations to participate in and help craft the agreement with the rest of the MDL Community.

Respectfully submitted,

/s/ Lee Wolosky
Lee Wolosky
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1628
lwolosky@jenner.com

Douglass A. Mitchell *(pro hac vice)*
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 639-6090
dmitchell@jenner.com

*Counsel for Judgment Creditors Fiona Havlish, et al.*

/s/ Orlando do Campo
Orlando do Campo
John Thornton (*pro hac vice)*
Daniela Jaramillo (*pro hac vice*)
DO CAMPO & THORNTON, P.A.
150 S.E. 2nd Avenue, Ste. 602
Miami, FL 33131
(305) 358-6600
od@dandtlaw.com

*Counsel for Judgment Creditors John Does 1-7*

/s/ Sean P. Carter
Sean P. Carter, Esq.
Stephen A. Cozen, Esq.
J. Scott Tarbutton, Esq.
COZEN O'CONNOR
1650 Market Street
Philadelphia, PA 19103
Tel: (215) 665-2105
scarter1@cozen.com

*Counsel for Judgment Creditors Federal Insurance Co., et al.*

Page 6

<u>/s/ James Edwin Beasley</u>
James Edwin Beasley
The Beasley Firm, LLC
1125 Walnut Street
Philadelphia, PA 19107
(215)-592-1000
jbj@beasleyfirm.com

*Counsel for Judgment Creditors Estate of Smith, et al.*

cc: All counsel of record (by ECF)