## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |
|---|---|

This document relates to:

*Estate of John P. O'Neill, Sr., et al. v. The Republic of Iraq, et al.*, 04-cv-1076 (GBD)(SN)

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL FINAL DAMAGES JUDGMENTS AGAINST THE TALIBAN FOR CERTAIN MEMBERS OF THE O'NEILL FAMILY WHO ALREADY HAVE LIABILITY JUDGMENTS AGAINST THE TALIBAN AND WHO PREVIOUSLY <u>RECEIVED DAMAGES JUDGMENTS AGAINST IRAN</u>

ANDERSON KILL P.C.
Jerry S. Goldman, Esq.
Bruce E. Strong, Esq.
Alexander Greene, Esq.
Ethan Greenberg, Esq.
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 278-1000
Fax: (212) 278-1733
Email:  jgoldman@andersonkill.com
          bstrong@andersonkill.com
          agreene@andersonkill.com
          egreenberg@andersonkill.com
*Attorneys for Plaintiffs*

Dated:   New York, New York
           August 25, 2022

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ................................................................................................ 1

II.    PROCEDURAL BACKGROUND......................................................................... 4

    A.    Applicable Orders ................................................................................... 4

    B.    Related Cases ......................................................................................... 5

III.   THE ORIGINAL *O'NEILL* PLAINTIFFS HAVE LIABILITY JUDGMENTS AGAINST THE TALIBAN............................................................................... 7

    A.    The Complaint Was Duly Served by the Original *O'Neill* Plaintiffs ................... 7

    B.    Liability Was Determined as to the Original *O'Neill* Plaintiffs ........................... 7

IV.    DAMAGES SHOULD BE AWARDED AGAINST THE TALIBAN JOINTLY AND SEVERALLY............................................................................................. 8

    A.    Background ............................................................................................. 8

    B.    Solatium Damages ................................................................................. 10

    C.    Pain and Suffering Damages for Estate ................................................. 12

    D.    Economic Damages for Estate ............................................................... 12

    E.    Treble Damages .................................................................................... 14

    F.    Punitive Damages ................................................................................. 15

    G.    Prejudgment Interest ............................................................................. 16

V.     CONCLUSION.................................................................................................... 17

docs-100514442.2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Socialist People's Libyan Arab Jamahirya,*
    775 F. Supp. 2d 48 (D.D.C. 2011) ...................................................................16

*Estate of Bland v. Islamic Republic of Iran,*
    831 F. Supp. 2d 150 (D.D.C. 2011) .................................................................15

*Estate of Heiser v. Islamic Republic of Iran,*
    466 F. Supp. 2d 229 (D.D.C. 2006) ..............................................................5, 13

*Estate of Henkin v. Kuveyt Turk Katilim Bankasi, A.S.,*
    495 F. Supp. 3d 144 (E.D.N.Y. 2020) .............................................................10

*Estates of Ungar ex rel. Strachman v. Palestinian Auth.,*
    304 F. Supp. 2d 232 (D.R.I. 2004) ...............................................................8, 12

*Flatow v. Islamic Republic of Iran,*
    999 F. Supp. 1 (D.D.C. 1998) .........................................................................12

*Lelchook v. Commerzbank AG,*
    2011 WL 4087448 (S.D.N.Y. Aug. 2, 2011) ................................................8, 10

*Miller v. Arab Bank, PLC,*
    372 F. Supp. 3d 33 (E.D.N.Y. 2019) .............................................................8, 10

*Rosenberg v. Lashkar-e-Taiba,*
    2016 U.S. Dist. LEXIS 87724 (E.D.N.Y. July 5, 2016) ....................................10

*Roth v. Islamic Republic of Iran,*
    78 F. Supp. 3d 379 (D.D.C. 2015) ..................................................................13

*In re Sept. 11 Litig.,*
    802 F.3d 314 (2d Cir. 2015) ...........................................................................16

*Smith ex rel. Smith v. Islamic Emirate of Afghanistan,*
    262 F. Supp. 2d 217 (S.D.N.Y. 2003) ...............................................................8

*Stansell v. Revolutionary Armed Forces of Columbia,*
    16-MC-00405 (LGS) (SN), ECF No. 443 (March 29, 2022) ..............................15

*United States v. Kahn,*
    5 F.4th 167 (2d Cir. 2021) ..............................................................................14

*Valore v. Islamic Republic of Iran*,
   700 F. Supp. 2d 52 (D.D.C. 2010) ...................................................................................5, 8, 13

**Statutes**

28 U.S.C. § 1605A ...................................................................................................... *passim*

18 U.S.C. § 2333(a) .................................................................................................... *passim*

Air Transportation Safety and System Stabilization Act, Pub. L. No. 107-42, 115
   Stat. 230 (2001).................................................................................................................16

docs-100514442.2

## I.      INTRODUCTION

This action arises out of the events of September 11, 2001, during which members of the

al Qaeda[1] terrorist network hijacked four commercial airliners and used those planes as weapons

in coordinated terrorist attacks on the United States (the "September 11th Attacks").  Plaintiffs in

the above-captioned case are comprised of personal representatives and eligible family members

of individuals killed in the September 11th Attacks.

On October 13, 2015, this Court granted liability judgments against the Taliban for its

role in the September 11th Attacks to John P. O'Neill, Jr., Christine Irene O'Neill, Carol O'Neill,

Dorothy O'Neill,[2] and the Estate of John Patrick O'Neill, Sr., and on behalf of all survivors and

all legally entitled beneficiaries and family members of John Patrick O'Neill, Sr. (collectively,

"Original *O'Neill* Plaintiffs"). *See* ECF No. 3067;[3] *see also* ECF Nos. 3163, 3043-1. This is a

renewed motion for damages filed on behalf of the Original *O'Neill* Plaintiffs' filed in response

to this Court's July 11, 2022 Order (ECF No. 8198).

The specific plaintiffs as identified in Exhibit A[4] and Exhibit B[5] ("Moving Plaintiffs"),

are seeking Partial Final Judgments as to Damages against the Taliban.

---

[1] Arabic words and names are spelled differently in various sources. Plaintiffs have strived for consistency as much as possible, but original spellings are maintained in quoted sources.

[2] Dorothy O'Neill has passed away and undersigned counsel previously moved to substitute in Christine O'Neill as the personal representative of the estate. ECF No. 8179. The Court granted this motion. *See* ECF No. 8186.

[3] All ECF numbers are to the MDL docket unless stated otherwise.

[4] All exhibits referenced herein are annexed to the Declaration of Jerry S. Goldman, Esq. ("Goldman Declaration"), which is being filed contemporaneously with this Memorandum of Law. The plaintiffs listed in Exhibit A are the relatives of a 9/11 decedent.  In the case of a relative who died subsequent to the 9/11 decedent, the claim is brought by the personal representative of the relative's estate.  As noted herein, each personal representative has provided the undersigned counsel with proof that he or she has been appointed by the court as the personal representative of the deceased relative, except in the cases specifically identified herein and in the Goldman Declaration, where a party has filed a petition to be so appointed, which petition, on information and belief, is unopposed, but has not yet been granted. Goldman Declaration at ¶¶ 4-14, 18-19.

For the reasons set forth below, the statements contained in the Goldman Declaration, as well as those set forth in prior motions for damages, Moving Plaintiffs identified in Exhibit A and Exhibit B, respectfully further move this Court for an Order:

(1)     finding the Taliban jointly and severally liable with the Islamic Republic of Iran ("Iran") and awarding damages judgments to Moving Plaintiffs identified in Exhibit A and Exhibit B, against the Taliban in the same amounts previously awarded by this Court to various similarly situated plaintiffs in *Burnett*, *Havlish*, *Ashton*, *Bauer*, *O'Neill*, and other cases against Iran (subject to trebling damages as indicated below); AND,

(2)     awarding solatium damages to those Moving Plaintiffs identified in Exhibit A in the amounts of $12,500,000 per spouse, $8,500,000 per parent, $8,500,000 per child, and $4,250,000 per sibling, as set forth in Exhibit A; AND,

(3)     awarding the estate of the 9/11 decedent, through its personal representative and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 decedent, as identified in Exhibit B, compensatory damages for pain and suffering in the same per estate amount previously awarded by this Court regarding other estates of decedents killed in the September 11th Attacks, as set forth in Exhibit B; AND,

---

[5] The plaintiff listed in annexed Exhibit B is the personal representative of a 9/11 decedent's estate who is submitting a claim for compensatory damages as a result of the 9/11 decedent's death.  An expert report is being submitted with the Goldman Declaration demonstrating economic loss as a result of the 9/11 decedent's death, as outlined therein and herein, and the personal representative is additionally seeking economic damages in the amount set forth in annexed Exhibit B.  As noted below, the personal representative has provided the undersigned counsel with proof that she has been appointed by the court as the personal representative of the decedent. Goldman Declaration at ¶¶ 4-14, 20-28.

(4)      awarding compensatory damages to the Moving Plaintiff identified in Exhibit B for decedents' pain and suffering in an amount of $2,000,000, as set forth in Exhibit B; AND,

(5)      awarding the estate of the 9/11 decedent, through its personal representative and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 decedent, as identified in Exhibit B, an award of economic damages in the amount as set forth in Exhibit B; AND,

(6)      awarding treble damages pursuant to the Anti-Terrorism Act, 18 U.S.C. § 2333(a) ("ATA"), for solatium, economic, and non-economic damages, in the amounts set forth in Exhibit A and Exhibit B; AND,

(7)      finding that the treble damages awarded are compensatory in nature and not punitive; AND

(8)      awarding the Moving Plaintiffs prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages; AND,

(9)      granting the Moving Plaintiffs permission to seek punitive damages, economic damages, and other appropriate damages, at a later date; AND,

(10)     granting permission for all other Plaintiffs in the above-captioned matter not appearing in Exhibit A and Exhibit B to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed; AND,

(11)     granting to the Plaintiffs such other and further relief as this honorable court deems just and proper.

3

The awards set forth in the attached Proposed Order represent the only direct recovery against the Taliban on behalf of the Moving Plaintiffs for the claims herein and will constitute final awards and judgments against the Taliban for the Moving Plaintiffs.

## II.   PROCEDURAL BACKGROUND

### A.   Applicable Orders

This motion is being submitted in accordance with various procedural orders entered by this Court, and the form of this motion and the relief requested herein are intended to comply with various orders of this Court, including the following:

a.      The Court's January 24, 2017 Order, ECF No. 3435,  requiring that "[a]ll further motions for final judgment against any defaulting defendant shall be accompanied by a sworn declaration attesting that the attorney has (1) complied with the due diligence safeguards [referenced in Section II.D. of the January 23, 2017 letter from the Plaintiffs' Executive Committee, ECF No. 3433] and (2) personally verified that no relief has previously been awarded to any plaintiff included in the judgment (or, if relief has been awarded, the nature of that relief)."

b.      Magistrate Judge Maas' July 30, 2012 Report & Recommendation, ECF No. 2618, and this Court's October 3, 2012 Order, ECF No. 2623, adopting the Report & Recommendation in its entirety concerning the award of damages;

c.      The Court's October 14, 2016 Order, ECF No. 3362, related to *Bauer v. Al Qaeda Islamic Army*, 02-CV-7236 (GBD)(SN) and *Ashton v. al Qaeda Islamic Army*, 02-CV-6977 (GBD)(SN).

d.      The Court's October 14, 2016 Order, ECF No. 3363, concerning the amounts of solatium damage awards.

e.      The Court's October 28, 2019 Order, ECF No. 5234, setting forth updated procedural rules.

f.      The Court's December 6, 2019 Order, ECF No. 5338, setting forth the scheduling order.

g.      The Court's April 11, 2022 Order, ECF No. 7870, setting forth specific procedures regarding seeking judgments for damages as to the Taliban.

h.      The Court's May 5, 2022 Order, ECF No. 7963, setting forth procedures for filing expert reports submitted in support of default judgments.

i.      The Court's July 11, 2022 Order, ECF No. 8198, setting forth requirements for motions for defaults against non-sovereign defendants.

**B.      Related Cases**

Relying on evidence and arguments submitted by plaintiffs in *In re Terrorist Attacks on September 11, 2001*, 03-md-1570, the consolidated multidistrict litigation arising out of the September 11th Attacks, this Court, on April 7, 2006, May 12, 2006, December 22, 2011, and on October 13, 2015, granted Orders of Judgment on Liability in favor of certain of the *Federal Insurance*, *Burnett, Ashton*, *Havlish*, and *O'Neill* groups of plaintiffs against the Taliban (*see* ECF Nos. 1754-56, 1782-97, 2516, 3067).  This Court also considered the issue of damages suffered by the *Havlish* plaintiffs and their decedents. Upon the *Havlish* plaintiffs' submissions, on October 3, 2012 this Court found, among other things, that "Plaintiffs may recover for [, inter alia,] solatium…in an action under Section 1605A. 28 U.S.C. § 1605A(c)(4). In such an action, …family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." ECF No. 2623 at 2-3, quoting *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010). This Court also found that the following solatium awards for family members are appropriate, as an upward departure from the framework in *Est. of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006):

| Relationship of Decedent | Solatium Award |
| --- | --- |
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

ECF No. 2623 at 4.

5

The Court has applied the same solatium values to claims of other solatium plaintiffs as to Iran in *Burnett, Ashton, O'Neill* and other solatium plaintiffs in other cases coordinated in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation against Iran and sought against the Taliban. *See, e.g.*, ECF Nos. 2618, 2623-24, 3175 at 2, 3300 at 1, 3358 at 9, 3363 at 16, 3399, 3666, 3977 at 7, 4023, 4126, 4146, 4175, 5061-62, 5087, 5138, and 5356.

In that same decision in *Havlish*, this Court also found that plaintiffs are entitled to punitive damages under the Foreign Sovereign Immunities Act ("FSIA") in an amount of 3.44 multiplied by their compensatory damages award. ECF No. 2623 at 5. The Court has applied that 3.44 multiplier also to judgments in *Ashton*. *See* ECF No. 3175 at 3 (Report and Recommendation to apply 3.44 punitive multiplier); ECF No. 3229 at 1 (Order adopting in its entirety Report and Recommendation to apply 3.44 punitive multiplier). The Court applied the 3.44 punitive multiplier to the compensatory awards previously awarded in *Burnett*. ECF No. 3666. However, in *Hoglan*, another case in this multidistrict litigation, Magistrate Judge Netburn recommended that the plaintiffs' request for punitive damages be denied without prejudice. ECF Nos. 3358 at 11-16, 3363 at 28. Judge Daniels adopted Magistrate Judge Netburn's Report and Recommendation in its entirety. ECF Nos. 3383 at 2, 3384 at 6.

In the *Havlish* decision, this Court also found that prejudgment interest was warranted for the plaintiffs' solatium damages. ECF No. 2623 at 5.  The *Havlish* plaintiffs sought application of a 4.96% interest rate, which the magistrate judge recommended (ECF No. 2619 at 13-14) and Judge Daniels adopted (ECF No. 2623 at 5). In *Ashton*, plaintiffs sought, and the magistrate judge recommended, application of a statutory nine percent simple interest rate for prejudgment interest. ECF No. 3175 at 7-8.  Judge Daniels adopted the magistrate judge's report and recommendation and applied the nine percent interest rate in multiple instances in *Ashton* and

*Bauer*. *See* ECF Nos. 3229 at 2, 3300 at 1, 3341 at 1. However, in *Hoglan*, Magistrate Judge

Netburn recommended that the 4.96 percent rate for prejudgment interest should be applied to all

solatium claims. ECF Nos. 3358 at 17-20, 3363 at 28-29. Judge Daniels adopted Judge Netburn's

*Hoglan* Report and Recommendation in its entirety and applied an interest rate of 4.96 percent

per annum, compounded annually. ECF Nos. 3383 at 2, 3384 at 6.  The Court applied that

interest rate, 4.96 percent per annum, to other plaintiffs' awards in *Burnett*.

## III.    THE ORIGINAL *O'NEILL* PLAINTIFFS HAVE LIABILITY JUDGMENTS AGAINST THE TALIBAN

### A.    The Complaint Was Duly Served by the Original *O'Neill* Plaintiffs

The Original *O'Neill* Plaintiffs filed suit on August 20, 2003 and duly served the Taliban

pursuant to publication orders, previously filed as of record, under ECF Nos. 445 and 488.  *See*

Affidavit of Jerry S. Goldman, ECF No. 3043 (September 21, 2015); *see also* ECF No. 3163

(December 11, 2015) (citing ECF Nos. 3043-1). Goldman Declaration at ¶ 17.

### B.    Liability Was Determined as to the Original *O'Neill* Plaintiffs

The Clerk's Office, upon the Original *O'Neill* Plaintiffs' applications, issued Clerk's

Certificates of Default. *See* ECF No. 3043-4.

As set forth below, the Original *O'Neill* Plaintiffs filed a motion for default judgments

against the Taliban for liability.  Such motion was granted, with leave to seek a determination of

damages at a later date.

**NAME OF CASE:**    *Estate of John P. O'Neill, Sr., et al. v. The Republic of Iraq, et al.*

| | |
|---|---|
| CASE NO: | 04-cv-1076 |
| DATE MOTION FOR LIABILITY FILED: | 09/21/2015 |
| ECF NO. OF MOTION FOR LIABILITY: | ECF No. 3042 |
| DATE ORDER DETERMINING LIABILITY: | 10/13/2015 |
| ECF NO. OF ORDER DETERMINING LIABILITY: | ECF No. 3067 (*see also* ECF Nos. 3163, 3043-1) |

## IV.   DAMAGES SHOULD BE AWARDED AGAINST THE TALIBAN JOINTLY AND SEVERALLY

By way of the instant motion, Moving Plaintiffs respectfully request that partial final judgments for damages be entered in the Original *O'Neill* Plaintiffs' favor and against the Taliban jointly and severally.

### A.   Background

According to the caselaw governing terrorism litigation, the "estates of those who [died] can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." *Valore v. Islamic Republic of Iran*, 700 F.Supp.2d 52, 83 (D.D.C. 2010) (concerning damages under FSIA); *Ests. of Ungar ex rel. Strachman v. Palestinian Auth*., 304 F. Supp. 2d 232, 267 (D.R.I. 2004) (finding that under ATA plaintiffs can recover "both pecuniary damages … and also for non-economic damages, including loss of companionship, society, and mental anguish experienced by the victim's surviving family members, including his siblings … ."); *see also Miller v. Arab Bank*, *PLC*, 372 F. Supp. 3d 33, 41 (E.D.N.Y. 2019) (ruling that plaintiffs were entitled to solatium damages under the ATA); *Lelchook v. Commerzbank AG*, 2011 WL 4087448, at *2 (S.D.N.Y. Aug. 2, 2011) (allowing plaintiffs to pursue claims for solatium damages is consistent with Congress's incorporation of traditional tort-law principles, under which such damages are available, into the ATA.); *Smith ex rel. Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 240 (S.D.N.Y. 2003) (while punitive damages are not available under ATA, its civil action provision "provides for treble damages").

8

Moving Plaintiffs identified in Exhibit A are immediate family members[6] of those killed on 9/11, as demonstrated by documentary evidence of their familial relationship to a 9/11 decedent, such as birth or marriage certificates, sworn affidavits, official documents, or other documents signed under penalty of perjury, which attest to a familial relationship eligible for recovery, and, in the case of a subsequently deceased family member, a death certificate or sworn affidavit which reflects that the claimant did not predecease the 9/11 victim.  *See* Goldman Declaration at ¶¶ 4-14, 18-19.

The Moving Plaintiff identified in Exhibit B is the estate of a victim who perished on 9/11, with claims asserted by its personal representative, as demonstrated by documentary evidence in the form of official documents from probate and administration proceedings from Surrogate's Court, Probate Court, Orphan's Court, and similar judicial bodies.  *See* Goldman Declaration at ¶¶ 4-14, 20-28.

With respect to each estate plaintiff in Exhibit A and Exhibit B, the personal representative has provided the undersigned counsel with proof that he or she has been appointed by the court as the personal representative of the deceased relative and/or 9/11 decedent estate.

As liability has been requested herein, each Moving Plaintiff should be entitled to damages in the amounts set forth in Exhibit A and Exhibit B, which reflect the damage amounts previously established and applied by this Court in this and other related cases arising from the September 11th Attacks or based upon expert economic reports submitted herewith.  In accordance with the ATA, Moving Plaintiffs are entitled to solatium, pain and suffering, compensatory and economic damages, as applicable, and are also entitled to treble damages and prejudgment interest.

---

[6] If the immediate family member passed away after the 9/11 decedent, this action is brought by that family member's estate.

Finally, all of the Moving Plaintiffs have already obtained damages judgments in the identical amounts sought here (except for trebling) against Iran, as set forth in the Exhibits. Under principles of joint and several liability and traditional tort principles, the Taliban is jointly and severally liable for those damages. *See* ECF Nos. 2618, 2623-24 (extending *Havlish* damage assessment against Iran to defaulting Non-Sovereign Defendants who were determined to be jointly and severally liable with Iran under traditional tort principles).

### B.    Solatium Damages

Whereas Plaintiffs' collective claims against Iran arose pursuant to 28 U.S.C. § 1605A(c) which provides an explicit right to solatium damages under the private right of action, Plaintiffs' claims against the Taliban arise under a number of different statutory schemes including 18 U.S.C. § 2333(a) (the civil-damages provision of the ATA) and the common law. Courts addressing claims under the ATA have almost uniformly allowed "solatium damages in suits brought under the ATA regardless of the availability of such damages under the general tort law of the state in which the district court sits" as such damages evince the deterrent intent of the ATA as a mechanism in the fight against terrorism. *See Rosenberg v. Lashkar-e-Taiba*, 2016 U.S. Dist. LEXIS 87724, at *75-*76 (E.D.N.Y. July 5, 2016); *see also Lelchook v. Commerzbank AG*, 2011 WL 4087448, at *2 (S.D.N.Y. Aug. 2, 2011) ("permitting Plaintiffs to pursue claims for solatium damages is consistent with both the purpose of the ATA, and Congress' intention to incorporate traditional tort-law principles into the statute"); *Estate of Henkin v. Kuveyt Turk Katilim Bankasi, A.S.*, 495 F. Supp. 3d 144, 152-53 (E.D.N.Y. 2020). "Family members do not need to be present for the terrorist attacks to recover under the ATA, because 'a terrorist attack is precisely the sort of situation in which presence at the time is not required in light of the severity of the act and the obvious range of potential grief and distress that directly results from such a heinous act.'" *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 41

10

(E.D.N.Y. 2019). In short, courts addressing the viability of solatium claims under the ATA have adopted an almost-uniform view that solatium damages are available under the ATA in the same manner that they are available under the private right of action under 28 U.S.C. § 1605A(c) of the Foreign Sovereign Immunities Act.

Analyzing the solatium claims of the families of the *Havlish* victims who perished in the 9/11 Attacks, Magistrate Judge Maas recommended that solatium damages be awarded to the immediate family members of the victims of the September 11th Attacks in the following amounts:

| Relationship of Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

ECF No. 2618 at 11.

These exact amounts were adopted by this Court in its October 3, 2012 Order, ECF No. 2623, and applied to the solatium claims against the Taliban. *See* ECF Nos. 2618, 2623-24.

The solatium losses suffered by the Exhibit A Moving Plaintiffs before the Court in this application are legally and factually comparable to those suffered by the plaintiffs in *Havlish*, as to the Taliban, as well as those granted as to Iran, and sought and currently pending against the Taliban in *Ashton*, *Bauer*, *Hoglan*, *O'Neill* (as to these plaintiffs), and *Burnett*. As such, Moving Plaintiffs identified in Exhibit A respectfully request that the Court grant awards of solatium in the same amounts indicated herein, consistent with this Court's application of those values

established and applied in *Havlish* against the Taliban, and subsequently adopted and applied to plaintiffs in the *Ashton*, *Bauer*, *Hoglan*, *O'Neill*, and *Burnett* cases against the Taliban.

### C.    Pain and Suffering Damages for Estate

As noted above, the Moving Plaintiff identified in Exhibit B includes the personal representative of the estate of an individual who was killed in the September 11th Attacks, who seeks compensatory damages for the decedent's pain and suffering.  This Court previously assessed the entitlement and value of pain and suffering awards to estates for their decedents' deaths in this litigation as to the Taliban for *Havlish*, and as to Iran by the Moving Plaintiffs. ECF No. 2618 at 7-9.

For the reasons articulated by this Court previously, the estate set forth in Exhibit B respectfully requests that the Court grants an award for the decedent's pain and suffering in the amount of Two Million Dollars ($2,000,000). *See id.* at 9; ECF No. 2624 at 1, 3-4 (Judge Daniels awarding $2,000,000 per estate).  *See* Goldman Declaration at ¶ 20.

### D.    Economic Damages for Estate

Economic damages are specifically contemplated in terrorism litigation, whether under the FSIA, the ATA or otherwise.  The economic damages provision is "designed to compensate [a] decedent's heirs-at-law for economic losses which result from [the] decedent's premature death." *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 27 (D.D.C. 1998); *see also Ungar*, 304 F. Supp. 2d at 264-65 (its legislative history "indicates that the ATA was to be construed broadly" and giving weight to its co-sponsor's statement that the ATA "'empowers victims with all the weapons available in civil litigation,'" suggesting "that Congress intended that the full range of damages should be available to persons entitled to bring actions pursuant to § 2333(a).").  Accordingly, "the beneficiaries of each decedent's estate [are] … entitled to recover the present value of economic damages, including lost wages that the decedents might

12

reasonably have been expected to earn but for their wrongful deaths." *Valore*, 700 F. Supp. 2d at 81-82 (citing *Heiser v. Islamic Republic of Iran*, 466 F.Supp.2d 229 (D.D.C. 2006)). Thus, sponsors of terrorist attacks that kill victims are routinely "liable for the economic damages caused to decedents' estates." *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 399-400 (D.D.C. 2015) (quoting *Valore*, 700 F.Supp. 2d at 78).

Previously, this Court awarded economic damages in Iran and Taliban cases for the "economic losses stemming from the wrongful death of the decedent[.]" *See, e.g.*, ECF No. 2623 at 2-3. In doing so, it adopted the economic loss calculations set forth in the plaintiffs' economic expert reports.

The estate set forth in Exhibit B,[7] which provided an economic expert report, transmitted to the Court with the Goldman Declaration, seeks economic damages, similar to the plaintiffs in the prior Taliban and Iran cases in this Court under the standards set in the District of Columbia cases cited herein.  Goldman Declaration at ¶¶ 21-28.

As described at length in the Goldman Declaration, Moving Plaintiffs retained the services of John F. Beauzile, an expert who possesses a Master's Degree in Actuarial Science from Columbia University ("Expert"), to evaluate the economic losses resulting from decedents' death as a result of the September 11th Attacks.  Goldman Declaration at ¶¶ 21-28.

As described in more detail in the Goldman Declaration, and the Expert's Declaration attached as Exhibit D thereto, we obtained, generally through a Freedom of Information Act ("FOIA") request, entire September 11th Victim Compensation Fund ("VCF") files for a

---

[7] The estate referenced in Exhibit A is the estate of a family member of the 9/11 decedent who passed away after the September 11th Attacks, as opposed to the estate of the 9/11 decedent who is listed in Exhibit B.

13

substantial number of 9/11 decedents represented by undersigned counsel.[8]  Those files, along

with other materials provided by the clients, contained various economic expert reports, VCF

applications, VCF work papers and distribution plans, VCF determinations, underlying economic

documents, and the like.  Using methodology and assumptions described in his declaration,

relying on earlier expert reports, determinations by the VCF, and other documents, the Expert

prepared an up-to-date economic loss expert report, a copy of which is deemed appended to the

Expert's Declaration (Exhibit D) and being filed on ECF with access restricted to the Court

pursuant to the Court's May 5, 2022 Order, ECF No. 7963, setting forth procedures for filing

expert reports in support of default judgments.

Based on the foregoing, the Moving Plaintiffs respectfully ask that this Court award

economic damages to the estate set forth in Exhibit B in the amount stated therein, as supported

by the expert report.

### E.      Treble Damages

Moving Plaintiffs submit that, under the express terms of the ATA, they "shall recover

threefold the damages" awarded. *See* 18 U.S.C. § 2333(a) (emphasis added). The trebling of the

damages award in these circumstances is mandated by the use of the word "shall." *See United

States v. Kahn*, 5 F.4th 167, 174 (2d Cir. 2021) (holding "[t]he word 'shall,' in a statute, indicates

a command; what follows the word 'shall' is 'mandatory, not precatory'"). Therefore, Moving

Plaintiffs submit that each of the values awarded for compensatory damages should be trebled to

accord with the mandatory trebling language in the ATA. Plaintiffs submit that under existing

precedent, these trebled judgment amounts should also be considered compensatory damages.

---

[8] We are still awaiting the receipt of additional VCF files from the Department of Justice via multiple
outstanding FOIA requests, the processing of which has been adversely impacted by both "normal"
delays in responding to FOIA requests as well as special circumstances related to the ongoing COVID
pandemic.

*See Stansell v. Revolutionary Armed Forces of Columbia*, 16-MC-00405 (LGS) (SN), ECF No.

443 (March 29, 2022) ("**The ATA's Treble Damages Provision is Compensatory**") (emphasis in

original). A separate column is included on Exhibit A and Exhibit B indicating the final judgment

after trebling of the damages values.

### F.    Punitive Damages

Moving Plaintiffs are also entitled to punitive damages.  In the *Havlish* Report and

Recommendation on damages, the magistrate judge explained that a "3.44 ratio 'has been

established as the standard ratio applicable to cases arising out of' terrorist attacks."  ECF No.

2618 at 13 (quoting *Est. of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C.

2011)).  This Court adopted that recommendation and awarded punitive damages on each

compensatory damages category at a ratio of 3.44 (punitive) to 1 (compensatory).  ECF No. 2623

at 2.  The Court has applied that ratio to awards for plaintiffs in other related cases.  *See*, *e.g.*,

ECF No. 3175 at 3 (Magistrate Judge Maas Report and Recommendation to apply a 3.44

punitive multiplier); ECF No. 3229 at 1 (Judge Daniels adopting in its entirety Judge Maas's

Report and Recommendation to apply a 3.44 multiplier); ECF No. 3300 at 1 and Exhibit A

(Judge Daniels applying 3.44 punitive multiplier to claims in *Ashton*).

However, in *Hoglan*, another case in the *In re Terrorist Attacks on September 11, 2001*

multidistrict litigation, Magistrate Judge Netburn recommended that the plaintiffs' request for

punitive damages be denied without prejudice.  ECF No. 3363 at 28.  Judge Daniels adopted

Magistrate Judge Netburn's Report in its entirety, denying without prejudice the plaintiffs'

request for punitive damages.  ECF No. 3384 at 6.

In light of the Court's decision in related litigation to defer determination of punitive

damage issues until a later stage of the litigation, Plaintiffs herein request permission to address

the issue of punitive damages at a later date.  *See*, *e.g.*, ECF No. 3666 (Judge Daniels' Order in

15

*Burnett* authorizing plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

### G.     Prejudgment Interest

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism.  *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011).  This Court awarded the *Havlish* plaintiffs prejudgment interest at a rate of 4.96% on their pain and suffering damages awards, to be calculated from September 11, 2001, until the date of judgment.  ECF No. 2618 at 13-14.  This Court, recognizing that prejudgment interest was appropriate in cases such as these cases, adopted the magistrate judge's reasoning, finding that an award of prejudgment interest was appropriate and accepting the rate of 4.96%, as proposed by the *Havlish* plaintiffs' expert.

After the *Havlish* award, plaintiffs in *Ashton* and *Bauer* proposed, and the Court agreed, that prejudgment simple interest at the New York State statutory rate of nine percent per annum was appropriate in cases where the injuries arose in New York and the prejudgment interest used in *Havlish*, 4.96 percent per annum, compounded annually, should be reserved for only those cases where the injuries arose in other states.  *See* ECF Nos. 3229 at 2, 3300 at 1, 3341 at 1.

The Second Circuit has held that New York State's statutory prejudgment interest rate should apply to the damages awarded to World Trade Center complex leaseholders in their litigation against American Airlines and United Airlines brought under the federal Air Transportation Safety and System Stabilization Act ("ATSSSA").  Pub. L. No. 107-42, 115 Stat. 230 (2001) (codified as amended at 49 U.S.C. § 40101); *In re Sept. 11 Litig.*, 802 F.3d 314, 343 (2d Cir. 2015).  In that case, the Second Circuit concluded that a federal cause of action under the ATSSSA must look to state rules concerning prejudgment interest.  *Id.*  Accordingly, the

Second Circuit held that New York's statutory prejudgment interest rate of nine percent as opposed to a lower rate crafted under federal law, had to be applied to the plaintiffs' claims related to the 9/11 Attacks.  *Id.*

However, subsequently, in *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent interest rate for prejudgment interest should be applied to all of the solatium claims. ECF No. 3363 at 28-29.  Judge Daniels adopted Magistrate Judge Netburn's *Hoglan* Report in its entirety and applied the interest rate of 4.96 percent per annum, compounded annually to all of the claims.  ECF No. 3384 at 6.  Thereafter, in *Burnett/Iran II*, the Court again awarded prejudgment interest of 4.96 per annum, compounded annually.

In light of the Court's decisions in *Hoglan* and *Burnett*, applying the 4.96 percent rate to prejudgment interest, the Moving Plaintiffs respectfully request that the clerk be directed to award prejudgment interest at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001, until the date of the judgment.

## V.    CONCLUSION

For the reasons set forth herein, the statements contained in the Goldman Declaration, as well as those set forth in prior motions for damages made on behalf of Moving Plaintiffs as to Iran, along with the previous decisions of this Court as to damages, the Moving Plaintiffs identified in Exhibit A and Exhibit B respectfully request that the Court grant an Order:

> (1)     finding the Taliban jointly and severally liable with Iran and awarding damages judgments to Moving Plaintiffs identified in Exhibit A and Exhibit B, against the Taliban in the same amounts previously awarded by this Court to various similarly situated plaintiffs in *Burnett*, *Havlish*, *Ashton*, *Bauer*, *O'Neill*, and other cases against Iran (subject to trebling damages as indicated below); AND,

(2)     awarding solatium damages to those Moving Plaintiffs identified in Exhibit A in the amounts of $12,500,000 per spouse, $8,500,000 per parent, $8,500,000 per child, and $4,250,000 per sibling, as set forth in Exhibit A; AND,

(3)     awarding the estate of the 9/11 decedent, through its personal representatives and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 decedent, as identified in Exhibit B, compensatory damages for pain and suffering in the same per estate amount previously awarded by this Court regarding other estates of decedents killed in the September 11th Attacks, as set forth in Exhibit B; AND,

(4)     awarding compensatory damages to those Moving Plaintiffs identified in Exhibit B for decedents' pain and suffering in an amount of $2,000,000, as set forth in Exhibit B; AND,

(5)     awarding the estate of the 9/11 decedent, through its personal representative and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 decedent, as identified in Exhibit B, an award of economic damages in the amount as set forth in Exhibit B; AND,

(6)     awarding treble damages pursuant to the Anti-Terrorism Act, 18 U.S.C. § 2333(a), for solatium, economic, and non-economic damages, in the amounts set forth in Exhibit A and Exhibit B; AND,

(7)     finding that the treble damages awarded are compensatory in nature and not punitive; AND

18

(8)	awarding the Moving Plaintiffs prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages; AND,

(9)	granting the Moving Plaintiffs permission to seek punitive damages, economic damages, and other appropriate damages, at a later date; AND,

(10)	granting permission for all other Plaintiffs in the above-captioned matter not appearing in Exhibit A and Exhibit B to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed; AND,

(11)	granting to the Plaintiffs such other and further relief as this honorable court deems just and proper.

Dated:	New York, New York	Respectfully submitted,
	August 25, 2022

/s/ Jerry S. Goldman
ANDERSON KILL P.C.
Jerry S. Goldman, Esq.
Bruce E. Strong, Esq.
Alexander Greene, Esq.
Ethan Greenberg, Esq.
1251 Avenue of the Americas
New York, NY 10020
Tel:  (212) 279-1000
Fax: (212) 278-1733
Email:  jgoldman@andersonkill.com
	bstrong@andersonkill.com
	agreene@andersonkill.com
	egreenberg@andersonkill.com
*Attorneys for Plaintiffs*

19