## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN)<br>ECF Case |

This document relates to:

*Federal Insurance Co., et al. v. Al Qaida, et al.,* 03-cv-06978
*Thomas E. Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.,* 03-cv-09849
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.,* 04-cv-01923
*Continental Casualty Co., et al. v. Al Qaeda, et al.,* 04-cv-05970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.,* 04-cv-07065
*Euro Brokers Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al.,* 04-cv-07279

## MEMORANDUM OF LAW IN OPPOSITION TO DUBAI ISLAMIC BANK'S MOTION TO EXCLUDE THE SUPPLEMENTARY EXPERT REPORT OF JONATHAN WINER

August 30, 2022

## TABLE OF CONTENTS

PRELIMINARY STATEMENT............................................................................................................1

BACKGROUND ...........................................................................................................................3

LEGAL STANDARD ....................................................................................................................6

ARGUMENT..................................................................................................................................8

   I.   WINER'S SUPPLEMENTAL REPORT IS A PROPER SUPPLEMENT ...........................9

      a.   The New Information..............................................................................................9

      b.   How the New Information Supplements Winer's Original Reports........................12

   II.   THE SUPPLEMENTAL REPORT IS SUBSTANTIALLY JUSTIFIED OR HARMLESS ..............15

      a.   The Supplemental Report is Justified...................................................................15

      b.   Allowing the Supplemental Report Would Not Result in Undue Prejudice (Harmless) ...................16

   III.   DIB'S MISCELLANOUS OBJECTIONS TO WINER'S SUPPLEMENTAL REPORT .................17

      a.   Notice ...................................................................................................................18

      b.   Expert Qualifications ............................................................................................18

      c.   Hearsay, Impermissible Subject Matters, Foundation .........................................19

   IV.   APPROPRIATE SANCTIONS ....................................................................................21

   V.   DIB'S PROPOSED ALTERNATIVE RELIEF ...............................................................23

CONCLUSION.............................................................................................................................25

i

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Colgate-Palmolive Co.*, 1985 WL 191 (S.D.N.Y. Jan. 14, 1985)............................................7

*Am. Gen. Life Ins. Co. v. Vistana Condo. Owners Ass'n*, No. 2:12-cv-01324-JAD-NJK, 2016 WL 1611585 (D. Nev. Apr. 21, 2016)...................................................................................................7

*Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988)...................................................................20

*Bridgeway Corp. v. Citibank*, 201 F.3d 134 (2d Cir. 2000)...........................................................20

*Coene v. 3M Co.*, 303 F.R.D. 32, 44 (W.D.N.Y. 2014)...................................................7, 15, 23

*Coles v. Perry*, 217 F.R.D. 1 (D.D.C. 2003)...................................................................................7

*Design Strategy, Inc. v. Davis,* 469 F.3d 284 (2d Cir. 2006)..........................................................23

*Engler v. MTD Products, Inc,* 304 F.R.D. 349 (N.D.N.Y. 2015) ....................................................8

*Geisermon v. MacDonald*, 893 F.2d 787 (5th Cir. 1990)...............................................................18

*Haas v. Delaware and Hudson Ry. Co.,* 282 Fed. Appx. 84 (2d Cir. 2008) ...................................23

*Hunt v. CNH Am. LLC,* 857 F. Supp. 2d 320 (W.D.N.Y. 2012).......................................................8

*Kunstler v. City of New York,* 242 F.R.D. 261 (S.D.N.Y. 2007) ..........................................7, 8, 16

*Lewis v. FMC Corp.,* 786 F. Supp. 2d 690 (S.D.N.Y. 2011).............................................1, 6, 7, 9

*Medline Indus., Inc. v. C.R. Bard, Inc.,* No. 17 C 7216, 2021 WL 809734 (N.D. Ill. Mar. 3, 2021) ..........................7

*Minebea Co. Ltd. v. Papst*, 231 F.R.D. 3 (D.D.C. 2005)..................................................................7

*Outley v. City of New York*, 837 F.2d 587 (2d Cir.1988) .................................................8, 21, 23

*Owens v. Republic of Sudan*, 864 F.3d 751 (D.C. Cir. 2017) ........................................................20

*Phoenix Light SF Ltd. v. Bank of New York Mellon,* 2019 WL 5957221 (S.D.N.Y. Nov. 13, 2019).....................8

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd., v. Coventry First LLC*, 280 F.R.D. 147 (S.D.N.Y. 2012) ........................................................................7, 8, 21, 23

*Safespan Platform Sys., Inc. v. EZ Access, Inc.,* 2011 WL 7473467 (W.D.N.Y.2011) ...................23

*Securities and Exchange Commission v. Ripple Labs, Inc.* 20-cv-10832-(AT) (SN), 2022 WL 1154348 (S.D.N.Y. April 22, 2022)..............................................................................2

*Simo Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 354 F. Supp. 3d 508 (S.D.N.Y. 2019)..........passim

*Sims v. Great American Life Ins.*, 469 F.3d 870 (10th Cir. 2006) ..................................................18

*Softel Inc. v. Dragon Med. & Sci. Communications*, 118 F.3d 955 (2d Cir. 1997) ..........................2

*Star Direct Telecom, Inc v. Global Crossing Bandwidth, Inc,* 272 F.R.D. 350 (W.D.N.Y. 2011).................7

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100 (S.D.N.Y. 2018) ...................13

*Williams v. County of Orange,* No. 03 CIV 5182(LMS), 2005 WL 6001507 (S.D.N.Y. Dec. 13, 2005) ...................7

**Rules**

Fed. R. Civ. P. 26 ..............................................................................................................passim

Fed. R. Civ. P. 26(a) .................................................................................................................7

Fed. R. Civ. P. 26(a)(2)(B)).......................................................................................................8

Fed. R. Civ. P. 26(e)(1)(A) ....................................................................................................6, 17

Fed. R. Civ. P. 26(e) ...........................................................................................................6, 7, 18

Fed. R. Civ. P. 26(e)(2) ..............................................................................................................1

Fed. R. Civ. P. 37 ...............................................................................................................8, 18

Fed. R. Civ. P. 37(c)............................................................................................................15, 23

Fed. R. Civ. P. 37(c)(1) ..............................................................................................................7

Fed. R. Civ. P. 60(b)(2) ............................................................................................................17

Fed. R. Evid. 803(8)..................................................................................................................20

Fed. R. Evid. 807 ......................................................................................................................20

## PRELIMINARY STATEMENT

Plaintiffs in the above-referenced actions oppose the motion (ECF No. 8343) of Defendant Dubai Islamic Bank ("DIB") to exclude the June 2022 Supplementary Report of Plaintiffs' expert Jonathan Winer ("Supplemental Report"). DIB contends that the Supplemental Report should be excluded on the grounds that it was produced after the August 2021 deadline for expert discovery; in the alternative, DIB asks that the Court grant what DIB terms "the full set of *ordinary* procedural protections," ECF No. 8344 at 24 (emphasis added)—namely, to provide DIB with a prompt opportunity to conduct a supplementary deposition of Mr. Winer and to thereafter make further responsive submissions of its own. Plaintiffs oppose DIB's request to exclude Mr. Winer's Supplemental Report, but would not object to the additional reciprocal protections outline below, including limited additional deposition time for DIB, focused solely on the Supplemental Report and authorization for a rebuttal expert report—provided that Plaintiffs have reciprocal access to depose the rebuttal expert.

CIA final intelligence assessments directly addressing details of DIB's terrorist support activities declassified by the United States pursuant to Executive Order 14040 on March 29, 2022, and which are the near exclusive subject of the Supplemental Report, provide crucial new evidence of DIB's extensive role in supporting Osama Bin Laden and Al Qaeda. Pursuant to Fed. R. Civ. P. 26(e)(2), because this important evidence was entirely unavailable to Plaintiffs prior to its declassification at the direction of the President, Plaintiffs were entitled (and arguably obligated) to have Mr. Winer supplement his report and deposition testimony to address it.[1]

---

[1] Fed. R. Civ. P. 26(e)(2); *Lewis v. FMC Corp.*, 786 F. Supp. 2d 690, 705 (S.D.N.Y. 2011) (where expert learns of material information that was previously unavailable, supplementation is permitted and, indeed, mandatory).

In its motion, DIB argues that supplementation is improper here because the *subject* of the Supplemental Report—that is, DIB's leading role in financing terror—has long been in dispute between the parties to this litigation. Thus, for example, DIB asserts—without any authority—that the "availability of additional supports for positions Plaintiffs have been advancing throughout this litigation is not a valid basis for reopening discovery."[2]

DIB is plainly wrong. Rule 26 calls for supplementation whenever new material *information* becomes available—even if (as is usually the case) that new evidence relates to an issue already in controversy. Here, the wealth of evidence in the form of recently declassified final intelligence assessments addressed by Mr. Winer is both new and material. Accordingly, Mr. Winer's supplemental report is proper and there is no need to invoke the "harsh" remedy of excluding the Supplemental Report.[3]

Thus, for the reasons detailed below, the Court should deny DIB's Motion to Exclude (hereinafter "DIB's Motion") the Supplemental Report. Plaintiffs do not object to affording DIB a reasonable opportunity to depose Mr. Winer as to the facts and opinions presented in the Supplemental Report, or to offer an appropriate supplemental expert opinion limited to responding to the Winer Supplemental Report.[4] Because DIB's renewed motion to dismiss for lack of personal jurisdiction was placed on an accelerated track, these processes would not delay the overall proceedings as to the merits and personal jurisdiction defendants. In any case, Plaintiffs are entitled to the benefit of the newly declassified evidence, even if it necessitates some additional processes.

---

[2] ECF No. 8344 at 7.

[3] *See Softel Inc. v. Dragon Med. & Sci. Communications*, 118 F.3d 955, 961 (2d Cir. 1997); *Securities and Exchange Commission v. Ripple Labs, Inc.* 20-cv-10832-(AT) (SN), 2022 WL 1154348 (S.D.N.Y. April 22, 2022) (Netburn, J.).

[4] Any additional testimony DIB may seek to introduce must be proper, limited to rebutting the Supplemental Report, and Plaintiffs must be afforded limited discovery as to any rebuttal testimony or evidence. For example, DIB should not be permitted to offer testimony that was previously available or that would amount to impermissible character evidence.

## BACKGROUND

On November 4, 2019, this Court issued an Order setting a schedule for expert discovery,[5] which was ultimately modified to set deadlines of February 2, 2021, for plaintiffs' expert rebuttal reports and August 6, 2021, for completing expert discovery.[6]

On January 17, 2020, more than two years *before* receiving new information in the FBI and CIA documents, the Plaintiffs' Executive Committee wrote a letter to the Court and all counsel serving notice of the identity of Plaintiff's expert witnesses and the scope of their testimony.[7] With respect to Jonathan Winer, the PECs stated that Mr. Winer would testify about (among other things): "Al Qaeda's pre-9/11 financial needs and sources of funding; . . . the manner that support to Al Qaeda enhanced Al Qaeda's strike capabilities to enable it to carry out the 9/11 attacks; . . . the significance and impact of the U.S. government's engagement with Emirati officials concerning Dubai Islamic Bank prior to 9/11 and State Department spokesman James Foley's statements relating to those engagements; and the significance and impact of the investigations and account closures described in the testimony of Alan Fine."[8]

Mr. Winer submitted timely initial and rebuttal expert reports on March 10, 2020, and February 22, 2021. He was deposed for fourteen hours on the record, including by DIB counsel, over the course of more than 17 ½ hours on July 13 and July 14, 2021, shortly before the deadline for completion of expert discovery. Questioning by DIB's counsel spanned 50 pages of the transcript.

On September 3, 2021, President Biden issued Executive Order 14040 ("EO 14040"). The President noted that members of the 9/11 community "continue to seek full accountability for the

---

[5] ECF No. 5266.

[6] ECF Nos. 6555, 6657, 6815.

[7] *See* ECF No. 8345-3.

[8] ECF 8345-3 at ¶ 7.

horrific attacks of September 11, 2001 (9/11)," and affirmed that the 9/11 families and "American people deserve to have a fuller picture of what their Government knows about those attacks."[9] The President therefore directed that certain government evidence, including CIA reports that had been withheld from the Plaintiffs in discovery, "should now be disclosed, except when the strongest possible reasons counsel otherwise."[10] The Department of Justice thereafter appeared before this Court and expressed the government's position that the interest of justice is served by the parties having the benefit of the evidence disclosed through the Executive Order process.[11]

Between September 2021 and April 2022, the FBI publicly released approximately 5,000 pages of investigative materials, and on March 29 and April 1, 2022 the CIA fulfilled its obligations under EO 14040 by releasing 864 pages of CIA intelligence reports and documents (hereinafter collectively referred to as the "EO Productions").[12] As detailed in the Supplemental Report, the CIA reports released in March and April 2022 include "finished intelligence"—that is, an "authoritative source of the CIA's assessment of facts, situations, events, persons, institutions, and issues covered in a finished intelligence report"—about "Bin Laden's and Al Qaeda's relationship with DIB and its senior management."[13] Those CIA reports contain particularized and previously unknowable details of DIB's "witting" sponsorship of al Qaeda, orchestrated by DIB's most senior leadership, including relationships that Plaintiffs sought to explore through discovery but that DIB did not disclose based on the searches it conducted.

---

[9] *See* https://www.federalregister.gov/documents/2021/09/09/2021-19578/declassification-reviews-of-certain-documents-concerning-the-terrorist-attacks-of-september-11-2001

[10] *Id.*

[11] Ex. B, Hearing Tr. at 13, Sept. 14, 2021. Exhibits ("Ex. __") are attached to the Decl. of Robert T. Haefele (Aug. 30, 2022).

[12] *See* ECF No. 8345-1 at ¶¶ 2.2 and 3.1.

[13] ECF No. 8345-1 at 5, ¶¶ 3.1 and 3.2.

For one example,[14] a newly produced November 17, 1998 CIA report entitled "Usama Bin Laden's Finances: Some Estimates of Wealth, Income and Expenditures" states definitively that "[DIB] has served as a key financial conduit for Al Qaeda and for Bin Laden's companies in Sudan," that "Bin Laden and his companies maintained [redacted] accounts at DIB," that "DIB Chairman Saeed Ahmed Lootah is a close friend of Bin Laden's," and that Bin Laden's chief financial officer "and other Al Qaeda members hold numerous accounts at [DIB] because of Bin Laden's reported friendship with DIB Chairman, Saeed Ahmed Lootah."[15] Notably, while  media accounts predating the release of these newly declassified CIA reports discussed in generalized terms that DIB maintained connections with Al Qaeda and terrorism, those reports did not contain any details about the particular relationships, transactions, or financial products that DIB deployed in support of Al Qaeda. Thus, the content of the EO Productions offered previously unknowable details and an entirely different degree of admissible evidence about DIB's relationship with and material support for Bin Laden and Al Qaeda.[16]

Due to the availability of new material evidence about DIB in the newly released EO Productions, Mr. Winer offered a supplemental report on June 17, 2022, to address the significance of that evidence to the claims and jurisdictional issues in the cases against DIB.[17] The Supplemental Report analyzes the newly declassified CIA and FBI reports and documents; briefly revisits limited

---

[14] The newly released CIA and FBI reports and documents are discussed in Plaintiffs' opposition to DIB's motion for summary judgment. ECF No. 8315 at 3-10.

[15] ECF No. 8345-1 at 6, ¶¶ 3.6 and 3.7.

[16] ECF No. 8315 at 20-25.

[17] ECF 8345-1 at 3, ¶ 1.3. Plaintiffs alerted DIB to the new evidence in early April, and the parties thereafter engaged in discussions about DIB's obligation to supplement its supplementation of DIB's discovery responses in light of the new evidence. Those discussions were ongoing when, on June 14, 2022, this Court denied DIB's request for an extension to refile its renewed motion to dismiss to allow additional time for the parties to conclude their dialogue. ECF No. 8096. Given the discussions about supplementation of DIB's discovery, Plaintiffs were awaiting that additional discovery before supplementing Mr. Winer's report, to avoid serial supplementations. When the Court denied DIB's extension request, Plaintiffs asked Mr. Winer to immediately finalize his supplemental report, and produced it three days later.

aspects of the previously existing record based on the new evidence from the EO Productions, and concludes:

> Taken as a whole, the newly available information provided in the newly declassified CIA Documents, supported further in the newly declassified information from the FBI, provides substantial evidence of the support and alignment of DIB management with Bin Laden and Al Qaeda's global jihad against the United States, made even more compelling when added to the existing record which shows the U.S. government asking the government of the United Arab Emirates to take action to clean the bank up and to close terrorist accounts there, as reflected in the more limited documentation previously available prior to the release on March 31-April 1, 2022, of the CIA documents.[18]

It is Mr. Winer's Supplemental Report that DIB now moves to exclude.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(e), parties have an affirmative duty to supplement expert discovery upon learning it is incomplete. Rule 26(e) requires a party to "supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure … is incomplete or incorrect."[19]   Supplementation of an expert report requires only that the supplementation was timely upon discovery that it is incorrect or incomplete.[20] "[T]he duty to supplement arises when the [party] subsequently learns of information that was previously unknown or unavailable, and the new information renders the earlier report incomplete or inaccurate."[21] Timeliness thus "depends on when the [supplementer] learned the information that rendered the previously-filed [disclosure] … incomplete."[22] Other courts, relying on the Southern District's ruling, have held that even if discovery deadlines have closed, supplements may still be "timely" because they

---

[18] ECF 8345-1 at ¶ 7.18.

[19] Fed. R. Civ. P. 26(e)(1)(A).

[20] *Simo Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 354 F. Supp. 3d 508, 510 (S.D.N.Y. 2019).

[21] *Lewis*, 786 F. Supp. 2d at 705.

[22] *Simo Holdings*, 354 F. Supp. 3d at 510.

are viewed in relation to when the new evidence was learned.[23] Rule 26 requires supplementation of an expert report "when a party discovers the information that it has disclosed is incomplete or incorrect."[24] The purpose of the rule is to prevent unfair surprise at trial and to further prevent an expert from "lying in wait" by expressing opinions at the last minute so that they cannot be thoroughly examined by the adverse party.[25]

The terms of Federal Rule of Civil Procedure 37(c)(1) would permit use of the supplemental report so long as its introduction after the expert deadline is justified and not unduly prejudicial. That rule provides that, if a party fails to comply with discovery rules "as required by Rule 26(a) or (e), the party is not allowed to use that information . . . unless the failure was substantially justified or harmless"[26] The justification standard means "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request."[27] Harmlessness means "an absence of prejudice,"[28] but lesser sanctions (compared to exclusion) can be deployed to "render…actions substantially harmless."[29]

---

[23] *See Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 17 C 7216, 2021 WL 809734, at *4 (N.D. Ill. Mar. 3, 2021) (citing *Am. Gen. Life Ins. Co. v. Vistana Condo. Owners Ass'n*, No. 2:12-cv-01324-JAD-NJK, 2016 WL 1611585, at *2 (D. Nev. Apr. 21, 2016)); *see also Allen v. Colgate-Palmolive Co.*, 1985 WL 191, at *1 (S.D.N.Y. Jan. 14, 1985) ("[t]he obligation to update and supplement [discovery] responses continues even after the close of discovery"); *Star Direct Telecom, Inc v. Global Crossing Bandwidth, Inc*, 272 F.R.D. 350, 358 (W.D.N.Y. 2011) ("The duty to supplement continues even after the discovery period has closed").

[24] *Lewis*, 786 F. Supp. 2d at 705 (citing *Coles v. Perry*, 217 F.R.D. 1, 3 (D.D.C. 2003)).

[25] *Minebea Co. Ltd. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005).

[26] Fed. R. Civ. P. 37(c)(1).

[27] *Coene v. 3M Co.*, 303 F.R.D. 32, 44 (W.D.N.Y. 2014) (citing *Kunstler v. City of New York*, 242 F.R.D. 261, 264–65 (S.D.N.Y. 2007)) (internal quotations and citations omitted).

[28] *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd., v. Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y. 2012) (citing *Williams v. County of Orange*, No. 03 CIV 5182(LMS), 2005 WL 6001507, at *3 (S.D.N.Y. Dec. 13, 2005)).

[29] *Simo Holdings*, 354 F. Supp. 3d at 511 (finding that further depositions would render dilatory parties conduct "substantially harmless").

Even where, unlike here, preclusion may be appropriate, the Second Circuit has deemed it an "extreme sanction;"[30] other Courts have found it "drastic and disfavored"[31] and "'a harsh remedy' [that] should be imposed only in rare situations."[32] In those instances where court's exercise discretion in considering the sanction,[33] the Second Circuit has stated courts should "inquire more fully into the actual difficulties which the violation causes" before granting.[34] When determining the appropriate sanctions under Rule 37, courts should consider: (1) the explanation for the delay in providing the evidence; (2) the importance of the new evidence; (3) the need for time to prepare to meet the testimony; and (4) whether a continuance is more appropriate (hereinafter the "*Outley* factors").[35] Accordingly, even where a discovery violation is determined to have occurred, the Second Circuit requires the Court to employ "less drastic responses."[36]

## **ARGUMENT**

DIB misstates the law from the first sentence of its argument by misconstruing the "supplemental" and "timely" requirements under Rule 26. DIB argues that the Supplemental Report

---

[30] *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir.1988); *see Engler v. MTD Products, Inc*, 304 F.R.D. 349, 355 (N.D.N.Y. 2015).

[31] *Simo Holdings*, 354 F. Supp. 3d at 510; *see Kunstler*, 242 F.R.D. at 265; *Engler*, 304 F.R.D. at 355.

[32] *Ritchie Risk,* 280 F.R.D. at 156–57; *Engler*, 304 F.R.D. at 355.

[33] *Id.* Stating "imposition of the preclusion sanction remains within the courts discretion."

[34] *Outley,* 837 F.2d at 591.

[35] The Second Circuit has long used these four factors in some form or fashion. *See Outley*, 837 F.2d 587; *see also Phoenix Light SF Ltd. v. Bank of New York Mellon,* 2019 WL 5957221, at *1 (S.D.N.Y. Nov. 13, 2019) (wherein the third factor is referred to as the "potential prejudice to an opposing party").

[36] *Outley*, 837 F.2d at 591 ("[b]efore the extreme sanction of preclusion may be used . . ., a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses. Considerations of fair play may dictate that courts eschew the harshest sanctions ... where failure to comply is due to a mere oversight of counsel amounting to no more than simple negligence.") (internal quotations omitted).

*See, e.g.*, *Hunt v. CNH Am. LLC,* 857 F. Supp. 2d 320, 340 (W.D.N.Y. 2012) (noting that courts should consider lesser sanctions before precluding a new expert opinion disclosed after discovery deadline in violation of Rule 26(a)(2)(B)), *aff'd,* 511 Fed. Appx. 43 (2d Cir. 2013).

should be barred because "time to submit expert reports on new issues has long since passed, Plaintiffs failed to seek an extension from this Court, and the Supplemental Report is not actually a supplementary report."[37] DIB argues, at 7-8, the Supplemental Report is not timely because "Plaintiffs served Mr. Winer's Supplemental Report well after the deadlines for Plaintiffs' affirmative and rebuttal expert reports set by the Court of March 10, 2020, and February 2, 2021," and because "the 'supplementary' report came a-year-and-a-half after his rebuttal report." But the timeliness in this context refers to the time between discovery of new information and the supplementation of the expert opinion.[38] Accordingly, the "timing" issue that DIB argues is immaterial to weighing the timeliness of the Supplemental Report. Instead, here, where Winer's Supplemental Report concerns information that was indisputably unavailable until just before his Supplemental Report, the Supplemental Report was timely and proper.

## I.   WINER'S SUPPLEMENTAL REPORT IS A PROPER SUPPLEMENT

Winer's report is a proper supplement because it addresses information previously unknown and unavailable until the EO Productions were released. A disclosure is a supplement, and thus timely, when the party "learns of information that was previously **unknown or unavailable**, and the new information renders the earlier report incomplete or inaccurate."[39] At that point, the party is obligated to supplement the earlier disclosure. Here, Plaintiffs can identify information that was classified and thus not previously available to or known to Plaintiffs. Moreover, Plaintiffs and Mr. Winer did not delay in serving the Supplemental Report

### a.   The New Information

---

[37] ECF No. 8344 at 7.

[38] *See Simo Holdings Inc.,* 354 F. Supp. 3d at 510 ("[w]hether the supplemental disclosures were timely, then, depends on when defendants learned the information that rendered the previously-filed invalidity contentions incomplete.").

[39] *Lewis*, 786 F. Supp. 2d at 705 (emphasis added).

The nature and specificity of the new information in the EO Productions implicating DIB in the support of Al Qaeda cannot be overstated.[40] Mr. Winer himself says in the second paragraph of his report that "the new evidence contains extensive information that was not previously available to me…."[41] Though the general issue of DIB's linkages to Al Qaeda may have been the subject of earlier media reports, DIB professed to have no knowledge as to the transactions or relationships that prompted U.S. engagements with Emirati officials (despite that senior Emirati officials held positions in DIB's management at the time of the meetings), a circumstance that complicated Plaintiffs' discovery efforts.[42] To overcome that obstacle, Plaintiffs sought discovery from the CIA, but the CIA withheld the information at issue wholesale. As such, it is undeniable that Plaintiffs have never had access to the finished intelligence reports of U.S. intelligence agencies before their declassification on March 29, 2022. Regarding the type of intelligence these reports present, Mr. Winer discusses the significance of "finished" intelligence in his Supplemental Report, explaining that "multiple sources of raw intelligence, as well as the knowledge and expertise of multiple layers of CIA analysts, are relied on to produce a finished intelligence report." Thus, even if the EO Productions cover, in an extremely general way, the same subjects (*i.e.*, DIB's support for Al Qaeda), it cannot be said that the finished intelligence is not a new source of authoritative evidence. Further, Winer's opinions concerning the

---

[40] This information is also discussed in Plaintiffs' opposition to DIB's motion for summary judgment, ECF No. 8315 at 3-10.

[41] ECF No. 8345-1, at ¶ 1.2.

[42] Despite these obstacles, Plaintiffs correctly deduced on the basis of their independent investigations that key aspects of DIB's support for al Qaeda likely flowed through bin Laden's businesses and sought to explore those issues through discovery. DIB resisted further discovery, and urged that any searches be limited to its legacy customer database. The Court approved that limited search scope, and DIB then insisted that it could conduct searches only for "exact" matches. *See* Ex. C, Hearing Tr. at 59, Mar. 22, 2016 (DIB states it will search its "primary legacy account record keeping system" and ECF No. 3791-12, at 3 ("for exact matches . . . in the full name accountholder field in DIB's electronic account record keeping system."). Plaintiffs now understand that the search protocol DIB advocated could not have captured relevant discovery—e.g., the letter of credit arrangements with bin Laden's businesses could not have been identified in searches of the legacy database, because they would not be treated as "customer" relationships; similarly, the "exact" match criteria may have set a near impossible bar as well, based on features of its legacy database uniquely known to DIB.

nature of the particular finished intelligence documents, the processes through which such reports are prepared, and their purposes could not have been offered before they were disclosed. Defendants would like the Court to accept that the allegations are "virtually identical" to a New York Times article from 1999, but that argument ignores the specific information contained within the EO Productions, and especially the CIA Documents. Specifically, new information that was unavailable before March 29, 2022, includes, but is not limited to, the following:

- Evidence that DIB maintained an account for Sulaiman Al Ali, which DIB previously indicated did not exist when it did not return any discovery based on its searches for "Sulaiman Al Ali" in its legacy account database;[43]

- Evidence that DIB issued letters of credit in favor of Osama Bin Laden, personally endorsed by DIB chairman Saeed Ahmed Lootah, again which were never produced by DIB;[44]

- Evidence that Saidi Madani al Tayyib was Al Qaeda's chief financial officer and held numerous accounts at DIB because of Bin Ladin's personal friendship with Chairman Lootah. Again, none of these accounts were produced by DIB, and;[45]

- Evidence that Chairman Lootah had close ties to National Islamic Front leader, Hassan Turabi;[46] and

- CIA assessments that "[DIB was] a key financial conduit for Usama Bin Ladin's Islamic Army" that stood out because of its "management's apparently witting involvement in the financial activities of … Usama Bin Ladin's Islamic Army."[47]

Though documents on the points outlined above would have been responsive to Plaintiffs' discovery requests, DIB (nor anyone else) disclosed no such information during the ordinary course of discovery. This evidence was learned only as the result of an executive action after persistent efforts by Plaintiffs to obtain the evidence through the means available to them, which had been denied.

---

[43] *See* ECF No. 8345-1, ¶¶ 7.10-11.

[44] ECF No. 8345-1 at ¶ 3.6.

[45] ECF No. 8345-1 at ¶ 3.7.

[46] ECF No. 8345-1 at ¶ 3.10.4.

[47] *Id.*

DIB's suggestion that the new evidence merely "echoes" past allegations is patently untrue and disingenuous. DIB does not even attempt to, and cannot, point to any record source for support. Instead, DIB conflates *information* (*i.e.,* specific evidence) with Plaintiffs' allegations. And surely, DIB cannot intend that Plaintiffs' allegations suffice as equal to evidence. Instead, the new evidence clearly implicates DIB in supporting Al Qaeda with tangible evidence such as account numbers, specific money transfers, and the existence of longstanding relationships between DIB and Al Qaeda, as well as letters of credit *issued in favor of Osama Bin Laden and personally endorsed by Chairman Lootah*, none which were known before the declassification of the EO Productions.[48]

### b.  How the New Information Supplements Winer's Original Reports

Mr. Winer's opinion has been clear and consistent since his original report, and DIB's suggestion that this is a wholly "new" opinion is inaccurate.

In Plaintiffs' original January 17, 2020 notice setting forth the scope of Mr. Winer's expert testimony, Plaintiffs stated that Mr. Winer would testify about (among other things):

> Al Qaeda's pre-9/11 financial needs and sources of funding … the manner that support to Al Qaeda enhanced Al Qaeda's strike capabilities to enable it to carry out the 9/11 attacks; … the significance and impact of the U.S. government's engagement with Emirati officials concerning Dubai Islamic Bank prior to 9/11 and State Department Spokesman James Foley's statements relating to those engagements, and the significance and impact of the investigations and account closures described in the testimony of Alan Fine.[49]

Winer was offered as an expert in terrorist financing and Plaintiffs specifically mention that he is an expert who will offer opinions relevant to Dubai Islamic Bank.

DIB argues, at 7, that Mr. Winer's original and rebuttal reports do not specifically mention allegations of DIB's support of Al Qaeda, and thus he cannot supplement an opinion he did not

---

[48] *See Id.*

[49] ECF 8345-3 at ¶ 7.

proffer. *First*, DIB ignores the obvious—that is, Mr. Winer could not have offered opinions supported by the documents that he had not yet seen.[50] *Second*, DIB also ignores that Mr. Winer's earlier reports do address "banking support" of Al Qaeda, Bin Laden's use of banking during his "Sudan period," and Bin Laden's relationship with the NIF and Hassan Turabi, all of which clearly pertain to the allegations against DIB. Based on the extremely limited discovery that was conducted and the lack of knowledge of the evidence that would later come from the EO Productions,[51] it was not appropriate at the time the initial reports were prepared to specifically discuss *DIB's* role in financing Al Qaeda. DIB's tactics in stifling discovery were only somewhat undone by the recent release of the EO Productions. The EO Productions enhanced and added to Mr. Winer's opinions by making previously unknown and unavailable information available to him; thus obligating his Supplemental Report. Mr. Winer's opinion—from his First Report to his Supplemental Report—has been consistent that Osama Bin Laden made use of friendships in the banking world to transfer money and support Al Qaeda. Mr. Winer's earlier reports related to Al Qaeda's funding were revealed to be incomplete by the EO Productions, and he was obligated to supplement his opinion.

DIB argues, at 12-13, that the Supplemental Report is not based on new information because it partially contains information that was available to him and which he relied on in his earlier Reports.[52] Mr. Winer's Supplemental Report compares the information he had access to in his original

---

[50] At base, DIB seeks to benefit from the fact that it did not disclose evidence concerning these relationships and transactions in discovery, making it impossible for Plaintiffs' experts to offer opinions to a reasonable degree of certainty prior to the declassification of the intelligence reports by the CIA. "Discovery is not a 'gotcha' game" and "the obligation on parties and counsel to come forward with relevant documents requested during discovery is absolute." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 123 (S.D.N.Y. 2018) (internal citations and quotations omitted). DIB should not be rewarded for treating it as such.

[51] *See* ECF No. 4046 for a recounting of DIB's discovery frustration.

[52] ECF No. 8344 at 10, stating "Those sources include The 9/11 Commission Report, RICO statements against DIB, prior filings and correspondences between counsel related to DIB, a number of press articles from twenty or more years ago…." *See also* ECF No. 8344 at 12, wherein DIB states "Many of the sources now relied upon by Mr. Winer in his Supplemental Report contain allegations virtually identical to those found in the Declassified Files."

report with the new information gained from the EO Productions. Defendants cite to no case law (and Plaintiffs have found none) stating that a supplemented opinion based on new information cannot also make reference to information that was previously available to the expert. That would unfairly hamstring any supplementation where an expert is confronted with information that obviates or contradicts his prior opinion, but he is unable to reference or address the outdated information for comparative purposes. Defendants further imply that much of Mr. Winer's report does not consist of new information by stating that "36 of the 48 sources he cites (plus DIB's document production) were available before the close of expert discovery."[53] DIB does not show their work on how they came to count these sources but, nevertheless, Mr. Winer's report contains 126 footnotes, of which 72 are to documents from the EO Productions (either CIA or EO bates stamped documents). This supports Plaintiffs' assertion that Mr. Winer's citations and discussion of documents available before the close of expert discovery are for comparative purposes. A plain reading of the Supplemental Report leaves no doubt that he makes extensive use of documents present in the EO Productions. In fact, his first 32 footnotes are all to documents the CIA produced as part of the EO Production. DIB's argument that his Supplemental Report did not consist *exclusively* of the EO Productions is meritless.

Lastly, DIB also asserts that the Supplemental Report does not supplement Mr. Winer's opinion because he never addressed DIB in his deposition. But again, the evidence sufficient to offer affirmative opinions on DIB's particular activities in support of al Qaeda simply was not available to Plaintiffs or Mr. Winer prior to disclosure of the CIA documents. The fact that Mr. Winer did not offer affirmative opinions as to DIB's specific role in supporting al Qaeda earlier only underscores his integrity and fidelity to the Rules. Moreover, DIB did in fact question Mr. Winer at length and was free to ask him any questions it chose, including about DIB itself. Instead, counsel for DIB chose to

---

[53] ECF No. 8344 at 2.

query Mr. Winer for over an hour on the OFAC designation process, his expertise, and his qualifications.[54] DIB also found time to quiz Mr. Winer on names, dates, and events significant to the study of terrorism, including the 1993 World Trade Center Bombing, the Bojinka Plot, and the status of Ramzi Youssef and Khalid Sheikh Mohammad as members of Al Qaeda.[55] The simple fact is that DIB made the strategic decision to avoid questioning Mr. Winer about DIB itself or as to topics DIB itself now proffers as relevant to the claims against DIB (such as bin Laden's businesses).

In sum, the Supplemental Report is proper as it is clear that it was "prompted by previously unknown information."[56] Mr. Winer even states this fact in the opening paragraphs of the Supplemental Report, when he says "[t]he new evidence contains extensive information that was not previously available to me, as it has only now been made public for the first time as a result of the declassification review required by EO 14040 from material previously maintained as classified by the CIA and the FBI."[57] Here, there is no suggestion that either Mr. Winer or the Plaintiffs were "lying in wait,"[58] or attempting to surprise DIB at trial.

## II.   THE SUPPLEMENTAL REPORT IS SUBSTANTIALLY JUSTIFIED OR HARMLESS

### a.  The Supplemental Report is Justified

Assuming *arguendo* that the Supplemental Report is improper under Rule 26, preclusion under Rule 37(c) would be an inappropriate remedy. Rule 37(c) authorizes preclusion where there has been a failure to provide information as required by Rule 26 "*unless the failure was substantially justified*…."[59]

---

[54] Ex. A, Deposition of Jonathan Winer, beginning at 524:23. DIB questioned Mr. Winer as to his methodology, his expertise, and the designation and de-designation processes under Executive Order 13224. *See, e.g.,* Ex. A, at 531:3 – 19.

[55] *See, e.g.,* Ex. A at 548:5 – 553:17.

[56] *Coene*, 303 F.R.D. at 43.

[57] ECF No. 8345-1 at ¶, ¶ 1.2.

[58] *Supra* n. 25.

[59] Fed. R. Civ. P. 37(c) (emphasis added).

It is difficult to imagine a more justifiable scenario to supplement an expert opinion than the current one. The idiom that it would "take an act of Congress" to accomplish an impossible task is now cliché[60], yet the scenario at present, in terms of difficulty, is even a step above that. Obtaining the documents revealed in the EO Productions required a unilateral act of the President of the United States commanding federal law enforcement and intelligence agencies to declassify documents within six months of this command. Mr. Winer justifiably was not able to supplement his report until those agencies complied with the President's command and made the documents available.

Here, Mr. Winer's purported "failure" to provide his Supplemental Report before the August 2021 expert discovery deadline is "substantially justified" because the documents and evidence upon which his Supplemental Report is based were not declassified and made available until March 29, 2022. These documents directly and materially implicate DIB in supporting Osama Bin Laden and Al Qaeda and—despite DIB's assertions that Mr. Winer could have used other sources for the same information—the documents contained specific and particularized evidence (and relevant assessments by the government agencies charged with investigating the 9/11 attacks) that was unknown and unknowable to anyone without the high-level security clearances required to access these documents. As is his obligation, Mr. Winer did not delay in producing his Supplemental Report, as it was served on DIB less than three months after the disclosure of the EO Productions.[61] This justification "could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request."[62]

**b. Allowing the Supplemental Report Would Not Result in Undue Prejudice (Harmless)**

---

[60] *See* https://idioms.thefreedictionary.com/it+would+take+an+act+of+Congress+to+(do+something)

[61] 80 days, to be precise (March 29, 2022 – June 17, 2022).

[62] *Kunstler,* 242 F.R.D. at 264–65 (internal quotations and citations omitted)

DIB is not unduly prejudiced by the Court considering the Supplemental Report and the volume of newly available evidence addressed in that report; indeed, DIB should not benefit from evading discovery on the issues addressed in the Supplemental Report and the EO Productions. *First*, applying the logic of DIB's own argument, if Mr. Winer's Supplemental Report is merely a rehashing of old information, DIB has already had access to Mr. Winer for over 17 ½ hours to question him about that old information. But, *second*, considering that no trial date is set for this case and the importance of the issues addressed in the Supplemental Report and the EO Productions, the parties' respective interests can be addressed by authorizing limited additional expert discovery, similar to what DIB has proposed as its alternate relief but with specific modifications as outlined below to protect Plaintiffs.

Further, DIB is not prejudiced because its renewed motion to dismiss was, at DIB's insistence, set on an accelerated track, such that minimal discovery focused on the Supplemental Report would not delay the progression of any defendants in this case. The only danger of prejudice is to Plaintiffs if due consideration of the new evidence is prevented or reciprocal discovery is not afforded.

Finally, regardless of whether the report is labeled "new" or "supplemental" is immaterial. The introduction of the new evidence at issue here is analogous to relief available under Federal Rule of Civil Procedure 60(b)(2), which would permit relief, even after final judgment, due to "newly discovered evidence which by due diligence could not have been [timely] discovered. . . ." The aims of Rules 60(b)(2) and 26(e)(1)(A) are the same, to prevent prejudice to a party by the late uncovering of existing evidence. Applying these factors to the present situation, in an equitable sense, demonstrates that Plaintiffs should have a fair opportunity to analyze and present this new evidence.

## III.   DIB'S MISCELLANOUS OBJECTIONS TO WINER'S SUPPLEMENTAL REPORT

17

Included in DIB's Motion are sets of slapdash arguments unrelated to Rules 26 or 37, more suited to a *Daubert* motion. Nevertheless, Plaintiffs will respond to each in turn.

### a. Notice

DIB argues, at 8 & 16, the Supplemental Report must be precluded because plaintiffs failed to provide advance notice of the report to DIB or seek leave of the Court before serving the Supplemental Report. DIB's authority for these two "requirements" are two out-of-circuit cases, *Geisermon v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990) and *Sims v. Great American Life Ins.*, 469 F.3d 870, 895 (10th Cir. 2006).[63] These cases are inapposite, as they deal with the late designation of expert witnesses and are silent regarding supplementation of expert reports submitted pursuant to Rule 26. Indeed, there is no requirement to provide advance notice or seek leave before filing a supplementary expert report under Rule 26(e). Thus, Plaintiffs' procedure here, to supplement the expert disclosure promptly under Rule 26(e), then meet and confer with DIB about its objections to the admissibility of the Supplemental Report, is both fair and proper. Regarding DIB's assertion that Plaintiffs should have sought leave to serve the report, DIB ignores that production of the report was deferred precisely because DIB was dragging its feet in regards to Plaintiffs' demand that DIB supplement its own discovery responses and Plaintiffs good faith belief that DIB would adhere to its obligations and provide additional evidence. As soon as the Court denied DIB's request for a further extension to file its renewed motion to allow that discovery to be completed, Plaintiffs served the Winer report within days, to ensure that DIB would have an opportunity to conduct discovery of Mr. Winer and address the report in its reply brief in support of its motion to dismiss.

### b. Expert Qualifications

---

[63] ECF No. 8344 at 14.

*Second*, DIB argues, at 22-23, that Mr. Winer is not qualified to testify as an expert witness on DIB's role in financing terrorism. This is an argument more appropriate for a *Daubert* motion, and indeed was set forth in Defendants' *Daubert* memorandum previously filed at ECF No. 7343. Briefly, Mr. Winer's extensive experience in the U.S. Government qualifies him to opine on the import of the conclusions of the EO Productions, and the import of the fact that the EO Productions consist of "finished intelligence." Mr. Winer is better positioned to read and interpret these documents than a member of the general public and his choice to write in "plain English and all"[64] is of no consequence. Plaintiffs more fully addressed Mr. Winer's experience in our Opposition to Defendants Motion to Exclude and hereby incorporate those counterarguments, as set forth at ECF No. 7606, here.

### c. Hearsay, Impermissible Subject Matters, Foundation

*Third*, DIB contends, at 17, that Winer's Supplemental Report constitutes "patent" and "stunning" impropriety. To support this contention, DIB asserts that the Supplemental Report: (a) attempts to "bolster impermissible hearsay"; (b) "addresses impermissible subject matters"; and (c) "lacks foundation."[65]

Plaintiffs' arguments in response to these assertions are set forth in Plaintiffs' Memorandum of Law in Opposition to Defendant [DIB's] Motion for Summary Judgment and Renewed Motion for Dismissal, which are incorporated herein.[66] In summary, though, in his Supplemental Report, Mr. Winer analyzes newly declassified CIA and FBI reports. The documents address sensitive issues of national security, were compiled by career intelligence officials to distribute to the highest level of governmental agencies for counterterrorism objectives, and, by this very nature, are reliable. Indeed, as DIB has itself noted, these documents and others like them were cited and relied upon by the 9/11

---

[64] ECF No. 8344 at 23.

[65] ECF No. 8344 at 17-22.

[66] ECF No. 8315 at 20–25.

Commission in its Final Report.[67] They thus fall squarely within the public records exception of Rule 803(8) of the Federal Rules of Evidence ("FRE") and also are admissible under the residual hearsay exceptions of FRE 807.[68]

DIB's claim that the Supplemental Report "addresses impermissible subject matters" is similarly misguided. DIB alleges, at 6, because the phrase "knowingly aided and abetted" features in the question Mr. Winer was asked to opine on, he has improperly offered a legal conclusion. Mr. Winer does not use that phrase and does not offer a legal conclusion. He analyzes the EO Productions by speaking to DIB's "support" for and "alignment" with Al Qaeda and its objectives.[69]  In any case, Mr. Winer's opinions are not limited to the particular phrases DIB focuses on, but instead provide an analysis of the nature of the CIA documents, the evidence in those documents, and various aspects of their significance to the claims and theories in this litigation. While DIB's objections to the particular phrases are misplaced, they do not in any case provide a basis to exclude Mr. Winer wholesale from testifying to the matters discussed in the Supplemental Report.

DIB further alleges that the Supplemental Report "lacks foundation" because its sources do not "survive a rigorous examination of the facts" and because Mr. Winer purportedly "ignores highly relevant evidence."[70] DIB's argument here amounts to nothing more than a statement of general disagreement with the facts and conclusions of the EO Productions and Mr. Winer's analysis of those documents. DIB counsel offers DIB senior management's "eagerness to investigate the allegations"

---

[67] ECF 8127 at 29.

[68] FRE 803(8)(A)(iii); FRE 807. The Supreme Court has endorsed a "broad approach to admissibility" under Rule 803(8), pursuant to which the phrase "factual findings" includes "conclusion[s] or opinion[s]" contained within a public record. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988). Once proffered, a public record is presumptively admissible, and the opponent bears the burden of showing it is unreliable. *See Bridgeway Corp. v. Citibank*, 201 F.3d 134, 143 (2d Cir. 2000). *See also Owens v. Republic of Sudan*, 864 F.3d 751, 792-93 (D.C. Cir. 2017) (State Department reports containing factual findings and conclusions concerning Sudan's support of terrorism are admissible) (collecting cases).

[69] ECF No. 8345-1 at ¶ 7.13.

[70] ECF No. 8344 at 20-21.

as an indication that Mr. Winer ignored evidence, yet provides no indication or citation for this "eagerness" nor do they provide a legal basis for why a disagreement as to the facts would warrant preclusion of an expert report. As such, DIB's argument that the Supplemental Report "lacks foundation" is meritless.

## IV.   **APPROPRIATE SANCTIONS**

Because the Supplemental Report was proper, no sanctions are warranted. However, if any sanction could be warranted, the Court should not impose the extreme,[71] harsh,[72] drastic and disfavored[73] remedy of preclusion. If the Court were to consider the *Outley* factors, each of the four factors weigh in Plaintiffs' favor.

*First*, Plaintiffs' explanation for not submitting the Supplemental Report before the Court's deadline for service of experts' reports is strong. Documents critical to proving the allegations against DIB were classified and unavailable to Plaintiffs until an act of the President of the United States set in motion the declassification of those documents. Without EO 14040, Plaintiffs would not have obtained documents evidencing that DIB maintained accounts it previously represented did not exist. DIB seeks to benefit from years of discovery disputes and their own obfuscation by now excluding the Supplemental Report without basis. Had DIB been forthcoming with their productions in the first place, Mr. Winer could have analyzed documents years ago and this issue would have been avoided. Instead, DIB conducted their searches employing an unreasonable search methodology that it designed to fail, in order to leave Plaintiffs without relevant production documents for years.[74]

---

[71] *Outley*, 837 F.2d at 591.

[72] *Ritchie Risk*, 280 F.R.D. at 156–57.

[73] *Simo Holdings*, 354 F. Supp. 3d at 510.

[74] *See* ECF No. 4046.

*Second*, the information in the EO Productions is critical to Plaintiffs' case against DIB, and thus the Supplemental Report is equally as critical. Plaintiffs have not submitted any other expert report against DIB addressing the information addressed in the EO Documents. Without the new evidence, Plaintiffs had no evidence that DIB had evaded production of: evidence of accounts like the account of Sulaiman Al Ali; evidence of the letters of credit it issued in favor of Osama Bin Laden and other Al Qaeda agents and entities, personally endorsed by DIB chairman Lootah; evidence that DIB held accounts for and provided financial services to Al Qaeda's CFO al Tayyib and other al Qaeda officers because of Bin Ladin's personal friendship with DIB chairman Lootah; evidence that Chairman Lootah had close ties to National Islamic Front leader, Hassan Turabi;  and evidence of the CIA's assessments that "[DIB was] a key financial conduit for Usama Bin Ladin's Islamic Army" that stood out because of its "management's apparently witting involvement in the financial activities of … Usama Bin Ladin's Islamic Army." Precluding Plaintiffs only expert report as to the information uncovered by the EO Documents would have a harmful and prejudicial effect on Plaintiffs' case.

*Third*, the time needed for DIB to prepare to meet the evidence is minimal. In DIB's own words, it believes the content of the Supplemental Report to be rehashed information. If that is the case, then DIB must consider the information to be familiar to it and should be able to quickly prepare for a short deposition of Mr. Winer focused narrowly on his Supplemental Report. Moreover, the Supplemental Report is only thirty-pages long. To the extent that DIB felt necessary, a single, equally brief, rebuttal report could address the content of the Supplemental Report.

*Fourth*, the possibility of obtaining a continuance should not be an issue here. Again, no trial date has been set, and no decision regarding DIB's recently filed Motion for Summary Judgment has been made. This issue has not been raised "on the eve of trial" and does not "present a novel theory

late in the proceedings."[75] Thus, if any discovery is necessary, there is ample time for DIB to conduct limited discovery to respond to the Supplemental Report.[76]

Lastly, while "a showing of 'bad faith' is not required for preclusion to be ordered under Rule 37(c), a party's bad faith 'can be taken into account' by the [c]ourt in considering the party's explanation for its failure to satisfy its discovery obligations."[77] Though never explicitly stated, Defendants imply that the timing of the service of the Supplemental Report was done in bad faith.[78] This is not true. Plaintiffs and Mr. Winer were at the mercy of the United States government and its ability to produce documents in a timely manner is instructed by EO 14040. There was no delay in the writing of the Supplemental Report, or of its service, to coincide with Defendants Second Motion for Summary Judgment. The *Outley* factors are designed to prevent "sandbagging' an opposing party with new evidence."[79] But here, there was no attempt to "sandbag;" indeed, the service of Mr. Winer's Supplemental Report in advance of Plaintiffs' Opposition to DIB's summary judgment/dismissal motion, and well in advance of any hearing on that motion, afforded DIB awareness of Mr. Winer's Supplemental Report without any possibility of "sandbagging" DIB.

## V.    DIB'S PROPOSED ALTERNATIVE RELIEF

---

[75] *See Safespan Platform Sys., Inc. v. EZ Access, Inc.,* 2011 WL 7473467, at *4 (W.D.N.Y.2011), *report and recommendation adopted,* 2012 WL 777305 (W.D.N.Y.2012).

[76] *See Coene,* 303 F.R.D. at 45 (ruling "Indeed, no trial date has been set, and the pending summary judgment motions have not yet been decided by the district court. Thus, a  continuance to allow 3M time to conduct limited discovery related to the new opinion and to supplement its expert report is not unreasonable".).

[77] *Ritchie Risk,* 280 F.R.D. at 157 (quoting *Design Strategy, Inc. v. Davis,* 469 F.3d at 296).

[78] ECF No. 8344 at 14, stating "[y]et only as DIB was filing its second iteration of its summary-judgment motion did Plaintiffs serve Mr. Winer's Supplemental Report."

[79] *Haas v. Delaware and Hudson Ry. Co.,* 282 Fed. Appx. 84, 86 (2d Cir. 2008). Indeed, the service of Mr. Winer's Supplemental Report in advance of Plaintiffs Opposition to DIB's summary judgment/dismissal motion and well in advance of any appearance at a hearing on that motion afforded DIB awareness of Mr. Winer's Supplemental Report without any attempt to "sandbag" DIB.

DIB proposes, at 24-25, that the Court should "permit DIB to obtain all sources on which Mr. Winer relies and depose him on his brand-new opinions about DIB."[80] DIB also requests that the Court "reopen discovery to allow DIB to submit new expert reports of its own regarding the same subject matters and/or regarding new information that has become available since the close of expert discovery."[81] Defendants also request the opportunity to submit a *Daubert* motion challenging the Supplemental Report's admissibility. Plaintiffs would not object to much of the above, with the following modifications.

*First*, Plaintiffs do not object that DIB can obtain all sources on which Mr. Winer relies in his Supplemental Report. As stated above, Mr. Winer was previously deposed for fourteen hours (on the record) across two days, spanning more than 17 ½ hours. That deposition thoroughly covered Mr. Winer's first two reports and his methodology, experience, and expertise, all of which are unchanged in this instance. If the Court grants DIB the opportunity to depose Mr. Winer again, Plaintiffs respectfully request that the deposition topics be limited to only the substance of the Supplemental Report and run no longer than three hours on the record, which is more than enough time to cover the substance of the thirty-page Supplemental Report.

*Second*, should the Court determine that DIB can submit an additional expert report that is solely responsive to the Supplemental Report, Plaintiffs would respectfully request that the Supplemental Report be limited to a page-length the Court deems appropriate and that expert be made available for deposition for the full seven-hours as stipulated under the Federal Rules (unlike DIB, Plaintiffs would not have had access to DIB's rebuttal witness for the 14-hour deposition that DIB has already had with Mr. Winer).

---

[80] Plaintiffs disagree with the characterization of the Supplemental Report as offering "brand-new opinions."

[81] Plaintiffs agree with Defendants here that there has been "new information" that has become available since the close of expert discovery.

*Third*, if the Court decides that DIB may file a supplemental motion to exclude Mr. Winer's opinions in the Supplemental Report under *Daubert* principles, Plaintiffs request that the *Daubert* motion be limited to the content of Winer's Supplemental Report, as Mr. Winer's methodology, expertise, and qualifications have already been fully briefed. To the extent that DIB offers its own expert to rebut the Supplemental Report, in addition to a deposition, Plaintiffs respectfully request an opportunity to fully brief for their exclusion under *Daubert* principles.

## **CONCLUSION**

For the foregoing reasons, this Court should deny DIB's Motion to Exclude the Supplemental Report. However, Plaintiffs would not object if the Court afforded DIB the alternative relief requested, subject to Plaintiffs' proposed modifications.

Date:  August 30, 2022                              Respectfully submitted,

COZEN O'CONNOR                              MOTLEY RICE LLC

By:  /s/ Sean P. Carter                              By:  /s/ Robert T. Haefele
SEAN P. CARTER                              ROBERT T. HAEFELE
One Liberty Place                              28 Bridgeside Boulevard
1650 Market Street, Suite 2800                  Mount Pleasant, SC 29465
Philadelphia, Pennsylvania 19103              Tel.: (843) 216-9184
Tel.: (215) 665-2105                              Email: rhaefele@motleyrice.com
Email: scarter@cozen.com

*For the Plaintiffs' Exec. Committees*              *For the Plaintiffs' Exec. Committees*

ANDERSON KILL P.C.

By: /s/ Jerry Goldman
JERRY GOLDMAN
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 278-15679
Email: jgoldman@andersonkill.com

*For the Plaintiffs' Exec. Committees*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of Plaintiffs' Memorandum of Law in Opposition to Defendant Dubai Islamic Bank's Motion To Exclude the Supplementary Expert Report Of Jonathan Winer, was electronically filed this 30th day of August 2022. Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system.

_____
C. Ross Heyl, Esq.