UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN)<br>ECF Case |
|---|---|

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977 (GBD)(SN) (and member case *Hugh A. Chairnoff, et al. v. Islamic Republic of Iran*, 1:18-cv-12370(GBD) (SN)))

# MEMORANDUM OF LAW IN SUPPORT OF MOTION
# FOR PARTIAL FINAL JUDGMENT FOR SOLATIUM FOR JAMIE K. HAWKINS

## (*CHAIRNOFF/IRAN II*)

FLEISCHMAN BONNER & ROCCO LLP
James P. Bonner (jbonner@fbrllp.com)
Patrick L. Rocco (procco@fbrllp.com)
Susan M. Davies (sdavies@fbrllp.com)
81 Main Street, Suite 515
White Plains, New York 10601
Telephone:  646-415-1399

Patrick M. Donahue (admitted *pro hac vice*)
P. Joseph Donahue (admitted *pro hac vice*)
THE DONAHUE LAW FIRM, LLC
18 West Street
Annapolis, MD 21401
Telephone: (410) 280-2023
pmd@thedonahuelawfirm.com
pjd@thedonahuelawfirm.com

Joseph Peter Drennan (admitted *pro hac vice*)
218 North Lee Street, Third Floor
Alexandria, Virginia 22314-2631
Telephone: (703) 519-3773
Telecopier: (703) 548-4399
Mobile: (540) 226-0777
joseph@josephpeterdrennan.com

P. York McLane (admitted *pro hac vice*)
LAW OFFICE OF P. YORK MCLANE
14015 Park Dr., Ste. 111
Tomball, Texas 77377
yorkmclane@yahoo.com

Plaintiff Jamie K. Hawkins ("Movant"), by and through her undersigned counsel, respectfully submits this Memorandum of Law in support of her motion for entry of partial final judgment for solatium damages against the Islamic Republic of Iran ("Iran"). Movant is the stepdaughter of the late Geoffrey E. Guja, a New York City firefighter who was killed in the terrorist attacks committed in the United States by members of the al Qaeda terrorist network on September 11, 2001 (the "September 11th Attacks").

## PRELIMINARY STATEMENT AND PROCEDURAL HISTORY

In 2018, the *Chairnoff/Iran* Plaintiffs, who are the personal representatives and family members of U.S. citizens killed in the September 11th Attacks, sued Iran for its role in sponsoring those acts of terrorism. *See* 18-cv-12370 ECF No. 1. On October 5, 2021, the Court granted a judgment of default in favor of the *Chairnoff/Iran* Plaintiffs including *Chairnoff/Iran* Plaintiff Debra Guja, who is Movant's biological mother and the widow and personal representative of the Estate of Geoffrey E. Guja (the "October 5, 2021 Judgment"). *See* 18-cv-12370 ECF No. 64; MDL ECF No. 7173. The October 5, 2021 Judgment established Iran's liability under Section 1605A(c) of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A(c), for the September 11th Attacks and for causing the death of Geoffrey E. Guja in those attacks. *See id.*; MDL ECF No. 7173. The October 5, 2021 Judgment awarded solatium damages to, among others, Debra Guja, as the wife of Geoffrey E. Guja, and pain and suffering damages to the Estate of Geoffrey E. Guja. *See id.*; MDL ECF No. 7173. It did not include an award of solatium damages to Movant Jamie K. Hawkins.

On July 21, 2022, pursuant to the Court's Order of October 28, 2019 (MDL ECF No. 5234), the *Chairnoff/Iran* Complaint was amended to add Movant Jamie K. Hawkins as a Plaintiff party. *See* 18-cv-12370 ECF No. 86. By the instant motion, Movant seeks to

1

demonstrate that this Honorable Court should enter a judgment for solatium damages in her favor and against Iran based on Movant's close and loving relationship with her late stepfather Geoffrey E. Guja, who was the functional equivalent of Movant's biological father. Consistent with numerous prior decisions of the Court, based on the facts and circumstances set forth below and in the accompanying Declarations of Joseph Peter Drennan executed on September 2, 2022 ("Drennan Declaration"), Jamie K. Hawkins executed on July 23, 2022 ("Hawkins Declaration"), and Debra Guja executed on September 1, 2022 ("Guja Declaration"), Movant is entitled to an award of solatium damages against Iran under FSIA § 1605A(c) in the amount of $8,500,000, as well as prejudgment interest thereon at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of judgment.

**ARGUMENT**

**I.  AVAILABILITY OF SOLATIUM DAMAGES UNDER SECTION 1605A**

Section 1605A(a)(1) of the FSIA creates an exception to sovereign immunity that allows a foreign state to be held accountable for acts of terrorism, or the provision of material support or resources for acts of terrorism, where the acts or provision of support or resources were engaged in by an official, employee, or agent of the foreign state while acting within the scope of his or her office, employment, or agency. 28 U.S.C. § 1605A(a)(1). The statute specifically provides for the damages available in cases of "personal injury or death" to include "solatium" damages. 28 U.S.C. § 1605A(a)(1) and (c)(4). "'A claim for solatium refers to the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort.'" *Havlish v. Laden*, 2012 U.S. Dist. LEXIS 143525, *80-81 n.1 (S.D.N.Y. Oct. 3, 2012) ("*Havlish II*") (internal quotation omitted). *See also In re Terrorist Attacks on*

2

*September 11, 2001*, 2016 U.S. Dist. LEXIS 142865, at *278 (S.D.N.Y. Oct. 12, 2016) (same). Courts, including this one, have consistently held that the immediate family members of a person killed in a terrorist attack can recover solatium damages under Section 1605A(c) even if they were not present at the attack that killed their family member. *See, e.g., In re Terrorist Attacks on September 11, 2001*, 2016 U.S. Dist. LEXIS 151675 (S.D.N.Y. Oct. 31, 2016), *adopting*, 2016 U.S. Dist. LEXIS 144325, at *278 (S.D.N.Y. Oct. 14, 2016) ("*Hoglan II*").

In *Havlish II*, this Court approved the following schedule of solatium awards as appropriate for immediate family members of individuals killed in the September 11th Attacks ("9/11 Decedents"):

| | |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

*Havlish II*, 2012 U.S. Dist. LEXIS 143525, at *81 and Table 1. These amounts represent an upward departure from the benchmarks established in *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006), which this Court found warranted "[c]onsidering the extraordinarily tragic circumstances surrounding the September 11th attacks, the indelible impact on the lives of the victims' families, and the frequent reminders that each of the individual Plaintiffs face daily . . . ." *Havlish II*, 2012 U.S. Dist. LEXIS 143525, at *81. This Court has consistently awarded these same amounts to other plaintiffs in this MDL.

II. **AVAILABILITY OF SOLATIUM DAMAGES FOR STEPCHILDREN**

Courts applying Section 1605A(c) have consistently held that solatium damages may be recovered by **non-immediate family members** who qualify "as a 'functional equivalent' of an immediate family member under the definition in RESTATEMENT (SECOND) OF TORTS § 46(2)(a)." *Hoglan II*, 2016 U.S. Dist. LEXIS 144325, at *289-91.

3

This Court has issued numerous decisions and orders awarding solatium damages to stepchildren of 9/11 Decedents. *See, e.g., Hoglan II*, 2016 U.S. Dist. LEXIS144325, at *288-91, 295-97, 298-300, *In re Terrorist Attacks on September 11, 2001*, 2017 U.S. Dist. LEXIS 128288, at *320-22, 328-30 (S.D.N.Y. Aug. 8, 2017) ("*Hoglan IV*"), adopted by, 2017 U.S. Dist. LEXIS 191746 (Nov. 17, 2017); *In re Terrorist Attacks on September 11, 2001*, 2018 U.S. Dist. LEXIS 158197, at *46-63 (S.D.N.Y. Sep't 13, 2018) ("*Ashton*"); *In re Terrorist Attacks on September 11, 2001*, 2022 U.S. Dist. LEXIS 133842, *272-76, 277-79, 280-84 (S.D.N.Y. July 26, 2022) ("*Burnett/Iran XXV*"), adopted by, MDL ECF 8293 (July 29, 2022). In these decisions, the Court has defined the circumstances necessary to establish whether a stepchild is the "functional equivalent" of a biological child of a 9/11 Decedent: namely, (1) the claimant's continuous cohabitation with the 9/11 Decedent for a significant period of time—presumptively, a minimum of two years—before the claimant reached 18 years of age; (2) whether the 9/11 Decedent played a guardian- or custodian-like role in the claimant's development, including whether the 9/11 Decedent treated the claimant "emotionally, financially, and socially . . . as equivalent to a biological child;" and (3) whether the biological parent was absent from the claimant's life. *See Hoglan II*, 2016 U.S. Dist. LEXIS 144325, at *289-91; *Hoglan IV*, 2017 U.S. Dist. LEXIS 128288, at *320-22, 328-29; *Ashton*, 2018 U.S. Dist. LEXIS 158197, at *47-48.

As to the appropriate quantum of damages for stepchildren of 9/11 Decedents, the Court has adopted and consistently applied the benchmarks recommended by U.S. Magistrate Judge Netburn in *Hoglan II*. Where the 9/11 Decedent became part of the claimant's family during the claimant's early childhood (roughly birth through age eight), the claimant shall be entitled to the full solatium damages this Court awards to the biological children of 9/11 Decedents; namely, $8,500,000. *See Hoglan II*, 2016 U.S. Dist. LEXIS 144325, at *296; *Hoglan IV*, 2017 U.S. Dist.

4

LEXIS 128288, at *328; *Ashton*, 2018 U.S. Dist. LEXIS 158197, at *51-53, 54, 55-59.  Where the 9/11 Decedent became part of the claimant's family after the claimant has passed early childhood, but is still living in the family home and undergoing secondary education (roughly ages 9 through 17), the claimant shall be entitled to half of the solatium damages this Court awards to the biological children of 9/11 Decedents; namely, $4,250,000.  *See Hoglan II*, 2016 U.S. Dist. LEXIS 144325, at *296-97; *Hoglan IV*, 2017 U.S. Dist. LEXIS 128288, at *329; *Ashton*, 2018 U.S. Dist. LEXIS 158197, at *51-53, 54, 55-59.

In awarding solatium damages to stepchildren of 9/11 Decedents, this Court has relied upon claimants' statements about the length, nature, and quality of their relationships with the decedents.  *See, e.g., Ashton*, 2018 U.S. Dist. LEXIS 158197, at *51-62; *Burnett/Iran XXV*, 2022 U.S. Dist. LEXIS 13844, at *275, 277-79, 280-83.

### III. MOVANT IS ENTITLED TO $8,500,000 SOLATIUM DAMAGES AGAINST IRAN

The declarations of Movant Jamie K. Hawkins, and her mother Debra Guja (annexed as Exhibits 1 (Hawkins Decl.) and 2 (Guja Decl.), respectively, to the Drennan Declaration) demonstrate that Jamie had the "functional equivalent" of a biological parent-child relationship with the late Geoffrey E. Guja for a period of eight years, from around the time of Jamie's 8th birthday until Geoffrey's death on September 11, 2001.  Based on the criteria and benchmarks this Court has developed, Jamie is therefore entitled to solatium damages in the amount of $8,500,000.

Jamie and her mother began cohabiting with Geoffrey Guja as a family in May 1993, when Jamie was about to turn eight years old and enter the 4th grade.  *See* Hawkins Decl. at ¶ 3; Guja Decl. at ¶ 4.  Jamie lived with Geoffrey and her mother continuously from that time until Geoffrey's death in the collapse of the World Trade Center on September 11, 2001, less than a

5

month after Jamie turned 16.  *See id*. at ¶¶ 3-10; Guja Decl. at ¶¶ 4-6.  Jamie's mother and biological father had separated when Jamie was seven years old, and Jamie's biological father, James Gelormino, effectively abandoned her at that time.  *See id*. at ¶ 2; Guja Decl. at ¶¶ 4, 7.  Mr. Gelormino did not provide any financial support for Jamie after he separated from Jamie's mother.  Guja Decl. at ¶ 7.  Mr. Gelormino contacted Jamie infrequently.  *See* Hawkins Decl. at ¶ 2; Guja Decl. at ¶ 7.

Geoffrey supported Jamie financially from the time she was seven years old.  *See* Guja Decl. at ¶¶ 4, 8.  In addition to working as a firefighter with the Fire Department of New York City, Geoffrey worked part-time as a licensed Registered Nurse to support Jamie and her mother.  *See id*. at ¶ 9.  In 1999, Geoffrey designated Jamie as a beneficiary of his life insurance policy.  *See id*. at ¶ 12 and Exhibit A.

From the moment Jamie and her mother went to live with Geoffrey in May 1993, Geoffrey treated Jamie in every respect as his daughter.  *See id*. at ¶¶ 4, 6, 8, 10, 12.  He encouraged Jamie to love learning and to serve her community.  *See* Hawkins Decl. at ¶ 8.  He organized elaborate celebrations for Jamie's birthdays, including a "Sweet 16" birthday party with her friends less than a month before his untimely death.  *See id*. at ¶¶ 3-5, 10 and Ex. A; Guja Decl. at ¶ 6.  He attended Jamie's dance recitals and school events.  *See id*. at ¶ 8.  Geoffrey also provided emotional support to Jamie, including at the time of her aunt's death from cancer, and he cared for Jamie when she was ill.  *See* Hawkins Decl. at ¶ 9.

Jamie's childhood memories of Geoffrey include happy family celebrations, such as the wedding of Geoffrey and Debra Guja on October 24, 1998.  *See id*. at ¶ 6 and Ex. C; Guja Decl. at ¶ 11.  Jamie also treasures memories of times spent with Geoffrey including on family vacation trips, and summers spent on Geoffrey's houseboat moored at Giglo Beach, Long Island.

*See* Hawkins Decl. at ¶¶ 3-7, 9-10 and Ex. B; Guja Decl. at ¶¶ 5, 10.

Jamie was traumatized by Geoffrey's death, and suffered tremendous grief as a result of losing her beloved stepfather. *See* Hawkins Decl. at ¶¶ 11-12. Jamie credits Geoffrey's influence and guidance for her educational and professional achievements, and her decision to become a social worker. *See id*. at ¶ 12.

Jamie had a close and continuous relationship with her stepfather Geoffrey Guja for eight years prior to his death. Given that Jamie was seven years old when Geoffrey assumed the role of her absent father, the appropriate measure of Jamie's solatium damages under the Court's framework for awards to non-immediate family members is $8,500,000. The fact that Jamie was thirteen years old when Geoffrey and her mother married in 1998 should not reduce the amount of her damages. From the outset of his relationship with Debra Guja, Geoffrey demonstrated his commitment to forming a family with Debra and Jamie. During their first summer together in 1993, Geoffrey invited Debra's siblings, nieces and nephews to spend the summer at Giglio Beach, Long Island—an annual tradition that continued until Geoffrey's death. *See* Guja Decl. at ¶ 5. That first summer, Geoffrey hosted an elaborate party for Jamie's 8th birthday and gave her a puppy for her birthday. *See id*. at ¶ 6; Hawkins Decl. at ¶ 3. The strong and loving bond between Jamie and Geoffrey was formed before Jamie was nine years old.

Moreover, more recently the Court has recognized the emotional bonds formed during cohabitation, prior to the existence of a legal stepparent-stepchild relationship, in awarding solatium damages. For example, Dawn M. Curry, who was a senior in high school when her biological mother married her stepfather, was recently awarded $8.5 million. *See Burnett/Iran XXV*, 2022 U.S. Dist. LEXIS 13844, at *278-79, adopted by, MDL ECF 8293. Dawn was only two years old when her stepfather began cohabiting with her biological mother. *See id*.

7

Similarly, Bianca I Jerez, who was about seven years old when the late Robert D. Cirri, Sr. began living with her biological mother in 1993, was awarded $8.5 million even though Mr. Cirri and Bianca's mother did not marry until 1999 (when Bianca would have been about fourteen years old). *See id*. at 280-81, adopted by, MDL ECF 8293. Jamie and her mother began living with Geoffrey Guja when Jamie was seven years old, after Jamie had been abandoned by her biological father. *See* Hawkins Decl. at ¶¶ 2-3; Guja Decl. at ¶¶ 4, 7. As explained above, Geoffrey treated Jamie as his beloved daughter from that time forward. Jamie's suffering at the loss of her stepfather in the September 11th Attacks is no less than the suffering experienced by Dawn and Bianca, and should be compensated commensurately.

### IV. AVAILABILITY OF PUNITIVE DAMAGES UNDER SECTION 1605A

Under Section 1605A(c)(4), Movant Jamie K. Hawkins is also entitled to punitive damages against Iran. *See* 28 U.S.C. § 1605A(c)(4). In 2012, this Court awarded the *Havlish* plaintiffs punitive damages in the amount of 3.44 times their compensatory damages. *Havlish II*, 2012 U.S. Dist. LEXIS 143525, at *82. This Court subsequently applied the same ratio in awarding punitive damages to plaintiffs in other 9/11-related cases.

However, in an order dated October 14, 2016, in *Ashton, et al. v. Al Qaeda Islamic Army, et al.*, 1:02-cv-6977-GBD-SN and *Bauer v. al Qaeda Islamic Army*, 1:02-cv-7236-GBD-SN, U.S. Magistrate Judge Netburn ordered prompt entry of final judgments for compensatory damages but deferral of awards of punitive damages until a later stage of this litigation. *See* MDL ECF No. 3362 (Oct. 14, 2016) (noting that "[a]ny delay in the award of punitive damages will not prejudice plaintiffs in their applications to the [Victims of State Sponsored Terrorism Fund]"), *adopted by*, MDL ECF No. 3384 (Oct. 31, 2016). Since then, this Court has routinely entered final orders of judgment authorizing plaintiffs awarded

8

compensatory damages to submit "an application for punitive damages . . . at a later date consistent with any future rules made by this Court on the issue." *See, e.g.,* MDL ECF No. 5565 (Feb. 18, 2020). Accordingly, Movant respectfully requests permission to address the issue of punitive damages at a later date, in accordance with future rulings of the Court.

## V.  PREJUDGMENT INTEREST

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism. *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011). This Court has awarded prejudgment interest at a rate of 4.96 per cent per annum, compounded annually from September 11, 2001 to the date of judgment, on solatium awards to stepchildren. *See, e.g., Hoglan II*, 2016 U.S. Dist. LEXIS 151675, at *275. Movant respectfully requests that the Clerk be directed to award prejudgment interest on her solatium damages award at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001 until the date of the judgment.

## CONCLUSION

For all of the foregoing reasons, Jamie K. Hawkins respectfully requests the Court to grant her motion and enter partial final judgment in her favor against Iran for solatium damages in the amount of $8,500,000, and prejudgment interest thereon at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001 until the date of the judgment.

| | | |
|---|---|---|
| Dated: | September 2, 2022<br>White Plains, New York | Respectfully submitted,<br><br>**FLEISCHMAN BONNER & ROCCO LLP**<br><br>By: /s/ James P. Bonner<br>James P. Bonner (jbonner@fbrllp.com)<br>Patrick L. Rocco (procco@fbrllp.com)<br>Susan M. Davies (sdavies@fbrllp.com)<br>81 Main Street, Suite 515<br>White Plains, New York 10601<br>Telephone:  646-415-1399<br><br>Joseph Peter Drennan (admitted *pro hac vice*)<br>218 North Lee Street, Third Floor<br>Alexandria, Virginia 22314-2631<br>Telephone: (703) 519-3773<br>Telecopier: (703) 548-4399<br>Mobile: (540) 226-0777<br>joseph@josephpeterdrennan.com<br><br>Patrick M. Donahue (admitted *pro hac vice*)<br>P. Joseph Donahue (admitted *pro hac vice*)<br>THE DONAHUE LAW FIRM, LLC<br>18 West Street<br>Annapolis, MD 21401<br>Telephone: (410) 280-2023<br>pmd@thedonahuelawfirm.com<br>pjd@thedonahuelawfirm.com<br><br>P. York McLane (admitted *pro hac vice*)<br>LAW OFFICE OF P. YORK MCLANE<br>14015 Park Dr., Ste. 111<br>Tomball, Texas 77377<br>yorkmclane@yahoo.com<br><br>***Counsel for Plaintiff Jamie K. Hawkins*** |