UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------ x
                                                       )   No. 03 MDL 1570 (GBD/SN)
                                                       )
In re Terrorist Attacks on September 11, 2001          )   ECF Case
                                                       )
                                                       )
                                                       )
                                                       )
                                                       )
                                                       )
------------------------------------------------------ x
```

This document relates to:

*Federal Insurance Co., et al. v. Al Qaida, et al.*, 03-cv-06978
*Thomas E. Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 03-cv-09849
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 04-cv-01923
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, 04-cv-05970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, 04-cv-07065
*Euro Brokers Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 04-cv-07279


**REPLY IN SUPPORT OF DEFENDANT
DUBAI ISLAMIC BANK'S MOTION TO EXCLUDE THE
"SUPPLEMENTARY EXPERT REPORT" OF JONATHAN WINER**

## TABLE OF CONTENTS

                                                                        **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.     Plaintiffs Concede Mr. Winer's Report Does Not Supplement Any Previous Opinion On DIB And Extensively Relies On Previously Available Evidence ..................... 2

II.    Plaintiffs Fail To Justify The Untimeliness Of Mr. Winer's Third Report ........................... 5

       A.    The *Softel* / *Outley* Factors Require Exclusion ............................................................. 5

       B.    Plaintiffs Fail To Defend The Patent Impropriety Of The Third Report ...................... 9

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bakalar v. Vavra*,
   851 F. Supp. 2d 489 (S.D.N.Y. 2011)................................................................................5

*Hernandez v. Leichliter*,
   2016 WL 684038 (S.D.N.Y. Feb. 18, 2016).......................................................................8

*In re Namenda Direct Purchaser Antitrust Litig.*,
   331 F. Supp. 3d 152 (S.D.N.Y. 2018)................................................................................7

*Lewis v. FMC Corp.*,
   786 F. Supp. 2d 690 (W.D.N.Y. 2011) .............................................................................3

*Lidle v. Cirrus Design Corp.*,
   2009 WL 4907201 (S.D.N.Y. Dec. 18, 2009) ...................................................................8

*Magallanes v. Colvin*,
   2016 WL 4733862 (D. Kan. Sept. 12, 2016) ....................................................................6

*Outley v. City of New York*,
   837 F.2d 587 (2d Cir. 1988)..........................................................................................5, 9

*Sandata Tech., Inc. v. Infocrossing, Inc.*,
   2007 WL 4157163 (S.D.N.Y. Nov. 16, 2007)...............................................................2, 8

*Schiller v. City of New York*,
   2008 WL 4525341 (S.D.N.Y. Oct. 9, 2008) ......................................................................9

*SEC v. Ripple Labs, Inc.*,
   2022 WL 1154348 (S.D.N.Y. Apr. 19, 2022)....................................................................5

*Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*,
   118 F.3d 955 (2d Cir. 1997)................................................................................... *passim*

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
   2010 WL 11597882 (S.D.N.Y. Aug. 26, 2010).................................................................6

*United States v. Mejia*,
   545 F.3d 179 (2d Cir. 2008)...............................................................................................7

*Williams v. Cnty. of Orange*,
   2005 WL 6001507 (S.D.N.Y. Dec. 13, 2005) ...................................................................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26................................................................................................................2

Fed. R. Civ. P. 37........................................................................................................1, 2, 9

After ignoring this Court's discovery deadlines in this case, Plaintiffs play fast and loose with both the procedural issues and the underlying facts. On procedure, they try to justify Mr. Winer's Third Report as supplementary—but in his initial report, his rebuttal report, and his deposition, Dubai Islamic Bank (DIB) is not mentioned a single time. Plaintiffs should have sought leave of this Court to reopen discovery. Instead, they filed an untimely first report against DIB, and try to avoid the appropriate sanction by improperly seeking to reverse the burden under Rule 37. The text of Rule 37 makes exclusion the <u>default sanction</u> for Plaintiffs' failure to disclose, which is confirmed by the Second Circuit's leading decision in *Softel*. There is nothing harsh in similarly excluding here, especially where the expert report simply recites government files.

To try to justify their procedural failings, Plaintiffs claim the Declassified Files raise new issues, but the issues are not new and Plaintiffs distort the facts and their failures to develop the factual record in discovery. For example, Plaintiffs claim they did not know about Mr. Lootah's alleged connections to al Qaeda before the release of the Declassified Files. But Plaintiffs have alleged such connections all along and never sought to develop the record: They named Mr. Lootah as a witness, but then chose not to seek his deposition in discovery (or that of any other DIB employee or board member). Similarly, Plaintiffs claim that the Files reveal that "Saidi Madani al Tayyib was Al Qaeda's chief financial officer and held numerous accounts at DIB" but "none of these accounts were produced by DIB." Opp. 11 (ECF 8471). That is simply false. DIB produced full account statements for Tayyib's two accounts at DIB, whose activity spanned from 1993-1996, along with account opening documents and electronic transaction data. *See* n.2, *infra*. In fact, Plaintiffs already explained to the Court that many of these records were produced. *See* ECF No. 2973 at 6-7.[1] In short, Plaintiffs during discovery deliberately failed to develop the

---

[1] Following this motion to compel briefing, DIB produced additional records related to Tayyib's DIB accounts.

factual record; before expert discovery began, they announced that Mr. Winer would offer expert opinions about DIB (DIB Mem. Ex. C, ECF 8345-3 at ¶ 7); they then forewent having him opine; and they now continue to ignore the facts that are in the record. Plaintiffs cannot now justify their own lack of diligence with an out-of-time expert report that addresses issues that have been present in this litigation for almost 20 years.

I.   **Plaintiffs Concede Mr. Winer's Report Does Not Supplement Any Previous Opinion On DIB And Extensively Relies On Previously Available Evidence.**

When Mr. Winer submitted his first two expert reports in 2020 and 2021, he had to disclose a "complete statement of all opinions" that he "will express," as well as "facts or data considered." FRCP 26(a)(2)(B). The reports did document his opinions on, among other things, Islamic charities' financing and support for Al Qaeda, and the OFAC designation process. *See* Ex. A at 7-12. But neither report mentions DIB a single time. *See* Exs. A & B. His Third Report offers brand new opinions—and addresses DIB for the first time—well after the close of discovery. The appropriate initial sanction is exclusion, unless Plaintiffs can show that "the failure was substantially justified or is harmless." FRCP 37(c)(1). They cannot.

Although Plaintiffs style the Third Report as "supplementary," it does not "matter what label … counsel chooses to attach." *Sandata Tech., Inc. v. Infocrossing, Inc.*, 2007 WL 4157163, at *5 (S.D.N.Y. Nov. 16, 2007). What matters is whether a prior disclosure has proven "inaccurate or misleading" in light of new "information." *Id.* at *4. None of Mr. Winer's prior opinions, however, is inaccurate or misleading in light of the information in the Declassified Files.

*First*, Plaintiffs concede that he has never provided any information or opinion on DIB even though "the subject of the Supplemental Report … has long been in dispute," and Plaintiffs admit they contemplated in January 2020 that Mr. Winer would opine on DIB. Opp. 2-3; *id.* at 13 (acknowledging no prior opinion on "DIB's role in financing Al Qaeda"). There is therefore

nothing to correct or make complete.  *See Lewis v. FMC Corp.*, 786 F. Supp. 2d 690, 704-05 (W.D.N.Y. 2011) (concluding that a report on "a topic not discussed" in a prior report "cannot be construed as a supplemental report").

Plaintiffs claim that Mr. Winer can supplement anything that "pertain[s] to" his opinions on <u>other</u> defendants.  Opp. 13.  But *Lewis* wisely rejects that argument.  There, the expert's earlier report covered "five topics" involving environmental cleanup of the defendant's industrial site.  786 F. Supp. 2d at 700.  The expert tried to file a supplement regarding the defendant's plan for upgrading the site's water treatment plant.  *Id.* at 704–05.  The court held that the report was not "supplemental," *id.*, even though—to use Plaintiffs' words—it "pertain[ed] to" his earlier opinions on the site.  Plaintiffs' position is even worse: Mr. Winer has never opined on DIB at all.  They offer no case or logic for how targeting <u>a new party</u> could somehow be a mere supplement.

***Second***, Plaintiffs admit that Mr. Winer's Third Report purports to analyze swaths of previously available information, including purported intelligence.  Opp. 13-14 (acknowledging reliance on "information he had access to in his original report").  Their claim that the Third Report only "briefly revisits limited aspects of the previously existing record" is an understatement.  Opp. 5-6.  In addition to block quoting the Declassified Files, the report spends considerable time recounting evidence from Dr. Hassan's deposition, Judge Fine's deposition, and other preexisting sources.  *See* DIB Mem. Ex. A (ECF 8345-1) at 12-16, 19-23.  Three-fourths of Mr. Winer's sources were long available to him.  Although Plaintiffs claim DIB failed to explain this calculation (Opp. 14), DIB fully documented its work in footnotes 11 and 12 of its opening memorandum.

***Third***, even as to the issues asserted in the Declassified Files, Plaintiffs wrongly argue that information was not previously available.  Opp. 11-12.  Indeed, every issue that Plaintiffs <u>now claim is new</u> was a subject upon which discovery was had or that Plaintiffs deliberately <u>did not</u>

pursue during discovery:

- The allegations (Opp. 5 & 22) that "[DIB] has served as a key financial conduit for Al Qaeda and for Bin Laden's companies in Sudan" and that "Bin Laden and his companies maintained [redacted] accounts at DIB" mirror allegations the New York Times reported in 1999 and DIB thereafter investigated.  *See* Ex. C at 1-2; *see also* DIB PJ Br., ECF 8127 at 5-6.  Moreover, Plaintiffs had seven years of document discovery of any Al Qaeda financial services at DIB, during which parties engaged in full discovery on customer accounts, as previously detailed for the Court.  *See* Ex. E at 4-5.  That process resulted in the production of customer accounts, including for Mr. Tayyib (*contra* Plaintiffs' claim, Opp. 11), and confirmed the absence of accounts for Bin Laden or his Sudan companies.  *See* DIB PJ Br. and Rule 56.1 Statement, ECF 8127 at 8-13 & ECF 8128 ¶ 13.

- The allegation (Opp. 5 & 22) that Mr. Lootah was "a close friend of Bin Laden's" simply parallels Jamal al Fadl's allegation in 1998 that Bin Laden lieutenant Tayyib had a relationship with Lootah.  *See* ECF 2973-9 at 6 (ex. to Pls.' Mot. to Compel).  Plaintiffs themselves referred to this allegation seven years ago in briefing their motion to compel. ECF 2973 at 7-8.  Despite this knowledge, Plaintiffs failed to seek to depose Lootah (who has now passed away) or Tayyib, despite naming both as witnesses in their witness disclosure.  ECF 3925 at 81 & 90.

- The allegation (Opp. 22) that "Chairman Lootah had close ties to National Islamic Front leader, Hassan Turabi" and the allegation of DIB "management's apparently witting involvement in the financial activities of … Usama Bin Ladin's Islamic Army" again echo prior allegations.  But Plaintiffs identified Lootah as a witness (ECF 3925 at 81) and then simply failed to depose him or any other current or former employee of DIB.

- The allegation (Opp. 5) that "Bin Laden's chief financial officer 'and other Al Qaeda members hold numerous accounts at [DIB] because of Bin Laden's reported friendship with DIB Chairman, Saeed Ahmed Lootah'" rehashes the same allegations addressed above.  Moreover, the "chief financial officer" refers again to Tayyib.

- On the allegation that Suleiman Al Ali held an account (Opp. 22), Plaintiffs only barely pursued discovery on that issue, requesting that DIB search a single, English-spelling search term related to him.  By contrast, for other individuals, Plaintiffs submitted search terms in as many as 17 variations.  *See* Ex. D at 2-3 (detailing search term methodology); DIB Mem. 22 (ECF 8344).  That search term produced no results based on the parties' agreed search methodology.  *See* Ex. D.

- The Declassified Files allege that "Bin Ladin's Sudan-based companies and his financial officers <u>opened</u> … <u>letters of credit</u> at Dubai Islamic Bank."  ECF 8129-24 at 10, CIA000045 (emphasis added); *accord* ECF 8129-27 at 30, CIA000747.  **First**, Plaintiffs misstate the allegation—claiming that DIB issued letters of credit "<u>in favor of</u> Osama Bin Laden and other Al Qaeda agents and entities."  Opp. 22 (emphasis added).  The actual claim is that Bin Laden's associates "opened" the alleged letters of credit—as "applicants" or "buyers"—not that they were the beneficiaries.  **Second**, that allegation depends on the false claim that Osama bin Laden and his Sudan companies were DIB

- 4 -

customers, which found no support in fact discovery. ECF 8127 at 8-13; ECF 8128, ¶ 13. Further, none of the DIB customers who may have been affiliated with al Qaeda for whom DIB produced relevant account documents ever opened any letters of credit at DIB, as reflected in DIB's own production. *See* n.2, *infra*.

In sum, the allegations in the Declassified Files are not new—and they found no support in discovery and were often not even pursued by Plaintiffs while lengthy fact discovery was ongoing.

**II.     Plaintiffs Fail To Justify The Untimeliness Of Mr. Winer's Third Report.**

Plaintiffs filed Mr. Winer's Third Report well after expert discovery closed, without seeking permission or providing advance notice. Their Opposition fails to justify their untimeliness.

### A.     The *Softel / Outley* Factors Require Exclusion.

DIB showed in its opening brief that the Third Report failed all four of the *Softel / Outley* factors. DIB Mem. 11 (quoting factors); *see id.* at 11-16 (applying). Plaintiffs' Opposition confirms that they fail to satisfy any of the factors.

***First***, as to any explanation, they merely argue that the Third Report is supplemental and should be measured only against when they discovered that Mr. Winer's earlier disclosure was incorrect or incomplete. Opp. 9 & n.38. As detailed above, however, the Third Report is not a supplement. There is nothing regarding DIB now claimed to have been incorrect or incomplete.

Nor do Plaintiffs have a valid explanation for failing to seek Court permission. If they wanted to file a new report based on newly available evidence, they should have moved to reopen expert discovery—arguing based on factors they have never briefed. *See Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011) (summarizing factors). Plaintiffs cite *SEC v. Ripple Labs, Inc.*, but it confirms that a party "conduct[s] itself improperly by serving an unauthorized supplemental report," even "on the last day of discovery." 2022 WL 1154348, at *2 (S.D.N.Y. Apr. 19, 2022) (Netburn, J.). At least notifying the Court and DIB in advance would have been

the "most obvious[]" course. *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997); *see Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 2010 WL 11597882, at *2 (S.D.N.Y. Aug. 26, 2010) (finding impermissible a "lag of nearly six weeks" between when expert was deposed and supplementary report was served). On this, Plaintiffs' Opposition is tellingly silent. They similarly have attempted to reopen fact discovery by serving unauthorized discovery requests on DIB (Opp. 5 n.17), and their pattern is inappropriate. "The old adage that 'it is better to ask for forgiveness than permission' does not apply in federal court." *Magallanes v. Colvin*, 2016 WL 4733862, at *2 (D. Kan. Sept. 12, 2016).

Instead, Plaintiffs try to shift the blame, arguing that DIB's discovery responses somehow prevented a prior report. Opp. 10-13 & nn.42 & 50. But Plaintiffs long ago (in January 2020) designated Mr. Winer as an expert against DIB (*see* Opp. 3) and then failed to have him opine on DIB during expert discovery. Plaintiffs fail to explain how supposed discovery deficiencies years before expert discovery bear on whether Mr. Winer's Third Report is proper. The time to raise and resolve such objections would have been years ago—not now. In any event, as explained above, all the issues in Mr. Winer's report have long been at issue in this case and were either pursued in discovery (and found no support) or were abandoned by Plaintiffs during discovery.

Plaintiffs' grumbling is, in any event, unfounded. DIB negotiated a search methodology with Plaintiffs and it was used—and fully disclosed to Plaintiffs—over the course of two rounds of motion-to-compel briefing. *See* Ex. D at 2-3. DIB has faithfully complied with this Court's resulting orders. DIB has produced thousands of pages of documents, and the bank ultimately conducted searches on 629 terms—substantially more than the 500 the Court ordered in March 2016. *See* ECF 4046 at 9. Plaintiffs' claim that DIB insisted on exact-match searches only after the Court approved the search parameters is indisputably false. *See* Opp. 10 n.42. For more than

a decade—since 2011—DIB has been transparent about search methodology. *See* Ex. D at 2-3. Plaintiffs' new discontent stems from searches they negotiated and the Court approved.[2]

***Second***, Plaintiffs' Opposition similarly fails to explain how the Third Report is important. Instead, Plaintiffs focus on the supposed importance of the Declassified Files themselves—without mentioning any contribution offered by the Third Report. Opp. 22. Any "importance" of the Third Report, however, rests not on the importance of the underlying evidence but on the usefulness of Mr. Winer's additional analysis—and there is little, if any, of that. *See Softel*, 118 F.3d at 962 (examining the importance of the expert's contribution to other, separate evidence). Indeed, the Third Report's "Findings" section (p. 24) mostly just summarizes the Files' conclusions.

Yet Plaintiffs contend that Mr. Winer can contribute by emphasizing "the import of the conclusions of the EO Productions." Opp. 19. That is, he supposedly needs to be able to tell the jury that narrative documentary evidence is really important. Such minimal analysis does not satisfy the second factor. It "adds nothing to the direct evidence," certainly nothing important, just the use of his "credentials to bolster [its] credibility." *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 171 (S.D.N.Y. 2018). And when a party's expert is merely being used "to bolster" other evidence, exclusion causes only "slight" prejudice. *Softel*, 118 F.3d at 962. If the Declassified Files are admissible hearsay, they can speak for themselves. If they are inadmissible (as DIB argues, ECF 8127 at 26-28), Mr. Winer has no business simply transmitting their hearsay, and it is hardly "important" that he do so. *See United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (an expert "may not … simply transmit that hearsay to the jury"). Therefore, a

---

[2] Plaintiffs' more particular claim that DIB did not produce accounts held by Saidi Madani al Tayyib is likewise false. *See* Opp. 11. DIB produced relevant account documents for him in response to discovery obligations negotiated with Plaintiffs. *See* DIB_003510-3517; 3520-3521; 3525-3526; 3540-3549; 4870-4995. He was one of the ten accountholders of interest, and Plaintiffs continue to admit, notwithstanding the Declassified Files, that they have no evidence he used his DIB account for funding 9/11 or al Qaeda more generally. *See* DIB PJ Br., ECF 8127 at 2-3, 11-12.

ruling that the Declassified Files are inadmissible would only add to reasons to exclude the Third Report.  By contrast, Mr. Winer is not, for example, the "only corroborating fact witness[] … in a trial in which credibility [is] the crucial issue."  *Softel*, 118 F.3d at 962.  Nor do Plaintiffs claim he will be presenting "technical or specialized evidence."  *Id.*  As DIB explained (DIB Mem. 18 & 23), and Plaintiffs do not dispute, the Declassified Files are in plain English—not "beyond the ken of the average juror," if the Court determines that they are admissible.  *Hernandez v. Leichliter*, 2016 WL 684038, at *2 (S.D.N.Y. Feb. 18, 2016).  Finally, as DIB detailed above in Argument I, the Declassified Files are in any event not "important" as relevant here, because as to DIB they restate issues long known to Plaintiffs.

***Third***, Plaintiffs also do not contest that allowing the Third Report will cause DIB prejudice.  They admit that that it would be necessary to re-open expert discovery and re-depose Mr. Winer, and for DIB to be able to develop responsive evidence, including new opinions from experts whom Plaintiffs would then depose, and for consequent reciprocal *Daubert* briefing.  Opp. 16-17; *see id.* at 1, 25.  Plaintiffs ignore that all this works "substantial" prejudice.  *Lidle v. Cirrus Design Corp.*, 2009 WL 4907201, at *7 (S.D.N.Y. Dec. 18, 2009).  They have even suggested that they may ask Mr. Winer to supplement his "supplement," a suggestion they do not disavow in their Opposition.  DIB Mem. 6, 16.  But experts are "not free" to "continually supplement their opinions," or there would "never be any closure to expert discovery, and parties would need to depose the same expert multiple times."  *Sandata*, 2007 WL 4157163, at *6.

***Finally***, all of the above confirms why further "deadline slippage" is not more appropriate than exclusion.  *Softel*, 118 F.3d at 962.  Even when "no trial date ha[s] been set," the "enormous length of every step of the proceedings in this case militate[s] against any more continuances."  *Id.* at 962–63; *see also Williams v. Cnty. of Orange*, 2005 WL 6001507, at *5 (S.D.N.Y. Dec. 13,

2005) (rejecting continuance "due to the lengthy delay that has already occurred in this case").

Plaintiffs protest that exclusion is "harsh," but that characterization is unfounded. The text of Rule 37(c) makes exclusion the <u>default sanction</u>, and the burden "to prove substantial justification or harmlessness rests with the dilatory party"—here, the Plaintiffs. *Schiller v. City of New York*, 2008 WL 4525341, at *3 (S.D.N.Y. Oct. 9, 2008). The default sanction might be harsh were crucial testimony at stake. For instance, in *Outley v. City of New York*, the Second Circuit worried that exclusion would bar Plaintiffs' *only* eyewitnesses, whose testimony was "extremely important." 837 F.2d 587, 590–91 (2d Cir. 1988). By contrast, the Second Circuit more recently affirmed exclusion—without characterizing it as "harsh"—when applied to an expert witness whose late disclosure was only "slightly" important because it would be used only "to bolster" other evidence. *Softel*, 118 F.3d at 962. This case is more like *Softel*, given Plaintiffs' failure to show any importance of Mr. Winer's report independent of the underlying Declassified Files.

**B.     Plaintiffs Fail To Defend The Patent Impropriety Of The Third Report.**

In addition to considering the four factors above, the Court has "considerable discretion" to exclude untimely reports for other equitable reasons. *Outley*, 837 F.3d at 590. As DIB's opening memorandum explains, an additional reason is the Third Report's patent impropriety, which leaves it futile as any sort of expert report. Plaintiffs offer no serious answer.

*First*, Mr. Winer's cutting-and-pasting merely channels hearsay and bolsters with his ostensible expertise the anonymous Declassified Files that jurors could read for themselves. These Files themselves are inadmissible hearsay (*see* ECF 8127 at 26-28), and thus Winer's uncritical recitation of them is inappropriate. Even if they were admissible, the Third Report block quotes the Declassified Files for pages, and its "Findings" merely summarize their conclusions, without analysis. In response, Plaintiffs say nothing to defend Mr. Winer's mere parroting. Opp. 22.

*Second*, as DIB has explained, on the occasions that Mr. Winer does attempt to add original analysis, his additions present impermissible legal conclusions or speculation as to intent or state of mind. DIB Mem. 18–20. Plaintiffs protest that he did not actually use the term "knowingly aided and abetted," but that is false. Opp. 20. Mr. Winer's report presents a question using that very term and then answers, unequivocally, "Yes." DIB Mem. Ex. A at 24.

*Third*, Plaintiffs ignore the lack of foundation for the Third Report. Although Mr. Winer purports to weigh in on DIB's knowledge, the Declassified Files speak to this question only through an anonymous author's tentative speculation that DIB was "apparently witting." Instead of confronting this, Plaintiffs at times just drop "apparently," saying DIB was "witting." Opp. 4. They also have nothing to say on the three years or more between 9/11 and the earlier period the Declassified Files purport to address, or on the Files' lack of any claim that Mr. Lootah was knowingly aiding terrorism, let alone aiding a terrorist attack on the US. DIB Mem. 29.

*Fourth*, Plaintiffs make no effort to justify Mr. Winer's utter failure to grapple with the events of 1998 and 1999 involving the intervention of the Dubai and UAE governments and the fact and results of subsequent investigations by DIB on its own initiative, except to assert that DIB offered "no indication or citation." Opp. 21. Yet DIB pointed to particular pages of its summary-judgment brief that set out these <u>undisputed facts</u> with record support. DIB Mem. 21-22.

*Finally*, Plaintiffs are silent on Mr. Winer's lack of expertise to opine on the Declassified Files. That essentially all he does is block quote and summarize them, an approach that Plaintiffs do not justify, confirms his deficiency for this purpose.

\*    \*    \*

The Court should exclude Jonathan Winer's "Supplementary Report." If the Court disagrees, it should grant DIB the full measure of requested procedural relief.

| | |
|---|---|
| Dated: September 6, 2022 | Respectfully submitted, |

                By: */s/ Steven T. Cottreau*
                    Steven T. Cottreau
                    C. Kevin Marshall (admitted *pro hac vice*)
                    Gabrielle E. Pritsker
                    JONES DAY
                    51 Louisiana Avenue, N.W.
                    Washington, D.C. 20001
                    Telephone: (202) 879-3939
                    Email: scottreau@jonesday.com
                    Email: ckmarshall@jonesday.com
                    Email: gpritsker@jonesday.com

                    Juan P. Morillo (admitted *pro hac vice*)
                    QUINN EMANUEL URQUHART & SULLIVAN LLP
                    777 Sixth St., N.W.
                    Washington, D.C. 20001
                    Telephone: (202) 538-8174
                    Email: juanmorillo@quinnemanuel.com

                    *Counsel for Defendant Dubai Islamic Bank*