# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN)<br>ECF Case |

**This Document relates to:**
*Burnett, et al. v. Al Baraka Inv. & Dev. Corp*., et al., No. 03-cv-9849 (GBD)(SN)

### *BURNETT* PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR ENTRY OF DEFAULT JUDGMENTS AGAINST THE TALIBAN

For the reasons stated herein and as set forth in the accompanying Declaration of John M. Eubanks (hereinafter "Eubanks Decl."), the *Burnett* Plaintiffs seek an Order entering judgment against The Taliban under the ATA on behalf of the Plaintiffs included on Exhibits B-1, B-2, C-1, C-2, and D-1.  The *Burnett* Plaintiffs also seek an Order entering judgment against The Taliban under New York common-law principles on behalf of the Plaintiffs included in Exhibits B-3 and C-3.  The *Burnett* Plaintiffs also seek leave of the Court to submit declarations and evidence on behalf of the Plaintiffs included on Exhibits D-2 and E-1 to seek judgments against the Taliban under the ATA for personal-injury Plaintiffs and Plaintiffs asserting the status of functional equivalents of immediate family members of 9/11 decedents.  The *Burnett* Plaintiffs further seek leave of the Court to submit declarations and evidence on behalf of the Plaintiffs included on Exhibits D-3 and E-2 to seek judgments against the Taliban under New York common-law principles for personal-injury Plaintiffs and Plaintiffs asserting the status of functional equivalents of immediate family members of 9/11 decedents.  The *Burnett* Plaintiffs also seek leave of the Court to submit evidence of economic-loss damages for 9/11-decedent estates set forth in Exhibits B-1, B-2, and B-3 for whom prior judgments against the Islamic Republic of Iran have not already been awarded with regard to economic-loss damages in order to supplement their judgments against The Taliban. Finally, Plaintiffs seek prejudgment interest in the amount of 4.96%,

compounded annually, from September 11, 2001 through the date of entry of the judgment for these Plaintiffs and leave to file for such other and further relief may be appropriate at a later date including, but not limited to, punitive damages.

On April 7, 2006, this Court entered default judgment as to liability against The Taliban (and 132 other defaulting defendants) in the case captioned *Burnett, et al. v. Al Baraka Inv. & Dev. Corp.*, et al., No. 03-cv-9849 (GBD)(SN). ECF No. 1756.  That April 7, 2006 default judgment was entered in favor of 5,612 real parties in interest[1] in the *Burnett* action at the time.   On September 1, 2022, the Court granting Plaintiffs' motion to make explicit those plaintiffs whose claims were encompassed within the ambit of these real parties in interest and determined that these claims "relate[] back to when each of the individuals originally named in the pleading were added to this action." *See* ECF No. 8487.  Therefore, the specific plaintiffs with judgments against The Taliban relating back to April 7, 2006 are identified in Exhibit A to the Eubanks Declaration.

This motion seeks to extend judgments entered within this MDL on behalf of certain Plaintiffs against the Islamic Republic of Iran and/or certain of its agencies and instrumentalities to Plaintiffs' claims against Defendant The Taliban.  Furthermore, Plaintiffs seek to extend the rationale of those judgments and the underlying values entered to claims of Plaintiffs who have not yet obtained such judgments against the Islamic Republic of Iran or for whom such judgments have been precluded by the law of the case regarding Plaintiffs who were neither U.S. nationals on September 11, 2001 nor were they immediate family members of U.S.-national 9/11 decedents. Plaintiffs seek this relief pursuant to the civil damages provision of the Anti-Terrorism Act, 18

---

[1] The plaintiffs included 5,513 named plaintiffs (many of whom were pursuing claims in multiple capacities—i.e., individually, and as personal representative of the estate of the 9/11 decedent or as next of kin of minor children of the 9/11 decedent) and 99 plaintiffs who were, at the time, proceeding pseudonymously (many of whom were also pursuing their claims in dual or multiple capacities).

U.S.C. § 2333(a), and also under the common law for claims of wrongful death, assault and battery, and intentional infliction of emotional distress.

**ARGUMENT**

I.    **Claims against The Taliban under the Anti-Terrorism Act should be awarded damages in this case commensurate with those awarded under 28 U.S.C. § 1605A(c) against the Islamic Republic of Iran.**

As an initial point, many of the *Burnett* Plaintiffs seeking damages here obtained damages judgments in collateral litigation against the Islamic Republic of Iran and certain of its agencies and instrumentalities for Iran's role in providing support to Al Qaeda in the years leading up to the terrorist attacks on September 11, 2001.  Whereas the damages judgments obtained against Iran arose pursuant to 28 U.S.C. § 1605A(c) which provides an explicit right to solatium damages under the private right of action against a designated state sponsor of terrorism, Plaintiffs' claims against The Taliban arise under a number of different statutory schemes including under 18 U.S.C. § 2333(a) (the civil-damages provision of the Anti-Terrorism Act) ("ATA") and the common law. The ATA provides that "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees."  18 U.S.C. § 2333(a).  It would appear undisputed that this provision permits the representatives of individuals who were killed in the terrorist attacks on September 11, 2001 along with individuals who sustained personal injuries proximately caused by the terrorist attacks to pursue damages in cases under the ATA.

The breadth of damages available under the ATA is similar to those available—and applied by this Court in judgments against Iran—under 28 U.S.C. § 1605A(c). "[T]he ATA incorporates 'general principles of tort law.' … The basic presumption is that Congress creates federal torts

against the background of general tort law….” *See Linde v. Arab Bank, PLC*, 97 F. Supp.3d 287, 336 (E.D.N.Y. 2015). The ATA provides “private parties the right to pursue common tort claims against terrorist organizations and those that provide material support or financing to terrorist organizations.” *Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 50 (E.D.N.Y. 2007). In fact, when the ATA was initially enacted in 1991, Senator Grassley stated that the ATA “removes the jurisdictional hurdles in the courts confronting *victims* and it empowers *victims* with all the weapons available in civil litigation …. The [ATA] accords *victims* of terrorism the remedies of American tort law.” *Litle v. Arab Bank, PLC*, 611 F. Supp.2d 233, 245 (E.D.N.Y. 2009), *quoting* 137 Cong. Rec. S4511 (Apr. 16, 1991). This language “suggests that Congress intended that the full range of damages should be available to persons entitled to bring actions pursuant to §2333(a).” *Estates of Ungar v. Palestinian Authority*, 304 F. Supp.2d 232, 265 (D.R.I. 2004).

The ATA also provides for the award of solatium damages. Courts addressing claims under the ATA have almost uniformly allowed “solatium damages in suits brought under the ATA regardless of the availability of such damages under the general tort law of the state in which the district court sits” as such damages evince the deterrent intent of the ATA as a mechanism in the fight against terrorism. *See Rosenberg v. Lashkar-e-Taiba*, 2016 U.S. Dist. LEXIS 87724, at *75-*76 (E.D.N.Y. July 5, 2016); *see also Lelchook v. Commerzbank AG*, 2011 U.S. Dist. LEXIS 106305, at *6-*7 (S.D.N.Y. Aug. 1, 2011) (“permitting Plaintiffs to pursue claims for solatium damages is consistent with both the purpose of the ATA, and Congress’ intention to incorporate traditional tort-law principles into the statute”); *Estate of Henkin v. Kuveyt Turk Katilim Bankasi, A.S.*, 495 F. Supp. 3d 144, 152-53 (E.D.N.Y. 2020). “Family members do not need to be present for the terrorist attacks to recover under the ATA, because ‘a terrorist attack is precisely the sort of situation in which presence at the time is not required in light of the severity of the act and the

obvious range of potential grief and distress that directly results from such a heinous act.'" *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 41 (E.D.N.Y. 2019). In short, courts addressing the viability of solatium claims under the ATA have adopted an almost-uniform view that solatium damages are available under the ATA in the same manner that they are available under the private right of action under 28 U.S.C. § 1605A(c) of the Foreign Sovereign Immunities Act.

Furthermore, where the decedent was a United States citizen, but an immediate family member is not a United States citizen, that non-national continues to have standing to pursue solatium claims under the ATA. *See Estate of Henkin v. Kuveyt Turk Katilim Bankasi, A.S.*, 495 F. Supp. 3d 144, l52-53 (E.D.N.Y. 2020) (finding that if the victim of the attack is a U.S. citizen, then the surviving heirs or family members need not be U.S. citizens; to hold otherwise "would undermine the ATA's broad remedial purpose 'to grant a remedy to U.S. nationals and their families who suffered from injury to an individual or property as a result of international terrorism'"); *Weinstock v. Marzook*, 2019 U.S. Dist. LEXIS 56937, at *10 (S.D. Fla. Apr. 2, 2019); *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 620 (E.D.N.Y. 2006). In the corollary to this example where the 9/11 decedent was a non-national, but the immediate family member was a United States national on September 11, 2001, courts have held that this immediate family member's claim arises under the ATA as well even if the decedent's estate claim could not. *See, e.g., Stansell v. FARC*, Case No. 16-MC-00405 (LGS)(SN), 2022 U.S. Dist. LEXIS 59138, at *51 (S.D.N.Y. Mar. 29, 2022); *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 589-90 (E.D.N.Y. 2005). Therefore, the *Burnett* Plaintiffs' determinations regarding the applicability of the ATA or common-law damages grounds itself in this caselaw.

**A.  The Court should extend to The Taliban previous default judgments entered for specific plaintiffs against the Iran Defendants (Exhibits B-1, C-1, and D-1).**

While Exhibit A sets forth all of the claims encompassed by the default liability judgment entered by Judge Casey on April 7, 2006, these plaintiffs are broken out into a variety of categories in the other exhibits appended to the Eubanks Declaration.  Plaintiffs for whom judgment has previously been entered against the Islamic Republic of Iran are set forth on Exhibits B-1 (claims by Personal Representatives for U.S.-national 9/11-decedent estates), C-1 (claims for solatium damages of U.S.-national family members (including functional equivalents) of 9/11 decedents or non-U.S.-national family members (including functional equivalents) of U.S.-national 9/11 decedents), and D-1 (claims for U.S. nationals who sustained personal injury as a proximate result of the terrorist attacks on September 11, 2001). For each of the *Burnett* plaintiffs identified in Exhibits B-1, C-1, and D-1—in addition to each plaintiff having a default liability judgment against The Taliban—the Court has entered a damages default judgment against the Iran Defendants in the values set forth in the respective exhibits.  Through a series of orders issued in *Burnett, et al. v. Islamic Republic of Iran, et al.*, 15-cv-9903 (GBD)(SN), beginning on July 31, 2017, the Court has entered final default judgments against the Iran Defendants in favor of the plaintiffs identified in Exhibit B. *See, e.g.*, ECF Nos. 3666, 3984 (corrected 4023), 4126, 4146, 4175, 4712, 5061 (corrected 5062 and 6202), 5087 (corrected 6203 and 6205), 5092, 5138, 5151, 5356, 5854, 5946, 5948, 5955, 5957, 5975, 5979, 6034, 6035, 6037, 6038, 6039, 6042, 6044, 7188, 7287, 7494, 8233, 8283, and 8293).[2]  Exhibit B-1 sets forth those 9/11 decedent estates for whom prior judgment has been entered by this Court, with the value of the damages awarded.  Exhibit C-

---

[2] Certain of the Plaintiffs included on Exhibits B-1 and C-1 have obtained default judgments against the Iran Defendants in other cases within the MDL; however, their claims are not encompassed on other motions for default judgment against The Taliban.  The case numbers in which the Iran judgments were entered (and the ECF Number for those judgments) have been included on the relevant exhibits.

1 sets forth solatium damages for immediate family members (or their functional equivalents) of individuals killed in the terrorist attacks on September 11, 2001.  Exhibit D-1 sets forth pain-and-suffering damages for individuals who sustained personal injuries that were proximately caused by the terrorist attacks on September 11, 2001 but who did not succumb to those injuries.

The April 7, 2006 liability default judgment in *Burnett* was not reduced previously to a final judgment because individual damages assessments of the Plaintiffs' claims had not been conducted, and other appearing (non-defaulting) defendants in the active MDL thereafter opposed the process.  In 2007, certain other plaintiffs in this MDL with similar Taliban judgments sought monetary awards in relation to their judgments against The Taliban, but procedural objections by appearing (non-defaulting) defendants at that time frustrated the process of reducing the default judgments as to liability to final damage judgments. *See, e.g.*, ECF No. 688 (Federal Insurance Docket) and undocketed March 2, 2007 letter from the Defendants' Executive Committee to Judge Casey.  As a result, the 2007 motion was not addressed with regard to The Taliban until April 6, 2022. *See* ECF No. 7833.

This Court ruled, in 2011 and 2012, that default judgments against one defendant in favor of 9/11 plaintiffs are properly extended to other defendants as to whom the plaintiffs have liability judgments also for the September 11, 2001 attacks. *See, e.g.*, ECF No. 2582 (extending Federal Insurance's damage assessment against Al Qaeda at ECF No. 2502 to Hezbollah); ECF No. 2623 (extending *Havlish* damage assessment against Iran to defaulting Non-Sovereign Defendants). The Court has now also entered a default judgment on similar grounds on behalf of the *Federal Insurance* plaintiffs against The Taliban.  *See* ECF No. 7833.

The 746 *Burnett* Plaintiffs identified on Exhibit B-1 are Personal Representatives of 9/11-decedent estates who have previously obtained a judgment at least as to conscious pain and

suffering as to the Islamic Republic of Iran, and they now seek the application of those judgment values as set forth on Exhibit B-1 to be entered against The Taliban.  To the extent they have not yet sought and obtained a judgment for economic-loss damages, the Plaintiffs identified on Exhibit B-1 reserve the right to submit additional proof to the Court to assess their economic-loss damages and, therefore, supplement their judgment against The Taliban.   The 3,945 *Burnett* Plaintiffs identified on Exhibit C-1 are immediate family members (or their functional equivalents) who have obtained judgments for solatium damages as to the Islamic Republic of Iran, and they now seek the application of those judgment values as set forth on Exhibit C-1 to be entered against The Taliban.   The 131 *Burnett* Plaintiffs identified on Exhibit D-1 sustained physical injuries proximately caused by the terrorist attacks on September 11, 2001 and have obtained judgments for pain-and-suffering damages as to the Islamic Republic of Iran, and they now seek the application of those judgment values as set forth on Exhibit D-1 to be entered against The Taliban.

Here, consistent with the Court's practice, each of the Plaintiffs with existing liability default judgments against The Taliban, and who have secured monetary damage awards in the way of judgments against another defendant—namely, the Iran Defendants—ask that the Court extend their existing default damages assessments to The Taliban and enter final judgment against The Taliban.  To the extent the Court has already conducted damages inquests for plaintiffs with default liability judgments against The Taliban, in the context of default proceedings against the Iran Defendants, the *Burnett* Plaintiffs identified in Exhibits B-1, C-1, and D-1 ask that the Court extend those awards to The Taliban consistent with this Court's practice with regard to other defendants.[3] The Court's prior ruling, regarding the joint and several liability of The Taliban, applies with equal

---

[3] *See, e.g.* ECF No. 2582 (extending *Federal Insurance's* damages assessment against Al Qaeda at ECF No. 2502 to Hezbollah); ECF No. 2623 (extending *Havlish* damages assessment against Iran to defaulting Non-Sovereign Defendants.

force to further final judgments by this Court on the default judgments of liability held by the Plaintiffs who were also awarded monetary damages against the Iran Defendants. This Court has already considered the legal arguments and evidence presented in the case against the Iran Defendants and issued monetary judgments against the Iran Defendants based on that evidence. The extension of that ruling to The Taliban, and entry of a final judgment pursuant to Rule 54(b) as to The Taliban, is both appropriate and the most efficient means of safeguarding each Plaintiff's rights.  There can be no question The Taliban sponsored Osama bin Laden and was behind the September 11, 2001 attacks.[4]

**B. The Court should apply the judgment values awarded against Iran to the remaining *Burnett* Plaintiffs who have standing against The Taliban under the ATA but do not yet have judgments entered against the Iran (Exhibits B-2 and C-2).**

The *Burnett* Plaintiffs on Exhibit B-2 are the Personal Representatives of U.S.-national 9/11 decedent estates who possess standing against The Taliban by virtue of the decedents being U.S. nationals at the time of their death.  The *Burnett* Plaintiffs on Exhibit C-2 hold claims for solatium damages of U.S.-national family members (including functional equivalents) of 9/11 decedents or non-U.S.-national family members (including functional equivalents) of U.S.-national 9/11 decedents and thus have standing under the ATA for their claims against The Taliban. Although the *Burnett* Plaintiffs listed on Exhibits B-2 and C-2 hold a liability judgment against The Taliban (among others), they have no previous default judgment against the Iran Defendants that can be extended to The Taliban.  However, this Court has determined the appropriate measure of compensatory damages for Plaintiffs in this MDL in numerous prior instances as such judgments relate to Iran such that these judgment values are easily ascertainable.

---

[4] U.S. National Commission on Terrorist Attacks upon the United States. *9/11 Commission Report: The Official Report of the 9/11 Commission and Related Publications.* by Thomas H. Kean and Lee Hamilton,  pp. 66-67, 125-126, 157, 170-171, 176,

For those 9/11 decedent estates included on Exhibit B-2, Plaintiffs submit that they are each entitled to conscious pain-and-suffering damages in the amount of $2 million based on the prior decisions of this Court vis-à-vis Iran. These Plaintiffs reserve the right to submit additional proof to the Court to assess their economic-loss damages and, therefore, supplement their judgment against The Taliban; however, they remain entitled to judgment for conscious pain-and-suffering damages in the amount of $2 million for each 9/11 decedent estate.

For those immediate family members of 9/11 decedents included on Exhibit C-2, Plaintiffs submit that the determination of their damages has already been made through the Court's prior adoption of specific solatium values based on the familial relationship of the plaintiff: $12,500,000 for the spouse of a 9/11 Decedent; $8,500,000 for the child of a 9/11 Decedent; $8,500,000 for the parent of a 9/11 Decedent; and $4,250,000 for the sibling of a 9/11 Decedent.[5] The solatium judgment values set forth in Exhibit C-2 correspond to the values previously adopted by this Court. The rights of the *Burnett* Plaintiffs identified on Exhibits B-2 and C-2 will be prejudiced if judgments are not entered for them at this time given the large volume of judgments sought for default damages for plaintiffs throughout this MDL.

**C. The *Burnett* Plaintiffs with standing under the ATA who seek judgments for personal injury and for a determination of status as the functional equivalent to an immediate family member of a 9/11 decedent will continue to seek the Court's determination of damages (Exhibits D-2 and E-1).**

In the Court's July 11, 2022 Order, the Court determined that the "proper mechanism for adjudicating" additional claims "for motions seeking damages for personal injuries or based on the functional equivalent status of the claimant" has been established by the Court, and "the Court does not find that a special master will aid in this adjudication at this time." *See* ECF No. 8198 at

---

[5] See July 30, 2012 Report and Recommendation of Magistrate Judge Frank Maas (ECF No. 2618) (adopted by District Judge George B. Daniels on October 3, 2012 (ECF No. 2623))..

8.  While the *Burnett* Plaintiffs did not intend to suggest that the Court was not equipped to address these case-by-case determinations, there was simply a concern not to overburden the Court with hundreds of additional submissions that require a case-by-case determination.   Following the Court's direction, the *Burnett* Plaintiffs will continue to submit their requests for adjudication of these claims under the ATA following the Court's established procedures.

### D.  Plaintiffs' ATA claims against The Taliban mandate treble damages.

The *Burnett* Plaintiffs asserting claims under the ATA submit that, under the express terms of the ATA, they "*shall* recover threefold the damages" awarded. *See* 18 U.S.C. § 2333(a) (emphasis added). The trebling of the damages award in these circumstances is mandated by the use of the world "shall". *See United States v. Kahn,* 5 F.4th 167, 174 (2d Cir. 2021) (holding "[t]he word 'shall,' in a statute, indicates a command; what follows the word 'shall' is 'mandatory, not precatory'"). Therefore, Plaintiffs submit that each of the values awarded for compensatory damages should be trebled to accord with the mandatory trebling language in the ATA. A separate column is included on Exhibits B-1, B-2, C-1, C-2, and D-1 indicating the final judgment after trebling of the damages values.

### E.  The Court should also award prejudgment interest for claims under the ATA.

On the issue of prejudgment interest, this Court previously ruled that the rate of prejudgment interest of 4.96 percent interest per annum compounded annually was appropriate. ECF No. 3383 at 2, *adopting* ECF No. 3358 at 16-20 (discussing the availability of prejudgment interest under federal and New York common law and determining, in the Court's discretion a prejudgment interest rate of 4.96%).  Accordingly, the *Burnett* Plaintiffs seeking claims under the ATA and whose claims are ripe for current determination (i.e., the Plaintiffs included on Exhibits B-1, B-2, C-1, C-2, and D-1) ask that this Court direct that prejudgment interest of 4.96 percent,

compounded annually, be awarded on their awards running from September 11, 2001 to the date of judgment against The Taliban.

## II.    Claims against The Taliban under the common law should be awarded damages in this case commensurate with those awarded to the ATA plaintiffs whose injuries arise from the same nexus of events.

As the Court is aware, the victims of the terrorist attacks on September 11, 2001 were not solely United States nationals; however, relief under the ATA is limited to U.S. nationals or immediate family members (or functional equivalents) of U.S.-national decedents.  Nevertheless, this Court's jurisdiction reaches the claims of these non-nationals who were injured or killed and their family members by virtue of the fact that the terrorist attacks took place on U.S. soil with the largest number of victims being injured or killed only blocks from this courthouse at the World Trade Center complex in lower Manhattan. The *Burnett* Plaintiffs identified on Exhibit B-3 are the Personal Representatives of 9/11 decedent estates where the 9/11 decedent either was known not to be a United States national on September 11, 2001 or where Plaintiffs' counsel has been unable to ascertain the decedent's nationality through any specific documentation.   While this documentation continues to be sought—which would warrant an alteration of the exhibits to the Eubanks Declaration—Exhibit B-3 provides a glimpse at the present time of the known status of the nationality of these 9/11 decedents.  The *Burnett* Plaintiffs identified on Exhibit C-3 are immediate family members of 9/11 decedents where the 9/11 decedent was not a U.S. national or the decedent's American nationality has not been established *and* the immediate family member is either not a U.S. national or their American nationality as not been established.  The *Burnett* Plaintiffs identified on Exhibit D-3 are individuals who sustained personal injuries proximately caused by the terrorist attacks on September 11, 2001 who were either not U.S. nationals at the time of September 11, 2001, or Plaintiffs' counsel has been unable to determine their nationality as of that date.  Finally, the *Burnett* Plaintiffs identified on Exhibit E-2 are individuals who seek a

determination of functional equivalent status relative to a 9/11 decedent who were either not U.S. nationals that time of September 11, 2001, or Plaintiffs' counsel has been unable to determine their nationality as of that date.

The terrorists who carried out the attacks on September 11, 2001 did not differentiate their victims by nationality. Individuals working in the North Tower of the World Trade Center when it was hit were not somehow sequestered based on their citizenship status. The terrorists attacked the United States, and while the vast majority of those who were killed in the orchestrated attacks against the United States were U.S. nationals, a significant percentage of the victims were not. This does not mean that they were treated differently by the terrorists or that their loved ones did not experience the grief and loss that U.S. nationals did. This disparity between U.S. nationals and foreign nationals is reflected in the two statutes addressing the provision of support by foreign sovereigns acts of terrorism. As such, these Plaintiffs seek a determination from the Court that they are entitled to the same level of damages as U.S.-national plaintiffs with claims against The Taliban.[6]

### A. Choice-of-law principles dictate the application of New York law to the common-law claims at issue here.

Because the terrorist attacks on September 11, 2001 took place in three different locations (New York, Pennsylvania, and Virginia), it is necessary to conduct a choice-of-law determination regarding the application of common-law principles to these claims. Federal courts apply the choice-of-law rules of the state in which they sit. *Armstead v. National RR Passenger Corp.*, 954

---

[6] The *Burnett* Plaintiffs do not seek damages under the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350, note, because Supreme Court precedent dictates that claims under the TVPA are not available against The Taliban because "the text of the [TVPA] persuades us that the Act authorizes liability solely against natural persons." *Mohamad v. Palestinian Authority*, 566 U.S. 449, 456 (2012). Similarly, the *Burnett* Plaintiffs do not seek damages under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, because the Supreme Court has determined that alien plaintiffs may not bring claims under the ATS against foreign "corporations." *See Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1407 (2018). While The Taliban may, or may not, be a corporate entity under the law, it appears to meet many of the prerequisites at law for such recognition based on its hierarchy and control.

F. Supp. 111, 112 (S.D.N.Y. 1997), *citing Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941).  In this instance, this Court should apply *lex loci delicti. See Armstead*, 954 F. Supp. at 112-13 (stating "if…the tort did not occur in the domicile of either party, the "*lex loci delicti"*—law of the situs of the tort—'will normally apply, unless displacing it [with another relevant jurisdiction's law] 'will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.'"). Following *Armstead*, Plaintiffs' common-law claims would be analyzed under the laws of New York, Pennsylvania, and Virginia as the situses of the tort. However, as is the case here, when the laws of different states (or the federal common law) are substantially the same, there is no conflict, and the forum State's law prevails.[7] As to wrongful death, each state's law is substantially similar, and in many cases indistinguishable. Further, the claims made under New York, Pennsylvania, and Virginia law are substantially identical and arise from a common scheme born of the same plot, the September 11, 2001 Terrorist Attacks. Plaintiffs brought timely claims against Defendants based on their material support and sponsorship of Al Qaeda leading up to September 11, 2001, support that enabled Al Qaeda to carry out the terrorist attacks.[8] These facts and allegations are identical among all Plaintiffs irrespective of their citizenship. Thus, because Plaintiffs' allegations arise from identical questions of law and fact, New York law should apply.

---

[7] *See, e.g.*, 19A N.Y. Jur. 2d Conflict of Laws § 2; *Copley v. Bactolac Pharm., Inc.*, No. 18-CV-575 (FB) (PK), 2021 WL 918313, at *3 (E.D.N.Y. Mar. 10, 2021); *SNS Bank, N.V. v. Citibank, N.A.*, 7 A.D.3d 352 (1st Dep't 2004); *Emmet & Co., Inc. v. Catholic Health East*, 37 Misc. 3d 854, 951 N.Y.S.2d 846 (Sup 2012), *aff'd*, 114 A.D.3d 605 (1st Dep't 2014); *Cassirer v. Thyssen-Bornemisza Collection Found.*, No. 20-1566, 2022 WL 1177497 (U.S. Apr. 21, 2022) (finding that, in an FSIA case, use forum state's choice-of-law rules, not a rule deriving from federal common law, to determine the substantive law)

[8] Courts in the Second Circuit have also recognized common schemes as a basis for liability against an aider and abettor of terrorism. *See Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 585 (E.D.N.Y. 2005) ("The factual allegations of the complaints sufficiently support an inference that Arab Bank and the terrorist organizations were participants in a common plan under which Arab Bank would supply necessary financial services to the organizations which would themselves perform the violent acts.").

This Court has previously addressed the claims of plaintiffs in this MDL under New York common law.  In an October 12, 2016 Report and Recommendation issued by Magistrate Judge Netburn (and adopted by Judge Daniels), while addressing the appropriate rate of prejudgment interest, the Court provided a discussion of "common law wrongful death actions" in New York and stating that only pecuniary damages—like those sought for the estates of 9/11-decedent estates in this case under both the ATA and FSIA—are to be awarded in a wrongful-death action in New York which "does not permit recovery for, *inter alia*, the grief of survivors, the loss of their decedent's love, companionship and society, or loss of consortium."  ECF No. 3358 at 18. But within the context of the claims against Iran, and in the same Report and Recommendation, this Court held, "[b]ecause of the extreme and outrageous conduct inherent in acts of terrorism, courts have held that solatium claims in FSIA terrorism cases are 'indistinguishable' from claims of intentional infliction of emotional distress." ECF No. 3358 at 8, *citing Surette v. Islamic Rep. of Iran*, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (quoting *Wagner v. Islamic Rep. of Iran*, 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001)). Specific to the terrorist attacks on September 11, 2001, the Court continued:

> Terrorist attacks, by their very nature, are meant to inflict severe emotional distress upon society as a whole, but the loved ones of their victims bear a burden which is unquestionably heavier.  As the September 11 attacks have left deep scars in the consciousness of this city and this nation, family members of the decedents are left with constant and stark reminders of their tragic losses.

*Id.* This Court has held that "the *common law of intentional infliction of emotional distress* governs questions of who is entitled to recover damages…. This is necessarily so because of the 'interest in promoting uniformity of determinations with respect to [state sponsored terrorist acts' and the fact that ' generally accepted legal standards of the states provide the only steady foundation for the rules of decision." ECF No. 3363 at 2 (emphasis added), *quoting Estate of Heiser v. Islamic*

*Rep. of Iran*, 659 F. Supp. 2d 20, 24-25 (D.D.C. 2009). In fact, the courts addressing solatium damages have relied on the *Restatement (Second) of Torts* § 46 (1965), which is the precise source of the law in each of New York, Virginia, and Pennsylvania. *Id.* at 3. While physical proximity to the incident giving rise to the emotional distress is typically a required element of international infliction of emotional distress claims, "courts have uniformly held that a terrorist attack—by its nature—is directed not only at the victims but also at the victims' families." *Id.*, *quoting Salazar v. Islamic Rep. of Iran*, 370 F. Supp. 2d 105, 115 n.12 (D.D.C. 2005); *Jenco v. Islamic Rep. of Iran*, 154 F. Supp. 2d 27, 35 (D.D.C. 2001).

Acts of terrorism are, by their very definition, extreme and outrageous and intended to cause the highest degree of emotional distress. *Stethem v. Islamic Rep. of Iran*, 201 F. Supp. 2d 78, 89 (D.D.C. 2002). This Court has previously found that "[t]he 9/11 terrorist attacks are contrary to the guarantees 'recognized as indispensable by civilized peoples'." ECF No. 2515 at 50. As these Plaintiffs' intentional infliction of emotional distress claims mirror those of the solatium claims actionable under the ATA for U.S.-national plaintiffs in claims arising from the same nexus of events, the Plaintiffs' recovery here under the common law should be identical to the solatium damages framework established by this Court against Iran and applied to the claims under the ATA against The Taliban. In the FSIA context, this Court has emphasized the "interest in promoting uniformity of determinations with respect to [state sponsored terrorist acts]", but the Court's citation to *Estate of Heiser* goes on to explain that this uniformity is achieved through "well-established standards of state common law." *See* ECF No. 3363 at 2, *quoting Estate of Heiser*, 659 F. Supp. 2d 20, 24-25 (D.D.C. 2009). Such uniformity in outcome between plaintiffs who sustained injury arising from the same terrorist attacks should be simple given the application

of "well-established standards of state common law" which is the undergirding of the claims of the *Burnett* Plaintiffs who lack standing to assert claims under the ATA.

**B. The *Burnett* Plaintiffs with claims arising under the common law and not under the ATA seek application of uniform damages principles as those employed under the ATA.**

To promote the uniformity discussed above, the *Burnett* Plaintiffs asserting claims under the common law seek damages equal to those of their co-plaintiffs asserting claims under the ATA. For the *Burnett* Plaintiffs in Exhibit B-3, this would provide damages for conscious pain and suffering in the amount of $2 million per estate. The values reflected on Exhibit B-3 indicate pain-and-suffering damages of $2 million per estate. These Plaintiffs, like those ATA plaintiffs in Exhibits B-1 and B-2, reserve the right to submit additional proof to the Court to assess their economic-loss damages and, therefore, supplement their judgments against The Taliban. The immediate family members asserting claims under the common law of intentional infliction of emotional distress qua solatium damages found at Exhibit C-3 also assert that they should be awarded damages against The Taliban in the same manner as those awarded damages under both 28 U.S.C. § 1605A(c) and the ATA: $12,500,000 for the spouse of a 9/11 Decedent; $8,500,000 for the child of a 9/11 Decedent; $8,500,000 for the parent of a 9/11 Decedent; and $4,250,000 for the sibling of a 9/11 Decedent. Exhibit C-3 provides these damages figures relative to the relationship of each individual plaintiff. The *Burnett* Plaintiffs identified in Exhibit D-3 who seek pain-and-suffering damages for personal injuries proximately caused by the terrorist attacks on September 11, 2001 also seek to be able to prove their injuries through declarations and the submission of medical documentation to support personal-injury judgments commensurate with the Court's February 7, 2020 Report and Recommendation (ECF No. 5879), which was adopted by Judge Daniels on February 14, 2020. ECF No. 5946. Finally, the *Burnett* Plaintiffs identified at Exhibit E-2, who are seeking a determination of functional-equivalent status to an immediate

family member of a 9/11 decedent should have their evidence adjudicated in the same manner as if they were seeking claims under either the FSIA or the ATA.

### C.  The Court should also award prejudgment interest for claims under the common law.

On the issue of prejudgment interest, as stated above, this Court previously ruled that the rate of prejudgment interest of 4.96 percent interest per annum compounded annually was appropriate. ECF No. 3383 at 2, *adopting* ECF No. 3358 at 16-20 (discussing the availability of prejudgment interest under federal and New York common law and determining, in the Court's discretion a prejudgment interest rate of 4.96%).  Accordingly, the *Burnett* Plaintiffs seeking claims under the common law and whose claims are ripe for current determination (i.e., the Plaintiffs included on Exhibits B-3 and C-3) ask that this Court direct that prejudgment interest of 4.96 percent, compounded annually, be awarded on their awards running from September 11, 2001 to the date of judgment against The Taliban.

### III.   Plaintiffs seek to reserve their rights to seek economic damages, punitive damages, or other damages at a later time to the extent appropriate

As has been the practice in the Court in addressing many of the motions for default judgments, Plaintiffs herein seek the Court's permission to apply for economic damages, punitive damages, or other damages later, consistent with any applicable future rulings and to supplement the record as part of applications for those damages. While the *Burnett* Plaintiffs assert their entitlement to punitive damages, in light of prior differing decisions on the proper punitive multiplier (compare, e.g., ECF 3175 at 3 with ECF 3384 at 6), Plaintiffs request permission to reserve the issue of punitive damages until a later date, as this Court has previously authorized. *See* ECF No. 3666.

## IV.     Proposed Order

For the Court's convenience and consideration, a proposed form of Order is being filed contemporaneously with this motion. The proposed Order tracks the language of the Court's 2006 Order, including judgment against The Taliban, and the Court's July 31, 2017 Order directing entry of final judgment against the Iran Defendants.

### CONCLUSION

For the foregoing reasons, the *Burnett* Plaintiffs submit that a judgment awarding default damages judgments under the ATA for the Plaintiffs identified on Exhibits B-1, B-2, C-1, C-2, and D-1 be awarded against Defendant The Taliban in the values set forth in those exhibits. Plaintiffs further submit that these judgments under the ATA be trebled under 18 U.S.C. § 2333(a) and that prejudgment interest be applied to each judgment in the amount of 4.96%, compounded annually, from September 11, 2001 through the date of the entry of this judgment.

Furthermore, the *Burnett* Plaintiffs submit that a judgment awarding default damages judgments under the common law for the Plaintiffs identified on Exhibits B-3 and C-3 be awarded against Defendant The Taliban in the values set forth in those exhibits.  Plaintiffs further submit that these judgments under the common law have prejudgment interest applied to each judgment in the amount of 4.96%, compounded annually, from September 11, 2001 through the date of the entry of this judgment.

Plaintiffs further ask that the Court permit future motions that may address economic-loss damages, punitive damages, pain-and-suffering damages, and such other and further relief as is permissible under both the ATA and the common law, and specifically for the Plaintiffs identified on Exhibits D-2, D-3, E-1, and E-2 to submit declaration and evidence to support assessments of damages for personal injuries proximately caused by the terrorist attacks on September 11, 2001

and for solatium damages for individuals who assert that they are functionally equivalent to immediate family members of a 9/11 decedent.

Finally, as set forth in the Court's July 11, 2022 Order, any default judgment granted in this case against The Taliban is binding solely on the determination of damages against The Taliban and not against any of the other Defendants in this action.

Dated:  September 26, 2022                              Respectfully submitted,

                                                        MOTLEY RICE LLC


                                                        */S/ John M. Eubanks*
                                                        John M. Eubanks, Esq.
                                                        Jodi Westbrook Flowers, Esq.
                                                        Robert T. Haefele, Esq.
                                                        Jade Haileselassie, Esq.
                                                        28 Bridgeside Boulevard
                                                        Mount Pleasant, SC 29464
                                                        Tel: (843) 216-9000
                                                        Fax: (843) 216-9450
                                                        Email: jeubanks@motleyrice.com