# Exhibit 5

LAT5ter1

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   IN RE:  TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001,
4
                                    03 MD 1570 (GBD)
5                                   Remote Proceeding

6   ------------------------------x
                                    New York, N.Y.
7                                   October 29, 2021
                                    3:00 p.m.
8
    Before:
9
                    HON. GEORGE B. DANIELS,
10
                                        U.S. District Judge
11

12                          APPEARANCES

13

14  KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
         Attorneys for Defendant Kingdom of Saudi Arabia
15  BY:  MICHAEL K. KELLOGG

16  THE LAW OFFICES OF MA & PARK
         Attorneys for Non-party John Fawcett
17  BY:  MICHAEL GERBER

18  EMILY KIRSCH
         Attorney for Interested Party Kreindler & Kreindler
19

20

21

22

23

24

25
```

LAT5ter1

1          (Case called; The Court and all parties appearing via

2     Microsoft Teams)

3          THE DEPUTY CLERK:  Will the attorneys and the parties

4     please state yourself for the record?

5          MR. KELLOGG:  This is I Michael Kellogg on behalf of

6     the Kingdom of Saudi Arabia.

7          MR. GERBER:  This the Michael Gerber on behalf of John

8     Fawcett.

9          MS. KIRSCH:  And this is Emily Kirsch on behalf of law

10    firm Kreindler & Kreindler.

11         THE DEPUTY CLERK:  Thank you.

12         We now have the Honorable George B. Daniels presiding.

13         THE COURT:  Good afternoon.

14         MR. KELLOGG:  Good afternoon, Judge Daniels.

15         MR. GERBER:  Good afternoon, your Honor.

16         THE COURT:  Mr. Gerber, why don't I hear from you.

17         I have reviewed all of the correspondence relevant to

18    this case and the cases and the declarations and other relevant

19    documents.  So, Mr. Gerber, let's hear from you.

20         MR. GERBER:  Thank you, your Honor, and thank you for

21    seeing us on such short notice.

22         Your Honor, before I turn to the cases in the legal

23    doctrine, I just first want to put this in context, and what we

24    have here is a situation, which as the Court knows, a hearing

25    is scheduled for Monday and our client has been ordered to

LAT5ter1

1   testify at that hearing.  At that hearing -- or in connection

2   with that hearing, Judge Netburn is considering whether to make

3   a criminal referral to the U.S. Attorney's office for the

4   Southern District of New York.  Our client is being called to

5   testify regarding the subject matter as to which there could be

6   a referral.  That is what he is being asked to testify about --

7   directed to testify about.  He is, in a literal sense, in a

8   really true sense, being called as a witness against himself

9   and that scenario, where he has been called as a witness at a

10  hearing to determine whether, with respect to his testimony,

11  the subject matter of his testimony, there should be a criminal

12  referral, we believe that is antithetical to the guarantees of

13  the Fifth Amendment.

14          THE COURT:  Well, let me ask you a direct question

15  before you go beyond that.  Isn't he already called as a

16  witness by submitting his declaration under oath?

17          MR. GERBER:  So, your Honor, the two-part Klein test

18  speaks to that issue, particularly on the second prong of

19  Klein.  So, one of the questions that the Second Circuit

20  directs the Courts to ask, and which your Honor is asking is,

21  hasn't he already made himself a witness?  Hasn't he already

22  waived given the sworn statements?  And, your Honor, the law is

23  clear that when there are no grounds for apprehension, that

24  prior testimony does not carry over, does not constitute a

25  waiver in a subsequent proceeding or in a new proceeding.

LAT5ter1

1              Now, I think it is undisputed, I think the law is

2    crystal clear that if you have a new proceeding, a different

3    proceeding, you don't have a waiver from a prior proceeding.

4              THE COURT:  This isn't a new proceeding.

5              MR. GERBER:  So, your Honor, understood, but the point

6    we would make is --

7              THE COURT:  He submitted a declaration in the

8    proceeding specifically on the issue that is raised in the

9    proceeding and was not, as they say, dragged in to court to

10   testify about that.

11             MR. GERBER:  Your Honor, what has changed, the new

12   grounds for apprehension are the Court's directive not only to

13   have to come testify but, critically, the Court is

14   contemplating a criminal referral and that constitutes new

15   grounds for apprehension.

16             THE COURT:  All right, so let's concentrate on that.

17   The first thing I want to ask is, without the new grounds, do

18   you have any argument that he, if there weren't -- if there

19   aren't new grounds or weren't new grounds, that he would have

20   any basis to refuse to testify?

21             MR. GERBER:  Yes, your Honor.  Yes, because we

22   think -- we respectfully submit, as we say in our papers, that

23   the first prong of Klein is also not satisfied because the

24   Court --

25             THE COURT:  I'm sorry.  I didn't mean to interrupt

LAT5ter1

1    you.  Let's say with the new, the changed circumstances.

2            MR. GERBER:  Yes, your Honor.

3            THE COURT:  I read the transcript, I got the

4    transcript this afternoon from the argument before Magistrate

5    Judge Netburn.

6            MR. GERBER:  Yes, your Honor.

7            THE COURT:  Two things.  One, he is not even

8    referenced with regard, specifically, with regard to a criminal

9    referral; and secondly, wouldn't you have to convince me that

10   prior to any reference to a criminal referral that he did not

11   have a basis to believe that he would subject himself to

12   significant punishment by the Court including criminal contempt

13   for taking acts which were in violation of that order and,

14   therefore, in violation of the law and that would subject him

15   to possible criminal prosecution?

16           MR. GERBER:  So several responses, your Honor.

17               First, with regard to the fact, respect to the fact

18   that he is not referenced, by name, in the Court order, that is

19   true but, your Honor, given the facts, as your Honor is well

20   aware, and given what is in the declarations, I don't think

21   there is any real question here, any real factual question that

22   part of what Judge Netburn is considering is a criminal

23   referral with respect to our client.  I don't think that's

24   really in dispute as part of what is going on here at the

25   hearing.

LAT5ter1

1          THE COURT:  That was always possible.  That was always

2    possible.  That was possible when all of the parties signed the

3    protective order.

4          MR. GERBER:  Yes, but your Honor, the second prong of

5    Klein, the test, the new grounds of apprehension, is not about

6    the -- the question that Courts are directed to ask is not, on

7    that piece, what an individual could have surmised or might

8    have surmised at a particular -- sort of at step one.  The

9    question is whether facts and the grounds have changed, whether

10   there are new grounds for apprehension, whether someone has

11   been put on notice in an additional way.

12         THE COURT:  But that's not the first inquiry.  The

13   first inquiry is whether or not there was a sufficient basis

14   for him to understand that if you violated this Court order and

15   then later confessed to it, he could expose himself to criminal

16   prosecution and at least, minimally, a criminal prosecution for

17   a criminal contempt.

18         MR. GERBER:  Your Honor, first, I think that for a

19   non-lawyer I did not think that is so obvious at all.  I

20   appreciate --

21         THE COURT:  But this isn't exactly -- this may be a

22   non-lawyer but not someone who is unfamiliar with the Court

23   process.  And a lot of these arguments that you are making

24   about what he could have thought or might have thought, there

25   is absolutely no basis in this record for me to make that

LAT5ter1

1    conclusion because he doesn't say any of that.  He doesn't say

2    he didn't know that he would be making a serious violation of

3    the Court order which might subject him to punishment and

4    penalties including criminal penalties and somehow, despite his

5    actions that were consistent with that, with understanding

6    that, somehow he didn't know that when he submitted these

7    affidavits.  On what basis am I supposed to conclude that

8    somehow he was an ignorant bystander and didn't understand the

9    Court process and didn't understand that if he did what the

10   Court told him not to do that he would be subject to punishment

11   for that and serious punishment even including criminal

12   contempt.

13           MR. GERBER:  Your Honor, the protective order -- the

14   core protective order does reference sanctions, it does not

15   reference criminal sanctions or criminal referral.  It does not

16   reference criminal contempt.

17           THE COURT:  But, again, that's a sideways argument

18   because I have yet to hear you -- say, and I haven't seen in

19   any of his affidavits -- that he thought that he was confessing

20   to something that he couldn't go to jail for.

21           MR. GERBER:  Well, your Honor, I can't speak --

22   because of the privilege, I can't speak to what my client has

23   or has not told me what he understood.

24           THE COURT:  If you want me to make a conclusion that

25   he somehow didn't understand this when the evidence is that he

LAT5ter1

1   has great familiarity with the process; he is a professional,

2   not a layperson.  He may not be a lawyer but he is a

3   professional and a lot of his contact is in court.  And also,

4   the circumstantial evidence is that -- unless you are

5   representing this or somebody from Kreindler is representing

6   this, there is no reason for me to assume that when he filled

7   out that first affidavit that the law firm and he didn't both

8   understand the seriousness of the information he was getting

9   ready to provide to the Court and that there would be possibly

10  serious consequences without limitation if, once the Court

11  found, saw this affidavit.  And this isn't even -- and that's

12  only the first one because then the other question is -- and

13  that's what I am looking for -- the kinds of things you want me

14  to surmise.  Where I am supposed to get that from since he

15  doesn't say it, that I am supposed to assume that by the time

16  he voluntarily submitted the second affidavit he didn't know

17  from the very beginning when he submitted the first affidavit,

18  and then after he submitted the first affidavit and there was

19  the big hullabaloo about that that somehow he thought he could

20  do these acts, admit them without impugning.

21          MR. GERBER:  Your Honor, our argument is not based --

22  it is true we do not have record evidence about what was in his

23  mind at the time or what he understood.  That is the case, we

24  do not have record evidence about that.

25          THE COURT:  We do have some record evidence.  We know

LAT5ter1

1    that his declaration says he took significant steps to make

2    sure that no one found out what he was doing and it doesn't say

3    he wasn't aware of the protective order.  It doesn't say he

4    wasn't aware that he would be in contempt of Court if he

5    violated that order.  It doesn't say, oh, I'm a layperson and I

6    don't know what goes on in the Court so I thought if I violated

7    the Court's order that somehow I would just get a $10 fine.  He

8    handled this as if this was the most serious conduct that he

9    had ever engaged in in his life in terms of hiding it from the

10    law firm, in terms of hiding it from the Court, in terms of how

11    he destroyed the evidence.  So you say, you are right, there is

12    no direct evidence and that would be helpful to him if there

13    was, but there is no direct evidence that he was unaware of the

14    consequences of violating Court's order and the serious nature

15    of, even criminal nature of violating a court order.  And I'm

16    not sure that any layperson would -- very few laypeople,

17    reasonable laypeople would say to me that I think I can violate

18    a court order and that would not be breaking the law and the

19    Court couldn't punish me for that.

20         So, I'm not sure -- I mean given, as Judge Netburn

21    examined the circumstances under which he conducted this

22    disclosure, the extent to which he went to hide this

23    disclosure, not just from the lawyers but from anyone finding

24    out that he was the source of this, on what basis do I have to

25    conclude that somehow he was just an ignorant layperson who had

LAT5ter1

1   no idea he was committing the crime?

2            MR. GERBER:  Your Honor, a few points.

3            First, an individual can appreciate -- or an

4   individual can be aware of the potential for sanctions and an

5   array of sanctions but not appreciate the potential for a

6   criminal referral.  I just think for the record I want to make

7   clear about that.

8            THE COURT:  But nobody says that's true in this case.

9            MR. GERBER:  Again, your Honor, I -- it is certainly

10  correct that there is no -- his declarations do not speak to

11  either way.  The declarations do not speak either way to what

12  sanctions he did or did not appreciate could exist as a result

13  of his conduct.  The declarations are silent on the sanctions

14  question.  I do just want to make the point, your Honor, that

15  if this were arising in a different -- in a new civil action,

16  for example, if the declarations had been given in civil action

17  no. 1 and this was arising in civil action no. 2, the law is

18  crystal clear that there would be no finding of waiver in civil

19  action no. 2 because of a brightline rule that says in a new

20  action we don't infer waiver from a different proceeding

21  because of the potential for new grounds for apprehension.

22            THE COURT:  You are talking about a circumstance that

23  doesn't apply.

24            MR. GERBER:  Your Honor, the point we are making is

25  that, as Judge Cote discussed in *Knopf*, within a single

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

LAT5ter1

1    proceeding you can have new grounds for apprehension.

2            THE COURT:  That's true, but the scenario that

3    Magistrate Judge Netburn is working with is she told the

4    lawyers, OK, everybody knows there is a protective order, you

5    know what you are supposed to do, you are supposed to notify

6    everybody else what they're supposed to do who has access to

7    this information.  This information has been leaked in

8    violation of that order.  I want to know who leaked it and so I

9    can take the appropriate action.  Ultimately, Mr. Fawcett

10   confesses that he is the culprit and submits affidavits

11   admitting his liability, his responsibility, and exculpating

12   the lawyers.  Your critical point is that because there is a

13   reference in the order to possible criminal referral, which was

14   a circumstance that you acknowledge that existed even before

15   she said it and would have existed even if she hadn't said it,

16   that you want me to assume that that means that your client

17   wasn't aware of that possibility before that and only became

18   aware of the possibility of criminal contempt sanctions once he

19   saw that reference in that order, even though that's not what

20   any of his affidavits say.

21           MR. GERBER:  Your Honor, his affidavits just don't

22   speak to that issue.

23           THE COURT:  I know.  None of his affidavits speak to

24   that.  Nobody forced him to submit these two affidavits.  If he

25   wanted to submit an affidavit on that issue I don't know what

LAT5ter1

would have prevented him from doing so.  I'm not supposed to

assume that is the case because he didn't submit an affidavit.

This is a person who, up until -- well, let's put it this way.

With regard to his past violation, is -- really admitted it and

with regard to his continued testimony, that he wants a

determination that somehow he didn't realize the extent of the

punishment until he saw that reference in an order and so,

therefore, that changes the circumstance.  Isn't that sort of

like saying, well, two things.  It is sort of like a Perry

Mason moment.  It is sort of like, OK, I'm on the stand, I

break down and confess to committing the crime, and exculpate

the person that is sitting at the table, but now you say I

can't be asked any questions -- Perry Mason can't ask me any

more questions about that while I'm on the stand.  Or that I,

you know, I committed a murder and I thought, well, you know

what?  If they convict me, I might get life in prison.  And

then I find out that they're going to go for the death penalty

so I say, oh, wait a minute, now you are going for the death

penalty, everything has changed.

        I'm not sure -- the question isn't how severe the

punishment is, the question is whether you knew at the time

that you, even if you were only convicted of disorderly

conduct, the question is whether you knew at the time that you

provided this information in this proceeding that that

information would subject you to punishment and could subject

LAT5ter1

1    you to criminal punishment.  And I still don't -- I don't hear

2    an argument that your client was not fully aware that his

3    violation of this Court order could subject him to criminal

4    penalties including criminal contempt and a referral which

5    would have been through a referral to the U.S. Attorney's

6    office.

7            MR. GERBER:  Well, again, your Honor, I think the

8    record is silent on that but if I may -- if I may --

9            THE COURT:  So how can I conclude that if the record

10   is silent?

11           MR. GERBER:   Well, no, your Honor.  I will say what

12   Klein says that the waiver of the privilege can only be

13   inferred in the most compelling of circumstances.  I think,

14   your Honor, to the extent the record is silent I think that

15   that strengthens Mr. Fawcett's point, not the other way.

16           THE COURT:  Not to the extent that it is silent on

17   what he thought.  If the crux of your argument is that he was

18   under a misconception or was ignorant then it is his

19   responsibility to tell me that.  I'm not supposed to assume

20   that, I assume just the opposite.  I assume that the conduct

21   that he was involved with clearly, as Magistrate Judge Netburn

22   concluded, clearly is more consistent with knowing the

23   seriousness of the violation that you committed rather than

24   being ignorant of the seriousness of the violation that you are

25   committing and the seriousness of the possible penalty.  And

LAT5ter1

1    your argument would be significantly advanced, I would assume,

2    if your client were to say I had no idea I could be subject to

3    criminal punishment so it wasn't until I saw that in the

4    Judge's order that it ever dawned on me.  I'm not even going to

5    say that I think that that would be sufficient but at least

6    that would advance your argument significantly more than to

7    simply say to me, oh, well, there is nothing in this record and

8    we are to the going to tell you anything about it but we, on

9    the basis of a conclusion that somehow this is a change in his

10   mind of circumstances, it is not a real change in

11   circumstances, it was always subject to these penalties and

12   even then I don't even hear you saying that, making any

13   representation or submitting any evidence about what the

14   lawyers and he discussed or thought when they were preparing

15   this affidavit.  I mean, I can't imagine that you would, or

16   anyone from the firm Kreindler & Kreindler would say to this

17   court that they sat down and helped this individual prepare

18   this affidavit without having any discussion with him about the

19   nature of the serious problem that he had just created and the

20   serious consequences that he could face.

21           MR. GERBER:  Your Honor, just so the record is clear,

22   we were not representing him at the time.

23           THE COURT:  I understand that.

24           MR. GERBER:  And, your Honor, I hope the Court

25   appreciates and understands, of course this is not an

LAT5ter1

1    evidentiary hearing, I can't make a representation to the Court

2    about what my client has told me.

3            THE COURT:  Right.  Only your client can make those

4    representations on declarations prior.

5            MR. GERBER:  Your Honor, if I may, you referenced

6    Perry Mason, and if I can use that opportunity to turn to the

7    other prong of the Klein test because your Honor made the

8    point, used the example of an individual on the witness stand

9    who testifies to certain matters and then wants to stop.  It is

10   critical here, and we cited cases in this regard, EF Hutton and

11   Candor and the Vitamins Antitrust Litigation case out of D.C.

12   that do draw a distinction, an important distinction between

13   trial testimony or a situation where a jury is a fact finder

14   and situations where a Judge is a fact finder.  And Klein does

15   say that a Court should not find a waiver unless a failure to

16   find a waiver would prejudice a party to the litigation.

17           THE COURT:  You don't think parties in this litigation

18   would be prejudiced -- both of them -- if his testimony that he

19   was the one responsible and not the lawyers was withheld, was

20   ignored?

21           MR. GERBER:  So, your Honor, the fact that his

22   description of what he did, the acknowledgment of what he did,

23   we are not asking that that be struck precisely because as to

24   that piece there would be prejudice.

25           THE COURT:  Suppose he is lying.  Suppose he is lying.

LAT5ter1

1  Suppose that's not true.  What are you supposed to do with

2  that?  Can he be cross-examined on that?

3  MR. GERBER:  Your Honor, that point, though, of what

4  if the individual is lying, that's true every time -- every

5  time -- someone invokes.

6  THE COURT:  Right, and that doesn't mean it is not a

7  consideration with regard to whether or not he is entitled to

8  give partial statements and not have them tested by

9  cross-examination.

10  MR. GERBER:  Right.  And, your Honor, the question

11  then becomes what Klein says -- what Klein says is because,

12  again, every case that is always going to be a concern, the

13  Fifth Amendment stands as a block, as a barrier to

14  fact-finding.  The question becomes is there a path -- what

15  Klein is telling the Court to do is, is there a path to not

16  finding waiver without prejudicing the parties?  And in a world

17  in which the Court did not strike his admission about what he

18  did but otherwise struck statements that are prejudicial to a

19  party, the parties are no worse off.  They're no worse off

20  than --

21  THE COURT:  But in those cases those were not relevant

22  issues, they were not determinative issues.  The Court decided

23  that it could decide the issues in this case without arising at

24  those other determinations.  In this case we say there is no

25  prejudice.  In this case what -- I'm not even sure, I have read

LAT5ter1

1   it several times the two declarations.  I'm not sure which

2   portions you say should be added and which portions you say

3   should be out.

4         Let me give you a scenario:  Magistrate Judge Netburn

5   holds this hearing on Monday, calls a Kreindler lawyer and

6   doesn't believe him or her.  OK?

7         MR. GERBER:  Yes, your Honor.

8         THE COURT:  Then is it your position that she should

9   act as if there is no evidence that Mr. Fawcett was responsible

10  for this?

11        MR. GERBER:  No.  No.  Your Honor, we completely agree

12  that Judge Netburn should take account of what Mr. Fawcett did

13  and he is responsible for it.

14        THE COURT:  He is the only one who says it and he is

15  the only one that can testify to that.

16        MR. GERBER:  Your Honor, again, we are not

17  disputing --

18        THE COURT:  In what form?  I just don't understand

19  your solution here.  In what form do you say he should be

20  examined and to what extent, do you say, that examination

21  should be limited?

22        MR. GERBER:  Your Honor, our position is that what the

23  Court can do, consistent with the first prong of Klein, is

24  strike portions of the declarations --

25        THE COURT:  Which portions?

LAT5ter1

1          MR. GERBER:  Any portion that in any way prejudices a

2     party keeping his admissions to what he did.

3          THE COURT:  Well, doesn't his taking responsibility

4     for and deflecting it from the lawyer, if that is not

5     admissible testimony to be examined under oath doesn't

6     withholding that testimony prejudice one side?  And if we cut

7     out his declaration that he was the person involved and not the

8     lawyer, doesn't that prejudice the other side?

9          MR. GERBER:  Your Honor, I'm sorry.  For a moment

10    there the feed cut out so, I apologize, I did not hear your

11    question.

12         THE COURT:  That's fine.

13         My question was, basically, how do you not prejudice

14    one side or the other?  This person has testimony to give and

15    that testimony is favorable to the lawyers at the law firm.  He

16    says they didn't know nothing, I did it all myself.  Your

17    proposition is that that part should stay in but the other side

18    should not have an opportunity to cross examine him on that and

19    in what form -- you are saying it should be submitted in the

20    form of the declaration or he should be examined, direct and

21    cross-examined, on that issue?

22         MR. GERBER:  No, your Honor.  Our position is that the

23    Court should find that there was no waiver, that he should be

24    permitted to invoke and not be called as a witness against

25    himself.  At the same time, to avoid prejudice to the parties,

LAT5ter1

1    the Court could strike portions of his declaration keeping his

2    admissions of what he did.

3            THE COURT:  Suppose his declaration is untrue.   In

4    what proceeding would you accept the out-of-court sworn

5    declaration of a witness and not subject that witness to

6    cross-examination on that issue?

7            MR. GERBER:  Well, your Honor, in this context -- I

8    mean to the extent we are talking about his admissions of his

9    conduct which, to say the least, are not to his benefit, quite

10   the opposite, as the Court has noted, and I think are not in

11   dispute in the case in terms of what he himself did, I don't

12   think anyone is disputing that.  He is acknowledging it, I

13   don't think as to what he did the parties are fighting about

14   that.

15           THE COURT:  No.  I'm not going to say that.

16   Acknowledge is not the right word.  He has submitted an

17   affidavit making these statements.  OK?  I don't know if it is

18   true.  I don't know if it is false.  I don't know if it is

19   partially true.  I don't know if it is partially false.  I have

20   no idea.  Your assumption is that it should be accepted in the

21   limited manner that he has presented it and accepted it as

22   being true.  I'm not sure what kind of procedure that is.

23           MR. GERBER:  Your Honor, it is a procedure that is

24   designed to try to preserve his Fifth Amendment privilege

25   without prejudicing the parties and, again, I do want to

LAT5ter1

1   emphasize that any time someone is invoking it is depriving a

2   fact finder of the opportunity to gain additional facts.

3           THE COURT:  But what you are asking me to do is a

4   little different than what is done in the cases.  What is done

5   in the cases is that when there is found to be a legitimate

6   basis to assert the Fifth that it deprives a witness of some

7   valuable testimony.  It is the Court's responsibility to the

8   process and to the parties to fashion a reasonable alternative.

9   None of those cases say that that can be manipulated in order

10  to provide the witness an opportunity to take the Fifth.

11  That's not what those cases say.  They don't say that, they say

12  that -- and it is not even a consideration of -- that is not a

13  part of the consideration of whether he can assert the Fifth.

14  It is a part of the consideration if he can't assert the Fifth

15  whether, how do you, in fairness, present the evidence.  If he

16  has a Fifth Amendment privilege and you have an opportunity to

17  otherwise provide that evidence to the Court then the Court has

18  the obligation to do that.  I don't read those cases as saying

19  that, look, this is a tool by which you can give him a chance

20  to get out of testifying.

21          MR. GERBER:  Your Honor, if may, and very

22  respectfully, I do disagree with the Court on that point about

23  what the cases say.

24          THE COURT:  OK.  Which case says that?

25          MR. GERBER:  For example, in EF Hutton.

LAT5ter1

1                THE COURT:  Read the language in EF Hutton that you

2     say says that the determination of whether he can assert the

3     Fifth is dependent on whether or not you can fashion partial

4     admission of testimony.

5                MR. GERBER:  I'm just pulling the case, your Honor.

6                THE COURT:  Yes.  Sure.  Maybe I have misread it.  But

7     I didn't understand that to be part of the test that determines

8     whether or not he can assert the Fifth.

9                MR. GERBER:  So, your Honor, and this is what I am

10    trying to get at.

11               THE COURT:  Where is it?

12               MR. GERBER:  So, in EF Hutton.

13               THE COURT:  Where are you?

14               MR. GERBER:  I'm on page 117.  It is the very end of

15    the EF Hutton decision.

16               THE COURT:  Paragraph?

17               MR. GERBER:  It is page 117, it is the paragraph

18    beginning:  "On the basis of the foregoing analysis..."

19               THE COURT:  Right.

20               MR. GERBER:  And Court does an analysis and it says

21    the incriminating testimonial statement that Hutton argues

22    forms the basis for a waiver, Smith's affidavit submitted in

23    support of his Rule 14 motion.  However, the Court --

24               THE COURT:  Sorry.  Have to do that over.

25               MR. GERBER:  Sorry.

LAT5ter1

1          What I was saying was that at page 117, the Court

2     makes the point that the incriminating testimonial statement

3     that Hutton argues form the predicate for a waiver, Smith's

4     affidavit submitted in support of his Rule 14 motion, the Court

5     then notes it denied the Rule 14 motion as being untimely

6     filed.  As a result -- and here is the key language -- as a

7     result, even if Smith's affidavits presents a distorted view of

8     the, facts no prejudice can adhere to Hutton as a result of

9     such distortion because the Court has not relied on the Smith

10    affidavit.  The second prong of the test for testimonial waiver

11    is therefore not met.

12          THE COURT:  That's not this case.  You want the

13    parties to rely on the affidavit.

14          MR. GERBER:  Your Honor, in these cases, EF Hutton and

15    others, the Court rejects the affidavits entirely in order to

16    avoid the waiver issue.  It is not they're not testimony at

17    all, it is not there is not a concern about distortion.  The

18    Court says because we want to avoid a waiver, because that is

19    so important because of the constitutional concerns here, we

20    are going to avoid this problem by disregarding the affidavit

21    entirely.

22          We are asking for something short of that.  We are not

23    coming and saying --

24          THE COURT:  How does that support what you asked for

25    if you are not asking for that?

LAT5ter1

1              MR. GERBER:  Because we are asking for less.

2              THE COURT:  OK.

3              MR. GERBER:  Because if a Court, in order to avoid a

4    waiver -- if a Court, in order to avoid the invocation of Fifth

5    Amendment rights can disregard a declaration entirely then

6    surely a Court, by definition, logically, has the authority,

7    has the ability and can and should strike portions of a

8    declaration.  One is less than the other.

9              THE COURT:  I can only disregard the declaration

10   entirely if I find that he has a Fifth Amendment privilege.

11             MR. GERBER:  I'm sorry, your Honor.  I missed the last

12   statement.

13             THE COURT:  I can only disregard the affidavit

14   entirely if I first find he has a Fifth Amendment privilege.

15   It is not the other way around.  It is not that I disregard the

16   affidavit to see if that gives him a chance to assert a Fifth

17   Amendment privilege.

18             I understand your prejudice argument but I am still

19   not sure I understand how I can make, or Magistrate Judge

20   Netburn can make, a decision on this bare record that neither

21   party will be prejudiced.  It would be quite awkward -- and it

22   could happen -- and if it is compelled if the law compels it,

23   but it would be quite awkward for Magistrate Judge Netburn to

24   say I'm going to disregard the declarations so therefore there

25   is no evidence in this case whatsoever that supports the

LAT5ter1

1   lawyers assertions that they didn't know.  OK?  And that would

2   be prejudice.  All right?  That would be prejudice to them,

3   particularly if she were to make what would be an awkward

4   decision to say that the reason I'm going to rule against the

5   lawyers is because I don't believe them alone and they have no

6   corroborating evidence of this because I have just ignored the

7   corroborating affidavits that support it.  And if she does

8   allow just the affidavit, doesn't that prejudice the other side

9   to say, well, wait a minute, we don't think that's true.  That

10  statement is not true and we believe that we can demonstrate

11  that that statement is not true through examination of this

12  witness under oath, whereas consistent with a proceeding that

13  the Court has already set up a process where the direct

14  examination are the affidavits.

15          My understanding is the way this is going to be

16  conducted, the direct examination are the affidavits that have

17  been submit and they will be going straight into

18  cross-examination of those witnesses.

19          So this isn't a question of just a question of

20  admissibility.  It is a question of what you do with this

21  evidence that I -- it would be quite unusual for me to say that

22  Magistrate Judge Netburn can decide on, based on these

23  affidavits, which paragraph she is going to let in and which

24  paragraph she is going to keep out and make a determination

25  that it doesn't prejudice either side.

LAT5ter1

1          MR. GERBER:  Your Honor, I would just point out that

2     there are lots of circumstances -- lots -- in which a Court, a

3     fact finder has information that it can't rely on for a variety

4     of reasons.  Judges do this all the time, testimony has been

5     struck for any number of reasons, Courts may disregard

6     something, whatever it may be.  So, the fact that the Judge has

7     certain information and then for whatever reason is not relying

8     on it on findings of fact, that's not unheard of, that's not so

9     uncommon.

10          THE COURT:  But that's not what you are proposing.

11    You are proposing piecemeal to pick -- for example, give me an

12    example of a paragraph that you say should be kept in or a

13    sentence should be kept in.  Give me an example of a sentence

14    you say should be deleted.

15          MR. GERBER:  Your Honor, before I read from the

16    declaration I just want to be sure in terms of what is under

17    seal and what is not.

18          THE COURT:  You are right.  You are right.  I'm sorry.

19    Don't give me a paragraph then, talk about it in general.  I

20    don't understand the nature of the information that you say

21    should be allowed and should be allowed without

22    cross-examination and the nature of the information you say

23    should be precluded.

24          MR. GERBER:  Sure.

25          THE COURT:  What is the information?

LAT5ter1

1    MR. GERBER:  So, your Honor, there are certain

2    sentences or paragraphs where Mr. Fawcett is describing things

3    that he did and they are contrary to the Court's order.  There

4    are sentences in here, paragraphs in fact, that are in no way

5    self-serving.  Frankly, they are directly contrary to our

6    client's interests discussing things that he did that

7    contravenes a Court order.

8    THE COURT:  You say it should be limited, he should be

9    able to shoes by declaration, the extent or the limit of how he

10   is going to discuss that issue.  Because I don't know how --

11   you are saying because your position still is -- I'm not sure

12   what your position is.  Is your position that the parties get

13   cross-examination on that issue?

14   MR. GERBER:  No, your Honor.  No.

15   THE COURT:  OK.  That's what I thought.

16   MR. GERBER:  No.

17   THE COURT:  So we are just supposed to accept it as

18   true?

19   MR. GERBER:  Your Honor, the thrust of the Fifth

20   Amendment is to protect an individual from being a witness

21   against himself.

22   THE COURT:  I know, but the information we are talking

23   about is information you acknowledge is not protected by the

24   Fifth Amendment.  You are saying that I should let the parties

25   use, as evidence in this proceeding, some incriminating

LAT5ter1

1    statement.  So, is it your position that that also applies to

2    him that the Court should use those incriminating statements to

3    the limit that they lay out in this affidavit against and for

4    all of the parties including him?

5            MR. GERBER:  The statements regarding his own conduct?

6    Yes.  Yes, your Honor.  Yes.

7            THE COURT:  All right.  So how is that consistent with

8    a Fifth Amendment.

9            MR. GERBER:  Your Honor, he did not invoke before.

10           THE COURT:  Right.

11           MR. GERBER:  He is seeking to invoke now.

12           THE COURT:  Right.  So your real critical argument is

13   really whether or not there is a change of circumstance because

14   without a change of circumstance, you wouldn't have an

15   argument.  Right?  You say he invoked before and now that

16   things have changed -- he didn't invoke before but now that

17   things have changed he is invoking.

18           MR. GERBER:  No.

19           THE COURT:  Is there anything in his first affidavit

20   that you say is protected by his Fifth Amendment privilege even

21   though he put it in the affidavit at the time?  And are you

22   saying it was protected on the date that he submitted it?  Or

23   are you saying he is now only protected because of the

24   subsequent reference to criminal penalty?

25           MR. GERBER:  Your Honor, I want to be clear on our

1  position.  We are not suggesting that as to either declaration

2  the statements in those declarations are somehow protected by

3  the Fifth Amendment.  He did not invoke before so we are not

4  saying -- we are not suggesting that there is somehow Fifth

5  Amendment protection here on those statements the question is

6  whether he can invoke now.

7        THE COURT:  Right.  OK.  That's what I'm trying to

8  focus on.  I want to understand your argument.  So, your

9  argument is not that he invoked his Fifth Amendment privilege

10 at any time prior to Magistrate Judge Netburn's order.

11        MR. GERBER:  He did not.

12        THE COURT:  OK.  And if Magistrate Netburn hadn't put

13 that reference in that order you wouldn't have an argument.

14        MR. GERBER:  No, we would, your Honor, under prong

15 one.  Under prong one.  Your Honor, I take your point as to

16 prong --

17        THE COURT:  No.  What I am trying to understand, what

18 would be your argument -- if he told me he didn't invoke, he

19 didn't assert his Fifth Amendment right when he voluntarily

20 submitted an affidavit in this litigation, I'm not sure what is

21 your argument that, absent what you claim is a change of

22 circumstance, he was protected from giving further testimony

23 even though he had given testimony by declaration.

24        MR. GERBER:  Your Honor, that's the question under

25 prong one.  The question is whether there is a way to avoid a

LAT5ter1

1    finding of waiver without prejudicing the parties.

2            THE COURT:  Right.  And you say the way to do that is

3    to eliminate evidence that is favorable to whom and to leave in

4    evidence that is favorable to whom.

5            MR. GERBER:  The way to do that is to leave in any

6    statements that are contrary to his interests that neither

7    party can characterize is self-serving.  To the extent -- and

8    Saudi Arabia --

9            THE COURT:  Isn't that pretty much every one of those

10   statements?

11           MR. GERBER:  No, your Honor.  I don't think that's

12   correct.

13           THE COURT:  All right.  So you say that you will leave

14   in any criminal conduct that -- or any conduct that he admitted

15   his own wrongful acts?

16           MR. GERBER:  Your Honor, I do want to be clear for the

17   record that we are not -- I hope the Court can appreciate why I

18   am saying this.  We are not conceding --

19           THE COURT:  No.

20           MR. GERBER:  -- criminality as probably the Court can

21   appreciate but, yes, your Honor, there is conduct described in

22   the declarations that is contrary to the Court's order; there

23   are statements in there.  I think it is beyond dispute.  I

24   don't think anyone will dispute that there are statements in

25   there that are in no way self-serving and are contrary to his

LAT5ter1

1   interests and they are admissions regarding that conduct and we

2   are not asking that those be struck.  However, Saudi Arabia has

3   pointed out, they've identified certain portions of the

4   declarations that they believe are self-serving, whether it is

5   serving Kreindler's interests or Mr. Fawcett's interest, and to

6   leave those in would prejudice a party.  And we understand that

7   Klein makes clear that you can't say no waiver if that's going

8   to prejudice a party.  So we think the Court --

9          THE COURT:  You think Kreindler is going to say

10  they're not prejudiced by your taking out of this declaration

11  his statement that none of the Kreindler lawyers were involved

12  in this disclosure?

13         MR. GERBER:  Your Honor, they are --

14         THE COURT:  Do you agree with that?

15         MR. GERBER:  I think the question is are they

16  prejudiced relative to where they would have been ex ante, that

17  is, where would they have been if he had invoked to begin with.

18  And the answer is, no, they're not prejudiced, they're no worse

19  off.  The world, as to Kreindler, looks the same.  They are no

20  worse off if that is struck.  It is as if he had not made those

21  statements before, it is as if he had invoked before and in

22  that sense they are no worse off.

23         THE COURT:  It is not as if he had invoked before

24  because if he had invoked before, none of this testimony would

25  be there, nobody could take advantage of this to the other's

LAT5ter1

```
 1    disadvantage.  So I don't understand how that is supposed to
 2    make everybody happy, by saying that you are just going to --
 3    that just going to let one side, let Saudi Arabia pick the
 4    stuff that they don't like and take it out and then just use
 5    the stuff that they do like against the Kreindler lawyer.  And
 6    the Kreindler lawyer says, yeah, that's all right with me.
 7            I mean, you really think that that's a viable
 8    solution?
 9            MR. GERBER:  Your Honor, I actually do think it is
10    viable solution and I think I do think --
11            THE COURT:  The lawyers -- because they haven't spoken
12    up on this issue so I don't what basis that you believe that
13    they would agree.  And, who is going to make that
14    determination?  Magistrate Judge Netburn?  Or the Saudi Arabia
15    lawyers?
16            MR. GERBER:  No.  I think the parties would make their
17    submissions to the Court and Judge Netburn would strike what
18    she thinks appropriate.
19            Your Honor, what Klein makes clear, I think I submit,
20    is that given the importance of the Fifth Amendment right, a
21    Court should try to find a way to avoid a waiver.  I think
22    Klein and EF Hutton --
23            THE COURT:  I'm not going to accept that.  It is not
24    what it stands for.  It is not my job to try to find a way to
25    avoid a waiver.  My job is to determine whether in fact there
```

1    was a waiver.  I'm not supposed to fix this for your client,

2    I'm supposed to determine whether your client made a conscious

3    decision that he would forego asserting his Fifth Amendment

4    privilege in order to provide the information in this

5    litigation that he thought was important to provide and whether

6    he knowingly and voluntarily did that.  I'm not supposed to

7    help him.  I'm not supposed to fix this for him.  I am supposed

8    to determine whether he has this right and he asserted this

9    right.  And you say he didn't assert this right but you want to

10   fashion a remedy that you say would put the parties in a better

11   position than had he asserted this right.  Well, they don't

12   want to be in a better position than when he asserted this

13   right.  They want to be in a better position than they're in if

14   he has such a right.  And their position is this isn't about

15   trying to figure out whether or not we can help him now undo

16   his waiver.  This is about whether or not he in fact had that

17   right and we agree that he did.  And then the question is

18   whether he knowingly and voluntarily decided, even though I

19   don't have to give this testimony in this proceeding, I am

20   going to give it anyway even though I know it's going to

21   incriminate me and even though I know that, to the extent that

22   it may incriminate me, I still think it is important to do.

23          Do you think if, on Monday morning, a Kreindler lawyer

24   says that when we prepared this affidavit we explained to him

25   the serious nature of providing this affidavit and that he

LAT5ter1

 1     would be confessing to a crime and that he might have serious

 2     consequences for it once the Judge finds out that he did this

 3     in violation of the order.  Do you think that, under those

 4     circumstances, that I or Magistrate Judge Netburn will have

 5     some basis to argue he didn't waive?

 6              MR. GERBER:  Under prong two?  No.  I agree under

 7     prong two.

 8              THE COURT:  Prong one?

 9              MR. GERBER:  Prong one is a question about prejudice.

10     Prong two goes to what he understood and the scenario your

11     Honor is describing.  I understand.  You are describing a

12     scenario where there is evidence about what he understood.

13     Your Honor --

14              THE COURT:  How did we get to that?  How does one get

15     to that?  How does one get to the truth?  How does one get to

16     that if his position now is, I changed my mind; I submitted

17     this affidavit, I said it was my fault, not the lawyers' fault,

18     everybody knows this now, even in court, out-of-court,

19     everybody knows that I said that I'm the one that did it and

20     they didn't have anything to do with it.  All right?  As long

21     as he is concerned, case closed, he can go home.

22              I am not sure -- I guess the critical argument that

23     you have really made because I still don't completely

24     understand your lack of prejudice argument.  I mean, I don't

25     think, as they say, on prejudice, sometimes you can just use

1    the happy test.  Who is going to be happy with that?  Explain

2    to me how both sides are going to be happy with that result.

3    That's the simple prejudice test.  But, ultimately, it really

4    does -- it is not so much the prejudice test, it is the

5    question of whether or not the order that Magistrate Judge

6    Netburn issued changed the circumstance.  Because before that

7    order, the circumstances were that he voluntarily submitted

8    sworn testimony by declaration in this case and forewent any

9    assertion of the Fifth Amendment privilege, and had not

10   Magistrate Judge Netburn issued this order with that language

11   in it, you would not be in a position to argue the first most

12   important part of the test is whether or not he is being

13   compelled to testify as a witness against himself and that's

14   what the Fifth Amendment is about because he is not -- no one

15   made him do this.  No one -- I don't even have any evidence

16   that anybody even asked him to do this -- somebody may have

17   asked him to do it -- but I have no reason to conclude that he

18   didn't have a choice and made the choice that rather than to

19   stay solid or to refuse to testify because of the exposure that

20   would inevitably result, that there is no reason to conclude

21   that when he did these acts under the circumstances in which he

22   admits that he did these acts, the surreptitious way that he

23   did these acts and his decision to submit not just one but two

24   declarations in this litigation, declarations submitted to

25   convince the Court that -- well, to accept the responsibility

LAT5ter1

1   for the leak and deflect that responsibility from the lawyers,

2   that that was clearly a conscious decision and the purpose of

3   these declarations, that somehow he could make that choice and

4   we can still fashion a process to allow him to do that to both

5   invoke the Fifth and submit testimonial evidence at the same

6   time.  And I have difficulty and I think Magistrate Judge

7   Netburn had difficulty reconciling those two, you know.

8          I don't, given the serious nature of -- given what

9   should have been clear to everyone who had access to this

10  material that it would be a violation of law for them to

11  disclose this material, and given no evidence in this case that

12  this individual did not understand that it was a violation of

13  law to violate that Court order, that somehow doing that, not

14  just on one or two occasions is somehow reflective of his

15  desire not to incriminate himself, he made a conscious decision

16  to incriminate himself and whether or not he thought that the

17  consequences of doing that might be slight or might be serious,

18  it is difficult for me to speculate that somehow he thought

19  this wasn't a big deal and that, at most, he would get a

20  reprimand or a slap on the wrist when he got caught.  And his

21  conduct doesn't even reflect that.  The way he did it doesn't

22  reflect that.

23         So I am trying to understand if you have any other

24  argument that would give him the right to invoke the Fifth now

25  if he didn't invoke the Fifth at any time prior to Magistrate

LAT5ter1

1    Judge Netburn's order and the argument that you make that he

2    had the right to invoke it after the order was that she

3    explicitly said she was looking at possible criminal referral

4    to the U.S. Attorney's office and that's the critical thing

5    that changed his view of whether he wanted to voluntarily

6    continue to voluntarily provide testimony in this providing

7    after submitting two declarations under oath.

8            But, let me hear from Mr. Kellogg and then I will let

9    you respond.

10           MR. KELLOGG:  Thank you, Judge Daniels, and may it

11   please the Court; I will try to be brief because I know you

12   read the transcript from yesterday and I don't want to repeat

13   points.

14           First, on the reason to know issue, his claim now that

15   he didn't understand the seriousness of what he admitted to is

16   inappropriate under Klein where the Court said, and I quote,

17   any witness -- any witness -- who makes testimonial

18   incriminating statements, plainly has reason to know when he

19   does so that these statements may be interpreted as a waiver of

20   his Fifth Amendment privilege against self-incrimination.

21           Now, Mr. Fawcett, who has worked as a legal

22   investigator for 20 years, was better able to understand the

23   legal consequences of his actions than many witnesses face with

24   similar choices indeed.  It is undisputed that he had access to

25   personal criminal defense counsel when he signed the

LAT5ter1

1   declaration.  Heal allocuted to a serious offense.  He knew the

2   protective orders were in place, he knew the materials he gave

3   violated two protective orders.  He took great steps to hide

4   his wrongdoing and he destroyed evidence.  He admitted to all

5   of those things in his declaration and he said I take

6   responsibility for my actions which is itself an admission that

7   he knows that he is incriminated.  Mr. Gerber's only response

8   to that is to claim that it was not the same as a judicial

9   proceeding because the Court's October 4 order created new

10  grounds for apprehension.  Magistrate Judge Netburn rightly

11  rejected both those points.  She said they are, I remind you,

12  entirely of the same proceeding which began when the protective

13  order violations were first discovered.  And that is obviously

14  the case.

15      Mr. Fawcett has been a potential target of this since

16  the very start and his incriminating statements were not

17  somehow wiped off by the October 4 order mentioning potential

18  criminal sanctions.

19      Magistrate Judge Netburn also found, based on her

20  familiarity with all of the circumstances, that it was not

21  credible that Fawcett did not understand he was incriminating

22  himself at the time he signed the declarations.  Neither of

23  those findings are clearly erroneous.

24      So let me turn now to the other prong.  The Court hit

25  the nail on the head when it said Mr. Fawcett cannot testify

LAT5ter1

1    about some matters and invoke the Fifth Amendment on others.  I

2    could cite you cases all day long saying that starting with the

3    Supreme Court's decision in *Mitchell v. United States* when he

4    said, first said it is well established that a witness may not

5    testify voluntarily about a subject and then invoke the

6    privilege against self-incrimination when questioned about the

7    details.  So, having deciding to incriminate himself,

8    Mr. Fawcett cannot take back that decision and assert the

9    privilege to prevent cross-examination on statements he chose

10   to make in his declarations otherwise, as Magistrate Judge

11   Netburn pointed out, witnesses could distort the truth by

12   testifying to some fact, denying or withholding others, and

13   asserting the privilege as a bar to cross-examination that

14   would reveal the whole truth.  This Court --

15         THE COURT:  Let me just make sure I have all the facts

16   right.

17         My understanding is that Magistrate Judge Netburn

18   limited her decision to examination relative to the information

19   that's in the declaration.  She did not issue a blanket rule

20   saying, for no purpose, under no circumstances, could he not

21   invoke the privilege if he was being asked about some other

22   subject matter which might expose him personally.

23         MR. KELLOGG:  Absolutely correct, your Honor.  As the

24   Court said in the Mitchell case, the proper scope of

25   cross-examination on its declaration is what's allowed and we

LAT5ter1

1   undertook and told Judge Netburn that we would not go beyond

2   the scope of the declarations itself in asking him questions.

3   But we get a chance -- we need a chance to test those.  The

4   declarations, even though he said he was taking responsibility,

5   at the same time he gives a very self-serving account designed

6   to mitigate his own culpability and to protect his long-time

7   employers by claiming that he acted without their authorization

8   or knowledge.  In my argument yesterday I went through a number

9   of lines of cross-examination and gave a number of examples of

10  statements in his declarations that we think are misleading,

11  false, or incomplete and that we have a right to follow up on

12  those and he can't simply say, no, I'm sorry, here is what I am

13  going to testify to and I'm stopping there, I'm not going to go

14  farther.

15          As the Second Circuit said in Klein, a distortion of

16  facts by committing a witness to select any stopping place in

17  his testimony is antithetical to the Fifth Amendment.

18          And Magistrate Judge Netburn, at page 27 of the

19  transcript, made clear that what is being proposed by defense

20  counsel is some sort of melange while they may consider some of

21  his statements but not others.  But there is no way for the

22  Court to reach its ultimate conclusion, which is the purpose of

23  the hearing on Monday, without being left with distorted facts

24  if Mr. Fawcett's account is not subject to cross-examination.

25          Judge Learned Hand, in *St. Pierre*, made the same

LAT5ter1

1    point:  The time for a witness to protect himself is when a

2    decision is first presented to him.  Anything more puts a

3    mischievous instrument at his disposal.  He can tell a little

4    bit of the truth and withhold things and say I'm not going to

5    answer questions.  It is just -- there is no case that allows

6    that.  And the ones that Mr. Gerber cites, including

7    particularly *Hutton*, do not hold that at all.  In Hutton, the

8    affidavit in question was considered completely collateral and

9    unnecessary to the Court's decision which denied relief on a

10   timeliness ground and therefore was not subject to its

11   distorted few of the facts in the declaration.

12        It is important to realize just how bizarre the

13   procedure that Mr. Gerber is proposing, that somehow the Court

14   is going to go through the declaration and say, *Well, we will*

15   *throw out this one, we will throw out this one.  You can ask*

16   *about this, you can't ask about that.*  That's not a choice the

17   defendant gets to make once he has waived his Fifth Amendment

18   right.

19        Those are the main points I wanted to make, your

20   Honor.  I am happy to answer any questions.

21        THE COURT:  Mr. Gerber, did you want to add anything

22   further?

23        MR. GERBER:  Your Honor, I don't want to belabor our

24   arguments, the Court has our arguments.  I do want to say,

25   emphasize one last time, a product of a criminal referral, a

LAT5ter1

1   Judge saying that a criminal referral to the U.S. Attorney's

2   office is in prospect, is in contemplation, I do submit it is a

3   game-changer.  I do.  I think that's true I think for anybody,

4   I think it is particularly true for a non-lawyer, a Judge

5   saying that she is considering a criminal referral changes the

6   landscape.  I do respectfully submit that.  But otherwise, your

7   Honor, you have our argument.

8           (Continued next page)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

LATGterO

1          THE COURT:  How is that different than prior to her

2     issuing -- I mean, you're not saying that she considered it

3     when she wrote the order, but never considered it and that

4     wasn't a possibility?

5          MR. GERBER:  No, in terms of an individual's degree of

6     apprehension, being told that a federal judge is considering a

7     referral to the US attorney's office for the Southern District

8     of New York increases that person's degree of apprehension, I

9     do submit that that is the case.

10          THE COURT:  But that's not part of increasing their

11     level of apprehension.

12          MR. GERBER:  I mean, the question is, are there new

13     grounds for apprehension, your Honor.  And our position is,

14     yes.

15          THE COURT:  Your argument is because the clients had

16     reason to believe something different before or are you arguing

17     that simply because it was articulated by Netburn?  My reading

18     of the transcript, Netburn said what I expected her to say,

19     look, I didn't wave a magic wand here and make this a new

20     penalty.  This is what everyone should have understood was part

21     of and was the -- hold on a second, let me have the protective

22     order -- that part of the protective order that says that any

23     violation of this order is punishable by money damages caused

24     by the violation, including but not limited to all attorney's

25     fees, court costs, exhibit costs, expert witness fees, travel

LATGterO

1    expenses, all related litigation costs and actual damages

2    incurred by the other party, equitable relief, injunctive

3    relief, sanctions or any other remedy as the Court deems

4    appropriate -- please mute yourself -- particularly, any other

5    remedy as the Court deems appropriate.  Doesn't that include

6    criminal sanctions?

7          MR. GERBER:  Your Honor, I think that that language,

8    particularly to a nonlawyer, lists a whole lot of things which

9    are civil forms of relief.  Criminal sanctions is not listed

10   there.

11         THE COURT:  The serious problem I have with your

12   argument is that you are not representing that's what your

13   client knew.

14         MR. GERBER:  Your Honor, again, I can't testify for my

15   client here.  I can't speak for my client.

16         THE COURT:  He can submit an affidavit if he wants.

17   I'm not preventing him from doing that.  I'm really in a

18   position at hearing, at trial to assume something is true

19   because the lawyers say there's no evidence in the record that

20   it's not true.  There's got to be some evidence in the record

21   that it is true.  And you have scrupulously avoided making such

22   a representation that your client ever thought that he could

23   get away with this without exposing himself to criminal

24   liability.

25         MR. GERBER:  Your Honor, for all the reasons I'm sure

LATGterO

1   the Court can appreciate, I cannot say, oh, my client told me

2   this or that.

3   THE COURT:  Your client could -- look, we know how you

4   can do it.  He can submit a declaration.  He's submitted two

5   declarations already.  There's nothing that prevented him from

6   submitting a declaration saying that he's so inexperienced that

7   he never thought that he could go to jail for violating this

8   court's order.  And quite frankly, I would be very surprised if

9   he was in a position to legitimately and truthfully allege

10  that.

11  MR. KELLOGG:  Your Honor, if I may make one point.  I

12  don't think even if they were at this point putting a

13  self-serving declaration in saying, I didn't know, that would

14  not overcome the evidence that Judge Netburn relied upon in

15  making her conclusion, but that he did understand he was

16  incriminating himself at the time that he signed the

17  declarations and the declarations themselves which make that

18  clear and the fact that he had advice of counsel when he was

19  doing it.  It would just be preposterous at this point for him

20  to put in a declaration.  And indeed, that's potential

21  possibility of criminal sanctions.

22  THE COURT:  I mean, you can probably tell that I have

23  read through all of these papers.  And I think the Magistrate

24  Judge Netburn's decision was appropriate, not in any error of

25  law or in any way not supported by the facts and the law here.

LATGterO

1  Her determination that this witness who has begun his

2  testimony, right, voluntarily submitting affidavits on the very

3  issue and not just affidavits, significant affidavits on the

4  very issue that the magistrate judge is considering and, as he

5  stated in his affidavit, taking responsibility for the conduct

6  that's at issue here as a witness -- not as an accused -- that

7  there's no reason in this record to conclude other than what

8  Magistrate Judge Netburn concluded.  That he was fully aware of

9  the consequences and serious nature of the conduct that he has

10  said he was involved in and the serious consequences that might

11  follow as a result of that conduct.  Being fully aware that he

12  made a decision to submit sworn testimony to influence this

13  court in its determination as to who was responsible and as to

14  who was either solely or additionally responsible.  And he did

15  that knowing that the there would be very serious consequences,

16  including consequences for violating a court order.  There is

17  no reason to believe that he did not understand that violating

18  a court order constitutes criminal contempt, which can be

19  prosecuted within the power of the Court's power to prosecute.

20  And adding no evidence to the contrary that he believed

21  anything else.

22       And the evidence, the circumstantial evidence is that

23  he acted in a way and made statements in his affidavits in a

24  way that clearly indicated that he made a conscious choice to

25  forego those penalties and punishments and to instead take

LATGterO

1    responsibility for the violation of law and to disclose that in

2    this proceeding in the nature of sworn testimony, that he

3    intends to influence the Court.

4         That being the case, I find that there was no change

5    of circumstances here.  The Court's reference in its order, as

6    I say, is not even a reference to him.  It's a general

7    reference to the availability of sanction and punishment that

8    is consistent with the language of the protective order, did

9    not change the circumstances under which Mr. Fawcett found

10   himself, and did not somehow change this into a different

11   proceeding, depending on whether or not he wants to say that

12   now the Court has used words that now make me more afraid than

13   I was before of what's going to happen to me.  He knew that he

14   had violated the law.  He knew that there were possible

15   consequences.  And there's no logical reason, based on his

16   conduct or his statements in his affidavit, to conclude that he

17   wasn't fully aware of the rights he was waiving when he decided

18   to voluntarily give testimony in this case to influence the

19   Court's determination as to how to resolve the issues.

20        That being said, he has already given testimony by two

21   sworn declarations.  His testimony by those declarations and

22   the testimony of others by those declarations are already

23   considered to be testimony at this hearing.  And the next step

24   is cross-examination with regard to testimony at this hearing.

25   And based on the facts before Magistrate Judge Netburn, he does

LATGterO

1    not have the opportunity to submit that limited testimony in

2    this proceeding and decide that that's the only extent to which

3    he will make disclosures in this case under oath and that he

4    will not further subject himself to either direct examination

5    or cross-examination by any of the parties in this litigation.

6    Because now that he somehow thinks that this seems a little

7    more serious than he thought it was going to be when he made

8    that initial decision -- if he did make that initial

9    decision -- to make these disclosures in violation of a court

10   order and to disclose voluntarily if he was the one who was

11   responsible.  Whether or not others are responsible for that

12   are still relevant issues within Magistrate Judge Netburn's

13   determination.  And to what extent his testimony is truthful,

14   accurate and reliable is still an issue as it's an issue to all

15   witnesses and what the appropriateness of the sanctions might

16   be, given the nature of the conduct, is still an issue before

17   Magistrate Judge Netburn.  All of those issues need to be

18   resolved in this hearing.

19        Given his conduct in this hearing so far, I find that

20   it was appropriate for Magistrate Judge Netburn to deny him a

21   right to now assert the Fifth after having made these

22   disclosures in this litigation under oath intended to influence

23   the determination of the Court.

24        I find that the arguments with regard to no prejudice

25   are not persuasive.  I think there's not only prejudice to the

LATGterO

1    parties, I think that there could be significant prejudice to

2    the integrity of -- given the fact that this information is now

3    out there and if there's no way to test the voracity of this

4    information, I find that the parties can -- Saudi Arabia or

5    other parties -- can be significantly affected and publications

6    that are out there in response to the disclosures that

7    demonstrate that even this person -- if this person is going to

8    be a witness -- might be called by either side, that that

9    person's credibility has already been tarnished outside of this

10   courtroom.

11          Information with regard to this case is now

12   information that's disclosed publicly.  And much of that

13   information is not necessarily information that has been tested

14   in a court of law.

15          So given all those reasons, I believe Magistrate Judge

16   Netburn made the right decision and that it was appropriate for

17   her to deny an invocation of the Fifth Amendment and to order

18   this witness -- and as I said, need I say -- under penalties of

19   contempt to further give testimony in this hearing or face both

20   the possibility of further criminal or civil sanctions and

21   punishment if he refuses a lawful court order to testify.

22   That's the order of the Court.

23          Anything further, gentleman?

24          MR. GERBER:  No, your Honor.

25          MR. KELLOGG:  No, Judge.  Thank you.

LATGterO

1              THE COURT:  We're adjourned.

2              (Adjourned)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25