# Exhibit 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001

No. 03-MDL-01570 (GBD) (SN)

This document relates to: *All Actions*

### CORRECTED DECLARATION OF ANDREW MALONEY

I, Andrew J. Maloney, III, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury the following:

1. I submit this declaration in support of the motion of Kreindler & Kreindler LLP ("Kreindler" or "Kreindler firm") for a stay of the Order of Magistrate Judge Sarah Netburn, dated September 21, 2022, because of the immediate and irreparable injury, loss, or damage that will result to the 9/11 death and injury plaintiffs by the removal of the Kreindler firm from the Plaintiffs' Executive Committee for Death and Injury Claims ("PEC" or "Committee").[1]

2. Kreindler (along with co-counsel in some cases) represents more than 830 of the estates of those killed on September 11, 2001, as well as over 2,000 of their immediate surviving family members and more than 10,000 victims who suffered personal injury.

3. As addressed below and demonstrated in the prior proceedings before this Court, the Kreindler firm has played the lead role in prosecuting the claims of the death and injury plaintiffs in the litigation against Defendant Kingdom of Saudi Arabia.[2] Kreindler's attorneys have handled nearly every aspect of this complex case, including dispositive motions,

---

[1] For clarity, "PEC" or "Committee" refers only to the Plaintiffs' Executive Committee for Death and Injury Claims, not the Plaintiffs' Executive Committee for Commercial Claims.

[2] Other members of the PEC have worked on prosecuting charities and banks.

1

investigation, discovery motions, depositions, witness interviews and statements, and experts. Kreindler firm attorneys are working on the case against Saudi Arabia on a daily, full-time basis. The investigation remains active and ongoing with several investigators working for Kreindler in the field as of today. The continued leadership role of the Kreindler firm is essential to the proper handling and resolution of the case. The removal of Kreindler attorneys will upset the balance of the Committee and prejudice all the death and injury plaintiffs.

4. I know from my own personal knowledge, and my close work interactions with my colleagues at the Kreindler firm – Jim Kreindler, Steve Pounian, and Megan Benett – that none of us knew that our consultant John Fawcett had leaked the transcript to a reporter until the morning of September 27, 2021, when Mr. Fawcett confessed to Ms. Benett. Mr. Fawcett worked alongside my Kreindler colleagues and me for nearly two decades on this case. Mr. Fawcett betrayed our trust through his intentional and wrongful act, and by actively deceiving us for over two months to hide his involvement. The same day that we first learned what Mr. Fawcett had done, we filed our declarations and immediately informed the Magistrate Judge and the parties of what had happened. We explained that we had, that day, discovered that "our prior statements to the Court were wrong" and stated that we were "very sorry and [we] apologize[d] to the Court and counsel for this error." ECF 7147. We also explained that we were responding in real-time to our learning on September 27, 2021 that Mr. Fawcett was the source of the breach, that we "need[ed] time to further assess the situation," and that we would shortly provide a further update to the Court – which we did on September 30, 2021.

5. Kreindler is preparing and will file Rule 72(a) Objections to the Magistrate Judge's Order regarding these events. Our papers will detail the mistakes of law and fact in the

Magistrate Judge's Order that need to be corrected. It is critical that the PEC structure remain in place while this Court is conducting its review.

6. I have served as a member of the relevant PEC since the June 16, 2004 Order of Judge Richard Conway Casey established the PEC. A true and correct copy of that Order, filed on the docket in this case as ECF 248, is attached hereto as Exhibit 1. In that Order, Judge Casey appointed individual attorneys from various firms (and did not appoint law firms) to positions on the PEC. Ronald Motley of Motley Rice LLC and James Kreindler of the Kreindler firm were appointed as the PEC's Co-Chairs.

7. Over the years, there have been many *de facto* changes to the PEC's composition because of changes in the circumstances of the attorneys named by Judge Casey, including deaths, resignations, and reassignments. Most if not all those changes were made by the PEC members informally without obtaining court orders. Despite the changes in the PEC, however, the essential shared leadership structure of the PEC remained the same, with individual attorneys from the Motley Rice firm and the Kreindler firm sharing co-lead responsibilities.

8. By 2005, I assumed the role of the PEC Co-Liaison Counsel. Robert Haefele of the Motley Rice firm served as the other PEC Co-Liaison Counsel.

9. Litigation against Defendant Kingdom of Saudi Arabia began in earnest after Congress passed the Justice Against Sponsors of Terrorism Act ("JASTA") in September 2016. The death and injury plaintiffs filed their claims in essentially two groups, with the plaintiffs represented by the Kreindler firm in the *Ashton* complaint, and the plaintiffs represented by Motley Rice in the Consolidated Amended Complaint, which was prepared and filed by Motley Rice together with counsel for the commercial plaintiffs, the Cozen & O'Connor firm.

10. Once JASTA was enacted, the Kreindler firm assembled a dedicated team of attorneys to work on the liability case against Saudi Arabia. The attorney team included me, together with Mr. Kreindler, Mr. Pounian, Ms. Benett, and Gavin Simpson.

11. In January 2018, Mr. Pounian handled the briefing and argued the opposition to Saudi Arabia's Motion to Dismiss on behalf of the death and injury plaintiffs. No other attorney argued that motion on behalf of the death and injury plaintiffs.

12. The Kreindler firm hired former Federal Bureau of Investigation (FBI) and Joint Terrorism Task Force agents to investigate the support network established by Saudi government officials for the 9/11 hijackers, locate key witnesses, collect information, and identify evidence held by other parties, including the FBI and Saudi Arabia. Declarations from agents retained by Kreindler were submitted before the Court to obtain further discovery. For example, it was only after we presented a declaration from a former FBI agent who located witness Akram Alzamari that the Department of Justice produced Mr. Alzamari's prior interview reports. There are numerous examples like this where our investigators uncovered witnesses and information that prompted the FBI to produce more documents in a slow rolling process. Prior to starting its production, the Department of Justice counsel for the FBI told the Court that the FBI expected to produce three tranches of documents in total, but to date the FBI has produced 32 tranches, in large part because of Kreindler's work to identify the proof.

13. This investigation was key to obtaining the proper documents from the FBI starting with the first tranches in November and December 2018. The Kreindler investigation located and obtained the testimony of key witnesses, including Mohamed Johar, Mr. Alzamari, and Mohdar Abdullah, and led to the production of key documents. The Kreindler firm's attorneys travelled to Sweden and the United Kingdom and retained investigators and lawyers in

the United Kingdom, Sweden, and Turkey to track down third party witnesses and evidence; obtained Letters of Request from this Court; and worked with foreign governments to assist in their compliance with those Letters of Request, including the production of thousands of pages of relevant materials from the Metropolitan Police Service in England. Kreindler's work for its clients collected key evidence that materially advanced the case against Saudi Arabia.

14. Mr. Pounian led the discovery work and argued the motions involving Saudi Arabia and third parties, including the FBI. Those motions included efforts to compel the production of documents and the testimony of various Saudi government witnesses, which were ordered by the Magistrate Judge. Motley Rice did not play a similar leadership role on the discovery effort against Saudi Arabia or the FBI.

15. Mr. Pounian, Ms. Benett and I handled over 30 depositions in the case against the Kingdom. During the first six months of 2021, Mr. Pounian and Ms. Benett were lead plaintiffs' counsel for all the liability depositions of all the Saudi government personnel. We also were responsible for locating non-party witnesses, obtaining their statements, and handling their depositions in the case.

16. Although the FBI and DOJ asserted the state secrets doctrine to withhold key evidence in the case, Kreindler's investigation and efforts, together with sustained campaigns by the 9/11 Families, led in September 2019 to the limited release by then President Trump of previously classified information from FBI reports, and in September 2021 to the issuance by President Biden of Executive Order 14040 that released thousands of pages of previously classified FBI and Central Intelligence Agency (CIA) documents, many of which had been previously withheld by the government as state secrets. These documents confirmed that a group

of Saudi government officials established a support network used to aid the 9/11 hijackers upon their arrival in California.

17. Kreindler conducted an extensive search, retained, and obtained reports from six highly qualified experts to offer opinions in the case, including a former member of the National Security Council under President Clinton; a former Senior Intelligence Service officer in the Directorate of Intelligence at the CIA and the founding Director and Senior Analyst of the CIA's Political Islam Strategic Analysis Program; a former FBI Unit Chief and terrorism investigator; a former State Department Assistant Chief of Protocol for Diplomatic and Consular Liaison; a Kings College London professor with unique knowledge of al Qaeda terrorist Anwar al Awlaki; and a highly decorated former airline captain.  The Kreindler firm then defended the depositions of those experts.  The Motley Rice firm obtained the report of one expert and defended his deposition.  Kreindler attorneys deposed the three experts retained by Saudi Arabia. ~~The~~ Motley Rice ~~firm did not participate in those examinations~~ attorneys asked some follow-up questions.

18. No other firm, including Motley Rice, was involved in the aforementioned investigatory and expert work (except ~~for the one expert it retained).~~ as described above). Kreindler has been carrying out this work for over five years.  We have developed relationships of trust with our investigators and experts and gained detailed knowledge of their efforts and the facts.  We worked alongside them regularly, meeting both in person and remotely over the course of the past five years.  Kreindler incurred all the expenses for this work.  No other firm, including Motley Rice, was involved in this work or paid any portion of the expenses for this work.

19. Because of the important work of Mr. Pounian and Ms. Benett on the 9/11 litigation, a request was made to officially name them to the PEC in lieu of two other Kreindler

6

members on the Committee, Justin Green and Marc Moller. No party or lawyer opposed this request, and other firms previously substituted counsel on the Committee without filing a motion with the Court.

20. The removal of Kreindler attorneys from the Committee will leave only attorneys from the Motley Rice firm in a leadership role on the PEC. The work that Kreindler has accomplished to date is critical for the continued success of the case. The Motley Rice firm did not participate in that work. There should not be a wholesale change in the PEC and the status quo until this Court has had an opportunity to properly review the Magistrate Judge's Order. Moreover, there is no unfair prejudice to any party for this Court to stay changes to the longstanding make-up of the PEC until the objections to the Magistrate Judge's Order are fully reviewed by this Court.

21. A true and correct copy of the transcripts of the November 1-2, 2021 Hearing are attached hereto as Exhibit 2.

22. A true and correct copy of Magistrate Judge Netburn's October 4, 2021 Order (ECF 7167) regarding the Hearing is attached hereto as Exhibit 3.

23. A true and correct copy of Magistrate Judge Netburn's October 21, 2021 Order (ECF 7277) regarding the Hearing is attached hereto as Exhibit 4.

24. A true and correct copy of the October 29, 2021 transcript of the hearing before this Court denying Fawcett's application to assert the Fifth Amendment at the Hearing is attached hereto as Exhibit 5.

25. A true and correct copy of Magistrate Judge Netburn's November 1, 2021 Order (ECF 7311) regarding the Hearing is attached hereto as Exhibit 6.

26. A true and correct copy of Magistrate Judge Netburn's November 1, 2021 Order (ECF 7310) regarding the Hearing is attached hereto as Exhibit 7.

27. A true and correct copy of Magistrate Judge Netburn's September 21, 2022 Order (ECF 8544) is attached hereto as Exhibit 8.

28. A true and correct copy of a redline comparison against the original Declaration of Andrew Maloney (ECF 8610) is attached hereto as Exhibit 9.

~~28.~~29. No prior application has been made for the relief requested herein.


Dated: New York, New York
October ~~4~~5, 2022

                                                Respectfully submitted,


                                                _____
                                                Andrew J. Maloney, III