UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

|  |  |  |
|---|---|---|
| In re: | : | 03-md-1570 (GBD) (SN) |
|  | : |  |
| TERRORIST ATTACKS ON | : | **Memorandum of Law in** |
| SEPTEMBER 11, 2001 | : | **Opposition to Motion for** |
|  | : | **Attorney's Fees** |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |

------------------------------------------------------------ X

**KREINDLER & KREINDLER'S MEMORANDUM OF LAW IN OPPOSITION TO
SAUDI ARABIA'S MOTION FOR ATTORNEYS' FEES AND COSTS**

KIRSCH & NIEHAUS PLLC
950 Third Avenue, Suite 1900
New York, New York  10022
(646) 415-7530

*Counsel for Kreindler & Kreindler LLP*

Dated:   October 26, 2022
         New York, New York

## TABLE OF CONTENTS

TABLE OF CONTENTS.......................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 3

ARGUMENT ........................................................................................................................... 4

I.   SAUDI ARABIA'S FEE APPLICATION SHOULD BE DENIED OR STAYED FOR THE REASONS SET FORTH IN K&K'S RULE 72(a) OBJECTIONS.................................... 4

II.   SAUDI ARABIA'S REQUESTED FEES AND COSTS MUST BE REDUCED BECAUSE THE NUMBER AND NATURE OF HOURS WORKED IS EXCESSIVE AND UNREASONABLE ........................................................................................................ 6

A.   Eleven attorneys and seven support staff is excessive. ................................................. 7

B.   The scope of work for which Saudi Arabia seeks compensation is overbroad and unreasonable ...................................................................................................................... 10

C.   Saudi Arabia's fees must be reduced because of vague time entries and unreasonable block-billing .......................................................................................................................... 12

III.   SAUDI ARABIA'S FEES MUST BE REDUCED BECAUSE THE RATES CHARGED BY KELLOGG HANSEN ARE UNREASONABLY HIGH ............................. 14

CONCLUSION ...................................................................................................................... 17

## **TABLE OF AUTHORITIES**

**Cases**

*A.I. Trade Fin. v. Centro Internationale Handelsbank AG,*
 1994 WL 167955 (S.D.N.Y. Apr. 29, 1994) ................................................................ 14

*ACE Ltd. v. CIGNA Corp.,*
 2001 WL 1286247 (S.D.N.Y. Oct. 22, 2021) ............................................................... 7

*Anderson v. Cty. of Suffolk,*
 2016 WL 1444594 (E.D.N.Y. Apr. 11, 2016) ............................................................. 13

*Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria*
 *Creditanstalt AG,* 2005 WL 3099592 (S.D.N.Y. Nov. 17, 2005) ................................. 13

*Auscape Int'l v. Nat'l Geographic Soc.,*
 2003 WL 21976400 (S.D.N.Y. Aug. 19, 2003) ............................................................ 8

*Bentley Labs. LLC v. TPR Holdings LLC,*
 2017 WL 4326536 (S.D.N.Y. Sept. 28, 2017) ............................................................. 6

*Blum v. Stenson,*
 465 U.S. 886 (1984) .................................................................................................... 6

*Bowne of New York City, Inc. v. AmBase Corp.,*
 161 F.R.D. 258 (S.D.N.Y. 1995) ................................................................................. 6

*Caban v. Employee Sec. Fund of the Elec. Prods. Indus. Pension Plan,*
 2015 WL 7454601 (E.D.N.Y. Nov. 23, 2015) ............................................................. 13

*Charles v. City of New York,*
 2014 WL 4384155 (S.D.N.Y. Sept. 4, 2014) ............................................................... 13

*Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.,*
 2021 WL 1549916 (S.D.N.Y. Apr. 20, 2021) ........................................................... 7, 9

*Creative Res. Grp. of New Jersey, Inc. v. Creative Res. Grp., Inc.,*
 212 F.R.D. 94 (E.D.N.Y. 2002) ................................................................................. 11

*General Elec. Co. v. Compagnie Euralair, S.A.,*
 1997 WL 397627 (S.D.N.Y. July 3, 1997) .................................................................. 6

*Harrell v. City of New York,*
 2017 WL 9538163 (S.D.N.Y. July 20, 2017) .............................................................. 13

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)............................................................................................ 6, 7, 12

*Hindman LLC v. Mihaly*,
    2022 WL 19752 (S.D.N.Y. Jan. 3, 2022) ........................................................ 14

*Houston v. Cotter*,
    234 F.Supp.3d 392 (E.D.N.Y. 2017) .............................................................. 7

*Kirsch v. Fleet St., Ltd.*,
    148 F.3d 149 (2d Cir. 1998)............................................................................ 13

*Kizer v. Abercrombie & Fitch Co.*,
    2017 WL 9512408 (E.D.N.Y. July 24, 2017)................................................ 12

*Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC*,
    2009 WL 466136 (S.D.N.Y. 2009)................................................................ 9, 14

*Miroglio S.p.A. v. Conway Stores*, Inc.,
    629 F.Supp.2d 307 (S.D.N.Y. 2009)............................................................ 13

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
    711 F.2d 1136 (2d Cir. 1983).......................................................................... 12, 13

*Powell v. Metro One Loss Prevention Servs. Grp. (Guard Division NY), Inc.*,
    2015 WL 9287121 (S.D.N.Y. 2015)............................................................ 8

*Ritchie v. Gano*,
    756 F.Supp.2d 581 (S.D.N.Y. 2010)............................................................ 12

*Robinson v. City of New York*,
    2009 WL 3109846 (S.D.N.Y. Sept. 29, 2009)............................................ 6

*Rodriguez ex rel. Kelly v. McLoughlin*,
    84 F.Supp.2d 417 (S.D.N.Y. 1999).............................................................. 6

*S.E.C. v. Yorkville Advisors, LLC*,
    2015 WL 855796 (S.D.N.Y. Feb. 27, 2015)................................................ 14

*Simmonds v. New York City Dep't of Corr.*,
    2008 WL 4303474 (S.D.N.Y. Sept. 16, 2008)............................................ 7

*Thai-Lao Lignite (Thailand) Co., Ltd. v. Government of Lao People's Democratic Republic*,
    2012 WL 5816878 (S.D.N.Y. Nov. 14, 2012)............................................ 10, 11

*Thai Lao Lignite (Thailand) Co., Ltd. v. Government of Lao People's Democratic Republic*,
　　2011 WL 4111504 (S.D.N.Y. Sept. 13, 2011)................................................................. 5

*Themis Cap. v. Democratic Rep. of Congo*,
　　2014 WL 4379100 (S.D.N.Y. Sept. 4, 2014)................................................................... 8

*U.S. v. Acquest Transit, LLC*,
　　2016 WL 3536573 (S.D.N.Y. June 29, 2016) ................................................................ 7

*Vista Outdoor Inc. v. Reeves Family Tr.*,
　　2018 WL 3104631 (S.D.N.Y. May 24, 2018) .............................................................. 14

**Rules**

Fed. R. Civ. P. 37.......................................................................................................... 4, 9

Kreindler & Kreindler LLP ("K&K"), by and through its undersigned counsel, respectfully submits this memorandum of law in opposition to the motion filed by Saudi Arabia seeking attorneys' fees pursuant to Magistrate Judge Netburn's Decision and Order dated September 21, 2022 (the "Order").

## PRELIMINARY STATEMENT

In response to John Fawcett's breach of the two protective orders in this case (the "Protective Orders"), this Court issued sweeping sanctions pursuant to Federal Rule of Civil Procedure 37. ECF 8544. Saudi Arabia requests that this Court award, and that K&K alone pay, nearly $1.5 million in Saudi Arabia's attorneys' fees and expenses for work on a tangential, albeit serious, discovery matter. For all the reasons set forth in K&K's Rule 72(a) Objections (the "K&K Objections"), the request for attorneys' fees should be denied in its entirety. In the alternative, this Court should stay the instant motion until the K&K Objections are resolved because any modification or setting aside of the Order will impact the resolution of the motion and a reasonable fee award. To the extent that the Court awards attorneys' fees to Saudi Arabia, the amount should be substantially less than the unreasonable amount requested by Saudi Arabia for several reasons.

First, Saudi Arabia's counsel staffed six partners, three associates, two staff attorneys, five paralegals, one research director, and one research analyst, to perform duplicative work over the course of the discovery production, hearings, and briefings. Courts in this Circuit have found far fewer attorneys to constitute unreasonable overstaffing in matters far more complex than a confessed breach of a discovery order.

Second, Saudi Arabia seeks to hold K&K accountable for numerous time entries for work on motions resulting from the litigation decisions made by other parties that are not attributable to K&K. Among other things, Saudi Arabia requests that K&K pay for fees incurred (1) in seeking document discovery and testimony from John Fawcett that Fawcett (unlike K&K) opposed by,

*inter alia,* asserting the Fifth Amendment privilege and (2) in opposing the motion to intervene filed by Oath Inc. to protect its sources.

Third, K&K should not be obligated to pay any fees incurred following Fawcett's confession to K&K, this Court, and the parties, on September 27, 2021 (*see* KSAX-0056J) that he was the source of the leak. After receiving Fawcett's confession, and the additional declarations and materials provided by K&K, Saudi Arabia uncovered minimal, additional material information which it did not already have in its possession through Fawcett's declaration, and the declarations of the K&K partners filed the same day and in the following days thereafter. KSAX-0056A, B, F, J, KSAX-0059, KSAX-0062A, B.

Fourth, block billing entries, such as those submitted here, are typically reduced because of the difficulty in evaluating the amount of time spent on each task, and whether the tasks and the time taken to complete them are reasonable. Further, block billing tends to mask the extent to which multiple attorneys are working on the same tasks at the same times.

Finally, the rates charged by the Kellogg Hansen firm are unreasonably high, even for the most accomplished attorneys in this district able to litigate the confessed breach of a protective order.

As set forth below, K&K requests that the fee award, if any, be drastically reduced due to overstaffing, duplicative and inefficient entries, and work performed outside the scope of the breach at issue and inflated rates.

**STATEMENT OF FACTS**[1]

On July 15, 2021, it became evident that a transcript of the deposition of Musaed al Jarrah (the "Jarrah Transcript"), had been leaked to a reporter, Michael Isikoff of Yahoo! News (the "Leak"). Investigations ensued and on September 27, 2021 John Fawcett, a long-time consultant to K&K confessed to being the source of the Leak. That same day, K&K informed the Court of Fawcett's violation and filed eleven declarations with the Court, including from Fawcett, describing what they had just learned from Fawcett's confession. Over the next three days, K&K made additional submissions to the Court to keep it apprised of additional details as they were uncovered.

Saudi Arabia nonetheless asked the Court to continue the investigation to determine the scope of the breach and whether anyone had previously made false statements to the Court. ECF 7147. Discovery was ordered and an evidentiary hearing was held.

Just one week short of a full year after the Fawcett confession, the Court issued the Order imposing sweeping sanctions against K&K for what it found to be the firm's willing complicity in the Leak. Those sanctions included (i) removal of K&K from its leadership role on the Plaintiff's Executive Committee ("PEC") effective immediately; (ii) prohibition from seeking any common fund fees for work performed after July 5, 2021; and (iii) payment of a "reasonable fee" to the Saudi Arabia pursuant to Fed. R. Civ. P. 37(b)(2)(C). Order at 57, 59, 63-64. This Court also issued separate and independent sanctions against John Fawcett pursuant to Fed. R. Civ. P. 37(b)(2), barring him from any further participation in this multi-district litigation or in any of its member cases in any capacity. Order at 63. The Court specifically found that a separate and individual

---

[1] For a more fulsome recitation of the relevant facts, the Court is respectfully referred to the K&K Objections. *See* ECF 8681. Documents from the record of the November 1-2, 2021 hearing cited herein can be accessed at ECF 8682, Appendix of Exhibits.

sanction against Fawcett was necessary because he "confessed to deliberately violating the Protective Orders" and it was necessary to ensure that no party in this matter is able to benefit by "employing an agent with a demonstrated willingness to deliberately violate court orders for litigation advantage." *Id*.

K&K filed objections to the Order pursuant to Fed. R. Civ. P. 72(a) on October 25, 2022. Oral argument is set for December 8, 2022 before Judge Daniels. Among other things, K&K believes that the Order was issued contrary to law and should be set aside. ECF 8681.

With respect to Saudi Arabia's instant motion for attorneys' fees, the Order directs that "Kreindler & Kreindler and Saudi Arabia are ordered to meet and confer and reach agreement on a reasonable fee award. If the parties cannot reach agreement, any motion for attorneys' fees shall be filed within two weeks of the filing of this Order." Order at 64. The Order does not provide further guidance as to the proper scope of the subject of the "reasonable fee award," nor what tasks and attorney time and expenses should be included. Indeed, Saudi Arabia itself in its submissions suggests that the scope is unclear, and makes judgment calls of its own as to what may or may not be covered. ECF 8623 (Motion) at 3.

## **ARGUMENT**

### I. **SAUDI ARABIA'S FEE APPLICATION SHOULD BE DENIED OR STAYED FOR THE REASONS SET FORTH IN K&K'S RULE 72(a) OBJECTIONS.**

On October 25, 2022, K&K filed the K&K Objections to the Order pursuant to Federal Rule of Civil Procedure 72(a). ECF 8681. Among other things, K&K seeks reversal of the Order as clearly erroneous (K&K had no knowledge that Fawcett was responsible for the Leak prior to September 27, 2021, when it immediately reported the Leak to the Court) and contrary to law (the Court exceeded its authority by imposing sanctions in this case against a law firm pursuant to Rule 37(b)). For the reasons set forth in the K&K Objections, no sanction against the law firm of any

- 4 -

kind, including attorneys' fees, is appropriate under Rule 37 and accordingly, Saudi Arabia's motion for fees should be denied.

To the extent that the Magistrate Judge does not deny Saudi Arabia's motion at this time, the motion should be stayed pending a resolution of the K&K Objections. Any modification of or setting aside of the Order by Judge Daniels will bear on whether attorneys' fees are a necessary or appropriate sanction, and if so, what a reasonable fee award should be. Courts routinely stay Magistrate Judge orders upon the filing of Rule 72(a) objections, likely to avoid the potentially unnecessary expenditure of time and resources before an issue is finally resolved. *See Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*, 2011 WL 4111504, at *2 (S.D.N.Y. Sept. 13, 2011) (noting that Magistrate Freeman "*sua sponte* stayed the April 4 Order pending this Court's resolution of the instant objection") (emphasis in original); *Cauley v. Ingram Micro, Inc.*, 220 F.R.D. 26, 28 (W.D.N.Y. 2004) ("District Court stayed all deadlines set in the January 24, 2003 Decision and Order pending resolution of Plaintiff's objections"); *Michalowski v. CSX Transp.*, 2004 WL 1529237, at *1, n.1 (W.D.N.Y. June 28, 2004) (noting that the District Court granted the defendant's motion to stay "the portions of the Order that are the subject of the Objections"); *Notaro v. Giambra*, 2004 WL 1563106, at *1, n.1 (W.D.N.Y. June 3, 2004) (noting that the Court previously "granted Defendant Giambra's Motion to Stay [Magistrate] Judge Foschio's decision pending resolution of the instant appeal"). Here, Saudi Arabia submitted seventeen pages of hundreds of block billing time entries of seventeen professionals in amounts totaling nearly $1.4 million in fees accompanied by an additional spreadsheet detailing $36,504.42 in costs. It is an enormous undertaking to review these hundreds of entries and do the necessary reasonableness analysis, particularly in light of the numerous infirmities in the submission as discussed below. It would be a waste of judicial resources for the Court to go through the exercise

of analyzing the entries now because the K&K Objections will be fully briefed and argued by December 8, 2022. The resolution of those objections could result in the Court having to redo its analysis. Accordingly, the Court should defer ruling on Saudi Arabia's motion for attorneys' fees until after Judge Daniels has ruled on the K&K Objections.

## II.   SAUDI ARABIA'S REQUESTED FEES AND COSTS MUST BE REDUCED BECAUSE THE NUMBER AND NATURE OF HOURS WORKED IS EXCESSIVE AND UNREASONABLE

To the extent the Court is inclined to rule on this motion prior to the resolution of K&K's Objections, the Court must significantly reduce the amount of fees sought. The starting point of the attorneys' fee calculation is the "lodestar method," under which fees are determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party seeking fees bears the burden of demonstrating that its requested fees are reasonable. *See Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Robinson v. City of New York*, 2009 WL 3109846, at *3 (S.D.N.Y. Sept. 29, 2009). "If a court finds that the fee applicant's claim is excessive or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours." *Bentley Labs. LLC v. TPR Holdings LLC*, 2017 WL 4326536, at *2 (S.D.N.Y. Sept. 28, 2017). "Upon finding that counsel seeks compensation for excessive hours, 'the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" *Rodriguez ex rel. Kelly v. McLoughlin*, 84 F.Supp.2d 417, 425 (S.D.N.Y. 1999) (citations omitted); *see also General Elec. Co. v. Compagnie Euralair, S.A.*, 1997 WL 397627, at *5 (S.D.N.Y. July 3, 1997) (reducing attorney fee application by 50% based on overstaffing, duplicative, and excessive time entries) (citation omitted); *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 266-67 (S.D.N.Y. 1995) (award of attorneys' fees pursuant to Fed. R. Civ.

P. 37 may be reduced depending on subjective factors "such as the level of complexity of the issues involved, the skill of the attorneys involved, overstaffing and inflated hours.").

### A.   Eleven attorneys and seven support staff is excessive.

In deciding whether hours expended were reasonable, a court should exclude those documented hours which are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. In connection with this breach, Saudi Arabia mobilized a team of six (6) partners, three (3) associates, two (2) additional staff attorneys, as well as a "research director", "research analyst" and five (5) paralegals. This team of *eleven* attorneys and *seven* support staff deployed to develop the facts involving this protective order breach is excessive – not because the issue was not serious and important, but because the leaker had already confessed, and had provided the details of how and why he did what he did. The legal issues were not complex, the facts had already been set forth in sworn declarations, and the entire episode unfolded over only a few months. The vast majority of the fees sought by Saudi Arabia were incurred *after* Fawcett's detailed written confession to leaking the deposition transcript, thereby greatly narrowing the discovery that was performed. *See Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 2021 WL 1549916, at *7 (S.D.N.Y. Apr. 20, 2021) ("[I]t should not have required four attorneys, including two partner-level attorneys billing at over $1000 per hour, to achieve that degree of success.").

There was no need for such a large team, and the size of the team undoubtedly led to duplication, redundancy, and inefficiencies. *See U.S. v. Acquest Transit, LLC*, 2016 WL 3536573, at *2 (S.D.N.Y. June 29, 2016) (reducing attorneys' fees award by 50% where plaintiff "significantly overstaffed Plaintiff's prosecution of the enforcement proceedings"); *ACE Ltd. v. CIGNA Corp.*, 2001 WL 1286247, at *6-7 (S.D.N.Y. Oct. 22, 2021) (overstaffing and duplication of effort caused by six partners, three associates, and fourteen paraprofessionals warranted a 50% across-the-board reduction in fees); *see also Houston v. Cotter*, 234 F.Supp.3d 392, 410 (E.D.N.Y.

- 7 -

2017) (reducing a fee award by 50% as a result of over-staffing ten different attorneys on a matter, duplicating efforts, and block-billing); *Simmonds v. New York City Dep't of Corr.*, 2008 WL 4303474, at *7-8 (S.D.N.Y. Sept. 16, 2008) (reducing hours by 40% as a result of inefficiencies resulting from overstaffing in a co-counsel arrangement). Fees will be reduced as a result of "the sheer number of attorney timekeepers who billed time on the case." *Themis Cap. v. Democratic Rep. of Congo*, 2014 WL 4379100, at *5 (S.D.N.Y. Sept. 4, 2014); *Auscape Int'l v. Nat'l Geographic Soc.*, 2003 WL 21976400, at *4-5 (S.D.N.Y. Aug. 19, 2003) (reducing fees "to compensate for inefficiencies due to over-staffing and excessive time expenditures" caused by six partners and associates plus the managing attorney).

Redundancies here are not merely theoretical or presumed. Saudi Arabia's submitted time entries show clear and unreasonable duplication of efforts across its various attorneys and paraprofessionals. By way of example only, from July 15 – July 23, 2021, four (4) attorneys (3 partners and 1 associate) billed over 70 lawyer hours to "researching" and then "reviewing and editing" a six-page motion to enforce the protective order (exclusive of the tens of paralegal hours spent preparing the filing).[2] Similarly, over the two-day period from September 28-29, 2021, four attorneys billed over 20 hours preparing another six-page letter to the Court regarding K&K's submission. ECF 7157. Equally excessive was the staffing of the Hearing itself. Seven attorneys

---

[2] Because these hours were incurred ***before ever reaching out to the PECs***, including K&K, to meet and confer regarding an approach to investigating the leak, they should be excluded from the fee application altogether. *See, e.g., Powell v. Metro One Loss Prevention Servs. Grp. (Guard Division NY), Inc.*, 2015 WL 9287121, at *5 (S.D.N.Y. 2015) (excluding from fee award time spent researching and drafting a sanctions motion before contacting adversary and making attempt to resolve the matter). Though time entries reflecting research, writing and editing of the motion begin as early as July 15, the record in this case demonstrated that Saudi Arabia's attorneys did not reach out to the PECs until the evening of July 21, 2021 informing them of their intent to file a motion to enforce the MDL Protective Order. KSAX-0042 at pp. 3-4.   The PECs, including K&K, responded on July 22, 2021 with their agreement that the Leak should be – and was being - investigated. *Id*. at pp. 2-3.  The PECs added that a motion was likely unnecessary and offered to meet and confer to discuss an exchange of information that would not invade work product. *Id*. at 2. Saudi Arabia declined to meet and confer and filed a motion to enforce the protective order the next day on July 23, 2021. ECF 6981. Courts will exclude expenses incurred unilaterally in this manner before any good faith attempt to resolve the issue is made.

and one paralegal attended and "participat[ed]" in the first day of the Hearing, totaling more than 71 hours and $60,000, and six attorneys and one paralegal attended and "participated" in the second day of the Hearing totaling 69 hours and more than $54,000. Only two attorneys examined witnesses at the Hearing. The travel and meals costs for additional attorneys and paralegals is also not properly assessed on K&K.

Saudi Arabia's counsel's hours are not only inflated with redundancies, but the fees are doubly inflated because they used multiple over-qualified attorneys to perform most of the tasks.[3] In all aspects, the Kellogg Hansen partners working on each task exceeded the number of more junior attorneys supporting them, usually at a ratio of 3:1 (3 partners to 1 associate) and accounting for around 70% of the legal work billed. And of those partners, in almost all cases, both named partners of the Kellogg Hansen firm were deeply involved in letter writing and drafting examination outlines, billing at $1,265/hour. Courts exclude or reduce time that is not only generally redundant and duplicative, but also where the work is performed by overqualified personnel. *Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC*, 2009 WL 466136, at *4 (S.D.N.Y. 2009) (time records considered unreasonable where the partners' time consisted of 40% of the time spent); *Charlestown Cap. Advisors,* 2021 WL 1549916, at *7 (reducing hours because splitting tasks between "two high-billing senior attorneys … necessarily introduces an element of inefficiency into the process").

---

[3] Saudi Arabia attempts to justify Kellogg Hansen's rates by touting their considerable credentials and experience. Saudi Arabia Motion (ECF 8623) at 7-8. It does not however, explain why three former supreme court clerks and several more former Courts of Appeals clerks are needed to spend over 70 hours on a serious but simple motion to enforce a protective order.

### B.   **The scope of work for which Saudi Arabia seeks compensation is overbroad and unreasonable**

   1.   Certain work related solely to Fawcett is not properly charged to K&K

In the Order, the Court found that John Fawcett breached the Protective Orders **and** that K&K breached the Protective Orders. Though the Order (incorrectly) posits that K&K was aware of and complicit in Fawcett's actual breach, the conduct found sanctionable by each is distinct and the Order expressly places separate and distinct sanctions on each. *Compare* Order at 45-59 (K&K) *with* Order at 59-63 (Fawcett).

Thus, legal fees and costs associated with obtaining discovery from Fawcett alone which Fawcett independently opposed should be assessed against him alone. K&K never had any control, possession or access to Fawcett's laptop or the ability to compel Fawcett to produce his electronic devices. *See, e.g.,* ECF 7168. To the extent Fawcett and his attorneys opposed discovery of his personal phone and computer information, the resulting costs should be assessed against him and not K&K - particularly because the information at issue was not under K&K's control and K&K cooperated fully to produce the relevant information that it did control. *See* ECF 7251 (joint discovery letter submitted by Saudi Arabia and K&K); ECF 7271 (Joint Letter submitted by Saudi Arabia and Fawcett regarding update on Forensic Image of Fawcett's laptop). Work relating to negotiating or obtaining discovery from Fawcett once he had separated from K&K and had independent counsel to oppose discovery - comprised of more than 156 hours totaling more than $128,000 - cannot be fairly assessed against K&K.

In particular, Fawcett's attempt to assert his Fifth Amendment rights was not only separate and distinct from K&K, but squarely adverse to K&K's interests. *See* October 29, 2021 Transcript of Hearing on Fawcett's Fifth Amendment Assertion, at 23-24. Fawcett had counsel of his own making independent choices about how or whether to participate in the Court's investigation. K&K

cannot reasonably be held responsible for the choices of Fawcett and his counsel to complicate the litigation of his breach. Nor can work done by Saudi Arabia's counsel to litigate the assertion of Fawcett's Fifth Amendment rights – comprised of more than 200 hours totaling more than $186,497 – be reasonably charged to K&K. *See, e.g., Thai-Lao Lignite (Thailand) Co., Ltd. v. Government of Lao People's Democratic Republic*, 2012 WL 5816878, at *8 (S.D.N.Y. Nov. 14, 2012) (excluding time spent on tasks that were beyond the scope of the sanctions order).

        2.   <u>Work related to the Oath motion to intervene is not properly charged to K&K</u>

When this Court was investigating the Leak, Oath, Inc., the parent of Yahoo! News, ("Oath") expressed its concern that the Court's investigation, at Saudi Arabia's request, could overstep the bounds of proper inquiry into the parties and counsel over which it had jurisdiction. Oath filed a motion seeking to intervene to protect its sources. ECF 7094-7095. This was entirely the action of the third party, an established news source that had a legitimate concern. Costs associated with Saudi Arabia's opposition of a third party's motion are not attributable to any acts of K&K. K&K should not be assessed for these 36 senior partner hours totaling more than $34,000. *See, e.g., Creative Res. Grp. of New Jersey, Inc. v. Creative Res. Grp., Inc.,* 212 F.R.D. 94, 104 (E.D.N.Y. 2002) (refusing to award attorneys' fees for activities not attributable to the party).

        3.   <u>Saudi Arabia is not entitled to fees and costs incurred after September 27 because no new material facts were uncovered thereafter</u>

On September 27, 2021, as the record amply demonstrates, John Fawcett confessed to the Leak, and K&K supplied declarations from him and from attorneys of the firm, together with an explanatory and apologetic letter, detailing what happened. KSAX-0056A, B, F, J. K&K followed up again the next day with additional information that it developed in the ensuing 24 hours (KSAX-0058), and followed up again on September 30, 2021 with an additional declaration from Fawcett

further describing how he had leaked the information and hid his wrongful conduct from K&K. KSAX-0059.

On October 4, 2021, following a request for additional discovery and investigation by Saudi Arabia, the Court called for an evidentiary hearing to further investigate the matter. However, as the Order makes clear, the Hearing produced little, if any, new information relied on by the Court in its Order. To the contrary, all the documentary evidence and testimony only further corroborated the September 27-30, 2021 submissions of Fawcett and K&K. In fact, of the fees and expenses Saudi Arabia currently seeks, *$1.3 million, representing over 85% of its fee application*, were incurred *after* Fawcett confessed to being the source of the Leak on September 27. Yet this million-dollar-plus effort produced virtually no evidence relied on by the Court it its Order. K&K should not be made to pay fees and expenses incurred by Saudi Arabia in a fishing expedition that came up empty.

**C.   Saudi Arabia's fees must be reduced because of vague time entries and unreasonable block-billing**

A fee application must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Courts require specificity in billing entries in order to award fees, and to determine a reasonable award. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

"[W]here counsel relies on vague / excessive entries or block billing practices which make it difficult for a court to assess reasonableness, an across-the-board fee reduction is warranted." *Kizer v. Abercrombie & Fitch Co.*, 2017 WL 9512408, at *4 (E.D.N.Y. July 24, 2017), report and recommendation adopted, 2017 WL 3411952 (E.D.N.Y. Aug. 9, 2017); *see also Ritchie v. Gano*,

756 F.Supp.2d 581, 583 (S.D.N.Y. 2010) (reducing attorneys' fee award by 40% and holding that "[i]n the instance where a court has directed parties to parse out records to clearly state how much time the attorneys spent on each claim, and the parties have done so insufficiently and have referred to an unrealistic volume of hours as 'inextricably intertwined' with many claims, the court may also decrease the requested award amount"); *Anderson v. Cty. of Suffolk*, 2016 WL 1444594, at *6 (E.D.N.Y. Apr. 11, 2016) (recognizing that where "counsel relies on vague entries and block billing, courts are unable to review hours for reasonableness" and noting that "[c]ourts have imposed reductions as high as 40% based solely on vague billing entries"); *Caban v. Employee Sec. Fund of the Elec. Prods. Indus. Pension Plan*, 2015 WL 7454601, at *8 (E.D.N.Y. Nov. 23, 2015) (33% reduction in overall hours spent due to block billing, vague entries, and excessive time spent on certain routine tasks).

It is entirely unclear how many hours were spent on each of the individual tasks, and whether or not any of the work performed was reasonable. The fee application must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc.*, 711 F.2d at 1148. A court may decrease the requested award because of "vagueness, inconsistencies, and other deficiencies in the billing records." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *Miroglio S.p.A. v. Conway Stores*, Inc., 629 F.Supp.2d 307, 313 (S.D.N.Y. 2009) (specificity required because it allows courts "to determine whether a reasonable amount of time was spent on each activity, and to determine whether a particular activity is compensable."). Accordingly, an across-the-board reduction is appropriate. *Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG*, 2005 WL 3099592, at *7 (S.D.N.Y. Nov. 17, 2005) (reducing lodestar by 25% to account for these instances of block billing, vagueness, and

excess"); *Harrell v. City of New York*, 2017 WL 9538163, at *14-15 (S.D.N.Y. July 20, 2017) (applying a 30% reduction to take into account, among other things, block billing); *Charles v. City of New York*, 2014 WL 4384155, at *5 (S.D.N.Y. Sept. 4, 2014) (reducing a partner's fee award for block-billed entries).

III.   **SAUDI ARABIA'S FEES MUST BE REDUCED BECAUSE THE RATES CHARGED BY KELLOGG HANSEN ARE UNREASONABLY HIGH**

The hourly rates for which Saudi Arabia seeks reimbursement are not reasonable or appropriate. "As a rule of fairness, when counsel fees are to be charged to the opposing party, services should be charged at the rate of the available person who can most cheaply qualify to complete the task." *A.I. Trade Fin. v. Centro Internationale Handelsbank AG*, 1994 WL 167955, at *2 (S.D.N.Y. Apr. 29, 1994). "What a reasonable but parsimonious client would be willing to pay for effective advocacy is not self-evident in any case; after all, the inquiry requires an excursion into the subjective state of a hypothetical person or organization." *Lucky Brand Dungarees, Inc.*, 2009 WL 466136, at *4.

Simply stated, partner rates ranging between $890 and $1,265, associate rates ranging between $575 and $805, and staff attorney rates of $460, and paralegal rates ranging between $315 and $430 are unreasonable in the context of a discovery motion, even within this judicial district. Kellogg Hansen's rates are out of whack with the prevailing rates in the district for a discovery motion - even adjusted for inflation - noted by Magistrate Judge Pitman: "[t]he prevailing market rates for attorneys and paralegals in the Southern District of New York for fees incurred on discovery motions range from $450 to $600 for partners, $220 to $400 for associates and $100 to $200 for paralegals." *S.E.C. v. Yorkville Advisors, LLC*, 2015 WL 855796, at *19 (S.D.N.Y. Feb. 27, 2015); *see also Hindman LLC v. Mihaly*, 2022 WL 19752, at *3 (S.D.N.Y. Jan. 3, 2022) (reducing hourly rates by 30% for a discovery motion based on prevailing rates in this District).

The cases cited by Saudi Arabia in its motion are not to the contrary. Motion at pp.6-7. Rather, those cases discuss attorneys' fees in the context of sophisticated litigation. *See, e.g., Vista Outdoor Inc. v. Reeves Family Tr.*, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (awarding attorneys' fees to plaintiff's counsel as a prevailing party, finding that the fees sought were proportionate to the amount at stake in a complex litigation). The cases submitted by Kellogg Hansen in which their fee applications have been approved are in inapposite contexts as well, including complex appeals, class actions, and bankruptcy cases. *See* ECF 8624-6-9 (Motion Exhs. F-I). For example, in *In re Steel Antitrust Litigation*, Kellogg Hansen helped to recover almost $200 million for the benefit of the settlement class. ECF 8624-9 (Motion Exh. I) at *2. While it may be the case that the firm's fees are justified for work that requires their skill and expertise, it remains unexplained why it was necessary or appropriate to devote the full resources of the firm, including hundreds of hours by the name partners and the highest billing partners, to a discovery matter where no harm was identified to the client. Clearly, the underlying multi-district litigation in which Kellogg Hansen represents Saudi Arabia is exceedingly complex. Addressing the breach of a protective order where the leaker has confessed and provided a roadmap as to how and why he did what he did, is not.

As the Court acknowledged in the Order, if plaintiffs prevail against Saudi Arabia in this matter, the resulting award will likely be worth billions of dollars. Order at p. 48. As such, Saudi Arabia may be willing to pay above-market rates for its defense. But reasonable rates for this matter must be set at what a client in this district would ordinarily pay for litigating a discovery dispute – not whatever rates Saudi Arabia chooses to pay in its efforts to avoid a multi-billion-dollar judgment against it.

*     *     *

For Saudi Arabia to have spent close to $1.5 million pursuing this matter makes sense in only one scenario: it saw the Leak as an opportunity to remove or cripple its prime adversary in this litigation. The central mystery – who leaked the Transcript – was solved by September 27, 2021, and was solved not by Saudi Arabia or Kellogg, Hansen, but by K&K's own efforts. There was never any need to spend funds mitigating any harm done by the Leak to Saudi Arabia's case, because no harm has ever been identified. Yet after the mystery was solved, and after it was evident no litigation harm had been done, Saudi Arabia spent a further *$1.3 million* in an attempt to: (i) find any evidence whatsoever that any K&K attorneys were involved in the Leak by Fawcett; and (ii) fish for K&K work product so as to better prepare Saudi Arabia's defense in this case. But the Court's Order relies on almost no evidence from Saudi Arabia's post-September 27 efforts. This lack of post-September 27 evidence persists despite the irrational number of resources Saudi Arabia threw at the investigation. Saudi Arabia's efforts to obtain K&K's work product is exemplified by its request for a list of all persons having access to not only the Jarrah Transcript, but to the transcripts of the depositions of Thumairy and Bayoumi, which had not been leaked. In other words, Saudi Arabia sought to identify all of K&K's key consultants and undisclosed experts in the case who were authorized to review protected material, and to understand which expert or consultant (each with expertise in a particular area) had been shown which of the various transcripts. Saudi Arabia was successful in identifying Brian Weidner. Saudi Arabia should not be reimbursed for excessive attorneys' fees spent almost entirely to obtain a litigation advantage over its primary adversary.

## <u>CONCLUSION</u>

Accordingly, K&K respectfully requests that this Court (1) deny Saudi Arabia's fee application in its entirety; (2) in the alternative, stay Saudi Arabia's application pending the resolution of the K&K Objections; (3) in the alternative, substantially reduce Saudi Arabia's attorneys' fees because of unreasonable overstaffing, block-billing, redundancies, and rates; and (4) grant K&K such other and further relief as the Court deems just and proper.

KIRSCH & NIEHAUS, PLLC

*/s/ Emily B. Kirsch*
Emily B. Kirsch
Paul R. Niehaus
Craig S. Tarasoff
950 Third Avenue, Suite 1900
New York, New York 10022
(646) 415-7530

*Counsel for Kreindler & Kreindler LLP*