UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN)<br>ECF Case |
|---|---|

This document also relates to member case:

*Marie Laure Anaya, et al. v. Islamic Republic of Iran,* 1:18-cv-12341 (GBD) (SN)

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
PARTIAL FINAL JUDGMENT FOR SOLATIUM DAMAGES FOR
NON-IMMEDIATE FAMILY MEMBERS OF THE LATE MICHAEL W. LOWE

(*ANAYA/IRAN IV*)

FLEISCHMAN BONNER & ROCCO LLP
James P. Bonner (jbonner@fbrllp.com)
Patrick L. Rocco (procco@fbrllp.com)
Susan M. Davies (sdavies@fbrllp.com)
81 Main Street, Suite 515
White Plains, New York 10601
Telephone:  646-415-1399

Patrick M. Donahue (admitted *pro hac vice*)
P. Joseph Donahue (admitted *pro hac vice*)
THE DONAHUE LAW FIRM, LLC
18 West Street
Annapolis, MD 21401
Telephone: (410) 280-2023
pmd@thedonahuelawfirm.com
pjd@thedonahuelawfirm.com

Joseph Peter Drennan (admitted *pro hac vice*)
218 North Lee Street, Third Floor
Alexandria, Virginia 22314-2631
Telephone: (703) 519-3773
Telecopier: (703) 548-4399
Mobile: (540) 226-0777
joseph@josephpeterdrennan.com

P. York McLane (admitted *pro hac vice*)
LAW OFFICE OF P. YORK MCLANE
14015 Park Dr., Ste. 111
Tomball, Texas 77377
yorkmclane@yahoo.com

*Anaya/Iran* Plaintiffs Donovan Lanham, Gary Lanham, and Jasmine Jackman ("Movants"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in support of their motion for entry of partial final judgments for solatium damages against the Islamic Republic of Iran ("Iran"). Movants are stepchildren of the late Michael W. Lowe who was killed in the terrorist attacks committed in the United States by members of the al Qaeda terrorist network on September 11, 2001 (the "September 11th Attacks").

## PRELIMINARY STATEMENT AND PROCEDURAL HISTORY

In 2018, the *Anaya/Iran* Plaintiffs, who are the personal representatives and family members of U.S. citizens killed in the September 11th Attacks, sued Iran for its role in sponsoring those acts of terrorism. *See* 18-cv-12341 ECF No. 1. On October 5, 2021, the Court granted a judgment of default in favor of the *Anaya/Iran* Plaintiffs (the "October 5, 2021 Judgment"). *See* 18-cv-12341 ECF No. 70; MDL ECF No. 7178. The October 5, 2021 Judgment established Iran's liability under Section 1605A(c) of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A(c), for the September 11th Attacks and for causing the death of Movant's stepfather Michael W. Lowe in those attacks. *See id.*; MDL ECF No. 7178. The October 5, 2021 Judgment awarded compensatory damages for loss of solatium to, among others, the wife and biological children of Michael W. Lowe. *See id.* at Ex. A; MDL ECF No. 7178 at Ex. A. The October 5, 2021 Judgment awarded compensatory damages for conscious pain and suffering to, among others, the Estate of Michael W. Lowe. *See id.* at Ex. B; MDL ECF No. 7178 at Ex. B. The October 5, 2021 Judgment authorized Movants Donovan Lanham, Gary Lanham, and Jasmine Jackman to submit applications for judgments for solatium, punitive or other damages at a later date. *See id.*; MDL ECF No. 7178.

By the instant motion, Movant seek entry of judgments for solatium damages in their

favor and against Iran based on Movant's close and loving relationship with their late stepfather Michael W. Lowe, to whom Movants were the functional equivalents of immediate family members.  Consistent with numerous prior decisions of the Court, based on the facts and circumstances set forth below and in the accompanying Declaration of P. Joseph Donahue executed on October 24, 2022 ("Donahue Declaration") and the exhibits annexed thereto, Movants are each entitled to an award of solatium damages against Iran under FSIA § 1605A(c) in the amount of $8,500,000, as well as prejudgment interest thereon at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of judgment.

## ARGUMENT

### I. AVAILABILITY OF SOLATIUM DAMAGES UNDER SECTION 1605A

Section 1605A(a)(1) of the FSIA creates an exception to sovereign immunity that allows a foreign state to be held accountable for acts of terrorism, or the provision of material support or resources for acts of terrorism, where the acts or provision of support or resources were engaged in by an official, employee, or agent of the foreign state while acting within the scope of his or her office, employment, or agency.  28 U.S.C. § 1605A(a)(1).  The statute specifically provides for the damages available in cases of "personal injury or death" to include "solatium" damages. 28 U.S.C. § 1605A(a)(1) and (c)(4).  "'A claim for solatium refers to the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort.'"  *Havlish v. Laden*, 2012 U.S. Dist. LEXIS 143525, *80-81 n.1 (S.D.N.Y. Oct. 3, 2012) ("*Havlish II*") (internal quotation omitted).  *See also In re Terrorist Attacks on September 11, 2001*, 2016 U.S. Dist. LEXIS 142865, at *278 (S.D.N.Y. Oct. 12, 2016) (same).  Courts,

2

including this one, have consistently held that the immediate family members of a person killed in a terrorist attack can recover solatium damages under Section 1605A(c) even if they were not present at the attack that killed their family member.  *See, e.g., In re Terrorist Attacks on September 11, 2001*, 2016 U.S. Dist. LEXIS 151675 (S.D.N.Y. Oct. 31, 2016), *adopting*, 2016 U.S. Dist. LEXIS 144325, at *278 (S.D.N.Y. Oct. 14, 2016) ("*Hoglan II*").

In *Havlish II*, this Court approved the following schedule of solatium awards as appropriate for immediate family members of individuals killed in the September 11th Attacks ("9/11 Decedents"):

| | |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

*Havlish II*, 2012 U.S. Dist. LEXIS 143525, at *81 and Table 1.  These amounts represent an upward departure from the benchmarks established in *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006), which this Court found to be warranted "[c]onsidering the extraordinarily tragic circumstances surrounding the September 11th attacks, the indelible impact on the lives of the victims' families, and the frequent reminders that each of the individual Plaintiffs face daily . . . ."  *Havlish II*, 2012 U.S. Dist. LEXIS 143525, at *81.  This Court has consistently awarded these same amounts to other plaintiffs in this MDL.

II. AVAILABILITY OF SOLATIUM DAMAGES FOR STEPCHILDREN

Courts applying Section 1605A(c) have consistently held that solatium damages may be recovered by ***non-immediate family members*** who qualify "as a 'functional equivalent' of an immediate family member under the definition in RESTATEMENT (SECOND) OF TORTS § 46(2)(a)."  *Hoglan II*, 2016 U.S. Dist. LEXIS 144325, at *289-91.

3

This Court has issued numerous decisions and orders awarding solatium damages to stepchildren of 9/11 Decedents.  *See, e.g., Hoglan II*, 2016 U.S. Dist. LEXIS144325, at \*288-91, 295-97, 298-300, *In re Terrorist Attacks on September 11, 2001*, 2017 U.S. Dist. LEXIS 128288, at \*320-22, 328-30 (S.D.N.Y. Aug. 8, 2017) ("*Hoglan IV*"), adopted by, 2017 U.S. Dist. LEXIS 191746 (Nov. 17, 2017); *In re Terrorist Attacks on September 11, 2001*, 2018 U.S. Dist. LEXIS 158197, at \*46-63 (S.D.N.Y. Sep't 13, 2018) ("*Ashton*"); *In re Terrorist Attacks on September 11, 2001*, 2022 U.S. Dist. LEXIS 133842, \*272-76, 277-79, 280-84 (S.D.N.Y. July 26, 2022) ("*Burnett/Iran XXV*"), adopted by, MDL ECF 8293 (July 29, 2022).  In these decisions, the Court has defined the circumstances necessary to establish whether a stepchild is the "functional equivalent" of a biological child of a 9/11 Decedent:  namely, (1) the claimant's continuous cohabitation with the 9/11 Decedent for a significant period of time—presumptively, a minimum of two years—before the claimant reached 18 years of age; (2) whether the 9/11 Decedent played a guardian- or custodian-like role in the claimant's development, including whether the 9/11 Decedent treated the claimant "emotionally, financially, and socially . . . as equivalent to a biological child;" and (3) whether the biological parent was absent from the claimant's life.  *See Hoglan II*, 2016 U.S. Dist. LEXIS 144325, at \*289-91; *Hoglan IV*, 2017 U.S. Dist. LEXIS 128288, at \*320-22, 328-29; *Ashton*, 2018 U.S. Dist. LEXIS 158197, at \*47-48.

As to the appropriate quantum of damages for stepchildren of 9/11 Decedents, the Court has adopted and consistently applied the benchmarks recommended by U.S. Magistrate Judge Netburn in *Hoglan II*.  Where the 9/11 Decedent became part of the claimant's family during the claimant's early childhood (roughly birth through age eight), the claimant shall be entitled to the full solatium damages this Court awards to the biological children of 9/11 Decedents; namely, $8,500,000.  *See Hoglan II*, 2016 U.S. Dist. LEXIS 144325, at \*296; *Hoglan IV*, 2017 U.S. Dist.

4

LEXIS 128288, at *328; *Ashton*, 2018 U.S. Dist. LEXIS 158197, at *51-53, 54, 55-59.  Where the 9/11 Decedent became part of the claimant's family after the claimant had passed early childhood, but was still living in the family home and undergoing secondary education (roughly ages 9 through 17), the claimant shall be entitled to half of the solatium damages this Court awards to the biological children of 9/11 Decedents; namely, $4,250,000.  *See Hoglan II*, 2016 U.S. Dist. LEXIS 144325, at *296-97; *Hoglan IV*, 2017 U.S. Dist. LEXIS 128288, at *329; *Ashton*, 2018 U.S. Dist. LEXIS 158197, at *51-53, 54, 55-59.

In awarding solatium damages to stepchildren of 9/11 Decedents, this Court has relied upon claimants' statements about the length, nature, and quality of their relationships with the decedents.  *See, e.g., Ashton*, 2018 U.S. Dist. LEXIS 158197, at *51-62; *Burnett/Iran XXV*, 2022 U.S. Dist. LEXIS 13844, at *275, 277-79, 280-83.

**III.   MOVANTS ARE EACH ENTITLED TO $8,500,000 IN SOLATIUM DAMAGES AGAINST IRAN**

The declarations of Movants and their biological mother Vivian Lanham-Lowe (annexed as Exhibits 1-4 to the Donahue Declaration) demonstrate that the late Michael W. Lowe was the "functional equivalent" of a biological parent to Movants for ten years immediately prior to his death on September 11, 2001, beginning when all of the Movants were younger than five years of age.  Based on the criteria and benchmarks this Court has developed, each of the Movants is therefore entitled to solatium damages in the amount of $8,500,000.

Movants and their mother began cohabiting with Michael Lowe as a family in mid-1991, when Donovan was three years old, Gary was one year old, and Jasmine was a newborn.  *See* Vivian Lanham-Lowe Decl. (Donahue Ex. 1) at ¶ 3.  Movants lived with Michael and their mother continuously from that time until Michael's death in the collapse of the World Trade Center on September 11, 2001.  *See id*.  *See also* Gary Lanham Decl. (Donahue Ex. 3) at ¶ 2.

5

Vivian and Michael were married on April 6, 1993. *See* Vivian Lanham-Lowe Decl. at ¶ 4. At the time of their marriage, Donovan was 5 years old, Gary was 3, and Jasmine was 2. *See* Donovan Lanham Decl. (Donahue Ex. 2) at ¶ 3; Gary Lanham Decl. (Donahue Ex. 3) at ¶ 2; Jasmine Jackman Decl. (Donahue Ex. 4) at ¶ 2.

Movants' biological father, Gary Wade, abandoned them and their mother in or about 1990. *See* Vivian Lanham-Lowe Decl. at ¶ 2. Mr. Wade did not provide any financial support for Movants from the time he was incarcerated in 1990, and did not return to the United States after he was deported to Jamaica in 1995. *See id*. Movants had almost no contact with their biological father. *See id*. Donovan and Gary both recall only one occasion on which they met Mr. Wade. *See* Donovan Lanham Decl. at ¶ 2; Gary Lanham Decl. at ¶ 7. Donovan has only vague recollections of the time before Michael Lowe was his "Dad." *See* Donovan Lanham Decl. at ¶ 3. Gary's earliest childhood memories are of living in Brooklyn with Michael Lowe as his "Dad." *See* Gary Lanham Decl. at ¶¶ 1-2. Jasmine was not aware that Michael Lowe was not her biological father until after his death, when she was 10 years old. *See* Jasmine Jackman Decl. at ¶¶ 2-3. Michael Lowe was the only "father" Donovan, Gary, and Jasmine knew. *See* Vivian Lanham-Lowe Decl. at ¶ 11; Donovan Lanham Decl. at ¶ 3; Gary Lanham Decl. at ¶¶ 2, 4, 8; Jasmine Jackman Decl. at ¶¶ 2-4.

Michael Lowe did not distinguish between his biological children and his step-children: rather, he "treated them the same in every way." Vivian Lanham-Lowe Decl. at ¶ 6. He worked hard as an electrician to provide for all of them financially. *See id*. at ¶ 7; Donovan Lanham Decl. at ¶ 3; Gary Lanham Decl. at ¶ 3; Jasmine Jackman Decl. at ¶¶ 4-5. He was a "loving father" to Donovan, Gary, and Jasmine, to whom he provided advice and discipline, as well as financial support. Vivian Lanham-Lowe Decl. at ¶ 8.

Michael set aside every Saturday to spend with his children: watching movies together, playing baseball and football, or going on trips to Coney Island or to shop for video games. *See* Vivian Lanham-Lowe Decl. at ¶ 9; Donovan Lanham Decl. at ¶ 6; Gary Lanham Decl. at ¶ 5. Michael taught Donovan to play chess at age 9, and bought him his first chess set. *See* Donovan Lanham Decl. at ¶ 4. He taught Gary to ride a bike and picked him up after school every day for many years. *See* Gary Lanham Decl. at ¶ 4. Michael's strong work ethic inspired Gary to become a tradesman. *See id*. at ¶¶ 3, 6. Both Donovan and Gary sometimes accompanied Michael when he made work deliveries, including on one occasion to the World Trade Center where Michael was later killed. *See* Donovan Lanham Decl. at ¶ 5; Gary Lanham Decl. at ¶ 6. Michael took Gary to work with him on "Take Your Child to Work Day." *See* Gary Lanham Decl. at ¶ 6. Jasmine was her "daddy's girl." *See* Jasmine Jackman Decl. at ¶ 4. She accompanied Michael to the barber every Sunday, and liked helping him clean his car. *See id*. Michael was her "protector." *See id*.

When Michael was killed, Donovan was 14 years old, Gary was 11, and Jasmine was 10. *See* Vivian Lanham-Lowe Decl. at ¶ 10; Donovan Lanham Decl. at ¶ 7; Jasmine Jackman Decl. at ¶ 3. Michael's death was a profound loss to all of them. Donovan dropped out of school, and began a downward spiral from which he did not emerge for more than 10 years. *See* Donovan Lanham Decl. at ¶ 7. For Jasmine, Michael's death "changed everything" and "forced [her] to grow up young." *See* Jasmine Jackman Decl. at ¶ 3. Gary, now a father himself, tells his children that their grandfather, Michael Lowe, is in heaven looking down on them. *See* Gary Lanham Decl. at ¶ 8. Gary takes his young family to visit Michael's grave every year on Michael's birthday. *See id*. Each of Michael Lowe's stepchildren "misses him as a child who has lost their father." Vivian Lanham-Lowe Decl. at ¶ 12.

Donovan, Gary, and Jasmine each had a close and continuous relationship with their stepfather Michael Lowe for ten years prior to his death. Given their tender ages when Michael assumed the role of their father, and married their mother, the appropriate measure of Movants' solatium damages under the Court's framework for awards to non-immediate family members is $8,500,000 each.

## IV. AVAILABILITY OF PUNITIVE DAMAGES UNDER SECTION 1605A

Under Section 1605A(c)(4), Movants are also entitled to punitive damages against Iran. *See* 28 U.S.C. § 1605A(c)(4). In 2012, this Court awarded the *Havlish* plaintiffs punitive damages in the amount of 3.44 times their compensatory damages. *Havlish II*, 2012 U.S. Dist. LEXIS 143525, at *82. This Court subsequently applied the same ratio in awarding punitive damages to plaintiffs in other 9/11-related cases.

However, in an order dated October 14, 2016, in *Ashton, et al. v. Al Qaeda Islamic Army, et al.*, 1:02-cv-6977-GBD-SN and *Bauer v. al Qaeda Islamic Army*, 1:02-cv-7236-GBD-SN, U.S. Magistrate Judge Netburn ordered prompt entry of final judgments for compensatory damages but deferral of awards of punitive damages until a later stage of this litigation. *See* MDL ECF No. 3362 (Oct. 14, 2016) (noting that "[a]ny delay in the award of punitive damages will not prejudice plaintiffs in their applications to the [Victims of State Sponsored Terrorism Fund]"), *adopted by*, MDL ECF No. 3384 (Oct. 31, 2016). Since then, this Court has routinely entered final orders of judgment authorizing plaintiffs awarded compensatory damages to submit "an application for punitive damages . . . at a later date consistent with any future rules made by this Court on the issue." *See, e.g.,* MDL ECF No. 5565 (Feb. 18, 2020). Accordingly, Movants respectfully request permission to address the issue of punitive damages at a later date, in accordance with future rulings of the Court.

## V.   PREJUDGMENT INTEREST

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism. *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011). This Court has awarded prejudgment interest at a rate of 4.96 per cent per annum, compounded annually from September 11, 2001 to the date of judgment, on solatium awards to stepchildren. *See, e.g., Hoglan II*, 2016 U.S. Dist. LEXIS 151675, at *275. Movants respectfully request that the Clerk be directed to award prejudgment interest on their solatium damages awards at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001 until the date of the judgment.

## CONCLUSION

For all of the foregoing reasons, *Anaya/Iran* Plaintiffs Donovan Lanham, Gary Lanham, and Jasmine Jackman respectfully request the Court to grant their motion and enter partial final judgments in their favor against Iran for solatium damages in the amount of $8,500,000 each, and prejudgment interest thereon at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001 until the date of the judgment.

Dated:   October 24, 2022           Respectfully submitted,
         White Plains, New York

                                    **FLEISCHMAN BONNER & ROCCO LLP**

                                    By: /s/ James P. Bonner
                                    James P. Bonner (jbonner@fbrllp.com)
                                    Patrick L. Rocco (procco@fbrllp.com)
                                    Susan M. Davies (sdavies@fbrllp.com)
                                    81 Main Street, Suite 515
                                    White Plains, New York 10601
                                    Telephone:  646-415-1399

Joseph Peter Drennan (admitted *pro hac vice*)
218 North Lee Street, Third Floor
Alexandria, Virginia 22314-2631
Telephone: (703) 519-3773
Telecopier: (703) 548-4399
Mobile: (540) 226-0777
joseph@josephpeterdrennan.com

Patrick M. Donahue (admitted *pro hac vice*)
P. Joseph Donahue (admitted *pro hac vice*)
THE DONAHUE LAW FIRM, LLC
18 West Street
Annapolis, MD 21401
Telephone: (410) 280-2023
pmd@thedonahuelawfirm.com
pjd@thedonahuelawfirm.com

P. York McLane (admitted *pro hac vice*)
LAW OFFICE OF P. YORK MCLANE
14015 Park Dr., Ste. 111
Tomball, Texas 77377
yorkmclane@yahoo.com

***Counsel for Plaintiffs Donovan Lanham,
Gary Lanham, and Jasmine Jackman***