**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
                                        )
IN RE:  TERRORIST ATTACKS ON            )       Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001                      )       ECF Case
_____ )

This document relates to:  *All Actions*


**KINGDOM OF SAUDI ARABIA'S REPLY IN SUPPORT OF ITS**
**APPLICATION FOR ATTORNEYS' FEES AND EXPENSES PURSUANT TO**
**THE COURT'S SEPTEMBER 21, 2022 OPINION & ORDER**

Michael K. Kellogg
Mark C. Hansen
Gregory G. Rapawy
Andrew C. Shen
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900
(202) 326-7999 (fax)

*Attorneys for the Kingdom of Saudi Arabia*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

      A.      The Size of Saudi Arabia's Legal Team Was Reasonable ...................................... 2

      B.      The Scope of Work for Which Saudi Arabia Seeks To Recover
             Is Reasonable .......................................................................................................... 5

      C.      Saudi Arabia Has Already Applied Appropriate Discounts for
             Block Billing ........................................................................................................... 7

      D.      Kellogg Hansen's Rates Are Reasonable ............................................................... 8

      E.      The Court Should Deny Kreindler & Kreindler's Request To Stay
             the Fee Application ................................................................................................. 9

CONCLUSION ....................................................................................................................... 10

CERTIFICTATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Cnty. of Suffolk*, 2016 WL 1444594 (E.D.N.Y. Apr. 11, 2016) ................................ 8

*Aso, In re*, 2019 WL 2572491 (S.D.N.Y. June 21, 2019)....................................................... 9, 10

*Blowers v. Lawyers Coop. Publ'g Co.*, 526 F. Supp. 1324 (W.D.N.Y. 1981) .............................. 3

*Caban v. Emp. Sec. Fund of the Elec. Prods. Indus. Pension Plan*,
  2015 WL 7454601 (E.D.N.Y. Nov. 23, 2015)............................................................................ 8

*Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*,
  2021 WL 1549916 (S.D.N.Y. Apr. 20, 2021)....................................................................... 4, 5

*Freedom Watch, Inc. v. U.S. Dep't of State*, 324 F.R.D. 20 (D.D.C. 2018) ................................ 1

*G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415 (S.D.N.Y. 2012)........... 8

*Hindman LLC v. Mihaly*, 2022 WL 19752 (S.D.N.Y. Jan. 3, 2022) ............................................ 9

*Jimenez v. Lilley*, 2018 WL 2768644 (S.D.N.Y. June 7, 2018)................................................ 10

*Kizer v. Abercrombie & Fitch Co.*, 2017 WL 9512408 (E.D.N.Y. July 24, 2017) ....................... 8

*Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC*, 2009 WL 466136
  (S.D.N.Y. Feb. 25, 2009)........................................................................................................ 4

*Mendez v. Radec Corp.*, 818 F. Supp. 2d 667 (W.D.N.Y. 2011)................................................ 3

*Parrish v. Sollecito*, 280 F. Supp. 2d 145 (S.D.N.Y. 2003)...................................................... 9

*Philip Morris USA Inc. v. Scott*, 561 U.S. 1301 (2010)................................................................ 10

*Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974) ........................................... 10

*Ritchie v. Gano*, 756 F. Supp. 2d 581 (S.D.N.Y. 2010)............................................................ 8

*SEC v. Yorkville Advisors, LLC*, 2015 WL 855796 (S.D.N.Y. Feb. 27, 2015) ............................. 9

*U.S. ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, 2015 WL 1726474 (S.D.N.Y. Apr. 15, 2015) ........... 8

**RULES**

Fed. R. Civ. P. 37(b)(2)(A) .......................................................................................................... 10

Fed. R. Civ. P. 37(b)(2)(C) ........................................................................................................... 5

Fed. R. Civ. P. 62(b) .................................................................................................................... 10

**INTRODUCTION**

The Kingdom of Saudi Arabia ("Saudi Arabia") respectfully submits this reply in support of its application for reasonable fees of $1,390,281.50 and expenses of $36,504.42.

On September 21, 2022, this Court determined that Kreindler & Kreindler LLP ("Kreindler & Kreindler") had "willfully breached the Court's protective orders to embarrass Saudi Arabia and gain an advantage in this case." ECF No. 8544, at 64. The Court ordered the firm to pay the attorneys' fees and costs "associated with," "related to," and "expended by Saudi Arabia in response to this breach." *Id.* at 34, 45, 65. The fees and expenses sought are actual amounts billed and paid for work "associated with" Kreindler & Kreindler's willful breach, discounted by: (1) excluding work associated with Kreindler & Kreindler's other breaches of the protective orders; (2) excluding fees billed by associates no longer employed at Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen"); (3) excluding the preparation of the fee application; (4) using historical rates; (5) reducing block-billed time; (6) excluding legal research expenses; and (7) reducing hotel and meal expenses. ECF No. 8623, at 2-3.

Kreindler & Kreindler now asserts numerous objections to the reasonableness of Saudi Arabia's fee application. *See* ECF No. 8685. None were raised during the parties' Court-ordered meet-and-confer discussions. Although Saudi Arabia provided Kreindler & Kreindler with its detailed fee-and-expense schedule, and obtained an extension of time so that Kreindler & Kreindler could further review that schedule, Kreindler & Kreindler declined to discuss any details, merely asserting that "no fee is reasonable." ECF No. 8624-10, at 2-4. The Court may decline to consider Kreindler & Kreindler's belated arguments.[1] In any event, none has merit.

---

[1] *See Freedom Watch, Inc. v. U.S. Dep't of State*, 324 F.R.D. 20, 21, 23 (D.D.C. 2018) (party barred from challenging opposing party's positions for failure to meet and confer despite court order).

## ARGUMENT

### A.  The Size of Saudi Arabia's Legal Team Was Reasonable

Kreindler & Kreindler objects to the number of Kellogg Hansen attorneys and staff who worked on the breach response.  But simply pointing to the number of time-keepers does not tell an accurate story.  As shown in the fee-and-expense schedule accompanying Saudi Arabia's application, 84.1% of Kellogg Hansen's attorney time (1,146.35 of the 1,362.35 attorney hours billed) was billed by a five-attorney team – Michael Kellogg, Mark Hansen, Gregory Rapawy, Andrew Shen, and Chris Young.  Other attorneys who billed (limited) time assisted with discrete research or other tasks, such as on professional-responsibility issues.  Time billed by staff consisted almost entirely of coordinating logistical and technology issues relating to the hearing or cite-checking the more than 15 filings submitted by Saudi Arabia associated with the breach.

By comparison, at least 16 attorneys from Kreindler & Kreindler and four other law firms representing Kreindler & Kreindler or John Fawcett have worked on these issues:

- Kreindler & Kreindler:  James Kreindler, Megan Benett, Andrew Maloney, Steve Pounian, Justin Green[2]

- Kirsch & Niehaus PLLC:  Emily Kirsch, Lisa Frey, Paul Niehaus, Craig Tasaroff

- Emery, Celli, Brinkerhoff, Abady, Ward & Maazel LLP:  Hal Lieberman

- Lankler, Stiffert & Wohl LLP:  Michael Gerber, Helen Gredd, Gabrielle Freidman, Brice Jastrow

- Morvillo, Abromowitz, Grand, Iason & Anello PC:  Edward Spiro, Raymond Moss

That list is likely under-inclusive – Kreindler & Kreindler has not submitted its own bills, so the record does not show all the attorneys working on this matter, and there is no way to determine

---

[2] *See* Nov. 1-2, 2021 Hr'g Tr. 354:1-356:4; KSA Ex. 112 (forwarding draft of the Fawcett declaration, which was drafted by Benett and Pounian, to Justin Green for review).

non-attorney time-keepers. It does show, however, that Kellogg Hansen had fewer lawyers working on the breach dispute than did Kreindler & Kreindler itself.

Kreindler & Kreindler further complains (at 7-9) of duplication and inefficiency. Again, it has failed to come forward with its own time records for any of the above attorneys (all either employed or paid by Kreindler & Kreindler), which would provide an objective benchmark.[3] We are confident that our hours would compare favorably. The record does show, however, that when Plaintiffs sought fees in 2014 relating to a far less complex discovery dispute, their application stated that 12 attorneys and one researcher spent 1,075 hours on the issue. *See* ECF No. 8623, at 9-10. The hours billed here are reasonable by comparison.

Kreindler & Kreindler's three attempts to point to examples of duplication each fall short. *First*, Kreindler & Kreindler asserts it was unreasonable for four attorneys to bill 70 hours "researching" and "reviewing and editing" Saudi Arabia's July 23, 2021 motion to enforce the protective orders. But preparation for that filing included Kellogg Hansen's own investigation to ensure that none of its attorneys or staff who had access to protected material (a total of 27 individuals) was the source of the leak, as well as the preparation of their declarations to lay a foundation for seeking similar verification from other firms.[4] That logistical exercise took time.

---

[3] *See Blowers v. Lawyers Coop. Publ'g Co.*, 526 F. Supp. 1324, 1327 (W.D.N.Y. 1981) (noting that "[t]he amount of time spent by [the non-moving parties'] attorneys on a particular matter may have significant bearing on the question whether [the moving party's] attorney expended a reasonable time on the same matter"); *cf. Mendez v. Radec Corp.*, 818 F. Supp. 2d 667, 668-69 (W.D.N.Y. 2011) (granting discovery into non-moving parties' billing records in light of challenge to the reasonableness of the fees sought by the moving party).

[4] Kreindler & Kreindler further argues that Saudi Arabia should not be able to recover fees for the time it spent preparing its motion to enforce the protective orders before it contacted Plaintiffs to meet and confer on July 21, 2021. But the September 21, 2022 Order requires Kreindler & Kreindler to pay reasonable fees "related to" or "associated with [its] breach." ECF No. 8544, at 45, 65. The fees incurred between July 15 and July 21 meet that criterion. If Kreindler & Kreindler had complied with the Court's orders, none of that time would have been spent.

*Second*, Kreindler & Kreindler objects to the time spent preparing Saudi Arabia's September 29, 2021 letter (ECF No. 7157), responding to both Kreindler & Kreindler's September 27, 2021 letter (ECF No. 7147) admitting that it was the source of the Jarrah transcript leak and its September 28, 2021 letter (ECF No. 7153) informing the Court that the firm was belatedly taking security measures to restrict access to confidential materials.  A total of 20.2 hours spent analyzing and responding to Kreindler & Kreindler's admission of its breach after months of false denials was not unreasonable.

*Third*, Kreindler & Kreindler erroneously asserts (at 8-9) that seven Kellogg Hansen attorneys and one paralegal "'participat[ed]' in the first day of the Hearing" and six attorneys and one paralegal "'participated' in the second day."  Five attorneys participated in the hearing: Mark Hansen and Andrew Shen conducted cross-examinations; Michael Kellogg and Gregory Rapawy addressed points of law and procedure; and Christopher Young assisted the other four attorneys.  By comparison, other than the four witnesses, Kreindler & Kreindler had at least two firm attorneys attend (Justin Green and Noah Kushlefsky); their law firms, Kirsch & Niehaus and Emery Celli, had at least three attorneys attend.  Fawcett had at least three attorneys attend.

*Fourth*, and finally, Kreindler & Kreindler complains (at 9) that much of Kellogg Hansen's work was conducted by partner-level attorneys.  Kreindler & Kreindler itself had four partners (Kreindler, Maloney, Benett, Green) and one counsel (Pounian) working on the issue.  Even adding the attorneys at other firms retained or paid by Kreindler & Kreindler in connection with its breach, only two of the 16 are junior or associate-level attorneys.  *See supra* p. 2.[5]

---

[5] Neither case cited by Kreindler & Kreindler (at 9) supports reducing Saudi Arabia's requested fee award.  *Lucky Brand Dungarees, Inc. v. Ally Apparel Resources, LLC*, 2009 WL 466136 (S.D.N.Y. Feb. 25, 2009), stands for the unremarkable proposition that "experienced lawyers should be expected to perform their work more efficiently than their more junior counterparts," *id.* at *4, while *Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, 2021 WL 1549916 (S.D.N.Y. Apr. 20, 2021), involved "introduc[ing] an element of inefficiency"

**B.      The Scope of Work for Which Saudi Arabia Seeks To Recover Is Reasonable**

1.      The Court should reject Kreindler & Kreindler's assertions (at 10-11) that Saudi

Arabia should not recover fees associated with obtaining discovery from Fawcett, opposing

his invocation of the Fifth Amendment, and opposing Oath, Inc.'s motion to intervene.  As for

Fawcett, the contention (at 10) that the conduct by Kreindler & Kreindler and Fawcett was

"separate and distinct" is contrary to the findings the Court has already made.  Fawcett's conduct

was part of "the firm's litigation strategy and a culture that is determined to resist and evade the

Protective Orders to further its goal."  ECF No. 8544, at 45.  In addition, Saudi Arabia's need to

obtain discovery and ultimately testimony from Fawcett resulted from Kreindler & Kreindler's

submission of sworn declarations containing misleading, false, and fabricated statements; its

attempts to frustrate the Court's investigation; and its own reliance on an investigation that was

"deficient," "flaw[ed]," and "failed to take basic investigative steps."  *Id.* at 14-16, 28-29, 39-45.

All of the time Saudi Arabia spent pursuing Fawcett was "caused by," Fed. R. Civ. P.

37(b)(2)(C), and a foreseeable result of Kreindler & Kreindler's willful violations and cover-up.

In particular, Saudi Arabia was required to pursue discovery directly from Fawcett

because, as part of Kreindler & Kreindler's deficient investigation, it "did not review personal

devices . . . or . . . phone records," including those belonging to Fawcett.  ECF No. 8544, at 14.

Those records ultimately revealed Fawcett's communications with Isikoff (including those

concerning the leak) and the series of calls he made to Liz Crotty and Jim Kreindler on July 22,

2021, the day after Saudi Arabia raised the leak issue to Kreindler & Kreindler.  The Court relied

on this evidence in concluding that Kreindler & Kreindler committed willful breaches.  Had

---

into a component of the litigation due to "splitting" certain "tasks" between two attorneys, one
of whom "lacked familiarity with the record," *id.* at *7.  Kreindler & Kreindler has not shown
(and could not show) that any Kellogg Hansen attorney did not work at a level of efficiency
commensurate with their experience or that Kellogg Hansen inefficiently divided tasks.

Kreindler & Kreindler not willfully breached the orders, had it been forthcoming about its breach, had it conducted a reasonable investigation, or had it voluntarily produced the relevant documents from Fawcett, none of this separate discovery would have been necessary.

Kreindler & Kreindler's conduct also caused Fawcett's invocation of the Fifth Amendment and caused Saudi Arabia to incur fees opposing that invocation. Not only was the willful breach itself (which exposed Fawcett to potential criminal liability) attributable to Kreindler & Kreindler, but so was Fawcett's submission of two declarations that contained "fabricated" assertions inserted by Benett and Pounian, ECF No. 8544, at 28, 38, 42. The Fifth Amendment waiver dispute was a direct and foreseeable result of Kreindler & Kreindler's use of those false declarations in a failed attempt to shift blame exclusively to Fawcett.[6]

Kreindler & Kreindler's conduct also caused Oath's intervention motion and caused Saudi Arabia to incur fees opposing intervention. Again, without the willful breach, Oath would have had no occasion to seek intervention. Further, had Kreindler & Kreindler properly investigated and disclosed the breach in response to the Court's August 12, 2021 order, the issue could have been resolved before Oath sought to intervene. Kreindler & Kreindler also clearly viewed itself as aligned with Oath at the time: as the Court found, it "was the only firm to support [Oath's] meritless" intervention efforts. ECF No. 8544, at 41-42.

**2.**     Kreindler & Kreindler also fails to show (at 11-12) that Saudi Arabia should not recover fees incurred after September 27, 2021, the date the firm filed Fawcett's first declaration. It relies on the preposterous assertion (at 12) that the subsequent discovery and hearing "produced

---

[6] Kreindler & Kreindler also wrongly asserts (at 10-11) that Fawcett's invocation of the Fifth Amendment was against its interests. The Court repeatedly cited Fawcett's testimony, which contradicted testimony from Kreindler & Kreindler attorneys, in concluding that the firm willfully violated the protective orders. ECF No. 8544, at 12-13, 18. Had Fawcett successfully invoked the Fifth Amendment, none of that inculpatory testimony would be in the record.

little, if any, new information relied on by the Court in its Order" and was "a fishing expedition that came up empty."  The post-September 27 discovery was crucial to confirming the personal involvement in the breach of James Kreindler, who the Court ultimately found had "knowledge" of, or gave "at least tacit consent" to, Fawcett's breach of the protective orders.  ECF No. 8544, at 2.  Moreover, the September 27, 2021 declaration was drafted in large measure by Kreindler & Kreindler attorneys and contained fabrications designed to shift blame away from the firm. Saudi Arabia's efforts obtaining discovery from Kreindler & Kreindler and Fawcett, its cross-examination of Kreindler & Kreindler lawyers and staff at the hearing, and its assembly of the hearing evidence into proposed findings of fact and conclusions of law were all necessary to show that the leak was the "result of deliberate coordination between Fawcett and Kreindler" and that other firm attorney were "at best, willfully bind to the leak."  *Id.* at 2, 45, 46.  The Court's order repeatedly cites the post-September 27 evidence and the hearing testimony in concluding that Kreindler & Kreindler willfully violated its orders and that it lied about those violations.

## C.   Saudi Arabia Has Already Applied Appropriate Discounts for Block Billing

The fee-and-expense schedule enclosed with Saudi Arabia's fee application contains a total of 438 time entries.  Only 63 of those entries block-billed time that includes non-recoverable tasks.  For 14 of the 63 block-billed entries, Saudi Arabia has sought no fees.  For the remaining 49 entries, each time-keeper has, where possible, consulted contemporaneous time-keeper records to determine the specific amount of time attributable to the breach issues. Where that was not possible for a particular entry, the time-keeper has been conservative in assigning time in that entry to breach issues.  After these adjustments, the 49 entries account for a total of 151.75 hours and $131,085.50, a small fraction of the total fees sought.[7]  Because Saudi

---

[7] If it would assist the Court, Saudi Arabia can submit for *in camera* review a version of the fee-and-expense schedule showing the total block-billed time in each entry, a non-redacted

Arabia has already discounted time submitted in this small number of entries, no further reduction of time is necessary or appropriate.[8]

## D.    Kellogg Hansen's Rates Are Reasonable

Kellogg Hansen's rates are the actual historical rates the firm billed and collected from Saudi Arabia.  They are also the rates it charges to and collects from other clients.  Kreindler & Kreindler acknowledges (at 15), as it must, that the "underlying multi-district litigation in which Kellogg Hansen represents Saudi Arabia is exceedingly complex" and that Kellogg Hansen's rates "are justified for work that requires their skill and expertise."  It argues (at 14-15), however, that, while these rates may be appropriate for litigating other issues in this MDL, they are not appropriate for litigating what it calls a discovery motion.

The Court should not credit Kreindler & Kreindler's attempt to discount the seriousness of its willful misconduct.  Those violations, the firm's efforts to obstruct the Court's investigation, and its submission of false and misleading sworn declarations and in-person testimony warranted

---

version of the time entry, and the amount of time allocated to the breach issues.  *In camera* review would be appropriate to avoid revealing confidential work product.

[8] *See*, *e.g.*, *U.S. ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, 2015 WL 1726474, at *3 (S.D.N.Y. Apr. 15, 2015) ("The use of 'block billing' here is perfectly reasonable; the specific tasks in each 'block' are described with sufficient detail and clarity to confirm 'the reasonableness of the work performed.'") (citation omitted); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 441 (S.D.N.Y. 2012) ("Defendant has identified no entries where the hours billed are unreasonable, or where block billing has combined activities compensable at different rates. Therefore, the Court does not find any reduction warranted.").  None of Kreindler & Kreindler's cited cases (at 12-13) suggests otherwise.  Those cases involve situations "where a court has directed parties to parse out records to clearly state how much time the attorneys spent on [particular topics], and the parties have done so insufficiently," *Ritchie v. Gano*, 756 F. Supp. 2d 581, 583 (S.D.N.Y. 2010), or "where counsel relie[d] on vague / excessive entries or block billing practices which make it difficult for a court to assess reasonableness," *Kizer v. Abercrombie & Fitch Co.*, 2017 WL 9512408, at *4 (E.D.N.Y. July 24, 2017), *report and recommendation adopted*, 2017 WL 3411952 (E.D.N.Y. Aug. 9, 2017); *see also Anderson v. Cnty. of Suffolk*, 2016 WL 1444594, at *6 (E.D.N.Y. Apr. 11, 2016) (same); *Caban v. Emp. Sec. Fund of the Elec. Prods. Indus. Pension Plan*, 2015 WL 7454601, at *8 (E.D.N.Y. Nov. 23, 2015) (same). Kreindler & Kreindler has not shown that any such concerns apply here.

8

its immediate removal from the Plaintiffs' Executive Committees ("PEC").  Kreindler & Kreindler itself retained two law firms to represent it at the hearing (effectively a two-day bench trial) and now a third firm in connection with its Rule 72(a) objections.  It also paid for sophisticated counsel to represent Fawcett.  It has not disclosed its own rates or the rates it has paid to each of these firms to litigate the same issues.

Nor has Kreindler & Kreindler cited any authority justifying a departure from Kellogg Hansen's standard historical rates, which apply uniformly to work conducted on all aspects of the case.  When Kreindler & Kreindler and other PEC members submitted a 2014 fee application arising from a discovery dispute, they sought their typical hourly rates – not some discounted discovery-dispute-related rate.  *See* ECF No. 2830.[9]

## E.   The Court Should Deny Kreindler & Kreindler's Request To Stay the Fee Application

The decision whether to stay an order from a magistrate judge pending Rule 72 objections to the district judge "is guided by four well-established factors:  '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'"  *In re Aso*, 2019 WL 2572491, at *2 (S.D.N.Y. June 21, 2019) (citation omitted).  Because "[a] stay is an

---

[9] This approach comports with the standard that the "reasonable starting point for determining the hourly rate for purposes of a [presumptively reasonable fee] calculation" is "the attorney's customary rate."  *Parrish v. Sollecito*, 280 F. Supp. 2d 145, 169-70 (S.D.N.Y. 2003).  The cases cited by Kreindler & Kreindler do not suggest that a different rate should apply to Kellogg Hansen's work here.  Both cases involved only the filing of a motions to compel, which were "relatively simple," *Hindman LLC v. Mihaly*, 2022 WL 19752, at *3 (S.D.N.Y. Jan. 3, 2022), and "not significantly complex," *SEC v. Yorkville Advisors, LLC*, 2015 WL 855796, at *18 (S.D.N.Y. Feb. 27, 2015).  That is a far cry from the work needed here to reveal Kreindler & Kreindler's breach and its failed efforts to pin the blame for that breach exclusively on Fawcett.

intrusion into the ordinary processes of administration and judicial review," it "is not a matter of right," but "is committed to the court's discretion." *Id.* (citation omitted).

The traditional stay factors do not support Kreindler & Kreindler's request (at 4-6) that this Court delay resolution of the attorneys' fees issue until Judge Daniels resolves its objections. *First*, Kreindler & Kreindler cannot make a strong showing that it will prevail on its Rule 72(a) objections. The Court's factual and credibility determinations are entitled to "considerable deference on review." *Jimenez v. Lilley*, 2018 WL 2768644, at *2 (S.D.N.Y. June 7, 2018). Further, as Saudi Arabia will show in its opposition to the Rule 72(a) objections, Kreindler & Kreindler's legal challenge to the Court's decision to impose sanctions under Federal Rule of Civil Procedure 37(b)(2)(A) both has been forfeited (because it never made this argument in its proposed findings of fact and conclusions of law) and is wrong as a matter of law.

*Second*, Kreindler & Kreindler cannot show irreparable injury. Litigating the amount of fees due does not count. *See Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."). Even paying the fees would not be irreparable injury without a showing that the payment would be unrecoverable. *See Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010) (Scalia, J., in chambers). In any event, the appropriate procedure if Kreindler & Kreindler wishes to delay payment while it pursues its non-meritorious appeal is a bond under Federal Rule of Civil Procedure 62(b) after this Court has entered an order fixing the fees due.[10]

## CONCLUSION

For the foregoing reasons and those set forth in Saudi Arabia's initial application, the Court should award Saudi Arabia fees of $1,390,281.50 and expenses of $36,504.42.

---

[10] The other stay factors – injury to others and the public interest – are neutral here.

Dated:  November 2, 2022    Respectfully submitted,

           */s/  Michael K. Kellogg*
           Michael K. Kellogg
           Mark C. Hansen
           Gregory G. Rapawy
           Andrew C. Shen
           KELLOGG, HANSEN, TODD, FIGEL
            & FREDERICK, P.L.L.C.
           Sumner Square
           1615 M Street, N.W., Suite 400
           Washington, D.C. 20036-3209
           (202) 326-7900
           (202) 326-7999 (fax)

           *Attorneys for the Kingdom of Saudi Arabia*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 2, 2022, I caused a copy of the foregoing Reply in Support of the Kingdom of Saudi Arabia's Application for Attorneys' Fees and Expenses Pursuant to the Court's September 21, 2022 Opinion & Order to be served on all counsel of record by ECF.


*/s/ Michael K. Kellogg*
Michael K. Kellogg
*Attorney for the Kingdom of Saudi Arabia*