**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------X

In re: Terrorist Attacks on September 11, 2001

Civil Action No. 03-MD-1570 (GBD)(SN)
ECF Case

-------------------------------------------------------X

**This document relates to:**

*Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03-cv-06978
*Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03-cv-09849
*Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.*, No. 04-cv-01922
*Continental Casualty. Co., et al. v. Al Qaeda Islamic Army, et al.*, No. 04-cv-05970
*Estate of John P. O'Neill, Sr., et al. v. Republic of the Sudan, et al.*, No. 18-cv-12114
*Aronow, et al. v. Republic of Sudan*, No. 20-cv-07733

**CONSOLIDATED AMENDED COMPLAINT PLAINTIFFS' OBJECTIONS TO THE COURT'S MAY 3, 2022 REPORT & RECOMMENDATION (ECF No. 7942) AND SEPTEMBER 23, 2022 AMENDED REPORT & RECOMMENDATION (ECF No. 8549)**

November 4, 2022

# <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  STANDARD OF REVIEW .................................................................................. 2

III. ARGUMENT ....................................................................................................... 3

      A.   The Court Should Decline to Adopt the Report's Recommendation
          Concerning the Non-Commercial Tort Exception. .................................... 3

          1.   This Court Need Not and Should Not Address Whether the Non-
              Commercial Tort Exception Applies Here. .................................... 4

          2.   The Report's Findings as to Conspiracy and Aiding and
              Abetting Confirm that § 1605(a)(5) Would Provide Jurisdiction
              for Plaintiffs' Claims, Were it Necessary to Consider that Question. ........ 5

      B.   The Court Should Decline to Follow the Report's Reasoning about
           the Scope of § 1605A ................................................................................ 10

          1.   The Court Should Not Adopt the Report's Conclusion that
              § 1605A Applies Only to Insurers' Claims Derived from Claims
              of U.S. Nationals. ........................................................................... 11

          2.   If the Court Addresses the Scope of § 1605A, the Court Should
              Conclude that Insurer Claims are not Limited to Subrogated
              Claims of U.S. Nationals. .............................................................. 12

          3.   Although the Court Need Not Reach the Issue, U.S. Corporations
              are U.S. Nationals. ......................................................................... 15

IV. CONCLUSION ................................................................................................... 20

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Boim v. Holy Land Found.*,
    549 F.3d 685 (7th Cir. 2008) ................................................15

*Cabiri v. Gov't of Ghana*,
    165 F.3d 193 (2d Cir. 1999)..................................................6

*Certain Underwriters at Lloyd's London v. Great Socialist People's Libyan Arab
    Jamahiriya*,
    811 F. Supp. 2d 53 (D.D.C. 2011) .......................................14

*Doe v. Afghanistan*,
    580 F. Supp. 2d 93 (D.D.C. 2008) .......................................7

*Doe v. Bin Laden*,
    663 F.3d 64 (2d Cir. 2011)..........................................6, 7, 8

*Doe v. Federal Democratic Republic of Ethiopia*,
    851 F.3d 7 (D.C. Cir. 2017).........................................7, 8, 9

*Friends of Mayanot Institute, Inc. v. Islamic Republic of Iran*,
    313 F. Supp. 3d 50 (D.D.C. 2018) ....................................13, 14

*Hale v. Henkel*,
    201 U.S. 43 (1906)..............................................................18

*Inglis v. Trustees of Sailor's Snug Harbor*,
    28 U.S. 99 (1830)................................................................18

*Letelier v. Republic of Chile*,
    488 F. Supp. 665 (D.D.C. 1980) ........................................6, 9

*Linde v. Arab Bank, PLC*,
    882 F.3d 314 (2d Cir. 2018)..............................................6, 8

*Liu v. Republic of China*,
    892 F.2d 1419 (9th Cir. 1989) ...........................................6, 9

*Marquez-Almanzar v. I.N.S.*,
    418 F.3d 210 (2d Cir. 2005).......................................11, 18, 19

*O'Neill v. Saudi Joint Relief Committee*,
    714 F.3d 109 (2d Cir. 2013)..............................................7, 8

ii

*Swiss Nat'l Ins. Co. v. Miller*,
    267 U.S. 42 (1925).................................................................................................16

*In re Terrorist Attacks on September 11, 2001*,
    2015 WL 9468813 (S.D.N.Y. Dec. 28, 2015) ......................................................13

*United States v. Nw. Express, Stage & Transportation Co.*,
    164 U.S. 686 (1897).................................................................................................16

*United States v. Romano*,
    794 F.3d 317 (2d Cir. 2015)......................................................................................2

**Statutes**

8 U.S.C. § 1101...........................................................................................11, 15, 18, 19

18 U.S.C. § 2331.....................................................................................................16

18 U.S.C. § 2333.....................................................................................................16

22 U.S.C. § 1621.....................................................................................................18

22 U.S.C. § 1623.....................................................................................................18

28 U.S.C. § 636.........................................................................................................2

28 U.S.C. § 1605(a)(5) ...................................................................................... *passim*

28 U.S.C. § 1605A .............................................................................................. *passim*

28 U.S.C. § 1605B .............................................................................................. *passim*

Justice Against Sponsors of Terrorism Act ("JASTA"), Pub. L. No. 114-222, 130
    Stat. 852 (2016)................................................................................................16, 17

Libya Claims Resolution Act, Pub. L. No. 110-301, 122 Stat. 2999 (2008)..................17

**Other Authorities**

2B Sutherland Statutory Construction § 51:8 (7th ed.)...................................................16

16 Couch on Insurance § 222.27 (3d ed. 2021) ...........................................................15

46A C.J.S. Insurance § 2027......................................................................................15

*In the Matter of Claims of Interlease, Inc., Against the Great Socialist People's
Libyan Arab Jamahiriya*, Decision No. LIB-II-163, Foreign Claims Settlement
Commission of the United States (2012) ................................................................17, 18

*Claim of Joint Venture of Pectin Vietnam Co. & Vietnam Cities Serv. Inc.*,
Decision No. V-0425, Foreign Claims Settlement Commission of the United
States (1985) ....................................................................................................................18

I.    **INTRODUCTION**

On May 3, 2022, Magistrate Judge Sarah Netburn issued an extensive decision on the numerous and complex issues raised by Sudan's motion to dismiss complaints filed by various groups of plaintiffs (the "R&R" or the "Report," ECF No. 7942).  The Consolidated Amended Complaint ("CAC") Plaintiffs timely moved for reconsideration of certain discrete conclusions set forth in the R&R, on the basis that those determinations rested on errors of fact or law, or otherwise presented conflicts with the relevant authority or prior rulings of this Court.  On September 23, 2022, Magistrate Judge Netburn issued an Amended Report and Recommendation (the "Amended R&R," ECF No. 8549), granting in part and denying in part the CAC Plaintiffs' motion for reconsideration.  Judge Netburn declined to modify the determination that the Court's findings on secondary liability do not support subject matter jurisdiction under 28 U.S.C. § 1605(a)(5).  Judge Netburn also determined that the CAC Plaintiffs' argument concerning the Report's statements as to the proper scope of 28 U.S.C. § 1605A were not appropriate for a reconsideration motion.

As set forth in further detail below, the CAC Plaintiffs, respectfully object to two discrete aspects of the R&R and Amended R&R: (1) the Court's analysis of subject matter jurisdiction under § 1605(a)(5); and (2) the scope of claims for which the Court has subject matter jurisdiction under § 1605A.

First, in view of the Court's ruling that the immunity exceptions set forth in § 1605A and § 1605B provide jurisdiction for Plaintiffs' claims against Sudan, the Court does not need to address the application of the non-commercial tort exception.  To the extent that the Court deems it necessary to address the application of § 1605(a)(5), the relevant facts and law confirm that the statute would provide subject matter jurisdiction over the CAC Plaintiffs' secondary liability claims because a complete tort occurred entirely within the United States and caused harm here.

Along these same lines, the R&R establishes that subject matter jurisdiction exists over the *Federal Insurance* and *Continental Casualty* Plaintiffs' claims against Sudan regardless of whether § 1605A is limited to claims derived directly from "U.S. nationals."  As such, the CAC Plaintiffs request that the Court decline to adopt the R&R insofar as it addresses the scope of § 1605A, or purports to limit the application of that statute for property and insurance losses to claims of U.S. nationals.  Alternatively, this Court may simply conclude, consistent with its own prior determinations and rulings of other courts, that § 1605A(d) authorizes claims for property and insurance losses regardless of their link to harm suffered by a U.S. national, so long as a claim for personal injury or death arising from the same attack has been brought under § 1605A(c). Although this Court need not and should not reach the issue here, U.S. corporations are nationals of the United States under the definition incorporated into § 1605A.

The Court's jurisdictional rulings obviate the need for the Court to make determinations on either of these contested recommendations from the Reports.  The R&R and Amended R&R reach issues that do not warrant the Court's analysis.  The disputed recommendations are incorrect and create conflicts with relevant authority, decisions of this Court, and instructive legislative authority, and should not be adopted by this Court.

## II.  STANDARD OF REVIEW

"If a party timely objects to any portion of a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'"  *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015) (quoting 28 U.S.C. § 636(b)(1)).  The CAC Plaintiffs, by and through this objection, respectfully request that the Court decline to adopt the recommendations addressed herein.

## III.   **ARGUMENT**

### A.   **The Court Should Decline to Adopt the Report's Recommendation Concerning the Non-Commercial Tort Exception.**

After first determining that the immunity exceptions set forth in § 1605A and § 1605B provide jurisdiction for Plaintiffs' claims against Sudan, Judge Netburn also addressed the immunity exception set forth in § 1605(a)(5), commonly referred to as the non-commercial tort exception, and recommended that it does not apply.  *See* R&R at 32-36.  Because Sudan has challenged the availability of jurisdiction under § 1605A and § 1605B, and is expected to continue to do so in its objections to the R&R, the CAC Plaintiffs are compelled to preserve their alternative arguments under § 1605(a)(5) at this stage, by objecting to the recommendation that it is unavailable.

Given the R&R's correct finding that §§ 1605A and 1605B apply here, the CAC Plaintiffs respectfully submit that it is simply unnecessary for this Court to address the availability of jurisdiction under the non-commercial tort exception in the present context, and that prudential and case management considerations counsel against doing so.  Accordingly, the CAC Plaintiffs urge the Court to affirm the availability of jurisdiction under § 1605A and § 1605B, and decline to adopt the Report's recommendation as to § 1605(a)(5)'s applicability on the ground that addressing that question is unnecessary to the resolution of any live issue raised by Sudan's motion to dismiss.  If, however, the Court decides to reach the question of the non-commercial tort exception's applicability here, it should find that it provides an alternative basis for jurisdiction for the claims against Sudan, based on Second Circuit precedent and the Report's conclusions regarding conspiracy and aiding and abetting.

1.    This Court Need Not and Should Not Address Whether the Non-Commercial Tort Exception Applies Here.

The Report correctly found that the immunity exceptions set forth in §§ 1605A and 1605B both provide jurisdiction for the CAC Plaintiffs' claims, and as a result, the question of whether the non-commercial tort exception also applies is entirely academic and not one this Court need or should reach.  Sections 1605A and 1605B provide this Court with subject matter jurisdiction to adjudicate all of the CAC Plaintiffs' viable statutory and common law tort claims that remain in issue.[1]  Thus, a determination (one way or the other) as to the applicability of § 1605(a)(5) will not affect the scope of the substantive claims that proceed or the discovery to be conducted, and it is therefore unnecessary for this Court to address the issue here.  Indeed, the CAC Plaintiffs' assertion of jurisdiction under § 1605(a)(5) was always intended as an argument in the alternative, necessary because of Sudan's challenges to jurisdiction under §§ 1605A and 1605B.

This Court should refrain from addressing the extraneous question of § 1605(a)(5)'s applicability in the present context, in the interests of judicial efficiency and for prudential reasons.  Sudan's motion to dismiss raised wide ranging (and often convoluted) arguments, and it is reasonable to anticipate that its objections will be similarly expansive.  Avoiding the immaterial question of § 1605(a)(5)'s applicability will prevent the unnecessary expenditure of scarce judicial resources in relation to the resolution of Sudan's already complicated motion to dismiss.  The Report's reasoning as to the entire tort rule raises novel questions concerning the interpretation of the Second Circuit's decision in *Doe v. Afghanistan*; whether tortious acts undertaken by terrorists in the United States and resulting in physical harm here are attributable to aiders and abettors and

---

[1]As Judge Netburn noted in the Report, § 1605B does not apply to claims of "mere negligence."  *See* R&R at 21. While the non-commercial tort exception does authorize negligence claims, where its requirements are met, the Report recommended dismissing the CAC Plaintiffs' negligence claims because the CAC Plaintiffs do not allege that the Sudanese officials were acting outside the scope of their office in providing support to al Qaeda, but instead acted intentionally in furtherance of Sudanese policy.  *Id.* at 58-60.  Because the CAC Plaintiffs are not contesting that recommendation for dismissal of the negligence claims, those claims are no longer in issue.

co-conspirators for purposes of the entire tort rule; and the import of decisions of courts outside this jurisdiction interpreting the entire tort rule in the distinct context of claims relating to cyber intrusions carried out by state actors entirely from abroad.  There is no need for the Court to grapple with those contested issues here.

2. <u>The Report's Findings as to Conspiracy and Aiding and Abetting Confirm that § 1605(a)(5) Would Provide Jurisdiction for Plaintiffs' Claims, Were it Necessary to Consider that Question.</u>

Should this Court nonetheless decide to address the non-commercial tort exception in relation to Sudan's motion to dismiss, it should find that the exception would provide subject matter jurisdiction over secondary liability claims even if § 1605A and § 1605B did not apply (which they do), because a complete tort occurred entirely within the United States and caused harm here.  In this regard, the Report correctly concluded that Plaintiffs had adequately established Sudan's secondary liability under both conspiracy and aiding and abetting theories.  *See* R&R at 48-52.  The pleadings establish, for conspiracy, that "Sudan knew that al Qaeda wanted to commit terrorist acts against the United States, agreed to assist that endeavor, and then took steps to do so." *Id.* at 52.  Likewise, for aiding and abetting, the pleadings establish that Sudan substantially assisted al Qaeda through "a close and enduring relationship between al Qaeda's leadership and the highest levels of the Sudanese government," and Sudan "knowingly assisted" al Qaeda's schemes. *Id.* at 50.

In light of these findings, and contrary to the Report's conclusion, R&R at 35, the "entire tort doctrine" does not bar jurisdiction under § 1605(a)(5).[2]  The underlying tort that Sudan conspired to advance or aided and abetted occurred entirely in the United States: al Qaeda's hijacking of domestic flights ending in the attacks in New York, Pennsylvania, and Virginia.  As

---

[2]As the CAC Plaintiffs show, their claim satisfies the "entire tort" limitation as applied in this Circuit, but they also preserve for appeal the argument that § 1605(a)(5) is not limited in such a manner.

such, the Report's conclusions make *Doe v. Bin Laden*, 663 F.3d 64 (2d Cir. 2011), where the Court found that attribution of the hijackers' U.S. torts pursuant to concerted action principles satisfied the entire tort rule, binding here.  As with Sudan's conspiracy to advance al Qaeda's attacks, *Doe* concluded that Afghanistan's conspiracy with al Qaeda, if ultimately shown after jurisdictional discovery, sufficed to satisfy § 1605(a)(5)'s requirements, including the entire tort rule.  *See id.* at 66-70; *id.* at 66-67 (finding the element of "damages … occurring in the United States" to have been established).  This reading is reinforced by the *Doe* court's reliance on other cases holding that foreign sovereigns who act abroad are subject to claims under § 1605(a)(5) when an agent and co-conspirator commits a complete tort in the United States that causes harm here.  *See Doe*, 663 F.3d at 68-69 (citing *Liu v. Republic of China*, 892 F.2d 1419 (9th Cir. 1989), and *Letelier v. Republic of Chile*, 488 F. Supp. 665 (D.D.C. 1980)).  The Report's aiding and abetting conclusion requires the same result, because aiding and abetting liability simply attributes the consequences of the wholly domestic tort, including causation, to those who act in concert with the tortfeasor.  *See Linde v. Arab Bank, PLC*, 882 F.3d 314, 331 (2d Cir. 2018); *see also id.* at 332 (aiding and abetting analyzed as advancing "acts of terrorism by others").

The Amended R&R suggests that the Second Circuit's finding that the claims in *Doe* "fit within the noncommercial tort exception," *Doe,* 663 F.3d at 67, did not address the entire tort rule. Amended R&R at 4-5.  The CAC Plaintiffs respectfully submit that the record and posture of that case before the Court of Appeals indicate otherwise.  Initially, the Second Circuit acknowledged the entire tort rule years before *Doe*, in *Cabiri v. Gov't of Ghana,* 165 F.3d 193, 200 n.3 (2d Cir. 1999).  The district court decision under review in *Doe*, in turn, prominently discussed the entire tort rule, and expressly held that its requirement that both the tortious act and resulting injury occur in the United States was satisfied *only* because "Afghanistan is liable as a co-conspirator 'for all

the tortious acts committed by its co-conspirators in furtherance of the conspiracy.'" *See Doe v. Afghanistan,* 580 F. Supp. 2d 93, 98 (D.D.C. 2008); *see also id.* at 98 n.5 (explaining that "Afghanistan might not be individually liable under Doe's wrongful death claims in the absence of a conspiracy theory," citing the entire tort rule).  These circumstances confirm that the Second Circuit was fully cognizant of the entire tort rule and the district court's finding that it was satisfied by *Doe's* concerted action theories, when it expressly held that the territorial limitation of the non-commercial tort exception was satisfied at the pleading stage.  The Second Circuit simply could not have reached that conclusion on the record before it without endorsing the district court's holding that the entire tort doctrine was satisfied for pleading purposes by *Doe's* conspiracy theories.[3]

Notwithstanding the Amended R&R, neither *O'Neill v. Saudi Joint Relief Committee*, 714 F.3d 109 (2d Cir. 2013), nor *Doe v. Federal Democratic Republic of Ethiopia,* 851 F.3d 7 (D.C. Cir. 2017), suggest a contrary conclusion or cast doubt on a plaintiff's ability to satisfy the entire tort rule through attribution of a concerted actor's tortious acts in the United States.  *O'Neill* addressed only a theory of primary liability.  The Court found that § 1605(a)(5) did not apply because, under a primary liability theory, plaintiffs did "not allege that [the state defendants] participated in the September 11, 2001 attack," or allege that the defendants "committed any tortious act in the United States."  *O'Neill,* 714 F.3d at 117.  The Court underscored that "[a]lthough the September 11, 2001 attacks constitute a 'tort,' the [state defendants] are not alleged

---

[3]In recommending that *Doe* be read as not having addressed the entire tort question, the Amended R&R noted (at p. 4) the *Doe* court's statement near the conclusion of its decision that "we make no judgment as to whether the allegations in the complaint are sufficient to state a claim or even to provide jurisdiction." *Doe*, 663 F.3d at 70.  However, the sentence that immediately follows makes clear that this statement concerned Afghanistan's factual challenges "to whether the alleged acts were attributable to Afghanistan and whether they were discretionary," *id.*, as to which the court directed discovery.  As a matter of pleading, however, the Court squarely found that the claims "fit within" § 1605(a)(5), including its territorial requirement.  *Id.* at 67.  Sudan's motion to dismiss concerns only the sufficiency of the CAC Plaintiffs' pleadings.  The Report's recommendation, at the pleading stage, that § 1605(a)(5) does not apply is thus inconsistent with *Doe*.

to have participated in that 'tort,'" which was "distinct and separate from the 'torts' allegedly committed by the [defendants]." *Id.* at 117 n.10.

This reasoning points to why the CAC Plaintiffs' secondary liability claim would fit within the scope of § 1605(a)(5), were it necessary for the Court to reach that issue. Through their secondary liability claim, the CAC Plaintiffs <u>do</u> allege that Sudan, as one of the participants in the concerted action along with al Qaeda, did jointly "participate[] in the September 11, 2001 attacks." *O'Neill*, 714 F.3d at 117. Sudan's actions were not "distinct and separate" from the 9/11 attackers' actions, but rather were part of the same concerted action undertaken in the United States, just as Afghanistan's actions were for purposes of the Court's conclusion in *Doe*, 663 F.3d 64. In addition, the CAC Plaintiffs do allege that Sudan "committed [a] tortious act in the United States," *O'Neill*, 714 F.3d at 117, because the 9/11 attackers' actions, undertaken in the United States, are attributed to all parties engaged in the concerted action. *Linde, supra*, illustrates the point. There, due to the operation of the aiding and abetting claim, the terrorist attack itself was attributed to all who undertook concerted action, including those who aided and abetted the attackers, and all those who acted in concert equally "caused" the terrorist attack. *Linde,* 882 F.3d at 331.

*Doe v. Federal Democratic Republic of Ethiopia*, a decision from outside of this Circuit, also did not consider or address concerted actions involving the commission of a complete tort in the United States and causing harm here, in relation to the entire tort rule. To the contrary, that case involved a cyber-intrusion committed entirely from abroad, and the court specifically noted that there was no allegation that any participant in the tort was present in the United States or had committed any tortious act here. *See Doe,* 851 F.3d at 8 ("The e-mail had been forwarded and was allegedly sent originally by or on behalf of Ethiopia. Kidane's complaint is silent as to whether the individual who sent Kidane the e-mail was located in the United States but the e-mail's text

8

suggests that individual was located in London.").  The court held that those claims were subject to dismissal because there was no complete tort committed in the United States that was allegedly attributable to Ethiopia.  *Id.* at 11-12.

Significantly, in reaching that conclusion, the *Republic of Ethiopia* court distinguished and cited with continuing approval the decisions in *Liu, supra,* and *Letelier, supra.*  In both of those cases, jurisdiction was found proper under § 1605(a)(5) based on the commission of a complete tort in the United States by a participant in the concerted action, even though the foreign state defendant initiated and undertook essential actions in support of the tort from abroad.  The *Republic of Ethiopia* court thus drew a clear distinction for purposes of the entire tort rule between: (1) cases where no complete tort is committed in the United States, in which case the rule is not satisfied; and (2) cases where a foreign state joins in concerted action resulting in the commission of a complete tort by a joint participant in the United States and resulting in injury here, in which case the entire tort rule is satisfied even if the foreign state joined and took action in support of the tort from abroad.

Here, there is no question that a complete tort – the September 11th attacks – was committed in the United States, resulting in devastating physical injury here.  Accordingly, to the extent that it were necessary for the Court to address the non-commercial tort exception's applicability here, the Report's correct conclusions that Sudan conspired with and aided and abetted al Qaeda in furtherance of those attacks attribute that complete tort to Sudan, and would thus satisfy the entire tort rule.  Once again, however, the CAC Plaintiffs submit that it is unnecessary for the Court to reach the question of the non-commercial tort exception's applicability, given the Report's correct findings that both § 1605A and § 1605B provide jurisdiction for the CAC Plaintiffs' tort claims against Sudan.  Accordingly, the most prudent and

efficient course would be for this Court to adopt the Report's recommendations that §§ 1605A and 1605B apply, and decline to adopt the Report's recommendation as to § 1605(a)(5) as unnecessary to the determination of this Court's jurisdiction for the pending claims against Sudan.

**B.      The Court Should Decline to Follow the Report's Reasoning about the Scope of § 1605A.**

The Report correctly found that § 1605A provides jurisdiction for the insurer plaintiffs' suits against Sudan, but erroneously recommended that it supplies subject matter jurisdiction over claims by insurance companies only if those claims are "derived from U.S. nationals' insurance claims." R&R at 33. The Report also suggests in an isolated sentence that corporations are not U.S. nationals within the meaning of § 1605A. *Id.* at 32.

The Court should decline to adopt this recommendation for three independent reasons. First, as the Report correctly determined, subject matter jurisdiction exists over the *Federal Insurance* and *Continental Casualty* Plaintiffs' claims against Sudan regardless of whether § 1605A is limited to claims derived directly from "U.S. nationals." This ruling renders it unnecessary to determine the precise scope of claims authorized by § 1605A. Second, § 1605A is not so limited. As other courts, including this one, have held, § 1605A expressly permits suits by insurers to collect for losses under insurance policies once an action under § 1605A "has been brought" by a U.S. national. 28 U.S.C. §§ 1605A(c), (d). The claims expressly authorized by § 1605A(d) are not limited to those derived from injuries suffered by U.S. nationals. Third, although § 1605A(d)'s express authorization of the insurers' claims moots the issue, corporations organized under U.S. law would be U.S. nationals for purposes of § 1605A, even if the statute's scope were so limited.

10

1.   The Court Should Not Adopt the Report's Conclusion that § 1605A
     Applies Only to Insurers' Claims Derived from Claims of U.S. Nationals.

The Court should conclude that it has subject matter jurisdiction over insurer plaintiffs'

claims against Sudan.  But it should not adopt the Report's reasoning on § 1605A's scope.  On this

subject, the Report stated:

> Section 1605A(a)(2)(A)(ii) waives sovereign immunity for specific
> acts by foreign sovereigns against U.S. nationals.  Section 1605A(c)
> provides a provide right of action for these claims.  U.S. nationals
> are defined by § 1101(a)(22) of the Immigration and Nationality Act
> (INA).  *See* 8 U.S.C. § 1101(a)(22).  This defines a "national of the
> United States" as "(A) a citizen of the United States, or (B) a person
> who, though not a citizen of the United States, owes permanent
> allegiance to the United States."  8 U.S.C. § 1101(a)(22).  This does
> not include corporations.  *See, e.g.*, *Marquez-Almanzar v. I.N.S.*, 418
> F.3d 210, 217–18 (2d Cir. 2005) (discussing the definition of a U.S.
> national with reference to individual personhood and birth).

R&R at 32.  The Report went on to conclude that subject matter jurisdiction nevertheless existed

over the insurer plaintiffs' claims.  Section 1605A(d), the Report explained, provides that once an

action is brought under § 1605A(c), "actions may also be brought for reasonably foreseeable

property loss, whether insured or uninsured, third-party liability, and loss claims under life and

property insurance policies."  *Id.* (citing 28 U.S.C. § 1605A(d)).  But, based on the reasoning

quoted above, the Report interpreted § 1605A(d) to extend only to claims that are "derived from

U.S. nationals' insurance claims."  R&R at 33.

The Court need not and should not adopt this reasoning.  As discussed below, § 1605A

plainly authorizes the insurer plaintiffs' claims, as this Court and others have recognized.  But in

any case, even if § 1605A does not permit all claims by corporations, it nevertheless provides

jurisdiction for claims brought by the insurer plaintiffs, as the Report found.  This Court can adopt

that recommendation, and recognize that § 1605A provides jurisdiction and a cause of action for

*at least* certain of the insurers' claims, *i.e.* at least those "derived from U.S. nationals' insurance

11

claims," R&R at 32, without determining whether it authorizes additional claims as well.  Under this approach, the precise scope of the insurers' claims authorized by § 1605A need not be determined at this time.

This approach makes considerable sense given the Report's correct finding that subject matter jurisdiction also exists for the insurers' claims under § 1605B.  *Id.* at 33–35.  That provision waives immunity for acts of international terrorism that occurred in the United States caused by the tortious actions of foreign states, or their agents or employees.  *See* 28 U.S.C. § 1605B(b).The statutory and common law tort claims authorized by § 1605B cover the full scope of the insurers' losses, a circumstance that makes it all the more unnecessary to determine the precise scope of § 1605A at this time.[4]

> 2. <u>If the Court Addresses the Scope of § 1605A, the Court Should Conclude that Insurer Claims are not Limited to Subrogated Claims of U.S. Nationals.</u>

If the Court reaches these questions, it should hold that, under § 1605A, insurer claims are not limited to subrogated claims of U.S. nationals.  Under § 1605A(a), a "foreign state shall not be immune" in any case seeking "money damages" for "personal injury or death that was caused by . . . extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act," so long as the "claimant or victim was at the time" of the act a "national of the United States" (among other requirements not relevant here).  28 U.S.C. § 1605A(a). Section 1605A(c) provides a private right of action for "national[s] of the United States," members of the

---

[4]In incorrectly suggesting that property and insurer claims under § 1605A(d) are limited to those derived from losses of U.S. nationals, the Report introduced a subsidiary question as to whether corporations would qualify as U.S. nationals under that provision, to the extent it were so limited.  The issue of whether U.S. corporations would be U.S. nationals under § 1605A is more complex and nuanced than may have been apparent from the limited briefing the issue received in the context of Sudan's sprawling motion to dismiss.  It deserves more thorough treatment than the parties were able to provide in that setting, or than the Report provided in a single paragraph.  Deferring a ruling on § 1605A's precise scope would obviate the need for this Court to reach that issue, as would a finding (adhering to this Court's prior holdings) that insurance and property claims authorized by § 1605A(d) are not limited to those derived from U.S. nationals.

armed forces, and government employees or contractors for "personal injury or death." 28 U.S.C. § 1605A(c).  Section 1605A(d) provides, in turn, that "[a]fter an action has been brought under subsection (c), actions may also be brought for reasonably foreseeable property loss . . . by reason of the same acts on which the action under subsection (c) is based."  28 U.S.C. § 1605A(d). Subsection (d), unlike subsection (c), contains no reference to U.S. nationals, and nothing else in the text of § 1605A(d) indicates that the claims authorized by subsection (d) are limited to claims derived from U.S. nationals.  Here, because U.S. nationals were among the victims of the 9/11 attacks and U.S. nationals have indisputably brought valid claims under § 1605A(c), the insurers' claims can proceed—regardless of whether they are subrogated claims of U.S. nationals.

Notably, applying § 1605A, this Court exercised jurisdiction over the *Federal Insurance* and *Continental Casualty* plaintiffs' claims against Iran, entering judgment for the insurers and awarding them damages for property and related losses.  *In re Terrorist Attacks on September 11, 2001*, No. 03-md-1570 (GBD) (FM), 2015 WL 9468813, at *2–3 (S.D.N.Y. Dec. 28, 2015).  The Court should not deviate from its prior decision, or from the persuasive decisions of other district courts.

Other courts that have considered this issue have agreed with this Court and have held that § 1605A confers subject matter jurisdiction over claims by insurers and other corporate entities, regardless of whether the underlying loss was suffered by a U.S. national.  In *Friends of Mayanot Institute, Inc. v. Islamic Republic of Iran*, for example, the court held that the provision provided subject matter jurisdiction over a non-profit corporation's suit to recover economic losses from a terrorist attack.  313 F. Supp. 3d 50, 58 (D.D.C. 2018).  The court explained that § 1605A waived sovereign immunity for the non-profit's claims "by virtue of" a prior case brought by U.S. nationals under § 1605A(c) who were victims of the same attack.  *Id.* at 57.  Further, the non-profit

had statutory standing because "once a party with valid [statutory] standing has brought an action under [Section] 1605A(c), it is unnecessary for a party filing suit under [Section] 1605A(d) to establish standing separately." *Id.* at 58 (quoting *Certain Underwriters at Lloyd's London v. Great Socialist People's Libyan Arab Jamahiriya*, 811 F. Supp. 2d 53, 71 (D.D.C. 2011)).  Likewise, the court in *Certain Underwriters* held that it had subject matter jurisdiction under § 1605A over claims by non-U.S. insurance underwriters, suing for insured losses suffered by a non-U.S. claimant, because "the three victims" of the terrorist acts at issue were "United States citizens at the time" and those victims "had proper standing to bring" and had filed suit under § 1605A(c). *Certain Underwriters,* 811 F. Supp. 2d at 72.  By virtue of those victims' suit under § 1605A, the foreign insurers were authorized to bring claims for the destruction of the foreign-owned aircraft in the same attack, pursuant to § 1605A(d). *Id.*

The history of § 1605A confirms that the provision covers suits by insurers and other corporations to recover property and other categories of losses, regardless of the claims' link to U.S. nationals.  Indeed, the amendments to the terrorism exception resulting in § 1605A were designed to broaden its scope, permitting more, not fewer, suits by insurers and other entities.  As one of the legislation's sponsors explained, the cause of action in subsection (d) "addresse[d] the problems that arose from overly mechanistic interpretations" of the prior terrorism exception, including cases that had prevented claims by "property owners, and their insurers, against state sponsors of terrorism."  154 Cong. Rec. S. 54, 55 (Jan. 22, 2008) (statement of Sen. Lautenberg); *see also Certain Underwriters*, 811 F. Supp. 2d at 71 (discussing this legislative history in exercising jurisdiction over claims by insurance underwriters).

14

Limiting insurers' claims to those derived from the insurance claims of individual U.S. nationals would subvert this specific Congressional purpose,[5] as well as the broader purposes of § 1605A to "provide justice to those who have suffered at the hands of terrorists" and to "deter future state-sponsored terrorism."  154 Cong. Rec. at S. 54 (statement of Sen. Lautenberg).  Where a state sponsor of terrorism supports an attack against U.S. nationals, imposing liability for related damage to corporations and insurers serves the provision's remedial aims, and provides a strong deterrent to future support for terrorism.  *See Boim v. Holy Land Found.*, 549 F.3d 685, 692 (7th Cir. 2008) (recognizing that damages liability deters financing and support of terrorism).

3.    Although the Court Need Not Reach the Issue, U.S. Corporations are U.S. Nationals.

In any event, even if § 1605A were limited to losses incurred by U.S. nationals, it would provide jurisdiction for virtually all of the insurer plaintiffs' claims because U.S.-incorporated companies are "[n]ational[s] of the United States."  28 U.S.C. § 1605A(a)(2)(A)(ii), (2)(c), (h)(5).  As explained, § 1605A(h)(5) incorporates the INA's definition of this phrase to mean "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States."  8 U.S.C. § 1101(a)(22).  U.S. companies satisfy both prongs of this definition.

First, U.S. corporations are "citizens" under this framework.  "Congress has frequently in its legislation . . . used the words 'citizens of the United States' in the broadest sense, and as

---

[5]The determination that §1605A(d) is limited to subrogated claims of U.S. nationals is inconsistent with Congress' authorization under that statute of claims for damages under life insurance policies.  The plain language of § 1605A(d) states that the phrase "additional damages" includes those damages arising from "loss claims under life … insurance policies.  28 U.S.C. § 1605A(d).  No right of subrogation is available under life insurance policies.  *See, e.g.*, 16 Couch on Insurance § 222:27 (3d ed. 2015) ("No right of subrogation arises by operation of law under life and accident insurance because the indemnity feature is not present."); 46A C.J.S. Insurance § 2027 ("It is well settled that the doctrine of subrogation has no application to accident or life insurance, for the reason that accident and life insurance are not contracts of indemnity, but are investment contracts.").  Thus, it necessarily follows that insurance companies have standing to bring claims under Section 1605A(d) for loss under property or life insurance, once a claim for injury or death has been asserted under Section 1605A(c).

embracing corporations created by state law." *United States v. Nw. Express, Stage & Transportation Co.*, 164 U.S. 686, 688 (1897). "[W]hether the words" of a statute follow this "general signification" depends on the purpose of the relevant enactment and in particular "the nature of the remedy" to be "effected." *Id.* at 688–89; *see also Swiss Nat'l Ins. Co. v. Miller*, 267 U.S. 42, 46 (1925) (explaining that whether corporations are "citizens" under a statute "depends upon the intent, to be gathered from the context and the general purpose of the whole legislation in which [the term] occurs" (cleaned up)); 2B Sutherland Statutory Construction § 51:8 (7th ed.) (explaining that definitions incorporated by reference "become part of the adopting statute as though written therein"). Congress enacted the terrorism exception and, as just discussed, amended it, with two general aims in mind: deterring acts of terrorism against U.S. nationals and providing relief for injuries and property damage caused by those state-sponsored terrorist acts against Americans. Those remedial goals confirm that corporations incorporated under U.S. law are citizens of the United States for purposes of § 1605A.

This construction is consistent with Congress's practice in other international-terrorism-related remedial statutes with similar or identical definitions of U.S. national. The ATA and its amending legislation, the Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 582 (2016), are the prime example. Like § 1605A, these laws aim to deter acts of terrorism against the United States and to redress American victims of terrorism. Under the ATA, any "national of the United States injured in his or her person, property, or business by reason of an act of international terrorism . . . may sue therefor . . . and shall recover threefold" damages. 18 U.S.C. § 2333(a). As in § 1605A, Congress gave "national of the United States" the textual definition set forth in the INA. *Id.* § 2331(2). And Congress intended for corporations to be "nationals of the United States" under this definition, which has never changed. In introducing

the bill, Senator Grassley explained that the ATA would "serve as a further incentive to those with the deep pockets, *such as the airline industry*, to spend resources and go after terrorists: This bill establishes an express cause of action to gain compensation as fruit of their efforts."  136 Cong. Rec. S 4567, S 4593 (daily ed. Apr. 19, 1990) (Statement of Sen. Grassley) (emphasis supplied). In enacting JASTA, Congress made the same clear.  JASTA's Findings and Purpose state that the United States "has a vital interest in providing persons and *entities* injured as a result of terrorist acts committed within the United States with full access to the court system in order to pursue civil claims against persons, entities, or countries" that have supported terrorism.  Pub. L. 114-222, Sec. 2(a)(7) (entities).  More recently, a group of Senators who took the lead in drafting the ATA and JASTA reaffirmed that the statute was aimed to mobilize the resources of the private sector against terrorism.  *See* Ex. 1 to the Declaration of J. Scott Tarbutton, Esquire, Brief of Eight U.S. Senators as *Amici Curiae* in Support of Plaintiffs-Appellants at 10, dated April 23, 2021, *Atchley v. AstraZeneca UK Ltd*., No. 20-7077 (D.C. Cir.)  ("the [ATA] aimed not merely to address the issue of victim compensation but also to harness the initiative and resources of the private sector in pursuit of the larger aims of U.S. counterterrorism policy.")

Corporations have also been deemed U.S. nationals under congressional enactments related to the settlement of claims against foreign states, including a 2008 settlement of claims against Libya.  *See* Libya Claims Resolution Act, Pub. L. 110-301, 122 Stat. 2999 (2008); *see In the Matter of Claims of Interlease, Inc. against the Great Socialist People's Libyan Arab Jamahiriya*, Decision No. LIB-II-163, Foreign Claims Settlement Comm'n (July 12, 2012) (awarding $21.5 million for the destruction of an aircraft in a terrorist attack).  Congress limited that settlement to claims by "nationals of the United States," as that term is defined in the INA.  Pub. L. 110-301, sec. 2.  As well, the jurisdiction of the quasi-judicial body within the Department of Justice that

adjudicates claims against foreign states, including those under the Libya settlement, extends only to claims by "nationals of the United States," 22 U.S.C. § 1623(a)(1)(B), defined as "persons who are citizens of the United States" and "persons" who "owe permanent allegiance to the United States," *id.* § 1621(c); *see also* Dep't of Justice, *Foreign Claims Settlement Comm'n of the U.S.*, https://www.justice.gov/fcsc. That body has explained that, under these enactments, a corporation "qualifies as a U.S. national if it is incorporated in a state or territory of the United States or the District of Columbia," provided that it is not majority owned by foreign persons. *In the Matter of Claims of Interlease, Inc.*, Decision No. LIB-II-163, at 4–5 (citing, *e.g.*, *Claim of Joint Venture of Pectin Vietnam Co. & Vietnam Cities Serv. Inc.*, Decision No. V-0425 (1985)).There is no reason to conclude that Congress intended U.S. companies to be U.S. nationals under these closely analogous contexts, but not under the FSIA's terrorism exception.

Second, corporations are U.S. nationals under the "allegiance" prong of the incorporated definition, which defines "U.S. national" to include a "person" that "owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22)(B); *see also id.* § 1101(b)(3) (defining "person" to include an "organization"). "[A]llegiance is nothing more than the tie or duty of obedience of a subject to the sovereign under whose protection [the subject] is." *Inglis v. Trustees of Sailor's Snug Harbor*, 28 U.S. 99, 155 (1830). And a corporation, because "[i]ts rights to act as a corporation are only preserved to it so long as it obeys the laws of its creation," owes a duty of obedience and allegiance to the United States and its state of incorporation. *Hale v. Henkel*, 201 U.S. 43, 74-75 (1906).

The decision cited in the Report is not to the contrary. *See* R&R at 32 (citing *Marquez-Almanzar v. I.N.S.*, 418 F.3d 210, 217–18 (2d Cir. 2005)). The question in *Marquez-Almanzar* was whether a native and citizen of the Dominican Republic was a "U.S. national" under the INA

by virtue of having sworn allegiance to the U.S. Constitution during his service in the U.S. Army. *Marquez-Almanzar*, 418 F.3d at 216.   As the Report points out, in deciding that Marquez-Almanzar was not a "U.S. national" under this theory, the court "discuss[ed] the definition of a U.S. national with reference to individual personhood and birth."  R&R 32.  But the case says nothing about how the allegiance of corporations should be evaluated, and it certainly does not dictate that U.S.-incorporated entities cannot owe allegiance to the United States.

In any event, *Marquez-Almanzar*'s conclusion that one satisfies the allegiance prong of the definition "at birth" would encompass entities incorporated under the laws of a U.S. state. *Marquez-Almanzar*, 481 F.3d at 217.  Indeed, in advocating for American corporate recovery under an early international claims process, the United States explained that a corporation "owes allegiance" to the United States and "to the state that created it … exactly as an individual owes allegiance to the country of his birth."  Ex. 2 to the Tarbutton Declaration, Reply Brief of the United States, *United States v. Germany*, Before the Mixed Claims Commission, United States and Germany (1924). For these reasons, even if corporations are not "citizen[s] of the United States," they are still "national[s]" because they "ow[e] permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22)(B).

Thus, while the facts before the Court on Sudan's motion to dismiss do not require the Court to render an opinion on the scope § 1605A, the case law and statutory analysis confirm that the insurer plaintiffs' corporate status does not prevent the exercise of jurisdiction under § 1605A.

IV.   **CONCLUSION**

For the reasons set forth above, the CAC Plaintiffs respectfully request that the Court decline to adopt the R&R and Amended R&R with respect to the recommendations addressing: (1) the unavailability of jurisdiction over the CAC Plaintiffs' claims pursuant to § 1605(a)(5); and (2) the scope of claims supported by § 1605A.

Dated: November 4, 2022

Respectfully submitted,

COZEN O'CONNOR

By:  /s/ Sean P. Carter
SEAN P. CARTER
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Tel.: (215) 665-2105
Email: scarter1@cozen.com

*Co-Chair of the Plaintiffs' Executive Committee for Commercial Claims on behalf of the Consolidated Amended Complaint Plaintiffs*

MOTLEY RICE LLC

By:  /s/ Robert T. Haefele
ROBERT T. HAEFELE
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*Liaison Counsel for the Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Consolidated Amended Complaint Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the Consolidated Amended Complaint Plaintiffs' Objections to the Court's May 3, 2022 Report & Recommendation (ECF No. 7942) and September 23, 2022 Amended Report & Recommendation (ECF No. 8549), was electronically filed this 4th day of November 2022.  Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system, which the following parties may access.

_____

J. Scott Tarbutton, Esq.