UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

    TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001

-----------------------------------------------------------------X

03-MD-01570 (GBD)(SN)

OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/07/2022

**SARAH NETBURN, United States Magistrate Judge:**

    On September 7, 2022, the Plaintiffs' Executive Committees ("PECs") moved to compel Defendant Dubai Islamic Bank ("DIB") to produce additional discovery under Rule 26(e) of the Federal Rules of Civil Procedure, which requires parties to supplement inaccurate or incomplete discovery responses. ECF No. 8505. The Court GRANTS in part and DENIES in part the PECs' motion and orders DIB to produce information for an account number associated with Sulaiman al Ali ("Ali").

## BACKGROUND

    The PECs first served DIB with discovery requests on October 15, 2010. ECF No. 4046 at 2. In the intervening twelve years, the Court has issued two orders addressing DIB's discovery obligations.

    In the first, the Court directed DIB to search its legacy account database for 500 search terms listed by the PECs. ECF No. 3253 at 55:8–15. For any accounts it found, DIB had to produce opening and closing statements, periodic statements, and other associated electronic information. Id. DIB specified that in conducting those searches, it would use "the same methodology" it had used for 261 names previously identified by the PECs, id. at 59:10–11: it would search for "'exact matches on the search term in the full name accountholder field in DIB's electronic account record keeping system,'" ECF No. 8539 at 2–3 (quoting

correspondence between DIB counsel and the PECs). The PECs did not object to DIB's "exact match" methodology. See ECF No. 3253 at 59–60.

In its second order, the Court confirmed that the list of 500 search terms included not just names of individuals and entities but also any alternative spellings and aliases the PECs wanted DIB to search. ECF No. 4046 at 9. The Court explained that the list was limited to 500 search terms "precisely because of DIB's concerns that searching for alternative spellings and aliases would dramatically increase the number of searches to be carried out." Id. The Court therefore required DIB to search only for those terms it had been ordered to or had agreed to search.[1] Id. at 12. Plaintiffs do not allege that DIB failed to conduct these searches and produce associated records. See ECF No. 8505.

In March and April 2022, the Central Intelligence Agency ("CIA") declassified a tranche of internal reports assessing DIB and its alleged links to terrorist financing. Id. at 2. The CIA had broadly concluded that DIB was a "key financial conduit" for al Qaeda. ECF No. 8507-10 at 23. It asserted that Osama bin Laden ("bin Laden"), his businesses, and his associates (such as Saidi Madani al Tayyib ("Tayyib"), also known as Abu Khalifa al Omani) maintained accounts or opened letters of credit at DIB. ECF Nos. 8507-7 at 18, 30; 8507-8 at 10; 8507-10 at 8. The CIA characterized former DIB Chairman Saeed Ahmed Lootah ("Lootah") as a "close friend" of bin Laden, ECF No. 8507-7 at 5, and described relationships between DIB board members (namely Lootah and Yousif Jassim al Haji) and people or organizations with ties or potential ties to bin Laden, including Hasan al Turabi of the National Islamic Front ("NIF"), Hisham Ishan Koprulu of the Koprulu Trading Company, and the International Islamic Charities Organization. ECF No. 8507-7 at 17, 18, 20; ECF No. 8507-9 at 4. The reports also flagged various wire transfers,

---

[1] By consent of the parties, the list was expanded from 500 to 629. ECF No. 4046 at 9.

including one from Ali's DIB account to Omar al Bayoumi, who aided the 9/11 hijackers. ECF No. 8507-3 at 6.

Citing those documents, the PECs moved to compel DIB to supplement its discovery responses under Rule 26(e). ECF No. 8505. They assert that the declassified reports show that DIB's prior responses were inaccurate or incomplete. Id. In particular, the PECs claim that DIB's "exact match" search methodology was inadequate. Id. at 1. To fill in the alleged gaps in DIB's responses, the PECs request:

1. Records concerning any letters of credit in favor of bin Laden, bin Laden's Sudanese businesses, Saidi Madani al Tayyib (and any business associated with him), and/or Abu Khalifa al Omani (and any business associated with him);

2. Records concerning cooperation between DIB Chairman Saeed Ahmed Lootah and/or his businesses and bin Laden's companies;

3. Records concerning DIB's relationship with Hisham Ihsan Koprulu or Koprulu Trading Company in Dubai;

4. Records concerning the relationships between Chairman Lootah and his businesses and (1) bin Laden or his Sudanese Businesses; (2) Saidi Madani al Tayyib (a/k/a Abu Khalifa al Omani) and companies associated with him; (3) Hassan al Turabi or the NIF; and (4) Hisham Ihsan Koprulu or his companies;

5. Records concerning DIB Board Member Sheikh Yousif Jassim al Haji; and

6. All accounts associated with Ali.

Id. at 3, 5.

## LEGAL STANDARD

Parties are generally entitled to relevant, non-privileged discovery. Fed. R. Civ. P. 26(b). That foundational rule is subject to certain limitations. Discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and *whether the burden or expense of the proposed discovery outweighs its likely benefit*." Id. (emphasis added). On this last point, the Rules give special guidance for digital information stored on "legacy" systems. Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2008.2 (3d ed. 2022). The Rules exempt parties from initially searching legacy systems that are "not reasonably accessible" and enable courts to limit the "amount, type, or sources of information" that parties must produce. Fed. R. Civ. P. 26(b)(2)(B). To effectuate these principles, courts have "broad discretion to tailor discovery narrowly." Crawford-El v. Britton, 523 U.S. 574, 598 (1998).

However broad or narrow the scope, parties have a continuing duty to produce all information subject to discovery. If a party learns that a prior response is inaccurate or incomplete in some material respect, it must correct or supplement its response. Fed. R. Civ. P. 26(e). This duty is coextensive with and defined by the party's discovery obligations, so only information that "would have been subject to the [original] disclosure requirement" must be produced. Fed. R. Civ. P. 26 advisory committee's note to the 2000 amendment. A court may sanction a party that breaches its duty or direct a party to correct or supplement its disclosures, including with information beyond what Rule 26(e) otherwise requires. Fed. R. Civ. P. 26(e); Wright & Miller, supra, § 2049.1.

## ANALYSIS

DIB did not breach its Rule 26(e) duty to supplement its discovery responses because it fully discharged its obligations under the Court's discovery order. The Court ordered DIB to search its legacy database for 629 search terms and produce related account information. ECF No. 4046 at 12. DIB said that it would do so using the "exact match" methodology it had used from the beginning. See ECF No. 3253 at 59:10–11. Both the parties and the Court understood

4

the problems with this method—an exact match search would not return accounts held by individuals under aliases or alternate spellings—and the PECs did not object. Id. at 59–60. In fact, to mitigate against the flaws in the exact match method, DIB encouraged the PECs to identify alternate spellings of names or entities, and the PECs did. See ECF No. 8539-4 at 6 ("'DIB also suggested [and] . . . Plaintiffs agreed to provide for DIB's consideration a proposed list of additional search terms, including terms in Arabic and alternate spellings of terms.'" (quoting correspondence between DIB counsel and the PECs)). DIB searched for those terms and produced what it found; the PECs do not claim otherwise. See ECF No. 8505.

Instead, the PECs attempt to use Rule 26(e) to expand the scope of discovery. They ask for six new categories of information without connecting the records they seek to DIB's preexisting discovery obligations—the very heart of a Rule 26(e) request. See Apple Inc. v. Wi-LAN Inc., No. 14-cv-2235 (DMS)(BLM), 2019 WL 4253833, at *3 (S.D. Cal. Jul. 22, 2019) (granting Rule 26(e) motion where party "identified the information they are requesting as well as the corresponding RFPs that cover the requested information"). The PECs point to no account matching a search term for which DIB failed to produce account records, nor any part of the Court's discovery order with which DIB has failed to comply. Their requested relief makes it plain—the PECs' motion is divorced from DIB's discovery obligations, and consequently from Rule 26(e)'s authority.

**First**, the PECs ask for letters of credit in favor of bin Laden, his businesses, and Tayyib. ECF No. 8505 at 5. But DIB has already searched for letters of credit associated with the 629 search terms and found nothing. ECF NO. 8539 at 4 (explaining that only DIB customers can open letters of credit and, of the "OBL Parties," "[o]nly Tayyib was a customer—and he did not

5

open any letters of credit"). Any letters associated with other accounts do not fall under the Court's order, so Rule 26(e) does not support the PECs' first request.

**Second**, the PECs request "records concerning cooperation between DIB Chairman Saeed Ahmed Lootah and/or his businesses and bin Laden's companies." ECF No. 8505 at 5. At the PECs' direction, DIB searched its databases for "Saeed Ahmad Lootah," "Usama bin Laden," and several of bin Laden's businesses—"Wadi al Aqiq Company, Ltd.," "Al Hijrah Construction and Development," "Taba Investment Company, Ltd.," "Al Timar al Mubarikah," "Gum Arabic Company," "Bin Ladin International," "Al Qudarat Transport Company," and "Blessed Fruits Company." ECF No. 8507-1 at 18, 21, 22, 29. The PECs claim that DIB's production was deficient as to these entities, but their only evidence is the CIA's broad statements that bin Laden and his Sudanese companies "maintain[ed] several accounts at DIB," ECF No. 8507-7 at 5, and "opened . . . letters of credit at [DIB] with the active help of DIB Chairman Sa'id Ahmed Lootah," ECF No. 8507-8 at 10. See also ECF Nos. 8507-7 at 18 (describing accounts), 30 (describing letters of credit); 8507-9 at 8 (same); 8507-10 at 23 (describing accounts). These statements do not demonstrate that DIB failed to comply with its obligation to search the PECs' terms and produce associated documents. Rather, they are consistent with the parties' understanding that DIB accounts were held in various names, not all of which the parties could identify and search pursuant to the Court's order. See ECF Nos. 3253 at 24:17–20 ("There are multiples of ways, indeed dozens in many cases, of ways of spelling Osama Bin Laden alone. So, how is it that we even conduct this search of our account records?"), 4046 at 9 (rejecting the PECs' interpretation that would require DIB to search "an unlimited number of alternative spellings and aliases"). As such, the PECs' second request covers information DIB has already produced and fails under Rule 26(e).

6

**Third**, the PECs seek "records concerning DIB's relationship with Hisham Ishan Koprulu or Koprulu Trading Company." ECF No. 8505 at 5. But the PECs did not pursue account information from Koprulu or his companies, and DIB was therefore not required to turn over such information under the Court's order. See ECF No. 8507-1 (listing PEC search terms, not including "Koprulu"). The PECs' third request is likewise not grounded in any duty to supplement under Rule 26(e).

**Fourth**, the PECs ask for "records concerning the relationships between Chairman Lootah and his businesses and (1) bin Laden or his Sudanese Businesses; (2) Saidi Madani al Tayyib (a/k/a Abu Khalifa al Omani) and companies associated with him; (3) Hassan al Turabi or the NIF; and (4) Hisham Ihsan Koprulu or his companies." ECF No. 8505 at 5. Taking each in turn, none requires supplementation under Rule 26(e). First, DIB has already conducted searches related to Lootah, bin Laden, and his businesses, and the CIA's generic descriptions of relationships between those individuals and entities does not undercut DIB's assertions that it has produced everything it was ordered to search. Supra at 6. Second, DIB has already produced account information for Tayyib, and the PECs point to no evidence that its production was incomplete. ECF No. 8539 at 4. Third, the PECs declined to include Hassan al Turabi or the NIF on their list of search terms, so DIB was never obligated to produce records related to their accounts. See ECF No. 8507-1 (listing PEC search terms, not including "Turabi" or the "NIF"). Fourth, the PECs likewise neglected to pursue Koprulu and his company. See ECF No. 8507-1 (same as to "Koprulu"). This request thus identifies only records that DIB has already produced or those it was never required to, and Rule 26(e) does not apply.

**Fifth**, the PECs request "records concerning DIB Board Member Sheikh Yousif Jassim al Haji" ("Haji"). ECF No. 8505 at 5. Again, the PECs failed to include Haji in its search term list,

7

so DIB was under no obligation to produce associated records and is not required to supplement them now. See ECF No. 8507-1 (listing PEC search terms, not including "Haji").

**Sixth**, the PECs ask for account information for Ali. The PECs included his name as a search term, but his account was apparently listed under a different spelling. Compare ECF No. 8507-1 at 30 (listing "Sulaiman al Ali" as a search term), with ECF No. 8507-3 (identifying DIB account held by "Sulaiman El Ali"). Because DIB was required to produce information associated only with the PECs' search term, Rule 26(e) does not require it to supplement its responses with documents related to Ali's CIA-identified account.

With no evidence that DIB failed to produce information covered by the discovery order, the Court finds that DIB has not breached its duty under Rule 26(e). At its heart, the PECs' motion seeks information that goes beyond the scope of the Court's prior order directing DIB to query 629 search terms. Granting the PECs' broadest requests "would require reopening discovery" between parties that have already hotly litigated its terms and would "amount[] to an end-run around this Court's" previous orders limiting the number of search terms. Muslow v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll., No. 19-cv-11793 (BWA)(DPC), 2022 WL 457467, at *2 (E.D. La. Feb. 15, 2022) (rejecting plaintiffs' Rule 26(e) request as improper). Rule 26(e) is not the proper vehicle for such relief, and the Court is skeptical that the PECs could show the required "good cause" on a motion to reopen. See Gray v. Town of Darien, 927 F.2d 69, 74 (2d Cir. 1991).

The Court will, however, exercise its authority under Rule 26(e)(1)(B) to order DIB to produce information associated with Ali's CIA-identified account. Rule 26(e)(1)(B) permits courts to extend a party's duty to supplement beyond that required by the Rule itself. Wright & Miller, supra, § 2049.1. Relief is warranted here because, but for a single-letter difference

8

between the PECs' search term and the account name, Ali's account information would be covered by the Court's discovery order. <u>Compare</u> ECF No. 8507-1 at 30 (listing "Sulaiman al Ali" as a search term), <u>with</u> ECF No. 8507-3 (identifying DIB account held by "Sulaiman El Ali"). The PECs did not sleep on their rights, they simply chose the wrong spelling. And directing DIB to produce Ali's account information does not trigger the burdensomeness concerns that led the Court to limit the parties' search-term list to begin with. DIB has Ali's account number and can pull the associated information with a single search. <u>See</u> 8507-3.1 (listing account number). The Court therefore orders DIB to produce opening and closing account documents, periodic statements, and other electronic information for the account identified as belonging to "Sulaiman El Ali" in the declassified CIA documents.

## CONCLUSION

The PECs' motion to compel is GRANTED in part and DENIED in part. Dubai Islamic Bank is ORDERED to search its legacy account database using the account number associated with Ali in the declassified CIA documents and produce any opening and closing statements, periodic statements, and any other electronic information for that account, within two weeks of this order. The Clerk of the Court is respectfully directed to terminate the motion to compel at ECF No. 8505. This Opinion and Order shall be SEALED with access restricted to the Plaintiffs' Executive Committees, Dubai Islamic Bank, and the Federal Bureau of Investigation. The parties shall make any requests to redact material in this Opinion and Order by November 14, 2022.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:	November 7, 2022
	New York, New York

9