UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |
|---|---|

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army*, et al., 02-cv-6977 (GBD)(SN) (and member case *Burlingame v. Bin Laden, et al.,* 02-cv-7230 (GBD)(SN))

### *Burlingame III* Plaintiffs' Motion for Final Judgments Against the Taliban

For the reasons set forth below, the statements contained in the declaration of Frank H. Granito, III, Esq. ("Granito Declaration") and the record in this case, those plaintiffs in the above-captioned *Burlingame* matter, a subset of the *Ashton* plaintiffs, who are represented by Speiser Krause, PC, and are listed in the exhibits to the Granito Declaration ("*Burlingame III* Plaintiffs") respectfully move for an Order for final judgments for their losses and injuries arising out of the injuries and deaths of those individuals listed in the exhibits, all of whom were murdered or seriously injured in the September 11, 2001 Terrorist Attacks. They previously obtained a default liability judgment against, among others, the Taliban and now move for damages. They seek an Order:

1.   Awarding each estate of the individuals killed in the September 11 Terrorist Attacks listed in Exhibit A-1 to the Granito Declaration (the "*Burlingame* 9/11 Decedents") damages for conscious pain and suffering against the *Taliban* in the amount of $2,000,000 per decedent, which is the same amount this Court previously awarded to them;

2.   Awarding each estate of the *Burlingame* 9/11 Decedents listed in Exhibits A-1 to the Granito Declaration damages for economic loss against the *Taliban* based on the same amounts that this Court awarded to those estates;

1

3. Awarding each of the immediate family members of the *Burlingame* 9/11 Decedents listed in Exhibits A-1 and A-2, solatium damages in the same amounts that this Court has previously awarded to those immediate family members;

4. Awarding those *Burlingame III* Plaintiffs identified on Exhibit A-1 who have asserted claims under the Anti-Terrorism Act, 18 U.S.C. § 2333, treble damages;

5. Awarding these plaintiffs pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

6. Granting the *Burlingame III* Plaintiffs permission to seek punitive damages, economic damages, to the extent not sought herein, and other appropriate damages at a later date; and

7. Granting permission for all other plaintiffs in this action not appearing on the exhibits to the Granito Declaration to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

As the awards set forth in the proposed order represent the only direct recovery for the damages claimed herein by these *Burlingame III* Plaintiffs against the Taliban Defendants, the proposed order would constitute final awards and judgments against the Taliban Defendants for the *Burlingame III* Plaintiffs.

**I.     Procedural Background**

On September 10, 2002, the *Burlingame* Plaintiffs filed their first complaint against the alleged sponsors of the September 11, 2001 terrorist attacks, which included claims against defendants al Qaeda Islamic Army, the Taliban, and Muhammad Omar, among others. See 02-cv-7230 (S.D.N.Y.) ECF 1. The *Burlingame* (02-cv-7230) and *Ashton* (02-cv-6977) matters were Ordered consolidated for liability purposes and mandated to proceed under the Ashton, et al. v. al Qaeda

Islamic Army, et al. (hereinafter "*Ashton*") master docket number 02-cv-6977, with the filing of a consolidated master complaint, and attorney James Kreindler was appointed Liaison Counsel for the consolidated actions within the Ashton master complaint. See 02-cv-6977, Doc. No. 5, Entered 11/19/2002. The *Burlingame* plaintiffs remain segregated within all consolidated *Ashton* filings and are identified therein according to their separate docket number and counsel. See, e.g., 02-cv-6977, Doc. No. 465, filed 03/30/2005. The master complaint was amended several times. See, e.g., 02-cv-6977 (S.D.N.Y.) ECF 2, 11, 32, 38, 111, 465.[1] The Ashton plaintiffs (including the *Burlingame III* plaintiffs) amended their Sixth Amended Complaint to add additional plaintiffs and to clarify pleadings for multiple-capacity claims. See, e.g., 02-cv-6977 (S.D.N.Y.) ECF 1837, 1839, 1842. In granting these amendments, the Court Ordered that "prior rulings, orders, and judgments entered in this case remain in effect as to all parties," and, further, that "service on the Taliban is not required as a result of these amendments." *Id*.

In their complaints, the *Ashton* Plaintiffs (including the *Burlingame III* plaintiffs listed on Exhibits (A-1 and A-2), both United States nationals and non-nationals, asserted federal jurisdiction against the Taliban Defendants pursuant to, among other provisions, the Alien Tort Statute (28 U.S.C. § 1350) ("ATS"), the Foreign Sovereign Immunities Act (28 U.S.C. §§ 1605(a)(5) and (a)(7)) ("FSIA") and the Torture Victim Protection Act (28 U.S.C. § 1350 note) ("TVPA"), and made claims for damages against those defendants under those provisions as well as under the Anti-Terrorism Act (Anti-Terrorism Act (18 U.S.C. § 2333) ("ATA") and state law for the deaths, injuries and losses suffered in the September 11th Terrorist Attacks. *Ashton v. al*

---

[1] References to MDL docket entries found at 03-md-1570 (S.D.N.Y.) are noted only by ECF number; references to individual civil case docket entries are preceded by the case number.

*Qaeda et al.*, 02-cv-6977, ECF 465 at ¶¶ 2-3, 10-12, 464-466, 469-70, 473-74, 477-78, 481-82, 486-89.

The causes of action asserted against the Taliban Defendants, among others, were based on state law (Counts One through Three), the Anti-Terrorism Act, 18 U.S.C. § 2333 ("ATA") (Count Four) and the Torture Victim Protection Act (Count Five). *See, e.g.* 02-cv-6977, ECF 465 at ¶¶ 464-466, 469-70, 473-74, 477-78, 481-82, 486-89. Under the Anti-Terrorism Act, only a plaintiff who is a "national of the United States injured … by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue … and shall recover threefold the damages he or she sustains … ." 18 U.S.C. § 2333(a).

Included in these counts were claims for wrongful death damages (economic loss and pain and suffering, among other things), personal injuries (both physical and mental), and solatium losses (along with loss of consortium, loss of support, loss of society and companionship, loss of parental care and guidance, and more). *Id.*

This Court issued an Order authorizing service of process by publication on certain defendants, including the Taliban Defendants. ECF 445 at 1, 8, 11. The *Ashton* Plaintiffs (including the *Burlingame III* plaintiffs listed on Exhibits A-1 and A-2), and others, served the Taliban Defendants by publication with verification of publication filed on March 16, 2005 and March 31, 2005. ECF 709, 735; Granito Decl. at ¶ 5.[2] The Taliban Defendants never answered

---

[2] The publication notices directed the named defendants to the MDL docket and advised them in both English and Arabic that they were required to answer the complaints on that docket, which sought, among other things, compensatory, treble and punitive damages, within 60 days. ECF 709 at 2; 735 at 2. The jurisdictional and factual allegations against the Taliban Defendants as set forth in the operative complaint at the time of service did not change in subsequent amendments. *Compare* 02-cv-6977 (S.D.N.Y.) (*Ashton* Consolidated Master Complaint, Filed 03/06/2003), ECF 11 at ¶¶ 2, 10-12, 112-14, 178-79, 600, 602-03, 605-06, 608-09, 610-12, 615-19 *with* 02-cv-6977 (S.D.N.Y.) (Sixth Amended Complaint, Filed 09/03/2005) ECF 465 at ¶¶ 2, 10-12, 78-79, 123-25, 464-66, 469-70, 473-74, 477-78, 481-82. As discussed *supra*, the recently ordered amendments which added plaintiffs and clarified the capacities of previously named plaintiffs,

and the *Ashton* Plaintiffs (including the *Burlingame III* plaintiffs listed on Exhibits A-1 and A-2) thereafter moved for a Certificate of Default and a default judgment, which this Court granted on May 12, 2006. ECF 1782 *et seq.*, 1797 (referring to the defendants listed in Exhibit B to the *Ashton* Plaintiffs motion, including the Taliban Defendants); Granito Decl. at ¶ 5 and Exhibits B and C (listing the plaintiffs and defendants for and against whom, respectively, a default liability judgment was sought). This Court entered a default liability judgment on May 12, 2006, stating that it applied to all claims, plaintiffs and defendants up to and through the Sixth Amended Complaint. ECF 1797. In granting the Ashton plaintiffs' (including the *Burlingame III* plaintiffs') recent amendments to their Sixth Amended Complaint to add additional plaintiffs and to clarify multiple-capacity claims, the Court Ordered that "prior rulings, orders, and judgments entered in this case remain in effect as to all parties." See, e.g., 02-cv-6977 (S.D.N.Y.) ECF 1837, 1839, 1842.

Previously, in connection with their claims against the Islamic Republic of Iran ("Iran"), another defendant in the complaints naming the Taliban Defendants, this Court granted the *Ashton* Plaintiffs (including the *Burlingame III* plaintiffs listed on Exhibits A-1 and A-2) a default liability judgment. ECF 3021. Thereafter, in connection with the damages assertions set forth in the *Ashton* complaints, in a series of orders this Court issued final damages judgments against Iran, granting the *Burlingame* Plaintiffs' motions for:

- Compensatory damages for the conscious pain and suffering of the *Ashton* and *Burlingame* 9/11 Decedents (*e.g.*, ECF 3226, 3229);

- Economic damages for the estates of the *Burlingame* 9/11 Decedents *(e.g.,* ECF 5857), which damages claims were supported by the expert analysis, reports or other economic loss calculations that the *Burlingame* Plaintiffs previously filed with this Court. (*See, e.g.,* ECF 5486-2);

---

directed that further service was not required. See, e.g., 02-cv-6977 (S.D.N.Y.) ECF 1837, 1839, 1842.

- Compensatory damages for the pain and suffering of the *Burlingame* personal injury Plaintiffs who suffered severe and permanent physical injuries at the World Trade Center or Pentagon on September 11th (e.g., ECF 5954; 5971); and

- Solatium damages for the immediate family members (and their functional equivalents) of the *Burlingame* 9/11 Decedents (*e.g.* ECF 3987, 4087, 4156, 4707, 5058, 5453, 5974).

The *Burlingame III* Plaintiffs listed in the Exhibits to the Granito Declaration now move this Court to grant the proposed Order awarding them damages for, as noted on those exhibits, conscious pain and suffering, economic loss and solatium losses arising out of the deaths of those individuals killed in the September 11 Terrorist Attacks in the same amounts as awarded previously to them. Granito Decl. at ¶¶ 10-15.  They also seek treble damages under the Anti-Terrorism Act for United States nationals whose claim for such damages this Court has jurisdiction to consider (*see* 18 U.S.C. § 2333(a) and Granito Declaration Exhibit A-1) and directing that pre-judgment interest be assessed at 4.96 percent per annum.

The *Burlingame III* Plaintiffs are set forth in the exhibits as follows:

- Exhibit A-1 (U.S. nationals), asserting damages claims for the estates of those individuals killed in the Sept. 11 Terrorist Attacks; and

- Exhibit A-1 (U.S. nationals) and A-2 (non-U.S. nationals or nationality unconfirmed), asserting claims for solatium damages of those immediate family members listed in the Sixth Amended Complaint (and also later added to the Sixth Amended Complaint in *Ashton* via Notice of Motion to Add Additional Plaintiffs to its Sixth Amended Complaint Against the Taliban).

The *Burlingame* Plaintiffs also ask for permission to continue to submit applications in subsequent stages on behalf of those claimants not included in the attached exhibits, should any other applications be warranted.

**II.    Damages**

The *Ashton* Plaintiffs (including the *Burlingame III* Plaintiffs listed on Exhibit A-1) claimed jurisdiction and damages, as relevant here, pursuant to the ATA's civil damages provision,

6

the TVPA, the FSIA and state law. *See, e.g.,* 02-cv-6977 (S.D.N.Y.), ECF 465 at ¶¶ 463-90. They sought treble damages under the ATA, which applies to claims brought by United States nationals. 02-cv-6977 (S.D.N.Y.), ECF 465 at ¶ 479, 242.

According to the caselaw governing terrorism litigation, the "those who survived the attack can recover damages for their pain and suffering, as well as any other economic losses caused by their injuries; estates of those who did not survive can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." *Valore v. Islamic Republic of Iran*, 700 F.Supp.2d 52, 83 (D.D.C. 2010) (concerning damages under FSIA); *Ests. of Ungar ex rel. Strachman v. Palestinian Auth.,* 304 F. Supp. 2d 232, 267 (D.R.I. 2004) (finding that under ATA plaintiffs can recover "both pecuniary damages … and also for non-economic damages, including loss of companionship, society, and mental anguish experienced by the victim's surviving family members, including his siblings … ."); *see also Miller v. Arab Bank, PLC,* 372 F. Supp. 3d 33, 41 (E.D.N.Y. 2019) (ruling that plaintiffs were entitled to solatium damages under the ATA); *Lelchook v. Commerzbank AG*, 2011 WL 4087448, at *2 (S.D.N.Y. Aug. 2, 2011) (allowing plaintiffs to pursue claims for solatium damages is consistent with Congress's incorporation of traditional tort-law principles, under which such damages are available, into the ATA.); *Smith ex rel. Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 240 (S.D.N.Y. 2003) (while punitive damages are not available under ATA, its civil action provision "provides for treble damages"). And of course, the injured can recover damages "for personal injury," 28 U.S.C. § 1605A(a)(1) and (c)(4), including "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c)(4). The award of damages for physical injuries "assume[s] severe psychological injuries." *Schertzman Cohen v. Islamic Republic of Iran*, No. 17-CV-1214 (JEB),

2019 WL 3037868, at *6 (D.D.C. July 11, 2019) (citing Wamai v. Republic of Sudan, 60 F. Supp. 3d 84, 92-93 (D.D.C. 2014); ECF 5879.

Though a claim under the FSIA is available only to a "claimant or … victim [who] was … a national of the United States; a member of the armed forces; or otherwise an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment," and the same is true with respect to the ATA, under the Alien Tort Statute, which was another source of jurisdiction the *Ashton* Plaintiffs asserted, district courts have authority to hear claims brought against non-sovereign defendants by both U.S. nationals and non-U.S. nationals. *See* 28 U.S.C. § 1350. Further, the ATA (for U.S. nationals) and state law remedies (for U.S. nationals and non-U.S. nationals) also provide remedies against a non-sovereign defendant for those killed or injured in an attack in the United States.

### A. Economic Damages

Economic damages are specifically contemplated in terrorism litigation, whether under the FSIA, the ATA, state law or otherwise. The economic damages provision is "designed to compensate [a] decedent's heirs-at-law for economic losses which result from [the] decedent's premature death." *Flatow v. Islamic Republic of Iran,* 999 F. Supp. 1, 27 (D.D.C. 1998); *see also Ungar*, 304 F.Supp.2d at 264-65 (its legislative history "indicates that the ATA was to be construed broadly" and giving weight to its co-sponsor's statement that the ATA "'empowers victims with all the weapons available in civil litigation,'" suggesting "that Congress intended that the full range of damages should be available to persons entitled to bring actions pursuant to § 2333(a).") (emphasis in original). Accordingly, "the beneficiaries of each decedent's estate [are] … entitled to recover the present value of economic damages, including lost wages that the decedents might reasonably have been expected to earn but for their wrongful deaths." *Valore,* 700 F. Supp. 2d at

81-82, citing *Heiser v. Islamic Republic of Iran,* 466 F.Supp.2d 229 (D.D.C. 2006.) Thus, sponsors of terrorist attacks that kill victims are routinely "liable for the economic damages caused to decedents' estates." *Roth v. Islamic Republic of Iran,* 78 F. Supp. 3d 379, 399-400 (D.D.C. 2015), quoting *Valore,* 700 F.Supp.2d at 78.

Certain *Burlingame III* Plaintiffs set forth in Exhibit A-1 are representatives of estates of victims who were murdered on September 11, 2001 (*Burlingame* 9/11 Decedents) and claims on behalf of the *Burlingame* 9/11 Decedents are asserted by those estate representatives. Granito Decl. at ¶ 8. As liability has been established against the Taliban Defendants, those moving plaintiffs now seek a final order of damages in the amounts set forth on Exhibit A-1.

Previously, this Court awarded economic damages against co-tortfeasor Iran for the "economic losses stemming from the wrongful death of the decedent[.]" ECF No. 2623 at 2-3. In doing so, it adopted the economic loss calculations set forth in the plaintiffs' economic expert reports. Granito Decl. at ¶ 11; *see also* ECF 5486-2 (updated reports supporting economic loss motions). For those *Burlingame* 9/11 Decedents on Exhibit A-1 for whom economic damages are sought, the economic loss amount was calculated based on updated, present-value figures of either the economic damages previously provided by an economic expert or generated by the September 11 Victim Compensation Fund ("VCF") and this Court previously found that those economic damages amounts were proper. Granito Decl. at ¶ 11; *see also* ECF 5857 (orders crediting those reports).

Accordingly, the *Burlingame III* Plaintiffs now respectfully request that this Court order economic loss awards to those the estates listed in Exhibit A-1 (trebled pursuant to the ATA for U.S. nationals) in the amounts set forth therein.

**B. Conscious Pain and Suffering**

Certain plaintiffs identified in Exhibit A-1 are estates of *Burlingame* 9/11 Decedents, who

9

were murdered in the September 11, 2001 terrorist attacks and who all experienced the agonizing suffering prior to their deaths that has previously formed the basis of pain and suffering damages awards. Granito Decl. at ¶¶ 8-9; ECF 2618 at 7 – 9. This Court has previously assessed claims for the extraordinary conscious pain and suffering experienced by those who lost their lives or were physically injured on September 11, 2001, including for those *Burlingame* 9/11 Decedents identified on Exhibit A-1. ECF Nos. 2618 at 7 – 9. Accordingly, the *Burlingame III* Plaintiffs now respectfully request that this Court grant those *Burlingame* 9/11 Decedents whose estates are set forth in Exhibit A-1 total compensatory damages judgment that reflects the previously awarded $2,000,000 for each 9/11 Decedent, with that amount trebled pursuant to the ATA for the estates of U.S. nationals listed in Exhibit A-1. That total final damages amount for each *Burlingame* 9/11 Decedent is listed in Exhibit A-1.

### C. Solatium Damages

"Acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22. Reflecting the nature of terrorist attacks, which are intended to cause emotional damages to those closest to the physically injured party, family members of the decedents may recover for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort." *Dammarell v. Islamic Republic of Iran*, 281 F. Supp. 2d 105, 196 (D.D.C. 2003) (solatium damages available under FSIA), *vacated on other grounds*, 404 F. Supp. 2d 261 (D.D.C. 2005); *Ungar*, 304 F.Supp.2 at 264-65 (fullest range of damages should be available to plaintiffs in terrorism litigation, including "all the weapons available in civil litigation"); *Lelchook*, 2011 WL 4087448, at *2 (plaintiffs may " 'pursue claims for solatium [emotional] damages' under the ATA") (brackets in original); *Henkin v. Kuveyt Turk Katilim Bankasi*, 495 F.Supp. 3d 144, 152

10

(E.D.N.Y. 2020) ("[c]ourts permit "[p]laintiffs to pursue claims for solatium [emotional] damages" under the ATA.") *citing Lelchook*, 2011 WL 4087448, at *2.

To this end, "[s]pouses and relative[s] in direct lineal relationships are presumed to suffer damages for mental anguish[.]" *Knox v. Palestine Liberation Org.*, 442 F. Supp. 2d 62, 78 (S.D.N.Y. 2006); *Morris*, 415 F.Supp.2d 1323, 1337 (D.Utah 2006) (holding that "victim's family may recover under § 2333 for the victim's lost wages and pain and suffering, and for the victim's wife and children's loss of companionship, society, and guidance, and mental anguish); *Ungar*, 304 F. Supp 2d at 267 (holding plaintiffs entitled under § 2333 to economic and non-economic damages, including loss of companionship and society, and mental anguish experienced by the victim's surviving family members).

Solatium claims have been treated as comparable to claims for intentional infliction of emotional distress, in which the immediate family members of the decedent are treated as direct victims. *See, e.g., Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 115 n.12 (D.D.C. 2005)( "[c]ourts have uniformly held that a terrorist attack—by its nature—is directed not only at the victims but also at the victims' families."); *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (treating solatium claim as "'indistinguishable' from the claim of intentional infliction of emotional distress.") (quoting *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001)).  Thus, this Court has previously awarded solatium damages to "immediate family members" – that is, the spouses, children, parents and siblings of those killed in the September 11, 2001 Terrorist Attacks (or their functional equivalents), ECF 3363 – who, though not physically present at the site of the terrorist attacks, were nevertheless intended victims of the terrorist activities. *See e.g.* ECF 3987, 4087, 4156, 4707, 5058, 5453, 5974. The four established categories of family relationships – spouses, parents, children and siblings – do not require any additional showing of the nature of the underlying relationship.

11

To fashion a solatium award adequately compensating the surviving family members in the litigation when issuing solatium damages as against defendant Iran, this Court looked to the analysis undertaken by District Court Judge Royce Lambert in the *Heiser* case. 466 F. Supp. 2d 229.  There, Judge Lamberth concluded that solatium damages should be awarded to each spouse of a deceased victim in the amount of $8 million, to each parent in the amount of $5 million, and to each sibling in the amount of $2.5 million.  *Id*.

Recognizing that the immediate family members of those killed in the September 11 terrorist attacks suffered and continue to suffer "profound agony and grief and, "[w]orse yet, … are faced with frequent reminders of the events of that day," ECF 2618 at 10 – 12, this Court adopted the following solatium damages framework:

| Relationship to Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

The losses claimed in this motion are identical to those that this Court ordered in connection with the final judgment against Iran.  The amount of solatium damages previously adopted in the judgments against Iran should apply equally to the Taliban Defendants.

The relationships between the decedent and the *Burlingame III* Plaintiffs are set forth in Exhibits A-1 and A-2 accompanying the Granito Declaration.  The *Burlingame III* Plaintiffs have direct relationships previously recognized as being presumptively qualified for solatium damages; the relationships between the *Burlingame III* Plaintiffs and the immediate family members killed in the September 11, 2001 terrorist attacks have been verified; the *Burlingame III* Plaintiffs

12

survived the death of their immediate family members on September 11, 2001; the *Burlingame III* Plaintiffs do not have another known claim pending before this Court for compensation against the *Taliban*; the *Burlingame III* Plaintiffs have not recovered against the *Taliban*; the *Burlingame III* Plaintiffs have not come close to satisfying their judgments against Iran; and, this Court previously granted solatium damages in the amounts sought here. Granito Decl. at ¶¶ 13-15.

The plaintiffs in Exhibits A-1 and A-2 are individuals who were identified in a complaint against, among others, the Taliban in the Sixth Amended Complaint (the underlying basis for the liability judgment against those defendants); the Sixth Amended Complaint expressly identified claims for solatium damages; and they are the immediate family members of *Burlingame* 9/11 Decedents. Granito Decl. at ¶ 14.

The *Burlingame III* Plaintiffs therefore respectfully request that this Court issue a final judgment ordering payment of solatium damages to the *Burlingame III* Plaintiffs listed in Exhibits A-1 and A-2, in the amounts set forth in those exhibits.

### D. Treble Damages

As discussed above, for those *Burlingame III* Plaintiffs set forth in Exhibit A-1 who have claims under the Anti-Terrorism Act that this Court has jurisdiction to determine (18 U.S.C. § 2333(a)), they make claims for damages threefold their compensatory damages amounts for pain and suffering and economic loss on behalf of the estates of the *Burlingame* 9/11 Decedents (Exhibit A-1) and solatium damages for their immediate family members (Exhibits A-1).

### E. Punitive Damages

While *Burlingame* Plaintiffs are also entitled to punitive damages, in light of prior differing decisions on the proper punitive multiplier, (*compare*, *e.g.,* ECF 3175 at 3 *with* ECF 3384 at 6) they request permission to address the issue of punitive damages at a later date, as this Court has previously allowed. ECF No. 3666.

### F. Prejudgment Interest

On the issue of prejudgment interest, a December 28, 2015 Report and Recommendation, adopted by this Court, concluded that to the extent the *Ashton* wrongful death plaintiffs' claims arose out of injuries in New York State, the rate of prejudgment interest was 9 percent per annum from September 11, 2001 until the date judgment was entered, and to the extent the injuries arose elsewhere, 4.96 percent interest per annum compounded annually was appropriate. ECF No. 3175 at 1 – 2. Subsequently, however, this Court concluded that the rate of prejudgment interest of 4.96 percent was more appropriate. ECF No. 3384 at 6.

Accordingly, the *Burlingame III* Plaintiffs asks that this Court direct that prejudgment interest of 4.96 percent per annum be awarded on their awards running from September 11, 2001 until the date of judgment, as was done previously done in this consolidated litigation.

### III.   Conclusion

For all of the reasons herein, as well as those set forth in the previous submissions, the *Burlingame III* Plaintiffs respectfully request that this Court grant the proposed order:

1. Awarding each estate of the individuals killed in the September 11 Terrorist Attacks listed in Exhibit A-1 damages for conscious pain and suffering against the Taliban Defendants in the amount of $2,000,000 per decedent, which is the same amount this Court previously awarded to them, with that amount trebled for the estates listed in Exhibit A-1;

2. Awarding the estates of the *Burlingame* 9/11 Decedents damages listed in Exhibit A-1 damages for economic loss against the Taliban Defendants in the same amounts that this Court previously awarded to them, with that amount trebled for the estates listed in Exhibit A-1;

3. Awarding the immediate family members of the *Burlingame* 9/11 Decedents listed in Exhibits A-1 and A-2, solatium damages in the same amounts that this Court has previously awarded to them, with that amount trebled for the plaintiffs listed in A-1;

4.    Awarding these plaintiffs pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

5.    Granting the *Burlingame III* Plaintiffs permission to seek economic damages and punitive damages, to the extent not sought herein, and other appropriate damages at a later date; and

6.    Granting permission for any other *Burlingame* Plaintiffs to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.


Dated: Rye Brook, New York                                  Respectfully submitted,
       November 11, 2022
                                                            SPEISER KRAUSE, PC

                                                            By: /s/ Frank H. Granito
                                                            Frank H. Granito, III, Esq. (FG9760)
                                                            Douglas A. Latto, Esq. (DL3649)
                                                            Jeanne M. O'Grady, Esq. (JO3362)
                                                            Speiser Krause, PC
                                                            800 Westchester Avenue, Suite S-608
                                                            Rye Brook, New York 10573
                                                            Tel: (914) 220-5333
                                                            Fax: (914) 220-5334
                                                            f3g@speiserkrause.com
                                                            dal@speiserkrause.com
                                                            jog@speiserkrause.com
                                                            *Attorneys for the Burlingame Plaintiffs*