**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

*IN RE:* **TERRORIST ATTACKS ON**  :  Civil Action No.
**SEPTEMBER 11, 2001**            :  03 MDL 1570 (GBD) (SN)
                                  :

---

*This document applies to:*

*Grazioso, et al. v. The Taliban, et al.*
1:22-cv-01188 (GBD) (SN)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN
<u>ORDER DIRECTING ALTERNATIVE SERVICE OF PROCESS UPON THE TALIBAN</u>**

1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..........................................................................................................................2

LEGAL STANDARD...................................................................................................................3

ARGUMENT................................................................................................................................5

    I.      The Court Should Authorize Service By Publication Under Rule 4(f)(3).....................5

            A.  Service of Plaintiffs' Second Amended Complaint By Publication…..….5

                  a.      Service by Publication is Appropriate under Rule 4(f)(3)...5

                  b.      Form and Method of Service by Publication……………..6

            B.  Service of Plaintiffs' Second Amended Complaint By Twitter……..…...8

                  a.      Service by Twitter is Appropriate Under Rule 4(f)(3)…….8

                  b.      Form and Method of Service by Twitter…………………..9

            C.  Service of Plaintiffs' Second Amended Complaint to Address Outside Afghanistan………………………………………………………………..10

    II.    *Ex Parte* Adjudication of this Motion Is Proper...........................................................12

CONCLUSION...........................................................................................................................12

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                          **Page(s)**

*Ashton, et al. v. Al Qaeda Islamic, et al.,* No. 02-cv-6977 (S.D.N.Y.)……………..…………..2

*BP Prod. N. Am., Inc. v. Dagra*, 236 F.R.D. 270 (E.D. Va. 2006)……………………..............6

*Burnett v. Al Baraka Investment & Development Corp.*, No. 03-cv-9849 (S.D.N.Y.)……………2

*Commodity Futures Trading Comm'n v. Mikkelsen*, 2021 WL 4207050

    (S.D.N.Y. Aug. 27, 2021)……………………………………………………..…………..4

*Doe v. Bin Laden, et al.*, No. 01-cv-2516 (D.D.C. May 30, 2003)…………………..………6

*Ehrenfeld v. Salim a Bin Mahfouz*, 2005 WL 696769 (S.D.N.Y. Mar. 23, 2005)………..……….8

*Federal Insurance, et al. v. Al Qaida, et al.,* No. 03-cv-6978 (S.D.N.Y.)……………………..1, 2

*Hardin v. Tron Found.*, 2020 WL 5236941 (S.D.N.Y. Sept. 1, 2020)……………………………8

*Hausler v. JP Morgan Chase Bank, N.A.*, 141 F. Supp. 3d 248 (S.D.N.Y. 2015)………………..3

*Havlish, et al. v. bin Laden, et al. (In re Terrorist Attacks on Sept. 11, 2001)*, 03-cv-9848

    (S.D.N.Y. Dec. 22, 2011)………………………………………………….……………1

*Intermeat, Inc. v. Am. Poultry Inc.*, 575 F.2d 1017 (2d Cir. 1978)……………………………..6

*In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423 (S.D.N.Y. 2009)…………………………4

*In re Terrorist Attacks on Sept. 11, 2001*, 2022 WL 1088567 (S.D.N.Y. 2003)……..………*passim*

*John Does 1 through 7 v. The Taliban, et al.*, No. 20-cv-00605 (N.D. Tex. June 17, 2020)……..6

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950)…………………..………..5

*NYKCool A.B. v. Pac. Int'l Servs.*, Inc., 66 F. Supp. 3d 385, 391 (S.D.N.Y. 2014)………………8

*Owens, et al., v. The Taliban*, No. 22-cv-1949 (S.D.N.Y.)………………………………....11

*SEC v. Anticevic*, 2009 WL 361739 (S.D.N.Y. Feb. 13, 2009)……………………………...5, 6

*S.E.C. v. Tome*, 833 F.2d 1086 (2d Cir. 1987)……………………………………………………….5

*Sirius XM Radio Inc. v. Aura Multimedia Corp.*, 339 F.R.D. 592, 593 (S.D.N.Y. 2021)……...…8

*Strange v. Islamic Republic of Iran*, No. 14- cv-435 (D.D.C. Nov. 12, 2014)……………………6

*Tower v. Adoption Partners, Inc.*, 2009 WL 10670568 (M.D. Fla. Nov. 20, 2009)……………..6

*Unitrans Int'l, Inc. v. Gulf & Orient S.S. Lines, Inc.*, 2002 WL 1205744

    (S.D.N.Y. Mar. 6, 2002)………………………………………………………………12

*Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210 (S.D.N.Y. 2021)……………………………………4


**Other Authorities**                                                                                                      **Page(s)**

Afghanistan, CIA World Factbook……………………………………………………...........7

Foreign Sovereign Immunities Act, 28 U.S.C. § 1608(b)………………………………………...6


**Rules**                                                                                                                       **Page(s)**

Fed. R. Civ. P. 4(f)……………………………………………………………………………3-7

Fed. R. Civ. P. 4(f)(2)………………………………………………………………………….....5

Fed. R. Civ. P. 4(f)(3)…………………………………………………………………………..3, 4, 6

Fed. R. Civ. P. Rule 4(h)(2)……………………………………………………………………….3

Local Rule 6.1(d)………………………………………………………………………………..4, 12

NY CPLR Rule 315……………………………………………………………………………....6, 7

NY CPLR Rule 316..……………………………………………………………………………...7

**PRELIMINARY STATEMENT**

The *Grazioso* Plaintiffs respectfully submit this memorandum of law in support of their motion for an order directing alternative service of process on Defendant the Islamic Emirate of Afghanistan, aka the Taliban ("Taliban").

On February 15, 2022, the *Grazioso* Plaintiffs filed a complaint in this Court against, *inter alia*, the Islamic Emirate of Afghanistan, *aka*, the Taliban (*Grazioso* Dkt. No. 6). A statement of relatedness to the *In Re: Terrorist Attacks on September 11, 2001* multi-district litigation was also filed on February 15, 2022 (*Grazioso* Dkt. No. 8) and was accepted on February 16, 2022. With leave of Court (MDL Dkt. No. 8426), Plaintiffs filed a Second Amended Complaint on August 23, 2022 (*Grazioso* Dkt. No. 29; MDL Dkt. No. 8428) against multiple defendants, including the Taliban, and were issued an amended summons on August 25, 2022 (*Grazioso* Dkt. No. 31; MDL Dkt. No. 8450).[1]

Pursuant to Rule 4(f)(3), the *Grazioso* Plaintiffs now seek permission to serve Defendant the Taliban with the pleadings and related documents by publication in newspapers of general circulation worldwide, namely *AL-QUDS AL-ARABI* and THE NEW YORK TIMES (both the U.S. and international editions), as well as service via Twitter and through delivery of the pleadings to an alternative embassy address outside of Afghanistan. These proposed means of service are most likely to give notice to Defendant the Taliban of the *Grazioso* Plaintiffs' pleadings. No other

---

[1] After the *Grazioso* Plaintiffs filed their Second Amended Complaint, the issue of one of the original *Grazioso* defendants, Muhammad Omar, was raised by the Court on September 9, 2022. MDL Dkt. No. 8515 ("The Taliban remains active, but by all available accounts Muhammad Omar has been dead since at least 2015 and likely died sometime in 2013."). The Plaintiffs' Executive Committees agreed with the Court's assessment that Muhammad Omar is dead and stated that they do not intend to move to substitute another party for him. MDL Dkt. No. 8535. The Court subsequently recommended that Omar be dismissed with prejudice from all actions in this multidistrict litigation pursuant to Federal Rule of Civil Procedure 25(a)(1) and that his dismissal not otherwise affect pending motions for default against the Taliban. MDL Dkt. No. 8540, dated September 19, 2022. The *Grazioso* Plaintiffs recognize that Muhammad Omar is dismissed, however, without express direction from the Court to do so, have not altered the Second Amended Complaint that is to be served by publication.

practicable means are available for serving the pleadings on the Taliban – a designated terrorist entity without any known address – and because delivery of mail and packages to the land known as Afghanistan is unavailable at the present time due to the dangerous situation there.

Indeed, in this MDL litigation, this Court has repeatedly approved of service of process by publication upon the Taliban. *See Havlish, et al. v. bin Laden, et al.*, 03-cv-1570 (GBD)(FM), Opinion and Order, dated April 5, 2022, *Havlish* Dkt. 614, MDL Dkt. No. 7830;[2] *Federal Insurance, et al. v. Al Qaida, et al.,* No. 03-cv-6978 (S.D.N.Y.) (alternative service granted, May 4, 2022) Dkt. 1113, MDL Dkt. No. 7946; (certificate of alternative service completed, dated June 7, 2022), Dkt. No. 1133; *Havlish v. bin Laden, et al.*, 2011 U.S. Dist. LEXIS 155899, at *192 (S.D.N.Y. Dec. 22, 2011) (noting that the Taliban was served by publication), MDL Dkt. No. 2515 at 48; *see also* MDL Dkt. No. 445 (Judge Casey's September 16, 2004 order approving service by publication on, *inter alia*, the Taliban in *Ashton, et al. v. Al Qaeda Islamic, et al.,* No. 02-cv-6977 (S.D.N.Y.); *Burnett v. Al Baraka Investment & Development Corp*., No. 03-cv-9849 (S.D.N.Y.); and *Federal Insurance, et al. v. Al Qaida, et al.,* No. 03-cv-6978 (S.D.N.Y.); MDL Dkt. No. 468 (Judge Casey's September 30, 2004 order allowing "all parties in MDL 1570 to join the [service by] publication Order").

This Court should authorize such alternative service for the *Grazioso* Plaintiffs upon Defendant the Taliban. As explained below, and out of an abundance of caution, the *Grazioso* Plaintiffs seek leave of Court to pursue several alternative methods of service upon the Taliban.

---

[2] The *Havlish* case involves many of the same lawyers, as well as the same causes of action against those Defendants that are in *Grazioso*, including *Grazioso* Defendant the Taliban.

## BACKGROUND

The factual and procedural background of this action is documented in the *Grazioso* Plaintiffs' Second Amended Complaint, filed August 23, 2022 (*Grazioso* Dkt. No. 29; MDL Dkt. No. 8428), which Plaintiffs incorporate by reference.

At present, no major international courier service is providing mail service to Afghanistan. United States Mail is not delivering packages to Afghanistan at the current time. *See* accompanying Declaration of Timothy B. Fleming ("Fleming Decl."), ¶ 9 and **EXHIBIT D**. The United Parcel Service is not delivering packages to Afghanistan at the current time. *See id.*, ¶ 8 and **EXHIBIT C**. Federal Express is not delivering packages to Afghanistan at the current time. *See id.*, ¶ 6 and **EXHIBIT A**. DHL International Couriers are not delivering packages to Afghanistan at the current time. *See id.*, ¶ 7 and **EXHIBIT B**.

Because no other practicable means are available for serving papers on the Taliban, and to enhance the likelihood that Defendant the Taliban will receive actual notice of the Second Amended Complaint, the *Grazioso* Plaintiffs seek permission to supplement their service by publication by also serving their Second Amended Complaint on the Taliban by Twitter and by delivery to an alternate address outside of Afghanistan. *See* Fed. R. Civ. P. 4(f)(3).

## LEGAL STANDARD

Rule 4 of the Federal Rules of Civil Procedure governs the procedures for service of process. Pursuant to Fed. R. Civ. P. 4(f)(3), the *Grazioso* Plaintiffs request an order authorizing service of their Second Amended Complaint and amended summons upon Defendant the Taliban by Twitter, by publication, and by mail to an alternative address.

Pursuant to Rule 4(h)(2), Fed. R. Civ. P., a foreign nonstate entity that cannot be served in a judicial district of the United States, such as Defendant the Taliban herein, may be served

3

"in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery."

Rule 4(f), in turn, provides that service shall be made in one of three ways:

> *(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;*
>
> *(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:*
>> *(A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;*
>> *(B) as the foreign authority directs in response to a letter rogatory or letter of request; or*
>> *(C) unless prohibited by the foreign country's law, by:*
>>> *(i) delivering a copy of the summons and of the complaint to the individual personally; or*
>>> *(ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or*
>
> *(3) by other means not prohibited by international agreement, as the court orders.*

Courts have "wide discretion in ordering service of process under Rule 4(f)(3)," *In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423, 433 (S.D.N.Y. 2009), "so long as the ordered means of service: (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process," *Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 217 (S.D.N.Y. 2021). Because "[s]ervice of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief [but] merely one means among several which enables service of process on an international defendant . . . [a] plaintiff is not required to attempt service through the other

4

provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)." *Commodity Futures Trading Comm'n v. Mikkelsen*, 2021 WL 4207050, at *4 (S.D.N.Y. Aug. 27, 2021) (*emphasis in original*).

Under Local Civil Rule 6.1(d), this Court may grant an "*ex parte* order . . . upon a clear and specific showing by affidavit of good and sufficient reasons why a procedure other than by notice of motion is necessary, and stating whether a previous application for similar relief has been made."

## ARGUMENT

I.  **The Court Should Authorize Service By Publication Under Rule 4(f)(3).**

   A.  **Service of Plaintiffs' Second Amended Complaint By Publication.**

   a.  **Service by Publication is Appropriate under Rule 4(f)(3).**

Service by publication is appropriate because publication is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Courts authorize alternative means of service where, as here, a foreign defendant's address is unknown or where other methods of service cannot be carried out. *See S.E.C. v. Tome*, 833 F.2d 1086, 1094 (2d Cir. 1987) (approving of service by publication were the defendants' names and addresses could not be "obtained with reasonable diligence"); *Hausler v. JP Morgan Chase Bank, N.A.*, 141 F. Supp. 3d 248, 252 (S.D.N.Y. 2015) ("Where the identities of individuals to be served are unknown … service may be by alternative means such as publication."). Other means of service are unavailable. Service according to Rule 4(f)(1) is not an option because Afghanistan is not party to any relevant international convention on

service of process. *See In re: Terrorist Attacks on September 11, 2001*, 2022 WL 1088567, at *2.

Nor is service under Rule 4(f)(2) a possibility; the Taliban's "deliberate … obstruction … ha[s] made the giving of notice impossible." *S.E.C. v. Tome*, 833 F.2d 1086 at 1092 (2d Cir. 1987). The Taliban's terrorist activities and widespread use of violence against civilians has made impossible service by mail under Rule 4(f)(2)(C)(ii); no courier service is able or willing to deliver mail to Kabul. Recognizing these issues, this Court has already ordered service by Publication, Twitter, and under Rule 4(f)(3). *In re: Terrorist Attacks on September 11, 2001*, 2022 WL 1088567, at *2 (Because "[c]ertified mail services are not operating" in Afghanistan, and "other methods of service are not viable, Rule 4(f)(3) provides the proper framework").

Other courts have similarly concluded that service on the Taliban via publication is appropriate. *See Order, John Does 1 through 7 v. The Taliban, et al.*, No. 20-cv-00605 (N.D. Tex. June 17, 2020), ECF No. 10; Mem. Op. and Order, *Strange v. Islamic Republic of Iran*, No. 14- cv-435 (D.D.C. Nov. 12, 2014), ECF No. 26 at 3; Order, *Doe v. Bin Laden, et al.*, No. 01-cv-2516 (D.D.C. May 30, 2003), ECF No. 19.[3]

### b. Form and Method of Service by Publication.

Because the Federal Rules of Civil Procedure are silent as to the specific requirements of service by publication, "[f]ederal courts may use forum state law to govern how service by publication is effectuated." *SEC v. Anticevic*, 2009 WL 361739, at *5; *see also BP Prod. N. Am.,*

---

[3] Notably, the Foreign Sovereign Immunities Act, 28 U.S.C. § 1608(b) ("FSIA"), does not apply because the Taliban is not the recognized government of Afghanistan. But even if the FSIA were applicable, service by Twitter and publication would also be appropriate under § 1608(b)(3)(C), which permits service "reasonably calculated to give actual notice," "as directed by order of the court." *See In re Terrorist Attacks on Sept. 11, 2001*, 2022 WL 1088567, at *5-6 (explaining that "court-ordered service remains the only viable mechanism, whether under the auspices of Rule 4(f) or § 1608(b)(3)(C)," and "the procedures for supplemental service are, for practical purposes, identical regardless of whether service . . . must be authorized under the Rule 4 procedures for a foreign entity or the 28 U.S.C. § 1608(b) procedures for service on the instrumentality of a foreign sovereign").

*Inc. v. Dagra*, 236 F.R.D. 270, 273 (E.D. Va. 2006) (ordering service by publication in accordance with forum state law); *Tower v. Adoption Partners, Inc.*, 2009 WL 10670568, at *2 (M.D. Fla. Nov. 20, 2009) (*same*).

Under New York law, courts "shall order service of a summons by publication . . . if service cannot be made by another prescribed method with due diligence." CPLR Rule 315. *See also Intermeat, Inc. v. Am. Poultry Inc.*, 575 F.2d 1017, 1020 (2d Cir. 1978) (When "a debt owed to a foreign corporation is attached in New York, the foreign corporation may . . . in some instances [be] served by publication."). CPLR Rule 316 sets forth the requirements for service by publication:

> *(a) An order for service of a summons by publication shall direct that the summons be published together with the notice to the defendant, a brief statement of the nature of the action and the relief sought… in two newspapers, at least one in the English language, designated in the order as most likely to give notice to the person to be served, at least once in each of three successive weeks shall be sufficient.*
> *. . . .*
> *(c) The first publication of the summons shall be made within thirty days after the order is granted. Service by publication is complete on the twenty-eighth day after the day of first publication.*

Plaintiffs therefore move to effectuate service of their suit on Defendant the Taliban, in accordance with CPLR Rule 316, by publishing a weekly notice for four consecutive weeks in both The New York Times (both the U.S. and international editions) and in Arabic in *Al Quds Al-Arabi*, a newspaper widely circulated in the Islamic world. The notices will contain "a brief statement of the nature of the action and the relief sought," in English, with translations into Arabic and Pashto, pursuant to CPLR Rule 316, as well as a URL to a website with "easily accessible online versions of those papers," *In re: Terrorist Attacks on September 11, 2001*, 2022

7

WL 1088567, at *5. The proposed notice to be published will be in substantially the same form as the draft pre-publication proof created by the legal notice staff of the New York Times on October 26, 2022, attached as **EXHIBIT L** to the Fleming Decl. The proposed public website hosting the *Grazioso* pleadings is "www.wigginschilds/grazioso."

The online version of the pleadings will include the original documents as well as certified translations into Pashto.[4] The notice will be on the website in English, Pashto and Arabic. This District has already recognized this as an adequate means of serving the Taliban. *See id.* ("They shall publish notice in *Al Quds Al-Arabi* and The New York Times. These notices shall run once a week for at least four weeks. That notice shall conform to the requirements of CPLR § 316."). This Court should order the same here.

### B.      Service of Plaintiffs' Second Amended Complaint By Twitter.

#### a.   Service by Twitter is Appropriate Under Rule 4(f)(3).

Service by Twitter is an appropriate alternative means of service under Rule 4(f)(3) in this case. As evinced by their frequent tweets, the Taliban "monitor" their Twitter accounts and are "likely to receive information transmitted to the [accounts]." *Ehrenfeld v. Salim a Bin Mahfouz*, 2005 WL 696769, at *3 (S.D.N.Y. Mar. 23, 2005); *see In re Terrorist Attacks on Sept. 11, 2001*, 2022 WL 1088567, at *5 (authorizing service by Twitter); *Hardin v. Tron Found.*, 2020 WL 5236941, at *2 (S.D.N.Y. Sept. 1, 2020) (authorizing service by email and LinkedIn).

The *Grazioso* Plaintiffs' case for alternative service upon Defendant the Taliban by Twitter here is especially strong because plaintiffs in the same MDL have already unsuccessfully made multiple attempts at service by other means. *See, e.g., Sirius XM Radio Inc. v. Aura*

---

[4] *See* AFGHANISTAN, CIA World Factbook (last accessed: Sept. 27, 2022), https://www.cia.gov/the_world_factbook/countries/afghanistan (listing Dari and Pashto as official languages).

*Multimedia Corp.*, 339 F.R.D. 592, 593 (S.D.N.Y. 2021) (authorizing email service after numerous unsuccessful attempts at service). Use of internet and social media are therefore an appropriate "backstop" method of service in this case. *In re Terrorist Attacks on Sept. 11, 2001*, 2022 WL 1088567, at *3. Rule 4(f)(3) allows the court to authorize service on a foreign party "by [any] means not prohibited by international agreement." Service "is appropriate under Rule 4(f)(3)" "[if] reasonably calculated, under all circumstances, to appraise interested parties of the pendency of the action and afford them an opportunity to present their objections." *NYKCool A.B. v. Pac. Int'l Servs.*, Inc., 66 F. Supp. 3d 385, 391 (S.D.N.Y. 2014) (*citation omitted*).

### b. Form and Method of Service by Twitter.

Specifically, the *Grazioso* Plaintiffs seek leave to serve the Taliban by communicating with six (6) Twitter accounts associated with the Taliban: @Abdullah_azzam7, an account associated with Abdullah Azzam, secretary to Taliban acting first deputy prime minister Abdul Ghani Baradar (*see* ¶ 11 and **EXHIBIT F** to the Fleming Decl.); @IeaOffice, an account associated with Mohammed Naeem, a Taliban political spokesman (*see* ¶ 12 and **EXHIBIT G** to the Fleming Decl.); @QaharBalkhi, an account associated with Abdul Qahar Balkhi, a spokesman for the Taliban's Ministry of Foreign Affairs (*see* ¶ 13 and **EXHIBIT H** to the Fleming Decl.); @Zabehulah_M33, an account associated with Zabiullah Mujahid, a Taliban spokesman (*see* ¶ 14 and **EXHIBIT I** to the Fleming Decl.); @QyAhmadi21, an account associated with Qari Yousaf Ahmadi, a Taliban spokesman (*see* ¶ 15 and **EXHIBIT J** to the Fleming Decl.); and @suhailshaheen1, an account associated with Suhail Shaheen, the Taliban's permanent representative-designee to the United Nations (*see* ¶ 16 and **EXHIBIT K** to the Fleming Decl.). Messages to these six Twitter accounts associated with the Taliban was recently deemed sufficient alternative notice upon the Taliban by this Court. *See Havlish, et al. v. bin Laden, et*

9

*al*., 03-cv-1570 (GBD)(FM), Opinion and Order, dated April 5, 2022, *Havlish* Dkt. 614, MDL Dkt. No. 7830.

To serve Defendant the Taliban via Twitter, the *Grazioso* Plaintiffs propose to send a notice of the instant litigation to each of these Twitter accounts, in English, with translations into Arabic and Pashto, that also directs to a public website hosting the *Grazioso* Second Amended Complaint and the amended summons in English and translated into Pashto. The notice via Twitter will be in substantially the same form as the text in the draft pre-publication proof created by the legal notice staff of the New York Times on October 26, 2022, attached as **EXHIBIT L** to the Fleming Decl. The proposed public website hosting the *Grazioso* pleadings is "www.wigginschilds/grazioso."

Each of the above Twitter accounts have already been utilized to effectuate service against Defendant the Taliban in this MDL. *See Certificate of Service, In re: Terrorist Attacks on September 11, 2001*, No. 03-md-1570, (S.D.N.Y. Apr. 25, 2022), Dkt. 7904; Certificate of Service, *In re: Terrorist Attacks on September 11, 2001*, No. 03- md-1570, (S.D.N.Y. Apr. 25, 2022), Dkt. 7910.

### C. Service of Plaintiffs' Second Amended Complaint to Address Outside Afghanistan.

Although Plaintiffs do not believe that leave of Court is required in order to serve Defendant the Taliban at an address outside Afghanistan, Plaintiffs want to notify the Court of their intent to do so. To the extent, the Court believes leave is required, Plaintiffs also seek leave to serve Defendants the Taliban in Qatar. Specifically, the *Grazioso* Plaintiffs intend to serve the Taliban at the Embassy of Afghanistan, West Bay, Isteolal Street, P.O. Box: 22104, Doha, Qatar.

Senior leaders of the Taliban have been stationed in Doha, Qatar, since the early-2010s. The original purpose for the Taliban being there was to open an office that would facilitate

political reconciliation between the Taliban, the government of Afghanistan, the United States and other countries.[5] Following the collapse of Afghanistan in August of 2021, leader of the Taliban-affiliated *Hezb-e-Islami* party Gulbuddin Hekmatyar met with both Hamid Karzai, former President of Afghanistan, and Abdullah Abdullah, Chairman of the High Council for National Reconciliation and former Chief Executive, in Doha seeking to form a government.[6]

Just a few weeks ago, a US delegation from the Central Intelligence Agency - headed by CIA Deputy Director David Cohen - met with an Afghan delegation in the Qatari capital.[7] Additionally, it was reported within the last month that Canadian government officials have met with representatives of the Taliban on at least thirteen occasions in Doha, Qatar since the Taliban swept to power in Afghanistan in 2021.[8]

This Qatari address was used by the plaintiffs in *Owens, et al., v. The Taliban*, No. 22-cv-1949 (S.D.N.Y.), upon the Taliban at Dkt. No. 53, dated May 6, 2022. (*See* ¶ 19 and **EXHIBIT M** to the Fleming Decl.)

To serve Defendant the Taliban via international courier to Qatar, the *Grazioso* Plaintiffs propose to send a notice of the instant litigation to the Embassy in Doha, with a cover letter in both English and Arabic and with the notice in English and translated into Arabic and Pashto. The notice via Twitter will be in substantially the same form as the text in the draft pre-publication proof created by the staff of the New York Times on October 26, 2022, attached as **EXHIBIT L** to the Fleming Decl. The packages will also contain the *Grazioso* Second Amended

---

[5] *See* "TALIBAN SEEKING RECOGNITION OF QATAR OFFICE AHEAD OF FRESH TALKS WITH US" - *voanews.com* - Gul, Ayaz (February 11, 2019) (https://www.voanews.com/a/taliban-calls-for-recognition-of-qatar-office-ahead-of-fresh-talks-with-us/4782333.html).
[6] *See* "AFGHANISTAN'S HEKMATYAR SAYS HEADING FOR DOHA WITH KARZAI, ABDULLAH ABDULLAH TO MEET TALIBAN" - *Al Jazeera* (August 16, 2021); *See also*, "QATAR'S TALIBAN EFFORTS POSITION DOHA AS A KEY MEDIATOR: ANALYSTS" - *Al Jazeera* (August 20, 2021).
[7] *See* https://edition.cnn.com/2022/10/08/politics/us-taliban-talks-wasiq-qatar/index.html.
[8] *See* https://www.cbc.ca/news/taliban-afghanistan-kabul-human-rights-1.6605925.

Complaint and amended summons in both English and Pashto, along with certifications by the translators.

## II.     *Ex Parte* Adjudication of This Motion Is Proper.

Because Plaintiffs have been unable to serve Defendant the Taliban by traditional means, *ex parte* adjudication of this motion for alternative service is proper. *See* Local Civ. R. 6.1(d). Plaintiffs' inability to contact the Taliban provides "good and sufficient" basis for Plaintiffs to proceed *ex parte* on this motion. *Cf. Unitrans Int'l, Inc. v. Gulf & Orient S.S. Lines, Inc.*, 2002 WL 1205744, at *1 (S.D.N.Y. Mar. 6, 2002) (permitting plaintiff to proceed *ex parte* because defendant had gone out of business and "there [was] no new address or phone number available by which to contact the defunct [d]efendant or any successor, assignee, or representative," and "[p]laintiff ha[d] no means by which it [could] effectively provide [d]efendant with notice").

The entire point of this motion is to ensure that Defendant the Taliban receives service of the Second Amended Complaint and amended summons. Necessarily then, the motion itself must be decided without requiring the Defendant to be notified.

## CONCLUSION

The *Grazioso* Plaintiffs respectfully request that the Court issue an *ex parte* order directing service upon Defendant the Taliban of Plaintiffs' Second Amended Complaint and amended summons by Twitter, by publication, and by mail to an alternative address.

Dated: November 15, 2022

    Respectfully submitted,

    */s/ Timothy B. Fleming*

    Timothy B. Fleming (DC Bar No. 351114)
    WIGGINS CHILDS PANTAZIS
    FISHER GOLDFARB PLLC
    2202 18th Street, NW, #110
    Washington, DC  20009-1813
    (202) 467-4489

Dennis G. Pantazis (AL Bar No. ASB-2216-A59D) *(Lead Counsel)*
WIGGINS CHILDS PANTAZIS FISHER GOLDFARB LLC
The Kress Building 301 19th Street North
Birmingham, AL  35203
(205) 314-0500

Richard D. Hailey (IN Bar No. 7375-49)
Mary Beth Ramey (IN Bar No. 5876-49)
RAMEY & HAILEY
3905 Vincennes Road #303
Indianapolis, IN 46268
(317) 582-0000

Robert M. Foote (IL Bar No. 03124325)
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL 60134
(630) 232-7450

*Attorneys for the* Grazioso *Plaintiffs*