# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

—————————————————————————— )
IN RE:  TERRORIST ATTACKS ON            )      Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001                      )      ECF Case
—————————————————————————— )

This document relates to:  *All Actions*


## SAUDI ARABIA'S OPPOSITION TO KREINDLER & KREINDLER'S
## MOTION TO STAY NON-MONETARY SANCTIONS
## <u>PENDING RESOLUTION OF RULE 72(a) OBJECTIONS</u>

Michael K. Kellogg
Mark C. Hansen
Gregory G. Rapawy
Andrew C. Shen
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900
(202) 326-7999 (fax)

*Attorneys for the Kingdom of Saudi Arabia*

November 17, 2022

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

STANDARD OF REVIEW ....................................................................................................... 5

ARGUMENT ............................................................................................................................. 5

      A.     Kreindler & Kreindler Cannot Show That It Will Likely Succeed
             on the Merits ................................................................................................ 5

      B.     Kreindler & Kreindler Cannot Show That Plaintiffs Will Be
             Irreparably Injured Without a Stay ............................................................ 7

      C.     A Stay Would Injure the Other Parties in This Proceeding and
             Harm the Public Interest ........................................................................... 10

CONCLUSION ........................................................................................................................ 10

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Aso*, *In re*, 2019 WL 2572491 (S.D.N.Y. June 21, 2019)....................................................................5

*Google LLC v. United States*, 443 F. Supp. 3d 447 (S.D.N.Y. 2020) ...........................................5

*Nken v. Holder*, 556 U.S. 418 (2009) ............................................................................................5

**RULES**

Fed. R. Civ. P.:

      Rule 37(b) ....................................................................................................1, 5, 6

      Rule 37(b)(2)...............................................................................................................4

      Rule 37(b)(2)(A) ........................................................................................................6

      Rule 72(a)...........................................................................................1, 4, 5, 8

## INTRODUCTION

The Court should not stay Judge Netburn's removal of Kreindler & Kreindler LLP ("Kreindler & Kreindler") from the Plaintiffs' Executive Committees ("PECs") as a sanction for Kreindler & Kreindler's willful breach of the Court's protective orders, obstruction of the Court's investigation of the breach, and misrepresentations to the Court.  After a two-day evidentiary hearing, Judge Netburn carefully weighed the evidence and laid out Kreindler & Kreindler's disregard for Court orders and many untruthful and misleading statements to conceal its misconduct.  That review led her to "los[e] faith in the firm's ability to conduct this litigation responsibly and report honestly as a representative of all plaintiffs."  ECF No. 8544 ("Op."), at 55.  Accordingly, she reasonably determined that "the firm's removal from the PECs is not only an appropriate sanction, but a necessary step to ensure that body's continuing efficacy and credibility."  Op. 57.  Her ruling went into effect nearly two months ago, on September 21, 2022, the day she issued the ruling.

Kreindler & Kreindler has presented no legitimate grounds for a stay.  Its Rule 72(a) objections to the September 21 order have small chance of success on the merits.  Kreindler & Kreindler cannot meet its heavy burden to show that Judge Netburn's factual findings were "clearly erroneous" or that the sanctions ordered were "contrary to law."  Fed. R. Civ. P. 72(a).  As demonstrated in Saudi Arabia's opposition to the Rule 72(a) objections, Kreindler & Kreindler's lead argument that Federal Rule of Civil Procedure 37(b) does not authorize sanctions against a law firm both was not raised before Judge Netburn and is wrong as a matter of law.  Kreindler & Kreindler also cannot show irreparable harm.  Judge Netburn has concluded that there are "numerous sophisticated firms in the MDL" that are "fully able to continue to litigate" Plaintiffs' claims, Op. 49, and the remaining PEC members have represented that they can do so ably without the involvement of Kreindler & Kreindler.

**BACKGROUND**

Shortly after the June 2021 deposition of non-party witness Musaed Al Jarrah, reporter Michael Isikoff published an article revealing that he had obtained the transcript of the deposition. At the time Isikoff published his article, the entire transcript was confidential material under the MDL Protective Order, ECF No. 1900, and the FBI Protective Order, ECF No. 4255. Saudi Arabia and Al Jarrah promptly asked the Court to investigate the serious breach of its orders, and the Court did so. Saudi Arabia's counsel and every other PEC-member firm "willingly aided the effort," Op. 2, each providing thorough disclosures about the steps each firm had taken to ensure that it was not the source of the leak. Kreindler & Kreindler, by contrast, "dragged its feet, submitted incomplete responses to the Court's inquiries, and obstructed the investigation." *Id.* After the Court's second order requiring it to provide declarations, Kreindler & Kreindler admitted that one of its researchers, John Fawcett, had "deliberately leak[ed]" the transcript, *id.*, but maintained that Fawcett had acted alone and based on personal motives.

Judge Netburn then held a two-day evidentiary hearing and heard testimony from witnesses, including Fawcett and four Kreindler & Kreindler attorneys: supervising attorney and partner James Kreindler, partners Andrew Maloney and Megan Benett, and counsel Steven Pounian. Op. 30-31. Relying on both in-person observations of witnesses, Op. 19, 39, and on a mass of record evidence including phone records, text messages, emails, and draft documents, Op. 8-10, 16-18. 25, 26-28, 29, 38-39, 42, she repeatedly found the testimony of the Kreindler & Kreindler lawyers was not "credible," Op. 9, 13, 19, 38, 39, 40, 43, and declined to believe the firm's story about Fawcett. Instead, she determined that Fawcett did not act alone or for personal reasons, concluding that "Kreindler & Kreindler, through Fawcett and Kreindler, breached the Protective Orders by carrying out a deliberate scheme to leak the Al Jarrah Transcript to Isikoff,"

as part of the "firm's litigation strategy . . . to use press attention to force Saudi Arabia into a settlement." Op. 36-37.

Judge Netburn further found that "several other firm attorneys," including Maloney, Benett, and Pounian, "were, at best, willfully blind to the[ ] scheme and willing to obstruct the Court's efforts to uncover it." Op. 45. Their acts of obstruction included Maloney's "flaw[ed]" investigation of the breach that "completely . . . passed over Fawcett," and that Kreindler & Kreindler presented to the Court in "misleading terms," Op. 40; a "fabricated" motive for the leak that was "revealed to be primarily an invention of Pounian and Benett," Op. 42; a declaration from John Hartney (Kreindler & Kreindler's IT professional) that Benett "structured" and "explicitly designed to avoid alerting the Court to Kreindler & Kreindler's deficient protection of confidential materials," *id.*; and declarations submitted by the firm's attorneys that contained "numerous misleading or false statements," Op. 24, 28-29. In addition, the Court found that the firm "tried to use the Court's investigation as a forum to compound the damage caused by the breach" by introducing "gratuitous and irrelevant material to disparage Saudi Arabian personnel." Op. 42.

Judge Netburn also found that Kreindler & Kreindler committed other violations of the Court's orders. Those violations included a 2017 episode in which Kreindler and Fawcett violated the MDL Protective Order by "tag-team[ing]" a journalist to provide information about a confidential document, Op. 5-6, 37-38, which led to Judge Netburn giving Kreindler a personal "'first warning' against further such conduct," Op. 5; the "stor[age]" of the Al Jarrah deposition transcript "on a system that anyone at their firm could access," which violated the MDL Protective Order, Op. 53; the undisclosed attendance of a Kreindler & Kreindler consultant at the Al Jarrah deposition, which violated the Court's Deposition Protocol (ECF No. 6002-1), Op. 32-33; and Kreindler & Kreindler's post-hearing violation of the MDL Protective Order by posting

discovery materials on a public website, Op. 33-34.  Judge Netburn determined that Kreindler

& Kreindler's conduct taken as a whole "revealed an almost complete lack of respect for the

Court and its orders."  Op. 52.

Having "lost faith in [Kreindler & Kreindler's] ability to conduct this litigation

responsibly and report honestly as a representative of all plaintiffs," Judge Netburn imposed

sanctions on Kreindler & Kreindler under Rule 37(b)(2).  Op. 55.  As relevant to the present

motion, the firm was "removed immediately from the Plaintiffs' Executive Committees."  Op.

65.  Judge Netburn found this measure "not only an appropriate sanction, but a necessary step

to ensure that body's continuing efficacy and credibility."  Op. 57.  She required the other PEC

members to "confirm[ ]" within two weeks that Kreindler & Kreindler "is no longer involved

in any of the [PECs'] operations" and to advise the Court "[i]f . . . additional court action or

modification to the structure of the PECs is necessary."  Op. 63-64.

On October 4, 2022, the current members of the PECs filed a letter representing that

"Kreindler & Kreindler is no longer involved in any of the PEC's operations."  ECF No. 8603,

at 1.  Those PEC members have further asserted that they are fully capable of litigating this

matter moving forward without Kreindler & Kreindler and that they "do not believe any

structural changes to the PECs are necessary to do so."  *Id.*

Also on October 4, 2022, Kreindler & Kreindler filed a motion by proposed order to

show cause to stay its removal from the PECs pending the resolution of its forthcoming Rule

72(a) objections, supported by a declaration from Maloney.  ECF Nos. 8608, 8610.  On October

17, the Court denied that motion without prejudice as procedurally improper.  ECF No. 8642.

On November 3, relying on the same memorandum of law submitted on October 4 and on a

supplemental declaration from Maloney, Kreindler & Kreindler renewed its motion.  ECF Nos.

8700, 8701.

**STANDARD OF REVIEW**

"The decision whether to stay an order [from a magistrate judge] pending appeal [to the district judge] is guided by four well-established factors:  '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'"  *In re Aso*, 2019 WL 2572491, at \*2 (S.D.N.Y. June 21, 2019) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)) (denying application to stay magistrate judge's non-dispositive discovery order); *see also*, *e.g.*, *Google LLC v. United States*, 443 F. Supp. 3d 447, 455 (S.D.N.Y. 2020) (applying the same standard and concluding that the moving party "cannot bear the burden of showing that the circumstances justify an exercise of the court's discretion") (cleaned up).  Because a "'stay is an intrusion into the ordinary processes of administration and judicial review,'" it "'is not a matter of right.'"  *Aso*, 2019 WL 2572491, at \*2 (quoting *Nken*, 556 U.S. at 427).  "Ultimately, the decision as to whether to grant a stay is committed to the court's discretion."  *Id.*

**ARGUMENT**

**A.      Kreindler & Kreindler Cannot Show That It Will Likely Succeed on the Merits**

Because of Kreindler & Kreindler's procedural error and delays in refiling its motion, Saudi Arabia's opposition to the firm's Rule 72(a) objections is already on file.  ECF No. 8751.  To avoid unnecessary duplication, this opposition does not repeat the arguments in that opposition in full, but summarizes them only briefly.  They show that Kreindler & Kreindler is unlikely to succeed in its challenge to its removal from the PECs.

*First*, Kreindler & Kreindler is unlikely to succeed in arguing that Judge Netburn acted contrary to law in imposing sanctions under Rule 37(b).  It never raised this argument before Judge Netburn, despite knowing that Saudi Arabia had asked the Court to invoke Rule 37(b), and

has therefore forfeited any challenge to that aspect of her ruling. *Id.* at 20-21. Even if preserved, Kreindler & Kreindler's argument lacks merit. Rule 37(b)(2)(A) gives courts broad authority to issue "just orders" when a "party" violates a discovery order. When an attorney or law firm representing a party violates such an order, the violation is attributed to its client. *Id.* at 21-23. Moreover, Rule 37(b)(2)(A) does not require the sanction for such a violation to fall solely on the party. When doing so is "just," courts can and do issue Rule 37(b)(2)(A) sanctions against law firms, attorneys, and outside experts. *Id.* at 23-25. Kreindler & Kreindler's contrary arguments fail to engage with the text of Rule 37(b) and make inaccurate comparisons to other Rules with different language. *Id.* at 25-27.

*Second*, Kreindler & Kreindler is unlikely to succeed in arguing that Judge Netburn's findings are unsupported by the evidence. Her credibility determinations were well supported by the factual record and easily withstand the deferential clear-error review that applies to such findings. *Id.* at 27-28. She was not required to believe the testimony of Kreindler and Fawcett that Kreindler did not know of or approve Fawcett's actions. *Id.* at 28-30. She had ample basis to conclude that Kreindler & Kreindler acted willfully, including not only Kreindler's deliberate coordination with Fawcett but also the other attorneys' obstruction and misrepresentations to the Court. *Id.* at 32-34. Kreindler & Kreindler's contrary arguments fail to show any error, much less clear error, in Judge Netburn's careful weighing of the evidence. *Id.* at 30-32, 34-36.

*Third*, Kreindler & Kreindler is unlikely to succeed in arguing that Judge Netburn abused her discretion in determining that its removal from the PECs was an appropriate sanction. She considered the appropriate factors required by Circuit precedent and gave proper weight to her conclusion that the firm as a whole has shown it cannot be trusted to follow the Court's orders or deal with the Court candidly. *Id.* at 36-37. She also appropriately considered (contrary to Kreindler & Kreindler's claims) the substantial harms caused by the breach, *id.* at 37-38, and the

lack of injury to Plaintiffs from the loss of the firm as a representative on the PECs, *id.* at 38-39. Kreindler & Kreindler's failed attempts to show inconsistency with other cases, *id.* at 39, its minimization of the seriousness of its conduct, *id.* at 39-40, and its protestation that financial sanctions would provide sufficient deterrence, *id.* at 40, do not come close to the showing required to overturn Judge Netburn's exercise of discretion.

**B.   Kreindler & Kreindler Cannot Show That Plaintiffs Will Be Irreparably Harmed Without a Stay**

Kreindler & Kreindler's removal from the PECs has not caused, and will not cause, irreparable harm to Plaintiffs.  As set forth above, the September 21, 2022 order removed the firm from the PECs "immediately."  Its motion and the two supporting declarations of Andrew Maloney fail to identify any meaningful work that the firm has been unable to do in the past two months or any harm suffered by Plaintiffs as a whole as a result.  Nor has it identified any such harm in the future, and certainly not in the immediate future.

Kreindler & Kreindler's attempt to show irreparable harm rests on the self-serving assertion that, before its removal, it "effectively led all aspects of the litigation against Saudi Arabia" and "handled *nearly every* aspect of this complex case."  ECF No. 8608, at 21.  The first Maloney declaration makes similar claims and minimizes the role of the other PEC firms. ECF No. 8610, ¶¶ 3, 18, 20.  Shortly after it was filed, the current members of the PECs indicated that they felt "compelled to inform the Court" that they "dispute the veracity of the facts and characterizations as recited in Mr. Maloney's declaration."  ECF No. 8620.  They further stated that they did not find it "necessary or productive to engage in any further distractions created by the Kreindler firm."  *Id.*  The PECs' statements are consistent with and reinforce Judge Netburn's findings that Maloney personally made untruthful and knowingly misleading statements to the

Court, Op. 12-13, 28-29, 40, and that, at least since July 5, 2021, Kreindler & Kreindler "cost the PECs more than they contributed," Op. 58.

Further, the dispute over whether Maloney's statements are truthful reinforces Judge Netburn's reasoning that "[t]he benefits of centralized leadership evaporate when the court cannot depend on a committee member's professionalism, ethics, and honesty," Op. 1; that "[t]he PECs cannot efficiently perform their functions if the Court cannot trust their statements," Op. 57; and that removing Kreindler & Kreindler from the PECs is "a necessary step to ensure that body's continuing efficacy and credibility," *id.*  Although Kreindler & Kreindler's own clients have the right to choose their counsel, Op. 49-50, Judge Netburn reasonably concluded that the interests of all Plaintiffs are not well served by representatives whose credibility the Court, other Plaintiffs' firms, and defense counsel must constantly second-guess.  That determination further weighs against any finding of irreparable harm here.

In any event, even taken at face value, Maloney's statements about Kreindler & Kreindler's role in the litigation against Saudi Arabia do not show irreparable injury.  Fact discovery against Saudi Arabia ended in June 2021, and expert discovery ended in June 2022.  The next phase of the litigation will be the briefing of *Daubert* motions and a renewed motion to dismiss, but no schedule for that briefing has been set.  *See* ECF No. 8542.  In the unlikely event that Kreindler & Kreindler's Rule 72(a) objections are still pending when work on those motions begins, the remaining PEC members are fully capable of handling those filings.  Those firms have represented to the Court that they stand ready to "conduct[ ] all pre-trial proceedings involving common legal and factual issues, whether relating to liability or damages, on behalf of all Plaintiffs" and that no "structural changes to the PECs" are necessary following Kreindler & Kreindler's removal.  ECF No. 8603, at 1.  Other PEC members have attended and participated in every fact and expert deposition taken in the case against Saudi Arabia.  To the extent those

PEC members may find useful any work product generated in the past by Kreindler & Kreindler, nothing in Judge Netburn's September 21 order prevents Kreindler & Kreindler from protecting the interests of its clients by sharing that work product.

Maloney's Supplemental Declaration further asserts that Kreindler & Kreindler's removal from the PECs removes an incentive for Plaintiffs' lawyers to work "cooperatively and collaboratively," citing the different positions taken by Plaintiffs' attorneys on how to proceed with pending motions for judgment against the Taliban. ECF No. 8701, ¶¶ 4-5. The June 16, 2004 order that established the PECs already requires them to "coordinate and, wherever possible, submit joint . . . filings regarding all matters common to the Individual Actions." ECF No. 248-2, ¶ 9. It further provides that "[a]ny plaintiffs' attorney may give advice and suggestions to the Plaintiffs' Executive Committees; [and] may, when necessary, present individual and divergent positions to the positions of the Plaintiffs' Executive Committees at pretrial conferences." *Id.* ¶ 13. A court order requiring coordination, a mechanism for Plaintiffs' attorneys to raise divergent positions, and the potential for a common-benefit fund to reward the PECs' coordination efforts provide sufficient incentive to cooperate. That Plaintiffs' attorneys may not agree on every issue is no reason to reinstate Kreindler & Kreindler to a leadership position after Judge Netburn's conclusion that it can no longer be trusted.

Also, Kreindler & Kreindler's refusals to join in filings with other firms long predate its removal from the PECs. *See*, *e.g.*, ECF No. 3482, at 1-2 (order discussing filing of separate complaint); ECF No. 3781 (separate opposition to motion to dismiss); ECF No. 7481 (separate motion for reconsideration). Earlier this year, Kreindler & Kreindler even attempted to file an entire separate class action (promptly dismissed) in what this Court described as a "totally inappropriate attempt to simply advantage one set of plaintiffs" in negotiations over funds belonging to the central bank of Afghanistan, with "no legal basis" to do so. ECF No. 7966,

- 9 -

at 6:2-4.  The best way for Kreindler & Kreindler to achieve greater cooperation with other Plaintiffs' firms is for it to cooperate with them.

**C.      A Stay Would Injure the Other Parties in This Proceeding and Harm the Public Interest**

Reinstating Kreindler & Kreindler to a leadership position in this MDL will cause substantial injury to parties other than Plaintiffs and harm the public interest.  The firm and its attorneys willfully breached the Court's orders, obstructed the Court's investigation, misled the Court and the parties, orchestrated the submission of false and misleading declarations, and gave false and misleading testimony under oath.  *See supra* pp. 2-3.  Their conduct has wasted the resources of the Court, the other PEC members, and Saudi Arabia alike.  As Judge Netburn observed, it has taken "months to overcome Kreindler & Kreindler's obstruction. . . .  Another draining debacle is out of the question."  Op. 50.

The speedy and final resolution of this matter, which arises from the worst terrorist attack in the nation's history, also serves the public interest.  Saudi Arabia is confident that, when it renews its motion to dismiss, the evidence developed in jurisdictional discovery will show that no one (Al Jarrah included) directed either Omar Al Bayoumi or Fahad Al Thumairy to assist the 9/11 hijackers, consistent with the FBI's final conclusion when it closed its investigation.  Plaintiffs will presumably argue in opposition that the evidence shows the opposite.  The public interest favors a return to that core dispute rather than indulging Kreindler & Kreindler's attempts to "fight tooth and nail to avoid accountability for discovery violations."  *Id.*

**CONCLUSION**

The Court should deny Kreindler & Kreindler's motion to stay.

- 10 -

Dated:  November 17, 2022                    Respectfully submitted,

                                             */s/  Michael K. Kellogg*
                                             Michael K. Kellogg
                                             Mark C. Hansen
                                             Gregory G. Rapawy
                                             Andrew C. Shen
                                             KELLOGG, HANSEN, TODD, FIGEL
                                                & FREDERICK, P.L.L.C.
                                             Sumner Square
                                             1615 M Street, N.W., Suite 400
                                             Washington, D.C. 20036-3209
                                             (202) 326-7900
                                             (202) 326-7999 (fax)

                                             *Attorneys for the Kingdom of Saudi Arabia*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 17, 2022, I electronically filed the foregoing

Opposition to Kreindler & Kreindler's Motion To Stay Non-Monetary Sanctions Pending

Resolution of Rule 72(a) Objections, using the ECF system, which sent notice of filing in this

matter to all counsel of record.

*/s/  Michael K. Kellogg*
Michael K. Kellogg

*Attorney for the Kingdom of Saudi Arabia*