```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3   In re Terrorist Attacks on
      September 11, 2001                    03 MD 1570 (GBD)(SN)
 4
                                            Telephone Conference
 5   ------------------------------x
 6
 7                                          New York, N.Y.
                                            May 8, 2017
 8                                          12:15 p.m.
 9   Before:
10                     HON. SARAH NETBURN,
11                                          Magistrate Judge
12                        APPEARANCES
13
14
15
     KREINDLER & KREINDLER LLP
16        Attorneys for Plaintiffs' Executive Committee
     BY:  JAMES P. KREINDLER
17        -and-
     MOTLEY RICE, LLP
18   BY:  ROBERT T. HAEFELE
19
20   OMAR T. MOHAMMEDI
     FREDERICK GOETZ
21        Attorneys for Defendant WAMY
22
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

KSAX-0010
Case No. 03-md-1570

1                (In chambers)
2                THE COURT: Good afternoon. I am here with a court
3       reporter and with my law clerk. I'm going to ask that those
4       attorneys who intend to be speaking during this conference
5       state their appearance. If there are other people on the line
6       but they're just listening, I don't need their appearance made.
7       Let me remind you that when you speak you should introduce
8       yourself each time so that your comments can be properly
9       attributed, and anybody who doesn't state their appearance at
10      the outset but then decides to speak at a later time, please be
11      sure to state your appearance at that time.
12               Who do I have on the line on behalf of WAMY?
13               MR. MOHAMMEDI: Good afternoon, your Honor. This is
14      Omar Mohammedi on behalf of WAMY.
15               MR. GOETZ: Good afternoon, your Honor. Frederick
16      Goetz for WAMY as well.
17               THE COURT: And on behalf of Mr. Kreindler.
18               MR. KREINDLER: Hi, your Honor. Mr. Kreindler
19      himself.
20               THE COURT: OK. Thank you.
21               I have reviewed the three letters in connection with
22      this application as well as a Politico article and the 2006
23      protective order that was entered into by Judge Casey.
24               Let me address first Mr. Kreindler's response to the
25      accusation that the information was information that's publicly

```
1    available and that should never have been designated as
2    confidential in the first place.  We have had several
3    conversations already in connection with confidentiality
4    issues.  This case has heightened public interest, but as Judge
5    Casey noted when he granted the protective order, there are
6    also serious allegations being made as to the defendants, and
7    until they are found responsible, it's not fair to disclose
8    information that's designated as confidential that might tend
9    to make the public think that somebody is guilty of certain
10   conduct.  In this instance, it's clear that the information was
11   designated confidential.  As I understand it, Mr. Kreindler,
12   nor anyone from the plaintiffs' executive committee, has moved
13   to dedesignate that information, and what I don't want is for
14   the parties to think that they can undermine the
15   confidentiality orders because, by their own likes, something
16   is not confidential or should not be confidential.  The parties
17   obviously negotiated a protective order a decade ago, and I
18   expect the parties to follow it.  I'm not moved by
19   Mr. Kreindler's initial remarks that the information at issue
20   here is otherwise publicly available.
21              MR. KREINDLER:  Your Honor, if I could start this way,
22   I want to be very clear, I never released any confidential
23   evidence at all to Caleb Hannan or to any other reporter.  John
24   Fawcett, our investigator, did not show a document or release
25   any confidential information at all.  I think Mr. Mohammedi has
```

1   a misunderstanding borne of maybe the overly dramatic way in
2   which the reporter wrote his article, but I want to be clear,
3   neither the document that WAMY cited or any other piece of
4   paper or any other bit of information designated confidential
5   was ever, ever, ever released by me or anyone who works for me.
6          Now, what did happen, and maybe this is why
7   Mr. Mohammedi has this apprehension about something that never
8   existed, is the reporter spoke to me about themes in the case,
9   spoke to John, and was interested in how we went about
10  connecting the dots to show the connection between lower-level
11  Saudi officials like Basnan and Bayoumi to a higher official,
12  Saudi official, Thumairy, to Thumairy's boss' boss, Sowailem,
13  from the Saudi embassy.  And I apologize if we didn't put this
14  in the letter the right way, but here is what happened, so
15  there's no misunderstanding at all.
16         The FBI had released, in its report, a number of phone
17  numbers called by Bayoumi, the Saudi embassy official in San
18  Diego and L.A.  Among the numbers called was a number from the
19  Saudi embassy in Washington, particularly the number of the
20  Saudi Ministry of Islamic Affairs headed by Sowailem.  John
21  explained to the reporter the process, never showed him a
22  single document, never read from a document, or referred from a
23  document.  What John did say is when we saw the numbers that
24  Bayoumi called, I immediately went to our data and looked for
25  this D.C. number, suspecting it was from the embassy, and this

|   |   |
|---|---|
| 1 | number is all over the place.  It's on the Saudi website.  It's |
| 2 | in the FBI reports.  It's in State Department reports, and even |
| 3 | though we haven't gotten a single piece of paper from Saudi |
| 4 | Arabia yet, there is correspondence with the Saudi letterhead |
| 5 | in the files of lots of defendants.  And as we've seen, there |
| 6 | is correspondence with the number of the Saudi letterhead in |
| 7 | WAMY files, but to be crystal clear, John never showed Caleb |
| 8 | that document or any other document or said anything about the |
| 9 | contents of any of those documents, simply pointed out that |
| 10 | that number, 202-3700, is public information all over the |
| 11 | place. |
| 12 | Now, when Caleb wrote up the article, he wrote it in a |
| 13 | dramatic way, that when John had the numbers Bayoumi dialed, he |
| 14 | found it on a piece of paper, but that piece of paper exists in |
| 15 | thousands of places in discovery and in the public record, but |
| 16 | the only thing we're talking about is the letterhead, just as |
| 17 | if my office number, 212-617-8181, if somebody wanted to look |
| 18 | up my number, maybe they grab some attorney-client privilege |
| 19 | and read my number that has nothing to do with anything |
| 20 | contained in that document. |
| 21 | THE COURT:  Mr. Kreindler, the article explicitly |
| 22 | cites to the receipt of hundreds of thousands of pages of |
| 23 | documents, and then makes the specific notation that at the top |
| 24 | of a single page they found this note, so I think the argument |
| 25 | here, whether it's dramatic writing or not, is that the import |

of the narrative is that as a result of the documents that you received, you received information that allowed you to connect these dots, and I think that that is disclosing information, even if you're not disclosing the specific number, but information that was set forth in a confidential document.

MR. KREINDLER: Yes, the reporter's description is really not accurate, because when he says at the top is a note, what he's referring to is just the Saudi letterhead which has the phone number, which Mr. Mohammedi supplied in this and probably a thousand other documents. What John said is with that number, I looked it up and found that it's the Saudi embassy Ministry of Islamic Affairs headed by Sowailem, so the reporter wrote it in a way that it's not wrong, but it's not accurate; it creates an implication. It creates the implication that John somehow pulled a document that said the letterhead says this number is the Saudi embassy Ministry of Islamic Affairs, and that's not what happened.

Listen, I don't fault Mr. Mohammedi for being concerned or suspicious, but had anyone asked me, I would have explained this and made clear that John never ever read or showed anything from a document, including the letterhead, to this reporter or anyone else. From the very beginning of the case, we've been very careful, because there are a lot of reporters interested. And of course, the only thing we said is: We can never show any document. You can read the

H58WashC

1  complaint and read court filings.  So it's not a crazy reading
2  for Mr. Mohammedi to make, but it's an incorrect reading, and
3  what he suspects happened absolutely never happened.
4       THE COURT:  OK.  Let me hear from either Mr. Mohammedi
5  or Mr. Goetz.
6       MR. MOHAMMEDI:  Thank you, your Honor.  I'd just like
7  to mention if WAMY's document was not described and it was not
8  mentioned in the interview, why would the reporter mention it?
9  Whether the confidential document had been the subject of the
10  disclosure with the reporter, it was the needle in the haystack
11  that Mr. Kreindler and his team found, and your Honor, even
12  worse, the context by which WAMY's document was described in
13  relation to the information provided put it in bad light.  And
14  even though the document does not describe exactly what the
15  article is, but when you look at page 6 where the reporter
16  says, "In their 15 years on the case, Kreindler's team hadn't
17  persuaded the U.S. government to provide them much of anything
18  useful," and then he goes on and he says, "But they had spent
19  more than a decade legally compelling some of the largest
20  charities in the Middle East," and he goes on and then says,
21  "U.S. government knew these charities had provided financial
22  and logistical support for the people and groups American
23  officials label as terrorists" -- when he put that within the
24  context, it makes it even worse the way WAMY document was,
25  "they found needle in the haystack," and that is the problem we

1  have with Mr. Kreindler's conversation with the reporter, and
2  the information specifically referred to that document, which
3  is the needle in the haystack.  So it's actually even worse,
4  and that's exactly what Judge Casey said in his order:
5           "Most, if not all, of the numerous defendants to these
6  consolidated actions are accused of either committing the
7  terrorist acts of September 11, 2001, or providing material
8  support to those who did.  Many of the same defendants will be
9  asked to turn over a vast array of private and confidential
10 information during discovery, much of which will have little or
11 no bearing on the resolution of these actions but will be
12 subject to widespread public scrutiny with prejudicial effects
13 in the absence of a protective order."
14          This is the reason why Judge Casey issued this order
15 for this type of information, the context by which the article
16 mentioned WAMY documents, and that's the problem we have, your
17 Honor.  If the reporter did not have any information of WAMY
18 documents, which you have in front of you, he would never
19 mention WAMY's documents as the needle in the haystack.  That
20 is the problem, your Honor, we have with Mr. Kreindler and his
21 communication with the reporter.
22          THE COURT:  OK.  I tend to agree with WAMY here that
23 the information that was disclosed did violate the letter of
24 the agreement.  The agreement does make clear that summaries or
25 abstracts of the documents are confidential as well, and as

1  counsel just mentioned, the information that Mr. Kreindler was
2  trying to convey to the reporter could just as easily have been
3  conveyed without making the direct link between confidential
4  documents that were provided in this case and your ability to
5  connect the dots.
6      I do find, Mr. Kreindler, that this is a breach of the
7  confidentiality requirement.  As I ordered a few weeks ago with
8  respect to the applications that came in more generally about
9  the Politico article, there is heightened interest in this
10  case, and I'm certainly not going to prohibit anybody from
11  speaking to the press, but the parties need to really be
12  careful here because of the reasons that Judge Casey first
13  referenced when he entered this order.  It is really unfair to
14  the parties who will be turning over a lot of confidential and
15  personal information to have those documents portrayed in a
16  light that has a particular viewpoint, and I believe that this
17  article -- and I just have a hard time believing that the
18  journalist came up with this bent, this viewpoint, on his
19  own -- does reveal as a technical matter information that was
20  provided in a confidential document.
21      Going forward, Mr. Kreindler, to the extent you are
22  going to be continuing to speak to the press, or any other
23  lawyer in this case, I expect the parties to hew much more
24  closely to the confidentiality order and to be exceedingly
25  discreet in the information that they reveal.

1    I'm not going to sanction Mr. Kreindler with any
2    monetary sanction or otherwise. Consider this a first warning,
3    and it's my hope that I don't get these applications again. I
4    do find that there was a breach, but I'm not going to enter a
5    particular sanction.
6             MR. MOHAMMEDI: Your Honor, can I say something about
7    the sanction? Monetary damages are not the most important
8    things for us. I believe Judge Casey and I do believe that the
9    district court has a great deal of discretion as to the remedy
10   for violating a confidentiality or protective order, and even
11   outside the case, even Judge Casey's order, anything the judge
12   could relieve as part of the disclosure of any defendant's
13   documents should be ordered. We also believe that maybe that's
14   very, very harsh, but I think that is the remedy to make sure
15   that plaintiff will not do that in the future, preclusion of
16   this particular document being used in evidence in this case,
17   and I really do believe this is fair and reasonable for us, for
18   this Court to issue this order.
19            THE COURT: Mr. Kreindler, do you wish to be heard?
20            MR. KREINDLER: Yes, your Honor. First of all, I
21   don't even know what's in the document. Mr. Mohammedi sent an
22   English translation to you, not to us, and I'm not sure what
23   he's talking about. If he's talking about the Arabic text of
24   something I don't know what it says, all I can say is at this
25   moment we're not making use of unknown Arabic text. If he's

```
 1    talking about public information, he cannot exclude public
 2    information.  I think what he's trying to do is try and exclude
 3    the link between Sowailem and Bayoumi, and neither of them are
 4    his clients and neither of them have anything to do with WAMY,
 5    so I'm not sure what he's asking for.
 6              MR. HAEFELE:  Your Honor, may I be heard for a moment?
 7              THE COURT:  Yes.
 8              MR. HAEFELE:  My concern from what I'm hearing from
 9    what Mr. Mohammedi's saying is that the punishment related to
10    something Mr. Kreindler did should be passed on to the entire
11    plaintiffs, if I'm understanding him, he's asking for the
12    document to be precluded from evidence based on something that
13    Mr. Kreindler did and precluded from evidence on behalf of all
14    plaintiffs, if I'm understanding him right.  If I'm
15    misunderstanding, I'll stay quiet now.
16              MR. MOHAMMEDI:  Your Honor, I think that in response
17    to Mr. Kreindler, I'm asking that the document be precluded,
18    not the link.  Since the document was revealed in the article,
19    to the reporter should be precluded, and this is actually
20    within the remedies that are prescribed in the judge's order.
21    And I think WAMY should not be suffering, should not have to
22    give -- I mean, how are we to prevent them from making any
23    other communications with the reporters?  And also WAMY's being
24    put in bad light now, and like I said, evidence shown in the
25    report, and the article said, is being put in bad light, even
```

H58WashC

1    though the document itself is not really what it is, but the
2    way it was described, based on that, I do believe that it was a
3    communication, private communication between the kingdom of
4    Saudi Arabia and WAMY, and it was revealed to the reporter and
5    it violated the confidentiality agreement.  Therefore, I think
6    we should be entitled to preclude that.
7            THE COURT:  OK.
8            MR. KREINDLER:  I have to add something.  You keep
9    saying something that's utterly untrue.  This document was not
10   revealed to a reporter.  No reporter was shown this document or
11   had this document read to him.  All you're talking about is the
12   phone number on the letterhead, which is public information, so
13   I really wish you would stop saying that someone showed this
14   document to a reporter, because it never happened.
15           THE COURT:  OK.  I've heard enough.  I have read all
16   these letters and thought hard about this.
17           As I stated earlier, Mr. Kreindler, by describing to
18   the journalist that having received these confidential
19   documents from WAMY and then having identified this particular
20   piece of information you were able to connect the dots.  I do
21   believe that that was information that was confidential and you
22   were not entitled to disclose the source of your information.
23   As counsel for WAMY has said, you could have easily either left
24   that out or said you found this information through publicly
25   available sources, so I do believe it is a violation of the

1     confidentiality order.
2             Mr. Kreindler, I'm speaking.
3             MR. KREINDLER:  OK.
4             THE COURT:  I am not going to impose a sanction at
5     this time.  I'm not going to impose a monetary sanction against
6     Mr. Kreindler, and I'm certainly not going to preclude the use
7     of this document, because I don't believe that the specific
8     contents were, in fact, disclosed; it was more the light in
9     which the documents were presented that was inappropriate.  At
10    this point, I am not going to impose a particular sanction.
11            Mr. Kreindler, this is the second time we've had to
12    deal with this Politico article, and it's my hope that you will
13    be more careful as you continue to litigate this case,
14    including given that you are an executive member of the
15    plaintiffs' executive committee and you have a heightened role
16    here representing all of the plaintiffs, and I don't want you
17    to lose sight of that.
18            MR. KREINDLER:  I won't.
19            THE COURT:  OK.  Thank you, everybody.
20            MR. KREINDLER:  Thank you.
21            MR. MOHAMMEDI:  Thank you, your Honor.
22            (Adjourned)
23
24
25