# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

November 7, 2018

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

  RE: *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

  The Plaintiffs' Executive Committees (PECs) submit this letter in response to Dallah Avco's November 2, 2018 objection to the proposed protective order submitted jointly by the United States and the PECs, for the forthcoming productions by the Federal Bureau of Investigation (FBI). As discussed during the discovery hearing on October 12, 2018, the FBI has identified a core set of documents relevant to the jurisdictional inquiry as to the Kingdom of Saudi Arabia, and plans to produce those documents in three tranches, provided that the proposed protective order is entered in its present form. Saudi Arabia has consented to the proposed protective order in the form submitted by the United States and the PECs.

  Assuming the role of the proverbial tail attempting to wag the dog, Dallah Avco has objected to the proposed protective order and requested that it be amended to allow Dallah Avco to share with Saudi persons reportedly sensitive law enforcement materials the FBI intends to produce, without any showing of need or good cause. Even assuming Dallah Avco has standing to object to the proposed protective order, its arguments are unsupported by governing law, speculative, and plainly outweighed by the interests that would be served by the protective order. Perhaps most importantly, the Department of Justice (DOJ) has indicated that the changes Dallah Avco proposes to the protective order may cause the FBI to withhold certain relevant evidence and information that would otherwise be produced, a result that could severely prejudice the 9/11 plaintiffs and potentially deprive the Court of a complete record in determining its jurisdiction under JASTA.

KSAX-0014

Case No.
03-md-1570

KSAX-0014, Page 1 of 5

Hon. Sarah Netburn
November 7, 2018
Page 2

_____

   For obvious reasons, the PECs believe it is most appropriate to leave it to the DOJ to communicate the specific interests the United States seeks to protect through the protective order. For their part, the PECs offer below three additional points for the Court's consideration. Consistent with the discussion that follows, the PECs respectfully submit that Dallah Avco's intangible, unsupported, and peripheral objections to the protective order should be rejected, so that the FBI can proceed with its production without delay.

   **1.**  **Dallah Avco's Proposed Changes to the Protective Order Would Impair the FBI From Producing Relevant Evidence**

   Both plaintiffs and the Court would be severely prejudiced by allowing Dallah Avco to share documents produced by the FBI with its Saudi representatives, without any showing of good cause, as it has proposed. In fact, the FBI has made clear that its contemplated production of relevant documents is dependent upon entry of the proposed confidentiality order in its present form. *To the extent unregulated access to the entirety of the FBI production were granted to Dallah Avco's Saudi representatives, the FBI has indicated that it may need to revisit the content of the production and withhold certain documents and information that it otherwise intends to produce.* That result may deprive both plaintiffs and the Court of information and evidence critical to the jurisdictional inquiry authorized by the Court's March 28, 2018 decision, and prevent plaintiffs from developing additional evidence on the basis of the FBI production to assist the Court in resolving the jurisdictional inquiry. At a minimum, the PECs anticipate it would result in motion practice that would otherwise be unnecessary, including motions to compel production of any documents withheld, further complicating and delaying these proceedings.

   **2.**  **Dallah Avco's Claims of Potential Prejudice are Speculative and Unsupported**

   Dallah Avco's claims that it would be prejudiced by the proposed protective order are, meanwhile, insubstantial and unconvincing. To begin with, Dallah Avco's contention (made before its counsel has even seen any of the documents) that the forthcoming FBI production will bear significantly on the jurisdictional inquiry as to Dallah Avco, and that the input of Dallah Avco's Saudi representatives will be needed in relation to the documents, is entirely speculative. In this regard, the PECs anticipate that the FBI production will include documents relating to a number of individuals and witnesses other than Omar al Bayoumi, including individuals who may have had no interaction with Bayoumi at all. Further, it is not yet known what portion of the production will be designated as "Protected Information" by the FBI. Thus, it is dubious at this stage for Dallah Avco to assert a need to share the entirety of the confidential FBI production with its Saudi representatives. Instead, the assessment of need is more properly done on a case-by-case basis, as the protective order contemplates.

   Further, Dallah Avco has offered no credible argument that the Saudi representatives it argues should have unregulated access to the documents possess any unique knowledge necessary to address any relevant information that may appear in the materials. Instead, Dallah Avco merely offers generic claims that its Saudi representatives are "involved in every strategic

Hon. Sarah Netburn
November 7, 2018
Page 3

---

decision," have been contacted frequently by Dallah Avco's U.S. counsel, "expect to attend future Dallah Avco depositions," and have been involved in assisting with certain Arabic language needs in the litigation. Kry Letter at p. 2. These arguments are entirely conclusory, and offer no showing of particular knowledge within the possession of Dallah Avco's Saudi representatives that would be necessary to evaluate and respond to the content of the FBI production.[1]

Meanwhile, Mr. Kry has represented to the PECs in exchanges shortly before the present dispute emerged that *no* current employees or representatives of Dallah Avco have any knowledge of Omar al Bayoumi or his activities in the United States. Given those representations, Dallah Avco's present claim that it would be impaired from defending itself in the event its Saudi representatives are unable to access the FBI production is not in the least bit credible.

Further, Dallah Avco's assertion that the proposed protective order will have "a serious disparate impact," Kry Letter at p. 4, is predicated on a factual claim that is demonstrably false. Without any basis, Dallah Avco contends that plaintiffs are represented by United States experts, and that the provisions of the protective order prohibiting disclosure to persons outside of the United States would "impose significant restrictions on defendants' ability to communicate with their attorneys and experts of choice, with no corresponding impact on plaintiffs." *Id.* In fact, subject matter experts from outside of the United States have been working on behalf of members of the PECs since nearly the inception of this entire litigation. These experts have particularized knowledge of the facts and evidence underlying plaintiffs' claims against Saudi Arabia and Dallah Avco, specialized expertise in the terrorism arena, and Arabic language skills upon which members of the PECs have relied for many years. If anything, the impact of the territorial restriction of the proposed protective order will be greater on plaintiffs. Nonetheless, the PECs have consented to the territorial restriction to facilitate the FBI's production of relevant documents.

### 3. The Protective Order Provides Dallah Avco Adequate Protections as to Any Legitimate Interests in the FBI Production

Finally, to the extent that one or more of the documents produced by the FBI bears significantly on the Dallah Avco personal jurisdiction inquiry, and Dallah Avco has some legitimate need to share the information with its Saudi representatives or experts, the provisions of the proposed protective order provide it with adequate protections and remedies. To begin with, the protective order provides a mechanism for parties to contest the designation of materials as Protected Information, pursuant to the Federal Rules of Civil Procedure and local rules of this Court. Proposed Protective Order at ¶ 4. Further, in response to the concerns raised

---

[1] Dallah Avco's assertions of potential prejudice relating to its expert on Saudi legal issues, Kry Letter at pp. 2-3, is equally specious, not only because they rest on the doubtful claim that Saudi law is relevant, but also because they presume that the FBI production (1) will include materials bearing on Bayoumi's relationship with Dallah Avco; and (2) that Dallah Avco does not already have access to the relevant information from its own files. Both of those underlying presumptions are entirely speculative.

Hon. Sarah Netburn
November 7, 2018
Page 4

_____

by Saudi Arabia and Dallah Avco, the United States agreed to add a provision to the proposed protective order establishing a streamlined procedure for obtaining authorization to disclose Protected Information to foreign persons, upon a showing of good cause. *Id.* at ¶ 7. This provision appropriately balances the asserted interests of the United States, the compelling interests of plaintiffs and the Court in facilitating the production of relevant evidence by the FBI, and any legitimate interests and needs Dallah Avco (or Saudi Arabia) may have with respect to any materials designated as Protected Information.

Dallah Avco's sole arguments in response to this manifestly reasonable accommodation – that the process proposed by the United States could produce scheduling issues and may require the Court to resolve disputes when it "already has enough to do," Kry Letter at p. 4 – are entirely toothless. The PECs are certain that the Court can manage the schedule in this proceeding fairly, and that the burden associated with resolving disputes pursuant to the provision (should any even arise) will not represent a significant or undue imposition on the Court. And in any case, the compelling interests that would be served by the protective order far outweigh any minor scheduling or procedural issues that may arise.

For all of the foregoing reasons, the PECs respectfully submit that the Court should overrule Dallah Avco's objection to the proposed protective order, and promptly enter the protective order in the form submitted jointly by the United States and PECs, so that the FBI production can proceed without delay.

Respectfully submitted,

| | |
|---|---|
| COZEN O'CONNOR | MOTLEY RICE |
| /s/ Sean P. Carter, Esquire | /s/ Robert T. Haefele, Esquire |
| Sean P. Carter, Esquire | Robert T. Haefele, Esquire |
| 1650 Market Street, Suite 2800 | 28 Bridgeside Boulevard |
| Philadelphia, PA 19103 | Mt. Pleasant, SC 29464 |
| MDL 1570 Plaintiffs' Exec. Committee for Commercial Claims | MDL 1570 Plaintiffs' Exec. Committee for Personal Injury and Death Claims |

KREINDLER & KREINDLER

/s/ Andrew J. Maloney, Esquire
Andrew J. Maloney, Esquire
750 Third Avenue, 32nd Floor
New York, NY 10017

MDL 1570 Plaintiffs' Exec. Committee
for Personal Injury and Death Claims

Hon. Sarah Netburn
November 7, 2018
Page 5

_____

cc: The Honorable George B. Daniels (via First Class Mail)
   All MDL Counsel of Record (via ECF)

LEGAL\39001408\1