**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

No. 03-MD-01570 (GBD) (SN)

This document relates to: *All Actions*

**REPLY IN SUPPORT OF MOTION TO STAY**
**KREINDLER & KREINDLER LLP'S IMMEDIATE REMOVAL FROM THE**
**PLAINTIFFS' EXECUTIVE COMMITTEE FOR DEATH AND INJURY CLAIMS**

Emily Kirsch
Paul Niehaus
KIRSCH & NIEHAUS PLLC
950 Third Avenue, 19th Floor
New York, NY 10022
(212) 832-0170
emily.kirsch@kirschniehaus.com

Edward M. Spiro
MORVILLO ABRAMOWITZ GRAND
 IASON & ANELLO P.C.
565 Fifth Avenue
New York, NY 10017
(212) 856-9600
espiro@maglaw.com

*Counsel for Non-Party Kreindler & Kreindler LLP*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

I.    The Threat of Irreparable Harm to Plaintiffs Is Strong......................................... 2

II.   K&K Is Likely to Succeed on the Merits.............................................................. 5

CONCLUSION ....................................................................................................................... 8

## PRELIMINARY STATEMENT

Defendant Kingdom of Saudi Arabia ("Saudi Arabia")'s opposition papers confirm that a partial stay of the order removing Kreindler & Kreindler LLP ("K&K") from the Plaintiffs' Executive Committee for Death and Injury Claims ("PEC") is appropriate, pending resolution of K&K's Rule 72(a) objections. As detailed in K&K's objections, ECF No. 8681 ("Obj."), the full record shows that a longtime, trusted consultant of K&K secretly leaked a deposition transcript on his own initiative after he learned disturbing information about the deponent, and then repeatedly lied to K&K for over two months to hide his misconduct. K&K's attorneys were unaware of the consultant's betrayal and reported the facts to the Court immediately after uncovering the truth.

Saudi Arabia claims that there is a "small chance" of success on the merits of K&K's objections, ECF No. 8760 ("Stay Opp'n") at 1, but its opposition to K&K's objections proves otherwise, ECF No. 8751 ("Obj. Opp'n"). *First*, Saudi Arabia repeatedly ignores objective, documentary evidence (which the Magistrate Judge overlooked) that disproves many of the court's key "fact" findings and, instead, recites those findings verbatim. Saudi Arabia also avoids addressing the holding of binding Second Circuit precedent, which confirms that the Magistrate Judge exceeded her authority when she issued sanctions pursuant to Rule 37(b). *Second*, the threat of irreparable injury only increases the longer that K&K's meritorious objections remain undecided. It is only Saudi Arabia that benefits from the immediate removal of K&K, its lead adversary, from the PEC. The Court should maintain the nearly 20-year status quo while it resolves the objections. *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 565 (2d Cir. 1991).

# ARGUMENT

## I.      The Threat of Irreparable Harm to Plaintiffs Is Strong

K&K's continued involvement on the PEC is critical to ensure the proper representation of

the 9/11 death and injury plaintiffs and the successful prosecution of their claims against Saudi

Arabia.

Saudi Arabia offers no evidence to dispute the facts set out in the declarations of K&K

attorney Andrew Maloney, ECF Nos. 8613, 8701, which detail how over the past five years K&K

has undertaken the lead role on behalf of death and injury plaintiffs in prosecuting the litigation

against the Kingdom of Saudi Arabia.  Saudi Arabia claims that Mr. Maloney's declarations are

"self-serving."  Stay Opp'n at 8.  Saudi Arabia, however, knows full well from its own day-to-day

involvement in this litigation over the past five years (as reflected in the case docket) that the facts

detailed in Mr. Maloney's declarations are accurate and true, including that K&K: (1) argued the

2018 motion to dismiss brought by Saudi Arabia and all the discovery motions for the PEC;[1]

(2) conducted a world-wide investigation with the help of former FBI and Joint Terrorism Task

Force ("JTTF") agents and other investigators that uncovered important witnesses and evidence;[2]

(3) tracked down and obtained key third-party witness testimony through declarations and

---

[1] *See, e.g.*, ECF No. 3898 (Jan. 18, 2018 hearing of Saudi Arabia's motion to dismiss); ECF No. 4456 (Feb. 26, 2019 hearing of plaintiffs' first motion to compel production from Saudi Arabia); ECF No. 4586 (May 13, 2019 pre-motion conference regarding the FBI's production); ECF No. 5334 (Nov. 15, 2019 conference on the FBI's production and scheduling); ECF No. 5777 (Jan. 13, 2020 conference on production of Saudi Arabia's witnesses); ECF No. 6051 (Mar. 4, 2020 conference on plaintiffs' submissions regarding witness intimidation); ECF No. 6157 (Apr. 17, 2020 conference on various discovery issues involving Saudi Arabia and the FBI); ECF No. 6274 (May 21, 2020 hearing on motions regarding production of Saudi Arabia's witnesses, including the Kingdom's motion to assert immunity under the Vienna Convention on Diplomatic Relations).

[2] *See, e.g.*, ECF No. 3780-4 (Sept. 15, 2017 declaration of Stephen Moore, former FBI agent who led the Los Angeles 9/11 task force in 2001-2002); ECF No. 6154-3 (Apr. 2020 declaration of former FBI agent Catherine Hunt regarding her investigation and interviews with witnesses Mohamed Johar and Akram Alzamari); *see also* Oct. 26, 2018 sealed declaration of Hunt; May 30, 2019 sealed declaration of Bassem Youssef, former FBI Unit Chief; May 26, 2021 declaration of former FBI agent Daniel Gonzalez; May 26, 2021 declaration of former JTTF agent Efrain Vazquez.

depositions in the U.S. and abroad;[3] (4) conducted all depositions of Saudi Arabia's witnesses;[4] (5) worked to secure document productions from the U.K.'s Metropolitan Police Service;[5] and (6) hired, consulted, and obtained reports from all but one of plaintiffs' seven expert witnesses.[6]

Saudi Arabia makes highly misleading arguments to minimize the PEC's remaining work, stating that "fact discovery ended in June 2021," and that the case now involves the "briefing of *Daubert* motions and a renewed motion to dismiss."  Stay Opp'n at 8.

*First*, thousands of key documents about Fahad al Thumairy, Omar al Bayoumi, and the Saudi government's operations inside the U.S. were not obtained until recently, after (1) President

---

[3] *See, e.g.*, ECF No. 6154-3 (Apr. 2020 Hunt declaration); *see also* Osman Kaldirim (June 13, 2019 deposition of Director at King Fahad Mosque in Los Angeles); Akram Alzamari (Mar. 11, 2020 deposition of eyewitness); Ed and Judith Chimielewski (Apr. 14, 2021 declaration of eyewitnesses); Al-Mohdar Mohamed Abdullah Zeid (May 7 & 10, 2021 deposition of eyewitness); Dietrich Snell (May 10, 2021 declaration of 9/11 Commission official); Mahmood Sultan (May 17, 2021 deposition of eyewitness); Afrah Johar (May 18, 2021 deposition of eyewitness); Ibrahim Johar (May 20, 2021 deposition of eyewitness); Mohamed Johar (May 21, 2021 deposition of eyewitness); Daniel Gonzalez (May 26, 2021 declaration of former FBI Special Agent and eyewitness); Efrain Vazquez (May 26, 2021 declaration of former JTTF agent and eyewitness); Kaysan Morgan (declaration and June 21, 2021 deposition of eyewitness); Samuel Coombs (declaration and June 22, 2021 deposition of former employee of Saudi Presidency of Civil Aviation); Usman Madha (declaration and June 25, 2021 deposition of eyewitness).

[4] *See, e.g.*, Khalil al-Khalil (June 14, 2019 deposition of Saudi Embassy Islamic Affairs Deputy and Director of the Foundation overseeing the King Fahad Mosque in Los Angeles); Abdul Aziz Abdul Kareem al-Anqari (Jan. 13-14, 2021 deposition of Saudi Presidency of Civil Aviation official); Abdurrahman bin Gurmanal al-Shahri (Jan. 26-27, 2021 deposition of member of Saudi Royal Committee reviewing Ministry of Islamic Affairs (MOIA) officials working abroad); Ahmed al Qattan (Feb. 10, 2021 deposition of Saudi Embassy official); Saud Abdullah al-Ghudaian (Feb. 23-24, 2021 deposition of MOIA official); Abdullah al-Awad (Mar. 9, 2021 deposition of official at Saudi Consulate in Los Angeles); Sami al Ibrahim (Mar. 21, 2021 deposition of Saudi Consulate official); Saleh al-Shaikh (Mar. 23-24, 2021 deposition of MOIA Minister); Adel al-Sadhan (Mar. 30-31, 2021 deposition of MOIA Propagator); Mutaeb al-Sudairy (Apr. 1-2, 2021 deposition of MOIA Propagator); Abdullah al-Jaithen (Apr. 7-9, 2021 deposition of MOIA Propagator); Ismail Mana (Apr. 21, 2021 deposition of official at Saudi Consulate in Los Angeles); Majed al-Mersal (May 27-28, 2021 deposition of MOIA ropagator); Faisal al-Muhanna (June 3, 2021 deposition of Saudi government agent); Omar al-Bayoumi (June 9-11, 2021 deposition of Saudi government agent); Musaed al-Jarrah (June 17-18, 2021 deposition of Saudi Embassy Islamic Affairs Deputy); Zeinab Afifi (June 23, 2021 deposition of receptionist at Saudi Embassy); Fahad al-Thumairy (June 28-30, 2021 deposition of MOIA Propagator and Imam of the King Fahad Mosque).

[5] *See, e.g.*, ECF No. 6834 (June 2021 letters of request to obtain MPS production filed by K&K); ECF No. 7832 (Apr. 2022 declaration of K&K attorney James Gavin Simpson describing the efforts to obtain the MPS discovery).

[6] The expert reports, served on April 1, 2022, were from Lawrence Dunham (former U.S. Assistant Chief of Protocol, U.S. Department of State), Dr. Alexander Meleagrou-Hitchens (Lecturer in Terrorism and Radicalisation, King's College London), Dr. Emile A. Nakhleh (former Senior Intelligence Service Officer, U.S. Central Intelligence Agency), Capt. Barry Schiff (piloting and aviation expert), Steven N. Simon (former member of the U.S. National Security Council, Senior Director for the Middle East and North Africa), and Bassem Youssef (former FBI Unit Chief and FBI Special Agent).

Biden signed Executive Order 14040 in September 2021, which led to the production of FBI and other U.S. government documents (some of which had previously been withheld by former Attorney General Barr as "state secrets") over a seven-month period ending in May 2022; and (2) the Metropolitan Police Service produced thousands of pages of documents in March 2022, including numerous contemporaneous videos and photographs from Omar al Bayoumi's time in California when he sponsored the 9/11 hijackers in San Diego.[7]

*Second*, Saudi Arabia ignores that the investigation of these newly discovered facts by K&K and its investigators is active and ongoing. *See* ECF No. 8613 at ¶ 3; ECF No. 8701 at ¶ 2. As stated by Mr. Maloney, "the immediate removal of K&K from the PEC threatens harm to the development of K&K's investigatory and discovery work to the detriment of all 9/11 death and injury plaintiffs." ECF No. 8701 at ¶ 2. Because of work product concerns and security issues, further details regarding K&K's current work can only be provided to the Court on an *ex parte* basis. *Id.*

*Third*, Saudi Arabia's off-hand suggestion that the next stage of the case will only involve "briefing," Stay Opp'n at 8, is sharply disputed. ECF No. 8157 at 2-3 (June 2022 submission of PEC, then including K&K). Among other things, Saudi Arabia misconstrues the governing procedures, including the burden of proof on Saudi Arabia, and the need for a jurisdictional hearing with testimony from fact and expert witnesses on the determinative issues, particularly where, as here, those issues turn on questions of witness credibility. *Id.* Nor does Saudi Arabia consider that this case will require merits discovery and proceed to trial after K&K successfully opposes (again) Saudi Arabia's renewed motion to dismiss.

---

[7] In December 2021, the *Ashton* Plaintiffs, represented by K&K, moved for expedited additional discovery of Saudi Arabia based on the first tranche of documents produced pursuant to the Executive Order. ECF No. 7481. That motion remains undecided.

*Fourth*, as to any *Daubert* motions, K&K handled the reports and depositions of six of the seven experts offered by plaintiffs.  K&K has the working relationships with those experts and the background necessary to properly respond to any motions regarding the testimony.  K&K also led the depositions of Saudi Arabia's three experts and is best positioned to lead any challenges to their opinions.

*Finally*, and most importantly, Saudi Arabia completely overlooks the sheer complexity of assembling the vast factual record in this case for any motions and hearings before this Court and the importance of K&K's knowledge and experience, as the lead PEC firm prosecuting the case against Saudi Arabia for the past five years, to properly execute these critical tasks.  ECF No. 8701 at ¶ 3.

Saudi Arabia continues its extraordinary and dangerous campaign to hobble the proper representation of its party-opponent, the death and injury plaintiffs.  It is wholly inappropriate for Saudi Arabia to make suggestions as to how K&K and other plaintiffs' counsel should best handle the plaintiffs' claims.  Saudi Arabia's arguments must be viewed through the lens of its overarching efforts to advance its own defenses and defeat the 9/11 plaintiffs' claims in this litigation.  *See, e.g.*, Stay Opp'n at 10 (Saudi Arabia concluding its brief with the argument that "no one . . . directed Omar Al Bayoumi or Fahad Al Thumairy to assist the 9/11 hijackers . . . .").

## II.   K&K Is Likely to Succeed on the Merits

Because K&K refiled its stay motion for the Court's consideration at the upcoming December 8 oral argument along with the submission and full briefing of K&K's objections, ECF No. 8700, K&K presents this short response to Saudi Arabia's opposition to the stay motion in order to spare duplication of arguments found in K&K's objections and (soon to be filed) reply

brief in support of its objections. Saudi Arabia's tactics in its opposition to K&K's objections demonstrate the high likelihood of K&K's success on the merits.

The Magistrate Judge acted contrary to law when the court exceeded its authority under Rule 37(b). As stated in K&K's objections, Rule 37(b)(2)(A) "requires 'party' misconduct as the foundation for any sanctions, including sanctions against an attorney" and "there is no allegation of such misconduct" in this case. Obj. 16. The Second Circuit's analysis in *Apex Oil Co. v. Belcher Co. of New York*, 855 F.2d 1009, 1013-14 (2d Cir. 1988), which held that the term "party" under an earlier provision of Rule 37 does not include the party's attorney, confirms that the Magistrate Judge contravened the law. *See also, e.g.*, *Kleiman v. Chertoff*, 2007 WL 9706519, at *9 (E.D.N.Y. July 10, 2007) (applying *Apex Oil Co.* in holding that "Rule 37 cannot provide the basis for the imposition of sanctions on [plaintiff's counsel]"). It was inappropriate for Saudi Arabia to submit its post-hearing proposed findings seeking broad Rule 37 sanctions while failing to disclose *Apex Oil Co.* to the court, ECF No. 7389 ¶¶ 301-03, 308, particularly where the Magistrate Judge did not allow a reply to the post-hearing submissions and denied K&K's request for oral argument, ECF Nos. 7317, 8544 at 64. Tellingly, Saudi Arabia continues to avoid discussion of *Apex Oil Co.*'s holding in all of its papers and instead (i) cites Second Circuit caselaw where the court engaged in the fact-intensive inquiry of whether an attorney's actions should be imputed to their client for purposes of a default judgment under Rule 55, and (ii) otherwise attacks a strawman, namely the scope of "just orders" sanctions *once Rule 37 "party" conduct is established*. Stay Opp'n at 5-6; Obj. Opp'n 21-27. As will be detailed in K&K's reply brief in support of its objections, K&K did not forfeit this legal argument, as the Magistrate Judge failed to notify K&K "of the authority under which sanctions [we]re being considered," *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 97 (2d Cir. 1997), and subsequently concluded that K&K "may file Rule 72(a) objections

to this Opinion and Order, which will cure any possible notice issues." ECF No. 8544 at 35. The Magistrate Judge's clear legal error in misconstruing Rule 37, by itself, warrants a stay of K&K's immediate removal. *See In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007).

Moreover, the Magistrate Judge clearly erred in finding that that the K&K firm willfully breached the governing protective orders. All direct evidence—including multiple declarations by John Fawcett and K&K attorneys, hours of testimony, personal cell phone records, and internal emails and documents—confirm the truth of Fawcett's confession: he acted alone, destroyed evidence of his misconduct, and leaked the transcript because the public "must be forewarned in order to have some chance to protect themselves" from Musaed al Jarrah. *See* Obj. 11 (Fawcett's Statement), 21-26. No circumstantial evidence supports the finding that K&K was involved with Fawcett's leak. Obj. 26-35. In concluding otherwise, the Magistrate Judge overlooked—and therefore did not engage with—documentary evidence that disproves many of the key "facts" that the court "found." *See Anderson v. City of Bessemer*, 470 U.S. 564, 575 (1985) (courts may "find clear error even in a finding purportedly based on a credibility determination" where "[d]ocuments or objective evidence" contradict the finding). Saudi Arabia's opposition ignores this objective evidence and recites the erroneous "fact" findings verbatim. Obj. Opp'n 27-36. It also misleadingly (and repeatedly) claims that the court made "credibility determinations" that it did not in fact make. *See, e.g.*, Obj. Opp'n 27-28 & n.11, 29, 34.

Finally, the removal of K&K from the PEC was not commensurate with Fawcett's breach. Because K&K attorneys were deceived by Fawcett, it was an abuse of discretion to impose such a draconian sanction. Obj. 38-40. The sanction was also out of step with caselaw in this Circuit involving similar violations of protective orders, Obj. 38, and particularly misplaced as the

7

Magistrate Judge found that the leaked transcript itself was not all that "important," ECF No. 8544

at 49, and identified no "litigation advantage" or "actual prejudice" to Saudi Arabia.  Obj. 36-37

(quoting *Jay v. Spectrum Brands Holdings, Inc.*, 2015 WL 6437581 (S.D.N.Y. Oct. 20, 2015)).[8]

## **CONCLUSION**

The Court should stay the immediate removal of K&K from the PEC pending the Court's

resolution of K&K's meritorious objections.

Dated: November 25, 2022
       New York, New York

                                              Respectfully submitted,

                                               /s/ Edward M. Spiro

Emily Kirsch                                  Edward M. Spiro
Paul Niehaus                                  MORVILLO ABRAMOWITZ GRAND
KIRSCH & NIEHAUS PLLC                            IASON & ANELLO P.C.
950 Third Avenue, 19th Floor                  565 Fifth Avenue
New York, NY 10022                            New York, NY 10017
(212) 832-0170                                (212) 856-9600
emily.kirsch@kirschniehaus.com                espiro@maglaw.com

---

[8] Although the first and second factors (likelihood of success on the merits and irreparable injury absent a stay) are "the most critical," *Nken v. Holder*, 556 U.S. 418, 434 (2009), the remaining two factors (whether a stay will substantially injure other parties and where the public interest lies) also heavily favor K&K.  Given the firm's central role on the PEC for nearly two decades and its lead role in prosecuting the case against Saudi Arabia, maintaining the decades-long status quo will serve the public interest by promoting a more efficient resolution of this matter and by avoiding significant disruptions to the internal structure of the PEC before K&K's meritorious objections are resolved. No other party will be "substantially injured" by maintaining a decades-long status quo until K&K's objections are resolved.  *See* Nken, 556 U.S. at 434.