November 25, 2022

**VIA CM/ECF**

The Honorable George B. Daniels
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *In re Terrorist Attacks on September 11, 2001*, No. 03-md-1570 (GBD) (SN)

Dear Judge Daniels:

On behalf of Mr. Naseer A. Faiq as *amicus curiae*, we write concerning the objections to Magistrate Judge Netburn's August 22, 2022 Report and Recommendation (the "Report," ECF No. 8463) of the Joint Creditors (ECF Nos. 8733, 8735) and the *Ashton* Plaintiffs (ECF 8756).

Mr. Faiq respectfully requests that the Court consider his previously filed brief as *amicus curiae* (ECF No. 7932-1) in resolving the pending objections. We will not repeat the contents of that brief here. Given the lack of adversarial briefing and what is at stake for the Afghan people, Mr. Faiq respectfully offers the following supplemental observations.

1. The Joint Creditors concede that granting turnover here would require interpreting the TRIA as authorizing confiscating the central reserves of a foreign sovereign held in a U.S. bank in the absence of adjudicative and personal jurisdiction over the foreign sovereign; a judgment against the sovereign; and even a claim for liability against the sovereign. *See* ECF No. 8733 at 22-28 (arguing no need for jurisdiction over Afghanistan to take its central reserves), ECF 8735 at 6, 17 (arguing neither a judgment nor a claim of liability against Afghanistan is needed to take its central reserves). Yet they cannot cite a single case in the 20-year history of the TRIA, or the nearly 50-year history of the FSIA, that supports any one of those conclusions, much less all three.[1] Nor could the statute be plausibly interpreted to so authorize; the TRIA narrowed slightly "the asymmetry between jurisdiction and execution immunity in the FSIA" that frequently results in "a right without a remedy," *Walters v. Indus. & Commercial Bank of China*, 651 F.3d 280, 289 (2d Cir. 2011) (citation omitted)—but it did not invert it, to provide a remedy without a right.

2. Among its other defects, the Joint Creditors' assertion that, under N.Y. C.P.L.R. § 5225(b), the Court needs jurisdiction only over the Federal Reserve Bank of New York as the alleged

---

[1] The Joint Creditors rely heavily on *United States v. Assa Co.* ["*Assa I*"], 934 F.3d 185 (2d Cir. 2019), claiming it supports them, *see* ECF No. 8733 at 23-24 & n.51, 27; ECF No. 8735 at 7-13, when the opposite is true. *Assa I* explicitly distinguished the specific type of civil forfeiture action there—which is pursuant to statutes conferring jurisdiction *only* over a suit brought by the United States—from actions brought by private litigants to satisfy private judgments. 934 F.3d at 190. Jurisdiction aside, *Assa I* (and all other relevant precedent) also presupposes that efforts to take sovereign property would be based on the liability *of* the sovereign, rather than a third party.

garnishee (ECF No. 8733 at 24-25), ignores the recognition problem identified in the Report (at 27-37). As Joint Creditors concede, that statute requires the Court to find that the judgment debtor has a property interest in the property the creditor is trying to reach. *See* ECF No. 8733 at 17. But Afghanistan is not the judgment debtor here; the Taliban is. To order turnover, the statute thus requires the Court to hold that the Taliban has a property interest in Afghanistan's central reserves—and the only way *that* could be true is by dint of the Taliban being the government of Afghanistan, which is a conclusion this court cannot reach.[2] *See Restatement (Third) of Foreign Relations Law of the United States* § 205(2) ("[A] regime not recognized as the government of a state is not entitled to property belonging to that state located in the United States").

For similar reasons, the proffered declaration (ECF No. 8734) is irrelevant: it argues only that the Court could conclude that the Taliban "controls" a state institution without running afoul of a recognition problem. It says absolutely nothing about taking a foreign sovereign's property, much less its central reserves.[3]

Finally, the Joint Creditors' argument that the Court need not even imply that the Taliban is the government of Afghanistan to take the latter's central reserves, *see, e.g.*, ECF No. 8733 at 44, cannot be reconciled with the representations upon which DAB's assets were restrained: that the Taliban "is now the government of Afghanistan." ECF No. 7765-1 (*Havlish* writ of execution).[4]

3.  Mr. Faiq agrees with the *Ashton* Plaintiffs (ECF 8756 at 1-2) that the Court should deny the Joint Creditors' request to "stay" the dissolution of their writs pending appeal. *See* ECF No. 8733 at 59-60. In addition to the reason cited by the *Ashton* Plaintiffs, *id.*, Mr. Faiq offers three more. First, there is no jurisdictional basis to maintain the writs. Second, as in the text accompanying note 4, *supra*, the Joint Creditors now disclaim the basis upon which they restrained DAB's assets. And third, there is no risk of dissipation here—and thus no risk of irreparable injury—as the Joint Creditors themselves have recognized. *See* Joint Creditors' Letter dated Aug. 21, 2022, ECF No. 8419 at 3 n.4 ("Here, of course, the DAB Assets are affirmatively frozen by the United States, and there is no risk that they will be 'withdraw[n] [by the judgment debtor] . . . before they could be' ordered delivered to the Joint Creditors (or anyone else)" (citation omitted, alterations in original)); *id.* at 3-4 ("legally impermissible" to seek to restrain assets "as a ploy for priority," rather than to prevent dissipation).

---

[2] The suggestion that the TRIA "provides the relevant framework for analyzing" property rights, ECF No. 8733 at 17, is wrong: it is well established that the FSIA and the TRIA "merely attach[] consequences, federally defined," to property rights created elsewhere. *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993, 1001 (2d Cir. 2014) (citation omitted) (holding as much regarding the FSIA); *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 211 (2d Cir. 2014) (same holding regarding the TRIA).

[3] The declaration's arguments also should have been in a brief. *See In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp 2d 61, 63, 69 n.11 (S.D.N.Y 2001) (explaining that the Second Circuit requires excluding expert testimony on legal conclusions, even regarding a motion to a judge, because "[e]ach courtroom comes equipped with a 'legal expert,' called a judge" (citation omitted)).

[4] *See also Doe*, No. 1:20-mc-00740, ECF No. 26 (order permitting service of the "requested writ of execution" upon learning of the *Havlish* writ, citing the "comparable procedural posture").

Mr. Faiq reiterates his deepest sympathy for the American victims of the Taliban and his appreciation for the United States' commitment to the rule of law.

Respectfully submitted,

| */s/ Natasha Arnpriester* | */s/ Justin B. Cox* |
|---|---|
| Natasha Arnpriester (5673678) | Justin B. Cox (*pro hac vice*) |
| James A. Goldston (*pro hac vice*) | Law Office of Justin B. Cox |
| A. Azure Wheeler (5245493) | P.O. Box 1106 |
| Open Society Justice Initiative | Hood River, OR 97031 |
| 224 West 57th Street | |
| New York, NY 10019 | *Counsel for Amicus Curiae* |

3