**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

No. 03-MD-01570 (GBD) (SN)

This document relates to: *All Actions*

ORAL ARGUMENT SCHEDULED
DECEMBER 8, 2022 @ 10:00 AM

**REPLY IN SUPPORT OF RULE 72 OBJECTIONS TO**
**MAGISTRATE JUDGE SARAH NETBURN'S ORDER IMPOSING**
**SANCTIONS ON KREINDLER & KREINDLER LLP**

Emily Kirsch
Paul Niehaus
KIRSCH & NIEHAUS PLLC
950 Third Avenue, 19th Floor
New York, NY 10022
(212) 832-0170
emily.kirsch@kirschniehaus.com

Edward M. Spiro
MORVILLO ABRAMOWITZ GRAND
 IASON & ANELLO P.C.
565 Fifth Avenue
New York, NY 10017
(212) 856-9600
espiro@maglaw.com

*Counsel for Non-Party Kreindler & Kreindler LLP*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ...................................................................................... 1

STANDARD OF REVIEW .............................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.     The Magistrate Judge's Finding that K&K "Willfully Breached" the Protective Orders, in Light of the Full Record, Cannot be Sustained as a Matter of Law. ............................. 2

       A.     Direct Evidence Confirms the Truth of Fawcett's Confession ............................. 2

       B.     No Circumstantial Evidence Supports the Finding that K&K Willfully Breached the Protective Order ........................................................................ 4

              1.     K&K's "Litigation Strategy" .................................................................. 4

              2.     K&K's Post-Leak Investigation ............................................................. 5

              3.     K&K's Responses to the Magistrate Judge's Orders ............................. 7

              4.     The Timing of Phone Calls .................................................................... 8

II.    The Magistrate Judge's Order Is "Contrary to Law" Because Rule 37(b) Did Not Authorize Sanctions Against K&K .......................................................................... 11

CONCLUSION ................................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Am. Cash Card Corp. v. AT&T Corp.*,
   2000 WL 357670 (2d Cir. Apr. 6, 2000) ............................................................. 12

*Anderson v. City of Bessemer*,
   470 U.S. 564 (1985) .............................................................................. 2, 4, 8

*Apex Oil Co. v. Belcher Co. of New York*,
   855 F.2d 1009 (2d Cir. 1988) ................................................................. *passim*

*Blackrock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, Nat'l Ass'n*,
   2018 WL 3863447 (S.D.N.Y. Aug. 13, 2018) ........................................................ 1

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,
   602 F.2d 1062 (2d Cir. 1979) ....................................................................... 12

*Copeland v. Rosen*,
   194 F.R.D. 127 (S.D.N.Y. 2000) ..................................................................... 14

*Doe v. Menefee*,
   391 F.3d 147 (2d Cir. 2004) ........................................................................ 11

*Env't Def. v. Duke Energy Corp.*,
   549 U.S. 561 (2007) ................................................................................ 13

*Fonar Corp. v. Magnetic Resonance Plus, Inc.*,
   128 F.3d 99 (2d Cir. 1997) ...................................................................... 13, 14

*Grider v. Keystone Health Plan Cent., Inc.*,
   580 F.3d 119 (3d Cir. 2009) ........................................................................ 13

*Homaidan v. Sallie Mae, Inc.*,
   3 F.4th 595 (2d Cir. 2021) ......................................................................... 12

*In re Asia Glob. Crossing, Ltd.*,
   322 B.R. 247 (Bankr. S.D.N.Y. 2005) ................................................................. 6

*Ins. Ben. Administrators, Inc. v. Martin*,
   871 F.2d 1354 (7th Cir. 1989) ...................................................................... 13

*Kleiman v. Chertoff*,
   2007 WL 9706519 (E.D.N.Y. July 10, 2007) .......................................................... 13

ii

*MacNamara v. City of New York*,
   249 F.R.D. 70 (S.D.N.Y. 2008) ............................................................................ 1

*Markus v. Rozhkov*,
   615 B.R. 679 (S.D.N.Y. 2020) ............................................................................ 14

*NPF Franchising, LLC v. SY Dawgs, LLC*,
   37 F.4th 369 (6th Cir. 2022) .............................................................................. 13

*Schoenberg v. Shapolsky Publishers, Inc.*,
   971 F.2d 926 (2d Cir. 1992) .......................................................................... 14, 15

*SEC v. McNulty*,
   137 F.3d 732 (2d Cir. 1998) .............................................................................. 12

*Shipstad v. One Way or Another Prods., LLC*,
   2017 WL 2462657 (S.D.N.Y. June 6, 2017) ...................................................... 14

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*,
   685 F.3d 486 (5th Cir. 2012) ............................................................................. 14

*Sun River Energy, Inc. v. Nelson*,
   800 F.3d 1219 (10th Cir. 2015) ......................................................................... 13

*Ted Lapidus, S.A. v. Vann*,
   112 F.3d 91 (2d Cir. 1997) .......................................................................... 14, 15

*Thompson v. Jam. Hosp. Med. Ctr.*,
   2015 WL 7430806 (S.D.N.Y. Nov. 20, 2015) ...................................................... 7

*U.S. ex rel. Eisenstein v. City of New York*,
   556 U.S. 928 (2009) ........................................................................................... 13

*United States v. Pauling*,
   924 F.3d 649 (2d Cir. 2019) .......................................................................... 9, 11

*United States v Thorn*,
   446 F.3d 378 (2d Cir. 2006) ................................................................................ 2

*Williams v. Beemiller, Inc.*,
   527 F.3d 259 (2d Cir. 2008) ................................................................................ 1

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*,
   564 F.3d 110 (2d Cir. 2009) ................................................................................ 2

**<u>Statutes</u>**

28 U.S.C. § 636(e)(6)(B) ........................................................................................... 14

**<u>Rules</u>**

Fed. R. Civ. P. 11(c) .................................................................................................. 11

Fed. R. Civ. P. 37(a)(5)(A) ........................................................................................ 12

Fed. R. Civ. P. 37(b)(2)(A) ................................................................................... *passim*

Fed. R. Civ. P. 37(b)(2)(C) ........................................................................................ 12

Fed. R. Civ. P. 37(c) (1987) ....................................................................................... 13

Fed. R. Civ. P. 37(d)(3) .............................................................................................. 12

Saudi Arabia ignores the objective, documentary evidence undermining the findings of Magistrate Judge Sarah Netburn and, instead, repeats the erroneous findings verbatim. ECF Nos. 8751 ("Opp'n"), 8544 ("Ord."). Saudi Arabia proposed those very findings to the court in its post-hearing submission. Saudi Arabia also avoids addressing the plain textual analysis of Rule 37(b), which requires "party" misconduct as the foundation of any sanctions, and the Second Circuit's holding in *Apex Oil Co.*, which confirms that a law firm is not a Rule 37 "party." As demonstrated in Kreindler & Kreindler LLP ("K&K")'s objections, the full record shows that

- a longtime, trusted consultant secretly leaked a deposition transcript on his own initiative to "forewarn[]" the public after learning disturbing information about the deponent;

- the consultant took substantial steps to prevent K&K from discovering the source of the leak and lied to K&K for over two months to hide his misconduct;

- K&K's attorneys were unaware of the consultant's betrayal and, due to the steps taken by the consultant, could not have learned of it until the day that he confessed; and

- K&K reported the facts to the Court the same day that it learned the truth.

ECF No. 8681 ("Obj."). By adopting Saudi Arabia's proposed findings, the Magistrate Judge overlooked documents that disprove the court's key "fact" findings, analyzed the record under the wrong evidentiary standard, and sanctioned K&K without authority under Rule 37(b).

## STANDARD OF REVIEW

The parties agree that, under Rule 72(a), this Court must modify or set aside an order that is "contrary to law" or "clearly erroneous." *See* Opp'n 19; Obj. 15. On the law, Saudi Arabia incorrectly suggests (at 19) that this Court should defer to the Magistrate Judge's views, even though it is settled that an "interpretation of the Federal Rules of Civil Procedure" is reviewed *de novo*. Obj. 15 (quoting *Williams v. Beemiller, Inc.*, 527 F.3d 259, 264 (2d Cir. 2008)).[1] On the

---

[1] Cited by Saudi Arabia (at 19), *Blackrock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 2018 WL 3863447, at *3 (S.D.N.Y. Aug. 13, 2018), involved an attorney-client privilege determination (a mixed question of fact and law), not a textual interpretation (a pure question of law). *Cf. MacNamara v. City of New York*, 249 F.R.D. 70, 77 (S.D.N.Y. 2008) (Sullivan, J.) ("An order is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law or rules of procedure." (cleaned up)).

facts, Saudi Arabia argues (at 19) for heightened deference to the Magistrate Judge's findings because they were "at least partially based on a credibility determination" and because the Magistrate Judge has previously been "deeply involved in discovery matters in the case for years." As detailed below, however, Saudi Arabia misrepresents which findings were based on credibility determinations.  Such determinations require an assessment of a "witness's demeanor" or another "quality that a review of the transcript would not reveal." *United States v Thorn*, 446 F.3d 378, 384 (2d Cir. 2006).  Otherwise, the "substance of testimony," even if labeled as "incredible" by the trial judge, is "reviewed meaningfully by examining the transcripts." *Id.*  Moreover, a reviewing court may "find clear error even in a finding purportedly based on a credibility determination" where "[d]ocuments or objective evidence" contradict the finding or the finding itself is "internally inconsistent or implausible on its face."  *Anderson v. City of Bessemer*, 470 U.S. 564, 575 (1985).  Where, as here, the court is the "accuser, fact finder and sentencing judge all in one," review is "more exacting than under the ordinary" deferential standard.  *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 113-14 (2d Cir. 2009) (cleaned up).

## ARGUMENT

I. **The Magistrate Judge's Finding that K&K "Willfully Breached" the Protective Orders, in Light of the Full Record, Cannot be Sustained as a Matter of Law**

As an initial matter, Saudi Arabia misleadingly frames its response, claiming that the court made many "credibility determinations."  Opp'n 27-28 & n.11; *id.* at 28 ("[Her] findings were supported by her observation of the witnesses.").  The only such determination involved John Fawcett's testimony about his July 22 phone calls, Ord. 19, 39, and is erroneous, *infra* Part I.B.4.

### A. **Direct Evidence Confirms the Truth of Fawcett's Confession**

Saudi Arabia does not and cannot dispute that all direct evidence—including multiple declarations by Fawcett and K&K attorneys, hours of testimony, firm documents,

2

contemporaneous emails, phone logs, and personal text messages—support the truth of Fawcett's September 27 written confession: he acted alone, destroyed evidence of his misconduct, and leaked the transcript because the public "must be forewarned in order to have some chance to protect themselves" from Musaed al Jarrah.  *See* Obj. 21-26; KSAX-108A (full written confession).

Saudi Arabia strategically avoids discussion of Fawcett's written confession, Opp'n 27-36, which the court found "he had drafted himself" and "wrote . . . in his own words," Ord. 26.  The document undermines the court's reasons for finding that he acted in concert, rather than alone:

- The court found Fawcett's "motive" for leaking the transcript—apparently to "protect the children of Morocco"—was "fabricated."  Ord. 28.  But Fawcett wrote in his confession that he decided to leak the transcript because "the public at least must be forewarned in order to have some chance to protect themselves" from Jarrah and that he "could not allow Musaed al Jarrah's criminal acts to remain a secret."  KSAX-108A; Obj. 25.

- The court "doubt[ed]" the "genuineness" of Fawcett's motive because he "did not alert anyone in the U.S. or Moroccan governments about his concerns."  Ord. 28.  But Fawcett wrote that "the Saudi [and U.S. governments] continue to protect Musaed al Jarrah rather than prosecute him" and so "[t]he only venue for such warning is the media."  KSAX-108A; Obj. 23, 25 n.10, 26.

- The court declined to find that Fawcett acted alone because he learned about Jarrah's conduct "about six to eight months" before the deposition "on an unconfirmed basis."  Ord. 28.  But Fawcett wrote that confirmation at the deposition that Jarrah was "a child pornographer" was a "revelation[]" to him.  KSAX-108A; Obj. 25-26; *accord* Tr. 469:11 (Fawcett: "It [had been] a rumor.").

- The court also found (remarkably) that, Fawcett's adoption of two children from Morocco following his human rights work, *undermined* the truth of his confession because "[h]is 'children' referenced in his declaration were at least 21 by the time of the leak."  Ord. 28.[2]

- The court found, as to Fawcett's September 27 declaration, that "there was *no evidence at the hearing or in Fawcett's phone records* that he participated in th[e] additions" regarding his knowledge of Morocco's history of child sex trafficking.  Ord. 27 (emphasis added). But that overlooks: (a) phone records showing multiple calls between Fawcett and Benett or Pounian on September 27, KSAX-136 at 2-3; (b) Fawcett's testimony that "we talked about [the additions] on the phone. . . . long phone calls," Tr. 466:22-467:2; and (c) Fawcett's testimony that "I signed what I believed to be a correct declaration . . . . I felt that was my declaration," Tr. 467:12-19; *see also* Obj. 26 n.11.

---

[2] The court concluded the hearing by *sua sponte* asking Fawcett the current age of the children he previously adopted, without any follow-up questions regarding his written motive (*i.e.*, Jarrah's conduct) for the leak.  *See* Tr. 489:12-17.

This evidence—overlooked by the court—demonstrates Fawcett's actual motive and disproves the court's bedrock finding that additional details in his September 27 declaration were "fabricated."[3]

### B.    No Circumstantial Evidence Supports the Finding that K&K Willfully Breached the Protective Order

Saudi Arabia uses the same diversionary tactics to avoid addressing the record evidence undermining the "circumstantial evidence" proposed by Saudi Arabia and wrongly adopted by the Magistrate Judge.  *Compare* Opp'n 27-36, *with* Obj. 26-35.

### 1.    K&K's "Litigation Strategy"

Saudi Arabia does not dispute that it makes no sense for a *U.S. law firm* to think it could "force" any sovereign nation—let alone Saudi Arabia—into a settlement through press attention, when the *U.S government* cannot move Saudi Arabia through press attention.  Obj. 27.  Nor does Saudi Arabia dispute that it makes even less sense for the firm to leak a document unrelated to the merits and (as the Magistrate Judge concluded) not "important" to the litigation.  Obj. 27 (quoting Ord. 49).  The court's finding that K&K's "motive for the leak"—a quixotic "litigation strategy," laden with risk, that seeks to "force" Saudi Arabia into a settlement with such attention, *see* Obj. 27-28 (quoting Ord. 37)—should be rejected as "implausible on its face."  *Anderson*, 470 U.S. at 575.  And the evidence cited by Saudi Arabia is threadbare.  *See* Opp'n 31 n.13, 28.  Kreindler's testimony—that he has made public statements for plaintiffs "to put pressure on the defendant" and the "form of a resolution may or may not be what we traditionally think of as a settlement,"

---

[3] In addition to overlooking the documents, it was "internally inconsistent," *Anderson*, 470 U.S. at 575, for the court to credit Fawcett's September 30 declaration (which included the substantial steps he took to hide his misconduct) but not credit Fawcett's September 27 declaration (which included his knowledge, from his human rights work, that "Morocco has a dreadful history of child sex trafficking").  It was also internally inconsistent for the court to conclude that Fawcett was "unwilling to sign a perjurious declaration" (in "finding" that K&K attorneys attempted to "fabricate" additions to the September 27 declaration) while failing to credit the remaining portions of the same declaration, avowing (under penalty of perjury) that he acted alone and stating his reason for leaking the transcript.  Obj. 25 n.10. And despite phone calls between Fawcett and Pounian (about which Saudi Arabia asked no questions), it was erroneous for the court to speculate that Pounian "did not object" when Fawcett removed draft language from his declaration.  Opp'n 8 (citing Ord. 13, 40 (citing only the declaration itself)).

*see* Obj. 27 (quoting Tr. 24:3-25:5)—is unremarkable and true of almost any major case.  And Kreindler's past criticism of the Protective Orders as overbroad supports *the opposite* inference: that, as an officer of the court, he has taken the orders seriously despite his chagrin.  Obj. 28.

### 2.      K&K's Post-Leak Investigation

As demonstrated in the objections, the Magistrate Judge's finding that other K&K attorneys were "willfully blind"—because K&K's investigation was supposedly "lackadaisical," "paltry," "facially deficient," and "almost designed to avoid implicating Fawcett," Ord. 2, 39, 41, 44, 45— should also be rejected.  Obj. 28-30.  The court did not address objective evidence—including contemporaneous emails amongst the investigative team—that demonstrates K&K's attorneys took the investigation seriously from the start and were *lied to and deceived* by Fawcett.  Obj. 29.[4] Rather than compare K&K's investigation to the nearly identical investigations by other PEC members and other plaintiffs and defense firms, Obj. 28, the court (despite evidence of the substantial steps Fawcett took to hide his misconduct) unfairly criticized K&K based on steps it could have taken to potentially catch Fawcett after the leak occurred—steps that no other firm took.  Obj. 29; *see also, e.g.*, ECF Nos. 6981-4 (Kellogg Hansen), 6991 (Cozen O'Connor), 6992 (Motley Rice); *accord* Tr. 293:23-295:3 (Maloney).

Saudi Arabia repeats the court's erroneous finding that K&K "never 'directly question[ed]' Fawcett about his role in the breach.'"  Opp'n 30, 34; *see also* Ord. 13 ("Fawcett does not recall

---

[4] An email from Maloney to K&K's IT manager, John Hartney, shows that on July 16, the day after the publication, Fawcett told Maloney that he sent a copy of the transcript to a consultant overseas but did not send it to anyone else. *See* KK-53 (email); *accord* Tr. 252:1-10 (Maloney: "I was in his office and I asked [Fawcett]."), 407:8-9 (Pounian: "I asked Mr. Fawcett if he knew anything about how Mr. Isikoff got the transcript.").  Maloney then directed Hartney to confirm that no one else at K&K had sent the transcript to Isikoff.  *See* KK-53.  When that search came up empty, Maloney directed Hartney to "check to see if it was emailed to[ ]*anyone* outside of" K&K to determine "if it was sent to someone else who may have in turn sent it to Isikoff."  KK-41 at 1 (emphasis in original); *accord* Tr. 285:8-15 (Maloney).  The following week, in a July 22 email to the entire 9/11 litigation team, Maloney wrote that "it is fair to say . . . no Jarrah depo transcript was sent outside the firm save for one sent by John Fawcett to one of our investigating consultants."  KK-54.  Fawcett was included on that email yet remained silent until his September 27 confession.  (For a catalogue of overlooked K&K email communications throughout the investigation, see ECF No. 8768-1 to -32.)

being questioned by anyone."). Fawcett testified, however, that K&K attorneys asked him "in substance" whether he "disclosed the transcript to Michael Isikoff." Obj. 30 (quoting Tr. 436:12-23).[5] Realizing that the Magistrate Judge failed to engage with this evidence, Saudi Arabia attempts to lace the court's order with its own "credibility determination" where none occurred. *See* Opp'n 34 ("As finder of fact watching Fawcett answer those questions, Judge Netburn could see him attempting to equivocate and ultimately failing." (citing nothing)).[6] It also claims that the court "reasonably interpreted his entire testimony as meaning that he was never directly asked," Opp'n 34, but (tellingly) fails to identify where the court weighed such evidence. The court ultimately misread Fawcett's testimony, *see* Ord. 40 (citing Tr. 436:12-23), likely prompted by Saudi Arabia's misleading post-hearing submission, *see, e.g.*, ECF No. 7389 ¶¶ 84-86.[7]

Saudi Arabia does not dispute that the court improperly evaluated K&K's investigation through hindsight, rather than in comparison to the investigations conducted by other firms. Its attempt to argue that K&K "could have" revealed Fawcett's misconduct sooner had it impounded his personal devices is unpersuasive. Opp'n 34-35. *First*, it would have been unreasonable under the circumstances for K&K to attempt to collect the personal devices of its attorneys and staff for examination; indeed, no other law firm took such a step, *see, e.g.*, ECF Nos. 6981-4, 6991, 6992; *accord* Tr. 293:23-295:3, and such an action would raise serious legal and privacy issues, *see In re Asia Glob. Crossing, Ltd.*, 322 B.R. 247, 257 (Bankr. S.D.N.Y. 2005). Even had K&K made

---

[5] Saudi Arabia (at 34) misleadingly claims that the court cited "the exact testimony" in its order, Opp'n 34, but the order only contains a general page citation, Ord. 40 (citing Tr. 436:11-439:12), and fails to address Fawcett's testimony that K&K's attorneys asked him in substance about the leak.

[6] If anything, to the extent the court assessed Fawcett's credibility as to his confession and declarations, it found him to be truthful. *See, e.g.*, Ord. 13 ("Although Fawcett has admitted to violating Protective Orders, he was apparently unwilling to sign a perjurious declaration.").

[7] Fawcett testified that he did not recall being asked the exact words "did you disclose this transcript," Tr. 439:1-12, but made clear that he was asked "in substance" if he leaked the transcript, Tr. 436:12-17; that he "misled" K&K, Tr. 436:23, that he "prevaricated and dissembled" and "avoided letting [K&K attorneys] know" what he had done, Tr. 486:24-25; *accord* Tr. 407:8-9 (Pounian: "I asked Mr. Fawcett *if he knew anything* about how Mr. Isikoff got the transcript." (emphasis added)).

such an extraordinary attempt, Fawcett previously destroyed evidence and there is no guarantee that he would not have similarly deleted the two (obscure) Signal messages with Isikoff.  KSAX-82 at 1, 3 (messages).  *Second*, the contacts themselves did not evidence wrongdoing: phone calls among the K&K employees were commonplace (not "suspicious"); Fawcett and Kreindler spoke regularly about the case, *see* KSAX-134, -135, -136; *accord* Tr. 59:19-23; Kreindler undisputedly communicated with Isikoff and his team in the lead up to his podcast appearance, Tr. 59:18-24, ECF 7147-6 at 6; and Liz Crotty was a long-time friend of Fawcett and former K&K employee, Tr. 447:5-16.  This Court should reject the finding of "willful blindness" by K&K attorneys.  *See Thompson v. Jam. Hosp. Med. Ctr.*, 2015 WL 7430806, at *3 (S.D.N.Y. Nov. 20, 2015) (no "willfulness" where breach "due to factors beyond the party's control" (cleaned up)).

### 3.      K&K's Responses to Magistrate Judge's Orders

As demonstrated in the objections, the court likewise erred when it found that K&K attempted to "frustrate," "foil," and "obstruct" the court's investigation.  Obj. 30-32; *see* Ord. 2, 41, 42, 45, 50, 57, 59, 65.  K&K submitted its declarations by the required deadlines and in compliance with the terms of the court's orders.  Obj. 30-31; *see* ECF Nos. 7011, 7147 (declarations).  It was not reasonable to compare K&K's timely compliance with the early compliance or volunteered information provided by only some of the other law firms that received the transcript.  Obj. 31 & n.14.  As the lead firm prosecuting the case against Saudi Arabia, K&K had unique work product and security concerns, including to protect the identity and safety of an investigator in Turkey who received the transcript, and Saudi Arabia's discovery demands after the leak were vastly overbroad.  Obj. 31 (citing KK-52 (email); ECF No. 6981 (motion)).

Saudi Arabia dismisses K&K's unique concerns as "self-serving assertions," Opp'n 35, and claims that, if K&K "truly thought Fawcett was innocent," it "would have had every reason"

to dispel "suspicion" by obtaining a declaration from Fawcett "sooner," *id.* at 30.  But (once again) Saudi Arabia ignores contemporaneous documentary evidence to the contrary.  *See, e.g.*, KK-52 at 1 (Pounian to Benett (July 29 email): "I'm also concerned about sharing [REDACTED]'s name with [Saudi Arabia] since he is living abroad.").[8]  Although Saudi Arabia claims that the court's "meticulous catalogue" of the record deserves "deferential review," Opp'n 35, failure to account for such conflicting documentary evidence constitutes clear error.  *See Anderson*, 470 U.S. at 575.

Saudi Arabia also repeats the court's findings regarding purported "misrepresentations" in the declarations.  Opp'n 33.  But since Fawcett acted alone and K&K attorneys did not learn of his breach until his September 27 confession, it was true that "no firm attorneys knew who was responsible for the breach until September 27."  Opp'n 33.  To the extent that, with hindsight, any K&K attorney described the firm's document retention system or the details of their investigation imprecisely, Opp'n 33, Saudi Arabia cites no evidence that the inaccuracies were intentional.  In any event, the alleged "misrepresentations" do not show that the firm knew about Fawcett's leak.[9]  Because inferences drawn from K&K's declarations do not reasonably support the finding that it was "willfully blind" to Fawcett's leak, the Court should reject these findings.

### 4.    The Timing of Phone Calls

The timing of phone calls does not "evidence" a conspiracy to leak the transcript.  Obj. 32-35.  Saudi Arabia does not dispute that Kreindler spoke with Isikoff and his staff before his July 1 podcast appearance, which was unrelated to the breach.  Obj. 32 (citing ECF No. 7147-6 at 6); *accord* Tr. 59:18-24.  Instead, Saudi Arabia repeatedly misleads regarding the two, one-minute

---

[8] Given the recent murder of Jamal Khashoggi, who had been interviewed by a K&K representative and killed in Turkey, K&K was worried about protecting the identity of its investigator who was in Turkey.  *See* Obj. 14, 21 (citing KK-52; Tr. 372:4-10 (Benett)).

[9] Saudi Arabia also repeats the court's finding that Benett "used" the hearing as a "forum" to "compound the damage caused by the breach."  Opp'n 35-36 (quoting Ord. 42).  But it is not possible to describe Fawcett's motivation for his acts (*i.e.*, Jarrah's conduct) without some (in the court's words) "disparagement [of] Saudi Arabian personnel."  Obj. 31 (quoting Ord. 42).

calls between Fawcett and Kreindler on June 28. *See* Obj. 32-33; KSAX-134 at 1-2 (stamped 12:22 p.m. and 12:23 p.m.). *First*, it selectively quotes Kreindler's testimony, suggesting that Kreindler was "very familiar with the terms" of the FBI Protective Order, Opp'n 31 (quoting Tr. 18:17), when moments earlier he testified that he "did not recall the 30-day window" for the FBI to propose redactions because he last "read [that protective order] when [he] signed it" in 2018. Tr. 18:25.[10] Saudi Arabia then misrepresents the record, claiming that the Magistrate Judge made a credibility determination about *the June 28 calls* after having "witnessed Fawcett on the stand," Opp'n 29 (quoting Ord. 39), when that credibility determination (the only such determination on the record) addressed Fawcett's explanation of his *July 22 calls. See* Ord. 19 (finding), 39 (conclusion). The court's "suspicion" surrounding these short phone calls—which were consistent with the regular and well-documented communications between Fawcett and Kreindler, and with Kreindler's testimony regarding a quick question, Obj. 32-33—does not constitute a permissible "inference" of a conspiracy. *United States v. Pauling*, 924 F.3d 649, 656 (2d Cir. 2019).[11]

The Court should also reject the Magistrate Judge's finding that the July 22 phone call, the morning after Saudi Arabia informed the PECs that it intended to move for discovery into the leak, was only between Fawcett and Kreindler, and that they probably discussed the leak. Obj. 33-35. A Verizon phone bill shows that Pounian was also on that 46-minute conference call, which (at 9:17 a.m.) naturally involved discussion of Saudi Arabia's email (at 9:14 p.m.) the night before. Obj. 33-35; *see also* ECF No. 7359-1 (phone bill and Pounian declaration).

---

[10] Saudi Arabia also ignores evidence (which the Magistrate Judge did not address) demonstrating that Kreindler usually relied on other attorneys and staff members for case details, because he operated at a strategy level. *See* Obj. 32-33 (citing Tr. 310:10-16; Tr. 74:16-19; Tr. 89:14-22).

[11] Saudi Arabia regurgitates the court's findings of "extreme reciprocal loyalty" between Fawcett and Kreindler. Opp'n 28-29 (citing Ord. 9, 43). The court only cited testimony that Kreindler viewed Fawcett as "honest and trustworthy," that Fawcett had worked at K&K for about 20 years, and that he had (in the words of Saudi Arabia's counsel) "a certain amount of loyalty" to his colleague. Ord. 9 (citing Tr. at 128:11-129:16, 417:15-18), 43 (citing Tr. 416:3-5). There is no evidence to support the inference that Fawcett's "certain amount of loyalty" (whatever that means) rose to the level of committing criminal misconduct for the firm.

Saudi Arabia defends the court's decision to ignore Pounian's declaration because it was an out-of-court statement.  Opp'n 32 n.14 (citing Ord. 17 n.8).  But Saudi Arabia does not dispute that, because of the extraordinary procedures imposed by the court before and during the hearing (*e.g.*, barring K&K attorneys and Fawcett from discussing the leak in the month before the hearing, no exchange of exhibits, direct testimony limited to the declarations, and sequestration of K&K attorneys during the hearing), it was impossible for K&K to offer testimony from Pounian about the July 22 call.  Obj. 12-13, 34 n.15.  Saudi Arabia also repeats the court's reasoning that Pounian's declaration "undercut" Kreindler's testimony because he declared the call involved, among other topics, discussion of a response to Saudi Arabia's July 21 email regarding discovery, while Kreindler testified that the call "was not about the leak."  Opp'n 32 n.14 (citing Ord. 17 n.8).  That is rhetorical hairsplitting and inaccurate.  Kreindler testified that he did not "recall what this phone call was about," but that "[m]aybe" it was about "the fact that the Court might order an investigation."  Tr. 84:13-16; *accord* Tr. 446:9-20 (Fawcett: "[It] might have been a conference call with others.").  Kreindler (and Pounian) otherwise categorically and repeatedly denied—in sworn declarations and testimony—communication or knowledge that Fawcett was the source of the leak, before his September 27 confession.  Fawcett also wrote and testified that prior to that confession he never told anyone at K&K that he was the source of the leak.  KSAX-108A.[12]

Saudi Arabia doubles down on the Magistrate Judge's refusal to credit Fawcett's testimony that he did not discuss the leak with Kreindler on the July 22 call, based in part on Fawcett's demeanor on the stand.  Opp'n 29 (citing Ord. 39).  But because that determination was also "supported" by the court's numerous "findings" that overlooked conflicting documentary

---

[12] Although not clear from the Magistrate Judge's order, given the extraordinary procedures imposed by the court before and at the hearing, *see* Obj. 12-13, 34 n.15, any potential adverse inference the court made from an attorney's (or Fawcett's) inability to recall the discussion during a specific phone call (of many) three months before the November hearing should be rejected.

evidence, and given the trial-by-surprise procedures surrounding the hearing, this Court should afford no deference to the Magistrate Judge's limited credibility determination—and otherwise unsubstantiated inference—that Fawcett and Kreindler had a private conversation on July 22 about Fawcett being the source of the leak. The Court "may not credit inferences within the realm of possibility when those inferences are unreasonable." *Pauling*, 924 F.3d at 657 (quotes omitted).

On the full record, there is neither clear-and-convincing nor a preponderance of evidence, supporting the Magistrate Judge's findings. The order should be set aside as clearly erroneous. *See Doe v. Menefee*, 391 F.3d 147, 164 (2d Cir. 2004) (collecting cases where the lower court erroneously failed to "accoun[t] for conflicting evidence or the gaps in a party's evidentiary presentation" or made "factual inferences that the evidence did not permit").

## II.    The Magistrate Judge's Order Is "Contrary to Law" Because Rule 37(b) Did Not Authorize Sanctions Against K&K

As demonstrated in K&K's objections, the Magistrate Judge exceeded her authority by sanctioning the K&K firm, because Rule 37(b) "requires 'party' misconduct as the foundation for any sanctions, including sanctions against an attorney" and "there is no allegation of such misconduct" here. Obj. 16 (quoting Fed. R. Civ. 37(b)(2)(A)). That conclusion is confirmed by the plain meaning of the term "party"; the text of Rule 37(b) and surrounding provisions; the text of Rule 11(c); and, binding caselaw, including the Second Circuit's decision in *Apex Oil Co. v. Belcher Co. of New York*, 855 F.2d 1009 (2d Cir. 1988), which held that a "party" under an earlier version of Rule 37 does not include the party's law firm. Obj. 16-19.

Saudi Arabia avoids addressing K&K's textual analysis of a Rule 37 "party" and *Apex Oil Co.*'s holding. Attempting to confuse the issue, Saudi Arabia (1) dedicates one paragraph to its interpretation of a Rule 37 "party," Opp'n 21-22, and then (2) misrepresents K&K's argument and

attacks a strawman—namely, the scope of "just orders" sanctions *after "party" misconduct has been found*.  Opp'n 23-27.[13]

Relying heavily on *SEC v. McNulty*, 137 F.3d 732 (2d Cir. 1998), Saudi Arabia argues that attorney conduct is "imputed to their client" under Rule 37(b).  Opp'n 22.  *McNulty*, however, engaged in the fact-intensive inquiry of whether a court should "impute" an attorney's conduct to the client for purposes of a Rule 60 or Rule 55 default judgment, not Rule 37.  *See* 137 F.3d at 738-40.  That inquiry turns on whether *the client* makes an evidentiary "showing" that he "attempt[ed] to monitor counsel's handling of the lawsuit."  *Id.* at 740.  The Circuit did not address—nor did it need to address—the application of *Apex Oil Co.*'s holding (as a matter of textual interpretation) that a Rule 37 "party" does not include the party's lawyer.[14]

Saudi Arabia's argument that "party," under Rule 37(b), really means "attorney, law firm, or party" fails on its own terms.  Saudi Arabia's "interpretation would render superfluous another part of" Rule 37.  *See Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595, 602 (2d Cir. 2021) (quotation marks omitted).  Under Rule 37(b)(2)(C), there would be no need to expressly authorize a monetary sanction against "the disobedient party, *the attorney advising that party, or both*" for failure to obey a discovery order.  Similar language in other provisions of Rule 37 would also be redundant.  *See* Fed. R. Civ. P. 37(a)(5)(A), (d)(3).  What is more, under Saudi Arabia's theory, the term "party" would have different meanings in the first clause of Rule 37(b)(2)(A).  An attorney representing their client during discovery would not have an "officer, director, or managing agent,"

---

[13] Saudi Arabia's strawman argument that a law firm falls within the scope of the "just orders" provision fails under the same textual analysis and caselaw raised in the objections.  Obj. 15-19.

[14] In the other Second Circuit opinion cited (at 22), the Circuit made clear that by the "Magistrate [Judge]'s finding and counsel's own admission," the client-company's principal officer "was aware of every aspect of discovery and intimately involved with the progress of the case."  *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 n.10 (2d Cir. 1979).  The unpublished disposition cited (at 22) is not precedential, *see* 2d Cir. Local Rule 32.1.1(b), and in any event, similarly turned on the district court's "amply supported," "factual determination" of "bad faith" by the "parties" themselves in failing to produce discovery and answer interrogatories. *See Am. Cash Card Corp. v. AT&T Corp.*, 2000 WL 357670, at *1-3, *5 (2d Cir. Apr. 6, 2000).

or even a "[Rule 30(b)(6)] witness" to designate on behalf of himself, separate from the client.  *Cf. Env't Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007) (identical words presumed to bear the same meaning throughout a text).  By contrast, the plain meaning of the term "party"—*i.e.*, the "one by or against whom a lawsuit is brought," *U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933-34 (2009) (cleaned up)—gives effect to every clause and word of Rule 37's text.

Most significantly, Saudi Arabia's theory contravenes the Second Circuit's holding in *Apex Oil Co.*  There, the Circuit held that an earlier provision of Rule 37(c)—which authorized sanctions after "a party fail[ed] to admit the genuineness of any document or the truth of any matter"—did "not permit sanctions against a party's attorney" because "[b]y its express terms, Rule 37(c) applies only to a party," not the party's law firm.  855 F.2d at 1011, 1013-14 (quoting Fed. R. Civ. P. 37(c) (1987)).  Former Rule 37(c)'s requirement of "party" misconduct before imposing sanctions is identical to current Rule 37(b)(2)(A)'s requirement.  *See, e.g., Kleiman v. Chertoff*, 2007 WL 9706519, at *9 (E.D.N.Y. July 10, 2007) (applying *Apex Oil Co.* in holding that "Rule 37 cannot provide the basis for the imposition of sanctions on [plaintiff's counsel]").  Rather than explain how its theory can survive *Apex Oil Co.*'s holding—or similar analyses of Rule 37 by sister circuits—Saudi Arabia simply ignores their holdings.  *See* Obj. 18-19.[15]

Saudi Arabia also cites the same three cases erroneously relied upon by the Magistrate Judge.  *See* Opp'n 22 n.7, 24 & n.8.  In *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 128 F.3d 99, 100-03 (2d Cir. 1997), the misconduct of the party's Rule 30(b)(6) witness (the company's president) served as the foundation for sanctions, including a $500 fine against the party's individual attorney for "his role in [the Rule 30(b)(6) witness]'s failure to appear for deposition."

---

[15] All circuits that have addressed the issue are unanimous.  *See* Obj. 18-19 (citing *NPF Franchising, LLC v. SY Dawgs, LLC*, 37 F.4th 369, 383 (6th Cir. 2022)); *see also Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1226 (10th Cir. 2015); *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 141 (3d Cir. 2009); *Ins. Ben. Administrators, Inc. v. Martin*, 871 F.2d 1354, 1360 (7th Cir. 1989).

*Fonar* had no reason to address the implications of *Apex Oil Co.*'s holding or analyze the meaning of a Rule 37 "party." In *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488-90 (5th Cir. 2012), the Fifth Circuit addressed whether a protective order under Rule 26(c) qualifies as "an order to provide or permit discovery" under Rule 37(b)(2)(A). And in *Markus v. Rozhkov*, 615 B.R. 679, 701-04, 708 (S.D.N.Y. 2020), the district court vacated Rule 37(b)(2)(A)(vii) sanctions against an individual attorney because his client was not a "party" to the action. *See also* Obj. 19.[16]

Finally, the record refutes Saudi Arabia's assertion that K&K forfeited its challenge to the applicability of Rule 37(b). Opp'n 20-21. As detailed in K&K's objections, *see* Obj. 9-14, the Magistrate Judge failed to notify K&K of the specific "authority under which sanctions [we]re being considered." *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 97 (2d Cir. 1997).[17] The Magistrate Judge's October 4 order scheduling a hearing did not reference any authority under which the court was considering sanctions but listed potential remedies available *only* under the court's inherent authority. ECF No. 7167 at 1. The court later stated it "intend[ed] to issue findings of fact and recommend remedies to District Judge Daniels," ECF No. 7277 at 1, and described the upcoming proceeding as a "contempt hearing," ECF No. 7310 at 3; *cf.* 28 U.S.C. § 636(e)(6)(B) (titled "Certification of Other Contempts to the District Court"). After the hearing, the court required concurrent briefing, ECF Nos. 7386, 7389, did not allow reply briefing, and denied K&K's request for oral argument on the issues, ECF Nos. 7317, 8544 at 64. K&K argued in its submission that

---

[16] The two district cases within this Circuit cited by Saudi Arabia (at 22 n.6) neither address *Apex Oil Co.* nor involve a law firm. *See Shipstad v. One Way or Another Prods., LLC*, 2017 WL 2462657, at *3, *5 (S.D.N.Y. June 6, 2017); *Copeland v. Rosen*, 194 F.R.D. 127, 133 (S.D.N.Y. 2000). And the remaining out-of-circuit cases—on which Saudi Arabia relies for its distraction about the scope of "just orders" sanctions—similarly fail to address the meaning of a "party" under Rule 37. *See* Opp'n 24-25.

[17] *See, e.g., Schoenberg v. Shapolsky Publishers, Inc.*, 971 F.2d 926, 927, 929-30, 934 (2d Cir. 1992), (insufficient notice where the district court ordered counsel to show cause "why sanctions should not be imposed" on counsel "pursuant to Rule 11 . . . or other authority" and then held counsel in contempt under Rule 37(b)), *abrogated on other grounds by Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343 (2d Cir. 2000).

contempt and inherent authority sanctions were not warranted against the firm, ECF No. 7386 at 35-55, and objected to the general sufficiency of notice in its post-hearing briefing, *id.* at 56 ("The Court permitted [a hearing] without notice of what rule or authority was invoked."). The court subsequently held that K&K "may file Rule 72(a) objections to this Opinion and Order, which will cure any possible notice issues." ECF No. 8544 at 35. Saudi Arabia (at 20-21) cites no case supporting its suggestion that *its own* July 2021 letter *requesting discovery*—pursuant to inherent powers, Rule 37, or even the MDL Protective Order itself, ECF No. 6981—provided sufficient notice of the authority under which *the court* was *considering sanctions* at the November 2021 hearing, over three months later. *Cf. Schoenberg*, 971 F.2d at 929 (insufficient notice by court, where opposing party informed counsel of intent to move for contempt sanction). Such failure to notify K&K about the specific "standard by which [its] conduct will be assessed"—namely, clear-and-convincing evidence under contempt or inherent authority, or a preponderance of evidence under Rule 37—unquestionably affected K&K "opportunity to defend [it]self against th[e] charge." *Ted Lapidus*, 112 F.3d at 97.

Saudi Arabia does not dispute that there is insufficient evidence to meet its higher evidentiary burden. *See* Obj. 16, 20-21 (detailing standard); Opp'n 20-27. Rule 37(b) should not be a vehicle for opposing counsel to avoid that burden in an attempt to sideline its opponent.

### CONCLUSION[18]

For each and all of the forgoing reasons and as set forth in the objections, the Magistrate Judge's order should be set aside as contrary to law and clearly erroneous.

---

[18] The Magistrate Judge's harsh sanctions were also not commensurate with Fawcett's leak. *See* Obj. 35-40. Saudi Arabia (at 37-40) does not dispute that the court found that the transcript was not "important" to the litigation, fails to identify any harm to itself other than "embarrassing" information, and boldly argues that 9/11 death and injury plaintiffs will not be harmed by the removal of their counsel in the case against Saudi Arabia. *But see* Obj. 36-37; ECF No. 8772 at 2-5 & n.1-7 (K&K reply in support of stay). Because the Magistrate Judge's sanctions were based on erroneous findings, the sanctions are also out of step with other cases involving leaked transcripts. *See* Obj. 38.

Dated: December 1, 2022
      New York, New York

Respectfully submitted,

  */s/ Edward M. Spiro*

Emily Kirsch                                Edward M. Spiro
Paul Niehaus                           MORVILLO ABRAMOWITZ GRAND
KIRSCH & NIEHAUS PLLC          IASON & ANELLO P.C.
950 Third Avenue, 19th Floor      565 Fifth Avenue
New York, NY 10022           New York, NY 10017
(212) 832-0170               (212) 856-9600
emily.kirsch@kirschniehaus.com    espiro@maglaw.com