# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

In re: Terrorist Attacks on September 11, 2001

Civil Action No. 03-MD-1570 (GBD)(SN)
ECF Case

-------------------------------------------------------------X

**This document relates to:**

*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-cv-06978
*Thomas Burnett, Sr., at al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03-cv-09849
*Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.*, Case No. 04-cv-01922
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04-cv-05970
*Estate of John P. O'Neill, Sr., et al. v. Republic of the Sudan, et al.*, Case No. 18-cv-12114
*Aronow, et al. v. Republic of Sudan*, Case No. 20-cv-07733

## CONSOLIDATED AMENDED COMPLAINT PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE REPUBLIC OF THE SUDAN'S OBJECTIONS (ECF No. 8717) TO THE COURT'S MAY 3, 2022 REPORT & RECOMMENDATION (ECF No. 7942) AND SEPTEMBER 23, 2022 AMENDED REPORT & RECOMMENDATION (ECF No. 8549)

December 6, 2022

# TABLE OF CONTENTS

Page

I.    Introduction And Standard Of Review ...................................................................1

II.   The Report Correctly Found That The Court Has Subject Matter Jurisdiction ........................1

   A.    The Report Applied The Correct Standard of Review ...................................1

   B.    The Report Correctly Found That Plaintiffs Allege Jurisdictional Causation ..............3

      1.    The Report Applied The Correct Jurisdictional Causation Standard.....................3

      2.    The Report Faithfully Applied This Court's Causation Test ...................5

      3.    The Report's Findings Are Well Supported And Consistent With The 9/11 Report......7

      4.    The Report Correctly Found That Plaintiffs Sufficiently Alleged Tortious Acts of Sudan And Sudanese Officials, Employees, And Agents .........................9

      5.    Sudan's Remaining Arguments Concerning Jurisdictional Causation Are Meritless ..............10

   C.    The Report Correctly Determined That Amended Complaints Sufficiently Plead The Jurisdictional Prerequisites of §1605(a)(7), §1605A and §1605B................11

      1.    The Report Correctly Concluded That It Has Subject Matter Jurisdiction Over Family Members' Solatium Claims And Claims Of Corporate Plaintiffs..............11

      2.    The Report Correctly Determined That Is Has Subject Matter Jurisdiction Over The Claims of Corporate Plaintiffs .......................12

III.  The Report Correctly Determined That It Has Personal Jurisdiction Over Sudan ...............16

IV.   The Report Correctly Determined That Plaintiffs' Claims Are Timely ...................16

   A.    Plaintiffs' 1605A Claims Are Timely ...........................16

   B.    Plaintiffs' § 2333 Claims Against Sudan Are Timely...................17

V.    The Report Correctly Found That Plaintiffs Plead Valid Claims Against Sudan ..................19

   A.    The Report Correctly Concluded That Plaintiffs Plead Valid ATA Claims ...............19

      1.    The Report Correctly Rejected A Requirement Of But For Causation For ATA Primary Liability Claims................19

      2.    The R&R Correctly Held That Plaintiffs Allege That Sudan Was Generally Aware That It Was Substantially Assisting Al Qaeda...............21

      3.    The R&R Correctly Held That The Amended Complaints Properly Allege Conspiracy under the ATA ...................22

   B.    The Report Correctly Determined That Plaintiffs State Valid Claims For Assault, Battery, And Trespass ...................23

      1.    Plaintiffs State Law Claims Are Not Preempted By §§ 1605A And 1605B..........23

      2.    Plaintiffs Have Adequately Pled Their State Law Claims .......................24

i

C.      The Report Correctly Allows Plaintiffs' Alien Tort Statute Claims to Proceed..........24

D.      The Report Correctly Allows Plaintiffs' RICO Claims to Proceed..............................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andujar v. Rogowski,*
113 F.R.D. 151 (S.D.N.Y. 1986) .................................................................................................19

*Bolivarian Rep. of Venezuela v. Helmerich & Payne Int'l Drilling Co.,*
137 S. Ct. 1312 (2017) ...............................................................................................................3

*Bostock v. Clayton Cnty.,*
140 S. Ct. 1731 (2020) .........................................................................................................3, 20

*Burnett v. Al Baraka Inc. & Dev. Corp.,*
349 F.2d 765 (S.D.N.Y. 2005) ...................................................................................................24

*Certain Underwriters at Lloyd's London v. Great Socialist People's Libyan Arab Jamahiriya,*
811 F. Supp. 2d 53 (D.D.C. 2011) ............................................................................................14

*Comcast Corp. v National Assoc. of African American-Owned Media,*
140 S. Ct. 1009 (2020) ........................................................................................................3, 20

*Est. of Henkin v. Kuveyt Turk Katilim Bankasi, A.S.,*
495 F. Supp. 3d 144 (E.D.N.Y. 2020) .......................................................................................18

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,*
385 F.3d 159 (2d Cir. 2004) .....................................................................................................25

*Fischer v. Forrest,*
968 F.3d 216 (2d Cir. 2020) .....................................................................................................25

*Friends of Mayanot Institute, Inc. v. Islamic Republic of Iran,*
313 F. Supp. 3d 50 (D.D.C. 2018) ............................................................................................14

*Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic,*
582 F.3d 393 (2d Cir. 2009) .....................................................................................................16

*Halberstan v. Welch,*
705 F.2d 472 (D.C. Cir. 1983) .........................................................................................6, 21, 22

*Hijazi v. Permanent Mission of Saudi Arabia,*
403 F. App'x 631 (2d Cir. 2010) .............................................................................................1, 2

*Hijazi v. Permanent Mission of Saudi Arabia,*
689 F. Supp. 2d 669 (S.D.N.Y. 2010).........................................................................................2

*Hoglan v. Rafsanjani,*
    759 F. App'x 99 (2d Cir. 2019) ............................................................................ 11, 12

*Honickman v. BLOM Bank SAL,*
    6 F.4th 487 (2d Cir. 2021) ......................................................................................*passim*

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,*
    513 U.S. 527 (1995) .......................................................................................................... 4

*Julin v. Chiquita Brands Int'l, Inc.*
    2015 U.S. Dist. Lexis 1283 (S.D. Fla. Jan. 6, 2015) ........................................... 19, 20

*Kaplan v. Lebanese Canadian Bank, SAL,*
    405 F. Supp. 3d 525 (S.D.N.Y. 2019) ...................................................................... 19

*Kaplan v. Lebanese Canadian Bank*
    SAL, 999 F.3d 842 (2d Cir. 2021) ......................................................................*passim*

*Khaliq v. Republic of Sudan,*
    2009 WL 10736793 (D.D.C. Oct. 26, 2009) ......................................................... 17

*Kilburn v. Socialist People's Libyan Arab Jamahiriya,*
    376 F.3d 1123 (D.C. Cir. 2004) .......................................................................... 3, 10

*King v. Habib Bank, Ltd.,*
    2022 U.S. Dist. Lexis 176536 (S.D.N.Y. Sept. 28, 2022) .................................... 23

*Leibovitch v. Islamic Republic of Iran,*
    697 F.3d 561 (7th Cir. 2012) .............................................................................. 11, 15

*Linde v. Arab Bank,*
    97 F. Supp. 3d 287 (E.D.N.Y. 2015) ...................................................................... 19, 20

*Linde v. Arab Bank, PLC,*
    882 F. 3d 314 (2d Cir. 2018) ............................................................................ 4, 5, 10

*Luna v. Am. Airlines,*
    769 F. Supp. 2d 231 (S.D.N.Y. 2011) ...................................................................... 13

*Molefe v. KLM Royal Dutch Airlines,*
    602 F. Supp. 2d 485 (S.D.N.Y. 2009) ........................................................................ 1

*New York City Dist. Council of Carpenters Pension Fund v. Forde,*
    341 F. Supp. 3d 334 (S.D.N.Y. 2018) ...................................................................... 18

*Norton v. Larney,*
    266 U.S. 511 (1925) .......................................................................................................... 2

*O'Neill v. Saudi Joint Relief Committee,*
  714 F.3d 109 (2d Cir. 2013) ............................................................................. 1, 2

*Owens v. Republic of Sudan,*
  864 F.3d 751 (D.C. Cir. 2017) ........................................................................... *passim*

*In re Platinum Beechwood Litig.,*
  453 F. Supp. 3d 645 (S.D.N.Y. 2020) ............................................................... 20

*Price v. Socialist People's Libyan Arab Jamahiriya,*
  389 F.3d 192 (D.C. Cir. 2004) ........................................................................... 2

*Primavera Familienstifung v. Askin,*
  130 F. Supp. 2d 450 (S.D.N.Y. 2001) ............................................................... 20

*Redington v. Touche Ross & Co.,*
  592 F.2d 617 (2d Cir. 1978) ............................................................................... 13

*Reves v. Ernst & Young,*
  507 U.S. 170 (1993) ........................................................................................... 25

*Rice v. Sante Fe Elevator Corp.,*
  331 U.S. 218 (1947) ........................................................................................... 23

*Robinson v Gov't of Malaysia,*
  269 F.3d 133 (2d Cir. 2001) ............................................................................... 2

*Rockwell Int'l Copr. v. United States,*
  594 U.S. 457 (2007) ........................................................................................... 17

*Roth v. Islamic Republic of Iran,*
  78 F. Supp. 3d 379 (D.D.C. 2015) ..................................................................... 17

*Rubin v. Islamic Republic of Iran,*
  138 S. Ct. 816 (2018) ......................................................................................... 11, 12

*Rukoro v. F.R.G.*
  976 F.3d 218 (2d Cir. 2020) ............................................................................... 1, 2

*Rux v. Republic of Sudan,*
  461 F.3d 461 (4th Cir. 2006) ............................................................................. 9, 10

*Rux v. Republic of Sudan,*
  495 F. Supp. 2d 541 (E.D. Va. 2007) ................................................................ 6

*Siegel v. Converters Transp., Inc.,*
  714 F.2d 213 (2d Cir. 1983) ............................................................................... 18

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*,
   346 F. Supp. 3d 473 (S.D.N.Y. 2018)...................................................................20

*In re Terrorist Attacks on Sept. 11, 2001*,
   349 F. Supp. 2d 765 (S.D.N.Y. 2005)...................................................................25

*In re Terrorist Attacks on Sept. 11, 2001*,
   2011 U.S. Dist. LEXIS 153138 (S.D.N.Y. Oct. 14, 2011) ....................................13

*In re Terrorist Attacks on Sept. 11, 2001*,
   2016 WL 11270527 (S.D.N.Y. Oct. 24, 2016) ............................................... 11, 12

*In Re Terrorist Attacks on September 11, 2001*,
   298 F. Supp. 3d 631 (S.D.N.Y. 2018).............................................................. 3, 4, 6

*In re Terrorist Attacks on September 11, 2001*,
   2015 WL 9468813 (S.D.N.Y. Dec. 28, 2015)........................................................14

*United States v. Allen*,
   155 F.3d 35 (2d Cir. 1998) ...................................................................................25

*United States v. Castillo*,
   36 F.4th 431 (2d Cir. 2022)...................................................................................12

*United States v. Romano*,
   794 F.3d 317 (2d Cir. 2015) ...................................................................................1

*United States v. Wong*,
   575 U.S. 402 (2015)........................................................................................ 17, 18

**Statutes and Other Authorities**

18 U.S.C. § 1962.......................................................................................................25

18 U.S.C. § 2333.......................................................................................................21

28 U.S.C. § 636 .........................................................................................................1

28 U.S.C. § 1330.......................................................................................................16

28 U.S.C. § 1608.......................................................................................................16

28 U.S.C. § 1350.......................................................................................................24

28 U.S.C. § 1605............................................................................................... 11, 17, 18

28 U.S.C. § 1605A..............................................................................................*passim*

28 U.S.C. § 1605B..............................................................................................*passim*

Federal Rule of Civil Procedure 15 ................................................................................... 16, 17, 18

# I.   Introduction And Standard Of Review

Sudan's Objections, ECF No. 8717 ("Obj."), to Magistrate Judge Netburn's Report and Recommendation ("R&R" or "Report") and Amended Report and Recommendation ("Amended R&R"), broadly rehash the arguments from Sudan's motion to dismiss,[1] largely ignore the reasoning of the R&R, misstate the applicable legal standards, and mischaracterize the record supporting the R&R's conclusions. As set forth below, Sudan's objections should be denied.

"[T]he district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015) (quoting 28 U.S.C. § 636(b)(1)). However, "[w]hen a party … simply reiterates the original arguments, the Court will review the [R & R] strictly for clear error." *Molefe v. KLM Royal Dutch Airlines,* 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009) (internal citations omitted).

# II.   The Report Correctly Found That The Court Has Subject Matter Jurisdiction

## A.   The Report Applied The Correct Standard of Review

In *O'Neill v. Saudi Joint Relief Committee*, 714 F.3d 109 (2d Cir. 2013), an appeal arising out of this litigation, the Second Circuit held that a court reviewing a motion to dismiss under the FSIA must "accept[] all material facts alleged in the complaint as true and draw[] all reasonable inferences in plaintiff[s'] favor." *Id.* at 113 (third alternation in original); *see also Rukoro v. F.R.G.* 976 F.3d 218, 222 (2d Cir. 2020) (same). This controlling statement of the standard of review accords precisely with the Report's articulation of the applicable standard, *see* R&R at 5, and there is thus no merit to Sudan's claim, Obj. at 2, that the Report applied the wrong standard of review.

The Second Circuit's summary opinion in *Hijazi v. Permanent Mission of Saudi Arabia*, 403 F. App'x 631, 632 (2d Cir. 2010), does not support Sudan's claims of error. Sudan's reliance on *Hijazi*

---

[1] Because Sudan principally rehashes its Motion to Dismiss, Plaintiffs respectfully incorporate the more fulsome responses to those same arguments from their Opposition to Sudan's Motion to Dismiss. *See* ECF No. 6649 ("MTD Opp.").

ignores the Second Circuit's more recent and controlling rulings in *O'Neill* and *Rukoro*, which the Report followed and Sudan does not address. Further, *Hijazi* and the nearly century old decision it cites[2] at most indicate that, where a defendant raises a specific factual challenge to a fact essential to jurisdiction through submission of competent evidence,[3] the court should not assume jurisdiction based solely on "argumentative inferences" drawn in plaintiff's favor. Instead, the court should generally assure itself of its jurisdiction by authorizing discovery on the disputed factual issues. *See Robinson v Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001). These principles do not at all call into question the Report's standard of review, and have no bearing where, as here, the defendant (1) has failed to raise any competent factual challenge to a particular fact essential to jurisdiction,[4] *see infra* at 7-8, and (2) jurisdiction is established by the *facts* set forth in the complaint. *See* R&R at 9-23, *infra* at 5-10.

On this latter point, the Report did not reason that jurisdiction "might" exist based on argumentative inferences, Obj. at 2. To the contrary, the Report's jurisdictional findings rest on a thorough analysis of the facts set forth in the complaints, and its correct conclusion that those facts affirmatively establish each element of jurisdiction. *See* R&R at 9-23 (analyzing factual allegations in detail). The actual predicate for the Report's jurisdictional findings thus show that Sudan's arguments about the propriety of drawing inferences would not, even if correct, support a finding of error, and

---

[2] *See Norton v. Larney,* 266 U.S. 511, 515 (1925) (facts supporting jurisdiction must appear in record and jurisdiction may not be assumed based on "presumptions" or "argumentative inferences").

[3] The district court decision in *Hijazi* makes clear that it involved a specific factual challenge based on competent evidence, and that the defendant's facts were uncontested. *See Hijazi v. Permanent Mission of Saudi Arabia*, 689 F. Supp. 2d 669,675 (S.D.N.Y. 2010).

[4] *See e.g., Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 198 (D.C. Cir. 2004) (finding Libya's purported factual challenge failed "not only because it has not identified any true contradictions to undermine the credibility of the amended complaint but also because it does not dispute some of the most serious allegations in that complaint").

that its reliance on *Bolivarian Rep. of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1324, (2017) is entirely misplaced.[5]

**B.    The Report Correctly Found That Plaintiffs Allege Jurisdictional Causation**

1.    The Report Applied The Correct Jurisdictional Causation Standard

As the Report noted, this Court and several Courts of Appeal that have considered the matter have held that jurisdictional causation under the FSIA merely requires a showing of proximate causation, which is satisfied by factual allegations demonstrating a "reasonable connection" between the defendant's support for terrorism and plaintiffs' injuries. R&R at 8 (internal citations omitted).

Sudan claims, Obj. at 3, that the Supreme Court's decisions in *Comcast Corp. v National Assoc. of African American-Owned Media*, 140 S. Ct. 1009 (2020) and *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020) require a "but for" causation, but those decisions did not concern the FSIA or jurisdictional causation (or for that matter civil remedies for terrorism) at all. Instead, *Comcast* concerned the *substantive* causation standard for a race discrimination claim, 140 S. Ct. at 1013-14, and *Bostock* addressed the *substantive* causation requirement for a suit alleging unlawful discrimination on the basis of sex. 140 S. Ct. at 1739-40. Those decisions have no bearing on the jurisdictional causation standard applicable to the "caused by" language of 1605A and 1605B. *In Re Terrorist Attacks on September 11, 2001,* 298 F. Supp. 3d 631 (S.D.N.Y. 2018) ("*Terrorist Attacks III*") (jurisdictional causation distinct from and more lenient than substantive causation), *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1129 (D.C. Cir. 2004) (same); *see* 162 Cong. Rec. 6093 (2016) (Sen. Cornyn, with Sen. Schumer concurring) (Section 1605B's "caused by" language intended to be governed by "cases like

---

[5] Sudan predicates its reliance on *Helmerich* on a single instance in which the Report uses the word "might" in describing the import of a State Department document concerning Sudan's ties to al Qaeda after 1996, and an isolated use of the word "may" in describing bin Laden's enduring business infrastructure in Sudan. *See* Obj. at 2. In claiming that the isolated uses of those two words show that the Report's determinations of jurisdiction rested on inferences that Sudan "'might' have provided material support," Sudan grossly mischaracterizes the Report's actual holdings and analysis. In fact, the Report identifies extensive factual support showing each element of jurisdiction. R&R at 7-23.

*Kilburn* … the analysis of which we intend to incorporate"); *see also Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 536 (1995) (jurisdictional phrase "caused by" in admiralty statute requires proximate cause and its use "*should obviate not only the complication but even the need for further temporal or spatial limitations.*") (emphasis added) (citations omitted).

Sudan's arguments that the R&R erred in failing to require a "direct relationship" between Sudan's acts and the 9/11 attacks fail for many of the same reasons. As Sudan acknowledges, the reasonable connection test is satisfied by facts showing that (1) the defendant's acts were a "'substantial factor' in the sequence of events leading to plaintiff's injury," and (2) plaintiff's injury was "'reasonably foreseeable or anticipated as a natural consequence of' the defendant's actions." *Terrorist Attacks III,* 298 F. Supp. 3d at 645-46. The R&R faithfully applied this test and found it satisfied, and Sudan's claim that jurisdictional causation requires something more simply begs for a different formulation of proximate cause. Its related arguments about "attenuation" ignore that the relevant inquiry focuses on the relationship between the defendant's support and the "*sequence of events*" leading to the injury, as well as the factual record establishing that Sudan's campaign of state support was essential to providing the very capabilities needed to plan and carry out the 9/11 attacks. R&R at 14-15; *Owens v. Republic of Sudan,* 864 F.3d 751, 796 (D.C. Cir. 2017) ("*Owens IV*") ("provided the plaintiffs demonstrated proximate cause, the *temporal remoteness* between Sudan's material support and the embassy bombings *was irrelevant*") (emphasis added).

The Second Circuit's controlling decisions in *Kaplan v. Lebanese Canadian Bank* SAL, 999 F.3d 842 (2d Cir. 2021), *Honickman v. BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021), and *Linde v. Arab Bank, PLC*, 882 F. 3d 314 (2d Cir. 2018) further foreclose Sudan's arguments urging a stringent jurisdictional causation standard. Again, "jurisdictional causation under the FSIA is distinct from and more liberal than the substantive causation elements of any one claim." *Terrorist Attacks III,* 298 F. Supp. 3d at 645. Sudan's arguments necessarily fail this rule, as they are incompatible with and more stringent than the

causation standards governing Plaintiff's substantive claims. *See infra* at 19-23. And because Plaintiffs' allegations satisfy the causation standards applicable to their substantive law claims, *id.*, they necessarily establish jurisdictional causation as well.[6]

Finally on this point, even if "but for" or some "direct" causation were required here, Plaintiffs' allegations readily meet that test. Indeed, the R&R's findings that Plaintiffs adequately allege aiding and abetting and conspiracy theories means that the September 11th attacks are themselves attributable to Sudan, *Linde*, 882 F. 3d at 331, and there is no dispute that those attacks are a "but for" and "direct" cause of Plaintiffs' injuries. Separately, the R&R's correct findings that Plaintiffs' allegations establish that al Qaeda likely would not have existed absent Sudan's decade-long campaign of state support, R&R at 18-19, that Sudan's training and assistance transformed al Qaeda into a sophisticated terrorist organization with the capabilities needed to carry out the 9/11 attacks, *id.* at 12, 14-15, and that Sudan's support for al Qaeda remained ongoing through September 11, 2001, *id.* at 13-14, 17, also confirm that Plaintiffs satisfy even Sudan's proposed stringent causation standards.

## 2. The Report Faithfully Applied This Court's Causation Test

The Report carefully analyzed Plaintiffs' detailed factual allegations pursuant to the reasonable connection standard, and correctly found that they established both the substantial factor and foreseeability prongs of that test. R&R at 8. In implausibly claiming that the Report failed to faithfully apply the reasonable connection test and that its conclusions lacked adequate support in the record, Sudan ignores the totality of the facts and conclusions drawn from them, and instead cherry picks

---

[6] As the Court is aware, Plaintiffs have filed a motion for reconsideration as to aspects of this Court's March 28, 2018 Memorandum Opinion and Order, based on the decisions in *Kaplan* and *Honickman*. ("Plaintiffs' Rule 54(b) Motion"). The briefs in support of Plaintiffs' Rule 54(b) Motion at ECF Nos. 7432 ("54(b) Br.") and 7740 ("54(b) Reply") extensively discuss the import of those decisions to the jurisdictional causation inquiry under §1605B and the causation and other standards applicable to JASTA aiding and abetting and ATA primary liability claims. The points surveyed in those briefs further demonstrate how *Kaplan* and *Honickman* refute Sudan's arguments about "but-for" and "direct" causation.

individual allegations and raises dubious arguments about their sufficiency in isolation. These arguments fail for multiple reasons.

Initially, Sudan's selective approach to the record is entirely inconsistent with the Second Circuit's admonitions in *Kaplan* that allegations of support for terrorism "must be evaluated in the context of the enterprise they aided," *id.* at 865 (quoting *Halberstan v. Welch*, 705 F.2d 472, 488 (D.C. Cir. 1983), and that the district court is required "to consider all of the complaint's allegations, rather than consider each in isolation, and to accept as true all permissible inferences that can be drawn from the complaint as a whole." *Kaplan*, 999 F.3d at 865. Sudan's arguments focus on individual allegations in isolation, and for this reason alone they should be rejected out of hand.

Moreover, Sudan's claims about the content and import of the factual record are plainly incorrect, and ignore the governing motion to dismiss standard of review. As the Report properly concluded, Plaintiffs' allegations extensively detail how Sudan used its state apparatus and resources to provide arms, financial support, safe haven, intelligence training and support, official passports, and myriad other forms of critical support to al Qaeda. *See* R&R at 9-23; *see also* MTD Opp. at 5-7 (surveying allegations of support). Based on its holistic review of the facts, the Report properly found that Sudan's program of support "transformed" al Qaeda and that "the organization that struck America on September 11 would not have existed without Sudan's decade long campaign of support." R&R at 12, 18; *id.* at 14 ("the Court agrees with its peers: 'Sudan, beginning in the early 1990s and continuing at least until 2000, actively provided Al Qaeda with the support, guidance, Sudanese diplomatic passports and resources that allowed it to transform into a sophisticated, worldwide terrorist network.'") (quoting *Rux v. Republic of Sudan,* 495 F. Supp. 2d 541, 553 (E.D. Va. 2007)) ("*Rux II*"). These and the Report's underlying findings more than support the "reasonable connection" required for jurisdictional causation.

Sudan's attempts to minimize its over decade long campaign of state support for al Qaeda, by analogy to claims that were dismissed by this Court in *Terrorist Attacks III*, are insubstantial. As the Report correctly determined, the scope, duration and nature of Sudan's state support for al Qaeda differs in kind and character from that considered by the Court in *Terrorist Attacks III*, as to claims against the Saudi High Commission.[7] *See* R&R at 19-20 ("Sudanese support was not limited to arms and cash. Year after year, it put the might of a sovereign nation's security services and diplomatic privileges into al Qaeda's growth. The scale of this investment in al Qaeda overcomes any concerns about attenuation at this stage of the proceeding.").

3.  The Report's Findings Are Well Supported And Consistent With The 9/11 Report

Sudan's related argument that the Report's causation analysis failed to give "due weight" to the 9/11 Commission's purported findings, and improperly favored "vague and conclusory" allegations that Sudan continued to support al Qaeda after bin Laden's departure in 1996, Obj. at 7, plainly mischaracterizes the content of the 9/11 Commission Report itself, and the other authoritative sources cited by the Report and complaints establishing Sudan's continuing partnership with al Qaeda.

Initially, the 9/11 Commission's statement that bin Laden's departure from Sudan left him "significantly weakened," Obj. at 8, does not mean that Sudan's support for al Qaeda terminated at that time. In fact, the 9/11 Commission Report itself credited former National Security Advisor Susan Rice's statements that "though Sudan did eventually expel Bin Ladin, *his al Qaeda network retained a presence in the country*. Susan Rice interview (Jan. 9, 2004)." 9/11 Commission Report at 480 (emphasis supplied). And as the R&R noted, the State Department's authoritative annual reports on terrorism for 1998, 1999, 2000, and 2001, *Patterns of Global Terrorism*, each identify Sudan as an active sponsor of al Qaeda during those years. R&R at 13; Consolidated Amended Complaint ("CAC") (ECF No. 6539)

---

[7] *Terrorist Attacks III* preceded the Second Circuit's decisions in *Kaplan* and *Honickman*, and as noted previously, Plaintiffs' pending Rule 54 Motion seeks reconsideration of aspects of *Terrorist Attacks III* in light of those decisions.

at ¶¶ 41, 183-85. The conclusions of other courts supported the Report's findings on this point as well. *See e.g., Rux II,* 495 F. Supp. 2d at 554 (Sudan's support continued until at least 2000).

Further, as the Report and other courts that have considered the identical arguments Sudan raises here have found, bin Laden's departure from Sudan does not change the fact that its support in the preceding years "transformed al Qaeda." R&R at 12. Indeed, as the *Owens IV* Court explained, the isolated passage Sudan "selectively quot[es]" from the 9/11 Commission Report does not "undo the support Sudan provided [to Bin Laden and Al Qaeda] in the previous years."[8]

Sudan's claim that the Report wrongly favored "vague and speculative State Department and Congressional Research Service documents" is equally misguided. As in other cases, Sudan cherry-picks the record in service of these claims,[9] ignoring that the Report's findings as to Sudan's continuing support after 1996 did not rest solely on "State Department cables," but were in fact amply supported by a range of authoritative reports, factual allegations and evidence from other cases (as discussed above). Further, Sudan's attempts to disparage State Department cables, Obj. at 9, are belied by the 9/11 Commission Report itself, which cites extensively to State Department cables as reliable support for numerous findings.[10] The 9/11 Commission's reliance on such materials underscores the appropriateness of the Report's citations to them, especially at this stage of the proceeding.

---

[8] *Id.* at 797.

[9] Sudan's selective criticisms about the Report's reference to the 1998 attack on the Al Shifa plant in Sudan misstate the content of the 9/11 Commission Report, and mischaracterize the meaning and import of the Report's reference to it. In fact, the 9/11 Commission did not arrive at any conclusions about Al Shifa, but instead merely chronicled the timeline and opinions on the matter at the time. 9/11 Commission Report at 116-119. But the R&R did not in any case cite the event as evidence that Al Shifa was in fact supporting al Qaeda, but instead referenced it as additional evidence that the U.S. did not believe Sudan's ties to al Qaeda had terminated as of that date. R&R at 14. Further, any skepticism about Al Shifa's involvement in supporting al Qaeda does not call into question the myriad other facts and sources establishing Sudan's continuing partnership with al Qaeda through 2001.

[10] *See, e.g.,* Department of State cables & memos cited in The 9/11 Commission Report at 486, endnotes 62-66. This is a small example, as government memos, cables, and other reports are cited throughout the 9/11 Commission Report.

4.   The Report Correctly Found That Plaintiffs Sufficiently Alleged Tortious Acts of Sudan And Sudanese Officials, Employees, And Agents

Despite the complaints' detailed allegations that Sudan maintained a decade-long collaboration with al Qaeda, orchestrated at the direction of its most senior officials and carried out through its intelligence, military, and diplomatic apparatuses, Sudan claims, Obj. at 10-11, that there was no support for the Report's conclusion that Plaintiffs' sufficiently alleged any tortious act or acts by a Sudanese official, employee, or agent acting within his or her office, employment, or agency.[11]

Contrary to Sudan's claims, Obj. at 10-11, the complaints alleged in detail the roles of Hassan al Turabi and Omar al Bashir in the Sudanese government, CAC ¶¶ 30-38, and offered extensive facts showing their involvement in Sudan's state campaign to support al Qaeda. *See* CAC ¶¶ 50-52, 62, 63, 75-80, 89, 115, 123. While Plaintiffs are not required to prove their allegations at this stage, these allegations are amply supported by the 9/11 Commission Report and other authoritative sources, and the findings of other courts. *See, e.g.* 9/11 Commission Report at 57 ("Turabi headed the National Islamic Front in a coalition that had recently seized power in Khartoum. Bin Ladin agreed to help Turabi in an ongoing war against African Christian separatists in southern Sudan and also to do some road building. Turabi in return would let Bin Ladin use Sudan as a base for worldwide business operations and for preparations for jihad."); *Rux v. Republic of Sudan,* 461 F.3d 461, 471-72 (4th Cir. 2006). The complaints also further allege specific acts undertaken by Sudanese intelligence and other officials to advance Sudan's support for al Qaeda. *See, e.g.,* CAC ¶¶ 66-69, 87, 88. Collectively, these allegations more than support the Report's determination that Plaintiffs adequately alleged tortious acts of Sudanese officials and agents in their official roles.

Even more fundamentally, Sudan simply ignores that the scope and nature of the program of support detailed in the complaints, and character of the relationship between Sudan and al Qaeda,

---

[11] Sudan ignores that 1605B applies to tortious acts of a "foreign state" *or* attributable acts of its agents. 28 U.S.C. § 1605B(b)(2). The Report's findings that Sudan, as a state, supported al Qaeda separately satisfy this requirement.

could not have been implemented or maintained without the endorsement, direction, and involvement of Sudanese officials and agents. *See* R&R at 22; *Rux*, 461 F.3d at 472 n.5; MTD Opp. at 5-7.

5.   Sudan's Remaining Arguments Concerning Jurisdictional Causation Are Meritless

Sudan further claims, Obj. at 11-12, that a selective set of "remaining allegations," again taken in isolation, fail to show that its contributions of support to al Qaeda were used directly to support the 9/11 attacks, and on that basis claims that the Report's finding of jurisdiction was improper. To this end, Sudan urges that support such as its provision of fraudulent passports to al Qaeda members is irrelevant because "nothing in the *Rux* opinion, the Report, or Plaintiffs' allegations connects the alleged provision of those purported passports to entry into the United States or the 9/11 Attacks." Obj. at 11.  Sudan similarly seeks to discount a money laundering scheme referenced in the Report because it was not "tie[d] [ ] to the 9/11 Attacks." *Id.* at 11-12.

This additional variation on Sudan's entirely repetitious causation argument again ignores the governing standards, and is foreclosed by this Court's own rulings and the Second Circuit's decisions in *Kaplan, Honickman,* and *Linde.* Once again, *supra* at 4, Sudan's attempts to challenge the sufficiency of the complaints' showings of causation, by arguing the adequacy of selective allegations in isolation, is entirely defective. Further, whether the inquiry concerns jurisdictional or substantive causation, the analysis focuses on whether the defendant provided support to the terrorist organization itself, rather than on the nexus between the support and the particular attack in issue. *See infra* at 22 (discussing substantive causation standards). As the Report correctly held, "what matters is not that Sudan sheltered a specific terrorist or created a particular hijacker's passport. Rather, what matters is that it is likely that the organization that struck America on September 11 would not have existed without Sudan's decade long campaign of support." R&R at 18.

In an effort to avoid the weight of authority supporting that precise conclusion, Sudan goes so far as to claim that the rulings in *Owens* and *Rux* are irrelevant to the claims against Sudan here,

because they involved "terrorists who carried out these attacks in *nearby countries*." Obj. at 12 (emphasis Sudan's). At base, this argument necessarily supposes that Congress created remedies where state support enables terrorist attacks against American interests abroad, but not when that same support is designed to and enables a terrorist attack on the Homeland. Certainly not so.

**C.    The Report Correctly Determined That Amended Complaints Sufficiently Plead The Jurisdictional Prerequisites of §1605(a)(7), §1605A and §1605B**

1.    The Report Correctly Concluded That It Has Subject Matter Jurisdiction Over Family Members' Solatium Claims And Claims Of Corporate Plaintiffs

Sudan's arguments, Obj. at 13-16, that the Court lacks subject-matter jurisdiction over solatium claims of family members of 9/11 decedents and over the claims of corporate defendants are unsuccessful arguments that this Court and others have previously rejected.

Sudan's recurrent argument as to the family member solatium claims[12] rests on its flawed notion that the term "claimant" must mean the "legal representative of the person who was killed." Sudan's objection reiterates the identical argument it previously asserted, unsuccessfully, both here and in *Owens IV*, 864 F.3d 751 (D.C. Cir. 2017).[13] Sudan again declines to address meaningfully the reasoning in the cases cited in the R&R, offering instead only selective citations with a conclusory statement that the R&R is an "incorrect reading" of 1605A(a).[14]

---

[12] Because Sudan duplicates here the precise arguments advanced in its motion to dismiss (ECF No. 6575 at 36-39) – which are the same arguments Sudan advanced and that the Court rejected in *Owens IV* – plaintiffs incorporate their prior responses from their MTD Opp. at 24-26.

[13] *See* MTD Opp. at 24-25 ("[W]hile the argument in Sudan's appellate brief [in *Owens VI*] is not entirely verbatim with what is argued here, entire paragraphs were lifted and copied into Sudan's arguments in this matter.").

[14] Obj. at 14 (citing the Supreme Court decision in *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018)). Contrary to Sudan's claims, Obj. at 13-14, the Report's reading was consistent with the history and structure of the FSIA, no portion of *Rubin* supports Sudan's argument, and Sudan ignores that the "history and structure of the FSIA" was extensively discussed in the decisions the magistrate judge cited and copied into Sudan's decision. *See Leibovitch v. Islamic Republic of Iran*, 697 F.3d 561, 570 (7th Cir. 2012), *Owens IV*, or Judge Daniels' decision at *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570 (GBD)(SN), 2016 WL 11270527, at *2 (S.D.N.Y. Oct. 24, 2016), aff'd sub nom. *Hoglan v. Rafsanjani*, 759 F. App'x 99 (2d Cir. 2019), all of which are cited and discussed in the R&R.

Sudan's principal argument—that *Rubin* somehow supports its assertion that the R&R's reading of "claimant" and "victim" would render the statutory text redundant—is completely unavailing. The Report properly followed the rulings from the Seventh Circuit and D.C. Circuit Courts of Appeal that Sudan's reading of 1605A would be "inconsistent with the *text, structure, and purpose of the FSIA* for two reasons." The first reason is that "Congress ... established a private right of action principally for American *claimants* while waiving sovereign immunity in a broader set of cases also involving American *victims*."[15] The second is that Sudan's reading would "contravene Congress's intention and the FSIA's purpose if a section designed to *expand* the reach of punitive damages against state sponsors of terrorism instead *limited* jurisdiction over those same bad actors."[16] Thus, the Report correctly found that, consistent "with the history and structure of the FSIA," the Court has jurisdiction over family member Plaintiffs' solatium claims.

Finally, Sudan's citation to a Second Circuit decision in a criminal law case in support of its arguments on this point[17] was appropriately dispatched by the Report's finding that solatium Plaintiffs are "seeking 'money damages' for 'death occurring in the United States'—precisely the harm that Congress designed JASTA to address." R&R at 31.

> 2. The Report Correctly Determined That Is Has Subject Matter Jurisdiction Over The Claims of Corporate Plaintiffs

Sudan's assertion that the Report erred in concluding that this Court has subject matter jurisdiction over the claims of corporate plaintiffs rests on no less than four incorrect propositions: (1) that insurance companies are entirely ineligible to assert claims under § 1605A pursuant to principles of subrogation; (2) that insurers asserting the express remedy established by § 1605A(d) are

---

[15] *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570 (GBD)(SN), 2016 WL 11270527, at *2 (S.D.N.Y. Oct. 24, 2016), aff'd sub nom. *Hoglan v. Rafsanjani*, 759 F. App'x 99 (2d Cir. 2019) (quoted by Judge Netburn at ECF No. 7942 at 29-30).

[16] *Id.* at 30.

[17] *United States v. Castillo*, 36 F.4th 431, 434 (2d Cir. 2022).

required to independently demonstrate U.S. nationality status; (3) that § 1605B incorporates a U.S. nationality limitation that appears nowhere in that immunity exception's text; (4) that Congress should be understood to have (silently) preempted all state common law and most federal law claims through JASTA. Each of these arguments, which Sudan asserts in conclusory fashion, is incorrect.

Initially, this Court (and all others that have considered the issue) have recognized that traditional principles of subrogation apply to claims under both 1605A and the ATA. *In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570, 2011 U.S. Dist. LEXIS 153138, at *6 (S.D.N.Y. Oct. 14, 2011) ("[t]o the extent that the Plaintiffs seek to recover amounts paid to their insureds, they unquestionably are subrogated to their insureds' ATA claims"), report and recommendation adopted, No. 03 CIV. 6978, 2011 U.S. Dist. LEXIS 144936 (S.D.N.Y. Dec. 16, 2011) (citing *Redington v. Touche Ross & Co.*, 592 F.2d 617, 624 (2d Cir. 1978), *Luna v. Am. Airlines*, 769 F. Supp.2d 231, 248 (S.D.N.Y. 2011)). Those rulings are consistent with the remedial purposes and counterterrorism goals of those statutes.

As the insurer Plaintiffs have explained in further detail in the CAC Plaintiffs' limited Objections to the Report, ECF No. 8705 ("CAC Obj."),[18] the Report applied these subrogation principles and found that 1605A provides jurisdiction for claims of the insurer Plaintiffs, regardless of whether § 1605A is limited to claims derived directly from "U.S. nationals." This ruling, and the Report's additional finding that 1605B supplied jurisdiction for the insurers' claims, renders it unnecessary to determine the precise scope of claims authorized by § 1605A. *See* CAC Obj. at 3.

Further, as also discussed in the CAC Plaintiffs' Objections, CAC Obj. at 10, § 1605A is not so limited. As numerous courts, *including this one*, have held, § 1605A expressly permits suits by insurers to collect for losses under insurance policies once an action under § 1605A "has been brought" by a

---

[18] In lieu of duplicating the points and authorities from their Objections wholesale, the insurer Plaintiffs merely summarize them here, and respectfully incorporate the more fulsome treatment of these points from their Objections.

U.S. national. 28 U.S.C. §§ 1605A(c), (d); *In re Terrorist Attacks on September 11, 2001*, No. 03-md-1570 (GBD) (FM), 2015 WL 9468813, at *2–3 (S.D.N.Y. Dec. 28, 2015) ("*Federal Insurance I*") (finding jurisdiction over the *Federal Insurance* and *Continental Casualty* Plaintiffs' claims against Iran, entering judgment for the insurers and awarding them damages for property and related losses under 1605A(d)); *Friends of Mayanot Institute, Inc. v. Islamic Republic of Iran*, 313 F. Supp. 3d 50, 58 (D.D.C. 2018) ("once a party with valid [statutory] standing has brought an action under [Section] 1605A(c), it is unnecessary for a party filing suit under [Section] 1605A(d) to establish standing separately.") (quoting *Certain Underwriters at Lloyd's London v. Great Socialist People's Libyan Arab Jamahiriya*, 811 F. Supp. 2d 53, 71 (D.D.C. 2011)). These claims expressly authorized by § 1605A(d) are not limited to those derived from injuries suffered by U.S. nationals. *See* CAC Obj. at 10. Moreover, although § 1605A(d)'s express authorization of the insurers' claims moots the issue, corporations organized under U.S. law would be U.S. nationals for purposes of § 1605A, even if the statute's scope were so limited. CAC Obj. at 10.

Sudan's separate theory that the immunity exception provided by 1605B is limited to U.S. nationals also is entirely without merit. As the Report correctly noted, the text of 1605B's immunity exception contains no reference to the term U.S. nationals. R&R at 34. Lacking any textual support for its argument, Sudan instead hinges its novel theory on the notion that Congress, in enacting a statute aimed at providing civil litigants the "broadest possible basis" to pursue claims against foreign states that support terrorism, silently preempted all state common law remedies and virtually all federal causes of action available to terrorism victims, leaving the ATA as their sole remedy. Obj. at 22-23. That theory is inconsistent with JASTA's stated remedial purpose, and with the text of § 1605B itself, which provides that it applies "in any case" and broadly encompasses claims arising from a "tortious act or acts" of a foreign state. 28 U.S.C. § 1605B. Indeed, the only limitation on the available tort claims flowing through the exception appears in § 1605B(d), which provides that a foreign state shall not be subject to jurisdiction "on the basis of an omission or tortious act or acts that constitute mere

14

negligence." 28 U.S.C. § 1605B(d). That limitation would make no sense and be pure surplusage if Sudan's preemption theory were correct, as such negligence claims would have been eliminated already. And as discussed below at 23, the Report correctly found that a range of policy considerations and the preemption doctrine itself strongly undermine Sudan's preemption theories.

For these and other reasons, it is not surprising that every court that has considered Sudan's novel preemption arguments in the related context of 1605A has soundly rejected them, as the Report correctly did here. *Owens IV*, 864 F.3d at 809 (Congress did not intend to foreclose access to state tort law); *Leibovitch*, 697 F.3d at 567-69 ("[A]lthough 1605A created a new cause of action it did not displace a claimant's ability to pursue claims under applicable state or foreign law upon the waiver of sovereign immunity.").

Finally, for the reasons explained by the insurer Plaintiffs in the CAC Plaintiff's Objections at 15-19, corporations organized under the laws of the United States and its jurisdictions are nationals of the United States, under the definitional text incorporated into 1605A and the ATA. CAC Obj. at 16. Further, the history and purpose of 1605A and the ATA make clear that they were intended to deter acts of terrorism and provide relief for injuries and property damage caused by those state-sponsored terrorist acts against Americans. *Id.* at 14-17. Those remedial goals confirm that corporations incorporated under U.S. law are citizens and nationals of the United States for purposes of § 1605A and the ATA. Indeed, Senator Grassley, the lead sponsor of the ATA, explained at the time of its introduction that the ATA would "serve as a further incentive to those with the deep pockets, *such as the airline industry*, to spend resources and go after terrorists: This bill establishes an express cause of action to gain compensation as fruit of their efforts." 136 Cong. Rec. S 4567, S 4593 (daily ed. Apr. 19, 1990) (Statement of Sen. Grassley) (emphasis supplied). For those and other reasons explained in the CAC Plaintiffs' Objections, Sudan is simply wrong that corporations organized under U.S. law are not United States nationals.

### III.   The Report Correctly Determined That It Has Personal Jurisdiction Over Sudan

An immunity exception and proper service are all that is required for personal jurisdiction over a foreign state. 28 U.S.C. § 1330(b), § 1608. The Report correctly found that several exceptions to immunity apply here, R&R at 36; and Sudan concedes it has been served, MDL Opp. at 41. This ends the Court's inquiry as Sudan lacks Due Process rights under established Second Circuit precedent. *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 399-400 (2d Cir. 2009).

### IV.   The Report Correctly Determined That Plaintiffs' Claims Are Timely

#### A.   Plaintiffs' 1605A Claims Are Timely

Sudan asks the Court to ignore the history, purpose, and plain language of Section 1605A and Federal Rule of Civil Procedure 15, and bar Plaintiffs' 1605A terrorism claims as untimely. Plaintiffs' 1605A terrorism claims against Sudan are timely for at least four reasons.[19]

First, the text of Section 1605A(b) provides that "An action may be brought *or maintained* under this section if the action is commenced, or a related action was commenced under section 1605(a)(7)" on or before September 11, 2011 for cases arising out of the 9/11 Attacks. Plaintiffs' commenced their actions under Section 1605(a)(7) on or before September 11, 2011, so the statute by its plain terms allows Plaintiffs to "maintain[]" a 1605A action. Sudan fails to rebut this point.

Second, Plaintiffs' reading of Section 1605A(b) dovetails with Rule 15(c), since "the law that provides the applicable statute of limitations allows relation back," Rule 15(c)(1)(A). Section 1605A plainly "allows relation back," as discussed immediately above. The next subsection in 1605A further details additional relation back principles tied to the 2008 NDAA as discussed below.

Third, Rule 15(c)(1)(B) allows for relation back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading."

---

[19] Sudan also has waived any argument as to timeliness by failing to appear in the cases for almost 20 years.

The 1605A claims and the original 1605(a)(7) claims plainly "ar[i]se out of the conduct, transaction, or occurrence set out … in the original pleading," and are therefore timely under Rule 15.[20]

Fourth, Section 1083(c)(3) of the 2008 NDAA permits Plaintiffs to commence a "related action" to an existing 1605(a)(7) case until 60 days after the entry of judgments on their 1605(a)(7) claims, which has yet to occur. This provision allows plaintiffs to commence related actions under 1605A if there are still pending claims under 1605(a)(7). *See* R&R at 25-26 (internal citations omitted); MDL Opp. at 29-30. Indeed, in the one case that did not allow plaintiffs to amend to add 1605A claims, *Khaliq v. Republic of Sudan*, No. 04-cv-1536 (JDB), 2009 WL 10736793, at *1 (D.D.C. Oct. 26, 2009), those plaintiffs simply filed a new lawsuit, that the court allowed to proceed. *See Owens v. Republic of Sudan*, 864 F.3d 751, 800-801 (D.C. Cir. 2017). The Report correctly rejects the inefficiencies created in *Khaliq*, finding that requiring plaintiffs to file a new action "would invite illogical and inefficient results," especially within an MDL. R&R at 27-28; *see also* MDL Opp. at 29-30.[21]

### B.    Plaintiffs' § 2333 Claims Against Sudan Are Timely

Sudan argues that Plaintiffs' JASTA Section 2333 aiding-and-abetting claims are "jurisdictional" and therefore Plaintiffs cannot use Rule 15 relation back principles to cure this "jurisdictional" defect in Plaintiffs' original complaints. Sudan is double wrong.

First, the Report correctly held that courts "look to the *amended complaint* to determine jurisdiction." R&R at 45-46 (citing *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007)) (emphasis added). But Sudan nevertheless incorrectly directs the Court to the original complaints filed pre-JASTA and not the amended complaints. *See* Obj. at 18-19 ("when plaintiffs filed their [original]

---

[20] The 1605A limitations period is non-jurisdictional. *See Owens v. Republic of Sudan*, 864 F.3d 751, 801-04 (D.C. Cir. 2017); *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 397 (D.D.C. 2015). These decisions flow from Supreme Court precedent that "most time bars are nonjurisdictional," *United States v. Wong*, 575 U.S. 402, 410 (2015).

[21] Another procedure exists for plaintiffs to file a motion to convert their 1605(a)(7) claims or file new actions under Section 1083(c)(1) that extends a "special protection" from Section 1083(c)(2) that waives defenses of "res judicata, collateral estoppel, and limitation period . . . ." § 1083(c)(2)(B). *See* R&R at 27.

complaints, the only potential jurisdictional basis for their claim against Sudan was § 1605(a)(7)"). The entire premise of Sudan's relation back argument is wrong because the proper focus for subject matter jurisdiction is the amended complaints.

Sudan is also wrong that the JASTA aiding-and-abetting Section 2333 claim time limits are jurisdictional. For much the same reason that the time limits for 1605A claims are non-jurisdictional, so too are the Section 2333 claims. *See* R&R at 46 ("most time bars are nonjurisdictional") (citing *United States v. Wong*, 575 U.S. 402, 410 (2015)); *see also* MDL Opp. at 24. "Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional . . . ." R&R at 46. Here, a Section 2333 claim "need not rely on that jurisdiction when it proceeds against a non-sovereign like a bank" so it follows that the section limitation is not jurisdictional. *Id.* at 46 (citing Est. *of Henkin v. Kuveyt Turk Katilim Bankasi, A.S.*, 495 F. Supp. 3d 144, 154 (E.D.N.Y. 2020)).[22]

Its jurisdictional argument aside, Sudan does not seriously dispute that Rule 15(c) relation back principles otherwise apply.[23] As the Report notes, "[t]he purpose of Rule 15 'is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities.'" Report at 44 (citing *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 216 (2d Cir. 1983)); *see also* MDL Opp. at 30-31. To this end, the relation back standard under Rule 15 applies "if adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations *by the general fact situation alleged in the original pleading.*" R&R at 44 (internal citations and quotations omitted) (emphasis added). Here, both the original complaints and the amended complaints "allege harms arising out of the September 11 Attacks based on Sudan's support for al

---

[22] Sudan failed to object to Judge Netburn's ruling that class tolling also applies and therefore the Court reviews this finding under a clear error standard. *E.g.*, *New York City Dist. Council of Carpenters Pension Fund v. Forde*, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018).

[23] Judge Netburn originally dismissed certain Plaintiffs' aiding-and-abetting and trespass claims on the belief that certain plaintiff groups amended their complaints to add parties. *See* R&R at 47. The Court subsequently granted Plaintiffs' motion for reconsideration because no plaintiffs were added. *See* ECF No. 8549 at 3.

Qaeda. The incident in the amended complaint is exactly the same, even if the legal theories have changed. That is enough under this Circuit's precedents." R&R at 45 (citing *Andujar v. Rogowski*, 113 F.R.D. 151, 159 (S.D.N.Y. 1986) (amended complaint related back where "claims ar[ose] from the same incident . . . .")). Sudan fails to meaningfully argue otherwise.

## V. <u>The Report Correctly Found That Plaintiffs Plead Valid Claims Against Sudan</u>

### A. <u>The Report Correctly Concluded That Plaintiffs Plead Valid ATA Claims</u>

#### 1. <u>The Report Correctly Rejected A Requirement Of But For Causation For ATA Primary Liability Claims</u>

Sudan argues that the Report erred in failing to require "but for" causation for purposes of Plaintiffs' primary liability claims under the ATA, Obj. at 19, but here again Sudan's objections rest on the wrong legal standard. As with jurisdictional causation, "[t]o plead proximate causation for [ATA primary liability claims], plaintiffs must plausibly allege (1) that [defendant's] acts were 'a substantial factor in the sequence of events' that led to their injuries and (2) that those injuries were reasonably foreseeable or anticipated as a natural consequence of [defendants'] conduct.") (internal citations and quotations omitted). This Court adopted this precise standard in another case, *Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525, 533 & n.3 (S.D.N.Y. 2019) (same), (Daniels, J.), *vacated in part on other grounds*, 999 F.3d 842 (2d Cir. 2021), and in doing so rejected the precise arguments Sudan offers here. *Id.* at 532 n.3 ("[c]ontrary to defendant's assertion . . . Plaintiffs are not required to establish but for causation in addition to proximate causation") (citing *Hussein*, 230 F. Supp. 3d at 171 n.3.); *see also Linde v. Arab Bank*, 97 F. Supp. 3d 287, 324 (E.D.N.Y. 2015) ("contrary to defendant's repeated assertions," *Rothstein* did not hold "that but-for cause is a requirement of the ATA"); *Julin v. Chiquita Brands Int'l, Inc.* 2015 U.S. Dist. Lexis 1283 at *178 (S.D. Fla. Jan. 6, 2015) (rejecting argument that

*Rothstein* required but for causation in addition to proximate cause). The R&R correctly followed and applied these authorities.[24]

The substantial factor and foreseeability formulation of proximate cause adopted by these authoritative decisions, and their rejection of a but-for causation requirement, is demonstrably appropriate given the ATA's remedial and counter-terrorism purposes, the fungibility of money and other contributions to terrorist organizations, and the reality that terrorist organizations aggregate resources from numerous sources in order to acquire the capabilities and sustain the infrastructure necessary to carry out sophisticated terrorist attacks. *See Linde*, 97 F. Supp. 3d at 324-325. Sudan's conclusory arguments fail to engage these critical points at all.

Sudan's claims that "but-for" causation is "equally applicable to aiding and abetting claims under the ATA," Obj. at 20 is also manifestly wrong. As the Second Circuit's decisions in *Kaplan* and *Honickman* make clear, the relevant inquiry for ATA aiding and abetting liability focuses on whether the defendant knowingly provided substantial assistance to the responsible terrorist organization, pursuant to the factors set forth in *Halberstam*. *Kaplan*, 999 F.3d at 863; *Honickman*, 6 F.4th at 496-97. Establishing such "substantial assistance" provides the requisite connection for proximate cause, because "[t]he substantial assistance element has been construed as a causation concept,"[25] *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 510 (S.D.N.Y. 2001), *amended*, 137 F. Supp. 2d 438 (S.D.N.Y. 2001), and "embedded in the substantial assistance element is the concept of proximate causation," *In re Platinum Beechwood Litig.*, 453 F. Supp. 3d 645, 650 (S.D.N.Y. 2020) (Rakoff, J.); *see Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 487 (S.D.N.Y. 2018) (Oetken, J.) (same).

---

[24] Sudan's argument that *Bostock* and *Comcast* require but for causation is equally unavailing given the textual and contextual differences between the anti-discrimination statutes at issue in those cases and the ATA. *See Linde*, 97 F. Supp. 3d at 324 (prior Supreme Court decisions requiring but for causation are unpersuasive when deciding if the ATA requires but for causation because of the textual and contextual differences between ATA and the other statutes).

[25] Sudan misunderstands this concept in its argument. These statements do not suggest that substantial assistance incorporates an additional "but-for" causation not included in the *Halberstam* factors, but rather that the substantial assistance test is itself a formulation of proximate cause, akin to the substantial factor test.

That is clearly so because the *Halberstam* analysis assesses whether support to the terrorist organization's activities is sufficiently linked to the resulting harm (the "general awareness" and "substantially assist" elements), and holds the abettor liable for harm "foreseeably" resulting from the concerted action. *See Kaplan*, 999 F.3d at 856-57; *id.* at 860-61 (terrorist attack the natural and foreseeable result of supporting terrorists). And where knowing provision of substantial assistance is properly pled, as here, the acts of all parties engaged in concerted action leading to a terrorist attack, including those of the 9/11 hijackers, are attributed to the other parties. *Halberstam*, 705 F.2d at 476-77 (D.C. Cir. 1983).

2. The R&R Correctly Held That Plaintiffs Allege That Sudan Was Generally Aware That It Was Substantially Assisting Al Qaeda

As determined in the R&R, the Amended Complaints properly allege the general awareness and substantial assistance elements for ATA aiding and abetting liability. R&R at 48-52. As to general awareness, Sudan's sole objection to the R&R's conclusion rests on the fact that al Qaeda was not designated as a foreign terrorist organization ("FTO") until after Bin Laden personally left the Sudan in 1996. This argument is nonsensical for several reasons.

First, the sole textual requirement relating to designation in JASTA's aiding and abetting provision is that the organization responsible for the attack have been designated "*as of the date on which such act of international terrorism was committed, planned, or authorized.*" 18 U.S.C. § 2333(d)(2) (emphasis supplied). Because al Qaeda was a designated FTO at the time the 9/11 attacks were "committed, planned and authorized," the text of JASTA provides no support for Sudan's designation argument.

Second, JASTA's aiding and abetting provision incorporates the standards of *Halberstam*, which merely requires that the defendant be generally aware of its "role as part of *an overall illegal or tortious activity.*" *Halberstam*, 705 F.2d at 477. In keeping with the principle, *Kaplan* construed *Linde* as requiring only a showing that "the defendant have been 'aware' that it was playing a role in terrorism"

21

and, specifically, that "in providing such [financial] services" to the FTO (there, Hamas), the defendant "bank was 'generally aware' that it was thereby playing a 'role' in Hamas's violent or life-endangering activities." *Id.* at 860-61. As the Report found, the allegations demonstrating Sudan's campaign of state support, aimed at supporting al Qaeda's jihad against the United States, go far beyond that requirement. And in any case, Sudan's support for al Qaeda continued well after its designation.

In claiming that Report erred in finding that Plaintiffs allege substantial assistance, Sudan makes no effort to contest the R&R's findings, at 49-51, that Sudan provided substantial assistance to al Qaeda under the *Halberstam* factors, or to engage the Second Circuit's decisions in *Kaplan* and *Honickman.* Instead, Sudan (relying on an unreported district court decision citing a ruling concerning aiding and abetting liability for a fraud under New York law) claims that it is insufficient to allege that Sudan substantially assisted al Qaeda, and that Plaintiffs must instead show that Sudan provided assistance specifically to advance "the 9/11 Attacks" Obj. at 21. The Second Circuit does not agree.

As discussed at length in Plaintiffs' 54(b) Br. at 8 and 54(b) Reply at 9, "[K]nowing and substantial assistance for the actual injury causing act … is unnecessary." *Honickman,* 6 F.4th at 499. *Kaplan* expressly rejected any argument that plaintiffs were required to show that the defendant "knowingly and intentionally supported Hizbollah in perpetrating the rocket attacks." *Kaplan,* 999 F.3d at 866. Instead, the issue "concerns whether [the defendant] aided and abetted *Hizbollah* by knowingly providing assistance – whether directly to *Hizbollah* or indirectly – and whether that assistance was substantial." *Id.* at 866 (emphasis added). Here, the Report correctly found that Sudan's support for al Qaeda was substantial under the *Halberstam* test, R&R at 50-51, and nothing more is required.

### 3. The R&R Correctly Held That The Amended Complaints Properly Allege Conspiracy under the ATA

The Report correctly determined that the complaints allege ATA conspiracy liability. R&R at 51-52. Sudan's sole objection to the R&R's conclusion on this point rests on its claim that the

pleadings did not tether the conspiracy to the 9/11 attacks specifically. This objection has no merit because "to the extent that some district courts suggest that the object of the conspiracy must contemplate a specific act of international terrorism, as opposed to an overall campaign of terrorism further by specific attacks, those decisions are out of step with ordinary conspiracy principles incorporated into JASTA via *Halberstam*." *King v. Habib Bank, Ltd.*, 2022 U.S. Dist. Lexis 176536 *44-45 (S.D.N.Y. Sept. 28, 2022). Further, as the Report found, Sudan's specific aim in partnering with al Qaeda was to enhance its terrorist capabilities, and the 9/11 attacks were unquestionably a foreseeable consequence of that joint undertaking. R&R at 15; *see also Kaplan*, 999 F.3d at 860-61 (terrorist attack the natural and foreseeable result of supporting terrorists).

### B. The Report Correctly Determined That Plaintiffs State Valid Claims For Assault, Battery, And Trespass

#### 1. Plaintiffs State Law Claims Are Not Preempted By §§ 1605A And 1605B

Plaintiffs already have discussed how Sudan's claims that § 1605A and § 1605B preempt Plaintiffs' common law claims are belied by the text of § 1605B, inconsistent with the purposes of both statutes, and been repudiated by every court that has considered the same arguments in the context of § 1605A, when Sudan previously raised them in other cases in an attempt to avoid responsibility for its terrorist activities. *See supra* at 14-15. The Report's analysis rejecting Sudan's preemption arguments thoughtfully discusses several of those same points, and additionally explains why the preemption doctrine itself "strongly urges against" finding preemption of Plaintiffs' common law tort claims. As the Report held, none of the factors identified in *Rice v. Sante Fe Elevator Corp.,* 331 U.S. 218, 230 (1947) suggest preemption, and in fact all point to the opposite conclusion. R&R at 54-55. Sudan fails to meaningfully engage the Report's analysis, and instead merely repeats its oft rejected arguments. For the very reasons discussed in the Report, Sudan's preemption arguments are meritless.

2.   Plaintiffs Have Adequately Pled Their State Law Claims

Sudan's challenge to Plaintiffs' state law claims, Obj. at 23-24, repeats its specious proximate cause arguments, which Plaintiffs have thoroughly addressed, *see, e.g.,* § V(A)(1). As Plaintiffs previously argued, MTD Opp. at 48-50, Sudan's additional argument, at 24, that Plaintiffs have not adequately pled "intent" for state law claims fails. The elements of conspiracy and aiding and abetting are the same under the ATA and New York law, which do not require intent specifically tied to the 9/11 plot. *Burnett v. Al Baraka Inc. & Dev. Corp.*, 349 F.2d 765, 825-30 (S.D.N.Y. 2005); MTD Opp. 40-41; R&R at 48. Because Plaintiffs pled plausible facts establishing Sudan's liability for conspiracy and aiding and abetting, *see* MTD Opp. 33-47, 58, they pled proper claims for secondary liability for the state law claims. *See* R&R at 57.

C.     **The Report Correctly Allows Plaintiffs' Alien Tort Statute Claims to Proceed**

The ATS, 28 U.S.C. § 1350, gives this court "original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." The Report correctly found all three elements present. *See* R&R at 60. Sudan now argues for the first time that courts lack ATS jurisdiction against foreign sovereigns. Obj. at 24. Assuming Sudan can now raise this argument, §§ 1605B and 1605(a)(5) provide separate jurisdictional bases through which Plaintiffs can and do assert claims for torts committed in violation of the law of nations. *See* CAC ¶¶ 333-37.

D.     **The Report Correctly Allows Plaintiffs' RICO Claims to Proceed**

Sudan devoted one short paragraph in its Motion to Dismiss to Plaintiffs' RICO claims, but failed to indicate which RICO element Plaintiffs supposedly failed to plead. *See* ECF No. 6575 ("Sudan MTD") at 44. Instead, Sudan just cited to a prior decision against different defendants that involved a "fact-bound determination based on those specific claims" and was not a "blanket rule against civil RICO claims" but failed to explain why the Court should apply that decision to Sudan. R&R at 61.

Sudan belatedly claims that Plaintiffs have not pled "direction" or "conscious agreement," which Sudan claims are needed to plead a civil RICO claim. Sudan is wrong for at least three (3) reasons. First, Sudan failed to raise this before Judge Netburn, so the argument is waived. *See Fischer v. Forrest*, 968 F.3d 216, 221 (2d Cir. 2020). Second, neither "direction" nor "conscious agreement" are elements of a civil RICO claim. *See In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 826 (S.D.N.Y. 2005) ("a plaintiff must plead seven elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.").

Third, and giving Sudan's objections the benefit of the doubt, its reference to "direction" and "conscious agreement" may refer to the "operation or management" test adopted in *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). But the Second Circuit has held that this gloss over RICO claims "must be assessed by a fact-finder," *i.e.*, the jury, and is generally not an appropriate basis for a motion to dismiss. *See United States v. Allen*, 155 F.3d 35, 42 (2d Cir. 1998); *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004) (describing the test as "a relatively low hurdle for plaintiffs to clear, especially at the pleading stage"). Rather, *Reves* has its strongest application against "outsiders" who are unwitting aiders to a criminal enterprise, inapplicable to the intimate involvement present here. 507 U.S. at 184-85. Further, *Reves* only applies to 18 U.S.C. § 1962(c) RICO claims, but Plaintiffs bring RICO claims under Section 1962(a-d). *Id.*; *see also* CAC ¶¶ 310-322.

Even if Sudan had properly challenged Plaintiffs' civil RICO count, the CAC alleges in great detail the far-reaching Sudanese involvement in a civil RICO enterprise. *See* MTD Opp. at 5-7, 50-51.

## VI.   <u>CONCLUSION</u>

For the reasons set forth above, Sudan's Objections to the Report and Recommendation and Amended Report and Recommendation should be denied.

Dated: December 6, 2022                    Respectfully submitted,

                                          COZEN O'CONNOR

                                          By:  /s/ Sean P. Carter
                                          SEAN P. CARTER
                                          COZEN O'CONNOR
                                          One Liberty Place
                                          1650 Market Street, Suite 2800
                                          Philadelphia, PA 19103
                                          Tel.: (215) 665-2105
                                          Email: scarter1@cozen.com

                                          *Co-Chair of the Plaintiffs' Executive Committee for
                                          Commercial Claims on behalf of the Consolidated Amended
                                          Complaint Plaintiffs*

                                          MOTLEY RICE LLC

                                          By:  /s/ Robert T. Haefele
                                          ROBERT T. HAEFELE
                                          JODI WESTBROOK FLOWERS
                                          DONALD A. MIGLIORI
                                          MOTLEY RICE LLC
                                          28 Bridgeside Boulevard
                                          Mount Pleasant, SC 29465
                                          Tel.: (843) 216-9184
                                          Email: rhaefele@motleyrice.com

                                          *Co-Chairs and Liaison Counsel for the Plaintiffs'
                                          Executive Committee for Personal Injury and
                                          Death Claims on behalf of the Consolidated
                                          Amended Complaint Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the Consolidated Amended Complaint Plaintiffs'
Memorandum of Law in Opposition to the Republic of the Sudan's Objections (ECF No. 8717) to
the Court's May 3, 2022 Report & Recommendation (ECF No. 7942) and September 23, 2022
Amended Report & Recommendation (ECF No. 8549), was filed electronically this 6th day of
December 2022.  Notice of this filing will be served upon all parties in 03 MDL 1570 by operation
of the Southern District of New York's Electronic Case Filing ("ECF") system, which all parties
may access.

_____

J. Scott Tarbutton, Esq.

LEGAL\60616740\1

27