IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Case No. 1:03-md-01570-GBD-SN |

*This document relates to:*

*Federal Ins. Co., et al. v. Al Qaida, et al.*, No. 03-cv-6978; *Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03-cv-9849; *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.*, No. 04-cv-1922; *Continental Casualty Co., et al. v. Kingdom of Saudi Arabia, et al.*, No. 04-cv-5970; *O'Neill, et al. v. Republic of the Sudan, et al.*, No. 18-cv-12114; and *Aronow, et al. v. Republic of Sudan*, No. 20-cv-07733.

**THE REPUBLIC OF THE SUDAN'S OPPOSITION TO THE
CONSOLIDATED-AMENDED-COMPLAINT PLAINTIFFS' OBJECTIONS
TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005

December 6, 2022

*Counsel for the Republic of the Sudan*

# TABLE OF CONTENTS

ARGUMENT ...................................................................................................................1

I.   THE REPORT AND THE AMENDED REPORT CORRECTLY CONCLUDE
     THAT THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER THIS
     ACTION UNDER THE NONCOMMERCIAL-TORT EXCEPTION IN § 1605(A)(5)....1

     A.   Plaintiffs' New Arguments Are Improper Objections Under Rule 72(b)...............2

     B.   Controlling Decisions in this MDL Establish that the Court Lacks Subject-
          Matter Jurisdiction Under § 1605(a)(5) ...................................................4

     C.   The Report and the Amended Report Correctly Conclude that the Entire-
          Tort Rule Precludes Jurisdiction Under § 1605(a)(5)...............................5

     D.   The Amended Complaints Cannot Establish Subject-Matter Jurisdiction
          Under § 1605(a)(5) Because They Cannot Establish Aiding and Abetting
          or Conspiracy .....................................................................................9

     E.   The Court Should Not Refrain from Ruling on Subject-Matter Jurisdiction
          Under § 1605(a)(5) ............................................................................13

II.  THE REPORT CORRECTLY CONCLUDES THAT § 1605A(D) DOES NOT
     PROVIDE CORPORATE PLAINTIFFS WITH INDEPENDENT CLAIMS
     AGAINST FOREIGN SOVEREIGNS AND THAT CORPORATE PLAINTIFFS
     ARE NOT U.S. NATIONALS FOR PURPOSES OF § 1605A(A) ................................15

     A.   The Court Should Reject the Corporate Plaintiffs' Attempt to Broaden the
          Scope of § 1605A................................................................................15

     B.   The Corporate Plaintiffs Are Not "Nationals of the United States" for
          Purposes of § 1605A ..........................................................................19

CONCLUSION..............................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Admin. Comm. of Time Warner, Inc. Benefit Plans v. Biscardi*,
No. 99-cv-12270, 2001 WL 392645
(S.D.N.Y. Apr. 17, 2001) ........................................................................................................ 14

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989) ................................................................................................................. 9

*Ashton v. Al Qaeda Islamic Army (In re Terrorist Attacks on Sept. 11, 2001)*,
298 F. Supp. 3d 631 (S.D.N.Y. 2018) .................................................................................... 10

*Atchley v. Astrazeneca UK Ltd.*,
22 F.4th 204 (D.C. Cir. 2022) ................................................................................................ 22

*Bayside Enter. Inc. v. Nat'l Labor Rel. Bd.*,
429 U.S. 298 (1977) ........................................................................................................... 20-21

*Bob Jones Univ. v. Simon*,
416 U.S. 725 (1974) ................................................................................................................ 18

*Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief and Dev.*,
291 F.3d 1000 (7th Cir. 2002) ............................................................................................... 13

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
137 S. Ct. 1312 (2017) ................................................................................................... 1-2, 15-16

*Breard v. Greene*,
523 U.S. 371 (1998) ................................................................................................................ 11

*Broidy Cap. Mgmt., LLC v. State of Qatar*,
982 F.3d 582 (9th Cir. 2020) ................................................................................................... 8

*BS Big V, LLC v. Philadelphia Indem. Ins. Co.*,
No. 19 Civ. 4273, 2022 WL 4181823
(S.D.N.Y. Sep. 13, 2022) ..................................................................................................... 4, 18

*Cedric Kushner Promotions, Ltd. v. King*,
533 U.S. 158 (2001) ................................................................................................................ 20

*Cent. Bank of Denver, N.A. v. First Interstate Bank, N.A.*,
511 U.S. 164 (1994) ........................................................................................................... 22-23

*Certain Underwriters at Lloyd's London v. Great Socialist People's Libyan Arab Jamahiriya*,
811 F. Supp. 2d 53 (D.D.C. 2011) ................................................................. 17-18

*Conn. Nat'l Bank v. Germain*,
503 U.S. 249 (1992) ........................................................................................22

*In the matter of Claims of Interlease, Inc. against the Great Socialist People's Libyan Arab Jamahiriya*, Decision No. LIB-II-163, Foreign Claims Settlement Comm'n (July 12, 2012) ....................................................................23

*Democratic Nat'l Comm. v. Russian Fed'n*,
392 F. Supp. 3d 410 (S.D.N.Y. 2019) ..............................................................5

*Devil's Advocate, LLC v. Zurich Am. Ins. Co.*,
666 Fed. App'x 256 (4th Cir. 2016) ...............................................................20

*Doe v. Bin Laden*,
580 F. Supp. 2d 93 (D.D.C. 2008) ...................................................................7

*Doe v. Bin Laden*,
663 F.3d 64 (2d Cir. 2010) ...................................................................... 6-7, 8

*Doe v. Fed. Democratic Republic of Ethiopia*,
851 F.3d 7 (D.C. Cir. 2017) ........................................................................8, 9

*Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran*,
313 F. Supp. 3d 50 (D.D.C. 2018) .................................................................17

*Honickman v. BLOM Bank SAL*,
6 F.4th 487 (2d Cir. 2021) ............................................................................13

*Jerez v. Republic of Cuba*,
775 F.3d 419 (D.C. Cir. 2014) .....................................................................8-9

*Kansas v. Garcia*,
140 S. Ct. 791 (2020) ....................................................................................21

*Kaplan v. Lebanese Canadian Bank, SAL*,
999 F.3d 842 (2d Cir. 2021) ..........................................................................13

*Lawton v. Republic of Iraq*,
581 F. Supp. 2d 43 (D.D.C. 2008) .................................................................10

*Letelier v. Republic of Chile*,
488 F. Supp. 665 (D.D.C. 1980) .....................................................................8

*Linde v. Arab Bank, PLC*,
   882 F.3d 314 (2d Cir. 2018)..................................................................... 8, 12-13, 22

*Liu v. Republic of China*,
   892 F.2d 1419 (9th Cir. 1989) ...........................................................................8

*Maine v. Thiboutot*,
   448 U.S. 1 (1980)...............................................................................................12

*Marquez-Almanzar v. I.N.S.*
   418 F.3d 210 (2d Cir. 2005)...............................................................................24

*Mead Corp. v. Tilley*,
   490 U.S. 714 (1989)...........................................................................................12

*Miles v. Apex Marine Corp.*,
   498 U.S. 19 (1990).............................................................................................11

*Mohammadi v. Islamic Republic of Iran*,
   782 F.3d 9 (D.C. Cir. 2015) ..............................................................................17

*Nat'l Org. for Women v. Scheidler*,
   510 U.S. 249 (1994)...........................................................................................22

*Nurad, Inc. v. William E. Hooper & Sons Co.*,
   966 F.2d 837 (4th Cir. 1992) ............................................................................21

*O'Neill v. Saudi Joint Relief Comm. (In re Terrorist Attacks on Sept. 11, 2001)*,
   714 F.3d 109 (2d Cir. 2013)...........................................................................4, 5, 6

*Owens v. Republic of Sudan*,
   826 F. Supp. 2d 128 (2011) ..............................................................................18

*Owens v. Republic of Sudan*,
   864 F.3d 751 (D.C. Cir. 2017)..........................................................................16

*Pfizer v. Gov't of India*,
   434 U.S. 308 (1987)...........................................................................................12

*Pub. Emps. Ret. Sys. of Ohio v. Betts*,
   492 U.S. 158 (1989)...........................................................................................23

*Ratzlaf v. United States*,
   510 U.S. 135 (1994)......................................................................................18, 22

*Republic of Sudan v. Harrison*,
   139 S. Ct. 1048 (2019)......................................................................................18

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*,
    775 F.3d 154 (2d Cir. 2014) ........................................................................................3

*Roeder v. Islamic Republic of Iran*,
    742 F. Supp. 2d 1 (D.D.C. 2010) ...............................................................................17

*Rothe Dev., Inc. v. U.S. Dep't of Def.*,
    836 F.3d 57 (D.C. Cir. 2016) ......................................................................................22

*Rubin v. Islamic Republic of Iran*,
    138 S. Ct. 816 (2018) ..................................................................................................16

*Schonberger v. Serchuk*,
    742 F. Supp. 109 (S.D.N.Y. 1990) ...............................................................................3

*Sci. Components Corp. v. Sirenza Microdevices, Inc.*,
    No. 03 Civ. 1851, 2006 WL 2524187
    (E.D.N.Y. Aug. 30, 2006) .............................................................................................4

*Sturdza v. United Arab Emirates*,
    281 F.3d 1287 (D.C. Cir. 2002) .................................................................................11

*Swiss Nat'l Ins. Co. v. Miller*,
    267 U.S. 42 (1925) ........................................................................................ 19-20, 21

*In re Terrorist Attacks on Sept. 11, 2001*,
    134 F. Supp. 3d 774 (S.D.N.Y. 2015) ...............................................................4, 6, 14

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 659 (2d Cir. 2013) .........................................................................................5

*In re Terrorist Attacks on Sept. 11, 2001*,
    740 F. Supp. 2d 494 (S.D.N.Y. 2010) .................................................................... 9-10

*In re Terrorist Attacks on Sept. 11, 2001*,
    No. 03-md-1570, 2016 WL 11270527
    (S.D.N.Y. Oct. 24, 2016) .........................................................................................4, 17

*TVA v. Hill*,
    437 U.S. 153 (1978) ....................................................................................................12

*U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am.*, *Inc.*,
    508 U.S. 439 (1993) ....................................................................................................16

*United States v. Heirs of Boisdore*,
    49 U.S. 113 (1849) ......................................................................................................16

*Verlinden B.V. v. Cent. Bank of Nigeria*,
    461 U.S. 480 (1983)..................................................................................................2

*Weiss v. Nat'l Westminster Bank, PLC*,
    993 F.3d 144 (2d Cir. 2021)..................................................................................12

*Yellen v. Confederated Trives of Chehalis Rsrv.*,
    141 S. Ct. 2434 (2021)................................................................................ 12, 23-24

## STATUTES

1 U.S.C. § 1 ............................................................................................................11

8 U.S.C. § 1101.............................................................................15, 19, 20, 21, 22, 24

8 U.S.C. § 1182.....................................................................................................21

8 U.S.C. § 1408.................................................................................................21, 24

18 U.S.C. § 2333.................................................................................................11, 12

18 U.S.C. § 2337....................................................................................................10

22 U.S.C. § 1621....................................................................................................23

Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602, et seq.

    28 U.S.C. § 1605(a) ...................................................................................... *passim*

    28 U.S.C. § 1605A ........................................................................................ *passim*

    28 U.S.C. § 1605B ........................................................................................ *passim*

    28 U.S.C. § 1610................................................................................................ 16-17

## RULES

Fed. R. Civ. P. 72.................................................................................................1, 2

## LEGISLATIVE MATERIALS

154 Cong. Rec. S. 54 (Jan. 22, 2008) ......................................................................18

## OTHER AUTHORITIES

Lee R. Rugg, Couch on Insurance § 222:25 (3d ed. 2000)................................... 18-19

Plaintiffs' Objections consist of either new arguments that are improper under Rule 72(b) of the Federal Rules of Civil Procedure or rehashed arguments that the Court has already rejected in this MDL.  In particular, Plaintiffs now, for the first time, ask the Court to refrain from deciding threshold jurisdictional issues that were raised in the Amended Complaints and are plainly appropriate for resolution at the outset of litigation.  The Court should reject these desperate pleas and: (i) adopt the Report and the Amended Report's correct conclusion that this Court lacks subject-matter jurisdiction over this action under the noncommercial-tort exception (§ 1605(a)(5)); and (ii) decline to expand the scope of the sovereign-immunity exception in § 1605A(a) to allow claims by plaintiffs that do not meet the jurisdictional standing requirements set forth in § 1605A(a)(2)(A)(ii).

## ARGUMENT

### I. THE REPORT AND THE AMENDED REPORT CORRECTLY CONCLUDE THAT THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER THIS ACTION UNDER THE NONCOMMERCIAL-TORT EXCEPTION IN § 1605(a)(5)

In making the extraordinary request (at 4, ECF No. 8707) that this Court should "refrain from addressing the extraneous question" of subject-matter jurisdiction under the noncommercial-tort exception to foreign sovereign immunity (§ 1605(a)(5)), Plaintiffs improperly presume (at 3) that this Court will adopt the Report's erroneous conclusions on subject-matter jurisdiction under § 1605A and § 1605B.  As explained in detail in Sudan's Objections (at 2-19, ECF No. 8717), the Report applies incorrect legal standards and disregards the Court's prior rulings in this MDL.  In light of Plaintiffs' failure to allege facts sufficient to establish subject-matter jurisdiction under either § 1605A or § 1605B, this Court *must* address the question of subject-matter jurisdiction under § 1605(a)(5).

Furthermore, addressing whether the Amended Complaints properly allege subject-matter jurisdiction under § 1605(a)(5) is entirely appropriate at this threshold stage of the action.  *See,*

*e.g.*, *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1324 (2017) (holding "a court should decide the foreign sovereign's immunity defense '[a]t the threshold' of the action" (alteration in original) (quoting *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983))).   Contrary to Plaintiffs' argument (at 3), "prudential and case management considerations" counsel strongly in favor of considering now the bases for subject-matter jurisdiction invoked in the Amended Complaints.  CAC ¶ 8, ECF No. 6539; *Ashton* Am. Compl. ¶¶ 4, 8, ECF No. 6537.   Indeed, the determination of whether the noncommercial-tort exception may apply — an issue the Magistrate Judge has already decided *twice* in accordance with controlling precedent from this MDL — is straightforward and not "novel."  Notwithstanding Plaintiffs' unfounded request that the Court refrain from addressing this threshold jurisdictional issue, the Court should accept the Report and the Amended Report's correct conclusion that the Amended Complaints fail to plead facts sufficient to establish subject-matter jurisdiction under § 1605(a)(5).  R&R 35-36, ECF No. 7942; Am. R&R 3-5, ECF No. 8549.

### A.  Plaintiffs' New Arguments Are Improper Objections Under Rule 72(b)

Ignoring their own massive complaints, alternative legal theories, and shifting arguments, Plaintiffs attempt to blame *Sudan* for supposed judicial inefficiencies in addressing now the noncommercial-tort exception, which the Amended Complaints themselves put at issue.  Plaintiffs refer (at 4) to Sudan's purportedly "expansive" Objections (which had not even been filed when Plaintiffs filed their Objections) and "complicated" motion to dismiss as grounds to avoid deciding this threshold jurisdictional issue.  But Sudan's motion to dismiss was responding to the CAC Plaintiffs' nearly 100-page complaint asserting four bases for subject-matter jurisdiction (including § 1605(a)(5)) and eighteen claims for relief against Sudan.  CAC ¶¶ 8, 193-337.  Similarly, the *Ashton* Plaintiffs filed a nearly 50-page complaint also asserting four bases for subject-matter jurisdiction (including § 1605(a)(5)) and six claims for relief.  *Ashton* Am. Compl.

¶¶ 4-5, 7-8, 120-75.

Eager to put Plaintiffs' unfounded allegations against it to rest, Sudan moved to dismiss the Amended Complaints in their entirety, including because § 1605(a)(5) does not provide a basis for subject-matter jurisdiction here.  *See* Mem. in Supp. of Sudan's Mot. to Dismiss 27, ECF No. 6575.  In response, Plaintiffs never argued before the Magistrate Judge that the Court should refrain from addressing the availability of § 1605(a)(5).

The Report, correctly observing that Plaintiffs "d[id] not seriously contest" that § 1605(a)(5) was unavailable, reaches the obvious conclusion that the Court lacks subject-matter jurisdiction under that provision.  R&R 35.  Perhaps recognizing that they had failed to raise a proper argument supporting jurisdiction under § 1605(a)(5) — having argued the point only in a footnote (*see* Pls.' Opp. to Sudan's Mot. to Dismiss 8 n.5, ECF No. 6649) — Plaintiffs raised the jurisdictional argument under § 1605(a)(5) in their Motion to Reconsider.  *See* Pls.' Mot. 4, ECF No. 8090; *but see id*. at 1 (recognizing "[r]econsideration should not be used to . . . 'advance new facts, issues or arguments not previously presented to the Court'" (quoting *Schonberger v. Serchuk*, 742 F. Supp. 109, 119 (S.D.N.Y. 1990))); *see also Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 168 (2d Cir. 2014) (holding arguments made in footnotes are generally waived).  The Amended Report properly rejects Plaintiffs' § 1605(a)(5) argument, affirming the Report's conclusion that the noncommercial-tort exception does not apply here.  Am. R&R 3-5.

Having invoked § 1605(a)(5) in the Amended Complaints, Plaintiffs now contend *for the first time* (at 4) that "the question of whether the non-commercial tort exception also applies is entirely academic and not one this Court need or should reach."  The Court should reject this improper objection and transparent attempt to avoid decision on a threshold jurisdictional issue.

*See, e.g.*, *BS Big V, LLC v. Philadelphia Indem. Ins. Co.*, No. 19-cv-4273, 2022 WL 4181823, at *5 (S.D.N.Y. Sep. 13, 2022) (Daniels, J.) ("In this Circuit, 'it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.'" (quoting *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03 Civ. 1851, 2006 WL 2524187, at *2 (E.D.N.Y. Aug. 30, 2006))).  In any event, Plaintiffs' belated objection lacks merit for the reasons discussed below.

> **B.   Controlling Decisions in this MDL Establish that the Court Lacks Subject-Matter Jurisdiction Under § 1605(a)(5)**

Contrary to Plaintiffs' contention (at 4-5), application of the "entire tort" rule under the circumstances alleged here is not "novel."  This Court and the Second Circuit in this MDL have repeatedly and consistently affirmed the requirement of the "entire tort" rule, even where secondary liability has been at issue.  *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 134 F. Supp. 3d 774, 783 (S.D.N.Y. 2015) (holding jurisdiction under § 1605(a)(5) "cannot be based on the tortious acts of third parties, even if the applicable substantive law would permit holding the foreign state liable for those acts under a theory of secondary liability" (quoting Br. for the United States as Amici Curiae, No. 08-640 (U.S. filed May 29, 2009), 2009 WL 1539068, at *16)), *vacated on other grounds*, No. 15-3426, 2017 WL 8776686 (2d Cir. Feb. 7, 2017); *see also O'Neill v. Saudi Joint Relief Comm. (In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 109, 116-17 (2d Cir. 2013) (rejecting § 1605(a)(5) as a basis for subject-matter jurisdiction where plaintiffs had not alleged any tortious activity by the sovereign defendant in the United States in connection with the 9/11 Attacks); *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570, 2016 WL 11270527, at *7 (S.D.N.Y. Oct. 24, 2016) (same).  Controlling precedent therefore requires that the Court reject Plaintiffs' objection and adopt the Report and Amended Report's conclusion that the Court lacks

subject-matter jurisdiction over this action under the non-commercial tort exception.  *See O'Neill*, 714 F.3d at 116-17; *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 675-76 (2d Cir. 2013) (holding prior panel rulings in this MDL on substantively similar allegations "require[d]" affirmance).

### C.    The Report and the Amended Report Correctly Conclude that the Entire-Tort Rule Precludes Jurisdiction Under § 1605(a)(5)

The Report and the Amended Report correctly conclude that the Amended Complaints fail to establish subject-matter jurisdiction under the noncommercial-tort exception.  The Amended Complaints allege no facts that show that Sudan committed *any tortious conduct* in the United States, and they therefore fail to satisfy the entire-tort rule under § 1605(a)(5).  *See* R&R 35 ("Plaintiffs cannot invoke § 1605(a)(5) because they do not allege that the entire tort took place in the United States."); Am. R&R 4 ("For this exception to apply, however, the 'entire tort' must be committed in the United States." (quoting *O'Neill*, 714 F.3d at 115)).

In an attempt to improperly shoehorn a new § 1605(a)(5) argument into their Objections, Plaintiffs misplace reliance on the Report's conclusions on the sufficiency of Plaintiffs' allegations for their secondary-liability claims (conclusions to which Sudan strenuously objects (*see* Sudan's Objs. 20-22)), arguing, in essence, that the entire-tort rule does not apply to secondary-liability claims.  But this late-breaking argument cannot overcome the Second Circuit's adoption in *O'Neill* of the "'entire tort' rule," which requires the sovereign defendant to have committed all portions of a tortious act in the United States for the jurisdictional requirements of § 1605(a)(5) to be met.  R&R 35 (citing *O'Neill*, 714 F.3d at 115-16); Am. R&R 3-4; *see also Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 428 (S.D.N.Y. 2019) ("The DNC has cited no similar case where the noncommercial tort exception was applied when a portion of the conduct of the foreign government occurred outside the United States.").  And Plaintiffs fail to rebut the Amended

Report's conclusion that "[e]ven under a secondary liability theory, the Court looks to where the acts that Sudan allegedly took in concert with the tortfeasor happened." Am. R&R 5; *see also In re Terrorist Attacks on Sept. 11, 2001*, 134 F. Supp. 3d at 783.

Indeed, *O'Neill* is particularly instructive here, and Plaintiffs' effort (at 7-8) to distinguish *O'Neill* is unavailing. In an action brought against the Saudi Joint Relief Committee and the Saudi Red Crescent Society for alleged material support for the 9/11 Attacks, the Second Circuit considered similar allegations of conduct and held jurisdiction was lacking under § 1605(a)(5). *Compare, e.g.*, CAC ¶ 44 (alleging "support, resources, training, and encouragement provided by the Sudanese government" that enabled al Qaeda to grow "[w]hile based in Sudan") (internal quotation omitted), *with O'Neill*, 714 F.3d at 116-17 (rejecting as insufficient to state a claim under FSIA injuries arising from defendants' alleged contributions of "financial and other resources to support Osama Bin Laden and al Qaeda" that "took place completely outside the United States"). As Plaintiffs acknowledge (at 7), the Second Circuit concluded that the *O'Neill* plaintiffs did "not allege that [the sovereign defendants] participated in the September 11, 2001 attacks," or that the defendants "committed any tortious act in the United States." *O'Neill*, 714 F.3d at 117 (stating "*all of the tortious conduct* allegedly committed by [defendants] occurred abroad" (emphasis added)). So too here: *all* of Sudan's supposedly "tortious" conduct — its purported material support to al Qaeda — allegedly occurred abroad. R&R 35.

Plaintiffs hang their argument on their own mischaracterization of the Second Circuit's decision in *Doe v. Bin Laden*, 663 F.3d 64 (2d Cir. 2011). Contrary to Plaintiffs' contention (at 6), the Second Circuit in *Doe* did *not* make any conclusion that allegations of conspiracy or attribution of alleged concerted action by third parties satisfied the entire-tort rule. Rather, the Second Circuit stated: "Let us be clear: we make no judgment as to whether the allegations in the

complaint are sufficient to state a claim or even to provide jurisdiction." *Doe*, 663 F.3d at 70-71; *see also* Am. R&R 4 (explaining "*Doe* merely authorized jurisdictional discovery to determine whether claims against Afghanistan could be brought under the non-commercial tort exception").

In the face of the Second Circuit's express statement, Plaintiffs are gravely mistaken (at 7 n.3) that the Second Circuit "squarely found" that the allegations in *Doe v. Bin Laden* satisfied the noncommercial-tort exception.  Neither the Second Circuit nor the district court in *Doe* made any determination that Doe's pleadings were sufficient to establish subject-matter jurisdiction under the noncommercial-tort exception.  Instead, the district court ordered "limited jurisdictional discovery" in response to *Afghanistan's request* "to present evidence concerning subject matter jurisdiction," and reserved ruling on jurisdiction until after the jurisdictional discovery was completed.  *Doe v. Bin Laden*, 580 F. Supp. 93, 99 (D.D.C. 2008); *see also Doe*, 663 F.3d at 71 ("What we decide today is simply that limited discovery to determine *whether jurisdiction exists* should proceed." (emphasis added)).

Plaintiffs also exaggerate (at 6) the district court's underlying decision in *Doe*.  The portion of the district court's opinion in *Doe v. Bin Laden* that Plaintiffs selectively quote is simply a restatement of the *Doe* plaintiff's allegations, not any "express[]" holding by the district court to do away with the entire-tort rule in cases involving secondary-liability claims.  *See Doe*, 580 F. Supp. at 98 ("Doe *claims* that although Afghanistan was not one of the direct perpetrators of the attacks in the United States, Afghanistan is liable as a co-conspirator . . . ." (emphasis added)).  The district court merely acknowledged in a footnote that Afghanistan "might not be individually liable under Doe's wrongful death claims in the absence of a conspiracy."  *Id*. at 98 n.5.

Regardless, the entire-tort rule was not at issue on appeal in *Doe v. Bin Laden*, and nothing in the Second Circuit's decision suggests that the Second Circuit even considered the issue.

–7–

Moreover, as the Amended Report correctly observes (at 4), *Doe v. Bin Laden* was decided "before *O'Neill* squarely applied the entire tort rule to the non-commercial tort exception." The Amended Report is thus correct that *Doe v. Bin Laden* "provides little guidance" here. *Id.* Similarly, *Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018), does not help Plaintiffs either (Pls.' Objs. 8), because it did not even consider the noncommercial-tort exception in § 1605(a)(5), let alone the entire-tort rule. *See Linde*, 882 F.3d at 318 (considering propriety of jury instructions relating to the ATA's "terrorism element" in a case against a non-sovereign bank).

Plaintiffs' reliance (at 9) on the out-of-circuit decisions in *Letelier v. Republic of Chile*, 488 F. Supp. 665 (D.D.C. 1980), and *Liu v. Republic of China*, 892 F.2d 1419 (9th Cir. 1989), is also misplaced. *Doe v. Bin Laden* references *Liu* and *Letelier* as examples of cases in which "courts had allowed suits against foreign governments under the noncommercial tort exception for tortious — and arguably 'terrorist' — acts *occurring in the United States*." 663 F.3d at 68-69 (emphasis added). These cases thus do not, as Plaintiffs again erroneously assert (at 6), "hold[] that foreign sovereigns who act abroad are subject to claims under § 1605(a)(5) when an agent or co-conspirator commits a complete tort in the United States that causes harm here." To the contrary, "[b]oth involved actions 'occurring in the United States' that were — *without reference to any action undertaken abroad* — tortious." Am. R&R 5 (alteration in original) (emphasis added) (quoting *Doe v. Fed. Democratic Republic of Ethiopia*, 851 F.3d 7, 11 (D.C. Cir. 2017)). And both the District of Columbia and Ninth Circuits — where *Letelier* and *Liu* were decided, respectively — apply the entire-tort rule under § 1605(a)(5). *See Broidy Cap. Mgmt., LLC v. State of Qatar*, 982 F.3d 582, 590 (9th Cir. 2020) (confirming Ninth Circuit applies "entire tort" rule); *Jerez v. Republic of Cuba*, 775 F.3d 419, 424 (D.C. Cir. 2014) (holding no jurisdiction under § 1605(a)(5) because "none of the defendants sued here was within the United States" and tortious

acts of defendants therefore did not satisfy "entire tort" rule).

Plaintiffs also miss the import of *Doe v. Federal Democratic Republic of Ethiopia*. There, the D.C. Circuit emphasized that under the entire-tort rule, "not only the injury but also the act precipitating that injury must occur in the United States." 851 F.3d at 10. This is because "[t]he phrase 'occurring in the United States' is no mere surplusage." *Id*. (quoting § 1605(a)(5)). Thus, in that case, the court lacked jurisdiction over Ethiopia's alleged digital espionage because the requisite "intent" and "deployment" of the cyber-intrusion all "occurred outside the United States" — just like all of Sudan's alleged conduct here. *See id*. at 11.

The requirement that the sovereign defendant's alleged conduct occur in the United States is consistent with the Supreme Court's holding that "Congress' primary purpose in enacting § 1605(a)(5) was to eliminate a foreign state's immunity for traffic accidents and other torts committed in the United States." *Id*. (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439-40 (1989)). Given this purpose, the D.C. Circuit found it "unsurprising that transnational cyberespionage should lie beyond section 1605(a)(5)'s reach." *Fed. Democratic Republic of Ethiopia*, 851 F.3d at 11. It is no less surprising that allegations of purported sovereign conduct that took place half a world away and years before the underlying tort occurred should also "lie beyond section 1605(a)(5)'s reach." *Id.*

D.    **The Amended Complaints Cannot Establish Subject-Matter Jurisdiction Under § 1605(a)(5) Because They Cannot Establish Aiding and Abetting or Conspiracy**

Plaintiffs' argument (at 5-10) that the Report's recommendations regarding conspiracy and aiding and abetting "confirm" jurisdiction under § 1605(a)(5) fails for an additional reason. The Amended Complaints cannot establish subject-matter jurisdiction under § 1605(a)(5) (or any other FSIA exception, including § 1605B) because they cannot establish aiding and abetting or conspiracy under common law or under the ATA. The Court has already held in this MDL that

New York law does not recognize causes of action for aiding and abetting or conspiracy.  *In re Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 514 n.6 (S.D.N.Y. 2010) (*cited by* R&R 56).

Similarly, 18 U.S.C. § 2337 provides that "no action" under the ATA "shall be maintained" against a foreign state.  The *only* available exception to sovereign immunity for ATA claims is the one set forth in § 1605B of the FSIA.  *See* 28 U.S.C. § 1605B; 18 U.S.C. § 2337(2).  As the Court has recognized in this MDL, the enactment of § 1605B as part of JASTA:

> permits United States nationals to assert claims against foreign states under the ATA, provided that the requirements of its newly-created FSIA exception are otherwise met.  *See* 28 U.S.C. § 1605B(c).  Pre-JASTA, the ATA had explicitly barred claims brought thereunder from being asserted against foreign states.  *See* 18 U.S.C. § 2337.

*Ashton v. Al Qaeda Islamic Army (In re Terrorist Attacks on Sept. 11, 2001)*, 298 F. Supp. 3d 631, 642 & n.6 (S.D.N.Y. 2018) (citing 28 U.S.C. § 1605B(b) and (c)).  Because § 2337 bars all ATA claims against foreign states, except for the limited exception provided by the JASTA amendment enacted as § 1605B, no other FSIA exception to sovereign immunity is available for ATA claims or even purports to lift the bar on ATA claims against foreign states.  *See Lawton v. Republic of Iraq*, 581 F. Supp. 2d 43, 45 (D.D.C. 2008) (granting motion to dismiss pre-JASTA ATA claim against Republic of Iraq and rejecting argument that "once a[n] FSIA exception is established, the ATA exemption [§ 2337] is overcome and the ATA becomes available as a basis for pursuing claims against a foreign state" (quotations and alterations omitted)).  JASTA articulates very narrow requirements for permissible ATA claims against foreign states.  *See* 28 U.S.C. §§ 1605B(b), (c).  Nowhere does JASTA suggest that § 2337's categorical bar on ATA claims against foreign states is subject to the other FSIA exceptions to sovereign immunity.  And as Sudan explained in its Objections, the exception to sovereign immunity in § 1605B does not apply here.  *See* Sudan's Objs. 3-16.

–10–

Furthermore, Plaintiffs' reliance (at 9) on the Report's "conclusions that Sudan conspired with and aided and abetted al Qaeda in furtherance of [the 9/11 attacks" is misplaced. JASTA does not extend secondary liability to foreign sovereigns. *See* Mem. in Supp. of Sudan's Mot. to Dismiss 33-34. JASTA authorizes ATA suits against foreign sovereigns only "in accordance with [18 U.S.C. §] 2333." 28 U.S.C. § 1605B(c). Section 2333 creates secondary liability only for a "*person* who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed . . . an act of international terrorism." 18 U.S.C. § 2333(d)(2) (emphasis added). For the definition of "person," § 2333(d)(1) expressly refers to 1 U.S.C. § 1, the Dictionary Act, under which "'person' . . . include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." Prior to JASTA's enactment, courts had found that this definition of "person" does not include sovereigns, foreign or otherwise. *See Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1307 (D.C. Cir. 2002) (relying on Dictionary Act to hold foreign sovereign is not a "person" under 42 U.S.C. § 1985); *see also Breard v. Greene*, 523 U.S. 371, 378 (1998) (per curiam) ("Paraguay is not a 'person' as that term is used in [42 U.S.C.] § 1983."). Congress is presumed to be "aware of existing law when it passes legislation," yet conspicuously chose not to amend the definition of "person" in § 2333(d)(1) to include foreign sovereigns when it enacted JASTA. *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990)*.* Since a foreign sovereign is not a "person," Sudan cannot be liable under § 2333(d).

Indeed, the Report acknowledges (at 42) that § 2333(d)(2) creates liability for a "person," that § 2333(d)(2) refers to the Dictionary Act for the definition of "person," and that the Dictionary Act definition of "person" does not include sovereigns. Yet the Report goes on to ignore the plain text of the statute, and inject ambiguity where there otherwise is none, and improperly expands the term "person" to include foreign states under 18 U.S.C. § 2333(d)(2).

Plaintiffs' reliance (at 9) on the Report for this dubious proposition is further misplaced because none of the authorities the Report cites (at 42-43) is availing.  In *Pfizer v. Government of India* (*see* R&R 42-43), the Court held that foreign states are "persons" under the Sherman Act, but only looked to the context and purpose because the Act did not provide a restrictive definition. 434 U.S. 308, 318 (1987) (stating "[n]othing in the Act, its history, or its policy, could justify" a "restrictive" definition of "person").  That is not the case here, where the Act's express reliance on the Dictionary Act and choice not to include "foreign sovereign" in § 2333(d)(1) plainly justifies limiting the definition of "person" to "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."  *See Yellen v. Confederated Tribes of Chehalis Rsrv.*, 141 S. Ct. 2434, 2451 (2021) ("Had Congress wished to limit CARES Act funding to federally recognized tribes, it could simply have cross-referenced the List Act instead, as it had in numerous statutes before.").

In *Mead Corp. v. Tilley*, 490 U.S. 714 (1989) (*see* R&R 43), the Court referenced the section title to resolve "any possible ambiguity," where the title was in accord with the plain language of the statute.  *Mead Corp.*, 490 U.S. at 723.  But here, there is no ambiguity in the text needing to be resolved, and so the Court should not look *outside* the text in order to *create* ambiguity.  *See Maine v. Thiboutot*, 448 U.S. 1, 6 n.4 (1980) (explaining where "plain language" is strong, "it is not necessary to look beyond the words of the statute" (quoting *TVA v. Hill*, 437 U.S. 153, 184, n.29 (1978))).

In *Weiss v. National Westminster Bank, PLC*, 993 F.3d 144 (2d Cir. 2021) (*see* R&R 43), the JASTA claims were directed at a non-sovereign bank, not a foreign state.  So contrary to the Report (at 43), *Weiss* does not stand for the proposition that "JASTA is exclusively concerned with foreign states."  JASTA's reach unquestionably is not limited to foreign states.  *See, e.g., Linde*,

882 F.3d at 319-20; *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 847 (2d Cir. 2021); *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 494 (2d Cir. 2021).  Thus, the Report's conclusion that any definition of "person" in JASTA *must* encompass foreign states is erroneous and provides no support to Plaintiffs here.

And lastly, *Boim v. Quranic Literacy Institute & Holy Land Foundation for Relief and Development*, 291 F.3d 1000 (7th Cir. 2002) (*see* R&R 43), was decided fourteen years before JASTA's passage, so that decision offers no insight into JASTA's purpose, let alone its text, and similarly provides no support to Plaintiffs here.

Notwithstanding that claims (including secondary-liability claims) are not available to Plaintiffs under the ATA in the noncommercial-tort context, the Amended Complaints have not adequately alleged aiding and abetting or conspiracy under the ATA.  *See* Sudan's Objs. 20-22. In particular, Plaintiffs' allegations fail to establish the general awareness element of aiding and abetting, because they only allege material support by Sudan that took place years before al Qaeda's designation as a terrorist organization.  *Id.* at 20-21.  And Plaintiffs fail to allege that Sudan knowingly provided substantial assistance, because they make no well-pleaded factual allegations connecting any conduct by Sudan to the 9/11 Attacks.  *Id.* at 21.  Nor do Plaintiffs establish that Sudan entered into any agreement with al Qaeda concerning the 9/11 Attacks.  *Id.* at 20-21.  Plaintiffs thus cannot support their assertions (at 8) that Sudan "jointly participated" in the attacks or that its alleged conduct was not "distinct and separate" from the attacks but "part of the same concerted action undertaken in the United States."

### E.  The Court Should Not Refrain from Ruling on Subject-Matter Jurisdiction Under § 1605(a)(5)

Presumably appreciating the weakness of their arguments as to § 1605(a)(5), Plaintiffs desperately urge this Court (ad nauseam) to avoid the question altogether.  Plaintiffs contend (at

4) that avoiding the "question of § 1605(a)(5)'s applicability will prevent the unnecessary expenditure of scarce judicial resources in relation to the resolution of Sudan's already complicated motion to dismiss." But Plaintiffs have it backwards: judicial efficiency *supports* accepting the Report and the Amended Report's conclusion on this issue now. The Court need not expend significant resources resolving this issue given the controlling decisions from this MDL that establish that the Court lacks subject-matter jurisdiction over this action under the non-commercial tort exception. Moreover, as discussed above, the parties and the Magistrate Judge have "already spent significant time and resources" arguing and resolving the question, respectively. *See Admin. Comm. of Time Warner, Inc. Benefit Plans v. Biscardi*, No. 99-cv-12270, 2001 WL 392645, at *1 (S.D.N.Y. Apr. 17, 2001) (finding "the fairness to the parties, judicial economy, and convenience to both the parties and the Court" supported exercising supplemental jurisdiction).

Plaintiffs assert without explanation (at 4) that "a determination (one way or the other) as to the applicability of § 1605(a)(5) will not affect the scope of the substantive claims that proceed or the discovery to be conducted." Plaintiffs are wrong. Under the FSIA, certain substantive claims are available only under specific exceptions to foreign sovereign immunity. For instance, as discussed above, a claim under the ATA is only available if Plaintiffs are ultimately able to establish subject-matter jurisdiction under § 1605B — and then only a claim for primary liability — and is not available under any other FSIA exception. *See also* Sudan's Objs. 22-23 (explaining that § 1605A(c) and the ATA provide the exclusive causes of action under the exceptions to immunity in § 1605A and § 1605B, respectively). Additionally, any determination that § 1605(a)(5) applies would require Plaintiffs to prove that Sudan engaged in tortious conduct within the United States, whereas any determination that § 1605A or § 1605B applies, would not. *See In re Terrorist Attacks on Sept. 11*, 134 F. Supp. 3d at 783. Thus, this Court should address

the issue of subject-matter jurisdiction under § 1605(a)(5) now, *see Helmerich*, 137 S. Ct. at 1324, and hold that § 1605(a)(5) is unavailable here.

**II.     THE REPORT CORRECTLY CONCLUDES THAT § 1605A(d) DOES NOT PROVIDE CORPORATE PLAINTIFFS WITH INDEPENDENT CLAIMS AGAINST FOREIGN SOVEREIGNS AND THAT CORPORATE PLAINTIFFS ARE NOT U.S. NATIONALS FOR PURPOSES OF § 1605A(a)**

The plain text of § 1605A, and its incorporation of the definition of "national of the United States" from the Immigration and Nationality Act ("INA"), foreclose the Corporate Plaintiffs' effort (at 10-15) to expand the scope of § 1605A to provide subject-matter jurisdiction over the Corporate Plaintiffs' claims that do not derive from the claims of U.S. nationals.  *See* R&R 32. Claims brought against Sudan under § 1605A(c) and (d) *must* meet the jurisdictional requirements in § 1605A(a), which include that the claims are limited to those asserted by a "national of the United States," "a member of the armed forces," or "an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment."  *See* § 1605A(a)(2)(A)(ii).  The Corporate Plaintiffs do not meet these jurisdictional requirements and, contrary to the Report's conclusion (at 32-33), they have not alleged facts supporting subject-matter jurisdiction over their claims on a subrogation basis (Sudan's Objs. 14-16).  Therefore, the Court lacks subject-matter jurisdiction over the Corporate Plaintiffs' claims.

**A.     The Court Should Reject the Corporate Plaintiffs' Attempt to Broaden the Scope of § 1605A**

The Corporate Plaintiffs make the perfunctory argument (at 11-12, n.4) that the Court need not determine the scope of § 1605A at this time.  But again, the Court should reject the Corporate Plaintiffs' belated attempt to avoid a decision on another threshold jurisdictional issue that they themselves raised in their complaints.  It is entirely appropriate for the Court to decide this threshold jurisdictional question at the earliest possible stage of the proceedings. *See Helmerich*,

137 S. Ct. at 1324.

In addition, the Corporate Plaintiffs' argument (at 12-15) that insurer claims under § 1605A are not limited to those derived from the claims of U.S. nationals fails. Section 1605A, read in its entirety, cannot be read to provide subject-matter jurisdiction over claims of persons or entities that fall outside the categories of individuals identified in § 1605A(a)(2)(A)(ii). *See Owens v. Republic of Sudan*, 864 F.3d 751, 805 (D.C. Cir. 2017) ("Section 1605A(a) gives the court jurisdiction and withdraws immunity *only when* 'the claimant or the victim' falls within one of four categories: U.S. nationals, members of the armed forces, and employees or contractors of the United States acting within the scope of their employment." (emphasis added)), *vacated on other grounds sub nom.*, *Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020).

The Corporate Plaintiffs' argument that § 1605A(d), on its own, provides a basis for subject-matter jurisdiction requires § 1605A(d) to be read in isolation, divorced from the structure and context of § 1605A overall. *See, e.g.*, *Helmerich*, 137 S. Ct. at 1320-21 (analyzing provisions of FSIA against the statute's structure and context); *U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am.*, *Inc.*, 508 U.S. 439, 455 (1993) ("Over and over we have stressed that 'in expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.'" (quoting *United States v. Heirs of Boisdore*, 49 U.S. 113, 122 (1849))). The full text of § 1605A, § 1605A(d)'s placement within § 1605A, and § 1605A(d)'s title of "Additional Damages" signify that § 1605A(d) is *not* an independent exception to foreign sovereign immunity and cannot provide a basis for subject-matter jurisdiction. *See Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 823-24 (2018) (holding 28 U.S.C. § 1610(g) is not "an independent avenue for abrogation of [sovereign] immunity" where other provisions of the same section "unambiguously revoke the immunity of property of a foreign

–16–

state" and because § 1610(g) "conspicuously lacks the textual markers . . . that would have shown that it serves as an independent avenue for abrogation of immunity"); *see also Roeder v. Islamic Republic of Iran*, 742 F. Supp. 2d 1, 11 (D.D.C. 2010) (explaining that "text and structure of [§ 1605A] as a whole clearly separate jurisdictional prerequisites from the elements of a private right of action"). Section 1605A(d) merely allows the claimants specified in § 1605A(a)(2)(A)(ii) to bring actions for "additional damages" arising from injury to their property, rather than from "personal injury or death."

The exception to sovereign immunity in § 1605A is set forth in § 1605A(a), and subject-matter jurisdiction exists *only* in certain actions where "the claimant or victim was" a U.S. national, armed services member, or U.S. government employee or contractor. The Corporate Plaintiffs do not fit in any of these categories, so there is no jurisdiction over their claims. *See, e.g.*, *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 15 (D.C. Cir. 2015) (affirming dismissal because plaintiffs did not satisfy jurisdictional nationality or employment requirements in § 1605A(a)(2)); *In re Terrorist Attacks on Sept. 11, 2001*, 2016 WL 11270527, at *3-4 (dismissing claims where "[n]either claimant nor victim fit within the jurisdictional requirements of § 1605A(a)").

To support their preferred interpretation of § 1605A, the Corporate Plaintiffs (at 14-15) look to case law from outside this Circuit decided in the default context and floor statements by a single Senator. The decisions on which the Corporate Plaintiffs rely (at 13-14) lack "precedential weight," because they were decided in the context of a default by a non-appearing foreign sovereign. *See Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran*, 313 F. Supp. 3d 50, 53 (D.D.C. 2018) (acknowledging that "Iran has never entered an appearance in this action"); *Certain Underwriters at Lloyd's London v. Great Socialist People's Libyan Arab Jamahiriya*, 811 F. Supp. 2d 53, 56 (D.D.C. 2011) (acknowledging "[t]he Syrian defendants have neither answered nor

–17–

appeared"); *see also Bob Jones Univ. v. Simon*, 416 U.S. 725, 740 n.11 (1974) (finding decision lacked "precedential weight" where the case did not "involve[e] a truly adversary controversy"). In addition, this Court should not "resort to legislative history to cloud a statutory text that is clear," even if there are "contrary indications in the statute's legislative history." *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994); *see also Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1056 (2019) (explaining that in interpreting the FSIA, "[w]e begin 'where all such inquiries must begin: with the language of the statute itself'" (alteration in original) (quoting *Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 412 (2012))); *Owens v. Republic of Sudan*, 826 F. Supp. 2d 128, 153 (D.D.C. 2011) (refusing to expand the private right of action beyond the statutory language in § 1605A(c) notwithstanding Senator Lautenberg's floor statements). Even if they were relevant, Senator Lautenberg's statements do not provide the support that Plaintiffs assert they do; Senator Lautenberg specifically addressed decisions that "prevented *victims* from pursuing claims for collateral property damage." 154 Cong. Rec. S. 54, 55 (Jan. 22. 2008) (emphasis added).

The Corporate Plaintiffs also suggest (at 15 n.5) that the scope of jurisdiction under § 1605A should be expanded beyond its plain text because "loss claims" on life insurance policies may not be subrogated. To begin, this entirely new argument should be rejected as an improper objection. *See BS Big V, LLC*, 2022 WL 4181823, at *5. Even if § 1605A(d) could be interpreted to allow insurance companies to bring claims on a subrogation basis, the general principle that the Corporate Plaintiffs cite (at 15 n.5) — that "no right of subrogation is available under life insurance policies" — is limited to the principle of *equitable subrogation*. So it *does not* "necessarily follow[]" (*id*.) that insurers may bring independent claims against Sudan, since subrogation may be still be available to the extent expressly provided for in the insurers' life insurance agreements with the victims. *See* Couch on Insurance § 222:25 ("[I]f a contract is one of investment, an insurer

–18–

will not be permitted to receive subrogation, absent an express subrogation clause or agreement.").

Followed to its logical end, the Corporate Plaintiffs' proposed interpretation of § 1605A would effectively do away with the jurisdictional U.S.-nexus requirements in § 1605A(a). The Corporate Plaintiffs' proposed interpretation would allow any allegedly injured party, no matter how tenuous their connection with the United States, to bring actions against foreign states under § 1605A so long as a single U.S. national or government employee or contractor was killed or injured by a particular terrorist act. This interpretation — inconsistent with the text and context of § 1605A — would open the floodgates to future litigation and should be rejected.

**B.    The Corporate Plaintiffs Are Not "Nationals of the United States" for Purposes of § 1605A**

Though the Corporate Plaintiffs again try (at 12 n.4) to shift the blame for their inadequate briefing on this issue to Sudan, they fail to provide any convincing authority to rebut the Report's conclusion that corporate entities are not "nationals of the United States" for purposes of § 1605A. Specifically, the Corporate Plaintiffs misread precedent from this Circuit and ignore the text and context of the § 1605A definition of "national of the United States," which is expressly adopted from the INA. *See* § 1605A(h)(5) ("[T]he term 'national of the United States' has the meaning given that term in section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(22)))." Section 1101(a)(22) states, "[t]he term 'national of the United States' means (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States."

The Corporate Plaintiffs seize (at 15-16) on the term "citizen" in § 1101(a)(22) of the INA and argue incorrectly that because corporations have been found to be "citizens" of the United States in other contexts, they must be considered citizens in the context of § 1605A(a) and the INA. As the Corporate Plaintiffs acknowledge (at 16), however, congressional intent as to the

meaning of a statutory term is "to be gathered from the context and the general purpose of the whole legislation in which it occurs." *Swiss Nat'l Ins. Co. v. Miller*, 267 U.S. 42, 46 (1925). The Supreme Court in *Swiss National Insurance* found that a corporation was *not* a "citizen," as that term was used in the Trading with the Enemy Act, because the context confirmed that the term was used to refer to "natural persons" and corporations were covered elsewhere in the statute. 267 U.S. at 46.

The context surrounding the term "national of the United States" in § 1605A(a) supports the conclusion that a "national of the United States" refers only to natural persons. Use of terms like "personal injury or death," "member of the armed forces," "employee," and "individual performing a contract" in § 1605A(a) confirm that Congress intended for immunity to be withdrawn only in actions asserting claims arising from personal injury to or death of natural persons. *See, e.g.*, *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) ("The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status."); *Devil's Advocate, LLC v. Zurich Am. Ins. Co.*, 666 Fed. App'x 256, 262 (4th Cir. 2016) ("The language of § 8.01-40(A) plainly includes only natural persons, as demonstrated by its discussion of the ramifications of the death of the aggrieved person."). And § 1605A(d) allows those specified individuals to seek "Additional Damages" for injury to their property.

Because § 1605A(h)(5) states that the term "'national of the United States' has the meaning given that term in" § 1101(a)(22) of the INA, the meaning of the term under the INA and cases interpreting the term in that context are likewise instructive in determining its meaning. *See Bayside Enter. Inc. v. Nat'l Labor Rel. Bd.*, 429 U.S. 298, 300 (1977) (looking to context of the definition of "agricultural laborer" in the referenced statute because "[i]t is . . . that section and the

decisions construing it which are relevant even though this proceeding arose under" a different statute); *Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837, 845 (4th Cir. 1992) (holding district court was bound to follow a case interpreting the term "disposal" under the referenced statute because "Congress expressly provided that under CERCLA the term 'shall have the meaning provided in section 1004' of RCRA"). That context shows that the term "citizen," as used in the definition of "national of the United States" in § 1101(a)(22), refers to natural, and not juridical, persons.

The INA governs immigration and naturalization procedures for persons immigrating to the United States; it does not govern any process by which a corporation or other business entity would become a U.S. "citizen." *See, e.g.*, *Kansas v. Garcia*, 140 S. Ct. 791, 797 (2020) ("The foundation of our laws on immigration and naturalization is the Immigration and Nationality Act (INA) . . . which sets out the 'terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the country.'" (citation omitted)); *cf. Swiss Nat'l Ins. Co.*, 267 U.S. at 46 (explaining that "a citizen or subject who may change his nationality . . . could hardly refer to a corporation"). The INA repeatedly refers to citizenship in terms of birth, death, and familial status — not state or country of incorporation — reinforcing the conclusion that, under the INA, "citizens" are natural and not juridical persons. *See, e.g.*, 8 U.S.C. § 1101(a)(15)(K) (referring to "citizens" in the context of marital status); *id.* § 1408 (describing individuals who are "nationals" but not "citizens" of the United States in terms of birthplace and familial relationships); *id.* § 1182(a)(6)(C)(ii) (referring to "citizens" in context of birth and age); *see also Swiss Nat'l Ins. Co.*, 267 U.S. at 46-47 (explaining that use of the term "citizen" when referring to spouses showed the term referred to natural persons). And, although § 1101(b)(3) defines a "person" to mean "an individual or an organization" (but only "as used in subchapters I and II" of the INA), as explained

below, a corporation cannot be considered a "person who, though not a citizen of the United States, owes permanent allegiance to the United States." Section 1101(a)(22) conspicuously does not use the term "person" to describe a "citizen of the United States."

The Corporate Plaintiffs invoke (at 15-17) the purported legislative "purposes" of § 1605A, the ATA, and § 1605B as justifying their broad view of the scope of the definition of "national of the United States," but, again, this Court should not "resort to legislative history to cloud a statutory text that is clear." *Ratzlaf*, 510 U.S. at 147-48. In addition, Plaintiffs' reliance (at 17) on JASTA's "Findings and Purpose" section is misguided. In *Linde*, the Second Circuit held that the Findings and Purpose section of JASTA does not modify the law's explicit and unambiguous requirements. *See Linde*, 882 F.3d at 326 ("[L]egislative history" contained in the Findings and Purpose section of JASTA "cannot alter plain text that, as here, expressly defines the acts giving rise to liability[.]"); *id.* ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992))). Congressional "findings" merely "preface[]" the "operative sections" of a statute. *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 259-60 (1994); *see also Rothe Dev., Inc. v. U.S. Dep't of Def.*, 836 F.3d 57, 66 (D.C. Cir. 2016) (stating congressional findings "are not an operative part of the statute"), *cert. denied*, 138 S. Ct. 354 (2017).

The Corporate Plaintiffs also point to an amicus brief filed in *Atchley v. AstraZeneca UK Limited* by eight senators, half of whom either did not cosponsor JASTA or were not even in office when JASTA was passed. Pls.' Objs. 17, Ex. 1. The Supreme Court has "observed on more than one occasion that the interpretation given by one Congress (or a committee or Member thereof) to an earlier statute is of little assistance in discerning the meaning of that statute." *See, e.g., Cent.*

*Bank of Denver, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 186-87 (1994) (quoting *Pub. Emps. Ret. Sys. of Ohio v. Betts*, 492 U.S. 158, 168 (1989)).  This Court also has very recently observed in this MDL:  "The law is what the statute says it is, not what a group of former congressmembers or government officials wished it to be."  Mem. Decision & Order 4, ECF No. 8776.

Also misplaced is the Corporate Plaintiffs' reliance (at 18) on the 2008 settlement of terrorism claims against Libya and a decision by the Foreign Claims Settlement Commission to suggest that the definition of "national of the United States" means that the Corporate Plaintiffs are U.S. nationals for purposes of § 1605A.  The meaning of the term "national of the United States" applied in that context was "defined in the Commission's authorizing statute," *not* in § 1605A, or the INA.  *See In the matter of Claims of Interlease, Inc. against the Great Socialist People's Libyan Arab Jamahiriya*, Decision No. LIB-II-163 at 4, Foreign Claims Settlement Comm'n (July 12, 2012).  The Commission's authorizing statute defines "national of the United States" as including "persons who are citizens of the United States," and defines "persons" as including "corporations."  22 U.S.C. §§ 1621(a), (c).  Section 1605A(h)(5), in stark contrast, expressly incorporates the meaning of "national of the United States" provided in the INA, which plainly excludes corporations.

Congress could have incorporated an alternative definition of "national of the United States" in § 1605A, but it chose not to.  *See Confederated Tribes of Chehalis Rsrv.*, 141 S. Ct. at 2451 (finding significant to the analysis of the definition of the term "Indian tribe" Congress's decision to cross-reference the definition of that term from the Indian Self-Determination and Education Assistance Act rather than the definition from the List Act).  Instead, Congress expressly incorporated the INA's definition of "national of the United States" that does not encompass

corporate entities.  This Court should "give effect to that decision."  *Id.* at 3452.

The Corporate Plaintiffs also make the baseless argument (at 18-19) that the "allegiance" prong of the INA's definition of "national of the United States" encompasses entities incorporated in the United States, because incorporation is akin to a natural person's birth.  The Corporate Plaintiffs misread § 1101(a)(22)(B) and the Second Circuit's decision in *Marquez-Almanzar v. I.N.S.*, 418 F.3d 210, 217-18 (2d Cir. 2005), interpreting that provision.  In *Marquez-Almanzar*, the Second Circuit held that the *only* persons that could qualify as U.S. nationals under the "allegiance" prong in § 1101(a)(22)(B) are the categories of persons identified in 8 U.S.C. § 1408.  The court explained that "[a]ll of these categories concern persons who were either born in an 'outlying possession' of the United States, *see* 8 U.S.C. § 1408(1), or 'found' in an 'outlying possession' at a young age, *see id.* § 1408(3), or who are the children of non-citizen nationals, *see id.* §§ 1408(2)&(4)."  *Marquez-Almanzar*, 418 F.3d at 217.  The court held that an individual must satisfy one of these specific statutory requirements, and "cannot qualify as a U.S. national under 8 U.S.C. § 1101(a)(22)(B) by a manifestation of 'permanent allegiance' to the United States."  *Id.* at 218-19.  None of the categories identified in § 1408 can be fairly interpreted to encompass corporate entities.  And private corporations, of course, do not manifest "permanent allegiance" to the United States, nor is incorporation equivalent to a person's birth.

Finally, the brief of the United States on which the Corporate Plaintiffs rely (at 19 & Exhibit 2) also does not help their cause.  That brief addresses whether corporations may pursue claims under the Treaties of Berlin and Versailles; it does not address the definition of "national of the United States" in the INA, or the INA's permanent allegiance prong.

## CONCLUSION

Notwithstanding Sudan's Objections to the Magistrate Judge's Report, for the foregoing reasons, Sudan respectfully requests, that the Court (i) adopt the Report and the Amended Report's

conclusion that this Court lacks subject-matter jurisdiction over this action under § 1605(a)(5) and

(ii) decline to expand the scope of the sovereign-immunity exception in § 1605A(a) to allow claims

by the Corporate Plaintiffs.

Dated:   December 6, 2022                          Respectfully submitted,
         Washington, DC

                                                  **WHITE & CASE**

                                                  _/s/ Christopher M. Curran_
                                                  Christopher M. Curran
                                                  Nicole Erb
                                                  Claire A. DeLelle
                                                  Matthew S. Leddicotte (*pro hac vice*)
                                                  Nicolle Kownacki (*pro hac vice*)
                                                  Celia A. McLaughlin (admission application
                                                       forthcoming)
                                                  WHITE & CASE LLP
                                                  701 Thirteenth Street, NW
                                                  Washington, DC 20005
                                                  Telephone:      + 1 202 626 3600
                                                  Facsimile:      + 1 202 639 9355
                                                  ccurran@whitecase.com
                                                  nerb@whitecase.com
                                                  cdelelle@whitecase.com
                                                  mleddicotte@whitecase.com
                                                  nkownacki@whitecase.com
                                                  cmclaughlin@whitecase.com

                                                  *Counsel for the Republic of the Sudan*