1155 AVENUE OF THE AMERICAS, NEW YORK, NY 10036-2711

# JENNER&BLOCK LLP

December 14, 2022

VIA ECF

The Honorable George B. Daniels
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *In re Terrorist Attacks on September 11, 2001,* No. 03-md-1570 (GBD) (SN)
      *Havlish, et al. v. Bin Laden, et al.*, No. 03-cv-9848 (GBD) (SN)
      *John Does 1 through 7 v. the Taliban, et al.*, No. 20-mc-740 (GBD) (SN)
      *Federal Insurance Co., et al. v. al Qaida, et al.*, No. 03-cv-6978 (GBD) (SN)
      *Smith v. the Islamic Republic of Iraq*, No. 01-cv-10132 (GBD) (SN)
      **<u>Response to Mr. Naseer A. Faiq's November 25, 2022 Letter (Dkt. 8773)</u>**

Dear Judge Daniels:

On behalf of Judgment Creditors Fiona Havlish, *et al.*, John Does 1 through 7, Federal Insurance Co., *et al.*, and Estate of Smith, *et al.*—collectively, the "Joint Creditors"—we submit this letter in response to the "supplemental" arguments raised by Mr. Naseer A. Faiq as *amicus curiae* (the "Faiq Letter," Dkt. 8773), and in further support of our Objections (Dkt. 8733) to Judge Netburn's August 26, 2022 Report & Recommendation ("Report," Dkt. 8463).

A designated terrorist organization responsible for the murder of thousands of Americans has taken control of the agencies, assets and offices of a former foreign government. This has happened only once before—when the same terrorist organization took control of the same agencies, assets and offices in the same country some twenty-five years ago. Mr. Faiq criticizes the Joint Creditors for seeking what he characterizes as novel relief in this rather novel situation. But while the facts are unusual, the relief is not: an order commanding a third party in possession of the "blocked assets of any agency or instrumentality of [a] terrorist party" to turn those assets over to the terrorists' victims, "[n]otwithstanding any other provision of law" to the contrary. Congress has said such an order must issue "in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism." Terrorism Risk Insurance Act of 2002 ("TRIA") § 201, Pub. L. No. 107-297, 116 Stat. 2322, 2337-2340, as amended, Pub. L. No. 112-158, 126 Stat. 1260 (codified at 28 U.S.C. § 1610 note). For this reason, TRIA does not simply "narrow[] slightly the asymmetry between jurisdiction and execution immunity in the FSIA," as Mr. Faiq suggests. Rather, by its unequivocal language, it expressly supersedes the provisions of law that provide the basis for both jurisdiction and execution immunities, to the extent they even apply.[1] The Joint Creditors ask the Court to apply TRIA as

---

[1] Contrary to Mr. Faiq's suggestion, Letter at 1, n.1, *United States v. Assa* fully supports the Joint Creditors, and rebuts the Report's finding that Section 1604 of the FSIA is an obstacle to the Court's exercise of subject matter jurisdiction. As the Joint Creditors explained in Part IV.B.2 of the Objections, one reason

Page 2

written—and as interpreted by the Second Circuit—in a scenario well-known to the law's drafters. *See* Objections at 9-10, 39-41, 46 n. 57. For all the reasons we have explained in our Objections, the Court should do so.

In his supplemental Letter, Mr. Faiq once again claims that granting the Joint Creditors' turnover motions would require the Court to find that the Taliban itself has a property interest in the DAB Assets. *Compare* Faiq Letter at 1–2 *with* Dkt. 7932 (Faiq *Amicus* Br.) at 18–20. But as we have previously explained in detail, that argument is simply wrong. Dkt. 8019 at 13–18. TRIA authorizes terror victims to execute against the blocked assets of agencies or instrumentalities of judgment debtors, even where the judgment debtor itself does not have a direct property interest in those assets. *Weininger v. Castro*, 462 F. Supp. 2d 457, 479 (S.D.N.Y. 2006) ("[B]y its terms[,] § 201 provides that the blocked assets that may be executed upon are those of *either* the 'terrorist party' *or* 'any agency or instrumentality of that terrorist party[.]'" (emphasis added)); *see also Kirschenbaum v. 650 Fifth Ave. & Related Properties*, 830 F.3d 107, 132 (2d Cir. 2016) (TRIA authorizes execution against "property held in the hands of an agency or instrumentality of the terrorist party, even if the agency or instrumentality is not itself named in the judgment."), *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018). Mr. Faiq has once again failed to dispute the unrefuted facts that the assets in question belong to DAB, that the Taliban controls DAB, and that DAB is thus its agency or instrumentality. *See Kirschenbaum*, 830 F.3d at 135.

---

the FSIA does not deprive the Court of subject matter jurisdiction over this turnover proceeding is because it is a garnishment action against the Federal Reserve Bank of New York rather than an *in personam* action against a foreign state defendant, and "if the defendant is not a foreign state," Section 1604 of the FSIA "*does not confer immunity.*" *United States v. Assa Co.* (*Assa I*), 934 F.3d 185, 189 (2d Cir. 2019) (emphasis added). In *Assa I*, Section 1604 did not deprive the court of jurisdiction because that case—an *in rem* forfeiture action brought by the United States against Iran's property—was not an *in personam* action against a foreign state. *Id.* Likewise, Section 1604 does not deprive the court of jurisdiction here, because this turnover proceeding against the FRBNY is also not an *in personam* action against a foreign state.

Mr. Faiq nonetheless argues that *Assa I* does not support the Joint Creditors because the Second Circuit "explicitly distinguished" civil forfeiture actions from suits "brought by private litigants to satisfy private judgments." Letter at 1 n.1. This completely misses the point. The Second Circuit drew that distinction not in the context of discussing Section 1604's grant of immunity *from jurisdiction*, but rather in order to explain why a different provision of the FSIA—Section 1609—does not confer immunity *from execution* in civil forfeiture actions, even when Section 1609 might otherwise prohibit execution on a foreign state's property. *See Assa I*, 934 F.3d at 190. Section 1609, however, has no bearing here. As Judge Netburn found, Section 201 of TRIA "defeats the immunity from execution that the property of sovereign states and their instrumentalities normally enjoy" under Section 1609. Report at 12-13; *id.* at 16. It is thus undisputed that, by operation of TRIA, the Joint Creditors overcome Section 1609's grant of immunity from execution. And because, as *Assa I* held, Section 1604 "confer[s] immunity" only "if the defendant is [] a foreign state"—which is not the case here—the Joint Creditors need not overcome Section 1604's grant of immunity from jurisdiction.

Page 3

And although Mr. Faiq now couches his argument in the language of the general New York turnover statute, CPLR § 5225(b), which applies to "property in which the judgment debtor has an interest," that is of no moment. In TRIA cases, federal courts in New York have regularly found Section 5225 to be satisfied where the relevant property interest is directly held by the agency or instrumentality of the judgment debtor, rather than by the judgment debtor itself. *See, e.g., Weininger*, 462 F. Supp. 2d at 499; *Est. of Heiser v. Bank of Tokyo Mitsubishi UFJ, New York Branch*, 919 F. Supp. 2d 411, 421-422 (S.D.N.Y. 2013). Here, it is undisputedly the case that DAB—the Taliban's agency or instrumentality—has a sufficient ownership interest in the assets, seeing as the assets are held in an account at the Federal Reserve in DAB's name. *See* Dkt. 8019 at 14 (explaining why "[i]t cannot be meaningfully disputed that DAB has a property interest" in the blocked assets). Congress thus gave the Court jurisdiction and authority to authorize execution without finding that "the Taliban has a property interest in Afghanistan's central reserves," *see* Faiq Letter at 2, because the DAB Assets are owned by an agency or instrumentality of the Taliban. Therefore, the recognition concerns troubling Mr. Faiq are not implicated.[2]

Mr. Faiq also claims that the Joint Creditors' position on recognition cannot be reconciled with the statement in the Havlish Creditors' writ of execution that the Taliban "is now the government of Afghanistan." Faiq Letter at 2. This argument fails. The Havlish Creditors never asserted that the Taliban is the *legitimate* or *recognized* government of Afghanistan, and neither their writ nor their turnover motion are premised on such a finding. As the Joint Creditors noted in their Objections, courts routinely acknowledge that an unrecognized regime may exercise governmental powers or "act as a government," and a judicial acknowledgement of *de facto* governing authority does not infringe upon the President's exclusive constitutional authority to bestow formal recognition on foreign governments. *See* Objections at 43-51.[3]

Finally, for the reasons stated in our Objections, if the Court denies turnover, the Joint Creditors' writs should be left in place pending the disposition of any appeal.[4] The present

---

[2] While federal and state law are harmonious in this case, to the extent any conflict were to arise between the terms of the TRIA and CPLR § 5225, TRIA would control. *See* Fed. R. Civ. P. 69(a)(1) ("The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, *but a federal statute governs to the extent it applies*.") (emphasis added). Here, TRIA, a federal statute, provides a substantive right to attachment and execution against the blocked assets of an agency or instrumentality of a terrorist judgment debtor. *See* TRIA § 201(a). New York procedure cannot be interpreted so as to deny that right.

[3] Nor does Mr. Faiq explain why granting turnover would require the Court to adopt statements made in each of the parties' writs of execution. The Court need do no such thing. Indeed, as Judge Netburn found, writs of execution are not even prerequisites to turnover. *See* Report at 12 ("A creditor . . . need not obtain a writ of execution before seeking a turnover" under the CPLR and "regardless of the validity of the parties' writs of execution, they are entitled to make the motions for turnover.") (citing *Garland D. Cox & Assocs., Inc. v. Koffman*, 400 N.E.2d 302 (N.Y. 1979)).

[4] As the Joint Creditors have explained, an additional way to preserve the status quo and protect the interests of the 10,000+ Framework Agreement participants during the pendency of further litigation and appeals would be to grant the Joint Creditors' pending motion for post-judgment attachment. *See* Dkt. 8587.

Page 4

procedural situation is most complicated. Different writs of execution were obtained at different times by different creditors in different postures on different grounds. These writs were secured by diligent effort, which the law encourages. *See Warner v. Jaffray*, 96 N.Y. 248, 254 (1884) ("[T]he vigilant creditor has always been rewarded for his vigilance."); *In re Liquidation of Jugobanka, A.D.*, 46 Misc. 3d 615, 618–19 (N.Y. Sup. 2014). It is for precisely these reasons that the law assigns consequences to the temporal order in which writs of execution are secured and delivered for levy. *See* CPLR § 5234(b). To dissolve the writs under these circumstances would wholly upend the status quo, with substantial implications for the Joint Creditors' rights – and the financial recovery of over 10,000 members of the 9/11 community – if the Joint Creditors prevail on appeal. A stay is appropriate in such circumstances. *See* Objections at 59-60 (citing *Northern Mariana Islands v. Millard*, 287 F.R.D. 204, 215 (S.D.N.Y. 2012)); *see also Levin v. Bank of New York*, No. 09-CV-5900 (RPP), 2011 WL 812032, at *22 (S.D.N.Y. Mar. 4, 2011) (when issuing order denying TRIA execution for some parties, entering a stay pending appeal of that order). Leaving the writs in place pending appeal, by contrast, would work no harm on anyone.

Respectfully submitted,

/s/ Lee Wolosky
Lee Wolosky
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1628
lwolosky@jenner.com

Douglass A. Mitchell *(pro hac vice)*
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 639-6090
dmitchell@jenner.com

*Counsel for Judgment Creditors Fiona Havlish, et al.*


/s/ Orlando do Campo
Orlando do Campo
John Thornton (*pro hac vice)*
Daniela Jaramillo (*pro hac vice*)
DO CAMPO & THORNTON, P.A.
150 S.E. 2nd Avenue, Ste. 602
Miami, FL 33131
(305) 358-6600
od@dandtlaw.com

*Counsel for Judgment Creditors John Does 1-7*

Page 5

/s/ Sean P. Carter, Esq.
Sean P. Carter, Esq.
Stephen A. Cozen, Esq.
J. Scott Tarbutton, Esq.
COZEN O'CONNOR
1650 Market Street
Philadelphia, PA 19103
Tel: (215) 665-2105
scarter1@cozen.com

*Counsel for Judgment Creditors Federal Insurance Co., et al.*

/s/ James Edwin Beasley
James Edwin Beasley
The Beasley Firm, LLC
1125 Walnut Street
Philadelphia, PA 19107
(215)-592-1000
jbj@beasleyfirm.com

*Counsel for Judgment Creditors Estate of Smith, et al.*

cc: All counsel of record (by ECF)