**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------X

**In re: Terrorist Attacks on September 11, 2001**

**Civil Action No. 03-MD-1570 (GBD)(SN)
ECF Case**

---------------------------------------------------------X

**This document relates to:**

*Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03-cv-06978
*Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03-cv-09849
*Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.*, No. 04-cv-01922
*Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, No. 04-cv-05970
*Estate of John P. O'Neill, Sr., et al. v. Republic of the Sudan, et al.*, No. 18-cv-12114
*Aronow, et al. v. Republic of Sudan*, No. 20-cv-07733

**CONSOLIDATED AMENDED COMPLAINT PLAINTIFFS' REPLY BRIEF IN
FURTHER SUPPORT OF THEIR LIMITED OBJECTIONS TO THE
COURT'S MAY 3, 2022 REPORT & RECOMMENDATION (ECF No. 7942)**

December 20, 2022

**TABLE OF CONTENTS**

**Page**

I.    The Court Need Not Consider § 1605(a)(5), But Should Find It Applicable If It Does ..............1

    A.    It Is Appropriate For This Court To Defer Consideration Of § 1605(a)(5) .................1

    B.    Plaintiffs' Secondary Liability Theories Satisfy The Entire Tort Rule ...........................2

    C.    Plaintiffs Have Alleged Valid Conspiracy And Aiding And Abetting Claims ...............5

II.    The Court Should Decline To Follow The Report's Reasoning About
The Scope Of § 1605A ...........................................................................................................6

    A.    Insurer Claims Are Not Limited To Subrogated Claims Of U.S. Nationals .................6

    B.    Although The Court Need Not Reach The Issue, U.S. Corporations Are U.S.
Nationals .....................................................................................................................9

III.    Conclusion ..............................................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Certain Underwriters at Lloyd's London v. Great Socialist People's Libyan Arab Jamahiriya,*
  811 F. Supp. 2d 53 (D.D.C. 2011) .................................................................................................7

*Comm. Bank of Kuwait v. Rafidian Bank,*
  15 F.3d 238 (2d Cir. 1994) .............................................................................................................7

*Doe v. Bin Laden,*
  580 F. Supp. 2d 93 (D.D.C. 2008) .............................................................................................3, 4

*Doe v. Bin Laden,*
  663 F.3d 644 (2d Cir. 2011) .........................................................................................................3, 4

*Doe v. Fed. Democratic Rep. of Ethiopia,*
  851 F.3d 7 (D.C. Cir. 2017) ...........................................................................................................4

*Flanagan v. Islamic Rep. of Iran,*
  190 F. Supp. 3d 138 (D.C. Cir. 2016).............................................................................................7

*Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran,*
  313 F. Supp. 3d 50 (D.D.C. 2018) .................................................................................................7

*Hoglan v. Rafsanjani,*
  759 F. App'x 99 (2d Cir. 2019).......................................................................................................8

*Letelier v. Republic of Chile,*
  488 F. Supp. 665 (D.D.C. 1980) .................................................................................................3, 4

*Linde v. Arab Bank, PLC,*
  882 F.3d 314 (2d Cir. 2018) ...........................................................................................................4

*Liu v. Republic of China,*
  892 F.2d 1419 (9th Cir. 1989) .....................................................................................................3, 4

*Marquez-Almanzar v. I.N.S.,*
  418 F.3d 210 (2d Cir. 2005).........................................................................................................12

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela,*
  863 F.3d 96 (2d Cir. 2017) .............................................................................................................9

*Mohammadi v. Islamic Republic of Iran,*
  782 F.3d 9 (D.C. Cir. 2015) ...........................................................................................................8

*O'Neill v. Saudi Joint Relief Committee*,
   714 F.3d 109 (2d Cir. 2013) ........................................................................................2, 3

*Opati v. Republic of Sudan*,
   140 S. Ct. 1601 (2020) ......................................................................................................8

*Owens v. Republic of Sudan*,
   864 F.3d 751 (D.C. Cir. 2017) ........................................................................................8

*Ratzlaf v. United States*,
   510 U.S. 135 (1994)........................................................................................................10

*Ransom v. FIA Card Servs., N.A.*,
   562 U.S. 61 (2011)............................................................................................................9

*Rep. of Argentina v. NML Capital, Ltd.*,
   573 U.S. 134 (2014)..........................................................................................................5

*Roeder v. Islamic Republic of Iran*,
   742 F. Supp. 2d 1 (D.D.C. 2010) ....................................................................................8

*Rubin v. Islamic Republic of Iran*,
   138 S. Ct. 816 (2018)........................................................................................................8

*Swiss Nat'l Ins. Co. v. Miller*,
   267 U.S. 42 (1925)..........................................................................................................10

*In re Terrorist Attacks on Sept. 11, 2001*,
   349 F. Supp. 2d 765 (S.D.N.Y. 2005)............................................................................5

*In re Terrorist Attacks on Sept. 11, 2001*,
   134 F. Supp. 3d 774 (S.D.N.Y. 2015).............................................................................3

*In re: Terrorist Attacks on Sept. 11, 2001*,
   2015 WL 9468813 (S.D.N.Y. Dec. 28, 2015)..................................................................7

*In re Terrorist Attacks on Sept. 11, 2001*,
   2016 WL 1029552 (S.D.N.Y. Mar. 9, 2016) ...................................................................7

*In re Terrorist Attacks on Sept. 11, 2001*,
   2016 WL 11270527 (S.D.N.Y. Oct. 24, 2016) ................................................................8

*In re Terrorist Attacks on September 11, 2001*,
   298 F. Supp. 3d 631 (S.D.N.Y. 2018)..............................................................................1

*Ungar v. Palestine Liberation Org.*,
   402 F.3d 274 (1st Cir. 2005) ..........................................................................................12

*United States v. Nw. Express, Stage, & Transp. Co.*,
    164 U.S. 686 (1897)..................................................................................................................10

*USAA Cas. Ins. Co. v. Permanent Mission of the Republic of Namibia*,
    681 F.3d 103 (2d Cir. 2012) ....................................................................................................1

**Statutes and Rules**

8 U.S.C. § 1101 ..................................................................................................................................12

18 U.S.C. § 2333...............................................................................................................................11

28 U.S.C. § 1605(a) ................................................................................................................*passim*

28 U.S.C. § 1605A..................................................................................................................*passim*

28 U.S.C. § 1605B............................................................................................................................1, 2

28 U.S.C. § 1608................................................................................................................................7

Fed. R. Civ. P. 54(b) ........................................................................................................................5

Justice Against Sponsors of Terrorism Act ("JASTA"), Pub. L. No. 114-222, 130
    Stat. 852 (2016)...........................................................................................................5, 6, 11

Libya Claims Resolution Act, Pub. L. No. 110-301, 122 Stat. 2999 (2008) ...................................11, 12

**Other Authorities**

2B Sutherland Statutory Construction § 51:8 (7th ed.)...............................................................12

George Steven Swan, *Subrogation in Life Insurance: Now Is the Time*, 48 Ins. Couns. J.
    634, 635 (1981) ........................................................................................................................9

*In the Matter of Claims of Interlease, Inc., Against the Great Socialist People's Libyan Arab
    Jamahiriya*, Decision No. LIB-II-163, Foreign Claims Settlement Commission of
    the United States (July 12, 2012)........................................................................................11

*In the Matter of the Claim [Redacted] Against the Great Socialist People's Libyan Arab
    Jamahiriya*, Decision No. LIB-I-001, Foreign Claims Settlement Commission of
    the United States (Sept. 4, 2009)...................................................................................11, 12

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 52 (5th ed. 1984)......................4

I.      **The Court Need Not Consider § 1605(a)(5), But Should Find It Applicable If It Does**

       A.      **It Is Appropriate For This Court To Defer Consideration Of § 1605(a)(5)**

Sudan dedicates several pages of its Opposition to claiming that Plaintiffs' arguments that this Court may defer consideration of the tort exception's applicability are "improper." Sudan Opp. at 1-4. In Sudan's view, Plaintiffs "put [the non-commercial tort exception] at issue," *id.* at 2, and the Court must now decide it because a sovereign immunity defense is a "threshold" matter. *Id.* Sudan misses the point and ignores longstanding practice and precedent.

In fact, courts considering immunity defenses under the FSIA routinely decline to reach additional and alternative theories of jurisdiction where they conclude that the primary immunity exception invoked by the plaintiff applies. *See USAA Cas. Ins. Co. v. Permanent Mission of the Republic of Namibia*, 681 F.3d 103, 107-08 (2d Cir. 2012) ("Because we agree with the District Court that the tortious activity exception applies, we likewise do not address the applicability of the other two exceptions."). Indeed, this Court found it unnecessary to address Plaintiffs' alternate theories under § 1605(a)(5) as to Saudi Arabia, given its finding that Plaintiffs had made a *prima facie* showing of jurisdiction under § 1605B. *See In re Terrorist Attacks on September 11, 2001*, 298 F. Supp. 3d 631 (S.D.N.Y. 2018); *see also,* Joint Motion to Vacate and Remand, *In re Terrorist Attacks on September 11, 2001*, 15-3426-cv (2d Cir.), ECF No. 255-1 at 12 ("it would be inefficient and unnecessary for this Court to address the immunity issues related to 28 U.S.C. § 1605(a)(5) . . . as a practical matter that exception, for purposes of this case, has been superseded by the broader exception of Section 1605B."); Order to Vacate and Remand, 15-3426-cv (2d Cir.), ECF No. 287.

Most obviously, the plaintiffs in these and similar cases "put in issue" the alternative immunity exceptions that the courts declined to address, just as plaintiffs here raised the tort exception as an alternative to their primary theories of jurisdiction under § 1605A and § 1605B. The common judicial practice of deferring such unnecessary questions does not in any way run afoul of the principle that

immunity challenges should be decided as a "threshold" matter. To the contrary, the determination that one immunity exception applies typically resolves the jurisdictional issue in full, as is the case here.[1]

### B.     Plaintiffs' Secondary Liability Theories Satisfy The Entire Tort Rule

While the Court need not reach the issue given that § 1605A and § 1605B provide jurisdiction, Sudan is wrong in claiming that the Second Circuit's decision in *O'Neill v. Saudi Joint Relief Committee*, 714 F.3d 109, 117 (2d Cir. 2013), rejected attribution based on secondary liability principles as a basis for satisfying the entire tort rule. To the contrary, *O'Neill* did not address secondary liability, as reflected by the fact that the decision contains no reference at all to "conspiracy," "aiding and abetting," or any discussion of principles of attribution under those traditional tort doctrines. *Id.* Instead, *O'Neill's* conclusion that § 1605(a)(5) was unavailable for the claims at issue rested on its determination that the facts were insufficient to "allege that [the state defendants] participated in the September 11, 2001 attack." *Id.* This conclusion followed from the Court's assessment that the September 11th attack was "distinct and separate from the 'torts' allegedly committed by the [defendants]." *Id.* at n.10.

This reasoning focusing on the "distinct" and "separate" nature of the torts at issue makes clear that the *O'Neill* Court addressed the claims as a matter of primary liability, and points to the opposite conclusion from the one Sudan urges. Indeed, the foreign state defendants in *O'Neill* acted entirely from outside the United States. If, as Sudan urges, the entire tort rule categorically bars such claims, Sudan Opp. at 5-6, the *O'Neill* Court would have stopped at that threshold fact and simply

---

[1] Sudan's additional arguments about the different scope of claims that flow through the respective immunity exceptions, Opp. at 14, do not at all support its assertion that the Court need resolve § 1605(a)(5)'s applicability at this time. Sudan asserts that ATA claims are available only if § 1605B applies, but that merely indicates the need to resolve § 1605B's applicability. And if that exception applies, it provides jurisdiction for all statutory and common law tort claims that might otherwise flow through § 1605(a)(5). And as for Sudan's claim that a determination under § 1605(a)(5) would address whether it committed a tort in the United States, that is a question solely under § 1605(a)(5), and the very issue that § 1605B renders it unnecessary to reach.

held § 1605(a)(5) inapplicable because the defendants acted from abroad. But it did not, and instead went further and analyzed whether plaintiffs had alleged facts sufficient to establish that the defendants were "participa[nts]" in the September 11th attack and whether their conduct was part of the same or a "distinct and separate" tort. That additional line of inquiry indicates that the Court recognized that it could not dispense with the entire tort question without considering possible attribution of the attack under secondary liability theories, which it resolved based on a fact-bound determination that the pleadings alleged primary liability.[2]

Here, in contrast, the Report found that Plaintiffs' factual allegations established that "Sudan knew that al Qaeda wanted to commit terrorist acts against the United States, agreed to assist that endeavor, and then took steps to do so." R&R at 52. Likewise, for aiding and abetting, the pleadings established that Sudan substantially assisted al Qaeda through "a close and enduring relationship between al Qaeda's leadership and the highest levels of the Sudanese government," and Sudan "knowingly assisted" al Qaeda's schemes. R&R at 50.

These findings distinguish the present case from *O'Neill*, and confirm that it is instead on all fours with the decisions in *Doe v. Bin Laden,* 663 F.3d 64 (2d Cir. 2011), *Liu v. Republic of China*, 892 F.2d 1419 (9th Cir. 1989), and *Letelier v. Republic of Chile*, 488 F. Supp. 665 (D.D.C. 1980), where jurisdiction was found proper based on attribution of the U.S.-based torts of the foreign state defendants' co-conspirators. Sudan erroneously claims that those cases are distinguishable because jurisdiction rested on tortious acts "occurring in the United States," Opp. at 8, but it is beyond dispute that *the foreign state defendants* in those cases acted wholly from outside of the United States. *Doe,* 663 F.3d 65-66 (citing *Doe v. Bin Laden,* 580 F. Supp. 2d 93, 98-99 (D.D.C. 2008)), *Liu,* 892 F.2d at 1421-

---

[2] Sudan also cites this Court's vacated 2015 ruling, *In re Terrorist Attacks on Sept. 11, 2001*, 134 F. Supp. 3d 774, 783 (S.D.N.Y. 2015), *vacated*, No. 15-3426, 2017 WL 8776686 (2d Cir. Feb. 7, 2017). But that decision did not cite any case law for that conclusion, instead relying on a U.S. amicus brief, a fact that underscores Sudan's misreading of *O'Neill* and the fact that there is no appellate authority supporting its view of the entire tort rule. Those circumstances make all the more clear the benefits of deferring consideration of that unnecessary issue.

22, 1425; *Letelier,* 488 F. Supp. 2d at 674. Jurisdiction was nonetheless proper because of their participation in a joint enterprise, which made the U.S. based tortious actions of their co-conspirators attributable to them. *Doe,* 663 F.3d at 65, 71; *Doe v. Bin Laden,* 580 F. Supp. 2d at 98;[3] *Liu,* 892 F.2d at 1425 (China conspired in killing carried out by agents in U.S.); *Letelier,* 488 F. Supp. at 674 (Chile's agents engaged in tortious actions in this country). That is so because conspiracy and aiding and abetting are forms of "mutual agency, so that the act of one is the act of all." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 52, at 346 (5th ed. 1984); *Linde v. Arab Bank, PLC,* 882 F.3d 314, 331 (2d Cir. 2018).

In contrast, *Doe v. Fed. Democratic Rep. of Ethiopia,* 851 F.3d 7 (D.C. Cir. 2017), involved no third-party agent acting in the United States. Rather, Ethiopia allegedly infected Doe's computer by sending an email from abroad, which eventually caused damage when Doe opened an attachment that released the computer virus. *Id.* at 11. Critically, there was no actor who committed a tort or was even present within the United States, so there was no opportunity for that court to consider secondary liability principles as a basis for satisfying the entire tort rule. Here, al Qaeda's entire tort, committed in the United States, is attributable to its co-conspirators such as Sudan.

To the extent Sudan claims that traditional principles of attribution are unavailable under § 1605(a)(5), Sudan Opp. at 6, that is incorrect. *Doe,* *Letelier,* and *Liu* plainly indicate otherwise. Further, the tort exception is "is cast in general terms pertaining to all tort actions for money damages," *Doe,* 580 F. Supp. 2d at 97, save for the handful of causes of action (not relevant here) specifically excluded

---

[3] Sudan's claim that the entire tort rule was not considered in *Doe* are not credible. The district court in *Doe* expressly acknowledged the entire tort rule, and found it satisfied by the plaintiff's conspiracy allegations and resulting attribution of the attack. Because the Second Circuit was reviewing and affirming the district court's decision upholding discovery and dismissing a motion to dismiss on this basis, the predicate for the Second Circuit's analysis – that § 1605(a)(5) applies – necessarily rested on its approval of this attribution of U.S. actions by operation of conspiracy law. And while the Second Circuit did not make a final determination as to whether the *Doe* plaintiff would ultimately prevail, given Afghanistan's request for discovery to challenge the plaintiff's attribution and discretionary function theories, it did determine that the claims could proceed beyond the pleading stage, an assessment that required it to decide whether the requirements of the tort exception were met.

in subsection (B). 28 U.S.C. § 1605(a)(5)(B). And as the Supreme Court has held, the FSIA is a "comprehensive framework" for resolving foreign state immunity determinations and, as such, "any sort of immunity defense made by a foreign sovereign in an American court must stand on the Act's text. Or it must fall." *Rep. of Argentina v. NML Capital, Ltd.,* 573 U.S. 134, 141-42 (2014). Nothing in the text of § 1605(a)(5) supports Sudan's plea to avoid longstanding tort principles of concerted action liability and attribution, and so its defense "must fail." *Id.* at 142.

### C.     Plaintiffs Have Alleged Valid Conspiracy And Aiding And Abetting Claims

Sudan argues that Plaintiffs' common law conspiracy and aiding and abetting *claims* fail because New York does not recognize those causes of action. But New York recognizes conspiracy and aiding and abetting secondary *liability* for those that conspire to commit or aid and abet an act in violation of New York law, such as killing 2,977 people on September 11, 2001. And this Court has so held. *See* Report at 57; *see also In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 829 (S.D.N.Y. 2005) ("if Plaintiffs . . . sufficiently allege that Defendants supported, aided and abetted, or conspired with the September 11 terrorists, they will have also stated claims for wrongful death and survival.").

Sudan also is wrong in claiming that JASTA's conspiracy and aiding and abetting cause of action is unavailable as to Sudan, under the theory that foreign states do not qualify as "person[s]" within the meaning of that provision. Opp. at 11. Plaintiffs have explained at length in their briefs in support of their pending Rule 54(b) Motion why this argument is nonsensical, given the structure, purpose, design, and text of JASTA. *See* Reply In Support of Motion for Reconsideration Pursuant to Rule 54(b), ECF No. 7740 at 3-4. Plaintiffs respectfully incorporate those arguments here. Consistent with the points discussed therein, the Report correctly found that Congress drafted JASTA "to make the range of ATA claims available against foreign states,' and "intended 'person' to include foreign states." R&R at 42-44. The Magistrate's finding is amply supported. *See* JASTA § 2

("The purpose of this act is to provide civil litigants with the broadest possible basis . . . to seek relief against . . . foreign countries"); *id.* §§ 3, 4 (creating aiding and abetting ATA liability and authorizing suits against foreign states under ATA).[4]

## II.     The Court Should Decline To Follow The Report's Reasoning About The Scope Of § 1605A

Sudan offers no convincing defense of the Report's erroneous recommendation that § 1605A provides jurisdiction for the insurer Plaintiffs' claims only if those claims are "derived from U.S. nationals' insurance claims." R&R at 33. The Court should decline to follow it.

At the threshold, Sudan insists that this "jurisdictional issue"—that is, the precise scope of § 1605A—should be decided now, "at the earliest possible stage of the proceedings." Opp. 15. But, as the Report correctly concluded, subject matter jurisdiction exists over the insurer Plaintiffs' claims against Sudan *regardless* of whether § 1605A is limited to claims derived directly from "U.S. nationals." R&R at 32, 33–35; Mot. 11–12; *see also* ECF No. 8792 at 13. The general rule that jurisdiction is a threshold issue does not compel courts to reach out and decide unnecessary questions. Because jurisdiction exists regardless, Plaintiffs have asked the Court to decline to adopt the R&R insofar as it addresses § 1605A's scope, or, alternatively, to conclude that, under that provision, insurer claims are not limited to subrogated claims of U.S. nationals. *See* Mot. 11–12.

### A.     Insurer Claims Are Not Limited To Subrogated Claims Of U.S. Nationals

If the Court does address the scope of § 1605A, it should follow its own prior determination that § 1605A(d) authorizes claims for property and insurance losses regardless of their link to harm suffered by U.S. nationals, so long as a claim for personal injury or death arising from the same attack has been brought under § 1605A(c). *See* Mot. 12–15 (discussing, *inter alia*, *In re: Terrorist Attacks on Sept.*

---

[4] As the Report noted, the term person is construed to include foreign states where the purpose of the statute so indicates. The authorities Sudan cites where courts found statutes inapplicable to governments are unpersuasive, because the purposes and texts of the statutes at issue were entirely different, from JASTA, a remedial terrorism statute specifically designed to hold foreign government supporters of terrorism accountable in U.S. court.

*11, 2001*, No. 03MDL 1570(GBD)(FM), 2015 WL 9468813, at \*2–3 (S.D.N.Y. Dec. 28, 2015), *report*

*and recommendation adopted as modified sub nom. In re Terrorist Attacks*, No. 03MDL1570GBDFM, 2016 WL

1029552 (S.D.N.Y. Mar. 9, 2016)).

Sudan never acknowledges this ruling, and it fails to engage with the reasoning of other district

court cases holding that § 1605A(d) reaches claims by insurers and other corporate entities, regardless

of whether a U.S. national suffered the underlying loss. Nor does Sudan point to a case adopting a

contrary understanding of that provision. *See* Opp. 17–18. The argument Sudan musters instead is that

Plaintiffs' cases "lack precedential weight" because they were decided "in the default context." Opp.

17. This is incorrect. Default judgments under the FSIA incorporate special procedural protections:

Congress made them subject to a hearing, established an evidentiary burden, and provided for notice

to the defendant state. *See* 28 U.S.C. § 1608(e). As a result, courts routinely give such FSIA rulings

precedential weight. *See, e.g.*, *Flanagan v. Islamic Rep. of Iran*, 190 F. Supp. 3d 138 (D.C. Cir. 2016); *Comm.*

*Bank of Kuwait v. Rafidian Bank*, 15 F.3d 238 (2d Cir. 1994).

In any event, these prior decisions construing § 1605A are well-reasoned and persuasive.  They

show that § 1605A waives sovereign immunity for claims to recover economic losses by insurers and

other corporate entities where, as here, U.S. nationals were among the victims of the terrorist attack

and valid claims have been brought under § 1605A(c). *See* Mot. 13–14; *see also Friends of Mayanot Inst.,*

*Inc. v. Islamic Republic of Iran*, 313 F. Supp. 3d 50, 58 (D.D.C. 2018); *Certain Underwriters at Lloyd's London*

*v. Great Socialist People's Libyan Arab Jamahiriya*, 811 F. Supp. 2d 53, 71 (D.D.C. 2011). This follows

straightforwardly from the text of § 1605A. First, under § 1605A(a), a "foreign state shall not be

immune" in any case seeking damages for "personal injury or death that was caused by" a terrorist act,

so long as "the claimant or the victim was at the time" of the act, a "national of the United States"

(among other requirements not relevant here). 28 U.S.C. § 1605(a) (emphasis added where is the

emphasis?). Second, § 1605A(c) provides a private right of action for "national[s] of the United States,"

7

members of the armed forces, and government employees or contractors for "personal injury or death." *Id.* § 1605A(c). And finally, § 1605A(d) provides that "*[a]fter an action has been brought under subsection (c)*, actions may be brought for reasonably foreseeable property loss . . .by reason of the same acts on which the action under subsection (c) is based." *Id.* § 1605A(d) (emphasis added). Subsection (d), unlike subsection (c), does not mention "U.S. nationals," and the statute does not otherwise indicate that subsection (d) is limited to claims derived from U.S. nationals.

Sudan misconstrues Plaintiffs' argument and attacks that strawman. Plaintiffs do *not* argue that § 1605A(d) is "an independent exception to sovereign immunity" or "on its own provides a basis for subject-matter jurisdiction," *nor* do Plaintiffs read subsection (d) "in isolation." Opp. 16. Rather, Plaintiffs' view, shared by the court decisions just discussed, is that §§ 1605A(a), (c) and (d), in combination, waive immunity, and supply jurisdiction and a cause of action. Indeed, it is Sudan's alternative reading that slices up § 1605A and removes its subsections from their context. According to Sudan, § 1605A provides jurisdiction only over "claims of persons or entities" that fall in the "categories of individuals identified" in § 1605A(a)(2)(A)(ii)—U.S. nationals, armed services members, and U.S. government employees or contractors. Opp. 16. This view ignores that subsections (a), (c), and (d) are part of the same statutory provision and operate together. None of the cases Sudan cites in support of its interpretation, *see* Opp. 16–17, even analyzes § 1605A(d).[5]

Plaintiffs also showed that the purpose and history of § 1605A confirm that it is not limited to subrogated claims of U.S. nationals. *See* Mot. 14. Sudan dismisses these interpretive tools as irrelevant because "the text is clear." Opp. 18. But evidence of congressional intent can always be used

---

[5] *See Owens v. Republic of Sudan*, 864 F.3d 751 (D.C. Cir. 2017), *certified question answered*, 194 A.3d 38 (D.C. 2018), *and vacated and remanded sub nom; Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020); *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018); *Roeder v. Islamic Republic of Iran*, 742 F. Supp. 2d 1 (D.D.C. 2010); *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9 (D.C. Cir. 2015); *In re Terrorist Attacks on Sept. 11, 2001*, No. 03MDL1570GBDSN, 2016 WL 11270527 (S.D.N.Y. Oct. 24, 2016), *report and recommendation adopted*, No. 03MDL1570GBDSN, 2017 WL 2671083 (S.D.N.Y. June 21, 2017), *aff'd sub nom; Hoglan v. Rafsanjani*, 759 F. App'x 99 (2d Cir. 2019).

to confirm a textual interpretation. *See, e.g., Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 71 (2011); *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 114 (2d Cir. 2017). Sudan further asserts that Senator Lautenberg's statement does not support Plaintiffs because it explained that subsection (d) overrode court decisions brought by *victims* of terrorism. Opp. 18. But the Senator did not indicate that subsection (d) was limited to cases like those. Rather, he unequivocally stated that subsection (d) broadly "creates an explicit cause of action for . . . property owners, or their insurers." Mot. 14 (quoting 154 Cong. Rec. 54, 55 (Jan. 22, 2008)).

Finally, Sudan argues in passing that interpreting § 1605A to go beyond subrogated claims of U.S. nationals would "effectively do away with the jurisdictional U.S.-nexus requirements" of the provision. Opp. 19. But the claims' nexus to U.S. interests, and to the purposes of § 1605A, is clear: When a state sponsor of terrorism such as Sudan supports an attack harming individuals with a close relationship to the United States, imposing liability for "additional damages" arising from those attacks serves as a strong deterrent to providing future support. *See* Mot. 15.[6]

**B.      Although The Court Need Not Reach The Issue, U.S. Corporations Are U.S. Nationals**

In any event, although the Court need not reach this legal issue of first impression, jurisdiction for the vast majority of the claims here exists under any view of § 1605A because U.S.-incorporated companies are "national[s] of the United States." 28 U.S.C. § 1605A(h)(5). In arguing otherwise, Sudan fails to engage many of Plaintiffs' points, or offers rebuttals that are unconvincing.

---

[6] Sudan attempts to deflect the point that loss payments under life insurance policies, one of the categories of loss expressly authorized by § 1605A(d), may not be pursued by subrogation, arguing that the prohibition is limited to equitable subrogation (and not contractual). Opp. 18–19. That is not correct. Instead, public policy considerations have long barred subrogation as to life insurance payments, whether on equitable or contractual grounds. *See* George Steven Swan, *Subrogation in Life Insurance: Now Is the Time*, 48 Ins. Couns. J. 634, 635 (1981) (citing policy rationales against life insurance subrogation). Not surprisingly, Sudan cannot cite a single case in which subrogation has been allowed for a life insurance payment. Because subrogation as to such payments is not permitted, § 1605A(d)'s specific authorization of claims for such losses thus confirms that it is not limited to subrogated claims of individual U.S. nationals.

Sudan concedes that whether the word "citizen" includes corporations depends on the "context and purpose of the whole legislation." *Swiss Nat'l Ins. Co. v. Miller*, 267 U.S. 42, 46 (1925); Opp. 19–20. Insisting that "national of the United States" in § 1605A covers only "natural persons," Sudan lists terms associated with "natural persons" that appear in that provision but do not purport to limit the definition of "national of the United States." Opp. 20. All the while, Sudan ignores the contextual clues that undermine its reading. For one, subsection (d) focuses on insurance claims and property loss, confirming that Congress was concerned not only with harm to "natural persons." Moreover, as Plaintiffs' objections emphasized, the FSIA is a remedial statute and § 1605A too has remedial aims. Those remedial purposes—specifically, deterring acts of terrorism and granting relief for injuries caused by state sponsors of terrorism—are best served by permitting corporations to recover under § 1605A. Sudan insists that this, and all other, evidence of legislative purpose is irrelevant, citing a case discussing the proper role of "legislative history." Opp. 22 (quoting *Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994)). But as the Supreme Court has repeatedly made clear, the "context *and purpose*" of the FSIA, *Swiss Nat'l Ins. Co.*, 267 U.S. at 46 (emphasis added), as well as the "nature of the remedy," *United States v. Nw. Express, Stage, & Transp. Co.*, 164 U.S. 686, 689 (1897), are undoubtedly relevant in determining whether the term "national of the United States" encompasses corporations.

Sudan also downplays compelling evidence of Congress's practice of including corporations in other internationally focused remedial statutes with identical definitions of "national of the United States." Sudan argues that the Court must turn a blind eye to this evidence of Congress's intent because the phrase "national[s] of the United States" unambiguously excludes corporations. But Sudan's certainty that its interpretation is correct is unwarranted, especially in light of the "frequen[cy]" with which Congress has used that and similar phrases "in the broadest sense, and as embracing corporations created by state law." *See Nw. Express, Stage, & Transp.*, 164 U.S. at 688. Meanwhile, Sudan

10

has no response to the substance of Plaintiffs' point that the closely analogous ATA and JASTA cover

corporations "such as the airline industry." Mot. 17 (quoting 136 Cong. Rec. S 4567, 4593 (daily ed.

Apr. 19, 1990) (statement of Sen. Grassley)). Like § 1605A, those laws incorporate the INA's

definition of "national of the United States," 18 U.S.C. § 2333(a), and like § 1605A, those laws aim to

deter acts of terrorism against the United States and to provide redress to U.S. victims of terrorism.

The intent of Congress to include corporations among those who can recover under the ATA and

JASTA is highly probative.

Sudan also cannot distinguish congressional enactments providing for the settlement of claims

against foreign states under which U.S. corporations are deemed "nationals." *See* Mot. 17. As Plaintiffs

outlined, corporations have recovered under the Libya Claims Resolution Act ("LCRA"), which

permits recovery only by "nationals of the United States," as that term is defined in the INA.  *Id.*

(citing Pub. L. 110-301, sec. 2, 122 Stat. 2999 (2008)); *see In the Matter of Claims of Interlease, Inc. against*

*the Great Socialist People's Libyan Arab Jamahiriya*, Decision No. LIB-II-163, Foreign Claims Settlement

Comm'n (July 12, 2012); *In the Matter of the Claim [Redacted] Against the Great Socialist People's Libyan Arab*

*Jamahiriya*, Decision No. LIB-I-001, Foreign Claims Settlement Comm'n (Sept. 4, 2009). Sudan

attempts to distinguish *Interlease*, a decision of the Foreign Claims Settlement Commission permitting

a corporation to recover $21.5 million for the destruction of an aircraft in a terrorist attack by Libya.

*See In the Matter of Claims of Interlease, Inc.*, Decision No. LIB-11-163.  Sudan notes that the Commission's

authorizing statute defines "national of the United States" as including "persons who are citizens,"

and defines "persons" to include "corporations." Opp. 23. But Sudan ignores that the Commission

has treated this definition and the INA definition incorporated into the LCRA (and into § 1605A) as

coterminous, so that *both* statutes cover corporate claims. *See Matter of the Claim [Redacted]*, Decision

No. LIB-I-001, at 4 & n.1 (noting that the LCRA incorporates the INA's definition but never

distinguishing between the Commission's authorizing statute and the LCRA). Section 1605A's definition of "national of the United States" should similarly cover corporations.

Finally, Sudan maintains that the INA's regulatory scope should inform the meaning of "national of the United States" under the FSIA and that this feature of the INA "demonstrate[s] that § 1605A's definition of U.S. nationals 'refers' only to "natural persons." Opp. 21. But definitions incorporated by reference "become part of the adopting statute as though written therein," so the term "national of the United States" must be interpreted in light of the FSIA and its aims—not the INA. *See* 2B Sutherland Statutory Construction § 51:8 (7th ed.) (emphasis added where is the emphasis?). Even if the INA were "instructive," Opp. 20, the features of the INA Sudan points to do not compel the conclusion that "nationals" under § 1605A are limited to natural persons. As even Sudan notes, the statute's definition of "person" includes an "organization," 8 U.S.C. § 1101(b)(3); Opp. 21–22, denoting that the INA itself reaches beyond "natural persons."  In the end, the important point is that "even identical terms can have divergent meanings when used in different statutes . . . when the purpose, history, and structure of the statutes make manifest a principled basis for interpreting the words differently." *Ungar v. Palestine Liberation Org.*, 402 F.3d 274, 292 (1st Cir. 2005).

Finally, Sudan claims that corporations cannot be U.S. nationals under the independent "allegiance" prong of the incorporated definition, because of *Marquez-Almanzar v. I.N.S.*, 418 F.3d 210 (2d Cir. 2005). Opp. 24. But that case says nothing about how to assess the allegiance of corporations, and it does not hold that U.S. incorporated entities cannot owe allegiance. *See* Mot. 19.

Ultimately, although the Court is not required to interpret the scope of § 1605A, the statute and case law demonstrate that the insurer Plaintiffs' corporate status does not preclude the exercise of jurisdiction under § 1605A.

### III.   Conclusion

For the reasons set forth above, the CAC Plaintiffs respectfully request that the Court decline

to adopt the R&R and Amended R&R with respect to the recommendations addressing:

(1) the unavailability of jurisdiction over the CAC Plaintiffs' claims pursuant to § 1605(a)(5); and (2)

the scope of claims supported by § 1605A.

Dated:  December 20, 2022

Respectfully submitted,

COZEN O'CONNOR

By: ___/s/   Sean P. Carter_____
SEAN P. CARTER
STEPHEN A. COZEN
J. SCOTT TARBUTTON
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel.: (215) 665-2105
Email: scarter1@cozen.com

*Co-Chairs and Liaison Counsel for the Plaintiffs' Executive
Committee for Commercial Claims on behalf of the
Consolidated Amended Complaint Plaintiffs*

MOTLEY RICE LLC

By: ___/s/   Robert T. Haefele_____
ROBERT T. HAEFELE
JODI WESTBROOK FLOWERS
DONALD A. MIGLIORI
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*Co-Chairs and Liaison Counsel for the Plaintiffs' Executive
Committee for Personal Injury and Death Claims on behalf of
the Consolidated Amended Complaint Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Consolidated Amended Complaint Plaintiffs' Reply Brief in Further Support of Their Limited Objections to the Court's May 3, 2022 Report & Recommendation (ECF No. 7942), was electronically filed this 20th day of December 2022. Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system.

 

 

_____

J. Scott Tarbutton, Esq.

LEGAL\60807928\1