IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

In re TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

Case No. 1:03-md-01570-GBD-SN

*This document relates to:*

*Ashton, et al. v. Al Qaeda, et al.*, No. 02-cv-6977; *Federal Ins. Co., et al. v. Al Qaida, et al.*, No. 03-cv-6978; *Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03-cv-9849; *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.*, No. 04-cv-1922; *Continental Casualty Co., et al. v. Kingdom of Saudi Arabia, et al.*, No. 04-cv-5970; *O'Neill, et al. v. Republic of the Sudan, et al.*, No. 18-cv-12114; *Aronow, et al. v. Republic of Sudan*, No. 20-cv-07733; *Betru, et al. v. The Republic of Sudan*, No. 20-cv-10615; *Parker, et al. v. The Republic of the Sudan*, No. 20-cv-10657; and *Nolan, et al. v. The Republic of the Sudan*, No. 20-cv-10720.

ORAL ARGUMENT REQUESTED

**SUDAN'S REPLY MEMORANDUM IN SUPPORT OF ITS OBJECTIONS
TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005

December 20, 2022

*Counsel for the Republic of the Sudan*

# TABLE OF CONTENTS

ARGUMENT ................................................................................................................1

I.    THE OPPOSITIONS FAIL TO ESTABLISH SUBJECT-MATTER JURISDICTION
      OVER THESE ACTIONS ....................................................................................1

      A.    The Oppositions Cannot Overcome the Report's Application of the
            Incorrect Standard of Review ................................................................1

      B.    The Oppositions Fail to Show that the Amended Complaints Allege Facts
            Sufficient to Establish Jurisdictional Causation ........................................2

      C.    The Oppositions Fail to Show that the Amended Complaints Allege Facts
            Sufficient to Establish that any Sudanese Official, Employee, or Agent
            Provided Any Material Support within the Scope of His Authority.......................9

      D.    The Oppositions Fail to Show that this Court Has Subject-Matter
            Jurisdiction over the Claims of Family Members of 9/11 Victims.......................10

      E.    The Oppositions Fail to Show that this Court Has Subject-Matter
            Jurisdiction over the Claims of the Corporate Plaintiffs.........................11

II.   THE OPPOSITIONS FAIL TO ESTABLISH THAT THE COURT HAS
      PERSONAL JURISDICTION OVER SUDAN ................................................12

III.  THE OPPOSITIONS FAIL TO SHOW THAT PLAINTIFFS' §§ 1605A AND 1605B
      CLAIMS ARE TIMELY ....................................................................................12

IV.   THE OPPOSITIONS FAIL TO SHOW THAT THE AMENDED COMPLAINTS
      STATE A CLAIM AGAINST SUDAN ..............................................................13

      A.    The Oppositions Fail to Show that the Amended Complaints State ATA
            Claims ..................................................................................................13

            1.    The Amended Complaints Fail to Allege Proximate Causation...............13

            2.    The Amended Complaints Fail to Allege General Awareness or
                  Substantial Assistance.................................................................15

            3.    The Amended Complaints Fail to Allege that Sudan Conspired
                  with al Qaeda to Commit the 9/11 Attacks................................16

      B.    The Oppositions Fail to Show that the Amended Complaints State Claims
            for Assault, Battery, and Trespass .........................................................18

            1.    Plaintiffs' State-Law Claims Are Preempted by §§ 1605A and
                  1605B................................................................................18

        2.      Plaintiffs Have Not Adequately Pleaded Their State-Law Claims............18

C.     The Oppositions Fail to Establish Jurisdiction under the Alien Tort Statute ........19

D.     The CAC Opposition Fails to Show that the CAC States a RICO Claim..............20

CONCLUSION..........................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Anderson News, L.L.C. v. Am. Media, Inc.,
  680 F.3d 162 (2d Cir. 2012) ................................................................... 17

Argentine Republic v. Amerada Hess Shipping Corp.,
  488 U.S. 428 (1989) ............................................................................... 19

Ashton v. Al Qaeda Islamic Army (In re Terrorist Attacks on Sept. 11, 2001),
  298 F. Supp. 3d 631 (S.D.N.Y. 2018) .......................................... passim

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ............................................................................... 17

Blackston v. Alabama,
  188 Fed. App'x 803 (11th Cir. 2006) .............................................. 15, 16

Bob Jones Univ. v. Simon,
  416 U.S. 725 (1974) ............................................................................... 11

Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.,
  137 S. Ct. 1312 (2017) ......................................................................... 2, 8

Bostock v. Clayton Cnty.,
  140 S. Ct. 1731 (2020) .................................................................. 7, 13-14

Caraballo v. United States,
  830 F.2d 19 (2d Cir. 1987) .................................................................... 14

Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media,
  140 S. Ct. 1009 (2020) ................................................................. 7, 13-14

Fed. Ins. Co. v. Al Qaida,
  122 F. Supp. 3d 181 (S.D.N.Y. 2015) .................................................. 19

Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran,
  313 F. Supp. 3d 50 (D.D.C. 2018) ........................................................ 11

Halberstam v. Welch,
  705 F.2d 472 (D.C. Cir. 1983) .................................................. 15, 16, 17

Havlish v. Bin Laden,
  No. 03-mdl-1570, 2011 WL 13244047
  (S.D.N.Y. Dec. 22, 2011) .................................................................... 3-4

*Hemi Grp. LLC v. City of New York*,
    559 U.S. 1 (2010) ........................................................................................................7

*Hernandez v. Smith*,
    793 F. App'x 261 (5th Cir. 2019) ...........................................................................13

*Hijazi v. Permanent Mission of Saudi Arabia to the UN*,
    403 Fed. App'x 631 (2d Cir. 2010) ..........................................................................1

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995) .....................................................................................3

*Honickman v. BLOM Bank SAL*,
    6 F.4th 487 (2d Cir. 2021) ................................................................. 8, 15-16, 17

*In re Islamic Republic of Iran Terrorism Litig.*,
    659 F. Supp. 2d 31 (D.D.C. 2009) .........................................................................12

*J.S. ex rel. N.S. v. Attica Cent. Schools*,
    386 F.3d 107 (2d Cir. 2004) .....................................................................................1

*Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*,
    513 U.S. 527 (1995) ...................................................................................................8

*Kaplan v. Lebanese Canadian Bank, SAL*,
    405 F. Supp. 3d 525 (S.D.N.Y 2019) .....................................................................14

*Kaplan v. Lebanese Canadian Bank, SAL*,
    999 F.3d 842 (2d Cir. 2021) ........................................................................4, 8, 16

*Linde v. Arab Bank, PLC*,
    882 F.3d (2d Cir. 2018) .....................................................................................14, 15

*McKiernan v. Vaccaro*,
    168 A.D.3d 827 (N.Y. App. Div. 2019) ............................................................ 18-19

*Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*,
    414 U.S. 453 (1974) .................................................................................................13

*NLRB v. SW Gen., Inc.*,
    137 S. Ct. 929 (2017) ........................................................................................ 11-12

*O'Neill v. Saudi Joint Relief Comm. (In re Terrorist Attacks on Sept. 11, 2001*
    *(Saudi Joint Relief Comm.))*,
    714 F.3d 109 (2d Cir. 2013) ...................................................................................18

*O'Sullivan v. Deutsche Bank AG*,
No. 17 CV 8709-LTS-GWG, 2020 WL 906153
(S.D.N.Y. Feb. 25, 2020) ........................................................................17-18

*Owens v. Republic of Sudan*,
864 F.3d 751 (D.C. Cir. 2017) ....................................................................5, 8

*Presbyterian Church of Sudan v. Talisman Energy*,
No. 01-cv-9882, 2003 WL 1342532
(S.D.N.Y. Mar. 18, 2003) ...............................................................................6

*Reves v. Ernst & Young*,
507 U.S. 170 (1993) ......................................................................................20

*Rice v. Santa Fe Elevator Corp.*.
331 U.S. 218 (1947) ......................................................................................18

*Rockwell Int'l Corp. v. United States*,
549 U.S. 457 (2007) ......................................................................................13

*Rothstein v. UBS AG*,
708 F.3d 82 (2d Cir. 2013) .......................................................................7, 14

*In re Sept. 11 Litig.*,
621 F. Supp. 2d 131 (S.D.N.Y. 2009) .............................................................3

*Shipping Fin. Srvs. Corp. v. Drakos*,
140 F.3d 129 (2d Cir. 1998) ...........................................................................2

*Swarna v. Al-Awadi*,
622 F.3d 123 (2d Cir. 2010) .........................................................................19

*In re Terrorist Attacks on Sept. 11, 2001*,
No. 03-md-1570, 2015 WL 9468813
(S.D.N.Y. Dec. 28, 2015) ..............................................................................11

*In re Terrorist Attacks on Sept. 11, 2001*,
740 F. Supp. 2d 494 (S.D.N.Y. 2010) ....................................................19, 20

*Zahrey v. Coffey*,
221 F.3d 342 (2d Cir. 2000) ...........................................................................3

## STATUTES

8 U.S.C. § 1101 ...............................................................................................11

18 U.S.C. § 1962 .............................................................................................20

18 U.S.C. § 2331 ..................................................................................11, 14, 19

18 U.S.C. § 2333 .................................................................................11, 13, 15

18 U.S.C. § 2337 .......................................................................................8, 13

28 U.S.C. § 1605(a) ................................................................................ *passim*

28 U.S.C. § 1605A .................................................................................. *passim*

28 U.S.C. § 1605B .................................................................................. *passim*

28 U.S.C. § 1606 .............................................................................................18

National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181,
  121 State 3. (Jan 28, 2008)..................................................................12, 13

## RULES

Fed. R. Civ. P. 15(c) ...............................................................................12, 13

## LEGISLATIVE MATERIALS

Designation of Foreign Terrorist Organizations, 64 Fed. Reg. 55,112 (Oct. 8,
  1999) ..............................................................................................................7

Determination Sudan, 58 Fed. Reg. 52,523 (Oct. 7, 1993)...............................6

Exec. Order No. 13099, 63 Fed. Reg. 45,167 (Aug. 20, 1998) ...................6-7

## OTHER AUTHORITIES

Nat'l Comm'n on Terrorist Attacks Upon the United States,
  The 9/11 Commission Report (2004),
  http://govinfo.library.unt.edu/911/report/911Report.pdf...................................3, 4, 5

Restatement (Second) of Torts § 440 (Am. Law Inst. 1965).........................3

The Oppositions contain demonstrable misstatements of fact and law, even on basic matters such as what certain cases cited or held and what certain U.S. designations stated. Most crucially, the Oppositions misstate this Court's sound rulings in *Ashton* relating to the causal link necessary to establish jurisdiction or liability under §§ 1605A or 1605B. But the Oppositions' misstatements cannot obscure that a straightforward application of *Ashton* — and specifically its ruling as to the sovereign defendant SHC — requires dismissal of Sudan because here, too, "Plaintiffs' allegations . . . concern conduct too temporally and geographically remote from the 9/11 Attacks to have proximately caused Plaintiffs' injuries." 298 F. Supp. 3d at 659.

## ARGUMENT

## I. THE OPPOSITIONS FAIL TO ESTABLISH SUBJECT-MATTER JURISDICTION OVER THESE ACTIONS

### A. The Oppositions Cannot Overcome the Report's Application of the Incorrect Standard of Review

Plaintiffs are mistaken in arguing (Ashton Opp. 4-5; CAC Opp. 1-2) that the *Ashton* standard of review is applicable only on a factual challenge to subject-matter jurisdiction. *Hijazi* does not distinguish between the standard of review that applies to a factual versus a legal challenge to subject-matter jurisdiction. *See* 403 F. App'x at 632 (examining "undisputed" facts). Nor does *Hijazi*, as the CAC Opposition inexplicably asserts (at 2), cite a "nearly century old decision." Instead, *Hijazi* cites *J.S. ex rel. N.S. v. Attica Cent. Schools*, 386 F.3d 107 (2d Cir. 2004), where the Second Circuit considered a legal challenge to subject-matter jurisdiction and applied the same standard of review as applied in *Hijazi* and *Ashton*. *Id.* at 110. And this Court did not consider a factual challenge to subject-matter jurisdiction in *Ashton* (*see* Ashton Opp. 4), but rather accepted the plaintiffs' allegations "as true for purposes of resolving" Saudi Arabia and the SHC's motions to dismiss. *Ashton*, 298 F. Supp. 3d at 640.

The standard of review applied in *Ashton* is based on the well-settled rule adopted by the

Second Circuit that "when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Srvs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). This rule is consistent with the Supreme Court's holding in *Helmerich* that on a *legal challenge* to FSIA subject-matter jurisdiction, plaintiffs must "show (and *not just arguably show*)" an exception to sovereign immunity at the outset of litigation. 137 S. Ct. at 1324 (emphasis added); *see also* Sudan's Objs. 2. The cases on which Plaintiffs rely — *Robinson* (*see* Ashton Opp. 4), and *O'Neill* and *Rukoro* (*see* CAC Opp. 1-2) — predate *Ashton* and deviate from the Second Circuit rule and the Supreme Court's decision in *Helmerich*.

### B.   The Oppositions Fail to Show that the Amended Complaints Allege Facts Sufficient to Establish Jurisdictional Causation

The Oppositions (*e.g.*, Ashton Opp. 3; CAC Opp. 5), parroting the Report, fail to point to specific, non-conclusory factual allegations that "show (and not just arguably show)" that Sudan provided material support that proximately caused the 9/11 Attacks. *Helmerich*, 137 S. Ct. at 1324; *see also Ashton*, 298 F. Supp. 3d at 647 (holding plaintiffs "fail[ed] to plead any specific, non-conclusory allegations that the SHC, or any of its employees or agents operating within the scope of their employment or agency, knowingly or with deliberate indifference provided material support directly to al Qaeda to aid in planning or facilitating the 9/11 Attacks"). Rather than grapple with the Report's mischaracterization of *Ashton* (Sudan's Objs. 5-7; R&R 19-20), the Oppositions (Ashton Opp. 10; CAC Opp. 7) merely regurgitate the Report's flawed distinctions. The Ashton Opposition's vague attempt to distinguish *Ashton* in a footnote (at 10 n.9) ignores that this Court *did* address (and found insufficient) allegations that the SHC had "direct involvement" in a comprehensive program of support to al Qaeda, targeting U.S. interests and even "the American homeland" and spanning at least nine years in the 1990s, that "enabled [al Qaeda] to

acquire the global strike capabilities employed with devastating effect on September 11, 2001."
*Ashton*, 298 F. Supp. 3d at 646-47.  These allegations, found insufficient in *Ashton*, bear a striking
resemblance to the allegations against Sudan.  *Ashton* controls and cannot be distinguished away.

The Oppositions also cannot reconcile the inherent contradictions between the Report's
conclusions and the 9/11 Commission's detailed and specific factual findings incorporated by
reference into the Amended Complaints.  *See Hirsh*, 72 F.3d at 1092; *see also* Sudan's Objs. 5-11.
The 9/11 Commission's findings establish that Sudan's expulsion of Bin Laden in 1996 left him
weak and destitute and constituted a superseding, intervening event that severed any causal
connection between the 9/11 Attacks and any purported material support allegedly provided before
early-1996.  The Ashton Opposition's argument (at 8) that such a break in the causal chain is
"irrelevant" contradicts blackletter law on proximate causation.  *See Zahrey v. Coffey*, 221 F.3d
342, 351 n.7 (2d Cir. 2000) (recognizing that superseding events can "break the legal chain of
causation" (citing RESTATEMENT (SECOND) OF TORTS § 440 (AM. LAW INST. 1965))); *In re Sept.
11 Litig.*, 621 F. Supp. 2d 131, 147 (S.D.N.Y. 2009) (same).

The Ashton Opposition tries (at 12) to tie Sudan's purported material support before 1996
to the 9/11 Attacks in 2001 by vaguely asserting (without support) "that al Qaeda's planning for
the 9/11 plot was ongoing well before the 9/11 Attacks," thereby insinuating without fact that Bin
Laden's presence in Sudan was somehow connected to planning the attacks.  But this conclusory
assertion (like many others) is flatly contradicted by the 9/11 Commission Report, which
specifically found that Khalid Sheikh Mohammed approached Bin Laden with the idea for the 9/11
Attacks *after* Bin Laden left Sudan in 1996, and Bin Laden did not give the "green light for the
9/11 operation [until] sometime in late 1998 or 1999."  9/11 Comm'n Rep. 148-49.

The Ashton Opposition goes on to erroneously suggest (at 9) that the allegation that Sudan

"directly brokered an agreement for *Iran to provide support for al Qaeda* operations" was sufficient for this Court to conclude (in another case) that *Iran* provided material support to al Qaeda that caused the 9/11 Attacks. *See Havlish v. Bin Laden*, No. 03-mdl-1570, 2011 WL 13244047, at *11 (S.D.N.Y. Dec. 22, 2011). But the Ashton Opposition ignores that the Court in *Havlish* relied not on any conduct *by Sudan*, but on hundreds of paragraphs of factual findings on *Iran's* material support to al Qaeda. *See id.* at *2-26. And, putting aside that this alleged agreement was made nearly *10 years before* the 9/11 Attacks, the *Havlish* decision says nothing about any purported support provided by Sudan in furtherance of that agreement. *Id.* at *11. The Ashton Opposition also ignores that *Havlish* found that "bin Laden *and* al Qaeda were forced to leave Sudan" in 1996, and *Iran* "assisted al Qaeda in moving their operation and members" from Sudan to "Afghanistan, Iran, Pakistan, Yemen, and Lebanon." *Id.* at *11, 34.

The Oppositions have no serious response to this undeniable break in the causal chain in 1996 (*see* Sudan's Objs. 8-9), and, like the Report, fail "to consider all of the complaint's allegations," *Kaplan*, 999 F.3d at 865, including facts found by the 9/11 Commission. Instead, the Oppositions "cherry pick" (CAC Opp. 5-6) from the Report's various vague and unsupported conclusions concerning purported post-1996 material support. *See, e.g.*, Ashton Opp. 5, 10, 20-22; CAC Opp. 5, 12. The Oppositions also fail to contend with the Report's mistaken reliance on vague statements in State Department cables and other materials that al Qaeda members "remained in Sudan" after 1996. Sudan's Objs. 8-9. The CAC Opposition (at 7) refers to former National Security Advisor Susan Rice's statement that al Qaeda "retained a presence," but that statement says nothing about any connection between any such presence and the 9/11 Attacks or any conduct *by Sudan* in support of those attacks. The CAC Opposition (*id.*) also points to the State Department's Patterns of Global Terrorism Reports, but cannot refute that such reports themselves

provide only vague and speculative conclusions devoid of supporting facts.  Sudan's Objs. 9.  And, contrary to the CAC Opposition (at 8), Sudan does not "disparage" State Department cables, but rather objects to the Report's conclusion that these materials supply any *facts* sufficient to establish that Sudan provided material support to al Qaeda after expelling Bin Laden from the country in 1996, or any connection between Sudan's purported conduct and the 9/11 Attacks.  Sudan's Objs. 8-9; R&R 13, 17.  The CAC Opposition mischaracterizes (at 8 n.9) the Report's reliance on the al Shifa attack as being merely to show that the "U.S. did not believe Sudan's ties to al Qaeda had terminated"; instead, the Report (at 14) erroneously concludes that the attack provided "evidence" that "Sudan's support to Al Qaeda continued" after 1996.  As the CAC Opposition essentially admits, the purported belief of the United States in 1998 says nothing about whether Sudan was in fact providing material support to al Qaeda after Bin Laden's expulsion in 1996, let alone in furtherance of the 9/11 Attacks in 2001.

The Oppositions rely (Ashton Opp. 8-9; CAC Opp. 4) on *Owens* in their attempt to bypass the 9/11 Commission's factual findings.  But any factual findings in *Owens* are not persuasive here because the D.C. Circuit there applied a "narrowly circumscribed" and "lenient" appellate-review standard to affirm "the district court's satisfaction with the evidence presented" supporting the default judgment against Sudan.  *See Owens*, 864 F.3d at 785-86 (holding that Sudan forfeited evidentiary challenges by defaulting).  Moreover, the evidence that supported that default judgment is insufficient to provide a basis for subject-matter jurisdiction under *Ashton*.  The D.C. Circuit relied on a CIA report stating there was a single "Bin Laden associate in Sudan," expert testimony masquerading as fact, and conclusory statements from Patterns of Global Terrorism Reports.  *Owens*, 864 F.3d at 796; *see also* Sudan's Objs. 8-9.  The Oppositions do not refute these distinctions or Sudan's arguments that the 9/11 Attacks are far more geographically and temporally

remote from Sudan than the Embassy bombings in East Africa.  Sudan's Objs. 12; *see also Ashton*, 298 F. Supp. 3d at 647 (finding alleged material support provided directly to al Qaeda in Bosnia insufficient and "far removed, both in time and place, from the 9/11 Attacks").  The Oppositions also do not address Sudan's argument (at 12) that the factual allegations at issue in *Owens* and *Rux* involved the purported facilitation of the delivery of "weapons" and "explosives" to geographically proximate terrorists who carried out those attacks in nearby countries.  The Amended Complaints, by contrast, allege no similar facts and, indeed, foreclose the possibility that Sudan could have facilitated the 9/11 Attacks in any such way.

The Ashton Opposition is wildly off-base in suggesting (at 2) that Sudan should be subject to strict liability because of its (now-rescinded) 1993 State Sponsor of Terrorism designation.  If Congress had intended such a result, it would not have included additional jurisdictional requirements in § 1605A.  *See Presbyterian Church of Sudan v. Talisman Energy*, No. 01-cv-9882, 2003 WL 1342532, at *1 n.1 (S.D.N.Y. Mar. 18, 2003) ("The notion that a state sponsor of terrorism might be entitled to immunity under the FSIA is clearly contemplated by the terms of the statute.").  For the same reason, the Ashton Opposition (at 14) cannot rely on the 1993 designation to establish that any Sudanese officer, agent, or employee acting within the scope of his authority provided material support to al Qaeda.  A State Sponsor of Terrorism designation is merely one requirement for potential liability under § 1605A, not a sufficient condition for it.

The Ashton Opposition's assertion (at 2) that "Sudan's support for al Qaeda" was "specifically listed" as a reason for its designation in 1993 is inexcusably false.  The 1993 designation does not even mention al Qaeda (or Bin Laden); incidentally, Bin Laden and al Qaeda were not identified by the United States as terrorists until 1998 and 1999, respectively.  Determination Sudan, 58 Fed. Reg. 52,523 (Oct. 7, 1993); *see also* Exec. Order No. 13099, 63

Fed. Reg. 45,167 (Aug. 20, 1998) (designating Bin Laden as a terrorist who threatens to disrupt the Middle East peace process); Designation of Foreign Terrorist Organizations, 64 Fed. Reg. 55,112 (Oct. 8, 1999) (designating al Qaeda as a foreign terrorist organization).

The Oppositions' arguments on the appropriate jurisdictional causation standard are likewise incorrect. Both Oppositions merely restate (Ashton Opp. 5; CAC Opp. 3-4) the Report's conclusion that but-for causation is not required, a conclusion that fails to address the Supreme Court's decisions in *Comcast* and *Bostock* holding that but-for causation "supplies the 'default or 'background' rule" (*see* Sudan's Objs. 3-4). The Oppositions' attempts to rehabilitate the Report by distinguishing those cases (Ashton Opp. 6-7; CAC Opp. 3) on their facts fail because the cases' broad causation holdings were not tethered to particular facts. *E.g.*, *Comcast*, 140 S. Ct. at 1014.

The Ashton Opposition admits (at 6) that the proximate-cause standard that applies in other terrorism cases (such as *Rothstein*) controls here. That test requires "some direct relation" between the unlawful conduct and the plaintiff's injuries. *Rothstein*, 708 F.3d at 91-92; *see also Hemi Grp. LLC v. City of New York*, 559 U.S. 1, 9 (2010) (holding "proximate cause should be evaluated in light of its common-law foundation [and] requires some direct relation between the injury asserted and the injurious conduct alleged"). And, contrary to the Ashton Opposition's suggestion (at 6), *Rothstein does* require a showing of but-for causation. *See* 708 F.3d at 95 (requiring that "defendant's violation not only was a 'but for' cause of [plaintiff's] injury, but was the proximate cause as well"); *see also* Sudan's Objs. 19. Indeed, this Court applied *Rothstein*'s proximate causation standard in *Ashton*, dismissing claims where plaintiffs did not allege "any definite and specific, articulable connection to the 9/11 Attacks or those who carried them out." 298 F. Supp. 3d at 645-46, 659. The allegations against Sudan here are more vague and attenuated than those found lacking in *Ashton*. *See* Sudan's Objs. 5-13.

The Oppositions (Ashton Opp. 11; CAC Opp. 4) are also misguided, because neither *Grubart* nor *Owens* rejected "temporal or spatial limitations" as a factor in the proximate-causation analysis. Each case merely held that, so long as the proximate cause standard was satisfied, courts need not apply "*further* temporal or spatial limitations." *Grubart*, 513 U.S. at 536 (emphasis added); *Owens*, 864 F.3d at 796 (citing *Grubart*, 513 U.S. at 536). Notwithstanding their misreading of the case law, Plaintiffs cannot escape that in *Ashton* this Court held that temporal and spatial proximity are critical aspects of the proximate-cause inquiry and concluded that the allegations against the SHC were insufficient because they were "*too temporally and geographically remote* from the 9/11 Attacks to have proximately caused Plaintiffs' injuries." *Ashton*, 298 F. Supp. 3d at 659. Plaintiffs' allegations here are even more "temporally and geographically remote from the 9/11 Attacks" than those in *Ashton*. *See* Sudan's Objs. 6-7.

The CAC Opposition is incorrect (at 4-5) that the Report's conclusions on ATA aiding-and-abetting liability can support a conclusion on jurisdictional causation. Even if ATA secondary liability claims were available against foreign states, Plaintiffs cannot bring such claims unless they meet the jurisdictional requirements in § 1605B. *See* Sudan's Opp. 10-11, ECF No. 8793; *see also* 18 U.S.C. § 2337(2); 28 U.S.C. §§ 1605B(b) & (c). The CAC Opposition fails to explain (at 4) how *Kaplan* or *Honickman* — which address aiding-and-abetting claims under the ATA against non-sovereign defendants — are relevant to jurisdictional causation under §§ 1605A, 1605(a)(7), or 1605B. *See Kaplan*, 999 F.3d at 853; *Honickman*, 6 F.4th at 494.

Finally, the CAC Opposition's effort (at 3 n.5) to distinguish *Helmerich* in a footnote fails to address *Helmerich*'s rejection of a lighter burden for jurisdictional versus "substantive" elements under the FSIA. *Helmerich*, 137 S. Ct. at 1316, 1319, 1324. Regardless, the Amended Complaints' allegations (and the facts incorporated by reference) fail to establish subject-matter

jurisdiction under the jurisdictional-causation standard applied in *Ashton*.

At bottom, *Ashton*, and in particular its holding as to the SHC, dictates dismissal here. As with the SHC, the allegations against Sudan focus on generalized support for a nascent al Qaeda in times and places remote from the 9/11 Attacks in the United States. *Ashton* correctly held that such allegations are too attenuated in time and place from the Plaintiffs' injuries to support proximate causation. *Ashton* is not only sound and persuasive, but it is a prior ruling in this very same MDL and should be followed.

### C.   The Oppositions Fail to Show that the Amended Complaints Allege Facts Sufficient to Establish that any Sudanese Official, Employee, or Agent Provided Any Material Support within the Scope of His Authority

Despite their insistence to the contrary, the Oppositions resort to only vague generalities and unsupported conclusions that Sudanese officials, employees, or agents provided material support to al Qaeda within the scope of their authority. *See, e.g.*, Ashton Opp. 13 ("Sudan's leadership urged bin Laden to build a terrorist organization in Sudan, with the official aim of building its capacities to attack the U.S."); CAC Opp. 9-10 ("[T]he character of the relationship between Sudan and al Qaeda [] could not have been implemented or maintained without the endorsement, direction, and involvement of Sudanese officials"). The Oppositions look to alleged conduct by Turabi, but fail to connect that conduct with the 9/11 Attacks and cannot point to any specific, non-conclusory allegation that Turabi was a Sudanese official, employee, or agent. *See* Sudan's Objs. 10-11. The CAC Opposition asserts (at 9) only that Turabi "headed the National Islamic Front," which Plaintiffs allege (CAC ¶ 31) is a "political party," not part of the government. The Ashton Opposition repeats (at 14) the conclusory allegation that Turabi "jointly governed" Sudan, but fails to show he held any governmental post.

The Oppositions' invocations of *Rux* (CAC Opp. 9-10; Ashton Opp. 12, 15) are unavailing, because the allegations here do not rise to the level of specificity in *Rux*. *See* MTD Reply 12.

Plaintiffs also fail to allege that any Sudanese official acting within the scope of his authority "allow[ed] the formation of terrorist training camps" (Ashton Opp. 15) for "preparations for Jihad" (in 1993) (CAC Opp. 9).  Indeed, the CAC alleges (at ¶ 53) that "bin Laden dispatched al Qaeda members" to "rent and purchase" "farms to be used for jihad training."  And Jamal al Fadl, whose testimony both Amended Complaints incorporate by reference, testified that *he* bought or rented the purported farms.  *See* MTD Reply 12-13.

### D.    The Oppositions Fail to Show that this Court Has Subject-Matter Jurisdiction over the Claims of Family Members of 9/11 Victims

The Oppositions largely repeat (Ashton Opp. 16-17; CAC Opp. 11-12) the Report's erroneous conclusions that this Court has jurisdiction over family-member claims under § 1605A(a).  R&R 29-30.  The Oppositions thus similarly misinterpret the relevant statutory terms, ignoring the text, context, and purpose of § 1605A(a)(2)(A)(ii).  *See* Sudan's Objs. 13-14.  The CAC Opposition also repeats (at 12) the Report's incorrect observation that limiting subject-matter jurisdiction to claims brought by those killed or injured by terrorist attacks or their personal representatives would "contravene Congress's intention . . . to *expand* the reach of punitive damages against state sponsors of terrorism."  The availability of punitive damages under § 1605A(c) has nothing to do with the jurisdictional scope of § 1605A(a)(2)(A)(ii).  Indeed, the *relevant* legislative history concerning the § 1605A(a)(2)(A)(ii), and its predecessor § 1605(a)(7), accords with Sudan's interpretation that jurisdiction is limited to actions brought by U.S. nationals, members of the armed forces, or U.S. government employees or contractors killed or injured in the 9/11 Attacks, or their personal representatives.  *See* Sudan's Objs. 13-14.  The Report  — like the decisions on which it relies — ignores this legislative history.

In addition, the Oppositions (Ashton Opp. 17; CAC Opp. 12) (like the Report (at 31)) erroneously conclude that the family-member claims satisfy the requirements of § 1605B because

the family of 9/11 victims "are seeking 'money damages' for 'death that occurred in the United States.'" But these family members are actually seeking damages for their own emotional distress caused by the attacks, not for "death." *See* Ashton Compl. ¶¶ 129, 151; CAC Compl. ¶¶ 205-06.

### E.   The Oppositions Fail to Show that this Court Has Subject-Matter Jurisdiction over the Claims of the Corporate Plaintiffs

Sudan has outlined in detail why the Report erred (at 32-33) in concluding that § 1605A(d) provides an independent exception to foreign sovereign immunity over the Corporate Plaintiffs' claims. *See* Sudan's Objs. 14-16; Sudan's Opp. 15-18. Specifically, the Report and now the CAC Opposition's erroneous and expansive interpretation of § 1605A(d) is not supported by the text and context of § 1605A. *See* Sudan's Opp. 16-18. The cases the CAC Opposition cites (at 13-14) "lack precedential weight" because they were decided in the context of an uncontested default judgment. *See Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran*, 313 F. Supp. 3d 50, 53 (D.D.C. 2018) (addressing motion for default judgment filed against Iran); *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570, 2015 WL 9468813, at *1 (S.D.N.Y. Dec. 28, 2015) (same); *see also Bob Jones Univ.*, 416 U.S. at 740 n.11. Furthermore, neither the Report nor the CAC Opposition identifies any alleged facts that plausibly establish subject-matter jurisdiction over the Corporate Plaintiffs' claims on a subrogation basis. *See* Sudan's Objs. 15.

In addition, nothing in the CAC Opposition establishes that § 1605B provides subject-matter jurisdiction over the Corporate Plaintiffs' claims. As explained, § 2333 provides the exclusive cause of action where subject-matter jurisdiction exists under § 1605B. *See* Sudan's Objs. 22-23. Only a "national of the United States" may bring a claim under § 2333, and, as under § 1605A, a "national of the United States" (as defined in § 1101(a)(22) of the INA), does not include corporate entities. *See* 18. U.S.C. §§ 2333(a), 2331(a); *see also* Sudan's Opp. 19-24. The CAC Opposition's (at 15) resort to "floor statements by individual legislators" is unpersuasive as

a means to circumvent the plain and unambiguous text of the INA's definition of "national of the United States." *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 943 (2017) (finding such statements "rank among the least illuminating forms of legislative history").

## II. THE OPPOSITIONS FAIL TO ESTABLISH THAT THE COURT HAS PERSONAL JURISDICTION OVER SUDAN

The parties agree that, without an exception to sovereign-immunity, courts lack personal jurisdiction. *See* CAC Opp. 16; Ashton Opp. 17. No such exception applies here. Sudan expressly preserves its argument that foreign states are entitled to due-process protections. Sudan's Objs. 16.

## III. THE OPPOSITIONS FAIL TO SHOW THAT PLAINTIFFS' §§ 1605A AND 1605B CLAIMS ARE TIMELY

Neither Opposition adequately addresses Sudan's Objections (at 16-18) on the timeliness of Plaintiffs' 1605A actions. The *Ashton* Opposition merely repeats (at 18-19) the Report's erroneous conclusion. The CAC Opposition (at 16) accuses Sudan of ignoring the "history, purpose, and plain language" of 1605A, but then commits that very error. The CAC Opposition reads the term "maintained" in § 1605A(b) out of context, disregarding the text of §§ 1605A and 1083(c) and sidestepping the Report's acknowledgment that "without some act by a plaintiff, [a § 1605(a)(7) action] cannot just become or be maintained as a § 1605A action." R&R 24. And the CAC Opposition does not address the statutory framework under § 1083(c). *See* Sudan's Objs. 16-17. It merely repeats (at 17 & n.21) the perfunctory argument that Plaintiffs may bring a "related action" under § 1083(c)(3), notwithstanding a lack of final judgment in Plaintiffs' underlying § 1605(a)(7) action. The CAC Opposition points to *Khaliq* (at 17) to recycle the Report's erroneous judicial-efficiency conclusion, but does not address the risk that the Report's "[m]ore liberal use of § 1083(c)" would allow plainly untimely § 1605A actions to go forward. *Cf. In re Iran Terrorism Litig.*, 659 F. Supp. at 90-91. For the first time, the CAC Opposition (at 16-17) resorts to Rule 15(c) as a basis for allowing Plaintiffs to belatedly assert subject-matter

jurisdiction under § 1605A.  But Rule 15(c) is unavailable here, given the detailed transitional rules provided in § 1083(c).  *See Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974) ("When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.").

The Ashton Opposition does not address the untimeliness of Plaintiffs' JASTA claims, and the CAC Opposition primarily repeats the Report's conclusion that courts "look to the amended complaint to determine jurisdiction."  CAC Opp. 17; R&R 45-46.  But this principle is limited to the context of the sufficiency of jurisdictional allegations and so does not apply here.  *See Rockwell*, 549 U.S. at 473-74.  Here, what matters is that Rule 15(c)'s relation back provisions cannot be used to circumvent statutes of limitations by creating jurisdiction where none originally existed.  *See* Sudan's Objs. 18-19; *see also, e.g.*, *Hernandez v. Smith*, 793 F. App'x 261, 265-66 (5th Cir. 2019).  The CAC Opposition does not contend with the jurisdictional nature of the relevant limitations period (Sudan's Objs. 18-19; MTD Reply 21-22), but again repeats (at 18) the Report's incorrect conclusion (at 46) to the contrary.  Neither Rule 15(c) nor equitable tolling may be used to create jurisdiction over Plaintiffs' § 2333 claims when none existed at the time of the filing of the original complaint.  *See* 18 U.S.C. § 2337(2).

## IV.  THE OPPOSITIONS FAIL TO SHOW THAT THE AMENDED COMPLAINTS STATE A CLAIM AGAINST SUDAN

### A.  The Oppositions Fail to Show that the Amended Complaints State ATA Claims

#### 1.  The Amended Complaints Fail to Allege Proximate Causation

The Ashton Opposition (at 20) does not meaningfully contest that but-for causation is required to establish ATA primary liability.  And the CAC Opposition (at 19-20) relies exclusively on cases predating *Comcast* and *Bostock*.  In its *twenty-fourth* (reduced font) footnote, the CAC Opposition (at 20) asserts without support that "textual and contextual" differences between the

laws at issue in those cases and the ATA render those decisions "unpersuasive."  But *Comcast* and *Bostock* are clear that "but-for causation" is the default rule; no "textual warrant" is required.

The Ashton Opposition (at 20) does not even address the proximate-causation standard, and the CAC Opposition (at 19-20) does not address *Rothstein* or *Caraballo*, nor contest that proximate causation requires a direct, unbroken chain between the alleged violation and the alleged injuries.  *See Rothstein*, 708 F.3d at 91-92; *Caraballo*, 830 F.2d at 22.  Neither Opposition contests that proximate causation is required for secondary liability.  Sudan's Objs. 20.  The CAC Opposition mistakenly asserts (at 20) that Sudan is "manifestly wrong" to contend "that 'but-for' causation is 'equally applicable'" to ATA aiding and abetting claims.  But Sudan argues (at 20) that *proximate cause* "is equally applicable" to ATA aiding-and-abetting claims.  The CAC Opposition argues (at 20) that the substantial-assistance prong incorporates proximate causation, and thus appears to agree that secondary liability requires that the injury be a direct and foreseeable result of the conduct.  *See* Sudan's Objs. 19-20.

The Amended Complaints' failure to plead proximate causation thus dooms Plaintiffs' primary- and secondary-law claims.  In addition, the Ashton Opposition (at 20) asserts, incorrectly and relying only on the Report (at 38-42), that Plaintiffs "plausibly pled" the other elements for ATA primary liability.  None of the types of allegations cited by the Report (at 41) — "sanctuary, training[,] diplomatic papers, and sovereign protection" allegedly provided *years* before the attacks — plausibly shows that Sudan's "own actions" involved "violent or dangerous acts," much less violent or dangerous acts related to the 9/11 Attacks.  *See Kaplan*, 405 F. Supp. 3d at 532.

The Report likewise cannot point to any allegations of conduct by Sudan that "appear to [have been] intended" to coerce or intimidate any civilian population or government.  18 U.S.C. § 2331(1)(B).  It is not enough to conclude (R&R 40) that a defendant provided material support

–14–

to a terrorist organization that held the goal of intimidating or coercing a civilian population or government. *Linde*, 882 F.3d at 326. Plaintiffs must show that the defendant *itself* manifested "the apparent intent to intimidate or influence." *Id.* Plaintiffs' allegations of public statements by Bin Laden *after* Sudan expelled him cannot show that *Sudan* held any such intent.

**2.      The Amended Complaints Fail to Allege General Awareness or Substantial Assistance**

Like the Report, the Ashton Opposition is incorrect (at 20) that secondary-liability claims are available against Sudan under the ATA. JASTA authorizes ATA suits against foreign sovereigns only in accordance with 18 U.S.C. § 2333, which limits secondary liability to "persons," expressly defined to exclude sovereigns, including foreign sovereigns. *See* Sudan's Opp. 11-13. Secondary-liability claims under the ATA are therefore not available against Sudan. In any event, Plaintiffs cannot establish the elements of ATA aiding-and-abetting or conspiracy.

**General awareness:** Neither Opposition overcomes the Report's error in concluding that allegations of support *years* before al Qaeda was even recognized as a terrorist organization meets the general awareness requirement. The Ashton Opposition does not address this point, simply quoting (at 21-22) large portions of the Report without analysis, and so should be disregarded. *See Blackston v. Alabama*, 188 Fed. App'x 803, 807 n.5 (11th Cir. 2006) (holding issue "abandoned" where party "offer[s] only a block quote from a case with no supporting argument"). The CAC Opposition (at 21) confuses the requirement that the attack be carried out by an organization that was designated as an FTO when the attack was "committed, planned, or authorized" with the general-awareness requirement, which demands that the defendant "be 'aware' that, by assisting the principal, it is itself assuming a 'role' in terrorist activities." *Linde*, 882 F.3d at 329 (quoting *Halberstam*, 705 F.2d at 477). And the CAC Opposition ignores that "the defendant must be generally aware of [its] role . . . *at the time that [it] provides the assistance*." *Honickman*, 6 F.4th

–15–

at 501 (alterations in original) (quoting *Halberstam*, 705 F.2d at 477). Because al Qaeda was not a known terrorist entity, let alone a designated FTO, before Sudan expelled Bin Laden in 1996, Plaintiffs cannot show that, during this period, Sudan was aware of al Qaeda's connections to terrorism. Plaintiffs certainly cannot show that Sudan was aware of its *own role* in terrorist activities during this period. The Amended Complaints make no allegations of material support after the break in the causal chain in 1996 or after al Qaeda's designation. Sudan's Objs. 7-8.

**Substantial assistance:** The Oppositions likewise cannot overcome the Report's error (at 49-51) in finding that Sudan provided "*substantial* assistance" to al Qaeda, much less substantial assistance for the 9/11 Attacks. The Ashton Opposition (at 22) again only block quotes the Report. *See Blackston*, 188 Fed. App'x at 807 n.5. The CAC Opposition (at 22) mischaracterizes Sudan's arguments that the Report errs in relying on tenuous links to the 9/11 Attacks. Sudan's Objs. 21. Sudan relies on established precedent requiring that the "'substantial assistance' must also 'advance the [tort's] commission.'" *Id.* The Oppositions (Ashton Opp. 22; CAC Opp. 22) misinterpret *Honickman* and *Kaplan*, which affirm that for a successful aiding-and-abetting claim, "the defendant must knowingly and substantially assist *the principal violation*." *Honickman*, 6 F.4th at 494 (emphasis added); *see also Kaplan*, 999 F.3d at 856 (same). The "'principal violation' must be foreseeable from the illegal activity that the defendant assisted." *Honickman*, 6 F.4th at 499. The Oppositions make no such showing, because they fail to connect any supposed support by Sudan to the 9/11 Attacks. Indeed, the 9/11 Attacks were not even conceived until after Sudan expelled Bin Laden in 1996. 9/11 Comm'n Rep. 148-49. The CAC Opposition (at 21-22) also makes no attempt to show that the *Halberstam* factors were met. Sudan's Objs. 21.

> ### 3. The Amended Complaints Fail to Allege that Sudan Conspired with al Qaeda to Commit the 9/11 Attacks

The CAC Opposition asserts (at 22-23), incorrectly, that "Sudan's sole objection" to the

Report's conclusion on conspiracy "rests on its claim that the pleadings did not tether the conspiracy to the 9/11 attacks specifically." *See also* Ashton Opp. 21.  But Sudan objects to the Report because it (1) "fails to cite a single allegation," (2) "relies on sweeping generalizations," and (3) ignores the elements for a conspiracy claim laid out by this Court.  Sudan's Objs. 21-22. Neither the Report nor the Oppositions identify any factual allegations to show that Sudan entered any *agreement* with al Qaeda to "accomplish an unlawful act," or that the 9/11 Attacks were a "reasonably foreseeable consequence" of that purported conspiracy.  The CAC Opposition (at 23), like the Report (at 51-52), identifies no factual allegation supporting the conclusion that "Sudan's specific aim in partnering with al Qaeda was to enhance its terrorist capabilities."  Nor does the CAC opposition show the 9/11 Attacks were a reasonably foreseeable consequence of any such purported "partner[ship]." *See, e.g.*, *Anderson News, L.L.C. v. Am. Media, Inc*., 680 F.3d 162, 184 (2d Cir. 2012) (holding a plausible conspiracy claim must plead "'some factual context suggesting [that the parties reached an] agreement,' not facts that would be 'merely consistent' with an agreement" (quoting *Twombly*, 550 U.S. at 549, 556-57)).

Without bothering to show that the conspiracy elements are met here, the Ashton Opposition argues (at 21), incorrectly, that conspiracy liability "attaches even if the co-conspirator's participation was remote or not significant."  But *Halberstam* makes clear that where, as here, plaintiffs offer no allegation of any actual agreement and instead ask the court to rely on circumstantial evidence, courts look at factors like whether the alleged co-conspirators "pursued the same object," were "in contact with one another," performed "connected acts, relatively *close in time and location*," and worked together "over a long period."  705 F.2d at 480-81; *see also O'Sullivan*, 2020 WL 906153, at *6 (rejecting allegations "so far removed from the acts of terrorism that injured Plaintiffs that the Court cannot infer that Defendants shared the common

goal of committing an act of international terrorism").  The Amended Complaints are devoid of any factual allegations supporting those factors here.

### B.   The Oppositions Fail to Show that the Amended Complaints State Claims for Assault, Battery, and Trespass

#### 1.   Plaintiffs' State-Law Claims Are Preempted by §§ 1605A and 1605B

Contrary to the Oppositions (Ashton Opp. 23-24; CAC Opp. 23), §§ 1605A and 1605B *do* form a "pervasive regulatory scheme" of sovereign terrorism-related litigation — an area where federal law plainly "predominates."  *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947); *see also* Sudan's Objs. 22-23.  In enacting §§ 1605A and 1605B, and indeed the entire FSIA, Congress expressly excluded many categories of potential anti-terrorism suits against sovereigns — most clearly suits for terrorist acts that occurred outside the United States or before September 11, 2001 (§ 1605B(b)(1)), unless the suit is against a designated state sponsor of terrorism (§ 1605A).  Congress also excluded certain anti-terrorism claims based on acts of omission and negligence (§ 1605B(b)(2)).  But Congress provided that state-law tort claims would remain available through the § 1606 "gateway" if plaintiffs with terrorism claims nevertheless can satisfy the non-commercial tort exception (§ 1605(a)(5)) — which requires that the "entire tort" be committed in the United States.  *See O'Neill*, 714 F.3d at 115-16; Sudan Opp. 5-9.  This detailed scheme of statutory inclusion and exclusion forms the "pervasive" regulation necessary for "preemption" of state tort law where claims arise under §§ 1605A and 1605B.  Sudan's Objs. 23.

#### 2.   Plaintiffs Have Not Adequately Pleaded Their State-Law Claims

Like the Report, the Oppositions (Ashton Opp. 23-24; CAC Opp. 24) do not point to any factual allegations of "intentional concerted action" to connect Sudan to assault, battery, or trespass arising from the 9/11 Attacks, nor do they show that Sudan committed any intentional tortious conduct connected to the attacks.  *See, e.g.*, *McKiernan v. Vaccaro*, 168 A.D.3d 827, 830 (N.Y.

App. Div. 2019) ("To be liable for an assault under an aiding and abetting theory, a defendant must have committed some overt act, either by words or conduct, in furtherance of the assault."); *see also* MTD Mem. 42-43.  Contrary to the CAC Opposition (at 24), this Court has already held in this MDL that New York law does not recognize causes of action for aiding and abetting or conspiracy.  *In re Terrorist Attacks*, 740 F. Supp. 2d at 514 n.6 (*cited by* R&R 56).

### C.    The Oppositions Fail to Establish Jurisdiction under the Alien Tort Statute

The Oppositions concede the ATS is "strictly jurisdictional."  *See* Ashton Opp. 24; CAC Opp. 24.  But they do not explain how the ATS can provide an alternative basis for jurisdiction when, as the Supreme Court has established and as this Court has held in this MDL, "the FSIA provides the *sole basis* for obtaining jurisdiction over a foreign state."  *Ashton*, 298 F. Supp. 3d at 640 (emphasis added); *see also Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 433 (1989); *Swarna v. Al-Awadi*, 622 F.3d 123, 143-44 & n.11 (2d Cir. 2010) (holding ATS does not provide "separate basis for jurisdiction" over foreign state); R&R 5.  This is not a new argument as the CAC Opposition contends (at 24).  Sudan previously argued that the FSIA is the "sole basis" for jurisdiction and that Plaintiffs' ATS claim "is not even cognizable."  MTD Mem. 2, 44; *see also Fed. Ins. Co. v. Al Qaida*, 122 F. Supp. 3d 181, 184 & n.5 (S.D.N.Y. 2015) (holding lack of subject-matter jurisdiction "is not waivable" and "may be raised at any time").

Nor can §§ 1605B and 1605(a)(5) "provide separate jurisdictional bases" for Plaintiffs to assert "claims for torts committed in violation of the law of nations."  CAC Opp. 24. Section 1605B lifts sovereign immunity only for claims against foreign states for injuries caused by an act of "international terrorism," as defined by § 2331 of the ATA, or a tortious act of a foreign state or of its officials within the scope of their authority.  *See* 28 U.S.C. §§ 1605B(a)-(c); *see also* Sudan's Objs. 10-11.  The noncommercial-tort exception of § 1605(a)(5) is inapplicable here given the entire tort rule.  *See* Sudan's Opp. 4-9; *see also* R&R 35-36.  The Report correctly

concludes (at 61-63) that there are no private rights of action for violating international law outside the private rights of action defined in specific legislative schemes.

### D.        The CAC Opposition Fails to Show that the CAC States a RICO Claim

The CAC Opposition is incorrect (at 24-25) that Sudan did not explain why *Terrorist Attacks IV* applies or raise the Amended Complaints' failure to plead "direction" or "conscious agreement."  Sudan cited *Terrorist Attacks IV* to support dismissal of RICO claims for failure to "allege any factual basis 'that any moving defendant took some part in *directing the affairs* of the al Qaeda enterprise' or 'of a *conscious agreement*, among the defendants, to commit two predicate acts in furtherance of the common purpose of the RICO enterprise.'"  MTD Mem. 44 (emphasis added) (quoting *Terrorist Attacks IV*, 740 F. Supp. 2d at 515).  The Opposition likewise ignores *Terrorist Attacks IV*'s controlling holding that direction and conscious agreement are "required" to establish the elements of RICO claims under § 1962(c-d), and that claims that fail to show these requirements must be dismissed at this stage.  740 F. Supp. 2d at 515; *see also Reves*, 507 U.S. at 179 ("In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs.").  The CAC makes no such factual allegations, and the CAC Opposition fails to contend with the similar, insufficient factual allegations addressed in *Terrorist Attacks IV*.  *See* 740 F. Supp. 2d at 515; MTD Mem. 14-18 (discussing Plaintiffs' insufficient allegations).  *Reves* also makes clear that §§ 1962(a) and (b) address the "infiltration of legitimate organizations by 'outsiders,'" which the CAC does not allege.  507 U.S. 170 at 185.

### CONCLUSION

For the foregoing reasons and the reasons set forth in Sudan's Objections, this Court should reject the Magistrate Judge's Report and Recommendation (as amended), and should dismiss with prejudice the Amended Complaints against Sudan for lack of subject-matter jurisdiction, lack of personal jurisdiction, and failure to state a claim.

Dated:   December 20, 2022
      Washington, DC

Respectfully submitted,

## WHITE & CASE

 /s/ *Christopher M. Curran*
Christopher M. Curran
Nicole Erb
Claire A. DeLelle
Matthew S. Leddicotte (*pro hac vice*)
Nicolle Kownacki (*pro hac vice*)
Celia A. McLaughlin (admission application
   forthcoming)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone:      + 1 202 626 3600
Facsimile:      + 1 202 639 9355
ccurran@whitecase.com
nerb@whitecase.com
cdelelle@whitecase.com
mleddicotte@whitecase.com
nkownacki@whitecase.com
cmclaughlin@whitecase.com

*Counsel for the Republic of the Sudan*