**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**---------------------------------------------------------X**

**In re: Terrorist Attacks on September 11, 2001**

**Civil Action No. 03-MD-1570 (GBD)(SN)**
**ECF Case**

**---------------------------------------------------------X**

**This document relates to:**

*All Cases*

**PLAINTIFFS' EXECUTIVE COMMITTTEE'S MEMORANDUM OF LAW**
**IN RESPONSE TO THE COURT'S DIRECTION AT ECF NO. 8778.**

December 22, 2022

# TABLE OF CONTENTS

**Page**

**INTRODUCTION** ..... 1

**ARGUMENT** ..... 2

**I.** **To the extent the Court's inquiry derives from Mr. Schutty's pre-conference filings, the issues are not the subject of a true case or controversy on which the Court should opine, and Mr. Schutty's clients lack standing to offensively attack the claims of other plaintiffs within this MDL.** ..... 2

**II.** **In the context of the pending default judgment motions against the Taliban, the ATA provides a federal cause of action with claims available to "Any national … injured … by reason of an act of international terrorism, or his or her estate, [or] survivors, or heirs."** ..... 4

**a.** **The ATA provides a federal cause of action applicable to claims against the Taliban in the pending default judgments.** ..... 4

**b.** **Under § 2333, Plaintiffs with federal claims against the Taliban include "Any national … injured … by reason of an act of international terrorism, or his or her estate, [or] survivors, or heirs."** ..... 5

**III.** **Both Second Circuit precedent and New York law make clear that, in a default judgment scenario, the Court should not raise the issue of statute of limitations *sua sponte*.** ..... 12

**CONCLUSION** ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937) ....................3
*Atkins-Payne v. Branch*, 95 A.D. 3d 912 (N.Y. 2d App. Dep't 2012) ....................18
*Babbitt v. Sweet Home Chapt. of Cmtys. for a Great Or.*, 515 U.S. 687 (1995) ....................12
*Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.*, 291 F.3d 1000 (7th Cir. 2002) .......11
*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ....................3
*Collazos v. U.S.*, 368 F.3d 190 (2d Cir. 2004) ....................12
*Davis v. Bryan*, 810 F.2d 42 (2d Cir. 1987) ....................16
*Doe v. Constant*, 354 Fed. App'x 543 (2d Cir. 2009) ....................16
*Estate of Henkin v. Kuveyt Turk Katilim Bankasi, A.S.*, 495 F. Supp. 3d 144 (E.D.N.Y. 2020) ....................9
*Estate of Ungar ex rel. Strachman v. Palestinian Auth.*, 304 F. Supp. 2d 232 (D.R.I. 2004) ....................passim
*FCC v. Pacifica Foundation*, 438 U. S. 726 (1978) ....................7
*Goldberg v. UBS AG*, 690 F. Supp. 2d 92 (E.D.N.Y. 2010) ....................14
*Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 92d Cir. 2021) ....................13
*Knox v. PLO*, 442 F. Supp. 2d 62 (S.D.N.Y. 2006) ....................passim
*Kropelnicki v. Siegel*, 290 F.3d 118 (2d. Cir. 2002) ....................16
*Lee v. Bd. of Governors of the Fed. Res. Sys.*, 118 F.3d 905 (2d Cir. 1997) ....................2
*Maalouf v. Islamic Rep. of Iran*, 923 F.3d 1095 (D.C. Cir. 2019) ....................16
*Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33 (E.D.N.Y. 2019) ....................10
*Miller v. Cartel*, 2022 U.S. Dist. LEXIS 112463, 2022 WL 2286952 (D.N.D. Jun. 24, 2022) ....................13
*Montesa v. Schwartz*, 836 F.3d 176 (2d Cir. 2016) .................... 3, 4
*Orix Fin. Servcs., Inc. v Haynes*, 56 A.D.3d 377 (N.Y. 1st App. Dep't 2008) .................... 17, 18
*Paladino v. Time Warner Cable*, 16 A.D.3d 646 (N.Y. App. Div. 2nd Dep't 2005) ....................18
*Quintero v. Angels of the World*, No. 19-cv-6126 (DG), 2021 U.S. Dist. LEXIS 172445 (E.D.N.Y. Sept. 10, 2021) ....................17
*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) .................... 7, 12
*S. Jackson & Son v. Coffee, Sugar & Cocoa Exch.*, 24 F.3d 427 (2d Cir. 1994) ....................3
*SEC v. Amerindo Inv. Advisors*, 639 Fed. App'x 752 (2d Cir. 2016) ....................17
*Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152 (2d Cir. 1968) ....................16
*United States v. Menasche*, 348 U. S. 528 (1955) ....................7
*United States v. Walsh*, 700 F.2d 846 (2d Cir. 1983) ....................16
*Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609 (E.D.N.Y. 2006) .................... 9, 10

## STATUTES

18 U.S.C. § 2333 ....................passim
18 U.S.C. § 2333(a) ....................passim
18 U.S.C. § 2333(d)(1) .................... 4, 5
18 U.S.C. § 2333(d)(2) ....................4
18 U.S.C. §§ 2331 *et seq.* ....................2
Pub. L. No. 114-222, 130 Stat. 852 (2016) .................... 10, 11

## OTHER AUTHORITIES

Antiterrorism Act of 1990, Hearing Before the Subcommittee on Courts and Administrative Practice of Committee on the Judiciary, United States Senate, 101st Congress, Second Session, July 25, 1990 .......... 8, 9

Senate Report on the ATA, S. Rep. 102-342 at 45 (1992) .......... 8

## RULES

Fed. R. Civ. P. 8(c)(1) .......... 12

# INTRODUCTION

The Plaintiffs' Executive Committee for Wrongful Death and Personal Injury Plaintiffs ("PEC") writes pursuant to the Court's Order, at ECF No. 8778, affording interested parties an opportunity to brief the following two questions "[t]o aid in resolving default judgment motions against the Taliban":

1. Who qualifies as a proper plaintiff in a federal claim against the Taliban?
2. Should the Court *sua sponte* invoke the statute of limitations for claims against the Taliban?

At the conference on November 18, 2022, the Court characterized the manner in which these questions have been raised as "cross-border raids," where, in the context of default judgment proceedings against the Taliban defendant, one small set of plaintiffs are questioning the viability of claims against the Taliban of other plaintiffs where the plaintiffs raising the question are in wholly separately captioned cases from the rest of the plaintiffs.[1] Although, for reasons explained herein, the PEC view the issues raised in these "cross-border raids" by non-adverse parties as not properly before the Court and reserve all rights concerning the arguments, the PEC nonetheless appreciates the opportunity to dispense with non-meritorious arguments by persons without standing to raise the arguments, in a context that does not present a case or controversy empowering the Court to adjudicate the issue.

Regarding the Court's questions, the PEC submits that cases both in this Circuit and outside this Circuit have found that standing to bring federal claims against the Taliban pursuant to 18 U.S.C.

[1] *See* ECF No. 8782 at 6:7. These issues appear to have arisen based on submissions from John F. Schutty, III, counsel for a limited set of sub-plaintiffs consolidated within the *Ashton* matter. The plaintiffs he represents are the estates of eight individuals killed in the terrorist attacks on September 11, 2001, the spouses of these eight decedents, and the 21 surviving children of these decedents. *See* Compl., ECF No. 6, *Dickey, et al. v. Islamic Rep. of Iran*, Case No. 1:18-cv-11417 (GBD)(SN)(S.D.N.Y.). The eight spouses brought claims against, *inter alia*, the Taliban individually, as the personal representatives of the estates of their late husbands, and "on behalf of all survivors of" their late husbands without naming those individuals. *See* ECF No. 1463 (*Ashton* Sixth Amended Complaint). The 21 children have not asserted any individual claims against the Taliban in their own names.

§ 2333, the civil damages provision of the Anti-Terrorism Act, 18 U.S.C. §§ 2331 *et seq.* ("ATA"), vests not only with the personal representatives of estates of individuals killed in an act of international terrorism (or an individual who sustained personal physical or psychological injuries based on their physical proximity to an act of international terrorism) but also with the surviving spouses, children, parents, and siblings of those who were killed in an act of international terrorism (and their functional equivalent). Further, the PEC submits that, in default judgment proceedings concerning the Taliban, it would be an error for the Court to raise the affirmative defense of the statute of limitations *sua sponte* on behalf of the Taliban.

## ARGUMENT

### I. To the extent the Court's inquiry derives from Mr. Schutty's pre-conference filings, the issues are not the subject of a true case or controversy on which the Court should opine, and Mr. Schutty's clients lack standing to offensively attack the claims of other plaintiffs within this MDL.

As an initial point, assuming the Court is entertaining these issues within the context of the "adversarial" filings by Mr. Schutty, a question arises as to whether Mr. Schutty—through his clients—possesses prudential standing to question the propriety of *other plaintiffs' claims* within this MDL. As the Court intimated during the November 18, 2022 conference,[2] the Court must first determine whether, for briefing on motions for default judgment against the Taliban, the issues Mr. Schutty raises constitute a case or controversy upon which the Court may issue a decision. "Article III of the Constitution limits the authority of the federal courts to decide only actual cases and controversies." *Lee v. Bd. of Governors of the Fed. Res. Sys.*, 118 F.3d 905, 910 (2d Cir. 1997). "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937). As the Second Circuit has noted, "to achieve the status

[2] During the November 18, 2022 conference, the Court noted that it was "not convinced that the Court should be engaging in what I think feels like cross-border raids, and so I'm not even sure that this is an issue for the Court to decide." Transcript of Conference at 6 (Nov. 18, 2022).

of a case or controversy, a dispute must exist between two parties having adverse legal interests." *S. Jackson & Son v. Coffee, Sugar & Cocoa Exch.*, 24 F.3d 427, 431 (2d Cir. 1994).

"One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). In attacking the merits of other plaintiffs in their own separate cases within this MDL in the context of briefing motions for default judgment, Mr. Schutty is, in essence, seeking relief against other plaintiffs in this MDL and must establish standing to assert such claims seeking relief. To do so, he must establish "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision," *Montesa v. Schwartz*, 836 F.3d 176, 195 (2d Cir. 2016). Here, it is irrefutable that the injury Mr. Schutty's clients suffered was not a result of the actions of the other plaintiffs within this MDL. Looking at the issue of prudential standing which "encompasses the rule against the adjudication of generalized grievances, the rule prohibiting plaintiffs from asserting the rights of third parties, and the rule barring claims that fall outside 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question,'" *id.* at 195, neither Mr. Schutty nor his clients have proper standing to raise the questions before the Court.

Though the PEC and Mr. Schutty may disagree about issues on which the Court has requested briefing, the party plaintiffs within an MDL do not have "adverse legal interests" to create a case or controversy upon which this Court may issue a determination—especially where the relief they are seeking (default judgments against the Taliban) is identical in nature. Furthermore, due to a lack of injury inflicted upon Mr. Schutty's clients by the other plaintiffs within this MDL, Mr. Schutty (and the plaintiffs he represents) lacks Article III standing for this Court to address the grievances raised in Mr. Schutty's submissions. Therefore, the PEC submits that the questions posed—to the extent they

derive from Mr. Schutty's submissions—do not create a case or controversy on which the Court may issue a decision or upon which Mr. Schutty's clients possess standing to assert.

## II. In the context of the pending default judgment motions against the Taliban, the ATA provides a federal cause of action with claims available to "Any national … injured … by reason of an act of international terrorism, or his or her estate, [or] survivors, or heirs."

In connection with the default judgment proceedings against the Taliban pending before the Court, the Court has posed the question of "who qualifies as a proper plaintiff in a federal claim against the Taliban?" ECF No. 8778. First, the relevant federal statutory provision is § 2333 of the ATA. Second, as explained in more detail below, § 2333 provides a cause of action for individuals injured in acts of international terrorism, as well as for "estates, survivors, or heirs" of individuals killed in acts of international terrorism. 18 U.S.C. § 2333(a).

### a. The ATA provides a federal cause of action applicable to claims against the Taliban in the pending default judgments.

In this context, where the plaintiffs with pending default judgment motions are individual plaintiffs (or estates representing individual decedents), plaintiffs assert claims under the civil damages provision of the ATA, 18 U.S.C. § 2333.[3] The ATA provides an explicit cause of action and permits suits against entities, and specifically, under 18 U.S.C. § 2333(d)(2), "liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." Further, the word "person" in this statute "includes corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." *See* 18 U.S.C. § 2333(d)(1) (incorporating the definition of "person" from 1 U.S.C. § 1); *see also* ECF No. 7942 (May 3, 2022 Report & Recommendation) at 42-44 (finding

---

[3] The ATA provides a remedy to the broadest number of plaintiffs within this MDL. A federal claim would also be available to certain plaintiffs under the civil RICO statute, 18 U.S.C. §§1962(a)-(d).

that the term "person" as used in § 2333(d)(1) included not only corporations, companies, associations, firms, partnerships, societies, joint stock companies, and individuals, but also foreign states). The Taliban constitutes one or multiple of these categories of "person" to allow liability to flow against it under the ATA.

**b. Under § 2333, Plaintiffs with federal claims against the Taliban include "Any national … injured … by reason of an act of international terrorism, or his or her estate, [or] survivors, or heirs."**

The state of the law, including specifically in this District, is to recognize independent causes of action under the "civil remedies" provision of the ATA not only for individuals injured in acts of international terrorism, but also "estates, survivors, or heirs" of individuals killed in acts of international terrorism. 18 U.S.C. § 2333(a). The term "survivor" includes immediate family members of the decedents beyond heirs, including spouses, children, parents, and siblings of decedents.[4] While the PEC has cited multiple cases to support this view in specific and well-reasoned decisions, from this District and elsewhere, Mr. Schutty's pre-conference submissions cite no cases to support a view that "survivors," as articulated in the relevant cases cited herein, have no independent claims. Indeed, in his pre-conference submissions, Mr. Schutty did not address these relevant cases, but instead denied there was any precedent on the issue.

Section 2333(a) states, in relevant part: "Any national … injured … by reason of an act of international terrorism, or his or her estate, [or] survivors, or heirs, may sue therefor . . . ." There is no dispute that individuals injured in the terrorist attacks on September 11, 2001 and the estates of those killed in the attacks—through their duly-appointed personal representatives—have standing to

[4] In addition, the case law supports that persons who are the functional equivalent of spouses, children, parents, and siblings of decedents also have claims. *See Knox v. PLO*, 442 F. Supp. 2d 62, 69-70 (S.D.N.Y. 2006) (R&R from Magistrate Judge Theodore Katz to District Judge Victor Marrero), district court adopted, 442 F. Supp. 2d 62 (S.D.N.Y. 2006), vacated on other grounds, 248 F.R.D. 420 (S.D.N.Y. 2008) (recognizing claims of plaintiffs who were functionally equivalent to children of a decedent).

assert claims under the ATA. Where the PEC and Mr. Schutty disagree concerns whether immediate family members of 9/11 decedents have standing to assert claims for their own emotional injuries arising from the loss of their loved ones in the attacks. This disagreement stems from § 2333(a)'s use of the disjunctive phrase permitting claims for "his or her estate, survivors, or heirs." In Mr. Schutty's pre-conference submissions, where he asserted that only estates, spouses, and children have proper claims and that parents and siblings have no individual claims, he focused solely on the use of the words "estates" and "heirs" while ignoring the inclusion of the word "survivors" by assuming improperly that Congress would enact a statute with superfluous terminology identifying those authorized to pursue litigation under the ATA.[5] Mr. Schutty's statutory construction runs afoul of the principle *verba cum effectu sunt accipienda*—that a court is "obliged to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("[c]anons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise," *id.*, citing *United States v. Menasche*, 348 U. S. 528, 538-39 (1955) and *FCC v. Pacifica Foundation*, 438 U. S. 726, 739-40 (1978).

In any event, Mr. Schutty's notion that there is no precedent is wrong; there is. *Estate of Ungar ex rel. Strachman v. Palestinian Auth.*, 304 F. Supp. 2d 232, 263 (D.R.I. 2004), offers a thorough analysis of this specific issue.[6] In *Ungar*, the court characterized the issue as "whether the parents and siblings

[5] In Mr. Schutty's multiple submissions before the November 18, 2022 conference demanding the Court's consideration of this issue, he references the term "survivors" only in passing, and never with any analysis of how that term is applied in the context of ATA cases. In his February 17, 2022 Declaration (ECF Nos 7680/7683 at ¶10), he asserts that the "ATA cause of action is not clear as to which individuals fit within the scope of the phrase 'his or her estate, survivors, or heirs.'" *Id.* at 4 (emphasis omitted). He asserts that "[n]o precedent existed within [this District or the Second Circuit] "on this novel issue at that time" and argues in his declaration, that the ATA is silent as to who fits in the definition of a decedent's "estate, survivors, or heirs." In his July 8, 2022 letter (ECF No. 8187), his July 14, 2022 letter (ECF No. 8205), and again in his July 19, 2022 supplemental declaration (ECF No. 8240), Mr. Schutty refers to the term "survivors" only twice in each, and again in his August 17, 2022 declaration (ECF No. 8387) he refers to the term "survivor" eight times (¶¶ 9, 10, 16 (twice), 19, 26 (twice) and 30), but in each instance he does so without analysis of how the term has been applied in the context of ATA cases.

[6] While Mr. Schutty's numerous pre-conference filings assert there is no precedent on this precise issue, those filings make no mention of *Ungar* or any of the cases in this Circuit that have adopted the analysis and conclusion in *Ungar.*

of a decedent who died leaving children are 'survivors' within the meaning of [§ 2333(a)]." 304 F. Supp. 2d at 262. After considering that specific issue, and offering extensive rationale for its decision, *Ungar* held that "the term 'survivors' as used in § 2333(a) includes the parents and siblings of a U.S. national killed by an act of international terrorism." *Id.* at 264.

In 2006, the Southern District of New York considered and adopted the *Ungar* analysis and conclusion in *Knox v. PLO,* 442 F. Supp. 2d 62 (S.D.N.Y. 2006), where the court considered whether parents and adult siblings may recover under § 2333(a) of the ATA, and concluded that they could.[7] In *Knox*, the plaintiffs with § 2333(a) claims included the decedent's parents and adult siblings, as the decedent's surviving family members. Assessing the analysis in *Ungar*, the *Knox* Court reached the same conclusion—namely, that "a victim's parents and adult siblings properly fall within the class of individuals that may claim damages under § 2333 as survivors." *Knox*, 442 F. Supp. 2d at 75.[8]

In *Estate of Henkin v. Kuveyt Turk Katilim Bankasi, A.S.*, 495 F. Supp. 3d 144, 152 (E.D.N.Y. 2020), Judge Cogan addressed this issue while deciding whether the text of § 2333(a) allowed only one suit to be brought—either for an injured national, or the estate, or an heir, or a survivor, but not more than one of these categories. In *Henkin*, after recognizing that "[s]pouses *and* relative[s] in direct lineal relationships are presumed to suffer damages for mental anguish," *id.* at 152 (emphasis added), and that "courts routinely permit the deceased individual's estate, survivors, and heirs to bring separate

[7] *Knox*, 442 F. Supp. 2d at 75 (S.D.N.Y. 2006) (R&R from Magistrate Judge Theodore Katz to District Judge Victor Marrero), district court adopted, 442 F. Supp. 2d 62 (S.D.N.Y. 2006), vacated on other grounds, 248 F.R.D. 420 (S.D.N.Y. 2008) (vacating default judgment, but describing the plaintiffs as "the representative and heirs and survivors of the [decedent's estate, who] commenced this action asserting claims arising under [the ATA], and other related common law tort causes of action, *id.* at 423, and concluding the order with direction for the defendant to "reimburse the representative and heirs and survivors of the [decedent's estate] (collectively 'Plaintiffs')…)."

[8] Later, in *Lelchook v. Commerzbank AG*, 10 Civ. 5795 (AKH), 2011 WL 4087448 (S.D.N.Y. Aug. 2, 2011), Judge Hellerstein considered the issue again in the context of deciding whether § 2333 conferred standing on plaintiffs beyond the decedent's estate and its personal representative, holding "consistent with other courts to have addressed the issue, that each individual Plaintiff in this case may bring claims." *Id.* at *2. Relying on *Ungar*, *Knox*, and other precedent, Judge Hellerstein held that plaintiffs with proper standing under § 2333 included, among others, the decedent's siblings and parents. *Id.* (noting "courts have consistently held that the statutory purpose and legislative history for the ATA evidence an intent to allow siblings and parents of the decedent to bring claims").

claims under the ATA," *id.*, the court held that § 2333 authorizes separate claims for each estate, survivor, and heir. *Id.* (internal quotes omitted, citing *Knox*, 248 F.R.D. at 423 (S.D.N.Y. 2008); *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 620 (E.D.N.Y. 2006); *Ungar*, 304 F. Supp. 2d at 263); *see also Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33 (E.D.N.Y. 2019) (recognizing standing under § 2333 of decedents' U.S.-national spouses and relatives in direct lineal relationship).

In *Weiss*, the plaintiffs with § 2333 claims were "United States citizens, and several estates, survivors, and heirs of United States citizens, who ha[d] been victims of terrorist attacks in Israel." There, the *Weiss* court held that, for a plaintiff to plead a § 2333 claim, it was unnecessary for the plaintiff to specifically use the terms "heirs" or "survivors" in alleging their relationship to the decedent; it was sufficient, the court held, "for the plaintiffs to allege a familial relationship such as that of child, parent, spouse, or sibling of a U.S. national." *Id.* at 620 (citing *Ungar*).

The courts' reasoning in *Ungar* and *Knox* (and the other cases citing them) is sound. After the *Ungar* court began its analysis recognizing that § 2333 does not define "survivors," *id.* at 261, 262, rather than just skipping over the term and essentially eliminating it from the statute, the court determined how that term must be interpreted consistent with the rest of the ATA and its legislative history. *Ungar* at 262-264; *see Knox*, 442 F. Supp. 2d at 75. The courts considered that the ATA was "drafted to be powerfully broad,"[9] that "Congress did not intend that the class of persons able to bring actions pursuant to § 2333(a) should be interpreted narrowly,"[10] and that "the underlying purpose [of

---

[9] *Ungar* at 262 (quoting Antiterrorism Act of 1990, Hearing Before the Subcommittee on Courts and Administrative Practice of Committee on the Judiciary, United States Senate, 101st Congress, Second Session, July 25, 1990 ("Senate Hearing"), Testimony of Joseph Morris, at 136). Citing language from the Senate Report on the ATA, S. Rep. 102-342 at 45 (1992) ("the substance of [an action under § 2333] is not defined by the statute, because the fact patterns giving rise to such suits will be as varied and numerous as those found in the law of torts. This bill opens the courthouse door to victims of international terrorism"), the *Ungar* and *Knox* courts concluded that "Congress did not intend that the class of persons able to bring actions pursuant to § 2333(a) should be interpreted narrowly." *Knox*, 442 F. Supp. 2d at 75 (citing *Ungar*); *Ungar*, 304 F. Supp 2d at 263.

[10] *Knox*, 442 F. Supp. 2d at 75 (citing *Ungar*); *Ungar*, 304 F. Supp 2d at 263.

the statute is] to deter and punish acts of international terrorism."[11] They reasoned that the text evinced Congress's intent to codify general common law tort principles and to extend civil liability for acts of international terrorism to the fullest reaches of traditional tort law.[12] The *Ungar* court also considered that the text of § 2333 was originally narrower, until Congress modified it at the Justice Department's suggestion to explicitly allow suits by family members (as "survivors" and "heirs" of the victim).[13] As the courts in *Ungar* and *Knox* observed, "[b]y including the term 'survivors' in the class of persons eligible to bring an action, Congress evidenced an intention that family members who are not legal heirs (such as the parents and siblings of a decedent who leaves children) may bring an action pursuant to the statute. If this were not the case, there would have been no need to include the term 'survivors.'"[14]

After working through the reasoning, the *Ungar* and *Knox* courts found that the ATA's legislative history and its underlying purpose to deter and punish acts of international terrorism, led the courts to conclude that the term "survivors" as used in § 2333(a) includes parents and siblings of United States nationals killed by an act of international terrorism. *Ungar*, 304 F. Supp. 2d at 264;[15]

---

[11] *Ungar*, 304 F. Supp. 2d at 238; *Knox*, 442 F. Supp. 2d at 75.

[12] *Id.* at 262, 265 (quoting *Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.*, 291 F.3d 1000 (7th Cir. 2002)); *Knox*, 442 F. Supp. 2d at 77.

[13] *Ungar* at 263 (citing Senate Hearing at 38 (statement of Steven R. Valentine)).

[14] *Id.* at 263-64; *Knox*, 442 F. Supp. 2d at 75 (citing *Ungar*); *see also Babbitt v. Sweet Home Chapt. of Cmtys. for a Great Or.*, 515 U.S. 687, 698 (1995) (recognizing the basic principle that courts must be "reluctan[t] to treat statutory terms as surplusage"); *Reiter,* 442 U.S. at 339 (recognizing canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings); *Collazos v. U.S.*, 368 F.3d 190, 199 (2d Cir. 2004) (recognizing that where "two words . . . are connected by 'or' rather than 'and,' and when no commas set off the second word to suggest that it stands in apposition to the first, [courts should] construe the disjunctive words to convey different meanings.")

[15] One "substantial policy consideration" the *Ungar* court identified is "that allowing parents and siblings to bring actions in their own right (regardless of whether the decedent is survived by a spouse and/or children) increases the deterrent effect of the legislation." *Ungar* at 264. In support of that consideration, the court cited Senate Hearing testimony of Deputy Assistant Attorney General Steven R. Valentine, where he testified that the Department of Justice's position is that "it is essential that both the Congress and the Executive Branch take measures, such as the present bill, to deter terrorist attacks against American nationals overseas …." Senate Hearing at 31. *See also Miller v. Cartel*, 2022 U.S. Dist. LEXIS 112463, 2022 WL 2286952 (D.N.D. Jun. 24, 2022) (as part of the Court's findings of fact and conclusions of law, the Court quotes with approval the *Ungar* court's determination that "[t]he deterrent effect of [§ 2333] will be maximized if it is interpreted to subject terrorists to the broadest possible range of damages" including "pecuniary damages ... and

*Knox*, 442 F. Supp. 2d at 75 ("This Court agrees that a victim's parents and adult siblings properly fall within the class of individuals that may claim damages under § 2333 as survivors.")

A narrow reading of § 2333, declining to recognize parents' and siblings' claims, would erode national policy objectives of the ATA that undergird the conclusions in *Knox* and *Ungar* (and the other cases that have relied on them). The ATA as enacted and as amended through Justice Against Sponsors of Terrorism Act (JASTA), Pub. L. No. 114-222, 130 Stat. 852 (2016), has broad policy objectives, including "a vital interest" in affording a vehicle for providing victims of international terrorism the broadest possible basis for seeking relief,[16] and imposing maximum liability on terror sponsors and supporters as a means of deterring terror-sponsoring activities and thereby promoting our national security.[17] Neither the goal of broad access to seek relief nor the goal of imposing consequences on terrorists or their sponsors to achieve deterrence are served by the proposal that would curtail—as opposed to broaden—the universe of plaintiffs eligible to seek relief for the injuries suffered. Consider the dramatic effect that a narrow reading of § 2333 that omits "survivors" would have on meeting Congress's underlying goal of deterring acts of international terrorism. The "powerfully broad" language of the ATA and its deterrent purpose would become diminished if terrorists were accountable only to the comparatively fewer numbers of their victims. Moreover, the

---

also for non-economic damages, including loss of companionship, society, and mental anguish experienced by the victim's surviving family members, including his siblings." *Id* at *19 and n. 229 also citing *Knox*.

[16] JASTA, Pub. L. No. 114-222, § 2(b), 130 Stat. at 853 ("Purpose"); *see Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 855 92d Cir. 2021); *see also* JASTA, Pub. L. No. 114-222, § 2(a)(7), 130 Stat. at 853 ("Findings and Purpose")(finding that "the United States has a vital interest in providing persons and entities injured as a result of terrorist attacks . . . with full access to the court system . . . to pursue civil claims against persons, entities, or countries that have knowingly or recklessly provided material support or resources, directly or indirectly, to the persons or organizations responsible for their injuries")

[17] *See Knox*, 442 F. Supp 2d at 75 (identifying as the underlying purpose of the ATA "to deter and punish acts of international terrorism"); *Ungar*, 304 F. Supp. 2d at 237, 267 (finding "the congressional purpose behind [§ 2333] was to deter acts of international terrorism"); *see also Goldberg v. UBS AG*, 690 F. Supp. 2d 92, 97 n. 10 (E.D.N.Y. 2010) ("the deterrent effect of the legislation will be maximized if it is interpreted to subject terrorists to the broadest possible range of damages").

vital national interests of affording access to the justice system to seek relief and promoting national security through deterrence would be further implicated if vagaries of state law are introduced to cause unnecessarily disparate application of those policies.

Additionally, Congress's intent to provide a federal remedy for a category of harm with congressionally identified national interests of deterring terrorist activity and affording terror victims access to the justice system to seek relief represents federal interests far superior to what might inform the various state laws implicated in the arguments Mr. Schutty has raised.[18] International terrorism, as addressed under the ATA and JASTA, is a harm directed at United States citizens as a means of attempting to impact U.S. policy. The notion that Congress crafted a federal remedy intending for that remedy to vary based on the vagaries of an individual state's laws—such that certain citizens of state A are protected differently from similarly situated citizens of State B—makes no sense and it is belied

[18] In Mr. Schutty's pre-conference submissions, which he purports to be on behalf of estates, widows, and heirs of only eight 9/11 decedents (*see* ECF No. 8662; representing only a small sampling of the cases in this MDL), he argues that "the law of the [nearly 3,000] decedent[s'] domicile[s] has a great interest in the outcome of this litigation and the eventual administration of each estate" and that "a federal court should resort to applicable state law to 'fill in' the gaps in a federal, statute-created cause of action for money damages…." *First*, at no point either before or during the conference does Mr. Schutty ever recognize the vital national interests represented by the ATA and JASTA. As a result, he never balances any of those national interests, *see supra*, at 9-11 (discussing the vital federal interests Congress and the courts have identified in enacting the ATA and JASTA) against any of the purported state interests that he suggests are implicated. *Second*, Mr. Schutty's argument, at ECF No. 8662 n.8, that there is a "gap" to be filled, wrongly suggests an absence of a federal interest and that the federal government, in enacting the ATA, was *limiting* recovery and leaving to state estate law to decide who could recover under the claim authorized under § 2333. But, as explained in detail in *Ungar*, *Knox*, and the other cited case, the argument is belied by the text of § 2333 (including "survivors" among those with claims), as well as the legislative history and broad compensatory and deterrent purposes of the ATA and JASTA. *Finally*, another telling flaw, revealing of the internal inconsistency in his argument, is that, rather than argue that the Court should apply the law of every state that was domicile to each estate's decedent, Mr. Schutty argues to apply New York state law because he claims it is similar in its application to the law in Connecticut and New Jersey where he claims most of the decedents were domiciled. This demonstrates self-serving as the decedent estates that he represents are New York estates notwithstanding that the victims of the attacks were domiciled not only in New York, Connecticut, and New Jersey, but also in virtually every other state in the United States in addition to nearly 100 foreign countries. Further, his internally inconsistent positions are demonstrated in his inclusion of claims in their individual capacities for both spouses and children. If the claims are limited to wrongful death claims, as he alleges, then the only person with a valid claim before the Court would be the court-appointed personal representative of the estate pursuing wrongful death on behalf of the estate and its heirs. He simply cannot have it both ways, and his approach demonstrates that he believes that individualized and distinct solatium claims do, in fact, exist.

by the assessments in the relevant case law. On the contrary, Congress's goals are met much better using the reading of § 2333 as interpreted by *Ungar*, *Knox*, and the other cited cases.

## III. Both Second Circuit precedent and New York law make clear that, in a default judgment scenario, the Court should not raise the issue of statute of limitations *sua sponte*.

The second question on which the Court requested briefing was whether "the Court should *sua sponte* invoke the statute of limitations for claims against the Taliban?" ECF No. 8778. The PEC respects Mr. Schutty's impassioned pleas on behalf of his clients; however, the law simply does not support what he has requested the Court to do. Rather than address the specific statutes of limitations applicable to the federal claims in this MDL, the PEC addresses solely whether or not this issue should be invoked at all in this briefing vis-à-vis the Defendant Taliban. The PEC states that the case law does not favor the Court raising an affirmative defense *sua sponte* in these circumstances.

The Second Circuit has spoken on this issue. "The statute of limitations is an affirmative defense that is waived if not raised." *Kropelnicki v. Siegel*, 290 F.3d 118, 130 n.7 (2d. Cir. 2002); *see also* *Doe v. Constant*, 354 Fed. App'x 543, 545 (2d Cir. 2009) (stating "timeliness under a statute of limitations … is an affirmative defense that may be forfeited or waived"); *Davis v. Bryan*, 810 F.2d 42, 44-45 (2d Cir. 1987); *United States v. Walsh*, 700 F.2d 846, 855-56 (2d Cir. 1983) (holding "the statute of limitations is an affirmative defense … not cognizable on appeal unless properly raised below"); *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152, 1155 (2d Cir. 1968) ("we note that the Statute of Limitations is an affirmative or so-called 'personal privilege' defense which may be waived if not promptly pleaded"); *see also* Fed. R. Civ. P. 8(c)(1) (setting forth statute of limitations as one of the affirmative defenses that must be affirmatively stated in responding to a pleading). The Second Circuit has held "the district court ordinarily should not raise [the statute-of-limitations defense] sua sponte," and to the extent a court raises the defense *sua sponte* to dismiss the claims of parties against whom the defense was not

pleaded would constitute "an error of law." *Davis v. Bryan*, 810 F.2d at 44 and 45; *accord Maalouf v. Islamic Rep. of Iran*, 923 F.3d 1095, 1115 (D.C. Cir. 2019) (holding that permitting *sua sponte* invocation of the statute of limitations to dismiss a case in a default setting "would be tantamount to giving the courts '*carte blanche* to depart from the principle of party presentation basic to our adversary system").

While this case law leaves little room for additional discussion even where a defendant has appeared and defended itself in the litigation, in the case of a defendant who failed to appear in the litigation at all and did not assert a statute-of-limitations defense, the Second Circuit has held "the statute of limitations defense was abandoned by their failure to appear and assert that defense." *SEC v. Amerindo Inv. Advisors*, 639 Fed. App'x 752, 754 (2d Cir. 2016); *see also Quintero v. Angels of the World*, No. 19-cv-6126 (DG), 2021 U.S. Dist. LEXIS 172445, at *9 (E.D.N.Y. Sept. 10, 2021). Here, under precedent in this Circuit, by failing to appear and assert its affirmative defenses, the Taliban has abandoned those defenses, and the Court would commit an error of law to raise these issues *sua sponte*.

To the extent that the Court may wish to look to New York law to ensure that all bases have been covered for both federal and state claims—especially in light of Mr. Schutty's misguided but consistent refrain that New York law should apply here—the PEC has determined that New York law is even more explicit in prohibiting the Court from raising an affirmative defense *sua sponte*. In *Orix Fin. Servcs., Inc. v Haynes*, 56 A.D.3d 377 (N.Y. 1st App. Dep't 2008), the court stated unequivocally, "[t]he statute of limitations must be pleaded as an affirmative defense and cannot be asserted sua sponte by the court as a basis for denying an unopposed motion for a default judgment." 56 A.D.3d at 377. The Appellate Division Second Department has also held that a court raising the statute of limitations as grounds for dismissal *sua sponte* on a motion for default judgment would constitute judicial error. *See Atkins-Payne v. Branch*, 95 A.D. 3d 912, 913 (N.Y. 2d App. Dep't 2012). "A court may not take 'judicial notice,' sua sponte, of the applicability of a statute of limitations if that

defense has not been raised." *Paladino v. Time Warner Cable*, 16 A.D.3d 646, 647 (N.Y. App. Div. 2nd Dep't 2005).

In sum, the Taliban has failed to appear in any of the actions in this MDL wherein it was a named defendant, and it has not responded to the allegations against it in any manner including asserting the affirmative defense of the statute of limitations. Therefore, the Court would commit an error of law under either federal or New York state law precedent to raise the statute of limitations *sua sponte* in relation to the pending motions for default judgment against the Taliban.

**CONCLUSION**

For the foregoing reasons, the PEC respectfully submits that the proper plaintiffs under the federal claims in this litigation include not only the personal representative of a decedent killed in the terrorist attacks on September 11, 2001 (or the individual who was injured in the terrorist attacks), but also separate and distinct claims for emotional injury and loss (or solatium damages) arising from the wrongful death for immediate family members, including the decedent's spouse, children, parents, and siblings (and their functional equivalents). Furthermore, both federal law and New York state law would bar this Court from asserting a defense of the statute of limitations *sua sponte*.

Dated: December 22, 2022

Respectfully submitted,

MOTLEY RICE LLC

By: /s/ Robert T. Haefele
JODI WESTBROOK FLOWERS
DONALD A. MIGLIORI
ROBERT T. HAEFELE
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*Co-Chairs and Liaison Counsel for the Plaintiffs' Executive Committees for Personal Injury and Death Claims*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Plaintiffs' Executive Committee's Memorandum of Law in Response to the Court's Direction at ECF No. 8778 was electronically filed this 22nd day of December 2022. Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system.

Robert T. Haefele