UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBN)(SN) ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN)
(and member case *Burlingame v. Bin Laden, et al.,* 02-cv-7230 (GBD)(SN))

and ALL Wrongful Death Cases

**MEMORANDUM OF POINTS & AUTHORITIES
REGARDING LAW TO BE APPLIED IN WRONGFUL DEATH
<u>DEFAULT JUDGMENT APPLICATIONS AGAINST THE TALIBAN</u>**

LAW OFFICE OF JOHN F. SCHUTTY, P.C.
445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (646) 345-1441
Fax: (917) 591-5980
john@johnschutty.com

# **TABLE OF CONTENTS**

**Page No.**

STATEMENT OF FACTS ................................................................................................ 1

The Wrongful Death Claims Asserted Against the Taliban ............................................ 2

A. Information Needed from Each Wrongful Death Plaintiff........................................ 3

B. State Law on Estate Administration Must Not Be Ignored...................................... 4

I.  STATE LAW CLAIMS:  APPLICABLE STATE LAW REQUIRES THAT WRONGFUL
    DEATH CLAIMS BE BROUGHT BY "PERSONAL REPRESENTATIVES" & THAT
    "HEIRS" OF AN ESTATE BE STRICTLY LIMITED BY STATUTE................................. 5

II. FEDERAL LAW CLAIMS:  THE ANTI-TERRORISM ACT IS SILENT AS TO  WHICH
    INDIVIDUALS ARE QUALIFIED TO BRING A  WRONGFUL DEATH CLAIM & IT
    FAILS TO DEFINE WHO  QUALIFIES AS "SURVIVORS OR HEIRS": APPLICABLE
    STATE LAW SHOULD BE APPLIED TO FILL THE GAPS ............................................... 5

    "Who qualifies as a proper plaintiff in a federal claim against the Taliban?".......................... 6

    "Should the Court sua sponte invoke the statute of limitations for claims against the
    Taliban?"................................................................................................................. 11

CONCLUSION................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Maalouf v. Republic of Iran*,
  306 F.Supp.3d 203 (D.D.C. 2018) ........................................................................2

*Arizona v. California*,
  530 U.S. 392 (2000) ............................................................................................12

*Babcock v. Jackson*,
  12 N.Y.2d 473 (1963) ...........................................................................................4

*Bell v. City of Milwaukee*,
  746 F.2d 1205 (7th Cir. 1984) ............................................................................10

*Bob Jones Univ. v. Simon*,
  416 U.S. 725 (1974) ..............................................................................................6

*Brandon v. Travelers Ins. Co.*,
  18 F.3d 1321 (5th Cir. 1994) (abrogated on other grounds by, *Kennedy v. Plan
  Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285 (2009)) ................................7

*Brazier v. Cherry*,
  293 F.2d 401 (5th Cir. 1961) ..............................................................................10

*Maalouf v. Republic of Iran*,
  923 F.3d 1095 (D.C. Cir. 2019) ............................................................................2

*Carter v. City of Emporia*,
  543 F. Supp. 354 (D. Kan. 1982) ........................................................................10

*Cooney v. Osgood Mach.*,
  81 N.Y.2d 66 (1993) ..............................................................................................4

*County of Suffolk v. Long Island Lighting Co.*,
  728 F.2d 52 (2d Cir. 1984) ....................................................................................9

*De Sylva v. Ballentine*,
  351 U.S. 570, 76 S. Ct. 974, 100 L. Ed. 1415 (1956) ..........................................7

*Dragan v. Miller*,
  679 F.2d 712 (7th Cir. 1982) ...........................................................................8, 10

*Environmental Encapsulating Corp. v. City of New York*,
  855 F.2d 48 (2d Cir. 1988) ....................................................................................9

*Eriline Co. S.A. v. Johnson*,
    440 F.3d 648 (4th Cir. 2006) ...................................................................13

*Florida Lime Avocado Growers, Inc. v. Paul*,
    373 U.S. 132 (1963)...................................................................................9

*Freightliner Corp. v. Myrick*,
    514 U.S. 280 (1995).................................................................................10

*Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran*,
    313 F. Supp. 3d 50 (D.D.C. 2018) ...........................................................6

*Hardy v. New York City Health & Hosp. Corp.*,
    164 F.3d 789 (2d Cir. 1999)......................................................................7

*Hines v. Davidowitz*,
    312 U.S. 52 (1941).....................................................................................9

*Huang v. Lee*,
    734 F.Supp. 71 (E.D.N.Y.1990) ...............................................................9

*Kamen v. Kemper Financial Servs., Inc.*,
    500 U.S. 90 (1991).....................................................................................7

*Knox v. Palestine Liberation Organization*,
    442 F. Supp. 2d 62 (S.D.N.Y. 2006)......................................................6, 7

*Lassiter v. City of Phila.*,
    716 F.3d 53 (3d Cir. 2013).......................................................................13

*Leonhard v. United States*,
    633 F.2d 599 (2d Cir. 1980)...............................................................12, 13

*Link v. Wabash R.R. Co.*,
    370 U.S. 626 (1962).................................................................................12

*Markham v. Allen*,
    326 U.S. 490 (1946)..............................................................................8, 10

*Nice v. Centennial Area School Dist.*,
    98 F. Supp. 2d 665 (E.D. Pa. 2000) ..........................................................7

*Pino v. Ryan*,
    49 F.3d 51 (2d Cir. 1995) ........................................................................13

*Robins v. Rarback*,
    325 F.2d 929 (2d Cir. 1963), *cert. denied,* 379 U.S. 974 (1965)............13

*Sager v. City of Woodland Park*,
   543 F. Supp. 282 (D. Colo. 1982) .......................................................................10

*Sanchez v. Marquez*,
   457 F. Supp. 359 (D. Colo. 1978) .......................................................................10

*Shiekh v. Republic of Sudan*,
   308 F.Supp.3d 46 (D.D.C. 2018) .........................................................................2

*Tex. Indus. v. Radcliff Materials*,
   451 U.S. 630 (1981) ...............................................................................................7

*U.S. v. Smith*,
   832 F.2d 774 (2d Cir. 1987) .................................................................................7

*U.S. v. Yazell*,
   282 U.S. 341 (1996) ...............................................................................................7

*United States v. Kimbell Foods, Inc.*,
   440 U.S. 715 (1979) ...............................................................................................9

*Walters v. Indus. and Com. Bank of China*,
   651 F.3d 280 (2d Cir. 2011) .............................................................................2, 13

*Wright v. Rensselaer Cty Jail*,
   771 Fed.Appx. 58 (2d Cir. 2019) .....................................................................12, 13

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
   566 U.S. 199 (1996) ...............................................................................................7

## Statutes

18 U.S.C. § 2335(a) ........................................................................................................11

42 U.S.C. §§ 1981, 1983, and 1988 ...............................................................................10

Anti-Terrorism Act**,** 18 U.S.C. § 2333................................................................*passim*

Conn. Gen. Stat. § 45a-448(b), §§ 45a-437, *et. seq.*, and § 52-555................................8

Rules of Decision Act., 28 U.S.C. § 1652 .......................................................................9

N.J. Stat. Ann. § 2A: 31-4, § 3B: 5-3 and § 2A:31-2 ......................................................8

N.Y. Estate Powers & Trusts Law § 5-4.1.......................................................................8

N.Y. Estate Powers & Trusts Law § 5-4.2....................................................................5, 8

N.Y. Estate Powers & Trusts Law § 5-4.4.................................................................8, 11

N.Y. Surr. Ct. Proc. Act § 205(1) ..............................................................................8

Pub. L. No. 114-222, 130 Stat. 852 ...........................................................................5

## **Other Authorities**

Wright & Miller, 19 *Fed. Prac. & Proc.* § 4518 (3d ed. August 2019 update)..............7

Wright A. Miller, 5 *Fed. Prac. & Proc* § 1357 (1969)...............................................13

Fed.R.Civ.P. 16(c)(2)(A) ..........................................................................................13

Fed. R. Civ. P. 60(b) ..................................................................................................3

https://www.kreindler.com/Publications/Aviation-Law-10.shtml...............................8

Hill, *State Procedural Law in Nondiversity Litigation*, 69 Harv. L. Rev. 66 (1955) ....................9

Note, "The Federal Common Law," 82 Harv.L.Rev. 1512, 1519 (1969) .................6, 9

S. REP. 102-342 (1992)..............................................................................................6

S. Speiser, *Recovery for Wrongful Death*, § 6:61 (4th ed. July 2018 update) ................7

## STATEMENT OF FACTS

In response to a December 1, 2022 Court Order, this Memorandum of Points & Authorities addresses the following questions: (1) "Who qualifies as a proper plaintiff in a federal [wrongful death] claim against the Taliban?" and (2) "Should the Court *sua sponte* invoke the statute of limitations for claims against the Taliban?"  *See* ECF MDL#8778.

The undersigned law firm represents the estates of eight 9/11 decedents[1]; a "personal representative," appointed by a New York State Surrogates Court, has appeared to represent each of these eight estates in this litigation; each personal representative filed a timely wrongful death action under both state and federal law (within two years of the decedent's death) against the Taliban,[2] and each personal representative seeks damages only on behalf of the "heirs" of each estate, as that word "heirs" and the phrase "survivors or heirs" is defined by applicable state law (the law of the decedent's domicile).

The Court has advised counsel that it will not "rubber stamp" the Taliban wrongful death default judgment applications and will attempt a degree of "quality control" to ensure fairness in

---

[1]   My clients are not properly represented by the existing "Plaintiffs Executive Committee for Personal Injury & Wrongful Death" ("PI&WD PEC") with respect to the Taliban wrongful death applications because the law firms on this Committee represent both "heirs" recognized under applicable state law, but also "other family members" who are not qualified heirs (or appointed personal representatives) and individuals who have not filed timely claims.  In short, surviving spouses and children (qualified heirs under applicable state law) are not properly represented on the Taliban default judgments for wrongful death damages, except through pleas and objections made by my office.

[2]   On September 4, 2002, the *Ashton* Plaintiffs filed their first Complaint against the sponsors of the September 11, 2001 terrorist attacks, which included claims against defendants al Qaeda Islamic Army, the Taliban and Muhammad Omar (hereinafter the "*Taliban and Omar* Defendants"), among others.  *See* 02-cv-6977 (S.D.N.Y.) ECF 1.  That Complaint was consolidated and amended several times.  *See, e.g.,* 02-cv-6977 (S.D.N.Y.) ECF 2, 11, 32, 38, 111, 465.  The *Taliban* and *Omar* Defendants never answered, and the *Ashton* Plaintiffs thereafter moved for a Certificate of Default and a liability default judgment, which this Court granted on May 12, 2006.  ECF 1782 *et seq.*, 1797 (referring to the defendants listed in Exhibit B to the *Ashton* Plaintiffs' motion, including the *Taliban* and *Omar* Defendants).

the entry, execution and enforcement of any Taliban default judgments.[3]   The Court also has recognized that the claims of many of the plaintiffs are presently "adverse" to one another.

A review of the wrongful death Complaints filed against the Taliban reveals that two viable causes of action have been alleged: (1) a common (state) law claim for wrongful death, and (2) a federal claim arising out of the Anti-Terrorism Act.  Each type of claim will be addressed below.  This brief reiterates a request for a single Order from the Court (applying to all Taliban wrongful death claimants) that determines: (1) who may sue for wrongful death damages (only "personal representatives," as required by state law?), (2) when the wrongful death action must have been filed against the Taliban to be timely (under both state and federal law), and (3) what "heirs" may claim damages in a wrongful death context (does applicable state estate administration law or new, judicially-created federal common law apply to determine eligible "heirs").

## THE WRONGFUL DEATH CLAIMS ASSERTED AGAINST THE TALIBAN

The wrongful death plaintiffs asserting claims against the Taliban must "proceed on equal footing" *based on applicable law*.[4]   Today, however, the PEC firms are pursuing wrongful death

---

[3]     Where a limited fund of money may exist in the "possession" of a defendant-in-default, and that money is sought by a multitude of plaintiffs, the claims of various plaintiffs are adverse to one another, and their respective claims should be challenged to ensure that justice is obtained.  The docket of the court would otherwise become a "blank-check-writing" enterprise for untested claims, rather than a court of law.  *See, e.g., Shiekh v. Republic of Sudan*, 308 F.Supp.3d 46, 55 (D.D.C. 2018) ("The possibility of nearly endless litigation takes on a new and more troubling dimension when paired with the murky public policy consequences of enabling untimely judgments"), and *Maalouf v. Republic of Iran*, 306 F.Supp.3d 203, 211 (D.D.C. 2018) ("without some policing of time limits, plaintiffs may seek to exploit prior decisions finding nations liable for certain conduct to later pursue large damage awards decades after the fact . . . In this way, plaintiffs can continue piggybacking off of older decisions for decades to extract multimillion dollar judgments from absent sovereigns . . . As long as each crop of plaintiffs could show that they were victims or proper third-party claimants, they could continue racking up sizeable damage awards for decades in response to a single act."), *Shiekh* and *Maalouf* both rev'd on other grounds by, *Maalouf v. Republic of Iran*, 923 F.3d 1095 (D.C. Cir. 2019) (holding: district court may not raise a statute of limitations defense *sua sponte* against a defendant in default).  This Court, based on the objections of "personal representatives" and proper "heirs," is not acting *sua sponte*.  Moreover, the Second Circuit clearly supports *sua sponte* dismissals based on the statute of limitations. *Walters v. Indus. and Com. Bank of China*, 651 F.3d 280, 293 (2d Cir. 2011).

damage claims, on behalf of "new" plaintiffs (additional family members) in violation of applicable state law by: (1) requesting death damages for family members personally, who are not represented by a state-appointed personal representative, (2) requesting damages on behalf of non-heir individuals in violation of estate administration laws, and (3) adding additional non-heir family members to the litigation long after the statute of limitations for wrongful death has expired. The undeniable conflict between state wrongful death law and the federal (judicially-created) common law urged by the PEC must be addressed and properly resolved in one MDL Order, rather than evaluated through a plethora of individual default judgment orders.

### A. Information Needed from Each Wrongful Death Plaintiff

A July 11, 2022 Court Order required, among other things, that every plaintiff identify when they were added to the Complaint "against the relevant defendant" (p. 4). As a starter, this

---

4    The Court will recall that the Law Office of John F. Schutty, P.C. has sought leave to file a Fed. R. Civ. P. 60(b) motion to vacate the wrongful death default judgment obtained by the *Havlish* plaintiffs – on the ground that this default judgment was rendered without regard to the actual scheme of liability pled by those plaintiffs (common law, and not the FSIA). For the convenience of the Court, reference is made to my prior letter to the Court on this subject (Case 1:03-cv-09848-GBD-SN, Document 615 Filed 04/20/22). In claiming damages against ALL of the defendants, the *Havlish* Plaintiffs relied exclusively on the FSIA – "Damages available under the FSIA-created cause of action include 'economic damages, solatium, pain and suffering, and punitive damages'" – even though the FSIA clearly does not provide a cause of action in favor of the *Havlish* Plaintiffs against the Taliban. *Havlish* Plaintiffs' Damages Inquest Memorandum (ECF#301 Filed February 14. 2012) at 5. At an April 26, 2022 hearing, Judge Netburn stated on this subject: "I'll just note that I've received your letter application. I haven't acted on it. We will shortly." April 26, 2022 Transcript at 34. At this same hearing, Judge Daniels stated: "I can guarantee you that we will give you a full opportunity to be heard, as we have given you a full opportunity to be heard, on these issues – the issues of the availability of funds, and who is entitled to some of the funds and what would be the best way to distribute available funds . . . So be assured that any concerns that you have about certain issues, the appropriate way to address them is to bring them to the attention of this Court and to the other side – anyone who disagrees with your position – be able to weigh in in this proceeding, in this MDL proceeding . . . you will all be heard." April 26, 2022 Transcript at 37-38. Vacating the defective *Havlish* default judgment would have the beneficial effect of placing all viable wrongful death claims "on equal footing." In drafting the ATA, it is noteworthy that the Treasury and State Departments expressed concern about a few ATA claimants racing to the courthouse ahead of other worthy claimants: "We are also deeply concerned that the proposed legislation would frustrate equity among U.S. nationals with claims against terrorism-list states. It would create a winner-take-all race to the courthouse, arbitrarily permitting recovery for the first, or first few, claimants from limited available assets, leaving other similarly-situated claimants with no recovery at   all.  In fact, it would take away assets potentially available to them." H. Rept. 106-733 - JUSTICE FOR VICTIMS OF TERRORISM ACT 106th Congress (1999-2000), Agency Views, Item 3.

is helpful, but two more items should be identified by each plaintiff claiming wrongful death damages against the Taliban:

1. Whether that plaintiff has been appointed the personal representative of the decedent's estate (and, if so, provide proof of that appointment); and

2. The relationship of each plaintiff to the decedent, *viz.*, whether the plaintiff qualifies as an "heir" under the estate administration law (and wrongful death law) of the state where the decedent was domiciled at the time of his/her death.

The Court has already been inundated with very diverse filings by the numerous law firms pursuing Taliban death claims. One Order of the Court can simplify the default judgment process and clean up the docket. As things stand now, any family member can file a wrongful death claim, decades after the death of their decedent, as long as some family member has previously filed a timely claim – this is wrong. When dealing with any defaulting defendant, some "adversary" party needs to advise the Court when certain plaintiffs, lacking standing and timely claims, seek money from a "limited fund," or those invalid claims will take money from court-authorized plaintiffs with timely, long-standing claims.

### B. State Law on Estate Administration Must Not Be Ignored

A cursory review of the many Complaints filed by plaintiffs against the Taliban indicates that there are two viable causes of action asserted against this defendant: (1) a cause of action provided by the Anti-Terrorism Act, and (2) a common law cause of action for wrongful death based on state law. State law applies to each claim for the reasons stated below.[5]

---

[5]    New York's choice of law analysis, commonly referred to as an "interest analysis," focuses on determining which jurisdiction, "because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Cooney v. Osgood Mach.*, 81 N.Y.2d 66 (1993), *quoting Babcock v. Jackson*, 12 N.Y.2d 473 (1963). Typically, the domicile of the defendant has the greatest interest in the resolution of a wrongful death action.

I.      **STATE LAW CLAIMS:  APPLICABLE STATE LAW REQUIRES THAT WRONGFUL DEATH CLAIMS BE BROUGHT BY "PERSONAL REPRESENTATIVES" & THAT "HEIRS" OF AN ESTATE BE STRICTLY LIMITED BY STATUTE**

The state law (*e.g.*, NY, NJ and CT) governing most of the wrongful death claims (estate administration law) shows that, each such state's laws: (1) requires that the plaintiff be an appointed personal representative of the decedent's estate, (2) strictly defines, by statute, which family members qualify as "heirs" of the decedent (*viz.,* who is entitled to a distribution of a wrongful death award), and (3) requires that the wrongful death action be filed by the personal representative within two years of the decedent's death (EPTL 5-4.2).  *See* page 8 below, and fn. 13 below.  Thus, each Plaintiff asserting a state law claim for wrongful death against the Taliban must establish that they are an authorized "personal representative" of the decedent's estate and that they have filed their action within two years of September 11, 2001.

II.     **FEDERAL LAW CLAIMS: THE ANTI-TERRORISM ACT IS SILENT AS TO WHICH INDIVIDUALS ARE QUALIFIED TO BRING A WRONGFUL DEATH CLAIM & IT FAILS TO DEFINE WHO  QUALIFIES AS "SURVIVORS OR HEIRS": APPLICABLE STATE LAW SHOULD BE APPLIED TO FILL THE GAPS**

The other wrongful death claim asserted against the Taliban is the federal cause of action created by the Anti-Terrorism Act ("ATA")**,** 18 U.S.C. § 2333, which provides (emphasis added):

> **Any national** of the United States **injured** in his or her person, property, or business **by reason of an act of international terrorism**, **or his or her estate, survivors, or heirs**, **may sue therefor** in any appropriate district court of the United States **and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees**.[6]

---

[6]     In 2016, the "Justice Against Sponsors of Terrorism Act" (JASTA), Pub. L. No. 114-222, 130 Stat. 852, amended the ATA to provide that "liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism."  The applicability of the ATA and JASTA, as a viable cause of action against the Taliban, is not in dispute.  The legislative history and subsequent court decisions show, however, that the focus of the ATA has always been on "who may be sued," rather than on "who may sue" for wrongful death.

In the event of a death resulting from an act of international terrorism, this ATA cause of action is *silent* as to which individuals fit within the scope of the phrase "his or her estate, survivors, or heirs,"[7] and is *silent* as to which individuals may pursue a claim for wrongful death.[8] The legislative history that the undersigned has been able to secure shows that the ATA's framers were focused primarily on punishing terrorists and not on setting up a full and complete liability remedy (by specifying who might recover wrongful death damages).[9]

**"Who qualifies as a proper plaintiff in a federal claim against the Taliban?"**

In the default judgment applications filed against the Taliban, the PI&WD PEC attorneys have claimed that precedent issued by a different jurisdiction (the District of Columbia – a federal jurisdiction that applied "federal common law" in interpreting who may recover for a decedent's death under the ATA[10]) is applicable; in turn, the PEC has implicitly suggested that the MDL Court here could wholly ignore the interests and laws of the decedents' domiciles (state

---

[7]    "The ATA does not define the terms 'survivors' or 'heirs,' terms that are usually defined by state law." *Knox v. Palestine Liberation Organization,* 442 F. Supp. 2d 62, 74 (S.D.N.Y. 2006) (the court applied the estate administration law of the decedent's domicile (Israel) in determining "heirs" under the ATA).

[8]    When there are no well-established federal policies and no reasonable body of federal law, "as compared to the relative order and clarity of law established in state courts, the common law rule to be applied in federal court is thus uncertain and almost impossible to predict," which "combined with the substantive advantages to be gained by allowing states to formulate their own policies where feasible creates the presumption that state law should be applied." Note, "The Federal Common Law," 82 Harv.L.Rev. 1512, 1519 (1969).

[9]    "This section [ATA] creates the right of action, allowing any U.S. national who has been injured in his person, property, or business by an act of international terrorism to bring an appropriate action in a U.S. district court. *The substance of such an action is not defined by the statute, because the fact patterns giving rise to such suits will be as varied and numerous as those found in the law of torts.* This bill opens the courthouse door to victims of international terrorism." S. REP. 102-342 *45 (1992) (emphasis added).

[10]    These D.C. cases, are not only not binding precedent in this district, they also lack true "precedential weight" because they were decided in the context of a default by a non-appearing foreign sovereign in a non-state (D.C.). *See, e.g., Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran*, 313 F. Supp. 3d 50, 53 (D.D.C. 2018) (acknowledging that "Iran has never entered an appearance in this action"); *see also Bob Jones Univ. v. Simon*, 416 U.S. 725, 740 n.11 (1974) (finding decision lacked "precedential weight" where the case did not "involve[e] a truly adversary controversy").

law) regarding wrongful death estate administration and wholly ignore federal precedent that frowns upon the creation of federal common law.[11]  Significantly, no precedent exists within the District Court (S.D.N.Y.) or the governing Circuit (Second) to support the PEC's position, and no court previously has resolved the undeniable conflict present here between state law and the federal common law promoted by the PEC.[12]  At a recent conference, a member of the PEC asserted that there is a 'great amount' of precedent surrounding the interpretation of the ATA's cause of action for wrongful death.  That simply is not the case and there are certainly no

---

[11]      *See, e.g., Tex. Indus. v. Radcliff Materials*, 451 U.S. 630, 640–41 (1981) (Burger, C.J.) ("The vesting of jurisdiction in the federal courts does not in and of itself give rise to authority to formulate federal common law.").  "The Supreme Court has put increasing emphasis on the notion that when determining the content of federal common law, forum state law should be adopted as federal law absent some good reason to displace it."  Wright & Miller, 19 *Fed. Prac. & Proc.* § 4518 (3d ed. August 2019 update).  A federal court has discretion to borrow from state law when there are deficiencies or lacunae in the federal statutory scheme. *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789 (2d Cir. 1999); *U.S. v. Smith*, 832 F.2d 774 (2d Cir. 1987) (state commercial law furnished convenient solutions that in no way were inconsistent with adequate protection of federal interests).  When federal law does not expressly establish the legal rule for a federal question case, a federal court should borrow state law to fill the gap in the statutory scheme so long as the state rule does not impinge upon any federal interest.  Particularly in the area of family relationships and domestic relations, a federal court should defer to the well-established law of the several states.  *Nice v. Centennial Area School Dist.*, 98 F. Supp. 2d 665 (E.D. Pa. 2000).  *See also De Sylva v. Ballentine*, 351 U.S. 570, 580–581 (1956), where the issue was whether the illegitimate son of a copyright owner is one of the owner's "children" within the meaning of the copyright statute, the Supreme Court said: "The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law. … This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern. … We think it proper, therefore, to draw on the ready-made body of state law to define the word 'children' …." (Harlan, J.); *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1326 (5th Cir. 1994) ("[t]he law of family relations has been a sacrosanct enclave, carefully protected against federal intrusion") (abrogated on other grounds by, *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285 (2009)); *see also Yamaha Motor Corp., U.S.A. v. Calhoun*, 566 U.S. 199, 116 S.Ct 619, 627 (1996) (legislative intent would be more closely served by preserving the application of state statutes to deaths within territorial waters where the victims are not persons covered by federal legislation providing a uniformly applied and comprehensive tort recovery regime); *Kamen v. Kemper Financial Servs., Inc.,* 500 U.S. 90 (1991) (federal courts should incorporate forum state law as the federal rule unless the application of the particular state law would frustrate specific federal objectives); *U.S. v. Yazell,* 282 U.S. 341, 352 (1996) ("theory and the precedents of this Court teach us solicitude for state interests, particularly in the field of family and family-property arrangements").  "[T]here is no federal common-law or statutory rule that explicitly prohibits the application of state common-law remedies to cases of wrongful death."  S. Speiser, *Recovery for Wrongful Death*, § 6:61 (4th ed. July 2018 update).

[12]      *But see Knox v. Palestine Liberation Organization,* 442 F. Supp. 2d 62, 74 (S.D.N.Y. 2006) (the court properly applied the estate administration law of the decedent's domicile (Israel) in determining "heirs" under the ATA).  This Court must carefully parse any "precedent" allegedly supporting the PEC's claim that individuals other than widows and children can recover wrongful death damages – did these other courts employ a choice of law analysis in determining who qualifies as a "survivor" or "heir" of the decedent?

decisions resolving the conflict between state estate administration law and the proposed federal common law proposed by the PEC.

In fact, each American *state* has different laws surrounding the determination and distribution of wrongful death proceeds in administering the estates of decedents. In New York, for example, wrongful death damages are distributed *only* to members of a decedent's defined "estate," *i.e.,* immediate family members explicitly described within a statute, in proportion to their financial loss. *See, e.g.,* N.Y. Estate Powers & Trusts Law ("EPTL") § 5-4.4.[13] Where a 9/11 decedent is survived by a spouse and children, for example, parents and siblings of the decedent are denied wrongful death damages under New York law, regardless of any claimed injury of the parents and siblings. *Id.* Also, New York State law gives the court-appointed personal representative of an estate the *exclusive* authority to bring an action for a wrongful death on behalf of a decedent's estate.[14] *Id.*, § 5-4.1. Finally, the New York State Surrogate's Court has jurisdiction over the estate of any decedent who was a domiciliary of New York at the time of his or her death to ensure that the estate administration laws are followed. S*ee* N.Y. Surr. Ct. Proc. Act § 205(1). Thus, awarding money damages to individuals outside the state-prescribed and statutorily-defined "heirs of the estate"[15] (*e.g.,* parents and siblings,

---

[13]   In New Jersey and Connecticut, similar rules exist to limit wrongful death damages to prescribed "heirs" (to protect widows and children) and such actions must be brought by an appointed personal representative. *See* N.J. Stat. Ann. § 2A: 31-4, § 3B: 5-3 and § 2A:31-2; Conn. Gen. Stat. § 45a-448(b), §§ 45a-437, *et. seq.*, and § 52-555.  State wrongful death claims must be brought within two years. *See, e.g.*., EPTL § 5-4.2.

[14]   "It is settled beyond any doubt that under the New York wrongful death statute the right to prosecute, settle and compromise the wrongful death claim lies exclusively with the personal representative of the estate, who brings the suit in his or her representative capacity as statutory trustee for all of the statutory beneficiaries." https://www.kreindler.com/Publications/Aviation-Law-10.shtml.

[15]   In fact, the probate exception to federal jurisdiction prohibits federal courts from hearing cases involving matters related to the probate of wills or administration of estates. *Markham v. Allen*, 326 U.S. 490, 494 (1946). It is a doctrine that has been described as "one of the most mysterious and esoteric branches of the law of federal jurisdiction." *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982). Yet, here, the PEC has urged the Court to give no regard to the interests of the states where the 9/11 decedents were domiciled – states

where the decedent is survived by a wife and children), and allowing individual family members to pursue death claims personally, expressly violates New York State law.[16]  On matters of estate law and wrongful death damages distribution, the laws of the domiciles of the decedents should have been addressed, especially if an award of wrongful death damages is requested on behalf of a family member in direct disregard of state law, state interests and state policy.

Moreover, where a federal statute does not provide guidance on an issue relating to estate administration law (like the ATA), reference must be made to applicable state law (here, the law of the decedent's domicile).[17]  Federal law is interstitial and federal courts often look to the law of the forum state to fill gaps in federal statutes, usually under the general mandate of the Rules of Decision Act.[18]  *See also* footnote 11.

---

left responsible for the future welfare and support of surviving widows and children.  These states are undeniably responsible for administering the estates of decedents in this country and they therefore have a far greater interest in the administration of the decedents' estates than the federal courts.

[16]    A state statute "directly conflicts" with federal law when: (1) compliance with both federal and state regulations is a "physical impossibility," *Florida Lime Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963); *Environmental Encapsulating Corp. v. City of New York*, 855 F.2d 48, 53 (2d Cir. 1988); or (2) the state law "stands as an obstacle" to the "execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 57 (2d Cir. 1984).

[17]    The District Court should determine how the ATA should be applied as a wrongful death remedy where state law seemingly applies and the federal cause of action requires a gap-filler.  When there are no well-established federal policies and no reasonable body of federal law, "as compared to the relative order and clarity of law established in state courts, the common law rule to be applied in federal court is thus uncertain and almost impossible to predict," which "combined with the substantive advantages to be gained by allowing states to formulate their own policies where feasible creates the presumption that state law should be applied." Note, "The Federal Common Law," 82 Harv. L. Rev. 1512, 1519 (1969).

[18]    28 U.S.C. § 1652. The Rules of Decision Act applies to federal question as well as diversity cases, and requires the use of state law in certain cases in which the underlying statute is silent.  *See* Hill, *State Procedural Law in Nondiversity Litigation*, 69 Harv. L. Rev. 66 (1955); *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728 (1979) (noting that state law may be incorporated as the federal rule of decision in federal question cases); *see also Huang v. Lee*, 734 F.Supp. 71 (E.D.N.Y.1990) (holding that the decedent's domicile has the greatest interest in regulating damages).

Thus, both the common law wrongful death claims and the Anti-Terrorism Act (18 U.S.C. § 2333) claims are subject to applicable state law.  This Court should reach this result since the law of the decedent's domicile has a great interest in the outcome of this litigation and the eventual administration of each estate.  Here, assuming that a decedent was domiciled in New York (the case for all of the *Ashton-Burlingame-Dickey* Plaintiffs represented here), New York State law determines the parameters of each wrongful death claim[19] – *viz.*, who is authorized to pursue the death claim and which "heirs" are entitled to recover.  This is true also as to the Anti-Terrorism Act ("ATA") claims simply because the ATA does not explicitly provide answers to these questions, and a federal court should resort to applicable state law to "fill in" the gaps in a federal, statute-created cause of action for money damages as it has done on other federal claims for damages[20]; creating federal common law in such instances,[21] and ignoring otherwise applicable state law, lacks viable precedent.

---

[19]     Again, the probate exception to federal jurisdiction prohibits federal courts from hearing cases involving matters related to the probate of wills or administration of estates.  *Markham v. Allen*, 326 U.S. 490, 494 (1946).  It is a doctrine that has been described as "one of the most mysterious and esoteric branches of the law of federal jurisdiction." *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982).  Yet, here, the PEC fails to give any regard to the interests of the states where the 9/11 decedents were domiciled – states left responsible for the future welfare and support of surviving widows and children.  These states are undeniably responsible for administering the estates of decedents in this country and they therefore have a far greater interest in the administration of the decedents' estates than the federal government.

[20]     When Congress expressly defines a statute's preemptive reach, and the definition provides "a reliable indicium" of congressional intent as to what should be left to state authority, there is a "reasonable inference" that Congress did not intend to preempt matters beyond that reach.  *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288 (1995).

[21]     *See, e.g., Sager v. City of Woodland Park*, 543 F. Supp. 282, 290 (D. Colo. 1982) (rejecting constitutional claim of siblings); *Carter v. City of Emporia*, 543 F. Supp. 354 (D. Kan. 1982) (only heirs may bring wrongful death actions under Kansas law).  For example, courts that have considered the availability of § 1983 wrongful death claims by siblings who do not possess the right to sue under state law have generally refused to recognize a constitutional interest that can be enforced through a § 1983 wrongful death damage suit.  *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1245-48 (7th Cir. 1984); *Sager v. City of Woodland Park*, 543 F. Supp. 282, 290 (D. Colo. 1982); *Sanchez v. Marquez*, 457 F. Supp. 359, 362-63 (D. Colo. 1978); *Brazier v. Cherry*, 293 F.2d 401, 409 (5th Cir. 1961)) ("Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits. Therefore, a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988.") (citations omitted).  A similar result should be reached here.

**"Should the Court *sua sponte* invoke the statute of limitations for claims against the Taliban?" Yes.**

The PI&WD PEC has promoted an "unlimited" statute of limitations as against the Taliban, *i.e.*, they have argued that one wrongful death lawsuit, filed by any family member, protects any subsequent wrongful death lawsuit filed by any other family member of the decedent against the statute of limitations.  *See, e.g.*, ECF MDL#5095 at 1, 5096 at 1 and 5097 at 1; *see also* recent, belated filing by 2,900 plaintiffs seeking to be added to the litigation against the Taliban – MDL ECF#7654, 7657 and 7660.  My clients have objected to this suggestion, contending that a "personal representative" appointed under New York State law (or other domicile-state law) is the *only* individual authorized to represent those individuals expressly within the "estate" of their decedent as defined in N.Y. Estate Powers & Trusts Law § 5-4.4 (and similar state statutes governing other death claims), and that individual must file a timely claim.

The ATA originally contained an explicit four-year statute of limitations.  18 U.S.C. § 2335(a).  On January 3, 2013, Congress extended the statute of limitations for ATA claims to ten years, allowing plaintiffs to bring those claims until January 2, 2019.  Thus, claims filed against the Taliban after January 2, 2019 are undeniably untimely.

Untimely actions, filed by non-heirs under state law, should be dismissed.  This objection has, thus far, not been ruled upon (and thousands of parents and siblings – non-heirs – have been added belatedly to this litigation).  Individuals "outside" the state-defined "estate," cannot claim that they are protected by a wrongful death filing by the "personal representative" appointed by the State of New York, *or a filing by any other family member for that matter*.

The Court has asked counsel to address the question of whether the Court may address this statute of limitations issue *sua sponte*.  In fact, the Court here is reacting to objections filed by plaintiffs with adverse interests, so this Court is not truly acting *sua sponte*.  *Sua sponte* refers

-11-

to action taken by the court without the prompting of the parties.  Here, the Court will be taking action on objections filed by plaintiffs with adverse interests.

Moreover, it is now well-established that a district court has the "inherent power" to dismiss a case *sua sponte* without prompting by an adverse party.  *See, e.g., Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962); [22] *Arizona v. California*, 530 U.S. 392, 412-13 (2000)*; Leonhard v. United States*, 633 F.2d 599, 608, fn. 11 (2d Cir. 1980); *Wright v. Rensselaer Cty Jail,* 771 Fed.Appx. 58, 59-60 (2d Cir. 2019).  These decisions address a district court's power to protect important institutional interests of the court.  While our judicial system generally relies on a contest of adversaries, requiring an assertion and contested resolution of an affirmative defense, a narrow but recognized exception exists when the viability of a subset of plaintiffs' claims implicates the court's power to protect its own important institutional interests.  *See Arizona,* 530 U.S. at 412; *Link,* 370 U.S. at 629-31.  In *Link*, the Supreme Court concluded that a district court possesses the "inherent power" to dismiss a case *sua sponte* for failure to prosecute, explaining that such authority derives from "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  370 U.S. at 630-31.  That is the case here, especially where groups of adverse plaintiffs are now vying for what may be a limited fund of money and thousands of plaintiffs have been belatedly added to this litigation.  "Quite aside from the interests of the individual parties in a lawsuit, a district court has an important interest in keeping its docket from becoming clogged

---

[22]     In *Link, supra,* the Supreme Court noted that courts have always had the power to dismiss for failure to prosecute, and explained "[t]he power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts."  *Id.* at 629-30. This authority is an inherent power "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 630-31.  A level of control over the docket by this Court is desperately needed here.

with dormant cases and in ensuring that a party does not use the court as an instrument of fraud or deceit." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 654 (4th Cir. 2006).[23]

      The Second Circuit has now definitively ruled:

> **The district court has the power to dismiss a complaint sua sponte for failure to state a claim**, *Robins v. Rarback,* 325 F.2d 929 (2d Cir. 1963), *cert. denied,* 379 U.S. 974, 85 S.Ct. 670, 13 L.Ed.2d 565 (1965); *see* 5 C. Wright A. Miller, *Federal Practice and Procedure* § 1357, at 593 (1969). **There appears to be no reason why the same rule should not apply to a dismissal on statute of limitations grounds, at least where, as here, the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.** *See* 10 *id.* § 2719.

*Leonhard v. United States*, 633 F.2d 599, 609, n. 11 (2d Cir. 1980) (emphasis added); *see also Wright v. Rensselaer Cty Jail,* 771 Fed.Appx. 58, 59-60 (2d Cir. 2019) (summary order) ("While untimeliness is an affirmative defense, a district court can sua sponte dismiss untimely claims where the defense is apparent on the face of the complaint." (italics omitted) (citation omitted); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal of complaint as frivolous on statute of limitations grounds); *Walters v. Indus. and Com. Bank of China*, 651 F.3d 280, 293 (2d Cir. 2011) ("district courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where "the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted," *citing Leonhard, supra*); *see also* Fed. R. Civ. P. 16(c)(2) ("*Matters for Consideration.* At any pretrial conference, the court may consider and take appropriate action on the following matters: (A) formulating and simplifying the issues and eliminating frivolous claims or defenses….").[24]

---

[23]   *See also Lassiter v. City of Phila.*, 716 F.3d 53, 55 (3d Cir. 2013) (in raising the statute of limitations *sua sponte*: "Rule 16 of the Federal Rules of Civil Procedure contemplates that a trial court should assume an 'active managerial role' in the litigation process to expedite the efficient disposition of a case. At a Rule 16 conference, a district court 'may consider and take appropriate action' on a broad variety of topics, including 'formulating and simplifying the issues, and eliminating frivolous claims or defenses[.]' Fed.R.Civ.P. 16(c)(2)(A).") (citation omitted).

[24]   This rule should also apply to belated actions filed against the Defendant Islamic Republic of Iran. Any default judgment requested by a plaintiff who filed an action against Iran after January 2, 2019 should be

**CONCLUSION**

The Court should issue a single Order that definitively determines: (1) who has standing/authorization to bring a wrongful death action against the Taliban with due consideration of applicable state law (the state law of the decedent's domicile usually will require the appointment of a "personal representative"), (2) when the wrongful death action must have been filed to satisfy the applicable statute of limitations or laches (to distinguish between "timely" claims and "untimely" claims – two years from date of death for state law claims – by September 11, 2003 – or by January 2, 2019 for ATA claims), and (3) who qualifies as an "heir" (under applicable state law and the ATA).

Dated:  New York, New York
       December 22, 2022

Respectfully submitted,

By: *John F. Schutty*

John F. Schutty, Esq.
(JS2173)
Law Office of John F. Schutty, P.C.
445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (646) 345-1441
Fax: (917) 591-5980
john@johnschutty.com

---

denied and that action should be dismissed.  This rule should also be applied to any wrongful death actions filed against the Kingdom of Saudi Arabia and the Republic of Sudan.  Accordingly, counsel for the latter two defendants should be asked to weigh in on these issues – to both reduce the existing docket congestion and ensure uniformity of results in this MDL litigation.