**VIA ECF**

January 20, 2023

The Honorable Sarah J. Netburn
Thurgood Marshall United States Courthouse
Foley Square, Room 430
New York, NY  10007

RE:   *In re Terrorist Attacks on Sept. 11, 2001*, 03-MDL-1570-GBD-SN

Dear Judge Netburn:

Plaintiffs with claims against Al Rajhi Bank and Al Rajhi Bank submit this joint letter to the Court.

**Plaintiffs' Statement:**   This Court's Order of November 22, 2021 (ECF No. 7378) ("Discovery Order") granted, in significant respects, Plaintiffs' motion to compel as to Al Rajhi Bank ("ARB"). Given ARB's burden claims, however, the Court directed the parties to meet and confer to work out "an acceptable program of discovery based on the parameters of this Order." ECF No. 7378 at 22. Plaintiffs have now conferred with ARB by telephone 13 times and exchanged 11 written communications concerning the discovery process. While progress has resulted from those engagements, the parties have reached impasse on several issues. In addition, because ARB's production has been carried out pursuant to private discussions, there is no meaningful record before the Court concerning what ARB has agreed to do, in fact done, or declined to do. Both issues are properly addressed via a motion to compel, and Plaintiffs submit a discovery conference would be in order prior to any motion practice. Because discussions remain ongoing as to several additional, related areas of potential dispute, Plaintiffs now believe it would be most efficient to complete those discussions before proceeding to motion practice.[1] Briefly, the areas of dispute are as follows:

1. <u>Request No. 4</u>. With respect to Request No. 4, concerning contributions to three charitable organizations, ARB agreed to conduct searches to identify contributions by ARB, certain Al Rajhi family members, and the Suleiman Abdul Aziz Al Rajhi Charitable Foundation. Plaintiffs believe the searches have failed to identify responsive records, likely due to deficiencies in the methodology employed,[2] and that ARB has excluded Al Rajhi family members whose transactions are discoverable. This includes the accounts of a family member with apparent responsibility for Suleiman al Rajhi's "charitable" distributions. Because ARB has represented that it has completed its searches, Plaintiffs submit that the parties have reached impasse on these issues. However, Plaintiffs are agreeable to providing ARB with exemplary evidence of missing contributions so that it can reevaluate its methodology and position. Further, discussions remain ongoing as to additional areas of potential dispute also related to Request No. 4. For example, Plaintiffs have discovered that certain of the charities used accounts held in the name of individuals for their transactions, and have asked ARB to produce records for such accounts. ARB has indicated that it expects to respond to Plaintiffs on that and other areas of potential dispute raised during recent calls in the next week, and Plaintiffs anticipate any follow up discussions can be completed within two weeks thereafter. Plaintiffs believe it would be more efficient to defer motion practice on these issues until the related and follow up discussions

---

[1] Plaintiffs contemplate submitting a proposal to the Court concerning a briefing schedule for the motion to compel and page limitations once those discussions are complete.

[2] Based on the parties' discussions, Plaintiffs understood that ARB could and would identify recipients of funds transferred from ARB's accounts via electronically retrievable information. During a meet and confer on January 10, 2023, ARB described a different methodology for the first time, which it then further elaborated in a letter sent late yesterday afternoon. Plaintiffs have not had the opportunity to consult with subject matter experts about the details disclosed yesterday, but will do so in parallel to the ongoing discussions on related issues.

The Honorable Sarah J. Netburn
January 20, 2023

discussed above are completed.

2. <u>Email</u>. ARB's position as to potentially responsive emails has shifted repeatedly and requires Court oversight. Between November 2021 and September 2022, ARB repeatedly represented that there was no email usage at ARB until 2004. In September of 2022, ARB changed course and advised that there may have been limited email usage during the time period, and in November 2022, it represented that any responsive emails had been produced. In follow up discussions in January 2023, ARB represented that email usage was solely on a departmental (not individual) basis from 1997 through 2001. Plaintiffs asked counsel for ARB to confirm that fact explicitly during that call, which he did. During that call, ARB advised for the first time that emails may have been lost in a 2009 incident. And in a letter provided yesterday, ARB modified its position again, indicating that some (unidentified) individuals did in fact use emails before 2001. ARB's denials as to email usage for 10 months and still shifting and ambiguous explanations about the issue, along with its belated and incomplete disclosure as to the potential loss of emails in 2009, require a motion to establish a clear record and ensure integrity of the discovery process. Further, Plaintiffs have evidence that at least one ARB principal was using email during the relevant period. Although the parties have reached impasse on this issue, Plaintiffs believe it would be more efficient to combine it and the other issues referenced below with other necessary motion practice, once the discussions referenced in point 1 above have concluded.

3. <u>Suleiman al Rajhi's Departure from ARB</u>. This Court's Discovery Order granted Plaintiffs' Request No. 55 concerning Suleiman al Rajhi's departure from ARB. ARB has limited its searches for responsive documents to periods prior to 2004, based on a disingenuous reading of the Court's Order, despite the fact that Suleiman al Rajhi departed in 2007. The fact that Suleiman al Rajhi's removal did not ultimately occur until several years after the September 11th attacks does not make this evidence any less relevant, or justify ARB's effort to avoid discovery on the issue wholesale. In fact, Saudi authorities did not begin cooperating with U.S. officials on counterterrorism issues in any meaningful sense until 2003, and the processes necessary to remove ARB's founder would have taken time.

4. <u>Post-9/11 Investigations and Audits</u>. The Court's Discovery Order further granted Plaintiffs' Request Nos. 47-54 concerning investigations and audits relating to "terrorism." While ARB has produced a limited number of communications with the Saudi Arabian Monetary Authority ("SAMA") concerning accounts of designated individuals, the available record indicates that it has not produced all responsive materials concerning post-9/11 investigations. Just for example, diplomatic cables cited in Plaintiffs' First Amended Complaint at ¶¶ 169-172 refer to an August 2003 audit of ARB conducted by Ernst & Young, which has not been produced.

5. <u>Redactions</u>. ARB has redacted categories of information, based on generalized references to Saudi regulations, that other Saudi defendants, including the Kingdom, have disclosed in this litigation. Certain of this information is important to a full understanding of the evidence. It is ARB's obligation to justify its redactions as to these categories, not Plaintiffs' duty to challenge specific redactions on an individual basis, which would be impossible in any case given the massive scope of the redactions.

6. <u>Communications With the Charities</u>. Concerning the Court's Order granting discovery of ARB's communications with the three charities, ARB proposed searching the know your customer files for those charities. Plaintiffs were skeptical that those files would contain the most relevant communications concerning any "earmarking" of funds or other essential matters within the Second Circuit's mandate, but agreed at ARB's urging to focus on them as a first step. Those files have failed to provide meaningful discovery on the most important issues underpinning the Court's order granting discovery of the communications, and the parties have been unable to reach a solution to the issue.

The Honorable Sarah J. Netburn
January 20, 2023

7. <u>Additional Areas of Potential Dispute</u>. Areas of possible dispute presently identifiable include: (i) additional accounts/files Plaintiffs have indicated should be searched as part of the charity discovery; (ii) concerns Plaintiffs have raised related to a recent production of a small set of communications from unknown files to the charities; (iii) whether ARB will provide pedigree information for its production; (iv) possible disputes arising from follow up discovery; (v) potential disputes as to depositions; and (vi) issues concerning an outstanding subpoena. Plaintiffs propose to address this in due course, if necessary.

**Al Rajhi Bank's Statement:** Plaintiffs rushed to the Court on December 19, 2022 with a unilateral request to file a 25-page motion-to-compel brief on December 30, 2022 on "key discovery issues" for which they contended the Parties were at an "impasse." Pls.' Ltr. 2-3 (Dec. 19, 2022), ECF No. 8806. The Bank objected, noting that Plaintiffs had not met with the Bank since September 2022, had not replied to the Bank's November 8, 2022 letter, and had not even apprised the Bank of which issues were supposedly in dispute. Defs.' Ltr. 3 (Dec. 20, 2023), ECF No. 8810. Only after the Court denied Plaintiffs' request and ordered them to meet and confer with the Bank did Plaintiffs begin to identify the purported disputes. The Parties met and conferred on January 6 and January 10, and exchanged letters on January 17 and January 19. The Parties are continuing the meet-and-confer process and are exchanging information that Plaintiffs acknowledge affects the scope of any discovery dispute.

Now Plaintiffs bring a number of issues to the Court's attention, but the Bank understands that Plaintiffs seek to defer any request to file a motion to compel or for the Court to otherwise resolve any purported discovery disputes. Plaintiffs' erratic conduct causes the Bank to be concerned that Plaintiffs are angling to prolong discovery. Such conduct, however, cannot subsequently justify any request to extend the jurisdictional discovery schedule ordered by the Court. *See* Order 1 (Dec. 22, 2022), ECF No. 8812 ("No further extensions to ARB jurisdictional discovery will be granted.").

Of the issues identified by Plaintiffs, some were raised for the first time (or for the first time in detail) at the January 6 meet and confer. Regarding most of these issues, Plaintiffs' general dissatisfaction with the Bank's production has not crystalized into a specific dispute and does not warrant involving the Court in these issues, namely: (i) (with one exception listed below) the Bank's search for any donations by the Bank or "ARB Principals" to the entities Plaintiffs characterize as "Da'wah organizations"; (ii) any Bank communications with the "Da'wah organizations"; (iii) the Bank's search for email; (iv) any post-9/11 investigations into any Bank involvement with terrorism financing. Regarding the issue of redactions, Plaintiffs have not yet responded to the Bank's explanation of the legal grounds for its tailored redaction of basic Personally Identifiable Information ("PII"), nor have Plaintiffs yet identified any specific prejudice due to the redactions.

The Bank acknowledges that the Parties are at an impasse on certain issues: (i) whether the Bank must search for donations to the "Da'wah organizations" by unidentified "ARB Principals" or by Abdulrahman Al Rajhi, who never held a position with the Bank, and is not an "ARB Principal"; and (ii) whether the Court-ordered relevant period for jurisdictional discovery should be applied to Plaintiffs' Request No. 55 regarding Suleiman Al Rajhi's "departure from, and relinquishment of control over, ARB." As Plaintiffs concede, additional issues that Plaintiffs identified for the first time on January 6 are not ripe for raising with the Court and should be addressed in the ongoing meet-and-confer process.

The Bank also understands that Plaintiffs seek a discovery conference with the Court. Yet Plaintiffs also propose that the Parties continue the meet-and-confer process. Al Rajhi Bank objects to any open-ended or agenda-less discovery conference. The Bank remains committed to managing the

course of discovery through the meet-and-confer process and seeking this Court's assistance or intervention only if truly necessary. *See* Order 1, 2, 22-23 (directing parties to meet and confer on effective discovery program and explaining that asking the Court to "micromanage discovery" would be "less likely to produce an effective discovery program than one negotiated by the parties").

To the extent the Court's assistance is required—whether on the issues currently identified by Plaintiffs or on other, future issues—there is no reason to depart from Your Honor's standard practices for resolving discovery disputes (i.e., each side filing 5-page letter briefs). *See* Rule II.C of Your Honor's Individual Practices in Civil Cases. The Court defined the appropriate scope of jurisdictional discovery following extensive motion-to-compel briefing by the Parties concerning Plaintiffs' document requests to Al Rajhi Bank. *See* Order (Nov. 22, 2021), ECF No. 7378. And the issues now identified by Plaintiffs derive from those same document requests and the Court's November 22, 2021 Order on Plaintiffs' motion to compel. A second, 25-page motion to compel is thus unnecessary. The issues that Plaintiffs assert are in dispute present no unique challenges warranting special treatment. Many can be resolved simply by holding Plaintiffs to this Court's Order on Plaintiffs' first motion to compel.

**Plaintiffs' Response:** Plaintiffs cannot respond here to ARB's argumentative position statement in full, but note that the Court directed the parties to focus on providing summaries of the disputes, and ARB instead spends most of its statement posturing about the meet and confer process. Focusing on its proposals on how to proceed, ARB's efforts to minimize the record before the Court do not serve the interests of the Court or justice. ARB's proposal for five page letter briefs would require serial motions on individual disputes, and require the Court to wade through extensive exhibits without narrative guidance. Its insistence that areas of current disagreement be briefed immediately, without regard for ongoing discussions on additional, related issues, disregards the intersection between the issues. For instance, the scope of any additional searches for charity contributions or emails will be impacted by the discussions concerning searches of accounts of individuals who served as proxies for the charities. There is nothing "erratic" about Plaintiffs' current proposal – the issues of impasse summarized above are those Plaintiffs intended to raise before, but the parties have now discussed additional areas of "potential" dispute (related to newly translated evidence) pursuant to the Court's directive, and those related issues will soon be ripe for the Court's attention as well. As to the redactions, Plaintiffs have identified categories of information that have been redacted improperly, and ARB has refused to revisit them. Finally, Plaintiffs believe a discovery conference is warranted given the complexity of the issues and extent of the off record discussions.

**Al Rajhi Bank's Response:** Plaintiffs' position ignores their own lack of diligence. By May 2022, the Bank had produced 13,813 pages. It made additional productions in June 2022 and again in July 2022, the deadline for substantial completion. Yet Plaintiffs did not request any meet and confer until late September. The Parties met and conferred on September 26, 2022. Plaintiffs' followed up with a letter on October 18, 2022, to which the Bank replied on November 8, 2022. But Plaintiffs made no further effort to follow up until the Court-directed meet-and-confers on January 6 and 10, 2023. And, as Plaintiffs acknowledge, the meet-and-confer process remains ongoing. Indeed, Plaintiffs' position at least twice references information supposedly in Plaintiffs' possession that they have never made known to the Bank before. The Bank disagrees with Plaintiffs' characterizations of the issues in dispute, and reserves the right to clarify or supplement its positions if and when Plaintiffs bring these issues to the Court.

**1. Request No. 4:** The Bank has searched for and produced records of payments to the "Da'wah organizations" from any accounts of Sulaiman Al Rajhi, Saleh Al Rajhi, Abdullah Al Rajhi, the

4

The Honorable Sarah J. Netburn
January 20, 2023

Sulaiman Al Rajhi Charitable Foundation, and from the Bank. As consistently represented, the Bank conducted this search on its electronically retrievable records. Plaintiffs raised no concerns with the Bank's methodology until January 6. Individuals that never held a position at the Bank are not covered by this Court's Order granting discovery into allegations of support from the Bank's "high-ranking executives." Nov. 2021 Order 9. Nor does the Court's Order require the Bank to search for records of unnamed "family members." Plaintiffs now allude to an undisclosed individual "with apparent responsibility for Suleiman al Rajhi's 'charitable' distributions." If Plaintiffs provide information on allegedly missing transactions, the Bank can consider focusing and supplementing its search.

**2. Email:** The Bank informed Plaintiffs on a September 2022 call, and again in a November 2022 letter, that while email was not in use throughout the Bank during the relevant period, the Bank determined that some individuals had email accounts. The Bank also informed Plaintiffs that it was continuing its search for any relevant documents, including email. Plaintiffs did not respond or otherwise raise this issue until January 6. On January 10, counsel for the Bank described the general rollout of email at the Bank, and explained that the Bank experienced a 2009 crash of its email archive system that rendered some emails unrecoverable. The Bank has collected archived email and attachments from the period of 1998 to 2004, searched this collection, and produced any responsive documents. Plaintiffs have not followed up. Plaintiffs' new revelation that an unidentified ARB principal used email at some time during the relevant period exemplifies Plaintiffs' dilatory tactics.

**3. Suleiman Al Rajhi Departure:** The relevant period for Request No. 55 is January 1, 1998 to December 31, 2002. *See* Nov. 2021 Order 8. Suleiman Al Rajhi stepped down as managing director of the Bank in 2008, and as Chairman of the Board of the Bank in 2014. Nothing in the Court's Order supports a search for documents dated as late as 2008, much less 2014. Plaintiffs' speculative leap that "the processes necessary to remove" Suleiman Al Rajhi "would have taken time," i.e., over a decade, merely evidences the irrelevance of his departure to Plaintiffs' jurisdictional allegations.

**4. Post-9/11 Investigation Requests:** The Bank searched for and produced the responsive documents that it found, including numerous communications with SAMA in the weeks and months following 9/11. These communications show the Bank's compliance with SAMA's directions to Saudi banks to provide information and take certain actions with respect to specific accounts, including dozens of accounts of interest to U.S. authorities. Plaintiffs have not produced any purported "diplomatic cables" to help the Bank focus and possibly supplement its search.

**5. Redactions:** The Bank has redacted basic PII in keeping with relevant Saudi laws and regulations, which the Bank has identified to Plaintiffs, applicable to banks. Under these rules, PII includes, among other things, account numbers, bank-customer identification numbers, personal national identification numbers, individuals' addresses and contact information, and passport information. Account numbers have been only partially redacted to facilitate the tracing of any funds flow. The Bank has offered to consider specific requests for additional information, but Plaintiffs have not made any.

**6. Communications with "Da'wah Organizations":** The Court rejected Plaintiffs' specific request for all communications with the "Da'wah organizations" as "overbroad," "disproportionate to the needs of this dispute," and "likely to reveal vast amounts of superfluous information." Nov. 2021 Order 9. Nonetheless, the Bank produced the entire contents of the "Customer Information Files" for each of the named charities for which the Bank held accounts. Those files include customer correspondence, in addition to know-your-customer information. There is no separate central repository for correspondence with the "Da'wah organizations." Plaintiffs' dissatisfaction with the content of these files is not a basis for dispute.

The Honorable Sarah J. Netburn
January 20, 2023

Respectfully submitted,

| | |
|---|---|
| /s/ *Sean P. Carter* | /s/ *Nicole Erb* |
| Sean P. Carter<br>COZEN O'CONNOR | Christopher M. Curran<br>Nicole Erb<br>Matthew S. Leddicotte<br>Reuben J. Sequeira<br>WHITE & CASE LLP |
| *On behalf of the Plaintiffs' Executive Committees* | *Counsel for Al Rajhi Bank* |

cc: MDL Counsel of Record (via ECF)

LEGAL\61169924\1

6