UNITED STATES DISTRICT COURT
DISTRICT OF SOUTHERN NEW YORK

--------------------------------------------------------X

| | |
|---|---|
| In Re Petition of the United States for a Grand Jury Disclosure Order in Connection with *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (S.D.N.Y.) (GBD) (SN) | **Petition for Disclosure Order** |

--------------------------------------------------------X

The United States of America, by its attorney, Damian Williams, United States Attorney for the District of Southern New York, respectfully moves this Court pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(i) for an order authorizing public disclosure of certain grand jury matters in connection with the multidistrict litigation pending in the Southern District of New York, *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (S.D.N.Y.) (GBD)(SN).   In support of its Application the Government respectfully submits the following facts and authorities:

**1. *The Terrorist Attacks Litigation*.**   The plaintiffs in this multidistrict litigation, which include the families of victims of the terrorist attacks on September 11, 2001, seek to hold multiple defendants liable for allegedly financing, sponsoring, conspiring to sponsor, aiding and abetting, or otherwise providing material support to Osama bin Laden and al Qaeda.   Certain of the plaintiffs have brought claims against the Kingdom of Saudi Arabia, alleging that its agents and employees knowingly assisted certain of the hijackers.   *See In re Terrorist Attacks on September 11, 2001*, 298 F. Supp. 3d 631, 632 (S.D.N.Y. 2018).   Specifically, the plaintiffs allege that two individuals, Fahad al Thumairy, the imam at a Saudi-funded mosque and an accredited Saudi diplomat, and/or Omar al Bayoumi, who had been employed by Saudi Arabia and seconded by the Saudi government to work at Dallah Avco Arabia Company, knowingly provided assistance to two of the 9/11 hijackers, Nawaf al Hazmi and Khalid al Mihdhar, when they first arrived in the United States, including finding them an apartment, co-signing a lease, helping open a bank

account, providing them with use of Bayoumi's cell phone, and tasking others to help them enroll in English language and flight schools. *Id.* at 649-50.

The Kingdom of Saudi Arabia ("Saudi Arabia") has raised a defense of sovereign immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et seq. The district court originally granted Saudi Arabia's motion to dismiss on this basis. *In re Terrorist Attacks on September 11, 2001*, 134 F. Supp. 3d 774, 779–87 (S.D.N.Y. 2015). Plaintiffs appealed that decision to the Second Circuit Court of Appeals. *In re Terrorist Attacks*, 298 F. Supp. 3d at 639. While that appeal was pending, Congress enacted the Justice Against Sponsors of Terrorism Act ("JASTA"), 130 Stat. 852 (2016). In light of the enactment of JASTA, the parties to the appeal jointly requested that the Second Circuit vacate the district court's decision and remand for further proceedings. *In re Terrorist Attacks*, 298 F. Supp. 3d at 639. On remand, Saudi Arabia renewed its motion to dismiss on sovereign immunity grounds. *Id.* Plaintiffs opposed the motion and sought leave to conduct jurisdictional discovery. *Id.* at 639-40.

The district court held that "Plaintiffs' allegations . . . narrowly articulate a reasonable basis for this Court to assume jurisdiction under JASTA over Plaintiffs' claims against Saudi Arabia" and thus exercised its discretion to allow Plaintiffs to conduct "limited jurisdictional discovery." *Id.* at 640. The district court held that such discovery "is to be conducted under Magistrate Judge Sarah Netburn's supervision," *id.*, and shall focus on the allegations that Thumairy, Bayoumi, and their subagents took actions to assist Hazmi and Midhar at the direction of more senior Saudi officials, *id.* at 651.

**2. The Grand Jury Material.**   On April 6, 2018, the Plaintiffs submitted a *Touhy* request to the FBI, pursuant to 28 C.F.R. § 16.21-16.29, and a subpoena pursuant to Federal Rule of Civil Procedure 45, seeking the production of certain records relating to Bayoumi, Thumairy, and others. The FBI determined that it had records responsive to the *Touhy* request and subpoena.   Certain of the records it identified as responsive had been obtained by federal grand jury subpoenas issued in the course of the investigation of the 9/11 terrorist attacks.   Accordingly, pursuant to Rule 6(e)(3)(G), the United States filed petitions for disclosure of grand jury information with the district courts in the four judicial districts in which the grand jury subpoenas were potentially issued:   the District of New Jersey, the Eastern District of Virginia, and the Central and Southern Districts of California.   Those courts issued orders transferring the petitions to this Court.   On October 7, 2019, this Court issued an order granting the petitions on the basis of the plaintiffs' showing of particularized need and authorizing the disclosure of specific grand jury information to counsel for the relevant parties in the *Terrorist Attacks* litigation subject to the Privacy Act Order and Protective Order for FBI Documents entered on November 14, 2018, ECF No. 4255 (the "FBI Protective Order").   (ECF No. 5193).   In subsequent orders dated March 22, 2021, and June 8, 2021, the Court authorized the FBI to produce to the parties additional information regarding specific banking, financial, credit and phone records obtained by federal grand jury subpoenas.   (ECF Nos. 5193, 6672, 6854).   Each of these orders authorized disclosure, however, only to qualified persons under the terms FBI Protective Order.   (ECF Nos. 5193, 6672, 6854).

On September 3, 2021, President Biden signed an Executive Order on Declassification Review of Certain Documents Concerning the Terrorist Attacks of September 11, 2001 (the "Executive Order" or "E.O.").   The Executive Order directed the Attorney General and the heads

3

of any other executive departments and agencies that originated relevant information to complete declassification reviews of certain records relating to the United States Government's investigation of the 9/11 terrorist attacks.   E.O. § 2.   The E.O. directed that a declassification review of "records that previously were withheld as classified, in full or in part, during discovery in In re Terrorist Attacks on September 11, 2001" and the "2021 FBI electronic communication closing the subfile investigation" be completed by November 2, 2021.   E.O. § 2(b). The E.O. further required that the FBI conduct a declassification review of additional categories of records, E.O. §§ 2(c), 2(d).   The E.O. required the Attorney General to "make publicly available information declassified as a result of the declassification reviews completed under section 2 of this order, except for information the disclosure of which would materially impair confidential executive branch deliberations," E.O. § 5, "consistent with applicable law, including the Privacy Act." E.O. § 6(b).

In connection with its review under the Executive Order, the FBI applied for authorization to release publicly certain (but not all) of the grand jury information that the Court had previously authorized for disclosure subject to the FBI Protective Order.   (ECF No. 7102).   In an order dated September 10, 2021, the Court granted that application.   (ECF No. 7107).   Additionally, on March 2, 2022, and March 22, 2022, the Court authorized the disclosure of grand jury information contained in documents reviewed by the FBI under the Executive Order.   The Court determined that this information could be disclosed publicly, and need not be subject to the terms of the FBI Protective Order, but instead could be disclosed "subject to any redactions required by the Privacy Act."   (ECF Nos. 7718, 7788).

As a result of this procedural history, grand jury information that the Court has authorized for release in connection with this litigation is not subject to the FBI Protective Order if it was released under the E.O., but otherwise remains subject to the terms of that order.   There is no substantive difference between the types of grand jury information (largely phone, banking and financial records obtained pursuant to grand jury subpoenas) that are currently subject to the FBI Protective Order, and those that are not.   Moreover, as a practical matter, this inconsistency has proven problematic as the parties and the FBI engage in review of documents such as expert reports and motion papers to determine what information must be redacted under the terms of the FBI Protective Order.

**4. Authorization Requested.** Based on the foregoing, the United States seeks modification of the Orders dated October 7, 2019, March 22, 2021, and June 8, 2021 (ECF Nos. 5193, 6672, 6854), to eliminate the requirement that the grand jury information authorized for release in those Orders be disclosed only to qualified persons subject to the FBI Protective Order, and permit public disclosure of such information, subject to any appropriate redactions including those required by the Privacy Act.   The United States does not see a continued need to maintain grand jury secrecy with respect to the aforementioned information.

**4. Prior Requests.** No prior request for the relief sought herein has been made.

WHEREFORE, I respectfully request that the Court determine if public disclosure of the grand jury material specifically referenced herein should be authorized pursuant to Rule 6(e)(3)(E)(i).

Dated: New York, New York
February 2, 2023

DAMIAM WILLIAMS
United States Attorney
Southern District of New York

By:      */s/ Jeannette Vargas*
SARAH S. NORMAND
JEANNETTE A. VARGAS
Assistant United States Attorneys
(212) 637-2709/2678