**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br><br>ECF Case |

This document relates to:  *All Consolidated Amended Complaint Plaintiffs at ECF No. 3463*

**<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO AMEND
THE COURT'S FEBRUARY 7, 2023 ORDER TO CERTIFY CONTROLLING
QUESTIONS OF LAW FOR INTERLOCUTORY APPEAL UNDER
28 U.S.C. § 1292(b) AND TO STAY FURTHER PROCEEDINGS
AS TO THE KINGDOM OF SAUDI ARABIA</u>**

February 17, 2023

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.   THE ELEMENTS OF § 1292(b) ARE MET AND CERTIFYING THE
      COURT'S LEGAL RULINGS FOR AN INTERLOCUTORY APPEAL WILL
      FURTHER THE ADMINISTRATION OF JUSTICE IN THIS COMPLEX
      LITIGATION.................................................................................................... 2

      A.    The Opinion Involves Controlling Questions Of Law............................................ 4

      B.    There Are Substantial Grounds For Differences Of Opinion. ............................... 6

      C.    An Immediate Appeal Will Materially Advance The Termination Of This
            Litigation Within The Meaning Of § 1292(b). ..................................................... 8

III.  THE COURT SHOULD AMEND THE FEBRUARY 7 ORDER AND STAY
      FURTHER PROCEEDINGS IN THIS COURT TO EFFECTUATE THE
      PURPOSES OF THE § 1292(b) APPEAL ...................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahrenholtz v. Bd. of Trustees of the Univ. of Ill.*,
   219 F.3d 674 (7th Cir. 2000) ............................................................................3, 4

*APCC Servs. Inc. v. AT&T Corp.*,
   297 F. Supp. 2d 101 (D.D.C. 2003) ...................................................................5

*Batalla Vidal v. Nielson*,
   2018 WL 333515 (E.D.N.Y. Jan. 8, 2018) ........................................................3

*Capitol Recs., LLC v. Vimeo, LLC*,
   972 F. Supp. 2d 537 (S.D.N.Y. 2013).............................................................2, 6

*Chan v. City of New York*,
   803 F. Supp. 710 (S.D.N.Y. 1992) .....................................................................8

*Consub Delaware LLC v. Schahin Engenharia Limitada*,
   476 F. Supp. 2d 305 (S.D.N.Y. 2007)................................................................4

*Coopers & Lybrand v. Livesay*,
   437 U.S. 463 (1978).............................................................................................5

*Davis v. Musler*,
   713 F.2d 907 (2d Cir. 1983)..............................................................................13

*In re Duplan Corp.*,
   591 F.2d 139 (2d Cir. 1978)............................................................................5, 9

*Ehrenfeld v. Bin Mahfouz*,
   9 N.Y.3d 501, 881 N.E.2d 830 (N.Y. 2007) ......................................................4

*Ehrenfeld v. Bin Mahfouz*,
   9 N.Y.3d 838, 872 N.E.2d 866 (N.Y. 2007) ......................................................4

*Ehrenfeld v. Mahfouz*,
   489 F.3d 542, 547 (2d Cir 2007)........................................................................4

*Gambale v. Deutsche Bank AG*,
   377 F.3d 133, 140 (2d Cir. 2004).....................................................................10

*Glatt v. Fox Searchlight Pictures Inc.*,
   2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013)....................................................7

*Hartford Fire Ins. Co. v. Queens Cnty. Carting, Inc.*,
2022 WL 254367 (S.D.N.Y. Jan. 27, 2022) ...........................................................13

*Honickman* v. *BLOM Bank SAL*,
6 F.4th 487 (2d Cir. 2021) ...................................................................... *passim*

*Kaplan* v. *Lebanese Canadian Bank, SAL*,
999 F. 3d 842 (2d Cir. 2021)...........................................................................1, 4, 9

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in
Amministrazione Straordinaria*,
921 F.2d 21 (2d Cir. 1990)............................................................................5, 6, 7

*Koehler v. Bank of Bermuda Ltd.*,
101 F.3d 863 (2d Cir. 1996)...............................................................................2, 9

*Laurent v. PriceWaterhouseCooper LLP*,
2007 WL 2363616 (S.D.N.Y. Aug. 17, 2007)........................................................2

*Linde v. Arab Bank, PLC*,
882 F.3d 314 (2d Cir. 2018)............................................................................6, 11

*In re Lloyd's Am. Trust Fund Litig.*,
1997 WL 458739 (S.D.N.Y. Aug. 12, 1997)......................................................9, 11

*Mei Xing Yu v. Hasaki Rest., Inc.*,
874 F.3d 94 (2d Cir. 2017).....................................................................................2

*Nat'l Veterans Legal Servs. Program v. United States*,
321 F. Supp. 3d 150 (D.D.C. 2018) ......................................................................4

*Pen Am. Ctr., Inc. v. Trump*,
2020 WL 5836419 (S.D.N.Y. Oct. 1, 2020) ..........................................................3

*Republic of Colombia v Diageo N. Am. Inc.*,
619 F. Supp. 2d 7 (E.D.N.Y. 2007) .......................................................................2

*SEC v. Credit Bancorp, Ltd.*,
103 F. Supp. 2d 223 (S.D.N.Y. 2000)....................................................................8

*Tantaros v. Fox News Network, LLC*,
465 F. Supp. 3d 385 (S.D.N.Y. 2020)................................................................3, 8

*United States v. Mann*,
291 F. Supp. 268 (S.D.N.Y. 1968) ......................................................................13

**Statutes and Other Authorities**

28 U.S.C. § 1292(b) ............................................................................... *passim*

28 U.S.C. § 1292(c) ........................................................................................................1

28 U.S.C. § 1605B ...................................................................................................10, 11

Fed. R. Civ. P. 54(b) ............................................................................................. *passim*

Fed. R. App. P. 5 ...........................................................................................................13

Justice Against Sponsors of Terrorism Act ("JASTA"), Pub. L. No. 114-222, 130
  Stat. 852 (Sept. 28, 2016).................................................................................. *passim*

I.       **INTRODUCTION**

Pursuant to 28 U.S.C. § 1292(b), all Consolidated Amended Complaint Plaintiffs with claims against the Kingdom of Saudi Arabia at ECF No. 3463 ("Plaintiffs"), respectfully submit this memorandum of law in support of their motion to amend the Court's February 7, 2023 Memorandum Decision and Order ("February 7 Order") (ECF No. 8862), to certify for interlocutory appeal this Court's order that JASTA's aiding and abetting and conspiracy causes of action are not available in cases against foreign state defendants, and its associated determination that the Second Circuit Court of Appeals' decisions in *Kaplan* v. *Lebanese Canadian Bank, SAL*, 999 F. 3d 842, 855–56 (2d Cir. 2021) and *Honickman* v. *BLOM Bank SAL*, 6 F.4th 487, 494–96 (2d Cir. 2021) are inapposite to Plaintiffs' claims against the Kingdom of Saudi Arabia ("Kingdom" or "Saudi Arabia").  Plaintiffs further move this Court to stay further proceedings as to the Kingdom during the interlocutory appeal process.

The purpose of this motion is not to re-litigate before this Court the legal issues addressed in the Court's February 7 Order concerning the availability of JASTA's secondary liability cause of action as to Saudi Arabia, or the Court's related determinations concerning the legal framework governing JASTA's exception to sovereign immunity.  Instead, Plaintiffs respectfully request that the Court amend the February 7 Order to include the necessary statement to permit Plaintiffs to seek an immediate appeal of that ruling that JASTA's secondary liability cause of action is unavailable against foreign states under 28 U.S.C. § 1292(b).  As discussed below, the issue proposed for certification satisfies the conditions identified in § 1292(c) for interlocutory appeal.  Namely, the Court's February 7 Order addresses controlling questions of pure law concerning the basic framework to be applied to Plaintiffs' claims against Saudi Arabia under JASTA, and there are substantial grounds for differences of opinion concerning the rulings on those issues, which have never been considered by the Second Circuit Court of Appeals (or any

other Court of Appeals).  An immediate appeal to the Second Circuit is likely to materially

advance the ultimate termination of this important litigation concerning responsibility for the

September 11th attacks.  Indeed, a ruling from the Second Circuit that JASTA's aiding and

abetting and conspiracy causes of action are available against foreign states would effectively

resolve the jurisdictional issue in Plaintiffs' favor.  Moreover, the circumstances in which these

questions of first impression arise are extraordinary – these issues arise in the context of this

singularly complex MDL proceeding, and concern the very nature of the remedies Congress

established for the specific benefit of the September 11th community when it enacted JASTA.

**II.    THE ELEMENTS OF § 1292(B) ARE MET AND CERTIFYING THE COURT'S
LEGAL RULINGS FOR AN INTERLOCUTORY APPEAL WILL FURTHER
THE ADMINISTRATION OF JUSTICE IN THIS COMPLEX LITIGATION**

Although appellate review ordinarily must await entry of a final judgment, district courts

possess the discretion to allow a party to appeal a non-final order under 28 U.S.C. § 1292(b).

*See Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996).  Certification of an

order for interlocutory appeal is appropriate when three conditions are met:  (1) the order

"involves a controlling question of law;" (2) a "substantial ground for difference of opinion"

concerning the ruling exists; and (3) an immediate appeal "may materially advance the ultimate

termination of the litigation."  28 U.S.C. § 1292(b); *Mei Xing Yu v. Hasaki Rest., Inc.*, 874 F.3d

94, 98 (2d Cir. 2017) (district court judge "sensibly recognized" merits of interlocutory appeal

when conditions met); *Laurent v. PriceWaterhouseCooper LLP*, No. 06 CV 2280 (GBD), 2007

WL 2363616, at *1 (S.D.N.Y. Aug. 17, 2007) (granting leave for 28 U.S.C. § 1292(b)

interlocutory appeal) (Daniels, J.); *Republic of Colombia v Diageo N. Am. Inc.*, 619 F. Supp. 2d

7, 9 (E.D.N.Y. 2007) (granting a request to allow interlocutory review involving foreign

sovereign); *Capitol Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013)

(granting a request to allow interlocutory review).  Here, the three elements Congress specified

in § 1292(b) are clearly satisfied, and allowing the parties to present the legal issues addressed in the Court's February 7 Order to the Second Circuit now will promote judicial economy and efficiency. *See Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385, 390 (S.D.N.Y. 2020) (accepting an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) because of potential to resolve jurisdictional question and conserve judicial resources); *Pen Am. Ctr., Inc. v. Trump*, No. 18 CIV. 9433 (LGS), 2020 WL 5836419, at *2 (S.D.N.Y. Oct. 1, 2020) ("The Second Circuit has repeatedly singled out subject matter jurisdiction as a prototypical 'controlling question of law' that is appropriately taken up for interlocutory review") (citations omitted); *Batalla Vidal v. Nielson*, No. 16CV4756NGGJO, 2018 WL 333515, at *1 (E.D.N.Y. Jan. 8, 2018); *see also Ahrenholtz v. Bd. of Trustees of the Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000) (finding that it is the "duty" of district and appellate courts to allow an immediate appeal when the statutory criteria are met).

Immediate review is especially appropriate because the Court's February 7 Order adopts a narrow construction of JASTA, a law Congress enacted for the express purpose of providing the September 11th community "the broadest possible basis … to seek relief against … foreign countries, wherever acting …, that have provided material support, directly or indirectly, to foreign organizations or persons that engage in terrorist activities against the United States." JASTA § 2(b). Pursuant to the February 7 Order's construction, the September 11th Plaintiffs are precluded from advancing claims and theories under JASTA that Saudi Arabia aided and abetted al Qaeda, including those alleging that the Kingdom channeled essential funding and resources through charity intermediaries, and that additional Saudi agents and officials supported Osama bin Laden's organization through government platforms. More than 20 years have already passed since the September 11th attacks, and the September 11th Plaintiffs would be

3

severely prejudiced by any further delay in securing access to rights and remedies Congress afforded them through JASTA.

A.      **The Opinion Involves Controlling Questions Of Law.**

The Court's rulings that JASTA's aiding and abetting and conspiracy causes of action are unavailable in cases against foreign states, and consequent finding that the Second Circuit's decisions in *Kaplan* and *Honickman* are inapposite to the claims against Saudi Arabia, constitute controlling questions of law, which satisfy § 1292(b)'s first element.  Indeed, the Court's rulings on those points involve threshold questions of statutory interpretation, turning on the definition of the word "person" in JASTA's aiding and abetting/conspiracy provision and whether Congress deliberately crafted that definition to exclude foreign states.  Those holdings present "question[s] of law" within the meaning of § 1292(b) because they involve "'pure'" question[s] of law that the reviewing court could decide quickly and cleanly without having to study the record."  *See Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007), *aff'd*, 543 F.3d 104 (2d Cir. 2008); *see also Ahrenholtz*, 219 F.3d at 675 (a "question of law" as used in § 1292(b) "has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine"); *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 547 (2d Cir 2007), *certified question accepted sub nom.*, *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 838, 872 N.E.2d 866 (N.Y. 2007), *and certified question answered sub nom.*, *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 881 N.E.2d 830 (N.Y. 2007) (question of statutory interpretation is subject to *de novo* review); *see also Nat'l Veterans Legal Servs. Program v. United States*, 321 F. Supp. 3d 150, 155 (D.D.C. 2018) (granting a petition for interlocutory appeal on an issue of statutory construction).

The issues of statutory interpretation addressed in the Court's February 7 Order are also "controlling," because an appellate ruling reversing the district court's findings would effectively

resolve the jurisdictional inquiry and, at a minimum, significantly impact the outcome and course

of the September 11th litigation against Saudi Arabia and other sovereign defendants.  As the

Second Circuit has explained, the "resolution of an issue need not necessarily terminate an action

in order to be controlling."  *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave*

*Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) (internal citation

omitted).  Instead, it is sufficient that the resolution of the question "may importantly affect the

conduct of an action."  *In re Duplan Corp.*, 591 F.2d 139, 148, n.11 (2d Cir. 1978) (citing

*Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475, n.27 (1978)).  Thus, even a procedural

determination that significantly impacts the action, but is not dispositive, can be considered a

controlling issue, *id.*, if it would save the court and litigants time and expense.  *APCC Servs. Inc.*

*v. AT&T Corp.*, 297 F. Supp. 2d 101, 105 (D.D.C. 2003).

 Here, the Court's rulings address the foundational question of the scope of claims and

theories Plaintiffs are entitled to pursue against Saudi Arabia under JASTA, and whether their

JASTA aiding and abetting and conspiracy theories can serve to satisfy JASTA's exception to

foreign sovereign immunity.  *See* February 7 Order at 9-21.  These matters of statutory

interpretation do not merely impact the action, they fundamentally define what the case is, for

purposes of both the subject matter jurisdiction inquiry and the merits.  *Id.*  For the reasons

discussed in Plaintiffs' underlying Rule 54(b) Motion and below, a ruling by the Second Circuit

that JASTA does authorize aiding and abetting and conspiracy claims against a foreign state

would redefine the scope of the litigation against the Kingdom and effectively resolve the

jurisdictional issue in Plaintiffs' favor.  *See infra* at 8-12; ECF No. 7432, Plaintiffs'

Memorandum of Law in Support of Motion to Revise This Court's March 28, 2018 Order (ECF

No. 3946) (hereinafter "54(b) Brief"); ECF No. 7740, Plaintiffs' Reply Memorandum of Law in

Support of Their Motion to Revise This Court's March 28, 2018 Order (ECF No. 3946)

(hereinafter "54(b) Reply").  And even as to the limited inquiry authorized by the Court's March

28, 2018 Order concerning the Saudi support network in the United States, the resolution of the

questions of law addressed in the Court's February 7 Order will materially inform the legal

standards this Court must apply in evaluating the facts and evidence, for purposes of the

jurisdictional inquiry.  *See infra* at 8-12; February 7 Order at 20-21 (rejecting JASTA aiding and

abetting theories and explaining that the Court's March 28, 2018 Memorandum Decision and

Order authorized limited jurisdictional discovery against Defendant Saudi Arabia *for primary*

*liability claims* under JASTA); *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329-30 (2d Cir. 2018).

(discussing different standards for Section 2339B and ATA secondary liability); *Honickman*, 6

F.4th at 498–99 (same).

For all of these reasons and those discussed in section II.C. below, the Court's

determinations concerning the interpretation and application of JASTA are controlling within the

meaning of § 1292(b).

### B.    There Are Substantial Grounds For Differences Of Opinion.

There also are substantial grounds for disagreement concerning the Court's rulings with

respect to JASTA's interpretation and application, and whether aiding and abetting and

conspiracy claims satisfying § 2333(d) of the ATA serve to establish jurisdiction under JASTA's

immunity exception.  Substantial grounds for differences of opinion exist where "(1) there is

conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression

for the Second Circuit."  *Capitol Recs.,* 972 F. Supp. 2d at 551 (S.D.N.Y. 2013) (citation

omitted); *Klinghoffer*, 921 F.2d at 25 (holding that "issues [that] are difficult and of first

impression" are appropriate for review under § 1292(b)).  Here, this requirement is plainly

satisfied.

Initially, this Court's holdings that JASTA's aiding and abetting and conspiracy remedies are unavailable against foreign states, February 7 Order at 12-19, and concerning the interplay between JASTA's immunity exception and the ATA's secondary-liability provision, *id.* at 20-21, involve complex matters of statutory construction that neither the Second Circuit nor any other Court of Appeals has had occasion to address.  In fact, no federal appellate court has had occasion to consider JASTA in the context of a claim against a foreign state.  These issues therefore satisfy the "substantial grounds for difference of opinion" requirement because they involve difficult matters of first impression. *Klinghoffer*, 921 F.2d at 25.

Further, these questions have already produced directly conflicting decisions in this MDL, making all the more clear that substantial grounds for differences of opinion exist. *See Glatt v. Fox Searchlight Pictures Inc.*, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013) ("[I]ntra-district split and decisions from other circuits show a substantial basis exists for difference of opinion.").  In conflict with this Court's Order, Magistrate Judge Netburn reached contrary rulings on these precise legal questions in her Report and Recommendation as to Sudan, concluding that JASTA "makes foreign states secondarily liable for acts of international terrorism."  ECF No. 7942, Report at 42.  In particular, Judge Netburn rejected the argument jointly raised by Saudi Arabia and Sudan and endorsed by this Court's Order, that JASTA's definition of "person" renders its aiding and abetting and conspiracy provision inapplicable to foreign states, holding that the "retort lies in the very first line of the Dictionary Act," which clarifies that its definitional list does not exclude foreign states where the "context indicates otherwise." *Id.*  Citing Supreme Court authority holding that foreign states are "persons" in certain statutory contexts, Judge Netburn found that "both the text and purpose of [JASTA] demonstrate that Congress intended 'person' to include foreign sovereigns." *Id.* at 43.  Judge

Netburn further held that the remedial "purpose and policy of both JASTA and the ATA further show that 'person' includes foreign states."[1]  *Id.*

Given both the novel nature of these issues of first impression and the conflicting rulings in this MDL on those precise questions, § 1292(b)'s requirement that there be "reasonable grounds for differences of opinion" is readily met here.  *See, e.g.*, *Chan v. City of New York*, 803 F. Supp. 710, 733 (S.D.N.Y. 1992) (reasonable grounds for difference of opinion standard met when a party seeking certification shows that the conclusions reached by the district court are "by no means the only reasonable conclusions that an impartial arbiter could reach").

### C.  An Immediate Appeal Will Materially Advance The Termination Of This Litigation Within The Meaning Of § 1292(b).

An immediate appeal will materially advance the termination of this litigation within the meaning of § 1292(b), because a ruling from the Second Circuit reversing the rulings at issue will effectively resolve the jurisdictional dispute and avoid protracted and piecemeal litigation pursuant to erroneous legal standards.  This final prong of § 1292(b) is closely tied to the first, and does not require that a reversal on appeal would dispose of the litigation.  Instead, this element focuses on the "institutional efficiency of both the district court and the appellate court," *Tantaros*, 465 F. Supp. 3d at 392, because "efficiency of the federal court system is among the chief concerns underlying Section 1292(b)."  *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223,

---

[1] During the Congressional floor debates preceding the vote to override the President's veto, numerous sponsors and members expressed their understanding that JASTA imposed aiding and abetting liability on foreign states, and no member expressed the contrary view.  *See* 162 Cong. Rec. 12,170 (2016) (Congress designed Section 1605B to ensure "that foreign states may be brought to justice for aiding and abetting acts of international terrorism that occur on American soil") (Rep. Nadler, a leading House co-sponsor of JASTA); *id.* at 13,913 (2016) (JASTA subjects a foreign state to suit if it "aids and abets from outside the United States") (Rep. Goodlatte); *id.* at 13,809 (JASTA designed "to make sure Saudi Arabia or any other country" is subject to suit "if they aid and abet terrorism") (Sen. Schumer); *id.* at 13,803 (JASTA ensures courts will determine whether "the Saudi Government . . . aided and abetted one of the most massive crimes") (Sen. Blumenthal); *id.* at 6093 ("I want to make clear beyond a shadow of a doubt that every entity, including foreign states, will be held accountable if they are found to be sponsors of the heinous act of 9/11," and JASTA addresses "[t]he fact that some foreign governments may have aided and abetted terrorism" leading to the attacks) (Sen. Schumer).

226 (S.D.N.Y. 2000).  Thus, interlocutory review is appropriate "where an intermediate appeal may avoid protracted litigation."  *Koehler*, 101 F.3d at 865-66.  "[T]he critical requirement is that (an interlocutory appeal) have the potential for substantially accelerating the disposition of the litigation."  *In re Duplan Corp.*, 591 F.2d at 148, n.11.  And "[b]ecause the district court's efficiency concerns are greatest in large, complex cases, certification may be more freely granted in so-called 'big' cases."  *In re Lloyd's Am. Trust Fund Litig.*, No. 96 CIV. 1262 (RWS), 1997 WL 458739, at *4 (S.D.N.Y. Aug. 12, 1997).

Further, were the Second Circuit to conclude that JASTA's aiding and abetting and conspiracy causes of action are available against foreign state defendants, as Judge Netburn held, Plaintiffs would be entitled to the full benefit of those remedies in their litigation against Saudi Arabia, in accordance with the standards set forth in the Second Circuit's decisions in *Kaplan* and *Honickman*.  As discussed in Plaintiffs' briefs in support of their Rule 54(b) Motion, a straightforward application of *Kaplan* and *Honickman* to Plaintiffs' uncontested factual allegations relating to the Kingdom's aiding and abetting of al Qaeda, including those related to the Kingdom's funding of al Qaeda through purported charities and viewed through the lens of Plaintiffs' holistic allegations, confirms that Plaintiffs have established jurisdiction already.  *See* 54(b) Brief at 2, 11-21; 54(b) Reply at 7-13.  For obvious reasons, this result would materially advance the litigation against Saudi Arabia and the MDL as whole.

An immediate appeal will also advance the resolution of this litigation by avoiding the significant risk of piecemeal and protracted litigation concerning the threshold jurisdictional question, pursuant to standards that may prove incorrect.  Absent an immediate appeal, the resources of the Court and parties will be consumed with a potentially unnecessary and immensely complex assessment of facts and evidence concerning the involvement of Saudi

agents in providing a support network for the first arriving September 11th hijackers, under primary liability standards. *See* February 7 Order at 21. This inquiry will not include consideration of Plaintiffs' additional theories of jurisdiction based on the full range of the Kingdom's aiding and abetting of al Qaeda, such as its aiding and abetting of al Qaeda through "charity" intermediaries. This narrow focus on a subset of Plaintiffs' theories will prove improperly restricted if the Second Circuit later concludes that JASTA authorizes secondary liability claims against foreign states.

Further, the potentially incomplete inquiry focused on the support network for the first arriving hijackers will require an evaluation of over tens of thousands of pages of evidence produced by the Kingdom, the U.S. government, New Scotland Yard, and various third parties; expert opinions spanning over 1,500 pages; extensive witness testimony involving translators; and a hearing that will involve virtually all the complexities of a full trial (and additional challenges unique to this case).[2] The Kingdom's proposal for these proposed proceedings underscores the level of complexity they will involve, as reflected by its request for *Daubert* briefing potentially spanning 500 pages, and procedures reflecting its intent to demand that the Court conduct individual admissibility determinations as to every piece of evidence, on the papers. Further still, these issues will arise in the context of the first-ever post-discovery jurisdictional contest under JASTA, and in a setting where it is uncertain whether Plaintiffs are entitled to rely on JASTA secondary liability theories to satisfy Section 1605(B)'s requirement of a "tortious act or acts" of the "foreign state, or of any official, employee, or agent of that

---

[2] Much of the evidence has been designated "CONFIDENTIAL" pursuant to one or more protective orders. The right of public access to such information is at its apex in relation to potentially dispositive proceedings, a circumstance that will inject additional complexity into both the briefing and hearing. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004) ([T]he presumptive right to "public observation" is at its apogee when asserted with respect to documents relating to matters that directly affect an adjudication. Such documents include those relating to the decision of a motion for summary judgment….")(internal citations omitted); *see also* MDL ECF No. 1900 at 3 (citing *Gambale*).

foreign state while acting within the scope of his or her office, employment, or agency." 28 U.S.C. § 1605B(b)(2). If the Second Circuit were later to conclude that JASTA's aiding and abetting and conspiracy causes of action are available against foreign states, this difficult primary liability inquiry will prove to have been unnecessary for purposes of jurisdiction, and to have been conducted under an erroneously restive standard. *See Linde*, 882 F.3d at 329–30 (discussing different standards for Section 2339B and ATA secondary liability); *Honickman*, 6 F.4th at 498–99 (same). Given the enormous complexity of this undertaking, and the fact that an interlocutory order reversing the Order's conclusions of law would render it needless, the institutional efficiencies of the Court uniquely support certification under § 1292(b) here.[3]

Furthermore, these core questions concerning the nature of the remedies Congress established through JASTA arise in exceptional circumstances, of the precise sort § 1292(b) was designed to address. Initially, this is a singularly large and complex MDL, as amply reflected by the nearly nine thousand docket entries to date and the nearly 20-year history of the litigation against the Kingdom, making this case one in which the efficiency concerns underlying § 1292(b) are at their apex and "certification may be more freely granted." *In re Lloyd's Am. Trust Fund Litig.*, 1997 WL 458739, at *4. The claims against Saudi Arabia are at the very center of the entire litigation, and the claims against most of the other active defendants, while independent of the claims against the Kingdom, would be streamlined in the event claims against

---

[3] Judge Netburn recognized these very benefits and efficiencies when she ordered that all further proceedings be deferred pending resolution of Plaintiffs' Rule 54(b) motion. *See* ECF No. 8542 ("The Court does not find it appropriate to set such a schedule [for a renewed motion to dismiss] at this time given the pending motions under Rule 54."); ECF No.8157 (Plaintiffs' Executive Committees' June 28, 2022 letter recommending that the Court defer further proceedings against Saudi Arabia in light of Plaintiffs' Rule 54(b) motion, because a favorable ruling on that motion would "resolve the jurisdictional phase without further consumption of this Court's resources, avoiding the need for the Court to decide complicated issues surrounding the processes and disputed standards and burdens associated with addressing allegations, facts, evidence, experts, and testimony in the context of a jurisdictional hearing.").

the Kingdom proceed.  *See, e.g.*, 54(b) Brief at 13-18, and Consolidated Amended Complaint at ECF No. 3463 ("CAC") at ¶¶ 30-33, 60-104, 105-33, 134-39, 140-54 (discussing relevance of claims against charities to claims against Saudi Arabia); 54(b) Brief at 18-21, 54(b) Reply Brief at 11, n.5-6, and CAC ¶¶ 30-33, 60-104, 134-54 (same for charity officials); Averment of Facts and Evidence at ECF No. 3463-1 at ¶¶ 150, 156-58, 184-86 (same for Dallah Avco).  An interlocutory ruling that promptly advances the claims against the Kingdom beyond the immunity phase to the merits would allow greater integration and coordination of the entire MDL, and has the unique potential to advance the entire litigation to a resolution.  Absent interlocutory review, all of these claims will need to continue to proceed to judgments and likely appeals on separate and disjointed tracks.

Finally on this point, Congress's actions and purposes in enacting JASTA make the present context all the more exceptional, and further argue strongly in favor of interlocutory review.  Again, Congress enacted JASTA for the specific benefit of the September 11th community to enable them to pursue their claims against Saudi Arabia.  Congress intervened to clarify the law while the claims against the Kingdom were pending precisely because it found that the September 11th community's efforts to hold Saudi Arabia had been delayed for too long, by court decisions adopting unduly narrow readings of existing law.  It thus enacted JASTA to eliminate further delay and provide them with the "broadest possible basis" to pursue their claims against the Kingdom.  Under these circumstances, any further delay in resolving the basic scope of remedies available to the September 11th Plaintiffs under JASTA would undermine Congress's most basic goals through JASTA, and severely prejudice the September 11th Plaintiffs.[4]

---

[4] As has long been recognized, years-long delay prejudices because it results in the loss or misplacement of evidence, the fading of witnesses' memories, and other litigation difficulties.  *See Davis v. Musler*, 713 F.2d 907,

**III.   THE COURT SHOULD AMEND THE FEBRUARY 7 ORDER AND STAY FURTHER PROCEEDINGS IN THIS COURT TO EFFECTUATE THE PURPOSES OF THE § 1292(B) APPEAL**

Section 1292(b) provides that when a district judge concludes that an interlocutory order should be appealable under the statutory factors, "he shall so state in writing in such order."  The February 7 Order does not include that statement.  However, Federal Rule of Appellate Procedure 5(a)(3) authorizes a district court to amend an order to add the findings required for interlocutory appeal.  Thus, if the Court grants Plaintiffs' motion, it should amend the February 7 Order, to include the certification required by § 1292(b).

An application for an appeal under § 1292(b) "shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."  A stay of further proceedings as to Saudi Arabia in this Court is necessary to effectuate one of the benefits of an interlocutory appeal — preserving the status quo and saving this Court's and the parties' resources.  Accordingly, the Court should amend the February 7 Order to stay further proceedings as to Saudi Arabia.  Alternatively, if the Court is not inclined to stay proceedings as to the Kingdom altogether during the interlocutory review process, the parties could move forward with issues that are not extensively dependent on the scope of claims authorized by JASTA, such as briefing on *Daubert* motions.[5]

---

916 (2d Cir. 1983); *Hartford Fire Ins. Co. v. Queens Cnty. Carting, Inc*., No. 20 CV 01844 (NSR), 2022 WL 254367 at \*4 (S.D.N.Y. Jan. 27, 2022); *United States v. Mann*, 291 F. Supp. 268, 271 (S.D.N.Y. 1968).

[5] While the appeal is pending, proceedings can continue against the other non-sovereign defendants in the MDL.

13

Dated: February 17, 2023

Respectfully submitted,

COZEN O'CONNOR

By:  _/s/  Sean P. Carter_____
Sean P. Carter
Stephen A. Cozen
J. Scott Tarbutton
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel: (215) 665-2000
scarter1@cozen.com
scozen@cozen.com
starbutton@cozen.com

*On behalf of the CAC Plaintiffs*

MOTLEY RICE LLC

By:  _/s/  Robert T. Haefele_____
Robert T. Haefele
Jodi Westbrook Flowers
Donald A. Migliori
Motley Rice LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel: (843) 216-9184
rhaefele@motleyrice.com
jflowers@motleyrice.com
dmigliori@motleyrice.com

*On behalf of the CAC Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true copy of the Memorandum of Law in Support of Plaintiffs'
Motion to Amend the Court's February 7, 2023 Order to Certify Controlling Questions of Law
for Interlocutory Appeal under 28 U.S.C. § 1292(b) and to Stay Further Proceedings as to the
Kingdom of Saudi Arabia, was electronically filed this 17th day of February 2023.  Notice of this
filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of
New York's Electronic Case Filing ("ECF") system.

_____
J. Scott Tarbutton, Esq.

LEGAL\61635904\1

15