UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |

*This document relates to*:
All Actions

## MOTION FOR RECONSIDERATION
## OF THIS COURT'S FEBRUARY 7, 2023 ORDER

The *Ashton* Plaintiffs respectfully move this Court to reconsider its February 7, 2023 Order holding that the Kingdom of Saudi Arabia, as a foreign state, could not be held liable for the tort of aiding-and-abetting under the Justice Against Sponsors of Terrorism Act, 28 U.S.C. § 1605B(b) ("JASTA") and the Anti-Terrorism Act, 18 U.S.C. § 2332, *et. seq.* ("ATA") ECF 8862 at 15-19.

Reconsideration is warranted because this Court's Order did not address and may have overlooked the May 3, 2022 Report & Recommendation of Magistrate Judge Netburn which determined that another foreign state, the Republic of Sudan, could be held liable for aiding-and-abetting under JASTA and the ATA. ECF 7942 at 42-44. Judge Netburn's Report was rendered two months after the instant Rule 54(b) motion was fully submitted and therefore was not addressed in the briefing.

Further, this Court set a hearing on Sudan's pending Rule 72 Objections to Judge Netburn's May 2022 Report for April 19, 2023. ECF 8834. At that time, this Court will review Judge Netburn's Report and hear oral arguments from counsel for the first time on the JASTA/aiding-and-abetting issue. The *Ashton* Plaintiffs respectfully propose that this Motion for Reconsideration be considered together with Sudan's pending Rule 72 Objections.

1

Reconsideration is particularly appropriate given the extraordinary situation faced here, with divergent decisions of this Court and Magistrate Judge Netburn on the same legal issue. Reconsideration will allow this Court to properly consider the Magistrate Court's Report as well as authorities cited therein, including JASTA's text, history, and relevant case law, before rendering its final decision on its jurisdiction over the aiding-and-abetting claims against the two foreign states named as defendants in this litigation.

## STANDARD OF REVIEW

Under Local Rule 6.3, reconsideration is warranted if the Court has "overlooked" either factual "matters" or "controlling decisions." The overlooked material must be information that "might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration should not be used to make "repetitive arguments on issues that have been considered fully by the court," *System Mgmt. Arts Inc. v. Avesta Techs., Inc.*, 106 F. Supp. 2d 519, 521 (S.D.N.Y. 2000), or to "advance new facts, issues or arguments not previously presented to the Court," *Schonberger v. Serchuk*, 742 F.Supp. 108, 119 (S.D.N.Y. 1990).

## ARGUMENT

### RECONSIDERATION SHOULD BE GRANTED TO ALLOW THIS COURT TO PROPERLY REVIEW MAGISTRATE JUDGE NETBURN'S REPORT BEFORE MAKING A FINAL DECISION ON THE JASTA/AIDING-AND-ABETTING ISSUE AS TO SAUDI ARABIA AND SUDAN

**1.** In recommending the denial of Sudan's motion to dismiss, Magistrate Judge Netburn's Report detailed how "Secondary Liability Claims Are Available Against Foreign Sovereigns" under JASTA. ECF 7942 at 42. Magistrate Judge Netburn rejected Sudan's argument (later repeated by Saudi Arabia) that JASTA's use of the term "person" intended to exclude foreign states. Magistrate Judge Netburn found that:

> The retort lies in the very first line of the Dictionary Act. This provides definitions "unless the context indicates otherwise." 1 U.S.C. § 1. Thus, while foreign states are not "persons" in some contexts, *see, e.g.*, *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1307 (D.C. Cir. 2002) (holding that a foreign sovereign is not a "person" under 45 U.S.C. § 1985), they are in others, *see, e.g.*, *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 318 (1978) (foreign sovereigns are "persons" under the Sherman Act).

ECF 7942 at 42.

Magistrate Judge Netburn concluded after reading JASTA's use of the term "person" in "context" as provided under the Dictionary Act, that "both the text and purpose of these statutes demonstrate that Congress intended 'person' to include foreign sovereigns." ECF 7942 at 43. She reached this conclusion in part because "JASTA's text explicitly contemplates suit against foreign states", *id.*, citing 28 U.S.C. § 1605B ("a national of the United States may bring a claim against a *foreign state* in accordance with section 2333 [of the ATA].") (emphasis added).

In addition, Magistrate Judge Netburn determined that "[t]he purpose and policy of both JASTA and the ATA further show that 'person' includes foreign states." ECF 7942 at 43. This was based on a review of cases from the Second and Seventh Circuits confirming JASTA's intent "to provide the broadest possibility basis for bringing claims against those that support terrorist acts in the U.S.", citing *Weiss v. Nat'l Westminster Bank, PLC.*, 993 F.3d 144 (2d Cir. 2021). ECF 7942 at 43.[1] The Second Circuit and Magistrate Judge Netburn both referred to the "findings and purpose" section of JASTA itself, where Congress expressed its intent to apply "indirect" aiding-and-abetting liability to JASTA claims and, necessarily, to those claims made under JASTA whether against foreign states or other parties. *Weiss*, 993 F.3d at 163 (citing

---

[1] The Second Circuit further confirmed JASTA's intent to permit secondary liability claims here by noting that "Congress gave JASTA a measure of retroactivity by providing that such a secondary liability theory would be available in any action pending on or commenced after its enactment, arising out of an injury occurring on or after September 11, 2001…" *Weiss*, 993 F.3d at 163. By making JASTA retroactive to September 11, 2001, Congress further demonstrated its intent in JASTA to allow the aiding-and-abetting cause of action brought by the 9/11 Families against Saudi Arabia and Sudan.

JASTA's purpose to provide the "broadest possible basis, consistent with the Constitution of the United States, to seek relief against persons [and] entities ... that have provided material support ... to foreign organizations or persons that engage in terrorist activities against the United States," whether "directly or indirectly."); ECF 7942 at 34-35, 43.

As cited by the Second Circuit and Magistrate Judge Netburn, JASTA specifically applies to "[p]ersons, entities, *or countries* that knowingly or recklessly contribute material support or resources, *directly or indirectly*, to persons or organizations that pose a significant risk of committing acts of terrorism" and states that:

> The United States has a vital interest in providing persons and entities injured as a result of terrorist attacks committed within the United States with full access to the court system in order to pursue civil claims against persons, entities, *or countries* that have knowingly or recklessly provided material support or resources, *directly or indirectly*, to the persons or organizations responsible for their injuries.

JASTA, PL 114-222, 130 Stat 852 § 2(a)(6, 7); (emphasis added); *see* ECF 7942 at 34.

Finally, Magistrate Judge Netburn cited the title of JASTA to address the "responsibility of *foreign states* for international terrorism against the United States", ECF 7942 at 43 (emphasis in original), which showed that "Congress meant for JASTA to reach conspiracies to commit terrorist acts executed by foreign sovereigns." *Id.*

**2.** Unlike Magistrate Judge Netburn's Report, this Court's Order held that JASTA's use of the term "person" did not include foreign states. ECF 8862 at 15-19.

This Court's Order did not address the Supreme Court authority, cited by Magistrate Judge Netburn, which applied the term "person" under the Dictionary Act to a foreign state, *id.*, or the Second Circuit authority on JASTA's purpose cited by Magistrate Judge Netburn. Nor did this Court's Order directly address the intent of Congress as stated in JASTA to impose liability

4

on "countries", *i.e.,* foreign states, for "indirectly" providing material support for terror attacks inside the U.S.

This Court's Order concluded that the "context" of JASTA did not permit aiding-and-abetting liability. ECF 8862 at 14. This Court found that "Section 1605B expressly establishes primary liability against a foreign state for acts of international terrorism, not aiding-and-abetting liability", *id.* at 14, and stated that:

> Congress contemporaneously waived foreign sovereign immunity for principal acts of international terrorism through an amendment to [the Foreign Sovereign Immunities Act] (28 U.S.C. § 1605B) and also created aiding-and-abetting liability for acts of international terrorism under the ATA without including the liability of foreign sovereigns (18 U.S.C. § 2333(d)(2)).

ECF 8862 at 17. This Court's Order held that "Congress considered and amended foreign sovereign immunity in one section of the Act but provided no explicit waiver of foreign sovereign immunity in its aiding-and-abetting amendment." *Id.*

While Magistrate Judge Netburn's Report did not explicitly address this point, it is incorrect to say that JASTA waives foreign sovereign immunity only for "primary liability" or "principal acts of international terrorism." ECF 8862 at 14, 17. Rather, JASTA's waiver of sovereign immunity provides that the foreign state may be held to account for its "tortious act or acts". JASTA states that its waiver is "for physical injury…or death occurring in the United States and caused by… a tortious act or acts of the foreign state…" 28 U.S.C. 1605B(b). This Court previously acknowledged this very point in its March 2018 Opinion permitting jurisdictional discovery: "In order to give rise to jurisdiction under JASTA, the foreign sovereign defendant's actions, or those of its officials, employees, and agents, must be 'tortious.'" *In re Terrorist Attacks on September 11, 2001*, 298 F. Supp. 3d 631, 643 (S.D.N.Y. 2018).

5

JASTA's reference to a "*tortious act or acts* of the foreign state" is to any manner of tort, including the tort of aiding-and-abetting, which the Second Circuit has held is a "tort" under JASTA. *Kaplan v Lebanese Can. Bank, SAL*, 999 F.3d 842, 856 (2d Cir. 2021), citing *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983). That those decisions concerned non-sovereign defendants does not change the analysis here. JASTA does not limit its waiver of foreign state immunity to "primary" or "principal" torts. To the contrary, Congress specified that JASTA should be read on the "broadest possible basis"; that "countries" would be liable for their "tortious acts" whether they acted "directly or indirectly"; and that the *Halberstam* decision of the D.C. Court of Appeals defining aiding-and-abetting liability "provides the proper legal framework for how such liability should function…" under JASTA. 18 U.S.C. § 2333 Statutory Note (Findings and Purpose § 5). Congress issued all these statements contemporaneously when enacting JASTA, knowing and intending that it would waive foreign state immunity as to all aspects of the new legislation, which included claims for secondary liability.

JASTA's legislative history further confirms the intent of Congress to include foreign states within the definition of the term "person" and permit aiding-and-abetting claims. Congressman Peter T. King directly and "emphatically" stated on the House floor:

> Section 4 amends the Anti-Terrorism Act to create a cause of action for aiding and abetting terrorism. It is a narrowly crafted provision aimed at any ''person,'' as defined in section 1 of title 1 of the U.S. Code. After the Senate passed JASTA, one commentator speculated that the definition of ''person'' in this section was too limited and would not permit such a cause of action against a foreign government. *This would be an inaccurate interpretation of the text. Section 3 of JASTA expressly authorized jurisdiction for claims made under section 2333 of title 18 and made clear that such claims would be permitted against foreign states in any case in which the new jurisdictional exception of JASTA, proposed section 1605B, might apply. This language should be interpreted as controlling. This point should be obvious given the underlying purpose and structure of JASTA, but I wanted to make it emphatically clear here.*

162 Cong. Rec. E1265 (Sept. 14, 2016 speech of Rep. King) (emphasis added).

3. As a result, reconsideration of this Court's Order is appropriate to properly address Magistrate Judge Netburn's Report, including the Second Circuit case law, statutory text, and stated statutory purpose cited in that Report, before reaching a final decision on the issue of aiding-and-abetting liability.

The Second Circuit has "recognized that motions for reconsideration are appropriate vehicles to 'correct a clear error or prevent manifest injustice.'" *Sacerdote v New York Univ.*, 9 F.4th 95, 118 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1112 (2022)(citation omitted). Magistrate Judge Netburn's Report points to JASTA's text, stated purpose, and relevant Second Circuit and other case law which show that aiding-and-abetting liability under JASTA is available in this action against both Saudi Arabia and Sudan. The Second Circuit has approved the use of a motion for reconsideration to correct a prior order regarding the interpretation of a statute. *Shrader v CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)(approving a motion for reconsideration where party "pointed to numerous statements in the [statute's] legislative history, which the district court had not discussed in its original ruling" and to additional case law).

## CONCLUSION

The *Ashton* Plaintiffs' motion for reconsideration should be granted. This Court should have an opportunity to review Magistrate Judge Netburn's Report, reconsider its prior Order, and hold that aiding-and-abetting liability is an available tort remedy against both Saudi Arabia and Sudan.

Dated: New York, New York
February 21, 2023

KREINDLER & KREINDLER LLP

By: /s/ *Steven R. Pounian*
Steven R. Pounian, Esq.
James P. Kreindler, Esq.
Andrew J. Maloney, Esq.
Megan W. Benett, Esq.
James Gavin Simpson, Esq.
485 Lexington Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: spounian@kreindler.com
*Attorneys for Ashton Plaintiffs*

SPEISER KRAUSE, PC
Frank H. Granito, III, Esq.
Douglas A. Latto, Esq.
Jeanne M. O'Grady, Esq.
800 Westchester Avenue, Suite S-608
Rye Brook, New York 10573
Tel: (914) 220-5333
*Attorneys for Ashton/Burlingame Plaintiffs*

BAUMEISTER & SAMUELS, P.C.
Michel F. Baumeister, Esq.
Dorothea M. Capone, Esq.
140 Broadway, 46th Floor
New York, New York 10005
Tel: (212) 363-1200
*Attorneys for Ashton/Bauer Plaintiffs*