**MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES**
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

**VIA ECF**

February 22, 2023

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District Court for the S.D.N.Y.
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

      Re:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

      The Plaintiffs Executive Committees ("PECs") write to propose a schedule for the next steps regarding the claims against the Kingdom of Saudi Arabia (and Dallah Avco) and to respond to the Saudi Arabia's February 16, 2023 letter (ECF No. 8863), proposing a briefing schedule and protocols for a proposed motion to dismiss and *Daubert* motions, and addressing related issues, such as proposed page limits and confidentiality review.

      Initially, the PECs respectfully submit that the Court should address Plaintiffs' motion (ECF No. 8864) seeking certification of the Court's February 7 Order (ECF No. 8862) ("February 7 Order") for interlocutory appeal, before addressing proposals for any other potential proceedings as to Saudi Arabia. To the extent the Court grants that motion, the most efficient and appropriate course would be to stay further proceedings as to Saudi Arabia during the interlocutory appeal process. If, however, the Court prefers not to stay proceedings as to Saudi Arabia entirely during the interlocutory appeal process, briefing on *Daubert* motions could proceed in parallel. This approach would advance the claims against Saudi Arabia during an interlocutory appeal, while preserving the most important benefits of that appeal.

      Beyond *Daubert*, the Court should reject the novel and unduly complicated approach Saudi Arabia has proposed, which does not accord with the procedures and standards applicable to the FSIA dispute. Instead, the Court should first address briefing on *Daubert* challenges, an approach that will streamline and inform all further processes. As is the customary obligation of a defendant after discovery, Saudi Arabia would then file its dispositive motion, and the nature of the challenge raised in that motion will define Plaintiffs' burdens and obligations in response. Contrary to the approach Saudi Arabia suggested, Plaintiffs are allowed a hearing on factual and evidentiary issues raised by the motion, with admissibility determinations made during that hearing for efficiency. As the proposals the Court has received thus far largely ignore the unique FSIA burdens and procedures that apply, a case management conference may be useful to discuss those issues before setting a schedule and procedures for renewed motion to dismiss.

1.    <u>The Court should defer further proceedings as to Saudi Arabia pending interlocutory review.</u>

      As discussed in Plaintiffs' motion for certification of the February 7 Order for interlocutory appeal, the questions of law addressed in the February 7 Order readily meet the criteria for certification under § 1292(b), and immediate appellate review may effectively resolve the jurisdictional issue entirely.

This result would obviate the need for the immensely complex jurisdictional inquiry Saudi Arabia has proposed, which in the absence of interim review may proceed on the basis of legal standards that may later prove to be incorrect.

To the extent the Court certifies the February 7 Order for interlocutory appeal, the briefing process in the Second Circuit is subject to an aggressive schedule. Plaintiffs' motion would be due within 10 days of any order amending the February 7 Order to certify the issues. Saudi Arabia's response would be due 10 days thereafter. Accordingly, the parties and the Court will have clarity as to whether the Second Circuit agrees that the issues warrant interlocutory review very soon. If the Second Circuit agrees that interlocutory review is warranted, the Court and parties will have good reason to await that review to determine further proceedings.

2. <u>In the alternative, if the Court is inclined to move an aspect of the Saudi case forward during the appellate review process, the Court should prioritize *Daubert* briefing</u>.

If the Court is not inclined to stay the proceedings against Saudi Arabia in their entirety during the proposed interlocutory appeal process, a reasonable middle ground would be to move forward with *Daubert* motions now, which would materially advance the case against Saudi Arabia, but without significantly undermining the benefits of interlocutory appeal. The principal issues raised by the *Daubert* proceedings—namely, *e.g.*, issues of methodology and qualifications—are not materially intertwined with the questions about the scope of the Justice Against Sponsors of Terrorism Act (JASTA).

Accordingly, if the Court is inclined to proceed with the case against Saudi Arabia during pendency of the request for interlocutory appeal, the PECs propose the following schedule:

- All Parties' *Daubert* motions due by April 7, 2023;
- All Parties' Responses due by May 22, 2023;
- All Parties Replies due June 22, 2023.[1]

The Court should also set reasonable page limits for the *Daubert* briefing.[2] Saudi Arabia's proposal on page limits for *Daubert* motions contemplates as many as 30 *Daubert* briefs spanning 500 pages in total, which the PECs maintain is excessive.[3] The baseline standards applicable to any *Daubert*

---

[1] As noted, to the extent the Court certifies its February 7 Order for interlocutory review, briefing as to the request that the Second Circuit accept interlocutory review would conclude early in this schedule. Moreover, if the Court is inclined to move forward, over Plaintiffs' opposition, with briefing on both *Daubert* motions and the motions to dismiss, the Court should nonetheless decline to adopt Saudi Arabia's proposal for the Plaintiffs to submit jurisdictional averments before Saudi Arabia has filed its renewed motion to dismiss. *See*, *infra*, at § 3.

[2] The *Daubert* issues warrant less extensive briefing in the present context, as the immunity issues will be presented to the Court, not a jury. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 629 (S.D.N.Y. 2007) ("*Daubert* gatekeeping standard is applied more flexibly when the judge is the factfinder"), citing *Deal v. Hamilton County Board of Educ.*, 392 F.3d 840, 852 (6th Cir.2004) ("The 'gatekeeper' doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial."); *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir.2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.").

[3] Saudi Arabia's proposed page limits for *Daubert* briefing would also create an unfair imbalance because it would afford Saudi Arabia more than twice as many pages for its Daubert challenges than would be afforded to Plaintiffs even though its experts' reports span almost twice the pages. Though Saudi Arabia has only three experts, its experts collectively

challenges will be common as to all experts, and the Court already has received extensive briefing on those issues in the MDL.[4] Accordingly, Plaintiffs respectfully submit that the Court should allow each side to file a *Daubert* issue brief, not to exceed 40 pages, and an additional brief of no more than 25 pages to present arguments as to particular experts. Plaintiffs further propose that responses be subject to these same limits, and that each side be permitted to file a single reply brief not to exceed 40 pages. These limits are reasonable and eliminate the imbalance inherent in Saudi Arabia's proposal.

3.  <u>The protocol for further proceedings must accord with the applicable procedures and burdens.</u>

This Court should not, in any case, adopt the procedures or schedule suggested by Saudi Arabia for its proposed motion to dismiss. Saudi Arabia's proposal is unfair to Plaintiffs, unduly complicated, and does not accord with the procedures and burdens applicable to a post-discovery jurisdictional challenge under the FSIA. Saudi Arabia's request that Plaintiffs be required to file a jurisdictional statement/averments, prior to Saudi Arabia's motion and by April 7, 2023 is inappropriate, as it unfairly inverts the sequence for filings on a dispositive motion, contorts the parties' respective burdens, and fails to afford Plaintiffs sufficient time for that submission given recent developments. Specifically, the Court's February 7 Order has introduced new legal standards and principles, in conflict with what Plaintiffs reasonably understood would apply based on plain readings of JASTA and Judge Netburn's May 3, 2022 Report and Recommendation as to Sudan (ECF No. 7942).

Saudi Arabia's proposal suggests that Plaintiffs have some burden to "prove" each jurisdictional fact they offer via paper submissions, but that is not correct. To the contrary, the nature of the applicable burden depends, initially, on both the nature of the foreign sovereign's jurisdictional challenge and whether discovery has been permitted on the issue in question. That burden must be defined, in the first instance, via the sovereign defendant's motion to dismiss.

As to matters for which discovery has not been permitted or for which a competent factual challenge has not been raised, Plaintiffs' factual allegations must be credited. And as to matters for which discovery has been afforded, Plaintiffs bear only an initial burden of production with Saudi Arabia bearing the ultimate burden of persuasion. *Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555, 560 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 1069, 208 L. Ed. 2d 531 (2021) ("Once the plaintiff has met its initial burden of production, the defendant bears the burden of proving, by a preponderance of the evidence, that the alleged exception does not apply. In other words, the ultimate burden of persuasion remains on the party seeking sovereign immunity.") (internal citations omitted). When considering the subject-matter jurisdiction arguments, the Court must consider both the factual allegations as well as the evidence proffered in support of jurisdiction. *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 n. 6 (2d Cir. 2001), citing *Cargill Int'l S.A. v M/T Pavel Dybenko*, 991 F.2d 1012, 1019 (2d Cir. 1993) ("In resolving the

---

submitted reports of 800 pages to rebut Plaintiffs' experts, who collectively submitted 452 pages. In other words, under Saudi Arabia's proposal, Plaintiffs would be limited to less than one-half of Saudi Arabia's briefing, despite that its experts sought to rebut all of Plaintiffs' experts.

[4] These issues warrant less extensive treatment in this context. *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 629 (S.D.N.Y. 2007) ("*Daubert* gatekeeping standard is applied more flexibly when the judge is the factfinder"), citing *Deal v. Hamilton County Board of Educ.*, 392 F.3d 840, 852 (6th Cir.2004) ("The 'gatekeeper' doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial."); *United States v. Brown,* 415 F.3d 1257, 1269 (11th Cir.2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.").

The Honorable Sarah Netburn
February 22, 2023
Page 4

_____

jurisdictional dispute, the district court *must* review the pleadings and any evidence before it ...."); *see also Filetech S. v. Fr. Telecom S.A.*, 304 180, 183 (2d Cir. 2002) (per curiam) (when key issues "turn[] on questions of [witness] credibility," a jurisdictional hearing is required).[5]

Saudi Arabia's proposal runs afoul of these established standards in several respects, and urges an approach that is out of step with traditional practices in federal court. *Id.* Initially, its proposal that Plaintiffs be required to file a jurisdictional statement, or averments, at the outset of briefing improperly inverts the process and the burden. In effect, Saudi Arabia seeks to lock Plaintiffs into a position on both legal and factual matters before Plaintiffs even know the nature of Saudi Arabia's challenge. As the controlling precedent makes clear, however, the nature of Plaintiffs' burden depends on the nature of Saudi Arabia's jurisdictional challenge. Saudi Arabia is required to file its motion to dismiss first,[6] to define the nature and scope of the dispute. Plaintiffs then will respond to that motion, which may include a factual averment and evidentiary proffer, as is customary federal court practice. *Id.*

Any suggestion by Saudi Arabia that standard practices would be unfair is nonsense. The customary approach to post-discovery motions in federal court is for the defendant to file its motion, and for the plaintiff to then respond. That response routinely includes a factual or evidentiary proffer, which the defendant then addresses in its reply. Saudi Arabia has itself invoked the procedures applicable to Rule 56 motions for summary judgment, and that is precisely how such motions are routinely handled in cases in federal court. Further, Saudi Arabia has the additional benefit of its own access to the full record of discovery, previous factual averments by plaintiffs, a long history of motion practice, as well as the plaintiffs' experts' reports, and its own experts' reports.

As noted, prioritizing *Daubert* proceedings is necessary to streamline and inform the motion to dismiss proceedings. Having *Daubert* determinations in advance of the motions to dismiss will afford the Court and the parties notice concerning the expert evidence the Court may consider on the motions. That notice will allow Saudi Arabia to focus its motion accordingly, and will give Plaintiffs fair warning as to what expert evidence will be available to assert their claims. In short, it avoids trial by ambush on either side.

Consistent with the above, and subject to their proposals in 1 and 2 above, Plaintiffs offer the following proposal if the Court decides, over Plaintiffs' objection, to move forward now with motions to dismiss:

**Daubert schedule:**
- All Parties' *Daubert* motions due by April 7, 2023;

---

[5] The language Saudi Arabia uses in its proposal to describe the filings, which speaks in terms of an obligation for Plaintiffs to prove each fact requests that the Court impose a Rule 56 burden on Plaintiffs, is in conflict with these controlling standards and should not be endorsed. Plaintiffs' proposal avoids this problem by simply requiring the parties to provide citations to the facts and evidence they will rely upon as to any applicable burden.

[6] Plaintiffs have always viewed this to be the proper sequencing but were willing at that time of the parties' submissions last June to entertain the filing of their averment at the outset because the PECs felt obligated to provide the plaintiffs with some meaningful access on the front end to the evidence that would be at issue in motions that sought dismissal of their claims. At the time, the averment was viewed as the only practical vehicle to do so. Since then, however, the parties and FBI have completed reviews of the expert reports, so the circumstances no longer necessitate or support a departure from normal procedures.

The Honorable Sarah Netburn
February 22, 2023
Page 5

_____

- All Parties' Responses due by May 22, 2023;

- All Parties Replies due June 22, 2023.

**Motions to Dismiss Schedule:**

- The Defendants' motions to dismiss to be filed within 30 days of the Court's Ruling on the *Daubert* motions.

- Plaintiffs' Opposition, including any averment Plaintiffs will rely upon in opposition, complying with Plaintiffs' burden under FSIA[7] to be filed within 45 days after Defendants' motions to dismiss;

- The Defendants' reply to be filed within 30 days after Plaintiffs' opposition; Anticipated trial/hearing date: December 4, 2023. Pretrial submissions due on a date to be set by the Court.

Finally, to the extent the Court is inclined to entertain Saudi Arabia's proposal that Plaintiffs be required to file their jurisdictional statement prior to the filing of Saudi Arabia's motion, despite Plaintiffs' objection, or Saudi Arabia's proposal that briefing on the motion to dismiss and *Daubert* issues go forward simultaneously, Plaintiffs make the following requests.

*First*, Plaintiffs should be afforded until at least 90 days to file their jurisdictional averments. This time is necessary given the Court's February 7 Order, which introduced new legal standards and principles, in conflict with previous understandings premised on plain readings of JASTA and Judge Netburn's May 3, 2022 Report and Recommendation as to Sudan (ECF No. 7942), and given additional consultations the PECs must now undertake in advance of any major filings.

*Second*, if the Court does not require Plaintiffs to file their jurisdictional statement in the first instance but does wish for briefing on the motion to dismiss and *Daubert* issues to proceed simultaneously, an proposed briefing schedule for that approach would be as follows:

- Daubert Motions and Saudi Arabia's Motion to Dismiss: April 22, 2023

- Oppositions to Daubert and Motion to Dismiss: July 22, 2023

- Replies in Support of Daubert and Motion to Dismiss: September 22, 2023

- Anticipated hearing/trial date: December 4, 2023.

Again, the PECs submit that the best and most appropriate course is to certify the Court's February 7 Order for interlocutory appeal, and defer further proceedings as to Saudi Arabia during the interlocutory appeal process (or, in the alternative, proceed solely with the *Daubert* briefing in parallel).

Respectfully submitted,

---

[7] Saudi Arabia's proposal includes protocols reflecting its preferred (and incorrect) view of the burdens, and its misguided and improper attempt to conduct a trial on the papers. It is unnecessary for the Court to impose such requirements in any scheduling order. Once Saudi Arabia files its motion, Plaintiffs will be required to meet their burden in response, and the Court will decide if they have done so.

_____

| MOTLEY RICE LLC | COZEN O'CONNOR |
|---|---|
| By: /s/ *Robert T. Haefele* <br> ROBERT T. HAEFELE <br> JODI WESTBROOK FLOWERS <br> DONALD A. MIGLIORI <br> MOTLEY RICE LLC <br> 28 Bridgeside Boulevard <br> Mount Pleasant, SC 29465 <br> Tel.: (843) 216-9184 <br> Email: rhaefele@motleyrice.com <br><br> *For the Plaintiffs' Executive Committee for Personal Injury and Death Claims* | By: /s/ *Sean P. Carter* <br> SEAN P. CARTER <br> STEPHEN A. COZEN <br> J. SCOTT TARBUTTON <br> COZEN O'CONNOR <br> One Liberty Place <br> 1650 Market Street, Suite 2800 <br> Philadelphia, Pennsylvania 19103 <br> Tel.: (215) 665-2105 <br> Email: scarter@cozen.com <br><br> *For the Plaintiffs' Executive Committee for Commercial Claims* |

cc: The Honorable George B. Daniels, via ECF
     All Counsel of Record via ECF