UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------- x
IN RE:                                           :          MEMORANDUM DECISION
                                                 :              AND ORDER
TERRORIST ATTACKS ON                             :
SEPTEMBER 11, 2001                               :          03 MDL 1570 (GBD) (SN)
                                                 :
----------------------------------- x

This document relates to:

    *Smith v. The Islamic Emirate of Afghanistan, et al.*, No. 01-cv-10132
    *Havlish, et al. v. Bin Laden, et al.*, No. 03-cv-9848
    *Fed. Ins. Co. et al. v. Al Qaida, et al.*, No. 03-cv-6978
    *John Does 1 Through 7 v. The Taliban, et al.*, No. 20-mc-740

GEORGE B. DANIELS, United States District Judge:

Four groups of judgment creditors (the "Judgment Creditors")[1] with judgments against the Taliban stemming from the terrorist attacks on September 11, 2001 (the "9/11 Attacks") and other terrorist attacks moved for turnover of funds to satisfy their judgments with assets in the name of Afghanistan's central bank, Da Afghanistan Bank ("DAB"), presently being held at the Federal Reserve Bank of New York ("FRBNY"). (ECF Nos. 7763, 7767, and 7936 in No. 03-md-1570; ECF No. 62 in No. 01-cv-10132; ECF No. 597 in No. 03-cv-9848.) On February 21, 2023, this Court adopted Magistrate Judge Sarah Netburn's August 26, 2022 Report and Recommendation, (the "Report," ECF No. 8463), in its decision denying the turnover motions, (the "Decision," ECF No. 8866). This Court ruled that DAB funds are not the property of the Taliban available to satisfy the Taliban's judgment debts. Specifically, this Court found that it lacks subject-matter jurisdiction over

---

[1] The Judgment Creditors are the four sets of Plaintiffs in: *Smith v. The Islamic Emirate of Afghanistan, et al.*, No. 01-cv-10132 (the "*Smith* Creditors"), *Havlish, et al. v. Bin Laden, et al.*, No. 03-cv-9848 (the "*Havlish* Creditors"), *Fed. Ins. Co. et al. v. Al Qaida, et al.*, No. 03-cv-6978 (the "*Federal Insurance* Creditors"), and *John Does 1 Through 7 v. The Taliban, et al.*, No. 20-mc-740 (the "*Doe* Creditors"). The Judgment Creditors refer to themselves as the "Joint Creditors."

the turnover motions under the Foreign Sovereign Immunities Act ("FSIA"), (Decision at 10–22), and that it is constitutionally restrained from determining that the Taliban is the legitimate government of Afghanistan as required to attach DAB's assets, (Decision at 22–29). The Judgment Creditors now move to stay that Decision pending appeal. (Letter Mot. to Stay, ECF No. 8869.) For the reasons stated herein, the Judgment Creditors' motion to stay is DENIED.

Courts consider four factors when determining whether to grant a stay: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether [it] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted); *accord SEC v. Daspin*, 557 F. App'x 46, 47–48 (2d Cir. 2014). The first two factors are "the most critical." *Nken*, 556 U.S. at 434. Likelihood of success on the merits can be satisfied when "there are 'serious questions' going to the merits of the dispute and the applicant is able to establish that the balance of hardships tips *decidedly* in its favor." *In re A2P SMS Antitrust Litig.*, No. 12-CV-2656, 2014 WL 4247744, at *2 (S.D.N.Y. Aug. 27, 2014) (quoting *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)). "The degree to which a factor must be present varies with the strength of the others." *Daspin*, 557 F. App'x at 48. Moreover, the "probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay." *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006) (quotation marks and citation omitted).

The Judgment Creditors have failed to show that they are likely to succeed on the merits of their turnover motions. In their letter request, the Judgment Creditors reference their Objections to the Report, (see ECF No. 8733), "the complexity of these proceedings," and "the substantial arguments offered by the [Judgment] Creditors in support of turnover." (Letter Mot. to Stay at 1.) This Court considered the Judgment Creditors' Objections and arguments in its review of the Report, and concurred instead with Magistrate Judge Netburn's interpretation of the Terrorism Risk Insurance Act of 2002 ("TRIA")[2] and the Executive Branch's constitutional authority to recognize foreign governments. For the reasons provided in this Court's Decision, this Court finds these rationales compelling. The Judgment Creditors have not shown that they are likely to succeed on the merits of both their TRIA interpretation and constitutional arguments, so as to ultimately prevail in the turnover of DAB funds.

The Judgment Creditors have also failed to demonstrate the irreparable injury they will suffer from the denial of their turnover requests. They state that a stay is appropriate due to the "irreparable harm that more than 10,000 members of the 9/11 community would face should restraints on Da Afghanistan Bank's assets be dissolved." (Letter Mot. to Stay at 1.) However, the Judgment Creditors did not have access to the DAB funds prior to this Court's Decision, and they do not have access to the DAB funds after this Court's Decision; that status quo is undisturbed. The Judgment Creditors cite two other cases in this District in which parties are pursuing DAB assets in arguing that "[a] stay will preserve the 9/11 community's ability to recover should the Second Circuit order turnover." (Id. at 1 n.1

---

[2] TRIA § 201, Pub. L. No. 107-297, 116 Stat. 2337, as amended, Pub. L. No. 112-158, 126 Stat. 1260 (codified at 28 U.S.C. § 1610 note).

3

(citing *Owens v. the Taliban*, No. 22-cv-1949-VEC (S.D.N.Y.); also citing *Bushnell v. Islamic Emirate of Afghanistan*, No. 22-cv-8901-JSR (S.D.N.Y.)).)[3] This Court's Decision, however, does not address the priority of creditors' attachments or the 9/11 Judgment Creditors' relationship to the potential creditors in the other proceedings.

Moreover, there is currently no immediate threat of dissipation of the funds being held at the FRBNY that might prejudice the rights of Plaintiffs in this multidistrict litigation. On February 3, 2023, the President issued a one-year extension of the national emergency on the humanitarian crisis in Afghanistan. *See* Continuation of the National Emergency with Respect to the Widespread Humanitarian Crisis in Afghanistan and the Potential for a Deepening Economic Collapse in Afghanistan, 88 Fed. Reg. 7837 (Feb. 3, 2023). That notice of extension continues to block DAB funds under Executive Order 14,064,[4] recognizing that "[v]arious parties, including representatives of victims of terrorism, have asserted legal claims against certain property of DAB." *Id.* Thus, the Decision would not prejudice any of the Judgment Creditors' asserted priority or alter the current status quo, were they ultimately to prevail on appeal of the denial of their motions. No irreparable harm exists.

Staying this Court's Decision risks injuring the other interested parties in leaving the turnover issues ambiguously resolved. This Court declines to temper its ruling. *Contra Northern Mariana Islands v. Millard*, 287 F.R.D. 204, 215 (S.D.N.Y. 2012). More

---

[3] The *Owens* and *Bushnell* cases are in their infancy and without judgments with which any plaintiffs' claims might be satisfied with the restrained DAB funds.

[4] *See* Exec. Order No. 14,064 § 1(a), 87 Fed. Reg. 8391 (Feb. 11, 2022) ("All property and interests in property of DAB that are held, as of the date of this order, in the United States by any United States financial institution, including the Federal Reserve Bank of New York, are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in . . . .").

concretely, a stay is not within the public interest. As this Court has recently held, the public interest in this long-standing multidistrict litigation on the 9/11 Attacks lies in dispensing the most expeditious justice against all those responsible for the worst terrorist attack in our nation's history. (*See* Jan. 12, 2023 Order, ECF No. 8828, at 6.) This Court concurs with the Judgment Creditors that an important public interest lies in "the enforcement of terrorism judgments." (Letter Mot. to Stay at 1.) But that enforcement must be in accordance with the U.S. Constitution, federal statutes, and state law. The public interest, both in the United States and abroad, compels this Court's adjudication and resolution on whether the Judgment Creditors have the right to take Afghanistan's money deposited by Afghan civilians and international donors to satisfy the debts of the Taliban. The Judgment Creditors have been heard and have established no such right.

The Judgment Creditors have failed to meet the standard for a stay. Therefore, the Judgment Creditors' letter motion to stay this Court's Decision dated February 21, 2023 (ECF No. 8869 in 03-md-1570; ECF No. 102 in 01-cv-10132; ECF No. 1186 in 03-cv-06978; ECF No. 682 in 03-cv-09848; ECF No. 144 in 20-mc-00740) is DENIED.

The Clerk of Court is directed to close the open letter motions accordingly.

Dated: February 24, 2023
New York, New York

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge