KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

February 24, 2023

*Via ECF*

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

      Re:   *In re Terrorist Attacks on September 11, 2001*, 03-md-1570 (GBD) (SN)

Dear Judge Netburn:

      I write on behalf of Defendant Kingdom of Saudi Arabia ("Saudi Arabia") in further support of Saudi Arabia's proposed briefing schedule for its renewed motion to dismiss in its February 16, 2023 letter, ECF No. 8863; and in reply to the February 22 letter from the Plaintiffs' Executive Committees ("PECs"), ECF No. 8873, and the February 21 letter from the *Ashton* Plaintiffs, ECF No. 8871.

      **1.**    **Timing of Saudi Arabia's motion to dismiss.**  The jurisdictional discovery record has long been closed.  *See* ECF No. 5777, at 43:10-11 (end of "formal paper document discovery" in January 2020)*;* ECF No. 6546, at 10 (end of fact depositions on June 30, 2021); ECF No. 7117 (end of expert depositions on July 1, 2022).  The Court previously declined to set a briefing schedule for Saudi Arabia's motion because it had not yet resolved Plaintiffs' Rule 54(b) motions.  *See* ECF No. 8542.  Judge Daniels has now done so.  It is time to move forward towards a determination of Saudi Arabia's immunity.  *See Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 174 (2017) (instructing that immunity should be resolved "as near to the outset of the case as is reasonably possible.").

      The PECs' recent motion for an interlocutory appeal, ECF No. 8864, and the *Ashton* Plaintiffs' motion for reconsideration, ECF No. 8870, do not warrant further delay.  Interlocutory appeals are available only in "exceptional circumstances," *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990)) (interlocutory appeal); similarly, a "motion for reconsideration is an extraordinary request that is granted only in rare circumstances," *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019).  Here, Plaintiffs seek doubly extraordinary relief in asking Judge Daniels to certify or reconsider an order that itself denies reconsideration.  This Court need not prejudge Plaintiffs' motions to make a practical assessment that they do not preclude setting a schedule.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable Sarah Netburn
February 24, 2023
Page 2

**2.     Jurisdictional statement.**  As set out in our February 16 letter, Plaintiffs agreed repeatedly to file a jurisdictional statement of facts and evidence before briefing on the renewed motions to dismiss.  ECF No. 8863.  Those agreements resulted from a Court-suggested compromise to a discovery dispute in April 2018:  rather than grant Saudi Arabia discovery of the evidence with which Plaintiffs would support their claims, the Court suggested that Plaintiffs submit a jurisdictional statement "*à la* Rule 56.1" at the close of discovery.  *Id.* at 1 (quoting ECF No. 4015, at 39:8-17).  Plaintiffs agreed at that time and repeated their agreement twice more – later in 2018, and at the close of fact discovery in 2021.  *See id.* at 1-2.  At the close of expert discovery, when the parties first addressed briefing schedule proposals, Plaintiffs agreed again.  *See* ECF No. 8157, at 3 & n.2 ("Plaintiffs have agreed to file their statements/averments of jurisdiction in the first instance in this case, so long as they are afforded a reasonable time and opportunity to do so.").  That was seven months ago; and Saudi Arabia has proposed to give Plaintiffs two more months, for a total of nine – a reasonable time by anyone's standards.

The Court should reject Plaintiffs' attempts to renege on their repeated agreements.  The PECs contend that they previously agreed to a jurisdictional statement so as to provide Plaintiffs "meaningful access on the front end to evidence."  ECF No. 8873, at 4 n.6.  That is inconsistent with record.  When they agreed to provide a statement, Plaintiffs did not object to a confidentiality review schedule under which the FBI responded to proposed redactions at the close of the filing sequence, and disputes were raised with the Court after filings were complete.  *See* ECF No. 8131, at 3.  Thus, Plaintiffs could not reasonably have thought at the time (and certainly never suggested) that the jurisdictional statements were a vehicle for public disclosure.  To the contrary, it has always been clear that the statements' purpose was to give Saudi Arabia fair notice of and the ability to respond specifically to Plaintiffs' post-discovery contentions.  *See* ECF No. 4015, at 39:19-40:5 (PECs' counsel disclaiming any intent to "hide the ball" and promising to "show our cards" after discovery was over).  For their part, the *Ashton* Plaintiffs make no attempt to justify their change in position, although their counsel too signed the June 2022 letter agreeing to provide a jurisdictional statement.  *See* ECF No. 8157, at 6.

The Court should also reject the PECs' argument that they must "know the nature of Saudi Arabia's challenge" to prepare their statements.  ECF No. 8873, at 4.  That challenge has been clear for years.  Plaintiffs have alleged that, and Judge Daniels ordered discovery to determine whether, "[Fahad Al] Thumairy, [Omar Al] Bayoumi, and their agents took actions in 2000, at the direction of more senior Saudi officials, to provide assistance to [Nawaf Al] Hazmi, [Khalid Al] Mihdhar, and other 9/11 hijackers."  ECF No. 3946, at 23.  Plaintiffs must now produce evidence that the alleged actions of Al Thumairy, Al Bayoumi, and their alleged agents, at the alleged direction of more senior officials, satisfy the jurisdictional requirements of 28 U.S.C. § 1605B(b) – the only FSIA exception open to them after Judge Daniels' order.  Saudi Arabia will then show that Plaintiffs have not met their "burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted"; and that in any event a preponderance of the evidence supports immunity.  *Id.* at 5-6 (quoting *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 109, 114 (2d Cir. 2013)).  Holding Plaintiffs to their agreement to file a jurisdictional statement is consistent with their well-defined burden.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable Sarah Netburn
February 24, 2023
Page 3

    3.    ***Daubert* motions.**  As set out in our February 16 letter, all Plaintiffs previously agreed that *Daubert* motions should be filed together with Saudi Arabia's renewed motion to dismiss.  The PECs make an about-face, arguing that *Daubert* motions should come first because they are not "materially intertwined" with the issues the PECs seek to raise on appeal.  ECF No. 8873, at 2.  The *Ashton* Plaintiffs again agree that "any *Daubert* issues will substantially overlap with the facts to be presented on the jurisdictional motions."  ECF No. 8871, at 5.

    Saudi Arabia has cited authority endorsing the procedure of simultaneous factfinding and *Daubert* motions where a court sits as finder of fact.  *See* ECF No. 8863, at 4-5 (citing cases); *see also* ECF No. 8171, at 3 (same).  The PECs do not address that point or attempt to show why that procedure is not appropriate.  Simultaneous briefing will be quicker, and will aid the Court by giving it more flexibility.  For example, some expert testimony focuses on the alleged actions and intent of Al Bayoumi and Al Thumairy.  If the Court concludes (as the evidence will show) that there is no reason to believe that Al Bayoumi and Al Thumairy received any directions from any senior Saudi official, that expert testimony would become irrelevant, and the Court could avoid spending scarce judicial resources on *Daubert* motions about that expert testimony.  If the Court adopts the PECs' *Daubert*-first proposal, it may instead waste resources in assessing the reliability of testimony later shown to be irrelevant.

    4.    **Evidentiary hearing.**  The Court should determine whether to hold an evidentiary hearing, in the exercise of its discretion, after reviewing the parties' submissions.  *Filetech S.A. v. France Telecom S.A.*, 304 F.3d 180, 183 (2d Cir. 2002) (per curiam) ("[W]hether to hold an evidentiary hearing [is] in the district court's discretion.").  Saudi Arabia expects that there will be no evidence to support Plaintiffs' position and that its renewed motion can and should be granted on the papers, perhaps with the assistance of oral argument.  Contrary to the PECs' contention, *see* ECF No. 8873, at 1, they have no right to an evidentiary hearing, nor did *Filetech* hold that a hearing is ever "required," *id.* at 4.  The part of *Filetech* that the PECs cite held that the plaintiffs there "ha[d] not shown" that a hearing was necessary because the resolution of factual issues . . . turned on questions of credibility."  304 F.3d at 183 (emphasis added).  That reasoning supports Saudi Arabia's proposal that the Court first look at the parties' submission and then determine whether a hearing would be helpful.

    5.    **The *Ashton* Plaintiffs' proposed motion to compel.**  The *Ashton* Plaintiffs propose that Saudi Arabia's renewed motion to dismiss be delayed so that they may file a motion to compel supplemental interrogatory answers based on searches of information purportedly held by Saudi Arabia's intelligence agencies.  ECF No. 8871, at 1-4.  That proposal is not serious.

    Any motion to compel would be years too late.  This Court ruled on May 24, 2018 that Saudi Arabia then did not need to search documents and information in the control of its intelligence agencies.  *See* ECF No. 4015, at 31:13-15.  That initial ruling was "without prejudice" to later motions.  *Id.*  Plaintiffs later moved twice to compel the production of intelligence-agency documents and moved once for reconsideration on this subject.  This Court denied each of those three motions.  *See* ECF No. 6577, at 8-11, 36-47; ECF No. 6579, at 12-16;

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
February 24, 2023
Page 4

ECF No. 6581, at 10-14.  Plaintiffs objected to each denial, and Judge Daniels overruled each objection and affirmed this Court's orders.  *See* ECF No. 6612 (overruling objections to ECF Nos. 6577 and 6579); ECF No. 6613 (overruling objections to ECF No. 6581).  The *Ashton* Plaintiffs have had ample opportunity to seek discovery.  Their continued refusal to accept any limits on that discovery should not affect the schedule.

The *Ashton* Plaintiffs' reliance on the FBI and MPS document productions after the close of fact discovery does not warrant a different result.  On April 12, 2018, at the beginning of jurisdictional discovery this Court warned Plaintiffs that if the "process" of "discovery from the FBI" were to "bleed[ ] beyond the limited time frame" it would "impose," it would not "allow that to hold up the [K]ingdom's right to file a new motion to dismiss once a reasonable period of discovery has concluded."  ECF No. 3964, at 23:11-17.  Circumstances – and Plaintiffs' intransigence – forced the Court to return to that theme several times.[*]  On March 15, 2022, the Court concluded that Plaintiffs' repeated requests for extensions "ha[d] no limiting principle," observed that it had already warned Plaintiffs that it "would not entertain" further requests for extensions based on "delays in governmental production," and denied any further extension of the close of discovery.  ECF No. 7752, at 2, *objections overruled*, ECF No. 7787.  Those rulings foreclose the *Ashton* Plaintiffs' demand for yet another round of discovery motions.

Nor do the documents on which the *Ashton* Plaintiffs rely support their baseless demands.  For example, they rely prominently on a 2017 FBI field office memorandum describing an unidentified source as "report[ing]" that Al Bayoumi was a "cooptee of the Saudi General Intelligence Presidency," ECF No. 8871-4, at 1, with no information about the reliability of that double-hearsay statement.  Plaintiffs have had access to similar unsourced allegations about Al Bayoumi since before discovery.  *See* ECF No. 3782, at 45 (asserting in 2017 that "declassified FBI records" indicated that "witnesses . . . characterized [Al Bayoumi] as some kind of agent or spy for the Saudi government").  The Court need not and should not indulge the *Ashton* Plaintiffs' pretense that each new document recycling old allegations will break the case open.

**6.    Cross-motions.**  The *Ashton* Plaintiffs' proposal for simultaneous cross-filings at each stage of briefing, ECF No. 8871, at 5, will not aid the Court.  Under their proposal the Court would be presented with 200 pages of dueling opening briefs (likely talking past one another), 200 pages of dueling opposition briefs, and another 100 pages of dueling reply briefs.

**7.    Timing.**  Plaintiffs seek either three or four months from the entry of a scheduling order to file their jurisdictional statement.  *See* ECF No. 8871, at 5 (*Ashton* Plaintiffs: "four

---

[*]  *See, e.g.*, ECF No. 4237, at 29:9-13 ("What is to stop you from arguing every month that I set a motion to compel deadline that you think you are getting more documents and you want to review those?  Saudi Arabia has a real interest in wrapping up this discovery and moving forward to the motion practice."); ECF No. 6546, at 9-10 ("The Court recognizes the importance of these [fact] depositions but further delay is no longer appropriate."); ECF No. 7117 (setting a firm deadline for expert discovery).

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable Sarah Netburn
February 24, 2023
Page 5

months"); ECF No. 8873, at 5 (PEC: "at least 90 days").  The PECs claim that this lengthy period is necessary because of Judge Daniels' denial of their Rule 54(b) motion, ECF No. 8873, at 5; the *Ashton* Plaintiffs claim it is because of "substantial and complex tasks entailed in assembling the relevant record," ECF No. 8871, at 5  Plaintiffs have had approximately 20 months since the close of fact discovery and 8 months since the close of expert discovery to prepare the statement they long ago agreed to submit.  They should not need additional time beyond Saudi Arabia's April 6, 2023 proposed deadline to do so.  Nor did Judge Daniels' denial of the Rule 54(b) motions change the law; it reaffirmed his previous order.  *See* ECF No. 8862.

        **8.**    **Page limits.**  The Court should reject Plaintiffs' attempts to prevent Saudi Arabia from filing reasonable *Daubert* challenges.  Plaintiffs proffer seven experts.  The natural consequence of seven experts, with different qualifications and methodologies, is seven *Daubert* challenges.  The PEC would limit Saudi Arabia to 65 pages (fewer than ten per expert), ECF No. 8873, at 3, and the *Ashton* Plaintiffs would have both sides combine their *Daubert* challenges with their motion papers, ECF No. 8871, at 5.  This Court should reject those proposals and allow Saudi Arabia to file individual *Daubert* motions of up to 20 pages with 10 page replies.  It should also adopt Saudi Arabia's reasonable proposal for 50/50/25 page limits for its renewed motion.

        **9.**    **Role of the *Ashton* Plaintiffs.**  The *Ashton* Plaintiffs' complaint that Saudi Arabia declined to meet and confer with them separately is meritless.  Saudi Arabia followed the appropriate protocol of meeting and conferring with the PECs, as it has throughout this litigation.  The Court established the PECs for the purpose of "conduct[ing] all pretrial proceedings" and "coordinat[ing] the work of plaintiffs' counsel."  ECF No. 248, at ¶¶ 10-11.  It would be impractical for Saudi Arabia to meet and confer with all of Plaintiffs' attorneys involved in this case.  The *Ashton* Plaintiffs' counsel are no longer on the PECs because of their own actions.

        Given the *Ashton* Plaintiffs' separate letter, the Court should also address whether Plaintiffs may file multiple sets of jurisdictional and *Daubert* papers.  The governing Case Management Order authorizes the PECs to "file motion papers and argue motions."  ECF No. 248, at ¶ 11.  Other attorneys, such as *Ashton* counsel, "may give advice and suggestions to the [PECs]" and when "necessary, present individual divergent positions . . . at pretrial conferences."  *Id.* at ¶ 13.  Consistent with that directive, the role of *Ashton* counsel should be limited to providing input to the PECs and appearing, when necessary, at conferences.  That role should not include separate, duplicative briefing on scheduling proposals (like the present letter exchange) or on motions.  If the Court does not direct Plaintiffs to file a single set of papers, it should at a minimum clarify that Plaintiffs collectively are subject to reasonable page limits, such as the 50-page opposition limit proposed above, corresponding to Saudi Arabia's 50-page motion; and that any pages the *Ashton* Plaintiffs use will come out of Plaintiffs' collective allotment.

        **10.**    **Miscellaneous.**  The Court should adopt as uncontested Saudi Arabia's proposals (a) to use a Local Civil Rule 56.1 format for jurisdictional statements, ECF No. 8863, at 2; (b) for tables of evidentiary objections, *id.* at 2-3; and (c) for confidentiality review, *id.* at 3-4.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable Sarah Netburn
February 24, 2023
Page 6

                                                   Respectfully submitted,

                                                   */s/ Michael K. Kellogg*

                                                   Michael K. Kellogg
                                                  *Counsel for the Kingdom of Saudi Arabia*

cc:     All MDL Counsel of Record (via ECF)