

KREINDLER & KREINDLER LLP | 485 Lexington Avenue | New York, NY 10017-2629
office: 212.687.8181 | fax: 212.972.9432 | www.kreindler.com

February 27, 2023

<u>VIA ECF</u>
The Honorable Sarah Netburn
United States Magistrate Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

   Re:  *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

  The *Ashton* Plaintiffs write in further support of their letter requesting a status conference and leave to bring a motion to compel the Kingdom of Saudi Arabia to provide discovery, and in response to Mr. Kellogg's February 24 letter, ECF 8878.

  Saudi Arabia does not object to the requests made by all Plaintiffs for a status conference.

  **A. Plaintiffs should be granted leave to file their motion to compel.**

  Saudi Arabia's letter overlooks its own role in creating the extraordinary circumstances here that risk a manifest injustice to the 9/11 Families and provide good cause for the requested discovery.

  In May 2018, before responding to Plaintiffs' interrogatories and document requests, Saudi Arabia's counsel successfully argued (without filing a motion or any proof) for this Court to bar discovery of the Saudi intelligence agency.  Saudi Arabia then used that bar to improperly craft false interrogatory answers that Omar al Bayoumi and Fahad al Thumairy did no substantive work for the Kingdom in the United States and to avoid the production of highly relevant documents.[1]

  Mr. Kellogg's letter does not and cannot claim that Saudi Arabia's interrogatory answers about Bayoumi and Thumairy were truthful based on Saudi Arabia's actual knowledge.  Instead, Saudi Arabia sidetracks the issue by complaining that Plaintiffs' motion is "not serious" and that Plaintiffs are "recycling old allegations" and "have had access to similar unsourced allegations about Al Bayoumi since before discovery."  ECF 8878 at 3-4.  These claims are incorrect.

  The newly discovered EO information from the 2017 FBI Report is unequivocal about Bayoumi's intelligence role for Saudi Arabia inside the U.S. and provides new specific details about Bayoumi's role as a "cooptee" and his reporting chain through the Saudi Embassy to its

---

[1] When questioned by this Court as to whether Saudi Arabia planned to answer Plaintiffs' interrogatories, Mr. Kellogg stated that "we are going to answer them [the interrogatories served by Plaintiffs] based on the places we have undertaken to search." May 24, 2018 Conference at 29.

February 27, 2023
Page 2

Ambassador Prince Bandar. Contrary to the arguments of Saudi Arabia's counsel, the 2017 FBI Report states this newly discovered information "confirms" prior "[a]llegations of Albayoumi's involvement with Saudi intelligence" that were "not confirmed at the time of the 9/11 Commission Report." Ex. 4 at EO 2638-39. The Report states:

> Allegations of Albayoumi's involvement with Saudi intelligence were not confirmed at the time of the 9/11 Commission Report. The above information confirms these allegations.

Ex. 4 at EO 2639. The 2017 FBI Report therefore itself rejects Saudi Arabia's argument that the new information is based on prior "similar unsourced allegations" about Bayoumi. Moreover, Saudi Arabia completely ignores the related EO information showing that Thumairy and his Saudi government supervisors were doing work for Saudi intelligence inside the U.S. ECF 8871 at 4; *see, e.g.,* Ex. 3 at EO 3490 (2021 FBI Report concludes that information collected by the FBI "helps verify the involvement of the GIP [Saudi intelligence agency] within the MIA offices [the Ministry of Islamic Affairs at the Saudi Embassy].")

This newly discovered information goes to the heart of the jurisdictional inquiry ordered by Judge Daniels to address the "nature and scope of the agency" of the work of Bayoumi and Thumairy in the U.S. for Saudi Arabia. *In re Terrorist Attacks on September 11, 2001*, 298 F. Supp. 3d 631, 651 (S.D.N.Y. 2018). Plaintiffs have been diligent to demand this information about the work of Bayoumi and Thumairy for Saudi intelligence from the beginning of discovery, including filing a 2019 motion for reconsideration on the issue. Saudi Arabia does not and cannot suggest otherwise; the one retort from the Kingdom is its complaint about Plaintiffs' "intransigence" in fighting for the discovery. ECF 8878 at 4. Plaintiffs' unrelenting efforts only provide additional support for their requested motion.

Saudi Arabia ignores that Judge Daniels specifically allowed discovery because Saudi Arabia was "the party in the best position to shed light on that inquiry [the nature and scope of the agency of Bayoumi and Thumairy with Saudi Arabia]." *Id.* Discovery was not intended to be a hollow exercise to allow Saudi Arabia to selectively withhold key evidence in its possession about the actual work of Bayoumi and Thumairy inside the U.S.

It is time for Saudi Arabia to provide honest answers to interrogatories and genuine document production about the role of Saudi agents in the U.S. who gave material assistance to the 9/11 hijackers. Other courts have not hesitated to permit discovery of foreign states for the tortious acts of agents of their intelligence services inside the U.S. *See Liu v. Republic of China*, 892 F.2d 1419, 1421 (9th Cir. 1989) (intelligence bureau of the Republic of China); *Letelier v Republic of Chile*, 488 F. Supp. 665, 665 (D.D.C. 1980) (intelligence agency of Chile).

**B. Saudi Arabia's request to deny the right of the *Ashton* and CAC Plaintiffs to present separate filings should be rejected.**

As this Court is aware, two groups of Plaintiffs brought claims in this case: the *Ashton* Plaintiffs, who include death and injury victims, and the Consolidated Amended Complaint ("CAC") Plaintiffs, who include death and injury victims as well as commercial claimants. The *Ashton* and CAC Plaintiffs filed their own separate complaints which had "factual allegations that were sufficiently different" to require separate motion papers and argument in opposition to

February 27, 2023
Page 3

Saudi Arabia's initial motion to dismiss. ECF 3514 at 3-4 (this Court's Order permitting separate simultaneous briefing); *see also* ECF 3500 (Saudi Arabia's letter to the Court stating that it did not oppose the filing of the separate *Ashton* complaint). Saudi Arabia decided to file a single brief in support of its initial motion to dismiss and Plaintiffs consented to Saudi Arabia's request for additional pages to address the separate claims of the *Ashton* and CAC Plaintiffs in that brief. ECF 3652 (Judge Daniels' Order endorsing Mr. Kellogg's request to file a single brief of 75 pages to address both the *Ashton* and *CAC* claims). On several other occasions the *Ashton* or the CAC Plaintiffs have filed separate discovery or legal motions without objection. *See, e.g.,* ECF 7432 (CAC Plaintiffs' December 2021 Rule 54(b) motion), ECF 7481 (*Ashton* Plaintiffs' Motion to Compel). All Plaintiffs' counsel have and will continue to work together to present common pleadings when possible while properly representing the interests of their thousands of death and injury victims and commercial claimants before this Court.

There is simply no justifiable reason to change this established procedure now and no unfair prejudice to Saudi Arabia, as shown by the prior practice followed in this case. The Kingdom may request additional pages for its briefing if needed. As this Court previously found, the *Ashton* and CAC Plaintiffs should be allowed to continue to represent and protect their interests and present "substantially different" factual allegations as they have previously, "in order to ensure that all claims in this extraordinarily important litigation receive a fair hearing…." ECF 3514 at 3.

Saudi Arabia completely overlooks that the undersigned Speiser and Baumeister firms represent the *Ashton* Plaintiffs and include lawyers who serve on the Plaintiffs Executive Committee for Death and Injury Claims (PEC). Neither firm representing *Ashton* with lawyers on the PEC was informed by Saudi Arabia about its scheduling request or of the meet and confer teleconference that it scheduled. The *Ashton* Plaintiffs only learned about these events when Saudi Arabia filed its instant letter with the Court. Saudi Arabia should share its communications to Plaintiffs with all members of the PEC. The Speiser and Baumeister firms have reached out to their fellow PEC counsel on this issue to ensure that all counsel, including those for Saudi Arabia, will be involved in future meet-and-confers on a plan to resolve any further disagreements.

Respectfully,

KREINDLER & KREINDLER LLP

By: /s/ *Steven R. Pounian*
Steven R. Pounian, Esq.
James P. Kreindler, Esq.
Andrew J. Maloney, Esq.
Megan W. Benett, Esq.
James Gavin Simpson, Esq.
485 Lexington Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: spounian@kreindler.com
*Attorneys for Ashton Plaintiffs*

SPEISER KRAUSE, PC

Frank H. Granito, III, Esq.
Douglas A. Latto, Esq.
Jeanne M. O'Grady, Esq.
800 Westchester Avenue, Suite S-608
Rye Brook, New York 10573
Tel: (914) 220-5333
*Attorneys for Ashton/Burlingame Plaintiffs*

BAUMEISTER & SAMUELS, P.C.

Michel F. Baumeister, Esq.
Dorothea M. Capone, Esq.
140 Broadway, 46th Floor
New York, New York 10005
Tel: (212) 363-1200
*Attorneys for Ashton/Bauer Plaintiffs*