**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
                                          )
IN RE:  TERRORIST ATTACKS ON         )        Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001                       )        ECF Case
_____ )

This document relates to:  *All Actions*


**SAUDI ARABIA'S CONSOLIDATED OPPOSITION TO**
**CAC PLAINTIFFS' MOTION FOR CERTIFICATION AND FOR STAY**
**AND TO *ASHTON* PLAINTIFFS' MOTION FOR RECONSIDERATION**

Michael K. Kellogg
Gregory G. Rapawy
Andrew C. Shen
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900
(202) 326-7999 (fax)

*Attorneys for the Kingdom of Saudi Arabia*

February 28, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

LEGAL STANDARDS ........................................................................................... 5

ARGUMENT .......................................................................................................... 6

    I.    The CAC Plaintiffs Fail To Establish the Exceptional Circumstances
    Necessary To Certify an Interlocutory Appeal ...................................................... 6

        A.    The CAC Plaintiffs Fail To Show that this Court's Order Involves a
        Controlling Question of Law .................................................................... 7

        B.    The CAC Plaintiffs Fail To Show a Substantial Ground for Difference
        of Opinion ................................................................................................ 9

        C.    The CAC Plaintiffs Fail To Show that an Immediate Appeal May
        Materially Advance the Ultimate Termination of This Litigation ............ 11

    II.    The CAC Plaintiffs Fail To Show that a Stay Is Warranted ................................. 14

    III.    The *Ashton* Plaintiffs Fail To Show that Reconsideration Is Warranted .............. 17

        A.    The *Ashton* Plaintiffs Cannot Make a Second Motion for
        Reconsideration ........................................................................................ 17

        B.    The *Ashton* Plaintiffs Point to No New Controlling Authority ................. 17

        C.    The *Ashton* Plaintiffs Could Have Made Their Arguments Earlier .......... 18

        D.    The *Ashton* Plaintiffs' Arguments Do Not Warrant Reconsideration ...... 19

CONCLUSION ....................................................................................................... 20

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allen v. United Student Aid Funds, Inc.*, 2021 WL 1978544 (S.D.N.Y. May 17, 2021).............. 17

*Associated Press v. United States Dep't of Defense*, 395 F. Supp. 2d 17 (S.D.N.Y. 2005)......... 18

*Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002) .................................................. 11

*Bogdanovich, In re*, 2000 WL 1708163 (S.D.N.Y. Nov. 14, 2000) ............................................. 15

*Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*,
    581 U.S. 170 (2017)................................................................................... 13, 15

*California Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004)................. 7

*Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537 (S.D.N.Y. 2013) .............................. 7

*Chunhua Cui v. Monroe Nail II Corp.*, 2019 WL 1643539 (E.D.N.Y. Apr. 16, 2019)................ 17

*Cohen v. UBS Fin. Servs.*, 2014 WL 240324 (S.D.N.Y. Jan. 22, 2014)........................................ 8

*Duplan Corp., In re*, 591 F.2d 139 (2d Cir. 1978).......................................................... 9

*Evergreen Mut. Funds Fee Litig., In re*, 240 F.R.D. 115 (S.D.N.Y. 2007)................................. 18

*Fed. Hous. Fin. Agency v. UBS Americas Inc.*, 2012 WL 13059496
    (S.D.N.Y. Sept. 4, 2012) ...................................................................... 6, 14, 15

*Flor, In re*, 79 F.3d 281 (2d Cir. 1996)................................................................ 5, 9, 10

*Frederick v. Cap. One Bank (USA), N.A.*, 2017 WL 2666113 (S.D.N.Y. June 19, 2017) .......... 17

*German ex rel. German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385
    (S.D.N.Y. 1995) ............................................................................................ 9

*Gottesman v. Gen. Motors Corp.*, 268 F.2d 194 (2d Cir. 1959)...................................... 6

*Grecia v. Bank of New York Mellon Corp.*, 2020 WL 1974192 (S.D.N.Y. Apr. 24, 2020),
    *aff'd sub nom. Grecia v. Samsung Elecs. Am., Inc.*, 833 F. App'x 339
    (Fed. Cir. 2021)................................................................................... 18

*Guang Ju Lin v. United States*, 2015 WL 747115 (S.D.N.Y. Feb. 18, 2015).............................. 17

*Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627 (2d Cir. 1991)........................................ 5

*Hart v. Rick's Cabaret Int'l, Inc.*, 73 F. Supp. 3d 382 (S.D.N.Y. 2014) ...................................... 7

*Hermés Int'l v. Rothschild*, 590 F. Supp. 3d 647 (S.D.N.Y. 2022) .......................................... 9, 10

*Honickman v. BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021) ........................................................ 2

*Int'l Soc. for Krishna Consciousness, Inc. v. Air Canada*, 727 F.2d 253 (2d Cir. 1984) .............. 7

*Ivan Visin Shipping, Ltd v. Onego Shipping & Chartering B.V.*,
    543 F. Supp. 2d 338 (S.D.N.Y. 2008) ................................................................................. 18

*Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021) ................................... 2, 3

*Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21 (2d Cir. 1990) ............................................... 5, 9

*Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863 (2d Cir. 1996) .................................................. 5

*Kolel Beth Yechiel Mechil of Turtikov, Inc. v. YLL Irrevocable Tr.*,
    729 F.3d 99 (2d Cir. 2013) ...................................................................................... 6, 8, 17

*Lawson v. Stephens*, 900 F.3d 715 (5th Cir. 2018) ..................................................................... 10

*Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262 (S.D.N.Y. 2012) ............. 18

*Montanile v. Nat'l Broadcasting Co.*, 216 F. Supp. 2d 341 (S.D.N.Y. 2002) .............................. 17

*Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*,
    482 U.S. 522 (1987) ........................................................................................................... 15

*New York Chinese TV Progs., Inc. v. U.E. Enters., Inc.*, 996 F.2d 21 (2d Cir. 1993) ................. 10

*Nken v. Holder*, 556 U.S. 418 (2009) ........................................................................................ 6

*NLRB v. SW Gen., Inc.*, 580 U.S. 288 (2017) ............................................................................. 11

*North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160
    (2d Cir. 1995) ....................................................................................................... 4, 6, 7, 19

*Perry H. Koplik & Sons, Inc., In re*, 377 B.R. 69 (S.D.N.Y. 2007) .......................................... 5, 10

*Pfizer, Inc. v. Government of India*, 434 U.S. 308 (1978) ........................................................... 20

*Pharr v. Evergreen Gardens, Inc.*, 2004 WL 487315 (S.D.N.Y. Mar. 11, 2004) ....................... 18

*Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567 (S.D.N.Y. 2001) ........................... 6, 12

*Ramos v. Telgian Corp.*, 2016 WL 1959746 (E.D.N.Y. May 3, 2016) ....................................... 11

*SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223 (S.D.N.Y. 2000) ...................................... 9, 11

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995) .......................................................... 6

*Slade v. Shearson, Hammill & Co.*, 517 F.2d 398 (2d Cir. 1974) .................................................. 8

*Sturgeon v. Frost*, 139 S. Ct. 1066 (2019) ...................................................................................... 15

*Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638 (S.D.N.Y. 2012) ....................... 6, 14, 15

*The Sapphire*, 78 U.S. (11 Wall.) 164 (1870) ................................................................................ 20

*United States v. Pena Ontiveros*, 2008 WL 2446824 (S.D.N.Y. June 16, 2008) ........................ 18

*United Steelworkers of Am., AFL-CIO v. New Jersey Zinc Co.*,
     828 F.2d 1001 (3d Cir. 1987) .................................................................................................... 10

*Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49 (2d Cir. 2019) .................................................. 6

*Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480 (1983) .................................................... 15

*World Trade Ctr. Disaster Site Litig., In re*, 503 F.3d 167 (2d Cir. 2007) .................................. 16

*Youngers v. Virtus Inv. Partners Inc.*, 228 F. Supp. 3d 295 (S.D.N.Y. 2017) ......................... 7, 11

## STATUTES

28 U.S.C. § 1292(b) .................................................................................. 5, 6, 7, 9, 10, 11

Anti-Terrorism Act, 18 U.S.C. § 2331 *et seq.* ............................................................................... 2

     18 U.S.C. § 2333 ......................................................................................................................... 10

     18 U.S.C. § 2333(d)(1) ............................................................................................................... 20

Dictionary Act, 1 U.S.C. § 1 ......................................................................................... 10, 11, 19

Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222,
     130 Stat. 852 (2016) .......................................................................................... 2, 3, 4, 7, 10,
                                                                                                             11, 12, 13, 19, 20

     28 U.S.C. § 1605B ....................................................................................................................... 10

     28 U.S.C. § 1605B(b) .............................................................................................................. 3, 8

## RULES

Fed. R. Civ. P. 72(b) ...................................................................................................................... 10

Local Civ. R. 6.3 ...................................................................................................................... 17, 18

Local Civ. R. 6.3(a) ...................................................................................................................... 17-18

**INTRODUCTION**

This Court's February 7, 2023 Order denied reconsideration of its earlier order dismissing many of Plaintiffs' claims for lack of jurisdiction.  That denial set the stage for Saudi Arabia to renew its motion to dismiss and for this Court to decide the factual questions that the parties have disputed for almost five years in jurisdictional discovery.  Two factions of Plaintiffs – those joining in the Consolidated Amended Complaint ("CAC Plaintiffs") and those joining in the separate *Ashton* Complaint ("*Ashton* Plaintiffs") – urge this Court to certify or reconsider its order and to put off the day on which they must come forward with evidence to support their allegations.  Neither request meets the governing standard, and both should be denied.

The CAC Plaintiffs' request for certification, seeking an interlocutory appeal to the Second Circuit, fails on each of the three conditions required for that extraordinary relief.  They fail to identify any question of law that controls this Court's discretionary denial of reconsideration, fail to show a substantial ground for difference of opinion as to the questions they seek to present, and fail to show that an immediate appeal would materially advance (rather than delay) the ultimate termination of this litigation.  They also fail even to address the standard for a stay pending appeal; which, in any event, they cannot meet.

The *Ashton* Plaintiffs' request for reconsideration has four fatal flaws.  It is an improper second request for reconsideration, it identifies no new controlling authority that could support reconsideration, it relies on arguments that could have been made before this Court issued its recent order, and it comes forward with nothing that could – as reconsideration requires – give rise to a clear conviction of error in this Court's ruling.

This Court's rulings have set out the legal standards to govern its consideration of Saudi Arabia's renewed motion to dismiss.  It should now proceed to find the facts and apply the law.  Plaintiffs' dissatisfaction with this Court's well-reasoned order is no basis for delay.

## BACKGROUND

On March 28, 2018, this Court granted in part and denied in part without prejudice Saudi Arabia's motion to dismiss for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA").  ECF No. 3946 ("March 2018 Order"), at 17-37.  The Court agreed with Saudi Arabia that Plaintiffs had failed to plead a prima facie case that Saudi Arabia had supported Al Qaeda and caused the 9/11 attacks by funding Islamic charities.  *Id.* at 31-37.  The Court also agreed that Plaintiffs had failed to plead a prima facie case that Saudi Arabia had supported Al Qaeda and caused the 9/11 attacks through the alleged actions of six out of eight individuals alleged to be Saudi Arabia's employees or agents.  *Id.* at 24-31.  As to the two remaining individuals, Omar Al Bayoumi and Fahad Al Thumairy, the Court found that Plaintiffs had pleaded a prima facie case for jurisdiction and authorized

> limited and targeted jurisdictional discovery critical to answering th[e] question . . . whether and to what extent Thumairy, Bayoumi, and their agents took actions in 2000, at the direction of more senior Saudi officials, to provide assistance to [Nawaf Al] Hazmi, [Khalid Al] Mihdhar, and other 9/11 hijackers.

*Id.* at 23.  Jurisdictional fact discovery ended in June 2021.  Jurisdictional expert discovery ended in June 2022, with one trailing deposition completed a week later.

On December 7, 2021, after the close of fact discovery, the Plaintiffs who had joined in the Consolidated Amended Complaint ("CAC Plaintiffs") moved this Court to reconsider and revise its March 2018 Order.  The CAC Plaintiffs relied primarily on two Second Circuit decisions that they claimed had changed the law:  *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021), and *Honickman v. BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021).  Those cases involved claims against banks for aiding and abetting acts of international terrorism under the Anti-Terrorism Act ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act ("JASTA").  The CAC Plaintiffs contended that the interpretation of JASTA's aiding-and-

- 2 -

abetting cause of action set out in *Kaplan* and *Honickman* helped them to state a claim for aiding-and-abetting against Saudi Arabia and that Congress had intended "all such claims (and specifically, Plaintiffs' claims) [to] be able to proceed in U.S. courts."  ECF No. 7432, at 11. They devoted most of their argument – ten pages, with lengthy footnotes – to attempting to show that the allegations of the Consolidated Amended Complaint met the legal standards they claimed that *Kaplan* and *Honickman* established.  *Id.* at 11-21 & nn.5-20.

On December 17, 2021, the Plaintiffs in *Ashton v. Kingdom of Saudi Arabia*, No. 17-cv-2003 (the "*Ashton* Plaintiffs"), moved to compel Saudi Arabia to produce additional documents, and also moved to reconsider on the same grounds as the CAC Plaintiffs.  ECF 7481, at 14-17.

On February 7, 2022, Saudi Arabia opposed both motions.  ECF No. 7648.  In its opposition, Saudi Arabia contended that *Kaplan* and *Honickman* were irrelevant because they did not affect the jurisdictional reasoning – based on an interpretation of 28 U.S.C. § 1605B(b) – on which the March 2018 Order turned.  *Id.* at 4-16.  Saudi Arabia also contended in the alternative that *Kaplan* and *Honickman* did not help Plaintiffs to state a claim for aiding and abetting – both because JASTA's new aiding-and-abetting cause of action does not apply to a foreign sovereign such as Saudi Arabia, *id.* at 17; and also because even if JASTA's aiding-and-abetting cause of action did apply, plaintiffs' allegations would still not state a claim under that provision, *id.* at 18-22.  Plaintiffs' joint reply, ECF No. 7740, addressed each of Saudi Arabia's arguments, focusing primarily on Saudi Arabia's jurisdictional argument, *id.* at 1-7; and secondarily on attempting to show that Plaintiffs' previously dismissed allegations were legally sufficient under *Kaplan* and *Honickman*, *id.* at 7-14.

On February 7, 2023, this Court denied Plaintiffs' motions.  ECF No. 8862 ("February 7 Order").  After summarizing the background of the case, *id.* at 2-5, the governing legal standards,

*id.* at 5-9, and Plaintiffs' arguments, *id.* at 9-12, the Court turned to the parties' dispute over whether JASTA creates an aiding-and-abetting cause of action against foreign sovereigns. Relying on the text of the specific operative provisions, read in light of the statute as a whole and of longstanding precedent, the Court concluded that it did not.  *Id.* at 12-19.  The Court further reasoned that because *Kaplan* and *Honickman* did not and could not "alter[ ] . . . the statutory provisions that foreclose an aiding-and-abetting international terrorism claim against a foreign state," they were insufficient to give rise to "a 'clear conviction of error with respect to a point of law on which [the Court's] previous decision was predicated.' "  *Id.* at 19-20 (quoting *North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995)).[1]

The CAC Plaintiffs now move to amend this Court's February 7 Order to include a certification for immediate appeal.  ECF No. 8865.  They assert that such an appeal is warranted as to "[t]he Court's rulings that JASTA's aiding and abetting and conspiracy causes of action are unavailable in cases against foreign states, and [its] consequent finding that the Second Circuit's decisions in *Kaplan* and *Honickman* are inapposite to the claims against Saudi Arabia."  *Id.* at 4. They move to "stay . . . proceedings as to Saudi Arabia" during the appeal.  *Id.* at 13.  The *Ashton* Plaintiffs also move for reconsideration of the February 7 Order.  ECF No. 8870.  Both motions rely on Judge Netburn's Report and Recommendation in the pending case against Sudan, which recommended that this Court rule that JASTA does create an aiding-and-abetting cause of action against foreign sovereigns.  ECF No. 7942, at 42-44, *quoted in* ECF No. 8865, at 7-8, *and in* ECF No. 8870, at 2-4.

---

[1] The Court also denied the *Ashton* Plaintiffs' requests for additional discovery.  ECF No. 8862, at 21-28.  The present motions do not further challenge that denial.

## LEGAL STANDARDS

The two motions before the Court seek three kinds of relief:  a certification for immediate appeal under 28 U.S.C. § 1292(b); a stay pending the Second Circuit's resolution of that appeal; and reconsideration of this Court's February 7 Order.  Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that the order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

That provision is "a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996) ("It is a basic tenet of federal law to delay appellate review until a final judgment has been entered.").  Use of "th[e] certification procedure should be strictly limited because 'only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'"  *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990)).  "The party seeking an interlocutory appeal has the burden of showing [those] 'exceptional circumstances.'"  *In re Perry H. Koplik & Sons, Inc.*, 377 B.R. 69, 73 (S.D.N.Y. 2007) (quoting *Klinghoffer*, 921 F.3d at 24).  The determination whether that burden has been carried is "committed to the discretion" of this Court.  *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir. 1991).

Section 1292(b) further states that an "application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."  Courts determining whether to stay proceedings during an interlocutory appeal generally apply the familiar four-factor test for stays of all kinds:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent

a stay; (3) whether issuance of the stay will substantially injure the other parties
interested in the proceeding; and (4) where the public interest lies.

*Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 640 (S.D.N.Y. 2012) (quoting *Nken v.*

*Holder*, 556 U.S. 418, 434 (2009)); *see also*, *e.g.*, *Fed. Hous. Fin. Agency v. UBS Americas Inc.*,

2012 WL 13059496, at *1 (S.D.N.Y. Sept. 4, 2012) (applying same test to request for stay

pending appeal certified under § 1292(b)).

    As the February 7 Order itself sets forth, "[t]he standard for reconsideration is 'strict, and

reconsideration will generally be denied unless the moving party can point to controlling

decisions or data that the court overlooked – matters, in other words, that might reasonably be

expected to alter the conclusion reached by the court.'"  ECF No. 8862, at 6-7 (quoting *Van*

*Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 54 (2d Cir. 2019)).  One ground for reconsideration

is "an intervening change in controlling law," *id.* at 6 (quoting *Kolel Beth Yechiel Mechil of*

*Turtikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013)), but such a change must

leave the court with a "clear conviction of error with respect to a point of law on which its

previous decision was predicated," *id.* at 7 (quoting *North River*, 63 F.3d at 165).  Further, courts

deny reconsideration where a party "seeks solely to relitigate an issue already decided."  *Id.* at 9

(quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

## ARGUMENT

**I.    The CAC Plaintiffs Fail To Establish the Exceptional Circumstances Necessary To Certify an Interlocutory Appeal**

    The CAC Plaintiffs fail to establish any of the "three conditions for certification" of an

interlocutory appeal under § 1292(b).  *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567,

569 (S.D.N.Y. 2001).  This Court should follow the Second Circuit's instruction that the use of

§ 1292(b) "must be strictly limited to the precise conditions stated in the law," *Gottesman v.*

*Gen. Motors Corp.*, 268 F.2d 194, 196 (2d Cir. 1959), and deny certification.

A.    **The CAC Plaintiffs Fail To Show that this Court's Order Involves a Controlling Question of Law**

The first condition for certification is that the order to be certified must "involve[] a controlling question of law."  28 U.S.C. § 1292(b).  The statutory phrase "'question of law' . . . refer[s] to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record."  *Youngers v. Virtus Inv. Partners Inc.*, 228 F. Supp. 3d 295, 298 (S.D.N.Y. 2017) (quoting *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013)).  This Court's ultimate determination in the February 7 Order was that the Second Circuit's *Kaplan* and *Honickman* decisions did not give rise to "a 'clear conviction of error with respect to a point of law on which its previous decision was predicated.'"  ECF No. 8862, at 20 (quoting *North River*, 63 F.3d at 165).  That discretionary determination, which turned on a comparison of *Kaplan* and *Honickman* to this Court's reasoning in the March 2018 Order, is not a pure question of law.

Nor do the CAC Plaintiffs contend otherwise.  They point instead to this Court's conclusion that JASTA creates no cause of action against a foreign state for aiding and abetting an act of international terrorism.  That part of the Court's opinion does resolve a "question of law," but not a "controlling" one.  A question of law is not "controlling" within the meaning of § 1292(b) where there is "at least one alternative basis" for the order that decides that question.  *California Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 95-96 (2d Cir. 2004) ("*CalPERS*"); *Youngers*, 228 F. Supp. 3d at 298-99 (applying *CalPERS*); *Hart v. Rick's Cabaret Int'l, Inc.*, 73 F. Supp. 3d 382, 395-96 (S.D.N.Y. 2014) (concluding that a finding was not controlling because it was "an *alternative* basis" for the court's ruling); *see also Int'l Soc. for Krishna Consciousness, Inc. v. Air Canada*, 727 F.2d 253, 256 (2d Cir. 1984) (declining to hear certified appeal that presented with "not one legal question, 'but a complexity of interlocking

questions'") (quoting *Slade v. Shearson, Hammill & Co.*, 517 F.2d 398, 403 (2d Cir. 1974)).

Here, there are alternative bases for this Court's ruling that would be unaffected if the Second

Circuit were to consider the question of aiding-and-abetting liability for foreign states alone.

*First*, because the February 7 Order resolved a motion for reconsideration, the question

presented to this Court was not whether the March 2018 Order was correct in the first instance,

but whether *Kaplan* and *Honickman* made "an intervening change of controlling law." ECF No.

8862, at 6 (quoting *Kolel*, 729 F.3d at 108). As the Court pointed out, those intervening

decisions "concern[ ] a different legal issue . . . and thus 'cannot be considered controlling' so as

to warrant reconsideration.'" *Id.* at 19 (quoting *Cohen v. UBS Fin. Servs.*, 2014 WL 240324, at

*4 (S.D.N.Y. Jan. 22, 2014). That lack of new controlling authority is, itself, an alternative basis

supporting this Court's denial of reconsideration – and therefore warranting denial of

certification – wholly apart from the merits of the parties' statutory disputes.

*Second*, Saudi Arabia's opposition to Plaintiffs' motions to reconsider raised several

other bases for denial that this Court did not need to consider, but that independently support the

result this Court reached in the March 2018 Order. Those bases include Saudi Arabia's

arguments that if any aiding-and-abetting cause of action against a foreign sovereign existed,

Plaintiffs could assert it only after showing that the jurisdictional requirements of § 1605B(b) are

met, as they have not done; and that Plaintiffs' allegations do not meet the requirements set forth

in *Kaplan* and *Honickman* to state an aiding-and-abetting claim against a private party. If this

Court were to certify an appeal, the Second Circuit would need either to address those alternative

arguments – taking it far afield from the CAC Plaintiffs' proposed question of law, and deep into

the complex record of this case – or else would be unable to resolve whether this Court properly

denied reconsideration.  Accordingly, the proposed question is not "controlling," as that term has been construed in cases such as *CalPERS*, *Youngers*, and *Hart*.

The Second Circuit's decisions in *Klinghoffer* and in *In re Duplan Corp.*, 591 F.2d 139 (2d Cir. 1978), on which the CAC Plaintiffs rely, ECF No. 8865, at 5, do not help them to establish that their proposed question is "controlling."  In *Klinghoffer*, reversal would have terminated the relevant actions, and the court of appeals merely clarified that termination was not a requirement in all cases.  *See* 921 F.2d at 24.  In *Duplan*, the Court suggested without deciding that it might be appropriate to certify an order denying a motion to strike that would have eliminated some issues from a complex bankruptcy proceedings.  591 F.2d at 148 & n.11. Neither case dealt with an attempt like the one here – a proposal to certify a discretionary ruling that relies in part on a question of law, but is also supported by other legal and factual considerations that do not even arguably meet the statutory conditions for certification.

### B.      The CAC Plaintiffs Fail To Show a Substantial Ground for Difference of Opinion

The second condition for certification is a "substantial ground for difference of opinion" on the proposed question of law.  28 U.S.C. § 1292(b).  "[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion."  *Flor*, 79 F.3d at 284.  Courts in this District have construed § 1292(b) "to require [not] just moderate disagreement among courts," but "entrenched and longstanding" disagreement.  *Hermés Int'l v. Rothschild*, 590 F. Supp. 3d 647, 656 (S.D.N.Y. 2022).  And courts have cautioned against treating certification merely as "a 'vehicle to provide early review of difficult rulings in hard cases.'"  *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 226 (S.D.N.Y. 2000) (quoting *German ex rel. German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995)).

In attempting to satisfy this condition, the CAC Plaintiffs first assert that the question whether JASTA creates an aiding-and-abetting cause of action is "complex" and "difficult." ECF No. 8865, at 7.  Such assertions do not meet their burden.  They then rely on Judge Netburn's contrary reasoning in her Report and Recommendation as to Sudan.  *Id.* at 7-8.  It is beyond question that Judge Netburn's recommendations on a dispositive motion under Federal Rule of Civil Procedure 72(b) deserve the respect of the Court and the parties.  Nevertheless, absent consent of the parties, magistrate judges are "not authorized to enter . . . final order[s]," *New York Chinese TV Programs, Inc. v. U.E. Enterprises, Inc.*, 996 F.2d 21, 25 (2d Cir. 1993), but instead act as "advisors – not deciders," *Lawson v. Stephens*, 900 F.3d 715, 720 (5th Cir. 2018); *see also United Steelworkers of Am., AFL-CIO v. New Jersey Zinc Co.*, 828 F.2d 1001, 1005 (3d Cir. 1987) ("[A] magistrate to whom a motion has been referred under subparagraph (B) acts merely as a recommender.").  Because a report and recommendation is not a decision of a court, it cannot create an "entrenched and longstanding" conflict among courts to satisfy § 1292(b)'s "demanding" requirement.  *Hermés*, 590 F. Supp. 3d at 656.

In any event, assessment of a § 1292(b) certification request involves "analyz[ing] the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute."  *Perry H. Koplik & Sons*, 377 B.R. at 74 (quoting *Flor*, 79 F.3d at 284).  This Court's February 7 Order thoroughly analyzes the intertwined text of 18 U.S.C. § 2333, 28 U.S.C. § 1605B, and the Dictionary Act, 1 U.S.C. § 1, and further observes that its result is reinforced by "longstanding precedent regarding foreign states and international law."  ECF No. 8862, at 12-19.  The CAC Plaintiffs ignore that analysis entirely, merely quoting the Report and Recommendation's adoption of their argument that the Dictionary Act does not apply when "the context indicates otherwise."  ECF No. 8865, at

7 (quoting 1 U.S.C. § 1).  But this Court addressed that language and explained that the applicable "context" of JASTA includes an express exception to sovereign immunity for primary-liability claims, but none for secondary-liability claims.  ECF No. 8862, at 17.  The CAC Plaintiffs have no response to that reasoning.

Nor can the CAC Plaintiffs establish substantial ground for difference of opinion by relying on considerations of JASTA's "purpose and policy," or by a lengthy string-citation of statements that various members of Congress made in the floor debate.  ECF No. 8865, at 7-8 & n.1.  This Court properly relied in its decision on the basic principle that "[w]here the text is clear, 'extra-textual evidence' of 'legislative history, purpose, and post-enactment practice' are unnecessary."  ECF No. 8862, at 12 (quoting *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 299-301 (2017)).  And even where extra-textual evidence of intent is relevant – as, here, it is not – "floor statements by individual legislators rank among the least illuminating forms of legislative history."  *SW Gen.*, 580 U.S. at 308; *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 457 (2002) ("We see no reason to give greater weight to the views of two Senators than to the collective votes of both Houses, which are memorialized in the unambiguous statutory text.").

**C.      The CAC Plaintiffs Fail To Show that an Immediate Appeal May Materially Advance the Ultimate Termination of This Litigation**

The third condition for certification is "that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  This condition is met where appeal "promises to advance the time for trial or shorten the time required therefor."  *Youngers*, 228 F. Supp. 3d at 302 (quoting *Ramos v. Telgian Corp.*, 2016 WL 1959746, at *2 (E.D.N.Y. May 3, 2016)).  In addition, "[t]he institutional efficiency of the federal court system is among the chief concerns underlying [§] 1292(b)," and "[t]he efficiency of both the district court and the appellate court are to be considered."  *Credit Bancorp.*, 103 F.

Supp. 2d at 226-27.  Certification is inappropriate where, "given the amount of time required for the multiple reviews sought, the actual result would be to further prolong what has already been a protracted litigation."  *Primavera Familienstifung*, 139 F. Supp. 2d at 573.

If this Court were to certify an interlocutory appeal now, and the Second Circuit were to affirm this Court's order denying reconsideration, the result would be the waste of appellate-court resources on an unnecessary piecemeal appeal, with no saving of district-court resources. That result could occur either if the Second Circuit agreed with this Court's statutory conclusion that JASTA creates no aiding-and-abetting cause of action; or if the Second Circuit affirmed on one of the alternative grounds that support this Court's order, *see supra* pp. 8-9, any of which could prevent it from even reaching the statutory question.  Indeed, even if the Second Circuit were to reach the statutory question and disagree with this Court, it might well still remand for this Court to consider in the first instance whether Plaintiffs' allegations are sufficient under *Kaplan* and *Honickman*, which could lead to this Court dismissing Plaintiffs' claims again.  In any of those scenarios, immediate appellate review would fail to promote judicial efficiency.

Even if the Second Circuit were to reverse and hold Plaintiffs' allegations sufficient, it is far from clear that an immediate appeal would advance the termination of this litigation.  After all, Plaintiffs profess to believe that they can establish jurisdiction over and even prove liability against Saudi Arabia based on their primary-liability claims alone.  (Saudi Arabia vigorously disagrees.)  If that were true, it would be much more efficient for Plaintiffs to proceed with their primary-liability claims immediately, since the damages for the primary- and secondary-liability claims are no different.  An immediate appeal accompanied by a stay would put off, likely for years, the earliest day that Plaintiffs could go to trial.  And, from Saudi Arabia's perspective, it would also put off (likely for years) the Court's "resol[ution] . . . [of] factual disputes" about

Saudi Arabia's "immunity from suit" – disputes that should be resolved "as near to the outset of the case as reasonably possible." *Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 174, 179 (2017).

Proceeding to hear Saudi Arabia's renewed motion to dismiss Plaintiffs' primary-liability claims may be more efficient even if Plaintiffs later persuade the Second Circuit to reinstate their secondary-liability claims. For example, Saudi Arabia believes that Plaintiffs will fail to come forward with any evidence to show that either Al Bayoumi or Al Thumairy had any contemporaneous knowledge or awareness that Al Hazmi and Al Mihdhar were Al Qaeda members or terrorists of any kind, and that affirmative evidence will show that Al Bayoumi and Al Thumairy lacked any such knowledge. If the Court so finds, then the actions of Al Bayoumi and Al Thumairy will be irrelevant under any legal standard, and Al Bayoumi and Al Thumairy will remain out of the case even if Plaintiffs somehow resurrect their aiding-and-abetting claims.

The CAC Plaintiffs' attempts to show that their proposed course of action would be more efficient fall short. *First*, they incorrectly assert that their factual allegations about Saudi Arabia's support of Islamic charities are "uncontested" and, under *Kaplan* and *Honickman*, "have established jurisdiction already." ECF No. 8865, at 9. It is not true, and never has been, that Plaintiffs' allegations are uncontested. Rather, it has simply never been necessary for the Court to assess the factual basis for those allegations because they have been and remain legally insufficient on their face. Since its 2017 motion to dismiss, Saudi Arabia has consistently maintained that Plaintiffs have not met their burden to come forward with evidence to prove any of their allegations, including the charity allegations.[2] Accordingly, even if the Second Circuit

---

[2] *See* ECF No. 3668, at 18-23 (explaining that JASTA did not change the FSIA's pleading or evidentiary requirements); *id.* at 48, 52, 53-54, 61, 63-64, 66 (repeatedly pointing to Plaintiffs' burden to "prove" as well as "plead" their allegations about the charities and their lack

were to hold that Plaintiffs' aiding-and-abetting claims are legally viable, it would remain for this Court to determine whether those claims provide a factual basis for jurisdiction.

*Second*, the CAC Plaintiffs complain of the "complex" and "difficult[ ]" nature of the evidentiary proceeding required to resolve their factual assertions.  It is, to be clear, Plaintiffs who have throughout discovery pushed for more documents, more fact witnesses, and more expert testimony; while Saudi Arabia has argued for a much more focused record and proposed doing without experts at all.  Even now, the CAC Plaintiffs call for a "hearing that will involve virtually all of the complexities of a full trial" and "extensive witness testimony involving translators," *id.* at 10, while Saudi Arabia contends that this Court may well determine in its discretion that no evidentiary hearing or live testimony is required, *see* ECF No. 8878, at 3.  Be that as it may, the only question presented by the current motion is whether an immediate appeal may advance the termination of proceedings.  The CAC Plaintiffs fail to show that it will.

## II.    The CAC Plaintiffs Fail To Show that a Stay Is Warranted

If the Court denies certification, the CAC Plaintiffs' request for a stay pending the appeal will be moot.  Even if the Court were to grant certification, however, no stay is warranted under the familiar four-factor test for stay applications.

*First*, the CAC Plaintiffs fail to "ma[k]e a strong showing that [they are] likely to succeed on the merits."  *Sutherland*, 856 F. Supp. 2d at 640.  Even if they could establish a substantial ground for difference of opinion (which they cannot), that showing alone would not equate to the strong showing required for a stay.  *See UBS Ams.*, 2012 WL 13059496, at *1.  The Second Circuit is more likely to accept this Court's detailed analysis of the statutory text, ECF No. 8862, at 12-19, coupled with a recognition that all statutes "s[eek] to balance conflicting goals," *id.* at

---

of "evidence" to support their allegations); ECF No. 3851, at 12-14, 40, 42-43, 44-48, 53-54 (reinforcing same points on reply and addressing Plaintiffs' attempts to proffer evidence).

17 (citing *Sturgeon v. Frost*, 139 S. Ct. 1066 (2019)), than the CAC Plaintiffs' hand-waving assertions that the statute should be construed in their favor because it was "enacted . . . for the specific benefit of the September 11th community," ECF No. 8865, at 12.

*Second*, the CAC Plaintiffs have failed to show that they "will be irreparably injured absent a stay." *Sutherland*, 856 F. Supp. 2d at 640.  The only injury they will face is continuing to litigate this case, and "it is well established that '[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.'" *In re Bogdanovich*, 2000 WL 1708163, at *6 (S.D.N.Y. Nov. 14, 2000); *UBS Ams.*, 2012 WL 13059496, at *1.

*Third*, "issuance of [a] stay w[ould] substantially injure the other parties interested in the proceeding." *Sutherland*, 856 F. Supp. 2d at 640.  As a foreign sovereign, Saudi Arabia is presumptively immune from suit and has a statutory right to the adjudication of that "immunity defense '[a]t the threshold' of [an] action." *Helmerich & Payne*, 581 U.S. at 187 (quoting *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983)).  That right reflects the "demands of comity in suits involving foreign states[] . . . as parties." *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987) ("American courts should . . . take care to demonstrate due respect . . . for any sovereign interest expressed by a foreign state.").  Saudi Arabia has a strong interest in renewing its motion to dismiss and showing that years of discovery have produced no factual support for Plaintiffs' baseless assertions that senior Saudi officials directed Al Bayoumi and Al Thumairy to help the 9/11 hijackers.

*Fourth*, "the public interest lies," *Sutherland*, 856 F. Supp. 2d at 640, in moving this litigation forward.  In vacating a stay pending appeal in a different litigation arising from the

September 11 attacks, the Second Circuit found "public interest considerations on both sides."

*In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007).

> On the one hand, there is a public interest in having any of the Plaintiffs who might be entitled to recovery receive compensation while still living and able to use it to cover medical costs and improve the quality of their lives. On the other hand, there is a public interest in vindicating the immunity of any of the Defendants who might be entitled to immunity from suit.

*Id.* Here, both considerations favor moving forward. In the unlikely event that Plaintiffs prevail in proving their allegations about Al Bayoumi and Al Thumairy, they will be one step closer to potential recovery. In the likely event that Saudi Arabia prevails, it will have vindicated its immunity. Either way, the public interest will be served.

The CAC Plaintiffs do not address the traditional stay factors, but merely argue that an appeal would "preserv[e] the status quo and sav[e] the Court's and the parties' resources." ECF No. 8865, at 13. The contention that the "status quo" should be preserved is empty: there is no public (and no legitimate private) interest in having litigation remain pending for its own sake. The contention that a stay would save resources is unsupported, both because Plaintiffs' appeal will likely fail and because their allegations about Al Bayoumi and Al Thumairy will have to be adjudicated regardless of their success on appeal.

Finally, the CAC Plaintiffs' alternative request that the Court hear *Daubert* motions before substantive briefing, ECF No. 8865, at 13, has nothing to do with the present motions. As Saudi Arabia has explained in recent letters, separate *Daubert* briefing is unnecessary and inefficient in a bench trial because it deprives the Court of the flexibility to avoid deciding *Daubert* motions that turn out to be unnecessary to its factual findings. *See* ECF No. 8863, at 4-5; ECF No. 8878, at 3. It is the Court's prerogative to say what would be most helpful – but Plaintiffs' request for an interlocutory appeal should not affect that choice one way or the other.

III.    **The *Ashton* Plaintiffs Fail To Show that Reconsideration Is Warranted**

The *Ashton* Plaintiffs' motion for reconsideration has four fatal flaws.  *First*, it is a

second motion for reconsideration, a type of filing that courts in this District properly reject.

*Second*, it relies on Judge Netburn's Report and Recommendation in the Sudan case, which is

not controlling authority.  *Third*, it relies on arguments that the *Ashton* Plaintiffs could have

raised before this Court denied their motion for reconsideration, but did not.  *Fourth*, even if

properly before the Court, its arguments would not support a clear conviction of error.

A.    **The *Ashton* Plaintiffs Cannot Make a Second Motion for Reconsideration**

This Court's February 7 Order denied the CAC and *Ashton* Plaintiffs' motions for

reconsideration of the Court's March 2018 Order.  Accordingly, the *Ashton* Plaintiffs' present

motion for reconsideration is their second on the same issue.  "As Courts in this District have

consistently recognized, '[a] litigant is entitled to a single motion for reconsideration.' "

*Frederick v. Cap. One Bank (USA), N.A.*, 2017 WL 2666113, at *1 (S.D.N.Y. June 19, 2017)

(quoting *Guang Ju Lin v. United States*, 2015 WL 747115, at *2 (S.D.N.Y. Feb. 18, 2015)).[3]

Courts "narrowly construe and strictly apply" the standards for reconsideration "to avoid

duplicative rulings on previously considered issues."  *Id.* at *1 (quoting *Montanile v. Nat'l*

*Broadcasting Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002), in turn citing Local Civil Rule

6.3).  The *Ashton* Plaintiffs' disregard for that principle supports denial of their motion.

B.    **The *Ashton* Plaintiffs Point to No New Controlling Authority**

As the February 7 Order explains, reconsideration can be appropriate based on "an

intervening change in controlling law."  ECF No. 8862. at 6 (quoting *Kolel*, 729 F.3d at 108); *see*

---

[3] *See also, e.g., Allen v. United Student Aid Funds, Inc.*, 2021 WL 1978544, at *2 n.4
(S.D.N.Y. May 17, 2021) (noting similar out-of-Circuit authority); *Chunhua Cui v. Monroe*
*Nail II Corp.*, 2019 WL 1643539, at *2 (E.D.N.Y. Apr. 16, 2019) (following *Frederick* and
*Guang Ju Lin*).

Local Civ. R. 6.3(a) (requiring that a motion for reconsideration be supported by "a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked").  The *Ashton* Plaintiffs' motion is based on the assertion that this Court "overlooked" the Report and Recommendation in the Sudan case.  ECF No. 8870, at 1. The Report and Recommendation is not "controlling" authority that would meet the standard for reconsideration.  *Ivan Visin Shipping, Ltd v. Onego Shipping & Chartering B.V.*, 543 F. Supp. 2d 338, 339 (S.D.N.Y. 2008) (explaining that "[c]ontrolling authority means decisions of the Second Circuit Court of Appeals . . . or the U.S. Supreme Court", and citing *In re Evergreen Mut. Funds Fee Litig.*, 240 F.R.D. 115, 118 (S.D.N.Y. 2007)).  Courts in this District reject motions for reconsideration based on authority that is not controlling.[4]

### C.      The *Ashton* Plaintiffs Could Have Made Their Arguments Earlier

A "motion for reconsideration is not an 'opportunity for making new arguments that could have been previously advanced.'"  *Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 265 & n.9 (S.D.N.Y. 2012) (quoting *Associated Press v. United States Dep't of Defense*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005)).  The *Ashton* Plaintiffs' motion runs afoul of that principle in two ways.  *First*, the Report and Recommendation on which they rely was issued in May 2022, nine months before this Court's February 7 Order.  If they believe the Report and Recommendation constituted new authority, the *Ashton* Plaintiffs could have

---

[4] *See*, *e.g.*, *Grecia v. Bank of New York Mellon Corp.*, 2020 WL 1974192, at *1 (S.D.N.Y. Apr. 24, 2020) (rejecting motion for reconsideration based on a decision that was "[a]t best, . . . potentially persuasive authority . . . but [did] not rise anywhere near to a change in controlling law"), *aff'd sub nom. Grecia v. Samsung Elecs. Am., Inc.*, 833 F. App'x 339 (Fed. Cir. 2021); *United States v. Pena Ontiveros*, 2008 WL 2446824, at *5 (S.D.N.Y. June 16, 2008) ("[M]erely persuasive authority[ ] . . . does not meet the standard for a motion for reconsideration."); *Pharr v. Evergreen Gardens, Inc.*, 2004 WL 487315, at *2 (S.D.N.Y. Mar. 11, 2004) (observing that decisions proffered in support of reconsideration were "not controlling law" and so did not "meet the standard under Rule 6.3"), *aff'd*, 123 F. App'x 420 (2d Cir. 2005).

submitted a notice of supplemental authority at any time to argue that it should affect the Court's decision.

*Second*, Plaintiffs could themselves have made the arguments in the Report & Recommendation in response to Saudi Arabia's own filings.  The authorities cited in the Report and Recommendation either were cited in Plaintiffs' motions, or predated those motions and could have been cited.  *See* ECF No. 7942, at 41-42.  Nor did Plaintiffs lack notice of Saudi Arabia's position or opportunities to oppose it.  Saudi Arabia first argued that JASTA does not create an aiding-and-abetting action against foreign sovereigns in January 2018.  ECF No. 3851, at 8.  Saudi Arabia then raised the same argument in its February 2022 opposition to the CAC and *Ashton* Plaintiffs' motions for reconsideration.  ECF No. 7648, at 22.  The *Ashton* Plaintiffs thus had a fair chance to present contrary arguments in reply in support of their motion, if not earlier.  Instead, they chose not to submit their own reply, instead adopting that of the CAC Plaintiffs.  ECF No. 7742 (adopting ECF No. 7740).  That reply addressed the issue in one paragraph, ECF No. 7740, at 3-4, which this Court considered and rejected, ECF No. 8862, at 17.  Thus, the *Ashton* Plaintiffs cannot show that this Court overlooked any argument they made.

### D.    The *Ashton* Plaintiffs' Arguments Do Not Warrant Reconsideration

Even if this were the *Ashton* Plaintiffs' first motion for reconsideration (which it is not) and even if they could point to an intervening change in controlling law (which they cannot), they would still have the burden to persuade this Court that it should have a "clear conviction of error with respect to a point of law on which its previous decision was predicated."  ECF No. 8862, at 7 (quoting *North River*, 63 F.3d at 165).  None of their arguments meets that standard.

In addressing the Dictionary Act's language, the *Ashton* Plaintiffs rely on that Act's clause providing that it applies "unless the context indicates otherwise."  ECF No. 8870, at 2-3 (quoting 1 U.S.C. § 1).  This Court considered JASTA's "context" and concluded that it did not

indicate otherwise because JASTA "provided no explicit waiver of foreign sovereign immunity in its aiding-and-abetting amendment." ECF No. 8862, at 17. That reasoning is reinforced by the point that Congress expressly incorporated the Dictionary Act's definition of "person" in 18 U.S.C. § 2333(d)(1). It is hard to imagine a clearer statutory context indicating that a particular definition applies than a provision directing courts to apply that definition.[5]

The *Ashton* Plaintiffs also err in relying on JASTA's prefatory language, ECF No. 8870 (quoting JASTA §§ 2(a)(6) and (7)), and general purposes. This Court properly declined to rely on that language, looking instead to the "operative clauses for aiding-and-abetting claims" that constitute "the plain language of the statute to which the members of Congress agreed." ECF No. 8862, at 13. Nor can *Ashton* Plaintiffs rely on a floor statement, ECF No. 8870, at 6, to overcome clear text, *see supra* 11. Their arguments provide no reason to question this Court's decision and certainly fall short of the clear-conviction standard for reconsideration.

The Court should also deny the *Ashton* Plaintiffs' request for oral argument. ECF No. 8870, at 1. Oral argument is unnecessary in light of their motion's multiple fatal flaws.

## CONCLUSION

The Court should deny the CAC Plaintiffs' and *Ashton* Plaintiffs' motions.

---

[5] The *Ashton* Plaintiffs misplace reliance on *Pfizer, Inc. v. Government of India*, 434 U.S. 308 (1978), which held that a foreign sovereign can bring a suit as a plaintiff under the Clayton Act even though that Act authorizes suits by "any person." No language in either the Sherman Act or the Clayton Act refers specifically to the Dictionary Act's definition of "person"; nor did *Pfizer* refer to the Dictionary Act in its reasoning. Also, *Pfizer* rested on precedent permitting state governments to bring antitrust suits, *see id.* at 317, as well as on the background principle that "a foreign nation is generally entitled to prosecute any civil claim in the courts of the United States" because "[t]o deny . . . this privilege would manifest a want of comity and friendly feeling," *id.* at 318-19 (quoting *The Sapphire*, 78 U.S. (11 Wall.) 164, 167 (1870)). Here, no precedent suggests that the States can be sued for aiding and abetting terrorism – indeed, they would be entitled to assert their own sovereign immunity from any such suit – and comity weighs against, not in favor of, making foreign sovereigns targets of aiding-and-abetting claims to which the United States would never voluntarily subject itself in its own or any other courts.

Dated:  February 28, 2023

Respectfully submitted,

*/s/  Michael K. Kellogg*

Michael K. Kellogg
Gregory G. Rapawy
Andrew C. Shen
KELLOGG, HANSEN, TODD, FIGEL
   & FREDERICK, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900
(202) 326-7999 (fax)

*Attorneys for the Kingdom of Saudi Arabia*

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 28, 2023, I electronically filed the foregoing

Consolidated Opposition to CAC Plaintiffs' Motion for Certification and for Stay and to *Ashton*

Plaintiffs' Motion for Reconsideration using the ECF system, which sent notice of filing in this

matter to all counsel of record.


/s/  Michael K. Kellogg
Michael K. Kellogg

*Attorney for the Kingdom of Saudi Arabia*