## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

## VIA ECF

March 1, 2023

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District Court for the S.D.N.Y.
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

Re:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

The Plaintiffs Executive Committees ("PECs") write in reply to the oppositions of the Kingdom of Saudi Arabia (ECF No. 8878) and of Dallah Avco (ECF No. 8882) to the PECs' proposed schedule for the next steps regarding the claims against the Kingdom of Saudi Arabia (and Dallah Avco) (ECF No. 8873).

### 1.  The Court should defer further proceedings as to Saudi Arabia pending interlocutory review.

Saudi Arabia's and Dallah Avco's suggestion that the Court should afford no consideration to the PECs' motion for interlocutory appeal is without merit. For the reasons set forth in Plaintiffs' brief, the three requirements for certification under 28 U.S.C. 1292 plainly are met here, *see* ECF No. 8865 at 2-12, and Saudi Arabia's arguments to the contrary are not credible, as Plaintiffs will more fully show in their reply brief. Consistent with the Court's prior order staying further proceedings as to Saudi Arabia pending the resolution of Plaintiffs' underlying Rule 54(b) motion, *see* ECF No. 8542, an immediate appellate decision on the controlling questions of law addressed in the February 7 Order has a significant potential to resolve the jurisdictional issue entirely, and will in any case materially advance the MDL proceedings. Accordingly, the PECs respectfully request that, upon completion of the briefing on Plaintiffs' motion to certify the February 7 Order for interlocutory appeal early next week, the Court address that motion before addressing any schedule for the further proceedings Saudi Arabia proposes, which may be rendered entirely unnecessary through an interlocutory appeal.

### 2.  The PECs proposal to follow the normal order of Saudi Arabia filing its motion to dismiss before Plaintiffs respond with their jurisdictional averments is not reneging on any agreement with Saudi Arabia.

Saudi Arabia is wrong when it asserts that the PECs are "reneging" on an agreement to provide a jurisdictional statement before Saudi Arabia serves its motion. To the contrary, Plaintiffs' current position simply reflects the realities of the changed circumstances, which have eliminated any rationale for a departure from the normal rule for the order of proceedings—*i.e.*, that Saudi Arabia file its motion to dismiss and Plaintiffs then respond to it, including by providing any jurisdictional averment they believe necessary to address Saudi Arabia's challenge. Saudi Arabia's effort to cast doubt on the change of circumstance cited by Plaintiffs, meanwhile, is both speculative and wrong. Contrary to Saudi Arabia's

The Honorable Sarah Netburn
March 1, 2023
Page 2

claim, Plaintiffs had every reason to believe that they could craft the jurisdictional statement in a way that would provide meaningful public access to evidence, particularly given the public release of substantial amounts of the evidence through the Executive Order 14040 process. But that is no longer necessary, given the material advancement of the parties' and government's redaction reviews over the last year.[1]

Further still, Saudi Arabia ignores that Plaintiffs' previous proposal relating to the jurisdictional statement was itself conditional, and Plaintiffs have always asserted that Saudi Arabia should file its motion to dismiss in the first instance, to the extent it seeks an aggressive motion and briefing schedule. Indeed, the PECs' letter in June 2022 (ECF No. 8157), specifically stated that the PECs' willingness to provide a jurisdictional statement at the outset was conditional upon being afforded adequate time to do so, and that if Saudi Arabia wanted to accelerate the motion to dismiss process, the proper manner for accelerating the overall schedule would be to proceed under the normal course—that is, Saudi Arabia would file its motion first, and Plaintiffs would then filed their jurisdictional averments with their opposition. *Id.* at n.2. Given Saudi Arabia's current proposal, Plaintiffs present position is entirely consistent with the one they offered previously. In any case, circumstances have in fact changed, and there is no longer any need for a departure from the normal rule that briefing and submissions on a renewed motion to dismiss begins with the filing of the motion to dismiss.[2]

### 3. Plaintiffs' proposals related to *Daubert* motions and page limits promote efficiency.

The PECs believe their proposal for interlocutory appeal presents the most efficient path to move the entire MDL forward. If, however, the Court wishes to continue to advance aspects of the litigation against Saudi Arabia in parallel, Plaintiffs have offered alternative proposals on how best to proceed. Under both alternatives, Plaintiffs have proposed that *Daubert* challenges should be prioritized, again to the extent the Court declines to stay proceedings during the interlocutory appeal process.[3] (ECF No. 8873).[4]

---

[1] This is not to say that redaction issues have been resolved. To the contrary, and as the Court and Plaintiffs have noted elsewhere, *see* ECF Nos. 1900 at 3, 8865 at n. 3, the public right of access to filings and evidence would be at its apogee in relation to any potentially dispositive proceedings, and the approach to redactions that has been applied in the discovery context would not be appropriate. But the redaction reviews of key materials such as the expert reports do eliminate the need for any alteration in the normal sequencing.

[2] Saudi Arabia claims that the filing of its motion is not necessary to define the nature of its challenge, under the theory that a single sentence in the Court's May 2018 Order (ECF No. 3946 at 23) resolved the entirety of how Saudi Arabia may frame its challenge. ECF No. 8878 at 2. That is not correct. Plaintiffs have no idea how Saudi Arabia will frame the challenge in support of its renewed motion (including, for instance, what burdens it will claim Plaintiffs must meet, what they will claim Plaintiffs must show to satisfy JASTA's jurisdictional requirements under current law, or what claims it will make concerning the import of the Court's February 7 Order to the jurisdictional inquiry).

[3] The first alternative proposed that, if the Court preferred to advance a portion of the district court proceedings parallel with interlocutory appeal, the Court could materially advance the case against Saudi Arabia by moving forward on the *Daubert* issues, because the principal issues raised in the *Daubert* motions are not materially intertwined with the questions raised in the PECs' request for certification for interlocutory appeal.

[4] Saudi Arabia is also claiming that its motion to dismiss could somehow be resolved in Saudi Arabia's favor without an evidentiary hearing. In this regard, Saudi Arabia's claim that it will show that there is no "evidence" to support jurisdiction is plainly incorrect given the immense record assembled to date, which includes thousands of pages of FBI and other government reports, for which the government has agreed to provide business record certifications; extensive witness testimony; a broad spectrum of phone records; financial and business transaction records; videos; photos, and documents

The Honorable Sarah Netburn
March 1, 2023
Page 3

_____

In the event that the motions to dismiss ultimately become necessary, conducting the *Daubert* motions first has the added advantage of affording the parties and the Court with notice as to what expert testimony the Court will consider for the motions to dismiss. That will allow Saudi Arabia to draft its motion with that awareness, and will allow Plaintiffs to know what expert evidence is available for the averments and their opposition. Saudi Arabia's own claims underscore the benefit and logic of this approach. Specifically, Saudi Arabia makes clear that it will attempt to argue through its motion that "no evidence" exists to support jurisdiction. Given the scope and nature of the expert opinions offered by the parties, it is absolutely clear from this statement that Saudi Arabia's renewed motion to dismiss will be materially (if not entirely) dependent on its *Daubert* challenges and its ability to defend its own experts' opinions. That fact confirms that prioritizing the *Daubert* challenges will result in a more efficient presentation of the issues and eliminate the need for the Court to consider invalid arguments.

Saudi Arabia's opposition fails to address these points, and instead simply notes that, in some circumstances, courts may proceed simultaneously with both *Daubert* motions and motions to dismiss. That assertion does not address the obvious efficiencies and benefits *in this case* of Plaintiffs' alternative proposals.

On page limits, the PECs refer the Court back to our previous proposal at ECF No. 8873 at 2-3, noting that Saudi Arabia's unfair proposal for 30 *Daubert* briefs spanning 500 pages of *Daubert* briefing is excessive. However, because Plaintiffs must address nearly twice the volume of material produced by Saudi Arabia's experts (800 pages by Saudi Arabia's expert versus 452 by experts identified by the PECs'), the total page lengths for the briefing on both sides should be comparable.

Finally, as to the Kingdom's and Dallah Avco's page limit proposal with respect to the *Ashton* plaintiffs' request to file their own motions and oppositions, the PECs respectfully submit that the PECs' pages should not be reduced as a result of any separate *Ashton* filings. Such a reduction would not be appropriate, given the nature of the PECs' obligations and the scope of the interests, plaintiffs, and cases they will be representing in their submissions.

Respectfully submitted,

MOTLEY RICE LLC                           COZEN O'CONNOR

By:  */s/ Robert T. Haefele*              By:  */s/ Sean P. Carter*
ROBERT T. HAEFELE                          SEAN P. CARTER
JODI WESTBROOK FLOWERS                      STEPHEN A. COZEN
DONALD A. MIGLIORI                          J. SCOTT TARBUTTON
MOTLEY RICE LLC                            COZEN O'CONNOR
28 Bridgeside Boulevard                     One Liberty Place
Mount Pleasant, SC 29465                    1650 Market Street, Suite 2800

_____

retrieved from involved Saudi officials themselves, and related actors, and other evidence inculpating involved parties. Any relevant determinations and assessments of that evidence cannot be undertaken without a hearing. What is apparent, however, from Saudi Arabia's statement on this point is that it intends to demand that the Court engage in literally thousands of individualized admissibility and other evidentiary assessments based solely on page-limited paper submissions. While not appropriate or feasible in any case, it does underscore the complexity of undertaking Saudi Arabia's proposals, and thus the logic and benefit of interlocutory appeal to clarify the focus of the district court proceedings.

The Honorable Sarah Netburn
March 1, 2023
Page 4

---

Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*For the Plaintiffs' Executive Committee for Personal Injury and Death Claims*

Philadelphia, Pennsylvania 19103
Tel.: (215) 665-2105
Email: scarter@cozen.com

*For the Plaintiffs' Executive Committee for Commercial Claims*

cc:   The Honorable George B. Daniels, via ECF
      All Counsel of Record via ECF