**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |
| | ECF Case |

This document relates to:  *All Consolidated Amended Complaint Plaintiffs at ECF No. 3463*

<u>**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO AMEND THE COURT'S FEBRUARY 7, 2023 ORDER TO CERTIFY CONTROLLING QUESTIONS OF LAW FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**</u>

March 10, 2023

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ......................................................................................................................1

II.    ARGUMENT ..........................................................................................................................2

      A.    The Opinion Involves A Controlling Question Of Law. ........................................2

      B.    There Are Substantial Grounds For Differences Of Opinion. .............................4

      C.    An Immediate Appeal Will Materially Advance The Termination Of This Litigation Within The Meaning Of Section 1292(b). .........................................7

III.    CONCLUSION .....................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atchley* v. *AstraZeneca UK Ltd.*,
  22 F.4th 204 (D.C. Cir. 2022) .................................................................................6

*Atl. City Elec. Co. v. Gen. Elec. Co.*,
  207 F. Supp. 613 (S.D.N.Y.) ...................................................................................7

*Barnhart v. Peabody Coal Co.*,
  537 U.S. 149 ............................................................................................................7

*Bd. of Educ.* v. *Harris*,
  444 U.S. 130 (1979) .................................................................................................6

*California Pub. Employees' Ret. Sys. v. WorldCom, Inc.*,
  368 F.3d 86 (2d Cir. 2004) .....................................................................................3

*Capitol Records, LLC v. VIMEO, LLC*,
  972 F. Supp. 2d 537 (S.D.N.Y. 2013) .....................................................................4

*Coopers & Lybrand v. Livesay*,
  437 U.S. 463 (1978) .................................................................................................4

*Corley v. United States*,
  556 U.S. 303 (2009) .................................................................................................6

*Doe v. Pataki*,
  120 F.3d 1263 (2d Cir. 1997) .................................................................................6

*Donohue v. Milan*,
  942 F.3d 609, 615 (2d Cir. 2019) ...........................................................................4

*In re Duplan Corp.*,
  591 F.2d 139 (2d Cir. 1978) ...................................................................................4

*Fed. Energy Admin. v. Algonquin SNG, Inc.*,
  426 U.S. 548 (1976) .................................................................................................6

*In re Gen. Motors LLC Ignition Switch Litig.*,
  427 F. Supp. 3d 374 (S.D.N.Y. 2019) .....................................................................8

*Glatt v. Fox Searchlight Pictures Inc.*,
  2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013) ............................................... 5, 6, 8

*Hart v. Rick's Cabaret Int'l, Inc.*,
   73 F. Supp. 3d 382 (S.D.N.Y. 2014) ................................................................ 3

*Helvering v. Morgan's, Inc.*,
   293 U.S. 121 (1934) ........................................................................................ 6

*Honickman* v. *BLOM Bank SAL*,
   6 F.4th 487 (2d Cir. 2021) ...................................................................*passim*

*Int'l Soc. for Krishna Consciousness, Inc. v. Air Canada*,
   727 F.2d 253 (2d Cir. 1984) .......................................................................... 3

*Kaplan* v. *Lebanese Canadian Bank, SAL*,
   999 F. 3d 842 (2d Cir. 2021) ................................................................*passim*

*Klein v. Vision Lab Telecommunications, Inc.*,
   399 F. Supp. 2d 528 (S.D.N.Y. 2005) ............................................................ 8

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*,
   921 F.2d 21 (2d Cir. 1990) ............................................................................ 4

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
   547 U.S. 71 (2006) ........................................................................................ 6

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   2021 WL 2433737 (D.D.C. June 15, 2021) .................................................... 4

*Sims v. United States*,
   359 U.S. 108 (1959) ...................................................................................... 6

*Twitter, Inc. v. Mehier Taamneh, et al.*,
   Case No. 21-1496 (United Stated Supreme Court) ........................................ 7

*United States* v. *Turkette*,
   452 U.S. 576 (1981) ...................................................................................... 6

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
   516 U.S. 199 (1996) ...................................................................................... 4

*Youngers v. Virtus Inv. Partners Inc.*,
   228 F. Supp. 3d 295 (S.D.N.Y. 2017) ............................................................ 3

**Statutes and Rules**

28 U.S.C. § 1292 .............................................................................................*passim*

28 U.S.C. § 1605B ................................................................................................ 7

Fed. R. Civ. P. 54(b) ..................................................................................................................... 8

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ......................... 6

## I.      **INTRODUCTION**

Plaintiffs respectfully submit this reply memorandum of law in further support of their motion to amend the Court's February 7, 2023 Memorandum Decision and Order ("February 7 Order") (ECF No. 8862), to certify for interlocutory appeal this Court's order that JASTA's aiding and abetting and conspiracy causes of action are not available in cases against foreign state defendants, and its associated determination that the Second Circuit Court of Appeals' decisions in *Kaplan* v. *Lebanese Canadian Bank, SAL*, 999 F. 3d 842 (2d Cir. 2021) and *Honickman* v. *BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021) are inapposite to Plaintiffs' claims against the Kingdom of Saudi Arabia ("Kingdom" or "Saudi Arabia").

Plaintiffs' opening brief at ECF No. 8865 ("Br.") showed that the February 7 Order's rulings on those pure and controlling questions of law, which have never been addressed by the Second Circuit or any Court of Appeals, readily meet the requirements for certification under 28 U.S.C. § 1292, and that the exceptional circumstances of this case warrant interlocutory review. The Kingdom's opposition ("KSA Opp.") fails to rebut Plaintiffs' showings as to any of those elements. The Kingdom is simply wrong that the February 7 Order rested on at least one other alternative ground. The Court's holding that JASTA's secondary liability cause of action is unavailable against foreign states is the sole ground for its decision, and controlled its derivative conclusions that reconsideration of the February 7 Order is not warranted. The Kingdom's effort to argue that no substantial grounds for difference of opinion exist as to the secondary liability holding, despite Judge Netburn's contrary ruling in her Sudan Report (ECF No. 7942 at 42-44), are unconvincing. Saudi Arabia's arguments concerning Section 1292's third requirement fare no better, and simply ignore the importance of the secondary liability question to any further proceedings as to Saudi Arabia and the manifest judicial efficiencies that would undeniably follow from prompt appellate resolution of the issue.

This Court's recent Scheduling Order for further proceedings as to Saudi Arabia adopted Plaintiffs' proposal that briefing on *Daubert* motions be conducted in the first instance. *See* ECF No.

8896. As Plaintiffs noted in their opening brief and letter submissions concerning further proceedings against the Kingdom, Br. at 13 and ECF Nos. 8873 and 8888, interlocutory review can proceed in parallel to the *Daubert* briefing, allowing the Court and parties to materially advance the litigation against the Kingdom while the interlocutory review process is ongoing, without losing the principal benefits and efficiencies of interlocutory review.[1]

Accordingly, and for the reasons discussed below, Plaintiffs respectfully request that the Court amend the February 7 Order to include the necessary statement to permit Plaintiffs to seek an immediate appeal of the ruling that JASTA's secondary liability cause of action is unavailable against foreign states under 28 U.S.C. § 1292(b).

## II.   ARGUMENT

### A.   The Opinion Involves A Controlling Question Of Law.

The Kingdom acknowledges that the February 7 Order's holding that JASTA's aiding and abetting and conspiracy causes of action are unavailable in cases against foreign states resolved a pure question of law, but attempts to argue that ruling is not "controlling," under the theory that the February 7 Order also rested on at least one other "alternative ground." KSA Opp. at 7-8. Plainly not so.

The Court's holding that JASTA's secondary liability cause of action is unavailable as to foreign states is the sole ground for its decision, and ordained all of the related determinations made in the February 7 Order. Indeed, the bulk of the February 7 Order's analysis focuses on the statutory construction question. *Id.* at 12–19. The Court's holding that JASTA secondary liability does not apply to foreign states is the sole basis for the briefly-addressed related conclusions that: (1) *Kaplan* and *Honickman* are inapplicable; and (2) because they are inapposite, *Kaplan* and *Honickman* provide no basis for reconsideration. *Id.* at 19-20. Thus, the February 7 Order's conclusions that *Kaplan* and

---

[1] Given the Scheduling Order's adoption of this alternative approach, Plaintiffs' stay request is withdrawn.

*Honickman* are inapposite and that reconsideration is therefore unwarranted, cited by the Kingdom as "alternative grounds" for the February 7 Order, *see* KSA Opp. at 8, are in fact not alternative grounds at all, but rather derivative conclusions that follow directly from the Court's statutory holding.

Because the February 7 Order rested on a pure question of law and an appellate ruling in Plaintiffs' favor on that issue would set aside the sole basis for all of the February 7 Order's conclusions, the present case is readily distinguishable from the decisions cited by the Kingdom. In *Youngers v. Virtus Inv. Partners Inc.*, 228 F. Supp. 3d 295, 298 (S.D.N.Y. 2017), for example, the court declined certification of one of two *independent* bases for denying the motion to dismiss, because a successful appeal would not alter the result on the order under review. That was also the basis for denial of certification in *Hart v. Rick's Cabaret Int'l, Inc.*, 73 F. Supp. 3d 382, 395 (S.D.N.Y. 2014). The denial of interlocutory review in *Int'l Soc. for Krishna Consciousness, Inc. v. Air Canada*, 727 F.2d 253, 256 (2d Cir. 1984), meanwhile, rested on the conclusion that review would require the Court to grapple with "a multiplicity of factual possibilities which [could] generate[] a kaleidoscope of hypothetical legal issues," a circumstance plainly not presented by review of the pure question of statutory construction addressed in the February 7 Order. And the decision in *California Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004) affirmatively supports certification here. There, the district court certified and the Second Circuit accepted a statutory interpretation question of first impression that involved a pure question of law, like the one at issue here. *Id.* at 90. The Court's separate discretionary decision in that case, to decline interlocutory review of additional fact-bound questions as to whether individual cases were "related to" a bankruptcy proceeding, *id.* at 95-96, has no relevance to the certification question before this Court, which involves a pure question of law.

The fact that Saudi Arabia's opposition to the motion for reconsideration raised various other arguments that the February 7 Order did not address, KSA Opp. at 8, does not alter the conclusion that the decision presents a controlling question of law. As the Kingdom is compelled to concede, *id.*

at 9, an issue need not be dispositive in order to be controlling within the meaning of Section 1292(b). Instead, it is sufficient that resolution of the question "may importantly affect the conduct of an action," *In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 n.27 (1978)), as is certainly true of the secondary liability issue addressed by the February 7 Order. And while it is true that the Kingdom could invite the Second Circuit to entertain its additional arguments on appeal, "the possibility that the [appellate court] may in its discretion address other issues 'fairly included within the certified order' does not render the order ineligible for interlocutory appeal." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, No. CV 11-1049 (PLF), 2021 WL 2433737, at *8 (D.D.C. June 15, 2021) (citing *Donohue v. Milan*, 942 F.3d 609, 615 (2d Cir. 2019) (the court of appeals may "consider a question different than the one certified as controlling")); *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) (same); *Capitol Records, LLC v. VIMEO, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (same). Stated simply, the Second Circuit would not need to reach the Kingdom's additional arguments to resolve the controlling question of law addressed in the February 7 Order, and the potential that it may in its discretion elect to do so is not a barrier to certification.

## B. There Are Substantial Grounds For Differences Of Opinion.

The Kingdom admits that the February 7 Order addressed a matter of first impression concerning JASTA's construction, KSA Opp. at 9, a circumstance that itself supports a finding of substantial grounds for differences of opinion under Second Circuit precedent. *Capitol Recs.*, 972 F. Supp. 2d at 551 (citation omitted); *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir. 1990) (holding that "issues [that] are difficult and of first impression" are appropriate for review under Section 1292(b)). Nonetheless, the Kingdom urges the Court to conclude that Section 1292(b)'s second element is not satisfied, under the apparent theory that reasonable jurists could not possibly reach different conclusions as to

JASTA's construction. In service of this claim, the Kingdom asks the Court to discount entirely Judge Netburn's contrary ruling in the Sudan Report (ECF No. 7942 at 42-44), based solely on the fact that Judge Netburn is a magistrate judge, KSA Opp. at 10, and also to disregard JASTA's enacted Findings and Purpose and legislative history. *Id.* at 11. None of these arguments withstand scrutiny.

Initially, the Kingdom's dismissive arguments about Judge Netburn's conclusion in the Sudan Report ignore both Judge Netburn's depth of experience with JASTA, and the thoroughness of the Report's analysis and treatment of the issue at hand. Pursuant to this Court's referral, Judge Netburn has been presiding over pretrial proceedings in the MDL since September 2016, including the litigation against the Kingdom and Sudan under JASTA. Given this responsibility, it is beyond dispute that Judge Netburn has extensive experience and familiarity with JASTA's statutory framework for suits against foreign states, and almost certainly more so than most federal judges. The Kingdom's citations concerning the role of magistrate judges in the federal system do nothing to call into question Judge Netburn's particular depth of experience on these matters.

Nor does the Kingdom address Judge Netburn's actual analysis, which reflects an earnest and thorough treatment of the arguments and authorities offered by both sides. As discussed in Plaintiffs' opening brief, ECF No. 8865 at 7-8, and reflected by the Sudan Report itself, ECF No. 7942 at 42-43, Judge Netburn engaged in a thoughtful analysis of JASTA's text, structure, purpose and the relevant case law, and reached the opposite conclusion from the one this Court reached based on its analysis of the same factors and authorities. The fact that two judges with deep experience in this area of the law reached divergent conclusions, based on their respective analyses of the same factors and authorities, plainly supports the conclusion that substantial grounds for differences of opinion exist as to the availability of JASTA secondary liability in cases against foreign states, *see Glatt v. Fox Searchlight Pictures Inc.*, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013) ("[I]ntra-district split and

decisions from other circuits show a substantial basis exists for difference of opinion."), and the fact that magistrate judges do not generally issue "final decisions" in no way undermines that conclusion.

Invoking isolated canons of statutory construction, the Kingdom likewise urges that JASTA's enacted Findings and Purpose, and the unequivocal statements of its sponsors that foreign states are subject to aiding and abetting liability under the statute, should be discounted entirely in evaluating whether substantial grounds for differences of opinion exist, KSA Opp. at 11, but ample authority exists for the contrary position. In fact, the Second Circuit's decision in *Kaplan* itself cited JASTA's purpose to "reach persons [entities, and foreign countries] who provide support for terrorism 'directly or indirectly'" as a touchstone for interpreting the statute's text.[2] *Kaplan*, 999 F. 3d at 856. The same is true of the D.C. Circuit. *See Atchley* v. *AstraZeneca UK Ltd.*, 22 F.4th 204, 217 (D.C. Cir. 2022) ("Our analysis is informed by [JASTA's] statutory findings in light of the realities of modern terrorism").[3] And while the Kingdom cites authority for the proposition that floor statements of individual legislators are of limited value, KSA Opp. at 11, there is a more relevant principle that floor statements of sponsors are entitled to considerable weight, particularly where, as here, Congress did not issue a conference or committee report. *See, e.g., Corley v. United States,* 556 U.S. 303, 318 (2009); *Fed. Energy Admin. v. Algonquin SNG, Inc.,* 426 U.S. 548, 564 (1976); *Doe v. Pataki,* 120 F.3d 1263, 1277 (2d Cir. 1997).

---

[2] The February 7 Order recognized the Dictionary Act's qualifying language providing that the listing of terms in the definition of the word "person" applies "unless the context provides otherwise," February 7 Order at 17, and therefore looked to the statue as a whole, its structure, and Congress's intent in reaching its interpretation. *Id.* at 17-19. Judge Netburn's contrary conclusion looked to those same factors. *See* ECF No. 7942 at 42-44; *see also Sims v. United States*, 359 U.S. 108, 112 (1959) (observing that when a definition uses the word "includes," the question of whether or not a state is a person "cannot be abstractly declared," but must be discerned from the "legislative environment"); *Helvering v. Morgan's, Inc.,* 293 U.S. 121, 125 n.1 (1934) ("[T]he verb 'includes' imports a general class, some of whose particular instances are those specified in the definition.").
[3] *See also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 217 (2012) (discussing the "prefatory-materials canon," under which "[a] preamble, purpose clause, or recital is a permissible indicator of meaning."); *Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Dabit*, 547 U.S. 71, 86 (2006) (relying on Congress's "stated purpose" in the Securities Litigation Uniform Standards Act of 1998 to support a broad reading of the preemptive scope of the Act); *United States* v. *Turkette*, 452 U.S. 576, 588–90 (1981) (relying on Congress's "declared purpose" as reflected in its statutory findings to broadly construe the scope of the federal RICO statute); *Bd. of Educ.* v. *Harris*, 444 U.S. 130, 141 (1979) (relying on Congress's "stated purpose" as reflected in its statutory findings to construe the Emergency School Aid Act).

These competing canons of statutory construction only underscore the complexity of the statutory interpretation question addressed in the February 7 Order, and why it is certainly correct that substantial grounds for differences of opinion exist here.[4] *See also Atl. City Elec. Co. v. Gen. Elec. Co.*, 207 F. Supp. 613, 620 (S.D.N.Y.), aff'd, 312 F.2d 236 (2d Cir. 1962) (issue affecting "scope of discovery procedure, the length and complexity of ultimate trial, and the expenditure of time, money and effort which these cases will engender . . . [favors] conclusive[] determin[ation] . . . expeditiously. Therefore, in determining whether there is 'substantial ground for difference of opinion' . . . , a narrow approach is not justified.").

### C.  An Immediate Appeal Will Materially Advance The Termination Of This Litigation Within The Meaning Of Section 1292(b).

The February 7 Order addressed the availability of JASTA secondary liability in cases against foreign states for the first time ever (apart from Judge Netburn's Sudan recommendation), and held that it does not apply. February 7 Order at 12-19.

The February 7 Order also explained (again for the first time) that this construction of JASTA supported the Court's earlier ruling dismissing several of Plaintiffs' theories entirely, including those based on the Kingdom's funding and support for al Qaeda through charity intermediaries, and limiting Plaintiffs to ATA primary liability theories predicated on the direct involvement of Saudi officials in providing support for the September 11th hijackers. *Id.* at 20-21. Plaintiffs' opening brief explained the profound significance of the February 7 Order's legal conclusion to the entire conduct of the litigation

---

[4] Notably, parties and stakeholders in the pending U.S. Supreme Court case addressing the meaning and scope of ATA aiding-and-abetting liability, *Twitter v. Taamneh*, No. 21-1496, expressed their understanding in briefs submitted to the Court that JASTA's aiding-and-abetting cause of action applies to foreign states. *See, e.g.*, Br. for Respondents Facebook, Inc. and Google LLC Supporting Petitioner, at 46–50 (Nov. 29, 2022); Br. of Former State Department Legal Advisers as *Amici Curiae* In Support of Neither Party, at 2-3, 5-7 (Dec. 6, 2022). In relation to that analysis, the rule of construction provision included in JASTA's immunity exception provides additional grounds for differences of opinion. It provides that JASTA's jurisdictional grant for "tortious acts" does not apply to "claims of mere negligence," but makes no reference to excluding claims for aiding and abetting or other torts. 28 U.S.C. § 1605B; *see also Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (discussing *expressio unius est exclusion alterus* canon).

against Saudi Arabia and Sudan, and the myriad ways in which interlocutory review would materially advance the MDL and conserve judicial resources. Br. at 8-12.

As noted, an appellate ruling that JASTA secondary liability applies to foreign states would effectively resolve the jurisdictional question, consistent with the standards set forth and discussed in Plaintiffs' underlying briefs in support of their Rule 54(b) motion. In fact, the Second Circuit may exercise its discretion to resolve the jurisdictional question outright, which it can do on the basis of a straightforward review of the sufficiency of Plaintiffs' allegations to establish jurisdiction. Even short of that, appellate review at this juncture will avoid the risk that this Court and the parties will undertake an enormously complicated jurisdictional inquiry focused on the wrong conduct, and pursuant to an incorrect legal standard. It will thus avoid the potential need to conduct serial inquiries in this Court related to jurisdiction, a circumstance that forcefully supports certification. *In re Gen. Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 393 (S.D.N.Y. 2019) (granting certification in MDL because "immediate appeal serves the interests of judicial economy, because reversal after trial might well require a new trial"); *Klein v. Vision Lab Telecommunications, Inc.*, 399 F. Supp. 2d 528, 537 (S.D.N.Y. 2005) (granting certification to avoid possibility that Plaintiffs may be required to try case twice); *Glatt*, 2013 WL 5405696, at *2 (certifying case because "standard for determining whether an unpaid intern is an 'employee' covered by the FLSA and the NYLL is a controlling question of law because application of a standard different from the one adopted by this Court could result in the reversal of a final judgment"); *id.* at *3 ("Use of a different standard may . . . require decertification of the class or collective action, or simplify the issues for trial. Resolving this question now also avoids the possibility that a post-trial appeal would require a new trial applying a different standard. An immediate appeal therefore is likely to advance the ultimate termination of the litigation."). And because this Court's Scheduling Order allows the interlocutory review process to proceed in tandem with the *Daubert* briefing, it will not delay the conduct of the inquiry currently proceeding before this Court.

To the extent the Kingdom endeavors to address these manifest benefits at all, it rests its arguments on speculative hypotheticals that are irrelevant, improbable, and self-contradictory. For example, the Kingdom argues that a Second Circuit ruling affirming the February 7 Order would fail to materially alter or advance the course of the litigation, KSA Opp. at 12, but that is necessarily true in every case in which interlocutory review is sought as to a controlling question of law. Those arguments thus miss the point entirely. Saudi Arabia does no better in feebly claiming that the opposite result – an appellate decision reversing the February 7 Order and holding that JASTA secondary liability is available – might not promote judicial efficiency, given the potential that the Court may remand the case "for this Court to consider in the first instance whether Plaintiffs' allegations are sufficient under *Kaplan* and *Honickman*."[5] *Id.* This claim ignores that such a ruling would prevent complex and protracted litigation under the wrong standard, and the additional inefficiencies and delay that would be incurred by an appellate decision reversing the February 7 Order at a later date. It also fails to recognize that a review pursuant to *Kaplan* and *Honickman* would be straightforward, as Plaintiffs' allegations clearly meet the expansive aiding and abetting standards established by those cases (which is precisely why the Second Circuit may choose to exercise its discretion to resolve the jurisdictional question outright in the context of the interlocutory appeal). Br. at 9.

Saudi Arabia's remaining arguments, suggesting that it would be more efficient for the (almost inevitable) appeal of the February 7 Order to proceed at a later date, are not credible and have in any case been negated by the Court's Scheduling Order. Again, the Scheduling Order allows the instant request that the Second Circuit accept review of the February 7 Order, and in the event it accepts review, the appeal itself, to proceed in parallel to the *Daubert* briefing. Thus, there is no merit to the

---

[5] In this statement, the Kingdom acknowledges the correct standard that would apply to such a review. *See* ECF No. 7432 at 2 (where the Kingdom has failed to raise a competent or relevant factual challenge to Plaintiffs' allegations, those allegations must be accepted as true and may serve to establish jurisdiction); *see also* ECF No. 3946 at 22-23 (endorsing the sufficiency of Plaintiffs' allegations in the absence of contrary evidence from the Kingdom). Its different arguments later in its brief misstate the applicable standard.

Kingdom's claims that interlocutory review would delay a trial, KSA Opp. at 12, or the resolution of the Kingdom's "immunity from suit." *Id.* at 13. Quite to the contrary, interlocutory review will expedite resolution of the immunity question once and for all, by ensuring that issue is addressed pursuant to proper standards and encompasses all viable theories in the first instance. The principle cited by Saudi Arabia that immunity questions should be resolved as early as is feasible, *id.*, thus affirmatively supports interlocutory review.

Finally, the Kingdom does not even bother to address the exceptional circumstances presented by this complex MDL arising from the September 11th attacks, and the severe prejudice the Plaintiffs would suffer from any further delay in accessing the full scope of remedies Congress intended to afford them through JASTA. *See* Br. at 3-4. Sadly, numerous Plaintiffs have already died during the pendency of this litigation, and many others would certainly not have the opportunity to pursue remedies made available by an appellate ruling reversing the February 7 Order years from now.

## III.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court amend the February 7, 2023 Order to certify for immediate interlocutory appeal under 28 U.S.C. § 1292(b), this Court's order that JASTA's aiding and abetting and conspiracy causes of action are not available in cases against foreign state defendants, and its associated determination that the Second Circuit Court of Appeals' decisions in *Kaplan* and *Honickman* are inapposite to Plaintiffs' claims against the Kingdom of Saudi Arabia.

Dated: March 10, 2023                     Respectfully submitted,

                                          COZEN O'CONNOR

                                          By:   /s/  Sean P. Carter
                                          Sean P. Carter
                                          Stephen A. Cozen
                                          J. Scott Tarbutton
                                          Cozen O'Connor
                                          One Liberty Place
                                          1650 Market Street, Suite 2800
                                          Philadelphia, PA 19103
                                          Tel: (215) 665-2000
                                          scarter1@cozen.com
                                          scozen@cozen.com
                                          starbutton@cozen.com

                                          *On behalf of the CAC Plaintiffs*


                                          MOTLEY RICE LLC

                                          By:   /s/  Robert T. Haefele
                                          Robert T. Haefele
                                          Jodi Westbrook Flowers
                                          Donald A. Migliori
                                          Motley Rice LLC
                                          28 Bridgeside Boulevard
                                          Mount Pleasant, SC 29465
                                          Tel: (843) 216-9184
                                          rhaefele@motleyrice.com
                                          jflowers@motleyrice.com
                                          dmigliori@motleyrice.com

                                          *On behalf of the CAC Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the Reply Memorandum of Law in Support of Plaintiffs' Motion to Amend the Court's February 7, 2023 Order to Certify Controlling Questions of Law for Interlocutory Appeal under 28 U.S.C. § 1292(b), was electronically filed this 10th day of March 2023. Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system.

_____
J. Scott Tarbutton, Esq.

LEGAL\61944408\1

12