**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN) |
| | ECF Case |
| This document relates to: | 15-cv-9903 (GBD)(SN) |
| *Thomas Burnett, Sr., et al. v. The Islamic Republic of Iran, et al.* | ECF Case |

## MEMORANDUM OF LAW FOR ENTRY OF PARTIAL FINAL DEFAULT JUDGMENTS ON BEHALF OF *BURNETT/IRAN* PERSONAL-INJURY PLAINTIFFS

### (*BURNETT / IRAN* PERSONAL INJURY 7)

For the reasons set forth below and in the accompanying declaration of John M. Eubanks ("Eubanks Declaration"), the Plaintiffs identified in Exhibit A to the Eubanks Declaration filed contemporaneously with this application, by and through their counsel, Motley Rice LLC, respectfully move this Court for an Order awarding them (1) compensatory damages for pain and suffering in amounts commensurate with the injuries these individuals sustained during the Terrorist Attacks on September 11, 2001; (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; (3) leave for the *Burnett*/*Iran* Personal-Injury Plaintiffs identified in Exhibit A to seek punitive damages, economic damages, or other damages at a later date; and (4) for any other *Burnett/Iran* Personal-Injury Plaintiffs not appearing on Exhibit A, to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Plaintiffs sued The Islamic Republic of Iran, the Islamic Revolutionary Guard Corps, and the Central Bank of the Islamic Republic of Iran (collectively, "the Iran Defendants") in connection with the 9/11 Attacks. On December 1, 2016, all Plaintiffs in the action *Thomas Burnett, Sr., et al. v. The Islamic Republic of Iran*, et al., Case No. 15-cv-9903 (GBD)(SN) ("*Burnett/Iran*"),

moved for judgment as to liability only.  15-cv-9903 ECF Nos. 65, 66, amended on December 6, 2016, 15-cv-9903 ECF Nos. 68, 69.  On January 31, 2017, the Court granted Plaintiffs' application for judgment as to liability only. 15-cv-9903 ECF No. 85.  The Plaintiffs that are party to this application, as identified in Exhibit A, are a subset of the Plaintiffs who have been granted judgment as to liability only, and rely on that judgment as to liability for their request for damages arising from the personal injuries they sustained in the Terrorist Attacks on September 11, 2001. The Plaintiffs identified in Exhibit A now request entry of partial final default judgment against the Iran Defendants as to their claims.

I.      **Procedural Background**

A.      **Related Cases**

Relying on evidence and arguments[1] submitted by Plaintiffs in *In re Terrorist Attacks on September 11, 2001*, the consolidated multidistrict litigation arising out of the 9/11 Attacks, this Court on December 22, 2011, and again on August 31, 2015, granted Orders of Judgment on Liability in favor of the *Havlish, Ashton, O'Neill, Federal Insurance*, and *Hoglan* groups of plaintiffs against the Iran Defendants (*See* ECF Nos. 2516, 3014, 3016, 3020, 3020-23). After granting the *Havlish* Order of Default Judgment on Liability, this Court considered the issue of damages suffered by the *Havlish* Plaintiffs and their decedents. Upon the submissions of the *Havlish* Plaintiffs, on October 3, 2012, this Court found that "Plaintiffs may recover for [, inter alia,] solatium . . . in an action under Section 1605A. 28 U.S.C. § 1605A(c)(4).  In such an action, . . . family members can recover solatium for their emotional injury; and all plaintiffs can recover

---

[1] In each of the Orders of Judgment regarding Plaintiffs' claims against Iran in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, the Court premised its determination "[u]pon consideration of the evidence submitted by the Plaintiffs in filings with this Court on May 19, 2011, July 13, 2011, and August 19, 2011, and the evidence presented at the December 15, 2011, hearing on liability, together with the entire record in this case." ECF Nos. 2516, 3014, 3016, 3020-22; *see also* ECF No. 3023 (substantially similar language).

punitive damages." ECF No. 2623 at 2-3, quoting *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010).

In that same decision in *Havlish,* this Court also found that Plaintiffs are entitled to punitive damages under the FSIA in an amount of 3.44 multiplied by their compensatory damages award. ECF No. 2623 at 5.  The Court has also applied that 3.44 multiplier to judgments in the *Ashton* case.  *See* ECF No. 3175, at 3 (Report and Recommendation to apply 3.44 punitive multiplier); ECF No. 3229 at 1 (Order adopting in its entirety Report and Recommendation to apply 3.44 punitive multiplier).  The Court applied the 3.44 punitive multiplier to the compensatory awards previously awarded in *Burnett/Iran*.  ECF No. 3666.  However, in *Hoglan*, another case in this multidistrict litigation, Magistrate Judge Netburn recommended that the Plaintiffs' request for punitive damages be denied without prejudice.  ECF Nos. 3358 at 11-16 and 3363 at 28.  Judge Daniels adopted Judge Netburn's Reports and Recommendations in their entirety. ECF Nos. 3383 at 2 and 3384 at 6.

## B.    *Burnett, et al. v. Iran* Defendants

The *Burnett/Iran* Plaintiffs filed suit on December 18, 2015, against the Iran Defendants. Service on the Central Bank was effectuated on March 18, 2016, and on Iran and the IRGC on September 14, 2016. 15-cv-9903, ECF No. 67 at ¶¶ 3-4.  At Plaintiffs' request, the Clerk of the Court issued a Certificate of Default as to the Iran Defendants on December 5, 2016. 15-cv-9903, ECF No. 67.  On December 1, 2016, Plaintiffs requested judgment as to liability against the Iran Defendants, (15-cv-9903 ECF Nos. 65, 66), whose application was amended on December 6, 2016 (15-cv-9903, ECF Nos. 68, 69), after the Clerk of the Court issued a Certificate of Default on December 5, 2016. ECF No. 67.  The Court granted judgment as to liability against the Iran Defendants in favor of all plaintiffs on January 31, 2017.  15-cv-9903, ECF No. 85.  On July 31,

2017, June 8, 2018, August 28, 2018, September 13, 2018, September 4, 2018, September 3, 2019, September 6, 2019, September 11, 2019, and December 13, 2019 (ECF Nos. 3666, 4023, 4126, 4175, 4146, 5061, 5062, 5087, 5138, and 5356), the Court granted orders of judgment to different subsets of *Burnett/Iran* Plaintiffs who filed for entry of partial final default judgments.

The *Burnett/Iran* Plaintiffs identified in Exhibit A now respectfully request that this Court grant them an Order awarding them (1) compensatory damages for pain and suffering in amounts commensurate with the injuries these individuals sustained during the Terrorist Attacks on September 11, 2001 and in accordance with prior precedent in the U.S. District Court for the District of Columbia in similar cases factoring in an upward departure on damages values based on the indelible impact of the Terrorist Attacks of September 11, 2001; (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; (3) leave for the *Burnett/Iran* Personal-Injury Plaintiffs identified in Exhibit A to seek punitive damages, economic damages, or other damages at a later date; and (4) for all other *Burnett/Iran* Personal-Injury Plaintiffs not appearing on Exhibit A, to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

## II.    Damages Under § 1605A

Section 1605A of the Foreign Sovereign Immunities Act (FSIA) creates an exception to sovereign immunity allowing a foreign state to be held accountable for acts of terrorism or the provision of material support or resources for acts of terrorism where the acts or provision of support or resources were engaged in by an official, employee, or agent of the foreign state while acting within the scope of his or her office, employment, or agency.  28 U.S.C. § 1605A(a)(1). The statute specifies that damages are available "for personal injury or death," 28 U.S.C. §

1605A(a)(1) and (c)(4), and include "economic damages, solatium, pain and suffering, and punitive damages."  28 U.S.C. § 1605A(c)(4).

A.      **Personal-Injury Damages**

The Plaintiffs identified in Exhibit A include individuals who were either on site at the time of the terrorist attacks in New York, New York (at the World Trade Center complex or surrounding area); Arlington, Virginia (in or around the Pentagon); or who were among those who entered the premises in the vicinity of the World Trade Center and were injured on September 11, 2001.  The injuries of individuals who were injured on September 11, 2001 range from smoke inhalation and broken bones to devastating burns and loss of limbs.  One injury that accompanies the vast majority of these physical injuries is the onset of post-traumatic stress disorder for most of the individuals who were caught in the horror of the attacks on September 11, 2001.  Under the FSIA, these injuries are all compensable, and given that these injuries occurred either as a direct result of the attacks, the ensuing chaos from the attacks in the immediate aftermath, or as a result of attempting to assist or render aid to the injured or endangered or to flee from the scene, the proximate causation of these injuries is not in question.

This Court has previously examined personal-injury damages in the context of the terrorist attacks on September 11, 2001.  In the first Report and Recommendation issued by Magistrate Judge Netburn addressing personal-injury damages in this context (which was affirmed by Judge Daniels without objection), the Court found that an upward departure from prior D.C. Circuit precedent was appropriate where "personal injury plaintiffs cannot escape the memory of 9/11." *See* ECF No. 5879 at 5.  This accorded with Magistrate Judge Maas' determination in 2012 that the "profound agony and grief" resulting from the attacks and the "frequent reminders of the events of that day" and "[c]onsidering the extraordinarily tragic circumstances surrounding the September

11th attacks, and their indelible impact on the lives of the victims' families, I find that it is appropriate to grant the upward departures from the [D.C. District Court] framework that the Individual Plaintiffs have collectively requested." *Havlish v. bin Laden*, 2012 U.S. Dist. LEXIS 110673, at *105 (S.D.N.Y. July 30, 2012) (adopted by Judge Daniels at *Havlish v. bin Laden*, 2012 U.S. Dist. LEXIS 143525, at *80-*82 (S.D.N.Y. Oct. 3, 2012)).

This Court then established "a baseline award of $7 million, an upward deviation of $10 million, and a downward deviation of $5 million for personal-injury damages for pain and suffering arising from injuries sustained on September 11, 2001. The Court, however, reserved its discretion to award further upward departures in exceptional cases." *Id.* at 6. The Court divided the categories of injuries into three classifications:

1. "Significant" injuries (presumptively $5 million for pain and suffering): "single broken bones; cuts/lacerations/bruises; mental health disorders; concussions; being covered in dust or debris; significant respiratory ailments including nasal irritations, chest pain, and asthmas from inhalation of smoke, soot and dust; cuts/bleeds; and significant orthopedic injuries such as strains, sprains, or fractures that cause continuing intermittent pain and may require surgery. This category will also include short term or relatively minor non-debilitating physical injuries, or even the absence of serious physical injuries combined with severe emotional injuries." *Id.* at 6-7.

2. "Severe" injuries (presumptively $7 million for pain and suffering): "multiple broken bones; burns; significant injuries from falling, being buried, or being trampled; severe orthopedic trauma requiring significant or multiple surgeries and/or causing severe constant pain or debilitation; muscular trauma; mental health trauma and disorders; severe head injuries causing frequent headaches, migraines, or some lasting cognitive impairment; and severe pulmonary or neurological traumas." *Id.* at 7.

3. "Devastating" injuries (presumptively $10 million for pain and suffering): "loss of limbs or multiple digits; severe pulmonary traumas; strokes, paraplegia; traumatic brain injuries causing muscle weakness, atrophy, or severe cognitive impairment; significant disfigurement; severe burns covering significant body area; pulmonary traumatic exposures; and acute systemic trauma. Injuries causing lasting physical effects severely limiting victims' mobility and activity will generally qualify for this category." *Id.* at 8.

The Court issued upward or downward departures based on the facts of each case presented. For example, in the case of Plaintiff Lauren Manning, this Court granted an upward

departure and found that Manning was entitled to a $25,000,000 judgment, noting that Manning's injuries were "beyond devastating."  *See* ECF No. 5955 at 3-4.

B.      **Punitive Damages**

Under the FSIA, Plaintiffs are also entitled to punitive damages.  *See* 28 U.S.C. §1605A(c)(4).  In the *Havlish* Report and Recommendation on Damages, the magistrate judge explained that a "3.44 ratio 'has been established as the standard ratio applicable to cases arising out of' terrorist attacks." (ECF No. ECF 2619, at 13, citing *Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.C. 2011)).  This Court adopted that recommendation and awarded punitive damages on each compensatory damages category at a ratio of 3.44 (punitive) to 1 (compensatory) (ECF No. 2623).  The Court has applied that ratio to awards for plaintiffs in other related cases.  *See, e.g.*, ECF No. 3175, at 3 (Magistrate Judge Maas Report and Recommendation to apply 3.44 punitive multiplier); ECF No. 3229, at 1 (Judge Daniels adopting in its entirety Judge Maas' Report and Recommendation to apply 3.44 multiplier); ECF No. 3300, at 1 and Exhibit A (Judge Daniels applying 3.44 punitive multiplier to claims in *Ashton*).

However, in *Hoglan*, another case in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, Magistrate Judge Netburn recommended that the Plaintiffs' request for punitive damages be denied without prejudice.  ECF No. 3363, at 28.  Judge Daniels adopted Judge Netburn's Report in its entirety, denying without prejudice the Plaintiffs' request for punitive damages.  ECF No. 3384, at 6.

In light of the Court's decision in related litigation to defer determination of punitive damage issues until a later stage of the litigation, Plaintiffs herein request leave to address the issue of punitive damages at a later date. *See, e.g.*, ECF No. 3666 (Judge Daniels order in *Burnett/Iran*,

authorizing other plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

### C.      Prejudgment Interest

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism. *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011).  This Court awarded the *Havlish* Plaintiffs prejudgment interest at a rate of 4.96% on their pain and suffering damages awards, to be calculated from September 11, 2001 until the date of judgment (ECF 2619 at 13-14).  This Court, recognizing that prejudgment interest was appropriate in cases such as this case, adopted the magistrate judge's reasoning, finding that an award of prejudgment interest was appropriate and accepting the rate of 4.96%, as proposed by the *Havlish* Plaintiffs' expert.

After the *Havlish* award, Plaintiffs in *Ashton* and *Bauer* proposed, and the Court agreed, that prejudgment simple interest at the New York State statutory rate of nine percent per annum was appropriate in cases where the injuries arose in New York and the prejudgment interest used in *Havlish*, 4.96 percent per annum, compounded annually, should be reserved for only those cases where the injuries arose in other states.  *See* ECF Nos. 3229 at 2; 3300 at 1; 3341 at 1.

The Second Circuit has held that New York State's statutory prejudgment interest rate should apply to the damages awarded to World Trade Center complex leaseholders in their litigation against American Airlines and United Airlines brought under the federal Air Transportation Safety and System Stabilization Act ("ATSSSA").  *World Trade Farmers Market, Inc. v. American Airlines, Inc*. (*In Re: September 11th Litigation*), 2015 U.S. App. LEXIS 16619, *66 (2d Cir. Sept. 17, 2015). In that case, the Second Circuit concluded that a federal cause of

action under the ATSSSA must look to state rules concerning prejudgment interest. *Id*. Accordingly, the Second Circuit held that New York's statutory prejudgment interest rate of nine percent as opposed to a lower rate crafted under federal law, had to be applied to the Plaintiffs' 9/11 claims. *Id*.

However, more recently, in *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent interest rate for prejudgment interest should be applied to all of the solatium claims. ECF No. 3363 at 28-29. Judge Daniels adopted Judge Netburn's *Hoglan* Report in its entirety and applied the interest rate of 4.96 percent per annum, compounded annually to all of the claims. ECF No. 3384 at 6.

In light of the Court's decision in the *Hoglan* matter, applying the 4.96 percent rate to prejudgment interest, the *Burnett/Iran* Plaintiffs identified in Exhibit A respectfully request that the clerk be directed to award prejudgment interest at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001 until the date of the judgment.

## III.   Individualized Case Assessments

While Plaintiffs' motion addresses 10 personal injury claims that cross multiple categories, all of these Plaintiffs were injured at or within close proximity to the World Trade Center or the Pentagon.  What follows is a summary of the attached proofs.[2]

### A.   Anex Joseph Desinor
### Injury Category[3]:  Escape/Falling Debris
### Severity:  Severe

On September 11, 2001, Anex Joseph Desinor worked as a Banquet House Attendant in the Banquet Department of the New York Marriott World Trade Center located at 3 World Trade Center

---

[2] These are arranged alphabetically.
[3] The categories cited are those categories set forth in the January 10, 2020 letter submitted by the Plaintiffs' Executive Committee for Personal Injury and Death Claims. *See* ECF No. 5484 at 13-14.  Those categories include the following:
1)       IMPACT INJURY

in New York City. *See* Eubanks Dec., Ex. B, Declaration of Anex Joseph Desinor at ¶ 3. On the morning of September 11th, Mr. Desinor had been setting up for a breakfast banquet meeting in an equipment room at the Marriott Hotel when he saw a flash of light and felt the entire building shake. The lights flickered and the ceiling above him began to collapse. *Id*. at ¶ 4. As he exited the equipment room, Mr. Desinor saw hotel guests and Marriott employees running for cover. Having survived a prior terrorist attack on the World Trade Center in 1993, he assumed that a bomb had exploded somewhere in the building. *Id*. at ¶ 5. Mr. Desinor ran to the stairwell of the hotel to exit the building along with many others who were fleeing the area. In the stairwell, the mob of people pushed and pressed him into the handrail and he injured the right side of my body. *Id*. at ¶ 6. Security guards prevented Mr. Desinor and others from exiting the hotel through the front of the building due to falling debris, so he ran to an alternate door and exited the building. Falling debris struck him several times, and Mr. Desinor became surrounded by a thick cloud of dust and debris. Mr. Desinor stumbled over human bodies and body parts as he attempted to flee from the area, and he inhaled large quantities of toxins into his lungs and airways. The falling debris obscured his vision and caused him to fall to the concrete. Dozens of people trampled over Mr. Desinor as he

---

Persons physically injured by the impact of the aircraft hitting the WTC I, WTC II, Pentagon, and WTC Marriot (jet fuel burns or blast injuries, jet fuel exposure and damage, broken backs/necks/limbs, paraplegics, orthopedic trauma);
2)        ESCAPE INJURY
Persons physically injured during the escape from the buildings (those injured descending the long dark staircases, those injured in elevators (i.e. during free falls), those who were trampled while escaping, those who fell and were injured while the Pentagon or WTC were under attack, resulting in broken bones, crushed limbs, trauma lacerations, bruising, etc.);
3)        BUILDING COLLAPSE INJURY
Persons physically injured in either the WTC I or II buildings or Marriot WTC collapse at and around Ground Zero (explosion-like injuries, being buried in rubble, eye or ear damage, head injuries, crushed limbs, multi-system acute traumas, shrapnel like injuries from glass or metal, etc.);
4)        FALLING DEBRIS INJURY
Persons injured at Ground Zero or Pentagon by falling debris (TBIs, concussions, crushed limbs, variety of physical injuries and traumas);
5)        PULMONARY TRAUMA INJURY
Persons who breathed in large quantities of smoke, debris, chemicals, WTC Dust, jet fuel or related toxins at Ground Zero, Pentagon, or Shanksville, PA and whose lungs were burned, damaged and injured on 9/11; and
6)        LATENT INJURIES (CANCERS)
These cases are not contemplated at this time.

lay on the concrete. *Id*. at ¶ 7. As Mr. Desinor stumbled to his feet, people fleeing the area slammed into him. As the North Tower collapsed, a massive cloud of dust and debris surrounded him, and Mr. Desinor continued to inhale substantial amounts of dust and debris as he ran towards a ferry station to escape to Staten Island. *Id*. at ¶¶ 8-9. As a result of these terrorist attacks, Mr. Desinor suffered multiple injuries, including injuries to his back, right leg, and right hip. He further suffered and continues to suffer from asthma, gastroesophageal reflux disease (GERD), prostate cancer, and post-traumatic stress disorder due to the 9/11 terrorist attacks. *Id*. at ¶ 10.

      **B.**    **Kevin M. Shea**
            **Injury Category:  Building Collapse/Falling Debris Injuries**
            **Severity:  Severe**

On September 11, 2001, Kevin M. Shea worked as a firefighter with Ladder 35 for the Fire Department of New York (FDNY). *See* Eubanks Dec., Ex. C, Declaration of Kevin M. Shea at ¶ 3. Mr. Shea had not been scheduled to work on 9/11 as he had completed an overnight tour of duty with Ladder 35 on September 10, 2001. However, after the two passenger jets struck the North and South Towers, he went to the World Trade Center area as quickly as possible with several of his fellow firefighters. *Id*. at ¶ 4. Upon arrival at the World Trade Center, he entered the lobby of the South Tower to assist other firefighters with the rescue effort. As debris fell in the lobby, Mr. Shea dropped his firehose and ran out of the building. *Id*. at ¶ 5. As the South Tower collapsed, the force of the blast blew him off his feet and to the ground. The falling debris struck Mr. Shea, and he sustained a broken neck and severe trauma to his body. After being struck by the falling debris, Mr. Shea crawl about two hundred feet before he collapsed and lost consciousness. *Id*. at ¶ 7. Rescue workers later found him covered in building debris near the corner of Albany Street and West Street. *Id*. at ¶ 8. As a result of these terrorist attacks, Mr. Shea suffered the following injuries that required surgical intervention: a cervical neck injury, a vertebral fracture, damaged bones and tendons in both

hands, bilateral testicular loss, and an abdominal injury. He further sustained a bruised kidney and a torn rotator cuff of the left shoulder, and he now suffers from post-traumatic stress disorder. *Id*. at ¶ 9.

      **C.**     **Raymond E. Streker**
                **Injury Category:  Building Collapse/Falling Debris Injuries**
                **Severity:  Severe**

On September 11, 2001, Raymond E. Streker worked as a commodities broker affiliated with Refco Finance, Inc. *See* Eubanks Dec., Ex. D, Declaration of Raymond E. Streker at ¶ 3. When the 9/11 terrorist attacks occurred, Mr. Streker had been sitting in his office located at 7 World Trade Center, which was directly across the street from the North Tower.  *Id*. at ¶ 4. He heard loud explosions near his office, and Mr. Streker quickly discovered that two passenger jets had struck the upper sections of the North and South Towers. Mr. Streker left his office to escape from the area, but the North Tower began to collapse as he stood outside of the front of 7 World Trade Center. During the collapse of the North Tower, a huge cloud of dust, falling debris, and human body parts surrounded him. Mr. Streker inhaled large quantities of toxic substances into his lungs and airways, and his lungs began to burn.  *Id*. at ¶¶ 5-6. As he attempted to flee the area to avoid the falling debris, building material struck him on the outside of his right knee. Due to the force of the blow, Mr. Streker fell to the ground and he twisted his right knee. He felt severe pain and swelling in his right knee area. Despite the chaos and confusion surrounding the collapse of the North Tower, Mr. Streker stumbled to his feet and fled the area. *Id*. at ¶ 7. As a result of these terrorist attacks, Mr. Streker suffered a severe right knee injury that required two separate surgeries to repair, including the reconstruction of a torn ligament. He further suffered from lung scarring, shortness of breath, asthma, and sinusitis due to the large quantities of toxic debris he inhaled while attempting to escape from the World Trade Center area. *Id*. at ¶ 8.

## IV.    Conclusion

For all of the reasons set forth herein, as well as those set forth in the submissions of the other Plaintiffs in this case and Plaintiffs in the other 9/11 related cases in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, the *Burnett/Iran* Plaintiffs identified in Exhibit A respectfully request that this Court award them (1) compensatory damages for pain and suffering in amounts commensurate with the injuries these individuals sustained during the Terrorist Attacks on September 11, 2001 and in accordance with prior precedent in the U.S. District Court for the District of Columbia in similar cases factoring in an upward departure on damages values based on the indelible impact of the Terrorist Attacks of September 11, 2001; (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; (3) leave for the *Burnett/Iran* Personal-Injury Plaintiffs identified in Exhibit A to seek punitive damages, economic damages, or other damages at a later date; and (4) for all other *Burnett/Iran* Personal-Injury Plaintiffs not appearing on Exhibit A, to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Dated:  March 13, 2023                                  Respectfully submitted,

                                                        **/s/** John M. Eubanks
                                                        John M. Eubanks, Esq.
                                                        Jodi Westbrook Flowers, Esq.
                                                        Robert T. Haefele, Esq.
                                                        John C. Duane, Esq.
                                                        MOTLEY RICE LLC
                                                        28 Bridgeside Blvd.
                                                        Mount Pleasant, SC 29464
                                                        Tel: 843-216-9000
                                                        Fax: 843-216-9450
                                                        Email: jeubanks@motleyrice.com
                                                        Email: jflowers@motleyrice.com
                                                        Email: rhaefele@motleyrice.com    Email:
                                                        jeubanks@motleyrice.com

Attorneys for the *Burnett/Iran* Plaintiffs