UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:

TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

03-MD-01570 (GBD)(SN)

REPORT &
RECOMMENDATION

------------------------------------------------------------X

SARAH NETBURN, United States Magistrate Judge.

TO GEORGE B. DANIELS, United States District Judge:

This document relates to:

>    Ashton et al. v. al Qaeda Islamic Army, et al., No. 02-cv-06977
>    Burlingame v. Bin Laden, et al., No. 02-cv-07230
>    Bauer et al. v. al Qaeda Islamic Army, et al., No. 02-cv-07236
>    Ashton et al. v. al Qaeda Islamic Army, et al., No. 18-cv-03353

Six sets of plaintiffs (collectively, "Plaintiffs") in this multidistrict litigation move for partial final default judgments against the Taliban and Muhammad Omar ("Omar"). ECF No. 8274, 8298, 8335, 8363, 8386; No. 18-cv-03353, ECF No. 75.[1] The Plaintiffs include the estates and family members of people killed and individuals who were injured in the 9/11 Attacks. They assert various federal and state law claims against the Taliban and Omar, who are alleged to have aided al Qaeda and facilitated the 9/11 Attacks. The Court recommends granting default judgments and awarding damages as to certain claims against the Taliban and denying all other motions with leave to re-file.

---

[1] Unless otherwise note, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

## BACKGROUND

The Court assumes familiarity with this multidistrict litigation and summarizes only the relevant procedural and factual background. Plaintiffs filed a complaint seeking to hold the Taliban and Omar liable for injuries caused by the 9/11 Attacks. Pursuant to Court order, ECF No. 445, Plaintiffs served the Taliban and Omar by publication, ECF Nos. 709, 735 (verifications filed March 2005). The publication notices directed defendants to answer the complaints filed on the multidistrict litigation docket at No. 03-md-01570. Id.

After effectuating service, Plaintiffs filed their Sixth Amended Consolidated Master Complaint, the operative complaint for these purposes. ECF No. 1463. Like their previous complaints, it named the Taliban and Omar as defendants and repeated the same factual allegations asserting the bases for jurisdiction and liability. See id. Most Plaintiffs were named in that complaint, but some were substituted or added later. See, e.g., ECF No. 7856.

Eight months later, neither defendant had responded or appeared, so Plaintiffs moved for entry of default. See ECF No. 1782 (moving under Rule 55.1 of the Local Civil Rules of the Southern and Eastern Districts of New York, which governs entry of default). The Court granted that motion on May 12, 2006. ECF No. 1797.

The present motions ask the Court to grant partial final default judgments against the Taliban and Omar in favor of diversely situated plaintiffs—citizens and noncitizens, estate and personal injury plaintiffs, immediate family members and their functional equivalents. See ECF Nos. 8274 (Ashton I motion), 8298 (Burlingame I motion), 8335 (Burlingame II motion), 8363 (Bauer motion), 8386 (Dickey motion); No. 18-cv-03353, ECF No. 75 (Ashton II motion). The Plaintiffs have all been awarded relief against Iran and now seek similar damages against the Taliban and Omar.

## DISCUSSION

Rule 55(b)(2) of the Federal Rules of Civil Procedure authorizes the Court to enter default judgments against defendants who fail to appear in or defend cases against them. This process includes "two steps"—determining that the defendant defaulted and then entering a default judgment. Nationsbank of Fla. v. Banco Exterior de Espana, 867 F. Supp. 167, 274 n. 9 (S.D.N.Y. 1994); see Fed. R. Civ. P. 55(a), (b).

Step one has long been satisfied. The Taliban and Omar were properly served but have not appeared in this case. See ECF Nos. 709, 735. The Court determined that they defaulted in 2006. ECF No. 1797. This default applies even to Plaintiffs added later. See, e.g., ECF No. 5234 (explaining that plaintiffs added by notice of amendment "need not re-serve defendants who have already been served" and that prior Court orders "shall apply with equal force" to the new plaintiffs).

Step two is now before us. Plaintiffs ask the Court to enter default judgment and award damages against the Taliban and Omar. In defaulting, the defendants admitted "all of the factual allegations of the complaint, except those relating to damages." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). The Court must evaluate those admissions to determine whether there is "a sufficient basis in the pleadings" to establish defendants' liability. Di Marco Constructors, LLC v. Sinacola, Inc., 407 F. Supp. 2d 442, 445 (W.D.N.Y. 2006) (cleaned up); accord Wagstaff-El v. Carlton Press Co., 913 F.2d 56, 57 (2d Cir. 1990). If there is, the Court assesses damages, relying on Plaintiffs' "affidavits or documentary evidence in lieu of an evidentiary hearing." DIRECTV, Inc. v. Hamilton, 215 F.R.D. 460, 462 (S.D.N.Y. 2003); accord Overcash v. United Abstract Grp., Inc., 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008); see Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1992).

The Court evaluates separately claims: (1) against Omar; (2) by noncitizens against the Taliban; and (3) by U.S. citizens against the Taliban. I recommend denying without prejudice all claims against Omar and claims against the Taliban brought by non-citizens. I recommend granting judgment against the Taliban on claims brought by U.S. citizens with damages consistent with previous awards against Iran.

I. **The Court Recommends Denying All Motions for Default Judgments Against Omar**

Plaintiffs' claims against Omar are not viable. Omar is dead, and the PECs do not intend to substitute any party for him. See ECF Nos. 8535, 8540. The Court determined in a prior Report and Recommendation that all claims against Omar should be dismissed without prejudice. ECF No. 8540. No party objected. In line with that Report, the Court recommends denying Plaintiffs' motions for default judgment against Omar. See Floors-N-More, Inc. v. Freight Liquidators, 142 F. Supp. 2d 496, 503 (S.D.N.Y. 2001) (dismissing complaint rather than entertaining default judgment because "'a default should not be entered when it would be promptly set aside'" (quoting Fed. R. Civ. P. 55(c))).

II. **The Court Recommends Denying Noncitizens' Motions for Default Judgment**

The Court next turns to motions for default judgment brought by noncitizens' estates and noncitizen solatium plaintiffs ("noncitizen plaintiffs") against the Taliban. ECF Nos. 8274, 8298, 8335, 8363. In various places, noncitizen plaintiffs cite causes of action under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(5), (a)(7) (now codified at § 1605A), the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 note, and state law. ECF No. 8335 at 3–4; see also ECF No. 8275-4 at 2–4 (listing the TVPA, FSIA, and state law as bases for claims by noncitizens). The complaint, however, includes only three of these grounds: the ATA

(Count Five), the TVPA (Count Four), and state law (Counts One, Two, and Three). ECF No. 1463 at ¶¶ 463–83.

The ATA permits claims only by an injured "national of the United States . . . or his or her estate, survivors, or heirs." 18 U.S.C. § 2333(a).[2] And the TVPA permits claims only against individuals. 28 U.S.C. § 1350 note. See Mohamad v. Palestinian Auth., 566 U.S. 449, 461 (2012) ("The text of the TVPA . . . d[oes] not extend liability to organizations, sovereign or not."). As such, neither statute authorizes claims by these plaintiffs (noncitizens' estates or noncitizen solatium plaintiffs) against the Taliban (an "unincorporated association"). ECF No. 1493 at ¶ 10.

That leaves state law. The noncitizen plaintiffs assert three claims under state tort law: "Wrongful Death Based on Intentional Murder," "Survival Damages Based on Intentional Murder," and "Assault and Battery." ECF No. 1463 at ¶¶ 463–75. The noncitizen plaintiffs do not, however, indicate which state's law applies to which claims or what damages are available for each cause of action.[3] See, e.g., ECF No. 8275-4 at 2–3 (listing noncitizen plaintiffs without indicating cause of action). Without identifying the specific "causes of action for which the plaintiffs seek damages," the Court is unable to determine with certainty the appropriate damages for each noncitizen plaintiff. ECF No. 8198 (listing requirements for renewed motions for default judgment).

The Court therefore recommends DENYING the motions brought by noncitizen plaintiffs and directing them to re-file. In accordance with prior Court orders, renewed motions should

---

[2] Courts disagree about whether § 2333 permits noncitizens to bring solatium claims where their decedent family members were U.S. citizens. See Lelchook v. Islamic Republic of Iran, No. 16-cv-07078 (ILG)(RLM), 2020 WL 12656283, at *3–7 (E.D.N.Y. Nov. 23, 2020) (discussing split in authority) adopted at 2022 WL 7534195 (Oct. 13, 2022). That question is not presented here because Plaintiffs' exhibits listing noncitizen solatium plaintiffs do not identify the nationalities of the decedents.
[3] The Plaintiffs' citation to judgments against Iran is unhelpful on this front because those claims were based on the FSIA.

include exhibits that designate the cause of action relevant to each request for damages, see ECF No. 8198, and should additionally indicate the relevant state or federal law authorizing that cause of action. Further, motions should address the bases for jurisdiction, the allegations in the complaint establishing liability for each cause of action, and the scope of damages available under the relevant law.

### III. The Court Recommends Granting Citizens' Motions for Default Judgment Under the ATA

Finally, the Court addresses motions by U.S. citizens ("citizen plaintiffs") for default judgment against the Taliban. Citizen plaintiffs assert claims pursuant to the ATA, 18 U.S.C. § 2333, and other state and federal law. If their motions are granted, they will join a growing class of people trying to collect judgments from the Taliban. No Taliban funds are currently available, but the prospect of many judgment creditors vying for limited assets triggered concern among the Dickey Plaintiffs. They fear that it will be hard to collect on their own judgments if the Court enters default judgments on behalf of plaintiffs whose claims are, in their view, legally invalid.

With the goal of allowing every party to be heard and to ensure that the Court is carefully applying the law in these uncontested motions, the Court permitted supplemental briefing on: (1) whether the ATA authorizes claims by immediate family members who are not "heirs" under the relevant state law; and (2) whether the Court should *sua sponte* invoke the statute of limitations when adjudicating motions for default judgment against the Taliban.

It is within the Court's authority to consider and decide these issues. Who can assert claims against the Taliban is a threshold inquiry at the default judgment stage—that is, whether there is "a sufficient basis in the pleadings" to establish defendants' liability. Di Marco Constructors, 407 F. Supp. 2d at 445. Whether a claim is barred by the statute of limitations is

one of the "three factors" courts can consider when exercising their "discretion" to enter default judgments—namely, the existence of "a meritorious defense." Gunnells v. Teutul, 469 F. Supp. 3d 100, 102–03 (S.D.N.Y. 2020).

### A. The ATA Authorizes Claims by Immediate Family Members

The ATA permits "any national of the United States" or "his or her estate, survivors, or heirs" to sue for injuries caused by acts of terrorism. 18 U.S.C. § 2333(a). The Dickey Plaintiffs argue that federal law does not sufficiently define who qualifies as "survivors" or "heirs" under the ATA and urge the Court to look to state law to fill in the resulting gap. See ECF No. 8814. The Dickey Plaintiffs, accordingly, assert that only plaintiffs who are "heirs" under applicable state law can bring ATA claims. See id. The PECs argue that the Court should interpret § 2333 in line with other district courts that have interpreted the term "survivors" to encompass immediate family members who might not qualify as legal heirs. See ECF No. 8813. The Court draws on the statute's text, history, and purpose to conclude that immediate family members of people killed in terrorist attacks, not just their legal heirs, may sue under the ATA.

The plain text of § 2333 dictates that "survivors" include people other than "heirs." A contrary ruling would defy basic rules of statutory construction that direct courts to "give effect . . . to every word Congress used." Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979). This alone requires reading "survivors" to include family members who are not considered "heirs" under the relevant estate law.

Several courts agree. In Estates of Ungar ex rel. Strachman v. Palestinian Authority, 304 F. Supp. 2d 232 (D.R.I. 2004), the district court analyzed the text, history, and purpose of § 2333 to hold that the parents and siblings of a person killed in a terrorist attack were entitled to bring claims under the ATA. The court explained, "Congress did not intend that the class of persons able to bring actions pursuant to § 2333(a) should be interpreted narrowly." Id. at 263. By

"including the term 'survivors,'" it "evidenced an intention" to extend liability to "family members who are not legal heirs." Id. In adopting Ungar's analysis, the district court in Knox v. Palestine Liberation Organization, 442 F. Supp. 2d 62, 75 (S.D.N.Y. 2006), emphasized that the "legislative history of the ATA and the underlying purpose of the ATA to deter and punish acts of international terrorism" supports including parents and siblings in "survivors." See also Est. of Henkin v. Kuveyt Turk Katilim Bankasi, A.S., 495 F. Supp. 3d 144, 152 (E.D.N.Y. 2020) (clarifying that § 2333 does not limit a family to a single suit brought by either the injured person, his estate, his heir, or his survivor).

Linking the interpretation of § 2333 to state law would also prevent the ATA from providing uniform access to the federal courts. Through the ATA and similar causes of action, Congress aimed to "provide civil litigants with the broadest possible basis, consistent with the Constitution of the United States, to seek relief" for injuries from terrorist acts. 28 U.S.C. § 2333 note. That goal is inconsistent with an interpretation of § 2333 that depends on states' estate law, which varies in breadth and application.

For these reasons, the Court holds that people directly injured, estates and heirs of people killed, and immediate family members (and functional equivalents of immediate family members) of people killed in the 9/11 Attacks can all bring claims under § 2333.

B.    **The Court Will Not Invoke the Statute of Limitations** *Sua Sponte*

On January 2, 2013, Congress extended the statute of limitations for ATA cases related to the 9/11 Attacks to January 2, 2019. See National Defense Authorization Act for Fiscal Year 2013, Pub. L. No. 112-239, § 1251(c), 126 Stat. 1632, 2017 (2013). The Dickey Plaintiffs ask the Court to reject motions for default judgment from plaintiffs who filed their claims after that date. Typically, such a request would come from a defendant. After all, the statute of limitations is "an affirmative defense that is waived if not raised." Kropelnicki v. Siegel, 290 F.3d 118, 130 n.7 (2d

Cir. 2002). Here, in the default posture, the Court must decide whether to invoke the statute of limitations *sua sponte*.

The Court of Appeals for the D.C. Circuit has authoritatively addressed this issue and held that it is reversable error for a district court to invoke the statute of limitations on behalf of a defaulting defendant in the terrorism context. In Maalouf v. Islamic Republic of Iran, 923 F.3 1095, 1114–15 (D.C. Cir. 2019), the court held that the district court "lacked authority or discretion to *sua sponte* raise the terrorism exception's statute of limitations" to dismiss cases brought under the FSIA. Its reasoning is consistent with precedent from the Court of Appeals for the Second Circuit, which recognizes that "district court[s] ordinarily should not raise [the statute of limitations] sua sponte," Davis v. Bryan, 810 F.2d 42, 44 (2d Cir. 1987), even in favor of a defendant who has never appeared in the case, Sec. & Exch. Comm'n v. Amerindo Inv. Advisors, 639 F. App'x 752, 754 (2d Cir. 2016). See also Davis, 810 F.2d at 45 (finding "an error of law" where district court raised statute of limitations *sua sponte*). Accordingly, the Court declines to dismiss *sua sponte* claims against the Taliban as time-barred.[4]

### C. The Court's Jurisdiction Is Sufficient for Default Judgment

The Court has subject matter jurisdiction over ATA claims under § 2333(a). Sokolow v. Palestine Liberation Org., 583 F. Supp. 2d 451, 455 (S.D.N.Y. 2008). Default judgment is therefore appropriate for these claims. See Bracken v. MH Pillars Inc., 290 F. Supp. 3d 258, 268 (S.D.N.Y 2017) (dismissing rather than granting default judgment where court lacked subject matter jurisdiction).

---

[4] The Dickey Plaintiffs contend that such dismissal would not be on the Court's own motion (that is, *sua sponte*) because they are raising it. While the Court concludes that it is appropriate to confirm its own authority before entering default judgments, for the reasons stated by the PECs, the Dickey Plaintiffs do not have standing to assert the Taliban's defense against other parties.

9

The Court need not establish its personal jurisdiction over the Taliban before entering default judgment. Personal jurisdiction protects an individual right that can be "purposely waived or inadvertently forfeited" by a defendant (much like the statute of limitations). City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 133 (2d Cir. 2011). Where no defendant appears, the Court of Appeals does not require courts to analyze personal jurisdiction before granting default judgment. Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207, 213, 213 n. 7 (2d Cir. 2010) (holding that courts "may" analyze personal jurisdiction but leaving open the question whether they "*must*" do so before entering default judgment). Here, the Court is "skeptical" that addressing personal jurisdiction "without the benefit of adversarial briefing" would "actually preserve[] judicial resources." CKR Law LLP v. Anderson Invs. Int'l, LLC, 544 F. Supp. 3d 474, 480 (S.D.N.Y. 2021) (declining to analyze personal jurisdiction). It therefore declines to decide whether it has jurisdiction over the Taliban in this context.

If the Court were required to reach the issue, Plaintiffs' allegations offer a "prima facie" case that the Taliban is subject to the Court's jurisdiction. Mwani v. bin Laden, 417 F.3d 1, 6 (D.C. Cir. 2005) (explaining that courts within the D.C. Circuit must establish "prima facie" jurisdiction before entering default judgment). To begin, Plaintiffs describe the Taliban as a non-sovereign "unincorporated association," so the jurisdictional requirements of the FSIA would not apply.[5] As with all non-sovereign defendants, the Taliban is subject to the Court's jurisdiction if (1) it was properly served; (2) there is a statutory basis for personal jurisdiction; and (3) the

---

[5] The Court treats the Taliban as a non-sovereign defendant for two additional reasons. First, "[a] defendant seeking to invoke the FSIA's protections must make a *prima facie* showing that it is a foreign sovereign," which the Taliban has failed to do. Beierwaltes v. L'Office Federale De La Culture D LA Confederation Suisse, 999 F.3d 808, 817 (2d Cir. 2021). Second, the United States has not recognized the Taliban as the government of Afghanistan, and the judicial branch cannot do so. See ECF No. 8866 at 22–29.

exercise of jurisdiction is consistent with due process. Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp., 40 F.4th 56, 69 (2d Cir. 2022). Plaintiffs meet the first prong because they served the Taliban by publication pursuant to the Court's order. ECF Nos. 445, 709, 735. They meet the second under either a state long-arm statute or Rule 4(k). Cf. ECF No. 8911 at 14–16 (discussing interplay between state long-arm statutes and Rule 4(k)). And they meet the third with allegations that the Taliban "supplied material and logistical support to AL QAEDA and BIN LADEN in furtherance of their terrorist plans to attack the United States of American and murder U.S. citizens." ECF No. 1463 at ¶ 11. That is the type of "intentional, and allegedly tortious," conduct "expressly aimed" at the United States that would satisfy due process. In re Terrorist Attacks on Sept. 11, 2001, 538 F.3d 71, 95 (2d Cir. 2008). Collectively, these allegations create a *prima facie* case for personal jurisdiction. Jurisdiction poses no barrier to granting default judgment.

D.  **Plaintiffs' Allegations Establish the Taliban's Liability**

Section 2333 creates both primary and aiding-and-abetting liability for non-sovereign defendants. A defendant is subject to primary liability under § 2333(a) if he engaged in unlawful acts of international terrorism that proximately caused the plaintiff's injuries. Lelchook v. Islamic Republic of Iran, 393 F. Supp. 3d 261, 266 (E.D.N.Y. 2019). International terrorism "involve[s] violent acts or acts dangerous to human life that are a violation of the criminal laws"; "appear to be intended" "to intimidate or coerce a civilian population," "influence the policy of a government by intimidation or coercion," or "affect the conduct of a government by mass destruction, assassination, or kidnapping"; and "occur primarily outside" the U.S. or "transcend national boundaries." 18 U.S.C. § 2331(1). As such, "material support to a known terrorist organization" can trigger liability if that material support "involve[ed] violence or endangering

11

human life" and "appear[ed] intended to intimidate or coerce civilian populations or to influence or affect governments." Linde v. Arab Bank, PLC, 882 F.3d 314, 332 (2d Cir. 2018).

Alternatively, a defendant is subject to aiding-and-abetting liability under § 2333(d)(2) if: (i) he "'aid[ed]'" the designated foreign terrorism organization whose act of terrorism caused the plaintiff's injury; (ii) he was "'generally aware of his role as part of an overall illegal or tortious activity at the time that he provide[d] the assistance'"; and (iii) he "'knowingly and substantially assist[ed]'" the act of terrorism. Honickman v. BLOM Bank SAL, 6 F.4th 487, 494 (2d Cir. 2021) (quoting Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983)); see also 18 U.S.C. § 2333(d)(2).

Plaintiffs' allegations, taken as true, satisfy both theories. They allege that the Taliban "supplied material and logistical support to AL QAEDA and BIN LADEN in furtherance of their terrorist plans to attack the United States of American and murder U.S. citizens." ECF No. 1463 at ¶ 11. The Taliban was so "closely linked" with al Qaeda that bin Laden allegedly served as "the *de facto* head of TALIBAN intelligence and security." Id. at ¶ 12. It allegedly provided bin Laden with the resources to "construct and maintain camps in Afghanistan and train AL QAEDA members and other terrorists from around the world in the deadly and depraved methods of committing acts of violence, murder, destruction and mayhem." Id. And the Taliban "continued to offer sanctuary to BIN LADEN and AL QAEDA members" after 9/11. Id. By facilitating al Qaeda's terrorist training camps, the Taliban materially supported the 9/11 Attacks in a way that "endanger[ed] human life," was "intended to intimidate or coerce civilian[s]" or their governments, and proximately caused citizen plaintiffs' injuries, such that it is primarily liable under § 2333(a). Linde, 882 F.3d at 332. Those same allegations show the mental state and assistance to a foreign terrorism organization necessary to establish aiding-and-abetting liability

under § 2333(d)(2). See Honickman, 6 F.4th at 494. Based on these liability findings, the Court recommends entering default judgment against the Taliban in favor of citizen plaintiffs.[6]

### E. Plaintiffs Are Entitled to Treble Damages

All that remains is for the Court to assess damages. The ATA supports "threefold" damages for pain and suffering, economic loss, and loss of solatium. § 2333; see Morris v. Khadr, 415 F. Supp. 2d 1323 (D. Utah 2006) (awarding pain and suffering damages under the ATA); Knox, 442 F. Supp. 2d 62 (same for economic damages); Pescatore v. Palmera Pineda, 345 F. Supp. 3d 68 (D.D.C. 2018) (same for solatium damages).

The Court has previously awarded Plaintiffs these types of damages against Iran. See, e.g., ECF Nos. 3226 (pain and suffering damages), 3296 (economic damages), 3396 (solatium damages), 5954 (pain and suffering for personal injury damages). The Court does not need to re-evaluate the evidence supporting those determinations. It adopts and applies to the Taliban each prior determination of pain and suffering and economic damages for the estates of people killed, pain and suffering damages for people injured, and solatium damages for immediate family members (and the functional equivalents of immediate family members) of people killed in the 9/11 Attacks, as set forth in ECF Nos. 8275-1, 8275-3, 8299-1, 8299-2, 8299-3, 8337-1, 8337-3, No. 18-cv-03353 at ECF Nos. 76-1, 76-2, and Appendix A (calculating appropriate damages for Dickey plaintiffs), subject to the corrections and caveats described in Appendix A. In accordance with § 2333, it also recommends awarding treble damages.

---

[6] At counsel's request, the Court excludes five plaintiffs from this motion—Diane Genco, Janlyn Scauso, Laurie Spampinato, Kimberly Trudel, and Cella Woo-Yuen. See ECF No. 8660. These plaintiffs' claims will be promptly resolved with the motion for default judgment at ECF No. 8568.

One group of plaintiffs requires the Court to make new findings. The <u>Burlingame II</u> plaintiffs seek economic damages not awarded in connection with any previous default judgment motion. The Court has reviewed the evidence supplied by these plaintiffs and concludes that it supports the requested amounts. Accordingly, the Court recommends awarding economic damages to the plaintiffs as listed in ECF No. 8364-1, and awarding treble damages as provided under § 2333.

## CONCLUSION

The Court recommends GRANTING partial final default judgment as to the U.S. citizen plaintiffs listed in ECF Nos. 8275-1, 8275-3 (other than the five whose claims will be adjudicated with the motion at ECF No. 8568 in accordance with ECF No. 8660), 8299-1, 8299-2, 8299-3, 8337-1, 8337-3, 8337-4, 8364-1, No. 18-cv-03353 at ECF Nos. 76-1, 76-2, and Appendix A, subject to the corrections and caveats described there. To that end, it recommends:

- awarding these plaintiffs damages as provided in ECF Nos. 8275-1, 8275-3, 8299-1, 8299-3, 8337-1, 8337-3, 8337-4, 8364-1, No. 18-cv-03353 at ECF Nos. 76-1, 76-2, and Appendix A;

- awarding pre-judgment interest assessed at 4.96 percent per annum, compounded annually for the period from September 11, 2001, until the date of the judgment for damages; and

- permitting these plaintiffs to seek punitive, economic, and other appropriate damages at a later date, to the extent such damages were not sought in these motions.

The Court recommends DENYING all other motions with leave to re-file. It further recommends permitting all plaintiffs in these actions to apply for default judgment awards in later stages, to the extent such awards have not already been addressed.

SARAH NETBURN
United States Magistrate Judge

DATED:    March 14, 2023
          New York, New York

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). These objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

## APPENDIX A

Caveats & Corrections:

The Court was unable to locate the Ashton II Plaintiffs in the complaint at ECF No. 1463. Its recommendation is therefore contingent on counsel providing the Court with the docket number(s) or the page number(s) of the complaint that added them as plaintiffs against the Taliban. Counsel should file this information with 14 days.

The plaintiffs and decedents listed at ECF Nos. 8337-1 at ¶ 41, 8337-3 at ¶ 32, and 8365-1 at ¶ B-8 appear to have been inadvertently switched. Damages should therefore should be awarded to the person named in the decedent's column. Plaintiffs should advise the Court within 14 days if this is incorrect.

The Burlingame I table at ECF No 8337-1 indicates that Enrique Gomez's estate was previously awarded economic losses in the amount of $2,000,000.00. That appears to be in error, as the Burlingame II papers indicate that his estate received no prior economic damages award and is seeking the Court's approval for economic damages in the amount of $1,386,252.00. The total compensatory and treble damages in the Burlingame I table are nevertheless correct, because the $2,000,000.00 in mistaken economic losses was not included in those totals.

| **Dickey Plaintiff** | Pain & Suffering | Economic | Solatium | Total Compensatory | Treble Damages |
|---|---|---|---|---|---|
| Estate of Joseph Dickey, Jr. | $2,000,000 | $16,022,303.00 | | $18,022.303.00 | $54,066,909.00 |
| Irene Dickey | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| Joseph Dickey III | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Elizabeth Dickey | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Estate of Robert Eaton | $2,000,000 | $20,689,993.00 | | $22,689,993.00 | $68,069,979.00 |
| Jacqueline Eaton | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| Estate of James Kelly | $2,000,000 | $19,639,410.00 | | $21,639,410.00 | $64,918,230.00 |
| Joanne Kelly | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| Brianne Kelly | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Kaitlyn Kelly | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Colleen Kelly | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Erin Kelly | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Estate of Timothy O'Brien | $2,000,000 | $94,984,220.00 | | $96,984,220.00 | $290,952,660.00 |
| Lisa O'Brien | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| John O'Brien | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Madeline O'Brien | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Jacqueline O'Brien | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Estate of Michael Seaman | $2,000,000 | $15,768,595.00 | | $17,768,595.00 | $53,305,785.00 |
| Dara Seaman | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| Michaella Seaman | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Mary Seaman | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Edward Seaman | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Estate of Robert Sliwak | $2,000,000 | $3,698,489.00 | | $5,598,489.00 | $17,095,467.00 |

| Name | | | | | |
|---|---|---|---|---|---|
| Susan Sliwak | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| Ryan Sliwak | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Kyle Sliwak | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Nicole Sliwak | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Estate of John Wallice, Jr. | $2,000,000 | $16,298,335.00 | | $18,298,335.00 | $54,895,005.00 |
| Allison Wallice | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| John Wallice III | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Christian Wallice | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Patrick Wallice | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Estate of Farrell Lynch | $2,000,000 | $18,289,614.00 | | $20,289,614.00 | $60,868,842.00 |
| Eileen Lynch | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| Kathleen Lynch | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Meaghan Lynch | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |