**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------X

**In re: Terrorist Attacks on September 11, 2001**

---------------------------------------------------------X

**Civil Action No. 03-MD-1570 (GBD)(SN)**

**ECF Case**

**This document relates to:**

*Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03-cv-06978
*Thomas E. Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03-cv-09849
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.,* No. 04-cv-01923
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, No. 04-cv-05970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, No. 04-cv-07065
*Euro Brokers Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 04-cv-07279

---

**PLAINTIFFS' OBJECTIONS TO THE COURTS'
MARCH 6, 2023 OPINION & ORDER (ECF No. 8905)**

---

March 20, 2023

# TABLE OF CONTENTS

Page

I.   INTRODUCTION......................................................................................................................1

II.  FACTUAL BACKGROUND .................................................................................................3

III. THE MAGISTRATE'S ORDER IMPOSING THE DRASTIC MEASURE OF
STRIKING AN EXPERT REPORT WAS CLEARLY ERRONEOUS..............................4

   a.   Plaintiffs did not operate in bad faith..............................................................................4

IV.  EXCLUDING WINER III IS NOT AN APPROPRIATE SANCTION IN THIS
INSTANCE..............................................................................................................................6

   a.   Exclusion is a severe sanction. ..........................................................................................6

   b.   The supplement was substantially justified.......................................................................7

   c.   Exclusion is an improper remedy ......................................................................................9

V.   CONCLUSION .....................................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Grdinich v. Bradlees,*
   187 F.R.D. 77 (S.D.N.Y. 1999) ...................................................................................................7

*Hable v. Metro-N. Commuter R.R.,*
   No. 18-CV-1460 (NSR), 2019 WL 4673564 (S.D.N.Y. Sept. 24, 2019) ..................................7

*Hinton v. Patnaude,*
   162 F.R.D. 435 (N.D.N.Y. 1995) ..............................................................................................7

*Lidle v. Cirrus Design Corp.,*
   No. 08 CIV. 1253 BSJ/HBP, 2009 WL 4907201 (S.D.N.Y. Dec. 18, 2009) ...........................7

*New York Progress & Prot. PAC v. Walsh,*
   733 F.3d 483 (2d Cir. 2013) ......................................................................................................5

*Outley v. City of New York,*
   837 F.2d 587, (2d Cir. 1988) .....................................................................................................7

*Sandata Techs., Inc. v. Infocrossing, Inc.,*
   No. 05-cv-09546 (LMM)(THK), 2007 WL 4157163 (S.D.N.Y. Nov. 16, 2007) ...................7

*Softel, Inc. v. Dragon Medical and Scientific Communications, Inc.,*
   118 F.3d 955 (2d Cir. 1997) ......................................................................................................7

*Strauss v. Crédit Lyonnais, S.A.,*
   925 F. Supp. 2d 414 (E.D.N.Y. 2013) .......................................................................................9

*United States v. Damrah,*
   412 F.3d 618 (6th Cir.2005) .......................................................................................................9

*Wechsler v. Hunt Health Sys., Ltd.,*
   381 F. Supp. 2d 135 (S.D.N.Y. 2003) .......................................................................................7

**Statutes**

Fed. R. Civ. P. 37(c) .........................................................................................................................7

Fed. R. Civ. P. 72(a) .........................................................................................................................1

## I.  **INTRODUCTION**

Pursuant to Fed. R. Civ. P. 72(a), Plaintiffs object to, and request that this Court set aside, the March 6, 2023 Opinion & Order, ECF No. 8905, (the "March 6 Opinion") of the Honorable Sarah Netburn, United States Magistrate Judge, which imposed the harsh remedy of striking in its entirety a third report by one of plaintiffs' experts ("Winer III") regarding Plaintiffs' claims against Dubai Islamic Bank ("DIB"), premised on incomplete information that led the Court to draw an incorrect inference. In the alternative, plaintiffs ask that the Court recommit the matter to the magistrate judge for reconsideration.

The March 6 Opinion is premised on two essential incorrect underpinnings—one inaccurate inference drawn from the timing of the service of Winer III and one underestimation of the value of Winer III. The core of the magistrate judge's determination that sanctions were appropriate rested on an inference of bad faith—that is, that the timing of Plaintiffs' service of Winer III showed that Plaintiffs were "sandbagging DIB with additional evidence," ECF No. 8905 at 9 (internal quotations and citations omitted) "to create a genuine issue of material fact on the eve of summary judgement." *Id.* Turning next to the appropriate sanction under the circumstances, Judge Netburn reasoned that wholesale exclusion of Winer III was not unduly punitive because—without considering how Winer III place the cited evidence in context—the Court found it cited extensively to CIA reports, witness testimony, and evidence that could be presented directly to the jury.  *Id.* at 11.

The core inference undergirding Judge Netburn's exclusion of Winer III, which essentially amounted to an assessment that the PECs operated in bad faith, was simply not correct. Indeed, the March 6 Opinion failed to recognize that, on June 10, 2022, just days before the service of Winer III and the filing of DIB's revised summary judgment motion, the parties had jointly submitted a request asking the Court for an additional six weeks to discuss additional discovery in light of the declassification of CIA reports containing critical new evidence as to DIB. ECF No. 8089. The entirely

unexpected denial of that joint request on June 14, 2022, ECF No. 8096, left both sides in a bind,[1] and Plaintiffs responded in good faith by accelerating expert processes they had intended to address during the six-week extension. To that end, Plaintiffs had Mr. Winer prepare and finalize his report in just three days, amidst ongoing expert depositions in the litigation against Saudi Arabia and a flurry of other activity in the MDL. Only three days after the Court denied the parties' joint request for an extension, Plaintiffs served Winer III on June 17, 2022.

Contrary to the inference Judge Netburn drew, plaintiffs' intent—which was informed by the then-ongoing extended exchanges among the parties concerning new evidence and anticipated additional discovery exchanges—was to afford DIB as much notice of Mr. Winer's opinions as possible, permit DIB to re-depose Mr. Winer, and allow the parties to exchange additional follow-up expert reports. In short, Plaintiffs' intent was not to "slip a report into the record" simply to "create a genuine issue of material fact, as suggested in the R&R. ECF No. 8905 at 9. The timing of Plaintiffs' service of Winer III on June 17, 2022, was driven by the parties' then-ongoing dialogue and the Court's June 14, 2022 Order denying the parties' extension request (ECF No. 8096), rather than the June 17, 2022 filing of DIB's motion. Plaintiffs may have been unwise in presuming that the jointly requested extension would be granted, but that circumstance does not support an inference of bad faith.

In addressing whether the wholesale striking of Winer III was appropriate, the Court also significantly underestimates the value of Winer III, commenting that the report is of low importance. ECF No. 8905 at 11. However, in considering the value of Winer III, the Court relies on only parts of Winer III, while underestimating or affording inadequate consideration of substantial portions of the report that place the cited and quoted evidence in context, including, for example, substantial portions of the report that explain, contextualize, and assess the value of the CIA documents.

---

[1] Plaintiffs in fact called counsel for DIB immediately after the Court issued its Order denying the extension, and then followed up by email, offering to go to the Court with a revised proposal. That offer is inconsistent with any effort to sandbag DIB.

Because Plaintiffs did not act in bad faith and Winer III offers important expert opinions concerning CIA documents declassified only shortly before its service, Winer III should not be excluded.

## II.   FACTUAL BACKGROUND

In August 2018, Plaintiffs issued a subpoena to the CIA for several reports addressing al Qaeda's relationships with financial institutions that were cited in the Notes of the 9/11 Commission's Final Report, but the CIA withheld those reports as classified for more than four years. On March 29, 2022, however, the CIA released several of those reports (the "CIA documents") pursuant to Executive Order 14040. The CIA documents included extensive information concerning DIB's relationships with al Qaeda, including details about specific transactions and supportive acts. Of note, Plaintiffs had attempted to explore DIB's potential relationships with several of the al Qaeda associated entities discussed in the reports, but limits on DIB's searches proposed by DIB and adopted by the Court made it impossible as a practical matter to do so. ECF No. 8720 at 4-5 (recognizing that "[b]oth the parties and the Court understood the problems with [the exact match search method, which] would not return accounts held by individuals under aliases or alternate spellings…."); *id* at 8-9 (authorizing additional discovery where the Plaintiffs simply "chose the wrong spelling").

On April 18, 2022, after a meeting with counsel for DIB in which Plaintiffs learned they were unaware of the newly released CIA documents, Plaintiffs provided DIB's counsel with access to the newly available evidence. In addition, on April 23, 2022, Plaintiffs served DIB with supplemental discovery responses noting that "[t]he CIA release included evidence relevant to Plaintiffs' claims against [DIB] … which had previously been withheld by the CIA as classified."[2]

---

[2] Notably, the CIA documents contain "newly public information" that "provides substantial concrete and specific information describing DIB's knowledge, which the CIA assessed to be 'apparently witting' by its senior management, and DIB's direct support of the terrorist activities of Bin Ladin and Al Qaeda, as well as other extremist organizations engaged in terrorism." Winer III, at 7.2.

Underscoring the new and important nature of the CIA information, DIB chose to withdraw its then pending renewed motion to dismiss.[3] However, the Court denied the ensuing joint extension request that would have allowed Plaintiffs to address the CIA documents more comprehensively and also would have allowed DIB more time to prepare its renewed jurisdictional challenge. ECF No. ECF No. 8096. The denial of this extension ultimately left Plaintiff's with only *three days* to turn around Winer III to DIB amid ongoing depositions as to defendant Saudi Arabia. Plaintiffs based our good faith belief that it was proper to serve as supplemental because, in part, Mr. Winer had already been identified as to DIB, and had served reports and been deposed on matters of general applicability, and Plaintiffs were agreeable to providing DIB with a full opportunity to question Mr. Winer on his additional opinions and to respond to Winer III.

III.  **THE MAGISTRATE'S ORDER IMPOSING THE DRASTIC MEASURE OF STRIKING AN EXPERT REPORT WAS CLEARLY ERRONEOUS**

   a.  **Plaintiffs did not operate in bad faith.**

Contrary to the inference in the March 6 Opinion, the timing of the service was not premised on any bad faith effort to surprise (or "sandbag" DIB) with belated questions of fact;[4] quite the contrary. The timing of the service of Winer III was driven by three factors—namely, the March 29 and April 1, 2022 CIA release of previously classified documents, the ongoing discussions between the parties that concerned potential release of additional DIB discovery due to the released CIA documents, and the Court's June 14, 2022 decision which rejected the parties' request for additional time to engage in that additional discovery (ECF No. 8096). Once the Court entered the June 14, 2022 Order, the parties discussions regarding additional discovery collapsed. Plaintiffs then served Winer

---

[3] *See* ECF No. 7927 (DIB proposing to withdraw its motion at ECF No. 7419); ECF No. 7929 (granting ECF No. 7927 and denying DIB's earlier motion as moot).

[4] The March 6 Opinion suggests that Plaintiffs' intention was to "continuously bolster, strengthen, or improve their reports." ECF No. 8905 at 5, and to effectively "'sandbag[]' DIB with additional evidence" "to create a genuine issue of material fact on the eve of summary judgment" *id.* at 9.

III only three days later, on the very day they received the report from Mr. Winer. In this context, the inference in the March 6 Opinion that Plaintiff's served the report to simply manufacture a factual issue is unfair, unfounded, and untrue. Plaintiffs were simply responding to an unexpected turn of events resulting from the denial of the joint extension.[5]

Despite the March 6 Opinion determination that Plaintiffs erred in styling Winer III as a supplemental report, Plaintiffs were operating in good faith in doing so. Given that Mr. Winer had introduced opinions of general relevance to all the defendants (including DIB),[6] and had previously been deposed by all the defendants present at his two-days of testimony (including DIB), Plaintiffs (mistakenly) understood Winer III to be properly styled as a supplement to those earlier reports. In any case, Plaintiffs did not style the report as a supplement in an effort to circumvent deadlines—again, the timing was driven entirely by the denial of the extension request, at which point Plaintiffs felt it necessary to serve the report immediately.

The March 6 Opinion also criticizes Winer III (and the timing of its service) on the grounds that some of the evidence cited in Winer III pre-dated the declassification of the CIA evidence. ECF No. 8905 at 10. But that assessment misses that Winer III shows how the new CIA documents place the previously available evidence into a new context.[7] The hard evidence (finished intelligence) contained in the CIA documents substantially changed the complexion of the preexisting circumstantial evidence in the record. To that end, the March 6 Opinion is incorrect and clearly

---

[5] A finding of fact is "clearly erroneous" "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013). Here, given the entirety of the evidence available, Magistrate Judge Netburn's finding of fact concerning Plaintiffs' intent in filing Winer III is clearly erroneous.

[6] Mr. Winer's earlier opinions of general relevance included, for example, opinions about the financing of al Qaeda prior to 9/11 and the importance of that support to the organization's strike capabilities. Those opinions are, likewise, relevant to DIB's pre-9/11 support to Al Qaeda and the Bin Ladin terrorism network.

[7] For example, in Winer III at ¶ 7.1—7.3, Mr. Winer's opinions express his findings about evidence in the CIA documents showing DIB's senior management's "'apparently witting'" knowledge of DIB's direct support of al Qaeda and Bin Ladin activities, and juxtaposes that against previously available testimony of Dr. Hassan, DIB's long-time chair of its Oversight Board, to place in context, given the CIA documents, Dr. Hassan's testimony that he had never become aware of allegations of terror financing at DIB (Winer III at ¶ 7.9).

erroneous when it cites to previously available information (such as the deposition of Judge Alan Fine) as evidence that is "entirely independent" of those premised on the CIA assessments "and that the timing of Winer III therefore cannot be justified as based on 'previously unknown or unavailable evidence."[8] Though the deposition of Judge Fine was previously *available*, its relevant import toward supporting plaintiffs' claims was not apparent until the CIA documents were declassified and released.[9] The depositions of Judge Fine and Hassan *inform* Winer's interpretation of the CIA documents, without which he would be unable to comment fully.[10]

If Plaintiffs' good faith belief had been correct, and the reports had been correctly denoted as supplemental, the report would have been a timely supplement. In the end, though, Plaintiffs' service of Winer III on June 17, 2022 was not to an effort to avoid deadlines, not an effort to surprise DIB, and not an effort to create belated questions of fact. Rather than being in bad faith, the timing was about how quickly Plaintiffs could serve Winer III after the Court's June 14, 2022 order denying the party's joint request for an extension so that DIB would have ample time to address the report in the motion briefing.

## IV. EXCLUDING WINER III IS NOT AN APPROPRIATE SANCTION IN THIS INSTANCE

### a. Exclusion is a severe sanction.

This Court has recognized that "preclusion of an expert report can be a harsh sanction." *Sandata Techs., Inc. v. Infocrossing, Inc.*, No. 05-cv-09546 (LMM)(THK), 2007 WL 4157163, at *17 (S.D.N.Y. Nov. 16, 2007). "In determining whether preclusion is appropriate, courts must consider:

---

[8] ECF No. 8905 at 7.

[9] For example, Winer provides analysis, at 7.8, of an exhibit from the deposition of Judge Alan Fine, which is given new context given his analysis of the CIA documents in the other preceding analytical paragraphs in section 7 of Winer III.

[10] Section 4 of Winer III (covering Judge Fine's deposition) is woven into the report after his primary discussion of the CIA documents precisely to show inconsistencies between the testimony, and the CIA's findings. Then, sections 7.5 – 7.18 tie *all* of the information (the CIA documents, Dr. Hassan's testimony, and Judge Fine's testimony) together with Mr. Winer's analysis. This multi-page summary of Mr. Winer's findings and opinions incorporates all relevant information related to DIB in the discovery to date.

(1) the reasons for the delay in providing the evidence; (2) the importance of the evidence precluded; (3) the prejudice to the opposing party from having to address the new evidence; and (4) the possibility of a continuance." *See Softel, Inc. v. Dragon Medical and Scientific Communications, Inc.,* 118 F.3d 955, 961 (2d Cir. 1997); *Outley v. City of New York*, 837 F.2d 587, 590–91 (2d Cir. 1988); *Lidle*, 2009 WL 4907201, at *6. Though not rigidly required, the "drastic remedy" of preclusion if often applied only "'in those rare cases where a party's conduct represents *flagrant bad faith* and *callous disregard* of the Federal Rules of Civil Procedure.'" *Grdinich v. Bradlees*, 187 F.R.D. 77, 79 (S.D.N.Y. 1999) (finding that disclosure of expert witness one and one-half months after directed by court, and three days after discovery cutoff date, did not warrant sanction of preclusion of expert testimony) (quoting *Hinton v. Patnaude*, 162 F.R.D. 435, 439 (N.D.N.Y. 1995)); *see also Hable v. Metro-N. Commuter R.R.*, No. 18-CV-1460 (NSR), 2019 WL 4673564 (S.D.N.Y. Sept. 24, 2019). Moreover, "precluding testimony of an expert, even when there has not been strict compliance with Rule 26, may at times tend to frustrate the Federal Rules' overarching objective of doing substantial justice to litigants." *Wechsler v. Hunt Health Sys., Ltd.,* 381 F. Supp. 2d 135, 155 (S.D.N.Y. 2003) (internal quotation marks and citation omitted).

### b. The supplement was substantially justified.

Preclusion is not an appropriate sanction where the failure to comply with the Federal Rules was "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1).

As explained *supra*, Section III.a. at 4-5, Plaintiffs acted in good faith in serving Winer III only days after the Court's June 14, 2022 order. Although discovery was formally closed when Plaintiffs served Winer III, the report was served only 2 ½ months after the CIA documents became knowable, only three days after the Court's June 14 Order ended the parties' discussions about additional discovery regarding the CIA documents, and on the very day that Plaintiffs received Winer III for service. Further, DIB, itself, had sought the Court's approval for additional discovery related to the new CIA documents (ECF No. 8874) and the parties had reached agreement on the additional expert

discovery to be conducted. *Id.* In short, though Winer could not possibly have addressed the CIA documents in his earlier reports and Plaintiffs could not possibly have served any expert opinions addressing the documents during the discovery period, Winer III was served on DIB within days of knowing DIB was producing no additional discovery resulting from the CIA's release and Plaintiffs worked, in good faith, to ensure that DIB would have access to depose Mr. Winer and that any necessary additional expert discovery could be had.[11]

Further, the March 6 Opinion is manifestly incorrect in its assumption that Plaintiffs service of Winer III indicated an attempt to "sandbag" DIB. In fact, Plaintiffs' service of Winer III only days after the parties' discussions about additional discovery ceased, was intended to *avoid* "sandbagging" DIB. First, DIB had known for months that new evidence existed and that Plaintiffs had anticipated additional evidence forthcoming from DIB (based on the parties' then-ongoing discussions). Second, Plaintiffs understood that Winer III would afford DIB ample time before Plaintiffs opposition brief and long before DIB's response brief on its motion to dismiss to address Winer III. Indeed, DIB and Plaintiffs ultimately reached agreement that would have given DIB access to re-depose Winer about Winer III and would have allowed the parties to exchange reports addressing the CIA documents. Far from "sandbagging," the entire approach was geared toward disclosing Winer III as promptly as possible, allowing DIB to have access to question Winer about the report, and affording both sides the opportunity to address expert issues surrounding the CIA documents.

---

[11] The magistrate suggests that "the PECs could have spared themselves, DIB, and the Court this dilemma if they had served Winer III even one day earlier." March 6 Opinion, at 12, n.6. Setting aside that Winer III was not available for service a day earlier, but even if it had been served the day before DIB filed its motion, DIB would likely have filed the same motion to strike and would have had inadequate time to significantly alter its motion (to the extent it needed to do so). Further, the Court's comments miss at least two other salient point. *First*, the extension that the parties sought, and that was denied on June 14, 2022 (ECF No. 8096), was sought precisely to avoid the compressed time result that ensued between June 14 and June 17. Though the Plaintiffs' reliance on the parties' joint request for an extension ultimately proved unwarranted when the Court denied the extension on June 14, 2022, the compressed period was no less unexpected. *Second*, the service of the report as promptly as it was available and only days after the June 14 Order nonetheless permitted DIB a fair opportunity to address Winer III it its reply—which it has.

The March 6 Opinion also erred in concluding that wholesale exclusion of Winer III was not unduly harsh, under the theory that the Winer III quoted extensively from other evidence which could be presented to the jury. Experts are of course permitted to cite the facts informing their opinions in their reports, and experts in the terrorism context are permitted to rely on hearsay in forming their opinions. Further, this Court has found that the CIA documents addressed in Winer III are themselves admissible. ECF No. 8911 at 12-13.[12] But more to the point, the March 6 Opinion simply underestimated the extent to which Winer III provided key context for the facts and evidence it cites, based on Winer's expertise as a terrorism expert. That context is not knowable to a layperson, and is critical to understanding the facts of record, including the CIA documents themselves.

Next, the March 6 Opinion found that Winer III was not "harmless" and would have prejudiced DIB. This is clearly erroneous given that DIB and Plaintiffs had already agreed, prior to the issuance of the March 6 Opinion, to proceed with additional expert discovery that would have given DIB access to re-depose Winer about Winer III, and would have afforded the opportunity for additional expert exchanges to address the CIA documents. *See* ECF No. 8874 (DIB's request for limited expert discovery). In fact, DIB acknowledged it already had two experts prepared to rebut Winer III. Clearly, Plaintiffs and DIB were able to reach agreement to proceed with expert discovery in a limited and reasonable context that would appropriately address the new evidence that was disclosed last year. A total exclusion is not appropriate in such a circumstance.

### c. Exclusion is an improper remedy

Given the above clarifications, the *Outley* factors, *see supra* at 7, do not favor exclusion in this instance. They are addressed in turn below.

---

[12] *See also United States v. Damrah*, 412 F.3d 618, 625 (6th Cir.2005) (Affirming district court's holding that terrorism expert's reliance upon hearsay was permissible because, "[g]iven the secretive nature of terrorists, the Court can think of few other materials that experts in the field of terrorism would rely upon."); *Strauss v. Crédit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 431 (E.D.N.Y. 2013) (Allowing terrorism expert to testify over objections that his testimony only repeated inadmissible hearsay).

*First*, Plaintiffs had good reason for not providing Winer III until they did. Winer III addressed key evidence that simply was not available before the CIA declassified the documents in March/April 2022. Indeed, Plaintiffs served Winer III only days after the Court rejected the parties join request for additional time for on-going dialogue about further discovery from DIB about the CIA documents. Only days after it was apparent no additional new evidence would be assessed for Winer III, Plaintiffs received the report and served it that same day.[13]

*Second*, Winer III is important toward aiding laypersons to understand, contextual, and assess the value of the CIA documents.  For example, while the March 6 Opinion underestimates the importance of Winer III, it greatly overestimates the ken of a layperson regarding governmental intelligence findings. Understanding the context and import of selections of intelligence reports is no easy task for a layperson. Even if some of this information has become familiar to some participants in this litigation for 20+ years, understanding something as simple as the difference between "raw" and "finished" intelligence requires detailed expert explanation. The March 6 Opinion ignores that Mr. Winer also reviewed the entirety of the CIA production and culled and contextualized the most important information, which he purposefully selected for relevant quotation and analysis in his report. He did not "nakedly cut and paste"[14] but rather applied expertise to his review and selected the most important documents that a factfinder would need contextualized and analyzed.[15] Exclusion

---

[13] The March 6 Opinion discredits Winer III because it references other previously available information. However, in reaching its conclusion, the Court presumes Winer would have reached his opinion to a reasonable degree of certainty premised on only the cited earlier available information—namely, the two depositions of DIB-related witnesses (Hassan and Fine). But instead, the declassified CIA documents add new context and value to the Hassan and Fine depositions that warrant further expert analysis. This was not, as Magistrate Judge Netburn states, an attempt to "slip a report into the record…to correct an error." Even if portions of the report were based on previously available information, that logically does not warrant the exclusion of the entirety of the report.

[14] ECF No. 8905 at 11.

[15] Only several examples of Mr. Winer's application of his expertise to describe the import of and contextualize the CIA documents include the following excerpts. In paragraph 3.1 of Winer III, he says "the CIA documents provide[] important, newly public, information on Bin Ladin's financial and business activities." He continues, in a lengthy paragraph at 3.2, to describe the differences between raw and finished intelligence, undergirded by human sources ("humint"), signals intelligence ("sigint"), open-source intelligence ("osint"), and imagery intelligence ("imint"). These distinctions are

of Winer's reports critically would deprive the Plaintiffs of important testimony, evidenced by DIB's

sudden change of heart in pushing for their own expert testimony on the documents.

**Third**, if there is any prejudice at all to DIB in allowing Winer III, it is de minimis, ameliorated

by the parties' negotiated approach (which is not even referenced in the March 6 Opinion), and

outweighed by the result of Plaintiffs being required to move forward with no expert to explain the

value, context, and meaning of the CIA documents to the layperson jury. Though the March 6 Opinion

finds, at 12, that DIB would be "prejudice[d]…as a result of having to prepare to meet new testimony,"

it has long been clear that DIB is already prepared to meet the new testimony. See, e.g., ECF No. 8874

(DIB's February 23, 2023 proposal for retaining experts to address the CIA documents). Indeed, DIB

has advised it has two experts prepared to address the issue. In addition, Plaintiffs and DIB had already

reached agreement to allow DIB to depose Jonathan Winer for another six hours, beyond the nearly

fourteen hours already on the record. *Id.* Indeed, even after the Court issued the March 6 Opinion,

DIB has, in an apparent change of position, insisted that new expert testimony is necessary to address

the CIA documents as new evidence. *See, e.g.,* ECF No. 8934 (asking the Court to authorize DIB to

serve new expert reports if the Court's dismissal of DIB is overturned on appeal).

**Fourth**, before issuing the March 6 Opinion and imposing the drastic remedy of striking an

expert report, the Court never considered the parties' reasoned pre-existing agreement to permit DIB

additional time to depose Mr. Winer, and exchange additional expert discovery limited to the CIA

documents. *See* ECF No. 8874 (DIB's request for limited expert discovery). The March 6 Opinion

---

indisputably beyond the ken of lay jurors. Using his expertise, Mr. Winer explains why a jury should weigh the facts in the CIA documents heavily by stating that the evidence gathered in the CIA documents—the evidence he elected to specifically call out for attention in his report—is "specific, concrete, and detailed" at para. 3.10. Mr. Winer continues by discussing important dates of finished intelligence reports, known via his expertise, at 3.13, before concluding at 3.15 that "Based on [his] experience in reading finished intelligence, [he] believe[s] that the redacted portions of these documents likely include information on the sources and methods that provide the underlying facts on which the CIA based its finished intelligence assessments. Such raw intelligence could include human intelligence from persons with direct knowledge of Bin Ladin and Al Qaeda and their financial and business activities, signals intelligence, involving intercepted telephone communications, and open source intelligence…" This analyses of the CIA documents cannot properly be characterized as mere "cutting and pasting" or within the realm of lay persons.

acknowledges that allowing for limited additional discovery here would mitigate any prejudice to DIB, and DIB itself has expressed its willingness to participate in further expert discovery. Accordingly, the Court could have permitted additional time for proceedings to ensure DIB was protected without imposing the drastic remedy of striking Plaintiffs. expert report.

**V.**   <u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request this Court to set aside the Magistrate Judge's March 6, 2023 Opinion & Order, or, in the alternative, recommit the matter to the Magistrate Judge for reconsideration.

Dated: March 20, 2023

MOTLEY RICE LLC

By:  */s/ Robert T. Haefele*
ROBERT T. HAEFELE
JODI WESTBROOK FLOWERS
DONALD A. MIGLIORI
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*Liaison Counsel for the Plaintiffs'*
*Executive Committee for Personal Injury and Death*
*Claims on behalf of the Plaintiffs*

Respectfully submitted,

COZEN O'CONNOR

By:  */s/ Sean P. Carter*
SEAN P. CARTER
STEPHEN A. COZEN
J. SCOTT TARBUTTON
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Tel.: (215) 665-2105
Email: scarter@cozen.com

*Co-Chair of the Plaintiffs' Executive Committee for*
*Commercial Claims on behalf of Plaintiffs*

12

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true copy of the Plaintiffs' Objections to the Courts' March 6, 2023 Opinion and Order (ECF No. 8905) was electronically filed this 20th day of March, 2023. Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system, which the parties may access.

_____
Robert T. Haefele