UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |

*This document relates to*:
*Ashton, et al. v. Kingdom of Saudi Arabia*, No. 17-cv-02003

**PLAINTIFFS' OBJECTIONS PURSUANT TO FED. R. CIV. P. 72 AND 28 U.S.C. §636(b)(1)(A) TO THE MAGISTRATE JUDGE'S MARCH 13, 2023 ORDER**

KREINDLER & KREINDLER LLP
Steven R. Pounian, Esq.
James P. Kreindler, Esq.
Andrew J. Maloney, Esq.
Megan W. Benett, Esq.
James Gavin Simpson, Esq.
485 Lexington Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: spounian@kreindler.com
*Attorneys for Ashton Plaintiffs*

SPEISER KRAUSE, PC
Frank H. Granito, III, Esq.
Douglas A. Latto, Esq.
Jeanne M. O'Grady, Esq.
800 Westchester Avenue, Suite S-608
Rye Brook, New York 10573
Tel: (914) 220-5333
*Attorneys for Ashton/Burlingame Plaintiffs*

BAUMEISTER & SAMUELS, P.C.
Michel F. Baumeister, Esq.
Dorothea M. Capone, Esq.
140 Broadway, 46th Floor
New York, New York 10005
Tel: (212) 363-1200
*Attorneys for Ashton/Bauer Plaintiffs*

## TABLE OF CONTENTS

Table of Authorities .................................................................................................................... ii

SUMMARY OF ARGUMENT .................................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY....................................................... 3

    1.   The May 2018 discovery hearing and the discovery search exclusion. ............................... 3

    2.   Saudi Arabia's June 2018 answers to interrogatories swore that Bayoumi and Thumairy did no substantive work for Saudi Arabia inside the U.S. .................................................. 3

    3.   Plaintiffs' repeatedly sought to obtain the discovery regarding Bayoumi and Thumairy, including information held by the Saudi intelligence agency. ............................................ 4

    4.   President Biden's September 2021 Executive Order. ......................................................... 5

    5.   Newly released Executive Order documents previously withheld by the FBI show that Bayoumi and Thumairy were doing work for Saudi Arabia's intelligence agency inside the U.S. and that the Saudi intelligence agency holds relevant information about that work……. ............................................................................................................................... 5

    6.   Magistrate Judge Netburn's March 13 Order. ..................................................................... 8

ARGUMENT ................................................................................................................................. 9

PLAINTIFFS' RULE 72 OBJECTIONS SHOULD BE GRANTED: THIS COURT SHOULD SET ASIDE THE MARCH 13 ORDER AND DIRECT SAUDI ARABIA TO ANSWER PLAINTIFFS' INTERROGATORIES AND PRODUCE DOCUMENTS USING THE INFORMATION HELD BY ITS INTELLIGENCE AGENCY ................................................... 9

    A.   The Magistrate Judge's March 13 Order is contrary to Second Circuit law. ...................... 9

    B.   There is ample good cause for the requested discovery. ................................................... 10

    C.   The requested discovery is necessary to prevent an ongoing fraud perpetrated by Saudi Arabia. ............................................................................................................................... 11

    D.   Saudi Arabia is responsible for the delays that have occurred and if not remedied the denial of this discovery will constitute reversible error ..................................................... 12

CONCLUSION............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*In re 650 Fifth Ave. and Related Properties*, 934 F.3d 147 (2d Cir. 2019) ................................ 13

*In re Terrorist Attacks on September 11, 2001*, 298 F. Supp. 3d 631 (S.D.N.Y. 2018) ............... 1

*Long Is. Light. Co. v. Barbash,* 779 F.2d 793 (2d Cir. 1985) ...................................................... 13

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2d Cir. 2000) ................................................ 9

*Saray Dokum ve Madeni Aksam Sanayi Turizm A.S. v MTS Logistics Inc.*, 335 F.R.D. 50 (S.D.N.Y 2020) ........................................................................................................................ 9, 10

*Yan v Renew Body Wellness, Inc.*, 2022 WL 2698562 (S.D.N.Y. July 12, 2022) .................. 9, 10

**Statutes**

28 U.S.C. §636(b)(1)(A) ................................................................................................................ 1

**Rules**

Fed. R. Civ. P. 72 ................................................................................................................... 1, 4, 9

**Other Authorities**

Exec. Order No. 14040, 86 Fed. Reg. 50439 (Sept. 3, 2021) ............................................ *passim*

Pursuant to Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. §636(b)(1)(A), the *Ashton* Plaintiffs object to the March 13, 2023 Order of Magistrate Judge Sarah Netburn, ECF 8923 ("March 13 Order"), insofar as it denied Plaintiffs' letter-motion request for leave to file a motion to compel additional discovery of the Kingdom of Saudi Arabia based on the information held by Saudi Arabia's intelligence agency.

## SUMMARY OF ARGUMENT

This Court granted Plaintiffs limited jurisdictional discovery to address the "nature and scope of the agency" of the work of Bayoumi and Thumairy in the United States for Saudi Arabia and found that Saudi Arabia was "the party in the best position to shed light on that inquiry." *In re Terrorist Attacks on September 11, 2001*, 298 F. Supp. 3d 631, 651 (S.D.N.Y. 2018). But Saudi Arabia has been allowed, over the repeated objections and motions of Plaintiffs, to evade key discovery about the actual work of Bayoumi and Thumairy, including discovery of Saudi Arabia's intelligence agency.[1]

It is long past time for Saudi Arabia to provide truthful answers to interrogatories and genuine document production from its intelligence agency. FBI documents newly released under President Biden's Executive Order, Exec. Order No. 14040, 86 Fed. Reg. 50439 (Sept. 3, 2021) ("EO"), demonstrate that Saudi Arabia holds information and documents showing that Omar al Bayoumi and Fahad al Thumairy were doing work for Saudi Arabia's intelligence agency inside the U.S. As part of their work, these two agents necessarily reported to their superiors at the Saudi Embassy in Washington, DC regarding the material support they and their associates

---

[1] The FBI refers to the Saudi intelligence agency as the General Intelligence Presidency or "GIP", *e.g.* ECF 8871-3 at EO 3488, 3490, and it is also known as the General Intelligence Directorate or "GID" and/or the "Mukhabarat". *See* ECF 4015 at 18 (argument of Saudi Arabia's counsel). In these Objections, we will simply refer to it as Saudi Arabia's "intelligence agency."

1

provided to the 9/11 hijackers.  Phone records received to date demonstrate that Bayoumi and Thumairy communicated extensively with one another, with the Embassy, and with others involved in the support plot.  The EO productions also demonstrate that in June 2018, Saudi Arabia knowingly provided false answers to interrogatories, in which Saudi Arabia represented that Bayoumi and Thumairy were under only "nominal" and did no substantive work for Saudi Arabia inside the U.S.

  Magistrate Judge Netburn's March 13 Order should be set aside.  That Order is contrary to law because it did not apply the governing legal standard of whether there is "good cause" for the requested discovery.  In addition, the March 13 Order is clearly erroneous because it did not consider the relevant facts, which amply meet the threshold for good cause.  Plaintiffs have diligently sought discovery from Saudi Arabia's intelligence agency throughout this litigation.  Saudi Arabia has not and cannot claim undue prejudice.  Saudi Arabia knows the facts about the work of Bayoumi and Thumairy for Saudi Arabia's intelligence agency in the U.S.  Yet Saudi Arabia misled this Court from the beginning of discovery, without any supporting proof, to shut down discovery and legitimate inquiry of those facts.  The new EO production now unequivocally confirms that the Saudi intelligence agency holds relevant information and documents.  Plaintiffs should not be prejudiced by the Saudi retort that discovery is now "over" when it is Saudi Arabia's delay, evasion and avoidance of proper discovery in this litigation that ran down the scheduling clock.  Under this Court's recent scheduling Order, ECF 8896, there is ample time to complete the necessary discovery before any briefs and supporting papers are submitted on the jurisdictional issue later this year.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

**1.     The May 2018 discovery hearing and the discovery search exclusion.**

At the initial discovery hearing in May 2018, Saudi Arabia successfully argued before Magistrate Judge Netburn—without filing a motion or any proof—to exclude searches for relevant information and documents from its intelligence agency about the work of Omar al Bayoumi and Fahad al Thumairy in the U.S.  ECF 4015 at 23-31 (May 24, 2018 Conference). Saudi Arabia's counsel acknowledged that with this discovery search exclusion in place, Saudi Arabia's answers to interrogatories about Bayoumi and Thumairy would *not* account for any information held by Saudi Arabia's intelligence agency.  *Id.* at 29 (Saudi Arabia's counsel states that the interrogatory answers would be based only "on the places we have undertaken to search").

**2.     Saudi Arabia's June 2018 answers to interrogatories swore that Bayoumi and Thumairy did no substantive work for Saudi Arabia inside the U.S.**

Less than three weeks after the discovery hearing, Saudi Arabia served its answers to interrogatories.  Saudi Arabia's answers swore that Omar al Bayoumi was in the U.S. solely "to pursue his education"; did not have "any other job with, responsibility to, or assignment or instruction from Saudi Arabia"; and, that "Saudi Arabia is not currently aware of any person who supervised, oversaw, provided direction to, or received reports from Al Bayoumi."[2]   Saudi Arabia's interrogatory answers further swore that Fahad al Thumairy was in the U.S. to work as an Imam at the King Fahad Mosque and that Saudi Arabia was unaware of any person supervising or directing Thumairy or who reported to Thumairy.[3]

---

[2] KSA's June 12, 2018 Amended Objections and Responses at 16-18, filed at ECF 4267, Nov. 30, 2018 Pounian Dec'l, Ex. 5.
[3] *Id.* at 13-16.

3

### 3. Plaintiffs repeatedly sought to obtain the discovery regarding Bayoumi and Thumairy, including information held by the Saudi intelligence agency.

Magistrate Judge Netburn's initial May 2018 ruling to exclude searches at Saudi Arabia's intelligence agency was made "without prejudice". ECF 4015 at 31. Plaintiffs subsequently filed motions to compel Saudi Arabia to provide interrogatory answers and documents based on information held by its intelligence agency about the work of Bayoumi and Thumairy inside the U.S. Plaintiffs' Nov. 30, 2018 Motion to Compel at 14-16; Plaintiffs' Jan. 8, 2019 Motion to Compel Reply at 3-4; Plaintiffs' Aug. 5, 2019 Motion for Reconsideration at 9-10. Plaintiffs' motions seeking discovery of the Saudi intelligence agency were denied by Magistrate Judge Netburn. ECF 6577 at 9-11, 36-9, 52-3 (July 22, 2019 Order); ECF 6579 at 12-16 (Nov. 25, 2019 Order). Plaintiffs thereafter filed Rule 72 objections which were overruled by this Court in its February 4, 2021 Memorandum Decision and Order. ECF 6612.

At the beginning of discovery, Plaintiffs also subpoenaed the Federal Bureau of Investigation and other U.S. government agencies for documents about the activities of Bayoumi and Thumairy inside the U.S. In September 2019, Attorney General Barr asserted the "state secrets" doctrine to bar production of certain subpoenaed documents about Bayoumi and Thumairy. ECF 5141. Magistrate Judge Netburn entered various orders denying Plaintiffs' motions to compel discovery of the FBI and to challenge the Attorney General's invocation of state secrets. Plaintiffs filed Rule 72 objections to those Orders, and this Court overruled those objections in its May 6, 2021 Order. ECF 6797.

Subject to the discovery limitations imposed by Magistrate Judge Netburn and this Court, Plaintiffs completed document discovery and depositions of Saudi Arabia within the July 2021 deadline set by Magistrate Judge Netburn.

  **4.**  **President Biden's September 2021 Executive Order.**

On September 3, 2021, President Biden signed Executive Order 14040 directing U.S. government agencies to declassify and release previously undisclosed core documents about Bayoumi and Thumairy.  The release of EO documents overturned, at least in part, Attorney General Barr's prior assertion of "state secrets" to withhold production.  President Biden's EO cited the need for "full accountability." The EO instructed the FBI and other agencies that "information collected and generated in the United States Government's investigation of the 9/11 terrorist attacks should now be disclosed, except when the strongest possible reasons counsel otherwise."  The EO documents were released over a period of nearly a year, with the most recent production released in August 2022.

  **5.**  **Newly released Executive Order documents previously withheld by the FBI show that Bayoumi and Thumairy were doing work for Saudi Arabia's intelligence agency inside the U.S. and that the Saudi intelligence agency holds relevant information about that work.**

EO documents previously withheld as "state secrets" confirm that Bayoumi and Thumairy were doing work for Saudi Arabia's intelligence agency inside the U.S.  A July 2021 FBI report details the roles of Bayoumi and Thumairy in what the FBI describes as the "Saudi (Wahhabi) / Salafi / militant network" that "was created, funded, directed and supported by the KSA [Kingdom of Saudi Arabia] and its affiliated organizations and diplomatic personnel within the U.S." ECF 8871-3 at EO 3482.  The FBI specifically verified the involvement of the Saudi intelligence agency with that network. ECF 8871-3 at EO 3490 (information collected by the FBI "helps verify the involvement of the GIP [Saudi intelligence agency] within the MIA offices [the Ministry of Islamic Affairs at the Saudi Embassy].")

Another newly released EO document, a 2017 FBI Report, describes in detail how Bayoumi was being paid to work inside the U.S. as a Saudi government agent and was reporting to Ambassador Bandar at the Saudi Embassy in Washington, DC. The document states:

> In the late 1990's and up to September 11, 2001, Omar Albayoumi was paid a monthly stipend as a cooptee of the Saudi General Intelligence Presidency (GIP) via then Ambassador Prince Bandar bin Sultan Alsaud. The information Albayoumi obtained on persons of interest in the Saudi community in Los Angeles and San Diego and other issues, which met certain GIP intelligence requirements, would be forwarded to Bandar.

ECF 8871-4 at EO 2638-39.[4] The 2017 FBI Report states unequivocally that the FBI had obtained specific new confirmation of Bayoumi's involvement with Saudi intelligence that was not previously known:

> Allegations of Albayoumi's involvement with Saudi intelligence were not confirmed at the time of the 9/11 Commission Report. The above information confirms these allegations.

ECF 8871-4 at EO 2639.

The finding in the 2017 FBI Report that Bayoumi worked as part of a Saudi government intelligence reporting chain to Saudi Ambassador Bandar is independently supported by other recently received record evidence, including witness statements in the EO production regarding Bayoumi's suspected status as a Saudi spy and his intelligence collection activities[5]; Bayoumi's numerous phone calls to the Saudi Embassy in Washington and the Saudi Consulate in Los

---

[4] See also ECF 8871-5 at EO 3283. A "cooptee" is a specific term used by U.S. intelligence agencies meaning a "[f]oreign official or visitor tasked to do particular tasks, such as spotting potential recruits or servicing drops." See e.g. U.S. Department of Defense publication "Hostile Intelligence Threat," DoD 5200.1-PH-2 (Nov. 1988), at 19.

[5] See, *inter alia*, FBI report of interview on 10/03/2001: "Albayoumi is considered by many in the Muslim community to be a Saudi Arabian intelligence officer, as he would come to the Mosque and videotape everything," ECF 8871-6 at EO 1847; FBI report of interview on 09/27/2001: witness "did not trust Al-Bayoumi and felt that he was a[n] undercover agent for Saudi Arabia," ECF 8871-7 at EO 2070; and FBI report of interview on 01/09/2008, witness "commented that everyone, NFI, in the San Diego Muslim community thought Al Bayoumi was a spy for the Saudi Government. Al Bayoumi would video tape every event that took place in the community which was of concern to many." ECF 8871-8 EO 290.

Angeles[6]; Bayoumi's extraordinary pay history from Saudi government contractors Dallah Avco and Ercan through phony job positions[7]; and myriad details regarding Bayoumi's preparation of a close-knit support network for the 9/11 hijackers, bringing them to San Diego and providing them with housing, communications, transportation, and other assistance, and assigning others to assist them in navigating and assimilating into life in America.[8]  Finally, by way of rationale for Bayoumi's documenting the hijackers' activities, introductions, and the support he gave them, Ambassador Bandar himself publicly admitted in a 2011 interview that "Saudi security was actively following the movements of most of the terrorists [in the United States] with precision."[9]

The EO production states that "Al-Thumairy, like Al-Bayoumi, was a possible Saudi Arabian intelligence asset", ECF 8871-10 at EO 2802; that Thumairy reported to Embassy officials, including Khalid al Sowailem and Musaed al Jarrah, and was assigned to lead a team of religious employees in California;[10] that "Jarrah was one of the known GIP [intelligence] officers in the MIA [Islamic Affairs] section", ECF 8871-3 at EO 3488; that the Director of the King Fahad Mosque where Thumairy was Imam, Khalil al Khalil, was also believed to work for Saudi

---

[6] ECF 8871-9 at EO 458 (Bayoumi had made at least 141 calls to Saudi government entities in Washington and a further 34 calls to Saudi government entities in Los Angeles.)
[7] See, *inter alia*, ECF 8871-3 at EO 3517 ("Omar Albayoumi was one of the ghost employees.")
[8] ECF 8871-16 at 7-10.  In this regard, Plaintiffs also previously submitted the Declaration of Steven Moore, who led the FBI's PENTTBOM investigations at its Los Angeles Field Office, that his team believed that Bayoumi was a Saudi intelligence agent, ECF 3780-4 at 2.
[9] Interview with Al-Arabiyya, 2011; CNN re-broadcast at: https://www.youtube.com/watch?v=ZAw_nT8DZp4. Plaintiffs noticed the deposition of Saudi Ambassador Prince Bandar, which Saudi Arabia opposed by filing a February 21, 2020 motion for a protective order claiming that Bandar was a high ranking official and subject to the Vienna Convention on Diplomatic Relations.  In August 2020, Magistrate Judge Netburn denied Saudi Arabia's motion in part, holding that there were "exceptional circumstances" which justified Plaintiffs' request for Bandar's deposition.  ECF 6408 at 31-32.  Magistrate Judge Netburn further held, however, that Bandar's appearance at a deposition was voluntary and would not be compelled.  *Id.* at 8, 39-40.  Plaintiffs were later informed by Saudi Arabia that Bandar would not appear for a deposition.
[10] The FBI found that Thumairy "oversaw the disbursement of Saudi money to Saudi[-employed] religious workers in San Diego," and described Thumairy's close day-to-day involvement in the affairs of those he managed. ECF 8871-11 at EO 722.

7

intelligence;[11] and, that Saudi intelligence used the religious offices at the Embassy where Thumairy reported to carry out its work inside the U.S. *Id.* at EO 3490.

The EO production also reveals a total of 67 phone calls between Thumairy and Bayoumi.[12] Further, in late 1999 Thumairy personally received a telephone call from "an individual from Malaysia,"[13] who had "asked for ALTHUMAIRY and stated that 'the guys' [understood to be Hazmi and Mihdhar] were coming in and needed to be picked up at the airport."[14] The EO production also confirms that upon their arrival in Los Angeles the hijackers were brought immediately to the King Fahad Mosque to meet Thumairy.[15]

Plaintiffs' discovery request before Magistrate Judge Netburn cited only to materials in the public record but sought leave to provide additional materials before the Court that are presently confidential, including documents and other important information from the Metropolitan Police Service (MPS) production of documents seized from Bayoumi in September 2001. ECF 8871 at 3 n. 8. Those MPS materials were not received by the Plaintiffs until late March 2022.

### 6.    Magistrate Judge Netburn's March 13 Order.

Magistrate Judge Netburn rejected Plaintiffs' request for discovery from Saudi Arabia's intelligence agencies despite the newly released information about Bayoumi and Thumairy in the EO production, holding:

> Jurisdictional discovery against the Kingdom of Saudi Arabia closed on July 1, 2022. ECF No. 7117. The Court previously advised the parties that the declassification of intelligence reports under President Biden's September 3, 2021 Executive Order would not be grounds for further extending jurisdictional discovery absent "extraordinary circumstances." ECF No. 7752. The Ashton Plaintiffs present no compelling reason for

---

[11] ECF 8871-3 at EO 3487-88.
[12] ECF 8871-12 at EO 2757.
[13] ECF 8871-13 at EO 520.
[14] ECF 8871-14 at EO 3612-3617, at 3612.
[15] ECF 8871-15 at EO 588-602, at 598.

8

> reopening it now. Plaintiffs have "had a fully adequate opportunity for discovery." <u>Saray Dokum ve Madeni Aksam Sanayi Turizm A.S. v MTS Logistics Inc.</u>, 335 F.R.D. 50, 52 (S.D.N.Y. 2020). The motion for leave to file a motion to compel is therefore DENIED.

ECF 8923 at 2. Magistrate Judge Netburn's March 13 Order did not address whether there was "good cause" for the discovery; did not consider Plaintiffs' diligence in seeking the discovery from Saudi Arabia's intelligence agency; did not find any unfair prejudice to Saudi Arabia from allowing the discovery; and did not allow Plaintiffs to file a motion for the requested discovery relying *inter alia* upon confidential records from the MPS production.

Plaintiffs timely filed these Objections.

## ARGUMENT

### PLAINTIFFS' RULE 72 OBJECTIONS SHOULD BE GRANTED: THIS COURT SHOULD SET ASIDE THE MARCH 13 ORDER AND DIRECT SAUDI ARABIA TO ANSWER PLAINTIFFS' INTERROGATORIES AND PRODUCE DOCUMENTS USING THE INFORMATION HELD BY ITS INTELLIGENCE AGENCY

Magistrate Judge Netburn's March 13 Order overlooked controlling law and was clearly erroneous in addressing the facts which compel this long-sought discovery. Saudi Arabia should be ordered to provide answers to interrogatories and document production from its intelligence agency. Plaintiffs have diligently sought this information since 2018 and there is ample good cause to grant the discovery immediately. This Court should not endorse Saudi Arabia's continuing scheme to rely on false interrogatory answers based on incomplete information and to avoid the production of relevant documents.

**A.     The Magistrate Judge's March 13 Order is contrary to Second Circuit law.**

The Second Circuit has held that the proper standard for determining whether additional discovery should be allowed is whether the party has demonstrated "good cause" for their request through a showing that they had been diligent in seeking the discovery. *E.g.*, Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000); *see Yan v Renew Body Wellness,*

9

*Inc.*, 2022 WL 2698562, at *2 (S.D.N.Y. July 12, 2022) (Netburn, M.J.). Magistrate Judge Netburn's March 13 Order did not apply the governing legal standard.

The March 13 Order did not even mention the applicable good cause standard or the central issue of Plaintiffs' diligence. Instead, the Order purported to impose a different, unauthorized test, holding that discovery would not be granted "absent extraordinary circumstances". ECF 8923 at 2. As detailed below, the circumstances here not only amply establish good cause but are nothing short of extraordinary. Plaintiffs tirelessly sought the information about the role of the Saudi intelligence agency by filing motions and objections to compel Saudi Arabia and the FBI. After a four-year wait, some of that information finally came to light due to President Biden's Executive Order overruling Attorney General Barr's prior assertion of "state secrets".

Without reviewing any of those circumstances, the March 13 Order concluded that Plaintiffs have had "a fully adequate opportunity for discovery…" and cited one case: *Saray Dokum ve Madeni Aksam Sanayi Turizm A.S. v MTS Logistics Inc.*, 335 F.R.D. 50, 52 (S.D.N.Y. 2020). Yet *Saray* is completely distinguishable; it applied the good cause standard and found that the moving party failed to show that "it acted 'diligently'" because, *inter alia,* that party did not file motions to compel before the discovery deadline. *Id.* Unlike in *Saray*, as detailed below, there is substantial good cause here.

**B.     There is ample good cause for the requested discovery.**

Good cause is shown by Plaintiffs' diligence in seeking discovery of Saudi Arabia's intelligence agency from the outset of discovery, as well as the importance – indeed centrality – of the discovery at issue to the jurisdictional inquiry in this case. Discovery of the intelligence agency was addressed at the initial discovery hearing in May 2018, when, over Plaintiffs'

objections, Magistrate Judge Netburn accepted the arguments of Saudi Arabia's counsel and denied the discovery "without prejudice". Plaintiffs raised the issue again at the first available opportunity in their November 2018 motion to compel and in Plaintiffs' August 2019 motion for reconsideration of the motion to compel. After Magistrate Judge Netburn entered rulings denying discovery of the Saudi intelligence agency, Plaintiffs filed objections in December 2019. Plaintiffs' objections were overruled by this Court in May 2021. Plaintiffs separately sought documents from the FBI concerning the work of Bayoumi and Thumairy inside the U.S. but the FBI successfully raised various defenses including "state secrets" to deny production prior to the discovery deadline.

The newly produced EO documents, however, show that Saudi Arabia's intelligence agency holds relevant information and documents regarding the work Bayoumi and Thumairy were doing for Saudi Arabia inside the U.S. The 2017 FBI Report identified Bayoumi as a "cooptee" working for and paid by the Saudi intelligence agency; Bayoumi was found to be reporting to Saudi Embassy officials in Washington, DC. ECF 8871-4 at EO 2638-39. Similarly, the FBI determined that Thumairy was reporting to a "known" officer of the Saudi intelligence agency at the Saudi Embassy. ECF 8871-3 at EO 3488. Plaintiffs are clearly entitled to obtain proper interrogatory answers and complete document production based on the information held by the Saudi intelligence agency about the work of Bayoumi and Thumairy.

**C.  The requested discovery is necessary to prevent an ongoing fraud perpetrated by Saudi Arabia.**

Over Plaintiffs' repeated objections, Saudi Arabia was allowed by Magistrate Judge Netburn and this Court to limit its discovery responses and to withhold key information about Bayoumi and Thumairy in the records of Saudi Arabia's intelligence agency.

The EO documents show that based on those limitations, Saudi Arabia provided false answers to interrogatories, denying the nature and scope of the work that Bayoumi and Thumairy were doing inside the U.S., and thus avoid the production of documents held by the Saudi intelligence agency. The EO production, however, shows that both men were doing work under the supervision and direction of the Saudi intelligence agency. *E.g.*, ECF 8871-4 at EO 2638-39; ECF 8871-3 at EO 3488. The EO production also shows that the Saudi intelligence agency holds documents about the work of Bayoumi and Thumairy inside the U.S. that have not yet been produced.

It is telling that in Saudi Arabia's papers filed before Magistrate Judge Netburn, the Kingdom failed to affirm that it had provided truthful interrogatory answers about Bayoumi and Thumairy's work based on Saudi Arabia's *full* knowledge, including from its intelligence agency. ECF 8878 at 3-4.

This Court should uphold Plaintiffs' rights to receive fair and complete interrogatory answers and document discovery. This Court should not endorse Saudi Arabia's efforts to abuse the discovery process and commit a fraud by limiting its searches to submit false interrogatory answers and avoid the disclosure of relevant information. This Court should remedy the ongoing unfair prejudice to Plaintiffs and order Saudi Arabia to provide discovery immediately, encompassing both supplementary answers to interrogatories and additional document production, accounting for the information held by Saudi Arabia's intelligence agency.

**D.     Saudi Arabia is responsible for the delays that have occurred and if not remedied the denial of this discovery will constitute reversible error.**

Plaintiffs have been severely prejudiced by the delays in obtaining discovery of Saudi Arabia's intelligence agency. Saudi Arabia is directly responsible for these delays. Saudi Arabia must know the facts about the work Bayoumi and Thumairy were doing inside the U.S. But

Saudi Arabia's May 2018 arguments for discovery limits to avoid disclosure, exacerbated by its June 2018 false interrogatory answers, hid the truth.

This Court should set a timetable over the coming months—before briefs are filed in Fall 2023 on the jurisdictional discovery issues—for Saudi Arabia to provide proper answers to interrogatories and document production from its intelligence agency about the work of Bayoumi and Thumairy. Saudi Arabia can provide this discovery without interrupting the Court's existing briefing schedule: it provided its answers to interrogatories and relevant documents within a span of just three months in 2018.

The discovery shortcomings addressed in these objections, if not remedied promptly by this Court, constitute reversible error. The Second Circuit overturned another district court that failed to permit relevant discovery against the U.S. Government under circumstances far less compelling than those presented here. *In re 650 Fifth Ave. and Related Properties*, 934 F.3d 147, 159 (2d Cir. 2019). In that case, the Second Circuit held that the U.S. Government had sufficient time to produce discovery five months before trial:

> To be sure, discovery on remand would have taken time. But the parties had time. The Claimants moved to compel more than five months before the planned trial. At that point, the proceedings were already paused because our remand order left numerous pretrial issues pending before the district court.
>
> The court offered no compelling reason why the Government would have been unduly prejudiced or burdened by the delay, if any, of limited discovery on the Claimants' potentially dispositive affirmative defense. Similarly, the Government's brief barely gives lip service to the notion that it would have been prejudiced or burdened.

*Id.*; *see also Long Is. Light. Co. v. Barbash*, 779 F.2d 793, 795 (2d Cir. 1985) (Second Circuit finds that "the district court abused its discretion when it cut off discovery").

13

**CONCLUSION**

Plaintiffs' objections should be allowed and this Court should set aside Magistrate Judge Netburn's March 13 Order. This Court should direct Saudi Arabia to provide answers to interrogatories and document production from its intelligence agency without further delay, or order other suitable relief to serve the interests of justice.

Dated: New York, New York
March 21, 2023

                          KREINDLER & KREINDLER LLP

                          By: /s/ *Steven R. Pounian*
                          Steven R. Pounian, Esq.
                          James P. Kreindler, Esq.
                          Andrew J. Maloney, Esq.
                          Megan W. Benett, Esq.
                          James Gavin Simpson, Esq.
                          485 Lexington Avenue
                          New York, New York 10017
                          Tel.: 212-687-8181
                          Email: spounian@kreindler.com
                          *Attorneys for Ashton Plaintiffs*

                          SPEISER KRAUSE, PC
                          Frank H. Granito, III, Esq.
                          Douglas A. Latto, Esq.
                          Jeanne M. O'Grady, Esq.
                          800 Westchester Avenue, Suite S-608
                          Rye Brook, New York 10573
                          Tel: (914) 220-5333
                          *Attorneys for Ashton/Burlingame Plaintiffs*

                          BAUMEISTER & SAMUELS, P.C.
                          Michel F. Baumeister, Esq.
                          Dorothea M. Capone, Esq.
                          140 Broadway, 46th Floor
                          New York, New York 10005
                          Tel: (212) 363-1200
                          *Attorneys for Ashton/Bauer Plaintiffs*