N3G1WTCC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
   In Re: Terrorist Attacks on
3  September 11, 2001
   (And Related Cases)                    03 MD 01570(GBD)(SN)
4                                         02 CV 06977(GBD)(SN)
                                          02 CV 07230(GBD)(SN)
5                                         02 CV 07236(GBD)(SN)
                                          20 CV 00266(GBD)(SN)
6
                                          Conference (Remote)
7  ------------------------------x
                                          March 16, 2023
8                                         3:30 p.m.
   Before:
9                    HON. SARAH NETBURN,

10                                        Magistrate Judge

11                         APPEARANCES

12  BAUMEISTER & SAMUELS, P.C.
         Plaintiff Attorneys
13  BY:  MICHEL F. BAUMEISTER, ESQ.
         DOROTHEA M. CAPONE, ESQ.
14
    WIGGINS CHILDS PANTAZIS FISHER GOLDFARB PLLC
15       Plaintiff Attorneys
    BY:  DENNIS G. PANTAZIS, SR., ESQ.
16       TIMOTHY B. FLEMING, ESQ.

17  LAW OFFICE OF JOHN F. SCHUTTY
         Plaintiff Attorney
18  BY:  JOHN F. SCHUTTY, ESQ.

19  ALSO PRESENT:
         ANDERSON KILL P.C.
20       Plaintiff Attorneys
    BY:  ALEXANDER GREENE, ESQ.
21
         JENNER & BLOCK LLP
22       Plaintiff Attorneys
    BY:  DOUGLASS MITCHELL, ESQ.
23
         MOTLEY RICE, L.L.C.
24       Plaintiff Attorneys
    BY:  ROBERT T. HAEFELE, ESQ.
25

N3G1WTCC

1          THE COURT:  We have a number of folks on the line.

2     I'm going to make sure we know exactly who is here.  So this is

3     the 9/11 MDL Docket No. 03-1570.  I'm going to list firm names

4     and then we'll see if I missed anybody.

5          Who do we have here on behalf of the Baumeister firm?

6          MR. BAUMEISTER:  Your Honor, you have Mich Baumeister

7     and Dorothea Capone.

8          THE COURT:  Thank you.

9          And on behalf of the Wiggins firm?

10          MR. PANTAZIS:  Your Honor, you have Dennis Pantazis

11     and Tim Fleming.

12          THE COURT:  Thank you.

13          And on behalf of the Law Office of John Schutty?

14          MR. SCHUTTY:  John Schutty, your Honor.  Thank you.

15          THE COURT:  Thank you.

16          And do we have any other lawyers on the phone?

17          MR. HAEFELE:  Your Honor, this is Robert Haefele of

18     Motley Rice.

19          MR. GREENE:  Alex Greene of Anderson Kill on behalf of

20     the O'Neill plaintiffs.

21          MR. MITCHELL:  Your Honor, Doug Mitchell of Jenner &

22     Block on behalf of the Havlish plaintiffs.

23          THE COURT:  Thank you.

24          Any other lawyers on the line who would like to state

25     their appearance?

1          All right.  We are here today on the issues related to

2   various plaintiffs who wish to change counsel and therefore

3   move their claims.  I will say that my chambers, and my law

4   clerk, have spent a significant amount of time trying to figure

5   out the most efficient and fair way to handle this.  It has not

6   been easy.  We have some proposals.  I'm hoping that we can all

7   work cooperatively together, which is how I believe everybody

8   is working, to streamline this process in a way that is

9   reasonable but recognize that this has been an administrative

10  morass, and we are hopeful that we will not have to revisit

11  this issue in the future.

12          I think the first issue that I want to discuss is with

13  respect to the Maher family, which I understand is formerly

14  with the Baumeister firm and is currently with Wiggins Childs.

15  And I believe with respect to that family's interests, that we

16  have draft orders to move their claims out of the Bauer and

17  Ashton cases to their own cases, and that order will identify

18  by docket entry all of the relevant docket entries that have

19  been filed either in the Bauer or the Ashton case that will be

20  incorporated by reference into these new Maher cases.  But we

21  can't move docket entries in the way that I think the parties

22  want us to.  We can't cut and paste them.  We can't

23  electronically transfer those docket entries.  We just don't

24  have the technology or the capacity to do that.  So the best we

25  can do is identify those entries, and as I understand it,

N3G1WTCC

1    you've provided that to the Court already.  So we would

2    identify those entries and direct that they are incorporated by

3    reference in the new cases.

4            MR. PANTAZIS:  Your Honor, this is Dennis Pantazis

5    with Wiggins Childs.  I think that is sufficient, and I

6    appreciate it, and I apologize for creating a headache for you

7    and your staff.  Mr. Fleming is the one who did the main labor

8    on this motion, going back two decades to pull out reference

9    numbers, as the Court directed and I think was the proper

10   method.  So if you have any questions about what we did as to

11   the Maher families in our motion, I'm going to ask Tim to

12   address them.

13           THE COURT:  I don't think we have any specific

14   questions.  I led with you because I think you're the easiest

15   one, actually, so I don't think we have any questions.  I think

16   you've given us appropriate draft orders that we're prepared to

17   enter.  And so unless there's anything you feel you need to

18   share with us, I think those orders should go out without

19   issue.

20           MR. BAUMEISTER:  Your Honor, it's Mitch Baumeister.

21   I'd like to just have a word here.

22           THE COURT:  Please.

23           MR. BAUMEISTER:  As your Honor is aware, we came to

24   this conclusion, and I agree with everything you've said and I

25   appreciate it and everything Dennis Pantazis and Timothy

N3G1WTCC

1    Fleming have provided to the Court.  I just would like it to be

2    noted that in the Maher case originally, we had said that they

3    were, according to your original orders, removed but we didn't

4    want to hurt the clients, and you said, Baumeister, will you

5    agree then that they can remove them now, and Dennis was very

6    forthcoming and said they had a misunderstanding and we agreed,

7    and we agree today, and have spent, I would like to note —— and

8    Timothy Fleming will back this up.  We, the Baumeister firm,

9    have spent a significant amount of time assisting Dennis

10   Pantazis and Timothy Fleming in providing the Court all of the

11   information you now have that you're turning into an order, all

12   for the single reason of also providing the most complete

13   record for the Maher family going forward.  Although this has

14   not been raised and I don't think the Wiggins firm has any

15   problem with this, it arises in the Ryan case, but if you

16   recall, as we go back two or three years ago, when Maher and

17   Ryan ultimately fired us, we had a hearing in front of you to

18   preserve, under the law, our right to a charging lien when and

19   if we enforce it, and as you may recall, we ultimately agreed

20   with the attorney, after a fairly contentious open hearing in

21   front of you, that the charging lien would be recognized in the

22   Maher and Ryan case and that ultimately the clients consented

23   to it and you so ordered it, and I just want to make it clear

24   that I have absolutely no problem with Maher being removed, all

25   of the stuff we've helped with goes to Dennis Pantazis and

N3G1WTCC

1    Timothy Fleming and their firm, and along with that goes the

2    lien, our right to enforce that lien if we so choose in the

3    future.  That's to be determined by the Court as we put in our

4    order and you've so ordered in the future.  I say that now

5    because it's going to impact what Mr. Schutty's going to say in

6    the Ryan case coming up.  But having said that, your Honor, I

7    have absolutely —— as I said to you in open court, and based

8    upon the cooperation that we have had with the Wiggins firm, we

9    have no problem with doing everything and issuing the orders

10   that you so stated in the Maher case.

11            THE COURT:  Thank you, Mr. Baumeister.  And I have

12   five items on my agenda, and the fifth one is to talk with you

13   about a charging lien in Ryan.  So I can move that to now or we

14   can table that until we get there.

15            MR. BAUMEISTER:  Whatever the Court wants to do.

16            THE COURT:  Let's just stick with my order, because

17   there's a lot going on and I don't want to get confused.

18            MR. BAUMEISTER:  Okay.

19            THE COURT:  So unless there's anything further on the

20   Maher family, I think we've resolved those issues.  Anyone want

21   to speak on that family?

22            Okay.  Hearing nothing ——

23            MR. FLEMING:  Well, your Honor, this is Timothy

24   Fleming.  I was just going to say that I will back up what

25   Mr. Baumeister said.  They were very cooperative in helping us

N3G1WTCC

1   put together those proposed orders.  And I just do want to note

2   that at the end of the whole process, that the existing Ryan

3   case should probably be named the Maher case — that's

4   anticipating the Ryans will be out of it — and so whatever the

5   Court would like us to file to rename that case as appropriate,

6   we'll do.

7              THE COURT:  We either have a bug in my chambers or a

8   camera here.  That's Number 4 on my list of things to discuss.

9   So I was going to direct that you prepare a proposed order for

10  the Court with a request to change the caption in Ryan to

11  whatever you believe is appropriate.  So can you do that for

12  the Court?

13             MR. FLEMING:  Yes, your Honor.  Certainly will.

14             THE COURT:  Okay.  If you could just email that to my

15  chambers email address as a Word document so we can just modify

16  it if we need to.

17             MR. FLEMING:  Therefore not file it on the docket,

18  just email it to the Court?

19             THE COURT:  Correct.

20             MR. FLEMING:  We'll do that.

21             THE COURT:  Thank you.

22             All right.  So let me move now to what was second on

23  my list, which is with respect to the Ryan and Breitweiser

24  family.  I believe what has happened here is that these

25  families were in Ashton, may or may not have left Ashton, as we

N3G1WTCC

1    discussed last year, but now want to go back to Ashton.  And I

2    believe these folks are now represented by Mr. Schutty; is that

3    correct?

4              MR. SCHUTTY:  That's correct.

5              MR. PANTAZIS:  Your Honor, Dennis Pantazis.  That is

6    correct, and there is a pending motion to substitute that's

7    pending as well.  So I'm going to turn the Ryan and Breitweiser

8    issues over to Mr. Schutty.  Thank you.

9              THE COURT:  Yes.  But who was just speaking so the

10   court reporter can take this down properly?

11             MR. PANTAZIS:  This was Dennis Pantazis saying —— and

12   I think Mr. Schutty had spoken up earlier.  I'm suggesting,

13   your Honor, that we have a motion to substitute, and currently

14   Mr. Schutty is representing Ryan and Breitweiser and is the

15   proper counsel to address the issues with the Court.

16             THE COURT:  Okay.  Thank you.

17             So Mr. Schutty, do I have that correct, that

18   essentially your clients want to be in Ashton right now; is

19   that correct?

20             MR. SCHUTTY:  That's correct, your Honor.  John

21   Schutty.

22             THE COURT:  Okay.  So I have a proposal.  I believe

23   there is at best ambiguity about whether or not your clients

24   left Ashton or not.  I know that there's been some dispute

25   about what happened with respect to their claims against Saudi

N3G1WTCC

| 1 | Arabia, the Taliban, and Sudan.  Rather than litigate what |
| 2 | happened between 2019 and today, my proposal would be to issue |
| 3 | an order that reflects that these plaintiffs are parties in the |
| 4 | Ashton complaint and have that order be *nunc pro tunc* to 2019. |
| 5 | That way we can just avoid the I think complicated question |
| 6 | about where their claims have been over the last couple of |
| 7 | years and just have them sort of forever in Ashton.  What do |
| 8 | you think about that proposal, Mr. Schutty? |
| 9 | MR. SCHUTTY:  Your Honor, I think that's an excellent |
| 10 | proposal to keep it as simple as possible.  I think that works. |
| 11 | MR. BAUMEISTER:  Your Honor, it's Mitch Baumeister. |
| 12 | Can I speak? |
| 13 | THE COURT:  Are you going to speak on behalf of the |
| 14 | Ashton docket? |
| 15 | MR. BAUMEISTER:  I am going to speak on behalf of the |
| 16 | Ryan case, which I'm familiar with, in the Ashton docket, |
| 17 | correct. |
| 18 | THE COURT:  Okay.  Before you do, is there anybody |
| 19 | here representing Ashton —— I believe there is —— who has any |
| 20 | objection with the proposal that I just made? |
| 21 | MR. BAUMEISTER:  There's nobody on the phone that |
| 22 | represents Ashton the group because all of us have our |
| 23 | individual cases, and the question really is, as the Court |
| 24 | said, whether or not —— and I'm not going to be a stick in the |
| 25 | mud on this one, just as I wasn't in open court when you asked |

N3G1WTCC

| | |
|---|---|
| 1 | me, Mr. Baumeister, come on, are we going to litigate this or |
| 2 | is it really that important and do the clients really suffer |
| 3 | some prejudice, and I ultimately said to you, no, Judge, I'm |
| 4 | not out there with the clients —— and there is something I want |
| 5 | to say, and we're really the only party on the phone that has |
| 6 | an interest as it relates to Ryan, and I would like to speak |
| 7 | for one second so we understand precisely what's staying in |
| 8 | Ashton and what isn't, because it isn't as simple as simply |
| 9 | going *nunc pro tunc*, if the Court would allow me. |
| 10 | THE COURT:  Okay.  Go ahead. |
| 11 | MR. BAUMEISTER:  There were the Ryan case, when it was |
| 12 | removed by —— Dennis Pantazis, you tell me if I'm wrong, or |
| 13 | Timothy —— there were additional actions filed on behalf of |
| 14 | Ryan unrelated to the causes of action that the Ryans had in |
| 15 | the Ashton case.  Putting aside —— let's assume for the minute |
| 16 | that the Ryan/Ashton claims —— and I can't speak to |
| 17 | Breitweiser, I know nothing about her case, but as to the |
| 18 | claims we filed, which were different than some of the |
| 19 | consolidated complaint causes of action that the Motley Rice |
| 20 | firm and others had, as to those actions that remained in |
| 21 | Ashton, even though there was the question mark as to whether |
| 22 | they were removed, assuming they stayed there, there were other |
| 23 | actions filed on behalf of Ryan outside of Ashton that —— and |
| 24 | just as Dennis and Timothy went through the exhausting process |
| 25 | of saying precisely what is it that you are taking out of |

N3G1WTCC

 1   Ashton, I would like to know —— and I think the Court would

 2   like to know more than me —— precisely what actions are

 3   remaining in Ashton and which ones are being transferred, if

 4   any, into Ashton on behalf of Ryan.  I think that's an

 5   important question.

 6            MR. SCHUTTY:  Your Honor, this is John Schutty.  I can

 7   address it quite simply.  The Ryan claimants had basically a

 8   duplicative action filed against the Islamic Public of Iran in

 9   a new action by Dennis Pantazis and Timothy Fleming.  They're

10   going to withdraw all their claims in the duplicative action to

11   return back and pursue those claims in Ashton, exempt for

12   default judgment that has —— attorney Dennis Pantazis had

13   entered against Iran for the estate of Patricia Ryan, the

14   estate of John Ryan on behalf of Patricia Ryan.  So there's

15   only one aspect of Ryan which is going to remain or be

16   preserved.  It's the default judgment obtained in that action

17   —— belatedly, in that action, which Dennis Pantazis linked to

18   the other two default judgments obtained by Mr. Baumeister's

19   firm.  To keep it as simple as possible, I think your Honor has

20   —— we're going to discontinue any Ryan claims that Dennis

21   Pantazis filed except his obtaining the default judgment

22   against Iran for the estate.

23            MR. BAUMEISTER:  So this is Baumeister.  That's my

24   point, your Honor.  It isn't as simple as the Ashton stuff is

25   going to stay.  I think whatever order gets entered has to make

N3G1WTCC

1    it clear what is in Ashton, what stays in Ashton, what was

2    outside of Ashton, what happens to that, and how all of these

3    things are going to be treated as a matter of public record and

4    as a matter of the court order.

5         THE COURT:  So if I may, this is what I understood to

6    be the situation and what I was going to propose.  I think

7    there is some lack of clarity about the Ryan claims against

8    Saudi Arabia, the Taliban, and Sudan, and so my proposal with

9    respect to those defendants is to simply issue an order *nunc*

10   *pro tunc* to when this ambiguity began, which I think is 2019,

11   and make clear that those parties are in the Ashton case.  With

12   respect to the claims against Iran, where there is not

13   ambiguity and where it is clear that they left Ashton, filed a

14   new case called Ryan, and now want to go back into Ashton, I

15   think there needs to be a different order that transfers those

16   plaintiffs' claims into Ashton and discontinues their claims in

17   Ryan.  And I understand now from Mr. Schutty that Ryan will

18   remain a viable case but the only plaintiff in that case will

19   be the estate.  That's my understanding.  Mr. Baumeister, does

20   that address your concerns?

21        MR. BAUMEISTER:  The answer is I really don't know.  I

22   haven't looked at the action that's been filed.  I don't know

23   if there are allegations in our consolidated complaint that are

24   different than, let's say, the general committee consolidated

25   complaint.  And I do not know if the Iran cause of action which

1    now is being transferred into Ashton stands alone as the only

2    action against Iran with allegations that are different or

3    similar to the thousands of other Ashton complaints which are

4    all identical.  And if it's a standalone complaint, Ashton is

5    certainly not representing them, Mr. Schutty is representing

6    them.  I don't know that they should be in Ashton.  Do you

7    understand my point, your Honor?

8            THE COURT:  Sort of.

9            MR. SCHUTTY:  Your Honor, if I may.  It's John

10   Schutty.  Bauer merged into the Ashton master complaint, like

11   hundreds of others, if not thousands of other plaintiffs.  And

12   in fact, the Ryan claims never left Ashton.  There was an

13   intent to end those claims in Ashton and move into new actions

14   that would be filed by Mr. Pantazis and Mr. Fleming.  That

15   transfer against the defendants named in the original Ashton

16   complaint, which Patricia Ryan and her children were part of,

17   was never dismissed, so they were there.  It was just, the new

18   Ryan claims filed by Mr. Pantazis and Mr. Fleming against Iran

19   went back to duplicative claims against one defendant, the

20   Islamic Republic of Iran.  Attorney Pantazis can correct me if

21   I'm wrong.  All we want to do is discontinue those Ryan

22   duplicative claims but get the default judgment on behalf of

23   the estate moved into Ashton.

24           MR. BAUMEISTER:  Again, Mr. Schutty misses the point.

25           THE COURT:  You can't all speak at once.  And when you

1    speak, you need to identify yourself.

2             MR. BAUMEISTER:  All right.  Mitch Baumeister.  John

3    — and it's Schutty, by the way — you're missing the point.

4    I'm not challenging the Ryan claims.  I'm not out to hurt

5    Patricia Ryan and her kids.  And I'm not challenging that the

6    claims had existed in Ashton.  I'll concede for purposes of

7    this conversation and in this court that those claims will stay

8    in Ashton because they were originally filed in Ashton and will

9    go forward on behalf of Patty Ryan and her kids.  I do not

10   contest that at all.  I'm concerned about the Iran allegations

11   being inconsistent with certain parts of the Ashton claims, and

12   I'm also concerned about the transfer of the default judgments

13   coming in.  I just want to make sure that it's consistent with

14   what we're doing in Ashton and that the Court has the full

15   story on the record and issues an order according to that.

16   That's all.

17            MR. FLEMING:  This is Timothy Fleming.  In the

18   interest of actually just making sure that everybody is

19   understanding the full story — and I've wrestled with this a

20   great deal over the past couple years — I just want to make

21   sure that everyone is clear about a couple of things.

22            We are using the term "claims" a lot.  Originally, all

23   of the members of the Ryan family, except the estate of John

24   Ryan, and the Breitweiser family and the Maher family, they all

25   received judgments, judgments against Iran and I believe the

N3G1WTCC

1    Ministry of Information and Security and the Iran —— Iranian

2    Revolutionary Guard Corps, in Ashton.  They received judgments.

3    They don't just have claims pending, they have judgments.

4            In the new Ryan case, we were pursuing —— really

5    starting over again, doing it a little different way, and

6    again, 16 defendants, including Iran, and the MOIS and the

7    IRGC.  We only got a default judgment against the Islamic

8    Republic of Iran on behalf of the Estate of John Ryan.  That is

9    the only new judgment that was obtained in Ryan.  The other

10    judgments were all in Ashton, and we always —— as said from the

11    beginning, it's important to preserve those because it is on

12    that basis that those families are eligible for payments from

13    the DSS case.  So I believe, if I understand correctly what

14    Mr. Schutty is saying, is that the new Ryan actions against ——

15    in the Ryan case, the new actions against all the 15 defendants

16    can be dropped, with the exception of the default judgment on

17    behalf of the estate.  And what remains is the original

18    judgment in Ashton, and they should be just reverted to that,

19    which, he believes, and we believe, were never technically

20    moved.  But in any event, they were obtained originally in

21    Ashton, and that's where I understand Mr. Schutty wants them to

22    reside.

23            The only wrinkle is the estate judgment that we

24    obtained in Ryan, where we proved up the estate's economic

25    damages and got a final judgment.  How that's done exactly is

N3G1WTCC

1    up to others, but I just want to ensure everybody understands

2    that it's not just claims, there was a judgment — there were

3    judgments rendered in Ashton against Iran.

4            MR. BAUMEISTER:  Mitch Baumeister.  Thank you, Tim.

5            So, Judge, all I'm asking is that that be laid out

6    clearly on the record by Mr. Schutty in an order, giving you

7    the ammunition you need to put all of that in an order so there

8    is no confusion, because essentially what the Ryans are now

9    saying is, they're relying upon the work of Baumeister &

10    Samuels in getting all of the judgments previously that we had

11    done, except for the estate.  And I want it clear on the record

12    that that's exactly what's happening here.

13            THE COURT:  Okay.  So I'm going to direct that

14    Mr. Schutty prepare draft orders, and I want you to run it by

15    both the Wiggins Childs lawyers and the Baumeister Samuels

16    lawyers to make sure that everybody is in agreement.

17            With respect to those claims against Saudi Arabia,

18    Taliban, and Sudan, I think the best proposal is an order that

19    simply directs that these plaintiffs' claims are being

20    litigated in the Ashton docket, *nunc pro tunc* to 2019, when the

21    first changeover happened.  So that should be an order for the

22    Court's signature.

23            By the way, I think there are just some docketing

24    errors related to some plaintiffs that have been terminated

25    inappropriately.  So it should also include in that order the

1   language directing the clerk of court to "unterminate" — if

2   that's a word — those plaintiffs.

3            Second, I want Mr. Schutty to draft an order that will

4   transfer out of Ryan and into Ashton all of the Iran claims

5   except for the claim brought by the estate, which will remain

6   in Ryan.  So all the other claims, as I understand it, will be

7   transferred into Ashton.  I think that that will address the

8   issues that we've been discussing here today.

9            I'll ask that the lawyers work cooperatively, as they

10  have, to prepare an order that reflects everybody's interests

11  here.  I really do not want to spend any more time trying to

12  litigate between these firms, who's got what interest, and I

13  take everybody at their word that they are working

14  cooperatively, and nothing that I've seen suggests otherwise,

15  and I know all of you want to do what's best for the families,

16  so hopefully there is a simple solution that's clear and clean

17  and gives directive to the Court as to how to proceed with

18  respect to these claims.

19           MR. PANTAZIS:  Your Honor, this is Dennis Pantazis.  I

20  think the only thing that I would say is I think the Court, as

21  to the — as to the Iran claims in Ryan — and Mr. Schutty or

22  Tim can correct me — I think they want to dismiss those

23  claims, all except — in this order, all except for the estate,

24  the new judgment against the estate, or for the estate, and

25  that judgment for the estate, they want to transfer it into

N3G1WTCC

1    Ashton.  I believe that's what they're asking.  Correct me if

2    I'm wrong, Mr. Schutty, or Tim.  But I think that's the only

3    thing I see that's different about what the Court has just

4    said.

5            MR. FLEMING:  This is Tim Fleming.  That's what I was

6    going to say.

7            MR. SCHUTTY:  Mr. Schutty agrees with Dennis.  What I

8    think the Court is leaning toward is one consolidated default

9    judgment for Ryan which merges the two prior judgments reached

10   in Ashton and the default judgments reached in the Ryan estate.

11   I'll run it by all counsel, merging the default judgments into

12   the Ryan action.

13           MR. BAUMEISTER:  No, John.  This is Baumeister.  The

14   answer is I object to that.  You want to put the default

15   judgment ——

16           MR. SCHUTTY:  I'll note your contribution, Mitch.

17           MR. BAUMEISTER:  No, no.

18           THE COURT:  No.  Hello, hello, hello, hello.  Stop.

19           I allow us to have a phone conference as a courtesy to

20   the lawyers.  We're happy to have you come into the courtroom,

21   but if you're going to do a phone call, (a) I'm not interested

22   in hearing lawyers fight back and forth with each other, and

23   (b) you cannot speak over one another.  So I will give

24   everybody an opportunity to be heard but you cannot speak like

25   that.  It doesn't work.

1          Mr. Schutty ──

2          MR. BAUMEISTER:  Excuse me.  I'm sorry, your Honor.  I

3    thought Mr. Schutty was done.  It's Mitch Baumeister.  The

4    Court was not leaning one way or the other, in my opinion,

5    Mr. Schutty.  Certainly what Dennis said is correct.

6    Transferring it into that estate default judgment is one thing.

7    It's not consolidated default judgments because that has other

8    implications.

9          THE COURT:  All right.  I'm satisfied that the lawyers

10   can work out the details of exactly what the Court is hoping to

11   receive and so I will leave it to all of you to send my

12   chambers a Word version of any proposed order that addresses

13   these issues.

14          And then the last thing I wanted to talk about is what

15   Mr. Baumeister raised, which is with respect to the issue about

16   a charging lien on the Ryan case, and again, I'll just ask

17   Mr. Baumeister if you can draft whatever type of language you

18   think is appropriate to note your intention to seek a charging

19   lien if and when appropriate.

20          MR. BAUMEISTER:  Your Honor, you've already issued an

21   order on the basis of consent of the clients, the Ryans and the

22   Mahers and myself, as to a charging lien in the Ryan case.  The

23   mere fact that they've changed lawyers does not change that.

24   So do you really want another order?  You've already issued an

25   order recognizing and establishing a charging lien.  All we're

N3G1WTCC

1    doing now is ——

2            THE COURT:  My understanding was that you made a

3    request to the Court in connection with the applications we're

4    talking about right now to have ——

5            MR. BAUMEISTER:  No.

6            THE COURT:  —— another charging lien ——

7    Mr. Baumeister, you really can't speak over me.

8            MR. BAUMEISTER:  I'm sorry, your Honor.  I apologize.

9            THE COURT:  My understanding is that you made an

10   application in connection with the motions we're dealing with

11   now to have your charging lien on the Ryan case noted on the

12   current substitution of counsel between Mr. Schutty and Wiggins

13   Childs.  Is that not correct?

14           MR. BAUMEISTER:  I didn't think it was necessary, your

15   Honor, because your Court has already entered a charging lien

16   in the Ryan case, whether it goes back into Ryan —— back into

17   Ashton or they change if they fire Schutty and hire someone

18   else, the charging lien, I thought, based on your order,

19   follows the case.

20           THE COURT:  That's fine with me.

21           Okay.  To recap, we are going to issue orders based on

22   what we've already received in the Maher case.  Mr. Schutty,

23   you are going to send us two orders —— one that addresses the

24   Ryan family's claims with respect to Saudi Arabia, the Taliban,

25   and Sudan, and I believe doing that *nunc pro tunc* to 2019 is

N3G1WTCC

1    the cleanest way to address that morass.  In that order you

2    should also direct the clerk of court to reinstate any claims

3    of plaintiffs that were accidentally terminated.  The second

4    order is with respect to the Ryan claims against Iran, and you

5    should work with the various lawyers to draft a proposed order

6    that transfers all of the Ryan claims to Ashton except the

7    claim brought by the estate, which I understand has already

8    been entered.  And then lastly, I'll just direct that counsel

9    from Wiggins Childs just submit an order for the Court

10   indicating how you would like the caption to be changed in what

11   was formerly Ryan.

12           MR. PANTAZIS:  Your Honor, this is Dennis Pantazis.  I

13   understand your directions and will follow them.

14           One final question:  On the motion for substitution,

15   do you need anything from us to move on that motion, your

16   Honor?

17           THE COURT:  I do not.  Thank you.

18           MR. PANTAZIS:  Okay.

19           MR. SCHUTTY:  And for your Honor's benefit ─── it's

20   John Schutty ─── those consent proposed orders, the consent and

21   proposed orders for substitution, the MDL numbers are 8835 and

22   8836.

23           THE COURT:  We have them.  Thank you.

24           MR. SCHUTTY:  Thank you, your Honor.

25           THE COURT:  All right.  Anybody else wish to be heard

N3G1WTCC

1    on these issues?

2           All right.  Hearing none, we'll look out for draft

3    proposed orders as directed and otherwise the Court will go

4    ahead and get the orders out that we've already committed to

5    doing.

6           MR. PANTAZIS:  Your Honor, Dennis Pantazis again.

7    Thank you for this time, and we know it's been an

8    inconvenience.  We and our clients appreciate it.  Thank you.

9           MR. SCHUTTY:  Thank you very much from John Schutty as

10   well.

11          MR. BAUMEISTER:  Yes, Mitch Baumeister.  Thank you,

12   your Honor.

13          THE COURT:  You're all welcome.

14          All right, everybody.  Thank you very much.  We're

15   adjourned.

16                            o0o

17

18

19

20

21

22

23

24

25