**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
In re:

                                         03-MD-01570 (GBD)(SN)

**TERRORIST ATTACKS ON SEPTEMBER 11, 2001**
-----------------------------------------------------------------------X

This document relates to:

    *Ashton, et al. v. al Qaeda Islamic Army, et al.,* 02-cv-6977 (GBD)(SN)

    AND ALL WRONGFUL DEATH ACTIONS FILED AGAINST THE TALIBAN

**OBJECTIONS TO THE MARCH 15, 2023**
**REPORT & RECOMMENDATION (MDL ECF NO. 8929)**
**<u>RE: WRONGFUL DEATH ACTIONS FILED AGAINST THE TALIBAN</u>**

Law Office of John F. Schutty, P.C.
Attorneys for the *Ashton-Dickey* Plaintiffs
445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (646) 345-1441
Fax: (917) 591-5980
john@johnschutty.com

## <u>TABLE OF CONTENTS</u>

I.           INTRODUCTION ................................................................. 1

II.        STANDARD OF REVIEW .................................................. 2

III.       ARGUMENT ....................................................................... 2

     A.     The Court Should Resolve the Conflict of Laws Issue Ignored in the March 15 Report: Does the Law of a Decedent's Domicile (Estate Administration Law) Govern the Taliban Wrongful Death Claims or Should State Law Be Ignored in Favor of Judicially-Created "Federal Common Law"? .......................................... 2

         1.   State Law on Estate Administration Was Improperly Disregarded............ 3

            a.   State Law Claims: Applicable State Law Requires that Wrongful Death Claims Against the Taliban Be Brought by "Personal Representatives" Within 2 years of Death & that "Heirs" of an Estate Be Strictly Limited. .............................................................. 4

         2.   Federal Law Claims: the Anti-Terrorism Act ("ATA") Is Silent as to Which Individuals Are Qualified to Bring an ATA Wrongful Death Claim & the ATA Fails to Define Who Qualifies as "Survivors or Heirs" – Applicable State Law Should Have Been Employed to "Fill the Gaps" in the Statute, Not a Judicially-Created "Federal Common Law" Interpretation of that Phrase....................................................... 4

            a.   The ATA's explicit text provides no guidance as to which individuals qualify as "survivors or heirs" in claiming wrongful death damages. . 6

            b.   The ATA's legislative history does not help in determining who qualifies as "survivors or heirs." .......................................... 7

            c.   Since the ATA's explicit text and legislative history fail to state which individuals qualify as "survivors or heirs," one must resort to state common law for a "gap filler".............................................. 9

            d.   The case law precedent cited in the Report does not support the Report's claim that "immediate family members" qualify for wrongful death damages; in fact, the Report's cited cases actually support the argument that the law of the decedent's domicile should be used to define "heirs."..................................................................... 13

     B.     The Court Should Decline to Adopt the Report's Recommendation that No Statute of Limitations Will Be Applied to Taliban Claims Because the Dismissal

of Untimely Claims Is Required To Ensure Both Justice & Reasonable Docket Management........................................................................................................ 17

    1.   There Must Always Be a Reasonable End to Litigation........................... 18

    2.   The *Ashton-Dickey* Plaintiffs have standing to assert a statute of limitations defense against untimely claims that will dilute the recoveries of the *Ashton-Dicke*y Plaintiffs. ................................................................ 18

    3.   This Court, *sua sponte*, has the right and obligation to dismiss untimely claims to address unusual, but serious institutional issues here................ 25

CONCLUSION.......................................................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Artuz,*
221 F.3d 117 (2d Cir. 2000).....................................................29

*Adams v. Woods,*
6 U.S. (2 Cranch) 336 (1804)....................................................29

*American Pipe & Constr. Co. v. Utah,*
414 U.S. 538 (1974)..............................................................29

*Arizona v. California,*
530 U.S. 392 (2000)....................................................18, 26, 29

*Baker v. Cuomo,*
58 F.3d 814 (2d Cir.), *vacated in part on other grounds*, 85 F.3d 919 (2d Cir.
1996) (en banc) (per curiam) ...................................................29

*Bell v. City of Milwaukee,*
746 F.2d 1205 (7th Cir. 1984) ..................................................17

*Bell v. Morrison,*
26 U.S. (1 Pet.) 351 (1828) (Story, J.) .........................................29

*Bettis v. Islamic Republic of Iran,*
315 F.3d 325 (D.C. Cir 2003)......................................................8

*Bob Jones Univ. v. Simon,*
416 U.S. 725 (1974)...............................................................15

*Boim v. Quranic Literacy Inst. & Holy Land Found.*
291 F.3d 1000 (7th Cir. 2002) ....................................................8

*Brandon v. Travelers Ins. Co.,*
18 F.3d 1321 (5th Cir. 1994) (abrogated on other grounds by, *Kennedy v. Plan
Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285 (2009))........................9

*Brazier v. Cherry,*
293 F.2d 401 (5th Cir. 1961) ....................................................17

*Burnett v. New York Cent. R.R.,*
380 U.S. 424 (1965)...........................................................29, 32

*Carter v. City of Emporia,*
543 F. Supp. 354 (D. Kan. 1982)................................................17

iv

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)............................................................................................19

*Costello v. United States*
    365 US 265 (1961)............................................................................................32

*Davis v. Bryan*,
    810 F.2d 42 (2d Cir. 1987)........................................................................17, 28

*Day v. McDonough*,
    547 U.S. 198 (2006)..........................................................................................29

*De Sylva v. Ballentine*,
    351 U.S. 570 (1956)............................................................................................9

*Donell v. Keppers*,
    835 F. Supp. 2d 871 (S.D. Cal. 2011)..............................................................29

*Dragan v. Miller*,
    679 F.2d 712 (7th Cir. 1982) ...........................................................................12

*Eriline Co. S.A. v. Johnson*,
    440 F.3d 648 (4th Cir. 2006) ...........................................................................27

*Freightliner Corp. v. Myrick*,
    514 U.S. 280 (1995)..........................................................................................17

*Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran*,
    313 F. Supp. 3d 50 (D.D.C. 2018).....................................................................15

*Hamer v. Neighborhood Hous. Servs. of Chicago*,
    138 S. Ct. 13 (2017)..........................................................................................17

*Hardy v. New York City Health & Hosp. Corp.*,
    164 F.3d 789 (2d Cir. 1999)................................................................................9

*Huang v. Lee*,
    734 F.Supp. 71 (E.D.N.Y.1990) ......................................................................13

*In re Mentor Corp. Obtape Transobturator Sling Prods.*,
    MDL Docket No. 2004, 2016 U.S. Dist. LEXIS 121608 (M.D. Ga. Sep. 7,
    2016) (Land, J.)................................................................................................28

*In re World Trade Ctr. Disaster Site Lit.*,
    769 F. Supp. 2d 650 (S.D.N.Y. 2011)...........................................................6, 20

*Ivani Contracting Corp. v. City of New York*,
    103 F.3d 257 (2d Cir. 1997)..............................................................................32

*J & J Sports Prods., Inc. v. Martinez*,
    2010 WL 1038467 (N.D. Cal. Mar. 2, 2010)...................................................................29

*Joe Hand Promotions, Inc. v. Tu Minh Nguyen*,
    2011 WL 1642306 (N.D. Cal. May 2, 2011) .......................................................................29

*Kamen v. Kemper Financial Servs., Inc.*,
    500 U.S. 90 (1991)..............................................................................................................10

*Knox v. Palestine Liberation Organization*,
    442 F. Supp. 2d 62 (S.D.N.Y. 2006) ............................................................................. *passim*

*Lassiter v. City of Phila.*,
    716 F.3d 53 (3d Cir. 2013)..................................................................................................27

*Leonhard v. United States*,
    633 F.2d 599 (2d Cir. 1980).....................................................................................26, 27, 28

*Link v. Wabash R.R. Co.*,
    370 U.S. 626 (1962).....................................................................................................26, 27

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)............................................................................................................19

*M'Cluny v. Silliman*,
    28 U.S. (3 Pet.) 270 (1830) ................................................................................................30

*Markham v. Allen*,
    326 U.S. 490 (1946).....................................................................................................10, 12

*Nice v. Centennial Area School Dist.*,
    98 F. Supp. 2d 665 (E.D. Pa. 2000) .....................................................................................9

*O'Melveny & Myers v. FDIC*,
    512 U.S. 79 (1994)..............................................................................................................16

*Order of R.R. Telegraphers v. Railway Express Agency*,
    321 U.S. 342 (1944)............................................................................................................ 29

*Owens v. Taliban*,
    No. 22-cv-1949-VEC (S.D.N.Y.) ........................................................................................31

*Pino v. Ryan*,
    49 F.3d 51 (2d Cir. 1995) ...................................................................................................27

*Rampersad v. Deutsche Bank Sec., Inc.*,
    2004 WL 616132 (S.D.N.Y. Mar. 30, 2004) ......................................................................29

*Reches v. Morgan Stanley & Co.*,
No. 16-3294-cv (2d Cir. Apr. 14, 2017) ............................................................... 28

*Robins v. Rarback*,
325 F.2d 929 (2d Cir. 1963), *cert. denied,* 379 U.S. 974, 85 S.Ct. 670, 13
L.Ed.2d 565 (1965) ............................................................................................... 27

*Rodriguez v. FDIC*,
140 S. Ct. 713 (2020) ........................................................................................... 16

*Rotella v. Wood*,
528 U.S. 549 (2000) .............................................................................................. 32

*Sager v. City of Woodland Park*,
543 F. Supp. 282 (D. Colo. 1982) ....................................................................... 17

*Sanchez v. Marquez*,
457 F. Supp. 359 (D. Colo. 1978) ....................................................................... 17

*Shiekh v. Republic of Sudan*,
308 F.Supp.3d 46 (D.D.C. 2018), *rev'd on other grounds by*, *Maalouf v.
Republic of Iran*, 923 F.3d 1095 (D.C. Cir. 2019) ........................................... 30, 31

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 ..................................................................................................... 19

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .............................................................................................. 20

*Taiwan Civil Rights Litig. Org. v. Kuomintang Bus. Mgmt. Comm.*,
486 F. App'x 671 (9th Cir. 2012) ........................................................................ 29

*Tex. Indus. v. Radcliff Materials*,
451 U.S. 630 (1981) (Burger, C.J.) ...................................................................... 11

*Thole v. U.S. Bank N.A.*,
140 S. Ct. 1615 (2020) ......................................................................................... 19

*Ungar ex reI. Strachman v. Palestinian Auth.*,
304 F.Supp.2d 232 (D.R.I. 2004) ...................................................................... 14, 15

*U.S. v. Smith*,
832 F.2d 774 (2d Cir. 1987) .................................................................................. 9

*U.S. v. Yazell*,
282 U.S. 341 (1996) .............................................................................................. 10

*United States v. Kimbell Foods, Inc.,*
    440 U.S. 715 (1979)..........................................................................13

*United States v. Mitchell,*
    518 F.3d 740 (10th Cir. 2008) ......................................................29

*United States v. Olano,*
    507 U.S. 725 (1993)..........................................................................17

*United States v. Romano,*
    794 F.3d 317 (2d Cir. 2015)..............................................................2

*United States v. Western Pac. R.R.,*
    352 U.S. 59 (1956)............................................................................29

*Walters v. Indus. and Com. Bank of China,*
    651 F.3d 280 (2d Cir. 2011)............................................................28

*Wood v. Milyard,*
    566 U.S. 463 (2012)..........................................................................18

*Wright v. Rensselaer Cty Jail,*
    771 Fed.Appx. 58 (2d Cir. 2019)..............................................26, 27

*Yamaha Motor Corp., U.S.A. v. Calhoun,*
    566 U.S. 199, 116 S.Ct 619 (1996)................................................10

<u>Statutes</u>

18 U.S.C. § 2333..........................................................................4, 6, 15, 16

28 U.S.C. § 636(b)(1) ...............................................................................2

28 U.S.C. § 1606........................................................................................8

34 U.S.C. § 20144(d)(3)(A)(i), (e)(6)......................................................22

42 U.S.C. §§ 1981, 1983, and 1988 ........................................................17

Anti-Terrorism Act ........................................................................... passim

Conn. Gen. Stat. § 45a-448(b), §§ 45a-437, *et. seq.*, and § 52-555............11

Rules of Decision Act., 28 U.S.C. § 1652 .............................................13

N.J. Stat. Ann. § 2A: 31-4, § 3B: 5-3 and § 2A:31-2 .............................11

N.Y. Estate Powers & Trusts Law § 5-4.2..........................................4, 11

N.Y. Estate Powers & Trusts Law § 5-4.4 ................................................................11, 30

N.Y. Surr. Ct. Proc. Act § 205(1) ...............................................................................12

National Defense Authorization Act for Fiscal Year 2013, Pub. L. No. 112-239, §
    1251(c), 126 Stat. 1632, 2017 (2013) .............................................................30

Pub. L. No. 102-572, Title X, § 1003(a)(4), 106 Stat. 4506 ...........................................4

Pub. L. No. 114-222, 130 Stat. 852 ..............................................................................5

Other Authorities

137 CONG REC. S4511-04 (daily ed. Apr. 16, 1991) (statement of Sen. Grassley) .....................8

22 N.Y.C.R.R § 1200.7(a)(1) ......................................................................................6

Bradford R. Clark, "Federal Common Law: A Structural Reinterpretation," 144
    U. Pa. L. Rev. 1245, 1248 (1996) ..................................................................16

*Cambridge Dictionary* ...............................................................................................6

Exec. Order No. 14,064, 87 Fed. Reg. 8391 (Feb. 11, 2022) .......................................19

Fed. R. Civ. P. 16(c)(2) ........................................................................................27, 28

Fed. R. Civ. P. 72(b)(2) ..........................................................................................1, 33

Hill, *State Procedural Law in Nondiversity Litigation*, 69 Harv. L. Rev. 66 (1955) ...................13

Ibrahim, Ashraf Ray, "The Doctrine of Laches in International Law," 83 Va. L.
    Rev. 647 (April 1997) ....................................................................................32

Letter from Sen. Grassley and Rep. Goodlatte to Sec'y Tillerson,
    https://www.judiciary.senate.gov/imo/media/doc/2017-09-
    27%20CEG,%20Goodlatte%20to%20Tillerson(Sudan%20Sanctions).pdf ..........................22

New York Rules of Professional Conduct Rule 1.7(a)(1) ..............................................6

Note, "The Federal Common Law," 82 Harv.L.Rev. 1512, 1519 (1969) ................5, 13

Report from the Special Master at 3, U.S. Victims of State Sponsored Terrorism
    Fund (Aug. 2017),
    http://www.usvsst.com/docs/USVSST%20Fund%20Supplemental%20Congre
    ssional%20Report%208-2-2017.pdf ................................................................22

S. REP. 102-342 (1992) ..............................................................................................5

S. Pounian, "Aviation Law: Plaintiff's Rights in a Multidistrict Litigation
    Context," https://www.kreindler.com/articles/plaintiff-multidistrict-litigation-
    context ................................................................................................................... 12

S. Speiser, *Recovery for Wrongful Death*, § 6:61 (4th ed. July 2018 update) ............................. 10

*The Law Dictionary* ................................................................................................................ 7

USVSST website, FAQ 4.1, http://www.usvsst.com/faq.php ................................................. 22, 23

5 C. Wright A. Miller, *Federal Prac. & Proc.* § 1357 (1969) ..................................................... 27

19 C. Wright & A. Miller, *Fed. Prac. & Proc.* § 4518 (3d ed. August 2019
    update) ....................................................................................................................... 9

## I.      INTRODUCTION

On March 15, 2023, Magistrate Judge Sarah Netburn issued a decision (the "R&R" or the "Report," ECF No. 8929), which addressed certain issues raised by the *Ashton-Dickey* Plaintiffs[1] concerning the law to be applied in the wrongful death actions filed against the Taliban. Pursuant to Fed. R. Civ. P. 72(b), the *Ashton-Dickey* Plaintiffs respectfully object to the March 15 Report as described below.   These Objections are supported by the accompanying Declarations of John F. Schutty, Esq. and Plaintiff Lisa O'Brien, both dated March 28, 2023.

These Fed. R. Civ. P. 72(b)(2) Objections show that the March 15 Report failed to consider fundamental legal defects in many of the Taliban default judgment applications, and these legal defects and issues affect all of the Taliban wrongful death actions filed with this Court, namely: (1) who is authorized to bring a lawsuit for the wrongful death damages claimed, (2) who are the "heirs" entitled to recover wrongful death damages from the Taliban, (3) is there no statute of limitations that will be enforced as to these Taliban death claims, and (4) generally, whether undeniably applicable state estate administration law (providing laws relating to wrongful death damage recovery) may be wholly ignored.   Magistrate Judge Netburn has ruled that no statute of limitations will be applied to the Taliban wrongful death claims (*i.e.*, legal

---

[1]      The undersigned law firm represents the estates of ten 9/11 decedents (*Ashton-Dickey* Plaintiffs); a "personal representative," appointed by a state Surrogates Court, has appeared to represent each of these ten estates in this litigation, and each personal representative filed a timely wrongful death action under both state and federal law (within two years of the decedent's death) against the defendants herein (all timely and viable claims).   We contend that "standing" exists to assert these Objections.   *See* the accompanying Declaration of Plaintiff Lisa O'Brien.   Here, where a limited fund of money may exist in the "possession" of a defendant-in-default, and that money is sought by a multitude of plaintiffs, the claims of various plaintiffs are adverse to one another, and their respective claims should be challenged to ensure that justice is obtained in favor of the timely and viable claims.   The docket of the court otherwise becomes a "blank-check-writing" enterprise for untested claims, rather than a court of law.   Here each default judgment entered against the Taliban results in new claims against assets presently held by the Federal Reserve Bank of New York, and these new untimely claims and judgments by "non-heirs" dilute the recoveries of state-authorized heirs who have filed timely legal actions.   *See* pp. 20-25 below.

actions may be filed against the Taliban *ad infinitum*[2]) (R&R at 9), and that this Court's application of "federal common law" allows a total abrogation of the long-established estate administration laws of the states where the 9/11 decedents were domiciled (R&R at 8).  The Magistrate Judge reached the latter result even though the legal precedent, text and legislative history surrounding the federal statute in question warrant an application of state law (the estate administration law of the decedent's domicile).

## II.    STANDARD OF REVIEW

"If a party timely objects to any portion of a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015) (quoting 28 U.S.C. § 636(b)(1)).  The *Ashton-Dickey* Plaintiffs, by and through these Objections, respectfully request that the Court decline to adopt the recommendations addressed herein.

## III.    ARGUMENT

### A.  The Court Should Resolve the Conflict of Laws Issue Ignored in the March 15 Report: Does the Law of a Decedent's Domicile (Estate Administration Law) Govern the Taliban Wrongful Death Claims or Should State Law Be Ignored in Favor of Judicially-Created "Federal Common Law"?

A review of the wrongful death Complaints filed against the Taliban reveals that two viable causes of action have been alleged: (1) a common (state) law claim for wrongful death, and (2) a federal claim arising out of the Anti-Terrorism Act.  These Objections reiterate a request for a single Order from the Court (applying to all Taliban wrongful death claimants) that determines: (1) who may sue for wrongful death damages (only "personal representatives," as

---

[2]    The Report's finding, that district courts are forbidden from considering whether claims against a defendant-in-default are untimely, has no limiting principle.  The Report suggests that there is no time restriction for future plaintiffs to obtain default judgments against a defendant-in-default, no matter how many years or decades have passed since the injury or death.  The rule applied by the Magistrate Judge raises the real possibility of litigation "without end."

required by state law), (2) what "heirs" may claim damages in a wrongful death context (does applicable state estate administration law or new, judicially-created federal common law apply to determine eligible "heirs"), and (3) when the wrongful death action must have been filed against the Taliban to be timely (under both state and federal law).   In fact, state law (estate administration laws of most, if not all, of the decedents' domiciles) leads to a very different result than the "federal common law" remedy created and applied by the Magistrate Judge.   The conflict in the laws was, in fact, not properly resolved by the Magistrate Judge.

The PEC firms are pursuing wrongful death damage claims, on behalf of newly-filed plaintiffs' actions (on behalf of so-called "immediate family members" or non-legal heirs) in violation of applicable state law (estate administration law governing the recovery of wrongful death damages) by: (1) requesting death damages for family members personally, who are not represented by a state-appointed personal representative, (2) requesting damages on behalf of non-heir individuals in violation of estate administration laws, and (3) adding additional non-heir family members to the litigation long after the statute of limitations has expired.   The undeniable conflict between state wrongful death law and the federal (judicially-created) common law urged by the PEC has not been acknowledged, nor properly addressed, in the Report.

**1.   State Law on Estate Administration Was Improperly Disregarded.**

A cursory review of the many Complaints filed by plaintiffs against the Taliban indicates that there are two viable causes of action asserted against this defendant: (1) a cause of action provided by the Anti-Terrorism Act, and (2) a common law cause of action for wrongful death based on state law.   State law applies to each claim for the reasons stated below.

### a. State Law Claims: Applicable State Law Requires that Wrongful Death Claims Against the Taliban Be Brought by "Personal Representatives" Within 2 years of Death & that "Heirs" of an Estate Be Strictly Limited.

The state law (*e.g.*, NY, NJ and CT) governing most of the Taliban wrongful death claims (estate administration law of the decedent's domicile based on choice of law principles) shows that, each such state's laws: (1) requires that the plaintiff be an appointed "personal representative" of the decedent's estate, (2) strictly defines, by statute, which family members qualify as "heirs" of the decedent (*viz.,* who is entitled to a distribution of any wrongful death award), and (3) requires that the wrongful death action be filed by the personal representative within two years of the decedent's death (*e.g.,* EPTL 5-4.2).  *See* pages 11-12 below, and fn. 12 below.  Thus, each plaintiff asserting a state law claim for wrongful death against the Taliban must establish that they are an authorized "personal representative" of the decedent's estate, that they qualify as an heir under the applicable state's estate administration law, and that they have filed their action within two years of September 11, 2001 to satisfy the state law wrongful death statute of limitations.  *See* Schutty Declaration and Summaries of State Law (Ex. A).

### 2. Federal Law Claims: the Anti-Terrorism Act ("ATA") Is Silent as to Which Individuals Are Qualified to Bring an ATA Wrongful Death Claim & the ATA Fails to Define Who Qualifies as "Survivors or Heirs" – Applicable State Law Should Have Been Employed to "Fill the Gaps" in the Statute, Not a Judicially-Created "Federal Common Law" Interpretation of that Phrase.

The other wrongful death claim asserted against the Taliban is the federal cause of action created by the **Anti-Terrorism Act ("ATA"),**[3] 18 U.S.C. § 2333, which provides (emphasis added):

---

[3] The ATA provides a private right of action for any United States national injured by an act of international terrorism.  18 U.S.C. § 2333 *et seq.*, is the civil remedies provision of the Anti-Terrorism Act, added Oct. 29, 1992, Pub. L. No. 102-572, Title X, § 1003(a)(4), 106 Stat. 4506, codified as amended.

**Any national** of the United States **injured** in his or her person, property, or business **by reason of an act of international terrorism**, **or his or her estate, survivors, or heirs**, **may sue therefor** in any appropriate district court of the United States **and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees**.[4]

In the event of a death resulting from an act of international terrorism, this ATA cause of action is *silent* as to precisely which individuals fit within the scope of the phrase "his or her estate, survivors, or heirs,"[5] and is *silent* as to which individuals may pursue the ATA claim for wrongful death.[6]  The legislative history that the undersigned has been able to secure shows that the ATA's framers were focused primarily on punishing terrorists and not on setting up a full and complete liability remedy (by specifying who might recover wrongful death damages).[7]

The Report wholly fails to acknowledge the *express* conflict between state estate administration law defining "heirs" and the Report's *interpretation* of who is covered by the

---

[4]    In 2016, the "Justice Against Sponsors of Terrorism Act" (JASTA), Pub. L. No. 114-222, 130 Stat. 852, amended the ATA to provide that "liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism."  The applicability of the ATA and JASTA, as a viable cause of action against the Taliban, is not in dispute.  The legislative history and subsequent court decisions show, however, that the focus of the ATA has always been on "who may be sued and what should they be required to pay," rather than on "who may sue" for wrongful death.

[5]    "The ATA does not define the terms 'survivors' or 'heirs,' terms that are usually defined by state law."  *Knox v. Palestine Liberation Organization,* 442 F. Supp. 2d 62, 74 (S.D.N.Y. 2006) (the court applied the estate administration law of the decedent's domicile (Israel) in determining "heirs" under the ATA).

[6]    When there are no well-established federal policies and no reasonable body of federal law, "as compared to the relative order and clarity of law established in state courts, the common law rule is to be applied in federal court is thus uncertain and almost impossible to predict," which "combined with the substantive advantages to be gained by allowing states to formulate their own policies where feasible creates the presumption that state law should be applied."  Note, "The Federal Common Law," 82 Harv.L.Rev. 1512, 1519 (1969).

[7]    "This section [ATA] creates the right of action, allowing any U.S. national who has been injured in his person, property, or business by an act of international terrorism to bring an appropriate action in a U.S. district court. *The substance of such an action is not defined by the statute, because the fact patterns giving rise to such suits will be as varied and numerous as those found in the law of torts.* This bill opens the courthouse door to victims of international terrorism."  S. REP. 102-342 *45 (1992) (emphasis added).

ATA's "survivors or heirs" phrase – the latter phrase Magistrate Judge Netburn has *interpreted* as necessarily including "parents and siblings" (alleged "immediate family members") of the decedent, who are expressly not state law "heirs" when a decedent is survived by a spouse and children.[8]

The Report claims that its reasoning is supported by "the text, history, and purpose [of the ATA]" and concludes that "immediate family members of people killed in terrorist attacks, not just their legal heirs, may sue under the ATA." R&R at 7. In fact, we show below the exact opposite – that the explicit ATA text, the ATA's legislative history, and the purpose of the ATA – do NOT support the Report's conclusion that "immediate family members of people killed in terrorist attacks, not just their legal heirs, may sue under the ATA."

<blockquote>

**a. The ATA's explicit text provides no guidance as to which individuals qualify as "survivors or heirs" in claiming wrongful death damages.**

</blockquote>

The Report alleges that "[t]he plain text of § 2333 dictates that 'survivors' include people other than 'heirs.'" R&R at 7. This statement is plainly incorrect. "Survivors" is not a legal term and it certainly cannot be interpreted as describing a specific class of individuals. The *Cambridge Dictionary* defines "Survivor" as (1) "a person who continues to live, despite almost

---

[8]     The Report notes that the "PECs argue that the Court should interpret § 2333 in line with other district courts that have interpreted the term 'survivors' to encompass immediate family members who might not qualify as legal heirs. *See* ECF No. 8813." R&R at 7. It is very significant that virtually all the PEC law firms represent "parents and siblings," as well as authorized state law heirs (a hopeless conflict of interest), so these firms have no choice but to argue for the broadest possible definition of "survivors," regardless of whether it is correct or not under the law – to do otherwise would be to commit disloyalty to their "parents and sibling" clients. Rule 1.7(a)(1) of the New York Rules of Professional Conduct, 22 N.Y.C.R.R § 1200.7(a)(1), provides in pertinent part that "a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests." Comment 1 to Rule 1.7 explains "Differing interests exist if there is a significant risk that a lawyer's exercise of professional judgment in considering, recommending or carrying out an appropriate course of action for the client will be adversely affected or the representation would otherwise be materially limited by the lawyer's other responsibilities or interests." *See, e.g.*, *In re World Trade Center Disaster Site Lit.*, 769 F. Supp. 2d 650 (S.D.N.Y. 2011) (law firm disqualified by the court, after citing Code of Professional Responsibility Rule 1.7(a), and holding that 59 plaintiffs had legal positions different from other plaintiffs and needed separate advice).

dying, (2) a person who is able to continue living his or her life successfully, despite almost dying, or (3) a person's survivors are the members of his or her family who continue to live after he or she has died."   https://dictionary.cambridge.org/us/dictionary/english/survivor.   While clearly the last of the three definitions seems to apply to the phrase as used in the ATA, even that definition is far too vague and broad to be interpreted as limited to "immediate family members" (parents and siblings) as claimed in the Report.  *The Law Dictionary* describes "Survivorship" in a legal manner, but again its definition is so vague and overly broad that it cannot possibly be interpreted to mean "immediate family members": "The living of one of two or more persons after the death of the other or others.   Survivorship is where a person becomes entitled to property by reason of his having survived another person who had an interest in it." https://thelawdictionary.org/survivorship/#:~:text=The%20living%20of%20one%20of,of%20the %20other%20or%20others.   How the Magistrate Judge determined that the ATA phrase "survivors or heirs" explicitly includes "immediate family members" is not disclosed in the Report, but the phrase certainly *cannot* be said to be explicitly inclusive of "immediate family members" (inclusive of parents and siblings, but not, for example, grandparents, cousins and others).  The Report's finding in this regard is absolutely contrary to another decision in this district: "[t]he ATA does not define the terms 'survivors' or 'heirs,' terms that are usually defined by state law."  *Knox v. Palestine Liberation Organization,* 442 F. Supp. 2d 62, 74 (S.D.N.Y. 2006).  Since "survivor" is not defined by the ATA, it clearly can mean the same thing as "heirs," and the phrase requires a legal "gap filler" to determine precisely who qualifies.

### b. The ATA's legislative history does not help in determining who qualifies as "survivors or heirs."

The ATA's legislative history also does not support the Report's finding that someone other than a "legal heir" is entitled to recover ATA wrongful death damages, since the legislative

history states that "[*t*]*he substance of such an [ATA] action is not defined by the statute, because the fact patterns giving rise to such suits will be as varied and numerous as those found in the law of torts.*"   *See* footnote 7.[9]   Congress sought only "to codify general common law tort principles and to extend civil liability for acts of international terrorism to the full reaches of traditional tort law."   *Boim v. Quranic Literacy Inst. & Holy Land Found.* 291 F.3d 1000, 1010 (7th Cir. 2002); *see also* 137 CONG REC. S4511-04 (daily ed. Apr. 16, 1991) (statement of Sen. Grassley) (The ATA accords victims of terrorism "the remedies of American tort law, including treble damages and attorney's fees.").   The ATA purposely did not set forth a detailed liability scheme, as that was left to general tort law; the ATA merely intended to codify that additional damages might be sought by victims of terrorism to punish wrongdoers (treble damages and attorneys' fees that might not be recoverable under the common law) in traditional wrongful death actions.   *Id.*   Despite its claim, the March 15 Report simply fails to cite any legislative history that would support its claim that "survivors or heirs" was intended to be inclusive of "immediate family members" (parents and siblings, *i.e.,* non-heirs).

---

[9]       *See also Bettis v. Islamic Republic of Iran,* 315 F.3d 325, 333 (D.C. Cir 2003):

> The term "federal common law" seems to us to be a misnomer.  Indeed, it is a mistake, we think, to label actions under the FSIA and Flatow Amendment [and ATA] for solatium damages as "federal common law" cases, for these actions are based on *statutory* rights. . . . Rather, . . . because the FSIA instructs that "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 1606, it in effect instructs federal judges to find the relevant law, not to make it.

As the Court of Appeals noted in *Bettis,* "this fact is not a license for judges to legislate from the bench," for "[a]s much as we sympathize with appellants' claims, we have no authority to stretch the law beyond its *clear bounds* to satisfy our sense of justice."  315 F.3d at 338, 336.

**c.  Since the ATA's explicit text and legislative history fail to state which individuals qualify as "survivors or heirs," one must resort to state common law for a "gap filler."**

"The Supreme Court has put increasing emphasis on the notion that when determining the content of federal common law, forum state law should be adopted as federal law absent some good reason to displace it."  C. Wright & A. Miller, 19 *Fed. Prac. & Proc.* § 4518 (3d ed. August 2019 update).  A federal court has discretion to borrow from state law when there are deficiencies or lacunae in the federal statutory scheme.  *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789 (2d Cir. 1999); *U.S. v. Smith*, 832 F.2d 774 (2d Cir. 1987) (state commercial law furnished convenient solutions that in no way were inconsistent with adequate protection of federal interests).

When federal law does not expressly establish the legal rule for a federal question case, a federal court should borrow state law to fill the gap in the statutory scheme so long as the state rule does not impinge upon any federal interest.  Particularly in the area of family relationships and domestic relations, a federal court should defer to the well-established law of the several states.  *Nice v. Centennial Area School Dist.*, 98 F. Supp. 2d 665 (E.D. Pa. 2000).  *See also De Sylva v. Ballentine*, 351 U.S. 570, 580–581 (1956), where the issue was whether the illegitimate son of a copyright owner is one of the owner's "children" within the meaning of the copyright statute; the Supreme Court said: "The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law … This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern. … We think it proper, therefore, to draw on the ready-made body of state law to define the word 'children' …." (Harlan, J.); *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1326 (5th Cir. 1994) ("[t]he law of family relations has been a sacrosanct enclave, carefully protected against federal intrusion") (abrogated on other

grounds by, *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285 (2009)); *see also Yamaha Motor Corp., U.S.A. v. Calhoun*, 566 U.S. 199, 116 S.Ct 619, 627 (1996) (legislative intent would be more closely served by preserving the application of state statutes to deaths within territorial waters where the victims are not persons covered by federal legislation providing a uniformly applied and comprehensive tort recovery regime); *Kamen v. Kemper Financial Servs., Inc.,* 500 U.S. 90 (1991) (federal courts should incorporate forum state law as the federal rule unless the application of the particular state law would frustrate specific federal objectives); *U.S. v. Yazell,* 282 U.S. 341, 352 (1996) ("theory and the precedents of this Court teach us solicitude for state interests, particularly in the field of family and family-property arrangements"). "[T]here is no federal common-law or statutory rule that explicitly prohibits the application of state common-law remedies to cases of wrongful death." S. Speiser, *Recovery for Wrongful Death*, § 6:61 (4th ed. July 2018 update).

State estate administration laws explicitly limit who qualifies to receive wrongful death damages as a "survivor or heir" as to any decedent domiciled in that state at the time of his or death. State law necessarily must define what individuals qualify to share in an estate's proceeds (including wrongful death proceeds), since it is the states, not the federal government (nor the federal courts), who are responsible for handling the distribution of an estate's proceeds. In *Markham v. Allen*, 326 U.S. 490, 494 (1946), the Supreme Court held that Congress did not confer on the federal courts jurisdiction to "probate a will or administer an estate."[10] As seen

---

[10] The Supreme Court went on to hold that beyond the probate of a will or administration of an estate, the "federal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees and heirs' and other claimants against a decedent's estate 'to establish their claims' *so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court.*" *Markham, supra*, at 494 (emphasis added). Here, expanding who may recover wrongful death damages (beyond the state defined "heirs"), "interferes with probate proceedings" and "interferes" with the distribution of "property" (wrongful death damages) that is or should be more properly "in the control of the state."

above, the state law of the decedent's domicile governs – who is authorized to claim status as a legal "heir," who may bring a claim for wrongful death damages, and how any wrongful death proceeds should be distributed amongst defined heirs.

The laws of the decedents' domiciles here would require the application of state estate administration law and that would expressly deny parents and siblings of wrongful death damage awards where a decedent is survived by a spouse and children.  In the Report, it is implicitly suggested that the MDL Court may wholly ignore the interests and laws of the decedents' domiciles (state law) regarding wrongful death estate administration, and wholly ignore federal precedent that frowns upon the creation of federal common law.[11]

In fact, each American *state* has different laws surrounding the determination and distribution of wrongful death proceeds in administering the estates of decedents.  In New York, for example, wrongful death damages are distributed *only* to members of a decedent's defined "estate," *i.e.,* immediate family members explicitly described within a statute, in proportion to their financial loss.  *See, e.g.,* N.Y. Estate Powers & Trusts Law ("EPTL") § 5-4.4.[12]  Where a 9/11 decedent is survived by a spouse and children, for example, parents and siblings of the decedent are denied wrongful death damages under New York law, regardless of any claimed injury of the parents and siblings.  *Id.*  Also, New York State law gives the court-appointed personal representative of an estate the *exclusive* authority to bring an action for a wrongful

---

[11]    *See, e.g., Tex. Indus. v. Radcliff Materials*, 451 U.S. 630, 640–41 (1981) (Burger, C.J.) ("The vesting of jurisdiction in the federal courts does not in and of itself give rise to authority to formulate federal common law.").

[12]    In New Jersey and Connecticut, similar rules exist to limit wrongful death damages to prescribed "heirs" (to protect widows and children) and such actions must be brought by an appointed personal representative. *See* N.J. Stat. Ann. § 2A: 31-4, § 3B: 5-3 & § 2A:31-2; Conn. Gen. Stat. § 45a-448(b), §§ 45a-437, *et. seq.*, and § 52-555.  State wrongful death claims must be brought within two years.  *See, e.g.*, EPTL § 5-4.2.  *See* Schutty Declaration, Summaries of NY, NJ and CT law (Ex. A).

death on behalf of a decedent's estate.[13]  *Id.*, § 5-4.1.  Finally, the New York State Surrogate's Court has jurisdiction over the estate of any decedent who was a domiciliary of New York at the time of his or her death to ensure that the estate administration laws are followed. S*ee* N.Y. Surr. Ct. Proc. Act § 205(1).  Thus, awarding money damages to individuals outside the state-prescribed and statutorily-defined "heirs of the estate"[14] (*e.g.*, parents and siblings, where the decedent is survived by a wife and children), and allowing individual family members to pursue death claims personally, *expressly violates New York State law*.[15]  On matters of estate law and wrongful death damages distribution, the laws of the domiciles of the decedents should have been addressed, especially if an award of wrongful death damages is requested on behalf of a family member *in direct disregard of state law, state interests and state policy*.

Moreover, where a federal statute does not provide guidance on an issue relating to estate administration law (like the ATA), reference must be made to applicable state law (here, the law

---

[13]     In a wrongful death action "an MDL court applying the various choice of law tests of the various transferor courts will often choose the same standard of law to govern compensatory damages in all cases in one air crash, and that law typically will be the place of death or the place of domicile of the decedent . . . It is settled beyond any doubt that under the New York wrongful death statute, the right to prosecute, settle and compromise the wrongful death claim lies exclusively with the personal representative of the estate who brings the suit in his or her representative capacity as statutory trustee for all of the statutory beneficiaries.  The administrator can seek an order of compromise even against the wishes of decedent's children."     S. Pounian, "Aviation Law: Plaintiff's Rights in a Multidistrict Litigation Context," https://www.kreindler.com/articles/plaintiff-multidistrict-litigation-context.

[14]     In fact, the probate exception to federal jurisdiction prohibits federal courts from hearing cases involving matters related to the probate of wills or administration of estates.  *Markham v. Allen*, 326 U.S. 490, 494 (1946).  It is a doctrine that has been described as "one of the most mysterious and esoteric branches of the law of federal jurisdiction."  *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982).  Yet, here, the PEC has urged the Court to give no regard to the interests of the states where the 9/11 decedents were domiciled – states left responsible for the future welfare and support of surviving widows and children.  These states are undeniably responsible for administering the estates of decedents in this country and they therefore have a far greater interest in the administration of the decedents' estates than the federal courts.

[15]     *See* footnotes 12, 13 and 14.

of the decedent's domicile).[16]  Federal law is interstitial and federal courts often look to the law

of the forum state to fill gaps in federal statutes, usually under the general mandate of the Rules

of Decision Act.[17]  *See also* footnote 14.

> **d.   The case law precedent cited in the Report does not support the Report's claim that "immediate family members" qualify for wrongful death damages; in fact, the Report's cited cases actually support the argument that the law of the decedent's domicile should be used to define "heirs."**

Finally, the case law precedent cited in the Report does not support the Magistrate

Judge's claim that the Court need not resort to state law to determine how the phrase "survivors

or heirs" should be interpreted.  In claiming that the word "survivors" is broader than the legal

term "heirs" and in suggesting that the word means "immediate family members," and in

implicitly ruling that state estate administration law need not be applied, the Report quotes as

precedent a Southern District of New York court decision, *Knox v. Palestine Liberation

Organization,* 442 F. Supp. 2d 62, 75 (S.D.N.Y. 2006) *that applied the law of the decedent's

domicile, Israeli law*: "the legislative history of the ATA and the underlying purpose of the ATA

is to deter and punish acts of international terrorism supports *including parents and siblings* in

'survivors'" (R&R at 8) (emphasis added).  In fact, the *Knox* decision itself casts enormous

doubt on the alleged claim by the Magistrate Judge that the ATA supports claims by "parents and

---

[16]      The District Court should determine how the ATA should be applied as a wrongful death remedy where state law seemingly applies and the federal cause of action requires a gap-filler.  When there are no well-established federal policies and no reasonable body of federal law, "as compared to the relative order and clarity of law established in state courts, the common law rule to be applied in federal court is thus uncertain and almost impossible to predict," which "combined with the substantive advantages to be gained by allowing states to formulate their own policies where feasible creates the presumption that state law should be applied."  Note, "The Federal Common Law," 82 Harv. L. Rev. 1512, 1519 (1969).

[17]      28 U.S.C. § 1652. The Rules of Decision Act applies to federal question as well as diversity cases, and requires the use of state law in certain cases in which the underlying statute is silent.  *See* Hill, *State Procedural Law in Nondiversity Litigation*, 69 Harv. L. Rev. 66 (1955); *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728 (1979) (noting that state law may be incorporated as the federal rule of decision in federal question cases); *see also Huang v. Lee*, 734 F.Supp. 71 (E.D.N.Y.1990) (holding that the decedent's domicile has the greatest interest in regulating damages).

-13-

siblings," as the district court in *Knox* applied the law of the decedent's domicile (Israel) in determining the applicable interpretation of "survivors or heirs"; *Knox* held that the phrase "survivors or heirs" should include parents and siblings *only* because *Israeli law applied on this issue. See Knox*, 442 F. Supp.2d at 74 ("The ATA does not define the terms 'survivors' or 'heirs,' *which are usually defined by state law*. . . 'Israeli law provides that when a decedent dies intestate 'the legal heirs entitled to succession [are]: (1) [s]pouse of deceased; (2) children and their descendants and parents of deceased and their descendants.'") (emphasis added).

Knox otherwise cites as precedent the district court (Rhode Island) decision in *Estates of Ungar ex rel. Strachman v. Palestinian Auth.,* 304 F.Supp.2d 232, 261 (D.R.I. 2004) ("*Ungar*"), which the Magistrate Judge cites at the R&R at 7-8, for the unsupported claim that Congress "intended" that "family members who are not legal heirs (such as parents and a sibling of a decedent who leaves children) may bring an action pursuant to [§ 2333(a)]." Importantly, in *Ungar,* state law was again *not* in conflict with the applicable law providing a broader number of "survivors or heirs," because *Ungar* expressly recognized that "*Yaron Ungar had not been a resident of any state in this country since he was fourteen years old. See* 7/12/02 Hearing Tr. at 92, 100. *Thus, the meaning of the terms "survivors" and "heirs" as used in § 2333(a) cannot be determined by referring to the law of a particular [American] state*. . . *Israeli law provides that when a decedent dies intestate the 'legal heirs entitled to succession [are]: (1) Spouse of deceased; (2) children and their descendants and parents of deceased and their descendants*.'" *Ungar,* 304 F. Supp.2d at 261 (emphasis added). In short, the two principal decisions relied upon by the Magistrate Judge in disregarding state law are inapposite to her conclusion that state law (decedent's domicile) on estate administration need not be considered in interpreting the phrase "survivors or heirs" – both *Knox* and *Ungar* properly determined that the law of the decedent's

domicile (Israel) controlled who qualified for damages under the phrase "survivors or heirs."[18] Thus, here these two decisions[19] would require that the estate administration laws of the decedent's domicile be employed in determining who qualifies as "heirs."

Significantly, no precedent exists within the District Court (S.D.N.Y.) or the governing Circuit (Second) to support the Report and claims of the PEC, and no court previously has resolved the undeniable conflict present here between state law and the federal common law promoted by the PEC and applied within the March 15 Report.[20]   At a recent conference, a member of the PEC asserted that there is a 'great amount' of precedent surrounding the interpretation of the ATA's cause of action for wrongful death, but there is little or no precedent as persuasive as *Knox* and *Ungar*, both of which resorted to the decedent's domicile to determine who qualified as "survivors or heirs."[21]

---

[18]   The Report also claims incorrectly that "[l]inking the interpretation of § 2333 to state law would also prevent the ATA from providing uniform access to the federal courts."  R&R at 8.  This is not true. Applying state law to fill the gaps in the ATA cause of action will in no way limit access to the federal courts by any victim claiming federal question jurisdiction – a claim arising under a federal statutory cause of action.  State estate administration law will merely condition the remedy that is applied and that is totally normal in a mass tort context.

[19]   The Report also cites to *Henkin v. Kuveyt Turk Katilim Bankasi, A.S.*, 495 Supp. 3d 144, 152 (E.D.NY 2020) (§ 2333 does not limit a family to a single suit brought by either the injured person, his estate, his heir, or his survivor), but this decision does not attempt to define "survivors or heirs," the true issue here, and the court's reference to who might bring an ATA cause of action is *dicta* to what is at issue here.  The terrorist act in question there occurred on the West Bank, and no one argued for the application of U.S. state law on the issue of who qualified as "survivors or heirs."

[20]   This Court must carefully parse any "precedent" allegedly supporting the PEC's claim that individuals other than widows and children can recover wrongful death damages – did these other courts employ a choice of law analysis in determining who qualifies as a "survivor" or "heir" of the decedent?

[21]   The District of Columbia cases previously cited by the PEC, not only lack binding precedential value in this district, they also lack true "precedential weight" because they were decided in the context of a default by a non-appearing foreign sovereign in a non-state (D.C.).  *See, e.g., Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran*, 313 F. Supp. 3d 50, 53 (D.D.C. 2018) (acknowledging that "Iran has never entered an appearance in this action"); *see also Bob Jones Univ. v. Simon*, 416 U.S. 725, 740 n.11 (1974) (finding decision lacked "precedential weight" where the case did not "involve[e] a truly adversary controversy").

It is black letter law that federal courts should not create federal common law to displace state-created rules in the absence of strong justifications. *See Rodriguez v. FDIC*, 140 S. Ct. 713, 718 (2020) (emphasizing "the care federal courts should exercise before taking up an invitation to try their hand at common lawmaking").  "[C]ases in which judicial creation of a special federal rule would be justified" are "'few and restricted,'" *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 87 (1994) (citation omitted), and creating a federal rule "must be necessary to protect uniquely federal interests." *Rodriguez*, 140 S. Ct. at 717 (citation and internal quotation marks omitted).  Federal judge made law may also have the consequence of impeding upon the autonomy and independence of states by preempting state law signaling federalism concerns. Bradford R. Clark, "Federal Common Law: A Structural Reinterpretation," 144 U. Pa. L. Rev. 1245, 1248 (1996).

In sum, both the common law wrongful death claims and the Anti-Terrorism Act (18 U.S.C. § 2333) claims are subject to applicable state law.  Since the decedent's domicile state has a much greater interest in the outcome of this litigation and the eventual administration of each 9/11 decedent's estate, the March 15 Report should be corrected.  Here, assuming that a decedent was domiciled in New York or New Jersey (the case for all of the *Ashton-Dickey* Plaintiffs represented here), New York and New Jersey State law determines the parameters of each wrongful death claim – *viz.*, who is authorized to pursue the death claim and which "heirs" are entitled to recover.  This is true also as to the Anti-Terrorism Act ("ATA") claims simply because the ATA's text and legislative history do not provide answers to these questions, and a federal court should resort to applicable state law to "fill in" the gaps in a federal, statute-created cause of action, as it has done when dealing with other federal claims for damages[22]; creating

---

[22]    When Congress expressly defines a statute's preemptive reach, and the definition provides "a reliable indicium" of congressional intent as to what should be left to state authority, there is a

federal common law in such instances,[23] and ignoring otherwise applicable state law, lacks viable precedent.

**B.   The Court Should Decline to Adopt the Report's Recommendation that No Statute of Limitations Will Be Applied to Taliban Claims Because the Dismissal of Untimely Claims Is Required To Ensure Both Justice & Reasonable Docket Management.**

Magistrate Judge Netburn began her analysis of the statute of limitations issue with the correct statement that "[o]n January 2, 2013, Congress extended the statute of limitations for ATA cases related to the 9/11 attacks to January 2, 2019" (R&R at 8), but then she went on to hold that "the Court declines to dismiss *sua sponte* claims against the Taliban as time-barred." The *Ashton-Dickey* Plaintiffs respectfully seek review of this ruling since it is contrary not only to good sense (it promotes an *ad infinitum* filing of lawsuits in this MDL litigation), it is also contrary to law, equity and the practical needs of the judicial system.

The Report correctly states that as a general matter, a party's failure to plead an affirmative defense, like a statute of limitations, leads to a forfeiture[24] of that defense. *Davis v.*

---

"reasonable inference" that Congress did not intend to preempt matters beyond that reach. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288 (1995).

[23]      *See, e.g., Sager v. City of Woodland Park*, 543 F. Supp. 282, 290 (D. Colo. 1982) (rejecting constitutional claim of siblings); *Carter v. City of Emporia*, 543 F. Supp. 354 (D. Kan. 1982) (only heirs may bring wrongful death actions under Kansas law). For example, courts that have considered the availability of § 1983 wrongful death claims by siblings who do not possess the right to sue under state law have generally refused to recognize a constitutional interest that can be enforced through a § 1983 wrongful death damage suit.  *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1245-48 (7th Cir. 1984); *Sager v. City of Woodland Park*, 543 F. Supp. 282, 290 (D. Colo. 1982); *Sanchez v. Marquez*, 457 F. Supp. 359, 362-63 (D. Colo. 1978); *Brazier v. Cherry*, 293 F.2d 401, 409 (5th Cir. 1961) ("Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits. Therefore, a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988.") (citations omitted).  A similar result should be reached here.

[24]      Although litigants and jurists have sometimes used the terms "waiver and forfeiture" interchangeably, they have different meanings.  *See Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17, n.1 (2017).  "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted).  The Taliban forfeited—rather than waived—the

*Bryan*, 810 F.2d 42, 44-45 (2d Cir. 1987) ("If a defendant fails to assert the statute of limitations defense, the district court *ordinarily* should not raise it *sua sponte*.") (citations omitted and emphasis added).  There is, however, an exception to this general rule: if an affirmative defense implicates "values beyond the concerns of the parties," the district court has "the authority— though not the obligation—to raise a forfeited . . . defense on [its] own initiative."  *Wood v. Milyard*, 566 U.S. 463, 472, 473 (2012); *see also Arizona v. California*, 530 U.S. 392, 412 (2000) (forfeited *res judicata* defense may be raised *sua* sponte in "special circumstances").  This is especially true where a failure to enforce a statute of limitations will adversely affect other plaintiffs who have filed viable and timely claims.

### 1. There Must Always Be a Reasonable End to Litigation.

Under the Report, no statute of limitations ever exists as to any defendant-in-default.  This leads not only to absurd and unjust results, it invites serious consequences.  The Magistrate Judge has opened the floodgates to thousands of potential plaintiffs who may now file 9/11 claims in the decades to come against any defendant-in-default, and this is at the expense of the judiciary and the plaintiffs who have filed timely claims (for the reasons set forth below).  Surely, that cannot be correct.  And untimely actions should be dismissed for the benefit not only of those who have filed timely claims, but also for effective docket control and judicial management.  Thousands of plaintiffs have already been added belatedly to this litigation against the Taliban (and Iran) and now, based the March 15 Report, more will likely follow (every individual claiming any alleged injury resulting from the aftermath of the 9/11 events).

### 2. The *Ashton-Dickey* Plaintiffs have standing to assert a statute of limitations defense against untimely claims that will dilute the recoveries of the *Ashton-Dickey* Plaintiffs.

---

statute of limitations defense.  It did not "deliberately steer[] the District Court away from the [timeliness] question and towards the merits."  *See Wood v. Milyard*, 566 U.S. 463, 474 (2012).

In footnote 4 of the Report (R&R at 9), Magistrate Judge Netburn contends that "the Dickey Plaintiffs do not have standing to assert the Taliban's defenses against the other parties," but no "standing" precedent is cited in support of this claim.  In fact, the *Ashton-Dickey* Plaintiffs do have "standing" because they are asserting claims that are directly adverse to those asserted by other claimants seeking funds from an anticipated limited fund of money.[25]  *See* the accompanying Declaration of Plaintiff Lisa O'Brien.

The United States Supreme Court has made clear that a future injury constitutes an Article III injury in fact if the threatened injury is *certainly impending*, or there is a *substantial risk* that the harm will occur.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013). To establish standing, plaintiffs must demonstrate that they have (1) "suffered an injury in fact" (2) that "was caused by the defendant [or an adverse party]," and which (3) "would likely be redressed by the requested judicial relief."  *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020).  In turn, an injury in fact requires "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  While an alleged risk of future harm may suffice, a mere "possible future injury" or even an "objectively reasonable likelihood" of a future injury is not enough to meet the injury in fact requirement.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–10 (2013).  Instead, the future injury must be "certainly impending" or there must be "a substantial risk that the harm

---

[25]    If any money is recovered from any damage awards against the Taliban it may come from the assets held in the name of Afghanistan's central bank, Da Afghanistan Bank ("DAB"), held at the Federal Reserve Bank of New York (the "FRBNY").  When the Republic of Afghanistan fell in August 2021, the DAB held approximately $7 billion in assets at the FRBNY.  *See* ECF MDL#8866 at 6.  In February 2022, President Biden issued an executive order titled "Protecting Certain Property of Da Afghanistan Bank for the Benefit of the People of Afghanistan."  Exec. Order No. 14,064, 87 Fed. Reg. 8391 (Feb. 11, 2022).  The frozen, limited assets of the DAB are now sought by the plaintiffs herein, through appeal from an Order of this Court.  ECF MDL#8866.

will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted).  Here, injuries have already occurred – when this Court awarded wrongful death damage awards against the Islamic Republic of Iran to "non-heirs" asserting untimely legal claims – and those Iran default judgments were subsequently converted to awards issued by the U.S. Victims of State Sponsored Terrorism Fund ("USVSST"); the awards to parents and siblings diluted/reduced the award amounts received by heirs; that wrongful action is expected to continue if Taliban default judgments are entered in favor of untimely claims (and they dilute the recoveries of timely filed claims from a limited fund of money). *See* footnotes 27 and 28 below.

Accompanying these Objections is the Declaration of Plaintiff Lisa O'Brien dated March 28, 2023, which shows that many of the *Ashton-Dickey* Plaintiffs are directly competing for wrongful death damages with the untimely claims asserted by "non-heirs" under state law (parents and siblings of the decedent), since if there is a limited fund of money from which damages will be paid, the *Ashton-Dickey* Plaintiffs will recover diluted (less) damages.[26]

We offer, as one example, the wrongful death claims asserted based on the death of Timothy M. O'Brien, a 9/11 decedent who perished on September 11, 2001 while working for Cantor Fitzgerald.  Among the *Ashton-Dickey* Plaintiffs are Mr. O'Brien's widow, Lisa O'Brien, who is pursuing a wrongful death claim in this litigation as the state-court-appointed "personal representative" of the estate of Timothy M. O'Brien, on behalf of herself and her three children. The parents and siblings of Timothy M. O'Brien have, however, filed their own legal actions

---

[26]     *See In re World Trade Ctr. Disaster Site Lit.*, 769 F. Supp. 2d 650, 652 (S.D.N.Y. 2011) (recognizing that recovery of one set of plaintiffs can dilute the recovery of another set of plaintiffs: "Napoli Bern [plaintiffs' law firm] had conflicting obligations.  If the 59 Plaintiffs were admitted to the SPA, as many of them requested, the final settlement amount would be spread thinner, affecting in particular the most severely injured Plaintiffs, the "Tier 4" Plaintiffs, whose recoveries were variable and dependent on how much of the fixed settlement amount would remain after the less severely injured Plaintiffs had been paid. . . On the other hand, Napoli Bern had to make any possible arguments it could on behalf of these 59 Plaintiffs. Any way one looks at it, Napoli Bern's common representation of these 59 Plaintiffs and its thousands of other Plaintiffs put the firm in conflict.").

seeking wrongful death damages against the Islamic Republic of Iran and the Taliban, separate and apart from the claims of Lisa O'Brien.

Set below are the default judgment awards issued by this Court on the wrongful death claims against the Islamic Republic of Iran to the various family members of 9/11 decedent, Timothy M. O'Brien (non-heirs and heirs):

| Non-Legal Heirs of Timothy O'Brien Awarded Solatium Damages Against Iran | | | | |
|---|---|---|---|---|
| Date Action Filed | Action | Attorneys | Name (Relation to Decedent) | Solatium Award |
| 12/18/2015 Burnett ECF#1 | Burnett et al. v. The Islamic Republic of Iran, No. 15-cv-09903 | Motley Rice LLC | Bernard J. O'Brien (Parent) | $8,500,000 7/31/2017 ECF#3666 |
| " | " | " | Marilyn O'Brien (Parent) | $8,500,000 7/31/2017 ECF#3666 |
| " | " | " | Robert L. O'Brien (Sibling) | $4,250,000 9/6/2019 ECF#5087 |
| " | " | " | Kathleen Tighe (Sibling) | $4,250,000 7/31/2017 ECF#3666 |
| " | " | " | Patrick O'Brien (Sibling) | $4,250,000 7/29/2019 ECF#4706 |
| " | " | " | Therese A. Visconti (Sibling) | $4,250,000 4/27/2018 ECF#3986 |
| 09/04/2019 ECF#5087 | " | " | Kevin O'Brien (Sibling) | $4,250,000* 9/6/2019 ECF#5087 |
| - | [No DJ Filed Yet] | - | Sean O'Brien (Sibling) | $4,250,000 [No DJ Filed Yet] |
| Total Solatium Damages Awarded to Non-Heirs Thus Far | | | | $38,500,000 |

*We have been unable to determine when and if Kevin O'Brien was added as a party-plaintiff, but he was issued a default judgment award.

| Legal Heirs of Timothy O'Brien Awarded Solatium Damages against Iran[27] | | | | |
|---|---|---|---|---|
| Date Action Filed | Action | Attorneys | Name (Relation to Decedent) | Solatium Award |
| 09/10/2002 *Burlingame* ECF#1 | *Burlingame, et al. v. Laden, et al.,* 02-cv-7230 (now *Ashton*) | Law Office of John F. Schutty P.C. | Lisa O'Brien (Spouse) | $12,500,000 01/07/2020 ECF#5452 |
| " | " | " | John O'Brien (Child) | $8,500,000 01/07/2020 ECF#5452 |
| " | " | " | Madeline O'Brien (Child) | $8,500,000 01/07/2020 ECF#5452 |
| " | " | " | Jacqueline O'Brien (Child) | $8,500,000 01/07/2020 ECF#5452 |
| **Total Solatium Damages Awarded to Legal Heirs Against Iran** | | | | **$38,000,000** |

Awards against Iran were granted without regard to whether the statute of limitations of the Foreign Sovereign Immunities Act was satisfied (10-year statute of limitations). Non-heirs and heirs then proceeded into the USVSST where a limited amount of funds were available to be shared amongst claimants.[28] One cannot deny that, as a result of an enormous number of non-

---

[27]     The Estate of Timothy M. O'Brien was also awarded economic loss damages of $94,984,220 (ECF MDL#5376), but the U.S. Victims of State Sponsored Terrorism Fund ("USVSST") limited the legal "heirs" of Mr. O'Brien to a total cap of $35 million (solatium plus economic loss damages) before the "heirs" USVSST awards were calculated, while individual "immediate family members" were given a cap of $20 million "for 9/11 family members who are not a 9/11 spouse or 9/11 dependent." What is undeniable is that the recoveries of parents and siblings necessarily decreased the Fund's assets and limited what is available to "heirs." *See* USVSST website, FAQ 4.1, http://www.usvsst.com/faq.php.

[28]     The USVSST Fund implicates "values beyond the concerns of the parties." This is so because it "has only finite funding available to pay claims on a pro rata basis." *See* Letter from Sen. Grassley and Rep. Goodlatte to Sec'y Tillerson, https://www.judiciary.senate.gov/imo/media/doc/2017-09-27%20CEG,%20Goodlatte%20to%20Tillerson(Sudan%20Sanctions).pdf [https://perma.cc/S92Q-5JW2] (Sept. 27, 2017). The pro rata payments are "based on the amounts outstanding and unpaid on eligible claims, until all such amounts have been paid in full" or the fund terminates in 2039. 34 U.S.C. § 20144(d)(3)(A)(i), (e)(6). *See* USVSST website, FAQ 4.1, http://www.usvsst.com/faq.php. That means payments to any individual claimant are "dependent on other claimants' awards." Supplemental Report from the Special Master at 3, U.S. Victims of State Sponsored Terrorism Fund (Aug. 2017), http://www.usvsst.com/docs/USVSST%20Fund%20Supplemental%20Congressional%20Report%208-2-

heirs entering the USVSST Fund (most, if not all of whom had filed untimely legal actions), heirs (like Lisa O'Brien and her children) received smaller (diluted) distributions (an injury-in-fact).

Set below are the default judgment application awards sought regarding the wrongful death claims filed by the various family members of 9/11 decedent, Timothy M. O'Brien (non-heirs and heirs) against the Taliban:

---

2017.pdf [https://perma.cc/67AT-67UZ]. If this Court refuses to recognize the district courts' authority to consider timeliness *sua sponte*, all past, present or future filers against Iran and the Taliban may have their recoveries diminished by untimely claimants who obtain default judgments payable by a "Fund." "In general, eligible claims will be paid on a *pro rata* basis out of available funds, based on the amounts outstanding and unpaid on eligible claims, until all those amounts have been paid in full or the USVSST Fund sunsets in 2039." USVSST website, FAQ 4.1, http://www.usvsst.com/faq.php.

| Non-Heirs of Timothy O'Brien Who Have Requested Solatium Damages against the Taliban | | | | |
|---|---|---|---|---|
| **Date Action Filed** | **Action** | **Attorneys** | **Name (Relation to Decedent)** | **Solatium Awards Sought** |
| 04/29/2017 ECF #3663 | *Burnett et al. v. Al Baraka Inv. Dev. Corp., et al.,* No. 03-cv-9849 | Motley Rice LLC | Bernard J. O'Brien (Parent) | $8,500,000 01/20/2022 ECF#7618 |
| " | " | " | Marilyn O'Brien (Parent) | $8,500,000 " " |
| " | " | " | Robert L. O'Brien (Sibling) | $4,250,000 " " |
| " | " | " | Kathleen Tighe (Sibling) | $4,250,000 " " |
| " | " | " | Patrick O'Brien (Sibling) | $4,250,000 " " |
| " | " | " | Therese A. Visconti (Sibling) | $4,250,000 |
| 10/25/2022 ECF #8679-1 | " | " | Kevin O'Brien (Sibling) | $4,250,000 09/26/2022 ECF#8559 |
| " | " | " | Sean O'Brien (Sibling) | $4,250,000 " " |
| **Total Solatium Awards Sought Against the Taliban by Non-Heirs** | | | | **$42,500,000** |

| Legal Heirs of Timothy O'Brien Seeking Solatium Damages against the Taliban | | | | |
|---|---|---|---|---|
| **Date Action Filed** | **Action** | **Attorneys** | **Name (Relation to Decedent)** | **Solatium Awards Sought** |
| 09/10/2002 *Burlingame* ECF#1 | *Burlingame, et al. v. Laden, et al.,* 02-cv-7230 (now *Ashton*) | Law Office of John F. Schutty P.C. | Lisa O'Brien (Spouse) | $12,500,000 08/17/2022 ECF#8386 |
| " | " | " | John O'Brien (Child) | $8,500,000 " " |
| " | " | " | Madeline O'Brien (Child) | $8,500,000 " " |
| " | " | " | Jacqueline O'Brien (Child) | $8,500,000 " " |
| **Total Solatium Award Sought Against the Taliban by Legal Heirs** | | | | **$38,000,000** |

Again, a limited fund of money is expected to be available to all plaintiffs making claims against the Taliban.[29]  Again, awards to non-heirs, who have filed untimely claims, will, at a minimum, reduce the recoveries of Mrs. Lisa O'Brien and her children (injury-in-fact) from the Taliban and the limited fund of money that may be available.

> **3. This Court, *sua sponte*, has the right and obligation to dismiss untimely claims to address unusual, but serious institutional issues here.**

Magistrate Judge Netburn previously asked counsel to address the question of whether the Court may address this statute of limitations issue *sua sponte* as to claims belatedly asserted against the Taliban (MDL ECF#8778) and the undersigned attorney addressed that issue in a

---

[29]     Like the money that may be awarded through by the USVSST (a limited fund), any money that may flow to plaintiffs here will likely flow from what is presently held at the FRBNY in the name of the DAB Bank and that, again, is a limited fund of money sought by those who have filed timely claims, as well as those who have filed untimely claims.

legal memorandum submitted on December 22, 2022 (MDL ECF#8814).[30]   However, the

Magistrate Judge wholly failed to address a line cases cited to her.  We advised the Magistrate

Judge that it is now well-established, through Supreme Court precedent, that a district court has

the "inherent power" to dismiss a case *sua sponte* without prompting by an adverse party.  *See,*

*e.g., Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962);[31] *Arizona v. California*, 530 U.S. 392, 412-

13 (2000)*; Leonhard v. United States*, 633 F.2d 599, 608, fn. 11 (2d Cir. 1980); *Wright v.*

*Rensselaer Cty Jail,* 771 Fed.Appx. 58, 59-60 (2d Cir. 2019).  These decisions address a district

court's power to protect important institutional interests of the court.

Here, the enormous and unmanageable size of the ever-expanding docket in this MDL

litigation, and the Magistrate Judge's failure to enforce a statute of limitations defense in favor of

those plaintiffs who have filed timely claims, directly implicates the institutional interests of the

judiciary.  While our judicial system generally relies on a contest of adversaries, requiring an

assertion and contested resolution of an affirmative defense, a narrow but recognized

exception exists when the viability of a subset of plaintiffs' claims implicates the court's

power to protect its own important institutional interests.  *See Arizona,* 530 U.S. at

---

[30]      In fact, the Court here is being asked to react to objections filed by a set of plaintiffs with adverse interests, so this Court is *not* acting *sua sponte*.  *Sua sponte* refers to action taken by the court without the prompting of the parties.  Here, the Court will be taking action on objections filed by plaintiffs with adverse interests to the untimely filed claims.  Standing exists to assert these objections (*see* the accompanying O'Brien Declaration).  Moreover, while in the normal course of events, a defaulting defendant may appropriately punished by a court by deeming the statute of limitations forfeited, here, where a limited fund of money, not in the possession of that defaulting defendant, will likely be used to satisfy the judgments of the plaintiffs, why should ultra-untimely plaintiffs be granted judgments that will dilute the recoveries of plaintiffs who have had timely claims for close to two decades?  This is certainly not a just result – untimely claims will otherwise "swallow" timely claims.

[31]      In *Link, supra,* the Supreme Court noted that courts have always had the power to dismiss for failure to prosecute, and explained "[t]he power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts."  *Id.* at 629-30. This authority is an inherent power "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Id.* at 630-31.  A level of control over the docket by this Court is desperately needed here.

412; *Link,* 370 U.S. at 629-31.   In *Link*, the Supreme Court concluded that a district court possesses the "inherent power" to dismiss a case *sua sponte* for failure to prosecute, explaining that such authority derives from "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."   370 U.S. at 630-31. That is this case, especially here, where large groups of adverse plaintiffs are now vying for what is a limited source of money and thousands of plaintiffs have been belatedly added to this litigation to dilute what may be paid to timely claimants.   "Quite aside from the interests of the individual parties in a lawsuit, a district court has an important interest in keeping its docket from becoming clogged with dormant cases and in ensuring that a party does not use the court as an instrument of fraud or deceit."   *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 654 (4th Cir. 2006).[32]

The Second Circuit has definitively ruled:

> **The district court has the power to dismiss a complaint sua sponte for failure to state a claim**, *Robins v. Rarback,* 325 F.2d 929 (2d Cir. 1963), *cert. denied,* 379 U.S. 974, 85 S.Ct. 670, 13 L.Ed.2d 565 (1965); *see* 5 C. Wright A. Miller, *Federal Practice and Procedure* § 1357, at 593 (1969).  **There appears to be no reason why the same rule should not apply to a dismissal on statute of limitations grounds, at least where, as here, the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.**  *See* 10 *id.* § 2719.

*Leonhard v. United States*, 633 F.2d 599, 609, n. 11 (2d Cir. 1980) (emphasis added); *see also Wright v. Rensselaer Cty Jail,* 771 Fed.Appx. 58, 59-60 (2d Cir. 2019) (summary order) ("While untimeliness is an affirmative defense, a district court can sua sponte dismiss untimely claims where the defense is apparent on the face of the complaint.") (italics omitted) (citation omitted); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal of complaint as

---

[32]     *See also Lassiter v. City of Phila.*, 716 F.3d 53, 55 (3d Cir. 2013) (in raising the statute of limitations *sua sponte*: "Rule 16 of the Federal Rules of Civil Procedure contemplates that a trial court should assume an 'active managerial role' in the litigation process to expedite the efficient disposition of a case.  At a Rule 16 conference, a district court 'may consider and take appropriate action' on a broad variety of topics, including 'formulating and simplifying the issues, and eliminating frivolous claims or defenses[.]'  Fed.R.Civ.P. 16(c)(2)(A).") (citation omitted).

frivolous on statute of limitations grounds); *Walters v. Indus. and Com. Bank of China*, 651 F.3d 280, 293 (2d Cir. 2011) ("district courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where "the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted," *citing Leonhard, supra*); *see also* Fed. R. Civ. P. 16(c)(2) ("*Matters for Consideration*.  At any pretrial conference, the court may consider and take appropriate action on the following matters: (A) formulating and simplifying the issues and eliminating frivolous claims or defenses….").[33]

    While we acknowledge the Second Circuit decision, *Davis v. Bryan*, 810 F.2d 42, 44-45 (2d Cir. 1987) ("If a defendant fails to assert the statute of limitations defense, the district court *ordinarily* should not raise it *sua sponte*.") (citations omitted and emphasis added), the *Davis* decision uses the word "ordinarily" to describe whether the statute of limitations should be deemed waived, and the statement is otherwise *dicta* in the opinion ("We wish to make it clear that we do not express the opinion that the appellees have waived the statute of limitations defense; any such determination is for the district court to make when and if that defense is asserted by the appellees.").  Nonetheless, the Second Circuit has on several occasions indicated that a court has the discretion to raise the defense *sua sponte,* and should raise it.  *See Walters*, *supra*, 651 F.3d at 293; *Leonhard, supra,* 633 F.2d 599 at 609 n.11 (2d Cir. 1980); *Reches v. Morgan Stanley & Co.*, No. 16-3294-cv (2d Cir. Apr. 14, 2017) (holding that district court did not err in dismissing plaintiff's claim *sua sponte* as time-barred, where "all of

---

[33]    One of the greatest problems identified with the MDL process is its tendency to attract meritless claims.  *See In re Mentor Corp. Obtape Transobturator Sling Prods.*, MDL Docket No. 2004, 2016 U.S. Dist. LEXIS 121608, *7-8 (M.D. Ga. Sep. 7, 2016) (Land, J.) ("based on fifteen years on the federal bench and a front row seat as an MDL transferee judge on two separate occasions, the undersigned is convinced that MDL consolidation for products liability actions does have the unintended consequence of producing more new case filings of marginal merit in federal court, many of which would not have been filed otherwise").  Dockets overloaded with meritless claims harm the judiciary because they decrease public confidence in the courts and consume judicial resources.

the operative facts [for dismissal] were set forth in the [c]omplaint."). And, as seen above, the

Supreme Court as well has recognized that a limitations defense may "'implicat[e] values beyond

the concerns of the parties.'" *Day v. McDonough*, 547 U.S. 198, 205 (2006) (quoting *Acosta v.*

*Artuz*, 221 F.3d 117, 123 (2d Cir. 2000)); *United States v. Mitchell*, 518 F.3d 740, 748 (10th Cir.

2008) (court may raise defense *sua sponte* when "the issue implicates the court's power to protect

its own important institutional interests") (citing *Arizona v. California*, 530 U.S. 392,

412 (2000)).[34] In fact, in the context of this MDL litigation, where thousands of untimely actions

have been filed and tens of thousands of untimely claims may be filed in the years ahead, this

Court must set an end to such a chaotic docket and protect those who have filed timely claims.[35]

Time bars are "wise and beneficial," *Bell v. Morrison*, 26 U.S. (1 Pet.) 351, 360 (1828) (Story,

---

[34]    Consistent with these principles, a number of courts have found that they have the discretion to raise the statute of limitations *sua sponte* and have dismissed time-barred claims when presented with a request for a default judgment. *See, e.g., Taiwan Civil Rights Litig. Org. v. Kuomintang Bus. Mgmt. Comm.*, 486 F. App'x 671, 671-72 (9th Cir. 2012) ("[T]he district court did not err by addressing the statute of limitations issue *sua sponte* in ruling on plaintiffs' motion for default judgment."); *Donell v. Keppers*, 835 F. Supp. 2d 871, 877 (S.D. Cal. 2011) (prior to entering default judgment, "it is proper for the Court to consider sua sponte whether Plaintiff's claims are barred by the relevant statute of limitations"); *Joe Hand Promotions, Inc. v. Tu Minh Nguyen*, 2011 WL 1642306, at *2 (N.D. Cal. May 2, 2011) (same); *J & J Sports Prods., Inc. v. Martinez*, 2010 WL 1038467, at *6 (N.D. Cal. Mar. 2, 2010) (same); *see also Baker v. Cuomo*, 58 F.3d 814, 819 (2d Cir.) (stating in dictum that dismissal is "appropriate if it appears from the face of the complaint that the action is barred, for example by expiration of the statute of limitations"), *vacated in part on other grounds*, 85 F.3d 919 (2d Cir. 1996) (en banc) (per curiam); *Rampersad v. Deutsche Bank Sec., Inc.*, 2004 WL 616132, at *9 (S.D.N.Y. Mar. 30, 2004) (suggesting that time barred claims against defaulting defendant may be dismissed when the defect is apparent from face of complaint, but dismissing on other grounds).

[35]    Today's overloaded dockets demand procedures that reduce burdensome litigation levels. By keeping stale claims out of court, statutes of limitations relieve courts "of the burden of trying stale claims when a plaintiff has slept on his rights." *Burnett v. New York Cent. R.R.*, 380 U.S. 424, 428 (1965) (footnote omitted); *see United States v. Western Pac. R.R.*, 352 U.S. 59, 72 (1956) ("purpose of [statutes of limitations] is to keep stale litigation out of the courts"). Limitations periods also preserve the credibility of the judicial system by barring claims that "have been allowed to slumber until evidence has been lost, memories faded, and witnesses disappeared." *Order of R.R. Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349 (1944) (quoted in *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974)). Chief Justice Marshall warned that having no limitation on rights of action would be "utterly repugnant to the genius of our laws." *Adams v. Woods*, 6 U.S. (2 Cranch) 336, 342 (1804) (dicta).

J.), "tend[ing] to the peace and welfare of society," *M'Cluny v. Silliman*, 28 U.S. (3 Pet.) 270, 278 (1830).

To be timely in their own right, the wrongful death actions against the Taliban based on the Anti-Terrorism Act must have been commenced no later than January 1, 2019. *See* National Defense Authorization Act for Fiscal Year 2013, Pub. L. No. 112-239, § 1251(c), 126 Stat. 1632, 2017 (2013). Many of the Taliban wrongful death (and personal injury) actions here were, however, filed long after this deadline.

The PI&WD PEC has promoted an "unlimited" statute of limitations as against the Taliban. Among other things, the PEC has argued that one wrongful death lawsuit, filed by any family member, protects any subsequent wrongful death lawsuit filed by any other family member of the decedent against the statute of limitations.[36] *See, e.g.*, ECF MDL#5095 at 1, 5096 at 1 and 5097 at 1; *see also* recent, belated filing by 2,900 plaintiffs seeking to be added to the litigation against the Taliban – MDL ECF#7654, 7657 and 7660. The *Ashton-Dickey* Plaintiffs have objected to this suggestion, contending that a "personal representative" appointed under New York State law (or other decedent-domicile-state law) is the *only* individual authorized to represent those individuals expressly within the "estate" of their decedent as defined in N.Y. Estate Powers & Trusts Law § 5-4.4 (and similar state statutes governing other death claims), and that individual must file a timely claim (and such action protects *only* legal heirs). *See Shiekh v. Republic of Sudan*, 308 F.Supp.3d 46, 55 (D.D.C. 2018) ("The possibility of nearly endless litigation takes on a new and more troubling dimension when paired with the murky public policy consequences of enabling untimely judgments"), *rev'd on other grounds by*, *Maalouf v. Republic of Iran*, 923 F.3d 1095, 1114 (D.C. Cir. 2019) (holding: district court may

---

[36]    This selfish position by the PEC should be seen for what it is – attorneys attempting to protect their untimely claims and ensure that the judicial "checkbook" remains open for future claims not yet asserted.

not raise a statute of limitations defense *sua sponte* against a defendant in default, but the Circuit Court acknowledged that it could not recognize an argument by plaintiffs with timely claims, who alleged an adverse interest to that of untimely plaintiffs -- since the recoveries of timely-filed plaintiffs were allegedly diluted in the USVSST Fund by the untimely claimants -- "because the Fund was not addressed by the District Courts. We therefore have no record on which to assess the accuracy or import of the parties' claims.").

Finally, we ask that the Court consider the prescient words of another district court judge who addressed a similar issue not long ago:

> For how long should such claims be allowed?  From the standpoint of the judicial branch, only two principled time limits present themselves: either the ten-year statute of limitations Congress has imposed, or no time limit at all.  After all, if a sixteen-year (or a twenty-nine-year) gap is acceptable, there is little reason to prohibit suits brought forty, fifty, or more years after the fact.  The claimants could easily glean evidence of a defendant's culpability by dusting off old volumes of the Federal Supplement.  As long as each crop of plaintiffs could show that they were victims or proper third-party claimants, they could continue racking up sizable damages awards for decades in response to a single act.

*Shiekh v. Republic of Sudan*, *supra*, 308 F.Supp.3d at 55.[37]

Will there ever be an end to the filing of new legal actions and default judgment applications in this litigation against the defendants-in-default?  Will innumerable new claimants now belatedly file new actions against the defendants-in-default without any future time limit imposed?  The March 15, 2023 Report allows plaintiffs to "continue piggybacking off of older decisions for decades to come to extract multimillion dollar judgments from absent [defendants-in-default]."  *Shiekh v. Republic of Sudan*, *supra*, 308 F.Supp.3d at 54.  The Report thus undermines the purpose of a statute of limitations — a limitations period generally serves to

---

[37]     It is noteworthy that in another "terrorist" case pending in this District, *Owens v. Taliban*, No. 22-cv-1949-VEC (S.D.N.Y.), Judge Caproni noted *sua sponte* that statute of limitations problems infect the plaintiffs' claims, given that their complaint was filed almost 24 years after the relevant terrorist attacks.  *See* Owens Dkt. ECF#34 at 6 (transcript of March 28, 2022 hearing).

prevent plaintiffs from sleeping on their rights, promote judicial economy, and provide parties with certainty. *Rotella v. Wood*, 528 U.S. 549, 555 (2000) ("[T]he basic policies of all limitations provisions [are] repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities."); *Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424, 428 (1965) ("[C]ourts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights.").[38]  If the Report is upheld, and the statute of limitations is not enforced in some manner, this Court will literally be advancing the interests of an always-still-expanding subset of plaintiffs who have "slept on their rights," at the expense of plaintiffs who filed timely actions and preserved the ongoing litigation for a belated throng of newcomers.[39]

---

[38]    "Modern statutes of limitations trace directly back to 1624, and embody the notion that fixing the periods for bringing damages actions is a legislative function that imposes certainty and predictability upon how long a defendant should be subject to suit."  *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 259 (2d Cir. 1997).

[39]    The principle of "laches" also supports this argument.  In *Costello v. United States* 365 US 265, 282 (1961), United States Supreme Court defined laches as "Lack of diligence by the party against whom the defense is asserted combined with prejudice to the party asserting the defense."  Laches is associated with the maxim of equity: *Vigilantibus non dormientibus æquitas subvenit* ("Equity aids the vigilant, not the sleeping ones [that is, those who sleep on their rights]").  Ibrahim, Ashraf Ray, "The Doctrine of Laches in International Law," 83 Va. L. Rev. 647, 692 (April 1997).

## CONCLUSION

For the reasons set forth above, and pursuant to Fed. R. Civ. P. 72(b)(2), the *Ashton-Dickey* Plaintiffs respectfully request that the Court decline to adopt the R&R (MDL ECF#8925) and issue a new Order that dismisses the untimely actions filed against the Taliban and otherwise recognizes the applicability of the estate administration laws of each decedent's domicile state.

Dated:   New York, New York
       March 28, 2023

Respectfully submitted,

By: _*John F. Schutty*_____

John F. Schutty, Esq.
(JS2173)
Law Office of John F. Schutty, P.C.
Attorneys for the *Ashton-Dickey* Plaintiffs
445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (646) 345-1441
Fax: (917) 591-5980
john@johnschutty.com