# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

**VIA ECF**

April 4, 2023

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

   RE: *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

The Plaintiffs Executive Committees ("PECs"), on behalf of Plaintiffs with claims against Al Rajhi Bank ("ARB"), and ARB write in accordance with the Court's Order at ECF No. 8812 directing the parties to submit a joint letter setting forth their joint or separate proposals for expert discovery.

**Plaintiffs' Expert Discovery Statement**

Plaintiffs and ARB exchanged scheduling proposals, and Plaintiffs then offered a compromise proposal, which the parties have agreed to with very modest modifications requested by ARB. The parties' agreed upon scheduling proposal is as follows:

(1) Deadline for Plaintiffs to identify their experts and provide a summary of the topics they will address: May 25, 2023;

(2) Deadline for Plaintiffs to serve their expert disclosures and affirmative reports: July 13, 2023;

(3) Deadline for Al Rajhi Bank to serve its rebuttal expert reports and disclosures: September 8, 2023; and

(4) Deadline for completion of expert discovery: October 6, 2023.

Expert Testimony Is Appropriate and Necessary. There is no merit to ARB's plea that Plaintiffs should be preemptively precluded from exercising their rights under the Federal Rules to offer expert testimony in support of their claims and theories of jurisdiction as to ARB. As numerous appellate courts have held, expert testimony is especially appropriate in terrorism cases. *Kilburn*, 376 F.3d at 1132 (jurisdiction satisfied based solely upon the declaration of an expert witness); *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 704 (7th Cir. 2008). Courts in this Circuit and elsewhere consistently have held that expert testimony is proper to address issues relating to "the history, structure and leadership of al Qaeda … [and] the means by which terrorist organizations raise money." *United States v. Kassir*, 406 Fed. Appx. 526, 528-29 (2d Cir. 2011) ("*Kassir II*"); *United States v. Kassir*, 2009 WL 910767 *4-5 (S.D.N.Y. April 2, 2009) ("*Kassir*

―――――――――――――

*I*") (collecting cases); *Strauss v. Credit Lyonnais, S.A.* 925 F. Supp. 2d 414, 438-9 (E.D.N.Y. 2013).

While fact discovery yet to be completed will define the specific contours of appropriate and necessary expert opinions,[1] there are a range of issues within the scope of the Second Circuit's mandate that plainly warrant expert testimony. For instance, the Second Circuit's mandate requires development of the record concerning the "nature" of the support ARB provided to al Qaeda, an inquiry that necessarily implicates al Qaeda's organizational and financial structure, and requires an understanding of the identities and roles of the intertwined entities and allies involved in channeling resources to al Qaeda and the September 11th attacks. *Kassir,* 406 Fed. Appx. at 528-29. The assessment of ARB's "intent" is necessarily also informed by the background of al Qaeda's systematic targeting of the United States, and events indicating that ARB was expressly aware of its role in supporting al Qaeda's efforts to attack America. *Id.* And as this Court recognized in its discovery order, ARB's anti-money laundering and counter-terrorism financing policies and adherence (or not) to international banking standards (such as Know-Your-Customer standards) go "to the root of this jurisdictional inquiry." ECF No. 7378 at 19. Forensic analysis of transactions handled by ARB may bear on those issues. Expert testimony may also be appropriate to address issues relating to government investigative reports concerning ARB, such as the nature of those reports and procedures governing their creation and distribution, and codes and other technical aspects of those reports. These are matters that are beyond the knowledge of the average layperson, and thus proper and necessary areas for expert testimony. *Kassir II* at *5.

**Al Rajhi Bank's Expert Discovery Statement**

Expert testimony is neither necessary nor appropriate in the "limited" jurisdictional discovery ordered against Al Rajhi Bank. This "limited" discovery focuses on the Bank's alleged "specific intent." But intent is not an appropriate topic for expert testimony. Plaintiffs cannot establish that any expert testimony they might offer would be permissible or helpful to the trier of fact. Accordingly, the Court should deny Plaintiffs' request.

**I.      Expert Testimony Is Unnecessary And Inappropriate For "Limited" Jurisdictional Inquiry Into The Bank's Specific Intent**

The Second Circuit and this Court have directed that the focus of the limited jurisdictional discovery inquiry is on Plaintiffs' allegations that the Bank acted with the requisite "specific intent." *See Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank*, 779 F. App'x 66, 68, 69 (2d Cir. 2019); Order 4, 6, 9, 13, 15, 18, 19 (Nov. 22, 2021), ECF No. 7378 ("Nov. 2021 Order") (focusing fact discovery on the Bank's purported "specific intent"). As this Court explained, the "proper scope of discovery" as to Al Rajhi Bank, as authorized by the Second Circuit, is limited

―――――――――――――

[1] Plaintiffs' Second Motion to Compel is pending before the Court, along with ARB's motion to quash Plaintiffs' long pending subpoena to JP Morgan Chase. In addition, Plaintiffs reached an agreement with the Department of Justice last summer to modify a subpoena to the FBI, and the FBI advised Plaintiffs near the end of last year that it would respond to Plaintiffs' modified subpoena by the end of March 2023. The DOJ recently advised, however, that the FBI is behind schedule, but is working to finish its response as soon as possible.

Honorable Sarah Netburn
April 4, 2023
Page 3

_____

to Plaintiffs' allegations "that Al Rajhi Bank provided financial services and donations to charities that it knew financially supported al Qaeda and provided financial services to known extremist operatives . . . with the *specific intent* to further al Qaeda's terrorism against the United States." Order 4 (emphasis in Order) (quoting *Underwriting Members of Lloyd's Syndicate 2*, 779 F. App'x at 68). The Court further explained that all jurisdictional discovery as to the Bank, including expert testimony, "'must . . . be limited to the essentials necessary to determining the preliminary question of jurisdiction'" — here focused on whether the Bank acted with the requisite "specific intent" — and "must 'target[] information pertinent to'" that inquiry. *Id*. at 3 (alterations in original) (additional internal quotations marks omitted) (quoting *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F. Supp. 2d 392, 400 (S.D.N.Y. 2002)).

This Court's clear demarcation of the scope of jurisdictional discovery to establishing the Bank's specific intent leaves no room for expert testimony in this case. *First*, it is black-letter law that experts cannot testify on the "'knowledge, motivations, intent, state of mind, or purposes' of others." *Fleischman v. Albany Medical Ctr.*, 728 F. Supp. 2d 130 (N.D.N.Y. 2010) (quoting *In re Fosamaz Products Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009)); *see also, e.g.*, *Au New Haven v. YKK Corp.*, No. 15-cv-3411, 2019 WL 1254763, at *13 (S.D.N.Y. Mar. 19, 2019) (Netburn, M.J.) ("Because science has not yet invented a way to read minds, 'inferences about the intent or motive of parties or others lie outside the bounds of expert testimony.'" (quoting *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y.2004))); *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 46 (S.D.N.Y. 2016) ("An expert may not testify on the intent, motives or states of mind of corporations . . . ." (quoting *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 546)); *On Track Innovations Ltd. v. T-Mobile U.S., Inc.*, 106 F. Supp. 3d 369, 412 (S.D.N.Y. 2015) (explaining expert cannot "simply theorize as to a party's intent based on the factual record"). Nor can Plaintiffs call experts to theorize about the "business purpose" or "real purpose" behind any account transactions. *See Lippe v. Bairnco Corp.*, 288 B.R. 678, 688 (S.D.N.Y. 2003) (excluding expert testimony about the "true motivation" and intentions behind certain business transactions).

Indeed, in the ATA context, courts have likewise made clear that expert testimony on intent, knowledge, and state of mind is inadmissible. *See Linde v. Arab Bank*, 922 F. Supp. 2d 316, 324 (E.D.N.Y. 2013) (excluding Plaintiffs' expert testimony "as to the state of mind, intent, or motive of a government, a charitable entity, or a person"); *Linde v. Arab Bank*, 920 F. Supp. 2d 282, 285 (E.D.N.Y. 2011) (rejecting expert opinions on intent as "not contain[ing] relevant expert evidence" (citing *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 547)).

Although the Court allowed expert discovery against other jurisdictional defendants in this MDL, expert testimony into state of mind and intent was not challenged, nor were any of those jurisdictional discovery inquiries focused on "specific intent." *See* Ltr. to Judge Netburn 5 (May 31, 2019), ECF No. 4566 (jurisdictional defendants not challenging expert discovery); Order 23 (Mar. 28, 2018), ECF No. 3946 (ordering jurisdictional discovery against Saudi Arabia into "nature and scope of agency" of its alleged agents). Indeed, in discovery against the Jurisdictional

---

and Merits Defendants,[2] none of Plaintiffs' purported experts offered testimony on topics relevant to specific intent. *See* Pls. Ltr. 1-3 (Sept. 29, 2021), ECF No. 7159 (providing list of Plaintiffs' experts and topics).

*Second*, the factual inquiries that the Second Circuit authorized as potentially indicative of specific intent are likewise inappropriate topics for expert opinion. Those inquiries pose purely factual questions: "(1) when the alleged support was given to al Qaeda, (2) what support was given, (3) whether the support was 'earmarked' for use in specific schemes or attacks not directed at the United States, or (4) specifically how these defendants were involved in the process of providing support to al Qaeda." Nov. 2021 Order 5 (quoting *Underwriting Members of Lloyd's Syndicate 2*, 779 F. App'x at 69). Plaintiffs thus must answer those questions by presenting factual evidence, and not expert testimony masquerading as fact. *See In re Fosamax*, 645 F. Supp. 2d at 192 (excluding expert testimony summarizing factual evidence and noting "to the extent such evidence is admissible, it should be presented to the jury directly") Plaintiffs may not paper over the lack of facts indicating specific intent by attempting to bolster the record with conclusions, narratives, or hearsay from any so-called expert. *See id.* ("[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." (alteration in original) (quoting *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005))); *see also LinkCo, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551, at *1-2 (S.D.N.Y. July 16, 2002) (excluding expert testimony "contain[ing] arguments and conclusory statements about questions of fact masquerading behind a veneer of technical language").

The Court has rejected prior attempts by plaintiffs in this MDL to rely on improper expert testimony instead of factual evidence. Plaintiffs against Dubai Islamic Bank ("DIB") offered testimony against DIB from purported expert Jonathan Winer, discussing "whether 'DIB knowingly aided and abetted Bin Ladin and Al Qaeda to support terrorism, which culminated in the 9/11 terrorist attacks on the United States,' and whether 'DIB's senior management supported or were aligned with Bin Ladin and Al Qaeda's global jihad against the United States.'" Order 3 (Mar. 6, 2023), ECF No. 8905. This Court struck that report, finding it "consists largely of quotes (in plain English) from the declassified CIA documents, deposition transcripts, and other documentary evidence," and therefore "does almost nothing to help a jury understand the facts." *Id.* at 11; *see also In re Fosamax Products Liab. Litig.*, 645 F. Supp. 2d at 192 (excluding expert testimony that would have provided "a narrative of select regulatory events through the summary or selective quotation from internal [defendant] documents, regulatory filings, and the deposition testimony of [defendant's] employees").

## II. Any Expert Discovery Ordered Should Be Strictly Limited

Should the Court permit expert testimony against the Bank, the Court should order that it be strictly limited in scope to specific and narrow topics identified by the Court as being necessary for the

---

[2] Dubai Islamic Bank, World Assembly of Muslim Youth and World Assembly of Muslim Youth International, International Islamic Relief Organization, Muslim World League, Abdullah Omar Naseef, Abdullah bin Saleh al Obaid, Abdullah Mohsen al Turki, Adnan Basha, and Yassin Kadi. *See* Pls. Ltr. 1-3 (Sept. 29, 2021), ECF No. 7159.

Honorable Sarah Netburn
April 4, 2023
Page 5

_____

Court's jurisdictional inquiry, and that the topic of the Bank's purported knowledge and intent, and any expert testimony masquerading as fact, shall be excluded.

Any expert discovery be completed as expeditiously as possible. The Bank reserves the right to present rebuttal testimony and depose any expert witness offered against the Bank and accepted by the Court.

Respectfully submitted,

COZEN O'CONNOR

By:  /s/  Sean P. Carter
SEAN P. CARTER
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel.: (215) 665-2105
Email: scarter1@cozen.com

*On behalf of the Plaintiffs' Executive Committees*

cc:     All MDL Counsel of Record (via ECF)

LEGAL\62697173\1