# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
)
IN RE:  TERRORIST ATTACKS ON      )    Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001          )    ECF Case
_____)

This document relates to:  *All Actions*

**SAUDI ARABIA'S OPPOSITION TO THE *ASHTON* PLAINTIFFS'
RULE 72 OBJECTIONS TO THE MARCH 13, 2023 ORDER**

Michael K. Kellogg
Gregory G. Rapawy
Andrew C. Shen
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900
(202) 326-7999 (fax)

*Attorneys for the Kingdom of Saudi Arabia*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

STANDARD OF REVIEW ...................................................................................................... 8

ARGUMENT ............................................................................................................................ 8

I.       Judge Netburn's Order Applied the Correct Legal Standards ................................ 8

II.      Judge Netburn's Order Was Within Her Broad Discretion .................................. 10

         A.      The *Ashton* Plaintiffs Present No Basis To Reopen
                 Discovery .................................................................................................. 10

         B.      The *Ashton* Plaintiffs Unreasonably Delayed Their
                 Proposed Motion To Compel ...................................................................... 14

         C.      Reopening Discovery Would Prejudice Saudi Arabia ............................... 15

CONCLUSION ........................................................................................................................ 17

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36 (2d Cir. 2012) .................................7

*Aurelius Cap. Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16
    (2d Cir. 2014).........................................................................................................4

*Bakalar v. Vavra*, 851 F. Supp. 2d 489 (S.D.N.Y. 2011) .........................................................8, 15

*Carminucci v. Pennelle*, 2021 WL 4507713 (S.D.N.Y. Sept. 30, 2021).......................................10

*Catalano v. BMW of N. Am., LLC*, 2016 WL 3406125 (S.D.N.Y. June 16, 2016) ........................4

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips
    Petroleum Co.*, 105 F.R.D. 16 (S.D.N.Y. 1984)........................................................... 16-17

*Freund v. Republic of France*, 592 F. Supp. 2d 540 (S.D.N.Y. 2008),
    *aff'd sub nom. Freund v. Société Nationale des Chemins de fer Français*,
    391 F. App'x 939 (2d Cir. 2010) .................................................................................5, 10

*Ghana Supply Comm'n v. New England Power Co.*, 83 F.R.D. 586
    (D. Mass. 1979)....................................................................................................17

*Gilmore v. Palestinian Interim Self-Government Auth.*, 843 F.3d 958
    (D.C. Cir. 2016) ....................................................................................................16

*Hulley Enters. Ltd., In re*, 400 F. Supp. 3d 62 (S.D.N.Y. 2019) ......................................................8

*Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491 (S.D.N.Y. 2015).......................................9

*Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229 (2d Cir. 2007) .........................................15

*Keurig Green Mountain Single-Serve Coffee Antitrust Litig., In re*,
    336 F.R.D. 400 (S.D.N.Y. 2020) .............................................................................16

*Leviton Mfg. Co. v. Greenberg Traurig LLP*, 2011 WL 2946380
    (S.D.N.Y. July 14, 2011) .........................................................................................8

*Lugosch v. Congel*, 443 F. Supp. 2d 254 (N.D.N.Y. 2006).........................................................8

*Mikhaylova v. Bloomingdale's Inc.*, 2022 WL 17986122
    (S.D.N.Y. Dec. 29, 2022) .........................................................................................9

*Ohanian v. Apple*, 2022 WL 576314 (S.D.N.Y. Feb. 25, 2022).....................................................9

*Robinson v. Government of Malaysia*, 269 F.3d 133 (2d Cir. 2001)...........................................15

*Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers of New Jersey*,
    894 F. Supp. 2d 288 (S.D.N.Y. 2012) ................................................................. 15

*Saghir, In re*, 595 F.3d 472 (2d Cir. 2010) ...................................................................... 9

*Saray Dokum ve Madeni Aksam Sanayi Turizm A.S. v. MTS Logistics Inc.*,
    335 F.R.D. 50 (S.D.N.Y. 2020) .................................................................... 8, 9

*650 Fifth Ave. & Related Props., In re*, 934 F.3d 147 (2d Cir. 2019) ........................... 10

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*,
    482 U.S. 522 (1987) .......................................................................................... 16

*Terrorist Attacks on September 11, 2001, In re*:

    454 F. Supp. 2d 220 (S.D.N.Y. 2006) ................................................................. 8

    298 F. Supp. 3d 631 (S.D.N.Y. 2018) ............................................................... 15

*Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506 (2d Cir. 1989) .......... 8

## STATUTES AND RULES

28 U.S.C. § 636(b)(1)(A) ................................................................................................ 8

Fed. R. Civ. P.

    Rule 72 ............................................................................................... 5, 10, 17

    Rule 72(a) ..................................................................................................... 8

## ADMINISTRATIVE MATERIALS

Declassification Reviews of Certain Documents Concerning the Terrorist Attacks
    of September 11, 2001, Exec. Order No. 14,040, 86 Fed. Reg. 50,439
    (Sept. 3, 2021) ............................................................................................ 5, 11

*FBI Records:  The Vault – 9/11 Attacks Investigation and Related Materials*,
    at https://vault.fbi.gov/9-11-attacks-investigation-and-related-materials ..................... 15

## INTRODUCTION

Judge Netburn properly exercised her discretion to deny the *Ashton* Plaintiffs' repetitive, baseless request to reopen jurisdictional discovery and to compel Saudi Arabia to search its confidential intelligence files.  Jurisdictional document discovery closed more than three years ago, in January 2020.  Judge Netburn has denied three previous requests for discovery from Saudi Arabia's intelligence agencies for lack of any "actual contemporaneous evidence," ECF No. 6577, at 10 – as opposed to rumor and conjecture – that Omar Al Bayoumi had any link to his country's intelligence services.  Plaintiffs objected to those denials, and this Court overruled their objections in full.  The current dispute is more of the same.

Contrary to the *Ashton* Plaintiffs' contentions, documents that the FBI released last year do not "confirm" their assertions, but merely repeat hearsay indistinguishable from Plaintiffs' previous submissions.  Far more telling is the FBI's May 27, 2021 Electronic Communication closing its investigation into Al Bayoumi, Fahad Al Thumairy, and Musaed Al Jarrah, which concluded that the three men "did not knowingly conspire to assist the [Al Qaeda] hijackers in furtherance of the 9/11 attack"; that there was "insufficient evidence" to prosecute them; and that, "nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged."  ECF No. 7584-1, at 9-11.

Saudi Arabia's renewed motion to dismiss will show that the evidence in this case points to the same conclusion that the FBI reached.  Plaintiffs' allegations that Al Jarrah tasked Al Bayoumi and Al Thumairy with helping their country's enemy Al Qaeda are not true.  Judge Netburn's ruling that Plaintiffs "have 'had a fully adequate opportunity for discovery,'" ECF No. 8923, at 2, was well within her discretion.  The *Ashton* Plaintiffs' endless sideshows and diversions should come to an end, and this case should come to closure.

**BACKGROUND**

1.      The two-decade history of this case includes repeated – and repeatedly discredited – speculation that Omar Al Bayoumi is or was connected to Saudi Arabia's intelligence services. As early as 2004, the 9/11 Commission addressed this issue, stating that its "investigators who . . . dealt directly with [Al Bayoumi] and studied his background f[ou]nd him to be an unlikely candidate for clandestine involvement with Islamic extremists."  ECF No. 3669-2, at 218.  A year later, in 2005, a joint FBI-CIA report to Congress concluded, "contrary to media speculation," that there was "no information to indicate that . . . Omar al-Bayoumi" was an "intelligence officer[] of the Saudi Government."  ECF No. 3669-6, at 2.  More recently, Al Bayoumi himself testified that he is not a Saudi intelligence officer, has never been one, and has never had any assignment from a Saudi intelligence agency.  ECF No. 7584-2, at 724:18-725:13.[1]

The *Ashton* Plaintiffs have relied on speculation to the contrary and presented it to the Court as though it were fact.  For example, in their 2017 opposition to Saudi Arabia's motion to dismiss, they argued that Al Bayoumi "was a Saudi undercover intelligence agent," ECF No. 3781, at 10, citing statements by former FBI agents that they "believed" Al Bayoumi "was a Saudi intelligence agent," ECF No. 3780-4, ¶ 8 (cited in ECF No. 3781 as "Ex. 1"); that he "acted like a Saudi intelligence officer, in my opinion," ECF No. 3783-12, at 16 (cited in ECF No. 3781 as "Ex. 12A"); and that there were "reports from individuals who believed that [he] was a Saudi intelligence officer," *id.*

---

[1] ECF No. 7854-2 and ECF No. 7854-5, cited below, were filed under seal as excerpts from transcripts that include material subject to the Court's protective orders.  No redactions to this opposition are required under the general MDL protective order, ECF No. 1900.  The FBI has confirmed that none is required under the FBI protective order, ECF No. 4255.

This Court did not authorize jurisdictional discovery on the theory that Al Bayoumi was an intelligence officer or agent.  Instead, the Court cited and quoted the 9/11 Commission's and the joint FBI-CIA findings that he was not.  *See* ECF No. 3946, at 23.  But the Court reasoned that those findings did not "directly contradict Plaintiffs' allegations that Bayoumi was tasked by Thumairy, at the behest of a more senior Saudi official, with providing substantial assistance to Hazmi and Mihdhar," and allowed "limited and targeted jurisdictional discovery" to determine whether evidence would support those allegations.  *Id.*

2.       During jurisdictional discovery, Plaintiffs made repeated attempts to seek discovery of Saudi Arabia's intelligence agencies.  Judge Netburn denied each request. Each time Plaintiffs objected, this Court overruled their objections.

a.       In early 2018, at the start of discovery, Plaintiffs argued for discovery of Saudi Arabia's intelligence agencies because of what they called "substantial evidence that Mr. Bayoumi was a Saudi intelligence agent."  ECF No. 4015, at 26:10-20.  That purported "substantial evidence" included a statement of a retired FBI agent who "believed" that Al Bayoumi "was a Saudi intelligence agent."  ECF No. 3780-4, ¶ 8.  On May 24, 2018, Judge Netburn rejected those "suspicions" as "not evidence."  ECF No. 4015, at 26:21-27:10.  She denied discovery of Saudi Arabia's intelligence agencies "without prejudice," *id.* at 31:13-32:7, to Plaintiffs renewing their request if backed by "some actual evidence," *id.* at 26:21-27:10*.

b.       On November 30, 2018, after a substantial document production from Saudi Arabia, Plaintiffs renewed their motion to compel discovery from Saudi Arabia's intelligence agencies.  *See* 11/30/18 Motion at 15-16 (sealed).  They again relied on statements found in FBI documents about "a perception in the community that Bayoumi was . . . with the Saudi

intelligence services," and that "[o]thers in the Islamic community would say to stay away from Bayoumi because he spies for the Saudi government."  Reply Ex. 69, at FBI208-09.[2]

On July 22, 2019, Judge Netburn rejected Plaintiffs' renewed motion.  She ruled that she would require Saudi Arabia "to search its intelligence agencies only if, weighing the interests of comity, actual contemporaneous evidence suggests responsive documents may exist." ECF No. 6577, at 10 (cleaned up).  Applying that standard, she found that Plaintiffs had "fail[ed] to establish a connection between Bayoumi and [intelligence] agencies they propose to be searched."  *Id.* at 36-37.  As support, she cited the principle that "international comity requires the Court to demonstrate due respect for 'any sovereign interest expressed by a foreign state,'" including "'a foreign sovereign's diplomatic and military affairs.'"  *Id.* at 10 (quoting *Catalano v. BMW of N. Am., LLC*, 2016 WL 3406125, at *6 (S.D.N.Y. June 16, 2016), and *Aurelius Cap. Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16, 18 (2d Cir. 2014)).

**c.**      On August 5, 2019, Plaintiffs sought reconsideration of that ruling on the basis that Judge Netburn had purportedly "overlooked" materials connecting Al Bayoumi and Al Thumairy to Saudi Arabia's intelligence agencies.  8/5/2019 Motion at 9-10 (sealed).   On November 25, 2019, Judge Netburn denied reconsideration.  She explained that she had considered the materials but had rejected them because (among other things) "[t]he Court cannot rely on the unsupported conclusions of others to order additional discovery" and must instead look "to the alleged facts underlying those opinions."  ECF No. 6579, at 12-16.

**d.**      On October 10, 2019, Plaintiffs served Saudi Arabia with new discovery requests again demanding that Saudi Arabia to search its intelligence files.  Saudi Arabia sought a

---

[2] When filed, Plaintiffs' Reply Exhibit 69 was subject to the FBI protective order, ECF No. 4255, but the paragraph quoted above has since been publicly released as EO14040-000158.

protective order.  On January 7, 2020, Judge Netburn granted that request in relevant part.  She reiterated the need for "actual contemporaneous evidence" to justify discovery of Saudi Arabia's intelligence files, but found again that Plaintiffs had provided only "the unsupported conclusions of others."  ECF No. 6581, at 12, 13.

      **e.**      On February 4, 2021, this Court overruled Plaintiffs' Rule 72 objections to Judge Netburn's orders.  As to the July 22 and November 25, 2019 orders, the Court concluded that Judge Netburn did not err by requiring "actual contemporaneous evidence" justifying discovery of Saudi Arabia's intelligence agencies.  ECF No. 6612, at 3.  Instead, she had "carefully considered the Plaintiffs' document requests and weighed the 'serious comity concerns' implicated by requests to search a foreign sovereign's sensitive law enforcement, intelligence, and defense archives."  *Id.* at 3-4 (quoting *Freund v. Republic of France*, 592 F. Supp. 2d 540, 563 (S.D.N.Y. 2008), *aff'd sub nom. Freund v. Société Nationale des Chemins de fer Français*, 391 F. App'x 939 (2d Cir. 2010)).  As to the January 7, 2020 order, Plaintiffs did not challenge and therefore waived any objection to Judge Netburn's refusal to order discovery from Saudi Arabia's intelligence agencies.  ECF No. 6613, at 1 n.1.

      **3.**      Plaintiffs have also repeatedly asked to extend or renew jurisdictional discovery based on documents released, or to be released, by the FBI.

      **a.**      Jurisdictional written discovery ended on January 13, 2020, ECF No. 5777, at 43; jurisdictional fact depositions ended on June 30, 2021, ECF No. 6546.  Opening expert reports had been due September 15, 2021.  ECF No. 6872.  But on September 3, 2021, after the close of jurisdictional fact discovery, President Biden issued Executive Order No. 14,040, which directed certain executive agencies (including the FBI) to review for declassification and release certain categories of documents related to the 9/11 attacks.

On September 17, 2021, Judge Netburn extended the time for expert discovery to permit Plaintiffs' experts to review the newly released FBI materials.  ECF No. 7117.  She set a new deadline for opening expert reports of April 1, 2022, with expert discovery to close on July 1, 2022.  *Id*.  But she warned Plaintiffs:  "The Court does not expect to modify this schedule barring extraordinary circumstances.  Such circumstances will not include delays in the Government's compliance with the President's September 3, 2021, Executive Order."  *Id.*

     **b.**     Over the months that followed, the *Ashton* Plaintiffs filed more motions seeking more discovery and more time for discovery.  On December 17, 2021, they moved to reopen discovery and to compel Saudi Arabia to produce additional documents based on purportedly new information from the FBI document releases, combined with a motion for reconsideration of this Court's March 2018 order authorizing jurisdictional discovery.  ECF No. 7481; *see also* ECF No. 7431 (related motion for reconsideration by other Plaintiffs).  On March 11, 2022, Plaintiffs (including the *Ashton* Plaintiffs) moved to extend the time for their experts to serve opening reports, asserting that the FBI had been slow in producing documents and their experts needed more time to analyze the FBI production.  ECF No. 7747.

On March 15, 2022, Judge Netburn denied Plaintiffs' motion for an extension of time. ECF No. 7752.  Her order emphasized the "repeated delays and extensions" of jurisdictional discovery and the lack of any "limiting principle" to Plaintiffs' assertions about "purportedly revelatory evidence" and demands for "every last iota of possible material."  *Id.* at 1-2.  She observed that her previous order had set "a firm deadline for expert reports" and had warned that "only 'extraordinary circumstances' would merit yet another delay."  *Id.* at 2.  On March 22, 2022, this Court overruled Plaintiffs' objections to Judge Netburn's order and ordered the parties to proceed as scheduled.  ECF No. 7787.

On February 7, 2023, this Court denied the *Ashton* Plaintiffs' motion to compel, together with their and other Plaintiffs' motions for reconsideration.  ECF No. 8862.  As to the motion to compel, the Court underscored the need for "caution when 'relying on unsupported "conclusions" in investigative documents,'" *id.* at 24 (quoting ECF No. 6579, at 13-14 n.5); rejected the *Ashton* Plaintiffs' attempt to "rehash through . . . newly disclosed FBI reports" arguments that Judge Netburn had "already addressed," *id.* at 25-26; and rebuked them for "impermissibly us[ing] their motion to compel as 'a vehicle for relitigating old issues,'" *id.* at 26 (quoting *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)).

4.      On February 16, 2023, Saudi Arabia asked the Court to set a briefing schedule for a renewed motion to dismiss for lack of subject-matter jurisdiction.  ECF No. 8863.  In response, the *Ashton* Plaintiffs demanded that the Court instead grant them leave to file a motion to compel Saudi Arabia "to provide discovery . . . based on searches for and production of information held by Saudi Arabia's intelligence agencies."  ECF No. 8871, at 1-2.  The *Ashton* Plaintiffs' letter cited to and quoted several of the same documents previously used in their December 2021 and March 2022 requests.[3]  They contended that the Court should "remedy the discovery issues" they raised before setting "any schedule for handling the jurisdictional issues."  *Id.* at 4.

On March 13, 2023, Judge Netburn denied leave for a renewed motion to compel, finding "no compelling reason for reopening" discovery and citing to her earlier order requiring "'extraordinary circumstances'" for any further extension.  ECF No. 8923, at 2.

---

[3] *Compare* ECF Nos. 8871-4 (EO14040-002638 through 2643), 8871-11 (EO14040-000721 through 723), 8871-13 (EO14040-000518 through 521), 8871-15 (EO14040-000588 through 602), *and* 8871-16 (Apr. 4, 2016 FBI electronic communication) *with* ECF Nos. 7747-1 (compilation including EO14040-002638 through 2639), 7747-2 (EO14040-00518 through 523), 7747-3 (Apr. 4, 2016 FBI electronic communication), 7482-1 (compilation including EO14040-000588 through 601 and EO14040-000721 through 723), *and* 7482-4 (same as 7747-3).

## STANDARD OF REVIEW

Parties objecting to a magistrate judge's non-dispositive order bear a "heavy burden." *Leviton Mfg. Co. v. Greenberg Traurig LLP*, 2011 WL 2946380, at *1 (S.D.N.Y. July 14, 2011). They must show that the order was "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1)(A). "[M]agistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." *In re Hulley Enters. Ltd.*, 400 F. Supp. 3d 62, 70 (S.D.N.Y. 2019) (citation omitted; alteration in *Hulley*). This Court gives "particular deference" to Judge Netburn's rulings here because she has been "'deeply involved in discovery matters in the case for years.'" ECF No. 6611, at 2 (quoting *Lugosch v. Congel*, 443 F. Supp. 2d 254, 276 (N.D.N.Y. 2006)).

## ARGUMENT

### I.   Judge Netburn's Order Applied the Correct Legal Standards

Judge Netburn applied the correct legal standard to the *Ashton* Plaintiffs' request to reopen discovery. A party attempting to reopen discovery must show "good cause." *Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011). In assessing good cause, "[a] significant consideration is whether there has already been adequate opportunity for discovery." *Id.*; *see Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) ("[T]he trial court may properly deny further discovery if [a] party has had a fully adequate opportunity for discovery."). Courts may, but need not, apply six other factors as well. *See Saray Dokum ve Madeni Aksam Sanayi Turizm A.S. v. MTS Logistics Inc.*, 335 F.R.D. 50, 52 (S.D.N.Y. 2020).

Here, Judge Netburn determined that "[t]he *Ashton* Plaintiffs present[ ] no compelling reason for reopening" discovery. ECF No. 8923, at 2. "Compelling reasons" are words that courts, including this Court, commonly use to describe a showing of "good cause." *See In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220, 222-23 (S.D.N.Y. 2006) (using

"the most compelling reasons" as a way to describe "a more demanding standard of good cause"). In addition, quoting *Saray Dokum* (which itself applied the "good cause" standard), Judge Netburn observed that Plaintiffs "had a fully adequate opportunity for discovery." ECF No. 8923, at 2. That observation was correct. Plaintiffs had more than three years for jurisdictional fact discovery, including large document productions from Saudi Arabia and the FBI and dozens of party and non-party depositions. They then had another year for expert discovery.

Judge Netburn also properly observed that she had "previously advised the parties that the declassification of intelligence reports under President Biden's September 3, 2021 Executive Order would not be grounds for further extending jurisdictional discovery absent 'extraordinary circumstances.' " *Id.* (quoting ECF No. 7752). As her earlier orders show, she required extraordinary circumstances when granting "a six-month extension beyond the original discovery deadline," making clear that she was setting a "firm deadline." ECF No. 7752, at 2. Orders requiring extraordinary circumstances for further extensions of time are a common and appropriate means of controlling discovery schedules.[4]

It was also appropriate for Judge Netburn to require a showing of "extraordinary circumstances" because the *Ashton* Plaintiffs were in effect seeking reconsideration of the Court's previous orders denying discovery from Saudi Arabia's intelligence agencies. Judge Netburn has rejected such discovery four times, *see* ECF No. 4015, at 26:10-27:10; ECF No. 6577, at 8-11, 36-37; ECF No. 6579, at 10-12; ECF No. 6581, at 12-13, and this

---

[4] *See, e.g.*, *Mikhaylova v. Bloomingdale's Inc.*, 2022 WL 17986122, at *2 (S.D.N.Y. Dec. 29, 2022) (rejecting request for extension of fact discovery based on similar warning); *Ohanian v. Apple*, 2022 WL 576314, at *4 (S.D.N.Y. Feb. 25, 2022) (same); *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 499 (S.D.N.Y. 2015) (discussing denial of motion to amend complaint based on similar warning); *see also In re Saghir*, 595 F.3d 472, 475 (2d Cir. 2010) (per curiam) (discussing similar order entered by court of appeals).

Court denied Plaintiffs' Rule 72 objections to two of those orders, *see* ECF No. 6612; ECF No.

6613.  Reconsideration of a court's rulings is appropriate only in "extraordinary circumstances"

because of "the interests of finality and conservation of scarce judicial resources."  *Carminucci*

*v. Pennelle*, 2021 WL 4507713, at *1 (S.D.N.Y. Sept. 30, 2021).

The *Ashton* Plaintiffs err in relying (at 13) on *In re 650 Fifth Avenue & Related*

*Properties*, 934 F.3d 147 (2d Cir. 2019).  In *650 Fifth Avenue*, the Second Circuit reversed

because the district court had "repeatedly denied" discovery requests so that the record was

"hardly developed" and the claimants did not have "any – let alone a full and fair – opportunity

to present evidence as to the applicability of [a] defense."  *Id.* at 157-58 (cleaned up).  Here,

the record is well developed after years of discovery, and Judge Netburn properly found that

Plaintiffs have had a "fully adequate" opportunity to develop their case.  ECF No. 8923, at 2.

## II.     Judge Netburn's Order Was Within Her Broad Discretion

For three reasons, Judge Netburn acted within her discretion in finding "no compelling

reason" to reopen discovery of Saudi Arabia's intelligence agencies.

### A.     The *Ashton* Plaintiffs Present No Basis To Reopen Discovery

**1.**     Judge Netburn and this Court have ruled that to obtain discovery from Saudi

Arabia's intelligence agencies Plaintiffs must provide "actual contemporaneous evidence

suggest[ing] responsive documents may exist" at those agencies, ECF No. 6577, at 10, and

cannot rely on the "suspicions," ECF No. 4015, at 26:21-27:10, or "unsupported conclusions of

others," ECF No. 6579, at 12-16.  That standard appropriately accounts for "the 'serious comity

concerns' implicated by requests to search a foreign sovereign's sensitive law enforcement,

intelligence, and defense archives."  ECF No. 6612, at 3-4 (quoting *Freund*, 592 F. Supp. 2d

at 563).  The *Ashton* Plaintiffs do not challenge that standard now.

None of the materials relied upon by the *Ashton* Plaintiffs meets that standard.  They principally rely on two documents produced under Executive Order No. 14,040.  *See* ECF No. 8940 (discussing ECF No. 8871-3 and ECF No. 8871-4).  The first is an FBI document dated June 14, 2017 stating that an unknown person "reported" that Al Bayoumi was "a cooptee of the Saudi General Intelligence Presidency (GIP)" and would report "information . . . obtained on persons of interest in the Saudi community" in the United States.  ECF No. 8871-4, at 2-3.  This document contains at least two layers of hearsay and was written by an unknown FBI employee more than 15 years after the 9/11 attacks.  It does not state what knowledge or basis for knowledge (if any) the unknown source purported to have had about Al Bayoumi or Saudi intelligence.  It adds nothing to the "unsupported conclusions of others" that Judge Netburn and this Court have already found insufficient in multiple rulings.[5]

The second document on which the *Ashton* Plaintiffs principally rely is an FBI memorandum "[t]o file" dated July 23, 2021.  ECF No. 8871-3, at 3.  It likewise is not "actual contemporaneous evidence" of anything.  Its stated purpose is "consolidat[ing] information" from other documents; it repeatedly cautions that it "should not be considered an intelligence assessment and is not intended as such."  *Id.* at 3, 6; *see id.* at 5 ("writer is not investigating or re-investigating the 9/11 investigation" but is "cop[ying] . . . information").  Nor, contrary to the *Ashton* Plaintiffs' characterization, does the copied information show that either Al Bayoumi or Al Thumairy was an intelligence agent; it states only that Saudi intelligence agencies were

---

[5] *Cf.* ECF No. 3780-4, ¶ 8 (a "belie[f]" that Al Bayoumi "was a Saudi intelligence agent"); Reply Ex. 69, at FBI208-09 (a "perception in the community that Bayoumi was . . . with the Saudi intelligence services"); ECF No. 3783-12, at 16 (an "opinion" that Al Bayoumi "acted like a Saudi intelligence officer" and "reports from individuals who believed that al-Bayoumi was a Saudi intelligence officer").

"involve[d]" with the Ministry of Islamic Affairs – which employed Al Thumairy, but not

Al Bayoumi.  *Id.* at 12-14.[6]

The remaining documents have similar flaws.  Several do not purport to provide

information about whether Al Bayoumi or Al Thumairy was a Saudi intelligence agent.[7]

Those that touch on that issue merely rehash the same unsupported assertions from other

FBI documents that the *Ashton* Plaintiffs have relied on for years.[8]  Some are after-the-fact

impressions by unknown individuals given years after the actual investigations.[9]  The *Ashton*

Plaintiffs' further suggestion (at 8) that they have additional supposedly relevant materials that

they have declined to share with the Court (even under seal) because the materials are "presently

confidential" should not be taken seriously.

2.     The case against reopening discovery is even stronger because information

revealed in jurisdictional discovery and released by the FBI has contradicted and undermined

---

[6] The document later repeats a 1999 statement from an unnamed source that "Bayayoomi [sic] must be an agent of a foreign power or of Saudi Arabia."  ECF No. 8871-3, at 41.

[7] *See* ECF Nos. 8871-9, 8871-12 (analyses of calls between Al Bayoumi and Saudi government entities other than intelligence agencies); ECF Nos. 8871-11, 8871-13, 8871-14 (reports of interviews not discussing Saudi intelligence agencies).

[8] *See* ECF No. 8871-5, at 3 ("suspected that Albayoumi had some type of affiliation with Saudi Arabian intelligence" and "source information confirmed that Albayoumi was, at the time of the 9/11 attacks, employed as a paid cooptee of Saudi Arabian intelligence services"); ECF No. 8871-6, at 3 ("considered by many in the Muslim community to be a Saudi Arabian intelligence officer, as he would come to the Mosque and video tape everything"); ECF No. 8871-7, at 6 ("felt that he was a[n] undercover agent for Saudi Arabia"); ECF No. 8871-8, at 6 ("everyone, NFI [*i.e.*, 'No Further Information'], in the San Diego Muslim community thought Al Bayoumi was a spy for the Saudi Government" because he "would video tape every event that took place in the community"); ECF No. 8871-10, at 7 ("AL-THUMAIRY, like AL-BAYOUMI, was a possible Saudi Arabian intelligence asset.").

[9] *See* ECF No. 8871-5, at 2 (document dated June 15, 2017 that "investigat[ed] . . . previously provided information"); ECF No. 8871-10, at 2 ("analysis" dated July 18, 2007); ECF No. 8871-12, at 2 ("[r]eview [of] telephone records" dated September 29, 2005); ECF No. 8871-15, at 4 ("derived information" dated September 28, 2010).

the allegations that Plaintiffs proffered as a basis for jurisdictional discovery in the first place. The present objections are not the time for the Court to resolve these matters. But in determining whether Judge Netburn abused her discretion in determining that four years of jurisdictional discovery were enough, it is appropriate to bear in mind that the allegations giving rise to discovery have been thoroughly explored and rebutted by actual evidence.

Al Bayoumi and Al Thumairy, the individuals who allegedly assisted the hijackers, have now testified at deposition. Al Bayoumi testified that he never knew or suspected that Nawaf Al Hazmi and Khalid Al Mihdhar planned to commit a terrorist attack, never directed anyone to assist them, and was never directed by anyone in the Saudi government to assist them. ECF No. 7584-2, at 722:14-23, 724:2-17. He also testified that he was not and had never been a Saudi intelligence officer and never had any assignment for any Saudi intelligence agency. *Id.* at 724:18-725:13. Al Thumairy testified that, before the 9/11 attacks, he had never even heard the names Nawaf Al Hazmi or Khalid Al Mihdhar; and that he never assisted Al Hazmi and Al Mihdhar, never directed anyone to assist them, and never received any directions to assist them. ECF No. 7584-5, at 490:20-493:2.

That testimony is consistent not only with the findings of the 9/11 Commission in 2004, the 2005 joint report of the FBI and CIA, and the 9/11 Review Commission in 2015, *see* ECF No. 3669-2, at 216-19; ECF No. 3669-6, at 2; ECF No. 3669-7, at 101-03, but also with the FBI's May 2021 conclusion closing its investigation into Al Bayoumi, Al Thumairy, and Al Jarrah, *see* ECF No. 7584-1. In that document, the FBI as an institution (rather than an individual agent recopying previous information in a memorandum to the file) stated that the agency's New York field office had "completed all logical and reasonable investigative steps" and that "the FBI has not identified additional groups or individuals responsible for the attack

other than those currently charged." *Id.* at 11.  It further specifically found "insufficient evidence . . . to prosecute Thumairy, Bayoumi, and Al-Jarrah for wittingly conspiring to assist the [Al Qaeda] hijackers in furtherance of the 9/11 attack." *Id.* at 10-11.

      **3.**      The *Ashton* Plaintiffs' accusations (at 2, 12) that Saudi Arabia has "misled this Court" and "commit[ted] a fraud" are unfounded.  As shown above, the new documents on which they rely are evidence of nothing; they certainly are not proof that Al Bayoumi or Al Thumairy worked for Saudi Arabia's intelligence agencies.  In addition, the *Ashton* Plaintiffs' assertion (at 12) that Saudi Arabia had to answer their interrogatories based on all "knowledge" possessed by "its intelligence agency" is contrary to multiple orders of this Court.  Judge Netburn appropriately rejected any such "unrestricted search" as "inconsistent with the limited jurisdictional discovery authorized by Judge Daniels and permitted under the FSIA."  ECF No. 6577, at 53; *see also* ECF No. 6579, at 12-16.  This Court overruled Plaintiffs' objections to her rulings.  ECF No. 6612, at 3-4.  Far from being misled, the Court knew of and approved Saudi Arabia's position that it did not need to provide discovery answers based on information in the possession of its intelligence agencies.

      **B.**      **The *Ashton* Plaintiffs Unreasonably Delayed Their Proposed Motion To Compel**

      An additional factor supporting Judge Netburn's refusal to reopen discovery is the *Ashton* Plaintiffs' delay in seeking leave to file their motion.  Even if the documents at issue contained material new evidence (which they do not), those documents were produced long before the present motion.  Both the documents on which the *Ashton* Plaintiffs primarily rely (the June 14, 2017 document at ECF No. 8871-4, and the July 23, 2021 document at ECF No. 8871-3) were

released on March 2 and 18, 2022.[10]  Yet the *Ashton* Plaintiffs waited almost a year to seek leave to file a motion to compel, making their request only on February 21, 2023, and only in response to Saudi Arabia's request for a briefing schedule for its renewed motion to dismiss.  ECF No. 8871.  Further, the *Ashton* Plaintiffs coupled their request for more discovery with a request to postpone any briefing of Saudi Arabia's renewed motion to dismiss.  *Id.*

Whether their request for more discovery is viewed as a motion for reconsideration of prior orders, as a motion to reopen discovery, or both, the *Ashton* Plaintiffs' delay in pursuing that discovery provides an independent basis for denial.  *See Bakalar*, 851 F. Supp. 2d at 493-94 (citing "whether the moving party was diligent in obtaining discovery" as a relevant factor); *Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d 288, 341 (S.D.N.Y. 2012) (11-month delay between obtaining purportedly new evidence and moving for reconsideration "independently justifies denying the motion").

## C.    Reopening Discovery Would Prejudice Saudi Arabia

Another "relevant factor[ ]" to whether discovery should be reopened is prejudice to the opposing party.  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).  Reopening discovery would prejudice Saudi Arabia's legitimate interest in " 'obtain[ing] an authoritative determination of its amenability to suit at the earliest possible opportunity.' " *In re Terrorist Attacks on September 11, 2001*, 298 F. Supp. 3d 631, 641 (S.D.N.Y. 2018) (quoting *Robinson v. Government of Malaysia*, 269 F.3d 133, 142 (2d Cir. 2001)).

---

[10] *See FBI Records:  The Vault – 9/11 Attacks Investigation and Related Materials*, at https://vault.fbi.gov/9-11-attacks-investigation-and-related-materials (last visited Apr. 2, 2023) (click on links for "Documents Responsive to Executive Order 14040 2(c) Part 4" and "Documents Responsive to Executive Order 14040 2(d) Part 2").  The other documents on which Plaintiffs rely were released no later than April 2022.  *See id.*

The *Ashton* Plaintiffs' contention (at 13) that the discovery they seek would not disrupt the current May 1, 2023 deadline for *Daubert* briefs and October 6, 2023 deadline for Saudi Arabia's motion to dismiss, *see* ECF No. 8896, deserves no weight.  As an initial matter, that is not what they told Judge Netburn.  They instead asked to file their motion to compel "[b]efore any schedule for jurisdictional motions is set" and complained that the "deadlines" Saudi Arabia had proposed "would thwart Plaintiffs' rights to rely and litigate upon a fair and full record before the Court."  ECF No. 8871, at 1-2.  Their revised proposal for discovery in parallel with the Court's schedule was never presented to Judge Netburn.  *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 336 F.R.D. 400, 404 (S.D.N.Y. 2020) ("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to a magistrate's discovery order, and indeed may not be deemed objections at all.") (cleaned up).

In any event, it is not credible for the *Ashton* Plaintiffs to pretend that their endless requests for discovery and reconsideration would not cause further delay if granted.  As Judge Netburn observed in denying one of their previous motions, "extensions in this case seem to beg[e]t more extension requests," and Plaintiffs' requests for more time and more discovery have "no limiting principle."  ECF No. 7752, at 1-2.  Those observations apply equally to the *Ashton* Plaintiffs' current protests.

Finally, the discovery that the *Ashton* Plaintiffs seek would be inherently prejudicial.  Discovery of Saudi Arabia's intelligence agencies would threaten to "'undermine important interests'" of Saudi Arabia in protecting its sensitive intelligence files.  *Gilmore v. Palestinian Interim Self-Government Auth.*, 843 F.3d 958, 968 (D.C. Cir. 2016) (quoting *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n.28 (1987)); *see also Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum*

*Co.*, 105 F.R.D. 16, 25 (S.D.N.Y. 1984) (foreign government may assert privilege to protect "important military secrets, extremely sensitive foreign policy questions, and other national security-related issues") (citations omitted); *Ghana Supply Comm'n v. New England Power Co.*, 83 F.R.D. 586, 590 (D. Mass. 1979) (same).  Any motion to compel production from Saudi Arabia's intelligence agencies would thus involve weighty questions of privilege, leading to more disputes and more delay.

## CONCLUSION

The *Ashton* Plaintiffs' Rule 72 objections should be overruled.

Dated:  April 4, 2023

Respectfully submitted,

*/s/  Michael K. Kellogg*
Michael K. Kellogg
Gregory G. Rapawy
Andrew C. Shen
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900
(202) 326-7999 (fax)

*Attorneys for the Kingdom of Saudi Arabia*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 4, 2023, I electronically filed the foregoing Opposition to the *Ashton* Plaintiffs' Rule 72 Objections to the March 13, 2023 Order using the ECF system, which sent notice of filing in this matter to all counsel of record.

*/s/  Michael K. Kellogg*
Michael K. Kellogg

*Attorney for the Kingdom of Saudi Arabia*