

Robert K. Kry
MoloLamken LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
T: 202.556.2011
F: 202.556.2001
rkry@mololamken.com
www.mololamken.com

April 5, 2023

The Honorable Sarah Netburn
United States Magistrate Judge
Thurgood Marshall Courthouse
40 Foley Square, Room 430
New York, NY  10007

BY ECF

      Re:   *In re Terrorist Attacks on September 11, 2001*, No. 1:03-md-01570 (S.D.N.Y.)

Dear Judge Netburn:

Defendant Dallah Avco respectfully submits this response to the Court's March 13, 2023, request for submissions on the briefing schedule for renewed dispositive motions.  Dkt. 8923.

## I.    Page Limits for Briefs / Role of *Ashton* Plaintiffs

Dallah Avco plans to submit a renewed motion to dismiss, or in the alternative, for summary judgment.  Dallah Avco and the Plaintiffs' Executive Committees ("PECs") have agreed that Dallah Avco's opening brief shall not exceed 40 pages, plaintiffs' opposition shall not exceed 40 pages, and Dallah Avco's reply shall not exceed 20 pages.  In Dallah Avco's view, those page limits are adequate to permit presentation of the relevant legal issues that relate to Dallah Avco while affording a balanced number of pages to each side.

Despite the agreement between the PECs and Dallah Avco, the so-called *Ashton* plaintiffs have demanded to file their own separate opposition to Dallah Avco's motion, with no particular page limit, in addition to the 40-page opposition the PECs plan to file.  Dallah Avco strongly objects to that demand for several reasons.

*First*, the whole point of having a plaintiffs' executive committee is to consolidate briefing among the many different plaintiff groups participating in this litigation.  The governing case management order authorizes the "Plaintiffs' Executive Committee" – not individual plaintiff groups – to "conduct all pretrial proceedings involving common legal and factual issues, whether relating to liability or damages, on behalf of *all* plaintiffs."  Dkt. 248-2 § 10 (emphasis added).  The PECs shall "[p]repare, serve, and file motion papers and argue motions."  *Id.* § 11(a).  The order contemplates that individual plaintiff groups will participate primarily by "giv[ing] advice and suggestions to the Plaintiffs' Executive Committees."  *Id.* § 13.  There is only one exception:  Individual plaintiff groups "may, when necessary, present individual and divergent positions to the positions of the Plaintiffs' Executive Committees **at pretrial**

*conferences*." *Id.* (emphasis added). That exception does not apply here. The *Ashton* plaintiffs must therefore oppose Dallah Avco's motion by offering input and suggestions to the PECs, not by filing their own separate opposition brief.

Dallah Avco acknowledges that this Court allowed the *Ashton* plaintiffs to file a separate response to the Kingdom of Saudi Arabia's original motion to dismiss back in 2017. Dkt. 3514 at 2, 4 (adopting approach while observing that the Court was "extremely displeased with the conduct of counsel for the *Ashton* plaintiffs"). But the considerations that may have justified a departure from the case management order in that context do not apply here. The *Ashton* plaintiffs opposed consolidated briefing on their claims against the Kingdom based on the alleged "substantial differences in the factual allegations between the [PECs' Consolidated Amended Complaint] and the *Ashton* complaint." *Id.* at 1-2. Here, by contrast, the relevant *Ashton* complaint contains only **three paragraphs** that mention Dallah Avco. Dkt. 1463 ¶¶ 451, 452, 454. Throughout the case, both the PECs and the *Ashton* plaintiffs have treated Dallah Avco as a sideshow to their claims against the Kingdom. *See, e.g.*, Dkt. 4246 at 1 (accusing Dallah Avco of "[a]ssuming the role of the proverbial tail attempting to wag the dog"). To the extent the PECs and the *Ashton* plaintiffs have pressed their claims against Dallah Avco at all, they have focused on the same theory, which concerns Dallah Avco's role as a government contractor processing salary and benefit payments for Omar Al Bayoumi as an employee on the Presidency of Civil Aviation's ANSS project (payments Dallah Avco made at the PCA's direction and subject to its reimbursement).

In those circumstances, any separate brief from the *Ashton* plaintiffs would be unnecessary and duplicative. There is nothing in the *Ashton* plaintiffs' pleadings or other submissions that suggests that a separate brief would offer anything beyond what the PECs could address in their own submission. There is thus no reason to depart from the case management order and permit the *Ashton* plaintiffs to submit their own separate brief against Dallah Avco.

***Second***, the *Ashton* plaintiffs' request to submit their own separate brief is a transparent attempt to evade the consequences of this Court's sanctions order, which removed the *Ashton* plaintiffs' lead counsel – the Kreindler firm – from the Plaintiffs' Executive Committees. Dkt. 8544 at 63. Allowing the *Ashton* plaintiffs to file their own separate brief on par with the PECs' submissions would allow the Kreindler firm to continue to play a lead role in this litigation, when the clear intent of this Court's sanctions order was that the Kreindler firm should play a reduced role going forward.

The *Ashton* plaintiffs have attempted to justify their separate participation on the ground that Kreindler's recent filings have been co-signed by two other firms, Speiser Krause, P.C. and Baumeister & Samuels, P.C., which continue to hold (non-chair) seats on the Plaintiffs' Executive Committees. This Court should see that approach for what it is: a mere artifice to evade the Court's sanctions order. The Speiser and Baumeister firms did not co-sign the *Ashton* plaintiffs' opposition to the Kingdom's original motion to dismiss in 2017. Dkt. 3781. Nor did they co-sign the many submissions Kreindler attorneys signed when they were PEC members. The Speiser and Baumeister firms did not attend any of the depositions of Dallah Avco's witnesses in London and Madrid. And so far as we recall, they were never involved in the multiple years of document discovery against Dallah Avco either. The Kreindler firm should not

2

be permitted to use the Speiser and Baumeister firms as proxies to evade the consequences of the Court's sanctions order.

Even if the Speiser and Baumeister firms had played a meaningful role prosecuting the claims against Dallah Avco, that would not justify allowing the *Ashton* plaintiffs to file a separate opposition to Dallah Avco's dispositive motion. The case management order states that the PECs will file briefs "on behalf of ***all*** plaintiffs" in this litigation, not multiple briefs on behalf of different subgroups of plaintiffs. Dkt. 248-2 §§ 10-11 (emphasis added). Thus, the fact that other PEC members have co-signed Kreindler submissions does not justify allowing Kreindler to file separate briefs. If anything, the presence of the Speiser and Baumeister firms on the PECs underscores that the *Ashton* plaintiffs are already represented on those committees and that their interests will be adequately represented in the briefing the PECs submit.

***Third***, allowing the *Ashton* plaintiffs to make their own separate submissions would impose needless burdens on the Court and would be unfair to Dallah Avco.

The Kingdom's and Dallah Avco's dispositive motions will undoubtedly require a good measure of this Court's time and attention even without duplicative briefing from multiple plaintiff groups. This Court's interest in judicial efficiency thus weighs strongly against allowing the *Ashton* plaintiffs to file a redundant response to Dallah Avco's motion.

Allowing filings by multiple plaintiff groups would also be unfair to Dallah Avco. The agreed-upon briefing schedule between the PECs and Dallah Avco is balanced for both sides. By contrast, if the Court permits the *Ashton* plaintiffs to file their own separate opposition in addition to the PECs' 40-page opposition, Dallah Avco will have to respond to twice as many opposition briefs for no legitimate reason.

Accordingly, the Court should approve the PECs' and Dallah Avco's agreed-upon page limits for briefing on Dallah Avco's dispositive motion and should prohibit the *Ashton* plaintiffs from making separate submissions. If the Court is nonetheless inclined to allow the *Ashton* plaintiffs to submit a separate brief, it should deduct the submission from the 40 pages allocated to the PECs. If the Court allocates more than 40 pages to plaintiffs in the aggregate, it should increase the page limits for Dallah Avco's reply on a page-for-page basis.

**II.     Page Limits for Rule 56.1 Statements**

Because Dallah Avco will be moving for summary judgment in the alternative, Dallah Avco will be submitting a Local Rule 56.1 statement of material facts in connection with its motion. The PECs have indicated that they will respond to that statement and also file their own counterstatement of material facts. Dallah Avco requests that the Court set reasonable page limits for those submissions, specifically 40 pages for Dallah Avco's statement, 40 pages for the PECs' response (excluding the portions that reproduce Dallah Avco's statements), 40 pages for the PECs' counterstatement, and 40 pages for Dallah Avco's response (excluding the portions that reproduce the PECs' statements).

There is good cause for imposing such limits here. Dallah Avco has now been in jurisdictional discovery for ten years, and the resulting evidentiary record is lengthy. Page limits will encourage the parties to focus their submissions on the most important evidence, rather than adopting a "kitchen sink" approach of citing anything remotely relevant and hoping that the length of the submissions alone will dissuade the Court from granting summary judgment. Page limits will thus result in more concise and focused submissions and avoid needlessly wasting the Court's and the parties' time.

Absent page limits on Rule 56.1 statements, moreover, parties may try to circumvent the page limits on briefs by shifting their evidentiary analysis to the Rule 56.1 statements. *See Ramos v. City of New York*, No. 15 Civ. 6085, 2017 WL 3267736, at *1 n.1 (S.D.N.Y. July 31, 2017) (noting attempt "to bypass the Court's twenty-five page limit for memoranda by including arguments in their 56.1 statement"), *on reconsideration*, 2017 WL 3575697 (S.D.N.Y. Aug. 17, 2017). Page limits on Rule 56.1 statements will help avoid that approach.

The PECs contend that there should be no page limits on Rule 56.1 statements because the Local Rules do not impose any. But courts have authority to impose page limits even when the rules do not. Many judges in this District impose page limits on Rule 56.1 statements in ***all*** cases. *See* Individual Practices of Judge Vincent L. Briccetti § 2(E)(ii) (Feb. 3, 2020) ("The moving party's Statement of Material Facts pursuant to Local Civil Rule 56.1 may not exceed 25 double-spaced pages without prior permission of the Court."); Individual Practices in Civil Cases: Philip M. Halpern, U.S.D.J. § 4(E)(v) (May 2, 2022) ("The movant's Rule 56.1 Statement shall not exceed 25 double-spaced pages without prior permission of the Court."); Individual Practices in Civil Cases: Alison J. Nathan, U.S.C.J. Sitting by Designation § 3(F)(iii)-(iv) (July 7, 2022) ("Any Rule 56.1 statement in support of a motion for summary judgment is limited to no more than 25 pages unless leave of the Court to file a longer document is obtained at least one week prior to the due date of such motion for summary judgment. . . . An opposing party's response to the moving party's Rule 56.1 statement shall be no longer than 50 pages."); Individual Practices in Civil Cases: Nelson S. Román, U.S.D.J. § 3(G)(ii) (July 23, 2013) ("Any Rule 56.1 statement in support of a motion for summary judgment is limited to no more than 25 pages, unless leave of the Court to file a longer document is obtained at least one week prior to the due date of such motion for summary judgment."); Individual Rules and Procedures for Civil Cases: Lorna G. Schofield, U.S.D.J. § IV(C)(6) (Oct. 18, 2022) ("The Rule 56.1 statement shall not exceed 25 double-spaced pages unless leave of the Court to file a longer document has been obtained at least one week before the motion and statement are due to be filed."); Individual Practices of Judge Cathy Seibel § 2(C)(ii) (Feb. 3, 2020) ("The moving party's Statement of Material Facts Pursuant to Local Civil Rule 56.1 may not exceed 25 double-spaced pages without prior permission of the Court."). *A fortiori*, this Court may impose page limits on Rule 56.1 statements in this specific case, where special considerations warrant such limits.

Accordingly, the Court should adopt Dallah Avco's proposed limits of 40 pages for Rule 56.1 statements (or counterstatements) and 40 pages for responses (excluding the reproductions of the statements). Those limits are generous. They exceed the 25-page limit adopted in the many individual practices cited above. They are more than sufficient to enable the parties to marshal the most relevant evidence in this case. For the reasons above, the Court should not

allow the *Ashton* plaintiffs to file their own separate Rule 56.1 statement or response. If it does, those submissions should be deducted from the 40 pages allocated to the PECs.

## III.     Evidentiary Objections

Dallah Avco supports the Kingdom's proposal that the parties may raise evidentiary objections to exhibits concisely in a table submitted with the filing that responds to the filing where the documents were cited. This approach will allow evidentiary objections to be presented in a more concise and organized manner and will help ensure that briefs are not bogged down with evidentiary objections.

We thank the Court for its time and attention to these matters.

Respectfully submitted,

Robert Kry

cc:     All counsel by ECF