USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/10/2023

LAW OFFICE OF JOHN F. SC
445 Park Avenue, Ninth Flo
New York, New York 1002
Telephone: (646) 345-1441  Fax: (917
john@johnschutty.com

April 5, 2023

Honorable George B. Daniels
United States District Court Judge
Honorable Sarah Netburn
United States Magistrate Judge

    Re:    *In re Terrorist Attacks on September 11, 2001,*
           MDL No. 03-MDL-1570 (GBD) (SN)
           *Ashton et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977
           <u>And All Wrongful Death Actions Against Defendants-in- Default</u>

Your Honors:

I write in response to Judge Daniels' Order dated March 30 (MDL ECF# 8973) and Magistrate Netburn's "Report & Recommendation" dated March 15 (MDL ECF #8929).

I am requesting time at the scheduled April 11 (3 p.m.) to discuss the alleged continued ability of the "Plaintiff's Executive Committee" ("PEC") to represent the interests of state-authorized "heirs" of 9/11 decedents. Undeniably, the interests of state-authorized "heirs" on the one hand, and the interests of those who are not state-authorized heirs (non-heirs") on the other hand, are adverse.

My law firm is not an appointed member of the PEC. My clients (*Ashton-Dickey* Plaintiffs) are all widows of 9/11 decedents and state-appointed "personal representatives" of their husband's estate; they (and their children) do not have proper representation on the PEC. This subset of plaintiffs that I represent feel that they have not be given due regard by the Court, and that may be because my law firm is the only one pursuing wrongful death recoveries on behalf of the 9/11 decedents' "heirs," *i.e.*, "heirs" recognized as such by state law.

I am asking the Court to determine precisely "who is representing whom" on the PEC so that a record may be made as to whether each subset of plaintiffs before the Court (*e.g.*, "heirs" vs. "non-heirs," "wrongful 9/11 death claimants" vs. "latent injury plaintiffs," *etc.*) is being represented with undivided loyalty.

The Court's last two opinions on wrongful death law, favor the arguments of the PEC (*see* MDL ECF#8813: the PEC has argued that the district court may disregard state estate administration law by awarding damages to non-heirs, in violation of the duty owed by these same lawyers to their clients who are heirs), to the detriment of my clients. I have been contacted by several widows, still represented by PEC counsel, who are

Honorable George P. Daniels & Magistrate Judge Sarah Netburn
April 5, 2023, Page 2

unhappy that their attorneys are not pursuing the arguments my firm set forth last week (MDL ECF#8599).

While I intend to ask Judge Daniels to certify his latest decision for immediate appeal under 28 U.S.C. § 1292(b), my clients are asking that a record be made as to whether the PEC law firms have a conflict of interest on the issues raised, *viz.*, do all the PEC firms represent *both* heirs and non-heirs. This Court and those represented before it deserve unbiased and undivided loyalty from the attorneys on the PEC who represent the 9/11 decedents' estates before the Court, but that is not presently possible because of the existing conflict of interest. Once an attorney represents the state-appointed personal representative of an estate, he/she simply may not also represent non-heirs in pursuing wrongful death damages.

Rule 1.7(a)(1) of the New York Rules of Professional Conduct, 22 N.Y.C.R.R § 1200.7(a)(1), provides in pertinent part that "a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests." Rule 1.0(f) defines "differing interests" to "include every interest that will adversely affect either the judgment or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest." Comment 1 to Rule 1.7 explains "Differing interests exist if there is a significant risk that a lawyer's exercise of professional judgment in considering, recommending or carrying out an appropriate course of action for the client will be adversely affected or the representation would otherwise be materially limited by the lawyer's other responsibilities or interests." The consideration is straightforward: the reasonable lawyer should consider if one client "may reasonably fear that the lawyer will pursue [his or her] case less effectively out of deference to the other client." *Id.* cmt. 6. While some of the PEC allegedly had their clients sign "Conflict of Interest Waivers," those are voidable unless the heirs signing those waivers were expressly told that their attorneys would not be asserting certain arguments (like the applicability of state law) on their behalf.

Conflicts are different in degree and in kind from other failures of representation because they infect every aspect of the attorney-client relationship. As the Supreme Court observed in *Holloway v. Arkansas*, 435 U.S. 475, 490 (1978): "the evil [of a conflicted representation] . . . is in what the advocate finds himself compelled to refrain from doing," leaving an impoverished record for later courts to review based on no more than speculation. As *Holloway* suggests, a breach of the duty of loyalty is not only worse than other ethical breaches because it is a breach of the most fundamental fiduciary duty owed to a client, but it is also a substantively different type of breach because it affects—and it does so surreptitiously—every decision in the representation.

Judge Hellerstein faced a similar "conflicts" issue years ago in another litigation involving the World Trade Center. *See, e.g.*, *In re World Trade Center Disaster Site Lit.*, 769 F. Supp. 2d 650 (S.D.N.Y. 2011) (law firm disqualified by the court, after citing Code of Professional Responsibility Rule 1.7(a), and holding that 59 plaintiffs had legal

positions different from other plaintiffs and needed separate advice). As Judge Hellerstein held:

> Napoli Bern had conflicting obligations. If the 59 Plaintiffs were admitted to the SPA, as many of them requested, the final settlement amount would be spread thinner, affecting in particular the most severely injured Plaintiffs, the "Tier 4" Plaintiffs, whose recoveries were variable and dependent on how much of the fixed settlement amount would remain after the less severely injured Plaintiffs had been paid . . . On the other hand, *Napoli Bern had to make any possible arguments it could on behalf of these 59 Plaintiffs. Any way one looks at it, Napoli Bern's common representation of these 59 Plaintiffs and its thousands of other Plaintiffs put the firm in conflict.*

769 F.Supp.2d at 652 (emphasis added).[1]

There are legislators today trying to move the Da Afghanistan Bank ("DAB") (Taliban?) assets into a fund[2] that might be used to award money to victims of the Taliban (like was done with moneys generated from sanctions against Iran). Thus, it is abundantly clear that any Taliban default judgments before this Court now are, for all intents and purposes, "final judgments" (which may be converted to fund awards) *from which no appeal may possibly be taken without this Court's grant of permission*. This "system" prevents

---

The Court DENIES counsel's request to address alleged conflicts of interest during the April 11, 2023 conference. Litigants who are concerned with potential conflicts may always raise these issues with their attorneys, seek new counsel, file complaints, or, where appropriate, move to disqualify counsel. See Ceglia v. Zuckerberg, No. 10-cv-00569 (RJA)(LGF), 2012 WL 12995636, at *13 (W.D.N.Y. June 28, 2012) (explaining that disqualification of counsel is within the district court's discretion and is disfavored in the Second Circuit). But the Court sees no evidence that the purported conflicts threaten the "'integrity of the adversary process.'" Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005) (quoting Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)). It has given and will continue to give due regard to all arguments raised by attorneys in this multidistrict litigation, whether or not those attorneys are members of the Plaintiffs' Executive Committees. The Court has expressly addressed the issues raised by Mr. Schutty and no further proceedings are warranted. See, e.g., ECF Nos. 8704 (scheduling conference in part to address issues raised by Mr. Schutty), 8778 (ordering additional briefing on issues raised by Mr. Schutty), 8929 (Report & Recommendation addressing issues raised by Mr. Schutty), 8973 (Order adopting Report & Recommendation addressing objections filed by Mr. Schutty).
**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

Dated: April 10, 2023
New York, New York.