UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------- x
                                                        )
                                                        )   Civil Action No. 03 MDL 1570 (GBD/SN)
                                                        )
In re Terrorist Attacks on September 11, 2001           )   ECF Case
                                                        )
                                                        )
------------------------------------------------------- x
```

This document relates to:

*Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03-cv-06978
*Thomas E. Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03-cv-09849
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 04-cv-01923
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, No. 04-cv-05970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, No. 04-cv-07065
*Euro Brokers Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 04-cv-07279

**DEFENDANT DUBAI ISLAMIC BANK'S OPPOSITION
TO PLAINTIFFS' OBJECTIONS
TO THE MARCH 6, 2023, OPINION & ORDER (ECF NO. 8905)**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

BACKGROUND ................................................................................................................................. 2

ARGUMENT ....................................................................................................................................... 5

I.     WINER III WAS NOT A PROPER RULE 26(e) SUPPLEMENT ........................................ 5

II.    THE DEFAULT SANCTION OF EXCLUDING WINER III WAS PROPER ..................... 7

     A.    Judge Netburn Correctly Found That Plaintiffs Had Not Substantially Justified Winer III As A Supplement .................................................................. 7

     B.    Judge Netburn Correctly Found That Plaintiffs' Untimely Report Was Not Harmless ....................................................................................................... 9

     C.    Judge Netburn Applied The *Outley* Factors Well Within Her Discretion ...... 9

CONCLUSION .................................................................................................................................. 12

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*523 IP LLC v. CureMD.Com*,
   48 F. Supp. 3d 600 (S.D.N.Y. 2014) ................................................................................... 5

*Agence France Presse v. Morel*,
   293 F.R.D. 682 (S.D.N.Y. 2013) .......................................................................................... 7

*Beller v. United States*,
   221 F.R.D. 696 (D.N.M. 2003) .......................................................................................... 12

*Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*,
   769 F. Supp. 2d 269 (S.D.N.Y. 2011) ................................................................................... 6

*Coene v. 3M Co.*,
   303 F.R.D. 32 (W.D.N.Y. 2014) .......................................................................................... 6

*In re Fosamax Prods. Liab. Litig.*,
   645 F. Supp. 2d 164 (S.D.N.Y. 2009) ................................................................................. 11

*In re Namenda Direct Purchaser Antitrust Litig.*,
   331 F. Supp. 3d 152 (S.D.N.Y. 2018) ................................................................................. 11

*In re Terrorist Attacks on Sept. 11, 2001*,
   718 F. Supp. 2d 456 (S.D.N.Y. 2010) ................................................................................... 2

*In re Terrorist Attacks on Sept. 11, 2001*,
   2023 WL 2430381 (S.D.N.Y. Mar. 9, 2023) ............................................................. 3, 4, 5, 10

*Lugosch v. Congel*,
   443 F. Supp. 2d 254 (N.D.N.Y. 2006) ................................................................................... 5

*Outley v. City of New York*,
   837 F.2d 587 (2d Cir. 1988) ....................................................................................... 7, 9, 12

*Papyrus Tech. Corp. v. N.Y. Stock Exch., LLC*,
   257 F.R.D. 39 (S.D.N.Y. 2009) .......................................................................................... 10

*Phinney v. Wentworth Douglas Hosp.*,
   199 F.3d 1 (1st Cir. 1999) .................................................................................................. 11

*Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*,
   118 F.3d 955 (2d Cir. 1997) ............................................................................................. 7, 9

*Thai Lao Lignite (Thai.) Co. v. Gov't of Lao People's Dem. Rep.*,
   924 F. Supp. 2d 508 (S.D.N.Y. 2013) ................................................................................... 5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 .................................................................................................................. *passim*

Fed. R. Civ. P. 37 .................................................................................................................. *passim*

Fed. R. Civ. P. 72 ......................................................................................................................... 5

**INTRODUCTION**

This Court on March 9, 2023 granted summary judgment to defendant Dubai Islamic Bank ("DIB") based on lack of personal jurisdiction. The day DIB filed its opening summary judgment brief in 2022, however, months after discovery closed, Plaintiffs surprised DIB by serving a purported "supplementary" expert report of Jonathan Winer, the first time any of Plaintiffs' experts opined on DIB. Magistrate Judge Netburn granted DIB's motion to strike the report ("Winer III"), finding that Plaintiffs could not have reasonably believed it was "supplementary" because Mr. Winer's prior reports never even mentioned DIB. As a result, Judge Netburn rightly rejected Plaintiffs' gambit to mischaracterize the report as supplemental. Moreover, Judge Netburn correctly excluded Plaintiffs' report, finding that Plaintiffs had no "substantial justification" for their discovery violation and that Plaintiffs' discovery violation was not "harmless." Op. 8–10.

Plaintiffs identify no error of law or fact in her ruling, and this Court should overrule their objections. Plaintiffs now concede that they acted improperly: The report they tried to pass off as "supplementary" was never a proper supplement under Rule 26(e). *See* PEC Objs. 5 ("Plaintiffs (***mistakenly***) understood Winer III to be properly styled as a supplement" (emphasis added)).

After conceding their core discovery violation, Plaintiffs only quibble with Judge Netburn's exclusion sanction—which is the default under Rule 37(c) unless the violation has "substantial justification" or was "harmless." But Plaintiffs are tellingly silent on many key issues. They never provide any "substantial justification" for mischaracterizing Winer III as supplemental. They do not contest that the opinions in the new report fell far outside the scope of Mr. Winer's prior opinions, which did not even ***mention*** DIB. Winer III therefore "supplements" nothing. Indeed, as Judge Netburn found, no reasonable person could have concluded otherwise. Nor do Plaintiffs contest that they failed to seek leave from the court or even notify DIB before

1

serving Winer III on the same day DIB's summary judgment motion was due. In short, Plaintiffs flouted Judge Netburn's expert discovery scheduling order and sought to cover their tracks by unjustifiably labeling Winer III as "supplementary." Judge Netburn rightly saw through that game.

Instead of focusing on their discovery abuse, Plaintiffs focus on Judge Netburn's purported finding that they acted in bad faith. *E.g.*, *id.* at 1 ("The core of the magistrate judge's determination that sanctions were appropriate rested on an inference of bad faith…"). But she never made such a finding—certainly no such "core inference" on which she "premised" her ruling. *Id.* She observed that Plaintiffs filed Winer III without warning and on the day DIB's brief was due, "effectively sandbagging" DIB. All of that is true, whatever Plaintiffs' state of mind. Judge Netburn rightly concluded that Plaintiffs could not avoid exclusion because their flagrant violation was neither "substantially justified" nor "harmless" under Rule 37(c). Op. 8–10.

Lastly, Plaintiffs try to defend the evidentiary value of Winer III. They do not even try to argue that it had value for this Court's ruling on personal jurisdiction (nor could they), but they assert it would aid "lay jurors." PEC Objs. 11 n.15. But Judge Netburn rightly concluded that the report—by "a lawyer and consultant"—"does almost nothing to help a jury understand the facts" because it "consists largely of quotes (in plain English)" with "little or no analysis of" them. Op. 1, 11. All Plaintiffs can say is that Winer III, somehow, adds "context" to this other evidence. That asserted gloss hardly makes Winer III important. Much less does it overcome Plaintiffs' lack of justification for their flouting of Judge Netburn's discovery orders.

**BACKGROUND**

Plaintiffs alleged that DIB knowingly provided financial services to al Qaeda in connection with 9/11. Based on those allegations, this Court in 2010 denied DIB's motion to dismiss for lack of personal jurisdiction. *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 488

(S.D.N.Y. 2010). After the close of more than a decade of discovery, DIB renewed its challenge to personal jurisdiction, and this Court recently granted summary judgment in its favor. *In re Terrorist Attacks on Sept. 11, 2001*, 2023 WL 2430381 (S.D.N.Y. Mar. 9, 2023), ECF 8911.

Discovery included extensive expert discovery by both sides. Plaintiffs proffered five experts—but none offered any opinions on DIB. Moreover, Plaintiffs chose not to depose any of DIB's seven experts. Expert discovery closed in August 2021, and DIB later that year filed its renewed challenge to personal jurisdiction. The parties began "discussions that the parties had hoped would obviate the need for the Court to decide DIB's motion." ECF 8089, at 1. In March 2022, the CIA declassified a tranche of files, some of which mention DIB. The parties jointly sought and were granted a new briefing schedule, setting a deadline of June 17, 2022 for DIB to file a motion for summary judgment on personal jurisdiction. ECF 7929. Plaintiffs then, without seeking leave to reopen fact discovery, served new discovery requests, purportedly in response to the declassified files. As the parties conferred about these requests, they sought a further extension of the briefing schedule.[1] Judge Netburn denied this further request on June 14, 2022.

DIB filed its personal jurisdiction motion for summary judgment on June 17, 2022. Later that day, again without seeking leave of court or conferring with DIB, Plaintiffs served a new expert report. Plaintiffs styled this third report from their expert Jonathan Winer as "supplementary" under Civil Rule 26(e), even though it was the first Plaintiffs' expert report to address DIB. ECF 8345-1 (capitalization altered). DIB moved to exclude as an improper supplement. ECF 8343, 8344.

In granting DIB's motion, Judge Netburn first held that Winer III was not a proper

---

[1] Plaintiffs eventually moved to compel. ECF 8505. Judge Netburn denied the motion nearly in full, merely ordering DIB to search its legacy database using an account number associated with one person who appeared in the declassified files. ECF 8720. Plaintiffs did not file objections.

3

supplement under Rule 26(e), because "its content falls decidedly outside the scope" of Winer's two prior reports and deposition, none of which addressed "the alleged relationship between al Qaeda and DIB." Op. 6. Indeed, as "Winer I and II fail to even mention DIB," there was nothing for Winer III to supplement or correct. *Id.* Thus, and because Plaintiffs made no attempt "to proactively seek permission to offer a late report," Winer III was untimely. *Id.* at 11; *see id.* at 7.

Judge Netburn then determined that Rule 37(c)'s default sanction of exclusion was appropriate. Plaintiffs did not explain their failure to notify DIB or seek the court's permission to serve the report. And the late-breaking report was not harmless: DIB briefed summary judgment without being able to address Winer III or re-depose Winer. Furthermore, Judge Netburn found, Winer III offered "almost nothing to help a jury" because it consists mainly of block quotes "in plain English" from the CIA files and other long-known evidence. *Id.* at 11. In sum, all of the relevant factors "universally favor[ed] excluding Winer III" as Rule 37(c) commands. *Id.* at 12.

Three days later, on March 9, this Court granted DIB's personal-jurisdiction motion. Noting Judge Netburn's order, the Court disregarded assertions supported only by Winer III. *In re Terrorist Attacks*, 2023 WL 2430381, at *2 n.3.[2] But this Court found, "for the limited purposes of this [summary judgment] motion," that the CIA files themselves should be considered. *Id.* at *7. This Court then concluded that the facts revealed in discovery are "materially different from the allegations on which this Court premised personal jurisdiction in 2010." *Id.* at *1, *12. In particular, "Plaintiffs present[ed] *no evidence* that individuals or entities *used* money from … DIB

---

[2] Winer III, as Judge Netburn concluded, is "mostly hearsay" and "of low importance" because it "does almost nothing to help a jury understand the facts." Op. 9, 11 (quotation marks omitted). Plaintiffs' excluded factual assertions that rested solely on Winer III largely attempted to bolster the credibility of the CIA files. *See* PEC Averment, ECF 8317-1, ¶¶ 71–76. Other excluded assertions primarily included restated material from the CIA files, newspaper articles, or religious writings (a subject on which Winer has not claimed expertise). *E.g., id.* ¶¶ 82, 85, 124, 155, 158.

accounts to fund al Qaeda or carry out 9/11." *Id.* at \*5 (emphasis added). Likewise, they presented "*no evidence* that DIB … was *aware* of the terrorist nature of the accountholders to whom it was providing routine banking services." *Id.* at \*12 (emphasis added). And the evidence that did exist showed "DIB took steps before 9/11 to combat terrorism financing," including "initiat[ing] an investigation and offer[ing] its cooperation to the U.S. government" when "confronted with allegations that the Bank was facilitating terrorism financing." *Id.* at \*12–13.

## ARGUMENT

Under Rule 72(a), a magistrate judge's non-dispositive decision may be set aside only if "clearly erroneous or contrary to law." *Thai Lao Lignite (Thai.) Co. v. Gov't of Lao People's Dem. Rep.*, 924 F. Supp. 2d 508, 511 (S.D.N.Y. 2013). Magistrate judges have "broad discretion" under this "highly deferential standard," so the moving party "carries a heavy burden." *Id.* at 511–12. A decision is clearly erroneous only if the district court is "left with the definite and firm conviction that a mistake has been committed." *Id.* at 512. Furthermore, a court has "wide discretion to impose sanctions, including severe sanctions, under [Rule] 37." *523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 634 (S.D.N.Y. 2014). This Court gives "particular deference" to Judge Netburn's discovery rulings, given that she has been "'deeply involved in discovery matters in the case for years.'" ECF 6611, at 2 (quoting *Lugosch v. Congel*, 443 F. Supp. 2d 254, 276 (N.D.N.Y. 2006)).

Plaintiffs do not even claim Judge Netburn made any error of law, nor have they shown that any fact she found was erroneous, much less clearly so. Rather, she was undisputedly correct under Civil Rule 26(e) that Winer III was untimely as not a proper supplement (as Plaintiffs now concede), and she acted well within her wide discretion under Civil Rule 37(c) in excluding it.

**I.    WINER III WAS NOT A PROPER RULE 26(e) SUPPLEMENT.**

Under Rule 26(e)(1), a party who has made an expert disclosure "must supplement or correct" it if the party learns that it is "incomplete or incorrect." But a new report can "supplement

5

or correct" an initial report only if the new one is both "within the scope of" the initial one and based on information "previously unknown or unavailable." *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 278–80 (S.D.N.Y. 2011). Otherwise, it "constitutes a new opinion." *Coene v. 3M Co.*, 303 F.R.D. 32, 43 (W.D.N.Y. 2014).

Applying the law, Judge Netburn correctly found that Winer III is not a supplemental report because "[i]ts content falls *decidedly outside* the scope of Winer I and II." Op. 6 (emphasis added). Winer III is dedicated to "the alleged relationship between al Qaeda and DIB—a subject never discussed in Winer's original reports or at his deposition." *Id.*; *see id.* ("Winer I and II fail to even mention DIB."). She found these omissions particularly striking because Plaintiffs in their earlier witness list **in 2020** had posited that Winer *would* opine on DIB's supposed ties to al Qaeda. *Id.* at 2, 6, 10. Although Plaintiffs argued he could "supplement" any topic in that list, Judge Netburn rejected that as contrary to Rule 26(e). *Id.* at 6. Additionally, because swaths of Winer III relied on evidence that was available "long before" the CIA files were declassified (particularly two fact depositions), it also was not based on evidence "previously unknown or unavailable." *Id.* at 7.

In their objections, Plaintiffs do not dispute Judge Netburn's conclusion that Winer III is outside the scope of Winer's prior reports and testimony and therefore not a supplement. They never acknowledge his previous silence on DIB. And they have abandoned their unsupported argument that their witness list somehow overcomes his silence. Plaintiffs also admit that much of the material analyzed in Winer III was previously available, merely protesting that the CIA files added "context." PEC Objs. 5–6. Plaintiffs do not explain why Winer could not have provided *any* opinion on DIB based on the earlier evidence, especially given that Plaintiffs expressly contemplated that Winer *would* do so. Op. 6–7. Thus, Judge Netburn's holding that Winer III was untimely rather than a proper supplement is indisputably correct.

6

## II. THE DEFAULT SANCTION OF EXCLUDING WINER III WAS PROPER.

Under Rule 37(c)(1), if a party fails to disclose an opinion as Rule 26 requires, the party "is not allowed to use that information," unless the failure "was substantially justified or is harmless." Thus, exclusion is the "default sanction." *Agence France Presse v. Morel*, 293 F.R.D. 682, 685 n.5 (S.D.N.Y. 2013). A court must assess the circumstances of the violation through the lens of the four "*Outley*" factors. *See Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (citing *Outley v. City of New York*, 837 F.2d 587 (2d Cir. 1988)). Judge Netburn observed that it is not clear whether those factors should inform the substantial-justification and harmlessness analyses or are an additional constraint on the court's discretion to order exclusion. She gave Plaintiffs the benefit of the latter approach. Op. 8.

Plaintiffs unsurprisingly do not claim any error of law in Judge Netburn's analysis of the remedy. Nor did she otherwise err, much less abuse her discretion.

### A. Judge Netburn Correctly Found That Plaintiffs Had Not Substantially Justified Winer III As A Supplement.

For the reasons explained above, Judge Netburn held Plaintiffs acted unjustifiably in claiming that Winer III was a proper supplemental report. In her remedy analysis, she recognized the question was not close—"no reasonable person" could think otherwise. Op. 8–9. Plaintiffs' failure to contest her holding on untimeliness dooms them here too.

Judge Netburn nevertheless went on to consider whether Plaintiffs could establish "equitable" reasons to substantially justify their conduct, but concluded they failed to carry their burden. Plaintiffs claimed that Winer III was warranted in light of the release of the CIA files. *Id.* at 9. But as she observed, they inexplicably kept their planned report secret until the last minute: They did not confer with DIB regarding it or seek leave of the court before serving it, and they served it the same day DIB filed its motion for summary judgment. *Id.* This timing "effectively

7

'sandbagg[ed]' DIB with additional evidence," most of which was block quotations of hearsay, "to create a genuine issue of material fact on the eve of summary judgment." *Id.*

In attacking this alternative section of Judge Netburn's opinion, Plaintiffs identify no finding that was even arguably erroneous: Plaintiffs indeed did not notify DIB or seek court permission—failures that Plaintiffs still have not explained. Plaintiffs then—without any notice—served Winer III just after DIB filed its opening summary-judgment brief. *See* PEC Objs. 8 (conceding Plaintiffs intended for DIB to "address Winer III" on summary judgment, in its reply brief). Plaintiffs misleadingly characterized the new Winer opinions as "supplementary."

Plaintiffs focus their fire on findings that Judge Netburn never made and Rule 37(c) does not require. Over and over, they claim that Judge Netburn inferred that they acted in "bad faith" with the "intent" to sandbag DIB. *E.g. id.* at 1–2, 4–5, 7–8. But her opinion never uses the words "bad faith" and made no finding as to the appropriateness of Plaintiffs' state of mind. Judge Netburn stuck to the cold, hard facts just described. Regardless of whether Plaintiffs maliciously intended to sandbag DIB, their actions objectively—"effectively"—did just that. Op. 9. That, along with the other undisputed facts, was more than enough to simply hold Plaintiffs failed to carry their burden to show substantial legal or equitable justification for their violation.

Rather than explain their failure to tell DIB or the Court about Winer III, Plaintiffs praise themselves for filing Winer III just three days after Judge Netburn denied a further extension of summary-judgment briefing. *E.g.*, PEC Objs. 2. But if they had time to work with an expert to finalize a 30-page report, they certainly could have provided the Court and DIB with advance notice of their secret expert project. And, plaintiffs could have chosen a proper procedural route—rather than the lawless ruse of supplementation. No alchemy can recast those failures as a virtue, nor in any event does such purported virtue undermine any of Judge Netburn's actual findings.

8

### B. Judge Netburn Correctly Found That Plaintiffs' Untimely Report Was Not Harmless.

Judge Netburn's opinion recognizes that courts "*routinely* find prejudice where an expert report is produced after discovery is complete." Op. 9–10 (emphasis added). And Plaintiffs served Winer III long after discovery was complete—more than ten months after expert discovery closed. Furthermore, Judge Netburn recognized that Winer III left DIB with a "dilemma," in which both options were prejudicial: Either DIB would have to delay the personal-jurisdiction briefing yet again (just after having filed its *second* opening brief on summary judgment), to re-depose Winer and develop a rebuttal report of an expert who too would be deposed; or DIB would have to proceed with summary judgment without the ability to properly address Winer III. *Id.* at 10.

Plaintiffs do not contest either the law or this straightforward analysis of the facts. Instead, they note that DIB has since, in the intervening period, taken the proper approach: seeking in advance court permission to provide limited—and qualified—expert opinions about the recently released CIA (and FBI) files that could truly assist the Court or a jury were DIB ***not*** granted summary judgment on personal jurisdiction. But DIB's later steps could never undo the prejudice Plaintiffs' actions already imposed—forcing DIB to choose between delaying summary judgment again or facing summary judgment without properly addressing Winer III.

### C. Judge Netburn Applied The *Outley* Factors Well Within Her Discretion.

A court exercising its "considerable discretion" to order exclusion, *Outley*, 837 F.2d at 590, must consider: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance," *Softel*, 118 F.3d at 961. Judge Netburn found all four to favor exclusion.

**1.** The first factor, Plaintiffs' ***explanation*** for their violation, overlaps with the

9

question of substantial justification and is, for the reasons explained above, not close: Plaintiffs still offer no reasonable explanation for characterizing Winer III as a supplement. Whatever their subjective motives, their legal position was obviously unreasonable, as Judge Netburn found. Op. 10; *see id.* at 8–9. Plaintiffs now do not even attempt to justify that position. And Plaintiffs do not try to explain their failure to seek leave from the Court for filing the report. *Id.* at 11 (citing *Papyrus Tech. Corp. v. N.Y. Stock Exch., LLC*, 257 F.R.D. 39, 43 (S.D.N.Y. 2009)).

    **2.** Judge Netburn correctly found that Winer III was not ***important*** evidence, because it "does almost nothing to help a jury understand the facts." *Id.* It "consists largely of quotes (in plain English)" from the CIA documents and other evidence, with "little or no analysis" or application of any "terrorism expertise." *Id.* The jury could "just as easily understand" the evidence by reading the original sources. *Id.* Thus, "striking Winer III would not deprive the [Plaintiffs] of important testimony." *Id.* at 12.

Winer III is even less significant now than when Judge Netburn ruled, because this Court considered the CIA files for purposes of DIB's personal jurisdiction motion. Even crediting them, the Court concluded that the facts failed to support jurisdiction, given the absence of evidence (i) that DIB accounts were used to support al Qaeda or 9/11 and (ii) that DIB was aware of its routine customers' connections to terrorism. 2023 WL 2430381, at *5, *12.

Indeed, Plaintiff do not contend that Winer III was material for this Court's decision on personal jurisdiction; they just claim that a "layperson jury" and "lay jurors" would benefit from it, on the merits. PEC Objs. 11 & n.15. Nor *did* it have such relevance, given that this Court considered the CIA files and that the few assertions the Court disregarded due to Judge Netburn's order were immaterial in any event. *Supra* at 4 n.2. The Court's ruling is grounded in the undisputed facts of the lack of a connection between DIB's financial services and the 9/11 attacks,

and a lack of knowledge by DIB that its services were being used by customers who planned to engage in terrorism. *Supra* at 4–5. And if Plaintiffs nevertheless sought to claim materiality, their belated argument would be forfeited. *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999) (objection "must apprise the district court of all the objector's claims of error").

Even as to the merits, Plaintiffs merely vaguely assert—more than a dozen times—that Winer III somehow adds "context" to or "contextualizes" the sources it block quotes. Plaintiffs did not make that argument to Judge Netburn and thus have forfeited it as well. *See* ECF 8471, at 22 (PEC Opp., on importance). They certainly cannot claim that she clearly erred on a point they did not make. Plaintiffs also fail to explain what they mean by incanting "context." The gist seems to be that long-available deposition evidence should be considered alongside information in the CIA files. *See* PEC Objs. 5 n.7. But it does not take an expert to place plain-English fact evidence on supposedly similar issues together for a court. When a purported expert report merely "regurgitate[s]" evidence through "selective quotation" of underlying sources, "to the extent such evidence is admissible, it should be presented to the jury directly." *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009). Nor would it be appropriate for Winer to tell "a jury" to weigh the CIA files "heavily" because they contain "specific, concrete, and detailed" evidence. PEC Objs. 11 n.15. Such minimal analysis "adds nothing to the direct evidence," certainly nothing important—rather, it just impermissibly uses Winer's supposed "credentials to bolster [the direct evidence's] credibility." *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 171 (S.D.N.Y. 2018).

**3.** Judge Netburn correctly found that Winer III ***prejudiced*** DIB. This factor overlaps with Plaintiffs' failure to show harmlessness, explained above. *Supra* at 9. Again, DIB would either have to "proceed without re-deposing Winer or rebutting his new opinions" or "postpon[e]

adjudication of the pending motion for summary judgment." Op. 10; *see id.* at 12.

4.  Finally, Judge Netburn correctly found that Winer III did not "provide evidence critical enough" to justify further ***delay*** of summary judgment on personal jurisdiction. *Id.* at 12. DIB's second summary-judgment motion was fully briefed in September 2022, and this Court decided it days after Judge Netburn struck Winer III. There was no reason to further drag out the case—which "has already stretched decades"—by granting another continuance of summary judgment in response to Plaintiffs' unexplained and prejudicial failure to make an appropriate application. *Id.* There certainly is none now; as just explained, nothing in Winer III (and nothing that any other expert could offer) would change this Court's personal jurisdiction ruling.[3]

In sum, all four *Outley* factors "universally favor excluding Winer III," as Judge Netburn rightly found. *Id.* In exercising her wide discretion to order exclusion, she compared this case favorably to *Beller v. United States*, 221 F.R.D. 696 (D.N.M. 2003), which similarly involved exclusion of new opinions in a purported supplemental report, filed without permission. Op. 12. And she contrasted this case with others involving reports that were filed mid-discovery or contained only minor changes. *Id.* Plaintiffs address none of these cases. Ultimately, Plaintiffs fail to show any clear error that might overcome the substantial deference owed.

## CONCLUSION

This Court should overrule Plaintiffs' objections to Judge Netburn's discovery order.

---

[3] If the Second Circuit reversed, DIB likely would continue to seek a limited reopening of discovery (in a procedurally proper way—not as a "supplement") to present expert evidence solely to address the new CIA (and FBI) files. *Cf.* PEC Objs. 11 (recognizing DIB's request was with a view to providing expert evidence "if the Court's dismissal of DIB is overturned on appeal"). Such testimony, from qualified intelligence experts, would only address the reports and their creation—factors that would go to admissibility at trial and weight. DIB believes that the Court would benefit immensely from such considered views. Plaintiffs previously agreed to DIB's request for limited expert discovery. ECF 8874, 8877. Judge Netburn has deferred that question, instructing that she "w[ould] consider any appropriate applications at that time." ECF 8948, at 5 (Mar. 23, 2023).

12

Dated: April 11, 2023                                  Respectfully submitted,


                                                        By:  */s/ Steven T. Cottreau*
                                                          Steven T. Cottreau
                                                          C. Kevin Marshall (admitted *pro hac vice*)
                                                          Gabrielle E. Pritsker
                                                          JONES DAY
                                                          51 Louisiana Avenue, N.W.
                                                          Washington, D.C. 20001
                                                          Telephone: (202) 879-3939
                                                          Email: scottreau@jonesday.com
                                                          Email: ckmarshall@jonesday.com
                                                          Email: gpritsker@jonesday.com

                                                          Juan P. Morillo (admitted *pro hac vice*)
                                                          QUINN EMANUEL URQUHART & SULLIVAN LLP
                                                          777 Sixth St., N.W.
                                                          Washington, D.C. 20001
                                                          Telephone: (202) 538-8174
                                                          Email: juanmorillo@quinnemanuel.com

                                                          *Counsel for Defendant Dubai Islamic Bank*