# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

April 14, 2023

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

    RE:    *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

Plaintiffs with claims against Al Rajhi Bank ("ARB") write in opposition to ARB's motion to compel at ECF No. 9002. ARB's motion should be denied because: (1) the Second Circuit did not authorize discovery by ARB of Plaintiffs; (2) ARB's sprawling document requests are untimely and were served in violation of this Court's orders; (3) ARB's requests are unduly burdensome and not proportional to the needs of the case; (4) ARB's requests exceed the scope of authorized jurisdictional discovery; (5) Plaintiffs have nonetheless agreed to provide ARB with all relevant and responsive documents, as they are kept in the usual course of business; and (6) Plaintiffs have offered to provide an averment in support of jurisdiction under conditions consistent with a recent proposal by ARB, which will provide ARB with ample notice and access to all evidence and facts upon which Plaintiffs will rely.

**ARB's Requests Are Improper.** The Second Circuit's Remand Order reversed this Court's order dismissing ARB on jurisdictional grounds and "denying Plaintiffs-Appellants' request for jurisdictional discovery." *Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank*, 779 F. App'x 66, 68 (2d Cir. 2019). By its plain language, the Remand Order addressed and authorized only jurisdictional discovery by Plaintiffs of ARB. Indeed, ARB never requested an opportunity to conduct jurisdictional discovery of Plaintiffs, a strategic decision through which it waived any right to do so and left the Second Circuit with no occasion to even consider it.

The nature of the issues as to which the Second Circuit directed limited jurisdictional discovery further confirm that its Remand Order did not authorize discovery by ARB of Plaintiffs. Those four topics exclusively concern ARB's own conduct, knowledge, and intent. The information and evidence bearing on those issues is uniquely in the possession of ARB and its principals, and Plaintiffs plainly have no independent knowledge of those issues. In similar circumstances, this Court held that Saudi Arabia's attempts to conduct jurisdictional discovery of Plaintiffs were "not appropriate," Transcript of May 24, 2018 Hearing at pp. 38-39, and that conclusion applies with even greater force here.

ARB's own arguments about the boundaries of "limited jurisdictional discovery" further underscore that its discovery of Plaintiffs is improper. ARB has successfully claimed that jurisdictional discovery must be "tightly focused" on "essentials necessary to the preliminary question of jurisdiction," ECF No. 7378 at 3, and may not impose a burden on a responding party to review voluminous catalogues of paper documents. These limits, in turn, establish the prism through which the burden, proportionality, and other considerations governing the scope of discovery must be evaluated.

Honorable Sarah Netburn
April 14, 2023
Page 2

---

ARB's discovery of Plaintiffs contravenes all of these standards. As discussed below, its sweeping requests are not targeted and would require Plaintiffs to review millions of pages of documents that are generally not searchable, for the primary purpose of compelling Plaintiffs to disclose their privileged analysis of other defendants' productions. The overwhelming majority of the documents ARB seeks to compel Plaintiffs to review have no bearing on the jurisdictional inquiry, and the burden of reviewing those materials to locate incidental documents referencing ARB or its principals is undue and not proportional to the needs of the case, particularly given that the information and evidence bearing on the jurisdictional question is uniquely in the possession of ARB. Further still, Plaintiffs have offered to provide ARB with a jurisdictional averment consistent with terms proposed by ARB, which will provide ample notice of the facts and evidence upon which Plaintiffs will rely.

**ARB's Requests Are Untimely, And Were Served In Violation Of This Court's Orders.** Even if discovery of Plaintiffs were appropriate under the Remand Order, which it is not, ARB forfeited its right to conduct such discovery by failing to comply with this Court's orders, and by delaying service of its sprawling requests for nearly two years. On March 26, 2021, this Court denied ARB's effort to avoid discovery on alternative grounds and directed that discovery proceed. ECF No. 6681. That Order directed the parties to meet and confer and submit a proposed schedule for discovery. The parties' joint proposal was explicitly conditioned on the parties' commitment to "use their best efforts to move expeditiously through jurisdictional discovery and to complete jurisdictional fact discovery" by December 17, 2021." ECF No. 6747. ARB did not serve any discovery at that time or indicate an intent to do so. On November 21, 2021, this Court issued its Discovery Order, directing the parties to "meet and confer to determine if they can agree on an acceptable program of discovery" and to provide a status report on that program. ECF No. 7378 at 22. ARB again did not indicate any intention to conduct discovery of Plaintiffs, and again did not serve any such discovery. The parties thereafter engaged in no less than 14 meet and confer discussions over the course of the ensuing 15 months, and submitted numerous requests for modifications of the discovery schedule and mandated status reports to the Court. At no time during those discussions or in the reports to the Court did ARB indicate to Plaintiffs or the Court any plan to serve initial document requests at some later date.

In December 2022, Plaintiffs requested a further extension of the February 17, 2023 discovery deadline. ARB's response accused Plaintiffs of a "lack of diligence" and "delay" in conducting discovery and requested that the extended deadline be immovable. ECF No. 8810. ARB's letter made no mention of any plan on ARB's part to serve initial discovery requests at some later date. The Court's resulting Order granted ARB's request that the revised deadline be designated as immovable, and directed the parties to again meet and confer as to any "outstanding or *potential* discovery disputes" and to provide a report summarizing those issues. ECF No. 8812 at 2. ARB again failed to indicate any intention to serve document requests or other discovery on Plaintiffs in those discussions or the required report to the Court submitted on January 20, 2023 (in which ARB again accused Plaintiffs of a "lack of diligence"). ECF No. 8837. Thirteen days later, ARB served its initial requests, nearly two years after the Court directed discovery to proceed and without having ever raised such discovery in any meet and confer or submission to the Court.

As a matter of basic diligence under the Rules and ARB's own self-imposed 2021 mandate to conduct any discovery "expeditiously," ARB was required to serve any initial document requests years ago. More directly, this Court's numerous Orders unambiguously required the parties to confer (from the

Honorable Sarah Netburn
April 14, 2023
Page 3

---

outset and repeatedly thereafter) in good faith about any course of discovery they intended to pursue. ARB's service of its initial discovery requests nearly two years after discovery commenced, and without ever having even mentioned them in any meet and confer or report to the Court, violates the Court's numerous orders, and makes a mockery of the meet and confer process. It amounts to an eleventh hour ambush, which seeks to impose massive obligations on Plaintiffs in the final weeks of discovery, and thereby weaponize the "immovable" discovery deadline by commandeering Plaintiffs' time and resources and undermining their ability to complete the remaining discovery of ARB.

ARB's claim that its document requests are proper because they were served before the ultimate deadline for discovery and around the time that Plaintiffs served follow-up requests is entirely without merit. The notion that initial requests served two years into discovery are timely because the outside deadline for all discovery has not passed is nonsense, and plainly inconsistent with the Court's meet and confer and reporting directives, and the requirement to conduct all discovery expeditiously. And unlike ARB's initial and sprawling demands, Plaintiffs' supplemental requests involve *discrete follow-up* issues that Plaintiffs forecast throughout the meet and confer process and properly disclosed.

**ARB's Requests Vastly Exceed The Permitted And Proper Scope Of Jurisdictional Discovery.**
ARB acknowledges that it seeks to compel Plaintiffs to review any document that has come into the possession of their counsel over the two decades of this litigation ("irrespective of date"), to identify any that refer in any way to "Al Rajhi Bank" or any of several Al Rajhi family members. ARB's requests insist that these searches encompass any communications of counsel to another attorney or third party, a category of records that cannot plausibly be expected to include evidence essential to jurisdiction. These sweeping requests are not at all targeted to the issues for which discovery has been authorized, much less tightly focused on matters essential to jurisdiction.

Moreover, ARB's discovery would impose a massive and undue burden on Plaintiffs for no reasonable purpose, and is plainly not proportional to the needs of the case. As Plaintiffs explained to ARB, responding to the requests in the way ARB claims is necessary would require Plaintiffs to conduct page-by-page reviews of millions of foreign language documents produced by other defendants, to identify those that include any incidental reference to ARB. The overwhelming majority of these documents are wholly irrelevant to the jurisdictional inquiry and do not concern ARB at all,[1] and based on ARB's own positions on burden and proportionality, such massive searches for marginal documents cannot be justified in the context of limited jurisdictional discovery. This conclusion is equally clear as to ARB's demand that Plaintiffs search the communications of counsel, which as noted previously would not contain any actual evidence, much less evidence essential to jurisdiction.[2] At base, what ARB is really aiming to do is to conduct improper discovery into the conduct of discovery

---

[1] Because the charities had accounts at ARB, their productions may include account statements from ARB, but those are ARB's own records and ARB claims it has already produced all relevant account statements.
[2] Without waiving privileges, counsels' communications are not segregated in plaintiff/defendant/other catalogs, so responding to ARB's request would require Plaintiffs to weed through 20 years of privileged communications with co-counsel, clients, and consultants. Any communication that included a caption or discovery request referencing ARB would result in a hit, even though not at all relevant. For periods prior to 2015, any communications would relate to the representation of separate plaintiffs. It is hard to imagine how counsels' communications are relevant at all, and it seems obvious ARB is seeking them for some ulterior purpose. Most obviously, ARB would never agree to search for and produce any document referencing the bank or its principals, or any communication of its counsel representing them, precisely because such requests are harassing and completely untethered to the jurisdictional inquiry.

Honorable Sarah Netburn
April 14, 2023
Page 4

---

and handling of the litigation, and not evidence bearing on jurisdiction. Such matters are irrelevant, plainly not within the limited scope of discovery, and unduly burdensome and harassing.

ARB's claim that Plaintiffs "have little trouble identifying relevant documents from their database" ignores the facts Plaintiffs explained to ARB in the meet and confer, and incorrectly assumes ARB is entitled to command Plaintiffs to use privileged litigation resources for ARB's benefit. ARB assumes that Plaintiffs have a fully searchable database of all of the defendants' productions, but Plaintiffs explained that is not correct. The productions of the charities, which presumably are of greatest interest to ARB, included millions of pages of (primarily) Arabic and other foreign language documents, which are largely not searchable.[3] ARB would not be permitted to Plaintiffs' translations in any case, but the fact is that most of the charity documents were not translated or made searchable.[4] Without waiving privilege, Plaintiffs will simply say that the analysis of those documents was conducted by subject matter experts with Arabic fluency.[5] ARB is not entitled to that work product, the content of which would not in any case allow Plaintiffs to respond to ARB's requests (because it was conducted for different purposes and is not exhaustive). Rather, reviews of those millions of pages would have to be conducted anew. And because ARB delayed serving its requests for two years, it is effectively demanding that it be done in a matter of weeks. This massive burden is plainly undue and not proportional to the needs of the case, particularly given the irrelevance of the majority of the documents and fact that ARB is itself in unique possession of the evidence bearing on jurisdiction.

**Plaintiffs Are In Any Case Responding Fully To ARB's Requests Pursuant To Rule 34.** Despite the impropriety of ARB's belated requests, Plaintiffs are producing all responsive records identifiable through reasonable efforts (save for counsels' irrelevant communications), in accordance with Rule 34. Plaintiffs have agreed to provide ARB with all defendants' productions, the *Federal Insurance* Plaintiffs' productions to all defendants,[6] all documents received from the government (through FOIA, subpoena, or Executive Order 14040) that Plaintiffs are permitted to share, and documents produced by third parties. These materials are being produced in the manner in which they were received or produced. If documents were received or produced in a searchable format, Plaintiffs are providing them to ARB in a searchable format. If the producing party provided an index identifying the requests to which documents were responsive, Plaintiffs will provide those guides.

Rule 34(b)(2)(E) gives the responding party the option either to produce the documents in the manner they usually keep the records or produce them in the categories sought, and that is precisely what ARB did in responding to Plaintiffs' requests and is exactly what Plaintiffs are doing. ARB claims that Plaintiffs are engaging in an impermissible document dump, but that is not the case. Contrary to ARB's claim, the "rule does not require the responding party to alter their record keeping to meet the movant's discovery categories." *Hill v. Stewart*, 2011 WL 4439445, at *5 (W.D.N.Y. Sept. 23,

---

[3] Because of the time period, many of the records are hand-written Arabic documents.
[4] And in any case, any database Plaintiffs created for this litigation is privileged, and ARB may not compel Plaintiffs to use it for ARB's benefit. ARB is obviously free to use any tools it can identify to convert the documents to searchable formats.
[5] This approach was used for the charities because their productions were massive and included a high percentage of irrelevant material, as indicated in prior Court filings. *See, e.g.*, ECF No. 3911 at 2, n.5.
[6] ARB has objected to Plaintiffs sharing its production with the *Ashton* plaintiffs, and for that reason Plaintiffs have requested that ARB ask the other plaintiffs if they have a similar objection to sharing their productions with ARB.

2011); *see In re Adelphia Communications Corp.*, 338 B.R. 546, 551 (S.D.N.Y. 2005) (citing cases). The fact that the compilation of documents at issue here is sizeable is a product of the repositories ARB insisted be included, and Plaintiffs are producing them as they are kept in the ordinary course. This approach is not only consistent with Rule 34, but the only way Plaintiffs could comply with the requests within the discovery period, given ARB's two-year delay in serving them.

**ARB's Contention Requests.** ARB's contention requests for documents supporting particular allegations are improper because requests for production that simply plug a pleading's allegations into boilerplate requests "can be almost mindlessly generated, [and] can be used to impose great burdens on opponents," *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 337 (N.D. Cal. 1985), and do not meet Rule 34's requirement that requests "describe with reasonable particularity each item or category of items to be inspected[.]" Fed. R. Civ. P. 34(b)(1)(A). This is especially true when the requests seek "all" information supporting an allegation. *Martinez v. First Class Interiors of Naples, LLC*, 2020 WL 11192552 (M.D. Tenn. Nov. 30, 2020). Indeed, by their very nature they seek to compel counsel to compile documents in a way that provides a roadmap of counsel's assessments and strategy, which is pure work product.[7] In any event, Plaintiffs are producing the responsive documents in accordance with Rule 34.

**Depositions.** Plaintiffs have already told ARB they will provide contact details for the court reporters for all depositions, so ARB can order any transcripts it wants (subject to the FBI Protective Order).

**FBI Protective Order Materials.** Plaintiffs are prohibited from identifying or producing documents covered by the FBI Protective Order. Plaintiffs have therefore encouraged ARB to ask the DOJ for a special authorization for access under the Protective Order.

**FOIA.** Plaintiffs' productions, which ARB is receiving, include all documents they received via FOIA.

**ARB's "Exculpatory" Theory.** ARB attempts to justify its sweeping requests by theorizing that they might yield "exculpatory" evidence. This is rank (and implausible) speculation, which fails entirely to meet the requirement that jurisdictional discovery be tightly focused on matters essential to jurisdiction. In any case, ARB is receiving all of the evidence produced in the litigation. As for counsels' communications, those are not evidence, and ARB's attempted fishing expedition into twenty years of communications relating to separate claims by separate plaintiffs cannot be justified based on pure conjecture that a search for any reference to ARB or its principals could possibly yield something "exculpatory."

**Other Evidence.** ARB theorizes that Plaintiffs may have collected evidence that is not part of its prior productions, but Plaintiffs were extremely inclusive in those productions. In any event, Plaintiffs have made clear they will provide any evidence they intend to offer in support of jurisdiction prior to ARB's renewed motion to dismiss, and have committed to providing a jurisdictional statement as well.

---

[7] *See Kodak Graphic Commons v. E.I Du Pont,* 2012 WL 413994, *11 (W.D.N.Y. Feb. 8, 2012) ("Where the requesting party already has 'all relevant, nonprivileged evidence,' its demand that the opposing party disclose its attorney's selection and compilation of certain documents is often a thinly-veiled effort 'to ascertain how [counsel] intends to marshall the facts, documents and testimony in [his] possession, and to discover the inferences that [counsel] believes properly can be drawn from the evidence it has accumulated.'") (quoting *Sec. & Exch Comm'n v. Morelli,* 143 F.R.D. 42, 47 (S.D.N.Y. 1992)).

Honorable Sarah Netburn
April 14, 2023
Page 6

_____

Respectfully submitted,

COZEN O'CONNOR

By: __/s/  Sean P. Carter_____
SEAN P. CARTER
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel.: (215) 665-2105
Email: scarter1@cozen.com

*On behalf of the Plaintiffs' Executive Committees*

cc:     All MDL Counsel of Record (via ECF)

LEGAL\62952669\1