WHITE & CASE

April 18, 2023

VIA ECF

The Honorable Sarah J. Netburn
United States Magistrate Judge
U.S. District Court for the Southern District of New York
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, New York 10007

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
T +1 202 626 3600

whitecase.com

*In re Terrorist Attacks on September 11, 2001*, Case No. 1:03-md-1570-GBD-SN (S.D.N.Y.)

Dear Judge Netburn:

Al Rajhi Bank and Plaintiffs with claims against the Bank write to set forth the Parties' respective positions on disputed provisions in the deposition protocol under negotiation between the Parties. A proposed protocol, highlighting disputed provisions, is attached as an Exhibit. The Parties met and conferred on March 29, 2023, but were unable to reach agreement on these provisions.

**Al Rajhi Bank's Position**

The Bank recognizes the care and consideration that this Court has already put into resolving deposition disputes in this MDL when the Court issued the January 31, 2018 Protocol governing depositions for the defendants in both jurisdictional and merits discovery at that time (ECF No. 3894). The Bank thus proposes deviating from that carefully crafted Order only where dictated by the unique circumstances of these proceedings. In particular, the Bank proposes that the number of depositions be limited, given the jurisdictional nature of the inquiry and this Court's clear instruction that jurisdictional discovery against the Bank must be "limited." *See* Order 2, 10 (Mar. 26, 2021), ECF No. 6681. But where there is no good cause to depart from this Court's previous Order, the Bank proposes leaving it intact.

### Paragraph 6 – Deadline for Completion of Fact Discovery

The Bank's proposal tracks the Court's December 22, 2022 Order, stating that: "The Parties shall complete all fact depositions on or before May 18, 2023. No further extensions of jurisdictional discovery against Al Rajhi Bank will be granted."

Plaintiffs have proposed revising this Court's prior Order to state that extensions may be granted for good cause, and that good cause may be "presumed" under certain circumstances. The Bank strenuously objects to any further extensions of jurisdictional discovery and to any revision to the Court's prior Order on this.

Indeed, the January 2018 Order set deadlines for completion of depositions without any provision for extensions or "presum[tion]" of good cause, and there is no basis to include such language here. *See* Jan. 2018 Order ¶ 7.

The Honorable Sarah J. Netburn
April 18, 2023

WHITE & CASE

### Paragraph 21 – Number of Depositions Allowed

The Bank's proposal provides that, given the "limited" nature of the jurisdictional discovery inquiry into *the Bank's* conduct and specific intent (*see* Mar. 2021 Order 2, 10), Plaintiffs be limited to a deposition of the Bank pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.  There is good cause for the Court to depart from the January 2018 Order's provision on the number of depositions, because that Order set the protocol for depositions involving multiple defendants, many of whom were in merits discovery.  Here, in "limited" jurisdictional discovery, limiting Plaintiffs to a single Rule 30(b)(6) deposition is reasonable.  *See, e.g. Astor Chocolate Corp. v. Elite Gold Ltd.*, 2020 WL 2130680, at *1, 11-12 (S.D.N.Y. May 5, 2020) (in "limited jurisdictional discovery" into foreign corporation's U.S. contacts and conduct, limiting plaintiff to "a single Rule 30(b)(6) deposition"); *S & S Mgmt., Inc. v. White*, 2015 WL 3818881, at *2 (W.D.N.C. June 18, 2015) (authorizing "one Rule 30(b)(6) deposition . . . limited to five (5) hours" in limited jurisdictional discovery).

Moreover, because the limited jurisdictional inquiry is focused on the Bank's conduct and its specific intent, any relevant facts that Plaintiffs seek should be facts within the Bank's knowledge, and thus covered by a Rule 30(b)(6) deposition.  Indeed, Plaintiffs have served the Bank with a Rule 30(b)(6) notice that sets forth 45 subject areas, along with 80 distinct subparts.  The Bank has challenged many of those topics and sub-topics as overbroad and irrelevant, but any information about the Bank's knowledge that is relevant to the limited jurisdictional inquiry can be obtained by an appropriately tailored Rule 30(b)(6) deposition.

Plaintiffs also propose adding language stating that Plaintiffs may amend their Rule 30(b)(6) notice "for good cause and no less than two weeks before the date of the deposition."  This language was not included in the January 2018 Protocol and is an invitation for sandbagging.  *See, e.g.*, *Lutes v. Kawasaki Motors Corp.*, No. 10-cv-1549, 2014 WL 657712, (D. Conn. Feb. 20, 2014) (prohibiting plaintiffs "seek[ing] new 30(b)(6) deposition topics at this late stage of discovery").  There is no compelling reason to include Plaintiffs' language here, particularly given the limited nature of the jurisdictional discovery inquiry and Plaintiffs' longstanding familiarity with the issues.

### Paragraph 56 – Time Limits for Depositions Requiring Translator

Consistent with the January 2018 Protocol (at ¶ 80), the Bank's proposal provides that time limits for depositions shall be increased by half (to 10.5 hours) if the witness requires a translator.

Plaintiffs have pointed to a 2020 colloquy in which this Court expressed openness to providing more time if needed, but notably, the Court did *not* issue an order there increasing the deposition time to 14 hours.  *See* Tr. 144:16-23 (May 21, 2020).  Given the limited jurisdictional inquiry, in depositions requiring an interpreter, the deposition time should be limited 10.5 hours, as it has been in other protocols in this MDL.  Of course, the Bank will be reasonable should compelling circumstances arise that necessitate additional time.

### Paragraph 63 – Objections

The Bank's proposal on objections during a deposition tracks the January 2018 Protocol (at ¶ 90). Plaintiffs' proposal to add language prohibiting "coach[ing]" of the witness via "objections or interruptions to identify a[n] ostensible mistranslation" is unnecessary and presumes a lack of

professionalism and ethics of the Bank's counsel. The Bank has not proposed corresponding restrictions on hypothetical improper conduct by deposing counsel.

Plaintiffs' additional proposal, which would allow the questioning attorney to unilaterally remove the witness "during any discussions related to alleged mistranslation issues," is also unnecessary, and would further drag out the total deposition time for any deposition requiring an interpreter. There is, of course, no standard practice of excusing the witness every time counsel argue over an objection, let alone permitting the questioning attorney to unilaterally remove the witness. If the Parties have a dispute during a deposition, they should follow the Court's rules to resolve those disputes. But Plaintiffs should not be permitted to drag out a deposition by removing the witness from the room anytime they question the intent of an objection or an "interruption to identify a[n] ostensible mistranslation."

Plaintiffs' argument that this provision is necessary to prevent "coach[ing]" is similar to an argument that these same Plaintiffs made in their case against Saudi Arabia and that this Court rejected. *See In re Terrorist Attacks on September 11, 2001*, 337 F.R.D. 575, 579 (S.D.N.Y. 2020) (Netburn, M.J.). There, in opposing remote depositions, Plaintiffs argued that counsel for Saudi Arabia would "attempt to 'obstruct' questioning." But this Court found that Plaintiffs had not "*specifically demonstrated*" that Saudi Arabia's counsel's "hypothetical" obstruction was "so likely or would be so disruptive as to overcome the presumptive validity of remote depositions." *Id*. (emphasis added). Likewise, here, Plaintiffs have not "specifically demonstrated" that any "hypothetical" objections would be "so likely or would be so disruptive" as to warrant Plaintiffs' proposed provision.

**Plaintiffs' Position**

### Plaintiffs' Position As to Paragraph 6:

The parties' disagreement is limited to whether the protocol should acknowledge that a deposition may proceed after the May 18, 2023 deadline, upon a showing of good cause, including where ARB has objected to a deposition that has been timely noticed, and the Court has not had an occasion to rule on the objection prior to the discovery deadline. Plaintiffs believe that a deposition should be able to proceed after the deadline, under those limited circumstances, and ARB asserts that it should not.

Plaintiffs respectfully submit that ARB's position ignores the scope of the matters pending before this Court in this MDL and in other cases. Plaintiffs do not presume that the Court will be able to immediately turn its attention to objections filed by ARB, and to the extent the Court overrules objections filed by ARB, in whole or in part, at some point after the deadline, the deposition should proceed. Plaintiffs do not anticipate that this accommodation would impact the timeline for completing the overall jurisdictional inquiry as to ARB. On the other hand, in the absence of some provision acknowledging a good cause exception, ARB would be incentivized to broadly object to Plaintiffs' deposition notices.

### Plaintiffs' Position Statement with regard to Paragraph 21:

Plaintiffs have agreed to serve their 30(b)(6) notice on ARB six weeks in advance of the 30(b)(6) deposition (Plaintiffs served the 30(b)(6) notice on March 22, 2023 noticing the

The Honorable Sarah J. Netburn	**WHITE & CASE**
April 18, 2023

deposition for May 11, 2023), providing far greater notice than contemplated by the Federal Rules. However, the Court's resolution of pending matters is likely to result in the production of additional documents by ARB, and Plaintiffs respectfully submit that they should be permitted an opportunity to amend their deposition notice, based on the content of documents produced subsequent to the date of that notice.[1] Again, this is a limited circumstance, which would apply only to matters disclosed in documents produced subsequent to service of the deposition notice. Even in that case, ARB would be provided two weeks advance notice through the amendment process. As the amendment would necessarily concern the content of ARB's documents, it is all the more reasonable to expect that ARB would be able to prepare a designee in time for the deposition.

ARB maintains that Plaintiffs should be limited to a single deposition of a 30(b)(6) witness, and should be afforded no opportunity to conduct any fact witness depositions. They advised Plaintiffs that they believe that this is appropriate in the context of "limited jurisdictional discovery." During a recent meet and confer, Plaintiffs asked ARB if they could provide any case authority for their position, and ARB indicated that there were cases that, in its view, supported its proposal. ARB has not, however, shared any of those citations with Plaintiffs as of the writing of this letter.

Throughout the MDL, the Court has authorized Plaintiffs to conduct depositions of percipient fact witnesses, including with regard to jurisdictional inquires, and it should adhere to that rule here and ARB's draconian limitation of the number of depositions, and proposal that Plaintiffs should be limited to a single 30(b)(6) witness deposition, is inappropriate. As the Court has recognized, there is a broad range of issues that are relevant to the jurisdictional inquiry authorized by the Second Circuit, and those arise in the context of claims arising from the worst terrorist attack in history. Meanwhile, ARB has severely limited its searches for documentary evidence bearing on the jurisdictional question, citing its own disorganized files and convoluted record keeping system. These circumstances, solely of ARB's making, have severely limited Plaintiffs ability to conduct discovery via documents, and render depositions of any remaining fact witnesses singularly important. This is especially true insofar as the inquiry concerns ARB's state of mind and that of its principals, related to the sponsorship of terrorism.

On April 4, 2024, Plaintiffs noticed depositions of four fact witnesses from ARB and during a meet and confer on April 13, 2023, counsel for ARB indicated that only one of the fact witnesses is still employed by ARB. In addition to the one current employee (Abdullah bin Suleiman al Rajhi), Plaintiffs anticipate noticing one or two additional fact witnesses.[2]

**Plaintiffs' Position Statement with regard to Paragraph 56:**

During the hearing on May 21, 2020, this Court recognized that the time for a deposition should be extended by double the period contemplated by the Federal Rules, where the process of providing Arabic translation for the testifying witness requires that the translator await completion

---

[1] For example, on April 17, 2023, ARB produced an additional 320 pages of documents which are mostly in Arabic and a review of those documents might prompt an amendment of the 30(b)(6) deposition noticed for May 11, 2023.
[2] During the April 13, 2023, meet and confer, ARB indicated that it intended to object to the fact deposition of Abdullah bin Suleiman al Rajhi based on his role as Chairman of ARB invoking the apex deposition doctrine. Plaintiffs will address the merits of ARB's position once ARB has filed a motion for a protective order.

of the questioning attorney's question in full before translating that question, and completion of the answer in full before translating that answer. That is in fact the procedure that has been applied for depositions in the MDL, and the reality is that it more than extends the time for completing a particular question by two times.

Plaintiffs have no intention of unnecessarily prolonging depositions, and counsel for Plaintiffs who is likely to take lead on these depositions has been consistently efficient in conducting depositions in this MDL.  However, because very few fact witnesses remain available, ARB's 30(b)(6) designees will be testifying as to the bulk of the matters within the scope of discovery.  Plaintiffs are concerned that ARB may designate a large number of individuals to testify in response to Plaintiffs' 30(b)(6) notice.  If that is the case, Plaintiffs will need to spend time with each witness for general questioning about the witness' background and the activities undertaken to prepare for the deposition.  Between the time consumed addressing those issues with multiple 30(b)(6) witnesses, and the translation time involved in questioning witnesses who are anticipated to testify in Arabic, a 50% increase in the normal allotment of time for a deposition may not be sufficient.

**Plaintiffs' Position Statement with regard to Paragraph 63:**

As the Court is aware, Plaintiffs have considerable experience with depositions in this MDL, conducted with the involvement of a translator.  In many cases, defendants have brought their own translators to the depositions, and at times those "check translators" have interjected concepts or engaged in lengthy dialogue with the translator, in ways that interfere with the questioning of the witness can could be construed as efforts to coach the witness.  Plaintiffs believe it is appropriate to include a provision in the protocol allowing counsel to request that the witness be removed, in the event that objections related to translations and associated dialogue interfere with the efficient conduct of the deposition.

\*     \*     \*

Respectfully submitted,

/s/ *Nicole Erb*

Christopher M. Curran
Nicole Erb
Reuben J. Sequeira

*Counsel for Al Rajhi Bank*