# Exhibit 1

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |
|---|---|
| | ECF Case |

This document relates to:

*Underwriting Members of Lloyd's Syndicate 2, et al., v. Al Rajhi Bank, et al.*, No. 16-cv-07853
*Addesso, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09937
*Aguilar, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09663
*Hodges, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-00117
*Aiken, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-00450
*Charter Oak Fire Insurance Co., et al. v. Al Rajhi Bank, et al.*, No. 17-cv-02651
*Abarca, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03887
*Arrowood Indemnity Co., et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03908
*Abedhajajreh, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-06123
*Muenchener Rueckversicherungs-Gesellschaft Aktiengesellschaft in Muenchen, et al. v. Kingdom of Saudi Arabia, et al.*, Case No. 17-cv-07914
*Abbate, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-08617

## REVISED NOTICE OF ORAL DEPOSITION OF DEFENDANT AL RAJHI BANK PURSUANT TO FED. R. CIV. P. 30(b)(6)

To:     Defendant Al Rajhi Bank ("ARB"), through its attorney of record, Christopher Curran, White & Case LLP, 701 Thirteenth Street, N.W., Washington D.C. 20005.

**PLEASE TAKE NOTICE** that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the Plaintiffs' Executive Committees, on behalf of Plaintiffs in the above-captioned multidistrict litigation, will take the deposition upon oral examination of defendant ARB beginning at 9:30 a.m. on the 11th day of May 2023, and from day to day on adjourned dates until completed with such adjournments as to time and place as may be necessary.

1.      The deposition shall be taken before a notary public or other person authorized by law to administer oaths, via remote conferencing or such other time and place agreed upon by counsel.

2.      The deposition will be recorded by stenographic, sound, and video means.

3.      Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, ARB is directed to designate a person or persons knowledgeable and prepared to testify on behalf of ARB concerning all information known or reasonably available to ARB regarding the matters for examination described below.

4.      The Plaintiffs' Executive Committees, on behalf of Plaintiffs in the above-captioned multidistrict litigation, request that ARB provide the names and titles of the person or persons it will designate to give testimony and summaries of the areas in which each

designated person will give testimony no later than 10 business days before the date of the deposition. *See* ABA, Civil Discovery Standards at 37.

5.  The Plaintiffs' Executive Committees, on behalf of Plaintiffs in the above-captioned multidistrict litigation, request that ARB produce at each deposition a copy of the designated representative's current curriculum vitae or résumé for the purposes of inspection and/or photocopying.

6.  By designating a representative, ARB indicates its representative has authority to speak on its behalf on the matters listed in this notice – not only to facts, but also to subject beliefs and opinions.

7.  If it becomes clear that the chosen representative is unable to respond to questions on the matters for which he or she has been designated, ARB must immediately provide a substitute knowledgeable witness, even if the initial designation was made in good faith.

8.  The testimony elicited in the deposition from the designated witness represents ARB's knowledge, not the individual deponent's knowledge. ARB must conduct a thorough investigation in response to the deposition notice and must prepare a witness to testify to all matters "known or reasonably available to the organization." Therefore, if ARB's designee is not knowledgeable about the matters specified in the deposition notice, it must nonetheless prepare such designee to give knowledgeable, binding answers. "Reasonably available" information includes all documents that the organization has the authority, legal right, or practical ability to obtain. An inadequately prepared designated witness will amount to an impermissible refusal to answer and a sanctionable failure to appear.

9.  This deposition shall be used for any purpose permitted under the Federal Rules of Civil Procedure.

## <u>Areas of Inquiry</u>

1.  ARB's knowledge  of the relationships between ARB, Suleiman al Rajhi, Abdul Rahman al Rajhi, the Da'wah Organizations – Al Haramain Islamic Foundation ("Al Haramain"), International Islamic Relief Organization ("IIRO"), and Muwaffaq Foundation with respect to the following:

    a)  ARB accounts established or held in the name of, on behalf of, and/or for the benefit of the Da'wah Organizations and their Principals;

    b)  financial contributions provided to the Da'wah Organizations and their Principals by ARB, Suleiman al Rajhi, and Abdul Rahman al Rajhi, , including the contribution of *zakat* and *haram* funds;

    c)  communications between ARB, Suleiman al Rajhi, and Abdul Rahman al Rajhi, , and the Da'wah Organizations and their Principals; and

    d)  Suleiman al Rajhi's membership or service on IIRO boards, councils, committees, or governing bodies.

2.  ARB's knowledge of the relationships between ARB, Suleiman al Rajhi, Abdul Rahman al Rajhi, and the Ministry of Islamic Affairs with respect to the following:

    a)    Financial contributions provided to the Ministry of Islamic Affairs by ARB, Suleiman al Rajhi, Abdul Rahman al Rajhi;

    b)    financial contributions provided to Khalid al Sowailem and the Da'wah Office in America (a/k/a the "Propagation Office in America"), operating out of the Saudi Embassy in Washington D.C., by ARB, Suleiman al Rajhi, Abdul Rahman al Rajhi,

    c)    communications between ARB, Suleiman al Rajhi, Abdul Rahman al Rajhi, and the Ministry of Islamic Affairs; and

    d)    ARB's understanding of the role of the Ministry of Islamic Affairs in the supervision, management, or oversight of Al Haramain;

    e)    instructions received by ARB from the Ministry of Islamic Affairs concerning Al Haramain's accounts at ARB;

    f)    any review, examination, or inquiry conducted by ARB's Legal Affairs Division and Internal Auditing Division relating to instructions received from the Ministry of Islamic Affairs concerning Al Haramain; and

    g)    the Ministry of Islamic Affairs' control, oversight, supervision, and management over Al Haramain's accounts at ARB, including the involvement of the Minister of Islamic Affairs, Saleh bin Abdul Aziz bin Mohamed al ash Sheikh.

3.  ARB's knowledge of communications between ARB, Suleiman al Rajhi, Abdul Rahman al Rajhi, and the Saudi Arabian Monetary Authority ("SAMA"), with respect to the following:

    a)    SAMA's general role in overseeing, regulating, and supervising ARB's banking operations, practices, and procedures;

    b)    SAMA's post-9/11 inquiries, investigations, and audits of ARB accounts, banking transactions, and customers, including communications regarding same;

    c)    the roles and responsibilities of ARB's Legal Affairs Division and Internal Auditing Division in responding to SAMA's post-9/11 inquiries, investigations, and audits relating to terrorism or terrorism financing, including communications regarding same;

    d)    the 2003 audit of ARB conducted by Ernst & Young;

    e)    the role and responsibilities of SAMA's Self-Supervisory Committee, its membership, and ARB's representation on the Committee;

    f)    the treatment of accounts for Al Haramain and IIRO in the wake of designations of offices of those organizations after 9/11;

g)   SAMA's post-9/11 investigations of accounts and banking transactions associated with Al Haramain and IIRO branch offices; and

h)   communications between SAMA and ARB concerning inquiries from ARB officials, including Abdullah Suleiman al Rajhi, regarding the continued provision of banking services to Al Haramain, IIRO, and other charities post-9/11.

4.  ARB's  maintenance of accounts for Osama bin Laden, Wa'el Hamza Jelaidan, Fahad al Thumairy, Yassin Kadi, Yassin Kadi Foundation Branch, Soliman al Buthe, Mohammed Jamal Khalifa, Abd Hamid Suleiman Mohamed al Mujil, Mamduh Mahmud Salim, Hani Hanjour, Abdel Aziz Abdel Rahman Mohamed al Quba al Omari, Ahmed Saleh Saeed al Kouchi al Ghamdi, Hamza Saleh Ahmed al Abdul Wahed al Ghamdi, Majid Mishaan Ghanem Mawqid, Saeed Abdullah Ali al Salman al Ghamdi, Wael Muhammad Abdullah al Saqli al Shahri, Bank al Taqwa, Al Baraka Exchange, Al Barakat Bank of Somalia, including but not limited to:

a)   Post-9/11 inquiries, investigations, and audits of those accounts conducted by SAMA, including communications regarding same; and

b)   Post-9/11 inquiries, investigations, and audits of those accounts conducted by ARB's Legal Affairs Division and/or Internal Auditing Division, including communications regarding same.

5.  ARB's policies, practices, procedures, and controls concerning Anti-Money Laundering ("AML"), Combatting the Financing of Terrorism ("CFT"), Know Your Customer ("KYC"), Customer Identification ("CI"), Suspicious Transaction Reports ("STRs"), and Suspicious Activity Reports ("SARs"), including but not limited to SAMA's oversight and supervision concerning same.

6.  The steps taken or measures implemented between August 7, 1998 and September 11, 2001 to strengthen ARB's AML or CTF practices and controls, in order to prevent terrorist financing activities.

7.  The steps taken or measures implemented between September 12, 2001 and December 31, 2004 to strengthen ARB's AML or CTF practices and controls, in order to prevent terrorist financing activities.

8.  ARB's policies, practices, procedures, and controls prior to September 11, 2001 to guard against and prevent the financing of terrorism through purported charitable organizations.

9.  ARB's policies, practices, procedures, and controls between September 12, 2001 and December 31, 2004 to guard against and prevent the financing of terrorism through purported charitable organizations.

10.  ARB's policies, practices, procedures, and controls for monitoring press reporting relating to terrorist activities for possible involvement of ARB account holders in terrorism or terrorism financing.

11. ARB's policies, practices, procedures, and controls concerning consolidation of accounts, requests to transfer an account into the name of a different accountholder, and requests to transfer an account held in the name of an individual into the name of an organization.

12. ARB's knowledge of the the relationships between ARB, Suleiman al Rajhi, Abdul Rahman al Rajhi, and the Suleiman Abdul Aziz Al Rajhi Charitable Foundation ("Foundation"), with respect to the following:

   a) ARB and Suleiman al Rajhi's oversight, supervision, management, and/or control over the Foundation's operations and activities, including the distribution of funds to global beneficiaries;

   b) the roles and responsibilities of Abdul Rahman al Rajhi, Saleh bin Sulaiman al Habdan, and Abdullah bin Ibrahim al Misfer at the Foundation;

   c) all information concerning any committee established by ARB and Suleiman al Rajhi to provide oversight, supervision, management, and/or control over the Foundation's operations and activities, including the distribution of funds to global beneficiaries;

   d) all ARB accounts established or held in the name of, on behalf of, and/or for the benefit of the Foundation and its Principals; and

   e) financial contributions provided to the Da'wah Organizations and their Principals by the Foundation.

13. ARB's relationship with Chase Manhattan Bank (presently J.P. Morgan Chase) with respect to the following:

   a) Whether ARB had a correspondent banking relationship with Chase Manhattan Bank at between 1998 and 2004;

   b) The nature and purpose of ARB's relationship with Chase;

   c) The identity of the individuals at ARB who had signatory authority over ARB's accounts with Chase from 1998 until 2004

   d) The number of transactions (including gross yearly dollar amounts) between ARB and Chase Manhattan Bank for 1998, 1999, 2000, 2001 and 2002.

   e) Chase Manhattan Bank account(s) used by ARB, Suleiman al Rajhi, and Abdul Rahman al Rajhi to distribute charitable donations to beneficiaries in the United States

   f) Chase Manhattan Bank account(s) used by ARB, Suleiman al Rajhi, and Abdul Rahman al Rajhi to distribute charitable donations to beneficiaries in the United States on behalf of Suleiman al Rajhi.

      g)       Chase Manhattan Bank account(s) used by ARB, Suleiman al Rajhi, and Abdul Rahman al Rajhi to distribute charitable donations to beneficiaries overseas on behalf of Suleiman al Rajhi.

14. ARB's knowledge of the financial contributions provided to the following beneficiaries by ARB, Suleiman al Rajhi, Abdul Rahman al Rajhi, and/or the Foundation:

      a)       Saudi Embassy in Washington, D.C.;

      b)       Saudi Embassy in Zambia;

      c)       Religious Attaché Office in Sudan;

      d)       Committee for the Promotion of Virtue and the Prevention of Vice;

      e)       Sheikh Abdul Aziz bin Abdullah bin Baz;

      f)       Al Noor Mosque, Berlin, Germany;

      g)       Caravan (a/k/a Karavan);

      h)       Taibah International Aid Association;

      i)       Al Furqan Institute; and

      j)       American Open University in America.

15. The reasons for Suleiman al Rajhi's departure from, and relinquishment of control over, ARB.

16. The relationship between ARB and Saleh al Hussayen, including but not limited to:

      a)       Hussayen's tenure with ARB, including all positions held by Hussayen at ARB;

      b)       Hussayen's trip to the United States in 2001 prior to the September 11th attacks; and

      c)       all information concerning any investigation conducted by the Saudi government, and/or any internal investigation conducted by ARB, concerning Hussayen's trip to the United States in 2001, his stay at the Marriott Residence Inn on September 10, 2001, and his post-9/11 detainment by the FBI.

17. Information  ARB provided to Saudi government authorities, SAMA and/or U.S. government representatives in connection with any investigation regarding the alleged connection between ARB and support for al Qaeda and entities known to ARB or identified as al Qaeda associated terrorist groups.

18. ARB's knowledge of  post-9/11 diplomatic engagements between U.S. officials and Saudi government counterparts relating to: (1) U.S. concerns that ARB was "used by al Qaida and like-minded terrorist groups;" (2) the exchange of "information documenting specific instances of

terrorists using Al Rajhi Bank, including information about specific accounts and transactions of interest;" and (3) the Saudi government's agreement to conduct a joint review of specific ARB accounts and transactions with U.S. Treasury Department officials.

19. ARB's knowledge of the allegation that Suleiman al Rajhi directed ARB's board members in December 2002 "to explore financial instruments that would allow the bank's charitable contributions to avoid official Saudi scrutiny."

20. ARB's knowledge of the allegation that Suleiman al Buthe, an official of Al Haramain, deposited $130,000.00 in traveler's checks into an account at ARB, which were sent to al Qaeda fighters in Chechnya.

21. ARB's knowledge of the CIA's assessment that "Al-Rajhi Bank has been a conduit for funds for Islamic extremists and for the 11 September hijackers, [REDACTED] Sulayman al-Rajhi, the family patriarch, has been widely reported to support Islamic extremist policy."

22. ARB's knowledge of the CIA's assessment that "Al-Rajhi Bank has maintained accounts for individuals linked to Usama Bin Ladin, [REDACTED] and individuals with ties to the Egyptian Islamic Jihad. Islamic extremists in Yemen named Al Rajhi Bank as a preferred bank for transactions."

23. ARB's knowledge of the CIA's assessment that "'Sheikh Rajhi,' [REDACTED] deposited [REDACTED] into a [REDACTED] bank account controlled by Maktab al-Khidamat, an Islamic charity closely associated with Usama Bin Ladin since the early 1980s."

24. ARB's knowledge of the CIA's assessment that "[t]he religiously ultraconservative Al Rajhi family – owners of the Al Rajhi Banking & Investment Company, with $8.6 billion of total assets – appears to be a key financial backer of the Afghan Mujahideen, [REDACTED]. The family and the bank purportedly also support NGOs who help finance the Bosnian Mujahideen, HAMAS, and other extremists."

25. ARB's knowledge of the CIA's assessment that "Suleiman Al Rajhi is the Kingdom's largest payer of *zakat* (charitable donations)" and "maintains a staff of 20 to manage his unpublicized charitable endeavors."

26. ARB's knowledge of the CIA's assessment that a "member of the Al Rajhi family is charged with overseeing financial support to the Afghan Mujahideen along with the IIRO Director in Kabul, [REDACTED]. ARBIC apparently has been a conduit for funding the Mujahaddin since the early 1990s."

27. ARB's knowledge of the CIA's assessment that ARB is "[u]sed by some members of Usama Bin Ladin's Islamic Army to maintain accounts and transfer funds."

28. ARB's knowledge of the CIA's assessment that "some Al Rajhi branches in Saudi Arabia have been used by members of the al Qa'ida organization."

29. ARB's knowledge of the CIA's assessment that "[s]enior al-Rajhi family members have long supported Islamic extremists and probably know that terrorists use their bank. [REDACTED] senior al-Rajhi family members control the bank's most important decisions and that ARABIC's

principle managers answer directly to Sulayman. The al-Rajhis know they are under scrutiny and have moved to conceal their activities from financial regulatory authorities."

30. ARB's knowledge of the CIA's assessment that "[s]everal al-Qa'ida linked individuals and organizations have held bank accounts at Al-Rajhi."

31. ARB's knowledge of the CIA's assessment that Osama bin Laden "used an account or accounts at Al-Rajhi Bank to pay al-Qa'ida operatives."

32. ARB's knowledge of the CIA's assessment that "Senior al-Rajhi family members have long supported Islamic extremists and probably know that terrorists use their bank. Bank chairman Sulayman and several other al-Rajhis have given money to suspicious individuals and organizations worldwide. Moreover, Sulayman's tight control of ARABIC activities suggest he is witting that his bank is attractive to extremists."

33. ARB's knowledge of the CIA's assessment that "[s]enior al-Rajhi family members, including family patriarch Sulayman al-Rajhi, have donated money to NGOs suspected of supporting terrorism."

34. ARB's knowledge of the CIA's assessment that "al-Rajhi Bank in Saudi Arabia has handled numerous transactions of NGOs with known ties to al-Qa'ida such as [Global Relief Foundation] and al-Haramain."

35. ARB's relationship with Towayan Abdallah al Towayan, and his transfer to the United States "at the behest of Al-Rajhi" With respect to the following:

    a) From when to when was he in the United States;

    b) His job titles for each year he was employed by ARB;

    c) Why he was sent to the United States;

    d) Who at ARB sent him to the United States;

    e) Who was he reporting to while in the United States;

    f) Whether he had an ARB email account and whether any of his emails were lost as a result of the 2009 email server crash;

    g) Whether Chase Manhattan bank was used for any transactions between ARB Towayan Abdallah al Towayan while he was in the United States;

    h) The addresses of all of his residences while in the United States;

    i) His job responsibilities while in the United States;

    j) Whether he conducted any activities of business on behalf of the Foundation

    k) Why he left ARB in 2002;

l)      ARB's investigation concerning his connections to any of the 9/11 hijackers or any other persons or organizations associated with Al Qaeda.

36. All issues raised in, and resolution of, *Al Rajhi Banking & Investment Corp. v. Wall Street Journal Europe*, [2003] EWHC 1358 (QB).

37. ARB's use of email including:

    a.     when ARB's employees first started using email;

    b.     the use of email by senior executives of ARB;

    c.     whether ARB allowed its email accounts to used by Al Rajhi family members, for activities other than ARB's business;

    d.     whether Al Rajhi family members used ARB's email accounts to conduct the business of the Foundation or other charitable activities.

38. The alleged crash of ARB's email archiving system in 2009, including but not limited to:

    a)     The name of the email archiving system that allegedly crashed and when it was originally initiated by ARB;

    b)     The scope of emails or other data that were archived by this system;

    c)     The retention or destruction policy for this archiving system;

    d)     The names of other legacy email archiving systems used by ARB and when those were initiated by ARB;

    e)     The date of the alleged incident;

    f)     The identities of the individuals at ARB who were responsible for administering and managing the email archiving system at the time of the alleged incident;

    g)     The circumstances and cause of the alleged incident;

    h)     ARB's efforts to recover and restore the email archiving system following the alleged incident;

    i)     The amount and/or scope of emails or other data lost in the alleged incident;

    j)     ARB's disclosure of the alleged incident to the Saudi Arabian Monetary Authority ("SAMA") and/or Saudi government; and

      k)      Whether any of the allegedly lost emails were placed in any litigation hold, or other protective mechanism by ARB prior to the alleged incident, to preserve and prevent the loss or destruction of emails relevant to claims against ARB in the 9/11 MDL.

39. The authenticity of the documents produced by ARB in the course of this multidistrict litigation.

40. The actions taken by ARB to locate and produce materials required to be produced in this litigation, including but not limited to the categories of documents responsive to Plaintiffs' First Set of Jurisdictional Requests for Production of Documents, dated May 11, 2021, as authorized by Magistrate Judge Sarah Netburn's November 22, 2021 Order (ECF No. 7378), and mandated by the Second Circuit Court of Appeals.

41. The operation and use of the following electronic systems by ARB to conduct searches for documents responsive to Plaintiffs' First Set of Jurisdictional Requests for Production of Documents:

      a)      Core Banking System;

      b)      General Ledger;

      c)      O'Neill System; and

      d)      FileNet System.

42. ARB's "Customer Information Files," and searches of the CIFs for responsive communications between ARB and the Da'wah Organizations.

43. The hard copy and electronic repositories ARB searched for documents responsive to Plaintiffs' First Set of Jurisdictional Requests for Production of Documents.

44. ARB's document retention and destruction policies from 1998 and continuing through the present.

45. Any litigation hold initiated by ARB in response to any litigation threatened or commenced relating to the September 11th attacks, including but not limited to:

      a)      when ARB first learned that it was named as a defendant in any litigation arising out of the September 11th attacks and what documents and electronically stored information ("ESI") were placed in a litigation hold as a result;

      b)      when ARB first learned that Suleiman al Rajhi and/or any member of the al Rajhi family was named as a defendant in any litigation arising out of the September 11th attacks and what documents and ESI were placed in a litigation hold as a result;

      c)      when ARB first learned that any member of the its Board of Directors or its Sharia Board were named as a defendant in any litigation arising out of the September 11th attacks and what documents and ESI were placed in a litigation hold as a result;

d)      when ARB first learned that any of its customers were named as a defendant in any litigation arising out of the September 11th attacks and what documents and ESI were placed in a litigation hold as a result;

e)      the current location of all documents and ESI placed in a litigation hold as a result of the 9/11 litigation, including all digital repositories; and

f)      whether any documents placed in a litigation hold as a result of the 9/11 litigation have been destroyed, including when they were destroyed and who authorized the destruction.

Dated: April 17, 2023                          Respectfully,

                                               /s/  Sean P. Carter
                                               Sean P. Carter, Esq.
                                               William N. Clark, Jr., Esq.
                                               J. Scott Tarbutton, Esq.
                                               COZEN O'CONNOR
                                               1650 Market Street, Suite 2800
                                               Philadelphia, PA 19103
                                               (215) 665-2000

                                               Attorneys for *Lloyd's Syndicate 2*
                                               and *Muenchener* Plaintiffs


                                               James L. Bernard, Esq.
                                               Patrick N. Petrocelli, Esq.
                                               STROOCK & STROOCK & LAVAN LLP
                                               180 Maiden Lane
                                               New York, NY 10038
                                               (212) 806-5400

                                               Attorneys for *Arrowood* Plaintiffs


                                               Robert C. Sheps, Esq.
                                               SHEPS LAW GROUP, P.C.
                                               25 High Street
                                               Huntington, NY 11743
                                               (631) 249-5600

                                               Attorneys for *Charter Oak* Plaintiffs


                                               Christopher R. LoPalo, Esq.
                                               NAPOLI SHKOLNIK PLLC

400 Broadhollow Road, Suite 305
Melville, NY  11747
(212) 397-1000

Attorneys for *Augilar*, *Abarca*, *Abedhajajreh*, *Addesso*, *Aiken*, *Hodges*, and *Abbate* Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of April 2023 I caused a copy of the foregoing Revised Notice of Oral Deposition of Defendant Al Rajhi Bank Pursuant to Federal Rule of Civil Procedure 30(b)(6) to be served by email upon the following for further distribution to counsel for all parties in this action:

James L. Bernard, Esq.
Patrick N. Petrocelli, Esq.
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038
jbernard@stroock.com
ppetrocelli@stroock.com

Robert C. Sheps, Esq.
SHEPS LAW GROUP, P.C.
25 High Street
Huntington, NY 11743
rsheps@shepslaw.com

Christopher R. LoPalo, Esq.
NAPOLI SHKOLNIK PLLC
400 Broadhollow Road, Suite 305
Melville, NY 11747
clopalo@napolilaw.com

Reuben J. Sequeira, Esq.
White & Case LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005-3807
rsequeira@whitecase.com

Alan R. Kabat, Esq.
Bernabei & Kabat, PLLC
1400 16th Street, N.W., Suite 500
Washington, D.C. 20036
kabat@bernabeipllc.com


　William N. Clark, Jr.　
William N. Clark, Jr.

LEGAL\63026363\1.docx