WHITE & CASE

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
T +1 202 626 3600

whitecase.com

April 24, 2023

VIA ECF

The Honorable Sarah J. Netburn
United States Magistrate Judge
U.S. District Court for the Southern District of New York
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, New York 10007

*In re Terrorist Attacks on September 11, 2001*, Case No. 1:03-md-1570-GBD-SN (S.D.N.Y.)

Dear Judge Netburn:

Al Rajhi Bank writes to oppose Plaintiffs' Third Motion to Compel (ECF No. 9039), which fails to establish that Plaintiffs' Second Set of Jurisdictional Requests are relevant to the "limited" jurisdictional inquiry authorized by the Second Circuit and ordered by this Court. *See* Mar. 26, 2021 Ord. 2, 10 (ECF No. 6681). Plaintiffs' motion also ignores (and conspicuously fails to attach) the Bank's objections to the Second Requests as being vague, overbroad, unduly burdensome, and not proportional to the needs of the case. *See* ARB Resps. & Objs. 1-20 (Mar. 6, 2023) (Exh. 1). As ordered by the Court, jurisdictional discovery against the Bank closes May 18, 2023, with "no further extensions." *See* Dec. 22, 2022 Ord. 1 (ECF No. 8812).

The ongoing personal-jurisdiction inquiry is limited to "whether ARB provided financial support to both charities and known extremist operatives with the specific intent that this support be used to aid in terrorist acts in the United States." Nov. 2021 Ord. 6-8 (ECF No. 7378). Because Plaintiffs' Requests far exceed this "limited" jurisdictional inquiry — for example, by seeking information on individuals not alleged to be al Qaeda operatives or linked to the Bank, and about whom the FAC makes no allegations — they should be denied in their entirety. *See* Nov. 2021 Order 3-4 (explaining plaintiffs "may not conduct a fishing expedition," and requests must be "tightly focused" on the "limited" jurisdictional inquiry (quotations omitted)).

**Request No. 1** is not limited to "specific" individuals, as Plaintiffs (at 1) contend. Rather, it seeks information on "any ARB account for any entity in which the[se] individuals held any beneficial interest" or "any ARB account" over which these individuals "had any actual or potential beneficial interest." Complying with this Request thus would require the Bank to examine every account at the Bank and somehow determine whether the account was established "on behalf of" or "for the benefit of" these individuals or entities in which they have any beneficial interest, and whether these individuals had "any actual *or potential* beneficial interest" in the account.

As to the purported Al Haramain and IIRO officials, this Request seeks irrelevant information and is overbroad. The Request seeks to expand the scope of the "limited" jurisdictional inquiry beyond the Bank's alleged support for particular charities to reach accounts of individuals and entities purportedly *connected to* those charities. *See* Pls.' Mot. 1 (seeking, for example, information on "Director of Al Haramain's Palestine Division"). Plaintiffs make no allegations concerning any of these purported charity officials in the FAC. *See Unger v. Cohen*, 125 F.R.D. 67, 71 (S.D.N.Y. 1989) (stating scope of discovery "determined in large measure by the allegations of the

pleading"). Plaintiffs further mischaracterize (at 1) this Request as relevant to probe supposed "payments to the charities." But this Request is not limited to payments to the charities; it seeks "account and transaction records," with no limiting principle, *and* "complete" KYC files for "all" accounts covered by the Request. *Id.* Plaintiffs fail to show that such expansive discovery is either relevant or proportional to the needs of the case.

As to "Abdul Rahman Al Rajhi," "Saleh bin Sulaiman al Habdan," and the "Suleiman Abdul Aziz Al Rajhi Charitable Foundation" ("Foundation"), this Request is irrelevant. Discovery into "Abdul Rahman al Rajhi" does not "connect" to the Bank. *See* Nov. 2021 Ord. 13. No individual by the name of "Abdul Rahman al Rajhi" was ever an Al Rajhi Bank official. *See* ARB Dec. 17, 2021 Ltr. 2 (Exh. 2). Nor do Plaintiffs allege that either "Abdul Rahman al Rajhi" or "Saleh bin Sulaiman al Habdan" were "known extremist operatives," or otherwise address either of them in the FAC. *See* Nov. 2021 Ord. 6. And the Court has already rejected Plaintiffs' request for documents related to "transfers of money to . . . beneficiaries managed or otherwise overseen by Abdul Rahman al Rajhi." *Id.* at 11. And any purported connection between these individuals and the Foundation is irrelevant because the Foundation is not and has never been a parent, subsidiary, or affiliate of the Bank. ARB Mot. Prot. Ord. 3 (ECF No. 9038).

**Request Nos. 2-4, 6-8**, seeking discovery on the Foundation itself, are overbroad, irrelevant, and beyond the scope of the limited jurisdictional discovery into *the Bank*'s alleged conduct and "specific intent." *Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank*, 779 Fed. App'x 66, 68-69 (2d Cir. 2019). This Court already denied Plaintiffs' similar request for documents on the SAAR Network, explaining that, while the FAC "alleges that Suleiman al Rajhi created and funded the various SAAR Network entities," it "does not actually allege ties between ARB and the SAAR Network," or "any direct connection between ARB and the SAAR Network." Nov. 2021 Ord. 15-16. Plaintiffs likewise do not "actually allege ties" or "any direct connection" between *the Bank* and the Foundation. Instead, Plaintiffs again contend that discovery is relevant because the Foundation was "founded" by Sulaiman Al Rajhi and his "brothers" (Mot. 1) — the same argument this Court already rejected.

**Request No. 2**, seeking "all documents concerning" the Foundation, with no "restrictive principle," should be denied for the additional reasons that it is overbroad, disproportionate, and "likely to reveal vast amounts of superfluous information." Nov. 2021 Ord. 9.

**Request No. 3**, seeking documents concerning "any committee" established "by ARB, Suleiman al Rajhi, and/or the Foundation" to "provide oversight, supervision, management, and/or control over the Foundation's operations and activities," is untethered to the "limited" jurisdictional inquiry and so is irrelevant, overbroad and disproportionate. The Request also is unfounded because Plaintiffs assert no basis to suggest any such committee exists at the Bank. Where "Plaintiffs merely speculate that additional documents must exist, their request [should be] denied." Jul. 22, 2019 Ord. 16 (ECF No. 6577).

**Request No. 4**, seeking "all documents relating to all bank accounts established or held in the name of, on behalf of, and/or for the benefit of the Foundation," should be denied for the additional reason that, to the extent this Request seeks "discovery of the Foundation's funding of" the so-called "Da'wah Organizations" (Mot. 2), it is duplicative of Plaintiffs' First Request No. 4, to which the Bank has already responded. Pls.' First RFPs at 11 (ECF No. 6996-3). The production of "all documents relating to all bank accounts" of the Foundation is "likely to reveal vast amounts

of superfluous information." Nov. 2021 Ord. 9.

**Request No. 6**, seeking "all documents relating to shared personnel, shared office or building space, shared contact information and addresses, and/or shared IT infrastructure" between the Bank and the Foundation, should be denied as a blatant fishing expedition attempting to manufacture "ties" between the Bank and the Foundation where the FAC does not allege "any direct connection." Nov. 2021 Ord. 16. Plaintiffs' conjecture (at 2) that "charitable activities of the al Rajhi family were carried out using bank email addresses" does not support Plaintiffs' further speculative leap that "the Foundation's activities were carried out from within the walls of the bank, by bank officials using bank resources." And Plaintiffs mischaracterize (at 2) the documents cited for this assertion. The first, ECF No. 8904-04, nowhere indicates that Bank email addresses were used — much less with a "desktop computer at ARB's offices." *Id.* The second, ECF No. 8904-17, has nothing at all to do with donations. Neither document even mentions the Foundation.

**Request Nos. 7 and 8**, seeking "all documents" relating to donations by "Suleiman al Rajhi, Abdul Rahman al Rajhi, and/or the Foundation" to a list of eighteen individuals and entities, and communications relating to any such donations, are further irrelevant because sixteen of the entities and individuals are not mentioned in the FAC, much less alleged to be "charities or known extremist operatives." As discussed above, "Abdul Rahman al Rajhi" has never had any role at the Bank, so his donations are not relevant to the Bank's alleged conduct or intent. Furthermore, the Court has denied as "overbroad and duplicative" Plaintiffs' similar requests for discovery into "transfers of money to beneficiaries in the United States, mosques, Islamic centers, or charitable institutions operating in California, or beneficiaries managed or otherwise overseen by Abdul Rahman al Rajhi." Nov. 2021 Ord. 11-12; *see also* Jul. 2019 Ord. 49 (denying discovery into ICSD, one entity listed in this Request, as "based largely on speculation and guilt-by-association"). As for Al Haramain and IIRO, the Bank has already searched for any donations by Suleiman al Rajhi and the Foundation and produced what it found.

**Request No. 9**, seeking "all communications, including email, between or among the Ministry of Islamic Affairs, ARB, Suleiman al Rajhi, and/or the Foundation concerning the Da'wah Organizations" is overbroad and irrelevant. This Court already rejected Plaintiffs' request for all communications between ARB and the Da'wah organizations as "overbroad," lacking "any restrictive principle," "disproportionate to the needs of the dispute," and "likely to reveal vast amounts of superfluous information." Nov. 2021 Ord. 9. This Request goes even further, now seeking all communications "*concerning*" the Da'wah Organizations. And the Request seeks communications not only from and to the Bank, but from and to Sulaiman Al Rajhi, regardless of whether they relate to his capacity as a Bank official; from and to the Foundation, which has no connection to the Bank; and from and to a Saudi government ministry, about which the FAC makes no allegations. This Request is thus more attenuated than the already-denied request and still lacks any restrictive principle. Plaintiffs' purported justification (at 2) for this Request — that "Saleh Bin Abdul Aziz bin Mohamed al Ash Sheikh," an individual with *no* connection to the Bank, held roles at the Ministry and Al Haramain — confirms the Request's overbreadth and lack of connection to the "limited" jurisdictional inquiry into *the Bank's* alleged conduct and specific intent. *See* Jul. 2019 Ord. 19 (denying Plaintiffs' motion to compel Saudi Arabia to produce documents concerning officials unrelated to Plaintiffs' allegations). That the Request covers all three Da'wah Organizations, not just Al Haramain, further belies Plaintiffs' purported justification. Indeed, this Request appears to be a poorly disguised attempt at belated discovery into Saudi Arabia, *not* Al Rajhi Bank.

The Honorable Sarah J. Netburn  
April 24, 2023

WHITE & CASE

**Request No. 10**, seeking discovery into purported "investigations" into ARB's conduct *through 2008*, flouts the Court's Order setting the end date for such discovery at December 31, *2004*. Nov. 2021 Ord. 8. As this Court recognized, requiring the Bank to search for and produce documents from years before or after the relevant time period is unduly burdensome, unlikely to reveal relevant information, and disproportionate to the needs of the case. *Id.* at 6-8. Plaintiffs' speculation (at 2) that relevant audits and investigations "more likely" occurred through 2008 is no basis to expand the relevant period. As for information on investigations and audits from 1998-2004, the Request is duplicative of Plaintiffs' First Requests Nos. 47-54, to which the Bank has already responded.

**Request No. 11** seeks unauthorized collateral discovery. Plaintiffs fail to provide any "factual basis to justify" their attempted "discovery on discovery," which must be "closely scrutinize[d]." *Kaye v. New York City Health & Hosps. Corp.*, No. 18-cv-12137, 2020 WL 283702, at *1 (S.D.N.Y. Jan. 21, 2020). Unlike the circumstances in *Karsch* (*see* Mot. 3), the Bank's archive server failure in 2009 occurred long before these Plaintiffs surfaced and is not alleged to be deliberate. *See In re Keurig*, 341 F.R.D. at 474 (cited at Mot. 3) ("Courts cannot and do not expect that any party can meet a standard of perfection [in preserving ESI]."). And the Bank has collected and searched archived email and attachments from the discovery period and has produced any responsive documents. ARB Jan. 19, 2023 Ltr. 5 (Exh. 3). Plaintiffs' attempts to "extend[] the already costly and time-consuming discovery process" by seeking irrelevant collateral discovery should not be permitted. *Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2016 WL 3906712, at *7 (S.D.N.Y. Jul. 14, 2016).

**Request No. 12** demands that the Bank produce a supposed "2003 audit" by Ernst & Young, which Plaintiffs' evidence — an unverifiable Wikileaks cable — describes as a "full scope examination" of the Bank that "did not indicate any wrong doings." Pls.' 2d Mot. to Compel Exh. 20 at 2 (ECF No. 8904-20). But the Bank has informed Plaintiffs and the Court that, despite extensive searches, the Bank has not been able to locate or confirm the existence of this "audit." *See* ARB Opp. 13 (ECF No. 8935) (describing Bank's efforts to locate "audit").

**Request Nos. 13-17**, seeking information on "Towayan Abdallah al Towayan," are irrelevant, because this individual was a mid-level employee and never a "high-ranking executive" of the Bank. Nov. 2021 Ord. 9 (granting discovery into Bank's "high-ranking executives"). Discovery into his conduct is thus not relevant to show the Bank's conduct or specific intent. *See* ARB Mot. Prot. Ord. 3-4 (ECF No. 9038). Contrary to Plaintiffs' assertions (at 3-4), and as the Bank has previously established, the FBI Reports on which Plaintiffs rely underscore Towayan's irrelevance. *See* ARB Mot. Prot. Ord. 3-4 (ECF No. 9038) (explaining how updated FBI reports controverted earlier conclusions regarding Towayan). The 9/11 Commission Report (incorporated by reference into the FAC, *see, e.g.*, ¶¶ 252-66 (ECF No. 56)) further confirms that Towayan moved into the Parkwood Apartments *after* the hijackers had departed. *See* 9/11 Comm'n. Rep. Ch. 7; *see also* ARB Mot. Prot. Ord. 3-4 (ECF No. 9038); Jul. 2019 Ord. 27 (denying Plaintiffs' request to Saudi Arabia for documents relating to alleged pay raise where documents cited by Plaintiffs undermined the allegation). Plaintiffs' attempt (at 4) to analogize these Requests to the Court's earlier grant of discovery into Hussayen therefore grossly mischaracterizes the record. And Plaintiffs' irresponsible, inflammatory, and unsupported reference to a "*potential* pattern of ARB deploying radicals to the U.S." (emphasis added) ignores the fact that Hussayen *was never a Bank employee*, and his position as a member of an unpaid advisory board ended in 1999, *two years before* his apparent travel to the United States. *See* ARB Mot. Prot. Ord. 3 (ECF No. 9038).

The Honorable Sarah J. Netburn
April 24, 2023

**WHITE & CASE**

**Request No. 18**, seeking "all documents identifying all other individuals ARB sponsored, assisted, funded, or supported for relocation or transfer to the United States, for educational, academic, or other activities," is a blatant fishing expedition.  Plaintiffs (at 4) again grossly mischaracterize the record and make unfounded and inflammatory assertions about the Bank based on Plaintiffs' demonstrably false statement that "Hussayen and Towayan were in close proximity to 9/11 hijackers."  Plaintiffs cannot establish the relevance of this sweeping Request, which lacks any restrictive principle tying it to the limited jurisdictional inquiry against the Bank.  *See* Jul. 2019 Ord. 24-25 (denying request that Saudi Arabia produce documents identifying government employees in California before September 11, 2001, explaining that Plaintiffs' allegation that a Saudi official supervised a purported employee's "religious activities" did not mean official "directed that individual to aid the 9/11 hijackers").

**Request No. 19**, seeking "all documents relating to any investigation, inquiry, review, or audit conducted by ARB, the Saudi government, and/or the United States government which references or addresses any of the individuals, entities, accounts, transactions, and/or events identified in Request Nos. 1-18," is facially overbroad and lacks any restrictive principle tying it to the limited jurisdictional inquiry.  When the Parties met and conferred on March 29, the only justification Plaintiffs could muster for this sweeping Request is that it is a "catchall" to capture investigative materials that their Requests might otherwise not have covered — effectively conceding that this Request is cumulative and vague.  *See* ARB Apr. 11, 2023 Ltr. 5 (Exh. 4).  This Court already denied Plaintiffs' similar "catchall" request for "all documents related to any criminal or terrorist investigation regardless of its connection to al Qaeda or the September 11 Attacks" as "unnecessarily cumulative" and "exceed[ing] the scope of discovery permitted by the Court of Appeals."  Nov. 2021 Ord. 17-18*.*  This Request should likewise be denied.

**Request No. 20** sets the start date for each of the Request's four subparts as January 1, *1992*, defying the Court's Order setting January 1, *1998* as the proper start date.  Nov. 2021 Ord. 6-8 (explaining "discovery into conduct in or around 1992, nearly a decade before the September 11 Attacks[,] is disproportionate to the needs of the case," and "unlikely to support the exercise of jurisdiction").  Plaintiffs contend (at 4-5) they are entitled to more expansive discovery based on a letter the Bank produced, but the letter is dated April 11, 1998 — within the relevant period ordered by the Court.  *See* ARB Resps. & Objs. No. 20.  The 1998 letter attaches several earlier letters, and the Bank appropriately produced the attachments as part of the 1998 letter as it is ordinarily maintained.  Producing *attachments* from an earlier period does not obligate the Bank to search for documents outside the Court-ordered relevant period.  *See* Fed. R. Civ. P. 34(b)(2)(E).

**"Da'wah Organization" Accounts**: On April 13, Plaintiffs stated that they had identified, through Google searches, additional Al Haramain accounts purportedly held at the Bank, and that they would provide the Bank with the account numbers by Friday, April 14, which they never did.  *See* ARB Apr. 19, 2023 Ltr. 3 (Exh. 5).  Instead, at 11:48pm ET on April 18, Plaintiffs sandbagged the Bank (again) with a letter listing purported "omissions" from the Bank's earlier productions and stating that Plaintiffs "intend to raise this issue with the Court" in a motion to compel to be filed *the next day*.  Pls.' Apr. 18 Ltr. 2 (Exh. 6).  The Bank is reviewing Plaintiffs' late-breaking information and will respond to Plaintiffs as soon as this review is complete.  Plaintiffs' motion to compel on this point is premature and a waste of the Court's time.

*   *   *

Accordingly, Plaintiffs' third motion to compel jurisdictional discovery should be denied in full.

The Honorable Sarah J. Netburn
April 24, 2023

WHITE & CASE

Respectfully submitted,

/s/ *Nicole Erb*

Christopher M. Curran
Nicole Erb
Reuben J. Sequeira

*Counsel for Al Rajhi Bank*