# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

**In re: Terrorist Attacks on September 11, 2001**

-----------------------------------------------------------X

Civil Action No. 03-MD-1570 (GBD)(SN)

ECF Case

**This document relates to:**

*Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03-cv-06978
*Thomas E. Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03-cv-09849
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.,* No. 04-cv-01923
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, No. 04-cv-05970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, No. 04-cv-07065
*Euro Brokers Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 04-cv-07279

---

**PLAINTIFFS' REPLY TO DUBAI ISLAMIC BANK'S OPPOSITION (ECF No 9001) TO PLAINTIFFS' OBJECTIONS (ECF No. 8939) TO THE COURT'S MARCH 6, 2023 OPINION & ORDER (ECF No. 8905)**

---

April 25, 2023

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1
II. LEGAL STANDARD ..................................................................................................... 2
III. JUDGE NETBURN ERRONEOUSLY INFERRED BAD FAITH .................................. 2
IV. EXCLUSION IS A HARSH SANCTION, NOT A DEFAULT SANCTION .................. 3
V. THE MAGISTRATE JUDGE ERRONEOUSLY APPLIED THE *OUTLEY* FACTORS, WHICH DO NOT FAVOR EXCLUSION ........................................................................ 4
    a. Explanation / Justification ................................................................................... 4
    b. Importance .......................................................................................................... 4
    c. Prejudice / Harmlessness .................................................................................... 6
    d. Delay ................................................................................................................... 7
VI. CONCLUSION ................................................................................................................ 7

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600 (S.D.N.Y. 2014) ................................................... 4
*Agence France Presse v. Morel*, 293 F.R.D. 682 (S.D.N.Y. 2013) ..................................................... 3
*Carter-Wallace, Inc. v. Otte*, 474 F.2d 529 (2d Cir. 1972) ................................................................. 5
*DiBella v. Hopkins,* 403 F.3d 102 (2d Cir. 2005) ............................................................................... 5
*Dong Hui Chen v. Thai Greenleaf Rest. Corp.*, 21-CV-1382 (MKB) (JMW), 2023 WL 2731712 (E.D.N.Y. Mar. 31, 2023) ............................................................................................................ 2
*Feinberg v. Katz,* No. 01 CIV. 2739(CSH), 2007 WL 4562930 (S.D.N.Y. Dec. 21, 2007) ................. 5
*Grdinich v. Bradlees*, 187 F.R.D. 77 (S.D.N.Y. 1999) ....................................................................... 3
*Hable v. Metro-N. Commuter R.R.*, No. 18-CV-1460 (NSR), 2019 WL 4673564 (S.D.N.Y. Sept. 24, 2019) ......... 3
*Hinton v. Patnaude*, 162 F.R.D. 435 (N.D.N.Y. 1995) ...................................................................... 3
*New York Progress & Prot. PAC v. Walsh,* 733 F.3d 483 (2d Cir. 2013) .......................................... 2
*Outley v. City of New York*, 837 F. 2d 587 (2d Cir. 1988) ................................................................ 1
*Peerless Network, Inc. v. AT&T Corp.,* 15-CV-870 (VM)(VF), 2022 WL 3700141 (S.D.N.Y. Aug. 26, 2022) .......... 4
*Sandata Techs., Inc. v. Infocrossing, Inc.*, No. 05-cv-09546 (LMM)(THK), 2007 WL 4157163 (S.D.N.Y. Nov. 16, 2007) ............................................................................................................ 4
*Scentsational Techs., LLC v. Pepsi*, Inc., 13-cv-8645 (KBF), 2018 WL 1889763 (S.D.N.Y. Apr. 18, 2018) ............ 4
*Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, 20-CV-10832 (AT)(SN), 2022 WL 1154348 (S.D.N.Y. Apr. 19, 2022) ...................................................................................................... 4, 7
*United States v. Herron*, 10-CR-0615 (NGG), 2014 WL 1871909 (E.D.N.Y. May 8, 2014) ............. 5
*United States v. Sanpedro*, 352 F. App'x 482 (2d Cir. 2009) ............................................................. 6
*United States v. Tapia-Ortiz,* 23 F.3d 738 (2d Cir. 1994) .................................................................. 6

**Statutes**

Fed. R. Civ. P. 26(e) .......................................................................................................................... 1

I.  **INTRODUCTION**

Dubai Islamic Bank ("DIB") uses its Opposition (ECF No. 9001; "Opp."), to the Plaintiffs' Objections (ECF No. 8939; "Objs.") to Magistrate Judge Netburn's March 6, 2023 Opinion and Order (ECF No. 8905; "Opinion" or "Op."), to inject charged language aimed at recasting Plaintiffs' good faith actions in a malicious light, a surprising pivot given DIB's own acknowledgements that the Court's order denying the joint extension request caught both sides off guard. DIB's turnabout buries the fact that the parties jointly sought an extension that could have obviated the issue and jointly proposed considerably less drastic responses.[1] While DIB's rhetoric is striking,[2] it does not describe "cold, hard facts," but rather encourages the Court to assume malice where there is none and urges conclusions the record does not support.

Plaintiffs refute two opening points in DIB's Opposition (at 4), where it argues that Plaintiffs identify no error of law or fact in the underlying order and that Plaintiffs concede they acted improperly when characterizing Winer III as supplementary. First, Plaintiffs *have* identified error both in the Court's factual premise that Plaintiffs sought to effectively "sandbag" DIB, which served as the foundation for the Court's application of the drastic measure of striking a party's expert report, as well as in its application of the *Outley* factors to impose that drastic sanction. Second, notwithstanding the Court's determination that Winer III is not a supplement, Plaintiffs had a good faith and intrinsically held understanding that Winer III was a supplement under Rule 26(e), necessitated by new and substantial information in previously unavailable CIA reports. Even if Plaintiffs were technically incorrect in labeling Winer III as supplemental, DIB's use here of terms like "mischaracterize" loads its language with improper innuendos of malintent that are unsupported. Nevertheless, Judge Netburn's determination

---

[1] *See Outley v. City of New York*, 837 F. 2d 587, 591 (2d Cir. 1988) (before imposing the "extreme sanction" or precluding an expert's testimony, judges must inquire fully into the actual difficulties and consider less drastic responses).
[2] Notwithstanding the Court's finding that Winer III was served inconsistent with the rules, Plaintiffs nonetheless acted with an earnest belief that the report was supplemental and served properly within the rules and take exception to DIB's rhetorical characterizations as a "lawless ruse," at 8, a "gambit," at 1, a "game," at 2.

1

that Winer III is not a proper supplement does *not* render Winer III excludable by "default" as DIB argues, at 7-9. The Court's imposition of the extreme sanction of exclusion, premised on a mistaken inference that Plaintiffs acted in bad faith and insufficient consideration of less drastic responses the parties had jointly proposed, was clearly erroneous. When examining the relevant facts, and setting aside incorrect inferences, the application of the four *Outley* facts do not favor exclusion.

## II.  LEGAL STANDARD

A finding of fact is "clearly erroneous" "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *New York Progress & Prot. PAC v. Walsh,* 733 F.3d 483, 486 (2d Cir. 2013).

## III.  JUDGE NETBURN ERRONEOUSLY INFERRED BAD FAITH

DIB misinterprets Plaintiffs' arguments about Judge Netburn's inference that Plaintiffs acted in bad faith, arguing (at 8) that she did not explicitly say Plaintiffs acted in bad faith (we agree no bad faith occurred). Courts need not label their bad faith findings as such,[3] but Judge Netburn's incorrect inference that Plaintiffs were trying to "sandbag" DIB and the reasoning underlying her Opinion show that her decision was premised on her incorrect inference that Plaintiffs acted in bad faith.

The Opinion shows that Judge Netburn inferred Plaintiffs' supposed malintent. For example, the assertion that Plaintiffs filed Winer III "*to create* a genuine issue of material fact," Op. at 9 (emphasis added), is indisputably an inference of Plaintiffs' state of mind and is, moreover, unfounded and inaccurate.[4] As explained in Plaintiffs' Objection, at 4-5, the determination to engage Mr. Winer for Winer III and the timing of serving Winer III were the result of 1) the emergence of new facts from the previously unavailable CIA reports that required expert analysis, 2) ongoing discussions between DIB and Plaintiffs, and 3) the Court's June 14, 2022 decision denying the parties' joint request for additional

---

[3] *See Dong Hui Chen v. Thai Greenleaf Rest. Corp.*, 21-CV-1382 (MKB) (JMW) 2023 WL 2731712, at *4 (E.D.N.Y. Mar. 31, 2023) (stating court's need only "make an explicit finding of bad faith" in certain circumstances).
[4] DIB's assertion that this is a "cold, hard fact" underscores the fallaciousness of its rhetoric.

time to engage in additional discovery (ECF No. 8096). Further, Plaintiffs could not "create" a genuine issue of material fact based on documents already in DIB's possession.[5]

Plaintiffs, Objs. 1-2, pointed to examples in Judge Netburn's Opinion suggesting Plaintiffs acted with bad faith. Indeed, the very definition of "sandbagging" is to "conceal or misrepresent one's true position, potential, or intent especially … to gain an advantage."[6] Neither DIB nor the Court can point to a fact to reasonably support an inference that Plaintiffs misrepresented a position or intent to gain advantage; because it is not so. Thus, Judge Netburn clearly erred in premising the exclusion of Winer III on an unsupported, incorrect inference about Plaintiffs' state of mind.

## IV. EXCLUSION IS A HARSH SANCTION, NOT A DEFAULT SANCTION

DIB never engages the body of case law about preclusion of expert testimony being a harsh, drastic, severe remedy.[7] Instead, DIB argues, Opp. at 7, that exclusion is a "default sanction," fixating on a single line of *dicta* from a single footnote in a patent infringement case—*viz*, *Agence France Presse v. Morel*, 293 F.R.D. 682, 685 n.5 (S.D.N.Y. 2013)—about excluding a damage theory and calculations plaintiff had not provided in violation of Rule 26(a) and (e). It is antithetical that a "severe" and "harsh" sanction would be the default. But the description of preclusion of an expert report as a "harsh sanction" in *Sandata Techs., Inc. v. Infocrossing, Inc.*, No. 05-cv-09546 (LMM)(THK), 2007 WL 4157163 (S.D.N.Y. Nov. 16, 2007), has been reaffirmed numerous times over the years. *See, e.g., Scentsational Techs., LLC v. Pepsi*, Inc., 13-cv-8645 (KBF) 2018 WL 1889763, *4 (S.D.N.Y. Apr. 18, 2018) (noting preclusion "can be a harsh sanction,"); *Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, 20-CV-10832 (AT)(SN), 2022 WL 1154348, at *2 (S.D.N.Y. Apr. 19, 2022) (Judge Netburn decline to strike "supplemental report" "given the *harshness* of preclusion," and reopens limited discovery due to "mixed results" in the *Outley*

---

[5] Plaintiffs provided the CIA reports to DIB after meeting with counsel for DIB on April 18, 2022. Obj. at 3.
[6] https://www.merriam-webster.com/dictionary/sandbag at 2(d) (last accessed April 20, 2023).
[7] *See* ECF No. 8938, citing, e.g., *Sandata Techs., Inc. v. Infocrossing, Inc.,* No. 05-cv-09546 (LMM)(THK), 2007 WL 4157163, at *17 (S.D.N.Y. Nov. 16, 2007) (severe sanction); *Grdinich v. Bradlees*, 187 F.R.D. 77, 79 (S.D.N.Y. 1999) (drastic remedy); *Hinton v. Patnaude*, 162 F.R.D. 435, 439 (N.D.N.Y. 1995) (same); *Hable v. Metro-N. Commuter R.R.*, No. 18-CV-1460 (NSR), 2019 WL 4673564, at *2 (S.D.N.Y. Sept. 24, 2019) ("drastic remedy").

factors)(emphasis added); *Peerless Network, Inc. v. AT&T Corp.*, 15-CV-870 (VM)(VF), 2022 WL 3700141, *4 (S.D.N.Y. Aug. 26, 2022) (noting preclusion is a "drastic remedy"); *523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 634 (S.D.N.Y. 2014) (noting preclusion is a "severe sanction").

### V. THE MAGISTRATE JUDGE ERRONEOUSLY APPLIED THE *OUTLEY* FACTORS, WHICH DO NOT FAVOR EXCLUSION

    a. **Explanation / Justification**

Plaintiffs' explanation and justification for the timing of service of Winer III was set out in our Objection at 10, which outlined: 1) the emergence of new facts from the previously unavailable CIA reports that required expert analysis, 2) previously ongoing discussions between DIB and Plaintiffs that may have obviated the need for the expert report and that jointly proposed an extension of the schedule, 3) the Court's June 14, 2022 decision denying additional time to engage in additional discovery (which, if granted, may have resulted in additional evidence for consideration and modifications to the opinions eventually set out in Winer III), 4) Plaintiffs' good faith belief that Winer III was a supplement, and 5) the timing of Plaintiffs' receipt of Winer III and prompt service upon receipt.[8]  All the foregoing facts show that the timing of the service of Winer III was justified.[9]

    b. **Importance**

The expert analysis in Winer III is important. This Court recognized, ECF No. 8911 at 10, that the CIA reports that prompted Winer III are admissible, credible, "finished intelligence." Winer III offers key assessments of the CIA reports to aid a factfinder to understand their significance, including assessments of the context of how such documents are created (important for factfinder credibility assessments); opinions about the value and context of information within documents to assess DIB's

---

[8] Though DIB downplays the cramped timeline in its Opposition, the timeframe to submit the report was a mere three days; June 14, 2022 – June 17, 2022.

[9] The suggestion Plaintiffs were trying to "sandbag" DIB is refuted by Plaintiffs' outreach to DIB, by email and phone, immediately after the Court's unexpected denial of the extension, offering to go back to the Court with an alternative proposal. If Plaintiffs had intended to "sandbag" DIB on the date the motion was due, Plaintiffs would have welcomed the Court's order denying the extension and would not have offered to ask the Court to consider alternative proposals.

role in supporting al Qaeda; opinions placing evidence in context of al Qaeda's operations, needs, and campaign to attack the U.S.; and opinions about the interplay of the CIA's findings with other evidence (including evidence with added import due to the CIA reports).

Characterizing (Opp. at 2) contextualization as merely "gloss," DIB improperly downplays the importance of an expert contextualizing complex facts to aid factfinders' understanding.[10] An expert that contextualizes information for a lay person is important to bridge the knowledge gap between the expert and the layperson.[11] Contextualization allows the lay person to understand complex information in a way relevant to them and then to apply it to their own situation, leading to better decision-making and a more informed factfinder.

Terrorism cases, typically beyond the ken of average jurors,[12] *especially* require expert opinion. *See Owens v. Republic of Sudan*, 174 F. Supp. 3d 242, 276-277 (D.D.C. 2016) (stating "[s]tandard forms of direct evidence are for various reasons difficult, if not impossible, to obtain in terrorism cases."). "In light of these circumstances, the opinions of experts who have studied [terror] organizations…are extremely useful." *Id.* Even when experts have "few actual facts" …, this Court has also held that "[experts'] opinions, coupled with their qualifications as experts …, provide a sufficient basis for a reasonable jury to draw inferences." *Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 232 (S.D.N.Y. 2003).

DIB's (and the Court's) criticism that Winer III consists of quotes "in plain English" and offers "little or no analysis of" the CIA reports is unfounded. The quotes are facts appropriately set out in

---

[10] In this Circuit "[t]here can be no doubt that expert testimony will often aid in understanding the underlying factual context." *Carter-Wallace, Inc. v. Otte*, 474 F.2d 529, 547 (2d Cir. 1972); *see also United States v. Herron*, 10-CR-0615 (NGG), 2014 WL 1871909, at *8 E.D.N.Y. May 8, 2014) (finding that an expert "may contextualize the evidence" but jurors must "weigh the evidence and assess its credibility for themselves").

[11] "Rule 702 is intended to ensure that the expert testimony at issue is 'helpful to the jury in comprehending and deciding issues beyond the understanding of a layperson.'" *Feinberg v. Katz*, No. 01 CIV. 2739(CSH), 2007 WL 4562930, at *7 (S.D.N.Y. Dec. 21, 2007), *quoting DiBella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005).

[12] *United States v. Sanpedro*, 352 F. App'x 482, 485 (2d Cir. 2009) (expert testimony appropriate where subject matter is beyond the ken of average juror); *United States v. Tapia-Ortiz*, 23 F.3d 738, 740 (2d Cir. 1994) (same).

Winer III to support opinions offered in the report. *See Owens*, 174 F. Supp. 3d at 280 (finding that admissible opinions required a factual basis and the "burden of persuasion to establish the absence of the factual basis by a preponderance of the evidence" rests on the challenger). While the magistrate judge and DIB refer to only certain portions of Winer III where Mr. Winer objectively introduces quotes from evidence to support his opinions, they avoid referencing other areas of Winer III where he offers analysis and opinions.[13] In addition to reciting facts upon which Winer's opinions rest, Winer III offers expert opinions addressing the provenance of the CIA reports, internal government procedures and reviews governing the creation of such finished intelligence; places evidence in the context of al Qaeda's needs, operations, and goals; and draws connections as a terrorism expert between disparate evidence from numerous sources.

DIB, at 5, also attempts to downplay the import of the CIA reports, stating that DIB "initiated an investigation" and "offered its cooperation to the U.S. government." The CIA reports, and Winer's expert opinion, directly contradict this assertion, further evidencing the import of his report. *See, e.g.*, ECF No. 8345-1, §§ 4.3—4.5, 7.

    c. **Prejudice / Harmlessness**

The relative lack of prejudice and the harmlessness of the timing of the service of Winer III is underscored by the following facts. *First*, the parties had already jointly proposed a satisfactory solution that met the parties' needs, but that was given no attention in the Court's decision to impose the harsh sanction. Indeed, the parties had already *jointly* proposed a narrow four-month time frame for reopening limited expert discovery.[14] DIB even acknowledged it had its experts prepared to serve reports. *Id.*

---

[13] *E.g.*, as stated in Objs. at n. 10, Winer III, Sections 7.5 – 7.18 "tie *all* of the information (the CIA documents, Dr. Hassan's testimony, and Judge Fine's testimony) together with Mr. Winer's analysis. This multi-page summary of Mr. Winer's findings and opinions incorporates all relevant information related to DIB in the discovery to date."

[14] The Parties proposal, ECF No. 8874, afforded DIB a short deposition of Mr. Winer limited to the analysis in Winer III, allowed DIB to serve three reports addressing the newly available CIA and FBI documents and the analysis in Winer III, allowed Plaintiffs to serve rebuttal reports responding to DIB's new reports (to the extent they addressed the newly available CIA and FBI documents beyond responding to Winer III), and allowed each side to depose the experts on the new reports.

Reopening discovery for the limited purpose of conducting expert discovery on a discrete issue is not, in and of itself, prejudicial. *See Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, 20-CV-10832 (AT)(SN), 2022 WL 1154348 (S.D.N.Y. Apr. 19, 2022) (Judge Netburn). The short duration to conduct the proposed discovery would have had minimal impact on the overall schedule of the MDL. But rather than considering the parties' jointly proposed alternative, the Court recommended preclusion. *Second*, DIB had in its possession the CIA reports and the other documents underlying the opinions in Winer III;[15] thus undermining any notion that DIB was "surprised" or "sandbagged" by the factual and evidentiary predicate for Winer III. Indeed, most of the information in the CIA and FBI documents evidencing DIB's relations with Osama Bin Ladin and other Al Qaeda representatives was available to DIB, but undisclosed in discovery. *Third*, DIB had full opportunity to respond and address Winer III in its reply; and if reply briefing parameters needed adjustment, a remedy short of preclusion could be fashioned.

    d. **Delay**

The four-month period the parties jointly proposed to complete limited expert discovery was a modest adjustment to afford consideration of expert testimony. Courts must weigh all relevant evidence, including new evidence that has come to light, and make decisions based on the facts of the case and the applicable law. DIB's (and the Court's) justification for excluding Winer III premised on the lengthy pendency of this case (Op. at 12; Opp. at 3) sacrifices justice for the sake of efficiency, undermining the very purpose of our legal system.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court to set aside the Magistrate Judge's March 6, 2023 Opinion & Order, or, in the alternative, recommit the matter to the Magistrate Judge for reconsideration.

Dated: April 25, 2023                                        Respectfully submitted,

---

[15] DIB's claim, at 9, that it was harmed because Winer III was disclosed ten months after expert discovery, ignores that the CIA reports were released only two months earlier, in April 2022, and were promptly made available to DIB.

| | |
|---|---|
| MOTLEY RICE LLC | COZEN O'CONNOR |
| By: /s/ *Robert T. Haefele* <br> ROBERT T. HAEFELE <br> JODI WESTBROOK FLOWERS <br> DONALD A. MIGLIORI <br> 28 Bridgeside Boulevard <br> Mount Pleasant, SC 29465 <br> Tel.: (843) 216-9184 <br> Email: rhaefele@motleyrice.com <br><br> *Liaison Counsel for the Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Plaintiffs* | By: /s/ *Sean P. Carter* <br> SEAN P. CARTER <br> STEPHEN A. COZEN <br> J. SCOTT TARBUTTON <br> One Liberty Place <br> 1650 Market Street, Suite 2800 <br> Philadelphia, Pennsylvania 19103 <br> Tel.: (215) 665-2105 <br> Email: scarter@cozen.com <br><br> *Co-Chair of the Plaintiffs' Executive Committee for Commercial Claims on behalf of Plaintiffs* |

8

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the Plaintiffs' Reply to Dubai Islamic Bank's Opposition (ECF NO. 9001) to Plaintiffs' Objections (ECF No. 8939) to the Courts' March 6, 2023 Opinion & Order (ECF No. 8905) was electronically filed this 25th day of April, 2023. Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system, which the parties may access.

_____
Robert T. Haefele