**WHITE & CASE**

April 27, 2023

VIA ECF

The Honorable Sarah J. Netburn
United States Magistrate Judge
U.S. District Court for the Southern District of New York
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, New York 10007

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
T +1 202 626 3600

whitecase.com

*In re Terrorist Attacks on September 11, 2001*, Case No. 1:03-md-1570-GBD-SN (S.D.N.Y.)

Dear Judge Netburn:

Al Rajhi Bank respectfully submits this letter replying to Plaintiffs' opposition (ECF No. 9053) to the Bank's motion for a protective order quashing Plaintiffs' notice of deposition of the Bank's Chairman, Abdullah bin Sulaiman al Rajhi (ECF No. 9037). The Bank does not wish to burden the Court with issues already briefed, or to expand the record, but responds here only to Plaintiffs' arguments withheld during the meet-and-confer process and raised for the first time in their opposition. ARB Mot. Prot. Order 2 (ECF No. 9037).

Despite Plaintiffs' sandbagging, the new information in Plaintiffs' opposition only confirms that Plaintiffs do not in fact seek personal and unique information from the Bank's Chairman that is relevant to the limited jurisdictional inquiry and cannot be obtained through less intrusive means, such as the upcoming Rule 30(b)(6) deposition of the Bank on May 11, 2023. The Bank's motion for a protective order should be granted.

1. **Plaintiffs' Opposition Reveals Information Withheld During The Meet-and-Confer Process**

Plaintiffs' opposition relies on information and arguments that Plaintiffs refused to provide the Bank during the meet-and-confer process, despite previously agreeing to do so. When the Parties met and conferred, Plaintiffs agreed to provide the Bank in writing with Plaintiffs' position on the "unique information" they are seeking from the Bank's Chairman. *See* ARB Mot. Exh. 3 at 2 (ECF No. 9037-3). But on April 18, Plaintiffs reversed their position and informed the Bank and the Court that they would not provide this information until *after* the Bank moved for a protective order. *See id*. (citing Jt. Ltr. 4 n.2 (Apr. 18, 2023), ECF No. 9027). As the Bank anticipated in its motion (at 2), Plaintiffs indeed sandbagged the Bank in their opposition, by asserting that they seek "personal and unique information" on topics Plaintiffs did not raise in the meet-and-confer process.

Plaintiffs put forward (at 4-5) five subject areas on which they seek to depose the Bank's Chairman, none of which is limited to "relationships" with the "Da'wah organizations," the only topic Plaintiffs identified during the meet-and-confer process. *See* Mot. 2 (ECF No. 9037). Plaintiffs now state that they will seek information on the following vague and overbroad topics: (1) purported relationships between unnamed "Al Rajhi family members" and "Al Qaeda and

Associated Parties," (2) unnamed "Al Rajhi family members[']" alleged "Donations To And Roles In Al Qaeda Fronts," (3) unnamed "senior al Rajhi family members[']" alleged "Knowledge Of Terrorists' Use of ARB," (4) the Bank's alleged "Continuing Support For Al Qaeda Fronts Following Designations," and (5) "Reasons For Suleiman Al Rajhi's Departure." Yet Plaintiffs' opposition still fails to establish that the Bank's Chairman has "personal and unique" information on any of these expanded topics, let alone that these topics fall within the scope of jurisdictional discovery ordered by the Court. Plaintiffs' opposition also fails to refute the Bank's position that any relevant information Plaintiffs seek could be obtained through less intrusive means, such as the upcoming 30(b)(6) deposition on May 11.

### 2. The New Topics Identified In Plaintiffs' Opposition Confirm That The Apex Doctrine Applies To The Bank's Chairman

Plaintiffs' new justification (at 2-3) for asserting that the "apex doctrine is largely irrelevant" only confirms that the Bank's Chairman has no "personal and unique" information relevant to the limited jurisdictional inquiry. Plaintiffs try to avoid the apex doctrine by contending that "the knowledge and activities of senior al Rajhi family members who served as high ranking officials of ARB" is "central" to jurisdictional discovery; yet Plaintiffs acknowledge that this Court's grant of discovery concerned "high ranking" Bank personnel that either "supported al Qaeda through charitable fronts" or "held positions in da'wah organizations." *Id.* (citing Order 8-9 (Nov. 22, 2021), ECF No. 7378). Plaintiffs do not allege, and discovery has not shown, that the Bank's Chairman made any such donations or held any such position.

If Plaintiffs are seeking information on *other* "high-ranking officials" of the Bank, that inquiry is properly raised in the upcoming deposition of the Bank's Rule 30(b)(6) designee, not the Bank's Chairman. Indeed, Plaintiffs fail to explain how the Bank's Chairman has any personal and unique information about the categories of information on which Plaintiffs apparently seek to depose him.

**Purported "Relationships With Al Qaeda And Associated Parties":** Plaintiffs' inflammatory conjecture and mischaracterization of the record (at 3-4) fail to explain how the Bank's Chairman has personal or unique knowledge of any purported "relationships" between "the Al Rajhi family" and "Al Qaeda And Associated Parties." Any supposed overlap between the Bank's Chairman and Osama Bin Laden among some 20,000 students at a public university decades before the 9/11 Attacks is hardly a "longstanding tie" or "important linkage[]" (at 4) to al Qaeda. *See* Ibrahim A. Al-Shami, *The Need for Saudi Faculty and the Media for Instruction in Saudi Arabian Universities*, 12 Higher Educ. 285, 289 tbl. 3 (1983) (detailing King Abdulaziz University attendance). In any event, Plaintiffs' curiosity can be covered by the Bank's Rule 30(b)(6) witness.

Plaintiffs also grossly overstate (at 4) their own allegations in arguing that they have "offered facts that the Al Rajhi family has longstanding ties to Osama bin Laden." The two allegations Plaintiffs cite show nothing of the sort. *See* FAC ¶ 167, No. 16-cv-7853 (ECF No. 56) (alleging Zacariau Moussaoui gave vague testimony "that Osama bin Laden personally described Al Rajhi Bank to him as 'like a good brother'"); *id.* ¶ 190 (alleging "Suleiman al Rajhi and members of the al Rajhi family also used Al Rajhi Bank to transfer large sums to the Third World Relief Agency"); *see also* Order and Op. 14-15 (Mar. 28, 2018), ECF No. 3947 ("Accepting Moussaoui's vague and conclusory testimony as true, it at most supports the inference that ARB provided funds and financial services to individuals and organizations that were affiliated with al Qaeda — an allegation that has been rejected by this Court and the Second Circuit time and again as insufficient

to establish specific jurisdiction over entities like ARB."). Neither allegation implicates the Bank's Chairman and each is more properly addressed at the upcoming 30(b)(6) deposition on May 11. Plaintiffs likewise overstate (at 4) their allegations of supposed "important [Al Rajhi family] linkages to other senior al Qaeda officials." *See* FAC ¶ 166 (alleging Wadi el Hage had address book with "contact information for Saleh al Rajhi"); *id.* ¶¶187-88 (alleging board membership and "relationships" of Suleiman al Rajhi). Plaintiffs do not connect any of these allegations to the Bank's Chairman, and instead appear to be fishing for information on *other* Al Rajhi family members. Nor would such information even be relevant without some alleged connection to the Bank itself. Plaintiffs thus fail to explain that the Bank's Chairman has unique information relevant to this topic.

**Purported "Donations To And Roles In Al Qaeda Fronts":** Plaintiffs contend (at 4) that they are seeking information on alleged "support" from unnamed "Al Rajhi family members" in the form of donations to or "dual roles" with the "Da'wah Organizations," but Plaintiffs have not alleged, and discovery has not shown, that the Chairman made any such donations or held any such roles. If Plaintiffs are seeking testimony on any donations that were not made through Al Rajhi Bank, such information is outside the scope of the "limited" jurisdictional discovery ordered by the Court. *See* Nov. 2021 Order 13 ("Information about how Suleiman al Rajhi transferred funds that do not necessarily connect to ARB goes beyond the discovery into ARB's alleged intent to support terrorist attacks in the United States . . . ."). And if Plaintiffs seek to depose the Bank's Chairman about the conduct of *other* unnamed "family members," Plaintiffs do not explain how he has personal or unique information on this issue. Plaintiffs thus do not show they are seeking personal or unique information about the Chairman's own conduct relevant to the authorized jurisdictional inquiry.

Furthermore, Plaintiffs reveal (at 4) that they are seeking to depose the Bank's Chairman on charitable giving by his father and other unnamed family members far beyond the scope of the limited jurisdictional discovery this Court has ordered. Plaintiffs will not limit their questions to donations to or roles in the "Da'wah Organizations," but seek to depose the Chairman on "various beneficiaries," pointing to a "list of contributions made [in 1999] by Suleiman al Rajhi." *See* Opp. 4, citing ECF No. 8904-4. That list names several dozen charitable institutions about whom Plaintiffs have made no allegations connecting those institutions to the Bank, al Qaeda or the 9/11 Attacks. And Exhibit 2, a hodgepodge of documents apparently produced by a non-party and not previously shown to the Bank, does not show any donations by the Bank's Chairman, or indeed, any donations by *any* Al Rajhi family member to any "Da'wah Organization." Plaintiffs thus fail to show that this information is relevant to the authorized jurisdictional inquiry, and that the Bank's Chairman has any personal or unique information about it.

**Purported "Knowledge Of Terrorists' Use of ARB":** Plaintiffs assert that they are seeking information (at 4) on rank speculation that unnamed "al Rajhi family members . . . *probably* know that terrorist[s] use their bank" (emphasis added), but again have not alleged that the Bank's Chairman had any such knowledge. Plaintiffs in any event are incorrect (at 2) that the Chairman's knowledge "is imputable to the bank." Judge Daniels has rejected this theory, holding that "allegations concerning the Al Rajhi family cannot support a claim against Al Rajhi Bank because there is no allegation that the family members were acting in furtherance of Al Rajhi Bank business." *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 833 (S.D.N.Y. 2005). If Plaintiffs seek information on the *Bank's* knowledge of this issue, then the Bank's Rule 30(b)(6) designee is the appropriate source.

**Purported "Continuing Support For Al Qaeda Fronts Following Designations":** The Bank has searched for and produced the statements of accounts and KYC information of the "Da'wah Organizations," along with communications and other documents relating to post-9/11 investigations of those organizations. And the Bank's Rule 30(b)(6) designee will be prepared to testify on those topics. Plaintiffs mischaracterize the record (at 4) in accusing the Bank of "Continuing Support for Al Qaeda Fronts Following Designations." Indeed, the documents that Plaintiffs attach as Exhibit 3 directly undermine Plaintiffs' accusation, because they show the Bank proactively seeking guidance from its regulator on how to handle Al Haramain accounts five years *before* Al Haramain's *2008* designation. *See* Pls. Opp. Exh. 3; *see also* Remarks By U.S. Treasury Secretary Paul O'Neill On New U.S.-Saudi Arabia Terrorist Financing Designations (Mar. 11, 2002), available at http://www.treasury.gov/press-center/press-releases/Pages/po1086.aspx ("[T]he Saudi headquarters for this private charitable entity [Al Haramain] is dedicated to promoting Islamic teachings[.]").

Plaintiffs also mischaracterize those documents in their assertion (at 4) that the documents show the Bank's Chairman, then serving as General Director, was "personally involved in these matters." The letters merely show the unsurprising fact that a letter to the head of the Bank's regulator was sent on behalf of the Bank from the office of the Bank's General Director, a fact that cannot overcome the apex doctrine's presumption against deposing an apex witness simply based on their position. *See Hallmark*, 2018 WL 6573435, at *4 (cited in Pls. Opp. at 1) (denying motion to compel testimony of company's vice president where moving party "d[id] not show a basis for why she may have unique knowledge," because the topics would also be familiar to others in the company and would be "addressed during the 30(b)(6) deposition"). Moreover, the Bank's Rule 30(b)(6) designee will be prepared testify on these documents and other Bank documents concerning its Chairman.

**"Reasons For Suleiman Al Rajhi's Departure":** In now seeking (at 5) testimony on Sulaiman Al Rajhi's *2014* departure, Plaintiffs yet again ignore that the Court set the end date for discovery into this topic as December 31, 2002. *See* Order 6-8 (Nov. 22, 2021), ECF No. 7378. Moreover, Plaintiffs' offer no basis for finding that the Bank's Chairman would have unique and personal information on this topic, arguing to the contrary that his knowledge derives from his position as "a senior Bank official and member of the Board of Directors." Any such relevant information is properly sought through Plaintiffs' Rule 30(b)(6) deposition of the Bank.

3. **The Opposition Does Not Address, And So Concedes, That Plaintiffs Must Proceed First By Targeted Interrogatories Or Written Questions**

The opposition does not even respond to the Bank's authority (at 3, citing *In re Ski Train Fire*, 2006 WL 1328259, at *10; *Cmty. Fed. Sav. & Loan Ass'n*, 96 F.R.D. at 621) that, in the unlikely event that Plaintiffs establish that the Bank's Chairman does possess personal and unique information unobtainable from the Bank's Rule 30(b)(6) witness, then Plaintiffs should be required to serve focused interrogatories or a notice of deposition by written questions. Plaintiffs have thus conceded that, if the Court finds that Plaintiffs have shown that the Bank's Chairman has personal and unique information relevant to the limited jurisdictional inquiry, then it should direct Plaintiffs to proceed via targeted interrogatories or written questions. *See, e.g.*, Order 18 (Apr. 27, 2023), ECF No. 9060 ("party's failure to respond to arguments concedes claim" (citing *Doe v. Columbia Univ.*, 551 F. Supp. 3d 433, 473 (S.D.N.Y. 2021) (collecting cases))).

WHITE & CASE

Respectfully submitted,

/s/ *Nicole Erb*

Christopher M. Curran
Nicole Erb
Reuben J. Sequeira
*Counsel for Al Rajhi Bank*