**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03-MD-01570 (GBD)(SN)<br>ECF Case |

This document relates to:

*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, 02-cv-06977
*Gladys H. Salvo, et al. v. Al Qaeda Islamic Army, et al.*, 03-cv-05071
*Federal Insurance Co., et al. v. Al Qaida, et al.*, 03-cv-06978
*Thomas E. Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 03-cv-09849
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 04-cv-01923
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, 04-cv-05970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, 04-cv-07065
*Euro Brokers Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 04-cv-07279

**WORLD ASSEMBLY OF MUSLIM YOUTH ("WAMY") AND WAMY**
**INTERNATIONAL'S OBJECTIONS TO OPINION & ORDER FILED**
**APRIL 27, 2023 (ECF No. 9060)**

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ………………………………………………………………….. ii

INTRODUCTION ...........................................................................................................1

STANDARD OF REVIEW ............................................................................................2

I. THE MAGISTRATE JUDGE ORDER EXCLUDING THE OPINIONS OF FORMER UNITED STATES AMBASSADOR TO SAUDI ARABIA CHARLES FREEMAN WAS CONTRARY TO LAW AND CLEARLY ERRONEOUS………………………..…….2

 A. *The Magistrate Judge misapplied relevant case law in excluding Freeman's testimony* ...2

 B. *The extreme measure of excluding the Ambassador's testimony was unwarranted and mistaken* ……………………………………………………………….………..9

II. THE MAGISTRATE JUDGE CLEARLY ERRED IN  PERMITTING JONATHAN WINER TO OPINE ON WAMY'S RELATIONSHIP TO BENEVOLENCE INTERNATIONAL FOUNDATION WHERE WINER NEVER APPLIED HIS CLAIMED ALL SOURCE METHODOLOGY IN REACHING THAT OPINION AND IGNORED ABUNDANT FACTS FROM PRIMARY SOURCES SHOWING THERE WAS NO RELATIONSHIP …………………………………….................................................13

CONCLUSION ...................................................................................................17

## TABLE OF AUTHORITIES

**Cases**                                                                 **Pages**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002)……………………….………………….....4, 6, 9, 10

*Alto v. Sun Pharmaceutical Industries, Inc.*,
    2021 WL 4803582 (S.D.N.Y. Oct. 13, 2021)…………………………………..4, 8, 11

*BS BIG V, LLC et al v. Philadelphia Indemnity Insurance Company*,
    2022 U.S. Dist. LEXIS 165389 (S.D.N.Y. 2022)………………………………..…….2

*Bonner v. ISP Techs., Inc.*,
    259 F.3d 924 (8th Cir. 2001)…………………………………………………...…..6

*Boucher v. U.S. Suzuki Motor Corp.*,
    73 F.3d 18 21 (2d Cir. 1996)……………………………………………………………9

*Cates v. Trustees of Columbia Univ. in City of New York*,
    No. 16 Civ. 6524 (GBD), 2020 WL 1528124 (S.D.N.Y. Mar. 30, 2020) (Daniels, J.)...12

*Chen-Oster v. Godman, Sachs & Co.*,
    114 F. Supp. 32 110 (S.D.N.Y. 2015)……………………………………………...4

*Clerveaux v. E. Ramapo Cent. Sch. Dist.*,
    984 F.3d 213, 233 (2d Cir. 2021)……………………………………………………4

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)………………………………………………………………...3

*Davis v. Carroll*,
    937 F. Supp. 2d 390 (S.D.N.Y. 2013)………………………………………………...6

*Deutsch v. Novartis Phatms. Corp.*,
    768 F. Supp. 2d 420 (E.D.N.Y)…………………………………………………...5, 12

*ECD Inv'r Grp v. Credit Suisse Int'l*,
    2017 U.S. Dist. LEXIS 142186 (S.D.N.Y. Sept. 1, 2017)…………………………15

*In re Fosamax Prods. Liab. Litig.*,
    645 F. Supp. 2d 164 (S.D.N.Y. 2009)…………………………………….…………9

*Kumho Tire Co. Ltd. v. Carmichael*,
    526 U.S. 137 (1999)………………………………………………………………...4, 6

*Konrick v. Exxon Mobil Corporation*,
    2016 WL 439361 (E.D. La 2016)…………….……………………….....10, 11, 12

*Matzkow v. United N.Y. Sandy Hook Pilots. Assn,*
    2022 U.S. Dist. LEXIS 3643, *25 (E.D.N.Y. Jan. 7, 2022)………………………..10, 12

*In re New York City Policing During Summer 2022 Demonstrations*,
    2022 U.S. Dist. LEXIS 38780 (S.D.N.Y. 2022)………………………………………..2

*Nimely v. City of New York*,
    414 F.3d 381 (2d Cir. 2005)…………………………………………………………4

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*.,
    No. 05-MD-1720 (MKB), 2022 WL 14814183 (E.D.N.Y. Oct. 26, 2022)……………...9

*In re Rezulin Prod. Liab. Litig*.,
    309 F. Supp. 2d 531, 563 (S.D.N.Y. 2004) ("In re Rezulin I")………………………..16

*Singh v. Lintech Electric, Inc.,*
    2022 WL 2158748 (E.D.N.Y. 2022)…………………………………………………2

*In re Taxotere (Docetaxel) Prods. Liab. Litig.*,
    No. 16-md-02740 (JTM), 2019 WL 3554211 (E.D. La. 2019)…………………...10, 12

*Thai Lao Lignite Co. Ltd. V. Government of Law People's Democratic Republic*,
    924 F. Supp. 2d 508 (S.D.N.Y. 2013)………………………………………………...2

*United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., Miss*.,
    80 F.3d 1074, 1077 (5th Cir. 1996)……………………………………...10, 12

*United States v. Paracha*,
    2006 WL 12768 (S.D.N.Y. 2006)…….…..……………………………………16

*United States v. Farhane*,
    634 F. 3d 127, 158 (2d Cir. 2011)………………………………………….....5

*Zerega Ave. Realty Corp. V. Hornbeck Offshore Transp., LLC*,
    571 F.3d 206 (2d Cir 2009)………………………………………………….9, 10

## Other Authorities

Fed. R. Civ. P. 72(a)…………………………………………………………………2

Fed. R. Evid. 702………………………………………………………2, 3, 5, 16

## <u>INTRODUCTION</u>

On April 27, 2023, Magistrate Judge Sarah Netburn issued an Opinion & Order ("Order") granting in part and denying in part both Plaintiffs and Charity Defendants' bellwether challenges to the other's experts. (Doc. No. 9060). Charity Defendants World Assembly Muslim Youth and WAMY International, collectively ("WAMY"), object to two parts of the Order. WAMY objects to the part of the Order excluding the testimony of WAMY's expert Charles W. Freeman, the former United States Ambassador to Saudi Arabia.[1]  Completely excluding this qualified experiential expert to testify about Saudi Arabian geo-politics and history was contrary to law and clearly erroneous where any perceived defects in Freeman's citations to authorities are properly the subject of cross-examination and do not warrant the exclusion of relevant opinions from a qualified expert that have factual support, including the former Ambassador's firsthand experience engaging with Saudi government officials at the highest levels for many years.

The Magistrate Judge also erred in permitting plaintiffs' expert Jonathan Winer to opine that WAMY was "intertwined" with another charity, the Benevolence International Foundation ("BIF"), where such opinion did not result from any reliable application of his methodology to the available facts and data. Rather than considering all sources of pertinent data in forming his opinion as he claims is his methodology, Winer did not apply his methodology at all admitting that he only considered a very small number of second- and third-hand documents selected by plaintiffs' lawyers and failed to consider primary documents showing that WAMY never had any relationship with BIF. Allowing Winer to opine on an issue where he plainly did not apply his methodology to the facts and data and where his opinion lacks any reliable factual basis was contrary to law and clearly erroneous.

---

[1] (Doc. No. 9060 at 30-32).

**STANDARD OF REVIEW**

A district court must consider timely objections to a magistrate judge's order on a non-dispositive issue "and modify or set aside any part of that order that is clearly erroneous or is contrary to law." *Singh v. Lintech Electric, Inc.,* 2022 WL 2158748, at * 1 (E.D.N.Y. 2022) (Citing Fed. R. Civ. P. 72[a]). This is a deferential standard of review and the moving party bears the burden of showing that the magistrate judge's order is clearly erroneous or contrary to law. *In re New York City Policing During Summer 2020 Demonstrations*, 2022 WL 656808, at * 2 (S.D.N.Y. 2022). A ruling to admit or exclude expert testimony is non-dispositive of an action. *BS BIG V, LLC et al v. Philadelphia Indemnity Ins. Co.*, 2022 WL 4181823, at * 2 (S.D.N.Y. September 13, 2022).

"A magistrate's ruling is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure," and is clearly erroneous if the district court is left with the definite and firm conviction that a mistake has been committed." *BS BIG V. LLC et al.,* supra at * 3 (citing *Thai Lao Lignite (Thai.) Co., Ltd. v. Government of Lao People's Democratic Republic*, 924 F.Supp.2d 508, 512 (S.D.N.Y. 2013).

I.   **THE MAGISTRATE JUDGE ORDER   EXCLUDING THE OPINIONS OF FORMER UNITED STATES AMBASSADOR TO SAUDI ARABIA CHARLES FREEMAN WAS CONTRARY TO LAW AND CLEARLY ERRONEOUS.**

A. *The Magistrate Judge failed to apply or misapplied relevant case law in excluding Freeman's testimony.*

The admissibility of expert testimony is governed by Fed. R. Evid. 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based upon sufficient facts or data;

2

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. In determining admissibility of expert opinion under Rule 702, the district court is charged with "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).

WAMY's proposed expert Charles Freeman, a former United States Ambassador to the Kingdom of Saudi Arabia ("KSA") from 1989 to 1992 with extensive practical experience and knowledge of the KSA's history at the highest level of sophistication as a U.S. diplomat,[2] would provide "synthesize[d]"[3] background information that includes "insight into al Qaeda's origin,"[4] and how WAMY, an agency with close ties to the KSA, could not have supported al Qaeda.[5] The history, politics, and culture of Saudi Arabia is unquestionably a relevant topic in this litigation given that Plaintiffs claim Saudi charities like WAMY provided material support for global Wahabbist jihad that caused the 9/11 attacks.[6] The Magistrate Judge never questioned either Amb. Freeman's qualifications or the relevance of his testimony.[7] The Court instead excluded Amb. Freeman as an expert solely on the basis of perceived deficiencies in his methodology.[8] This extreme remedy to perceived methodological deficiencies was contrary to applicable case law on the admissibility of expert testimony, under which any such perceived deficiencies are properly a matter for cross-examination, and clearly erroneous.

Courts should adopt a "liberal standard of admissibility for expert opinions," *Nimely v. City*

---

[2] Defendants Memo in Opp. ("Dkt. 7602 at 20-21")
[3] Dkt. 9060 at 6.
[4] Id. at 6.
[5] Dkt. 7602 at 20
[6] Id. at 19-20.
[7] Dkt. No. 9060 at 30-32.
[8] Id.

*of New York,* 414 F.3d 381, 396-96 (2d Cir. 2005), and start with "a presumption that expert evidence is admissible." *Chen-Oster v. Godman, Sachs & Co.,* 114 F. Supp. 2d 110, 115 (S.D.N.Y. 2015) (citation omitted). In assessing reliability, "the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos v. Amtrak,* 303 F.3d 256, 267 (2d Cir. 2002). "[I]t is critical that an expert's analysis be reliable at every step." *Id.* Even "[i]f the witness is relying solely or primarily on experience, [he still] must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Alto v. Sun Pharmaceutical Industries, Inc.*, 2021 WL 4803582 at *5 (S.D.N.Y. Oct. 13, 2021). Ultimately, a district court "must 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Amorgianos,* 303 F.3d at 265-66 (quoting *Kumho Tire Co. Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999)).

Recognizing that the traditional "hard science" reliability factors[9] prove unhelpful in terrorism cases to assess the admissibility of expert testimony, the Magistrate Judge instead used the following factors:

- whether the expert will "testify about . . . [her] independent research . . . or whether the opinion was developed expressly for purposes of testifying;"

- whether she "has unjustifiably extrapolated from an accepted premise to an unfounded conclusion;"

- whether she "has adequately accounted for obvious alternative explanations;"

- whether she is "as careful as [s]he would be in h[er] regular

---

[9] Id. at 4: "whether the witness's 'methodology or theory has been or can be tested;' whether it 'has been subjected to peer review and publication;' its 'error rate;' and whether it 'has gained general acceptance' in the scientific community," citing to *Clerveaux v. E. Ramapo Cent. Sch. Dist.*, 984 F.3d 213, 233 (2d Cir. 2021) (citing *Daubert*, 509 U.S. at 593–94).

professional work;" and

- whether her "field of expertise . . . is known to reach reliable results for the type of opinion offered."[10]

*In Re Terrorist Attacks on September 11*, 2001, 03-MD-01570, (Netburn Opinion and Order April 27, 2023 (S.D.N.Y.)) ("Dkt. 9060"). Though no one factor is determinative and the court has the "flexibility to tailor the Rule 702 inquiry to the needs of the case and the discipline of the expert,"[11] the opinion misapplied these factors when analyzing Amb. Freeman's work.

Applying the pertinent factors show that Amb. Freeman is "an expert with first-hand experience on the foundational background and contextual issues concerning the KSA's government, history, geopolitics, and religion and the interplay of all of these, all of which are relevant"[12] He forms his opinions from independent research.[13] Freeman does not unjustifiably extrapolate in his opinions. As the former United States Ambassador to Saudi Arabia, he has first-hand knowledge of historical events, many of which he supports with citations to other authorities including publications and newspaper articles as do other experiential experts in the field.[14] Furthermore, Freeman accounted for alternative theories by considering Plaintiffs' experts' opinions concerning Saudi geopolitics.[15] As an ambassador who lived in Saudi Arabia, speaks Arabic and conversed with the highest government officials in the KSA on behalf of the United States government, his "field expertise" is known to "reach reliable results for the type of opinion he offered." The Magistrate Judge's opinion does not provide a "rigorous analysis" of its own reliability factors but instead simply dismisses Freeman as an

---

[10] Id. at 5, citing to *Deutsch v. Novartis Pharms. Corp*., 768 F. Supp. 2d 420, 426 (E.D.N.Y.).

[11] Id. at 4, citing to *United States v. Farhane*, 634 F. 3d 127, 158 (2d Cir. 2011).

[12] Dkt. 7602 at 22.

[13] Dkt. 9060 at 37 (accepting independent research as a factor but also noting that "independent research is not the only indicator of a solid methodology").  Freeman possesses the necessary independent research.

[14] For example, in footnote 26; pg. 9 of his report, Freeman cites to personal conversations he had with King Fahd Abdulaziz and senior member of the royal family; See Dkt. 7602 at 24; In footnote 24; pg. 8 Freeman cites to *From the Eye of the Storm: The Kuwait Crisis as Seen from the American Embassy at Riyadh,* Chapter 1 of America's Misadventures in the Middle East, Charlottesville, Virginia, 2010, which relays Freeman's account of the circumstances that led to the Gulf War of 1990-1991; See Dkt. 7602 at 24; Dkt. 7602 at 24, fn. 128.

[15] Freeman Rpt. at 14-17 ("Ex. A").

expert. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F. 3d 256, 267, 270 (2d Cir. 2002) (requiring a rigorous examination of the facts on which the expert relies when determining reliability). Here, the Magistrate Judge's opinion is contrary to law.

The Magistrate Judge concluded that "Freeman's testimony lacks factual support as his report includes "sparse citations" and, unlike PEC's experiential expert, his reading list is "anemic" and includes "no list of his own publications."[16] To be admissible, however, an expert's opinions—especially an experiential expert[17]—do not have to be backed "with published studies that unequivocally support his or her conclusions." *Amorgianos,* 303 F. 3d at 270, (citing *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 [8th Cir. 2001) (noting, "there is no requirement 'that a medical expert must always cite published studies on general causation in order to reliably conclude that a particular object caused a particular illness'").  Even in rigid hard science related cases, which the opinion rightly recognized this case is not, an expert's testimony is admissible "despite the fact that the expert could not point to a single piece of medical literature that specifically supported the expert's opinion." *Amorgianos,* 303 F. 3d at 266-267 (finding that "where an expert otherwise reliably utilizes scientific methods to reach a conclusion, lack of textual support may go to the weight, not the admissibility of the expert's opinion").

"Amb. Freeman bases his opinions on his vast practical and field experience, and his opinions need not therefore rest on traditional scientific methods."[18]  Notwithstanding that Freeman need not cite to publications to support his opinion, he cites to his own work and primary and secondary sources that support it.[19]  Principally, Freeman does not opine on Saudi Arabia geo-politics based on

---

[16] Dkt. 9060 at 31-32.

[17] Id. at 11 (recognizing and accepting that historical field experts typically lack the "exactness of hard science methodologies").

[18] Dkt. 7602 at 23; (citing to *Davis v. Carroll,* 937 F. Supp. 2d 390, 412 (S.D.N.Y. 2013) (citing *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 149-50 (1999).

[19] Id. at 23-24; (arguing that Amb. Freeman's opinion was not his *ipsit dixit* but rather is based on primary and secondary sources).  See also Freeman Rpt. at 1 where it reads: "I rely primarily on my personal and professional experience, but have cited corroborative material in footnotes, and provide a short reading list as Exhibit B."

documents he read.  Instead, he cites documents that support and corroborate his lived experience in the Kingdom, as the former U.S. ambassador with extensive experience with its society, its religious practices, its culture, and its politics.[20] He explains, as an experiential expert must, how his experience led to the conclusions he reached. For example, during his tenure in Saudi Arabia and for fifteen years thereafter,[21] he acquired specific knowledge[22] about the Arabic language in order to "understand and be situationally aware as other people spoke;" gained knowledge about Bin Ladin's intellectual origin[23] and how it disagreed with the Kingdom's official religious beliefs;[24] obtained expertise about world conflicts and their relationship to 9/11 and the relationship between the Kingdom, Bin Ladin, and Saudi Arabia;[25] received intelligence about U.S. and Saudi anti-terrorism resources;[26] gained understanding about the inner workings of Saudi Arabia and their relationship to charities;[27] obtained knowledge about the tracking of monies being diverted from charities;[28] obtained an understanding

---

[20] Freeman Dep. Tr. 292:11-295:4 ("Ex. B") (explaining how documents corroborate his lived experience); see also Dkt. 9060 at 16-17 (permitting Winer's to testify about al Qaeda and Saudi Arabia based on his collective experience as diplomat and money laundering investigator in the Middle East, leaving questions about the depth of his knowledge to cross-examination).

[21] Ex. B at 461:1-14 (explaining that he continued to meet with Saudi officials and U.S. intelligence about Saudi Arabia long after he left foreign services).

[22] Ex. B at 291:12-292:10 (explaining how he took steps to learn everything he could about places and cultures where he was assigned).

[23] Ex. B at 271:14-272:16 (explaining Bin Ladin's ancestors came from a region where Saudi's Islamic principles did not prevail and how Bin Ladin was a student of the work of Egyptian clerics).

[24] Ex. B at 270:12-271:12 (explaining Saudi's version of Islam as puritanical, quietist Wahhabism); Ex. B at 271:14-273:23, 316:15-317:1, 364:14-365:19 (discussed observations and discussions from which he concluded Al Qaeda is the enemy of Saudi and is not a product of it); see also Ex. A at 6-7, 8-11 (discussing Bin Ladin's discontent with the Saudi government along with Saudi's scholar's rebuttal of Bin Ladin's ideology and warning others against him).

[25] Ex. B at 237:23 – 240:11 (speaking on the Saudi relationship to Bin Ladin); 80:15-81:11 (speaking on the 9/11 commission investigators discussions with him about the nature of charitable donations in the Kingdom); 178:7-179:21 (discussing consultation with the CIA about Saudi Arabia in the immediate aftermath of the 9/11 attacks).

[26] Ex. B at 336:7-16 (explaining that he had the last word on reporting to the U.S. about any terrorism related activities), 332:22-333:7 (had access to U.S. and Saudi anti-terrorism resources).

[27] Ex. B at 85:23-86:7 ("Typically, I would see the King, the Crown Prince, the Minister of Interior, the Foreign Minister or his Deputy, the Chief of the Istikhbarat, which is the foreign intelligence organization of Saudi Arabia. I might also see the Minister of Petroleum and Minerals. All of whom are personal friends."); 245:20-25 (where he states, "it is the nature of Saudi charities organized by the government, including WAMY, to represent the interest of KSA in the religious sphere"); 269:1-9 (describing how questions of whether charities control where the donations end up is within Freeman's knowledge); 305:5-18 (explaining that WAMY propagates the Kingdom's official version of Islam).

[28] Ex. B at 258:8-17 (explaining that during his tenure he raised the issue of diversion of Saudi monies with Saudi officials and tracked the issue with Saudi in the years before al Qaeda was formed).

about the different regions of Saudi Arabia and their impact on geopolitics,[29] and much more. The application of this robust experience to form his opinions about the "Kingdom, its history, its relation to religion, [and] its relationships to terrorist activities overseas"[30] is reliable as it is the same methodology relied upon by other Middle-Eastern experts, some of whom have relied on Freeman himself.[31]   These opinions about Saudi Arabia, Bin Ladin, Saudi geopolitics, and Saudi influence over charities are, moreover, consistent with the 9/11 Commission Report.[32]

The Magistrate Judge based her decision to exclude Freeman because he allegedly failed to cite "credible sources" and "mischaracterize[ed]" or "whitewash[ed]" the provenance of a quote.[33] Here, the Court focused on four of the 38 citations in Freeman's report.[34] Three of the citations were to Wikipedia, as support for undisputed facts.[35] However, Freeman also cites to other authorities to support well-known and undisputed historical facts.[36] In footnote 14, for example, Freeman cites to the New York Times, the noted religious expert and scholar Karen Armstrong as well as Wikipedia, to support for the proposition that many in the West, and other Muslims, label Al Qaeda as "Wahhabi" when it is not.[37] In footnote 16, Freeman cites Wikipedia along with two other sources to support his opinion, also derived from extensive field experience, that "Saudi Wahhabis advocate quietism and

---

[29] Ex. B at 392:24, 393:1-25, 394:1-17 (Amb. Freeman used his first-hand knowledge of Saudi tribal names typical from that region and compared such names with the names of the 9/11 hijackers.); Ex. B 182:9-13 (explaining his trips to different regions); 234:6-11 (describing his views that Saudi is not a monolith where everyone has the same view)

[30] Ex. B at 236:19-237:6 (discussing the parameters of his report).

[31] Ex. A at 1, n. 1; 6, n. 14; 9, nn.  25, 27; 10, n. 31; 12, n. 27 (showing that his opinions are also supported by respected secondary sources such as Lawrence Wright and Steve Coll); see also Ex. A at 8, fn. 24, see supra at fn. 14; Freeman Dep. Tr. at 294:16-296:12 (explaining that Robert Lacey's experiential book corroborates his experience, that David Rundel's book also corroborates it and Steve Coll's book relies on his experience) )

[32] Dkt. 7602 at 24; see also, *Alto v. Sun Pharmaceutical Industries*, Inc., 2021 WL 4803582 at *5, supra, (requiring the expert to provide detailed, not general, expertise explaining how his "experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.").

[33] Dkt. No. 9060 at 31-32.

[34] Id., see also Ex. A at 1-12.

[35] See Ex. A nn. 2, 14 and 16.

[36] In footnote 2 of his report, Freeman cites Wikipedia, the crowd-edited resource, to show the Western view of the Kingdom of Saudi Arabia as an "absolute monarchy." Ex. A at. 2, n. 2.

[37] Ex. A at 6, n. 14.

obedience to government authority."[38]  Though Wikipedia may not be the "gold" standard for scholarly or professional writing,"[39] Freeman cites many other sources along with it and, as the opinion concedes, terrorism experts "may rely on hearsay to reach their conclusions."[40]

Similarly, the "mischaracterized provenance" quote faulted by the Magistrate Judge supports the wholly undisputed fact that almost all the Saudi 9/11 hijackers came from Saudi Arabia's southwestern provinces, a fact that is well known in the public domain and something Freeman could attest to himself based on his many years of service in Saudi Arabia and interaction with Saudis and Saudi government officials.[41]  Where the facts for which the questioned authorities are cited are undisputable, Freeman's use of a less than "gold-standard" sources for those facts do not render either his methodology or his opinions unreliable.

> B.  *The extreme measure of excluding the Ambassador's testimony was unwarranted and mistaken.*

"[I]n accordance with the liberal admissibility standards of the Federal Rules of Evidence, only serious flaws in reasoning or methodology will warrant exclusion." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB), 2022 WL 14814183, at *3 (E.D.N.Y. Oct. 26, 2022); (citing *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009) (citing *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002))); *see also Adams v. Liberty Mar. Corp.*, 407 F. Supp. 3d 196, 202 (E.D.N.Y. 2019) (same). Expert testimony should be excluded "if it is speculative or conjectural or based on assumptions that are 'so unrealistic and contradictory to suggest bad faith' or to be in essence 'an apples and oranges comparison.'" *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC,* 571 F.3d 206, 213-214 (2d Cir. 2009) (citing *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996). Exclusion

---

[38] Ex. A at 7, n. 16.
[39] Dkt. 9060 at 31.
[40] Id. at 41.
[41] See Ex. A at 4, n. 7; Ex. B at  411:6-25; 412:1-24; 413:1-24; 414:1-14.

of an expert's testimony in its entirety can also be warranted where the testimony does not "fit" the facts. *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996). "Other contentions that the assumptions are unfounded go to weight, not the admissibility, of the testimony." *Zerega Ave. Realty Corp.,* 571 F.3d at 214 (citations and internal quotation marks omitted and cleaned up).

Questions relating to the "fit between the expert's opinion and scientific literature on which they relied was certainly within the broad discretion afforded to the district court [to exclude] under *Daubert* and its progeny, and did not impinge upon the jury's function." *Amorgianos,* at 269*; see also, Matzkow v. United N.Y. Sandy Hook Pilots. Assn*, 2022 U.S. Dist. LEXIS 3643, *25 (E.D.N.Y. Jan. 7, 2022) ("The Court must also determine whether the expert's reasoning or methodology fits the facts of the case and whether it will aid the trier of fact's understanding of the evidence.") (internal quotes omitted). "It is precisely such an undertaking that assures that an expert, when formulating an opinion for use in the courtroom, will employ the same level of intellectual rigor as would be expected in the scientific community." *Id*.

As authority for excluding Freeman's entire testimony, the opinion cites to *In re Taxotere (Docetaxel) Prods. Liab. Litig.,* No. 16-md-02740 (JTM), 2019 WL 3554211, at *2 (E.D. La. 2019).[42] This decision, however, supports inclusion not exclusion of Freeman's testimony.  In *In re Taxotere,* the moving party sought to exclude the opinion from a medical expert relying on *Konrick v. Exxon Mobil Corporation*, 2016 WL 439361 *( E.D. La 2016)* and arguing that the expert "cherry-pick[ed] facts that supported her opinion and ignores those that do not, making her opinion unreliable." *In re Taxotere (Docetaxel) Prods. Liab. Litig.,* No. 16-md-02740 (JTM), 2019 WL 3554211, at *2 (E.D. La. 2019).  The district court denied the motion to exclude the expert finding that the movant's use of *Konrick* was misplaced because "Dr. Bosserman [did not mischaracterize[] **the contents** of her

---

[42] Dkt. 9060 at p. 32.

sources the way the experts did in *Konrick.*" *Id.* (emphasis supplied).

By contrast, in *Konrick,* the Eastern District of Louisiana acknowledged the magistrate judge's exhaustive examination of the record[43] and affirmed the exclusion of three experts because they all, to a large degree, "[relied] on multiple studies that do not reliably support [their] conclusions." *Konrick v. Exxon Mobil Corporation,* 2016 WL 439361, *7 *(E.D. La. 2016).* In one exemplar,[44] the court wrote about Dr. Harrison, the causation expert in what was a chemical exposure case, the following:

> Dr. Harrison's report fails to note that the workers in the study were exposed to a number of different organic solvents, including formaldehyde, phenol, hexane, and chloroform—substances to which, as Dr. Harrison admitted in his deposition, plaintiff was never exposed. Nor does the report acknowledge the study's guidance that because workers "may have exposure to a mixture of organic solvents, it is difficult to attribute spontaneous abortion to any specific solvent.

> In light of the Court's examination of the studies cited by Dr. Harrison, it is apparent that he relies on a collection of divergent studies that either do not isolate the relevant substances, do not examine the exposure outcome at issue, or do not exhibit statistically significant results. In addition, Dr. Harrison exhibits a willingness to disregard contrary or inconsistent results, even within the studies upon he relies.

*Konrick v. Exxon Mobil Corporation, 2016 WL 439361, *7 and *10 (E.D. La. 2016).*

Here, the Magistrate Judge excluded Freeman's opinions altogether though there was no dispute or fault with the contents or facts supported by the footnotes at issue and instead the Court

---

[43] *Konrick v. Exxon Mobil Corporation,* 2016 WL 439361, *7 – 14 (E.D. La. 2016) (generally excluding three experts for mischaracterizing their studies sources)

[44] In other examples, the court dispatched the experts as follows:

**For expert Baer, the court found**:

"Like Dr. Harrison, Dr. Bearer provides no analysis in which she reconciles contradicting results within the scientific literature. Nor does she offer any explanation for why the studies upon which she relies support her conclusion, despite their differences with the facts of this case. Indeed, the only mention that Dr. Bearer makes of her analytical approach appears in a single sentence in her expert report: I will testify with reasonable professional certainty, *relying on methodologies that are generally accepted in my fields of specialty* that there exists a cause and effect relationship between [plaintiff's] exposure...and her fetal demise. Without some explanation of what these methodologies are or how she applied them to the scientific literature, Dr. Bearer's opinion is conclusory *ipse dixit.*" *Konrick v. Exxon Mobil Corporation, 2016 WL 439361, *11 (E.D. La 2016).*

**Finally, as to expert Waters, the court wrote:**

"[A] third methodological defect is that Dr. Waters' report cherry-picks data and fails to explain results that contradict her Conclusion." *Konrick v. Exxon Mobil Corporation, 2016 WL 439361, *12 (E.D. La. 2016).*

took issue with the perceived quality of a source cited in support of the undisputed fact. *In re Taxotere* and *Kornick* do not support excluding an expert where there is no suggestion that Freeman mischaracterized the contents of any source.   To the contrary, the "contents" referenced in the footnotes at issue are fully corroborated by the 9/11 commission report and the other sources discussed above including Freeman's first-hand experience.

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Konrick*, at *3 (citing to *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996).  The Magistrate Judge herself embraced this cautious approach when addressing many of the opinions other experts proffered.[45]   Freeman's testimony should be treated no differently. Thus, Freeman's minor flaw in attribution goes to a question of weight and not admissibility.  *Cates v. Trustees of Columbia Univ. in City of New York*, No. 16 Civ. 6524 (GBD), 2020 WL 1528124, at *6 (S.D.N.Y. Mar. 30, 2020); *Deutsch v. Novartis Pharms. Corp.*, 768 F. Supp. 420, 426 (E.D.N.Y. 2011) (focusing on the method used to reach the conclusion or opinion, not on whether the source of the method is incorrect).

Amb. Freeman has employed the intellectual rigor required of an experiential expert in his field.  Any disputes concerning any source cited in support of a fact underlying any opinion go to weight, not admissibility. The April 27, 2023 opinion did not correctly apply relevant case law to analyze Freeman's methodology. Any flaw in Freeman's methodology is not the type of "intellectual dishonesty,"[46] in kind or in degree, that warrants an expert's opinions to be excluded entirely.[47] WAMY's objection to the Magistrate Judge's Order excluding Freeman from testifying should

---

[45] See, e.g. Dkt. 9060 at 17 (cross-examine Winer as to Saudi Arabia and charitable financing), 19 (cross-examine Winer as to WAMY's relationship to BIF), 19 (cross-examine Winer as to MWL's connection to Rabita Trust), 34 (cross-examine Marks as to his qualifications to testify on terror financing),

[46] Dkt. 9060 at 32.

[47] *Matzkow v. United N.Y. Sandy Hook Pilots. Assn*, 2022 U.S. Dist. LEXIS 3643, *25 (E.D.N.Y. Jan. 7, 2022) ("Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded").

therefore be granted.

## II. THE MAGISTRATE JUDGE CLEARLY ERRED IN PERMITTING JONATHAN WINER TO OPINE ON WAMY'S RELATIONSHIP TO BENEVOLENCE INTERNATIONAL FOUNDATION WHERE WINER NEVER APPLIED HIS CLAIMED ALL SOURCE METHODOLOGY IN REACHING THAT OPINION AND IGNORED ABUNDANT FACTS FROM PRIMARY SOURCES SHOWING THERE WAS NO RELATIONSHIP.

The Magistrate Judge clearly erred in allowing Plaintiffs' expert Jonathan Winer to opine that there was a relationship between WAMY and separate United States charity, Benevolence International Foundation ("BIF"), where such opinion lacked a reliable factual basis which resulted from an unreliable application of Winer's claimed "all source" methodology.[48] Winer is, among other things, a lawyer in private practice, former Deputy Assistant Secretary of State for International Law Enforcement, and former counsel to Senator John Kerry. (*Id*. at 14-15). Winer claims to apply an "all source" methodology which he claims involves taking "as many sources as you can and then weigh the sources and bring them together to form your analytic findings on a topic."[49] Winer also claims his methodology involves considering "primary sources" and "first-hand information" as well as government reports.[50]

WAMY moved to prohibit Winer from opining that there was a relationship between WAMY and BIF, including that they were "intertwined" on the grounds that Winer did not reliably apply his claimed methodology to the facts and data pertinent to this issue and that his opinion lacked a factual basis.[51] The Magistrate Judge allowed Winer to testify about claimed relationship between WAMY and BIF finding that "[n]o witness, expert or otherwise, could readily review all of the discovery in this case plus all publication relevant to the issues it presents."[52] With respect to the opinion challenged, this finding was clearly erroneous as it is not that Winer did not consider **everything**

---

[48] Dkt. 9060 at 18-19.
[49] Winer Dep. Tr. at 119:5-8. ("Ex. C")
[50] Id. at 118:12-21
[51] See Defendant's *Daubert* Motion ("Dkt. 7343" at 31-32)
[52] Dkt. 9060 at 18.

elucidating the lack of a relationship between WAMY and BIF, it is that he failed to consider **any**

reliable evidence produced[53] in discovery  and other primary sources in reaching this opinion.

Winer opines that the WAMY subsidiary charity Lajat Al-Birr[54] Al-Islamiyah (LBI) and BIF

were "intertwined"[55] and that his conflation of BIF/LBI was a "central vehicle" for funding

terrorists.[56]   In support of this opinion, Winer cites to either a USDOJ press release or a rejected

evidentiary proffer related *U.S. v. Enaam Arnaout*, N.D. Ill. Case No. 02-CR-892.[57] Abandoning his

claimed "all source methodology," he ignored primary source data showing that WAMY had no

relationship to BIF and reliable government documents showing that BIF did not provide material

support to terrorists, let alone al Qaeda.

WAMY produced relevant primary source documents contemporaneously issued with the

events they concern by people with first-hand knowledge. Winer considered none of the relevant and

the reliable documents produced in this case. They show that Adel Batterjee at one time was the

executive director of LBI but was removed by WAMY or pushed out in early 1993 for improprieties,

after which he formed BIF.[58] Evidence shows Batterjee deliberately marketed BIF to falsely imply a

continuing relationship with WAMY/LBI in order to deceive and confuse potential donors forcing

---

[53] Id. at 37 (taking into account Sidel's reliance on documents produced in this case in evaluating his methodology. Plaintiffs were unable to show a fundamental disconnect between Sidel's premises and his conclusions whereas that does exist with Winer on this subject).

[54] "Al-Birr" in Arabic means "benevolence."

[55] Winer Rpt. at ¶¶ 6.6.6.2, 7.3.4.3 n. 48, 7.7.3.1 n. 66, 12.12.1, 12.12.2, 12.12.5, 12.12.9  n. 205 and n. 207, 12.12.10, 12.12.11 ("Ex. D");  Winer Rebuttal Rpt.. at ¶¶ 2.38.9, 2.38.11, 2.38.12 and 2.38.12.1. ("Ex. E")

[56] Ex. D at ¶6.6.6.2, 7.3.4.3, 7.7.3.1 and fn. 66, 12.12.2, 12.12.11, 12.12.1, 12.12.9 and 12.12.10.

[57] See notes 55 and 56 supra. The Government's *Santiago* proffer was rejected by U.S. District Court Judge Conlon, who found that the proffered statements were not admissible under the co-conspirator exception. See *United States v. Arnaout*, Memorandum Opinion and Order filed February 3, 2003 - Winer Dep. Exhibit 919 ("Ex. F"); See Ex. D at ¶7.3.4.3 and fn. 48, 49; ¶7.c.3.1 and nn. 66 and 69; 12.12.5 and fn. 205; 12.12.9 and fn. 207; ¶12.12.10 and fn. 208. See Ex. C at 246: 23-24, 247:1-23; See also Arnaout Sentencing Memorandum - Winer Dep. 920 at p. 4. ("Ex. G").

[58] See Ex. C. at 225:19-23; 227:6-25, 228:1-25, 229:1-25, 230: 1-3. See also Winer Deposition Exhibit 914 at 7-8 – 1993 LBI Meeting minutes ("Ex. H"). For example, a 1993 letter from WAMY to Batterjee protested his decision to form another organization with a similar name and logo to LBI's, expressing concern that this would cause confusion "despite the absence of any relationship between [the two organizations] from an organizational and administrative aspect." See Winer Deposition Exhibit 915 at p. 2 – Juhani Feb 1993 letter to Batterjee ("Ex. I"); See also Ex. C. at 230: 4-25. Neither had Winer read a 1993 letter to Prince Abdulaziz, which discussed the danger of confusion with BIF and referred to Batterjee as a "former executive," who "*no longer has any administrative connections with [LBI], but has also resigned* from the Board of Supervisors." Winer Dep. Ex. 916 – Juhani May 1993 Letter ("Ex. J"); See Ex. C at 231:4-232:4.

WAMY's then Secretary General issued a written demand that Batterjee cease and desist from doing so.[59] Winer wholly failed to review any of these primary source documents; all the while he confuses and mistakes LBI for BIF when in fact they are not the same. Where Winer failed to consider and ignored available evidence showing his opinions was erroneous, such opinion should have been stricken. *ECD Inv'r Grp v. Credit Suisse Int'l,* 14-cv-8486, 2017 U.S. Dist. LEXIS 142186, *44 (S.D.N.Y. Sept. 1, 2017) (Netburn, M. J.) (where an expert ignored data that was "before him" the court excluded his testimony on that topic: "[t]his speculation was especially unwarranted because while there was no evidence of *any* investors selling the entirety of their long positions, there was evidence that many investors did *not* do so, evidence that DeRosa wholly ignored"). Winer likewise ignored data in front of him and speculated on data that are wholly unreliable.

Winer also failed to consider any findings by both the U.S. District Court for the Northern District of Illinois and the Seventh Circuit Court of Appeals noting a lack of evidence that BIF provided support to terrorists.[60] He allegedly considered—but completely ignored—similar findings in the 9/11 Commission's Monograph on Terrorist Financing ("Monograph").[61] Winer also ignored filings in *U.S. v. Arnaout* showing that BIF had no affiliation with LBI.[62] Instead, he considered unreliable materials in the Arnaout case the Court had excluded.

Where, as here, an expert ignores evidence that is "vital to his opinion," exclusion of the

---

[59] Ex. C at 231:4-232:4; Ex. I at p. 2; Ex. J.

[60] See Ex. C.at 248:4-11, 249:2-25, 250:1-3; Winer Dep. Exhibit 922 - *U.S. v. Arnaout*, 282 F. Supp. 2d 838 (N.D. Ill 2003) ("Ex. K"); Ex. C at 251:11-25, 252:1-5; Winer Deposition Exhibit 923 - *United States v. Arnaout*, 431 F.3d 994 (7th Cir. 2005) ("Ex. L"). In her Order finding that the government had not shown that the enhancement under U.S.S.G. §3A1.4 applied, Judge Conlon found that: "(n)or does the record reflect that (Arnaout) attempted, participated in, or conspired to commit any act of terrorism." Id. at 843. The Court also found that "(t)he government has not established that the Bosnian and Chechen recipients of BIF aid were engaged in a federal crime of terrorism, nor that Arnaout intended the donated boots, uniforms, blankets, tents, x-ray machine, ambulances, nylon and walkie-talkies to be used to promote a federal crime of terrorism." Id. at 845.

[61] Ex. C at 255:3-25, 256:3-8 (Commenting on the *Arnaout* prosecution, the Monograph concluded that "(d)espite these troubling links, the investigation of BIF revealed little compelling evidence that BIF actually provided financial support of al-Qaeda, at least after al-Qaeda was designated … in 1999. Indeed, despite unprecedented access to the U.S. and foreign records of these organizations, one of the most experienced and best terrorist prosecutors resolved the investigation of BIF without a conviction for support of terrorism…." Winer Dep. Ex. 909 at p. 111 – Monograph ("Ex. M")

[62] See Ex. C. at 246; 23-24, 247:1-23; See also Ex. G at p. 4.

expert's testimony is warranted.[63] The Magistrate Judge's reliance on *United States v. Paracha,* 2006 WL 12768 at * 20 (S.D.N.Y. 2006) is misplaced as the section cited concerned a challenge to the reliability of a claimed methodology, not whether the claimed methodology was reliably applied to relevant facts and data as WAMY challenges here. Gathering multiple sources of information including primary and secondary sources, cross-checking and juxtaposing new information against existing information and juxtaposing new information against existing information and evaluating new information to determine whether conclusions remain consonant with the most reliable sources may indeed be a reliable methodology. *Id.* Winer did not do any of that when he opined that WAMY and BIF had a structural relationship as one organization. He relied on a press release and a rejected evidentiary proffer and ignored primary sources and reliable secondary sources—including the opinions of a United States District Court and Court of Appeals—that entirely refuted his opinions and showed they were wrong.

When an expert wholly abandons their claimed methodology in reaching an opinion, the Court—in its capacity as gatekeeper—cannot decide that the expert reliably applied their methodology to the relevant facts and data in reaching that opinion. It is axiomatic that in order to "reliably apply" a methodology, and therefore be admissible under Fed. R. Evid. 702, an expert's opinion must result from an application of the methodology in the first place. Here, with respect to his opinion that WAMY and BIF had a relationship and were intertwined, Winer never applied his "all source" methodology. Thus, with respect to the challenged Winer opinion, the Magistrate Judge clearly erred in finding it met the criteria for admissibility. WAMY therefore requests that the Court grant its objections to this part of the Order that Winer may not opine on any relationship between WAMY and BIF.

**CONCLUSION**

---

[63] *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 563 (S.D.N.Y. 2004) ("*In re Rezulin I* ").

For the reasons stated above, WAMY's objections to the Magistrate Judge's Order should be sustained.

May 31, 2023                    Respectfully submitted,


                               /s/ *Omar T. Mohammedi*
                               Omar T. Mohammedi
                               Frederick Goetz, *of counsel* (admitted *pro hac vice*)
                               The Law Firm of Omar T. Mohammedi, LLC
                               233 Broadway, Suite 820
                               New York, NY 10279
                               Telephone: (212) 725-3846
                               Fax: (212) 202-7621
                               Email: omohammedi@otmlaw.com
                               Email: fgoetz@goetzeckland.com
                               *Counsel for Defendants World Assembly of Muslim Youth*
                               *and World Assembly of Muslim Youth International*