

EXHIBIT
920
J. Winer
7/13/2021
Debra A. Dibble, RDR, CRR, CRC

Case 1:02-cr-00892   Document 189   Filed 06/09/2003   Page 1 of 13     18 01 1287

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 02 CR 892 |
| ) | |
| v. ) | Judge Suzanne B. Conlon |
| ) | |
| ENAAM M. ARNAOUT, ) | |
| ) | |
| Defendant. ) | |

FILED JUN - 9 2003 MICHAEL W. DOBBINS

DOCKETED JUN 9 2003

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant Enaam M. Arnaout, by his attorneys, submits this Memorandum to address factors relevant to this Court's sentencing determination which were not relevant to, or adequately addressed by, the objections to the PSR's Guidelines calculation included Defendant's Position Paper as to Sentencing Factors. While Mr. Arnaout in no way seeks to minimize the severity of his offense, he asks the Court to sentence him based on the offense to which he pled guilty, and not based on the overwhelmingly prejudicial allegations made by the government which are both untrue and unproven. Mr. Arnaout also asks that the Court consider his rather tragic, and certainly unique, personal background, his achievements in building BIF-USA into a large and internationally respected Muslim charity, and the extraordinary good works that BIF-USA accomplished over the past decade. While those factors certainly do not excuse Mr. Arnaout's offense, they help place it in its proper context and will help the Court to understand that Mr. Arnaout's conduct was motivated not by a desire to finance terrorists but by a desire to help people in some of the most war-ravaged areas of the world.

I.   **Mr. Arnaout's Personal Background.**

As is reflected in the PSR (ll. 528-573) and Mr. Arnaout's letter to the Court, which will be separately transmitted to the Court by the probation officer, Mr. Arnaout was born in Syria in 1962 and

PEC-WAMY042155
KADI0031200

seed money provided by Mr. Batterjee, began the operations of BIF-USA in May 1993. What the government sees a continuing, decades-long international conspiracy was, in reality, a simple business transaction in which a mentor gave his protege an opportunity to make a living in a new country.

Mr. Arnaout assumed full control of BIF-USA and at all times ran that organization as an independent business with no affiliations to LBI or any of the other organizations run by Mr. Batterjee. Mr. Arnaout did have occasional contacts with Mr. Batterjee, and on a couple of occasions met individuals associated with LBI or other charitable organizations. If, as the government apparently believes, certain of those individuals were providing non-humanitarian support to terrorists, they did not do so with BIF-USA's knowledge or support, and they did so while operating outside the jurisdiction of the United States.

After starting BIF-USA with literally nothing almost exactly a decade ago, Mr. Arnaout oversaw a significant growth in the size, scope, and sophistication of BIF-USA's business. At the time the government shut it down, BIF-USA received $3-4 million per year in revenue, had distributed over $20 million of aid in its eight years in existence, and had offices or programs in many areas of Eastern Europe and Central Asia, Pakistan, Canada, and the United States. The government seized voluminous documentation of BIF-USA's well-established, and completely legitimate, charitable programs in many areas of the world. It seized no document regarding any BIF-USA program or office–legitimate or otherwise–in either the Sudan or Yemen, yet it alleges that BIF-USA and Mr. Arnaout are somehow tied to alleged operations in those countries. While it is unfortunately true that BIF-USA, in its early newsletters, sought to "puff" its own significance by taking credit for the programs of LBI and other charities, BIF-USA provided no support to the Sudan or Yemen, and no document will evidence any fund transfer, shipment, program, or any other fact to the contrary.

PEC-WAMY042158

KADI0031203