UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN) ECF Case |
|---|---|

**This document relates to:**

*All actions*

---

**PLAINTIFFS' OPPOSITION TO THE OBJECTIONS OF WORLD ASSEMBLY
OF MUSLIM YOUTH AND WAMY INTERNATIONAL (ECF NO. 9113) TO
THE OPINION & ORDER FILED APRIL 27, 2023 (ECF NO. 9060)**

---

Robert T. Haefele
Jodi Westbrook Flowers
Donald A. Migliori
C. Ross Heyl
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*For Plaintiffs' Executive Committee for Personal Injury
and Death Claims on behalf of the Plaintiffs*

Sean P. Carter
Stephen A. Cozen
J. Scott Tarbutton
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Tel.: (215) 665-2105
Email: scarter1@cozen.com

*For the Plaintiffs' Executive Committee for Commercial
Claims on behalf of Plaintiffs*

June 30, 2023

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................. 1

II.   STANDARD OF REVIEW .................................................................................................. 2

III.  LEGAL ARGUMENTS ........................................................................................................ 3

      a.    The Magistrate Judge's Order Excluding Freeman's Opinions was not Clearly
           Erroneous or Contrary to Law ........................................................................................ 3

      b.    The Magistrate Judge Did Not Err In Permitting Plaintiffs' Expert Jonathan
           Winer To Opine On WAMY's Relationship To Benevolence International
           Foundation .................................................................................................................... 5

IV.   CONCLUSION .................................................................................................................. 10

i

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir. 2002)........................................ 3, 4

*Campbell v. Metro. Prop. & Cas. Ins.* Co., 239 F. 3d 179 (2d Cir. 2001) .................................... 6, 9

*Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55 (S.D.N.Y. 2018)............................................2

*Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) .................................................... 1, 4, 6, 9

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ....................................................................................3

*New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483 (2d Cir. 2013)........................................2

*R.F.M.A.S. Inc. v. Mimi so*, 748 F. Supp. 2d 244 (S.D.N.Y. 2010)....................................................9

*Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33 (S.D.N.Y. 2016).............................................9

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties*, LLC, 467 F.3d 107 (2d Cir. 2006) ........................ 6, 9

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522 (2d Cir. 1990) ...........................................2

*United States v. Abu-Jihaad,* 553 F. Supp. 2d 121 (D. Conn. 2008)................................................8

*United States v. Paracha*, No. 03-cr-01197 (SHS), 2006 WL 12768 (S.D.N.Y. Jan. 3, 2006), aff'd, 313 F.
  App'x 347 (2d Cir. 2008) ................................................................................................................5

*Zaremba v. Gen. Motors Corp.*, 360 F.3d 355 (2d Cir. 2004)..........................................................5

**Rules**

Fed. R. Civ. P. 72 ...............................................................................................................................2

Fed. R. Civ. P. 72(a)....................................................................................................................1, 2, 10

Fed. R. Evid. 702 ............................................................................................................................ 3, 5

**Statutes**

28 U.S.C. § 636(b)(1)(A) .....................................................................................................................2

**Other Authorities**

John Roth, Douglas Greenberg and Serena Wille, "National Commission on Terrorist Attacks
  on the United States: Monograph on Terrorist Financing, Staff Report to the
  Commission," National Commission on Terrorist Attacks Upon the United States, 2004,
  Available at: https://govinfo.library.unt.edu/911/staff_statements/911_TerrFin_
  Monograph.pdf ...............................................................................................................................8

U.S. Department of Treasury website, Press Releases, "Treasury Designated Benevolent
  International Foundation and Related Entities as Financiers of Terrorism,"
  https://home.treasury.gov/news/press-releases/po3632 (last visited June 28, 2023) ......................6

## I.    __INTRODUCTION__

The Plaintiffs' Executive Committees, for all Plaintiffs, respectfully submit this Memorandum of Law in Opposition to the May 31, 2023 Objections, pursuant to Fed. R. Civ. P. 72(a), filed by Defendants World Assembly of Muslim Youth and the World Assembly of Muslim Youth International (collectively "WAMY"), ECF No. 9113 ("Objection"), challenging two aspects of Magistrate Judge Netburn's April 27, 2023, Opinion and Order addressing *Daubert* challenges in the personal jurisdiction and merits proceedings (the "Order"), ECF No. 9060.

*First*, the magistrate judge did not err in excluding in its entirety the testimony of WAMY's proffered expert Charles F. Freeman ("Freeman"). The magistrate judge appropriately excluded Freeman's testimony because it "lacks adequate support," and based on her finding that "[h]is intellectual dishonesty undermined the Court's confidence that [he] ha[d] reliably applied reliable principles and methods to the facts of the case." Order at 32 (internal quotations omitted). Critically, while WAMY offers extensive argument about Freeman's purported credentials, it does not directly dispute Freeman's intellectual dishonesty, and never defends his decision to mislead the Court about the provenance of information Freeman cites in support of his opinions. WAMY's claim that Freeman's efforts to mislead the Court and jury should be considered a "minor flaw," Objection at 12, is not at all credible, and cannot serve to carry WAMY's burden in challenging the magistrate judge's well-reasoned decision to exclude his unsupported testimony. Objection at 12.

*Second*, the magistrate judge did not err in allowing Plaintiffs' expert Jonathan Winer to testify about the relationship between WAMY and Benevolence International Foundation ("BIF"), finding that Winer's all-source methodology did not require that he *literally* had to examine every piece of information contained in discovery. Consistent with the governing caselaw, the magistrate judge determined that "Defendants can effectively test his conclusions via cross-examination."

1

WAMY's Objections fall far short of demonstrating the magistrate judge's decisions were clearly erroneous or contrary to law. In the first instance, WAMY cannot show the judge erred in precluding testimony of an expert who identified "anemic" support for his opinions, demonstrated no reliable methodology beyond *ipse dixit,* and misled the Court by misrepresenting a central source of his opinion as an anonymous reliable source, when in fact it was a comment posted to an internet blog by a writer Freeman could not identify. In the second instance, WAMY merely doubles down on its argument that Winer did not consider certain evidence, precisely the issue the magistrate judge carefully considered and found was an issue for cross-examination, not one warranting the expert's preclusion. In both cases, WAMY merely repeats arguments that the magistrate judge considered and properly rejected.

## II.   <u>STANDARD OF REVIEW</u>

The legal standard for fully or partially setting aside a nondispositive pretrial order under Rule 72(a) is whether the order was "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72; 28 U.S.C. § 636(b)(1)(A). The magistrate judge's order addressing admissibility of expert testimony is one to which the "clearly erroneous or contrary to law" standard of review applies. *Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 68 (S.D.N.Y. 2018). An order is "clearly erroneous" "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013). Further, "[a]n order is contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Chen-Oster, 325 F.R.D. at 68.* Whether the order is "clearly erroneous or contrary to law" is a "a deferential standard." *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).

2

### III.    LEGAL ARGUMENTS

a.    **The Magistrate Judge's Order Excluding Freeman's Opinions Was Not Clearly Erroneous Or Contrary To Law**

At base, WAMY's Objections insist that Freeman should be permitted to testify even though his opinions are premised solely on his "*ipse dixit*" (Opinions at 32), despite the fact that support for his opinions is "[in]adequate" and "anemic" (Order at 31), and even though he grossly mischaracterized sourcing for his opinions, leading the magistrate judge to find that he had engaged in "'intellectual dishonesty' [that] undermines the Court's confidence that [he] 'reliably applied' 'reliable principles and methods' 'to the facts of the case'." ((Opinion at 32) (quoting Fed. R. Evid. 702)). WAMY fails entirely to offer any credible argument that the magistrate judge failed to consider relevant information in reaching these conclusions or that her findings as to Freeman are legally or factually unsound, much less that the order was clearly erroneous or contrary to law.

The magistrate judge correctly found (Opinion at 32) that, after accounting for the absence of any credible sources and the absence of any reliable methodology, all that was left to support Freeman's opinions was his "*ipse dixit*" assertion that his opinions are accurate. The magistrate judge correctly found that Freeman's *ipse dixit* is not enough. *Id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see also Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (quoting *Joiner*). Nothing in WAMY's opposition addresses Freeman's sole reliance on *ipse dixit* or addresses the magistrate judge's application of *Joiner* and *Amorgianos* to the facts before the Court.

The magistrate judge also correctly found (Opinion at 31) that Freeman's Report "lacks adequate support," describing his "reading list" as "anemic." Overlooking the body of case law that prohibits experts from resting opinions entirely on their own say-so, WAMY argues that Freeman should be free to do just that. As the magistrate judge correctly concluded, Freeman's opinions fail to meet even the first of three requirements identified in Fed. R. Evid. 702—namely because his opinion is premised solely on *ipse dixit*, his "testimony is [*not*] based upon sufficient facts or data." Lacking

adequate support, Freeman's opinions do not "rest[ ] on a reliable foundation" as required under *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 580, 597 (1993).

The magistrate judge also correctly found (Opinion at 32) exceptionally good reason to question the reliability of Freeman's application of any reliable methodology in reaching his opinions. As WAMY is compelled to acknowledge (Objection at 5 (citing *Amorgianos*, 303 F.3d at 267)), "[i]t is critical that an expert's analysis be reliable at every step." This very standard is fatal as applied to Freeman, as the magistrate judge properly found, both because Freeman's opinions are unsupported by sufficient facts or data, and because Freeman's "intellectual dishonesty" relating to his sources so fundamentally and pervasively undermined the Court's confidence in his reliability that it infected the entirety of his opinions. Opinion at 32.

Nowhere in its Objections does WAMY squarely address the level of dishonesty reflected by Freeman's misrepresentation of his sourcing, compounded by his efforts to deflect in defending his attempted deception when cornered. As is uncontested, Freeman [mis]identified the source for a full-page endnote to his report as "a former U.S. intelligence officer who wishes to remain anonymous." Opinion at 32; ECF No. 7351-3 at 4 n.7, 12-13 n.i. At Freeman's deposition, when asked about the source of the statement in his report, Freeman initially attempted to maintain the deception offered in his report, responding "This is a quotation from an intelligence officer, retired." ECF No. 7351-8 at 30 (Freeman Tr. at 384). Only after he was confronted with contrary evidence, Freeman finally acknowledged that the entire page-long quote he included in his report and attributed to a retired intelligence officer who allegedly chose to remain anonymous, was actually text that Freeman had cut and pasted from a comment he found posted on an internet blog under a pseudonym "Tidewater" and Freeman has "no idea" who Tidewater is. *Id.* at 31 (Freeman Tr. 392).

While it is true that experts may rely on hearsay where they apply a reliable methodology, the magistrate judge properly found that Freeman's efforts to deceive the Court, Plaintiffs, and factfinder

about his source and attempts to mischaracterize its provenance reflected a fundamental "intellectual dishonesty" that undermined any confidence that Freeman had reliably applied reliable principles or methodology to the facts of the case. *Id.* (quoting Fed. R. Evid. 702). The magistrate judge thus properly found that Freeman's report and opinions failed to meet the baseline "level of intellectual rigor" required by Rule 702. Opinion at 32 (citing *Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 358 (2d Cir. 2004)). Consequently, the magistrate judge found that Freeman's "intellectual dishonesty" completely undermined any confidence that Freeman had reliably applied reliable principles or methodology to the facts of the case. *Id.* (quoting Fed. R. Evid. 702).

The absence of "sufficient facts or data" and the Court's lack of confidence that Freeman "reliably applied [reliable] principles and methods to the facts of the case" are supported by the record and are each independently appropriate reasons for the Court to properly exclude Freeman's testimony in full. Fed. R. Evid. 702.

     **b.** **The Magistrate Judge Did Not Err In Permitting Plaintiffs' Expert Jonathan Winer To Opine On WAMY's Relationship To Benevolence International Foundation**

The magistrate judge properly determined (Opinion at 18-19) that, even if Plaintiffs' expert Jonathan Winer had not necessarily reviewed every single page produced in this sprawling multidistrict litigation, he had reliably applied a reliable methodology—namely, an "all-source" methodology he had described (ECF No. 7344-6 at 47) (Winer Tr. at 119:5-12); *see also id.* at 47-48 (Winer Tr. 119:24—120:19). The magistrate judge reasoned that (particularly in litigation of this size), "[n]o… expert …, could readily review all the discovery in this case plus all publications relevant to the issues it presents," *id.* at 18, but Winer had applied his methodology reliably where he had "analyze[d] a range of evidence before arriving at a conclusion, just as other expert witnesses have." Opinion at 18-19 (citing *United States v. Paracha*, No. 03-cr-01197 (SHS), 2006 WL 12768, at *20 (S.D.N.Y. Jan. 3, 2006), aff'd, 313 F. App'x 347 (2d Cir. 2008) (approving methodology that consisted of "gathering multiple sources of

information, . . . cross-checking and juxtaposing new information against existing information[,] and evaluating new information to determine whether his conclusions remain consonant with the most reliable sources")). The magistrate properly concluded (Opinion at 19) that WAMY could cross-examine Winer about any additional relevant document that, in WAMY's view, contradicts Winer's opinions. *See Daubert*, 509 U.S. at 596; *see also SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties*, LLC, 467 F.3d 107, 134 (2d Cir. 2006) (citing *Campbell v. Metro. Prop. & Cas. Ins.* Co., 239 F. 3d 179, 186 (2d Cir. 2001)) ("To the extent that there are gaps or inconsistencies in [the expert's] testimony, those issues 'go to the weight of the evidence, not to its admissibility.'").

WAMY is wrong where it suggests (Objection at 13-14) that Winer did not support with sufficient facts or data the specific opinion on which WAMY premises its objection. WAMY's specific challenge to Winer's testimony concerns his opinions about the relationship between WAMY and Benevolence International Foundation ("BIF"), an entity the United States Treasury designated in 2002 as a financier of terrorism under Executive Order 13224.[1] Winer's report set out detailed opinions, with detailed sourcing, about BIF and its relationship with WAMY. *See, e.g.*, Ex. 1[2] (Winer Rpt.) § 6.6.6.2; § 12.12; § 12.12.11. Though WAMY suggests Winer premised his opinions on insufficient facts or data, Winer's report cites a number of sources. Specifically, among the sources Winer cites for his opinions about WAMY's relationship to BIF are documents the U.S. government seized from BIF, which were then used in the *Arnaout* proffer, *id.* at n.6; the 1987 indictment of BIF, *id.* at n.66; audit materials that the Canada Revenue Agency ("CRA") produced in this litigation, *id.* at §§ 10.3—10.4.; statements made in this litigation by WAMY's Assistant Secretary General Abdul

---

[1] *See* U.S. Department of Treasury website, Press Releases, "Treasury Designated Benevolent International Foundation and Related Entities as Financiers of Terrorism," https://home.treasury.gov/news/press-releases/po3632 (last visited June 28, 2023).

[2] The exhibits identified herein are attached to the declaration of Robert T. Haefele, filed with Plaintiff's Opposition.

Wahab Noorwali, *id.* at §§ 12.12.4.; an interview with Adel Batterjee by the New York Times, *id.* at n.202; and the U.S. Treasury designations of BIF, *id.* at n.205.

Similarly, when WAMY counsel raised the issue at Winer's deposition, arguing with Winer that he had not reviewed relevant documents Winer countered that he had. Winer responded, "I don't think it's fair to say that. I reviewed [Noorwali's] deposition, which goes into it in some depth …. I reviewed other documents in which Batterjee was characterized as the founder of LBI." Ex. 2 (Winer Tr.) 221:9-16. Regarding the Noorwali deposition, Winer went on to say "the record from the financial documents that I looked at…that WAMY was funding the activities of LBI in Pakistan-Afghanistan, at the time. So I believed [Batterjee] was acting in both capacities at that time in that location." *Id.* 223:7-15.

When WAMY put forward its document that it believes indicates that Adel Batterjee left BIF in 1993, Winer immediately assessed the document and disagreed with WAMY's conclusions, saying "it actually doesn't say that. It refers to a handover from the former director. And refers to an attempt to ease the tension, which suggests there are still actions to be taken," and when asked if he could assess that Batterjee was not with LBI as of February 1993, Winer answered "No, I cannot." *Id.* at 228:23—229:7. WAMY presented its evidence to Winer, he analyzed it, and he disagreed with WAMY's conclusions. He did not "ignore" it, nor did he "speculate." Indeed, it is WAMY's speculation that Batterjee was replaced despite the letter evidencing, as Winer observed, "actions still to be taken." *Id.* at 229:3-7; Ex. 3 (Exhibit 914 from Winer Deposition) at p.4 of English translation.

WAMY's contention that Winer "failed" to consider findings by the U.S. District for the Northern District of Illinois is similarly misguided. WAMY asserts the judge's rulings in that case are a "primary source" for the truth of the matter asserted in the evidentiary proffer. Again, in his deposition Winer directly explained the flaws in that argument, saying "the judge's ruling in relationship to the issue of hearsay prevented information coming in regarding the other co-

conspirators, which thus caused elimination for a substantial portion of the case." Ex. 2 (Winer Tr.) 240:18—241:25. WAMY continued to mischaracterize the judge's ruling on the "Santiago Proffer" asserting that it amounted to "insufficient evidence." Winer again immediately analyzed and contextualized the assertion, explaining that "this is a reference to proffered statements by co-conspirators. It's not about the prosecutor's statement, it's about proffered statements about what the co-conspirators said, is how I read that sentence." *Id.* at 243:3-24.

WAMY's conflation of the evidentiary standards of criminal cases continued throughout Winer's deposition. WAMY misrepresented that the government "could not meet its burden" in bringing terrorism charges against BIF, to which Winer corrected "the terrorist charges were dropped as part of the plea agreement." *Id.* at 249:16-17. Recognizing the evidentiary standards are different, Winer relied on the underlying source in the proffer, which experts are permitted to do. Opinion at 6-7 (citing *United States v. Abu-Jihaad,* 553 F. Supp. 2d 121, 126 (D. Conn. 2008) (experts "must, perforce, rely often on hearsay.")). Regardless, Winer testified that he did in fact consider the U.S. District Court for the Northern District of Illinois' ruling in forming his opinion, *id.* at 254:10 – 16 ("I did consider the district court ruling") and he did not "ignore" it, contrary to WAMY's false assertion in its brief.

WAMY also asserts that Winer "considered-but completely ignored" the 9/11 Commission's Monograph on Terrorist Financing. Winer not only considered the Monograph, but he also cited it in his Report. Ex. 1 (Winer Rpt.) at n.14; n.17. At his deposition, Winer explained how he weighed the conclusion of the Monograph as it relates to BIF, saying, in part, "the[se] are hard cases to make, because the actions that relate to complex international crime cases, can take place over a long time. They can involve people who aren't available for testimony in the United States" and concluding "all of…that has to be taken into consideration, as one thinks about this…." Ex. 2 (Winer Tr.) 256:3-258:1.

WAMY hangs its argument on its own one-sided view of which evidence Winer should credit in reaching his opinions, ignoring disputed facts, conflicting credible evidence, and the full scope of the proofs. But the magistrate judge properly determined that, because WAMY's arguments "go to the weight of the evidence, not to its admissibility," *SR Int'l Bus. Ins. Co.,* 467 F.3d at 134 (citing *Campbell*, 239 F. 3d at 186), the proper avenue to address WAMY's factual concerns is cross examination. Opinion at 19 (citing *Daubert*, 509 U.S. at 596); *see SR Int'l Bus. Ins. Co.*, 467 F.3d at 134. Indeed, Winer was not "ignoring" or "disregarding" relevant facts or data, and actually provided reasoned explanations as to why he disagreed with documents WAMY presented to him in his deposition.

Nonetheless, while WAMY may dispute the reliability or the weight of the evidence on which Winer premised his opinions, any challenge "to the reliability of such evidence is better reserved for cross-examination." *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 47 (S.D.N.Y. 2016); *see R.F.M.A.S. Inc. v. Mimi so*, 748 F. Supp. 2d 244, 252 (S.D.N.Y. 2010) (challenges to "the weight of the evidence upon which [an expert] relied or the conclusions generated from [the expert's] assessment of that evidence, … may [be] presented … through cross-examination of the expert."). Indeed, here, the test for the reliability of Winer's testimony is especially "flexible" because his knowledge is "non-scientific" but lies in the social sciences. *Id.* at 49-50.

IV.    <u>**CONCLUSION**</u>

For the foregoing reasons, pursuant to Rule 72(a), Plaintiffs respectfully request that the Court

overrule WAMY's Objections.

Dated: June 30, 2023                              Respectfully submitted,

MOTLEY RICE LLC                              COZEN O'CONNOR

By:  /s/ *Robert T. Haefele*                      By:  /s/ *Sean P. Carter*
ROBERT T. HAEFELE                            SEAN P. CARTER
JODI WESTBROOK FLOWERS             STEPHEN A. COZEN
DONALD A. MIGLIORI                          J. SCOTT TARBUTTON
28 Bridgeside Boulevard                         One Liberty Place
Mount Pleasant, South Carolina 29464       1650 Market Street, Suite 2800
Tel.: (843) 216-9184                              Philadelphia, Pennsylvania 19103
Email: rhaefele@motleyrice.com               Tel.: (215) 665-2105
                                                        Email: scarter1@cozen.com
*Liaison Counsel for the Plaintiffs'*
*Executive Committee for Personal Injury and Death*    *Co-Chair of the Plaintiffs' Executive Committee for*
*Claims on behalf of the Plaintiffs*              *Commercial Claims on behalf of Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the "Plaintiffs' Opposition To The Objections Of World Assembly Of Muslim Youth And WAMY International (ECF No. 9113) To The Opinion & Order Filed April 27, 2023 (ECF No. 9060) was electronically filed this 30th day of June, 2023. Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system, which the parties may access.

_____
Robert T. Haefele