# UNITED STATES DISTRICT
# COURT SOUTHERN DISTRICT
# OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03-MD-01570 (GBD)(SN)<br>ECF Case |

This document relates to:

*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, 02-cv-06977 *Gladys H. Salvo, et al. v. Al Qaeda Islamic Army, et al.*, 03-cv-05071 *Federal Insurance Co., et al. v. Al Qaida, et al.*, 03-cv-06978
*Thomas E. Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 03-cv-09849
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 04-cv-01923
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, 04-cv-05970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, 04-cv-07065
*Euro Brokers Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 04-cv-07279
*Maher, et al. v. Islamic Emirate of Afghanistan a/k/a The Taliban, et al.*, 1:23-cv-02845

# DEFENDANTS'[1] RESPONSE TO PLAINTIFFS' OBJECTIONS
# TO THE COURT'S OPINION AND ORDER DATED APRIL 27, 2023 (ECF NO. 9060)

---

[1] "Defendants" means World Assembly of Muslim Youth and World Assembly of Muslim Youth International, International Islamic Relief Organization, Muslim World League, the four "Charity Officer Defendants" (Abdullah Omar Naseef, Abdullah bin Saleh al Obaid, Abdullah Mohsen al Turki, and Adnan Basha), and Yassin Kadi.

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES…………………………………………………….…………..ii

INTRODUCTION………………………………………………………………….………..1

I.    STANDARD OF REVIEW………………………………………….…………..2

II.    JUDGE NETBURN'S ORDER EXCLUDING WINER FROM OPINING ON
SALAFISM AND WAHHABISM WAS NEITHER CONTRARY TO
LAW NOR CLEARLY RRONEOUS…………………………………………...2

    A. Plaintiffs' Objections Offer No Legal or Factual Basis to Overrule Judge
Netburn's Order Excluding Winer's Testimony on Wahhabism and Salafism...…3

III.    PLAINTIFFS' OBJECTION TO JUDGE NETBURN'S RULING
CONCERNING BENTHALL'S TESTIMONY SHOULD BE OVERRULED…………..…9

    A. Plaintiffs' argument, raised for the first time in their Rule 72
Objection, that FRE 404 Prohibits Benthall's testimony is without merit……..…9

    B. Plaintiffs have not established that Judge Netburn's evidentiary
findings were clearly erroneous or contrary to law……………………….……..12

CONCLUSION……………………………………………………………………...…..16

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Pages**

*Aboeid v. Saudi Arabian Airlines, Inc.*,
    No. CV-10-2518 SJ-VVP, 2011 WL 2222140 (E.D.N.Y. June 1, 2011)………..…....11

*BS BIG V, LLC, v. Phil. Indemnity Ins. Co.*,
    No. 19 Civ. 4273 (GBD) (SLC), 2022 WL 4181823, at *3
    (S.D.N.Y. Sept. 13, 2022) (Daniels, J.)…………………………………….…….2, 10

*Charlot v. Ecolab, Inc.*,
    97 F. Supp. 3d 40, 51 (E.D.N.Y. 2015)…………………………………………...10

*Crown Cork & Seal Co. v. Credit Suisse First Boston Corp*,
    No. 12-CV-05803-JLG, 2013 WL 978980, at *2 (S.D.N.Y. Mar. 12, 2013)…..……...3

*Disney Enters., Inc. v. VidAngel Inc.*,
    No. CV-16-04109-ABP-LAX, 2019 WL 4544428, at *4 (C.D. Cal. May 29,
    2019)………………………………………………………………………….……..11

*Dykes v. Cleveland Nursing & Rehab. Ctr.*,
    No. 4:15-CV-76-DMB-JMV, 2018 WL 2703134, at *4 n.2 (N.D. Miss. June 5,
    2018)………………………………………………………………………….……..11

*Equal Emp. Opportunity Comm'n v. Peters' Bakery*,
    301 F.R.D. 482, 485 (N.D. Cal. 2014)……………………………………………...13

*Edmonds v. Seavey*,
    No. 08 Civ. 5646, 2009 WL 2150971, at *2 (S.D.N.Y. July 20, 2009)…………….....15

*Fernandez v. Transp. Designs, Inc.*,
    No. SA-16-CA-022-OLG, 2017 WL 3033403, at *3 (W.D. Tex. Apr. 7, 2017)……...11

*Gill v. Arab Bank PLC*
    893 F. Supp. 2d 523, 536 (E.D.N.Y. 2012)………………………………………..4

*Highland Cap. Mgmt., L.P. v. Schneider*,
    551 F. Supp. 2d 173, 177 (S.D.N.Y. 2008)…………………………………………13

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010)…………………………………………………………………...14

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*
    No. 3:12-CV-1058-SI, 2019 WL 1651038, at *17 (D. Or. Apr. 17, 2019)…………11

*Infantino v. Sealand Contractors Corp.*,
    565 F. Supp. 3d 347, 355 (W.D.N.Y. 2021)……………………………………….10

*In re Mirena Ius Levonorgestrel-Related Products Liability Litig. (No. II),*
    341 F.Supp.3d 213, 240-41 (S.D.N.Y. 2018)……………………………………….…7

*In re New York City Policing During Summer 2020 Demonstrations*,
    No. 20-cv-8924 (CM)(GWG), 2022 WL 656808, at *2 (S.D.N.Y 2022)………………2

*In re Platinum-Beechwood Litig.*,
    469 F. Supp. 3d 105, 118 (S.D.N.Y. 2020) (Rakoff, J.)……………………………....16

*Jinro Am., Inc. v. Secure Invs., Inc.*,
    266 F.3d 993, 1006, 1010 (9th Cir. 2001)……………………………………………....5

*Knipe v. Skinner*
    999 F.2d 708, 711 (2d Cir. 1993)……………………………………………………...10

*Kyhn v. Shinseki*,
    716 F.3d 572, 577 (Fed. Cir. 2013)……………………………………………………14

*McDonald and Dickson v. TD Bank*,.,
    [2021] ONSC 3872, Can. Ont. Sup. Ct. J, 32-33……………………………….. ……….4

*Nimely v. City of N.Y.*,
    414 F.3d 381, 399 & n.13 (2d Cir. 2005)…………………………………………….2, 8

*Olin Corp. v. Lamorak Ins. Co.*,
    332 F. Supp. 3d 818, 835 (S.D.N.Y. 2018) (Rakoff, J.)………………………………16

*Pac. Life Ins. Co. v. Bank of New York Mellon*,
    571 F. Supp. 3d 106, 112 (S.D.N.Y. 2021)………………………………...…….2, 13

*Singh v. Lintech Electric, Inc.*,
    2022 WL 2158748, at *1 (E.D.N.Y. 2022)……………………………………………..4

*S.E.C. v. Todd*,
    No. 3-CV-2230-BEN(WMC), 2006 WL 5201386, at *5 (S.D. Cal. Oct. 17, 2006)…..10

*Stichting ter behartiging van de belangen van oudaandeelhouders in het kapitaal van Saybolt Int'l B.V. v. Schreiber*,
    327 F.3d 173, 184-85 (2d Cir. 2003)…………………………………………………..13

*Stonebarger v. Union Pac. Corp.*,
    No. 13-CV-2137-JAR-TJJ, 2014 WL 3579374, at *5 (D. Kan. July 21, 2014)…...…..11

*Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*,
    28 F. Supp. 3d 465, 479 (D. Md. 2014)…………………………………………………14

*Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*,
    924 F. Supp. 2d 508, 511 (S.D.N.Y. 2013)……………………………………...…..2, 15

*Tokio Marine & Nichido Fire Ins. Co. v. Calabrese*,
    No. CV 07-2514 (JS) (AKT), 2011 WL 5976076, at *13 (E.D.N.Y. Nov. 28,
    2011)…………………………………………………………………….……..16

*Twitter Inc. v. Taamneh*,
    598 U.S. __, 143 S. Ct. 1206, 1226 (2023)…………………………………………16

**Other Authorities**

Fed. R. Civ. P. 72(a)……………………………………………………………………4

Fed. R. Evid. 401…………………………………………………………...………9, 10

Fed. R. Evid. 403………………………………………………………………….9, 10

Fed. R. Evid. 404(a)…………………………………………………………...9, 10

Fed. R. Evid. 404(b)………………………………………………………………...12

*Wright & Miller.*,
    22B Fed. Prac. & Proc. Evid. § 5234, at 46-47 (2d. ed. 2017)…………………………11

## <u>INTRODUCTION</u>

Plaintiffs make two objections to Magistrate Judge Netburn's ("Judge Netburn") Opinion and Order ("Order") granting in part and denying in part both Plaintiffs' and Defendants' bellwether challenges to experts.[2] First, they object to the Order's exclusion of Jonathan Winer's "opinions on Salafism and Wahhabism."[3] Second, Plaintiffs object to that portion of the Order that permits Jonathan Benthall to testify about Defendants' legitimate humanitarian work.[4] Neither objection has merit.

Judge Netburn correctly concluded that Winer lacks the qualifications to opine on Salafism and Wahhabism because his experience was "centered on international law enforcement, financial regulation, and the like—not the social, cultural, or religious dynamics in the region."[5] Indeed, Winer intends to offer expert testimony about Islam—what he calls political Islam—but he admits that he is not qualified to opine on matters of Islamic religious doctrine or theology. Plaintiffs seek to divert attention from Winer's lack of qualifications to opine on matters of religion by repeating mentions of "Wahhabism" and "streams" of Islam in the Final Report of the National Commission on Terrorist Attacks Upon the United States.[6] Putting aside the question of what relevance religious beliefs have to this terrorist financing case, Judge Netburn correctly found that Winer fundamentally lacks the qualifications to discuss them. Plaintiffs' objection is merely another in a string of attempts to shoehorn Winer's wide-ranging testimonies that reflect advocacy, not expert analysis, into this matter.[7]

Judge Netburn also properly concluded that Jonathan Benthall, an anthropologist with research and publishing experience in the field of Islamic organized charity and charitable giving under Islam,

---

[2] ECF No. 9060 ("Order") ("Ex. 1").
[3] Ex. 1 at 17-18 (internal quotations excluded).
[4] *Id.* at 28.
[5] *Id.* at 17-18.
[6] Winer never defines political Islam or references any author that has defined it in his reports despite using the term several times.
[7] In the underlying *Daubert* briefing, Winer, an attorney, filed a declaration that Judge Netburn described as "the start of an advocate's brief, not a statement of facts" with arguments that "belong in a brief" and as containing "pure argument." ECF No. 7647 at 3 ("Ex. 2"); Ex. 1 at 2; Ex. 2. Judge Netburn struck that declaration in part, Ex. 2, and another Winer report in full, ECF No. 8905 ("Ex. 3").

may opine as to the humanitarian work of certain defendant charities.[8] Plaintiffs' arguments to the contrary are waived and, in any event, meritless.

## I.    STANDARD OF REVIEW

Judge Netburn's decision should not be modified or set aside unless it is clearly erroneous or contrary to law.[9] "A magistrate's ruling is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure," and is clearly erroneous if the district court is left with the definite and firm conviction that a mistake has been committed."[10] This is a deferential standard of review, and the moving party bears the burden.[11] Plaintiffs cannot meet that burden.

## II.    JUDGE NETBURN'S ORDER EXCLUDING WINER FROM OPINING ON SALAFISM AND WAHHABISM WAS NEITHER CONTRARY TO LAW NOR CLEARLY ERRONEOUS.

"Rule 702 tells us who may give expert testimony and about what."[12] "The party proffering expert testimony bears the burden of establishing," among other things, that the expert is "qualified"[13] with respect to each topic on which he opines. "[I]t by no means follows" from the fact that an individual has expertise in one field "that he or she is qualified to express expert opinions as to other fields."[14]

Jonathan Winer is a lawyer[15] and hence, an advocate by trade. His experience includes work as a Deputy Assistant Secretary of State from 1994 to 1999, as counsel for Senator John Kerry from 1985

---

[8] Ex. 1 at 25-30. Mr. Benthall's reports were submitted on behalf of the Muslim World League (MWL), the International Islamic Relief Organization (IIRO), the Charity Officers (Abdullah Omar Naseef, Abdullah bin Saleh al Obaid, Abdullah Abdelmohsen al Turki, and Adnan Basha), and Yassin Kadi. For purposes of this brief, the terms "the charities" or "these charities" refer to MWL and IIRO.

[9] *In re New York City Policing During Summer 2020 Demonstrations*, No. 20-cv-8924 (CM)(GWG), 2022 WL 656808, at *2 (S.D.N.Y 2022).

[10] *Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 511 (S.D.N.Y. 2013); *BS BIG V, LLC, v. Phil. Indemnity Ins. Co.*, No. 19 Civ. 4273 (GBD) (SLC), 2022 WL 4181823, at *3 (S.D.N.Y. Sept. 13, 2022) (Daniels, J.).

[11] *In re New York City*, 2022 WL 656808, at *2; *Pac. Life Ins. Co. v. Bank of New York Mellon*, 571 F. Supp. 3d 106, 112 (S.D.N.Y. 2021).

[12] Ex. 1 at 3.

[13] *Id.* (internal quotation marks omitted).

[14] *Nimely v. City of N.Y.*, 414 F.3d 381, 399 & n.13 (2d Cir. 2005).

[15] Jonathan Winer Decl. at ¶1, Jan. 12, 2022 (ECF No. 7609) ("Ex. 4").

through 1994, as counsel with the law firm Alston & Bird LLP from 1999 to 2008,[16] and then as a Senior Advisor for Resettlement with the Department of State.[17] Whether as an attorney or government worker, his experience focused on financial crime, money laundering and related matters.[18] Despite this limited specialized background, Plaintiffs proffer Winer as the expert to testify about terrorism, al Qaeda, Saudi Arabia, Saudi charities, and about ten other topics.[19] Judge Netburn correctly denied Jonathan Winer's attempt to expand his limited expertise beyond his ken to include religion and Islam.[20]

### A. Plaintiffs' Objections Offer No Legal or Factual Basis to Overrule Judge Netburn's Order Excluding Winer's Testimony on Wahhabism and Salafism.

Plaintiffs make four arguments against the Order: (1) Judge Netburn "conflated the issues and erred when she predicated her opinion on the premise that Winer's counterterrorism expertise focused solely on "financing,"[21] (2) Judge Netburn erred by "not weighing Winer's experience outside of his work in the diplomatic corps and for the U.S. Government,"[22] (3) "Winer's Opinions addressing issues of religion in connection with counterterrorism may be fodder for cross exam but are not properly excluded under *Daubert* principles,"[23] and, (4) "understanding counterterrorism necessarily requires understanding distinct differences between the general practice of Islam and radical extremism."[24] These arguments are unavailing and do not change the fact that Winer is not qualified to opine on religious issues, and do not show that that the Order excluding Winer's testimony on Wahhabism and

---

[16] Jonathan Winer Expert Rpt. App. 1B at 140 ("Ex. 5"); Jonathan Winer Dep. Ex. 904 ("Ex. 6").

[17] Winer Decl. at ¶83 (Ex. 4).

[18] Ex. 6 Winer resume ("I served as counsel to Senator John Kerry, where I conducted a number of investigations on cross-border financial crime, in addition to staffing him on legal, banking, and foreign affairs issues. Between 1999 and 2008, I was a counsel and then partner at the law firm of Alston & Bird LLP, where I practiced law in these subject matter areas.").

[19] *See* Winer Dep. Tr. 50:17-52:25 ("Ex. 7") (where he discussed the topics he intends to opine on); *Id.* at 525:12-527:5 (where he discussed expertise in 14 or 15 topics); *see also* Defs. Reply Memo to Exclude Winer (ECF No. 7688) where this issue was addressed.

[20] Ex. 1 at 17 and 24; *See also Crown Cork & Seal Co. v. Credit Suisse First Boston Corp*, No. 12-CV-05803-JLG, 2013 WL 978980, at *2 (S.D.N.Y. Mar. 12, 2013) (expert's testimony must be related to those issues or subjects within his or her area of expertise).

[21] ECF No. 9110 at 5.

[22] *Id.* at 7.

[23] *Id.* at 8.

[24] *Id.*

Salafism was either contrary to law or clearly erroneous.[25] No court has ever qualified Winer to testify on religious issues, and this Court should not do so now.[26] Tellingly, Plaintiffs could not cite to any cases to support their objection.

*First*, Plaintiffs offer no legal or factual basis to justify their argument that "[u]nderstanding foundational concepts of the religious and ideological movements that al Qaeda and associated terrorists exploited to raise funds is essential to gaining expertise in the field of terrorist financing."[27] This wrongly assumes that a terror financing expert necessarily has expertise in understanding Islam, including complex and nuanced concepts such as Wahhabism and Salafism. It does not. But even if we accept this logic as true, Winer has not demonstrated that he in fact understands the details of Wahhabism, Salafism or even religion generally. He says so implicitly and explicitly:

> When asked "are you an expert in Islam," Winer fashions his own expertise with the response:
>
> > I'm **not an expert on the doc…religious doctrine** to the extent it involves the political impact of different types of interpretations of religion when a religion is politicized into a political movement, where I have expertise. So when you have a combination of foreign policy, security, and religion, that's an area that I have devoted some extensive work on over a long period of time. And that is an area of expertise, yes.[28]

After digressing about his experience in the Department of State's Middle East bureau,[29] Winer was asked again "but you are not an expert on Islamic terms of concept from a religious standpoint, are you," he Winer responded, "I am not really."[30] While Winer knows some of "the basics" about Islam and knows about a few Islamic terms and concepts, he does not claim to have expertise in the field

---

[25] *Singh v. Lintech Electric, Inc.,* 2022 WL 2158748, at *1 (E.D.N.Y. 2022) (citing Fed. R. Civ. P. 72(a)).
[26] *See Gill v. Arab Bank PLC*, 893 F. Supp. 2d 523, 536 (E.D.N.Y. 2012) (admitting Winer to testify as to banking terminologies, standards, and practice, but not as to Hamas or foreign terrorist organization's agenda, its relationship with terrorist organizations, or its interactions with charitable organization); *see also, McDonald and Dickson v. TD Bank*, [2021] ONSC 3872, Can. Ont. Sup. Ct. J., 32-33 (Winer Dep. Ex. 900 ("Ex. 8")) (allowing testimony on international banking standards but not on Canadian banking laws); *see also* ECF No. 7688 at 2 n4.
[27] ECF No. 9110 at 5.
[28] Ex. 7 at 74:4-15 (emphasis added).
[29] Ex. 7 at 74:15-75:5 (tries to explain how his observations of different Muslim groups like Al Qaeda formed the basis of his religious expertise).
[30] Ex. 7 at 75:8-13.

4

acknowledging that "it's really up to others to determine the scope of my expertise."[31] Judge Netburn did just that and concluded that Winer "has no expertise in religion, so his opinions on 'Salafism' and 'Wahhabism' are excluded."[32]

There is nothing in Winer's curriculum vitae, either in his publications or testimony that shows Judge Netburn was clearly erroneous in her conclusion and that Winer in fact has expertise in Salafism or Wahhabism. References in his reports to Wahhabism and Salafism merely amount to the parroting of similar buzz-words about indoctrination he used throughout his report without any context, facts or analysis, with the intent to incite negative emotions and create an adverse inference against Saudi charities without a factual basis or knowledge, let alone expertise.[33] Winer's relevant experience has nothing to do with religion, but is rather based entirely on his services as a government analyst of financial crime. Aside from his lack of qualifications to speak about religion, Saudi geopolitics, Wahhabism and Salafism, Winer is ill-equipped to speak about any of these topics because, as Judge Netburn remarked, he "traffick[s] in stereotypes"[34] about Middle Easterners, whom he considers duplicitous.[35]

Winer's time at the Department of State[36] and other agencies is also not closely related to the relevant subject field—religion, Wahhabism and Salafism—that Plaintiffs want him to opine on. As a

---

[31] Ex. 7 at 76:19-25; 77: 1-25; 78: 1-78.
[32] Ex. 1 at pp. 17-18.
[33] Ex. 5 re Wahhabism at ¶¶3.7, 4.3, 4.4.2, 5.2.2, 5.3.3, 6.7.7.1, 7.3.2, 7.4.8, 9.4.2, 9.4.4.1, 9.4.4.5, 9.16, 10.3.6.4, 12.6.3, 12.8.1, 12.8.2, 12.9.9, 12.9.15, 12.10.1, 12.13.5, 12.15, 12.15.1, 12.21, 13.2, 13.3 (Wahhabism); *id.* ¶¶ 4.4.2, 7.3.4.1 (Salafism); Winer Rebuttal Rpt. ¶ 4.9.3 ("Ex. 9") (Salafism and Wahhabism), ¶ 4.10.3 (Wahhabism).
[34] Ex. 1 at 21; *see Jinro Am., Inc. v. Secure Invs., Inc*., 266 F.3d 993, 1006, 1010 (9th Cir. 2001) (reversing admission of expert opinion "ting[ed] with ethnic bias and stereotyping" that invited jury to put Korean litigant's "cultural background into the balance") (internal marks excluded).
[35] Ex. 5 at ¶9.5 (Under the title heading "The intent to avoid direct conflict with the West through duplicity, or engaging in a double game," he writes: . : "Over my decades of work on Middle East issues, I have found it common for people and institutions there to send different messages to different audiences as a means of seeking to avoid direct confrontation with powerful western countries, especially the United States); *see also* Defendant's Daubert Memo at 15-16 (ECF No. 7343) (demonstrating Winer's perception that Arabs are inherently duplicitous); ECF No. 7343 at 19 (without factual basis or requisite knowledge to do so, Winer blames indoctrination – *i.e.*, Islam – as the method by which Defendants funded and aided al Qaeda).
[36] Ex. 7 at 74:15-17; Ex. 5 at ¶2.2.6.2.

mid-level policy analyst, he focused on analyzing financial and regulatory systems and developing policies for financial regulatory systems to better track improper financial activities.[37] Such experience is nowhere close to religion or political Islam. His time at the Department of State is not what Winer, the advocate, purports it to be. The topics of Islam, Wahhabism, or Salafism were not a sub-field of any of Winer's experience. When asked "what field would you say that you are an expert in for the purpose of this case," Winer gave a lengthy response that highlighted his transactional work, foreign policy experience, financial crime background, national security experience and "specific subsets relating to terrorists."[38] Winer even discussed expertise that "extend[ed] beyond [these general areas] to some other areas that haven't come up in this litigation,"[39] but at no time did he ever mention experience with Islam, Wahhabism or Salafism generally or as a sub-set of any field in which he had experience.

As his curriculum vitae demonstrates, Winer has never been posted in the Middle East;[40] he has lived in Washington D.C. since 1995[41] and has never lived in the Arab world. He does not profess to have studied Islam, met with or studied with Islamic scholars during his tenure at the Department of State, nor does he even aver, at a basic level, that he has met with everyday Muslims from whom he learned the religion. Rather, as Winer writes in his report, he worked as a Special Advisor to resettle an Iranian political group into Albania and as a diplomat to Libya.[42]

Winer's meetings at the Department of State, where he purportedly discussed responses to terrorist threats in the Middle East,[43] do not make him an expert on Islam or "political Islam."[44] Plaintiffs' description of Winer's explanation of his concept of "political Islam"[45] does not change the

---

[37] Ex. 7 at 83:4–87:25, 89–95:21, 99:7–100:1, 102:5–104:1, 295:9–297:7; *see also* ECF No. 7343 at 5 (explaining the limits of Winer's qualifications).
[38] Ex. 7 at 527:2-528:13.
[39] Ex. 7 at 527-19-22.
[40] Ex. 7 at 79:5-16 (Though he claims knowledge of the Saudi Arabia, which he claims professes Wahhabism as its religion, Winer has never been posted in Saudi Arabia or anywhere in the Middle East for that matter).
[41] Ex. 7 at 79:8-16.
[42] Ex. 5 App. 1A at 136.
[43] *Id.*
[44] Ex. 7 at 102:5-19 (for example, his time as deputy U.S. assistant secretary focused on financial crimes);
[45] ECF No. 9110 at 6.

fact that he has never studied Islam, never taught any course about Islam, nor has any pertinent experience that qualifies him to opine on any matter of religion or religious ideology. While Plaintiffs claim that "Winer does not offer expert opinions broadly about religious doctrine or theology," they seek to have Winer opine on the broad and amorphous topic of the "political impact of different types of interpretations of religion when a religion is politicized into a political movement."[46] But, as demonstrated, Winer is not an expert in his self-fashioned "political Islam" topic because he does not possess the necessary credentials or professional work experience.[47]

In finding that Winer is qualified to testify about al-Qaeda, Saudi Arabia, charitable financial controls and OFAC sanctions, the Court noted that his experience "required extensive analysis and understanding of terrorist financing modalities and, toward the end of his stint, became increasingly focused on the threat posed … by Osama Bin Ladin. His work since had concentrated on the Middle East, including Saudi Arabia, and has involved money laundering and terrorist finance enforcement – including Office Foreign Assets Control (OFAC) sanctions."[48] Judge Netburn recognized, however, that Winer's experience did not concentrate on the "social, cultural, or religious dynamics [of the Middle East]."[49] Taking the Winer declaration and all other arguments into account, Judge Netburn rejected Winer's experience as qualifying him to testify on religion, because it was not closely related, even generally, to religion, Wahhabism and Islam.[50]

*Second*, Plaintiffs' argument that Judge Netburn failed to weigh Winer's experience outside his work in the diplomatic corps and for the U.S. Government is wrong.[51] In discussing Winer's background

---

[46] *Id.* at 1.
[47] Indeed, his own Declaration, partially struck by Magistrate Judge Netburn, and offered to "set the record straight" and rehabilitate Winer's qualifications below, does not even mention Islam, Wahhabism, Salafism or political Islam. Ex. 4.
[48] Ex. 1 at 17.
[49] *Id*.
[50] *Id.* at 17-18; *In re Mirena Ius Levonorgestrel-Related Products Liability Litig. (No. II),* 341 F.Supp.3d 213, 240-41 (S.D.N.Y. 2018) ("Although extensive experience can make up for an absence in specialized training, if the witness does not possess superior knowledge, education, experience, or skill in the relevant area, the Court must exclude his or her testimony." (citing *Mirena Perforation/Daubert,* 169 F.Supp.3d at 439 (excluding witness with experience in engineering and biomaterials but without experience in hormonal contraception))).
[51] ECF No. 9110 at 7-8.

and qualifications, Judge Netburn begins by noting that "Jonathan Winer is a lawyer in private practice and a scholar at the Middle East Institute."[52] After discussing his work in the diplomatic corps and for the U.S. Government, Judge Netburn goes on to observe that "(h)e has written, lectured, published, and testified about national security issues for decades."[53] Contrary to Plaintiffs' claim, Judge Netburn clearly considered all of Winer's experience. This experience, which did not involve study or work in the areas of religion, Islam or Saudi culture, does not qualify Winer to opine on "Salafism," "Wahhabism," or other issues of religion. Plaintiffs cannot assert that such exclusion was clearly erroneous under the law.

*Third*, contrary to Plaintiffs' argument, a court need not allow a purported expert to testify on any subject they want, but instead may and indeed, should, prohibit the witness from testifying on subjects that they are unqualified to testify about.[54] Judge Netburn did not exclude Winer's testimony on Wahhabism and Salafism because his experience was not robust, but rather because he had <u>no</u> experience nor knowledge on that subject. Winer says so himself.[55] Consequently, Plaintiffs have not shown that the Order was clearly erroneous under the law.

*Fourth*, Plaintiffs' argument that "counterterrorism necessarily requires understanding distinct differences between the general practice of Islam and radical extremism" fails since, just as with respect to Plaintiffs' first argument, having the expertise to testify on matters of counterterrorism or terrorist financing does not qualify Winer to opine on complex issues of religious doctrines and beliefs. While an "expert on Islamic extremism" may need to understand the basic tenets of Islam, Winer is not such an expert. Furthermore, Winer's limited and generalized knowledge as to some basic matters of Islam does not make him an expert on that religion. Being a terror finance expert does not result in expertise

---

[52] Ex. 1 at 14.
[53] *Id.* at 14-15.
[54] ECF No. 7343 at 4; *see Nimely.*, 414 F.3d 381at 399 & n.13("because a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields") (reversing admission of expert testimony as violating Rule 702).
[55] See footnote 50, *supra* (concerning closely related).

in Islam, or *zakat*, as Plaintiffs suggest.[56] An expert in financial irregularities such as Winer can know about *zakat,* an honorable act, or any of the other five pillars of Islam, but such general knowledge does not qualify Winer to testify on matters of Islamic religious doctrines or beliefs, including Wahhabism or Salafism. Similarly, Winer's governmental work on money laundering and banking policy issues did not provide the experience to qualify him as an expert on matters of Islamic religious doctrine, even though he may have had tangential exposure to groups such as the Islamic State and al-Qaeda.[57] His role in government simply was not closely related[58] to religion. Plaintiffs' false logic that if Winer is a terror financing expert, he **must** be an expert in Wahhabism and Salafism, is not supported by the record, and Judge Netburn properly rejected such arguments[59]. Consequently, the exclusion of Winer on these topics was not clearly erroneous or contrary to law.

### III.    PLAINTIFFS' OBJECTION TO JUDGE NETBURN'S RULING CONCERNING BENTHALL'S TESTIMONY SHOULD BE OVERRULED.

### A.    Plaintiffs' argument, raised for the first time in their Rule 72 Objection, that FRE 404 Prohibits Benthall's testimony is without merit.

Failing to find success in the majority of their misguided challenges concerning Benthall's well-founded expert opinions, Plaintiffs, for the first time, now argue that Judge Netburn's decision to permit Benthall's expert testimony concerning the humanitarian work of the charities violates Federal Rule of Evidence (FRE) 404(a) and is therefore contrary to law. This argument fails for three reasons.

*First,* in asserting that such testimony is inadmissible character evidence pursuant to FRE 404(a), Plaintiffs improperly advance a new argument not raised with Judge Netburn. In their moving papers, Plaintiffs objected to Benthall's testimony concerning the charities' humanitarian work and argued that such testimony was irrelevant and unduly prejudicial, citing FRE 401 and 403.[60] *At no point,*

---

[56] ECF No. 9110 at 9.
[57] *Id*.
[58] See footnote 50, *supra* (concerning closely related).
[59] *See* Ex. 1 at 17.
[60] *See Id*. at 21-26.

however, did Plaintiffs argue that the testimony offered by Benthall is "*essentially character evidence*" *in violation of Rule 404(a)*. "In this Circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not."[61] Their failure to raise this argument below is fatal. Because Plaintiffs did not raise this argument before Judge Netburn, and they could have done so,[62] the district court "has no occasion to decide th[e] issue" now.[63]

*Second,* even if this Court were to consider Plaintiffs' untimely argument, it should still find that Plaintiffs are incorrect in their assertion that testimony regarding the charities' humanitarian work is character evidence subject to FRE 404. The testimony challenged by Plaintiffs includes evidence of a humanitarian movement by international Islamic charities, including these charities, that was "marked by a commitment to assisting orphans and displaced persons, and by reference to religious tradition."[64] Judge Netburn, in examining this expert's testimony, correctly determined both that Benthall's testimony "illuminates Defendants' *conduct* by cataloguing the theological roots of charity in Islamic societies and how those roots have influenced the structure of Islamic NGOs," and that his "*descriptions of legitimate charity work* help counter allegations that the Defendant charities had dealings with al Qaeda."[65] Evidence of "Defendants' conduct" and "legitimate charity work" is not character evidence.[66] As the court in *S.E.C. v. Todd* explained, the challenged testimony is "not testimony by people in the

---

[61] *BS BIG*, 2022 WL 4181823, at *5 (internal quotation and citation omitted) (refusing to hear arguments raised for the first time in objection to magistrate judge's order on a *Daubert* motion); *accord Infantino v. Sealand Contractors Corp.*, 565 F. Supp. 3d 347, 355 (W.D.N.Y. 2021); *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 51 (E.D.N.Y. 2015).

[62] Plaintiffs half-heartedly point at Rule 404 with respect to testimony about *a different defendant* (not the charities) in their Reply brief below, writing "Benthall's discussion of Kadi's good character is impermissible state of mind testimony and violative of FRE 404(a)(1)." ECF No. 7690 at 6. But this cameo too is insufficient: "Although [Plaintiffs] did briefly raise this argument in [their reply] … it is well-established that '[a]rguments may not be made for the first time in a reply brief.". *BS BIG*, 2022 WL 4181823, at *5 n.5 (quoting *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993)) (second alteration in original). In all events, no such argument was ever raised in their moving papers.

[63] *Id.* at *5.

[64] *See* ECF No. 7346 at 23, n.120 (*citing Benthall Rpt.* ¶¶ 1-4, 13, 15).

[65] Ex. 1 at 27, 28 (emphases added).

[66] *See e.g., S.E.C. v. Todd*, No. 3-CV-2230-BEN(WMC), 2006 WL 5201386, at *5 (S.D. Cal. Oct. 17, 2006) (rejecting motion to exclude evidence regarding corporate governance activity because it was not character evidence but "evidence of *actions undertaken by the defendants* while in management positions at Gateway.") (emphasis added).

community who know the defendants and believe them to be honest and trustworthy…."[67] This equally applies to the testimony at issue here, and this Court should reject Plaintiffs' argument because FRE 404 is not applicable to the challenged testimony.[68]

*Third*, assuming *arguendo* that Plaintiffs' challenge was made in the first instance (which it was not) and that FRE 404 is applicable (which it is not), Plaintiffs' argument still fails because, contrary to Plaintiffs' assertion, the challenged testimony is *not* offered by the charities "to try to show that they would have acted in conformity with their supposed altruistic character …."[69] As detailed in Defendants' underlying opposition brief, Plaintiffs and their proffered experts repeatedly question the legitimacy and motivations of the charities and then twist the practical realities of charitable giving into their narrative of *per se* nefarious intent.[70] Benthall's testimony on these precise issues directly rebuts claims that the work of these charities was "problematic" in the ways that Plaintiffs allege and, as Judge Netburn correctly concluded, "counter[s] allegations that the Defendant charities had dealings with al Qaeda."[71] Put simply, even assuming that the evidence offered is somehow character evidence, the challenged testimony would still be admissible because it is probative of another fact that is of consequence to the determination of the action or for another purpose *such as* proving *"motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or*

---

[67] *Id.*

[68] Indeed, courts question whether FRE 404 even applies to non-natural persons. *Disney Enters., Inc. v. VidAngel Inc.*, No. CV-16-04109-ABP-LAX, 2019 WL 4544428, at *4 (C.D. Cal. May 29, 2019); *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, No. 3:12-CV-1058-SI, 2019 WL 1651038, at *17 (D. Or. Apr. 17, 2019); *Dykes v. Cleveland Nursing & Rehab. Ctr.*, No. 4:15-CV-76-DMB-JMV, 2018 WL 2703134, at *4 n.2 (N.D. Miss. June 5, 2018); *Fernandez v. Transp. Designs, Inc.*, No. SA-16-CA-022-OLG, 2017 WL 3033403, at *3 (W.D. Tex. Apr. 7, 2017); *Stonebarger v. Union Pac. Corp.*, No. 13-CV-2137-JAR-TJJ, 2014 WL 3579374, at *5 (D. Kan. July 21, 2014); *see also Wright & Miller.*, 22B Fed. Prac. & Proc. Evid. § 5234, at 46-47 (2d. ed. 2017) (noting open question on application of Rule 404 to corporate entities). The case cited by Plaintiffs for Rule 404's application, *Aboeid v. Saudi Arabian Airlines, Inc.*, No. CV-10-2518 SJ-VVP, 2011 WL 2222140 (E.D.N.Y. June 1, 2011), is inapposite and not dispositive. The *Aboeid* court was not addressing an evidentiary motion; it was granting a Rule 12(f) motion to strike allegations that Saudi Arabia was a racially discriminatory country in an effort to prove that the defendant, a Saudi-owned airline, discriminated against its customers. *Id.* at *2.

[69] ECF No. 9110 at 9.

[70] ECF No. 7602 at 7. (quoting Plaintiffs' experts who opine, for example, that the "charity work was itself problematic" and the "Islamic charities were used as cover while they were providing support for military activities, indoctrination, recruitment, and terrorist planning in areas where al Qaeda was operating.").

[71] Ex. 1 at 28.

*accident*."[72] For this reason as well, Plaintiffs' newly-asserted objection to the testimony should be rejected.

**B. Plaintiffs have not established that Judge Netburn's evidentiary findings were clearly erroneous or contrary to law.**

As demonstrated herein, Plaintiffs never presented to Judge Netburn their new argument that Benthall's testimony concerning the charities' humanitarian work was inadmissible character evidence. Instead, they argued that the testimony was irrelevant and unduly prejudicial.[73] Summarizing these arguments in their moving brief, Plaintiffs wrote:

> Indeed, no party suggests that charitable conduct has not been beneficial nor that all of a bad actor's conduct must be bad acts related to the plaintiffs' injuries. Such testimony would tend to confuse a factfinder into wrongly balancing the good works of charities against the bad conduct, such as supporting al Qaeda and its terrorist agenda. Indeed, there is no relevance to balancing any beneficial conduct. Fed. R. Evid. 401, 403.[74]

Defendants opposed those arguments by detailing the probative value of the proffered testimony and disputing the claim that such testimony would be unfairly prejudicial.[75] Having considered the parties' arguments, Judge Netburn correctly concluded:

> *Benthall's descriptions of legitimate charity work help counter allegations that the Defendant charities had dealings with al Qaeda.* An organization engaged in legitimate charity work may be less likely to support terrorism and other illegitimate endeavors, *and that evidence will not "confus[e] the issues."* Fed. R. Evid. 403; *see, e.g.*, ECF No. 7351-1 at 15 (describing IIRO's humanitarian efforts). Testimony about Defendants' humanitarian work is therefore admissible ....[76]

Thus, despite Plaintiffs' misleading attempt to transform their argument, the issue presented here is fairly straightforward: was Judge Netburn's determination that Benthall's testimony is relevant and not

---

[72] FRE 404(b)(2) (emphasis added). Oddly, Plaintiffs assert that "[n]either the magistrate judge, nor defendants, have argued that Benthall's testimony meets any relevant exception" to the rule prohibiting character evidence. ECF No. 9110 at 11-12. It is not Judge Netburn's role to do Plaintiffs' work and advance such "arguments" about "exceptions" to the rules of evidence. Moreover, there was no occasion for the charities to detail any applicable exception because, as discussed above at 9-11, Plaintiffs improperly raise the character evidence argument for the first time now.
[73] *See* Ex. 1 at 21-26.
[74] ECF No. 7346 at 22-23 (emphasis added).
[75] *See* ECF No. 7602. at 6-10.
[76] Ex. 1 at 28 (emphasis added).

unduly prejudicial contrary to law or clearly erroneous? In short, it was not.

A party objecting to an evidentiary determination made by a magistrate judge "carries a heavy burden."[77] "The court should not disturb the magistrate's relevance determination except where it is based on an erroneous conclusion of law or where the record contains no evidence on which [the magistrate] rationally could have based that decision."[78] "Accordingly, a district court must affirm such orders unless … 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed' [or] '[the order] fails to apply or misapplies relevant statutes, case law or rules of procedure.'"[79] Plaintiffs cannot meet that burden.

In a lengthy and convoluted discussion of "empirical findings," Plaintiffs assert that Judge Netburn's determinations "contradict," "undermine[]" and "misunderstand[]" the findings of the Executive Branch and the Supreme Court as well as testimony of then-Treasury Under Secretary Stuart Levey to a congressional subcommittee in 2005.[80] But the McKune Declaration and Mr. Levey's testimony to Congress are not determinative of the issue, much less binding on this Court, and neither is the so-called "endorsement" of "empirical findings" in *Holder*. Plaintiffs may not import the factual determinations of one case into another. Under the doctrine of collateral estoppel, a factual determination in one case only has preclusive effect in another where there is privity between the parties.[81] There is no privity here, so none of the parties had the necessary opportunity to litigate the conclusion that Plaintiffs seek to import. *Id*. To the extent that Plaintiffs intend to argue that Judge

---

[77] *Pac. Life*, 571 F. Supp. 3d at 112 (overruling objections to magistrate judge's determination on prejudice of expert report); *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 177 (S.D.N.Y. 2008) (overruling objections to magistrate judge's determination on relevance of expert report).

[78] *Equal Emp. Opportunity Comm'n v. Peters' Bakery*, 301 F.R.D. 482, 485 (N.D. Cal. 2014) (internal quotations and citations omitted).

[79] *Pac. Life*, 571 F. Supp. 3d at 112 (internal citation and quotations omitted).

[80] ECF No. 9110 at 10-11 (quoting *Holder v. Humanitarian Law Project*, which quoted the Declaration of Kenneth R. McKune submitted in the *Holder* case and citing 2005 testimony of Stuart Levey).

[81] *Stichting ter behartiging van de belangen van oudaandeelhouders in het kapitaal van Saybolt Int'l B.V. v. Schreiber*, 327 F.3d 173, 184-85 (2d Cir. 2003).

Netburn's determinations are contrary to law under *Holder*,[82] that argument is meritless. The Supreme Court's "endorsement" of testimony offered by the government "does not convert the underlying factual finding into a legal conclusion."[83] And the actual legal conclusions in *Holder* are not dispositive of the underlying question presented here.[84]

Plaintiffs also fail to establish a basis for this Court to conclude that Judge Netburn's determination was clearly erroneous. "Under the clearly erroneous standard, a federal district court is not to ask whether the magistrate's finding is the best or only conclusion permissible based on the evidence or to substitute its own conclusions for that of the magistrate judge; rather, the court is only required to determine whether the magistrate judge's findings are reasonable and supported by the evidence."[85] Here, Judge Netburn's determination is supported by the evidence presented by the charities in their opposition papers.[86] In short, Plaintiffs' allegations that the charities supported al Qaeda and testimony proffered by their expert that, *inter alia*, the charities' work was, in their view, "problematic" put at issue the legitimacy of the charities' humanitarian work and charitable objectives.[87] Having considered the parties' arguments, including the charities' presentation of evidence on the issue, Judge Netburn's determinations that the testimony has probative value and would not "confuse the issues" is both "reasonable and supported by the evidence."[88]

Plaintiffs' discussion of 2005 congressional testimony and "empirical findings"—whether of the Executive Branch or the Supreme Court—that Judge Netburn supposedly "misunderstands" and

---

[82] Plaintiffs make no attempt made to explain how the Supreme Court's rulings in *Holder* have any bearing on the question presented to Magistrate Judge Netburn or here, as Plaintiffs have not articulated a basis for concluding that the determination made in the Order fails to apply or misapplies any of the rulings in *Holder*. *See Thai Lao*, 924 F. Supp. 2d at 512 ("A magistrate's ruling is contrary to law if it 'fail[s] to apply or misapplies relevant statutes, case law, or rules of procedure.'")

[83] *Kyhn v. Shinseki*, 716 F.3d 572, 577 (Fed. Cir. 2013).

[84] In *Holder,* the Supreme Court considered the constitutionality of the material support-statute, 18 U.S.C. § 2339B, as applied to activities of the organization challenging that statute. *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010). *Holder* is worlds away from the narrow issue presented in the instant motion.

[85] *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 28 F. Supp. 3d 465, 479 (D. Md. 2014).

[86] *See* ECF No. 7602 at 7-10.

[87] *Id.*

[88] *Sky Angel*, 28 F. Supp. 3d at 479.

"disregards" is not persuasive.[89] Under the highly deferential standard applicable here, "magistrate judges are afforded broad discretion in resolving non-dispositive motions and reversal is appropriate only if their discretion is abused."[90] Even if it were true that Judge Netburn "disregarded" such evidence, that would not be sufficient grounds for disturbing her opinion.[91]

But Judge Netburn did not "disregard" the Plaintiffs' cited evidence or their arguments. Indeed, she addressed and rejected this precise argument:

> Plaintiffs additionally challenge Benthall's discussion of positive work by the Defendant charities. *See* ECF No. 7346 at 32–33. *In their view, Defendants should confront allegations that they supported al Qaeda by directly undercutting such claims. This is nothing but a strawman*.[92]

According to the Plaintiffs, allowing testimony concerning the humanitarian work undertaken by the charities should not be allowed because the U.S. government has purportedly concluded, as a general matter, that "charities that engage in supporting terrorism are to engage in humanitarian activities alongside of their wrongful conduct …."[93] Plaintiffs' argument assumes its conclusion. As Judge Netburn recognized in considering a similarly flawed argument advanced in Plaintiffs' bellwether challenge to the testimony of another defense expert:

> Accepting this argument requires accepting Plaintiffs' theory of the case. Plaintiffs have yet to prove the existence, nature, and extent of these charities' links to terrorism and must do so to prevail on their claims. Defendants, for their part, may offer a competing view of the charities' activities and relationships. And as a defense witness, Sidel's testimony must be evaluated using the defense's theory of the case.[94]

It is simply Plaintiffs' theory that the charities operated as cover for and provided support to al Qaeda; Judge Netburn's determination recognizes this for what it is – *a theory*. Moreover, in light of the

---

[89] ECF No. 9110 at 10-11. Moreover, the Supreme Court does not make factual findings.

[90] *Thai Lao*, 924 F. Supp. 2d at 511 (internal quotations and citations omitted).

[91] *See e.g., Edmonds v. Seavey*, No. 08 Civ. 5646, 2009 WL 2150971, at *2 (S.D.N.Y. July 20, 2009) (showing that "reasonable minds may differ on the wisdom of granting the defendant's motion" is not sufficient to overturn a magistrate judge's decision).

[92] Ex. 1 at 28 (emphasis added).

[93] ECF No. 9110 at 11.

[94] Ex. 1 at 39.

Supreme Court's recent decision in *Twitter Inc. v. Taamneh*, the benevolent acts of the charities are all the more relevant.[95] Just as Plaintiffs are free to try to introduce admissible evidence to support their theory of the case, so too are the Defendants free to introduce admissible evidence to rebut Plaintiffs' allegations and to advance the defense's theory of the case.[96] That is the essence of what Benthall's disputed testimony seeks to accomplish and also the basis of Judge Netburn's decision to permit Benthall's testimony about the charities' humanitarian work. There is nothing unreasonable or unfair about that determination, and Plaintiffs advance no argument that would justify reversal, particularly when viewed in light of the highly deferential standard applicable here. As such, Plaintiffs' objections should be overruled.

## **CONCLUSION**

For the reasons stated above, Plaintiffs' objections to Judge Netburn's Order should be overruled.

Respectfully submitted,

By:  /s/ Omar Mohammedi
_____

Omar T. Mohammedi
Frederick Goetz, *of counsel* (admitted *pro hac vice*)
The Law Firm of Omar T. Mohammedi, LLC
233 Broadway, Suite 820
New York, NY 10279
Telephone: (212) 725-3846
Fax: (212) 202-7621
Email: omohammedi@otmlaw.com
Email: fgoetz@goetzeckland.com
*Attorneys for Defendants World Assembly of Muslim Youth and World*

---

[95] *Twitter Inc. v. Taamneh*, 598 U.S. __, 143 S. Ct. 1206, 1226 (2023) (bad actors' use of defendant's social media platforms is not culpable conduct by the platforms; failure to remove ISIS content is not culpable conduct).

[96] Plaintiffs state without support that "it would be improper to permit an 'expert' to amplify such factual testimony, offering opinions about its alleged significance." That is not the case. *See, e.g., In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105, 118 (S.D.N.Y. 2020) (Rakoff, J.) ("[Expert] may testify on these background facts . . . so long as they are relevant to laying a foundation for his expert testimony . . . ."); *Olin Corp. v. Lamorak Ins. Co.*, 332 F. Supp. 3d 818, 835 (S.D.N.Y. 2018) (Rakoff, J.) (concluding that helpfulness of experts' opinions must be evaluated within the context of the proponent's theory of the case); *Tokio Marine & Nichido Fire Ins. Co. v. Calabrese*, No. CV 07-2514 (JS) (AKT), 2011 WL 5976076, at *13 (E.D.N.Y. Nov. 28, 2011) ("[T]here is no question that any expert testimony related to acts or omissions set forth in the Third–Party pleading and charged against the Third–Party Defendants . . . are relevant.").

*Assembly of Muslim Youth International*

*By:       /s/ Aisha E. R. Bembry*

Aisha E. R. Bembry
LEWIS BAACH KAUFMANN MIDDLEMISS PLLC
1101 New York Avenue, N.W.
Suite 1000
Washington, D.C. 20005
Tel. (202) 833-8900
Email:  aisha.bembry@lbkmlaw.com
*Attorneys for the Muslim World League, the International Islamic Relief Organization, and the Charity Officer Defendants*


*By:       /s/ Peter Salerno*

Peter Salerno
Amy Rothstein
Salerno & Rothstein
221 Schultz Hill Road
Pine Plains, NY 12567
Tel. (518) 771-3050
Email: peter.salerno.law@gmail.com
Email: amyrothsteinlaw@gmail.com
*Attorneys for Defendant Yassin Abdullah Kadi*