UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

In re:

       TERRORIST ATTACKS ON
       SEPTEMBER 11, 2001


----------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___7/11/2023___
```

03-MD-01570 (GBD)(SN)

OPINION & ORDER

**SARAH NETBURN, United States Magistrate Judge:**

The Plaintiffs' Executive Committees ("Plaintiffs") and Defendant Al Rajhi Bank ("ARB" or the "Bank") disagree about the proper scope of jurisdictional discovery. To that end, they have filed six motions to compel and quash. See ECF Nos. 8897, 8902, 9002, 9037, 9038, & 9039.[1] They also ask the Court to adjust the procedures for depositions. See ECF No. 9027. The Court addresses each of these requests below.

## BACKGROUND

The Court assumes familiarity with this litigation and summarizes only the background relevant to these motions.

Plaintiffs allege that ARB "aided and abetted al Qaeda in attacking the United States" by providing "financial services to known extremist operatives" and "financial services and donations to charities that it knew financially supported al Qaeda." Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank, 779 F. App'x 66, 68 (2d Cir. 2019) ("Lloyd's Syndicate" or the "Remand Order"). In its Remand Order, the Court of Appeals concluded that those allegations of "support . . . , in conjunction with [the] specific intent [to further terrorism in the United States]," were sufficient to warrant jurisdictional discovery. Id. at 69. It directed the

---

[1] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

parties to investigate four factual issues: "'(1) when the alleged support was given to al Qaeda, (2) what support was given, (3) whether the support was "earmarked" for use in specific schemes or attacks not directed at the United States, [and] (4) specifically how [ARB was] involved in the process of providing support to al Qaeda.'" Id. (quoting In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 678–79 (2d Cir. 2013)).

On remand, the parties litigated the validity of discovery requests that Plaintiffs served on ARB. The Court concluded that discovery into ARB's support for both "alleged al Qaeda operatives" and the "charitable organizations" that supported them was within the scope of appropriate jurisdictional discovery. ECF No. 7378 at 3 (the "Discovery Order"). It set 1998 to 2004 as the appropriate period for most requests. See id. at 6. And it evaluated the relevance, proportionality, and burden associated with the categories of information Plaintiffs sought. See id. at 8–19. Although the Court granted many of Plaintiffs' requests, it denied those that were "overbroad," "unnecessarily cumulative," "too far removed both temporally and geographically" from 9/11, or "otherwise extraneous." Id. at 9, 10, 12.

Since then, ARB has produced documents but the parties dispute whether it has fulfilled its obligations under the Discovery Order. After reaching impasse on that and other issues, they filed these motions to compel and quash.

## DISCUSSION

"Motions to compel and motions to quash . . . are both 'entrusted to the sound discretion of the district court.'" In re Fitch, Inc., 330 F.3d 104, 108 (2d Cir. 2003) (quoting United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000)). These matters are governed by familiar discovery standards.

The party seeking discovery has the "initial burden," Citizens Union of N.Y.C. v. Att'y Gen. of N.Y., 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017), of proving the requested material is

"'relevant . . . and . . . proportional to the needs of the case,'" Aviles v. S&P Global, Inc., 583 F. Supp. 3d 507, 515 (S.D.N.Y. 2022) (quoting Fed. R. Civ. P. 26(b)(1)). Relevance in the discovery context "is an extremely broad concept." Pearlstein v. BlackBerry Ltd., 332 F.R.D. 117, 120 (S.D.N.Y. 2019), reconsidered on other grounds, 2019 WL 5287931 (Sept. 20, 2019) (cleaned up). Essentially, the requesting party must "make a *prima facie* showing that the discovery sought is more than a mere fishing expedition." N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc., 325 F.R.D. 36, 48 (E.D.N.Y. 2018) (cleaned up).

Then, "it is up to the responding party to justify curtailing discovery." Citizens Union of N.Y.C., 269 F. Supp. 3d at 139 (cleaned up). It may do so by demonstrating that a request is burdensome, expensive, "unreasonably cumulative[,] or duplicative," Pearlstein, 332 F.R.D. at 120, or that it seeks evidence that is privileged or outside the responding party's "possession, custody, or control," Fed. R. Civ. P. 34(a)(1). See Fed. R. Civ. P. 26(b). The responding party must give "specific[s]" to support their objections—"general and conclusory objections . . . are insufficient" to tip the scales against disclosure. John Wiley & Sons, Inc. v. Book Dog Books, LLC, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (cleaned up).

## I.   The Plaintiffs' Second Motion to Compel Is Granted in Part and Denied in Part

The Court's Discovery Order required ARB to search for and produce records responsive to dozens of requests. See ECF No. 7378. Plaintiffs contend that ARB has failed to do so and therefore move to compel its compliance. See ECF No. 8902.[2] They raise seven issues: (1) the search methodology used to identify financial contributions to International Islamic Relief Organization ("IIRO"), the Al Haramain Islamic Relief Organization ("Al Haramain"), and the

---

[2] Both parties ask the Court to disregard submissions from opposing counsel. See ECF Nos. 8970 (addressing Plaintiffs' "Tarbutton declaration" at ECF No. 8954), 8974 (addressing ARB's letter at ECF No. 8970). Neither filing changes the Court's analysis of the issues raised in the Motion to Compel, so the Court denies both without addressing the parties' procedural objections.

Muwafaq Foundation (collectively, the "Da'wah Organizations"); (2) Abdul Rahman al Rajhi's financial contributions; (3) communications with the Da'wah Organizations; (4) ARB's use and production of emails; (5) post-9/11 investigations and audits; (6) Suleiman al Rajhi's departure from the Bank; and (7) redactions.

### A.      ARB's Search for Financial Contributions Was Reasonable

Plaintiffs attack the methodology ARB used to search for contributions from ARB, the Suleiman Abdel Aziz al Rajhi Foundation (the "Foundation"), and al Rajhi family members (collectively, "Potential Donors") to the Da'wah Organizations. They assert that ARB's search of "*the charities' accounts at ARB*" for transactions associated with the term "rajhi" was inadequate because it would "not identify contributions made by check to the charities' accounts at other banks." ECF No. 8903 at 9 (emphasis in original). As evidence, they point to two alleged contributions to Al Haramain from Suleiman al Rajhi and the Foundation that were not included in ARB's productions. See id. at 10 (listing alleged transfers).

Plaintiffs' evidence of allegedly missing transactions is thin. They cite two sources—a Treasury Department press release and a Suleiman al Rajhi letter—neither of which links any transaction to an ARB account. See ECF No. 8903 at 10. For all we know, these contributions could have been made using funds from other banks or using cash held in a safe. In either case, ARB likely would not possess and could not produce records of these transactions. As such, these alleged transactions do not prove that the Bank's search was unsound.

Plaintiffs' critique of ARB's methodology similarly falls apart. As Plaintiffs acknowledge, ARB did not limit its search to the charities' accounts, which would leave out transfers to charities' accounts at other banks. To the contrary, it searched the "'beneficiary' and 'notes' fields [of the Potential Donors' accounts] for references that would reflect wire transfers or checks to the charities." Id. at 9. ARB also reviewed filings to the Saudi *zakat* authority,

Board minutes, and "a contemporaneous letter from the Bank to its regulator, SAMA, listing all charitable donations by the Bank itself from 2002." ECF No. 8935 at 8. ARB then confirmed that its search methodology identified all the contributions listed in the letter to its regulator. See id.

These measures are manifestly "reasonable." Brown v. Barnes & Noble, Inc., 474 F. Supp. 3d 637, 644 (S.D.N.Y. 2019) (elucidating the duty to "conduct a reasonable inquiry . . . for documents and information responsive to [discovery] requests"); accord Fed. R. Civ. P. 26(g)(1). They ultimately identified 17 check payments from the Foundation to Da'wah Organizations—contradicting Plaintiffs' argument that such transactions would slip through. See ECF No. 8903 at 10. Plaintiffs' request for judicial intervention on this point is accordingly denied.

**B.     Plaintiffs Are Entitled to Abdul Rahman al Rajhi's Contributions to Da'wah Organizations**

Plaintiffs challenge ARB's refusal to produce Abdul Rahman al Rajhi's donations to the Da'wah Organizations. See ECF No. 8903 at 11–12. The Discovery Order granted Request No. 4, see ECF No. 7378 at 9, which included Abdul Rahman al Rajhi:

> Please provide all documents, including any electronically generated lists or summaries, identifying all monetary donations or contributions provided to the Da'wah Organizations by ARB, Suleiman al Rajhi, Saleh al Rajhi, *Abdul Rahman al Rajhi*, the Suleiman Abdel Aziz al Rajhi Foundation, and/or members of the al Rajhi family, including but not limited to, the contribution of *zakat* and *haram* funds to the Da'wah Organizations. As to Muwafaq Foundation, the relevant time period for this Request is from January 1, 1992 through December 31, 2002.

ECF No. 6996-3 at 15 (emphasis added).

ARB's argument that the Discovery Order nevertheless exempted Abdul Rahman al Rajhi's contributions is frustrating. See ECF No. 8935 at 10. ARB claims that Abdul Rahman al Rajhi was not a member of ARB's management team and therefore should never have been included in Request No. 4 alongside high-ranking Bank executives. See id. The time to raise that point was before the Court issued its Discovery Order. But even if the Court forgave ARB's

delay and belatedly read Abdul Rahman al Rajhi's name out of the request, the Bank would have a tough row to hoe. Request No. 4 extends to "members of the al Rajhi family." ECF No. 6996-3 at 15. Although "the al Rajhi family" cannot cover "untold numbers of unnamed" individuals, it at the very least covers those like Abdul Rahman al Rajhi who are named in multiple discovery requests. ECF No. 8935 at 10; see ECF No. 6996-3 at 18, 19, 21 (referencing Abdul Rahman al Rajhi in Definition 12 and Request Nos. 16, 18, and 25). The Court thus reiterates its order that ARB produce financial contributions from Abdul Rahman al Rajhi to the Da'wah Organizations.[3]

### C.   ARB's Search for Communications Was Reasonable

Plaintiffs ask for Court intervention in ARB's search for communications between the Bank and the Da'wah Organizations. See ECF No. 8903 at 13–14. They insist that ARB's productions are deficient because they included no "communications concerning the 'earmarking' of funds" and did not "provide information concerning the points of contact or interfaces between the [B]ank and the Da'wah Organizations." Id. at 13.

ARB counters that "the Bank had no 'relationship managers' or other designated points of contact for the charity customers," and that it has "searched for and produced responsive communications, none of which pertains to terrorism or purported 'earmarking.'" ECF No. 8935 at 11–12. Specifically, the Bank searched and produced responsive communications from its "Customer Information Files"—which include both know-your-customer information and non-routinized correspondence—and other "repositories" implicated in discovery requests.[4] Id. at 11.

---

[3] The Court addresses Plaintiffs' request for records of donations to Aqil al Aqil and Abdullah al Misfer *infra* at 11–12.

[4] In a footnote, Plaintiffs additionally ask the Court to order ARB to produce the Customer Information Files "in full, regardless of date." ECF No. 8903 at 13, n.8. The Court denies this request. ARB avers that it has already searched these files and produced relevant documents, and Plaintiffs offer no reason to doubt the adequacy of that production. See ECF No. 8935 at 11.

Plaintiffs provide no reason to doubt ARB's "good faith averment that the items sought simply do not exist, or are not in its possession, custody, or control." Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc., 318 F.R.D. 28, 42 (S.D.N.Y. 2016) (cleaned up) (explaining that such an averment "should resolve the issue of failure of production" (cleaned up)). And of course, ARB "cannot be required to produce the impossible." Id. (cleaned up)); accord Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 138 (2d Cir. 2007) ("[A] party is not obliged to produce . . . documents that it does not possess . . . ."). Plaintiffs' request for intervention is denied.

### D.    ARB's Email Production Was Reasonable

Plaintiffs ask the Court to intervene in ARB's search for responsive emails. See ECF No. 8903 at 14–15. They claim Court action is necessary because ARB's statements describing the Bank's roll-out and use of email at the time (and a 2009 system crash that wiped out at least some of its email archive) are "shifting and ambiguous." Id. at 15; see ECF No. 8904-16 at 6 (describing roll-out and crash). The Court disagrees. ARB's representations are consistent and reasonable. See ECF Nos. 8904-15 at 5, 8904-16 at 6. Furthermore, ARB has affirmed that it searched the remaining email archives and produced responsive documents. See ECF No. 8935 at 14. Plaintiffs offer no evidence to the contrary, so the Court denies its request for intervention.[5]

### E.    ARB's Search for Post-9/11 Investigative Materials Was Reasonable

Plaintiffs seek Court oversight of ARB's search for post-9/11 investigations and audits. See ECF No. 8903 at 15. The Discovery Order approved requests for materials related to terrorism finance investigations, and ARB has produced roughly 850 pages of responsive

---

[5] The Court addresses Plaintiffs' request for discovery as to the 2009 crash infra at 14–16.

documents. See ECF Nos. 7378 at 17–18 (approving Request Nos. 47–54), 8935 at 15 (describing ARB's production). They show the Bank's post-9/11 communications with its regulator about compliance with reporting requirements and specific accountholders, "including those of interest to the United States." ECF No. 8935 at 15. Plaintiffs nevertheless assert that key materials are missing. They point to State Department cables that reference a 2003 Ernst & Young audit of ARB and describe the terms of a proposed bilateral examination of ARB by the Saudi and United States governments. See ECF No. 8904-20 at 2, 4–5. ARB has looked for and cannot find the Ernst & Young audit.[6] See ECF No. 8935 at 16. And there is no evidence that the examination outlined in the cables was carried out or that ARB would have the results of that investigation if it was. Accordingly, the Court does not find sufficient grounds to question ARB's compliance with the Discovery Order. Plaintiffs' request as to post-9/11 investigations is denied.

### F.    ARB Must Produce Documents Related to Suleiman al Rajhi's Departure

Plaintiffs ask the Court to direct ARB to search for records from the 2004–2008 period related to Suleiman al Rajhi's departure from the Bank. See ECF No. 8903 at 16–17. The Court previously granted Plaintiffs' request for "all documents discussing the reasons for Suleiman al Rajhi's departure from and relinquishment of control over[] ARB." ECF No. 6996-3 at 27 (Request No. 55); see ECF No. 7378 at 18–19 (granting Request No. 55). As ARB correctly notes, that order set December 31, 2002, as the discovery end-date. See ECF No. 7378 at 8. Suleiman al Rajhi did not step down until 2008—information the Bank clarified earlier this year. See ECF No. 8903 at 16, n.9. Given this confusion, the Court finds good cause to revisit the time frame for this request. Enforcing the original discovery timeframe would likely preclude

---

[6] The Court addresses Plaintiffs' request for discovery as to the 2003 Ernst & Young audit *infra* at 16.

Plaintiffs from securing any relevant materials, so the Court orders ARB to produce documents responsive to Request No. 55 from the period ending December 31, 2008.

### G.   ARB Must Produce Unredacted Documents

Plaintiffs ask the Court to direct ARB to produce documents without account numbers and other personal identifying information redacted. See ECF No. 8903 at 17–18. ARB defends the redactions as required by Saudi banking laws and regulations. See ECF No. 8935 at 17–18.

"Where the alleged obstacle to production is foreign law, the burden of proving what that law is and demonstrating why it impedes production falls on the party resisting discovery." Laydon v. Mizuho Bank, Ltd., 183 F. Supp. 3d 409, 413 (S.D.N.Y. 2016) (cleaned up). The resisting party must "provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law." Id. If it is, the Court resolves that conflict through a comity analysis, weighing the interests of the litigation and the United States "against those of the foreign jurisdiction." In re Commodity Exch., Inc., Gold Futures & Options Trading Litig., No 14-md-02548 (VEC), 2019 WL 1988525, at *2 (S.D.N.Y. May 6, 2019); see Laydon, 183 F. Supp. 3d at 419–20 (listing seven factors courts consider in the comity analysis); Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S. Dist. of Iowa, 482 U.S. 522, 54–44 (1987).

ARB has not met its burden here. It declined to provide the text of the statutes, regulations, or caselaw that it says precludes the Bank from producing personal identifying information in discovery. See ECF No. 8935 at 17–18 (listing "the Banking Control Law, the Code of Conduct and Work Ethics in Financial Institutions . . . , the Rules for Bank Accounts . . . , and the Saudi Personal Data Protection Law" as governing this issue but declining to identify specific provisions or produce the relevant text). Nor did it provide a legal expert's analysis of the restrictions. See In re Subpoenas Served on Lloyds Banking Grp., No. 21-mc-

00376 (JGK)(SN), 2021 WL 3037388, at *7 (S.D.N.Y. July 19, 2021) (explaining that the "preferable method for raising [a conflict with foreign law] is to support that position with affidavits of foreign law experts"). Without these specifics, the Court cannot make the threshold determination that Saudi law conflicts with the Court's discovery orders, so no comity analysis is indicated. See id. ("Simply listing existing bank secrecy and privacy laws . . . is not enough to trigger a comity analysis."); Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co., No. 14-cv-04394 (AJN)(BCM), 2017 WL 7512815, at *5 (S.D.N.Y. Dec. 29, 2017) (explaining that "a comity analysis is unnecessary" "in the absence of a conflict" (cleaned up)).

For these reasons, the Court directs ARB to remove redactions imposed based on Saudi banking law from all documents produced to Plaintiffs. ARB may retain redactions based on assertions of privilege but must also produce a privilege log. All unredacted documents will be subject to the confidentiality order entered in this case. See ECF No. 1900.

## II.    The Plaintiffs' Third Motion to Compel Is Granted in Part and Denied in Part

Plaintiffs moved to compel ARB to produce evidence related to 20 new topics.[7] ARB resists that discovery on several overarching grounds.

First, citing Unger v. Cohen, 125 F.R.D. 67 (S.D.N.Y. 1989), ARB contends that discovery into specific people or entities is appropriate only if they were mentioned in the complaint. See, e.g., ECF No. 9055-1 at 4. Unger created no such rule. Rather, like other cases, it referred to the complaint to determine what discovery was relevant. The court noted that "[t]he locus of the line between discovery reasonably calculated to lead to admissible evidence and the proverbial fishing expedition is determined in large measure by the allegations of the pleading."

---

[7] Plaintiffs also raised purported deficiencies in ARB's prior productions. See ECF No. 9039 at 5 ("Missing Da'wah Organization Accounts"). The Court is confident that ARB will, as suggested in its response, review Plaintiffs' information and produce any relevant records it finds, consistent with its discovery obligations. See ECF No. 9055 at 5.

Unger, 125 F.R.D. at 71. That does not mean, however, that a person or entity must have been namechecked in the complaint to be relevant to the jurisdictional inquiry authorized by the Court of Appeals. Where the Court determines that a request is relevant, ARB's argument poses no barrier to granting discovery.

Second, ARB expresses concern that production would expose privileged information. See, e.g., ECF No. 9055-1 at 10. If, indeed, any responsive documents are protected by privilege, ARB may withhold or redact them, accompanied by a privilege log.

Third, ARB asserts its right to withhold documents pursuant to unidentified laws or regulations. See, e.g., id. As explained, *supra* at 9, if a party wishes to invoke another jurisdiction's law to avoid disclosure, it must demonstrate "what that law is and . . . why it impedes production." Laydon, 183 F. Supp. 3d at 413. ARB has not done that, so it cannot meet its burden to justify withholding otherwise relevant documents.

The Court addresses ARB's remaining objections to requests in the categories used by the parties.

### A.       Request No. 1 Is Granted in Part and Denied in Part

Request No. 1 seeks account and Know Your Customer information for six individuals. See ECF No. 9040-1 at 4. ARB objects that this request is (1) irrelevant to the Bank's activities, and (2) "vague, ambiguous, imprecise, overbroad, unduly burdensome, and not proportional to the needs of the case." ECF No. 9055-1 at 8–10; see ECF No. 9055 at 1–2.

First, ARB suggests that the request is irrelevant because it does not relate to the *Bank's* activity. See ECF No. 9055 at 1–2. But according to Plaintiffs' investigations, the individuals named in the request may have made financial transactions on behalf of their organizations. See ECF No. 9039 at 1. The Court previously ruled that their organizations' finances are relevant, so

if the organizations were conducting business through their officers, then their officers' finances are likewise relevant. See ECF No. 7378 at 9 (authorizing discovery of organizational finances).

Second, ARB suggests that this request is vague, overbroad, burdensome, and disproportionate. See ECF No. 9055-1 at 8. This objection is, in part, based on Plaintiffs' insistence that ARB produce information for any account in which these individuals held "any actual or potential beneficial interest." Id. The Bank responds that finding accounts within this scope would require more than a field search of its Core Banking System and could potentially require a manual search of every account. See id. at 8–9. The Court agrees in part with ARB and limits the scope of the search to accounts held in the name of these six individuals. See ECF No. 9039 at 1. Such files would likely reveal any related accounts that might reasonably be covered by Request No. 1.

ARB also objects that the demand sweeps too broadly by seeking all transactions and not just "payments to the charities." ECF No. 9055 at 2. Although facially valid, this objection ignores Plaintiffs' contentions that these individuals made or received payments for the benefit of the charities, so relevant transactions might not involve the charities' accounts. See ECF No. 9039 at 1. And the Bank's overbreadth and burden concerns are mitigated by the benefits of the protective order and the temporal limitation.

Accordingly, Request No. 1 is granted in part and denied in part. ARB must produce Know Your Customer files for all accounts held in the name of the six individuals and all transaction reports during the relevant period. ARB is not, however, required to independently identify accounts for which these six individuals might have an actual or potential beneficial interest.

B.      **Request Nos. 2–4, 6–8 Are Denied**

These six requests pursue comprehensive information about the Foundation. See ECF

No. 9040-1 at 4–7. ARB objects to these requests on several common grounds, namely that they

are "irrelevant," "overbroad," "beyond the scope of the limited jurisdictional discovery"

authorized by the Court of Appeals, and "disproportionate" to the needs of the case. ECF No.

9055 at 2. The Court has previously ordered ARB to produce records of financial transactions

between the Foundation and the Da'wah Organizations. See ECF No. 6996-3 at 15 (requesting

discovery of those contributions), 7378 at 9 (approving that request). As such, discovery related

to the Foundation is not *per se* irrelevant or beyond the scope of the Court of Appeals' dictates.

But Plaintiffs' current requests seek an untenably broad array of information that would

necessarily sweep in countless documents unrelated to ARB's alleged role in supporting al

Qaeda. Additionally, some of these requests are cumulative of others the Court previously

granted. Compare ECF No. 6996-3 at 15 (requesting, *inter alia*, contributions by the Foundation

to the Da'wah Organizations), and ECF No. 7378 (approving same), with ECF No. 9040-1 at 5–

7 (requesting, *inter alia*, the Foundation's financial transactions (No. 4) and donations to various

recipients (Nos. 7 & 8)). Or they seek materials Plaintiffs previously sought and the Court

denied. Compare ECF No. 7378 at 11–12 (denying request for discovery of "financial dealings in

the United States"), with ECF No. 9040-1 at 6–7 (requesting records of donations to various

recipients, including several in the United States). Because these requests are "likely to reveal

vast amounts of superfluous information," ECF No. 7378 at 9, they are "overly broad and

therefore disproportionate to the needs of the case," COR Dev. Co. v. Howe, No. 16-cv-01099

(TJM)(TWD), 2018 WL 11459127, at *1 (N.D.N.Y. Mar. 27, 2018).

As such, Request Nos. 2–4 and 6–8 are denied.

### C.      Request No. 9 Is Denied

Request No. 9 calls for communications between the Bank, Suleiman al Rajhi, the Foundation, and the Ministry of Islamic Affairs concerning the Da'wah Organizations. See ECF No. 9040-1 at 7. Plaintiffs try to justify this request by pointing to communications from Saleh Bin Abdul Aziz bin Mohamed al Ash Sheikh of the Ministry of Islamic Affairs to ARB "providing general oversight of Al Haramain accounts, as well as directing [B]ank officials to undertake specific actions with respect to [those] accounts." ECF No. 9039 at 2. But they do not explain how that communication or others responsive to this request would illuminate *ARB's* specific intent to support al Qaeda. Even if some subset of these communications were relevant, the request doubtlessly covers reams of communications that have no bearing on the case. Request No. 9 is both irrelevant and disproportionate and must be denied.

### D.      Request No. 10 Is Denied

Request No. 10 seeks documents related to any investigations of accounts held by IIRO, Al Haramain, the Foundation, or their leadership conducted between 1998 and 2008. See ECF No. 9040-1 at 7. Plaintiffs previously requested—and the Court approved—discovery of investigations of these and other entities, see ECF Nos. 6996-3 at 26, 7378 at 17, but this would extend the discovery time period for ARB's search by four years, see ECF No. 9058 at 2. Other than their belief that investigations may have occurred after 2004 (based on designation dates that were known at the time of the 2021 discovery litigation), Plaintiffs provide no basis for revisiting the time frame in the Court's Discovery Order. See ECF No. 7378 at 6. Request No. 10 is therefore denied.

### E.      Request No. 11 Is Denied

Request No. 11 arises from Plaintiffs' dissatisfaction with ARB's email productions. It seeks certain details about "the alleged crash of ARB's email archiving system in 2009" that the

Bank has invoked to explain its limited productions. ECF No. 9040-1 at 8. This is a classic example of "discovery on discovery"—a request for information about the discovery process rather than the claims at issue in the case. Metacapital Mgmt, L.P. v. Meta Platforms, Inc., No. 22-cv-07615 (PKC), 2023 WL 3645471, at *7 (S.D.N.Y. May 25, 2023). "Requests for such 'meta-discovery' should be closely scrutinized in light of the danger of extending the already costly and time-consuming discovery process *ad infinitum*." Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A., No. 15-cv-00293 (LTS)(JCF), 2016 WL 3906712, at *7 (S.D.N.Y. July 14, 2016) (cleaned up). Courts grant them only where the requesting party has "proffered an adequate factual basis for their belief that the [responding party's] production is deficient." Freedman v. Weatherford Int'l Ltd., No. 12-cv-02121 (LAK)(JCF), 2014 WL 3767034, at *3 (S.D.N.Y. July 25, 2014).

Plaintiffs provide insufficient grounds to question ARB's "good faith" search for emails. Mason Tenders Dist. Council of Greater N.Y., 318 F.R.D. at 42 (explaining that courts generally trust a party's "averment that the items sought simply do not exist, or are not in its possession, custody, or control" (cleaned up)). Counsel for ARB, "as officers of the court, are expected to comply with Rules 26 and 34 in connection with their search, collection, review, and production of documents." Haroun v. ThoughtWorks, Inc., No. 20-cv-00100 (LJL), 2020 WL 6828490, at *1 (S.D.N.Y. Oct. 7, 2020) (cleaned up). There is no indication that they have failed to do so. ARB has "engage[d] in a transparent discovery process," explaining "the data sources [it] ha[s] searched," the "search terms [it] ran," and why there are gaps in its records. CBF Industria de Gusa S/A v. AMCI Holdings, Inc., No. 13-cv-02581 (PKC)(JLC), 2019 WL 3334503, at *17 (S.D.N.Y. July 25, 2019) (granting discovery against party that refused to be transparent). In short, "nothing before the Court suggests [ARB] ha[s] 'skew[ed] the process.'" Kaye v. N.Y.C.

Health & Hosps. Corp., No. 18-cv-12137 (JPO)(JLC), 2020 WL 283702, at *1 (S.D.N.Y. Jan. 21, 2020) (last alternation in original).

Request No. 11 is accordingly denied.

### F.     Request No. 12 Is Denied

Request No. 12 asks for Ernst & Young's 2003 audit of ARB. See ECF No. 9040-1 at 8. If this audit exists, ARB is already obligated to disclose it pursuant to Plaintiffs' requests for materials related to terrorism finance investigations. See ECF No. 7378 at 17–18. This new, more specific demand is entirely "duplicative." Sahu v. Union Carbide Corp., 262 F.R.D. 308, 316 (S.D.N.Y. 2009) (denying request as cumulative). Request No. 12 is denied.

### G.     Request Nos. 13–17 Are Granted

These five requests concern Towayan Abdallah al Towayan ("Towayan"), a former ARB employee with alleged connections to the 9/11 hijackers in San Diego. See ECF No. 9040-1 at 8–10. In many ways, these requests echo those about Saleh al Hussayen, another individual with alleged ties to ARB and al Qaeda. See ECF No. 7378 at 16–17. Both aim to uncover ARB's support for "known extremist operatives" via discovery that is tailored to the alleged conduit of that support. Lloyd's Syndicate, 779 F. App'x at 68. It follows that, like the Saleh al Hussayen requests, the Towayan discovery is relevant to the jurisdictional inquiry and proportional to the needs of the case.

ARB attempts to challenge Plaintiffs' relevance showing by citing conflicting reports about Towayan's activities in the United States. See ECF No. 9055 at 4. But these reports do not undermine Plaintiffs' grounds for exploring Towayan's activity on behalf of ARB. The true nature of those activities is exactly what discovery should resolve.

Request Nos. 13–17 are thus granted.

### H.    Request No. 18 Is Denied

Request No. 18 seeks materials identifying any people who pursued "educational, academic, or other activities in the United States" with ARB's help. ECF No. 9040-1 at 10. Plaintiffs say this is important because "government reporting indicates that both Hussayen and Towayan were in close proximity to 9/11 hijackers, indicating a possible pattern of ARB sending radicals to the U.S." ECF No. 9039 at 4. The existence of any broader pattern is, at this juncture, "mere speculation." ECF No. 6577 at 52 (denying discovery where Plaintiffs' argument was speculative). Such an attenuated connection cannot support the "overly broad and therefore disproportionate" discovery Plaintiffs seek. COR Dev., 2018 WL 11459127, at *1. Request No. 18 is denied.

### I.    Request No. 19 Is Denied

Request No. 19 asks for materials related to "any investigation, inquiry, review, or audit, conducted by ARB, the Saudi government, and/or the United States government which references or addresses any of the individuals, entities, accounts, transactions, and/or events identified" in the previous requests. ECF No. 9040-1 at 10. Plaintiffs previously requested—and ARB agreed to produce—discovery of "Terrorism Finance Investigation[s]." ECF No. 7378 at 17. Nevertheless, Plaintiffs claim a new "catchall" request is necessary, ECF No. 9055 at 5, because ARB may have excluded responsive materials from its productions based on "[t]he Kingdom['s] [practice of] avoid[ing] . . . the term 'terrorism,' instead using terms like 'deviant ideologies,'" ECF No. 9058 at 3. That concern is vitiated by the text of Plaintiffs' original requests, which are not restricted to terrorism-related investigations. See ECF No. 6996-3 at 26 (requesting materials relevant to "any investigation, inquiry, review, or audit . . . which references or addresses any of the individuals, entities, accounts, transactions, and/or events

identified in Request Nos. 1–46 above"). Any documents responsive to this request are no doubt responsive to previous ones. Request No. 19 is cumulative and is therefore denied.

### J.      Request No. 20 Is Denied

Request No. 20 seeks materials related to a letter dated April 11, 1998, that ARB produced to Plaintiffs. See ECF No. 9055 at 5. Attached to that letter were several letters written by Suleiman al Rajhi between 1992 and 1998 responding to invitations from the Da'wah Organizations. See ECF No. 9058 at 3. Plaintiffs want ARB to produce the documents Suleiman al Rajhi was responding to, regardless of their dates. See id.

As ARB notes, the Court has already determined the appropriate time period for jurisdictional discovery, and it does not require ARB to search for documents from before 1998. See ECF No. 7378 at 6 (setting January 1, 1998 as the discovery start date). Unlike with Suleiman al Rajhi's departure, Plaintiffs have offered no information that undermines the Court's original discovery time period.

Request No. 20 is denied.

### III.      ARB's Motion to Compel Will Be Resolved After the Parties File a Status Letter

ARB moved to compel Plaintiffs to produce six categories of records: (1) documents relevant to ARB, the al Rajhi family, or the allegations in the complaint (Request No. 1); (2) documents Plaintiffs plan to use to establish jurisdiction (Request No. 2); (3) documents responsive to requests directed at ARB that Plaintiffs received from other sources (Request No. 3); (4) Plaintiffs' counsels' communications (Request No. 4); (5) documents related to witnesses (Request No. 5); and (6) documents supporting or undermining 19 paragraphs in the complaint and 4 allegations in a motion to compel (Request Nos. 6–36). See ECF No. 9002 at 1.

Plaintiffs raise two threshold objections. First, they argue that the Court of Appeals did not authorize ARB to engage in jurisdictional discovery because "ARB never requested an

opportunity to conduct jurisdictional discovery of Plaintiffs," and the questions it directed the Court to resolve on remand "exclusively concern ARB's own conduct, knowledge, and intent." ECF No. 9015 at 1. True, the four topics earmarked for further discovery relate to ARB. See Lloyd's Syndicate, 779 F. App'x at 69. But the Court of Appeals never said that Plaintiffs are the only ones allowed to investigate these topics. And it certainly did not say that Plaintiffs are relieved of their obligations to produce documents they "may use to support [their] claims or defenses," Fed. R. Civ. P. 26(a)(1)(A)(ii), and respond to requests for relevant documents in their "possession, custody, or control," Fed. R. Civ. P. 34(a)(1). These obligations are designed to promote "[b]asic justice" by ensuring that both sides have "equal access to the evidence [held by] . . . the other." In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in Dec. 1984, 809 F.2d 195, 205 (2d Cir. 1987) (rejecting implication that only one side would be subject to discovery under the Rules). Preventing ARB from seeking discovery would undermine that principle, contravene the Rules, and contort the Remand Order. The Court therefore finds that both parties are entitled to engage in the narrow scope of discovery authorized by the Court of Appeals.

Second, Plaintiffs argue that ARB's requests are untimely. See ECF No. 9015 at 2. Although it is undoubtedly better practice to request production earlier, ARB served these requests during the discovery period and in time to file a motion to compel by the Court-ordered deadline. See ECF Nos. 8812 (setting April 19, 2023, as the deadline for filing motions to compel), 9002 (motion to compel dated April 11, 2023). Accordingly, the Court declines to find that ARB forfeited its discovery rights by serving them too late.

Despite these and other objections to ARB's requests, Plaintiffs represent that they are "producing all responsive records identifiable through reasonable efforts (save for counsels'

irrelevant communications), in accordance with Rule 34." ECF No. 9015 at 4; see Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co., 297 F.R.D. 99, 109 (S.D.N.Y. 2013) (explaining each party's affirmative duty under Rule 26(a)(1)(A)(ii)) to produce evidence in support of claims or defenses "even absent a discovery request"). It is possible that these productions fulfill certain requests, rendering them moot. But the parties' filings are unclear as to what records Plaintiffs have produced (or agreed to produce) and what records that leaves out. And the Bank's interest in compelling production (especially as to Request No. 2) may have shifted due to the Court's intervening order that requires Plaintiffs to file a statement of jurisdictional facts and evidence before ARB's dispositive motion. See ECF No. 9077. Given all this, it is difficult to determine whether the parties' disputes are still live.

Accordingly, the Court orders the parties to file a joint letter by July 17, 2023, outlining the remaining live disputes, if any, with respect to ARB's motion to compel. If necessary, the Court will hold a conference to address any outstanding issues.

## IV.     ARB's Motion to Quash the J.P. Morgan Chase Bank, N.A. Subpoena Is Denied

Plaintiffs subpoenaed J.P. Morgan Chase Bank, N.A. ("JP Morgan") for, among other things, "records concerning all accounts at JP Morgan . . . established or held in the name of, on behalf of, and/or for the benefit of [ARB]." ECF No. 8909-1 at 6. Before raising the issue with the Court, the parties asked JP Morgan to search its records; it found 175 pages of responsive materials. See ECF No. 8909 at 1. ARB then moved to quash the subpoena on grounds that it is "overbroad," "irrelevant," and seeks "private information." ECF No. 8897 at 1.

As a threshold matter, ARB has standing to challenge the JP Morgan subpoena. Generally, only the person or entity served with a subpoena can object to it. Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1975) ("[A] party usually does not have standing to object to a subpoena directed to a non-party. . . ."). But there is an exception to that rule. Anyone

can challenge a subpoena directed to someone else to protect a "personal privilege or right," such as privacy. Silverstone Holding Grp. v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co., __ F. Supp. 3d __, 2023 WL 163256, at *1 (S.D.N.Y. Jan. 12, 2023) (cleaned up). Courts in this Circuit often apply this exception to find standing where people or corporations seek to protect the privacy of their financial records. Id.; see Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc., No. 12-cv-06383 (JFB)(AKT), 2017 WL 1133349, at *8 (E.D.N.Y. Mar. 24, 2017) (collecting cases). The JP Morgan subpoena seeks ARB's private banking records, so ARB has standing to challenge their disclosure.

Because ARB's standing is based on its privacy interests, the Court does not apply the typical "relevancy, burden, or proportionality" standards to its motion. Dominion Res. Servs., Inc. v. Alstom Power, Inc., No. 16-cv-00544 (JCH)(SALM), 2017 WL 3575892, at *4 (D. Conn. Aug. 18, 2017); accord Doe v. Town of Greenwich, No. 18-cv-01322 (KAD)(SALM), 2020 WL 2390979, at *3 (D. Conn. Jan. 10, 2020) (explaining that relevance and burden "may only be raised by the entity to which the subpoena is directed"); Universitas Educ., LLC v. Nova Grp., Inc., No. 11-cv-01590 (LTS)(HPB), 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013) (same).

Instead, the Court evaluates the motion to quash by "weighing the relevance or probative value of the documents being sought against the privacy interests asserted." Silverstone Holding, 2023 WL 163256, at *2 (cleaned up). As the movant, ARB bears the burden of persuasion. Id. The Court first considers the relevance of the targeted documents and then ARB's interests in protecting them.

To begin, ARB's banking records are plainly relevant. Plaintiffs allege that ARB's support for al Qaeda included financial contributions to accounts in the United States. See ECF No. 8909 at 3–4. The JP Morgan documents may confirm or shed light on these alleged

transactions. See id. at 4. That, combined with other evidence, may in turn help establish ARB's

specific intent to support al Qaeda's attacks on the United States, which is the heart of the

jurisdictional inquiry. See Lloyd's Syndicate, 779 F. App'x at 69. Despite this connection to

Plaintiffs' theory of jurisdiction, ARB suggests that permitting disclosure would undermine the

Court's order denying Plaintiffs' requests for "all documents" and "all communications" related

to financial contributions by ARB (and associated individuals and charitable organizations) to

beneficiaries in the United States. ECF No. 6696-3 at 20; see ECF No. 7378 at 11 (denying

requests as "overbroad" and "duplicative"). But as explained above, ARB lacks standing to raise

traditional discovery objections. See supra at 20–21. And even if it could, the Court is not

concerned about burdensome, cumulative discovery here, where the production is limited to 175

pages of documents already culled by JP Morgan. See ECF No. 8909 at 1.

What's more, ARB's privacy interests are weak. ARB offers no more than its

"conclusory" statement that company bank records are private. Sky Med. Supply, 2017 WL

1133349, at *5 (cleaned up). It gives no suggestion that those records reveal proprietary,

"confidential, privileged, or highly sensitive" information. Solow v. Conseco, Inc., No. 06-cv-

05988, (BSJ)(THK), 2008 WL 190340, at *4 (S.D.N.Y. Jan. 18, 2008). ARB instead invokes the

"privacy [interests] of its customers and counterparties." ECF No. 8897 at 3. But it is unclear

whether the JP Morgan documents include any ARB customer information since they relate to

accounts "established or held in the name of, on behalf of, and/or for the benefit of [ARB]." ECF

No. 8909-1 at 6. More to the point, ARB is limited to raising interests "personal to the movant."

United States ex rel. Ortiz v. Mount Sinai Hosp., 169 F. Supp. 3d 538, 545 (S.D.N.Y. 2016)

(cleaned up). Just as a school cannot assert the privacy interests of its students or their parents,

ARB cannot assert its customers' privacy interests to prevent discovery. Doe, 2020 WL

2390979, at *4 (explaining that school lacked standing to assert a privacy interest in "sensitive matters of potential student misconduct" because those interests belonged to students and their families). And any privacy "concerns can be addressed by [the] protective order" in this case. Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., No. 13-cv-01654 (RA)(HBP), 2014 WL 5420225, at *5 (S.D.N.Y. Oct. 24, 2014).

Because these privacy interests do not outweigh the probative value of ARB's banking records, the Court denies ARB's motion to quash. See Silverstone Holding, 2023 WL 163256, at *2. JP Morgan shall produce to Plaintiffs the 175 pages of responsive documents.

## V.    ARB's Motion to Quash the Plaintiff's Rule 30 Deposition Is Moot

The parties advised the Court that, subject to the conditions listed in their letter at ECF No. 9096, ARB's motion for a protective order as to the Rule 30(b)(6) deposition at ECF No. 9038 is moot. If Plaintiffs later rely on testimony from the Rule 30(b)(6) deponent that was given subject to objection, the Court will resolve the objections at that time. See ECF No. 9096 at 1.

## VI.    ARB's Motion to Quash Chairman Abdullah bin Sulaiman al Rajhi's Deposition Is Denied

ARB moved to quash Plaintiffs' notice of deposition of ARB Chairman Abdullah bin Sulaiman al Rajhi (the "Chairman") under the apex deposition doctrine, which applies to senior executives. See ECF No. 9037.

"Highly-placed executives are not immune from discovery." Scott v. Chipotle Mexican Grill, Inc., 306 F.R.D. 120, 122 (S.D.N.Y. 2015) (cleaned up). They are, however, afforded "an additional layer of protection" in recognition that "unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation." U.S. Bank Nat'l Ass'n v. PHL Variable Life Ins. Co., 112 F. Supp. 3d 122, 149 (S.D.N.Y. 2015) (cleaned up). Accordingly, "[w]hen considering whether to allow the deposition

of a corporate executive," "[t]he Court considers the likelihood that the individual possesses relevant knowledge, whether another source could provide identical information, the possibility of harassment, and the potential disruption of business.'" Id. (quoting Scott, 306 F.R.D. at 122).

First, the Chairman's long tenure in senior positions at the Bank makes it likely that he has "information relevant to the [jurisdictional] issues in this case." Scott, 306 F.R.D. at 123. The Chairman joined ARB in 1979, served first as General Manager and then as Managing Director from 1995 to 2012, and, starting in 1998 or 1999, simultaneously sat on the Board of Directors. See ECF No. 9053 at 3. He worked closely with his father, Suleiman al Rajhi, when he led ARB. See id. This direct management experience and proximity to other senior officials likely put the Chairman in a position to learn sensitive information and participate in internal bank discussions "relevant" to ARB's specific intent. Scott, 306 F.R.D. at 123 (citing executive's "involvement in restaurant-level management" in support of finding that he "possess[ed] information relevant to the issues in" a Fair Labor Standards Act case).

Second, his knowledge is likely unavailable from any other source. See U.S. Bank Nat'l Ass'n, 112 F. Supp. 3d at 149. The Chairman's firsthand experience with ARB's day-to-day operations and its senior leadership makes him the type of "engaged executive" that is likely to have "unique" knowledge. Scott, 306 F.R.D. at 122–23. He was no doubt exposed to information that was never memorialized in writing or made available to a run-of-the-mill Rule 30(b)(6) deponent. And alternative witnesses are not available. Plaintiffs noticed depositions of three other people who were affiliated with ARB but none remains at the Bank. Compare ECF No. 9053 at 2, n.1 (explaining Plaintiffs' efforts to depose alternative witnesses), with Hallmark Licensing LLC v. Dickens Inc., No. 17-cv-02149 (SJF)(AYS), 2018 WL 6573435, at *4 (E.D.N.Y. Dec. 13, 2018) (denying apex deposition in part because "at least three other

witnesses" had "knowledge of the same facts" and would "be made available to testify"). Considering the Chairman's experience at ARB and the unavailability of other witnesses or documentary evidence, the Court considers the Chairman's knowledge likely "unique." Scott, 306 F.R.D. at 122.

Third, the Court finds no indication that Plaintiffs noticed this deposition "for purposes of harassment." Chevron Corp. v. Donziger, No. 11-cv-00691 (LAK)(JCF), 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013) (suggesting that "the rancorous history of this litigation lends credibility to Chevron's [harassment] concern"). Despite the gravity and complexity of this multidistrict litigation, counsel for all parties have (with notable exception) upheld the highest standards of professionalism and worked collaboratively to resolve disputes. The Court is confident that holds true here.

Fourth, the "potential [for] disruption" is minimal. U.S. Bank Nat'l Ass'n, 112 F. Supp. 3d at 149. As evidence of disruption, ARB points to the Chairman's calendar full of "significant meetings" that a deposition would derail. ECF No. 9037 at 4. But "the mere fact that the executive has a busy schedule is simply not a basis for foreclosing otherwise proper discovery." Scott, 306 F.R.D. at 122 (cleaned up). Any disruption can be mitigated by scheduling the deposition at the Chairman's convenience.

These factors unanimously favor Plaintiffs, so the Court denies ARB's motion to quash the notice of deposition. It likewise declines to grant ARB's request to convert the deposition to one by written questions. See ECF No. 9037 at 3. "'Written questions are rarely an adequate substitute for oral depositions both because it is difficult to pose follow-up questions and because the involvement of counsel in the drafting process prevents the spontaneity of direct interrogation. Accordingly, depositions upon written questions are disfavored.'" Scott, 306

F.R.D. at 125 (quoting <u>Zito v. Leasecomm Corp.</u>, 233 F.R.D. 395, 397 (S.D.N.Y. 2006)). ARB offers no "'no persuasive reason why the presumption of oral depositions should be disregarded.'" <u>Id.</u> (quoting <u>Zito</u>, 233 F.R.D. at 397). As such, the Chairman's deposition should proceed at a time and location convenient for him.

## VII.    Deposition Protocol

The parties also dispute four provisions in the deposition protocols. <u>See</u> ECF No. 9027. The Court resolves these disputes as follows.

**Paragraph 6** – The Court will extend discovery through August 11, 2023, to permit the parties to engage in the additional discovery ordered herein. If the parties need more time, the Court encourages them to jointly seek a reasonable extension.

**Paragraph 21** – As discussed above, the Court will not limit Plaintiffs to a Rule 30(b)(6) deposition.

**Paragraph 56** – The parties should adhere to the deposition time limits in the January 2018 Protocol but should accommodate reasonable extensions to that time if interpretation poses significant delays in questioning.

**Paragraph 63** – To avoid further delays, the Court declines to adopt Plaintiffs' proposed language permitting counsel to request the witness's removal during objections related to translations.

## CONCLUSION

The parties' discovery motions are granted in part and denied in part as described above. The discovery required by this Order should be completed by August 11, 2023, unless the parties seek and are granted a reasonable extension of that deadline.

The parties' joint letter outlining the remaining disputes related to ARB's Motion to Compel is due July 17, 2023.

The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos.

8897, 8902, 9002, 9037, and 9038.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:          July 11, 2023
                New York, New York