# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03-MD-01570 (GBD)(SN)<br>ECF Case |

This document relates to:

*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, 02-cv-06977
*Gladys H. Salvo, et al. v. Al Qaeda Islamic Army, et al.*, 03-cv-05071
*Federal Insurance Co., et al. v. Al Qaida, et al.*, 03-cv-06978
*Thomas E. Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 03-cv-09849
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 04-cv-01923
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, 04-cv-05970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, 04-cv-07065
*Euro Brokers Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 04-cv-07279
*Maher, et al. v. Islamic Emirate of Afghanistan a/k/a The Taliban, et al.*, 1:23-cv-02845

**DEFENDANTS WORLD ASSEMBLY OF MUSLIM YOUTH AND WORLD ASSEMBLY OF MUSLIM YOUTH INTERNATIONAL'S ("WAMY") REPLY TO PLAINTIFFS' OPPOSITION (ECF 9177) TO WAMY'S RULE 72 OBJECTIONS (ECF 9113) TO TO THE COURT'S OPINION AND ORDER DATED APRIL 27, 2023 (ECF NO. 9060)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………………….……….. i

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

I.   JUDGE NETBURN'S EXCLUSION OF AMBASSADOR FREEMAN WAS CLEARLY ERROUNEOUS, AS FREEMAN IS INTELLECTUALLY HONEST AND ADEQUATELY SUPPORTED HIS OPINIONS WITH YEARS OF RELEVANT EXPERIENCE CONSISTENT WITH RELIABLE SOURCES…………………………..6

II.  JUDGE NETBURN CLEARLY ERRED IN ALLOWING WINER TO OPINE THAT WAMY WAS "INTERTWINED" WITH ANOTHER CHARITY BIF WHERE HE BASED HIS OPINION ON A SMALL NUMBER OF CHERRY PICKED DOCUMENTS AND IGNORED OR NEVER CONSIDERED READILY AVAILABLE RELIABLE EVIDENCE SHOWING HE WAS WRONG.……………………………………..……..6

      a.   Winer Ignored Conclusive and Reliable Facts Showing WAMY is Not BIF……………………………………………………………………………..6

      b.   Because Winer Ignored Reliable Facts Conclusively Showing BIF, Even If It Were A WAMY Entity, Neither Engaged In Acts of Terrorism Nor Funded Al Qaeda, Judge Netburn Clearly Erred in Not Excluding This Irrelevant Opinion…………8

CONCLUSION .....................................................................................................................10

**TABLE OF AUTHORITIES**

**Cases**                                                                 **Pages**

*Alto v. Sun Pharm. Indus., Inc.*,
     No. 1:19-CV-09758-GHW, 2021 WL 4803582, at *2 (S.D.N.Y. Oct. 13, 2021).2,3

*Boucher v. U.S. Suzuki Motor Corp.*,
     73 F.3d 18, 21 (2d. Cir. 1996)……………………………………………………...5

Crown Cork & Seal Co. v. Credit Suisse First Boston Corp.,
     2013 U.S. Dist. LEXIS 34368…………………………………..………………..3

*Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*,
     2006 WL 2128785, at *5 (S.D.N.Y. July 28, 2006)………………………………..3

*Konrick v. Exxon Mobil Corporation*,
     2016 WL 439361, at * 7, 10, 13 (E.D. La 2016)…………………………………6, 7

*In re Taxotere (Docetaxel) Prods. Liab. Litig.*,
     No. 16-md-02740 (JTM), 2019 WL 3554211, at *2 (E.D. La. 2019)……………...6

*Twitter, Inc. v. Taamneh*,
     143 S.Ct. 1206, 1223 (2023)……………………………………………………10

*United States v. Arnaout*,
     282 F. Supp. 2d 838, 843-45 (N.D. Ill. 2003)……………………...…………..9

*United States v. Arnaout*,
     431 F. 3d 994, 1002 (7th Cir. 2005)…………………………………………...9

*Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*,
     571 F.3d 206, 213-214 (2d Cir. 2009)……………………………………………5

**INTRODUCTION**

Defendants the World Assembly of Muslim Youth and the World Assembly of Muslim Youth International (collectively "WAMY") filed objections pursuant to Fed. R. Civ. P. 72(a) to the Opinion and Order of the Honorable Sarah Netburn filed April 27, 2023 (ECF No. 9060) concerning bellwether expert challenges. (ECF No. 9113). WAMY objects to Judge Netburn's decision to exclude the testimony of former United States Ambassador to the Kingdom of Saudi Arabia Charles F. Freeman because of deficiencies in the form of citations, which the Plaintiffs' Executive Committees ("PECs") miscast, and the Court misconstrues, as an instance of "intellectual dishonesty." (ECF No. 9113). WAMY also objects to Judge Netburn's ruling allowing PECs' expert Jonathan Winer to opine on the relationship between WAMY and another charity where he relied solely on only a few documents chosen by PECs' counsel, ignored voluminous contradictory evidence, and in doing so completely abandoned his claimed methodology. (Id.).

In their response, the PECs continue to misrepresent the strong support Freeman has for his opinions and miscast an error as to the form of a citation as proof of "Freeman's intellectual dishonesty." (ECF No. 9177 at 1). The PECs' claim and Judge Netburn's finding that Freeman engaged in any intellectual dishonesty is clearly erroneous and demonstrably false. Freeman did not rely at all on the former U.S. intelligence officer for any opinion, but rather included a quote from the intelligence officer—from a reliable and respected security forum—as corroboration of an undisputed fact known to Freeman personally and confirmed by the 9/11 Commission. Freeman never misled the Court or the jury as to the provenance of the citation, and any shortcomings in the form of his citation certainly do not warrant the exclusion of this testimony. PECs also ignore that the Magistrate Judge clearly erred in allowing Winer to offer an opinion that WAMY was "intertwined" with an entirely separate U.S. charity, BIF. This opinion should have been excluded, not because Winer failed to consider all the voluminous discovery in this case, but because he based his opinion on only a few

1

documents cherry-picked by PECs' counsel to support the opinion they wanted him to reach and never considered—or deliberately ignored—the voluminous information from many different sources showing that his opinion was wrong. For these reasons, WAMY asks that the Court sustain its objections to the Opinion and Order (ECF No. 9060).

I.  **JUDGE NETBURN'S EXCLUSION OF AMBASSADOR FREEMAN WAS CLEARLY ERRONEOUS, AS FREEMAN IS INTELLECTUALLY HONEST AND ADEQUATELY SUPPORTED HIS OPINIONS WITH YEARS OF RELEVANT EXPERIENCE CONSISTENT WITH RELIABLE SOURCES.**

In their response, PECs misrepresent Judge Netburn's analysis and findings. Judge Netburn did not find that Freeman's opinions were "premised solely on his 'ipse dixit'" nor "that support for his opinions is 'anemic.'" (Compare ECF No. 9177 at 6 with ECF No. 9060 at 31). Judge Netburn did note that "unlike (PECs historian expert) Jenkins, his (Freeman's) 'reading list' is anemic and he appends no list of his own publications." (ECF No. 9060 at 31). Judge Netburn mistakenly compared apples to oranges as Ambassador Freeman never claimed to be an academic expert, but an experiential expert whose opinions are based primarily on his lived experience working in the Kingdom of Saudi Arabia and interacting with Saudi Government officials at the highest level for many, many years. As Freeman writes at the beginning of his Report, "I rely primarily on my personal and professional experience, but have cited corroborative material in footnotes, and provide a short reading list as Exhibit B."[1]

Having a short reading list, an anemic reading list, or any reading list at all is no reason to disqualify an experiential expert from testifying especially, as is the case here, where there is no dispute that Amb. Freeman is qualified to testify on the issues upon which he opines. As the Court in *Alto v. Sun Pharm. Indus. Inc.* observed, "an expert 'should not be required to satisfy an overly narrow test of his own qualifications,' and the court's focus should be on 'whether the expert's knowledge of the subject is such that his opinion will likely assist the trier of fact in arriving at the

---

[1] See Declaration of Omar Mohamedi (ECF No. 9115), Exhibit A Freeman Report at 1(ECF No. 9115-1).

truth.'" *Alto v. Sun Pharm. Indus., Inc.*, No. 1:19-CV-09758-GHW, 2021 WL 4803582, at *2

(S.D.N.Y. Oct. 13, 2021), *judgment entered,* No. 19 CIVIL 9758 (GHW), 2021 WL 4805430

(S.D.N.Y. Oct. 14, 2021) (quoting *Crown Cork*, 2013 WL 978980, at *31 (quoting *Johnson &*

*Johnson Vision Care, Inc. v. CIBA Vision Corp.*, 2006 WL 2128785, at *5 (S.D.N.Y. July 28, 2006))).

As this Court has noted, "[i]f the witness is relying solely or primarily on experience, [he still] must

explain how that experience leads to the conclusion reached, why that experience is a sufficient basis

for the opinion, and how that experience is reliably applied to the facts." *Sun Pharm. Indus.*, at *5.

Freeman did just that.

Freeman's opinions are backed by sound support, including his own lived experience in Saudi

Arabia.[2] For example, Freeman supports his firsthand experience with notable books about the Middle

East[3]—some of which rely on his own experience. While Judge Netburn faults Freeman for citing

Wikipedia, these few citations were ancillary to other reliable sources cited for widely accepted facts.[4]

As Freeman noted at the outset of his Report, the citations in footnotes were given not to establish

facts in the first instance, but largely to corroborate facts Freeman knew from firsthand experience. To

dismiss this as simply an expert's "*ipse dixit"* is effectively creating a new rule prohibiting expert

testimony based on experience alone. (ECF No. 9060 at 32). This finding by Judge Netburn was

plainly contrary to law and clearly erroneous.

PECs' primary argument, and Judge Netburn's primary basis, for excluding Freeman's

testimony was the clearly erroneous finding that Freeman was "intellectually dishonest." (ECF No.

---

[2] Id.

[3] See ECF 9115-1 at 1 - Coll, Steve, "The Bin Ladens: An Arabian Family in the American Century," Penguin Press; 1st edition (April 1, 2008) and Freeman Dep. Tr. at 295:5-15 (testifying that he relied on Coll's book three times because Coll interviewed Freeman in writing his (Coll's) book); ECF 9115-1 at 5, 7, 9, 11 - Rundell, David, "Vision or Mirage: Saudi Arabia at a Crossroads," 1st edition, I. B. Taurus (September 17, 2020) and Freeman Dep. Tr. at 295:18-296:12 (testifying that he cited to Rundell's work because it gave an excellent account of Saudi history with specific references to religious and political tensions in the Kingdom, though this was information Freeman already knew first-hand; *See also*, Exhibit B to Freeman's Expert Rpt. (attached here as Exhibit 1); Lacey, Robert, "The Kingdom: Arabia & The House of Sa'ud," Hutchinson; 1st edition (October 1981) 2010 and Freeman Dep. Tr. at 294:16-295:4 (though Freeman does not cite to Lacey directly, it appears in his reading list and corroborates many of the facts Freeman cites in his Report).

[4] ECF 9115-1 at 2, n. 2 (politics of Saudi Arabia); 6, n. 14 (a history of the Deobandi sect movement); 7, n. 16 (a history of the al ash-Sheikh, the Saudi religious family); *see also* ECF No. 9113 at 6-8.

9177 at 4-5; ECF No. 9060 at 31). Nothing could be further from the truth. Freeman never misrepresented any source nor attempted to deceive the Court or anyone as to the provenance of any cited authority. (ECF No. 9060 at 32).

Under the section of his Report discussing "The Kingdom of Saudi Arabia: Background" Freeman included the well-known and undisputed fact that "almost all the Saudi 9/11 hijackers came from [the] southwestern frontier region" of the Saudi Arabian provinces of "Asir, Baha, Jizan, and Najran…"[5] In footnote 7, which is at the end of the sentence in his Report, he wrote "See endnote i, from a former U.S. intelligence officer who wishes to remain anonymous, which describes the well-known origins of the Saudi hijackers and their region in detail." [6] Freeman could not have been clearer at his deposition that he was not relying on the former U.S. intelligence officer for the fact asserted at all but only included the information in the endnote because it accurately detailed the information about the origin of the hijackers and was a "useful summary."[7] This is the information Freeman knew on his own: from his independent research into the names of the Saudi 9/11 hijackers and familiarity with Saudi tribal names and the regions they come from. The 9/11 Commission Report's findings are consistent with Freeman's information as to the origins of the Saudi hijackers—noting that four of the twelve Saudi hijackers came from "Bahah" and five from Asir—regions the Commission described as "weakly policed" and "wild frontier" southwestern provinces bordering Yemen.[8] The controversial endnote is absolutely consistent with the 9/11 Commission Report.[9] PECs at no time dispute Freeman's opinion on the origin of the hijackers nor do they contest the content of the information contained in the endnote most likely because they know the 9/11 Commission report supports it.[10]

Any conclusion that the citation itself to a "former U.S. intelligence officer who wishes to

---

[5] ECF No. 9115-1 at 4.
[6] Id. at n. 7.
[7] Freeman Dep. Tr. at 392:16-24; 393:1-15; 396:3-11; 399:6-24; 400:1-8; 413:16-24; 414:1-7; 416:13-24; 417:1-3 (attached here as Exhibit 2).
[8] 9/11 Commission Rpt. at 231-232.
[9] ECF No. 9115-1 at 12-13.
[10] ECF No. 7602 at 24, n. 130-131.

remain anonymous" is "intellectually dishonest" is demonstrably false. The language quoted in the endnote came from a post by a contributor to an "extremely well-known and respected blog operated by retired U.S. Army Colonel Patrick Lang…, a noted expert on, particularly, the Levant and military and terroristic affairs."[11] While Freeman did not know the contributor (writing under the name "Tidewater"), he knows Col. Lang personally from "multiple consultations within the intelligence community" and trusts him.[12] When Freeman asked Col. Lang if he could identify the person who wrote the post, Col. Lang told him he was a former U.S. intelligence officer who wished to remain anonymous.[13]

Thus, Freeman was neither dishonest nor deceptive when he wrote in footnote 7 that the information in endnote "i" came from a "former U.S. intelligence officer who wishes to remain anonymous." There is simply no evidence for Judge Netburn to have found, and the PECs to argue, to the contrary. Thus, Judge Netburn's finding that Freeman's inclusion of this anonymous source in both his Report and his explanation of same at his deposition amounted to "intellectual dishonesty," which "undermines the Court's confidence that Freeman has 'reliably applied' 'reliable principles and methods' 'to the facts of the case'" can only be described as a mistake. (ECF No. 9060 at 32). Although the point Freeman made, based on his own experience and independent research, is consistent with the findings of the 9/11 Commission Report, Judge Netburn's finding that this citation to an anonymous source somehow renders all of Freeman's opinions suspect is simply wrong and clearly erroneous.

Contrary to Plaintiffs' assertions of intellectual dishonesty, Freeman was honest about his expert opinion. Any perceived shortcomings in the form of the citation or the quality of one cited source falls well short of warranting exclusion of Freeman's testimony. His opinions are not

---

[11] Exhibit 2 at 387:3-19.
[12] Id. at 387:3-19; 388:24; 389:1-6; 411:3-23; 412:3-7.
[13] Id. at 411:6-23; 412:3-24; 413:3-24; 413: 1-2; 415: 18-19.

speculative or unrealistic[14] as to suggest bad faith that would warrant total exclusion of his entire testimony. Freeman never did anything that comes close to cherry-picking facts to fit an expert's opinion,[15] mischaracterizing the content of his sources,[16] or ignoring data that disputes his opinion.[17] PECs' claims of intellectual dishonesty ring hollow where they do not show Freeman did any of these things. Any perceived deficiencies—whether in the form of the citation to the anonymous U.S. government official or his few citations to Wikipedia—are properly the subject of cross-examination and do not warrant the complete exclusion of Freeman's testimony.[18]

## II.   JUDGE NETBURN CLEARLY ERRED IN ALLOWING WINER TO OPINE THAT WAMY WAS "INTERTWINED" WITH ANOTHER CHARITY BIF WHERE HE BASED HIS OPINION ON A SMALL NUMBER OF CHERRY-PICKED DOCUMENTS AND IGNORED OR NEVER CONSIDERED READILY AVAILABLE RELIABLE EVIDENCE SHOWING HE WAS WRONG.

Exclusion of expert testimony is warranted when the expert selectively cites only a few sources that support his opinion and disregards other data showing the opinion is wrong.[19] In reaching his opinion that WAMY was "intertwined" with BIF, Winer only considered a very small number of documents selected by PECs' counsel.[20] He ignored or never considered documents and information that posed a clear alternative explanation.[21]

### a.  Winer Ignored Conclusive and Reliable Facts Showing WAMY is Not BIF.

Winer derives his WAMY/BIF opinion from the claim that BIF was the successor to LBI, a

---

[14] *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC,* 571 F.3d 206, 213-214 (2d Cir. 2009) (citing *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d. Cir. 1996).

[15] See *Konrick v. Exxon Mobil Corporation*, 2016 WL 439361, at *7, 10, 13 (E.D. La 2016).

[16] Judge Netburn's opinion makes no such finding.

[17] ECF No. 9113 at 10-12, citing to *Konrick, supra; In re Taxotere (Docetaxel) Prods. Liab. Litig.,* No. 16-md-02740 (JTM), 2019 WL 3554211, at *2 (E.D. La. 2019).

[18] See ECF No. 9060 at 11, 17, 19, and 34 (where Judge Netburn found questions about qualifications, inconsistencies, or textual support should be left for cross-examination).

[19] *Konrick, supra* at *10.

[20] Winer Dep. Tr. at 122:1-11 and 123:5-14 (conceding that documents in his reliance material were turned over by PECs' counsel and that he had to supplement them with additional research though he had not considered other available primary source documents) (Winer Dep. Tr. is attached here as Exhibit 3).

[21] ECF No. 9060 at 5.

WAMY subsidiary.[22] Primary firsthand documents that Winer ignored show this opinion is wrong. In a February 23, 1993 letter[23] from WAMY to Adel Batterjee (BIF's former head whom WAMY had terminated months earlier),[24] WAMY made clear it had nothing to do with BIF and demanded that Batterjee stop perpetrating a fraud to the contrary.[25] In a May 11, 1993 report explaining reasons behind Batterjee's removal from LBI, WAMY wrote to Prince Salman bin Abdulaziz explaining that WAMY had made clear to Batterjee that it was not responsible for BIF and that Batterjee must stop deliberately confusing the two organizations.[26] The leaders of BIF later acknowledge that WAMY had nothing to do with their organization.[27] Winer also ignored numerous documents showing that when WAMY dissolved LBI, the funds went to WAMY, not BIF.[28]

Ignoring these primary source documents,[29] Winer instead weaves a wholly unsupported story that LBI is the parent of BIF and that BIF,[30] a designated entity, was "intertwined" with WAMY.[31] To support the remaining eight paragraphs, Winer cites to the rejected evidentiary proffer related to *U.S.*

---

[22] Winer Rpt. at ¶7.7.3.1. (ECF No. 9178-1).

[23] *See* Feb. 23, 1993 letter, (ECF 7344-18) (noting that BIF was trying to pass itself of as WAMY).

[24] *See* July 8, 1993 LBI Minutes – Winer's Dep. Tr. Ex. 914 (ECF 7344-17) (memorializing Batterjee's termination and replacement by the new director Hassan Bahiz Allah six months before the date of the minutes).

[25] *See* fn. 23, supra.

[26] May 11, 1993 report (ECF No.7344-19).

[27] *See*, *e.g.* Arnaout Sentencing Memo at 4 (ECF 7344-21) ("Arnaout assumed full control of BIF-USA and at all times ran that organization as an independent business with no affiliation to LBI, or any of the other organizations ran by Mr. Batterjee"); April 8, 2004 Declaration of Adel Batterjee at ¶9 ("While the word Bir in Arabic is translated as 'Benevolence,' BIF was never a branch of Al-Bir [LBI] or vice versa") (attached here as Exhibit 4); *see also* ECF No. 3951-19 at ¶¶ 22-39 (explaining how Khattib, a former WAMY officer, worked for BIF without WAMY's knowledge).

[28] Exhibit 3 at 232:5–235:20 (unable to identify if he reviewed any of the dissolution documents such as Winer's Dep. Tr. Exs. 917 and 918); *see also* 1997 dissolution minutes – Winer Dep. Tr. Ex. 917 (attached here as Exhibit 5) and 1997 letter - Winer Dep. Tr. Ex. 918 - memorializing the liquidation of LBI assets which were escrowed by the Kingdom and eventually remitted to WAMY (attached here as Exhibit 6).

[29] Exhibit 3 at 225:19-227:22 (never read LBI's minutes on Batterjee's termination – ECF No. 7344-17 – Winer Dep. Tr. Ex. 914); Exhibit 3 at 203:7-230:25 (never read the Feb. 1993 cease and desist letter - ECF No. 7344-18 - Winer Dep. Ex. 915); Exhibit 3 at 231:4-232:4 (never read the May 11, 1993 letter – ECF No. 7344-18 – to Prince Salman Abdul Aziz, which Winer concedes is a primary document – Winer Dep. Tr. Ex 916); Exhibit 3 at 232:7-234:7 (never reviewed LBI's dissolution and merger minutes document - Exhibit 5 supra - Winer Dep. Tr. Ex. 917); Exhibit 3 at 234:10-235:20 (never reviewed documents showing LBI assets were sent to the Kingdom of Saudi Arabia – Exhibit 6 supra -Winer Dep. Tr. Ex. 918).

[30] ECF No. 9178-1 at ¶ 7.3.4.3, n. 48 (LBI acted as a parent of BIF and BIF as a cover for LBI); 7.7.3.1 n. 66 (BIF as successor to LBI).

[31] Winer Rbtl. Rpt. at ¶ 2.38.8 – ECF No. 7344-2 (claims BIF is intertwined with WAMY based on a claim – that Batterjee is WAMY's chairman – that he later admits was wrong – Exhibit 3 at 225:19-227:22 (conceding that documentary evidence proved his point to be incorrect, Exhibit 3 at 219:25-220:24. (In his Rebuttal Report at ¶ 2.38.6 Winer identifies Batterjee was LBI's chairman but even that assessment is wrong).

*v. Enaam Arnaout*, N.D. Ill. Case No. 02-CR-892,[32] a press release from the U.S. Department of Justice,[33] and a press release from the U.S. Department of Treasury.[34] Each cherry-picked citation gives the appearance of supporting Winer's opinion—when in fact it does not, either because the document is wholly unreliable or is disproven by the primary sources discussed above. Plaintiffs in their opposing papers now seek to supplement Winer's opinion with other unreliable documents, as well as documents they know he never considered, when issuing his WAMY/BIF opinion.

Winer did not cite to the indictment as PECs claims.[35] He cites to a press release about the indictment.[36] While PECs argue Winer considered other information in rendering his WAMY/BIF opinion, in fact he considered the information for other issues, not the one WAMY now seeks to exclude. Winer cites to the Canada Revenue Agency (CRA) to establish his claim that WAMY engaged in financial improprieties,[37] not that WAMY and BIF are connected. Similarly, Winer cites to the *National Commission on Terrorist Attacks Upon the United States: Monograph on Terrorist Financing* not to establish that WAMY had any relationship with BIF but as support for his theory about how al-Qaeda generally received funding.[38] Ironically, Winer ignored the Monograph's more material finding that BIF did not give financial aid to al Qaeda.[39] Judge Netburn clearly erred in not distinguishing the failure to consider relevant, reliable contrary evidence from a failure to consider all of the voluminous evidence produced in this case.

      b.  **Because Winer Ignored Reliable Facts Conclusively Showing BIF, Even If It Were A WAMY Entity, Neither Engaged in Acts of Terrorism Nor Funded Al Qaeda, Judge Netburn Clearly Erred in Not Excluding This Irrelevant Opinion**.

---

[32] ECF No. 9178-1 at ¶¶ 7.3.4.3 at n.48, 49; ¶7.7.3.1 at n. 69. U.S. District Court Judge Conlon rejected the Government's *Santiago* proffer because the proffered statements were not admissible under the co-conspirator exception. ECF No. 7344-20 (*United States v. Arnaout*, Memorandum Opinion and Order filed February 3, 2003, Winer Deposition Ex. 919).

[33] ECF No. 9178-1 at ¶ 12.12.9, n 207; *see also* USDOJ press release attached here as Exhibit 7.

[34] Id. at ¶ 12.12.5, n 205; *see also* USDOT press release attached here as Exhibit 8.

[35] ECF No. 9177 at 6.

[36] See n 33, supra.

[37] ECF No. 9178-1 at ¶¶ 10.3-10.4.

[38] Id. at ¶¶ 4.6, n 14 and 17 (citing to the Monograph to establish how al Qaeda generally acquired funds).

[39] ECF No. 7344-24 at 111-113 (the Monograph noting that BIF did not fund al Qaeda and that "BIF and GRF should remind us that terrorist links and evidence of terrorist funding are far different things").

PECs' claim of "WAMY's conflation of the evidentiary standards of criminal cases continued throughout Winer's deposition," shows that neither the lawyers that hired Winer nor the expert himself attempted to understand readily available data establishing a lack of evidence that BIF had anything to do with supporting terrorism. (ECF No. 9177 at 8). Winer and PECs ignore the finding of U.S. District Court Judge Suzanne Conlon that, in sentencing BIF employee Enaam Arnaout for fraud-based RICO conspiracy in violation of 18 U.S.C. § 1962(d), the government failed to carry its burden of showing that the terrorism enhancement of U.S.S.G. § 3A1.4 applies. *United States v. Arnaout,* 282 F. Supp. 2d 838, 843-45 (N.D. Ill. 2003).

As the Court knows, but as PECs' counsel and Winer—lawyers all[40]—ignore facts to support a sentencing enhancement under the U.S.S.G. must be proven by a preponderance of the evidence, the same standard that applies to this civil case. *United States v. Arnaout,* 431 F. 3d 994, 1002 (7th Cir. 2005). Importantly, Winer never considered Judge Conlon's finding at the conclusion of the highly publicized *Arnaout* prosecution that: "[n]or does the record reflect that he attempted, participated in, or conspired to commit any act of terrorism." *Arnaout,* 282 F.Supp. 2d at 843. Winer also ignored the finding of the Seventh Circuit Court of Appeals, affirming Judge Conlon and, applying the preponderance of the evidence standard subject to a clearly erroneous standard of review, finding that "[t]he district court also found that the government had not established that the Bosnian and Chechen recipients of BIF aid were engaged in a federal crime of terrorism, or that Arnaout intended the donated boots, uniforms, blankets, tents, X-ray machines, ambulances, nylon or walkie talkies to be used to promote a federal crime of terrorism. We find all of the district court's findings on this issue consistent with the record, not clearly erroneous, and sufficient to support the district court's refusal to apply § 3A1.4." *Arnaout,* 431 F.3d at 1002.[41]

---

[40] ECF No. 7647 at 3; ECF No. 9060 at 2 (noting that Winer has produced declarations that contain "pure argument" and "legal conclusions" beyond the scope of an expert).
[41] Exhibit 3 at 249:2-252:5 (When confronted with Judge Conlon's decision, Winer now acting as a lawyer, debated its

Winer ignored evidence showing that BIF had nothing to do with terrorism in general and al Qaeda in particular. Any opinion about WAMY being "intertwined" with BIF is therefore irrelevant and should be stricken. See *Twitter, Inc. v. Taamneh*, 143 S.Ct. 1206, 1223 (2023) (elements and factors of aiding-and-abetting liability under JASTA rest on the "conceptual core . . . that the defendant consciously and culpably 'participate[d]'in a wrongful act so as to help 'make it succeed.'")

## **CONCLUSION**

For the reasons stated above, Plaintiffs' objections to Judge Netburn's Order should be overruled.

Respectfully submitted,

By: /s/ Omar Mohammedi
_____

Omar T. Mohammedi
Frederick Goetz, *of counsel* (admitted *pro hac vice*)
The Law Firm of Omar T. Mohammedi, LLC
233 Broadway, Suite 820
New York, NY 10279
Telephone: (212) 725-3846
Fax: (212) 202-7621
Email: omohammedi@otmlaw.com
Email: fgoetz@goetzeckland.com
*Attorneys for Defendants World Assembly of Muslim Youth and World Assembly of Muslim Youth International*

---

validity because "not ever judicial ruling is a ruling that's going to be correct." He was unaware that the 7th Cir. affirmed Judge Conlon's decision.  When confronted with the 7th Cir. decision, he claimed to have forgotten about it).