EXHIBIT 36



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

August 16, 2019

Sean Carter, Esq.
Cozen O'Connor
1650 Market St, 28th Fl.
Philadelphia, PA 19103
scarter1@cozen.com

Robert Haefele, Esq.
Motley Rice
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
rhaefele@motleyrice.com

**VIA E-MAIL**

Re:   Subpoenas to Stuart A. Levey, Matthew A. Levitt, R. Richard Newcomb, Adam J.
      Szubin, and Juan Carlos Zarate to Testify at Depositions in a Civil Action, *In Re*
      *Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN) (S.D.N.Y.)

Dear Messrs. Carter and Haefele:

        This constitutes the Treasury Department's written response, pursuant to relevant
Treasury Department regulations found at 31 C.F.R. § 1.11, to your June 28, 2019 demands that
five former high-ranking Treasury Department officials testify at depositions in the above-
referenced civil matter.  The former officials are Stuart A. Levey, former Under Secretary for
Terrorism and Financial Crimes; Matthew A. Levitt, former Deputy Assistant Secretary in the
Office of Intelligence and Analysis; R. Richard Newcomb, former Director of the Office of
Foreign Assets Control (OFAC); Adam J. Szubin, former Director of OFAC and former Acting
Under Secretary for Terrorism and Financial Crimes; and Juan Carlos Zarate, former Assistant
Secretary for Terrorist Financing.  As the issues raised by the five demands are all essentially the
same, the Treasury Department will address all five demands in one response.

        Treasury Department regulations prohibit former employees such as Messrs. Levey,
Levitt, Newcomb, Szubin, and Zarate from providing testimony "regarding any information
relating to or based upon Department documents, or disclos[ing] any information or produc[ing]
materials acquired as part of the performance of that employee's official duties or official status"
without Departmental authorization.  31 C.F.R. § 1.11(c).  Those same regulations require the
Department to consider a number of specific factors "[i]n deciding whether to authorize ... the
testimony of personnel concerning official information."  31 C.F.R. § 1.11(e)(1).  In light of
those factors, as explained in greater detail below, the Treasury Department declines to authorize
the testimony of any of the five former Treasury Department officials.

Among the factors the Department is required to consider, several stand out as particularly relevant to this demand. The Department is required to consider whether the information demanded is "reasonable in scope." 31 C.F.R. § 1.11(e)(1)(vi). The demands identify the matters on which the plaintiffs wish to depose each of the five former officials by referring to a seven-page attachment (the same for all five former officials). This attachment identifies thirty discrete "Foundational Topics," including such broad subjects as:

- "The role of Saudi proselytizing organizations in supporting the jihad against the Soviet Union's invasion and occupation of Afghanistan" (item I(b)),

- "Evidence concerning the formation of al Qaeda, including but not limited to the participants, organizations, meeting attendees, and attendees' organizational affiliations" (item I(g)),

- "Efforts by the Kingdom of Saudi Arabia to propagate Wahhabi Islam around the globe" (item I(p)), and

- "The relationship between Saudi proselytizing organizations and the government of the Kingdom of Saudi Arabia" (item I(y)).

It then goes on to identify six separate Muslim charities as topics of interest, with the topics having up to nine subtopics, and the subtopics often identifying numerous individual persons or offices about which the plaintiffs wish to ask the former officials for "facts and evidence" (e.g. items II(f), III(b), VII(a)). This is a stunningly broad range of topics, linked by little beyond their geographical ties to the greater Middle East, association with the Muslim faith, temporal proximity within five years or so to the events of September 11, 2001, and alleged roles in the concerted terrorist funding effort that the plaintiffs are seeking to prove. It is hard to see how this could be considered a reasonable scope for a deposition of an individual who – as is the case with all five former officials – is not and has never purported to be a subject-matter expert on Middle Eastern terrorist-linked Muslim charities at the turn of the millennium.

The Department is also required to consider whether "the number of similar requests would have a cumulative effect on the expenditure of agency resources." 31 C.F.R. § 1.11(e)(1)(vii). In this case, we have good reason to think that the cumulative effect on agency resources of authorizing these requests would be very large. First, in an affidavit that accompanies all of the demands, plaintiffs' counsel note that:

The 9/11 plaintiffs have submitted numerous requests for documents to the Department of the Treasury (Freedom of Information Act ("FOIA") and subpoena) since the commencement of the September 11th Terrorism M[ulti] D[istrict] L[itigation], seeking records relating to the aforementioned individuals and organizations. The limited documentation released by the Department of the Treasury in response to the 9/11 plaintiffs' FOIA requests has been heavily redacted. In addition, the Department of the Treasury has indicated that searching for and processing the requested documents would be burdensome.

Affidavit of J. Scott Tarbutton, paragraph 18. This amounts to an acknowledgement that the demands are at least substantially duplicative of FOIA requests in response to which the Department has already searched for and produced documents, and document demands that the plaintiffs have already made and that the Treasury Department has already considered. Moreover, the five current demands are *identical* to each other, with the exception of the name of the person to be deposed. The disclosure and burden issues raised by plaintiffs' earlier requests and demands are not inapplicable simply because plaintiffs now couch their demands as subpoenas for depositions rather than FOIA requests or subpoenas for documents. If plaintiffs wish to reply to the responses they have already received – for example, discussing the possible modification of specific redactions made with respect to specific documents produced in response to FOIA requests – they may do so. Mere repetition of the same broad requests for information, however, is the sort of unreasonable request against which the Department's regulations are intended to protect. Having considered these requests at the time they were made, and having provided judicious, compliant responses to those requests, the Department would now be simply wasting resources if it were to duplicate its efforts in response to requests for what amounts to the same information.

The Department is also required to consider whether the demand is "unduly burdensome." 31 C.F.R. § 1.11(e)(1(i). This requires us to consider just what the Treasury Department would need to do if it were to authorize the testimony of any of the five former officials. As noted above, the demands identify the matters that will be the subjects of the deposition in a seven-page attachment (the same for all five former officials) that ranges widely, including, among other subjects:

- "Foundational Topics" that involve events dating back an indeterminate period but at least to 1996 (items I(k), (l)), and include such broad subjects as assessments of Saudi Arabian proselytizing organizations (I(b)), ideological linkages between Wahhabi Islam and al Qaeda (I(q)), al Qaeda banking and financial structures (I(v)), and the banking and financial structures, accounts, and hawala networks used by Osama bin Laden and al Qaeda (I(u), (v), (w));

- The "factual and evidentiary predicate" of a host of Treasury Department designations of persons and offices under Executive Order 13224, relating to six different Islamic charities as well as al Qaeda itself and a number of specific terrorists (the bulk of items II through VII);

- The "factual and evidentiary predicate" for various statements, including memoranda (items II(c), III(e), VI(b)), Congressional testimony (II(e)), public statements (III(h)), and other writings (II(d)), by diverse authors;

- The "factual and evidentiary predicate" for "investigations, analyses, and assessments" of entities that the Treasury Department has not designated (items II(f), VII(e), VII(f)); and

- Information pertaining to a de-listing (item VI(c)).

3

No one currently working for the Treasury Department has personal recollection of more than a small fraction of the demand subjects. Whoever the Treasury Department selected to represent the Department's interests in the five former officials' depositions – such as ensuring that the former official being deposed does not inadvertently reveal classified or privileged information – would therefore need to prepare for that role by performing a document review. (The Department's representative, of course, would need to have all of the necessary clearances to be able to see all of the relevant materials, including the classified materials, in order to be fully apprised as to what could, and what could not, be discussed in an unclassified setting. To the extent that other agencies are in control of access privileges to any of these classified materials, it would be necessary to obtain those agencies' permission to allow the Department's representative to gain access.)

The document review would involve a number of laborious steps. First, the Department would need to find and collate all of the relevant documents, searching numerous classified and unclassified systems, as well as remotely archived documents, in order to do so. Then, the Department's representative would need to review all of the Treasury Department documents pertaining to the issues identified in the demand in order to familiarize himself or herself with the relevant information and with the Treasury Department's positions and activities; learn what information is classified; and determine what information is subject to a privilege that the Treasury Department will want to assert. Some areas of interest to plaintiffs are clearly protected – for example with respect to persons and entities that Treasury has not designated, it is clear that either revealing facts about investigations of such persons or acknowledging that there are no such investigations would reveal both classified information and information subject to the law enforcement privilege. *See Cozen O'Connor v. U.S. Dep't of Treasury,* 570 F. Supp. 2d 749, 788 (E.D. Pa. 2008). For other subjects, the process of separating classified from unclassified information, then further separating the unclassified information into that to which an applicable privilege applies and that which is not privileged, is an arduous and burdensome task, and it would pose the constant threat of inadvertently releasing classified information. Even if this could be accomplished, any deposition would present a substantial risk of unauthorized disclosure of classified or privileged material, as open-ended inquiries may elicit responses in which classified or privileged material is intertwined and not readily segregable. *See In re Sept. 11 Litig.,* 621 F. Supp. 2d 131, 145 (S.D.N.Y. 2009). Altogether, it is easy to imagine that preparing the Department's representative for these depositions could occupy hundreds if not thousands of hours of the time of Treasury Department employees. It appears that the evidentiary benefit to be gained from any of these depositions would likely be small. None of the five former officials worked for the Treasury Department throughout the period encompassed by the demand: Mr. Levey's tenure at the Treasury Department was between 2004 and 2011, Mr. Levitt's between 2005 and 2007, Mr. Newcomb's between 1987 and 2004, Mr. Szubin's between 2004 and 2017, and Mr. Zarate's in 2004 and 2005. Each former official may have been personally involved in some of the demand subjects and may therefore have recollections of that personal involvement. However, for every one of the former officials there will be subjects about which the deponent lacks personal knowledge. Even with respect to matters about which the former official has personal knowledge, every one of the former officials would still be constrained by the limitations of the classification system and relevant evidentiary privileges with respect to that personal knowledge. It therefore appears highly unlikely that any of the

depositions would produce much information of any evidentiary value. As a result, the demands are "unduly burdensome" insofar as their expected yields are so small in comparison with the amount of work needed.

The Department is also required to consider "[t]he extent to which the time of employees for conducting official business would be compromised." 31 C.F.R. § 1.11(e)(1)(iv). As noted above, preparing for and representing the Department at any one of the depositions would absorb a significant amount of Treasury Department employee time, and force employees involved in such preparation and representation to forego attending to other official business.

For all of these reasons, we conclude that testimony as outlined in your June 28, 2019 demands should not be authorized under 31 C.F.R. § 1.11. Moreover, please note that, in reaching the conclusion it reaches in the letter and identifying specific bases for this conclusion, the Treasury Department is not waiving its right to make further objections to the demand as necessary or appropriate.

If you have any questions about this matter, please feel free to contact Senior Counsel Jacob Thiessen, at (202) 622-1156 or jacob.thiessen@treasury.gov.

Sincerely,

Paul Ahern
Assistant General Counsel (Enforcement & Intelligence)

cc:  AUSA Andrew E. Krause (USAO SDNY)
     AUSA Sarah S. Normand (USAO SDNY)
     AUSA Jeanette A. Vargas (USAO SDNY)