N964TER1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   IN RE: TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001,
4

5
                                          03 MD 1570 (GBD)(SN)
6

7   ------------------------------x
                                          New York, N.Y.
8                                         September 6, 2023
                                          2:40 p.m.
9
    Before:
10
                        HON. SARAH NETBURN,
11
                                          Magistrate Judge
12
                            APPEARANCES
13
    COZEN O'CONNOR
14        Attorneys for Plaintiffs
    BY:   SEAN CARTER
15

16  KREINDLER & KREINDLER, LLP
          Attorneys for Plaintiffs
17  BY:   MEGAN BENETT
          STEVEN POUNIAN
18        JUSTIN GREEN

19
    ANDERSON KILL P.C.
20        Attorneys for Plaintiffs
    BY:   JERRY GOLDMAN
21        ALEX GREENE
          BRUCE STRONG
22        JEREMY SHOCKETT

23
    SPEISER KRAUSE
24        Attorneys for Plaintiffs
    BY:   JEANNE M. O'GRADY
25

N964TER1

1

BAUMEISTER & SAMUELS, P.C.
2         Attorneys for Plaintiffs
  BY:  DORTHEA M. CAPONE
3

4 BARASCH & McGARRY
         Attorneys for Plaintiffs
5 BY: BRUCE KAYE

6

  MOTLEY RICE LLC
7         Attorneys for Plaintiffs
  BY:  ROBERT HAEFELE
8         DONALD MIGLIORI
         JODI FLOWERS
9         JOHN EUBANKS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

N964TER1

1          (Case called)

2          MR. O'GRADY:  Jeanne O'Grady, Speiser Krause.

3          MS. BENETT:  Good afternoon.  Megan Benett on behalf

4  of Ashton plaintiffs from Kreindler & Kreindler.

5          MS. CAPONE:  Good afternoon, your Honor.  Dorothea

6  Capone for the Bowers/Ashton plaintiffs.

7          MR. POUNIAN:  Steven Pounian for Ashton, Kreindler &

8  Kreindler.

9          MR. GREEN:  Justin Green for Ashton, Kreindler &

10 Kreindler.

11         MR. KAYE:  Good afternoon, your Honor.  I'm Bruce Kaye

12 appearing for Barasch McGarry.  We represent the latent injury

13 cases.

14         THE COURT:  Thank you.

15         And who do we have here from the PECs?

16         MR. MIGLIORI:  Good morning, your Honor, or good

17 afternoon.  Don Migliori from Motley Rice on behalf of the

18 wrongful death plaintiffs.

19         MS. FLOWERS:  Good morning, your Honor.  Jodi Flowers

20 on behalf of Burnett and PEC.

21         MR. EUBANKS:  Good afternoon, your Honor.  Robert

22 Haefele from Motley Rice also for PEC and Burnett plaintiffs.

23         MR. GOLDMAN:  Jerry Goldman from Anderson Kill on

24 behalf of PEC and the O'Neil plaintiffs.  Also with me are

25 Bruce Strong, Alex Greene, and Jeremy Shockett.

N964TER1

1          MR. CARTER:  Good afternoon, your Honor.  Sean Carter

2     from Cozen O'Connor for the PECs and Federal Insurance

3     plaintiffs.

4          MR. EUBANKS:  And John Eubanks from Motley Rice for

5     the Burnett plaintiffs and not necessarily for PEC.

6          THE COURT:  Great.  All right.  Thank you all.

7     Apologies for our late start.  We had some technical

8     difficulties, but it's nice to see you all.  I hope everyone

9     had a good summer.

10          We are here to talk about mostly administrative

11     issues.  So let me talk about the initial reason we scheduled

12     this conference which is to talk about quality control, making

13     sure our forums are working as best as they can.  And then

14     secondly we'll talk with the common benefit fund scheduling

15     issues.

16          So let me just give you a bit of a perspective because

17     I received a letter from Motley Rice, dated September 1st

18     making the reasonable claim that the issues that we raised that

19     caused our concern in that one order were really a fraction of

20     the cases.  There are 40 or 50 lawyers in this room here.

21     There's one of me and one of my law clerk, and we handle every

22     single filing that comes in the court.  I think you all know

23     that from the grace of the Court of Appeals, we have one law

24     clerk who works on this matter full time.  It is her full-time

25     job.  She doesn't do anything else but work on this case, and

N964TER1

1 that occupies more than a full-time docket for her.  It's an

2 enormous lift for us to manage these cases correctly,

3 efficiently.  We are dedicated to it.  We take a lot pride in

4 what we do, but it is not easy because there are thousands and

5 thousands of individual cases, as I know you all know.  When I

6 explain to my colleagues how big this case is, they don't

7 totally appreciate the volume we're talking about here.  Each

8 individual plaintiff gets time in our mind and on our desk.

9   So although the numbers that we talked about that

10 caused us to have this order may seem de minimis.  For one, to

11 find those 15 plaintiffs that were a mistake is hours and hours

12 of work.  And two, we are doing hours of work for every single

13 one that comes through to make sure that we are satisfied that

14 they're not mistakes of various forms.

15   And so part of the reason why we wanted to schedule

16 this conference was because we think there may be tweaks we can

17 do to some of the form applications that the parties file to

18 help us with our quality control efforts.

19   I think that there are two different types of issues

20 that we are seeing generally.  You could argue it's three, but

21 in my mind they are sort of filing problems.  And then there

22 are what I'm calling the QC problems, the quality control

23 problems.

24   On the filing list, we are seeing lawyers who are

25 filing things sort of inconsistent with the local rules, using

N964TER1

1    event codes on ECF that are not the correct events codes that

2    they are not conscientious about the proceedings on ECF.  By

3    that I mean, for example, they file something, maybe the

4    clerk's office sends a defect notice and that is not being

5    acted on.  The lawyers are not following up to make sure things

6    are happening, which means that when we then go and look at the

7    motion a couple months later we see that we are missing

8    documents where there has been an error notice that hasn't been

9    corrected.  For every one of those, if you multiply that, it's

10   just an enormous amount of work.

11          So the first area that I want to try to focus on are

12   these filing issues.  That's what led me to think maybe some

13   training will be helpful.  It turns out that's not a resource

14   we have access to.  One proposal may be that we come up with a

15   checklist to make sure that lawyers are doing everything in the

16   right order.

17          The second issue is what we are calling the quality

18   control issue.  And it's in part reflected by those few

19   examples we gave.  When we get a filing for a default motion,

20   we are looking to make sure the plaintiff is a plaintiff.  We

21   know who is the decedent, it's not the plaintiff.  We

22   understand how that person died, meaning some decedents are

23   9/11 decedents, meaning the day of.  And some decedents are

24   people who have latent injuries and deceased 10 or 15 years

25   later.

N964TER1

1          We are having state law questions, which we've raised

2     in a couple orders recently.  We're trying to figure out what

3     state law would govern.  All of that sort of work is also a

4     big, big lift if you multiply it by the tens of thousands of

5     plaintiffs that we have.

6

7

8               (Continued on next page)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

N96Gter2

1          THE COURT:  The exhibits, I understand that there's a

2     practice of using an Excel format, to identify the associated

3     filings so this person is a plaintiff because here is a docket

4     number and the page number of an 800-page complaint where that

5     person is identified, trying to track all that down, trying to

6     track all of that down is an enormous lift.

7          And then the third area we're putting the quality

8     control area is this issue about the duplication, which has not

9     been a huge problem.  I think most of our efforts have really

10    addressed that concern, but not a hundred percent.  And we want

11    to make sure that everybody is on the same page about what

12    needs to happen and make sure that this master list that I

13    understand Motley Rice has sort of ownership on is being

14    utilized by everybody.  And one way to make sure that's

15    happening is to require some sort of certification that these

16    plaintiffs are in the master list, and I'm satisfied that there

17    are no other pending motions or prior judgments entered on

18    behalf of those plaintiffs.

19          So those are the types of issues that we are seeing

20    and that led us to think that it is a good use of your time to

21    come in today so that we can talk about it.

22          Like I said, I read the letter that was filed at

23    ECF 9319, September 1st.  From that letter, it seemed like

24    there were two proposals; one which I absolutely endorse, which

25    is that everybody use this clearinghouse resource and to make

1    sure that, whether it be a lawyer representing 10,000 people or

2    a lawyer representing two people, that that information is in

3    the clearinghouse and that you are accessing that resource to

4    make sure that there is certainty about the filing.

5        The second was a proposal for a working group to

6    address this issue.  In advance of today's conference, I

7    thought about whether that would be a helpful thing.  My

8    current view is that we know what we want, and rather than ask

9    you to predict what would help us, it might be the best way for

10   us to move forward for us to take the first cut at what we

11   think would be helpful.  And it might look like a checklist

12   that people are doing internally, that we don't ever see, make

13   sure the filing needs to be filed in the correct order,

14   something akin to a civil cover sheet that identifies the type

15   of information with specificity that we need, and that includes

16   the kinds of certifications that we are seeking.

17       So I think -- although I will hear your views -- my

18   current thinking is that it makes sense for us to try to come

19   up with a form that we think would work.  We are very much

20   interested in your views, because you are doing the work and we

21   want to make sure that what we are asking for is what you can

22   also provide to us or maybe you think there's a better way to

23   get us the information.  So that's where I am.

24       I'm happy to hear from whoever.  I don't know whether

25   Mr. Eubanks wants to start, as the author of the letter.

N96Gter2

1          MR. EUBANKS:  I'm happy to start.  And I'm sure others

2     will chime in.  We know this is a huge task.  We know that your

3     Honor and your staff have been looking at the motions very

4     closely to ensure that those quality control measures are met

5     and of course to offer an apology for the mistakes that have

6     been made.

7          In terms of the quality control issue that you have

8     raised, I think one of the issues on the checklist, I think

9     that's a fantastic idea.  I'm not sure -- we have counsel who

10    is probably in this courtroom right now, because most of the

11    counsel who are in here have filed a lot of these motions over

12    the past few years -- it may be some of the later cases that

13    are having some of the issues, following such a checklist would

14    likely be an appropriate measure to ensure that you are getting

15    what you need and certified that they are going through that

16    correct list before they file the motion.

17          In terms of making access to the clearinghouse lists,

18    we're trying to devise a way to make that accessible to

19    everyone, but not editable by everyone.  I don't want everyone

20    to be able to go and edit that list.  At a time we are going

21    through and seeing what is missing, we rather they bring it to

22    our attention so there's only one party drafting that document.

23    We are trying to determine the best way to make that available

24    to all counsel, all plaintiffs counsel in the case, anyone who

25    has filed a case against Iran, the Taliban or any of the

N96Gter2

1    parties in this case as we move forward in these default

2    judgments.

3              One thing we had not been doing -- and based on your

4    Honor's order -- has been to try to create that pending motion

5    list.  Often when the motions would come in, the motions for

6    default judgment, they would come in in such a flurry, we had

7    overlap in a lot of those motions, because we would have

8    plaintiffs who were plaintiffs in multiple cases who were

9    responding to counsel in multiple cases.  And unfortunately,

10   each firm would file within about a five-day time period and

11   you would have multiple motions with the same names on them.

12   The pending motion list will hopefully be able to alleviate

13   that.  That was not something that had been kept previously.

14   It will be a difficult thing, because, as your Honor has noted,

15   the thousands of names we're dealing with and the number of

16   different plaintiffs' counsel in this case, it becomes very

17   difficult to aggregate that information in one place.  But we

18   will do our very best to make sure that is the case and make it

19   accessible to everyone.

20             THE COURT:  So let me ask you a question.

21             MR. EUBANKS:  Sure.

22             THE COURT:  One thought I had would be, before you

23   file something, you being John Smith lawyer, that you would

24   certify that both the motion that you are about to file is

25   listed on the master list and that you have confirmed that that

N96Gter2

party doesn't have any prior judgments or pending motions.  It
sounds like what you are saying is that that job was too hard
to keep up with in real time.

MR. EUBANKS:  That may be difficult to keep up with in
real time, especially given the size of some of these motions
that are being filed, the number of plaintiffs that are being
filed.  There is already a large amount of work that goes into
reviewing the lists to ensure that the names are on the list as
plaintiffs, that there's not a judgment entered already.  That
part of the work is being done.  Unfortunately, because
sometimes these motions cross each other, it is difficult for
the pending motion list to be consulted at all times.

But as I said, that hasn't been a focus.  The focus
has generally been on the judgment.  And the focus is to change
over to is there something pending on this person, not just has
a judgment been entered.  And that will hopefully alleviate
some of this issue that the Court is encountering.

In terms of the civil cover sheet issue, I wasn't
quite following, because I noted the civil cover sheet be filed
in the new case, but in terms of filing the motion, I was
trying to understand what the Court would be envisioning with a
civil cover sheet.

THE COURT:  I was using that as an example, that's
plain, but the idea being that, as the first page of your
motion, you will be required to submit some sort of a cover

1    sheet that gave us the information that we would be looking for

2    when we do our work on our end.  So identify the complaint and

3    the page number where this person is listed as a party,

4    identify the decedent, if it's a damages claim, and when that

5    person died, identify the relevant state law that you are

6    seeking to apply in that instance, so that type of information.

7    Because trying to locate that information for each individual

8    plaintiff can take a couple of hours.  And if you multiply that

9    out, there's not as many hours in the year.

10           MR. EUBANKS:  That makes much more sense.

11           And in terms of just looking at, for example, the

12    motion that had been filed against the Taliban, that's one I

13    can speak most directly about, we tried to divide up the

14    exhibits as to under which law we were suing, but of course,

15    when it comes to the common law claims, we have not laid out

16    the individual state law issue, as the Court has noted more

17    recently in the Iran judgment.  So that is something that we're

18    all going to have to work a little bit more on in terms of

19    coordinate how to present to the Court the state common law

20    claims and which state common laws would apply in each of those

21    instances.

22           THE COURT:  That was an issue that came up, but I

23    think a little further back, we also had this issue where we

24    were seeking damages for latent injury decedents and it took us

25    a long time in reviewing that application.  It wasn't a

1    traditional 9/11 decedent in the 9/11 context, but it was

2    somebody who passed away 10 or 15 years later, that legal claim

3    had not yet been adjudicated, and so that claim just sort of

4    slid in with the rest of them.  And that's the kind of thing

5    that keeps us up at night -- not because people are being

6    nefarious, I'm not accusing anybody of doing anything tricky --

7    I want to make sure when we're issuing billion dollar judgments

8    we're doing it appropriately under the law.  That was another

9    example where we felt like we need to make sure people are

10   giving us the information, we're not spending five or ten hours

11   on the case, and wait a minute, this is as to whether or not

12   damages are available for those types of family members.

13             MR. EUBANKS:  And that makes perfect sense.  That was

14   something we did address in the letter from last Friday, that

15   was for the latent injury claims, it may make sense for the

16   Court to have a date of death and whether or not they are a

17   latent submission.  That would be something that is helpful for

18   your Honor on the claims related to these latent injury claims.

19   So we are in agreement that that is something that needs to be

20   addressed.

21             I can say the motion that we filed against Taliban,

22   Exhibit B, which covers our death claims, all of those death

23   claims were day of, 9/11 death claims and not latent injury

24   death claims.

25             THE COURT:  Again, I know you are all familiar with

1    it, the idea of a cover sheet would be just for us to solicit

2    the type of information that we're already looking for, rather

3    than having to dig for it, so that's the idea.

4              MR. EUBANKS:  Of course.  Your Honor, you are in the

5    best place to determine what it is that you need, and we will

6    do whatever it is that is going to be helpful, because just the

7    breadth of these cases has to be really overwhelming for the

8    Court and your staff, so anything we can do to make your life

9    easier --

10             THE COURT:  Cookies, send us cookies.  I'm kidding.

11   Don't send cookies.

12             So like I said in the beginning, I do think we have a

13   sense of what we want.  I think rather than asking you to

14   predict it, I think it does make sense for us to take the first

15   cut.  So I think what we'll probably do in the coming,

16   hopefully, next week or two, issue an order with an exhibit,

17   issue an order for a proposal of these types of forms, and then

18   have some schedule to meet-and-confer and think about whether

19   there's something better or worse that can be provided to us.

20   But at least then you know what it is we want and we can go

21   from there.  I think that makes more sense than forming some

22   sort of ad hoc working group.  There's no magic here.  I don't

23   need you trying to predict what you need.

24             MR. EUBANKS:  I think the ad hoc working group, it was

25   an idea that was discussed between the various firms that, as I

N96Gter2

1    said, we consulted prior to filing that letter to make sure we

2    weren't stepping on anyone's toes, make sure we were all in

3    accordance, that group.  We represent such a large

4    representative of the death injury claimants, we thought it was

5    a good core to present things to the Court.

6         THE COURT:  It does seem -- as well as Anderson Kill

7    has done some helpful work -- I do think those firms should

8    weigh in as we think about next steps going forward.

9         MR. EUBANKS:  And again, your Honor had asked one of

10   the things that may be helpful is to provide the Excel files

11   that underly the exhibits, of course, I think we're all happy

12   to provide those.

13        THE COURT:  I think my understanding is that those are

14   often provided, but not always provided.  And they are helpful

15   to us, so I think that's going to be something that we want to

16   put in both sort of internal checklists that a lawyer consults

17   before she files something, as well as the cover sheet that's

18   submitted to us to confirm that that information is there.

19        MR. EUBANKS:  And one last thing that I did address in

20   the letter to some extent, but I think there was a lot in

21   there, is on the overall clearinghouse list, one of the issues

22   we have had is information that is very difficult to format

23   into the working spreadsheets that we have.  It is extremely

24   helpful for us, when we're trying to collate this information

25   into one place, to have a specific breakdown of fields so that

N96Gter2

1    we can really just dump the information in and not have to do a

2    lot of back of the house type work.  As the Court knows,

3    there's a lot going on at various times in this litigation --

4    right now being one of those times -- and having all of us work

5    together to provide the information in a standardized format

6    would be extremely helpful for everyone, for reviewing these

7    lists and also to submit that information.

8            THE COURT:  How do they convey this information to

9    you; this is the name of my party, this is the name of the

10   decedent?

11           MR. EUBANKS:  When a new case has been filed, what we

12   have generally done is send out a spreadsheet that has fields

13   as the spreadsheet currently exists and ask the counsel to

14   populate that spreadsheet.  Oftentimes, it comes back in their

15   own format, their own spreadsheet format and it's difficult for

16   us to unravel and takes a significant amount of time, depending

17   on how many people are on the individual complaint.  So it

18   becomes a time consuming venture that stops being helpful to

19   the parties when it's very difficult to keep up to date on the

20   various plaintiffs who are in the case.

21           THE COURT:  So making sure that everybody is using

22   your standardized form.

23           I'm assuming the ship has sailed on this, but I would

24   think that there's some sort of program, an online program

25   where people could fill out information and it would

1  automatically populate into a database.  But maybe at this

2  point, 22 years later, it's not really something --

3       MR. EUBANKS:  I think when we cracked into the over

4  five digits of individual plaintiffs, it became a little bit

5  more difficult to do that.  It's always possible to create that

6  type of input.  But a lot of times, if the list is long,

7  someone is not going to want to go through and put that data

8  entry into each one.  But if they can send the information in

9  the fields that we're asking, then it just makes sense, a lot

10 easier to convey to everyone and to make that information

11 accessible.

12      THE COURT:  Before we switch to the common benefit

13 fund, anyone want to be heard on this issue?

14      Like I said, we're going to take the first crack at

15 it.  We'll issue an order that will have as exhibits to the

16 order proposals of what we're thinking and we'll solicit

17 feedback from you all.

18      The next topic is with respect to the common benefit

19 fund.  And I think all that we need to do at this point is to

20 set some deadlines.  What I am hoping for is to get information

21 from both Havlish counsel and folks who are opposing making a

22 payment, information about amount of money that people have

23 collected.  I guess you can give me that information either

24 way, either my client received a certain amount or as lawyers

25 the amount of hours people have worked.  My goal here is to

N96Gter2

1    serve equity, and so I'm hoping -- I'm not that optimistic --

2    but I'm hoping we can work through this without too much angina

3    from everybody and then I can get some information to help me

4    think about what is the most equitable way to move forward on

5    this issue.

6            Yes.

7            MR. PANTAZIS:  Dennis Pantazis on behalf of the

8    Havlish plaintiffs.

9            We have met before this conference with leaders from

10   the other firms and we agree with you that we want to get

11   structure done and put together, the parties -- and correct me

12   if I'm wrong -- have a request that we can be given 90 days to

13   see, one, if we can't resolve the issue and, two -- for

14   something to present back to you as a resolution -- or two, to

15   have a roadmap of information that you would want, how we could

16   get it to you.  I think that we believe that we probably need

17   to do a lot of the meet-and-confer.  We have a meeting next

18   week to try to do that and hopefully take some of the time

19   constraints off the Court on this issue, but we would like 90

20   days to try.

21           THE COURT:  Yes.

22           MR. MIGLIORI:  Don Migliori for the wrongful

23   death/personal injury plaintiffs.

24           Your Honor, there's a lot of information that we'd

25   like to streamline for the Court.  We think this is a useful

1    way to do it.  In the event we have issues, maybe we would ask

2    that we be able to reach the Court or even come up with a

3    methodology among ourselves to try to fine-tune it.  I think,

4    at the end of the day, if we go through it, not having the

5    Court with the supporting evidence in the order, so on behalf

6    of everyone else in the group, this is the one issue that I

7    think we can say we all agree.

8          MR. PANTAZIS:  There might be a second one, but -- and

9    your Honor, I do need to mention that Jane McHart is an

10   attorney that we have retained to represent our interests.

11   Unfortunately, he had a prior commitment and couldn't be here,

12   but I did want the Court to know he will be filing and will be

13   representing us in the case.  He's not a member of the Havlish

14   plaintiffs, he's an attorney representing the Havlish

15   plaintiffs.

16         THE COURT:  Understood.

17         Just to be clear, the idea is, in 90 days, either you

18   will write me a letter saying you figured this all out or you

19   are going to send me a letter what you want to file or in 90

20   days you will make those filings?

21         MR. PANTAZIS:  I think it's contemplated that in 90

22   days either the resolution or a roadmap of how to get to a

23   resolution.

24         THE COURT:  So it's essentially a status letter.

25         MR. PANTAZIS:  That's correct.

N96Gter2

1          What we are asking for is give us time since the order

2    was affirmed so that we can see what we can agree to.  And we

3    may not be able to agree to everything, but we may be able to

4    agree to a process that may be helpful to the Court.

5          THE COURT:  Great.

6          One, I think fairness and equity is going to control

7    this outcome.  I hope everybody keeps that in mind.  The amount

8    of money that was received, as I understand, is a significant

9    amount of money.  So I want to make sure everyone is being

10   fair, but also reasonable, so that's one parting word to you

11   all.

12         The second is, if you think working with a judge to

13   settle this issue would be helpful -- maybe you don't want it

14   to be me, I'm happy to serve in that role, given I'm also going

15   to be deciding this, I understand you may not want me to do

16   it -- I'm happy to see if one of my colleagues could meet with

17   you all and maybe that meeting is in November or December, if

18   you schedule it now, to see whether or not settlement is

19   possible with the assistance of a mediator.  So I want to make

20   that offer to you.  If you want to think about it and get back

21   to me.

22         MR. PANTAZIS:  Your Honor, on behalf of the Havlish

23   plaintiffs, we have thought about that and we would, I think,

24   appreciate that.

25         MR. MIGLIORI:  I think the same, your Honor.  We have

N96Gter2

1 actually talked about some folks, not knowing that the Court

2 would be amenable to helping us find someone.  That's something

3 we have contemplated as probably useful and necessary.

4     THE COURT:  So our rate is very reasonable.

5     MR. MIGLIORI:  The ones we were talking about are not

6 necessarily as reasonable.

7     THE COURT:  Why don't I see if a colleague might be

8 available, and think about like a Novemberish time frame, maybe

9 in between the Christmas and holiday season.  December, people

10 are checking out already, but maybe that would be helpful.  And

11 then so if we are having a status letter in 90 days, maybe do

12 this in 75 days.

13     MR. MIGLIORI:  I think we plan to meet next week, on

14 the 13th, we may need to confer, I think we'll have an idea of

15 when we can.

16     MR. PANTAZIS:  If you find a volunteer that's willing

17 to do it, it may be helpful if we reach out to him or her and

18 get them in the process of what they would like so that when we

19 do have a session with them in November it's fruitful rather

20 than start the process.

21     THE COURT:  Hundred percent.

22     MR. GREEN:  Justin Green, speaking for Ashton, Judge

23 Daniels gave us 30 days, which I think gives us until

24 September 30th.  I think all the firms are planning a long

25 submission.  I assume if you are going to give us 90 days, that

N96Gter2

1    deadline gets pushed.

2              THE COURT:  Yes.  I'm not aware that he set a

3    deadline, but in any event, the next deadline on this issue

4    will be the 90-day status letter to me.  And I'm going to see

5    if I can find a perfect candidate to help you resolve this

6    issue in advance.

7              MR. MIGLIORI:  Thank you, your Honor.

8              MR. PANTAZIS:  Thank you, your Honor.

9              THE COURT:  Anything further from anyone?

10             Before we adjourn, let me introduce Diljah Shaw, who

11   is my new courtroom deputy as of a week ago.  Rachel, who you

12   all know and love and think is amazing, is running on to

13   greener pastures.  Lucky for the public, those pastures remain

14   in the courthouse.  She, like I say, will one day be my boss.

15   Rachel is moving on.  Diljah is starting, today is her

16   introduction to you all.  Thank you everybody for being so

17   gracious.  And going forward, you will be hearing from her, I

18   just want to make sure you all know who that person is.  Thank

19   you everybody.

20             (Adjourned)

21

22

23

24

25