# EXHIBIT 20

N6Q3TERC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    IN RE: TERRORIST ATTACKS ON
     SEPTEMBER 11, 2001,
4
                                        New York, N.Y.
5
                                        03 MD 1570 (GBD)(SN)
6

7    ------------------------------x       Teleconference

8                                        June 26, 2023
                                         4:00 p.m.
9
     Before:
10
                          HON. SARAH NETBURN,
11
                                        Magistrate Judge
12

13
                          APPEARANCES
14

15
     COZEN O'CONNOR
16        Attorneys for Plaintiffs
     BY:  SEAN CARTER
17          SCOTT TARBUTTON

18   KREINDLER & KREINDLER, LLP
          Attorneys for Plaintiffs
19   BY:  ANDREW MALONEY
            STEVEN POUNIAN
20

21   ANDERSON KILL
          Attorneys for Plaintiffs
22   BY:  JERRY GOLDMAN
            BRUCE STRONG
23          ALEXANDER GREENE

24

25

                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

N6Q3TERC

```
 1   SALERNO & ROTHSTEIN
          Attorneys for Defendant
 2   BY:  PETER SALERNO
           AMY ROTHSTEIN
 3
     GOETZ & ECKLAND P.A.
 4        Attorneys for Defendant
     BY:  FREDERICK GOETZ
 5         OMAR T. MOHAMMEDI
 6   LEWIS BAACH PLLC
          Attorneys for Defendant
 7   BY:  AISHA BEMBRY
           WALEED NASSAR
 8
     BERNABEI & KABAT PLLC
 9        Attorneys for Defendant
     BY:  ALAN R. KABAT
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

N6Q3TERC

```
 1              (Court and counsel appearing telephonically)

 2              THE COURT:  Good afternoon.  This is In re: Terrorist

 3    Attacks of September 11, 2001, 03 MD 1570.

 4              Can I ask counsel for the plaintiff executive

 5    committee -- hello?  Can I ask counsel for the plaintiffs'

 6    committee and the federal insurance plaintiff to state their

 7    appearance.

 8              MR. CARTER:  Good afternoon, your Honor.  Sean Carter

 9    from Cozen O'Connor.

10              MR. TARBUTTON:  Scott Tarbutton, Cozen O'Connor.

11              MR. GOLDMAN:  Jerry Goldman, Anderson Kill.  Also on

12    the phone are my colleagues Bruce Strong and Alexander Greene,

13    and I have some summer associates sitting in a conference room

14    with me.

15              THE COURT:  Do we have Mr. Haefele here on behalf of

16    the Burnett plaintiffs?  Mr. Haefele, are you here?

17              MR. CARTER:  This is Mr. Carter.  Mr. Haefele was

18    uncertain whether he was able to join due to the other brief we

19    have due this afternoon.  So I think we can proceed in his

20    absence.

21              THE COURT:  I believe we have lawyers here on behalf

22    of the Ashton plaintiffs.

23              MR. MALONEY:  Andrew Maloney from Kreindler &

24    Kreindler.

25              MR. POUNIAN:  And Steve Pounian.
```

N6Q3TERC

1          THE COURT:  Anyone else on behalf of plaintiffs who

2    wants to state their appearance?

3          Moving to the defendants, who do we have on behalf of

4    Yassin Kadi?

5          MR. SALERNO:  Peter Salerno and I'm here with Amy

6    Rothstein.

7          THE COURT:  Thank you.  On behalf of World Assembly of

8    Muslim Youth.

9          MR. MOHAMMEDI:  This is Omar Mohammedi and I have with

10   me Fred Goetz.

11         THE COURT:  On behalf of Muslim World League and IIRO

12   and the other charity defendants.

13         MS. BEMBRY:  This is Aisha Bembry.  In the conference

14   room with me is Waleed Nassar.

15         THE COURT:  Any other counsel on behalf of defendants

16   who wants to state their appearance?

17         MR. KABAT:  This is Alan Kabat also for the charity

18   defendants.

19         THE COURT:  So this call is in connection with the

20   May 31 letter that was filed jointly by the parties, proposing

21   additional Daubert motions be filed starting on July 31 with

22   apparently an extensive page limitation.  The letter doesn't

23   indicate how many experts the parties intended to move against,

24   so one of the purposes of today's call is to get a sense of how

25   many experts we are looking at, and whether or not 170 pages

1    for each motion is really reasonable.

2              The second question, equally important, is what

3    efforts were made, if any, to comply with the Court's April 27

4    order, which as you all know addressed six experts who were

5    presented by the parties as bellwether issue experts.  The

6    purpose of that bellwether process was for the parties to

7    identify experts who would present as many issues as possible,

8    so that the Court could give some guidance for the balance of

9    the experts, rather than having the Court address every single

10   expert and every single challenge.  And I can certainly say

11   with confidence that the parties raise every possible challenge

12   they could with respect to those six experts.  And the Court

13   issued its opinion and identified some of the general

14   principles that can be taken from that order.

15             And I'm concerned that that process, which was

16   intended to guide the future, has not been taken full advantage

17   of, and that the parties are looking now just to do another

18   round of briefing, which I'm not sure is really the best use of

19   anybody's time.

20             So, maybe Mr. Carter, I'll just start with you.  And

21   maybe you can answer my second question first, which is what

22   have you done to comply with the Court's first bellwether

23   opinion in order to narrow and limit the issues for resolution

24   now?

25             MR. CARTER:  Sure, your Honor.  And thank you very

1    much for the opportunity to address the Court on these issues.

2            I think from our perspective, we've taken very much to

3    heart your Honor's order, and our view is that there are

4    limited challenges with respect to all six of the defendants'

5    remaining experts that flowed from your Honor's order and that

6    are consistent with the parameters your Honor has established

7    for expert testimony.

8            Our assessment is that we could probably address most

9    of those issues in due course at a later stage of the

10   proceedings in advance of trial as part of pretrial

11   proceedings, so long as we would not be waiving our right to

12   advance Daubert or other challenges to the experts' testimony

13   by deferring it to that point in time.

14           I gather that we are differently situated from the

15   defendants, who likely view their challenges to some of

16   plaintiffs' remaining experts as being essential to the

17   arguments they want to make in support of their motions for

18   summary judgment.  We are happy to go through that process,

19   because we believe it will verify that there is no merit to the

20   exclusion of plaintiffs' remaining experts, and it will in fact

21   streamline summary judgment and make all the more clear that

22   summary judgment is not necessary.

23           But we do understand that the defendants want to go

24   through that process, and since they view that as essential to

25   their approach to summary judgment, we wanted to avoid a

1    situation in which we were seen as waiving any further

2    challenges, based on the Court's bellwether order, and to

3    ensure that we proceeded as the Court would prefer.

4            If the preference would be to do them now, we would be

5    dealing with limited challenges with respect to six remaining

6    defendants' experts in many cases because we believe they've

7    crossed lines that your Honor has already set.

8            THE COURT:  Great.  That's helpful.  I think at the

9    outset I'll just say that I don't think there would be any

10   waiver.  I'm happy to put that in an order.  As I know you

11   know, it's not essential to file a challenge before summary

12   judgment or even with summary judgment, and often times the

13   issues that are presented in a summary judgment motion don't

14   lend themselves to a need to address the expert discovery.

15           So I'm 100 percent of the view that only the

16   challenges that are critical to any summary judgment motion

17   should be addressed, either in advance of summary judgment, or

18   with the summary judgment.  But to the extent it's the view of

19   the plaintiff that those challenges can await a trial, that's

20   fine on my end.  So I have no objections to that.

21           Let me ask you, another question, Mr. Carter, which

22   hopefully is academic because hopefully we'll end this

23   conference with the plaintiffs deciding they don't need to file

24   motions at this stage.  But, if we're filing limited challenges

25   to six remaining defendants, why do we need 70 pages for those

1    challenges?

2          MR. CARTER:  Well, your Honor, first, I think our view

3    is there should be parity as between the number of pages

4    afforded to plaintiffs and the number of pages afforded to

5    defendants.  And we indicated in the letter that we took no

6    view as to whether or not 70 pages was warranted or

7    appropriate, given the bellwether rulings.  But we did see it

8    as part of a good-faith compromise in negotiations with

9    defendants to that proposal.  If we were proceeding with

10   motions now, it would perhaps be feasible to do it with fewer

11   pages, although it's roughly 10 pages for each expert, which is

12   not all that expansive.  And there are a handful of issues with

13   regard to each.  But, again, the page limits flowed primarily

14   from compromise discussions.

15         THE COURT:  Understood.  Well, I certainly want to

16   reward compromise, so I appreciate that.  And I agree that

17   there should be sort of fairness here.  As I sometimes say to

18   my children, being fair does not necessarily mean being equal.

19   So, I think what matters most is that a motion and its

20   opposition are equal.  But if you're moving on a limited number

21   of issues and they are moving on many more, I don't know that

22   the two opening briefs need to be the same.  But I understand

23   your point.  I appreciate it.  So thank you.

24         Who will be speaking on behalf of the defendants?  Is

25   it Aisha Bembry?

1          MS. BEMBRY:  Yes.  Good afternoon, your Honor.  Yes, I

2     will be speaking for our clients.  And I think other counsel

3     also want to also share their views, but I will begin, your

4     Honor.

5          As to your second question, I'll start with that first

6     and thank you for the opportunity for us to have this call and

7     talk about these issues.

8          Certainly from our perspective, and I understand from

9     the other defendants as well, we have taken to heart your

10    Honor's order, and we understand that the principles you've

11    laid out, and there are certain areas, even within the kind of

12    wide latitude that's given to experts, there are areas that are

13    definitely out of bounds.  And we intend to focus on those

14    areas, your Honor, and it will be limited challenges in regards

15    to the number of experts.  It would be a consolidated motion

16    challenging two of the remaining four experts, and Yassin Kadi

17    and Peter Salerno will be talking about that.  There is one

18    expert that is addressing only Mr. Kadi.  And counsel for Kadi

19    would like to do a separate motion.  They will speak to that

20    specifically.

21         But as to the issues that the other defendants, the

22    collective defendants, will do a consolidated motion against

23    two of the experts, and we think it's important, your Honor,

24    and critical to the case that plaintiffs rely heavily on

25    experts, and in order for us to have an adequate opportunity to

N6Q3TERC

1   address those issues on a dispositive motion, we need to be

2   able to resolve the issues that they have raised, and in our

3   view, have used experts in ways that your Honor has decided is

4   out of bounds.  And so it's for that reason we think it is

5   important to get those issues resolved in advance of filing the

6   dispositive motions, so it's most efficient in the way we

7   present it, otherwise we would be presenting in an alternate

8   fashion.  If this, then this.  So we think it's most efficient

9   that we address the issues in a limited fashion first, and then

10  move to dispositive motions.

11          THE COURT:  And what is limited?  As Mr. Carter was

12  just saying, he was agreeing as a gesture of good faith to the

13  page limits.  How is 70 pages a limited challenge?

14          MS. BEMBRY:  So, it is a function, your Honor, of the

15  fact that there will be two separate motions.  And I'll let

16  counsel for Kadi speak to their submission, but for the other

17  two experts and the consolidated motion, we would be addressing

18  that in approximately 45 pages, your Honor.  And the reports

19  that we are addressing are voluminous and fact intensive, and

20  there are many instances where these experts, in our view, in

21  the defendants' view, go out of bounds in what they say.  It is

22  not just weaknesses and issues to be addressed in

23  cross-examination, but issues that need to be addressed now

24  because they are -- it's testimony that your Honor, based on

25  your bellwether ruling, has ruled is out of bounds and we want

1   to be able to address that.  The reports are voluminous, and it

2   is a fact intensive case, and there are a number of.

3        Issues so that's why we're requesting from this

4   perspective of the two experts that will be consolidated

5   amongst the defendants, 45 pages.

6        THE COURT:  And the idea being that the Kadi expert

7   would then be the remaining 25?

8        MS. BEMBRY:  Yes, your Honor.

9        THE COURT:  Is this going to be filed as one motion?

10        MS. BEMBRY:  No.  So there would be one consolidated

11   motion addressing two of the plaintiffs' remaining four

12   experts.  All defendants remaining in the case would join in

13   that motion.  And then Mr. Salerno can speak to the issue of

14   the challenge to the Comras report.

15        THE COURT:  Can you speak, Ms. Bembry, with a little

16   more specificity of what the nature of the challenges to these

17   two experts would be?  You said they're way out of bounds, but

18   what specifically are you referring to?

19        MS. BEMBRY:  So, your Honor in your bellwether ruling

20   has addressed the fact that, as it relates to legal

21   conclusions, speculative --

22        THE COURT:  Sorry, Ms. Bembry.  One second.  I'm sure

23   the court reporter is having the same problem I'm having.  If

24   you are not speaking, can you mute your phones so we can avoid

25   any feedback.

N6Q3TERC

1          Can you begin again.

2          MS. BEMBRY:  Yes.  Thank you, your Honor.

3          So, we would be addressing issues certainly as to the

4    qualification of the experts, qualifications of the experts,

5    your Honor, but as to the issues that I alluded to as being out

6    of bounds, focusing on improper legal conclusions, opinions

7    that are speculative and conclusory, and opinions that relate

8    to motivations, intentions of the officials and the charities

9    themselves, and then hearsay, your Honor.  There is a

10   significant amount of hearsay, improper hearsay, that are

11   contained within these expert reports.  And it's those issues

12   primarily, your Honor, that we would be addressing.

13         THE COURT:  Have you raised those issues in meet and

14   confers with plaintiffs' counsel?

15         MS. BEMBRY:  We have not on an expert-by-expert basis,

16   your Honor, identified areas that we believe to be out of

17   bounds, if that's what you are asking.  No, we have not had

18   that type of dialogue with plaintiffs' counsel.

19         THE COURT:  It seems to me, again, the whole point of

20   the bellwether process was to give the parties some guidance,

21   and what I had hoped was that, armed with my first opinion,

22   that the parties could then have a back and forth process and

23   potentially reach agreements that the expert would not testify

24   as to X, Y, and Z, because it appeared to violate the

25   parameters that were identified in the bellwether opinion.

N6Q3TERC

1          MS. BEMBRY:  Your Honor, if that's something you would

2     like us to take on, we are happy to be involved in a process of

3     that nature, your Honor.  That was not something we had

4     approached the plaintiffs, and they had not approached us in

5     that regard.  But if that's something you would like us to try

6     to accomplish, we can.  You know, I wonder whether there would

7     be success in finding common ground on that.  But we are

8     certainly happy to make those efforts, your Honor.

9          THE COURT:  That was certainly the purpose of the

10    process.  The purpose wasn't to just have a motion filed, get a

11    decision, and then have a second motion filed.  The purpose was

12    to educate the parties about how the Court was going to draw

13    the line so that it could inform decisions going forward.  So

14    it wasn't intended to just be specific to the one issue that

15    was listed, which is why we left as the conclusion to the

16    opinion itself some principles that the parties can take away

17    from the decision, which are found in the last few pages, pages

18    40 and 41 of the opinion.  That's what I'm hoping would have

19    happened.  It sounds like it didn't.

20         MS. BEMBRY:  Your Honor, we had understood from our

21    hearing back in September of I think it was 2021 that we would

22    have the opportunity to address issues with other experts, but

23    that we would do so and guided by the Court's principles.  And

24    as I said, we very much intend to do that.  It was not

25    certainly my understanding that what was being asked of us was

N6Q3TERC

1    to meet and confer on those issues.  But again, if we

2    misunderstood, we are happy to endeavor to try to come to some

3    common ground and then move from there, your Honor.  We are

4    open to taking your Honor's instructions on how we proceed

5    forward.  But, it was our understanding from that hearing that

6    we would have an opportunity to address other experts, after

7    having your bellwether ruling.

8         THE COURT:  All right.  Let me first turn to

9    Mr. Salerno, then I am going to come back to Mr. Carter to get

10   your view on whether or not a meet and confer would be

11   productive.

12        So Mr. Salerno, are you going to be speaking with

13   respect to the Kadi motion?

14        MR. SALERNO:  Yes, your Honor.  Does your Honor have a

15   specific question or I have a few things to say about it, which

16   may address things you've raised in the last few minutes.

17        THE COURT:  Why don't you begin.

18        MR. SALERNO:  Okay.  Just to be clear, we think a

19   separate motion on behalf of Mr. Kadi against Victor Comras is

20   appropriate simply because Mr. Comras is the sole expert

21   directed explicitly against Mr. Kadi.  Although they have

22   identified portions of other experts separately that are

23   directed against him.  But he is explicitly against Mr. Kadi,

24   and solely against Mr. Kadi, and Wa'el Julaiden, who has

25   defaulted, but Mr. Julaiden's relationship with Mr. Kadi and

N6Q3TERC

| | |
|---|---|
| 1 | vice versa loom rather large we think in plaintiffs' case |
| 2 | against Mr. Kadi. |
| 3 | And as Ms. Bembry said, and we agree with everything |
| 4 | she said, we expect the bellwether decision to be our roadmap, |
| 5 | but I'll be explicit in that we need the 25 pages that |
| 6 | Ms. Bembry referred to for our motion simply because, A, |
| 7 | Mr. Comras' report looms extremely large and it is absolutely |
| 8 | essential in plaintiffs' case against Mr. Kadi.  We think he's |
| 9 | adduced nothing that would satisfy plaintiffs' obligations |
| 10 | pursuant to the Second Circuit's remand in this case.  But, and |
| 11 | with all respect to them, we don't expect them to agree with |
| 12 | that.  So we would despair of reaching any common ground |
| 13 | whereby Mr. Comras is simply dropped as an expert.  He should |
| 14 | be in our view, based upon the principles your Honor |
| 15 | articulated in the bellwether decision, and that will be what |
| 16 | our motion will say.  In order to do that, as Ms. Bembry said |
| 17 | about the other experts, Mr. Comras too is particularly, we |
| 18 | think, fact intensive.  And ideally we would get an opportunity |
| 19 | to oppose every fact the plaintiffs would want to put into |
| 20 | evidence, which is presumably everything in his report. |
| 21 | Obviously we can't do that in any reasonable page limit, but we |
| 22 | think 25 pages is the minimum.  And that is, of course, as I |
| 23 | don't have to tell your Honor, the normal amount for a normal |
| 24 | motion in a case pursuant to your Honor's rules. |
| 25 | THE COURT:  Mr. Salerno, can I ask you a question. |

1          MR. SALERNO:  Sure.

2          THE COURT:  So far everything you said sounds like a

3     motion for summary judgment.

4          MR. SALERNO:  Well, except the motion for summary

5     judgment, Ms. Bembry said will look a lot different if

6     Mr. Comras' report is excluded versus if it is included.  If it

7     is excluded, obviously, plaintiffs will have an entirely

8     different response to our motion than if it is included.

9          THE COURT:  I understand that.  I understand how that

10    works.  My point is, you said they haven't adduced any

11    evidence.  That seems like a summary judgment standard.  What

12    are the legal grounds on which you are challenging the expert?

13         MR. SALERNO:  We're challenging the expert on pretty

14    much everything that Ms. Bembry referred to with respect to the

15    other experts that will be the subject of the joint motion.

16    Mr. Comras' testimony and reports are speculative, they opine

17    on our client's intent and state of mind in conducting various

18    transactions.  He attributes motives to transactions and

19    attributes almost fact transactions and ignores alternative

20    possible explanations.  He has legal conclusions, he is

21    parroting hearsay.  He is not applying expertise to his

22    parroting of the hearsay.

23         That's sort of the nub of it, your Honor.  And

24    relevance, of course, is also related to all of that.  And

25    relevance is where the fact that he, we say, adduces nothing

N6Q3TERC

1    that meets plaintiffs' burden, comes into play.  And he fails

2    to follow his own so-called methodology.  It's not much of a

3    methodology, but I don't think your Honor wants me to get too

4    much into the weeds about what either a summary judgment or a

5    Daubert motion would look like.  But that's the nub of it.

6            THE COURT:  Mr. Carter, can I turn to you.

7            MR. CARTER:  Yes, your Honor.

8            THE COURT:  My first question to you is do you think a

9    meet and confer could be productive and could it result in

10   compromise positions where the parties look at the bellwether

11   opinion and agree to exclude certain testimony that's already

12   set forth in the expert opinions?

13           MR. CARTER:  Well, your Honor, first, we obviously

14   take the meet and confer obligations and the purpose of the

15   meet and confer process very seriously.

16           With that said, based on what I just heard, it does

17   not seem very likely to be productive, simply because it seems

18   as though the defendants are eager to sort of launch wholesale

19   attacks on plaintiffs' experts that may not be tightly linked

20   to the parameters of your Honor's bellwether decision.  As a

21   consequence, I think we're going to spend a fair amount of time

22   having conversations that simply result in the defendants

23   saying but we think your expert should be excluded entirely so

24   we're still going to file a motion, and it may just be more

25   productive to have the motion and set reasonable limits on the

1   motion practice, so that the parties are properly incentivized

2   to focus the arguments they are making in accordance with your

3   Honor's prior decision.

4           THE COURT:  I think that's regrettably probably true.

5   My second question to you is if you have assurance that you

6   could raise challenges at trial, during a pretrial hearing,

7   after summary judgment, do you think on your end you could move

8   forward with summary judgment without the need to address

9   Daubert challenges?

10          MR. CARTER:  Your Honor, that is our view.  Obviously

11  we don't think that the defendants' experts can serve to

12  overcome the existence of a genuine issue of material fact.  So

13  we don't see the exclusion of their opinions as being essential

14  or critical to summary judgment.  And to the extent there is

15  isolated instances in which they are, we can deal with them

16  there.

17          THE COURT:  Okay.  That helps some.  Okay.

18          I think I am going to take all this under advisement

19  and issue an order in the coming days, with the assumption that

20  the plaintiffs will reserve any challenges to defendants'

21  experts to a pretrial procedure following summary judgment.

22  And that the only motions that are going to be filed at this

23  time will be defendants' motions challenging the plaintiffs.

24          MR. MOHAMMEDI:  This is Omar Mohammedi.  Can I say

25  something?

N6Q3TERC

1          THE COURT:  Yes.

2          MR. MOHAMMEDI:  One of the reasons why we did not

3     challenge many of the experts that plaintiff presented is

4     because we didn't have enough pages to use to be able to

5     challenge them.  And one of the most important expert that has

6     been involved with plaintiffs since 2004 is Kohlmann, Evan

7     Kohlmann.  And we felt that even though we are really going to

8     follow your guidance, we thought because of this case, it is

9     not about fact.  And I agreed with Mr. Carter that it is not

10    about fact.  It is mostly about experts.  We do believe experts

11    is the most important component of this case.  And defense

12    counsel may need to have an opportunity to challenge them.  And

13    we thought because of that, and plus, in the last round, we had

14    40 pages where plaintiffs had 50.  As you said, as a matter of

15    fairness, we're hoping to get 50 pages this time to challenge

16    specifically Kohlmann and others.  And we are hoping that you

17    will take that into consideration as well for us to be able to

18    have full opportunity to challenge those experts as a matter of

19    fairness, so defendants are not prejudiced with respect to

20    those charges.

21         THE COURT:  I assume Evan Kohlmann is one of the two

22    experts that will be part of the consolidated motion?

23         MR. MOHAMMEDI:  Correct, your Honor.  That's the

24    reason why we did not want to challenge him in the first place.

25    It was too much for us to deal with for those limited pages and

N6Q3TERC

1    we all separately and together have a lot at stake with respect

2    to Evan Kohlmann.

3              THE COURT:  Understood.  Thank you.  All right.  This

4    was a helpful conference.

5              Does anyone on the plaintiffs' side have anything else

6    they want to say?

7              Anyone on the defendants' side have anything else they

8    want to add?

9              All right, everybody.  Thank you very much.  I

10   appreciate your time.  We are adjourned.

11             (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25