UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

    TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001

-----------------------------------------------------------------X

03-MD-01570 (GBD)(SN)

**REPORT & RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:

    Burnett, et al. v. The Islamic Republic of Iran, et al., No. 15-cv-09903

    Three plaintiffs in Burnett v. The Islamic Republic of Iran, No. 15-cv-09903 (the "Burnett VII Plaintiffs"), move for partial final default judgments against Iran for personal injuries sustained in the 9/11 Attacks. See ECF Nos. 8917, 8918, 8919, 8921, 8922.[1] The Court recommends granting their motion in part.

## DISCUSSION

    The Court assumes familiarity with this case and discusses only the background relevant to this Report and Recommendation.

    The Burnett VII Plaintiffs ask the Court to enter a default judgment against Iran granting them pain and suffering damages, prejudgment interest, and leave to seek punitive or other damages later. The Court previously entered a default judgment as to liability under 28 U.S.C. § 1605A in their case, so the only open question is damages. See ECF No. 3443.

---

[1] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

The Court's Report and Recommendation in Burnett I, ECF No. 5879, established a framework for assessing personal injury damages. See id. at 2–10. This framework divides injuries into three categories with expected damages for each: a baseline award ($7,000,000) for "severe" injuries, a downward departure ($5,000,000) for "significant" injuries, and an upward departure ($10,000,000) for "devastating" injuries. Id. at 6–10. For rare individuals with exceptionally traumatic injuries, the Court has recommended damages above $10 million. See, e.g., ECF No. 5909 at 12–13 (awarding damages of $25,000,000 where the plaintiff's injuries were "beyond devastating"). Conversely, "[t]he absence of medical records supporting and providing further information regarding an affiant's claims may support a downward departure in an award determination." ECF No. 5879 at 9. The Court has used this framework to analyze numerous motions for personal injury damages and applies it to each of the Burnett VII Plaintiffs. See, e.g., ECF Nos. 5888, 5909, 5914, 5915, 5932, 7142, 7323, 8258, 8266, 9168.

**I.    Anex Joseph Desinor**

Anex Joseph Desinor was at the World Trade Center Marriot, where he had worked for close to 20 years, when a passenger jet struck the North Tower on September 11, 2001. See ECF No. 8919-2 at ¶ 4. The impact shook the whole building, and everyone ran for cover. See id. at ¶ 5. Mr. Desinor made it to a stairwell where a mob of people evacuating the hotel pinned him against a handrail, injuring the right side of his body. See id. at ¶ 6. Then, as he exited the building into "a thick cloud of dust," he was struck by falling debris and eventually fell to the concrete. Id. at ¶ 7. "Dozens of people trampled over" him, injuring his back, right hip, and right leg. Id. at ¶¶ 7, 10. He was later diagnosed with post-traumatic stress disorder ("PTSD"), asthma, esophageal reflux, and prostate cancer linked to the 9/11 Attacks. See id. at ¶ 10. Mr. Desinor's conditions are documented in medical records and September 11th Victim Compensation Fund ("VCF") eligibility determination letters. see ECF No. 8921-2 at 10–19 (medical records), 20

(VCF letter), 31 (same); see also ECF No. 8901 at 10–11, adopted at ECF No. 9274 (explaining that VCF approvals establish that a condition was caused by the 9/11 Attacks for purposes of § 1605A). There is no indication that his injuries required surgery or other invasive interventions. The Court therefore considers Mr. Desinor's injuries significant, not severe, and recommends awarding him $5,000,000. See, e.g., ECF No. 8258 at 10–11, 11 n.5 (recommending an award of $5,000,000 to a plaintiff who "suffered injuries to his right knee, neck, and back, chronic rhinitis, asthma, obstructive airway disease, GERD, and PTSD," even if the Court credited the plaintiff's reported prostate cancer).

## II. Kevin M. Shea

Kevin M. Shea, a firefighter with FDNY's Ladder 35, was off duty on September 11, 2001. See ECF No. 8919-3 at ¶ 4. But when he heard that two planes had struck the Twin Towers, he joined his colleagues racing to the scene. See id. Mr. Shea had just arrived in the South Tower's lobby, lugging a firehose, when another firefighter screamed that the building had begun to collapse. See id. at ¶ 5. Mr. Shea dropped his equipment and ran out of the building, dodging falling debris. See id. at ¶ 5–6. As the South Tower imploded, he was "blown off his feet." Id. at ¶ 7 (cleaned up). Debris pummeled his head and neck, but he "somehow managed to crawl about two hundred feet before [he] collapsed." Id. Rescue workers found him unconscious and covered in rubble. See id. at ¶ 8. Mr. Shea had sustained a cervical neck injury, a vertebral fracture, bone and tendon injuries in both hands, bilateral testicular loss, an abdominal injury, a bruised kidney, and a torn rotator cuff. See id. at ¶ 9. Several of his injuries required surgery. See id. In the aftermath of the Attacks, Mr. Shea experienced amnesia and PTSD. See id.; ECF No. 8921-3 at 18–31. Medical records and contemporaneous reporting confirm these conditions. See ECF No. 8921-3 at 8–14, 18–31. Mr. Shea's injuries were "severe," so the Court recommends

3

awarding him $7,000,000. See ECF No. 5879 at 7 (defining severe injuries to include "multiple broken bones" or "trauma requiring significant or multiple surgeries").

### III. Raymond E. Streker

Raymond E. Streker[2] was a commodities broker working in 7 World Trade Center on September 11, 2001. See ECF No. 8919-4 at ¶ 4. When he "heard loud explosions" that morning, he "left [his] office to escape from the area." Id. at ¶ 5. As he fled, debris struck his right knee and he fell to the ground. See id. at ¶ 7. Weeks later, he was diagnosed with a "medial meniscus" tear and a "high grade partial ACL tear." ECF No. 8921-4 at 16. He ultimately received two reconstructive surgeries for these injuries, as confirmed by medical records. See id. at 10–14; ECF No. 8919-4 at ¶ 8. Mr. Streker also reports lung scarring, shortness of breath, asthma, sinusitis, and PTSD related to the Attacks, see ECF No. 8919-4 at ¶¶ 8, 12, but the Court was unable to locate medical records confirming these conditions. Even if it could, the Court's assessment would be the same: Mr. Streker's injuries are significant, not severe. That finding tracks those the Court made for other plaintiffs who suffered knee injuries that eventually required multiple surgeries. See, e.g., ECF Nos. 5888 at 9–10 (categorizing as "significant" the injuries of a plaintiff who needed two surgeries to treat torn menisci in both knees), 7323 at 15–16 (same as to plaintiff who needed four surgeries to treat derangement of the meniscus). The Court therefore recommends awarding Mr. Streker $5,000,000.

### CONCLUSION

The Court recommends granting the Burnett VII Plaintiffs' motion and awarding pain and suffering damages to:

- Anex Joseph Desinor in the amount of $5,000,000;

---

[2] The Burnett Complaint refers to this plaintiff as "Rasmond E. Streker." See No. 15-cv-09903, ECF No. 53 at 350. Counsel should file a motion to correct this apparent typographical error.

- Kevin M. Shea in the amount of $7,000,000; and
- Raymond E. Streker in the amount of $5,000,000.

These plaintiffs should be awarded prejudgment interest on their damages from September 11, 2001, through the date of judgment at a rate of 4.96 percent per annum, compounded annually. See ECF No. 3362. They may apply for punitive, economic, or other damages later, consistent with future Court rulings on this issue. All other Burnett plaintiffs may submit applications for damages in later stages.

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   October 2, 2023
         New York, New York

\*          \*          \*

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). These objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).