UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03-MD-01570 (GBD)(SN)<br>ECF Case |

This document relates to:

*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, 02-cv-06977
*Gladys H. Salvo, et al. v. Al Qaeda Islamic Army, et al.*, 03-cv-05071
*Federal Insurance Co., et al. v. Al Qaida, et al.*, 03-cv-06978
*Thomas E. Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 03-cv-09849
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 04-cv-01923
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, 04-cv-05970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, 04-cv-07065
*Euro Brokers Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 04-cv-07279
*Maher, et al. v. Islamic Emirate of Afghanistan a/k/a The Taliban, et al.*, 1:23-cv-02845

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS'[1] JOINT MOTION TO EXCLUDE THE EXPERT TESTIMONY OF
EVAN KOHLMANN AND MATTHEW LEVITT**

---

[1] "Defendants" means World Assembly of Muslim Youth and World Assembly of Muslim Youth International ("WAMY"), International Islamic Relief Organization ("IIRO"), Muslim World League ("MWL"), the four "Charity Officer Defendants" (Abdullah Omar Naseef, Abdullah bin Saleh al Obaid, Abdullah Mohsen al Turki, and Adnan Basha), and Yassin Kadi. "Charity Defendants," as used herein, WAMY, IIRO and MWL collectively.

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

ARGUMENT .......................................................................................................................... 1

I.      KOHLMANN SHOULD BE EXCLUDED ...................................................................... 1

         A.      Prior Court Decisions Do Not Require Kohlmann's Qualification Here ............... 1

         B.      Kohlmann Is Either Extremely Careless or Dishonest With His Credentials .......... 2

         C.      Kohlmann Lacks the Expertise to Opine on Defendants' Financial Practices ........ 3

         D.      Kohlmann Lacks the Expertise to Opine that the Organizational Structures of Islamic Charities in Saudi Arabia Evidence Support for Al Qaeda ........................ 4

         E.      Kohlmann's Testimony on Islam and Religion Should Be Excluded .................... 5

         F.      Kohlmann's Troubling Pattern of Manufacturing and Manipulating Evidence ...... 6

         G.      Kohlmann Manipulated Facts To Create Terror Links That Did Not Exist ........... 7

         H.      Kohlmann's Legal Conclusions Should Be Excluded ............................................ 8

         I.       Kohlmann's Testimony as to State of Mind Should Be Excluded ......................... 9

         J.       Kohlmann's Hearsay Testimony Should Be Excluded ......................................... 10

         K.      Much of Kohlmann's Testimony Is Not Relevant ................................................. 12

         L.      Plaintiffs Cannot Save Kohlmann's Speculation About Financial Documents ..... 13

         M.      Kohlmann's Evidentiary Analyses Are Lacking ................................................... 14

II.     LEVITT SHOULD BE EXCLUDED ............................................................................. 15

         A.      Levitt's Testimony Violates Fed. R. Evid. 403 ..................................................... 15

          B.      Levitt's Impermissible Legal Conclusions Should Be Excluded .......................... 17

          C.      Levitt's Hearsay Testimony Should Be Excluded ................................................ 17

D.      Levitt Offers Irrelevant Testimony ..........................................................................18

E.      Levitt Opines Beyond His Expertise.........................................................................19

F.      Levitt Comments on WAMY with No Analysis, Merely Repeating Hearsay.......20

CONCLUSION....................................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AU New Haven, LLC v. YKK Corp.*,
No. 15-CV-3411 (GHW)(SN), 2019 WL 1254763 (S.D.N.Y. Mar. 19, 2019),
*objections overruled*, No. 1:15-CV-3411-GHW, 2019 WL 2992016 (S.D.N.Y.
July 8, 2019).............................................................................................................................12

*Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.* No. 09 Civ.
686 (SAS), 2011 WL 6288415 (S.D.N.Y. Dec. 15, 2011) .................................................9, 10

*Chill v. Calamos Advisors LLC*,
417 F. Supp. 3d 208 (S.D.N.Y. 2019)......................................................................................2

*ECD Inv'r Grp. v. Credit Suisse Int'l*,
No. 14-CV-8486 (VM)(SN), 2017 WL 3841872 (S.D.N.Y. Sept. 1, 2017)............................7

*Estate of Hirshfeld v. Islamic Republic of Iran*,
330 F. Supp. 3d 107 (D.D.C. 2018) ...................................................................................9, 17

*Hygh v. Jacobs*,
961 F.2d 359 (2d Cir. 1992).....................................................................................................9

*Jakobovits as Tr. of Lite Tr. I v. PHL Variable Ins. Co.*,
No. 17-cv-3527, 2022 WL 17415078 (E.D.N.Y. Dec. 5, 2022)............................................20

*In re Mirena IUD Prod. Liab. Litig.*,
169 F. Supp. 3d 396, 471-72 (S.D.N.Y. 2016) ............................................................. *passim*

*Owens v. Republic of Sudan*,
864 F.3d 751 (D.C. Cir. 2017)......................................................................................4, 14, 17

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004)......................................................................................9

*Scott v. Chipotle Mexican Grill, Inc.*,
315 F.R.D. 33 (S.D.N.Y. 2016) .............................................................................................12

*M.B. ex rel. Scott v. CSX Transportation, Inc.*,
130 F. Supp. 3d 654 (N.D.N.Y. 2015)......................................................................................7

*In re: Term Commodities Cotton Futures Litig.*,
No. 12-cv-5126 (ALC), 2020 WL 5849142 (S.D.N.Y. Sept. 30, 2020).................................10

*In re Terrorist Attacks on Sept. 11, 2001*,
   298 F. Supp. 3d 631 (S.D.N.Y. 2018) ......................................................................13

*In re Terrorist Attacks on Sept. 11, 2001*,
   718 F. Supp. 2d 456 (S.D.N.Y. 2010), *aff'd on other grounds,* 714 F.3d 109
   (2d Cir. 2013) ........................................................................................................13

*In re Terrorist Attacks on Sept. 11, 2001*,
   No. 03-MDL 1570 (GBD) (SN), 2023 WL 2430381 (S.D.N.Y. Mar. 9, 2023) .....................13

*United States v. Daly*,
   842 F.2d 1380 (2d Cir. 1988) ................................................................................20

*United States v. Damrah*,
   412 F.3d 618, 625 n.4 (6th Cir. 2005) ...................................................................17

*United States v. Hassan*,
   742 F.3d 104 (4th Cir. 2014) ...................................................................................5

*United States v. Hossain*, 579 F. Supp. 3d 477 (S.D.N.Y 2022) ...................................................11

*United States v. Kabir*,
   No. 5:12-cr-00092 (C.D. Cal. July 7, 2014), ECF No. 433 ................................2, 3

*United States v. Rios*,
   830 F.3d 403 (6th Cir. 2016) ................................................................................19

*United States v. Sabir*,
   No. S4 05 Cr. 673(LAP), 2007 WL 1373184 (S.D.N.Y. May 10, 2007) ................................9

**Rules**

Fed. R. Evid. 403 ..........................................................................................3, 15, 16

Fed. R. Evid. 702 ..........................................................................................20

**Other Authorities**

Alexander & Diviya Magaro Peer Pre-Review Program, https://pre-
   review.iq.harvard.edu/index.php/iqss/index ..........................................................3

J.P. Tennant, *et al.*, "A Multi-Disciplinary Perspective on Emergent and Future
   Innovations in Peer Review," ................................................................................3

*Merriam-Webster,* https://www.merriam-
   webster.com/dictionary/university%20press ..........................................................2

*Minor in Muslim-Christian Understanding,* Georgetown Univ., Walsh School of
Foreign Servs., https://acmcu.georgetown.edu/academics/minor-in-muslim-
christian-understanding/ ................................................................................................3

## INTRODUCTION

This Court made clear that its bellwether *Daubert* Opinion & Order "should guide the parties as they identify or move to exclude other expert witnesses."[2] Defendants have taken the Court's guidance to heart and endeavored to limit their challenges to Plaintiffs' remaining experts to instances when they cross the boundaries established by the Court.[3] Plaintiffs would have the Court shirk its gatekeeping responsibilities under *Daubert* and allow Evan Kohlmann and Matthew Levitt to opine on subjects as to which they are plainly not qualified, simply because they have been qualified to testify on different topics in different cases. Consistent with its bellwether Order, this Court should exclude opinions that cross the boundaries it established for expert testimony, including those that lack factual support, those that are outside the province of proper expert testimony, as well as those opinions that confuse the issues or present an unreasonable danger of unfair prejudice. Plaintiffs repeatedly attempt to reframe Defendants' arguments, claiming Defendants simply wish to dispute the facts. As detailed below, these claims could not be further from the truth. With the serious allegations levelled against Defendants, the stakes are too high to allow a jury to hear such unreliable, unsubstantiated, and otherwise improper testimony.

## ARGUMENT

**I.    KOHLMANN SHOULD BE EXCLUDED**

### A.    Prior Court Decisions Do Not Require Kohlmann's Qualification Here

This Court made clear that prior decisions that qualified an expert do not guarantee that expert's qualification in this case.[4] Yet, Plaintiffs ask this Court to abandon its gatekeeping duty

---

[2] ECF No. 9060 ("Order") at 2, 40.

[3] *Id.* at 40 ("the Court must … police the reliability of these experts' methods and factual premises" and opinions supported only by a witness's *ipse dixit* will be excluded); *see also id.* at 40-41 (finding that opinions outside the proper province of an expert's testimony, such as state of mind, will be excluded).

[4] Order at 16; *see also* ECF No. 9247 ("Brief") at 6 n.29.

because "numerous previous courts" have qualified Kohlmann.[5] But as Defendants' brief demonstrates, Kohlmann's career as a testifying expert was founded on lies and exaggerations about his qualifications, and his pattern of dishonesty about his qualifications, as well as his lack of germane expertise (educational or experiential), warrants disqualification in this case.

      B.      **<u>Kohlmann Is Either Extremely Careless or Dishonest With His Credentials</u>**

Federal law requires reliable expert testimony, and the need for it is particularly acute in a case with such high stakes. But Kohlmann is, at best, careless in the extreme, deceptive at worst, about his qualifications, and his disturbing pattern of carelessness and deception renders his opinions unreliable.[6] Plaintiffs downplay Kohlmann's mistakes in this and other cases as "inconsequential," arguing, in essence, that the errors are immaterial, isolated, or stale.[7] But discounting these acts and qualifying Kohlmann here disregards the bellwether Order's core tenets.

Even Plaintiffs' explanations of Kohlmann's "mistakes" betray him as uncareful with corrupted testimony that "demonstrate[s] a level of inattention and imprecision that raises…questions as to his qualifications."[8] None of Plaintiffs' rebuttals saves Kohlmann's credibility, but some warrant response. For instance, Plaintiffs explain that a university press "publishe[s] books in academia,"[9] even though *Merriam-Webster* and Kohlmann agree it must connect to a university.[10] Second, the Second Circuit's *Farhane* opinion is the result of

---

[5] ECF No. 9344 ("Opp'n") at 4-6. Plaintiffs claim that "Kohlmann has never been excluded, pursuant to *Daubert*, for lack of qualification or any alleged methodological flaw." *Id.* at 4-5. Not true. ECF No. 9345-24 at 10 ("Kohlmann cannot describe . . . the point at which his confidence level transforms the presence of these factors from purely subjective supposition to a reasonably reliable expert opinion."); Minutes (In Chambers) Order, 4-5, *United States v. Kabir*, No. 5:12-cr-00092 (C.D. Cal. July 7, 2014), ECF No. 433 (the Government has not sufficiently shown Kohlmann's methodology of constructing and refining the "homegrown terrorist" profile to be "reliable"); ECF 9250-7 at 28-29 (rejecting Kohlmann).

[6] *See* Brief at 2-6, 10-12.

[7] Opp'n at 4-12, 17-18.

[8] *Chill v. Calamos Advisors LLC*, 417 F. Supp. 3d 208, 252 (S.D.N.Y. 2019); *see also* Order at 4-5, 9.

[9] Opp'n at 6-7, n.11.

[10] https://www.merriam-webster.com/dictionary/university%20press ("a press connected with a university and especially concerned with the publication of scholarly works"); Excerpts of Kohlmann Dep. Tr., attached to the Second

Kohlmann's inflating his undergraduate certificate to graduate coursework, not its cause.[11] This is aside from the absurdity that a few undergraduate classes could qualify an expert.

Third, Plaintiffs adopt Kohlmann's formal and informal peer review distinction and describe his obfuscations as candidness.[12] Concerning informal peer review, Plaintiffs explain that seeking comment from others is common, but their citation's scope is limited[13] and affirms that seeking peer review and blog posting are <u>not</u> equivalent, undermining Kohlmann.[14] So too is the Harvard program Plaintiffs identify, which uses blind scholarly review geared for publication,[15] a far cry from Kohlmann's sending his work to "a bunch of different people . . . encountered at conferences,"[16] which is hardly blind review. Kohlmann fails the standards for "academic integrity," is not careful in his professional work, and lacks the requisite expert credentials.[17]

### C.    Kohlmann Lacks the Expertise to Opine on Defendants' Financial Practices

Plaintiffs concede that Kohlmann lacks the education and training to opine on the financial

---

Declaration of Aisha Bembry ("Second Bembry Decl.") as Ex. 44 at 93:24-94:9 ("Q. You know what a university press is, don't you? A. Well, it would be attached to university. . . . Q. That's right, and Berg is not? A. No, it is not affiliated with a university, no, it is not.").

[11] The course, now a minor, requires only six classes, https://acmcu.georgetown.edu/academics/minor-in-muslim-christian-understanding/; ECF No. 9345-27 (showing six-course requirement for certificate).

[12] Opp'n at 9. For formal peer review, Plaintiffs cite Kohlmann's article on terroristic internet use and homegrown terrorists. *Id.* at n.28; *see* ECF No. 9250-6 at 5 (Evan Kohlmann, "Homegrown Terrorists: Theory and Cases in the War on Terror's Newest Front. Terrorism: What the Next President Will Face." The Annals of the Am. Academy of Pol. & Soc. Science., Vol. 618; No. 1. July 2008). But Kohlmann's "homegrown terrorist" profile was rejected on methodological and Rule 403 grounds. *Kabir*, ECF 433 at 4 (noting unfamiliarity "with basic terms and theories of social science research" and lack of "rigorous peer review" or "recognized social scientific tools . . . to control for bias or error"); *see supra* at 2 n.5. Plaintiffs also cite Congressional testimonies; there is no evidence they are peer reviewed. Moreover, Defendants did not argue that Kohlmann has no peer reviewed work. *See* Brief at 4-5. Finally, Plaintiffs note his book was used in universities, Opp'n at 10 n.32, but that was last in 2008, ECF 9250-6 at 4.

[13] J.P. Tennant, *et al.*, "A Multi-Disciplinary Perspective on Emergent and Future Innovations in Peer Review," Version 3, PMC PubMed Central, § 1 (Nov. 29, 2017) https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5686505/ ("exclusively addressing peer review in the context of manuscript selection for scientific research articles"; holistic discussion of all forms of peer review beyond scope).

[14] *Compare id.* § 1.1.4 (peer review is "unique way of assigning credit to authors and differentiating research publications from other types of literature, including blogs, media articles, and books") *with* Brief at 4-5 (postings online as peer review). The "formalizing process" and past "civil, collegial discussion" Plaintiffs cite refer to the 1660s. *Id.* at § 1.1.1. Plaintiffs also point to Table 2's pre-peer review commenting, but that is not a Kohlmann phrase. Notably, the Tennant article underwent peer review and revision. *Id.* § Peer Review Summary.

[15] Alexander & Diviya Magaro Peer Pre-Review Program, https://pre-review.iq.harvard.edu/index.php/iqss/index.

[16] ECF No. 9250-43 at 33:14-24; *see* Brief at 4-5; *id.* at 4, nn18-19.

[17] Brief at 3 (citing Order at 4-5, 9, 32).

practices of the Charity Defendants,[18] but contend that he has the requisite experience because he "looked at accounting documents that have been recovered in investigations" and "you know, helped examine them or even just studied them on the side."[19] But the case law Defendants cite, which Plaintiffs ignore, requires that an experience-based expert have *actual experience* – such as performing an audit – to be qualified, not "on the side" study.[20] Plaintiffs undermine Kohlmann, contending that he need not study legitimate charities to understand illegitimate ones.[21] But, just as a doctor must understand wellness to diagnose disease, without this threshold knowledge, Kohlmann cannot contrast a legitimate charity from one that supports al Qaeda, and his opinions on perceived "[f]inancial irregularities and atypical accounting practices" are beyond his ken.[22]

### D.   Kohlmann Lacks the Expertise to Opine that the Organizational Structures of Islamic Charities in Saudi Arabia Evidence Support for Al Qaeda

Despite Kohlmann's admission that he is not qualified to speak about the organizational structures of non-US charities,[23] Plaintiffs argue he is so qualified because of various experiences,[24] but have proffered nothing showing Kohlmann has knowledge or experience to opine that "[t]he organizational and financial structures of the MWL, IIRO, and WAMY are evidence that their material support of al Qaeda and affiliated organizations was conducted with the awareness and knowledge of the senior officials who headed those organizations."[25] He has no knowledge of or experience with the structures of Saudi charities, nor has he shown how such

---

[18] Opp'n at 12-13. Kohlmann admits he lacks qualifications to opine on accounting and financial audits. Brief at 7.
[19] Opp'n at 13 (*See* ECF No. 9250-43 at 715:16-24). Plaintiffs also assert, without citation, that Kohlmann has conducted numerous financial examinations of entities that have supported terrorism. *Id.*
[20] Brief at 7-8 & n.39. By contrast, this Court admitted Johnathan Marks ("Marks") to opine on financial documents due to his education and experience as a forensic accountant. Order at 34-35.
[21] Opp'n at 12-13. Plaintiffs also cite to past decisions qualifying Kohlmann, *id.* at 13, but those opinions do not control, *see supra* at § I.A. Moreover, *Owens* involved a default judgment and thus no *Daubert* challenge or jury trial.
[22] Brief at 7-8. Plaintiffs also cite an article by Kohlmann as evidence of his expertise. Opp'n at 13 n.40. That irrelevant article recycles his arguments; he lacked the qualifications then, he lacks them now, and he still must satisfy *Daubert*.
[23] Brief at 8-9; ECF No. 9250-43 at 186:16-22.
[24] Opp'n at 13-15.
[25] ECF No. 9250-2 at ¶ 17.

structures inherently show knowing material support for al Qaeda. Kohlmann's generalized statements that charities can be abused for terrorist financing starkly differ from the type of detailed analysis of a particular charity's structures that might justify such an opinion. His opinion on this issue thus violates the Court's boundary in that it is "supported only by the witness's *ipse dixit.*"[26]

### E.   Kohlmann's Testimony on Islam and Religion Should Be Excluded

Kohlmann's experience does not support Plaintiffs' attempt to defend his opinions on Islamic principles, namely that any "jihad" is "violent jihad" and any advocacy of a conservative strain of Islam is "violent extremist indoctrination."[27] Kohlmann's formal education was not, as Plaintiffs suggest, on Islamic principles and Islam. His certificate is a six-course *undergraduate* program for students interested in "relations between Muslims and Christians."[28] It is a certificate in "Islam & Muslim-Christian Understanding," not in "Islam."

The cases Plaintiffs cite do not help them.[29] Allowing Kohlmann to explain general words and phrases "commonly used by persons practicing extreme Islam"[30] is very different from allowing him to explain complex Islamic principles, including how the word "jihad" is used in a particular context by a particular speaker or writer, and how a particular set of beliefs in a conservative strain of Islam constitute "violent extremist indoctrination."[31] Further, Kohlmann's purported "expertise in Islamic extremism,"[32] in no way qualifies him to interpret, let alone understand, words from a popular song about an important event in Islamic history included in a

---

[26] Order at 40.
[27] Opp'n at 15-17 (defending Kohlmann's use of the terms); *but see* Brief at 9; ECF No. 9250-2 at ¶¶ 36, 71, 160-161, 164, 182, 183, 204-206 (using "violent extremist indoctrination" and similar phrases).
[28] ECF No. 9345-27.
[29] Opp'n at 16-17.
[30] *See Id.* at 17.
[31] ECF No. 9250-2 at ¶ 161; *See United States v. Hassan,* 742 F.3d 104, 130-31 (4th Cir. 2014) (Kohlmann allowed to testify on "various aspects of Islamic extremism," but not as an expert on Islam).
[32] Opp'n at 16.

WAMY camp handbook.[33] Indeed, he impermissibly opines on WAMY's state-of-mind based on his ignorance of Islam.[34]

### F.   Kohlmann's Troubling Pattern of Manufacturing and Manipulating Evidence

Disturbingly, Kohlmann "mistakenly" concluded that a 9/11 hijacker was an IIRO employee and cited this as evidence that IIRO was linked to al Qaeda.[35] Plaintiffs minimize this egregious fabricated link, emphasizing that Kohlmann corrected himself after defense counsel revealed his error.[36] While Defendants admittedly overlooked the correspondence correcting Kohlmann's report, the fact that Kohlmann repeatedly makes such indefensible "mistakes" renders him unreliable.[37]

Defendants demonstrate that Kohlmann's assertion that IIRO "offered" militants fraudulent employment and documents was intended to ascribe wrongful conduct *to IIRO*, not foreign fighters.[38] Yet Kohlmann's cited document refers only to the "detainee's intention" to join a relief organization and says nothing of IIRO's purported intention to "offer[]" ID cards.[39] This is no quibble with word choice, as Plaintiffs suggest.[40] Plaintiffs steadfastly ignore that Kohlmann's mischaracterization of evidence was meant to prop up a faulty conclusion.

There are other similar instances of grossly misleading statements, none of which Plaintiffs

---

[33] A copy of the entire camp song is attached to the Second Bembry Decl. as Ex. 45. *See* Blankinship Rpt, attached to the Second Bembry Decl. as Ex. 46 at 44-45. Khalid Blankinship, a professor and expert in Islamic Studies at Temple University, offers the historical, political and social background and importance of the song, something Kohlmann cannot do. Indeed, *La Marseillaise*, the French national anthem, "…contains explicitly bloody lyrics" which is not itself evidence that France supports terrorists. The lyrics to *La Marseillaise* may be found at https://www.diplomatie.gouv.fr/en/coming-to-france/france-facts/symbols-of-the-republic/article/the-marseillaise.

[34] *See infra* § I.I.; Order at 13 (excluding Jenkins state of mind testimony) at 21-22 (excluding Winer).

[35] Brief at 10. Plaintiffs incorrectly (and without citation) state that Fayez Alshehri is an "IIRO employee." Opp'n at 18. The evidence relied upon by Kohlmann is silent as to whether Alshehri ultimately gained employment at IIRO or not. Plaintiffs provide no other evidence reflecting that Alshehri was in fact an IIRO employee.

[36] Opp'n at 18.

[37] Defendants cited *Konrick* for the proposition that "mischaracterizing the contents of a source is grounds for exclusion," not that it was the sole ground for exclusion, as Plaintiffs imply. Brief at 10 n.54; Opp'n at 17-18.

[38] Brief at 12; Opp'n at 19.

[39] Brief at 12.

[40] Opp'n at 19-20.

can justify. With respect to Kohlmann's omission of the exculpatory language "not for financing terrorism" when quoting a report discussing the reasons the government closed some of the Charity Defendants' offices, Plaintiffs claim that the phrase was "extraneous" in context.[41] But the associated heading in his report states: "The Saudi Government Position On the Role of Islamic Charities *in Supporting Al-Qaida*."[42] Kohlmann's use of ellipses to obscure the essential qualifying phrase "not for financing terrorism" completely misrepresents the sentence's meaning. Similarly, with respect to the Canadian Revenue Agency's report and investigation into WAMY-Canada, Kohlmann deliberately omits that the CRA's report concerned WAMY's tax-exempt status and had nothing to do with terrorism.[43] The same deliberate misrepresentation, which Plaintiffs now deny,[44] is found when Kohlmann repeats twenty-one times[45] that WAMY's subsidiary, Lajnat Al Bir Al-Islamiyya (LBI), published "Arab Volunteers of Afghanistan" when it did not. These errors are not "minor flaws"; they are "large enough that the expert lacks good grounds for his or her conclusions," warranting exclusion.[46]

### G.    Kohlmann Manipulated Facts To Create Terror Links That Did Not Exist

Where Kohlmann is not misrepresenting evidence, all he has left is his *ipse dixit* and that "is not enough."[47] Plaintiffs try to explain away Kohlmann's data manipulation with arguments

---

[41] *Id*. at 18.

[42] ECF No. 9250-5 at ¶¶ 45-46 (emphasis supplied); *see also* Brief at 11-12.

[43] ECF No. 9250-43 at 713:3-19 (conceding that CRA's purpose was to determine WAMY's tax exempt status).

[44] Opp'n at 20-21 Plaintiffs claim Kohlmann never said WAMY published "Arab Volunteers in Afghanistan" but only that Adel Batterjee wrote it. His report belies this claim.

[45] ECF No. 9250-2 at ¶ 19 n.5; ¶ 29 n.27; ¶ 33 nn.37, 39; ECF No. 9250-5 at ¶ 2 n.2; ¶ 8 nn.5-6; ¶ 9 nn.7-10; ¶ 10 nn.11-12; ¶ 11 n.13; ¶ 13 nn.16, 18; ¶ 14 nn.19-20; ¶ 15 n.21; ¶ 19 n.24; ¶ 20 n.27; ¶ 31 n.46. In each case, he cites the book as "Muhammad, Basil. *Al-Ansaru l'Arab fi Afghanistan* The Committee for Islamic Benevolence Publications (© 1991)." The "Committee" refers to LBI. *See* Brief at 13.

[46] *M.B. ex rel. Scott v. CSX Transportation, Inc*., 130 F. Supp. 3d 654, 665 (N.D.N.Y. 2015); *see* Opp'n at 18, n.58 (minor flaws).

[47] Order at 32 (when all an expert has is his say so, it is insufficient proof to back an opinion); *ECD Inv'r Grp. v. Credit Suisse Int'l*, No. 14-CV-8486 (VM)(SN), 2017 WL 3841872,*14 (S.D.N.Y. Sept. 1, 2017) (excluding an expert for failing to consider evidence known to him that would have changed his report).

lacking evidentiary support[48] and irrelevant materials Kohlmann never relied upon.[49]

Defendants would have no quarrel if all Kohlmann did was state the fact that Abdullah bin Laden was formerly the head of WAMY's USA chapter.[50] Instead, Kohlmann disingenuously repeatedly invokes the common last name to establish a link to al Qaeda without a shred of evidence Abdullah had anything to do with Osama.[51] Plaintiffs similarly fabricate WAMY's "knowledge" of Anwar al-Awlaki's nascent and hidden radicalism, relying on a clandestine FBI investigation with no evidence that WAMY was or could have been aware of it.[52] If the U.S. Government viewed al-Awlaki as a moderate, despite having him under investigation, absolutely nothing suggests, as Plaintiffs and Kohlmann argue without evidence, that WAMY could anticipate al-Awlaki's radicalism years in the future. Further, Kohlmann never considered the FBI documents Plaintiffs cite and there is no evidence the reports or the information they contain were publicly available at the time.[53]

### H.    Kohlmann's Legal Conclusions Should Be Excluded

Plaintiffs ignore the Court's directive that "[e]xperts…must refrain from offering legal conclusions…this means avoiding characterizations of a Defendants' conduct as providing 'material support' to Al Qaeda."[54] Despite Plaintiffs' spin, Kohlmann's conclusions on "material support" are not only factually baseless,[55] but impermissible legal conclusion to be excluded. Such opinions are completely Kohlmann's *ipse dixit* and go to an element at the heart of this case.

---

[48] Opp'n at 21-23 (Abdullah Bin Laden terror link explained as not having been made); *id.* at 22 (Buraik is conceded as not a WAMY employee but alternative connections, that he spoke at WAMY camps, are presented).
[49] Opp'n at 22-23 (al-Awlaki's publicly known positive media coverage is never challenged).
[50] *Id*. at 22.
[51] Brief at 13-14.
[52] Opp'n at 22-23. Kohlmann did not cite the FBI surveillance logs and they should be stricken.
[53] Ex. 44 at 626:16-627:8 (Kohlmann could not cite any "publicly disseminated writing by al-Awlaki in the United States prior to his departure in 2002 where [Awlaki] advocated support for Al-Qaida."); *id*. at 627:9-628:12 (Kohlmann does not cite to any lecture or tapes advocating support for al Qaeda or terrorism prior to 2002).
[54] Order at 40.
[55] Brief at 16; ECF No. 9250-2 at ¶ 206; Opp'n at 25, n.84 (Kohlmann opines without evidence that WAMY provided material support to al Qaeda including "diversion of money, weapons, and [production] of travel documents …."

Plaintiffs excuse this testimony, arguing that "material support" is a "term of art" used by experts in Kohlmann's field. Even if true, Plaintiffs cite no authority for a "term of art" exception to the rule, nor is there any, and for good reason. The rule prevents experts from "invad[ing] the judge's authority to tell the jury what the law is," and "usurp[ing] the jury's function to apply the law to the facts."[56] The authorities that Plaintiffs cite do not support their argument.[57]

## I.   Kohlmann's Testimony as to State of Mind Should Be Excluded

Plaintiffs argue that Kohlmann's testimony fits into an "exception" to the rule against state-of-mind testimony by an expert, allowing an expert to "testify as to whether a given practice is consistent with a given state of mind."[58] But that is not his testimony. Kohlmann testifies to individuals' and organizations' specific states of mind or intent, including what senior MWL, IIRO, or WAMY officials were allegedly aware of or knew, and the intent behind certain actions.

This is the type of state of mind testimony that was excluded in the case that Plaintiffs cite. *Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.* excluded expert testimony that defendant "relied blindly" on certain information, and that individuals were "untroubled" by certain events, "understood neither the odds nor the game," "appeared to assume" they had certain options, and "hoped for the best."[59] The court found that these statements "impermissibly draw[] inferences as to [] state of mind," a function that is "properly reserved for the finder of fact."[60] Kohlmann's statements about senior officials "feign[ing] ignorance," being "well aware," having

---

[56] Order at 6 (quoting *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992), 21 (quoting *United States v. Zhong*, 26 F.4th 536, 556 (2d Cir. 2022)); *see also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004).

[57] One was a default judgment arising out of litigation in which Iran did not appear or participate in any way, and thus there were no challenges to any expert testimony. *Estate of Hirshfeld v. Islamic Republic of Iran*, 330 F. Supp. 3d 107 (D.D.C. 2018). In the other, Kohlmann testified only as to facts that would "assist [the *jury*] in determining whether the Government ha[d] proven that Dr. Sabir provided material support or resources to al Qaeda." *United States v. Sabir*, No. S4 05 Cr. 673(LAP), 2007 WL 1373184, at *11 (S.D.N.Y. May 10, 2007).

[58] Opp'n at 25 & n.88.

[59] No. 09 Civ. 686 (SAS), 2011 WL 6288415, at *8-9 (S.D.N.Y. Dec. 15, 2011).

[60] *Id.*

"awareness and knowledge," engaging in "wishful thinking," "attempt[ing] to limit their exposure," and taking actions "[i]n order to evade" law enforcement,[61] are strikingly similar to the testimony excluded in *Bd. of Trustees*. Plaintiffs only other authority, *In re: Term Commodities Cotton Futures Litig.*, also supports exclusion of expert testimony about defendants' motivations.[62] So, too, should the Court exclude such testimony here. Likewise, opinions on what WAMY knew from pre-2002 contacts with Anwar al Awlaki, what speakers meant by the use of words such as jihad, or the WAMY song, and pejoratively labeling the Charity Defendants as "shadowy,"[63] must be excluded as they impute a state of mind.

### J.    Kohlmann's Hearsay Testimony Should Be Excluded

Plaintiffs mischaracterize Defendants' hearsay objections as "factual disputes." Defendants, consistent with the bellwether Order, argue that hearsay without "synthes[is]" or "interpret[ation]" is impermissible.[64] As the Court noted, "relying on hearsay and 'regurgitat[ing]' hearsay are two different things," and here, Kohlmann repeatedly "regurgitat[es]" hearsay.[65]

Plaintiffs argue that an expert's report must be viewed as a whole,[66] *i.e.*, extensive block quotes are acceptable so long as there is analysis *somewhere* in Kohlmann's reports. But that is not what this Court concluded in the bellwether Order. The Court concluded that "Winer cannot testify to the portions of his opinion that consist of extended quotes from a single hearsay source without any analysis."[67] That is because each hearsay passage must be viewed separately to determine whether the expert is "'gather[ing] information from multiple sources' and 'cross-

---

[61] ECF No. 9250-2 at ¶¶ 17, 58, 205, 206; ECF No. 9250-5 at ¶ 31.
[62] No. 12-cv-5126 (ALC), 2020 WL 5849142, at *14 (S.D.N.Y. Sept. 30, 2020).
[63] Opp'n at 22 (Awlaki), 17 (jihad), 16 (WAMY song); *see, e.g.* ECF 9250-2 at ¶¶ 17, 158, 160-161, 182-183, 187, 204-206.
[64] Order at 41.
[65] *Id.* at 13-14 (quoting *Strauss*, 925 F. Supp. 2d at 439).
[66] Opp'n at 46; ECF No. 9250-2 ¶ 129.
[67] Order at 23.

check[ing] factual information' against other accounts," rather than "merely repeat[ing] information [t]he[y] ha[ve] read or heard."[68] Nor should the Court credit Plaintiffs' suggestion that the exclusion of impermissible hearsay should wait until trial.[69] That approach is contrary to the directives of the bellwether Order, inefficient, and in conflict with the Court's "gatekeeping" role.

Defendants' brief identifies particularly egregious examples of impermissible hearsay, including extensive quotations from OFAC statements and the 9/11 Commission Report. Though Plaintiffs argue that Kohlmann "analyze[s]" and "contextualizes" this information,[70] in fact he "simply introduces the source."[71] Like Winer, Kohlmann is not "compiling [OFAC's or the 9/11 Commission's] findings with 'bits of information from different sources' to say something more;" but instead "all [Kohlmann] has to say on this subject is what [OFAC or the 9/11 Commission] has already said"; "the jury should hear it straight from [OFAC or the 9/11 Commission]."[72]

Plaintiffs further argue that extensive quotations from declassified CIA reports offered without analysis are permissible because the quotations are used "to show the sheer amount of evidence that exists tying Mohammed Jamal Khalifa to Al Qaeda and other terror groups."[73] But surely the jury can, and should, receive this evidence directly from the CIA reports, if admissible, and not from Kohlmann. Also unpersuasive is Plaintiffs' argument that Kohlmann had "no choice" but to quote a page and a half of text from "*video interviews*."[74] There is no "*video interviews*" exception to the rule against laundering hearsay. Furthermore, Kohlmann violates this rule when

---

[68] *Id.* at 14 (quoting *Abu-Jihaad*, 553 F. Supp. 2d at 126 and *Mejia*, 545 F.3d at 197).
[69] Opp'n at 47.
[70] *Id.* at 26; ECF No. 9250-2 ¶ 186.
[71] Order at 23.
[72] *Id.* (quoting *Mejia*, 545 F.3d at 198). An expert may not "establish[] the facts" in the case by summarizing factual material that "require[s] no specialized knowledge" and that the jury could understand independently if introduced into evidence. *Mejia*, 545 F.3d at 194-96.
[73] Opp'n at 29.
[74] *Id.* (emphasis in original).

he simply parrots Department of Defense and CRA reports.[75] He does not rely on them "as building blocks" or weigh them against other evidence.[76] Indeed, Plaintiffs point to no examples of that reliance or balancing.[77]

### K.        Much of Kohlmann's Testimony Is Not Relevant

Relevance turns on whether opinions are "directly relevant to resolving the legal claims at issue" and will "help determine Defendants' liability" as to the "core factual dispute: whether Defendants materially supported al Qaeda."[78] While *Twitter, Inc. v. Taamneh* did not address experts or *Daubert* standards, it addressed ATA aiding and abetting liability.[79] Plaintiffs purport to bring those claims, so *Taamneh* is central. It focuses the inquiry on the 9/11 attacks, not terrorists writ large, and renders the pre-al Qaeda, non-al Qaeda, and post-9/11 deeds Kohlmann mashes together irrelevant as to whether Defendants knowingly and substantially assisted the 9/11 attacks.

Testimony about publications and acts that long pre-date 9/11 and al Qaeda, acts that post-date 9/11, immigration raids, banking actions in 2004 and 2005, and the 1991 establishment of an IIRO office in the U.S. will not assist in resolving the question of liability.[80] Acts that post-date 9/11 by definition could not aid and abet it. And the notion that pre-9/11 charity to, or making statements in support of, Muslims involved in internationally recognized conflicts, such as in Chechnya and Kashmir, or Bosnia, where genocide and ethnic cleansing were occurring, makes it "more likely" that the Charity Defendants later supported al Qaeda is preposterous.[81] Disparate,

---

[75] Brief at 19.
[76] Opp'n at 27.
[77] *Id.*; *see also AU New Haven, LLC v. YKK Corp.*, No. 15-CV-3411 (GHW)(SN), 2019 WL 1254763, *30 (S.D.N.Y. Mar. 19, 2019) ("…parties also cannot use experts as a Trojan Horse of hearsay."), *objections overruled*, No. 1:15-CV-3411-GHW, 2019 WL 2992016 (S.D.N.Y. July 8, 2019); *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33 (S.D.N.Y. 2016) (expert not  allowed to rehash evidence he has no personal knowledge of).
[78] Order at 11, 27, 40.
[79] 598 U.S. 471 (2023).
[80] Brief at 22.
[81] *See id.* at 21-22; ECF No. 9250-2 at ¶¶ 82, 161, 167 (re Chechnya); at ¶¶ 164, 165, 201 (re Kashmir); Opp'n at 31.

aged, and post hoc acts are "far removed, both in time and place, from the 9/11 Attacks"[82] and

merely distract from the "core factual dispute."

### I.   Plaintiffs Cannot Save Kohlmann's Speculation About Financial Documents

Lacking qualifications to opine on the Charity Defendants' financial documents,

Kohlmann impermissibly guesses at their meaning, each time offering unsupported conclusions of

nefarious conduct. Defendants' brief demonstrates that Kohlmann failed to consider obvious

alternative explanations, analyzed only his preferred evidence, including evidence hand-picked by

counsel, and relied on tertiary sources over contradictory primary sources.[83]

Plaintiffs fail to rebut any of Defendants' *actual* arguments, including that Kohlmann: (a)

failed to provide a single example of funds flowing directly to al Qaeda from the Charity

Defendants; (b) failed to substantiate the claim that the charities were the largest funders of al

Qaeda leading up to 9/11; (c) admitted that he has no evidence that rogue employees embezzling

funds from IIRO-Pakistan did so to fund terror; and (d) offered *ipse dixit* testimony quantifying

the Charity Defendants purported support for al Qaeda that is contradicted by another of Plaintiffs'

own experts and the 9/11 Commission report.[84]

Plaintiffs cite to Kohlmann's opinions about IIRO-Indonesia, which concern *a FY 2002-*

*03 audit*, and to visits by various IIRO personnel to the Philippines.[85] Post-9/11 documents cannot

---

[82] *In re Terrorist Attacks on Sept. 11, 2001*, 298 F. Supp. 3d 631, 646-47 (S.D.N.Y. 2018). There, Judge Daniels noted that "factual allegations," including provision of financial and logistical support to al Qaeda operatives in the Bosnian War from 1992 to 1996, funneling of hundreds of thousands of dollars from 1996 to 1999 to al Qaeda under pretext of construction work, and provision of arms to a Somali faction trained by al Qaeda in 1993, were too remote to support Plaintiffs' claims and overcome immunity. *See also In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MDL 1570 (GBD) (SN), 2023 WL 2430381, at *4, 12 (S.D.N.Y. Mar. 9, 2023) (1993-95 banking transactions too remote for personal jurisdiction); *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 472 (S.D.N.Y. 2010), *aff'd on other grounds*, 714 F.3d 109 (2d Cir. 2013) (charity inoperative in United States in 1994 too remote for personal jurisdiction).

[83] Brief at 24-25, 29. Kohlmann reviewed only four of fifteen audits. ECF No. 9250-43 at 380:25-381:16; *see also* Order at 19-20 (excluding testimony on speculation grounds).

[84] Brief at 24 (IIRO-Pakistan), 27 (direct funds, largest funders), 27 & n.157 (contradiction in quantification).

[85] Opp'n at 32 (citing ECF No. 9250-2, ¶ 142 (citing IIRO 34989-350007)), n.108 (citing ECF No. 9250-2 ¶¶ 143-48).

show that IIRO knowingly provided material support for the 9/11 attacks, and fragmented pieces of information about visits to the Philippines do not save his conjectures.

As detailed in the Brief, there is no evidence supporting Kohlmann's theory that the investment funds transferred to BMI *went to support al Qaeda*.[86] Plaintiffs assert that Defendants are engaging in factual disputes, but Kohlmann's opinion relies on double hearsay on top of speculation, without accounting for the unreliability of his source or the alternate explanation that the funds were stolen. Kohlmann may not offer the speculative opinion that the funds *went to support a terrorist organization* where the evidence he relies upon (a) does not demonstrate where the funds went; and (b) is unreliable and inconclusive.

### M.    Kohlmann's Evidentiary Analyses Are Lacking

Plaintiffs cite a single paragraph in Kohlmann's report as adequate support for his assertion that MWL and IIRO endorsed violent jihad and thus provided support and resources to al Qaeda and its affiliates. The MWL-specific paragraph cited, however, addresses two nearly 40-year old Fiqh Council resolutions,[87] *from 1985 and 1986*, before al Qaeda formed.[88] One concerned the permissibility of using zakat funds on Islamic Dawah and supported the minority/second view of using zakat funds for *non-jihad* disbursements; the other permitted funds collected by Muslims for Afghan Mujahedeen to be spent on education, health, and media projects.[89] Neither reflects endorsement of terrorism or support to al Qaeda or any other terrorist group.

In defending Kohlmann's other unsupported conclusions, Plaintiffs misapply caselaw and the bellwether Order.[90] Though experts can rely on secondary evidence and hearsay in forming

---

[86] Brief at 25-26.

[87] Opp'n at 34, n.116.

[88] ECF No. 3829-17 at 219-221, 259-262. The resolutions are thus not relevant either. *See supra* § I.K.

[89] ECF No. 3829-17. The 1986 resolution also concerns "jihad" that nation-states and their militaries carry out (259-262). The 1985 resolution discusses military budgets in contrast to jihad with dawah (219-221).

[90] *See* Opp'n at 34-35, nn.118-19 (citing *Owens*, 864 F.3d at 787; *Linde v. Arab Bank, PLC*, 97 F. Supp. 3d 287 (E.D.N.Y. 2015); *United States v. Hossain*, 579 F. Supp. 3d 477 (S.D.N.Y 2022); Order at 32).

their opinions, "[a]cademic integrity requires us to cite to our sources."[91] Kohlmann relied on nothing in opining that Charity Defendants are among the Saudi-based Islamic organizations that he claims "largely funded" al Qaeda. Similarly, he concludes that BIF is the "child of WAMY" only by dismissing contrary available evidence as "not credible,"[92] without examining it.[93]

## II.   LEVITT SHOULD BE EXCLUDED

### A.   Levitt's Testimony Violates Fed. R. Evid. 403

Rule 403 "permits courts to exclude expert testimony if its probative value is substantially outweighed by the danger of unfair prejudice," and "[e]xclusion under Rule 403 is appropriate where the testimony cloud[s] the issue for the jury."[94] Defendants' brief demonstrates that Levitt's "expert" testimony would violate Rule 403 because (1) it carries a substantial risk of unfair prejudice to Defendants and (2) Levitt's role as a fact-witness-turned-expert is likely to confuse the jury. Rather than respond to these arguments, Plaintiffs reframe them into a question of whether Levitt is "too qualified" to testify about Treasury's designation process.[95] This is a red herring.

There is no genuine dispute as to the pertinent – and disturbing – facts presented in Defendants' brief and Plaintiffs' opposition.[96] To summarize:

- Levitt's testimony as a *fact witness* was sought by both sides and denied by Treasury;
- So too was access to documents Levitt authored and/or reviewed as part of a classified, one-sided process resulting in certain designations at issue in this case;
- Levitt relies on the fact that certain Defendants were designated by Treasury;
- Plaintiffs now offer Levitt's "first-hand experience" in the form of *expert testimony*; and
- Levitt seeks to testify about the "quality" of data relied upon by Treasury and "illuminat[e]" the designation process by testifying that it is "robust," "vigorous" and "reliabl[e]."

---

[91] *Id.*
[92] Opp'n at 35, n.122. Plaintiffs insist on Kohlmann's testimony that documents showing WAMY is not BIF were "not credible." However, there is no record in his reports that he analyzed any of these documents.
[93] Ex. 44. at 665:6-665:15 (admitting to not reviewing document showing BIF is not WAMY); *see* Brief at 28-29.
[94] Order at 8 (internal quotations and citations omitted).
[95] Opp'n at 36 (claiming Defendants demand exclusion because Levitt is "*too* qualified and his overqualification will overwhelm the factfinder's ability to apply reason") (emphasis in original).
[96] *See* Brief at 31-36; Opp'n at 36-44.

Treasury's denials of both sides' request for Levitt's first-hand account and testimony on these issues, coupled with the denial of access to the majority of documents underlying the designations, present an unacceptable risk of confusion and unfair prejudice given that Levitt is now offered as a fact-witness-turned-expert testifying about the "quality" of the undisclosed information and the "reliability" of the confidential designation process. Plaintiffs' protests – that Levitt does not offer testimony "on the evidentiary package supporting the designations of IIRO's branch office" and "did not rely on those or any other classified material in forming his opinion"[97] – miss the point and, in any event, Levitt's word does not control.[98] By doing an end-run around Treasury's denials and using Levitt's experience working with classified materials in a top-secret process against Defendants, Plaintiffs employ an improper sword-and-shield tactic that the Court should reject.

Under Rule 403, the court in *Mirena* excluded testimony from a proffered expert involved in the regulatory review of the Mirena contraception device, because the opposing side could not "effectively cross-examine [the expert] or dissipate the aura of credibility from her 'insider' testimony."[99] Plaintiffs unsuccessfully seek to distinguish *Mirena*.[100] Here, as in *Mirena*, this Court is faced with a party seeking to introduce testimony from a witness "*who participated directly in some of the events at issue but cannot discuss them*."[101] And, just as in *Mirena*, where there was no explanation of defendants' choice of an expert whose testimony was so restricted, Plaintiffs' decision to call such a restricted witness is improper.[102]

---

[97] Opp'n at 37, 40-41.

[98] As the court in *In re Mirena IUD Prod. Liab. Litig*. explained, the expert's assertion "that he did not actually consider certain materials in forming his opinion . . . will not control, and instead courts apply an objective test that defines considered as *any facts or data on the subject matter learned by the expert at any time before rendering her opinion*." 169 F. Supp. 3d 396, 471-72 (S.D.N.Y. 2016) (emphasis added) (internal quotations omitted).

[99] 169 F. Supp. 3d at 473; *see also* Brief at 34-36.

[100] Opp'n at 38-40.

[101] 169 F. Supp. 3d at 473 (emphasis added).

[102] *Id.* In all events, Plaintiffs' expert Jimmy Gurule offers testimony about the designation process without the risk of unfair prejudice and confusion that is presented by Levitt's proffered testimony. *See* Brief at 36.

With the facts and the law against them, Plaintiffs resort to telling a good story – that Levitt has forgotten all the details of his time at Treasury *other than* the details of the precise process they wish to bolster.[103] This argument is not credible. Levitt's testimony should be excluded.

### B.    Levitt's Impermissible Legal Conclusions Should Be Excluded

For the same reasons explained in Section I.H., *supra*, there is no basis for allowing Levitt to testify to legal conclusions. *Owens v. Republic of Sudan*, like *Estate of Hirshfeld*, is inapposite, because it involved a default judgment and therefore no *Daubert* challenge or jury trial.[104] Moreover, post-default, Sudan challenged the expert testimony only on the basis that the experts improperly relied on hearsay, and not on the basis that they improperly testified to legal conclusions. All of Levitt's testimony as to "material support" should be excluded.

### C.    Levitt's Hearsay Testimony Should Be Excluded

For the same reasons explained in Section I.J., *supra*, Plaintiffs fail to address Defendants' arguments, and cannot justify allowing Levitt to "regurgitat[e]" hearsay. As in *United States v. Damrah*, which Plaintiffs cite, though Levitt may *rely* on hearsay, the hearsay is not admissible simply because it is repeated in his report.[105] Plaintiffs claim it "is not a helpful exercise" for the Court to critique the report and exclude hearsay passages at this stage.[106] But this is precisely the purpose of this second round of *Daubert* briefing, which follows the Court's admonition that "[i]f an expert provides no commentary or analysis, if his testimony is nothing more than quotes from a single hearsay source, then the expert cannot properly testify to that content."[107]

Plaintiffs' remaining arguments to avoid exclusion of Levitt's hearsay testimony are

---

[103] Opp'n at 40-41. Indeed, Levitt's involvement as a paid consulting expert *prior to his time at Treasury*, when he obtained information about the 9/11 litigation from Plaintiffs' counsel (*see* Brief at 31-32), makes his purported loss of memory concerning the details of the designations and contents of the confidential memo all the more unbelievable.
[104] 864 F.3d 751 (D.C. Cir. 2017) (*Owens*); 330 F. Supp. 3d 107 (D.D.C. 2018) (*Hirshfeld*).
[105] 412 F.3d 618, 625 n.4 (6th Cir. 2005).
[106] Opp'n at 46.
[107] Order at 41.

unpersuasive. Plaintiffs assert that the hearsay passages are "inherently being cross-checked against other material in the same paragraph or on the same page."[108] But the bellwether Order requires actual, not inherent, synthesis or interpretation.[109] Plaintiffs further argue that Levitt "does not rely on block quotes as pillars of his opinions," but this is belied by the actual text of his report, including paragraphs 41-43, which is a "cut and paste" of 16 unabridged paragraphs of an OFAC press release, to which Levitt adds only that the U.S. and Saudi Arabia "jointly designated" "al Haramain [Islamic Foundation] branches" and that the "evidence was extensive."

### D.   Levitt Offers Irrelevant Testimony

Defendants' brief highlights an extensive list of topics covered in Levitt's report that are entirely unrelated to the "core factual dispute" in this litigation.[110] The Court should reject Plaintiffs' assertion that testimony about irrelevant topics provides "background and context."[111] Testimony about al Qaeda operations years after 9/11, and the findings of *general* terror financing investigations unrelated to the Charity Defendants, are irrelevant. So too is testimony regarding the conduct of *other* charities and individuals and support for Muslims involved in local conflicts worldwide. Testimony regarding Defendants' work is admissible, but "extensive discussion" of other charities is "inappropriate."[112] Likewise, testimony about the conduct of terrorist groups unrelated to al Qaeda is irrelevant and likely to confuse the jury. While the Court permitted limited testimony about the actions of terrorist groups involved in the 1993 World Trade Center bombing and the Bojinka plot, it did so to explain the relationship between the principal architect of 9/11 and the actors in other plots.[113] That rationale does not extend to testimony about Hamas and PIJ.

---

[108] Opp'n at 46.
[109] Order at 41.
[110] *Id*. at 11; Brief at 40; *see also supra* at 12-13.
[111] Opp'n at 48.
[112] Order at 28.
[113] *Id*. at 12.

E.     **Levitt Opines Beyond His Expertise**

Levitt's experience on al Qaeda's pre-9/11 activity is clearly limited,[114] and Plaintiffs' effort to backstop that experience fails. Consulting for one of the 9/11 Commission teams "on the *direction and strategy* of its investigation" does not create pre-9/11 al Qaeda expertise.[115] Nor does Levitt's tenure at the FBI, where he focused on "current actionable intelligence" and only studied al Qaeda's activities "as it related to" the "investigations that were ongoing at the FBI", fill the hole in his CV.[116] Levitt's CV shows that he "confined" his experience to "specific geographic areas and particular terrorist groups."[117]

Without citing any authority, Plaintiffs argue that general qualifications in a subject matter qualify an expert to speak about a more specialized area within that subject,[118] apparently suggesting that any expert on any terrorist group should be permitted to testify not only about terrorism broadly, but also about *any other* terrorist group, *anywhere* in the world, with *any* goal or objective. The law does not give experts such wide latitude.[119] Levitt is an expert on Hamas and Hezbollah, <u>not</u> al Qaeda. Defendants do not argue, as Plaintiffs assert, that Levitt must conduct his own studies to testify on al Qaeda,[120] just that he must have the requisite experience to do so.

Nor is Levitt qualified to opine on technical issues relating to accounting, finance, or audits simply because he has expertise relating to the non-technical issue of "terrorist funding."[121] The Court admitted Marks, finding that he did not need to have counterterrorism expertise to opine on

---

[114] *See* Brief at 41-43.
[115] *See* ECF No. 9250-33 at 3 (cited by Plaintiffs in their Opp'n at 49).
[116] ECF No. 9250-30. at 31:19-32:10; *see also* Brief at 43.
[117] *See* ECF No. 9250-39; *see also* Opp'n at 50.
[118] Opp'n at 50.
[119] *See United States v. Rios*, 830 F.3d 403, 414 (6th Cir. 2016) ("Given the variation in practices among different gangs, a gang expert's testimony on these relevant subjects is *reliable* only insofar as it is based on significant experience with the gang about which the expert is testifying.") (emphasis in original).
[120] Opp'n at 50.
[121] *Id*. at 49.

the more technical subject of forensic accounting.[122] Plaintiffs want that logic to work in reverse; but Levitt's "tactical and strategic analysis" and focus on "fundraising and logistical support" for terrorist groups does not yield technical knowledge or forensic financial investigation skills.[123]

Plaintiffs also justify Levitt's testifying on Islamic concepts because it is just "background" but there is no such exception to the requirements of Rule 702(a).[124] Plaintiffs next suggest Levitt is qualified because he relies on texts that experts in the field of terrorism rely on.[125] But using those texts does not make him an expert on Islam.

### F.   Levitt Comments on WAMY with No Analysis, Merely Repeating Hearsay

Further, Plaintiffs' claim that Levitt "analyzed…sources consistent with the articulated standard" with respect to WAMY is false.[126] He merely quoted sources, such as the Canadian Revenue Authority, as an example of officials having "concerns" about WAMY.[127] Noting officials' "concerns" is not analysis. Levitt did nothing to verify or confirm any "concern."[128] Plaintiffs ignore the guidance of this Court that it will "admit testimony that relies on hearsay but preclude testimony that merely repeats it."[129]

### CONCLUSION

The Court should exclude the testimony of Evan Kohlmann and Matthew Levitt.[130]

---

[122] Order at 33-34 (admitting testimony of defense accounting expert Jonathan Marks).

[123] Opp'n at 49; *see* Order at 10 ("that logic does not work in reverse").

[124] *Cf. Jakobovits as Tr. of Lite Tr. I v. PHL Variable Ins. Co.*, No. 17-cv-3527, 2022 WL 17415078, at *10 (E.D.N.Y. Dec. 5, 2022) (applying FRE 702 and Daubert in admitting background testimony from qualified expert); *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988) (permitting background testimony from FBI agent because it was indisputably useful expert testimony for which he had "unchallenged qualifications"). *See also* Opp'n at 48.

[125] *Id.*

[126] Opp'n at 59.

[127] ECF No. 9250-33 at 29.

[128] ECF No. 9250-30, at 501:4–502:5.

[129] Order at 41.

[130] Due to the page limitations, this Reply does not seek to respond to every argument raised in Plaintiffs' Opposition, but rather seeks to clarify the salient issues before the Court. As to Plaintiffs' criticisms of Defendants' Exhibit 1 (Opp'n at 3, n.1), the exhibit is meant simply to serve as an inventory of impermissible testimony; however, in response to certain inaccuracies in Plaintiffs' Exhibit 30 (ECF 9345-31), Defendants refer the Court to Ex. 47. Finally, to the extent an argument in Plaintiffs' Opposition is not addressed herein, Defendants stand on the arguments in their Brief.

October 16, 2023                    Respectfully submitted,

                                   /s/ *Aisha E. R. Bembry*
                                   Eric L. Lewis
                                   Waleed Nassar (admitted *pro hac vice*)
                                   Aisha E. R. Bembry (admitted *pro hac vice*)
                                   Sumayya Khatib (admitted *pro hac vice*)
                                   Lewis Baach Kaufmann Middlemiss PLLC
                                   1101 New York Avenue, NW Suite 1000
                                   Washington, DC 20005
                                   Telephone: (202) 833-8900
                                   Fax: (202) 466-5738
                                   Email: eric.lewis@lbkmlaw.com
                                   Email: waleed.nassar@lbkmlaw.com
                                   Email: aisha.bembry@lbkmlaw.com
                                   Email: sumayya.khatib@lbkmlaw.com
                                   *Counsel for Defendants Muslim World League, International Islamic Relief Organization, Dr. Abdullah bin Saleh Al Obaid, Dr. Adnan Khalil Basha, Dr. Abdullah Omar Naseef, and Dr. Abdullah bin Abdelmohsen Al Turki*

                                   /s/ *Omar T. Mohammedi*
                                   Omar T. Mohammedi
                                   Frederick Goetz, *of counsel* (admitted *pro hac vice*)
                                   The Law Firm of Omar T. Mohammedi, LLC
                                   233 Broadway, Suite 820
                                   New York, NY 10279
                                   Telephone: (212) 725-3846
                                   Fax: (212) 202-7621
                                   Email: omohammedi@otmlaw.com
                                   Email: fgoetz@goetzeckland.com
                                   *Counsel for Defendants World Assembly of Muslim Youth and World Assembly of Muslim Youth International*

                                   /s/ *Alan Kabat*
                                   Alan Kabat
                                   Bernabei & Kabat PLLC
                                   1400 16th Street NW, Suite 500
                                   Washington, DC 20036-2223
                                   Telephone: 202-745-1942
                                   Email: Kabat@Bernabeipllc.com
                                   *Counsel for Dr. Abdullah bin Saleh Al Obaid, Dr. Adnan Khalil Basha, Dr. Abdullah Omar Naseef, and Dr. Abdullah bin Abdelmohsen Al Turki*

21

/s/ *Peter C. Salerno*

Peter C. Salerno
Amy Rothstein
Salerno & Rothstein
221 Schultz Hill Road
Pine Plains, NY 12567
Telephone: (518) 771-3050
Email: peter.salerno.law@gmail.com
Email: amyrothsteinlaw@gmail.com
*Counsel for Defendant Yassin Kadi*