UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

    TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001

-----------------------------------------------------------------X

03-MD-01570 (GBD)(SN)

**REPORT &
RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:

    Bernaerts, et al. v. Islamic Republic of Iran, No. 19-cv-11865

Plaintiff Rachel Uchitel moves for partial final default judgment against the Islamic Republic of Iran. See ECF Nos. 9106, 9107, 9108, 9116.[1] She contends that she is entitled to solatium damages because she was Andrew O'Grady's fiancé and "functionally equivalent" to his spouse when he was killed in the 9/11 Attacks. ECF No. 3363 at 12; see ECF No. 9108 at 5. The Court recommends granting her motion.

## DISCUSSION

The Court assumes familiarity with this multidistrict litigation and summarizes only the relevant procedural and factual background. The Court granted default judgment as to liability for the plaintiffs in Bernaerts, et al. v. Islamic Republic of Iran, No. 19-cv-11865 ("Bernaerts"), against Iran on January 4, 2022. See ECF No. 7522. The only open question is whether Ms. Uchitel is entitled to damages under the Court's "functional equivalence" framework. She seeks a finding that her relationship to Andrew O'Grady was functionally equivalent to that of a

---

[1] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

spouse; $12,500,000 in solatium damages; prejudgment interest; and leave to seek punitive or other damages later. See ECF No. 9116.

I.     **Functionally Equivalent Family Members**

The Court consistently awards solatium damages to those who lost loved ones in the 9/11 Attacks. See, e.g., ECF No. 2618, adopted at 2623. These damages are generally restricted to spouses, parents, children, and siblings but in limited circumstances are extended to people who are functionally equivalent to immediate family members.

To determine whether a plaintiff's relationship is functionally equivalent to that of an immediate family member, the Court uses the Hoglan IV framework. See ECF Nos. 3363, adopted at 3384 (Hoglan II, setting out functional equivalence standards); 3676, adopted at 3795 (Hoglan IV, refining functional equivalence framework). That framework requires a fact-intensive, plaintiff-by-plaintiff analysis. The Court weighs how long the plaintiff and decedent lived together; their degree of emotional, financial, and social connection; and factors particular to certain relationships, such as how long a couple was together, whether they were engaged to be married, the age of a child when a relationship formed, or the continued involvement of a biological parent in a child's life. See ECF Nos. 3363 at 10–12, 14–16; 3676 at 7–8, 11, 13–14.

After the Court finds a functionally equivalent relationship, it must determine the appropriate damages. In most cases, it awards the same solatium damages awarded to immediate family members. Plaintiffs who are functionally equivalent to spouses receive $12,500,000; those functionally equivalent to parents and children receive $8,500,000; and functionally equivalent siblings receive $4,250,000. See ECF Nos. 2618, adopted at 2623 (establishing solatium damages for immediate family members); 3363 at 16 (applying those damages to functionally equivalent family members). In some cases, however, the Court awards reduced damages to plaintiffs whose relationships are functionally equivalent but not fully comparable to

those of immediate family members. See, e.g., ECF Nos. 3363 at 22 (recommending a stepmother receive half the normal award because she entered the decedent's life when he was 11 years old); 5387 at 7 (recommending a stepsibling receive half the normal award because he began living with the decedent at age 14).

The Court applies the Hoglan IV framework to Ms. Uchitel's claim.

### A.      Rachel Uchitel

Rachel Uchitel was a 23-year-old event planner in New York when her friend set her up on a blind date in 1998. See ECF No. 9107-2 at ¶ 3. She quickly fell in love with Andy O'Grady, a 29-year-old investment banker, and he with her. See id. at ¶¶ 4–5; ECF No. 9107-5 at 14. He was "smart, kind, and . . . accomplished," and Ms. Uchitel "admired and looked up to [him]." ECF No. 9107-2 at ¶ 4.

The two "quickly began building a life together." Id. at ¶ 5. In 2000, they moved into an apartment on 66th Street. See id. at ¶ 11. Although Ms. Uchitel was earning much less than Mr. O'Grady, she contributed to their household finances and did most of the cooking. See id. at ¶ 14; see ECF No. 9107-3 at ¶ 8. The two spent almost all their time together, often hosting family and friends in the Sands Point vacation home they rented. See ECF No. 9107-2 at ¶¶ 7, 12. In the summer of 2001, Mr. O'Grady proposed. See id. at ¶ 14. They celebrated with family, set a date, started planning a May 2002 wedding, and then went on an early honeymoon to Greece. See id. at ¶¶ 14–15.

On September 11, 2001, Mr. O'Grady headed to his office in the South Tower of the World Trade Center. See id. at ¶ 21. An hour after he arrived, a plane struck the North Tower. See id. at ¶ 24. Ms. Uchitel called him, and he told her he was staying put as instructed. See id. at ¶ 26. As he described what he was seeing, she saw a second plane crash into his building on live

3

TV. See id. at ¶ 27. The line went dead. See id. After repeated attempts to get in touch with him, she saw the South Tower collapse with him inside. See id. at ¶ 30.

In a world without 9/11, Ms. Uchitel would "be happily married today to Andy O'Grady, the great love of [her] life." Id. at ¶ 41. Instead, she has reckoned with the profound impacts of her fiancé's death, including continued therapy for post-traumatic stress disorder. See id at ¶ 42; ECF No. 9107-4 at 14. Their three-year relationship, shared home, entwined social life, and engagement evidence the commitment and mutual support characteristic of a marriage. The Court therefore recommends finding Ms. Uchitel's relationship with Mr. O'Grady functionally equivalent to that of a spouse. In accordance with that finding, she should be awarded $12,500,000 in solatium damages.

## CONCLUSION

The Court recommends granting Ms. Uchitel's motion, finding her relationship with Mr. O'Grady equivalent to that of a spouse, and awarding her $12,500,000 in damages with prejudgment interest of 4.96 percent per annum, compounded annually, from September 11, 2001, to the date of judgment. All Bernaerts plaintiffs should be permitted to seek punitive or other damages later, consistent with future Court orders.

SARAH NETBURN  
United States Magistrate Judge

DATED:   January 5, 2024  
         New York, New York

\*            \*            \*

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

The parties shall have 14 days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 6(a), 6(d). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2); see Fed. R. Civ. P. 6(a), 6(d). These objections shall be filed with the Court and served on any opposing parties. See Fed. R. Civ. P. 72(b)(2). Courtesy copies shall be delivered to the Honorable George B. Daniels if required by that judge's Individual Rules and Practices. Any requests for an extension of time for filing objections must be addressed to Judge Daniels. See Fed. R. Civ. P. 6(b). The failure to file timely objections will waive those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. James, 712 F.3d 79, 105 (2d Cir. 2013).