**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------x

IN RE:

TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

------------------------------------x

MEMORANDUM DECISION
AND ORDER

03 MDL 1570 (GBD) (SN)

GEORGE B. DANIELS, United States District Judge:

This document relates to:

> *Havlish et al. v. Bin Laden et al.*, No. 03-cv-9848 (GBD) (SN)
> *John Does 1 through 7 v. The Taliban et al.*, No. 20-mc-740 (GBD) (SN)

Plaintiff Milly Amduso, leading a group of one hundred and fifty-seven United States government employees who were killed or injured in the 1998 Al Qaeda bombings of the American Embassies in Kenya and Tanzania, their family members, and the representatives of their estates filed a motion to intervene in this multidistrict litigation on February 16, 2022. (Amduso Mot. to Intervene ("Mot."), ECF No. 7676.[1]) These Plaintiffs (the "Amduso Plaintiffs") wish to intervene in order to obtain a declaratory judgment finding that neither they nor any other Plaintiffs in this multidistrict litigation are entitled to assets of Da Afghanistan Bank, Afghanistan's central bank, held in the Federal Reserve Bank of New York (the "DAB Funds"), which have been frozen by the United States since the Taliban returned to power in 2021.

On February 22, 2022, Magistrate Judge Sarah Netburn issued an Opinion and Order denying the Amduso Plaintiffs' motion to intervene. (Op. & Order ("Order"), ECF No. 7696.) On March 7, 2022, the Amduso Plaintiffs filed timely objections to Magistrate Judge Netburn's Order, pursuant to Federal Rule of Civil Procedure 72, asking this Court to grant their motion to intervene

---

[1] Unless otherwise indicated, all ECF citations included herein refer to documents filed on the 9/11 multidistrict litigation docket. *See In re Terrorist Attacks on September 11, 2001*, No. 03-md-1570 (GBD) (SN).

1

and to "declare that neither Intervenors nor Plaintiffs have an explicit right to the Afghan funds." (Intervenors' Objs. to Denial of Mot. to Intervene ("Objs."), ECF No. 7734, at 13.) On March 21, 2022, the *Havlish* Plaintiffs, who sought to satisfy default judgments against the Taliban with the DAB Funds, *see* Writ of Execution, *Havlish v. Bin Laden*, No. 03-cv-9848 (GBD) (SN) (S.D.N.Y. Sept. 16, 2021), ECF No. 526-1, filed a response to the Amduso Plaintiffs' objections. (Havlish Creditors' Resp. to Objs., ECF No. 7773.)

As Magistrate Judge Netburn's Opinion and Order is dispositive of the Amduso Plaintiffs' claims and because the objections were properly filed, this Court undertakes a de novo review of the objected-to portions of the Order. After doing so, the Amduso Plaintiffs' objections are OVERRULED. This Court AFFIRMS the Order in its entirety.

## I. LEGAL STANDARDS

### A. Review of a Magistrate Judge's Order

Under Federal Rule of Civil Procedure 72(b)(3), a district court "determine[s] de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc.*, 996 F.2d 21, 25 (2d Cir. 1993) (setting forth the same standard in conjunction with a motion to intervene). Objections are proper when they are "timely and specific." *Garnes v. Pritchard Indus., Inc.*, No. 22 Civ. 10674 (PAE) (SLC), 2023 WL 5744466, at *1 (S.D.N.Y. Sept. 6, 2023). As the Amduso Plaintiffs have properly objected to the Order's conclusions regarding the motion to intervene, this Court reviews those determinations de novo while reviewing conclusions that have not been specifically objected to for clear error. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985) ("Congress provided for a clearly erroneous or

contrary to law standard of review of a magistrate's disposition of certain pretrial matters." (citation omitted)).

## B. Intervention

Federal Rule of Civil Procedure 24 provides for two types of intervention: intervention as of right, governed by Rule 24(a), and permissive intervention, governed by Rule 24(b).

The Second Circuit has interpreted Rule 24(a) to mandate intervention when an applicant "(1) files a timely motion; (2) asserts an interest relating to the property . . . that is the subject of the action; (3) is so situated that without intervention the disposition of the action may . . . impede its ability to protect its interest; and (4) has an interest not adequately represented by the other parties." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). If any requirement is not met, the application will be denied. *Id.*

Even when an applicant cannot show entitlement to intervention as of right under Rule 24(a), "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ P. 24(b)(1)(B). "Substantially the same factors [that govern intervention of right] are considered in determining whether to grant an application for permissive intervention . . . ." *In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 n.5 (2d Cir. 2003). However, in determining whether permissive intervention is appropriate, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Additional factors a court may consider "include the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986) (citations omitted).

## II. BACKGROUND

After the United States removed the remainder of its military presence from Afghanistan in August 2021, the Taliban assumed control of the country.[2] This sudden regime change triggered uncertainty as to the status of the DAB Funds. Multiple groups of Plaintiffs in member cases to this multidistrict litigation and related actions quickly sought and obtained writs of execution targeting the DAB Funds to satisfy default judgments they held against the Taliban. *See* Writ of Execution, *Havlish*, ECF No. 526-1; Writ of Execution, *John Does 1 through 7 v. The Taliban*, No. 20-mc-740 (GBD) (SN) (S.D.N.Y. Sept. 27, 2021) (minute entry). Those writs were stayed per the request of the United States, which filed a statement of interest noting that the President had decided to use some of the DAB Funds to address the burgeoning humanitarian crisis in Afghanistan. (*See* Statement of Interest, ECF No. 7661.)

When the Amduso Plaintiffs moved to intervene, these writs of execution were temporarily stayed. (*See* Order Staying Writ of Execution, ECF No. 7269.) The Amduso Plaintiffs sought to intervene to obtain a declaratory judgment finding that no party, themselves included, was entitled to attach the DAB Funds. (*See* Mot.) Magistrate Judge Netburn denied their motion to intervene. (*See* Order.)

Subsequently, several groups of Plaintiffs in this multidistrict litigation filed turnover motions seeking to obtain the DAB Funds. (*See* Havlish Creditors' Mot. for Partial Turnover of Assets, ECF No. 7763; Doe Creditors' Mot. for Turnover of Assets, ECF No. 7767; Federal Insurance Creditors' Mot. to Join Turnover Proceedings and for Partial Turnover of Assets, ECF No. 7936.) This Court denied those motions, determining that it lacked jurisdiction over the instrumentality of a foreign sovereign and that separation-of-powers concerns counseled against

---

[2] Given the extensive factual and procedural history of this litigation, this Court assumes the parties' familiarity with the record that preceded the events giving rise to the instant motion.

4

the judiciary wading into questions of international relations. (*See* Mem. Decision & Order ("Turnover Order"), ECF No. 8866).

## III. THE REQUESTS TO INTERVENE AND FOR DECLARATORY RELIEF ARE LIKELY MOOT

Before considering the merits of the Amduso Plaintiffs' motion, this Court takes judicial notice of its ruling denying turnover motions seeking to satisfy judgments using the DAB Funds—including the *Havlish* and *Doe* Plaintiffs' motions that are the named targets of the Amduso Plaintiffs' intervention attempt. (Turnover Order.) Although this Court based that decision on sovereign immunity and separation-of-powers grounds, rather than a determination that the Plaintiffs lacked a cognizable interest in the DAB Funds (*see id.* at 10–29), the denial nonetheless renders the instant attempt to intervene at least superfluous and in all likelihood moot. "[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (citation omitted). Because the attachment efforts that the Amduso Plaintiffs sought to block by intervening have already been denied—albeit in a different manner and on different grounds than they anticipated—this Court cannot identify any instant question that, if resolved, would affect the rights of the parties to this litigation or the aspiring intervenors. It would not be appropriate to allow the Amduso Plaintiffs to intervene on the basis of a mooted issue.

## IV. EVEN IF THE ISSUE IS NOT MOOT, INTERVENTION BY THE AMDUSO PLAINTIFFS IS NEITHER MANDATORY NOR WARRANTED

Even if the denial of the turnover motions did not moot the issue upon which intervention was predicated, Magistrate Judge Netburn correctly determined that (1) the Amduso Plaintiffs have not shown a cognizable interest in this action that supports their intervention as of right, and (2) this, combined with other prudential considerations, counsels against permitting them to intervene.

5

## A. The Amduso Plaintiffs Do Not Have a Cognizable Interest in the DAB Funds

The Amduso Plaintiffs object primarily to Magistrate Judge Netburn's conclusion that they lack a sufficient interest in the DAB Funds to support their intervention. They argue that the Order "does not address Intervenors' central point, which is that Plaintiffs have no entitlement to the [DAB Funds], thus Intervenors have an equal interest in the funds to that of Plaintiffs." (Objs. at 1–2.) However, this argument itself fails to address the central point of Magistrate Judge Netburn's Order: its analysis of what constitutes an interest sufficient to support intervention under Rule 24. (*See* Order at 6–10.)

The Amduso Plaintiffs' "equal interest" argument evinces a clear and fatal misunderstanding of Rule 24's "cognizable interest" requirement. "For an interest to be cognizable by Rule 24(a)(2), it must be 'direct, substantial, and legally protectable.'" *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (quoting *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir.1990)). The Amduso Plaintiffs have not attempted to show that their claimed interest in "a fair and equitable distribution of Afghan funds that ensures that all of Al Qaeda's victims are compensated for their injuries" satisfies this standard. (Objs. at 12.) In fact, they ask this Court to declare that *no party*, themselves included, has a cognizable interest in the DAB Funds. (*Id.* at 1–2, 11.) As Magistrate Judge Netburn noted, this assertion paradoxically but definitively undermines their intervention claim. "In effect, [the Amduso Plaintiffs] ask to intervene based on a right they wish to declare nonexistent. Quixotically, if they prevail, then they should not have had the right to intervene in the first place." (Order at 6.)

The Amduso Plaintiffs' related contention that "the current Plaintiffs suffer from the same infirmity, thus Intervenors' purported lack of interest hardly disqualifies their participation" also misconstrues the relevant standard. (Objs. at 4–5 (citation omitted).) Each of the Rule 24(a)

requirements must be satisfied to support intervention as of right, and a court's consideration of whether an intervenor's interest is adequately represented by other parties is distinct from its determination of whether an intervenor properly asserts an interest in the property that is subject to the action. *See Pitney Bowes*, 25 F.3d at 70. Although the Amduso Plaintiffs include their request for a declaratory judgment with their motion to intervene (*See* Objs. at 7, 13), the ultimate question of whether the MDL Plaintiffs lack a cognizable interest in the DAB Funds is distinct from the instant and antecedent question of whether the Amduso Plaintiffs *themselves* have such an interest. This Court would need to grant the Amduso Plaintiffs' motion to intervene *before* it could consider whether to grant their request for a declaratory judgment. Because this Court concludes that the Amduso Plaintiffs have not shown a sufficiently cognizable interest in the DAB Funds, it does not consider how their alleged interest relates to the interests of any other parties or reach the declaratory judgment issue.[3]

The Amduso Plaintiffs also make the related contention that "[i]f the Court dismisses Intervenors' motion, then it must also rule that Plaintiffs have no right to the Afghan funds as well" (Objs. at 5.), but this argument conflates two separate inquiries. The determination of the Amduso Plaintiffs' interest in the DAB Funds for intervention purposes has no direct bearing on how this Court should treat other parties' alleged interests in the Funds.

## B. Several Other Relevant Considerations Weigh Against Permissive Intervention

The Amduso Plaintiffs further argue that even if this Court "denies Intervenors' motion to intervene as of right under Rule 24(a), it should grant their request for permissive intervention

---

[3] Magistrate Judge Netburn also determined that even if intervention had been appropriate, this Court should decline to extend jurisdiction over the Amduso Plaintiffs' request for declaratory relief. (Order at 13.) The Amduso Plaintiffs did not specifically object to this determination. Having reviewed this portion of the Order for clear error and finding none, this Court accepts the Order's conclusion that the factors laid out in *Dow Jones & Co. v. Harrods Ltd.* would counsel against extending jurisdiction over this declaratory judgment claim if this Court had reached its merits. *See* 346 F.3d 357, 359–60 (2d Cir. 2003).

7

pursuant to Rule 24(b)." (Objs. at 12.) In deciding whether permissive intervention is warranted, this Court considers the preceding mandatory intervention analysis, *see In re Bank of N.Y. Derivative Litig.*, 320 F.3d at 300 n.5, the potential for "undu[e] delay or prejudice" to the litigation, Fed. R. Civ. P. 24(b)(3), and other factors including "the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *H.L. Hayden*, 797 F.2d at 89 (2d Cir. 1986). All of these additional factors counsel against permitting the Amduso Plaintiffs to intervene.

The Amduso Plaintiffs' interest is avowedly abstract rather than "direct, substantial, and legally protectable." *Bridgeport Guardians*, 602 F.3d at 473; (*see* Section IV.A, *supra*.) Moreover, even if this Court assumed that the Amduso Plaintiffs' interest in the fair and equitable distribution of Afghan funds were sufficiently cognizable, it would conclude that interest to be adequately represented by other parties to this litigation. As Magistrate Judge Netburn pointed out, "several existing parties have the same objective as the Amduso Plaintiffs: to limit or void the *Havlish* and *Doe* Plaintiffs' entitlement to the DAB funds." (Order at 9.)

The Amduso Plaintiffs object on the grounds that "the [MDL] Plaintiffs all have a vested interest in maintaining the fiction that a judgment against the Taliban is a right and entitlement to the Afghan funds. This goal is at odds with the interests of any other victims of Taliban terrorism and there are no parties to these proceedings who will argue otherwise." (Objs. at 3–4.) But an interest in opposing an alleged fiction cannot be considered direct or substantial, much less an independently convincing reason to permit intervention. Additionally, and understandably, given

8

the scale of the factual record in this litigation, the Amduso Plaintiffs do not claim that they will be able to contribute to the development of the underlying factual issues in this suit.

The underlying litigation, arising out of the terrorist attacks on 9/11, has been ongoing for over two decades and currently includes tens of thousands of Plaintiffs. As the Order noted, a determination of the rights of the *Havlish* and *Doe* Plaintiffs to the DAB Funds would inevitably occur as part of this process. (Order at 11.) Allowing the Amduso Plaintiffs to intervene based on claims arising out of a different nexus of facts would add another layer to an already complex scheme, and none of the other pertinent considerations weigh in favor of intervention. (*See id.* at 11–12.)

\*   \*   \*

The Amduso Plaintiffs seek to intervene with noble intentions, hoping to ensure an equitable disbursement of compensation to victims of terrorism who have undergone profound and prolonged suffering. But benevolent motives have not provided them with a sufficient interest to support their intervention in this litigation on either a mandatory or a permissive basis. In any event, the outcome they sought to thwart has already been avoided.

## V. CONCLUSION

The objections to Magistrate Judge Netburn's Order denying the Amduso Plaintiffs' motion to intervene are OVERRULED. The Order is AFFIRMED in its entirety.

Dated: New York, New York
January 10, 2024

SO ORDERED.

*George B Daniels*
GEORGE B. DANIELS
United States District Judge