**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____ )
IN RE:  TERRORIST ATTACKS ON          )     Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001                    )     ECF Case
_____ )

This document relates to:  *All Actions*


**SAUDI ARABIA'S OPPOSITION TO**
**PLAINTIFFS' MOTION FOR RECONSIDERATION OF AND**
**<u>RULE 72 OBJECTIONS TO THE JANUARY 26, 2024 ORDER</u>**

Michael K. Kellogg
Gregory G. Rapawy
Andrew C. Shen
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900
(202) 326-7999 (fax)

*Attorneys for the Kingdom of Saudi Arabia*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ...............................................................................................................................1

BACKGROUND ................................................................................................................................2

STANDARD OF REVIEW ...............................................................................................................9

ARGUMENT .....................................................................................................................................10

I.      Plaintiffs Offer No Grounds To Reconsider, Modify, or Set Aside the
January 26 Order as to the Fact Declarations ...................................................................10

      A.      The Court Properly Struck Weidner's Declaration..............................................10

      B.      The Court Properly Struck Madha's New Declaration.........................................12

II.     Plaintiffs Offer No Grounds To Reconsider, Modify, or Set Aside the
January 26 Order as to the Purported Expert Declarations................................................13

      A.      The Court Properly Struck Youssef's Declaration...............................................13

              1.      The June 1999 video ....................................................................................13

              2.      The February 2000 video ............................................................................17

              3.      Al Bayoumi's correspondence .....................................................................18

      B.      The Court Properly Struck Adams's Declaration .................................................18

CONCLUSION...................................................................................................................................20

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

**CASES**

*Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36 (2d Cir. 2012) ......................9, 13, 14

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) .......................................................6, 17

*Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173 (S.D.N.Y. 2008) ........................10

*Lugosch v. Congel*, 443 F. Supp. 2d 254 (N.D.N.Y. 2006) ............................................................10

*MacNamara v. City of New York*, 249 F.R.D. 70 (S.D.N.Y. 2008) ...............................................10

*Outley v. City of New York*, 837 F.2d 587 (2d Cir. 1988) ........................................9, 10, 11, 12, 13

*Preuss v. Kolmar Lab'ys, Inc.*, 970 F. Supp. 2d 171 (S.D.N.Y. 2013) ....................................11, 12

*Rodriguez v. Vill. of Port Chester*, 535 F. Supp. 3d 202 (S.D.N.Y. 2021) ...................................14

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995) .........................................................9, 10

*Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955 (2d Cir. 1997)...................9, 11

*Sokolow v. PLO*, 607 F. Supp. 3d 323 (S.D.N.Y. 2022)................................................................12

*U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.*, 2007 WL 2327068
    (S.D.N.Y. Aug. 13, 2007) .........................................................................................................9

**STATUTES AND RULES**

28 U.S.C. § 636(b)(1)(A)..................................................................................................................9

Fed. R. Civ. P.:

    Rule 26(e)................................................................................................................15, 18

    Rule 37 ...........................................................................................................................11

    Rule 72 .................................................................................................................1, 11, 19

    Rule 72(a).........................................................................................................................9

Fed. R. Evid. 702 ............................................................................................................................19

**ADMINISTRATIVE MATERIALS**

Declassification Reviews of Certain Documents Concerning the Terrorist
Attacks of September 11, 2001, Exec. Order No. 14040, 86 Fed. Reg.
50439 (Sept. 3, 2021)........................................................................................................1, 5

## INTRODUCTION

The Court properly struck five untimely fact and expert declarations that Plaintiffs presented in support of their opposition to the renewed motion to dismiss ("MTD Opp.").  Fact declarations were due on May 31, 2021, and affirmative expert reports on April 1, 2022.  Discovery is closed, and the Court has rejected Plaintiffs' attempts to reopen it.  Plaintiffs did not seek leave to present their new declarations.  They instead assert an unfettered right to present new declarations after the close of discovery that comment on or base opinions on material sought and obtained from third parties after the close of written discovery.  Neither the Federal Rules nor the Court's orders give them any such right.

Plaintiffs pay little heed to the standards for reconsideration or for Rule 72 review, instead rearguing the motion on the merits.  They argue that the Court should have chosen a lesser remedy for their violations by ordering depositions of the declarants.  The Court considered that option and rejected it, reasoning that further delays were not appropriate.  That choice was well within the Court's discretion in view of the history of delays in this litigation and Plaintiffs' recalcitrant approach to deadlines.

Plaintiffs also argue that it would be unjust to deprive them of the struck declarations. This is at least the fifth time that Plaintiffs have purported to find vital new evidence.  Earlier examples include the "28 pages" declassified in 2016, the testimony of "twentieth hijacker" Zaccarias Moussaoui in 2017, the FBI's disproven investigative theory about Musaed Al Jarrah in 2018, and the FBI's releases under Executive Order 14040 in 2021 and 2022, which included the May 2021 FBI Electronic Communication closing the 9/11 investigation and conclusively *rejecting* Plaintiffs' theory that Saudi officials knowingly assisted the 9/11 hijackers.  Their protests that one more revelation will prove their claims deserve no credence.

## BACKGROUND

1.       On March 28, 2018, this Court ordered "limited and targeted jurisdictional discovery" as to Saudi Arabia.  ECF No. 3946, at 23.  On January 13, 2020, "formal paper discovery" ended.  ECF No. 6725, at 2; ECF No. 5777, at 43:9-11.  On February 21, 2020, Saudi Arabia and Dallah Avco proposed that the parties produce all fact declarations no later than "30 days before the deadline for fact depositions."  ECF No. 6002-1, ¶ 9.  They further proposed that the parties be barred from "us[ing] with respect to the renewed motion to dismiss" any such declarations not timely produced, except for those "to establish authenticity or admissibility of documents."  *Id.*  On May 11, 2020, the Court "endorse[d] Saudi Arabia's proposal."  ECF No. 6204, at 1.  On December 1, 2020, the Court ordered "[a]ll fact depositions [to] be completed by June 30, 2021."  ECF No. 6546, at 10, *objs. overruled*, ECF No. 6855.

Under the Court's December 1, 2020 order, the last day to produce fact declarations was May 31, 2021.  On May 21 and 30, 2021, Plaintiffs produced 10 such declarations, including one from Usman Madha, a former employee of the King Fahad Mosque.  ECF No. 6838, at 2 & n.1.

On June 18, 2021, the Court ordered Plaintiffs to "serve all expert disclosures required by Fed. R. Civ. P. 26(a)(2)" by "September 15, 2021."  ECF No. 6872, at 1.  The Court extended the deadline for "affirmative expert reports" to April 1, 2022, to account for an expected production of declassified FBI documents, but warned that it "d[id] not expect to modify this schedule barring extraordinary circumstances."  ECF No. 7117.  When Plaintiffs sought an extension anyway, the Court denied it, rejecting Plaintiffs' arguments about "the purportedly revelatory nature of the evidence sought" and "the unfairness of proceeding without their experts obtaining every last iota of possible material," among others.  ECF No. 7752, at 2, *objs. overruled*, ECF No. 7787; *see also id.* ("[I]t has become clear that these points have no limiting principle.").

Since fact discovery closed, the *Ashton* Plaintiffs have moved twice to reopen discovery based on purportedly new evidence. The Court has denied both motions. ECF No. 8862, at 24-26; ECF No. 8923, at 2, *objs. overruled*, ECF No. 9231.

2.      On June 1, 2021, well after the close of written discovery and a month before the deadline for fact depositions, Plaintiffs asked the Court to seek assistance from the judiciary of the United Kingdom in obtaining discovery from the London Metropolitan Police Service (the "London MPS"). ECF No. 6834. The Court granted Plaintiffs' request. ECF No. 6858.

During the period "[b]etween March 23, 2022 and March 30, 2022," the London MPS produced the materials Plaintiffs sought. ECF No. 7831, at 2. Those materials, which were found in a search of Omar Al Bayoumi's apartment in the U.K., included a handwritten copy of a phonebook attributed to Al Bayoumi, various correspondence, and photo and video files (collectively, the "March 2022 MPS Production"). Among the video files was a recording of a February 2000 gathering in San Diego at the apartment of 9/11 hijackers Nawaf Al Hazmi and Khalid Al Mihdhar, filmed by Plaintiffs' witness Kaysan Morgan (the "February 2000 video").[1]

Plaintiffs gave their experts access to the March 2022 London MPS production before their opening reports were due on April 1, and those experts relied extensively on that production in those reports. Youssef's report cites or refers to the MPS production 26 times.[2] Among other things, he cites Al Bayoumi's correspondence from that production and the February 2000 video.

---

[1] Al Bayoumi has testified that the gathering was to thank those who had volunteered and led prayers at the Al Madina Mosque during the Ramadan holiday. ECF No. 9390-1, ¶¶ 118-119. Guests who attended with their families gathered in Al Bayoumi's apartment, and Al Hazmi and Al Mihdhar agreed to let unmarried male guests gather in theirs. *Id.* ¶ 119.

[2] ECF No. 9093-7 (Youssef Rep.) at 7, 74 n.282, 81 n.317, 86 & n.335, 87 n.340, 88 n.347, 89 & n.354, 91 nn.365, 368, 92-93 & nn.374-375, 98 n.401, 108 & n.449, 111 n.468, 179-80 & nn.723, 728, 183 n.745, 188 n.767, 190 & nn.778-779, 193 & n.788, 195-96 n.802, 201 n.821, 210 n.863, 218 n.908, 221 & n.929; *see also* ECF No. 9093-8 (Nakhleh Rep.), ¶ 17; ECF No. 9093-12 (Schiff Rep.) at 2, 8, 10, 11.

Youssef Rep. 201 n.821.  In addition, on May 3, 2023, Plaintiffs served an errata sheet in which

Youssef represented that he "ha[d] been able to conduct a much more detailed review of the

MPS videos and photos" and added substantive points to his report.  ECF No. 9089-01 (last page).

**3.** On December 8, 2023, Plaintiffs notified the Court and Saudi Arabia that the

London MPS had made an additional production of documents (the "December 2023 MPS

Production").[3]  That production included additional video files, photo images, and other

documents.  As relevant to the present motion, it includes (1) a more complete version of the

February 2000 gathering video that contains less than 4 additional minutes of content,[4] and (2) an

hour-long video of a June or July 1999 visit to Washington, D.C. (the "June 1999 video").

The June 1999 video shows Al Bayoumi visiting various tourist attractions in

Washington.  The locations shown include the White House, the Washington Monument, the

Smithsonian Institute, the National Mall, the Capitol, the Saudi Embassy, and the Islamic Center

of Washington, D.C.[5]  About seven minutes of the video depict the outside of the Capitol, and

---

[3] The original deadline for Plaintiffs' opposition to Saudi Arabia's renewed motion to dismiss was December 8, 2023.  Two weeks before that date, the *Ashton* Plaintiffs suddenly dropped their previous insistence that a separate *Ashton* opposition was "essential."  ECF No. 9009, at 27:13.  Plaintiffs then sought an extension until December 20 "to complete their coordination work," ECF No. 9445, which the Court granted, ECF No. 9448.  On December 8, 2023, the original due date, the *Ashton* Plaintiffs notified the Court and Saudi Arabia that a new MPS production had arrived.  That timing suggests the real, undisclosed reason for Plaintiffs' extension request was to obtain new material for their opposition and to circumvent the Court's ruling that it would not further extend deadlines based on delays in governmental productions.

[4] From counsel's review, it appears that the new video of the gathering, lodged as Exhibit 10K to Plaintiffs' January 18, 2024 opposition to Saudi Arabia's renewed motion to dismiss, contains footage not included in the March 2022 MPS Production at 18:59-21:33, 27:29-27:58, and 28:53-28:56.

[5] The video lodged as Exhibit 10F to Plaintiffs' opposition to Saudi Arabia's renewed motion to dismiss ("Pls. MTD Opp. Ex. 10F") shows these locations at 8:38-9:10, 9:30-13:03, 17:26-18:16, 23:11-23:57, 24:45-25:05, 29:50-30:10, 32:00-32:37, and 33:12-33:26.

- 4 -

about 16 minutes show the artwork inside.[6]  The parts of the video at the Embassy and the

Islamic Center show Al Bayoumi speaking with Adel Al Sadhan and Mutaeb Al Sudairy.[7]

      **4.**      On December 20, 2023, Plaintiffs filed their opposition to Saudi Arabia's

renewed motion to dismiss.  In support of their opposition, they filed a 563-page Averment of

Facts, containing 2,118 paragraphs, with 695 numbered exhibits.  Several of those exhibits are

compilations of many documents:  for example, Exhibit 2 contains the FBI's entire production

under Executive Order 14040 – more than 4,300 pages.  Among the exhibits are three fact

declarations and two expert declarations that were not disclosed by the applicable deadlines.

      **a.**      Brian Weidner is a former FBI agent who retired in 2008 and has worked for

Kreindler & Kreindler LLP as a consultant since November 2020.  ECF No. 7384-1, ¶¶ 1, 3.

Plaintiffs did not produce any declaration from Weidner during discovery, but submitted one

with their opposition to the renewed motion to dismiss.  ECF No. 9500-3 ("Weidner Decl.").

Weidner's declaration discusses his FBI work from 2002 to 2008.  *Id.* ¶¶ 4-12.  He states that he

investigated "religious extremism" and makes claims about "Saudi government institutions,

personnel, and agents" that favored "extremism" and "support[ed] . . . jihadists."  *Id.* ¶¶ 4, 7.

      Weidner also discusses an FBI electronic communication titled "Connections to the Attacks

of September 11, 2001," dated July 23, 2021.  Weidner Decl. Ex. 1 ("July 2021 EC").  The FBI

released the July 2021 EC to the public in March 2022.  Weidner Decl. ¶ 11.  It is a document

created by a single author after the close of the FBI's "Operation Encore" investigation for the

---

      [6] *Id.* at 33:12-33:26, 35:40-35:50, 38:23-41:34, 41:54-43:02, 57:34-1:01:35 (8 minutes 44 seconds of the Capitol exterior or adjacent areas; but note that 40:00-41:00, 57:34-57:47, 58:30-58:49, 1:00:15-1:00:47 do not show the Capitol itself); *id.* at 41:34-41:52, 43:02-57:34 (14 minutes 50 seconds of the Capitol interior).

      [7] *E.g.*, *id.* at 8:38-9:10 (outside Embassy); *id.* at 9:30-10:17 (outside Islamic Center); *id.* at 10:18-13:03 (inside Islamic Center).

purpose of "consolidat[ing] information" from previous preliminary investigative materials.  *Id.*, Ex. 1, at 479.  It is addressed "[t]o file," with disclaimers that it "should not be considered an intelligence assessment and is not intended as such"; and that the writer was "not investigating or re-investigating the 9/11 investigation" due to "a lack of resources and analytical assistance" and that as such the "writer has located relevant serials and . . . copied the information directly within th[e] communication."  *Id.* at 479, 481-82.[8]  Weidner purports not only to authenticate the July 2021 EC (prepared 13 years after he retired) but also to vouch for it:  he asserts that its contents are "true" and that he "concur[s]" with them.  Weidner Decl. ¶ 17.

b.      Usman Madha is a former employee of the King Fahad Mosque.  Plaintiffs produced a declaration from him during fact discovery, and he sat for a deposition.  *Supra* p. 2.  Plaintiffs then submitted a new declaration from him with their opposition to the renewed motion to dismiss.  ECF No. 9500-4 ("Second Madha Decl.").  Madha's new declaration identifies individuals in videos and photographs that were part of the March 2022 MPS Production.  *Id.* ¶¶ 4-12.  Madha signed his new declaration on November 14, 2023, before the December 2023 MPS Production.  It does not address any documents that Plaintiffs have not had since March 2022.

c.      James Heavey is an employee of the Parks and Recreation Department of Greenwich, Connecticut.  Plaintiffs did not produce a declaration from him during fact discovery.  They submitted one with their reply in support of their *Daubert* motions and resubmitted it with their opposition to the renewed motion to dismiss.  ECF No. 9500-5 ("Heavey Decl.").  His

---

[8] The July 2021 EC was among the documents on which the *Ashton* Plaintiffs relied in their unsuccessful attempt to reopen discovery in early 2023, *see* ECF No. 8871, at 2, 4 (citing ECF No. 8871-03), and which this Court rejected, ECF No. 9231, at 4-5 (explaining that the "*Ashton* Plaintiffs' purported new evidence fails to elucidate the allegations that Saudi Arabia facilitated the 9/11 Attacks" and does not "alter this Court's prior conclusions").

declaration addresses the visibility of the Manhattan skyline from Greenwich Point Park.  *Id.* ¶ 2.
Plaintiffs do not challenge the Court's decision to strike the Heavey declaration as untimely.

> **d.**     Bassem Youssef is a former FBI agent who retired in 2014.  Plaintiffs disclosed

him as an expert and served a report from him on April 1, 2022, which he continued to modify

until May 3, 2023.  *Supra* pp. 3-4.  Saudi Arabia has moved to exclude that report, challenging

Youssef's qualifications, methodology, data, and disregard for limits on expert testimony.  ECF

No. 9088, at 18-19, 23-24, 26-34, 53-61.  Saudi Arabia also took Youssef's deposition in June

2022, at which time he clarified that he was not giving any opinion regarding specific

foreknowledge of the 9/11 attacks.  ECF No. 9510-2, at 394:17-19 ("I've not asserted that

anyone knew of the specific 9/11 attacks, the type of attacks, or the date.").

> Plaintiffs submitted a new declaration from Youssef in support of their opposition to the

renewed motion to dismiss, which purports to "supplement" his report.  ECF Nos. 9500-9 &

9500-10 ("Youssef Decl."), ¶ 1.  In that declaration, Youssef opines that the video of Al

Bayoumi's summer 1999 visit to Washington is a "casing report of the . . . Capitol . . . for the

purpose of planning a future terrorist attack against the United States," *id.* ¶ 8; *see id.* ¶¶ 5-36;

that Al Bayoumi's letters "conveyed messages regarding . . . extremist activities and disguised

their true meaning by using code," *id.* ¶ 38; *see id.* ¶¶ 37-59; that the video of the February 2000

gathering shows Al Bayoumi "setting . . . up . . . and documenting[ ] a local support network of

named and known individuals" for the hijackers, *id.* ¶ 84; *see id.* ¶¶ 60-103; and that other

materials produced by the MPS "pertain to Bayoumi['s] and [Fahad Al] Thumairy's contacts and

communications patterns," *id.* ¶ 104; *see id.* ¶¶ 104-111.

> **e.**     William Adams is a video producer and graphic animator.  Plaintiffs did not

produce any declaration from Adams during discovery, but submitted one with their opposition

to the renewed motion to dismiss.  ECF No. 9500-6 ("Adams Decl.").  Plaintiffs retained Adams

no later than August 2023 and provided him with video files from the March 2022 MPS

Production, *id.* ¶ 9, but did not disclose at any time before December 2023 that they planned to

submit a declaration from him.  Adams's declaration presents him as a "camera-matching

expert" with experience in "digital visualization."  *Id.* ¶¶ 2, 4.  He purports "to generate a 3D

digital visualization" of the February 2000 gathering.  *Id.* ¶ 6.  He also purports "to establish the

identities of the participants at the event on the video, and accurately track their

positions/movements in the defined space in which the event was recorded."  *Id.* ¶ 14.  He

describes various Internet and other research that he performed.  *Id.* ¶¶ 16-27.

     **5.**     On December 29, 2023, Saudi Arabia moved to strike parts of Plaintiffs' brief and

Averment because Plaintiffs had violated the Court's order requiring the parties to set forth all

facts on which they would rely in their briefs.  ECF No. 9500, at 1-2 (citing ECF No. 9026, at 4).

Saudi Arabia further moved to strike the newly filed declarations of Weidner, Madha, Heavey,

Youssef, and Adams because they were submitted long past the deadlines set by the Court.  *Id.* at

2-5.  Dallah Avco joined Saudi Arabia's motion, ECF No. 9501; Plaintiffs opposed, ECF Nos.

9504, 9505; and Saudi Arabia and Dallah Avco replied, ECF Nos. 9510, 9511.

     **6.**     On January 26, 2024, the Court granted the motions in part and denied them in

part.  ECF No. 9562 ("January 26 Order").  The Court declined to strike parts of Plaintiffs'

opposition brief and Averment.  It stated that, "[a]t the very least, the Plaintiffs violated the spirit

of" the Court's briefing order and that "Defendants raise legitimate questions as to whether

[Plaintiffs'] citations are proper."  *Id.* at 5.  Nevertheless, the "procedural posture . . . and the

importance of the issues raised . . . weigh[ed] against excluding marginal portions of the

Plaintiffs' filings," as did the "substantial delay" if Plaintiffs had to rewrite and refile.  *Id.*

     The Court struck Plaintiffs' new declarations.  It looked to Federal Rule of Civil

Procedure 37(c)(1), which provides for preclusion of certain evidence that has not been timely

disclosed "unless the failure was substantially justified or is harmless."  The Court also

considered the factors from *Outley v. City of New York*, 837 F.2d 587 (2d Cir. 1988):

> "(1) the party's explanation for the failure to comply with the discovery order;
> (2) the importance of the testimony of the precluded witness; (3) the prejudice
> suffered by the opposing party as a result of having to prepare to meet the new
> testimony; and (4) the possibility of a continuance."

January 26 Order 6 (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955,

961 (2d Cir. 1997)).  For each witness, the Court concluded that Plaintiffs' untimely disclosure

was neither substantially justified nor harmless and that *Outley* supported striking the declarations.

## STANDARD OF REVIEW

Plaintiffs both move for reconsideration and object to a nondispositive order.  The Court

has previously dealt with many similar requests; the governing standards are familiar.

> The standard for granting . . . [reconsideration] is strict, and reconsideration will
> generally be denied unless the moving party can point to controlling decisions or
> data that the court overlooked – matters, in other words, that might reasonably be
> expected to alter the conclusion reached by the court.

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), *cited in, e.g.*, ECF Nos. 4350,

6481, 9020.  A motion for reconsideration should not be used as "a vehicle for relitigating old

issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise

taking a 'second bite at the apple.' "  *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36,

52 (2d Cir. 2012), *quoted in* ECF Nos. 9020, 9317.

Parties making Rule 72(a) objections likewise bear a "heavy burden."  *U2 Home Entm't,*

*Inc. v. Hong Wei Int'l Trading Inc*., 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007), *cited in*,

*e.g.*, ECF Nos. 9231, 9242, 9305.  They must show that a magistrate judge's nondispositive

rulings were "clearly erroneous" or "contrary to law."  Fed. R. Civ. P. 72(a); *see* 28 U.S.C.

§ 636(b)(1)(A) (same).  An order is "clearly erroneous" only where "the reviewing court on the

entire evidence is left with the definite and firm conviction that a mistake has been committed."

*Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 177 (S.D.N.Y. 2008), *quoted in*, *e.g.*, ECF Nos. 9242, 9305, 9317.  "An order is contrary to law where it fails to apply or misapplies relevant statutes, case law or rules of procedure."  *MacNamara v. City of New York*, 249 F.R.D. 70, 77 (S.D.N.Y. 2008) (cleaned up), *quoted in, e.g.*, ECF Nos. 9242, 9305, 9317.  In addition, this Court has accorded "particular deference" to Judge Netburn's rulings because she has been "'deeply involved in discovery matters in th[is] case for years.'"  *E.g.*, ECF No. 9317, at 4 (quoting *Lugosch v. Congel*, 443 F. Supp. 2d 254, 276 (N.D.N.Y. 2006)).

## ARGUMENT

**I.     Plaintiffs Offer No Grounds To Reconsider, Modify, or Set Aside the January 26 Order as to the Fact Declarations**

**A.     The Court Properly Struck Weidner's Declaration**

**1.**     The January 26 Order reasoned (at 7) that Weidner's declaration enters the "province of a fact witness" by discussing "Weidner's role and FBI operations" and "[his] own conclusions."  It observed (at 7) that Plaintiffs failed to justify "waiting 21 months" after the FBI's March 2022 production to produce Weidner's declaration and gave "no reason to doubt the prejudice to Defendants that comes with being denied the opportunity to depose him."  It found (at 8) that the *Outley* factors warranted exclusion:  Plaintiffs' explanation for their delay was "flimsy," they offered no "assessment of the independent 'importance' of Weidner's testimony," Defendants showed prejudice, and "a 'continuance' is not in the interests of this litigation."

**2.**     Reconsideration should be denied because Plaintiffs identify nothing about Weidner's declaration "that the [C]ourt overlooked" or "that might reasonably be expected to alter [its] conclusion."  *Shrader*, 70 F.3d at 257.  They assert (at 8, 18) that Plaintiffs' counsel "did not consult with Weidner regarding the FBI's July 2021 EC until September 2023," so that Plaintiffs' counsel "only learned" of the information in his declaration at that time.  Assuming

that is true, Plaintiffs' failure to ask questions of their own consultant who has worked for them since November 2020 is neither substantial justification under Rule 37 nor a good explanation under the first *Outley* factor.  *See Preuss v. Kolmar Lab'ys, Inc.*, 970 F. Supp. 2d 171, 180 (S.D.N.Y. 2013) ("[C]ounsel's lack of diligence does not excuse Rule 26 violations.").[9]

Plaintiffs also assert (at 8, 18) that Weidner was "known to Saudi Arabia because he was responsible for investigating Saudi officials" before his retirement.  They cite nothing to show that Weidner was known to any witness available to Saudi Arabia, much less to Saudi Arabia's counsel, before his identity was disclosed in the Kreindler sanctions proceedings.  Nor did Saudi Arabia know before December 2023 that Plaintiffs meant to use Weidner as a witness.  *See Preuss*, 970 F. Supp. 2d at 179 (striking declaration where it "d[id] not appear that [the movants] would have been on notice of the potential use of [the declarant] as a witness").

**3.**    Plaintiffs' Rule 72 objections fail because they show neither clear error nor any law to which the January 26 Order was contrary.  They cite (at 18-19) *Outley* and *Preuss* to argue that "this Court erred by not curing the claimed prejudice by ordering a deposition of Weidner."  Both cases recognize that a "district court has wide discretion" in selecting a remedy for discovery violations.  *Outley*, 837 F.2d at 590; *see Preuss*, 970 F. Supp. 2d at 175 ("broad discretion").  The Court's exercise of discretion here was amply supported by the repeated extensions Plaintiffs have already received, *supra* pp. 2, 4 n.3; the Court's previous rulings denying attempts to reopen discovery, *supra* pp. 2-3; Plaintiffs' failure to inform Saudi Arabia about Weidner's declaration until the day they filed their opposition; and "the strong interests in avoiding . . . further delay."  January 26 Order 13; *cf. Softel*, 118 F.3d at 963 ("[T]he enormous length of every step of the proceedings in this case militated against any more continuances").

---

[9] Also, Plaintiffs cite (at 8) paragraph 11 of Weidner's declaration as support for their statement that they did not question him until September 2023, but Weidner says no such thing.

B.    **The Court Properly Struck Madha's New Declaration**

1.    The January 26 Order observed (at 8) that Plaintiffs produced Madha's new declaration "years after the fact discovery deadline." It rejected (at 8-9) Plaintiffs' argument that the new declaration is a "supplement" both because Plaintiffs "identif[ied] nothing in Madha's original declaration that was rendered 'incomplete or incorrect' such that a Rule 26(e) supplement was appropriate" and because, even if they had, supplementation "21 months" after "the MPS's March 2022 document release" was not "'timely' as required by Rule 26(e)." It found (at 9) that Plaintiffs' late production was neither substantially justified nor harmless, and that the *Outley* factors favored exclusion, for substantially the same reasons as with Weidner.

2.    Plaintiffs fail to identify anything that the Court overlooked that would reasonably change its decision. They assert (at 18) that the Court "overlooked that *Preuss* . . . supports denying a motion to strike a well-known witness." (Emphasis omitted.) Plaintiffs did not make that argument in their opposition to the motion to strike, ECF No. 9504, at 4 (discussing Madha), so it is forfeited. *See Sokolow v. PLO*, 607 F. Supp. 3d 323, 327 n.5 (S.D.N.Y. 2022) (Daniels, J.) ("Motions for reconsideration are not to . . . raise new arguments that could have been raised earlier."). In any event, the part of *Preuss* that Plaintiffs cite involved movants who had known not only the relevant witnesses' "identities" but also "the scope of their knowledge"; and new "affirmations [we]re largely duplicative." 970 F. Supp. 2d at 177. Neither is the case here.

3.    Plaintiffs' argument that the Court clearly erred relies (at 17) on the incorrect statement that Madha's declaration is limited to "identifications of individuals and locations already described in his prior testimony." To the contrary, his new declaration also discusses the chronology of events, Second Madha Decl. ¶¶ 5-6, 10; characterizations of interactions in the video footage, *id.* ¶ 8; and a statement that various unnamed individuals were "students from Saudi Arabia," *id.* ¶ 12. Although Saudi Arabia disputes the relevance of any of Madha's new

testimony, Plaintiffs assert that it is relevant yet delayed producing it until they filed their

opposition.  Under those circumstances, it was properly struck.

## II.      Plaintiffs Offer No Grounds To Reconsider, Modify, or Set Aside the January 26 Order as to the Purported Expert Declarations

### A.      The Court Properly Struck Youssef's Declaration

The January 26 Order observed (at 13) that "the Plaintiffs do not defend the timing of

[their] production" of Youssef's new declaration.  The Court found (at 13) both that "Rule 26(e)

likely does not authorize Youssef II as a supplement because much of it falls outside the scope of

his original declaration" and that, "even if it did, the Court would be troubled by the Plaintiffs'

decision to wait until December 2023 to produce a supplemental report that relies heavily on

material released in March 2022."  The Court concluded (at 13) that Plaintiffs' delay precluded

any substantial justification, that "a surprise expert report produced in the middle of briefing a

dispositive motion [is not] 'harmless,'" and that "[t]he *Outley* factors lead to the same result."

#### 1.      The June 1999 video

a.      Plaintiffs' primary contention as to Youssef is that he should be permitted to

opine on the June 1999 video Al Bayoumi took in Washington, D.C.  None of their arguments

meets the standard for reconsideration, which they make little effort to address.  They instead

improperly seek "a 'second bite at the apple.'"  *Analytical Survs.*, 684 F.3d at 52.  To the extent

they accuse the Court (at 9) of "overlook[ing] its obligation[] to '. . . consider less drastic

responses'" or its "'duty to do justice'" (quoting *Outley*, 837 F.2d at 589, 591), that rhetoric

mischaracterizes the January 26 Order, which assessed the *Outley* factors for every declarant and

explained why a continuance to allow depositions would be inappropriate.  *Supra* pp. 8-9.

In addition, Plaintiffs' focus on the June 1999 video as a stand-alone issue is a "new

theor[y]" that cannot properly be raised on a motion for reconsideration.  *Analytical Survs.*, 684

F.3d at 52.  Nowhere in their opposition to Saudi Arabia's motion to strike did they suggest that Youssef should be permitted to opine on the June 1999 video even if the rest of his opinions were struck.  ECF No. 9504, at 4-5.[10]  The Court accordingly addressed Youssef's declaration as a whole and correctly observed (at 13) that it "relie[d] heavily on material released in March 2022."  Plaintiffs now mischaracterize (at 2) that statement as specifically referring to "Youssef's opinions about the footage from the June-July 1999 D.C. trip."  In fact, that statement referred to Youssef's entire new declaration.  It was no abuse of the Court's discretion to consider the declaration as a whole, especially given that the parties had done so.

> **b.**     Plaintiffs also fail to show clear error or any misapplication of law.

> **i.**     Plaintiffs err in appealing (at 10) to the principle that "parties [should] be allowed to use newly discovered evidence in their case."  Saudi Arabia has not moved to preclude the use of the June 1999 video, for whatever that video may be worth.  But parties cannot generate new expert opinions at will.  ECF No. 8905, at 5-6 (explaining that such a rule would leave "every expert-worthy lawsuit . . . stuck in disclosure purgatory, with parties producing supplemental reports any time it served their litigation strategies"); *see also, e.g., Rodriguez v. Vill. of Port Chester*, 535 F. Supp. 3d 202, 211 (S.D.N.Y. 2021) ("Despite litigants' ongoing obligation to timely supplement or correct a disclosure that is incomplete or incorrect, 'experts are not free to continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined upon, or to continually supplement their opinions.'") (citation omitted).

> **ii.**     Contrary to Plaintiffs' assertion (at 13-14), Youssef's opinions as to the June 1999 video were outside the scope of his report.  Plaintiffs resort (at 13-14) to generalities,

---

[10] Plaintiffs complain (at 9) that the "letter-brief format" on which the motion to strike was briefed gave them insufficient space to make all the arguments they wanted to make.  If so, they could have sought additional pages or full motion briefing before the Court ruled.  A motion for reconsideration is too late to raise the point.

claiming that his "core opinions [were] that Bayoumi was directed by Saudi Embassy officials . . . to provide support to Al Qaeda and the 9/11 hijackers."  But Youssef conceded at his deposition that he was not opining "that anyone knew of the specific 9/11 attacks" or "the type of attacks."  ECF No. 9510-2, at 394:17-19.  He now says that the June 1999 video "was intended to be shown to Al Qaeda for the purposes of targeting the Capitol in its 'planes operation.'"  Youssef Decl. ¶ 28; *see also id.* ¶ 36 (attributing knowledge to Khalid Al Sowailem, Al Bayoumi, Fahad Al Thumairy, Al Sudairy, and Al Sadhan).  That difference is material.

      **iii.**    Plaintiffs fail not only to show, but even to argue anywhere in their objections, that the release of the June 1999 video rendered Youssef's earlier report "in some material respect . . . incomplete or incorrect."  Fed. R. Civ. P. 26(e).  Without such a showing, they cannot establish that Youssef could properly supplement his report.  *See* ECF No. 8905, at 5 (explaining that Rule 26(e) "governs a party's duty to amend initial expert disclosures" and that this duty "exists for the benefit of the opposing party, not the proffering one").

      **iv.**    Plaintiffs fail to establish (at 10-12) the "importan[ce]" of Youssef's opinion that the video constitutes a "casing report."  The January 26 Order does not (and did not need to) address the merits of Youssef's opinion.  But as Plaintiffs choose to do so in their objections, it is fair to respond that this opinion should not be taken seriously.  As set out above, the hour-long video has only seven minutes of footage of the outside of the Capitol, taken at ground level.  *Supra* pp. 4-5.  The vast majority of the video – including footage of the White House, the Washington Monument, the Smithsonian Institute, the National Mall, the Saudi Embassy, and the Islamic Center of Washington, D.C., as well as the artwork on the inside of the Capitol, *id.* – has no possible connection to a plan to crash an airplane into the Capitol.  In the video, Al Bayoumi shows an interest in beautiful flower beds, old-fashioned lamp posts, water fountains,

and even a squirrel running across the White House lawn.  He introduces himself to other tourists along the way and ends by filming the exterior of the hotel "where I live."[11]  This is nothing more than a tourist video.  It bears no similarity to actual Al Qaeda casing reports on U.S. targets, which included "very detailed" logistic and structural reports on potential targets.[12]

Youssef's casing-report theory is also implausible for other reasons.  As the FBI found in closing Operation Encore in 2021, Al Qaeda kept knowledge of its attack plans tightly compartmentalized, not even sharing them with most of the hijackers until late 1999.  ECF No. 9390-1, ¶¶ 57, 60 (discussing ECF No. 9089-14, among other documents).  Youssef's opinion suggests that not only Al Bayoumi, but also Al Sowailem, Al Sadhan, and Al Sudairy, knew the method and at least one target of the plan even before the participants.  Youssef's opinion also requires the Court to believe that Al Bayoumi (supposedly a trained operative) made a videotaped casing report that he kept in his apartment for months after the 9/11 attacks, mixed in with his personal effects, without any other mention of it appearing in the 20-year investigation of the 9/11 attacks.  No expertise is required to see those obvious flaws in Youssef's story.

**v.**     Nor is there merit to Plaintiffs' contention (at 12-13) that Saudi Arabia is not prejudiced or that prejudice could be cured merely by deposing Youssef.  By producing a new opinion for the first time with their opposition, Plaintiffs prevented Saudi Arabia not only from deposing Youssef as to that opinion, but also from including a rebuttal of that opinion in

---

[11] *See, e.g.*, Pls. MTD Opp. Ex. 10F at 17:49-17:55, 21:19-21:27, 29:58-30:11, 50:47-50:55, 1:00:16-1:00:45, 1:06:05-1:06:28.

[12] ECF No. 9093-1 (Sageman Rep.) at 258 (describing examples including a "35-page report" prepared by Al Qaeda member Dhiren Barot that contained "background information on [a] building, its height, number of floors, building material, pictures, and diagrams of the general layout"; its "various supporting columns . . . , atrium, and other structural information"; the "security features of the building and its environment"; "traffic signals and patterns"; "escape routes"; and "five possible plans of attack, weighing the benefits and risks of each").

Sageman's report and from addressing that opinion in its *Daubert* challenge to Youssef's opinions. Doing all those things would require a substantial continuance, which the Court reasonably found (at 13) weighed against "strong interests in avoiding . . . further delay."

## 2.   The February 2000 video

Plaintiffs show no grounds for reconsideration or review of the Court's ruling striking the part of Youssef's new declaration (¶¶ 60-103) that discusses Adams's declaration and exhibits. They assert (at 14-16) that Youssef "authenticates" and "explains" the Adams exhibits. The Court need not address that argument for two reasons. *First*, it was not raised in Plaintiffs' opposition to the motion to strike. ECF No. 9504, at 4-5. *Second*, if the Court adheres to its rulingstriking Adams's declaration and exhibits (as it should, *infra* pp. 18-19), the point is moot.

Even if Adams's exhibits were to stay in, Youssef's testimony about them would still be improper. Youssef does not merely authenticate or even explain the exhibits. He describes them as "new evidence" that allows him to "state . . . findings," Youssef Decl. ¶ 66, and makes substantive assertions about the exhibits and what they show.[13] Plaintiffs have not shown that Youssef could not have made those assertions based on the videos in the March 2022 MPS Production, which showed substantially all of the gathering. *Supra* p. 3; *see also supra* p. 4 (Youssef's May 2023 representation that he had conducted a "detailed review of the MPS videos and photos"). The Court properly found them to be an unjustified and untimely supplement.[14]

---

[13] *See*, *e.g.*, Youssef Decl. ¶ 72 (asserting that the video was "[c]ontrary to the 9/11 Commission's assessment" of the gathering); *id.* ¶ 83 (interpreting Al Bayoumi's use of the term "brothers" to refer to Al Hazmi and Al Mihdhar); *id.* ¶ 84 (speculating that the recording was part of an "operational strategy"); *id.* ¶ 85 (speculating that Al Bayoumi "instructed Morgan not to film Hazmi or Mihdhar"); *id.* ¶ 91 (asserting that "[i]t is significant" that Al Thumairy had "phone contact" with those who "attended"); *id.* ¶ 102 (criticizing the 9/11 Commission).

[14] Plaintiffs assert (at 16) that "the videos containing footage of the party were returned to Bayoumi in May 2002" (emphasis omitted), citing what appears to be an MPS slide presentation. Al Bayoumi testified that "the last time [he] saw" the "video" of "the party" was "[w]hen [he]

### 3.    Al Bayoumi's correspondence

Plaintiffs show no grounds for reconsideration or review of the Court's ruling striking the part of Youssef's new declaration (¶¶ 37-59) that discusses Al Bayoumi's correspondence.  They do not dispute that this part of his declaration relies solely on documents that the MPS produced in March 2022 and that Youssef could have cited either in his original report or, at latest, in his May 2023 supplement to that report.  Instead, they contend (at 19) that Youssef did not need to "provide[] supplemental 'progress reports' on an incremental basis."  To be clear, Youssef's report was due April 1, 2022.  The Court's denial of an extension of that deadline, ECF No. 7752, is no longer up for debate.  Rule 26(e) permitted Youssef to supplement that report only if it was incomplete or incorrect, and then only in a timely fashion.  Plaintiffs' quarrel is with the Federal Rules, not with the January 26 Order.[15]

### B.    The Court Properly Struck Adams's Declaration

The January 26 Order observed (at 11) that "Plaintiffs do not dispute that the Adams declaration was prepared after the April 1, 2022 deadline for affirmative expert reports."  It rejected (at 11-12) Plaintiffs' contention that the deadline did not apply to Adams because his submission was "a 'demonstrative,'" instead looking to "the contents of [Adams's] testimony" to conclude that he was an "expert[] . . . purport[ing] to apply 'specialized knowledge' and 'technical' skills to 'facts' and 'data' to 'help the trier of fact'" (quoting Fed. R. Evid. 702), such

---

handed it to the British police."  Pls. Aver. Ex. 120, at 464:10-24.  That dispute is irrelevant to the Court's order; either way, Plaintiffs had the relevant video no later than March 2022.

[15] Plaintiffs take another potshot (at 19) at Saudi Arabia's discovery responses, asserting that Saudi Arabia should have produced Al Bayoumi's correspondence earlier, and is therefore at "fault in causing any delay."  That is again irrelevant to the present issue and also baseless.  Plaintiffs' mere assertion that Saudi Arabia should have been able to locate copies of the correspondence does not show that these decades-old documents even exist in Saudi Arabia's records or that Saudi Arabia's searches were not reasonable.

as by "conduct[ing] his own independent research and purport[ing] to analyze the information he found." The Order further found (at 12) that Plaintiffs' disclosure was not substantially justified because it had previously declined "to put jurisdictional discovery on hold" for third-party governmental productions and because Plaintiffs had not even "s[ought] the Court's permission" "to reopen discovery" in light of the MPS production; that the late production caused "prejudice" because "Defendants . . . had no opportunity to depose Adams or challenge his methods"; and that, "[f]or similar reasons, the *Outley* factors advise exclusion."

Plaintiffs repeat (at 14) their argument that "Adams offers no expert opinions" but merely "affirm[s] the accuracy and validity of the demonstrative he produced." In doing so, they disregard the Court's finding, which is firmly supported by Adams's declaration.[16] Plaintiffs can obtain neither reconsideration nor review by ignoring the reasons for the Court's ruling against them and the contents of their own submissions.

* * *

Saudi Arabia is authorized to state that Dallah Avco joins in this opposition. Although this opposition cites to materials that are under seal, it discloses no material that Saudi Arabia considers confidential. In addition, the FBI has confirmed that no redactions are required for FBI confidential material. Accordingly, Saudi Arabia is filing on the public docket.

---

[16] *See* January 26 Order 11-12; Adams Decl. ¶¶ 1-7 (status as an "expert," qualifications, and "methodologies"); *id.* ¶ 6 (assignment to find "unique identifying characteristics" to "identify[ ]" individuals in video); *id.* ¶¶ 18-26 (personal research using Internet sources); *id.* ¶ 27 ("knowledge of the applicable standard door and appliance sizes" and use of "standard techniques . . . in [his] field"); *id.* ¶¶ 31-33, 36 (opinions as to individuals' "identi[ties]"); *id.* ¶ 35 ("professional knowledge of camera types and film backs"); *id.* ¶ 39 (claim to "present" statements about "the presence, positioning/movement, and identities of a total of 29 individuals at the event" "with a high level of certainty as a professional in [his] field").

## CONCLUSION

Plaintiffs' motion for reconsideration should be denied, and their Rule 72 objections should be overruled.

Dated:  February 23, 2024            Respectfully submitted,

/s/ *Michael K. Kellogg*

Michael K. Kellogg
Gregory G. Rapawy
Andrew C. Shen
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900
(202) 326-7999 (fax)

*Attorneys for the Kingdom of Saudi Arabia*

- 20 -

## CERTIFICATE OF SERVICE

I hereby certify that, on February 23, 2024, I caused a copy of the foregoing Opposition to Plaintiffs' Motion for Reconsideration of and Rule 72 Objections to the January 26, 2024 Order filed by the Kingdom of Saudi Arabia to be served electronically pursuant to the Court's ECF system.

/s/ *Michael K. Kellogg*

Michael K. Kellogg
*Attorney for the Kingdom of Saudi Arabia*