# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN) |
|---|---|
| | ECF Case |

**This document relates to:**

*Burnett, et al. v. Islamic Rep. of Iran, et al.*, No. 15-cv-9903 (GBD)(SN)

*Prior, et al. v. Islamic Rep. of Iran*, No. 19-cv-44 (GBD)(SN)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT AS TO LIABILITY AND PARTIAL FINAL DEFAULT JUDGMENTS ON BEHALF OF PERSONAL REPRESENTATIVES OF ESTATES OF NON-NATIONAL 9/11 DECEDENTS

## (*BURNETT* NON-NATIONALS 1)

## INTRODUCTION

For the reasons set forth below and in the accompanying declaration of John M. Eubanks ("Eubanks Declaration"), Plaintiffs in the *Burnett*[1] action pending before the Court seek default judgment as to liability for the following classifications of Plaintiffs:

(1) Plaintiffs who are personal representatives of the estates of individuals who were killed in the terrorist attacks on September 11, 2001 who were not United States nationals at the time of their death;

(2) Plaintiffs who are immediate family members (spouses, children, parents, and siblings and including personal representatives of the estates of immediate family members who passed away between September 11, 2001 and now) of individuals who were killed in the terrorist attacks on September 11, 2001 where neither the 9/11 decedent nor their immediate family member was a United States national on September 11, 2001;

(3) Plaintiffs who assert claims as the "functional equivalents" of an immediate family member (spouse, child, parent, or sibling) of an individual who was killed in the terrorist attacks on September 11, 2001 where neither the 9/11 decedent nor the functional equivalent of an immediate family member was a United States national on September 11, 2001; and

---

[1] There is a single estate that appears in the *Prior* case that relies on the allegations and counts included in the *Burnett* case, so references to the *Burnett* Plaintiffs should, therefore, also include that singular *Prior* plaintiff.

(4) Plaintiffs who sustained physical injuries proximately caused by the terrorist attacks on September 11, 2001 who were not United States nationals on September 11, 2001. These Plaintiffs submit that default judgment as to liability should be entered pursuant to the exception to foreign sovereign immunity codified at 28 U.S.C. § 1605B(b) and the common law of New York, Pennsylvania, and Virginia.

Furthermore, the Plaintiffs identified in Exhibits A and B to the Eubanks Declaration—who are the personal representatives of the estates of non-United States-national 9/11 decedents killed in New York City and Arlington, Virginia, respectively—respectfully move this Court for partial default judgment awarding them (1) compensatory damages for pain and suffering for those individuals killed in New York City in the same per estate amount previously awarded by this Court for other estates of decedents killed in the terrorist attacks on September 11, 2001 with claims arising under 28 U.S.C. § 1605A(c); (2) economic-loss damages for the plaintiffs identified in the expert reports attached as Exhibit C to the Eubanks Declaration and filed on ECF under seal pursuant to the Court's May 5, 2022 order, ECF No. 7963; (3) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; (4) permission for the *Burnett* plaintiffs identified in Exhibits A or B to seek punitive damages, economic damages, or other damages at a later date; and (5) for all other *Burnett* Plaintiffs not appearing on Exhibits A or B whose claims are subject to the jurisdiction of this Court against the Islamic Republic of Iran, the Islamic Revolutionary Guard Corps, and the Central Bank of the Islamic Republic of Iran (collectively the "Iran Defendants") solely under the exception to sovereign immunity found at 28 U.S.C. § 1605B(b), to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

## PROCEDURAL BACKGROUND

Plaintiffs sued the Iran Defendants in connection with the deaths of plaintiffs' decedents in the 9/11 Attacks.  On December 1, 2016, plaintiffs in the action *Burnett, et al. v. Islamic Rep. of Iran, et al.*, Case No. 15-cv-9903 (GBD)(SN) ("*Burnett/Iran*"), whose claims arose pursuant to the private right of action codified at 28 U.S.C. 1605A(c) moved for judgment as to liability only.  15-cv-9903, ECF Nos. 65, 66, amended on December 6, 2016, 15-cv-9903 ECF Nos. 68, 69.  On January 31, 2017, the Court entered judgment as to liability only against the Iran Defendants.  *See* 15-cv-9903, ECF No. 85.[2]

Since the entry of liability under 28 U.S.C. § 1605A(c), this Court has awarded damages to thousands of Plaintiffs whose loved one who was killed was a U.S. citizen on September 11, 2001 or who were themselves U.S. citizens on that date.  Now, those Plaintiffs who do not qualify for judgments under the exception to sovereign immunity found at 28 U.S.C. § 1605A, as described above, seek entry of liability against the Iran Defendants pursuant to the exception to sovereign immunity found at 28 U.S.C. § 1605B(b) and pass through to state law.  Further, the Plaintiffs on Exhibit A are the personal representatives of 9/11 decedents who were not U.S. citizens at the time of their death who were killed in New York, and they seek damages for both pain-and-suffering damages and economic-loss damages as set forth in Exhibit A.  The Plaintiffs on Exhibit B are the personal representative of 9/11 decedents who were not U.S. citizens at the time of their death who were killed in Virginia in the vicinity of the Pentagon, and they seek damages for economic loss as set forth on Exhibit B as Virginia law does not permit recovery under both wrongful death and survival/conscious pain and suffering. These Plaintiffs submit that the Court possesses subject-matter jurisdiction and personal jurisdiction over the Iran Defendants.

---

[2] In the *Prior* case, judgment as to liability under 28 U.S.C. § 1605A(c) was entered on September 6, 2019.  *See* ECF No. 5088.

**ARGUMENT**

**I.    This Court Possesses Subject-Matter Jurisdiction Over the Iran Defendants.**

This Court recently addressed liability for a non-U.S.-national plaintiff in the *King* case within this MDL who sustained personal injuries in the attacks on September 11, 2001 and awarded damages to this plaintiff.  *See* ECF No. 9666. The claims of non-U.S. national victims and their non-U.S. national family members cannot be brought pursuant to 28 U.S.C. § 1605A(c)—the statute upon which the Court has granted relief in its prior decisions—because to bring such an action requires that the plaintiff be "(1) a national of the United States, (2) a member of the armed forces, (3) an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment, or (4) the legal representative of a person described in paragraph (1), (2), or (3), for personal injury of death…."  *See* 28 U.S.C. §§ 1605A(c)(1)-(4).  The plaintiffs in this motion do not fall within the parameters required to pursue a cause of action based upon the terrorism exception.

Therefore, these plaintiffs look to 28 U.S.C. § 1605B(b) to provide jurisdiction over their claims.  This section provides:

> A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which money damages are sought against a foreign state for physical injury to person or property or death occurring in the United States and caused by—
>
> (1) an act of international terrorism in the United States; and
>
> (2) a tortious act or acts of the foreign state, or of any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, regardless where the tortious act or acts of the foreign state occurred.

28 U.S.C. § 1605B(b).  Conspicuously absent from this exception to sovereign immunity is the requirement that the victim or their family members be U.S. nationals to pursue their claims.  This

differentiation between the terrorism exception found at Section 1605A and the Justice Against Sponsors of Terrorism Act found at Section 1605B derives from the location of act of terrorism as "occurring in the United States."

The Supreme Court has held that "a foreign state is immune from the jurisdiction of courts in this country unless one of several enumerated exceptions to immunity applies. 28 U.S.C. §§ 1604, 1605-1607. If a suit falls within one of these exceptions, the FSIA provides subject-matter jurisdiction in federal district courts." *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1053 (2019). In addressing the application of the exception to sovereign immunity codified at 28 U.S.C. § 1605B(b) to the terrorist attacks on September 11, 2001, Magistrate Judge Netburn provided the following analysis (subsequently adopted by Judge Daniels)—adjusted to address the circumstances at issue in this motion—in recommending that the exception applies here to provide the Court with subject-matter jurisdiction:

> [The victims'] claims plainly satisfy many of 28 U.S.C. § 1605B(b)'s requirements. [They are] seeking "money damages" from Iran. [28 U.S.C. § 1605B(b)"; *see* No. 15-cv-09903, ECF No. 53 at 1082-88 (*Burnett* complaint [at issue in this motion]). Those damages are for ["death occurring] in the United States." 28 U.S.C. § 1605B(b); *see* ECF No. 9154-7 at ¶¶ 5-33; No. 15-cv-09903, ECF No. 53 at 1081. [The deaths] were "caused" by the 9/11 Attacks. 28 U.S.C. § 1605B(b); *see* ECF No. 9154-7 at ¶¶ 5-33; No. 15-cv-09903, ECF No. 53 at 1081. And the 9/11 Attacks were "act[s] of international terrorism" on U.S. soil. 28 U.S.C. § 1605B(b); *see* No. 15-cv-09903, ECF No. 53 at 1081.
>
> One element of 28 U.S.C. § 1605B(b) merits closer attention: the requirement that "a tortious act or acts of the foreign state" "caused" the injury. For FSIA purposes, "a tortious act" includes the "knowing or deliberately indifferent provision of material support to terrorists," and "cause" incorporates "the traditional test for proximate causation[:] . . . 'some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered.'" *In re Terrorist Attacks on Sept. 11, 2001*, 298 F. Supp. 3d 631, 643, 645 (S.D.N.Y. 2018) (quoting *Owens v. Republic of Sudan*, 864 F.3d 751, 794 (D.C. Cir. 2017)). In simple terms, there must be a link between a state's support for terrorism and the plaintiff's injuries.
>
> The Court heard evidence linking Iran to the 9/11 Attacks in a 2011 hearing. Based on that record, it found that Iran was 'aware[] of[] and involve[d] in[]" al Qaeda's

> plans and provided "material support" to the terrorist group. *In re 9/11*, 2011 WL 13244047, at \*26, 41. It concluded that Iran's "material support" proximately "caused" the 9/11 Attacks and, by extension, the resulting injuries. *Id.* at \*41; *see* ECF No. 9154-7; *cf.* ECF No. 9274 at 3 (concluding that Iran proximately caused latent injuries). The evidence supporting those findings establishes the last element of 28 U.S.C. § 1605B(b)—that Iran's "tortious act[s]" "caused" [plaintiffs' deaths]. *See* ECF Nos. 2431, 2432, 2433, 2473.

*See* ECF No. 9506 at 6-7.  Magistrate Judge Netburn correctly concluded that these cases meet the jurisdictional threshold for establishing subject-matter jurisdiction over the Iran Defendants under 28 U.S.C. § 1605B(b), and the Court is free to exercise subject-matter jurisdiction here. This conclusion was subsequently adopted by the Court.  *See* ECF No. 9666 at 2-4.

## II.    This Court Possesses Personal Jurisdiction Over the Iran Defendants.

With subject-matter jurisdiction satisfied through the application of the exception found at 28 U.S.C. § 1605B(b), the Court must assess whether it has personal jurisdiction over the Defendants.  In *Harrison*, the Supreme Court held, "[t]he FSIA also provides personal jurisdiction 'where service has been made under [28 U.S.C. §] 1608." 139 S. Ct. at 1054.  Here, the Amended Complaint in this case was filed on February 8, 2016.  *See* 15-cv-9903, ECF No. 53.  Service of process on a foreign state or a political subdivision of a foreign state is governed by 28 U.S.C. § 1608(a) which "sets out in hierarchical order the . . . four methods by which '[s]ervice . . . shall be made.'" *Harrison*, 139 S. Ct. at 1054 (quoting 28 U.S.C. § 1608(a)).  There is no special arrangement for service of process between the Plaintiffs here and the Iran Defendants, so service on the Islamic Republic of Iran and its political subdivision the Islamic Revolutionary Guard Corps was not possible under 28 U.S.C. § 1608(a)(1).  Further, there is no applicable international convention on service of judicial documents to which both the United States and the Islamic Republic of Iran are parties such that service under 28 U.S.C. § 1608(a)(2) was also not possible. On March 1, 2016, Plaintiffs requested service of process on the Islamic Republic of Iran and the Islamic Revolutionary Guard Corps pursuant to 28 U.S.C. § 1608(a)(3) by requesting that the

requisite documents and Farsi translations be sent "by any form of mail requiring a signed receipt." The Clerk Certificate of Mailing on the Islamic Republic of Iran under 28 U.S.C. § 1608(a)(3) was docketed on March 7, 2016.  *See* 15-cv-9903, ECF No. 55.  The Clerk Certificate of Mailing on the Islamic Revolutionary Guard Corps was also docketed on March 7, 2016.  *See* 15-cv-9903, ECF No. 57.[3]

On May 2, 2016, after more than 30 days had passed since the Clerk's March 7, 2016 Certificates of Mailing without any response from the Islamic Republic of Iran or the Islamic Revolutionary Guard Corps, Plaintiffs sought service of process on these defendants pursuant to 28 U.S.C. § 1608(a)(4) via diplomatic channels through the U.S. Department of State.  On October 28, 2016, the Clerk of the Court received proof of service from the U.S. Department of State for service on both the Islamic Republic of Iran and the Islamic Revolutionary Guard Corps stating that "the documents were delivered to the Iranian Ministry of Foreign Affairs under cover of diplomatic note numbers 1069-IE and 1070-IE dated and delivered on September 14, 2016."  *See* 15-cv-9903, docket entry from October 28, 2016.[4]

The Central Bank of the Islamic Republic of Iran is an "agency or instrumentality" of the Islamic Republic of Iran, and service of process on an agency or instrumentality of a foreign state is governed by 28 U.S.C. § 1608(b).  Neither of the first two provisions in the hierarchical order of section 1608(b) applied in this instance, so on March 1, 2016, Plaintiffs requested service on the Central Bank of the Islamic Republic of Iran pursuant to 28 U.S.C. § 1608(b)(3).  The Clerk's Certificate of Mailing on the Central Bank of the Islamic Republic of Iran was docketed on March

---

[3] In *Prior*, the only defendant is Iran, and the Clerk Certificate of Mailing pursuant to 28 U.S.C. § 1608(a)(3) was issued on April 17, 2019.  *See* 19-cv-44, ECF No. 11.

[4] In *Prior*, the Clerk Certificate of Mailing pursuant to 28 U.S.C. § 1608(a)(4) was issued on May 28, 2019.  *See* ECF No. 4562.  Plaintiffs' Affidavit of Service was filed on September 3, 2019 showing that service was made upon Iran on July 3, 2019.  *See* 19-cv-44, ECF No. 18.

7, 2016.  *See* 15-cv-9903, ECF No. 54. Plaintiffs received a return receipt indicating that service had been made on the Central Bank of the Islamic Republic of Iran on March 18, 2016.  *See* 15-cv-9903, ECF No. 64.

Plaintiffs submitted their Affidavit of Service as to the Islamic Republic of Iran, the Islamic Revolutionary Guard Corps, and the Central Bank of the Islamic Republic of Iran pursuant to 28 U.S.C. § 1608 on November 10, 2016.  Therefore, this Court possesses personal jurisdiction over the Iran Defendants in this case because service has been made pursuant to 28 U.S.C. § 1608(a).

## III.    The Iran Defendants Have Defaulted.

Under 28 U.S.C. § 1608(d), "a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state shall serve an answer or other responsive pleading to the complaint within sixty [60] days after service has been made under this section."  On November 10, 2016, Plaintiffs filed a request for entry of a Clerk's Certificate of Default to be entered on or after November 15, 2016 which would have been the day after the expiration of the 60-day time period set forth in 28 U.S.C. § 1608(d).  *See* 15-cv-9903, ECF No. 63 at ¶13.  On December 5, 2016, the Clerk's Certificate of Default was entered against the Iran Defendants.  *See* 15-cv-9903, ECF No. 67.[5] The Iran Defendants have not appeared at any point in this litigation even after entry of the Clerk's Certificate of Default.

## IV.    The Iran Defendants are Liable for Wrongful Death and Survival Claims Under New York Law and Wrongful Death Claims Under Virginia Law.

In prior judgments entered on behalf of Plaintiffs in this case against Iran, the Court has looked to 28 U.S.C. § 1605A(c) that provides a cause of action for U.S. nationals injured or killed in terrorist attacks supported by designated state sponsors of terrorism.  The Plaintiffs in this

---

[5] The Clerk's Certificate of Default in the *Prior* case was entered on September 3, 2019.  ECF No. 5060. Iran has not appeared at any point in this litigation.

motion seek liability and damages against the Iran Defendants despite their status as non-U.S.-nationals where the 9/11 decedent was also a non-U.S. national.  As set forth above, this Court possesses jurisdiction over these Plaintiffs' claims under 28 U.S.C. § 1605B(b), and the application of this exception to foreign sovereign immunity triggers the language in 28 U.S.C. § 1606 which provides that a foreign sovereign who is not entitled to immunity "shall be liable in the same manner and to the same extent as a private individual under like circumstances."  The D.C. Circuit has read this provision to ensure that "if an FSIA exception abrogates immunity, plaintiffs may bring state law claims that they could have brought if the defendant were a private individual."  *Oveissi v. Islamic Rep. of Iran*, 573 F.3d 835, 841 (D.C. Cir. 2009).   The Amended Complaint in this case not only stated claims pursuant to the terrorism exception to foreign sovereign immunity: it also stated counts for wrongful death (Count Four) and survival (Count Five).

### A.   Choice-of-law Analysis

Where the Court has determined that an exception to immunity applies, and 28 U.S.C. § 1606 is implicated, then the choice-of-law rules applicable to any other actor within this forum would apply here—that is, New York's choice-of-law analysis applies here.  *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 124 S. Ct. 1502, 1508 (2022); *see also Barkanic v. Gen. Admin. of Civ. Aviation of People's Rep. of China*, 923 F.2d 957, 959-60 (2d Cir. 1991).  Therefore, the Iran Defendants are subject to suit for wrongful death and survival in the same manner that other private defendants would be.

Under New York choice-of-law principles, " 'controlling effect' must be given 'to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation."  *Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 196 (1985), *quoting Babcock v. Jackson*, 12 N.Y.2d 473, 481 (1963).  "In

determining the interests of a jurisdiction in a particular tort, New York courts assess whether the state laws in conflict are primarily 'conduct regulating' or 'loss allocating.' Conduct-regulating rules are those 'governing conduct to prevent injuries from occurring,' while loss allocating rules 'are those which prohibit, assign, or limit liability after the tort occurs…." *Reed Constr. Data Inc. v. McGraw-Hill Cos.*, 49 F. Supp.3d 385, 424 (S.D.N.Y. 2014) (citations omitted).  For conduct-regulating rules, New York courts hold that "the law of the place of the tort 'will usually have a predominant, if not exclusive, concern'… because the locus jurisdiction's interests in protecting the reasonable expectations of the parties who relied on it govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future assume critical importance and outweigh any interests of the common-domicile jurisdiction." *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 522 (1994), *quoting Schultz*, 65 N.Y.2d at 198.

Loss-allocating rules apply the framework established in *Neumeier v. Kuehner*, 31 N.Y.2d 121 (1972) which established three rules: (1) where the parties are domiciliaries of the same jurisdiction, "the law of that state should control and determine the standard of care" (31 N.Y.2d at 128); (2) where the parties are domiciliaries of different states, and the local law of one state is more favorable than the local law of the other state, then the "place of injury" would apply (*id.*); or (3) the law of the place of the tort would apply where the alleged victim and the alleged tortfeasor are domiciliaries of different states unless "it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants" (*id.*).  As this Court has held, "here, despite the number of Movants and diversity of domiciles, that task [of considering each plaintiff vis-à-vis each defendant] is easier than one might predict.  The first rule does not

10

apply because no Movant is domiciled in Iran.  And under either the second or the third rule, the

law of the 'place [of the tort]' governs." ECF No. 9287 at 4.

**B.      Plaintiffs Have Properly Pleaded Claims Under the Requisite Wrongful Death Statutes.**

The Plaintiffs included on Exhibit A-1 to the Eubanks Declaration are the Personal

Representatives of the estates of individuals who were killed either aboard the airplanes that struck

One World Trade Center or Two World Trade Center or individuals who were in the World Trade

Center buildings or complex who died either from the impact of the airplanes, falling debris,

inability to leave the buildings before they collapsed, or other means as a direct result of the

terrorist attacks on September 11, 2001.  The Plaintiffs included on Exhibit A-2 to the Eubanks

Declaration are the Personal Representatives of the estates of individuals who were killed at the

Pentagon in Arlington, Virginia on September 11, 2001.  Applying Magistrate Judge Netburn's

prior determination, the law of the place of injury governs in these cases; therefore, New York law

would apply to cases where the individual was killed in New York, and Virginia law would apply

to cases where the individual was killed in Virginia.  While immaterial given the application of

the *Neumeier* principles, wrongful-death claims are considered to be loss-allocating rules for

purposes of the choice-of-law analysis. *See Padula*, 84 N.Y.2d at 522 (relying on *Miller v. Miller*,

22 N.Y.2d 12, 18 (1968) which held that the purpose of the wrongful death statute was "to

authorize a recovery measured by the actual loss sustained").

**1.   New York Law Provides Plaintiffs with a Remedy for Wrongful Death.**

As this Court has previously held, New York law "plainly states that a 'personal

representative … may maintain an action to recover damages for a wrongful act … which caused

the decedent's death against a person who would have been liable to the decedent by reason of

such wrongful conduct if death had not ensued.' N.Y. Est. Power & Trusts Law § 5-4.1.  This

principle has been well-established and applied by New York state courts for over a century in the most diverse contexts." *See* ECF No. 3374 at 8 (Report and Recommendation of Magistrate Judge Netburn adopted by Judge Daniels at ECF No. 3382). Claims for wrongful death under New York law are derivative of claims such as assault and battery. *See Campbell v. City of Yonkers*, Case No. 19-cv-2117 (VB), 2023 U.S. Dist. LEXIS 131985, at *46 (S.D.N.Y. July 31, 2023). Liability under New York law for assault and battery extends beyond the principal tortfeasor to those who aided and abetted them. *See Lindsay v. Lockwood*, 625 N.Y.S.2d 393, 396-98 (N.Y. Sup. Ct. 1994). In addressing how aiding-and-abetting liability under assault and battery applies to the facts in these cases, Judge Daniels has found:

> The al Qaeda hijackers committed assault and battery against Plaintiff. And, based on the evidence that Plaintiff has proffered—which Iran has admitted by virtue of its default—this Court agrees with Magistrate Judge Netburn's conclusion that Iran both knew of and substantially assisted al Qaeda's attacks on the United States. This Court adjudges Iran liable to Plaintiff.

ECF No. 9666 at 8 (adopting ECF No. 9506 at 8-13). The decision addressing personal-injury damages for Manu Dhingra, a non-U.S. national who was injured in the terrorist attacks on September 11, 2001, addressed the allegations from the Amended Complaint in this case (which was adopted through the Short-Form Complaint process in Mr. Dhingra's case). *See* ECF No. 9506 at 6. Therefore, if the allegations in Mr. Dhingra's case—using the factual allegations contained in the *Burnett* Amended Complaint (ECF No. 53 in 15-cv-9903)—were sufficient for entry of judgment in the personal-injury context, then the claims of individuals who died in the same attacks on the World Trade Center in New York would similarly be entitled to a judgment notwithstanding their lack of U.S.-national status.

### 2. Virginia Law Provides Plaintiffs with a Remedy for Wrongful Death.

Virginia law provides a cause of action for "death by wrongful act" which, like the statute in New York, provides a cause of action for death for an individual who, if they had not been

killed, would have been entitled to maintain an action for their injuries against the tortfeasor. Va. Code Ann. § 8.01-50(A); *see also Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991) (holding that Virginia's wrongful death statute "does not create a new cause of action, but only a right of action in a personal representative to enforce the decedent's claim for any personal injury that caused death"). Such an action must be brought "by and in the name of the personal representative of such deceased person." *Id.* § 8.01-50(C). "[T]he common law of the Commonwealth [of Virginia] has looked with favor upon recovery in tort against those who aid and abet others in the commission of the civil wrong for which damages may be maintained." *Sherry Wilson & Co. v. Generals Court, L.C.*, 2002 Va. Cir. LEXIS 479, at *3 (Loundon Cty. Cir. Ct. Sept. 27, 2002). Given that Virginia law permits a claim for wrongful death arising out of injuries leading to death that would have been actionable if not for the death, and Virginia law recognizes aiding-and-abetting liability in the intentional-tort arena, it follows that the same analysis vis-à-vis the application of the facts to aiding-and-abetting law set forth above with regard to New York law would apply equally to Virginia law.

## C. Plaintiffs Seek an Award of Damages for Survival/Conscious Pain and Suffering Claims

Plaintiffs assert claims for "Survival" under Count Five of the Amended Complaint in this case. *See* 15-cv-9903, ECF No. 53 at 1087.

### 1. New York Law Provides a Remedy for Survival/Conscious Pain and Suffering.

Under New York law, "[n]o cause of action for injury to person or property is lost because of the death of the person in whose favor the cause of action existed." N.Y. Est. Power & Trusts Law § 11-3.2(b). The New York Court of Appeals has determined that "a personal injury action on behalf of the deceased under EPTL 11-3.2(b) seeks recovery for conscious pain and suffering of the deceased and any damages awarded accrue to the estate." *Heslin v. County of Greene*, 14

N.Y.3d 67, 76-77 (2010).  New York courts have found that a survival action (or an action for conscious pain and suffering) is separate and distinct from a wrongful-death cause of action. *Dunefsky v. Montefiore Hosp. Med. Ctr.*, 162 A.D.2d 300 (1st Dep't 1990).  When addressing the claims for pain-and-suffering damages under New York's law for assault and battery for non-U.S.-national plaintiffs within this MDL, this Court stated that "considerations of fairness dictate that the preexisting personal injury damages framework applies to non-U.S. nationals as well."  ECF No. 9666 at 9.  Here, these same considerations of fairness dictate that the preexisting conscious pain and suffering damages framework established for U.S.-national decedent estates (in the amount of $2 million per estate) should be equally applied to the non-U.S.-national decedent estates here.

### 2. Virginia Law Does Not Provide a Right to Pursue Damages for Both Conscious Pain and Suffering and Wrongful Death.

"Virginia law bars recovery for the decedent's pain and suffering in a wrongful death case…." *Whitaker v. Hyundai Motor Co.*, No. 7:17-cv-00055, 2019 U.S. Dist. LEXIS 22617, at *4 (W.D. Va. Feb. 12, 2019).  The law in Virginia is settled that "a person may not recover for the same injury under the survival statute and the wrongful death statute." *Smith v. Town of S. Hill*, 611 F. Supp.3d 148, 191 (E.D. Va. 2020), *quoting Hendrix v. Daugherty*, 249 Va. 540, 457 S.E.2d 71, 75 (Va. 1995).  Virginia does, however, permit a wrongful death claim and a survival claim to be pled in the alternative to preserve the survival claim should the death be found not to be caused by the defendant's conduct.  *Id.*  Here, the Court has determined that the deaths of those killed in the terrorist attacks on September 11, 2001 were caused by, *inter alia*, the Iran Defendants' conduct, so while those Plaintiffs who were killed in the attack on the Pentagon who were not U.S. nationals at the time may proceed under Virginia wrongful-death law, they may not also pursue a separate claim for survival damages for conscious pain and suffering. They must choose.  In this

motion, the two 9/11 decedents on Exhibit B who died in the Commonwealth of Virginia are solely pursuing damages for survival/conscious pain and suffering and are foregoing their rights pursuant to Virginia's wrongful-death statute.

## V.   Damages Should be Awarded to the Plaintiffs Identified in Exhibits A and B.

Plaintiffs identified in Exhibits A and B now respectfully request that this Court grant them partial default judgment as to damages against the Iran Defendants.  Plaintiffs respectfully submit that the Court should adopt and apply the same damages procedures here that the Court has applied in this case to actions maintained under § 1605A. Equity dictates that non-U.S. national Plaintiffs be entitled to the same damages regime as had been applied to § 1605A claims throughout this case. *See* ECF No. 2618 at 14 (awarding *Havlish* plaintiffs common law damages against non-sovereign defendants in same amounts as § 1605A claims against Iran "under traditional tort principles" even though *Havlish* plaintiffs did not maintain Anti-Terrorism Act claims against these defendants and Section 1605A claims were inapplicable as to these defendants). Accordingly, while § 1605B(b) confers jurisdiction, the appropriate damages framework for Plaintiffs' common-law claims should be the same framework that has been applied to claims maintained under § 1605A, as set forth below. This is also true given the determination by this Court and others that there exists an "interest in promoting uniformity of determinations with respect to [state sponsored terrorist acts]." *See* ECF No. 3363 at 2.  Furthermore, in cases within the District of Columbia under § 1605A, that Court has determined that non-national family members of U.S.-national victims must assert their claims under state common law; however, in these cases, the court has determined that the standard solatium framework in place for U.S.-national plaintiffs apply equally in these circumstances. *See, e.g., Abedini v. Islamic Rep. of Iran*,

422 F. Supp. 3d 118, 140 (D.D.C. 2019) (awarding *Heiser* baseline solatium award to non-national sister of an individual who was taken hostage).

    **A.**    **Damages for Claims Brought by Personal Representatives on Behalf of 9/11 Decedent Estates Who Died in New York**

        **1.**    **Economic-Loss Damages/Pecuniary-Loss Damages Under New York Wrongful Death Law**

The Plaintiffs identified on Exhibit A seek damages under New York's wrongful death statute because they were killed in and around the World Trade Center complex on September 11, 2001.   Under New York wrongful-death law, "[d]amages are measured by the effect of the wrongful act on the distributees - - pecuniary loss suffered by the individual distributees as a result of decedent's death." *Hernandez v. New York City Health & Hosps. Corp.*, 78 N.Y.2d 687, 693 (N.Y. 1991).   "There are four elements of compensable loss encompassed by the general term 'pecuniary loss': (1) decedent's loss of earnings; (2) loss of services each survivor may have received from decedent; (3) loss of parental guidance from decedent; and (4) the possibility of inheritance from decedent."   *Hollingsworth v. Roseland Wake Park, LLC*, No. 6:18-CV-06013 MAT, 2019 U.S. Dist. LEXIS 206801, at *11-*12 (W.D.N.Y. Nov. 29, 2019), *quoting Huthmacher v, Dunlop Tire Corp.*, 309 A.D. 2d 1175, 1176 (4th Dep't 2003).   The New York Court of Appeals outlined damages as "loss of support, voluntary assistance and possible inheritance, as well as medical and funeral expenses incidental to death, are injuries for which damages may be recovered…. The 'pecuniary injuries' caused by a wage earner's death may be calculated, in part, from factors relevant to the decedent's earning potential, such as present and future earnings, potential for advancement and probability of means to support heirs, as well as factors pertaining to the decedent's age, character and condition, and the circumstances of the distributees." *See Gonzalez v. New York Housing Auth.*, 77 N.Y.2d 663, 668 (1991).

This breakdown of damages available for pecuniary loss under New York's wrongful-death statute has been incorporated into the economic-loss expert reports issued by Plaintiffs' expert, Dr. Stan V. Smith, that have been appended to the Eubanks Declaration as Exhibit C and filed under seal.  Dr. Smith has opined in each case using his standard methodology to assess the economic loss sustained in each instance and outlines, introduces, and applies that methodology for each estate to provide a breakdown of both past and future losses for the following categories of damages: (1) loss of wages and benefits; (2) loss of pension benefits (they the exist); (3) loss of housekeeping and home management services; and (4) loss of value of life, also known as the loss of enjoyment of life.  Dr. Smith states in each report, "[a]ll opinions . . . are rendered in accordance with generally accepted standards within the field of economics and are expressed to a reasonable degree of economic certainty."  These categories of loss accord with the elements of compensable loss that have been developed by the courts to address wrongful-death damages under New York law.  Therefore, Plaintiffs respectfully submit that the values for economic loss included on Exhibit A to the Eubanks Declaration be adopted for those claims as Exhibit A consists of individuals who were killed in New York on September 11, 2001 and who were not United States nationals at the time.

**2.  Survival/Pain and Suffering Damages for the New York decedents Should Accord with the Court's Prior Determinations for Pain and Suffering Damages for U.S.-National 9/11 Decedents.**

As set forth above, New York law accepts damages for survival/conscious pain and suffering.  This Court previously assessed the entitlement and value of pain and suffering awards to estates of U.S.-national decedents in this litigation. *See* ECF No. 2618 at 7-9.  Again, because the damages sought under the federal cause of action under 28 U.S.C. § 1605A(c) and the state common-law action for survival damages are indistinguishable, the Moving Plaintiffs submit that damages for survival/pain-and-suffering damages should be equivalent between U.S.-national

decedents and non-U.S.-national decedents as their deaths were caused by the same act of state-sponsored terrorism—the terrorist attacks on September 11, 2001.  Applying the same values for pain-and-suffering damages for the estates of those killed on September 11, 2001 would also follow the rationale adopted by the Court that "considerations of fairness dictate that the preexisting . . . damages framework applies to non-U.S. nationals as well." ECF No. 9666 at 9.  Therefore, for the reasons articulated by this Court in the context of this MDL, the estates identified in Exhibit A respectfully request that the Court grant judgment for their decedents' survival/pain-and-suffering damages in the amount of $2,000,000 per estate. *See id*. at 9; ECF No. 2624 at 1, 3-4 (Judge Daniels awarding $2,000,000 per estate in *Havlish*).

**B.   Damages for Claims Brought by Personal Representatives on Behalf of 9/11 Decedent Estates Who Died in Virginia**

As set forth above, the law in Virginia is settled that "a person may not recover for the same injury under the survival statute and the wrongful death statute." *Smith v. Town of S. Hill*, 611 F. Supp.3d 148, 191 (E.D. Va. 2020), *quoting Hendrix v. Daugherty*, 249 Va. 540, 457 S.E.2d 71, 75 (Va. 1995).  Virginia statutory law provides a non-exhaustive categorization of the damages available for wrongful-death claims:

> 1. Sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent;

> 2. Compensation for reasonably expected loss of (i) income of the decedent and (ii) services, protection, care and assistance provided by the decedent;

> 3. Expenses for the care, treatment and hospitalization of the decedent incident to the injury resulting in death;

> 4. Reasonable funeral expenses; and

> 5. Punitive damages may be recovered for willful or wanton conduct, or such recklessness as evinces a conscious disregard for the safety of others.

Va. Code Ann. § 8.01-52, titled "Amount of Damages" within the section "Death by Wrongful Act." As the Virginia Supreme Court has noted, the statutory law supplements pecuniary loss with "non-monetary elements of damages, such as sorrow, mental anguish, and loss of solace" on the part of the statutory beneficiaries of the decedent. *See Rice v. Charles*, 260 Va. 157, 169 (2000). Therefore, while Virginia estates are not permitted to assert both wrongful death and survival/conscious pain and suffering damages in the same case, they can, nevertheless, assert these claims for mental anguish for the statutory beneficiaries as part of the wrongful death cause of action. In the cases of the individuals appearing on Exhibit B, their personal representative is seeking damages solely for survival/conscious pain and suffering and is foregoing wrongful-death damages. Therefore, as above, Plaintiffs request that the Court grant judgment for their decedents' survival/pain-and-suffering damages in the amount of $2,000,000 per estate to permit uniformity for this measure of damages.

### C.   The Court Should Defer Determination on Punitive Damages.

While the Moving Plaintiffs assert that they are entitled to punitive damages for the egregious nature of the actions of the Iran Defendants in providing support to Al Qaeda leading to the terrorist attacks on September 11, 2001, they will—like their co-plaintiffs with claims under 28 U.S.C. § 1605A(c)—submit to the Court's practice in this litigation and defer determination of punitive-damage issues until a later stage of the litigation. Therefore, the Moving Plaintiffs herein explicitly request permission to address the issue of punitive damages at a later date. *See, e.g.*, ECF No. 3666 (Judge Daniels order in *Burnett/Iran*, authorizing other plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

**D.**     **Plaintiffs are Entitled to Prejudgment Interest at the Rate of 4.96% from September 11, 2001 Through the Date of Judgment.**

Under New York law, the New York Court of Appeals has "long held that prejudgment interest in a wrongful death action is 'part of the damages,' and that such interest should run from the date of death to the date of verdict." *Toledo v. Iglesia Ni Christo*, 18 N.Y. 363, 367-68 (2012) (citations omitted). The New York Court of Appeals then determined that "the proper method for calculating preverdict interest in a wrongful death action is to discount the verdict to the date of liability, i.e., the date of death, and award interest on that amount from the date of death to the date of judgment." *Id.* at 368.  New York law provides that interest be calculated at nine percent per annum. *See* N.Y. C.P.L.R. § 5004(a).

The Second Circuit held that New York State's statutory prejudgment interest rate should apply to the damages awarded to World Trade Center complex leaseholders in their litigation against American Airlines and United Airlines brought under the federal Air Transportation Safety and System Stabilization Act ("ATSSSA"). *World Trade Farmers Market, Inc. v. American Airlines, Inc. (In Re: September 11th Litigation)*, 2015 U.S. App. LEXIS 16619, *66 (2d Cir. Sept. 17, 2015). In that case, the Second Circuit concluded that a federal cause of action under the ATSSSA must look to state rules concerning prejudgment interest. *Id.* Accordingly, the Second Circuit held that New York's statutory prejudgment interest rate of nine percent as opposed to a lower rate crafted under federal law, had to be applied to the plaintiffs' 9/11 claims. *Id.*

However, this Court has adopted the 4.96 percent interest rate for prejudgment interest for all claims.  *See* ECF No. 9435. In light of the Court's prior decisions within this MDL, the continued attempts to render uniformity to the damages applied herein, and notwithstanding the higher statutory rate of interest applicable under New York state law, the Moving Plaintiffs identified in Exhibits A and B respectfully request that the Clerk of the Court be directed to award

prejudgment interest at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001 until the date of the judgment.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Declaration of John M. Eubanks, the *Burnett* Plaintiffs seek a judgment of default as to liability against the Iran Defendants for those Plaintiffs whose 9/11 decedent (or those injured parties) were not U.S. nationals on September 11, 2001 or the immediate family members (including functional equivalents of immediate family members) of non-U.S. nationals killed on September 11, 2001 pursuant to jurisdiction conferred by 28 U.S.C. § 1605B(b) and the underlying state laws in New York and Virginia.  Further, the Plaintiffs identified in Exhibits A and B respectfully request that this Court enter judgments on their behalf in the amounts set forth in those exhibits addressing conscious pain and suffering (for those estates on Exhibit A) along with damages pursuant to the relevant wrongful death statute for those estates on Exhibits A and B).  Furthermore, the *Burnett* plaintiffs identified at Exhibits A and B respectfully request that the Court: (1) award prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; (2) grant permission for the *Burnett* plaintiffs identified in Exhibits A and B to seek punitive damages, economic damages, or other appropriate damages at a later date; and (3) grant permission for all *Burnett* Plaintiffs not appearing on Exhibits A or B to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Dated:  April 30, 2024                                    Respectfully submitted,

                                                                    MOTLEY RICE LLC


                                                                    */S/ John M. Eubanks*_____
                                                                    John M. Eubanks, Esq.
                                                                    Jodi Westbrook Flowers, Esq.

Robert T. Haefele, Esq.
Jade Haileselassie, Esq.
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Tel: (843) 216-9000
Fax: (843) 216-9450
Email: jeubanks@motleyrice.com

*Attorneys for Plaintiffs*