# EXHIBIT M

Estate of Kevin P. Nerney

# VCF Documentation



September 11th
Victim Compensation Fund

April 1, 2019

KATHLEEN NERNEY
40853 PURPLE SAGE TRAIL
STEAMBOAT SPRINGS CO  80487

Dear KATHLEEN NERNEY:

The September 11th Victim Compensation Fund ("VCF") has reviewed your Eligibility Form. You submitted an Eligibility Form on behalf of KEVIN NERNEY.  Your claim number is VCF0100101.  Your Eligibility Form was determined to be substantially complete on March 29, 2019.  As stated in the Regulations and on the claim form, by filing a substantially complete Eligibility Form, you have waived your right to file or be a party to a September 11th-related lawsuit on behalf of the decedent and his or her survivors.

## The Decision on your Claim

The VCF has determined that the decedent has met the eligibility criteria established in the statute and regulations.  Based on the information you submitted and information the VCF has received from the World Trade Center ("WTC") Health Program, the decedent has been found eligible for the following injuries:

- MALIGNANT NEOPLASM OF BRAIN UNSPECIFIED SITE
- UNSPECIFIED CHRONIC BRONCHITIS AND RELATED PHYSICAL CONDITIONS: OTHER DISEASES OF LUNG NOT ELSEWHERE CLASSIFIED

Please note that there are several reasons why an injury that you think should be eligible is not listed above.  For non-traumatic injuries, the name of the injury is based on the information provided by the WTC Health Program and there may be different names for the same injury. Additionally, your injury may not be listed if it was only recently certified for treatment by the WTC Health Program.

If in the future the WTC Health Program should notify you that a condition previously found eligible is no longer certified, you must inform the VCF as this may affect your eligibility status and/or the amount of your award.

## What Happens Next

**If the decedent was certified for treatment by the WTC Health Program for a condition not listed above**, you should amend your claim.  Please see the VCF website for details on how to amend your claim.  The VCF will review the new information and determine if it provides the basis for a revised decision.

**If you believe the decedent had eligible injuries not treated by the WTC Health Program** and you would like the VCF to consider those injuries before calculating the amount of any compensation, you should amend your claim.  If you choose to amend your claim, you will need



September 11th
Victim Compensation Fund

to use the VCF Private Physician process.  The Private Physician process is a way for the VCF to gather the required information about the decedent's treatment in order to process your claim. All forms are available on the VCF website under "Forms and Resources."  The website also includes detailed information and instructions on the Private Physician process.

**If the decedent did not have injuries other than those listed above,** you should submit your Compensation Form and required supporting materials.  If you have already submitted your Compensation Form, you do not need to take any action at this time unless you receive a request from the VCF for missing information.  The VCF will calculate the amount of any compensation based on the conditions listed above after all compensation-related documents are submitted.

If you have questions about the information in this letter or the claims process in general, please call our toll-free Helpline at 1-855-885-1555.  For the hearing impaired, please call 1-855-885-1558 (TDD).  If you are calling from outside the United States, please call 1-202-514-1100.


Sincerely,

Rupa Bhattacharyya
Special Master
September 11th Victim Compensation Fund


cc: WENDELL TONG


September 11th
Victim Compensation Fund

March 23, 2021

KATHLEEN NERNEY
C/O WENDELL TONG
SULLIVAN PAPAIN BLOCK MCGRATH & CANNAVO, PC
120 BROADWAY 18TH FLOOR
NEW YORK NY 10271

**Re: CLAIM NUMBER: VCF0100101**

Dear KATHLEEN NERNEY:

The September 11th Victim Compensation Fund ("VCF") sent you a letter on August 23, 2019 notifying you of the award determination on your claim.

You then amended your claim to request additional losses. The VCF has considered your amended claim and reviewed the new information you provided. This letter sets forth the revised award and supersedes and replaces all previous letters.

After reviewing the responses in your claim form, the documents you submitted in support of your claim, and information from third-party entities, the VCF has calculated the amount of your award as **$3,473.54**. This determination is in accordance with the requirements of the Never Forget the Heroes: James Zadroga, Ray Pfeifer, and Luis Alvarez Permanent Authorization of the September 11th Victim Compensation Fund Act ("VCF Permanent Authorization Act"). The enclosed "Award Detail" includes a detailed explanation of the calculation and a list of the eligible conditions that were considered when calculating your award.

No non-routine legal service expenses are approved for reimbursement for this claim.

As the Personal Representative, you are required to distribute any payment received from the VCF on behalf of the victim to the eligible survivors or other recipients in accordance with the applicable state law or any applicable ruling made by a court of competent jurisdiction or as provided by the Special Master.

**What Happens Next**

The VCF will deem this award to be final and will begin processing the full payment on your claim unless you complete and return the enclosed Compensation Appeal Request Form within **30 days from the date of this letter** as explained below. If you do not appeal, the Special Master will authorize the payment on your claim within 20 days of the end of the 30-day appeal period. Once the Special Master has authorized the payment, it may take up to three weeks for the United States Treasury to disburse the money into the bank account designated on the VCF ACH Payment Information Form or other payment authorization document you submitted to the VCF.



**September 11th
Victim Compensation Fund**

- **Appealing the Award**: You may request a hearing before the Special Master or her designee if you believe the amount of your award was erroneously calculated, or if you believe you can demonstrate extraordinary circumstances indicating that the calculation does not adequately address your loss.  **If you choose to appeal, your payment will not be processed until your hearing has been held and a decision has been rendered on your appeal**.

    To appeal the award, you must complete two steps by the required deadlines:

    1. Complete and return the enclosed **Compensation Appeal Request Form** within **30 days from the date of this letter**.  Follow the instructions on the form and upload it to your claim or mail it to the VCF by the required deadline.  If you do not submit your completed Compensation Appeal Request Form within 30 days of the date of this letter *, you will have waived your right to an appeal* and the VCF will begin processing any payment due on your claim.

    2. Complete and submit your **Compensation Appeal Package** (Pre-Hearing Questionnaire, Compensation Explanation of Appeal, and all applicable supporting documents) no later than **60 days from the date of this letter**. It is important that you carefully review the information enclosed with this letter and follow the instructions if you intend to appeal your award. Additional instructions on the appeals process can be found on the VCF website under "Frequently Asked Questions" and in the Policies and Procedures available under "Forms and Resources."

    Once your complete Compensation Appeal Package is submitted, the VCF will review the information to confirm you have a valid appeal, and will notify you of the next steps specific to your appeal and the scheduling of your hearing.

- **Notifying the VCF of new Collateral Source Payments**: You must inform the VCF of any new collateral source payments you receive, or become entitled to receive, such as a change to your disability or survivor benefits, as this may change the amount of your award.  If you notify the VCF within 90 days of learning of the new collateral source payment, your award will not be adjusted to reflect the new entitlement or payment.  If you notify the VCF more than 90 days after learning of the new or revised entitlement or payment, the VCF may adjust your award to reflect the new payment as an offset, which may result in a lower award.  If you need to notify the VCF of a new collateral source payment, please complete the "Collateral Offset Update Form" found under "Forms and Resources" on the www.vcf.gov website.

Your award was calculated using our published regulations, and I believe it is fair and reasonable under the requirements of the VCF Permanent Authorization Act.  As always, I emphasize that no amount of money can alleviate the losses suffered on September 11, 2001.

If you have any questions, please call our toll-free Helpline at 1-855-885-1555.  Please have your claim number ready when you call: **VCF0100101**.  For the hearing impaired, please call 1-855-885-1558 (TDD).  If you are calling from outside the United States, please call 1-202-514-1100.



September 11th
Victim Compensation Fund

Sincerely,

Rupa Bhattacharyya
Special Master
September 11th Victim Compensation Fund

cc: KATHLEEN NERNEY



**September 11th
Victim Compensation Fund**

# Award Detail

Claim Number:    VCF0100101
Decedent Name:   KEVIN NERNEY

| PERSONAL INJURY CLAIM (Losses up to Date of Death) | |
|---|---|
| **Lost Earnings and Benefits** | |
| Loss of Earnings including Benefits and Pension | $45,209.00 |
| Mitigating or Residual Earnings | $0.00 |
| **Total Lost Earnings and Benefits** | $45,209.00 |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Disability Pension | $0.00 |
| Social Security Disability Benefits | ($27,516.00) |
| Workers Compensation Disability Benefits | ($31,600.00) |
| Disability Insurance | $0.00 |
| Other Offsets related to Earnings | $0.00 |
| **Total Offsets Applicable to Lost Earnings** | ($59,116.00) |
| | |
| **Calculated Lost Earnings and Benefits after Offsets** | ($13,907.00) |
| | |
| **Total Lost Earnings and Benefits Awarded** | $0.00 |
| | |
| **Other Economic Losses** | |
| Medical Expense Loss | $0.00 |
| Replacement Services | $0.00 |
| **Total Other Economic Losses** | $0.00 |
| | |
| **Total Economic Loss** | $0.00 |
| | |
| **Total Non-Economic Loss** | $250,000.00 |
| | |
| **Subtotal Award for Personal Injury Claim** | $250,000.00 |



**September 11th**
**Victim Compensation Fund**

| DECEASED CLAIM (Losses from Date of Death) | |
|---|---|
| **Loss of Earnings including Benefits and Pension** | $169,614.00 |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Survivor Pension | $0.00 |
| SSA Survivor Benefits | ($330,847.40) |
| Worker's Compensation Death Benefits | ($840,720.41) |
| Other Offsets related to Earnings | $0.00 |
| **Total Offsets Applicable to Loss of Earnings and Benefits** | ($1,171,567.81) |
| | |
| **Calculated Lost Earnings and Benefits after Offsets** | ($1,001,953.81) |
| | |
| **Total Lost Earnings and Benefits Awarded** | $0.00 |
| | |
| **Other Economic Losses** | |
| Replacement Services | $226,703.00 |
| Burial Costs | $4,201.35 |
| **Total Other Economic Losses** | $230,904.35 |
| | |
| **Total Economic Loss** | $230,904.35 |
| | |
| **Non-Economic Loss** | |
| Non-Economic Loss - Decedent | $250,000.00 |
| Non-Economic Loss - Spouse/Dependent(s) | $100,000.00 |
| **Total Non-Economic Loss** | $350,000.00 |
| | |
| **Additional Offsets** | |
| Social Security Death Benefits | ($255.00) |
| Life Insurance | ($106,130.29) |
| Other Offsets | $0.00 |
| **Total Additional Offsets** | ($106,385.29) |
| | |
| **Subtotal Award for Deceased Claim** | $474,519.06 |



**September 11th
Victim Compensation Fund**

| | |
|---|---|
| **Subtotal of Personal Injury and Deceased Claims** | $724,519.06 |
| PSOB Offset | $0.00 |
| Prior Lawsuit Settlement Offset | $0.00 |
| Award Paid on Prior Personal Injury Claim | ($721,045.52) |
| **TOTAL AWARD** | $3,473.54 |
| | |
| **Factors Underlying Economic Loss Calculation** | |
| Annual Earnings Basis (without benefits) | $30,443.67 |
| Percentage of Disability attributed to Eligible Conditions - applicable to Personal Injury losses | 100.00% |
| Start Date of Loss of Earnings Due to Disability - applicable to Personal Injury losses | 06/13/2014 |

| **Eligible Conditions Considered in Award** |
|---|
| Malignant Neoplasm of Brain Unspecified Site |
| Unspecified Chronic Bronchitis and Related Physical Conditions: Other Diseases of Lung Not Elsewhere Classified |

# Family Member Affidavits

Kathleen Nerney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

In Re:

TERRORIST ATTACKS ON                                    03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

------------------------------------------------------------------ X          **AFFIDAVIT OF**
JILL ACCARDI, et al.,                                            **KATHLEEN NERNEY**


                                    Plaintiffs,          21-CV-06247 (GBD)(SN)


                        V.

ISLAMIC REPUBLIC OF IRAN,

                                    Defendant.
------------------------------------------------------------------ X

STATE OF SOUTH CAROLINA)
                                    : SS
COUNTY OF BEAUFORT)


        KATHLEEN NERNEY, being duly sworn, deposes and says:

        1.      I am a plaintiff in the within action, am over 18 years of age, and reside at 329
Flatwater Drive Bluffton, South Carolina 29910.

        2.      I am currently 65 years old, having been born on September 21, 1957.

        3.      I am the wife of Decedent, Kevin P. Nerney, upon whose death my claims are based.
I submit this Affidavit in support of the present motion for a default money judgment for the claim
made on behalf of my husband's estate and for my solatium claim. On February 3, 2016, I was issued
Letters Testamentary as Executrix of my husband's estate by the Routt County Surrogate's Court.

        4.      My husband passed away from Glioblastoma Multiforme Stage IV on December 18,
2015, at the age of 57. It was medically determined that this illness was causally connected to his
exposure to the toxins resulting from the September 11, 2001, terrorist attacks at the World Trade
Center.

5.      Kevin and I were together for 34 years. We were 2 months shy of making 30 years of marriage. We had a super active life of skiing, traveling, and playing lacrosse. Kevin was a huge runner, he did triathlons. We did life "by the seat of our pants." Kevin built our home in less than a year. He was super strong with a beautiful outgoing personality. Kevin was a devout Catholic volunteering with charities and worked his way up to a fourth degree Knight in the Knights of Columbus. He was a born leader. We traveled extensively throughout the U.S. We would camp in our Fifth Wheel RV. He was loved by all, and he never met a stranger. He was my rock and a gentle giant. Losing him made me lose financially too. There were medical bills I had to pay for. There was a loss of income. I became his only care giver. It took a toll on my family, including our young granddaughter who we both took care of while our daughter was in Afghanistan with the U.S. Army. When Kevin became extremely ill, I had to contact my daughter and return Sophia back to her causing a financial drain on her. Our son moved in with us, with his wife and infant son, putting his career on hold. Another financial burden I had was to accept charity from friends and our church. When Kevin passed, his pension stopped, and I no longer received health coverage. I was left with medical bills that could fill a huge cardboard box. There were bills that were not covered such as Flight for Life which was a helicopter transfer and Fixed Wing Plane transfer from Steamboat Springs to Denver Colorado.

6.      Kevin was a retired FDNY Lieutenant and volunteered on 9/11. He was at Ground Zero with no mask for over 2 weeks. He was digging with his own hands to look for any signs of life.

7.      Kevin was diagnosed with Glioblastoma Stage 4. It was at a loss of control. He had two brain surgeries. He went through chemotherapy and radiation. He had to have two surgeries on his intestines due to the chemotherapy reaction. Kevin had a loss of bowels resection which caused the doctors to give him a colostomy bag. He could never change it, that responsibility was on me. The medications that he was given caused him to not only swell up with fluid but caused fits of rage. We could never go outside. I needed to watch him constantly. He would try to escape the house, urinate on

himself, and blame his accidents on the dog. The medications caused fluctuations in his temperature. One minute he was hot and the next moment, he was cold. One day, I found him in his wheelchair, hovering over our gas stove with all the burners turned up on high. His fits of rage would be common. He would detach his full colonoscopy bag and throw it. I was forever cleaning. Kevin did not recognize me as his wife. He would punch me. Once he broke a rib and gave me a black eye. Things got so bad, that a neighbor who heard Kevin's screaming called the sheriff's department and five patrol cars came down the street with lights and sirens. Due to his condition, they did not arrest him. However, the Fire Department sent him back to our local hospital where it was decided he needed psychiatric care. They wanted to commit him to a mental institution 6 hours away. So, to say that my life was affected is an understatement. I was not eating, sleeping, or showering. I was a prisoner in my own home.

8.      Seven and a half years later and I am still lost, mentally and physically. I had to sell my home because it is too hard for the upkeep. Moving and shoveling the snow was so difficult. I had to hire a handyperson for everything. I had to get a job. The first job was at a pizzeria. I worked for $10 an hour because that was the only thing available. There were no teaching positions. Finally, I got a job at a school for $14 an hour as a special needs aide, just so I could have basic medical insurance.

KATHLEEN NERNEY

Sworn before me this
23ᵈ day of August, 2023
Notary public