# EXHIBIT D

Estate of James Betso

# VCF Documentation



September 11th
Victim Compensation Fund

May 3, 2017


EVELYN BETSO
C/O NOAH KUSHLEFSKY
KREINDLER & KREINDLER, LLP
750 THIRD AVENUE 32ND FLOOR
NEW YORK NY  10017


Dear EVELYN BETSO:

The September 11th Victim Compensation Fund ("VCF") has reviewed your Eligibility Form. You submitted an Eligibility Form on behalf of JAMES BETSO.  Your claim number is VCF0082588.  Your Eligibility Form was determined to be substantially complete on May 02, 2017.  As stated in the Regulations and on the claim form, by filing a substantially complete Eligibility Form, you have waived your right to file or be a party to a September 11th-related lawsuit on behalf of the decedent and his or her survivors.

## The Decision on your Claim

The VCF has determined that the decedent has met the eligibility criteria established in the statute and regulations.  Based on the information you submitted and information the VCF has received from the World Trade Center ("WTC") Health Program, the decedent has been found eligible for the following injuries:

- MACROGLOBULINEMIA
- MALIGNANT NEOPLASM OF BRAIN UNSPECIFIED SITE
- MYELODYSPLASTIC SYNDROME UNSPECIFIED


Please note that there are several reasons why an injury that you think should be eligible is not listed above.  For non-traumatic injuries, the name of the injury is based on the information provided by the WTC Health Program and there may be different names for the same injury. Additionally, your injury may not be listed if it was only recently certified for treatment by the WTC Health Program.

If in the future the WTC Health Program should notify you that a condition previously found eligible is no longer certified, you must inform the VCF as this may affect your eligibility status and/or the amount of your award.

## What Happens Next

**If the decedent was certified for treatment by the WTC Health Program for a condition not listed above**, you should amend your claim.  Please see the VCF website for details on how to amend your claim.  The VCF will review the new information and determine if it provides the basis for a revised decision.



September 11th
Victim Compensation Fund

**If you believe the decedent had eligible injuries not treated by the WTC Health Program** and you would like the VCF to consider those injuries before calculating the amount of any compensation, you should amend your claim.  If you choose to amend your claim, you will need to use the VCF Private Physician process.  The Private Physician process is a way for the VCF to gather the required information about the decedent's treatment in order to process your claim. All forms are available on the VCF website under "Forms and Resources."  The website also includes detailed information and instructions on the Private Physician process.

**If the decedent did not have injuries other than those listed above,** you should submit your Compensation Form and required supporting materials.  If you have already submitted your Compensation Form, you do not need to take any action at this time unless you receive a request from the VCF for missing information.  The VCF will calculate the amount of any compensation based on the conditions listed above after all compensation-related documents are submitted.

If you have questions about the information in this letter or the claims process in general, please call our toll-free Helpline at 1-855-885-1555.  For the hearing impaired, please call 1-855-885-1558 (TDD).  If you are calling from outside the United States, please call 1-202-514-1100.


Sincerely,

Rupa Bhattacharyya
Special Master
September 11th Victim Compensation Fund


cc: EVELYN BETSO



September 11th
Victim Compensation Fund

January 23, 2018


EVELYN BETSO
C/O NOAH KUSHLEFSKY
KREINDLER & KREINDLER, LLP
750 THIRD AVENUE 32ND FLOOR
NEW YORK NY  10017


Dear EVELYN BETSO:

The September 11th Victim Compensation Fund ("VCF") has reviewed your claim for
compensation.  Your claim number is VCF0082588.  Your Compensation Form was
determined to be substantially complete on October 26, 2017.  This means your claim was
deemed "filed" for purposes of section 405(b)(3) of the Statute on that date.

The VCF has reviewed the information you submitted and calculated the amount of your
eligible loss.  When determining the amount of your loss, the VCF calculates the amount of
your economic and non-economic loss and then is required to subtract the amount of any
payment you have received, or are entitled to receive, from any source that meets the
definition of collateral offsets under the Statute and regulations.  Because the amount of
your collateral offset payments exceeds the total amount of your economic and non-
economic loss, your award is $0.00.

This determination is in accordance with the requirements of the Reauthorized Zadroga Act.
The enclosed "Award Detail" includes a detailed explanation of the calculation and a list of
the eligible conditions included in this determination.

This determination does not affect the $578,360.88 award payment that the decedent previously
received from the VCF. In computing the present $0 award, we used that previous payment as
an offset. This is because the previous personal injury award included lost earnings projected
through the end of the decedent's worklife expectancy. Because you claimed lost earnings as
part of your wrongful death claim, we recalculated the decedent's lost earnings to determine
separately the lost earnings attributable to the decedent's disability before death and the lost
earnings attributable to his death.

After separately computing the lost earnings attributable to the decedent's disability (personal
injury loss) and to his death (wrongful death loss), we added certain additional losses to each
lost earnings figure to arrive at separate total losses for the personal injury and wrongful death
claims. To the personal injury lost earnings, we added the additional personal injury losses for
which the decedent already received compensation (replacement services and non-economic
compensation). To the wrongful death lost earnings, we added burial expenses, replacement
services, and non-economic losses. As shown in the detailed breakdown of the award, we
applied certain collateral offsets to the personal injury award and to the wrongful death award.
The collateral offsets applicable to the wrongful death losses were not applied to the personal
injury award, and the collateral offsets applicable to the personal injury losses were not applied
to the wrongful death award.



September 11th
Victim Compensation Fund

After separately computing the personal injury and wrongful death losses, the VCF added these two losses together, and applied two offsets to the total: (1) your lawsuit settlement payment of $307,874.49 and (2) the previously paid personal injury award of $578,360.88. Because these two offsets exceed the total of the personal injury and wrongful death losses, your award does not include additional compensation beyond what the decedent previously received for his personal injury claim.

## What Happens Next

The VCF will deem this award to be final unless you complete and return the enclosed Compensation Appeal Request Form within **30 days from the date of this letter** as explained below.

- **Appealing the Award**:  You may request a hearing before the Special Master or her designee if you believe the amount of your loss was erroneously calculated or if you believe you can demonstrate extraordinary circumstances indicating that the calculation does not adequately address your claim.

  To request a hearing, you must complete and return the enclosed Compensation Appeal Request Form **and** Pre-Hearing Questionnaire no later than **30 calendar days** from the date of this letter.  The VCF will notify you in writing of your scheduled hearing date and time and will provide additional instructions to prepare for your hearing.  If both forms are not submitted with complete information within 30 days, you have waived your right to appeal.

- **Amending your Claim**: You may amend your claim in the future if your circumstances change and you have new information to provide to the VCF.  For example, you may amend if the WTC Health Program certifies additional physical conditions for treatment, if you have information in support of your claim that was not submitted to the VCF when your award was determined and that you believe would affect the amount of your award, or if you have incurred additional economic loss due to an eligible condition.  The VCF will review the new information and determine if it provides the basis for a revised decision.  Please see the VCF website for additional details on how to amend your claim and the specific circumstances that may be appropriate to request an amendment.

Your award was calculated using our published regulations, and I believe it is fair and reasonable under the requirements of the Reauthorized Zadroga Act.  As always, I emphasize that no amount of money can alleviate the losses suffered on September 11, 2001.

If you have any questions, please call our toll-free Helpline at 1-855-885-1555.  For the hearing impaired, please call 1-855-885-1558 (TDD).  If you are calling from outside the United States, please call 1-202-514-1100.

Sincerely,



September 11th
Victim Compensation Fund

Rupa Bhattacharyya
Special Master
September 11th Victim Compensation Fund

cc: EVELYN BETSO



September 11th
Victim Compensation Fund

# Award Detail

Claim Number:      VCF0082588
Decedent Name:     JAMES BETSO

| PERSONAL INJURY CLAIM (Losses up to Date of Death) | |
|---|---:|
| **Lost Earnings and Benefits** | |
| Loss of Earnings including Benefits and Pension | $376,826.00 |
| Mitigating or Residual Earnings | |
| **Total Lost Earnings and Benefits** | **$376,826.00** |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Disability Pension | ($79,636.00) |
| Social Security Disability Benefits | ($128,169.50) |
| Workers Compensation Disability Benefits | $0.00 |
| Disability Insurance | |
| Other Offsets related to Earnings | $0.00 |
| **Total Offsets Applicable to Lost Earnings** | **($207,805.50)** |
| | |
| **Calculated Lost Earnings and Benefits after Offsets** | **$169,020.50** |
| | |
| **Total Lost Earnings and Benefits Awarded** | **$169,020.50** |
| | |
| **Other Economic Losses** | |
| Medical Expense Loss | |
| Replacement Services | $72,074.00 |
| **Total Other Economic Losses** | **$72,074.00** |
| | |
| **Total Economic Loss** | **$241,094.50** |
| | |
| **Total Non-Economic Loss** | **$450,000.00** |
| | |
| **Subtotal Award for Personal Injury Claim** | **$691,094.50** |



September 11th
Victim Compensation Fund

| DECEASED CLAIM (Losses from Date of Death) | |
|---|---|
| **Loss of Earnings including Benefits and Pension** | $465,657.00 |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Survivor Pension | ($537,569.00) |
| SSA Survivor Benefits | |
| Worker's Compensation Death Benefits | |
| Other Offsets related to Earnings | |
| **Total Offsets Applicable to Loss of Earnings and Benefits** | ($537,569.00) |
| | |
| **Calculated Lost Earnings and Benefits after Offsets** | ($71,912.00) |
| | |
| **Total Lost Earnings and Benefits Awarded** | $0.00 |
| | |
| **Other Economic Losses** | |
| Replacement Services | $109,679.00 |
| Burial Costs | $15,303.00 |
| **Total Other Economic Losses** | $124,982.00 |
| | |
| **Total Economic Loss** | $124,982.00 |
| | |
| **Non-Economic Loss** | |
| Non-Economic Loss - Decedent | $250,000.00 |
| Non-Economic Loss - Dependent(s) | $300,000.00 |
| **Total Non-Economic Loss** | $550,000.00 |
| | |
| **Additional Offsets** | |
| Social Security Death Benefits | ($255.00) |
| Life Insurance | ($758,500.00) |
| Other Offsets | ($10,000.00) |
| **Total Additional Offsets** | ($768,755.00) |
| | |
| **Subtotal Award for Deceased Claim** | ($93,773.00) |



September 11th
Victim Compensation Fund

| Subtotal of Personal Injury and Deceased Claims | $691,094.50 |
|---|---|
| PSOB Offset | |
| Prior Lawsuit Settlement Offset | ($307,874.49) |
| Previously Paid Personal Injury Award | ($578,360.88) |
| TOTAL AWARD | ($195,140.87) |
| | |
| Factors Underlying Economic Loss Calculation | |
| Annual Earnings Basis (without benefits) | $83,409.16 |
| Percentage of Disability attributed to Eligible Conditions - applicable to Personal Injury losses | 100% |
| Start Date of Loss of Earnings Due to Disability - applicable to Personal Injury losses | 07/15/2010 |

| Eligible Conditions Considered in Award |
|---|
| Macroglobulinemia |
| Malignant Neoplasm of Brain Unspecified Site |
| Myelodysplastic Syndrome Unspecified |

# Family Member Affidavits

Evelyn Betso

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In Re:

TERRORIST ATTACKS ON                    03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001
----------------------------------------------------------- X        **AFFIDAVIT OF**
EVELYN BETSO, et al.,                                        **EVELYN BETSO**


                              Plaintiffs,        21-CV-01394 (GBD)(SN)


                 V.

ISLAMIC REPUBLIC OF IRAN,

                              Defendant.
-----------------------------------------------------------------X

STATE OF NEW YORK        )
                         : SS
COUNTY OF ROCKLAND )


EVELYN BETSO, being duly sworn, deposes and says:

1.      I am a plaintiff in the within action, am over 18 years of age, and reside at
125 Ablondi Road, Pearl River, NY 10965.

2.      I am currently 63 years old, having been born on September 22, 1960.

3.      I am the spouse of Decedent, James Betso, upon whose death my claims are
based. I submit this Affidavit in support of the present motion for a default money judgment
for the claim made on behalf of my husband's estate and for my solatium claim. On July 10,
2015, I was issued Letters of Administration as Administrator of my husband's estate by
the Rockland County Surrogate's Court.

4.      My husband passed away from brain cancer on June 17, 2015, at the age of 60. It
was medically determined that this illness was causally connected to his exposure to the toxins
resulting from the September 11, 2001, terrorist attacks at the World Trade Center



5.      My husband James Betso was a police officer for the NYPD for 20 years. He was appointed as a police officer January 26, 1982, and retired May 31, 2002.

We were married for 20 years. We had a great marriage; we always had a fun-loving relationship.

6.      James was assigned to the 23rd precinct in East Harlem, New York. I know he was called into work the morning of 9/11 and was sent to the World Trade Center.

7.      James was diagnosed with three cancers, non-Hodgkins's lymphoma, myelodysplastic syndrome (MDS), Glioblastoma, brain tumor and blood cancers. My husband's quality of life was gone, he went from the bed to the couch each day. This was a stressful and heartbreaking time in my life and still is for my children also. Starting in March of 2010 we noticed a deterioration of his strength stamina and overall ability to do physical activity. He couldn't walk up a flight of stairs or driveway. His hemoglobin was down 6 gm throughout the course of his treatments. He had about 15 blood transfusions.

By the end of May 2011 his blood cancers were in remission but to my shock and thinking all is okay now, he had a grand mal seizure in the backyard in May 2013. He was now diagnosed with stage 4 brain cancer. He underwent brain surgery on June 7, 2013. The various treatments he underwent for 3 cancers had taken a toll, multiple rounds of chemotherapy, brain surgery, radiation, endless transfusions, bone marrow biopsies and medical tests.

8.      Our daughters were very affected by their father's sickness, at such an early age when your father's influence on your life is so important. They were 13 and 18 years old when he developed brain cancer. It was quite traumatic for them both to see their father having seizures. As a family we no longer went on vacations or day trips, he could not participate, he had chronic

fatigue, loss of fine motor skills. He could not do anything around the house, shave, tie his shoes, hold his coffee cup without spilling and lost his ability to hold a sentence.  He was always in and out of the hospital each time he had a seizure. We would drive down to MSKCC also at Helen Hayes Rehabilitation for a week after surgery. Then he was an outpatient for some time. Then he had home care, physical therapy, speech therapy and nurse visits. Towards the end he had a walking cane because he was very imbalanced.

_____

EVELYN BETSO

Sworn before me this

25th day of Aug ., 2023

_____

Notary public

ELEONORA K ANTONOVA
Notary Public - State of New York
NO. 01AN6364407
Qualified in Rockland County
My Commission Expires Sep 11, 2025

Jade Betso

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In Re:

TERRORIST ATTACKS ON                              03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

----------------------------------------------------------- X       **AFFIDAVIT OF**
EVELYN BETSO, et al.,                                               **JADE BETSO**


                                    Plaintiffs.        21-CV-01394 (GBD)(SN)


                    V.

ISLAMIC REPUBLIC OF IRAN,

                                    Defendant.
-----------------------------------------------------------------X

STATE OF NEW YORK          )
                           : SS
COUNTY OF ROCKLAND )


        JADE BETSO, being duly sworn, deposes and says:

        1.      I am a plaintiff in the within action, am over 18 years of age, and reside at
125 Ablondi Road, Pearl River, NY 10965.

        2.      I am currently 33 years old, having been born on October 24, 2000.

        3.      I am the daughter of Decedent, James Betso upon whose death my claim is
based, and submit this Affidavit in connection with the present motion for a default
judgment and in support of my solatium claim.

        4.      My father passed away from brain cancer on June 17, 2015, at the age of 60. It
was medically determined that this illness was causally connected to his exposure to the toxins
resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

5.      Beyond being my father, he was a dedicated police officer of the NYPD. He was also my best friend, and our bond was truly special. Every weekend we would spend it together doing activities we loved like ice skating (he played hockey on the NYPD team) going to the movies, swimming, skiing, minigolf, sliding, bike riding, and walking the dog. These moments built a strong father and daughter bond. One of the most cherished memories I have of my dad from my childhood is when he tucked me into bed every night. He would lie beside me and together we would create bedtime stores and make shadow puppets on the wall from the light of my night light.

6.      I don't recall September 11th being one years old. I know my dad was watching me that morning and after hearing about the attack he quickly put his uniform on, left me in the care of my aunt, and reported to his precinct, the 23rd in Manhattan. He was an NYPD responder to the attack. I do not recall how long he spent in the exposure zone.

7.      I was with my dad when he first noticed something was wrong with his health. We were at the mall and saw a sign for a free pint of ice cream if you donated blood. My dad was excited to donate blood so I could get ice cream. We went to give blood and the nurse told him something was wrong with his blood cell count and that he should go to the emergency room immediately. On the way home I could tell something was wrong because he was very quiet. That was when he was first diagnosed with cancer. He was never the same man. After and during his brain cancer he was the worst. I watched my dad go from being my best friend, to a man that could no longer communicate, walk, feed himself or grasp what was happening. Most of his life towards the end was spent in the hospital.

8.      I've had many traumatic experiences with my dad's illness for example, him taking a seizure in the back yard and me running down my street screaming on the top of my lungs for

help, visiting him in the hospital and seeing him handcuffed to the bed with what looked like millions of wires coming out of his skull and body. This was when I was twelve. I cried myself to sleep countless nights about the frustrations of my dad not being able to talk to me because the brain cancer ruined his speech. He will never be able to walk me down the aisle on my wedding day, he didn't get to watch me graduate high school or college, and many other milestones.  This is all due to his illness brought on by September 11th cancer from him being an NYPD officer.

_____
JADE BETSO

Sworn before me this

_3rd_ day of _November_ 2023

_____
Notary public

ELEONORA K ANTONOVA
Notary Public - State of New York
NO. 01AN6364407
Qualified in Rockland County
My Commission Expires Sep 11, 2025

Leah Betso

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In Re:

TERRORIST ATTACKS ON                           03-MDL-1570  (GBD)(SN)
SEPTEMBER 11, 2001

--------------------------------------------------- X        **AFFIDAVIT OF**
EVELYN BETSO, et al.,                                        **LEAH BETSO**


                                    Plaintiffs,       21-CV-01394  (GBD)(SN)


                        V.

ISLAMIC REPUBLIC OF IRAN,

                                    Defendant.
-------------------------------------------------------------X

STATE OF NEW YORK         )
                          : SS
COUNTY OF ROCKLAND )


        LEAH BETSO, being duly sworn, deposes and says:

        1.      I am a plaintiff in the within action, am over 18 years of age, and reside at
125 Ablondi Road, Pearl River, NY 10965.

        2.      I am currently 27 years old, having been born on July 27, 1996.

        3.      I am the daughter of Decedent, James Betso upon whose death my claim is
based, and submit this Affidavit in connection with the present motion for a default
judgment and in support of my solatium claim.

        4.      My father passed away from brain cancer on June 17, 2015, at the age of 60. It
was medically determined that this illness was causally connected to his exposure to the toxins
resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

5.     I had a great relationship with my dad, he was my role model and my hero. I loved going skiing and going to the beach with him.

6.     September 11, 2001, was my first day of kindergarten. I remember going to school that morning but leaving shortly afterward. My dad was an NYPD responder to the World Trade Center attacks. I do not recall how long he was there.

7.     My dad changed drastically when he was diagnosed with his illness. We could no longer do family activities, like going to dinner or to the movies. He could no longer take care of our family dog or household.

8.     I lost my hero and role model. It is hard for me to live my life without my dad. Not a day goes by without me thinking of him.

LEAH BETSO

Sworn before me this

_3rd_ day of _November_ 2023

Notary public

ELEONORA K ANTONOVA
Notary Public - State of New York
NO. 01AN6364407
Qualified in Rockland County
My Commission Expires Sep 11, 2025