# EXHIBIT I

Estate of Scott N. Gaines

# VCF Documentation



September 11th
Victim Compensation Fund

July 16, 2018

KAREN GAINES
C/O WENDELL TONG
SULLIVAN PAPAIN BLOCK MCGRATH & CANNAVO, PC
120 BROADWAY 18TH FLOOR
NEW YORK NY  10271

Dear KAREN GAINES:

The September 11th Victim Compensation Fund ("VCF") has reviewed your Eligibility Form.
You submitted an Eligibility Form on behalf of SCOTT GAINES.  Your claim number is
VCF0116438.  Your Eligibility Form was determined to be substantially complete on July 13,
2018.  As stated in the Regulations and on the claim form, by filing a substantially complete
Eligibility Form, you have waived your right to file or be a party to a September 11th-related
lawsuit on behalf of the decedent and his or her survivors.

## The Decision on your Claim

The VCF has determined that the decedent has met the eligibility criteria established in the
statute and regulations.  Based on the information you submitted and information the VCF
has received from the World Trade Center ("WTC") Health Program, the decedent has been
found eligible for the following injuries:

- BASAL CELL CA SKIN LT UPPER LIMB INCL SHOULDER
- MALIGNANT NEOPLASM OF TONSIL UNSPECIFIED

Please note that there are several reasons why an injury that you think should be eligible is not
listed above.  For non-traumatic injuries, the name of the injury is based on the information
provided by the WTC Health Program and there may be different names for the same injury.
Additionally, your injury may not be listed if it was only recently certified for treatment by the
WTC Health Program.

If in the future the WTC Health Program should notify you that a condition previously found
eligible is no longer certified, you must inform the VCF as this may affect your eligibility status
and/or the amount of your award.

## What Happens Next

**If the decedent was certified for treatment by the WTC Health Program for a condition not
listed above**, you should amend your claim.  Please see the VCF website for details on how to
amend your claim.  The VCF will review the new information and determine if it provides the
basis for a revised decision.

**If you believe the decedent had eligible injuries not treated by the WTC Health Program**
and you would like the VCF to consider those injuries before calculating the amount of any



September 11th
Victim Compensation Fund

compensation, you should amend your claim.  If you choose to amend your claim, you will need to use the VCF Private Physician process.  The Private Physician process is a way for the VCF to gather the required information about the decedent's treatment in order to process your claim. All forms are available on the VCF website under "Forms and Resources."  The website also includes detailed information and instructions on the Private Physician process.

**If the decedent did not have injuries other than those listed above,** you should submit your Compensation Form and required supporting materials.  If you have already submitted your Compensation Form, you do not need to take any action at this time unless you receive a request from the VCF for missing information.  The VCF will calculate the amount of any compensation based on the conditions listed above after all compensation-related documents are submitted.

If you have questions about the information in this letter or the claims process in general, please call our toll-free Helpline at 1-855-885-1555.  For the hearing impaired, please call 1-855-885-1558 (TDD).  If you are calling from outside the United States, please call 1-202-514-1100.

Sincerely,

Rupa Bhattacharyya
Special Master
September 11th Victim Compensation Fund

cc: KAREN GAINES



September 11th
Victim Compensation Fund

June 16, 2020

KAREN GAINES
C/O WENDELL TONG
SULLIVAN PAPAIN BLOCK MCGRATH & CANNAVO, PC
120 BROADWAY 18TH FLOOR
NEW YORK NY  10271

**Re: CLAIM NUMBER: VCF0116438**

Dear KAREN GAINES:

The September 11th Victim Compensation Fund ("VCF") sent you a letter on September 06, 2019.

You then appealed the determination.  The VCF has considered your appeal and has re-evaluated your claim for compensation.  This letter sets forth the revised award and supersedes and replaces all previous letters.

Based on the information you provided in support of your appeal, the VCF has calculated the amount of your award as **$44,968.90**.  This determination is in accordance with the requirements of the Never Forget the Heroes: James Zadroga, Ray Pfeifer, and Luis Alvarez Permanent Authorization of the September 11th Victim Compensation Fund Act ("VCF Permanent Authorization Act").  The enclosed "Award Detail" includes a detailed explanation of the calculation and a list of the eligible conditions that were considered when calculating your award.  This is the final decision on your appeal.

Your award was revised to include compensation for replacement services loss. The earnings basis was not revised, because Mr. Gaines retired from NYPD in 2002 with a service pension, and did not reclassify this pension later. Mr. Gaines's eligible income loss began in 2016, and was associated with his employment at Barnes & Noble.

No non-routine legal service expenses are approved for reimbursement for this claim.

**What Happens Next**

The VCF will begin processing the payment on your claim using the information you provided on the VCF ACH Payment Information Form or other payment authorization document you submitted to the VCF.   The Special Master will authorize the payment within 20 days of the date of this letter.  Once the Special Master has authorized the payment, it may take up to three weeks for the United States Treasury to disburse the money into the designated bank account.  **If your payment information has changed, you must call the VCF Helpline immediately at the number below.**

**Notifying the VCF of new Collateral Source Payments**: You must inform the VCF of any new collateral source payments you receive, or become entitled to receive, such as a



September 11th
Victim Compensation Fund

change to your disability or survivor benefits, as this may change the amount of your award. If you notify the VCF within 90 days of learning of the new collateral source payment, your award will not be adjusted to reflect the new entitlement or payment.  If you notify the VCF more than 90 days after learning of the new or revised entitlement or payment, the VCF may adjust your award to reflect the new payment as an offset, which may result in a lower award.  If you need to notify the VCF of a new collateral source payment, please complete the "Collateral Offset Update Form" found under "Forms and Resources" on the www.vcf.gov website.

Your award was calculated using our published regulations, and I believe it is fair and reasonable under the requirements of the VCF Permanent Authorization Act.  As always, I emphasize that no amount of money can alleviate the losses suffered on September 11, 2001.

If you have any questions, please call our toll-free Helpline at 1-855-885-1555.  Please have your claim number ready when you call: **VCF0116438**.  For the hearing impaired, please call 1-855-885-1558 (TDD).  If you are calling from outside the United States, please call 1-202-514-1100.

Sincerely,

Rupa Bhattacharyya
Special Master
September 11th Victim Compensation Fund

cc: KAREN GAINES



September 11th
Victim Compensation Fund

# Award Detail

Claim Number:      VCF0116438
Decedent Name:    SCOTT GAINES

| PERSONAL INJURY CLAIM (Losses up to Date of Death) | |
|---|---|
| **Lost Earnings and Benefits** | |
| Loss of Earnings including Benefits and Pension | $38,204.00 |
| Mitigating or Residual Earnings | $0.00 |
| **Total Lost Earnings and Benefits** | **$38,204.00** |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Disability Pension | $0.00 |
| Social Security Disability Benefits | ($26,778.00) |
| Workers Compensation Disability Benefits | $0.00 |
| Disability Insurance | $0.00 |
| Other Offsets related to Earnings | $0.00 |
| **Total Offsets Applicable to Lost Earnings** | **($26,778.00)** |
| | |
| **Calculated Lost Earnings and Benefits after Offsets** | **$11,426.00** |
| | |
| **Total Lost Earnings and Benefits Awarded** | **$11,426.00** |
| | |
| **Other Economic Losses** | |
| Medical Expense Loss | $0.00 |
| Replacement Services | $0.00 |
| **Total Other Economic Losses** | **$0.00** |
| | |
| **Total Economic Loss** | **$11,426.00** |
| | |
| **Total Non-Economic Loss** | **$300,000.00** |
| | |
| **Subtotal Award for Personal Injury Claim** | **$311,426.00** |



September 11th
Victim Compensation Fund

| DECEASED CLAIM (Losses from Date of Death) | |
|---|---|
| **Loss of Earnings including Benefits and Pension** | $86,976.00 |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Survivor Pension | ($659,237.00) |
| SSA Survivor Benefits | $0.00 |
| Worker's Compensation Death Benefits | $0.00 |
| Other Offsets related to Earnings | $0.00 |
| **Total Offsets Applicable to Loss of Earnings and Benefits** | ($659,237.00) |
| | |
| **Calculated Lost Earnings and Benefits after Offsets** | ($572,261.00) |
| | |
| **Total Lost Earnings and Benefits Awarded** | $0.00 |
| | |
| **Other Economic Losses** | |
| Replacement Services | $174,130.00 |
| Burial Costs | $21,475.00 |
| **Total Other Economic Losses** | $195,605.00 |
| | |
| **Total Economic Loss** | $195,605.00 |
| | |
| **Non-Economic Loss** | |
| Non-Economic Loss - Decedent | $250,000.00 |
| Non-Economic Loss - Spouse/Dependent(s) | $100,000.00 |
| **Total Non-Economic Loss** | $350,000.00 |
| | |
| **Additional Offsets** | |
| Social Security Death Benefits | ($255.00) |
| Life Insurance | ($468,351.86) |
| Other Offsets | ($10,000.00) |
| **Total Additional Offsets** | ($478,606.86) |
| | |
| **Subtotal Award for Deceased Claim** | $66,998.14 |



September 11th
Victim Compensation Fund

| Subtotal of Personal Injury and Deceased Claims | $378,424.14 |
|---|---|
| PSOB Offset | ($32,163.00) |
| Prior Lawsuit Settlement Offset | $0.00 |
| Award Paid on Prior Personal Injury Claim | ($301,292.24) |
| **TOTAL AWARD** | $44,968.90 |
| | |
| **Factors Underlying Economic Loss Calculation** | |
| Annual Earnings Basis (without benefits) | $25,756.21 |
| Percentage of Disability attributed to Eligible Conditions - applicable to Personal Injury losses | 100.00% |
| Start Date of Loss of Earnings Due to Disability - applicable to Personal Injury losses | 03/22/2016 |

| Eligible Conditions Considered in Award |
|---|
| Basal Cell Ca Skin Lt Upper Limb Incl Shoulder |
| Malignant Neoplasm of Tonsil Unspecified |

# Family Member Affidavits

Karen Gaines

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

In Re:

TERRORIST ATTACKS ON                          03-MDL-1570  (GBD)(SN)
SEPTEMBER 11, 2001

------------------------------------------------------------- X    **AFFIDAVIT OF**
EVELYN BETSO, et al.,                              **KAREN E. GAINES**

                                 Plaintiffs,       21-CV-01394 (GBD)(SN)

                    V.

ISLAMIC REPUBLIC OF IRAN,

                                 Defendant.
------------------------------------------------------------- X

STATE OF NEW YORK          )
                           : SS
COUNTY OF NASSAU           )

     KAREN E. GAINES, being duly sworn, deposes and says:

    1.    I am a plaintiff in the within action, am over 18 years of age, and reside at 216 North 4th Street, Bethpage, New York 11714.

    2.    I am currently 60 years old, having been born on April 26,1963.

    3.    I am the wife of Decedent, Scott N. Gaines, upon whose death my claims are based. I submit this Affidavit in support of the present motion for a default money judgment for the claim made on behalf of my husband's estate and for my solatium claim. On January 19, 2018, I was issued Letters Testamentary as Executor of my husband's estate by the Nassau County Surrogate's Court.

    4.    My husband passed away from Malignant Neoplasm of the Tonsil, unspecified and Basal Cell Carcinoma Skin of the Left Upper Limb including the shoulder on September 27, 2017, at the age of 62. It was medically determined that this illness was causally connected to his exposure to the toxins resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

5.     I met my husband, Scott N. Gaines, at 19 years old. It was truly love at first sight. We were engaged sixth months later and got married as soon as I finished college. When we met Scott was a NYPD Police Officer. Scott was my forever partner. We shared everything. Scott was kind, intelligent, and funny. Together we built a home. You would often find us working on DIY projects and having family dinners, day trips and vacations. Even simple weekday dinners were a chance to celebrate. He was my soulmate. We would dance in the kitchen until we both were laughing or holding hands while reading. Scott was loving and affectionate and would do anything to make my day easier. As I had a rough childhood, Scott showed me how to trust again and healed me from my past traumas. He was the "papa bear" of both my family and his, but most importantly he was my shield, rock, advocate, and confidant. Our daughter, Amy, embodies his personality as she is kind and smart like her dad.

6.     On 9/11, my husband, Scott N. Gaines was supposed to be on vacation. Instead, when he heard of the attacks, he felt obligated to help. He had previously served in the U.S. Air Force as an air traffic controller before becoming a NYPD officer. He instantly called me at my office to inform me that he would be reporting to his command at Highway 3 in Queens. He immediate was deployed to Ground Zero. His main task was to ensure traffic in the area was conducted, especially when human remains were found. Scott spent multiple weeks for a grueling 12 hours per day at Ground Zero while inhaling toxins from the attack. For years prior to Scott's diagnosis, he struggled with sore throats and was given antibiotics to no avail. In February of 2016, Scott was diagnosed with cancer after going to an Ear Nose and Throat specialist. He endured rounds of chemotherapy and radiation as the cancer metastasized throughout his body. We sought out every method of treatment from established methods to clinical trials. The medications affected

everything about my husband, especially his appetite and his confidence. The medications Scott took caused him to have constant nausea preventing him from eating and effected his tastebuds therefore causing him to lose weight drastically. Another medication left his skin discolored and purple with small bleeding cuts. When we went in public, people shunned him because of how he looked and then not recognizing that he was a cancer patient. Afraid of scrutiny, he lost his zeal for outings aside from the fact that he couldn't endure being out because of how tired he became from the treatments. The doctor's visits and treatments consumed our lives and Scott was no longer able to work, which additionally caused an immediate financial strain. Scott being the man that he was, felt guilty about his inability to contribute to the household. All of Scott's hobbies were taken away from him since he had placed all his focus on beating the cancer. Cancer took the spark out of Scott's life and inevitably our marriage.

7.    The abject horror of watching the love of your life being tormented with cancer treatment after cancer treatment, losing the ability to hold down even the simplest of jobs, losing 100 pounds over a 20-month period so his six-foot frame was just skin, and bones was absolute torture. The fun-loving man I married, always ready for an adventure, with an appetite for life, disappeared as the various treatments took their hold. The cancer spread from his tonsil to his throat, to his bones and then lymphatic system. Ultimately, he lost the ability to speak and even to blink his eyes. The man who would sweep me in his arms to say, "I love you", was rendered speechless and motionless.

8.    When Scott became ill, he was unable to assist me with his normal household duties that I would rely on him for. We maintained the household together and because of his treatment, his half of duties became my responsibility on top of caring for him. In addition to emotional support, Scott supported me physically due to my own health conditions and because my focus had

also become mainly his health, I had neglected my own care. Scott was my best friend, a compassionate and reliable partner, the only man I've ever loved and the father of my child. The grief has been nearly unbearable and unmooring. I have been in bereavement counseling for years and therapy after being diagnosed with PTSD from his passing and have been trying to cope and manage the grief it caused. My daughter, Amy, also had to endure her father's illness and help me care for him. The loving relationship they had between Daddy and Daughter was cut way too short. Scott never got the chance to walk her down the aisle, he would never meet his grandkids and they would never know his strength, warmth, and affection. I am now lost without him.

KAREN E. GAINES

Sworn before me this

8 day of Aug, 2023

Notary public

ROBINN EASON
Notary Public, State of New York
No. 01EA6173209
Qualified in Nassau County
Commission Expires November 4, 2023