# EXHIBIT D

# Estate of Robert Alexander

# VCF Documentation

Case 1:03-md-01570-GBD-SN   Document 9778-4   Filed 05/07/24   Page 4 of 17



September 11th
Victim Compensation Fund

June 20, 2018

RAYMOND ALEXANDER
C/O WENDELL TONG
SULLIVAN PAPAIN BLOCK MCGRATH & CANNAVO, PC
120 BROADWAY 18TH FLOOR
NEW YORK NY  10271

Dear RAYMOND ALEXANDER:

The September 11th Victim Compensation Fund ("VCF") has reviewed your Eligibility Form. You submitted an Eligibility Form on behalf of ROBERT ALEXANDER.  Your claim number is VCF0108175.  Your Eligibility Form was determined to be substantially complete on June 19, 2018.  As stated in the Regulations and on the claim form, by filing a substantially complete Eligibility Form, you have waived your right to file or be a party to a September 11th-related lawsuit on behalf of the decedent and his or her survivors.

### The Decision on your Claim

The VCF has determined that the decedent has met the eligibility criteria established in the statute and regulations.  Based on the information you submitted and information the VCF has received from the World Trade Center ("WTC") Health Program, the decedent has been found eligible for the following injuries:

- MALIGNANT NEOPLASM OF BRAIN UNSPECIFIED SITE
- UNSPECIFIED SINUSITIS AND RELATED PHYSICAL CONDITIONS: OBSTRUCTIVE SLEEP APNEA

Please note that there are several reasons why an injury that you think should be eligible is not listed above.  For non-traumatic injuries, the name of the injury is based on the information provided by the WTC Health Program and there may be different names for the same injury. Additionally, your injury may not be listed if it was only recently certified for treatment by the WTC Health Program.

If in the future the WTC Health Program should notify you that a condition previously found eligible is no longer certified, you must inform the VCF as this may affect your eligibility status and/or the amount of your award.

### What Happens Next

**If the decedent was certified for treatment by the WTC Health Program for a condition not listed above**, you should amend your claim.  Please see the VCF website for details on how to amend your claim.  The VCF will review the new information and determine if it provides the basis for a revised decision.

_____
P.O. Box 34500, Washington, D.C. 20043
VCF0108175EL0620181C


September 11th
Victim Compensation Fund

**If you believe the decedent had eligible injuries not treated by the WTC Health Program** and you would like the VCF to consider those injuries before calculating the amount of any compensation, you should amend your claim.  If you choose to amend your claim, you will need to use the VCF Private Physician process.  The Private Physician process is a way for the VCF to gather the required information about the decedent's treatment in order to process your claim.  All forms are available on the VCF website under "Forms and Resources."  The website also includes detailed information and instructions on the Private Physician process.

**If the decedent did not have injuries other than those listed above,** you should submit your Compensation Form and required supporting materials.  If you have already submitted your Compensation Form, you do not need to take any action at this time unless you receive a request from the VCF for missing information.  The VCF will calculate the amount of any compensation based on the conditions listed above after all compensation-related documents are submitted.

If you have questions about the information in this letter or the claims process in general, please call our toll-free Helpline at 1-855-885-1555.  For the hearing impaired, please call 1-855-885-1558 (TDD).  If you are calling from outside the United States, please call 1-202-514-1100.

                      Sincerely,

                      Rupa Bhattacharyya
                      Special Master
                      September 11th Victim Compensation Fund

cc: RAYMOND ALEXANDER



August 23, 2019

RAYMOND ALEXANDER
33 WILDFLOWER LANE
MIDDLETOWN CT  06457

Dear RAYMOND ALEXANDER:

The September 11th Victim Compensation Fund ("VCF") sent you a letter on July 10, 2019 notifying you of the amount of your award.  Your claim number is VCF0108175.  As explained in that letter, your award was reduced as a result of the Special Master's determination in February 2019 that the VCF's funding was insufficient to compensate all pending and projected claims.

On July 29, 2019, the President signed into law the Never Forget the Heroes: James Zadroga, Ray Pfeifer, and Luis Alvarez Permanent Authorization of the September 11th Victim Compensation Fund Act ("VCF Permanent Authorization Act").  The VCF Permanent Authorization Act extends the VCF's claim filing deadline until October 1, 2090, and provides such funds as may be necessary to compensate all approved claims.  The Act also requires the Special Master to issue payments to any claimants who were impacted by the reductions in order to make up the difference between the reduced award and the unreduced value that would have been awarded had the reductions not been applied.  Additional information about the VCF Permanent Authorization Act can be found on the www.vcf.gov website.  This letter sets forth the full amount of your unreduced award, and supersedes and replaces all previous award letters.

The VCF has reviewed the information you submitted and calculated the amount of your unreduced award.  When determining the amount of your loss, the VCF calculates the amount of your economic and non-economic loss and then is required to subtract the amount of any payment you have received, or are entitled to receive, from any source that meets the definition of collateral offsets under the Statute and regulations.  Because the amount of your collateral offset payments exceeds the total amount of your economic and non-economic loss, your unreduced award is $0.00.

This determination is in accordance with the requirements of the VCF Permanent Authorization Act.  The enclosed "Award Detail" includes a detailed explanation of the calculation and a list of the eligible conditions included in this determination.

No non-routine legal service expenses are approved for reimbursement for this claim.

As the Personal Representative, you are required to distribute any payment received from the VCF on behalf of the victim to the eligible survivors or other recipients in accordance with the applicable state law or any applicable ruling made by a court of competent jurisdiction or as provided by the Special Master.

**What Happens Next**



This award may not be appealed.  There is no basis for an appeal as you did not appeal the previously-reduced award.

**Amending your Claim**: You may amend your claim in the future if your circumstances change and you have new information to provide to the VCF that you believe warrants additional compensation.  The VCF website has important information about the specific circumstances when it is appropriate to request an amendment.  For more information and examples of such situations, please refer to "Section 5 – Amendments" in the VCF Policies and Procedures document available under "Forms and Resources" on the VCF website.  Please review the information carefully when deciding whether to amend your claim.  If you submit an amendment, the VCF will review the new information and determine if it provides the basis for a revised decision.

**When considering whether to amend your claim, please review the amount of your economic and non-economic loss award, and the amount by which that award was reduced due to collateral offsets.**  You should consider whether these offsets will exceed the new loss you are seeking.  If your offsets are substantially higher than the loss you are claiming through the amendment, the amendment will not result in a change to your net total award.  In these situations, the VCF does not recommend submitting the amendment.

Your award was calculated using our published regulations, and I believe it is fair and reasonable under the requirements of the VCF Permanent Authorization Act.  As always, I emphasize that no amount of money can alleviate the losses suffered on September 11, 2001.

If you have any questions, please call our toll-free Helpline at 1-855-885-1555.  For the hearing impaired, please call 1-855-885-1558 (TDD).  If you are calling from outside the United States, please call 1-202-514-1100.

        Sincerely,

        Rupa Bhattacharyya
        Special Master
        September 11th Victim Compensation Fund

cc: WENDELL TONG



# Award Detail

Claim Number: VCF0108175
Decedent Name: ROBERT ALEXANDER

| **PERSONAL INJURY CLAIM (Losses up to Date of Death)** | |
|---|---|
| **Lost Earnings and Benefits** | |
| Loss of Earnings including Benefits and Pension | $11,716.00 |
| Mitigating or Residual Earnings | $0.00 |
| **Total Lost Earnings and Benefits** | $11,716.00 |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Disability Pension | $0.00 |
| Social Security Disability Benefits | ($68,906.00) |
| Workers Compensation Disability Benefits | $0.00 |
| Disability Insurance | $0.00 |
| Other Offsets related to Earnings | $0.00 |
| **Total Offsets Applicable to Lost Earnings** | ($68,906.00) |
| | |
| **Calculated Lost Earnings and Benefits after Offsets** | ($57,190.00) |
| | |
| **Total Lost Earnings and Benefits Awarded** | $0.00 |
| | |
| **Other Economic Losses** | |
| Medical Expense Loss | $0.00 |
| Replacement Services | $0.00 |
| **Total Other Economic Losses** | $0.00 |
| | |
| **Total Economic Loss** | $0.00 |
| | |
| **Total Non-Economic Loss** | $300,000.00 |
| | |
| **Subtotal Award for Personal Injury Claim** | $300,000.00 |



| DECEASED CLAIM (Losses from Date of Death) | |
|---|---|
| **Loss of Earnings including Benefits and Pension** | $1,862,298.00 |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Survivor Pension | ($1,637,096.00) |
| SSA Survivor Benefits | $0.00 |
| Worker's Compensation Death Benefits | $0.00 |
| Other Offsets related to Earnings | $0.00 |
| **Total Offsets Applicable to Loss of Earnings and Benefits** | ($1,637,096.00) |
| | |
| **Calculated Lost Earnings and Benefits after Offsets** | $225,202.00 |
| | |
| **Total Lost Earnings and Benefits Awarded** | $225,202.00 |
| | |
| **Other Economic Losses** | |
| Replacement Services | $0.00 |
| Burial Costs | $18,068.49 |
| **Total Other Economic Losses** | $18,068.49 |
| | |
| **Total Economic Loss** | $243,270.49 |
| | |
| **Non-Economic Loss** | |
| Non-Economic Loss - Decedent | $250,000.00 |
| Non-Economic Loss - Spouse/Dependent(s) | $0.00 |
| **Total Non-Economic Loss** | $250,000.00 |
| | |
| **Additional Offsets** | |
| Social Security Death Benefits | $0.00 |
| Life Insurance | ($167,692.87) |
| Other Offsets | $0.00 |
| **Total Additional Offsets** | ($167,692.87) |
| | |
| **Subtotal Award for Deceased Claim** | $325,577.62 |



September 11th Victim Compensation Fund

| **Subtotal of Personal Injury and Deceased Claims** | $625,577.62 |
|---|---|
| PSOB Offset | $0.00 |
| Prior Lawsuit Settlement Offset | $0.00 |
| Award Paid on Prior Personal Injury Claim | ($1,158,216.46) |
| **Total Revised Award** | -$532,638.84 |
| **Previously Paid Award** | $0.00 |
| **TOTAL AWARD** | $0.00 |
| | |
| **Factors Underlying Economic Loss Calculation** | |
| Annual Earnings Basis (without benefits) | $166,802.78 |
| Percentage of Disability attributed to Eligible Conditions - applicable to Personal Injury losses | 100.00% |
| Start Date of Loss of Earnings Due to Disability - applicable to Personal Injury losses | 10/27/2016 |

| **Eligible Conditions Considered in Award** |
|---|
| Malignant Neoplasm of Brain Unspecified Site |
| Unspecified Sinusitis and Related Physical Conditions:  Obstructive Sleep Apnea |

# Family Member Affidavits

# Raymond Alexander

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

In Re:

TERRORIST ATTACKS ON                                    03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

------------------------------------------------------------ X     **AFFIDAVIT OF**
RAYMOND ALEXANDER, et al.,                              **RAYMOND ALEXANDER**

                            Plaintiffs,                 21-CV-03505 (GBD)(SN)

              V.

ISLAMIC REPUBLIC OF IRAN,

                            Defendant.
------------------------------------------------------------ X

STATE OF CONNECTICUT  )
                      : SS
COUNTY OF MIDDLESEX)

      RAYMOND ALEXANDER, being duly sworn, deposes and says:

1. I am a plaintiff in the within action, am over 18 years of age, and reside at 33 Wildflower Lane, Middletown, Connecticut 06457.

2. I am currently 51 years old, having been born on July 5, 1971.

3. I am the brother of Decedent, Robert Alexander, upon whose death my claim is based, and submit this Affidavit in connection with the present motion for a default judgment and in support of my solatium claim.

4. My brother passed away from brain cancer on August 14, 2017, at the age of 43. It was medically determined that this illness was causally connected to his exposure to the toxins resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

5. On October 26, 2017, I was issued Letters Testamentary on behalf of my brother's estate by the Bronx County Surrogate's Court.

6. Robert was my only brother. He was two and a half years younger than me, but we shared a closed bond that only strengthened well into adulthood. Our common youth included memories of locations and people that held dear places in our hearts. Rob moved to the Bronx but often commuted back home to visit my daughter Delaney – who happened to be his goddaughter – at least twice a month and on special occasions, including the holiday season. We would frequently stay in the house in Massachusetts where we were raised that he had purchased from our parents. Rob led a very successful career with the Fire Department in New York City. We were all extremely proud of him and often traveled to the city once or twice a year to watch him accept awards and medals for his meritorious work. Our father also worked with the FDNY and would sometimes accept awards alongside my brother. Shortly before Rob's passing, he delivered a short but wonderful speech during the christening of a boat he helped to design. It was admirable watching him during these public events; he carried himself with conviction and was an excellent public speaker. He was a wonderful man on and off the field. He was fond of dogs, and so adopted one in 2015, naming her Blueberry. I adopted Blueberry after Rob's passing. She is his last living memorial.

7. When the traumatic events on 9/11 transpired, both my father and brother disappeared for approximately five weeks to assist with rescue and clean-up efforts down at Ground Zero. Rob was a beat cop with the NYPD at the time, while my father worked with the FDNY. My father drove down to the city from his house in Massachusetts when he saw the news, and Rob immediately went to Lower Manhattan after his shift ended in the Bronx. They notified my mother and I of their responding status that day. I was able to speak with Rob only a few times until November of 2001 when he was able to take a few days off and come up to our parents'

home. On November 12, 2001, his best friend Sean, a firefighter at the time, was found in the rubble. He had perished in the North Tower after he had reported to the area to assist with rescue and recovery efforts. Rob and I had known Sean for some time from Woodlawn Heights in the Bronx; we had often watched the New York Rangers together. Sean had also been in the Marines, so it was no surprise that the city held an extravagant funeral for him. Rob spoke during the funeral, but he had difficult doing so because he had to choke back tears. I don't believe he was able to establish a close bond with anyone like Sean after Sean's passing. They had actually started out as EMTs for the FDNY for two years before Sean continued on to the fire academy, while Rob switched gears and decided to enroll in the police academy. Despite Rob's decision, he remained on the FDNY "list" and officially became a firefighter in February 2002 – during a time in which the shortage of FDNY was palpable.

8.   I was the first person Rob called from Mount Sinai Hospital when his ENT doctor discovered a tumor in November 2014. Rob had to stay an additional five days because the doctors wanted to surveil the tumor in 3-D, which was possible with a specific type of CAT-scan conducted twice daily. I assured him I would be by his side the very next day. I couldn't make it earlier than I anticipated because there was a blazing snowstorm in Connecticut, resulting in a shortage of functioning trains on the Metro-North Railroad line. I phoned James Kelly, our mutual friend, and asked him if he would be able to make it to Mount Sinai for us. He did. I managed to make it down to the hospital the very next day and wasn't surprised to see Rob in good spirits. He always was. The diagnosis of his first illness – anaplastic astrocytoma grade III – was his first instance of spending the night in a hospital. His balance and vision were noticeably changing for the worse. The doctors estimated anywhere between two and five years left of life. Rob received excellent care at Memorial Sloan Kettering and through the World Trade Center Health Program, but the

damage was already done in November 2014. I drove him from Middletown, CT to Harrison, NY six times so he could attend his radiation and chemotherapy sessions. The FDNY provided transportation services for his treatments about ten times. Rob was even involved with the Zadroga Act and would travel to Washington, D.C., a number of times to assist. His treatment prevented him from continuing with that involvement. Rob obeyed his doctors' orders to a T; he improved his diet, never drank, took vitamins, and ate specific foods intended for healing. To be frank, he had little enjoyment after 2016. His life significantly deteriorated by the middle of 2016 due to increasing complications with his balance, vision, and speech pronunciation. Our father's passing on November 21, 2016, only broke my brother down further. His retirement from the FDNY in October 2016 had already stripped him of his independence, but the death of our father fully sealed Rob's tragic demise.

9. My brother passed away nine months after our father did. Our only "family" now consists of myself and my daughter, Delaney. Rob spent the last five days of his earthly life in a bed at Sloan Kettering. He had been put on fentanyl, and we hadn't know he was done until the fentanyl was administered and the doctor advised that Rob would not be leaving. I spent those last five days in his hospital room with our mother and welcomed about one hundred firemen and a few family friends for final farewells. I did not bother taking a shower; thinking of oneself is inconceivable when your beloved sibling is swiftly dwindling right in front of you. This was the worst time of my life. In the four months before his passing, Rob and Blueberry lived with Delaney and I in our home in Connecticut so that we could assist him and do anything we could for him that he could no longer do for himself. Delaney was ten years old at the time and sadly watched her uncle's deterioration during those four months due to cancer. She sees several therapists now; it was concluded that the trauma she endured from the devastation of her uncle dying from cancer

has significantly impacted her. The issues she has been encountering since fifteen years of age are directly attributed to Rob's illness and death. Life after Rob's passing did not alleviate one bit. The emotional and physical loss of my brother has been difficult enough to feel, but I now must deal with the estate. Selling his house and moving his property caused extreme financial hardship for my mother and I. I had to finish up a remodeling of a home not under my name, which added on to the hardship. It was incredibly difficult the first two years after Rob passed away. Six years have passed and Rob's estate has not yet closed.

_____
RAYMOND ALEXANDER

Sworn before me this

6th day of July, 2023

_____
Notary public

**HEIDI ALEXANDER**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES DEC. 31, 2025