UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN) <br> ECF Case |
| This document relates to: <br> *Thomas Burnett, Sr., et al. v. The Islamic Republic of Iran, et al.* | 15-cv-9903 (GBD)(SN) <br> ECF Case |

**MEMORANDUM OF LAW FOR ENTRY OF PARTIAL FINAL DEFAULT JUDGMENTS ON BEHALF OF *BURNETT/IRAN* PERSONAL-INJURY PLAINTIFFS**

(*BURNETT / IRAN* PERSONAL INJURY 9)

For the reasons set forth below and in the accompanying declaration of John M. Eubanks ("Eubanks Declaration"), the Plaintiffs identified in Exhibit A to the Eubanks Declaration filed contemporaneously with this application, by and through their counsel, Motley Rice LLC, respectfully move this Court for an Order awarding them (1) compensatory damages for pain and suffering in amounts commensurate with the injuries these individuals sustained during the Terrorist Attacks on September 11, 2001; (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; (3) leave for the *Burnett/Iran* Personal-Injury Plaintiffs identified in Exhibit A to seek punitive damages, economic damages, or other damages at a later date; and (4) for any other *Burnett/Iran* Personal-Injury Plaintiffs not appearing on Exhibit A, to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Plaintiffs sued The Islamic Republic of Iran, the Islamic Revolutionary Guard Corps, and the Central Bank of the Islamic Republic of Iran (collectively, "the Iran Defendants") in connection with the 9/11 Attacks. On December 1, 2016, all Plaintiffs in the action *Thomas Burnett, Sr., et al. v. The Islamic Republic of Iran*, et al., Case No. 15-cv-9903 (GBD)(SN) ("*Burnett/Iran*"), moved

for judgment as to liability only. 15-cv-9903 ECF Nos. 65, 66, amended on December 6, 2016, 15-cv-9903 ECF Nos. 68, 69. On January 31, 2017, the Court granted Plaintiffs' application for judgment as to liability only. 15-cv-9903 ECF No. 85. The Plaintiffs that are party to this application, as identified in Exhibit A, are a subset of the Plaintiffs who have been granted judgment as to liability only, and rely on that judgment as to liability for their request for damages arising from the personal injuries they sustained in the Terrorist Attacks on September 11, 2001. The Plaintiffs identified in Exhibit A now request entry of partial final default judgment against the Iran Defendants as to their claims.

**I.     Procedural Background**

   **A.     Related Cases**

Relying on evidence and arguments[1] submitted by Plaintiffs in *In re Terrorist Attacks on September 11, 2001*, the consolidated multidistrict litigation arising out of the 9/11 Attacks, this Court on December 22, 2011, and again on August 31, 2015, granted Orders of Judgment on Liability in favor of the *Havlish, Ashton, O'Neill, Federal Insurance*, and *Hoglan* groups of plaintiffs against the Iran Defendants (*See* ECF Nos. 2516, 3014, 3016, 3020, 3020-23). After granting the *Havlish* Order of Default Judgment on Liability, this Court considered the issue of damages suffered by the *Havlish* Plaintiffs and their decedents. Upon the submissions of the *Havlish* Plaintiffs, on October 3, 2012, this Court found that "Plaintiffs may recover for [, inter alia,] solatium . . . in an action under Section 1605A. 28 U.S.C. § 1605A(c)(4). In such an action, . . . family members can recover solatium for their emotional injury; and all plaintiffs can recover

---

[1] In each of the Orders of Judgment regarding Plaintiffs' claims against Iran in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, the Court premised its determination "[u]pon consideration of the evidence submitted by the Plaintiffs in filings with this Court on May 19, 2011, July 13, 2011, and August 19, 2011, and the evidence presented at the December 15, 2011, hearing on liability, together with the entire record in this case." ECF Nos. 2516, 3014, 3016, 3020-22; *see also* ECF No. 3023 (substantially similar language).

punitive damages." ECF No. 2623 at 2-3, quoting *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010).

In that same decision in *Havlish,* this Court also found that Plaintiffs are entitled to punitive damages under the FSIA in an amount of 3.44 multiplied by their compensatory damages award. ECF No. 2623 at 5. The Court has also applied that 3.44 multiplier to judgments in the *Ashton* case. *See* ECF No. 3175, at 3 (Report and Recommendation to apply 3.44 punitive multiplier); ECF No. 3229 at 1 (Order adopting in its entirety Report and Recommendation to apply 3.44 punitive multiplier). The Court applied the 3.44 punitive multiplier to the compensatory awards previously awarded in *Burnett/Iran*. ECF No. 3666. However, in *Hoglan*, another case in this multidistrict litigation, Magistrate Judge Netburn recommended that the Plaintiffs' request for punitive damages be denied without prejudice. ECF Nos. 3358 at 11-16 and 3363 at 28. Judge Daniels adopted Judge Netburn's Reports and Recommendations in their entirety. ECF Nos. 3383 at 2 and 3384 at 6.

  **B.** ***Burnett, et al. v. Iran* Defendants**

The *Burnett/Iran* Plaintiffs filed suit on December 18, 2015, against the Iran Defendants. Service on the Central Bank was effectuated on March 18, 2016, and on Iran and the IRGC on September 14, 2016. 15-cv-9903, ECF No. 67 at ¶¶ 3-4. At Plaintiffs' request, the Clerk of the Court issued a Certificate of Default as to the Iran Defendants on December 5, 2016. 15-cv-9903, ECF No. 67. On December 1, 2016, Plaintiffs requested judgment as to liability against the Iran Defendants, (15-cv-9903 ECF Nos. 65, 66), whose application was amended on December 6, 2016 (15-cv-9903, ECF Nos. 68, 69), after the Clerk of the Court issued a Certificate of Default on December 5, 2016. ECF No. 67. The Court granted judgment as to liability against the Iran Defendants in favor of all plaintiffs on January 31, 2017. 15-cv-9903, ECF No. 85.

The *Burnett/Iran* Plaintiffs identified in Exhibit A now respectfully request that this Court grant them an Order awarding them (1) compensatory damages for pain and suffering in amounts commensurate with the injuries these individuals sustained during the Terrorist Attacks on September 11, 2001 and in accordance with prior precedent in the U.S. District Court for the District of Columbia in similar cases factoring in an upward departure on damages values based on the indelible impact of the Terrorist Attacks of September 11, 2001; (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; (3) leave for the *Burnett/Iran* Personal-Injury Plaintiffs identified in Exhibit A to seek punitive damages, economic damages, or other damages at a later date; and (4) for all other *Burnett/Iran* Personal-Injury Plaintiffs not appearing on Exhibit A, to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

**II.   Damages Under § 1605A**

Section 1605A of the Foreign Sovereign Immunities Act (FSIA) creates an exception to sovereign immunity allowing a foreign state to be held accountable for acts of terrorism or the provision of material support or resources for acts of terrorism where the acts or provision of support or resources were engaged in by an official, employee, or agent of the foreign state while acting within the scope of his or her office, employment, or agency. 28 U.S.C. § 1605A(a)(1). The statute specifies that damages are available "for personal injury or death," 28 U.S.C. § 1605A(a)(1) and (c)(4), and include "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c)(4).

A.      **Personal-Injury Damages**

The Plaintiffs identified in Exhibit A include individuals who were on site at the time of the terrorist attacks in New York, New York (at the World Trade Center complex or surrounding area); or who were among those who entered the premises in the vicinity of the World Trade Center and were injured on September 11, 2001. The injuries of individuals who were injured on September 11, 2001 range from smoke inhalation and broken bones to devastating burns and loss of limbs. One injury that accompanies the vast majority of these physical injuries is the onset of post-traumatic stress disorder for most of the individuals who were caught in the horror of the attacks on September 11, 2001. Under the FSIA, these injuries are all compensable, and given that these injuries occurred either as a direct result of the attacks, the ensuing chaos from the attacks in the immediate aftermath, or as a result of attempting to assist or render aid to the injured or endangered or to flee from the scene, the proximate causation of these injuries is not in question.

This Court has previously examined personal-injury damages in the context of the terrorist attacks on September 11, 2001. In the first Report and Recommendation issued by Magistrate Judge Netburn addressing personal-injury damages in this context (which was affirmed by Judge Daniels without objection), the Court found that an upward departure from prior D.C. Circuit precedent was appropriate where "personal injury plaintiffs cannot escape the memory of 9/11." *See* ECF No. 5879 at 5. This accorded with Magistrate Judge Maas' determination in 2012 that the "profound agony and grief" resulting from the attacks and the "frequent reminders of the events of that day" and "[c]onsidering the extraordinarily tragic circumstances surrounding the September 11th attacks, and their indelible impact on the lives of the victims' families, I find that it is appropriate to grant the upward departures from the [D.C. District Court] framework that the Individual Plaintiffs have collectively requested." *Havlish v. bin Laden*, 2012 U.S. Dist. LEXIS

110673, at *105 (S.D.N.Y. July 30, 2012) (adopted by Judge Daniels at *Havlish v. bin Laden*, 2012 U.S. Dist. LEXIS 143525, at *80-*82 (S.D.N.Y. Oct. 3, 2012)).

This Court then established "a baseline award of $7 million, an upward deviation of $10 million, and a downward deviation of $5 million for personal-injury damages for pain and suffering arising from injuries sustained on September 11, 2001. The Court, however, reserved its discretion to award further upward departures in exceptional cases." *Id.* at 6. The Court divided the categories of injuries into three classifications:

1. "Significant" injuries (presumptively $5 million for pain and suffering): "single broken bones; cuts/lacerations/bruises; mental health disorders; concussions; being covered in dust or debris; significant respiratory ailments including nasal irritations, chest pain, and asthmas from inhalation of smoke, soot and dust; cuts/bleeds; and significant orthopedic injuries such as strains, sprains, or fractures that cause continuing intermittent pain and may require surgery.  This category will also include short term or relatively minor non-debilitating physical injuries, or even the absence of serious physical injuries combined with severe emotional injuries." *Id.* at 6-7.

2. "Severe" injuries (presumptively $7 million for pain and suffering): "multiple broken bones; burns; significant injuries from falling, being buried, or being trampled; severe orthopedic trauma requiring significant or multiple surgeries and/or causing severe constant pain or debilitation; muscular trauma; mental health trauma and disorders; severe head injuries causing frequent headaches, migraines, or some lasting cognitive impairment; and severe pulmonary or neurological traumas." *Id.* at 7.

3. "Devastating" injuries (presumptively $10 million for pain and suffering): "loss of limbs or multiple digits; severe pulmonary traumas; strokes, paraplegia; traumatic brain injuries causing muscle weakness, atrophy, or severe cognitive impairment; significant disfigurement; severe burns covering significant body area; pulmonary traumatic exposures; and acute systemic trauma.  Injuries causing lasting physical effects severely limiting victims' mobility and activity will generally qualify for this category." *Id.* at 8.

The Court issued upward or downward departures based on the facts of each case presented. For example, in the case of Plaintiff Lauren Manning, this Court granted an upward

departure and found that Manning was entitled to a $25,000,000 judgment, noting that Manning's injuries were "beyond devastating." *See* ECF No. 5955 at 3-4.

### B.     Punitive Damages

Under the FSIA, Plaintiffs are also entitled to punitive damages. *See* 28 U.S.C. §1605A(c)(4). In the *Havlish* Report and Recommendation on Damages, the magistrate judge explained that a "3.44 ratio 'has been established as the standard ratio applicable to cases arising out of' terrorist attacks." (ECF No. ECF 2619, at 13, citing *Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.C. 2011)). This Court adopted that recommendation and awarded punitive damages on each compensatory damages category at a ratio of 3.44 (punitive) to 1 (compensatory) (ECF No. 2623). The Court has applied that ratio to awards for plaintiffs in other related cases. *See, e.g.*, ECF No. 3175, at 3 (Magistrate Judge Maas Report and Recommendation to apply 3.44 punitive multiplier); ECF No. 3229, at 1 (Judge Daniels adopting in its entirety Judge Maas' Report and Recommendation to apply 3.44 multiplier); ECF No. 3300, at 1 and Exhibit A (Judge Daniels applying 3.44 punitive multiplier to claims in *Ashton*).

However, in *Hoglan*, another case in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, Magistrate Judge Netburn recommended that the Plaintiffs' request for punitive damages be denied without prejudice. ECF No. 3363, at 28. Judge Daniels adopted Judge Netburn's Report in its entirety, denying without prejudice the Plaintiffs' request for punitive damages.  ECF No. 3384, at 6.

In light of the Court's decision in related litigation to defer determination of punitive damage issues until a later stage of the litigation, Plaintiffs herein request leave to address the issue of punitive damages at a later date. *See, e.g.*, ECF No. 3666 (Judge Daniels order in *Burnett/Iran*,

7

authorizing other plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

  **C.**  **Prejudgment Interest**

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism. *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011). This Court awarded the *Havlish* Plaintiffs prejudgment interest at a rate of 4.96% on their pain and suffering damages awards, to be calculated from September 11, 2001 until the date of judgment (ECF 2619 at 13-14). This Court, recognizing that prejudgment interest was appropriate in cases such as this case, adopted the magistrate judge's reasoning, finding that an award of prejudgment interest was appropriate and accepting the rate of 4.96%, as proposed by the *Havlish* Plaintiffs' expert.

After the *Havlish* award, Plaintiffs in *Ashton* and *Bauer* proposed, and the Court agreed, that prejudgment simple interest at the New York State statutory rate of nine percent per annum was appropriate in cases where the injuries arose in New York and the prejudgment interest used in *Havlish*, 4.96 percent per annum, compounded annually, should be reserved for only those cases where the injuries arose in other states. *See* ECF Nos. 3229 at 2; 3300 at 1; 3341 at 1.

The Second Circuit has held that New York State's statutory prejudgment interest rate should apply to the damages awarded to World Trade Center complex leaseholders in their litigation against American Airlines and United Airlines brought under the federal Air Transportation Safety and System Stabilization Act ("ATSSSA"). *World Trade Farmers Market, Inc. v. American Airlines, Inc.* (*In Re: September 11th Litigation*), 2015 U.S. App. LEXIS 16619, *66 (2d Cir. Sept. 17, 2015). In that case, the Second Circuit concluded that a federal cause of

action under the ATSSSA must look to state rules concerning prejudgment interest. *Id*. Accordingly, the Second Circuit held that New York's statutory prejudgment interest rate of nine percent as opposed to a lower rate crafted under federal law, had to be applied to the Plaintiffs' 9/11 claims. *Id*.

However, more recently, in *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent interest rate for prejudgment interest should be applied to all of the solatium claims. ECF No. 3363 at 28-29. Judge Daniels adopted Judge Netburn's *Hoglan* Report in its entirety and applied the interest rate of 4.96 percent per annum, compounded annually to all of the claims. ECF No. 3384 at 6.

In light of the Court's decision in the *Hoglan* matter, applying the 4.96 percent rate to prejudgment interest, the *Burnett/Iran* Plaintiffs identified in Exhibit A respectfully request that the clerk be directed to award prejudgment interest at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001 until the date of the judgment.

### III.    Individualized Case Assessments

Plaintiffs' motion addresses 1 personal injury claim for a Plaintiff that was injured at or within close proximity to the World Trade Center. What follows is a summary of the attached proof.

> **A.    Jeremy Davids**
> **Injury Category[2]: Pulmonary Trauma Injuries**
> **Severity:  Significant**

On September 11, 2001, Jeremy Davids worked as an advertising executive for Digitas, Inc., a New York-based marketing and advertising company. *See* Eubanks Dec., Ex. B, Declaration of

---

[2] The categories cited are those categories set forth in the January 10, 2020 letter submitted by the Plaintiffs' Executive Committee for Personal Injury and Death Claims. *See* ECF No. 5484 at 13-14.  Those categories include the following:
1)         IMPACT INJURY

9

Jeremy Davids at ¶ 3. On the morning of September 11th, he had been scheduled to meet with representatives of American Express at Three World Financial Center at 9:00 a.m. Mr. Davids had traveled on the New York subway system that morning en route to his appointment. Moments before he exited the subway at the Fulton Street Station at Dey Street, the first passenger jet, American Airlines Flight 11, had struck the upper section of the North Tower. *Id*. at ¶ 4. As he walked up the steps from the subway to the street level, a man running down the stairs collided with Mr. Davids and frantically said "something blew up". As he then emerged to street level, Mr. Davids saw smoke and fire coming from the upper sections of the World Trade Center's North Tower, as well as paper fluttering in the air and debris falling from the building. He continued walking towards the plaza of the World Trade Center and stood at Fey and Church Street in front of the Century 21 department store across the street from the WTC Towers. *Id*. at ¶ 5.

Mr. Davids saw people who jumped to their deaths from the North Tower, and he walked back across the street to the front of the Century 21 department store and continued to watch the events unfold in and around the North Tower. He then heard the sound of another plane approaching and he witnessed the impact of the second passenger jet with the South Tower. As large debris began

---

Persons physically injured by the impact of the aircraft hitting the WTC I, WTC II, Pentagon, and WTC Marriot (jet fuel burns or blast injuries, jet fuel exposure and damage, broken backs/necks/limbs, paraplegics, orthopedic trauma);
2) ESCAPE INJURY
Persons physically injured during the escape from the buildings (those injured descending the long dark staircases, those injured in elevators (i.e. during free falls), those who were trampled while escaping, those who fell and were injured while the Pentagon or WTC were under attack, resulting in broken bones, crushed limbs, trauma lacerations, bruising, etc.);
3) BUILDING COLLAPSE INJURY
Persons physically injured in either the WTC I or II buildings or Marriot WTC collapse at and around Ground Zero (explosion-like injuries, being buried in rubble, eye or ear damage, head injuries, crushed limbs, multi-system acute traumas, shrapnel like injuries from glass or metal, etc.);
4) FALLING DEBRIS INJURY
Persons injured at Ground Zero or Pentagon by falling debris (TBIs, concussions, crushed limbs, variety of physical injuries and traumas);
5) PULMONARY TRAUMA INJURY
Persons who breathed in large quantities of smoke, debris, chemicals, WTC Dust, jet fuel or related toxins at Ground Zero, Pentagon, or Shanksville, PA and whose lungs were burned, damaged and injured on 9/11; and
6) LATENT INJURIES (CANCERS)
These cases are not contemplated at this time.

to fall around him, Mr. Davids held up his briefcase as a shield for protection and he moved under Century 21's overhanging roof area for protection from the falling debris. *Id*. at ¶¶ 6-7.

Mr. Davids walked towards the middle/end of the block of Dey Street, and then he decided to walk North a bit further from the buildings to get away from the area. Just as he decided to walk in a northern direction, a mass of people started running towards him and away from the WTC buildings area. He began to run away as well. Mr. Davids turned around to see the massive debris cloud barreling towards him, and he became engulfed by a massive cloud of building dust and debris from the collapsed South Tower. He struggled to breath and inhaled large quantities of these substances into his lungs and airways. *Id*. at ¶¶ 8-9. Determined to escape from the area, Mr. Davids found the entrance to a bar called the Blarney Stone and entered the building. Once inside, he was coughing up soot from his lungs and was handed a bottle of water by a patron. It was from this bar that Mr. Davids watched the outside darken again as the North Tower collapsed. *Id*. at ¶ 10.

When it appeared that the dust cloud from the second collapse had settled, Mr. Davids exited the bar and walked north while wading through piles of debris from the collapsed WTC Towers. He caught a blue line train to Penn Station at 34th Street, and I then walked to his Digitas office located at 26th Street and Park Avenue. Mr. Davids later left his office and caught a cab to his girlfriend's apartment at 78th Street and Second Avenue. He had great difficulty breathing the next morning and an intense pain in one of his ears, so he sought initial treatment at the Emergency Room of Lenox Hill Hospital for his injuries. As a result of these terrorist attacks, Mr. Davids suffered an upper respiratory disease, chronic cough syndrome, chronic laryngitis, chronic rhinitis, an ear infection, sinusitis, gastroesophageal reflux disease (GERD), obstructive sleep apnea, and post-traumatic stress disorder (PTSD). *Id*. at ¶¶ 11-14.

IV.     **Conclusion**

For all of the reasons set forth herein, as well as those set forth in the submissions of the other Plaintiffs in this case and Plaintiffs in the other 9/11 related cases in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, the *Burnett/Iran* Plaintiffs identified in Exhibit A respectfully request that this Court award them (1) compensatory damages for pain and suffering in amounts commensurate with the injuries these individuals sustained during the Terrorist Attacks on September 11, 2001 and in accordance with prior precedent in the U.S. District Court for the District of Columbia in similar cases factoring in an upward departure on damages values based on the indelible impact of the Terrorist Attacks of September 11, 2001; (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; (3) leave for the *Burnett/Iran* Personal-Injury Plaintiffs identified in Exhibit A to seek punitive damages, economic damages, or other damages at a later date; and (4) for all other *Burnett/Iran* Personal-Injury Plaintiffs not appearing on Exhibit A, to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Dated:  June 7, 2024

    Respectfully submitted,

    /s/ John M. Eubanks
    John M. Eubanks, Esq.
    Jodi Westbrook Flowers, Esq.
    Robert T. Haefele, Esq.
    John C. Duane, Esq.
    MOTLEY RICE LLC
    28 Bridgeside Blvd.
    Mount Pleasant, SC 29464
    Tel: 843-216-9000
    Fax: 843-216-9450
    Email: jeubanks@motleyrice.com
    Email: jflowers@motleyrice.com

Email: rhaefele@motleyrice.com
Email: jeubanks@motleyrice.com

Attorneys for the *Burnett/Iran* Plaintiffs