**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN)<br><br>ECF Case |
| This document relates to:<br><br>*Ashton et al. v. al Qaeda Islamic Army*, *et al.*, | 02-cv-6977 (GBD)(SN)<br><br>ECF Case |

**The *Ashton 27* Plaintiff's Motion for Final Judgment**

For the reasons set forth below, and the statements contained in the declaration of James P. Kreindler, Esq. ("Kreindler Declaration") and exhibits thereto, the *Ashton* plaintiff set forth in Exhibit B to the Kreindler Declaration ("*Ashton 27*"),[1] by and through counsel, Kreindler & Kreindler LLP, respectfully move this Court for an Order:

1)  Awarding the plaintiff set forth on Exhibit B to the Kreindler Declaration ("*Ashton 27* Plaintiff") damages based on the description provided in the Kreindler Declaration, its supporting exhibits and this Court's previously-established framework for traumatic injuries sustained on September 11, 2001 in the terrorist attacks;

2)  Awarding the *Ashton 27* Plaintiff pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

3)  Granting the *Ashton 27* Plaintiff permission to seek punitive damages and any other appropriate damages at a later date;

4)  Finding that service of process was properly effected upon the Islamic Republic of Iran ("Iran") in accordance with 28 U.S.C. § 1608(a) for sovereign defendants; and,

---

[1] Prior motions were delineated by roman numerals, but that led to certain numbers being inadvertently repeated.  To try to avoid this error, we have now shifted to the use of Arabic numbers to identify each group of movants.

5)  Granting permission for all other plaintiffs in this action not appearing on Exhibit B to the Kreindler Declaration to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

This motion is made on behalf of the claimant listed in Exhibit B attached to the Kreindler Declaration (*Ashton 27* Plaintiff), in light of this Court's previous order granting permission to allow remaining plaintiffs in the case to move for this relief. *See* ECF No. 3300.[2]

As the award set forth in the proposed order represents the only direct recovery against Iran on behalf of the *Ashton 27* Plaintiff listed in Exhibit B to the Kreindler Declaration, the proposed order will constitute a final award and judgment against Iran for that claimant.

## I.      Procedural Background

On September 4, 2002, the *Ashton* Plaintiffs filed their first complaint against the sponsors of the September 11, 2001 terrorist attacks, which included allegations against Iran. *See* 02-cv-6977 (S.D.N.Y.) ECF No. 1.  Plaintiffs, both United States nationals and non-nationals, asserted federal jurisdiction pursuant to, among other things, the Alien Tort Statute (28 U.S.C. § 1350) ("ATS"), the Foreign Sovereign Immunities Act (28 U.S.C. § 1605(a)) ("FSIA") and the Torture Victim Protection Act (28 U.S.C. § 1350 note) ("TVPA"). *Id.* at 28, 39 – 40, 43, 48.  Iran was listed as a named defendant in the *Ashton* Plaintiffs' Consolidated Amended Complaint, filed on March 6, 2003, with the same jurisdictional assertions. *See* 02-cv-6977 (S.D.N.Y.) ECF No. 11-2 at 17, ECF No. 11-5 at 45 - 49.  This Consolidated Amended Complaint (the "CAC") was served in compliance with FSIA requirements through diplomatic channels, but Iran has never answered. *See* 02-cv-6977 (S.D.N.Y.), ECF No. 424 at 2; *see also* 02-cv-6977 (S.D.N.Y.)

---

[2] References to the 03-md-1570 docket entries will be noted only by the ECF document number. Any reference to a prior Order or filing on a different docket will include that docket number as well as the ECF document number.

ECF No. 358.  The *Ashton* Plaintiffs moved for a Certificate of Default, which the Clerk of the Court issued. *See* 02-cv-6977 (S.D.N.Y.), ECF No. 651.

At the time that the CAC was first filed against Iran, the FSIA functioned as a pass-through statute, denying immunity for claims arising from certain acts of terrorism or material support for terrorism if the United States had designated the foreign sovereign a state sponsor of terrorism, thus allowing a plaintiff to pursue a claim in the federal courts in suits against a nation-state that had been officially designated a state-sponsor of terrorism, such as Iran. *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 221(a), 110 Stat. 1214, 1241.  The substantive causes of action detailed in the CAC were, among other things, for common-law wrongful death, survival damages, personal injuries; violation of the Anti-Terrorism Act (18 U.S.C. § 2333) (causing the wrongful death of those killed in the September 11 Terrorist Attacks and the personal injuries sustained during the Terrorist Attacks); violation of the TVPA; and violation of the FSIA. *See* 02-cv-6977 (S.D.N.Y.) ECF No. 11-5 at 245 – 50.

Based on evidence and arguments submitted by various plaintiffs in this consolidated multi-district litigation arising out of the September 11, 2001 terror attacks, the *Ashton* Plaintiffs moved for a judgment of liability against Iran for claims arising out of the deaths of the plaintiffs' decedents. ECF No. 3008.  In their motion for a liability default judgment, the *Ashton* Plaintiffs relied on the Certificate of Default entered in the *Ashton* case, which was premised on the CAC that Iran had never answered. ECF No. 2970 at 2.  They then moved for a default judgment of liability against Iran. ECF No. 2970 at 2, 10 – 18.  This Court granted that motion for a default judgment of liability. ECF No. 3014.[3]

---

[3] The *Ashton* Plaintiffs at the same time also moved for permission to file an Amended Consolidated Complaint against Iran, asserting the same jurisdictional allegations as in the prior complaints, adding a claim based on the new provision of the FSIA enacted subsequent to the filing of the original suits against Iran and adopting and incorporating by reference the prior *Ashton* allegations against Iran. ECF Nos. 2968, 2968-1 at 1 - 2 (adding allegations under 28

Thereafter, the *Ashton* Plaintiffs moved for damages in various categories, including compensatory damages for the conscious pain and suffering that victims murdered on September 11, 2001 suffered before death, economic damages suffered as a result of the decedents' wrongful deaths and solatium damages suffered by immediate family members and those non-immediate family members who were the "functional equivalent" of immediate family members eligible to recover under the terrorism exception to the FSIA.  This Court granted those motions. *See* ECF 3229 (adopting December 28, 2015 Report and Recommendation awarding damages for conscious pain and suffering); ECF 3356 (awarding damages for economic loss); ECF 3295 (Motion for Final Judgment for *Ashton I* claimants including claims for solatium damages); ECF 4058 (Motion for Final Judgment for *Ashton V* claimants, the "functional equivalent" of immediate family members, solely for solatium damages).  This Court also established a framework for determining compensatory damages to be awarded to those who sustained injuries during the September 11 Terrorist Attacks. ECF 5946 (adopting ECF 5879).  The framework set a baseline award of $7 million for those injuries sustained in the September 11 Terrorist Attacks determined to be "severe," with an upward deviation of $10 million for injuries determined to be "devastating" and a downward deviation of $5 million for injuries determined to be "significant." ECF 5953 at 3; ECF 5879 at 6-7.  Thereafter, certain *Ashton* Plaintiffs who suffered injuries on September 11 in the Terrorist Attacks moved for personal injury damages, which this Court granted in part and denied in part according to the framework noted above. ECF 5792.

For the reasons below as well as those set forth in the prior motions for summary judgment on liability and prior motions for judgment for personal injury damages, the *Ashton 27*

---

U.S.C. § 1605A).  The Court issued an Opinion and Order allowing the *Ashton* Plaintiffs to amend their pleadings as to Iran without requiring service of the amended pleadings. ECF No. 3227.  Plaintiffs thereafter filed the Amended Consolidated Complaint on the docket. ECF. No. 3237.

Plaintiff listed in Exhibit B to the proposed Order now moves this Court to grant the proposed

Order awarding personal injury damages according to the previously-established framework; to

direct that pre-judgment interest be assessed at 4.96 percent per annum; and to find that service

of process was properly effected on Iran pursuant to the FSIA (28 U.S.C. § 1608(a)), as this

Court has previously held in prior similar applications.  The *Ashton* Plaintiffs also ask for

permission to continue to submit applications in subsequent stages on behalf of those claimants

not included in the exhibits attached to the proposed Order, should any other applications be

warranted.

## II.       Damages

Section 1605A of the Foreign Sovereign Immunities Act ("FSIA"), which applies to the

suit against Iran, creates an exception to sovereign immunity allowing a foreign state to be held

accountable for acts of terrorism or the provision of material support or resources for acts of

terrorism where the acts or provision of support or resources were engaged in by an official,

employee, or agent of the foreign state while acting within the scope of his or her office,

employment, or agency.  28 U.S.C. § 1605A(a)(1).  The statute specifies that damages are

available "for personal injury or death," 28 U.S.C. § 1605A(a)(1) and (c)(4), and include

"economic damages, solatium, pain and suffering, and punitive damages."  28 U.S.C. §

1605A(c)(4).  While a claim under Section 1605A is available only to a "claimant or … victim

[who] was … a national of the United States; a member of the armed forces; or otherwise an

employee of the Government of the United States, or of an individual performing a contract

awarded by the United States Government, acting within the scope of the employee's

employment," under the Alien Tort Statute, district courts have jurisdiction over claims brought

by non-United States nationals who do not fit the Section 1605A categories. *See* 28 U.S.C. §

1350.

A.     **Compensatory Damages**

This Court previously established a framework for personal injury claims as described above, with a "baseline" compensatory damages award of $7 million for injuries that are considered "severe." ECF 5879 at 6; ECF 5953 at 3.  This baseline figure for personal-injury damages may be adjusted based on the nature of the injury, how debilitating it was, the treatment it required, and the long-term impact on the victim's life. ECF 5879 at 6-9.  According to the framework, a downward deviation may be warranted if the injuries fall into the "significant" category or an upward deviation may be warranted if the injuries fall into the "devastating" category. ECF. 5953 at 3.  The corresponding compensatory damages awards for such "significant" and "devastating" injuries are $5 million and $10 million, respectively. *Id.*

B.     **Punitive Damages**

Plaintiffs are also entitled to punitive damages. *See* 28 U.S.C. § 1605A(c)(4).  Previously in this case, the magistrate judge explained that a "3.44 ratio 'has been established as the standard ratio applicable to cases arising out of' terrorist attacks."  ECF No. 2618 at 13 (quoting *Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011)).  This Court adopted that recommendation and awarded punitive damages on each compensatory damages category at a ratio of 3.44 (punitive) to 1 (compensatory). ECF No. 2623 at 2.  The Court has applied that ratio to awards for plaintiffs in other related cases. *See, e.g.*, ECF No. 3175 at 3 (Magistrate Judge Maas Report and Recommendation to apply a 3.44 punitive multiplier); ECF No. 3229 at 1 (Judge Daniels adopting in its entirety Judge Maas's Report and Recommendation to apply a 3.44 multiplier); ECF No. 3300 at 1 and Exhibit A (Judge Daniels applying 3.44 punitive multiplier to claims in *Ashton*).

However, in another case in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, a different magistrate judge recommended that the plaintiffs' request for

punitive damages be denied without prejudice. ECF No. 3363 at 28.  Judge Daniels adopted that recommendation, denying without prejudice the plaintiffs' request for punitive damages. ECF No. 3384 at 6.

In light of the Court's decision in related litigation to defer determination of punitive damage issues until a later stage of the litigation, the *Ashton* Plaintiffs request permission to address the issue of punitive damages at a later date.  *See, e.g.*, ECF No. 3666 (Judge Daniels' order authorizing plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

### C.      Prejudgment Interest

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism. *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011).  In light of the Court's prior orders granting motions for damages for the deaths and injuries suffered on September 11, 2001 in the Terrorist Attacks which applied the 4.96 percent rate to prejudgment interest, the *Ashton 27* Plaintiff respectfully requests that the clerk be directed to award prejudgment interest at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001 until the date of the judgment.

### D.      Individualized Case Assessment: Andrzej Cieslik[4]
    Injury Category: Building Collapse / Escape Injuries
    Severity: Severe

Andrzej Cieslik, born in Krakow, Poland but living in the United States since 1982, was forty-eight years old on September 11, 2001 and was working at 2 World Trade Center in the

---

[4] This Court previously denied the motion for Mr. Cieslik's compensatory damages because at the time it was filed Mr. Cieslik was deceased and no representative of the estate had yet been formally appointed. ECF 5953 at 3.  As set forth in the Kreindler Declaration and the accompanying exhibits, Zofia Cieslik, the surviving spouse of Andrzej Cieslik, has now been formally appointed to represent his estate and has moved this Court to substitute her as the plaintiff as the formally-appointed administrator of her late husband's estate. ECF 9868.

lobby of the second floor on a molding machine for a company based out of Tennessee. Kreindler Decl., Exhibit C (Declaration of Zofia Cieslik) ("Cieslik Decl.") at ¶ 5. Andrzej had trained as an electrician in Poland, was a carpenter by trade in New York and was a long-time member of the Carpenter & Joiners Union Local 608. *Id.* He became a naturalized United States citizen after September 11, 2001, but before he died in 2006.[5] *Id.* at ¶ 4.

When United Airlines Flight 175 hit 2 World Trade Center, the force from the crash and subsequent explosion rushed down the elevator shafts, blew through the ground level elevator doors and sent a near-explosive column of hot air into the lobby. *Id.* at ¶ 6. The pressure from this event knocked Andrzej off his feet and slammed him against a marble pillar. *Id.*

Andrzej hit the pillar hard with his right side upper back, shoulder and neck. *Id.* at ¶ 7. The sounds and force of the explosion were terrifying and Andrzej feared for his life. *Id.* After the impact, Andrzej shakily got to his feet and managed to escape from the building. *Id.* He saw an injured co-worker on the ground and helped him out of the building, as well. *Id.* When the two were outside, a police officer directed them to go to a fire station on Liberty Street for first aid. At the fire station, Andrzej was examined and given pain medication. *Id.*

The first building fell when Andrzej was still at the fire station. *Id.* at ¶ 8. The sound of the building collapse was deafening and the sight terrifying. *Id.* Andrzej feared for his life again as a huge white cloud of dust and debris rapidly started to approach near him and covered

---

[5] The Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A ("FSIA"), provides that a "court shall hear a claim" arising out of an act of terrorism for which a designated state sponsor of terrorism has been held responsible if "the claimant or the victim was, at the time the [terrorist] act" that caused the injuries "occurred" was a United States national (among other categories.) While the initiating *Ashton* suit against Iran claimed jurisdiction under the FSIA, among other statutes, subsequently, the Justice Against Sponsors of Terrorism Act, 28 U.S.C. § 1605B ("JASTA"), provided an additional jurisdictional basis, and JASTA has been included in all short form complaints against Iran since this Court adopted that process. Under JASTA, "a national of the United States may being a claim against a foreign state" when a "national of the United States … by reason of an act of international terrorism, or his or her estate, survivors, or heirs" has been "injured in his or her person[.]" 28 U.S.C. § 1605B(c) and 18 U.S.C. § 2333(a). Though Andrzej Cieslik was not a national of the United States on September 11, 2001, he was one at the time that he brought this claim.

everything in sight. *Id.* Everyone in the fire station, including Andrzej, began to run in panic. *Id.* When the cloud began to overtake him, Andrzej could not see ahead of him and did not know what to do or where to go. *Id.* He was having trouble breathing and could hear masses of people running through the streets. *Id.* He was terrified he would be trampled in the rush. *Id.* He waited near a mailbox on Fulton Street, and was cowering underneath it when the second building fell. *Id.* After a while, an eerie darkness descended and Andrzej decided to try to escape the area. *Id.* He was disoriented, dizzy and weak and had trouble breathing. *Id.* He did not get far before he lost consciousness and fell to the ground. *Id.* A nearby ambulance took him to Beth Israel Hospital. *Id.*

After 6 to 7 hours at the hospital, where Andrzej's eyes were treated, he was given a general examination received back and neck x-rays and was given pain medication, and he then left. *Id.* at ¶ 9. The x-rays from Andrzej's emergency room visit revealed no broken bones or dislocations at the time. *Id.* The treating physician did, however, detect tissue damage and recommended that Andrzej get an MRI. *Id.* This was done on January 3, 2002. *Id.* at ¶ 9; *see also* Kreindler Decl., Exhibit D (Andrzej Cieslik Medical Records) ("Medical Records") at 6.

Andrzej continued to experience severe back pain and met with two different neurosurgeons in February 2002. Exh. C, Cieslik Decl. at ¶ 9; Exh. D, Medical Records at 2-4. Both agreed that Andrzej had a herniated cervical spinal disc at C6-C7, and that his pain was caused by the impact injuries he sustained on September 11, 2001 at the World Trade Center. *Id.* Both also agreed that he may ultimately require surgery, but wanted to try non-invasive treatment first. Exh. C, Cieslik Decl. at ¶ 9. Andrzej received physical therapy to treat the injuries he sustained on September 11, 2001 and continued with the exercise throughout 2002, but his pain was unabated. Exh. D, Medical Records at 8-10.

Andrzej continued to receive medical attention and after an October 2002 follow up examination one of his doctor's concluded that the physical therapy had been of no assistance and stated that surgery was the next step. Exh. C, Cieslik Decl. at ¶ 10, Exh. D, Medical Records at 9. The doctor also noted that Andrzej had increased pain radiating down his right arm with numbness and tingling in his first, second and third fingers, all attributable to the injuries he sustained in the September 11 Terrorist Attacks. *Id.* According to the doctor, the pain that Andrzej was experiencing indicated more advanced stages of cervical radiculopathy. Exh. C, Cieslik Decl. at ¶ 10, Exh. D, Medical Records at 10. Cervical radiculopathy, also referred to as a "pinched nerve" can cause intense pain and disability. *See* Magnus W, Viswanath O, Viswanathan VK, et al. Cervical Radiculopathy[Updated 2024 Jan 31]., available at https://www.ncbi.nlm.nih.gov/books/NBK441828/ , last accessed June 6, 2024. The pain can be acute and unpredictable and treatment options vary from physical therapy to surgery. *Id.* For Andrzej, the pain radiating down his right arm was particularly problematic as he was a right-handed carpenter. Exh. C, Cieslik Decl. at ¶ 10.

In addition to the unrelenting radiating pain down his right arm, Andrzej also experienced acute pain in his right shoulder. Exh. C, Cieslik Decl. at ¶ 12; Exh. D, Medical Records at 6. A December 2002 MRI of that area that showed a full thickness tear in one of his tendons. Exh. C, Cieslik Decl. at ¶ 12; Exh. D, Medical Records at 11. This too was attributed to his accident. *Id.* Andrzej underwent corrective surgery for the tear in January 2003. Exh. C, Cieslik Decl. at ¶ 12; Exh. D, Medical Records at 14-18. However, during a follow up visit in July 2003, his surgeon noted that a partial tear still existed. *Id* at 29.

In light of the ongoing degenerative symptoms in Andrzej's dominant hand and right shoulder and how that interfered with his ability to work, Andrzej filed an application with the New York State Workers Compensation Board. Exh. C, Cieslik Decl. at ¶ 11; Exh. D, Medical

Records at 30-32.  The Workers Compensation Board sent Andrzej for independent medical examinations, which all confirmed what his other treating physicians had concluded: that Andrzej suffered from herniated and bulging discs and cervical radiculopathy as a result of his traumatic injuries.  Exh. C, Cieslik Decl. at ¶ 12; Exh. D, Medical Records at 5-7.  Accordingly, the Workers Compensation Board found on repeated occasions that Andrzej was partially disabled as a result of the injuries he sustained on September 11, 2001 in the Terrorist Attacks. Exh. D, Medical Records at 30-32.

For over five years, from September 2001 until his death in October 2006, Andrzej lived with daily severe and debilitating orthopedic pain that was essentially unabated despite his sincere efforts at physical therapy and the hard work of the neurosurgeons to alleviate his physical suffering.

In addition to the physical pain that Andrzej lived with on a daily basis for five year, he also suffered severe emotional and psychological distress.  As his widow explains, she witnessed first-hand the nightmares, anxiety, anger and sleep disorders that Andrzej struggled with in the aftermath of his near-death experience on September 11, 2001.  Exh. C, Cieslik Decl. at ¶ 13. While luckier, of course, than many who were in the World Trade Center on September 11, 2001, Andrzej nevertheless experienced a life changed for the worse and shortened as a result of the injuries he suffered that day.

Under the rubric this Court has previously established, and in light of the five-years of unending physical pain and haunting emotional and psychological trauma, the injuries that Andrzej Cieslik suffered fit within the baseline "severe" category.

### III.    Conclusion

For all of the reasons herein, as well as those set forth in the submissions of the other plaintiffs in this case and plaintiffs in the other 9/11 related cases in the *In re Terrorist Attacks on*

*September 11, 2001* multidistrict litigation, the *Ashton 27* Plaintiff respectfully requests that this Court award (1) compensatory damages for pain and suffering in the amount set forth in Exhibit B; (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; (3) leave to seek punitive damages, economic damages, or other damages at a later date; and (4) for all other *Ashton* Plaintiffs to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Dated: June 7, 2024                                      Respectfully submitted,

KREINDLER & KREINDLER LLP

BY:    /s/ James P. Kreindler
James P. Kreindler, Esq.
750 Third Avenue, 32nd Floor
New York, New York 10017
Tel: (212) 687-8181
Attorneys for the *Ashton/Iran* Plaintiffs