**MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES**
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013) <br> Jodi Westbrook Flowers, *Co-Chair* <br> Donald A. Migliori, *Co-Chair* <br> Robert T. Haefele, *Liaison Counsel* <br> MOTLEY RICE LLC | Stephen A. Cozen, *Co-Chair* <br> Sean Carter, *Co-Chair* <br> J. Scott Tarbutton, *Liaison Counsel* <br> COZEN O'CONNOR |

**VIA ECF**

June 13, 2024

The Honorable George B. Daniels, U.S.D.J.  
United States District Court for the S.D.N.Y.  
Daniel P. Moynihan U.S. Courthouse  
500 Pearl Street  
New York, NY 10007

The Honorable Sarah Netburn, U.S.M.J.  
United States District Court for the S.D.N.Y.  
Thurgood Marshall U.S. Courthouse  
40 Foley Square, Room 430  
New York, NY 10007

Re:   *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Daniels and Judge Netburn:

The Plaintiffs' Executive Committees ("PECs") and counsel for the *Ashton* Plaintiffs (collectively, "Plaintiffs") write in response to Saudi Arabia's June 12, 2024 letter, ECF No. 9895, and respectfully request an adjournment of the July 10, 2024 date for oral argument, given the scope of the relevant record that remains under seal.

To proceed with oral argument on July 10, 2024, when the bulk of the relevant judicial documents remain under seal, would present significant Constitutional right of access problems, as well as impediments to basic fairness and due process. Judge Netburn's Order of March 13, 2023 (ECF No. 8923), which Saudi Arabia conspicuously fails to mention, expressly raised these Constitutional requirements and the parties' obligations to comply with them. ECF No. 8923 at 3 ("[T]he parties are reminded that the public is presumptively entitled to documents submitted in connection with dispositive motions;" and "the parties must make a compelling showing to justify redactions with respect to the upcoming motions."). Plaintiffs remain committed to addressing these issues as efficiently as possible, together with the other parties, but it is not feasible to expect that all will be resolved in sufficient time to proceed with argument on July 10, 2024. Several well-established facts and binding principles confirm this conclusion, as set forth below.

1. <u>Saudi Arabia's proposal to proceed with oral argument on July 10 would contravene the Second Circuit's decision in *Lugosch* and Judge Netburn's March 13, 2023 Order</u>. Saudi Arabia acknowledges that the vast majority of the judicial documents submitted in connection with its renewed motion to dismiss remain under seal, and that there is no clear timeline for completing the review of those materials, let alone resolving disputes over sealing claims. Saudi Arabia's proposal that the Court should proceed with oral argument on July 10 irrespective of the status of sealing issues runs directly afoul of the Second Circuit's holding and directives in *Lugosch*, and is clearly aimed at preventing Plaintiffs from effectively presenting and arguing the evidence before the Court.

The Honorable George B. Daniels
June 13, 2024
Page 2

---

The Second Circuit's decision in *Lugosch* directs that "documents submitted . . . for [] consideration in a summary judgment motion are — as a matter of law — judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." 435 F.3d at 121. The Constitutional right of access to judicial documents is "immediate," *id.* at 126, and requires contemporaneous resolution of sealing requests, because "each passing day may present a separate and cognizable infringement on the First Amendment." *Id.* The "strong presumption of access" can be overcome only by "the most compelling reasons," established through "specific, on-the-record findings that higher values necessitate a narrowly tailored sealing." *Id.* at 120. These Constitutional standards require that the present sealing issues (relating to documents that have been before the Court for months already) be fully resolved well in advance of the oral argument, so as to provide the public and media with a meaningful opportunity to participate.[1] Not only would delayed or after-the-fact access be wholly deficient to protect access rights, *id.* at 127 (citing a string of cases underscoring the need for immediate and contemporaneous access), but a decision not to resolve the sealing issue, "though a passive act, w[ould be] an active decision requiring justification under the First Amendment." *Lugosch*, 435 F.3d at 126.

Saudi Arabia's proposal contravenes *Lugosch's* requirements in several fundamental ways. On its face, Saudi Arabia's demand to proceed with the *status quo* is impermissible under *Lugosch*, as it necessarily contemplates that oral argument would be held before the sealing issues are resolved. Judicial documents would remain under seal at the hearing simply because the FBI hadn't reviewed them yet, and/or because Saudi Arabia or the FBI had made unilateral and untested sealing "designations" as to particular judicial documents. Neither of those purported justifications for keeping records sealed at the time of argument would be supported by a showing of "compelling reasons," nor by the "specific on-the-record findings of higher values" mandated by *Lugosch*.[2]

Saudi Arabia's effort to distinguish *Lugosch* on the grounds that the media has not yet moved to intervene in the 9/11 litigation only serves to underscore its disregard for the Constitutional principles at issue. Judge Netburn has already directed that *Lugsoch* announces Constitutional rights of access and sealing standards applicable to all cases, including this one; those rights are not limited to cases in which a member of the public or a media organization hires counsel to intervene to demand compliance with the Constitution. And while *Lugosch's* requirements do not depend on media or public participation in a case, there can be no debate that the present case — indeed, the very evidence

---

[1] *Lugosch* at 121, quoting *Joy v. North*, 692 F.2d 880 (2d Cir.1982) ("The justification … is that [a dispositive motion] is "an adjudication, and '[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny.'"); *id.* at 119, quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir.1995) ("*Amodeo II*") (The presumption of access is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice. [] Without monitoring, … the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings. Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions.). "To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression." *Id* at 127, quoting *Grove Fresh Distrib., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir.1994).

[2] The suggestion that the parties should focus on having the FBI review some subset of documents that the parties plan to use at argument does not solve this problem and is unworkable. *Lugosch* expressly rejected any approach that limits the unsealing review to documents that are most relevant to the disposition of the motion. Further, such a process would necessarily require Plaintiffs to disclose work product, and to make decisions immediately about the evidence they will use at argument, before they have had an opportunity to confer and coordinate (as required) through the committee and organization structure.

The Honorable George B. Daniels
June 13, 2024
Page 3

_____

that is the subject of the sealing orders — involves matters of intensive interest and importance to the 9/11 Families, the wider American public, media, and policymakers.[3]

      2.    <u>Saudi Arabia seeks to proceed in conflict with *Lugosch* in order to obtain an unfair advantage and undermine public participation in this uniquely important litigation</u>.  It is apparent that Saudi Arabia is advocating an approach that would bring this Court into conflict with *Lugosch's* long-established common law and Constitutional requirements with the aim of placing Plaintiffs at an unfair disadvantage at argument, and obstructing the very public participation that *Lugosch* guarantees.  Saudi Arabia's renewed motion to dismiss is predicated entirely on the (false) claim that Plaintiffs cannot offer evidence sufficient to meet JASTA's jurisdictional requirements.  Saudi Arabia plainly seeks to deprive Plaintiffs of their rightful resort to significant aspects of the evidentiary record at argument, despite the fact that those records do not qualify for sealing.  Moreover, Saudi Arabia's proposal would prevent Plaintiffs from referencing many records at argument based solely on its own unilateral and untested "designations" of those records, thus giving Saudi Arabia significant control over what is fair game at argument – an improper litigation advantage.  Any oral argument held while so much of the record remains under seal would deprive the media, public, and policymakers of access to key evidence inculpating Saudi government agents in the 9/11 attacks at the moment of most intensive interest.

      Beyond the conduct of the oral argument itself, Plaintiffs must be afforded a fair opportunity to prepare properly and organize the clearest possible presentation of the evidence.  In contrast to Saudi Arabia, Plaintiffs are not represented by a single law firm, but rather by several law firms working together.  Plaintiffs' planning and preparation for argument thus requires coordination among lawyers in multiple different locations.  Coordination and collective decision-making among Plaintiffs' counsel, essential to ensuring proper representation of the 9/11 Families and other clients, require certainty and stability in the public record well in advance of argument.[4]  In addition, Plaintiffs need time to implement any redactions the Court may ultimately require upon a proper record, a process that is labor-intensive, time-consuming, and requires the attention and oversight of the attorneys themselves.

      As Saudi Arabia acknowledges, most of the judicial records at issue have not been reviewed by the FBI, and there is no settled process or timeline for completing the review.  The FBI has advised that it does not anticipate completing its reviews of the Averments until the end of June, shortly before the July 4th holiday and just days before the present argument date.  No plan or timeline has been agreed for review of the actual evidentiary exhibits – the most important category of judicial documents for oral argument.  Saudi Arabia's mere proposal that the parties should meet and confer about that review and try to come up with a plan is unsatisfactory.  Even if the parties were to reach agreement on a procedure, it would take a minimum of several weeks to implement.  There is no way

---

[3] *See, e.g.*, Benjamin D. and Simon, S., *The Atlantic*, "New 9/11 Evidence Points to Deep Saudi Complicity," May 20, 2024, available at: https://www.theatlantic.com/ideas/archive/2024/05/september-11-attacks-saudi-arabia-lawsuit/678430/ (last accessed June 13, 2024).

[4] Only upon a certain and stable record can counsel make informed judgments as to what evidence from the vast number of exhibits should be prioritized and featured, how it should be presented, and how to handle any evidence that may properly remain under seal (although Plaintiffs maintain their skepticism as to whether much, if any, evidence would ultimately qualify for sealing).

it could be completed sufficiently in advance of July 10 to allow meaningful time to prepare upon a stable record. Nor does Saudi Arabia's approach permit any viable process or adequate time to adjudicate the unilateral and unsupported sealing "designations," as required by *Lugosch*. Without such a process or the time to comply, the Court is deprived of the information it needs to make the "specific, on-the-record findings . . . demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest," as required by *Lugosch*. 435 F.3d at 120. These and other circumstances would deny Plaintiffs a fair opportunity to prepare for and present argument, were it to proceed on July 10, 2024.

   3. <u>Saudi Arabia's attempts at finger pointing grossly distort the facts and are irrelevant</u>. Saudi Arabia attempts to distract from the Constitutional right of access and due process issues by falsely suggesting that Plaintiffs are somehow to blame for the current status of the unsealing review process. These arguments are both factually wrong and irrelevant: the parties and the Court are required to comply with *Lugosch*, and it is immaterial how or why the bulk of the record remains under seal just weeks before the proposed argument date. The sole relevant consideration is how to achieve compliance with *Lugsoch* as efficiently as possible.

   Certain of Saudi Arabia's mischaracterizations of the process warrant correction. The DOJ advised the parties that the FBI intended to focus first on the briefs, and then to turn to a sequential review of each set of supporting submissions. It is undisputed that, when the Court issued its minute order setting argument for July 10, 2024 the FBI had reviewed only the first three briefs on Saudi Arabia's motion, and had not yet begun its review of Plaintiffs' surreply. It follows that, as of the date of the minute order, the FBI had similarly not even begun its review of any of the parties' averments or underlying exhibits.

   The record also confirms that Plaintiffs have sought to facilitate and expedite the FBI's review wherever possible. The best example is the completion of meet-and-confer discussions with regard to materials from the Metropolitan Police Service (MPS) productions of 2022 and 2023. Having received Saudi Arabia's confidentiality designations and agreed (provisionally, and subject to challenge) upon certain redactions, Plaintiffs corresponded with DOJ counsel and provided necessary clarifications. As a result, the FBI confirmed that it has no equities in the exhibits comprising MPS materials, and that those exhibits do not require any further redaction review.[5] Plaintiffs' public filing of these exhibits alleviates the ongoing review process of a significant volume of material.

   Where Plaintiffs had not yet provided designations of FBI protected materials as to certain, isolated items at the date of the Court's minute order, those items were far down the line of the process

---

[5] Plaintiffs submitted to the Court on June 7, 2024 a "Schedule of Judicial Documents cleared for public filing," ECF No. 9885-1, which accurately reflects the exhibits in this category as to which all required meet-and-confer discussions have already been completed. Saudi Arabia wrongly implies that certain documents on Plaintiffs' schedule might require further adjudication of their status, ECF No. 9895 at 4, but its submission is based on a misreading of the Court's order specific to unsealing of documents in relation to the separate briefing of a motion to strike, ECF No. 9634. No Court order prevents Plaintiffs from publicly filing all of the judicial documents on its schedule as exhibits submitted in briefing the motions to dismiss. To the contrary, the Court's March 13, 2023 requires compliance with *Lugosch*, which mandates "immediate" access to judicial documents. Plaintiffs will proceed as set forth in their letter at ECF No. 9885, and will supplement and update the Schedule as necessary when further documents cleared for public filing are identified.

FBI had outlined, and behind numerous categories of judicial documents FBI had said it intended to review first. Stated very simply, the FBI was not very far along in its process when the Court issued its minute order. Plaintiffs have done nothing to delay the FBI review process, but rather have facilitated it with their proposals to narrow its scope, as described above.

   4. <u>Plaintiffs have a straightforward plan for complying with *Lugosch* and ensuring fairness, which will not result in undue delay</u>. Based on Plaintiffs' June 11, 2024 meet-and-confer discussions with the DOJ, Plaintiffs submit that there is a straightforward path for ensuring compliance with *Lugosch* and upholding fairness in the conduct of the argument, while obviating the need for the FBI to continue its time-consuming reviews of the relevant judicial documents. Specifically, Plaintiffs propose as follows:

   a. The parties will promptly brief disputes relating to Saudi Arabia's proposed sealing designations, which primarily pertain to documents Saudi Arabia produced. Saudi Arabia has already applied category labels to each of its designations, albeit without the required support, and the parties can proceed to brief the issues. This briefing can be completed in a reasonable number of days, subject to the parties' conferring and the Court's approval. As it is Saudi Arabia's burden to present "the most compelling reasons" to support each sealing request, it should file the opening brief. The resultant briefing should resolve all issues relating to Saudi Arabia's sealing claims.

   b. Plaintiffs will seek an order authorizing public filing of FBI PO and EO MDL versions of FBI documents cited in Plaintiffs' Averment, Opening Brief, and Surreply (and references to them in those filings), or marked at depositions. The DOJ has confirmed that the FBI's reviews of the judicial documents, and proposed redactions to them, has been based on restrictions imposed on government by the Privacy Act of 1974, 5 U.S.C. § 552a ("Privacy Act"). During meet-and-confer, DOJ counsel acknowledged that the Privacy Act is the only interest asserted as to the vast majority of the documents and references. Any isolated exhibits that raise additional issues can be identified. While the Privacy Act imposes certain statutory restrictions on the government, it does not bind the Court or present an equity sufficient to overcome public interest in access to judicial documents. *Rivera-Lopez v. GE*, 2022 U.S. Dist. LEXIS 138935, at *6 and n. 3 (S.D. Ga., Aug. 2022) ("[P]arties justifying seal requests under the Privacy Act must provide more than a conclusory statement that documents must be sealed pursuant to the statute."). Issuance of a Court order authorizing the public filing of "judicial documents" is thus appropriate under governing law and will secure public access to virtually all of the exhibits, largely obviating the need for the FBI to continue to review any of the materials.

   c. Third-party documents. Saudi Arabia engaged a handful of third-parties, to solicit sealing requests from them. It is unclear if these parties were sufficiently cognizant of the sealing standards and Judge Netburn's directives. Saudi Arabia should ask those parties whether they intend to make a showing of "the most compelling reasons" to maintain sealing under *Lugosch*. If so, those parties should be directed to confer with Plaintiffs by June 20, 2024 to define any disputes and discuss a briefing schedule, and the parties will report back by a deadline set by the Court.

   d. Plaintiffs propose that the July 10, 2024 hearing date should instead be used to hold a status conference on these issues, potentially to have argument on at least some of the sealing disputes, and to discuss appropriate timing, at a later date, for oral argument on the motions.

The Honorable George B. Daniels
June 13, 2024
Page 6

---

      Respectfully submitted,

| | |
|---|---|
| MOTLEY RICE LLC | COZEN O'CONNOR |
| By: /s/ Robert T. Haefele | By: /s/ Sean P. Carter |
| ROBERT T. HAEFELE | SEAN P. CARTER |
| 28 Bridgeside Boulevard | One Liberty Place |
| Mount Pleasant, SC 29465 | 1650 Market Street, Suite 2800 |
| Tel.: (843) 216-9184 | Philadelphia, Pennsylvania 19103 |
| Email: rhaefele@motleyrice.com | Tel.: (215) 665-2105 |
| | Email: scarter@cozen.com |
| *Liaison Counsel for the Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Plaintiffs* | *Co-Chair of the Plaintiffs' Executive Committee for Commercial Claims on behalf of Plaintiffs* |

KREINDLER & KREINDLER LLP

By: /s/ Steven R. Pounian
STEVEN R. POUNIAN
485 Lexington Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: spounian@kreindler.com

*Attorneys for Ashton Plaintiffs*

cc:    The Honorable George B. Daniels, via ECF
        All Counsel of Record via ECF