# Exhibit 678 F

11. Pay Telephone(s) (Definition): For purposes of the Agreement the terms pay telephone or pay telephones shall be the defined as all pay telephones installed by the COMPANY at the location.

12. Access: LOCATION OWNER shall keep the area around the pay telephone(s) free from obstacles or other impediments which would interfere with access to the pay telephone(s). LOCATION OWNER shall make the pay telephone(s) available to the general public 24 hours a day, 7 days a week, unless specified as follows: _____

13. Utilities: LOCATION OWNER shall provide all necessary electrical outlets and be responsible for all utility charges arising out of use related to the operation of the pay telephone(s).

14. Telephone Charges: The COMPANY shall be responsible for all telephone charges imposed by the local telephone company including long distance service if required as a result of or related to the pay telephone(s) or the use thereof.

15. Collection of Revenues: The Company shall be responsible for and collect all revenues generated by the pay telephone(s).

16. Removal: LOCATION OWNER shall not remove, detach, disconnect or cause to be removed, detached or disconnected the pay telephone(s) from the Location without the prior written consent of the Company. The COMPANY accepts no responsibility for holes in walls, plates, or floors which are necessary for the installation or removal of the pay telephone(s) and equipment, or as a result of vandalism.

17. Ownership: The pay telephone(s) shall at all times remain the property of the COMPANY or any other entity or individual from which the COMPANY is leasing such pay telephones, unless otherwise provided for by COMPANY in writing.

18. Attorneys-in-fact: LOCATION OWNER hereby designates the COMPANY as its attorneys-in-fact in connection with any telecommunications orders and all pay telephones now located or to be located at the location. This authorization includes, but is not limited to, the removal or installation of any pay telephone(s) located at the location, the payment and handling of all line charges, access charges, or other charges related to the pay telephones and all activities related to the management of any pay telephones located at the location. The LOCATION OWNER shall execute all documents necessary to effectuate this section of the AGREEMENT.

19. Notes: All notices required to be given pursuant to this agreement shall be made by first class mail, addressed as follows: to the LOCATION OWNER at the address indicated on the front hereof, to the COMPANY at 2999 Sage View Drive, Alpine, CA 91901, or at such other address as may be designated from time to time by the COMPANY.

20. Gross Revenues: For purposes of this Agreement, gross revenues is defined as all revenues generated by the pay telephone(s) from COIN and interstate CREDIT card calls.

21. Net Revenues: For purposes of this Agreement, net revenues are defined as gross revenues less all telephone usage charges, access charges, long distance fees, long distance charges, credit card processing charges, credit card company fees, line charges, taxes, maintenance charges and pay telephone(s) lease charges.

22. Severability: If any provision of this Agreement as applied to either party or to any circumstance shall be adjudicated by a court to be void and unenforceable, the same shall in no way affect any other provision of this Agreement, the application of such provision in any other circumstance or the validity or enforceability of the Agreement as a whole.

23. Entire Agreement: This Agreement contains the entire understanding and agreement between the parties hereto with respect to the matter referred to herein. No other representations, covenants, undertaking or other prior or contemporaneous agreements, oral or written respecting such matters, which are not specifically incorporated herein shall be deemed in any way to exist or bind any of the parties hereto and the parties hereto acknowledge that each party has not executed this Agreement in reliance on any such promise, representation or warranty.

24. Binding on Successors: This Agreement and the covenants and conditions contained herein shall apply to, be binding upon and inure to the benefit of the administrators, executors, legal representatives, assignees, successors, agents and assigns of the parties hereto.

25. Construction: This Agreement shall not be construed against the party preparing it but shall be construed as both parties jointly prepared this Agreement and any inadvertence and ambiguity shall not be interpreted against any one party. This Agreement is to be interpreted, enforced and governed by and under the laws of the State of California. Venue for any action arising out of this agreement shall be San Diego County, El Cajon Judicial District.

26. Modification: This Agreement shall not be modified by either party or by oral representation made before or after the execution of this Agreement. All modifications must be in writing and signed by the parties hereto.

27. Execution of Additional Documents: The parties hereto shall execute and deliver all additional documents and perform all further acts that may be reasonably required to effectuate the provisions of this Agreement.

28. Attorneys' Fees: Should suit be brought to enforce or interpret any part of this Agreement, the "prevailing party" shall be entitled to recover a reasonable amount of costs of suit and not as damages, reasonable attorneys' fees to be fixed by the Court, including all costs and expenses of any appellate court proceedings. The "prevailing party" shall be the party entitled to recover his costs of suit, regardless of whether such suit proceeds to final judgment. A party not entitled to recover his costs of suit shall not be entitled to recover attorneys' fees. Any sums for attorneys' fees shall be counted in calculating the amount of a judgment for the purposes of determining if a party is entitled to recover costs or attorneys' fees.

29. Performance: The COMPANY shall not be responsible for any nonperformance or delay in performance of any of the requirements set forth in this Agreement due to any law, ordinance, policy, regulation, order, judgment or decree, any act of God, earthquake, flood, fire, epidemic, accident, explosion, casualty, lockout, conflict, any act of public enemy, embargo, delay of common carrier, any material, labor, transportation, power, or other required commodity or service, or any other cause beyond its control rendering performance impossible or commercially impracticable.

30. The LOCATION OWNER agrees to pay the COMPANY a Line Service Charge of $ 50 per month.

Notes: Line Service charge to apply if the Pay Phone income falls below $125.00 / Month Adjusted Gross.

Location owner will pay Western Telephone $600 if the pay phone is pulled or disconnected within (2 years) of installation date.

(Filename: boiler-P.003)

# PUBLIC TELEPHONE AGREEMENT

This agreement is made this 4 day of AUG, 1998 between Max Steinberg, individually, doing business as Western Telephone (Company) and _____ (Owner / Agent).

The Subject of this Agreement is Company's Exclusive right to provide all telecommunication services as well as public pay telephone(s), wiring and associated apparatus and equipment at premises commonly known as MASJID AL-Medinah AL-Munawrah. Company shall cause that such telephones to be available to the public twenty-four (24) hours per day, each day of the calendar year unless otherwise noted as follows:

At its own expense, Company shall install the telephone(s) as soon as reasonably practical. Owner, at its own expense, shall provide and maintain uninterrupted electrical source(s) of 110 AC (Alternating Current) volts for outlet(s) for Company's use at the public pay telephone(s) throughout the duration of this Agreement. Company shall, in Company's discretion, be entitled to place upon location all wires, clamps, conduit, signage and other equipment or apparatus that Company deems necessary for the proper installation of, and maintenance of, operating and functional public pay telephone(s). Company shall have the right at all times to enter location for purposes of inspecting, servicing and repairing the public pay telephone(s) and associated equipment, apparatus, wiring, clamps, conduit and signage.

Company shall pay Owner monthly net commissions based upon revenues received from all COIN and zero plus interstate CREDIT card calls.

$00 - $19      0%
$50 - $299    25%  ( Provided a minimum of $125 net revenue is received.)
$300 - $399   30%
$400 - $499   35%
$500 +        55%

This Agreement shall remain in full force and effect from the date hereof and shall continue for a period of 120 months following installation of the first pay telephone by the Company at location. Unless executed below, Company shall have the right to renew this Agreement for an additional 120 months, by giving written notice to owner. Exception ___ — NONE —___

Company, in its sole discretion, reserves the right to remove or to change any or all pay telephone(s) or equipment. Similarly, Company shall, in its discretion have the right to increase or to change the number and/or type of telephone(s) or equipment, telephone signs and related apparatus.

Company may at any time, sell or assign its interest and rights under this Agreement, in which event Company shall have no further responsibilities thereunder. Any such assignee shall have all rights and responsibilities of Company as described within this Agreement.

If Owner sells or discontinues the business at location, this Agreement shall continue to be binding on any new owner, lessee or successor. Owner agrees to notify any new owner, lessee or successor in interest and to submit this Agreement to any escrow for purposes of ensuring that this Agreement is acknowledged as being duly transferred to any new owner, lessee or successor in interest as part of any sale of the business. Owner agrees to execute a UCC financing statement for purposes of securing Company's interest in this Agreement. Further, Owner shall, upon transfer of his interest in location to another, secure the written agreement that any successor will abide by this Agreement. If Owner is also the owner of the real property upon which the telecommunication equipment and/or pay telephone(s)/wiring is located ("real property owner"), Owner agrees that an abstract or memorandum of this contract may be recorded within the county where the land is located.

Liquidated Damages. The parties agree that, in the event of breach of this Agreement by either party, it will be difficult or impractical to establish actual damages or loss occasioned by such default. Therefore, it is mutually agreed that such damage shall be liquidated as follows:
a. If Owner is the breaching party, Company shall be entitled to liquidated damages of five dollars ($ 5) per day per pay telephone for each day Owner's breach results in loss of revenue to Company.
b. If Company is the breaching party, Owner shall be entitled to liquidated damages of one dollar, twenty-five cents ($ 1.25) per day for each day Company's breach results in loss of commission to Owner.

The parties refer to and incorporate the terms and conditions contained on the reverse hereof as if set forth in full on the front of this Agreement.

Location owner represents and warrants that it has the authority to enter into this Agreement and to lease to Company the location for the purposes set forth herein and that the person signing on behalf of the Location Owner has the authority to enter into this agreement. Owner also represents that Owner is the "real property owner" or that he has the agreement to permit installation of Company's telecommunication equipment and / or pay telephone(s) and equipment at Location.

Premise Address: 511 S. Magnolia AVE

City: EL CJON    State: CA    Zip: 92020

Telephone Number: 619-579-3142

X _____ Owner / Agent, Signature

X OMAR AL-BAYOUMI    Owner / Agent, Printed Name

_____ Company / Agent, Signature

MAX E. STEINBERG    Company / Agent, Printed Name

The party Owner consents that Company may install and maintain its telecommunication equipment and / or pay telephone(s) and equipment pursuant to the terms of this Agreement. Neither Company nor property owner shall be entitled to compensation from the other.

Real Property Owner / Agent, Signature

_____, 98

e agreement

1. We have to pay $50 every month if the revenue was less than $125 a month.
2. If the revenue was more than $125 we have to not pay any Dollars.
3. If we don't need the service we have to pay $600 for the first year.
4. If we don't want the service in 24 months we have to not pay anything.