**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN)<br><br>ECF Case |

**This document relates to:**
    *Burnett, et al. v. Islamic Rep. of Iran, et al.*, No. 15-cv-9903 (GBD)(SN)

<u>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF PARTIAL**</u>
<u>**FINAL DEFAULT JUDGMENTS ON BEHALF OF PERSONAL REPRESENTATIVES**</u>
<u>**OF ESTATES OF NON-NATIONAL 9/11 DECEDENTS**</u>

**(*BURNETT* NON-NATIONALS 5)**

**INTRODUCTION**

For the reasons set forth below and in the accompanying Declaration of John M. Eubanks ("Eubanks Declaration"), with exhibits, and the accompanying memorandum of law, Plaintiffs in the *Burnett* action pending before the Court seek partial default judgment awarding the Plaintiffs included in the exhibits to the Eubanks Declaration (the "Moving Plaintiffs"): (1) compensatory damages for pain and suffering for those individuals killed in New York City in the same per estate amount previously awarded by this Court for other estates of decedents killed in the terrorist attacks on September 11, 2001 with claims arising under 28 U.S.C. § 1605A(c); (2) wrongful-death damages for the plaintiffs identified in the expert reports attached as Exhibit C to the Eubanks Declaration and filed on ECF under seal pursuant to the Court's May 5, 2022 order, ECF No. 7963, pursuant to New York law; (3) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; (4) permission for the Moving Plaintiffs to seek punitive damages, wrongful-death damages, or other damages at a later date; and (5) for all other similarly situated *Burnett* Plaintiffs whose claims are subject to the jurisdiction of this Court against the Islamic Republic of Iran, the Islamic

Revolutionary Guard Corps, and the Central Bank of the Islamic Republic of Iran (collectively the "Iran Defendants") solely under the exception to sovereign immunity found at 28 U.S.C. § 1605B(b), to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed. Plaintiffs' request is made in connection with the pending motion for default judgment as to liability sought against the Islamic Republic of Iran, the Islamic Revolutionary Guard Corps, and the Central Bank of the Islamic Republic of Iran (collectively, "the Iran Defendants") in the *Burnett* case for non-national claimants that was filed on April 30, 2024. *See* ECF No. 9733.[1]

## PROCEDURAL BACKGROUND

Moving Plaintiffs sued the Iran Defendants in connection with the losses they sustained in the terrorist attacks on September 11, 2001. On December 1, 2016, plaintiffs in the action *Burnett, et al. v. Islamic Rep. of Iran, et al.*, Case No. 15-cv-9903 (GBD)(SN) ("*Burnett/Iran*"), whose claims arose pursuant to the private right of action codified at 28 U.S.C. 1605A(c) moved for judgment as to liability only. 15-cv-9903, ECF Nos. 65, 66, amended on December 6, 2016, 15-cv-9903 ECF Nos. 68, 69. On January 31, 2017, the Court entered judgment as to liability only against the Iran Defendants. *See* 15-cv-9903, ECF No. 85.

Since the entry of liability under 28 U.S.C. § 1605A(c), this Court has awarded paind-and-suffering damages and economic-loss damages to the personal representatives of the estate of U.S.-national 9/11 decedents pursuant to Section 1605A(c). Now, the Moving Plaintiffs who do not qualify for judgments under the exception to sovereign immunity found at 28 U.S.C. § 1605A— because they are the personal representatives of 9/11 decedents who were not United States nationals on September 11, 2001—seek entry of partial final judgments against the Iran

---

[1] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

Defendants pursuant to the exception to sovereign immunity found at 28 U.S.C. § 1605B(b) and the "pass through" of 28 U.S.C. § 1606 to claims for intentional infliction of emotional distress under New York state law. These Plaintiffs submit that the Court possesses subject-matter jurisdiction and personal jurisdiction over the Iran Defendants.

**ARGUMENT**

**I.      This Court Possesses Subject-Matter Jurisdiction Over the Iran Defendants.**

This Court recently addressed liability for a non-U.S.-national plaintiff in the *King* case within this MDL who sustained personal injuries in the attacks on September 11, 2001 and awarded damages to this plaintiff.  *See* ECF No. 9666. The claims of non-U.S. national victims and their non-U.S. national family members cannot be brought pursuant to 28 U.S.C. § 1605A(c)—the statute upon which the Court has granted relief in its prior decisions—because to bring such an action requires that the plaintiff be "(1) a national of the United States, (2) a member of the armed forces, (3) an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment, or (4) the legal representative of a person described in paragraph (1), (2), or (3), for personal injury of death…."  *See* 28 U.S.C. §§ 1605A(c)(1)-(4).  The plaintiffs in this motion do not fall within the parameters required to pursue a cause of action based upon the terrorism exception.

Therefore, these plaintiffs look to 28 U.S.C. § 1605B(b) to provide jurisdiction over their claims.  This section provides:

> A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which money damages are sought against a foreign state for physical injury to person or property or death occurring in the United States and caused by—
>
> (1) an act of international terrorism in the United States; and

> (2) a tortious act or acts of the foreign state, or of any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, regardless where the tortious act or acts of the foreign state occurred.

28 U.S.C. § 1605B(b). Conspicuously absent from this exception to sovereign immunity is the requirement that the victim or their family members be U.S. nationals to pursue their claims. This differentiation between the terrorism exception found at Section 1605A and the Justice Against Sponsors of Terrorism Act found at Section 1605B derives from the location of the act of terrorism as "occurring in the United States."

The Supreme Court has held that "a foreign state is immune from the jurisdiction of courts in this country unless one of several enumerated exceptions to immunity applies. 28 U.S.C. §§ 1604, 1605-1607. If a suit falls within one of these exceptions, the FSIA provides subject-matter jurisdiction in federal district courts." *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1053 (2019). In addressing the application of the exception to sovereign immunity codified at 28 U.S.C. § 1605B(b) to the terrorist attacks on September 11, 2001, Magistrate Judge Netburn provided the following analysis (subsequently adopted by Judge Daniels)—adjusted to address the circumstances at issue in this motion—in recommending that the exception applies here to provide the Court with subject-matter jurisdiction:

> [The victims'] claims plainly satisfy many of 28 U.S.C. § 1605B(b)'s requirements. [They are] seeking "money damages" from Iran. [28 U.S.C. § 1605B(b)"; *see* No. 15-cv-09903, ECF No. 53 at 1082-88 (*Burnett* complaint [at issue in this motion]). Those damages are for "physical injur[ies]" [they] sustained "in the United States." 28 U.S.C. § 1605B(b); *see* ECF No. 9154-7 at ¶¶ 5-33; No. 15-cv-09903, ECF No. 53 at 1081. [Their] injuries were "caused" by the 9/11 Attacks. 28 U.S.C. § 1605B(b); *see* ECF No. 9154-7 at ¶¶ 5-33; No. 15-cv-09903, ECF No. 53 at 1081. And the 9/11 Attacks were "act[s] of international terrorism" on U.S. soil. 28 U.S.C. § 1605B(b); *see* No. 15-cv-09903, ECF No. 53 at 1081.
>
> One element of 28 U.S.C. § 1605B(b) merits closer attention: the requirement that "a tortious act or acts of the foreign state" "caused" the injury. For FSIA purposes, "a tortious act" includes the "knowing or deliberately indifferent provision of material support to terrorists," and "cause" incorporates "the traditional test for proximate causation[:] . . . 'some reasonable connection between the act or

4

omission of the defendant and the damage which the plaintiff has suffered.'" *In re Terrorist Attacks on Sept. 11, 2001*, 298 F. Supp. 3d 631, 643, 645 (S.D.N.Y. 2018) (quoting *Owens v. Republic of Sudan*, 864 F.3d 751, 794 (D.C. Cir. 2017)). In simple terms, there must be a link between a state's support for terrorism and the plaintiff's injuries.

The Court heard evidence linking Iran to the 9/11 Attacks in a 2011 hearing. Based on that record, it found that Iran was 'aware[] of[] and involve[d] in[]" al Qaeda's plans and provided "material support" to the terrorist group. *In re 9/11*, 2011 WL 13244047, at *26, 41. It concluded that Iran's "material support" proximately "caused" the 9/11 Attacks and, by extension, the resulting injuries. *Id.* at *41; *see* ECF No. 9154-7; *cf.* ECF No. 9274 at 3 (concluding that Iran proximately caused latent injuries). The evidence supporting those findings establishes the last element of 28 U.S.C. § 1605B(b)—that Iran's "tortious act[s]" "caused" [plaintiffs'] injuries. *See* ECF Nos. 2431, 2432, 2433, 2473.

*See* ECF No. 9506 at 6-7. Magistrate Judge Netburn correctly concluded that these cases meet the jurisdictional threshold for establishing subject-matter jurisdiction over the Iran Defendants under 28 U.S.C. § 1605B(b), and the Court is free to exercise subject-matter jurisdiction here. This conclusion was subsequently adopted by the Court. *See* ECF No. 9666 at 2-4. Therefore, as in the *King* case, this Court has subject-matter jurisdiction over these Plaintiffs' claims under 28 U.S.C. § 1330(a). *See* ECF No. 9506 at 7.

## II.   This Court Possesses Personal Jurisdiction Over the Iran Defendants.

With subject-matter jurisdiction satisfied through the application of the exception found at 28 U.S.C. § 1605B(b), the Court must assess whether it has personal jurisdiction over the Defendants. In *Harrison*, the Supreme Court held, "[t]he FSIA also provides personal jurisdiction 'where service has been made under [28 U.S.C. §] 1608." 139 S. Ct. at 1054. Here, the Amended Complaint in this case was filed on February 8, 2016. *See* 15-cv-9903, ECF No. 53. Service of process on a foreign state or a political subdivision of a foreign state is governed by 28 U.S.C. § 1608(a) which "sets out in hierarchical order the . . . four methods by which '[s]ervice . . . shall be made.'" *Harrison*, 139 S. Ct. at 1054 (quoting 28 U.S.C. § 1608(a)). There is no special arrangement for service of process between the Plaintiffs here and the Iran Defendants, so service

on the Islamic Republic of Iran and its political subdivision the Islamic Revolutionary Guard Corps was not possible under 28 U.S.C. § 1608(a)(1). Further, there is no applicable international convention on service of judicial documents to which both the United States and the Islamic Republic of Iran are parties such that service under 28 U.S.C. § 1608(a)(2) was also not possible. On March 1, 2016, Plaintiffs requested service of process on the Islamic Republic of Iran and the Islamic Revolutionary Guard Corps pursuant to 28 U.S.C. § 1608(a)(3) by requesting that the requisite documents and Farsi translations be sent "by any form of mail requiring a signed receipt." The Clerk Certificate of Mailing on the Islamic Republic of Iran under 28 U.S.C. § 1608(a)(3) was docketed on March 7, 2016.  *See* 15-cv-9903, ECF No. 55.  The Clerk Certificate of Mailing on the Islamic Revolutionary Guard Corps was also docketed on March 7, 2016.  *See* 15-cv-9903, ECF No. 57.

On May 2, 2016, after more than 30 days had passed since the Clerk's March 7, 2016 Certificates of Mailing without any response from the Islamic Republic of Iran or the Islamic Revolutionary Guard Corps, Plaintiffs sought service of process on these defendants pursuant to 28 U.S.C. § 1608(a)(4) via diplomatic channels through the U.S. Department of State.  On October 28, 2016, the Clerk of the Court received proof of service from the U.S. Department of State for service on both the Islamic Republic of Iran and the Islamic Revolutionary Guard Corps stating that "the documents were delivered to the Iranian Ministry of Foreign Affairs under cover of diplomatic note numbers 1069-IE and 1070-IE dated and delivered on September 14, 2016."  *See* 15-cv-9903, docket entry from October 28, 2016.

The Central Bank of the Islamic Republic of Iran is an "agency or instrumentality" of the Islamic Republic of Iran, and service of process on an agency or instrumentality of a foreign state is governed by 28 U.S.C. § 1608(b).  Neither of the first two provisions in the hierarchical order

of section 1608(b) applied in this instance, so on March 1, 2016, Plaintiffs requested service on the Central Bank of the Islamic Republic of Iran pursuant to 28 U.S.C. § 1608(b)(3).  The Clerk's Certificate of Mailing on the Central Bank of the Islamic Republic of Iran was docketed on March 7, 2016.  *See* 15-cv-9903, ECF No. 54. Plaintiffs received a return receipt indicating that service had been made on the Central Bank of the Islamic Republic of Iran on March 18, 2016.  *See* 15-cv-9903, ECF No. 64.

Plaintiffs submitted their Affidavit of Service as to the Islamic Republic of Iran, the Islamic Revolutionary Guard Corps, and the Central Bank of the Islamic Republic of Iran pursuant to 28 U.S.C. § 1608 on November 10, 2016.  Therefore, this Court possesses personal jurisdiction over the Iran Defendants in this case because service has been made pursuant to 28 U.S.C. § 1608.

### III.  The Iran Defendants Have Defaulted.

Under 28 U.S.C. § 1608(d), "a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state shall serve an answer or other responsive pleading to the complaint within sixty [60] days after service has been made under this section."  On November 10, 2016, Plaintiffs filed a request for entry of a Clerk's Certificate of Default to be entered on or after November 15, 2016 which would have been the day after the expiration of the 60-day time period set forth in 28 U.S.C. § 1608(d).  *See* 15-cv-9903, ECF No. 63 at ¶13.  On December 5, 2016, the Clerk's Certificate of Default was entered against the Iran Defendants.  *See* 15-cv-9903, ECF No. 67. The Iran Defendants have not appeared at any point in this litigation even after entry of the Clerk's Certificate of Default.

### IV.  The Iran Defendants are Liable for Wrongful Death and Survival Claims Under New York Law and Wrongful Death Claims Under Virginia Law.

In prior judgments entered on behalf of Plaintiffs in this case against Iran, the Court has looked to 28 U.S.C. § 1605A(c) that provides a cause of action for U.S. nationals injured or killed

in terrorist attacks supported by designated state sponsors of terrorism.  The Plaintiffs in this motion seek liability and damages against the Iran Defendants despite their status as non-U.S.-nationals where the 9/11 decedent was also a non-U.S. national.  As set forth above, this Court possesses jurisdiction over these Plaintiffs' claims under 28 U.S.C. § 1605B(b), and the application of this exception to foreign sovereign immunity triggers the language in 28 U.S.C. § 1606 which provides that a foreign sovereign who is not entitled to immunity "shall be liable in the same manner and to the same extent as a private individual under like circumstances."  The D.C. Circuit has read this provision to ensure that "if an FSIA exception abrogates immunity, plaintiffs may bring state law claims that they could have brought if the defendant were a private individual." *Oveissi v. Islamic Rep. of Iran*, 573 F.3d 835, 841 (D.C. Cir. 2009).   The Amended Complaint in this case not only stated claims pursuant to the terrorism exception to foreign sovereign immunity: it also stated counts for wrongful death (Count Four) and survival (Count Five).

## A.  Choice-of-law Analysis

Where the Court has determined that an exception to immunity applies, and 28 U.S.C. § 1606 is implicated, then the choice-of-law rules applicable to any other actor within this forum would apply here—that is, New York's choice-of-law analysis applies here.  *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 124 S. Ct. 1502, 1508 (2022); *see also Barkanic v. Gen. Admin. of Civ. Aviation of People's Rep. of China*, 923 F.2d 957, 959-60 (2d Cir. 1991).  Therefore, the Iran Defendants are subject to suit for wrongful death and survival in the same manner that other private defendants would be.

Under New York choice-of-law principles, " 'controlling effect' must be given 'to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation."  *Schultz v. Boy Scouts of*

*Am.*, 65 N.Y.2d 189, 196 (1985), *quoting Babcock v. Jackson*, 12 N.Y.2d 473, 481 (1963).  "In determining the interests of a jurisdiction in a particular tort, New York courts assess whether the state laws in conflict are primarily 'conduct regulating' or 'loss allocating.' Conduct-regulating rules are those 'governing conduct to prevent injuries from occurring,' while loss allocating rules 'are those which prohibit, assign, or limit liability after the tort occurs…." *Reed Constr. Data Inc. v. McGraw-Hill Cos.*, 49 F. Supp.3d 385, 424 (S.D.N.Y. 2014) (citations omitted).  For conduct-regulating rules, New York courts hold that "the law of the place of the tort 'will usually have a predominant, if not exclusive, concern'… because the locus jurisdiction's interests in protecting the reasonable expectations of the parties who relied on it govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future assume critical importance and outweigh any interests of the common-domicile jurisdiction." *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 522 (1994), *quoting Schultz*, 65 N.Y.2d at 198.

Loss-allocating rules apply the framework established in *Neumeier v. Kuehner*, 31 N.Y.2d 121 (1972) which established three rules: (1) where the parties are domiciliaries of the same jurisdiction, "the law of that state should control and determine the standard of care" (31 N.Y.2d at 128); (2) where the parties are domiciliaries of different states, and the local law of one state is more favorable than the local law of the other state, then the "place of injury" would apply (*id.*); or (3) the law of the place of the tort would apply where the alleged victim and the alleged tortfeasor are domiciliaries of different states unless "it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants" (*id.*).  As this Court has held, "here, despite the number of Movants and diversity of domiciles, that task [of considering each plaintiff vis-à-vis each defendant] is easier than one might predict.  The first rule does not

apply because no Movant is domiciled in Iran.  And under either the second or the third rule, the
law of the 'place [of the tort]' governs." ECF No. 9287 at 4.

    **B.**    **Plaintiffs Have Properly Pleaded Claims Under the New York Wrongful Death Statutes.**

The Moving Plaintiffs are the Personal Representatives of the estates of individuals who
were killed in New York City as a direct result of the terrorist attacks on September 11, 2001.
Applying the Court's prior determination, the law of the place of injury governs in these cases;
therefore, New York law would apply to cases where the individual was killed in New York.

    **1.**  **New York Law Provides Plaintiffs with a Remedy for Wrongful Death.**

As this Court has previously held, New York law "plainly states that a 'personal
representative … may maintain an action to recover damages for a wrongful act … which caused
the decedent's death against a person who would have been liable to the decedent by reason of
such wrongful conduct if death had not ensued.' N.Y. Est. Power & Trusts Law § 5-4.1.  This
principle has been well-established and applied by New York state courts for over a century in the
most diverse contexts."  *See* ECF No. 3374 at 8 (Report and Recommendation of Magistrate Judge
Netburn adopted by Judge Daniels at ECF No. 3382). Claims for wrongful death under New York
law are derivative of claims such as assault and battery.  *See Campbell v. City of Yonkers*, Case
No. 19-cv-2117 (VB), 2023 U.S. Dist. LEXIS 131985, at *46 (S.D.N.Y. July 31, 2023).  Liability
under New York law for assault and battery extends beyond the principal tortfeasor to those who
aided and abetted them.  *See Lindsay v. Lockwood*, 625 N.Y.S.2d 393, 396-98 (N.Y. Sup. Ct.
1994).  In addressing how aiding-and-abetting liability under assault and battery applies to the
facts in these cases, Judge Daniels has found:

> The al Qaeda hijackers committed assault and battery against Plaintiff.  And, based
> on the evidence that Plaintiff has proffered—which Iran has admitted by virtue of
> its default—this Court agrees with Magistrate Judge Netburn's conclusion that Iran

> both knew of and substantially assisted al Qaeda's attacks on the United States. This Court adjudges Iran liable to Plaintiff.

ECF No. 9666 at 8 (adopting ECF No. 9506 at 8-13).  The decision addressing personal-injury damages for Manu Dhingra, a non-U.S. national who was injured in the terrorist attacks on September 11, 2001, addressed the allegations from the Amended Complaint in this case (which was adopted through the Short-Form Complaint process in Mr. Dhingra's case).  *See* ECF No. 9506 at 6.  Therefore, if the allegations in Mr. Dhingra's case—using the factual allegations contained in the *Burnett* Amended Complaint (ECF No. 53 in 15-cv-9903)—were sufficient for entry of judgment in the personal-injury context, then the claims of individuals who died in the same attacks on the World Trade Center in New York would similarly be entitled to a judgment notwithstanding their lack of U.S.-national status.

### 1.     New York Law Provides a Remedy for Survival/Conscious Pain and Suffering.

Plaintiffs also assert claims for "Survival" under Count Five of the Amended Complaint. *See* 15-cv-9903, ECF No. 53 at 1087.  Under New York law, "[n]o cause of action for injury to person or property is lost because of the death of the person in whose favor the cause of action existed."  N.Y. Est. Power & Trusts Law § 11-3.2(b).  The New York Court of Appeals has determined that "a personal injury action on behalf of the deceased under EPTL 11-3.2(b) seeks recovery for conscious pain and suffering of the deceased and any damages awarded accrue to the estate." *Heslin v. County of Greene*, 14 N.Y.3d 67, 76-77 (2010).  New York courts have found that a survival action (or an action for conscious pain and suffering) is separate and distinct from a wrongful-death cause of action.  *Dunefsky v. Montefiore Hosp. Med. Ctr.*, 162 A.D.2d 300 (1st Dep't 1990).  When addressing the claims for pain-and-suffering damages under New York's law for assault and battery for non-U.S.-national plaintiffs within this MDL, this Court stated that "considerations of fairness dictate that the preexisting personal injury damages framework applies

11

to non-U.S. nationals as well." ECF No. 9666 at 9.  Here, these same considerations of fairness

dictate that the preexisting conscious pain and suffering damages framework established for U.S.-

national decedent estates (in the amount of $2 million per estate) should be equally applied to the

non-U.S.-national decedent estates here.

## V.      Damages Should be Awarded Under the Court's Previously Adopted Solatium Framework to Personal Representatives on Behalf of Non-National 9/11 Decedent Estates Who Died in New York.

The Moving Plaintiffs further request that this Court grant them partial default judgment

as to damages against the Iran Defendants. Plaintiffs respectfully submit that the Court should

adopt and apply the same damages procedures here that the Court has applied in this case to actions

maintained under § 1605A. Equity dictates that non-U.S. national Plaintiffs be entitled to the same

damages regime as had been applied to § 1605A claims throughout this case. *See* ECF No. 2618

at 14 (awarding *Havlish* plaintiffs common law damages against non-sovereign defendants in same

amounts as § 1605A claims against Iran "under traditional tort principles" even though *Havlish*

plaintiffs did not maintain Anti-Terrorism Act claims against these defendants and Section 1605A

claims were inapplicable as to these defendants).

Accordingly, while § 1605B(b) confers jurisdiction, the appropriate damages framework

for Plaintiffs' common-law claims should be the same framework that has been applied to claims

maintained under § 1605A, as set forth below. This is also true given the determination by this

Court and others that there exists an "interest in promoting uniformity of determinations with

respect to [state sponsored terrorist acts]." *See* ECF No. 3363 at 2.  This is further underscored by

this Court's rationale as stated in the *King* case that "considerations of fairness dictate that the

preexisting … damages framework applies to non-U.S. nationals as well."  ECF No. 9666 at 9.

Magistrate Judge Netburn's Report and Recommendation (adopted by the Court) provided a

salient rationale that "doing so will promote the efficient adjudication of this litigation and, more

importantly, restore a measure of parity to plaintiffs of different nationalities…. [T]he 9/11 Attacks did not just devastate U.S. nationals and their families; they killed 372 people from over 90 countries and injured many more.  And yet, non-U.S. nationals have not shared in the default judgments entered against Iran in this litigation—largely due to legal hurdles unique to their claims.  As we parse these issues and grant judgments in favor of non-U.S. national plaintiffs, justice demands that we honor their losses as we do those of U.S. nationals."  ECF No. 9506 a 14.

### A. Economic-Loss Damages/Pecuniary-Loss Damages Under New York Wrongful Death Law

The Moving Plaintiffs seek damages under New York's wrongful death statute because they were killed in and around the World Trade Center complex on September 11, 2001.  Under New York wrongful-death law, "[d]amages are measured by the effect of the wrongful act on the distributees - - pecuniary loss suffered by the individual distributees as a result of decedent's death." *Hernandez v. New York City Health & Hosps. Corp.*, 78 N.Y.2d 687, 693 (N.Y. 1991). "There are four elements of compensable loss encompassed by the general term 'pecuniary loss': (1) decedent's loss of earnings; (2) loss of services each survivor may have received from decedent; (3) loss of parental guidance from decedent; and (4) the possibility of inheritance from decedent."  *Hollingsworth v. Roseland Wake Park, LLC*, No. 6:18-CV-06013 MAT, 2019 U.S. Dist. LEXIS 206801, at *11-*12 (W.D.N.Y. Nov. 29, 2019), *quoting Huthmacher v, Dunlop Tire Corp.*, 309 A.D. 2d 1175, 1176 (4th Dep't 2003).  The New York Court of Appeals outlined damages as "loss of support, voluntary assistance and possible inheritance, as well as medical and funeral expenses incidental to death, are injuries for which damages may be recovered…. The 'pecuniary injuries' caused by a wage earner's death may be calculated, in part, from factors relevant to the decedent's earning potential, such as present and future earnings, potential for advancement and probability of means to support heirs, as well as factors pertaining to the

13

decedent's age, character and condition, and the circumstances of the distributees." *See Gonzalez v. New York Housing Auth.*, 77 N.Y.2d 663, 668 (1991).

This breakdown of damages available for pecuniary loss under New York's wrongful-death statute has been incorporated into the economic-loss expert reports issued by Plaintiffs' expert, Dr. Stan V. Smith, that have been appended to the Eubanks Declaration as Exhibit C and filed under seal. Dr. Smith has opined in each case using his standard methodology to assess the economic loss sustained in each instance and outlines, introduces, and applies that methodology for each estate to provide a breakdown of both past and future losses for the following categories of damages: (1) loss of wages and benefits; (2) loss of pension benefits (they the exist); (3) loss of housekeeping and home management services; and (4) loss of value of life, also known as the loss of enjoyment of life. Dr. Smith states in each report, "[a]ll opinions . . . are rendered in accordance with generally accepted standards within the field of economics and are expressed to a reasonable degree of economic certainty." These categories of loss accord with the elements of compensable loss that have been developed by the courts to address wrongful-death damages under New York law. Therefore, Plaintiffs respectfully submit that the values for economic loss included on Exhibit A to the Eubanks Declaration be adopted for those claims as Exhibit A consists of individuals who were killed in New York on September 11, 2001 and who were not United States nationals at the time.

**B. Survival/Pain and Suffering Damages for the New York decedents Should Accord with the Court's Prior Determinations for Pain and Suffering Damages for U.S.-National 9/11 Decedents.**

As set forth above, New York law accepts damages for survival/conscious pain and suffering. This Court previously assessed the entitlement and value of pain and suffering awards to estates of U.S.-national decedents in this litigation. *See* ECF No. 2618 at 7-9. Again, because the damages sought under the federal cause of action under 28 U.S.C. § 1605A(c) and the state

common-law action for survival damages are indistinguishable, the Moving Plaintiffs submit that damages for survival/pain-and-suffering damages should be equivalent between U.S.-national decedents and non-U.S.-national decedents as their deaths were caused by the same act of state-sponsored terrorism—the terrorist attacks on September 11, 2001. Applying the same values for pain-and-suffering damages for the estates of those killed on September 11, 2001 would also follow the rationale adopted by the Court that "considerations of fairness dictate that the preexisting . . . damages framework applies to non-U.S. nationals as well." ECF No. 9666 at 9. Therefore, for the reasons articulated by this Court in the context of this MDL, the estates identified in Exhibit A respectfully request that the Court grant judgment for their decedents' survival/pain-and-suffering damages in the amount of $2,000,000 per estate. *See id.* at 9; ECF No. 2624 at 1, 3-4 (Judge Daniels awarding $2,000,000 per estate in *Havlish*).

## C.    Punitive Damages

In light of the Court's decision in related litigation to defer determination of punitive damage issues until a later stage of the litigation, Plaintiffs herein request permission to address the issue of punitive damages at a later date. *See, e.g*., ECF No. 3666 (Judge Daniels order in *Burnett/Iran*, authorizing other plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

## D.    Prejudgment Interest

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism. *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011). This Court awarded the *Havlish* plaintiffs prejudgment interest at a rate of 4.96% on their pain and suffering damages awards, to be calculated from September 11, 2001

until the date of judgment (ECF 2619 at 13-14). This Court, recognizing that prejudgment interest was appropriate in cases such as this case, adopted the magistrate judge's reasoning, finding that an award of prejudgment interest was appropriate and accepting the rate of 4.96%, as proposed by the *Havlish* plaintiffs' expert.

After the *Havlish* award, plaintiffs in *Ashton* and *Bauer* proposed, and the Court agreed, that prejudgment simple interest at the New York State statutory rate of nine percent per annum was appropriate in cases where the injuries arose in New York and the prejudgment interest used in *Havlish*, 4.96 percent per annum, compounded annually, should be reserved for only those cases where the injuries arose in other states. *See* ECF Nos. 3229 at 2; 3300 at 1; 3341 at 1.

The Second Circuit has held that New York State's statutory prejudgment interest rate should apply to the damages awarded to World Trade Center complex leaseholders in their litigation against American Airlines and United Airlines brought under the federal Air Transportation Safety and System Stabilization Act ("ATSSSA"). *World Trade Farmers Market, Inc. v. American Airlines, Inc.* (*In Re: September 11th Litigation*), 2015 U.S. App. LEXIS 16619, *66 (2d Cir. Sept. 17, 2015). In that case, the Second Circuit concluded that a federal cause of action under the ATSSSA must look to state rules concerning prejudgment interest. *Id.* Accordingly, the Second Circuit held that New York's statutory prejudgment interest rate of nine percent as opposed to a lower rate crafted under federal law, had to be applied to the plaintiffs' 9/11 claims. *Id.*

However, more recently, in *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent interest rate for prejudgment interest should be applied to all of the solatium claims. ECF No. 3363 at 28-29. Judge Daniels adopted Judge Netburn's *Hoglan* Report in its entirety and

applied the interest rate of 4.96 percent per annum, compounded annually to all of the claims. ECF No. 3384 at 6.

In light of the Court's decision in the *Hoglan* matter, applying the 4.96 percent rate to prejudgment interest, the *Burnett/Iran* Plaintiffs identified in Exhibit A respectfully request that the clerk be directed to award prejudgment interest at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001 until the date of the judgment.

## CONCLUSION

For all of the reasons herein, as well as those set forth in the submissions of the other plaintiffs in this case and plaintiffs in the other 9/11 related cases in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, the Moving Plaintiffs respectfully request that this Court enter judgments on their behalf in the amounts set forth in those exhibits addressing conscious pain and suffering/survival along with damages pursuant to New York wrongful death laws. Furthermore, the Moving Plaintiffs respectfully request that the Court: (1) award prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; (2) grant permission for the Moving Plaintiffs to seek punitive damages, economic damages, or other appropriate damages at a later date; and (3) grant permission for all similarly situated *Burnett* Plaintiffs to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Dated: June 26, 2024

Respectfully submitted,

MOTLEY RICE LLC

*/S/ John M. Eubanks*
John M. Eubanks, Esq.
Jodi Westbrook Flowers, Esq.
Robert T. Haefele, Esq.
John C. Duane, Esq.

28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Tel: (843) 216-9000
Fax: (843) 216-9450
Email: jeubanks@motleyrice.com

*Attorneys for Plaintiffs*