# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN) <br> ECF Case |

**This document relates to:**
   *Burnett, et al. v. Islamic Rep. of Iran, et al.*, No. 15-cv-9903 (GBD)(SN)

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF PARTIAL FINAL DEFAULT JUDGMENTS ON BEHALF OF FOUR NON-NATIONAL IMMEDIATE FAMILY MEMBERS (OR THEIR FUNCTIONAL EQUIVALENTS) OF NON-NATIONAL 9/11 DECEDENTS</u>

### (*BURNETT* NON-NATIONALS 7)

### INTRODUCTION

For the reasons set forth below and in the accompanying Declaration of John M. Eubanks ("Eubanks Declaration"), with exhibits, and the accompanying memorandum of law, Plaintiffs in the *Burnett* action pending before the Court seek partial default judgment awarding the four (4) Plaintiffs included in the exhibit to the Eubanks Declaration (the "Moving Plaintiffs"):

(1) damages for intentional infliction of emotional distress under state law for immediate family members who were not U.S. nationals on September 11, 2001 (in this instance siblings) of non-U.S.-national 9/11 decedents in the same per plaintiff amounts previously awarded as solatium damages by this Court to sibling plaintiffs under 28 U.S.C. § 1605A(c);

(2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment;

(3) permission for these four Plaintiffs to seek punitive damages or other damages at a later date; and

(4) for all other *Burnett* Plaintiffs whose claims are subject to the jurisdiction of this Court against the Islamic Republic of Iran, the Islamic Revolutionary Guard Corps, and the Central Bank of the Islamic Republic of Iran (collectively the "Iran Defendants") solely under the exception to sovereign immunity found at 28 U.S.C. § 1605B(b), to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Plaintiffs' request is made in connection with the judgment for default as to liability sought on April 30, 2024 against the Islamic Republic of Iran, the Islamic Revolutionary Guard Corps, and the Central Bank of the Islamic Republic of Iran (collectively, "the Iran Defendants") in the *Burnett* case. *See* ECF No. 9733.[1]

## PROCEDURAL BACKGROUND

The *Burnett* Plaintiffs sued the Iran Defendants in connection with the losses they sustained in the terrorist attacks on September 11, 2001.  On December 1, 2016, plaintiffs in the action *Burnett, et al. v. Islamic Rep. of Iran, et al.*, Case No. 15-cv-9903 (GBD)(SN) ("*Burnett/Iran*"), whose claims arose pursuant to the private right of action codified at 28 U.S.C. 1605A(c) moved for judgment as to liability only. 15-cv-9903, ECF Nos. 65, 66, amended on December 6, 2016, 15-cv-9903 ECF Nos. 68, 69.  On January 31, 2017, the Court entered judgment as to liability only against the Iran Defendants.  *See* 15-cv-9903, ECF No. 85.

Since the entry of liability under 28 U.S.C. § 1605A(c), this Court has awarded solatium damages to thousands of United States-national immediate family members of 9/11 decedents or non-U.S.-national immediate family members of U.S.-national 9/11 decedents pursuant to Section 1605A(c).  Now, the four Moving Plaintiffs who do not qualify for judgments under the exception

---

[1] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

to sovereign immunity found at 28 U.S.C. § 1605A—because they were not United States nationals on September 11, 2001 and neither was their loved one who was killed in the terrorist attacks— seek entry of partial final judgments against the Iran Defendants pursuant to the exception to sovereign immunity found at 28 U.S.C. § 1605B(b) and the "pass through" of 28 U.S.C. § 1606 to claims for intentional infliction of emotional distress under New York state law. These Plaintiffs submit that the Court possesses subject-matter jurisdiction and personal jurisdiction over the Iran Defendants.

## ARGUMENT

## I.     This Court Possesses Subject-Matter Jurisdiction Over the Iran Defendants.

This Court recently addressed liability for a non-U.S.-national plaintiff in the *King* case within this MDL who sustained personal injuries in the attacks on September 11, 2001 and awarded damages to this plaintiff.  *See* ECF No. 9666. The claims of non-U.S. national victims and their non-U.S. national family members cannot be brought pursuant to 28 U.S.C. § 1605A(c)—the statute upon which the Court has granted relief in its prior decisions—because to bring such an action requires that the plaintiff be "(1) a national of the United States, (2) a member of the armed forces, (3) an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment, or (4) the legal representative of a person described in paragraph (1), (2), or (3), for personal injury of death…."  *See* 28 U.S.C. §§ 1605A(c)(1)-(4).  The plaintiffs in this motion do not fall within the parameters required to pursue a cause of action based upon the terrorism exception.

Therefore, these plaintiffs look to 28 U.S.C. § 1605B(b) to provide jurisdiction over their claims.  This section provides:

> A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which money damages are sought against a foreign state for physical injury to person or property or death occurring in the United States and caused by—
>
> (1) an act of international terrorism in the United States; and
>
> (2) a tortious act or acts of the foreign state, or of any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, regardless where the tortious act or acts of the foreign state occurred.

28 U.S.C. § 1605B(b). Conspicuously absent from this exception to sovereign immunity is the requirement that the victim or their family members be U.S. nationals to pursue their claims. This differentiation between the terrorism exception found at Section 1605A and the Justice Against Sponsors of Terrorism Act found at Section 1605B derives from the location of the act of terrorism as "occurring in the United States."

The Supreme Court has held that "a foreign state is immune from the jurisdiction of courts in this country unless one of several enumerated exceptions to immunity applies. 28 U.S.C. §§ 1604, 1605-1607. If a suit falls within one of these exceptions, the FSIA provides subject-matter jurisdiction in federal district courts." *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1053 (2019). In addressing the application of the exception to sovereign immunity codified at 28 U.S.C. § 1605B(b) to the terrorist attacks on September 11, 2001, Magistrate Judge Netburn provided the following analysis (subsequently adopted by Judge Daniels)—adjusted to address the circumstances at issue in this motion—in recommending that the exception applies here to provide the Court with subject-matter jurisdiction:

> [The victims'] claims plainly satisfy many of 28 U.S.C. § 1605B(b)'s requirements. [They are] seeking "money damages" from Iran. [28 U.S.C. § 1605B(b)"; *see* No. 15-cv-09903, ECF No. 53 at 1082-88 (*Burnett* complaint [at issue in this motion]). Those damages are for "physical injur[ies]" [they] sustained "in the United States." 28 U.S.C. § 1605B(b); *see* ECF No. 9154-7 at ¶¶ 5-33; No. 15-cv-09903, ECF No. 53 at 1081. [Their] injuries were "caused" by the 9/11 Attacks. 28 U.S.C. § 1605B(b); *see* ECF No. 9154-7 at ¶¶ 5-33; No. 15-cv-09903, ECF No. 53

at 1081. And the 9/11 Attacks were "act[s] of international terrorism" on U.S. soil. 28 U.S.C. § 1605B(b); *see* No. 15-cv-09903, ECF No. 53 at 1081.

One element of 28 U.S.C. § 1605B(b) merits closer attention: the requirement that "a tortious act or acts of the foreign state" "caused" the injury. For FSIA purposes, "a tortious act" includes the "knowing or deliberately indifferent provision of material support to terrorists," and "cause" incorporates "the traditional test for proximate causation[:] . . . 'some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered.'" *In re Terrorist Attacks on Sept. 11, 2001*, 298 F. Supp. 3d 631, 643, 645 (S.D.N.Y. 2018) (quoting *Owens v. Republic of Sudan*, 864 F.3d 751, 794 (D.C. Cir. 2017)). In simple terms, there must be a link between a state's support for terrorism and the plaintiff's injuries.

The Court heard evidence linking Iran to the 9/11 Attacks in a 2011 hearing. Based on that record, it found that Iran was 'aware[] of[] and involve[d] in[]" al Qaeda's plans and provided "material support" to the terrorist group. *In re 9/11*, 2011 WL 13244047, at *26, 41. It concluded that Iran's "material support" proximately "caused" the 9/11 Attacks and, by extension, the resulting injuries. *Id.* at *41; *see* ECF No. 9154-7; *cf.* ECF No. 9274 at 3 (concluding that Iran proximately caused latent injuries). The evidence supporting those findings establishes the last element of 28 U.S.C. § 1605B(b)—that Iran's "tortious act[s]" "caused" [plaintiffs'] injuries. *See* ECF Nos. 2431, 2432, 2433, 2473.

*See* ECF No. 9506 at 6-7. Magistrate Judge Netburn correctly concluded that these cases meet the jurisdictional threshold for establishing subject-matter jurisdiction over the Iran Defendants under 28 U.S.C. § 1605B(b), and the Court is free to exercise subject-matter jurisdiction here. This conclusion was subsequently adopted by the Court. *See* ECF No. 9666 at 2-4. Therefore, as in the *King* case, this Court has subject-matter jurisdiction over these Plaintiffs' claims under 28 U.S.C. § 1330(a). *See* ECF No. 9506 at 7.

**II.     This Court Possesses Personal Jurisdiction Over the Iran Defendants.**

With subject-matter jurisdiction satisfied through the application of the exception found at 28 U.S.C. § 1605B(b), the Court must assess whether it has personal jurisdiction over the Defendants.  In *Harrison*, the Supreme Court held, "[t]he FSIA also provides personal jurisdiction 'where service has been made under [28 U.S.C. §] 1608." 139 S. Ct. at 1054.  Here, the Amended Complaint in this case was filed on February 8, 2016.  *See* 15-cv-9903, ECF No. 53.  Service of process on a foreign state or a political subdivision of a foreign state is governed by 28 U.S.C. § 1608(a) which "sets out in hierarchical order the . . . four methods by which '[s]ervice . . . shall be made.'" *Harrison*, 139 S. Ct. at 1054 (quoting 28 U.S.C. § 1608(a)).  There is no special arrangement for service of process between the Plaintiffs here and the Iran Defendants, so service on the Islamic Republic of Iran and its political subdivision the Islamic Revolutionary Guard Corps was not possible under 28 U.S.C. § 1608(a)(1).  Further, there is no applicable international convention on service of judicial documents to which both the United States and the Islamic Republic of Iran are parties such that service under 28 U.S.C. § 1608(a)(2) was also not possible.  On March 1, 2016, Plaintiffs requested service of process on the Islamic Republic of Iran and the Islamic Revolutionary Guard Corps pursuant to 28 U.S.C. § 1608(a)(3) by requesting that the requisite documents and Farsi translations be sent "by any form of mail requiring a signed receipt." The Clerk Certificate of Mailing on the Islamic Republic of Iran under 28 U.S.C. § 1608(a)(3) was docketed on March 7, 2016.  *See* 15-cv-9903, ECF No. 55.  The Clerk Certificate of Mailing on the Islamic Revolutionary Guard Corps was also docketed on March 7, 2016.  *See* 15-cv-9903, ECF No. 57.

On May 2, 2016, after more than 30 days had passed since the Clerk's March 7, 2016 Certificates of Mailing without any response from the Islamic Republic of Iran or the Islamic

Revolutionary Guard Corps, Plaintiffs sought service of process on these defendants pursuant to 28 U.S.C. § 1608(a)(4) via diplomatic channels through the U.S. Department of State. On October 28, 2016, the Clerk of the Court received proof of service from the U.S. Department of State for service on both the Islamic Republic of Iran and the Islamic Revolutionary Guard Corps stating that "the documents were delivered to the Iranian Ministry of Foreign Affairs under cover of diplomatic note numbers 1069-IE and 1070-IE dated and delivered on September 14, 2016." *See* 15-cv-9903, docket entry from October 28, 2016.

The Central Bank of the Islamic Republic of Iran is an "agency or instrumentality" of the Islamic Republic of Iran, and service of process on an agency or instrumentality of a foreign state is governed by 28 U.S.C. § 1608(b). Neither of the first two provisions in the hierarchical order of section 1608(b) applied in this instance, so on March 1, 2016, Plaintiffs requested service on the Central Bank of the Islamic Republic of Iran pursuant to 28 U.S.C. § 1608(b)(3). The Clerk's Certificate of Mailing on the Central Bank of the Islamic Republic of Iran was docketed on March 7, 2016. *See* 15-cv-9903, ECF No. 54. Plaintiffs received a return receipt indicating that service had been made on the Central Bank of the Islamic Republic of Iran on March 18, 2016. *See* 15-cv-9903, ECF No. 64.

Plaintiffs submitted their Affidavit of Service as to the Islamic Republic of Iran, the Islamic Revolutionary Guard Corps, and the Central Bank of the Islamic Republic of Iran pursuant to 28 U.S.C. § 1608 on November 10, 2016. Therefore, this Court possesses personal jurisdiction over the Iran Defendants in this case because service has been made pursuant to 28 U.S.C. § 1608.

## III. The Iran Defendants Have Defaulted.

Under 28 U.S.C. § 1608(d), "a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state shall serve an answer or other responsive pleading to the

complaint within sixty [60] days after service has been made under this section." On November 10, 2016, Plaintiffs filed a request for entry of a Clerk's Certificate of Default to be entered on or after November 15, 2016 which would have been the day after the expiration of the 60-day time period set forth in 28 U.S.C. § 1608(d). *See* 15-cv-9903, ECF No. 63 at ¶13. On December 5, 2016, the Clerk's Certificate of Default was entered against the Iran Defendants. *See* 15-cv-9903, ECF No. 67. The Iran Defendants have not appeared at any point in this litigation even after entry of the Clerk's Certificate of Default.

**IV.  The Iran Defendants are Liable for Intentional Infliction of Emotional Distress ("IIED") Under New York Law.**

In prior judgments entered on behalf of Plaintiffs in this case against Iran, the Court has looked to 28 U.S.C. § 1605A(c) that provides a cause of action for U.S. nationals injured or killed in terrorist attacks supported by designated state sponsors of terrorism. The Moving Plaintiffs in this motion seek damages against the Iran Defendants despite their status as non-U.S.-nationals at the time that their family members perished in the 9/11 attacks. As set forth above, this Court possesses jurisdiction over these Plaintiffs' claims under 28 U.S.C. § 1605B(b), and the application of this exception to foreign sovereign immunity triggers the language in 28 U.S.C. § 1606 which provides that a foreign sovereign who is not entitled to immunity "shall be liable in the same manner and to the same extent as a private individual under like circumstances." The D.C. Circuit has read this provision to ensure that "if an FSIA exception abrogates immunity, plaintiffs may bring state law claims that they could have brought if the defendant were a private individual." *Oveissi v. Islamic Rep. of Iran*, 573 F.3d 835, 841 (D.C. Cir. 2009). The Amended Complaint in this case does not explicitly include claims for IIED under New York or Virginia law. As the Court explained in the context of common law claims for assault and battery:

> The crux of default is a defendant's admission of the "factual allegations" laid out in the complaint. "[I]t remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action . . . ."
>
> In the FSIA context, "[w]hile [plaintiffs] d[o] not have to identify the specific source of law in [their] complaint," they must "do so at an appropriate time in the litigation." Plaintiff has certainly asserted assault and battery claims in the instant motion. This Court agrees with Magistrate Judge Netburn's conclusion that because (a) Plaintiff's complaint alleges facts which "cogently charge[] Iran with legal responsibility for his injuries," and (b) Plaintiff has clearly identified assault and battery causes of action in the instant motion, this Court may consider Plaintiff's assault and battery claims against Iran.

ECF No. 9666 at 6-7 (citations omitted).

The four Moving Plaintiffs have precisely followed this precedent. These Plaintiffs pleaded factual allegations that clearly asserted the Iran Defendants' legal responsibility for the death of their family members on 9/11:

- "**Iran . . . entered into an alliance with al-Qaeda** . . . to work together to conduct terrorist operations against the United States." No. 15-cv-09903, ECF No. 53 at ¶ 4976.

- Through that partnership, "**Iran . . . had actual foreknowledge of[] . . . the 9/11 [A]ttacks** . . . [,] which were carried out by members of al-Qaeda." *Id*. at ¶ 5006.

- In the lead up to 9/11, "**Iran . . . assist[ed] in, and contribut[ed] to, the preparation and execution of the plans**" for the Attacks, *id*. at ¶ 4951, including by providing "instruction, training, direction, financing, and support" to al Qaeda, *id*. at ¶ 5031.

- "**In furtherance of those plans, the al-Qaeda hijackers deliberately caused planes to crash into the World Trade Center Towers,** the Pentagon, and a field in Shanksville, Pennsylvania on September 11, 2001." *Id*. One of the hijacked planes, "American Airlines Flight 11[,] . . . crashed . . . into the North Tower of the World Trade Center in New York . . . , **causing** the collapse of the tower, the deaths of the 9/11 Decedents, and **injuries** to other plaintiffs," including the Non-U.S. National Plaintiffs. *Id*. at ¶ 5013.

Further, they have pleaded factual allegations that support their own claims to injuries sustained through their loss:

- "The support provided by Iran included assistance in, and contribution to, the preparation and execution of the plans that culminated in the hijacked flights, the

extrajudicial killings of the 9/11 Decedents, and the injuries to the surviving plaintiffs." No. 15-cv-09903, ECF No. 53 at ¶ 4951.

- "As a direct and proximate result of the intentional, willful, reckless, and careless actions of Defendants, all Plaintiffs have suffered severe and permanent personal injuries, damages, and losses, including … loss of consortium, solatium, and/or companionship…." *Id.* at ¶ 5032.

- "As a direct and proximate result of the Defendants' cowardly, barbaric and outrageous acts of murder, Plaintiffs will forever grieve the deaths of the 9/11 Decedents." *Id.* at ¶ 5043.

- "…the estates, survivors and family members of the 9/11 Decedents … are entitled to recover damages against Defendants for injury, wrongful death, survival, intentional infliction of emotional distress, and solatium." *Id.* at ¶ 5053.

- "As a direct and proximate result of the Defendants' acts …, the heirs and families of those murdered suffer and will continue to suffer permanent, physical and emotional distress, severe trauma, and lasting physical, emotional, and psychological injuries." *Id.* at ¶ 5065.

Therefore, by implication, the four Moving Plaintiffs have identified IIED as an appropriate cause of action in the Amended Complaint and also in the instant motion for default judgment. Thus, this Court should rely upon this theory of liability in reviewing the evidence to determine that these plaintiffs are entitled to the relief sought.

### A.    Choice-of-law Analysis

Where the Court has determined that an exception to immunity applies, and 28 U.S.C. § 1606 is implicated, then the choice-of-law rules applicable to any other actor within this forum would apply here—that is, New York's choice-of-law analysis applies here. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 124 S. Ct. 1502, 1508 (2022); *see also Barkanic v. Gen. Admin. of Civ. Aviation of People's Rep. of China*, 923 F.2d 957, 959-60 (2d Cir. 1991). Therefore, the Iran Defendants are subject to suit for IIED in the same manner that other private defendants would be.

10

New York has different choice-of-law rules for different types of claims. IIED claims are considered "conduct-regulating," so the law of the " 'place of the tort' " controls. *Padula v. Lilarn Prop. Corp.*, 84 N.Y.2d 519, 522 (1994) (quoting *Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 196 (1985)). For current purposes, that "place" is the jurisdiction "where the last event necessary to make the [defendant liable occurred," even if "the defendant's [mis]conduct … occurred … in another [jurisdiction]." *Schultz*, 65 N.Y.2d at 195 (1985). As this Court explained in a prior Order on the choice of law issue in the instant context for non-U.S. national family members, the relevant events occurred when al Qaeda terrorists crashed hijacked passenger jets into "the Twin Towers, a field near Shanksville, and the Pentagon." *See* ECF No. 9287 at 4. Accordingly, the claims brought in this motion are by siblings of individuals killed in the terrorist attacks on September 11, 2001 in New York making their claims to be governed by New York law. New York law requires courts to analyze choice-of-law on a party-versus-party or tort-by-tort basis, not by looking at the case as a whole. *See Edwards v. Erie Coach Lines Co.*, 17 N.Y.3d 306, 329 (2011). Thus, the Court must analyze the IIED claims of the respective Moving Plaintiffs under New York law.

**B.     Plaintiffs Have Properly Pleaded IIED Claims Under New York.**

Under New York law, the following are the elements of an IIED claim: (1) extreme and outrageous conduct, (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress, (3) a causal connection between the conduct and injury, and (4) severe emotional distress. *Petkewicz v. Dutchess Cty. Dep't of Cmty. & Fam. Servs.*, 137 A.D.3d 990, 27 N.Y.S.3d 264 (2016). As this Court has previously recognized, an IIED claim under New York law also generally requires that the plaintiff witness or be present for the outrageous conduct. *See* ECF No. 9287 at 6. However, as discussed *infra*, courts have concluded that the presence element of an IIED claim is not required in the special context of family members suing state sponsors of terrorism (like Iran) under Section 1605A. *See, e.g.*, *Peterson v. Islamic Republic of Iran*, 515 F.

Supp. 2d 25, 42 (D.D.C. 2007) (collecting cases and discussing the exception to the presence element for an IIED claim under various state laws); *Republic of Sudan v. Owens*, 194 A.3d 38, 40 (D.C. 2018) (answering certified question from United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit")); and *Kumar v. Republic of Sudan*, 2019 WL 13251350, at 12-13 (E.D. Va. July 31, 2019) (finding that "presence" is not required in the "special context" of a civil suit against a state sponsor of terror).

With regard to the first four elements of an IIED claim under either New York law, Moving Plaintiffs submit that an act of terrorism is by definition extreme and outrageous and is intended to cause the highest degree of emotional distress. *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 78, 89 (D.D.C. 2002). The Moving Plaintiffs have clearly met the first four requisite elements of an IIED claim under New York state law. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 (GBD), 2011 WL 13244047 (S.D.N.Y. Dec. 22, 2011) (conclusions of law ¶¶ 18-35) (ECF No. 2515). This Court has previously found that "[t]he 9/11 terrorist attacks are contrary to the guarantees 'recognized as indispensable by civilized peoples.'" ECF No. 2515 at 50. Further, this Court also found that "plaintiffs have established that the 9/11 attacks were caused by Defendants' [including Iran's] provision of material support to al Qaeda," *id*. at 52, and met the solatium requirements under 1605A(c). *Id*. at 53.

This Court specifically found Iran liable for providing wide-ranging material support for al Qaeda in connection with the 9/11 Attacks. Under the above-referenced black letter law, this conduct clearly is "outrageous" and "extreme," clearly disregarded "a substantial probability of causing, severe emotional distress" and caused resulting emotional distress. While this Court previously found Iran liable under Section 1605A and therefore "an analysis of liability under state law [wa]s unnecessary", *id*. at n.9, this Court then cited *Owens v. Republic of Sudan*, 826 F.Supp.2d

128 (D.D.C. 2011), a case which found Sudan liable under state common law for similar facilitating conduct. In a subsequent decision less than a year later, this Court then entered judgments against non-sovereign defendants under state law traditional tort principles, for similarly facilitating conduct Iran was found to have committed. *See* ECF No. 2618 at 14. The Court should similarly conclude that under New York state law, the Moving Plaintiffs have met the first four elements of an IIED claim based upon Iran's actions in support of the 9/11 Attacks.

### C.    The "Presence" requirement in IIED cases is overruled in situations involving state-sponsored terrorism.

As referenced above, courts in the District of Columbia, relying upon the Second Restatement of Torts[2], have specifically concluded that the "presence" element is not required to sustain an IIED claim in the unique context of a family member's civil suit against a state sponsor of terror like Iran for the death of a loved one. The District of Columbia's highest state court has confirmed that the IIED elements established in the Second Restatement of Torts provide the proper standard to apply. *Republic of Sudan v. Owens (Owens III)*, 194 A.3d 38, 41 (D.C. 2018). As the *Owens III* court explained, the "elements of an IIED claim arising from injury to a member of the plaintiff's immediate family" are established by § 46 of the Restatement, which sets out the following elements of IIED liability:

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
    (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
    (b) to any other person who is present at the time, if such distress results in bodily harm.

---

[2] Like the District of Columbia, New York has also adopted the Second Restatement's formulation of the cause of action for IIED. *See Taggart v. Costabile*, 131 A.D.3d 243, 249, 14 N.Y.S.3d 388, 393 (2015) (noting that the New York Court of Appeals first adopted the Second Restatement's formulation of intentional infliction of emotional distress in *Fischer v. Maloney*, 43 N.Y.2d 553, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (1978)).

*Id*. (*quoting* the Second Restatement of Torts § 46 (1968)).

Importantly, the *Owens III* court went on to clarify that a claimant who alleges emotional distress arising from a terrorist attack that injured or killed a family member need not have been present at the scene of the attack to state a cognizable IIED claim for relief. *Id*. at 42–45. In other words, the court "held that when emotional distress is caused by conduct directed at a member of a plaintiff's family, the plaintiff must," as a general rule, be "present at the time" of the conduct in order to make out an IIED claim[,]" but also "carved out" what it called 'the FSIA Terrorism Exception' to the presence requirement" in the limited context of "cases brought under § 1605A," *Owens v. Republic of Sudan (Owens IV)*, 924 F.3d 1256, 1259 (D.C. Cir. 2019) (*quoting Owens III*, 194 A.3d at 41, 42). The Court specifically found this exception to be permitted by the comments to the Restatement itself. *See Owens III*, 194 A.3d at 42 (*citing* the Second Restatement of Torts § 46 (1968) Caveat & cmt. i).

Thus, *Owens III* confirmed that the same general principles of tort law that govern the claims brought by directly injured plaintiffs within one of 1605A's enumerated categories also govern claims brought by immediate family members who pursued claims via District of Columbia law. Indeed, several other courts have reached the same conclusion with regard to the FSIA terrorism exception to the "presence" requirement for a successful IIED claim. *See, e.g.*, *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 43–44 (D.D.C. 2007) (collecting cases and specifically finding that New York and Virginia law would allow IIED claims to be brought by family members in the terrorism context without having to establish a presence requirement); *Barry v. Islamic Republic of Iran*, 437 F.Supp.3d 15, 51 (D.D.C. 2020) (relying on *Owens III* in finding that the presence element is not required in the unique context of IIED claims brought by family members against a state sponsor of terror); *Kumar v. Republic of Sudan*, 2019 WL

13251350, at *12-13 (E.D. Va. July 31, 2019) (finding that "presence" is not required in the "special context" of a civil suit against a state sponsor of terror); and *Maxwell v. Islamic Republic of Iran*, No. 22-cv-173 (RC), 2024 WL 1342775, at *25 (D.D.C. Mar. 29, 2024) (same).

Similarly, the Moving Plaintiffs submit that under New York law, they were not required to be present during the terror attacks in order to sustain their IIED claims in this unique context of a civil suit against a state sponsor of terror.[3]  As District of Columbia law demonstrates, courts (like New York and Virginia) that apply the Second Restatement have found that the Restatement's exception to the presence requirement for "conduct ... directed at a third person," *see* Second Restatement of Torts, § 46, comment 1, applies in FSIA cases because "a terrorist attack-by its nature-is directed not only at the victims but also at the victims' families." *Peterson  v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 43–44 (D.D.C. 2007) (citation and quotation omitted) (collecting cases and concluding that New York would not apply a presence requirement given the severe nature of terrorist attacks). Thus, the Moving Plaintiffs submit that New York law would recognize this exception to the presence requirement. To hold otherwise would "do little more than shield culpable defendants (like Iran) from liability and deny relief to deserving plaintiffs." *Owens III*, 194 A.3d at 44.

## V.    IIED Damages Should be Awarded to the Immediate-Family-Member Plaintiffs Here Under the Court's Previously Adopted Solatium Damages Framework.

The four Moving Plaintiffs further request that this Court grant them partial default judgment as to damages against the Iran Defendants. Plaintiffs respectfully submit that the Court should adopt and apply the same damages procedures here that the Court has applied in this case to actions maintained under § 1605A. Equity dictates that non-U.S. national Plaintiffs be entitled

---

[3] Alternatively, the Moving Plaintiffs argue that they have otherwise met the presence requirement for IIED claims as the tragic events of September 11, 2001, were broadcast live around the world in real time. These family members watched as the Twin Towers collapsed on their loved ones.

to the same damages regime as had been applied to § 1605A claims throughout this case. *See* ECF No. 2618 at 14 (awarding *Havlish* plaintiffs common law damages against non-sovereign defendants in same amounts as § 1605A claims against Iran "under traditional tort principles" even though *Havlish* plaintiffs did not maintain Anti-Terrorism Act claims against these defendants and Section 1605A claims were inapplicable as to these defendants).

Accordingly, while § 1605B(b) confers jurisdiction, the appropriate damages framework for Plaintiffs' common-law claims should be the same framework that has been applied to claims maintained under § 1605A, as set forth below. This is also true given the determination by this Court and others that there exists an "interest in promoting uniformity of determinations with respect to [state sponsored terrorist acts]." *See* ECF No. 3363 at 2. This is further underscored by this Court's rationale as stated in the *King* case that "considerations of fairness dictate that the preexisting ... damages framework applies to non-U.S. nationals as well." ECF No. 9666 at 9. Magistrate Judge Netburn's Report and Recommendation (adopted by the Court) provided a salient rationale that "doing so will promote the efficient adjudication of this litigation and, more importantly, restore a measure of parity to plaintiffs of different nationalities.... [T]he 9/11 Attacks did not just devastate U.S. nationals and their families; they killed 372 people from over 90 countries and injured many more. And yet, non-U.S. nationals have not shared in the default judgments entered against Iran in this litigation—largely due to legal hurdles unique to their claims. As we parse these issues and grant judgments in favor of non-U.S. national plaintiffs, justice demands that we honor their losses as we do those of U.S. nationals." ECF No. 9506 a 14.

The four Moving Plaintiffs now respectfully request that this Court grant them an Order awarding them (1) IIED damages for the losses they suffered as the immediate family members (in this instance siblings) of their decedents in the same per plaintiff amounts previously awarded

by this Court to U.S.-national solatium claimants under 28 U.S.C. § 1605A(c), namely, $4,250,000 to the sibling of a 9/11 decedent; (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; (3) permission for the four Moving Plaintiffs to seek punitive damages or other damages at a later date; and (4) for all other similarly situated *Burnett* Plaintiffs to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

When previously awarding solatium damages in this case under 28 U.S.C. § 1605A(c), this Court has looked at the framework established by District Judge Royce C. Lamberth in *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006), where the court awarded solatium damages to each spouse of a deceased victim in the amount of $8 million, to each parent in the amount of $5 million, and to each sibling in the amount of $2.5 million. *Id*. This formula, however, may be adjusted upward or downward when circumstances warrant. *See, e.g., Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 1 50, 156 (D.D.C. 2011); *Valore*, 700 F. Supp. 2d at 85.

Analyzing the solatium claims of the families of the *Havlish* victims who perished in the 9/11 Attacks, Magistrate Judge Maas concluded that an upward departure from Judge Lamberth's framework in *Heiser* was appropriate. In *Havlish*, Judge Maas explained that an upward departure was warranted because the decedents' immediate family members suffered, and continue to suffer, "profound agony and grief and, [w]orse yet, . . . are faced with frequent reminders of the events of that day." *See* ECF No. 2619 at 10-12. Judge Maas noted in his July 30, 2012 Report and Recommendation the "extraordinarily tragic circumstances surrounding the 9/11 Attacks and their indelible impact on the lives of the victims' families." *Id*. at 11. In that Report, with which this

Court later agreed, Magistrate Judge Maas recommended that solatium damages be awarded to the immediate family members of the victims of the 9/11 Attacks in the following amounts:

| Relationship of Decedent | Solatium Award |
| --- | --- |
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

ECF No. 2619 at 11.

The solatium IIED damages suffered by the four Moving Plaintiffs before the Court in this application are legally and factually comparable to those suffered by the other plaintiffs in *Burnett* and the plaintiffs in the *Havlish*, *Ashton*, *Bauer*, and *Hoglan* cases. Therefore, the four Moving Plaintiffs respectfully request that the Court grant them awards of IIED damages in the same amounts awarded to solatium claimants under the terrorism exception.

**VI.     Plaintiffs will Seek Punitive Damages at a Later Date.**

In light of the Court's decision in related litigation to defer determination of punitive damage issues until a later stage of the litigation, Plaintiffs herein request permission to address the issue of punitive damages at a later date. *See, e.g.*, ECF No. 3666 (Judge Daniels order in *Burnett*, authorizing other plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

**VII.    The Court Should Award Prejudgment Interest at 4.96 Percent Per Annum, Compounded Annually to all of the claims from September 11, 2001 Through the Date of Judgment.**

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism. *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011).  This Court awarded the *Havlish* plaintiffs prejudgment interest at a rate

of 4.96% on their pain and suffering damages awards, to be calculated from September 11, 2001 until the date of judgment (ECF 2619 at 13-14).  This Court, recognizing that prejudgment interest was appropriate in cases such as this case, adopted the magistrate judge's reasoning, finding that an award of prejudgment interest was appropriate and accepting the rate of 4.96%, as proposed by the *Havlish* plaintiffs' expert.

After the *Havlish* award, plaintiffs in *Ashton* and *Bauer* proposed, and the Court agreed, that prejudgment simple interest at the New York State statutory rate of nine percent per annum was appropriate in cases where the injuries arose in New York and the prejudgment interest used in *Havlish*, 4.96 percent per annum, compounded annually, should be reserved for only those cases where the injuries arose in other states.  *See* ECF Nos. 3229 at 2; 3300 at 1; 3341 at 1.

The Second Circuit has held that New York State's statutory prejudgment interest rate should apply to the damages awarded to World Trade Center complex leaseholders in their litigation against American Airlines and United Airlines brought under the federal Air Transportation Safety and System Stabilization Act ("ATSSSA").  *World Trade Farmers Market, Inc. v. American Airlines, Inc.* (*In Re: September 11th Litigation*), 2015 U.S. App. LEXIS 16619, *66 (2d Cir. Sept. 17, 2015). In that case, the Second Circuit concluded that a federal cause of action under the ATSSSA must look to state rules concerning prejudgment interest.  *Id*. Accordingly, the Second Circuit held that New York's statutory prejudgment interest rate of nine percent as opposed to a lower rate crafted under federal law, had to be applied to the plaintiffs' 9/11 claims.  *Id*.

However, more recently, in *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent interest rate for prejudgment interest should be applied to all of the solatium claims. ECF No. 3363 at 28-29. Judge Daniels adopted Judge Netburn's *Hoglan* Report in its entirety and

applied the interest rate of 4.96 percent per annum, compounded annually to all of the claims. ECF No. 3384 at 6.

In light of the Court's decision in the *Hoglan* matter, applying the 4.96 percent rate to prejudgment interest, the four Moving Plaintiffs respectfully request that the clerk be directed to award prejudgment interest at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001 until the date of the judgment.

## CONCLUSION

For all of the reasons herein, as well as those set forth in the submissions of the other plaintiffs in this case and plaintiffs in the other 9/11-related cases in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, the four Moving Plaintiffs (who are identified on Exhibit A to the Eubanks Declaration) respectfully request that this Court award them IIED damages of $4,250,000 per sibling as they are all siblings of non-U.S.-national 9/11 decedents. They also request that the Court: (1) award prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; (2) grant permission for them to seek punitive damages or other appropriate damages at a later date; and (3) grant permission for all similarly situated *Burnett* Plaintiffs o submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Dated:  June 28, 2024                                  Respectfully submitted,

                                                         MOTLEY RICE LLC


                                                         */S/ John M. Eubanks*
                                                         John M. Eubanks, Esq.
                                                         Jodi Westbrook Flowers, Esq.
                                                         Robert T. Haefele, Esq.
                                                         John C. Duane, Esq.

28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Tel: (843) 216-9000
Fax: (843) 216-9450
Email: jeubanks@motleyrice.com

*Attorneys for Plaintiffs*