

David E. McCraw
Senior Vice President
& Deputy General Counsel

T 212 556 4031
mccraw@nytimes.com

620 8th Avenue
New York, NY 10018
nytimes.com

July 8, 2024

**VIA ECF**

The Honorable George B. Daniels
United States District Judge
Daniel P. Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

The Honorable Sarah Netburn
United States Magistrate Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 430
New York, NY 10007

Re:   *In re: Terrorist Attacks on September 11, 2001*, 03-md-1570 — Timely Unsealing of Judicial Records

Dear Judge Daniels and Judge Netburn:

The New York Times Company ("The Times") respectfully submits this letter in support of the Plaintiffs' letter of June 13 regarding the timely unsealing of judicial records in the above-captioned case. Dkt. 9901. Assuring the public's common law and constitutional rights of access is especially crucial here, where the documents at issue relate to the Kingdom of Saudi Arabia's (the "Kingdom") dispositive motion in a case of immense public interest and importance.

In particular, we join Plaintiffs in respectfully requesting (a) that the Court review the sealed documents under the applicable Second Circuit standard for unsealing and (b) that the determination of sealing issues be made before there is a hearing on the dispositive motion, so that the public has an opportunity to fully understand the evidence and

1

legal arguments being presented. If Your Honors prefer, The Times is prepared to intervene by formal motion.

Given the scale of this proceeding, the volume of sealed material is substantial. Thus, though we believe that much of the material should be unsealed, we are narrowing the current application. Specifically, The Times respectfully asks the Court to prioritize the unsealing of Plaintiffs' and Defendants' initial averments, filed in support of and opposition to the Kingdom's motion to dismiss. *See* Dkt. 9390-1 (Kingdom's Averment); Dkt. 9541-1 (Plaintiffs' Averment). *See also* Dkt. 9902-1 (identifying averments on docket). That request includes any exhibits attached to the averments, in any form.[1]

Both the First Amendment and common law rights of access to judicial records justify unsealing. Such rights are well-settled and fundamental to the American principle of self-government. "The notion that the public should have access to the proceedings and documents of courts is integral to our system of government." *United States v. Erie County*, 763 F.3d 235, 238-39 (2d Cir. 2014). "[P]ublic monitoring of the judicial system fosters important values of quality, honesty, and respect for our legal system." *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 9-10 (1st Cir. 1998) (cleaned up).

The Common Law Right of Access

In adjudicating the common law right of access, "court[s] must first conclude that the documents at issue are indeed 'judicial documents'" subject to the common law right of access, then "determine the weight of that presumption" of access, and finally "balance [any] competing considerations against it." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006).

First, there is no question that the filings are judicial documents. Under *Lugosch*, judicial documents are any documents "relevant to the

---

[1] In this vein, The Times supports Plaintiffs' proposal to "make available copies of all publicly filed DVDs upon request" and "provide counsel's contact information for this purpose when filing the DVD on the ECF." Dkt. 9900 at 1.

2

performance of the judicial function and useful in the judicial process." *Id.* at 119. Second, the presumption of access is especially strong when the submissions are submitted to influence a court on a dispositive determination. For example, "documents used by parties moving for, or opposing, summary judgment should not remain under seal *absent the most compelling reasons*." *Id.* at 123 (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)). Here, a decision in favor of the Kingdom will terminate the proceedings — the quintessential case for maximum public access. *See, e.g.*, *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019) (recognizing greater presumption of access for documents filed "in connection with dispositive motions such as motions for dismissal or summary judgment").

Third, any public interest balancing tips decidedly in favor of access. The public interest is at its apex here, where 9/11 survivors and victims' families have made serious allegations against a foreign ally related to possible involvement in the worst terrorist attack in American history. Monitoring of the judicial process is always vital, as transparency and accountability foster faith in democratic institutions. But this is especially true in a case where victims of brutal terrorism have spent decades seeking justice.

Meanwhile, the Kingdom's asserted harm, in publicizing confidential information, is vague and insufficient to justify sealing. *See, e.g.*, *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 169 (S.D.N.Y. 2018). The Kingdom asserts that "[m]ost of the sealing requests at issue involve diplomatic or consular documents protected by the Vienna Conventions" and "[s]ome involve confidentiality requests made by non-governmental Saudi organizations." Dkt. 9902 at 3. But, as Plaintiffs point out, the Kingdom is not the proper entity to be balancing the weight of the public access right against its own confidentiality interests. *See* Dkt. 9885 at 4. That is the role of the Court. And to the extent privacy or other serious concerns are implicated, targeted redaction, rather than wholesale sealing, is the appropriate remedy. *See United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995).

The Kingdom's proposed solution is to maintain the status quo, wherein the FBI reviews sealed materials to determine what can be disclosed, based on the proposed redactions of the Kingdom and the filing party. *See* Dkt. 9434. The Times supports Plaintiffs' proposed briefing on the Kingdom's sealing designations, which appropriately places the burden on the Kingdom to justify its sealing requests. *See* Dkt. 9901 at 5. That proposal also ensures that the Court, rather than the parties and the FBI, will adjudicate public access.

### The First Amendment Right of Access

The First Amendment provides an independent basis for access and sets a more stringent test for those seeking to keep judicial documents under seal. To determine whether the First Amendment right of access attaches, courts first determine whether the materials at issue are judicial documents, *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016), then apply the Supreme Court's experience and logic test. The experience prong looks to whether the records and processes at issue "have historically been open to the press and general public," while the logic prong examines "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter. Co. v. Super. Ct. of Calif.* (*Press-Enterprise II*), 478 U.S. 1, 8 (1986).

Both prongs apply straightforwardly to documents submitted in support of dispositive motions. *See, e.g.*, *Lugosch*, 435 F.3d at 121 ("strong presumption of access" attaches to documents submitted with dispositive motion "under both the common law and the First Amendment"). And where the First Amendment right of access attaches, the records cannot be kept from the public "unless specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Press-Enterprise II*, 478 U.S. at 13-14 (quoting *Press-Enter. Co. v. Super. Ct. of Calif.* (*Press-Enterprise I*), 464 U.S. 501, 510 (1984)). No such specific or on-the-record showing has been made here. For the reasons set forth above, the broad, countervailing

interests posed by the Kingdon are insufficient to overcome the presumption of access.

Timing of Disclosures

Furthermore, as Plaintiffs also underscore, a grant of access in and of itself is not sufficient: timely access is necessary to serve the functions of public oversight and accountability. *See Lugosch*, 435 F.3d at 113 (recognizing that "judicial documents [are subject to] a presumption of immediate access [] under both the common law and the First Amendment"). Particularly given the immense public interest in this case — and the value of having a public and press able to understand the proceedings in advance of a dispositive hearing — timely access is pivotal. We respectfully ask that the dispositive hearing be held 10 days after the now-sealed materials are made public.

Finally, it is worth spending a moment refuting the Kingdom's implication that the right of access is less urgent when a media motion to unseal is not pending. As Plaintiffs note, Dkt. 9901 at 2, Defendant seeks to distinguish the right of access enshrined in *Lugosch* from the instant case, given the pending unsealing motion there, Dkt. 9902 at 3. It is true that, given The Times's deep and inherent interest in transparency, it and other media organizations are well-suited to fight for robust public access. *See, e.g.*, *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 609 n.25 (1982) (affirming media standing to enforce right of access). But The Times merely stands in the shoes of the public. The right of access — under both the First Amendment and common law — is a right for all. Thus, the absence of a pending unsealing motion is immaterial to the pressing need for access.

We thank the Court for its consideration of The Times's position.

Sincerely,

*David McCraw*

David E. McCraw