

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

July 10, 2024

<u>Via ECF</u>
The Honorable Sarah Netburn
United States Magistrate Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *In re Terrorist Attacks of September 11, 2001*, 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

In accordance with the Court's June 27, 2024 Order (ECF No. 10031), we write in response to the unsealing request of the Plaintiffs' Executive Committees ("PECs") (ECF No. 9885), joined by *The New York Times Company* ("*The Times*") (ECF No. 10067), and *Pro Publica* (ECF No. 10071), to provide the Federal Bureau of Investigation's ("FBI's") position on the unsealing of records (or portions of records) filed in connection with the Kingdom of Saudi Arabia's and Dallah Avco's pending motions, in advance of the oral argument scheduled for July 31, 2024 (ECF No. 10020).

**A. The FBI's Privacy Act Redactions**

The majority of the information currently sealed at the request of the FBI is subject to the Privacy Act of 1974, as amended, 5 U.S.C. § 552a ("Privacy Act"), which prohibits disclosure of records concerning certain individuals kept in government record systems except in limited circumstances, including where permitted by court order, *see id.* § 552a(b)(11). This Court previously issued such an order, *see* Privacy Act and Protective Order for FBI Documents (ECF No. 4255 ("FBI Protective Order")), which authorized the FBI "to produce information that otherwise would be prohibited from disclosure under the Privacy Act," *id.* ¶ 1. "Protected Information" under the FBI Protective Order explicitly includes "information protected from disclosure by the Privacy Act." *Id.* ¶ 2.

Consistent with the Privacy Act and the FBI Protective Order, the FBI has requested that the parties redact from their motion papers the names of and information concerning U.S. persons derived from documents produced by the FBI in this litigation. The Protected Information in these filings varies widely in its potential relevance to the matters at issue in the pending motions. Some of the individuals whose information is at issue are at the heart of the factual matters being litigated, while others appear to have limited or no connection to them. Some of the individuals at issue are represented by counsel and have been notified that they have an opportunity to seek to keep their

information under seal; however, many others have not been notified, and still others may not even be aware that records about them exist and are part of the factual record of this case.

The FBI has met and conferred with the PECs and understands that they now seek to unseal the following material subject to the FBI Protective Order: (i) all FBI redactions in the parties' briefs and averments, and (ii) all records (including declarations and exhibits) cited in the parties' briefs and averments. *The Times* has joined in the PECs' unsealing request, but asks the Court to prioritize unsealing of the Kingdom's and the PECs' initial averments (ECF Nos. 9390-1 and 9541-1), including any exhibits attached to those averments.[1] (ECF No. 10067 at 2). Accordingly, the main questions for the Court are whether it should issue a further Privacy Act Order pursuant to 5 U.S.C. § 552a(b)(11) unsealing information that currently remains protected from public disclosure by the Privacy Act and the FBI Protective Order, and the scope of such an order.

### B. Legal Framework

To answer these questions, the Court should apply the three-step test articulated in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006), to determine whether there is a common law right of access to the documents at issue. Under this test, a court first determines whether the documents are "judicial documents." *Id.* "In order to be designated a judicial document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'" *Id.* (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*")). "If a court determines that the documents at issue are judicial documents to which the presumption of access applies, then in the second step 'it must determine the weight of that presumption.'" *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542 (VSB), 2023 WL 196134, at *2 (S.D.N.Y. Jan. 17, 2023) (quoting *Lugosch*, 435 F.3d at 119). The "presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*"). In the third step, "after determining the weight of the presumption of access, the court must 'balance competing considerations against it.'" *Lugosch*, 435 F.3d at 120 (quoting *Amodeo II*, 71 F.3d at 1050).

In addition to setting forth this common law analysis, *Lugosch* articulated similar approaches "for determining whether the public and the press should receive First Amendment protection in their attempts to access certain judicial documents." *Lugosch*, 435 F.3d at 110 (internal quotation marks and citations omitted). However, the Second Circuit has counseled that "courts [should] first look to the common law, for [they] need not, and should not, reach the First Amendment issue if judgment can be rendered on some other basis." *In re Application of Newsday, Inc.*, 895 F.2d 74, 78 (2d Cir. 1990); *see also In re Telegraph Media Group Ltd.*, 23-MC-215 (JGLC), 2023 WL 5770115, at *6 (S.D.N.Y. Sept. 6, 2023).

Under the First Amendment test, a court must first conclude that a particular record (or portion of a record) is a *bona fide* judicial document, as described above. *Lugosch*, 435 F.3d at

---

[1] There do not appear to be any exhibits attached to these factual averments. It is possible *The Times* intended to refer to the exhibits cited in the averments, which are voluminous.

120. The court then must decide whether a particular judicial document has "'historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the particular process in question.'" *Id.* at 120 (describing "experience and logic" test (citation omitted)). In the second step, some courts have alternatively considered whether a particular judicial document (or portion thereof) is "'derived from or [is] a necessary corollary of the capacity to attend the relevant proceedings.'" *Id.* (describing "necessary corollary" test (citation omitted)). If so, there is a presumptive right of access under the First Amendment. *Id.* But this "does not end the inquiry." *Id.* Judicial documents (or portions thereof) may remain sealed "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve [those values]." *Id.* (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)).

### C. Applying *Lugosch* to the Privacy Act Protected Information

Applying either the common law or the First Amendment framework here, the Court must first determine whether the sealed materials at issue—and in particular the voluminous exhibits filed in connection with the pending motions—are "judicial documents," as "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Lugosch*, 435 F.3d at 119 (internal citation omitted); *see* ECF No. 9902 at 2. In recent meet and confer discussions, we understand that the PECs have agreed to narrow the universe of FBI materials that they contend qualify as "judicial documents," at least for purposes of the July 31 oral argument, to the FBI documents that are cited in the parties' briefs and averments (the "Cited FBI Documents"). Although the precise scope of this narrowing is not yet clear, we are advised that the PECs will provide a complete list of the Cited FBI Documents with their responsive letter due on July 12. Even with this narrowing, the FBI understands that there remains a dispute between the parties as to whether certain Cited FBI Documents (such as documents cited only in the averments, but not in the briefs, or documents cited only in general fashion) qualify as "judicial documents." The FBI takes no position on this question.

As to those records that the Court determines to be judicial documents, under the common law test, the Court must next determine how much weight to give the presumption of access based on "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119 (internal citation omitted). A particular record or redaction may "fall somewhere on a continuum" from direct relevance to irrelevance. *Id.* (internal citation omitted). Similarly, under the First Amendment framework, both the experience and logic test and the necessary corollary test consider the significance of the information to the proceedings and the public's understanding thereof. *Id.* at 120. And then, "[n]otwithstanding the presumption of access under both the common law and the First Amendment, the documents may be kept under seal if 'countervailing factors' in the common law framework or 'higher values' in the First Amendment framework so demand." *Id.* at 124. Privacy is both a "countervailing factor" and a "higher value" that courts should weigh. *See id.*; *New York Times Co.*, 828 F.2d at 114-16.

With regard to the material that remains sealed pursuant to the Privacy Act, therefore, both the common law and First Amendment frameworks require the Court to (i) consider the particular information at issue, (ii) evaluate its relevance to the matters to be decided by the Court, (iii)

identify the countervailing privacy interests in the information, and (iv) determine whether those privacy interests outweigh any presumption of access. The Court should enter a Privacy Act Order unsealing only those records, or portions of records, for which the Court finds a presumption of access that is not outweighed by a countervailing privacy interest.

The FBI does not take a position on how the Court should weigh the relevance and privacy interests with regard to specific information that remains under seal pursuant to the Privacy Act and the FBI Protective Order. However, in deciding whether to enter a further Privacy Act Order unsealing particular records or redactions, the FBI respectfully submits that the Court should consider several factors.

First, the Court should consider each individual's relationship to the issues before the Court. In recent meet and confer discussions, the PECs identified 22 individuals who are referenced in their averment whose names have been redacted at the FBI's request. The FBI understood these to be the principal individuals whose Privacy Act redactions—which cover their names and, in some cases, certain information about them—the PECs were now seeking to lift. Late this afternoon, however, the PECs clarified that their list of 22 was incomplete and that they would object to the continued redaction of "many additional names of relevant individuals" referenced in various exhibits.

There appears to be wide variation among the many individuals mentioned in the parties' filings. Taking just the above-mentioned 22 individuals as examples, some of these persons are referenced in the PECs' briefs; others are referenced only in their averment. Some are referenced dozens or hundreds of times in the PECs' averment; others are referenced fewer than ten times and some only once or twice. One individual is mentioned once in the PECs' averment, and is also mentioned in their opposition brief, but not by name. More generally, some individuals are alleged to have directly and knowingly provided assistance to the hijackers (which potentially heightens both the public and privacy interests at issue). Others are witnesses or other types of third parties with a more peripheral connection to the events at issue. The alleged role of each individual should be considered in determining what weight to give both the public and privacy interests that the Court must balance.

Second, the Court should consider the nature of the particular information that is redacted along with how and where it appears. The Privacy Act redactions appear in a wide variety of materials, from the parties' briefs and averments to FBI 302s to internal FBI communications like "Electronic Communications" (or "ECs") to evidentiary materials obtained from third parties such as phone records. The public and privacy interests in particular redacted information may vary substantially depending on what the information is and where it appears.

*Information redacted from briefs and averments*: Generally speaking, there is a greater public interest in the parties' briefs and averments than in information not found in these filings.[2] That is presumably why *The Times* has narrowed (or prioritized) its unsealing request to the

---

[2] As set forth in the FBI's separate letter outlining the status of its confidentiality review, the FBI has completed its review of the parties' briefs and averments (with the exception of Exhibit 700, for which the PECs have not yet identified the information derived from FBI documents).

Kingdom's and the PECs' initial averments. With regard to the relatively limited FBI redactions in the parties' briefs and averments, the Court should evaluate the strength of the public's interest in the specific information that is redacted and whether the public's interest in that information is outweighed by the referenced individuals' respective privacy interests.

The PECs have asserted that some of the redacted information may be ascertainable based upon other, unsealed information in the briefs and averments (*e.g.*, information obtained from sources other than the FBI, which is not protected by the Privacy Act). Even if that were correct, it would require the reader to engage in some degree of speculation, and therefore the redactions still provide the individuals with some degree of privacy protection. To be clear, it is not the FBI's intention to assert privacy interests with respect to information that came from sources other than the FBI. But courts have recognized that individuals have heightened privacy interests in information that reveals their connection to FBI criminal investigations, particularly a high-profile investigation like this one. *See, e.g., Broward Bulldog, Inc. v. U.S. Dep't of Justice*, 939 F.3d 1164, 1184 (11th Cir. 2019*) (*recognizing "'strong' privacy interests" of individuals associated with the FBI's 9/11 investigation).[3]

*Information redacted from exhibits*: For redacted information that appears in an exhibit, the Court should consider whether that information is relevant to the issues to be decided in the motion. Many of the exhibits contain private information that may not be relevant and in which the public's interest may therefore be limited or non-existent. This may include an individual's personal background information, such as places of birth, family member information, and educational or work history. It may also include other personally identifying information, like addresses, telephone numbers, and email addresses, which, if disclosed, could prompt unwanted contacts from members of the public (including contacts to unrelated third parties who may now be living at the identified addresses or may have inherited the identified phone numbers, as discussed further below).

There are also distinctions between different kinds of FBI documents that have been made into exhibits. For example, there are likely to be varying levels of privacy interests in FBI 302s, which are not supposed to contain the interviewers' opinions or contextual comments, and ECs or other internal FBI communications, which can contain opinions and contextual comments. While

---

[3] The PECs have also asserted that the public has an interest in knowing the names of the subjects of the FBI's 9/11 investigation. The FBI typically does not reveal the identities of subjects of investigation who are not charged, for operational as well as privacy reasons. Although Executive Order 14040 directed a declassification review of certain records relating to the FBI's investigation in the 9/11 case, it explicitly retained the protections of the Privacy Act. *See* E.O. 14040 § 6(b). Moreover, while the public may have a strong interest in knowing what facts were gathered as a result of an FBI investigation, the FBI does not agree that there is a strong public interest in knowing an individual's status as a subject. The fact that someone is a subject of investigation is not proof or even evidence that they engaged in any illegal conduct. *See, e.g.*, ECF No. 5142 ¶ 22, *quoted in* note 4, *infra*. Yet publicizing one's status as a subject of an FBI investigation may be interpreted by the public as evidence of some guilt. Thus, even if the Court were to find a public interest in such information, it should weigh that interest against the privacy interests of uncharged subjects of investigation.

an individual undoubtedly would have a substantial privacy interest in his statements to the FBI recorded in a 302, he likely would have an even greater privacy interest in the FBI's subjective evaluation of those statements or commentary about his credibility or potential culpability.[4] Publicizing the FBI's opinions or theories concerning an uncharged individual's potential culpability will likely have a substantial impact on that individual's privacy and could result in unwarranted attention, harassment, or threats. Moreover, internal FBI communications containing subjective analysis or commentary about uncharged individuals have not "historically been open to the press and general public" for purposes of any First Amendment analysis. *Lugosch*, 435 F.3d at 120 (internal quotation marks omitted). In deciding whether to issue a further Privacy Act Order, the Court should consider the type of document in which the information appears and the extent to which the information reflects subjective analysis or commentary, and evaluate the relevance and privacy interests accordingly.

As the above analysis illustrates, *Lugosch* does not contemplate a blanket unsealing of materials that would otherwise be entitled to Privacy Act (or other privacy) protection. Rather, it requires the Court to undertake a particularized analysis that evaluates the relevance of the Protected Information to the proceeding and monitoring of the judicial process and weighs that against countervailing interests, including the privacy interests of third parties. *Lugosch* also recognizes "the danger of impairing law enforcement" as a countervailing interest. 435 F.3d at 120. While the FBI does not take a position as to how the Court should balance the relevance and privacy interests implicated by particular redactions, it does have a substantial law enforcement interest in avoiding wholesale public disclosure of the personally identifying information of persons who were witnesses or of investigative interest in criminal investigations, particularly high-profile criminal investigations like this one. The FBI therefore respectfully requests that the Court make unsealing determinations by reference to specific redactions (or categories of redactions, where appropriate), rather than issuing a blanket Privacy Act Order lifting all FBI redactions, regardless of their content or the type of document in which they appear, as the PECs appear to request.

### D. Other FBI Redactions

The FBI has requested redaction of limited categories of information in the parties' motion papers for reasons other than the Privacy Act. The FBI's position as to unsealing of each of these categories is set forth below.

(1) *Telephone numbers and street addresses contained in or derived from records from the FBI's 9/11 investigation*: The FBI has requested redaction of phone numbers (except for the last

---

[4] Such commentary in internal FBI documents may also be inaccurate or incomplete, and therefore potentially misleading. *See, e.g.*, ECF No. 5142 ¶ 22 (noting that, "[i]n the interest of ensuring that neither the plaintiffs nor the public are misled by inaccurate or incomplete phrasing in what was meant to be an internal FBI document," the determination to declassify the name of a subject of investigation "should not be taken as an affirmation or confirmation of the statements in the [report] about that individual," and further noting that "[i]n retrospect, it would have been more appropriate to phrase" certain statements in the report "as an investigative theory being pursued by the FBI and not as objective statements of fact").

four digits of phone numbers that are necessary to show connectivity between particular individuals) and street addresses contained in records relating to its 9/11 investigation, to avoid potential misuse of personal information. The FBI has substantial concerns about releasing entire phone numbers, as members of the general public could (i) make unwanted (or even harassing or threatening) phone calls to the numbers, believing that they are directly or indirectly associated with individuals involved in the 9/11 attacks; (ii) use reverse phone directories to locate addresses associated with these phone numbers and contact the current occupants at those addresses; and/or (iii) use reverse phone directories to identify individuals associated with the phone numbers and contact those individuals. The FBI has similar concerns about disclosure of street addresses associated with individuals referenced in the FBI's 9/11 investigation files, as releasing street addresses could allow members of the public to make unwanted (and potentially harassing or threatening) visits to the current occupants of those addresses. The FBI's concerns about members of the general public making unwanted calls or visits apply whether or not the phone numbers or addresses are still associated with the same individuals, and whether or not the individuals are U.S. persons protected by the Privacy Act.

Accordingly, the FBI respectfully requests that complete phone numbers and street addresses remain sealed. The FBI does not object to unsealing (and in many cases has already authorized lifting redactions) of the last four digits of individual phone numbers to the extent necessary to show connectivity between individuals. The complete phone numbers, however, as well as street addresses, do not appear to be relevant to the issues before the Court on the motions, and have no bearing on the public's monitoring of the judicial process. Any minimal public interest in this information is outweighed by the privacy interests of the prior and current subscribers and occupants, and the FBI's substantial concerns about potential misuse of the information.

(2) *Records and information obtained from U.K. authorities*: The FBI has requested redaction of information relating to certain U.K. materials produced by the FBI, as the FBI obtained consent to produce those materials in this case subject to the FBI Protective Order. To the extent identical materials have now been separately produced by the U.K. Metropolitan Police Service ("MPS") without any restriction on public disclosure, the FBI does not object to unsealing the FBI-produced versions of these records or related information.

However, it is possible that some of these materials contain the information of U.K. citizens that may be subject to the Judicial Redress Act of 2015, 5 U.S.C. § 552a note, which extends certain rights of judicial redress established under the Privacy Act to citizens of certain foreign countries, including the United Kingdom, *see* Attorney General Order No. 3824-2017, "Judicial Redress Act of 2015; Attorney General Designations," 82 Fed. Reg. 7860 (Jan. 23, 2017). It would therefore be necessary for the Court to issue a Privacy Act Order pursuant to 5 U.S.C. § 552a(b)(11), to allow unsealing of any U.K. materials produced by the FBI.

The FBI notes, moreover, that some of the U.K. materials contain substantial private information of third parties, including third parties who may have no connection to this matter. For example, Exhibit 485 is a 77-page document containing many names and phone numbers of third parties. Although it appears that the MPS separately produced this document, and therefore the FBI does not oppose its unsealing pursuant to an appropriate Privacy Act Order, it is not clear that public disclosure of this third-party information is warranted or appropriate.

(3) *Particularly sensitive information pertaining to non-U.S. persons*: In at least two exhibits, the FBI has identified particularly sensitive personal information relating to a non-U.S. person that, while not protected by the Privacy Act, nevertheless raises substantial privacy concerns. These two exhibits are filed under seal as Attachments A and B to this letter, with the particularly sensitive personal information highlighted. While these exhibits are cited in the parties' averments, the highlighted portions do not appear to be referenced by any party nor relevant to the issues before the Court.

As the FBI continues its review of the exhibits, if the FBI identifies any additional information of a particularly sensitive personal nature that is not covered by the Privacy Act, we will promptly advise the parties and the Court.

We thank the Court for its consideration of this submission.

Respectfully,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:    /s/ Sarah S. Normand
        SARAH S. NORMAND
        JENNIFER JUDE
        Assistant United States Attorneys
        Telephone: 212-637-2709/2663

cc: Counsel of Record (by ECF)

Atts.