KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

——————

(202) 326-7900
FACSIMILE:
(202) 326-7999

July 10, 2024

*Via ECF*

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

   Re: *In re Terrorist Attacks on September 11, 2001*, 03-md-1570 (GBD) (SN)

Dear Judge Netburn:

   I write on behalf of Defendant Kingdom of Saudi Arabia ("Saudi Arabia") in response to the Court's June 27, 2024 Order, ECF No. 10031, regarding the sealing of certain exhibits and information submitted in connection with Saudi Arabia's renewed motion to dismiss.  The parties have filed 2,449 documents, of which Saudi Arabia requests that 177 remain wholly under seal, with redactions to an additional 56.  Under *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006), higher values support maintaining the confidentiality of these documents, including compliance with the United States' treaty obligations, principles of international comity, and legitimate privacy interests of third parties.  This letter also responds to Plaintiffs' June 13 letter, ECF No. 9901, and the New York Times' July 8 letter, ECF No. 10067.

   **1.** Saudi Arabia has filed 293 numbered exhibits in support of its motion and reply, each a single document.  Plaintiffs have filed 711 numbered exhibits with their opposition and sur-reply.  Many of Plaintiffs' exhibits are subdivided into lettered subparts (for example, their Exhibit 2 includes 43 subparts, from 2A to 2QQ), and many are compilation exhibits that contain multiple documents.  The parties have also filed 16 pleadings.  As shown in Exhibit 1 to the declaration accompanying this letter, the parties' filings contain 2,449 separate documents.  As shown in Exhibit 2, 1,082 of those 2,449 documents are not cited at all in the parties' briefs, averments, or responses.  As shown in Exhibit 3, an additional 342 documents are cited only in paragraphs of the parties' averments or responses that either (a) are not cited in the briefs, or (b) are cited in Plaintiffs' briefs only in lengthy range or section citations that do not comply with this Court's briefing order.[1]  Plaintiffs have also filed 42 deposition transcripts in their entirety, without regard for which pages are cited in the briefs or averments.

---

[1] *See* ECF No. 9026, at 4 ("[B]riefs must state all facts relevant to the motion and, for each factual statement, provide one or more citations (with specific page or paragraph numbers)

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
July 10, 2024
Page 2

Saudi Arabia and the FBI have followed the Court-endorsed process for reviewing the parties' submissions for confidential material and for filing appropriately redacted versions of the parties' submissions on the public docket. *See* ECF Nos. 9122, 9434. Saudi Arabia has identified 177 documents that it seeks to have maintained under seal and has proposed redactions to 56 documents (including briefs, averments, and other exhibits, plus 2 additional documents filed by Dallah Avco), primarily to protect the contents of the sealed documents. Exhibit 4 lists of all documents that Saudi Arabia seeks to maintain under seal or to redact. Saudi Arabia is also submitting to chambers copies of all documents that it proposes to maintain under seal and copies of proposed redactions, with comments showing the justification for each redaction.[2]

**2.**      *Lugosch* sets forth standards to determine whether a document is subject to a "common law presumption" or "qualified First Amendment right of access." 435 F.3d at 119-20. "'[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access.'" *Id.* at 119 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)); *see United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 142 (2d Cir. 2017) (recognizing that "any document that is docketed with a court" is not a "judicial document"). Instead, a judicial document "must be relevant to the performance of the judicial function and useful in the judicial process." *Lugosch*, 435 F.3d at 119.

In general, "documents submitted to a court for its consideration in a summary judgment motion are – as a matter of law – judicial documents to which a strong presumption of access attaches." *Id.* at 121. Nor does "the extent to which [documents are] relied upon" by the court affect the "weight[ ] of [the] presumption." *Brown v. Maxwell*, 929 F.3d 41, 48 (2d Cir. 2019). But those principles are not without limits. Where a document should never have been filed with a court at all, the act of filing it does not make it a judicial document. *See HSBC Bank*, 863 F.3d

---

to . . . averments . . . ."). For this submission, Saudi Arabia has considered a document properly cited if cited in any party's brief, or in any paragraph of any party's averment or response to an averment cited in a party's brief, but excluding citations to lengthy paragraph ranges (generally 10 paragraphs or longer) or citations to entire sections. Exhibits 5 (previously filed as ECF No. 9500-1), 6, and 7 (previously filed as ECF No. 9501-1) to the accompanying declaration highlight citations in Plaintiffs' briefs that do not comply with ECF No. 9026. For Plaintiffs' Response to Saudi Arabia's Response to Plaintiffs' Averment, Saudi Arabia has treated a document as properly cited where that Response cites that document in connection with a specific averment or response paragraph that is properly cited in at least one party's brief.

[2] As originally served on Plaintiffs, the FBI, and Dallah Avco, Saudi Arabia's proposed redactions also included highlighting for potential redactions for FBI confidential information or for confidential information of other Defendants or third parties. To avoid confusion, Saudi Arabia has removed all but its own proposed redactions from the submitted copies. Before publicly filing, Saudi Arabia will add any FBI or non-party redactions the Court approves. Saudi Arabia also made certain minor alterations to its proposed redactions, but they are otherwise as served. The copies also include proposed redactions to Dallah Avco's motion-to-dismiss filings.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
July 10, 2024
Page 3

at 139, 141 (holding that a monitor's report was not a judicial document because the district court had lacked power to order its filing or to consider it); *Paravas v. Cerf*, 2022 WL 203168, at *2 (S.D.N.Y. Jan. 24, 2022) (ruling that an unauthorized filing to "supplement or expand" motion papers was "not a 'judicial document'" because the court disregarded it); *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 621 F. Supp. 2d 55, 70-71 (S.D.N.Y. 2007) (ruling that documents submitted in support of "blatantly invalid" arguments, or that were "'wholly irrelevant'" to "valid arguments," received a "nominal" or "minimal presumption of public access") (quoting *Allen v. City of New York*, 420 F. Supp. 2d 295, 303 (S.D.N.Y. 2006)).[3]

Plaintiffs thus err in contending that under *Lugosch* everything that they have filed is a judicial document. *Lugosch* based its reasoning on the "assum[ption]" that parties "supported their papers with admissible evidence and non-frivolous arguments." 435 F.3d at 122. Plaintiffs have filed documents indiscriminately. Many are not cited in support of any contention at all. Others are cited only to support factual contentions that – contrary to the Court's briefing order, ECF No. 9026, at 4 – Plaintiffs do not set forth in their briefs. Such documents have not been "submitted to a court for its consideration," *Lugosch*, 435 F.3d at 121, in any meaningful sense. *Lugosch* does not require this Court to close its eyes to that reality.[4] Because the documents listed in Exhibits 2 and 3 are not properly before the Court, they are not judicial documents and remain subject to the protective orders entered in this case. "[A] strong presumption *against* public access" applies to these documents, *SEC v. TheStreet.Com*, 273 F.3d 222, 234 (2d Cir. 2001) (citing *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979)), and Plaintiffs have not overcome that presumption.

A similar analysis applies to deposition transcripts that Plaintiffs have filed in their entirety but cite only in part. Where those exhibits reveal confidential information (of a foreign sovereign or a private individual), that information should not be made public merely because Plaintiffs asked about it in a part of a deposition they did not cite to the Court. The Court should direct the parties to file publicly only those portions of depositions that are properly cited in the parties' briefs, averments, or responses, with appropriate redactions as set forth below. *Cf. City*

---

[3] *See also In re IBM Arb. Agreement Litig.*, 2022 WL 3043220, at *2 (S.D.N.Y. Aug. 2, 2022) (summary judgment filings did not become judicial documents because the court dismissed the case without ruling on the summary judgment motion), *aff'd*, 76 F.4th 74 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 827 (2024).

[4] The Court denied Saudi Arabia's motion to strike parts of Plaintiffs' Averment not properly cited in their opposition brief, but acknowledged that there are "legitimate questions as to whether [Plaintiffs'] citations are proper" and that, "[a]t the very least, the Plaintiffs violated the spirit of" the Court's order. ECF No. 9562, at 5-6. Its reasoning was based in part on the need to avoid "[f]urther delay." *Id.* Treating all Plaintiffs' exhibits as full-fledged judicial documents would cause delay rather than avoiding it, by requiring the Court to spend limited resources reviewing documents that Plaintiffs themselves did not cite or cited only in passing.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
July 10, 2024
Page 4

*of Providence v. BATS Glob. Mkts., Inc.*, 2022 WL 539438, at \*5 (S.D.N.Y. Feb. 23, 2022)
(temporarily sealing deposition transcripts with cited pages filed publicly).

      **3.**      Even where documents are subject to a presumptive right of access, that presumption
may be "overcome . . . by specific, on-the-record findings that higher values necessitate a
narrowly tailored sealing." *Lugosch*, 435 F.3d at 126.  In an earlier ruling, this Court concluded
that the Vienna Conventions and international comity are "higher values" that justify continued
sealing.  ECF No. 4696, at 4-7, 10-11.  The privacy of innocent third parties is also a higher
value.  *See United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995); *see also* ECF Nos.
6794, 7600 (sealing orders based on individual privacy interests).

      **a.**      The Vienna Conventions on Consular and Diplomatic Relations state that embassy
and consular "official correspondence" and "archives and documents" shall be "inviolable" at
all times, wherever they may be found.[5]  The Court has recognized inviolability as a "higher
value[ ]" that can overcome the presumption of public access.  ECF No. 4696, at 5-6 (relying
on "the Conventions' plain language," their "history," and Second Circuit "caselaw" such as
*767 Third Avenue Associates v. Permanent Mission of Republic of Zaire*, 988 F.2d 295, 298
(2d Cir. 1993)).

      Saudi Arabia could have asserted inviolability to avoid production of any embassy or
consular documents in this litigation.  Instead, it took the extraordinary step of voluntarily
producing them.  The Court's protective order served as a "powerful incentive" for Saudi Arabia
to make this voluntary production.  *TheStreet.Com*, 273 F.3d at 230.  If the Court now rules that
those documents must become public merely because Plaintiffs have filed them indiscriminately
in large batches, it will set a precedent that will discourage future voluntary disclosures by Saudi
Arabia and other foreign sovereigns.

      The parties have filed 121 embassy or consular documents or correspondence, of which
89 are properly cited in either Saudi Arabia's or Plaintiffs' briefs and averments.  The Court has
previously ruled that inviolability protects 20 of those 121 documents from public disclosure.
ECF No. 4696, at 8-10, 17-18; *see also* Ex. 4g.  Saudi Arabia continues to have a strong interest
in the confidential treatment of these diplomatic documents.  The Vienna Conventions make
clear that diplomatic archives and documents remain inviolable "wherever they may be."  VCCR
art. 33; VCDR art. 24.  Nor do any of the documents support Plaintiffs' debunked allegation that
"an unnamed senior Saudi official based in the Saudi Embassy in Washington, D.C.," ECF No.
3946, at 19 (citing Plaintiffs' complaints), directed support for the 9/11 hijackers.  *See* ECF No.
9436, at 15 (discussing the FBI's abandonment of the "investigative theory" that Plaintiffs had
erroneously alleged was a fact).

---

[5] Vienna Convention on Diplomatic Relations of 1961, arts. 24, 27(2), Apr. 18, 1961,
23 U.S.T. 3227, 500 U.N.T.S. 95 ("VCDR"); Vienna Convention on Consular Relations of 1963,
arts. 1(1)(k), 33, 35(2), Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261 ("VCCR").

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
July 10, 2024
Page 5

      **b.**      The parties have filed 28 documents that are internal Saudi government communications, among officials at the level of Minister or above, of which 27 are properly cited or referenced in Saudi Arabia's or Plaintiffs' briefs and averments.  The Court has previously ruled that international comity protects 11 of the 28 documents from public disclosure because they "are 'highly sensitive' documents that contain 'traditionally nonpublic information' of a foreign government."  ECF No. 4696, at 11 (quoting *Omari v. Ras Al Khaimah Free Trade Zone Auth.*, 2017 WL 3896399, at \*14 (S.D.N.Y. Aug. 18, 2017), *aff'd sub nom. Omari v. Kreab (USA) Inc.*, 735 F. App'x 30 (2d Cir. 2018)); *see also* Ex. 4g.  The remaining 17 documents are similar in kind.  As with the Vienna Convention documents, these documents are not central to the Court's determinations.  None involves any direction by senior Saudi officials to assist the hijackers.

      **c.**      Plaintiffs have submitted as exhibits the entire deposition transcripts of four current or former Saudi Ministers and one Ambassador.  Only limited excerpts of these depositions are cited in Plaintiffs' Averment or referenced in their briefs.  Ex. 9.  None shows any contact with the hijackers or instructions to assist the hijackers.  Saudi Arabia objected to the depositions of Ministers and Ambassadors at the outset of deposition discovery on the basis of the high-level-official doctrine; the Court limited the scope of two of the depositions.  ECF No. 6408.  Now that the depositions have taken place and the immateriality of the officials' testimony is plain, Saudi Arabia requests that the testimony be maintained under seal as a matter of comity.  At a minimum, any public filing should be limited to properly cited pages.

      **d.**      The motion papers properly cite as exhibits four documents from the private office of non-party Prince Abdulaziz bin Fahd bin Abdulaziz Al Saud.  The Prince's private office is not part of the Saudi government, but provided the documents voluntarily to Saudi Arabia after the Court directed Saudi Arabia to produce them.  At that time, the Prince's office requested that Saudi Arabia attempt to keep the documents confidential.  Plaintiffs' briefs make a single passing reference to Prince Abdulaziz.  ECF No. 9539, at 21.  They do not assert that he knew who the hijackers were, that his charitable donations were provided to the hijackers, or that they were made in furtherance of the 9/11 plot.  His documents should remain under seal to avoid further intrusion on his privacy.  *Cf. Brown*, 929 F.3d at 51 (cautioning that court filings should not be used to "promote scandal arising out of unproven potentially libelous statements").[6]

      **e.**      For each document in the categories discussed in ¶¶ 3(a)-(d) above, Exhibit 4 describes each document, explains why the document is unlikely to directly affect the Court's decision in this case, and sets forth briefly how Saudi Arabia's or Prince Abdulaziz's higher interest in the confidentiality of these documents overcomes any presumption of public access.

---

      [6] Other documents that have been made public by the FBI reflect the fact that Prince Abdulaziz made charitable donations to, or to be distributed by, imams including Fahad Al Thumairy.  *E.g.*, Ex. 8 (EO14040-000228, at 229).  Accordingly, the "primary public interest" in the "general availability of the relevant information . . . has already been served," lessening the need for further disclosure.  *Mirlis v. Greer*, 952 F.3d 51, 65 (2d Cir. 2020).

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
July 10, 2024
Page 6

Exhibit 4 is further broken down into Exhibits 4a through 4d (corresponding to the categories discussed above for properly cited documents), 4e (showing redaction requests in properly cited documents), 4f (showing requests to seal documents not properly cited in Plaintiffs' briefs or averments), and 4g (showing documents on which the Court has previously ruled).

To be sure, when the Court previously ruled that some of the exhibits at issue should remain under seal, it did so in the context of discovery motions, not dispositive motions. Accordingly, the strength of the presumption of public access has now increased. Nevertheless, taking all relevant concerns into account – including the small number of documents Saudi Arabia seeks to seal relative to the large number that Plaintiffs have filed, the tangential relationship of those documents to the jurisdictional question before the Court, the countervailing importance of treaty commitments and comity principles, and the unusual burden this case places on the privacy of any individual drawn into it – the balance of public and private interests continues to favor Saudi Arabia's limited sealing and redaction requests.

4.      Plaintiffs (at 2-3) and the Times (at 3) stress the importance of this case. But the importance of the Court's inquiry into "whether and to what extent [Fahad Al] Thumairy, [Omar Al] Bayoumi, and their agents took actions in 2000, at the direction of more senior Saudi officials, to provide assistance to Hazmi, Mihdhar, and other 9/11 hijackers," ECF No. 3946, at 23, does not necessarily show the importance of the thousands of documents that Plaintiffs have filed. Many of those documents are extraneous and collateral by any reasonable definition. Further, the importance of this case derives in part from Saudi Arabia's status as a foreign sovereign and a long-standing ally and security partner of the United States. That relationship cuts in favor of respecting the United States' treaty commitments and of "tak[ing] care to demonstrate due respect . . . for any sovereign interest expressed by a foreign state," *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987), as a matter of international comity.

The Times contends (at 3-5) that Saudi Arabia's assertion that certain general categories of documents should be sealed is inconsistent with *Lugosch*'s mandate for "specific, on-the-record findings" that warrant sealing. 435 F.3d at 124. That contention is misplaced. Some justifications for sealing do not depend on the contents of specific documents. For example, the Vienna Conventions apply to embassy and consular "official correspondence" and "archives and documents." *Supra* pp. 4 & n.5. The contents of the documents do not affect the higher value that protects the confidentiality interest, which is the agreement of the United States to treat the documents as inviolable. In any event, Saudi Arabia has given document-by-document reasons for sealing as part of Exhibit 4. That analysis necessarily must be filed under seal to avoid disclosing the contents of the confidential documents.

5.      To the extent the Court authorizes confidential documents to be maintained under seal, it should also authorize corresponding reasonable redactions to the briefs, averments, responses to averments, and other documents (such as expert reports) that are not wholly

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
July 10, 2024
Page 7

confidential but that discuss confidential documents.[7]  If the Court accepts Saudi Arabia's arguments in their entirety, it should also approve the proposed redactions submitted with this letter.  If the Court authorizes some documents to be sealed and not others, it should direct the parties to meet and confer to implement appropriate redactions.

6.      The Court should also direct that parties filing previously sealed documents make redactions under Federal Rule of Civil Procedure 5.2.  In addition to the items listed in Rule 5.2(a), the Court should order redactions under Rule 5.2(e) for:  (i) all but the last four digits of Saudi ID numbers (equivalent to a social security number); (ii) all but the last four digits of passport numbers; (iii) all but the last four digits of telephone numbers; (iv) email addresses; and (v) the faces of individuals who were minors when photos or videos were taken.  Publication of such material intrudes needlessly on personal privacy.  In the case of telephone numbers, full publication on the Internet may also lead to harassment of individuals who own the relevant numbers today but who have nothing to do with this case.

7.      Regardless of the Court's rulings on sealing and redactions, the July 31, 2024 hearing should proceed as currently scheduled.  Contrary to Plaintiffs' contentions (at 2) *Lugosch* does not require that the Court complete all review of all confidentiality disputes before it can hear argument.  *Lugosch* says nothing about the timing of hearings.  To be sure, it does say that the public right of access to documents is an "immediate" right.  435 F.3d at 118.  But the term "immediate" must be read in context:  in *Lugosch*, a motion to intervene and unseal had been pending for "approximately 17 months" before the Second Circuit's decision.  *Id*. at 117.  Here, because the parties agreed to and the Court approved a process for orderly narrowing and presentation of the confidentiality issues in this case, the documents at issue and sealing contentions have not been before the Court until today.[8]

Further, countervailing interests weigh in favor of holding the hearing as scheduled.  The higher value of international comity, as embodied in the Foreign Sovereign Immunities Act of 1976, supports "resolv[ing] . . . factual disputes and reach[ing] a decision about immunity as near to the outset of the case as is reasonably possible."  *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 174 (2017).  That mandate for speedy resolution has already waited through a multi-year jurisdictional discovery process, an extension for the COVID-19 pandemic, another extension for Executive Order 14,040, and failed attempts by Plaintiffs at reconsideration and interlocutory appeal.  Another delay based on a last-minute

---

[7] Saudi Arabia has also proposed redactions for certain material concerning Musaed Al Jarrah that the Court has already ordered sealed as irrelevant, but that Plaintiffs again seek to file publicly.  *Compare* Pls. Ex. 118 (entire transcript of June 17, 2021 deposition day) *with* ECF No. 7349, at 314:11-15, 315:3-6; ECF No. 7314; *and* ECF No. 7600, at 4.

[8] That process could have been further along by now if Plaintiffs had met their deadlines for identifying confidential information in their filings for FBI review or had promptly reviewed Saudi Arabia's confidentiality designations rather than leaving those designations sitting for months until the download link expired.  ECF No. 9902, at 2-4; *see also* ECF No. 9909, at 1.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
July 10, 2024
Page 8

request for unsealing is not warranted.  The public interest in avoiding "[f]urther delay . . . of this litigation," ECF No. 9562, at 5, supports moving forward.

**8.** During meet-and-confer discussions, Saudi Arabia proposed that each side identify a set number of high-priority documents it is likely to discuss at the hearing, to enable the Court to conduct an expedited review of those documents.  The identification could be either public (for greatest transparency) or *ex parte* (to minimize advance disclosure of argument strategy).  The FBI made a similar proposal to expedite its own review.[9]  Plaintiffs declined to accept either proposal.  Saudi Arabia continues to believe that an initial ruling on a smaller number of key documents (however selected) is a practical, appropriate way to proceed.

The Times, however, errs in suggesting (at 2) that the Court "prioritize the unsealing of Plaintiffs' and Defendants' initial averments, filed in support of and opposition to the Kingdom's motion to dismiss," including "any exhibits attached to the averments, in any form." A sole focus on "initial" averments would leave out each side's responses to the other side's factual contentions.  In particular, it would exclude Saudi Arabia's detailed showing that many of Plaintiffs' factual contentions are unsupported by the record or contradicted by admissible evidence.  Neither the interest of transparency nor that of comity would be served by such a lopsided approach.  If the Court gives priority to reviewing averments, it should include responses as well as initial averments in its review.

Respectfully submitted,

/s/ *Michael K. Kellogg*

Michael K. Kellogg
*Counsel for the Kingdom of Saudi Arabia*

cc:     All MDL Counsel of Record (via ECF)

---

[9] At the FBI's request, Saudi Arabia has identified a small number of high-priority documents for the FBI to review.