# ⊙ CBS NEWS

GAYLE C. SPROUL
SENIOR VICE PRESIDENT
LEGAL AFFAIRS
⊙ CBS NEWS AND STATIONS

524 West 57th Street
New York, NY 10019
gayle.sproul@cbs.com

July 12, 2024

**VIA ECF**

The Honorable George B. Daniels
Daniel P. Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, New York 10007

**Re:** *In re Terrorist Attacks on September 11, 2001*, No. 03-md-1570
**Unsealing of Judicial Documents concerning Dispositive Motions**

Dear Judge Daniels and Judge Netburn:

  Notwithstanding the nearly 23 years that have passed since 9/11, the importance of this case and the public interest in it has not waned. *See*, *e.g.*, C. Vega, R. Bonin, M. Brussani, *Investigators for 9/11 families examine video taken by man with ties to Saudi intelligence referencing a "plan,"* CBS News (June 20, 2024), https://www.cbsnews.com/news/bayoumi-video-examined-as-september-11-evidence-60-minutes. We therefore write on behalf of CBS News to join the letter motion of the *New York Times* for access to sealed records, filed on July 8, 2024, Dkt. No. 10067, and to address some of the points raised in the letters filed on July 10, 2024 on behalf of the defendant Kingdom of Saudi Arabia ("Saudi Arabia"), Dkt. No. 10080, and the Federal Bureau of Investigation ("FBI"), Dkt. No. 10079, seeking to justify continued sealing.

  These letters address the disputes concerning the slow-moving process for potentially unsealing the thousands of documents that were sealed *ab initio* in this matter. Many of them now form part of the judicial record associated with Saudi Arabia's critical motion to dismiss. CBS News elaborates below on certain crucial legal points raised in the letters and then turns to practical considerations unique to the media and the public.

## LEGAL CONSIDERATIONS IMPACTING THE
## ACCESS RIGHT OF THE PUBLIC AND THE PRESS

According to Saudi Arabia's letter, it filed 293 exhibits in connection with its motion. Dkt. 10080 at 1. Of those, Saudi Arabia is asking the Court to maintain the seal in full on 177 documents and to permit disclosure of 56 other documents with proposed redactions. *Id*. at 2. Saudi Arabia and the FBI offer several legal justifications for keeping these documents secret. Many of their proposed justifications are flawed.

**The First Amendment Right of Access Controls Resolution of Access to Dispositive Motions.** Saudi Arabia and the FBI repeatedly invoke both the common law right of access and the more stringent First Amendment right of access. Second Circuit case law makes clear, however, that only the First Amendment right of access is at issue here because the documents subject to sealing are filings made in connection with a dispositive motion. These documents *as a matter of law* are judicial records. *See, e.g.*, *Brown v. Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019) ("it is well-settled that "documents submitted to a court for its consideration in a summary judgment motion are – as a matter of law – judicial documents to which a strong presumption of access attaches, under . . . the First Amendment."); *see also* Dkt. 10080 at 2 (same). The straightforward inquiry under the First Amendment is simply whether the party seeking sealing has advanced a compelling interest that overcomes the presumption of access, supported by specific findings on the record, and, if so, whether the proffered solution is narrowly tailored to protect that interest. *Brown*, 929 F.3d at 47.

**Saudi Arabia and the FBI Conflate the Common Law Right of Access with the First Amendment Right.** Although this Court has already correctly concluded that the First Amendment right of access controls, Saudi Arabia and the FBI repeatedly conflate the common law right of access with the weightier First Amendment right of access. Where the First Amendment right applies, courts "need not engage in a common law analysis" at all as the common law standards are not as stringent as the constitutional ones. *In re Terrorist Attacks on September 11, 2001*, 2019 U.S. Dist. LEXIS 121935, at *237 (S.D.N.Y. July 22, 2019) (cleaned up). This principle must be respected here to avoid weakening the impact of the "stronger" First Amendment right of access and the weighty burdens it imposes. *Gannett Media Corp. v. United States*, 2022 U.S. App. LEXIS 35099, at *6 (2d Cir. Dec. 20, 2022); *Lugosch v. Pyramid Co.*, 435 F.3d 110, 124 (2d Cir. 2006) (describing "the higher constitutional burden in requiring disclosure" under the First Amendment as compared to the common law).

**The Relevance of Particular Judicial Documents and the Information They Contain Is Not Part of the Constitutional Analysis.** Relatedly, the FBI and Saudi Arabia suggest that the constitutional right of access should be relegated to a balancing test as between the press and the public's interest in access and the countervailing interests in sealing. This argument runs directly contrary to Second Circuit case law concerning the constitutional right of access and is once again a throwback to the common law right. When it comes to the constitutional right of access, the Second Circuit has made clear that access is not a question of mere balancing. *See Lugosch*, 435 F.3d at 123; *see also Gannett Media Corp.*, 2022 U.S. App. LEXIS 35099, at *10 n.2 (explaining that, unlike the common law right, there is no "weighing of the presumption" in the First Amendment context); *Brown*, 929 F.3d at 48 (noting that the Second Circuit has "expressly rejected" this argument). Rather, the only question under the constitutional access right is whether Saudi Arabia and the FBI have shown a compelling interest sufficient to overcome the

July 12, 2024

presumption that the public will have access to judicial records submitted in connection with a dispositive motion. *See Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 165 (2d Cir. 2013).

**Concluding that the Privacy Act, the Vienna Conventions and International Comity Require Mandatory Closure Would Violate the First Amendment.** The Saudi Arabia letter can be read to imply that certain countervailing interests are so strong as to warrant mandatory and wholesale closure. But the Supreme Court long ago rejected the argument that *per se* closure is consistent with the First Amendment right of access's narrow tailoring requirement. *See Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596 (1982). In *Globe Newspaper Co.*, a court ordered closure of the courtroom based on a Massachusetts statute requiring closure of sex-offense trials during testimony of minor victims. *Id.* at 598-600. The Court held that even the admittedly compelling interest in protecting the minor child did "not justify a *mandatory* closure rule." *Id.* at 607-08 (emphasis in original). This is not to say that the interests of *specific* minor victims could not be considered in deciding whether closure was supported by a compelling interest, only that such a showing must be made on a case-by-case, document-by-document basis with specific findings of fact on the record. *Id.* at 608-09; *see also Hartford Courant Co., LLC v. Carroll*, 986 F.3d 211, 221-22 (2d Cir. 2021) (applying *Globe Newspaper Co.*'s rule against mandatory closures).

Saudi Arabia invokes the Vienna Conventions and international comity.[1] It points to this Court's prior ruling as support for this argument, although it correctly recognizes that that ruling was only "in the context of discovery motions." Dkt. 10080 at 6. Now, however, the filings relate to dispositive motions, and sealing, if any, cannot be done on a *per se*, categorical basis resting on the general invocation of these foreign interests. *See Brown*, 929 F.3d at 48 (finding "legal error" where sealing was based on "generalized statements about the record"); *see also Gannett Media Corp.*, 2022 U.S. App. LEXIS 35099, at *8 (rejecting sealing based on the "broad findings" of privacy or the United States' need to protect internal, "candid functioning"). Again, the Court's mandate is to consider whether, on a document-by-document basis, these interests are sufficiently compelling to overcome the presumption that the public has complete access to dispositive motion practice.[2]

---

[1] No special standing is afforded to treaties or international comity in this regard. *Peterson v. Islamic Republic of Iran*, 758 F.3d 185, 190 (2d Cir. 2014) (explaining that treaties are on the same legal footing as statutes). Statutes, treaties, and principles of comity must comport with the Constitution, including the First Amendment right of access and its prohibition on mandatory sealing to otherwise presumptively public proceedings. *Globe Newspaper Co.*, 457 U.S. 596; *cf. Reid v. Covert*, 354 U.S. 1, 16 (1957) ("no agreement with a foreign nation can confer power on the Congress, or on any other branch of Government, which is free from the restraints of the Constitution."); *id.* (observing that the enforcement of treaties must "comply with the provisions of the Constitution"). In fact, Congress has shown special solicitude to the First Amendment in other contexts despite international comity. *See* 28 U.S.C. § 4102 ("a domestic court shall not recognize or enforce a foreign judgment for defamation unless" it assures itself that the judgment is consistent with the First Amendment).

[2] Further, to the extent it is Saudi Arabia that has submitted documents it otherwise argues are privileged from disclosure under the Vienna Conventions or international comity, it has waived those protections. The Second Circuit has held that a party cannot "rely on its own privileged documents to win summary judgment and . . . simultaneously [seek] to prevent disclosure of those documents." *Lugosch*, 435 F.3d at 125 (citing *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982) (attorney-client privilege documents)).

The FBI invokes the Privacy Act, although it correctly acknowledges that the Court must "undertake a particularized analysis." Dkt. 10079 at 6. As the Department of Justice has recognized elsewhere, the "assumption that the Privacy Act" determines whether a document may be filed on a public docket "would overturn decades of First Amendment case law." *See United States v. Edwards*, No. 19-cr-64, Dkt. 101 at 5-6 (S.D.N.Y.). Therefore, as with the Vienna Conventions and international comity, the Privacy Act cannot support blanket sealing of all information subject to it either.

**Claimed Reliance on Protective Orders Does Not Support Closure.** Saudi Arabia and the FBI both raise reliance interests on protective orders entered during discovery in this case. Those reliance interests are unreasonable. "What transpires in the court room" and on the pages of judicial documents are "public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947); *Brown*, 929 F.3d at 47. Protective orders facilitate discovery and are issued on a showing of good cause. But it is beyond dispute that once documents produced in discovery are submitted to courts for adjudication of a dispositive motion, the constitutional right of access attaches. *See* Individual Rules and Practices of Judge George B. Daniels, Rule I.D.ii ("In general, the parties' consent or the fact that information is subject to a confidentiality agreement between litigants is not, by itself, a valid basis to overcome the presumption in favor of public access to judicial documents."). At that point, a good cause showing is not a sufficient basis for sealing. *See id.*; *see also Newsday LLC*, 730 F.3d at 166 ("the facts necessary to show good cause for a protective order applicable to discovery documents that are not yet implicated in judicial proceedings will not necessarily meet the higher threshold imposed by the First Amendment with respect to judicial documents."); *Lugosch*, 435 F.3d at 125-26; *cf.* Dkt. 10080 at 3 ("Because the documents listed . . . are not properly before the Court, they are not judicial documents and remain subject to the protective orders entered in this case."). Indeed, were the defendants' or FBI's supposed reliance interest enough to require sealing here, considering the prevalence of protective orders in civil litigation today, the presumption of access would be transformed into a presumption of closure under the guise of reliance interests.[3]

## PRACTICAL CONSIDERATIONS
## IMPACTING THE PUBLIC AND THE PRESS

As distinguished from the parties here, the public and the media stand in a distinct position before the Court. Nevertheless, the First Amendment ensures that they be afforded meaningful access to the Court's proceedings and an opportunity to object to exclusion when necessary. *See Globe Newspaper Co.*, 457 U.S. at 609 n.25. Thus, we note the following:

**The Press and the Public Are Entitled to "Immediate Access" to the Unsealed and Redacted Documents**. In *Lugosch*, the Second Circuit did not simply recognize the right of access but expressly noted that it is a right to "*immediate* access." *See* 435 F.3d at 113 (emphasis added). Simply put, the lengthy procedure for document review that has been employed during discovery no longer suits, given that a dispositive motion is now pending. We respectfully suggest that time frames for review must now be minimized and that unsealed and redacted documents must be made publicly available on an immediate, rolling basis. *Id.* at 126-27.

---

[3] As this Court explained, "Such a [good cause] showing is not sufficient . . . to warrant a protective order covering all 'judicial documents,' particularly those submitted to the Court in connection with trial, other hearings, *and motions*." *See* Dkt. 1900 at 6 (emphasis added).

**The Courtroom Should Not Be Closed and Oral Argument Must Be Clearly Comprehensible to the Public**. CBS News intends to be present at the argument on the pending motion to dismiss. Importantly, if any of the exhibits that the parties intend to refer to at oral argument remain under seal, the Court will be required to rule on requests by defendants or the FBI to close the courtroom when such exhibits are discussed, or, in the alternative, the discussion of those exhibits in public will be so truncated as to be impossible for non-parties to follow. If closure is requested or ordered at the argument, CBS News will object to it. Under the First Amendment, before any courtroom closure can be implemented, the objector must be granted an opportunity to be heard, and specific findings supporting any closure must be placed on the record demonstrating that there is not alternative to closure. *Press-Enterprise Co. v. Super. Ct.*, 478 U.S. 1, 9, 14 (1986). The disruption of the argument this will cause can be avoided if any lingering sealing decisions are made before the argument commences. CBS News does not seek to unnecessarily delay the argument on the motion but does respectfully ask that the Court resolve the remaining sealing issues before argument is heard.

**The Docket Must Provide Sufficient Information to Alert the Press and the Public to at Least the Broad Outlines of the Sealed Exhibits.** In order to effectively challenge sealing, the press and public must be permitted to know the nature of the sealed exhibits. Enough detail (along the lines of what is available in a privilege log) should be provided on the docket to permit a reasonable evaluation of whether to challenge the sealing of any given document. In this way, it will likely not be necessary for the Court to review every document that is under seal, but only those that are at issue. But much of the docket here simply reflects that filed exhibits are "sealed," without more. This does not comport with the ruling in *Hartford Courant Co.*, 380 F.3d at 93, which provides that case information must not be "inaccessible" on the docket.

CBS News appreciates that this case presents special challenges for the Court, as well as the parties and the FBI. But the Second Circuit has ruled that such challenges do not provide a basis for deviating from the settled principles of the constitutional right of access. We thank you for your consideration of our position.

Respectfully,

Gayle C. Sproul

cc: All counsel of record (via ECF)