**MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES**
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013)<br>Jodi Westbrook Flowers, *Co-Chair*<br>Donald A. Migliori, *Co-Chair*<br>Robert T. Haefele, *Liaison Counsel*<br>MOTLEY RICE LLC | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

July 12, 2024

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District Court for the S.D.N.Y.
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

> Re:     *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

The Plaintiffs' Executive Committees and the *Ashton* Plaintiffs (collectively "Plaintiffs") write to oppose the July 10, 2024 letter (ECF No. 10079) of the Department of Justice for the Federal Bureau of Investigation ("FBI"). Plaintiffs respectfully request the Court to deny the FBI any relief because the FBI's letter (1) does not comply with the Court's directions to articulate what documents the FBI seeks to seal, and (2) does not provide the Court with the necessary "compelling showing" upon which the Court may premise specific, rigorous findings for an order sealing any document or otherwise denying public access.

The FBI's letter (and the FBI's approach throughout what it refers to as its "redaction review") is at variance with the Court's June 26, 2024 Order, which directed parties "seeking to seal documents" to file a letter brief by July 10, 2024, ECF No. 10031. The FBI wrongly seeks to invert the Court-ordered burden by styling its letter as a "response to [Plaintiffs'] unsealing request," FBI Ltr. at 1. Nor does the FBI's letter comply with the Court's March 13, 2023 Order, which admonished parties seeking to keep documents sealed to "make a compelling showing to justify redactions with respect to the [dispositive motions]." ECF No. 8923 at 3. The FBI's letter (with two limited exceptions discussed *infra*, at 7), identifies no particularized redaction or sealing requests, and fails to make the necessary "compelling showing" required under the applicable *Lugosch* standards. The FBI's letter does not meet its heightened burden to justify any sealing.

In meet-and-confer discussions, Plaintiffs emphasized that the FBI's redaction review needed to be comprehensive, needed to address the specific limits on access the FBI sought to impose, and would require substantial time to complete and implement. To facilitate the process, Plaintiffs proposed entering an order eliminating any Privacy Act barrier to the filing of judicial documents, thereby shifting the FBI's focus to the relevance of certain named individuals to Plaintiffs' claims and the Court's judicial functions. Much of the FBI's time-consuming review had centered on imposing name-redactions as to 22 individuals whose relationships, interactions, and activities lie at the very

The Honorable Sarah Netburn
July 12, 2024
Page 2

_____

core of the issues before the Court.  Plaintiffs' consistent position has been that Privacy Act redactions pertaining to those persons could not be justified under the *Lugosch* standards.  The FBI should instead focus on a separate, narrower set of names, as to which specific articulable privacy interests could be considered.[1]

As a provisional means of facilitating and reducing the scope of the FBI's redaction review, Plaintiffs agreed to identify EO and FBI-numbered documents cited in the parties' briefs and averments. Plaintiffs did not and could not agree to narrow the scope of judicial documents as to which the FBI carries the burden to seek redaction or sealing.[2] To the extent that the FBI seeks to limit public access to any judicial documents, Plaintiffs have urged the FBI to submit its proposed redactions for the Court's consideration, and meet its burden.  The FBI has done neither.

   A.  FBI's Earlier Privacy Act Redactions

As the FBI acknowledges, most of the information it implores the Court to consider for sealing is information regarding U.S. persons that the FBI designated under the Privacy Act of 1974, as amended, 5 U.S.C. § 552a ("Privacy Act"), during the discovery phase. FBI Ltr. at 1.[3]  The FBI has not submitted for the Court's consideration any particularized, *Lugosch*-compliant showing as to how its Privacy Act designations in the judicial documents qualify for sealing. Instead, the FBI simply points to its Privacy Act redactions (which it acknowledges are incomplete, and which it proposes to continue offering up to the date of oral argument) and tells the Court to figure out on its own whether they meet sealing standards. The FBI's letter offers only generalized intonations of basic standards and ideas, clearly insufficient to guide the Court in this proposed procedure.

The approach the FBI proposes is manifestly inadequate and unworkable. The FBI's failure to offer "compelling reasons" for any of its redactions – and, in many documents, to offer any redactions at all – should signal an end to the inquiry. Further, it is unreasonable for the FBI to thrust upon this Court the obligation to weed through its Privacy Act redactions (let alone to discern what

_____

[1] Plaintiffs had in fact proposed that the FBI abandon its misguided Privacy Act-driven approach more than a year earlier. *See* PECs' Letter Responding to FBI Status Report, at n.4 (July 12, 2024).

[2] The FBI mischaracterizes, FBI Ltr. at 3, Plaintiffs' offer to help the FBI limit the judicial documents requiring FBI review in advance of oral argument. To narrow the issues with the FBI, Plaintiffs identified the non-public Executive Order 14040 (EO-MDL) documents and FBI-bates stamped documents ("FBI documents") cited in Plaintiffs' briefs and averments filed in opposition to Saudi Arabia's dispositive motion. Although the universe of judicial documents that contain FBI information is much wider than simply these EO-MDL and FBI documents, Plaintiffs' proposal sought to define a subset that the FBI would review most urgently. Plaintiffs have continued their attempts to facilitate the FBI's redaction review by working to identify FBI information in their compilation and summary exhibits (including phone calls charts), but there has been insufficient time to "provide a complete list," *id.* at 3, in time for this briefing.

[3] The FBI records also contain references to many non-U.S. persons, who are not covered by the Privacy Act. Since the FBI has not sought to redact any of names of non-U.S. persons, it is clear that the FBI has not undertaken any evaluation of individual privacy interests, but has rather focused solely on technical compliance with the Privacy Act.

The Honorable Sarah Netburn
July 12, 2024
Page 3

---

those redactions might be) and assess, without the benefit of specific briefing from the parties, whether any form of sealing is appropriate.[4]

The FBI's proposal for the Court to undertake a redaction review on an isolated and piecemeal basis also suffers from another fundamental defect. Plaintiffs have submitted a massive body of inter-related evidence, which must be viewed and understood holistically. The significance of information subject to a particular redaction may not be apparent when viewed in isolation, as it only becomes clear when considered in the proper context of related evidence. The FBI's proposal invites unwarranted sealing of information based on incomplete understandings, and if adopted would jeopardize Plaintiffs' ability to present the full force of their evidence in its totality.

The FBI's approach is especially unreasonable given that the Privacy Act, standing alone, does not support a restraint on public access to "judicial documents." *Rivera-Lopez v. General Electric Co.*, 2022 WL 3108556, at *2 (S.D. Ga., Aug. 4, 2022). The *Rivera-Lopez* court reasoned that while the Privacy Act generally constrained a government agency from disclosing an individual's records in its custody, the Privacy Act on its own could not justify a sealing request. "[P]arties justifying seal requests under the Privacy Act must provide more than a conclusory statement that documents must be sealed pursuant the statute." *Id.* at *3, n.3 (citing *Laber v. United States Dep't of Def.*, 2022 WL 1773307, at *2 (D. Kan. June 1, 2022) (rejecting plaintiff's generic request to seal documents marked as subject to the Privacy Act, since he still needed to show "a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process[.]" (quotations and citations omitted)); *Jordan v. Nielsen*, 2019 WL 2209399, at *5 (S.D. Cal. May 22, 2019)(conclusory argument that "the information and records are arguably subject to the privacy protections of the Privacy Act" is insufficient to justify sealing); *Drummond v. Mabus*, 2016 WL 4007583, at *2 (E.D.N.C. July 26, 2016) (Since "Defendant's motion to seal the investigative file in its entirety [pursuant to the Privacy Act] implicates the right of access under the First Amendment", Defendant must still "provide[] sufficient argument under the First Amendment to support sealing the entire file.")). The *Rivera-Lopez* court concluded that, "without more detailed argument addressing the specific information at issue, the Court cannot determine what should be sealed and what should not." 2022 WL 3108556, at *2

The Second Circuit concluded similarly in *In re New York Times Co.*, 828 F.2d 110, 115 (2d Cir. 1987), considering privacy interests under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. 2510 et seq. While Title III protected an important right of privacy, the Court reasoned that "where a qualified First Amendment right of access [to pretrial information] exists, it is not enough simply to cite [the statute in seeking to have the documents sealed]. Obviously, a statute cannot override a constitutional right." *Id.*

B. Legal Framework for Sealing

A cornerstone of our judicial system is the public's right to access judicial proceedings, including a strong presumption that judicial documents are open to public access. *Lugosch v. Pyramid*

---

[4] Significantly, during the meet and confer process, Plaintiffs asked the DOJ directly and pointedly whether the FBI was prepared to offer a specific showing to support sealing as to any of its redactions. As Plaintiffs indicated to DOJ counsel, to the extent the FBI was not willing to provide specific showings, it should simply have made its position clear.

The Honorable Sarah Netburn
July 12, 2024
Page 4

_____

*Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). The presumption "is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Id.* at 123 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995))(*Amodeo I*). "A finding that a document is a 'judicial document' triggers a presumption of public access, and requires a court to make specific, rigorous findings before sealing the document or otherwise denying public access." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016)(internal quotes omitted).

The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking to restrict public access. *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). That burden requires any party seeking to restrict access "to demonstrate that the interests favoring non-access outweigh those favoring access." *Amodeo I*, 71 F.3d at 1047. Here, the FBI has gone out of its way to avoid meeting that burden, instead, it does not identify the specific documents or text it seeks to seal or redact and offers only generalized "factors" that it invites the Court to "consider." FBI Ltr. at 4.

Plaintiffs agree with the FBI that, where a party has supported a sealing request with a competent proffer, the Court applies the three-part *Lugosch* analysis to assess the public's right to access the documents at issue, under the governing First Amendment right of access. The first step of the analysis requires the Court to determine if the documents at issue are "judicial documents" entitled to the presumption of public access. *Lugosch*, 435 F.3d at 119, 120. Under the First Amendment, the Second Circuit has articulated two different approaches to assess whether public access applies. Using the "experience and logic" approach, courts consider whether the documents "have historically been open to the press and general public" and whether "public access plays a significant positive role in the functioning of the particular process in question." The second approach considers the extent to which the judicial documents are "derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings." *Id.* at 120.

Finally, the *third step* requires the court to balance the presumption against competing considerations: under the First Amendment framework, judicial documents may only be kept under seal if "higher values" so demand. *Lugosch*, 435 F.3d at 120, 124. Where, as here, the First Amendment framework (encompassing a stronger presumption of public access than its common law equivalent) applies, restrictions on public access would be permitted only where the court were able to make "specific, on the record findings . . . demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 120 (quoting *In re New York Times Co.*, 828 F.2d at 116 (internal quotation marks omitted). "Broad and general findings by the trial court, however, are not sufficient to justify closure." *Id.*

C.   Applying the Legal Framework for Sealing

Applying the First Amendment framework, the documents at issue are "judicial documents" to which the stronger *Lugosch* presumption of public access attaches. The FBI's (and Saudi Arabia's) suggestion that a question exists about whether the documents at issue are "judicial documents" contradicts Second Circuit law that "documents submitted for a Court's consideration in a [dispositive motion] are—**as a matter of law**—judicial documents to which a strong presumption of public access attaches, under both the common law and the First Amendment. *Id.* at 121 (emphasis added). As the

The Honorable Sarah Netburn
July 12, 2024
Page 5

_____

*Lugosch* Court observed, "[i]n *Joy v. North*, 692 F.2d 880 (2d Cir.1982), . . . we stated definitively that 'documents used by parties moving for, or opposing, a dispositive motion] should not remain under seal absent the most compelling reasons.'" *Id.*[5] There can be no serious question that Plaintiffs submitted the evidence for the Court's attention in opposing Saudi Arabia's motion to dismiss. *Id.* ("[o]nce those submissions come to the attention of the district judge, they can fairly be assumed to play a role in the court's deliberations.") (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 409 (1st Cir.1987)). As the *Lugosch* court recognized, "[i]f the rationale behind access is to allow the public an opportunity to assess the correctness of the judge's decision ... documents that the judge *should* have considered or relied upon, but did not, are just as deserving of disclosure as those that actually entered into the judge's decision." *Lugosch*, 435 F.3d at 123 (quoting *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 101 F.R.D. 34, 43 (C.D.Cal.1984) (italics in original).

Once past the first two steps, which confirm that the documents Plaintiffs submitted for the Court's attention on Saudi Arabia's dispositive motion are judicial documents entitled to a strong presumption of public access, the FBI does not meet its burden, in step three, to overcome the presumption. Although a court may consider privacy interests in weighing "higher values," *Lugosch*, 435 F.3d at 124; *In re New York Times Co.* 828 F.2d at 116, "broad and general findings. . . are not sufficient to justify closure." *Lugosch*, 435 F.3d at 120; *In re New York Times Co.*, 828 F.2d at 116. The cited cases reject conclusory assertions and require individualized and specific assessment to restrain access. *Lugosch*, 435 F.3d at 120; *In re New York Times Co.*, 828 F.2d at 116.

As Plaintiffs explained during the meet-and-confer process, the FBI's own "factors" to "consider" avoid assessing specific redactions, FBI Ltr. at 4, are contrary to *Lugosch* and unworkable.

The FBI's first "consideration" concerns individuals, whom the FBI does not identify, and their "relationship to issues." This "consideration" places an unwieldy burden on the Court that has already been proven impracticable. To date, the FBI's approach to Privacy Act redactions, which seemingly would carry over to the redactions it now suggests, has appeared to be largely name redactions that often have not had the practical effect of protecting any identified privacy interest.[6]

Despite the FBI's name-redactions, the identities of the individuals and their associations with the investigations into the 9/11 attacks are generally publicly identifiable. For example, the FBI has

_____

[5] Applying the presumption under the common law, the *Lugosch* court found that "[a]s a matter of law, … by virtue of having been submitted to the court as supporting material in connection with a [dispositive motion]—[the documents at issue] are unquestionably judicial documents under the common law." *Id.* at 123. The court also found that the more rigorous First Amendment standard applied to documents filed in connection with a [dispositive] motion in a civil case." Id. at 124 (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir.1988)).

[6] Plaintiffs also object to the FBI's "second factor" to "consider," FBI Ltr. at 4, which proposes that, for the purpose of curtailing public access, the Court pre-judge the weight of the evidence offered in opposition to the dispositive motion. The proposal presumes what the weight the public might attribute to various judicial documents, assuming, for example that the public would have more interest in the parties' briefs and averments versus in the underlying evidence. The FBI supports its arguments with an erroneous assessment of the sealing request made by the New York Times. It did not limit its request to the parties' briefs and averments; rather, it prioritized those documents as a step to understanding the outstanding evidence. *See* ECF No. 10067 at 2.

The Honorable Sarah Netburn
July 12, 2024
Page 6

proposed name-redaction only when the cited source for the particular single mention of that person's name is an FBI document. If the next mention of that name derives from a different source, then the same name can appear both redacted and unredacted in two adjacent mentions, even in the same section or paragraph. Some of the sections in which the FBI has proposed name-redactions contain the same person's name in the section title. A careful reader can quickly discern most redacted names by reference to the context, adjacent names, and accompanying information. Furthermore, the FBI's Privacy Act rationale falls short for redaction of names already known and reported publicly (including in many instances by virtue of their inclusion in parties' filings already approved by FBI for public docketing in this MDL). The FBI has posited that a generalized privacy interest can attach to the "mere mention" of a person's name in the context of an FBI investigation or in an investigation into the 9/11 events, but this jeopardy has long since passed for the individuals featured in the parties' filings in this case, whose names are generally already widely public.

In conferring with the FBI to narrow the issues, Plaintiffs identified 22 individuals' names and asked the FBI to agree that it would not request sealing as to the indicated names and related information. Contrary to FBI's suggestion, FBI Ltr. at 4, the proposal was not intended as an exhaustive list. Rather, it was to identify a set of names as to which a clear entitlement of public access applied, because each of the named persons featured prominently in the parties' filings. Plaintiffs' point was that agreement as to those individuals would eliminate the need for the FBI to continue to identify, redact, or otherwise devote time to references to those persons, or for the Court to spend time on redactions related to them. And because those individuals encompassed the vast majority of the redactions the FBI proposed to date, eliminating them from the sealing process would substantially narrow the work to be done and issues to be addressed. The FBI and Plaintiffs could then focus on the remaining individuals and address the references to them in accordance with the *Lugosch* standards. Plaintiffs never expressed an intention to waive their objections to other Privacy Act related redactions as to persons beyond the 22 named individuals. Plaintiffs made clear that additional, important names had to be added to any list and that the FBI did not demonstrate the necessary compelling reasons for limiting public access.[7]

The FBI's concerns regarding redaction of telephone numbers and street addresses, FBI Ltr. at 7, are generalized and hypothetical, and ignore the special importance of those numbers and addresses to Plaintiffs' evidence. Notwithstanding the lack of any proof for FBI's alleged concerns, Plaintiffs reasonably proposed that phone numbers be partially redacted – but that in addition to the last four digits, the area code of each number also should remain unredacted. Area codes enable a better understanding of where the user of that number was situated and/or travelled at the relevant time (for example, certain Saudi propagators deployed in the U.S. acquired cellphone numbers from multiple cities or states over the course of several years). Additionally, the last four numbers give

---

[7] The error of considering the proposed list of 22 names as exhaustive is shown by Plaintiffs two "Identification of Individuals" exhibits which identify various additional individuals who were among  (1) the  29 persons in attendance at Bayoumi's San Diego welcome party for the hijackers, all of whose names are identified in Pls. Ex. 702,  and (2) the 50 additional individuals identified by Plaintiffs in Pls. Ex. 703, who played key roles in various relevant events and relationships.  None of the individuals identified in those two exhibits should be subject to any name-redactions.

The Honorable Sarah Netburn
July 12, 2024
Page 7

_____

meaning to the key phone calls analysis (including that of Plaintiffs' experts and the FBI itself) in this case, by showing connections between certain users, call timing, and frequency.[8]

The FBI argues, FBI Ltr. at 7, that it should be permitted to redact information relating to certain U.K. materials that the FBI produced. However, its argument as to *possible* redactions to U.K. materials is so vague that it is not possible for Plaintiffs to respond or the Court to adjudicate with any degree of specificity. It argues it is "*possible*" that "*some*" materials may contain information of U.K citizens that "*may*" be subject the Judicial Redress Act of 2015. *Id.* (emphasis added) In addition to the FBI's argument making it impossible for the Court or the Plaintiffs to determine whether there is actually any redaction to be considered or dispute to be resolved, the FBI's discussion of this issue also does not focus on what has been submitted in the record, making it impossible to determine whether the vague points it makes apply to any of the judicial documents before the Court.[9]

The FBI identified only two specific redactions, FBI Ltr. at 8, identifying in highlighting in Attachments A and B redactions that it describes as "particularly sensitive information pertaining to non-U.S. persons," which means the persons are not protected under the FBI's Privacy Act arguments.  Although the FBI asserts that the information is not significant, both examples are relevant to the individual's foreknowledge of the attacks, which informs assessments of the nature of the support network formed by Bayoumi; Saudi Arabia's arguments about compartmentalization; and the individual's motives to now dissemble, feign forgetfulness, and revise events to protect his own interests. Moreover, as to the example at the FBI's Attachment A, the FBI's assertions are inconsistent with the fact that Saudi Arabia's own expert witness, Marc Sageman, addressed the statement as relevant in his Rebuttal Report. "Rebuttal Expert Report of Marc Sageman," at 154 (May 16, 2022).

To summarize, Plaintiffs have consistently expressed the view that the judicial documents should not be sealed, and that the FBI must meet its heightened burden of demonstrating the compelling reasons for the limits to public access it seeks. Where the presumption of public access exists, Plaintiffs do not bear any burden to demonstrate why the redactions should be lifted. The Court is not obligated to consider unspecified and uncertain redactions. Moreover, since the FBI has not placed before the Court the proposed limits it seeks to impose or such other sufficient information on which a Court could make the necessary specific, rigorous findings before sealing documents or otherwise denying public access, the Court should deny the FBI's letter application.

If, however, the Court is inclined to impose redactions of the nature the FBI suggests, Plaintiffs highlight for the Court that the redactions would require several weeks to properly implement and could not be completed in time for the oral argument on July 31. As a result, Plaintiffs

_____

[8] Plaintiffs emphasize that, even if "partial redactions" of phone numbers are to be implemented, such redactions are a painstaking task requiring technical skill and attorney supervision, and that it would take several weeks to implement for the full orbit of judicial documents.

[9] The FBI comments, FBI Ltr. at 2, that some of the materials concern individuals who have not been notified or may not be aware that records about them exist. But many of the individuals at issue are aware (they were represented and were interviewed or deposed) and others voluntarily came forward to offer information. To the extent that the FBI identified any person who should have been made aware, the FBI has had many months (or more) to provide notice.

The Honorable Sarah Netburn
July 12, 2024
Page 8

would be deprived of a settled record from which to prepare arguments and the public would not have had an opportunity to examine the record in advance of the argument. Similarly, if the Court is inclined to permit the FBI to continue reviewing judicial records to offer proposed redactions over the next several weeks, as the FBI proposes in its status report, that process, including any disputes relating to those redactions, would need to be finalized in advance of oral argument. Accordingly, Plaintiffs would request relief to allow for the completion of the redactions, resolution of the disputes, and implementation of the redactions sufficiently before the argument.

Respectfully submitted,

MOTLEY RICE LLC

By: /s/ Robert T. Haefele
ROBERT T. HAEFELE
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*Liaison Counsel for the Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Plaintiffs*

COZEN O'CONNOR

By: /s/ Sean P. Carter
SEAN P. CARTER
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Tel.: (215) 665-2105
Email: scarter@cozen.com

*Co-Chairs of the Plaintiffs' Executive Committee for Commercial Claims on behalf of Plaintiffs*

KREINDLER & KREINDLER LLP

By: /s/ Steven R. Pounian
STEVEN R. POUNIAN
485 Lexington Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: spounian@kreindler.com

*Attorneys for Ashton Plaintiffs*

cc:     The Honorable George B. Daniels, via ECF
        All Counsel of Record via ECF