**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

IN RE:

TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

<u>MEMORANDUM DECISION</u>
<u>AND ORDER</u>

03 MDL 1570 (GBD) (SN)

This document relates to:

*All actions*

GEORGE B. DANIELS, United States District Judge:

On July 17, 2024, this Court held a case management conference to allow the parties to discuss sealing issues ahead of the July 31, 2024 oral argument on the Kingdom of Saudi Arabia's motion to dismiss (ECF No. 9368[1]) and Dallah Avco's motion to dismiss (ECF No. 9362). Through this opinion, this Court resolves the sealing issues germane to the upcoming oral argument, which will proceed as scheduled in accordance with the rulings below. The Court does not anticipate sealing the courtroom at any point during the oral argument.

For the reasons set forth below, the FBI's request to maintain limited redactions regarding the identification of FBI witnesses throughout the motion papers, averments of fact, and exhibits is GRANTED, without prejudice to future, specific unsealing applications. Saudi Arabia's request to keep some of its exhibits under seal and to redact others is DENIED. The parties are directed to promptly file on the public docket—at 9:00 AM on Wednesday, July 31, 2024—a set of motion papers, averments of fact, and exhibits that comply with this decision, to the extent practicable.

---

[1] Unless otherwise indicated, all ECF citations included herein refer to documents filed on the 9/11 multidistrict litigation docket. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570 (GBD) (SN).

# I.  PROCEDURAL HISTORY

Saudi Arabia and Dallah Avco each filed their motions to dismiss on October 6, 2023. (ECF Nos. 9362, 9368.)  The parties agreed to provisionally keep filings associated with the motions to dismiss (*i.e.*, the briefs, averments of fact, and exhibits) under seal, pending the FBI's review of the filings made in connection with the motions to dismiss for confidential information.[2] (*See* ECF No. 9122 (approving the parties' joint proposal for confidentiality review).) In anticipation of this Court's initial scheduling of oral argument on the motions to dismiss, Plaintiffs filed a letter requesting "unsealing of . . . relevant documents" over which the FBI and Saudi Arabia asserted confidentiality protections so that they could "argue and address the evidence effectively in open court." (ECF No. 9885, at 1.)

After this Court adjourned the initial oral argument date, Magistrate Judge Sarah Netburn directed "[a]ny party seeking to seal documents" to file a letter brief by July 10, 2024, with responses due July 12, 2024.  (ECF No. 10031.)  As most relevant to the July 31, 2024 oral argument, the FBI and Saudi Arabia[3] filed letters seeking to maintain certain documents under seal and to redact certain information from documents that would otherwise be filed publicly.[4]

---

[2] The FBI produced many of the exhibits relied upon by the parties in their filings through President Biden's Executive Order 14040, which declassified intelligence documents related to the 9/11 attacks. (*See* ECF No. 9562, at 2–3.)

[3] Defendants Muslim World League, International Islamic Relief Organization, World Assembly of Muslim Youth, Dr. Adnan Basha, Dr. Abdullah Al-Turki, Dr. Abdullah Al-Obaid, and Dr. Abdullah Naseef join in Saudi Arabia's motion in part. (*See* ECF No. 10076.)

[4] As to the other sealing requests filed, this Court GRANTS Plaintiffs and Defendant Al Rajhi Bank's consent motion to keep 17 exhibits under seal, as they contain private financial information and/or confidential business and trade-secret information. (*See* ECF No. 10075, at 2.)  This Court is also in receipt of four requests from non-party witnesses to seal their testimony, and each have articulated specific and substantial privacy interests that outweigh the presumption of public access to their testimony. (*See* ECF Nos. 10073, 10097, 10099, 10116.)  Accordingly, this Court GRANTS these motions to keep testimony under seal.

(*See* ECF Nos. 10078, 10080.)  Plaintiffs oppose the FBI and Saudi Arabia's proposed sealings and redactions.  (*See* ECF Nos. 10090, 10091.)  Several media organizations—the *New York Times*, ProPublica, CBS News, NewsNation, CNN, and the Broward Bulldog—also join Plaintiffs in their request for the unsealing of judicial records in advance of oral argument.  (*See* ECF Nos. 10067, 10071, 10084, 10102, 10103, 10108.[5])

Following the July 17, 2024 oral argument, Plaintiffs and the FBI submitted a joint proposal to narrow the scope of contested redactions and adjourn the July 31, 2024 oral argument date.  (ECF No. 10126.)  Saudi Arabia and Dallah Avco opposed the proposal insofar as it necessitated an adjournment of the July 31, 2024 oral argument date.  (*See* ECF Nos. 10127, 10136.)  This Court denied the request to adjourn the oral argument date but allowed the parties to file joint submissions containing agreements regarding redactions by July 26, 2024.  (ECF No. 10151.)  Plaintiffs and the FBI were not able to come to such an agreement.  (*See* ECF Nos. 10165, 10166.)

## II.    LEGAL STANDARDS

Only "judicial documents" are entitled to a presumption of public access.  *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 (GBD) (SN), 2019 WL 3296959, at *1 (S.D.N.Y. July 22, 2019).  "[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document." *Id.* (quoting *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019)) (alteration in original).  Instead, to properly be classified as a "judicial document," that document "must be 'relevant to the performance of the judicial function and useful in the judicial process.'"  *Id.* (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)).

---

[5] In ECF No. 10108, Broward Bulldog, Inc. moved to join the New York Times Company's motion to intervene.  The motion to join is GRANTED.

The presumption of public access afforded to judicial documents is rooted in both the First Amendment and the common law. *Id.* "The First Amendment right of access is 'stronger and can only be overcome under more stringent circumstances than the common law presumption.'"[6] *Id.* (quoting *United States v. Erie Cnty.*, 763 F.3d 235, 241 (2d Cir. 2014)).  The Second Circuit has set forth two inquires to assess whether judicial documents are protected under the First Amendment:  (1) the "experience and logic" test, which asks "'whether the documents have historically been open to the press and general public,' and 'whether public access plays a significant positive role in the functioning of the particular process in question," *id.* (quoting *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 141 (2d Cir. 2016)); and (2) an inquiry into "whether the documents 'are derived from or a necessary corollary of the capacity to attend the relevant proceedings.'" *Id.* (quoting *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 164 (2d Cir. 2013)).

To justify sealing and "overcome a First Amendment right of access, the moving party must demonstrate that sealing is 'essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* at *2 (quoting *Bernstein*, 814 F.3d at 144).  Such "higher values" include "preserving the right of an accused to fundamental fairness in the jury selection process, the protection of attorney-client privilege, the danger of impairing law enforcement or judicial efficiency, and the privacy interest of those who resist disclosure." *Brown*, 929 F.3d at 47 n.13 (internal citations and quotation marks omitted).  "A court's sealing decision must be supported by 'specific, on-the-record findings,'" *In re Terrorist Attacks on Sept. 11, 2001*, 2019 WL

---

[6] As the First Amendment right of access is stronger than the common law right of access, where "the First Amendment is applicable, the Court 'need not . . . engage in . . . a common law analysis." *In re Terrorist Attacks on Sept. 11, 2001*, 2019 WL 3296959, at *1 (quoting *Accent Delight Int'l Ltd. v. Sotheby's*, No. 18 Civ. 9011 (JMF), 2019 WL 2602862, at *7 (S.D.N.Y. June 25, 2019)) (alteration in original).

3296959, at *2 (quoting *Brown*, 929 F.3d at 87), not "[b]road . . . findings" or "conclusory assertion[s]." *Id.* (quoting *Bernstein*, 814 F.3d at 144–45) (second alteration in original).

### III. THE FBI MAY REDACT WITNESS NAMES AND CONTACT INFORMATION

In accordance with the FBI Protective Order in these consolidated actions (*see* ECF No. 4255), the FBI requested redactions in its production, and in documents citing or referencing information contained in its production, of four types of information: (1) information covered by the Privacy Act of 1974, as amended, 5 U.S.C. § 552a, pursuant to which the FBI proposes to redact "names of and information concerning U.S. persons derived from documents produced by the FBI"; (2) "[t]elephone numbers and street addresses contained in or derived from records from the FBI's 9/11 investigation"; (3) information pertaining to UK citizens that is afforded Privacy Act protection under the Judicial Redress Act of 2015, 5 U.S.C. § 552a note; and (4) "[p]articularly sensitive information" regarding non-U.S. persons that "raises substantial privacy concerns." (FBI Letter, ECF No. 10078, at 1, 6–8.)

Plaintiffs request that this Court deny the FBI relief and only permit the filing of unredacted motion papers, averments of fact, and exhibits, claiming that the FBI "d[id] not comply with the Court's directions to articulate what documents the FBI seeks to seal" and "d[id] not provide the Court with the necessary 'compelling showing' upon which the Court may premise specific, rigorous findings for an order sealing any document or otherwise denying public access." (Pls.' Resp. to FBI Letter, ECF No. 10090, at 1.) Though Plaintiffs and the FBI were not able to come to an agreement regarding redactions, in their most recent submission, Plaintiffs indicated that, for purposes of the July 31, 2024 oral argument, they chiefly seek to reference the names of 30 "high-priority" individuals whose names the FBI has proposed redacting pursuant to the Privacy

Act and the area codes of phone numbers. (ECF No. 10165, at 3.) This decision accordingly addresses only those requests.

At the outset, this Court notes that its review of the FBI's redactions is necessarily incomplete, as the FBI is still in the process of performing its confidentiality review of certain exhibits. (*See* ECF No. 10077, at 2; ECF No. 10166, at 1–2.) Neither Plaintiffs nor the FBI have individually addressed each particular redaction, instead honing their arguments on the reasons underpinning the classes of information redacted by the FBI.

In considering the propriety of the FBI's redactions, this Court has reviewed the set of briefs and averments of fact submitted by the FBI for *in camera* review. (ECF Nos. 10087-1 to -15, 10168-1.) Such documents, and the exhibits upon which they rely, are "judicial documents" within the *Lugosch* framework and are entitled to a presumption of public access under the First Amendment, as such documents will factor into this Court's consideration of Saudi Arabia and Dallah Avco's dispositive motions. (*See* Section IV.A, *infra*.) "Notwithstanding the presumption of access under . . . the First Amendment, the documents may be kept under seal if . . . 'higher values' . . . so demand." *Lugosch*, 435 F.3d at 124.

Though the FBI seeks to redact difference classes of information, its justifications for maintaining its redactions are largely premised on privacy interests (namely, that "the FBI's opinions or theories concerning an uncharged individual's potential culpability will likely have a substantial impact on that individual's privacy and could result in unwarranted attention, harassment, or threats"), and "the danger of impairing law enforcement" (citing the need to "avoid[] wholesale public disclosure of the personally identifying information of persons who were witnesses or of investigative interest in criminal investigations"). (FBI Letter at 6 (internal citations omitted); *see also id.* at 6–8 (noting additional privacy concerns).)

As a general matter, both interests are "higher values" in the First Amendment sealing analysis, *see Brown*, 929 F.3d at 47 n.13. These consolidated actions, seeking to prove Defendants' alleged support for the 9/11 attacks, are understandably of considerable public interest. Yet this Court cannot shut its eyes to the fact that these actions were born out of horrific violence whose scars continue to mark this nation and stir intense passions. Blanket disclosure of private, personally identifying information; addresses; or phone numbers[7] revealing a connection to the FBI's 9/11 investigation—even if remote, tangential, or attenuated—has the potential to subject individuals, in some cases unwittingly (*see* FBI Letter at 1–2), to embarrassment, harassment, and even violence. *See Broward Bulldog, Inc. v. U.S. Dep't of Just.*, 939 F.3d 1164, 1183–88 (11th Cir. 2019) (finding, in the FOIA context, that the FBI's redaction of "the names, addresses, and phone numbers of many agents, suspects, witnesses, and other individuals involved" in a 9/11 investigation was proper due to the strong "privacy interests that private citizens hold in not being associated with a major terrorism investigation"). At this juncture, this Court also finds that the FBI's desire to avoid impairment of its law enforcement function, *see Brown*, 929 F.3d at 47 n.13, counsels against the "wholesale public disclosure of the personally identifying information of persons who were witnesses or of investigative interest" in the FBI's uniquely sensitive 9/11 investigation. (FBI Letter at 6.)

In opposition, Plaintiffs argue that "the identities of the individuals [whose names are redacted] and their associations with the investigations into the 9/11 attacks are generally publicly identifiable," so the FBI redactions would needlessly hamper Plaintiffs at oral argument, as "[a]

---

[7] The FBI has proposed to redact all but the last four digits of phone numbers (*see* FBI Letter at 6–7), while Plaintiffs seek to only redact the middle three digits of phone numbers, so that area codes can be public. (*See* Pls.' Resp. to FBI Letter at 6–7.) This Court denies Plaintiffs' unnecessary request. Plaintiffs can still refer to the geographic area where a phone call was made or received, but revealing the area code vastly eases one's ability to obtain the complete phone number.

careful reader can quickly discern most redacted names by reference to the context, adjacent names, and accompanying information." (Pls.' Resp. to FBI Letter at 5–6; *see also* ECF No. 10165, at 3 n.3.) They also claim that their proposed 30 high-priority individuals "are at the center of the events, transactions, and relationships concerning the support network [allegedly] established and led by Saudi Arabia's officials, and central to the Court's adjudicative function." (ECF No. 10165, at 2.)

With respect to the 30 high-priority individuals, this Court finds that the FBI's asserted privacy and law enforcement interests demand only the redaction of the names and personally identifying information of the FBI's sources and witnesses in its 9/11 investigation. Names of certain individuals that are merely discussed in FBI materials, but who are not themselves investigative sources or witnesses, may be publicly disclosed, but other personally identifying information of such individuals should remain redacted, so as to avoid unwarranted intrusions into their privacy.[8] Accordingly, this Court GRANTS in part the FBI's request to maintain its existing redactions of FBI witnesses' names and personally identifying information in the briefs, averments of fact, and exhibits, without prejudice to future, specific unsealing requests. The remainder of the "30 high-priority individuals" that Plaintiffs seeks to reference at oral argument may be identified by name, but other personally identifying information should be redacted.

## IV.    SAUDI ARABIA'S SEALING AND REDACTION REQUESTS ARE DENIED

Saudi Arabia argues that this Court should keep a vast number of documents under seal for two specific reasons. First, it contends that more than one thousand documents "are not properly before the Court" and are thus not "judicial documents" entitled to the presumption of public

---

[8] In weighing the privacy interests asserted on behalf of these individuals by the FBI, this Court notes that the FBI has not specifically identified any individual that would be at high risk of harm or harassment through disclosure of their identity.

access. (KSA Letter, ECF No. 10080, at 2–3.) Second, of the documents that Saudi Arabia

concedes are "judicial documents," it seeks to maintain 177 documents under seal and impose

redactions to an additional 56 because "higher values" overcome the presumption of public access

attached to those materials. (*See id.* at 1, 4–6 (quoting *Lugosch*, 435 F.3d at 126).)

Plaintiffs contend that "Saudi Arabia advances broad and conclusory arguments for

sealing, [and] fails to provide any specific and adequate justifications for its sealing requests."

(Pls.' Resp. to KSA Letter, ECF No. 10091, at 2.) Plaintiffs generally argue that "the detailed,

complex evidentiary disputes raised by the motion papers must be heard and argued openly before

the Court without the constant impediments of sealed documents." (*Id.* at 2.)

## A.    Judicial Documents

A document filed with the Court becomes a "judicial document" when it is "relevant to the

performance of the judicial function and useful in the judicial process." *Lugosch*, 435 F.3d at 119

(quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)). And a document is "'relevant

to the performance of the judicial function' if it would reasonably have the *tendency* to influence

a district court's ruling on a motion or in the exercise of its supervisory powers . . . ." *Brown*,

929 F.3d at 49. The 1,424 documents at issue—which Saudi Arabia asserts are not "judicial

documents" and should therefore remain sealed—meet that standard and are therefore "judicial

documents."[9]

Documents filed at a dispositive stage "enjoy[] a strong presumption of public access."

*Id.* at 49. Indeed, "documents submitted to a court for its consideration in a summary judgment

motion are—as a matter of law—judicial documents to which a strong presumption of access

attaches, under both the common law and the First Amendment." *Lugosch*, 435 F.3d at 121.

---

[9] This Court arrives at this figure by adding the 1,082 documents that Saudi Arabia says are not cited in Plaintiffs' briefs to the 342 documents Saudi Arabia argues are not "properly" cited. (KSA Letter at 1.)

The underlying rationale applies here.  Saudi Arabia's arguments rely in part on these sealed documents, and this Court's ruling on Saudi Arabia's renewed motion to dismiss could dispose of Plaintiffs' claims against Saudi Arabia.

The documents in question have also withstood Saudi Arabia's motion to strike (ECF No. 9500), clouding the Kingdom's latest contention that such evidence should "never have been filed with a court at all." (KSA Letter at 2.)  Magistrate Judge Netburn denied Saudi Arabia's motion to strike in relevant part and accepted these documents, despite Saudi Arabia's efforts to strike them from the judicial record before this Court on Saudi Arabia's motion to dismiss.  (*See* ECF No. 9562, at 5–6.)  Accordingly, these documents are of substantial interest "to those monitoring the federal courts." *Brown*, 929 F.3d at 49 (citing *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)).  For the public and the press, "access to the proceedings and documents of courts is integral," not just to enhance understanding and to promote transparency—but to uphold "our system of government." *Erie Cnty.*, 763 F.3d at 238–39.  As this Court made clear at the July 17, 2024 conference, "we don't try cases in back rooms, we try cases in open court."  (Conf. Tr., ECF No. 10146, at 47:17–18.)

The documents at issue in this high-profile case are accordingly "judicial documents" entitled to the presumption of public access.  They "reasonably have the tendency to influence" this Court's forthcoming ruling on Saudi Arabia's dispositive motion, regardless of whether this Court is ultimately swayed one way or another by these documents. *See Brown*, 929 F.3d at 49 ("A document is thus 'relevant to the performance of the judicial function' if it would reasonably have the *tendency* to influence a district court's ruling on a motion . . . , without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision" (citation omitted).)  As evidenced by the volume of media submissions in the instant

dispute, these documents are of significant public concern. To safeguard the public's "confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings," these documents should be unsealed.[10] *Amodeo*, 71 F.3d at 1048.

### B.    Saudi Arabia's Purported "Higher Values"

As "judicial documents," these 1,424 documents—alongside the 177 documents Saudi Arabia seeks to keep sealed and the 56 documents it seeks to redact—are entitled to the "highest" presumption of public access. *See Lugosch* 435 F.3d at 123. Only "specific, on-the-record findings that higher values necessitate narrowly tailored sealing" can overcome that strong presumption. *Id.* at 126. Saudi Arabia offers three such "higher values" to justify its sealing and redaction requests. None are sufficient.

### 1.    The Vienna Conventions

Saudi Arabia first argues that 121 documents are protected by the "inviolability" provisions of the Vienna Convention on Consular Relations and the Vienna Convention on Diplomatic Relations (together, the "Conventions"), which generally protect such materials from discovery. (*See* KSA Letter, at 4.) Saudi Arabia was not forced to disclose these documents in this litigation. Yet Saudi Arabia voluntarily produced them during discovery. (*Id.*) It now only seeks to avoid their release to the public.

During discovery, Magistrate Judge Netburn found that the Conventions "can justify sealing judicial documents under the First Amendment" in the context of a sealing dispute connected to a motion to compel and a motion to modify the scope of supplemental discovery.[11]

---

[10] In unsealing such documents, this Court repeats a word of caution issued in another case of substantial public intrigue: "Materials submitted by parties to a court should be understood for what they are. They do not reflect the court's own findings. Rather, they are prepared by parties seeking to advance their own interests in an adversarial process." *Brown*, 929 F.3d at 52.

[11] This Court overruled Plaintiffs' objections to Magistrate Judge Netburn's order. (ECF No. 6532.)

*See In re Terrorist Attacks on Sept. 11, 2001*, 2019 WL 3296959, at *1–2. But this case is now in a dispositive posture, and therefore the public interest in unsealing these documents is greater. *See Lugosch*, 435 F.3d at 123 ("[D]ocuments used by parties moving for, or opposing summary judgment should not remain under seal *absent the most compelling reasons*." (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)). No longer are these documents "simply [being] passed between the parties in discovery"; they are at issue in a pending, dispositive motion to dismiss. *Brown*, 929 F.3d at 50 (internal citation omitted).

Saudi Arabia makes two conflicting arguments. It "*could have* asserted inviolability to avoid production of any embassy or consular documents in this litigation." (KSA Letter at 4 (emphasis added).) It chose not to do so. Instead, it decided to rely on a protective order in the hopes that it would be able utilize these documents to advance its arguments, and at the same time keep them indefinitely under seal. But "[t]he fact that a document is restricted by a protective order 'has no bearing on the presumption of access that attaches when it becomes a judicial document.'" *In re Tel. Media Grp. Ltd.*, No. 23 Misc. 215 (JGLC), 2023 WL 5770115, at *5 (S.D.N.Y. Sept. 6, 2023) (quoting *Collado v. City of New York*, 193 F. Supp. 3d 286, 289–90 (S.D.N.Y. 2016)). Having produced these documents during discovery, Saudi Arabia cannot be surprised that they would ultimately be placed before this Court and the public in connection with the pending motion to dismiss. Given the strong presumption of public access at this stage of the proceedings, *see Lugosch*, 435 F.3d at 123, this Court finds that these documents should be made public.

## 2.    International Comity

Next, Saudi Arabia seeks to keep sealed 28 documents containing the internal communications of Saudi government officials, as well as five deposition transcripts of "current

or former Saudi Ministers and one Ambassador" on the grounds of "international comity." (KSA Letter, at 5.)

International comity "refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 139 (2d Cir. 2014) (citing *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 482 U.S. 522, 543 n.27 (1987)). Much like the documents covered by the Conventions, during discovery, Magistrate Judge Netburn found that international comity justified sealing certain documents because they were "highly sensitive documents drafted by a foreign sovereign's most senior officials" that contained "traditionally nonpublic" information. *In re Terrorist Attacks on Sept. 11, 2001*, 2019 WL 3296959, at *5. However, as with the documents covered by the Conventions, this Court finds that, due to the dispositive posture of the case and Saudi Arabia's voluntary production of these documents, international comity cannot overcome the presumption of public access to these judicial documents. (*See* Section IV.B.1, *supra*.) In litigation, all parties, including sovereigns, are equal before the bar of justice.

### 3.    Privacy Interests

Lastly, Saudi Arabia seeks to maintain four documents from the office of Prince Abdulaziz bin Fahd bin Abdulaziz Al Saud under seal. It asserts that the public's right of access is "outweighed by the Prince's higher interest of maintaining privacy over his personal documents and communications." (ECF No. 10081-8.) It is not.

Saudi Arabia explains that when the Prince's office "voluntarily" provided the documents in question, the Prince's office "requested that Saudi Arabia attempt to keep the documents confidential." (KSA Letter at 5.) Despite Saudi Arabia's claims that such documents are not

germane to the motion to dismiss, this Court cannot find that Saudi Arabia has made the requisite showing to justify maintaining these documents under seal. (*See* Part II, *supra*.) Plaintiff argues that such documents show a relevant connection between the Prince and Fahad Al-Thumairy. (*See* Pls.' Resp. to KSA Letter at 6–7.) They are therefore "judicial documents" that may "reasonably have the tendency to influence" this Court's ultimate decision on Saudi Arabia's motion to dismiss. *Brown*, 929 F.3d at 49. They should be unsealed.[12]

## V. CONCLUSION

The FBI's request to maintain limited redactions regarding the identification of FBI witnesses throughout the motion papers, averments of fact, and exhibits is GRANTED, without prejudice to future, specific unsealing applications. Saudi Arabia's request to keep some of its exhibits under seal and to redact others is DENIED. The parties are directed to promptly file on the public docket—at 9:00 AM on Wednesday, July 31, 2024—a set of motion papers, averments of fact, and exhibits that comply with this decision, to the extent practicable.

The Clerk of Court is directed to close the motions at ECF Nos. 10067, 10071, 10073, 10075, and 10108.

Dated:   July 29, 2024
         New York, New York

                                        SO ORDERED.

                                        *George B. Daniels*
                                        GEORGE B. DANIELS
                                        United States District Judge

---

[12] By contrast, Saudi Arabia's request to implement limited redactions to KSA Ex. 61 is GRANTED, as the deponent's strong personal privacy interests justify implementing the redactions for the reasons referenced at the July 17 conference. (*See* Conf. Tr. at 70:5–11.)