# EXHIBIT J

Estate of Lawrence Byrnes

# VCF Documentation



September 11th
Victim Compensation Fund

October 24, 2019

LAWRENCE BYRNES, JR.

██████████████████
██████████████████

Dear LAWRENCE BYRNES, JR.:

The September 11th Victim Compensation Fund ("VCF") has reviewed your Eligibility Form. You submitted an Eligibility Form on behalf of LAWRENCE BYRNES. Your claim number is VCF0108166. Your Eligibility Form was determined to be substantially complete on October 23, 2019. As stated in the Regulations and on the claim form, by filing a substantially complete Eligibility Form, you have waived your right to file or be a party to a September 11th-related lawsuit on behalf of the decedent and his or her survivors.

**The Decision on your Claim**

The VCF has determined that the decedent has met the eligibility criteria established in the statute and regulations. Based on the information you submitted and information the VCF has received from the World Trade Center ("WTC") Health Program, the decedent has been found eligible for the following injuries:

- CHRONIC RHINITIS
- ESOPHAGEAL REFLUX
- MALIGNANT NEOPLASM BRONCHUS&LUNG UNSPEC SITE
- MALIGNANT NEOPLASM OF BLADDER PART UNSPECIFIED

Please note that there are several reasons why an injury that you think should be eligible is not listed above. For non-traumatic injuries, the name of the injury is based on the information provided by the WTC Health Program and there may be different names for the same injury. Additionally, your injury may not be listed if it was only recently certified for treatment by the WTC Health Program.

If in the future the WTC Health Program should notify you that a condition previously found eligible is no longer certified, you must inform the VCF as this may affect your eligibility status and/or the amount of your award.

**What Happens Next**

**If the decedent was certified for treatment by the WTC Health Program for a condition not listed above**, you should amend your claim. Please see the VCF website for details on how to amend your claim. The VCF will review the new information and determine if it provides the basis for a revised decision.



September 11th
Victim Compensation Fund

**If you believe the decedent had eligible injuries not treated by the WTC Health Program** and you would like the VCF to consider those injuries before calculating the amount of any compensation, you should amend your claim.  If you choose to amend your claim, you will need to use the VCF Private Physician process.  The Private Physician process is a way for the VCF to gather the required information about the decedent's treatment in order to process your claim. All forms are available on the VCF website under "Forms and Resources."  The website also includes detailed information and instructions on the Private Physician process.

**If the decedent did not have injuries other than those listed above,** you should submit your Compensation Form and required supporting materials.  If you have already submitted your Compensation Form, you do not need to take any action at this time unless you receive a request from the VCF for missing information.  The VCF will calculate the amount of any compensation based on the conditions listed above after all compensation-related documents are submitted.

If you have questions about the information in this letter or the claims process in general, please call our toll-free Helpline at 1-855-885-1555.  For the hearing impaired, please call 1-855-885-1558 (TDD).  If you are calling from outside the United States, please call 1-202-514-1100.

Sincerely,

Rupa Bhattacharyya
Special Master
September 11th Victim Compensation Fund

cc: WENDELL TONG



September 11th
Victim Compensation Fund

May 15, 2020


LAWRENCE BYRNES, JR.

███████████████


Dear LAWRENCE BYRNES, JR.:

The September 11th Victim Compensation Fund ("VCF") has reviewed your claim for compensation.  Your claim number is VCF0108166.  Your claim form was determined to be substantially complete on April 13, 2020.  This means your claim was deemed "filed" for purposes of section 405(b)(3) of the Statute on that date.

After reviewing the responses in your claim form, the documents you submitted in support of your claim, and information from third-party entities, the VCF has calculated the amount of your award as ███████████  This determination is in accordance with the requirements of the Never Forget the Heroes: James Zadroga, Ray Pfeifer, and Luis Alvarez Permanent Authorization of the September 11th Victim Compensation Fund Act ("VCF Permanent Authorization Act").  The enclosed "Award Detail" includes a detailed explanation of the calculation and a list of the eligible conditions that were considered when calculating your award.

The VCF has determined that the loss of your father's FDNY pension benefits, which terminated at his death, is not a loss compensable by the VCF.  That said, the Special Master recognizes the fairness disparity in a process whereby former first responders, such as your husband, who responded to the WTC site in the wake of the attacks, do not qualify for Line of Duty death designations from their former employers because they were not officially deployed to the response effort.  The VCF took this into consideration and included a flat economic loss award of ███████████ in calculating this award.

Replacement services are not awarded because there is no evidence your father's grandchildren or any family members(s) with special needs were part of your father's household. Additionally, loss of college tuition is not a reimbursable household services loss.

No non-routine legal service expenses are approved for reimbursement for this claim.

**What Happens Next**

The VCF will deem this award to be final and will begin processing the full payment on your claim unless you complete and return the enclosed Compensation Appeal Request Form within **30 days from the date of this letter** as explained below.  If you do not appeal, the Special Master will authorize the payment on your claim within 20 days of the end of the 30-day appeal period.  Once the Special Master has authorized the payment, it may take up to three weeks for the United States Treasury to disburse the money into the bank account designated on the VCF ACH Payment Information Form or other payment authorization document you submitted to the VCF.

September 11th
Victim Compensation Fund

- **Appealing the Award**: You may request a hearing before the Special Master or her designee if you believe the amount of your award was erroneously calculated, or if you believe you can demonstrate extraordinary circumstances indicating that the calculation does not adequately address your loss. **If you choose to appeal, your payment will not be processed until your hearing has been held and a decision has been rendered on your appeal**.

  To appeal the award, you must complete two steps by the required deadlines:

  1. Complete and return the enclosed **Compensation Appeal Request Form** within **30 days from the date of this letter**. Follow the instructions on the form and upload it to your claim or mail it to the VCF by the required deadline. If you do not submit your completed Compensation Appeal Request Form within 30 days of the date of this letter, *you will have waived your right to an appeal* and the VCF will begin processing any payment due on your claim.

  2. Complete and submit your **Compensation Appeal Package** (Pre-Hearing Questionnaire, Compensation Explanation of Appeal, and all applicable supporting documents) no later than **60 days from the date of this letter**. It is important that you carefully review the information enclosed with this letter and follow the instructions if you intend to appeal your award. Additional instructions on the appeals process can be found on the VCF website under "Frequently Asked Questions" and in the "Policies and Procedures" document.

  Once your complete Compensation Appeal Package is submitted, the VCF will review the information to confirm you have a valid appeal, and will notify you of the next steps specific to your appeal and the scheduling of your hearing.

- **Notifying the VCF of new Collateral Source Payments**: You must inform the VCF of any new collateral source payments you receive, or become entitled to receive, such as a change to your disability or survivor benefits, as this may change the amount of your award. If you notify the VCF within 90 days of learning of the new collateral source payment, your award will not be adjusted to reflect the new entitlement or payment. If you notify the VCF more than 90 days after learning of the new or revised entitlement or payment, the VCF may adjust your award to reflect the new payment as an offset, which may result in a lower award. If you need to notify the VCF of a new collateral source payment, please complete the "Collateral Offset Update Form" found under "Forms and Resources" on the www.vcf.gov website.

Your award was calculated using our published regulations, and I believe it is fair and reasonable under the requirements of the VCF Permanent Authorization Act. As always, I emphasize that no amount of money can alleviate the losses suffered on September 11, 2001.

If you have any questions, please call our toll-free Helpline at 1-855-885-1555. Please have your claim number ready when you call: **VCF0108166**. For the hearing impaired, please call 1-855-885-1558 (TDD). If you are calling from outside the United States, please call 1-202-514-1100.



September 11th
Victim Compensation Fund

Sincerely,

Rupa Bhattacharyya
Special Master
September 11th Victim Compensation Fund

cc: WENDELL TONG



September 11th
Victim Compensation Fund

## Award Detail

Claim Number:     VCF0108166
Decedent Name:    LAWRENCE BYRNES

| PERSONAL INJURY CLAIM (Losses up to Date of Death) | |
|---|---|
| **Lost Earnings and Benefits** | |
| Loss of Earnings including Benefits and Pension | $0.00 |
| Mitigating or Residual Earnings | $0.00 |
| **Total Lost Earnings and Benefits** | $0.00 |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Disability Pension | $0.00 |
| Social Security Disability Benefits | $0.00 |
| Workers Compensation Disability Benefits | $0.00 |
| Disability Insurance | $0.00 |
| Other Offsets related to Earnings | $0.00 |
| **Total Offsets Applicable to Lost Earnings** | $0.00 |
| | |
| **Total Lost Earnings and Benefits Awarded** | $0.00 |
| | |
| **Other Economic Losses** | |
| Medical Expense Loss | $0.00 |
| Replacement Services | $0.00 |
| **Total Other Economic Losses** | $0.00 |
| | |
| **Total Economic Loss** | $0.00 |
| | |
| **Total Non-Economic Loss** | ▮▮▮▮ |
| | |
| **Subtotal Award for Personal Injury Claim** | ▮▮▮▮ |



September 11th
Victim Compensation Fund

| DECEASED CLAIM (Losses from Date of Death) | |
|---|---|
| **Loss of Earnings including Benefits and Pension** | |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Survivor Pension | |
| SSA Survivor Benefits | |
| Worker's Compensation Death Benefits | |
| Other Offsets related to Earnings | |
| **Total Offsets Applicable to Loss of Earnings and Benefits** | |
| | |
| **Total Lost Earnings and Benefits Awarded** | $0.00 |
| | |
| **Other Economic Losses** | |
| Replacement Services | $0.00 |
| Burial Costs | ■■■■■ |
| **Total Other Economic Losses** | ■■■■■ |
| | |
| **Total Economic Loss** | ■■■■■ |
| | |
| **Non-Economic Loss** | |
| Non-Economic Loss - Decedent | ■■■■■ |
| Non-Economic Loss - Spouse/Dependent(s) | ■■■■■ |
| **Total Non-Economic Loss** | ■■■■■ |
| | |
| **Additional Offsets** | |
| Social Security Death Benefits | ■■■■■ |
| Life Insurance | ■■■■■ |
| Other Offsets | $0.00 |
| **Total Additional Offsets** | ■■■■■ |
| | |
| **Subtotal Award for Deceased Claim** | ■■■■■ |



September 11th
Victim Compensation Fund

| Subtotal of Personal Injury and Deceased Claims | |
|---|---|
| PSOB Offset | $0.00 |
| Prior Lawsuit Settlement Offset | $0.00 |
| Award Paid on Prior Personal Injury Claim | ██████ |
| TOTAL AWARD | ██████ |
| | |
| Factors Underlying Economic Loss Calculation | |
| Annual Earnings Basis (without benefits) | |
| Percentage of Disability attributed to Eligible Conditions - applicable to Personal Injury losses | |
| Start Date of Loss of Earnings Due to Disability - applicable to Personal Injury losses | |

| Eligible Conditions Considered in Award |
|---|
| Chronic Rhinitis |
| Esophageal Reflux |
| Malignant Neoplasm Bronchus&lung Unspec Site |
| Malignant Neoplasm of Bladder Part Unspecified |

# Family Member Affidavits

Lawrence M. Byrnes, Jr.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

In Re:

TERRORIST ATTACKS ON                                        03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

-------------------------------------------------------------- X    **AFFIDAVIT OF**
RAYMOND ALEXANDER, et al.,                                  **LAWRENCE M. BYRNES**


                                        Plaintiffs,          21-CV-03505 (GBD)(SN)


                    V.

ISLAMIC REPUBLIC OF IRAN,

                                Defendant.
-------------------------------------------------------------- X

STATE OF NEW YORK          )
                           : SS
COUNTY OF NASSAU           )


          LAWRENCE M. BYRNES, being duly sworn, deposes and says:

    1.      I am a plaintiff in the within action, am over 18 years of age, and reside at

██████████████████████████████████████████

    2.      I am currently 62 years old, having been born on ████████████████

    3.      I am the son of Decedent, Lawrence M. Byrnes, upon whose death my
claims are based. I submit this Affidavit in support of the present motion for a default
money judgment for the claim made on behalf of my father's estate and for my solatium
claim. On July 25, 2016, I was issued Letters Testamentary as Executor of my father's
estate by the Suffolk County Surrogate's Court.

    4.      My father passed away from lung cancer on June 14, 2015, at the age of 79. It was
medically determined that this illness was causally connected to his exposure to the toxins
resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

5.     My Dad was an integral part of my daily life. Growing up he taught me many things; how to be reliable, trustworthy, honest, dependable and a lot of other mechanical/handyman life skills that I use every day, we were extremely close. I would discuss all the goals, achievements, and dreams that I had with him and at times he would offer his advice when he felt it was needed and other times just let me figure things out on my own along the way. He was the central support system for my mom and entire family. In my adult life, we used to vacation together, fish together and spend a lot of quality family time on the weekends. He was also an integral part of my children's lives, and they loved having him living so close as he came to many school activities and sporting events. Dad supported them in everything and everything they did. We all miss him terribly.

6.     Even though he was retired from the FDNY, my father went to the site when he heard about the attacks at the WTC. He was able to get there from his home (which at that time was in Valley Stream, NY) just as the first building fell. My father remained on site to assist and coordinate rescue efforts utilizing his FDNY Battalion Chief skills and his knowledge of the buildings which were his post during the last 7 years of his station in the First Battalion on Duane Street in lower Manhattan. He worked all day on 9/11 and later that evening taken to Bellevue Hospital to be decontaminated and sent home the following day. He returned to the site daily to Ground Zero to assist in setting up GPS mapping to document the wreckage of the towers and assist in any rescue operations for 2 months after the initial attacks on 9-11-2001.

7.     In 2014 it was brought to our attention that my dad was diagnosed with chronic rhinitis, esophageal reflux, malignant neoplasm bronchus and lung and malignant neoplasm of bladder. I later learned that bladder cancer was initially diagnosed as early as 2009 at which time

he was being monitored closely and handling doctor visits and different procedures on his own. In the summer of 2014 he deteriorated rapidly, at this time the doctors diagnosed lung cancer which was progressing and affecting his ability to breathe and function daily. From the fall of 2014 until the time of his death, June 14, 2015, most of the activities and time my dad enjoyed spending doing things he loved were shortened and eventually nonexistent due to the rapid progression of the cancer. Based on biopsies and results from various testing doctors basically told him that it was untreatable so there were no treatments given aside from pain medications and oxygen to keep him comfortable. His quality of life was extremely compromised due to the illnesses and being unable to provide treatment.

8.     As Dad's condition worsened, my siblings and I were there to help along the way, most of those responsibilities would fall onto me. Days turning into weeks taking him to doctors' visits, various procedures, surgery and back and forth to the hospital for numerous stays. I was providing for the man who had always provided for me and was not fully prepared for the job or caring for my father, his pride and my need to keep his dignity intact was always a challenge. During the time I was taking care of my Dad I spent long hours and days away from my own growing children (at the time were 9 and 10 years of age) a time at which they really needed their own father present in their daily life activities. It was a difficult time for all, we did what we needed to do to take care of him.

**LAWRENCE M. BYRNES**

Sworn before me this
8th day of November 2023

Notary public

AMANDA SCISCIOLI
Notary Public - State of New York
NO. 01SC6424336
Qualified in Nassau County
My Commission Expires Nov 1, 2025

Patricia Byrnes

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

In Re:

TERRORIST ATTACKS ON                                  03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

-------------------------------------------------------------- X         **AFFIDAVIT OF**
RAYMOND ALEXANDER, et al.,                                       **PATRICIA BYRNES**


                                        Plaintiffs,        21-CV-03505 (GBD)(SN)


                        V.


ISLAMIC REPUBLIC OF IRAN,

                                Defendant.
-------------------------------------------------------------- X

STATE OF FLORIDA          )
                          : SS
COUNTY OF PASCO           )


        PATRICIA BYRNES, being duly sworn, deposes and says:

        1.      I am a plaintiff in the within action, am over 18 years of age, and reside at
████████████████████████████████████████████

        2.      I am currently 65 years old, having been born on ████████████

        3.      I am the daughter of Decedent, Lawrence M. Byrnes, upon whose death my
claim is based, and submit this Affidavit in connection with the present motion for a
default judgment and in support of my solatium claim.

        4.      My father passed away from lung cancer on June 14, 2015, at the age of 79. It was
medically determined that this illness was causally connected to his exposure to the toxins
resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

5. My father Lawrence M. Byrnes was retired from FDNY as of Battalion Chief Tower Ladder 1/ Engine 7. We were very close in the last 6 years of his life. I had lost my husband Joseph L Battaglia from a WTC related illness and turned to my father for support. My father lived on the same street as me in Hampton Bay, New York, and very close to me in Florida during the winter months. We saw each other daily. I am the oldest of his children and had the closest relationship to him.

6. My father drove into Manhattan from Valley Stream as soon as he saw the report of the initial plane impact Ladder 1 Engine 7 on Duane St, was his firehouse for the last 10 years of his career, and having the plans and notes in his basement from his work on the 1993 bombing and his leadership on the rebuilding of fire systems in their buildings he knew he could assist in the recovery effort. He responded to the towers and witnessed the first and second collapses. He assembled teams from unassigned firefighters on scene and dispatched them from a makeshift command past in Ladder 10 Engine 10, after being released from the hospital that night, he continued to report as a representative of FDNY office Management for a period of more than 40 days. Chief Byrnes reporting to WTC 911 documentary filmed by James Hanlon, Gedeon and Jules Naudet.

7. My dad's illness showed up little by little, prostate cancer, lung cancer, he was aware of the toxic exposure in the initial days of the recovery response at the WTC but continued assisting in search and recovery efforts. My dad reported to FDNY Medical at 9 Metrotech Center, Brooklyn, which assisted him over time with his illness until his death in June 2015.

8. He was my best friend, a daily support and to see him die as a result of service to the WTC disaster and his fellow firefighters was extremely difficult to this day.

PATRICIA BYRNES

Sworn before me this

8th day of October, 2023

Notary public

CHRISTINE L TURY
Notary Public - State of Florida
Commission # HH 292928
My Comm. Expires Aug 1, 2026
Bonded through National Notary Assn.

# Thomas Byrnes

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

In Re:

TERRORIST ATTACKS ON                           03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

------------------------------------------------------------- X          **AFFIDAVIT OF**
RAYMOND ALEXANDER, et al.,                              **THOMAS BYRNES**


                                    Plaintiffs,          21-CV-03505 (GBD)(SN)


                    V.

ISLAMIC REPUBLIC OF IRAN,

                            Defendant.
------------------------------------------------------------- X

STATE OF MICHIGAN)
                                : SS
COUNTY OF OAKLAND)


        THOMAS BYRNES, being duly sworn, deposes and says:

1.      I am a plaintiff in the within action, am over 18 years of age, and reside at

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2.      I am currently 60 years old, having been born on ▮▮▮▮▮▮▮▮

3.      I am the son of Decedent, Lawrence M. Byrnes, upon whose death my claim
is based, and submit this Affidavit in connection with the present motion for a default
judgment and in support of my solatium claim.

4.      My father passed away from lung cancer on June 14, 2015, at the age of 80. It
was medically determined that this illness was causally connected to his exposure to the toxins
resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

5. My father Lawrence M. Byrnes was a FDNY Battalion Commander. He was the commanding officer of the WTC AOR for 13 of his 42 years of service. I, his fourth of six children, was a U.S. Navy reservist still maintaining a residence with my father. We would fish daily, restore a shared antique car, do construction projects, travel, and share daily activities together. I was not only a son but one of my father's closest loyal friends who would accompany him on every venture.

6. My father was informed of the initial plane impact from the news media. He reported to his previous command immediately in record time. Being the only officer at battalion HQ, my father briefed a probational firefighter and together they responded to the towers. While at the site, he witnessed the first and second collapse. He assembled teams from unassigned firefighters and dispatched them. He began the setup of a command post at Ladder 10/Engine 10 as this location was adjacent to the site. He was recognized for his position of authority and long-term mentor with detailed knowledge and experience dealing with the complex. Later that day, after both collapses, my father reported to an aid station to flush debris from his eyes. The medics detected his excessively low oxygen level and had him transported to a hospital for admission. Days after being released from the hospital, he continued his support for the effort as a subject matter expert in daily briefings and response control as a representative of FDNY by the Office of Emergency Management. He maintained a position of authority with full clearance coordinating the fluid attack strategies. These actions placed him at the site daily for a period greater than 40 days. Chief Lawrence Byrnes reporting for duty is recorded in the WTC 911 documentary by James Hanlon, Gedeon Naudet and Jules Naudet.

7. My father was informed of the toxic exposer by the Environmental Protection Agency in the early days of the response meetings. Knowing the hazards, it was still the responsibility of the staff to coordinate an organized approach with conforming to Personal

Protection Equipment for all. As supplies were made available, he, like others, used paper masks and later respirators. As the effort developed into a consistently organized daily approach, he regularly maintained medical observation with FDNY Medical at 9 Metrotech Ctr, Brooklyn New York. It was then disclosed to him of his imminent demise, being diagnosed with lung cancer.

8.    My father was my guiding purpose in life. I too served, as a fire safety director for the Port Authority at World Trade Center, a career molded by him. This gave me great pride and an opportunity to work with him professionally. He also assisted me in enlisting in the U.S. Navy, joining his previous command. Since his passing, the great structure of a close-knit family of 6 siblings lost direction and continuity. We are all lost and out of touch without structure. The strong bonds and values are gone as our patriarch has passed. The association with FDNY, family and New York is forever gone. Regardless of any attempt to communicate with my siblings, I am alone in the world without my greatest friend to share. I yearn to speak with my father daily who is no longer there.

THOMAS BYRNES

Sworn before me this
3rd day of August 2023

Notary public

LINA KIRYAKOZA
Notary Public - State of Michigan
County of Oakland
My Commission Expires Jun 9, 2025
Acting in the County of _Oakland_

Tara Cummings

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

In Re:

TERRORIST ATTACKS ON                            03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

------------------------------------------------------------------ X    **AFFIDAVIT OF**
RAYMOND ALEXANDER, et al.,                      **TARA MARIE CUMMINGS**


                              Plaintiffs,       21-CV-03505 (GBD)(SN)


            V.

ISLAMIC REPUBLIC OF IRAN,

                              Defendant.
------------------------------------------------------------------ X

STATE OF SOUTH CAROLINA    )
                           : SS
COUNTY OF DORCHESTER       )

        TARA MARIE CUMMINGS, being duly sworn, deposes and says:

1.      I am a plaintiff in the within action, am over 18 years of age, and reside at

███████████████████████████████████

2.      I am currently 58 years old, having been born on ████████

3.      I am the daughter of Decedent, Lawrence M. Byrnes, upon whose death my claim is based, and submit this Affidavit in connection with the present motion for a default judgment and in support of my solatium claim.

4.      My father passed away from lung cancer on June 14, 2015, at the age of 79. It was medically determined that this illness was causally connected to his exposure to the toxins resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

5.    FDNY Battalion Commander, Chief Lawrence M. Byrnes (retired) was the commanding officer of the WTC area of downtown NYC for 13 of his 42 years of service. He was a leader of firefighters and left a legacy in the FDNY. My father was my hero, the leader of my family. I am the fifth child, but I felt like I was his only child. I went fishing very often with my dad, he taught me how to pilot the boat, while he fished. My dad would come on class trips with my school, and on one of the trips he brought my class to downtown NYC, "the battery" to visit and tour the Fire boat "The Fire Fighter". It was an awesome memory. As I got older, we gardened together and did home projects together. I was in daily contact with my father my entire life. He guided me in a career to help others like himself. He was so impactful in that way, that he guided both my sons, his grandson to join FDNY. One of my sons has my dad's original badge number, following in his footsteps every day. There will never be a replacement or a moment in time that I can speak to him again or pull from his wisdom and knowledge of his life experience as a helping hand. My sons will never be able to gain his knowledge on his work at the FDNY. I know in my heart he is our angel, guiding them when they ride into danger and peril. My mentor, my son's mentor is gone, the New York City's mentor is gone.

6.    Chief Byrnes was informed of the initial plane impact from the news media. He reported to his previous command immediately in record time. Being the only officer at battalion HQ, Lawrence briefed a probational firefighter and together they responded to the towers. While at the site he witnessed the first and second collapse. He assembled teams from unassigned firefighters and dispatched them. Chief began the setup of a command post at ladder 10/Engine 10 as this location was adjacent to the site. The Chief was recognized for his position of authority and

long-term mentor with detailed knowledge and experience dealing with the complex. Later that day, after both collapses, the chief reported to an aid station to flush debris from his eyes. The medics detected his excessively low oxygen level and had him transported to a hospital for admission. Days after being released from the hospital, Chief Byrnes continued his support for the effort as a subject matter expert in daily briefings and response control as a representative of FDNY by the Office of Emergency Management. The Chief maintained a position of authority with full clearance coordinating the fluid attack strategies. These actions place Lawrence at the site daily for a period greater than 40 days. Chief Lawrence Byrnes reporting for duty is recorded in the WTC 911 documentary by James Hanlon, Gédéon Naudet and Jules Naudet

7.    The Chief was informed of the toxic exposer by the Environmental Protection Agency in the early days of the response meetings. Knowing the hazards, it was still the responsibility of the staff to coordinate an organized approach with conforming to Personal Protection Equipment for all. As supplies were made available, he as others used paper masks and later respirators. As the effort developed into a consistently organized daily approach, Chief Byrnes regularly maintained medical observation with FDNY Medical at 9 Metrotech Ctr, Brooklyn New York. It was then disclosed to him of his imminent demise.

8.    The impact of my father's 911 cancer was not an easy time for me. It was just as hard as when he passed. The event of 911 was tragic, severely tragic for many, and it is a wound that time does not heal, it only distances for certain people. Watching my father for years after 911, you could see he was deteriorating in health, he also knew it. When he was finally diagnosed, life would never be the same. I knew how it would end in his demise. The pain he was in was only going to intensify, watching him slowly die. I must say, I prayed that I never forgot how he looked, how his hands and how his funny broken finger looked. The sound of his voice. Crazy moments

come to mind, as I am praying for him, moments that you never forget as you are lying next to your loving dad as he is slowly dying.

TARA MARIE CUMMINGS

Sworn before me this

24 day of July 2023

Notary public

My Comm. Exp.
11/15/2027

Ann Marie Murphy

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

In Re:

TERRORIST ATTACKS ON                          03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

------------------------------------------------------------- X    **AFFIDAVIT OF**
RAYMOND ALEXANDER, et al.,                     **ANN MARIE MURPHY**

                                    Plaintiffs,    21-CV-03505 (GBD)(SN)

                        V.

ISLAMIC REPUBLIC OF IRAN,

                                    Defendant.

------------------------------------------------------------- X

STATE OF NEW YORK          )
                                        : SS
COUNTY OF

WESTCHESTER               )

        ANN MARIE MURPHY, being duly sworn, deposes and says:

        1.       I am a plaintiff in the within action, am over 18 years of age, and reside at

████████████████████████████████████

        2.       I am currently 55 years old, having been born on ███████████

        3.       I am the daughter of Decedent, Lawrence M. Byrnes upon whose death my

claim is based, and submit this Affidavit in connection with the present motion for a

default judgment and in support of my solatium claim.

        4.       My father passed away from lung cancer on June 14, 2015, at the age of 79. It was

medically determined that this illness was causally connected to his exposure to the toxins

resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

his cancer had progressed so quickly, we were almost sure the treatment would be to no avail. I recall my father going to Memorial Sloan Kettering Cancer Center to have a biopsy, not to help himself, but so research could be done on his tumor or cancerous cells to help someone else in the future. Even in my father's final days, my father's main goal was still to help others.

8.      My father passed away on June 14, 2015, only two months after his diagnosis. His diagnosis and death shortly after crushed me. My dad was my hero and support system. He was the glue that held our family together. I still have nightmares hearing his voice, hearing my mother's cry with worry for my dad's safety and the sight of walking through Ground Zero to get my dad home.  Since my dad's passing, I have had a permanent hole in my heart and his presence is deeply missed. My son was so impressed by dad and all he stands for that he decided to become an FDNY EMS. He will be graduating soon and unfortunately my father will not be there to guide him or witness the outcome of the influence he left on those around him. As for myself, there is not one moment when I do not miss my dad.  I try to find peace by rewatching his past interviews and hearing his voice and finding comfort in what a brave courageous person my dad was.

ANN MARIE MURPHY

Sworn before me this

1 day of December, 2023

Notary public

JAMES RYAN DALEY
Notary Public, State of New York
Reg. No. 01DA6354224
Qualified in Nassau County
Commission Expires February 6 20