# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |

This document relates to:
*Cheryl Rivelli, et al. v. Islamic Republic of Iran*, No. 1:18-cv-11878 (GBD)(SN)
*Matthew Rowenhorst, et al. v. Islamic Republic of Iran*, No. 1:18-cv-12387 (GBD)(SN)

**MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION FOR FINAL JUDGMENT AS TO LIABILITY AND FOR PARTIAL FINAL JUDGMENT FOR DAMAGES AGAINST THE ISLAMIC REPUBLIC OF IRAN FOR A HUSBAND AND WIFE WHO WERE MURDERED ON FLIGHT 11 ON SEPTEMBER 11, 2001 AND <u>WHO WERE NON-U.S. NATIONALS</u>**

ANDERSON KILL P.C.
Jerry S. Goldman, Esq.
Bruce E. Strong, Esq.
Alexander Greene, Esq.
1251 Avenue of the Americas
New York, NY 10020
Tel:    (212) 278-1000
Fax:   (212) 278-1733
Email:  jgoldman@andersonkill.com
            bstrong@andersonkill.com
            agreene@andersonkill.com

*Attorneys for Plaintiffs*

Dated:  New York, New York
           August 29, 2024

# **TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................. 1

DISCUSSION .................................................................................................................................... 3

(1)     PROCEDURAL BACKGROUND ................................................................................. 3

       A.     Applicable Orders ................................................................................................ 3

       B.     Iran Was Duly Served and Default Was Duly Entered as this Court Previously Found at ECF No. 9931. ........................................................................ 4

(2)     THE COURT HAS SUBJECT-MATTER JURISDICTION OVER THE COMMON LAW CLAIMS OF THE Estates of Michael Theodoridis and Rahma Salie AGAINST IRAN UNDER JASTA. ............................................................. 4

(3)     IRAN IS LIABLE TO The Estates of Michael Theodoridis and Rahma Salie FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER NEW YORK LAW. .................................................................................................................. 4

(4)     The Court Should Enter Damages Awards Against Iran and in Favor of THE Estates of Michael Theodoridis and Rahma Salie in Amounts Previously Authorized .................................................................................................................... 9

       A.     Background ........................................................................................................... 9

       B.     Solatium Damages .............................................................................................. 11

D.     Prejudgment Interest ........................................................................................................ 11

CONCLUSION ................................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashton v. al Qaeda Islamic Army*,
    02-CV-6977 (GBD)(SN) ..................................................................................1, 3, 12

*Bauer v. Al Qaeda Islamic Army*,
    02-CV-7236 (GBD)(SN) ..................................................................................1, 3, 12

*Flanagan* v. *Islamic Republic of Iran*,
    87 F. Supp. 3d 93 (D.D.C. 2015) ................................................................................5

*Petkewicz v. Dutchess Cty. Dep't of Cmty. & Fam. Servs.*,
    137 A.D.3d 990 (2016) ................................................................................................5

**Statutes**

28 U.S.C. § 1605B ..............................................................................................1, 3, 12

28 U.S.C. § 1608(a) ................................................................................................1, 12

docs-100714212.4

## INTRODUCTION

This renewed judgment motion against the Islamic Republic of Iran ("Iran") is brought on behalf of the Estates of Michael Theodoridis and Rahma Salie, who died simultaneously when Flight 11 struck the World Trade Center on September 11, 2001, and whose motion for solatium damages was denied without prejudice at ECF No. 9931, at 6 n.5.

For the reasons set forth below, the statements contained in the Declaration of Jerry S. Goldman, Esq., with exhibits appended thereto ("Goldman Declaration"), which is being filed contemporaneously with this Memorandum of Law, as well as those set forth in prior motions for damages made on behalf of other *O'Neill* wrongful death plaintiffs, the Estates of Michael Theodoridis and Rahma Salie who are identified in Exhibit A to the Goldman Declaration (which is Exhibit B to the Proposed Order), by and through their counsel, Anderson Kill P.C., respectfully move this Court for an Order:

(1) entering a judgment as to liability for the Estates of Michael Theodoridis and Rahma Salie for their common law claims against Iran;[1] AND,

(2) finding Iran jointly and severally liable with the Taliban and awarding the Estates of Michael Theodoridis and Rahma Salie damages judgments against Iran in the same amounts previously awarded by this Court to various similarly situated plaintiffs in *Burnett*, *Havlish*, *Ashton*, *Bauer*, *O'Neill*, and other cases; AND,

---

[1] The Court previously determined that (i) service of process in the above-captioned matters was properly effected upon Iran in accordance with 28 U.S.C. § 1608(a) for sovereign defendants, (ii) the Court has subject-matter jurisdiction over the common law claims of non-U.S. national plaintiffs pursuant to 28 U.S.C. § 1605B, and (iii) that this Court has subject-matter jurisdiction over Iran under the common law for actions arising out of intentional infliction of emotional distress based on the intentional acts of international terrorism perpetrated on September 11, 2001 that intentionally targeted innocent civilians resulting in significant grief sustained by family members of those killed in the attacks. *See* ECF No. 9931 at 7.

(3) awarding intentional infliction of emotional distress (solatium) damages to the Estates of Michael Theodoridis and Rahma Salie in the amount of $12,500,000 per spouse, as set forth in Exhibit A; AND,

(4) awarding the Estates of Michael Theodoridis and Rahma Salie prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages; AND,

(5) granting the Estates of Michael Theodoridis and Rahma Salie permission to seek punitive damages, economic damages, and other appropriate damages, at a later date; AND,

(6) granting permission for all other Plaintiffs in these actions not appearing in Exhibit A to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed; AND,

(7) granting to the Estates of Michael Theodoridis and Rahma Salie such other and further relief as this honorable court deems just and proper.

Rahma Salie and Michael Theodoridis were on Flight 11 on their way to a wedding in California when al Qaeda terrorists hijacked their plane. Their lives together ended all too soon when the terrorists flew the plane into the World Trade Center. They had fallen in love and married in 1998 and were expecting their first child. They had a whole life left to live together as they would grow their family and pursue their dreams. As the plane flew more erratically, as the hijackers began killing crew members and passengers, and as the plane lurched toward its ultimate target, Michael Theodoridis and Rahma Salie experienced extreme emotional distress—dread—not only because of their own pending deaths, but also knowing that the love of their lives, their unborn child, and their dreams would die with them. The claims of the Estates of

2

Michael Theodoridis and Rahma Salie against Iran are fully supported by existing record evidence that should be applied to their common law claims for intentional infliction of emotional distress, in accordance with 28 U.S.C. § 1605B ("JASTA"), as the Court has done previously for other non-U.S. national 9/11 family members at ECF No. 9931.

## DISCUSSION

**(1)   PROCEDURAL BACKGROUND**

### A.   Applicable Orders

This motion is being submitted in accordance with various procedural orders entered by this Court, and the form of this motion and the relief requested herein are intended to comply with various Orders of this Court, including the following:

> a.   The Court's January 24, 2017 Order, ECF No. 3435,[2] requiring that "[a]ll further motions for final judgment against any defaulting defendant shall be accompanied by a sworn declaration attesting that the attorney has (1) complied with the due diligence safeguards [referenced in Section II.D. of the January 23, 2017 letter from the Plaintiffs' Executive Committee (ECF No. 3433)] and (2) personally verified that no relief has previously been awarded to any plaintiff included in the judgment (or, if relief has been awarded, the nature of that relief)." For compliance with the required sworn declaration, please see paragraph 11 below.
>
> b.   The Court's October 14, 2016 Order, ECF No. 3363, concerning the amounts of solatium damage awards.
>
> c.   The Court's October 14, 2016 Order, ECF No. 3362, related to the cases captioned as *Bauer v. Al Qaeda Islamic Army*, 02-CV-7236 (GBD)(SN) and *Ashton v. al Qaeda Islamic Army*, 02-CV-6977 (GBD)(SN).
>
> d.   The Court's October 28, 2019 Order, ECF No. 5234, setting forth updated procedural rules.
>
> e.   The Court's October 28, 2019 Order, ECF No. 5338, setting forth the scheduling order.

---

[2] All ECF numbers are to the MDL docket unless stated otherwise.

   f. The Court's May 5, 2022 Order, ECF No. 7963, setting forth procedures for filing expert reports submitted in support of default judgments.

   g. The Court's September 22, 2023 Order, ECF No. 9355, setting forth procedures for default judgment motions.

**B. Iran Was Duly Served and Default Was Duly Entered as this Court Previously Found at ECF No. 9931.**

As set forth in Exhibit A to the Proposed Order, Plaintiffs herein duly served Iran. The Clerk's Office, upon Plaintiffs' applications, issued Clerk's Certificates of Default. *See also* ECF No. 9931 at 2.

**(2) THE COURT HAS SUBJECT-MATTER JURISDICTION OVER THE COMMON LAW CLAIMS OF THE ESTATES OF MICHAEL THEODORIDIS AND RAHMA SALIE AGAINST IRAN UNDER JASTA.**

As this Court found for other non-U.S. national estates and immediate family members of 9/11 decedents, this Court has subject-matter jurisdiction over the common law claims of the Estate of Michael Theodoridis and Rahma Salie. *See* ECF No. 9931 at 2 ("This Court previously ruled in this case that it has subject matter and personal jurisdiction when Plaintiffs assert state law claims against Iran and properly effectuate service. (*See* ECF No. 9666, at 2-5; *see also* 28 U.S.C. §§ 1330, 1605B(b), 1608(a).) All that remains is for the Court to address Iran's liability and the appropriate damages.").

**(3) IRAN IS LIABLE TO THE ESTATES OF MICHAEL THEODORIDIS AND RAHMA SALIE FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER NEW YORK LAW.**

This Court previously denied the motion for a liability and damages judgment brought on behalf of the Estates of Michael Theodoridis and Rahma Salie without prejudice on the ground that "Mr. Theodoridis and Ms. Salie, a married couple flying together on American Airlines

Flight 11, were killed simultaneously and counsel d[id] not address the impact of this fact on their IIED claims." ECF No. 9931 at 6 n.5.

This Court should grant this renewed motion brought on behalf of the Estates of Michael Theodoridis and Rahma Salie because they can properly assert intentional infliction of emotional distress (solatium) ("IIED") claims under New York law.[3] Specifically, the Estates of Michael Theodoridis and Rahma Salie can readily establish the IIED elements of (1) extreme and outrageous conduct, (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress, (3) a causal connection between the conduct and injury, and (4) severe emotional distress. *Petkewicz v. Dutchess Cty. Dep't of Cmty. & Fam. Servs.*, 137 A.D.3d 990 (2016).

Regarding the first two elements, the Court's prior analysis when entering IIED judgments applies here. As this Court previously held:

> Plaintiffs, whose family members were killed in the 9/11 Attacks, have established Iran's liability for aiding and abetting IIED. Iran aided and abetted al Qaeda by knowingly providing substantial assistance in plotting the 9/11 Attacks. *(See* ECF No. 9666, at 8.) And by carrying out the 9/11 Attacks, al Qaeda committed IIED. In satisfaction of the first two elements, the 9/11 Attacks, as "[a]cts of terrorising] [were] by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Flanagan* v. *Islamic Republic of Iran*, 87 F. Supp. 3d 93, 115 (D.D.C. 2015).

ECF No. 9931 at 5-6.

The last two elements of IIED are also satisfied here. Michael Theodoridis and Rahma Salie, a married couple, were both passengers on American Airlines Flight 11. *See* 9/11 Memorial & Museum webpage annexed as Ex. C to the Goldman Declaration. Michael

---

[3] Because Michael Theodoridis and Rahma Salie were killed at the World Trade Center, this Court analyzes their intentional infliction of emotional distress claims under New York law. ECF No. 9931 at 3.

Theodoridis grew up in Switzerland and moved to Massachusetts to study at Boston University. *Id*. Rahma Salie grew up in Japan and similarly moved to Massachusetts to attend Wellesley College. *Id*. Michael and Rahma were married in 1998. *Id*. On September 11, 2001, Michael and Rahma boarded Flight 11 to attend a wedding in California. *Id*. Rahma was pregnant and the couple was expecting their first child in November 2001. *Id*. Michael and Rahma were killed when the plane was flown into the World Trade Center.

While Michael Theodoridis and Rahma Salie were killed simultaneously, they each sustained extreme emotional distress from witnessing each other's immense pain and suffering leading up to each other's death. The horror Michael Theodoridis and Rahma Salie experienced prior to their deaths is well supported by evidence that has been submitted to, and accepted by, this Court.

Dr. Alberto Diaz, Jr., M.D., a retired Navy Rear Admiral, submitted an expert report in support of the *Havlish* Plaintiffs' Amended Damages Inquest Memorandum in which he opined on the pain and suffering that 9/11 victims experienced. ECF No. 2554-3 (Exhibit B).

In opining on the extreme fear that 9/11 victims experienced, Dr. Diaz noted that 9/11 victims' "physiological response [could have] [ ] include[d] an increased heart rate (sometimes feeling as if your heart was going to "jump out of your chest"), elevated blood pressure, drying of the mouth, trembling, sweating, blanching, feelings of faintness, nausea and vomiting, and a general homeostatic dysregulation." ECF No. 2554-3 (Exhibit B) at 2.

In addition to physiological responses 9/11 victims may have experienced, Dr. Diaz gave chilling testimony on the psychological trauma endured by 9/11 victims:

> "The psychological effects of extreme fear and fright are equally dreadful. Overwhelming fear leads to overwhelming anxiety, which many have described as

> feeling 'near death.' Subjectively, overwhelming anxiety is the most intense and dreadful feeling a human being can experience. Unrelenting, extreme anxiety leads to a general cognitive 'meltdown,' Once 'flight or fight' becomes clearly impossible, the mind is, for all intents and purposes, immobilized. This 'quiescence' had evolutionary value in order to freeze the individual in an unexpected encounter with a dangerous predator, but in the modern world it compounds the dangers and threats surrounding the individual. Quiescence does not imply merciful 'numbness,' only a physical impossibility to react to the threat. Some authors often refer to the 'parallel mind of fear.' Another consequence of this type of overwhelming stress is 'tachypsia.' As if experiencing the aforegoing was not enough, nature compounds the pain by subjectively slowing time down. What may transpire over the course of a few seconds may be experienced as happening in very slow motion, thus prolonging the agony. Extreme fear and anxiety is an experience that very few of us can relate to, but, from the descriptions above, we can at least obtain a glimpse into the tortured and desperate minds of the victims."

ECF No. 2554-3 (Exhibit B) at 3.

And in specifically discussing the trauma experienced by the passengers on American Airlines 11, Dr. Diaz discussed how the hijackers stabbed two flight attendants and slashed the throat of a business class passenger, how they threatened passengers and crew with detonating a bomb, and also used Mace and/or pepper spray for emphasis. ECF No. 2554-3 (Exhibit B) at 3-4.

Dr. Diaz further discussed phone communications of two of the flight attendants:

> "Two flight attendants (Betty Ong and Madeline Sweeny) contacted the ground via cell phone and were able to describe the on-going situation. At 08:18 the plane entered a "rapid descent" and began to move erratically; at 08:19, Ms. Sweeny stated "we can't breathe" (apparently because of the Mace or pepper spray being used). Finally at 08:44 Ms Ong reported that "We are flying very, very low! We are flying way too low! *Oh my God, we are way too low!!"* A few seconds later she was consumed by the exploding fireball resulting from the high speed impact with the North Tower of the World Trade Center." ECF No. 2554-3 (Exhibit B) at 4. Dr. Diaz opined with respect to the lead up to the crash into the World Trade Center: "[i]t is clear that both planes descended extremely rapidly, intentionally picking up speed to maximize destructive energy. They were flying very erratically, particularly AA 11 as it flew among the skyscrapers of New York City. Videos of AA 11 capture the sound of the engines as they roar to full throttle just before impact. [ ] It is difficult to estimate the induced "G" forces, but they must have added significantly to the victims' dread and terror in those last few moments. Noteworthy is the "quiescence" (as noted in the prior section) of most of the passengers in the initial moments of the hijacking, followed by confusion and inability to focus and develop a plan of action, despite awareness that destruction was

7

imminently at hand. The trained cabin crew did a commendable job under unbelievably stressful conditions and was able to suppress some of the signals from the amydala and the "fear network," but as their training did not involve action, they remained essentially passive reporters of their own demise. Mr. Hanson provides the most harrowing description of the conditions undoubtedly aboard both aircraft. *"Getting very bad passengers are getting sick and throwing up I think we are going down....My God my God!!"* Although the aircraft jerky movements may have contributed to airsickness in a few isolated cases, we know from experience that the bad weather conditions will not produce the kind of mass "sickness" described by Mr. Hanson. He is describing the physiological end result of absolute and abject terror, the kind that makes up our very worst nightmares. Of note is both Ms Ong's and Mr. Hanson's call to God as their final words. They knew with absolute certainty that this would be the end of their existence; their hopes and dreams, everything they were and had been, and even at the absolute end, fear of the "great unknown." All of those aboard were certainly exquisitely aware that there would be no deliverance and of the fear that there would only be, for however brief a moment, only unimaginable pain and torment. A moment prolonged by the subjective slowing of time common in these situations.

ECF No. 2554-3 (Exhibit B) at 4-5.

As established by Dr. Diaz's testimony, Michael Theodoridis and Rahma Salie suffered severe emotional distress. And just as Dr. Diaz testified that the 9/11 victims on the passenger planes knew they themselves would be killed, it follows that these same plaintiffs would also have been aware that a spouse, sitting right next to them, was also experiencing severe emotional distress and would also be killed. This knowledge would have greatly increased Michael Theodoridis' and Rahma Salie's own pain and suffering. Further adding to the emotional distress suffered by Michael Theodoridis and Rahma Salie is the fact that Rahma Salie was pregnant at the time and due to give birth in November 2001. The 9/11 Memorial lists Rahma's name as "Rahma Salie and her unborn child." *See* photo annexed as Ex. B to the Goldman Declaration. It is impossible to put into words the emotional trauma both Michael Theodoridis and Rahma Salie suffered knowing they themselves would die, their spouse (each other) would die, their unborn child would die, and all they had built and hoped for in the future would come to an end.

This Court accepted Dr. Diaz's testimony on the pain and suffering experienced by 9/11 victims and awarded damages judgments on the basis of his testimony. *See* ECF No. 2618 at 8 (Judge Maas' Report and Recommendation) ("Although the specifics of each decedent's demise remain largely unknown, the Plaintiffs have submitted the expert report of Dr. Alberto Diaz, Jr., M.D., a retired Navy Rear Admiral, which provides a chilling account of the horrific conditions that each of the Estate Plaintiffs' decedents likely encountered immediately before his or her death. (See Pls.' Mem. Exs. D, E). As Dr. Diaz's report confirms, there is little doubt that many, if not all, of the decedents in this case experienced unimaginable pain and suffering on September 11, 2001."); ECF No. 2623 at 4 (adopting Report and Recommendation) ("there is little doubt that many, if not all, of the decedents in this case experienced unimaginable pain and suffering on September 11, 2001."). It follows that the Court should also find Iran liable for IIED here where a husband and pregnant wife were sitting next to each other on Flight 11, would have seen their loved one suffering, and would have known that they too would die, along with their unborn child, and their future.

This Court should find Iran liable to the Estates of Michael Theodoridis and Rahma Salie for their IIED/solatium claims.

**(4)   THE COURT SHOULD ENTER DAMAGES AWARDS AGAINST IRAN AND IN FAVOR OF THE ESTATES OF MICHAEL THEODORIDIS AND RAHMA SALIE IN AMOUNTS PREVIOUSLY AUTHORIZED.**

   **A.   Background**

The Estates of Michael Theodoridis and Rahma Salie now respectfully request that this Court grant them a judgment awarding them (1) solatium (IIED) damages for the losses they suffered as the immediate family member of a 9/11 decedent (as indicated in Exhibit A to the Goldman Declaration) in the same per plaintiff amounts previously awarded by this Court to

various similarly situated plaintiffs; (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; (3) permission for plaintiffs identified in Exhibit A to seek punitive damages, economic damages, or other damages at a later date; and (4) for all other Plaintiffs not appearing on Exhibit A, to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

The Estates of Michael Theodoridis and Rahma Salie are the estates of a husband and wife who were both killed in the September 11, 2001 terrorist attacks while traveling together on Flight 11, as demonstrated by documentary evidence.[4] *See* Goldman Declaration at ¶¶ 5-7. With respect to each estate plaintiff, the personal representative has provided the undersigned counsel with proof that he or she has been appointed by the court as the personal representative of the deceased relative and/or 9/11 decedent estate. The Court previously adopted the same damages rubric when it granted liability and damages judgments for solatium/IIED claims of non-U.S. national family members of 9/11 decedents and the Court should do the same here. ECF No. 9931. *see also* ECF No. 2618 at 14 (awarding *Havlish* plaintiffs common law damages against non-sovereign defendants in same amounts as § 1605A claims against Iran "under traditional tort principles" even though *Havlish* plaintiffs did not maintain Anti-Terrorism Act claims against these defendants and Section 1605A claims were inapplicable as to these defendants).

Accordingly, while JASTA confers jurisdiction, the appropriate damages framework for the common law claims of the Estates of Michael Theodoridis and Rahma Salie should be the same framework that has been applied to claims maintained under § 1605A, as set forth below,

---

[4] Such evidence is consistent with that contemplated in the Court's July 10, 2018 Order, ECF No. 4045.

and as the Court previously awarded to other non-U.S. national family members of 9/11 decedents. ECF No. 9931

### B. Solatium Damages

In accordance with the amounts awarded to other non-U.S. national spouses of 9/11 decedents at ECF No. 9931, the Estates of Michael Theodoridis and Rahma Salie respectfully request that this Court award them each a damages judgment of $12,500,000, as set forth in Exhibit A.

### C. Punitive Damages

In light of the Court's prior decision to defer the punitive damage issues until a later stage of the litigation, the Estates of Michael Theodoridis and Rahma Salie request permission to address the issue of punitive damages at a later date. *See*, *e.g.*, ECF No. 3666 (Judge Daniels' Order in *Burnett* authorizing plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

### D. Prejudgment Interest

In accordance with the Court's previous Order awarding liability and damages judgments to other non-U.S. national immediate family members of 9/11 decedents, the Estates of Michael Theodoridis and Rahma Salie respectfully request that the clerk be directed to award prejudgment interest at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001, until the date of the judgment. ECF No. 9931 at 7.

### CONCLUSION

For all of the reasons herein, in the Goldman Declaration, and in the papers previously submitted to this Court in support of damages against Iran in this MDL, the Estates of Michael Theodoridis and Rahma Salie respectfully request that this Honorable Court enter an Order:

(1) entering a judgment as to liability for the Estates of Michael Theodoridis and Rahma Salie for their common law claims against Iran;[5] AND,

(2) finding Iran jointly and severally liable with the Taliban and awarding the Estates of Michael Theodoridis and Rahma Salie damages judgments against Iran in the same amounts previously awarded by this Court to various similarly situated plaintiffs in *Burnett*, *Havlish*, *Ashton*, *Bauer*, *O'Neill*, and other cases; AND,

(3) awarding intentional infliction of emotional distress (solatium) damages to the Estates of Michael Theodoridis and Rahma Salie in the amounts of $12,500,000 per spouse, as set forth in annexed Exhibit A; AND,

(4) awarding the Estates of Michael Theodoridis and Rahma Salie prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages; AND,

(5) granting the Estates of Michael Theodoridis and Rahma Salie permission to seek punitive damages, economic damages, and other appropriate damages, at a later date; AND,

(6) granting permission for all other Plaintiffs in these actions not appearing in Exhibit A to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed; AND,

---

[5] The Court previously determined that (i) service of process in the above-captioned matters was properly effected upon Iran in accordance with 28 U.S.C. § 1608(a) for sovereign defendants, (ii) the Court has subject-matter jurisdiction over the common law claims of non-U.S. national plaintiffs pursuant to 28 U.S.C. § 1605B, and (iii) that this Court has subject-matter jurisdiction over Iran under the common law for actions arising out of intentional infliction of emotional distress based on the intentional acts of international terrorism perpetrated on September 11, 2001 that intentionally targeted innocent civilians resulting in significant grief sustained by family members of those killed in the attacks. *See* ECF No. 9931 at 7.

   (7) granting to the Estates of Michael Theodoridis and Rahma Salie such

other and further relief as this honorable court deems just and proper.

Dated: New York, New York   Respectfully submitted,
    August 29, 2024

               */s/ Jerry S. Goldman*
               ANDERSON KILL P.C.
               Jerry S. Goldman, Esq.
               Bruce E. Strong, Esq.
               Alexander Greene, Esq.
               1251 Avenue of the Americas
               New York, NY 10020
               Tel: (212) 279-1000
               Fax: (212) 278-1733
               Email: jgoldman@andersonkill.com
                    bstrong@andersonkill.com
                    agreene@andersonkill.com
               *Attorneys for Plaintiffs*