# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013)<br>Jodi Westbrook Flowers, *Co-Chair*<br>Donald A. Migliori, *Co-Chair*<br>Robert T. Haefele, *Liaison Counsel*<br>MOTLEY RICE LLC | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

October 9, 2024

The Honorable Sarah Netburn, U.S. Magistrate Judge
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

Re:   *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

The Plaintiffs' Executive Committees ("PECs") write to draw the Court's attention to allegations of serious, obstructive wrongdoing during expert discovery in the above-referenced litigation. Although Plaintiffs' initial review of the allegations have identified substantial indicia of reliability, the seriousness of the allegations compels further inquiry to assess whether appropriate sanctions are warranted.

The allegations, which Plaintiffs received in an anonymous July 2024 letter (attached hereto as Exhibit A (the "Whistleblower Letter")), concern defense expert, Jonathan Marks. Marks was retained by the Law Offices of Omar Mohammedi as an accounting expert for Defendant the World Assembly of Muslim Youth ("WAMY"). Marks served a rebuttal report for WAMY on August 7, 2020. Plaintiffs deposed Marks remotely via Zoom, on July 22, 2021.

The Whistleblower Letter asserts first-hand knowledge that Marks and his employer, the accounting and consulting firm Baker Tilly U.S. LLP, with WAMY and its counsel, engaged in wrongful conduct during Marks' engagement with WAMY. The conduct, as alleged, distorted the evidentiary record, obstructed expert discovery, and undermined the integrity and purpose of the deposition process (here, to elicit the expert's own independent and uninfluenced responses to the questions posed). The letter includes allegations (1) that the participating parties falsified Marks' time records to attribute to Marks' work performed by others, (2) that Marks' testimony regarding his engagement was false; (3) that the participating parties actively withheld discovery of evidence damaging to WAMY, and (4) that two undeclared individuals secretly attended Marks' deposition and, in coordination with WAMY counsel, coached Marks in real-time to shape his responses, including writing prompts on a whiteboard in the deposition room.[1]

---

[1] The letter details allegations that:

- Marks, Baker Tilly, and WAMY counsel are in possession of evidence supporting "a conclusion that WAMY was involved in financing the 9/11 terrorist attacks," including evidence that would lead "to the conclusion that WAMY was involved in financing the 9/11 terrorist attacks," but this evidence was deliberately withheld. (*cont'd*)

The Honorable Sarah Netburn
October 9, 2024
Page 2

      Details within the Whistleblower Letter point to the credibility of the letter and its allegations, warranting further investigation. For example, the letter correctly identifies Jonathan Marks as the witness whose deposition was taken. It correctly identifies Omar Mohammedi as the lawyer who retained Marks as an expert, and that Mohammedi retained him as an expert for WAMY. The letter also correctly states that only three people were disclosed as being in the deposition room. The letter also correctly identifies Baker Tilly employees by name and correctly identifies those employees as individuals engaged in the WAMY project (the employees identified were identified to be engaged on the project in documents produced in discovery). Finally, the letter correctly identifies areas of questioning asked during the deposition—including, for example, whether Marks wrote his report himself and whether Baker Tilly's investigation uncovered any "red flags," or information tending to show WAMY had engaged in wrongful conduct[2]

      With the benefit of additional details and context provided in the letter, Plaintiffs have reviewed the transcript and video of Marks' deposition,[3] and have identified multiple instances where Marks' behavior, demeanor or testimony—as well as other visual or audio indicia—are consistent with the allegations in the Whistleblower Letter, including the following:

- The deposition video itself includes indications that at least two undeclared persons were in the deposition room, situated behind the camera on the left-hand side of the frame (*i.e.,* to Marks' right). Marks' eyes can be seen glancing persistently at additional individuals to Marks' right in the deposition room.[4]

---

- The expert report of August 7, 2020, submitted in Marks' name, was authored wholly or principally by others, and was based on information culled selectively from investigations conducted by others in Marks' name.
- Two Baker Tilly employees surreptitiously attended and participated in Marks' July 22, 2021 remote deposition, and—together with WAMY counsel—secretly provided answers and other input to shape Marks' testimony, including by writing answers on a whiteboard in the deposition room.
- Marks lied at his deposition about the amount of time he spent working on the case. Baker Tilly's time records do not match the hours for Marks that were reported to Plaintiffs as required by the Court.
- The two Baker Tilly employees who secretly participated in Marks' July 22, 2021 deposition later filed a formal whistleblower complaint with Baker Tilly management and sent a ten-page letter to Baker Tilly management exposing wrongdoing related to Marks' work as an expert for WAMY. Notwithstanding this complaint and the correspondence to Baker Tilly's operating committee, general counsel, and its chairman, the firm has not reported the wrongdoing to Plaintiffs' counsel or this Court.

[2] Plaintiffs raised both issues in their *Daubert* motion to strike or limit Marks' testimony. *See* ECF No. 7346 at 7, 44-45. In its opposition to Plaintiffs' motion, WAMY responded that "Marks and his team reviewed and analyzed extensively WAMY's produced financial documents from which he concluded that the financial evidence does not support misconduct, criminal behavior, or terrorist financing activities on behalf of WAMY during the period 1992 through 2002." ECF No. 7602 at 28 (internal quotation marks omitted). WAMY's statement is starkly contradicted by the letter's allegations that Marks' work was insubstantial (not extensive), and that Baker Tilly's investigation was not exculpatory, but rather uncovered "very damaging evidence against WAMY."

[3] With the Court's permission, Plaintiffs are prepared to submit for the Court's review copies of the video and transcript of the July 22, 2021 deposition of Jonathan Marks, along with indicia of the alleged wrongdoing, so that the Court can make its own assessment.

[4] The deposition transcript identifies three WAMY attorneys in attendance at Marks' deposition—Omar Mohammedi, Fred Goetz, and Jill Mandell. Messrs. Mohammedi and Goetz both appear at various points on the video, whereas Ms. Mandel does not appear. Plaintiffs understand that Ms. Mandel logged in to the deposition via a remote Zoom connection, so she was not in the room together with Marks and Messrs. Mohammedi and Goetz.

- The deposition video also shows—especially during tense questioning—that Marks persistently appears to look at, gesture to, and receive prompts from others in the room; at least one unidentified voice is picked up on Marks' microphone; and close examination of the video reveals images of persons reflected in the glass behind Marks, perhaps even collaborating on a whiteboard, as alleged in the Whistleblower Letter.

- Statements in the Whistleblower Letter about "very damaging evidence against WAMY" having been found during Baker Tilly's investigation are supported by Marks' inconsistent testimony in response to Plaintiffs' questions about whether he had been asked to identify potential "red flags." Marks first said he had been asked to identify "things [he] saw as potential red flags," but then changed his answer to say he had not developed "a formal list." Later, when questioned by WAMY counsel after having had time to discuss the matter, Marks agreed with WAMY counsel's premise that nothing uncovered in Baker Tilly's investigation "r[o]se to the level where . . . there's any evidence of fraud or financial improprieties, money laundering, anything like that." Marks claimed he had been able to "dispose of" any red flags that had been identified.

If confirmed, this wrongdoing would invoke the Court's authority to impose sanctions, pursuant to Rule 30(d)(2), Rule 16(1)(f)(C), and Rule 37(b) of the Federal Rules of Civil Procedure.[5] Similarly, it may raise the prospect of Rule 11 sanctions based on statements by WAMY and its counsel in filings before this Court.

The PECs conferred with WAMY's counsel on a Teams call on October 1, 2024, during which we apprised WAMY counsel of the allegations that we had received and asked if WAMY's counsel was able to respond to the allegations so that we could apprise the Court of WAMY's position in this letter. We also asked WAMY's counsel to preserve evidence of the alleged wrongdoing and to direct Mr. Marks and his employer to do the same, which counsel agreed to do.

When told of the allegations, WAMY's counsel initially responded that they had been unaware of the allegations, would "note" them, and look into them. In a responsive letter after the meeting, WAMY counsel expressed the view that they felt "ambushed," emphasized that "absolutely nothing improper occurred with respect to WAMY expert Jonthan Marks," and they "intend[ed] to seek appropriate relief against whoever made these allegations . . . as well as any other actions that may become appropriate if a frivolous application is made." To be clear, Plaintiffs do not view calling the Court's attention to the serious allegations that have been raised to be frivolous.

In follow up exchanges with WAMY counsel, they have twice declined to respond to the allegations, accusing Plaintiffs of "gamesmanship" and insinuating that Plaintiffs had fabricated the allegations. On October 3, 2024, they advised that they would not respond to the allegations until Plaintiffs provided them with a copy of the letter with the allegations. On October 4, 2024, Plaintiffs provided WAMY counsel with a copy of the letter, reiterated that it was received anonymously, and

---

[5] As described in the Whistleblower Letter, Exhibit A, the circumstances represent serious violations of Rule 30, concerning proper deposition conduct, and of this Court's pretrial order concerning deposition protocols, ECF No. 3894, ¶¶ 60, 71, 92 (requiring all persons attending depositions to be identified on the deposition record and prohibiting witness coaching or otherwise improper shaping of witness testimony) as well as implicating the duty of candor by counsel to the tribunal.

The Honorable Sarah Netburn
October 9, 2024
Page 4

asked WAMY counsel to review the letter and to provide Plaintiffs with their position by October 7, 2024, so that we could include WAMY's position in this letter to the Court.

On October 8, 2024, WAMY counsel sent an email, again declining to respond to the allegations. Rather than responding to the allegations in the letter they now had in their possession, they again insisted on identifying the anonymous author, suggested that Plaintiffs had misled them in representing that the letter was anonymous, and implied that the letter suggested a relationship between PECs co-chair Sean Carter and the author. The letter is anonymous. Redactions to three lines at the end of the letter (added by Plaintiffs' counsel) are not a signature and do not identify the author. Mr. Carter has confirmed that he does not know who the author is and has no basis to believe that the author has any relationship with him or the Cozen O'Connor law firm.[6]

Given the severity of the allegations made in the Whistleblower Letter and the corroborative evidence from the deposition video and transcript, Plaintiffs respectfully seek and request that this Court authorize targeted discovery to investigate the allegations and determine whether sanctions are warranted. The targeted discovery Plaintiffs seek should include the discovery set forth in attached Addendum A.

Finally, Plaintiffs request that the Court promptly issue an order directing WAMY, its counsel, Baker Tilly, and Mr. Marks to preserve any and all such evidence in their possession related to the matters raised herein.

Respectfully submitted,

MOTLEY RICE LLC

By: /s/ Robert T. Haefele
ROBERT T. HAEFELE
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com
*For the Plaintiffs' Executive Committees*

cc:  The Honorable George B. Daniels, via ECF
     All Counsel of Record via ECF
     Theresa Meiners, General Counsel, Baker Tilly U.S. LLP, via e-mail

---

[6] Plaintiffs' counsel redacted from the copy of the letter sent to WAMY counsel three lines that appear at the end of the letter sent to Sean Carter. The redactions were done to protect the process. The redacted text does not inhibit WAMY from responding to the allegations. However, Plaintiffs are amenable to providing the Court with an unredacted version *in camera*, to permit the Court to determine whether the information should be provided to WAMY counsel.

**ADDENDUM A**
**Areas of Discovery Regarding Allegations Raised Regarding WAMY**
**Engagement with Jonathan Marks/Baker Tilly and the July 22, 2021 Marks Deposition**

1. Plaintiffs respectfully request that the Court authorize targeted discovery from defendant WAMY, the Baker Tilly accounting and consulting firm, defense expert Jonathan T. Marks, the Law Offices of Omar Mohammedi, and individual counsel Omar Mohammedi and Fred Goetz concerning the following areas of inquiry:

    a) Evidence identified in Baker Tilly's engagement, as described in the Whistleblower Letter, that is "very damaging … against WAMY," including evidence relevant to WAMY's involvement in financing the 9/11 terrorist attacks, and including facts or analysis generated by Baker Tilly's investigation;

    b) Any audits of WAMY accounting systems conducted by Baker Tilly or that Baker Tilly Reviewed in connection with its engagement by WAMY and/or WAMY's counsel;

    c) The origins, scope, nature, and extent of the relationship between Baker Tilly and WAMY and/or Mr. Mohammedi regarding the engagement of Marks and/or Baker Tilly to perform services for WAMY and/or Mr. Mohammedi;

    d) The origins, scope, nature and extent of Marks' engagement as an expert in the 9/11 litigation on behalf of defendant WAMY;

    e) All time records (including those kept in Baker Tilly's time system) for any and all work performed for WAMY by Marks and/or by other Baker Tilly employees;

    f) All financial transactions between Baker Tilly and counsel for WAMY, including any refund or other reduction in fees charged for the work for WAMY;

    g) Any economic or other motive(s) that potentially contributed to any of the alleged wrongdoing;

    h) Any instructions or other communications pertinent to the exclusion or withholding of particular evidence from the Marks expert report submitted to the Court, and/or from the deposition of Marks taken on July 22, 2021;

    i) Any Arrangements made before or during the July 22, 2001 deposition of Marks, in particular providing for any other persons to interact with Marks during his testimony;

    j) All Attendance/visitor logs for Baker Tilly's Philadelphia office on July 22, 2021;

    k) Location information regarding the conference room or meeting facility in which Marks sat for his deposition on July 22, 2021, to include a floor plan of

       the deposition room and other rooms on the same floor, annotated if possible with the names of all persons present in the room and their respective positions;

   l)  Any whistleblower complaint(s) regarding Marks' or Baker Tilly's work for WAMY and/or the July 22, 2021 Marks deposition; and

   m)  Any letter sent to Baker Tilly's management, operating committee, general counsel, and/or its chairman, regarding Marks' expert engagement, Marks' or Baker Tilly's work for WAMY, and/or the July 22, 2021 Marks deposition.

2. In addition, Plaintiffs respectfully seek to subpoena for document production and depositions of the persons described below concerning the allegations in the Whistleblower Letter, to include:

    1. The two individuals identified in the letter at Exhibit A, alleged to have secretly attended and participated in Marks' July 22, 2021 deposition;[1]

    2. the Managing Partner of Baker Tilly's Philadelphia office on July 22, 2021; and

    3. the two Baker Tilly employees identified by Marks during his deposition (pp. 25-26 of the deposition transcript) as having facilitated Baker Tilly's relationship with WAMY.

---

[1] Although the two individuals alleged to have secretly attended the Marks deposition may be willing to speak with Plaintiffs' counsel, Plaintiffs have refrained from initiating any contact thus far. The letter is attached for the Court's convenience.