**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
**In re:**

                                                           **03-MD-01570 (GBD)(SN)**

**TERRORIST ATTACKS ON SEPTEMBER 11, 2001**
------------------------------------------------------------------------X

This document relates to:

   *Ashton, et al. v. al Qaeda Islamic Army, et al.,* 02-cv-6977 (GBD)(SN)

AND ALL WRONGFUL DEATH ACTIONS FILED AGAINST IRAN & THE TALIBAN

 

**OBJECTIONS TO THE OCTOBER 29, 2024 ORDER (MDL ECF NO. 10470)**
**RE: REQUEST FOR FINAL JUDGMENTS AGAINST IRAN & THE TALIBAN**

 

                                                      Law Office of John F. Schutty, P.C.
                                                      Attorneys for the *Ashton-Dickey* Plaintiffs
                                                      445 Park Avenue, Ninth Floor
                                                      New York, New York 10022
                                                      Telephone: (646) 345-1441
                                                      Fax: (917) 591-5980
                                                      john@johnschutty.com

I.  **INTRODUCTION**

On October 29, 2024, Magistrate Judge Sarah Netburn issued an Order (the "October 29 Order," ECF No. 10470), which addressed, but left unresolved, issues raised by the *Ashton-Dickey* Plaintiffs[1]-- namely, whether final judgments should be issued without further delay against the Islamic Republic of Iran ('Iran") and the Taliban.  Pursuant to Fed. R. Civ. P. 72(b), the *Ashton-Dickey* Plaintiffs respectfully object to the October 29 Order as described below.  These Objections are supported by the accompanying Declaration of John F. Schutty, Esq. dated November 7, 2024.

These Fed. R. Civ. P. 72(b)(2) Objections show that the October 29 Order defers and unfairly does not resolve a matter that grants a small subset of plaintiffs in this MDL proceeding an undeniable advantage – two small subsets of plaintiffs have been granted final Judgments against Iran and the Taliban, while all other plaintiffs have been denied that relief.  And the Magistrate Judge has now denied final Judgments to the undersigned's clients even though no factual or legal issues remain to be resolved against Iran or the Taliban.  And it is most significant that the Magistrate Judge has failed to provide any reason for this denial of justice – the granting of final Judgments to some plaintiffs (by applying "law of the case"), but not all plaintiffs who are qualified for such relief.  Fed. R. Civ. P. 72(a) provides: "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."[2]  We respectfully contend that granting final Judgments to certain plaintiffs

---

[1]  The undersigned law firm represents the estates of ten 9/11 decedents (*Ashton-Dickey* Plaintiffs) and several other estates who have recently fired their prior counsel (*see* accompanying Declaration of John F. Schutty); a "personal representative," appointed by a state Surrogates Court, has appeared to represent each of these estates in this litigation.

[2]  *See also* 28 U.S.C. 636.  28 U.S.C 636 (b) (1) (A) states, "A judge may designate a magistrate judge to hear and determine any pretrial matter pending before the courts.  A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."  28 U.S.C 636 (b) (1) (C) states, "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions."

and not all plaintiffs in this multidistrict litigation proceeding is "clearly erroneous" and "contrary to law."

## II. STANDARD OF REVIEW

"If a party timely objects to any portion of a magistrate judge's report and recommendation (or orders), the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015) (quoting 28 U.S.C. § 636(b)(1)). The *Ashton-Dickey* Plaintiffs, by and through these Objections, respectfully request that the Court decline to adopt the recommendations addressed herein (a delay in entering final Judgments against the defendants-in-default). Magistrate Judge Netburn stated in the October 29 Order:

> The Court has received and considered counsels' views on what and how to proceed to assess punitive damages against defaulting defendants. See ECF Nos. 10422, 10427, 10461, 10465, 10469. The Court declines to issue a briefing schedule at this time.

In short, the Magistrate Judge refused to make any *findings* in response to letter-briefs filed by counsel and refused to issue final Judgments against Iran and the Taliban, even though this Court has previously granted final Judgments to two subsets of plaintiffs against Iran and the Taliban and even though all factual and legal issues related to these two defendants-in-default have previously been resolved by this Court (law of the case). Two subsets of plaintiffs (the *Havlish* plaintiffs and the *Federal Insurance* plaintiffs) *already have final Judgments against Iran, with an award of punitive damages, and against the Taliban, with an award of treble damages. See* accompanying Declaration of John F. Schutty.

### A. Punitive Damages Against Iran

This Court has already determined that punitive damages should be awarded against Iran in this litigation and has already determined how the punitive damages should be awarded against

-2-

Iran. *See Havlish, et al. v. Bin Laden, et al.* (ECF #2618 – Report & Recommendation of M.J. Maas Awarding Punitive Damages Against Iran, and ECF #2624 -- J. Daniels: "This is a final, appealable order [re: Judgment Awarding Punitive Damages to *Havlish* Plaintiffs Against Iran]."). Magistrate Judge Maas explained that a "3.44 ratio 'has been established as the standard ratio applicable to cases arising out of' terrorist attacks." ECF #2618 at 13 (quoting Estate of *Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011)).  This Court adopted that recommendation and awarded punitive damage on each compensatory damage category at a ratio of 3.44 (punitive) to 1 (compensatory) against Iran. ECF #2623 at 2.  The Court has applied that ratio to awards for plaintiffs in other related cases. *See, e.g.*, ECF #3175 at 3 and footnote 1 (Magistrate Judge Maas Report and Recommendation to apply a 3.44 punitive multiplier to *Ashton* plaintiffs' decedents' conscious pain and suffering awards with leave granted "to move in the future to recover any additional damages to which they may be entitled"); ECF #3229 at 1 (Judge Daniels adopting in its entirety Judge Maas's Report and Recommendation to apply a 3.44 punitive damages multiplier); ECF #3300 at 1 (Judge Daniels applying 3.44 punitive multiplier to compensatory damages).[3]

### B. Treble Damages Awarded Against the Taliban, But No Final Judgments

In a similar manner, this Court has previously determined that treble damages (and attorneys' fees) should be awarded against the Taliban under the Anti-Terrorism Act: "the Court

---

[3] In 2015, this Court awarded a final Judgment of compensatory damages, plus punitive damages, plus prejudgment interest, to plaintiffs in *Havlish v. bin Laden, et al.*, SDNY Case No. 03-CV-09848.  This Court awarded punitive damages at a ratio of 3:44 to 1, adopting Judge Maas' recommendation based upon case law cited in the *Havlish* plaintiffs' damages inquest brief. *Havlish,* ECF #314 (Maas), pp. 12-13, and at ECF #316, p. 5 (Daniels).  And this Court entered a final Judgment in *Havlish* on October 12, 2012. *Havlish,* ECF #317 (Daniels).  *See also* ECF #2624 -- J. Daniels: "This is a final, appealable order [re: Judgment Awarding Damages to *Havlish* Plaintiffs Against Iran].").  Since one set of 9/11 wrongful death plaintiffs have been awarded a final Judgment and a "final, appealable" Order against Iran, there is no justifiable reason to delay the entry of a similar final Judgment to other plaintiffs upon request.

recommends . . . awarding treble damages [against the Taliban] as provided under § 2333 [of the Anti-Terrorism Act]." *See* Amended Report and Recommendation of M.J. Netburn Awarding Treble Damages Against the Taliban and in favor of the *Federal Insurance* Plaintiffs, ECF #8929 at 13-14.[4] While Magistrate Judge Netburn has awarded my clients treble damages against the Taliban, she has failed to explain why my clients should be deprived of final Judgments against the Taliban.

### III. ARGUMENT

**A. The Court Should Apply the "Law of the Case" – Awards of Punitive Damages Against Iran and Treble Damages Against the Taliban – Should be Granted to All Plaintiffs, and Final Judgments Should Be Entered Against These Two Defendants to Bring the Litigation Against Them to an End**

The rulings discussed above are now "law of the case" and these issues should not, therefore, be needlessly relitigated;[5] as for other, following plaintiffs asserting similar claims against Iran and the Taliban, all that remains for the Court is a simple mathematical calculation to award either punitive or treble damages (and possibly attorneys' fees under the Anti-Terrorism Act, fees which can be waived). *See, e.g., Havlish v. Bin Laden, et al.*, Case 1:03-cv-09848-GBD-

---

[4] Again, since one set of 9/11 wrongful death plaintiffs have been awarded a final Judgment and a "final, appealable" Order against the Taliban, there is no justifiable reason to delay the entry of a similar final Judgment to other plaintiffs upon request.

[5] The Supreme Court has underscored the important benefits that arise from the finality doctrines: "res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Collateral estoppel, or issue preclusion, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. at 748–49 (2001). "The idea is straightforward: Once a court has decided an issue, it is 'forever settled as between the parties,' thereby 'protect[ing]' against 'the expense and vexation attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent verdicts.'" *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015) (internal citations omitted)).

SN, ECF #317.  This is especially true in a multidistrict litigation proceeding.[6]  The law of the case doctrine "requires that courts not revisit the determinations of an earlier decision unless '(i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work ... manifest injustice.'"  *See, e.g., In re Ford Motor Co.*, 591 F.3d 406, 411-12 (5th Cir. 2009); *see also* Ann. Manual Complex Lit. § 20.133 (4th ed.) ("Although the transferor judge has the power to vacate or modify rulings made by the transferee judge, subject to comity and 'law of the case' considerations, doing so in the absence of a significant change of circumstances would frustrate the purposes of centralized pretrial proceedings.").

**B. Since All Issues as to Iran and the Taliban Have Been Previously Resolved – Final Judgments Should Be Issued**

The Magistrate Judge and the PEC firms have wholly failed to identify what factual and/or legal issues remain unresolved as to the defendants-in-default, Iran and the Taliban. The PEC firms vaguely claim that new expert testimony is needed (why?) and that new "[l]egal briefing also may address any developments in the law relevant to assessing punitive damages since 2016."  ECF #10422 at 2.  Is the PEC suggesting that punitive damages issue should be re-adjudicated?  That would be an absurd and improper suggestion.  In fact, no factual or legal issues remain as to these defendants.  No Special Master is required, as a simple mathematical calculation can be made for each compensatory award previously issued by the Court (by simply adding a column or two to

---

[6]  "MDL STANDARD 1:  The transferee court, in consultation with the parties, should articulate clear objectives for the MDL proceeding and a plan for pursuing them.  The objectives of an MDL proceeding should usually include: (1) the elimination of duplicative discovery; (2) avoiding conflicting rulings and schedules among courts; (3) reducing litigation costs; (4) saving the time and effort of the parties, attorneys, witnesses, and courts; (5) streamlining key issues, and (6) moving cases toward resolution (by trial, motion practice, or settlement)."  *Guidelines & Best Practices for Large & Mass-Tort MDLs*, Duke Law School, Bolch Judicial Institute (2d ed. September 2018) at 58 (available at https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=1004&context=bolch).

the Court's Excel spreadsheet entitled "Default Judgment Motion Standardized Exhibits" used presently in obtaining partial final default judgments).

If the Court has erred in granting final judgments to the *Havlish* and *Federal Insurance* plaintiffs (and awarding punitive and treble damages), then the Court should vacate those Judgments, as those plaintiffs have been granted an unfair advantage in asset execution. Fed. R. Civ P. 60(b)(6) ("[T]he court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief.").

### C. The Cost of Obtaining "Partial Final Default Judgments" Awards from the USVSST Has Just Dramatically Increased & "Partial" Default Judgments Should Henceforth Be Deemed Unnecessary

The U.S. Victims of State Sponsored Terrorism Fund ("USVSST") has recently required counsel to file "proof of service" of an amended partial final default judgment issued against Iran to receive an award from the USVSST. Other law firms have now begun the process of serving Iran with partial final default judgments to satisfy the USVSST. *See, e.g.,* ECF ##10383, 10384 and 10398. This is a new requirement imposed by the USVSST; it now adds a considerable expense to obtaining an award from the USVSST because it will require the translation of numerous documents into Farsi, and the service of each partial final default judgment (and related documents) upon Iran through the Clerk of the Court. *See* 28 U.S.C. §1608(a)(3). This can all be resolved by the issuance of final Judgments against Iran, so that a second service of "final" Judgments, later, becomes unnecessary. Moreover, for any asset execution, a final Judgment must be served upon the defendants-in-default, so final Judgments are necessary to "level the playing field" as to the *Havlish* and *Federal Insurance* plaintiffs.

### D. The PEC's Request for Delay Now Is Contrary to Their Earlier Position in This MDL Litigation

-6-

The PEC now claims: "We have not prioritized adjudication of punitive damage awards against Iran to this point, as we view such punitive damage awards as less pressing than other work before the Court . . . ." ECF #10422 at 1.  In fact, what the PEC is now urging is a complete "about face":

> **ECF #7496 (Letter from Sean P. Carter, Esq. to Judge George Daniels)**
>
> [T]he Defendants' Executive Committee ("DEC") objected to Moving Plaintiffs' Motion for Assessment of Damages against al Qaeda, the Taliban, and other defaulted defendants, arguing that any damage assessments should be deferred until all claims against all appearing defendants were resolved.  In response, Moving Plaintiffs argued that the DEC had no standing to object to the Motion for Assessment of Damages, and was wrong as a matter of law in suggesting that it would be premature to conduct the damage assessment at that time. . . .
>
> By letters dated May 27, 2011 and July 15, 2011, **the Plaintiffs' Executive Committees ("PECs") requested that the Court urgently consider the Motion for Assessment of Damages insofar as it related to al Qaeda, "[i]n order to fully protect the September 11th Plaintiffs' rights against al Qaeda, and ensure that the September 11th Plaintiffs do not suffer harm as a result of execution proceedings initiated by other parties against al Qaeda."**  *See* May 27, 2011 letter application of the Plaintiffs' Executive Committees.
>
>     *      *      *
>
> At this time, Moving Plaintiffs respectfully request that the Court extend its prior rulings on the Motion for Assessment of Damages to the Taliban.

ECF #7496 at 1-3 (emphasis added).

> **ECF #7496-7 Exhibit G (PEC Member asks for an Assessment of Damages against Hezbollah):**
>
> "the entry of a final monetary judgment is critical to protecting Plaintiffs' rights as to foreign terrorist organizations under Section 201 of the TRIA. Accordingly, the Federal Insurance Plaintiffs respectfully request the Court's prompt attention to this administrative request to avoid any potential prejudice to their rights."

This "about face" should be seen for what it is – an attempt by certain law firms and their clients within the PEC (the *Havlish* plaintiffs and Cozen O'Connor – *Federal Insurance* plaintiffs) to protect the perfected final Judgments issued to their clients (against Iran and the Taliban) to

-7-

ensure priority in asset execution.[7] The PEC suggests that plaintiffs without final judgments against Iran and the Taliban are not prejudiced by a delay in issuing final Judgments, but that could not be further from the truth – every day that passes denies these plaintiffs of an opportunity for asset execution.[8]

Using the PEC's own language, "[i]n order to fully protect [all] the September 11th Plaintiffs' rights against al Qaeda [and other defendants-in-default] and ensure that the September 11th Plaintiffs do not suffer harm as a result of execution proceedings initiated by other parties against al Qaeda [and other defendants-in-default]," final Judgments should be issued to ALL plaintiffs against Iran and the Taliban. There simply is no just reason to continue this litigation as to Iran and the Taliban. After twenty-two plus years of litigation, final default Judgments should be issued against Iran and the Taliban.

---

[7] "When lead counsel negotiate an individual settlement for their own clients, or a multi-plaintiff proposed settlement on behalf of their own clients and other plaintiffs in the MDL, lead counsel's duties to their privately-retained clients can conflict with the requirements of their lead counsel role." *Guidelines & Best Practices for Large & Mass-Tort MDLs*, Duke Law School, Bolch Judicial Institute (2d ed. September 2018) at 58 (available at https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=1004&context=bolch). "Ideally, lead counsel performs these functions to maximize the common and collective good of all plaintiffs. Inevitably, disagreements over strategy, selection of bellwether trials, allocation of common benefit funds, etc., will cause conflicts, which must be kept under control. In so doing, the court must balance two important concerns: ensuring that real problems with lead counsel performance are addressed; while at the same time preventing complaints about lead counsel from being used to jockey for position or for other improper purposes." *Id.* at 60.

[8] Magistrate Judge Netburn explicitly recognized that plaintiffs not holding final Judgments against Iran and the Taliban have no "standing" to challenge the attempted asset executions by those plaintiffs holding final Judgments against Iran and the Taliban: "Your clients, as I understand it, have no judgments against these entities for which you could attach to the funds. So what standing does your client have to challenge the procedural mechanism by which the Havlish and Doe plaintiffs seek to proceed on their execution?" *See* Transcript of February 22, 2022 Hearing in *Havlish, et al. v. Bin Laden*, *et al.*, 03 Civ. 9848 (GBD) at 24 (Exhibit C hereto). *See also* ECF #7398 ("By their own admission, the *Ashton* Plaintiffs have no standing in this judgment enforcement proceeding, which concerns the *Havlish* Plaintiffs' legal right to enforce their final, enforceable money judgment against Taliban assets at the Federal Reserve Bank of New York. The *Ashton* Plaintiffs concede they do not have a final, enforceable judgment.").

Finally, it makes no sense for the PEC law firms to request a delay in awarding final Judgments (to other law firms and other plaintiffs) when the goal of every plaintiff's attorney should be to obtain the greatest compensation for a client at the earliest possible time; that is, of course, unless the PEC firms are seeking to prioritize their existing Judgments against Iran and the Taliban and/or keep the litigation open forever against these defaulting defendants to add new plaintiffs and obtain new and additional attorney's fees (at the expense of existing clients and other MDL plaintiffs).

## CONCLUSION

For the reasons set forth above, and pursuant to Fed. R. Civ. P. 72(b)(2), the *Ashton-Dickey* Plaintiffs respectfully request that the Court address and reverse the October 29 Order (MDL ECF#10470) and issue a new Order that compels the Magistrate Judge to issue final Judgments against Iran and the Taliban so that Justice for some (the *Havlish* and *Federal Insurance* plaintiffs) becomes Justice for all.

Dated:   New York, New York
         November 7, 2023

>                     Respectfully submitted,
>
>                     By: *John F. Schutty*
>                     John F. Schutty, Esq.
>                          (JS2173)
>                     Law Office of John F. Schutty, P.C.
>                     Attorneys for the *Ashton-Dickey* Plaintiffs
>                     445 Park Avenue, Ninth Floor
>                     New York, New York 10022
>                     Telephone: (646) 345-1441
>                     Fax: (917) 591-5980
>                     john@johnschutty.com