**MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES**
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

**VIA ECF**

November 11, 2024

The Honorable George B. Daniels, U.S.D.J.
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:    *In Re: Terrorist Attacks on September 11, 2001*, 03-md-1570 (GBD) (SN)

Dear Judge Daniels:

The Plaintiffs' Executive Committees write in opposition to Sudan's letter of November 6, 2024 (ECF No. 10511), which responded to the Plaintiffs' letter at ECF No. 10493 and the proposed certificates of default filed at ECF Nos. 10491 (*Federal Insurance Company*), 10495 (*Ashton*, *Betru*, and *Clarke*), and 10507 (*Continental Casualty Company*) against Sudan and in favor of the plaintiffs in the identified cases.[1] Sudan's responses are both legally wrong and demonstrative of Sudan's continued disrespect for United States judicial proceedings which warrants the entry of defaults.[2]

### A. The Court should proceed to enter defaults because the deadline established by Rule 12(a)(4)(A) applies to Sudan, and Sudan is undeniably in default.

Sudan's obligation, as governed by Rule 12(a)(4)(A), in the context where a motion to dismiss was granted in part and denied in part, is to file an answer to the remaining claims within 14 days of the entry date of the operative decision. *Hernández-Castrodad v. Steidel-Figuero*, No. 20-cv-1507 (SCC), 2022 WL 715553, at *6-7 (D.P.R. Mar. 9, 2022) (rejecting the identical argument Sudan raises and holding "Rule 12(a)(4)(A) treats any disposition that leaves a claim remaining as a denial"); *O'Connor's Federal Rules-Civil Trials* (2018) ("If the order dismisses only some claims, the defendant will need to serve an answer or other responsive pleading for the remaining claims within 14 days after receiving notice of the ruling. *See* [Fed. R. Civ. P.] 12(a)(4)(A)."); *e.g.*, *see, e.g., Parks v. Buffalo City School Dist.*, 17-

---

[1] Plaintiffs in additional cases have also requested certificates of default. *See, e.g.*, ECF Nos. 10489 (*Burnett*); 10505 (*Ashton*, *Bauer* and *Parker*). Plaintiffs in *Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03-cv-9849, will respond separately to Sudan's perfunctory memorandum in support of its motion to set aside the certificate of default issued in *Burnett* (ECF No. 10515), but the points addressed here apply in those cases, as well. Concerning the service issues Sudan raises specific to *Betru* and *Clarke*, those have no bearing on the requests for certificates of default in each of the remaining actions, where service is uncontested. Although Sudan accepted service of the amended complaints, it has refused to accept service of the short-form complaints in *Betru* and *Clarke*. Accordingly, the *Betru* and *Clarke* plaintiffs proceeded with formal service via the FSIA, which is not yet complete. Accordingly, the *Betru* and *Clarke* plaintiffs have authorized the PECs to advise the Court that the requests for certificates of default in those two cases are being withdrawn.

[2] Sudan's counsel are wrong where they assert in their introductory paragraph that the PECs "acknowledge … that Sudan's counsel has been attempting to confer with Sudanese government representatives." ECF No. 10511 (citing ECF No. 10493). The PECs did not, and cannot, acknowledge that Sudan's counsel conferred with their client. The PECs simply quoted Sudan's counsel's assertion that they were "conferring with [their] client." ECF No. 10493. We cannot confirm what Sudan's counsel actually did, but their letter to the Court suggests that, if they sought to confer, whatever they attempted to do failed.

The Honorable George B. Daniels
November 11, 2024
Page 2

_____

CV-631S, 2020 WL 2079320, at *10 (W.D.N.Y. Apr. 30, 2020) (requiring defendant "to file an answer within 14 days of the entry date of this decision consistent with Rule 12(a)(4)(A)," after granting in part, and denying in part a motion to dismiss); *accord Vega v. United States of America*, 00 Civ. 8920 (AGS), 2001 WL 823874, at *3 (S.D.N.Y. July 20, 2001) (requiring defendant to "serve an answer to the complaint within the time specified by the Federal Rules of Civil Procedure" where the court had granted in part and denied in part a motion to dismiss); *Mourmouni v. Permanent Mission of the Rep. of South Sudan to the United Nations,* 20-CV-3603 (JPO), 2021 WL 4461829, at *4 (W.D.N.Y. Sept. 28, 2021) (directing defendant to answer remaining claims by deadline where court has granted in part and denied in part a motion to dismiss).

Sudan offers its tortured interpretation of Rule 12(a)(4)(A) without any citation because no citation exists, and the plain reading of Rule 12 makes clear that the rule applies whether the court has denied the motion to dismiss wholly or in part. Rule 12(a)(4) addresses the timing for responsive pleadings contemplated under Rule 12. While section (a)(4)(A) addresses the timing for responsive pleadings as to those parts of an order where a court denies a motion to dismiss, section (a)(4)(B) addresses the timing for responsive pleadings where the court grants a more definite statement. But the rule set no deadline for responsive pleadings as to any part of an order where the court *grants* (in whole or in part) a motion to dismiss, because no responsive pleading is required as to those parts.

### B. Sudan's arguments that plaintiffs were obligated to file amended complaints (to abandon claims that may be subject to appeal) are, unsupported, legally wrong, and prejudicial.

Sudan's argument—that its obligation to answer Complaints had not yet attached because Plaintiffs were first required to amend their Complaints after the Court's August 10, 2023 Decision and Order (ECF No. 9278, "2023 Order")—is a meritless and prejudicial pretense to conceal Sudan's failure to file timely Answers.

Under Rule 15, Plaintiffs had neither the obligation nor the authority to amend their Complaints after the 2023 Order. Sudan cites no precedent when it feigns a false prerequisite (Plaintiffs amendment of their Complaints) to its obligation to file Answers. Sudan omits any reference to Rule 15, the Rule that governs the filing of amended complaints. In the context that applies here (after Rule 15 deadlines for amendments as a matter of course), Rule 15(a)(2) permits amendments "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Here, Plaintiffs have not sought leave to amend, the Court has not granted leave, and Sudan has not consented. Accordingly, under Rule 15, not only were Plaintiffs not *required* to file amendments, but they were also not *permitted* to do so.

Sudan's argument that Plaintiffs must file amended complaints seeks to prejudice Plaintiffs by requiring them to abandon Plaintiffs' appellate rights as to challenged claims dismissed in the Court's 2023 Order. Because amended complaints against Sudan that omit earlier pled claims would displace earlier complaints against Sudan (*see* ECF Nos. 7942 at 65-66; 9278 at 30), Sudan's proposed approach would prejudice Plaintiffs by requiring Plaintiffs to abandon their appellate rights as to each of the claims dismissed in the Court's 2023 Order. Plaintiffs have not requested amendment and the Court has not, nor can it, require plaintiffs to abandon their appellate rights to the claims the Court dismissed.

The Honorable George B. Daniels
November 11, 2024
Page 3

_____

### C. Sudan's counsel admit they are not in contact with their client and have no authority to defend Sudan in this litigation, underscoring the need for adherence to the Federal Rules of Civil Procedure and for the Court to enter certificates of default pursuant to those Rules.

The lawyers who have appeared for Sudan admit that they are no longer in contact with any official representative of the Sudanese government with authority to direct the litigation or to fulfill Sudan's obligations in defending Sudan in the litigation. Nothing in the record—no declaration or other indicia of authority from Sudan—provides any assurance from an authorized representative of Sudan that Sudan is committed to moving forward to defend itself in the action. Indeed, the pendency of Sudan's present requests regarding Plaintiffs' defaults presents a conundrum: how could Sudan's counsel have obtained Sudan's authority to file the requests under consideration, but no authority to file Answers?

Concerning the specific obligation to respond to Plaintiffs' amended complaints, in addition to counsel acknowledging that they have no authority to file Answers, they have also offered nothing to indicate when they might be positioned to receive authority to respond to the pleadings. Especially where Sudan has a history of ignoring this litigation for more than fifteen years,[3] Sudan cannot be allowed to continue to abdicate its defense for any indeterminant period.

The proper approach here, and the one required by ordinary application of the Rules, is for the Court to enter defaults, permit the Plaintiffs to proceed to judgments, and *if at some later date Sudan authorizes its counsel to file a proper application to set aside any judgments*, it may make that application at the appropriate time, and with the appropriate authority from its client to do so. But it should not be permitted to skirt the rules and allow its obligations to answer the complaint to remain held in abeyance indefinitely.

### D. Just as other courts have done, this Court should reject Sudan's suggestion that—despite Sudan being in default—the Court should refrain from entering certificates of default because of Sudan's internal turmoil.

Though Sudan relies on its unserious argument that, notwithstanding the Rules, it was not obligated to answer Plaintiffs' Complaints (*see* discussion *supra*), Sudan does not generally dispute that it was served and has not answered the relevant Complaints. Instead, it leans heavily on its previously rejected notion that Courts should ignore Sudan's long history of litigation gamesmanship and refrain from applying to Sudan the obligations of the Federal Rules of Civil Procedure because of the turmoil Sudan has experienced internally. This Court should reject that suggestion just as other courts have done in the context of considering Sudan's multiple other defaults for failing to fulfil its litigation obligations.

Sudan has a long history of raising its internal turmoil as an excuse and feigned justification for its evasion of U.S. civil litigation obligations, which Plaintiffs alerted the Court, in 2020, that Sudan

---

[3] *See, e.g.*, ECF Nos. 10490, ¶ 17 (affirming that Sudan failed to participate in the *Burnett* action for "more than fifteen years"); ECF Nos. 10492, ¶ 7(declaring that that Sudan failed to participate in the Federal Insurance action for "over fifteen years").

The Honorable George B. Daniels
November 11, 2024
Page 4

---

would likely raise again here. *See* ECF No. 10493-3 at 41-42 (Tr. of Conference at 40-41 (Aug. 5, 2020) (referring to *Flanagan v. Islamic Repub. of Iran*, 190 F. Supp. 3d 138, 156-158 (D.D.C. 2016), summarizing Sudan's history of willful defaults in FSIA litigation). Particularly pertinent here is that that history of Sudan's evading its obligations in U.S. civil legal proceedings suggests Sudan is likely to **not** authorize counsel to engage in the proceedings substantively, *see Kumar v. Rep. of Sudan*, Lead Case No. 2:10cv171, 2016 WL 11808337, at *2 (E.D.Va. Oct. 25, 2016), counselling in support of entry of defaults here.[4]

Sudan already has an established history of tactical delays in this multidistrict litigation. It remained absent for over fifteen years and appeared only after it had been defaulted and was facing default judgments. *See supra*, n.2; ECF Nos. 7942 at 2-4, 9278 at 3. When it finally appeared, it sought (as it has in the past) to excuse its extended absence due to "catastrophic civil war and natural disasters, followed by civil unrest." ECF No. 10493-3 at 38 (Transcript of Hearing, at 37 (Aug. 5, 2020)). But Sudan has never reckoned with the truth that, during that period, Sudan knew of the litigation and even during period of relative stability, it still declined to defend. Here, Sudan was able to avoid the defaults previously entered only because Plaintiffs amended the Complaints and counsel for Sudan appeared and represented that Sudan was now "actively litigating these cases pending against it." *id*. But Sudan should not be permitted to reintroduce its delay tactics to restart the cycle again.[5]

In *Flanagan* and *Kumar*, cases arising from the bombing of the U.S.S. Cole, after recounting Sudan's substantial history of refusing to defend itself in U.S. civil litigation, the courts rejected Sudan's "internal turmoil" excuse in the context of Sudan's efforts to set aside default judgments. *Flanagan*, 190 F. Supp. 3d 138, 156-157 (finding "unpersuasive" Sudan's excuse that it was "preoccupied by civil unrest and political turmoil at home"); *Kumar* at *16-17. Deciding that Sudan had not met its heavy burden to show excusable neglect, *Kumar* at *16-17 (citing *Pioneer Inc. Servs. Co. v. Brunswick Assocs., Ltd. P'ship*, 507 U.S. 380, 395 (1993)), the *Kumar* court found Sudan's litigation delay unreasonable considering its preceding litigation history and tactics demonstrating that it was capable of defending itself but often tactically *chose* not to do so, including in defiance of multiple court orders. *Kumar* at *17-18; *see also Flanagan*, 190 F. Supp. 3d at 157 (finding that Sudan's choice to deprioritize its litigation response to address domestic matters did not absolve it from defending). Even where Sudan supplied a declaration from a Sudanese government official (which it has not done here) to explain that its extended absences were "principally during periods of well-known civil unrest and political turmoil in Sudan," the *Flanagan* court rejected the excuse, noting that "nothing in the record indicate[d] that that

---

[4] In *Rux*, after Sudan's initial refusal to defend resulted in entry of default judgment, Sudan hired counsel who appeared and moved to vacate the default judgment. The court agreed to vacate the default judgment, but only after it confirmed that Sudan's counsel was authorized to appear and that it would remain Sudan's counsel throughout the proceedings. Later, after the Court denied Sudan's motion to dismiss and the Fourth Circuit affirmed that decision, Sudan's counsel told the court that Sudan instructed counsel "not to defend or otherwise participate in this proceeding on the merits, and that **[Sudan's counsel] is not authorized to file an answer to the complaint**." *Kumar*, at *3 (emphasis added). The position was reiterated later, when the Court ordered Sudan to answer following the filing of an amended complaint. *Id.* Still later, when the *Rux* plaintiffs moved to add new claims under new FSIA amendments, Sudan's counsel moved to withdraw, noting that Sudan had failed to pay legal fees and had long ago ceased communication with counsel. When the court denied that request and ordered Sudan to respond to the motion, Sudan's counsel again advised the court that Sudan had instructed counsel "not to defend or otherwise participate in this proceeding on the merits." *Id.*

[5] In its briefing to the Second Circuit, Sudan raised its "civil unrest" issue as part of its *unsuccessful* argument in opposition to the Plaintiffs' motion to dismiss Sudan's appeal. *In re Terrorist Attacks on September 11, 2001*, Case 23-1319, Doc. 232 at 203 (2d Cir. Dec. 18, 2023).

The Honorable George B. Daniels
November 11, 2024
Page 5

_____

Sudan attempted, but was unable, to converse with attorneys, its counsel, or the Court, during the extended period of time." *Id.* at 157.

Here, as in *Flanagan*, Sudan has long been aware of this litigation. It retained counsel years ago and has presumably communicated with counsel (during tumultuous times and times of relative peace) throughout these proceedings. The record suggests that counsel had sufficient communication to file appearances, litigate to set aside earlier defaults, litigate a motion to dismiss, and throughout an entire Second Circuit appeal. Thus, just as in *Flanagan*, although the tumult may suggest "Sudan was preoccupied with pressing domestic matters and thus, affirmatively chose to deprioritize its response," those circumstances may have been "a reason to seek an extension of Sudan's deadlines," but they "do not absolve Sudan from its decision to wholly abdicate any defense in this case…." *Id.*

### E. Sudan has repeatedly abused the public policy favoring resolution on the merits and should not be permitted to continue to do so.

Sudan should not be permitted to continue its abuse of our nation's policy favoring resolution of disputes on the merits. Sudan intones our justice system's preference throughout its recurrent history of abusing that preference by evading litigation obligations for years (or decades) and then appearing only at a litigation's conclusion to challenge the Court's actions after-the-fact. Sudan argues that the purpose of the preference for merits-based resolution is to "encourage foreign sovereigns … to resolve disputes within the United States' legal framework." ECF No. 10511 (citing *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1551 n.19 (D.C. Cir. 1987)). But Sudan's historical abuse undermines that very purpose by encouraging courts to condone years of ignoring our nation's legal framework, rather than working within it. Steady application of the rules encourages foreign states to work within the U.S. framework from the outset, not just to challenge the outcome after-the-fact.

The better reading of Sudan's proposal is that it is a transparent attempt to manipulate the Court into ignoring ordinary application of the default rules and prejudicing plaintiffs' appellate rights. The rules are clear. Plaintiffs could not have been obligated to file an amendment where Rule 15 requires the Court's permission to do so. And Rule 12 required Sudan to file its Answers, which it has failed to do in a timely manner. The circumstances presented now (and historically)—where Sudan has shown its refusal to abide by United States' litigation rules, its counsel has admitted it has not been authorized to respond, and counsel cannot even say if or when they may be able to respond— demonstrate why, entry of default is wholly warranted. The Court should continue to enter certificates of default in all instances where the requirements necessary for default are met and Plaintiffs should be permitted to proceed to default judgment proceedings.

Respectfully submitted,

| | |
|---|---|
| MOTLEY RICE LLC | COZEN O'CONNOR |
| | |
| By: */s/ Robert T. Haefele* | By: */s/ Sean P. Carter* |
| ROBERT T. HAEFELE | SEAN P. CARTER |
| 28 Bridgeside Boulevard | 1650 Market Street, Suite 2800 |
| Mount Pleasant, SC 29465 | Philadelphia, PA 19103 |
| Tel.: (843) 216-9184 | Tel.: (215) 665-2105 |

The Honorable George B. Daniels
November 11, 2024
Page 6

_____

| | |
|---|---|
| Email: rhaefele@motleyrice.com | Email: scarter1@cozen.com |
| *Liaison Counsel for the Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Plaintiffs* | *Co-Chair of the Plaintiffs' Executive Committee for Commercial Claims on behalf of Plaintiffs* |

cc:     The Honorable Sarah Netburn (via ECF)
        All Counsel of Record (via ECF)