WHITE & CASE

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
T +1 202 626 3600

whitecase.com

November 12, 2024

VIA ECF

The Honorable George B. Daniels
United States District Judge
United States District Court for the Southern District of New York
David Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

*In re Terrorist Attacks on September 11, 2001*, Case No. 1:03-md-01570-GBD-SN (S.D.N.Y.): **The Republic of the Sudan's Letter in Response to Plaintiffs' Letter Dated November 11, 2024 re: Plaintiffs' Requests for Entry of Certificates of Default**

Dear Judge Daniels:

Sudan respectfully submits this letter in response to Plaintiffs' letter dated yesterday, November 11, 2024 (ECF No. 10523), their latest submission in support of their requests for entries of default against Sudan.

*First,* while Plaintiffs (at 1) are forced to acknowledge that this Court's order "granted in part and denied in part" Sudan's motion to dismiss, Plaintiffs do not explain why they have repeatedly mischaracterized that order in multiple submissions (including sworn submissions) to this Court (including the Clerk's Office) as simply denying Sudan's motion. *See, e.g.*, Proposed Clerk's Certificate of Default at 1, ECF No. 10491 ("Sudan moved to dismiss the CAC, but said motion was denied by the Honorable George B. Daniels on August 10, 2023."). Those mischaracterizations are blatant and may have contributed to the Court already entering one certificate of default against Sudan (ECF No. 10506) on Plaintiffs' suggestion that this Court's order comes within the plain language of Rule 12(a)(4)(A). It does not.

Plaintiffs now argue that, notwithstanding Rule 12(a)(4)(A)'s plain language, even "granted in part and denied in part" orders fall within the Rule and start the clock on the requirement to file a responsive pleading. But Plaintiffs cannot identify any case from any court that entered a default on that basis against any defendant, let alone a foreign sovereign.

Indeed, Plaintiffs identify (at 1-2) only one, solitary decision that supports (in dicta) their contrary-to-plain-language reading of Rule 12(a)(4)(A), and that decision, unpublished and out of circuit, *denied* the plaintiffs' motion for entry of default, a result Plaintiffs obscure in their letter. *See Hernandez-Castrodad*, 2022 WL 715553, at *3 (denying motion to enter default because

defendant had defended himself and had responded to plaintiffs' motion for entry of default). Furthermore, for its dicta interpreting Rule 12(a)(4)(A), that decision, and the secondary source it cites, relied on nothing but the rule's language, which plainly says nothing about deadlines for responsive pleadings after orders granting in part and denying in part motions to dismiss. In addition, the fact that other Rules under the Federal Rules of Civil Procedure address the consequences of partial dismissals is indicative that the omission of such language from Rule 12(a)(4)(A) was intentional. *See* Fed. R. Civ. P. 54(b); *see also Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 392 (2015) (applying "interpretive canon that Congress acts intentionally when it omits language included elsewhere"). At bottom, this Court does not need any authority to interpret the plain language of Rule 12(a)(4)(A).

Plaintiffs' other cases (at 1-2) do not advance their position; in those cases, the defendant's obligation to file a responsive pleading arose because of a court order and not because of the independent operation of Rule 12(a)(4)(A). *See Parks*, 2020 WL 2079320, at *10 (providing a deadline of 14 days from the entry date of this decision to file an answer "consistent with" Rule 12 (a)(4)(A)); *Vega*, 2001 WL 823874, at *3 (imposing an answer deadline of "the time specified by the Federal Rules of Civil Procedure"); *Mourmouni*, 2021 WL 4461829, at *4 (directing defendant to answer remaining claims by "October 20, 2021," a deadline of 22 days). In contrast, here neither this Court nor the Second Circuit specified if or when Sudan should file an answer to Plaintiffs' significantly dismissed complaint.

Plaintiffs' discussion of Rule 15 (at 2) is mere makeweight, as Sudan obviously consents to Plaintiffs' filing of an amended complaint and, in any event, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Similarly, Plaintiffs' purported concern (at 2-3) over the abandonment of their appellate rights is unfounded. The Second Circuit has held that failure to replead a claim that "explicitly has been denied" does not constitute a waiver of that claim for purposes of appeal. *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000) ("We see no reason to require repleading of a claim or defense that explicitly has been denied."). This rule appears to be consistent widely. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc) (eliminating the Ninth Circuit's "outlier" status and joining the national consensus that "'the plaintiff does not forfeit the right to challenge the dismissal on appeal simply by filing an amended complaint that does not re-allege the dismissed claim'") (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 572-73 (4th Cir. 2001)). This rule preserving appellate rights is well developed precisely because courts routinely require plaintiffs to replead after orders granting dismissal in part. *See, e.g.*, *Lacey*, 693 F.3d at 927 (discussing cases where plaintiffs were directed not to replead dismissed claims in amended complaints). As Sudan argued in its letter dated November 6, 2024 (ECF No. 10511 at 2), this rule comports with sound judicial administration (e.g., operative complaints without vestigial allegations and claims) and allows courts to preserve "limited judicial resources." *Lacey*, 693 F.3d at 928.

**Second**, Sudan's counsel has not, in any respect, admitted that they "are no longer in contact with any official representative of the Sudanese government" or that they lack authority to represent Sudan in this litigation. Plaintiffs' arguments to the contrary (at 3) are demonstrably false. We

The Honorable George B. Daniels
November 12, 2024

have been acting under the same authority we have had since we first appeared on behalf of Sudan in this litigation in 2020. And, as stated in Sudan's November 6 letter (at 1), we have been "working diligently *with* the Sudanese Embassy." The Sudanese Embassy is of course an extension of the Sudanese government in the home capital and the Sudanese Ambassador is an "official representative of the Sudanese government." The Ambassador also has continuously been engaged in this litigation, even having joined us before this Court at the hearing on Sudan's motion to dismiss in April 2023 (Tr. of Oral Argument at 3 (Apr. 19, 2023)), as well as at the argument in the Second Circuit. As referenced in Sudan's November 6 letter, notwithstanding the ongoing civil war and humanitarian crisis in Sudan, we are working closely with the Ambassador to connect with the appropriate authorities at the highest levels in Sudan to obtain instructions on important next steps in the litigation. The Ambassador should be entitled to confer with his principals in Sudan on these important matters. Any suggestion that Sudan is no longer defending itself in this litigation is false and unfounded. *See Hernandez-Castrodad*, 2022 WL 715553, at *3.

Plaintiffs' attempt to discount the tragic events in Sudan by rehashing (at 3-5) irrelevant litigation history from over a decade ago that involved a prior Sudanese regime overturned in 2019 is both ignorant and offensive. That history predates the historic bilateral agreement the United States and Sudan entered into in October 2020 and Sudan's removal from the State Sponsor of Terrorism list. *See* Claims Settlement Agreement, U.S.-Sudan, Oct. 30, 2020, T.I.A.S. No. 21-209 (resolving all historical terrorism claims against Sudan except those in this MDL). Sudan has earned and been awarded full bilateral relations with the United States and should be accorded the comity owed to any foreign sovereign that stands on such footing. *See Practical Concepts*, 811 F.2d at 1551 n.19 ("Intolerant adherence to default judgments against foreign states could adversely affect [the United States'] relations with other nations.") (internal quotation and alterations omitted).

*Finally*, Sudan also respectfully opposes the entry of the proposed certificate of default filed by the *O'Neill* and other Plaintiffs on November 11, 2024 (ECF No. 10521) for the same reasons set forth in Sudan's November 6, 2024 letter (ECF No. 10511) and its Motion to Set Aside Default filed the same day (ECF No. 10514).

In addition, certificates of default should not be entered in *Strauss*, *Kone*, *Kelly*, *Lopez*, *Fennelly*, or *Jelnek*, because those Plaintiffs have not properly served Sudan with their complaints. Specifically, those Plaintiffs purport (at ECF No. 10521 at 2-4) to have followed the Notice to Conform procedure set forth in this Court's December 1, 2020 order, but those Plaintiffs cannot take advantage of that procedure. *See* Order Approving Notices to Conform, Short Form Complaints, & Notices of Amendment as to Sudan at 1, ECF No. 6547. The December 2020 Order explicitly states that the Notice to Conform procedure was available only to "[a]ny plaintiff who *has a claim pending in this MDL*." The *Strauss*, *Kone*, *Kelly*, *Lopez*, *Fennelly*, and *Jelnek* Plaintiffs did not file claims in the MDL until 2022, 2023, and 2024, so did not have claims pending in the MDL in December 2020. These Plaintiffs should have filed short-form complaints in accordance with the December 2020 order (ECF No. 6547 at 2-3), and they should have served those complaints on Sudan pursuant to § 1608(a) of the FSIA. *See* 28 U.S.C. § 1330(b) (requiring service in accordance with § 1608(a) of the FSIA for courts to exercise personal jurisdiction over foreign states). Neither Plaintiffs' proposed certificate of default nor their affidavit in support provides any evidence that such short-form complaints were filed or properly served on Sudan.

WHITE & CASE

The Honorable George B. Daniels
November 12, 2024

*See* Proposed Certificate of Default, ECF No. 10521; Aff. in Supp. of Req. for Issuance of Clerk's Cert. of Default, ECF No. 10522.

Respectfully submitted,

/s/ *Christopher M. Curran*

Christopher M. Curran

*Counsel for the Republic of the Sudan*

cc:   All Counsel (via ECF)