# EXHIBIT 5

Page 1

1

2   UNITED STATES DISTRICT COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 03-MDL-1570 (GBD) (SN)

5   ------------------------------------x.

6   IN RE: TERRORIST ATTACKS ON

7   SEPTEMBER 11, 2001

8   ------------------------------------x

9                April 12, 2021

10               10:30 a.m.

11

                Videotaped Deposition via Zoom
12   of BRIAN M. JENKINS, pursuant to Notice,

13   before Jineen Pavesi, a Registered

14   Professional Reporter, Registered Merit

15   Reporter, Certified Realtime Reporter and

16   Notary Public of the State of New York.

17

18

19

20

21

22

23

24

25

Page 2

```
 1
 2   A P P E A R A N C E S :
 3   COZEN O'CONNOR PC
        1650 Market Street, Suite 2800
 4   One Liberty Place
        Philadelphia, Pennsylvania 19103
 5      Attorneys for Plaintiffs
     BY:  J. SCOTT TARBUTTON, ESQ.
 6      scarter@cozen.com
 7   COZEN O'CONNOR PC
        1055 Franklin Avenue
 8   Garden City, New York 11530-2903
        Attorneys for Plaintiffs
 9   BY:  SEAN CARTER, ESQ.
        scarter1@cozen.com
10
     ANDERSON KILL P.C.
11   1251 Avenue of the Americas
     New York, New York 10020
12      Attorneys for Plaintiff O'Neill and
        Plaintiffs' Executive Committee
13   BY:  JERRY S. GOLDMAN, ESQ.
        jgoldman@andersonkill.com
14      BRUCE STRONG, ESQ.
        bstrong@andersonkill.com
15
     MOTLEY RICE, LLC
16   28 Bridgeside Boulevard
     Mount Pleasant, South Carolina 29465
17      Attorneys for Plaintiffs in Burnett
        Case and Plaintiffs' Executive
18      Committee for Personal Injury and
        Death Claims and Witness
19   BY:  ROBERT T. HAEFELE, ESQ.
        rhaefele@motleyrice.com
20      C. ROSS HEYL, ESQ.
        rheyl@motleyrice.com
21      JODI FLOWERS, ESQ.
        jflowers@motleyrice.com
22      JOHN EUBANKS, ESQ.
23
24
25
```

Page 3

```
 1
 2   A P P E A R A N C E S (continued):
 3   KREINDLER & KREINDLER, LLP
        750 Third Avenue
 4   New York, New York 10017
        Attorneys for Plaintiffs' Executive
 5      Committee
     BY:  ANDREW J. MALONEY, III, ESQ.
 6      amaloney@kreindler.com
 7
     LEWIS BAACH KAUFMANN MIDDLEMISS PLLC
 8   1101 New York Avenue NW, Suite 1000
     Washington, DC 20005
 9      Attorneys for Muslim World League and
        International Islamic Relief
10      Organization, Dr. Abdullah Al Turki,
        Dr. Adnan Basha, Dr. Abdullah Al
11      Obaid and Dr. Abdullah Naseef
     BY:  AISHA BEMBRY, ESQ.
12      aisha.bembry@lbkmlaw.com
        NOUR SOUBANI, ESQ.
13      nour.soubani@lbkmlaw.com
        SUMAYYA KHATIB, ESQ.
14      sumayya.khatib@lbkmlaw.com
        WALEED NASSAR, ESQ.
15      waleed.nassar@lbkmlaw.com
16
     BERNABEI & KABAT PLLC
17   1400 16th Street NW, Suite 500
     Washington, DC 20009
18      Attorneys for Dr. Abdullah Al Turki,
        Dr. Adnan Basha, Dr. Abdullah Al
19      Obaid and Dr. Abdullah Naseef
     BY:  ALAN KABAT, ESQ.
20      kabat@bernabeipllc.com
21
22
23
24
25
```

Page 4

```
 1
 2   A P P E A R A N C E S (Continued):
 3   JONES DAY
        51 Louisiana Avenue NW
 4   Washington, DC 20001
        Attorneys for Dubai Islamic Bank
 5   BY:  STEVEN T. COTTREAU, ESQ.
        scottreau@jonesday.com
 6      GABRIELLE PRITSKER, ESQ.
        gpritsker@jonesday.com
 7      ABIGAEL BOSCH, ESQ.
        abosch@jonesday.com
 8      ERIC SNYDER, ESQ.
        esnyder@jonesday.com
 9      KEVIN MARSHALL, ESQ.
        ckmarshall@jonesday.com
10      SAHIL PATEL, ESQ.
        sahilpatel@jonesday.com
11
12   OMAR T. MOHAMMEDI LLC
        233 Broadway, Suite 820
13   New York, New York 10279-0815
        Attorneys for World Assembly of
14      Muslim Youth
     BY:  OMAR T. MOHAMMEDI, ESQ.
15      omohammedi@otmlaw.com
        STEVEN SIEGLER, ESQ.
16      ssiegler@otmlaw.com
17
     GOETZ & ECKLAND
18   615 First Avenue NE, Suite 425
     Minneapolis, Minnesota 55413
19      Attorneys for WAMY - World Assembly
        of Muslim Youth
20   BY:  FREDERICK GOETZ, ESQ.
        fgoetz@goetzeckland.com
21
22
23
24
25
```

Page 5

```
 1
 2   A P P E A R A N C E S (Continued):
 3
 4   SALERNO & ROTHSTEIN
 5   221 Schultz Hill Road
 6   Pine Plains, New York 12567
 7      Attorneys for Yassin Kadi
 8   BY:  AMY ROTHSTEIN, ESQ.
 9      amyrothsteinlaw@gmail.com
10      PETER SALERNO, ESQ.
11      peter.salerno.law@gmail.com
12
13
14
15
16   ALSO PRESENT:
17   KEN WILLIAMSON, The Video Technician
18   MICHAEL TOTH, Veritext Concierge Tech
19
20
21
22
23
24
25
```

2 (Pages 2 - 5)

Veritext Legal Solutions
212-267-6868    www.veritext.com    516-608-2400

Page 6

1
2         S T I P U L A T I O N S
3
4      IT IS HEREBY STIPULATED AND AGREED by
5  and between the Attorneys for the
6  respective parties hereto that filing and
7  sealing be and the same are hereby waived.
8      IT IS FURTHER STIPULATED AND AGREED
9  that all objections except as to the form
10 of the question, shall be reserved to the
11 time of the trial.
12     IT IS FURTHER STIPULATED AND AGREED
13 that the within examination may be signed
14 and sworn to before any notary public with
15 the same force and effect as though signed
16 and sworn to before this Court.

Page 7

2         THE VIDEO TECHNICIAN: We are on
3  the record, the time is 10:32 a.m. Eastern
4  daylight time on April 12, 2021.
5          Please note your microphones
6  are sensitive and will pick up whispering
7  and private conversations and cell
8  interference.
9          Please turn off your cell
10 phones or place them away from the
11 microphones as they will interfere with
12 the audio.
13         Audio and video recording will
14 continue to take place until all parties
15 agree to go off the record.
16         This is media unit 1 of the
17 video recorded deposition of Brian Michael
18 Jenkins in the matter of Terrorist Attacks
19 on September 11, 2001, filed in the United
20 States District Court, Southern District
21 of New York, Index No. 03-MDL-1570 (GBD)
22 (SN).
23         This deposition is being held
24 via Zoom conference.
25         My name is Ken Williamson for

Page 8

2  the firm Veritext New York, I am the
3  videographer; the concierge is Michael
4  Toth, also with Veritext New York; our
5  court reporter is Jineen Pavesi with
6  Veritext New York.
7          Please note I am not authorized
8  to administer an oath, I am not related to
9  any party in this action nor am I
10 financially interested in the outcome.
11         Counsel, please identify
12 yourselves for the record, please.
13         MR. COTTREAU:  Good morning.
14         My name is Steve Cottreau and I
15 represent Dubai Islamic Bank.
16         MR. EUBANKS:  John Eubanks from
17 Motley Rice law firm and I represent the
18 witness.
19         THE VIDEO TECHNICIAN: The
20 remainder of our counsel will appear on
21 the stenographic record only and our court
22 reporter will now swear in the witness.
23 B R I A N  M.  J E N K I N S,
24 having first been duly sworn by a Notary
25 Public of the State of New York, was

Page 9

2  examined and testified as follows:
3  EXAMINATION BY
4  MR. COTTREAU:
5    Q.    Good morning.
6          Do you prefer Captain Jenkins
7  or Mr. Jenkins?
8    A.    Mr. Jenkins will be fine.
9          Actually I prefer Brian, but
10 that's okay.
11   Q.    I prefer Steve, so we're on the
12 same page, but I will try to say
13 Mr. Jenkins if it's okay with you.
14   A.    Sure.
15   Q.    Mr. Jenkins, you may want to
16 pin me on your screen, I don't know if you
17 know how to do that, using the Zoom
18 interface that we're taking this remote
19 deposition by today.
20         But that may be useful so that
21 my ugly face is in front of you all day.
22   A.    No, that's okay, this is the
23 first time with Veritext and all of this,
24 so I'm inclined not to get into --  hang
25 on.

3 (Pages 6 - 9)

Page 10

```
 1              JENKINS
 2    Q.    If you right click on my
 3  picture, you should be able to pin me.
 4    A.    I am inclined not to get into
 5  more technical stuff, I don't mind it.
 6          As I mentioned, by the way, I
 7  have no explanation for this, we have a
 8  small technical issue here and that is my
 9  input volume on this, it keeps on wanting
10  to sink down to nothing, so I will watch
11  it, I've got it left on the screen here
12  and if for some reason I forget and I go
13  silent, just remind me that I've gone
14  silent and I will just slide this thing
15  back up.
16    Q.    I will do that.
17          Can you hear me okay?
18    A.    Oh, I can hear you fine.
19          MR. RIVERA: This is Ray with
20  IT for Cozen, Mr. Jenkins.
21          I apologize for interrupting,
22  but in the settings you're looking at, is
23  the adjust button checked off under that
24  level that keeps on dropping up and down.
25          (Discussion off the record.)
```

Page 11

```
 1              JENKINS
 2          THE VIDEO TECHNICIAN: Time is
 3  10:37 a.m., we're off the record.
 4          (Pause.)
 5          THE VIDEO TECHNICIAN: We are on
 6  the record, the time is 10:38 a.m., please
 7  continue.
 8  BY MR. COTTREAU:
 9    Q.    Mr. Jenkins, again, my name is
10  Steve Cottreau, I represent Dubai Islamic
11  Bank.
12          Have you been deposed before?
13    A.    Yes, I have.
14    Q.    How many times have you been
15  deposed?
16    A.    I have to think of how many
17  times.
18          I think four, three or four,
19  one, two -- no, hang on.
20          Two times I recall, two times.
21    Q.    Okay, great.
22          My job is to try to make this
23  seamless with you and I am going to be
24  asking you a series of questions today
25  just to try to understand 9/11 and what
```

Page 12

```
 1              JENKINS
 2  you think about it, those are my goals
 3  today and just to get your help in the
 4  process, okay?
 5    A.    Sure.
 6    Q.    If you don't understand my
 7  questions at any time, feel free to ask
 8  me, I am happy to rephrase or clarify, I
 9  will try to be as straightforward as I can
10  for you, okay?
11    A.    All right.
12    Q.    So that the court reporter can
13  get all of this down, I have to wait for
14  you to stop speaking and you have to wait
15  for me to stop speaking for her to do
16  that, is that okay?
17    A.    That's okay.
18    Q.    Okay.
19          And if you answer the question,
20  I am going to assume that you understood
21  the question if you don't seek
22  clarification.
23          Do you understand that?
24    A.    I do.
25    Q.    And also, your answers need to
```

Page 13

```
 1              JENKINS
 2  be verbal, a yes or a no or other words,
 3  it can't be um-hum, uh-huh or nods of the
 4  head, okay?
 5    A.    All right.
 6    Q.    There are a couple of just
 7  housekeeping matters.
 8          One, I will try to take a break
 9  about every hour-and-a-half or so, if
10  that's okay with you; if you need to take
11  a break before that, just please let me
12  know.
13    A.    All right.
14    Q.    And if there is a question
15  pending, though, before we take a break, I
16  would just like you to answer the
17  question, unless there is some issue of
18  privilege that you need to consult about.
19    A.    I understand.
20    Q.    Okay, great.
21          You understand you're here
22  today about the 9/11 civil litigation
23  brought in the Southern District of New
24  York, or if it was brought elsewhere,
25  that's been consolidated for pretrial
```

4 (Pages 10 - 13)

Page 274

1                JENKINS
2    A.    Not at the moment, but they're
3 probably on my bookshelf.
4    Q.    There is no audio versions?
5    A.    I beg your pardon?
6    Q.    There is no audio versions of
7 the book?
8    A.    Not that I know of.
9         I mean, there may well be, but,
10 no, not that I know of.
11   Q.    You testified earlier that the
12 only report that you received I guess of
13 defendants' experts was that of Mr. or
14 Dr. Mark Sageman.
15        Are you aware that other Al
16 Qaeda -- or other experts have submitted
17 reports I guess touching upon content that
18 comes out of your report relating to Al
19 Qaeda?
20   A.    I am aware that there may be,
21 you know, a comment, I think I am aware,
22 but did not see those.
23   Q.    Were you not asked to submit
24 rebuttal report to any of those reports?
25   A.    I was not.

Page 275

1                JENKINS
2    Q.    Do you know why that is?
3         MR. EUBANKS:  Objection to the
4 -- objection to the extent you're asking
5 for communications between counsel and the
6 expert.
7         To the extent it is asking
8 that, I would instruct him not to answer.
9         MR. NASSAR:  I am not asking
10 that.
11   Q.    Do you have a sense, were you
12 busy, do you have a sense why you did not
13 submit a rebuttal in this case?
14   A.    My answer is that, John
15 anticipated but was rolling across --
16 just about to roll across my lips, that is
17 part of a discussion that I had with the
18 attorneys and therefore was under
19 instructions not to go into that.
20   Q.    Do you recall, Mr. Jenkins,
21 that you were asked earlier whether you
22 reviewed any documents that may have been
23 fraudulent or inauthentic, do you recall
24 that?
25   A.    Yes, I do recall that.

Page 276

1                JENKINS
2    Q.    Can I direct you to Exhibit B
3 of your report that's been marked as
4 Exhibit 2025, page 6 in that exhibit.
5         I believe you testified earlier
6 that you did not personally prepare this
7 appendix, is that correct?
8    A.    No, I personally -- I did not
9 prepare this, this represents material
10 that either I used on my own or that was
11 available to me.
12   Q.    I want to direct you to three
13 cells on this page 6 and I think I'll ask
14 the concierge to highlight them.
15        Let's start from the bottom,
16 the first one is the last one on the page,
17 the May 13, 1999, letter.
18        The next one is three entries
19 up, it is the March 22, 2000, letter from
20 the general director of the MWL's branch
21 office in Pakistan.
22        The next one is four up, the
23 July 12, 1999, letter.
24        Do you recall if these
25 documents were sent to you by plaintiffs'

Page 277

1                JENKINS
2 counsel, sir?
3    A.    I don't recall the specific
4 documents.
5         As I say, this is a big list
6 and material is available, but my reaction
7 in terms of considering is that anything
8 that pertained to issues, the financial
9 issues, the charities -- the whole
10 financial issues, this was not to be part
11 of my report, that there were other
12 experts retained by counsel to address
13 these.
14        And so in coming through this
15 list, that would have been one that I
16 would have automatically said not me, not
17 my territory.
18   Q.    Mr. Jenkins, would it surprise
19 you to learn that these documents were
20 deemed by the court, or the court stated
21 in relation to these documents that it was
22 convinced that there is reason to question
23 their authenticity?
24   A.    Do you want me to comment on
25 that?

Page 278

```
 1                JENKINS
 2     Q.   Yes, would it surprise you to
 3  learn --
 4     A.   You're giving me information --
 5     Q.   No, I am asking, would it
 6  surprise you to learn that the court
 7  stated in relation to these documents that
 8  it was convinced that there is reason to
 9  question their authenticity, would that
10  surprise you?
11          MR. EUBANKS:  Outside the
12  scope.
13          MR. NASSAR:  No, it is not.
14          MR. EUBANKS:  And rule of
15  completeness.
16          MR. NASSAR:  I am going to show
17  him the document, but right now I am
18  asking a question, the rule of
19  completeness will be dealt with by me
20  showing him the document in a minute, so I
21  am asking before we show him the document.
22     Q.   Would that surprise you to
23  learn that, sir?
24     A.   I have no opinion on that one
25  way or the other.
```

Page 279

```
 1                JENKINS
 2     Q.   Would it surprise you if you
 3  were sent documents that the court was
 4  convinced that it questioned the
 5  authenticity, you would expect plaintiffs'
 6  counsel to send you those types of
 7  documents?
 8     A.   You're getting into an area
 9  that is really far beyond my ability to
10  answer here.
11     Q.   Mr. Jenkins, it is in your
12  reliance material -- okay, let me ask the
13  next question.
14          Would it surprise you, sir,
15  that some of these documents, that these
16  three documents, were ruled by the court
17  -- were struck from the case because the
18  court ruled that fairness dictates that
19  plaintiffs not be permitted to rely
20  further on the documents for any purpose
21  related to this multi-district litigation,
22  would that surprise you?
23          MR. EUBANKS:  Objection, rule
24  of completeness.
25     Q.   You can answer.
```

Page 280

```
 1                JENKINS
 2     A.   I have no idea what rule of
 3  completeness means.
 4     Q.   I have to look it up myself.
 5     A.   So the court decided that?
 6     Q.   I'll save the suspense, it is
 7  late in the day.
 8     A.   Yes.
 9     Q.   If we can pull up I think
10  Exhibit No. 2008, please, it was marked in
11  the previous deposition.
12          It is the bottom paragraph that
13  begins "having reviewed the declarations,"
14  but Mr. Jenkins, we've got a couple of
15  minutes, if you want to review the whole
16  thing you can.
17          (Witness perusing document.)
18     A.   Okay, sir, I have read this
19  paragraph.
20     Q.   I will ask you, just for the
21  sake of clarity, did you rely on these
22  three documents in drafting your report?
23          MR. EUBANKS:  Objection --
24     A.   No.
25     Q.   Couple of minor questions.
```

Page 281

```
 1                JENKINS
 2          You mentioned in your report,
 3  sir, a massacre in Sebrenica.
 4          What was happening in
 5  Sebrenica?
 6     A.   Let me go back to the page.
 7     Q.   I'll find it for you, it is on
 8  page 9, the paragraph under "A Coordinated
 9  Multi-Part Attack" and you reference the
10  mass -- you mentioned the systematic mass
11  murder of 7,800 Bosniac men and boys
12  around Sebrenica in 1995 during the war in
13  Bosnia.
14     A.   Yes.
15     Q.   What was happening, can you
16  explain the circumstances of what was
17  happening in Sebrenica around that time?
18     A.   This was during the war and
19  there were Serb militia and Serbian units
20  that were engaged in atrocities against
21  the Bosniaks at this time, and this
22  particular issue, there were a large
23  number of men and boys, younger boys, who
24  were rounded up and over a period of time,
25  actually it went on over a period of many
```

| | |
|---|---|
| Page 282<br>1     JENKINS<br>2  days, they were shot.<br>3          That was a terrible, a terrible<br>4  atrocity and it led to war crime charges<br>5  being brought against those involved.<br>6     Q.    Mr. Jenkins, who were those<br>7  involved, who was doing the shooting?<br>8     A.    These were Serbs.<br>9     Q.    Was it part of an ethnic<br>10 cleansing that was occurring, a general<br>11 ethnic cleansing?<br>12    A.    Indeed it was.<br>13          MR. EUBANKS:  Object to form.<br>14    Q.    Moving along, just one last<br>15 question and that will be it for me, I<br>16 believe.<br>17          Page 14, you have a brief<br>18 reference to the Sheikh Omar Abdel-Rahman.<br>19          I just wanted to clarify, it<br>20 was not your view that he was part of Al<br>21 Qaeda, is it?<br>22    A.    No.<br>23          MR. NASSAR:  If I could have<br>24 just one minute to confer with my<br>25 colleagues, I think I'm done. | Page 284<br>1     JENKINS<br>2  relative to my report and I went through<br>3  those portions that clearly were<br>4  identifiable as dealing with other<br>5  plaintiffs' witnesses.<br>6          I skimmed through those because<br>7  that was not my territory.<br>8     Q.    What do you think of<br>9  Dr. Sageman as an expert?<br>10    A.    I think Dr. Sageman is --  I<br>11 think he is a respected scholar in this<br>12 particular field, in the field of<br>13 terrorism.<br>14          I had the privilege of also<br>15 working with the New York Police<br>16 Department at the time he was there as a<br>17 scholar in residence.<br>18          I have his books on my<br>19 bookshelf and so, yes, he is a scholar.<br>20          Now, you know, but --<br>21    Q.    I just asked you --<br>22 Dr. Jenkins, I just asked --<br>23          MR. EUBANKS:  He was still<br>24 answering the question you posed.<br>25          MR. MOHAMMEDI:  I asked a |
| Page 283<br>1     JENKINS<br>2          THE VIDEO TECHNICIAN: Time is<br>3  7:19, we're off the record.<br>4          (Recess taken.)<br>5          THE VIDEO TECHNICIAN: We are on<br>6  the record, the time is 7:20 p.m..<br>7          Please continue.<br>8          MR. NASSAR:  That's all I have,<br>9  thank you very much, Mr. Jenkins.<br>10         THE WITNESS: Thank you.<br>11 EXAMINATION BY<br>12 MR. MOHAMMEDI:<br>13    Q.    This is Omar Mohammedi and I<br>14 represent along with other lawyers World<br>15 Assembly of Muslim Youth, I have a few<br>16 questions and I think it will take less<br>17 than 23 minutes, I will be specific and to<br>18 the point.<br>19          You stated before that you read<br>20 Dr. Sageman's report, correct?<br>21    A.    I went through the whole report<br>22 when I got the copy of it, I read through<br>23 it.<br>24          I will tell you that I was<br>25 primarily looking for comments that were | Page 285<br>1     JENKINS<br>2  specific question, what does he think of<br>3  Dr. Sageman.<br>4          MR. EUBANKS:  And he didn't<br>5  finish.<br>6          MR. MOHAMMEDI:  He --<br>7          MR. EUBANKS:  He said "but" and<br>8  you cut him off.<br>9          MR. MOHAMMEDI:  I asked him<br>10 specific question of what he thinks of<br>11 Dr. Sageman and he went into his report,<br>12 that is not my question.<br>13         MR. HAEFELE:  Omar, you can't<br>14 just take what you want out of it, he has<br>15 not finished his answer.<br>16         MR. MOHAMMEDI:  I asked the<br>17 specific question what he thought of<br>18 Dr. Sageman.<br>19         MR. EUBANKS:  And he was still<br>20 answering that question until you cut him<br>21 off.<br>22    Q.    What do you think of<br>23 Dr. Sageman?<br>24    A.    He is a respected scholar and<br>25 on many of the issues I agree with him, |