# EXHIBIT 12



**LAW FIRM OF**
**OMAR T. MOHAMMEDI, LLC**

233 BROADWAY, SUITE 801
WOOLWORTH BUILDING
NEW YORK, NY 10279
PHONE (212) 725-3846
FACSIMILE (212) 202-7621
WWW.OTMLAW.COM

OMAR T. MOHAMMEDI, ESQ.
PHONE: (212) 725-3846
EMAIL: OMOHAMMEDI@OTMLAW.COM

February 4, 2014

**VIA HAND DELIVERY**
The Honorable Frank Maas
United States District Court
For the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 740
New York, NY 10007-1312

**Re: In re Terrorist Attacks of September 11, 2001, 03 MDL 1570**

Your Honor:

      Defendants WAMY Saudi Arabia ("WAMY") respectfully submit this response to Plaintiffs' Executive Committee's December 19, 2013 Letter Motion to Compel. In that letter, Plaintiffs claim WAMY has repeatedly engaged in a strategy of obstructionist conduct by purposely refusing to produce documents in the possession of WAMY-Canada and by withholding FOIA documentation.

      WAMY has at all times acted in good faith and produced all responsive documents within its custody and control that pertain to WAMY-Canada. WAMY expected that the WAMY-Canada office would cooperate fully with WAMY's requests for documents and materials in its possession. WAMY was stunned and disturbed by the refusal of the WAMY-Canada representative to cooperate with its request and produce the documents. WAMY wants the documents as much, if not more, than the Plaintiffs, as they will vindicate WAMY's defense. WAMY has, therefore, been doing everything it can to obtain the documents from WAMY-Canada.

      Plaintiffs' strategy is clearly to attack WAMY and suggest that it is trying to hide something in a probable effort to ultimately request an adverse inference instruction or obtain sanctions. WAMY is not trying to hide anything. It has produced all relevant WAMY-Canada documents in its possession, and will continue to do everything it can to overcome the intransigence of the WAMY-Canada official and get the WAMY-Canada documents. Indeed, it has already secured the official's

authorization to the Canada Revenue Agency ("CRA") to release all requested documents and materials as requested by the Letters Rogatory issued by Judge Daniels. Judicial intervention is not warranted.

The FOIA issue is moot because WAMY reproduced the old production with updated documents as per this Court's order at the December 20, 2013 hearing. Further, WAMY did not withhold any documents with the intention to prevent Plaintiffs from reviewing documents received from any agency. Plaintiffs chose not to reach out to WAMY's Counsel to understand the nature of the production. Instead, they filed an unnecessary motion. Judicial intervention on this issue is also not warranted.

WAMY categorically denies all of Plaintiffs' baseless accusations. Without any evidence, Plaintiffs have accused WAMY of being obstructionist and acting in bad faith on many occasions in this discovery process. Such accusations are offensive, untrue and simply not grounded in fact.[1]

In their Letter Motion to Compel, Plaintiffs also make baseless claims to discredit WAMY's Secretary General Saleh al-Wohaibi. WAMY objects to such an attack on Dr. al-Wohaibi's credibility, made without an ascertainment of the facts in this case.[2] WAMY does not want to dignify Plaintiffs' argument, and will instead save the opportunity to offer the merit based arguments in forthcoming dispositive motions which will address the baseless allegation of WAMY's "nefarious relationship" with Benevolence International Foundation. In this response, WAMY will deal only with the issues relating to discovery disputes identified in Plaintiffs' Letter Motion to Compel.

---

[1] WAMY takes issue with Plaintiffs' characterization of WAMY as a "defendant that has grown increasingly dismissive of these proceedings and has strategically chosen to engage in obstructionist behavior to frustrate discovery." *See* Plaintiffs' Executive Committee's December 19, 2013 Letter Motion to Compel, Exhibit 1, Page 3. Importantly, this is not the first time Plaintiffs have made disparaging comments against WAMY. *See* Plaintiffs' Executive Committee's February 1, 2012 Reply to WAMY's Letter Motion to Compel at pages 3, 4, 5, 11 and 12, and Plaintiffs' Executive Committee's November 14, 2013 Reply to WAMY's Letter Motion to Compel, both attached hereto as Exhibit 2.

[2] Plaintiffs attempt to discredit Secretary General al-Wohaibi on the basis of pure unsubstantiated assumptions: "… WAMY-Canada is alleged to have engaged in this nefarious relationship with designated terrorist entity Benevolence International Foundation – *a relationship WAMY's Secretary General unequivocally represented to the Court never existed.*" Plaintiffs' Executive Committee's December 19, 2013 Letter Motion to Compel, Exhibit 1, Page 5.

2

## I. **Plaintiffs' Baseless Accusations Against WAMY should be refuted and denied.**

### a. **Plaintiffs' Allegation that WAMY has Purposely Failed to Produce Documents Regarding WAMY-Canada is Without Merit**

#### i. **WAMY has no custody or control over WAMY-Canada**

Rule 34(a) of the Federal Rules of Civil Procedure governs the production of documents.[3] The rule specifically states, as long as a party subject to the jurisdiction of an American court has "control" over information possessed by a foreign corporate affiliate, that information is discoverable.

"Control" is broadly defined in the Federal Rules of Civil Procedure. It "does not require that the party have legal ownership or actual physical "custody" of the documents at issue; rather, the documents are considered under a party's control when the party has <u>the right, authority</u> or <u>practical ability</u> to obtain the documents from a nonparty to the action."[4]

In determining whether a corporation within the United States can be compelled to produce documents held by a foreign affiliate, a court must therefore first consider the nature of the relationship between the corporation and its affiliate.[5] If the nature of the relationship between the parent and its affiliate is such that the affiliate <u>can</u> obtain documents from its foreign parent to assist itself in litigation, it must produce them for discovery purposes. Further, the test to determine whether a corporation has custody and control over documents located with an overseas affiliate

---

[3] "A party may serve on any other party a request…(1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control: (A) any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (B) any designated tangible things; or (2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." F.R.C.P. Rule 34(a)

[4] *In re NTL Inc. Sec. Litig.*, No. 02 Civ. 3013, 2007 WL 241344, at *17 (S.D.N.Y. Jan. 30, 2007).

[5] *See Addamax Corp. v. Open Software Found., Inc.,* 148 F.R.D. 462, 467 (D. Mass. 1993); *Alcan Int'l Ltd. v. S.A. Day Mfg. Co.,* 176 F.R.D. 75, 78 (W.D.N.Y.1996).

3

is not limited to whether the corporation has a legal right to those documents.[6] Rather, the test focuses on whether the corporation has "access to the documents" and "ability to obtain the documents."[7] The affiliate must have "demonstrated access" to its parent's documents "in the ordinary course of business."[8] The "party seeking the production bears the burden of establishing control."[9]

Plaintiffs have the burden of proof and have not demonstrated sufficient evidence that WAMY presently has custody or control over WAMY-Canada such that this Court should order WAMY to produce documents and materials in the possession of WAMY-Canada. In the November 11, 2011 letter to the Honorable Frank Maas, submitted jointly by Plaintiffs' Executive Committee and Defendants' Executive Committee, WAMY stated that it had custody and control of its chapters, allowing it to gather documents as needed, as it had no reason to believe that this was not the case.[10] Sometime thereafter, WAMY-Canada unexpectedly refused to cooperate and produce its records. Nonetheless, WAMY has produced all responsive WAMY-Canada documents within WAMY's custody and control as demonstrated herein-below – a fact which even have Plaintiffs conceded.

WAMY-Canada was originally incorporated in 1997.[11] In return for receiving funds for the implementation of its programs, WAMY-Canada was supposed to cooperate and submit comprehensive reports regarding its activities and financials to WAMY. However, despite numerous attempts to elicit such cooperation from WAMY, WAMY-Canada failed to submit its activity reports, except when Talha Al Jarrad became the Executive Director of WAMY-Canada. In fact, WAMY-Canada has not received funding from WAMY for some time because of the Canada

---

[6] *See Cooper Indus., Inc. v. British Aerospace, Inc.,* 102 F.R.D. 918, 920 (S.D.N.Y.1984).

[7] *Addamax Corp., supra* note 5. *See also Hunter Douglas, Inc. v. Comfortex Corp.,* No. Civ. A. M8–85 (WHP), 1999 WL 14007, at *3 (S.D.N.Y. Jan. 11, 1999).

[8] *Dietrich v. Bauer,* No. 95 Civ. 7051(RWS), 2000 WL 1171132, at *3 (S.D.N.Y. Aug. 16, 2000).

[9] *Desmeth v. Samsung Am., Inc.,* No. 92 Civ. 3710(LBS)(RLE), 1998 WL 74297, at *9 (S.D.N.Y. Feb. 20, 1998). *See also Honda Lease Trust v. Middlesex Mut. Assurance Co.,* No. 3:05 Civ. 1426(RNC), 2008 WL 3285242, at *2 (D. Conn. Aug. 7, 2008) (denying motion to compel where movant failed to produce evidence sufficient to engage in the "fact specific inquiry necessary" to find control).

[10] *See* November 11, 2011 letter to the Honorable Frank Maas, submitted jointly by the Plaintiffs' Executive Committees and the Defendants' Executive Committee, page 10, attached hereto as Exhibit 3.

[11] *See* Letters Patent, Issued December 10, 1997, Recorded January 26, 1998, attached hereto as Exhibit 4.

office's lack of submission of the requisite comprehensive annual reports to WAMY. Further, Plaintiffs have been aware of the foregoing details of the relationship between WAMY and WAMY-Canada. Nearly 400 pages of documents relating to WAMY-Canada in the possession of WAMY and WAMY International evidencing the same were produced to Plaintiffs in WAMY's August 2012 document production.[12]

WAMY-Canada has held itself out to be a separate organization since well before the issuance of the CRA report.[13] Canadian law governing charities also supports this claim. Under Canadian law, Canadian-registered charities cannot be subsidiaries of a foreign entity, as they must maintain full direction and control over their own activities. A foreign charity can be involved with the setting up and operation of an independent not-for-profit organization which has charitable status in Canada, and can have some control over the Canadian not-for-profit organization by various means including agreement, but the Canadian charity cannot be a full subsidiary.[14]

As stated above, since its establishment, WAMY-Canada has displayed resistance towards WAMY, despite looking for funding from WAMY though WAMY International to support its operations. Nevertheless, WAMY did not expect the relationship to be this adversarial. This changed following the issuance of the CRA report. As will be detailed further below, the nature of the relationship between WAMY and WAMY-Canada changed such that, at

---

[12] *See* WAMY's Counsel's August 30, 2012 Letter to Sean Carter, Plaintiffs' Executive Committee, attached hereto as Exhibit 5.

[13] *See* the original and translated version of a memorandum from WAMY's legal department to the Assistant Secretary General of International Bureaus Relations, June 19, 2004 (Jumada Al-Awwal 1, 1425, Hijri), translated from Arabic, and the original and translated version of a legal opinion from Dr. Khalid Bin Abdel Mohsen Al-Mehesan, WAMY's Legal Counsel, to Mr. Muhammad Bin Ali Al-Kotobi, June 16, 2004 (Rabi Al-Akhar 28, 1425, Hijri), translated from Arabic, both attached hereto as Exhibit 6. "[T]he World Assembly of Muslim Youth Cooperative in Canada is a national Canadian organization, not a branch of the World Assembly of Muslim Youth, according to Canadian law. The registration of the Cooperative in this manner will never raise any regulatory issues as long as it complies with Canadian regulations… Establishing the Cooperative in accordance with Canadian company law does not give the Assembly [WAMY-SA] any regulatory authority in regards to supervision and management. The fact that the Canadian Cooperative has the same name as the World Assembly of Muslim Youth is not sufficient to link the Cooperative to the Assembly."

[14] CANADA REVENUE AGENCY GUIDANCE, Guidance CG-002, *Canadian Registered Charities Carrying Out Activities Outside Canada* (July 8, 2010).

present, WAMY does <u>not have "access to the documents"</u> or have the <u>practical "ability to obtain the documents."</u>[15]

Following the issuance of the CRA report, WAMY's Counsel sent a letter to Dr. Ayman Taher, director of WAMY-Canada on April 9, 2012. The letter indicated that "you [WAMY-Canada] have made it clear that you were unwilling to work with WAMY Saudi Arabia and refused to provide us with any documents within your possession… WAMY Canada's hostility renders its relationship with WAMY Saudi Arabia adversarial."[16] This letter went unanswered. Subsequently, a Letter from Saleh al-Wohaibi, Secretary General of WAMY, to Dr. Ayman Taher, dated May 9, 2012, explicitly asked WAMY-Canada to "cease and desist from using WAMY's name and causing further damage to WAMY's name."[17]

Following the filing of this motion, on December 23, 2013, WAMY's Counsel sent a letter to Nasser Irfan Syed, Dr. Taher's lawyer, requesting the immediate release of the documents in his possession and requesting that Dr. Taher sign an authorization for the CRA to release the documents Plaintiffs sought through the Letters Rogatory.[18] The letter offered a deadline. The letter was delivered on December 30, 2013, and signed for by "Maimion."[19]

On January 16, 2014, Saleh al-Wohaibi sent a letter to both Dr. Taher and his lawyer requesting the same and threatened to file a lawsuit if these documents were not produced or the authorization was not signed.[20] Finally, WAMY's efforts and threat of legal proceeding against WAMY-Canada, Dr. Taher provided the authorization for the release of the CRA documents. Dr.

---

[15] *Addamax Corp., supra* note 5.

[16] *See* WAMY's Counsel's April 9, 2012 Letter to Dr. Ayman Taher, director of WAMY-Canada, attached hereto as Exhibit 7.

[17] *See also* Saleh al-Wohaibi, Secretary General of WAMY, May 9, 2012 Letter to Dr. Ayman Taher, director of WAMY-Canada, attached hereto as Exhibit 8.

[18] *See* WAMY's Counsel's December 23, 2013 Letter to Nasser Irfan Syed, Counsel to WAMY-Canada, with a sample authorization for the CRA to produce documents to Plaintiffs, attached hereto as Exhibit 9.

[19] Delivery Confirmation for WAMY's Counsel's December 23, 2013 Letter to Nasser Irfan Syed, Counsel to WAMY-Canada, dated December 30, 2013, attached hereto as Exhibit 10.

[20] *See* Saleh al-Wohaibi, Secretary General of WAMY, January 16, 2014 Letter to Dr. Ayman Taher, director of WAMY-Canada, and Nasser Irfan Syed, Counsel to WAMY-Canada, attached hereto as Exhibit 11.

Taher made changes to the authorization so that all copies will also be sent to WAMY-Canada. In a letter dated January 22, 2014 and addressed to Sean Carter, WAMY's Counsel attached the authorization.[21] Dr. al-Wohaibi then sent another letter reiterating his request for any WAMY-Canada documents in the possession of Dr. Taher or WAMY-Canada's counsel.[22] Since WAMY could not sign the authorization for the CRA to release any documents, WAMY's Counsel has contacted lawyers in Canada to explore other possible means to get the documents from the CRA and/or WAMY-Canada's counsel.[23]

While WAMY has made a strong good faith attempt to access the WAMY-Canada documents in response to Plaintiffs' requests, there is a demonstrated failure of practical ability to actually obtain any additional documents WAMY-Canada or the CRA may have. WAMY has neither "access to the documents" nor the "ability to obtain the documents"[24] in the possession of WAMY-Canada or the CRA, despite its continuous and ongoing attempts to do so.

Plaintiffs cite to instances where WAMY (or WAMY Counsel) stated it had custody and control over the Canadian branch office in their Letter Motion to Compel, as evidence that the custody and control exists.[25] Plaintiffs' further claim WAMY's subsequent assertion that there is no functional relationship between WAMY and WAMY-Canada is "pure fantasy."[26] Such claims are without merit and ignore the unexpected intransigence of WAMY-Canada, of which plaintiffs are fully aware. As demonstrated above, the timing of WAMY-Canada's claims that it was a separate organization did not coincide with the issuance of the CRA report, as

---

[21] *See* WAMY's Counsel's January 22, 2014 Letter to Sean Carter, attached hereto as Exhibit 12.

[22] *See* Saleh al-Wohaibi, Secretary General of WAMY, January 27, 2014 Letter to Dr. Ayman Taher, director of WAMY-Canada, attached hereto as Exhibit 13.

[23] *See* email correspondence dated March 29, 2012 from WAMY's Counsel to Canadian attorney Carole Chouinard, attached hereto as Exhibit 14. *See also* Emails from WAMY's Counsel to various Canadian law firms which specialize in non-profit law, attached hereto as Exhibit 15.

[24] *Addamax Corp., supra* note 5.

[25] *See* Plaintiffs' Executive Committee's December 19, 2013 Letter Motion to Compel, Exhibit 1, Page 3.

[26] *See* Plaintiffs' Executive Committee's December 19, 2013 Letter Motion to Compel, Exhibit 1, Page 4.

Plaintiffs allege. The historically difficult relationship between WAMY and WAMY-Canada, stemming from WAMY-Canada's existence as a separate entity, is a factual reality, as demonstrated throughout this letter.[27]

After the issuance of the CRA report, WAMY-Canada failed to cooperate with WAMY in filing an administrative appeal to clear WAMY's name.[28] WAMY, as a separate and a foreign organization, could not independently challenge the report and its statements made against WAMY. However, WAMY-Canada's Executive Director, Dr. Ayman Taher, said he would only sign the retainer to challenge the CRA on behalf of WAMY-Canada if the Canadian counsel would not share documents related to WAMY-Canada with WAMY, or cooperate with WAMY's Counsel in this litigation.[29]

WAMY has gone even further by exploring the possibility for filing a lawsuit against WAMY-Canada, and is currently in the process of securing an opinion regarding the same from Canadian attorneys who specialize in non-profit and charity law.[30]

Neither WAMY's good faith effort nor WAMY-Canada's hostility is a "*fantasy*", as Plaintiffs claim without any basis. WAMY rejects Plaintiffs' attempts at discrediting it before this Court, and implying it has acted in anything less than good faith. WAMY has not been obstructing production of discovery in this case. WAMY is equally, if not more, in need to receive these documents to defend itself.

Finally, Plaintiffs allege that even if WAMY-Canada is, in fact, a rogue organization that has separated itself from WAMY, Canadian law provides WAMY with legal remedies to obtain access to the relevant documents at

---

[27] *See e.g.,* Legal Opinion from Dr. Khalid Bin Abdel Mohsen Al-Mehesan, WAMY's Legal Counsel, to Mr. Muhammad Bin Ali Al-Kotobi, June 16, 2004 (Rabi Al-Akhar 28, 1425, Hijri), discussing the registration of WAMY-Canada as a "national organization that has its own independent legal entity," translated from Arabic, attached hereto as Exhibit 6. *See also* CRA Guidance CG-002, *supra*, note 14.

[28] *See* email correspondence dated April 3, 2012 from Canadian attorney Carole Chouinard to WAMY's Counsel stating that WAMY-Canada was not interested in challenging the CRA report, attached hereto as Exhibit 16.

[29] *See* email correspondence dated April 4, 2012 from Canadian attorney Carole Chouinard to WAMY's Counsel, attached hereto as Exhibit 17.

[30] *See* Emails from WAMY's Counsel to various Canadian law firms which specialize in non-profit law, attached hereto as Exhibit 15.

issue, and that WAMY has failed to undertake a "full-court press to obtain the requested materials."[31] Again, Plaintiffs' claims are unfounded. As we have cited throughout this response, WAMY has acted in good faith and to the best of its ability to retrieve documents from WAMY-Canada and/or the CRA.[32] Such efforts were repeatedly rebuffed. WAMY conveyed as much to the Court in previous instances as well, noting same in the April 10, 2012 Letter from WAMY's Counsel to the Honorable Frank Maas.[33] Further, as already explained above, WAMY has gone above and beyond its duty by continuing its attempts to secure the CRA authorization from Dr. Taher and obtain access to the documents currently in the possession of WAMY-Canada's counsel.[34]

For the foregoing reasons, WAMY does not have "access to the documents" or the "ability to obtain the documents" from WAMY-Canada.[35] If this Court has the authority to force WAMY-Canada to produce the documents, WAMY would wholeheartedly join in this motion. Unfortunately, the powers of this Court do not extend to Canada. WAMY should not be compelled to produce documents and materials which are simply out of its control. Further, the secured authorization of Dr. Taher offers Plaintiffs full access to WAMY-Canada's document. Plaintiffs' motion to compel the production of documents in the possession of WAMY-Canada and/or the CRA should be denied.

---

[31] *See* Plaintiffs' Executive Committee's December 19, 2013 Letter Motion to Compel, Exhibit 1, Page 4.

[32] *See* WAMY's Counsel's April 9, 2012 Letter to Dr. Ayman Taher, director of WAMY-Canada, attached hereto as Exhibit 7. *See also* Saleh al-Wohaibi, Secretary General of WAMY, May 9, 2012 Letter to Dr. Ayman Taher, director of WAMY-Canada, attached hereto as Exhibit 8. *See also* WAMY's Counsel's December 23, 2013 Letter to Nasser Irfan Syed, Counsel to WAMY-Canada, attached hereto as Exhibit 9.

[33] *See* WAMY's Counsel's April 10, 2012 Letter to Honorable Frank Maas, page 2, attached hereto as Exhibit 18.

[34] *See* WAMY's Counsel's April 9, 2012 Letter to Dr. Ayman Taher, director of WAMY-Canada, attached hereto as Exhibit 7. *See also* Saleh al-Wohaibi, Secretary General of WAMY, May 9, 2012 Letter to Dr. Ayman Taher, director of WAMY-Canada, attached hereto as Exhibit 8. *See also* WAMY's Counsel's December 23, 2013 Letter to Nasser Irfan Syed, Counsel to WAMY-Canada, attached hereto as Exhibit 9. *See also* Saleh al-Wohaibi, Secretary General of WAMY, January 16, 2014 Letter to Dr. Ayman Taher, director of WAMY-Canada, and Nasser Irfan Syed, Counsel to WAMY-Canada, attached hereto as Exhibit 11. *See also* Saleh al-Wohaibi, Secretary General of WAMY, January 27, 2014 Letter to Dr. Ayman Taher, director of WAMY-Canada, attached hereto as Exhibit 13. *See also* Emails from WAMY's Counsel to various Canadian law firms which specialize in non-profit law, attached hereto as Exhibit 15.

[35] *Addamax Corp., supra* note 5.

### b. Plaintiffs' Allegation that WAMY has Purposely Failed to Produce Documentation Regarding the CRA Investigation is Without Merit

Plaintiffs also contend that WAMY has "failed to produce documents in response to plaintiffs' supplemental discovery, specifically seeking materials relating to the Canadian government's investigation and audit of WAMY-Canada."[36] To support this allegation, Plaintiffs state that "given the public reporting of the CRA's investigation and terrorism allegations directed at WAMY, it is inconceivable that WAMY officials did not immediately engage in internal meetings and communications to address those accusations and develop a comprehensive response strategy."[37]

First, WAMY was "never informed of the revocation of [WAMY-Canada's] charitable status until after articles were published in the Canadian news of the revocation."[38] WAMY certainly did not have secret meetings to discuss the investigation, as Plaintiffs allege.[39] WAMY was not aware of what was happening between WAMY-Canada and the CRA. Plaintiffs cannot, and should not, assume facts that do not exist and force WAMY to produce documents from WAMY meetings related to the CRA report if such meetings did not occur between WAMY officials in Saudi Arabia.

WAMY learned of the CRA investigation through media reports. Subsequently, WAMY made efforts to challenge the report and retrieve the documents from the CRA. It contacted WAMY-Canada's counsel and asked if counsel could do anything to challenge the CRA report and its baseless accusations against WAMY. In response, WAMY-Canada's counsel, Nasser Irfan Syed, challenged WAMY's Counsel and took an adversarial approach towards WAMY and its counsel.[40] WAMY even offered to pay for WAMY-

---

[36] *See* Plaintiffs' Executive Committee's December 19, 2013 Letter Motion to Compel, Exhibit 1, Page 6.

[37] *Id.*

[38] *See also* Saleh al-Wohaibi, Secretary General of WAMY, May 9, 2012 Letter to Dr. Ayman Taher, director of WAMY-Canada, page 1, attached hereto as Exhibit 8.

[39] *See* Plaintiffs' Executive Committee's December 19, 2013 Letter Motion to Compel, Exhibit 1, Page 6.

[40] *See* email correspondence dated April 2, 2012 between WAMY's Counsel and Nasser Irfan Syed, Counsel to WAMY-Canada, attached hereto as Exhibit 19.

Canada to challenge the CRA report and clear the organization's name and secure document within the CRA's possession.[41] Certainly, WAMY has a vested interest in challenging the CRA's report and receiving the documents within the CRA's possession. However, again, WAMY-Canada obstructed WAMY's efforts and became hostile towards WAMY. As noted above, WAMY-Canada indicated to the Canadian lawyer whom WAMY was willing to retain to challenge the CRA report and retrieve the documents within the possession of the CRA that it would only comply if such counsel were prevented from sharing any information regarding WAMY-Canada with WAMY.[42]

Finally, after immensely diligent efforts on the part of WAMY, including threat of a lawsuit, WAMY-Canada sent CRA the authorization to WAMY and WAMY's Counsel. Following receipt of the authorization, WAMY asked Plaintiffs to meet and discuss possible solutions to the issue that would not require spending further judicial resources.[43] WAMY's letter to Plaintiffs remains unanswered. The CRA report issue is moot.

In addition to all the efforts demonstrated this response motion, WAMY took a further step to receive and produce the documents the CRA was referring to. WAMY's Counsel, Omar Mohammedi and Frederick Goetz, traveled and met in person with Talha Al Jarrad, the former Executive Director of WAMY-Canada, in Saudi Arabia on May 11, 2012. Mr. Al Jarrad, in his personal capacity, offered to assist with this matter. In that meeting, Mr. Al Jarrad offered documents related to WAMY-Canada, many of which were referred to in the CRA report. Such documents were produced to Plaintiffs, in WAMY's August 2012 Production.

Importantly, WAMY's diligent efforts to retrieve the documents from WAMY-Canada and CRA are clearly demonstrated in this response letter. Such efforts include cooperating with Plaintiffs to send Letters Rogatory, sending letters to WAMY-Canada and its counsel requesting the production of documents, and contacting lawyers in Canada to challenge the report for a

---

[41] *See* email correspondence dated March 29, 2012 from WAMY's Counsel to the Canadian attorney Carole Chouinard, attached hereto as Exhibit 14.

[42] *See* email correspondence dated April 4, 2012 from Canadian attorney Carole Chouinard to WAMY's Counsel, attached hereto as Exhibit 17.

[43] *See* WAMY's Counsel's January 22, 2014 Letter to Sean Carter, attached hereto as Exhibit 12.

11

possible procedure to retrieve the document within the possession of the CRA and WAMY-Canada.[44]

Despite not having custody or control over WAMY-Canada WAMY has produced all relevant documents in its possession. To date, WAMY has produced approximately 400 pages of documents relating to WAMY-Canada, primarily in its August 2012 document production.[45]

While minimizing the important documents they have received, Plaintiffs concede that WAMY produced documents consisting of financial and operational documents."[46] Either Plaintiffs have not yet reviewed the

---

[44] *See* Plaintiffs' Executive Committee's May 11, 2012 Letters Rogatory to Cathy Howara, Canada Revenue Agency, attached hereto as Exhibit 20. *See also* WAMY Counsel's August 6, 8, and 14, 2012 Correspondence with Sean Carter, demonstrating WAMY's efforts and collaboration with Plaintiffs to receive the CRA documents, all attached hereto as Exhibit 21. *See also* WAMY's Counsel's April 9, 2012 Letter to Dr. Ayman Taher, director of WAMY-Canada, attached hereto as Exhibit 7. *See also* Saleh al-Wohaibi, Secretary General of WAMY, May 9, 2012 Letter to Dr. Ayman Taher, director of WAMY-Canada, attached hereto as Exhibit 8. *See also* WAMY's Counsel's December 23, 2013 Letter to Nasser Irfan Syed, Counsel to WAMY-Canada, attached hereto as Exhibit 9. *See also* Saleh al-Wohaibi, Secretary General of WAMY, January 16, 2014 Letter to Dr. Ayman Taher, director of WAMY-Canada, and Nasser Irfan Syed, Counsel to WAMY-Canada, attached hereto as Exhibit 11. *See also* Saleh al-Wohaibi, Secretary General of WAMY, January 27, 2014 Letter to Dr. Ayman Taher, director of WAMY-Canada, attached hereto as Exhibit 13. *See also* email correspondence dated April 2, 2012 between WAMY's Counsel and Nasser Irfan Syed, Counsel to WAMY-Canada, attached hereto as Exhibit 19. *See also* email correspondence dated March 29, 2012 from WAMY's Counsel to Canadian attorney Carole Chouinard, attached hereto as Exhibit 14. *See also* Emails from WAMY's Counsel to various Canadian law firms which specialize in non-profit law, attached hereto as Exhibit 15.

[45] *See* WAMY's Counsel's letter dated August 30, 2012 to Sean Carter, Plaintiffs' Executive Committee, attached hereto as Exhibit 5.

[46] *See* December 19, 2013 Plaintiffs' Executive Committee Letter Motion to Compel, Exhibit 1, note 6. "The documents WAMY has produced consist largely of correspondence (primarily from the 1999-2002 timeframe) transmitted between WAMY-Canada, WAMY's Secretary General, and WAMY's Deputy Secretary General for Overseas Offices. The letters discuss a variety of issues relating to the activities of WAMY-Canada, including but not limited to, the resignation and appointment of WAMY-Canada office managers, the office budget expenses, the office's registration as a tax exempt organization in Canada, status of bank accounts, educational camps, requests for financial aid for Canadian Islamic schools, the provision of meals for Eid al Fitr, and WAMY's representation at certain Islamic conferences and ceremonies held in Canada. Other documents produced by the defendant include required disclosure forms submitted by the Canadian branch to the Canadian government, a few balance sheets and financial statements, correspondence between WAMY-Canada and WAMY's U.S. branch regarding budgetary issues, and other transactional documents."

documents, or have reviewed them but still insist without basis that WAMY has been obstructionist, did not take the steps necessary to procure the CRA documents and assume WAMY is withholding documents in its possession. Often during this discovery, Plaintiffs claim that financial and operational documents are essential to their claims. Now, Plaintiffs seem not to think these documents are important.

Further, Plaintiffs claim documents which show the alleged "nefarious relationship" between WAMY and BIF were not produced. Plaintiffs' allegations are inaccurate and unfounded. WAMY-Canada was established in 1997.[47] The CRA issued a business number in 1999.[48] Judge Daniels ordered that the period of discovery documents should be limited to 1992-2002.[49] WAMY has already produced responsive documents within it possession, including the ones referred to in the CRA report.

Again, WAMY has as much interest in retrieving both the WAMY-Canada relevant and responsive documents from the CRA as Plaintiffs do. Plaintiffs' claim that WAMY is withholding such documentation is wholly inaccurate. WAMY has, and will continue to produce any documents that come under its custody and control. Plaintiffs should refrain from making such unsupported and intemperate allegations.

Further, Plaintiffs' claim that WAMY is a "defendant that has grown increasingly dismissive of these proceedings and has strategically chosen to engage in obstructionist behavior to frustrate discovery"[50] is offensive and entirely wrong. Plaintiffs spend more time trying to undermine WAMY's credibility than trying to read the documents that WAMY already produced, or trying to work out a solution with WAMY on these disputes as WAMY has suggested.[51] In fact, and unfortunately, it is the Plaintiffs that have become

---

[47] *See* Letters Patent, Issued December 10, 1997, Recorded January 26, 1998, attached hereto as Exhibit 4.

[48] *See* Business Number Summary of Accounts, Effective Date January 1, 1999, attached hereto as Exhibit 22.

[49] *See* Order Governing Discovery Cutoff ¶ 3, Dec. 21, 2007 (Daniels, G.), attached hereto as Exhibit 23.

[50] *See* December 19, 2013 Plaintiffs' Executive Committee Letter Motion to Compel, Exhibit 1, page 6.

[51] *See also* WAMY's Counsel's January 22, 2014 Letter to Sean Carter, attached hereto as Exhibit 12.

increasingly dismissive of WAMY's good faith effort to resolve this and other discovery disputes, ultimately wasting valuable resources of both the Court and the parties involved.

Plaintiffs have routinely complained to this Court about WAMY's alleged inappropriate conduct in the proceedings. While they went beyond civility required in any litigation, Plaintiffs have not produced a shred of evidence to show WAMY has financed the 9/11 terrorist tragedy aside from newspaper articles, blog discussions and other such documents that may well prove to be inadmissible. Plaintiffs are required to prove their case by submitting documents to support their claim at this stage. Plaintiffs have implied their production is mostly comprised of meaningful, primary source documents that are directly responsive to WAMY's requests. This is far from the truth. Plaintiffs heavily rely on secondary source articles and news publications and on issues not related to the subject of this litigation or to WAMY's specific document requests.[52] In fact, nearly 50% of the documents Plaintiffs have produced so far have been news articles and a large amount of duplicates of the same documents. Even where Plaintiffs produced documents allegedly responsive to WAMY's requests, the documents were often unrelated, not meaningful, or otherwise non-responsive.[53]

---

[52] For example, PEC-WAMY001073-1671, 6586-6598, 7801-8048, 8169-8235, 8238-8254, 8341-8350, 8578-8592, 8623-8639, 9386-9393, 9913-10030, 10031-10085, and 10462-10507 are from the Center for Special Studies which is an Israeli non-governmental organization that publishes secondary source articles. There are also several op-eds from "Front Page" Magazine (PEC-WAMY001777-1779, 7357-7362, 7502-7505, 8576-8577, 10576-10581) and the "Weekly Standard" (PEC-WAMY001780-1783, 8869-8871, 12103-12105), both of which espouse conservative ideologies and relates information second-hand, a sample of these documents attached hereto as Exhibit 24.

[53] For example, WAMY's Document Request 76 from their First Set of Document Requests, attached hereto as Exhibit 25, asks to "[p]roduce all documents that substantiate the allegation that WAMY knowingly conspired with Osama bin Laden, Khalid Sheikh Mohammed, the September 11 Hijackers or any direct participant in the Attacks of September 11, 2001 to case injuries to any Plaintiffs." Plaintiffs provided PEC-WAMY011932, PEC-WAMY008255-008256, screenshots of the homepage on WAMY's website or its list of worldwide branches, attached hereto as Exhibit 26.

WAMY's Document Request 1 from their Second Set of Document Requests, attached hereto as Exhibit 27, asks to "[p]roduce all documents U.S. Department of Defense Combatant Status Review Board unclassified summaries of evidence for Combatant Status Review Tribunals ("CSRT"), High Value Detainee ("HVD") summaries, unclassified detainee statements and testimony, Administrative Review Board transcripts and summaries of evidence and other documentation and materials related to individuals who are or were previously incarcerated at the U.S. Naval Base at Guantanamo Bay, Cuba that refer or relate to WAMY." Plaintiffs provided PEC-WAMY009270-009316, which is not from the Department of Defense ("DoD"), but a memorandum summary of DoD and other documents by a third party. WAMY asked for

WAMY respectfully requests that this Court deny Plaintiffs' motion and direct them to concentrate on the disputed issues instead of engaging in offensive words and conclusory accusations without basis.

### c. Plaintiffs' Allegation that WAMY has Withheld FOIA Documentation is Without Merit

Plaintiffs allege WAMY has violated this Court's June 12, 2013 Memorandum Decision and Order (ECF NO. 2730) directing the parties to produce all FOIA related documents. Once again, Plaintiffs make an egregious claim that is based entirely on assumptions and lacks any factual support.

Plaintiffs claim that "correspondence produced by WAMY *suggests* the defendant may be in possession of a large number of documents produced to WAMY by the Departments of Justice and Treasury."[54] (emphasis added). This is not true. As is their wont, Plaintiffs again make baseless accusations rather than verifiable claims.

First, the FOIA production issue is now moot. WAMY has produced all up-to-date FOIA documents, including previously produced documents, to Plaintiffs with new bates stamp numbers. WAMY is also preparing for the production of FOIA to FOIA documents it has received up and until now.[55] Though the FOIA documents were already produced to Plaintiffs' Executive Committee, WAMY is committed to reproducing all <u>updated</u> documents received in response to not only to FOIA, but FOIA to FOIA requests as well. Such documents have and will be produced according to your Honor's December 20, 2013 Order.

Second, contrary to Plaintiffs' claim, WAMY does not withhold any FOIA documents because they are damaging to WAMY. All FOIA documents support WAMY's defenses in this lawsuit. In their Letter Motion to Compel, Plaintiffs reference correspondence between WAMY and the FBI regarding documents relating to the FBI's investigation and raid on WAMY's

---

government documents but received the mental impressions and summaries of various non-governmental authors, such as Evan F. Kohlmann, attached hereto as Exhibit 28.

[54] *See* December 19, 2013 Plaintiffs' Executive Committee Letter Motion to Compel, Exhibit 1, page 7.

[55] *See* WAMY's Counsel's letter dated January 31, 2014 Letter to Sean Carter regarding FOIA Production, attached hereto as Exhibit 29.

15

Virginia office in 2004.[56] If WAMY did not produce all relevant correspondence previously to Plaintiffs, which indicated that the FBI had located 3,982 pages of potentially responsive documents, and would cost WAMY $155, it means it never received them. WAMY's Counsel responded to the FBI, agreeing to the fee and asking for release of the documents. Despite two additional follow-ups to that letter, even as recently as December 26, 2013, WAMY has yet to receive any documents from the FBI. These correspondences were reproduced to Plaintiffs in their entirety.[57]

Plaintiffs could have simply communicated with WAMY on this to find out about these documents rather than filing a motion and making baseless arguments claims without any supporting facts. Plaintiffs' assumption that WAMY did, in fact, receive the responsive documents and withheld them from the Court is offensive, baseless, and indicative of Plaintiffs' ongoing hostility towards WAMY.[58] Indeed, the timing of the filing of plaintiffs motion on the eve of the December 20, 2013 hearing on WAMY's motion to compel shows plaintiffs ulterior motive and tactic of simply throwing as much mud as they can against WAMY in the hope that some will stick.

For the foregoing reasons, WAMY respectfully requests that this Court reject Plaintiffs' baseless allegations with respect to FOIA documents production. WAMY, in good faith has produced all FOIA documents, with a compilation of FOIA of FOIA production, recently received by WAMY, forthcoming shortly. WAMY will continue to produce additional documents

---

[56] *See* December 19, 2013 Plaintiffs' Executive Committee Letter Motion to Compel, Exhibit 1, page 7.

[57] *See* WAMY's Counsel's letter dated January 31, 2014 Letter to Sean Carter regarding FOIA Production, attached hereto as Exhibit 29. *See also* Letters to Department of Justice, Federal Bureau of Investigation, Bates Numbers SA6957-SA6965.

[58] Similarly, Plaintiffs cite to correspondence between WAMY and the Treasury Department, in which responsive documents were identified by the Treasury Department, and fees were consented to by WAMY. Again, Plaintiffs incorrectly assume that WAMY received these responsive documents from the government, and just failed to produce them. *See* December 19, 2013 Plaintiffs' Executive Committee Letter Motion to Compel, Exhibit 1, page 8. In actuality, Defendants received only 46 pages of documents from the agency that were duplicates of documents sent previously by the agency, and were already produced to Plaintiffs with Bates Numbers SA6550-6594 in June 2013. Had Plaintiffs reached out to WAMY to raise this issue, it could have been explained easily. In spite of the foregoing, WAMY reproduced the relevant documentation to Plaintiffs in its entirety. *See* WAMY's Counsel's letter dated January 31, 2014 Letter to Sean Carter regarding FOIA Production, attached hereto as Exhibit 29. *See also* Letters to Department of Treasury, Bates Numbers SA7174-7228.

LAW FIRM OF
**OMAR T. MOHAMMEDI, LLC**

---

as it receives them. WAMY will also follow the Court's December 20, 2013 Order which certainly applies to all parties.

In conclusion, WAMY objects to Plaintiffs' unsupported allegations that it has purposely obstructed discovery efforts, and has withheld documents relating to WAMY-Canada and FOIA. WAMY respectfully requests that this Court deny Plaintiffs' motion in its entirety.

Respectfully,

Omar T. Mohammedi, Esq.

/s/ *Frederick Goetz*

Frederick Goetz, Esq.

cc: Plaintiffs' Committee w/o enclosures
Alan Kabat w/o enclosures

17