# EXHIBIT 14

This Transcript Contains Confidential Material

```
 1          UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF NEW YORK
 2                    -  -  -
 3
 4   IN RE: TERRORIST ATTACKS    : 03-MDL-1570
     ON SEPTEMBER 11, 2001       : (GBD)(SN)
 5
 6
 7
                      -  -  -
 8              JULY 22, 2021
            THIS TRANSCRIPT CONTAINS
 9           CONFIDENTIAL MATERIAL
                      -  -  -
10
11
12          Remote Videotaped
13   Deposition, taken via Zoom, of JONATHAN
14   MARKS, commencing at 9:00 a.m., on the
15   above date, before Amanda
16   Maslynsky-Miller, Certified Realtime
17   Reporter and Notary Public in and for the
18   Commonwealth of Pennsylvania.
19
20                    -  -  -
21       GOLKOW LITIGATION SERVICES
         877.370.3377 ph| 917.591.5672 fax
22             deps@golkow.com
23
24
```

This Transcript Contains Confidential Material

```
 1    APPEARANCES:
 2

          KREINDLER & KREINDLER LLP
 3        BY: ANDREW J. MALONEY III, ESQUIRE
          485 Lexington Avenue, 28th Floor
 4        New York, New York 10017
          (212) 687-8181
 5        amaloney@kreindler.com
          Representing the Ashton, et al.,
 6        Plaintiffs
 7

 8

 9        COZEN O'CONNOR P.C.
          BY: SEAN P. CARTER, ESQUIRE
10        BY: J. SCOTT TARBUTTON, ESQUIRE
          One Liberty Place
11        1650 Market Street
          Suite 2800
12        Philadelphia, Pennsylvania 19103
          (215) 665-2000
13        scarter1@cozen.com
          starbutton@cozen.com
14        Representing the Plaintiffs
15

16

17        ANDERSON KILL P.C.
          BY: JERRY S. GOLDMAN, ESQUIRE
18        1251 Avenue of the Americas
          New York, New York 10020
19        (212) 278-1000
          jgoldman@andersonkill.com
20        Representing the Plaintiffs'
          Steering Committee
21

22

23

24
```

This Transcript Contains Confidential Material

```
 1   APPEARANCES:   (Continued)

 2

 3        MOTLEY RICE LLC
          BY: ROBERT T. HAEFELE, ESQUIRE
 4        BY: JODI WESTBROOK FLOWERS, ESQUIRE
          BY: C. ROSS HEYL, ESQUIRE
 5        28 Bridgeside Boulevard
          Mount Pleasant, South Carolina 29464
 6        (843) 216-9000
          rhaefele@motleyrice.com
 7        jflowers@motleyrice.com
          rheyl@motleyrice.com
 8        Representing the Plaintiffs' Steering
          Committee and the Burnett Plaintiffs
 9

10

11
          JONES DAY
12        BY: ERIC SNYDER, ESQUIRE
          BY: GABRIELLE PRITSKER, ESQUIRE
13        51 Louisiana Avenue, N.W.
          Washington, D.C. 20001
14        (202) 879-3939
          esnyder@jonesday.com
15        gpritsker@jonesday.com
          Representing the Defendant,
16        Dubai Islamic Bank

17

18        LEWIS BAACH KAUFMANN MIDDLEMISS PLLC
          BY: SUMAYYA KHATIB, ESQUIRE
19        1101 New York Avenue, N.W.
          Suite 1000
20        Washington, DC 20005
          (202) 833-8900
21        sumayya.khatib@lbkmlaw.com
          Representing the Defendants,
22        Muslim World League, the
          International Islamic Relief
23        Organization, and
          Drs. Turki, Al-Obaid, Naseef and Basha
24
```

This Transcript Contains Confidential Material

```
 1   APPEARANCES: (Continued)
 2
 3          LAW FIRM OF OMAR T. MOHAMMEDI, LLC
            BY: OMAR T. MOHAMMEDI
 4          BY: JILL L. MANDELL, ESQUIRE
            233 Broadway
 5          Suite 820
            New York, New York 10279
 6          (212) 725-3846
            omohammedi@otmlaw.com
 7          jmandell@otmlaw.com
            Representing the Defendant,
 8          WAMY and WAMY International
 9
10
11          GOETZ & ECKLAND P.A.
            BY: FREDERICK J. GOETZ, ESQUIRE
12          615 1st Avenue NE
            Suite 425
13          Minneapolis, Minnesota 55413
            (612) 874-1552
14          fgoetz@goetzeckland.com
            Representing the Defendant,
15          WAMY and WAMY International
16
17   ALSO PRESENT:
18   David Lane, Videographer
     Dianne Int-Hout, Trial Technician
19
20   Linde Hoffman, Legal Assistant, Jones Day
21
22
23
24
```

This Transcript Contains Confidential Material

```
 1                    -  -  -
 2                  I N D E X
 3                    -  -  -
 4

    Testimony of:  JONATHAN MARKS
 5
 6      By Mr. Carter                      9
        By Mr. Haefele                   282
 7      By Mr. Goetz                     309
 8

                     -  -  -
 9
               E X H I B I T S
10
                     -  -  -
11
12   NO.           DESCRIPTION             PAGE
13   Marks-959     No Bates
                   Notice of Oral Deposition
14                 of Jonathan Marks        12
15   Marks-960     No Bates
                   Curriculum Vitae of
16                 Jonathan Marks           13
17   Marks-961     No Bates
                   Expert Report of
18                 Jonathan Marks           52
19   Marks-962     No Bates
                   Baker Tilly Invoices     54
20
     Marks-963     No Bates
21                 Jonathan Marks: Appendix B:
                   Documents Considered     74
22
     Marks-964     WAMYSA082520-2521
23                 6/11/97 Letter          115
24
```

This Transcript Contains Confidential Material

```
 1                        -   -   -

 2                  E X H I B I T S

 3                        -   -   -

 4

    NO.            DESCRIPTION                PAGE
 5

    Marks-965     WAMYSA018579-8755
 6                Brief Information About
                  WAMY/LBI Office Activities
 7                During (1992-2002)          207

 8  Marks-966     WAMYSA066752-6802
                  Audit Accounts and Reports,
 9                Bangladesh Office           223

10  Marks-967     WAMYSA066717-6751
                  1997 E-mail and Attached
11                Documents                   227

12  Marks-968     WAMYSA066972-7030
                  Independent Auditor Report,
13                Indonesia Office            236

14  Marks-969     WAMYSA067482-7515
                  8/31/05 Financial Report
15                Review Audit                250

16  Marks-970     No Bates
                  A Violation of Trust: Fraud
17                Risk in Nonprofit
                  Organizations, Marks        278

18

19

20

21

22

23

24
```

This Transcript Contains Confidential Material

```
 1                    -   -   -

 2          DEPOSITION SUPPORT INDEX

 3                    -   -   -

 4

 5   Direction to Witness Not to Answer

 6   Page Line     Page Line     Page Line

 7   None

 8

 9

10   Request for Production of Documents

11   Page    Line   Page Line     Page Line

12   58      4

13

14

15   Stipulations

16   Page Line     Page Line     Page Line

17   8       1

18

19

20   Question Marked

21   Page Line     Page Line     Page Line

22   None

23

24
```

This Transcript Contains Confidential Material

```
 1                   -   -   -

 2                   (It is hereby stipulated and

 3           agreed by and among counsel that

 4           sealing, filing and certification

 5           are waived; and that all

 6           objections, except as to the form

 7           of the question, will be reserved

 8           until the time of trial.)

 9                   -   -   -

10           VIDEO TECHNICIAN:  We are

11           now on the record.  My name is

12           David Lane, videographer for

13           Golkow Litigation Services.

14           Today's date is July 22nd, 2021.

15           Our time is 9:00 a.m.

16                   This remote video deposition

17           is being held in the matter of the

18           Terrorist Attacks on September

19           11th, 2001.  The deponent today is

20           Jonathan Marks.

21                   All parties to this

22           deposition are appearing remotely

23           and have agreed to the witness

24           being sworn in remotely.
```

This Transcript Contains Confidential Material

```
 1              Due to the nature of remote
 2         reporting, please pause briefly
 3         before speaking so that all
 4         parties are heard completely.
 5              Counsel will be noted on the
 6         stenographic record.  Our court
 7         reporter today is Amanda Miller
 8         who will now swear in our witness.
 9                   -  -  -
10              JONATHAN MARKS, after having
11         been duly sworn, was examined and
12         testified as follows:
13                   -  -  -
14              VIDEO TECHNICIAN:  Please
15         begin.
16                   -  -  -
17                 EXAMINATION
18                   -  -  -
19    BY MR. CARTER:
20         Q.   Good morning, Mr. Marks.
21    How are you?
22         A.   Good morning.  How are you,
23    sir?
24         Q.   I'm well.
```

This Transcript Contains Confidential Material

1          My name is Sean Carter, and

2  I'm one of the attorneys representing

3  plaintiffs in litigation pending in

4  federal court in New York related to the

5  September 11th attacks.  The purpose

6  today is to take your deposition in that

7  matter.

8          The plaintiffs in the

9  litigation are family members who lost

10  loved ones in the attacks, survivors of

11  the attacks, as well as commercial

12  parties that suffered property and

13  economic losses.

14          Are you aware of that?

15      A.    I am.

16      Q.    My understanding is that

17  you've been retained to serve as an

18  expert by defendants, WAMY Saudi Arabia

19  and WAMY USA; is that correct?

20      A.    I believe so.

21      Q.    Do you not know?

22      A.    Well, yes.

23      Q.    Have you ever been deposed

24  before?

This Transcript Contains Confidential Material

1    A.    It does.

2    Q.    And were there other

3    individuals at Baker Tilly involved in

4    this project?

5    A.    Yes.

6    Q.    Do you recall approximately

7    how many other people were involved in

8    this project?

9    A.    I believe there was about 12

10   people on our team, yes.

11        MR. CARTER:  And if we could

12        mark collectively the invoices

13        that were produced that are

14        located at Tab 5 as the next

15        exhibit.

16            -  -  -

17        (Whereupon, Exhibit

18        Marks-962, No Bates, Baker Tilly

19        Invoices, was marked for

20        identification.)

21            -  -  -

22   BY MR. CARTER:

23   Q.    And, Mr. Marks, if you can,

24   can you just review those and let me know

This Transcript Contains Confidential Material

1    if those are, in fact, invoices issued by

2    Baker Tilly for your firm's work in this

3    matter?

4         A.    That's a Baker Tilly

5    invoice, yes.

6         Q.    Well, there's a bunch of

7    them, if you can scroll through all of

8    them.

9              MR. GOETZ:  I would suggest

10            that you download the exhibits on

11            the share file.

12             THE WITNESS:  I'm just

13            having a problem getting through

14            these, I apologize.  They won't

15            move.

16             Bear with me for one second.

17   BY MR. CARTER:

18        Q.    Sure.

19        A.    Okay.  I got it to work.

20   Thank you.  Thank you for your patience.

21   I appreciate it.

22        Q.    Sure.

23        A.    And, Mr. Carter, you'd like

24   me to review these?

This Transcript Contains Confidential Material

```
 1        Q.    Yes.  I'd like you to just
 2   confirm that those are all invoices that
 3   Baker Tilly issued for its work on behalf
 4   of the WAMY defendants in this case.
 5        A.    Bear with me while I look
 6   through them.
 7             Mr. Carter?
 8        Q.    Yes.
 9        A.    I've scanned through these,
10   and I believe they are our invoices.
11   They also seem to be account statements
12   as well.
13        Q.    And I'll get into that in a
14   second.
15             But the invoices, as I see,
16   are dated from February 19th, 2020, and
17   the last one is September 24, 2020.
18             Am I correct there would be
19   some additional time for the work you
20   recently did in preparation for the
21   deposition that's not reflected in these?
22        A.    That is accurate, yes.
23        Q.    Do you have -- do you have
24   any sense of what the additional charges,
```

This Transcript Contains Confidential Material

1  beyond those reflected in these invoices,

2  would add up to?

3       A.    I believe our work in

4  process is approximately $80,000, yes.

5       Q.    And during what time period

6  did that $80,000 accrue?

7       A.    I don't have the specific

8  date ranges, but it's probably over the

9  last four months.

10       Q.    So there are additional

11  charges over the last four months that

12  aren't encompassed by the invoices and

13  supporting documents I have here?

14       A.    That's correct.

15       Q.    And were there bills sent

16  out over the last four months --

17       A.    No.

18       Q.    -- for that work?

19             Did you say no?

20       A.    That's correct.

21       Q.    So none of that work has

22  been invoiced as of this date?

23       A.    It was just recently

24  invoiced.

This Transcript Contains Confidential Material

1       Q.    When?

2       A.    I believe -- I think it was

3  last week or the week before.

4             MR. CARTER:  Fred, I don't

5        have our agreement in front of me,

6        but I think it would have

7        encompassed production of that

8        invoice as well.  So if you can

9        get that to us.

10            MR. GOETZ:  If we have it,

11       we'll send it to you.

12            MR. CARTER:  Thanks.

13            MR. GOETZ:  We'll just

14       check -- at the break, we'll check

15       the office in New York and see if

16       they have them.  And if they do,

17       we'll send them.

18            MR. MOHAMMEDI:  We're still

19       working with Baker Tilly on the

20       invoice.  When that is finalized,

21       we'll send that.

22            MR. CARTER:  I think we're

23       going to adhere to the view that

24       the invoice should be produced in

This Transcript Contains Confidential Material

```
1          its current form so that we can

2          have an opportunity to talk to Mr.

3          Marks about it, if appropriate.

4               So we would ask you to do

5          that at a break.

6               MR. MOHAMMEDI:  We don't

7          have a description, that's why.

8          We need a description for Baker

9          Tilly.  You will not be able to

10         know exactly what the invoice is

11         for.  That's the reason.

12              MR. CARTER:  Unfortunately,

13         Omar, I can't understand you well

14         enough to know what you said.

15         There's a problem with your audio.

16              MR. GOETZ:  We'll look at

17         it, what we have, and send it to

18         you.  You'll find, I think, that

19         it's just a gross amount without

20         any breakdown.

21              But if we have an invoice,

22         we'll provide it, consistent with

23         our protocol, in terms of what we

24         have.
```

This Transcript Contains Confidential Material

1           Now, whether or not we're

2        talking to Mr. Tilly about that is

3        another issue, but we'll send you

4        what we have.

5           MR. CARTER:  And just --

6        when we do take a break, if we can

7        try and somehow improve the audio

8        for you, Fred, and for Omar,

9        because I'm having terrible

10       difficulty understanding what

11       you're saying.  So it's hard to

12       respond.

13          MR. GOETZ:  We'll work on

14       it.

15          MR. CARTER:  Thanks.

16    BY MR. CARTER:

17       Q.   Mr. Marks, just turning back

18    to this exhibit and using the invoice

19    that was sent out on February 19th, 2020,

20    as an example, is it fair to say that the

21    sort of invoicing convention here is that

22    the Page 1, which is on the right, right

23    now, not the one that's on the screen,

24    provides a sort of total statement of the

This Transcript Contains Confidential Material

1    charges, correct?

2         A.    Yes.

3         Q.    And then the second page

4    behind that includes an overview of the

5    individuals who billed time during the

6    relevant period and the total number of

7    hours and rate charged?

8         A.    Correct.

9         Q.    And then behind that there

10   are details regarding the daily time

11   descriptions relating to the work

12   performed by those individuals?

13        A.    That's correct.

14        Q.    And that's true for all of

15   the invoices we have in this collection,

16   correct?

17        A.    I believe so, yes.  Based on

18   my review, yes.

19        Q.    Based on our review of these

20   invoices, we understand that through the

21   date covered by these invoices, Baker

22   Tilly billed WAMY a total of $379,907.93,

23   and that was after an approximately

24   $36,000 discount.

This Transcript Contains Confidential Material

1          Does that sound right?

2          A.     I did not add it up, sir.

3     But I believe it sounds close, yes.

4          Q.     And with the additional

5     approximately $80,000 that you referenced

6     related to more recent work, the total

7     billings would be in the range of

8     $480,000?

9          A.     That's correct.

10         Q.     And I believe you said

11    earlier there were approximately 12

12    individual timekeepers who billed time

13    for work on this project; is that

14    correct?

15         A.     I believe that's what I

16    said, yes.

17         Q.     And based on my review, it

18    appears that the total hours you billed

19    during the period covered by these

20    invoices that we've marked as an exhibit

21    was 91.75 hours.

22               Does that sound right?

23         A.     That's what's recorded on

24    the time sheets, yes.

This Transcript Contains Confidential Material

1    Q.    And just turning to the time

2    sheets specifically, the first invoice,

3    dated February 19th, 2020, includes a

4    total of two hours for you?

5    A.    Yes.

6    Q.    And those two hours all

7    pertain to a meeting you had with Mr.

8    Mohammedi, correct?

9    A.    I believe so, yes.

10   Q.    And the next invoice, dated

11   March 5, 2020, records two and-a-half

12   hours of total time for you, correct?

13   A.    Yes.

14   Q.    And you describe that as

15   related to coordinating access and review

16   of preliminary information, communication

17   with staff, correct?

18   A.    I can't see the description.

19   I apologize.

20   Q.    Sorry.  It's on Page 3 of

21   this particular invoice.

22        MR. GOETZ:  Mr. Marks, you

23        can download the document if

24        that's better for you to see.

This Transcript Contains Confidential Material

1              THE WITNESS:  Yes.  That's

2        what it says.

3  BY MR. CARTER:

4        Q.    And just as a -- as a

5  baseline proposition, as a large

6  accounting firm, am I correct that Baker

7  Tilly requires its personnel to record

8  their time accurately?

9        A.    We try our best, yes.

10        Q.    And does it require

11  employees to include accurate

12  descriptions of the work that they

13  performed?

14        A.    It requires them to provide

15  some general semblance of what tasks they

16  provided, yes.

17        Q.    And that semblance should be

18  accurate, correct?

19        A.    I would hope it would be,

20  yes.

21        Q.    And you personally adhere to

22  those requirements, correct?

23        A.    Again, I try my best, yes.

24        Q.    Turning to the invoice --

This Transcript Contains Confidential Material

1   the next invoice which is dated March

2   27th, 2020, and going to the summary of

3   the involved timekeepers, which is Page

4   2.

5            MR. CARTER:  The prior page,

6       I'm sorry.

7   BY MR. CARTER:

8       Q.    There was no time reflected

9   on this invoice for you, correct?

10      A.    That's correct.

11      Q.    And turning next to the

12  April 2, 2020, invoice, there are --

13  again, there was no time recorded for any

14  work by you on the project during the

15  period covered by that invoice, correct?

16      A.    That's correct.

17            And you're going to probably

18  see no time recorded for me in the

19  following month as well, probably.

20      Q.    Well, let's do it one by

21  one.

22            The invoice dated May 11,

23  2020, does not reflect any work performed

24  by you during the month covered by that

This Transcript Contains Confidential Material

1    invoice, correct?

2         A.    It does not.

3         Q.    And the invoice dated June

4    11, 2020, likewise, does not indicate any

5    work by you during the period covered by

6    that invoice, correct?

7         A.    Correct.

8         Q.    And then turning to the July

9    22, 2020, invoice, you're -- there's an

10   indication that you spent 35

11   and-a-quarter hours working on the

12   project during that month, correct?

13        A.    That's what it says, yes.

14        Q.    And then there are details

15   on Page 4 describing the nature of the

16   work that you performed.

17              Do you see the entries

18   associated with your name?

19        A.    I do.

20        Q.    And as I read those entries,

21   they all pertain to the drafting of the

22   report and discussions; is that correct?

23        A.    That's what it says, yes.

24        Q.    And there are entries here

This Transcript Contains Confidential Material

1  and elsewhere for other individuals at

2  Baker Tilly relating to the drafting and

3  revision of the report, correct?

4         A.    I don't know what you're

5  referring to.  Other -- I don't know -- I

6  can only see what's on the screen.

7         Q.    Well, if you look, there's

8  an entry, the third name down, there's an

9  entry for P. Zikmund, and it's described

10 as, Report preparation.

11              Do you see that?

12        A.    I do.

13        Q.    And then there's another for

14 him to update the report.

15              Do you see that?

16        A.    Yes.

17        Q.    And a third for him, update

18 the report, and then a fourth and a

19 fifth.

20              So there are entries for --

21 several entries for other people, in this

22 case, Mr. Zikmund, related to the report,

23 correct?

24        A.    Correct.

This Transcript Contains Confidential Material

1    Q.    And the report referenced

2  there, is that your rebuttal report in

3  this matter?

4    A.    It is.

5    Q.    And turning to the invoice

6  from September 24, 2020, the second page

7  indicates that you spent a total of 52

8  hours working on the project during the

9  two months covered by that invoice; is

10  that correct?

11    A.    That's what it says, yes.

12    Q.    And then looking at the

13  individualized time description entries,

14  there's a number, as you'll see on Page 4

15  of 7 of this invoice, associated with

16  you, referring to rebuttal report prep,

17  draft, draft, rebuttal report prep,

18  rebuttal report prep.

19        Do you see those?

20    A.    I do.

21    Q.    And there are entries for a

22  number of other people that reference the

23  report as well.

24        Do you see that?

This Transcript Contains Confidential Material

 1              Three entries, for instance,

 2    for Mr. Goldberg right at the top of the

 3    report.

 4         A.    Yes.

 5         Q.    And a number of entries for

 6    Mr. Zikmund again, with report; is that

 7    correct?

 8         A.    Yes, sir.

 9         Q.    And entries -- an entry for

10    Mr. Scaccia for report revisions, and

11    several for Mr. Goldberg, correct?

12         A.    Yes, sir.

13         Q.    And one for Dardani?

14         A.    That's correct.

15         Q.    And then turning to the next

16    page of this particular invoice, there

17    are entries associated with your name,

18    and a few of them reference, Review

19    documents.  There is an entry for 1.25

20    hours associated with your name,

21    several -- a few entries for 4.25 hours

22    that include, among other work,

23    references to your involvement in

24    reviewing documents.

This Transcript Contains Confidential Material

1          Do you see those?

2     A.    Yes.

3     Q.    By my calculation, this

4  invoice indicates only 14 hours were

5  spent on any work that you describe as

6  involving review of documents.

7          Does that sound correct?

8     A.    That's what the time sheet

9  says, yes.

10     Q.    And reviewing all of the

11  other invoices, I have not seen any other

12  time entries on your behalf that

13  reference any involvement by you in

14  reviewing documents.

15          Does that sound correct?

16          MR. GOETZ:  Objection.

17       Form.

18          THE WITNESS:  There's

19       nothing on those invoices, no.

20       That's correct.

21  BY MR. CARTER:

22     Q.    And when was your report

23  issued?

24     A.    August 7th, 2020.

This Transcript Contains Confidential Material

```
 1          Q.    So these invoices encompass
 2   all of the time invested by you up to the
 3   date of the issuance of the report,
 4   correct?
 5          A.    Well, not all the time.  I
 6   did not record all of my time.
 7          Q.    Why did you not record all
 8   of your time?
 9          A.    There are -- we have various
10   discussions throughout the -- you know,
11   these types of projects, these
12   investigations, and a lot of times
13   that -- when I have discussions with my
14   staff when we're doing a project or a
15   litigation assignment like this, I did
16   not record all of my time.
17          Q.    So you may not have recorded
18   some time associated with discussions
19   with your staff, correct?
20          A.    There were a lot of
21   discussions with my staff, Mr. Carter.
22          Q.    But just to be clear, the
23   total time that describes any involvement
24   on your part in reviewing documents is 14
```

This Transcript Contains Confidential Material

1    hours, correct?

2          A.    If that's what it says, then

3    that's correct.

4          Q.    And all of the 14 hours that

5    include descriptions of reviewing

6    documents are included in the September

7    4, 2020, invoice covering the period July

8    1, 2020, through August 31, 2020.

9                Does that sound accurate?

10         A.    It does.

11         Q.    And the invoice for the

12   prior period covering June 1, 2020,

13   through June 30, 2020, indicates that you

14   were already involved, during that

15   period, in preparing your report,

16   correct?

17         A.    Right.

18         Q.    So according to the invoices

19   that we have, you began working on your

20   report before you entered any time for

21   reviewing any documents, correct?

22         A.    Well, part of putting my

23   report together would be reviewing

24   documents, so, yes.

This Transcript Contains Confidential Material

1    Q.    Why would you have included

2  entries in the invoice from September

3  2020 describing your work as reviewing

4  documents and not include a similar

5  description for reviewing documents in

6  earlier invoices?

7    A.    I don't know.

8    Q.    Do you have any idea how

9  much time you actually spent, prior to

10  issuance of your report, reviewing

11  documents?

12          MR. GOETZ:  Objection.

13      Form.

14          THE WITNESS:  Since we

15      started in -- since we started in,

16      I would say, the end of January,

17      beginning of February, it was an

18      ongoing process.

19  BY MR. CARTER:

20    Q.    Well, you have a total of 91

21  hours, the vast majority of which are

22  described as relating to the preparation

23  of your report, and only 14 of which are

24  described as involving, in any way, work

This Transcript Contains Confidential Material

1    associated with reviewing documents,

2    correct?

3         A.    Right.

4              MR. GOETZ:  Object to the

5         form.

6              MR. CARTER:  And if we can

7         mark as the next exhibit the

8         reliance materials described or

9         identified as having been

10        considered by you.

11              -   -   -

12             (Whereupon, Exhibit

13        Marks-963, No Bates, Jonathan

14        Marks: Appendix B: Documents

15        Considered, was marked for

16        identification.)

17              -   -   -

18             MS. INT-HOUT:  Sorry, Sean,

19        what tab number would that be?

20             MR. CARTER:  Tab 4.

21             MS. INT-HOUT:  Thank you.

22             THE WITNESS:  Would you mind

23        if I went to the bathroom real

24        quick?  I apologize.

This Transcript Contains Confidential Material

```
 1              MR. CARTER:  No, that's
 2       fine.
 3              THE WITNESS:  You sure?
 4              MR. CARTER:  Yes.  How long
 5       do you need?
 6              THE WITNESS:  Just a couple
 7       of minutes.  I just want to run
 8       down the hall and go to the
 9       bathroom.
10              MR. CARTER:  Okay.  Should
11       we take five minutes?
12              MR. GOETZ:  Sounds good.
13       Thank you.
14              THE WITNESS:  Thank you.
15              VIDEO TECHNICIAN:  We're
16       going to go off the record, 10:11
17       a.m.
18                   -   -   -
19              (Whereupon, a brief recess
20       was taken.)
21                   -   -   -
22              VIDEO TECHNICIAN:  Back on
23       the record at 10:19 a.m.
24    BY MR. CARTER:
```

This Transcript Contains Confidential Material

1    Q.    Mr. Marks, we just marked as

2    an exhibit the appendix to your report

3    identifying materials considered.

4              Do you know who prepared

5    this document?

6        A.    Sorry, I'm just pulling it

7    up.  There we go.

8              Okay.  I have it up now.  I

9    apologize.

10       Q.    Do you know who prepared

11   this document?

12       A.    Yes.

13       Q.    Who prepared it?

14       A.    This was prepared by us in

15   regard to this particular matter.

16       Q.    And did you yourself review

17   all of the documents listed in this

18   appendix?

19       A.    No.  The way -- well, no.  I

20   work with a team.  The way -- the way

21   this matter worked was I had -- as I said

22   to you before, I believe there were 12

23   people on our team, and I led, you know,

24   this particular effort.

This Transcript Contains Confidential Material

1           And there are a lot of

2   people that reviewed a lot of different

3   documents.  And the way the process

4   works, under my direct supervision, is,

5   you know, I lay out the methodology and,

6   you know, as we go through and -- as we

7   go through the matter, I'm involved in --

8   every step of the way.  And my team

9   reviews information and then brings it to

10  me, you know, I ask questions and they go

11  back and bring me more information.

12          But that's generally the way

13  it works.  So we work as a team.

14      Q.    So this is a list of

15  documents reviewed by your team, not by

16  you personally?

17      A.    I reviewed -- yes, that's

18  correct.

19      Q.    And so you relied on other

20  members of your team to review and

21  analyze the documents on this list,

22  correct?

23      A.    Yes.

24      Q.    And the total time reflected

This Transcript Contains Confidential Material

1    in the invoices for you reviewing

2    documents was 14 hours, correct?

3                MR. GOETZ:  Objection.

4           Form.

5                THE WITNESS:  We went

6           through this.  Yes, that's what it

7           says on the time sheets.  Yes.

8    BY MR. CARTER:

9           Q.    Do you know how many

10   documents you personally actually

11   reviewed --

12          A.    I don't.

13          Q.    -- prior to the issuance of

14   your report?

15          A.    I don't.

16          Q.    Well, did you review tens of

17   thousands of documents or fewer?

18          A.    We reviewed -- we reviewed a

19   lot of documents.  I don't know the exact

20   amount.

21          Q.    I'm not asking whether we,

22   "we" meaning Baker Tilly, reviewed.

23                I'm asking whether you

24   reviewed tens of thousands of documents?

This Transcript Contains Confidential Material

1       A.    I wouldn't say I reviewed

2  tens of thousands of documents, no.  Like

3  I said, that's not the process that we

4  went through -- go ahead.

5       Q.    So you review -- you relied

6  on other people to review documents and

7  they provided their analysis to you; is

8  that correct?

9       A.    Yes.

10      Q.    And how did they provide

11 that analysis to you?

12      A.    We would have regular and

13 ongoing discussions.

14      Q.    And did they provide any

15 summaries to you relating to their

16 review, analysis or findings?

17      A.    I'm sure they summarized it

18 to me, otherwise -- yes.  Absolutely,

19 yes.  They summarized information for me.

20      Q.    And so you relied on those

21 summaries for purposes of developing your

22 opinions and writing your report,

23 correct?

24      A.    I relied on those summaries

This Transcript Contains Confidential Material

1  to evaluate whether I believed that those

2  were complete and accurate.  And if I

3  thought that we needed more information,

4  I would -- I asked my staff to go back

5  and get me more details.

6           So placing reliance on them,

7  it all depended on many different

8  factors.

9      Q.   Well, you considered them in

10  the context of developing your opinions

11  and report in the case, correct?

12      A.   Yes.

13      Q.   And do you list any of those

14  summaries or any analyses provided by

15  your staff in the documents considered

16  section of your report?

17           MR. GOETZ:  Objection.

18      Form.

19           THE WITNESS:  I don't have

20      any written summaries.  So the

21      answer to that is no.

22  BY MR. CARTER:

23      Q.   Well, they didn't provide

24  you any information in writing relating

This Transcript Contains Confidential Material

1    to their review of the documents?

2         A.    No.  It was all done through

3    meetings and discussions.

4         Q.    And you were able to assess

5    the competence and quality of the review,

6    by a dozen employees, of tens of

7    thousands of documents based on verbal

8    communications at meetings?

9         A.    Yes.

10        Q.    And you didn't feel the need

11   to have anyone put any of their analysis

12   down in writing so you could study it and

13   make sure you thought it was accurate?

14        A.    I'm just telling you how it

15   worked.  We had conversations about the

16   documents.  If I thought that they

17   were -- if I thought -- if I understood

18   what it was that they were trying to say,

19   that was fine.

20             If not, if I needed more

21   information or required more information,

22   or there was something that I wanted to

23   be looked into further, then that's what

24   we did.

This Transcript Contains Confidential Material

1        But I do not have anything

2   written in the form of any analysis, no.

3        Q.   And individuals on your

4   staff also billed time for participating

5   in the drafting of the report, correct?

6        A.   They helped, yes, when I had

7   questions.  And that's why it says

8   drafting of the report.

9        I drafted the report.

10       Q.   Well, there are significant

11  time entries, Mr. Marks, for other

12  individuals described as related to the

13  drafting of the report.  They are not

14  incidental entries.

15       Can you explain that?

16       MR. GOETZ:  Objection.

17   Form.

18       THE WITNESS:  I can explain

19   the process, sure.

20       Would you like me to explain

21   the process?

22  BY MR. CARTER:

23       Q.   Well, no.

24       I'd like you to explain why,

This Transcript Contains Confidential Material

1   if you drafted the reports, there are a

2   significant number of hours invoiced by

3   other individuals at your firm for

4   drafting the report.

5           MR. GOETZ:  Objection.

6       Form.

7           THE WITNESS:  Again, I can

8       explain the process if you'd like.

9           MR. GOETZ:  Just explain the

10      process.

11          THE WITNESS:  So the way it

12      works is I draft the report and

13      others actually help me by

14      providing me with their thoughts,

15      their ideas on certain documents

16      that we looked at, and they answer

17      my questions.

18          But that's all part of the

19      report-drafting process.  This is

20      not something that's out of the

21      normal for the engagements that

22      we -- as a matter of fact, it's

23      very common.

24   BY MR. CARTER:

This Transcript Contains Confidential Material

1    Q.    Well, I mean, this is a

2    litigation engagement, it's not an audit

3    or forensic accounting engagement.

4           And so I'm trying to

5    understand exactly who was responsible

6    for the review and drafting of your

7    report within Baker Tilly.

8        A.    I think I answered that.

9           MR. GOETZ:  Objection.

10          Form.

11          THE WITNESS:  I believe I

12          answered that question.  I told

13          you I was.

14   BY MR. CARTER:

15       Q.    So if we can just turn back

16   to the September 24 invoice as an

17   example, and go to Page 4.

18       A.    Is that Exhibit-962?  I just

19   want to pull it up on my screen.

20          MR. GOETZ:  It is 962, Page

21          34 of the PDF.

22          THE WITNESS:  Give me a

23          moment to get there.

24   BY MR. CARTER:

This Transcript Contains Confidential Material

1       Q.    And just to run through

2   these, the first entry indicates that Mr.

3   Goldberg spent two hours on the report;

4   and then there's another entry for him

5   for two hours on the report; and another

6   entry by him for two hours on the report;

7   and below that there's another entry for

8   Mr. Goldberg for two hours on the report;

9   an entry for 1.5 hours for Mr. Zikmund on

10  the report; another three hours for Mr.

11  Goldberg on the report; a 3-hour entry

12  for Mr. Scaccia on update of the report;

13  a two-hour entry for Mr. Zikmund on the

14  report; a two-hour entry for Mr. Goldberg

15  on the report; a five-hour entry for Mr.

16  Scaccia for report revisions; a

17  one-and-a-half-hour entry for Mr. Zikmund

18  on the report; a six-hour entry by Mr.

19  Goldberg on the report; a 5.1-hour entry

20  for Ms. Dardani related to preparation of

21  the report; a 10-hour -- I'm sorry, a

22  4-hour entry for Mr. Goldberg described

23  as report re-work; and another entry of 5

24  hours for Mr. Goldberg described as

This Transcript Contains Confidential Material

1   report framework; and another entry at

2   the bottom for Mr. Goldberg for 10 hours

3   for report.

4               That seems to be quite a bit

5   of time for people simply providing

6   recommendations to you on the report; do

7   you agree?

8               MR. GOETZ:  Objection.

9        Form.

10              THE WITNESS:  I don't agree.

11  BY MR. CARTER:

12       Q.   Well, this is just one page,

13  there are other pages with similar

14  entries.

15              Can you -- again, can you

16  explain to me why there's so much time

17  reflected in these invoices for people

18  other than you described as related to

19  the drafting of the report?

20              MR. GOETZ:  Objection.

21       Form.

22              THE WITNESS:  You're

23       assuming that they're drafting the

24       report.  I had mentioned to you

This Transcript Contains Confidential Material

```
 1          before -- actually, I stated to

 2          you before, and testified, that I

 3          drafted the report and that, you

 4          know, when I have questions or

 5          when I have other things that need

 6          to be done, they help me as part

 7          of -- as part of our team.

 8  BY MR. CARTER:

 9          Q.    Well, I mean, some of the

10  entries actually are described.  For

11  instance, the one for Mr. Goldberg is the

12  report re-draft --

13          A.    Right.

14          Q.    -- at the bottom.

15                So that involves Mr.

16  Goldberg's involvement in re-drafting the

17  report, correct?

18          A.    No.

19                MR. GOETZ:  Objection to

20          form.

21                Go ahead and answer the

22          question.

23                THE WITNESS:  No.  It meant

24          that I went through the report and
```

This Transcript Contains Confidential Material

1          I had a lot of different questions

2          and asked for things to be done in

3          a different way, and he helped

4          with the re-drafting of the

5          report.  It doesn't mean that he

6          wrote the report.

7    BY MR. CARTER:

8          Q.   Okay.  So your testimony is

9    that the entries we see in all of these

10   invoices for other individuals from Baker

11   Tilly that refer to report, drafting of

12   the report and preparation of the report

13   did not actually involve any work by them

14   in drafting the report; is that correct?

15         A.   Repeat what you just said.

16   I just want to understand it clearly.

17              MR. CARTER:  Can we read it

18         back to him?

19              THE WITNESS:  Yes, please.

20                   -  -  -

21              (Whereupon, the court

22         reporter read the following part

23         of the record:

24              "Question:  So your

This Transcript Contains Confidential Material

1          testimony is that the entries we

2          see in all of these invoices for

3          other individuals from Baker Tilly

4          that refer to report, drafting of

5          the report and preparation of the

6          report did not actually involve

7          any work by them in drafting the

8          report; is that correct?")

9                    -  -  -

10         MR. GOETZ:  Objection.

11    Form.

12         THE WITNESS:  Like I said, I

13    drafted the report.

14    BY MR. CARTER:

15         Q.    And no one at Baker Tilly

16    had any involvement in providing any

17    written communications or summaries or

18    language that you incorporated into your

19    report?

20         A.    No.  That's correct.

21         Q.    What did you instruct the

22    members of your team to do at the outset

23    of the project?

24         A.    I instructed my team

This Transcript Contains Confidential Material

1   members, at the outset of the project, to

2   review the allegations and to work with

3   me as I laid out a methodology and a plan

4   for analyzing the financial information.

5        Q.   Did you instruct them to

6   attempt to identify any audits or

7   financial records that should exist but

8   that you couldn't identify in the

9   materials that were provided?

10            MR. GOETZ:  Objection to

11       form.

12            THE WITNESS:  I'm not sure

13       what you're asking me, Mr. Carter.

14   BY MR. CARTER:

15       Q.   Well, did you ask them to

16   catalogue, for instance, audits that you

17   would have expected to see but that

18   weren't within the materials that were

19   provided?

20       A.   No.

21            MR. GOETZ:  Objection to

22       form.

23   BY MR. CARTER:

24       Q.   During the course of the

This Transcript Contains Confidential Material

1    review, did you or any members of your

2    team identify any records that you would

3    have expected to see but that had not

4    been provided?

5         A.    I had all of the information

6    that I thought was necessary in order to

7    form the opinions that are laid out in my

8    report.

9         Q.    That's not the question I

10   asked.

11        A.    Okay.  Then I'm sorry, I

12   misunderstood what you said.

13             Can you just try to rephrase

14   it for me so I do understand it?

15        Q.    Did you or any members of

16   your team identify any records that you

17   would have expected to see but that had

18   not been provided?

19             MR. GOETZ:  Objection to

20        form.

21             THE WITNESS:  I didn't know

22        what to expect to see.  So, you

23        know, we did our -- we did our

24        search through the database

This Transcript Contains Confidential Material

1          accordingly to try to find what we

2          could.

3    BY MR. CARTER:

4          Q.    Well, I mean, you do have an

5    understanding of what types of audits and

6    financial documents an organization

7    exercising best practices would normally

8    have in its files, correct?

9                MR. GOETZ:  Objection.

10         Form.

11               THE WITNESS:  Best practices

12         based on what?

13   BY MR. CARTER:

14         Q.    Well, best practices based

15   on an organization that's implementing

16   rigorous and adequate financial controls.

17               MR. GOETZ:  Objection.

18         Form.

19               THE WITNESS:  Every

20         organization --

21   BY MR. CARTER:

22         Q.    Say -- go ahead.

23         A.    Every organization is

24   different.

This Transcript Contains Confidential Material

```
1          Q.    So did you request any
2    additional information from WAMY that you
3    thought was relevant to your analysis but
4    had not been provided?
5          A.    No.
6          Q.    Now, in your report, you
7    reserved your right to supplement and
8    prepare charts.
9                Have you done anything of
10   that nature?
11         A.    I haven't supplemented
12   anything to my report as of today.
13         Q.    And just going back and
14   turning to your report, briefly.
15               On Page 6 --
16         A.    Yes.
17         Q.    -- at the top, it says,
18   Based upon my review and analysis of the
19   tens of thousands of primary source
20   documents and other information produced
21   in connection with this matter, I have
22   not uncovered evidence to support a
23   finding of financial mismanagement or
24   misconduct indicative of terrorist
```

This Transcript Contains Confidential Material

1    financing activities on behalf of WAMY.

2              Do you see that?

3         A.    I do.

4         Q.    Do you agree with me, based

5    on your testimony earlier, that you did

6    not review tens of thousands of primary

7    source documents?

8         A.    Well --

9              MR. GOETZ:  Objection to

10        form.

11              THE WITNESS:  -- I think I

12        already -- I explained that "my"

13        means me and my team.

14   BY MR. CARTER:

15        Q.    Well, Mr. Marks, in

16   fairness, at the beginning of your

17   report, on Page 1, you specifically

18   indicate that the terms "I" and "my"

19   refer to you and that "we" and "us" refer

20   to Baker Tilly.

21              Do you see that?

22        A.    Yep.  I do see that.

23              I apologize.  So it probably

24   should read, Based on our review and

This Transcript Contains Confidential Material

1    analysis.

2         Q.    And there are various places

3    in your report where you use the

4    convention "I did something" and other

5    places where you say "we did something."

6              Am I correct in

7    understanding that where you use the term

8    "I," you intend to denote work that you

9    personally did and where you use the term

10   "we," you're describing work that was

11   done by your team?

12             MR. GOETZ:  Objection.

13        Form.

14             THE WITNESS:  I don't know

15        that to be fact, no.

16   BY MR. CARTER:

17        Q.    Well, at times in your

18   report, you refer to "our review."

19             That would refer to the

20   review of your team and not you

21   personally, right?

22        A.    Yes.  I would have to go

23   back and re-look, but, yes.

24        Q.    And then -- apologies.

This Transcript Contains Confidential Material

1  BY MR. CARTER:

2         Q.    Yes.

3               Were you asked to perform a

4  comprehensive review to identify any and

5  all red flags relating to WAMY and its

6  branch offices during the period in

7  question?

8         A.    We were asked to perform a

9  review.

10        Q.    And as part of that review,

11 were you asked to identify any things

12 that you saw as potential red flags?

13        A.    We were.

14        Q.    And did you develop a

15 comprehensive list of things that you saw

16 as red flags?

17        A.    That list would be small.

18        Q.    Okay.  But did you develop

19 one?

20        A.    Not a formal list, no.

21        Q.    On that same page of your

22 report, you say that the opposing experts

23 are not auditors, accountants, financial

24 experts, certified fraud examiners or

This Transcript Contains Confidential Material

1    something -- there might have been some

2    precipitating event.  I just don't know.

3              But I do know that based on

4    my internal control experience, based on

5    my review of charitable organizations,

6    based on my overall audit experience,

7    based on my forensic skills and

8    capabilities, that organizations that do

9    this are very, very rare.

10             And, like I said, the fact

11   that they actually did this is somewhat

12   commendable.

13             MR. CARTER:  If we can, I'd

14        just like to mark as the next

15        exhibit the article at Tab 10.

16                  -  -  -

17             (Whereupon, Exhibit

18        Marks-970, No Bates, A Violation

19        of Trust: Fraud Risk in Nonprofit

20        Organizations, Marks, was marked

21        for identification.)

22                  -  -  -

23   BY MR. CARTER:

24        Q.   Mr. Marks, is this an

This Transcript Contains Confidential Material

1    article that you authored?

2         A.    Yes.  Absolutely is.

3         Q.    Okay.  And am I correct that

4    it concerns fraud risk in nonprofit

5    organizations?

6         A.    It actually does fraud risk

7    in not-for-profit organizations.  It also

8    applies to for-profit organizations.

9              But, yes, that's what it is

10   written for.  Yes.

11        Q.    And just on Page 4 of 11 --

12        A.    Is this an exhibit, Mr.

13   Carter?

14        Q.    Yes, it is.

15        A.    Hold on one second.

16              Go ahead.

17        Q.    And towards the bottom of

18   Page 4 of this document, you identify a

19   list of common warning signals or red

20   flags of potential fraud?

21        A.    Yes.

22        Q.    And in the section under

23   data, you identify as a red flag accounts

24   with many large round numbers or

This Transcript Contains Confidential Material

1    transactions that are unusually large or

2    small, correct?

3           A.    Yes.

4           Q.    And on the next page -- I'm

5    sorry, on Page 6, you identify the

6    failure to reconcile accounts in a timely

7    manner as a red flag, correct?

8           A.    On Page 6?  Yes.

9           Q.    And you include that in a

10   section on lack of controls, correct?

11          A.    Correct.

12                MR. CARTER:  Mr. Marks,

13           that's all I have at the moment,

14           but I believe my colleague, Mr.

15           Haefele, has some brief follow-up.

16                THE WITNESS:  Well, I have a

17           couple -- I want to respond to

18           this.

19                MR. CARTER:  I don't have

20           any questions pending.  If you

21           want to do something with this,

22           your counsel can ask you

23           questions, Mr. Marks.

24                But we are going to move on

This Transcript Contains Confidential Material

1      with our questions.

2            THE WITNESS:  Well, Mr.

3      Carter, that's not fair.  Because

4      you just laid out things in an

5      article, and you didn't allow me

6      to explain at all.

7            MR. CARTER:  Mr. Marks, I

8      asked you straightforward

9      questions.  I was just trying to

10     get you to verify that you wrote

11     the article.

12           I don't have any further

13     questions.  Your counsel can

14     follow up with you and is

15     responsible for doing that if

16     appropriate.

17           THE WITNESS:  Okay.  Sorry.

18           MR. HAEFELE:  Do you want to

19     take a break or are we good to go

20     on?

21           Fred, I can't hear you.

22           MR. CARTER:  Fred, no one

23     can hear you.

24           MR. GOETZ:  What's our run

This Transcript Contains Confidential Material

1        time, David?

2              VIDEO TECHNICIAN:  Five

3        hours and 13 minutes.

4              MR. GOETZ:  I'm sorry, say

5        it again.

6              VIDEO TECHNICIAN:  Five

7        hours and 13 minutes.

8              MR. GOETZ:  We're good to go

9        for a little bit.  That's fine.

10             MR. HAEFELE:  All right.

11       Great.

12                    -  -  -

13                  EXAMINATION

14                    -  -  -

15  BY MR. HAEFELE:

16       Q.    Mr. Marks, my name is Robert

17  Haefele.  I'm another one of the lawyers

18  that represents the plaintiffs in this

19  litigation.  Thank you for taking the

20  time with us.  I appreciate it.

21       A.    How are you, Mr. Haefele?

22       Q.    I'm well.  Thanks.

23             And just, are you good to go

24  on?

This Transcript Contains Confidential Material

1        A.    Absolutely.

2        Q.    All right.  Terrific.

3              MR. HAEFELE:  I'm going to

4        ask if we could pull up what was

5        previously marked as Exhibit-962.

6    BY MR. HAEFELE:

7        Q.    And, Mr. Marks, 962 is the

8    Baker Tilly invoices that we marked

9    earlier today.

10             Do you remember those?

11       A.    Yes.

12       Q.    All right.  I'm going to ask

13   if we could flip over to Page 3 for a

14   moment.

15             MR. GOETZ:  Robert, sorry to

16       interject, but we did send that

17       other invoice to counsel.  So if

18       you check your inbox, you should

19       have that as well, just for your

20       reference, if you're talking about

21       this.

22             MR. HAEFELE:  Thanks.

23       Actually, that's a good point.

24             I don't know if somebody

This Transcript Contains Confidential Material

1          from Cozen's office can -- if I

2          can ask them if they would load

3          that to the file share for the

4          technologist, please.

5                  Is that possible, either

6          Scott or Sean?

7                  MS. INT-HOUT:  You can

8          actually load it directly in chat

9          and I can grab it.

10                 MR. HAEFELE:  Okay.

11         Actually, let's do that.  Let's

12         take a break at some point and do

13         that.  Let's keep going on now,

14         though.

15                 MR. CARTER:  We just

16         e-mailed it to her.

17                 MR. HAEFELE:  Great.  Great.

18  BY MR. HAEFELE:

19         Q.    So we're taking a look at

20  Page 3 of Exhibit-962.

21                 And do you see that, Mr.

22  Marks?

23         A.    Yes.

24         Q.    I'm going to refer you, on

This Transcript Contains Confidential Material

1    Page 3, there's a time entry there on

2    January 31 for you for two hours.

3              And that's for your initial

4    meeting with WAMY's lawyer, Omar

5    Mohammedi, right?

6         A.    Hold on one second.  That's

7    my Page 2.

8         Q.    Yeah.  Just so we're clear,

9    I'm going to be referring -- hopefully,

10   to make it easier for the technology

11   people, I'm referring to the PDF page.

12        A.    Okay.  Hold on one second.

13             MR. GOETZ:  For the record,

14        I think I was at that meeting,

15        too.  I don't want to be left out

16        here.

17             MR. HAEFELE:  I have no idea

18        what you're saying.  Sorry.

19             MR. GOETZ:  I think I was at

20        that meeting, too.  I don't want

21        to be left out here.

22             MR. HAEFELE:  All right.  I

23        think you're not, unfortunately,

24        referenced on the time sheet.  You

This Transcript Contains Confidential Material

```
 1          were a super secret, Fred.

 2                  MR. GOETZ:  I'm a secret

 3          agent, Robert.

 4                  MR. HAEFELE:  A spy.

 5                  THE WITNESS:  I'm sorry, Mr.

 6          Haefele.

 7   BY MR. HAEFELE:

 8          Q.    The question right now is

 9   the time entry there on January 31, 2020,

10   is two hours for your initial meeting

11   with WAMY lawyers, right?

12          A.    Correct.

13          Q.    And it indicates that you

14   had a meeting with Omar.  And Mr. Goetz

15   is indicating he was there as well --

16          A.    He was.

17          Q.    -- as well as Paul Zikmund

18   and Melissa Dardani?

19          A.    Yes.

20          Q.    All right.  And Melissa and

21   Paul are two people from Baker Tilly,

22   right?

23          A.    Yes.

24          Q.    All right.  And the first
```

This Transcript Contains Confidential Material

1    time entry for any work on the WAMY

2    project was January -- I'm sorry, January

3    27th, 2020, the entry by Melissa Dardani

4    to set up the project, and it was for

5    half an hour, right?

6         A.    That's what it says, yes.

7         Q.    So that's -- the very first

8    time entry is Ms. Dardani on January

9    27th?

10        A.    Correct.

11        Q.    And I'm going to ask you to

12   turn to Page 7 of the PDF, which is Page

13   3 of 3 of your invoices from February

14   2020.  Let me know when you're there.

15             Are you there?

16        A.    No, hold on one second.  I'm

17   trying to -- it just paused for one

18   second, I apologize.  It does that.

19             February 1st to February

20   29th, 2020, we're on the same page.

21        Q.    February 1st to February

22   29th, right.

23        A.    Yep.

24        Q.    And this is the very next

This Transcript Contains Confidential Material

1    set of invoices from the one we just

2    looked at, right?

3           A.    Yes.

4           Q.    And it reflects the next set

5    of billing after the initial meeting from

6    January 2020, right?

7           A.    Correct.

8           Q.    And here we see two entries

9    for you, one on 2/19 for an hour and a

10   quarter and another one, 2/20, for the

11   same amount, right?

12          A.    Correct.

13          Q.    So that's two and-a-half

14   hours total on the 19th and 20th of

15   February 2020, right?

16          A.    Correct.

17          Q.    And both entries for those

18   two dates read the same, Coordinate

19   access and review pre-lim information,

20   communication with staff, right?

21          A.    That's what it says, yes.

22          Q.    And what were you doing to

23   communicate access?

24          A.    You mean coordinate access?

This Transcript Contains Confidential Material

1      Q.     I'm sorry.  Yes.

2             What were you doing to

3      coordinate access?

4      A.     So coordinating access, so

5      when we do a litigation matter, an

6      investigation matter, what we do is, you

7      know, we set up a protocol on how to

8      access one another, and if there's

9      information that we get from -- for

10     example, that we download from an

11     electronically stored database that we

12     would consider, you know -- or I would

13     consider in my report, we would just

14     basically coordinate access and review of

15     preliminary information.

16            The other thing that we

17     generally do at that particular time is I

18     go over -- I go over my investigative

19     methodology, along with the access, so

20     that everybody understands what that

21     might be.

22            You know, for example, from

23     an investigative methodological

24     perspective, you know, and in this

This Transcript Contains Confidential Material

1  particular matter, is coordinating

2  access.  The other part of the access is

3  our publicly available databases.

4            So one of the things that we

5  did in WAMY was every time we saw an

6  individual's name, we ran them through

7  the old fact database, we did some other

8  LexisNexis searches.  That coordinated

9  access is all part of that in the very

10 beginning.

11           You know, and then I go over

12 all different parts of the investigative

13 plan, for example, how to look at

14 financial information, the document that

15 you put up, the red flag document, the

16 violation of trust, I shared with my

17 staff.  And I said, look, these are red

18 flags here, these are things that we need

19 to consider when we go through this, and,

20 you know, basically, start to develop a

21 plan of action.

22           And that's what happens in

23 those particular meetings.

24      Q.    And in this two and-a-half

This Transcript Contains Confidential Material

1    hours the communication of -- the

2    coordination of the access, you did the

3    preliminary review of information and you

4    communicated with your staff for that two

5    and-a-half hours, right?

6         A.    Yes.

7         Q.    And in the 2/27 -- 2/27/2020

8    time entry for Paul Zikmund, there's a

9    reference to the WAMY team.

10             Do you have an understanding

11   what, in the context of this project, the

12   reference to WAMY team refers to?

13        A.    Yes.  So Paul is a director.

14   He worked directly underneath me.  He was

15   my right hand at the time on this

16   particular engagement.

17             So a lot of times I'll give

18   a directive, and then he communicates

19   with the team subsequent to our initial

20   meetings to get --

21        Q.    Let me -- let me clarify my

22   question.

23             Throughout the time entries

24   there is reference to the Baker Tilly

This Transcript Contains Confidential Material

1    team and there is reference to the WAMY

2    team.

3              My question is, is there an

4    outside team that is a WAMY team and an

5    inside Baker Tilly team that's the Baker

6    Tilly team?

7        A.    No.  It's the same thing.

8        Q.    And in the 2/28 entry --

9        A.    Hold on.  I'm sorry.

10       Q.    In the 2/28 entry by Paul

11   Zikmund, there's a reference to a call to

12   A-M-I-R.

13             Who is that?

14       A.    I don't know.

15       Q.    And there's also a reference

16   to -- never mind.

17             Looking at Page 10 of the

18   PDF.

19       A.    Hold on.  I apologize, my

20   PDFs are not numbered.  So if you can

21   give me the dates, that would just be

22   easier.

23             I'm right with you now, Mr.

24   Haefele.

This Transcript Contains Confidential Material

1          Q.     It's the March 20 -- March

2     1 -- it's the March time entries, time

3     descriptions.

4          A.     I'm there.

5          Q.     All right.  And looking at

6     the entry for Yahya Soliman on 3/5/2020,

7     there's a reference to the Baker Tilly

8     team.

9                 That's the same of what we

10    just talked about?

11         A.     Correct.

12                And just to be clear, there

13    was nobody outside of Baker Tilly that

14    participated in this.  Everybody was a

15    Baker Tilly employee or, you know, member

16    of Baker Tilly.

17         Q.     Well, to be fair, there's a

18    number of references to conversations or

19    meetings with outside -- with the WAMY

20    lawyers, right?

21                I mean, you spoke to the

22    WAMY lawyers at some point, didn't you?

23         A.     I mean, you said -- I

24    thought you implied before, like you said

This Transcript Contains Confidential Material

1   that there were -- you know, were these

2   people part of Baker Tilly.  They're

3   all -- yes, they are part of Baker Tilly.

4        Q.    There were weekly meetings

5   or weekly conference calls.

6            Were the weekly conference

7   calls solely internally, or were there

8   participants from the outside counsel,

9   from Mr. Mohammedi's office or Mr.

10  Goetz's office?

11       A.    Not on those calls, no.

12       Q.    Or on any calls?

13       A.    Mr. Mohammedi and Mr. Goetz?

14       Q.    Yes.

15            Or someone from their

16  office.

17       A.    No, not on our weekly calls.

18       Q.    Well, I meant on other

19  calls.

20            Were they on other calls?

21       A.    We've spoken to them

22  throughout the engagement for sure.

23       Q.    All right.  And looking at

24  the PDF -- Page 30 of the PDF, which I'll

This Transcript Contains Confidential Material

1  get to it and tell you what it is, the

2  daily time descriptions for June of 2020.

3          A.     Hold on one second.  Let me

4  get there.

5          Q.     Page 4 of 4 of the June

6  invoices.

7          A.     Hold on.

8                 June.  Okay.

9          Q.     Do you see that there's a

10  time entry on June 17th, 2020, a time

11  entry by you referring to, quote, Report

12  draft?

13                 Do you see that?

14          A.     Yes.

15          Q.     And are you aware that this

16  entry is the first time entry for your

17  time since January of 2020 for

18  coordinating access and the other stuff

19  we just talked about?

20          A.     Yes.  And, like I said

21  before, I didn't -- there were times

22  where I just didn't record my time.

23          Q.     How much time did you

24  volunteer to do free for WAMY?

This Transcript Contains Confidential Material

1      A.    I didn't volunteer to do

2  anything free for WAMY.  There were just

3  insignificant amounts of time that I

4  thought were just not appropriate to

5  bill.

6      Q.    All right.  So the amount of

7  time between January and June 17th was

8  insignificant, right?

9      A.    That's correct.

10      Q.    All right.  And are you

11  aware that the June 17 entry by you is

12  also the first time entry for any work by

13  you on the project to draft the report

14  for WAMY?

15          MR. GOETZ:  Just to correct

16      the record, Robert, you might have

17      misspoke.

18          You said there had been no

19      references to time entered by

20      Marks since January.  We did cover

21      references to time billed by Marks

22      in February.

23          THE WITNESS:  Yeah, you did

24      say that.  I'm sorry.

This Transcript Contains Confidential Material

1          MR. HAEFELE:  I thought I

2      said since February of 2020.  The

3      record should reflect that it's

4      February of 2020.

5          I agree with you, there

6      was -- the last reference to a

7      time entry by Mr. Marks was in

8      February 2020.

9          MR. GOETZ:  We're on the

10     same page, then.

11         MR. HAEFELE:  That is what I

12     thought I had said.

13  BY MR. HAEFELE:

14     Q.    And are you aware -- so that

15  we're clear, from the entry by you,

16  February 20th of 2020, until June 16th,

17  2020, there are no time entries for your

18  time, correct?

19     A.    Correct.

20     Q.    And there is no reflection

21  of any work being done by you to draft

22  the report until June 16th, 2020,

23  correct?

24     A.    Correct.

This Transcript Contains Confidential Material

1       Q.    And now looking back at Page

2   25, which is the time entries for May of

3   2020, Page 3 of 4 of that invoice.

4       A.    What's the date?  I'm sorry,

5   Mr. Haefele.

6       Q.    May 2020, Page 3 of 4, and

7   it's PDF Page 25 for those --

8       A.    May what?

9       Q.    Well, it's May 1 through May

10  31.

11      A.    Yeah, I have that up.  I'm

12  with you.

13      Q.    Okay.  And if we look at

14  that page, at the bottom of the page you

15  see an entry on 5/21 by Paul Zikmund

16  indicating, Begin preparing report?

17      A.    Yes.

18      Q.    And do you see that the next

19  entry on 6 -- I'm sorry, 5/26 by Steve

20  Goldberg for, quote, Review -- I'm sorry,

21  Report review, and, quote, Report

22  writing?

23      A.    Yes.

24      Q.    And are you aware that these

This Transcript Contains Confidential Material

1   two entries are the first two time

2   entries making reference to any report?

3        A.    Yes.

4        Q.    All right.  And are you

5   aware that no previous time entry, before

6   Mr. Goldberg's 5/26 entry, refers to

7   writing the report?

8        A.    Yes.

9        Q.    If we could flip to the next

10  page.

11       A.    I'm here.

12       Q.    You see there are entries

13  there on 5/27 and 5/28 by Paul Zikmund

14  referring to work on a, quote, Rebuttal

15  report, right?

16       A.    Yes.

17       Q.    And looking back on Page 30,

18  where we were before, a couple of pages

19  later --

20       A.    Page?

21       Q.    It's going to be the June

22  time descriptions.

23       A.    Hold on one second.  Let me

24  get there.

This Transcript Contains Confidential Material

```
 1            Okay.  I'm in June.
 2       Q.    And looking to Page 30 of
 3  the report -- of the invoices, there is
 4  an entry on June 1 by Paul Zikmund for
 5  report preparation, right?
 6       A.    Right.
 7       Q.    And there's an entry on 6/2
 8  by Steve Goldberg for report review,
 9  right?
10       A.    Yes.
11       Q.    And there's a time entry on
12  6/2 by Sara Musa for discussions with
13  J.S., right?
14       A.    Yes.
15       Q.    Who is J.S.?
16       A.    Hold on one second.  John --
17  I can never say his name -- Sakayev.
18       Q.    Who is that?
19       A.    He's one of our staff people
20  in Dubai.
21       Q.    And there's an entry on 6/3
22  by Steve Goldberg for report follow-up,
23  right?
24       A.    Yes.
```

This Transcript Contains Confidential Material

1    Q.    And there's an entry on 6/3

2    by Paul Zikmund for update report, right?

3    A.    Yes.

4    Q.    And there is a time entry on

5    6/5 by Paul Zikmund to update report,

6    right?

7    A.    Yes.

8    Q.    And there's a time entry on

9    6/8 by Steve Goldberg for review of

10   report, right?

11   A.    Yes.

12   Q.    And there is a time entry on

13   6/8 by Paul Zikmund, on 6/8, to update

14   report, right?

15   A.    Yes.

16   Q.    And there are three entries

17   by Steve Goldberg, one on 6/12, another

18   on 6/15 and another one 6/16 that simply

19   reference report, right?

20   A.    Correct.

21   Q.    And there's an entry by Paul

22   Zikmund on 6/15 to review and update WAMY

23   report, right?

24   A.    Yes.

This Transcript Contains Confidential Material

1     Q.    And on 6/16, Paul Zikmund

2  entered a time entry to revise final

3  report, right?

4     A.    Yes.

5     Q.    And based on our

6  calculations of the time entries, looking

7  at just the time entries of Steve

8  Goldberg and Paul Zikmund, they

9  collectively entered 46.3 hours between

10  May 21 and June 16th to the report.

11          Does that amount sound right

12  to you?

13     A.    I haven't added them up.

14  I'll take your word for it.

15     Q.    All right.  And all of those

16  entries between May 21 and June 16 making

17  reference to work on a report, including

18  a reference to a revised final report,

19  all predate your initial reference

20  anywhere of drafting a report for WAMY,

21  right?

22     A.    Yes.

23     Q.    All right.  And turning to

24  Page 35 of the PDF.

This Transcript Contains Confidential Material

1        A.     Just give me the date range,

2   if you don't mind, because I don't have

3   page numbers.

4        Q.     It's the July -- July daily

5   time descriptions.

6        A.     All right.  Hold on.

7        Q.     Page 5 of 7 of the July

8   invoice.

9        A.     Go ahead.

10        Q.     And on 8/7/2020, that's the

11   last time entry by you in these invoices,

12   and it's an entry on August -- August

13   7 -- I'm not sure if I said July --

14   August 7, 2020, where the entry reads,

15   Finalize the report, discussions with

16   team, communication with counsel, right?

17        A.     Hold on one second.  I

18   can't -- finalize the report, discussions

19   with team, communications with counsel,

20   yes.

21        Q.     And that's the last time

22   entry for any work you did on the report,

23   right?

24        A.     Yes.

This Transcript Contains Confidential Material

1        Q.    And the reference to counsel

2    there is Counsel Omar Mohammedi and/or

3    Mr. Goetz, right?

4        A.    Yes, sir.

5        Q.    And looking at all the

6    invoices collectively, from January 27th,

7    2020, through the final time entry on

8    August 28th, 2020, which is on the next

9    page, where you are, looking at,

10   collectively, all those invoices, by our

11   calculations, the total hours spent on

12   the report was 275.8 hours.

13             Does that sound about right?

14       A.    I didn't add them up.

15       Q.    Just so I'm clear with my

16   statement here, I'm indicating all

17   entries by people other than you to do

18   work on the report.

19       A.    Right.

20       Q.    Does that sound about right,

21   275.8?

22       A.    I didn't add it up, like I

23   said.  I'll take your word for it.

24       Q.    And looking at all the

This Transcript Contains Confidential Material

1    invoices collectively, by our

2    calculations, the total hours that you

3    spent on the report, all between January

4    17th, 2020, and August 7th, 2020, was

5    78.5.

6                Does that sound about right?

7         A.    Yep.  About 80 hours.

8    That's about right.

9         Q.    And looking back at your

10   final time entry on Page 35, which might

11   be what's on your screen, the entry on

12   August 7th, do you see that entry?

13        A.    I do.

14        Q.    All right.  And on August

15   13th, 2020, six days after you last --

16   after your last time entry, Sara Musa

17   entered time to update report.

18                Do you see that?

19        A.    I do.

20        Q.    Is that right?  She entered

21   an entry for that, right?

22        A.    Yes.

23        Q.    And then --

24        A.    Hold on a second.

This Transcript Contains Confidential Material

1          Everything stopped on 8/7,

2    just because they're in a different part

3    of the world, they put their time in

4    late.  And that's why it's entered in

5    after 8/7.

6          Q.    And let me get to that,

7    then.  I'm going to ask you that.

8          So the entry on August 13th

9    by Sara Musa to update the report and the

10   entry on August 14th, a week after your

11   last entry on the report, there's an

12   entry by Sara Musa also to update the

13   report, right?

14         A.    Yes.

15         Q.    And your report is dated

16   August 7th, right?

17         A.    Yes, it is.

18         Q.    I'll represent that it was

19   served on plaintiffs' counsel on August

20   7th.

21         So you're saying it took a

22   week for Ms. Musa to enter her time?

23         A.    Not uncommon.

24         Q.    Is that true throughout this

This Transcript Contains Confidential Material

1   whole document, where we see Ms. Musa's

2   time, we can assume that it was entered

3   late?

4        A.    I don't know.

5             But in this particular

6   situation, based on the timeframe that we

7   were in and the fact that we were in the

8   summer months, sometimes time does get

9   entered late, unfortunately.

10       Q.    So the -- there was a draft

11  report that happened on the day before

12  you started the report, and then you

13  began writing your report the day after

14  the draft report was finalized, right?

15       A.    The draft report --

16       Q.    Let me rephrase it.  Let me

17  rephrase it.

18            MR. HAEFELE:  Actually,

19       let's take a couple-minute break.

20            VIDEO TECHNICIAN:  Going off

21       the record at 3:50 p.m.

22                  -   -   -

23            (Whereupon, a brief recess

24       was taken.)

This Transcript Contains Confidential Material

```
1                    -  -  -

2              VIDEO TECHNICIAN:  Back on

3        the record at 3:55 p.m.

4              MR. HAEFELE:  Mr. Marks,

5        thank you for your time.  I don't

6        have any more questions for you.

7              THE WITNESS:  Thank you, Mr.

8        Haefele.

9              MR. HAEFELE:  Thank you.

10             MR. GOETZ:  Any more

11        questions from plaintiffs' side?

12             MR. HAEFELE:  I believe not,

13        Fred.

14             MR. MALONEY:  Nothing from

15        me.

16             MR. GOETZ:  Can we take just

17        five minutes, and we'll see if

18        there's any questions from our

19        side.

20             VIDEO TECHNICIAN:  Going off

21        the record, 3:56 p.m.

22                    -  -  -

23             (Whereupon, a brief recess

24        was taken.)
```

This Transcript Contains Confidential Material

1                  -  -  -

2              VIDEO TECHNICIAN:  Back on

3         the record at 4:00 p.m.

4              MR. GOETZ:  And I just have

5         a very few questions for you, Mr.

6         Marks.

7                  -  -  -

8              EXAMINATION

9                  -  -  -

10             MR. GOETZ:  I want to bring

11        up Exhibit-970 to start.

12   BY MR. GOETZ:

13        Q.   And Mr. Carter asked you

14   questions about Page 4, 5 and 6 of this

15   document, all of which fall under the

16   general description, Common warning

17   signals or red flags of potential billing

18   fraud include but are not limited to --

19   and then you have that list.

20             Do you recall those

21   questions?

22        A.   Yes, sir.

23        Q.   And then we have, These

24   warnings or red flags can be organized

1    into four general categories.

2                And then Mr. Carter asked

3    you some specific questions about some of

4    those categories.

5                Do you recall those

6    questions?

7         A.    I do.

8         Q.    And you wanted to explain

9    some of your answers, but you didn't have

10   the opportunity.

11               What explanation did you

12   want to give?

13        A.    Just that I mentioned that

14   these are red flags, and a red flag does

15   not mean that there is fraud.

16               A red flag is an observable

17   event that should cause an individual to

18   stop, evaluate and, if need be,

19   investigate further.  That's it.

20        Q.    So failure to reconcile

21   accounts in a timely manner, is that --

22   while a red flag, is that indicative, in

23   and of itself, of fraud or improprieties?

24        A.    No.

This Transcript Contains Confidential Material

1      Q.    Accounts with many large

2  round numbers or transactions that are

3  unusually large or small, is that, in and

4  of itself, indicative of fraud?

5      A.    No.

6      Q.    And as you said, I think

7  earlier at the beginning of your

8  testimony, you're not saying that there

9  were no red flags in your review of any

10  of the WAMY material, are you?

11      A.    No.

12      Q.    But did any of those rise to

13  the level where, in your opinion, there's

14  any evidence of fraud or financial

15  improprieties, money laundering, anything

16  like that?

17      A.    No.  Based on my review of

18  the financial information, which, if you

19  allow me one second here, which I

20  considered and our team considered the

21  audit reports, the bank statements, the

22  bank reports, the receipts, financial

23  reports, project reports, of which there

24  were over 800 of, operational reports,

This Transcript Contains Confidential Material

1   communications, which there were over 150

2   of, 22 contracts and those types of

3   things, we did -- we did identify things

4   that certainly caused us to pause.

5            But after further review,

6   they were not red flags.  They were

7   disposed of.

8        Q.    And then moving to a

9   different question.

10           Mr. Carter asked you about

11  audits, I believe, specifically or

12  audited financial statements from a

13  number of countries, WAMY USA, Sudan,

14  Russia, Philippines, Austria, Nigeria,

15  Yemen and Kyrgyzstan.

16           Do you recall those

17  questions?

18       A.    I do.

19       Q.    And I believe, in essence,

20  your testimony was that you couldn't

21  recall reviewing audits from those

22  particular chapters or countries; is that

23  right?

24       A.    That's correct.