**MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES**
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

**VIA ECF**

November 15, 2024

The Honorable George B. Daniels, U.S.D.J.
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

    Re:    *In Re: Terrorist Attacks on September 11, 2001*, 03-md-1570 (GBD) (SN)

Dear Judge Daniels:

The Plaintiffs' Executive Committees write in response to Sudan's November 12, 2024, unauthorized surreply (ECF No. 10532),[1] which presents several new and misleading arguments to which the PECs are compelled to respond. PECs counsel from Anderson Kill, P.C., counsel for the plaintiffs in the *Strauss, Kone, Kelly, Lopez, Fennelly,* and *Jelnek* cases, is responding separately to Sudan's added surreply arguments (at 3) regarding those specific cases.

***First***, Sudan's argument that it has no obligation to answer complaints where the Court has broadly, but not wholly, denied a motion to dismiss is nothing short of gaslighting. Rule 12(a)(4)(A) applies because, within the meaning of the Federal Rules of Civil Procedure, Sudan's motion to dismiss was broadly "denied" as to most all the claims (notwithstanding Sudan's semantic parsing[2]). Sudan must answer the remaining claims (but need not answer claims the Court dismissed). There is no legal basis to ignore this requirement of the Rules; nor is there any purpose served in ignoring the requirement. Indeed, as to the claims the Court dismissed, Sudan may either omit them from its Answers or simply note that the claims were dismissed. But Sudan's effort to avoid answering the Complaints is transparently motivated by its desire to obstruct the proceedings because it is not prepared to actually participate in merits proceedings. Sudan hopes to invent new Rules, to restart the clock on all the claims against it.

Sudan's interpretation of the Rules would mean that the Rules impose no obligation on a defendant to file an answer or progress to merits proceedings if the court has denied a motion to

---

[1] Sudan's letter surreplies to the PECs' November 11, 2024 letter (ECF No. 10523), which replied to Sudan's November 6, 2024 letter (ECF No. 10511), which opposed the PEC's November 4, 2024 letter (ECF No. 10493).

[2] Sudan's surreply focuses (at 1) unreasonably on the semantical distinction between whether the Court denied Sudan's motion in whole or in part. Plaintiffs clearly never concealed from the Court the results of this Court's own order denying Sudan's motion to dismiss, which was known to the Court and cited in each of the Plaintiffs' relevant filings. But whether Sudan was successful to any degree was *not* the relevant aspect of those filings for determining Sudan's obligation to file an answer; Sudan is not required to answer the claims that the Court dismissed. Instead, Plaintiffs' filings focus on the parts of the Court's order that denied Sudan's motion to dismiss, because those were the parts that required Sudan to answer. There can be no reasonable dispute that the Court overwhelmingly "denied" Sudan's motion as to most of the Counts, as to which Sudan must answer. As to those parts that the Court granted Sudan's motion, those parts are—for the purpose of filing an answer—immaterial, because Sudan had no obligation to answer those parts of the complaints.

_____

dismiss in nearly every regard, but granted the motion in even the smallest part. Such a defendant would have no obligation to state, one way or another, whether allegations relating to claims proceeding to the merits—*i.e.,* the claims that were not dismissed—are true or admitted, making the basic conduct of discovery impossible and requiring court intervention in every such instance to initiate a most basic task of litigation—filing an answer.

Sudan cannot cite any authority supporting its position, for good reason. In contrast, the authorities Plaintiffs cited (ECF No. 10523 at 1-2) wholly support the proposition that Rule 12(a)(4)(A) applies to answers to complaints that have been the subject of orders that partially denied a motion to dismiss. *See also Alexander Wf, LLC v. Lewis & Clark Expedition LLC*, Case No. 4:14-cv-68, 2015 U.S. Dist. LEXIS 184968, at *2-3 (D.N.D. Apr. 22, 2015) (granting default judgment and directing the clerk of the court to enter default judgment where the defendant has failed to file a responsive pleading under Rule 12(a)(4)(A) after the court had granted in part, and denied in part, defendant's motion to dismiss). The fact that there are limited authorities directly on point is a function of the absurdity of Sudan's position.

**Second**, Sudan's contention that Plaintiffs must amend their complaints is equally disingenuous. Sudan waives off as inconsequential Rule 15's prohibition of amendments absent an affirmative authorizing action (absent here), while insisting that Rule 12 implies the need for a court to take the affirmative step of issuing a scheduling order to initiate cases where motions to dismiss are partially denied, even to the smallest degree. Here, while Rule 12(a)(4)(A) resolves the issue before the court (resulting in Sudan's default), a plain reading of Rule 15 further dooms Sudan's argument. Plaintiffs have not sought leave to amend, the Court has not granted leave (or otherwise ordered amendment), and Sudan could not have consented (in writing) where Plaintiffs had not requested consent. None of that happened to "obligate" plaintiffs to file the Amendments that Sudan suggests plaintiffs must file.[3]

Sudan's surreply does not counter the prejudice Plaintiffs would incur if Plaintiffs were obligated to file amended complaints. For example, Sudan does not address the concern that filing of an amended complaint would likely also trigger a right for Sudan to move to dismiss the claims again, which would once again restart the clock for Sudan. Similarly, amendment would also likely require new service in the cases where Sudan's counsel has refused to accept or waive service to this point. None of the risks attendant to amendments is necessary where amendments themselves are unnecessary for the case to proceed, either on the merits or in default.

_____

[3] Plaintiffs should not be forced to bear needless risk to their appellate rights merely because Sudan prefers an approach that imposes that risk. Sudan (at 2) leans heavily into countering Plaintiffs' concerns about abandoning their appellate rights. But the cases it cites are not clean fits. *In re Crysen/Montenay Energy Co.*, 226 F.3d 160 (2d Cir. 2000), which concerns whether a defendant expressly waived an affirmative defense by failing to reassert it in an amended answer, *id.* at 162, underscores the "well-settled" rule that amended pleadings ordinarily supersede original pleadings, and that the circuits are in dispute regarding application of the approach Sudan suggests. *Id.* Here, only Sudan wants the complaints amended, because they benefit from the results that would attach to amendments. The Court has not required amendments, Plaintiffs have not requested amendments, and the circumstances do not necessitate amendments. Accordingly, Plaintiffs should not have that risk imposed on them, and the Court need not wade into the dispute or how it might be applied to the MDL plaintiffs on appeal.

The Honorable George B. Daniels
November 15, 2024
Page 3

_____

**Third**, despite Sudan's counsel's efforts to deflect, their interaction with the PECs and this Court necessarily confirm that they are not in contact with a proper Sudanese official with the authority to litigate these cases.

Although Sudan's counsel insists to the court that it is in contact with the Sudanese ambassador, counsel have also made clear that the Ambassador does not have the authority to direct counsel either to meet and confer with Plaintiffs, or to authorize Sudan's counsel to file an answer. The core support for their assertion that the contact with the Ambassador suffices is that the Ambassador has previously accompanied counsel at legal proceedings (at 3). But even counsel acknowledge that the Ambassador has been unable to "connect with the appropriate authorities . . . to obtain instructions on important next steps in the litigation" (at 3). In short, the Ambassador lacks the authority or ability to direct merits proceedings on Sudan's behalf, or to fulfill Sudan's obligations in such proceedings. Indeed, Sudan's efforts to obstruct the case from proceeding on the merits, by torturing the Federal Rules and inventing processes the rules do not contemplate or support, makes clear that the Ambassador cannot even authorize the filing of an Answer that complies with Rule 11.

Sudan's plea that certificates of default should be deferred based on the preference for resolution of cases on the merits turns the very principle Sudan invokes on its head. At a minimum, a request to avoid default in favor of proceedings on the merits would require evidence that Sudan is actually prepared and capable of moving to the merits and fulfilling its obligations to Answer and respond to discovery. Here, counsel's only contact is with an Ambassador who has authority to do no more than ask counsel to erect roadblocks to proceedings on the merits

**Fourth**, even now, Sudan's counsel has still been unable to offer a timetable for when (or even if) Sudan will be able to file an answer or fulfil any of its obligations in a merits context. In fact, despite advising the PECs on September 25, 2024, that they were consulting their client and would provide availability to meet and confer, counsel for Sudan has still not provided any availability in the ensuing 51 days.

Sudan is already in default, and has been for more than a month. It has provided the Court with no evidence that it is prepared to file an Answer or fulfill its obligations in merits proceedings, and the available record shows that it is not. It did not even take the simple step of seeking an extension of time to file its responsive pleading—it simply ignored its deadline in hopes that no one would notice. It already ignored this litigation for over 15 years before belatedly appearing to raise technical defenses, and it has a history of refusing to participate in merits proceedings. The certificates of default should issue.[4]

Respectfully submitted,

MOTLEY RICE LLC                              COZEN O'CONNOR

By:  */s/ Robert T. Haefele*                    By:  */s/ Sean P. Carter*

_____

[4] The service issues raised in isolated cases will be addressed by those plaintiffs, but they have no relevance to the requests for defaults in the actions where service is not in dispute, including the *Burnett, Ashton, O'Neill, Bauer, Parker, DeRubbio, Morris, Jimenez, Bernaerts, Federal Insurance,* and *Continental Casualty* cases.

The Honorable George B. Daniels
November 15, 2024
Page 4

_____

ROBERT T. HAEFELE
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*Liaison Counsel for the Plaintiffs' Executive Committee for
Personal Injury and Death Claims on behalf of the Plaintiffs*

SEAN P. CARTER
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel.: (215) 665-2105
Email: scarter1@cozen.com

*Co-Chair of the Plaintiffs' Executive Committee for
Commercial Claims on behalf of Plaintiffs*

cc:     The Honorable Sarah Netburn (via ECF)
        All Counsel of Record (via ECF)