**MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES**
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

**VIA ECF**

December 5, 2024

The Honorable George B. Daniels
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:  *In Re: Terrorist Attacks on September 11, 2001*, 03-md-1570 (GBD) (SN)

Dear Judge Daniels:

Plaintiffs with claims against Al Rajhi Bank ("ARB") write in reply to ARB's December 2, 2024 letter, ECF No. 10566, submitted in response to Plaintiffs' November 22, 2024 letter, ECF No. 10556, apprising the Court of the Second Circuit's recent decision in *Peterson v. Bank Markazi*, No. 15-690, 2024 U.S. App. LEXIS 28738 (2d Cir. Nov. 13, 2024). ARB's letter wrongly conflates the jurisdictional inquiry with the merits of the suit and attempts to supplant the factual findings of particular cases for the applicable legal standard.

*Peterson* does not require the Court to consider whether Plaintiffs' claims could "exist without" the transactions through ARB's correspondent banking accounts and other business transactions in the United States.[1] *See* ARB Ltr at 3. Rather, *Peterson* and its progeny make clear that the "arising from" prong of New York's long-arm statute requires a showing only that the claim is "in some way arguably connected to the transaction." *Peterson,* 2024 U.S. App. LEXIS 28738 at *36-37 (citing *Licci v. Lebanese Canadian Bank,* 984 N.E.2d 893 (N.Y. 2012)). This "relatively permissive" standard, *id.* at *37, "does not require a causal link between the defendant's New York business activity and a plaintiff's injury. Instead, it requires 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, *regardless of the ultimate merits of the claim*.'" *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168-69 (2d Cir. 2013) (emphasis added).

In an effort to avoid this permissive test, ARB points to language from several cases in which courts have characterized the particular factual nexus presented in those cases, where such nexus far exceeds the modest baseline nexus requirement. *See* ARB Ltr. at 2 (citing *Spetner v. Palestine Inv. Bank,* 70 F.4th 632 (2d Cir. 2023); *Licci, supra*; *Rushaid v. Pictet & Cie,* 68 N.E.3d 1, 11 (N.Y. 2016)). But the factual findings relating to the nexus in those particular cases do not

---

[1] If viable claims against ARB could "exist without" the facts concerning its correspondent banking activities and other business transactions in the United States, that is only due to the massive scope of ARB's material support activities. The fact that ARB knowingly supported al Qaeda in additional and distinct ways does not serve as a defense to jurisdiction.

alter the applicable legal standard. Indeed, *Spetner* expressly rejects the notion that the jurisdictional analysis requires a direct causal relationship between the use of the correspondent banking account and the alleged injuries and confirms that the defendant's emphasis on a "causal connection" is a "fundamental misunderstanding of the 'arising from' requirement . . . [which] simply ensures that the transaction is 'not completely unmoored' from the claim." *Id.* at 644. In *Rushaid,* the court held the allegations that the defendants effected transfers of money to the New York correspondent bank as part of a money laundering scheme show the "minimum level of relatedness" and "easily satisfy" the nexus requirement for purposes of jurisdiction. 68 N.E.3d at 12 (defendants effected transfer of money through correspondent bank "as part of the money-laundering scheme").

ARB cites *Daou v. BLC Bank, S.A.L.,* 42 F.4th 120 (2d. Cir. 2022), but the ruling in that case turned on the plaintiffs' failure to identify any nexus whatsoever between the correspondent account and the wrongful conduct at issue in the case. In reaching its decision, the *Daou* court was careful to note that the long-arm statute is a "single act" statute, *id.* at 129, and that the "arising from" requirement is satisfied when "an alleged actual transaction made through such an account *formed part of the alleged unlawful course of conduct underlying the cause of action* set out in the complaint." *Daou,* 42 F.4th at 130.

Here, Plaintiffs' claims arise from ARB's scheme to provide material support to al Qaeda's most important charity fronts and financial facilitators, through the provision of extraordinary financial services. ARB's role in this scheme provided access to the international banking system that would not have been possible without ARB's partnership, and the record shows that its correspondent banking account was in fact used to facilitate fund transfers on behalf of al Qaeda fronts and financial managers. *See* Opposition at 21, 26, 29, 31, 46; CA ¶¶ 47, 52, 257, 344, 397, 436, 450-458, 482-488, 545, 552. Further still, ARB's principals established a U.S.-based money laundering operation for supporting al Qaeda, and incorporated ARB as a key component of that enterprise. *See* Opposition at 3, 19, 21, 30-31, 43-47; *see also* CA ¶¶ 36-39, 52, 264, 390-428, 429-488. And as the CIA found, one of the reasons that ARB was the "bank of choice" for extremists was due to its "good correspondent connections to remote locations abroad." *See* CA ¶ 179. These facts more than satisfy the modest requirement to show that ARB's business activities in the United States are not "completely unmoored" from the claims at issue.

Finally, ARB's statement that the Court dismissed the claims against the SAAR Foundation misstates the record and is legally irrelevant. Beyond the fact that the cited portion of *In re Terrorist Attacks on Sept. 11, 2001,* 740 F.Supp.2d 494 (S.D.N.Y. 2010) concerned a distinct inquiry under Rule 12(b)(6) on a different record, it did not address the SAAR Foundation or other specific, related entities referenced in the Corrected Averment (Sana-Bell, Inc., and Humana Charitable Trust) at all. In fact, this Court entered default judgment against SAAR Foundation in 2006 ECF No. 1754, and default judgment against Sana-Bell, Inc. in 2016, following sanctions motions relating to discovery violations, ECF No. 3311.[2] The ruling cited by ARB instead addressed: (1) Aradi, Inc.; (2) Grove Corporate, Inc.; (3) Mar-Jac Investments, Inc.; (4) Mar-Jac Poultry, Inc.; (5) Mena Corporation; (6) Reston Investments, Inc.; (7) Sterling Management Group,

---

[2] Humana Charitable Trust was not addressed in any prior decision in this litigation.

The Honorable George B. Daniels
December 5, 2024
Page 3

_____

Inc.; (8) Sterling Charitable Gift Fund; (9) African Muslim Agency; (10) Heritage Education Trust; (11) HIT; (12) Safa Trust; and (13) York Foundation, and dismissed those entities based on the determination that the complaints presented collective allegations as to multiple defendants without particular allegations of attribution to them individually. *Id.* at 523. It also preceded the Second Circuit's decision reinstating the present claims, through which the Court rejected ARB's arguments that prior determinations in the MDL in some way foreclosed the present suit against ARB (on jurisdictional or other grounds).

Respectfully submitted,

COZEN O'CONNOR


By: */s/ Sean P. Carter*
SEAN P. CARTER
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel.: (215) 665-2105
Email: scarter1@cozen.com

*On Behalf of Plaintiffs With Claims
Against Defendant Al Rajhi Bank*