IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Case No. 1:03-md-01570-GBD-SN |
| | ORAL ARGUMENT REQUESTED |
| *This document relates to:* | |
| *The Underwriting Members of Lloyd's Syndicate 2, et al. v. Al Rajhi Bank, et al.*, No. 16-cv-7853; *Aguilar, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09663; *Addesso, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09937; *Hodges, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-0117; *Aiken, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-00450; *Charter Oak Fire Insurance Co., et al. v. Al Rajhi Bank, et al.*, No. 17-cv-02651; *Abarca, et al., v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03887; *Arrowood Indemnity Co., et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03908; *Abedhajajreh v. Kingdom of Saudi Arabia*, No. 17-cv-06123; *Muenchener Rueckversicherungs-Gesellschaft Aktiengesellschaft in Muenchen, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-07914; and *Abbate, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-08617 | |

**AL RAJHI BANK'S AVERMENT OF JURISDICTIONAL FACTS AND EVIDENCE
IN SUPPORT OF ITS RENEWED MOTION TO DISMISS**

**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005

*Counsel for Al Rajhi Bank*

May 7, 2024

## TABLE OF CONTENTS

I.      AL RAJHI BANK DID NOT SUPPORT THE 9/11 TERRORIST ATTACKS ...............1

II.     AL RAJHI BANK IS A LARGE, REPUTABLE SAUDI BANK WITH A ROBUST
        CORPORATE GOVERNANCE STRUCTURE.................................................................4

III.    BEFORE THE 9/11 ATTACKS, AL RAJHI BANK DID NOT KNOW THAT ANY
        ACCOUNT USER WAS CONNECTED TO TERRORISM...........................................13

IV.     AL RAJHI BANK DID NOT MAKE ANY DONATION THAT SUPPORTED THE
        9/11 ATTACKS.............................................................................................................35

V.      NO TRANSACTION THROUGH THE BANK, INCLUDING THROUGH THE
        BANK'S U.S. CORRESPONDENT ACCOUNTS, HAS BEEN TRACED TO THE
        FINANCING OF THE 9/11 ATTACKS ...........................................................................36

VI.     NEITHER THE UNITED STATES, THE UNITED NATIONS, NOR ANY OTHER
        GOVERNMENTAL BODY HAS EVER DESIGNATED OR TAKEN ANY OTHER
        ACTION AGAINST AL RAJHI BANK OR ANY AL RAJHI FAMILY MEMBER
        FOR CONNECTIONS TO TERRORISM .......................................................................38

VII.    AFTER THE 9/11 ATTACKS, AL RAJHI BANK COOPERATED WITH SAMA
        AND U.S. REQUESTS AND INVESTIGATIONS...........................................................40

VIII.   SULAIMAN BIN ABDULAZIZ AL RAJHI, ONE OF THE BANK'S FOUNDERS
        AND ITS FORMER CHAIRMAN, IS ONE OF THE WORLD'S LEADING
        PHILANTHROPISTS AND STRONGLY CONDEMNED THE 9/11 ATTACKS........42

IX.     NONE OF THE BANK'S OFFICERS OR DIRECTORS SUPPORTED THE 9/11
        ATTACKS OR OTHER TERRORISM ...........................................................................44

Al Rajhi Bank respectfully submits this Averment of Jurisdictional Facts and Evidence in Support of its Renewed Motion to Dismiss.  The relevant period for jurisdictional discovery extended from January 1, 1998 to December 31, 2002 for most requests; from January 1, 1998 to December 31, 2004 for requests related to post-9/11 investigations, and from January 1, 1998 to December 31, 2008 for certain requests relating to the Bank's former Chairman. *See* Order 6 (Nov. 22, 2021), ECF 7378; Order 8-9 (July 11, 2023), ECF No. 9210.  Unless otherwise indicated, the facts in this Averment refer to the applicable relevant period.  The Bank reserves the right to supplement this Averment with its reply memorandum in support of its Renewed Motion to Dismiss.

## I.    Al Rajhi Bank Did Not Support The 9/11 Terrorist Attacks

1.    Al Rajhi Bank has never supported or intended to support Al Qaeda, Osama bin Laden, or terrorism in any form, including the terrorist attacks on September 11, 2001 ("9/11 Attacks") or any other plot of terrorism against the United States.  Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 355:4-8, 356:4-10 (Al Rajhi Bank's Chairman testifying that neither he, nor his father, Sulaiman bin Abdulaziz Al Rajhi (the Bank's former Chairman), or "anyone else" at the Bank has ever supported "Bin Laden, Al Qaeda, or terrorism in any form"). Plaintiffs' Corrected Averment fails to identify a single transaction through Al Rajhi Bank, or a single donation by Al Rajhi Bank, showing knowing and intentional support by Al Rajhi Bank for Al Qaeda or any form of terrorism against the United States, including the 9/11 Attacks.  *See generally* Plaintiffs' Corrected Averment (May 7, 2024), ECF No. 9764 ("Pls. Aver."), Pls. Ex. 4 (Winer Report) & Pls. Ex. 38 (Kohlmann Report) (all failing to identify a single transaction or donation showing knowing and intentional support by the Bank for Al Qaeda or any form of terrorism against the United States, including the 9/11 Attacks).

2.      Not a single transaction through Al Rajhi Bank, including through its U.S. correspondent account, has ever been traced to planning, carrying out, or financing the 9/11 Attacks. *See, e.g.*, Pls. Aver. §§ X, XI (failing to trace a single transaction through Al Rajhi Bank to planning, carrying out, or financing the 9/11 Attacks); Pls. Ex. 4 (Winer Report) at § 11 (same); *see also* ARB Ex. 4 (Expert Report of Dennis Lormel) ("Lormel Report") at 7 (explaining that FBI investigated CIA intelligence leads concerning Al Rajhi Bank but could not verify or prove any allegation that the Bank provided support to Al Qaeda).

3.      Al Rajhi Bank's senior leadership did not know Osama bin Laden and did not support Osama bin Laden, Al Qaeda, or terrorism in any form. Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 351:3-353:10, 354:17-355:8; 355:4-8; 356:4-10 (testifying that neither he nor his father, Sulaiman bin Abdulaziz Al Rajhi (the Bank's former Chairman), knew or supported Bin Laden, and that no one at the Bank supported Bin Laden, Al Qaeda, or terrorism in any form).

4.      Al Rajhi Bank prevented Osama bin Laden from accessing his accounts at the Bank or using any Bank services since at least 1994, when bin Laden was stripped of his Saudi citizenship and his accounts were frozen. Pls. Ex. 40 (9/11 Commission Rpt.) at 57 ("By 1994, the Saudi government would freeze [Bin Laden's] financial assets and revoke his citizenship."); *see also* ARB Ex. 8 (Nov. 16, 2002 Ltr. from Al Rajhi Bank to SAMA) at ARB-39559 (showing all Bin Laden accounts "blocked"). Plaintiffs' own experts concede that bin Laden did not use, and could not have used, his accounts at the Bank at all after his assets were frozen in 1994. *See* ARB Ex. 28 (Winer Dep. Tr.) at 53:5-55:2 (testifying "bin Laden's accounts had been frozen at some time earlier. The Saudi government had basically shut down his direct ability to move money in his own name is my understanding."); ARB Ex. 93 (Kohlmann Dep. Tr.) at 208:15-209:15 (explaining that bin Laden's "citizenship was revoked [by the Kingdom of Saudi Arabia] in [19]94,

but . . . [the Kingdom of Saudi Arabia] basically stopped financial transactions sometime in [19]93"); ARB Ex. 1 (Dean Report) at 17 (explaining that Osama bin Laden departed Saudi Arabia in 1992 and was stripped of Saudi citizenship in 1994).

5.       Al Rajhi Bank never processed any transaction for any customer identified in Plaintiffs' Corrected Averment that was designated by the United States, the United Nations, or any other governmental body at the time of the transaction.  *See* ARB Ex. 93 (Kohlmann Dep. Tr.) at 126:12-13, 130:21-131:2 (testifying that charity designations only began after 9/11 and that he had not identified *any* Al Rajhi Bank transactions violating sanctions or designations, because "once the designation has been issued," it becomes "impossible to open an account under that [designated] person's name"); *id.* at 132:23-133:5 ("[I]t's impossible to send money to an office that's been designated through a banking system once the designation has happened."); ARB Ex. 28 (Winer Dep. Tr.) at 57:8-12 ("To the best of my knowledge, there were no charities of any kind that I recollect that had been designated prior to 9/11 because terrorist designations were originally limited to terrorist organizations."); ARB Ex. 3 (Pasley Report) at 6 (noting that Plaintiffs' experts only identify "post-9/11 sanctions designations against NGOs and individuals for alleged ties to terrorism and Al Qaeda").

6.       Al Rajhi Bank never made charitable donations to any of the charities that Plaintiffs aver (*e.g.*, Pls. Aver. ¶¶ 5, 17) were "fronts" for Al Qaeda.  *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 271:6-15 and Errata 271:15 (testifying the Bank did not make any donations to International Islamic Relief Organization ("IIRO"), Al Haramain Islamic Foundation ("Al Haramain"), or Muwaffaq Foundation ("Muwaffaq")); *see also* ARB Ex. 93 (Kohlmann Dep. Tr.) at 205:5-10 (testifying that he was not aware of any donations from the Bank to the charities identified in Plaintiffs' Corrected Averment during the relevant period).

7.      After two decades of investigation into the 9/11 Attacks, no designation has ever been made or enforcement action taken — by the United States, United Nations, or any other governmental body — against Al Rajhi Bank or any Al Rajhi family member for any connection to terrorism.  *See* ARB Ex. 4 (Lormel Report) at 9, 18 ("[T]he United States government *never* sanctioned Al Rajhi Bank or the Al Rajhi family for involvement in terrorist financing."); *see also* Pls. Ex. 4 (Winer Report) at 98 ("In the end, the [] U.S. government did not sanction [Al Rajhi Bank] for terrorist finance."); ARB Ex. 7 (May 27, 2021 FBI EC) at EO14040-000011 ("After nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged, which is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'"); *see also* ARB Ex. 28 (Winer Dep. Tr.) at 160:10-15 (testifying that Al Rajhi Bank has never been designated by the U.S. government); 172:19-22 (testifying that no Al Rajhi family member has ever been designated by the United States or United Nations); ARB Ex. 93 (Kohlmann Dep. Tr.) at 36:20-22, 37:6-20, 38:3-39:5 (testifying that Al Rajhi Bank has never been designated by any government, and that he is unaware of any designation of any Al Rajhi Bank officer, director, or employee).

## II.     Al Rajhi Bank Is A Large, Reputable Saudi Bank With A Robust Corporate Governance Structure

### A.      Al Rajhi Bank Has Always Been Headquartered In Saudi Arabia With No Presence In The United States

8.      Founded as a currency-exchange company in Saudi Arabia in 1957 and incorporated as a bank in Saudi Arabia in 1988, Al Rajhi Bank has always maintained its headquarters and principal place of business in Riyadh, Saudi Arabia.  *See* Pls. Ex. 6 (1998 Al Rajhi Bank Ann. Report) at PDF p. 91; Pls. Ex. 7 (1999 Al Rajhi Bank Ann. Report) at PDF p. 78,

98; Pls. Ex. 8 (2000 Al Rajhi Bank Ann. Report) at PDF p. 23; ARB Ex. 16 (2001 Al Rajhi Bank Ann. Report) at PDF p. 98; *see also* Am. Compl. ¶ 67 (conceding Al Rajhi Bank "is a Saudi-based financial institution, with a principal place of business located at Olaya Street, Riyadh, Saudi Arabia").

9.      Al Rajhi Bank was a publicly owned financial institution organized under the laws of Saudi Arabia, with its shares traded in Saudi Arabia.  *See* Pls. Ex. 7 (1999 Al Rajhi Bank Ann. Report) at PDF p. 98; *see also* ARB Ex. 14 ("Al Rajhi Bank" Profile, Company Profile Main Market).

10.      The Bank did not have any branches, representative offices, or other presence in the United States.  *See* Pls. Ex. 6 (1998 Al Rajhi Bank Ann. Report) at PDF pp. 58-70, 90; Pls. Ex. 7 (1999 Al Rajhi Bank Ann. Report) at PDF pp. 64-75, 97; Pls. Ex. 8 (2000 Al Rajhi Bank Ann. Report) at 13, 22, 46-57 (referencing its "Kingdomwide network of 366 branches"); ARB Ex. 16 (2001 Al Rajhi Bank Ann. Report) at PDF pp. 60-73 (listing Al Rajhi Bank's branches, all of which were located in Saudi Arabia); *id*. at 97 (listing Al Rajhi Bank's subsidiaries, none of which were located in the United States).

11.      Plaintiffs have no evidence that Al Rajhi Bank conducted any banking business in the United States apart from holding a U.S.-dollar correspondent banking account with then-Chase Manhattan Bank ("Chase Manhattan").  *See, e.g.*, Pls. Aver. ¶¶ 28, 35-36.

  **B.**  **Al Rajhi Bank Was During The Relevant Period, And Remains Today, One Of The World's Largest Shariah-Compliant Banks**

12.      Al Rajhi Bank was, and is, one of the largest banks in Saudi Arabia and the Middle East.  *See* Pls. Ex. 6 (1998 Annual Rep.) at PDF p. 107 (noting the "continue[d] to occupy the leading position [for net profits] for the fourth consecutive year among all financial institutions in the Kingdom"); ARB Ex. 13 ("Al Rajhi Bank 2023 Fact Sheet"); ARB Ex. 14 ("Al Rajhi Bank"

Profile, Company Profile Main Market) ("Al Rajhi Bank is one of the largest banks in terms of market cap and the largest in Middle East and Saudi Arabia.").

13.    Al Rajhi Bank provided Shariah-compliant retail and corporate banking services. *See, e.g.*, Pls. Ex. 8 (2000 Al Rajhi Bank Ann. Report) at PDF p. 23 (discussing the Shariah Board's oversight over Al Rajhi Bank's investment and banking activities to ensure Shariah-compliance). Until 2004, Al Rajhi Bank was the only fully Shariah-compliant bank in Saudi Arabia. *See* ARB Ex. 15 ("Financial Services Report: Banks," *Economist Intelligence Unit*) at 7; *see also* ARB Ex. 1 (Expert Report of Aimen Dean) ("Dean Report") at 19.

14.    Al Rajhi Bank had millions of customers. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 46:6-10 and Errata at 46:6, 46:10.

15.    Al Rajhi Bank had more than 350 branches, all in Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 111:22-23 and Errata at 111:22-23; *see also, e.g.*, Pls. Ex. 6 (1998 Al Rajhi Bank Ann. Report) at PDF p. 58-70 (listing Al Rajhi Bank's branches, all of which were located in Saudi Arabia); ARB Ex. 16 (2001 Al Rajhi Bank Ann. Report) at PDF pp. 60-73 (same).

**C.    Al Rajhi Bank Had A Corporate Governance Structure And Internal Controls Aimed At Ensuring Compliance With Applicable Law And The Bank's Own Policies**

16.    Maintaining "a strong, robust, well-managed, and inspected risk framework" is a "core tenet" at Al Rajhi Bank. Pls. Ex. 3 (Galloway Dep. Tr.) at 105:9-105:12. To that end, the "controls Al Rajhi Bank had in place" during the relevant period "were already quite strong even by modern standards." Pls. Ex. 3 (Galloway Dep. Tr.) at 105:9-105:12; *see also* ARB Ex. 3 (Pasley Report) at 13-14 (explaining that "some SAMA regulations were much more stringent that U.S.

banking regulations, pre-9.11, including "stronger 'Know-Your-Customer' (KYC) regulations than those in the United States").

17.    Al Rajhi Bank maintained a corporate governance structure and internal controls aimed at ensuring compliance with local law and adherence to the Bank's internal policies.  *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 104:20-106:3 and Errata at 104:24, 105:3-8, 105:15-16; *see also* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 34:6-35:8 and Errata at 34:13-14, 34:18, 34:20, 34:22, 34:25; 35:1-4; ARB Ex. 2 (Expert Report of Fawzi Al-Hobayb) ("Hobayb Report") at 16-21 (discussing the components of Al Rajhi Bank's corporate governance structure during the relevant period).

18.    The Bank's corporate governance structure included specialized committees and director-level positions that exemplified segregation of duties, checks and balances, and protocols for testing the Bank's internal controls and compliance through audits.  *See generally* ARB Ex. 17 (Al Rajhi Bank Gen. Policies and Auths. Guide) (setting forth the Bank's comprehensive corporate governance controls); *see also* ARB Ex. 2 (Hobayb Report) at 17 (discussing the different specialized committees that were part of Al Rajhi Bank including the "High Management Committee, the International Credit Committee, Assets and Liabilities Committee, Procurement Committee, Information Systems Procurement Committee, and the Information Systems Steering Committee"); *id*. at 17-18 (discussing key corporate governance provisions outlined in Al Rajhi Bank's 1998 General Policies and Authorities Guide); *id.* at 18 (discussing Audit Committee, which was independent of the Bank's operations structure).

19.    The Bank's Chairman was not a member of any of these specialized committees, including the Audit Committee.  *See* ARB Ex. 17 (Al Rajhi Bank Gen. Policies and Auths. Guide) at 11 (stating that the "Board of Directors is the body that approves the Corporation's

Organizational Structure"); *see also* ARB Ex. 2 (Hobayb Report) at 17 (explaining that, based on his review, the Bank's Chairman did not sit on any of the committees).

### D. Al Rajhi Bank's Policies And Procedures Implemented The Guidelines And Regulations Of Its Regulator, Which Were Consistent With International Standards

20.    As a Saudi bank, Al Rajhi Bank operated within a regulatory and oversight regime led by the Saudi Central Bank, known during the relevant period as the Saudi Arabian Monetary Authority ("SAMA").  Pls. Ex. 3 (Galloway Dep. Tr.) at 344:21-345:3 and Errata at 344:24; ARB Ex. 2 (Hobayb Report) at 4-5 (explaining the Saudi banking regulatory regime and SAMA's regulatory role over Saudi banks, including Al Rajhi Bank).

21.    Since its creation, SAMA has regularly issued: (1) guidelines that provide guidance to Saudi banks about banking best practices (*see, e.g.*, Pls. Ex. 58 (1995 SAMA AML Guidelines)) and (2) regulations that are binding on Saudi banks, including Al Rajhi Bank.  *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 344:21-345:3 and Errata at 344:24.

22.    Al Rajhi Bank implemented policies and procedures according to SAMA's guidelines and regulations.  *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 105:13-21, 106:6-8 and Errata at 105:15-16, 106:6-8; *see also* ARB Ex. 2 (Hobayb Report) at 8-15 (discussing Al Rajhi Bank's implementation of policies and procedures consistent with SAMA's instructions).

23.    In 1995, SAMA issued anti-money laundering guidelines that provided Saudi banks, including Al Rajhi Bank, a framework and guidance for implementing anti-money laundering and know-your-customer protocols, and instructed Saudi banks to create internal policies addressing the prevention of money laundering.  *See* Pls. Ex. 58 (1995 SAMA AML Guidelines) at PDF p. 9-10, 15; *see also* ARB Ex. 2 (Hobayb Report) at 6-7 (discussing key provisions of the 1995 SAMA AML Guidelines).

24.     SAMA's guidelines and regulations were consistent with international standards aimed at preventing illegal activity.  ARB Ex. 2 (Hobayb Report) at 8-13 (discussing "consistent similarities between the FATF Recommendations, the pre-9/11 SAMA 1995 AML Guidelines, and Al Rajhi Bank's Branch Manual and AML Unit Guide"); *see also* ARB Ex. 3 (Pasley Report) at 13 (noting that pre-9/11, "some SAMA regulations were much more stringent than U.S. banking regulations").

25.     Al Rajhi Bank's 1997 Branch Instructions Manual, which guided the activities and procedures of the Bank's branches during the relevant period, followed SAMA guidelines on anti-money laundering.  *See* Pls. Ex. 188 (Al Rajhi Bank Branch Manual) at ARB-0000164, ARB-0000259-ARB-0000263; ARB Ex. 2 (Hobayb Report) at 8-12 (highlighting provisions of the 1997 Al Rajhi Bank Branch Instructions Manual that reflect standards established in FATF Recommendations and the 1995 SAMA AML Guidelines); *see also* Pls. Ex. 4 (Winer Report) at 137 ("[Al Rajhi Bank]'s AML obligations set forth in the [Al Rajhi Bank] Manual and the [Al Rajhi Bank] AML Policies and Procedures largely track the SAMA Guidelines.").

26.     Following SAMA guidelines, Al Rajhi Bank had an AML Unit focused on developing AML procedures and monitoring compliance across the Bank.  *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 106:6-8 and Errata at 106:6-8; Pls. Ex. 189 (Al Rajhi Bank AML Guide) at ARB-00000736 (explaining that AML Unit "[u]pdate[d] anti-money laundering policies and procedures in accordance with developments in the methods, processes and activities that could be used in money laundering activity"); *see also* ARB Ex. 2 (Hobayb Report) at 20 (explaining AML Unit's role in preventing money laundering).

27.     Al Rajhi Bank trained its employees in protocols focused on anti-money laundering, combatting the financing of terrorism, and identifying suspicious transactions.  *See*

Pls. Ex. 189 (Al Rajhi Bank AML Guide) at ARB-00000736 (explaining AML Unit's responsibility to coordinate with other units "regarding the preparation and implementation of the necessary training and guidance programs to the company's employees and providing the necessary advice regarding all aspects related to money laundering").

28.    If suspicious transactions were identified, Al Rajhi Bank could not unilaterally close customer accounts without express instructions from SAMA. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 251:6-11 and Errata at 251:8; *see also* ARB Ex. 2 (Hobayb Report) at 15; ARB Ex. 18 (SAMA Circular 02419-BCL-142, July 4, 1996) (SAMA circular directing banks not to unilaterally close accounts); ARB Ex. 87 (Oct. 16, 2001 Banks' SSC meeting minutes) at ARB-39402 (providing instruction from SAMA that "listed names should be promptly communicated to SAMA" to receive instructions on "freez[ing] and appropriate action").

29.    Al Rajhi Bank also had an internal audit control system and regularly conducted internal audits to ensure its policies and procedures were being implemented. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 104:20-105:12, 105:18-106:3 and Errata 104:24 (explaining that Al Rajhi Bank's internal control system included regular audits); *see also, e.g.*, ARB Ex. 19 (Al Rajhi Bank Internal Audit Plan for FY 1999) at PDF p. 7; ARB Ex. 20 (Al Rajhi Bank Internal Audit Plan for FY 2001) at PDF pp. 11-12 (including action items to examine and evaluate the Bank's internal control system; verify the Bank's compliance with its policies and procedures; evaluate the Bank's supervisory and operational controls; conduct audits of the Bank's branches; and evaluate corrective procedures taken); ARB Ex. 3 (Pasley Report) at 9 (explaining that the Bank's internal audit plans "show very comprehensive procedures for audits to protect the Bank from violations of laws, rules and regulations and to ensure the proper operation of its branches"); *id*. (concluding that the Bank's "comprehensive" internal audit plans "illustrate that the Bank had procedures for

preventing and detecting noncompliance with internal banking policies"); ARB Ex. 2 (Hobayb Report) at 18-19 (discussing the "Internal Audit Committee" which "oversaw regular audits of the Bank" and "continuously monitored the Bank's compliance with relevant internal and governmental rules and procedures.").

30.     The Bank's Internal Audit Department, which functioned independently from the Bank's executive and operational functions, evaluated and enforced adherence to internal policies and procedures, and applicable law, across the Bank.  *See* ARB Ex. 17 (Al Rajhi Bank Gen. Policies and Auths. Guide) at 3-4; *id*. at 8 ("The Internal Audit Department is not an executive or operations department.  It must be disconnected from executing corporate operations.").; *see also, e.g.*, ARB Ex. 19 (Al Rajhi Bank Internal Audit Plan for FY 1999); ARB Ex. 20 (Al Rajhi Bank Internal Audit Plan for FY 2001).

31.     The Bank also had an Audit Committee, which evaluated and ensured the Bank's compliance, including by (1) "[m]onitor[ing] the performance of internal control systems and financial reports"; (2) "[v]erif[ing] implementation of the policies related to money laundering and other criminal activities"; and (3) "[e]nsur[ing] compliance with the banking control provisions, rules and regulations issued by the Saudi Arabian Monetary Authority."  ARB Ex. 21 (Al Rajhi Bank Auths. of the Audit Comm. Manual) at ¶¶ 8, 15, 24; ARB Ex. 2 (Hobayb Report) at 18 ("[T]he audit committee continuously monitored the Bank's compliance with relevant internal and governmental rules and procedures.  The audit committee also considered the reports of external auditors and discussed those reports with them.").

32.     Further, as required by Saudi law, Al Rajhi Bank had two independent external auditors, whose responsibilities included "examin[ing] the bank's policies, procedures and internal control systems aimed at combating money laundering activities" and "test[ing] the enforcement

–11–

of such policies, and procedures." *See* Pls. Ex. 58 (1995 SAMA AML Guidelines) at PDF p. 14

(outlining responsibilities of external auditors); ARB Ex. 22 (Banking Ctrl. Law (Royal Decree

No. M/5 of June 11, 1966)) at 11-12 (requiring Saudi banks to have two external auditors); ARB

Ex. 2 (Hobayb Report) at 19-20 (explaining that Saudi law required each bank to have two external

auditors and that they would be required to test the Bank's internal control systems); *see also* Pls.

Ex. 3 (Galloway Dep. Tr.) at 109:16-110:5, 345:19-23 and Errata at 109:18, 109:21-22, 110:4,

345:22; *see, e.g.*, Pls. Ex. 7 (1999 Al Rajhi Bank Ann. Report) at PDF p. 77 (external auditors'

report signed by Al Rashed Certified Public Accounts and Al Juraid & Company (Member of

PricewaterhouseCoopers)).

33.     During the relevant period, SAMA routinely communicated with, examined, and

inspected all Saudi banks, including Al Rajhi Bank, to ensure compliance with applicable

guidelines and regulations. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 109:16-110:5, 112:2-5, 113:13-

14; 113:20-114:4 and Errata at 109:18, 109:21-22, 112:5 (testifying that the Bank regularly audited

its branches and that SAMA conducted "surprise and short-notice audits" as well as "thematic

audits" for a "particular area of interest"); ARB Ex. 2 (Hobayb Report) at 5 (discussing variety of

tools used by SAMA, "including self-reporting, document collection, special inspections into

topics under SAMA's authorities, full-fledged inspections, as well as inspections of individuals or

accounts the purpose of which were not disclosed to the bank").

34.     Al Rajhi Bank had "zero tolerance for any deviations" from the Bank's policies and

applicable law. Pls. Ex. 3 (Galloway Dep. Tr.) at 105:18-106:3. If any audit or SAMA inspection

uncovered any such "deviations," the deviating branches were required to take "corrective action"

within a "time-bound window." *Id.*; *see also* ARB Ex. 21 (Al Rajhi Bank Auths. of the Audit

Comm. Manual) at ¶ 27 (stating that the "Audit Committee discusses the external auditors' reports

with them, whether their audit has revealed no violations of the Banking Control Law or the other laws and regulations, their certificates on the audit of the provision for doubtful debts, and their conclusions regarding the adequacy of this provision").

### III. Before The 9/11 Attacks, Al Rajhi Bank Did Not Know That Any Account User Was Connected To Terrorism

35.    In jurisdictional discovery, Al Rajhi Bank produced 328 Customer Information Files, which include know-your-customer information and correspondence. *See* Erb Decl. ¶¶ 3-5. None of these files shows any connection between any active customer of the Bank and terrorism before the 9/11 Attacks. *See, e.g.*, Pls. Ex. 4 (Winer Report) at § 9 (stating he reviewed customer information files, but failing to identify any connections between any customer and terrorism before 9/11).

36.    No Al Rajhi Bank customer identified in Plaintiffs' Corrected Averment was designated under any sanctions regime for connections to terrorism when that customer opened an account at the Bank. *See* ARB Ex. 3 (Pasley Report) at 6 (noting that Plaintiffs' experts only identify "post-9/11 sanctions designations against NGOs and individuals for alleged ties to terrorism and Al Qaeda").

37.    Al Rajhi Bank never processed any transaction for any customer identified in Plaintiffs' Corrected Averment that was designated by the United States, the United Nations, or any other governmental body at the time of the transaction. *See* Pls. Ex. 171 (Kohlmann Dep. Tr.) at 126:12-13, 130:21-131:2; *id*. at 132:23-133:5; ARB Ex. 28 (Winer Dep. Tr.) at 57:8-12; ARB Ex. 3 (Pasley Report) at 6 (noting that Plaintiffs' experts only identify "post-9/11 sanctions designations against NGOs and individuals for alleged ties to terrorism and Al Qaeda").

38.    Plaintiffs have no evidence that Al Rajhi Bank processed any transaction knowing that its customer or the transaction had any connection to Al Qaeda or any form of terrorism against

the United States, including the 9/11 Attacks.  *See* ARB Ex. 8 (Nov. 16, 2002 Ltr. from Al Rajhi

Bank to SAMA) at ARB-39559 (showing all Bin Laden accounts "blocked"); ARB Ex. 3 (Expert

Report of Robert Pasley) ("Pasley Report") at 16 ("Given my experience with banking practices

and regulations pre-9/11, I find it is very plausible that a bank would not know if its NGO customer

accounts were being used for terrorism financing."); *see also*, *e.g.*, Pls. Aver. § VIII (failing to put

forward any evidence that the Bank processed any transaction knowing that its customer had any

connection to Al Qaeda or terrorism, including terrorism against the United States); ARB Ex. 4

(Lormel Report) at 9 ("[I]f sufficient evidence linking Al Rajhi Bank or the Al Rajhi family to

terrorism finance actually existed, the Bank, or members of the Al Rajhi family, would have been

sanctioned or designated.").

39.    Al Rajhi Bank never processed any transaction for any customer identified in

Plaintiffs' Corrected Averment that was designated by the United States, the United Nations, or

any other governmental body at the time of the transaction.  *See* ARB Ex. 93 (Kohlmann Dep. Tr.)

at 126:12-13, 130:21-131:2 (testifying that charity designations only began after 9/11 and that he

had not identified *any* Al Rajhi Bank transactions violating sanctions or designations); ARB Ex.

28 (Winer Dep. Tr.) at 57:8-12 ("To the best of my knowledge, there were no charities of any kind

that I recollect that had been designated prior to 9/11 . . . ."); ARB Ex. 3 (Pasley Report) at 6

(observing that Plaintiffs' experts only identify "post-9/11 sanctions designations against NGOs

and individuals for alleged ties to terrorism and Al Qaeda").  Al Rajhi Bank did not provide

services to any customer identified in Plaintiffs' Corrected Averment that was designated before

the 9/11 Attacks under any sanctions regime for connections to terrorism.  *See* ARB Ex. 8 (Nov.

16, 2002 Ltr. from Al Rajhi Bank to SAMA) at ARB-39559; ARB Ex. 28 (Winer Dep. Tr.) at

53:5-55:2.

#### A. Charities

40.     None of the charities identified in Plaintiffs' Corrected Averment, including Al Haramain Islamic Foundation, International Islamic Relief Organization, Muwaffaq Foundation, World Assembly of Muslim Youth ("WAMY"), Muslim World League ("MWL"), Saudi Joint Relief Committee for Kosovo and Chechnya ("SJRC"), and Saudi High Commission for Bosnia-Herzegovina ("SHC") (collectively, the "Charities"), was designated before the 9/11 Attacks under any sanctions regime for connections to terrorism. *See* ARB Ex. 28 (Winer Dep. Tr.) at 57:8-12 ("To the best of my knowledge, there were no charities of any kind that I recollect that had been designated prior to 9/11 because terrorist designations were originally limited to terrorist organizations."); ARB Ex. 93 (Kohlmann Dep. Tr.) at 126:12-13 (testifying that charity designations only began after 9/11).

41.     Plaintiffs have no evidence tracing a single transaction by the Charities through Al Rajhi Bank to Al Qaeda or in support of Al Qaeda or any form of terrorism against the United States, including the 9/11 attacks. *See, e.g.*, Pls. Aver. §§ X, XI (failing to trace any transaction through Al Rajhi Bank to planning, carrying out, or financing the 9/11 Attacks); *see also* ARB Ex. 4 (Expert Report of Dennis Lormel) ("Lormel Report") at 7 (explaining that FBI investigated CIA intelligence leads concerning Al Rajhi Bank but could not verify or prove any allegation that the Bank provided support to Al Qaeda); *id*. at 19-20 ("[N]o actions were taken or sanctions imposed against the Saudi charity headquarters in the aftermath of 9/11. . . . The fact that these headquarters were not sanctioned, despite strong pressure to do so, demonstrates that there was not enough evidence available against the charities' headquarters in Saudi Arabia.").

### 1.    Al Haramain

42.    Al Haramain Islamic Foundation in Saudi Arabia ("Al Haramain KSA") held accounts at Al Rajhi Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.

43.    Al Haramain Islamic Foundation branches outside of Saudi Arabia did not hold accounts at the Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.

44.    Al Haramain KSA was widely recognized as a reputable charitable organization that provided bona fide benevolent and humanitarian work in the form of the sponsorship of orphans and refugees, the provision of medicine, food, and clothing to those in need in conflict areas, and the development of educational programs. *See* Pls. Ex. 44 (Staff Monograph on Terrorism Financing) at 115 (stating that Al Haramain "provides meals and assistance to Muslims around the world, distributes books and pamphlets, pays for potable water projects, sets up and equips medical facilities, and operates more than 20 orphanages"); *see also* ARB Ex. 5 (May 21, 1998 and Dec. 13, 1996 Ltrs. from Al Haramain KSA's KYC files) at ARB-38774-ARB-38775 (letters describing Al Haramain KSA's humanitarian projects and good works); ARB Ex. 23 (June 7, 1999 Ltr. from Prince of Tabuk) at ARB-38699 (letter in Al Haramain KSA's KYC files describing Al Haramain KSA as a "humanitarian" organization engaged in "relief efforts"); ARB Ex. 1 (Dean Report) at 8 (describing the widespread recognition of Al Haramain for good works and humanitarian efforts); Pls. Ex. 56 ("Remarks by Treasury Secretary Paul O'Neill on New U.S.-Saudi Arabia Terrorist Financing Designations," Mar. 11, 2002) (referring to Al Haramain and stating that "the Saudi headquarters for this private charitable entity is dedicated to promoting Islamic teachings").

45.    During the relevant period, Al Haramain KSA was a government-licensed, charitable organization in Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 251:12-252:20 and Errata at 230:4, 251:14, 251:23-24, 252:1, 252:4, 252:7-8, 252:13-14, 252:16, 252:18; *see also* Pls. Ex. 44 (9/11 Comm'n Staff Report) at 12 ("At least two Saudi government officials have supervisory roles (nominal or otherwise) over al Haramain."); ARB Ex. 42 (Jan. 29, 1997 Ltr. from Dep. Minister of Islamic Affairs) at ARB-38613 (authorizing the maintenance of an Al Haramain account at Al Rajhi Bank branch); ARB Ex. 41 (Oct. 17, 1997 Ltr. from Ministry of Islamic Affairs) at ARB-38586 (stating Al-Haramain operates under its supervision); ARB Ex. 43 (July 14, 1998 Ltr. from the Gen. Mngr. of the Eastern Province of the Ministry of Islamic Affairs) at ARB-38741 (stating Al-Haramain is under the supervision of the Ministry of Islamic Affairs); ARB Ex. 41 (Sept. 26, 1998 Ltr. from Dep. Minister of Islamic Affairs) at ARB-38585 (requesting transfer of certain accounts into the name of Al-Haramain Islamic Foundation, with signatory authority to be determined by Director General Aqeel Al-Aqeel); ARB Ex. 44 (April 14, 1999 Commercial Office License) at ARB-38837 (copy of Commercial Office License issued by the Department of Lands and Real Estate for an Al Haramain office in Jubail Municipality); ARB Ex. 56 (Ltr. from the Gov. of Yanbu, June 1, 1999) at ARB-38818 (discussing the newly opened Al-Haramain office in the region); ARB Ex. 24 (Jan. 4, 2004 (Hijri) Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-14545 (stating the Bank's understanding that Al Haramain KSA was "licensed according to His Highness the Minister of Interior's letter," dated February 7, 1996); ARB Ex. 26 (Mar. 13, 2004 Ltr. from Ministry of Islamic Affairs) at ARB-39505 (confirming that Al-Haramain KSA was permitted to engage in charitable work in the Kingdom); ARB Ex. 27 (Mar. 21, 2004 Ltrs. from Ministry of Justice to Al Rajhi Bank) at ARB-39410 (confirming that Al-

Haramain KSA was "legally established in . . . Saudi Arabia and permitted to operate under its laws and regulations").

46.     The Bank took steps before and after the 9/11 Attacks to confirm that Al Haramain-KSA was government-licensed.  *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 100:1-11, 115:23-25, 253:18-254:11 and Errata at 100:1-2, 100:5, 100:10, 115:24-25, 254:5; ARB Ex. 2 (Hobayb Report) at 26-27 (describing the Bank's collection and review of Al-Haramain KSA's licenses); Pls. Ex. 42 (Jan. 29, 1997 Ltr. from Dep. Minister of Islamic Affairs) at ARB-38613 (confirming "it is fine" to open an Al Haramain account at Al Rajhi Bank); ARB Ex. 24 (Jan. 4, 2004 (Hijri) Abdullah Sulaiman Al Rajhi Ltr. to Governor of SAMA) at ARB-14545 (asking if it was permissible for the Bank to continue doing business with Al Haramain KSA and IIRO KSA); Pls. Ex. 59 (Feb. 25, 2004 Abdullah Sulaiman Al Rajhi Ltr. to Minister of Islamic Affs.) at ARB-39945 (asking the Ministry to provide for Al Haramain KSA an additional permit that appeared to be required under post-9/11 regulation).

47.     Before the 9/11 Attacks, neither Al Haramain KSA nor any Al Haramain Islamic Foundation branch was designated under any sanctions regime for connections to terrorism.  *See* Pls. Ex. 60 (Treasury Department Press Release) (showing designation of Al Haramain branches outside Saudi Arabia started in 2002); *see also* ARB Ex. 28 (Winer Dep. Tr.)at 57:8-12 ("To the best of my knowledge, there were no charities of any kind that I recollect that had been designated prior to 9/11 because terrorist designations were originally limited to terrorist organizations."); ARB Ex. 93 (Kohlmann Dep. Tr.) at 126:12-13, 130:21-131:2 (testifying that charity designations only began after 9/11 and that he had not identified *any* Al Rajhi Bank transactions violating sanctions or designations, because "once the designation has been issued," it becomes "impossible to open an account under that [designated] person's name").

–18–

48.     In 2002, the United States and Saudi Arabia jointly designated two Al Haramain branches outside of Saudi Arabia for connections to terrorism.  Pls. Ex. 56 ("Remarks by Treasury Secretary Paul O'Neill on New U.S.-Saudi Arabia Terrorist Financing Designations," Mar. 11, 2002).  In public remarks surrounding that joint designation, U.S. Treasury Secretary Paul O'Neill distinguished Al Haramain KSA from the newly designated Al Haramain branches, stating that "the Saudi headquarters for this private charitable entity is dedicated to promoting Islamic teachings."  *Id.*  Secretary O'Neill emphasized the unwitting nature of Al Haramain's donors, stating, "Few deceits are more reprehensible than the act of collecting charity from well-intentioned donors, and then diverting those funds to support hatred and cruelty.  As I said during my visit to the Gulf, misusing charity funds to support terrorism harms the people who gave the donation, harms the people who should have received it and is dangerous to us all."  *Id.*

49.     At no point did SAMA instruct Al Rajhi Bank to block Al Haramain KSA's accounts.  *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 348:12-16 and Errata at 348:12-13.

50.     Al Haramain KSA was not designated under any sanctions regime for connections to terrorism until the United States designated Al Haramain KSA in 2008.  Pls. Ex. 60 ("Treasury Designates Al Haramain Islamic Foundation KSA" (June 19, 2008)).

51.     Plaintiffs have no evidence of public reporting or other media statements before September 11, 2001, connecting Al Haramain KSA to Al Qaeda.  *See, e.g.*, Pls. Aver. § V (discussing Al Qaeda's "pre-9/11 funding," but presenting no evidence of any pre-9/11 public reporting connecting Al Haramain KSA to Al Qaeda); Pls. Ex. 4 (Winer Report) at § 4 (discussing "incidents involving charities and terrorist financing/crime pre-9/11," but presenting no evidence of any pre-9/11 public reporting connecting Al Haramain KSA to Al Qaeda); Pls. Ex. 38

(Kohlmann Report) at 11-15 (discussing Al Haramain but presenting no evidence of any pre-9/11 public reporting connecting Al Haramain KSA to Al Qaeda).

52.    Plaintiffs have no evidence that, before the 9/11 Attacks, Al Rajhi Bank knew that Al Haramain KSA had any connection to Al Qaeda or any form of terrorism against the United States, including the 9/11 Attacks. *See, e.g.*, Pls. Aver. § VI (discussing pre-9/11 financial services provided by the Bank to the Charities, but presenting no evidence that the Bank had any knowledge before 9/11 of any alleged connection between Al Haramain KSA and Al Qaeda or terrorism against the United States); Pls. Ex. 4 (Winer Report) at § 7 (discussing purported "relationship" between Al Haramain KSA and the Bank, but presenting no evidence that the Bank had any knowledge before 9/11 of any alleged connection between Al Haramain KSA and Al Qaeda or terrorism against the United States); Pls. Ex. 38 (Kohlmann Report) at 11-15 (discussing Al Haramain but presenting no evidence that the Bank had any knowledge before 9/11 of any alleged connection between Al Haramain KSA and Al Qaeda or terrorism against the United States).

53.    Plaintiffs have no evidence tracing any transaction from Al Haramain KSA made through Al Rajhi Bank to the financing, planning, or carrying out of terrorism against the United States, including the 9/11 Attacks. *See, e.g.*, Pls. Aver. §§ X, XI (failing to trace any transaction through Al Rajhi Bank to planning, carrying out, or financing the 9/11 Attacks); Pls. Ex. 4 (Winer Report) at § 11 (same).

### 2.    IIRO

54.    The IIRO in Saudi Arabia ("IIRO KSA") held accounts at Al Rajhi Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.

55.    IIRO branches outside of Saudi Arabia did not hold accounts at the Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.

56.     IIRO KSA was widely recognized as a reputable charitable organization that provided bona fide benevolent work such as educational programs, healthcare, and cash and in-kind donations to Muslims in need, and supported social and economic development worldwide. *See* ARB Ex. 29 (Oct. 1978 Certificate from Ministry of Foreign Affairs) at ARB-13683 (certificate in IIRO KYC files certifying IIRO as a "humanitarian non governmental body" whose "main concern is to care for the Refugees, Children and the victims of wars and disasters"); ARB Ex. 29 (Oct. 1978 Ltr. from MWL) at ARB-13692 (letter in IIRO KYC files stating IIRO's purpose is to provide relief to the poor, orphans, widows, and to support hospitals and schools); *see also* ARB Ex. 93 (Kohlmann Dep. Tr.) at 146:3-147:7 (acknowledging that IIRO provided humanitarian relief to Muslims around the world); ARB Ex. 1 (Dean Report) at 8 (describing the widespread recognition of IIRO for good works and humanitarian efforts).

57.     IIRO KSA was a government-licensed, charitable organization in Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) and Errata at 232:19; ARB Ex. 29 (MWL documents relating to the founding of IIRO in 1978) at ARB-13679-ARB-13688, ARB-13691, ARB-13696 (recognizing the founding of IIRO KSA by the Deputy Prime Minister of Saudi Arabia and the Ministry of Foreign Affairs); ARB Ex. 24 (Jan. 4, 2004 (Hijri) Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-14545 (stating the Bank's understanding that IIRO KSA was "licensed according to the directive of His Majesty the King," and that "[t]he certificate issued by the Ministry of Foreign Affairs states that the Organization is recognized by the government of the Kingdom of Saudi Arabia"); ARB Ex. 40 (letters dated Nov. 18, 1989 to Dec. 16, 1989 from the Ministry of Interior in the Emirate of Asir) at ARB-37502-ARB-37511 (discussing the opening of IIRO office in the Emirate of Asir in 1989); ARB Ex. 39 (Sept. 20, 1989 Letter from the Governor of the Asir Emirate to the Chairman of the Imam Muhammad ibn Saud Islamic University) at

ARB-37838-ARB-37839 (affirming the opening of an IIRO office in the region, dated September 20, 1989); ARB Ex. 38 (Jan. 26, 1994 business license in Jubail Municipality) at ARB-13527 (permitting IIRO KSA to collect donations).

58.    The Bank also took steps before and after the 9/11 Attacks to confirm that IIRO-KSA was government-licensed.  Pls. Ex. 3 (Galloway Dep. Tr.) at 100:1-11, 115:23-25, 253:18-254:11 and Errata at 100:1-2, 100:5, 100:10, 115:24-25, 254:5; ARB Ex. 2 (Hobayb Report) at 26-27 (describing the Bank's collection and review of IIRO KSA's licenses); ARB Ex. 24 (Jan. 4, 2004 (Hijri) Abdullah Sulaiman Al Rajhi Ltr. to Governor of SAMA) at ARB-14545 (asking if it was permissible for the Bank to continue doing business with Al Haramain KSA and IIRO KSA).

59.    Before the 9/11 Attacks, neither IIRO KSA nor any IIRO branch was designated under any sanctions regime for connections to terrorism.  *See* Pls. Ex. 170 ("Treasury Designates Director, Branches of Charity Bankrolling Al Qaida Network," Aug. 3, 2006) (showing first sanctions designations of IIRO branches began in 2006); *see also* ARB Ex. 28 (Winer Dep. Tr.) at 57:8-12 ("To the best of my knowledge, there were no charities of any kind that I recollect that had been designated prior to 9/11 because terrorist designations were originally limited to terrorist organizations."); ARB Ex. 93 (Kohlmann Dep. Tr.) at 126:12-13, 130:21-131:2 (testifying that charity designations only began after 9/11 and that he had not identified *any* Al Rajhi Bank transactions violating sanctions or designations, because "once the designation has been issued," it becomes "impossible to open an account under that [designated] person's name").

60.    No IIRO branch was designated under any sanctions regime for connections to terrorism until 2006.  *See* Pls. Ex. 170 ("Treasury Designates Director, Branches of Charity Bankrolling Al Qaida Network") (showing first sanctions designations of IIRO branches in 2006).

61.    IIRO KSA was never designated under any sanctions regime for connections to terrorism. *See* ARB Ex. 93 (Kohlmann Dep. Tr.) at 140:6-13 (acknowledging that IIRO KSA never received a sanctions designation); *see generally* ARB Ex. 59 (Office of Foreign Assets Control, *Specially Designated Nationals and Blocked Persons List*, U.S. Dept. of Treas. (May 3, 2024), https://www.treasury.gov/ofac/downloads/sdnlist.pdf).

62.    At no point did SAMA instruct Al Rajhi Bank to block IIRO KSA's accounts. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 348:12-16 and Errata at 348:12-13.

63.    Plaintiffs have no evidence of public reporting or other media statements before September 11, 2001, connecting IIRO KSA to Al Qaeda. *See, e.g.*, Pls. Aver. § V (discussing Al Qaeda's "pre-9/11 funding," but presenting no evidence of any pre-9/11 public reporting connecting IIRO KSA to Al Qaeda); Pls. Ex. 4 (Winer Report) at § 4 (discussing "incidents involving charities and terrorist financing/crime pre-9/11," but presenting no evidence of any pre-9/11 public reporting connecting IIRO KSA to Al Qaeda); Pls. Ex. 38 (Kohlmann Report) at 17-28 (discussing IIRO but presenting no evidence of any pre-9/11 public reporting connecting IIRO KSA to Al Qaeda).

64.    Plaintiffs have no evidence that, before the 9/11 Attacks, Al Rajhi Bank knew that IIRO KSA had any connection to Al Qaeda or any form of terrorism against the United States, including the 9/11 Attacks. *See, e.g.*, Pls. Aver. § VI (discussing pre-9/11 financial services provided by the Bank to the Charities, but presenting no evidence that the Bank had any knowledge before 9/11 of any alleged connection between IIRO KSA and Al Qaeda or terrorism against the United States); Pls. Ex. 4 (Winer Report) at § 7 (discussing purported "relationship" between IIRO KSA and the Bank, but presenting no evidence that the Bank had any knowledge before 9/11 of any alleged connection between IIRO KSA and Al Qaeda or terrorism against the United States);

–23–

Pls. Ex. 38 (Kohlmann Report) at 17-28 (discussing IIRO but presenting no evidence that the Bank had any knowledge before 9/11 of any alleged connection between IIRO KSA and Al Qaeda or terrorism against the United States).

65.     Plaintiffs have no evidence tracing any transaction from IIRO KSA made through Al Rajhi Bank to the financing, planning, or carrying out of terrorism against the United States, including the 9/11 Attacks. *See, e.g.*, Pls. Aver. §§ X, XI (failing to trace any transaction through Al Rajhi Bank to planning, carrying out, or financing the 9/11 Attacks); Pls. Ex. 4 (Winer Report) at § 11 (same).

### 3.     Muwaffaq Foundation

66.     During the relevant period, Muwaffaq Foundation never held any accounts at Al Rajhi Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 337:15-17 and Errata at 77:17, 337:15.

### 4.     World Assembly Of Muslim Youth

67.     Before the 9/11 Attacks, World Assembly of Muslim Youth was not designated under any sanctions regime for connections to terrorism. *See* ARB Ex. 93 (Kohlmann Dep. Tr.) at 164:19-21 (acknowledging that WAMY never received a sanctions designation); *see also* ARB Ex. 28 (Winer Dep. Tr.) at 57:8-12 ("To the best of my knowledge, there were no charities of any kind that I recollect that had been designated prior to 9/11 because terrorist designations were originally limited to terrorist organizations."); ARB Ex. 93 (Kohlmann Dep. Tr.) at 126:12-13, 130:21-131:2 (testifying that charity designations only began after 9/11 and that he had not identified *any* Al Rajhi Bank transactions violating sanctions or designations, because "once the designation has been issued," it becomes "impossible to open an account under that [designated] person's name").

68.     After the 9/11 Attacks, WAMY was never designated under any sanctions regime for connections to terrorism. *See* ARB Ex. 93 (Kohlmann Dep. Tr.) at 164:19-21 (acknowledging

that WAMY never received a sanctions designation); *see generally* ARB Ex. 59 (Office of Foreign Assets Control, *Specially Designated Nationals and Blocked Persons List*, U.S. Dept. of Treas. (May 3, 2024)).

69.     WAMY was a government-licensed organization in Saudi Arabia.  ARB Ex. 24 (Jan. 4, 2004 (Hijri) Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-14545 (stating the Bank's understanding that WAMY was "licensed according to the approval of His Majesty, the Prime Minister" dated February 18, 1979); *see also* ARB Ex. 1 (Dean Report) at 8 (describing the widespread recognition of WAMY for good works and humanitarian efforts).

70.     Plaintiffs have no evidence of public reporting or other media statements before September 11, 2001, connecting WAMY to Al Qaeda.  *See, e.g.*, Pls. Aver. § V (discussing Al Qaeda's "pre-9/11 funding," but presenting no evidence of any pre-9/11 public reporting connecting WAMY to Al Qaeda); Pls. Ex. 4 (Winer Report) at § 4 (discussing "incidents involving charities and terrorist financing/crime pre-9/11," but presenting no evidence of any pre-9/11 public reporting connecting WAMY to Al Qaeda); Pls. Ex. 38 (Kohlmann Report) at 31-36 (discussing WAMY but presenting no evidence of any pre-9/11 public reporting connecting WAMY to Al Qaeda).

71.     Plaintiffs have no evidence that, before the 9/11 Attacks, Al Rajhi Bank knew that WAMY had any connection to Al Qaeda or any form of terrorism against the United States, including the 9/11 Attacks.  *See, e.g.*, Pls. Aver. § VI (discussing pre-9/11 financial services provided by the Bank to the Charities, but presenting no evidence that the Bank had any knowledge before 9/11 of any alleged connection between WAMY and Al Qaeda or terrorism against the United States); Pls. Ex. 4 (Winer Report) at § 7 (discussing purported "relationship" between WAMY and the Bank, but presenting no evidence that the Bank had any knowledge before 9/11

of any alleged connection between WAMY and Al Qaeda or terrorism against the United States);
Pls. Ex. 38 (Kohlmann Report) at 31-36 (discussing WAMY but presenting no evidence that the
Bank had any knowledge before 9/11 of any alleged connection between WAMY and Al Qaeda
or terrorism against the United States).

72.    Plaintiffs have no evidence tracing any transaction from WAMY made through Al
Rajhi Bank to the financing, planning, or carrying out of terrorism against the United States,
including the 9/11 Attacks. *See, e.g.*, Pls. Aver. §§ X, XI (failing to trace any transaction through
Al Rajhi Bank to planning, carrying out, or financing the 9/11 Attacks); Pls. Ex. 4 (Winer Report)
at § 11 (same).

### 5.    Muslim World League

73.    Before the 9/11 Attacks, Muslim World League was not designated under any
sanctions regime for connections to terrorism. *See* ARB Ex. 28 (Winer Dep. Tr.) at 57:8-12 ("To
the best of my knowledge, there were no charities of any kind that I recollect that had been
designated prior to 9/11 because terrorist designations were originally limited to terrorist
organizations."); ARB Ex. 93 (Kohlmann Dep. Tr.) at 126:12-13, 130:21-131:2 (testifying that
charity designations only began after 9/11 and that he had not identified *any* Al Rajhi Bank
transactions violating sanctions or designations, because "once the designation has been issued,"
it becomes "impossible to open an account under that [designated] person's name").

74.    After the 9/11 Attacks, Muslim World League was not designated under any
sanctions regime for connections to terrorism. *See generally* ARB Ex. 59 (Office of Foreign Assets
Control, *Specially Designated Nationals and Blocked Persons List*, U.S. Dept. of Treas. (May 3,
2024), https://www.treasury.gov/ofac/downloads/sdnlist.pdf).

75.    MWL was a government-licensed organization in Saudi Arabia. ARB Ex. 24 (Jan.
4, 2004 (Hijri) Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-14545 (stating the

Bank's understanding that MWL was "licensed according to an implicit approval by His Royal Highness Deputy Prime Minister," dated January 28, 1979); *see also* ARB Ex. 1 (Dean Report) at 8 (describing the widespread recognition of MWL for good works and humanitarian efforts).

76.     Plaintiffs have no evidence of public reporting or other media statements before September 11, 2001, connecting the Muslim World League to Al Qaeda. *See, e.g.*, Pls. Aver. § V (discussing Al Qaeda's "pre-9/11 funding," but presenting no evidence of any pre-9/11 public reporting connecting MWL to Al Qaeda); Pls. Ex. 4 (Winer Report) at § 4 (discussing "incidents involving charities and terrorist financing/crime pre-9/11," but presenting no evidence of any pre-9/11 public reporting connecting MWL to Al Qaeda); Pls. Ex. 38 (Kohlmann Report) at 17, 28 (discussing MWL but presenting no evidence of any pre-9/11 public reporting connecting MWL to Al Qaeda).

77.     Plaintiffs have no evidence that, before the 9/11 Attacks, Al Rajhi Bank knew that Muslim World League had any connection to Al Qaeda or any form of terrorism against the United States, including the 9/11 Attacks. *See, e.g.*, Pls. Aver. § VI (discussing pre-9/11 financial services provided by the Bank to the Charities, but presenting no evidence that the Bank had any knowledge before 9/11 of any alleged connection between MWL and Al Qaeda or terrorism against the United States); Pls. Ex. 4 (Winer Report) at § 7 (discussing purported "relationship" between MWL and the Bank, but presenting no evidence that the Bank had any knowledge before 9/11 of any alleged connection between MWL and Al Qaeda or terrorism against the United States); Pls. Ex. 38 (Kohlmann Report) at 17, 28 (discussing MWL but presenting no evidence that the Bank had any knowledge before 9/11 of any alleged connection between MWL or terrorism against the United States).

78.     Plaintiffs have no evidence tracing any transaction from MWL made through Al Rajhi Bank to the financing, planning, or carrying out of terrorism against the United States, including the 9/11 Attacks. *See, e.g.*, Pls. Aver. §§ X, XI (failing to trace any transaction through Al Rajhi Bank to planning, carrying out, or financing the 9/11 Attacks); Pls. Ex. 4 (Winer Report) at § 11 (same).

### 6.    Saudi Joint Relief Committee For Kosovo And Chechnya

79.     Before the 9/11 Attacks, the Saudi Joint Relief Committee for Kosovo and Chechnya was not designated under any sanctions regime for connections to terrorism. *See* ARB Ex. 28 (Winer Dep. Tr.) at 57:8-12 ("To the best of my knowledge, there were no charities of any kind that I recollect that had been designated prior to 9/11 because terrorist designations were originally limited to terrorist organizations."); ARB Ex. 93 (Kohlmann Dep. Tr.) at 126:12-13, 130:21-131:2 and Errata at 131:1 (testifying that charity designations only began after 9/11 and that he had not identified *any* Al Rajhi Bank transactions violating sanctions or designations, because "once the designation has been issued," it becomes "impossible to open an account under that [designated] person's name").

80.     After the 9/11 Attacks, the SJRC was not designated under any sanctions regime for connections to terrorism. *See generally* ARB Ex. 59 (Office of Foreign Assets Control, *Specially Designated Nationals and Blocked Persons List*, U.S. Dept. of Treas. (May 3, 2024), https://www.treasury.gov/ofac/downloads/sdnlist.pdf).

81.     SJRC was a government-licensed organization in Saudi Arabia. ARB Ex. 24 (Jan. 4, 2004 (Hijri) Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-14545 (stating the Bank's understanding that SJRC was licensed to a royal decree and royal order, dated November 9, 1999).

82.     Plaintiffs have no evidence of public reporting or other media statements before September 11, 2001, connecting the SJRC to Al Qaeda. *See, e.g.*, Pls. Aver. § V (discussing Al Qaeda's "pre-9/11 funding," but presenting no evidence of any pre-9/11 public reporting connecting SJRC to Al Qaeda); Pls. Ex. 4 (Winer Report) at § 4 (discussing "incidents involving charities and terrorist financing/crime pre-9/11," but presenting no evidence of any pre-9/11 public reporting connecting SJRC to Al Qaeda); Pls. Ex. 38 (Kohlmann Report) at 21, 30 (discussing SJRC but presenting no evidence of any pre-9/11 public reporting connecting SJRC to Al Qaeda).

83.     Plaintiffs have no evidence that, before the 9/11 Attacks, Al Rajhi Bank knew that the SJRC had any connection to Al Qaeda or any form of terrorism against the United States, including the 9/11 Attacks. *See, e.g.*, Pls. Aver. § VI (discussing pre-9/11 financial services provided by the Bank to the Charities, but presenting no evidence that the Bank had any knowledge before 9/11 of any alleged connection between SJRC and Al Qaeda or terrorism against the United States); Pls. Ex. 4 (Winer Report) at § 9 (discussing alleged SJRC "activities," but presenting no evidence that the Bank had any knowledge before 9/11 of any alleged connection between SJRC and Al Qaeda or terrorism against the United States); Pls. Ex. 38 (Kohlmann Report) at 21, 30 (discussing SJRC but presenting no evidence that the Bank had any knowledge before 9/11 of any alleged connection between SJRC and Al Qaeda or terrorism against the United States).

84.     Plaintiffs have no evidence tracing any transaction from SJRC made through Al Rajhi Bank to the financing, planning, or carrying out of terrorism against the United States, including the 9/11 Attacks. *See, e.g.*, Pls. Aver. §§ X, XI (failing to trace any transaction through Al Rajhi Bank to planning, carrying out, or financing the 9/11 Attacks); Pls. Ex. 4 (Winer Report) at § 11 (same).

### 7.    Saudi High Commission For Bosnia-Herzegovina

85.    Before the 9/11 Attacks, the Saudi High Commission for Bosnia-Herzegovina was not designated under any sanctions regime for connections to terrorism.  *See* ARB Ex. 28 (Winer Dep. Tr.) at 57:8-12 ("To the best of my knowledge, there were no charities of any kind that I recollect that had been designated prior to 9/11 because terrorist designations were originally limited to terrorist organizations."); ARB Ex. 93 (Kohlmann Dep. Tr.) at 126:12-13, 130:21-131:2 (testifying that charity designations only began after 9/11 and that he had not identified *any* Al Rajhi Bank transactions violating sanctions or designations, because "once the designation has been issued," it becomes "impossible to open an account under that [designated] person's name").

86.    After the 9/11 Attacks, the SHC was not designated under any sanctions regime for connections to terrorism.  *See generally* ARB Ex. 59 (Office of Foreign Assets Control, *Specially Designated Nationals and Blocked Persons List*, U.S. Dept. of Treas. (May 3, 2024), https://www.treasury.gov/ofac/downloads/sdnlist.pdf).

87.    SHC was a government-licensed, charitable organization in Saudi Arabia.  ARB Ex. 24 (Jan. 4, 2004 (Hijri) Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-14545 (stating the Bank's understanding that SHC was licensed under a royal decree, dated June 3, 1992).

88.    Plaintiffs have no evidence of public reporting or other media statements before September 11, 2001, connecting the Saudi High Commission for Bosnia-Herzegovina to Al Qaeda before September 11, 2001.  *See, e.g.*, Pls. Aver. § V (discussing Al Qaeda's "pre-9/11 funding," but presenting no evidence of any pre-9/11 public reporting connecting SHC to Al Qaeda); Pls. Ex. 4 (Winer Report) at § 4 (discussing "incidents involving charities and terrorist financing/crime pre-9/11," but presenting no evidence of any pre-9/11 public reporting connecting SHC to Al Qaeda); Pls. Ex. 38 (Kohlmann Report) at 23 (discussing "Saudi High Commission" (presumably SHC) but presenting no evidence of any pre-9/11 public reporting connecting SHC to Al Qaeda).

89.     Plaintiffs have no evidence that, before the 9/11 Attacks, Al Rajhi Bank knew that Saudi High Commission for Bosnia-Herzegovina had any connection to Al Qaeda or any form of terrorism against the United States, including the 9/11 Attacks. *See, e.g.*, Pls. Aver. § VI (discussing pre-9/11 financial services provided by the Bank to the Charities, but presenting no evidence that the Bank had any knowledge before 9/11 of any alleged connection between SHC and Al Qaeda or terrorism against the United States); Pls. Ex. 4 (Winer Report) at 58-59 (quoting CIA report stating that SHC had "questionable, though less direct ties" to Bin Laden, but presenting no evidence that the Bank had any knowledge before 9/11 of any alleged connection between SHC and Al Qaeda or terrorism against the United States); Pls. Ex. 38 (Kohlmann Report) at 23 (discussing "Saudi High Commission" (presumably SHC) but presenting no evidence that the Bank had any knowledge before 9/11 of any alleged connection between SHC and Al Qaeda or terrorism against the United States).

90.     Plaintiffs have no evidence tracing any transaction from SHC made through Al Rajhi Bank to the financing, planning, or carrying out of terrorism against the United States, including the 9/11 Attacks. *See, e.g.*, Pls. Aver. §§ X, XI (failing to trace any transaction through Al Rajhi Bank to planning, carrying out, or financing the 9/11 Attacks); Pls. Ex. 4 (Winer Report) at § 11 (same).

**B.     Osama bin Laden**

91.     In 1994, the Saudi government stripped Osama bin Laden of his citizenship and froze his accounts and assets in Saudi Arabia, including his accounts at Al Rajhi Bank.  Pls. Ex. 40 (9/11 Commission Report) at 57; *see also* ARB Ex. 28 (Winer Dep. Tr.)at 53:5-55:2 (explaining "bin Laden's accounts had been frozen at some time earlier.  The Saudi government had basically shut down his direct ability to move money in his own name is my understanding."); ARB Ex. 93 (Kohlmann Dep. Tr.) at 208:15-209:15 (explaining that bin Laden's "citizenship was revoked [by

the Kingdom of Saudi Arabia] in [19]94, but . . . [the Kingdom of Saudi Arabia] basically stopped financial transactions sometime in [19]93"); ARB Ex. 1 (Dean Report) at 17 (explaining that Osama bin Laden departed Saudi Arabia in 1992 and was stripped of Saudi citizenship in 1994); Exec. Order No. 13,099, 63 Fed. Reg. 45,167 (Aug. 20, 1998) (designating bin Laden in 1998).

92.     At least since 1994, when Bin Laden's accounts were frozen by the Saudi government, Al Rajhi Bank blocked Bin Laden from accessing his accounts or using any Bank services. *See* ARB Ex. 8 (Nov. 16, 2002 Ltr. from Al Rajhi Bank to SAMA) at ARB-39559 (showing all Bin Laden accounts "blocked"); *see also* ARB Ex. 28 (Winer Dep. Tr.) at 53:5-55:2 (reviewing Bin Laden account statements and agreeing that there was no activity in Bin Laden's accounts at Al Rajhi Bank during the relevant period because his "accounts had been frozen at some time earlier").

93.     During the relevant period, the Bank did not provide Osama bin Laden with any services: The Bank had frozen bin Laden's accounts and bin Laden was not permitted to process any transfers or receive any funds using his accounts at Al Rajhi Bank. *See generally* ARB Exs. 30-35 (Osama bin Laden Stmts. of Acct.) at ARB-843-ARB-844; ARB-845; ARB-846-ARB-847; ARB-848-ARB-849; ARB-13775-ARB-13776; ARB-13777-ARB-13778 (showing no account activity during the relevant period); *see also* ARB Ex. 28 (Winer Dep. Tr.) at 53:5-55:2 (agreeing that there was no activity in bin Laden's accounts at Al Rajhi Bank during the relevant period); ARB Ex. 93 (Kohlmann Dep. Tr.) at 17:1-25 (confirming that, even apart from the absence of transactions in Osama bin Laden's account records, Kohlmann has not seen "any evidence or indication" of any transactions through bin Laden's accounts at Al Rajhi Bank).

### C.    9/11 Hijackers

94.     Before the 9/11 Attacks, Al Rajhi Bank had no reason to know of any involvement in Al Qaeda or terrorism by any of the hijackers who held accounts at the Bank. *See* Pls. Ex. 44

(Staff Monograph on Terrorism Financing) at 140-41 ("No one at SunTrust or any other financial institution thought, or had any reason to think, that the hijackers were criminals, let alone terrorists bent on mass murder . . . .").

95.     Before the 9/11 Attacks, none of the hijackers, including those who held accounts at the Bank, were designated for connections to terrorism.  *See* Pls. Ex. 44 (Staff Monograph on Terrorism Financing) at 140-41; *see also* ARB Ex. 93 (Kohlmann Dep. Tr.) at 130:21-131:2 (testifying that he had not identified *any* Al Rajhi Bank transactions violating sanctions or designations, because "once the designation has been issued," it becomes "impossible to open an account under that [designated] person's name").

96.     Only one of the seven hijackers made any transactions through his Al Rajhi Bank account while in the United States, conducting just two transactions totalling SAR 875.59, or approximately U.S. $233.43.  ARB Ex. 79 (Abdulaziz Al-Omari Statement of Account) at ARB-0004 (showing two transactions after Al-Omari's June 29, 2001 arrival in the United States: a credit of 706.86 SAR and a debit of 168.76 SAR); there were no transactions after November 2000 in any of the other hijackers' accounts.  *See* ARB Ex. 80 (ARB-960 – ARB-973); ARB Ex. 81 (ARB-850 – ARB-855); ARB Ex. 82 (ARB-856 - ARB-857); ARB Ex. 83 (ARB-836 – ARB-840); ARB Ex. 84 (ARB-811 – ARB-814).

97.     In the United States, the hijackers "made extensive use of U.S. banks," including U.S. branches of "major international banks," as well as "smaller regional banks."  Pls. Ex. 44 (Staff Monograph on Terrorism Financing) at 140.  The hijackers opened U.S. accounts in their own names. *Id*.

98.     The Bank had no reason to be suspicious of any of the hijackers' account activity. *See* ARB Ex. 4 (Lormel Report) at 31-32 ("The money-laundering controls in place at the time

were largely focused on drug trafficking and large-scale financial fraud and could not have detected the hijackers' transactions.  The controls were never intended to, and could not, detect or disrupt the routine transactions in which the hijackers engaged." (quoting Pls. Ex. 44 (9/11 Commission Staff Report) at 3)); *see also* Pls. Ex. 44 (9/11 Staff Report) at 141 (stating that the hijackers' transactions in their U.S. accounts were "not extraordinary or remarkable," and "[no] one monitoring their transactions alone would have had any basis for concern"); *id*. at 140-41 ("No one at SunTrust or any other financial institution thought, or had any reason to think, that the hijackers were criminals, let alone terrorists bent on mass murder . . . .").

99.     Plaintiffs have no evidence that, before the 9/11 Attacks, Al Rajhi Bank knew that any of the hijackers had any connection to Al Qaeda or any form of terrorism against the United States, including the 9/11 Attacks. *See, e.g.*, Pls. Aver. ¶¶ 136, 265, 540 (making passing reference to hijackers' accounts, but presenting no evidence that the Bank knew of the hijackers' connections to Al Qaeda or terrorism against the United States).

100.     Plaintiffs have no evidence that during the relevant period Al Rajhi Bank provided non-routine banking services to any of the hijackers. *See, e.g.*, Pls. Aver. ¶¶ 136, 265, 540 (making passing reference to hijackers' accounts, but presenting no evidence that the Bank provided the hijackers with non-routine services); *see also* ARB Ex. 93 (Kohlmann Dep. Tr.) at 204:14-206:11 (testifying that Al Rajhi Bank provided services such as "accounts [and] wire transfers" as well as "issuing travellers checks, converting sums of money, [and] accepting donations").

101.     Plaintiffs do not trace any transaction in any account of a 9/11 hijacker at Al Rajhi Bank to planning, carrying out, or financing the 9/11 Attacks. *See, e.g.*, Pls. Aver. ¶¶ 136, 265, 540 (making passing reference to hijackers' accounts, but presenting no evidence tracing any

transaction through any hijackers' account at Al Rajhi Bank to planning, carrying out, or financing the 9/11 Attacks).

**IV.    Al Rajhi Bank Did Not Make Any Donation That Supported The 9/11 Attacks**

102.    Al Rajhi Bank did not make any donations to the Charities.  *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 271:6-15 and Errata 271:15 (testifying the Bank did not make any donations to IIRO, Al-Haramain, or Muwaffaq); ARB Ex. 93 (Kohlmann Dep. Tr.) at 205:5-10 (testifying that he was not aware of any donations from the Bank to the Charities during the relevant period).

103.    As requested by Plaintiffs, and directed by the Court, Al Rajhi Bank searched for documents showing any donations by the Bank to Al Haramain, IIRO, and the Muwaffaq Foundation. *See* Opp. to Pls. 2d Mot. to Compel 4-5 (ECF No. 8935) (describing the Bank's search process and findings).  The Bank's searches confirmed that the Bank did not make donations to Al Haramain, IIRO, or the Muwaffaq Foundation.  *Id*.

104.    Magistrate Judge Netburn held that the Bank's search for records of donations was "reasonable."  Order 4-5 (July 11, 2023), ECF No. 9210.

105.    Al Rajhi Bank did not make any donations of any of its own funds to any of the other Charities or any entity designated under any sanctions regime for connections to terrorism, either before or after such designation.  *See* ARB Ex. 93 (Kohlmann Dep. Tr.) at 206:12-207:6 (testifying that Plaintiffs have no evidence that Al Rajhi Bank made donations to designated charities or otherwise attempted to circumvent designations to help finance any charities).

106.    Plaintiffs have no evidence that Al Rajhi Bank made any donations to any entity knowing or intending that the donation would be used to support Al Qaeda or any form of terrorism against the United States, including the 9/11 Attacks.  *See* ARB Ex. 93 (Kohlmann Dep. Tr.) at 206:12-207:6 (testifying that Plaintiffs have no evidence that Al Rajhi Bank made donations to

designated charities or otherwise attempted to circumvent designations to help finance any charities).

107.    Plaintiffs do not trace any donation from Al Rajhi Bank to any entity for the funding of Al Qaeda or any form of terrorism against the United States, including the 9/11 Attacks. *See generally* Pls. Aver., Pls. Ex. 4 (Winer Report) & Pls. Ex. 38 (Kohlmann Report) (all failing to identify a single donation from the Bank in support of Al Qaeda or any form of terrorism against the United States, including the 9/11 Attacks).

**V.    No Transaction Through The Bank, Including Through The Bank's U.S. Correspondent Accounts, Has Been Traced To The Financing Of The 9/11 Attacks**

108.    Plaintiffs have no evidence tracing any transaction made through Al Rajhi Bank to Al Qaeda or to planning, carrying out, or financing any terrorism against the United States, including the 9/11 Attacks. *See, e.g.*, Pls. Aver. §§ X, XI; Pls. Ex. 4 (Winer Report) at § 11; *see also* ARB Ex. 4 (Lormel Report) at 7 (explaining that FBI investigated CIA intelligence leads concerning Al Rajhi Bank but could not verify or prove any allegation that the Bank provided support to Al Qaeda).

109.    In jurisdictional discovery, the Bank produced 508 statements of accounts, including 440 charity customer accounts. *See* Erb Decl. ¶¶ 3-5.  Plaintiffs have no evidence that any of these account statements shows any transaction that has been traced to Al Qaeda or to the financing, planning, or carrying out of any terrorism against the United States, including the 9/11 Attacks. *See, e.g.*, Pls. Aver. §§ X, XI; Pls. Ex. 4 (Winer Report) at § 11.

110.    The Bank did not process any transactions in violation of terrorism sanctions.  Pls. ARB Ex. 93 (Kohlmann Dep. Tr.) at 132:23-133:5 (testifying it would be "impossible" for the Bank to process transactions to a designated person or entity).

111.     The Bank did not permit any transactions through Osama bin Laden's long-frozen accounts.  *See* ARB Ex. 28 (Winer Dep. Tr.) at 53:5-55:2 (explaining "bin Laden's accounts had been frozen at some time earlier.  The Saudi government had basically shut down his direct ability to move money in his own name is my understanding"); ARB Ex. 93 (Kohlmann Dep. Tr.) at 208:15-209:15 (explaining that bin Laden's "citizenship was revoked [by the Kingdom of Saudi Arabia] in [19]94, but . . . [the Kingdom of Saudi Arabia] basically stopped financial transactions sometime in [19]93"); ARB Ex. 1 (Dean Report) at 17 (explaining that Osama bin Laden departed Saudi Arabia in 1992 and was stripped of Saudi citizenship in 1994).

112.     Al Rajhi Bank used its correspondent banking account with Chase Manhattan to conduct routine correspondent banking on behalf of Al Rajhi Bank customers.  *See* Pls. Ex. 3 (Galloway Dep. Tr.) and Errata at 295:21.

113.     Plaintiffs subpoenaed, and obtained documents from, the Bank's U.S. correspondent bank, JPMorgan Chase Bank (during the relevant period, Chase Manhattan Bank) ("JPM").  *See* ARB Ltr. Mot. to Quash at Ex. A (Mar. 2, 2023), ECF 8897.  Plaintiffs' subpoena sought "all records" relating to "any accounts" held at JPM by Al Rajhi Bank, its former Chairman Sulaiman bin Abdulaziz Al Rajhi, or the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, including "'[a]ny and all records relating to any banking and/or financial transactions involving" any such accounts.  *Id*. at 1, 3.  Plaintiffs' subpoena also sought "[a]ny and all records relating to the establishment of a correspondent banking relationship between" the Bank and JPM, including any of JPM's parents, affiliates, subsidiaries, employees, officers, and so on.  *Id*. at 4.

114.     Plaintiffs' Corrected Averment shows that JPM produced hundreds of pages of documents, spanning from 1992 and continuing until at least 2020.  *See* Pls. Aver. ¶¶ 438-39 (citing Pls. Ex. 138).

115.    Plaintiffs do not trace a single transaction through Al Rajhi Bank's correspondent account at Chase Manhattan to Al Qaeda or to the financing, planning, or carrying out of any terrorism against the United States, including the 9/11 Attacks. *See, e.g.*, Pls. Aver. §XI; Pls. Ex. 4 (Winer Report) § 10; *see also* ARB Ex. 2 (Hobayb Report) at 33 (noting that Plaintiffs' expert Winer did not identify "any transaction by the Bank that would constitute abuse of this practice [the correspondent banking relationship] for nefarious ends").

116.    Plaintiffs have no evidence that any funds in Al Rajhi Bank's correspondent account at Chase Manhattan were used by Al Qaeda or in planning, carrying out, or financing any terrorism against the United States, including the 9/11 Attacks. *See, e.g.*, Pls. Aver. §XI; Pls. Ex. 4 (Winer Report) § 10; *see also* ARB Ex. 2 (Hobayb Report) at 33 (noting that Plaintiffs' expert Winer did not identify "any transaction by the Bank that would constitute abuse of this practice [the correspondent banking relationship] for nefarious ends").

117.    Plaintiffs' Corrected Averment fails to trace a single transaction through Al Rajhi Bank, including through its US correspondent account, to Al Qaeda or in support of Al Qaeda or any form of terrorism against the United States, including the 9/11 Attacks. *See generally* Pls. Aver., Pls. Ex. 4 (Winer Report) & Pls. Ex. 38 (Kohlmann Report) (all failing to identify a single transaction through Al Rajhi Bank that supported Al Qaeda, terrorism against the United States, or the 9/11 Attacks).

## VI.    Neither The United States, The United Nations, Nor Any Other Governmental Body Has Ever Designated Or Taken Any Other Action Against Al Rajhi Bank Or Any Al Rajhi Family Member For Connections To Terrorism

118.    The U.S. government never designated or otherwise sanctioned Al Rajhi Bank or any Al Rajhi family member for connections to terrorism. *See* ARB Ex. 4 (Expert Report of Dennis Lormel) ("Lormel Report") at 9, 18 ("[T]he United States government *never* sanctioned Al Rajhi Bank or the Al Rajhi family for involvement in terrorist financing."); *see also* Pls. Ex. 4

(Winer Report) at 98 ("In the end, [the] U.S. government did not sanction [Al Rajhi Bank] for terrorist finance."); *see also* ARB Ex. 28 (Winer Dep. Tr.) at 160:10-15; 172:19-22; ARB Ex. 93 (Kohlmann Dep. Tr.) at 36:20-22, 37:6-20, 38:3-39:5.

119.    The United States government never charged Al Rajhi Bank or Al Rajhi family members for connections to terrorism. *See* ARB Ex. 4 (Lormel Report) at 9 (explaining the FBI "did not find evidence sufficient to support criminal charges against the Bank [or] any members of the Al Rajhi family"); *see also* ARB Ex. 7 (May 27, 2021 FBI Report) at EO14040-000011 ("After nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged, which is consistent with the final conclusion of the 9/11 Commission Report which stated that [there was] 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'").

120.    The U.S. government never took any other action against Al Rajhi Bank or Al Rajhi family members for connections to terrorism. *See* ARB Ex. 94 (Lormel Dep. Tr.) at 209:16-210:22 and Errata at 210:22 (testimony from Dennis Lormel, who led a comprehensive FBI investigation into Al Rajhi Bank's purported ties to Al Qaeda and found no support for those allegations, that if the U.S. government found clear evidence of anyone supporting 9/11, "actions would have been taken against them regardless of the political outcry" or the State Department's concerns about diplomatic ties); ARB Ex. 4 (Lormel Report) at 9 ("[N]either the United States nor the United Nations took action against Al Rajhi Bank or any member of the Al Rajhi family."); *id*. ("given the extensive and vigorous U.S. and U.N. response in the wake of 9/11, . . . if sufficient evidence linking Al Rajhi Bank or the Al Rajhi family to terrorism finance actually existed, the Bank, or members of the Al Rajhi family, would have been sanctioned or designated").

121.    The United Nations never sanctioned or took any other action against Al Rajhi Bank or any Al Rajhi family members for connections to terrorism.  *See* ARB Ex. 4 (Lormel Report) at 9 ("[N]either the United States nor the United Nations took action against Al Rajhi Bank or any member of the Al Rajhi family."); ARB Ex. 28 (Winer Dep. Tr.)at 160:16-18, 172:19-22 (agreeing that the United Nations never designated Al Rajhi Bank or any Al Rajhi family member).

122.    SAMA never sanctioned or took any other action against Al Rajhi Bank for connections to terrorism.  *See* ARB Ex. 2 (Hobayb Report) at 21-22.

123.    Plaintiffs' Corrected Averment identifies no evidence that any other governmental body anywhere has ever sanctioned or taken any other action against Al Rajhi Bank, any Al Rajhi Bank officer, director, or employee, or Al Rajhi family members for connections to terrorism.  *See, e.g.*, Pls. Aver. ¶¶ 182-83; Pls. Ex. 4 (Winer Report) at 94-95.

## VII.    After The 9/11 Attacks, Al Rajhi Bank Cooperated With SAMA And U.S. Requests And Investigations

124.    After the 9/11 Attacks, Al Rajhi Bank cooperated with SAMA's requests and instructions to report, monitor, or block accounts.  *See, e.g.*, Pls. Ex. 3 (Galloway Dep. Tr.) at 243:11-19, 346:7-347:13 and Errata at 243:15-16, 243:18, 346:8, 346:11, 346:25, 347:2, 347:7-8, 347:12; Pls. Ex. 1 (Abdullah Al Rajhi Dep. Tr.) at 66:13-24, 358:15-359:9 and Errata 66:24, 358:17, 358:22, 358:25 (explaining the Bank was "really proud of the work" it did after 9/11 to respond to requests and provide information "quickly"); ARB Ex. 8 (Nov. 16, 2002 Ltr. from Al Rajhi Bank to SAMA) at ARB-39559 (showing list of blocked accounts, including accounts of Osama bin Laden); ARB Ex. 62 (Oct. 24, 2001 faxes from Al Rajhi Bank) at ARB-14300-04 (reporting account data on individuals requested by SAMA).

125.    After the 9/11 Attacks, Al Rajhi Bank cooperated with investigations by the U.S. government, including by providing information through SAMA.  Pls Ex. 1 (Abdullah bin

Sulaiman Al Rajhi Dep. Tr.) at 358:15-359:9, 369:8-370:16 and Errata at 369:22, 370:15 (explaining the Bank was providing information to SAMA knowing it was being shared with the U.S. government, and was "really proud" of its efforts to respond and provide information quickly); *see also* ARB Ex. 4 (Lormel Report) at 19 ("I also have also not seen or been made aware of any evidence that Al Rajhi Bank failed to cooperate fully with any investigations conducted by either the Saudi government or the United States.").

126.    In jurisdictional discovery, Al Rajhi Bank produced 209 documents reflecting communications between the Bank and SAMA before and after the 9/11 Attacks.  *See* Erb Decl. ¶¶ 3-5; *see also* Opp. to Pls. 2d Mot. to Compel 11 (ECF No. 8935) (describing Bank's search for documents relating to post-9/11 investigations and audits, and communications between the Bank and SAMA); Order 4 (July 11, 2023), ECF No. 9210 (finding Bank's search "reasonable").

127.    These documents show the Bank was in compliance with SAMA's guidelines and regulations, and that the Bank was cooperating with SAMA's requests.  ARB Ex. 2 (Hobayb Report) at 22 (noting "the Bank was not in violation of SAMA regulations for maintaining these accounts."); Pls. Ex. 1 (Abdullah Al Rajhi Dep. Tr.) at 358:15-359:9 and Errata 358:17, 358:22, 358:25 (describing pride in Bank's efforts to cooperate with SAMA's requests and quickly provide information after 9/11).

128.    Plaintiffs have no evidence that SAMA's audits of Al Rajhi Bank during the relevant period ever found the Bank was not compliant with SAMA's guidelines and regulations, including those related to anti-money laundering.  *See* ARB Ex. 3 (Pasley Report) at 11 ("As far as I have seen, SAMA never determined that the Bank was materially noncompliant with SAMA's requirements."); ARB Ex. 2 (Hobayb Report) at 4 (noting that SAMA was a "rigorous regulator" that subjected Saudi banks to "robust anti-money laundering controls on par with global

standards."); Pls. Ex. 184 (Hobayb Dep. Tr.) at 36:12-13 (testifying that Saudi "banks are required to comply with [their] regulator [SAMA] and its regulations.").

129.    Plaintiffs have no evidence that routine internal or external audits of Al Rajhi Bank during the relevant period ever found the Bank was materially noncompliant with SAMA's guidelines and regulations or the Bank's internal policies.  *See* ARB Ex. 2 (Hobayb Report) at 18 ("I have not seen anything to indicate that Al Rajhi Bank … was noncompliant with auditing and regulatory standards and procedures."); *id*. at 20 (noting "no evidence has been presented that these external auditors flagged noncompliance by Al Rajhi Bank"); ARB Ex. 3 (Pasley Report) at 9 ("The fact that these audits failed to reveal significant issues is evident from the Bank's Annual Reports, which are public, and which discuss the audits."); *id*. ("Presumably — given no evidence to the contrary — these audits did not uncover any significant noncompliance."); *see also, e.g.*, Pls. Ex. 6 (1998 Al Rajhi Bank Ann. Report) at PDF p. 72 and Pls. Ex. 7 (1999 Al Rajhi Bank Ann. Report) at PDF p. 77 and Pls. Ex. 8 (2000 Al Rajhi Bank Ann. Report) at PDF p. 42 and ARB Ex. 16 (2001 Al Rajhi Bank Ann. Report) at PDF p. 74 (external auditors' reports for 1998-2001 identifying no noncompliance by the Bank with its internal policies or local law).

## VIII.    Sulaiman bin Abdulaziz Al Rajhi, One Of The Bank's Founders And Its Former Chairman, Is One Of The World's Leading Philanthropists And Strongly Condemned The 9/11 Attacks

130.    Sulaiman bin Abdulaziz Al Rajhi, one of the Bank's Founders and its former Chairman, came from humble beginnings to become one of the world's leading philanthropists, donating billions of dollars to charities around the world.  *See* ARB Ex. 36 (*Saudi Donates Billions to Charity*, Al Jazeera English (May 15, 2011), https://www.aljazeera.com/news/2011/5/15/saudi-donates-billions-to-charity); Pls. Ex. 1 (Abdullah Al Rajhi Dep.) at 255:11-256:1 and Errata 255:16, 255:24, 255:25; ARB Ex. 37(Emmie Martin and Tanza Loudenbeck, *20 Most Generous People in the World*, Business Insider (Oct 12, 2015) https://www.businessinsider.com/most-

generous-people-in-the-world-2015-10); ARB Ex. 1 (Dean Report) at 17 (describing Sulaiman Al Rajhi as "famously humble and generous" and "one of the most generous people in the world").

131.    Al Rajhi Bank and its officers and directors have consistently condemned the 9/11 Attacks. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 350:22-352:2 and Errata 351:4, 351:19 (Al Rajhi Bank's Chairman testifying that he and his father, the Bank's former Chairman Sulaiman bin Abdulaziz Al Rajhi, were shocked and saddened by the 9/11 Attacks). When Sulaiman bin Abdulaziz Al Rajhi heard about the 9/11 Attacks, he told his son, Abdullah bin Sulaiman Al Rajhi (then the Bank's General Manager, and currently its Chairman) that "this is murder. This is a crime." Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 350:22-351:4.

132.    Sulaiman bin Abdulaziz Al Rajhi abhorred terrorism, and told his son, Abdullah bin Sulaiman Al Rajhi "many, many times" that "if you as an individual kill one person, it's like you are killing the whole humanity." Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 351:4-17 and Errata 351:5.

133.    Sulaiman bin Abdulaziz Al Rajhi "is a religious person," but he opposes "radical or extremist belief[s]." Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 352:19-25; *see also* ARB Ex. 1 (Dean Report) at 17 ("[W]ithin al-Qaeda, Sulaiman Al Rajhi had a reputation as not being sympathetic to al-Qaeda's extreme views and instead as being an adherent of the non-violent, 'Quietist' branch of Salafism.").

134.    Sulaiman bin Abdulaziz Al Rajhi said "many times" that "he doesn't agree that Osama bin Laden or al-Qaeda [] are representing Islam or acting on behalf of Islam." Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 351:23-352:2.

135.    Sulaiman bin Abdulaziz Al Rajhi retired from his role as Chairman of the Board at Al Rajhi Bank in 2014, at the age of 86, due to his advanced age.  Pls. Ex. 3 (Galloway Dep. Tr.) at 292:9-21.

136.    Abdullah bin Sulaiman Al Rajhi was likewise shocked and saddened by the 9/11 Attacks.  *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 350:4-352:2 and Errata 350:19-21, 351:5, 351:19.

137.    Like his father, Abdullah bin Sulaiman Al Rajhi is not an "extremist," and he opposes violence and terrorism.  *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 352:13-18.

138.    Sulaiman bin Abdulaziz Al Rajhi and Abdullah bin Sulaiman Al Rajhi were dismissed as defendants in the 9/11 MDL litigation in 2010 for lack of personal jurisdiction.  *In re Terrorist Attacks on Sept. 11, 2001 ("Terrorist Attacks IV")*, 718 F. Supp. 2d 456, 485, 495 (S.D.N.Y. 2010) (dismissing claims against Sulaiman bin Abdulaziz Al Rajhi, a founder and former Chairman of the Bank, and Abdullah bin Sulaiman Al Rajhi, the Bank's Current Chairman), *aff'd sub nom. O'Neill v. Asat Tr. Reg. ("Terrorist Attacks VII")*, 714 F.3d 659, 675-76 (2d Cir. 2013), *cert denied* 134 S. Ct. 2870 (2014).

## IX.    None Of The Bank's Officers Or Directors Supported The 9/11 Attacks Or Other Terrorism

139.    Abdullah bin Sulaiman Al Rajhi, the Bank's current Chairman, who served as the Bank's General Manager and Managing Director during the relevant period, has never met Osama bin Laden or supported Osama bin Laden, Al Qaeda or other terrorists, or terrorism at all.  Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 353:7-10, 355:4-8, 356:4-10.

140.    Sulaiman bin Abdulaziz Al Rajhi, a founder of the Bank, and the Bank's Chairman during the relevant period, has never met Osama bin Laden or supported Osama bin Laden, Al

Qaeda or other terrorists, or terrorism at all. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 351:3-352:2, 352:18-353:5, 354:17-355:3 and Errata 351:5, 351:19 (stating that to the best of his knowledge Sulaiman bin Abdulaziz Al Rajhi has never supported Osama bin Laden, Al Qaeda or other terrorists, or terrorism in any form).

141.    No Al Rajhi Bank officer or director has ever supported Osama bin Laden, Al Qaeda or other terrorists, or terrorism in any form. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 355:4-8.

142.    Plaintiffs have no evidence that Sulaiman bin Abdulaziz Al Rajhi or Abdullah bin Sulaiman Al Rajhi ever directed any Bank officer or employee to take any action to support Al Qaeda or any terrorism against the United States, including the 9/11 Attacks. *See generally* Pls. Aver. (and in particular § IV (discussing Al Rajhi Bank and its "principals," but presenting no evidence of any direction from Sulaiman bin Abdulaziz Al Rajhi or Abdullah bin Sulaiman Al Rajhi to any Bank officer or employee to take any action to support Al Qaeda or any terrorism against the United States, including the 9/11 Attacks)).

143.    Plaintiffs have no evidence that any of Sulaiman bin Abdulaziz Al Rajhi, the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, the U.S.-based SAAR Foundation, Abdullah bin Sulaiman Al Rajhi, or any Al Rajhi Bank officer, director, or employee made any donation knowing or intending that the donation would be used or diverted to support Al Qaeda or any terrorism against the United States, including the 9/11 Attacks, or that any such purported knowledge or intent was shared with the Bank. *See generally* Pls. Aver. (and in particular § IV), Pls. Ex. 4 (Winer Report) (and in particular at § 11) & Pls. Ex. 38 (Kohlmann Report) (all failing to identify a single donation from the Bank in support of Al Qaeda or any terrorism against the United States, including the 9/11 Attacks); *see also* ARB Ex. 4 (Lormel Report) at 32-34

(explaining that the FBI's investigations into the U.S.-based SAAR Foundation, Al Rajhi Bank, and members of the Al Rajhi family found no credible evidence of links to terrorism, and that Plaintiffs' experts' allegations as to the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation are likewise insufficient to show terrorist finance); *see also* ARB Ex. 3 (Pasley Report) at 17 ("Given this fact, based on my experiences and expertise, I do not see how the Bank or, for that matter, individual donors, could have determined how and when and to what extent this large and prominent NGO was using a small portion of funds — wittingly or unwittingly — for illicit purposes.").

144.    Plaintiffs have no evidence tracing any donation from any of Sulaiman bin Abdulaziz Al Rajhi, the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, the U.S.-based SAAR Foundation, Abdullah bin Sulaiman Al Rajhi, or any Al Rajhi Bank director, officer, or employee to Al Qaeda, or for the financing, planning, or carrying out of the 9/11 Attacks. *See generally* Pls. Aver. (and in particular § IV), Pls. Ex. 4 (Winer Report) (and in particular at § 11) & Pls. Ex. 38 (Kohlmann Report) (all failing to identify a single donation from these individuals in support of Al Qaeda or any terrorism against the United States, including the 9/11 Attacks); *see also* ARB Ex. 4 (Lormel Report) at 32-34 (explaining that the FBI's investigations into the U.S.-based SAAR Foundation, Al Rajhi Bank, and members of the Al Rajhi family found no credible evidence of links to terrorism, and that Plaintiffs' experts allegations as to the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation are likewise insufficient to show terrorist finance).

145.    Plaintiffs' Corrected Averment fails to identify any evidence that any of Sulaiman bin Abdulaziz Al Rajhi, the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, the U.S.-based SAAR Foundation, Abdullah bin Sulaiman Al Rajhi, or any Al Rajhi Bank director,

officer or employee ever withdrew or transferred funds from accounts at Al Rajhi Bank to support the 9/11 Attacks. *See generally* Pls. Aver. (and in particular § IV), Pls. Ex. 4 (Winer Report) (and in particular at § 11) & Pls. Ex. 38 (Kohlmann Report) (all failing to identify a single transaction through Al Rajhi Bank that supported Al Qaeda or any terrorism against the United States, including the 9/11 Attacks); *see also* ARB Ex. 4 (Lormel Report) at 32-34 (explaining that the FBI's investigations into the SAAR Foundation, Al Rajhi Bank, and members of the Al Rajhi family found no credible evidence of links to terrorism, and that Plaintiffs' experts allegations as to the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation are likewise insufficient to show terrorist finance).

146.    Plaintiffs have no evidence that any of Sulaiman bin Abdulaziz Al Rajhi, the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, the U.S.-based SAAR Foundation, Abdullah bin Sulaiman Al Rajhi, or any Al Rajhi Bank director, officer, or employee knew or had reason to know, before the 9/11 Attacks, of any charity's connection to Al Qaeda or any terrorism or plot of terrorism against the United States, including the 9/11 Attacks, or that any such purported knowledge or intent was shared with the Bank. *See generally* Pls. Aver. (and in particular § IV), Pls. Ex. 4 (Winer Report) (and in particular at § 11) & Pls. Ex. 38 (Kohlmann Report) (all failing to identify any evidence that these individuals or entities knew of any charity's support for Al Qaeda or any terrorism against the United States, including the 9/11 Attacks, or that any such purported knowledge was shared with the Bank); *see also* ARB Ex. 4 (Lormel Report) at 32-34 (explaining that the FBI's investigations into the US-based SAAR Foundation, Al Rajhi Bank, and members of the Al Rajhi family found no credible evidence of links to terrorism, and that Plaintiffs' experts allegations as to the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation are likewise insufficient to show terrorist finance); ARB Ex. 3 (Pasley Report) at 17

("Given this fact, based on my experiences and expertise, I do not see how the Bank or, for that matter, individual donors, could have determined how and when and to what extent this large and prominent NGO was using a small portion of funds — wittingly or unwittingly — for illicit purposes.").

*    *    *

147.    Plaintiffs have no evidence that any money that was transferred through accounts at Al Rajhi Bank, including its U.S. correspondent account, reached Al Qaeda or supported the financing, planning, or carrying out of the 9/11 Attacks or any other terrorism against the United States.  Nor do Plaintiffs have any evidence that any donations made by Al Rajhi Bank or its officers and directors supported the financing, planning, or carrying out of the 9/11 Attacks or any other terrorism against the United States.  And Plaintiffs have no evidence that the Bank acted with any knowledge or intent to support Al Qaeda or the financing, planning, or carrying out of the 9/11 Attacks or any other terrorism against the United States.  *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Report); Pls. Ex. 38 (Kohlmann Report) (all failing to identify a single transaction through Al Rajhi Bank, or any donation by Al Rajhi Bank, showing knowing and intentional support by Al Rajhi Bank for Al Qaeda or any form of terrorism against the United States, including the 9/11 Attacks).

Dated:  May 7, 2024
        Washington, DC

Respectfully submitted,

**WHITE & CASE**

/s/ *Christopher M. Curran*
Christopher M. Curran
Nicole Erb
Nicolle Kownacki (*pro hac vice*)
Reuben J. Sequeira
Michael Mahaffey (*pro hac vice*)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005
Telephone:    + 1 202 626 3600
Facsimile:    + 1 202 639 9355
ccurran@whitecase.com
nerb@whitecase.com
nkownacki@whitecase.com
rsequeira@whitecase.com
michael.mahaffey@whitecase.com

*Counsel for Al Rajhi Bank*