IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Case No. 1:03-md-01570-GBD-SN |
| | ORAL ARGUMENT REQUESTED |

*This document relates to:*

*The Underwriting Members of Lloyd's Syndicate 2, et al. v. Al Rajhi Bank, et al.*, No. 16-cv-7853; *Aguilar, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09663; *Addesso, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09937; *Hodges, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-0117; *Aiken, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-00450; *Charter Oak Fire Insurance Co., et al. v. Al Rajhi Bank, et al.*, No. 17-cv-02651; *Abarca, et al., v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03887; *Arrowood Indemnity Co., et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03908; *Abedhajajreh v. Kingdom of Saudi Arabia*, No. 17-cv-06123; *Muenchener Rueckversicherungs-Gesellschaft Aktiengesellschaft in Muenchen, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-07914; and *Abbate, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-08617

## AL RAJHI BANK'S RESPONSE TO PLAINTIFFS'
## AVERMENT OF JURISDICTIONAL FACTS AND EVIDENCE
## AND/OR STATEMENT OF FACTS PURSUANT TO RULE 56.1

Al Rajhi Bank submits this response to Plaintiffs' Corrected Averment of Jurisdictional

Facts and Evidence and/or Statement of Facts Pursuant to Rule 56.1 (May 7, 2024), ECF No. 9764

("Plaintiffs' Corrected Averment"), correcting original Averment (Mar. 8, 2024), ECF No. 9624.

This Court ordered: "Plaintiffs will submit a statement of the facts and evidence on which they will rely in meeting their burden to establish personal jurisdiction over ARB. That statement shall be consistent with the form contemplated by Local Civil Rule 56.1 and shall be accompanied by all supporting documents and deposition excerpts on which the Plaintiffs will rely to meet their burden." Order (May 9, 2023), ECF No. 9077. Local Civil Rule 56.1 (Statements of Material Facts on Motion for Summary Judgment) requires a "short and concise statement" of "material facts" in "numbered paragraphs," and requires that each statement of material fact "must be followed by citation to evidence which would be admissible." Local Civ. R. 56.1 and Cmte. Note.

Instead, Plaintiffs submitted a 576-paragraph statement of averments, each of which is inconsistent with Local Civil Rule 56.1 in that it is:

- Not material to Plaintiffs' burden of establishing personal jurisdiction over the Bank;
- Not followed by a citation to supporting or admissible evidence,
- Not a short and concise statement of fact, but rather a legal argument or conclusion, or
- Some combination of the above.

The Court may "simply disregard" such statements. *SEC v. Gallison*, 588 F. Supp. 3d 509, 514 & n.1 (S.D.N.Y. 2022) (Daniels, J.).

Al Rajhi Bank's responses to each of Plaintiffs' 576 averments are set forth in the accompanying chart, entitled "Table 1. Al Rajhi Bank's Response to Plaintiffs' Corrected Averment." Notwithstanding the expansive and repetitive nature of Plaintiffs' Corrected Averment, Al Rajhi Bank has endeavored in good faith to respond in full to each of Plaintiffs' 576 averments. Each of Al Rajhi Bank's responses to Plaintiffs' averments is incorporated into the Bank's responses to Plaintiffs' other averments. To the extent the Bank does not dispute a particular averment, the Bank reserves the right to supplement its responses to Plaintiffs'

averments with the Bank's reply memorandum in support of the Bank's Renewed Motion to Dismiss and Motion for Summary Judgment.

In addition, pursuant to the Court's Orders at ECF No. 9026, ECF No. 9596, and ECF No. 9866, a complete list of the Bank's objections to the exhibits cited in Plaintiffs' Corrected Averment is set forth in ARB Ex. 60 ("Al Rajhi Bank's Objections to Plaintiffs' Corrected Averment Exhibits"). Further, for the convenience of the Court, the Bank includes here, in the accompanying "Table 1. Al Rajhi Bank's Response to Plaintiffs' Corrected Averment," a column briefly identifying on a paragraph-by-paragraph basis the Bank's objections (as set forth in ARB Ex. 60) to Plaintiffs' exhibits.

To the extent the Bank does not raise an objection to a particular exhibit or portion of an exhibit in ARB Ex. 60 (or Table 1), that is not a concession that the exhibit or portions of the exhibit constitute or contain admissible evidence. To the extent the Bank's Response to Plaintiffs' Corrected Averment refers to any of Plaintiffs' exhibits to which the Bank has raised an objection, such references are made solely to provide context to Plaintiffs' averments and are not a waiver of the Bank's objections to those exhibits. The Bank reserves the right to supplement its objections to Plaintiffs' exhibits with the Bank's reply memorandum in support of the Bank's Renewed Motion to Dismiss and Motion for Summary Judgment.

Dated:  June 6, 2024
        Washington, DC

Respectfully submitted,

## WHITE & CASE

/s/ Christopher M. Curran
Christopher M. Curran
Nicole Erb
Nicolle Kownacki (*pro hac vice*)
Reuben J. Sequeira
Michael Mahaffey (*pro hac vice*)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005
Telephone:    + 1 202 626 3600
Facsimile:    + 1 202 639 9355
ccurran@whitecase.com
nerb@whitecase.com
nkownacki@whitecase.com
rsequeira@whitecase.com
michael.mahaffey@whitecase.com

*Counsel for Al Rajhi Bank*

**AL RAJHI BANK'S CORRECTED RESPONSE TO PLAINTIFFS' AVERMENT OF JURISDICTIONAL FACTS AND EVIDENCE AND/OR STATEMENT OF FACTS PURSUANT TO RULE 56.1**

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Section I | |
| I. | The Second Circuit's Decision and Mandate (¶¶ 1-4) | **I. (heading)** <br><br> <u>Disputed as misleading and incomplete:</u> <br><br> Plaintiffs' averments in this Section omit important context concerning the procedural history of this litigation and the Second Circuit's decision. <br><br> (1) Other plaintiffs initially brought claims against Al Rajhi Bank in 2002. This Court (then the Honorable Richard J. Casey) dismissed all claims against the Bank in 2005 for failure to state a claim. *In re Terrorist Attacks on Sept. 11, 2001 ("Terrorist Attacks I")*, 349 F. Supp. 2d 765, 832-33 (S.D.N.Y. 2005). <br><br> (2) In 2013, the Second Circuit unanimously affirmed this Court's dismissal of all claims against the Bank. *O'Neill v. Al Rajhi Bank*, 714 F.3d 118, 124-25 (2d Cir. 2013). <br><br> (3) In 2014, the Supreme Court, following the recommendation of the United States Government, denied the plaintiffs' petition for a writ of certiorari. 573 U.S. 954 (2014); *see* Br. for the United States as Amicus Curiae 17-18, *O'Neill v. Al Rajhi Bank*, 573 U.S. 954 (2014) (No. 13-318) ("U.S. Amicus Br.") ("[A]llegations that the *charities* played an important role in facilitating al Qaeda's operations, without more, do not indicate that petitioners' injuries were the foreseeable result of *respondents'* provision of assistance and services to those charities."); *id.* at 11 n.4 ("[A]llegations that the charities held themselves out as bona fide organizations that conducted government-sanctioned activities . . . undercut any | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | inference that [Al Rajhi] Bank was aware of the charities' alleged support for terrorism."). | |
| | | (4) This Court also dismissed all claims against Sulaiman bin Abdulaziz Al Rajhi, a founder and former Chairman of Al Rajhi Bank, and Abdullah bin Sulaiman Al Rajhi, the current Chairman of Al Rajhi Bank, for lack of personal jurisdiction; the Second Circuit affirmed that dismissal and the Supreme Court denied the plaintiffs' petition for a writ of certiorari. *See In re Terrorist Attacks on Sept. 11, 2001 ("Terrorist Attacks IV")*, 718 F. Supp. 2d 456, 485, 495 (S.D.N.Y. 2010) (finding that plaintiffs' allegations failed to show Al Rajhi defendants "personally engaged in tortious conduct expressly aimed at the United States"), *aff'd sub nom. O'Neill v. Asat Tr. Reg. ("Terrorist Attacks VII")*, 714 F.3d 659, 675-76 (2d Cir. 2013), *cert denied* 134 S. Ct. 2870 (2014). | |
| | | (5) In 2016, Plaintiffs here, represented by some of the same counsel as counsel for the plaintiffs whose claims against the Bank were previously dismissed, brought substantially similar claims against Al Rajhi Bank in the Western District of Pennsylvania. Plaintiffs' case was transferred to this Court after the Judicial Panel on Multidistrict Litigation ruled that "highly similar claims against [the Bank] previously have been adjudicated during the course of the MDL proceedings," and this Court's ruling dismissing the Bank had been "affirmed on appeal." Order 2 (Oct. 6, 2016), ECF No. 3351. | |
| | | (6) Plaintiffs' Amended Complaint alleged that Al Rajhi Bank and Al Rajhi family members provided *indirect* support for Al Qaeda through "funds and financial services to numerous charitable organizations that operated as fronts for al Qaeda." Order 5 (Mar. 28, 2018), ECF No. 3947 (recounting allegations from Plaintiffs' | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Amended Complaint).  The Bank moved to dismiss under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. | |
| | | (7) In March 2018, this Court held that Plaintiffs' allegations that the Bank provided indirect support to Al Qaeda failed to establish specific personal jurisdiction over the Bank under Rule 12(b)(2). Order 12-13 (Mar. 28, 2018), ECF No. 3947.  The Court did not reach the Bank's motion to dismiss under Rule 12(b)(6). | |
| | | (8) In their appeal to the U.S. Court of Appeals for the Second Circuit, Plaintiffs cast their allegations in a different light, arguing that the Bank had provided not only *indirect* support, but "*direct*" support to Al Qaeda *itself*, including the 9/11 hijackers, with the *specific intent* to further Al Qaeda's terrorism against the United States. *See, e.g.*, Br. Pls.-Appellants 2, 55, *In re Terrorist Attacks on Sept. 11, 2001*, No. 18-1201 (2d Cir. Jan. 18, 2019), ECF No. 127; *see also, e.g.*, *id.* at 2 (stating the Bank and Al Qaeda had formed a purported "operational partnership"); *id.* at 7 ("ongoing and close operational relationship between ARB and al-Qaeda"); *id.* at 18 ("unusually close, substantial nexus between ARB and al-Qaeda"). Plaintiffs' assertions of direct support, however, were not included in their Amended Complaint.  *See, e.g.*, Br. for Def.-Appellee 20, ECF No. 153 (noting some assertions in Plaintiffs' brief were "not in the Amended Complaint at all"); *id.* at 31 ("[T]he Amended Complaint, stripped of the mischaracterizations in Plaintiffs' brief, fails even to allege 'facts that constitute strong circumstantial evidence of conscious misbehavior' by the Bank."); *id.* at 35 (describing Plaintiffs' "implausible speculative leap" in characterizing testimony); *id.* at 41 (noting "mischaracteriz[ation]" in Plaintiffs' brief). | |
| | | (9) The Second Circuit emphasized and reiterated that "[p]roviding indirect funding to an organization that was openly hostile to the United States does not constitute . . . intentional conduct that is expressly aimed . . . at residents of the United States." | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | *Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank*, 779 F. App'x 66, 68 (2d Cir. 2019) (citation omitted).<br><br>(10)    Referring to Plaintiffs' exaggerated assertions of purported "direct" and "operational" support with "specific intent," however, the Second Circuit found that "the support alleged here, in conjunction with this [purported] specific intent, we believe is 'more direct and one step closer to al Qaeda' when compared to the support we have previously found inadequate." *Id.* at 69.<br><br>(11)    The Second Circuit reversed this Court's dismissal for lack of personal jurisdiction and remanded the case for jurisdictional discovery. *Id.* at 68.  Although the Bank raised arguments under Rule 12(b)(6), the Second Circuit did not reach them. | |
| 1 | On October 15, 2019, the Second Circuit Court of Appeals reinstated Plaintiffs' claims against ARB and remanded ARB for jurisdictional discovery. | 1.<br><br>Disputed as misleading and incomplete for the reasons stated in response to Section I (heading). | |
| 2 | The Second Circuit explained that Plaintiffs "principally allege that Al Rajhi Bank provided financial services and donations to charities that it knew financially supported al Qaeda and provided financial services to known extremist operatives.  They further allege Al Rajhi Bank's provision of financial services was done with the specific intent to further al Qaeda's terrorism against the United States." *Underwriting Members of Lloyd's Syndicate 2 v.* | 2.<br><br>Disputed as misleading and incomplete for the reasons stated in response to Section I (heading). | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | *Al Rajhi Bank*, 779 F. App'x 66, 68 (2d Cir. 2019) ("Remand Order"). | | |
| 3 | The Second Circuit held that Plaintiffs had proffered facts sufficient to establish ARB's intent, for purposes of the Second Circuit's purposeful direction test in terrorism cases, finding that Plaintiffs' "allegations related to Al Rajhi Bank's specific intent to further terrorism in the United States, however, distinguishes the present case from those in which we have not granted personal jurisdiction and warrants jurisdictional discovery. Construing all reasonable inferences in favor of the Plaintiffs-Appellants, the support alleged here, in conjunction with this specific intent, we believe is 'more direct and one step closer to al Qaeda' when compared to the support we have previously found inadequate." *Id.* at 68-69 (*citing In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 678 (2d Cir. 2013) ("*Terrorist Attacks VII*")). | 3.<br><br><u>Disputed as misleading and incomplete for the reasons stated in response to Section I (heading).</u> | |
| 4 | Second Circuit directed that jurisdictional discovery should be conducted to develop the factual | 4. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | record on four issues: "'(1) when the alleged support was given to al Qaeda, (2) what support was given, (3) whether the support was 'earmarked' for use in specific schemes or attacks not directed at the United States, or (4) specifically how these defendants were involved in the process of providing support to al Qaeda.'" *Underwriting Members of Lloyd's Syndicate 2*, 779 F. App'x at 69 (*quoting Terrorist Attacks VII*, 714 F.3d at 678-79). | <u>Disputed as misleading and incomplete for the reasons stated in response to Section I (heading).</u> | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | **Section II** | |
| II. | **Overview of ARB's Knowing, Intentional, Extensive, and Critical Support to Al Qaeda (¶¶ 5-11)** | **II. (heading)**<br><br>Disputed as conclusory; does not cite evidence:<br><br>(1) Plaintiffs' averment that Al Rajhi Bank provided "knowing, intentional, extensive, and critical support to Al Qaeda" is an unsupported legal conclusion to which no response is required.<br><br>(2) Plaintiffs cite no evidence in the averments in Section II to support their conclusory averments.<br><br>Immaterial:<br><br>(1) Plaintiffs' conclusory averments in Section II are, in any event, immaterial to show that Al Rajhi Bank expressly aimed intentional, tortious conduct at the United States, for the reasons stated below in response to Sections IV – XIV (headings). | |
| 5 | Although discovery has afforded Plaintiffs only a limited window into ARB's relationships with a subset of al Qaeda's key fronts, and financial facilitators, *see infra* at § III, that limited discovery evidences that ARB served as a central, essential, critical, and knowing component of al Qaeda's funding and financial engine, in the years leading up to an through the September 11th attacks. As further detailed below: | **5.**<br><br>Immaterial:<br><br>(1) Immaterial with respect to Plaintiffs' characterization of discovery as a "limited window" for the reasons stated in response to Section III (heading) and the averments in Section III.<br><br>(2) Immaterial with respect to Plaintiffs' averment of "ARB's relationships with a subset of al Qaeda's key fronts, and financial facilitators" for the reasons stated in response to Sections IV – XIV (headings).<br><br>(3) Immaterial with respect to Plaintiffs' averment that Al Rajhi Bank "served as a central, essential, critical, and knowing component of al Qaeda's funding and financial engine" for the reasons stated in response to Sections IV – XIV (headings). | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Disputed as vague and conclusory; does not cite and is not supported by the evidence: | |
| | | (1) Plaintiffs' averment that Al Rajhi Bank had relationships with "a subset of al Qaeda's key fronts, and financial facilitators" is vague and conclusory and does not cite and is not supported by evidence. | |
| | | (2) Plaintiffs' statement that discovery "evidences that ARB served as a central, essential, critical, and knowing component of al Qaeda's funding and financial engine" is conclusory and does not cite and is not supported by evidence. | |
| | | Disputed as controverted by the evidence: | |
| | | (1) Plaintiffs' characterization of discovery as a "limited window" is controverted by the evidence for the reasons stated in response to Section III (heading) and the averments in Section III. | |
| | | (2) Plaintiffs' averment of "ARB's relationships with a subset of al Qaeda's key fronts, and financial facilitators" is controverted by the evidence for the reasons stated in response to Sections IV – XIV (headings) and the averments in Sections IV – XIV. | |
| | | (3) Plaintiffs' averment that Al Rajhi Bank "served as a central, essential, critical, and knowing component of al Qaeda's funding and financial engine" is controverted by the evidence for the reasons stated in response to Sections IV – XIV (headings) and the averments in Sections IV – XIV. | |
| | | Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of "limited" jurisdictional discovery, for the reasons discussed in response to Section III (heading) and the averments in Section III. | |
| 6 | ARB established, maintained, and operated *hundreds* of bank accounts for al Qaeda's principal | 6.<br><br>Immaterial: | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | sponsors and financial facilitators. These accounts were opened and operated in ways that violated international money laundering standards and ARB's own (nominal) Anti-Money Laundering ("AML") and Know Your Customer ("KYC") requirements. | (1) Immaterial with respect to Plaintiffs' averment that Al Rajhi Bank "established, maintained, and operated *hundreds* of bank accounts for al Qaeda's principal sponsors and financial facilitators" for the reasons stated in response to Sections IV – XIV (headings). <br><br> (2) Immaterial with respect to Plaintiffs' averment that Al Rajhi Bank "violated international money laundering standards and ARB's own (nominal) Anti-Money Laundering ('AML') and Know Your Customer ('KYC') requirements" for the reasons stated in response to Section IX (heading). <br><br> – In particular, Al Rajhi Bank did not and could not "violate[]" international banking standards, which the Bank was only obligated to follow insofar as they were reflected in the guidelines and regulations of its regulator, the Saudi Arabian Monetary Authority (SAMA). *See* ARB. Ex. 2 (Hobayb Rep.) at 4. <br><br> (3) Immaterial with respect to the number of accounts held at the Bank by any individual or entity, as stated in response to Section IX (heading). <br><br> <u>Disputed as conclusory and vague; does not cite evidence:</u> <br><br> (1) Plaintiffs' averment that Al Rajhi Bank held accounts for "al Qaeda's principal sponsors and financial facilitators" is vague, undefined, and conclusory. Plaintiffs do not define Al Qaeda's "principal sponsors and financial facilitators." <br><br> (2) Further, Al Rajhi Bank did not provide services to any customer identified in Plaintiffs' Averment that was designated before the 9/11 Attacks under any sanctions regime for connections to terrorism. *See* ARB Ex. 28 (Winer Dep. Tr. And Errata) at 53:5-55:2; *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 126:12-13, 130:21-131:2. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (3) In addition, Plaintiffs have no evidence that during the relevant period Al Rajhi Bank knew or had reason to know of any account user's connection to any terrorism or plot of terrorism against the United States, including the 9/11 Attacks. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); *see also* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 357:11-17; ARB Ex. 3 (Pasley Rep.) at 16 ("Given my experience with banking practices and regulations pre-9/11, I find it is very plausible that a bank would not know if its NGO customer accounts were being used for terrorism financing."). | |
| | | (4) Plaintiffs' statement that Al Rajhi Bank opened and operated accounts in violation of international money laundering standards and the Bank's own AML and KYC requirements is conclusory and not supported by evidence for the reasons discussed in Section IX (heading). | |
| | | Disputed as controverted by the evidence: | |
| | | (1) Plaintiffs' averment that Al Rajhi Bank "established, maintained, and operated hundreds of bank accounts for al Qaeda's principal sponsors and financial facilitators" is controverted by the evidence for the reasons stated in response to Sections IV – XIV (headings) and the averments in Sections IV – XIV. | |
| | | (2) Plaintiffs' averment that Al Rajhi Bank "violated international money laundering standards and ARB's own (nominal) Anti-Money Laundering ('AML') and Know Your Customer ('KYC') requirements" is controverted by the evidence for the reasons stated in response to Section IX (heading) and the averments in Section IX, particularly ¶¶ 303 and 306. | |
| 7 | ARB moved *billions* of Saudi Riyals ("SR") through those accounts during the critical period | 7.<br><br>Immaterial: | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | leading up to 9/11 on behalf of al Qaeda's principal sponsors and financial facilitators, to regional offices that operated as key interfaces with al Qaeda. | (1) Immaterial with respect to Plaintiffs' averment that Al Rajhi Bank's customers purportedly transferred money "to regional offices" outside of Saudi Arabia for the reasons stated in response to Section VIII (heading).<br><br>(2) Immaterial with respect to the amount of money transferred through Al Rajhi Bank for the reasons stated in response to Section VIII (heading).<br><br>– In particular, immaterial because of the purported "*billions* of Saudi Riyals ('SR')" averred in this paragraph, Plaintiffs' Averment does not show that *a single transaction* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br><u>Disputed as conclusory and vague; does not cite evidence:</u><br><br>(1) Plaintiffs' averment that Al Rajhi Bank held accounts for "al Qaeda's principal sponsors and financial facilitators" is vague, undefined, and conclusory for the reasons discussed above in response to ¶ 6, and does not cite and is not supported by evidence.<br><br>(2) Plaintiffs' characterizations regarding "regional offices" and "key interfaces with al Qaeda" are vague, conclusory and not supported by evidence. | |
| 8 | ARB afforded al Qaeda's principal sponsors and financial facilitators unfettered license to use their accounts to engage in highly irregular transactions and activities that violated international money laundering standards, thus facilitating al Qaeda's access to the global financial system in ways that | 8.<br><br><u>Immaterial:</u><br><br>(1) Plaintiffs' averment is immaterial for the reasons stated in response to Sections IV – XIV (headings).<br><br><u>Disputed as vague and conclusory; does not cite and is not supported by evidence:</u><br><br>(1) Plaintiffs' characterization of Al Qaeda's "principal sponsors and financial facilitators" is vague and conclusory for the reasons | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
|  | would not have been possible via accounts at other banks. | discussed above in response to ¶ 6, and does not cite and is not supported by the evidence. <br><br>(2) Plaintiffs' averment that Al Rajhi Bank afforded these purported individuals and entities "unfettered license to use their accounts in highly irregular transactions and activities that violated international money laundering standards" is vague, conclusory, and not supported by evidence. <br><br>(3) Plaintiffs' averment that any actions of Al Rajhi Bank facilitated "al Qaeda's access to the global financial system in ways that would not have been possible via accounts at other banks" is conclusory and not supported by evidence. <br><br><u>Disputed as false and misleading; controverted by the evidence:</u> <br><br>(1) Plaintiffs' averments are controverted by the evidence for the reasons stated in response to the averments in Sections IV – XIV. <br><br>(2) Plaintiffs' assertion that Al Rajhi Bank "violated" international banking standards is false and misleading. <br><br>(3) In particular, Al Rajhi Bank did not and could not "violate[]" international banking standards, which the Bank was only obligated to follow insofar as they were reflected in the guidelines and regulations of its regulator, the Saudi Arabian Monetary Authority (SAMA). *See* ARB. Ex. 2 (Hobayb Report) at 4. <br><br>(4) Further, Plaintiffs' averment that Al Rajhi Bank "violated international money laundering standards" is controverted by the evidence for the reasons stated in response to Section IX (heading) and the averments in Section IX, particularly ¶¶ 303 and 306. |  |
| 9 | ARB also allowed individual charity officials and proxies to move staggering sums of money through their personal accounts, | 9. <br><br><u>Immaterial:</u> |  |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | where ARB plainly knew the accounts were being used to carry out transactions unrelated to the individuals' personal affairs, and were instead being used to carry out transactions for charities and supporters who had been implicated in terrorist activities. This activity intensified at moments when the charities were under scrutiny for their involvement in terrorism, and enabled al Qaeda and its sponsors to mask the origin of the funds. | (1) Plaintiffs' averment is immaterial for the reasons stated in response to Sections IV – XIV (headings), and particularly in response to Sections V, VIII, and IX (headings).<br><br>(2) In particular, immaterial because, during the relevant period, charity officials routinely collected donations and handled charitable funds on behalf of charities for which they were officers. *See* ARB Ex. 2 (Hobayb Report) at 30-31; ARB Ex. 5 (Ltrs. from KSA Gen. Pres. of Scholarly Research) at ARB-38774-75 (letter from a Saudi official instructing potential donors to provide aid directly "to Aqil" rather than through Al Haramain, indicating that the money deposited into Aqil's account at the Bank was likely the result of an officially sanctioned practice and would not have raised suspicions at the Bank).<br><br>Disputed as conclusory and vague; does not cite and is not supported by evidence:<br><br>(1) Plaintiffs' averment in this paragraph is conclusory and not supported by the evidence for the reasons discussed above in response to ¶ 6.<br><br>(2) Plaintiffs' characterization of "staggering sums" of money is vague, undefined, conclusory, and not supported by evidence.<br><br>(3) Plaintiffs' averment that "ARB plainly knew the accounts were being used to carry out transactions unrelated to the individuals' personal affairs, and were instead being used to carry out transactions for charities and supporters who had been implicated in terrorist activities" is conclusory and not supported by evidence.<br><br>(4) Plaintiffs' averment that any action by the Bank "enabled al Qaeda and its supporters to mask the origin of the funds" is conclusory, and Plaintiffs cite to no evidence supporting that assertion. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (5) Plaintiffs' averment that "[t]his activity intensified at moments when the charities were under scrutiny for their involvement in terrorism, and enabled al Qaeda and its sponsors to mask the origin of the funds" is conclusory and not supported by evidence.<br><br>Disputed as controverted by the evidence:<br><br>(1) Plaintiffs' averment is controverted by the evidence as stated in response to the averments and headings in Sections V, VIII, and IX. | |
| 10 | ARB also maintained and operated accounts for the charity committee/foundation of ARB's Chairman, Suleiman al Rajhi, and some twenty accounts for employees of that committee/foundation, which were used to send funds to principal al Qaeda fronts and supporters. | 10.<br><br>Immaterial:<br><br>(1) Plaintiffs' averments as to the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation are immaterial for the reasons stated in response to Sections IV, VI, and X (headings).<br><br>Disputed as conclusory and vague; does not cite to evidence:<br><br>(1) Plaintiffs' reference to Suleiman bin Abdulaziz al Rajhi's "committee/foundation" is ambiguous and vague. There is no basis to conflate the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the U.S.-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh.<br><br>(2) Plaintiffs' averment that accounts at the Bank "were used to send funds to principal al Qaeda fronts and supporters" is conclusory and cites to no evidence.<br><br>(3) Plaintiffs' characterization of Al Qaeda's "fronts and supporters" is vague and conclusory. Plaintiffs do not define Al Qaeda's "fronts and supporters," nor do they provide evidence that the Bank held accounts for any such individuals or entities.<br><br>Disputed as controverted by the evidence: | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
|  |  | (1) Plaintiffs' averment that Al Rajhi Bank used accounts for the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation and the Foundation's employees "to send funds to principal al Qaeda fronts and supporters" is controverted by the evidence as stated in response to Sections IV, VI, and X (headings) and the averments in Sections IV, VI, and X. |  |
| 11 | ARB also played a central role in laundering funds for Suleiman al Rajhi, through a complex web of overlapping entities he established in the United States to fund terrorism, including through a "Payable Through" account ARB created at Chase Manhattan Bank in the United States. These mechanisms operated to shroud the source and destination of funds transmitted to al Qaeda proxies, including funds originating from ARB Chairman Suleiman al Rajhi in particular. | 11.<br><br>Immaterial:<br><br>(1) Plaintiffs' averments as to Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons stated in response to Sections IV-XIV (headings), and particularly in response to Sections IV, VI, and XIII (headings).<br><br>(2) Plaintiffs' averment as to a "Payable Through" account at Chase Manhattan Bank is immaterial for the reasons stated in response to Section XI (heading).<br><br>(3) Immaterial to the extent that Plaintiffs aver that processing transactions through a payable-through account at Chase Manhattan reveals improper intent from the Bank, given that the use of payable-through accounts was common during the relevant period. *See* ARB Ex. 2 (Hobayb Rep.) at 32-33 (discussing the prevalence and convenience of payable-through accounts during the relevant period). Moreover, Plaintiffs have no evidence that any funds in Al Rajhi Bank's correspondent account at Chase Manhattan were used for an improper purpose, including planning, carrying out, or financing terrorism against the United States. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.).<br><br>Disputed as conclusory; does not cite and is not supported by evidence: |  |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (1) Plaintiffs' characterization of Al Rajhi Bank playing "a central role in laundering funds for" Sulaiman bin Abdulaziz Al Rajhi is conclusory and not supported by any evidence. | |
| | | (2) Plaintiffs' averment as to a "complex web of overlapping entities" is vague and conclusory, and Plaintiffs cite to no evidence supporting that assertion. | |
| | | (3) Plaintiffs' averment that Sulaiman bin Abdulaziz Al Rajhi established entities in the United States "to fund terrorism" is conclusory, and Plaintiffs cite to no evidence supporting that assertion. | |
| | | (4) Plaintiffs' reference to "al Qaeda proxies" is vague and not defined. | |
| | | <u>Disputed as controverted by the evidence:</u> | |
| | | (1) Plaintiffs' averment that Sulaiman bin Abdulaziz Al Rajhi engaged in tortious conduct relating to terrorist finance is controverted by the evidence for the reasons stated in response to Sections IV – XIV (headings) and the averments in Sections IV – XIV, and particularly in response to Sections IV, VI and XIII (headings) the averments in Sections IV, VI, and XIII. | |
| | | (2) Plaintiffs' averment that Al Rajhi Bank and Sulaiman bin Abdulaziz Al Rajhi engaged in tortious conduct relating to terrorist finance through a payable through account at Chase Manhattan Bank is controverted by the evidence for the reasons stated in response to Section XI (heading) and the averments in Section XI. | |

| Para. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | **Section III** | |
| **III.** | **Jurisdictional Discovery (¶¶ 12-27)** | **III. (heading)** <br><br> <u>Disputed as immaterial:</u> <br><br> (1) The averments in Section III of Plaintiffs' Averment are controverted by the evidence and immaterial to support the legal conclusion that the Bank expressly aimed intentional, tortious conduct at the United States. <br><br> (2) Plaintiffs do not show that any money transferred through accounts at Al Rajhi Bank reached Al Qaeda or financed the 9/11 Attacks. The allegations in this section, even if true, do not show that Al Rajhi Bank took any tortious acts related to Al Qaeda, the 9/11 Attacks, or the United States. <br><br> (3) As detailed in the Bank's brief in support of its Renewed Motion to Dismiss and Motion for Judgement for Lack of Personal Jurisdiction, jurisdictional discovery confirmed that Al Rajhi Bank did not support Al Qaeda or known extremist operatives, or have "specific intent" to support terrorist attacks against the United States, including the 9/11 Attacks. *See* ARB Br. 8-13. <br><br> <u>Disputed as controverted by the evidence:</u> <br><br> (1) To the extent Plaintiffs' averments in Section III attempt to excuse Plaintiffs' lack of evidence by complaining that jurisdictional discovery was somehow not sufficiently extensive, that excuse is controverted by the evidence. As described in detail below, jurisdictional discovery here lasted nearly three years and was expansive, as it included: document production responsive to dozens of requests; a deposition of the Bank's 30(b)(6) representative; an apex deposition of the Bank's Chairman; non-party discovery, including into the FBI's | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | and CIA's decades-long investigations into the 9/11 Attacks; and expert discovery.<br><br>(2) Plaintiffs served the Bank with two sets of document requests, covering 124 distinct requests and subparts. *See* Pls. 1st Mot. Compel Ex. A (Jul. 30, 2021), ECF No. 6996-3 ("Pls. First Set of RFPs"); Pls. 3d Mot. To Compel Ex. 1 (Apr. 19, 2023), ECF No. 9040-1.<br><br>(3) Al Rajhi Bank produced 1,084 responsive documents, totaling 42,250 pages. The Bank's production included, among other documents:<br><br>   &ndash; 508 statements of accounts, including 440 charity customer accounts including every account request made by Plaintiffs and permitted by the Court;<br><br>   &ndash; 328 know-your-customer files totaling 3,767 pages, including communications between the Bank and the relevant customers.<br><br>   &ndash; 209 documents reflecting communications between the Bank and SAMA before and after 9/11; and<br><br>   &ndash; contemporaneous letters from Sulaiman bin Abdulaziz Al Rajhi, establishing that he had resigned from the boards of IIRO and Sanabel as early as 1992.<br><br>   *See* Erb Decl. ¶ 3-5; Pls. Ex. 199 (Sheikh Sulaiman IIRO resignation letters) at ARB-39593-604.<br><br>(4) Plaintiffs challenged the Bank's searches and productions of documents relating to: (i) purported donations by the Bank and its senior leadership to Al Haramain and IIRO; (ii) communications between the Bank and Al Haramain and IIRO; (iii) the Bank's emails; and (iv) post-9/11 investigations and audits. *See* Order 4-8 (July 11, 2023), ECF No. 9210 ("July 11, | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | 2023 Order"). Magistrate Judge Netburn denied Plaintiffs' motion to compel on those issues, holding that the Bank's searches were "reasonable." *Id.*<br><br>(5) Plaintiffs took a seven-hour deposition of the Bank's Rule 30(b)(6) representative, James Galloway, who was prepared to answer questions on all 128 distinct topics and subtopics noticed by Plaintiffs. *See* Ltr. 1 (May 18, 2023), ECF No. 9096.<br><br>(6) Plaintiffs also took a seven-hour apex deposition of the Bank's current Chairman, Abdullah bin Sulaiman Al Rajhi. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.).<br><br>(7) Plaintiffs produced to the Bank more than 2.4 million pages of documents that they obtained from other parties and non-parties in the course of this multi-district litigation. *See* Ltr. Mot. 1-2 (Apr. 11, 2023), ECF No. 9002.<br><br>(8) Plaintiffs subpoenaed, and obtained documents from the FBI and the CIA. *See* ARB Exs. 69 (Plaintiffs' Subpoena on CIA); 70 (Pls. Subpoena on FBI).<br><br>– Plaintiffs' subpoena on the CIA sought documents — including intelligence reports — concerning Al Rajhi Bank and Al Rajhi family members; individuals including Abdullah Misfer, Abdul Aziz al Khereiji, and Saleh al Hussayen; any terrorism finance-related inquiries into Al Rajhi Bank or members of the Al Rajhi family; Al Rajhi Bank's purported links to Soliman al Buthe and Abdulaziz al Omari; and Al Rajhi Bank's purported links to a "Hamburg, Germany al Qaeda terror cell." ARB Ex. 69 (Pls. Subpoena on CIA) at 3-5.<br><br>– Plaintiffs' subpoena on the FBI sought documents concerning Al Rajhi Bank's alleged connections to Al Qaeda, Al Qaeda charity "front organizations" or "Islamic | |

| Para. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | extremists"; Al Rajhi family members, Abdul Aziz al Khereiji, Abdullah Misfer, and Saleh al Hussayen; documents concerning terrorism financing, support, or money laundering investigations concerning Al Rajhi Bank or the Al Rajhi family; any investigation, audit, examination, or inquiry concerning the 9/11 Attacks which references Al Rajhi Bank or the Al Rajhi family; any investigation, inquiry, examination, or audit relating to the 9/11 hijackers which references Al Rajhi Bank or the Al Rajhi family; any investigation, inquiry, examination, or audit relating to the SAAR Network-related individuals and entities which references Al Rajhi Bank or the Al Rajhi family. *See* ARB Ex. 70 (Pls. Subpoena on FBI) at 4-5. | |
| | | (9) Plaintiffs subpoenaed, and obtained documents from, the Bank's U.S. correspondent bank, J.P. Morgan Chase Bank, N.A. (during the relevant period, Chase Manhattan Bank) ("JPM"). *See* ARB Ltr. Mot. to Quash at Ex. A (Mar. 2, 2023), ECF 8897. Plaintiffs' subpoena sought "all records" relating to "all accounts" held at JPM by Al Rajhi Bank, its former Chairman Sulaiman bin Abdulaziz Al Rajhi, or the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, including "[a]ny and all records relating to any banking and/or financial transactions involving" any such accounts. *Id.* at 2-3. Plaintiffs' subpoena also sought "[a]ny and all records relating to the establishment of a correspondent banking relationship between" the Bank and JPM, including any of JPM's parents, affiliates, subsidiaries, employees, officers, and so on. *Id.* | |
| | | (10) Plaintiffs' Averment shows that JPM produced hundreds of pages of documents, spanning from 1992 and continuing at least until 2020. *See* Pls. Aver. ¶¶ 438-39 (citing Pls. Ex. 138). | |

| Para. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (11) Plaintiffs produced two expert reports, totaling 258 pages, from purported experts Jonathan Winer and Evan Kohlmann. Pls. Exs. 4, 38. | |
| | | (12) Al Rajhi Bank submitted four rebuttal expert reports. ARB Exs. 1-4. Plaintiffs deposed each of the Bank's experts. | |
| | | (13) To the extent Plaintiffs aver that they have not had an opportunity to conduct discovery as to Al Rajhi Bank's payable-through account, this averment is controverted by the evidence for the reasons stated in response to ¶ 454. | |
| | | (14) Jurisdictional discovery concluded on February 9, 2024, with no discovery motions pending. | |
| | | <u>Disputed as contrary to Rule 56 of the Federal Rules of Civil Procedure, Local Civil Rule 56.1, and this Court's Order.</u> | |
| | | (1) The Court ordered that "Plaintiffs will submit a statement of the facts and evidence on which they will rely in meeting their burden to establish personal jurisdiction over ARB. That statement shall be consistent with the form contemplated by Local Civil Rule 56.1 and shall be accompanied by all supporting documents and deposition excerpts on which the Plaintiffs will rely to meet their burden." Order 2 (May 9, 2023), ECF No. 9077 ("May 9, 2023 Order"). | |
| | | (2) Local Civil Rule 56.1(d) requires that, "Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible set forth as required by Fed. R. Civ. P. 56(c)." Local Civil Rule 56.1(d). | |
| | | (3) Rule 56 of the Federal Rules of Civil Procedure requires, "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of | |

| Para. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|-------|---------------------|--------------------------|--------------------------|
|  |  |  |  |
|  |  | materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). |  |
|  |  | (4) The averments in Section III of Plaintiffs' Averment fail to comply with the Court's May 9, 2023 Order, Local Rule 56.1, and Rule 56 of the Federal Rules of Civil Procedure. |  |
|  |  | – The averments in Section III do not present "facts and evidence" on which Plaintiffs "rely in meeting their burden to establish personal jurisdiction over" the Bank. Instead, the averments in Section III rehash and rewrite the history of jurisdictional discovery, in an attempt to excuse Plaintiffs' *lack* of "facts and evidence" needed to "meet their burden to establish personal jurisdiction over" the Bank. Order 2 (May 9, 2023), ECF No. 9077 ("May 9, 2023 Order") |  |
|  |  | – Responses from the Bank to the paragraphs in this section are thus not required. |  |
| 12 | On remand, ARB initially resisted discovery altogether, filing a renewed motion to dismiss on alternative grounds. *See* ECF Nos. 5384-5385. This Court denied that motion. *See* March 26, 2021 Opinion & Order at ECF No. 6681. | 12.<br><br>Disputed as immaterial for the reasons discussed above in response to Section III (heading).<br><br>Disputed as contrary to Rule 56 and Local Rule 56.1 for the reasons discussed above in response to Section III (heading); no response is required.<br><br>Disputed as contrary to the evidence: |  |

| Para. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (1) The Bank did not "resist[] discovery altogether" on remand. The Bank filed a renewed motion for consideration of its pending motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Bank's renewed motion was premised on the fact that this Court had previously dismissed nearly identical allegations against the Bank for failure to state a claim. *Terrorist Attacks I*, 349 F. Supp. 2d at 832-33. The Second Circuit affirmed that dismissal. *O'Neill*, 714 F.3d at 124-25. And after seeking the Solicitor General's views, and consistent with those views, the Supreme Court denied the plaintiffs' petition for a writ of certiorari. 134 S. Ct. 2870 (2014). | |
| | | (2) Magistrate Judge Netburn declined to consider the Bank's renewed motion and directed the Parties to begin jurisdictional discovery. *See* Order 2, 10-11 (Mar. 26, 2021), ECF No. 6681. The Bank filed Objections to the Magistrate Judge's Order, urging this Court to dismiss all claims against the Bank because prior decisions by this Court and the Second Circuit foreordain dismissal for failure to state a claim. Objs. 1-2 (Apr. 9, 2021), ECF No. 6724. Those Objections remain pending before this Court. | |
| | | (3) In the meantime, the Bank dutifully completed its discovery obligations, without seeking a stay of discovery pending resolution of its Objections. The Parties conducted jurisdictional discovery beginning April 2021. | |
| 13 | On May 11, 2021, Plaintiffs served ARB with Plaintiffs' First Set of Consolidated Jurisdictional Requests for Production of Documents Directed to Al Rajhi Bank. *See* ECF No. 6996-3. On June 10, | 13. <br><br> <u>Disputed as immaterial for the reasons discussed above in response to Section III (heading).</u> | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | 2021, ARB served its Responses and Objections to Plaintiffs' First Set of Consolidated Jurisdictional Requests. ECF No. 6996-5. As this Court observed, "[o]f the 58 requests, ARB indicated that it would not conduct any searches for 47 of them," and "also limited what it would search for on the other 11." *See* November 22, 2021 Order, ECF No. 7378, at 2 ("Discovery Order No. 1"). | <u>Disputed as contrary to Rule 56 and Local Rule 56.1 for the reasons discussed above in response to Section III (heading); no response is required.</u><br><br><u>Disputed as incomplete:</u><br><br>(1) Magistrate Judge Netburn denied 20 of Plaintiffs' requests and limited another. *See* Order 8-21 (Nov. 22, 2021), ECF No. 7378 ("Nov. 22, 2021 Order").<br><br>(2) Magistrate Judge Netburn also limited the appropriate time period for discovery. Plaintiffs requested documents from the period starting as early as January 1, 1992 for certain requests, and extending to December 31, 2004 for all requests. *See* Nov. 22, 2021 Order 6. Magistrate Judge Netburn set the discovery period as beginning January 1, 1998 for all requests and ending December 31, 2002 for most requests, and extending to December 31, 2004 for certain requests relating to post-9/11 investigations. *Id*. at 6-8. | |
| 14 | The Court broadly overruled ARB's objections, holding that at least 38 of Plaintiffs' 58 discovery requests sought documents and information within the scope of the Remand Order.[1] Citing the principle that jurisdictional discovery is more "limited" than merits discovery, the Court held that discovery would generally be limited to the 1998-2002 time period, but would be extended to 2004 for | 14.<br><br><u>Disputed as immaterial for the reasons discussed above in response to Section III (heading).</u><br><br><u>Disputed as contrary to Rule 56 and Local Rule 56.1 for the reasons discussed above in response to Section III (heading); no response is required.</u><br><br><u>Disputed as contrary to the evidence:</u><br><br>(1) Magistrate Judge Netburn did not "broadly overrule[]" the Bank's objections to Plaintiffs' requests. To the contrary, Magistrate Judge Netburn denied 20 of Plaintiffs' requests altogether and limited another. *See* Nov. 22, 2021 Order 8-21. | |

---

[1] The Court denied 12 requests as redundant.

| Para. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | certain requests related to post-9/11 terrorism-related investigations. *See* Discovery Order No. 1 at 8. | | |
| 15 | Nonetheless, the Court did not require ARB to conduct searches for all documents responsive to the requests and falling within those time periods, citing ARB's claims that its archived files are not indexed and that files from before 2015 are not digitally searchable. *See* Discovery Order No. 1 at ECF No. 7378 at 21-22. The Court found that requiring ARB to conduct fulsome searches of those physical files would be unduly burdensome. *Id.* at 22. | 15.<br><br>Disputed as immaterial for the reasons discussed above in response to Section III (heading).<br><br>Disputed as contrary to Rule 56 and Local Rule 56.1 for the reasons discussed above in response to Section III (heading); no response is required.<br><br>Disputed as incomplete:<br><br>(1) Plaintiffs mischaracterize the Court's Order in stating that the Court "did not require ARB to conduct searches for all documents responsive to the requests and falling within those time periods." The Court required the Bank to search for documents responsive to all granted requests and to produce what it found, which the Bank did. *See* Erb Decl. ¶ 3-5. | |
| 16 | The Court held that resolving the competing interests of Plaintiffs in obtaining relevant discovery and ARB's burden assertions, in each instance, would require the Court to "micromanage" discovery, and that the parties should instead meet and confer on a program of discovery that accommodated ARB's burden claims with respect to searches of its physical files. *Id.* at 2, 22. | 16.<br><br>Disputed as immaterial for the reasons discussed above in response to Section III (heading).<br><br>Disputed as contrary to Rule 56 and Local Rule 56.1 for the reasons discussed above in response to Section III (heading); no response is required. | |

| Para. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| 17 | Given ARB's claims about its physical files and Court's concerns about ARB's burden claims, discovery as to ARB's relationships with al Qaeda's charity fronts, key financial facilitators, and operatives was largely limited to information retrievable through searches of ARB's core banking system and digital KYC files. | 17.<br><br>Disputed as immaterial for the reasons discussed above in response to Section III (heading).<br><br>Disputed as contrary to Rule 56 and Local Rule 56.1 for the reasons discussed above in response to Section III (heading); no response is required.<br><br>Disputed as vague; conclusory; does not cite supporting evidence; no response is required:<br><br>(1) Vague and conclusory as to "relationships."<br><br>(2) Vague and conclusory re: "charity fronts, key financial facilitators, and operatives."<br><br>Disputed as incomplete, contrary to the evidence:<br><br>(1) Plaintiffs' averment is incomplete and contrary to the evidence as to Plaintiffs' characterization of the Bank's search as being "largely limited to information retrievable through searches of ARB's core banking system and digital KYC files." In fact, in addition to searching the core banking system and customer information files — which include KYC information and non-routine correspondences with customers — the Bank searched filings to the Saudi *zakat* authority; Board minutes; and a contemporaneous letter from the Bank to its regulator, SAMA, listing all charitable donations by the Bank itself from 2002. The Bank also searched all Beneficiary records set up for the Potential Donors, specifically examining the "Beneficiary" and "Notes" fields for references that would reflect wire transfers or checks to the charities. *See* ARB Opp. To Pls. Motion to Compel 5 (Mar. 17, 2023), ECF 8935 ("Mar. 17, 2023 ARB Opp. To Pls. Motion to Compel"). In addition, the Bank searched electronic credit files; files in the Bank's possession held by Sulaiman bin Abdulaziz Al Rajhi in his capacity as | |

| Para. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Chairman of the Bank; Sharia Board records; appointment records; human resources records; Sharia Board records; employment separation data; Internal Audit Department files; records of the Board's Audit Committee; General Assembly Minutes (*see* ARB Ex. 46 (Al Rajhi Bank Dec. 17, 2021 Letter to Plaintiffs)) at 2-4; archived email and attachments from 1998-2004; post-9/11 investigations and audits; and documents produced to U.S. authorities in response to a July 2009 administrative subpoena (*see* ARB Ex. 68 (Al Rajhi Bank Jan. 19, 2023 Letter to Plaintiffs)) at 3, 5-6; *see also* ARB Ex. 47 (Al Rajhi Bank Jan. 14, 2022 Letter to Plaintiffs); ARB Ex. 77 (Al Rajhi Bank Feb. 28, 2023 Letter to Plaintiffs). | |
| 18 | For the most part, the account-related records provided by ARB consisted of account statements showing credit and debit transactions in those accounts. In many (if not most) cases, the account statements did not identify the destination or specific beneficiary of outgoing transactions. | 18. <br><br> <u>Disputed as immaterial for the reasons discussed above in response to Section III (heading).</u> <br><br> <u>Disputed as contrary to Rule 56 and Local Rule 56.1 for the reasons discussed above in response to Section III (heading); no response is required.</u> <br><br> <u>Disputed as vague; conclusory; does not cite supporting evidence and so no response is required:</u> <br><br> (1) Vague and conclusory as to "for the most part" and "many (if not most)." <br><br> <u>Disputed as incomplete:</u> <br><br> (1) The Bank searched for statements of account and customer information files, which include know-your-customer information and communications with customers, and produced what it found. *See* Mar. 17, 2023 ARB Opp. To Pls. Motion to Compel 8. | |

| Para. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (2) The Court held that the Bank's searches were "reasonable." *See* July 11, 2023 Order 4-8. | |
| 19 | The KYC records included account opening documents, to the extent they existed, and, in some cases, limited correspondence with the accountholders and fragmentary internal ARB communications about changing the names on accounts and similar matters. | 19. <u>Disputed as immaterial for the reasons discussed above in response to Section III (heading).</u> <u>Disputed as contrary to Rule 56 and Local Rule 56.1 for the reasons discussed above in response to Section III (heading); no response is required.</u> <u>Disputed as conclusory; does not cite supporting evidence; no response is required:</u> (1) Conclusory as to "to the extent they existed," "limited," and "fragmentary." <u>Disputed as incomplete:</u> (1) The Bank searched for statements of account and customer information files, which include know-your-customer information and communications with customers. The Bank produced all of the responsive documents that it found. *See* Mar. 17, 2023 ARB Opp. to Pls. Motion to Compel 8. (2) The Court held that the Bank's searches for financial contributions were "reasonable." *See* July 11, 2023 Order 4-8. | |
| 20 | Although ARB is known to have maintained relationships during the 1998-2002 time period with at least eight separate charities that have been identified as al Qaeda partners, Plaintiffs agreed to limit jurisdictional discovery to three of those charities - Al Haramain Islamic Foundation | 20. <u>Disputed as immaterial for the reasons discussed in response to Section III (heading) and Section V (heading).</u> <u>Disputed as contrary to Rule 56 and Local Rule 56.1 for the reasons discussed above in response to Section III (heading); no response is required.</u> <u>Disputed as conclusory:</u> | |

| Para. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | ("AHIF"), International Islamic Relief Organization ("IIRO"), and Muwafaq Foundation[2] - as a further means to address ARB's burden claims. *See* Plaintiffs' First Amended Complaint at ^ 173;[3] *see also* Transcript, September 17, 2023 Deposition of Abdullah bin Sulaiman al Rajhi ("Al Rajhi Deposition"), Ex. 1, at 87-88 (Al Rajhi Bank Chairman Abdullah al Rajhi testified that ARB maintained accounts for "the Muslim World League, the International Islamic Relief Organization, the World Assembly of Muslim Youth, Saudi Joint Committee for Relief of the Muslims of Bosnia and Herzegovina and Somalia, the Saudi Joint Committee for the Relief of Muslims of Kosovo and Chechnya, and the Al Haramain Islamic Foundation."). | (1) Plaintiffs' averment that the Bank "is known to have maintained relationships during the 1998-2002 time period with at least eight separate charities that have been identified as al Qaeda partners" is conclusory and unsupported. Rule 56 and Local Rule 56.1 require a statement of facts and evidence. For this averment, Plaintiffs cite to their own Amended Complaint, which does not constitute "facts and evidence," and certainly does not establish that any of the charities listed in this paragraph are "al Qaeda partners."<br><br>(2) Plaintiffs' averment is vague and conclusory as to "relationships."<br><br><u>Disputed as unsupported by the evidence; controverted by the evidence:</u><br><br>(1) Plaintiffs exaggerate and misstate the evidence in asserting that the Bank had "relationships" with "eight separate charities." This paragraph, including footnote 3, only lists seven charities. Of those, Plaintiffs concede, at n. 2, that Muwaffaq had no presence in Saudi Arabia, and so it held no accounts at the Bank. Moreover, the Averment provides no support for the Amended Complaint's (now abandoned) allegation that BIF held accounts at the Bank.<br><br>(2) Plaintiffs further exaggerate and misstate the record in asserting that Muwaffaq was a charity with which the Bank had "relationships," even though Plaintiffs are forced by the facts to concede that Muwaffaq held no account at the Bank. | |

---

[2]  Muwafaq does not appear to have had an actual operational presence in Saudi Arabia.

[3]  *Underwriting Members of Lloyd's Syndicate 2, et al. v. Al Rajhi Bank, et al.*, Case 1:16-cv-07853, Dkt. No. 56 (May 22, 2017) at ^ 173 (identifying al Qaeda charity fronts Muslim World League ("MWL"), International Islamic Relief Organization ("IIRO"), World Assembly of Muslim Youth ("WAMY"), Benevolence International Foundation ("BIF"), Al Haramain Islamic Foundation, and the Saudi High Commission for Relief of Bosnia & Herzegovina ("SHC")).

| Para. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (3) Plaintiffs misstate the record in asserting they "agreed to limit" jurisdictional discovery to three charities "as a further means to address ARB's burden claims." In fact, Plaintiffs served their RFPs, limited to those three charities, before meeting and conferring with the Bank and before the Bank raised any "burden claims." Pls. First Motion to Compel 9 (July 30, 2021), ECF 6996-1. In seeking discovery as to those three charities, Plaintiffs asserted at the time that they "limited their initial requests to the IIRO, Al Haramain, and Muwafaq to expedite the discovery process and because Plaintiffs assessed that fulsome discovery as to those relationships would be sufficient (with the other discovery Plaintiffs are seeking) to establish ARB's intent." *Id.* at 9 n.2. | |
| | | (4) Contrary to the evidence and incomplete as to "al Qaeda partners." | |
| | | – None of these Charities was designated for connections to terrorism before 9/11. *See* ARB Aver. ¶ 40. Of those six, only one, Al Haramain KSA, was ever designated, and not until 2008. *See* ARB Aver. ¶ 50. None of the other charities that held accounts at the Bank were ever designated. *See* ARB Aver. ¶¶ 60, 68, 74, 80, 86. | |
| 21 | Plaintiffs' discovery authorized by the Court also encompassed ARB's relationships with several individual officials of those charities that had been designated or otherwise identified by the United States as al Qaeda supporters and financiers. These included Executive Order 13224 Specially Designated Global Terrorists | 21.<br><br>Disputed as immaterial for the reasons discussed above in response to Section III (heading) and in response to Sections V and VIII (headings).<br><br>Disputed as contrary to Rule 56 and Local Rule 56.1 for the reasons discussed above in response to Section III (heading); no response is required.<br><br>Disputed as conclusory: | |

| Para. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | | |
| | ("SDGTs") Aqil al Aqil (AHF), SDGT Soliman al Buthe (AHIF), SDGT Abd al Hamid Sulaiman al Mujil (IIRO), SDGT Wa'el Hamza Jelaidan (MWL/IIRO), SDGT Yassin Abdullah al Kadi, and Prince Turki bin Jalawi al Saud (IIRO).  *See* Discovery Order No. 1 at 10-11; *see also* July 11, 2023 Opinion & Order, ECF No. 6681, at 11-12 ("Discovery Order No. 2"). | (1) Vague and conclusory as to "relationships." <br><br> (2) Vague and conclusory as to "otherwise identified by the United States." <br><br> (3) Vague and conclusory as to "supporters and financiers." <br><br> <u>Disputed as incomplete and misleading:</u> <br><br> (1) Plaintiffs' averment is egregiously misleading in stating that the Bank had "relationships with several individual officials of those charities that *had been designated or otherwise identified* by the United States as al Qaeda supporters and financiers" (emphasis added).  None of these individuals was designated under any sanctions regime for connections to terrorism until years after the 9/11 Attacks.  *See* ARB Ex. 3 (Pasley Report) at 6 (noting that Plaintiffs' experts only identify "post-9/11 sanctions designations against NGOs and individuals for alleged ties to terrorism and Al Qaeda").  Prince Turki bin Jalawi al Saud was never designated at all.  *See generally* ARB Ex. 59 (Office of Foreign Assets Control, Specially Designated Nationals and Blocked Persons List, U.S. Dept. of Treas. (May 3, 2024), https://www.treasury.gov/ofac/downloads/sdnlist.pdf). <br><br> (2) Plaintiffs' averment is further misleading in asserting that Al Rajhi Bank had a "relationship" with Prince Turki bin Jalawi al Saud.  Al Rajhi Bank searched for account records of Prince Turki bin Jalawi al Saud, and none were found.  *See* Erb Decl. ¶ 3-5. <br><br> (3) Plaintiffs cannot point to any evidence to show that any of these individuals used their accounts at Al Rajhi Bank to support Al Qaeda or any plot of terrorism, including the 9/11 Attacks. | |
| 22 | Based on evidence that certain of those charities were receiving | 22. | |

| Para. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | donations and conducting financial activities through accounts held in the names of other individual officials of those charities, and that ARB founder and Chairman Suleiman al Rajhi similarly carried out "charitable" transactions through accounts of and transfers to individual employees of his charity committee, the Court authorized discovery, again over ARB's objections, as to the following additional individuals' accounts at ARB: Mansour al Kadi (AHIF), Abdul Rahman al Rajhi (Suleiman Bin Abdul Aziz Al Rajhi charity committee/foundation ("committee/foundation")), Saleh bin Sulaiman al Habdan ("committee/foundation), and Abdullah bin Ibrahim al Misfer (committee/foundation/AHIF). *See* Discovery Order No. 2 at 11-12. | <u>Disputed as immaterial for the reasons discussed above in response to Section III (heading), and in response to Section IV and V (headings).</u> <u>Disputed as contrary to Rule 56 and Local Rule 56.1 for the reasons discussed above in response to Section III (heading); no response is required.</u> <u>Disputed as conclusory:</u> (1) Vague and conclusory as to purported "evidence" showing charities were receiving donations and conducing financial activities through accounts held in the names of other individuals. (2) Vague as to "charity committee" and "individual employees of his charity committee." (3) Vague and conclusory as to "committee/foundation." | |
| 23 | Plaintiffs also sought discovery as to audits or similar reviews concerning the al Qaeda charity fronts and financial facilitators at issue in discovery, as well as audits addressing the sufficiency | 23. <u>Disputed as immaterial for the reasons discussed above in response to Section III (heading).</u> | |

| Para. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | of ARB's AML and Combatting the Financing of Terrorism ("CFT") protocols and compliance with same. *See* ECF No. 6996-3 (Request Nos. 1, 47, 48, 51, 52, 54, 58); *see also* Discovery Order No. 1 at 8-9, 17-19 (authorizing Plaintiffs' requests seeking audits). | <u>Disputed as contrary to Rule 56 and Local Rule 56.1 for the reasons discussed above in response to Section III (heading); no response is required.</u><br><br><u>Disputed as conclusory:</u><br><br>(1) Conclusory as to "al Qaeda charity fronts and financial facilitators."<br><br><u>Disputed as incomplete and unsupported by the evidence:</u><br><br>(1) None of the charities that maintained accounts at the Bank was designated before the 9/11 Attacks. *See, e.g.*, ARB Ex. 3 (Pasley Report) at 6 (noting that Plaintiffs' experts only identify "post-9/11 sanctions designations against NGOs and individuals for alleged ties to terrorism and Al Qaeda").<br><br>(2) Plaintiffs have no evidence tracing any transaction through Al Rajhi Bank to Al Qaeda or any plot of terrorism, including the 9/11 Attacks. *See* ARB Aver. ¶ 41. | |
| 24 | As part of this discovery, Plaintiffs specifically requested an alleged audit of ARB referenced in a September 27, 2004 U.S. Department of State diplomatic cable, summarizing a high level meeting between United States and Saudi officials, relating to U.S. terrorism financing concerns involving ARB. The diplomatic cable reports that Ali al Gaith, the Director of Banking Inspection, Insurance, and Financial Leasing at the Saudi Arabian Monetary | 24.<br><br><u>Disputed as immaterial for the reasons discussed above in response to Section III (heading).</u><br><br><u>Disputed as contrary to Rule 56 and Local Rule 56.1 for the reasons discussed above in response to Section III (heading); no response is required.</u> | 24.<br><br><u>Pls. Ex. 2:</u><br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

| Para. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | Authority ("SAMA"), claimed that ARB hired Ernst & Young in August 2003 to conduct a "full scope examination" of the bank, and that the final report "did not indicate any wrong doings." *See* Ex. 2 (Pasley Exhibit 5), U.S. Diplomatic Cable, *Terrorist Financing: Al-Rajhi Bank*, September 27, 2004, at 1. | | |
| 25 | Over the ensuing three months following Discovery Order No. 1, Plaintiffs engaged ARB in several meet and confers and prioritized the production of audits in the possession of ARB responsive to Requests Nos. 1, 47, 48, 51, 52, 54, and 58. ARB maintained that it would search the files of the Internal Audit Department, minutes of the Board of Directors meetings, and the records of the Board's Audit Committee. Notwithstanding ARB's production of over 40,000 pages of records, not a single audit was produced, including the August 2003 Ernst & Young audit. ARB maintained that it had searched for responsive documents and "produced what it found." | 25.<br><br>Disputed as immaterial for the reasons discussed above in response to Section III (heading).<br><br>Disputed as contrary to Rule 56 and Local Rule 56.1 for the reasons discussed above in response to Section III (heading); no response is required.<br><br>Disputed as unsupported by the evidence:<br><br>(1) Unsupported by the evidence as to Plaintiffs' allegation that they "prioritized the production of audits" over the "ensuing three months following" the Court's November 2021 order. Plaintiffs identify no support for this assertion, and the discovery correspondence does not indicate that Plaintiffs "prioritized the production of audits." *See* ARB Ex. 71 (Dec. 20, 2021 Letter from Plaintiffs) (not mentioning audits); ARB Ex. 55 (Feb. 1, 2022 Letter from Plaintiffs) at 5 (stating, on page 5 of a 6 page letter, Plaintiffs' understanding that "KYC files should include account opening and closing records, account signatory information, suspicious activity reports, audit reports and similar information"); ARB Ex. 72 (Oct. 18, 2022 Letter from Plaintiffs) (not mentioning audits). | |

| Para. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | Plaintiffs filed separate motions to compel at ECF Nos. 8903 and 9039 seeking an order from the Court directing ARB to produce the requested audits. | <u>Disputed as incomplete:</u><br><br>(1) Plaintiffs requested the production of "all documents relating to any internal investigation or audit conducted by ARB relating to any accusation that ARB was being used by al Qaeda, like-minded terrorist organizations, extremists intent on supporting and/or committing acts of terrorism, and/or Islamic charities funding terrorism" and "all documents relating to any joint investigation, audit, examination, and/or remedial action undertaken with the United States concerning ARB's links to al Qaeda and terrorism, ARB accounts and transactions linked to al Qaeda and terrorism, and/or money laundering." Pls. First Set of RFPs Nos. 51-52.<br><br>(2) Plaintiffs mention that they filed "separate motions to compel," but neglect to mention that, in deciding on these motions, the Court held that Al Rajhi Bank's searches for financial contributions, communications, and post-9/11 investigative materials were "reasonable," and that Al Rajhi Bank's search for responsive emails was "reasonable." July 11, 2023 Order 3-10. The Court explained that "Plaintiffs' evidence of allegedly missing transactions is thin." *Id.* at 4. The Court also denied 13 of Plaintiffs' 20 document requests and denied another in part. *Id.* at 10-18.<br><br>    – Specifically, in response to Plaintiffs' requests, the Bank searched for responsive documents relating to any post-9/11 investigations or audits, as well as any related communications with Saudi or U.S. government officials, in repositories at the Bank's Operations, Legal, Board Secretariat, Internal Audit, and Compliance departments. *See* Mar. 17, 2023 ARB Opp. To Pls. Motion to Compel 11. The Bank produced roughly 850 documents resulting from these searches. *See id.* at 12. The Court held that the Bank's | |

| Para. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | searches for post-9/11 investigative materials was reasonable. *See* July 11, 2023 Order 7-8. | |
| 26 | In May 2023, Plaintiffs deposed ARB's Rule 30(b)(6) designee, James Galloway, who testified that ARB conducted or commissioned audits for compliance purposes between 1998 and 2002. *See* Transcript, May 11, 2023 Deposition of James Galloway ("Galloway Deposition"), Ex. 3, at 105-114. In an errata sheet correcting Mr. Galloway's deposition, the corrected testimony indicates that (1) "the branch audit team normally audited each branch annually," with "auditors check[ing] the account-opening documentation for a sample of accounts every year," including "sampled accounts opened before 1997;" (2) SAMA conducted "periodic thematic audits includ[ing] surprise and short-notice audits that also checked for compliance with onboarding requirements; (3) "the Bank's external auditor further checked for compliance with SAMA regulations;" and (4) the "Internal Audit department undertook to audit all | 26.<br><br>Disputed as immaterial for the reasons discussed above in response to Section III (heading).<br><br>Disputed as contrary to Rule 56 and Local Rule 56.1 for the reasons discussed above in response to Section III (heading); no response is required. | . |

| Para. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | branches, which would include branches where accounts for Al Haramain or IIRO had been opened." *See* Ex. 3, Errata at p. 108, Line 16; p. 112, Line 5; p. 113, Lines 1-9. | | |
| 27 | Despite Galloway's testimony, no audits pertaining to or referencing any of the accountholders have been produced, whether for periods before or after September 11, 2001, indicating no such audits exist. *See* Expert Report of Jonathan Winer ("Winer Report"), Ex. 4, at 7, 155; *see also* Winer Declaration, Ex. 5 (attesting to opinions in report). | 27.<br><br><u>Disputed as immaterial for the reasons discussed above in response to Section III (heading).</u><br><br><u>Disputed as contrary to Rule 56 and Local Rule 56.1 for the reasons discussed above in response to Section III (heading); no response is required.</u><br><br><u>Disputed as conclusory and unsupported by the evidence:</u><br><br>(1) Conclusory where Plaintiffs allege that "no such audits exist" because they allege that none were produced.<br><br>(2) In response to Plaintiffs' request, the Bank searched for responsive documents relating to any post-9/11 investigations or audits, as well as any related communications with Saudi or U.S. government officials, in repositories at the Bank's Operations, Legal, Board Secretariat, Internal Audit, and Compliance departments. *See* Mar. 17, 2023 ARB Opp. To Pls. Motion to Compel 11. The Bank produced roughly 850 documents resulting from these searches. *See id.* at 12. The Court held that the Bank's searches for post-9/11 investigative materials was reasonable. *See* July 11, 2023 Order 7-8. | 27.<br><br><u>Pls. Ex. 4:</u><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | **Section IV.** | |
| IV | **ARB, its Principals, and Related "Charity" Enterprises (¶¶ 28-52)** | **IV. (heading)** <br><br> <u>Disputed as conclusory; controverted by the evidence; unsupported by the evidence:</u> <br><br> (1) This section heading is a conclusory statement to which no response is required. <br><br> (2) Plaintiffs' reference to "principals" is vague, conclusory and undefined. <br><br> (3) Plaintiffs' implication that the "'charity' enterprises" are "related" to Al Rajhi Bank is controverted by undisputed, admissible evidence that establishes that the Saudi-based Sulaiman bin Abdulaziz al Rajhi Charitable Foundation had no "relationship" and is not affiliated with Al Rajhi Bank. Pls. Ex. 3 (Galloway Dep. Tr.) at 278:23-279:7 ("None of [the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charity Foundation officials] had any role at the bank, and the foundation has never been a parent, subsidiary, or affiliate of the bank."). <br><br> (4) Further, Plaintiffs have never alleged and have no evidence of any "relationship" between the Bank and the U.S.-based SAAR Foundation. *See* Order (Nov. 22, 2021), ECF 7378 at 15-16 (stating Plaintiffs have not alleged "any direct connection between ARB and the SAAR Network" and finding a "lack of a reasonable connection between ARB and the SAAR Network"). To the extent that Plaintiffs' use of "charity" in quotation marks implies that Al Rajhi Bank and Al Rajhi family members' charitable endeavors were not solely charitable in nature, or that Al Rajhi Bank and members of the Al Rajhi family had ulterior motives in engaging with charities, such an implication is inflammatory, conclusory and unsupported by any evidence. | |

<u>Immaterial:</u>

Plaintiffs' averments in Section IV are immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States.

(1) The averments in Section IV, even if credited, do not show that Al Rajhi Bank took any tortious act in support of Al Qaeda or the 9/11 Attacks, or aimed at the United States. Plaintiffs' averments do not show that any money that was transferred through accounts at Al Rajhi Bank reached Al Qaeda or supported the financing, planning, or carrying out of the 9/11 Attacks or any other act against the United States. Nor do Plaintiffs' averments show that any donations made by Al Rajhi Bank or its principals supported the financing, planning, or carrying out of the 9/11 Attacks or any other act against the United States. And Plaintiffs' averments do not show that the Bank acted with any knowledge or intent to support Al Qaeda or support the financing, planning, or carrying out of the 9/11 Attacks or any other terrorism or terrorist plot against the United States.

(2) Plaintiffs' averments concerning individual members of the Al Rajhi family, including but not limited to Sulaiman bin Abdulaziz Al Rajhi and Abdullah bin Sulaiman Al Rajhi, are immaterial because Plaintiffs do not show that these individual Al Rajhi family members had knowledge of the Bank's customers' alleged bad acts or terrorist affiliations or the intent to support such alleged acts or affiliations, let alone that such knowledge or intent is imputable to the Bank.

(3) Plaintiffs' averments as to Sulaiman bin Abdulaziz Al Rajhi and Abdullah bin Sulaiman Al Rajhi are immaterial because Plaintiffs have not established any factual basis to impute a chairman or senior official's knowledge to the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick,* 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO).

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (4) This Court also dismissed all claims against Sulaiman bin Abdulaziz Al Rajhi, a founder and former Chairman of Al Rajhi Bank, and Abdullah bin Sulaiman Al Rajhi, the current Chairman of Al Rajhi Bank, for lack of personal jurisdiction; the Second Circuit affirmed that dismissal and the Supreme Court denied the plaintiffs' petition for a writ of certiorari. *See In re Terrorist Attacks on Sept. 11, 2001 ("Terrorist Attacks IV")*, 718 F. Supp. 2d 456, 485, 495 (S.D.N.Y. 2010) (finding that plaintiffs' allegations failed to show Al Rajhi defendants "personally engaged in tortious conduct expressly aimed at the United States"), *aff'd sub nom. O'Neill v. Asat Tr. Reg. ("Terrorist Attacks VII")*, 714 F.3d 659, 675-76 (2d Cir. 2013), cert denied 134 S. Ct. 2870 (2014). | |
| | | (5) Plaintiffs' averments regarding correspondent bank accounts are immaterial because Plaintiffs do not link a single transaction through the Bank's U.S. correspondent account to Al Qaeda or the 9/11 Attacks. *See* N.Y. C.P.L.R. § 302(a)(1); *see also Licci v. Lebanese Canadian Bank,* 732 F.3d 161, 168-69 (2d Cir. 2013) (holding that to establish jurisdiction based on U.S. correspondent accounts under New York's long-arm statute, plaintiffs must show that their injuries "arose from" the defendant bank's business activity in the state). | |
| | | (6) Plaintiffs' averments regarding Sulaiman Abdulaziz Al Rajhi's Saudi-based "committee" and the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation are immaterial because Plaintiffs fail to show a single transaction involving this Saudi-based "committee" or Foundation and Al Qaeda or the 9/11 Attacks, or that the Bank had any knowledge of any purported affiliations of this Saudi-based "committee" or Foundation with terrorism. The undisputed admissible evidence establishes that the Saudi-based Sulaiman bin Abdulaziz al Rajhi Charitable Foundation had no "relationship" with Al Rajhi Bank. Pls. Ex. 3 | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (Galloway Dep. Tr.) at 278:23-279:7 ("None of [the Charity Foundation officials] had any role at the bank, and the foundation has never been a parent, subsidiary, or affiliate of the bank."). | |
| | | (7) The conduct of the U.S.-based SAAR Foundation is immaterial and not attributable to the Bank. Plaintiffs fail to show a single transaction involving the SAAR Foundation and Al Qaeda or the 9/11 Attacks, or that the Bank had any knowledge of any purported affiliations of the SAAR Foundation with terrorism. Plaintiffs have never alleged and have no evidence of any "relationship" between the Bank and the SAAR Foundation. *See* Order (Nov. 22, 2021), ECF 7378 at 15-16 (noting Plaintiffs have not alleged "any direct connection between ARB and the SAAR Network" and finding a "lack of a reasonable connection between ARB and the SAAR Network"). | |
| | | - In any event, this Court previously dismissed Plaintiffs' claims as to the SAAR Network Defendants, including the US-based SAAR Foundation, for failure to state a claim. *See In re: Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 523 (S.D.N.Y. 2010) ("Plaintiffs merely plead conclusory assertions against a large group of defendants, whom plaintiffs have independently concluded to be related and operating in unison. None of the Defendants can be held liable based on such allegations alone."). | |
| | | (8) Further, the undisputed facts establish that neither the U.S.-based SAAR Foundation nor the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, nor any individual alleged by Plaintiffs to be associated with either entity, has ever been charged or designated in connection with terrorism. *See generally* ARB Ex. 59 (Office of Foreign Assets Control, *Specially Designated Nationals and Blocked Persons List*, U.S. Dept. of Treas. (May 3, 2024), https://www.treasury.gov/ofac/downloads/sdnlist.pdf); ARB Ex. 4 (Lormel Rep.) at 32-33 (explaining that no | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | "investigation ever found sufficient evidence … to pursue criminal charges against the SAAR Foundation for providing material support to terrorists or terrorist organizations in the form of financing"). <br><br> (9) Plaintiffs' averments related to the Humana Charitable Trust are immaterial because Plaintiffs fail to show a single transaction involving the Humana Charitable Trust and Al Qaeda or the 9/11 Attacks, or that the Bank had any knowledge of any purported affiliations of the Humana Charitable Trust with terrorism. Plaintiffs also have never alleged and have no evidence showing that the Humana Charitable Trust had any "relationship" with Al Rajhi Bank or that it supported Al Qaeda or the 9/11 Attacks. | |
| 28 | ARB is a Saudi Arabian Islamic bank, founded by Suleiman bin Abdul Aziz al Rajhi and his three brothers Saleh Abdulaziz al Rajhi, Abdullah Abdul Aziz al Rajhi, and Mohammed Abdul Aziz al Rajhi. *See* Ex. 1, Al Rajhi Deposition at 25. | 28. <br><br> <u>Immaterial for the reasons discussed above in response to Section IV (heading).</u> <br><br> <u>Disputed as incomplete:</u> <br><br> (1) Al Rajhi Bank was founded in 1957 by Sulaiman bin Abdulaziz al Rajhi, Saleh Abdulaziz al Rajhi, Abdullah Abdul Aziz al Rajhi, and Mohammed Abdul Aziz al Rajhi. Al Rajhi Bank was originally founded as an exchange company, and was later incorporated as a bank in 1988. *See* Pls. Ex. 6 (1998 Al Rajhi Bank Ann. Rep.) at PDF pp. 90-91; Pls. Ex. 7 (1999 Al Rajhi Bank Ann. Rep.) at PDF pp. 78, 98; Pls. Ex. 8 (2000 Al Rajhi Bank Ann. Rep.) at PDF p. 23; ARB Ex. 16 (2001 Al Rajhi Bank Ann. Rep.) at PDF p. 98; *see also* Am. Compl. 14, ECF No. 56 (conceding Al Rajhi Bank "is a Saudi-based financial institution, with a principal place of business located at Olaya Street, Riyadh, Saudi Arabia"); *see also* ARB Aver. ¶¶ 8-9. | |
| 29 | For many years preceding the September 11, 2001 terrorist | 29. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | attacks on the United States (the "September 11th attacks"), Suleiman al Rajhi served as Chairman and Managing Director of ARB. *See id.* at 37, 42, 43; *See also* Ex. 6, ARB Annual Report for 1998 at 3; Ex. 7, ARB Annual Report for 1999 at 3; Ex. 8, ARB Annual Report for 2000 at 3. | <u>Immaterial for the reasons discussed above in response to Section IV (heading).</u><br><br><u>Disputed as vague:</u><br><br>(1) Plaintiffs' allegation that Sulaiman bin Abdulaziz Al Rajhi served in this capacity "[f]or many years" preceding the 9/11 Attacks is vague. Sulaiman bin Abdulaziz al Rajhi was Chairman of Al Rajhi Bank during the 1998-2002 period and Managing Director of Al Rajhi Bank during the 1998-2002 period. *See* Pls. Ex. 6 (1998 Al Rajhi Bank Ann. Rep.) at PDF p. 109; Pls. Ex. 7 (1999 Al Rajhi Bank Ann. Rep.) at PDF p.118 Pls. Ex. 8 (2000 Al Rajhi Bank Ann. Rep.) at PDF p. 5; ARB Ex. 16 (2001 Al Rajhi Bank Ann. Rep.) at PDF p. 118. | |
| 30 | Abdullah bin Suleiman al Rajhi is Suleiman al Rajhi's son, and has served for many years as a senior official of ARB. During the 1998 through 2004 timeframe, he was ARB's General Manager and a member of its Board of Directors. *See id.* at 37-38; *see also* 355 (explaining that the General Manager is the equivalent to the Chief Executive Officer). | 30.<br><br><u>Immaterial for the reasons discussed above in response to Section IV (heading).</u><br><br><u>Disputed as unsupported by the evidence:</u><br><br>(1) The cited pages of Abdullah bin Sulaiman Al Rajhi's deposition do not specify that he served on the Bank's Board of Directors between 1998 through 2004. He agreed that he was on the Bank's Board of Directors "at the time of 9/11." Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 355:19-356:3.<br><br><u>Disputed as vague:</u><br><br>(1) Plaintiffs' averment that Abdullah Abdulaziz Al Rajhi served "for many years as a senior official of ARB" is vague.<br><br>(2) Abdullah bin Sulaiman Al Rajhi started working at the Bank in 1979. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 40:11-15. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | - Abdullah bin Sulaiman Al Rajhi first started working with the Bank's branches. Then, he worked in the Bank's Finance Department. Eventually, he became responsible for all reporting from the Department of Finance to the Bank's General Manager. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 44:5-12.<br><br>- Abdullah bin Sulaiman Al Rajhi then began managing international correspondent relationships of the Bank and the Treasury of the Bank. Abdullah bin Sulaiman Al Rajhi next became the Bank's Deputy First Manager and reported directly to the Bank's General Manager. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 44:2-17; 44:21-45:4.<br><br>- Abdullah bin Sulaiman Al Rajhi became Al Rajhi Bank's General Manager in 1996. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 44:21-45:4. | |
| 31 | In his capacity as General Manager, Abdullah al Rajhi oversaw the day-to-day operations of the bank, and reported to the Managing Director (his father) and the bank's Board of Directors. *Id.* at 46. | 31.<br><br>Immaterial for the reasons discussed above in response to Section IV (heading).<br><br>Disputed as unsupported by the evidence:<br><br>(1) Plaintiffs' characterization of Abdullah bin Sulaiman Al Rajhi's position and responsibilities at Al Rajhi Bank as overseeing "the day-to-day operations of the bank" is unsupported by the evidence. Abdullah bin Sulaiman Al Rajhi testified that he was in a "senior position," but reported to the Board of Directors, which was the "ultimate boss." Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 46:18-47:2. | |
| 32 | More recently, including as of the present date, Abdullah al Rajhi has served as ARB's Chairman of the Board of Directors and | 32.<br><br>Immaterial for the reasons discussed above in response to Section IV (heading). | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Chairman of the Executive Committee. *Id.* at 19, 20. | Disputed as incomplete: <br><br> (1) Abdullah bin Sulaiman Al Rajhi began serving as the Bank's Chairman of the Board of Directors in 2014. He is currently the Chairman of the Board of Directors. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 19:22-23. Abdullah bin Sulaiman Al Rajhi is currently Chairman of the Executive Committee. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 20:2-4. | |
| 33 | During the period between 1998 and 2001, ARB's Board of Directors and Executive Committee were dominated by members of the Al Rajhi family, including Suleiman al Rajhi and Abdullah al Rajhi. *See* Ex. 6, ARB Annual Report for 1998 at 3 (listing members of Board of Directors and Executive Committee); Ex. 8, ARB Annual Report for 2000 at p. 3 (same); Ex. 9, CIA Intelligence Report, Office of Transnational Issues, *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions*, CIA_000720-804 at 743 ("Riyadh-based [ARB], with some $8.6 billion in assets - is 80-percent owned by the secretive and religiously ultraconservative Al Rajhi family, [REDACTED].").| 33. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section IV (heading). <br><br> (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading). <br><br> Disputed as vague and conclusory: <br><br> (1) Plaintiffs' characterization of the Al Rajhi family as "secretive and religiously ultraconservative" is vague, conclusory, and unsupported. <br><br> Disputed as controverted by the evidence: <br><br> (1) Plaintiffs' averment that the Board of Directors and Executive Committee "were dominated" by members of the Al Rajhi Family is controverted by the evidence. At all relevant times, Al Rajhi Bank maintained four to five independent board members. Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 33:3-34:12. <br><br> (2) Al Rajhi Bank's Board was required to follow the regulations of the Capital Market Authority and the Bank's primary regulator, the Saudi Arabian Central Bank, formerly known as the Saudi Arabian | 33. <br><br> Pls. Ex. 9: <br><br> - Inadmissible hearsay, as noted in response to Section VI (heading). |

| PARA. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Monetary Authority (SAMA). *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 33:9-12; 64:17-20. | |
| | | (3) Al Rajhi Bank maintained specialized committees and corresponding director-level positions, which allowed for separation of powers and checks and balances throughout the Bank. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 19:23-20:4; 33:18-35:8. | |
| | | (4) Outside of the Executive Committee, the Bank's Chairman was not a member of the Bank's specialized committees. *See* ARB. Ex. 2 (Hobayb Rep.) at 17. | |
| 34 | According to a May 28, 2003 Central Intelligence Agency ("CIA") report, *Al-Rajhi Bank: Conduit for Extremist Finance*, prepared by the CIA's Counterterrorist Center's Office of Terrorism Analysis, addressing evidence of ARB's support for terrorism before and after September 11, 2001, "senior al-Rajhi family members control the banks' most important decisions and [] ARABIC's [ARB's] principal managers answer directly to Sulayman [Suleiman Al Rajhi]." *See* Ex. 10, CIA-SUB_0001-6 at 2; *see id.* at 4 ("Sulayman's tight control of ARABIC [ARB] activities suggests he is witting that his bank is attractive to extremists."). *See also* Ex. 11, *Islamic Banking: A* | 34. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section IV (heading). <br><br> (2) Immaterial to the extent that this averment relies on CIA Reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading). <br><br> (3) Even if credited, suggestions that "senior al-Rajhi family members control the banks' most important decisions and [] ARABIC's [ARB's] principal managers answer directly to Sulayman [Suleiman Al Rajhi] . . . (Pls. Ex. 10, CIA-SUB_0001-6 at 2)" do not show that the Bank aimed intentional, tortious conduct at the United States. <br><br> (4) In addition, immaterial because, notwithstanding this reporting by the CIA, the United States has never sanctioned, designated, or taken any action against Sulaiman bin Abdulaziz Al Rajhi, Abdullah bin Sulaiman Al Rajhi, or any Al Rajhi family member for connections to terrorism. *See* Pls. Ex. 12 (Winer Dep. Tr.) at | 34. <br><br> Pls. Ex. 10: <br><br> - Inadmissible hearsay, as noted in response to Section VI (heading). <br><br> Pls. Ex. 11: <br><br> - Inadmissible hearsay, as noted in response to Section VI (heading). |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | *Potential Economic Enabler in the Muslim World*, May 21, 2004, CIA-SUB_0020-30 at 24 (indicating that Suleiman al Rajhi has "provided widespread funding to al-Qa'ida, HAMAS, and various mujahidin groups"). | 160:10-15; 172:19-22; *see also* Pls. Ex. 171 (Kohlmann Dep. Tr.) at 36:20-22, 37:12-20, 38:3-39:5.<br><br>- No governmental body anywhere has ever sanctioned or taken any other action against Al Rajhi Bank or Al Rajhi family members for involvement in terrorist financing. See ARB Aver. ¶ 7.<br><br>- Further, in 2021, the FBI concluded, "After nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged, which is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Electronic Comm.) at EO14040-000011.<br><br>Disputed as controverted by the evidence:<br><br>(1) The CIA acknowledged its own uncertainty about the Al Rajhi family, stating that "Al Rajhi financial ties to Islamists is inconclusive," and the use of the Bank by extremists "probably denotes convenience rather than Al Rajhi family involvement in financing radical groups." Pls. Ex. 9 (Nov. 1997 CIA Rep.) at CIA_744; *see also id.* ("The bank's dominance of the foreign remittance business, coupled with strong financial links to Africa and the Asian subcontinent, probably make ARABIC the *only choice* for transferring funds to some regions.") (emphasis added); Pls. Ex. 10 (May 28, 2003 CIA Rep.) at CIA-SUB_0003 ("Extremists use ARABIC because its Islamic banking principles appeal to them and because it is one of the few banks with branches in outlying areas of Saudi Arabia, as well as good correspondent connections in remote locations abroad."). | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (2) Abdullah Al Rajhi, the current Chairman and former General Manager/CEO of Al Rajhi Bank testified that his father, Sulaiman bin Abdulaziz Al Rajhi, had never been a supporter of al Qaeda or Osama Bin Laden and to the best of his knowledge no one at the Bank ever supported al Qaeda, Osama Bin Laden, or terrorism in any form. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 254:17-255:8. | |
| | | (3) From 2001 to 2003, based on CIA intelligence labeling Al Rajhi Bank as the "bank of choice" for Al Qaeda, the FBI's Terrorist Financing Operations Section (TFOS) conducted investigations into Al Rajhi Bank, including through the U.S.-Saudi Joint Terrorist Financing Task Force, which was established "to examine certain customer accounts believed to be used for terrorism at Al Rajhi Bank." *See* ARB. Ex. 4 (Lormel Rep.) at 7, 18-19, 33.  The TFOS "could not verify or prove the CIA intelligence reporting or other investigative leads developed by the FBI and CIA regarding allegations that Al Rajhi Bank provided support for Al Qaeda or that Al Rajhi Bank was the so-called 'bank of choice' for Al Qaeda or terrorism." *See* ARB. Ex. 4 (Lormel Rep.) at 7; *see also id.* at 7 (explaining that FBI investigated CIA intelligence leads concerning Al Rajhi Bank but could not verify or prove any allegation that the Bank provided support to Al Qaeda). | |
| 35 | Between 1998 and 2001, ARB maintained correspondent banking relationships with counterparty financial institutions throughout the world. *See* Ex. 6, ARB Annual Report for 1998 at 11 (ARB's international banking operations carried out "through a network of 270 correspondent | 35.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section IV (heading) and in response to Sections X and XI (headings).<br><br>(2) Immaterial to the extent that Plaintiffs allege that processing transactions through a payable-through account at Chase Manhattan reveals improper intent of the Bank, given that the long-time use of payable-through accounts in the United States indicates | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | banks and other financial institutions spread over 60 countries"); Ex. 8, ARB Annual Report for 2000 at 8 ("In supporting its customers' services and financing requirements the Corporation [ARB] has continued to develop international banking relationships which enabled the Corporation to achieve presence at world-wide level and fulfill its customers' needs on international banking ensuring that high quality services are provided by the correspondents to the Corporation's customers."). | it was "a normal banking practice" during the relevant period. *See* ARB Ex. 2 (Hobayb Rep.) at 32.<br>(3) Moreover, Plaintiffs have no evidence that any funds in Al Rajhi Bank's correspondent account at Chase Manhattan were used for an improper purpose, including planning, carrying out, or financing terrorism against the United States. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.). | |
| 36 | Between 1998 and 2001, ARB maintained a "Payable Through" account with Chase Manhattan Bank in New York. A Payable Through account is an account in which a foreign bank uses a domestic bank as a checking account for the customers of the foreign bank. *See* Ex. 4, Winer Report at 200; *see id.* (citing 31 CFR § 561.307 definition of payable through account). | 36.<br><br>Immaterial for the reasons stated above in response to Section IV (heading) and in Sections X (heading) and XI (heading) and ¶ 35. | |
| 37 | For decades, Payable Through accounts have been of serious concern for money laundering and terrorist finance due to the ability | 37.<br><br>Immaterial for the reasons stated above in response to Section IV (heading) and in Sections X (heading) and XI (heading) and ¶ 35. | 37.<br><br>Pls. Ex 4: |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | of those using them to circumvent the KYC obligations that domestic banks would otherwise have to apply to those customers.  Winer Report at ¶ 10.42. | | - Expert is not qualified to offer opinion on banking laws and regulations. *See* Fed. R. Evid. 702. |
| 38 | By virtue of its status as an international financial institution and correspondent relationships with financial institutions throughout the world, ARB was required to adhere to international best practices with respect to AML, CFT, and KYC.  ARB's own experts have admitted that guidelines issued by SAMA and governing ARB from 1995 through 2001 incorporated international best practices. Winer Report | 38.<br><br>Immaterial for the reasons discussed above in response to Section IV (heading).<br><br>Disputed as vague:<br><br>(1) Plaintiffs' characterization of Al Rajhi Bank as a "international financial institution and correspondent relationships with financial institutions throughout the world" is vague.<br><br>Disputed as controverted by the evidence:<br><br>(1) Plaintiffs' allegation that "ARB was required to adhere to international best practices with respect to AML, CFT, and KYC" is controverted by the evidence.<br><br>(2) Al Rajhi Bank was only obligated to follow "international" banking standards insofar as they were reflected in the guidelines and regulations of its regulator, SAMA, as discussed in Al Rajhi Bank's response to Section IX (heading) and ¶¶ 302-303, 305. *See* ARB. Ex. 2 (Hobayb Rep.) at 4. | 38.<br><br>Pls. Ex. 4:<br><br>- Expert is not qualified to offer opinion on banking laws and regulations. *See* Fed. R. Evid. 702. |
| 39 | As Plaintiffs' expert Jonathan Winer explained at his deposition, adherence by international banks to international standards and best practices concerning AML, CFT, and KYC is essential to ensuring that there are no weak leaks in the chain of banking regulation and | 39.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IV (heading) and in Section IX (heading). | 39.<br><br>Pls. Ex. 12:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (*See* Fed. R. Evid. 802) and to the extent expert is not |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | enforcement. *See* Transcript, January 12, 2024 Deposition of Jonathan M. Winer ("Winer Deposition"), Ex. 12, at 98 (analogizing the banking and financial system to a water system). As a sophisticated international financial institution, ARB and its principals, including in particular Suleiman al Rajhi and Abdullah al Rajhi, would have been deeply familiar with these aspects of the international banking system, and the means to exploit its vulnerabilities, including through ineffective AML and KYC procedures, the abuse of Payable Through accounts, and the exploitation of unregulated and underregulated financial activities. | (2) Immaterial to the extent it relies on the testimony of Jonathan Winer, who is not an expert on Saudi banking regulations, and is otherwise conclusory and unsupported. <br><br> Disputed as conclusory; vague; unsupported by evidence: <br><br> (1) Plaintiffs' suggestion that Sulaiman bin Abdulaziz al Rajhi and Abdullah bin Sulaiman al Rajhi would have been familiar with the means to "exploit [the banking system]'s vulnerabilities" is conclusory, vague, and unsupported by evidence. <br><br> (2) Plaintiffs' reference to "ineffective AML and KYC procedures" is vague, conclusory, and unsupported by evidence. <br><br> Disputed as controverted by the evidence: <br><br> (1) Plaintiffs' assertion that Sulaiman bin Abdulaziz Al Rajhi and Abdullah bin Sulaiman Al Rajhi "would have been deeply familiar with these aspects of the international banking system, and the means to exploit its vulnerabilities" is controverted by evidence. Abdullah bin Sulaiman Al Rajhi has never been directly responsible for the Bank's anti-money laundering activities, and the General Manager position in which he and his father, Sulaiman Bin Abdul Aziz Al Rajhi, served, was not directly responsible for enforcement of AML policies. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) 32:11-33:25; *see also* ARB Ex. 2 (Hobayb Rep.) at 20 (explaining AML Unit's role in preventing money laundering). <br><br> (2) Further, the Bank's Internal Audit Department, which functioned independently from the Bank's executive and operational functions, evaluated and enforced adherence to internal policies and procedures, and applicable law, across the Bank. *See* ARB Ex. 17 (Al Rajhi Bank Gen. Policies and Auths Guide) at 3-4, 8; *see also, e.g.*, ARB Ex. 19 (Al Rajhi Bank Internal Audit Plan for the | qualified to offer opinion. *See* Fed. R. Evid. 702. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Fiscal Year 1999); ARB Ex. 20 (Al Rajhi Bank Internal Audit Plan for the Fiscal Year 2001). | |
| 40 | For years before and throughout the 1998-2002 time period, Suleiman al Rajhi also maintained and directed a sophisticated operation for distributing his purported "charitable" contributions to causes and organizations throughout the world. *See* Ex. 13 (Abdullah al Rajhi Exhibit 50) (Suleiman Al-Rajhi Charitable Foundation webpage); *see also* Ex. 1, Al Rajhi Deposition at 256-258 (testifying that his father, Suleiman al Rajhi, was carrying out his charitable activities through his charity office during the 1998-2002 time period); *id.* at 262 (stating that he would have discussions with his father about entities or causes his father was thinking about supporting). *See* Ex. 9, *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions*, CIA_000720-804 at 743 (stating that Suleiman al Rajhi "reportedly maintains a staff of 20 to manage his unpublicized charitable endeavors"); Winer | 40.<br><br>**Immaterial:**<br><br>(1) Immaterial for the reasons stated above in response to Section IV (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA Reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading).<br><br>(3) To the extent Plaintiffs contend that the personal charitable donations of Sulaiman bin Abdulaziz Al Rajhi were made with knowledge of charities' alleged connection to terrorism (a point which Plaintiffs do not establish), such averments are immaterial, as Plaintiffs have not established any basis for imputing the knowledge of Sulaiman bin Abdulaziz Al Rajhi to the Bank. *See, e.g.*, *Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO).<br><br>**Disputed as controverted by the evidence:**<br><br>(1) To the extent Plaintiffs aver that Sulaiman bin Abdulaziz Al Rajhi was not genuinely philanthropic and did not make legitimate charitable donations, those averments are controverted by the evidence.<br><br>- Although he has tried to never tout his philanthropy, Sulaiman bin Abdulaziz Al Rajhi has been reported to be one of the most generous people in the world. *See* ARB Ex. 37 ("20 Most Generous People in the World"). | 40.<br><br>Pls. Ex. 13<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>Pls. Ex. 9<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading).<br><br>Pls. Ex 4. P. 109, 121-122, 204:<br><br>- Should be excluded to the extent expert testimony is used a conduit for inadmissible hearsay (e.g., NL Docs). *See* Fed. R. Evid. 802<br><br>- Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Report, Ex. 4, at 109, 121, 122, 204. | - Paragraph 50 of Plaintiffs' own Averment acknowledges that Sulaiman bin Abdulaziz Al Rajhi donated "millions of dollars . . . to a range of Islamic causes throughout the world." *See* Pls. Aver. ¶ 50.<br><br>- Sulaiman bin Abdulaziz Al Rajhi made donations to respected charities that were government-licensed and known for doing good works. *See generally, e.g.*, Pls. Ex. 122 (Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation Donations to Al Haramain-KSA); *see also, e.g.*, Pls. Ex. 3 (Galloway Dep. Tr.) at 251:12-252:19 and Errata at 230:4, 251:14, 251:23-24, 252:1, 252:4, 252:7-8, 252:13-14, 252:16, 252:18 (discussing that Al Haramain was licensed); ARB Ex. 41 (Oct. 17, 1997, Letter from Deputy Minister of Islamic Affairs at ARB-00038586) (stating that Al-Haramain operates under its supervision); Pls. Ex. 44 (Staff Monograph on Terrorism Financing) at 114-15 (discussing various humanitarian works done by Al Haramain); *see also* Al Rajhi Bank's response to Section V (heading) (explaining that Al Haramain was a well-known, respected, and government-licensed charity, whose legitimate humanitarian efforts were widely publicized before the 9/11 Attacks).<br><br>- The Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation was licensed as a bona fide charitable organization that (1) raised money for charity by collecting donations from others, and (1) disbursed those funds to charitable causes. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 257:9-258:11 and Errata at 257:12-13, 257:16, 257:18. | |
| 41 | In Saudi Arabia, this operation was carried out under the auspices of an unlicensed "committee" that had no legal status (sometimes referred to as the al Rajhi "charity | 41.<br><br>Immaterial for the reasons discussed above in response to Section IV (heading). | 41.<br><br>Pls. Ex. 13 |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | office" or foundation) from approximately 1983 until June 19, 2000, when the Saudi Ministry of Social Affairs issued a license authorizing it to operate as the Suleiman Bin Abdul Aziz Al Rajhi Charitable Foundation ("Foundation"). *See* Ex. 13 (Abdullah al Rajhi Exhibit 50) (Sulaiman Al-Rajhi Charitable Foundation webpage); *See also* Ex. 1, Al Rajhi Deposition at 256-258 (testifying that his father, Suleiman al Rajhi, was carrying out his charitable activities through his charity office during the 1998-2002 time period, but the Foundation was not formally licensed until 2000); *id.* at 271-272 (explaining that his father created a committee to assist him review the incoming requests for financial assistance); Ex. 14 (Abdullah al Rajhi Exhibit 56) (NL 9625) (indicating that "the committee overseeing the Charity office in Riyadh has the set up to receive requests from various charities located throughout the world and then to review, investigate and decide if a | Disputed as unsupported by the evidence: <br><br> (1) To the extent Plaintiffs' statement that the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation "had no legal status" is meant to suggest that the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation was not authorized to operate in the Kingdom of Saudi Arabia at any point, that statement is controverted by the deposition testimony of the Bank's current chairman, Abdullah bin Sulaiman Al Rajhi. <br><br> - In 2000, Sulaiman bin Abdulaziz Al Rajhi acquired a license to create a charity foundation, the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, which allowed him to: (1) raise money for charity by collecting donations from others, and (2) disburse those funds to charitable causes. Before 2000, Sulaiman bin Abdulaziz Al Rajhi donated his own money to charitable causes and, because he was not collecting donations from others, he did not need a license. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 257:9-258:11 and Errata at 257:12-13, 257:16, 257:18. | - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> <u>Pls. Ex. 14</u> <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | charitable contribution will be made"). | | |
| 42 | Suleiman Al Rajhi's Saudi-based committee, and later Foundation, employed a full-time staff. *See* Ex. 9, *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions*, CIA_000720-804 at 743 (stating that Suleiman al Rajhi "reportedly maintains a staff of 20 to manage his unpublicized charitable endeavors"). | 42. <br><br> <u>Immaterial for the reasons discussed above in response to Section IV (heading).</u> <br><br> <u>Disputed as misleading:</u> <br><br> (1) (1) Plaintiffs' reference to "Al Rajhi's Saudi-based committee, and later Foundation" is misleading to the extent Plaintiffs conflate the Saudi-based Sulaiman bin Abdulaziz al Rajhi Charitable Foundation and the U.S.-based SAAR Foundation. | 42. <br><br> <u>Pls. Ex. 9:</u> <br><br> - Inadmissible hearsay, as noted in response to Section VI (heading). |
| 43 | During the 1998-2001 timeframe, the full time staff included al Rajhi family member Abdul Rahman bin Abdullah al Rajhi, Saleh bin Sulaiman al Habdan, and Abdullah bin Ibrahim al Misfer. *See* Ex. 1, Al Rajhi Deposition at 264 (testifying that Abdul Rahman al Rajhi and Saleh al Habdan were the two individuals in charge of his father's charity office); *id.* at 265-267 (stating that Saleh al Habdan served as the Imam at the al Rajhi family mosque). *See also* Ex. 14 (Abdullah al Rajhi Exhibit 56) (NL 9625) ("Currently the Charity office is managed by Abdul Rahman Bin Abdullah Al Rajhi, | 43. <br><br> <u>Immaterial for the reasons discussed above in response to Section IV (heading).</u> | 43. <br><br> <u>Pls. Ex. 14</u> <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. <br><br> <u>Pls. Ex. 15:</u> <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. <br><br> - Should be excluded under Rule 403 for unfair prejudice |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Saleh Bin Sulaiman Al-Habdan and Abdullah I. Al-Misfer," December 28, 2000.); Ex. 15, NL 9623 (August 24, 1999 letter from Abdullah bin Ibrahim Al-Misfer to the Executive Director of "Islamic Call at Universities," in Garden Grove, California, stating that he works for the "Al-Rajhi Charity Office"); Ex. 16, WAMYSA 102829 (October 14, 2001 letter from Foundation "General Supervisor" Abdul Rahman bin Abdullah al Rajhi to WAMY Secretary General Maneh al Johani, enclosing a donation of 131,250.00 Saudi Riyals ("SR")); Ex. 17, WAMYSA 502115 (June 17, 2002 letter from Abdul Rahman bin Abdullah al Rajhi to WAMY Secretary General Maneh al Johani, stating that the Foundation is providing a 130,000.00 SR donation for Shariah courses). | | and confusing the issues for discussing charity work that has no link to Al Qaeda.  *See* Fed. R. Evid. 403 <br><br> <u>Pls. Ex. 16:</u> <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> - Lacks authentication.  *See* Fed. R. Evid. 901. <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing charity work that has no link to Al Qaeda.  *See* Fed. R. Evid. 403. <br><br> <u>Pls. Ex. 17:</u> <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> - Lacks authentication.  *See* Fed. R. Evid. 901. <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing charity work that has no link to Al Qaeda.  *See* Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| 44 | The committee's advisors included Saleh al Hussayen, a Saudi religious scholar who also served as a member of ARB's shariah board, the General President of the Committee of the Two Holy Mosques, and further participated in overseas da'wah activities of the IIRO, along with other members of Suleiman al Rajhi's committee. *See* Ex. 1, Al Rajhi Deposition at 268-271 (stating that Hussayen worked on the bank's shariah committee beginning in 1988, was a senior government official prior to joining ARB, and later managed the Two Holy Mosques for the Saudi government); *see also* Ex. 18 (Abdullah al Rajhi Exhibit 63) (IIRO 315040) (May 30, 1995 letter from the Assistant Director of IIRO-Tanzania to the Chief of Protocol, Ministry of Foreign Affairs, Dar es Salaam, informing that the Director General of the IIRO is sending a six-man delegation to Tanzania for an official visit, which includes Hussayen, Abdul Rahman al Rajhi, Saleh al Habdan ("Imam of | 44.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IV (heading).<br><br>(2) In addition, immaterial because Saleh al Hussayen was only a volunteer on the Bank's Sharia advisory board until 1999. Hussayen was never a paid employee or official of the Bank, had no role at the Bank at all after 1999, and the Bank had no role in his alleged September 2001 travel. *See* ARB Ex. 47 (Al Rajhi Bank Jan. 14, 2022 Ltr.) at 3-4 (explaining to Plaintiffs that Hussayen was not an employee, but a Sharia Board advisor who left his role in 1999 and had no affiliation with the Bank since then). | 44.<br><br>Pls. Ex. 18:<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing charity work that has no link to Al Qaeda. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Al Rajhi Mosque"), and Abdullah al Misfer). | | |
| 45 | Contemporaneous with the formation and growth of al Qaeda, Suleiman al Rajhi was himself establishing and overseeing a web of interrelated "charities" and institutions in the United States, including the U.S.-based SAAR (Suleiman Abdulaziz al Rajhi) Foundation, Inc. *See* Ex. 1, Al Rajhi Deposition at 294-295 (testifying that his father created the SAAR Foundation in the United States "to make an investment and use the proceed[s] of the investment to do charity work" and that he was "major, major contributor" to the endeavor); Ex. 19, PEC-BARZ013145- 13160 (Articles of Incorporation of the SAAR Foundation, Inc. identifying "Mr. Sulayman A. al-Salih" (Suleiman al Rajhi) and "Mr. Abdullah S. al-Abdulaziz" (Abdullah al Rajhi) as members of the Board of Trustees); Ex. 20, PEC-BARZ011521 (SAAR Foundation, Inc. Annual Report identifying Directors "Mr. Sulayman Al Abdul Aziz" | 45.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IV (heading).<br><br>(2) Immaterial because Plaintiffs do not show that any of the purported "web of interrelated 'charities' and institutions in the United States" was a parent, subsidiary, or affiliate of Al Rajhi Bank.<br><br>(3) Immaterial because the FBI, USCS, and IRS investigated the SAAR Foundation for several years, no charges or indictments were ever brought against the organization, and the SAAR Foundation was never designated as an SDGT by the United States. *See* Pls. Ex. 12 (Winer Dep.) at 143:13-18; Pls. Ex. 4 (Winer Report) at 186-187; ARB Ex. 4 (Lormel Rep.) at 9.<br><br>(4) Further, this Court previously dismissed Plaintiffs' claims as to the SAAR Network Defendants for failure to state a claim. *See In re: Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 523 (S.D.N.Y. 2010) ("Plaintiffs merely plead conclusory assertions against a large group of defendants, whom plaintiffs have independently concluded to be related and operating in unison. None of the Defendants can be held liable based on such allegations alone."). | 45.<br><br>Pls. Ex. 19<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>Pls. Ex. 20<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>Pls. Ex. 21<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>Pls. Ex. 22<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | (Suleiman al Rajhi) and "Mr. Abdullah Al Sulaiman" (Abdullah al Rajhi)); Ex. 21, NL 0000693-713 (1987 IRS Form 990, SAAR Foundation, Inc., identifying Chairman "Shaikh Sulayman A. al-Salih"(Suleiman al Rajhi) and Board of Trustee Member "Mr. Abdullah S. Al-Abdulaziz" (Abdullah al Rajhi)). *See also* Ex. 22, PEC-BARZ013117-13127 (1996-2000 SAAR Foundation, Inc. Annual Reports identifying E.O. 13224 Specially Designated Global Terrorist ("SDGT") Cherif Sedky - linked to E.O. 13224 SDGTs Wa'el Hamza Jelaidan and Yassin al Kadi, and the Muwafaq Foundation - as a principal officer.); Ex. 23, PEC-BARZ012025-12041 (1987 IRS Form 990, SAAR Foundation, Inc., identifying Cherif Sedky as Trustee and Secretary.). | | - Lacks authentication. *See* Fed. R. Evid. 901.<br><br>Pls. Ex. 23:<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Lacks authentication. *See* Fed. R. Evid. 901. |
| 46 | Suleiman al Rajhi also oversaw the establishment and operations of Sana-Bell, Inc. ("Sana-Bell U.S."), and Humana Charitable Trust ("Humana") in the United States. Sana-Bell was incorporated in Washington, D.C. on July 28, 1989. *See* Ex. 24, | 46.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IV (heading).<br><br>(2) Plaintiffs' reference to "Sana-Bell U.S." and "Humana" are immaterial and incomplete because Plaintiffs fail to note that this Court previously dismissed Plaintiffs' claims as to the SAAR | 46.<br><br>Pls. Ex. 24:<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | SANA-BELL 0001-10 (Articles of Incorporation of the SANA-BELL, Inc., July 28, 1999). The initial Board of Trustees included Suleiman al Rajhi ("Solayman Alsalih Alrajhi"), Saleh Kamel and Ibrahim Afandi (al Qaeda's elite financial sponsors identified of the "Golden Chain"), Dr. Farid Yasin Qurashi (IIRO's Secretary General), Dr. Abdulrahim al Saati (MWL/IIRO official), ███ █████ (MWL), and others. *Id.* at 0007. *See also* Ex. 4, Winer Report at 50. | Network Defendants for failure to state a claim. *See In re: Terrorist Attacks on Sept. 11, 2001,* 740 F. Supp. 2d 494, 523 (S.D.N.Y. 2010) ("Plaintiffs merely plead conclusory assertions against a large group of defendants, whom plaintiffs have independently concluded to be related and operating in unison. None of the Defendants can be held liable based on such allegations alone.").<br><br>- Additionally, this Court previously dismissed claims against Saleh Kamel for a failure to state a claim, noting "plaintiffs rely on evidence that has previously been rejected as having no evidentiary value." *In re: Terrorist Attacks on September 11, 2001,* 740 F. Supp. 2d 494, 522 (S.D.N.Y. 2010).<br><br>- Plaintiffs have previously voluntarily dismissed their claims in this case against Ibrahim Afandi. *See* Notice of Voluntary Dismissal (Sept. 28, 2010), ECF 2328; Notice of Voluntary Dismissal (Sept. 29, 2010), ECF 2341.<br><br>Disputed as unsupported by the evidence:<br><br>(1) Plaintiffs' reference to the "Golden Chain" is unsupported to the extent Plaintiffs rely on the Golden Chain as evidence, notwithstanding the fact that the Golden Chain theory has been repeatedly debunked, by this Court and others. *See, e.g., In re Terrorist Attacks on Sept. 11, 2001,* 349 F. Supp. 2d 765, 817-18 (S.D.N.Y. 2005) (finding document had "serious foundational flaws," concluding that "with no indication of who wrote the list, when it was written, or for what purpose, the Court cannot make the logical leap that the document is a list of early al Qaeda supporters"); *United States v. Arnaout,* No. 02 Cr. 892, 2003 WL 255226, at *1-2 (N.D. Ill. Feb. 4, 2003) (rejecting the proffered list as inadmissible hearsay). | Pls. Ex. 4, p. 50:<br><br>- Should be excluded to the extent expert testimony is used a conduit for hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for discussing attacks and theaters not at issue in this litigation. *See* Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | <u>Disputed as controverted by the evidence:</u><br><br>(1) Plaintiffs are incorrect in averring that Sulaiman bin Abdulaziz Al Rajhi "oversaw the establishment and operations of Sana-Bell, Inc."<br><br>- Sulaiman bin Abdulaziz Al-Rajhi was one of seven trustees on the Sana-Bell Inc. Board at its incorporation on July 28, 1989, a date which Plaintiffs have misinterpreted. *See* Pls. Ex. 24 (Articles of Incorporation of SANA-BELL, Inc., Jul. 28, 1999).<br><br>- Sulaiman Bin Abdul Aziz Al-Rajhi was not a member of the Board of Directors of Sana-Bell Inc. when it was dissolved on October 19, 2000. *See* ARB. Ex. 88 (Written Consent of the Board of Directors) at SANA-BELL 0012.<br><br>- Sulaiman bin Abdulaziz Al Rajhi resigned from Sana-Bell Inc. in 1992. *See* ARB Ex. 89 (Sulaiman Abdulaziz Al Rajhi Resignation Letters) at ARB-00039594-39604. | |
| 47 | In establishing the U.S.-based SAAR Foundation and related entities, Suleiman al Rajhi and Abdullah al Rajhi took deliberate steps to obscure and conceal their roles and involvement, including by intentionally and illegally using various false or misspelled names and fictitious addresses on official documents filed with the Commonwealth of Virginia. *See* Ex. 25 (Abdullah al Rajhi Exhibit 57), 1991-1994 Annual Reports for the SAAR Foundation, Inc. (identifying principal officers and | 47.<br><br><u>Immaterial for the reasons discussed above in response to Section IV (heading) and ¶ 45.</u><br><br><u>Disputed as conclusory; vague:</u><br><br>(1) Plaintiffs' reference to "deliberate steps to obscure and conceal their roles and involvement" is vague and conclusory.<br><br><u>Disputed as controverted by the evidence:</u><br><br>(1) Plaintiffs' averment regarding the use of "various false or misspelled names and fictitious addresses on official documents filed with the Commonwealth of Virginia" is controverted by the evidence. Both Sulaiman bin Abdulaziz Al Rajhi and Abdullah bin Sulaiman Al Rajhi used their legal Saudi Arabian first names, | 47.<br><br><u>Pls. Ex. 25</u>:<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Lacks authentication. *See* Fed. R. Evid. 901. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | directors); Ex. 1, Al Rajhi Deposition at 311 (confirming that the "Abdullah S. Al-Abdulaziz" on the second page of the 1994 Annual Report is him); *id.* at 311-313 (testifying that there was a conscious decision to identify him in a way that did not include the al Rajhi last name, out of privacy and security concerns); *id.* at 313 (stating that the "Salih Hussyyn" under his name appears to be the Saleh al Hussayen who served on ARB's Shariah board); *id.* at 313-314 (confirming that the "Abdullah S. Al-Dulaziz" on the second page of the 1993 Annual Report is him); *id.* at 314 (confirming that the "Sulayman A. Al-Salih" Abdullah S. Al-Abdulaziz" on the second page of the 1993 Annual Report is his father, without including the al Rajhi last name; "this is Sulaiman A. Abdulaziz and Al-Saleh, which is his grandfather name"); *id.* at 314-315 (testifying that neither he nor his father ever maintained a residence at "███████████ Herdon, VA ████" as identified in the 1993 Annual Report, | middle initials, and second middle names when listed as part of the initial board of trustees. *See* Pls. Ex.1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 314:5-15.<br><br>(2) When asked about the name of Saleh al Hussayen on the 1994 SAAR Annual Report, Abdullah bin Sulaiman Al Rajhi confirmed it "looked like" the same name, but could not be sure that the person was the same individual who served on the Al Rajhi Sharia Board. *See* Pls. Ex.1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 313:3-15. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | because they were in Saudi Arabia at the time). | | |
| 48 | According to a joint Federal Bureau of Investigation ("FBI")-CIA assessment in December 2004, the U.S.-based SAAR Foundation and its associated entities were "a complex web of overlapping companies with parallel ideologies, personal relatonships, and financial associates that has exhibited numerous affiliations with entities known to support terrorism." *See* Ex. 26 (Lormel Exhibit 9), *Assessment of Saudi Arabian Support to Terrorism and the Counterintelligence Threat to the United States*, December 2004, EO14040-003414-3442-UPDATED at 3438; Ex. 4, Winer Report at 89, 93. | 48.<br><br>Immaterial for the reasons discussed above in response to Section IV (heading) and ¶ 45.<br><br>Disputed as vague; conclusory:<br><br>(1) The report's unsourced characterization of the SAAR Foundation and "associated entities" and "a complex web of companies . . . that has exhibited numerous affiliations with entities known to support terrorism" is vague, conclusory, and unsupported. | 48.<br><br>Pls. Ex. 4, pgs. 89, 93:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>Pls. Ex. 26:<br><br>- Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt by association. *See* Fed. R. Evid. 403. |
| 49 | At all times material, the U.S.-based SAAR Foundation and its web of related entities operated as a shell and cut-out for Suleiman al Rajhi and his Saudi-based committee. *See* Ex. 4, Winer Report at 184-200; Ex. 27, FED-PEC0001243-1369, *In the Matter* | 49.<br><br>Immaterial for the reasons discussed above in response to Section IV (heading) and ¶¶ 40, 45.<br><br>Disputed as vague; conclusory: | 49.<br><br>Pls. Ex. 4, pgs. 184-200:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (NL documents, Kane |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | *of Searches Involving 555 Grove Street, Herndon, Virginia, and Related Locations*, (Proposed Redacted) Affidavit in Support of Application for Search Warrant, District Court for the Eastern District of Virginia, October 2003 ("Kane Affidavit"); Ex. 28, Washington Post, *Finances Prompted Raids on Muslims*, March 24, 2002. | (1) Plaintiffs' averment that the U.S.-based SAAR Foundation "operated as a shell and cut-out for" Sulaiman Abdulaziz Al Rajhi "and his Saudi-based committee" is vague and conclusory. | affidavit). *See* Fed. R. Evid. 802. <br><br> Pls. Ex. 27: <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> Pls. Ex. 28: <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 50 | For example, and as discussed in further detail below, documents obtained in discovery from ▮▮▮▮▮, who served as an officer of both the U.S.-based SAAR and Humana, show that, under an arrangement orchestrated by Suleiman al Rajhi and Abdullah al Rajhi, Suleiman al Rajhi distributed millions of dollars through his Saudi committee in 1999, to a range of Islamic causes throughout the world, including the United States, which were then attributed, as if actually paid, to Humana. Ex. 4, Winer Report at 184-200. *See* Ex. 29 (Galloway Exhibit 22), NL 15578 (October 18, 1999 letter from Suleiman al Rajhi to ▮▮▮▮▮ stating: "As we discussed and agreed during | 50. <br><br> <u>Immaterial for the reasons discussed above in response to Section IV (heading) and ¶¶ 40, 45.</u> <br><br> <u>Disputed as vague:</u> <br><br> (1) Plaintiffs' references to "Saudi committee" and "range of Islamic causes" are vague. <br><br> <u>Disputed as misleading:</u> <br><br> (1) Plaintiffs' reference to letters between Sulaiman bin Abdulaziz Al Rajhi and ▮▮▮▮▮ is misleading. As Abdullah bin Sulaiman Al Rajhi testified, communications between his office and ▮▮▮▮▮ were not communications directed to or from Abdullah bin Sulaiman Al Rajhi or Al Rajhi Bank. Abdullah bin Sulaiman al Rajhi sometimes fielded communications between ▮▮▮▮▮ and Sulaiman bin Abdulaziz Al Rajhi because ▮▮ did not read or speak Arabic and Sulaiman bin Abdulaziz Rajhi did not read or speak English. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 317:7-318:11. | 50. <br><br> Pls. Ex. 4, pgs. 184-200: <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (NL documents, Kane affidavit). *See* Fed. R. Evid. 802. <br><br> Pls. Ex. 29: <br><br> - Lack authentication. *See* Fed. R. Evid. 901. <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
|  | your visit in December 1998 that Humana Charitable Trust will joint in and pay part of these contributions. Attached is the list of grants made and paid by me to various entities sent for reimbursement for your part of the contribution."), and NL 0015043-15046 (listing of Suleiman al Rajhi's "Foreign and Domestic Aid for the Year 1419-1420 AH (1998-1999AD)"). | Disputed as controverted by the evidence: <br><br> (1) To the extent Plaintiffs aver that Sulaiman bin Abdulaziz Al Rajhi was not genuinely philanthropic and did not make legitimate charitable donations, those assertions are controverted by the evidence for the reasons discussed above in response to ¶ 40. |  |
| 51 | Communications between ██████ and Abdullah al Rajhi following Suleiman al Rajhi's October 18, 1999 letter confirm the payment arrangement between Humana Charitable Trust and Suleiman's Saudi committee. *See* Ex. 30, NL 20470 (October 26, 1999 email from ████ to Abdullah al Rajhi ("Abu Sultan") asking him to send "the copy of the registration of charities with a request to Humana to assist."); Ex. 31, NL 20452 (November 3, 1999 email from Abdullah al Rajhi to ████ suggesting that ████ "kindly transfer $3.0 mln in hand and then wait for the rest."); Ex. 32, NL 20453-20454 (November 3-4, 1999 email exchanges | 51. <br><br> Immaterial for the reasons discussed above in response to Section IV (heading) ¶¶ 40, 45. <br><br> Disputed as vague: <br><br> (1) Plaintiffs' reference to "payment arrangement" is vague. <br><br> Disputed as controverted by the evidence: <br><br> (1) To the extent admissible, Plaintiffs' characterization of documents as "communications between ████████ and Abdullah al Rajhi" is controverted by the evidence. As Abdullah bin Sulaiman Al Rajhi testified, communications between his office and ████████ were not communications directed to or from Abdullah bin Sulaiman Al Rajhi or Al Rajhi Bank. Abdullah bin Sulaiman al Rajhi sometimes fielded communications between ████████ and Sulaiman bin Abdulaziz Al Rajhi because ████ did not read or speak Arabic and Sulaiman bin Abdulaziz Rajhi did not read or speak English. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 317:7-318:11. | 51. <br><br> Pls. Exs. 30-37 <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> Pls. Ex. 4, pgs. 184-200: <br><br> - Should be excluded to the extent expert testimony is used as a conduit for hearsay (NL documents, Kane affidavit). *See* Fed. R. Evid. 802. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | between ██████ and Bushra Ahmed (on behalf of Abdullah al Rajhi) regarding payment of $2.8 million "from Humana Charitable Trust as contribution to the charity you are sending me the details."); Ex. 33, NL 15048 (November 22, 1999 email from ██████ to Abdullah al Rajhi stating that "Humana Charitable Trust will transfer tomorrow $3.3 m. as advance for reimbursement for contributions made by your charity."); Ex. 34, NL 15551 (June 22, 2000 email from ██████ to Abdullah al Rajhi stating that they "have received many more questions and requests from IRS to produce various documents" and that the IRS is starting a field audit next week, and asks Abdullah to "please send us supporting documents for disbursement made to Saudi institutions as soon as practicable."); Ex. 35, NL 15572 (October 31, 2000 email from ██████ to Abdullah al Rajhi explaining that the IRS is requesting address and contact information for certain organizations who received contributions); Ex. 36, NL 15573- | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
|  | 15576 (November 9, 2000 fax from ▮▮▮ to Abdullah al Rajhi ("Abu Sultan") asking for copies of checks for contributions to a number of beneficiaries in 1999); Ex. 37, NL 15042 (February 14, 2001 email from ▮▮▮ to Abdullah al Rajhi referencing the "on going audit by the IRS" and stating "[t]hat is why I suggest and you have agreed to make contributions from Humana's account directly to charities of choice, rather than thru Shaikh Sulaiman's account which may be questioned as IRS is raising doubts if Humana is really a charitable organization."); Ex. 4, Winer Report at 184-200. |  |  |
| 52 | The available evidence shows that the transfers were funded via the Suleiman al Rajhi committee's account at ARB, and in many cases paid through the "Payable Through" account ARB established at Chase Manhattan Bank in New York, an arrangment that obscured the origins of the funds. *See also* Ex. 14 (Abdullah al Rajhi Exhibit 56) (NL 9625) ("In accordance with the established practice of the Charity | 52.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IV (heading) and ¶¶ 35, 40, 45.<br><br>(2) Immaterial to the extent that Plaintiffs allege that processing transactions through a payable-through account at Chase Manhattan reveals improper intent of the Bank, given that the long-time use of payable-through accounts in the United States indicates it was "a normal banking practice" during the relevant period. *See* ARB Ex. 2 (Hobayb Report) at 32.<br><br>(3) Moreover, Plaintiffs have no evidence that any funds in Al Rajhi Bank's correspondent account at Chase Manhattan were used for | 52.<br><br><u>Pls. Ex. 14</u><br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br><u>Pls. Ex 4, p. 27, 100, 102, 103, 173, 188-189, 191-193, 200-203:</u> |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | office, as explained in the third paragraph of this statement, the checks are processed without showing the contributor's name. These are processed by Al Rajhi Banking and Investment Corporation [Riyadh Saudi Arabia], having its account with Chase Manhattan and other correspondent banks."); Ex. 4, Winer Report at 4,5, 27, 100, 102, 103, 173, 188, 189, 191-193, 200-203. | an improper purpose, including planning, carrying out, or financing terrorism against the United States. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.).<br><br><u>Disputed as controverted by the evidence; misleading:</u><br><br>(1) Within the cited pages of the Winer report, Winer himself notes that he reviewed *30* checks that were "*made by Abdul Rahman Al Rajhi.*" *See* Pls. Ex. 4 Winer Report at 173 (emphasis added). Only two checks cited by Winer, KSA 1685 and KSA 1687, are checks without the issuer's name on them. | - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (including references to the Golden Chain, NL documents, Kane Affidavit). *See* Fed. R. Evid. 802. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | **Section V** | |
| V. | Al Qaeda and Its Pre-9/11 Funding (¶¶ 53-132) | **V. (heading)** <br><br> <u>Immaterial:</u> <br><br> Plaintiffs' averments in Section V are immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. <br><br> (1) The averments in Section V, even if credited, do not show that Al Rajhi Bank took any tortious act in support of Al Qaeda or the 9/11 Attacks, or aimed at the United States. Plaintiffs' averments do not show that any money that was transferred through accounts at Al Rajhi Bank reached Al Qaeda or supported the financing, planning, or carrying out of the 9/11 Attacks or any other act against the United States. Nor do Plaintiffs' averments show that any donations made by Al Rajhi Bank or its principals supported the financing, planning, or carrying out of the 9/11 Attacks or any other act against the United States. And Plaintiffs' averments do not show that the Bank acted with any knowledge or intent to support Al Qaeda or support the financing, planning, or carrying out of the 9/11 Attacks or any other terrorism or terrorist plot against the United States. <br><br> (2) Plaintiffs' averments with respect to Osama bin Laden are immaterial because: <br><br> - The undisputed, admissible evidence shows that any accounts at Al Rajhi Bank held in the name of Osama bin Laden had been frozen since at least 1994, when the Saudi government "fr[oz]e his financial assets and revoke[d] his citizenship. Pls. Ex. 40 (9/11 Comm'n. Rep.) at 57; see also ARB Aver. ¶¶ 91-92; ARB Ex. 8 (Nov. 16, 2002 Ltr. from Al Rajhi Bank to SAMA) at ARB-39559 (showing all bin Laden accounts | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | "blocked"). During the relevant period, bin Laden thus had no access to his accounts or assets at the Bank, and he could not (and did not) make any transfers or receive any funds through his accounts at the Bank. ARB Aver. ¶¶ 4, 93. | |

Plaintiffs' own experts concede that bin Laden did not use, and could not have used, his accounts at all after his citizenship was revoked and his assets were frozen in 1994. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 53:5-55:2; ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 17:1-25.

Moreover, bin Laden was not designated when he opened his accounts at Al Rajhi Bank in 1991. *See* ARB Aver. ¶ 5. Indeed, he was not designated until 1998, years after his Al Rajhi Bank accounts were frozen. *See* ARB Ex. 73 (Exec. Order No. 13,099, 63 Fed. Reg. 45,167 (Aug. 20, 1998)).

(3) Plaintiffs' averments regarding any charity's or any individual's support for the Afghan resistance against the Soviet Invasion or the Mujahideen forces in Bosnia or Chechnya are immaterial and irrelevant to Plaintiffs' assertion that the Bank expressly aimed tortious conduct at the United States. See ARB Ex. 1 (Dean Rep.) at 14 ("Winer, Kohlmann, and the CIA reports they cite are incorrect in suggesting that anyone who supported the resistance movements in Bosnia or Chechnya or the Afghan mujahideen must also have supported al-Qaeda's terrorist agenda.").

(4) Plaintiffs' averments regarding charity branches outside Saudi Arabia are immaterial because they do not show any conduct of the Bank, let alone any conduct of the Bank that was expressly aimed against the United States. Plaintiffs fail to show a single transaction through the Bank involving the charity branches and Al Qaeda or the 9/11 Attacks or other terrorism against the United States, or that the Bank had any knowledge of any purported

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | affiliations of the charity branches with terrorism.  No charity branches outside Saudi Arabia of any of the charities discussed in Plaintiffs' Averment held accounts with Al Rajhi Bank.<br><br>- During the relevant period, the Bank did not hold any accounts for any IIRO or Al Haramain branches outside of Saudi Arabia.  *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13, 350:16.<br><br>- During the relevant period, the Bank held accounts for the Saudi headquarters of IIRO ("IIRO KSA"), which was never designated under any sanctions regime for connection to terrorism.  *See* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 140:6-13 (acknowledging that IIRO KSA never received a sanctions designation); *see generally* ARB Ex. 59 (Office of Foreign Assets Control, *Specially Designated Nationals and Blocked Persons List*, U.S. Dept. of Treas. (May 3, 2024)).<br><br>- During the relevant period, the Bank held accounts for the Saudi headquarters of Al Haramain ("Al Haramain KSA"), which was not designated under any sanctions regime for connections to terrorism until it was designated by the United States in 2008, seven years after the 9/11 Attacks. Pls. Ex. 60 (Treasury Designates Al Haramain Islamic Foundation KSA).<br><br>(5) Plaintiffs' averments concerning charities are also immaterial because Plaintiffs fail to show that Al Rajhi Bank had any accounts for charities or charity officials that were designated under any sanction regime before the 9/11 Attacks.  Plaintiffs also have no evidence that Al Rajhi Bank had any knowledge of any purported link between any charity or charity officials and Al Qaeda before the 9/11 Attacks.<br><br>- During the relevant period, Al Haramain KSA was a government-licensed, charitable organization in Saudi Arabia. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 251:12-252:20 and Errata at 230:4, 251:14, 251:23-24, 252:1, 252:4, 252:7-8, 252:13-14, 252:16, 252:18; ARB Ex. 41 (Oct. 17, 1997 Ltr. from Ministry of Islamic Affairs) at ARB-38586 (stating that Al Haramain KSA operates under the supervision of the Saudi Ministry of Islamic Affairs); *see also* Pls. Ex. 44 (Staff Monograph) at 12 ("At least two Saudi government officials have supervisory roles (nominal or otherwise) over al Haramain."); ARB Ex. 42 (Jan. 29, 1997 Ltr. from Dep. Minister of Islamic Affairs) at ARB-38613 (authorizing the opening of an Al Haramain account at Al Rajhi Bank branch); ARB Ex. 43 (July 14, 1998 Ltr. from the Gen. Mngr. of the Eastern Province of the Ministry of Islamic Affairs) at ARB-38741 (stating Al Haramain is under the supervision of the Ministry of Islamic Affairs); ARB Ex. 41 (Sept. 26, 1998 Ltr. from Dep. Minister of Islamic Affairs) at ARB-38585 (requesting transfer of certain accounts into the name of Al Haramain Islamic Foundation, with signatory authority to be determined by Director General Aqeel Al-Aqeel); ARB Ex. 44 (April 14, 1999 Commercial Office License) at ARB-38837 (copy of Commercial Office License issued by the Department of Lands and Real Estate for an Al Haramain office in Jubail Municipality); ARB Ex. 56 (Ltr. from the Gov. of Yanbu, June 1, 1999) at ARB-38818 (discussing the newly opened Al Haramain office in the region); ARB Ex. 24 (Jan. 4 2004 (Hijri) Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-14545 (stating the Bank's understanding that Al Haramain KSA was "licensed according to His Highness the Minister of Interior's letter," dated February 7, 1996); ARB Ex. 26 (Mar. 13, 2004 Ltr. from Ministry of Islamic Affairs) at ARB-39505 (confirming that Al Haramain KSA was permitted to engage in charitable work in the Kingdom); ARB Ex. 27 (Mar. 21, 2004 Ltrs. from Ministry of Justice to Al Rajhi Bank) | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | at ARB-39409 (confirming that Al-Haramain KSA was "legally established in . . . Saudi Arabia and permitted to operate under its laws and regulations"). | |
| | | - Al Haramain KSA was widely recognized as a reputable charitable organization that provided bona fide benevolent and humanitarian work in the form of the sponsorship of orphans and refugees, the provision of medicine, food, and clothing to those in need in conflict areas, and the development of educational programs. *See* Pls. Ex. 44 (Staff Monograph) at 115 (stating that Al Haramain "provides meals and assistance to Muslims around the world, distributes books and pamphlets, pays for potable water projects, sets up and equips medical facilities, and operates more than 20 orphanages"); *see also* ARB Ex. 5 (Letters describing Al Haramain KSA's humanitarian projects and good works) at ARB-38774-ARB-38775 (letters describing Al Haramain KSA's humanitarian projects and good works); ARB Ex. 23 (June 7, 1999 Ltr. from Prince of Tabuk) at ARB-38699 (letter in Al Haramain KSA's KYC files describing Al Haramain KSA as a "humanitarian" organization engaged in "relief efforts"); ARB Ex. 1 (Dean Report) at 8 (describing the widespread recognition of Al Haramain for good works and humanitarian efforts); Pls. Ex. 56 ("Remarks by Treasury Secretary Paul O'Neill on New U.S.-Saudi Arabia Terrorist Financing Designations," Mar. 11, 2002) (referring to Al Haramain and stating that "the Saudi headquarters for this private charitable entity is dedicated to promoting Islamic teachings"). | |
| | | - At the time of the 2002 U.S.-Saudi joint designation of Al Haramain branches outside of Saudi Arabia for connections to terrorism, U.S. Treasury Secretary Paul O'Neill distinguished Al Haramain KSA from the Al Haramain branches, stating that Al Haramain KSA "is dedicated to promoting Islamic | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | teachings." Pls. Ex. 56 (Remarks by Treasury Secretary Paul O'Neill on New U.S.-Saudi Arabia Terrorist Financing Designations). | |
| | | (6) Aqil al Aqil, Mansour al Kadi, Soliman al Buthe, and Perouz Sedaghaty were publicly known as officials of Al Haramain, a prominent, respected, and government-licensed charity before the 9/11 Attacks. None of these individuals was designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* ARB Ex. 3 (Pasley Rep.) at 6 (noting that Plaintiffs' experts only identify "post-9/11 sanctions designations against NGOs and individuals for alleged ties to terrorism and Al Qaeda"); see also ARB Ex. 28 (Winer Dep. Tr. and Errata) at 53:5-55:2; ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) 126:12-13, 130:21-131:2. | |
| | | (7) IIRO KSA was a government-licensed, charitable organization in Saudi Arabia. See Pls. Ex. 3 (Galloway Dep. Tr.) and Errata at 232:19; ARB Ex. 29 (Cert. fr. Min. of Foreign Affs.) at ARB-13679-ARB-13688, ARB-13691, ARB-13696 (recognizing the founding of IIRO by the Deputy Prime Minister of Saudi Arabia and the Ministry of Foreign Affairs); ARB Ex. 24 (Jan. 4, 2004 Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-14545 (stating the Bank's understanding that IIRO KSA was "licensed according to the directive of His Majesty the King," and that "[t]he certificate issued by the Ministry of Foreign Affairs states that the Organization is recognized by the government of the Kingdom of Saudi Arabia"); ARB Ex. 40 (Series of Ltrs. dated Nov. 18, 1989 to Dec. 16, 1989 from the Ministry of Interior in the Emirate of Asir) at ARB-37502-ARB-37511 (discussing the opening of IIRO office in the Emirate of Asir in 1990); ARB Ex. 39 (Sept. 20, 1989 Letter from the Governor of the Asir Emirate to the Chairman of the Imam Muhammad ibn Saud Islamic University) at ARB-37838-ARB37839 (affirming the opening of an IIRO office in the | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | region, dated September 20, 1989); ARB Ex. 38 (Jan. 26, 1994 business license in Jubail Municipality) at ARB-13527 (permitting IIRO to collect donations). | |

- IIRO KSA was widely recognized as a reputable charitable organization that provided bona fide benevolent work such as educational programs, healthcare, and cash and in-kind donations to Muslims in need, and supported social and economic development worldwide. *See* ARB Ex. 29 (Cert. fr. Min. of Foreign Affs.) at ARB-13683 (certificate in IIRO KYC files certifying IIRO as a "humanitarian non governmental body" whose "main concern is to care for the Refugees, Children and the victims of wars and disasters"); ARB Ex. 29 (Oct. 1978 Ltr. from MWL) at ARB-13692 (letter in IIRO KYC files stating IIRO's purpose is to provide relief to the poor, orphans, and widows, and to develop hospitals and schools); *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 146:3-147:7 (acknowledging that IIRO provided humanitarian relief to Muslims around the world); ARB Ex. 1 (Dean Report) at 8 (describing the widespread recognition of IIRO for good works and humanitarian efforts).

- Before the 9/11 Attacks, neither IIRO KSA nor any IIRO branch was designated under any sanctions regime for connections to terrorism. *See* Pls. Ex. 170 ("Treasury Designates Director, Branches of Charity Bankrolling Al Qaida Network," Aug. 3, 2006) (showing first sanctions designations of IIRO branches began in 2006); *see also* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 57:8-12 ("To the best of my knowledge, there were no charities of any kind that I recollect that had been designated prior to 9/11 because terrorist designations were originally limited to terrorist organizations."); ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 126:12-13, 130:21-131:2 (testifying that charity

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | designations only began after 9/11 and that he had not identified **any** Al Rajhi Bank transactions violating sanctions or designations, because "once the designation has been issued," it becomes "impossible to open an account under that [designated] person's name"). <br><br> (8) Plaintiffs' averments in Section V are immaterial because, even if credited, the evidence shows that the Bank provided only routine banking services to reputable charities and charity officials before the 9/11 Attacks. | |
| 53 | Al Qaeda is an international terrorist organization, founded in approximately September 1988, by Osama bin Laden and other foreign fighters who participated in the "jihad" against the Soviet Union in Afghanistan. *See* Ex. 38 (Pasley Exhibit 4), Expert Report of Evan Kohlmann ("Kohlmann Report") at 7; Ex. 39, Kohlmann Declaration (attesting to opinions in report); Ex. 40 (Lormel Exhibit 15), Final Report of the National Commission on Terrorist Attacks Upon the United States ("9/11 Commission Report"), Chapter 2. | 53. <br><br> Immaterial for reasons discussed above in response to Section V (heading). <br><br> Disputed as vague: <br><br> (1) Plaintiffs' reference to "other foreign fighters" is vague. <br><br> (2) Plaintiffs' reference to "jihad" is vague. | 53. <br><br> Pls. Ex. 38 at 7: <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issue, for discussing conduct that is not sufficiently similar to the conduct at issue, i.e., equating all jihad, including actions against the Soviet Union in Afghanistan as support for Al Qaeda's terrorist agenda against the United States. *See* Fed. R. Evid. 403. |
| 54 | As is undisputed, al Qaeda planned, funded, and carried out the September 11th attacks. *See* Ex. 40, 9/11 Commission Report at 47-70, 145-173, 215-253, 365-366. | 54. <br><br> Immaterial for reasons discussed above in response to Section V (heading). | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 55 | Al Qaeda was established to carry out "holy war," or "jihad," against perceived enemies of Islam and, in particular, the United States. *See* Ex. 38, Kohlmann Report at 7. | 55. <br><br> <u>Immaterial for reasons discussed above in response to Section V (heading).</u> <br><br> <u>Disputed as vague:</u> <br><br> (1) Plaintiffs' references to "holy war" and "jihad" are vague. | 55. <br><br> <u>Pls. Ex. 38 at 7:</u> <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issue, for discussing conduct that is not sufficiently similar to the conduct at issue, i.e., equating all jihad, including actions against the Soviet Union in Afghanistan as support for Al Qaeda's terrorist agenda against the United States. *See* Fed. R. Evid. 403. |
| 56 | As the 9/11 Commission explained: <br><br> April 1988 brought victory for the Afghan jihad. Moscow declared it would pull its military forces out of Afghanistan within the next nine months. As the Soviets began their withdrawal, the jihad's leaders debated what to do next. <br><br> Bin Ladin and [Abdullah] Azzam agreed that the | 56. <br><br> <u>Immaterial for the reasons discussed above in response to Section V (heading).</u> | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | organization successfully created for Afghanistan should not be allowed to dissolve. They established what they called a base or foundation (al Qaeda) as a potential general headquarters for future jihad.<br><br>*See* Ex. 40, 9/11 Commission Report at 56. | | |
| 57 | From at least 1991 and throughout the ensuing years preceding the September 11th attacks, bin Laden made clear to his supporters, allies, and others that al Qaeda's primary goal and mission was to carry out attacks against the United States:<br><br>Bin Ladin began delivering diatribes against the United States before he left Saudi Arabia [in 1991]. He continued to do so after he arrived in Sudan. In early 1992, the al Qaeda leadership issued a fatwa calling for jihad against the | 57.<br><br>Immaterial:<br><br>(1) Immaterial for reasons discussed above in response to Section V (heading).<br><br>(2) In addition, immaterial because what bin Laden purportedly "made clear to his supporters, allies, and others" is not indicative of Al Rajhi Bank's knowledge and does not show that the Bank expressly aimed intentional, tortious conduct at the United States.<br><br>(3) Immaterial because bin Laden's accounts at Al Rajhi Bank were frozen by the time bin Laden made his first "public fatwa" against the United States "in August 1996." *See* ARB Aver. ¶ 4. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | Western "occupation" of Islamic lands. Specifically singling out U.S. forces for attack, the language resembled that which would appear in Bin Ladin's public fatwa in August 1996. In ensuing weeks, Bin Ladin delivered an oft-repeated lecture on the need to cut off "the head of the snake." *Id.* at 59; *see also id.* ("Bin Ladin concentrated [from al Qaeda's early years] on attacking the 'far enemy' - the United States"). | | |
| 58 | To support and enhance its opportunities to attack the United States, al Qaeda established fronts and footholds in a variety of jurisdictions: Bin Ladin's impressive array of offices covertly provided financial and other support for terrorist activities. The network included a major business enterprise in Cyprus; a | 58. Immaterial: (1) Immaterial for reasons discussed above in response to Section V (heading). (2) Immaterial because bin Laden's accounts at Al Rajhi Bank were frozen by the time bin Laden made his first "public fatwa" against the United States "in August 1996." *See* ARB Aver. ¶ 4. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | "services" branch in Zagreb; an office of the Benevolence International Foundation in Sarajevo, which supported the Bosnian Muslims in their conflict with Serbia and Croatia; and an NGO in Baku, Azerbaijan, that was employed as well by Egyptian Islamic Jihad both as a source and conduit for finances and as a support center for the Muslim rebels in Chechnya. He also made use of the already-established Third World Relief Agency (TWRA) headquartered in Vienna, whose branch office locations included Zagreb and Budapest. (Bin Ladin later set up an NGO in Nairobi as a cover for operatives there.)<br><br>Bin Ladin now had a vision of himself as | | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | head of an international jihad confederation. In Sudan, he established an "Islamic Army Shura" that was to serve as the coordinating body for the consortium of terrorist groups with which he was forging alliances. It was composed of his own al Qaeda Shura together with leaders or representatives of terrorist organizations that were still independent. In building this Islamic army, he enlisted groups from Saudi Arabia, Egypt, Jordan, Lebanon, Iraq, Oman, Algeria, Libya, Tunisia, Morocco, Somalia, and Eritrea. Al Qaeda also established cooperative but less formal relationships with other extremist groups from these same countries; from the African states of Chad, Mali, Niger, Nigeria, and Uganda; | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | and from the Southeast Asian states of Burma, Thailand, Malaysia, and Indonesia. Bin Ladin maintained connections in the Bosnian conflict as well. The groundwork for a true global terrorist network was being laid.<br><br>Bin Ladin also provided equipment and training assistance to the Moro Islamic Liberation Front in the Philippines and also to a newly forming Philippine group that called itself the Abu Sayyaf Brigade, after one of the major Afghan jihadist commanders. Al Qaeda helped Jemaah Islamiya (JI), a nascent organization headed by Indonesian Islamists with cells scattered across Malaysia, Singapore, Indonesia, and the Philippines. It also aided a Pakistani group engaged in | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | insurrectionist attacks in Kashmir. In mid-1991, Bin Ladin dispatched a band of supporters to the northern Afghanistan border to assist the Tajikistan Islamists in the ethnic conflicts that had been boiling there even before the Central Asian departments of the Soviet Union became independent states.<br><br>This pattern of expansion through building alliances extended to the United States. A Muslim organization called al Khifa had numerous branch offices, the largest of which was in the Farouq mosque in Brooklyn. In the mid 1980s, it had been set up as one of the first outposts of Azzam and Bin Ladin's MAK. Other cities with branches of al Khifa | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | included Atlanta, Boston, Chicago, Pittsburgh, and Tucson. Al Khifa recruited American Muslims to fight in Afghanistan; some of them would participate in terrorist actions in the United States in the early 1990s and in al Qaeda operations elsewhere, including the 1998 attacks on U.S. embassies in East Africa.<br><br>*See* Ex. 40, 9/11 Commission Report at 57-58. | | |
| 59 | Al Qaeda's participation in the jihads in Bosnia, Chechnya, and elsewhere was directly aimed at facilitating and enhancing its opportunities to attack the United States. *See, e.g.,* Ex. 41 (Dean Exhibit 4), *Government's Evidentiary Proffer Supporting the Admissibility of Coconspirator Statements,* PEC-KSA002014-2114 at 2036 (Al Qaeda member Abdel Rahman al Dosari stated that "al Qaeda was seeking to establish training camps in | 59.<br><br><u>Immaterial for the reasons discussed above in response to Section V (heading) and ¶ 58.</u><br><br><u>Disputed as vague:</u><br><br>(1) Plaintiffs' reference to "jihads" is vague. | 59.<br><br><u>Pls. Ex. 41:</u><br><br>-Hearsay to which no exception applies. *See United States v. Arnaout,* 2003 WL 255226 (N.D. Ill. Feb. 4, 2003); *In Re Terrorist Attacks on September 11,* 349 F. Supp. 2d 765 (S.D.N.Y. 2005); *see also* Fed. R. Evid 802.<br><br>- Lack of personal knowledge. *See* Fed. R. Evid. 602. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | Bosnia, forge relations with relief agencies in Bosnia and establish businesses to support al Qaeda economically," and "to establish a base of operations in Europe against al Qaeda's true enemy, the United States."); *id.* at 2030 (stating that "actions taken in Afghanistan, the Sudan, Bosnia, and Chechnya should not be viewed as disparate conduct but should instead be viewed as the conduct of an evolving enterprise"); Ex. 40, 9/11 Commission Report at 466, n. 21; 467, n. 25 and 26; 470, n. 79 and 80 (citing to the *Government's Evidentiary Proffer Supporting the Admissibility of Coconspirator Statements);* Ex. 42, August 29, 2002 Interview with Jamal al Fadl, PEC-KSA000329-352 at 344 ("Bin Laden felt it was important for Al Qaeda to assist the Bosnians in an effort to establish an Al Qaeda base of operations or presence in Europe from which they would have easy access to other European countries as well as the western nations."); Ex. 43 (Dean Exhibit 5), United Nations Sanctions Committee designation summary for the Islamic | | - Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing conduct that is not sufficiently similar to the conduct at issue and not related to the attacks at issue in this litigation. *See* Fed. R. Evid. 403. <br><br> Pls. Ex. 42: <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid 802. <br><br> - Lack of personal knowledge. *See* Fed. R. Evid 602. <br><br> Pls. Ex. 43: <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and organizations that are not at |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | International Brigade (indicating that Osama bin Laden met with leaders of the IIB and "agreed to provide substantial military assistance and financial aid, including by making arrangement to send to Chechnya several hundred fighters to fight against Russian troops and perpetrate acts of terrorism"). | | issue in this litigation. *See* Fed. R. Evid. 403. |
| 60 | Relying on this infrastructure and operational footprint, "[p]lans to attack the United States were developed with unwavering singlemindedness throughout the 1990s." *See* Ex. 40, 9/11 Commission Report at 48. | 60. <br><br> <u>Immaterial for the reasons discussed above in response to Section V (heading).</u> | |
| 61 | Among other plots, al Qaeda provided support for the 1993 attacks against U.S. soldiers in the battle of Mogadishu and for a 1995 Philippine-based plot to attack U.S. flag airliners mid-flight, and was responsible for the 1998 bombings of the U.S. Embassies in Kenya and Tanzania, the 2000 attack on the U.S.S. Cole, and, of course, the September 11th attacks. *See* Ex. 38, Kohlmann Report at 7; *see also* Ex. 40, 9/11 Commission | 61. <br><br> <u>Immaterial for the reasons discussed above in response to Section V (heading).</u> | 61. <br><br> <u>Pls. Ex. 38 at 7:</u> <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issue, for discussing attacks that are not at issue in this litigation. *See* Fed. R. Evid 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Report at 68-70, 97, 147-148, 190-191, 215-253. | | |
| 62 | As a global terrorist organization dedicated to carrying out jihad against the United States throughout the world, al Qaeda had extensive funding and fundraising needs. | 62.<br><br>Immaterial for the reasons discussed above in response to Section V (heading).<br><br>Disputed as vague:<br><br>(1) Plaintiffs' reference to "jihad against the United States" is vague.<br><br>Disputed as conclusory; does not cite supporting evidence:<br><br>(1) Plaintiffs cite no evidence to support their statement regarding Al Qaeda's fundraising or fundraising needs. | |
| 63 | According to the 9/11 Commission Staff Monograph on Terrorist Financing, al Qaeda required $30 million in annual funding to support its operations in the years leading up to the September 11th attacks, an assessment that has been broadly endorsed by experts in the field. *See* Ex. 44 (Lormel Exhibit 12), *Monograph on Terrorist Financing,* Staff Report to the 9/11 Commission ("Monograph") at 4; Ex. 4, Winer Report at 82. | 63.<br><br>Immaterial for the reasons discussed above in response to Section V (heading). | 63.<br><br>Pls. Ex. 4 at 82:<br><br>- Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403.<br><br>- Should be excluded to the extent expert testimony is used as conduit for hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 64 | To meet these fundraising needs, al Qaeda relied primarily on contributions from donors (primarily in the Gulf) who supported al Qaeda's global jihad, | 64. | 64.<br><br>Pls. Ex. 4 at 70-81:<br><br>- Should be excluded as needless presentation of |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | well-placed financial facilitators who raised funds for al Qaeda, and diversions of funds by Islamic charities that supported al Qaeda's cause. *See, e.g.,* Ex. 4, Winer Report at 21, 70-81, 112, 151, 205, 208, 211214; Ex. 38, Kohlmann Report at 7, 12, 13, 18, 20, 25-27, 29, 30, 36; Ex. 44, Monograph at 4 ("al Qaeda was funded, to the tune of approximately $30 million per year, by diversions of money from Islamic charities and the use of well-placed financial facilitators who gathered money from both witting and un-witting donors, primarily in the Gulf region."). *See also* Ex. 45, *Saudi-Based Financial Support for Terrorist Organizations,* November 14, 2002, CIA_00143-158 at 147 ("[REDACTED] al-Qa'ida and several other terrorist and militant groups consider Saudi Arabia a key base of financial support. [REDACTED] we estimate that since the mid-1990s terrorist groups have received tens of millions of dollars a year from Saudi Arabia. Most of the money originates from wealthy donors, fundraisers who solicit smaller donations, and non- | **Immaterial:** <br><br> (1) Immaterial for the reasons discussed above in response to Section V (heading). <br><br> (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading),and is otherwise conclusory and unsupported. <br><br> **Disputed as incomplete:** <br><br> (1) Al Rajhi Bank's expert Aimen Dean explained that individual employees of charity branches diverted funds to terrorism funding and created false documentation to mislead donors and the headquarters of charities. ARB Ex. 1 (Dean Rep.) at 10. <br><br> (2) Plaintiffs have failed to quote the following from one of the CIA reports they cite, which, if admissible, notes that donors are probably unaware of whether their funds go to Al Qaeda: "al-Qa'ida is funded in part by unwitting donors who contribute *zakat* donations to popular clerics or give money to local Islamic charities. [REDACTION] these donors probably are unaware that their funds go to al-Qa'ida." Pls. Ex. 47 (CIA Rep., *[REDACTED] Spectrum of Al-Qa'ida's Donors* (Oct. 30, 2003)) at CIA_660. | cumulative evidence. *See* Fed. R. Evid. 403. <br><br> - Should be excluded to the extent expert testimony is used as conduit for hearsay to which no exception applies. *See* Fed. R. Evid 802. <br><br> <u>Pls. Ex. 4 at 21, 25-27, 29, 112, 151, 205, 211-214:</u> <br><br> - Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by-association because of purported connections with individuals and because of providing routine banking services to charities. *See* Fed. R. Evid. 403. <br><br> <u>Pls. Ex. 38, p. 7:</u> <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay, including the Golden Chain and CIA reports. *See* Fed. R. Evid 802. <br><br> <u>Pls. Ex. 38 at 12-13, 18, 20, 25-27, 29, 30, 36:</u> <br><br> - Should be excluded to the extent expert testimony is used |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | governmental organizations (NGOs)"); Ex. 46, *Identifying Al-Qa'ida's Donors and Fundraisers: A Status Report*, February 27, 2002, CIA_00193-199 at 194 (stating that "wealthy individuals in the Arabian Peninsula and grassroots supporters from around the world are critical sources for al-Qa'ida"); Ex. 47, *[REDACTED] Spectrum of Al-Qa'ida's Donors*, October 30, 2003, CIA_000659-667 at 661 ("[REDACTED] other donors are close to al-Qa'ida operatives and are witting that their funds are destined for operational purposes. Such donors often demand confirmation that their contributions reach the hands of al-Qa'ida's top leadership or that their donations fund attacks against specific targets."). | | as a conduit for inadmissible hearsay (NL Docs). *See* Fed. R. Evid 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for attempting to impute liability through guilt-by-association, by providing routine banking services to individuals and charities, and discussing attacks not at issue in this litigation. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 45:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading).<br><br>Pls. Ex. 46:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading).<br><br>Pls. Ex. 47:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |
| 65 | As the 9/11 Commission explained, bin Laden's organization "included a financial | 65. | Pls. Ex. 4 at 81:<br><br>- Should be excluded as needless presentation of |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | support network that came to be known as 'the Golden Chain,' put together mainly by financiers in Saudi Arabia and Persian Gulf states. Donations flowed through charities and other non-governmental organizations (NGOs)." *See* Ex. 40, 9/11 Commission Report at 55. *See also* Ex. 4, Winer Report at 81, 96, 99, 100; Ex. 38, Kohlmann Report at 7. | Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section V (heading). <br><br> (2) In addition, immaterial as to references to the so-called "Golden Chain" document. <br><br> (3) The so-called "Golden Chain" document has been repeatedly debunked, by this Court and others. *See, e.g., In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 817-18 (S.D.N.Y. 2005) (finding document had "serious foundational flaws," concluding that "with no indication of who wrote the list, when it was written, or for what purpose, the Court cannot make the logical leap that the document is a list of early al Qaeda supporters"); *United States v. Arnaout*, No. 02-CR-892, 2003 WL 255226, at *1-2 (N.D. Ill. Feb. 4, 2003) (rejecting the proffered list as inadmissible hearsay). <br><br> (4) Moreover, the so-called "Golden Chain" document pre-dates the formation of Al Qaeda, and more likely is related to desired support for Afghan Rebels fighting the Russians in Afghanistan. ARB Ex. 4 (Lormel Rep.) at 25. | cumulative evidence. *See* Fed. R. Evid. 403. <br><br> - Should be excluded to the extent expert testimony is used as conduit for inadmissible hearsay. *See* Fed. R. Evid 802. <br><br> <u>Pls. Ex. 4 at 96, 99:</u> <br><br> - Should be excluded to the extent expert testimony is used a conduit for inadmissible hearsay (e.g., Golden Chain, WSJ article quoting CIA report). *See* Fed. R. Evid 802. <br><br> - Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. <br><br> <u>Pls. Ex. 4 at 100:</u> <br><br> - Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. <br><br> <u>Pls. Ex. 38 at 7:</u> <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (Golden Chain, CIA |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | | Reports). *See* Fed. R. Evid 802. |
| 66 | Following al Qaeda's move from Sudan to Afghanistan in 1996, "Bin Laden eventually enjoyed a strong financial position in Afghanistan, thanks to support from Saudi and other financiers associated with the Golden Chain." *See* Ex. 40, 9/11 Commission Report at 66; *id.* at 70 ("Al Qaeda appears to have relied on a core group of financial facilitators who raised money from a variety of donors and other fund-raisers, primarily in the Gulf countries and particularly in Saudi Arabia. Some individual donors knew, and others did not, the ultimate destination of their donations."). *See also* Ex. 4, Winer Report at 81, 96, 99, 100; Ex. 38, Kohlmann Report at 7; Ex. 45, *Saudi-Based Financial Support for Terrorist Organizations,* November 14, 2002, CIA_00143-158 at 148-149 (describing the support provided to the al Qaeda network by individuals identified on the Golden Chain, including Wa'el | 66. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section V (heading) and ¶ 57. <br><br> (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. <br><br> (3) In addition, immaterial as to references to the so-called "Golden Chain" document for the reasons discussed above in response to ¶ 65. | 66. <br><br> <u>Pls. Ex. 4 at 81:</u> <br><br> - Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid 802. <br><br> <u>Pls. Ex. 4 at 96, 99:</u> <br><br> - Should be excluded to the extent expert testimony is used a conduit for inadmissible hearsay (e.g., Golden Chain, WSJ article quoting CIA report). *See* Fed. R. Evid 802. <br><br> - Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. <br><br> <u>Pls. Ex. 4 at 100:</u> <br><br> - Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability on the basis of guilt- |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Jelaidan, Adel Batteijee, Bin Mahfouz, and al Rajhi). | | by-association. *See* Fed. R. Evid. 403. |
| 67 | The United States gained considerable insights into this financial infrastructure from Jamal Ahmed al Fadl, an al Qaeda financial manager who joined al Qaeda in 1988 and dealt directly with bin Laden and the al Qaeda leadership, until he defected and became a cooperating witness for the United States in 1996. *See* Ex. 40, 9/11 Commission Report at 62 (explaining that al Fadl, who had taken the oath of fealty to bin Laden and served as one of his business agents, "defected and became a star informant for the United States"); *id.* at 109 (stating that al Fadl "provided a major breakthrough of intelligence on the creation, character, direction, and intentions of al Qaeda"); *id.* at 185 ("[The CIA] knew relativity early, for example, about the loose affiliation of financial institutions, businesses, and wealthy individuals who supported extremist Islamic activities. Much of the earlier reporting on al Qaeda's financial situation and its structure came from Jamal Ahmed | 67.<br><br>Immaterial for the reasons discussed above in response to Section V (heading). | 67.<br><br>Pls. Ex. 4 at 81:<br><br>- Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403.<br><br>- Should be excluded to the extent expert testimony is used as conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | al Fadl."). *See also* Ex. 4, Winer Report at 81. | | |
| 68 | In interviews with the FBI, al Fadl explained that the "'Golden Chain' consisted of wealthy individuals from the Gulf region who provided BIN LADEN and Al QAEDA with money on a regular basis." *See* Ex. 42, August 29, 2002 Interview with Jamal al Fadl, PEC-KSA000329- 352 at 351. *See id.* at 352 (Al Fadl "noted that the name AL RAJHI listed next to number 7 on this document is the name of a bank in which Al QAEDA had funds on deposit."). *See also* Ex. 4, Winer Report at 99-100; Ex. 38, Kohlmann Report at 19-20 (Al Fadl describing the financial and material support the IIRO and its officials provided to al Qaeda). | 68.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section V (heading).<br><br>(2) In addition, immaterial as to references to the so-called "Golden Chain" for the reasons discussed above in response to ¶ 65.<br><br>Disputed as misleading:<br><br>(1) Plaintiffs' reference to "IIRO" is vague and misleading in that it does not distinguish between IIRO KSA and the charity branches.<br><br>- Al Rajhi Bank held accounts for IIRO KSA, which was a government-licensed charity, and did not hold accounts for IIRO charity branches. *See* Pls. Ex. 3 (Galloway Dep. Tr.) 232:13-219 and Errata at 232:19; ARB Ex. 29 (MWL documents relating to the founding of IIRO in 1978) at ARB-13679-ARB-13688, ARB-13691, ARB-13696 (recognizing the founding of IIRO by the Deputy Prime Minister of Saudi Arabia and the Ministry of Foreign Affairs); ARB Ex. 24, 25 (Ltrs. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-14545-ARB-14546 (noting that IIRO KSA was licensed by appropriate Saudi authorities); ARB Ex. 40 (Ltrs. from the Ministry of Interior in the Emirate of Asir) at ARB-37502-ARB-37511 (discussing the opening of IIRO office in the Emirate of Asir in 1990); ARB Ex. 39 (Ltr. from the Governor of the Asir Emirate to the Chairman of the Imam Muhammad ibn Saud Islamic University) at ARB-37838-ARB37839 (affirming the opening of an IIRO office in the region, dated Sept. 20, 1989); ARB Ex. 38 (business license in Jubail | 68.<br><br>Pls. Ex. 42:<br><br>- Lacks authentication. *See* Fed. R. Evid 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid 802.<br><br>- Lack of personal knowledge. *See* Fed. R. Evid 602.<br><br>Pls. Ex 4 at 99-100:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (Golden Chain). *See* Fed. R. Evid 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 38 at 19-20:<br><br>- Should be excluded under Rule 403 for unfair prejudice for attempting to impute |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Municipality) at ARB-13527 (permitting IIRO to collect donations, dated Jan. 26, 1994). | liability through guilt-by-association. *See* Fed. R. Evid. 403. |
| | | - IIRO KSA was never designated under any sanctions regime for connections to terrorism or providing support to al Qaeda. *See* ARB Aver. ¶ 61; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 140:6-13 (acknowledging that IIRO KSA never received a sanctions designation). | |
| | | <u>Disputed as controverted by the evidence:</u> | |
| | | (1) Plaintiffs' statement that the "'Golden Chain' consisted of wealthy individuals from the Gulf region who provided BIN LADEN and Al QAEDA with money on a regular basis" is controverted by the evidence. In addition to being debunked by this Court and others as a reliable source of evidence (as discussed in the response to ¶ 65 of Plaintiffs' Averment), the "Golden Chain" document pre-dates the formation of Al Qaeda, and more likely is related to desired support for Afghan Rebels fighting Russians in Afghanistan. ARB Ex.4 (Lormel Rep.) at 25. | |
| 69 | As indicated above, a number of purported Islamic "charities" played critical roles in collecting and facilitating transfers of funds to al Qaeda, including donations provided by al Qaeda's most prominent individual supporters, and in otherwise providing financial, logistical, and operational support to al Qaeda. | 69. <br><br> <u>Immaterial for the reasons stated above in response to Section V (heading).</u> <br><br> <u>Disputed as conclusory; vague; does not cite supporting evidence:</u> <br><br> (1) Plaintiffs cite no evidence supporting their assertion that charities played "critical roles in collecting and facilitating transfers of funds to al Qaeda." <br><br> (2) Plaintiffs' characterization of charities as "purported Islamic 'charities'" is conclusory and vague. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (3) Plaintiffs' reference to "al Qaeda's most prominent individual supporters" is vague. | |
| | | (4) Plaintiffs' reference to "financial, logistical, and operational support to al Qaeda" is vague. | |
| | | <u>Disputed as misleading; controverted by the evidence:</u> | |
| | | (1) To the extent Plaintiffs suggest the Saudi headquarters of charities diverted funds to Al Qaeda, that suggestion is controverted by the evidence. Al Rajhi Bank's expert Aimen Dean explained that individual employees of charity branches diverted funds to terrorism funding and created false documentation to mislead donors and the headquarters of charities. ARB Ex. 1 (Dean Rep.) at 10. | |
| | | (2) Moreover, to the extent that Plaintiffs' CIA-report exhibits are admissible, they controvert Plaintiffs' suggestion that the charity headquarters were witting to any "financial, logistical, and operational support" the branches may have provided "to al Qaeda." Pls. Ex. 55 (CIA Rep., *Islamic Terrorists: Using Nongovernmental Organizations Extensively* (Apr. 9, 1999)) at CIA_000210 ("These organizations most often are exploited by individual employees sympathetic to terrorist causes without the knowledge of the organization's leadership."). | |
| 70 | These charities used banks, particularly in the Gulf, to move money on behalf of al Qaeda. *See* Ex. 4, Winer Report at 59; Ex. 44, Monograph at 4 ("Supporters and other operatives did use banks, particularly in the Gulf region, to move money on behalf of al Qaeda."); *id.* at 26 ("charities such | 70. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons stated above in response to Section V (heading). <br><br> (2) Immaterial because Plaintiffs do not aver that the "Wafa Humanitarian Organization" held accounts at Al Rajhi Bank. *See generally* Pls. Aver. (identifying no accounts for the "Wafa Humanitarian Organization"). | 70. <br><br> <u>Pls. Ex. 4 at 59:</u> <br><br> - Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. <br><br> - Should be excluded to the extent expert testimony is used |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | as Wafa Humanitarian Organization had accounts at banks, which served as a means to move money for terrorists.); *id.* ("Fund-raisers for al Qaeda also used banks to store and move their money."). | (3) Immaterial because Plaintiffs' statements in this paragraph do not show any conduct by Al Rajhi Bank.<br>(4) In addition, immaterial because, even if credited, Plaintiffs' averment shows only that "banks" provided routine banking services to "[t]hese charities."<br><br>Disputed as vague:<br>(1) Plaintiffs' references to "[t]hese charities," "banks," and "the Gulf" are vague.<br>(2) Plaintiffs' assertion that "banks" were "used" to "move money on behalf of" is vague.<br><br>Disputed as not supported by evidence:<br>(1) Plaintiffs' Exhibit 4 states that charities used local banks in Peshawar. The cited source does not mention the use of banks in the Gulf "to move money on behalf of al Qaeda."<br><br>Disputed as misleading and controverted by the evidence for the reasons discussed above in response to ¶ 69. | as a conduit for inadmissible hearsay. *See* Fed. R. Evid 802.<br><br>Pls. Ex. 4 at 59:<br>- Inadmissible hearsay, as noted in response to Section VI (heading). |
| 71 | Several of al Qaeda's most important financial facilitators served as officials of these charities. *See* Ex. 4, Winer Report at 111-121 (discussing the E.O. 13224 designation of Al Haramain's leader, Aqil al Aqil, who "was responsible for all AHF activities, including its support for terrorism"); *id.* at 38 (discussing al Qaeda financier and SDGT Wa'el Jelaidan's official roles with the MWL, SJRC, and Rabita Trust); | 71.<br><br>Immaterial:<br>(1) Immaterial for the reasons stated above in response to Section V (heading).<br>(2) In addition, immaterial because none of Plaintiffs' averments regarding charity officials show the Bank's purported intent to support terrorism, much less Al Qaeda, when Plaintiffs have no evidence that Al Rajhi Bank knew or had reason to know of any charity's purported connected to Al Qaeda or terrorism before the 9/11 Attacks. *See* ARB Ex. 3 (Pasley Rep.) at 16 ("Given my experience with banking practices and regulations pre-9/11, I find | 71.<br><br>Pls. Ex. 4 at 111-121, 38, 19, 87, 97, 124, 125, 174-177, 208:<br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.<br>- Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by- |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | *id.* at 19, 87, 124, 125, 208 (discussing Abd al Hamid Sulaiman al Mujil, Executive Director of IIRO's Eastern Province branch, and his E.O. 13224 designation for using his position "to bankroll the al Qaida network in Southeast Asia"); *id.* at 97, 174-177 (discussing Al Haramain official Soliman al Buthe's E.O. 13224 designation in connection with his provision of military support to Chechen militants from an Al Haramain branch in the United States); Ex. 38, Kohlmann Report at 34-35 (WAMY Secretary General Maneh al Johani advocated for jihad in Kashmir and Chechnya and asked Muslims to provide "their moral, physical, and financial support [to] the cause of Jihad," including "money to buy weapons and gear."). *See also* Ex. 48 (Lormel Exhibit 18), *Additional Al-Haramain Branches, Former Leader Designated by Treasury as Al Qaida Supporters, Treasury Marks Latest Action in Joint Designation with Saudi Arabia*, June 2, 2004, at 3 ("Under Al Aqil's leadership of AHF, | it is very plausible that a bank would not know if its NGO customer accounts were being used for terrorism financing.").<br><br>(3) Moreover, Plaintiffs do not trace any transactions through the accounts of charity officials or charities to Al Qaeda or the 9/11 Attacks. *See* ARB Aver. ¶ 109.<br><br><u>Disputed as vague; not supported by evidence:</u><br><br>(1) Plaintiffs' characterization regarding "al Qaeda's most important financial facilitators" is vague and not supported by evidence. | association. *See* Fed. R. Evid. 403.<br><br><u>Pls. Ex. 38 at 34-35:</u><br><br>- Should be excluded for unfair prejudice for discussing attacks and theaters that are not at issue in this litigation. *See* Fed. R. Evid. 403.<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid 802.<br><br><u>Pls. Ex. 26:</u><br><br>- Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt by association. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | numerous AHF field offices and representatives operating throughout Africa, Asia, Europe and North America appeared to be providing financial and material support to the al Qaida network."); Ex. 49, *Treasury Department Statement on the Designation of Wa'el Hamza Julidan,* September 6, 2022, at 1 ("Julaidan has been the head of various non-governmental organizations providing financial and logistical support to the al-Qa'ida network."); Ex. 50, *U.S.-Based Branch of Al Haramain Foundation Linked to Terror, Treasury Designates U.S. Branch, Director*, September 9, 2004, at 1 (indicating that under Soliman al Buthe's leadership of Al Haramain, "funds that were donated to AHF with the intention of supporting Chechen refugees were diverted to support mujahideen, as well as Chechen leaders affiliated with the al Qaida network"); Ex. 26 (Lormel Exhibit 9), *Assessment of Saudi Arabian Support to Terrorism and the Counterintelligence Threat to the United States,* December 2004, EO14040-003414-3442- | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | UPDATED at 3419 (reporting that Khalid Sheikh Mohammed ("KSM") identified Prince Turki bin Jalawi, "a key leader of the Eastern Province office of the International Islamic Relief Organization (IIRO)," as "an important al-Qa'ida donor"). | | |
| 72 | In addition, al Qaeda operatives and members of associated terrorist organizations were frequently employed by offices of these charities, an arrangement that provided salaries to fund their terrorist activities, cover for those activities, and credentials and employment papers that enabled them to travel on behalf of al Qaeda, including to al Qaeda operational hubs in conflict zones. *See* Ex. 51, FBI Report, *Connections to the Attacks of September 11, 2001*, July 23, 2021, EO14040-003478-3608-UPDATED at 3532 ("AQ members were employed with these organizations and utilized funding for terrorism support and used the offices for cover for movement of personnel."); Ex. 52, *Al-Haramayn Islamic Foundation Bosnia-Herzegovina,* | 72. <u>Immaterial for the reasons stated above in response to Section V (heading).</u> <br><br> <u>Disputed as vague; misleading:</u> <br><br> (1) Plaintiffs' references to "HIF" and "IIRO" are vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters. <br><br> (2) Plaintiffs' references to "associated terrorist organizations" and "al Qaeda operational hubs" are vague. <br><br> <u>Disputed as misleading and controverted by the evidence for the reasons discussed above in response to ¶ 69.</u> | 72. <br><br> <u>Pls. Ex. 51:</u> <br><br> - Hearsay to which no exception applies given heavy redactions, lack of sourcing, and hearsay within hearsay. *See* Fed. R. Evid 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. <br><br> <u>Pls. Ex. 52:</u> <br><br> - Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | TREASURY00009-11 at 11 ("HIF offices in Bosnia-Herzegovina have employed personnel with affiliations to or membership in an SDGT (Gama'at Al Islamiyya), indicating that the offices of HIF are widely infiltrated by terrorist elements."); Ex. 53, *Al-Haramain Islamic Foundation, Somalia*, TREASURY00030-36 at 30-31 ("The U.S. has assembled evidence that shows a history of ties between Al-Haramain Somalia and Usama bin Laden's al-Qaida network, Al-Itihaad al-Islamiya (AIAI), and other associated entities and individuals. For example, over the past few years, Al-Haramain Somalia has provided a means of funneling money to AIAI by disguising funds as intended to be used for orphanage projects or the construction of Islamic schools and mosques. The organization has also employed and provided salaries to AIAI members."); Ex. 54, *How Bin Ladin Commands a Global Terrorist Network [REDACTED]*, January 27, 1999, CIA_00002-16 at 7 ("Bin Ladin exploits these NGO ties to channel | | and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403.

Pls. Ex. 53:

- Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802.

- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403.

Pls. Ex. 54:

- Inadmissible hearsay, as noted in response to Section VI (heading).

Pls. Ex. 55: |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | funds and obtain cover employment and travel assistance for his associates."); Ex. 55, *Islamic Terrorists: Using Nongovernmental Organizations Extensively,* April 9, 1999, CIA_000210-236 at 210 ("The availability of funds, cover, and logistics networks makes NGOs an appealing resource for terrorist groups. NGOs typically are awash in money - the Muslim World League's budget is more than $26 million annually, and the annual budget of the International Islamic Relief Organization has never dipped below $50 million - and tapping into the funds offers terrorist some independence from traditional state sponsors, who often attempt to control such groups for their own purposes. The logistical support NGOs offer includes cover employment, false documentation, travel facilitation, training, and in some cases, weapons."); *id.* at 213 ("sympathizers within several affiliate organizations - including the International Islamic Relief Organization (IIRO) - have provided terrorists with funding and cover employment, | | - Inadmissible hearsay, as noted in response to Section VI (heading). |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | documentation, and training"); *id.* at 220 ("Despite Saudi efforts to curb terrorist use of the IIRO, its personnel in local branch offices continue to channel funds to terrorists and provide them with logistical support - such as cover employment, documentation, travel assistance and access to training - [REDACTED]."). | | |
| 73 | Within this framework, Al Haramain Islamic Foundation ("AHIF"), the International Islamic Relief Organization ("IIRO"), and World Assembly of Muslim Youth ("WAMY"), were three of al Qaeda's most important charity fronts and partners. *See* Ex. 38, Kohlmann Report at 11-15 (Al Haramain), 16-30 (IIRO), 31-39 (WAMY). *See also* U.S. Department of the Treasury press releases detailing the E.O. 13224 designations of Al Haramain and IIRO at Ex. 56 (March 11, 2002 designation of Al Haramain's branches in Somalia and Bosnia-Herzegovina), Ex. 57 (January 22, 2004 designation of Al Haramain's branches in Indonesia, Kenya, Tanzania, and Pakistan), Ex. 48 (Lormel Exhibit | 73. Immaterial for the reasons stated above in response to Section V (heading). Disputed as vague: (1) Plaintiffs' references to "AHIF" and "IIRO" are vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters. Disputed as misleading and controverted by the evidence for reasons discussed above in response to ¶ 69. Disputed as vague and conclusory: (1) Plaintiffs' reference to charities as "fronts" and "partners" is vague and conclusory. (2) Plaintiffs' characterization of "AHIF," "IIRO" and "WAMY" as "three of al Qaeda's most important charity fronts and partners" is vague, conclusory, and unsupported. - Notably, WAMY was *never* designated under any sanctions regime for connections to terrorism. *See* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 164:19-21 (acknowledging that WAMY never received a sanctions designation); *see* | 73. Pls. Ex. 38 at 11-15, 16-30, 31: - Should be excluded to the extent expert testimony is used a conduit for inadmissible hearsay (NL Documents). *See* Fed. R. Evid. 802. - Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussion of attacks and theaters that are not at issue in this litigation and for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. Pls. Ex. 60: |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | 18) (June 2, 2004 designation of Al Haramain's branches in Afghanistan, Albania, Bangladesh, Ethiopia, and the Netherlands, including Aqil al Aqil), Ex. 50 (September 9, 2004 designation of Al Haramain's branches in the United States and Union of Comoros, including Soliman al Buthe), Ex. 60 (Abdullah al Rajhi Exhibit 27) (June 19, 2008 designation of Al Haramain's Saudi headquarters and the entirety of the Al Haramain organization), Ex. 170 (Abdullah al Rajhi Exhibit 28) (August 3, 2006 designation of IIRO's branches in the Philippines and Indonesia, including And al Hamid Sulaiman al Mujil). | *generally* ARB Ex. 59 (Office of Foreign Assets Control, *Specially Designated and Blocked Persons List*, U.S. Dept. of Treas. (May 3, 2024)). | - Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues in its description of charities and charity branches allegedly engaged in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid. 403. |
| 74 | Al Haramain was a Saudi Arabia-based Islamic charity, dedicated to propagating an extreme and intolerant form of Islam throughout the world. Al Haramain had a presence in at least 50 countries. *See* Ex. 44, Monograph at 11; Ex. 4, Winer Report at 20-21; Ex. 38, Kohlmann Report at 11. | 74.<br><br>Immaterial for the reasons stated above in response to Section V (heading).<br><br>Disputed as vague; misleading:<br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br>(2) Plaintiffs' averment is vague as to timing. Before the 9/11 Attacks, neither Al Haramain KSA nor any Al Haramain Islamic Foundation branch was designated under any sanctions regime for | 74.<br><br>Pls. Ex. 4 at 20-21:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for descriptions of charity branches allegedly engaging in extremism with no connection to |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | connections to terrorism. *See* Pls. Ex. 60 ("Treasury Designates of Al Haramain Islamic Foundation KSA") (showing designation of Al Haramain branches started in 2002); *see also* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 57:8-12 ("To the best of my knowledge, there were no charities of any kind that I recollect that had been designated prior to 9/11 because terrorist designations were originally limited to terrorist organizations."); ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 126:12-13, 130:21-131:2 (testifying that charity designations only began after 9/11 and that he had not identified any Al Rajhi Bank transactions violating sanctions or designations, because "once the designation has been issued," it becomes "impossible to open an account under that [designated] person's name"). Accordingly, Plaintiffs have no evidence to support the assertion that before 9/11, Al Haramain KSA supported an "extreme and intolerant form of Islam." Moreover, Al Haramain KSA was not designated under any sanctions regime for connections to terrorism until the United States designated Al Haramain KSA in 2008. Pls. Ex. 60 ("Treasury Designates Al Haramain Islamic Foundation KSA"). <br><br> Disputed as misleading for reasons discussed above in response to ¶ 69. <br><br> Disputed as conclusory; not supported by the evidence: <br><br> (1) Plaintiffs cite no evidence showing that Al Haramain was dedicated to propagating an "intolerant" form of Islam. <br><br> (2) Plaintiffs misquote portions of the cited document. The cited page of Plaintiffs' Ex. 44 (Staff Monograph) states "dedicated to propagating a very conservative form of Islam," not a "extreme and intolerant" form. | to Al Rajhi Bank. *See* Fed. R. Evid. 403. <br><br> Pls. Ex. 38 at 11: <br><br> - Should be excluded to the extent expert testimony is used a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (3) Additionally, the cited page of Plaintiffs' Exhibit 38 refers to its presence in 50 countries but makes no reference to the type of Islamic teachings. | |
| 75 | According to the U.S. government, "[w]hen viewed as a single entity, Al-Haramain was one of the principal NGOs active throughout the world providing support for the Al-Qaida network." *See* Ex. 48 (Lormel Exhibit 18), *Additional Al-Haramain Branches, Former Leader Designated by Treasury as Al Qaida Supporters, Treasury Marks Latest Action in Joint Designation with Saudi Arabia,* June 2, 2004, at 3; Ex. 4, Winer Report at 21. | 75. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons stated above in response to Section V (heading) and ¶ 74. <br><br> (2) In addition, immaterial because Al Haramain's legitimate humanitarian efforts were widely publicized before the 9/11 Attacks, particularly in Saudi Arabia. *See* Pls. Ex. 44 (9/11 Comm'n Monograph) at 115 (discussing various humanitarian works done by Al Haramain); *see also* ARB Ex. 23 (Ltr. from Prince of Tabuk) at ARB-38699 (letter in Al Haramain's KYC files describing Al Haramain as a "humanitarian" organization engaged in "relief efforts."); ARB Ex. 5 (Ltrs. from Al Haramain's KYC files) at ARB-38774-ARB-38775 (letter describing Al Haramain's humanitarian projects and good works). <br><br> <u>Disputed as vague; misleading:</u> <br><br> (1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters. <br><br> (2) Plaintiffs' reference to "Al Haramain" is vague and misleading for the reasons discussed above in response to ¶ 74. <br><br> <u>Disputed as misleading for reasons discussed above in response to ¶ 69.</u> | 75. <br><br> <u>Pls. Ex. 4 at 21:</u> <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under FRE 403 for unfair prejudice for descriptions of charity branches allegedly engaging in extremism with no mention of Al Rajhi Bank. *See* Fed. R. Evid. 403. |
| 76 | Declassified documents originating from the U.S. Department of the Treasury and | 76. <br><br> <u>Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.</u> | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | the Office of Foreign Assets Control ("OFAC"), released pursuant to E.O. 14040, detail previously classified evidence relied upon by the U.S. government in support of the designations of Al Haramain's Saudi headquarters and multiple overseas branch offices as Specially Designated Global Terrorist ("SDGT") entities pursuant to E.O. 13224. The evidence describes Al Haramain's provision of material, financial, logistical, and ideological support directly to al Qaeda, associated terrorist organizations, and Islamic extremists across the globe, but also makes clear that Al Haramain's support for Osama bin Laden and al Qaeda was essential to al Qaeda's development and transformation into a sophisticated terrorist organization and its ability to carry out large-scale global attacks, including attacking the United States on September 11, 2001. | Disputed as vague; misleading: <br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters. <br><br>(2) Additionally, Plaintiffs' reference to "Al Haramain" is vague and misleading as to timing for the reasons discussed in response to ¶ 74. <br><br>Disputed as conclusory; does not cite to supporting evidence: <br><br>(1) Plaintiffs' averment that "Al Haramain's support for Osama bin laden and al Qaeda was essential to al Qaeda's development and transformation" is conclusory and not supported by the evidence. <br><br>(2) Plaintiffs' suggestion that there is evidence connecting Al Haramain to the 9/11 Attacks is conclusory and not supported by the evidence. | |
| 77 | First, in a Treasury Department document titled, *Al-Haramayn Islamic Foundation - Bosnia-Herzegovina*, TREASURY00009- | 77. | 77. <br><br>Pls. Ex. 52: |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | 11 at Ex. 52, the U.S. government explains that both confidential and unclassified information provided clear linkages between Al Haramain and terrorist groups and their activities in the Balkans region, thereby supporting the decision to designate Al Haramain in Bosnia-Herzegovina as an SDGT pursuant to Executive Order 13224.<br><br>Statement of the Case: Based upon information available to the United States government, there is a reasonable basis to believe that the Al-Haramayn Islamic Foundation in Bosnia-Herzegovina (HIF) receives financial support from, and is acting for or on behalf of, is providing financial and material support for, or financial or other services to or in support of, or is otherwise associated with, terrorists and terrorist-related organizations listed in the Annex to Executive Order 13224. While much of the information concerning HIF comes from sensitive sources that cannot be disclosed, the following unclassified information clearly | _Immaterial:_<br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.<br><br>(2) Immaterial to the extent Plaintiffs discuss the designation of Al Haramain in Bosnia-Herzegovina to suggest this designation is related to Al Qaeda's 9/11 Attacks. Even if credited, Plaintiffs' own document regarding the designation of Al Haramain in Bosnia-Herzegovina discusses personnel in the office having ties to Gama'at Al Islamiyya, not a Al Qaeda. _See_ Pls. Ex. 52 (Treasury Memorandum – _Al-Haramayn Islamic Foundation Bosnia-Herzegovina_) at TREASURY00011.<br><br>(3) Moreover, Plaintiffs' discussion of the conduct of the Al Haramain office in Bosnia-Herzegovina is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. During the relevant period, the Bank did not hold any accounts for Al Haramain branches outside of Saudi Arabia. _See_ Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br>_Disputed as vague; misleading:_<br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br>_Disputed as misleading for reasons discussed above in response to ¶ 69._ | - Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. _See_ Fed. R. Evid 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. _See_ Fed. R. Evid 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | establishes HIF's links to terrorist activity. We believe that this information is generally reliable and, taken as a whole, supports the decisions to block the assets of the Al-Haramayn Islamic Foundation in Bosnia-Herzegovina (and its directors).<br><br>*See* TREASURY00009. | | |
| 78 | According to the U.S. government, Al Haramain's offices in Bosnia-Herzegovina were infiltrated by terrorist elements, which in turn provided financial and material aid to terrorist activities and terrorist organizations in the region, often with the active support of Al Haramain's leadership.<br><br>*Al-Haramayn Islamic Foundation's Ties to Terrorists:*<br>[REDACTED]<br>Additionally, HIF offices in Bosnia-Herzegovina have employed personnel with affiliations to or membership in an SDGT (Gama'at Al Islamiyya), indicating | 78.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.<br><br>(2) In addition, immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading),and is otherwise conclusory and unsupported.<br><br>(3) Plaintiffs' averments as to Al Haramain in Bosnia-Herzegovina are immaterial for the reasons stated above in ¶ 77.<br><br><u>Disputed as vague; misleading:</u><br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br><u>Disputed as misleading for reasons discussed above in response to ¶ 69.</u> | 78.<br><br><u>Pls. Ex. 52:</u><br><br>- Hearsay to which no exception applies given heavy redactions and lack of sourcing. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation. *See* Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | that the offices of HIF are widely infiltrated by terrorist elements.<br><br>Given our understanding of the relationship between the Al- Haramayn Islamic Foundation and Specially Designated Global Terrorists (SDGT) and its potential for exploitation by employees with affiliations to or membership in SDGTs, it is reasonable to believe the Al-Haramayn Islamic Foundation is acting for or on behalf of, and providing financial and material support for, or financial or other services to or in support of terrorist activities and terrorist-related organizations, and doing so with the consent if not active support, of the NGO's | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | leadership.<br><br>*See* TREASURY00011. | | |
| 79 | Second, in a Treasury Department memorandum concerning the *Designation of Al- Haramain Foundation-Pakistan, see* TREASURY00012-16 at Ex. 61, the U.S. government describes Al Haramain's global support for Osama bin Laden, al Qaeda, and related terrorist organizations via its branch offices and representatives in Africa, Asia, Europe, and North America.<br><br>The Al-Haramayn Foundation (AHF) is one of the principal Islamic NGOs active throughout the world. AHF has been infiltrated by Al- Qaeda and has been used by al-Qaeda for cover and concealment of assets and material, according to military reporting. AHF "belongs to" the Usamah Bin Ladin-established "World Front of the Jihad | 79.<br><br><u>Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75, 77 and 78.</u><br><br><u>Disputed as vague; misleading:</u><br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br><u>Disputed as misleading for reasons discussed above in response to ¶ 69.</u> | 79.<br><br><u>Pls. Ex. 61:</u><br><br>- Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Against Jews and Christians," which includes the Egyptian Gama Al-Islamiya, the Egyptian Islamic Jihad (EIJ), the Abu Sayyaf Group (ASG) and the Harakat Ul Ansar of Pakistan, according to military reporting. All these organizations are Specially Designated Global Terrorists pursuant to E.O. 13224. | | |
| | Prior to the removal of the Taliban from power in Afghanistan, AHF had links to the UBL-financed Makhtab al-Khidemat (MK). [REDACTED] MK is a Specially Designated Global Terrorist pursuant to E.O. 13224. | | |
| | As of January 2003, it appears that numerous AHF field offices and representatives operating throughout Africa, Asia, Europe, and North America | | |

| PARA. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | appeared to be providing financial and logistical support to Al-Qaeda. Terrorist organizations including Al-Itihaad Al-Islamiya, Egyptian Islamic Jihad, Lashkar I-Tayyiba were receiving funding from AHF and using AHF as a front for fundraising and operational activities.<br><br>In one instance later in 2003, a journalist suspected of meeting with Al-Qaeda and Taliban members in Afghanistan was also suspected of transferring funds on behalf of the Al-Qaeda-affiliated AHF, and forwarding videotapes from Al-Qaeda leaders to Al-Jazeera TV for broadcast.<br><br>*See* TREASURY00013. | | |
| 80 | According to the United States, Al Haramain's office in Pakistan | 80. | 80. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | employed individuals with ties to al Qaeda and provided financial support to E.O. 13224 SDGTs Jamiat al Dawa ("JUD") and Laskhar E-Taibah ("LET"). | **Immaterial:** | <u>Pls. Ex. 61:</u> |
| | | (1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75. | - Hearsay to which no exception applies given heavy redactions and lack of sourcing. *See* Fed. R. Evid. 802. |
| | At least two former AHF employees that worked in Pakistan are suspected of Al-Qaeda ties. One AHF employee in Pakistan is detained at Guantanamo Bay on "suspicion of financing Al-Qaeda operations." | (2) Moreover, Plaintiffs discussion of the conduct of the Al Haramain office in Pakistan is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. During the relevant period, the Bank did not hold any accounts for Al Haramain branches outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13. | - Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403. |
| | *** | <u>Disputed as vague:</u> | |
| | AHF in Pakistan also supports Jamiat al Dawa (JUD) and Lashkar E-Taibah (LET), both Specially Designated Global Terrorist organizations pursuant to the authorities of E.O. 13224. After LET was officially banned in Pakistan on January 12, 2002, LET began using the name JUD to | (1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters. | |
| | | <u>Disputed as misleading for reasons discussed above in response to ¶ 69.</u> | |

| PARA. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | continue operating in Pakistan, [REDACTED]. A detained political official and admitted member of JUD, identifying AHF as one of three Non Governmental Organizations (NGO) financially supporting JUD, provided details about how JUD receives financial support, according to Department of Defense reporting. When JUD requires financial assistance, an estimate is sent to one of the three NGO's, among then AHF. Funds are then provided to JUD either in personal meetings, in which representatives from the NGO and JUD discuss the proposed estimate and reach an agreement, or by wire transfers, to a | | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | bank account in the name of the Sheikh in charge of JUD, according to Department of Defense reporting. During 1998-2001, the JUD detainee conducted four or five meetings with representatives from AHF. *See* TREASURY00014-15. | | |
| 81 | The Treasury memorandum concludes that the designation of Al Haramain's offices in Pakistan pursuant to Executive Order 13224 is warranted based on the following: <br><br> • Directed by an individual that is an Al-Qaeda facilitator, AHF in Pakistan is controlled by Al Qaeda. <br><br> • By employing Al-Qaeda members suspected of supporting Al-Qaeda operations, AHF in Pakistan is controlled by or acting on behalf of, or | 81. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75. <br><br> (2) Moreover, Plaintiffs' discussion of the conduct of the Al Haramain office in Pakistan is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. During the relevant period, the Bank did not hold any accounts for Al Haramain branches outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13. <br><br> (3) Additionally, immaterial to the extent that this averment fails to describe any conduct of Al Rajhi Bank. | 81. <br><br> <u>Pls. Ex. 61:</u> <br><br> - Hearsay to which no exception applies given heavy redactions and lack of sourcing. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | is assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of Al-Qaeda. <br><br> • By financially supporting LET in Pakistan, AHF is assisting, sponsoring or providing financial, material, or technological support for, or financial or other services to or in support of LET. <br><br> • By maintaining bank accounts controlled by the MK Director, AHF in Pakistan is controlled by or acting on behalf of, or is assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of MK. <br><br> *See* TREASURY00015-16. | Disputed as vague: <br><br> (1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters. <br><br> Disputed as misleading for reasons discussed above in response to ¶ 69. | |
| 82 | Third, in a Treasury Department memorandum concerning the *Designation of Al- Haramain* | 82. | 82. <br><br> Pls. Ex. 62: |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | *Foundation (AHF) branches in Afghanistan, Albania, Bangladesh, Ethiopia, and The Netherlands, and the AHF's leader Al-Aqil pursuant to the authorities of E.O. 13224, see* TREASURY00017-29 at Ex. 62, the United States describes the support for al Qaeda and associated terror groups provided by Al Haramain's Saudi headquarters and its branch offices.<br><br>As of March 2004, information set forth below provides reason to believe that AHF, including its headquarters and all its branch offices, is one of the principal Islamic NGO's active throughout the world providing support for the Al Qaida network and promoting militant Islamic doctrine worldwide. AHF has been infiltrated by Al Qaida and has been used by al Qaida for cover and concealment | <u>Immaterial:</u><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.<br>(2) Moreover, Plaintiffs' discussion of the conduct of the Al Haramain office in Pakistan is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. During the relevant period, the Bank did not hold any accounts for Al Haramain branches outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br><u>Disputed as vague:</u><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br><u>Disputed as misleading for reasons discussed above in response to ¶ 69.</u> | - Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | of assets and material, according to military reporting.<br><br>***<br><br>Prior to the removal of the Taliban from power in Afghanistan, AHF was linked to Makhtab al-Khidemat (MK), [REDACTED]. MK, co-founded and financed by Usama bin Ladin (UBL), is an SDGT pursuant to the authorities of E.O. 13224 and the pre-cursor organization of Al Qaida. [REDACTED].<br><br>***<br><br>[REDACTED] In mid-April, AHF was "involved with" a group of sixty Afghan persons "trained to attack Westerners, [REDACTED]. Reportedly, one AHF employee believed to belong to Al Qaida is | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | currently detained in Guantanamo, Cuba, [REDACTED].<br><br>*See* TREASURY00019-20. | | |
| 83 | Al Haramain also established an office in Iran to move weapons into Afghanistan in 2001.<br><br>An AHF official that reportedly coordinated arms deals with the Al Qaida-affiliated Al-Zarqawi, was instrumental in establishing a branch of AHF in Iran [REDACTED]. The AHF branch in Iran was linked to efforts by "WAFA" to move weapons related items through Pakistan into Afghanistan during the conflict in Afghanistan in late 2001. [REDACTED] WAFA Humanitarian Organization is a Specially Designated Global Terrorist pursuant to the | 83.<br><br><u>Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.</u><br><br><u>Disputed as misleading for reasons discussed above in response to ¶ 69.</u> | 83.<br><br><u>Pls. Ex. 62:</u><br><br>- Hearsay to which no exception applies given heavy redactions and lack of sourcing. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by-association, discussing attacks and theatres not at issue in this litigation, and for describing charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. See Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | authorities of E.O. 13224.<br><br>*See* TREASURY00024. | | |
| 84 | The Treasury memorandum also reports that Al Haramain's branch office in Albania was directly linked to Osama bin Laden and Egyptian Islamic Jihad ("EIJ").<br><br>UBL reportedly financed the establishment of AHF in Albania, which has been used as cover for terrorist activity in Albania and in Europe, [REDACTED]. In 1998, the head of Egyptian Islamic Jihad (EIJ) in Albania was reportedly also the "accountant" for AHF in Albania, according to a French news report. This individual, Ahmed Ibrahim al-Nagar, was reportedly extradited from Albania to Egypt in 1998. At this trial in Egypt, al-Nager reportedly voiced his | 84.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.<br><br>(2) Immaterial as to Egyptian Islamic Jihad, an organization not at issue in this litigation.<br><br>(3) Moreover, Plaintiffs discussion of the conduct of the Al Haramain office in Albania is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. During the relevant period, the Bank did not hold any accounts for Al Haramain branches outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br>Disputed as vague:<br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br>Disputed as misleading for reasons discussed above in response to ¶ 69. | 84.<br><br>Pls. Ex. 62:<br><br>- Hearsay to which no exception applies given heavy redactions, lack of sourcing, reliance on hearsay within hearsay. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under FRE 403 for confusing the issue and unfair prejudice for attempting to impute liability through guilt-by-association, discussing attacks and theatres not at issue in this litigation, and for describing charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | support for UBL and Al Qaida's terrorist attacks against the U.S. Embassies in Tanzania and Kenya.<br><br>*See* TREASURY00025. | | |
| 85 | In a fourth Treasury Department document, *Al-Haramayn Islamic Foundation - Somalia, see* TREASURY00030-36 at Ex. 53, the U.S. government discusses Al Haramain's ties to al Qaeda and the Al Ittihad Al Islamiya ("AIAI") terrorist organization in Somalia.<br><br>The U.S. has assembled evidence that shows a history of ties between Al-Haramain Somalia and Usama bin Laden's al-Qaida network, Al-Itihaad al-Islamiya (AIAI), and other associated entities and individuals. For example, over the past few years, Al-Haramain Somalia has provided a means of funneling money to AIAI by | 85.<br><br><u>Immaterial:</u><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.<br>(2) Immaterial as to Al-Itihaad al-Islamiya, an organization not at issue in this litigation.<br>(3) Moreover, Plaintiffs' discussion of the conduct of the Al Haramain office in Somalia is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. During the relevant period, the Bank did not hold any accounts for Al Haramain branches outside of Saudi Arabia.  *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br><u>Disputed as vague:</u><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br><u>Disputed as misleading for reasons discussed above in response to ¶ 69.</u> | 85.<br><br><u>Pls. Ex. 53:</u><br>- Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | disguising funds as intended to be used for orphanage projects or the construction of Islamic schools and mosques. The organization has also employed and provided salaries to AIAI members. [REDACTED].<br><br>The evidence indicates that even after AIAI was named in the Annex to E.O. 13224 and subsequently designated by the United Nations under UNSCR 1333, Al-Haramain Somalia has continued to provide financial support and cover for AIAI operatives, and conceal their activities.<br><br>*See* TREASURY00030. | | |
| 86 | In a fifth Treasury Department memorandum concerning the *Designation of Al-Haramain Foundation (AHF) locations in* | 86. | 86.<br><br><u>Pls. Ex. 63:</u> |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | *the United States, the Comoros Islands, and AHF official Soliman Al-Buthepursuant to the authorities of E.O. 13224, see* TREASURY00037-54 at Ex. 63, the United States reveals that in 1998 it had received a list of seven suspected al Qaeda members in the Comoros, two of which were associated with Al Haramain. *See* TREASURY00043. | **Immaterial:** (1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75. (2) Plaintiffs' averment regarding purported intelligence received by the United States in 1998 in immaterial to the extent Plaintiffs suggest this is intelligence that would have been known by Al Rajhi Bank. Plaintiffs' averment does not show the Bank's purported intent to support terrorism, much less Al Qaeda, when Plaintiffs have no evidence that Al Rajhi Bank knew or had reason to know of any charity's purported connected to Al Qaeda or terrorism before the 9/11 Attacks. *See* ARB Ex. 3 (Pasley Rep.) at 16 ("Given my experience with banking practices and regulations pre-9/11, I find it is very plausible that a bank would not know if its NGO customer accounts were being used for terrorism financing."). (3) Moreover, Plaintiffs' discussion of the conduct of the Al Haramain office in Comoros Islands is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. During the relevant period, the Bank did not hold any accounts for Al Haramain branches outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13. **Disputed as vague:** (1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters. **Disputed as misleading for reasons discussed above in response to ¶ 69.** | - Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802. - Should be excluded under Rule 403 for confusing the issue and unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid. 403 |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| 87 | Next, a Treasury Department memorandum concerning *Additional Designations Pursuant to E.O. 13224: Al-Haramain, Indonesia, see* TREASURY00087-92 at Ex. 64, the U.S. government states that "Al-Haramain, Indonesia provides financial support to the Indonesian NGO KOMPAK which, as described below, has multiple links to Jemaah Islamiyah (SDGT)." "KOMPAK was founded by senior Jemaah Islamiyah (JI) leader Agus Dwikarna (SDGT)." *See* TREASURY00091. | 87.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.<br><br>(2) Moreover, Plaintiffs' discussion of the conduct of the Al Haramain office in Indonesia is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. During the relevant period, the Bank did not hold any accounts for Al Haramain branches outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br>(3) Immaterial as to NGO KOMPACK and Jemaah Islamiyah, an organization not at issue in this litigation.<br><br>Disputed as vague:<br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br><u>Disputed as misleading for reasons discussed above in response to ¶ 69.</u> | 87.<br><br><u>Pls. Ex. 64:</u><br><br>- Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403. |
| 88 | Finally, a Treasury Department memorandum concerning *Additional Designations Pursuant to E.O. 13224: Al-Haramayn Kenya and Tanzania, see* TREASURY00094-101 at Ex. 65, states that "[t]he entire Al-Haramayn organization has long been suspected of providing various types of support to | 88.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.<br><br>(2) Moreover, Plaintiffs' discussion of the conduct of the Al Haramain offices in Kenya and Tanzania is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. During the relevant period, the Bank did not hold any accounts for Al Haramain branches outside of Saudi Arabia. | 88.<br><br><u>Pls. Ex. 65:</u><br><br>- Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | terrorist groups including Al-Qaeda, and its offices in Bosnia and Somalia were designated on March 11, 2002, pursuant to E.O. 13224, for providing support to Al-Qaeda. Al-Haramayn's offices in Kenya and Tanzania are similarly being recommended for designation for providing financial and material support to Al-Qaeda and Al-Itihaad Al-Islamiya, both of which were designated on September 23, 2001 as part of the Annex to E.O. 13224." *See* TREASURY00095. | *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br>Disputed as vague:<br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br>Disputed as misleading for reasons discussed above in response to ¶ 69.<br><br>Disputed as incomplete:<br><br>(1) Plaintiffs' own experts concede that, in 1999, "AHF (Kenya) successfully contested deregistration in the courts and resumed operations the following year." Pls. Ex. 4 (Winer Rep.) at 36-37 n.87; *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 127:2-17. | and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403. |
| 89 | The memorandum further indicates that "AHF officials in Kenya and Tanzania have been actively involved in supporting the planning and carrying out of terrorist attacks against US and Western targets, as well as other acts of violence. AHF's role appears to be to provide financial and logistical assistance to those who intend to conduct the attacks." *See* TREASURY00097. | 89.<br><br>Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75, and 88.<br><br>Disputed as vague:<br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br>Disputed as misleading for reasons discussed above in response to ¶ 69.<br><br>Disputed as incomplete:<br><br>(1) Plaintiffs' own experts concede that, in 1999, "AHF (Kenya) successfully contested deregistration in the courts and resumed operations the following year." Pls. Ex. 4 (Winer Rep.) at 36-37 | 89.<br><br>Pls. Ex. 65:<br><br>- Hearsay to which no exception applies given heavy redactions and lack of sourcing. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for confusing the issue and unfair prejudice for attempting to impute liability through guilt-by-association, discussing attacks and theatres not at issue in this litigation, and describing charity branches allegedly engaging in |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | n.87; *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 127:2-17. | extremism with no mention of Al Rajhi Bank. *See* Fed. R. Evid. 403. |
| 90 | According to the U.S. government, Al Haramain employees affiliated with the branch office in Kenya, were arrested in November 1997 for plotting an attack on the U.S. Embassy in Nairobi (prior to the 1998 U.S. Embassy bombings).<br><br>In late November 1997, based on information that Islamic activists associated with AHF were planning to an attack on the U.S. Embassy in Nairobi, Kenyan authorities arrested ten AHF staff members and deported them. The ten, including Abu Abdul Malik, an Algerian serving as an AHF project manager, were reportedly suspected of aiding the Al Itihaad Al Islamiya (AIAI), an organization designated as a Specially | 90.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75, 88.<br><br>(2) Plaintiffs' averment regarding purported information received by the Kenyan Government is immaterial to the extent Plaintiffs suggest this is information that would have been known to Al Rajhi Bank. Plaintiffs' averment does not show the Bank's purported intent to support terrorism, much less Al Qaeda, when Plaintiffs have no evidence that Al Rajhi Bank knew or had reason to know of any charity's purported connected to Al Qaeda or terrorism before the 9/11 Attacks. *See* ARB Ex. 3 (Pasley Rep.) at 16 ("Given my experience with banking practices and regulations pre-9/11, I find it is very plausible that a bank would not know if its NGO customer accounts were being used for terrorism financing.").<br><br>Disputed as vague:<br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br>Disputed as misleading for reasons discussed above in response to ¶ 69.<br><br>Disputed as incomplete for the reasons discussed above in response to ¶ 88. | 90.<br><br>Pls. Ex. 65:<br><br>- Hearsay to which no exception applies given heavy redactions and lack of sourcing. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for confusing the issue and unfair prejudice for attempting to impute liability through guilt-by-association, discussing attacks and theatres not at issue in this litigation, and describing charity branches allegedly engaging in extremism with no mention of Al Rajhi Bank. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Designated Global Terrorist pursuant to E.O. 13224. According to Embassy contacts, AHF's numerous charitable activities in northeast Kenya provide a useful cover for sending funds and supplies to AIAI. These activities included the use of mosques in Garissa and Mandera where the imam or other officials allegedly have ties to AIAI. One Embassy contact was told by [REDACTED] AHF sent weapons and ammunition to AIAI during the August 1996 fighting near the town of Luuq in Somalia. AHF allegedly transported the material on board relief flights that took off from Nairobi's Wilson Airport.<br><br>*See* TREASURY00099. | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 91 | CIA reporting released pursuant to E.O. 14040, dating to both prior to and after the 9/11 attacks, also provides new evidence demonstrating Al Haramain's global support for al Qaeda. | 91.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading) and is otherwise conclusory and unsupported.<br><br>Disputed as vague:<br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br>Disputed as misleading for reasons discussed above in response to ¶ 69.<br><br>Disputed as conclusory; does not cite supporting evidence:<br><br>(1) Plaintiffs' reference to "global support" is vague and conclusory. | |
| 92 | For instance, in *Usama Bin Ladin: Some Saudi Financial Ties Probably Intact [REDACTED]*, January 11, 1999, CIA_000807-848, at Ex. 66, the CIA assessed that al Qaeda infiltrated and used Al Haramain's overseas offices for funding and other resources for years prior to the 9/11 attacks.<br><br>[REDACTED] al-Qa'ida has infiltrated offices of several Saudi- | 92.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading) and is otherwise conclusory and unsupported.<br><br>(3) Moreover, Plaintiffs' discussion of the conduct of the Al Haramain office in Pakistan is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United | 92.<br><br>Pls Ex. 66:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | based nongovernmental organizations - especially NGOs in Afghan and Pakistan offices. Usama's familiarity with NGOs in this region no doubt stems from his operation of the Maktab al-Khidamat in Pakistan, which probably had numerous contacts with Saudi and other Gulf charities with respect to aiding Arabs in Afghanistan.... All-source intelligence suggests that several Saudi NGOs are funding conduits for al-Qa'ida or have been penetrated by Usama's network. Those of greatest concern include . Al-Haramayn Islamic<br><br>Foundation.<br><br>***<br><br>[REDACTED] offices of Al Haramayn in | States. During the relevant period, the Bank did not hold any accounts for Al Haramain branches outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br>Disputed as misleading for reasons discussed above in response to ¶ 69. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Albania, Azerbaijan, Bosnia, Kenya, and Tanzania have been used by al-Qa'ida.<br><br>*See* CIA_000808, 817. | | |
| 93 | The CIA report further details Al Haramain's support for Osama bin Laden, certain terror groups, and the mujahideen in the Balkans.<br><br>Employees at Al Haramayn offices in Albania, Azerbaijan, Kenya, and possibly Tanzania, have been funded by or have acted on behalf of Usama Bin Ladin: [REDACTED].<br><br>***<br><br>[REDACTED] the Al-Haramayn office in Nairobi was a front for the Al-Ittihad Al-Islami, an Usama Bin Ladin-backed Islamic insurgent group engaged in politically motivated violence in Somalia and Ethiopia. | 93.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading) and is otherwise conclusory and unsupported.<br><br>(3) Moreover, Plaintiffs' discussion of the conduct of the Al Haramain office in the Balkans is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. During the relevant period, the Bank did not hold any accounts for Al Haramain branches outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br><u>Disputed as vague:</u><br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br><u>Disputed as misleading for reasons discussed above in response to ¶ 69.</u> | 93.<br><br><u>Pls Ex. 66:</u><br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | *** <br><br> Al Haramayn offices have supported other terrorist groups. [REDACTED] for example, it has been particularly involved in providing financial and logistical support to the Bosnian mujahedin. [REDACTED] the NGO also has associated with Egyptian terrorists. Ayman Al-Zawahiri - the [blank] was a onetime Al Haramayn leader. <br><br> *See* CIA_000819-820. | | |
| 94 | In a report titled, *How Bin Ladin Commands a Global Terrorist Network [REDACTED]*, January 27, 1999, CIA_00002-16, at Ex. 54, the CIA describes how Osama bin Laden and al Qaeda used Al Haramain and other purported charities for funding, travel assistance, covert employment, and weapons smuggling. | 94. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75. <br><br> (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading) and is otherwise conclusory and unsupported. | 94. <br><br> Pls. Ex. 54: <br><br> - Inadmissible hearsay, as noted in response to Section VI (heading). |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | In addition to support from other groups, Bin Ladin taps into the resources of some international Islamic nongovernmental organizations (NGOs) for financial and logistical support. Employees—ranging from accountants to directors—of a few NGO branch offices have diverted resources to benefit Bin Ladin and his associates, although we are unable to determine if the organizations' home offices are witting. Bin Ladin exploits these NGO ties to channel funds and obtain cover employment and travel assistance for his associates. He also uses the NGOs' distribution network to move weapons and supplies.<br><br>• Employees of the Azerbaijan-based al- | (3) Moreover, Plaintiffs' reference to the conduct of Al Haramain office in Azerbaijan is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. During the relevant period, the Bank did not hold any accounts for Al Haramain branches outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br>Disputed as vague:<br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br>(2) Plaintiffs' characterization of charities as "purported charities" is vague.<br><br>Disputed as misleading:<br><br>(1) Disputed as misleading for reasons discussed above in response to ¶ 69.<br><br>(2) To the extent Plaintiffs describe the actions of "Al Haramain and other purported charities" to suggest the organizations as a whole, Plaintiffs fail to note that the CIA Report quoted, to the extent it is credited, acknowledges that it was "[e]mployees…divert[ing] resources to benefit Bin Ladin and his associates, although we are unable to determine if the organizations' home offices are witting." *See* Pls. Ex. 54 (CIA Rep., *How Bin Laden Commands a Global Terrorist Network* (Jan. 27, 1999)) at CIA_000007. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Haramayn office, for example, have regularly diverted resources to Bin Ladin and his associates since 1995, [REDACTED]. The former head of the Baku office and its logistical chief, both associated with Bin Ladin, directed much of this activity, including channeling funds and weapons.<br><br>*See* CIA_000007. | | |
| 95 | In a subsequent report, *Islamic Terrorists: Using Nongovernmental Organizations Extensively,* April 9, 1999, CIA_000210-236, at Ex. 55, the CIA further describes the use of purported charitable organizations, like Al Haramain, by Osama bin Laden for critical resources in support of terrorist activities.<br><br>The logistical support NGOs offer includes cover employment, false documentation, travel facilitation, | 95.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading) and is otherwise conclusory and unsupported.<br><br><u>Disputed as vague:</u><br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br>(2) Plaintiffs' characterization of the charities as "purported charitable organizations" is vague and conclusory. | 95.<br><br><u>Pls. Ex. 55:</u><br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | training, and in some cases, weapons. Most Islamic terrorist groups maintain relationships with several NGOs, which protects them from the closure of any one organization. Terrorists typically penetrate NGOS by finding individual sympathizers who divert resources in support of the group, but in a few instances, entire NGO offices, including senior management positions, are staffed by extremists.<br><br>***<br><br>Usama Bin Ladin has established close relationships with employees in several al-Haramayn offices, [REDACTED] and has used these ties to divert resources to support his terrorist agenda, [REDACTED]. Some | Disputed as misleading for reasons discussed above in response to ¶ 69. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | of these employees probably [blank] either planted or coopted by Bin Ladin after they began working for the NGO.<br><br>*See* CIA_000210-211, 217. | | |
| 96 | In *Al Haramain in Africa: Supporting Al-Ittihad Al-Islami and Other Terrorists*, March 22, 2002, CIA_000675-679, at Ex. 67, the CIA details Al Haramain's extensive support for terror groups in Africa.<br><br>In Africa, HIF maintains a presence in about a dozen countries and supports several extremist groups, particularly Somalia's al-Ittihad al-Islami (AIAI), [REDACTED]. Al-Haramain employees also provide cover and logistic support for al-Qa'ida cells, including those involved in the 1998 U.S. Embassy bombings in Kenya and | 96.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75, 95.<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading) and is otherwise conclusory and unsupported.<br><br>(3) Moreover, Plaintiffs' discussion of the conduct of the Al Haramain office in Africa is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. During the relevant period, the Bank did not hold any accounts for Al Haramain branches outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br>Disputed as vague:<br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters. | 96.<br><br>Pls. Ex. 67:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Tanzania. Most of Al-Haramain's field office directors in East Africa are aware of and support the organization's aid to militant extremists, and at least some top-level officials from HIF's headquarters condone the funding of extremist groups. <br><br> *** <br><br> **Backing Somalia-Based AIAI** - Al-Haramain's top priority in Africa is supporting the Somali AIAI faction, [REDACTED]. AIAI—designated by the U.S. Government as a foreign terrorist group—seeks to establish an Islamic state in "Greater Somalia" including parts of Ethiopia, Djibouti, and Kenya. HIF offices worldwide collect funds to provide AIAI with financial | <u>Disputed as misleading for reasons discussed above in response to ¶ 69.</u> <br><br> <u>Disputed as incomplete for the reasons discussed above in response to ¶ 88.</u> | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | support to establish Islamic schools, courts, and other institutions in AIAI- influenced territory. HIF has also helped the faction develop its insurgent and terrorist capabilities.<br><br>• In 2002, HIF arranged travel for AIAI members to Saudi Arabia, probably to help them avoid anticipated U.S. military action in Somalia.<br><br>• In 2001, HIF provided humanitarian cover for unidentified Arabs traveling to Somalia to train AIAI military recruits, [REDACTED].<br><br>• In 1999, HIF maintained villas in Somalia used to store explosives and train AIAI members for jihad operations, [REDACTED].<br><br>Al-Haramain also | | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | supports AIAI from its offices and refugees camps in Kenya.<br><br>*See* CIA_000675-676. | | |
| 97 | The CIA report further explains Al Haramain's role in the 1998 U.S. Embassy bombings and the aid it provided to al Qaeda fighters.<br><br>**Providing Cover for al-Qaida** - In addition to its support of African Islamic terrorist groups, Al-Haramain's field offices in Tanzania and Kenya have aided al-Qa'ida cells, including those responsible for the 1998 U.S. Embassy bombings.<br><br>• In 2002, Al-Haramain's office in Tanzania hid 14 extremists—at least some of whom were probably al-Qa'ida fighters fleeing Afghanistan—in the Kiwalani mosque in Dar es Salaam, [REDACTED]. While staying at the mosque, the | 97.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading) and is otherwise conclusory and unsupported.<br><br>(3) Moreover, Plaintiffs' discussion of the conduct of the Al Haramain offices in Africa is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. During the relevant period, the Bank did not hold any accounts for Al Haramain branches outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br>Disputed as vague:<br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br>Disputed as misleading for reasons discussed above in response to ¶ 69.<br><br>Disputed as incomplete for the reasons discussed above in response to ¶ 88. | 97.<br><br>Pls. Ex. 67:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | fighters provided training to local extremists.<br><br>• In 1998, the Kenyan Government deregistered HIF for providing support to the terrorist cells that planned and carried out the bombing of the US Embassy in Nairobi, [REDACTED]. HIF and other NGOs diverted funds and helped import materials needed to build the bombs.<br><br>*See* CIA_000676. | | |
| 98 | The CIA also discloses that Al Haramain's humanitarian activities in Africa were undertaken with the goal of recruiting young men for jihad.<br><br>**Humanitarian, but With a Militant Agenda** - Even Al-Haramain's ostensibly legitimate activities in Africa, such as building mosques and Islamic schools, are undertaken with the goal of creating | 98.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 75, 95.<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading) and is otherwise conclusory and unsupported.<br><br>(3) Moreover, Plaintiffs' discussion of the conduct of the Al Haramain offices in Africa is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. During the relevant period, the Bank did not hold any accounts for Al Haramain branches outside of Saudi Arabia.  *See* Pls. Ex. 3 | 98.<br><br>Pls. Ex. 67:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | an environment conducive to militancy.<br><br>• HIF's limited relief operations and infrastructure construction projects in Africa are targeted to help only Muslim communities and propagate the fundamentalist Salafist brand of Sunni Islam.<br><br>• HIF's schools, mosques, and publications espouse Salafism's rigid orthodoxy and attack opposing secular and religious—including other Islamic doctrines—[REDACTED]. These efforts complement HIF employees' efforts to recruit young Africans for the jihad against the enemies of Islam.<br><br>*See* CIA_000675. | (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br><u>Disputed as vague:</u><br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br><u>Disputed as misleading for reasons discussed above in response to ¶ 69.</u> | |
| 99 | In *Al-Qa'ida Still Well Positioned to Recruit Terrorists [REDACTED]*, July 1, 2002, | 99. | 99. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | CIA_000178-189, at Ex. 68, the CIA assessed that Al Haramain was also recruiting young men for jihad and terrorist activities in the Balkans region.<br><br>In the Balkans, local offices of NGOs such as the World Assembly of Muslim Youth, al-Haramayn, Society for the Revival and Islamic Heritage, and al-Waqf al-Islamiya were actively involved in spotting and assessing suitable terrorist recruits from among young men who seek assistance from humanitarian organizations, [REDACTED].<br><br>*See* CIA_000186. | <u>Immaterial:</u><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶ 75.<br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading) and is otherwise conclusory and unsupported.<br>(3) Moreover, Plaintiffs' discussion of the conduct of the Al Haramain offices in Africa is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. During the relevant period, the Bank did not hold any accounts for Al Haramain branches outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br><u>Disputed as vague:</u><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br><u>Disputed as misleading for reasons discussed above in response to ¶ 69.</u> | <u>Pls. Ex. 68:</u><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |
| 100 | In an August 28, 2002 CIA report, *Al-Haramain: Support for Extremists and Terrorists [REDACTED],* CIA-SUB 0007-19, at Ex. 69, the CIA provides extensive evidence of Al Haramain's support for Islamic | 100.<br><br><u>Immaterial:</u><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 75, 95, 99.<br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the | 100.<br><br><u>Pls. Ex. 69</u><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | extremists and terrorists, and connections to al Qaeda and other militant groups.<br><br>**Ties to al-Qa'ida** - [REDACTED] at least 20 al-Haramain field offices and representatives operating in 50 countries in Africa, Asia, Europe, and North America, as well as its headquarters in Saudi Arabia, appear to be providing financial and logistic support to al- Qa'ida. In some cases, [REDACTED] financial support or collusion in terrorist plots. [REDACTED].<br><br>Some of the ties are to key al-Qa'ida officials or ongoing plots.<br><br>• [REDACTED] November 2001, unspecified al-Haramain officials met with the leadership of Wafa, an NGO with close ties to al- Qa'ida. | Bank's response to Section VI and is otherwise conclusory and unsupported.<br><br>Disputed as vague:<br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br>Disputed as misleading for reasons discussed above in response to ¶ 69. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | • [REDACTED] HIF offices in Indonesia and Pakistan support al-Qaʻida and other extremist groups [REDACTED]. <br><br> • Documents seized during SFOR raids in the Balkans [REDACTED] suggest that employees at HIF offices in Albania, Bosnia, Croatia, and Kosovo support al-Qaʻida and affiliated groups. Individuals in each of these offices have been funded by or worked with Bin Ladin, [REDACTED]. <br><br> • Bosnian authorities found e-mails in June 2002 from al-Qaʻida members on computers confiscated from the al-Haramain office in Travnik, Croatia. The e-mails contained instructions to attack an SFOR base in Tuzla, according to press reporting. | | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | • Al-Haramain offices in at least five African countries—Comoros Islands, Djibouti, Kenya, Somalia, Tanzania, and probably in Ghana—support al-Qaʻida and affiliated terrorist groups.<br><br>• [REDACTED] former HIF director in Tanzania Mummar al-Turki Abdul Wahab Dahil helped coordinate involvement in the 1998 US Embassy bombing in that country.<br><br>• [REDACTED] Dr. Omar Shams Idris, the HIF director in Tanzania, may have provided funds for a possible terrorist attack in Mombasa, Kenya, as of April 2002.<br><br>• Al-Haramain's Saudi headquarters delivered [REDACTED] cash [REDACTED] to Ramzi ben Mizauni Benfraj, the head of the Tanga, Tanzania office. Mizauni reportedly threw a party | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | in Dar es Salaam to celebrate the 11 September attacks and, as of May, was attempting to gain Tanzanian citizenship illegally through the purchase of false documents.<br><br>• Elias Ali Noor, a Somali employee of Al-Haramain in Somalia, may have ties to USS Cole suspects, [REDACTED].<br><br>*See* CIA-SUB_0010-11. | | |
| 101 | Al Haramain provided financial and logistic support to other terrorist groups, such as al-Ittihad al-Islamiya ("AIAI"), an Islamic terror group in Somalia, HAMAS, and Egyptian Islamic Jihad. *See* CIA-SUB_0011. | 101.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶ 75.<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading) and is otherwise conclusory and unsupported.<br><br>(3) Immaterial as to al-Ittihad al-Islamiya, HAMAS, and Egyptian Islamic Jihad, organizations not at issue in this litigation.<br><br><u>Disputed as vague:</u> | 101.<br><br><u>Pls. Ex. 69:</u><br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters. <br><br> <u>Disputed as misleading for reasons discussed above in response to ¶ 69.</u> | |
| 102 | Al Haramain provided similar support to Islamic extremists and foreign fighters in Bosnia and Chechnya. <br><br> • The HIF in Bosnia during the 1990s funded and supported the foreign *mujahidin* battalion in Zenica, transported *mujahidin*, provided logistic and financial support for its members, and conducted propaganda activities, [REDACTED]. <br><br> • [REDACTED] HIF provided about one-third of the total funds being funneled from the Persian Gulf to support the Chechen insurgency in the Caucuses. <br><br> *See* CIA-SUB_0012. | 102. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 75, 95, 99. <br><br> (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading) and is otherwise conclusory and unsupported. <br><br> (3) Moreover, Plaintiffs' discussion of the conduct of the Al Haramain offices in Bosnia and Chechnya is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. During the relevant period, the Bank did not hold any accounts for Al Haramain branches outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13. <br><br> <u>Disputed as vague:</u> <br><br> (1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters. <br><br> <u>Disputed as misleading for reasons discussed above in response to ¶ 69.</u> | 102. <br><br> <u>Pls. Ex. 69:</u> <br><br> - Inadmissible hearsay, as noted in response to Section VI (heading). |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 103 | The CIA report provides additional details concerning Al Haramain's activities in Africa, Asia, and Europe.<br><br>• [REDACTED] al-Haramain's top priority in Africa is supporting the AIAI faction, [REDACTED]. AIAI—designated by the US Department of Treasury under Executive Order 13224 as a foreign terrorist group—seeks to establish an Islamic state in "Greater Somalia" including parts of Ethiopia, Djibouti, and Kenya. HIF offices worldwide collect funds to provide AIAI financial support to establish Islamic schools, courts, and other institutions in AIAI-influenced territory. HIF has also helped the faction develop its insurgent and terrorist capabilities. [REDACTED]. *See* CIA-SUB_0017. | 103.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading) and is otherwise conclusory and unsupported.<br><br>(3) Moreover, Plaintiffs' discussion of the conduct of the Al Haramain offices in Africa, Asia, and Europe is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. During the relevant period, the Bank did not hold any accounts for Al Haramain branches outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br>Disputed as vague:<br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br>Disputed as misleading for reasons discussed above in response to ¶ 69.<br><br>Disputed as incomplete for the reasons discussed above in response to ¶ 88. | 103.<br><br>Pls. Ex. 69:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | • In addition to its support of African Islamic terrorist groups, al-Haramain's field offices in Tanzania and Kenya have aided al- Qa'ida cells, including those responsible for the 1998 US Embassy bombings. *Id.*<br><br>• Al-Haramain also misuses its status as a charitable organization to fund Islamist political parties and civic groups in East African countries—including Tanzania, Djibouti, and Comoros Islands. In some instances, the funding extends to supporting sectarian violence, [REDACTED]. *See* CIA-SUB_0018.<br><br>• Al-Haramain uses its presence in Indonesia to support extremist groups and is poised for expansion in the region. [REDACTED]. *Id.* | | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | • [REDACTED] Ahmad al-Amoudi—the Jakarta office director who served tours for al-Haramain in Pakistan, Bangladesh, and Azerbaijan in the 1990s—may have been involved in *mujahidin* recruitment. *Id.* | | |
| | • [REDACTED] al-Amoudi met [REDACTED] with Jafar Umar Thalib, leader of the Indonesian extremist group Laskar Jihad; al-Amoudi also noted that al-Haramain was working with Thalib on several ongoing "projects." *Id.* | | |
| | • Al-Haramain has built 25 mosques and schools in Indonesia and asserted control over mosque leadership positions to radicalize the local population. *Id.* | | |
| | • [REDACTED] funds were transferred from an HIF headquarters account in Saudi Arabia at al- | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Rajhi bank to an al-Ansar Welfare Trust in Kashmir. [REDACTED] al-Ansar Welfare Trust is a front for Lashkar-e-Tayyiba (LT) and Tehrik ul-Mujandin, which have been listed by the United States as terrorist groups. *Id.* | | |
| | • [REDACTED] individuals in the HIF offices in the Balkans are supporting extremist groups. *Id.* | | |
| | • Employees at HIF offices in Albania, Bosnia, Croatia, and Kosovo have been funded by or have acted on behalf of Usama Bin Ladin, [REDACTED]. *Id.* | | |
| | • Employees at al-Haramain have a long history of supporting the Chechens and foreign *mujihidin* movement ... an al-Haramain employee, provided funds and supplies to Chechen | | |

| PARA. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | *mujahidin* leaders. including several individuals tied to al-Qa'ida. *See* CIA-SUB_0019.<br><br>[REDACTED] al-Haramain officials have couriered funds to Chechnya for both World Assembly for Muslim Youth and the International Islamic Relief Organization. *Id.* | | |
| 104 | A November 14, 2002 CIA report, *Saudi-Based Financial Support for Terrorist Organizations [REDACTED]*, CIA_000143-158, at Ex. 45, indicates that an Al Haramain official served on a committee of Jemaah Islamiyah, an al Qaeda linked terrorist group in Indonesia, dedicated to funding the training of jihadists and amassing weapons to wage a religious war that will create an Islamic state in Indonesia. *See* CIA_000152. | 104.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading) and is otherwise conclusory and unsupported.<br><br>(3) Moreover, Plaintiffs' discussion of the conduct of the Al Haramain office in Indonesia is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. During the relevant period, the Bank did not hold any accounts for Al Haramain branches outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br>(4) Immaterial as to "Jemaah Islamiyah," an organization not at issue in this litigation. | 104.<br><br>Pls. Ex. 45:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Disputed as vague:<br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br>Disputed as misleading for reasons discussed above in response to ¶ 69. | |
| 105 | More recent intelligence reporting by the U.S. government, declassified and released pursuant to E.O. 14040, further reinforces the findings of U.S. and international investigations that Al Haramain's support for Osama bin Laden and al Qaeda was essential to al Qaeda's development into a sophisticated global terrorist. | 105.<br><br>Immaterial for the reasons discussed above in response to Section V (heading) and ¶ 75.<br><br>Disputed as vague:<br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br>Disputed as misleading for reasons discussed above in response to ¶ 69.<br><br>Disputed as conclusory; does not cite supporting evidence:<br><br>(1) Plaintiffs' characterization that "Al Haramain's support for Osama bin Laden and al Qaeda was essential to al Qaeda's development into a sophisticated global terrorist" is conclusory and does not cite to supporting evidence. | |
| 106 | 5. For instance, a July 23, 2021 FBI report, *Connections to the Attacks of September 11, 2001,* EO14040-003478-3608-UPDATED, at Ex. 51, asserts the following about Al Haramain. | 106.<br><br>Immaterial for the reasons stated above in response to Section V (heading) and ¶ 75. | Pls. Ex. 51:<br><br>- Hearsay to which no exception applies given heavy redactions, lack of sourcing, and hearsay within hearsay. See Fed. R. Evid 802. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | Alharamain foundation is a Saudi Arabian Islamic "NGO" or "charity" who had multiple offices worldwide designated as terrorist supporting entities by the United States for their support of AQ related groups. Within the U.S. the Alharamain office was located in Portland, Oregon and was later specifically designated along with its primary operator Suliman Albouthe.<br><br>The Al Haramayn or Al Haramain Islamic Foundation (AIF) has been reported as a Saudi Arabian funded Islamic charitable organization that distributes books, video/cassette tapes and leaflets which espouse radical Islamic thoughts. AIF has been utilized as a front organization for supporting and | <u>Disputed as vague:</u><br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br><u>Disputed as misleading for reasons discussed above in response to ¶ 69.</u><br><br><u>Disputed as incomplete for the reasons discussed above in response to ¶ 88.</u> | - Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt- by- association. See Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | facilitating the movement of Islamic Mujahadin into areas of Kosovo, Chechnya, Pakistan, Afghanistan and Bosnia. [REDACTED]. <br><br> In [REDACTED] is identified as [REDACTED] of the Al Haramain Foundation. It is further stated in [REDACTED] that "an African chapter of the Jeddah, based group was identified in a 1999 State Department report as one of the suspect terrorist groups operating in Nairobi, Kenya, before the bombing of the U.S. Embassy there in 1998. <br><br> *See* EO14040-003567-3568 | | |
| 107 | The Kingdom of Saudi Arabia validated the U.S. government's investigative findings concerning Al Haramain's global support for terrorism, describing the Saudi- | 107. <br><br> <u>Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.</u> | 107. <br><br> Pls. Ex. 70: |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | based da'wah organizations as "one of the biggest terror-financing operations in the world." <br><br> After the terrorist attacks on September 11, 2001, the U.S. Department of the Treasury initiated the Terrorist Finance Tracking Program (TFTP) to identify, track, and pursue terrorists and their networks. By 2004, the U.S. Department of the Treasury and Saudi Arabia eliminated four branches of the Al-Haramain charity, one of the biggest terror-financing operations in the world and the funding organ and channel for the Nairobi, Kenya and Dar es Salaam bombings in 1998. <br><br> *** <br><br> Saudi Arabia, in joint | <u>Disputed as vague:</u> <br> (1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters. <br><br> <u>Disputed as misleading for reasons discussed above in response to ¶ 69.</u> <br><br> <u>Disputed as incomplete for the reasons discussed above in response to ¶ 88.</u> | - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issues in its description of charities and charity branches allegedly engaged in extremism with no mention of Al Rajhi Bank. *See* Fed. R. Evid. 403. <br><br> <u>Pls. Ex. 4 at 21:</u> <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice for descriptions of charity branches allegedly engaging in extremism with no mention of Al Rajhi Bank. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | investigations with the U.S., has identified 17 prominent financial facilitators that are directly associated with Daesh. These sources, and others like them, are being shut down. We have also succeeded in dissolving groups such as Al-Furqan, a charity that was a major conduit of financial and material support for terrorist groups, and the charity front Al-Haramain Islamic Foundation, notoriously tied to Osama bin Laden, the Taliban and Al Qaeda's terror campaigns. *See* Ex. 70 (Dean Exhibit 7), *The Kingdom of Saudi Arabia and Counterterrorism*, at 13, 86; Ex. 4, Winer Report at 21. | | |
| 108 | Al Haramain's financial and material support for al Qaeda and | 108. | 108. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | terrorism were carried out under the direction and leadership of its senior officials, including Al Haramain Director Aqil al Aqil, Mansour al Kadi, Soliman al Buthe, and Perouz Sedaghaty. *See* Ex. 62, TREASURY00017-29 at 21 ("As of January 2003, the U.S. judged that AHF's Director Al-Aqil, who at the time managed AHF's business on a day-to-day basis, was providing funds to offices with terrorist ties in ways that avoided foreign government scrutiny, such as using personal bank accounts to transfer official AHF funds, according to diplomatic reporting."); *id.* (stating that Kadi, "al-Aqil's deputy and one of AHF's main leaders," is "implicated in working with al Aqil to support al Qaida terrorist activity"); *id.* at 27 (stating that Aqil was an "Al Qaida supporter that handled the collection of funds for 'freedom fighters' in areas including Afghanistan, Bosnia, Chechnya, Kosovo, and Somalia, [REDACTED]"). | **Immaterial:**<br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.<br><br>(2) In addition, immaterial because, during the relevant period, charity officials routinely collected donations and handled charitable funds on behalf of charities for which they were officers. *See* ARB Ex. 2 (Hobayb Rep.) at 30-31.<br><br>**Disputed as vague:**<br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br><u>Disputed as misleading for reasons discussed above in response to ¶ 69.</u> | <u>Pls. Ex. 62:</u><br><br>- Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403. |
| 109 | The CIA has assessed that Aqil was aware of, condoned, and | 109. | 109. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | participated in Al Haramain's ongoing material, financial, logistical, and ideological support for terror groups and Islamic extremists. According to the CIA:<br><br>We judge that HIF Director Shaykh Aqil Ibn 'Abdul-'Aziz al-'Aqil, who manages al-Haramain's business on a day-to-day basis, is aware that funds in several field offices are being used to support terrorist and militant groups. [REDACTED] he almost certainly has been involved in suspicious money movements since 11 September.<br><br>• [REDACTED] April 1999, al-Haramain used a centralized system that prohibits individuals from allocating funds without the personal approval of the foundation's director. | **Immaterial:**<br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading) and is otherwise conclusory and unsupported.<br><br>Disputed as vague:<br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br>Disputed as misleading for reasons discussed above in response to ¶ 69.<br><br>Disputed as incomplete:<br><br>(1) Plaintiffs quote language concerning Al Haramain's alleged support of mujahadin factions in Chechnya but fail to mention that at the time the Chechen resistance forces were not considered to be tied to extremists. See ARB Ex. 1 (Dean Rep.) at 10-11.<br><br>(2) During the relevant period, Aqil was the Director of Al Haramain, a reputable and licensed charity that collected donations and responded to humanitarian crises around the world. *See* Pls. Ex. 44 (Staff Monograph) at 115 (discussing various humanitarian works done by Al Haramain); *see also* ARB Ex. 23 (Letter from Prince of Tabuk) at ARB-38699 (letter in Al Haramain's KYC files describing Al Haramain as a "humanitarian" organization engaged in "relief efforts."); ARB Ex. 5 (Ltrs. from Al Haramain's KYC files) at ARB-38774-ARB-38775 (letter describing Al Haramain's humanitarian projects and good works). | Pls. Ex. 69<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading).<br><br>Pls. Ex. 67:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | • [REDACTED] Shaykh Aqil, other senior managers, and individuals at branch offices are at least aware that several branch offices provide logistic support to Islamic extremists.<br><br>• [REDACTED] Shaykh Aqil may have received funds from an unspecified organization [REDACTED] with extremist ties in the last few months. [REDACTED].<br><br>*Mujahidin* leaders frequently have coordinated funding support with senior al-Haramain managers, who were aware that their donations were being used for military support, [REDACTED]. The organization reportedly also has issued visas and identity papers to | (3) Communications with Aqil in his official capacity show that Al Rajhi Bank had knowledge of Aqil's position with Al Haramain. *See* Pls. Ex. 100 (Ltr. from Aqil al Aqil to the Gen. Mgr. of the Al Olaya Branch of Al Rajhi Bank) at ARB-38535; *see also* ARB Ex. 2 (Hobayb Rep.) at 30-31 (explaining that Aqil transactions would not have raised suspicion because of his affiliation with a known charity); *see also* ARB Ex. 41 (Sept. 26, 1998 Ltr. from Dep. Minister of Islamic Affairs) at ARB-38585. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | *mujahidin,* funded their recruitment and travel, and provided health care for wounded *mujahidin,* [REDACTED]. [REDACTED] 2001, Chechen *mujahidin* [REDACTED] received about [REDACTED] from al-Haramain, [REDACTED]. *See* Ex. 69, *Al-Haramain: Support for Extremists and Terrorists [REDACTED],* August 28, 2002, CIA-SUB 0007-19 at 14. *See also* Ex. 67, *Al Haramain in Africa: Supporting Al-Ittihad Al-Islami and Other Terrorists,* March 22, 2002, CIA_000675-679 at 675 ("Most of Al-Haramain's field office directors in East Africa are aware of and support the organization's aid to militant extremists, and at least some top-level officials from HIF's headquarters condone the funding of extremist groups."). | | |
| 110 | As to Soliman al Buthe (Treasurer of Al Haramain's office in | 110. | 110. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Ashland, Oregon, and chairman of Al Haramain's U.S. Committee with broad legal authority to act on behalf of Al<br><br>Haramain in the United States), the U.S. government concluded that al Buthe (1) worked closely with individuals providing material support for terrorism, (2) provided support to Islamic extremists advocating jihad, (3) served as a "clearinghouse" for moving Al Haramain funds from Saudi Arabia to the United States, and (4) engaged in activities to prevent the dissolution of Al Haramain notwithstanding multiple Executive Order 13224 designations of Al Haramain branch offices and officials.<br><br>FBI investigation revealed that Al-Buthe, on behalf of AHF, entered into agreements to work closely with alleged terrorist supporter Sami Omar Al-Hussayen, who was charged by Federal prosecutors in Idaho with material support | Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.<br><br>Disputed as vague:<br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br>Disputed as misleading for reasons discussed above in response to ¶ 69.<br><br>Disputed as incomplete:<br><br>(1) Soliman al Buthe was publicly known as an official of Al Haramain, a prominent and respected charity before the 9/11 Attacks. Buthe was not designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* Pls. Ex. 50 (*U.S.-Based Branch of Al Haramain Foundation Linked to Terror, Treasury Designates U.S. Branch, Director*, Sept. 9, 2004) at 1 (showing al Buthe was not designated until Sept. 9, 2004).<br><br>(2) Plaintiffs fail to include that al Buthe was designated for his actions pertaining to donations to Chechnya, which is not at issue in this litigation. *See id.* (showing al Buthe was not designated until Sept. 9, 2004 and alleging that "individuals associated with the branch tried to conceal the movement of funds intended for Chechnya by omitting them from tax returns and mischaracterizing their use, which they claimed was for the purchase of a prayer house in Springfield, Missouri.") | Pls. Ex. 63:<br><br>- Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. See Fed. R. Evid 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403.<br><br>Pls. Ex. 71:<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for its description of charities and charity branches allegedly engaged in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 26: |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | for terrorism. According to the Superseding Indictment, Al-Hussayen allegedly provided Internet and computer expertise to support and recruit for violent Jihad. This support was allegedly provided to AHF, Hamas, and a list of extremist websites, one or more of which contained explicit calls for violence against non-Muslims and urged visitors to participate in, or make financial contributions to support violent Jihad.<br><br>***<br><br>FBI investigation of one of the extremist websites revealed that Al- Buthe provided support to radical Saudi Shaykh Salman Al-Awdah. A government exhibit entered into evidence in the Idaho | | - Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt by association. *See* Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | trial identifies al Buthe as the owner, Chairman/Managing Director, and billing contact for islamtoday.com. This website is identified as "owned" and "under the supervision of" Al-Awdah, according to public Internet sources.<br><br>***<br><br>As of April 2004, Al-Buthe appeared to be functioning as a clearinghouse for moving AHF funds from Saudi Arabia to the U.S. [REDACTED] Al-Buthe has been acting as the conduit for sending funds on behalf of AHF to the U.S. to pay at least $515,316 in legal fees between June 2003 and April 2004. These funds reportedly were to assist in the legal defense of himself, AHF, AHF leader Aqeel Al-Aqil | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
|  | and others, including Muhammad Jumal Khalifa.<br><br>***<br><br>As of mid-March 2004, Al-Buthe was working hard to prevent the "total dissolution" of AHF, [REDACTED].<br><br>*See* Ex. 63, TREASURY00037-54 at 47-50. *See also* Ex. 71, Affidavit in Support of an Application for Search Warrant, In the Matter of the Search of One story residential building located at 3800 S. Highway 99 in Ashland, Oregon, Case No. 04-4009, filed in Case No. 6:05-crd- 60008-AA, Document No. 183-3, June 19, 2009, at ^ 42 (stating that al Buthe entered the United States at least thirteen times between October 1997 and April 2001, transporting a total of $777,845.00 into the country); Ex. 26 (Lormel Exhibit 9), *Assessment of Saudi Arabian Support to Terrorism and the Counterintelligence Threat to the United States*, December 2004, EO14040-        003414-3442- |  |  |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | UPDATED at 3435 (stating that al Buthe "provided over $700,000 to the US-based offices of HIF," and that "[approximately $600,000 of these funds came from al-But'he's personal account at the al-Rajhi Bank and Trust"). | | |
| 111 | According to the U.S. government, Perouz Sedaghaty, who worked in Al Haramain's U.S. branch office in Ashland, Oregon, admitted to the FBI that he had received $500,000.00 from Osama bin Laden.<br><br>In late 2001, the senior AHF official in the U.S., Perouz [Seda] Ghaty, sought a license from OFAC to purportedly assist Afghan refugees in border camps in Iran on the Iranian/Afghanistan border. Following the dual-U.S. Embassy bombing attacks in East Africa in August 1998, Seda reportedly confided to an FBI source that he was "in trouble." When asked | 111.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.<br><br>(2) Moreover, Plaintiffs' discussion of the conduct of the Al Haramain office in Oregon is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. During the relevant period, the Bank did not hold any accounts for Al Haramain branches outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br><u>Disputed as vague:</u><br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br><u>Disputed as misleading for reasons discussed above in response to ¶ 69.</u> | 111.<br><br><u>Pls. Ex. 62:</u><br><br>- Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | by the FBI source to elaborate, Seda said that he received $500,000 from UBL--"through Bosnia." Seda was described as a "fundamentalist" who has sought to convert prison inmates to the Islamic faith.<br><br>As part of Seda's request to OFAC in November 2001, he reported that Shaykh Al-Aqil, identified as the President of AHF, agreed to Seda's proposal to fund $500,000 for assistance to Afghan refugees in border camps in Iran. On the U.S. AFH's tax form 990 for 2001 filed with the IRS, Al-Aqil is identified as the President, Al-Kadi as the Vice President, Al-Buthe as the Treasurer, and Seda as the Secretary. The U.S. AHF branch's Articles of Incorporation and | | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | application to the IRS for tax-exempt status also list Al-Aqil and Al-Kadi as members of the board of directors.<br><br>As of March 2003, due to pressure from the U.S. on Saudi authorities to close AHF, Al-Aqil and Al-Kadi reportedly resigned from the U.S. AHF office, [REDACTED].<br><br>*See* Ex. 62, TREASURY00017-29 at 24. | | |
| 112 | Based on their roles in supporting al Qaeda, the United States government designated both Aqil al Aqil and Soliman al Buthe pursuant to E.O. 13224, and additionally indicted al Buthe for terrorist financing activities undertaken in connection with Al Haramain's U.S. branch. *See* Ex. 4, Winer Report at 112; Ex. 38, Kohlmann Report at 12. *See also* Ex. 72 (Lormel Exhibit 18) (June 2, 2004 designation of Aqil al | 112.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.<br><br>(2) In particular, neither Aqil nor Buthe was designated under any sanctions regime for connections to terrorism before the 9/11 Attacks.<br><br>Disputed as vague: | 112.<br><br>Pls. Ex 4 at 112:<br><br>-  Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for confusing the issues and unfair prejudice for attempts to impute liability |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
|  | Aqil); Ex. 50 (September 9, 2004 designation of Soliman al Buthe). | (1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br>Disputed as misleading for reasons discussed above in response to ¶ 69.<br><br>Disputed as incomplete for the reasons discussed above in response to ¶¶ 109, 110. | through guilt-by-association. *See* Fed. R. Evid 403.<br><br>Pls. Ex. 38 at 12:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for confusing the issues and unfair prejudice for attempting to impute liability through guilt-by- association. *See* Fed. R. Evid 403. |
| 113 | As discussed below, Abdullah al Misfer, one of Suleiman al Rajhi's full time committee officials, was also an official of Al Haramain. *See* Ex. 4, Winer Report at 103, 121, 122-123; Ex. 38, Kohlmann Report at 12. *See also* Ex. 73, Al Jazirah and Al Minbar articles identifying "Sheikh Abdullah al Misfer" as "the Head of the Palestine Division" of Al Haramain;<br><br>Ex. 15, NL 9623 (August 24, 1999 letter from Abdullah bin Ibrahim Al-Misfer to the Executive Director of "Islamic Call at Universities," in Garden Grove, | 113.<br><br>Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 75.<br><br>Disputed as vague:<br><br>(1) Plaintiffs' reference to "Al Haramain" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br>(2) Plaintiffs' characterization regarding a "full time committee official[]" is vague.<br><br>Disputed as misleading for reasons discussed above in response to ¶ 69.<br><br>Disputed as misleading; controverted by the evidence; incomplete:<br><br>(1) Misleading to the extent Plaintiffs contend that Abdallah al Misfer is the same individual as the one with a similar name who allegedly worked for the Sulaiman bin Abdulaziz al Rajhi Charitable | 113.<br><br>Pls. Ex. 4 at 103, 121, 122-123:<br><br>- Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 38, p. 12:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | California, stating that he works for the "Al-Rajhi Charity Office"). | Foundation. The extent of Plaintiffs' evidence is a press release where an Al-Haramain official had the same first and last name as a SAAR official. There is no mention of Abdullah Al-Misfer's middle name in the article or any other evidence that the individual with the name "Abdullah Ibrahim al Misfer," who served as an official for the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation official, and the Al Haramain official with the name "Abdullah al Misfer" are the same person. *See* Pls. Ex. 73 (Al Jazirah and Al Minbar articles naming an "Abdullah Al Misfer" as an Al-Haramain official); ARB Ex. 85 (Abdullah Al-Misfer customer information files) at ARB-41952 (one of Abdullah Ibrahim Abdullah Al Misfer's account opening files with his legal name included on his state ID). | attempting to impute liability through guilt-by-association, for providing routine banking services to individuals and charities, and discussing attacks not at issue in this litigation. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 73:<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>Pls. Ex. 15:<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing charity work that has no link to Al Qaeda. *See* Fed. R. Evid. 403. |
| 114 | IIRO also is a Saudi-based Islamic charity, founded in 1978 as a subsidiary and operational arm of the Muslim World League ("MWL"). | 114.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section V (heading). | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (2) In addition, immaterial because IIRO's legitimate humanitarian efforts were widely publicized before the 9/11 Attacks. *See* ARB Ex. 29 (Certificate from Saudi Arabian Ministry of Foreign Affairs) at ARB-13683 (certificate in IIRO KYC files recognizing IIRO as an NGO meant to provide relief to "refugees, children and victims of wars and disasters world-wide"); *id.* (Ltr. from Muslim World League) at ARB-13692 (Ltr. in IIRO KYC files stating IIRO's purpose is to provide relief to the poor, orphans, widows, and to develop hospitals and schools); *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 146:3-147:7 (acknowledging that IIRO provided humanitarian relief to Muslims around the world).<br><br>Disputed as vague:<br><br>(1) Plaintiffs' reference to "IIRO" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters. | |
| 115 | Usama bin Laden and al Qaeda used the entire IIRO network for al Qaeda's terrorist activities. *See* Ex. 74, U.S. Diplomatic Cable, *Terrorist Finance: Post-Vetting of Human Appeal International (HAI),* February 13, 2007, at 1 ("Usama bin Ladin used the entire IIRO network for his terrorist activities."); Ex. 75, *Additional Designations Pursuant to E.O. 13224: Dr. Abd Al Hamid Sulaiman Al-Mujil and International Islamic Relief Organization Philippines and* | 115.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 74, 114.<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>Disputed as vague: | 115.<br><br>Pls. Ex. 74<br><br>-  Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>-  Lacks authentication. *See* Fed. R. Evid. 901.<br><br>Pls. Ex. 75:<br><br>-  Hearsay to which no exception applies given heavy redactions, lack of sourcing, |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | *Indonesia Branches,* TREASURY00102-121 at 106 ("The International Islamic Relief Organization [IIRO], which is headquartered in Jeddah, Saudi Arabia and maintains numerous branch offices, is one of the primary non-governmental organizations [NGOs] active worldwide associated with and providing financial, material and logistical support to designated terrorist organizations, including al Qaida and UBL ... the Taliban ... Hamas ... as well as a Qaida affiliates, inter alia, the Abu Sayyaf Group (ASG) ... Jemaah Islamiyah (JI) ... and Al Ittihad Al Islamiya (AIAI)."). *See also* Ex. 38, Kohlmann Report at 17-30; Ex. 4, Winer Report at 15, 19, 30, 35, 36, 38, 39, 49-50, 58, 59. 87, 97. | (1) Plaintiffs' reference to "IIRO" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters.<br><br>(2) Plaintiffs' averment is vague as to timing. Before the 9/11 Attacks, neither IIRO KSA nor any IIRO branch was designated under any sanctions regime for connections to terrorism. *See* Pls. Ex. 170 (Treas. Press Release, *Treasury Designates Director, Branches of Charity Bankrolling Al Qaida Network* (Aug. 3, 2006)) (showing that first sanctions designations of IIRO branches began in 2006); *see also* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 57:8-12 ("To the best of my knowledge, there were no charities of any kind that I recollect that had been designated prior to 9/11 because terrorist designations were originally limited to terrorist organizations."); ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 126:12-13, 130:21-131:2 (testifying that charity designations only began after 9/11 and that he had not identified any Al Rajhi Bank transactions violating sanctions or designations, because "once the designation has been issued," it becomes "impossible to open an account under that [designated] person's name"). Moreover, IIRO KSA was never designated under any sanctions regime for connections to terrorism. *See* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 140:6-13 (acknowledging that IIRO KSA never received a sanctions designation); *see generally* ARB Ex. 59 (Office of Foreign Assets Control, *Specially Designated Nationals and Blocked Persons List*, U.S. Dept. of Treas. (May 3, 2024), https://www.treasury.gov/ofac/downloads/sdnlist.pdf).<br><br>(3) No IIRO branch was designated under any sanctions regime for connections to terrorism until 2006. *See* Pls. Ex. 170 (Treas. Press release, *Treasury Designates Director, Branches of Charity Bankrolling Al Qaida Network* (Aug. 3, 2006)) (showing first sanctions designations of IIRO branches were in 2006). | hearsay within hearsay. *See* Fed. R. Evid 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403.<br><br>Pls. Ex. 38 at 17-30:<br><br>- Should be excluded to the extent expert testimony is used a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under FRE 403 for unfair prejudice for describing charities and charity branches allegedly engaged in extremism with no mention of Al Rajhi Bank. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 4 at 15, 19, 30, 35-36, 38, 39, 49-50, 58-59, 87, 97:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Disputed as misleading; conclusory. <br><br> (1) Plaintiffs' reference to the "entire IIRO network" is conclusory and misleading for the reasons discussed above in response to ¶ 69. | - Should be excluded under Rule 403 for unfair prejudice for describing charity and charity branches allegedly engaged in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid. 403. |
| 116 | Among other support, the IIRO was "the principal sponsor of terrorist training camps in Afghanistan during the Taliban regime." *See* Ex. 76, U.S. Diplomatic Cable, *Terrorist Finance: [REDACTED],* June 2004, PEC-KSA001464-1466 at 1465. *See also* Ex. 66, *Usama Bin Ladin: Some Saudi Financial Ties Probably Intact,* January 11, 1999, CIA_00807-848 at 808 ("The International Islamic Relief Organization (IIRO) funds a military camp associated with Usama [REDACTED].")"; Ex. 77, 1996 Central Intelligence Agency Report, PEC-KSA000965- 978 at 972 ("The IIRO helps fund six | 116. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 114, 115. <br><br> (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. <br><br> Disputed as vague: <br><br> (1) Plaintiffs' reference to "IIRO" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters. | 116. <br><br> Pls. Ex. 76: <br><br> - Hearsay to which no exception applies given heavy redactions and lack of sourcing. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice for describing charity and charity branches allegedly engaged in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid. 403. <br><br> Pls Ex. 66: |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | militant training camps in Afghanistan."); Ex. 4, Winer Report at 16, 17, 50; Ex. 38, Kohlmann Report at 18, 20, 25, 26. | | - Inadmissible hearsay, as noted in response to Section VI (heading). <br><br> Pls. Ex. 77: <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> - Inadmissible hearsay, as noted in Section VI (heading). <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. <br><br> - Should be excluded under Rule 403 for unfair prejudice for describing charities and charity branches allegedly engaged in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid. 403. <br><br> Pls. Ex. 4 at 16-17, 50: <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issues for describing charity and charity branches allegedly engaged in extremism with no connection |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | | to Al Rajhi Bank and for discussing theaters and attacks that are not related to the attack at issue in this litigation. *See* Fed. R. Evid. 403. <br><br> Pls. Ex 38 at 18, 25-26, 30: <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under FRE 403 for unfair prejudice and confusing the issues for describing charities and charity branches allegedly engaged in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid. 403. |
| 117 | In 2006, the United States formally designated two of IIRO's branches and a senior IIRO official from IIRO's Eastern Province Office in Saudi Arabia, Abd Al Hamid Sulaiman al Mujil, based on their roles in funding and providing support to al Qaeda. Ex. 170 (Abdullah al Rajhi Exhibit 28) (August 3, 2006 designation of IIRO's branches in the Philippines and Indonesia, including And al Hamid Sulaiman al Mujil); Ex. 75, | 117. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 114, 115. <br><br> (2) In addition, immaterial because Al Rajhi Bank did not operate accounts for Mujil while he was an SDGT. Mujil was not designated under any sanctions regime for connections to terrorism, until the United States designated him as an SDGT on August 3, 2006, years after the 9/11 Attacks. *See* Pls. Ex. 170 (Treas. Press Release, *Treasury Designates Director, Branches of Charity Bankrolling Al Qaida Network* (Aug. 3, 2006) (showing | 117. <br><br> Pls. Ex. 75: <br><br> - Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | *Additional Designations Pursuant to E.O. 13224: Dr. Abd Al Hamid Sulaiman Al-Mujil and International Islamic Relief Organization Philippines and Indonesia Branches,* TREASURY00102-121. | first sanctions designations of IIRO branches began in 2006 with IIRO's branches in the Philippines and Indonesia, and al Hamid Sulaiman al Mujil). <br><br> Disputed as vague: <br><br> (1) Plaintiffs' reference to "IIRO" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters. <br><br> Disputed as misleading for the reasons discussed above in response to ¶ 69. | not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403. |
| 118 | In issuing the designation, the United States confirmed that "Al-Mujil has a long record of supporting Islamic militant groups, and he has maintained a cell of regular financial donors in the Middle East who support extremist causes." Further: <br><br>         Abd Al Hamid Sulaiman Al-Mujil (Al-Mujil) is the Executive Director of the IIRO Eastern | 118. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 114, 117. <br><br> (2) Immaterial as to the Abu Sayyaf Group and Jemaah Islamiyah, which are not at issue in this litigation. <br><br> Disputed as vague: <br><br> (1) Plaintiffs' reference to "IIRO" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters. <br><br> Disputed as misleading for the reasons discussed above in response to ¶ 69. | 118. <br><br> Pls. Ex. 75: <br><br> - Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Province (IIRO-EP) branch office in the Kingdom of Saudi Arabia. Al-Mujil has been called the million dollar man for supporting Islamic militant groups. Al-Mujil provided donor funds directly to al Qaida and is identified as a major fundraiser for the | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Abu Sayyaf Group (ASG) and Jemaah Islamiyah (JI). Both ASG and JI are al Qaida-associated terrorist groups in Southeast Asia designated pursuant to the authorities of E.O. 13224. These terrorist groups are also on the United Nations 1267 Committ | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | ee's consolida ted list of individua ls and entities associate d with the Taliban, al Qaida and/or Usama Bin Ladin. | | |
| | In 2004, Al-Mujil invited a Philippines-based JI supporter to Saudi Arabia under the cover of traveling for the hajj (the Muslim pilgrimage), and planned to provide him with cash to carry back to the Philippines to support organizations including JI. | | |
| | Al-Mujil was also present in Afghanistan in the late 1990s and personally knew Usama Bin Ladin and deceased al Qaida co-founder Abdallah Azzam. | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Al-Mujil traveled continuously to meet with members of Bin Ladin's organization in Arab countries. In the 1990s, Al-Mujil established a relationship with senior al Qaida operational planner Khalid Shaykh Muhammad. | | |
| | Al-Mujil has a long history of providing support to terrorist organizations. He has contributed direct financial assistance to ASG leaders, including Abdurajak Janjalani (deceased). | | |
| | The Indonesian and Philippines branches of IIRO have received support from IIRO-EP, which in turn is controlled by Al-Mujil. Indeed, he is often responsible for authorizing payment transfers for IIRO Philippines (IIRO-PHL) and IIRO Indonesia (IIRO-IDN). | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | *See* Ex. 75 at 1-2. | | |
| 119 | Additional CIA determinations and other evidence show that the IIRO's support for al Qaeda was undertaken under the direction of additional members of IIRO's senior leadership in Saudi Arabia, including Prince Turki bin Jalawi al Saud, who was "an important al-Qa'ida donor who hails from a minor line in the Saudi royal family," and a "key leader of the Eastern Province office." *See* Ex. 26 (Lormel Exhibit 9), *Assessment of Saudi Arabian Support to Terrorism and the Counterintelligence Threat to the United States,* December 2004, EO14040-003414-3442-UPDATED at 5. | 119. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons stated above in response to Section V (heading) and ¶ 114. <br><br> (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. <br><br> Disputed as vague: <br><br> (1) Plaintiffs' reference to "IIRO" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters. <br><br> (2) Plaintiffs' reference to "other evidence" is vague. | 119. <br><br> Pls. Ex. 26: <br><br> - Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt by association. *See* Fed. R. Evid. 403. |
| 120 | According to the deposition testimony of IIRO Secretary General Adnan Basha in this litigation: (1) the IIRO became aware of financial irregularities at the Eastern Province branch and formed a committee to investigate; (2) an audit revealed that the Eastern Province branch was willfully violating IIRO financial regulations by sending | 120. <br><br> Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 114, 115. | 120. <br><br> Pls. Ex. 78: <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> - Lack of personal knowledge. *See* Fed. R. Evid. 602. <br><br> - Should be excluded under Rule 403 for unfair prejudice |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | money to the accounts of overseas IIRO branch offices (including Pakistan) to implement projects without advising or seeking permission from IIRO headquarters and/or the IIRO General Secretariat; (3) the audit further discovered that IIRO Eastern Province officials were paying cash for projects without expense vouchers or receipts, also in violation of IIRO regulations; and (4) Secretary General Basha asked Prince Turki to cease these practices, but the Prince refused to comply with his request. *See* Ex. 78, Transcript, February 21, 2019 Deposition of Adnan Basha ("Basha Deposition"), at 265-278. | | and confusing the issue for discussing charity work and routine banking services that has no link to Al Qaeda. *See* Fed. R. Evid. 403. |
| 121 | Secretary General Basha explained that Prince Turki resigned as the head of the Eastern Province branch following the auditor's findings. Prince Turki resigned "[b]ecause he did not wish to implement the recommendations of the auditor." According to Basha, "I recall that the auditor's report connected all the violations to requests from the Prince." *Id.* at 273. | 121.<br><br>Immaterial for the reasons discussed above in response to Section V (heading) and ¶¶ 114, 115. | 121.<br><br>Pls. Ex. 78:<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Lack of personal knowledge. *See* Fed. R. Evid. 602.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing charity work and |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | | routine banking services that has no link to Al Qaeda. *See* Fed. R. Evid. 403. |
| 122 | SDGT Wa'el Hamza Jelaidan also served as an official of IIRO, along with several other ostensible charities that funneled money and support to al Qaeda. *See* Ex. 38, Kohlmann Report at 19; Ex. 49, *Treasury Department Statement on the Designation of Wa'el Hamza Julidan,* September 6, 2022 at 1 ("Julaidan has been the head of various non-governmental organizations providing financial and logistical support to the al-Qa'ida network."); *id.* at 2 ("In February 2000, Julaidan was appointed to the Board of Trustees of the Rabita Trust and served as its Director General. The Rabita Trust is an NGO designated under President Bush's Executive Order as an organization that provided logistical and financial support to al-Qa'ida."). *See also* Ex. 41 (Dean Exhibit 4), *Government's Evidentiary Proffer Supporting the Admissibility of Coconspirator Statements,* PEC-KSA002014-2114 at 2031 ("By way of background, Usama Bin Laden | 122. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 114, 115. <br><br> (2) Immaterial because Wa'el Jelaidan was not designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* Pls. Ex. 49 (Treas. Press Release, *Treasury Department Statement on the Designation of Wa'el Hamza Julidan,* Sept. 6, 2002) at 1. <br><br> <u>Disputed as vague:</u> <br><br> (1) Plaintiffs' reference to "IIRO" is vague and misleading to the extent Plaintiffs conflate charity branches with their government-licensed Saudi headquarters. | 122. <br><br> <u>Pls Ex. 38 at 19:</u> <br><br> - Should be excluded to the extent testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issues for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. <br><br> <u>Pls. Ex. 41:</u> <br><br> -Hearsay to which no exception applies. *See United States v. Arnaout,* 2003 WL 255226 (N.D. Ill. Feb. 4, 2003); *In Re Terrorist Attacks on September 11,* 349 F. Supp. 2d 765 (S.D.N.Y. 2005); *see also* Fed. R. Evid 802. <br><br> - Lack of personal knowledge. *See* Fed. R. Evid. 602. <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issues for |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | and Abdallah Azzam formed *Mekhtab al Khidemat* ('MK') (the 'Office of Services') to support the *mujahideen* in Afghanistan engaged in a conflict with the Soviet Union at a time prior to the Soviet withdrawal in 1989. Various relief organizations - including LBI [Lajnat al Birr al Islamiya], the BIF [Benevolence International Foundation] forerunner - worked with MK to provide travel documents, funds and other logistical support to the *mujahideen*. MK also worked with a number of other charitable/relief organizations, especially with Wael Julaidan ("Abu Hassan al Madani") of the International Islamic Relief Organization ... which was under the umbrella of *al Rabita al Alami al Islamiya*, also known as the Muslim World League ('MWL'). In many respects, Wael Julaidan was a leading supporter of the jihad through the relief organization network. Persons affiliated with charities provided logistical support to the *mujahideen* so integral to the success of the *mujahideen* that, as discussed below, Julaidan was featured in | | discussing conduct that is not sufficiently similar to the conduct at issue and not related to the attacks at issue in this litigation. *See* Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | organizational charts as the person responsible for 'Jihad Support,' even dating to the time prior to the forming of *al Qaeda.'"*). | | |
| 123 | A November 14, 2002 CIA report, *Saudi-Based Financial Support for Terrorist Organizations [REDACTED]*, CIA_000143-158, at Ex. 45, indicates that Jelaidan and Mohammed Jamal Khalifa (also an al Qaeda member) served in official roles with the MWL.<br><br>Some reporting indicated the MWL is the parent organizat ion of the Internati onal Islamic Relief Organiza tion (IIRO) and the World Assembl y of | 123.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 114, 122.<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI, and is otherwise conclusory and unsupported. | 123.<br><br><u>Pls. Ex. 45:</u><br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Muslim Youth (WAMY), is affiliated with more than a dozen other NGOs worldwide, and has its own offices in more than 30 countries. Several of Bin Ladin's associates, including Wa'il Julaydan and Muhammad Jamal Khalifah, were MWL | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | represent atives, accordin g to [REDAC TED] press reporting. [REDAC TED] funds destined for al-Ittihad al-Islamiyy a (AIAI) in Somalia were funneled through several Saudi NGOs, including MWL. *See* CIA_000150. | | |
| 124 | Jelaidan was a close associate of Osama bin Laden, and one of the most significant figures in the | 124. | 124. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | history of al Qaeda and its development into a global terrorist organization. *See* Ex. 4, Winer Report at 38, 86; Ex. 38, Kohlmann Report at 18 ("Julidan was one of Bin Laden's closest friends"); Ex. 49, *Treasury Department Statement on the Designation of Wa 'el Hamza Julidan,* September 6, 2022 at 2 ("Bin Laden himself acknowledged his close ties to Julaidan during a 1999 interview with al-Jazeera TV. When referring to the assassination of al-Qa'ida co-founder Abdullah Azzam, bin Ladin stated that 'We are all in one boat, as is known to you, including our brother, Wa'el Julaidan.'"). *See also* Ex. 79, *Additional Designation Pursuant to E.O. 13224,* TREASURY00001-8 at 4-5 (stating that "Julaidan is identified as one of the original founders of the al-Qa'ida organization and as bin Ladin's logistics chief," and also served on al Qaeda's shura council). | <u>Immaterial for the reasons discussed above in response to Section V (heading) and ¶¶ 114, 122.</u> | <u>Pls. Ex. 4 at 38, 86:</u> <br><br> - Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. <br><br> <u>Pls. Ex. 38 at 18:</u> <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. <br><br> <u>Pls. Ex. 79:</u> <br><br> - Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | | branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403. |
| 125 | Jelaidan played a key role in channeling support to al Qaeda from ostensible charities, including IIRO, MWL, Rabita Trust, Saudi Joint Committee for Relief of Chechnya and Kosovo, Saudi Red Crescent, and Rabita Trust. In the CIA report, *Usama Bin Ladin: Al-Qa'ida's Financial Facilitators [REDACTED]*, October 18, 2001, CIA_000500-563, at Ex. 80, the CIA describes how Jelaidan used his high-ranking positions in the Saudi da'wah organizations to divert money to al Qaeda.<br><br>*Wa'el Hama A. Julaydan.* Longtime Bin Ladin associate and IFTSC senior official *Wa'elHa mza* | 125.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section V (heading) and ¶¶ 95, 114, 122.<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>Disputed as conclusory and misleading; does not cite supporting evidence accurately:<br><br>(1) When citing Plaintiffs' Exhibit 66, Plaintiffs fail to note the caveated language and do not include the full quote. Plaintiffs quote that MWL was "used as a cover organization," when the report reads, "the MWL has *apparently* been used as a cover organization." (emphasis added). *See* Pls. Ex. 66 (CIA Rep. *Usama Bin Ladin: Al-Qa'ida's Financial Facilitators [REDACTED]* (Oct. 18, 2001)) at CIA_000823. | 125.<br><br><u>Pls. Ex. 80:</u><br><br>- Inadmissible hearsay, as noted in response to Section VI (heading).<br><br><u>Pls. Ex. 66:</u><br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | *Julaydan* (alias Abu Hasan al-Madani), a veteran of the Islamic charity circuit, has held high-level positions at the International Islamic Relief Organization (IIRO), Muslim World League (MWL), the Saudi Joint Relief Committee (SJRC), the Saudi Red | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Crescent Society (SRCS), and lately at two Bin Ladin-affiliated charities, al-Waqf al-Islami, and as secretary general of Rabita Trust coordinating financial activities and overseeing the budget. Julaydan has provided support since the 1990s to Muslims in Bosnia and Chechnya | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | - hotbeds of mujahidin activity - and may be using his position and influence at these organizations to divert funds and resources to al-Qa'ida.<br><br>*See* CIA_000544. *See also* Ex. 66, *Usama Bin Ladin: Some Saudi Financial Ties Probably Intact [REDACTED],* January 11, 1999, CIA_000807-848 at 823 (the CIA assessed that the MWL was "used as a cover organization for several of Usama's associates: [REDACTED].").| | |
| 126 | In connection with his role as one of al Qaeda's most important financiers and financial facilitators, Jelaidan was | 126. | 126. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | designated to receive contributions from members of al Qaeda's Golden Chain. *See* Ex. 4, Winer Report at 38; Ex. 81, Tareekh Osama "Golden Chain," FED- PEC0134953-134955 at 134954 (identifying "Wail" next to certain of the Golden Chain donors: Suleiman al Rashid, Abdel Qader Bakri, Salah al Din Abdel Jawad, and Abdel Hadi Taher); Ex. 42, August 29, 2002 Interview with Jamal al Fadl, PEC-KSA000329-352 at 351 (discussing Jamal al Fadl's review of the Golden Chain document ("Tareekh Osama, Folder 41, Document 108") with the FBI, which is the same document at Ex. 81 ("Tareekh Osama/41/Tareekh Osama 108")). | <u>Immaterial:</u><br><br>(1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 114, 122.<br><br>(2) In addition, immaterial and irrelevant as to references to the so-called "Golden Chain" for the reasons discussed above in response to ¶ 65.<br><br><u>Disputed as conclusory:</u><br><br>(1) Plaintiffs' characterization to "one of al Qaeda's most important financiers and financial facilitators" is conclusory. | <u>Pls. Ex. 4 at 38:</u><br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for its descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid. 403.<br><br><u>Pls. Ex. 81:</u><br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br><u>Pls. Ex. 42:</u><br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Lack of personal knowledge. *See* Fed. R. Evid. 602. |
| 127 | Jelaidan was a close associate of Yassin al Qadi, an important al Qaeda donor and financial facilitator, with whom Jelaidan | 127. | 127. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | partnered on numerous commercial and ostensible charity enterprises, including Muwafaq Foundation. *See* Ex. 4, Winer Report at 86-87; Ex. 82, *Designation Pursuant to E.O. 13224 of Yasin Al-Qadi*, TREASURY00055-86 at 61 ("Al-Qadi hired Chafiq Ayadi, an SDGT designated at the same time as Al-Qadi on October 12, 2001, to head Muwafaq's European operations upon the recommendation of Wa'el Julaidan in late 1992."); *id.* at 57, 61-63, 68 (detailing Qadi's relationship with Jelaidan); Ex. 77, 1996 Central Intelligence Agency Report, PEC-KSA000965-978 at 975 (stating that the Muwafaq Foundation "helps fund the Egyptian Mujahedin Battalion in Bosnia," and "also funds at least one training camp in Afghanistan"); Ex. 45, *Saudi-Based Financial Support for Terrorist Organizations,* November 14, 2002, CIA_00143-158 at 148 ("In 1992, al-Qadi founded the Muwafaq Islamic charity, through which he funneled funds to al-Qaida and other extremist | **Immaterial:** <br><br> (1) Immaterial for the reasons stated above in response to Section V (heading) and ¶¶ 114, 122. <br><br> (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. <br><br> (3) In addition, immaterial because Muwaffaq Foundation did not hold accounts at Al Rajhi Bank during the relevant period. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 337:15-17 and Errata at 77:17, 337:15. <br><br> (4) Immaterial as to "Al Gama'at Al-Islamiya," "HAMAS" and "Makhtab Al-Khidamat," organizations not at issue in this litigation. <br><br> **Disputed as vague:** <br><br> (1) Plaintiffs' reference to "numerous commercial and ostensible charity enterprises" is vague. | Pls. Ex. 4 at 86-87: <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. See Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for confusing the issues and unfair prejudice for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. <br><br> Pls. Ex. 82: <br><br> - Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403 <br><br> Pls. Ex. 83: |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | groups."). *See also* Ex. 83, November 29, 2001 letter from David D. Aufhauser, Treasury Department General Counsel, at 1 (stating that "Mr. Kadi has a long history of financing and facilitating the activities of terrorists and terrorist-related organizations"); *id.* at 2 ("The leader of the terrorist organization, Al-Gama'at Al-Islamiya, Talad Fuad Kassem, has said that the Muwafaq Foundation provided logistical and financial support for a mujahadin battalion in Bosnia."); *id.* at 3 ("The Muwafaq Foundation also provided support to HAMAS and the Abu Sayyaf Organization in the Philippines."); *id.* ("Following the dissolution of MK [Makhtab Al-Khidamat] in early June 2001 and its absorption into Al-Qa'ida, a number of NGOs formerly associated with MK, including Muwafaq, also merged with Al-Qa'ida."); *id.* ("The pattern of activity displayed by Mr. Kadi, and his foundation and businesses, is typical of the financial support network al Al Qa'ida and other terrorist organizations."). | | - Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>Pls. Ex. 77:<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading).<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Should be excluded under Rule 403 for unfair prejudice for describing charities and charity branches allegedly engaged in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 45:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading).<br><br>Pls. Ex. 83:<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| 128 | Like Jelaidan, the United States designated al Qadi for his role in providing material support to al Qaeda. *See* Ex. 82, *Designation Pursuant to E.O. 13224 of Yasin Al-Qadi*, TREASURY00055-86 at 56 ("Al-Qadi, a Saudi businessman whose companies span the Middle East, Europe, North America and South Asia, has been consistently identified as a financial supporter of Usama bin Laden and other known Islamic extremists for nearly a decade."); *id.* at 57 ("Al-Qadi repeatedly used Muwafaq, as well as his own corporations and employees, to divert funds to Islamic extremists, supporting their terrorist and extremist activities."); *id.* ("Through Muwafaq, Al-Qadi provided funds or otherwise assisted the Egyptian Islamic Jihad, HAMAS, the Abu Sayyaf Group, the Revival of Islamic Heritage Society, and Al-Haramayn (Bosnia), each of which has been designated an SDGT pursuant to E.O. 13224."). *See also* Ex. 84, FBI Report, *Co-operating Witness Interview,* June 2, 2004, at 1 (Jamal al Fadl ("source") advised the FBI that | 128.<br><br>Immaterial for the reasons discussed above in response to Section V (heading) and ¶¶ 114, 122, 127. | 128.<br><br>Pls. Ex. 82:<br><br>- Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403.<br><br>Pls. Ex. 84:<br><br>- Hearsay, to which no exception applies. See Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for confusing the issue and unfair prejudice by attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | "Al- Kadi would bring donated money from the Guld areas, mainly Saudi Arabia, to Al-Qaida which was used to purchase weapons in Jalalabad, Afghanistan."); *id.* (Al Fadl further "advised that Al- Kadi also brought money to Khartoum for Al-Qaida."); *id.* at 1-2 (Al Fald also "advised that Al- Kadi also supported Al-Haramain in Zagreb, Croatia during the conflict in Bosnia. Like Afghanistan and Sudan, Al-Kadi brought donations from Saudi Arabia and other Gulf countries to Croatia to support the jihad."). | | |
| 129 | Lajnat al Birr al Islamiyya ("LBI" or "al Birr"), which also operated under the name Benevolence International Foundation, was founded by SDGT Adel Batteijee, another close associate of Osama bin Laden. *See* Ex. 4, Winer Report at 59, 75, 78, 169, 211-213; Ex. 45, *Saudi-Based Financial Support for Terrorist Organizations,* November 14, 2002, CIA_00143-158 at 149 ("Shaykh Adil Batterjee was a close business associate of Bin Ladin during the early 1900s and a | 129.<br><br>Immaterial for the reasons discussed above in response to Section V (heading). | 129.<br><br>Pls. Ex. 4 at 59, 75, 78:<br><br>- Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403.<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.<br><br>Pls. Ex. 4 at 169: |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | long-time al-Qa'ida donor and fundraiser, [REDACTED]."). | | - Should be excluded under FRE 403 for unfair prejudice for attempting to impute liability through guilt by association. *See* Fed. R. Evid. 403. <u>Pls. Ex. 4 at 211-213</u>: - Should be excluded for unfair prejudice for attempting to impute liability on the basis of providing routine banking services for charities and individuals. *See* Fed. R. Evid. 403. <u>Pls. Ex. 45</u>: - Inadmissible hearsay, as noted in response to Section VI (heading). |
| 130 | Under the direction of Batterjee and Enaam Arnaout, LBI/BIF also operated as one of al Qaeda's most and important financial, logistical, and operational fronts. According to the United States: Adel Batterjee has ranked as one of the | 130. <u>Immaterial for the reasons discussed above in response to Section V (heading).</u> | 130. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | world's foremost terrorist financiers, who employed his private wealth and a network of charitable fronts to bankroll the murderous agenda of al Qaida. A worldwide asset freeze, including in his home country of Saudi Arabia, will deal a serious blow to this key | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | terrorist facilitator, said Stuart Levey, Treasury's Under Secretary for the Office of Terrorism and Financial Intelligence (TFI). In the late 1980s, Batterjee founded the precursor to BIF, Lajnat al-Birr al-Islamiah (LBI), in Saudi Arabia and Pakistan. LBI provided | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | financial and operational support to mujahideen elements in Afghanistan and around the world, including fighters associated with UBL and Gulbuddin Hekmatyer, who was named a SDGT by the Treasury on February 18, 2003. LBI was affiliated | | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | with Maktab Al-Khidamat (MK), which was co-founded and financed by UBL and is the precursor organization of al Qaida. LBI later joined al Qaida upon the dissolution of MK.<br><br>****<br><br>Batterjee subsequently resigned as Director of BIF and personall | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | y selected UBL confidant Enaam Arnaout to serve as the organization's head. Documents obtained by the U.S. Government demonstrate that Arnaout, while employed with LBI and BIF, worked with members of al Qaida to procure weapons for use in al Qaida | | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | training camps. While employed by Batterjee at LBI, Arnaout reported directly to Batterjee, which was outside the usual chain of command.<br><br>*See* Ex. 85, *U.S. Treasury Designates Two Individuals With Ties to Al Qaida, UBL Former BIF Leader and Al-Qaida Associate Named Under E.O. 13224,* December 21, 2004, at 1-2. | | |
| 131 | Like Jelaidan, Batterjee was designated to collect and receive donations from members of bin Laden's Golden Chain. *See* Ex. 81, Tareekh Osama "Golden Chain," FED- PEC0134953- | 131.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section V (heading). | 131.<br><br>Pls. Ex. 81:<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | 134955 at 134954 (identifying "Baterji" next to certain of the Golden Chain donors: Yousif Jameel, Ibrahim Afandi, Saleh Kamel, Al-Jumaih, Ahmad Turki Yamani, Mohammed Omar). | (2) In addition, immaterial and irrelevant as to references to the so-called "Golden Chain" theory for the reasons discussed above in response to ¶ 65. | |
| 132 | WAMY also is a Saudi-based charity, which played an extensive role in supporting al Qaeda. *See* Ex. 38, Kohlmann Report at 31-41; *see also* Ex. 66, *Usama Bin Ladin: Some Saudi Financial Ties Probably Intact,* January 11, 1999, CIA_00807-848 at 827; Ex. 68, *Al-Qa'ida Still Well Positioned to Recruit Terrorists [REDACTED],* July 1, 2002, CIA_000178-189 at 185; Ex. 9, *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions,* undated, CIA_00720-804 at 744. | 132.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section V (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(3) Immaterial as to Plaintiffs' reference to WAMY.<br><br>- Before the 9/11 Attacks, World Assembly of Muslim Youth ("WAMY") was not designated under any sanctions regime for connections to terrorism. *See* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 164:19-21 (acknowledging that WAMY never received a sanctions designation); *see also* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 57:8-12 ("To the best of my knowledge, there were no charities of any kind that I recollect that had been designated prior to 9/11 because terrorist designations were originally limited to terrorist organizations.").<br><br>- After the 9/11 Attacks, WAMY was never designated under any sanctions regime for connections to terrorism. *See* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 164:19-21 (acknowledging that WAMY never received a sanctions | 132.<br><br>Pls Ex. 38 at 31-41:<br><br>- Should be excluded to the extent expert testimony is used a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for description of charities and charity branches allegedly engaged in extremism with no connection to Al Rajhi Bank and for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 66:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading).<br><br>Pls. Ex. 68: |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | designation); *see generally* ARB Ex. 59 (Office of Foreign Assets Control, Specially Designated and Blocked Persons List, U.S. Dept. of Treas. (May 3, 2024), https://www.treasury.gov/ofac/downloads/sdnlist.pdf).<br><br>Disputed as conclusory; does not cite supporting evidence:<br><br>(1) The cited section of Plaintiffs' Exhibit 66 does not connect WAMY to Al Qaeda. The cited page of Plaintiffs' Exhibit 68 only discusses WAMY's alleged role in sponsoring youth training camps.<br><br>(2) The cited section of Plaintiffs' Exhibit 9 does not describe WAMY having an extensive role but does discuss allegations of its personnel often pursuing an "extremist agenda." Also, "In some cases WAMY puts foreigners requesting aid in direct contact with Saudi donors who are looking for "worthwhile Islamic causes." A footnote adds that "often funding emanates from semiofficial charities such as Muslim World League and IIRO, and from private donations that are often difficult to track."<br><br>(3) Plaintiffs' evidence therefore does not provide support for their conclusory assertion that WAMY played an "extensive role" in supporting Al Qaeda. | - Inadmissible hearsay, as noted in response to Section VI (heading).<br><br><u>Pls. Ex. 9:</u><br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | **Section VI** | |
| VI. | **CIA Finished Intelligence Findings and Assessments Concerning ARB, its Principals, and Related "Charity" Enterprises (¶¶ 133-187)** | **VI. (heading)** <br><br> <u>Disputed as conclusory; controverted by the evidence; unsupported by the evidence:</u> <br><br> (1) This section heading is a conclusory statement to which no response is required. <br><br> (2) Plaintiffs' reference to "principals" is vague, conclusory, and undefined. <br><br> (3) Plaintiffs' reference to "'charity' enterprises" is vague, conclusory, and undefined. <br><br> (4) Plaintiffs' implication that the "charity enterprises" are "related" to Al Rajhi Bank is unsupported by the evidence because the undisputed admissible evidence establishes that the Saudi-based Sulaiman bin Abdulaziz al Rajhi Charitable Foundation had no "relationship" with Al Rajhi Bank. Pls. Ex. 3 (Galloway Dep. Tr.) at 278:23-279:7 ("None of [the Charity Foundation officials] had any role at the bank, and the foundation has never been a parent, subsidiary, or affiliate of the bank."). <br><br> (5) Further, Plaintiffs have never alleged and have no evidence of any "relationship" between the Bank and the U.S.-based SAAR Foundation. *See* Order 15-16 (Nov. 22, 2021), ECF 7378 (noting Plaintiffs have not alleged "any direct connection between ARB and the SAAR Network" and finding a "lack of a reasonable connection between ARB and the SAAR Network"). The undisputed facts further establish that Al Rajhi Bank had no affiliation with the U.S.-based SAAR Foundation or the Charity Foundation in Saudi Arabia. Resp. to Pls. Aver. ¶¶ 41, 45-46, 256, 262; *see also* Pls. Ex. 3 (Galloway Dep. Tr.) | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | at 278:23-279:7 ("None of [the Charity Foundation officials] had any role at the bank, and the foundation has never been a parent, subsidiary, or affiliate of the bank."). | |
| | | (6) To the extent that Plaintiffs' use of "charity" in quotation marks implies that Al Rajhi Bank and Al Rajhi family members' charitable endeavors were not solely charitable in nature, or that Al Rajhi Bank and members of the Al Rajhi family had ulterior motives in engaging with charities, such an implication is conclusory and unsupported by any evidence Plaintiffs set forth. | |
| | | <u>Immaterial:</u> | |
| | | Plaintiffs' averments in Section VI are immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. | |
| | | (1) The averments in Section VI, even if credited, do not show that Al Rajhi Bank took any tortious act in support of Al Qaeda or the 9/11 Attacks, or aimed at the United States. Plaintiffs' averments do not show that any money that was transferred through accounts at Al Rajhi Bank reached Al Qaeda or supported the financing, planning, or carrying out of the 9/11 Attacks or any other act against the United States. Nor do Plaintiffs' averments show that any donations made by Al Rajhi Bank or its principals supported the financing, planning, or carrying out of the 9/11 Attacks or any other act against the United States. And Plaintiffs' averments do not show that the Bank acted with any knowledge or intent to support Al Qaeda or support the financing, planning, or carrying out of the 9/11 Attacks or any other terrorism or terrorist plot against the United States. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Immaterial to the extent that Plaintiffs' averments rely on CIA Reports, which are inadmissible hearsay, and are otherwise unsupported by admissible evidence:<br><br>The CIA reports Plaintiffs cite do not set out the "factual findings" of any "public office" and are "untrustworthy," and so are inadmissible hearsay to which no exception applies.  Fed. R. Evid. 803(8).  Although this Court has admitted other CIA reports for limited purposes in a different MDL action (*see Fed. Ins. Co.*, 2023 WL 2430381, at *6-7), the CIA reports at issue here are inadmissible because:<br><br>(1) The presumption that the CIA documents constitute factual findings is rebutted in this case.<br><br>(2) This Court found that certain CIA documents in the DIB case "presumptively" constitute "factual finding[s]," because they were "transmit[ted] . . . to others outside the agency."  *See Fed. Ins. Co.*, 2023 WL 2430381, at *6.<br><br>(3) This "presumption" is rebutted by the expert report of Dennis Lormel, who served as Chief of the Financial Crimes Section of the FBI in the years just before and after the 9/11 Attacks.  ARB Ex. 4 (Lormel Rep.) at 2-3.  At the FBI, Lormel routinely received CIA intelligence reports that were "transmit[ted]" to his agency.  *Id*. at 7.  Lormel explains that the purpose of these types of intelligence reports is to "supply 'leads'" and advise policymakers, but they do "not establish any particular fact." *Id*. at 10.  In fact, his agency "could only use the [CIA] intelligence for lead purposes to develop evidence" — not as evidence itself.  *Id*. at 7, 10-11.<br><br>(4) The CIA reports relied on here do not bear indicia of reliability, because the sources of the CIA reporting are not included in the | |

| Para.<br>No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | reports at all. Because the sources cannot be tested or evaluated, the reports themselves are inherently untrustworthy.<br><br>(5) This Court also found that the CIA documents in the DIB case were sufficiently reliable "[d]espite the redactions of the author's names," because those documents "carr[ied] the imprimatur of the CIA itself." *Fed. Ins. Co.*, 2023 WL 2430381, at \*7.<br><br>(6) In contrast, the CIA reports that Plaintiffs rely on here do not simply redact the author's names. Rather, the sources of the CIA reporting are not simply redacted — they are not included in the reports at all.<br><br>(7) The CIA reports relied on here contain large sections of redactions, rendering the information unintelligible, as Plaintiffs' experts acknowledge. *See* Pls. Ex. 4 (Winer Rep.) at 62 n.154 ("Due to the CIA's redactions, [the Key Findings Section of the report] is only partially intelligible."); *id*. at 65 ("Assessing elements of this portion of the CIA report is made more difficult by extensive redactions within the section covering ARB"); *id*. at 90 n.281 ("Most of the material pertaining to the Al Rajhis and ARB in this particular report is redacted."). These "extensive redactions" render the information "entirely unverifiable." ARB Ex. 4 (Lormel Rep.) at 11.<br><br>(8) The CIA reports relied on here, due to the lack of identified sources, are based largely on multiple levels of hearsay, making them particularly indicative of inadmissible hearsay.<br><br>   –  For example, Plaintiffs' Exhibit 69 references "press reports" and "press reporting" as support for its statements. *See* Pls. Ex. 69 (CIA Rep., *Al Haramain: Support for* | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | *Extremists and Terrorists* (28 Aug. 2002)) at CIA-SUB_0011-0013. | |
| | | – Plaintiffs' Exhibit 90 relies on "custodial interviews" from detainees at Guantanamo Bay to provide information on "Al-Qa'ida-linked donors, fundraisers, and facilitators." The unreliability of this information is noted by the CIA Report itself, which says: "this information is incomplete and some almost certainly is false." *See* Pls. Ex. 90 (CIA Rep., *Terrorism in Finance: Custodial Interviews Providing Leads into Al'Qa'da Financial Network* (7 Aug. 2002)) at CIA_00308. | |
| | | – The 9/11 Commission Report also noted that "assessing the truth of statements by these witnesses — sworn enemies of the United States — is challenging," in part because the Commission was unable to "talk to the interrogators so that we could better judge the credibility of the detainees and clarify ambiguities in the reporting." *See* Pls. Ex. 40 (9/11 Comm'n Rep.) at 146. | |
| | | (9) These "unattributed hearsay statements[s]" render the reports untrustworthy, because the Court "c[an] not evaluate the veracity or accuracy of such statements." *NES Fin. Corp. v. JPMorgan Chase Bank*, 891 F. Supp. 2d 558, 559 (S.D.N.Y. 2012) (holding report inadmissible because it contained hearsay from unidentified individuals); *see also MF Glob. Holdings, Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 568-69 (S.D.N.Y. 2017) ("Investigative reports are frequently regarded as untrustworthy where the reports are based on unattributed hearsay statements.") | |
| | | (10)    The CIA reports relied on here do not bear indicia of "trustworthiness." | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (11)     This Court held that the CIA reports in the DIB case met certain of the "trustworthy" factors because the "CIA analysts and officials who drafted and approved the reports have special skills and experience in counterterrorism; [and] officials held hearings (*at least by the 9/11 Commission*) regarding the intelligence conveyed in the documents." *Fed. Ins. Co.*, 2023 WL 2430381, at *7 (emphasis added). | |
| | | (12)     However, the 9/11 Commission and staff found the CIA's analysis and reporting from before 9/11 untrustworthy. *See* Pls. Ex. 40 (9/11 Comm'n. Rep.) at 91 (describing the "[w]eaknesses in all-source and strategic analysis" at the CIA in the 1990s, due to "the dispersal of effort on too many priorities, the declining attention to the craft of strategic analysis, and security rules that prevented adequate sharing of information"). | |
| | | (13)     Plaintiffs' Exhibit 44 (Staff Monograph) at 4 also attests to the untrustworthiness of CIA reports. "Terrorist financing was not a priority for either domestic or foreign intelligence collection.  As a result, intelligence reporting on the issue was episodic, insufficient, and often inaccurate;" *id.* at 5 (concluding "U.S. intelligence community largely failed to comprehend al Qaeda's methods of fundraising, moving, and storing money, because it devoted relatively few resources to collecting the strategic financial intelligence"); *id.* at 18 (explaining that even in March 2002, "the head of the [U.S.] government's terrorist-financing coordination effort" stated that U.S. officials could not answer "[w]ho finances al Qaeda," "[h]ow," or "[w]here"). | |
| | | (14)     Plaintiffs cite five CIA reports (Pls. Exs. 9, 54, 55, 66, 91) from the pre-9/11 period.  And the 2003 report (Pls. Ex. 10 (CIA Rep., *Al Rajhi Bank: Conduit for Extremist Finance* (May 28, 2003) (CIA-SUB_0001-6)) on which Plaintiffs primarily | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | rely (at ¶¶ 34, 137, 178, 182, 189, 190) simply restates the CIA's conclusions from a 1997 report, Pls. Ex. 9 (CIA Rep., *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions* (CIA000720-804)), while omitting key caveats and context. *See* ARB Ex. 4 (Lormel Rep.) at 15-18 (comparing 1997 CIA Report with 2003 reports). The 9/11 Commission Report's hearings on CIA reports generally thus cannot establish the trustworthiness of these reports or speak to the skill and experience of the anonymous analysts and officials who prepared them. | |
| | | (15)    The CIA reports relied on here are untrustworthy because they contain information that has been proven incorrect or has otherwise not been corroborated after years of investigation, including as to Al Rajhi Bank. | |
| | | (16)    As explained by Al Rajhi Bank's expert Dennis Lormel, despite extensive investigation, the FBI's Terrorist Financing Operations Section "could not verify or prove the CIA intelligence reporting or other investigative leads developed by the FBI and CIA regarding allegations that Al Rajhi Bank provided support for Al Qaeda." *See* ARB Ex. 4 (Lormel Rep.) at 7. | |
| | | (17)    "[F]actual errors" may support finding that a report is "not trustworthy." *Drew v. Oakland Cnty.*, 831 F.2d 294, 294 (6th Cir. 1987). | |
| | | –    For example, a 2002 CIA report that Plaintiffs rely on falsely states: "As of [redacted] 2000, Sulaiman al-Rajhi was also one of 128 permanent members of International Relief Organization (IIRO)."  Pls. Ex. 46 (CIA Rep., *Identifying Al-Qa'ida's Donors and Fundraisers: A Status Report* (27 Feb. 2002)) at CIA_000198.  In fact, Sulaiman bin Abdulaziz Al Rajhi resigned from the IIRO board as | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | early as June 1992. Pls. Ex. 199 (Ltrs. from Sulaiman bin Abdulaziz Al Rajhi) at ARB-00039603; *see also* Pls. Ex. 4 (Winer Rep.) at 71 n.191 ("These documents provide evidence that the IIRO had failed to remove SAAR's name from the list of its permanent members in response to his letters of resignation, a fact apparently not known to the CIA"). The undisputed admissible evidence establishes that Sulaiman bin Abdulaziz Al Rajhi resigned from both the boards of IIRO and Sanabell in 1992, as Plaintiffs' expert concedes. Resp. to Pls. Aver. ¶¶ 547-551; Pls. Ex. 4 (Winer Rpt.) at 71 n.191 ("These documents provide evidence that the IIRO had failed to remove SAAR's name from the list of its permanent members in response to his letters of resignation, a fact apparently not known to the CIA . . . ."). | |
| | | – In addition, a 2003 CIA report that Plaintiffs rely on states that in the "late 1990s Usama Bin Laden may have used an account or accounts at Al-Rajhi Bank to pay al Qa'ida operatives." Pls. Ex. 10 (CIA Rep., *Al Rajhi Bank: Conduit for Extremist Finance* (May 28, 2003) at CIA-SUB_004. This is false: Bin Laden had no active accounts at the Bank in the late 1990s, and Plaintiffs' experts concede he would not have been able to use his accounts after 1994 at the latest. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 53:5-55:2; ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 17:1-25, 208:15-18, 209:2-4. | |
| | | (18)    Plaintiffs' repeated description of the CIA reports as "finished intelligence" does not render the reports reliable or trustworthy. None of the reports bear any indication that they are "finished intelligence." To the extent the CIA reports are "finished intelligence," the intended purpose of such intelligence reports is to assist U.S. policy makers in making | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | policy decisions, and not to be used as evidence in criminal or civil legal proceedings, or to establish any particular fact. *See* ARB. Ex. 4 (Lormel Rep) at 6-8, 10. | |
| **133** | On September 3, 2021, President Biden issued Executive Order 14040 ("E.O. 14040"), requiring declassification reviews of certain documents concerning the terrorist attacks of September 11, 2001. Among other requirements, E.O. 14040 mandated that federal agencies conduct declassification reviews of "records that previously were withheld as classified, in full or in part, during discovery in *In re Terrorist Attacks on September 11, 2001*." *See* Ex. 86, E.O. 14040 at Section 2(b). | 133.<br><br>Immaterial for the reasons discussed above in response to Section VI (heading). | |
| 134 | On March 29, 2022, the Central Intelligence Agency ("CIA"), through the Department of Justice ("DOJ"), provided "copies of documents that the CIA is releasing pursuant to section 2(b) of Executive Order 14040, along with an index that specifies which documents are responsive to specific requests in the [June 5, 2018] subpoena," previously served by other Plaintiffs in this MDL, to be | 134.<br><br>Immaterial for the reasons discussed above in response to Section VI (heading). | 134.<br><br>Pls. Ex. 88:<br><br>- Improper summary exhibit. *See* Fed. R. Evid. 1006. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | followed by a public posting on its website ("CIA Documents"). *See* Ex. 87 (March 29, 2022 email from Sarah S. Normand, Assistant U.S. Attorney). On April 1, 2022, the DOJ released an additional CIA document and revised index. *See* Ex. 88, Index of Documents Produced Pursuant to Section 2(b)(i) of E.O. 14040. | | |
| 135 | The CIA intelligence reports responsive to the 9/11 MDL Plaintiffs' June 5, 2018 subpoena, and declassified pursuant to E.O. 14040, included finished intelligence reports cited by the 9/11 Commission, as authoritative sources concerning al Qaeda's sources of funding and financial infrastructure. *See, e.g.*, Ex. 89, *Al-Qa'ida in Sudan, 1992-1996: Old School Ties Lead Down Dangerous Paths*, March 10, 2003, CIA_00038-52; Ex. 45, *Saudi-Based Financial Support for Terrorist Organizations*, November 14, 2002, CIA_00143-158; Ex. 46, *Identifying Al-Qa'ida's Donors and Fundraisers: A Status* | 135.

Immaterial for the reasons stated above in response to Section VI (heading).

Disputed as conclusory; controverted by the evidence:

(1) Plaintiffs' statement that the CIA reports are "authoritative sources concerning al Qaeda's sources of funding and financial infrastructure" is conclusory, vague, and controverted by the evidence. The 9/11 Commission Report and the Staff Monograph on Terrorist Financing are highly critical of the CIA's intelligence gathering and analysis from this period, including describing it as "episodic, insufficient, and often inaccurate," as discussed above in response to Section VI (heading).

(2) Moreover, as explained by Al Rajhi Bank's expert, Dennis Lormel, CIA reports are "unreliable for evidentiary purposes for a number of reasons, most critically that the sources are unverifiable and the intelligence is often circular and inconclusive." ARB Ex. 4 (Lormel Rep.) at 10. | 135.

Pls. Ex. 89:

- Inadmissible hearsay, as noted in response to Section VI (heading).

Pls. Ex. 45:

- Inadmissible hearsay, as noted in response to Section VI (heading).

Pls. Ex. 46:

- Inadmissible hearsay, as noted in response to Section VI (heading).

Pls. Ex. 55:

-Inadmissible hearsay, as noted in response to Section VI (heading). |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | *Report*, February 27, 2002, CIA_00193-199; Ex. 55, *Islamic Terrorists: Using Nongovernmental Organizations Extensively*, April 9, 1999, CIA_00210-236; Ex. 90 (Winer Exhibit 2), *Terrorism Finance: Custodial Interviews Providing Leads Into Al-Qa'ida Financial Network*, August 7, 2002, CIA_00306-315; Ex. 91, *Usama Bin Ladin's Finances: Some Estimates of Wealth, Income, and Expenditures*, November 17, 1998, CIA_00317- 338; Ex. 9, *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions*, undated, CIA_00720-804; Ex. 66, *Usama Bin Ladin: Some Saudi Financial Ties Probably Intact*, January 11, 1999, CIA_00807-848. | | <u>Pls. Ex. 90:</u> - Inadmissible hearsay, as noted in response to Section VI (heading). <u>Pls. Ex. 91:</u> - Inadmissible hearsay, as noted in response to Section VI (heading). <u>Pls. Ex. 9:</u> - Inadmissible hearsay, as noted in response to Section VI (heading). <u>Pls. Ex. 66:</u> - Inadmissible hearsay, as noted in response to Section VI (heading). |
| 136 | Separately, on October 19, 2021, Plaintiffs issued a subpoena directed to the CIA for certain documents and reports relating to ARB, Suleiman al Rajhi, the Al Rajhi family, and certain ARB account holders, including 9/11 hijacker Abdulaziz al | 136. <u>Immaterial for the reasons stated above in response to Section VI.</u> <u>Disputed as misleading:</u> (1) Plaintiffs' averment is misleading to the extent Plaintiffs imply that al Buthe was designated as an SDGT at the time he was an "ARB accountholder." *See* Pls. Ex. 4 (Winer Rep.) at 97 (stating Al Buthe designated on Sept. 9, 2004). | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
|  | Omari and E.O. 13224 SDGT Soliman al Buthe. |  |  |
| 137 | Following, discussions between Plaintiffs and the DOJ concerning CIA objections to the subpoena, including state secrets and national security privilege claims, Plaintiffs agreed to modify the subpoena and CIA agreed to conduct a declassification review limited to four finished intelligence reports relating to ARB. *See* Ex. 92, June 7, 2022 email from Sarah S. Normand, Assistant U.S. Attorney. On July 25, 2022, the DOJ produced four CIA reports. *See* Ex. 10, *Al-Rajhi Bank: Conduit for Extremist Finance*, May 28, 2003, CIA-SUB_0001-6; Ex. 69, *Al-Haramain: Support for Extremists and Terrorists*, August 28, 2002, CIA-SUB_0007-19; Ex. 11, *Islamic Banking: A Potential Economic Enabler in the Muslim World*, May 21, 2004, CIA-SUB_0020-30; Ex. 93, *Taibah: Linking Extremists in the Balkans and the United States, December 12, 2002*, CIA-SUB_0031-33. | 137.<br><br>Immaterial for the reasons stated above in response to Section VI (heading).<br><br>Disputed as misleading:<br><br>(1) Plaintiffs' characterization of the reports responsive to the subpoena is misleading. Plaintiffs' Exhibit 92 contains the government's agreement to process and produce redacted versions of four CIA documents, but it does not refer to the documents as "finished intelligence." *See* Pls. Ex. 92 (June 7, 2022 email from Sarah S. Normand, Assistant U.S. Attorney.) | 137.<br><br>Pls. Ex. 10:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading).<br><br>Pls. Ex. 69:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading).<br><br>Pls. Ex. 11:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading).<br><br>Pls. Ex. 93:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 138 | The CIA Reports referenced in paragraphs 135 and 137 above are "finished intelligence" reports, and the end-products of a rigorous CIA analytical process. As explained in the expert report of Jonathan Winer: <br><br> The [CIA] reports were all "finished intelligence," meaning, that they were the end-products of a highly-developed process that has the goal of producing reports which can be relied on by senior U.S. policy makers, including the President. The intelligence process by which these reports were created ordinarily involves a series of steps. First is a tasking, or definition of the intelligence requirements or needs to protect U.S. national security. As mentioned, the White House prior to 9/11 was heavily focused on bin Ladin, and issued taskings to better | 138. <br><br> <u>Immaterial and disputed for the reasons discussed above in response to Section VI (heading).</u> | 138. <br><br> <u>Pls. Ex. 4 at 14, 53-55:</u> <br><br> - Expert is not qualified to offer opinion on CIA intelligence gathering, never was in the CIA or in the intelligence community. *See* Fed. R. Evid. 702. <br><br> <u>Pls. Ex. 4 at 29:</u> <br><br> - Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | understand his activities and sources of support, including sources of funding for terrorism. Next is implementing the tasking through defining the collection requirements for various forms of raw intelligence that will be used to produce finished intelligence, and then allocating resources to meet them. U.S. intelligence agencies then work together, and sometimes with intelligence and other components of other U.S. governmental agencies such as the State Department, Treasury Department and Justice Department, to collect the raw information based on the requirements through gathering information from individuals (human intelligence), carrying out technical (and sometimes physical) surveillance (signals intelligence), gathering information | | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | from other governments, gaining access to business records, such as financial records, and adding open source information from public reporting to those non-public sources. The CIA then integrates this data so that its analysts have access to it, undertaking any needed processing to decrypt encrypted data and translate information from other languages. This work in turn leads to the creation and build out of databases, so that the databases contain all relevant source material. The CIA analysts then integrate, evaluate, and analyze the data to prepare the final intelligence products, weighing and evaluating the information they have, to produce finished intelligence, connect the dots, and draw conclusions about what it all means. This finished intelligence is then | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | distributed to the government consumers, who may ask questions about it, seek further information or analysis, raise queries about the particular sourcing that went into the document, and/or use the finished intelligence as the foundation for policy decisions.<br><br>*See* Ex. 4, Winer Report at 54. *See also id.* at 14, 29, 53-55. | | |
| 139 | Underscoring the reliability of such finished intelligence reports, the 9/11 Commission specifically cited several of the CIA reports in support of its findings concerning al Qaeda's finances and financial network, and directed readers of its Final Report to a number of them for more information on those topics. *See, e.g.*, Ex. 40, 9/11 Commission Report at 467, n. 30, 35-7; 468, n. 44, 51; 470, n. 80 (citing CIA analytic report, *Al-Qa'ida in Sudan, 1992-96: Old School Ties Lead Down Dangerous Paths); id.* at 470, n. 77; 498, n. 115 (citing CIA | 139.<br><br><u>Immaterial for the reasons discussed above in response to Section VI (heading) and in response to Section V (heading).</u><br><br><u>Disputed as controverted by the evidence:</u><br><br>(1) Plaintiffs' statement that the 9/11 Commission Report "[u]nderscor[es] the reliability" of the CIA reports is controverted by the evidence. The 9/11 Commission Report and the Staff Monograph on Terrorist Financing are highly critical of the CIA's intelligence gathering and analysis from this period, including describing it as "episodic, insufficient, and often inaccurate," as discussed above in response to Section VI (heading). | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | analytic report, *Saudi-Based Financial Support for Terrorist Organizations); id.* at 498, n. 116-117 (citing CIA analytic report, *Identifying al-Qaida's Donors and Fundraisers: A Status Report); id.* at 498-499, n. 127 (citing CIA analytic report, *Usama Bin Ladin's Finances: Some Estimates of Wealth, Income, and Expenditures); id.* at 504, n. 84 (citing CIA analytic report, *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions); id.* at 504, n. 86 (citing CIA analytic report, *Usama Bin Ladin: Some Saudi Financial Ties Probably Intact); id.* at 504, n. 86 (citing CIA analytic report, *Islamic Terrorists: Using Nongovernmental Organizations Extensively*). | | |
| 140 | More generally, the 9/11 Commission cited broadly to finished CIA and U.S. government intelligence reports in support of its findings and conclusions concerning al Qaeda's financing, history, objectives, and a range of other | 140.<br><br>Immaterial for the reasons discussed above in response to Section VI (heading) and Section V (heading).<br><br>Disputed as controverted by the evidence:<br><br>(1) Plaintiffs' averment is controverted by the evidence to the extent Plaintiffs' averment implies that the 9/11 Commission Report establishes the reliability of the CIA reports cited here. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | topics. *See, e.g.*, Ex. 40, 9/11 Commission Report at 466-471, Notes to Chapter 2 (citing "Intelligence reports" at n. 18, 22, 25, 31, 33, 35-37, 42-49, 52, 54-56, 59, 62, 63, 67-69, 71-76, 79, 80, 82, 85); *id.* at 500-513, Notes to Chapter 6 ("Intelligence reports" at n. 5, 8, 41-43, 50, 122, 123, 125-127). | The 9/11 Commission Report and the Staff Monograph on Terrorist Financing are highly critical of the CIA's intelligence gathering and analysis from this period, including describing it as "episodic, insufficient, and often inaccurate," as discussed above in response to Section VI (heading). | |
| 141 | The finished CIA reports were finalized between 1997 and 2003; however, those that were finalized after September 11, 2001 largely discuss relationships, events, and financing activities that predated the September 11th attacks. *See* Ex. 4, Winer Report at 55, 69-81, 91-100, 105-106. | 141.<br><br>Immaterial for the reasons discussed above in response to Section VI (heading). | 141.<br><br>Pls. Ex. 4 at 55:<br><br>- Expert is not qualified to offer opinion on CIA intelligence gathering, never was in the CIA or in the intelligence. *See* Fed. R. Evid. 702.<br><br>Pls. Ex. 4 at 69-81, 91-100, 105-106:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.<br><br>- Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. |
| 142 | As Plaintiffs' expert Jonathan Winer testified, when read | 142. | 142. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | collectively, the finished CIA reports reflect an increasing understanding and confidence in the CIA's assessments of ARB's critical role in supporting al Qaeda and associated terrorists, and recognition of the degree to which the terrorist support activities of ARB and its principals were directed at and presented a threat to the national security of the United States. *See* Ex. 12, Winer Deposition at 46-49. | <u>Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.</u><br><br><u>Disputed as conclusory; controverted by the evidence; misleading; vague:</u><br><br>(1) Plaintiffs' reference to "ARB's critical role" and the "degree to which the terrorist support activities of ARB . . . presented a threat to the national security of the United States" is conclusory and vague.<br><br>(2) Plaintiffs' averment that Plaintiffs' expert testified to "ARB's critical role" and the "degree to which the terrorist support activities of ARB and its principals were directed at and presented a threat to national security of the United States," misrepresents the testimony provided in Plaintiffs' Exhibit 12.<br><br>   – Plaintiffs' expert in fact relays the findings of only one 1997 CIA report, which stated that the "Al-Rajhi financial ties to Islamists is inconclusive." *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 46:7, 48:1-6.<br><br>(3) Plaintiffs' averment that the CIA reports "reflect an increasing understanding and confidence in the CIA's assessments of ARB's critical role" is controverted by the evidence. As Dennis Lormel explained, an analysis of the trajectory of CIA reports during this period shows that, "the intelligence appeared to be circular" which in turn impugns "the reliability of the intelligence being reported." *See* ARB Ex. 4 (Lormel Rep.) at 12. | Pls. Ex. 12 at 46-49:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (*see* Fed. R. Evid. 802) and to the extent expert is not qualified to offer opinion (*see* Fed. R. Evid. 702). |
| 143 | As reflected in the analyses presented in the Winer and Kohlmann expert reports, the | 143. | 143. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | finished CIA intelligence reports, along with related evidence, show that ARB, Suleiman al Rajhi, and other al Rajhi family members were key supporters of al Qaeda in the years leading up to the September 11th attacks. *See* Ex. 4, Winer Report at 27, 55-80, 85-99, 105, 106, 117, 123, 144, 169, 198, 203, 204, 207, 208, 210-214, 216; Ex. 38, Kohlmann Report at 6-8, 12, 15-17, 29. The key assessments and findings presented in those reports are summarized below. | Immaterial: <br><br> (1) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. <br><br> (2) Plaintiffs' averments regarding Sulaiman bin Abdulaziz Al Rajhi, Abdullah bin Sulaiman Al Rajhi, and any other "Al Rajhi" family members are immaterial for the reasons discussed in Section IV (heading). <br><br> Disputed as conclusory: <br><br> (1) Plaintiffs' reference to "key supporters" is conclusory and vague. <br><br> Disputed as controverted by the evidence: <br><br> (1) Plaintiffs' averment that Sulaiman bin Abdulaziz Al Rajhi and other al Rajhi family members were "key supporters of al Qaeda" is controverted by the evidence. Plaintiffs rely heavily on inadmissible CIA reports, but even if considered, those reports make clear that the CIA — after years of intelligence gathering — never concluded with certainty that the Bank, its senior officers, or Al Rajhi family members knew the Bank was "used by" terrorists, much less Al Qaeda. <br><br> (2) The CIA acknowledged its own uncertainty about the Al Rajhi family, stating that "Al Rajhi financial ties to Islamists is inconclusive," and the use of the Bank by extremists "probably denotes convenience rather than Al rajhi family involvement in financing radical groups." Pls. Ex. 9 (CIA Rep., *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions*) at CIA_000744; *see also id.* ("The bank's dominance of the foreign remittance business, coupled with | Pls. Ex. 4 at 55-80, 204, 210-212: <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. <br><br> Pls. Ex. 4 at 55-80, 123: <br><br> - Should be excluded under Rule 403 as confusing the issues and unfair prejudice for discussion of the Mujahaddin in Afghanistan, other banks, and other attacks. *See* Fed. R. Evid. 403. <br><br> Pls. Ex. 4 at 85-99, 105-106, 117, 198, 203, 213-214: <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded as needles presentation of cumulative evidence. *See* Fed. R. Evid. 403. <br><br> Pls. Ex. 4 at 144, 169: |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | strong financial links to Africa and the Asian subcontinent, probably make ARBIC the *only choice* for transferring funds to some regions.") (emphasis added); Pls. Ex. 10 (CIA Rep., *Al Rajhi Bank: Conduit for Extremist Finance* (May 28, 2003)) at CIA_SUB_003 ("Extremists use ARABIC because its Islamic banking principles appeal to them and because it is one of the few banks with branches in outlying areas of Saudi Arabia, as well as good correspondent connections in remote locations abroad"). <br><br> (3) Abdullah bin Sulaiman Al Rajhi, the current Chairman and former General Manager/CEO of Al Rajhi Bank, testified that his father, Sulaiman bin Abdulaziz Al Rajhi, had never been a supporter of Al Qaeda or Osama Bin Laden and to the best of his knowledge no one at the Bank ever supported Al Qaeda, Osama Bin Laden, or terrorism in any form.  *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 354:17-355:8. <br><br> (4) To the extent that Plaintiffs aver that Al Rajhi Bank or a member of the Al Rajhi Family have supported Al Qaeda or Osama Bin Laden, neither Al Rajhi Bank, nor any member of the Al Rajhi family, has ever been indicted for allegations of terrorism financing or money-laundering.  Furthermore, none of these entities and individuals has ever been designated by the United States or the United Nations, which would require a lower evidentiary threshold than a successful criminal prosecution.  *See* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-39:5; ARB Ex. 4 (Lormel Rep.) at 9, 34-35; ARB Ex. 28 (Winer Dep. Tr. and Errata) at 143:9-18, 160:10-18. | - Expert is not qualified to offer opinion on Saudi banking regulations. *See* Fed. R. Evid. 702. <br><br> Pls. Ex. 38 at 7-8: <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. <br><br> Pls. Ex. 38 at 15-17, 29: <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing terrorist groups, individuals, and charity branches that have no |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | | connection to Al Rajhi Bank. *See* Fed. R. Evid. 403. |
| 144 | On November 17, 1998, the CIA's Office of Transnational Issues ("OTI"), prepared a report entitled: *Usama Bin Ladin s [sic] Finances: Some Estimates of Wealth, Income, and Expenditures*, at the request of Richard Clarke, the counterterrorism coordinator for the National Security Council. *See* Ex. 91, *Usama Bin Ladin's Finances: Some Estimates of Wealth, Income, and Expenditures*, November 17, 1998, CIA_00317-338; *see also* Ex. 4, Winer Report at 55. | 144.<br><br><u>Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.</u><br><br><u>Disputed as controverted by the evidence; misleading:</u><br><br>(1) Redactions prevent a full understanding of the preparation of the document; the full text states: "This paper was prepared at the request of Richard [redacted] Global Is[redacted] and Multilateral Affairs, NSC. It was prepared by [redacted] OTI and [redacted]." *See* Pls. Ex. 91 (CIA Rep., *Usama Bin Ladin's Finances: Some Estimates of Wealth, Income, and Expenditures* (Nov. 17, 1998) at CIA_00317. | 144.<br><br><u>Pls. Ex. 91:</u><br><br>- Inadmissible hearsay, as noted in response to Section VI (heading).<br><br><u>Pls. Ex. 4:</u><br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. |
| 145 | Much of the report discusses bin Laden's own wealth, but it also includes several assessments relating to al Qaeda's sources of outside financial support and relationships with banks:<br><br>Bin Ladin and Al-Qa'ida members control numerous bank accounts worldwide. [REDACTED] the choice of financial institutions has been based on | 145.<br><br><u>Immaterial:</u><br><br>(1) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(2) Plaintiffs' reference to a purported donation to MAK is immaterial because:<br><br>– Purported donations to the Afghan resistance to the Soviet Invasion, even if considered, is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. | 145.<br><br><u>Pls. Ex. 91:</u><br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | personal contact with the bank, security concerns, and the bank's adherence to Islamic law.[1]<br><br>The major sources of outside financial support probably are wealthy family members, several of whom maintain contact with Usama or have similar militant views; wealthy Gulf sponsors, and Islamic NGOs.[2]<br><br>[Bin Ladin] has also been able to rely on major sources of funding during his 15-year career as a mujahaddin, especially from wealthy Gulf families; and he may continue to have access to his family's wealth.[3]<br><br>*Gulf Sponsors.* Bin Ladin probably maintains support from Gulf sympathizers, including | – Even if the CIA reports are admissible and credited, as of 2003, the CIA estimated that "the Al Rajhi family" had "over 700 male members." *See* Pls. Ex. 10 (CIA Rep., *Al Rajhi Bank: Conduit for Extremist Finance* (May 28, 2003)) at CIA-Sub_003. The CIA excerpt quoted does not name the individual that allegedly made a deposit into the bank accounts of "Maktab al-Khidamat." *See* Pls. Ex. 66 (CIA Rep., *Usama Bin Ladin: Some Saudi Financial Ties Probably Intact* (Jan. 11, 1999)) at CIA_000830. Plaintiffs do not aver that it was an individual associated with the Bank.<br><br>– Plaintiffs do not aver that the purported donation was made to an account at Al Rajhi Bank.<br><br>– Plaintiffs do not aver when the donation was made, nor do they aver that the purported donation was used for terrorism, much less the 9/11 Attacks.<br><br><u>Disputed as conclusory; vague:</u><br><br>(1) Plaintiffs' reference to Al Qaeda's "relationships with banks" is vague and conclusory. | |

---

[1] CIA_000318.

[2] *Id.*

[3] CIA_000321.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | some prominent merchants and government officials who reportedly contributed millions of dollars to his efforts during the Afghan war, [REDACTED].[4]<br><br>_Financial Support to Islamic NGOs._ While Bin Ladin receives NGO financial support diverted from Gulf sponsors, Bin Ladin also provides funding to sp[e]cific offi[c]es of these organizations, [REDACTED].[5]<br><br>Appendix. **Islamic Banks Possibly Harboring Bin Ladin's Wealth [REDACTED]** . . . Islamic financial institutions, nevertheless may be key repositories for Al-Qa'ida's liquid funds. Of some 180 Islamic banks operating worldwide, [REDACTED] a handful | | |

---

[4]  CIA_000329.

[5]  CIA_000336.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | may house Bin Ladin-linked accounts:[6] <br><br> "Sheikh Rajhi," [REDACTED] deposited [REDACTED] into a [REDACTED] bank account controlled by Maktab al-Khidamat, an Islamic charity closely associated with Usama Bin Ladin since the early 1980's.[7] | | |
| 146 | On January 11, 1999, the CIA's Office of Transnational Issues issued a 41-page report, *Usama Bin Ladin: Some Saudi Financial Ties Probably Intact*, January 11, 1999, CIA_00807-848 at Ex. 66. *See* Ex. 4, Winer Report at 57-60. | 146. <br><br> <u>Immaterial for the reasons discussed above in response to Section VI (heading).</u> | 146. <br><br> <u>Pls Ex. 66:</u> <br><br> - Inadmissible hearsay, as noted in response to Section VI (heading). <br><br> <u>Pls. Ex. 4:</u> <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. |
| 147 | The January 11, 1999 finished CIA intelligence report covers a range of sources of financial support for al Qaeda, reviewing bin Laden's own funds, support from family members, and | 147. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section VI (heading). | 147. <br><br> <u>Pls Ex. 66:</u> <br><br> - Inadmissible hearsay, as noted in response to Section VI (heading). |

---

[6]   CIA_000337.

[7]   CIA_000338.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | "merchants, officially sponsored nongovernmental organizations (NGOs) and clerics based in Saudi Arabia." *See* Ex. 66 at 807; Ex. 4, Winer Report at 57. | (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. | Pls. Ex. 4:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.<br><br>- Should be excluded as for needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. |
| 148 | In addition to discussing the involvement of IIRO, AHIF, MWL, and WAMY in supporting al Qaeda, the January 11, 1999 report contains numerous relevant CIA assessments, prior to 9/11, of al Qaeda's reliance on sympathetic financiers and financial institutions to raise and move money prior to September 11, 2001, including the following:<br><br>Usama may obtain financial support or be involved in commercial ventures with some members of the Jeddah business community—many of which have links to financial institutions:[8] | 148.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(3) Plaintiffs' statement regarding Al Qaeda's reliance on financiers and financial institutions to "raise and move money" is immaterial because Plaintiffs do not show that any money transferred through accounts at Al Rajhi Bank reached Al Qaeda or financed the 9/11 Attacks. This statement, even if credited, does not show that Al Rajhi Bank took any tortious act related to Al Qaeda, the 9/11 Attacks, or the United States.<br><br>(4) Plaintiffs' averments regarding charity and charity-official customers do not support the conclusion that the Bank took any intentional, tortious conduct aimed against the United States. | 148.<br><br>Pls Ex. 66:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

---

[8]    CIA_000809.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | [REDACTED] al-Qa'ida members have held accounts at the Al Rajhi Banking and Investment Company. [REDACTED].[9]<br><br>During [the 1980s and early 1990s], Usama also forged ties to Saudi-based nongovernmental organizations (NGOs), wealthy Jeddah-based businessmen, clerics, and government officials who were interested in aiding Afghan and other Islamic causes.[10] | (5) Plaintiffs' averments with respect to Al Haramain and Al Haramain officials are immaterial for the reasons discussed in response to Section V (heading).<br><br>(6) Plaintiffs' averments with respect to IIRO and IIRO officials are immaterial for the reasons discussed in response to Section V (heading).<br><br>(7) Plaintiffs' averments with respect to WAMY and MWL are immaterial for the reasons discussed in response to Pls. Aver. ¶ 503.<br><br><u>Disputed as conclusory, vague, and unsupported by the evidence:</u><br><br>(1) Plaintiffs' reference to "reliance on sympathetic financiers and financial institutions" is conclusory, vague, and unsupported. | |
| 149 | The January 11, 1999 report then includes a chart titled, *Usama Bin Ladin: Possible Saudi Contacts and Financial Links*. The chart shows four types of relationships – family, Saudi-backed charities, Saudi business community, and clerics. In the section on ties to the business community, the chart identifies five Saudi businessmen (Salah al din Ahmad Idris, Khalid bin Mahfouz, Muhammad Abdul Yamani, Saleh Abduallah Jamel, | 149.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br><u>Disputed as conclusory and vague:</u><br><br>(1) Plaintiffs' reference to a "relationship" is conclusory and vague. | 149.<br><br><u>Pls Ex. 66</u>:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

---

9   *Id.*

10   CIA_000810.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | and Ahmed Saleh Jamjoom) and "the Al Rajhi family." *See* CIA_000811. | (2) Plaintiffs' reference to the "Al Rajhi family" is conclusory and vague. Even if the CIA reports are admissible and credited, as of 2003, the CIA estimated that "the Al Rajhi family" had "over 700 male members." *See* Pls. Ex. 10 (CIA Rep., *Al Rajhi Bank: Conduit for Extremist Finance* (May 28, 2003)) at CIA-Sub_003.<br><br>Disputed as controverted by the evidence:<br><br>(1) To the extent Plaintiffs aver that "the Al Rajhi family" had any type of "relationship" or "tie" to Osama bin Laden, Abdullah bin Sulaiman Al Rajhi, the current Chairman and former General Manager/CEO of Al Rajhi Bank, testified that his father, Sulaiman bin Abdulaziz Al Rajhi, had never been a supporter of Al Qaeda or Osama Bin Laden and to the best of his knowledge no one at the Bank ever supported Al Qaeda, Osama Bin Laden, or terrorism in any form. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 354:17-355:8.<br><br>(2) To the extent Plaintiffs aver that Al Rajhi Bank or a member of the Al Rajhi Family has supported Al Qaeda or Osama Bin Laden, neither Al Rajhi Bank, nor any member of the Al Rajhi family, has ever been indicted for allegations of terrorism financing or money-laundering. Furthermore, none of these entities and individuals has ever been designated by the United States or the United Nations, which would require a lower evidentiary threshold than a successful criminal prosecution. *See* ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-39:5; ARB Ex. 4 (Lormel Rep.) at 9, 34-35; ARB Ex. 28 (Winer Dep. Tr. and Errata) at 143:9-18, 160:10-18. | |
| 150 | A related section of the report titled, *Usama's Possible Links to the Saudi Business Community*, includes a substantial section | 150.<br><br>Immaterial: | 149.<br><br>Pls Ex. 66: |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | dedicated to the al Rajhi Family, in which the following declassified assessments appear:<br><br>Members of the ultra-wealthy Al Rajhi family, which owns the Riyadh-based Al Rajhi Banking and Investment Company, probably are a source of financial support for Usama's al-Qa'ida organization.[11]<br><br>[A] "Shaykh Rajhi"—[REDACTED]—deposited [REDACTED] into the [REDACTED] bank accounts of the Maktab al-Khidamat.[12]<br><br>[REDACTED] some Al-Rajhi branches in Saudi Arabia have been used by members of the al-Qa'ida organization.[13] | (1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(3) In addition, the averment that unnamed "members of the Al Rajhi family" were "probably" a source of financial support is immaterial because neither the averment nor the underlying report identify who those unnamed "members" were, nor does the averment or the report show any conduct or support by the Bank. The caveat "probably" demonstrates that the averment is immaterial, because the CIA report does not reach any conclusion about any conduct by the unnamed family members, nor does it show that the unnamed family members had any knowledge or intent.<br><br>(4) Plaintiffs do not show that any money transferred through accounts at Al Rajhi Bank reached Al Qaeda or financed the 9/11 Attacks. This averment, even if credited, does not show that Al Rajhi Bank took any tortious act related to Al Qaeda, the 9/11 Attacks, or the United States.<br><br>(5) The statement in the report, following a redaction, that "some Al-Rajhi branches in Saudi Arabia have been used by" Al Qaeda members is immaterial, because it does not show that the Bank knew that any Al Qaeda member "used" the Bank's generally available services. | - Inadmissible hearsay, as noted in response to Section VI (heading). |

---

[11] CIA_000830.

[12] *Id.*

[13] CIA_000831.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Disputed as conclusory and vague:<br><br>(1) Plaintiffs' references to the "Al Rajhi family" and "a Shaykh Rajhi" are conclusory and vague. Even if the CIA reports are admissible and credited, as of 2003, the CIA estimated that "the Al Rajhi family" had "over 700 male members." *See* Pls. Ex. 10 (CIA Rep., *Al Rajhi Bank: Conduit for Extremist Finance* (May 28, 2003)) at CIA-Sub_003.<br><br>Disputed as controverted by the evidence:<br><br>(1) To the extent Plaintiffs aver that Al Rajhi Bank or a member of the Al Rajhi Family has supported Al Qaeda or Osama Bin Laden, neither Al Rajhi Bank, nor any member of the Al Rajhi family, has ever been indicted for allegations of terrorism financing or money-laundering. Furthermore, none of these entities and individuals has ever been designated by the United States or the United Nations, which would require a lower evidentiary threshold than a successful criminal prosecution. *See* ARB Ex 93 (Kohlmann Dep. Tr. and Errata) at 36:20-39:5; ARB Ex. 4 (Lormel Rep.) at 9, 34-35; ARB Ex. 28 (Winer Dep. Tr. and Errata) at 143:9-18, 160:10-18. | |
| 151 | On April 19, 1999, the CIA's Counterterrorist Center issued a sixteen-page finished intelligence report, *Islamic Terrorists: Using Nongovernmental Organizations Extensively*, April 9, 1999, CIA_000210-236, at Ex. 55. The Scope Note on the report states the following: | 151.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. | 151.<br><br>Pls. Ex. 55:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | This intelligence report provides an update and elaboration of the 26 July 1995 Intelligence Report, "International Islamic Charitable Organizations: Pursuing Multiple Agendas." This assessment examines specific foreign-based nongovernmental organizations (NGOs) that provide terrorists with infrastructure support independent of the NGO's legitimate, humanitarian, or charitable work.[14] | | |
| 152 | Most of the April 19, 1999 report addresses the role of Islamic NGOs such as MWL, IIRO, MAK, and Al Haramain in providing financial and logistical support for al Qaeda and other terrorist groups, but it also discusses the role of sympathetic financiers in supporting terrorism. That discussion includes a finding that "[m]any prominent Saudi businessmen contribute generously to the IIRO through their *zakat* contributions, including the Al Rajhi family, | 152. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section VI (heading). <br><br> (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. <br><br> (3) Plaintiffs' averments with respect to IIRO and Al Haramain are immaterial for the reasons discussed in response to Section V (heading). | 152. <br><br> Pls. Ex. 55: <br><br> - Inadmissible hearsay, as noted in response to Section VI (heading). |

---

[14]    CIA_000212.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | which has an estimated wealth of $20 billion."[15] | (4) Plaintiffs' averments with respect to MWL are immaterial for the reasons discussed in response to Section V (heading) and ¶ 503.<br><br>(5) Plaintiffs' averments with respect to MAK are immaterial because purported donations to the Afghan resistance to the Soviet Invasion, even if considered, are immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States.<br><br>(6) To the extent that Plaintiffs use this CIA report to discuss *zakat* contributions, *zakat* contributions are immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. *Zakat* is a practicing Muslim's mandatory religious obligation, which in Saudi Arabia are administered by the government. Individuals can make charitable contributions in addition to their *zakat*. The Saudi Arabian government regulates who may receive *zakat*, and there were only a few regulated charities in Saudi Arabia capable of receiving large *zakat* payments during the relevant period. *See* ARB Ex. 1 (Dean Rep.) at 19-20.<br><br>(7) To the extent that Plaintiffs use this CIA report to suggest that Al Rajhi Bank or a member of the Al Rajhi Family has supported Al Qaeda or Osama Bin Laden, neither Al Rajhi Bank, nor any member of the Al Rajhi family, has ever been indicted for allegations of terrorism financing or money-laundering. Furthermore, none of these entities and individuals has ever been designated by the United States or the United Nations, which would require a lower evidentiary threshold than a successful criminal prosecution. *See* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-39:5; ARB Ex. 4 | |

---

[15] CIA_000221.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (Lormel Rep.) at 9, 34-35; ARB. Ex. 28 (Winer Dep. Tr. and Errata) at 143:9-18, 160:10-18. | |
| 153 | Based on information available as of November 20, 1997, the CIA's Office of Transnational Issues issued a finished intelligence report entitled "Funding Islamic Extremists: The Role of Islamic Financial Institutions," consisting of a 28-page report with four additional pages of Key Findings and a 49-page appendix. *See* Ex. 9, CIA Intelligence Report, Office of Transnational Issues, *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions*, CIA_000720-804. | 153.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. | 153.<br><br>Pls. Ex. 9:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |
| 154 | The unclassified "Key Findings" section comprising the introduction to the report, indicates that the CIA examined approximately 130 Islamic financial entities, and singled out five as having "radical Islamic financial links," including "Al Rajhi Banking & Investment Company [ARB]":<br><br>Several Islamic financial institutions—those that ascribe to the Koran's | 154.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(3) As of 2003, the CIA estimated that "the Al Rajhi family" had "over 700 male members." *See* Pls. Ex. 10 (CIA Rep., *Al Rajhi Bank: Conduit for Extremist Finance* (May 28, 2003)) at CIA-Sub_003. Even if the CIA reports are admissible and credited, | 153.<br><br>Pls. Ex. 9:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | principles against the payment of interest—regularly serve as financial conduits and sources of financial support for a range of Islamic extremist groups, organizations, and political parties.[16] <br><br> • The religiously ultraconservative Al Rajhi family—owners of the Al Rajhi Banking & Investment Company, with $8.6 billion of total assets—appears to be a key financial backer of the Afghan Mujahaddin, [REDACTED] The family and the bank purportedly also support | the CIA excerpt does not name the individuals that allegedly supported the "Afghan Mujahaddin," or supported NGOs "who help finance" the "Bosnian Mujaheddin, HAMAS and other extremists." *See* Pls. Ex. 9 (CIA Rep., *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions*), at CIA_000723. In any event, this report does not state that any of those unnamed family members supported Al Qaeda, much less the 9/11 Attacks. <br><br> (4) The report cited in this paragraph does not show that either the Bank or the unnamed family members knew or intended that support *to unnamed NGOs* would be used to "help finance the Bosnian Mujaheddin, HAMAS, and other extremists." Nor does the report show that any such support reached Al Qaeda, or was used for any plot of terrorism against the United States, including the 9/11 Attacks. <br><br> Disputed as conclusory; controverted by the evidence: <br><br> (1) To the extent that Plaintiffs use this CIA Report to suggest that Al Rajhi Bank or a member of the Al Rajhi Family has supported Al Qaeda or Osama Bin Laden, neither Al Rajhi Bank, nor any member of the Al Rajhi family, nor the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, nor the SAAR Foundation, has ever been indicted for allegations of terrorism financing or money-laundering. Furthermore, none of these entities and individuals has ever been designated by the United States or the United Nations, which would require a lower evidentiary threshold than a successful criminal prosecution. *See* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-39:5; ARB Ex. 4 (Lormel Rep.) at 9, 34-35; ARB. Ex. 28 (Winer Dep. Tr. and Errata) at 143:9-18, 160:10-18. | |

---

[16]   CIA_000722.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | NGOs who help finance the Bosnian Mujaheddin, HAMAS, and other extremists.[17]<br><br>• In addition to providing the ability to bank in accordance with their religious beliefs, Islamic activists—and militants—are attracted to Islamic banks for two other reasons:<br><br>Top management affiliations with the MB, HAMAS, and NIF make Islamic banks a safe haven for extremist funds. [REDACTED] In addition, low-level bank employees at Islamic institutions—who are often hired on the basis of commitment to Islam—may turn a blind eye to money movements | (2) To the extent that Plaintiffs use this CIA Report to suggest material noncompliance on part of the Bank, Al Rajhi Bank, like all Saudi banks, was regulated during the relevant period by the Saudi Arabian Monetary Authority (SAMA).  SAMA was considered to be a rigorous regulator and Saudi banks could not opt out of certain SAMA regulations.  *See* ARB. Ex 2 (Hobayb Rep.) at 3-4.<br><br>(3) Abdullah bin Sulaiman Al Rajhi, the current Chairman and former General Manager/CEO of Al Rajhi Bank, testified that his father, Sulaiman bin Abdulaziz Al Rajhi, had never been a supporter of al Qaeda or Osama Bin Laden and to the best of his knowledge no one at the Bank ever supported al Qaeda, Osama Bin Laden, or terrorism in any form.  *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 354:17-355:8. | |

---

[17] CIA_000723.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | by extremist groups. Finally, a general lack of local regulatory scrutiny—as compared with regulation at conventional institutions—may offer additional confidence to extremists that their financial activities will not be closely examined."[18] | | |
| 155 | The report includes a profile of bin Laden's relationships with financial institutions in a section titled, *Terrorist Financier Usama Bin Ladin: Background and Islamic Financial Ties*, which states that bin Laden's choice of financial institutions "probably is based on personal contacts at the banks and security concerns."[19] | 155.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>Disputed as controverted by the evidence:<br><br>(1) To the extent Plaintiffs suggest that Osama bin Laden had a "relationship" with Al Rajhi Bank in 1997, this averment is controverted by the evidence. Osama Bin Laden's accounts had been frozen since at least 1994, when the Saudi government "fr[oz]e his financial assets and revoke[d] his citizenship." Pls. Ex. 40 (9/11 Comm'n Rep.) at 57; *see also* ARB Aver. ¶¶ 4, 93; ARB Ex. 8 (Nov. 16, 2002 Ltr. from Al Rajhi Bank to SAMA) at ARB-39559 (showing all Bin Laden accounts "blocked"). Plaintiffs' own experts concede that Bin | 153.<br><br>Pls. Ex. 9:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

---

[18]  CIA_000723-724.

[19]  CIA_000736.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Laden did not use, and could not have used, his accounts at all after his assets were frozen in 1994. ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 17:1-25; 208:15-18, 209:2-4; ARB. Ex. 28 (Winer Dep. Tr. and Errata) at 53:5-55:2. | |
| 156 | The November 20, 1997 CIA report also includes a dedicated section on ARB, under the heading, *Al Rajhi Banking & Investment Company*, discussing its links to and financial support for Islamic extremism, including the Afghan Mujahaddin in Pakistan, the MAK, and Islamic groups in Bosnia during the Bosnian conflict.[20] | 156.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI, and is otherwise conclusory and unsupported.<br><br>(3) Plaintiffs averment with respect to the Afghan Mujahaddin in Pakistan, the MAK, or Islamic groups in Bosnia is immaterial because purported donations to these groups, even if considered, are immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. | 153.<br><br>Pls. Ex. 9:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |
| 157 | In that dedicated section, the CIA describes the Al Rajhi family as "secretive and religiously ultraconservative," and states that "[t]he most compelling [REDACTED] information on Islamic extremist links to the Al Rajhi family and ARABIC documents their financial support for the Afghan | 157.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. | 157.<br><br>Pls. Ex. 9:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

---

[20]    CIA_000743.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | Mujahaddin in Pakistan via humanitarian organizations," including through the MAK.[21] | (3) Plaintiffs' averment with respect to the Afghan Mujahaddin in Pakistan, the MAK, or Islamic groups in Bosnia is immaterial because purported donations to these groups, even if considered, are immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States.<br><br>(4) As of 2003, the CIA estimated that "the Al Rajhi family" had "over 700 male members." *See* Pls. Ex. 10 (CIA Rep., *Al Rajhi Bank: Conduit for Extremist Finance* (May 28, 2003)) at CIA-Sub_003. Even if the CIA reports are admissible and credited considered, the CIA excerpt does not name the individuals that allegedly supported the "Afghan Mujahaddin," or supported humanitarian organizations who provided "financial support" for the "Afghan Mujahaddin in Pakistan." *See* Pls. Ex. 9 (CIA Rep., *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions*) at CIA_000723. In any event, this report does not state that any of those unnamed family members supported Al Qaeda, much less the 9/11 Attacks.<br><br><u>Disputed as conclusory; vague; and unsupported by the evidence:</u><br><br>(1) Plaintiffs' reference to "secretive and religiously ultraconservative" is conclusory and vague.<br><br>(2) Even if the CIA reports are admissible and credited, to the extent that Plaintiffs characterize the Al Rajhi family as "religiously ultraconservative" to suggest they were extremists, this is controverted by the evidence. As explained by Al Rajhi Bank's expert Aimen Dean, "Sulaiman Al Rajhi had a reputation as not being sympathetic to al-Qaeda's extreme views and instead as being an adherent of the non-violent, 'Quietist' branch of Salafism," ARB Ex. 1 (Dean Rep.) at 17. | |

---

[21] *Id.*

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| 158 | The MAK was co-founded by Bin Ladin and the "pre-cursor" to al Qaeda. *See* Ex. 40, 9/11 Commission Report at 55-56; Ex. 4, Winer Report at 66; Ex. 97, Makhtab al-Khidamat, UN Sanctions Committee. | 158.<br><br>Immaterial for the reasons discussed above in response to Section VI (heading). | 158.<br><br>Pls. Ex. 4 at 66:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.<br><br>- Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 4 at 97:<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for presenting evidence of an organization not at issue in this litigation. *See* Fed. R. Evid. 403. |
| 159 | As discussed below, the early support of ARB and the Al Rajhi family for the Afghan Mujahaddin was similarly a pre-cursor to their continuing support for al Qaeda through AHIF, IIRO, the SAAR committee and foundations, and other purported charities. *See* Ex. 4, Winer Report at 62, 65, 66, 90; Ex. 38, Kohlmann | 159.<br><br>Immaterial:<br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br>(2) Plaintiffs' averment with respect to the Afghan Mujahaddin is immaterial because purported donations to this groups, even if considered, are immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. | 159.<br><br>Pls. Ex. 4 at 62, 65-66, 90:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.<br>- Should be excluded as needless presentation of evidence. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Report at 7, 17, *infra* at §§ XIII-XIV. | (3) Plaintiffs' averments regarding "AHIF, IIRO, the SAAR committee and foundations, and other purported charities" is immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States.<br><br>– Plaintiffs' averments with respect to Al Haramain and Al Haramain officials are immaterial for the reasons discussed in response to Section V (heading).<br><br>– Plaintiffs' averments with respect to IIRO and IIRO officials are immaterial for the reasons discussed in response to Section V (heading).<br><br>– Plaintiffs' averments about the Sulaiman Abdulaziz al Rajhi Charitable Foundation and the SAAR Foundation are immaterial for the reasons discussed in response to Section IV (heading).<br><br>Disputed as conclusory; vague; unsupported by the evidence:<br><br>(1) Plaintiffs' reference to "support" is conclusory, vague, and unsupported by the evidence.<br><br>(2) Plaintiffs' reference to the "Al Rajhi family" is conclusory and vague. Even if the CIA reports are admissible and credited, as of 2003, the CIA estimated that "the Al Rajhi family" had "over 700 male members." *See* Pls. Ex. 10 (CIA Rep., *Al Rajhi Bank: Conduit for Extremist Finance* (May 28, 2003)) at CIA-Sub_003.<br><br>Disputed as controverted by the evidence:<br><br>(1) To the extent Plaintiffs aver that Al Rajhi Bank or a member of the Al Rajhi Family has supported Al Qaeda, neither Al Rajhi Bank, nor any member of the Al Rajhi family, has ever been indicted for allegations of terrorism financing or money-laundering. Furthermore, none of these entities and individuals | Pls. Ex. 38 at 7:<br><br>-Should be excluded to the extent expert testimony is used as conduit for hearsay to which no exception applies (for example, Golden Chain). *See* Fed. R. Evid. 802.<br><br>- Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 38 at 17:<br><br>-Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing events that are unrelated to Al Qaeda's attacks against the United States (including discussion of Palestinian intifada). *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | has ever been designated by the United States or the United Nations, which would require a lower evidentiary threshold than a successful criminal prosecution. *See* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-39:5 and Errata at 38:1; ARB Ex 4 (Lormel Rep.) at 9, 34-35; ARB Ex. 28 (Winer Dep. Tr. and Errata) at 143:9-18, 160:10-18. | |
| 160 | The ARB section of the November 20, 1997 report also confirms high level relationships between the al Rajhis and WAMY, noting that "the Al Rajhis were routinely contacted" by officials at WAMY, which it described as "a Saudi NGO where personnel often pursue an extremist agenda."[22] The report states that "WAMY officials have couriered private Saudi donations to Islamic groups in Afghanistan and Bosnia" and put Saudi donors and foreigners in direct contact "for worthwhile Islamic causes" and would sometimes broker requests to donors when WAMY had "an ideological interest."[23] | 160.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(3) Plaintiffs' averment with respect to the Afghan Mujahaddin and Islamic groups in Bosnia is immaterial because purported donations to these groups, even if considered, are immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States.<br><br>(4) Plaintiffs' averments with respect to WAMY are immaterial for the reasons discussed in Section V (heading) and paragraph 503. | 160.<br><br>Pls. Ex. 9:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |
| 161 | The November 20, 1997 report further documents that ARB maintained a close relationship | 161.<br><br>Immaterial: | 161.<br><br>Pls. Ex. 9: |

---

[22]   CIA_000744.

[23]   *Id.*

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | with radical cleric Salman al Awdah, who endorsed ARB, after which "the Al Rajhi family [] became a major financial supporter of Awdah."[24] *See also* Ex. 4, Winer Report at 67; Ex. 38, Kohlmann Report at 16 (discussing al Awdah's links to militant jihad and bin Laden/al Qaeda). | (1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(3) To the extent Plaintiffs contend that the personal charitable donations of Sulaiman bin Abdulaziz Al Rajhi or Abdullah bin Sulaiman Al Rajhi were made with knowledge of charities' alleged connection to terrorism (a point which Plaintiffs do not establish), such averments are immaterial, as Plaintiffs have not established any basis to impute a chairman or senior official's knowledge onto the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO).<br><br>(4) Additionally, Plaintiffs' averments regarding Al Awdah are immaterial for the reasons discussed in response to Pls. Aver. ¶¶ 567, 568, which show that Plaintiffs have established no reason that Al Rajhi Bank, or any Al Rajhi Family members, would have known of Al Awdah's purported connections to terrorism.<br><br>Disputed as conclusory, vague:<br><br>(1) Plaintiffs' reference to "a close relationship" is vague and conclusory. | - Inadmissible hearsay, as noted in response to Section VI (heading).<br><br>Pls. Ex. 4 at 67:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.<br><br>Pls. Ex. 38 at 16:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid 802. |

---

[24]   CIA_000748.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | <u>Disputed as misleading; incomplete:</u><br><br>(1) Plaintiffs fail to note that Salman Awdah "'Awda [sic] openly criticized Usama Bin Laden (UBL) a few years ago, apparently supporting a less violent type of jihad.'" *See* ARB. Ex 51 (June 16, 2010 FBI Memorandum) at EO-14040-640. | |
| 162 | In a further section addressing terrorist and extremists, *Motivations for Using Islamic Banks*, the CIA concluded:<br><br>Drug traffickers and other criminals seek out financial institutions that they believe will turn a blind eye to their activities or become discreet partners in their dealings. [] Islamic militants similarly bank with financial institutions that provide assurance that their deposits and financial activities will not be scrutinized by government or enforcement authorities. Islamic banks in may countries apparently provide such confidence. In addition, these banks offer financial services that are in line with | 162.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(3) To the extent Plaintiffs' statement regarding "Islamic Banks" is intended to imply Al Rajhi Bank, this averment is immaterial for the reasons discussed in response to Section VIII (heading).<br><br><u>Disputed as incomplete:</u><br><br>(1) To the extent that Plaintiffs suggest that "Islamic militants" chose to bank with "Islamic banks," for nefarious reasons, Plaintiffs fail to note that Al Rajhi Bank was the only Shariah-compliant bank in Saudi Arabia, making it an appealing choice for any practicing Muslim who wanted to bank in line with religious principles. *See* ARB. Ex 4 (Lormel Rep.) at 17; ARB. Ex 1 (Dean Rep.) at 19-20.<br><br>(2) The desire to bank in line with religious principles is noted by Plaintiffs' own source. Even if credited, the same CIA report that Plaintiffs cite states: "Islamic extremist groups are certainly attracted to Islamic banks because the institutions offer the ability to bank in accordance with religious beliefs." | 162.<br><br><u>Pls. Ex. 9:</u><br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | religious beliefs and, sometimes, significant financial support for local Islamic movements.[25] | *See* Pls. Ex. 9 (CIA Rep., *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions*) at CIA_000748. <br><br> Disputed as conclusory; vague: <br><br> (1) Plaintiffs' reference to "Islamic Banks" is vague and conclusory. | |
| 163 | The November 20, 1997 report also documents the CIA's determinations that "[a]lthough Gulf states acknowledge the problem of financial support to extremist groups via Islamic banks, they probably will do little to tackle the problem in the near term" and that "Gulf states are not likely to scrutinize the financial activities of powerful and wealthy merchants and royal family members owning shares in Islamic banks and holding director positions on their boards."[26] | 163. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section VI (heading). <br><br> (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. <br><br> Disputed as controverted by the evidence: <br><br> (1) To the extent that Plaintiffs use this CIA report to suggest an intentionally insufficient regulatory environment, Al Rajhi Bank, like all Saudi banks, was regulated during the relevant period by the Saudi Arabian Monetary Authority (SAMA). SAMA was considered to be a rigorous regulator and Saudi banks could not opt out of certain SAMA regulations. *See* ARB. Ex. 2 (Hobayb Rep.) at 3-4. <br><br> Disputed as conclusory; vague: <br><br> (1) Plaintiffs' reference to "Islamic Banks" is vague and conclusory. | 163. <br><br> Pls. Ex. 9: <br><br> - Inadmissible hearsay, as noted in response to Section VI (heading). |

---

[25]  CIA_000746.

[26]  CIA_000753.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 164 | Finally, the Appendix to the November 20, 1997 report includes an entry for ARB, the unredacted portion of which states "*ARB in Riyadh, Saudi Arabia.* 'Used by some members of Usama Bin Ladin's Islamic Army to maintain accounts and transfer funds. [REDACTED] . . . the al Rajhis have financed radical Afghani and Kashmiri organizations in Pakistan and elsewhere. Some of the aid was provided under the guise of orphan relief and delivered to radical causes – possibly unwitting [sic] to the Al Rajhis.'"[27] *See* Ex. 4, Winer Report at 68-69. | 164. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section VI (heading). <br><br> (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. <br><br> (3) Plaintiffs' averments with respect to purported financing to "radical Afghani and Kashmiri organizations in Pakistan" are immaterial because purported donations to these groups, even if considered, are immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. <br><br> (4) As of 2003, the CIA estimated that "the Al Rajhi family" had "over 700 male members." *See* Pls. Ex. 10 (CIA Rep., *Al Rajhi Bank: Conduit for Extremist Finance* (May 28, 2003)) at CIA-Sub_003. Even if the CIA reports are admissible and credited, the CIA excerpt does not name the individuals that allegedly supported the "radical Afghani and Kashmir organizations." *See also* Pls. Ex. 9 (CIA Rep., *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions*) at CIA_000783. In any event, this report does not state that any of those unnamed family members supported Al Qaeda, much less the 9/11 Attacks. <br><br> <u>Disputed as controverted by the evidence:</u> <br><br> (1) To the extent Plaintiffs aver that Al Rajhi Bank or a member of the Al Rajhi Family has supported Al Qaeda or Osama Bin | 164. <br><br> <u>Pls. Ex. 9:</u> <br><br> - Inadmissible hearsay, as noted in response to Section VI (heading). <br><br> <u>Pls. Ex. 4 at 68-69:</u> <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. |

---

[27]  CIA_000783.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Laden, neither Al Rajhi Bank, nor any member of the Al Rajhi family, has ever been indicted for allegations of terrorism financing or money-laundering. Furthermore, none of these entities and individuals has ever been designated by the United States or the United Nations, which would require a lower evidentiary threshold than a successful criminal prosecution. *See* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-39:5; ARB Ex. 4 (Lormel Rep.) at 9, 34-35; ARB Ex. 28 (Winer Dep. Tr. and Errata) at 143:9-18, 160:10-18. | |
| | | (2) Abdullah bin Sulaiman Al Rajhi, the current Chairman and former General Manager/CEO of Al Rajhi Bank, testified that his father, Sulaiman bin Abdulaziz Al Rajhi, had never been a supporter of al Qaeda or Osama Bin Laden and to the best of his knowledge no one at the Bank ever supported al Qaeda, Osama Bin Laden, or terrorism in any form. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 354:17-355:8. | |
| 165 | On February 27, 2002, the CIA's Counter-Terrorism Center Office of Terrorism Analysis issued a finished intelligence report, *Identifying Al-Qa'ida's Donors and Fundraisers: a Status Report*, which includes a Key Finding that "[a]n array of fragmentary intelligence reporting indicates that wealthy individuals in the Arabian Peninsula and grassroots supporters from around the world are critical funding sources for al-Qa'ida." *See* Ex. 46, *Identifying Al-Qa'ida's* | 165. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section VI (heading). <br><br> (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI, and is otherwise conclusory and unsupported. <br><br> (3) In addition, Plaintiffs fail to note the caveats included in the quoted section, which states: "[t]he reporting, however, is anecdotal or often several years old, and usually does not specify the people involved, many of who use aliases." Pls. Ex. 46 (CIA Rep., *Identifying Al-Qa'ida's Donors and Fundraisers: A Status Report* (Feb. 27, 2002)) at CIA_00194. | 165. <br><br> Pls Ex 46: <br><br> - Inadmissible hearsay, as noted in response to Section VI (heading). |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | *Donors and Fundraisers: A Status Report*, February 27, 2002, CIA_00193-199 at 194. | This caveat that the reporting is "anecdotal or often several years old, and usually does not specific the people involved many of who use aliases" demonstrates that the averment is immaterial because the CIA report does not reach any conclusion about the funding sources of Al Qaeda.<br><br>Disputed as vague and conclusory:<br><br>(1) Plaintiffs' reference to "wealthy individuals in the Arabian Peninsula" is vague and conclusory.<br><br>(2) Plaintiffs' reference to "critical funding sources for al-Qa'ida" is vague, conclusory, and unsupported by the evidence. | |
| 166 | Although the report indicates that certain of the information on al Qaeda's key financiers remained fragmentary, it confirms that the CIA had had "identified several wealthy Saudi individuals and families we suspect of supporting al-Qa'ida - including Shaykh Adil Batarji, the al-Rajhi family, the Julaydan family, and Ahmad Salah Jamjoon"[28] | 166.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(3) Even if the CIA reports are admissible and credited, as of 2003, the CIA estimated that "the Al Rajhi family" had "over 700 male members." *See* Pls. Ex. 10 (CIA Rep., *Al Rajhi Bank: Conduit for Extremist Finance* (May 28, 2003)) at CIA-Sub_003. The CIA excerpt quoted does not name the individual that allegedly supported Al Qaeda. *See* Pls. Ex. 46 (CIA Rep., *Identifying Al-Qa'ida's Donors and Fundraisers: A Status Report* (Feb. 27, 2002)) at CIA_000830. Plaintiffs do not aver that it was an individual associated with the Bank. | 166.<br><br>Pls Ex 46:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

---

[28]   CIA_000195.

257

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | <u>Disputed as conclusory and vague:</u><br><br>(1) Plaintiffs' reference to a "relationship" is conclusory and vague.<br><br><u>Disputed as controverted by the evidence:</u><br><br>(1) Plaintiffs' reference to "supporting al-Qa'ida" is vague, conclusory, and controverted by the evidence. To the extent Plaintiffs aver that "the Al Rajhi family" supported Al Qaeda, Abdullah bin Sulaiman Al Rajhi, the current Chairman and former General Manager/CEO of Al Rajhi Bank, testified that his father, Sulaiman bin Abdulaziz Al Rajhi, had never been a supporter of Al Qaeda or Osama Bin Laden and to the best of his knowledge no one at the Bank ever supported Al Qaeda, Osama Bin Laden, or terrorism in any form. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 354:17-355:8.<br><br>(2) To the extent Plaintiffs aver that Al Rajhi Bank or a member of the Al Rajhi Family has supported Al Qaeda or Osama Bin Laden, neither Al Rajhi Bank, nor any member of the Al Rajhi family, has ever been indicted for allegations of terrorism financing or money-laundering. Furthermore, none of these entities and individuals has ever been designated by the United States or the United Nations, which would require a lower evidentiary threshold than a successful criminal prosecution. *See* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-39:5; ARB Ex. 4 (Lormel Rep.) at 9, 34-35; ARB Ex. 28 (Winer Dep. Tr. and Errata) at 143:9-18, 160:10-18.<br><br><u>Disputed as conclusory and vague:</u><br><br>(1) Plaintiffs' reference to the "al-Rajhi family" is conclusory and vague. Even if the CIA reports are admissible and credited, as of 2003, the CIA estimated that "the Al Rajhi family" had "over 700 male members." *See* Pls. Ex. 10 (CIA Rep., *Al Rajhi Bank:* | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | *Conduit for Extremist Finance* (May 28, 2003)) at CIA-Sub_003. | |
| 167 | The February 27, 2002 report's appendix includes "Three Al-Qa'ida Donor Case Studies," the subjects of which are Wa'el Jelaidan, Adel Batteijee, and, once again, the "Al-Rajhi Family."[29] | 167. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section VI (heading). <br><br> (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. <br><br> <u>Disputed as conclusory and vague:</u> <br><br> (1) Plaintiffs' reference to the "Al-Rajhi family" is conclusory and vague. Even if the CIA reports are admissible and credited, as of 2003, the CIA estimated that "the Al Rajhi family" had "over 700 male members." *See* Pls. Ex. 10 (CIA Rep., *Al Rajhi Bank: Conduit for Extremist Finance* (May 28, 2003)) at CIA-Sub_003. | 167. <br><br> <u>Pls Ex 46</u>: <br><br> - Inadmissible hearsay, as noted in response to Section VI (heading). |
| 168 | The related discussion of the al Rajhis' "Illicit Activity," includes findings that "several Al-Rajhi family members donate money to businesses tied to terrorists and personally oversee transactions destined for terrorists," that "[a]s of [redacted] 2000, Sulaiman al-Rajhi was also one of 128 permanent members of | 168. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section VI (heading). <br><br> (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. | 168. <br><br> <u>Pls Ex 46</u> <br><br> - Inadmissible hearsay, as noted in response to Section VI (heading). |

---

[29]    CIA_000198-199.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | International Islamic Relief Organization (IIRO)," and that "al Qa'ida has infiltrated some of IIRO's branches."[30] | (3) Plaintiffs' averments with respect to IIRO and IIRO officials are immaterial for the reasons discussed in Section V (heading). <br><br> Disputed as conclusory and vague: <br><br> (1) Plaintiffs' reference to the "several Al-Rajhi family members" is conclusory and vague. Even if the CIA reports are considered, as of 2003, the CIA estimated that "the Al Rajhi family" had "over 700 male members." *See* Pls. Ex. 10 (CIA Rep., *Al Rajhi Bank: Conduit for Extremist Finance* (May 28, 2003)) at CIA-Sub_003. <br><br> Disputed as controverted by the evidence: <br><br> (1) The undisputed admissible evidence establishes that Sulaiman bin Abdulaziz Al Rajhi *resigned* from the IIRO and Sanabel boards in 1992, nearly a decade before the 9/11 Attacks. Resp. to Pls. Aver. ¶¶ 547-551; Pls. Ex. 4 (Winer Rep.) at 71 n.191 ("These documents provide evidence that the IIRO had failed to remove SAAR's name from the list of its permanent members in response to his letters of resignation, a fact apparently not known to the CIA"). <br><br> (2) To the extent Plaintiffs aver that "several Al Rajhi family members" donated to Al Qaeda, Abdullah bin Sulaiman Al Rajhi, the current Chairman and former General Manager/CEO of Al Rajhi Bank, testified that his father, Sulaiman bin Abdulaziz Al Rajhi, had never been a supporter of Al Qaeda or Osama Bin Laden and to the best of his knowledge no one at the Bank ever supported Al Qaeda, Osama Bin Laden, or terrorism in any form. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) 354:17-355:8. | |

---

[30]  CIA-000198.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| 169 | In an August 28, 2002 report, the CIA's Directorate of Intelligence addressed AHIF's intimate and extensive involvement in supporting terrorism and al Qaeda specifically, including AHIF cover and logistic support for the 1998 attacks on the U.S. Embassies in Kenya and in Tanzania and other al Qaeda plots. *See* Ex. 69, *Al-Haramain: Support for Extremists and Terrorists [REDACTED]*, August 28, 2002, CIA-SUB 0007-19. | 169.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(3) Plaintiffs' averment with respect to Al Haramain and Al Haramain officials is immaterial for the reasons discussed in Section V (heading).<br><br>(4) Al Haramain Kenya was never a customer of the Bank, so any public reporting about that entity is not material to the Bank's knowledge of its customers. *See* ARB Aver. ¶ 43; *see also* Pls. Ex. 56 (Remarks by U.S. Treasury Sec. Paul O'Neill) (distinguishing newly designated Al Haramain branches from Al Haramain KSA, which "is dedicated to promoting Islamic teachings"). And Plaintiffs' own experts concede that, in 1999, Al Haramain Kenya "successfully contested deregistration in the courts and resumed operations the following year." Pls. Ex. 4 (Winer Rep.) at 36-37 n.87; *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 127:2-17. Further, this branch was not designated until *after* 9/11. *See* Pls. Aver. ¶¶ 82, 88-89.<br><br>Disputed as conclusory and vague:<br><br>(1) Plaintiffs' reference to "intimate and extensive involvement" is vague and conclusory. | 169.<br><br>Pls. Ex. 69:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |
| 170 | The CIA determined that "at least 20 al-Haramain field offices and representatives | 170.<br><br>Immaterial: | 170.<br><br>Pls. Ex. 46: |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | operating in 50 countries in Africa, Asia, Europe and North America, as well as is headquarters in Saudi Arabia, appear to be providing financial and logistic support to al-Qaida," including providing "financial support or collusion in terrorist plots," some of which were "ongoing plots."[31] | (1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(3) Plaintiffs' averment with respect to Al Haramain and Al Haramain officials is immaterial for the reasons discussed in Section V (heading). | - Inadmissible hearsay, as noted in response to Section VI (heading). |
| 171 | The August 28, 2002 also documents AHIF's use of bank accounts to support its illicit activities, including the use of personal accounts to circumvent scrutiny and "prevent the money from being identified or seized by foreign officials."<br><br>[Since 9/11] Al-Haramain increasingly sends money to individuals' personal accounts in addition to transferring funds to branch office accounts. We have also noted transfers originated from senior HIF officials' personal accounts in Saudi Arabia to personal | 171.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(3) Plaintiffs' averment with respect to Al Haramain and Al Haramain officials is immaterial for the reasons discussed in Section V (heading).<br><br>(4) Plaintiffs do not show that any money transferred through accounts at Al Rajhi Bank reached Al Qaeda or financed the 9/11 Attacks. This statement, even if credited, does not show that Al Rajhi Bank took any tortious act related to Al Qaeda, the 9/11 Attacks, or the United States. | 171.<br><br>Pls. Ex. 46:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

---

[31] CIA-SUB_0010. The CIA also found that "Individuals working in Saudi Embassies in several countries appear to be witting of, and sometimes assisting, HIF branch offices that support extremist groups." *See* CIA-SUB_0015.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | accounts of known HIF affiliates.[32] | | |
| 172 | As discussed below, discovery has confirmed that this misuse of personal accounts by AHIF officials to conceal the source and destination of funds was a common money laundering tactic AHIF employed extensively before 9/11, and which was also employed by IIRO and the SAAR committee/foundation, all with the knowing assistance of ARB. *See infra* at § IX | 172.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(3) Plaintiffs do not show that any money transferred through accounts at Al Rajhi Bank reached Al Qaeda or financed the 9/11 Attacks. This statement, even if credited, does not show that Al Rajhi Bank took any tortious act related to Al Qaeda, the 9/11 Attacks, or the United States.<br><br>(4) Plaintiffs' averment shows that the Bank provided only routine banking services to the charity and charity-official customers and does not support the conclusion that the Bank took any intentional, tortious conduct aimed against the United States.<br><br>(5) Plaintiffs' averment with respect to Al Haramain and Al Haramain officials is immaterial for the reasons discussed in Section V (heading).<br><br>(6) Plaintiffs' averment with respect to IIRO and IIRO officials is immaterial for the reasons discussed in Section V (heading).<br><br>(7) Plaintiffs' averment about the Sulaiman Abdulaziz al Rajhi Charitable Foundation and the SAAR Foundation is immaterial for the reasons discussed in Section IV (heading). | |

---

[32]    CIA-SUB_0013.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 173 | The August 28, 2002 report further details specific instances of AHIF's use of accounts at ARB for suspect transfers.[33] | 173.<br><br>_Immaterial:_<br><br>(1) Immaterial for the reasons stated above in response to Section VI (heading).<br><br>(2) Plaintiffs do not show that any money transferred through accounts at Al Rajhi Bank reached Al Qaeda or financed the 9/11 Attacks. This statement, even if credited, does not show that Al Rajhi Bank took any tortious act related to Al Qaeda, the 9/11 Attacks, or the United States.<br><br>(3) Plaintiffs' averment shows that the Bank provided only routine banking services to the charity and charity-official customers and does not support the conclusion that the Bank took any intentional, tortious conduct aimed against the United States.<br><br>– Plaintiffs' averment with respect to Al Haramain and Al Haramain officials is immaterial for the reasons discussed in Section V (heading).<br><br>_Disputed as conclusory; unsupported by the evidence:_<br><br>(1) Plaintiffs' reference to "suspect transfers" is vague, conclusory, and unsupported by the evidence. The undisputed facts show that SAMA never took any action against the Bank for any purported "suspect" transactions outlined by Plaintiffs, and Al Rajhi Bank was in compliance with the rules of its regulator. _See_ ARB. Ex. 2 (Hobayb Rep.) at 13. | 168.<br><br>Pls. Ex. 46:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |
| 174 | The CIA's Counter-Terrorism Center Office of Terrorism Analysis issued an additional report on November 14, 2002, | 174.<br><br>_Immaterial:_ | 174.<br><br>Pls. Ex. 45: |

---

[33] _Id._

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | *Saudi-Based Financial Support for Terrorist Organizations*, CIA_00143-158 at Ex. 45, which presented the following "Key Findings:" <br><br> Saudi Arabia is a key base of financial support for al-Qa'ida and several other terrorist organizations. We estimate that since the mid-1990's several tens of millions of dollars a year has flowed to terrorists from a variety of sources in the Kingdom. Most of the money originates from wealthy individuals, fundraisers who solicit smaller donations, and diversions from non-governmental organizations (NGOs); a portion of the funding is derived from legitimate religious contributions.[34] <br><br> Al-Qa'ida has relied on its node in Saudi Arabia for bulk fundraising for | (1) Immaterial for the reasons discussed above in response to Section VI (heading). <br><br> (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. <br><br> (3) Plaintiffs' reference to "wealthy individuals" or "members of prominent merchant families," is vague, conclusory, and immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. | - Inadmissible hearsay, as noted in response to Section VI (heading). |

---

[34]  CIA_000144.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | several years [REDACTED][.] Money that originates in the Kingdom is dispersed to al-Qa'ida members operating in Pakistan and Afghanistan, as well as Yemen, Iran, and other countries whose operatives have relocated following the loss of Afghanistan as a safe haven.[35]<br><br>Donors who are members of prominent merchant families often have business dealings or frequent interactions with the Saudi royal family, suggesting that Riyadh may be hesitant [to] move against their businesses and bank accounts, [REDACTED].[36] | | |
| 175 | The remainder of the November 14, 2002 report elaborates on these Key Findings, including in relevant part as follows:<br><br>**A Major [S]ource of Terrorist Funds.** | 175.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading). | 174.<br><br><u>Pls. Ex. 45:</u><br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

---

[35]   *Id.*

[36]   CIA_000145.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | [REDACTED] al-Qa'ida and several other terrorist and militant groups consider Saudi Arabia a key base of financial support. [REDACTED] we estimate that since the mid-1990s terrorist groups have received several tens of millions of dollars a year from Saudi sources. Most of the money originates from wealthy individuals, fundraisers who solicit smaller donations, and non-governmental organizations (NGOs).[37]<br><br>Most of the larger financiers, however, knowingly donate funds to al-Qa'ida and are witting the money finances terrorist activity [REDACTED] Several of these [apparent redaction]nships [sic, perhaps meaning 'relationships'] with Bin Ladin or other key al- | (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(3) Plaintiffs' reference to "wealthy individuals" or "members of prominent merchant families," is vague, conclusory, and immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. | |

---

[37]  CIA_000147.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | Qa'ida operates since at least the 1990's.[38] | | |
| | We estimate that half or more of al-Qa'ida's estimated pre-9/11 "budget" was raised in Saudi Arabia.[39] | | |
| | **Key Financial Base for Al-Qa'ida.** Bin Ladin's network has relied on its node in Saudi Arabia for the bulk of its fundraising for several years [one inch, about six lines redacted]. Money that originates in the Kingdom is dispersed to al-Qa'ida members in Pakistan and Afghanistan, as well as Yemen, Iran, and other countries where key al-Qa'ida operatives have relocated over the past year following the loss of Afghanistan as a safehaven.[40] | | |

---

[38] *Id.*

[39] *Id.*

[40] CIA_000148.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | • Al Qa'ida members in Yemen—the key platform for operational planning in the Gulf—get the majority of their financial support from Saudi Arabia. [REDACTED].[41]<br><br>• Some funding is also going from Saudi Arabia to finance al Qaeda operatives and al-Qa'ida linked terrorist groups in South East Asia.[42]<br><br>**Major Donors** We have identified several wealthy Saudi individuals and families we suspect of support the al-Qa'ida network. Many of the donors | | |

---

[41] *Id.*

[42] *Id.*

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | come from prominent merchant families in Jeddah, and they probably account for the largest share of al-Qa'ida's income. These families usually have large, diversified business holdings or control non-governmental organizations within the Kingdom and the Middle East that provide vehicles for transferring funds to terrorists. [REDACTED][43] | | |
| 176 | The "Major Donors" section of the CIA report then listed examples of these key sympathetic "major donors" to al Qaeda in dedicated sections,[44] including Yassin al Qadi [Kadi], Adel Batterjee, and "the Al-Rajhi family." The section on the "Al-Rajhi-family" states:<br><br>The Al-Rajhi family—owner of the Al-Rajhi Banking and Investment Corporation—is a well-connected Saudi family from the central Najd region of the kingdom with a net worth of | 176.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(3) Plaintiffs' reference to Al Rajhi Bank being a "preferred" bank is immaterial for the reasons discussed in response to Section VIII (heading).<br><br>(4) Plaintiffs' reference to the SAAR foundation is immaterial for the reasons discussed in response to Section IV (heading).<br><br><u>Disputed as conclusory; vague:</u> | 174.<br><br><u>Pls. Ex. 45:</u><br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

---

[43] *Id.*

[44] CIA_000148-150.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | $12 billion.  Al-Rajhi Bank has been a conduit for funds for Islamic extremists and for the 11 September hijackers [REDACTED] Sulayman al-Rajhi, the family patriarch, has been widely reported to support Islamic extremist policy and heled fund the U.S.-based SAAR foundation, which is the subject of US law enforcement investigations.  Al-Rajhi Bank has maintained accounts for individuals linked to Usama bin Ladin, [REDACTED] and individuals with ties to the Egyptian Islamic Jihad.  Islamic extremists in Yemen named Al-Rajhi Bank as a preferred bank for transactions. [REDACTED].[45] | (1) Plaintiffs' reference to "Islamic extremists" is vague and conclusory.<br><br>(2) Plaintiffs' references to "individuals linked to Usama bin Laden" and the "Egyptian Islamic Jihad" are vague and conclusory.<br><br><u>Disputed as controverted by the evidence:</u><br><br>(1) Plaintiffs' assertion that "Al-Rajhi Bank has been a conduit…for the 11 September hijackers" is conclusory and controverted by the evidence.  The undisputed facts establish that the hijackers were not known extremists before the 9/11 Attacks and that they held accounts at many banks in several countries, including the United States. ARB Aver. ¶ 97.  The hijackers' accounts at Al Rajhi Bank had low balances and negligible activity during the relevant period.  Resp. to Pls. Aver. ¶ 265.<br><br>– Moreover, Plaintiffs do not show that any money transferred through accounts at Al Rajhi Bank, including the hijackers' accounts, reached Al Qaeda or financed the 9/11 Attacks.  The averments in this section, even if credited, do not show that Al Rajhi Bank took any tortious act related to Al Qaeda, the 9/11 Attacks, or the United States.<br><br>(2) Plaintiffs' reference to Sulaiman bin Abdulaziz Al Rajhi supporting "Islamic extremist policy" is controverted by the evidence.  Abdullah bin Sulaiman Al Rajhi, the current Chairman and former General Manager/CEO of Al Rajhi Bank, testified that his father, Sulaiman bin Abdulaziz Al Rajhi, had never been a supporter of Al Qaeda or Osama Bin Laden and to the best of his knowledge no one at the Bank ever supported | |

---

[45]  CIA_000149-150.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Al Qaeda, Osama Bin Laden, or terrorism in any form. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 354:17-355:8.<br><br>Disputed as incomplete:<br><br>(1) Plaintiffs' reference to SAAR foundation as "the subject of US law enforcement investigations" is incomplete.<br><br>(2) While the FBI, USCS, and IRS investigated the SAAR Foundation for several years, no charges or indictments were ever brought against the organization, and the SAAR Foundation was never designated under any sanctions regime for connections to terrorism. *See* Pls. Ex. 4 (Winer Rep.) at 186-187; ARB Ex. 4 (Lormel Rep.) at 9; *see also* ARB. Ex. 28 (Winer Dep. Tr. and Errata) at 143:13-18.<br><br>(3) Further, this Court previously dismissed Plaintiffs' claims as to the SAAR Network Defendants for failure to state a claim. *See In re: Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 523 (S.D.N.Y. 2010) ("Plaintiffs merely plead conclusory allegations against a large group of defendants, whom plaintiffs have independently concluded to be related and operating in unison. None of the Defendants can be held liable based on such allegations alone."). | |
| 177 | The CIA noted the al Rajhi family's longstanding ties to bin Laden again in a March 10, 2003 report discussing the 1992 through 1996 period when al Qaeda was headquartered in Sudan, *Al-Qa'ida in Sudan, 1992-1996: Old School Ties Lead Down Dangerous Paths*, March 10, 2003, CIA_00038-52 | 177.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI, and is otherwise conclusory and unsupported. | 177.<br><br>Pls. Ex. 89:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | at Ex. 89, which states that "merchants in Saudi Arabia who built business ties to Bin Ladin's companies in Sudan, and who also finance extremists, include Ibrahim Said Badoaoud, Adil Batarga, Yasin Qadi, and members of the Jamjun and al-Rajhi families."[46] | (3) Immaterial as relating to conduct outside the relevant period.<br><br>Disputed as conclusory; controverted by the evidence:<br><br>(1) Plaintiffs' reference to members of the "Al Rajhi famil[y]" is conclusory and vague. Even if the CIA reports are admissible and credited, as of 2003, the CIA estimated that "the Al Rajhi family" had "over 700 male members." *See* Pls. Ex. 10 (CIA Rep., *Al Rajhi Bank: Conduit for Extremist Finance* (May 28, 2003)) at CIA-Sub_003.<br><br>(2) Abdullah bin Sulaiman Al Rajhi, the current Chairman and former General Manager/CEO of Al Rajhi Bank, testified that his father, Sulaiman bin Abdulaziz Al Rajhi, had never been a supporter of Al Qaeda or Osama Bin Laden and to the best of his knowledge no one at the Bank ever supported Al Qaeda, Osama Bin Laden, or terrorism in any form. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) 354:17-355:8. Additionally, Abdullah bin Sulaiman Al Rajhi has never met or supported Osama bin Laden, Al Qaeda or other terrorists, or terrorism at all. Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 353:7-10, 355:4-8, 356:4-10. | |
| 178 | The importance the CIA assigned to ARB's role in supporting al Qaeda and other terrorist threats to the United States led the CIA's Counter-Terrorism Center Office of Terrorism Analysis to prepare a report dedicated entirely to ARB, *Al-Rajhi Bank: Conduit for Extremist Finance*, May 28, | 178.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. | 178.<br><br>Pls. Ex. 10:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

---

46  CIA_000045.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | 2003, CIA-SUB_0001-6 at Ex. 10. The report's one paragraph Summary states:<br><br>Islamic extremists have used Al-Rajhi Banking and Investment Corporation (ARABIC) [ARB] since at least the mid-1990s as a conduit for terrorist transactions, probably because they find the bank's vast network and adherence to Islamic principles both convenient and ideologically sound. Senior al-Rajhi family members have long supported Islamic extremists and probably know that terrorists use their bank. [REDACTED] senior al-Rajhi family members control the banks' most important decisions and that ARABIC's principle managers answer directly to Sulayman. The al-Rajhis know they are under scrutiny and they have moved to conceal | <u>Disputed as conclusory; vague; unsupported and controverted by the evidence:</u><br><br>(1) Plaintiffs' suggestion that the CIA assigned "importance . . . to ARB's role in supporting Al Qaeda" is vague, conclusory, and unsupported by the evidence.<br><br>–  After extensive investigation, the FBI could not verify the CIA reporting about the Bank. ARB Ex. 4 (Lormel Rpt.) at 7, 18-20 ("My opinion is supported by my [FBI Terrorist Finance Operations Section] experience where I assigned a team of FBI agents and analysts to investigate Al Rajhi Bank. As stated earlier, the investigative team could not substantiate allegations involving Al Rajhi Bank.").<br><br>–  The U.S. government has never sanctioned, charged, or taken any other action against Al Rajhi Bank or any Al Rajhi family member for connections to terrorism or the 9/11 Attacks. *See* ARB Aver. ¶ 118; *see also* ARB Ex. 7 (May 27, 2021 FBI Electronic Comm.) at EO14040-0000111 (stating that "[a]fter nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged").<br><br>(2) In addition, Plaintiffs' averment that unnamed Al Rajhi family members "probably know" terrorists use their bank is immaterial because neither the averment nor the underlying report identify who those unnamed "members" were, nor does the averment or the report show any conduct or support by the Bank. The caveat "probably" demonstrates that the averment is immaterial, because the CIA report does not reach any conclusion about any conduct by the unnamed family members, nor does it show that the unnamed family members had any pertinent knowledge. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | their activities from financial regulatory authorities. The 12 May bombings in Riyadh probably will make the Saudi Government more amenable to investigating the al-Rajhi family, as they have already begun to target other alleged al-Qa'ida donors. [REDACTED][47] | (3) Plaintiffs' averment that the "al-Rajhis know they are under scrutiny and they have moved to conceal their activities from financial regulatory authorities" is conclusory and unsupported by the evidence. Plaintiffs present no specific examples of any such concealment. <br><br>Disputed as controverted by the evidence: <br><br>(1) Plaintiffs' suggestion that "senior al-Rajhi family members control the banks' most important decisions" is controverted by the evidence. <br><br>(2) Al Rajhi Bank's Board was required to follow the regulations of the Capital Market Authority and the Bank's primary regulator, the Saudi Arabian Central Bank, formerly known as the Saudi Arabian Monetary Authority (SAMA). *See* Pls. Ex. 1 (Al Rajhi bin Sulaiman Deposition) at 33:9-12. <br><br>(3) As a result, Al Rajhi Bank's Board of Directors, which is the ultimate authority of the Bank, and Executive Committee were not dominated by members of the Al Rajhi family, let alone Sulaiman Abdulaziz Al Rajhi. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 46:21-47:2. Al Rajhi Bank maintained four to five independent board members. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 33:3-34:12. <br><br>(4) Al Rajhi Bank maintained specialized committees, and corresponding director-level positions, which allowed for separation of powers and checks and balances throughout the Bank. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 19:23-20:4; 33:18-35:8 and Errata at 34:14, 34:18-20, 34: 22, 34:25, 35:1, 35:3-4. | |

---

[47] CIA-SUB_0002.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | – Outside of the Executive Committee, the Bank's Chairman (Sulaiman bin Abdulaziz Al Rajhi during the relevant period) was not a member of the Bank's specialized committees. *See* ARB. Ex. 2 (Hobayb Rep.) at 17. | |
| | | – Moreover, as explained by Al Rajhi Bank's expert, Al Rajhi Bank's corporate governance processes and structures reflected appropriate practices at the time. *See* ARB. Ex. 2 (Hobayb Rep.) at 16. | |
| | | (5) To the extent Plaintiffs aver that Al Rajhi Bank or a member of the Al Rajhi Family has supported Al Qaeda or Osama Bin Laden, Abdullah Al Rajhi, the current Chairman and former General Manager/CEO of Al Rajhi Bank, testified that his father, Sulaiman bin Abdulaziz Al Rajhi, had never been a supporter of Al Qaeda or Osama Bin Laden and to the best of his knowledge no one at the Bank ever supported Al Qaeda, Osama Bin Laden, or terrorism in any form. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 354:17-355:8. | |
| | | – Moreover, neither Al Rajhi Bank, nor any member of the Al Rajhi family has ever been indicted for allegations of terrorism financing or money-laundering. Furthermore, none of these entities and individuals has ever been designated by the United States or the United Nations, which would require a lower evidentiary threshold than a successful criminal prosecution. *See* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-39:5; ARB Ex. 4 (Lormel Rep.) at 9, 34-35; *see also* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 143:9-18, 160:10-18 | |
| 179 | Among others, the May 28, 2003 CIA report includes the | 179.<br><br>Immaterial: | 179.<br><br>Pls. Ex. 10: |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | following assessments and findings:<br><br>[REDACTED the al-Rajhis have a history of funding a broad array of Islamic causes, some of which have been associated with terrorists.[48]<br><br>**Extremists' bank of choice**. [REDACTED] since the mid-1990s [REDACTED] several extremists ordered operatives in Afghanistan, Indonesia, Pakistan, Saudi Arabia, Turkey and Yemen to use ARABIC [REDACTED].[49]<br><br>**Extremists' accounts**. Extremists use ARABIC [ARB] because its Islamic banking principles appeal to them and because it is one of the few banks with branches in outlying | (1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(3) Plaintiffs' characterization of the Bank as "extremists' bank of choice" is immaterial for the reasons discussed in Section VIII (heading).<br><br>(4) Plaintiffs' averments show that the Bank provided only routine banking services to the charity and charity-official customers and do not support the conclusion that the Bank took any intentional, tortious conduct aimed against the United States.<br><br>(5) Plaintiffs' averments with respect to Al Haramain and Al Haramain officials are immaterial for the reasons discussed in Section V (heading).<br><br>(6) Plaintiffs' averments with respect to IIRO and IIRO officials are immaterial for the reasons discussed in Section V (heading).<br><br>(7) Plaintiffs' averments about the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation and the SAAR Foundation are immaterial for the reasons discussed in Section IV (heading).<br><br>(8) To the extent Plaintiffs make averments with respect to Haji Wali Mohammed Trading Establishment and Bank al-Taqwa, these averments are immaterial because Plaintiffs do not aver that these customers were publicly connected with Al Qaeda when the Bank purportedly processed transactions through those accounts. Moreover, Plaintiffs are unable to show that | - Inadmissible hearsay, as noted in response to Section VI (heading). |

---

[48] CIA-SUB_0003.

[49] Id.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | areas of Saudi Arabia, as well as good correspondent connections to remote locations abroad. Several al-Qa'ida linked individuals and organizations have held bank accounts at Al'Rajhi.[50]<br><br>• [REDACTED late 1990's, Bank al-Taqwa held a correspondent account at the Riyadh branch of Al-Rajhi Bank. The Department of Treasury listed Bank al-Taqwa's parent organization Al-Taqwa Management a.k.a. Nada Management) as a foreign terrorist organization in November 2001.[51]<br><br>Muhammed Ghaleb Kalaje Zouyadi [REDACTED] arrested in 2002 for his role as the financial planner for the | the money transferred through these accounts reached Al Qaeda or financed the 9/11 Attacks. The averments in this section, even if credited, do not show that Al Rajhi Bank took any tortious conduct to support Al Qaeda or the 9/11 Attacks.<br><br>(9) To the extent Plaintiffs make any averment regarding Kompak, such subject was denied as being "far afield of the appropriate inquiry." Order 13-14 (Nov. 22, 2021), ECF No. 7378.<br><br><u>Disputed as controverted by the evidence:</u><br><br>(1) The assertion that in the late 1990s Osama Bin Laden "may" have used an account at Al Rajhi Bank is controverted by the evidence. Osama Bin Laden's accounts had been frozen since at least 1994, when the Saudi government "fr[oz]e his financial assets and revoke[d] his citizenship." Pls. Ex. 40 (9/11 Comm'n. Rep.) at 57; *see also* ARB Aver. ¶ 91; ARB Ex. 8 (Nov. 16, 2002 Ltr. from Al Rajhi Bank to SAMA) at ARB-39559 (showing all Bin Laden accounts "blocked"). Plaintiffs' own experts concede that Bin Laden did not use, and could not have used, his accounts at all after his assets were frozen in 1994. *See* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 17:1-25, 208:15-18, 209:2-4; *see also* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 53:5-55:2.<br><br>(2) To the extent Plaintiffs aver that Al Rajhi Bank or a member of the Al Rajhi Family have supported Al Qaeda or Osama Bin Laden, Abdullah bin Sulaiman Al Rajhi, the current Chairman and former General Manager/CEO of Al Rajhi Bank, testified that his father, Sulaiman bin Abdulaziz Al Rajhi, had never been a supporter of Al Qaeda or Osama Bin Laden and to the best of his knowledge no one at the Bank ever supported Al | |

---

[50] Id.

[51] Id.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | Barakat Yarkas' al-Qa'ida cell, used his Al-Rajhi account [REDACTED] from 1993-1999.[52]<br><br>Haji Wali Mohammed Trading Establishment maintained an Al-Rajhi account for business transactions as of August 2000. [REDACTED] Afghan hawaladar Haji Wali Mohammed transferred money for Usama bin Ladin.[53]<br><br>[REDACTED] late 1990s Usama Bin Ladin may have used an account or accounts at Al-Rajhi Bank to pay al-Qa'ida operatives.[54]<br><br>**Couriers**. Al-Rajhi has extensive money exchange operations, as well as representation in | Qaeda, Osama Bin Laden, or terrorism in any form. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 354:17-355:8.<br><br>(3) Moreover, neither Al Rajhi Bank, nor any member of the Al Rajhi family, has ever been indicted for allegations of terrorism financing or money-laundering. Furthermore, none of these entities and individuals has ever been designated by the United States or the United Nations, which would require a lower evidentiary threshold than a successful criminal prosecution. *See* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-39:5; Ex. 4 (Lormel Rep.) at 9, 34-5; ARB Ex. 28 (Winer Dep. Tr. and Errata) 143:9-18, 160:10-18.<br><br>(4) The CIA's claim that Zouyadi used an ARB account is unsupported by the evidence. Al Rajhi Bank has searched for accounts belonging to Muhammed Ghaleb Kalaje Zouyadi and not found any. *See* Erb Decl. ¶¶ 3-5. | |

---

52 Id. See also Ex. 4, Winer Report at 92 (Barakat Yarkas was ultimately convicted in Spain of direct involvement in the 9/11 attacks in the United States, for organizing a meeting in Spain which was attended by Mohammed Atta, the lead hijacker on Sept. 11, and Ramzi bin al-Shibh, a high-ranking member of al Qaeda, which was used to plan the attacks. "Spain finds Qaeda cell chief guilty in 9/11 plot," New York Times, September 27, 2005, https://www.nytimes.com/2005/09/27/world/europe/spain-finds-qaeda-cell-chief-guilty-in-911-plot.html.).

53 CIA-SUB_004.

54 Id.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | remote locations. In addition to traditional bank transactions, ARB has used couriers to move funds.[55]<br><br>• In 2000, ARABIC couriers delivered money to the Indonesian insurgent group Kompak to fund weapons purchases and bomb-making activities.[56]<br><br>• ARABIC in 1999 helped obtain a visa for a courier who collected money in Saudi Arabia for the Egyptian Islamic Jihad Organization, [REDACTED] Reporting does not indicate whether bank management was | | |

---

[55]  Id.

[56]  Id. See also Ex. 4, Winer Report at 92 (Kompak was an Indonesian organization that grew out of terrorist group Jemaah Islamiyah ("JI"), an al-Qaida linked terrorist group with cells operating in several countries in Southeast Asia., as set forth in the terrorist designation of JI announced by then U. S. Secretary of the Treasury John Snow on September 5, 2003, which referenced Kompak and described JI's training by al Qaeda, its plans to attack Americans in Southeast Asia, and its involvement in the Bali bombing, which killed 202 people in October 2003. "Snow Announces Designation of 10 Jemaah Islamiyah (JI) Terrorists," Treasury Press Release, September 5, 2003 https: //home.treasury. gov/news/press-releases/j s700.).

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | witting of the courier's EIJ affiliation.[57]<br><br>**Nongovernment organizations (NGOS).** [REDACTED] Gulf-based Islamic NGOs use ARABIC to transfer funds to their offices abroad some of which may be used to support terrorists. [REDACTED][58]<br><br>Saudi-based al-Haramain, which has come under close scrutiny by US and Saudi authorities for alleged terrorist ties, uses ARABIC and National Commercial Bank to fund its programs abroad.[59]<br><br>The International Islamic Relief Organization, a nongovernment organization with ties to al-Qa'ida, as of the late 1990s used Al-Rajhi to pay its employees.[60] | | |

---

57  Id.  See also Ex. 4, Winer Report at 93 (Egyptian Islamic Jihad was listed for sanctions by the UN on October 6, 2001 "as being associated with Al-Qaida, Usama bin Laden or the Taliban for 'participating in the financing, planning, facilitating, preparing or perpetrating of acts or activities by, in conjunction with, under the name of, on behalf or in support of", 'supplying, selling or transferring arms and related materiel to' or 'otherwise supporting acts or activities of Al-Qaida and Usama bin Laden." UN Sanctions Committee summary regarding its sanctions on Egyptian Islamic Jihad,https://www.un.org/securitycouncil/sanctions/1267/aq_sanctions_list/summaries/entity/egyptian-islamic- jihad).

58  CIA-SUB_0004.

59  Id.

60  Id.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | **Al-Rajhi Family Complicity and Control [REDACTED]** *Senior al-Rajhi family members have long supported Islamic extremists and probably know that terrorists use their bank.* Bank chairman Sulayman and several other al-Rajhis have given money to suspicious individuals and organizations worldwide. Moreover, Sulayman's tight control of ARABIC [ARB] activities suggest he is witting that his bank is attractive to extremists.[61]<br><br>• ARABIC Chairman Sulayman al-Rajhi and his brother Saleh al-Rajhi transferred $4 million to Germany and Pakistan in December 1998. [REDACTED] The brothers used a unique computer code to send funds at regular intervals to unspecified recipients.[62]<br><br>Senior al-Rajhi family members, including | | |

---

61 Id.

62 Id.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | family patriarch Sulayman al-Rajhi, have donated money to NGOs suspected of supporting terrorism.[63]<br><br>• In the 1980's, the al-Rajhis established the SAAR Foundation - SAAR is an acronym for Salayman Abdul Aziz al-Rajhi—to manage the family's charitable contributions. US law enforcement has long suspected the SAAR Foundation of funding HAMAS.[64]<br><br>[REDACTED] March 2003, Sulayman al-Rajhi defended his donations to the al-Haramain Islamic Foundation, which has come under scrutiny for its support to extremists.[65] | | |

---

[63]  CIA-SUB_0005.

[64]  61 Id.

[65]  Id.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | [REDACTED] *senior al-Rajhi family members control the bank's most important decisions and that ARB's principle managers answer directly to Sulayman.* [sic] ARABIC historically granted branch managers substnatial autonomy in consolidating statements, transferring funds, and detecting fraud, but [REDACTED] the bank is looking to remedy its poor internal reporting systems by centralizing control in the main office in Riyadh.[66] <br><br> • Because the bank's headqarters has only minimal control over some of its branches, ARABICis developing a new platform for | | |

---

66  Id.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | improved supervision. [REDACTED][6768] **Fighting Transparency and Oversight. *The al-Rajhis know they are under scrutiny and have moved to conceal their activities from financial regulatory authorities.[11]*** [REDACTED] Sulayman al-Rajhi in December 2002 directed ARB board members to explore financial instruments that would allow the bank's charitable contributions to avoid official Saudi scrutiny.[69] | | |
| 180 | As further discussed in the expert report of Jonathan Winer, additional evidence indicates that redacted portions of the May 28, 2003 CIA report reflect CIA findings that: <ul><li>"The Al Rajhi name appeared on a list of regular financial contributors to al Qaeda that was discovered in</li></ul> | 180. <u>Immaterial:</u> (1) Immaterial for the reasons discussed above in response to Section VI (heading). (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. (3) Plaintiffs do not show that any money transferred through accounts at Al Rajhi Bank reached Al Qaeda or financed the | 180. <u>Pls. Ex. 4, pgs. 96-97:</u> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (CIA reports, WSJ article). *See* Fed. R. Evid. 802. - Should be excluded as needless presentation of |

---

67  Id.

68  Id.

69  Id.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | Sarajevo, Bosnia, in 2002. The list was authenticated for the Federal Bureau of Investigation that year by America's top judicial witness against al Qaeda, a onetime al Qaeda business manager named Jamal Al Fadl, ███████████ ████████ He called the contributor list the "golden chain."[70]<br><br>• "A 2003 German police report said Sulaiman Al Rajhi and other family members had contributed more than $200,000 in 1993 to a charity that financed weapons for Islamic militants in Bosnia, in addition to providing humanitarian aid."[71]<br><br>• "The report says extremists 'ordered | 9/11 Attacks. This averment, even if credited, does not show that Al Rajhi Bank took any tortious act related to Al Qaeda, the 9/11 Attacks, or the United States<br><br>(4) In addition, immaterial as to references to the Golden Chain, as discussed in response to Section XIII (heading).<br><br>(5) Plaintiffs' averment shows that the Bank provided only routine banking services to the charity and charity-official customers and does not support the conclusion that the Bank took any intentional, tortious conduct aimed against the United States.<br><br>(6) Plaintiffs' averments with respect to Al Haramain and Al Haramain officials are immaterial for the reasons discussed in Section V (heading).<br><br>(7) Plaintiffs' averments with respect to IIRO and IIRO officials are immaterial for the reasons discussed in Section V (heading).<br><br>(8) Plaintiffs' averments about the Sulaiman bin Abdulaziz al Rajhi Charitable Foundation and the SAAR Foundation are immaterial for the reasons discussed in Section IV (heading).<br><br><u>Disputed as controverted by the evidence:</u><br><br>(1) Al Rajhi Bank has searched for records of an account belonging to Mamduh Mahmud Salim and has not found one. *See* Erb Decl. ¶¶ 3-5. | cumulative evidence. *See* Fed. R. Evid. 403.<br><br><u>Pls. Ex. 94:</u><br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

---

70  See Ex. 94, U.S. Tracks Saudi Bank Favored by Extremists Officials Debated What to Do About Al Rajhi, Intelligence Files Show," Wall Street Journal, July 26, 2007.

71  Id. See also Ex. 4, Winer Report at 96 (From the context, this information in the Wall Street Journal appears to reference material in the CIA Al Rajhi Report that is redacted from the version released in response to Plaintiffs' ARB subpoena to the CIA.).

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | operatives in Afghanistan, Indonesia, Pakistan, Saudi Arabia, Turkey and Yemen,' to use Al Rajhi Bank.[72]<br><br>• "Mamduh Mahmud Salim, convicted mastermind of the 1998 embassy bombings in Kenya and Tanzania, was carrying records of an Al Rajhi account (number 001424/4) when arrested in Germany in 1998, German police found."[73]<br><br>• "In 2000, the CIA report says, Al Rajhi Bank couriers 'delivered money to the Indonesian group Kompak to fund weapons purchases and bomb-making activities."[74]<br><br>• "According to a federal indictment in Oregon, a top Al-Haramain | | |

---

[72] Id.

[73] Id.

[74] Id.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | official in 2000 carried $130,000 in $1,000 traveler's checks from Portland to Riyadh and deposited them with Al Rajhi - funds the indictment says were for the ultimate benefot of al Qaeda fightres in Chechnya. The indicted official, Soliman Al-Buthe, now works for the city of Riyadh. In an interview, he confirmed carrying the checks and depositing them with Al Rajhi Bank and said they weren't for al Qaeda and he did nothing wrong."[75]<br><br>"A Jiddah based charity called the International Islamic Relief | | |

---

[75] Id. See also Ex. 4, Winer Report at 97 (Al Buthe was named a Specially Designated Global Terrorist on September 9, 2004, in connection with his provision of military support to Chechen militants from a branch of Al-Haramain in the United States and remains on OFAC's sanctions list. https://sanctionssearch.ofac.treas.gov/Details.aspx?id=8591 He was also indicted, along with the head of the Al-Haramain U.S. branch, in the case of U.S. v. Al-Haramain Islamic Foundation, Inc., Piroux Sedaghaty, and Soliman Hamd al-Buthe, which ran into complex legal issues due to OFAC sanctions raising due process issues for U.S. persons when coupled with an asset seizure, and findings that due to the OFAC process, Brady material was improperly withheld from the defendants, resulting in a settlement in which the charity pled guilty to a tax offense, the previously convicted head of the charity was released from "pending criminal charges," and Buthe, who had left the U.S. for Saudi Arabia, remained under indictment. See "Specially Designated Global Terrorist Al-Haramain Islamic Foundation, Inc. Pleads Guilty to Tax Fraud," July 29, 2014, https://www.justice.gov/usao-or/pr/specially-designated-global-terrorist-al-haramain-islamic-foundation-inc-pleads- guilty. For a summary of the government's case against the U.S. branch of Al-Haramain see the original indictment, available at https://www.investigativeproject.org/documents/case_docs/480.pdf and the more detailed statement of facts by the prosecutors in "Government's Memorandum In Support Of Pretrial Detention, August 21, 2007, available athttps://www.investigativeproject.org/case_docs/us-v-al-haramain-islamic-foundation-et-al/482/governments-memorandum-in-support-of-pretrial-detention.pdf.).

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Organization, or IIRO, arranges for donors to send their donations directly to the Al Rajhi Bank. . . .the U.N. has labelled two of the IIRO's branches and some of its officials as al Qaeda supporters."[76] | | |
| 181 | At the conclusion of the May 28, 2003 ARB report, the CIA offered senior policymakers with several possible policy options for addressing the threat ARB's support for terrorism and militant extremism posed to U.S. national security. | 181.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(3) Plaintiffs' reference to "policy options" is immaterial, as Plaintiffs present no evidence that policy makers took any action with respect to any of those options.<br><br>Disputed as conclusory; vague; unsupported by the evidence:<br><br>(1) Plaintiffs' reference to "the threat [of] ARB's support for terrorism" is conclusory, vague, and unsupported by the evidence.<br><br>– After years of exhaustive investigation into the 9/11 Attacks by multiple government agencies, the U.S. government has never sanctioned, charged, or taken any other action against Al Rajhi Bank or any Al Rajhi family | |

---

76   Id.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | member for connections to terrorism or the 9/11 Attacks. *See* ARB Aver. ¶ 119; *see also* ARB Ex. 7 (May 27, 2021 FBI Electronic Comm.) at EO14040-0000111 (stating that "[a]fter nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged"). | |
| | | – As explained by Al Rajhi Bank's expert Dennis Lormel, despite extensive investigation, the FBI's Terrorist Financing Operations Section "could not verify or prove the CIA intelligence reporting or other investigative leads developed by the FBI and CIA regarding allegations that Al Rajhi Bank provided support for Al Qaeda." *See* ARB Ex. 4 (Lormel Rep.) at 7. | |
| 182 | The options set forth in the CIA report were directed to the specific goal set by senior officials in the Bush Administration: "disrupting the family's aid to extremists both within and outside of Saudi Arabia." *See* Ex. 10, CIA-SUB_0006; Ex. 4, Winer Report at 97. | 182.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(3) Plaintiffs' reference to policy "options" is immaterial, as Plaintiffs present no evidence that policy makers took any action with respect to any of those options.<br><br>Disputed as conclusory; vague; unsupported by the evidence:<br><br>(1) Plaintiffs' reference to "the family's aid to extremists" is conclusory, vague, and unsupported by the evidence.<br><br>– After years of exhaustive investigation into the 9/11 Attacks by multiple government agencies, the U.S. | 182.<br><br>Pls. Ex. 10:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading).<br><br>Pls. Ex. 4 at 96-97:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (CIA reports, WSJ article). *See* Fed. R. Evid. 802.<br><br>- Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403 (heading). |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | government has never sanctioned, charged, or taken any other action against Al Rajhi Bank or any Al Rajhi family member for connections to terrorism or the 9/11 Attacks. *See* ARB Aver. ¶ 119; *see also* ARB Ex. 7 (May 27, 2021 FBI Electronic Comm.) at EO14040-0000111 (stating that "[a]fter nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged").<br><br>– As explained by Al Rajhi Bank's expert Dennis Lormel, despite extensive investigation, the FBI's Terrorist Financing Operations Section "could not verify or prove the CIA intelligence reporting or other investigative leads developed by the FBI and CIA regarding allegations that Al Rajhi Bank provided support for Al Qaeda." *See* ARB Ex. 4. (Lormel Rep.) at 7. | |
| 183 | These options included listing ARB as a supporter of terrorism or threatening to do so. The report states that implementation of either option "could cripple the bank." Additional options listed in the CIA report stated that the "al-Rajhi's wide-ranging US connections— financial, charitable, and diplmatic— expose the family to "domestic oversight, scrutiny, civil litigation, and criminal prosecution." The report further stated that other governments might be willing to help investigate "and stem al-Rajhi | 183.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(3) Plaintiffs' reference to options that "could cripple the bank" is immaterial for the reasons discussed in response to ¶ 189.<br><br>(4) Plaintiffs' reference to policy options is immaterial, as Plaintiffs present no evidence that policy makers took any action with respect to any of those options. The U.S. government has never sanctioned, charged, or taken any other action against Al Rajhi Bank or any Al Rajhi family member | 183.<br><br>Pls. Ex. 4 at 96-97:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (CIA reports, WSJ article). *See* Fed. R. Evid. 802.<br><br>- Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | funding for extremists, even if the Saudis balk." Finally, it suggested "[identifying and putting pressure on banks holding the family's offshore accounts could further disrupt the al-Rajhi's ability to send money to extremists. [REDACTED]"[77] *See* Ex. 4, Winer Report at 97. | for connections to terrorism or the 9/11 Attacks. *See* ARB Aver. ¶ 119; *see also* ARB Ex. 7 (May 27, 2021 FBI Elec. Comm.) at EO14040-0000111 (stating that "[a]fter nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged"). | |
| 184 | As discussed below, senior U.S. policymakers also deliberated covert action to interfere with ARB's operations, but ultimately elected to pursue remedial action to address the threat posed by ARB through counter-terrorism engagements and cooperation with Saudi Arabia. *See* Ex. 4, Winer Report at 97; Ex. 2 (Pasley Exhibit 5), U.S. Diplomatic Cable, *Terrorist Financing: Al-RajhiBank*, September 27, 2004; Ex. 95, (Pasley Exhibit 6), U.S. Diplomatic Cable, *Joint Examination of Al Rajhi Bank Through the Joint Terrorist Financing Task Force*, November 25, 2004. | 184. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section VI (heading). <br><br> (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. <br><br> (3) Plaintiffs' reference to "remedial action" is immaterial, as Plaintiffs present no evidence that policy makers took any action with respect to any of those options. <br><br> (4) Moreover, the U.S. government has never sanctioned, charged, or taken any other action against Al Rajhi Bank or any Al Rajhi family member for connections to terrorism or the 9/11 Attacks. *See* ARB Aver. ¶ 119; *see also* ARB Ex. 7 (May 27, 2021 FBI Elec. Comm.) at EO14040-0000111 (stating that "[a]fter nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged"). Plaintiffs' | 184. <br><br> Pls. Ex. 4, pgs. 96-96: <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (CIA reports, WSJ article). *See* Fed. R. Evid. 802. <br><br> - Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. <br><br> Pls. Ex. 2: <br><br> - Lacks authentications. *See* Fed. R. Evid. 901. <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

---

[77] CIA-SUB_0006.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | reference to 'remedial action' is therefore immaterial for the reasons discussed in response to ¶ 189. <br><br> <u>Disputed as misleading; incomplete:</u> <br><br> (1) Plaintiffs fail to note that as described in Plaintiffs' Exhibit 2, the SAMA director "took exception to the details regarding suspect accounts and said that he had seen no hard evidence linking Al-Rajhi or individuals who have accounts or work at the bank with Al-Qaida or terrorism." This cable also discusses the fact that the bank had been fully investigated since 1989 and had a full scope audit by E&Y. SAMA director stated he was "'fed up' with the USG's allegations and that none of them were substantiated." *See* Pls. Ex. 2 (U.S. Diplomatic Cable, *Terrorist Financing: Al Rajhi Bank*, (Sept. 27, 2004)). <br><br> <u>Disputed as vague, conclusory:</u> <br><br> (1) Plaintiffs' reference to the "threat" posed by Al Rajhi Bank is vague and conclusory. | Pls. Ex. 95: <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 185 | Further CIA reporting (and other evidence) confirms that U.S. intelligence remained concern about ARB's involvement in sponsoring al Qaeda and related terrorists a year after the May 28, 2003 ARB report, as reflected by the discussion of ARB in the May 21, 2004 finished intelligence report issue by the CIA's Directorate of Intelligence, *Islamic Banking: A Potential Economic Enabler in the Muslim World*, CIA-SUB_0020-0030 at Ex. 11; Ex. | 185. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section VI (heading). <br><br> (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. <br><br> <u>Disputed as conclusory; unsupported by the evidence:</u> <br><br> (1) Plaintiffs' averment that "U.S. intelligence remained concern[ed] about ARB's involvement" is conclusory and unsupported by the evidence. The cited report expends only | 185. <br><br> Pls. Ex. 11: <br><br> - Inadmissible hearsay, as noted in response to Section VI (heading). <br><br> Pls. Ex. 4 at 79-81, 89: <br><br> - Should be excluded to the extent expert testimony is used a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded as needless presentation of |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | 4, Winer Report at 79-81, 89, 98-99. | minimal attention on Al Rajhi Bank, and the discussion of Al Rajhi Bank at all does not suggest "concern." As explained by Al Rajhi Bank's expert, Dennis Lormel, "during 2002 and 2003, [] CIA intelligence reporting, especially with respect to Al Rajhi Bank…appeared to be circular," impugning the reliability of this intelligence. ARB. Ex. 4 (Lormel Rep.) at 12. <br><br> (2) Plaintiffs' averment regrading concerns over "ARB's involvement in sponsoring al Qaeda" is misleading and controverted by the evidence. The undisputed facts establish that *no* U.S. government agency has *ever* concluded that the Bank provided any support for the 9/11 Attacks. After years of exhaustive investigation into the 9/11 Attacks by multiple government agencies, the U.S. government has never sanctioned, charged, or taken any other action against Al Rajhi Bank or any Al Rajhi family member for connections to terrorism or the 9/11 Attacks. *See* ARB Aver. ¶ 119; *see also* ARB Ex. 7 (May 27, 2021 FBI Elect. Comm.) at EO14040-0000111 (stating that "[a]fter nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged"). <br><br> Disputed as conclusory; unspecific: <br><br> (1) Plaintiffs' reference to "other evidence," without further elaboration, is conclusory and unspecific. | cumulative evidence. *See* Fed. R. Evid. 403. <br><br> Pls. Ex. 4 at 98-99: <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 186 | In that report, the CIA noted that al Qaeda and related terrorist groups had largely moved away from using Islamic banks to move money "after 9/11, once tighter regulation and heightened scrutiny on financial | 186. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section VI (heading). <br><br> (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons | 186. <br><br> Pls. Ex. 4 at 79-81, 89: <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
|  | institutions worldwide were put in place to guard against terrorist financial activities,"[78] and were instead increasingly using *hawalas* and cash couriers. *See* Ex. 4, Winer Report at 79-80. | discussed in the Bank's response to Section VI, and is otherwise conclusory and unsupported. | hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Should be excluded as needless presentation of cumulative evidence. |
| 187 | Even with that increased scrutiny and regulation, however, the CIA concluded that:<br><br>Nevertheless, a few banks that operate under Islamic principles, such as the Al-Rajhi Banking and Investment Company in Saudi Arabia, are still of concern because of longtime use by al-Qa'ida operatives and other terrorists. The Saudi-based Bank al-Jazira and Saba Islamic Bank in Sanaa, Yemen, are also of concern because of their use by extremists.[79]<br><br>Some of the owners of these institution—such as Shayk Suleiman al-Rajhi in Saudi | 187.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VI (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(3) Even if the CIA reports are admissible and credited, this averment only describes routine banking services, and does not suggest that Al Rajhi Bank had any knowledge or intent regarding the use of the Bank by extremists. Moreover, Plaintiffs do not show that any money transferred through accounts at Al Rajhi Bank reached Al Qaeda or financed the 9/11 Attacks.<br><br>Disputed as conclusory; vague; controverted by the evidence:<br><br>(1) Plaintiffs' reference to "increased scrutiny and regulation" is vague and conclusory. Plaintiffs provide no evidence that Al Rajhi Bank was under increased scrutiny and regulation, and the U.S. government has never sanctioned, charged, or taken any other action against Al Rajhi Bank or any Al Rajhi family | 187.<br><br>Pls. Ex. 11:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

---

78  CIA-SUB_0024.

79  Id.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | Arabia and Salih al-Kamel and Abdual Majid Zinani in Yemen—reportedly have provided widespread funding to al-Qa'ida, HAMAS, and various mujahadin groups."[80] | member for connections to terrorism or the 9/11 Attacks. *See* ARB Aver. ¶ 119; *see also* ARB Ex. 7 (May 27, 2021 FBI Electronic Comm.) at EO14040-0000111 (stating that "[a]fter nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged"). (2) Plaintiffs' reference to "widespread funding" to Al Qaeda is conclusory and unsupported by the evidence. Plaintiffs fail to trace any donation made by Sulaiman bin Abdulaziz Al Rajhi to Al Qaeda, much less the 9/11 attacks. | |

---

[80]   Id.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Section VII. | |
| VII. | U.S. Prioritization of ARB in Post-9/11 Counterterrorism Engagements With Saudi Arabia (¶¶ 188 – 203) | **VII. (heading)**<br><br><u>Disputed as conclusory; not supported by the evidence; controverted by the evidence:</u><br><br>(1) This section heading is a conclusory statement to which no response is required.<br><br>(2) Plaintiffs' reference to "U.S. prioritization" is vague, conclusory, and not supported by the evidence. The purported evidence cited in this section (i.e., a CIA Report and Wikipedia print-out) does not show "prioritization" of Al Rajhi Bank in post-9/11 U.S. counterterrorism engagement with Saudi Arabia.<br><br>(3) To the extent that Plaintiffs imply that the U.S. investigation of Al Rajhi Bank indicated tortious conduct by the Bank, Plaintiffs' implication is unsupported by the evidence because the U.S. government has never sanctioned or taken any other action against Al Rajhi Bank or any Al Rajhi family member for involvement in terrorist financing. Plaintiffs omit the critical fact that, in 2021, the FBI closed an investigation into potential sources of support for the 9/11 Attacks, explaining that, "[a]fter nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged, which is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Elec. Comm.) at EO14040-000011.<br><br>(4) And as Al Rajhi Bank's expert Dennis Lormel explained, "if sufficient evidence linking Al Rajhi Bank or the Al Rajhi family to terrorism finance actually existed, the Bank, or members of the Al | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Rajhi family, would have been sanctioned or designated." ARB Ex. 4 (Lormel Report) at 9. | |

AL RAJHI BANK'S RESPONSE (continued):

<u>Immaterial:</u>

Plaintiffs' Averments in Section VII are immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States.

(1)  The averments in Section VII, even if credited, do not show that Al Rajhi Bank took any tortious act in support of Al Qaeda or the 9/11 Attacks, or aimed at the United States. Plaintiffs' averments do not show that any money that was transferred through accounts at Al Rajhi Bank reached Al Qaeda or supported the financing, planning, or carrying out of the 9/11 Attacks or any other act against the United States. Nor do Plaintiffs' averments show that any donations made by Al Rajhi Bank or its principals supported the financing, planning, or carrying out of the 9/11 Attacks or any other act against the United States. And Plaintiffs' averments do not show that the Bank acted with any knowledge or intent to support Al Qaeda or support the financing, planning, or carrying out of the 9/11 Attacks or any other terrorism or terrorist plot against the United States.

(2)  Even if credited, Plaintiffs' averment that a United States Treasury Department official met with Saudi Government officials to discuss concerns that "terrorists us[ed] the Al Rajhi Bank" is immaterial for the following reasons:

(3)  Even if credited, Plaintiffs' averments in this section do not show that the Bank had any knowledge that any of the Bank's account users were affiliated with terrorism. *See, e.g.*, Responses to Section V (heading) (Al Rajhi Bank knew of the charities as reputable organizations engaged in legitimate charitable activities); ¶ 265 (Al Rajhi Bank had no reason to be suspicious of hijackers prior to the 9/11 Attacks); and Section VIII (heading) (Al

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Rajhi Bank had no reason to be suspicious of any individual account holder, none of whom was designated prior to the 9/11 Attacks). | |
| | | (4) Neither the United States, the United Nations, nor any governmental body anywhere has ever designated or otherwise sanctioned or taken any other action against Al Rajhi Bank or any Al Rajhi family member for connections to terrorism. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 160:10-15; 172:19-22; *see also* ARB Ex.93 (Kohlmann Dep. Tr. and Errata) at 36:20-22, 37:10-20, 38:3-39:5; ARB Ex. 4 (Lormel Report) at 19-20 ("[N]o actions were taken or sanctions imposed against the Saudi charity headquarters in the aftermath of 9/11 . . . The fact that these headquarters were not sanctioned, despite strong pressure to do so, demonstrates that there was not enough evidence available against the charities' headquarters in Saudi Arabia."). | |
| | | (5) From 2001 to 2003, the FBI's Terrorist Financing Operations Section (TFOS) conducted investigations into Al Rajhi Bank, including through the U.S.-Saudi Joint Terrorist Financing Task Force, which was established "to examine certain customer accounts believed to be used for terrorism at Al Rajhi Bank." *See* ARB. Ex. 4 (Lormel Report) at 7, 19, 33. TFOS "could not verify or prove the CIA intelligence reporting or other investigative leads developed by the FBI and CIA regarding allegations that Al Rajhi Bank provided support for Al Qaeda or that Al Rajhi Bank was the so-called 'bank of choice' for Al Qaeda or terrorism." *See* ARB. Ex. 4 (Lormel Report) at 7. | |
| | | (6) Further, in 2021, the FBI closed an investigation into potential sources of support for the 9/11 Attacks, explaining that, "after nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged, which is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for regarding those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Elec. Comm.) at EO14040-000011. | |
| 188 | Consistent with the emphasis the intelligence community placed on the threat ARB's support for al Qaeda and terrorism posed to U.S. national security, senior U.S. policymakers prioritized action to interdict ARB's terrorist activities in post-9/11 counterterrorism engagements with the Saudi government. | 188. <br><br> <u>Immaterial for the reasons discussed above in response to Section VII (heading).</u> <br><br> <u>Disputed as conclusory; does not cite supporting evidence:</u> <br><br> (1) Plaintiffs cite no evidence showing that Al Rajhi Bank ever provided "support for al Qaeda and terrorism" or Plaintiffs' conclusory allegations that Al Rajhi Bank participated in "terrorist activities." | |
| 189 | As noted above, the CIA presented a number of potential options to policymakers in its May 28, 2003 report, to address ARB's terrorist activities, including potential designations of ARB, which the CIA acknowledged "could cripple the bank." *See* Ex. 10, CIA-SUB_0006; Ex. 4, Winer Report at 97. | 189. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section VII (heading). <br><br> (2) Immaterial to the extent that this averment relies on a CIA report, which is inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading) and is otherwise conclusory and unsupported. <br><br> (3) Immaterial because the source cited by Plaintiffs also describes the legitimate reasons why customers were attracted to Al Rajhi Bank, including the Bank's adherence to Islamic principles, convenience, the number of branches, good correspondent connections, the size of the bank, extensive money exchange operations, and representation in remote locations. | 189. <br><br> <u>Pls Ex. 10:</u> <br><br> - Inadmissible hearsay, as noted in response to Section VI (heading). <br><br> <u>Pls. Ex. 4 at 97:</u> <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. |

| | | Disputed as conclusory; does not cite supporting evidence: | |
|---|---|---|---|
| | | (1) Plaintiffs cite no evidence supporting Plaintiffs' conclusory assertion that Al Rajhi Bank participated in "terrorist activities." | |
| | | Disputed as unsupported by the evidence: | |
| | | (1) If admissible, the CIA's statement that designations of the Bank could "cripple the bank" is disputed as unsupported by the evidence. The CIA report only speculates that sanctions "could" have that effect on the Bank. | |
| | | (2) In any event, even if credited, such consequences would not have prevented the United States from sanctioning the Bank or its officials if the U.S. government found evidence showing that Al Rajhi Bank supported the 9/11 Attacks. | |
| | | (3) Dennis Lormel, who led a comprehensive investigation into Al Rajhi Bank's purported ties to Al Qaeda and found no support for those allegations, testified that if the U.S. government found clear evidence of anyone supporting 9/11, "actions would have been taken against them regardless of the political outcry" or the State Department's concerns about diplomatic ties. *See* ARB. Ex. 61 (Lormel Dep. Tr. and Errata) at 209:16-210:22; *see also* ARB. Ex. 4 (Lormel Report) at 9 ("given the extensive and vigorous U.S. and U.N. response in the wake of 9/11, . . . if sufficient evidence linking Al Rajhi Bank or the Al Rajhi family to terrorism finance actually existed, the Bank, or members of the Al Rajhi family, would have been sanctioned or designated"). | |
| | | (4) Moreover, had any connection to terrorism been identified, the United States had tools available to impose sanctions or take other action against Al Rajhi Bank other than designation— including, for example, denying the Bank access to U.S. correspondent banking, or working through the Saudi authorities, demanding the removal of certain Bank officials. Plaintiffs have no evidence that any such action was taken. | |
| 190 | At the same time, the CIA's May 28, 2003 report acknowledged | 190. | 190. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | ARB's structural importance to the Saudi banking system, given its 400 branches in the Kingdom and correspondent relationships outside Saudi Arabia. *See* Ex. 10, CIA-SUB_0003; Ex. 4, Winer Report at 97-98. | <u>Immaterial for the reasons discussed above in response to Section VII (heading) and ¶ 189.</u> | <u>Pls Ex. 10:</u><br><br>- Inadmissible hearsay, as noted in response to Section VI (heading).<br><br><u>Pls. Ex. 4 at 97-98:</u><br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (Wikileaks). *See* Fed. R. Evid. 802.<br><br>- Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. |
| 191 | The deliberations about how to handle ARB's role in the funding and support of al Qaeda and other terrorist threats to the United States were undertaken amidst broader policy assessments about how best to address terrorist financing and sponsorship activities emanating from Saudi Arabia, which U.S. counterterrorism financing officials described as the "epicenter of terrorist financing." *See Saudi Arabia: Friend or Foe in the War on Terror*, Hearing Before the U.S. Senate Committee on the Judiciary (November 8, | 191.<br><br><u>Immaterial for the reasons discussed above in response to Section VII (heading).</u><br><br><u>Disputed as conclusory:</u><br><br>(1) Plaintiffs' statement regarding Al Rajhi Bank's purported "role in the funding and support of al Qaeda and other terrorist threats to the United States" is conclusory and not supported by evidence. | 191.<br><br><u>Statement of Senator Arlen Specter</u><br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | 2005), Statement of Senator Arlen Specter. | | |
| 192 | Within the context of these post-9/11 deliberations, the evaluation of whether formal designation of a particular terror sponsor, or other possible action, would best serve U.S. national security interests involved a range of equities, including foreign policy, intelligence, diplomatic, law enforcement, and many other considerations. *See* Ex. 96, *Terrorism Financing: Origination, Organization, and Prevention*, Hearing Before the Committee on Governmental Affairs United States Senate (July 31, 2003), at 11 (R. Richard Newcomb, Director of the Office of Foreign Assets Control ("OFAC"), stating that all of the equities of the government come to the table, including law enforcement, intelligence, diplomatic, and military, among others). | 192.<br><br>Immaterial for the reasons discussed above in response to Section VII (heading).<br><br>Disputed as incomplete; controverted by the evidence:<br><br>(1) Dennis Lormel, who led a comprehensive investigation into Al Rajhi Bank's purported ties to Al Qaeda and found no support for those allegations, testified that if the U.S. government found clear evidence of anyone supporting 9/11, "actions would have been taken against them regardless of the political outcry" or the State Department's concerns about diplomatic ties. *See* ARB. Ex. 61 (Lormel Dep. Tr. and Errata) at 209:16-210:22; *see also* ARB. Ex. 4 (Lormel Report) at 9 ("given the extensive and vigorous U.S. and U.N. response in the wake of 9/11, . . . if sufficient evidence linking Al Rajhi Bank or the Al Rajhi family to terrorism finance actually existed, the Bank, or members of the Al Rajhi family, would have been sanctioned or designated"). | 192.<br><br>Pls Ex. 96:<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 193 | In addressing Saudi-based threats to U.S. national security in particular, U.S. policymakers broadly determined that pursuing cooperation and joint action with | 193.<br><br>Immaterial for the reasons discussed above in response to Section VII (heading). | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | the Saudi government was critical to advancing the United States' overarching counterterrorism objectives, precisely because of the nature and scope of the problem emanating from Saudi Arabia. | Disputed as conclusory; does not cite supporting evidence: <br><br> (1) Plaintiffs cite no evidence supporting Plaintiffs' assertions regarding the purported decision-making of U.S. policymakers. | |
| 194 | This policy approach often led U.S. officials to defer or delay formal designations or other actions against Saudi-based terror financiers and sponsors, as in the case of AHIF, IIRO, and others. | 194. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed in response to Section VII (heading) and Section V (heading). <br><br> (2) Plaintiffs' averment that U.S. policy approach often led officials to "defer" or "delay" designations is immaterial because, even if credited, it does not negate the fact that *no* designations were *ever* issued against Al Rajhi Bank, even at a later date. The FBI found that "after nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged, which is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Elec. Comm.) at EO14040-000011. <br><br> Disputed as conclusory; does not cite supporting evidence: <br><br> (1) Plaintiffs cite no evidence showing that a purportedly broad "policy approach" led to any supposed "delay" or "defer[ral]" of action against Al Haramain, IIRO, or others. | |
| 195 | Given the size of ARB and its structural importance to the Saudi | 195. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
|  | banking system and economy, as well as the significance of the Al Rajhi family to the Saudi economy, sanctioning ARB and/or members of the Al Rajhi family for their support of terrorism and al Qaeda would have had profound consequences on the Saudi Arabian economy and Saudi Arabians who used the bank for legitimate purposes, as well as profound consequences in the U.S.-Saudi Arabian security relationship. | <u>Immaterial for the reasons discussed above in response to Section VII (heading).</u><br><br><u>Disputed as conclusory; vague; does not cite supporting evidence:</u><br><br>(1) Plaintiffs cite no evidence supporting Plaintiffs' statements in this paragraph, particularly the assertions that Al Rajhi Bank and/or the Al Rajhi family member have supported terrorism and Al Qaeda.<br><br>(2) Plaintiffs' allegations regarding "members of the Al Rajhi family" are vague and conclusory because they do not identify any specific individual or show that any of those individuals had any relevant connection to Al Rajhi Bank.<br><br><u>Disputed as controverted by the evidence:</u><br><br>(1) Abdullah bin Sulaiman Al Rajhi, the current Chairman and former General Manager/CEO of Al Rajhi Bank testified that his father, Sulaiman bin Abdulaziz Al Rajhi, has never been a supporter of Al Qaeda or Osama Bin Laden and that he was unaware that anyone at the Bank ever supported Al Qaeda, Osama Bin Laden, or terrorism in any form. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 354:17-355:8.<br><br>(2) Abdullah bin Sulaiman Al Rajhi has never been a supporter of Al Qaeda or Osama Bin Laden and he was unaware of anyone at the Bank that ever supported al Qaeda, Osama Bin Laden, or terrorism in any form. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 353:7-10, 355:4-8, 356:4-10.<br><br>(3) Plaintiffs have no evidence that sanctioning the Bank "would have had profound consequences on the Saudi Arabian economy." In any event, even if credited, the evidence shows that the possibility of such outcomes would not have prevented the United States from sanctioning the Bank or its officials if the U.S. government found evidence showing that Al Rajhi Bank supported the 9/11 Attacks. |  |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | - Dennis Lormel, who led a comprehensive investigation into Al Rajhi Bank's purported ties to Al Qaeda and found no support for those allegations testified if the U.S. government found clear evidence of anyone supporting 9/11, "actions would have been taken against them regardless of the political outcry" or the State Department's concerns about diplomatic ties. *See* ARB. Ex. 61 (Lormel Dep. Tr. and Errata) at 209:16-210:22; *see also* ARB. Ex. 4 (Lormel Report) at 9 ("given the extensive and vigorous U.S. and U.N. response in the wake of 9/11, . . . if sufficient evidence linking Al Rajhi Bank or the Al Rajhi family to terrorism finance actually existed, the Bank, or members of the Al Rajhi family, would have been sanctioned or designated").<br><br>(4) Moreover, had any connection to terrorism been identified, the United States had tools available to impose sanctions or take other action against Al Rajhi Bank other than designation — including, for example, denying the Bank access to U.S. correspondent banking or, working through the Saudi authorities, demanding the removal of certain Bank officials. Plaintiffs have no evidence that any such action was taken. | |
| 196 | In the end, the U.S. government did not formally designate or sanction ARB or al Rajhi family members, actions which would have "cripple[d] the bank," choosing instead to pursue joint action through high-level counterterrorism engagements with senior Saudi officials. | 196.<br><br>Immaterial for the reasons discussed above in response to Section VII (heading).<br><br>Disputed as conclusory; vague; does not cite supporting evidence:<br><br>(1) Plaintiffs cite no evidence supporting Plaintiffs' statement regarding the purported decision-making of U.S. policymakers.<br><br>(2) Plaintiffs cite no evidence that the United States ever took any "joint action" against Al Rajhi Bank or any Al Rajhi family member "through high-level counterterrorism engagements with Saudi officials." | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (3) Plaintiffs' own experts acknowledge that the United States has never sanctioned or taken any action against Al Rajhi Bank, Sulaiman bin Abdulaziz Al Rajhi, Abdullah bin Sulaiman Al Rajhi or any Al Rajhi family member for connections to terrorism. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 160:10-15; 172:19-22; *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-22, 37:10-20, 38:3-39:5. <br><br> (4) Plaintiffs' allegations regarding "al Rajhi family members" are vague and conclusory because they do not identify any specific individual or show that any of those individuals had any relevant connection to Al Rajhi Bank. <br><br> (5) Plaintiffs' assertion that sanctioning the Al Rajhi Bank "or al Rajhi family members" would have "cripple[d] the bank" is disputed for the reasons discussed above in response to ¶ 189. | |
| 197 | To those ends, the U.S. sent a senior Treasury Department official, Juan Zarate, to meet with the Saudis and to formulate a plan for joint action between the United States and Saudi Arabia to deal with the continuing threat from the activities of ARB and the Al Rajhis three years after 9/11, as reflected in State Department cables about the initiative. | 197. <br><br> <u>Immaterial for the reasons discussed above in response to Section VII (heading).</u> <br><br> <u>Disputed as conclusory; vague; does not cite supporting evidence:</u> <br><br> (1) Plaintiffs cite no evidence showing that Al Rajhi Bank ever participated in terrorist "activities" or that any U.S. official ever met with "the Saudis to formulate a plan for joint action "between the United States and Saudi Arabia to deal with the continuing threat from the activities of ARB and the Al Rajhis three years after 9/11." | |
| 198 | During a meeting documented in a September 24, 2004 State Department Cable, Zarate conveyed the U.S. government's "real concerns about the financial activities facilitated by Al-Rajhi," | 198. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section VII (heading). | 198. <br><br> <u>Pls. Ex. 2:</u> <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | and that "[p]articular accounts of concern need to be investigated." *See* Ex. 2 (Pasley Exhibit 5), U.S. Diplomatic Cable, *Terrorist Financing: Al-Rajhi Bank*, September 27, 2004, at 1. | (2) In particular, immaterial because the document cited, to the extent admissible, discusses the provision of routine banking services, but does not show that Al Rajhi Bank intentionally took any tortious act related to Al Qaeda, the 9/11 Attacks, or the United States.<br><br>Disputed as incomplete:<br><br>(1) The same cable cited by Plaintiffs also states that Zarate's Saudi Arabian counterpart informed him that "none of [the United States government's allegations] were substantiated," and that Ernst & Young had done a "full scope examination" of Al Rajhi Bank, which "did not indicate any wrong doings." *See* Pls. Ex. 2 (U.S. Diplomatic Cable) at 1. | - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 199 | As documented in a November 25, 2004 Diplomatic Cable, the U.S. thereafter "provided the Saudi government with information documenting specific instances of terrorists using the Al Rajhi Bank, including information about specific accounts and transactions of interest." *See* Ex. 95, (Pasley Exhibit 6), U.S. Diplomatic Cable, *Joint Examination of Al Rajhi Bank Through the Joint Terrorist Financing Task Force*, November 25, 2004, at 1. | 199.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VII (heading).<br><br>(2) In particular, immaterial because the document cited, to the extent admissible, discusses the provision of routine banking services, but does not show that Al Rajhi Bank intentionally took any tortious act related to Al Qaeda, the 9/11 Attacks, or the United States.<br><br>Disputed as incomplete:<br><br>(1) The cable cited by Plaintiffs does not mention sanctioning Al Rajhi Bank, but rather discusses "ensuring that Al Rajhi Bank is fully equipped to monitor and note suspicious patterns and trends in account activity, so as to create a preventative system within the institution." Pls. Ex. 95 (U.S. Diplomatic Cable) at 1. | 199.<br><br>Pls. Ex. 95:<br><br>- Lacks Authentication (Wikileaks have not been authenticated by U.S. government). *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 200 | The U.S. presented a detailed proposal for a joint examination of ARB, which the U.S. requested its Saudi counterparts distribute to | 200.<br><br>Immaterial: | 200.<br><br>Pls. Ex. 95: |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | "appropriate officials at the Saudi Arabian Monetary Authority, Ministry of Interior, Ministry of Finance, and the [U.S.-Saudi] Joint Terrorism Taks Force." *See* Ex. 95, (Pasley Exhibit 6) at 1. The U.S. also distributed the proposal by hand in Washington to Adel al Jubeir, the foreign policy advisor to then Crown Prince Abdullah. *Id.* | (1) Immaterial for the reasons discussed above in response to Section VII (heading).<br><br>(2) In particular, immaterial because the document cited, to the extent admissible, discusses the provision of routine banking services, but does not show that Al Rajhi Bank intentionally took any tortious act related to Al Qaeda, the 9/11 Attacks, or the United States.<br><br><u>Disputed as incomplete:</u><br><br>(1) The cable cited by Plaintiffs does not mention sanctioning the Bank, but rather discusses "ensuring that Al Rajhi Bank is fully equipped to monitor and note suspicious patterns and trends in account activity, so as to create a preventative system within the institution." Pls. Ex. 95 (U.S. Diplomatic Cable) at 1. | - Lacks Authentication (Wikileaks have not been authenticated by US government). *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 201 | In addition to these discussions concerning ARB specifically, the United States was urging and pressuring Saudi officials to implement more effective oversight of financial institutions in the Kingdom. *See* Ex. 44, Monograph at 115-117; *see id.* at 116 ("The Saudis took little initiative with respect to their charities. They did not make tough decisions or undertake difficult investigations of Saudi institutions to ensure that they were not being used by terrorists and their supporters. Although the Saudis did institute 'Guidelines for Preventing Money Laundering' in 1995 and | 201.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons discussed above in response to Section VII (heading).<br><br>(2) In particular, disputed as immaterial because the United States never took any action against Al Rajhi Bank for connections to terrorism.<br><br><u>Disputed as incomplete:</u><br><br>(1) Plaintiffs selectively cite the Staff Monograph on Terrorist Financing, which states that "[u]ltimately, however, the U.S. government simply did not ask much of the Saudis on terrorist financing . . . . We did not provide sufficient information for the Saudis to act against charities like al Haramain, did not push the Saudis to undertake investigations of charities like al Haramain, and did not request real cooperation from the Saudis on | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | 'Regulations on Charitable Organizations and Institutions' in 1990, these were very loose rules whose enforcement was doubtful. Moreover, the regulations covered only domestic charities, through the Ministry of Labor and Social Affairs, and exempted all charities set up by royal decree."). | intelligence or law enforcement matters relating to charities like al Haramain." Pls. Ex. 44 (Staff Monograph) at 116.<br><br>(2) In addition to this, "[o]ther areas of U.S. policy involving the Saudis took precedence over terrorist-financing issues . . . ." Pls. Ex. 44 (Staff Monograph) at 116. | |
| 202 | Plaintiffs sought documents concerning the proposed joint inspection from ARB in discovery, as well as an alleged 2003 "full scope examination" of ARB that SAMA official al Gaith claimed, in his meeting with U.S. official Zarate, had been conducted by outside auditors. | 202.<br><br><u>Immaterial for the reasons discussed above in response to Section VII (heading).</u> | |
| 203 | In response, ARB has represented that it could not locate any responsive documents or information, indicating that Saudi authorities declined any joint review of ARB's financial practices and suspect accounts, and that the "full scope examination" referenced by al Gaith does not exist. | 203.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons discussed above in response to Section VII (heading).<br><br>(2) In addition, immaterial because Magistrate Judge Netburn concluded that "there is no evidence that the examination outlined in the cables was carried out or that ARB would have the results of that investigation if it was. Accordingly, the Court does not find sufficient grounds to question ARB's compliance with the Discovery Order." Order 8 (Jul. 11, 2023), ECF No. 9210. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | <u>Disputed as conclusory; incomplete:</u><br><br>(1) Conclusory as to "indicating that Saudi authorities declined any joint review of ARB's financial practices and suspect accounts, and that the 'full scope examination' referenced by al Gaith does not exist."<br><br>(2) The Bank represented that it "has not been able to locate this purported audit, or even confirm its existence, despite diligent efforts, including searching the Bank's Operations, Legal, Board Secretariat, Internal Audit, and Compliance departments' repositories. The Bank also reviewed its procurement records and confirmed that the Bank did not contract with Ernst & Young to complete any such audit in or around 2003." Opp. to Pls. 2d Mot. to Compel 13 (Mar. 17, 2023), ECF No. 8935. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | **Section VIII** | |
| VIII. | **Discovery Has Confirmed ARB's Status as Al Qaeda's Bank of Choice (¶¶ 204-272)** | VIII. (heading)<br><br>Disputed as conclusory:<br><br>(1) This section heading is an unsupported legal conclusion to which no response is required.<br><br>(2) Plaintiffs' use of the phrase "Bank of Choice" is vague and conclusory.<br><br>Immaterial:<br><br>Plaintiffs' averments in Section VIII are immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States.<br><br>(1) The averments in this section, even if credited, do not show that Al Rajhi Bank took any tortious act in support of Al Qaeda or the 9/11 Attacks, or aimed at the United States. Plaintiffs' averments do not show that any money that was transferred through accounts at Al Rajhi Bank reached Al Qaeda or supported the financing, planning, or carrying out of the 9/11 Attacks or any other act against the United States. Nor do Plaintiffs' averments show that any donations made by Al Rajhi Bank or its principals supported the financing, planning, or carrying out of the 9/11 Attacks or any other act against the United States. And Plaintiffs' averments do not show that the Bank acted with any knowledge or intent to support Al Qaeda or support the financing, planning, or carrying out of the 9/11 Attacks or any other terrorism or terrorist plot against the United States.<br><br>(2) Plaintiffs' averments in this section show that the Bank provided only routine banking services to the charity and charity-official | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | customers and do not support the conclusion that the Bank took any intentional, tortious conduct aimed against the United States.<br><br>(3) Plaintiffs' averments with respect to Al Haramain and Al Haramain officials are immaterial for the reasons discussed in Section V (heading).<br><br>(4) Plaintiffs' averments with respect to IIRO and IIRO officials are immaterial for the reasons discussed in Section V (heading).<br><br>(5) Plaintiffs' averments about the Saudi-based Sulaiman Abdulaziz al Rajhi Charitable Foundation and the U.S.-based SAAR Foundation are immaterial for the reasons discussed in Section IV and X (headings).<br><br>(6) Plaintiffs did not include WAMY in their jurisdictional discovery requests to the Bank. Nevertheless, Plaintiffs' averments as to WAMY and other refenced charities are immaterial because no charity identified in Plaintiffs' Averment was designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* ARB Aver. ¶ 40; *see also* ARB. Ex 28 (Winer Dep. Tr. and Errata) at 57:7-12 ("To the best of my knowledge, there were no charities of any kind that I recollect that had been designated prior to 9/11 because terrorist designations were originally limited to terrorist organizations."); ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 164:19-21 (acknowledging that WAMY never received a sanctions designation).<br><br>(7) Plaintiffs' assertion that Al Rajhi Bank was "Al Qaeda's Bank of Choice" is immaterial to the extent that the sole supporting evidence is a CIA report, for the reasons discussed in Section VI (heading).<br><br>(8) Plaintiffs' assertion that Al Rajhi Bank was the "bank of choice" for Al Qaeda's charity partners is immaterial where this | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | allegation arose from a 1997 CIA report which, to the extent admissible, used caveats and equivocal language in explaining that extremists "*probably* denotes convenience rather than Al Rajhi family involvement in financing radical groups." *See* Pls. Ex. 9 (CIA Rep., *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions*) at CIA_000744 (emphasis added); *see also* ARB Ex.4 (Lormel Rep.) at 16 (explaining that the 1997 CIA report underscores legitimate banking reasons for extremists to have purportedly used Al Rajhi Bank, that is, convenience and cross border access which other banks in Saudi Arabia did not offer at the time). | |
| | | (9)  Al Rajhi Bank's expert Dennis Lormel testified that the United States government investigated allegations that Al Rajhi Bank was Al Qaeda's "bank of choice" but concluded that such allegations could not be verified. *See* ARB Ex. 4 (Lormel Rep.) at 7. | |
| | | (10)  Even if Plaintiffs' conclusory averments that Al Rajhi Bank was Al Qaeda's "bank of choice" are credited, this statement does not show that the Bank expressly directed intentional, tortious conduct at the United States.  This statement shows only that Al Rajhi Bank was attractive to customers for legitimate business purposes, particularly the Bank's adherence to Sharia banking principles.   *See* ARB Ex. 4 (Lormel Rep.) at 16 (explaining that convenience and Sharia banking policies were "where the idea of Al Rajhi Bank being the preferred bank of choice" originated). | |
| | | (11)  In addition, Plaintiffs' averments regarding Al Rajhi Bank providing services to purported "individual financial facilitators," even if credited, are immaterial because Plaintiffs have no evidence that the Bank knew of any individual's purported connections to Al Qaeda when their accounts were | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | opened.    Instead, Plaintiffs' statements only show routine banking services on the part of Al Rajhi Bank. | |

(12)  Plaintiffs' averments concerning Aqil al Aqil are immaterial and do not show intentional, tortious conduct by Al Rajhi Bank, because they do not show that Aqil's accounts were used for any illegal purposes, let alone terrorist financing or support for the 9/11 Attacks or any other act against the United States.  ARB Ex. 2 (Hobayb Rep.) at 30-31 (explaining that the timing of Aqil al Aqil's transactions, the fact that cash transactions were common, and the fact that Aqil was publicly affiliated with Al Haramain KSA, a well-known charity, indicate that the transactions do not show that Al Rajhi Bank failed to monitor suspicious activity); *see also* ARB Ex. 3 (Pasley Rep.) at 10 (concluding that none of the transactions involving Aqil appear suspicious).

(13)  Aqil al Aqil was publicly known as Director of Al Haramain, a well-known and respected charity before the 9/11 Attacks. *See* ARB Ex. 5 (Ltrs.  Describing Al-Haramain KSA's humanitarian projects and good works) at ARB-00038774 (Ltr. from Aqil al Aqil in Al Haramain's KYC files describing some of Al Haramain's works) and ARB-00038775 (Ltr. from KSA Gen. Pres. of Scholarly Research); Pls. Ex. 56 (*Remarks by Treasury Secretary Paul O'Neill on New U.S.-Saudi Arabia Terrorist Financing Designations* (Mar. 11, 2002)); *see also* response to Section V (heading) (explaining Al Haramain Islamic Foundation's legitimacy and reputation for charitable endeavors).

(14)  Moreover, a letter from a Saudi official instructs potential donors to provide aid directly "to Aqil" rather than through Al Haramain, indicating that the money deposited into Aqil's account at the Bank was likely the result of an officially sanctioned practice and would not have raised suspicions at the

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Bank. *See* ARB Ex. 5 (Ltrs. Describing Al-Haramain KSA's humanitarian projects and good works) at ARB-00038775 (Ltr. from KSA Gen. Pres. of Scholarly Research). | |
| | | (15) Aqil was not designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* Pls. Ex. 48 (*Additional Al Haramain Branches, Former leader Designated by Treasury* (June 2, 2004)) (showing Aqil was not designated until June 2, 2004). | |
| **204** | While limited jurisdictional discovery has provided only a partial window into ARB's relationships with terrorists, that discovery fully corroborates and confirms the CIA's findings that ARB was the "bank of choice" for al Qaeda and like-minded terrorists, and that al Qaeda and its financial facilitators and front charities broadly used ARB to move money in support of al Qaeda's global operations. | 204.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VIII (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>Disputed as vague; conclusory; does not cite evidence:<br><br>(1) Plaintiffs cite no evidence for this paragraph, and as such it is conclusory and cannot demonstrate that the Bank expressly aimed intentional, tortious conduct at the United States.<br><br>(2) Plaintiffs' reference to "partial window" is a vague and unsupported legal conclusion.<br><br>(3) Plaintiffs' reference to a "ARB's relationships with terrorists" is a vague and unsupported legal conclusion.<br><br>(4) Plaintiffs' reference to "like-minded terrorists" is vague and conclusory. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (5) Plaintiffs' reference to "financial facilitators and front charities broadly used ARB" is a vague and unsupported legal conclusion.<br><br>Disputed as unsupported by the evidence; incomplete:<br><br>(1) Plaintiffs' characterization of Al Rajhi Bank's purported "relationships with terrorists" is unsupported by evidence. Plaintiffs do not trace any transaction from accounts at Al Rajhi Bank to the funding of Al Qaeda or the planning, carrying out, or financing of the 9/11 Attacks or any other terrorism. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); ARB Aver. ¶ 147. Moreover, Plaintiffs have no evidence that any Al Rajhi Bank official or principal or Al Rajhi family member had any relationship with members of Al Qaeda, the 9/11 hijackers, or any other terrorists. *See* ARB Aver. ¶ 7.<br><br>(2) Plaintiffs' averment that Al Rajhi Bank was the "bank of choice" for Al Qaeda's charity partners is immaterial where this allegation arose from a 1997 CIA report which, to the extent admissible, used caveats and equivocal language in explaining that extremists "probably denotes convenience rather than Al Rajhi family involvement in financing radical groups." *See* Pls. Ex. 9 (CIA Rep., *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions*) at CIA_000744 (emphasis added); *see also* ARB Ex. 4 (Lormel Rep.) at 16 (explaining that the 1997 CIA report underscores a banking purpose for extremists to have purportedly used Al Rajhi Bank, that is, convenience and cross border access which other banks in Saudi Arabia did not offer at the time). | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (3) Plaintiffs' statement that discovery "confirms" Al Rajhi Bank was used by "financial facilitators and front charities" to "move money" for al Qaeda is unsupported by evidence.<br><br>(4) Plaintiffs have no evidence that any money transferred through accounts at Al Rajhi Bank reached Al Qaeda or financed the 9/11 Attacks. *See* ARB Aver. ¶ 147.<br><br>(5) Plaintiffs have no evidence that the charity-customers of the Bank identified in Plaintiffs' Averment — including the Saudi headquarters of Al Haramain Islamic Foundation, the Saudi headquarters of International Islamic Relief Organization, Muwaffaq Foundation, World Assembly of Muslim Youth, Muslim World League, Saudi Joint Relief Committee for Kosovo and Chechnya, Saudi High Commission for Bosnia-Herzegovina, and Lajnat al-Birr al-Islamiah — were "fronts" for al Qaeda or "moved money" for Al Qaeda.<br><br>(6) Plaintiffs point to no publicly available information tying any of the charities Al Rajhi Bank held accounts for to Al Qaeda or terrorism before the 9/11 Attacks.<br><br>(7) None of the Bank's charity customers Plaintiffs reference was designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); *see also* ARB. Ex 28 (Winer Dep. Tr. and Errata) at 57:7-12 ("To the best of my knowledge, there were no charities of any kind that I recollect that had been designated prior to 9/11 because terrorist designations were originally limited to terrorist organizations.").<br><br>(8) Instead, evidence shows that these charities were licensed and authorized to operate before the 9/11 Attacks and that, at most, Al Rajhi Bank provided routine financial services to them. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | | |
| | | *See, e.g.*, Pls. Ex. 3 (Galloway Dep. Tr.) at 251:12-252:19 and Errata at 230:4, 232:19, 251:14, 251:23-24, 252:1, 252:4, 252:7-8, 252:13-14, 252:16, 252:18 (discussing charity licenses).<br><br>Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of "limited" jurisdictional discovery, for the reasons discussed above in response to the averments in Section III. | |
| 205 | ARB was the bank of choice for the Al Haramain Islamic Foundation ("AHIF") and its senior officials, throughout the time AHIF operated as "one of the principal NGOs active throughout the world providing support for the Al-Qaida network." *See* Ex. 48 (Lormel Exhibit 18), *Additional Al-Haramain Branches, Former Leader Designated by Treasury as Al Qaida Supporters, Treasury Marks Latest Action in Joint Designation with Saudi Arabia*, June 2, 2004, at 3. | 205.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VIII (heading).<br><br>(2) Immaterial for the reasons discussed with respect to the Al Haramain Islamic Foundation and its officials in Section V (heading).<br><br>Disputed as vague; unsupported by evidence:<br><br>(1) Plaintiffs' reference to "Al Haramain" is vague. Al Rajhi Bank only held accounts for the Saudi headquarters of Al Haramain (Al Haramain KSA), and did not hold accounts for any Al Haramain branch outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br>Disputed as unsupported by the evidence:<br><br>(1) The source cited by Plaintiffs does not describe Al Haramain Islamic Foundation as Al Qaeda's "bank of choice."<br><br>(2) Plaintiffs have no evidence that Al Haramain KSA (the only Al Haramain entity with an account at Al Rajhi Bank) used Al | 205. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Rajhi Bank for any reason other than convenience, as the largest fully Sharia-compliant bank in Saudi Arabia at the relevant time.<br><br>Disputed as controverted by the evidence, misleading, and incomplete:<br><br>(1) Although Plaintiffs reference Al Rajhi Bank as the supposed "bank of choice" for Al Haramain Islamic Foundation, only Al Haramain's Saudi headquarters ("Al Haramain KSA") had an account at Al Rajhi Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br>(2) During the relevant period, the Bank held accounts for Al Haramain KSA, which was not designated under any sanctions regime for connections to terrorism until it was designated by the United States in 2008, several years after the 9/11 Attacks. Pls. Ex. 60 (*Treasury Designates Al Haramain Islamic Foundation* (June 19, 2008)) (Designation of Al Haramain KSA and noting designation of Al Haramain branches started in 2002).<br><br>(3) Plaintiffs' assertion that Al Haramain operated as "one of the principal NGOs active throughout the world providing support for the Al-Qaida network" is controverted by the evidence, misleading, and incomplete. Plaintiffs do not reference any specific time period. Moreover, at the time of the 2002 designation by the United States of Al Haramain branches outside of Saudi Arabia, U.S. Treasury Secretary Paul O'Neill stated that Al Haramain KSA, by contrast to these branches, "is dedicated to promoting Islamic teachings." Pls. Ex. 56 (*Remarks by Treasury Secretary Paul O'Neill on New U.S.-Saudi Arabia Terrorist Financing Designations* (Mar. 11, 2002)). | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 206 | During the 1998-2002 time period covered by limited jurisdictional discovery, ARB maintained and operated at least 94 accounts for AHIF. *See* Ex. 4, Winer Report at 107, 203, 207; Ex. 3, Galloway Deposition at 80 (testifying that there were 95 separate AHIF accounts ARB was maintaining between 1998-2002); Ex. 1, Al Rajhi Deposition at 79; Ex. 98 (Abdullah al Rajhi Exhibit 31) (chart of 94 AHIF accounts at ARB). | 206.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VIII (heading).<br><br>(2) Immaterial for the reasons discussed with respect to the Al Haramain Islamic Foundation and its officials in Section V (heading).<br><br>(3) Immaterial to the extent that Plaintiffs imply that Al Rajhi Bank should not have held 94 separate accounts for Al Haramain KSA. Plaintiffs' contentions as to the number of accounts held for Al Haramain KSA do not show intentional, tortious conduct by the Bank. Rather, they show that Al Rajhi Bank provided Al Haramain KSA routine banking services.<br><br>As permitted by law in the relevant time period, charities in KSA had multiple accounts serving different projects and branches, and in fact, post-9/11 the Saudi Arabian Monetary Authority (SAMA), the sole regulator of Saudi Arabian banks, did not ban this practice, but instead required that secondary accounts be consolidated under one account. *See* ARB Ex. 2 (Hobayb Rep.) at 10-11, 25.<br><br>Maintaining multiple accounts for the same charitable organization was common banking practice for large Islamic banks during the relevant time period. *See id.* at 25.<br><br>Disputed as vague; unsupported by evidence:<br><br>(1) Plaintiffs' reference to "AHIF" is vague. Al Rajhi Bank only held accounts for Al Haramain KSA, and did not hold accounts for any Al Haramain branch outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13. | 206.<br><br>Pls. Ex 4 at 107, 203, 207:<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing charity work and routine banking services that has no link to Al Qaeda. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 98:<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Improper Summary Exhibit. *See* Fed. R. Evid. 1006. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of "limited" jurisdictional discovery, for the reasons discussed above in response to the averments in Section III. | |
| 207 | Between January 1, 1998 and December 31, 2002, ARB facilitated deposits into those AHIF accounts totaling 2,146,119,285.78 Saudi Riyals ("SR") (in excess of 2.1 billion SR), and withdrawals totaling 2,035,094,758.98 SR. *See* Ex. 4, Winer Report at 107, 203; Ex. 1, Al Rajhi Deposition at 79; Ex. 98 (Abdullah al Rajhi Exhibit 31) (chart of 94 AHIF accounts at ARB identifying deposits and withdrawals). | 207.

Immaterial:

(1) Immaterial for the reasons discussed above in response to Section VIII (heading).

(2) Immaterial for the reasons discussed with respect to the Al Haramain Islamic Foundation and its officials in Section V (heading).

(3) In particular, Plaintiffs' statement concerning the purported amount of money transferred through Al Haramain KSA's accounts at the Bank does not show intentional, tortious conduct by the Bank. Plaintiffs' averment shows that Al Rajhi Bank provided nothing more than routine banking services to a large charitable organization.

Disputed as vague, conclusory, and unsupported:

(1) Plaintiffs' reference to "AHIF" is vague. Al Rajhi Bank only held accounts for Al Haramain KSA, and did not hold accounts for any Al Haramain branch outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.

(2) Plaintiffs' assertion that Al Rajhi Bank "facilitated" deposits is vague, conclusory, and unsupported. Plaintiffs' evidence shows that Al Rajhi Bank provided Al Haramain KSA nothing more than routine banking services. *See* ARB Ex. 2 (Hobayb Rep.) at 22-30. | 207.

Pls. Ex 4 at 107, 203:

- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing charity work and routine banking services that has no link to Al Qaeda. *See* Fed. R. Evid. 403.

Pls. Ex. 98:

- Lacks authentication. *See* Fed. R. Evid. 901.

- Improper Summary Exhibit. *See* Fed. R. Evid. 1006. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 208 | Two billion riyals would convert to approximately $533 million, using the long term SR-USD exchange rate, and would represent nearly $950 million in current (2023) dollars, based on a conservative inflation calculator. *See* Ex. 4, Winer Report at 107. | 208.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VIII (heading) and ¶ 207.<br><br>(2) In particular, Plaintiffs' statement concerning the purported amount of money transferred through Al Haramain KSA accounts at the Bank does not show that Al Rajhi Bank took any intentional, tortious conduct expressly directed at the United States.<br><br>(3) Plaintiffs' reference to the figure in 2023 U.S. dollars is immaterial, as the relevant period is 1998-2002. | 208.<br><br>Pls. Ex. 4 at 107:<br><br>- Should be excluded under rule 403 for unfair prejudice for discussing charity work and routine banking services that has no link to Al Qaeda. *See* Fed. R. Evid 403. |
| 209 | Based on the assessments of the 9/11 Commission Staff, the financial transactions facilitated by ARB for AHIF would represent essentially the entirety of AHIF's budget during the relevant period, although we now know that ARB enabled AHIF to carry out massive additional financial activity through alleged personal accounts of its officials, as discussed below. | 209.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VIII (heading).<br><br>(2) Immaterial for the reasons discussed with respect to the Al Haramain Islamic Foundation and its officials in Section V (heading).<br><br>Disputed as vague, conclusory, and unsupported:<br><br>(1) Plaintiffs' reference to "AHIF" is vague. Al Rajhi Bank only held accounts for Al Haramain KSA, and did not hold accounts for any Al Haramain branch outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br>(2) Plaintiffs' assertion that Al Rajhi Bank "facilitated" deposits is vague, conclusory, and unsupported. The evidence shows that Al Rajhi Bank provided Al Haramain KSA nothing more than | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | routine banking services. *See* ARB Ex. 2 (Hobayb Rep.) at 22-30. | |
| | | (3) Plaintiffs' assertion that Al Rajhi Bank "enabled" additional financial activity by Al Haramain KSA through "alleged personal accounts" is vague, conclusory, and unsupported. The evidence shows that Al Rajhi Bank provided Al Haramain KSA nothing more than routine banking services. *See* ARB Ex. 2 (Hobayb Rep.) at 22-30. | |
| | | Disputed as conclusory; does not cite evidence: | |
| | | (1) Plaintiffs cite no specific evidence in this paragraph, making it conclusory and insufficient to support a conclusion of personal jurisdiction as to Al Rajhi Bank. | |
| | | Disputed as controverted by the evidence and incomplete: | |
| | | (1) Plaintiffs reference the 9/11 Commission, but fail to mention that the 9/11 Commission Report did not implicate, analyze, discuss, or even once refer to, Al Rajhi Bank or Al Rajhi Bank officers. *See generally* Pls. Ex. 40 (9/11 Comm'n. Rep.). | |
| | | (2) To the extent that Plaintiffs contend that personal accounts by Al Haramain KSA officials were used to mask tortious conduct, this is controverted by the evidence. No official of Al Haramain was designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.). Plaintiffs have no evidence that any money transferred through accounts at Al Rajhi Bank reached Al Qaeda or financed the 9/11 Attacks. *See* ARB Aver. ¶ 147. | |
| 210 | The AHIF accounts at ARB were used to send funds to AHIF's branch offices outside Saudi | 210.<br><br>Immaterial: | 210. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Arabia, a fact that was well known to ARB. *See* Ex. 4, Winer Report at 110, 119-21, 150-52; Ex. 38, Kohlmann Report at 11; *See also* Ex. 99 (Lormel Exhibit 20), ARB 38816; Ex. 100, ARB 38534-38535; Ex. 101, ARB 38998-39000. | (1) Immaterial for the reasons discussed above in response to Section VIII (heading).<br><br>(2) Immaterial for the reasons discussed with respect to the Al Haramain Islamic Foundation and its officials in Section V (heading).<br><br>(3) Any purported knowledge that Al Rajhi Bank had of Al Haramain KSA transactions outside of Saudi Arabia was immaterial because the evidence shows only that, prior to the 9/11 Attacks, Al Haramain KSA was publicly known as a government-licensed charity doing charitable works.   ARB Ex. 41 (Oct. 17, 1997 Ltr. from Ministry of Islamic Affairs) at ARB-38586 (stating that Al Haramain KSA operates under the supervision of the Saudi Ministry of Islamic Affairs); *see also* Pls. Ex. 44 (Staff Monograph) at 12 ("At least two Saudi government officials have supervisory roles (nominal or otherwise) over al Haramain."); ARB Ex. 42 (Jan. 29, 1997 Ltr. from Dep. Minister of Islamic Affairs) at ARB-38613 (authorizing the opening of an Al Haramain account at Al Rajhi Bank branch); ARB Ex. 43 (July 14, 1998 Ltr. from the Gen. Mngr. of the Eastern Province of the Ministry of Islamic Affairs) at ARB-38741 (stating Al-Haramain is under the supervision of the Ministry of Islamic Affairs); ARB Ex. 41 (Sept. 26, 1998 Ltr. from Dep. Minister of Islamic Affairs) at ARB-38585 (requesting transfer of certain accounts into the name of Al-Haramain Islamic Foundation, with signatory authority to be determined by Director General Aqeel Al-Aqeel); ARB Ex. 44 (April 14, 1999 Commercial Office License) at ARB-38837 (copy of Commercial Office License issued by the Department of Lands and Real Estate for an Al Haramain office in Jubail Municipality); ARB Ex. 56 (Ltr. from the Gov. of Yanbu, June 1, 1999) at ARB-38818 (discussing the newly opened Al-Haramain office in the region); ARB Ex. 24 (Jan. 4 2004 (Hijri) | <u>Pls. Ex. 4 at 110, 119-121, 150-52</u>:<br><br>-  Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing charity work and routine banking services that has no link to Al Qaeda. *See* Fed. R. Evid. 403.<br><br><u>Pls. Ex. 38 at 11</u>:<br><br>-  Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing charity work and routine banking services that has no link to Al Qaeda. *See* Fed. R. Evid. 403. |

| Para.<br>No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-14545 (stating the Bank's understanding that Al Haramain KSA was "licensed according to His Highness the Minister of Interior's letter," dated February 7, 1996); ARB Ex. 26 (Mar. 13, 2004 Ltr. from Ministry of Islamic Affairs) at ARB-39505 (confirming that Al-Haramain KSA was permitted to engage in charitable work in the Kingdom); ARB Ex. 27 ( Mar. 21, 2004 Ltrs. from Ministry of Justice to Al Rajhi Bank) at ARB-39409 (confirming that Al-Haramain KSA was "legally established in . . . Saudi Arabia and permitted to operate under its laws and regulations").<br><br>(4) Plaintiffs have no evidence that Al Rajhi Bank knew of any purported connections between Al Haramain KSA and terrorism when the Bank processed transactions for Al Haramain KSA in the relevant period.  No Al Haramain branch was designated before the 9/11 Attacks.  *See* Pls. Ex. 60 (*Treasury Designates Al Haramain Islamic Foundation* (June 19, 2008)) (Designation of  Al Haramain KSA, noting designation of Al Haramain branches started in 2002).<br><br><u>Disputed as vague; unsupported by evidence:</u><br><br>(1) Plaintiffs' reference to "AHIF" is vague.  Al Rajhi Bank only held accounts for Al Haramain KSA, and did not hold accounts for any Al Haramain branch outside of Saudi Arabia.  *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13. | |
| 211 | Those included branch offices located in locations where al Qaeda was known to be operating, and conflict zones where al Qaeda | 211.<br><br><u>Immaterial:</u> | 211.<br><br><u>Pls. Ex. 4 at 179-180:</u> |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | and jihadists associated with al Qaeda were known to be fighting, including Chechnya, Bosnia, and Kosovo. *See* Ex. 99 (Lormel Exhibit 20), ARB 38816; Ex. 4, Winer Report at 179-180. | (1) Immaterial for the reasons discussed above in response to Section VIII (heading) and ¶ 210.<br><br>(2) Immaterial because processing transactions to "conflict zones where al Qaeda and jihadists associated with al Qaeda were known to be fighting, including Chechnya, Bosnia, and Kosovo" does not indicate any tortious conduct by Al Rajhi Bank related to the United States or the 9/11 Attacks.<br><br>(3) Immaterial because there was no prohibition on Al Rajhi Bank processing transactions to "conflict zones." Further, it was not surprising or unusual for Islamic charities to send funds to conflict zones. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 356:16-19 and Errata 356:16-18 (testifying that "SAMA did not restrict overseas transfers from charity accounts" until "May 2003."); ARB Ex. 58 (Telegram from KSA Prime Minister's Office) at ARB-00014556 (discussing providing relief and donations to Kosovo refugees); ARB Ex. 1 (Dean Rep.) at 15-16 (explaining that charities supporting relief efforts in conflict zones were not deemed to be supporters of terrorism). Therefore, Plaintiffs' averment shows nothing more than Al Rajhi Bank providing routine banking services to Al Haramain KSA. | - Should be excluded under Rule 403 for unfair prejudice for discussing charity work and routine banking services that has no link to Al Qaeda, and for discussing theaters, including Bosnia, Chechnya, Kosovo, Israel, and Palestine that are unrelated to Al Qaeda's attacks against the United States. *See* Fed. R. Evid 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 212 | During the 1998-2002 period covered by limited jurisdictional discovery, ARB also maintained and operated a staggering 308 separate accounts for IIRO. *See* Ex. 4, Winer Report at 108; Ex. 3, Galloway Deposition at 87-88, 123. | 212. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section VIII (heading). <br><br> (2) Immaterial for the reasons discussed with respect to IIRO in Section V (heading). <br><br> (3) Immaterial to the extent that Plaintiffs imply that Al Rajhi Bank should not have held 308 separate accounts for IIRO. Plaintiffs' contentions as to the number of accounts held for IIRO do not show intentional, tortious conduct by the Bank. Rather, they show that Al Rajhi Bank provided IIRO KSA routine banking services. <br><br> - As permitted by law in the relevant time period, charities in KSA had multiple accounts serving different projects and branches, and in fact, post-9/11 the Saudi Arabian Monetary Authority (SAMA), the sole regulator of Saudi Arabian banks, did not ban this practice, but instead required that secondary accounts be consolidated under one account. *See* ARB Ex. 2 (Hobayb Rep.) at 10-11, 25. <br><br> - Maintaining multiple accounts for the same charitable organization was common banking practice for large Islamic banks during the relevant time period. *See* ARB Ex. 2 (Hobayb Rep.) at 25. <br><br> – The Bank's chairman testified that "it's not unusual to have that big number of accounts for a charity." Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 79:15-18. <br><br> Disputed as vague; unsupported by evidence: | 212. <br><br> Pls. Ex 4 at 108: <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing charity work and routine banking services that has no link to Al Qaeda. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (1) Plaintiffs' reference to "IIRO" is vague. Al Rajhi Bank only held accounts for the Saudi headquarters of IIRO (IIRO KSA), and did not hold accounts for any IIRO branch outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br>Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of "limited" jurisdictional discovery, for the reasons discussed above in response to the averments in the averments in Section III. | |
| 213 | An analysis of the account statements for 287 of those accounts shows that ARB facilitated deposits totaling 2,974,279,291.71 SR, or just under 3 billion SR, and withdrawals totaling 2,914,284,820.75 SR, or about 2.9 | 213.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VIII (heading).<br><br>(2) Immaterial for the reasons discussed with respect to IIRO in Section V (heading). | 213.<br><br>Pls. Ex. 102:<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Improper Summary Exhibit. *See* Fed. R. Evid. 1006. |